Hearing Date and Time:  January 29, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  January 22, 2014 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :        08-13555 (JMP)
                                        :
                Debtors.                :        (Jointly Administered)
                                        :
------------------------------------------------------------------x
```

## NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC., PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, for

authorization to extend the stay of avoidance actions and for certain related relief, all as more

fully described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**January 29, 2014 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard W. Slack, Esq., Jacqueline Marcus, Esq., and Robert J. Lemons, Esq., attorneys for LBHI; (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn:  William K. Harrington, Esq., Susan Golden, Esq. and Andrea Schwartz, Esq.; and (iv) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **January 22, 2014 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 10, 2014
      New York, New York

                        /s/ Robert J. Lemons
                        Richard W. Slack
                        Robert J. Lemons

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Lehman Brothers Holdings Inc.
                        and Certain of Its Affiliates

Hearing Date and Time: January 29, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: January 22, 2014 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                  :
In re                                             :        **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,      :        **08-13555 (JMP)**
                                                  :
                    **Debtors.**                  :        **(Jointly Administered)**
                                                  :
-------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.,**
**PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY**
**CODE AND BANKRUPTCY RULE 7004(a)(1), TO EXTEND STAY**
**OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

              Lehman Brothers Holdings Inc. ("<u>LBHI</u>" and the "<u>Plan Administrator</u>"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "<u>Plan</u>"), submits this motion (the "<u>Motion</u>"), and

respectfully represents:

**<u>Preliminary Statement</u>**

              1.        As discussed below, the Stay of Avoidance Actions (each as defined

below) issued by the Court and each and every extension of the Stay has allowed LBHI and

certain of its subsidiaries (together, the "Chapter 11 Estates") to work with the Avoidance Action

Defendants (as defined below) to resolve billions of dollars' worth of potential claims held by

the Chapter 11 Estates.  The Stay is directly responsible for saving the parties to the Avoidance

Actions millions of dollars in fees and expenses that otherwise would have been spent on

litigation.  Notwithstanding the unquestioned benefits of the Stay and the extensions of the Stay,

the Chapter 11 Estates are mindful of the need to transition the Avoidance Actions from a period

of active attempts to consensually resolve all claims to a period of orderly litigation of remaining

claims.  Given the large number of parties to the mass actions covered by the Stay, the Chapter

11 Estates have put forth a modest final extension of the Stay to facilitate the orderly transition

of the Avoidance Actions to litigation mode and have also proposed a sensible staging of the

Avoidance Actions to aid in the resolution of the issues and prevent a free-for-all.  These

proposals are explained at length below.

   2. The background of the Stay and the extensions of the Stay are critical to

this Motion.  On September 15, 2008 and periodically thereafter (as applicable, the

"Commencement Date"), the Chapter 11 Estates commenced the largest and most complicated

chapter 11 cases in history.  After the Commencement Date, the Chapter 11 Estates began their

review and analysis of prepetition transactions.  Such review has been extremely difficult, time

consuming, and complicated.  Nevertheless, in order to prevent the loss of avoidance causes of

action prior to the expiration of the applicable two-year statute of limitations, the Chapter 11

Estates commenced over 50 actions seeking to avoid or recover significant transfers with respect

to over 240 transactions under sections 544, 545, 547, 548, 549, 550 and/or 553 of title 11 of the

United States Code (the "Bankruptcy Code").  In addition, the Chapter 11 Estates entered into

tolling agreements with more than 200 potential defendants.

3.      On December 6, 2011, the Court approved and entered an order

confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012. Pursuant

to section 6.1(b)(iv) of the Plan, the Plan Administrator is authorized to prosecute the Avoidance

Actions on behalf of the Chapter 11 Estates.

4.      Pursuant to the *Order Staying Avoidance Actions and Granting Certain*

*Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule*

*7004(a)(1)*, dated October 20, 2010 [ECF No. 12199] (the "Initial Stay Order"), the Court stayed

all Avoidance Actions[1] for nine (9) months (the "Stay"). Pursuant to subsequent orders of the

Court (together with the Initial Stay Order, the "Stay Orders"), the Court has further extended the

Stay. Unless further action is taken by the Court, the Stay will expire on January 20, 2014.[2]

5.      The Initial Stay Order also extended the deadline to effect service (the

"Service Deadline") on the Avoidance Action Defendants[3] to 180 days after the filing of a

complaint, without prejudice to the Chapter 11 Estates' right to seek further extensions. The

Court subsequently entered additional orders extending the Service Deadline, *inter alia*, to allow

the Chapter 11 Estates time to complete discovery to obtain information necessary to identify

parties and to effect service in certain of the Avoidance Actions.

---

[1] A schedule of the pending actions involving avoidance claims of the Chapter 11 Estates is attached as Exhibit A to
the proposed order. The relief requested by this Motion is with respect to all actions involving claims of the Chapter
11 Estates under sections 544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code – those that have already
been commenced and any additional avoidance action commenced hereinafter by the Plan Administrator
(collectively, the "Avoidance Actions"). Avoidance Action, as used herein, does not include any adversary
proceeding for which the Court has entered a scheduling order or for which the Stay (as defined below) otherwise
has been lifted, and any such adversary proceeding is not included on Exhibit A attached to the proposed order. *See,
e.g.*, *Lehman Brothers Holdings Inc., et al., v. Citibank, N.A., et al.*, Adv. Proc. No. 12-01044 (JMP) [ECF No. 5].

[2] Because the hearing date on the Motion is scheduled for January 29, 2014, the Plan Administrator will seek entry
of a bridge order extending the Stay until the Motion is heard.

[3] "Avoidance Action Defendant" means any defendant in an Avoidance Action.

6.        Having commenced the Avoidance Actions to preserve their rights and fulfill their fiduciary duties to maximize value for creditors, the Chapter 11 Estates have utilized a practical approach to the Avoidance Actions that has to date minimized (and, in some cases, eliminated) the costs and burdens to all parties and to the Court that would be incurred by full-blown litigation of these matters.  The Chapter 11 Estates and the Avoidance Action Defendants have made substantial progress with respect to the resolution of the Avoidance Actions during the pendency of the Stay.  The Chapter 11 Estates and many of the Avoidance Action Defendants have pursued consensual resolutions, including by communicating and negotiating through, among other things, the exchange of relevant documentation, evaluation of potential defenses, and consummation of settlements or dismissal of actions.  As a result of these efforts, the Chapter 11 Estates have resolved Avoidance Actions, as well as avoidance claims subject to tolling agreements, with over 250 parties, including through settlements, dismissal of complaints, and termination of tolling agreements, without engaging in time-consuming and costly litigation.  Thus, to date, the Stay and each and every extension of the Stay have promoted judicial economy and minimized the burdens on the Court from the prosecution of these actions.

