**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:                : | Chapter 11 Case No. 08-13555 (JMP) |
|                    : | |
| LEHMAN BROTHERS HOLDINGS INC.,   : | |
| *et al.*,                : | |
|                    : | |
| Debtors.          : | |
|                    : | |
| FEDERAL HOUSING FINANCE      : | |
| AGENCY, individually and as Conservator   : | |
| of Federal Home Loan Mortgage      : | 13 Civ. 07481 (LGS) |
| Corporation,             : | |
|                    : | |
| Plaintiff,         : | |
|                    : | |
| v.                   : | |
|                    : | |
| LEHMAN BROTHERS HOLDINGS INC.,   : | |
|                    : | |
| Defendant.        : | |
|                    : | |

## SUPPLEMENTAL MEMORANDUM OF THE FEDERAL HOUSING FINANCE AGENCY AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION IN OPPOSITION TO LEHMAN BROTHERS HOLDINGS INC.'S MOTION TO CLASSIFY

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York 10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848
Mark S. Landman

*Attorneys for the Federal Home Loan*
*Mortgage Corporation*

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 238-4848
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn

*Attorneys for the Federal Housing*
*Finance Agency as Conservator of*
*the Federal Home Loan Mortgage*
*Corporation*

In granting the Motion to Withdraw the Reference, Judge Schofield ruled that a court addressing the issues raised in the Motion to Classify[1] must give "substantial and material consideration" to the language of HERA, and must squarely address any potential interplay between HERA and the Bankruptcy Code. 12/17/13 Opinion and Order ("Op.") at 3. Confirming HERA's grant to the Conservator of "superior rights" in avoidance actions related to a "government sponsored entity," such as Freddie Mac, Judge Schofield found that the question at issue on the Motion to Classify is whether the statutory basis for the superior rights asserted by FHFA in connection with the HERA Priority Claim affects the priority scheme of a bankruptcy. Op. at 4. While withdrawing the reference in respect of the Motion to Classify in order to address this issue, Judge Schofield has requested a Report and Recommendation from the Bankruptcy Court. Op. at 5. In this regard, the Bankruptcy Court has requested that each of LBHI and FHFA/Freddie Mac provide the Court with copies of their respective pleadings filed in the District Court action, as well as a supplemental memorandum addressing those arguments raised in the District Court pleadings relevant to the Motion Classify not previously addressed or briefed in prior filings in the Bankruptcy Court. To that end, FHFA and Freddie Mac hereby submit this Supplemental Memorandum in Opposition to the Motion to Classify.

## PRELIMINARY STATEMENT

1.     Pursuant to HERA, a non-bankruptcy federal statute, FHFA, as Conservator of Freddie Mac, and Freddie Mac, are asserting a statutory right to a superior, priority recovery in the amount of over $1.2 billion on account of a Claim filed by Freddie Mac in the LBHI bankruptcy proceedings (the "HERA Priority Claim"). Specifically, Section 4617(b)(15) of HERA grants FHFA, as Conservator, the express power to avoid any transfer made or any

---

[1]    Defined terms are as set forth in the Opposition to the Motion to Classify.

obligation incurred by a debtor of Freddie Mac, if such transfer or obligation was made or incurred "with the intent to hinder, delay, or defraud" Freddie Mac or its Conservator, such that the Conservator may recover assets and money on behalf of and for the benefit of Freddie Mac.[2] Critically, HERA sets forth in explicit, mandatory language that the rights of FHFA shall be "superior" to "any rights of a trustee or any other party" under the Bankruptcy Code, "other than any party which is a Federal agency."[3] These broad powers granted to FHFA as Conservator, and the concomitant priority right to recover under HERA, are crucial to enabling FHFA to fulfill its purpose and Congressional mandate of preserving and conserving the assets of Freddie Mac. Moreover, Congress made it clear that HERA confers upon FHFA, as Conservator, the right to avoid and recover any transfers made or any obligations incurred by a debtor of an entity regulated by FHFA (Freddie Mac being the entity regulated in this case) with the intent to hinder, delay, or defraud such regulated entity. In addition, HERA expressly makes such rights "superior" to any rights of any other party in a bankruptcy case, including a bankruptcy trustee. FHFA has asserted these rights under HERA in the LBHI bankruptcy case, seeking, by way of the HERA Priority Claim, to avoid and recover $1.2 billion (plus all accrued interest) that Freddie Mac loaned to LBHI less than one month before the filing of LBHI's Chapter 11 bankruptcy petition.

