Hearing Date: January 28, 2014 at 10:00 a.m.

Joshua Dorchak
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
212.705.7000

Attorneys for UBS Financial Services Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                   :
In re                                                              :
                                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*        : Case No. 08-13555 (JMP)
                                                                   :
        Debtors.                                                   :
                                                                   :
------------------------------------------------------------------ X

**RESPONSE OF UBS FINANCIAL SERVICES INC.
TO THE FOUR HUNDRED FORTY-NINTH OMNIBUS OBJECTION
TO CLAIMS (510(B) CLAIMS)**

UBS Financial Services Inc. ("UBSFS"), by its undersigned counsel, respectfully submits this response, with the accompanying Declaration of Kenneth G. Crowley, to the Four Hundred Forty-Ninth Omnibus Objection to General Creditor Claims (510(b) Claims) [Docket No. 41664] (the "Objection") with respect to proof of claim number 17889 (the "Claim") filed by UBSFS against Lehman Brothers Holdings Inc. ("LBHI") in the above-captioned proceeding.

**PRELIMINARY STATEMENT**

1.  Pursuant to contracts with LBHI and Lehman Brothers Inc. ("LBI"), UBSFS distributed to its customers numerous notes issued by LBHI pursuant to offering materials containing LBHI's representations concerning its finances and operations. After LBHI filed for bankruptcy protection, many of these customers commenced actions or arbitrations against UBSFS, asserting securities fraud and related claims. The customers could not sue LBHI, due to

A/75905344.1

the automatic stay. The governing contracts provide that UBSFS is entitled to indemnity and contribution from LBHI with respect to the claims alleged against UBSFS. UBSFS duly and timely filed the Claim against LBHI for indemnity and contribution, and UBSFS has now suffered fixed and substantial damages covered by the Claim. By the Objection, the Plan Administrator essentially seeks to relieve LBHI of its contractual obligations to UBSFS. The Objection should be overruled, based on Second Circuit precedent, because section 510(b) does not unambiguously apply to the Claim and the Claim is not the kind of claim that section 510(b) is intended to subordinate.

## BACKGROUND

2. In 2007 and 2008, UBSFS purchased from LBI, in its capacity as underwriter, certain structured securities, including certain Medium Term Notes, Series I, U.S. Structured Notes issued by LBHI (the "<u>Structured Securities</u>"), expressly earmarked for distribution to UBSFS's clients. *See* Crowley Decl. ¶ 4.

3. The relationship between LBHI, LBI and UBSFS in these transactions was governed by, among other things, a certain Purchase Agreement among LBHI, LBI and UBSFS dated March 9, 2007 and a certain U.S. Structured Notes Purchase Agreement Amendment 1, dated November 5, 2007 by and between UBSFS, LBHI and LBI, along with subsequent amendments thereto, including a certain side letter, dated March 9, 2007 by and between LBI and UBSFS (collectively, the "<u>Purchase Agreement</u>"). *Id.* ¶ 5, Ex. A. The Purchase Agreement provides that LBI shall be the "Primary Agent," and that UBSFS shall have the same rights and obligations as LBI as Primary Agent, under a certain Distribution Agreement dated May 30, 2006 (the "<u>Distribution Agreement</u>"). *Id.* ¶ 5, Ex. B. The Purchase Agreement further provides that UBSFS shall purchase the Structured Securities from LBI pursuant to a separate "Terms Agreement" relating to each issuance of such securities. *Id.* ¶ 5, Ex. A. There were

approximately eighty-four issuances of Structured Securities purchased, at least in part, by UBSFS, pursuant to these agreements. *Id.* ¶ 5, Ex. C.

4.  Pursuant to the Distribution Agreement, UBSFS (in the capacity of an Agent) has a right to (a) indemnity from LBHI against any loss, claim, damage or liability to which UBSFS becomes subject insofar as such loss, claim, damage or liability arises out of or is based upon any untrue statement <u>or alleged</u> untrue statement in LBHI's offering materials or the omission <u>or alleged</u> omission of any material fact therein, and (b) to the extent such indemnity is unavailable or insufficient, contribution to the amount paid or payable by UBSFS as a result of any applicable loss (including legal or other expenses), (i) in such proportion as is appropriate to reflect the relative benefits received by LBHI on the one hand and the Agent on the other from the offering of the Securities, or (ii) if such allocation is not permitted by applicable law, as appropriate to reflect such relative benefits and the parties' relative fault with respect to any statements or omissions that resulted in the Agent's loss, subject to further defined terms and conditions. *Id.* ¶ 5, Ex. B, §§ 7(a) (indemnity), 7(d) (contribution).

5.  As expressly contemplated in the Purchase Agreement, UBSFS resold the Structured Securities to its clients. UBSFS did not purchase or hold any of the Structured Securities for its own account. *Id.* ¶ 6.

