UNITED STATES BANKRUPTCY COURT
Southern District Of New York

In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP)

**PARTIAL TRANSFER OF CLAIM OTHER THAN FOR SECURITY**

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a).  Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Name of Transferee:  Credit Suisse International

Name of Transferor: BedRok Securities LLC

Name and Address where notices to transferee should be sent:

Credit Suisse International
One Cabot Square
London
E14 4QJ, United Kingdom
Attn: Ashwinee Sawh
Tel: 212-538-2905
Fax: N/A
e-mail: ashwinee.sawh@credit-suisse.com

Name and Address where transferee payments should be sent (if different from above): N/A

Court Claim # (if known):  67146

Amount of Claim Transferred:  $136,000,060.36

Date Claim Filed:  amended claims filed on 10/25/10 and 3/11/10, respectively, original claim filed on 9/22/09

Debtor:  Lehman Brothers Holdings Inc.

Name and Address where notices to transferor should be sent:

BedRok Securities LLC
Attn: Rick Caplan
555 Theodore Fremd Avenue
Suite C-301
Rye, New York 10580

NYC:256757.1

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____   Date: January 28, 2014 _____

Transferee/Transferee's Agent

NYC:256757.1

AGREEMENT
AND EVIDENCE OF TRANSFER OF CLAIM

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    (A)    For value received, the adequacy and sufficiency of which are hereby acknowledged, BedRok Securities LLC (the "Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Credit Suisse International (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) all of Seller's right, title and interest in and to that certain allowed senior unsecured claim represented by Proof of Claim Number 67416 (as such claim number amends the previously filed proofs of claim numbered 33006 and 66383) (the "Proof of Claim"), which was filed by Frank Russell Company ("Original Claimant") against Lehman Brothers Holdings Inc. (the "Debtor") in the proceedings for reorganization of Debtor (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP), but only to the extent relating to Seller's record and beneficial ownership in the securities (each, an "Underlying Security") specified in Schedule 1 attached hereto (the "Purchased Claim"), (b) all rights and benefits of Seller to the extent relating to each Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to each Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way each Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever that Seller may have, whether against the Debtor or any other party, arising out of or in connection with each Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to each Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under (A) the Agreement and Evidence of Transfer of Claim, dated as of January 28, 2014 (the "Oaktree Huntington Immediate Prior Agreement"), between Oaktree Huntington Investment Fund, L.P. ("Oaktree Huntington") and Seller; (B) the Agreement and Evidence of Transfer of Claim, dated as of January 28, 2014 (the "Oaktree VIII (Parallel 2) Immediate Prior Agreement"), between Oaktree Opportunities Fund VIII (Parallel 2), L.P. ("Oaktree VIII (Parallel 2)") and Seller; (C) the Agreement and Evidence of Transfer of Claim, dated as of January 28, 2014 (the "Oaktree VIII (Delaware) Immediate Prior Agreement"), between Oaktree Opportunities Fund VIII Delaware, L.P. ("Oaktree VIII (Delaware)") and Seller; and (D) the Agreement and Evidence of Transfer of Claim, dated as of January 28, 2014 (the "OCM VIIb Immediate Prior Agreement" and, collectively with the Oaktree Huntington Immediate Prior Agreement, the Oaktree VIII (Parallel 2) Immediate Prior Agreement and the Oaktree VIII (Delaware) Immediate Prior Agreement, the "Immediate Prior Agreements"), between OCM Opportunities Fund VIIb Delaware, L.P. ("OCM VIIb" and, collectively with Oaktree Huntington, Oaktree VIII (Parallel 2) and Oaktree VIII (Delaware), the "Immediate Prior Sellers") and Seller, together with the transfer agreements, if any, under which Seller, the Immediate Prior Sellers or any other prior seller (each a "Prior Seller") acquired the rights and obligations underlying or constituting a part of each Purchased Claim (the "Prior Agreements"), except for all rights of Seller to the Underlying Securities and (c) any and all proceeds of any of the foregoing to the extent relating to each Purchased Claim (all of the foregoing, collectively, as described in clauses (a), (b) and (c), the "Transferred Claims").

