UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

                                                  Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., et al.     08-13555 (JMP)

                    Debtors.                    (Jointly Administered)
----------------------------------------------------------------x

## DECLARATION OF HENRY RAMALLO

STATE OF NEW YORK    )
                             : ss.:
COUNTY OF NEW YORK  )

HENRY RAMALLO, being duly sworn, deposes and says:

        1.        I am a claimant in the above-captioned matter.

        2.        I am a Managing Director of Neuberger Berman Group LLC ("Neuberger") and was a Managing Director of Neuberger at the time of its merger with Lehman Brothers Holdings Inc. ("LBHI") in October 2003.

        3.        From 1998 through the acquisition of Neuberger by LBHI, I was a Portfolio Manager in the Dietrich Weismann asset management group within Neuberger and contributed to the increase of assets under the group's management.

        4.        Prior to the merger with LBHI, the members of our group, including me, had developed a large book of business that included many high net worth individuals and institutional clients.

        5.        In the months preceding the merger with LBHI, I was approached many times by Heidi Steiger, who was in charge of Neuberger's Wealth Management Division and a member of its Executive Management Committee. In these conversations, including by

telephone while I was away on vacation. I was expressly told by Ms. Steiger that I must continue my employment with Neuberger as part of LBHI. I was required by Ms. Steiger to sign a retention agreement that included numerous non-solicitation/confidentiality provisions ("restrictive covenants"). I was told on numerous occasions by Ms. Steiger that the terms of my retention with LBHI, including the restrictive covenants, were non-negotiable. Ms. Steiger told me that, if I did not accept the retention bonus that was offered to me and sign the restrictive covenants, my career at Neuberger would end. As a result, I would lose everything that I had spent my career building, including the client contacts and book of business that my group had developed at Neuberger due to the non-solicitation and confidentiality provisions of my existing employment agreement.

6. Heidi Steiger provided me with the retention agreement that I ultimately signed and that included the restrictive covenants and locked-in my employment and compensation scheme for the foreseeable future. A copy of that agreement is annexed hereto as Exhibit A.

7. In October 2003, Neuberger Berman was acquired by LBHI and, I joined LBHI and became subject to the LBHI compensation scheme.

8. The pressure exerted by Ms. Steiger for me to accept employment with LBHI made it clear to me that I had no choice whatsoever in the matter. Ms. Steiger told me in no uncertain terms that "this is the way it's going to be" and that, if I did not agree to the terms of the retention agreement, I was done at Neuberger and I would lose my entire book of business, as well as all the good will that I had developed over my career. Ms. Steiger made it unmistakable that my only choice was to join LBHI, which meant that I had no choice at all.

WHEREFORE, for the reasons set forth herein, the motion to reclassify my claim as an equity interest under 11 U.S.C. § 510(b) must be denied.

HENRY RAMALLO

Sworn to before me this
27 day of January, 2014.

Notary Public

MARY F. GATTUSO
NOTARY PUBLIC, State of New York
No. 01GA5071980
Qualified in New York County
Commission Expires January 21, 2015

Exhibit A

FORM OF
NEUBERGER BERMAN, INC.
<u>RETENTION BONUS POOL AWARD AGREEMENT</u>
(Ramallo)

August 19, 2003

In connection with the acquisition of Neuberger Berman, Inc., a Delaware corporation ("*NB Inc.*") by Lehman Brothers Holdings, Inc.'s ("*Lehman*"), pursuant to the merger of NB Inc. with and into Neuberger Berman Acquisition Company (the "*Merger*"), as set forth in the Agreement and Plan of Merger dated as of July 21, 2003 among Lehman Brothers Inc., Neuberger Berman Acquisition Company and NB Inc. (the "*Merger Agreement*"), NB Inc. and Lehman have agreed that you are key to the business of NB Inc. and, as such, NB Inc. desires to provide you with an incentive to remain employed with NB Inc. or its successor in the Merger (or a subsidiary thereof, if applicable) through and after the closing date of the Merger (the "*Merger Date*"). Accordingly, NB Inc. is pleased to offer you the opportunity to participate in a retention bonus pool program (the "*Retention Pool Plan*"), to be established by NB Inc. as of the Merger Date. This Retention Bonus Pool Award Agreement (the "*Award Agreement*") sets forth the terms and conditions of your award under the Retention Pool Plan. Unless otherwise set forth herein, this Award Agreement will become effective upon the Merger Date.

