UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

RE:   LEHMAN BROTHERS HOLDINGS INC. et al. Debtors
      Chapter 11 Case No. 08-13555 (JMP)
      Jointly Administered

FROM:   ANDREA T. JAO
        77 Seventh Ave, Apt 10-S
        New York NY 10011
        Tel: (917) 209-4497
        Andrea.Jao@gmail.com

MEMORANDUM IN OPPOSITION TO DEBTORS' OMNIBUS OBJECTIONS
SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY

I am a pro se claimant, who started as a junior analyst in the equity research department in 2000, had the opportunity to take on more responsibility and stayed through the bankruptcy in 2008.

In 2009, when I received proof of claim forms from Lehman Brothers Holdings Inc (United States Bankruptcy Court, Southern District of New York, Lehman Brothers Holdings Claims Processing Center c/o Epiq Bankruptcy Solutions LLC) I filled out the forms and submitted them as instructed – because I thought it only fair that I should recover unpaid compensation.

I would like to respectfully petition the Court to recognize that RSU claims are unpaid compensation and that claimants should receive payment from Lehman Brothers Holdings Inc. Lehman employees did not make an investment in Lehman except to the extent any employee makes an investment in a company when they decide to work for it. I concur with the arguments made by claimants' counsel and would like to add the following:

First, it is a matter of fairness. Like other claimants who were rank and file employees of Lehman Brothers, my relationship with the company was a way to earn a livelihood. While I am not a lawyer and thus am not as educated and well informed in the law, I do understand that workers are afforded certain protections under the law. However, through the whole bankruptcy process, we have been relegated to the very end of the line, i.e. institutional investors as well as their legal counsel have already received significant amounts on an on-going basis. On the other hand, employees are still struggling to get through these proceedings, with far less resources to do so. The best way I can describe the experience is that it has been a matter of attrition. I think others have dropped their claims, not because they agree that RSUs are equity interests, but because the requirements had become too demanding or confusing or because the wait had simply become too long, discouragingly so.

Second, the use of RSUs as compensation entailed a lot of complications as well as hype. One of the most prominent catch phrases used is "RSUs make employees act as owners or shareholders." I think this phrase makes for a great sound bite, which any employee working for any firm would think twice before contradicting. However, it begs the question "Did holders of RSUs really have the ability to act as owners and shareholders?" For the following reasons, I would argue that holders of RSUs, vested or unvested, did not have the ability to act as owners and shareholders:

(1) One of the hallmarks of ownership in a company is the ability to have an impact on its policies, such as what types of business to engage in, how much risk to take, how much leverage to put on its balance sheet, how much dividends to pay, to raise or not to raise capital, to build-up or draw down a cash reserve, to lengthen debt maturities, etc. The former senior management at Lehman Brothers had on-going conversations and conference calls with institutional investors, during which institutional investors could express their opinions regarding these policies. In addition, institutional investors could signal their favor or disfavor to senior management through financial markets, such as via the stock price or credit default swap spreads. Holders of RSUs did not participate in any of these markets. Senior management and the Board

of Directors crafted policies and made decisions for Lehman Brothers, not rank and file employees.

(2) Another hallmark of ownership in a publicly traded company is the ability to use liquid markets to express an opinion. Typically, both institutional and retail equity investors make a specific choice to buy shares of stock and can easily do so given liquid cash equity markets. Once they own the stock, their choices are to hold or sell. The typical equity shareholder faces three choices: buy, hold, and sell. If equity investors carry residual risk and can be wiped out, it is important that they have the ability to exercise all three choices. Holders of RSUs did not have all these choices. RSUs have neither a buy or sell choices; all an employee can do is hold. For a holder of RSUs to "vote with their feet" would be very costly, because we would be walking away from unpaid wages for which we already rendered labor. It is because of this that RSUs are often described as a retention device by employers and holders of RSUs did not have full capacity to "vote with their feet." It is my humble opinion that labor law should protect employees from having to walk away from compensation, for which we already rendered labor.

(3) In addition, shareholders and other institutional investors know upfront, before they make an investment, how much their investment would be. Lehman employees were only told if a portion of their compensation would be in RSUs at the end of the year, after services were rendered. The decision regarding if and what proportion of cash versus RSUs was made by senior management, taking into consideration the other needs of the firm.

(4) While the use of RSUs is described as a compensation mechanism, their use allowed Lehman Brothers to defer expenses, which complicated the employer employee relationship. At Lehman Brothers, we were given our compensation statements at the end of each year based on how well we did during that year. We received the cash portion soon after, with Lehman

having recognized this expense during the course of the year. However, Lehman recognized the expenses associated with RSUs only over the next 3 to 5 or so years, and benefited from the deferral of expenses even if services were rendered in the past year, i.e. having received the benefit of my services in the past year. This accounting practice gave Lehman Brothers the incentive to use a compensation mechanism that was not necessarily transparent, fair nor in the best of interest of rank and file employees working at the company to earn a livelihood.

(5) Last but not least, if I am not mistaken, the RSU agreement does state that holders of RSUs do not have the rights of shareholders. But this should not mean that labor should lose its lawful protection. RSUs were used in such a way that employees could not fully protect their own rights

By:   Andrea T. Jao

February 4, 2014