Arthur J. Kenney  (*Pro Se*)
200 East End Avenue, Apt. 5 DE
NYC, NY 10128
(646) 756-5393

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re

LEHMAN BROTHERS HOLDINGS INC., *et al.*,
   Debtors.

Chapter 11 Case No.
08-13555 (JMP)
(Jointly Administered)

-----------------------------------------------------------------x

## MEMORANDUM IN OPPOSITION TO DEBTORS' ONE HUNDRED THIRTY -FIRST OMNIBUS OBJECTION SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY, TO SUBORDINATE CLAIMS PURSUANT TO SECTION 510(b) OF THE BANKRUPTCY CODE



1

RE: **Claim # 14067** in the amount of **$65,172.22**

I. **OPENING STATEMENT:**

I had segregated my DEFERRED COMPENSATION CLAIMS into different classes of claims to facilitate the court's understanding of the particulars of each claim and according to the dis-aggregated proofs-of-claim materials available to me. **Claim # 14067** in the amount of **$65,172.22** represents dollar amounts of <u>commissions earned, segregated and withheld throughout the Fiscal Year December 1, 2007 through August 31, 2008</u>. These were never converted into RSUs but were segregated and appeared as a line item toward the end of the month on the compensation statement. LBHI refers to the accrued, segregated and withheld commissions in certain places as stock, and in other places as stock options. These entries were neither of these. A more proper term for the accrued commissions would have been convertible debt when LBHI was a going concern, and as debt when Lehman Brothers entered Bankruptcy. The court should reject the relief sought by LBHI and allow this claim to proceed as a general creditor and compensation claim.

II. **FACTS:**

At the time of the Lehman Brothers bankruptcy, I, Arthur J. Kenney, was a commission salesman for the firm for over 25 years.

During the Fiscal Year 2008, until time of bankruptcy, (Dec. 1, 2007 through the bankruptcy filing in September, 2008), I generated $4,082,282.28 of gross commissions. Claim #14067 in the amount of $65,172.11, represents earned, segregated and withheld sales commissions that were accrued for the Lehman Brothers fiscal year 2008, starting on DECEMBER 1, 2007 through the month of August, 2008. (for your reference kindly see attached **EXHIBIT A**).

During that part of the Lehman Brothers fiscal year, a total of $94,853.12. of earned, segregated and withheld sales commissions were accrued. On July 1, 2008, $29,681 of these segregated commissions were used to purchase (converted into) 1,416.06 (Lehman Brothers) Restricted Stock Units (RSUs) at a conversion price of $17.91 per Restricted Stock Unit. I had meticulously deducted the $29,681 amount from the *gross amount* of $94,853.12 accrued commissions to arrive at the net amount of this claim. The balance of the earned, segregated and withheld sales commissions was a total of $ 65,172 for that period (thru 08/31/08). Please note that in addition to this outstanding, accrued amount, $ 16,425.55 of SEPTEMBER sales commissions were additionally earned and accrued, as evidenced by the attached compensation print-out (EXHIBIT A column Sep-08) After filing an update to Claim #14067, it was agreed with LBHI Attorneys that this amount would become Claim #67880 (against which LBHI subsequently filed Omnibus Claim #410.

In the Omnibus Objection, LBHI refers to these commission accruals as stock options in some places and stock in others. Instead, a more proper term would be convertible debt. The debt's conversion rate would have been determined toward the end of the year by the compensation committee, but since no conversion rate was set, these funds remain unconvertible debt. Since neither LBHI nor the Plan Administrator have the authority to set a conversion price into equity, the accrued commissions should be treated as debt.

### III.   CLAIMANT'S RESPONSES TO DEBTORS' ANNOTATED RESPONSES:

#5    A filed proof of claim is "deemed allowed, unless a party in interest…"

#6    The debtors have met their burden of persuasion to overcome the prima facie validity…

#7    As a result of the Objections, the burden has shifted to the Respondents…


#9

**Rebuttal:** LBHI erroneously categorizes the accrued commissions as Equity Awards.  It is not a right until a certain price/exchange rate would have been set, and therefore remained an obligation or debt by LBHI to the Claimant. Further, in each of the cases referenced, LBHI mischaracterizes the commission accruals: 1) in citing Baldwin-United Corp., LBHI mischaracterizes the commission accruals as stock-options (stock options have a set strike price);  in citing Nantahala Capital Partners , LBHI again mischaracterizes the commission accruals as tracking warrants (which also have a set conversion price,  hence the term "tracker"); in citing Carrieri vs Jobs.com, LBHI references the "claimant's  right to redeem stock" (the commission accruals were not stock); in Einstein/Noah Bagel Corp, debtors', LBHI references a non-transferrable, non-assignable put right, but I reiterate that the accrued commissions were not a "put" since no strike-price was set.


