Page 1

1    STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-(JMP)

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS INC., et al.,

8                    Debtors.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10   Case No. 08-01420-(JMP)(SIPA)

11   In the Matter of:

12

13   LEHMAN BROTHERS INC.,

14

15                   Debtor.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

17                              United States Bankruptcy Court

18                              One Bowling Green

19                              New York, NY 10004-1408

20                              January 29, 2014

21                              10:00 AM

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25   ECRO:  JEANELLE

Page 2

1    HEARING re Doc No. 8031 - Fourteenth Application of Hughes

2    Hubbard & Reed LLP for Allowance of Interim Compensation for

3    Services Rendered and Reimbursement of Actual and Necessary

4    Expenses Incurred from July 1, 2013 through November 30, 2013

5

6    HEARING re Doc No. 8013 - Joint Notice of Presentment of Sixth

7    Amended Order Pursuant to section 78eee(b)(5) of SIPA, Sections

8    105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule

9    2016(a) and Local Bankruptcy Rule 2016-1 Establishing

10   Procedures Governing Interim Monthly Compensation of Trustee

11   and Hughes Hubbard & Reed

12

13   HEARING re Adversary Case No. 10-04103 – Status Conference

14   First Bank Puerto Rico v. Barclays Capital, Inc.

15

16   HEARING re Doc No. 42153 - Motion of Lehman Brothers Holdings

17   Inc. Pursuant to Bankruptcy Rule 9019 for Approval of

18   Settlement Agreement Regarding Claim of Federal National

19   Mortgage Association

20

21   HEARING re Doc No. 40066 - Motion to Classify and Allow the

22   Claim Filed by the Federal Home Loan Mortgage Corporation

23   (Claim No. 33568) in LBHI Class 3

24

25

Page 3

1    HEARING re Doc No. 2023 - Motion of Lehman Brothers Holdings

2    Inc. to Extend Stay of Avoidance Actions and Grant Certain

3    Related Relief

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Theresa Pullan

1    A P P E A R A N C E S :

2

3    WEIL, GOTSHAL & MANGES LLP

4          Attorneys for Lehman Brothers and

5             Certain of its Affiliates

6          767 Fifth Avenue

7          New York, NY  10153

8    BY:    JACQUELINE MARCUS, ESQ.

9          ALFREDO PEREZ, ESQ.

10

11   HUGHES HUBBARD & REED LLP

12         Attorneys for James W. Giddens, Trustee for

13         The SIPA Liquidation of Lehman Brothers Inc.

14         One Battery Park Plaza

15         New York, New York 10004

16   BY:    JAMES B. KOBAK, ESQ.

17

18   CLEARY GOTTLEIB STEEN & HAMILTON LLP

19         Attorneys for Barclays Capital

20         One Liberty Plaza

21         New York, New York  10006

22   BY:    BOAZ MORAG, ESQ.

23

24

25

Page 5

1     KLEINBERG KAPLAN

2          Attorneys for the Liverpool Limited Partnership, et al.

3          551 Fifth Avenue

4          New York, NY  10176

5     BY:   MATTHEW J. GOLD, ESQ.

6

7     CHAPMAN & CUTLER

8          Attorneys for First Trust Strategic High Income Fund 2

9          1270 Avenue of the Americas

10          New York, New York  10020

11     BY:   LAURA E. APPLEBY, ESQ.

12

13     SEWARD & KISSEL

14          Attorneys for PB Capital Corporation

15          One Battery Park Plaza

16          New York, New York  10004

17     BY:   JUSTIN SHEARER, ESQ.

18

19     HUNTON & WILLIAMS

20          Attorneys for Shenandoah Life Insurance

21          200 Park Avenue

22          New York, New York  10166

23     BY:   JOHN R. HEIN, ESQ.

24

25

Page 6

1    MICHAEL BURKE

2          Attorney Principal Life Insurance Company

3

4    DICKSTEIN SHAPIRO

5          Attorneys for First Bank of Puerto Rico

6    BY:   JUDITH COHEN, ESQ.

7

8    WILMER CUTLER

9          Attorneys for Union Investment Institution GmbH

10   BY:   JAMES MILLAR, ESQ.

11

12   REED SMITH LLP

13         Attorneys for Bank of New York Mellon

14   BY:   ERIC A. SHAFFER, ESQ.

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                    P R O C E E D I N G S

2              THE COURT:  Be seated please.  Good morning.

3              MS. MARCUS:  Good morning, Your Honor.  Jacqueline

4    Marcus of Weil Gotshal and Manges on behalf of Lehman Brothers

5    Holdings, Inc. as Plan Administrator and its affiliated chapter

6    11 estates.

7              We are here this morning, Your Honor, for the Sixth-

8    Ninth Omnibus hearing.  We have a limited agenda.  And before

9    we get started and with the Court's indulgence, I'd like to

10   make a few comments regarding this, our last omnibus hearing,

11   before you.

12             Today's hearing comes almost five and a half years

13   since these cases were filed.  A lot has happened to all of us

14   during these past five years, both on a personal and a

15   professional level.  In terms of the Lehman chapter 11 cases,

16   there have been many milestone events -- the filing of the

17   cases, the Barclay sale and confirmation of a consensual plan,

18   to name but a few.  But in addition to these high profile

19   events, we've also had 68 omnibus hearings.  There have more

20   than 42,000 docket entries, 65,000 claims filed, 456 omnibus

21   claims objections, approximately 200 adversary proceedings, and

22   approximately 500 derivatives related ADRs.  To date, the

23   estates have distributed approximately $60 billion.  Over the

24   past five years we've heard these cases referred to variously

25   as the biggest cases ever, extraordinary and unprecedented.  To

Page 8

1   be sure, all of that is true.  But it is also true that for

2   everyone involved in these cases on a day to day basis, there

3   has been an enormous amount of work, responsibility and

4   pressure.

5           On behalf of the Lehman, Weil and Alvarez and Marcel

6   teams, we would like to express our appreciation to the Court

7   and to your entire staff for your hard work, your combination

8   of scholarship and practicality, the careful consideration that

9   you have given to all issues, and the professional courtesy you

10  have extended to all of us.  In terms of scheduling, you and

11  your staff have accommodated the needs of the cases at every

12  turn, helping us to accomplish an extraordinary amount in a

13  relatively short period of time.  It was very rewarding and

14  challenging to appear before you and know that regardless of

15  the issue, you had read all the pleadings and were ready to

16  engage us in very thought provoking colloquy.  And preparing

17  for hearings, anticipating and being ready to answer all of

18  your hard questions has helped us all become better advocates.

19          I heard your comment recently that one of the recent

20  developments in the practice of law that disturbs you is the

21  frequency and extent of litigation.  Your preference for

22  negotiated settlements is well known and has informed the

23  manner in which we have addressed many contested issues.  Your

24  approach has led the chapter 11 estates and their adversaries

25  to reach consensus and compromise with respect to many, many

Page 9

1    disputes, saving the estates and all parties in interest a

2    tremendous amount of time and money.

3            We look forward to working with Judge Chapman to

4    bring these cases to their conclusion.  We just wanted to mark

5    this occasion and let you know that we'll miss you and we wish

6    you luck in your future endeavors.

7            THE COURT:  Thank you so much.

8            MS. MARCUS:  Turning to today's agenda, Your Honor,

9    we're going to start with the Securities Investors Protection

10   Corporation proceedings regarding Lehman Brothers, Inc. and Mr.

11   Kobak will be handling them.

12           MR. KOBAK:  Good morning, Your Honor, James Kobak,

13   Hughes, Hubbard and Reed for the SIPA Trustee.

14           THE COURT:  Good morning.

15           MR. KOBAK:  Your Honor, I'm here on our fourteenth

16   fee application, which will also be the last time we're before

17   you on a matter like this.  Before I begin, I know I've made

18   some remarks before, but I'd like to join on behalf of the SIPA

19   trustee, Hughes Hubbard, Deloitte and the rest of our team in

20   all of the remarks that Ms. Marcus so aptly made.

