Hearing Date and Time: **February 27, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
Objection Date and Time: **February 24, 2014 at 12:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | |
|---|---|
| **In re** : | **Chapter 11 Case No.** |
| : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, : | **08-13555 (SCC)** |
| : | |
| **Debtors.** : | **(Jointly Administered)** |
-------------------------------------------------------------------x

### NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT WITH THE INTERNAL REVENUE SERVICE

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman Brothers Holdings Inc. ("LBHI") as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors in the above-referenced chapter 11 cases, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing and approving a settlement with the Internal Revenue Service, all as more fully described in the Motion, will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 621, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **February 27, 2014 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Motion, with proof of service, is served and filed with (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York, 10004, Courtroom 621; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn: Garrett A. Fail, Esq., attorneys for the Plan Administrator; (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq., Susan Golden, Esq. and Andrea Schwartz, Esq.; and (iv) the United States Attorney's Office for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, New York 10007, Attn: AUSA Jean-David Barnea, counsel for the IRS, so as

to be received by February 24, 2014 at 12:00pm (Prevailing Eastern Time), there will not be a hearing and the Motion may be approved.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: February 10, 2014
   New York, New York

      /s/ Garrett A. Fail
      Garrett A. Fail

      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Lehman Brothers Holdings Inc.
      and Certain of Its Affiliates

**Hearing Date and Time:** February 27, 2014 at 10:00 a.m. (Prevailing Eastern Time)
**Objection Date and Time:** February 24, 2014 at 12:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11 Case No.
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*                    :    08-13555 (SCC)
                                                               :
                                              Debtors.          :    (Jointly Administered)
                                                               :
                                                               :
---------------------------------------------------------------x

## MOTION OF LEHMAN BROTHERS HOLDINGS INC.
## PURSUANT TO FEDERAL RULE OF BANKRUPTCY
## PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL
## OF A SETTLEMENT WITH THE INTERNAL REVENUE SERVICE

# TABLE OF CONTENTS

Preliminary Statement .................................................................................................... 1

Background .................................................................................................................... 4

Jurisdiction ................................................................................................................... 4

LBHI's Disputes with the Internal Revenue Service ...................................................... 4

    I.    The Stock Loan Issue and Stock Loan Litigation ............................................ 5
    II.   Settlement Process ......................................................................................... 6
    III.  Description of Settlement Framework ........................................................... 7

Relief Requested ............................................................................................................ 9

Argument ..................................................................................................................... 10

Notice .......................................................................................................................... 13

Settlement Framework Letter ........................................................................... Exhibit A

Declaration of Jeffrey Ciongoli .......................................................................... Exhibit B

Proposed Order

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ashford Hotels Ltd.*,
  226 B.R. 797 (Bankr. S.D.N.Y. 1998) ....................................................................11

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
  699 F.2d 599 (2d Cir. 1983)............................................................................10, 11

*In re Drexel Burnham Lambert Group, Inc.*,
  134 B.R. 493 (Bankr. S.D.N.Y. 1991) ...................................................................11

*Fisher v. Pereira (In re 47-49 Charles St., Inc.)*,
  209 B.R. 618 (S.D.N.Y. 1997)...............................................................................10

*In re Hibbard Brown & Co., Inc.*,
  217 B.R. 41 (Bankr. S.D.N.Y. 1998) .....................................................................10

*In re Ionosphere Clubs, Inc.*,
  156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) .........................10

*Lehman Brothers Holdings Inc. v. United States*,
  No. 1:10-cv-6200 (S.D.N.Y. Aug. 18, 2010) ...........................................................2

*Nellis v. Shugrue*,
  165 B.R. 115 (S.D.N.Y. 1994)..........................................................................10, 11

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968).................................................................................................10

*In re Purofied Down Prods. Corp.*,
  150 B.R. 519 (S.D.N.Y. 1993)................................................................................11

*In re Spielfogel*,
  211 B.R. 133 (Bankr. E.D.N.Y. 1997)....................................................................10

**Statutes**

26 U.S.C. § 901(k) ................................................................................................5

26 U.S.C. § 6662 ..................................................................................................6

28 U.S.C. § 157 ....................................................................................................4

28 U.S.C. § 1334 ..................................................................................................4

Section 231AA of the United Kingdom Income and Corporation Taxes Act 1988 ......................6

**Other Authorities**

Fed. R. Bank. P. 1015(b)......................................................................................4

Fed. R. Bankr. P. 9019 ...................................................................................10, 12

Treas. Reg. § 1.1502-77(a)(1)...............................................................................1

Treas. Reg. § 1.1502-77(a)(2)...............................................................................1

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases (the "Chapter 11 Estates"), submits this motion and respectfully represents:

### Preliminary Statement

1.  By this motion, the Plan Administrator seeks approval of a settlement framework (the "Settlement Framework") that will significantly accelerate the determination of the final prepetition tax liability, if any, of LBHI and the affiliated group with which it filed consolidated federal income tax returns. It is important to highlight, though, that the final tax liability will not be resolved by the settlement framework alone and cannot yet be calculated.[1]

2.  As previously disclosed, LBHI had certain disputes with the Internal Revenue Service ("IRS") regarding LBHI's consolidated federal income tax returns for the 1997 through 2008 taxable years.[2] Since September 15, 2008, the Court has approved settlements between LBHI and the IRS of forty-three disputed issues from the prepetition period, representing $2.9 billion in taxes and penalties.[3]

---

[1] Nothing in this motion is intended as an admission or estimate of any amount for which a claim may in the future be Allowed (as defined in the Plan).

[2] LBHI has authority to settle disputes with the IRS on its own behalf and on behalf of all members of the affiliated group with which it filed consolidated federal income tax returns. Treas. Reg. §§ 1.1502-77(a)(1), (2). Further, the Plan Administrator has authority to settle disputes on behalf of LBHI, each of the Chapter 11 Estates, and each of their Controlled Affiliates (as such term is defined in the Plan). See Plan §§ 6.1, 6.3.

[3] See ECF Nos. 8353, 27084, and 31313. As a result of the progress in resolving open issues, in December 2013, the IRS filed amending and superseding proofs of claim, significantly reducing the aggregate liability asserted from more than $2.3 billion to less than $510 million. See ECF No. 41606.

3.      One issue, involving adjustments relating to certain stock lending transactions executed in 1999 through 2004 between Lehman Brothers Inc. ("LBI") and Lehman Brothers International (Europe) plc ("LBIE") could not be resolved in the IRS administrative process (the "Stock Loan Issue"). In connection with these stock lending transactions, the IRS disallowed certain foreign tax credits claimed by LBHI (the "Stock Loan Foreign Tax Credits"), reduced taxable income in an amount equal to the disallowed Stock Loan Foreign Tax Credits, and asserted related penalties (the "Asserted Penalties"). The tax and penalties in dispute (collectively, the "Stock Loan Adjustments") total more than $382 million excluding interest.

4.      The Stock Loan Adjustments for the 1999 and 2000 tax years were assessed by the IRS, paid by LBHI, and are currently pending in a refund lawsuit against the United States of America (the "Government") before the United States District Court for the Southern District of New York (the "Stock Loan Litigation").[4] The Stock Loan Adjustments for the 2001 through 2004 tax years have gone through the IRS administrative process and are included in the amended claims filed by the IRS against the Chapter 11 Estates, but these years are not part of the Stock Loan Litigation (the "Stock Loan 2001-2004 Adjustments"). The table below provides detail regarding the Stock Loan Adjustments subject to the Stock Loan Litigation and the Stock Loan 2001-2004 Adjustments.

---

[4] *See Lehman Brothers Holdings Inc. v. United States*, No. 1:10-cv-6200 (S.D.N.Y. Aug. 18, 2010). The Stock Loan Litigation was commenced in this Court on April 10, 2010 [ECF No. 8283], and the reference was withdrawn on November 9, 2010.

2

| | Net Tax in Dispute After Income Reduction | Penalties | Total Tax + Penalties |
|---|---|---|---|
| **Stock Loan Litigation (1999-2000)** | 91,918,197 | 18,383,639 | 110,301,837 |
| **Stock Loan 2001-2004 Adjustments** | 226,474,581 | 45,294,916 | 271,769,497 |
| **Totals** | **318,392,778** | **63,678,556** | **382,071,334** |

5.       As described in greater detail below, absent the Settlement Framework at least four distinct and complex issues will need to be determined to resolve the Stock Loan Issue. Pursuant to the Settlement Framework, which will apply to both the Stock Loan Litigation and the Stock Loan 2001-2004 Adjustments, the IRS will concede three of the four issues, including the Asserted Penalties. In exchange, LBHI will concede 52.5% of the Stock Loan Foreign Tax Credits in each of the 1999 through 2004 taxable years. The remaining legal issue, which can be resolved with briefing and limited testimony, would be adjudicated by the District Court and determine whether LBHI is entitled to the 47.5% of Stock Loan Foreign Tax Credits remaining in each of the 1999 through 2004 taxable years.

6.       Given the uncertain legal questions and the factual complexity surrounding the multiple issues raised in the Stock Loan Litigation, the risks and expense attendant to a lengthy trial on these complex issues, and the net financial effects of the Settlement Framework, the Plan Administrator believes that the Settlement Framework is fair and reasonable, and in the best interests of LBHI, the Chapter 11 Estates, their creditors, and all parties in interest.