7.        The Stay and all the extensions thereof also have permitted the Chapter 11 Estates to employ innovative procedures as an alternative to litigation to efficiently administer these cases:  in particular, the Court-established alternative dispute resolution ("ADR") program – which has produced "remarkable successes," *see* Tr. of Hr'g, June 15, 2011, at 31:11 – has been critical to the Chapter 11 Estates' ability to resolve disputes where a special purpose vehicle ("SPV") is a counterparty to one or more derivative swaps.

8.        On September 17, 2009, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts*

[ECF No. 5207], approving ADR procedures for the Chapter 11 Estates' derivative contracts with recovery potential (the "Derivatives ADR Procedures").  On May 2, 2012, the Court entered the *Order Amending the Tier 2 Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts* [ECF No. 27698], approving ADR procedures for the Chapter 11 Estates' derivative contracts with recovery potential for which a Chapter 11 Estate's claim is equal to or less than $5 million (the "Tier 2 Derivatives ADR Procedures").  On October 2, 2013, the Court entered the *Order Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-452 Further Amending the Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicles* [ECF No. 40267], approving ADR procedures related to SPVs (the "SPV Derivatives ADR Procedures," and, together with the Derivatives ADR Procedures and the Tier 2 Derivatives ADR Procedures, as each may have been amended and/or modified from time to time, the "Affirmative ADR Procedures").

9.      Under the Affirmative ADR Procedures cumulatively, the Chapter 11 Estates have recovered more than $2.16 billion as a result of 297 ADR settlements with 396 counterparties, all without Court intervention.  *See Letter to Hon. James M. Peck Regarding Forty-Ninth ADR Status Report*, dated December 18, 2013 [ECF No. 41581].[4]

10.      In approving a prior extension of the Stay, the Court called ADR "indisputably a success" and observed that "the results speak for themselves as being beneficial to the estate and also beneficial to the Court . . . because this means that matters that might otherwise be burdening the Court are being managed in a private fashion."  Tr. of Hr'g, Jan. 11, 2012, at 22:23-25, 23:1-2.  Indeed, in approving the last extension of the Stay, the Court noted

---

[4] Updated as of the date hereof.

that the "benefits associated with extending the stay of avoidance actions are obvious," as the

ADR program has not only "produced material economic benefits to the estate, but the program

has also correspondingly produced benefits to the counterparties, all of whom avoided the

expense, distraction, and burden of litigation."  Tr. of Hr'g, July 17, 2013, at 39:12-13, 18-22.

11.     The Court characterized its most recent decision to extend the Stay as a

difficult one, as it could not answer at what point "do we know that the ADR program has

effectively run its course."  Tr. of Hr'g, July 17, 2013, at 39:7-11.  As will be demonstrated

below, the ADR program has not run its course.  The ADR program continues to facilitate

consensual resolution of difficult disputes and, therefore, continues to confer substantial benefits

on both the Chapter 11 Estates and the Avoidance Action Defendants.

12.     The ADR program continues to generate significant sums for the Chapter

11 Estates – which increases recoveries for creditors – and helps resolve complex matters that

otherwise would have required expenditure of a huge amount of time, expense, and Court

oversight to pursue through litigation.  Largely as a result of the Stay and the extensions of the

Stay, the Chapter 11 Estates have continued to make substantial progress in consensually

resolving the Avoidance Actions through the ADR program.  The Chapter 11 Estates believe that

the best way for them to move forward is to continue using ADR to pursue consensual

resolutions of the Avoidance Actions, as litigation entails time, expense, and burdens not

attendant to ADR.  *See* Tr. of Hr'g, July 17, 2013, at 21:21-23, 22:5-7 ("The theory that litigation

is a particularly efficient and important way to get to resolution I believe is overstated. . . .

Litigation is not necessarily a good alternative to the procedures that are currently in place . . .").

13.     Nonetheless, the Chapter 11 Estates acknowledge that the Stay "cannot go

on indefinitely."  Tr. of Hr'g, Feb. 13, 2013, at 51:25.  The Chapter 11 Estates, therefore, request

a final extension of the Stay for a period of approximately four months. The Chapter 11 Estates request a final extension of the Stay for two primary reasons. First, extension of the Stay will enable the Chapter 11 Estates to continue pursuing consensual resolutions with defendants through the ADR process without the distraction of ongoing litigation. Second, extension of the Stay will enable the Chapter 11 Estates to establish a practical and efficient road map for litigating the SPV Avoidance Actions (as defined below) that are not resolved consensually. As set forth in greater detail below, the Chapter 11 Estates propose two Protocols (as defined below) for litigating the various issues that may arise in the SPV Avoidance Actions. A further extension of the Service Deadline is also necessary in order to ensure that the Chapter 11 Estates are able to effect service of the Second Amended Complaint on all defendants in the Distributed Action (as defined below).

14.     The Plan Administrator requests a final extension of the Stay to the later of (i) May 20, 2014 or (ii) thirty (30) days after the date on which the Court enters the Phase I Distributed Action Scheduling Order (as defined below). The Plan Administrator also requests a further extension of the Service Deadline with respect to the Distributed Action until May 20, 2014. The extension of the Stay will enable the Chapter 11 Estates to continue their efforts toward consensually resolving the Avoidance Actions. If the Stay is not extended for this final period, the Chapter 11 Estates will be forced to divert their resources from actively pursuing consensual resolutions of the Avoidance Actions to immediately responding to discovery demands, engaging in uncoordinated and disparate motion practice, and preparing for a multitude of contested proceedings and trials without the benefit of organized protocols for litigation. Such haphazard litigation of the Avoidance Actions would drain the Chapter 11 Estates' resources, monopolize the Court's docket, and, potentially, prejudice the rights of certain Avoidance Action

Defendants.  The extension of the Service Deadline will allow the prosecution of the Distributed

Action, which could not occur if the Chapter 11 Estates cannot serve the summons and complaint

by the current Service Deadline.