2.    In its Motion to Classify, LBHI asserts that the Bankruptcy Code procedures and priority scheme trump Freddie Mac's and FHFA's superior rights under HERA and that the HERA Priority Claim should be classified as a senior unsecured claim in LBHI Class 3 under the

---

[2]    12 U.S.C. §§ 4617(b)(15)(A)-(B).

[3]    *Id.* § 4617(b)(15)(D); *see also In re Colonial Realty*, 980 F.2d 125, 134 (2d Cir. 1992) (finding that identical language under FIRREA "indicates that a preferential claim . . . is at the heart of the FDIC's enhanced 'rights.'").

Plan, rather than as a LBHI Class 1 Claim entitled to a priority recovery under HERA. In its

Opposition to the Motion to Classify, FHFA and Freddie Mac object to the Motion to Classify,

and set forth in detail the relevant arguments and analysis by which FHFA and Freddie Mac seek

that the Motion to Classify be denied, and hereby reassert such arguments and analysis in all

respects. In response to the Bankruptcy Court's request in connection with its Report and

Recommendation, FHFA and Freddie Mac hereby further address certain additional arguments

raised in their District Court pleadings.

## ARGUMENT

### A.    LBHI's Claim That Section 507 Of The Bankruptcy Code Trumps HERA Is Meritless

3.      In its Opposition to the Motion to Withdraw the Reference, LBHI argues that the

Court need not reach the question whether FHFA is entitled to a priority recovery under HERA

because Section 507 of the Bankruptcy Code does not expressly refer to a claim under HERA,

and thus, FHFA and Freddie Mac are not entitled to a priority recovery in respect of the HERA

Priority Claim.

4.      In arguing that the Court need not look beyond Section 507, LBHI points to

Congress' amendment of Section 507 in the Crime Control Act of 1990 to add subsection (a)(8)

—which as modified in 1994 became (a)(9)—to provide a priority recovery to a Federal

depository institutions regulatory agency, such as FDIC, for claims for defaults under capital

maintenance agreements entered into by bank holding companies in support of their wholly-

owned federally insured banks. Opp. to Mot. to Withdraw at 12. LBHI argues that Congress'

failure to also amend Section 507 to grant a priority for FDIC's avoidance powers under Section

1821(d)(17), which grants avoidance and superior rights to FDIC that are virtually identical to

those granted to FHFA under Section 4617(b)(15), shows that Congress did not intend to give

FDIC under FIRREA, and by analogy FHFA under HERA, a priority with respect to its avoidance powers.

5.    LBHI's argument is wrong.  There is no credible basis for inferring from the absence of Congressional action in Section 507 that FHFA's rights under HERA should be limited as LBHI suggests.  Congress did not need to amend Section 507 to add references to the superior rights of FDIC and FHFA under Section 1821(d)(17) and Section 4617(b)(15), respectively, because those statutes represent clear, distinct statutory schemes by which FDIC and FHFA are independently authorized to resolve their respective regulated entities.  FIRREA is a distinct statutory framework established to address federally insured banks in conservatorship or receivership, independent of the Bankruptcy Code, and confers broad rights and powers on FDIC, including the right to avoid obligations incurred and transfers made by third parties with the intent to hinder, delay, or defraud, and these rights are expressly superior to the rights of a Chapter 11 trustee or any other non-Federal agency party.  HERA creates a similar separate statutory scheme to resolve Freddie Mac, including broad avoidance and superior rights and powers to FHFA independent of the Bankruptcy Code.  Congress did not amend Section 507 to reference FDIC's or FHFA's statutorily superior rights and powers to avoid fraudulent transfers and obligations incurred because the superiority of those rights is already clearly expressed in Section 1821(d)(17) of FIRREA and Section 4617(b)(15) of HERA, respectively.