**<u>The Proceedings Against UBSFS</u>**

6.  After the commencement of LBHI's chapter 11 case and LBI's SIPA case, many of UBSFS's clients (the "<u>Claimants</u>") filed lawsuits (or joined class actions) or commenced arbitration proceedings before the Financial Industry Regulatory Authority ("<u>FINRA</u>") or other arbitral forums against UBSFS in connection with the Structured Securities (collectively, the "<u>Proceedings</u>"). *Id.* ¶ 7. In the Proceedings, the Claimants asserted (among other things)

3

securities fraud and related claims against UBSFS, and in support of those claims alleged that the offering materials concerning the Structured Securities that they had purchased contained material misstatements and omissions. *Id.*

7.      The Proceedings include several putative class actions filed in the Fall of 2008 against UBSFS and others relating to the Structured Securities, which were consolidated with certain other actions relating to Lehman-issued securities in January 2009 before Judge Kaplan under the caption *In re Lehman Brothers Equity/Debt Securities Litigation*, Case No. 08 Civ. 5523 (LAK) (S.D.N.Y.) (the "Class Action"). *Id.* ¶ 9. The Third Amended Complaint in the Class Action [Dkt. No. 212], filed on April 23, 2010, alleged, among other things, that UBSFS, as an underwriter and seller of the Structured Securities, was liable under sections 11 and 12(a)(2) of the Securities Act for allegedly false and misleading statements and omissions in the offering materials for the Structured Securities relating to Lehman's financial condition and creditworthiness. *Id.*

8.      The Proceedings also include over 500 FINRA arbitrations filed from December 1, 2008 through the present. *Id.* ¶ 10, Ex. D.

9.      LBHI is not a defendant alongside UBSFS in any of the Proceedings, presumably as a result of the automatic stay. *Id.* ¶ 8.

10.     Since late 2008, UBSFS, with the assistance of outside counsel, has been engaged in investigating and defending the Claimants' allegations and claims in the Proceedings. *Id.* ¶ 11. The Proceedings have been numerous, complex, and in some cases protracted. *Id.*

11.     As set forth in the accompanying Crowley Declaration, UBSFS has paid in excess of $80.1 million in arbitration settlements and awards and an additional $120 million in settlement of the Class Action. *Id.* ¶¶ 14, 16. Additionally, UBSFS and has paid attorneys' fees

in excess of $56.4 million in connection with the Proceedings. *Id*. ¶¶ 15, 17. Thus, UBSFS's actual losses to date in connection with the Proceedings, which are subject to indemnification and contribution from LBHI, are in excess of $256.5 million. *Id*. ¶¶ 13-18; *see id.* ¶ 5, Ex. B, §§ 7(a), 7(d).

**The Claim**

12.  On or about September 18, 2009, prior to the applicable bar date, UBSFS filed a proof of claim which was later assigned claim number 17889, asserting claims arising from losses suffered or defense costs incurred in connection with the Proceedings, in that the information that UBSFS's customers alleged was misleading had been provided in part by LBHI with a representation that such information did not contain any material misstatements or omissions. *Id.* ¶ 11, Ex. E. UBSFS expressly stated in the Annex to the proof of claim that it reserved the right to amend and/or supplement the proof of claim. *Id.* ¶ 12.

13.  On December 20, 2013, the Plan Administrator filed the Four Hundred Forty-Ninth Omnibus Objection to Claims (510(b) Claims) [Docket No. 41664], requesting that certain underwriter and broker claims, including UBSFS's claim, be classified as subordinated pursuant to section 510(b) of the Bankruptcy Code.

**ARGUMENT**

14.  The Plan Administrator argues that the Claim "fall[s] squarely within the plain text of section 510(b) of the Bankruptcy Code." It is far from clear, however, that the plain text of section 510(b) applies to the particular facts of the Claim. And upon examination of the statute's purposes, as enunciated by the Second Circuit, it becomes clear that section 510(b) does not in fact apply to the Claim. Accordingly, the Objection should be overruled.

15.     The Claim is a claim for indemnification and contribution as a matter of contract (i.e., the Distribution Agreement).  See Crowley Decl. Ex. B, §§ 7(a), 7(d).  UBSFS does not seek to hold LBHI liable to UBSFS, or co-liable with UBSFS to the claimants in the Proceedings, for securities fraud.  Indeed, LBHI's indemnity obligation extends to <u>alleged</u> misrepresentations and omissions in LBHI's offering materials, whether or not any such misrepresentations or omissions are proven.  The issue of UBSFS's and LBHI's relative fault will not arise at all, if the contract's indemnification or relative-benefits contribution clause is enforced; and if the issue of relative fault did arise, it would be solely in the context of determining the amount due from LBHI to UBSFS.  *See id*.  Accordingly, the Claim is not "on account of" the claims asserted by the Claimants in the Proceedings, but rather "on account of" LBHI's contractual obligations.