(B)    (1)    The Purchase Price specified on Schedule 2 hereto shall be paid by Purchaser to Seller on the date hereof (the "Closing Date") and upon Purchaser's receipt of this Agreement and Evidence of Transfer of Claim (this "Agreement") duly executed and delivered on behalf of both parties hereto; provided, however, that (i) Purchaser's and Seller's representations and warranties in this Agreement shall have been true and correct on the date of this Agreement, and (ii) each of Purchaser and Seller shall have complied with all covenants required by this Agreement to be complied with by it on or before the date of this Agreement.

(2)    The parties hereto agree that to the extent that after the Closing Date there is any Additional Allowed Claim Amount (as defined in and pursuant to the terms of the Immediate

Prior Agreements) in excess of the Immediate Claim Amount (as defined below), any obligation to fund an Additional Purchase Price (as defined in the Immediate Prior Agreements) in respect of such excess Additional Allowed Claim Amount shall be retained by the Immediate Prior Sellers and Purchaser shall not have any right, title, or interest in and to such excess Additional Allowed Claim Amount.  In connection with the foregoing, the terms "Purchased Claim" and "Transferred Claims" shall not include such excess Additional Allowed Claim Amount.

(3)    In the event, and to the extent, that after the Closing Date any portion of the Additional Claim Amount (as defined in the Immediate Prior Agreements) becomes an Allowed Claim in a type or class different than the Immediate Claim Amount (the "Recharacterized Claim"), (i) Purchaser shall effect (or shall use commercially reasonable efforts to cause any further direct or indirect transferee or assignee of Purchaser of the Recharacterized Claim (a "Purchaser Transferee") to effect) a transfer of the Recharacterized Claim to the Immediate Prior Sellers (or, in the alternative, to Seller for further transfer to the Immediate Prior Sellers), and (ii) in connection therewith shall make (or shall use commercially reasonable efforts to cause any Purchaser Transferee to make) to Seller, and to or for the benefit of the Immediate Prior Sellers, as "Purchaser" the representations and warranties (with Purchaser (or any such Purchaser Transferee) as "Seller") set forth in clauses (vi) (but in the case of such clause (vi) subject to such title as was received by Purchaser from Seller), (vii), (viii) (however, in the case of such clause (viii), the exercise by Purchaser of its rights under Section 3(B) of this Agreement shall not be deemed to give rise to a breach of clause (viii), and subject to substituting the words "Recharacterized Claim" for the words "Purchased Claim" contained in such representation) and (iv) of the first paragraph of Paragraph 2 of the Immediate Prior Agreements. In the event that Purchaser (or any such Purchaser Transferee) shall receive any payments, distributions or proceeds in respect of the Recharacterized Claim, Purchaser shall or shall use commercially reasonable efforts to cause any such Purchaser Transferee, as applicable, to promptly (but in any event no later than three (3) business days) remit to the Immediate Prior Sellers (or, in the alternative, to Seller for further remittance to the Immediate Prior Sellers) any payments, distributions or proceeds received by Purchaser or Purchaser Transferee, as applicable, in respect of the Recharacterized Claim. In the event that Purchaser (or any such Purchaser Transferee) shall receive any payments, distributions or proceeds in respect of the Recharacterized Claim, Purchaser shall or shall use commercially reasonable efforts to cause any such Purchaser Transferee, as applicable, to promptly (but in any event no later than three (3) business days) remit to the Immediate Prior Sellers (or, in the alternative, to Seller for further remittance to the Immediate Prior Sellers) any payments, distributions or proceeds received by Purchaser or Purchaser Transferee, as applicable, in respect of the Recharacterized Claim.  Purchaser agrees (and it shall be a condition of any further transfer to any such Purchaser Transferee that such Purchaser Transferee shall agree) that any further assignment of the Purchased Claims shall contain the provisions of this Paragraph 1(B)(3), including without limitation a commitment by any such Purchaser Transferee to make the representations and warranties set forth above.