1. <u>Retention Bonus Pool Award</u>

   Subject to the terms and conditions of this Award Agreement and Schedules A, B and C attached hereto, you will be entitled to receive such allocated amount of the retention bonus pool established pursuant to the Retention Pool Plan (the "*Retention Bonus Pool*") as is identified on Schedule A as your "*Retention Bonus Pool Allocation.*"

2. <u>Certain Definitions</u>

   As used herein, the following terms have the following meanings:

   (a) "<u>Cause</u>" means:

   (i) gross negligence or willful misconduct in the performance of your duties as an employee of the Firm or willful and repeated failure to perform your duties after written notice specifying such failure and a reasonable time having been afforded to correct such failure;

   (ii) conviction of, or entering a plea of <u>nolo</u> <u>contendere</u> to, a felony (other than for a traffic violation) or a misdemeanor involving fraud, embezzlement, forgery or perjury;

   (iii) dishonesty that has resulted in, or may result in, damage to the property, business or reputation of the Firm; misappropriation of, or intentional damage to, the property, business or reputation of the Firm; perpetration of fraud on the Firm that has resulted in, or may result in, damage to the property or business of the Firm;

Error! Unknown document property name.

CONFIDENTIAL NB 00111

(iv)  a finding by the Securities and Exchange Commission ("*Commission*") or a court of competent jurisdiction that you have committed an act that would cause you or the Firm to be disqualified in any manner under Section 9 of the Investment Company Act, if the Commission were not to grant an exemptive order under section 9(c) thereof, or that would constitute grounds for the Commission to deny, revoke or suspend registration of NB Inc. or any of its affiliates as an investment advisor, broker-dealer or transfer agent, as applicable, with the Commission;

(v)  a material breach of NB Inc.'s policies or rules applicable to its employees; or

(vi)  a breach of the provisions set forth on Schedule B hereto.

(b)  "Date of Termination" means (i) if your employment is terminated by the Firm, the date of the Firm's delivery of written notice of termination or (ii) if your employment is terminated by you, the date that is ninety (90) days after your delivery of written notice of termination, or such earlier date as may be determined by the Firm in its sole discretion.

(c)  "Extended Absence" means your absence from employment for at least 180 days in any 12-month period as a result of your incapacity due to mental or physical illness, as determined by the Firm.

(d)  "Firm" means, collectively, NB Inc., and any subsidiaries or affiliates thereof, and its and their predecessors and successors, including but not limited to Lehman and its subsidiaries and affiliates.

(e)  "Good Reason" means, without your consent,

(i)  a material adverse change in your authority or duties and responsibilities to those that are not, in the aggregate, substantially equivalent to your authority, duties and responsibilities as they exist immediately after the Merger (except that a mere change in your reporting relationship will not be deemed a material adverse change as described herein);

(ii)  a change of more than fifty (50) miles in the location where you are to perform your principal duties;

(iii)  a material and adverse change in the overall structure of your total compensation, as of the date hereof, where such change results in a substantial diminution in your earning ability, it being understood that under the current structure of your total compensation, your applicable percentage payout is subject to change by the group head and is payable part in cash and part in conditional equity awards based on terms generally applicable to similarly situated NB Inc employees; or

(iv)  a material breach by NB Inc of a material term of this Award Agreement;

but none of the events described herein will constitute Good Reason unless (x) within sixty (60) days after the event giving rise to your claim of Good Reason, you notify NB Inc. in writing of

SEP-15-03  19:40    FROM-COMPLIANCE                    2124769662           T-060  P.04/10  F-009

such claim, describing the event you reasonably believe constitutes Good Reason, and (y) NB Inc. fails to cure such event within thirty (30) days after the date of NB Inc.'s receipt of the written notice.

3. Governing Law; Arbitration

(a) This Award Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflict of laws.

(b) Except as set forth in Schedule B, any dispute arising out of this Award Agreement will be exclusively resolved by binding statutory arbitration before the NASD or NYSE (as selected by NB Inc.), in accordance with the rules of the NASD or NYSE, as applicable, in effect at such time. Judgment upon the arbitrator's award may be entered by a court of competent jurisdiction.

4. Miscellaneous

(a) Nothing contained in this Award Agreement obligates the Firm to employ you in any capacity whatsoever or prohibits or restricts the Firm from terminating your employment at any time or for any reason whatsoever.