#10    Debtor claims: ' Any rights that Respondents may have under the Equity Awards do not give rise to a claim within the meaning of section 101(5) of the Bankruptcy code because respondents are not entitled to a "right of payment" in cash on behalf of the Equity Awards.

**Rebuttal:** Again, in spite of the observation by the court of the differentiation between claims regarding unpaid aggregate commissions vs. outstanding RSUs, LBHI erroneously aggregates the two trying to blur the differentiation.  The Aristeria Capital v. Calpine cited by LBHI is not germane to my claim since the case is about "conversion rights which vary with the value of the common stock", not about outstanding accrued sales commissions.


#14    Debtors' Reply: Respondents' argument that they received Equity Awards as part of their overall compensation is irrelevant to the treatment and classification of the Outstanding Claims as equity interests and does not impact the applicability of sections 510(a) and 501(b) of the Bankruptcy Code to claims based on the Equity Awards.

**Rebuttal:** Since my claim is about accrued, withheld and segregated sales commissions, this issue is not germane to my claim.

#16     ..."Second, courts have held that equity interests distributed as part of their compensation are subject to subordination pursuant to section 510(b) of the Bankruptcy Code.

**Rebuttal**: again, LBHI has erroneously aggregated disparate RSU v. aggregate sales commission despite the differentiation noted by the court at the hearing on DECEMBER 21, 2011. Further, none of the cases cited are germane to my case (accrued, segregated sales commissions): i.e., Enron Corp. (stock options issues); Frankum v. Int'l Wireless Commc'ns Holdings, Inc. (stock/stock options issues); Touch America Holdings, Inc. (stock/stock options issues).

#17     ..."Like the Respondents, the employees in Enron argued that they did not "purchase" the stock options," but rather received them as part of an employee compensation package."

**Rebuttal**: Again, this is not germane to my claim (Enron deals with stock option issues and not accrued sales commissions).


#19     " In willingly engaging in the exchange of Labor for Equity Awards, the Respondents bargained not for cash but to become shareholders of LBHI stock."

**Rebuttal**: I never was given the opportunity to Bargain as the program was a "non-negotiated contract of adhesion." On LBHI's assertion that "Employees willingly engaged in the exchange of Labor for Equity Awards, the Respondents bargained not for cash, but to become shareholders of LBHI common stock," there was no negotiation as evidenced by items in Exhibit B (Provided as part of OMNIBUS REPLY TO RESPONSES TO LBHI...):

1)     The Equity awards Program was imposed on employees by management (this was not bargained for) and was a non-negotiated contract of adhesion. Page #4 of the 2008 Equity Awards program (Overview of the 2008 Changes )in the 3rd bullet point Management states:

*"Preserving our ownership culture: as in the past, the overall objective of the Firm's Equity Award Program is to ensure multi-alignment with shareholders through significant ownership stakes for employees".*

2)     The terms of the program demonstrate that the program was imposed on employees and not bargained-for: e.g., on the same page the first of the "3 primary changes to the 2008 program", Management indicated they were completely eliminating the equity discount and reducing but still maintaining a required holding period :

*"Equity Discount: Beginning with the 2008 equity award, employees will no longer be granted RSUs at a discount from their fair market value at the time of the grant. However, RSUs will be subject to a much shorter holding period (3 years)."*

N.B., nobody would "willingly engage ... and bargain" to buy LBHI stock (without a discount from the market value) at a date in the future and be required to hold it for 3 years starting on that date, when alternatively

4

you could simply purchase the stock "in the open market at that same price without any required holding period." This condition demonstrates that the program was imposed on employees and was not "bargained for" as LBHI asserts.