21           Your Honor, with respect to the SIPA case has said at

22   various times, it's the largest SIPA case in history, it's the

23   most complex SIPA case in history, and it's been the most

24   successful SIPA case in history.  There's nothing any of us

25   could have done about it being the largest and most complex,

Page 10

1   but I think that the fact that it was the most successful owes

2   a tremendous to the Judge that presided over it, and we're very

3   grateful for that, and I'm sure the customers and creditors are

4   also grateful.

5          THE COURT:  Thank you.

6          MR. KOBAK:  So with that, Your Honor, I'll try to

7   keep this brief.  I believe Mr. Caputo is on the phone.  SIPA

8   has reviewed our application and supports it.  Our application

9   covers the period July through November, 2013, the total of

10  something like 31,600 hours.  It reflects our customary 10

11  percent public interest discount, and a number of write offs as

12  we looked at our fees and as SIPA looked at our proposed fees

13  that it totaled over $250,000 for the period.

14          This was a very busy period, as many periods have

15  been in the case.  It saw the conclusion of distribution of

16  some $12 billion to customers, largely completing the customer

17  phase of the case.  We resolved through motions over 1500

18  general creditor claims involving $1.5 billion and resolved

19  many, many others consensually.  We made a lot of progress,

20  some of which bore fruit in the period, some of which is only

21  bearing fruit now with respect to the negotiations with the

22  foreign affiliates, including a major settlement with the

23  Japanese affiliate which will be one of the matters that Judge

24  Chapman hears next week.

25          So with that, Your Honor, I'd ask, I move that you

Page 11

1   approve our application.

2           THE COURT:  I've reviewed the application and the

3   recommendation of SIPA, I believe it to be consistent with

4   applicable law.  I give the recommendation of the Securities

5   Investor Protection Corporation considerable reliance in

6   approving the fees, and I'm pleased to do so.

7           MR. KOBAK:  And we also presented today the interim

8   compensation procedures order, and pursuant to that we request

9   release of a holdback.  We will still have a remaining $1

10  million holdback which has been consistent, but we'd ask that

11  the rest of it which totals approximately $3 million be

12  released.

13          THE COURT:  That's fine.  I looked at the sixth

14  amended order, and according to the blackline, the only

15  substantive change is a change from February to November of

16  2013.

17          MR. KOBAK:  That's correct.  I don't even know if

18  that's substantive, Your Honor, but that's correct.

19          THE COURT:  Well it's substantive because it affects

20  your fees.

21          MR. KOBAK:  And again, thank you, Your Honor, for

22  everything we've done.  And we too wish you well on your future

23  endeavors.

24          THE COURT:  Thank you so much, it's been a pleasure.

25          MR. KOBAK:  If I could be excused, Your Honor, I

Page 12

1    think our part is done.

2           THE COURT:  If you wish to be, you can go back to

3    your work.

4           MR. KOBAK:  Thank you.

5           MS. MARCUS:  Turning to the LBHI calendar, Your

6    Honor, the first matter on today's agenda is a status

7    conference in the matter of the First Bank of Puerto Rico vs.

8    Barclays Capital.

9           THE COURT:  Okay.

10          MR. MORAG:  Good morning, Your Honor.

11          THE COURT:  Good morning.

12          MR. MORAG:  Boaz Morag of Cleary Gottleib for

13   Barclays Capital.  This will be very brief.  As we noted in our

14   January 15th letter to the Court, the last issue in this

15   matter, in this adversary proceeding is the matter of the

16   bonding of the judgment.  As late as last night we had thought

17   and hoped that First Bank's bonding papers would be ready so

18   that we could either present them to you or discover whether

19   there's any issue.  But they weren't.  So we really have

20   nothing to do at this point other than to thank you for your

21   work on this case, extend our best wishes as well, and just say

22   that when the bond papers come in we will take them up with

23   Judge Chapman's chambers.

24          THE COURT:  Thank you.  Just a question.  To what

25   extent is the District Court aware of what's going on currently

Page 13

1    here?

2            MS. COHEN:  I can speak to that.

3            THE COURT:  Sure.

4            MS. COHEN:  Judith Cohen from Dickstein Shapiro, Your

5    Honor.  Because we had prior notice of appeal with Judge

6    Buchwald, they had been kind of keeping us on their tickler and

7    I've been getting calls regularly from Judge Buchwald asking

8    the status and keeping them apprised to where we are.

9            THE COURT:  Fine.  I just wanted to be comfortable

10   that the District Court was well aware of what's going on in

11   terms of status.

12           MS. COHEN:  Yes.

13           THE COURT:  Fine.  Thank you very much.

14           MS. COHEN:  Thank you very much.

15           MR. MORAG:  May I be excused?

16           THE COURT:  You may be excused.

17           MR. PEREZ:  Good morning, Your Honor, Alfredo Perez.

18   Your Honor, we're here, I'm here first with respect to Lehman's

19   motion pursuant to Rule 9019 for approval of settlement with

20   Fannie Mae.  Mr. Neier representing Fanny Mae is here in the

21   courtroom.

22           Your Honor, as the Court is aware, we had filed

23   pleadings requesting that part of the claim be subordinated.

24   As a result of ongoing discussions, we were able to resolve the

25   matter which resulted in the filing of the 9019.

Page 14

1           In essence, Your Honor, Fannie Mae filed a proof of

2      claim for $19 billion approximately.  It had several

3      components.  First, there was a [indiscernible] component,

4      securities fraud component, claims relating to certain remic

5      (phonetic) trusts as well as certain servicing claims that were

6      alleged against both LDHI as well as Aurora and Aurora Services

7      which were indirect wholly-owned subsidiaries of the debtors.

8      As a result of these discussions, we entered into basically a

9      comprehensive settlement with Fannie Mae which has been

10     approved and consented to by their conservator, the Federal

11     Housing Finance Administration.

12          Fannie Mae will get an allowed proof of claim in

13     class 7 of $2,150,000,000.  In addition to that, it will

14     receive the balance of certain collateral that was put in an

15     account.  At the time that the servicing was moved from Aurora

16     to Nation Star in connection with basically the closing of

17     those transactions, there was a deposit that was put out so

18     that claims could be made against those deposits, that's being

19     administered in connection with the settlement.  The balance of

20     that deposit, which is approximately $22 million will also move

21     over to Fannie Mae.  The estate will receive full releases in

22     regard of that.

23          In addition to that, and very important, it will also

24     receive loan files for approximately $7,600 loans so that it

25     can pursue downstream claims against the originators of the

Page 15

1   loans, which we believe will have substantive impact.  In

2   addition, Your Honor, this in essence will conclude our

3   relationship with Fannie Mae that will have this allowed claim.

4   The Court had previously allowed a derivative claim and a

5   derivative guarantee claim which have been on their own course.

6   Mr. Trumpp, with two Ps, who was in the courtroom submitted a

7   declaration in support of that, Your Honor, basically attesting

8   to the reasons why we believe that this is in the best interest

9   of the estate, and we would request that it be approved.

10          THE COURT:  Did you say with two Ps, did you

11  distinguish him from Donald?

12          MR. PEREZ:  I did, Your Honor.

13          THE COURT:  Okay, well, I don't see Donald here, so I

14  understand there's a difference.