3

## Background

7.      Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8.      On December 6, 2011, the Court entered an order confirming the Plan. On March 6, 2012, the Plan and the Debtor Allocation Agreement, which was approved pursuant to the Plan, became effective. [ECF No. 23023]. The Debtor Allocation Agreement and related reserve and allocation agreement provide for the manner in which tax liabilities, refunds or readjustments will be allocated among, *inter alia*, the Chapter 11 Estates.

## Jurisdiction

9.      This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## LBHI's Disputes with the Internal Revenue Service

10.     After auditing LBHI's 1997 through 2000 consolidated income tax returns, the IRS proposed various adjustments that LBHI disputed. LBHI and the IRS attempted to administratively resolve their disputes in 2007, and while they settled many issues, eight issues remained in dispute. Between June and December 2009, LBHI and the IRS developed and engaged in a second administrative process to attempt to resolve these disputed issues. *See* ECF No. 7734. As a result of this process, LBHI and the IRS settled seven of the eight disputed issues.

4

11.     During this second administrative process, LBHI exchanged written submissions with the IRS providing factual information and legal arguments, and the Appeals Division of the IRS mediated two days of negotiations with respect to the Stock Loan Issue; however, the Stock Loan Issue remained in dispute. Accordingly, in April 2010, LBHI commenced the Stock Loan Litigation.

**I.     The Stock Loan Issue and Stock Loan Litigation**

12.     As referenced above, the Stock Loan Issue involves over $382 million of adjustments (excluding interest) in 1999 through 2004 relating to certain stock lending transactions in which LBI, at the time a wholly owned subsidiary of LBHI and a member of LBHI's consolidated tax group, lent U.K. stock to LBIE. Specifically, LBI received "in lieu" payments from LBIE with respect to such stock, and incurred U.K. taxes upon the receipt of these in lieu payments. LBHI claimed the Stock Loan Foreign Tax Credits for the U.K. taxes that LBI incurred and paid.

13.     The dispute in the Stock Loan Litigation is divided into the following four issues:[5]

    a.  whether 26 U.S.C. § 901(k) applies by operation of Articles 10(2)(a)(iii) and 23(1) of the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains, U.S.-U.K., Dec. 31, 1975, 31 U.S.T. 5668 (the "Treaty") to disallow the foreign tax credits claimed by LBHI (the "901(k) Issue");

---

[5] These descriptions are solely intended to identify the pertinent issues for purposes of the Settlement Framework and are not intended to be construed as admissions by LBHI.

5

b.  whether or not LBHI should be treated, under Article 10(2)(a)(ii) of the

Treaty, as having received "a payment from the United Kingdom" and as

having been subject to the deduction withheld from such payment for tax

payable to the United Kingdom, in light of the provisions of Section 231AA

of the United Kingdom Income and Corporation Taxes Act 1988 (the "231AA

Issue");

c.  whether common law doctrines, such as the economic substance or step

transaction doctrines, apply to disallow the foreign tax credits claimed by

LBHI (the "Economic Substance Issue"); and

d.  whether LBHI is liable for accuracy-related penalties under 26 U.S.C. § 6662

(the "Penalty Issue").

## II.    Settlement Process

14.    Over the last two years, LBHI and the U.S. Attorney's Office for the

Southern District of New York ("USAO") have engaged in extensive settlement negotiations in

an attempt to resolve the Stock Loan Litigation and related Stock Loan 2001-2004 Adjustments.[6]

These negotiations occurred over the course of several meetings, including a settlement

conference with Magistrate Judge Frank Maas on November 15, 2012.

15.    Throughout this process, LBHI's management and its in-house tax

department have been advised and represented by lawyers from Bingham McCutchen LLP

("Bingham") who have expertise in handling significant tax controversy matters for large

---

[6] After the Stock Loan Litigation was filed in April of 2010, settlement authority for the 1999 and 2000 tax years shifted from the IRS to the U.S. Department of Justice ("DOJ"). While settlement authority for the Stock Loan 2001-2004 Adjustments remained with the IRS, it was anticipated that any resolution in the Stock Loan Litigation would also be applied to the Stock Loan 2001-2004 Adjustments.

institutions and who have served as primary tax controversy counsel for LBHI and certain of its affiliates since 2005. Additionally, Sutherland Asbill & Brennan LLP ("Sutherland"), which also has significant experience with tax controversy matters, has served as LBHI's advisory tax controversy counsel. The litigation subcommittee of the former Official Committee of Unsecured Creditors in these cases (the "Subcommittee"), represented by Milbank Tweed, Hadley & McCloy LLP, has participated in all settlement negotiations, including the settlement conference before Judge Maas.