## Jurisdiction

15.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

16.    Pursuant to section 105(a) of the Bankruptcy Code and Rule 4(m) of the

Federal Rules of Civil Procedure, as incorporated and made applicable hereto by Bankruptcy

Rule 7004(a)(1), the Plan Administrator requests a further extension of the Stay, to the later of (i)

May 20, 2014 or (ii) thirty (30) days after the date on which the Court enters the Phase I

Distributed Action Scheduling Order.  The Plan Administrator also requests approval of certain

deadlines set forth in the Protocols and specified in the proposed order annexed hereto.  In

addition, the Plan Administrator requests a further extension until May 20, 2014 to complete

service of the Second Amended Complaint on the defendants in the Distributed Action, without

prejudice to the ability of the Plan Administrator to request further extensions.

## The Court Should Exercise its Discretion and Extend the Stay

17.    The Court should exercise its discretion and extend the Stay for two

reasons.  First, extending the Stay will enable the Chapter 11 Estates to capitalize on their

successes to date and continue pursuing consensual resolutions with Avoidance Action

Defendants through the ADR process, leaving fewer defendants with which to litigate.  Second,

for SPV Avoidance Actions that are not resolved consensually, extending the Stay will allow the

parties to implement orderly and reasonable protocols to streamline and efficiently resolve the

litigation.  In addition, extending the Stay and implementing the Protocols will ameliorate the

effect of the stay (the "SPV ADR Stay") imposed by the SPV Derivatives ADR Order, which

ends at different times for different defendants.  In other words, implementation of the Protocols

will allow all Avoidance Action Defendants to participate in the stages of litigation regardless of

each defendant's separate SPV ADR Stay, putting all defendants on the same footing and

preventing the piecemeal resolution of the same issues depending upon which defendants emerge

from the ADR process sooner.

18.    Certain Avoidance Actions involve SPVs with "flip clauses" in which the

underlying assets (i) have not been distributed to noteholders of collateralized debt obligation

transactions (together, the "Non-Distributed Actions")[5] or (ii) have already been distributed to

noteholders of collateralized debt obligation transactions (the "Distributed Action," and, together

with the Non-Distribution Actions, the "SPV Avoidance Actions").[6]  In the Distributed Action,

Lehman Brothers Special Financing Inc. ("LBSF") has asserted claims against noteholders as a

defendant class action.  Collectively, the SPV Avoidance Actions embrace the vast majority of

Avoidance Action Defendants.[7]  Instead of engaging in costly and burdensome litigation with

these defendants, the Chapter 11 Estates have engaged in the Court-ordered ADR program.  The

Court has called the ADR process – of which it is a "huge proponent" – "one of the most

---

[5] The Non-Distributed Actions are as follows:  *Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, et al.*, Adv. Proc. No. 10-03542 (JMP); *Lehman Brothers Financial Products Inc. v. The Bank of New York Mellon Trust Co., National Association, et al.*, Adv. Proc. No. 10-03544 (JMP); *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.*, Adv. Proc. No. 10-03545 (JMP); *Lehman Brothers Special Financing Inc. v. Wells Fargo Bank National Association, et al.*, Adv. Proc. No. 10-03809 (JMP); *Lehman Brothers Special Financing Inc. v. Bank of New York Mellon National Association*, Adv. Proc. No. 10-03811 (JMP).

[6] The Distributed Action is *Lehman Brothers Special Financing Inc. v. Bank of America National Association*, *et al.*, Adv. Proc. No. 10-03547 (JMP).

[7] In addition to Avoidance Actions involving SPVs, there are currently ten pending Avoidance Action complaints involving, among other defendants, trade vendors and other third parties.  The Chapter 11 Estates are either engaged in, or are pursuing, settlement discussions with respect to each named defendant in such actions.  Extension of the Stay will provide the Chapter 11 Estates and the defendants with additional time to continue to pursue negotiated resolutions in a timely and efficient manner without the burdens and expense of active litigation.

extraordinarily successful aspect [sic] of case administration in this massive case."  Tr. of Hr'g,

Feb. 13, 2013, at 41:14-15, 18-20.

19.    At the last hearing to consider an extension of the Stay, the Court observed

that, according to the Chapter 11 Estates, "one of the predicate theories that underlies the success

of the ADR program is the existence and continuation of a period of time of the stay."  Tr. of

Hr'g, July 17, 2013, at 36:20-22.  Indeed, the Stay has enabled the Chapter 11 Estates to

commence ADR proceedings as expeditiously as the unique circumstances of these chapter 11

cases have permitted.  As the Court found previously, there was actual prejudice "to the case

administration function associated with lifting the stay or refusing to extend the stay

prematurely," and "the settlements that have been achieved demonstrate that the alternative

dispute resolution system is functioning at a high level."  *See* Tr. of Hr'g, Feb. 13, 2013, at

51:11-13, 22-24.

20.    Recognizing that the Stay cannot go on indefinitely – notwithstanding its

dramatic benefits for case administration – the Chapter 11 Estates have commenced SPV ADR

proceedings with Avoidance Action Defendants at an accelerated pace throughout 2013.  The

Court has also promoted the Chapter 11 Estates' efforts at expeditiously resolving the Avoidance

Actions by ordering the addition of two additional mediators under, *inter alia*, the SPV

Derivatives ADR Procedures.  *See* ECF No. 37940.  The success of these mutually reinforcing

steps – bringing more defendants into the ADR process and consensually resolving more

disputes – is borne out in the Chapter 11 Estates' results to date:

Non-Distributed Actions

- Out of approximately 150 defendants in the Non-Distributed Actions, the Chapter 11 Estates have settled with all but 24 defendants.[8]

  - Out of those 24 defendants, there are pending ADR proceedings with respect to 22 defendants in the Non-Distributed Actions.  Since the last stay extension, the Chapter 11 Estates have reached settlements in principle and are working toward final resolutions with a number of defendants that have been in the ADR process since it first began, including post-mediation negotiations for well over a year.  Although it took some time, the parties have been able to bridge gaps and reach a meeting of the minds with respect to resolving their disputes – in large part because they had the time and a conducive atmosphere in which to engage in productive settlement negotiations.

  - Only two defendants remain unsettled and outside of the ADR process – and as to one defendant, only one certain tranche of its transaction remains unsettled and outside of the ADR process.  Each of these transactions (or tranches) raises unique issues that the Chapter 11 Estates are seeking to resolve expeditiously outside of litigation and ADR.