6.    When Congress amended Section 507 to add subsection (a)(9), that addition was unrelated to FDIC's rights to address fraudulent acts under Section 1821(d)(17).  Rather, that provision was added to protect FDIC's contractual rights under a defaulted capital maintenance agreement against a bank holding company that was a debtor in a bankruptcy proceeding, and not otherwise subject to FDIC's receivership provisions, by providing that FDIC would get a

priority recovery in that bankruptcy in respect of its damage claim. And such damage claim was not otherwise accorded superior rights under FIRREA. Therefore, Congress amended Section 507 to give a "Federal depository institutions regulatory agency," such as FDIC, a priority recovery in the bankruptcy proceeding of a bank holding company on account of any defaulted capital maintenance agreement, and provided in Section 1821(d)(17) separate, superior rights to recover in respect of fraudulent acts against the regulated entities under FIRREA. In HERA, Congress granted FHFA the same superior rights and powers to address wrongful conduct against Freddie Mac as it provided to FDIC in Section 1821(d)(17). As to HERA, however, there was no need to amend Section 507 as there is no concept of a third-party capital maintenance agreement or similar executory contract supporting Freddie Mac in the bankruptcy context that requires Section 507(a) protection.

7.    In its Opposition to the Motion to Withdraw, LBHI notes the exception for any other Federal agency in Section 4617(b)(15)(D) in arguing that FHFA's right to a priority recovery by reason of FHFA's superior rights under HERA over any other party under Title 11 may be "unworkable." Opp. to Mot. to Withdraw at 11. Once again, LBHI's argument is wrong. If FHFA is entitled to a priority recovery under HERA by reason of an obligation that was incurred by a debtor of Freddie Mac with the intent to hinder, delay, or defraud, such as LBHI in respect of the August Loans, such funds should be returned to Freddie Mac/FHFA— i.e., the parties should be returned to the position they were in prior to the fraudulent conduct— prior to distributions in accordance with the priority scheme set forth in Section 507(a) of the Bankruptcy Code of property properly in the debtors' estate, including Section 507(a)(9). If transfers were made by a debtor prior to the commencement of its bankruptcy proceeding with the intent to hinder, delay, or defraud Freddie Mac or FHFA, Section 4617(b)(15)(D) provides

5

Freddie Mac and FHFA with a priority recovery in respect of such transfers, including the right to proceed against transferees of such transfers as permitted under 4617(b)(15)(B). Nevertheless, if the subject transfer was to another Federal agency, such as to the FDIC in respect of a pre-petition payment on account of a capital maintenance agreement, such priority right of recovery by the Conservator would be subject to the language of Section 4617(b)(15)(D).

8.      This hypothetical scenario raised by LBHI in its Opposition to the Motion to Withdraw is nothing more than a "red herring" in this case. As the Court is well aware, there are no outstanding Section 507(a)(9) claims in the LBHI bankruptcy, as all capital maintenance obligations owing by LBHI as the bank-holding company of its wholly owned banks, Woodlands Commercial Bank and Aurora Bank, FSB, were satisfied in full during the pendency of the Chapter 11 Cases, and thus no conflict exists. Indeed, pursuant to the Plan, LBHI and FHFA specifically provided that any priority recoveries to creditors on account of valid claims under either Section 507(a) *or* Section 4617(b)(15) would be paid in full—once again, there is no conflict!