16.     As the Second Circuit has held, when a phrase in section 510(b) "is reasonably susceptible to both [the claimant's] narrow construction and the trustee's broader reading, … the phrase is ambiguous." *Rombro v. Defrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 255 (2d Cir. 2006) (concerning the phrase "arising from").  And as this Court recently noted, the phrase "arising from" in section 510(b) "may be ambiguous or unambiguous when juxtaposed against particular factual situations." *KIT digital, Inc. v . Invigor Group Limited (In re KIT digital, Inc.)*, 497 B.R. 170, 178 (Bankr. S.D.N.Y. 2013).  In *KIT digital,* the Court found the phrase "arising from" to be ambiguous with respect to a claim for the debtor's obligation to pay rent, even though there was "no doubt" that this obligation "was part and parcel of the underlying Agreement, which was an agreement for the purchase of a security." *Id.* at 185-86.  The same reasoning applies here.  The phrase "on account of" is ambiguous with respect to the Claim: the fact that the claims in the Proceedings are the context in which the Claim arises does not

6

necessarily mean that the Claim is on account of those claims, as opposed to the governing contract. *See id.*

17. The Second Circuit has instructed that when a phrase in section 510(b) is ambiguous in context, the court must look to the statute's intent. *Med Diversified*, 461 F.3d at 255-56; *see KIT digital*, 497 B.R. at 185. The Second Circuit has expressly determined that intent to be as follows: "Because there are only two rationales for mandatory subordination expressly or implicitly adopted by the Congress that enacted section 510(b), we conform our interpretation of the statute to require subordination here only if [the claimant] (1) took on the risk and return expectations of a shareholder, rather than a creditor, or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding to extend credit to the debtor." *Med Diversified*, 461 F.3d at 256. The Second Circuit noted that the precedent decisions consistently focus on whether a claimant bargained to become an investor or shareholder, as opposed to a creditor. *Id.* at 257-58 (citing, e.g., *In re Enron Corp.*, 341 B.R. 141, 167-68 (Bankr. S.D.N.Y. 2006)).

18. UBSFS undeniably stands outside the two categories of claimant targeted by section 510(b) as definitively interpreted by the Second Circuit. *See id.* at 256-58. UBSFS did not take on the risks of an equity holder or seek a recovery from an equity pool by any stretch of the imagination, since the LBHI securities that UBSFS resold were debt instruments. UBSFS did not even take on the risks of an investor in LBHI's debt, since UBSFS, as LBHI's "Agent," simply and immediately resold and distributed the notes, as the Purchase Agreement contemplated, and held none of them for its own account. *See* Crowley Decl. ¶ 6.

19. The Plan Administrator has cited precedent in which courts have held underwriters' indemnification claims subject to section 510(b) on the theory that "underwriters

7

are in a better position [than who, is unclear] to allocate risks associated with the issuance of securities." *See, e.g., In re Jacom Computer Servs., Inc.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002). All of the decisions that rely on this assumption predate, and are inconsistent with, the express opinion of the Second Circuit, which clearly considers "the risk-allocation rationale" to relate only to the risks inherent in acquiring an "equity interest." *See Med Diversified*, 461 F.3d at 258-59.[1]

20.   In any event, it is illogical to deprive UBSFS of the protection against risk that it contracted for, on the abstract theory that UBSFS took on heightened risk when it agreed to resell LBHI's notes using LBHI's offering materials. The Claim is a <u>contract</u> claim, not a securities fraud claim. UBSFS is a <u>counterparty</u> to LBHI, not an investor in LBHI. The Second Circuit noted that section 510(b) is designed to prohibit stockholders from "assum[ing] the role of a creditor," but noted its "equal concern for guarding against attempts by a bankruptcy debtor to clothe a general creditor in the garb of a shareholder." *See id.* at 258. This is what the Objection seeks to do.

---

[1] *Jacom* is also distinguishable on its facts, as it was not the case there that the debtor's own affiliate (here, LBI) underwrote the securities at issue.

A/75905344.1

## CONCLUSION

For the foregoing reasons, UBSFS respectfully requests that this Court overrule the Objection.

Dated: January 22, 2014
      New York, New York

                         **BINGHAM MCCUTCHEN LLP**

                         */s/ Joshua Dorchak*
                         Joshua Dorchak
                         399 Park Avenue
                         New York, New York  10022
                         Telephone:  212.705.7000
                         joshua.dorchak@bingham.com

                         Attorneys for UBS Financial Services Inc.