2.    Seller hereby represents and warrants to Purchaser that:  (i) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms; (ii) Seller has not engaged, and shall not engage, in any acts, conduct or omissions, and Seller has not had, and shall not have, any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less in payments or distributions or less favorable treatment than other claims of the same class or type as claims comprising the Immediate Claim Amount; (iii) Seller has provided to Purchaser a true, correct and complete copy of the Immediate Prior Agreements, which are attached hereto as Exhibit A; (iv) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances of any kind or nature whatsoever; (v) Seller does not, and did not on the date of the filing of the Proceedings, hold any funds or property of or owe any amounts or property to the Debtor or any of their affiliates and has not effected or received the benefit of any set-off against the Debtor or any of their affiliates that would reduce the amount of, or otherwise impair, the Transferred Claims or any related distributions; (vi) Seller has not breached any terms of the Immediate Prior Agreements, and, with respect to Seller, the Immediate Prior Agreements are valid, enforceable and in full force and effect, and Seller has complied with all obligations thereunder; (vii) neither the execution,

delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting the Seller; (viii) no proceedings are pending or, to the best of Seller's knowledge, threatened against Seller before any relevant governmental authority that could materially or adversely affect the Transferred Claims; (ix) Seller is not selling the Transferred Claims or any interest therein for or on behalf of one or more employee benefit plans, or with funds which directly or indirectly constitute "plan assets" as defined in the Employee Retirement Income Security Act of 1974, as amended; (x) there are no preference actions against Seller, and no legal or equitable defenses, setoffs, counterclaims or offsets, reductions, recoupments, impairments, avoidances, disallowances or subordinations have been asserted or may be, based solely on Seller's conduct, successfully asserted by or on behalf of the Debtor to reduce the amount of the Transferred Claims or affect its validity or enforceability; and (xi) Seller has no obligations or liabilities related to or in connection with the Transferred Claims.

Seller represents and warrants to Purchaser, and Purchaser, by its acceptance of this Agreement and the payment of the Initial Purchase Price, represents and warrants to Seller, that (i) it is a sophisticated buyer or seller (as the case may be) with respect to the Transferred Claims, (ii) it has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the business and financial condition of the Debtor to make an informed decision regarding the Transferred Claims, and (iii) it has independently and without reliance on the other party hereto, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each of Seller and Purchaser has relied upon the express representations and warranties made by the other party hereto in this Paragraph 2. Each of Seller and Purchaser acknowledges that the other has not given it any investment advice or opinion on whether this Agreement is prudent. Purchaser has not relied, and will not rely, on Seller to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of the Debtor. Each of Seller and Purchaser acknowledges that (i) the other currently may have, and later may come into possession of, information regarding the Transferred Claims that is not known to it and that may be material to a decision to enter into this Agreement ("Excluded Information"), (ii) it has determined to enter into this Agreement notwithstanding its lack of knowledge of the Excluded Information, and (iii) the other party hereto shall have no liability to it, and it hereby, to the extent permitted by law, waives and releases any claims it may have against the other of Seller and Purchaser, with respect to the nondisclosure of the Excluded Information; provided, however, that each party's Excluded Information shall not and does not affect the truth or accuracy of such party's representations or warranties in this Agreement.  Each of Seller and Purchaser further acknowledge that the consideration being paid by Purchaser hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Purchased Claims pursuant to any plan or reorganization which is confirmed for the Debtor.

3.    (A)    Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Seller acknowledges and understands that Purchaser may file a copy of this Agreement with the Court, and hereby stipulates that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing the Debtor, the Court and all other interested parties that all further notices relating to the Transferred Claims, and all payments or distributions of money or property in respect of the Transferred Claims, shall be delivered or made to the Purchaser; provided, however that the Purchaser shall promptly provide notice to the Seller upon entry of such order.