(b) Notices hereunder shall be delivered to the Firm at its principal executive office directed to the attention of NB Inc.'s (or its successor's) General Counsel, and to you at your last address appearing in the Firm's employment records.

(c) Except as expressly provided herein, this Award Agreement shall not confer on any person other than you and the Firm any rights or remedies hereunder. You may not, directly or indirectly (including by operation of law), assign your rights or obligations hereunder without the prior written consent of NB Inc. or its successors, and any such assignment by you in violation of this Award Agreement shall be void. However, this Award Agreement shall be binding upon your permitted successors and assigns.

(d) Without impairing your obligations or rights hereunder, NB Inc. or its successor may at any time assign its rights and obligations hereunder to any of its subsidiaries or affiliates (and have such rights and obligations reassigned to it or to any other subsidiary or affiliate). This Award Agreement shall inure to the benefit of and be binding upon the Firm and its successors and assigns.

(e) This Award Agreement may not be amended or modified other than by a written agreement executed by you and NB Inc. or its successors, nor may any provision hereof be waived other than by a writing executed by you or NB Inc. or its successors; provided that any waiver, amendment or modification of any of the provisions of this Award Agreement shall not be effective against the Firm without the written consent of NB, Inc or its successors

(f) If any provision of this Award Agreement is finally held to be invalid, illegal or unenforceable (whether in whole or in part), such provision shall be deemed modified to the extent, but only to the extent, of such invalidity, illegality or unenforceability and the remaining provisions shall not be affected thereby.

Error! Unknown document property name.

CONFIDENTIAL NB 00113

(g)  NB Inc. may withhold from any amounts payable under this Award Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

(h)  This Award Agreement may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

NEUBERGER BERMAN, INC.

By: _____
Name:
Title:

Agreed to and accepted as of the date of this Award Agreement by

_____
Henry Ramallo

Error: Unknown document property name.

CONFIDENTIAL NB 00114

Schedule A

## Retention Bonus Pool

1. Retention Bonus Pool Allocation: On the date of the Merger, $500,000 will be allocated to you and awarded to you in the form of restricted stock units ("RSUs"), to be credited to an account maintained on your behalf and payable in shares of common stock of Lehman ("Lehman Shares"). Such number of RSUs to be allocated and awarded to you will be determined by dividing the dollar amount set forth above by the "Parent Reference Price" (as defined in the Merger Agreement). Subject to certain adjustments and potential closing delay provisions described in the Merger Agreement, this price will be the average of the volume of the average weighted sales prices of Lehman Shares on the NYSE for the 10 trading days ending on the second trading day prior to the date of the Merger. If the calculation described herein produces a fractional number of RSUs, such fractional RSUs (to the second decimal point) will be credited to and continue to accrue in your Retention Bonus Pool account.

2. Vesting and Payment of RSUs: 20% per year, starting on the first anniversary of the Merger. Over the vesting period of your RSUs, your Retention Bonus Pool account will be credited with additional RSUs in respect of dividends paid to holders of the same number of Lehman Shares as you have RSUs in your account. On each vesting date, you will receive payment, in whole Lehman Shares, of such number of RSUs (including the RSUs credited as dividend equivalents on such RSUs) as are vested on that date, and any fractional Lehman Shares (to the second decimal point) will be used to offset any income tax withholding obligations of NB Inc. on such payment.

3. (a) Continued Vesting:
   - Termination by the Firm without Cause, if all provisions set forth in Schedule B are complied with before and after termination of employment.
   - Termination by you for Good Reason, if all provisions set forth in Schedule B are complied with before and after termination of employment.
   - Termination due to death or by the Firm due to Extended Absence

   (b) Payment of Vested Amounts after Termination of Employment:
   - If termination is (i) by the Firm without Cause or due to Extended Absence or (ii) by you for Good Reason, you will receive payment of your amounts on each of the original vesting dates described in paragraph 2 above. (Payment will be made in the event of continued vesting only if you continue to comply with the provisions of Schedule B.)
   - Upon your death, your estate will receive immediate payment of all unpaid amounts.

4. Forfeiture of Retention Bonus Pool allocated amounts:
   - Termination by Firm with Cause (with respect to any unvested amounts)
   - Termination by you without Good Reason (with respect to any unvested amounts)
   - Violation of any provisions set forth in Schedule B (with respect to any unvested amounts or any vested but unpaid amounts).