#24    Debtor' Reply: Respondents do not provide any support for the assertion that the vesting of Equity Awards, or the actual delivery is necessary for the subordination of the Outstanding Claims.

**Rebuttal**: Again, the claim I have filed pertains to the accrued, segregated commissions and not RSUs. The accrued commissions were debt obligations on the part of LBHI. On July 1, 2008, LBHI chose to convert 20% of the accrued commissions into equity. The balance of the accrued sales commissions remain a debt obligation of LBHI.

#25    Debtors' Reply: Similarly, the analysis under section 510(b) here does not depend on whether Respondents were actual shareholders, but rather the nature of their underlying claim.

**Rebuttal**: LBHI makes the case that the Equity Awards (RSUs) are limited by their status having "rights of a common stockholder and nothing more." The accrued sales commissions in Claim #14067 were never converted into Equity Awards (RSUs) and remain a debt obligation of LBHI.

#26    Debtors; reply: "Certain respondents that (sic) earned commissions throughout the year assert that portions of their monthly paychecks for the year 2008 were deducted and because LBHI typically issued equity Awards in November or December, such Respondents never received Equity Awards on account of such deductions. Some of such respondents also assert that LBHI escrowed cash for their benefit on account of such amounts. Based on the Debtors' review of their books and records, no amounts were held in escrow, constructive trusts, or otherwise for the benefit of such amounts. Based on the debtors' review of their books and records, no amounts were held in escrow, constructive trust, or otherwise for the benefit of Respondents in connection with Equity Awards.

**Rebuttal**: LBHI was a public company and subject to S.E.C. oversight and adherence to *U.S. GAAP Standards*. If LBHI cannot locate the corresponding account, they should access a party in forensic accounting with the expertise required. Scrutinizing the July 1, 2008 daily cash flow statement would easily allow them to ascertain the accounts accessed to convert 20% of the accrued commissions to LBHI stock at $20.96 on that date.

#30    Debtors' Reply: Respondents' assertions that cash was deducted from their paychecks and escrowed for their benefit are not supported by any evidence and are merely asserted in unsworn statements in certain of the responses.

**Rebuttal**: My claim was accompanied with my FY 2008 (Dec. '07- Sept. 14, '08) compensation statement which indicated the monthly accrued commissions. In my claim, I duly deducted the amount that the firm used in converting the 20% into RSUs on JULY 1, 2008 (statement also included to insure transparency).

5

Also, for you reference, please find attached e-mail (offered as attachment **EXHIBIT B**) from Ms. Rebecca McAdams of Barclays HR Department, the firm that acquired the Assets of Lehman Brothers: Dated Tuesday, Oct. 4, 2011; Subject: *"Per our conversations"*. <u>Her e-mail indicated the policy for the treatment of accrued commissions for the incentive awards when the Firm did not exercise the conversion</u> (last bullet-point, with excerpt below for easy reference):

- ..."*Upon your departure from the Firm, it is our intention to process a cash payment to you representing the commission pay that has been held back throughout the year (2011). This amount was earned (and is reflected on your pay statements, I believe); it would have been delivered in the form of SVP/CVP in February of 2012...*"

## IV.   IN SUMMATION

Once again, may I reiterate that I had segregated my DEFERRED COMPENSATION CLAIMS into different classes of claims to facilitate the court's determination of where each fell across the debt-equity spectrum.

LBHI refers to the accrued commissions in certain places as stock and as stock options in other places. A more proper term for the accrued commissions would have been convertible debt when Lehman Brothers was a going concern, and as debt when Lehman Brothers entered Bankruptcy.

Claim #14067 is for withheld, accrued commissions segregated by Lehman Brothers fiscal year 2008, starting on DECEMBER 1, 2007 through the end of August, 2008. The Court has recognized within the universe of claims, there should be a differentiation or class of claim for those that are commission-based, and Claim #14067 falls into that class.

## V.   IN CONCLUSION:

Given the detailed substance of my Claim #14067 and the point-by-point Rebuttals contained herein, may I respectfully petition that the Omnibus Objections #131 be denied in their entirety and that Claim #14067 be allowed proceed as a legitimate general creditor and compensation claim.