15          MR. PEREZ:  There's a difference in hair too.

16          THE COURT:  What happens to the $5 billion reserve?

17          MR. PEREZ:  Your Honor, because it's an allowed

18  claim, you don't have to reserve for allowed claims.  So once,

19  now that it's an allowed claim, the reserve would be, in

20  essence they would get their payment on D5 I guess, the

21  distribution that will be coming up, they would get their

22  catch-up payment at that time, and then it would be an allowed

23  claim and it would be reserved just like any other allowed

24  claim.  But the $5 billion would go down to in essence partly

25  distribution and then part reserve for the balance that they

Page 16

1    hadn't received.

2         THE COURT:  Does any of that reserve serve to benefit

3    other unsecured creditors in terms of distributions that might

4    be foreseeable in the near term?

5         MR. PEREZ:  Absolutely, Your Honor.  One of the very

6    big benefits to the estate in addition to the fact that, in

7    essence, we will free up reserves totaling you know $3.85

8    billion that will be available to other class 7 creditors.

9         THE COURT:  Okay.  Are there any comments with regard

10   to the proposed settlement?  It's obviously beneficial to the

11   estate and in avoiding the subordination fight beneficial to

12   Fannie Mae as well, and I approve it.

13        MR. PEREZ:  Thank you, Your Honor.  Your Honor, the

14   following matter on the agenda is the plan administrator's

15   motion to classify and allow the claim of Freddie Mac.  And,

16   Your Honor, we would request that that matter be continued to

17   the next hearing date which I believe is February 19th.

18        THE COURT:  It will be continued to that day.

19        MR. PEREZ:  Thank you, Your Honor.

20        MS. MARCUS:  Your Honor, the next matter on the

21   agenda is the motion of Lehman Brothers Holding, Inc. to extend

22   stay of avoidance actions and grant related relief, docket

23   number 42023.

24        Before I get started, Your Honor, I just wanted to

25   note that Mr. Lawrence Brandman who is our declarant, has been

Page 17

1  delayed a bit.  He probably won't get here until about 11:30.

2  We're happy to proceed without him, I don't think it's

3  necessary for him to be here.  And should it become necessary

4  for anybody to cross-examine him, which I doubt, we can do that

5  when he arrives if that's okay with you.

6          THE COURT:  If may just inquire if there's any

7  objection to preceding without the declarant being physical

8  present.  There's no objection, so let's proceed.

9          MS. MARCUS:  Thank you, Your Honor.  Your Honor, this

10 is our sixth motion to extend the stay of the avoidance

11 actions.  As the Court is aware, our most recent extension was

12 due to expire on January 20th, 2014 and has been extended by

13 Bridgewater.  At the last hearing to extend the stay which took

14 place in July the Court noted that "it is likely going to be

15 more difficult to get a further extension."  That was at page

16 41 of the transcript.  In light of the Court's comments and the

17 progress that has been made in the ADRs to date, the plan

18 administrator has determined that this will be the last request

19 for an extension of the stay.  And rather than ask for six

20 months as we had done previously, we reduced the request to

21 four months.

22          The requested extension of the stay will serve dual

23 purposes.  First, it will allow the chapter 11 estates to

24 continue to focus their energy on the ADR process without the

25 distribution of litigation, and to achieve even more consensual

Page 18

1    resolutions.  Second, it will provide the parties with time to

2    develop and implement a protocol for how to move forward with

3    the litigation.  We believe that the motion, together with the

4    declaration of Mr. Brandman, makes it amply clear that a

5    further extension of the stay is warranted, that the plan

6    administrator has worked diligently to continue the ADR

7    process, and that the ADR process continues to generate

8    substantial benefits for these estates.

9          As a letter from my partner, Peter Greenberger, which

10   will be filed today indicates, during the past 39 day reporting

11   period, the chapter 11 estates achieved settlements with six

12   counterparties, five as a result of mediation.  When those

13   settlements close, the debtors will have received an aggregate

14   of approximately $2.16 billion.  Settlements have been achieved

15   in 303 ADR matters involving 402 counterparties.  To date, of

16   the 143 ADR matters that have reached the mediation stage in

17   tier one and have concluded, 132 have been settled in

18   mediation.  Nine additional tier one mediations have been

19   scheduled to commence between January 31 and April 3.  In order

20   to initiate discussions regarding what will happen when the

21   litigation resumes, in the motion we propose litigation

22   protocols which reflect our suggestions of how issues should be

23   addressed once the stay expires.  As part of that process, we

24   are proposing that the plan administrator file a case

25   management order that will deal with the first phase of the

Page 19

1    distributive action.

2         As set forth on the agenda letter we received, seven

3    responses were limited objections to the motion and several

4    joinders.  Importantly, however, the objections were not to the

5    basic relief we are seeking, i.e., an extension of the

6    avoidance stay and the service deadline, but to the proposed

7    litigation protocols.  As set forth in our reply, we believe

8    that the objecting parties have misconstrued the relief we

9    sought.  We certainly did not intend to preclude SPV avoidance

10   action defendants from being heard with respect to the

11   protocols.  In fact, we specifically built in a period of time

12   for SPV avoidance action defendants to review our proposed

13   phase one distributive actions scheduling order and filed

14   responses thereto.

15        THE COURT:  I note that your declarant has just shown

16   up.

17        MS. MARCUS:  In any event, in light of the

18   objections, as well as issues raised by an ad hoc group of SPV

19   avoidance action defendants who are working through Joshua

20   Dorchak, we decided to make clarifications to the proposed

21   order.  Although the blacklined revised order is attached to

22   our reply, we realized yesterday that the page numbers were

23   inadvertently deleted.  I have a copy with page numbers that

24   I'd like to hand up to the Court if I may.

25        THE COURT:  Yes.  Thank you.

Page 20

1            MS. MARCUS:  And I can confirm, Your Honor, that the

2      only change we made was to reinsert the page numbers.  The

3      clarifications to the proposed order make it clear that the

4      Court's entry of an order extending the stay and the service

5      deadline will have no bearing on the case management order

6      ultimately entered by the Court regarding the SPV avoidance

7      actions.  Specifically, we had made the reference to that order

8      more I'll call it generic by deleting the reference to phase

9      one and simply calling it the distributed actions scheduling

10     order.  That change is on page 3 of the blacklined order.  And

11     we have also included a specific reservation of rights of all

12     parties with respect to the litigation protocol, and that

13     paragraph is on page 5 of the revised order.

14            We have imposed a requirement that the chapter 11

15     estates and any SPV avoidance action defendants who want to,

16     meet and confer regarding the distributive actions scheduling

17     order, that change is on page 4, and to include a reservation

18     of rights for the avoidance action defendants regarding

19     jurisdictional issues, and that one is on page 5, Your Honor.

20     The blacklined form of the order is acceptable to Mr. Dorchak's

21     group, and based upon the plan administrator's agreement to

22     file the revised order, the members of that group, which

23     includes approximately 19 large financial institutions,

24     represented by sophisticated counsel, agreed not to file

25     objections to the motion.

Page 21

1          Indeed, the tacit agreement of this group to the

2    relief requested as modified by the revised order represents

3    exactly the type of consensus the Court alluded to at the last

4    hearing to extend the stay.  When you said "I believe that what

5    may be required as we approach the end of 2013 is a

6    particularized and focused agreement of the parties to the

7    litigation to extend the stay or to voluntarily agree to defer

8    litigation activity to accommodate ongoing ADR activities."

9    That's in the transcript at page 40.

10         The plan administrator believes that the revised

11   order by making it clear that all issues with respect to the

12   protocols are being deferred, largely addresses the issues

13   raised in the objections.  However, to date, the objecting

14   parties have not been prepared to withdraw their objections to

15   the motion, thus we are here today on a contested basis.  Other

16   than issues directly related to the protocols, the remaining

17   issues are as follows.