16.     On November 14, 2013, LBHI, the USAO, and the Subcommittee informed the District Court in a joint letter that a settlement framework had been developed. *See* Endorsed Letter from R. Madan to Judge Berman dated Nov. 14, 2013 [ECF No. 104], (the "Settlement Framework Letter") (Ex. A). As described in the Settlement Framework Letter, although LBHI, the USAO, the IRS, and the Subcommittee have jointly developed the Settlement Framework, it remains subject to the approval of this Court, the approval of the Assistant Attorney General for the DOJ Tax Division, review by the U.S. Congress' Joint Committee on Taxation, and entry of a stipulated order in the District Court. LBHI and the USAO have committed to obtaining these approvals and reviews as expeditiously as possible.

## III.     Description of Settlement Framework

17.     To resolve with finality the Stock Loan Litigation and the Stock Loan 2001-2004 Adjustments, LBHI, the USAO, the IRS, and the Subcommittee have agreed to a Settlement Framework on the following terms:

7

a. The Government will concede LBHI's claim for a refund related to the Penalty Issue and LBHI will be entitled to a refund of the $18,383,639 previously paid on account of the Asserted Penalties;[7]

b. The Government will no longer prosecute, pursue, or argue the 231AA Issue, the Economic Substance Issue, or any other challenge to the Stock Loan Adjustments, other than the 901(k) Issue;

c. LBHI will concede 52.5% of the Stock Loan Foreign Tax Credits in each of the 1999 through 2004 taxable years; and

d. LBHI's entitlement to the remaining 47.5% of the Stock Loan Foreign Tax Credits in each of the 1999 through 2004 taxable years will be determined by the District Court's judgment on the 901(k) Issue (or the judgment of the highest relevant court of appellate jurisdiction), unless LBHI and the Government otherwise agree to resolve the 901(k) Issue in any future settlement.

   i. If LBHI ultimately prevails on the 901(k) Issue, LBHI will also be entitled to the remaining 47.5% of the Stock Loan Foreign Tax Credits in each of the 1999 through 2004 taxable years,[8] and LBHI will increase its taxable

---

[7] Specifically, LBHI will be entitled to a refund of $5,961,705 for the 1999 tax year, and $12,421,934 for the 2000 tax year.

[8] Specifically, LBHI will be entitled to $21,783,153 of the $45,859,270 in Stock Loan Foreign Tax Credits claimed in the 1999 tax year; to $45,387,837 of the $95,553,341 in Stock Loan Foreign Tax Credits claimed in the 2000 tax year; to $60,630,174 of the $127,642,471 in Stock Loan Foreign Tax Credits claimed in the 2001 tax year; to $48,902,514 of the $102,952,661 in Stock Loan Foreign Tax Credits claimed in the 2002 tax year; to $32,816,745 of the $69,087,885 in Stock Loan Foreign Tax Credits claimed in the 2003 tax year; and to $23,151,222 of the $48,739,415 in Stock Loan Foreign Tax Credits claimed in the 2004 tax year.

income in the amount of the allowed Stock Loan Foreign Tax Credits in
each of the 1999 through 2004 taxable years.[9]

    ii.  If the Government ultimately prevails on the 901(k) Issue, LBHI will not
be entitled to the remaining 47.5% of the Stock Loan Foreign Tax Credits
and LBHI will not increase its taxable income in the 1999 through 2004
taxable years.

18.    LBHI's final prepetition tax liability for the 1997 through 2008 taxable
years cannot be calculated with precision at this time as in addition to the Stock Loan Issue:  i)
such liability will be reduced by other tax attributes, including LBHI's election to carry back its
2008 net operating loss five years;[10] and ii) another ongoing audit that involves a review of a
non-income tax issue independent from the audit of LBHI's consolidated income tax returns has
not yet been resolved.[11]

### Relief Requested

19.    The Plan Administrator seeks authorization pursuant to Bankruptcy Rule
9019 to enter into and implement the Settlement Framework.

---

[9] The foreign tax credit regime requires that foreign taxes claimed as a credit be included in taxable income. Specifically, LBHI will increase taxable income by $21,783,153 in the 1999 tax year, by $45,387,837 in the 2000 tax year, by $60,630,174 in the 2001 tax year, by $48,902,514 in the 2002 tax year, by $32,816,745 in the 2003 tax year, and by $23,151,222 in the 2004 tax year.

[10] The IRS is currently auditing LBHI's 2008 through 2010 consolidated income tax returns, which include the 2008 net operating loss that LBHI has elected to carry back five years.