  - While the Non-Distributed Actions have fewer named defendants than the Distributed Action, the SPV defendants sold notes to hundreds of individual noteholders.  Settlements with the SPVs in the Non-Distributed Actions necessarily resolve disputes with the noteholder constituents which hold notes in the SPVs.  For example, the recently settled cash hybrid transactions had 12 named defendants but encompassed at least 100 individual noteholders.[9]

Distributed Action

- LBSF has served ADR notices upon 125 defendants in the Distributed Action, including 30 defendants upon which ADR notices were served since the last motion to extend the Stay was filed.[10]

---

[8] The Chapter 11 Estates have reached an agreement in principle with one defendant, which, when executed, will reduce the number of outstanding defendants in the Non-Distributed Actions to 23.

[9] *See, e.g.*, *Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code Approving Partial Settlement Agreement Relating to Certain Credit Default Swap Agreements and Indentures*, dated August 22, 2013 [ECF No. 39624]; *Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code Approving Partial Settlement Agreement Relating to Airlie CDO I, Ltd. Credit Default Swap Agreement and Indenture*, dated July 25, 2013 [ECF No. 39017].

[10] With respect to the Distributed Action, the terms "defendants" and "Avoidance Action Defendants" refer to former, current, and potential defendants.

- o There are pending ADR proceedings with respect to 108 defendants in the Distributed Action.

- LBSF has dismissed 54 defendants since the First Amended Complaint in the Distributed Action was filed in October 2010.

  - o Since the last motion to extend the Stay was filed, LBSF has dismissed 16 defendants in the Distributed Action, 11 of which were resolved as a result of settlements achieved outside of the ADR process.[11]

- LBSF expects to settle with and dismiss up to 11 other defendants within the next few weeks.

- LBSF has identified 23 noteholder defendants in the Distributed Action for which ADR proceedings have not been commenced:

  - o Settlements are in process for six defendants.

  - o With respect to seven defendants, LBSF has not been able to obtain information about the amount of funds distributed to or received by each defendant.  LBSF is continuing with the discovery process to obtain the needed information to commence meaningful ADR proceedings as to those defendants.

  - o Ten defendants are in unique situations in which it may be difficult to value the deal or the amounts at issue are very small.

- While the number of unidentified noteholders is unknown, only approximately 17% of the total dollar amount LBSF seeks to recover in the Distributed Action is held by unidentified noteholders.  Accordingly, LBSF has identified the noteholders holding the vast majority of money LBSF seeks to recover in the Distributed Action.

21.    In toto, there are currently approximately 130 Avoidance Action Defendants that are subject to the SPV Derivatives ADR Procedures.  Moreover, virtually all identified Avoidance Action Defendants are engaged with the Chapter 11 Estates in mediation, settlement discussions outside mediation, or otherwise.[12]

---

[11] ADR notices were served on seven of these 11 defendants, but the settlements were achieved outside of the ADR process.

[12] ADR proceedings have not been commenced with respect to the trustee defendants or the issuer defendants in the Distributed Action.

22.     If the extension requested by the Chapter 11 Estates is granted, during the final months of the Stay, the Chapter 11 Estates and these Avoidance Action Defendants will have an opportunity to pursue consensual resolutions within the framework of the SPV Derivatives ADR Procedures, while at the same time implementing the litigation Protocols, to advance the litigations in an orderly fashion in case litigation is nevertheless necessary.  Pursuit of consensual resolutions is likely to continue to lead to the resolution of additional claims asserted in the Avoidance Actions with minimized burdens – financial and otherwise – for all parties, before vital resources concurrently must be dedicated to litigation efforts.

23.     To date, there has been no prejudice to the Avoidance Action Defendants as a result of the Stay, and such defendants will suffer no prejudice from an extension of the Stay, as they will not need to expend time and resources defending the lawsuits.  All rights of the parties will be preserved while the Stay is in effect.  Moreover, as has been the case since the issuance of the Initial Stay Order, the Avoidance Action Defendants have the right to move before the Court for a modification of the Stay for good cause shown at any time.  *See* Tr. of Hr'g, Jan. 11, 2012, at 25:20-21 ("[D]efendants can seek to have the stay terminated before the, in this case, six-month extension.") (response of Chapter 11 Estates' counsel to query from the Court as to whether "individual defendants have the unfettered right to seek relief from this blanket stay to the extent that it can be demonstrated that a party is prejudiced or that the stay is no longer a useful exercise because the parties have negotiated to frustration," *id*. at 25:14-18). No party has yet made a motion establishing good cause to lift the Stay.

24.     In contrast to the relief requested in this Motion, immediate expiration of the Stay may prejudice defendants in the Distributed Action, especially those for whom ADR proceedings may have been commenced more recently.  Due to the vast number of defendants in

the Distributed Action and the amount of work involved in analyzing the transfers received by each of them, ADR proceedings as to different defendants in the Distributed Action have commenced at different times.[13]

25.    A chart setting forth the status of each pending ADR proceeding commenced under the SPV Derivatives ADR Procedures is annexed as an exhibit to the declaration of Lawrence Brandman in support of this Motion filed contemporaneously herewith (the "SPV ADR Status Chart").  As reflected on the SPV ADR Status Chart, each ADR proceeding is, in effect, on its own timetable.  Thus, if the Stay were permitted to expire, certain defendants in the Distributed Action may continue to be subject to ADR and, therefore, a stay of litigation under the SPV ADR Stay, while other defendants in the same action may not.  The Chapter 11 Estates would then be in the position of litigating with certain defendants in the Distributed Action while engaging in ADR with other defendants in the same litigation, all of whom are members of the same putative defendant class, creating procedural nightmares and concerns about claim preclusion and issue preclusion for Avoidance Action Defendants who continue to be stayed.  Moreover, defendants subject to ADR who are not litigation-inclined and wish to continue the ADR process may be prejudiced by other defendants' efforts to pursue disposition of decisive legal and/or factual issues.