**B.      No Examination Of The Plan Or Plan Stipulation Is Necessary**

9.      LBHI further argues in its Opposition to the Motion to Withdraw that in order to determine whether FHFA is entitled to a priority, a court must interpret the Plan and the Plan Stipulation entered into among the parties. Opp. to Mot. to Withdraw at 15. Notably, however, LBHI does not identify any provision of the Plan that must be interpreted in order to reach the statutory construction of HERA, and there is none.

10.      Section 1.127 of the Plan defines a "Priority Non-Tax Claim" as "any Claim . . . entitled to priority in payment under section 507(a) of the Bankruptcy Code *or* 12 U.S.C. § 4617(b)(15)" (emphasis added). Section 4.1(b) of the Plan provides that Priority Non-Tax

Claims are entitled to 100 per cent recovery under the Plan.[4]  Thus, the Plan is clear:  If FHFA has a valid claim under Section 4617(b)(15), it will be entitled to full recovery.  The issue is not whether a priority right to recovery under HERA qualifies under Section 507, but whether HERA grants FHFA a separate priority right of recovery.  If it does, it is entitled to 100 per cent recovery as a Priority Non-Tax Claim under the Plan.  Thus, the sole question raised by the Motion to Classify is just that— whether HERA grants FHFA a separate priority right of recovery.

11.    LBHI's argument that adjudication of its Motion to Classify requires an interpretation of the Plan Stipulation is similarly flawed.  Prior to Plan confirmation, LBHI and Freddie Mac entered into the Plan Stipulation to resolve Freddie Mac's and FHFA's objections to the Plan.  The Plan Stipulation provided for a modification of the Plan to include a separate reference to a claim under Section 4617(b)(15) as one being entitled to treatment as a Priority Non-Tax Claim, as noted above.  The Plan Stipulation further provided that the parties broadly reserved their rights, with Freddie Mac and FHFA reserving their rights to assert a priority recovery under HERA, and LBHI reserving its rights to object to the classification of the HERA Priority Claim.  LBHI exercised its rights under the Plan Stipulation to object to classification of the HERA Priority Claim by filing its Motion to Classify.  So too have Freddie Mac and FHFA exercised their rights, by opposing the Motion to Classify and seeking allowance of the HERA Priority Claim as one entitled to a 100 per cent recovery as a LBHI Class 1 Priority Non-Tax

---

[4]    Section 4.1  LBHI Class 1 - Priority Non-Tax Claims Against LBHI

. . .

(b)  *Distributions.*  Except to the extent that the holder of an Allowed Claim in LBHI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBHI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, *each holder of an Allowed Claim in LBHI Class 1 shall be paid by LBHI in Cash in full.*

Plan §4.1(b) (emphasis added).

Claim. The parties' reservation of rights does not change the clear language of the confirmed Plan.

**C.    HERA's Avoidance Rights Are Separate And Distinct From The Bankruptcy Code**

12.    In its Opposition to Motion to Withdraw, LBHI also cites the Bankruptcy Court's observation that HERA is "very closely analogous to bankruptcy law [regarding fraudulent transfers]," Opp. to Mot. to Withdraw at 9, and argues that analysis of HERA should be based upon the Bankruptcy Code's fraudulent transfer provisions.

13.    While some of the language in Section 4617(b)(15) may be similar, Section 4617(b)(15) is not a restatement or reformulation of Sections 548 and 550 of the Bankruptcy Code. HERA is a separate, stand-alone statute that expressly sets forth Congress' delegation of the powers and privileges it deemed required for resolving conservatorships and receiverships of FHFA regulated entities. Accordingly, HERA is wholly different in purpose, structure, and operation from the Bankruptcy Code and must be read on its own. To that end, Section 4617(b)(15)(A) grants FHFA the right to avoid any obligation incurred by a third party debtor of the regulated entity (here, Freddie Mac), or any transfers made by such debtor that preclude the timely repayment of such obligation, if the obligation was incurred or the transfers made with the intent to hinder, delay, or defraud Freddie Mac or FHFA. And upon the avoidance of such obligation incurred or transfers made, the parties must be returned to the position they were in before the fraud—here, under Section 4617(b)(15)(D), FHFA is entitled to recover on a priority basis the $1.2 billion wrongly taken from Freddie Mac and FHFA, together with applicable interest accrued up to the date of recovery.