(B)    In the event Purchaser or Seller receives notice of an objection, dispute, action, proceeding or litigation, including, without limitation, the filing of or service of a subpoena relating to the Purchased Claim (each, a "Dispute"), Purchaser or Seller, as applicable, shall promptly provide written notice to the other party and to Original Claimant of the foregoing (the "Dispute Notice").  As provided in the Prior Agreements, upon the occurrence of the initial Dispute (the "Initial Dispute"), Original Claimant is

authorized to defend against and resolve the Initial Dispute (the "<u>Seller Defense Authority</u>"), provided however that upon Seller's receipt of written instructions from the Majority Holders (as defined below) electing, in their sole discretion, to terminate the Seller Defense Authority, then Seller shall promptly thereafter notify Original Claimant that such Seller Defense Authority is so terminated.  As provided in the Prior Agreements, upon the receipt by Original Claimant of the Initial Dispute Notice, Original Claimant shall promptly (but in any event no later than five (5) business days after such notice) provide written notice to Immediate Prior Seller (which notice Immediate Prior Seller shall promptly forward to Seller, and Seller shall promptly forward to Purchaser) as to whether Original Claimant intends to exercise the Seller Defense Authority.  The "<u>Majority Holders</u>" means the then current holders (including, as the case may be, Seller) of more than 50% of the aggregate Immediate Claim Amount (as such term is defined in the Prior Agreement) (together with, if and to the extent applicable, any Additional Allowed Claim Amount (as such term is defined in the Prior Agreement)) of the claims then outstanding in respect of which such action is to be taken.

4.      All representations, warranties, covenants, and agreements contained herein shall survive the execution, delivery and performance of this Agreement and the purchase and sale of the Transferred Claims, and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and their successors and assigns.  Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller.  Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.      Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.  Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions, notices or proceeds received by Seller in respect of the Transferred Claims to Purchaser.

7.      Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).  Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York.  Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

[*Continued on following page*]

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 28th day of January, 2014.

**CREDIT SUISSE INTERNATIONAL**

By: _____

Name: ARUN CRONIN

Title: DIRECTOR

Address:

Credit Suisse International
One Cabot Square
London
E14 4QJ, United Kingdom
Attn: Ashwinee Sawh
Rel: 212-538-2905
Fax: N/A
Email: ashwinee.sawh@credit-suisse.com

By: _____

Emmanuel Parrenin
Name: Managing Director
Title: Fixed Income

Address: as above

**BEDROK SECURITIES LLC**

By: _____

Name: _____

Title: _____

Address:

BedRok Securities LLC
555 Theodore Fremd Avenue
Suite C-301
Rye, New York 10580
Telephone:  (914) 740 - 1501
Fax:  (888) 444 – 8360
Attention:  Rick Caplan
Email:  rick@caprokcapital.com

*[Signature Page to AOC]*

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 28th day of January, 2014.

**CREDIT SUISSE INTERNATIONAL**

By: _____

Name:

Title:

Address:

Credit Suisse International
One Cabot Square
London
E14 4QJ, United Kingdom
Attn: Ashwinee Sawh
Rel: 212-538-2905
Fax: N/A
Email: ashwinee.sawh@credit-suisse.com

**BEDROK SECURITIES LLC**

By: _____

Name: Rick Caplan

Title: President

Address:

BedRok Securities LLC
555 Theodore Fremd Avenue
Suite C-301
Rye, New York 10580
Telephone:    (914) 740 - 1501
Fax:          (888) 444 – 8360
Attention:    Rick Caplan
Email:        rick@caprokcapital.com

*[Signature Page to AOC]*

SCHEDULE 1

**Purchased Claim**

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Accrued Amount (as of Proof of Claim Filing Date) |
|---|---|---|---|---|---|---|
| Commercial Paper | 52525MJF6 | Lehman Brothers Holdings Inc. | $109,591,000.00 | 0% | 09/15/2008 | $109,591,000.00 |
| Commercial Paper, issued 02/13/2008 | 52525KAB8 | Lehman Brothers Holdings Inc. | $26,344,000.00 | 2.875% | 03/11/2009 | $26,409,060.36 |