5. You will receive more details regarding the retention bonus pool when it is finalized.

Error: Unknown document property name

CONFIDENTIAL NB 00115

Schedule B

## Non-Solicitation; Company Information

1. In connection with the Merger, you will become entitled to receive distribution(s) from the retention bonus pool and you will exchange your shares of common stock of NB Inc. ("*NB Stock*") for the Merger Consideration (as defined in the Merger Agreement), and you hereby acknowledge and agree that:

    (a) it is essential to the success of the Merger and the Firm's enterprise in the future, and it is hereby so represented that your shares of NB Stock that are being transferred to Lehman upon consummation of the Merger be protected by covenants not to solicit clients or employees of the Firm; and

    (b) the Firm would suffer significant and irreparable harm, on and after the Effective Date, from your engaging in certain activities relating to the clients or employees of the Firm.

2. Therefore, you agree that the covenants and restrictions contained in this Schedule B are reasonable and necessary for Lehman and its affiliates to enjoy the full benefit of the business acquired in connection with the Merger and that the covenants and restrictions will not unreasonably restrict your professional opportunities should your employment with NB Inc. terminate. Accordingly, you agree that, you will not, directly or indirectly, either individually or as an owner, partner, agent, employee, advisor, consultant or otherwise (other than on behalf of the Firm while employed by the Firm) during your employment with the Firm and for a period of twelve months after your Date of Termination (the "Restricted Period"):

    (a) solicit or accept business from any individual or entity for whom any member of the Firm provides services within the one-year period before or after the Date of Termination;

    (b) solicit or accept business from any prospective client of the Firm who, within the one-year period prior to the Date of Termination, you had directly solicited or where, directly or indirectly, in whole or in part, you supervised or participated in the Firm's solicitation activities related to such prospective client;

    (c) solicit or accept business from or through, or engage in any sales or marketing activities with, any broker-dealer, bank, insurance company, financial planner or other financial institution (or any person employed by or associated with any such entity), with whom Executive had business contact during the one-year period prior to Executive's Date of Termination;

    (d) employ any current or former employee or consultant of the Firm (other than clerical, secretarial and other similar support personnel); or

(e) solicit (or assist in soliciting) any such person described in (d) to terminate his or her employment or consulting services with the Firm (but only if, with respect to a former employee, in the case of (d) or (e), such person shall have ceased to be employed by, or a consultant to, the Firm coincident with, or within one year prior to or after, the Date of Termination).

The covenants set forth in (a) through (e) above will also apply beginning on the date hereof and through the date the Merger occurs, but these covenants will no longer apply (i) if your employment is terminated without Cause by NB Inc. prior to the date the Merger occurs or (ii) the Merger does not occur and the Merger Agreement is terminated in accordance with its terms. Furthermore, the covenants set forth in (a) through (e) will no longer apply if your employment is terminated without Cause by NB Inc. or by you for Good Reason.

Company Information.

3.  You acknowledge that, during the course of your employment with the Firm, you have had, and will continue to have, access to confidential and proprietary information of the Firm. In recognition of the foregoing, you agree, at all times during the term of the your employment with the Firm and thereafter, to hold in confidence, and not to use, except for the benefit of the Firm, or to disclose to any person, firm, corporation or other entity without written authorization of the Firm, any Confidential Information of the Firm. You further agree not to make copies of such Confidential Information except as authorized by the Firm.

4.  For purposes of this Schedule B, "Confidential Information" means any Firm proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, suppliers, client and customer lists and customers (including, but not limited to, customers of the Firm on whom you call or with whom you become acquainted during the term of your employment), prices and costs, markets, software, developments, inventions, protocols, interfaces, processes, formulas, technology, designs, drawings, engineering materials, hardware configuration information, marketing data, licenses, finances, budgets or other business information disclosed to you by the Firm either directly or indirectly in writing, orally or by drawings or observation of parts or equipment or created by you during the period of your employment. You understand that Confidential Information includes, but is not limited to, information pertaining to any aspect of the Firm's business which is either information not known by actual or potential competitors of the Firm or is confidential or proprietary information of the Firm or its customers or suppliers, whether of a technical nature or otherwise. Notwithstanding the foregoing, Confidential Information shall not include (i) any of the foregoing items which have become publicly and widely known through no wrongful act of yours or of others who were under confidentiality obligations as to the item or items involved; or (ii) any information that you are required to disclose to, or by, any governmental or judicial authority; provided, however, that you give the Firm prompt written notice thereof so that the Firm may seek an appropriate protective order and/or waive in writing compliance with the confidentiality provisions of this Schedule B.