Arthur J. Kenney    x_____[signature]_____    January 30, 2014

6

# CLAIM No. 14067  EXHIBIT A

# COMMISSION PRINT-OUT

| Year Total | | Sep-08 | Aug-08 | Jul-08 | Jun-08 | May-08 | Apr-08 | Mar-08 | Feb-08 | Jan-08 | Dec-07 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4,082,282.28 | oss Producti | 100,505.09 | 335,362.74 | 485,245.17 | 330,816.07 | 436,459.74 | 555,973.90 | 411,792.60 | 431,491.57 | 542,848.94 | 451,786.45 |
| 628,551.73 | let Productio | 16,425.55 | 54,745.69 | 75,070.58 | 51,691.32 | 63,551.26 | 86,174.21 | 63,568.54 | 64,238.86 | 82,557.95 | 70,527.78 |
| 0.48 | o Net Produc | 0 | 0 | 0 | 0 | 0 | 0 | 0.34 | 0 | 0.14 | 0 |
| 15.4 | erage Rate ( | 16.34 | 16.32 | 15.47 | 15.63 | 14.56 | 15.5 | 15.44 | 14.89 | 15.21 | 15.61 |
| | Prior Months -Deficit | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| -59,096.83 | to Net Produ | 0 | -8,199.85 | -11,194.03 | -7,721.77 | -9,521.75 | -12,926.03 | -9,533.40 | 0 | 0 | 0 |
| | ily Payout Ba | 16,425.55 | 46,545.85 | 63,876.54 | 43,969.55 | 54,029.51 | 73,248.18 | 54,035.48 | 64,238.86 | 82,558.08 | 70,527.78 |
| 0 | Draw Amoun | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 569,455.37 | ales Compe | 16,425.55 | 46,545.85 | 63,876.54 | 43,969.55 | 54,029.51 | 73,248.18 | 54,035.48 | 64,238.86 | 82,558.08 | 70,527.78 |
| 458,176.71 | sh Commissi | 0 | 40,552.54 | 52,541.23 | 40,646.81 | 46,657.63 | 58,140.78 | 46,661.20 | 52,757.72 | 63,703.45 | 56,515.35 |
| 94,853.11 | Accrual Calc | 0 | 5,993.31 | 11,335.31 | 3,322.74 | 7,371.88 | 15,107.40 | 7,374.28 | 11,481.14 | 18,854.63 | 14,012.43 |
| 553,029.83 | otal Sales Co | 0 | 46,545.85 | 63,876.54 | 43,969.55 | 54,029.51 | 73,248.18 | 54,035.48 | 64,238.86 | 82,558.08 | 70,527.78 |
| | -Deficit/Overa | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## \*\*\*EXHIBIT B

**Kenney, Arthur J: Equities Sales (NYK)**

**From:** McAdams, Rebecca: HR (NYK)
**Sent:** Tuesday, October 04, 2011 2:07 PM
**To:** Kenney, Arthur J: Equities Sales (NYK)
**Subject:** Per our conversations

Art:

I hope all is going well with your transition. As we have discussed, I can confirm the following:
- Your last day of employment will be December 23rd, 2011 and you will be in active work status
through that day (as opposed to serving your notice period out of the office). All access will remain
as currently granted until your departure, unless you and the team inform me otherwise before
then.
- As a result of the arrangement to work through your last day of employment you will remain on
your current commission arrangement through your last day of employment (12/23/2011). This
has been approved by Anthony Lombardo as well.
  o Upon your departure from the Firm, it is our intention to process a cash payment to you representing all the commission pay that has been held back throughout the year (2011). This
amount was earned (and is reflected on your pay statements, I believe); it would have been
delivered in the form of SVP/CVP in February of 2012.

Please let me know if we need to further discuss the above, otherwise I will reach out to check in with you
as we get closer to the end of the year. And of course, please feel free to contact me if/as any other
questions arise.

Best,
Rebecca

Rebecca McAdams
Human Resources
BAf~Cl l\ YS CAPITAl
+ 1 (?12) 526 0250 . office
+1 (347) 813 1257 - mobile
re becca. mea da ms(iil ba re la ysea pita I. eom

---

**From:** Kenney, Arthur J: Equities Sales (NYK)
**Sent:** Wednesday, September 28, 2011 3:00 PM
**To:** McAdams, Rebecca: HR (NYK)
**Subject:** e-rnail