18         First, termination of the SPV ADR stay.  Nationwide

19   is the primary proponent of this objection which should be

20   rejected just as it was rejected by the Court at the July 13th

21   hearing.  As we indicated then, the SPV ADR stay applies to any

22   entity that is subject to a pending SPV ADR, and is separate

23   and apart from the avoidance action stay that is the subject of

24   our motion.  The plan administrator contemplates that there

25   will be some partial relief from the SPV ADR stay provided in

Page 22

1    connection with the Court's eventual entry of the distributive

2    action scheduling order.  That has been proposed so that

3    parties who remain subject to the SPV ADR stay are not put at a

4    relative disadvantage in the distributive action.  Thus, under

5    the plan administrator's proposal, no entity that is subject to

6    an SPV ADR stay will be prejudiced by the litigation protocol

7    ultimately adopted.  But again, that's not an issue for today.

8           We have also been asked whether the SPV ADR stay

9    precludes parties in pending SPV ADRs from participating in the

10   litigation protocol process that we've outlined.  We do not

11   believe that the SPV ADR stay has that affect, and I hereby

12   confirm on the record that the existence of an SPV ADR stay

13   will not prevent parties from participating in the meet and

14   confer process, or ultimately if they have standing, file an

15   objection to the plan administrator's proposed distributive

16   action scheduling order.

17          If Nationwide and those who have adopted its argument

18   objects to the continuation of the SPV ADR stay as to it, then

19   it has two options.  It can contact a mediator and seek to have

20   the ADR to which it is a party terminated in which case the SPV

21   ADR stay applicable to it would terminate, or it can file a

22   motion to terminate the SPV ADR stay as to it.  In fact,

23   Nationwide's counsel conceded that at the last hearing, and I

24   refer the Court to the transcript at page 20 where Nationwide's

25   counsel stated, "but the reality is and our perspective is, is

Page 23

1    a two step process, and that process includes opposing this

2    stay and then also moving to lift the stay in the ADR process

3    at least as to us."

4          I note, Your Honor, that the mere fact that a

5    mediation session has taken place and has not been successful,

6    does not mean that mediation will fail.  In fact, we have

7    numerous examples of ADRs in which there have been one or more

8    unsuccessful mediation sessions after which through the

9    continued efforts of the mediator and the parties, settlements

10   have been reached.  The confidentiality restrictions applicable

11   to the SPV ADR process preclude me from saying too much about

12   the ADRs in which the objecting parties are involved.  Suffice

13   it to say, however, that several of these parties haven't given

14   the ADR process a chance.

15         Finally, on this point, Your Honor, we note that as

16   reflected on the chart and next to the declaration of Mr.

17   Brandman, there are several SPV ADRs that were commenced

18   relatively recently.  If the Court were to lift the SPV ADR

19   stay now, then in effect the parties effectively would be

20   deprived of an opportunity to resolve these matters through

21   ADR.  The plan administrator submits that as it has before, the

22   Court should uphold the integrity of the SPV ADR order and the

23   SPV ADR stay and limit its consideration today to the issue

24   before it, a request for an extension of the avoidance stay.

25         The next issue that remains outstanding are certain

Page 24

1    information requests.  Certain of the objection parties contend

2    that they should get extensive information from the chapter 11

3    estates regarding the other defendants in the distributive

4    actions.  The type of information as set forth at page 5 of our

5    reply and is very extensive.  It includes the name of every

6    note holder defendant, the name of the applicable issuer, the

7    date and basis of termination, date and amount of distributions

8    and so on.  Apparently, the information is being requested so

9    that these objecting parties may use it in the context of a

10   dispute regarding class certification.  However, the request is

11   premature at this time.  While discovery may be expected with

12   respect to issues that will have to be addressed when the

13   litigation resumes, now is not the time to commence such

14   discovery or even to discuss discovery issues.  Rather, to the

15   extent discovery is anticipated, then during the meet and

16   confer process, the participant should build in sufficient time

17   periods to deal with discovery issues.  The objecting party's

18   efforts to foist discovery upon the chapter 11 estates at this

19   juncture represents impermissible bootstrapping and should be

20   rejected.

21            Next, Your Honor, is BNY's objection.  As noted in

22   our reply, the BNY objection raises issues related to the

23   appropriate role of indentured trustees when the litigation

24   resumes.  Without commenting on whether or to what extent the

25   relief sought by BNY is warranted, the plan administrator notes

1   that the relief sought is wholly inappropriate in the context

2   of this motion, and may be inappropriate subject to discussion

3   during the meet and confer process.

4           Finally, Your Honor, two of the objecting parties

5   have argued that there should be no protocols at all until all

6   potential defendants have been identified and served.  Neither

7   party has stated any rationale for that objection.  The

8   implication of the objection would be that the stay should be

9   further extended, and we're not sure that's really what these

10  parties want.  Moreover, only about 17 percent of the amount

11  that the estates seek to recover in the distributive action is

12  held by unidentified note holders.  Presumably, the parties

13  having the largest stake in the litigation, can protect the

14  rights of this minority during the negotiation process.

15          In conclusion, Your Honor, the chapter 11 estates

16  believe that they have made a compelling case for this final

17  extension of the avoidance stay and that substantially all of

18  the response is in limited objections can and should be dealt

19  with in the context of a negotiation and promulgation of the

20  distributive actions scheduling order and should be overruled

21  today.

22          We believe that the avoidance stay continues to

23  confer benefits upon the chapter 11 estates as well as the

24  avoidance action defendants, and we request that the Court

25  enter the revised order.  I would of course, Your Honor, like

1    to request the opportunity to respond to comments of counsel if

2    necessary.

3              THE COURT:  Okay.  Thank you for that.

4              MS. MARCUS:  Thank you.

5              THE COURT:  I'll hear from counsel for the various

6    objecting parties in whatever order you choose to come up.

7    Nationwide?

8              UNIDENTIFIED:  Yes, Your Honor.

9              THE COURT:  I remember you.

10             UNIDENTIFIED:  It's only because they said Nationwide

11   first.  Before I do start, Your Honor, I do want to mention

12   I've been in front of His Honor only twice, and both times I've

13   been overruled, but I did wanted to say to His Honor that in

14   looking at the enormous body of work done in this case, it is

15   an astounding body of work by this Court, an astounding legacy

16   regardless of whether we agree or disagree with the Court.  And

17   I just wanted to mention that, Your Honor.

18             THE COURT:  Thank you.  You're still going to lose

19   today, you know that.

20        (Laughter)

21             THE COURT:  But let's hear what you have to say.

22             UNIDENTIFIED:  I've never been laughed at like that

23   before.  I will only express perhaps a little more precisely

24   what our concern is, which is, and maybe this is a little over

25   thinking it, maybe it is a little chicken and egg, which goes

Page 27

1    first, but it is a concern that if the parties can't work out a

2    resolution, there will still be laminated on top of this the

3    ADR stay.  We would be more comfortable if there was even some

4    language in here, just a few words added that would basically

5    indicate that in the course of the meet and confer, the

6    parties, that the lifting of the ADR stay can be an agenda item

7    discussed by the parties.  If those few words were just added

8    to the order, which I think is not of great consequence, with

9    that clarification actually in the order, not with what's

10   discussed here in Court, we would be more comfortable with

11   that, Your Honor.

12          THE COURT:  Let me just ask a couple of questions

13   without invading any of the confidential mediation procedures

14   that you may have engaged in.  Counsel for Lehman pointed out a

15   transcript reference from July 13 in which you acknowledged

16   that this was a two step process, and no effort has yet been

17   made through conventional motion practice to seek relief from

18   the SPV ADR stay.  And in effect, what you seem to be engaged

19   in is an indirect attempt to gain relief from that stay without

20   filing a motion for relief.  Why not file a motion for relief?