[11] In addition, because the deficiency interest on any increased tax liability cannot be calculated definitively until such increased tax liability or penalties are assessed, deficiency interest is not included in the figures used in this motion.

## Argument

20.    As described below, the Settlement Framework is in the best interests of

LBHI and the Chapter 11 Estates and should be approved.

21.    Bankruptcy Rule 9019(a) provides that, "[o]n motion ... and after notice

and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is

fair and equitable and is in the best interest of the estate. *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v.*

*Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere*

*Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

22.    The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is

the responsibility of a court to examine a settlement and determine whether it "falls below the

lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

23.    While a court must evaluate "all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a mini-trial of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d

at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*,

134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the

10

numerous questions of law and fact . . . . The court need only canvass the settlement to

determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123

(internal citations omitted).

24.     The court may give weight to the informed judgment of the debtor that a

compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522

(S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998)

("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but

only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable

choices, I must approve that choice, even if, all things being equal, I would have selected the

other.").

25.     Prior to the Stock Loan Litigation, LBHI and the IRS made two attempts

to resolve the Stock Loan Adjustments through the IRS's administrative settlement process.

They were first addressed by the Appeals Division of the IRS in 2007, and subsequently, from

June through December 2009, were part of the administrative process the parties established to

facilitate settlement of the eight disputed issues resulting from the 1997 through 2000 audit. By

exchanging extensive written submissions setting forth their respective factual and legal

positions and participating in a multi-day Appeals Conference, both LBHI and the IRS subjected

their positions to rigorous examination and review. Since proceeding to litigation, LBHI has

conducted extensive factual development and legal analysis to prepare the case for trial,

including an extended period of fact and expert discovery in which twenty-six potential fact and

expert witnesses were deposed. Over the last two years, LBHI, the USAO, and the

Subcommittee have engaged in substantive settlement discussions, including a settlement

11

conference before Magistrate Judge Maas in the District Court. The Settlement Framework, therefore, was achieved after each party's thorough review and analysis of their substantive positions and exposure to the merits and potential hazards of litigation.

26.    Based on their review and consultation with their advisors, LBHI's management and its tax department have concluded (1) that the Settlement Framework is fair, equitable, and in the best interests of LBHI, the Chapter 11 Estates, their creditors, and all parties in interest, and (2) that the resolution of the Stock Loan Issue will advance the ultimate resolution of the Amended Claims. *See* Decl. of Jeffrey Ciongoli in Supp. of Mot. of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 for Authorization & Approval of a Settlement with the Internal Revenue Service ¶¶ 13-14, February 10, 2014 (Ex. B). The Settlement Framework reduces a large and complex litigation to one narrow legal issue – the 901(k) Issue – that can be presented through briefing and the potential testimony of just three expert witnesses. Because all other claims and defenses associated with the case will be resolved with finality as a result of the Settlement Framework, LBHI will avoid the significant additional costs associated with the further development of a complex evidentiary record and a lengthy trial on the more fact-intensive Economic Substance Issue. LBHI considered all relevant factors in reaching this Settlement Framework, including an assessment of the merits and potential hazards of litigation, the challenge of predicting the outcome in a case involving an issue of foreign law applied to a unique set of facts, the costs associated with the continued factual development, analysis, and prosecution of the four issues involved in the Stock Loan Litigation, and the net effects of LBHI's tax attributes.

**Notice**

27.    No trustee has been appointed in these chapter 11 cases. Notice of this

motion has been served in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [ECF No. 9635] on (i) the U.S. Trustee for Region 2; (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern

District of New York; and (v) all parties who have requested notice in these chapter 11 cases.

LBHI submits that no other or further notice need be provided.

28.    No previous request for the relief sought herein has been made by the Plan

Administrator or the Chapter 11 Estates to this or any other court.

WHEREFORE, LBHI respectfully requests that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: February 10, 2014
       New York, New York


/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

13

**Exhibit A**

08-13555-mg    Doc 42685    Filed 02/10/14    Entered 02/10/14 20:20:10    Main Document
Case 1:10-cv-06200-RMB-FM    Document 104    Filed 11/15/13    Page 1 of 4
Case 1:10-cv-06200-RMB-FM    Document 103    Filed 11/14/13    Page 1 of 4

RAJ MADAN
Direct Phone:  202.373.6681
Direct Fax:     202.373.6381
raj.madan@bingham.com

**MEMO ENDORSED**

**P 4**

November 14, 2013

**Via ECF**

Hon. Richard Berman
Daniel Patrick Moynihan
United States Courthouse, Courtroom 12D
500 Pearl St.
New York, NY 10007-1312