---

[13] In addition, resolution of the Distributed Action has proven to be more difficult than the Non-Distributed Action for a variety of reasons, including the fact that there are more defendants, more than half of which are located abroad, and some of which have yet to be identified.  LBSF is conducting further discovery upon certain defendants identified in the Distributed Action, which LBSF has discovered may be custodians or other interim holding repositories of distributions, in order to determine the specific identities of beneficial owners of notes that actually received distributions.  As contemplated by the *Order Granting Plaintiff's Motion for Expedited Discovery Pursuant to Bankruptcy Rules 7026 and 9014 and Establishing a Protocol Governing the Confidentiality of and Access to Certain Discovery Material*, dated October 25, 2010, Adv. Proc. No. 10-03547 [ECF No. 27] (the "Discovery Order"), upon the identification of such additional beneficial owners, LBSF plans to amend its Second Amended Complaint, dated June 29, 2012, to further identify the unnamed noteholders individually and as members of the putative noteholder defendant class.

26.     Extending the Stay of Avoidance Actions will preserve the status quo in the Distributed Action and help level the playing field by mitigating the disparate effects of the SPV ADR Stay ending at different times for different defendants.  An extension of the Stay will place as many defendants as possible in the same position when litigation commences, as more ADR proceedings will have been commenced, and potentially concluded, when the Stay expires. Any potential prejudice to some Avoidance Action Defendants in waiting until the Stay expires to litigate their claims remains just that – potential and hypothetical – while extending the Stay for approximately four more months avoids issues that may arise from litigation commencing precipitously in a disorganized fashion.

27.     Because expiration of the Stay will force the Chapter 11 Estates and the Avoidance Action Defendants to respond to discovery demands, respond to motions to dismiss and other dispositive motions, and participate in contested matters and trials, the Chapter 11 Estates propose to implement the Protocols in order to address the numerous common issues in the SPV Avoidance Actions.  If the Stay merely expires and no orderly process for the litigations is implemented, litigation is likely to devolve into multiple uncoordinated motions relating to discovery, statutes of limitations, class certification, and valuation (among other issues) at the same time (and different times) by various litigants, which will be costly, burdensome, and time-consuming.  Moreover, without the Protocols, the Chapter 11 Estates may not be able to address common issues together, causing duplicative efforts by the Chapter 11 Estates and the Avoidance Action Defendants and reducing ultimate recoveries for creditors.

28.     The Court has consistently emphasized the importance of the Stay to case administration.  *See generally* Tr. of Hr'g, Feb. 13, 2013, at 51:11-13, 19-22 (recognizing that "the stay has produced and is continuing to produce dramatic benefits in case administration");

Tr. of Hr'g, June 15, 2011, at 31:8-9 ("there are huge advantages to case administration and

having the continuation of the stay"); Tr. of Hr'g, Feb. 16, 2011, at 147:20-21, 24 (noting that

the Stay was "designed to benefit the entire administration of the Lehman cases" and is

"beneficial").  Once the Stay expires, another mechanism will be required to maintain orderly

and efficient administration of these chapter 11 cases and the SPV Avoidance Actions, in

particular.  Accordingly, the Chapter 11 Estates propose the following Protocols for litigation of

the SPV Avoidance Actions.

Litigation Protocol for the Distributed Action

29.    The procedure for the orderly resolution of preliminary litigation matters

for the Distributed Action will be divided into three stages, "Phase I Distributed Action Matters,"

"Phase II Distributed Action Matters," and "Phase III Distributed Action Matters" (the

"Distributed Action Protocol").

- Phase I Distributed Action Matters will begin upon expiration of the Stay and will
  involve the issue of class certification and various related issues, including potential
  motions by defendants in the Distributed Action for class representative appointment,
  class discovery, class certification briefing and disposition, and the application of
  class tolling and statute of limitations issues.

- Phase II Distributed Action Matters will begin once the Phase I Distributed Action
  Matters are determined and will involve discrete, individual pretrial issues that may
  not be resolved by virtue of the class certification issue, such as statute of limitation
  defenses and challenges to personal jurisdiction not resolved in the context of class
  certification.

- Phase III Distributed Action Matters will begin once the Phase II Distributed Action
  Matters are determined and will involve any other pretrial matters not identified as a
  Phase I or II Distributed Action Matter, including, *e.g.*, responsive pleadings and/or
  motions to dismiss on grounds applicable to the defendant class, and fact and expert
  discovery.

30.    By sequencing the litigation of the Distributed Action in this manner, as

set forth below, all parties would be afforded an opportunity to participate as appropriate, and

before traditional pretrial and trial matters begin.  To that end, as part of the Phase I Distributed

Action Scheduling Order, the Chapter 11 Estates will also seek modification of the SPV ADR

Stay to allow all defendants in the Distributed Action to participate in litigation of Phase I

Distributed Action Matters pursuant to the proposed schedule.  Importantly, resolution of the

matters in the order proposed will enable both the Chapter 11 Estates and the Avoidance Action

Defendants to know at the earliest stage who the parties are in the case, whether they are a class

or not, the extent to which limitations periods may be tolled by virtue of the class action, and

who will be leading the defense.

      31.    With respect to timing regarding the Distributed Action Protocol, the

Chapter 11 Estates propose:

- By February 19, 2014, the Chapter 11 Estates will file a proposed scheduling order for the orderly disposition of Phase I Distributed Action Matters (the "Phase I Distributed Action Scheduling Order").

- By March 12, 2014, any defendant in the Distributed Action may file a response to the Chapter 11 Estates' proposed Phase I Distributed Action Scheduling Order (a "Phase I Distributed Action Response").

- By April 2, 2014, the Chapter 11 Estates may file a reply to any Phase I Distributed Action Response.

- At the April 2014 omnibus hearing, currently scheduled for April 9, 2014, the Court will address the Chapter 11 Estates' proposed Phase I Distributed Action Scheduling Order.

- Upon entry by the Court of the Phase I Distributed Action Scheduling Order, which will coincide with the expiration of the Stay as proposed to be extended, the parties will proceed with litigation of Phase I Distributed Action Matters pursuant to that order.

- Within thirty (30) days of the Court's resolution of the last Phase I Distributed Action Matter, the Chapter 11 Estates will file a proposed scheduling order for Phase II Distributed Action Matters (the "Phase II Distributed Action Scheduling Order").  In such filing, the Chapter 11 Estates will identify the omnibus hearing in which the Court will address such proposed order, which shall be no more than sixty (60) days after the proposed Phase II Distributed Action Scheduling Order is filed, subject to any adjournment of the hearing ordered by the Court.