14.    Indeed, as noted in the Motion to Withdraw, LBHI's reading of HERA to the contrary necessarily leads to absurd results never intended by Congress—such as FHFA's right to avoid the incurrence of the August Loans to the extent such loans were incurred by LBHI with

8

the intent to hinder, delay, or defraud Freddie Mac or FHFA but no right to a priority recovery (or any recovery!) absent subsequent fraudulent transfers to third parties—thereby rendering FHFA's explicit, mandatory "superior rights" under HERA over other parties in a bankruptcy meaningless.

15.    Thus, Sections 548 and 550 of the Bankruptcy Code are neither controlling nor dispositive of the interpretation of HERA's Section 4617(b)(15), which operates outside of the Bankruptcy Code in a separate statutory scheme, and must be interpreted based on its own statutory language, as the avoidance powers and "superior rights" granted FHFA under Section 4617(b)(15) are separate and distinct in operation, purpose, and effect from provisions in the Bankruptcy Code.

**D.    The $1.2 Billion Cash Reserve Should Be Maintained**

16.    Pursuant to the Motion to Classify, LBHI seeks an order releasing the $1.2 billion cash reserve that LBHI agreed to set aside pending resolution of the HERA Priority Claim, without regard to the fact that such reserve was established pursuant to the Plan Stipulation and so ordered by the Court in consideration for the resolution of FHFA's and Freddie Mac's objections to the Plan, and to specifically ensure payment of the HERA Priority Claim in the event that such claim is determined to be entitled to a priority recovery pursuant Section 4617(b)(15(D) of HERA and the Plan, arguing that the continued maintenance of the $1.2 billion reserve is prejudicial to LBHI's other creditors.

17.    Frankly, the only possible prejudice to other creditors is one of potential delay in the creditors' recovery, while any premature release of the $1.2 billion reserve prior to a final resolution of the HERA Priority Claim could irreparably harm Freddie Mac and FHFA by potentially leaving insufficient funds in the LBHI estate to pay the HERA Priority Claim. Further, to the extent such release results in an over distribution to current holders of previously

allowed unsecured claims, such release could also irreparably prejudice creditors holding claims not yet allowed if the remaining assets held in the LBHI bankruptcy estate are ultimately inadequate to provide both payment in full to Freddie Mac/ FHFA on account of the HERA Priority Claim and the full recovery to which such creditors may be entitled to under the Plan—a determination that no party can make with certainty at this time.

18.    Accordingly, FHFA submits that, in the event the Court is inclined to recommend that the HERA Priority Claim be reclassified as a senior unsecured claim, the Court should recommend that the $1.2. billion reserve be maintained pending determination of any subsequent appeals on the Motion to Classify and final resolution of the status of the HERA Priority Claim.

## CONCLUSION

19.    For the foregoing reasons, and the reasons set forth their prior papers and proceedings herein, FHFA and Freddie Mac respectfully request that this Court recommend that the District Court deny the Motion to Classify, and grant such other relief as the Court may deem just and proper.

Dated: New York, New York
January 10, 2013

/s/ Michael J. Canning___
Michael J. Canning
Richard M. Alexander
Nancy G. Milburn
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

*Attorneys for the Federal Housing Finance
Agency as Conservator of the Federal Home
Loan Mortgage Corporation*

/s/ Mark S. Landman_____
Mark S. Landman
LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
New York, New York 10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848

*Attorneys for the Federal Home Loan Mortgage
Corporation*