3

### General

5. **Specific Performance.** You acknowledge and agree that the Firm's remedies at law for a breach or threatened breach of any of the provisions of this Schedule B would be inadequate and the Firm would suffer irreparable damages as a result of such breach or threatened breach. Therefore, you agree that, in the event of such a breach or threatened breach, in addition to any remedies at law, NB Inc. (or its successor) or any other member of the Firm, without posting any bond, may cease making any payments or providing any benefit otherwise required by this Award Agreement and obtain equitable relief in the form of specific performance, temporary restraining order, temporary or permanent injunction or any other equitable remedy which may then be available.

6. **Separability.** It is understood and agreed that although you and NB Inc. consider the restrictions contained in this Schedule B to be reasonable, if a final judicial determination is made by a court of competent jurisdiction that the time or any other restriction contained in this Schedule B is an unenforceable restriction against you, the provisions of this Schedule B shall not be void but shall be deemed amended to apply to such maximum time and territory and to such maximum extent as the court may determine to be enforceable. Alternatively, if any court of competent jurisdiction finds that any restriction contained in this Schedule B is unenforceable, and such restriction cannot be amended to make it enforceable, such finding shall not affect the enforceability of any of the other restrictions contained herein.

7. **Confidentiality of Agreement.** Except as required by law, you will not disclose to anyone, other than to your immediate family and legal or financial advisors, the existence or contents of this Award Agreement; provided that you may disclose to any prospective future employer the provisions of this Schedule B so long as they agree to maintain the confidentiality of such provisions.

8. **Other Agreements.** Nothing in this Schedule B shall operate to supersede, limit or waive any existing agreements between you and the Firm relating to the subject matter herein, whether or not such other agreements contain similar restrictive covenants, and nothing in any such other agreements shall operate to supersede, limit or waive the restrictive covenants contained in this Schedule B regardless of whether such agreements purport to contain the entire agreement on these matters between you and the Firm. If the restrictive covenants contained in this Schedule B and in any other agreements appear to be in conflict with each other, all such restrictive covenants shall apply independently of each other and shall remain in full force and effect regardless of the conflict.

Error: Unknown document property name.

CONFIDENTIAL NB 00118

4

Schedule C

## Parachute Payment Limitation

*If* it is determined that any payment or benefit whatsoever provided to you under this Award Agreement or otherwise (a "Payment") would be considered a "parachute payment" within the meaning of Section 280G(b)(2) of the Internal Revenue Code of 1986, as amended (the "Code") as a result of a change in ownership or control of NB Inc., within the meaning of Section 280G of the Code, and if, after reduction for any applicable federal excise tax imposed by Code Section 4999 (the "Excise Tax") and federal income tax imposed by the Code, your proceeds of the Payments would be less than the amount of your net proceeds resulting from the payment of the Reduced Amount (described below), after reduction for federal income taxes, *then* the Payments shall be limited to the Reduced Amount. The "Reduced Amount" shall be the largest amount that could be received by you as Payments such that no Payment would be subject to the Excise Tax. In the event that the Payments shall be limited to the Reduced Amount, then the amounts payable under Schedule A shall be the first amounts to be reduced.

Error: Unknown document property name.

CONFIDENTIAL NB 00119

Index No. _____ Year _____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

LEHMAN BROTHERS HOLDINGS INC., et al.

Debtors.

Chapter 11 Case No.
08-13555 (JMP)
(Jointly Administered)

**DECLARATION OF HENRY RAMALLO**

Signature (Rule 130-1.1-a)

Print name beneath

**KAPLAN LANDAU LLP**
*Attorneys for* Neuberger Claimants
*Office and Post Office Address, Telephone*
1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018
(212) 593-1700

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated _____

Attorney(s) for

1500 – **Blumberg**Excelsior Inc., NYC 10013

---

**NOTICE OF ENTRY**

PLEASE take notice that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named court on

Dated, Yours, etc.
**KAPLAN LANDAU LLP**
*Attorneys for*
*Office and Post Office Address*
1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018

To

Attorney(s) for

**NOTICE OF SETTLEMENT**

PLEASE take notice that an order
of which the within is a true copy will be presented
for settlement to the Hon.
one of the judges of the within named Court, at
on
at                M.
Dated, Yours, etc.
**KAPLAN LANDAU LLP**
*Attorneys for*
*Office and Post Office Address*
1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018

To

Attorney(s) for