21          UNIDENTIFIED:  Actually, I will candidly tell His

22   Honor that we had drafted in anticipating, actually we were

23   anticipating a request for another six month stay.  And in

24   anticipation of that, we were anticipating both objecting to

25   that and at the same time we were, I have drafted in my office

Page 28

1    a motion to lift the ADR stay order.  But when we saw that they

2    were seeking a final extension of the stay and it was only

3    going to be four months, and they put in a meet and confer

4    provision to talk about scheduling, which is all fine, we made

5    the decision that instead of being, if you will, a bigger pain

6    to the Court by filing a motion to lift the ADR stay, if we

7    could at least have that worked out through the meet and confer

8    process, or have it clarified.

9              Now, our objection is that it be lifted

10   conterminously and that would be our preference because we

11   believe there's great logic to that.  If there are to be

12   restrictions in the ongoing litigation, that should be what's

13   discussed, then everybody evenly is stuck with those

14   restrictions, and there's no disparate treatment for those who

15   are still in ADR and those who are not.  So we chose for

16   strategic reason to pull that motion back and not file it at

17   this time in the hope that we can at least have a shot at

18   working this out.  And that's why we're now, we've boiled it

19   down an awful lot, Your Honor, from what we were first asking,

20   and also because Lehman has accommodated much of the

21   objections.

22             THE COURT:  Now is Nationwide still engaged in any

23   ADR process or have you, you don't have to share anything

24   confidential here, have you not engaged or have you engaged to

25   the point of futility?

Page 29

1          UNIDENTIFIED:  It's unclear to me at this point

2     whether it's futile.  It's not futile appearing to us that we

3     have asked to terminate it.  And I would say also, but I don't

4     know if it's prohibited whether I can tell the Court whether

5     we've even had mediation.  I don't think that's a breach of

6     confidentiality.

7          THE COURT:  I don't want to know anything about the

8     mediation.

9          UNIDENTIFIED:  All right.  Okay.

10         THE COURT:  I just want to know whether or not --

11         UNIDENTIFIED:  No, just whether we had it.

12         THE COURT:  -- in your nuance approach to dealing

13    with the SPV ADR stay, you are a party who has actually engaged

14    or not engaged in the process.  And if you've engaged in the

15    process to the point of being unable to reach any resolution,

16    why you wouldn't simply advise the Court of that in connection

17    with a motion you might bring.  But you just told me you have

18    no intention presently of bringing a motion because we're only

19    talking about a four month extension of the stay and there's a

20    meet and confer process.

21         That being said, let's just assume for the sake of an

22    argument we're having that the only thing that the order said,

23    it's five pages long, but let's just say it said the stay is

24    extended for four months and the parties are encouraged to

25    establish procedures for the orderly management of the

Page 30

1    litigation once this final extension of the stay has reached

2    its conclusion.  Let's just say it said that.  Is there

3    anything that would prevent you from engaging counsel for the

4    plan administrator in a discussion about the SPV ADR stay?  Is

5    there anything that would prevent you from reaching an

6    agreement to lift the stay as to you?  Is there anything that

7    would prevent you from filing a motion to lift the stay?  I

8    think the answer to all of that is there would be nothing that

9    would prevent you from that.

10             UNIDENTIFIED:  I agree, Your Honor.

11             THE COURT:  And if that's the case, why are we so

12   concerned about slipping in an extra sentence to an order that

13   is simply a long way of saying what I've just said?

14             UNIDENTIFIED:  Because as written, and actually my

15   concern to even heighten a little bit more by the reply of

16   Lehman where they actually want that ADR stay kept on, that

17   just heightens our concern.  If we just had those few words in

18   there because the Court speaks through its docket, and if the

19   order just had those few words, we would be less concerned.

20             I understand the Court's position on this, but

21   something was mentioned about parties perhaps cracking open a

22   door and bootstrapping into something and we are sadly

23   litigants and there is a level of reading into strategic

24   positioning, Your Honor, and whether its intended or not.  And

25   so this is a natural hesitation and concern that we have, but

                                                        Page 31

 1    it's a sincere concern, Your Honor.

 2              And I would also mention that my read of the ADR stay

 3    order, and I may be wrong, but I read that more than once, is

 4    that even if the process is declared done, the ADR stay

 5    continues as to that defendant.  That was my read of that

 6    order.  But to any event, I hope I have answered His Honor's

 7    questions.

 8              THE COURT:  You have.  Let me just clarify one thing.

 9    Nationwide, I keep wanting to say, is on my side.  But

10    Nationwide's position is that a four month extension of the

11    stay is not a problem.  Correct?

12              UNIDENTIFIED:  Correct.

13              THE COURT:  And the only issue that you have really

14    has to do with the SPV ADR stay more than it has to do with any

15    of the protocols or procedures for dealing with a soft landing

16    as the extended stay comes to an end.

17              UNIDENTIFIED:  We see them tied together.  We see

18    them tied together somewhat, that somehow this order -- we

19    don't want to be precluded from having as part of the

20    discussions the lifting of the ADR stay.  And that's our

21    concern.  Maybe we're over concerned about it and maybe we're

22    asking for what the Court might view as gratuitous language,

23    but it remains a sincere concern, Your Honor.

24              THE COURT:  Okay.  I understand your position.  Thank

25    you.

Page 32

1              UNIDENTIFIED:  Thank you, Your Honor.

2              THE COURT:  Who is next?

3              MR. GOLD:  Good morning, Your Honor, Matthew Gold,

4     Kleinberg Kaplan Wolf and Cohen, for the Liverpool Limited

5     Partnership and Elliott International LP.  Your Honor, first I

6     want to echo the points that Ms. Marcus made before, not with

7     respect to the specific motion here, but with respect to the

8     case in general and Your Honor's involvement with it.  And we

9     appreciate all your contributions to the case.

10             THE COURT:  Thank you.

11             MR. GOLD:  Regardless of what this does with what I'm

12    about to say.  Second, Your Honor, my clients were part of the

13    group that Ms. Marcus referred to.  Mr. Dorchak is not able to

14    be here today, but we were part of that group that thinking

15    along the same lines as Your Honor, preferred to engage with

16    the debtors before the hearing to work out these issues rather

17    than file objections.

18             And the only issue that I wish to touch on is the one

19    that Your Honor was just discussing with counsel for

20    Nationwide.  I just want to observe that there are some

21    subtleties involved in the interrelationship of these two

22    issues, and in the concerns of the parties.  Ms. Marcus's

23    statements may have implied that basically all that's involved

24    is for particular parties to move to terminate the stay as to

25    those particular parties, and that it's a simple matter of the

1    plaintiff on one hand and a particular defendant on the other

2    hand.  And I submit that it's a much more general thing, much

3    in the way in many bankruptcy cases that the question of

4    whether other defendants are going to be moving forward in

5    their cases or not, is in a certain sense of interest to all

6    the parties.  And so that the question of how and when the stay

7    of the ADR process gets terminated and which will mean when the

8    litigation actually starts moving as to various parties, is

9    really a broad interest to the entire creditor, the entire

10   defendant class.  And therefore, it's crying out for --

11           THE COURT:  It' probably also of interest to the

12   entire creditor class as well.

13           MR. GOLD:  That may well be.  So while I think it may

14   be that the process may be -- there are many ways to get the

15   thing triggered.  But it seems to me if there is going to be a

16   meaningful meet and confer concerning the litigation process,

17   that's going to necessarily going to have to include the

18   discussions about the affect of the ADR stay on the entire

19   process, and that's going to be a process that will be of

20   interest, not just to the plaintiff and a particular defendant,

21   but to all the defendants, and possibly creditors to the extent

22   that the post confirmation debtor is not, and plan

23   administrator is not taking their interest into account, and so

24   seems to make sense to us that the process that is being set up

25   for the litigation procedures, whereby the debtor first sets

Page 34

1    out by filing a suggestion to reach a broad community to

2    interested parties with an opportunity to work the issues

3    through, really should be broadened to include the ADR stay

4    issues as well so that parties are dealing with the issue

5    holistically.  Hopefully, parties can work things out in the

6    way that makes sense for everyone to lessen Court involvement.