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/15/13
```

Re:  *Lehman Brothers Holdings Inc. v. United States*,
     **No. 1:10-cv-6200 (S.D.N.Y.)**

Dear Judge Berman:

Plaintiff Lehman Brothers Holdings Inc. ("Lehman" or "Plaintiff"), Plaintiff-
Intervenor The Official Committee of Unsecured Creditors of Lehman Brothers
Holdings Inc., *et al.* (the "Committee"), and Defendant United States of America
(the "Government," and together with Plaintiff and the Committee, the "Parties")
write jointly in advance of our November 18, 2013 conference to (1) inform the
Court that the Parties have developed a settlement framework that resolves all but
one of the issues in dispute in this case and therefore substantially narrows the
issues to be adjudicated by this Court, and, as a result of this settlement
framework, (2) propose a revised briefing schedule for the Parties' upcoming
motions *in limine*.

**Settlement Framework**

As we explained to the Court in our letter dated August 16, 2013, and at the
September 9, 2013, hearing, there are four issues in this case: (1) the 901(k) Issue
that involves the interpretation of the U.S.-U.K. Tax Treaty, (2) the 231AA Issue
that involves certain provisions of U.K. law, (3) the Economic Substance Issue
that involves the application of common-law doctrines to evaluate the economic
effects and profitability of the Stock Loan Transactions, and (4) the Penalty Issue.
Since we last appeared before the Court on September 9, 2013, the Parties have
jointly developed a settlement framework to resolve all claims and defenses
related to three of the four issues:  the 231AA Issue, the Economic Substance
Issue, and the Penalty Issue.  Pursuant to this settlement framework, the Parties
intend to file a stipulation conclusively resolving their claims and defenses on
these three issues, leaving only the 901(k) Issue for adjudication by the Court.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

+1.202.373.6000
+1.202.373.6001
bingham.com

08-13555-mg    Doc 42685    Filed 02/10/14    Entered 02/10/14 20:20:10    Main Document
Case 1:10-cv-06200-RMB-FM    Document 104    Filed 11/15/13    Page 2 of 4
Case 1:10-cv-06200-RMB-FM    Document 103    Filed 11/14/13    Page 2 of 4

Judge Berman
November 14, 2013
Page 2

This settlement approach is different from the "bifurcation approach" the Parties
proposed to the Court earlier this year in that the bifurcation approach did not
resolve with finality the three remaining issues in the case. Under the bifurcation
approach, the Parties could only represent to the Court that if the case was
bifurcated and the 901(k) Issue was litigated first, the Parties were confident that
they could eventually settle the three remaining issues. The current settlement
framework is different in that the three remaining issues would be conclusively
resolved with finality.

Another benefit of this settlement framework is that the 901(k) Issue is a
relatively narrow issue that can be presented through briefing and the potential
testimony of just three expert witnesses.[1]  Because all other claims and defenses
will be conclusively resolved as a result of the settlement approach described
herein, the Court's ultimate decision on the 901(k) Issue will resolve the entire
case. This approach will avoid a lengthy trial on the more fact-intensive
Economic Substance Issue, and will permit the Court to avoid certain issues of
foreign law.

While the Parties have jointly developed this settlement framework, Lehman, the
Committee, and the Government must obtain approval from certain constituents
to finalize the settlement and resolve the settled issues with finality. Several such
levels of review and approval have already been completed. Specifically,
Lehman has obtained approval from its board of directors, the Government has
initiated the process of obtaining the approval of the Assistant Attorney General
for the Tax Division, and the Committee has given its approval. Before the
settlement can be finalized, it must be approved by the Assistant Attorney General
for the Tax Division and by the Bankruptcy Court, and further must be reviewed
by Congress's Joint Committee on Taxation. The Parties are committed to
obtaining these approvals and reviews as expeditiously as possible.

There is nothing unusual about this approval process (other than receipt of
Bankruptcy Court approval), as this is the process the Parties would have to
undertake for approval to settle any similar tax dispute in litigation. Lehman and
the IRS have administratively already settled with finality forty-three out of forty-
four issues, involving approximately $3 billion of disputed tax liability, relating to
Lehman's consolidated tax return and in that process Lehman and the
Government obtained approvals from the Bankruptcy Court and Congress's Joint
Committee on Taxation.

---

[1] The Government has indicated that it anticipates filing a motion *in limine* seeking to exclude
Lehman's two expert witnesses on the 901(k) Issue, which motion Lehman will oppose.

08-13555-mg   Doc 42685   Filed 02/10/14   Entered 02/10/14 20:20:10   Main Document
Case 1:10-cv-06200-RMB-FM   Document 104   Filed 11/15/13   Page 3 of 4

Case 1:10-cv-06200-RMB-FM   Document 103   Filed 11/14/13   Page 3 of 4

Judge Berman
November 14, 2013
Page 3

## Proposed Briefing Schedule for Motions *in Limine*

The current briefing schedule calls for omnibus motions *in limine* to be submitted on November 25, with responses on December 26 and replies on January 9.[2] Originally, the Parties intended to file motions *in limine* on several issues, including some of the issues that would be dismissed as part of the settlement framework. To save litigant and judicial resources, in light of the settlement framework the Parties propose to limit the motions *in limine* to only those relevant to the 901(k) Issue and propose the following schedule:

- December 4: The Government files its motion *in limine* to exclude expert testimony from Lehman's experts relevant to the 901(k) Issue, Steven Hannes and David Foster

- December 23: Lehman files its response to the Government's motion

- January 13: The Government files its reply

- By January 31:

  o  Lehman expects to obtain Bankruptcy Court approval
  o  The Government updates the Court on approval status

- February 11: Scheduled Pre-Trial Conference. The Parties will update the Court on the status of the approval process

The Parties are in agreement that implementing the settlement framework and adjudicating only the 901(k) Issue is the most efficient path forward for this case. We are seeking to obtain the required approvals and review as quickly as possible, with the understanding that the time and effort spent obtaining these approvals will facilitate the ultimate resolution of this case.

---

[2] The originally ordered dates of November 16, December 6, and December 20 were each tolled for 17 days due to the lapse of congressional funding for the Federal Government. *See* Order In re Stay of Certain Civil Cases Pending the Restoration of Department of Justice Funding (Oct. 1, 2013). The currently scheduled dates were further clarified by the Court in telephone conversations with counsel to the Government and the Plaintiff on November 12, 2013.

08-13555-mg    Doc 42685    Filed 02/10/14    Entered 02/10/14 20:20:10    Main Document
Case 1:10-cv-06200-RMB-FM    Document 334    Filed 11/15/13    Page 4 of 4

Case 1:10-cv-06200-RMB-FM    Document 103    Filed 11/14/13    Page 4 of 4

Judge Berman
November 14, 2013
Page 4

We look forward to discussing the above matters with the Court at the upcoming conference.

Respectfully,

*Raj Madan / KRS*

Raj Madan
Counsel for Plaintiff

cc (via email): Jean-David Barnea, Counsel for the Government
James Nicholas Boeving, Counsel for the Government
Amy Barcelo, Counsel for the Government
Stacey J. Rappaport, Counsel for the Committee

This proposed resolution of the case is quite sensible + efficient. The parties and counsel are applauded. The schedule is approved with one addition: the Court would like a revised joint pre-trial order by 12/4/13.

SO ORDERED:
Date: 11/15/13    *Richard M. Berman*

Richard M. Berman, U.S.D.J.

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                    :

**In re**                             :           **Chapter 11 Case No.**

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*  :         **08-13555 (JMP)**

                 **Debtors.**        :          **(Jointly Administered)**

                                      :

                                      :
-------------------------------------------------------------------x

**DECLARATION OF JEFFREY CIONGOLI
IN SUPPORT OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.
PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 FOR AUTHORIZATION AND APPROVAL
OF A SETTLEMENT WITH THE INTERNAL REVENUE SERVICE**

Pursuant to 28 U.S.C. § 1746, Jeffrey Ciongoli declares and says:

    1.      I, Jeffrey Ciongoli, as a Managing Director and the Director of Global Tax at

Lehman Brothers Holdings Inc. ("LBHI"), am responsible for the tax function at LBHI, and, as

such, I have personal knowledge of the matters set forth in this declaration.

    2.      I submit this declaration in support of the Motion of Lehman Brothers Holdings

Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Authorization and Approval of

A Settlement with the Internal Revenue Service (the "Motion").

    3.      I began my career at LBHI's tax department thirty years ago as a Tax Analyst.

During my thirty years at LBHI, I have been involved in many of the tax department's functions,

including preparation and review of federal and state tax returns, international tax compliance,

tax planning, and Internal Revenue Service ("IRS") audit defense.

    4.      From 1994 through 2002, I was a First Vice President and was responsible for

LBHI's consolidated federal income tax returns, state and local tax issues, international tax

issues, and tax technology. In this capacity, I became familiar with the tax reporting positions on LBHI's consolidated federal income tax returns for the 1997 through 2002 tax years.

5.      From 2003 through 2008, I was a Senior Vice President with continued responsibility for LBHI's consolidated federal income tax returns, state and local tax issues, and tax technology. In addition, in 2002, I became head of tax compliance, which included managing the IRS's audits of LBHI's tax returns and negotiating the resolution of contested issues with the IRS. In this capacity, I became familiar with the tax reporting positions on Lehman's consolidated federal income tax returns for the 2003 through 2008 tax years.

6.      After LBHI filed a voluntary petition under Chapter 11 of Title 11 of the United States Code on September 15, 2008 (the "Commencement Date"), I became Managing Director and Director of Global Tax, a position that I continue to hold. As Director of Global Tax, I am in charge of LBHI's tax function, which includes responsibility for all of LBHI's domestic and foreign tax reporting, tax planning, and tax disputes with the IRS.