- Within three (3) weeks of the filing of the proposed Phase II Distributed Action Scheduling Order, any defendant in the Distributed Action may file a response to the Chapter 11 Estates' proposed Phase II Distributed Action Scheduling Order (a "Phase II Distributed Action Response").

- Within six (6) weeks of the filing of the proposed Phase II Distributed Action Scheduling Order, the Chapter 11 Estates may file a reply to any Phase II Distributed Action Response.

- At the omnibus hearing identified in the notice of the proposed Phase II Distributed Action Scheduling Order, the Court will address the Chapter 11 Estates' proposed Phase II Distributed Action Scheduling Order.

- Upon entry by the Court of the Phase II Distributed Action Scheduling Order, the parties will proceed with litigation of Phase II Distributed Action Matters pursuant to that order.

- Within thirty (30) days of the Court's resolution of the last Phase II Distributed Action Matter, the Chapter 11 Estates will file a proposed scheduling order for Phase III Distributed Action Matters (the "Phase III Distributed Action Scheduling Order"). In such filing, the Chapter 11 Estates will identify the omnibus hearing in which the Court will address such proposed order, which shall be no more than sixty (60) days after the Phase III Distributed Action Scheduling Order is filed, subject to any adjournment of the hearing ordered by the Court.

- Within three (3) weeks of the filing of the proposed Phase III Distributed Action Scheduling Order, any defendant in the Distributed Action may file a response to the Chapter 11 Estates' proposed Phase III Distributed Action Scheduling Order (a "Phase III Distributed Action Response").

- Within six (6) weeks of the filing of the proposed Phase III Distributed Action Scheduling Order, the Chapter 11 Estates may file a reply to any Phase III Distributed Action Response.

- At the omnibus hearing identified in the notice of the proposed Phase III Distributed Action Scheduling Order, the Court will address the Chapter 11 Estates' proposed Phase III Distributed Action Scheduling Order.

- Upon entry by the Court of the Phase III Distributed Action Scheduling Order, the parties will proceed with litigation of Phase III Distributed Action Matters pursuant to that order.

Litigation Protocol for the Non-Distributed Actions

      32.    The Chapter 11 Estates propose the following procedure for the orderly

resolution of preliminary litigation matters for the Non-Distributed Actions (the "Non-

Distributed Actions Protocol," and, together with the Distributed Action Protocol, the

"Protocols"):

- Within thirty (30) days of the Court's resolution of the last Phase II Distributed Action Matter, the Chapter 11 Estates will file a proposed scheduling order litigation protocol for the scheduling of Phase I Non-Distributed Actions Matters (the "Phase I Non-Distributed Actions Scheduling Order"). In such filing, the Chapter 11 Estates will identify the omnibus hearing in which the Court will address such proposed order.

- Within three (3) weeks of the filing of the proposed Phase I Non-Distributed Actions Scheduling Order, any defendant in a Non-Distributed Action may file a response to the Chapter 11 Estates' proposed Phase I Non-Distributed Actions Scheduling Order (a "Phase I Non-Distributed Actions Response").

- Within six (6) weeks of the filing of the proposed Phase I Non-Distributed Actions Scheduling Order, the Chapter 11 Estates may file a reply to any Phase I Non-Distributed Actions Response.

- At the omnibus hearing identified in the notice of the proposed Phase I Non-Distributed Actions Scheduling Order, the Court will address the Chapter 11 Estates' proposed Phase I Non-Distributed Actions Scheduling Order.

- Upon entry by the Court of the Phase I Non-Distributed Actions Scheduling Order, the parties will proceed with litigation of Phase I Non-Distributed Actions Matters in their respective Non-Distributed Actions pursuant to that order.

- Additional phases for the Non-Distributed Actions may be implemented pursuant to the Phase I Non-Distributed Actions Scheduling Order.

33.    Extending the Stay for approximately four more months will allow the

Chapter 11 Estates and the Avoidance Action Defendants sufficient time to implement the

Protocols and prepare for orderly – as opposed to uncoordinated – litigation, as the sheer number

and complexity of the Avoidance Actions will require substantial resources once litigation

resumes.  Among other things, the Chapter 11 Estates will be required to redirect certain

resources to litigation efforts.  At the same time the Chapter 11 Estates have been trying to

manage and resolve the Avoidance Actions, they have also been addressing the balance of their

substantial derivatives portfolio that is not subject to the Avoidance Actions.  Thus, they have

been evaluating and preparing both SPV and non-SPV matters for ADR, negotiating settlements with derivatives counterparties, and, in some instances, participating in litigation.  These non-Avoidance Action activities have required considerable amounts of time and attention from the Chapter 11 Estates, whose manpower has been sharply reduced, as well as the Chapter 11 Estates' professionals.  The Chapter 11 Estates will now need to divert their time and attention to litigation of the Avoidance Actions.  Implementation of the Protocols will enable the Chapter 11 Estates to deploy their manpower and resources most efficiently in the litigation process.

34.    In addition, the Protocols are consistent with the expectations of the Avoidance Actions Defendants.  At the last hearing to extend the Stay, counsel for one of the Avoidance Action Defendants objecting to an extension of the Stay commented that he "presume[d] that before this litigation actually initiated that there would be some kind of ground rules set for the litigation."  Tr. of Hr'g, July 17, 2013, at 36:4-6 (remarks of counsel for U.S. Bank National Association, as Trustee).  Counsel added that "there's all sorts of ways of handling the litigation so that the cost isn't burdensome on either side.  And I think that that would probably be appropriate in these particular cases."  *Id*., at 36:10-13.  The Chapter 11 Estates agree and submit that the Protocols represent a cost-effective means of handling litigation of the Avoidance Actions that also minimizes the burden on the Court.  Moreover, even if the Stay were to expire without a further extension, it would take many months for the Chapter 11 Estates and the Avoidance Action Defendants to formulate and obtain Court approval of appropriate case management orders.  The continuation of the Stay simply facilitates an orderly transition to what would otherwise be a potentially haphazard and uncoordinated process to initiate and propose case management orders.

35.    During the final extension of the Stay, the Chapter 11 Estates expect to work with the Avoidance Action Defendants within the parameters set forth herein to develop the specifics of the Protocols.  Indeed, the timetables set forth in the Protocols provide an opportunity for the Avoidance Action Defendants to object to the proposed scheduling orders filed by the Chapter 11 Estates, as well as time for the parties to work through their differences.