7    But it just doesn't make sense to narrowly limit what people

8    can and can't talk about.  Frankly, I'm not sure whether it's

9    necessary that that be in the order or not except that I have a

10   concern that seems to us beneficial that the largest class of

11   defendants understand that these issues are on the table and

12   being discussed and that the estate creditors be aware that

13   these issues are on the table and being discussed that they can

14   weigh in and that we, when a resolution is reached it includes

15   as many people as possible.

16          THE COURT:  Just a question about who you are acting

17   for at this moment in making this request.  You identified

18   clients, but you also indicated that you were part of a group

19   apparently led by Mr. Dorchak referenced by Ms. Marcus in her

20   comments, and that this group of financial institutions agreed

21   not to file objections in consideration for a set of procedures

22   now set forth in the amended form of order.  Correct?

23          MR. GOLD:  That is correct.

24          THE COURT:  Are you speaking now only on behalf of

25   your clients or are you speaking on behalf of a broader group

Page 35

1    of participants in the process that never made this point, a

2    point for drafting at the time that the order was being

3    circulated and ultimately submitted for my approval?

4            MR. GOLD:  First, Your Honor, I might note that she

5    also, that Ms. Marcus also referred to sophisticated counsel

6    for those parties.  Second --

7            THE COURT:  Are you suggesting that not everybody in

8    the group is sophisticated?

9            MR. GOLD:  I'm not -- again, this is part of the

10   group, part of the statements of Ms. Marcus that I'm happy to

11   adopt.

12           THE COURT:  Are you suggesting that maybe because she

13   said that you're sophisticated counsel?

14           MR. GOLD:  I was hoping that would be the implication

15   Your Honor would take from it.  I can say that this is an issue

16   that really arose from our perspective somewhat late in the

17   process, and really was triggered by the omnibus response that

18   the debtor filed after we had worked out the language of the

19   order.

20           THE COURT:  Can I break in for one second because it

21   would be helpful if I, if I could see the timeline of this a

22   little more clearly.  There's a bridge order to extend the

23   stay, there is a motion to extend the stay, the motion

24   references along with the Brandman declaration a four month

25   extension coupled with a set of proposed procedures for

Page 36

1    establishing protocols that would lead to pretrial scheduling

2    orders and a set of procedures for dealing with the litigation

3    once the stay has expired because the four month extension is

4    the last and final extension.  Are you with me so far?

5              MR. GOLD:  I am with you.

6              THE COURT:  Now, at what point in that sequence do

7    lawyers for various affected defendants form an ad hoc

8    discussion group and engage in a dialogue with counsel for the

9    plan administrator to come up with some agreed changes to the

10   protocols?

11             MR. GOLD:  Are you, Your Honor, are you asking what

12   happened previously or what do I foresee going forward?

13             THE COURT:  I'm trying to understand what happened

14   previously and I'm trying to understand at what point in the

15   process a group of prospective objectors chose not to object

16   because certain changes were being made by agreement to the

17   protocols that would lead to pretrial orders in the cases.

18             MR. GOLD:  I'm not sure I have the exact dates, Your

19   Honor, but roughly in the last week and --

20             THE COURT:  Ms. Marcus is anxious to break in and

21   answer this question for you.

22             MR. GOLD:  Roughly in the last week and a half is

23   when the defense group started reaching out to each other, it

24   was a little, it took a little while because there was no

25   listing of who the relevant counsel would be.  But based on who

Page 37

1    had filed appearances, who had file objections, we started

2    defining each other, getting together.  We first received a

3    brief extension of the time to file an objection from the

4    debtors in order to continue our discussions.  Drafts, the

5    orders were passed back and forth and before the extended

6    objection deadline was reached, we reached an order which is

7    substantially what was handed to Your Honor earlier.

8            THE COURT:  Okay.  What I'm trying to get a sense of,

9    and I'm not, I don't mean to slice this and dice this too

10   finely, is whether the position you are now advocating which is

11   that there be some accommodation of changes to the SPV ADR stay

12   in conjunction with discussions about the soft landing for the

13   avoidance actions, to what extent was that subject adverted to

14   at all in the context of the conversations that took place

15   among the parties?  And to what extent have you waived your

16   ability to now make this argument because you effectively

17   agreed to a form of order and you're now reneging on that?

18           MR. GOLD:  Your Honor, first to take your second

19   question first, I do not believe that we've waived our ability

20   to discuss with the Court how future litigation ought to be

21   structured and how a series of issues ought to be addressed.

22   And given that these issues were primarily raised not in the

23   initial motion by the debtor, but in their response to other

24   parties' objections, issues that were from parties who were not

25   part of our group, I don't believe that the issue, I don't

1   believe that the issue has been waived in any meaningful sense.

2          THE COURT:  I'm just, I'm not using waiver in a

3   technical legal sense as much as sophisticated lawyers are

4   engaged in a conversation about a contested matter, and rather

5   than engage in formal motion practice with pleadings and the

6   like, you end up reaching an agreement, let's call it an

7   agreement in principal as to the nature of the four month

8   extension, and what people are going to be doing during those

9   four months in order to get ready for active litigation.

10          MR. GOLD:  Well, Your Honor, part of the problem on

11  the defendants' side is an organizational one.  We've been able

12  to get in touch with a certain number of parties and have

13  discussions.  We're not to act functioning like an official

14  creditors committee or anything with bylaws or anything that

15  binds the group.  It's a coordinating function where people

16  were able to perceive efficiencies to put objections together.

17  And we've done that in a fairly short time period based on the

18  timeline that Your Honor mentioned before.

19          My intention would be that we would be able to

20  enlarge the group, hopefully.  Possibly there is a

21  bootstrapping issue here because part of this may be what's

22  determined in litigation procedures, the formation of a

23  steering committee or other such things.  But we're not there

24  yet.  But we have a larger group of interested counsel on the

25  defense side who can identify from who has filed objections and

Page 39

1    that we would be able to take the time to try to confer with

2    them and then confer with the debtors or in any order

3    whatsoever.  I believe that the process is far less complicated

4    really than some of the far more complex issues that lawyers

5    have gotten together to negotiate in this case and others.

6        I just think, all I'm suggesting here is that what

7    the debtors and the Court can do in that process is to advise

8    other parties who may not be here, who may not have filed

9    objections, and whose rights are preserved in essence with

10   respect to these issues, but who may be interested in the

11   process, to receive some kind of notice and awareness that

12   these issues will be discussed and will be going forward.  I

13   believe the lawyers can try to organize themselves together in

14   some informal way so that there are relatively fewer parties

15   with similar interests putting their issues together, and that

16   that should be in the interest of the debtors, it should be in

17   the interest of the defendants and it will take us a little bit

18   of time to put that together, but that they can help by

19   advising others that the process is going on.

20       THE COURT:  Well, I fully expect that counsel for

21   defendants will organize, coordinate and endeavor to work

22   together.  But you made a reference to parties that have not

23   filed objections.  That includes your clients and you, correct?

24   So in effect you're standing here in a somewhat peculiar

25   status.  I said that parties could get up and talk, you said

Page 40

1    some very nice things to me at the beginning which I

2    appreciate.  But then you proceeded to argue without the

3    benefit of having filed anything as your ticketed admission to

4    the podium, which you're basically doing, if I'm understanding

5    this correctly, is as a party who participated in an informal

6    process that led to a form of order that makes no mention of

7    SPV ADR stay procedures, you're piling on to the Nationwide

8    position and saying that sounds good to me, and on behalf of my

9    clients, a subset of the group that talked to the plan

10   administrator about this over the last few weeks, you want more

11   even though you filed nothing in reference to that.  Nationwide

12   did.  So this is like a joinder in Nationwide's position with

13   regard to SPV language to put into the order.  Is that correct?