7.      The Motion relates to a Settlement Framework[1] that has been reached for the Stock Loan Issue, a tax dispute in the 1999 through 2004 tax years. I was responsible for the oversight of the IRS's audits of LBHI's consolidated federal income tax returns for the 1997 through 2007 tax years, which began prior to the Commencement Date.

8.      Since the Commencement Date, I have worked closely with outside counsel and other professionals in the LBHI tax department in all phases of the IRS administrative process, and have been personally involved with both the development of a settlement process and the efforts to administratively resolve the Stock Loan Issue. I have directly participated in all

---

[1] Unless otherwise indicated, all defined terms have the meanings provided in the Motion.

settlement negotiations. In addition, other professionals in the LBHI tax department have analyzed these issues and assisted me in evaluating the Settlement Framework.

9.    In 2007, LBHI and the IRS attempted to administratively resolve the Stock Loan Issue through a process involving IRS Appeals, as described in LBHI's Motion for Authorization and Approval of Certain Settlements with the Internal Revenue Service dated March 23, 2010 [ECF No. 7734] (the "March 2010 Motion"). No resolution was reached at that time.

10.    From June through December 2009, LBHI and the IRS engaged in a second administrative process to attempt to resolve the Stock Loan Issue as described in the March 2010 Motion. No resolution was reached for the Stock Loan Issue at that time.

11.    Since filing the Stock Loan Litigation in April 2010, LBHI has conducted extensive factual development and legal analysis to prepare the case for trial, including an extended period of fact and expert discovery in which twenty-six potential fact and expert witnesses were deposed.

12.    Over the last two years, LBHI and the USAO have engaged in settlement negotiations in an attempt to resolve the Stock Loan Litigation and related Stock Loan 2001-2004 Adjustments, including a settlement conference with Magistrate Judge Frank Maas on November 15, 2012. The subcommittee participated in all settlement negotiations, including the settlement conference before Judge Maas.

13.    Based on an assessment of the merits and potential hazards of litigation and consideration of all tax attributes, I have concluded in my capacity as Managing Director and Director of Global Tax for LBHI that the Settlement Framework is fair, equitable, and in the best interests of LBHI, the Chapter 11 Estates, their creditors, and all parties in interest, and that the resolution of the Stock Loan Issue will advance the ultimate resolution of the Amended Claims.

3

14.    In concluding that the Settlement Framework is fair, equitable, and in the best interests of LBHI, the Chapter 11 Estates, their creditors, and all parties in interest, I balanced a variety of factors, including applicable legal precedent, the factual record, the challenge of predicting the outcome in a case involving an issue of foreign law applied to a unique set of facts, the continued factual development, analysis, and prosecution of the four issues involved in the Stock Loan Litigation, and the net effects of LBHI's tax attributes.

15.    LBHI's final prepetition tax liability for the 1997 though 2008 tax years will depend on the outcomes of the consolidated federal income tax audit of the 2008 through 2010 tax years and another ongoing audit that involves a review of a non-income tax issue.

16.    I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 10, 2014

                                        /s/ Jeffrey Ciongoli
                                        JEFFREY CIONGOLI

4

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                              :
**In re**                                     :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **08-13555 (SCC)**
                                              :
                        **Debtors.**          :    **(Jointly Administered)**
                                              :
                                              :
-----------------------------------------------------------------x

### ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING AND APPROVING OF A SETTLEMENT WITH THE INTERNAL REVENUE SERVICE

Upon the motion, dated February 7, 2014 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization and approval of a settlement with the Internal Revenue Service, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures

[ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern

District of New York; and (v) all parties who have requested notice in these chapter 11 cases,

and it appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, the Chapter 11

Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in

the Motion establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the compromises and

settlements described in the Motion are approved; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the Settlement Framework[1] is

approved and LBHI is duly authorized to execute, deliver, implement and fully perform any and

all obligations, instruments, documents and papers and to take any and all actions reasonably

necessary or appropriate to consummate the Settlement Framework and perform any and all

obligations contemplated therein; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and the

terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

---

[1] Capitalized terms not otherwise defined herein should have the meaning ascribed to them in the Motion.

2

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: _____, 2014
      New York, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE

3