36.    The Court has the power to extend the Stay and should exercise its discretion to do so.  Pursuant to section 105(a) of the Bankruptcy Code, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998). Bankruptcy courts have this inherent power.  *See Uni-Rty Corp. v. Guangdong Bldg., Inc. (In re Uni-Rty Corp.)*, No. 96 Civ 4573 (DAB), 1998 WL 299941, at *7 (S.D.N.Y. June 9, 1998); *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (court has inherent power to stay proceedings before it, particularly where stay will promote judicial economy); *Kistler v. Cleveland (In re Cleveland)*, 353 B.R. 254, 260 (Bankr. E.D. Cal. 2006) (staying adversary proceeding pursuant to court's inherent power to stay proceedings before it); *Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 770 (Bankr. E.D. Cal. 1990) ("a bankruptcy court has the inherent power to control its docket, including controlling the timing of proceedings on that docket").  The determination whether a stay of proceedings is appropriate "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

37.     This Court already has exercised its discretion under section 105(a) of the Bankruptcy Code to manage its docket in these cases and, more importantly, to issue and extend the Stay.  Extending the Stay for approximately four more months is in the best interests of the Chapter 11 Estates and their creditors and should be approved.  Extension of the Stay will provide the Chapter 11 Estates and the Avoidance Action Defendants with a further opportunity to try to achieve consensual resolutions of the Avoidance Actions – whether by settlement or dismissal as appropriate – with minimized costs before litigation commences.  In addition, implementing the Protocols described herein during the remaining term of the Stay is a far better alternative than immediate litigation if the Stay expires.  For all of the reasons that the Court has granted and extended the Stay previously, as well as the additional reasons set forth herein, the Court should exercise its discretion here and extend the Stay for the final period requested.

## The Court Should Extend the Deadline for Service of Process

38.     The Federal Rules of Civil Procedure state that when a plaintiff shows good cause, "the court must extend the time for service for an appropriate period."  FED. R. CIV. P. 4(m).  "In determining whether good cause is shown, a court should consider (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." *American Int'l Tel., Inc. v. Mony Travel Serv.*, 203 F.R.D. 95, 97 (S.D.N.Y. 2001).  Furthermore, courts readily extend the service deadlines in cases, such as these, that involve service in foreign jurisdictions.[14]  Rule 4(m) of the Federal Rules of Civil Procedure expressly contemplates that the service deadline may be extended for service outside the United States.  FED. R. CIV. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(l).").  A significant number of the defendants in the Distributed

---

[14] *See In re South African Apartheid Litigation*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("the 120-day time period for service can be extended for service outside of the United States") (quotations and citations omitted).

Action are located in foreign jurisdictions, making service of process more difficult and time

consuming.  Accordingly, LBSF seeks an extension of the Service Deadline for the Distributed

Action.

39.     The Chapter 11 Estates have demonstrated "reasonableness and diligence"

in serving many of the foreign and domestic defendants to date.  Pursuant to the Discovery

Order, LBSF has used discovery received to date to amend the First Amended Complaint and

serve the Second Amended Complaint.  On July 18, 2012, this Court granted LBSF's motion for

leave to amend its First Amended Complaint to identify 165 new or misnamed noteholder

defendant class members, many of which are foreign entities.  Since July 2012, LBSF has been

diligently attempting to serve its Second Amended Complaint upon each of the named

defendants.  As explained below, LBSF seeks an extension of time for foreign judicial authorities

and/or their agents to complete service of process upon the defendants in certain countries to

make all of the work it performed pursuant to the Discovery Order worthwhile.

40.     To date, LBSF has served all eight trustee defendants, 45 issuer

defendants, and 34 co-issuer defendants.  LBSF has also served 85 of the 87 noteholder

defendants located in the United States.[15]  Of the two outstanding noteholder defendants, one is

currently in liquidation and a stay is in place, prohibiting LBSF from serving the entity with

process.  The other noteholder defendant has been dissolved.  LBSF also has served all but two

noteholder defendants located in foreign jurisdictions.[16]  The two remaining foreign noteholder

defendants are being served by the judicial authorities and/or their agents in China and Chile

through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil

---

[15] The total number of US noteholder defendants does not include the entities which LBSF has dismissed from the Distributed Action.

[16] The number of foreign noteholder defendants served does not include foreign entities that are dissolved.

or Commercial Matters.  Service in these countries is a slow-moving process.  LBSF has taken

all necessary steps to effect service of process on these noteholder defendants, and service has

been underway for months.  Because service is expected to be completed in the next few months,

LBSF seeks an extension of the Service Deadline for an additional four months to ensure that

service of the Second Amended Complaint is completed.

41.    An extension of the Service Deadline will not prejudice any of the

Avoidance Action Defendants.  All of the Avoidance Actions are currently stayed pursuant to the

Stay Orders, and should the Court grant the instant Motion, the Avoidance Actions will continue

to be stayed.  Therefore, Avoidance Action Defendants who are served following an extension of

the Service Deadline will be in the same position as those parties who have already been served.

Moreover, one of the central purposes of the Stay is to give the Chapter 11 Estates an

opportunity to pursue consensual resolutions of the Avoidance Actions.  The extension of the

Service Deadline will further this purpose by giving the Chapter 11 Estates adequate time to

contact each Avoidance Action Defendant and initiate discussions regarding resolution.

42.    In short, there is good cause to grant the request for an extension until

May 20, 2014 to complete service of the Second Amended Complaint on the defendants in the

Distributed Action.

## Notice

43.    No trustee has been appointed in these chapter 11 cases.  Notice of this

Motion has been served in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [ECF No. 9635] on (i) the United States Trustee for Region 2; (ii) the Securities and

Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the

Southern District of New York; (v) all parties who have requested notice in these chapter 11

cases; and (vi) all known and identified Avoidance Action Defendants or their agents or representatives, except for Avoidance Action Defendants as to whom the respective Avoidance Action has been settled or dismissed.

## Conclusion

44.    For the reasons set forth herein, the Motion should be granted.  The proposed scope of the Stay coupled with the approval of certain deadlines set forth in the Protocols (i) is balanced and fair, (ii) does not modify the substantive rights of any of the Avoidance Action Defendants, (iii) promotes settlements at minimal costs to the Chapter 11 Estates as well as the Avoidance Action Defendants, and (iv) facilitates orderly litigation of the Avoidance Actions.  In addition, an extension of the Service Deadline will further this purpose by giving the Chapter 11 Estates adequate time to serve the Second Amended Complaint on each defendant in the Distributed Action.