14   I just want to understand what's happening.

15             MR. GOLD:  Well, Your Honor --

16             THE COURT:  Is that what you're doing?

17             MR. GOLD:  I wouldn't quite use all the same

18   adjectives that Your Honor used.

19             THE COURT:  You don't have to, you don't have to

20   adopt the adjectives, but how about the meaning?

21             MR. GOLD:  I believe that, yes, I have, and if Your

22   Honor wants to say that you do not wish to hear us because we

23   didn't file objections at this point, we could --

24             THE COURT:  I've already heard you for 20 minutes.

25             MR. GOLD:  Exactly.  I was trying to say based on the

Page 41

1    hearing that is taking place, these are my suggestions.  The

2    Court --

3              THE COURT:  Okay.  Appreciate that.

4              MR. GOLD: --- can take them or not as it sees fit.

5              THE COURT:  Now I understand it.  Thank you.  I'll

6    hear from parties who have actually filed objections now.

7              MR. MILLAR:  Good morning, Your Honor, I'm James

8    Millar of Wilmer Cutler Pickering Hale and Dorr on behalf of

9    Union Investment Institution GmbH.  We did file an objection,

10   we also joined in Nationwide's objection.

11             I guess I really only have maybe it's a question or a

12   point of clarification.  I'm looking at the proposed order and

13   the estate will put a proposed distributed action scheduling

14   order on file, and then we will have a meet and confer.

15   Assuming my client were in mediation at that time, and I made

16   my attempts to meet and confer and then I saw a further order

17   put on file, and the response deadline came, would I be a party

18   that would have standing to file a response?  And I'm really

19   making reference to Ms. Marcus's statement during her

20   presentation that all parties with standing may file a

21   response.  And if I am in an ADR process, would I have standing

22   to file a response pursuant to this order?

23             THE COURT:  That's a very pointed question, and I

24   think that we should at least, I know that Ms. Marcus is going

25   to be responding to everyone at the end, but why don't we give

Page 42

1   her an opportunity to quickly say yes or no to what you've just

2   said, and I'm probably going to have some views on this myself.

3           MS. MARCUS:  Your Honor, the answer is yes provided

4   that your client is a named defendant in one of those actions.

5   You probably know better than I whether Union is a named

6   defendant in either the distributive or the non-distributive

7   action.  But as Your Honor knows, with respect to the non-

8   distributive action, from time to time, note holders have taken

9   the position that they have standing.  And our position on that

10  in that context is that note holders do not have standing based

11  on Judge Chapman's Innkeepers (phonetic) decisions and others

12  like it.  So the standing question has to do with whether

13  someone is a defendant.  If your client is a named defendant

14  and you don't like the order, notwithstanding the fact that

15  you're the subject of an SPV ADR, we would not object to your

16  filing an objection to the proposed order.

17          THE COURT:  Is that helpful or not helpful?

18          MR. MILLAR:  I'm all set.  Thank you, Your Honor.

19          THE COURT:  If you're all set, then you can sit down.

20          MR. SCHAFFER:  Your Honor, Eric Shaffer, Reed Smith,

21  here for the Bank of New York Mellon.  Your Honor, the revised

22  order defers most of our issues.  I think that's entirely

23  appropriate.  We've noted that we don't think the indentured

24  trustee should be a party to the litigation going forward

25  except perhaps for jurisdictional purposes.  But again, we will

Page 43

1    meet and confer.

2            The only open issue from our limited objection goes

3    to timing.  We have suggested that it's appropriate to complete

4    service on all of the defendants before the meet and confer.

5    Many of the defendants maybe are holders and our thought is

6    they should all have an opportunity to know that they have an

7    interest in meeting and conferring before that process goes

8    forward.

9            THE COURT:  Okay.  I understand that's your position.

10   I'm not sure if it's pragmatic, but I understand it.

11           MR. SHAFFER:  It shouldn't be that hard to complete

12   the service, but again we're here trying to make sure that all

13   of our holders have every opportunity to fully participate.

14           THE COURT:  Okay.  I understand that.  Thank you.

15           MR. SHAFFER:  Thank you, Your Honor.

16           MS. APPLEBY:  Good morning, Your Honor, Laura

17   Appleby, of Chapman and Cutler on behalf of First Trust

18   Strategic High Income Fund II.  Last night the debtors and fund

19   reach an agreement in principal to settle, so I'm here merely

20   to preserve our rights with respect to our objection.  So

21   unless the Court has any --

22           THE COURT:  Your rights are reserved, whatever that

23   means in the context of having settled everything.  At least

24   it's on the record.

25           MS. APPLEBY:  Thank you, Your Honor.

Page 44

1          THE COURT:  Okay.  Anyone else?

2          MR. SHEARER:  Justin Shearer of Seward and Kissel for

3    PB Capital Corporation, a defendant in the so-called

4    distributive actions.  PB Capital has had a chance to review

5    the revised order, and we believe that it resolves our primary

6    objections.  While we share some of the concerns of the other

7    defendants that have been expressed today and any other

8    objections, we are largely agnostic on those issues.

9          THE COURT:  Okay.  Thank you.

10          MR. BURKE:  Good morning, Your Honor.

11          THE COURT:  You looked a lost there for a while.

12          MR. BURKE:  Yeah, I was for a second.  That's

13    unfortunate.  Michael Burke for Principal Life Insurance

14    Company, Your Honor.  We had filed an objection and we

15    appreciate the debtors' efforts at coming up with a revised

16    order that addressed the protocols.  Those did address the

17    issues that we raised to the objection.  And in light of Ms.

18    Marcus's comments that I believe Mr. Millar eloquently stated

19    or reaffirmed that provided that no named defendant with

20    standing that has been served with an ADR package will be

21    precluded from participating in the litigation protocol with a

22    meet and confer.  I believe that's what she stated.  Then we

23    have no further objection, Your Honor.  Thank you.

24          THE COURT:  Fine.  Thank you.

25          MR. HEIN:  Good morning, Your Honor, John Hein of

Page 45

1   Hunton & Williams on behalf of Shenandoah Life Insurance

2   Company.  I want to thank Mr. Millar for clarifying the

3   standing issue, that was one of our objections.  I also want to

4   state on the record Shenandoah joins Nationwide Life Insurance

5   Company's argument that the proposed order should include a

6   coterminous lifting of the SPV ADR stay.  That's our position.

7          And I briefly want to just touch on one other remark

8   that Ms. Marcus had made, and we appreciate the debtors'

9   efforts to date.  We believe that the debtors should be

10  required to provide the defendants with more information as to

11  the other parties in this litigation.  We understand their

12  position is, you're just going to get that in discovery

13  anyways, why do you need it now.  Our position is that yes, we

14  need this information to make determinations about the proposed

15  class and whether or not it meets the prerequisite for class,

16  under Federal Rule 23(a).  I think she already touched on that.

17  But we also want to just state for the record that disclosing

18  this information now, which they'll have to do later anyway, is

19  going to streamline the process.  This is really a cost saving

20  measure, not only for the defendants --

21          THE COURT:  Actually it's not a cost saving measure

22  as much as it is a cost shifting measure because it accelerates

23  into a period when the stay is in effect activity that would

24  otherwise occur after the stay has been lifted.  So just

25  disagree with the proposition you've just asserted.

1          MR. HEIN:  We appreciate the Court's comments.

2     That's just our position we wanted to state on the record.

3          THE COURT:  Okay.  Fine.

4          MR. HEIN:  Thank you, and good luck in your future,

5     Your Honor.

6          THE COURT:  Thanks a lot, I appreciate that.  Is

7     there anybody else who wishes to be heard at this point?  Ms.