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated: January 10, 2014
      New York, New York

                    /s/ Robert J. Lemons
                    Richard W. Slack
                    Robert J. Lemons

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Lehman Brothers Holdings Inc.
                    and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------x
                             :

In re                           :       **Chapter 11 Case No.**

                             :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :       **08-13555 (JMP)**

                             :

              **Debtors.**        :       **(Jointly Administered)**

                             :

                             :
---------------------------------------------------------------------x

### ORDER EXTENDING STAY OF AVOIDANCE ACTIONS AND GRANTING CERTAIN RELATED RELIEF PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1)

Upon the motion, dated January 10, 2014 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4(m) of the Federal Rules of Civil Procedure, as incorporated and made applicable hereto by Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure, to extend the stay for each of the adversary proceedings identified on Exhibit A hereto and any other avoidance actions that may be commenced by the Plan Administrator under sections 544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code (collectively, the "Avoidance Actions") and to grant certain related relief, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated October 20, 2010 [ECF No. 12199] (the "Initial Stay Order"), the *Order Extending the Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated June 16, 2011 [ECF No. 17763], the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January 11, 2012 [ECF No. 24198], the *Order Extending Stay of Avoidance Actions Pursuant to Section 105(a) of the Bankruptcy Code*, dated July 18, 2012 [ECF No. 29506], the *Bridge Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January 17, 2013 [ECF No. 33970], the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated February 15, 2013 [ECF No. 34697], the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated July 18, 2013 [ECF No. 38806], and the *Bridge Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January __, 2014 [ECF No. _____] (together with the Initial Stay Order, the "Stay Orders"); and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures [ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv)

the United States Attorney for the Southern District of New York; (v) all parties who have

requested notice in these chapter 11 cases; and (vi) each of the known and identified defendants

to the Avoidance Actions or their agents or representatives (the "Avoidance Action

Defendants"), except for Avoidance Action Defendants as to whom the respective Avoidance

Action has been settled or dismissed, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Motion; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Stay imposed by the Stay Orders is hereby extended to the

later of (i) May 20, 2014 or (ii) thirty (30) days after the date on which the Court enters the Phase

I Distributed Action Scheduling Order; and it is further

ORDERED that the Chapter 11 Estates shall have until May 20, 2014 to complete

service of the Second Amended Complaint on each defendant in the Distributed Action, without

prejudice to the ability of the Chapter 11 Estates to request further extensions; and it is further

ORDERED that, except to the extent provided in, as applicable, the Phase I

Distributed Action Scheduling Order or the Phase I Non-Distributed Actions Scheduling Order

or as otherwise agreed by the parties, each Avoidance Action Defendant shall be required to

answer or otherwise respond to any Avoidance Action complaint by the later of July 5, 2014, or,

if such complaint is amended or further amended, 30 days after the date of the filing of any such

amended complaint or further amended complaint, as applicable; *provided*, *however*, that if the

Stay is lifted by (i) the Plan Administrator's filing and service of a notice of intention to

prosecute an Avoidance Action or (ii) the Court's entry of an order modifying the Stay over an

Avoidance Action, then the applicable Avoidance Action Defendant shall be required to answer

or otherwise respond to the Avoidance Action complaint within 30 days after the date of, as

applicable, service of a notice of intention to prosecute such Avoidance Action or the Court's

order modifying the Stay over such Avoidance Action; and it is further

ORDERED, that the Chapter 11 Estates shall file a proposed Phase I Distributed

Action Scheduling Order on or before February 19, 2014; and it is further

ORDERED that, any defendant in the Distributed Action shall file a response to

the Chapter 11 Estates' proposed Phase I Distributed Action Scheduling Order on or before

March 12, 2014 (a "Phase I Distributed Action Response"); and it is further

ORDERED that the Chapter 11 Estates shall file a reply to any Phase I

Distributed Action Response on or before April 2, 2014; and it is further

ORDERED, that the Chapter 11 Estates' proposed Phase I Distributed Action

Scheduling Order shall be addressed at the April 2014 omnibus hearing, subject to any

adjournment of the hearing ordered by the Court; and it is further

ORDERED that, except as set forth herein, all other terms and provisions of the

Stay Orders shall remain unaltered and in full force and effect; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: January __, 2014
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**(Schedule of Pending Avoidance Actions)**

| **Adversary Proceeding No.** | **Adversary Proceeding** |
|---|---|
| 10-03542 (JMP) | Lehman Brothers Special Financing Inc. v. U.S. Bank National Association, *et al.* |
| 10-03544 (JMP) | Lehman Brothers Financial Products Inc. v. The Bank of New York Mellon Trust Co., National Association, *et al.* |
| 10-03545 (JMP) | Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, *et al.* |
| 10-03547 (JMP) | Lehman Brothers Special Financing Inc. v. Bank of America National Association, *et al.* |
| 10-03548 (JMP) | Lehman Brothers Holdings Inc. v. AXA, S.A., *et al.* |
| 10-03552 (JMP) | Lehman Brothers Holdings Inc. v. Fragomen, Del Ray, Bernsen and Loewy, LLP |
| 10-03553 (JMP) | Lehman Brothers Holdings Inc. v. GMAC Mortgage Corporation |
| 10-03558 (JMP) | Lehman Brothers Holdings Inc. v. Earth Thebault Inc. |
| 10-03560 (JMP) | Lehman Brothers Holdings Inc. v. EMortgage Logic LLC |
| 10-03598 (JMP) | Lehman Brothers Holdings Inc. v. First American Residential Value View LLC |
| 10-03606 (JMP) | Lehman Brothers Holdings Inc. v. Stewart Lender Services |
| 10-03609 (JMP) | Lehman Brothers Holdings Inc. v. Deutsche Bank Trust Company Americas |
| 10-03809 (JMP) | Lehman Brothers Special Financing Inc. v. Wells Fargo Bank National Association, *et al.* |
| 10-03811 (JMP) | Lehman Brothers Special Financing Inc. v. Bank of New York Mellon National Association |
| 11-01661 (JMP) | Lehman Brothers Holdings Inc. v. Bullet Communications Inc. |
| 12-01043 (JMP) | Lehman Brothers Holdings Inc. v. CitiMortgage, Inc. |