8     Marcus, it's your turn to counterpunch.

9          MS. MARCUS:  I don't have a lot, Your Honor.  With

10    respect to Nationwide, and I suppose Elliott and Liverpool

11    although I join in Your Honor's I don't know if frustration is

12    the right word, but concern that we had an agreement and we

13    don't seem to have an agreement anymore, at least with Mr.

14    Gold's clients.  The issues are essentially the same.  I'm

15    pretty sure that I just clarified that the extent to which any

16    relief from the SPV ADR order is appropriate will be discussed

17    as part of the meet and confer process.  What we object to is

18    putting anything in the order because we really think it's not

19    necessary.  If we say this issue can be discussed, then do we

20    have to include every other issue that's on the table?  It just

21    seems to us that it's not necessary.  And, frankly, I'm not

22    sure what Mr. Gold's argument was, but we believe that we will

23    discuss those issues, but we don't think it's appropriate for

24    anything to be in the order.

25          And with that, Your Honor, that concludes my

1    comments.  And we would ask the Court to approve the order.

2            THE COURT:  Okay.  I'm going to approve the order

3    extending the stay of avoidance actions, and granting certain

4    related relief in the form that it has been presented by

5    counsel for the plan administrator.

6            The objections that have been raised largely have

7    been mooted by the changes made to the form of order.  But more

8    importantly, beyond the letters used in the words written in

9    the order itself, there is a spirit that underlies those words.

10   And it's a spirit of cooperation, coordination and the

11   avoidance of unnecessary distress to the litigation in question

12   when the stay expires.  What is clear here is that there is a

13   shared mission on the part of the plan administrator as

14   plaintiff and the various defendants to deal with this

15   potentially very complex litigation in an orderly and efficient

16   manner.

17           All that's really going on here is that the stay is

18   being extended in order to accommodate ongoing alternative

19   dispute resolution measures that demonstrably have been

20   extremely beneficial to the Lehman estate, but that also have

21   been beneficial to the counterparties themselves by avoiding

22   the expense, burden and delay of litigation.  As noted at the

23   hearing on July 13, this stay can't go on indefinitely, and

24   there is what seems to be a community of interest in

25   recognizing that one additional four month extension is

Page 48

1    sensible for two purposes.

2            First, it continues the ADR process without the

3    distraction of litigation.  But secondly, and perhaps equally

4    importantly, it allows for the possibility of thoughtful

5    planning as to what this litigation is going to look like once

6    it is unleashed.  I don't have enough wisdom as to the

7    litigation or as to the issues to be raised in the litigation

8    to be able to micromanage the language of this order as it

9    relates to the development of thoughtfully and orderly

10   procedures for managing the litigation, but I have a lot of

11   faith in the lawyers who are involved in this process.  In

12   picking up what was said earlier, they are sophisticated, not

13   only in the underlying complex transactions that gave rise to

14   these distributions, but also as to the ways of effective case

15   management that will be necessary in order to make these cases

16   work as efficiently as possible.  So these words are not magic

17   words as much as they are broadly stated concepts that appear

18   calculated to produce pretrial scheduling orders and procedures

19   that the parties themselves have helped to put together.  That

20   happens in every case, or at least it happens in every

21   adversary proceeding in this Court.  It is completely

22   conventional practice for lawyers to show up in adversary

23   proceedings large and small at a pretrial conference and for

24   the Court to direct if the parties haven't already done it

25   themselves that they meet and confer to develop a set of

Page 49

1    procedures that are well suited to the litigation that is

2    before the Court.  The distributive action and the non-

3    distributive action are complex beyond the allegations and the

4    defenses that might be raised, in part because of the sheer

5    numbers of defendants that we're talking about.  Added to the

6    mix is the fact that some defendants have participated in ADR,

7    some have not participated in ADR.  Some like Ms. Appleby's

8    client announced a settlement in open court presumably subject

9    to documentation because rights have been reserved.  Others

10   like Nationwide just identified another party who has been

11   heard here today, apparently participated in mediation but have

12   not reached agreement.  This means that the class of defendants

13   in addition to being numerous is disparate in where they stand

14   in terms of active participation in a case at any point when

15   the music stops.

16          Well the music is going to stop in May and the

17   parties will no doubt negotiate the terms of pretrial orders in

18   good faith.  And there's nothing in this order extending the

19   stay that limits or is intended to limit the subject matter to

20   be addressed in these meet and confer sessions.

21          For that reason, while I understand that there are

22   parties that would like there to be expressed language in this

23   order that permits a discussion of possible relief from the SPV

24   ADR stay, there doesn't need to be any such language in order

25   for the parties to discuss that subject.  Moreover, I

Page 50

1    understand the position of the plan administrator here, namely,

2    they've sought an extension of a stay with respect to avoidance

3    actions in particular.  And just from a classification

4    perspective, not classes in a plan, but you put balls in a

5    basket and you put bats in another basket, they view balls and

6    bats as not belonging in the same basket.  That having been

7    said, that's only for purposes of what goes in this order, that

8    in no way precludes parties from talking about how this stay or

9    the SPV ADR stay may impact the procedures to be developed as

10   parties are meeting and conferring to develop orderly

11   procedures.

12           Accordingly, without prejudice to the rights of any

13   party, I'm prepared to enter the order extending the stay and

14   frankly appreciate the work of counsel both for the plan

15   administrator and for those parties who have objected or who

16   might have objected in reaching a compromise position with

17   regard to the form of the order.

18           And now I also recognize this is my last act in the

19   case.  And since I'm uncomfortable saying anything at a time

20   like this other than thank you, I want to thank all of you

21   including those not in the room for making this the experience

22   of a lifetime.  We're adjourned.

23           (Proceedings concluded at 11:14 AM)

24

25

Page 51

1                          I N D E X

2

3                          RULINGS

4    DESCRIPTION                                        PAGE

5    HEARING re Doc #8031 - Fourteenth Application

6    of Hughes Hubbard & Reed LLP for Allowance of

7    Interim Compensation for Services Rendered and

8    Reimbursement of Actual and Necessary Expenses

9    Incurred from July 1, 2013 through 11/30/13          11

10

11   HEARING re Adversary Case No. 10-04103

12   Status Conference First Bank Puerto Rico

13   v. Barclays Capital, Inc. (cont'd)

14

15   HEARING re Doc No. 42153 - Motion of Lehman

16   Brothers Holdings Inc. Pursuant to Bankruptcy

17   Rule 9019 for Approval of Settlement Agreement

18   Regarding Claim of Federal National Mortgage

19   Association                                          16

20

21   HEARING re Doc #40066 - Motion to Classify

22   and Allow the Claim Filed by the Federal

23   Home Loan Mortgage Corporation (Claim No. 33568)

24   in LBHI Class 3 (cont'd)

25

Page 52

1      HEARING re Doc # 2023 - Motion of Lehman

2      Brothers Holdings Inc. to Extend Stay of Avoidance

3      Actions and Grant Certain Related Relief                    50

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 53

1                          CERTIFICATION

2            I, Theresa Pullan, certify that the foregoing is a

3     correct transcript from the official electronic sound recording

4     of the proceedings in the above-entitled matter.

            Theresa      Digitally signed by Theresa Pullan
                         DN: cn=Theresa Pullan, o, ou,
5           Pullan       email=digital1@veritext.com,
                         c=US
                         Date: 2014.02.04 16:32:47 -05'00'

6     AAERT Certified Electronic Transcriber CET**00650

7     Theresa Pullan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22     Veritext

23     330 Old Country Road

24     Suite 300

25     Mineola, NY  11501