Hearing Date and Time: February 27, 2014 at 10:00 a.m. (Eastern)
Response Deadline: February 18, 2014 at 4:00 p.m. (Eastern)

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Jennifer C. DeMarco
Sarah N. Campbell
Adam Lesman

*Counsel to ING USA Annuity
and Life Insurance Company*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re                                                        :
                                                             :       Chapter 11
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,                    :
                                                             :       Case No. 08-13555 (SCC)
                                         Debtors.            :
                                                             :
                                                             :       (Jointly Administered)
-------------------------------------------------------------x

**RESPONSE OF ING USA ANNUITY AND LIFE INSURANCE COMPANY TO
THE PLAN ADMINISTRATOR'S FOUR HUNDRED FIFTY-FOURTH
OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

ING USA Annuity and Life Insurance Company ("ING"), by and through its undersigned counsel, respectfully submits this response (the "Response") to the Four Hundred Fifty-Fourth Omnibus Objection to Claims (Valued Derivatives Claims) [Docket No. 42104], dated January 17, 2014 (the "Objection"), filed by Lehman Brothers Holdings Inc., as Plan Administrator (the "Plan Administrator"), and in support thereof respectfully states as follows:

**PRELIMINARY STATEMENT AND BACKGROUND**

1.      The Objection interposed by the Plan Administrator is insufficient to overcome the *prima facie* validity of ING's properly filed Claims (defined below). In order to properly

shift the burden back to ING, the Plan Administrator is required to adduce evidence of equal or greater probative force than that put forth by ING. The cursory allegation that ING's calculations of its Claims are "greater than the fair, accurate, and reasonable values determined by the Plan Administrator after a review of the claimant's supporting documentation and LBHI's and the Chapter 11 Estates' books and records" is plainly insufficient. Objection at ¶ 12.

2.      On May 22, 2007, ING and Lehman Brothers OTC Derivatives Inc. ("LOTC", and together with ING, the "Parties") entered into an ISDA Master Agreement that governed the terms of certain swap transactions entered into between the Parties (together with the appurtenant Schedule dated as of the same date, the Credit Support Annex and any confirmations setting forth terms and conditions for particular transactions thereunder and related agreements, the "Agreement").[1]

3.      Lehman Brothers Holdings Inc. ("LBHI") was designated as a Credit Support Provider in relation to LOTC, and LBHI issued a guarantee dated May 22, 2007 in relation to LOTC's obligations under the Agreement as a Credit Support Document (the "Guarantee").

4.      On September 15, 2008, LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York. On October 3, 2008, LOTC commenced its voluntary chapter 11 case in this Court under the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Agreement.

5.      The commencement of the chapter 11 case of LBHI constituted an Event of Default under Section 5(a)(vii) of the ISDA Master Agreement.  Section 6(a) of the ISDA Master Agreement states that upon an occurrence of an Event of Default, the Non-Defaulting Party may elect to terminate all Transactions under the Agreement and designate an Early Termination Date.  On September 15, 2008, ING exercised its rights under Section 6(a) of the ISDA Master Agreement and designated September 15, 2008 as the Early Termination Date.

6.      Under the Agreement, the Non-Defaulting Party is entitled to calculate the Early Termination Amount and send notice of the same to the Defaulting Party.  The Agreement specifies Loss and Second Method as being the applicable payment measure and method.  In accordance with these provisions, ING calculated its "Loss" in relation to the termination of each outstanding Transaction under the Agreement.

7.      On December 17, 2008, ING Investment Management LLC, as Agent and on behalf of ING, delivered a calculation statement (the "Calculation Statement") to LOTC pursuant to Section 6(d)(i) of the ISDA Master Agreement.  The Calculation Statement included the basis for ING's calculation of the amounts due in respect of the termination of the outstanding Transactions, including the amount of "Loss" calculated on an individual Transaction basis (the "Early Termination Amount").

8.      ING has a valid claim against LOTC for the entirety of the Early Termination Amount calculated in accordance with Section 6(e) of the Agreement (and such other amounts as permitted under the Agreement and as set forth in the LOTC Claim (as defined below)) and a valid claim against LBHI as a result of its guarantee of LOTC's obligations under the Agreement.

9.    Pursuant to the Bar Date Order,[2] on September 10, 2009, ING timely filed proof of claim number 11152 against LOTC (the "LOTC Claim") in the amount of $6,997,101.81 with respect to the Early Termination Amount and certain other amounts as further described in the Calculation Statement and LOTC Claim.[3]  On October 21, 2009, ING submitted a derivative questionnaire and supporting documentation with respect to the LOTC Claim pursuant to the Bar Date Order (the "LOTC Questionnaire").[4]  The LOTC Questionnaire subsequently was amended on October 22, 2009.

10.    Also on September 10, 2009, ING timely filed proof of claim number 11153 against LBHI (the "LBHI Claim" and, together with the LOTC Claim, the "Claims") in the amount of $6,997,101.81 on account of LBHI's guarantee of LOTC's payment obligations under the Agreement.  On October 21, 2009, ING submitted a derivative questionnaire and supporting documentation with respect to the LBHI Claim pursuant to the Bar Date Order (the "LBHI Questionnaire").  The LBHI Questionnaire subsequently was amended on October 22, 2009.

11.    By its Objection, the Plan Administrator is seeking to reduce the amount of each of the LOTC Claim and the LBHI Claim from $6,997,101.81 to $4,677,657.79.

---

[2]    On July 2, 2009, the Bankruptcy Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

[3]    As mentioned above and as further described in the Calculation Statement, ING used "Loss and Second Method" to calculate the Early Termination Amount, which was comprised of the Loss amounts resulting from the termination of outstanding Transactions under the Agreement, plus interest and less $7,505,000 in cash collateral held by ING.  ING is unaware of any dispute over the value of this collateral, which ING properly deducted from its total Loss amount to arrive at the Early Termination Amount set forth in the LOTC Claim.

[4]    In accordance with the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated as of April 19, 2010, all of the information and documentation submitted by ING in connection with the Claims and Questionnaires are part of the record and incorporated herein.  ING is not required to submit them in connection with this Response.

12.     As noted above, this reduction is sought based upon no more than a generic statement that the Claims are "greater than the fair, accurate, and reasonable values determined by the Plan Administrator after a review of the claimant's supporting documentation and LBHI's and the Chapter 11 Estates' books and records."  Objection at ¶¶ 12, 14.  The Objection also sets forth a generic description of the "multi-step process" used by the Plan Administrator to review claims based on derivative contracts.  Objection at ¶ 15.  However, the Objection fails to identify *any* basis to support an objection to the Claims.  To the extent that the Objection rests upon the foregoing to shift the burden back to the claimant, it fails.

## ARGUMENT

### A.     Applicable Legal Standard

13.     A properly filed proof of claim is deemed allowed unless a party in interest objects.  11 U.S.C. §502(a).  Section 502(b) of the Bankruptcy Code provides, in pertinent part, that if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim and shall allow the claim in such amount except to the extent that one of the exceptions enumerated in section 502(d) applies.  U.S.C. §502(b); *In re Rockefeller Center Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  A properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim.  Fed R. Bankr. P. 3001(f).

14.     Following the establishment of a claim's *prima facie* validity, the burden shifts to the objector to show "sufficient evidence" to negate such *prima facie* validity.  *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15 (Bankr. S.D.N.Y., Feb. 20, 2007); *J.P. Morgan Sec's., Inc. v. Spiegel Creditor Trust (In re Spiegel, Inc.)*, Case Nos. 03-11540 (BRL), 06-CV-13477 (CM), 2007 WL 2456626 at * 15 n.6 (S.D.N.Y. Aug. 22, 2007).  Such "sufficient evidence" must be of equal or greater probative force to that of the proof of

claim which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (*internal quotations omitted*) (quoting *In re Allegheny Intern., Inc.* 954 F.2d 167, 173-174 (3d Cir. 1992) quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)); *In re Spiegel, Inc.*, 2007 WL 2456626 at *15; *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (evidence must be of equal force). "Mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence. *See Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim."); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (testimonial evidence was sufficient to shift the burden back to the claimant to prove the validity of its claim).

15.     Only when the objector meets its burden and puts forth such "sufficient evidence" does the burden shift back to the claimant and the claimant "is required to meet the usual burden of proof to establish the validity of the claim." *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15-16; *In re Oneida Ltd.*, 400 B.R. at 389.

### B.     The Plan Administrator Has Not Put Forth Evidence to Rebut the Claim

16.     In order to satisfy its burden, the Plan Administrator must put forth sufficient evidence to demonstrate that the Claims should be reduced. The Plan Administrator has not put forth any "evidence" to rebut the *prima facie* validity of the Claims. Instead, the Objection

summarily asserts that the amounts set forth on the Claims are "greater than the fair, accurate, and reasonable values as determined by the Plan Administrator."[5] Objection at ¶¶ 12, 14.

17. The Plan Administrator's statements are conclusory and amount to, at best, mere assertions. *See*, *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence).

18. The Agreement is clear that the Non-Defaulting Party is the party that is entitled to calculate the Early Termination Amount. LOTC as the Defaulting Party is not entitled pursuant to the Agreement to merely put forth its own determination of such amount. Pursuant to the Agreement, the Plan Administrator's determination with respect to value is irrelevant unless the Plan Administrator puts forth evidence and demonstrates that ING's calculations do not comply with the Agreement. The Plan Administrator has not put forth any such evidence.

19. Consequently, the Plan Administrator has not met its initial burden of refuting the amounts set forth in the Claims and, accordingly, has not shifted the burden of proving the Claims to ING. It remains the Plan Administrator's burden to produce "sufficient evidence" that the Claims should each be reduced.

C. **Reservation of Rights**

20. ING reserves the right to file a supplemental and/or amended response to the Objection, shall it deem it necessary to do so. To the extent that an evidentiary hearing is needed to adjudicate the merits of the Claims, ING reserves the right to request a full evidentiary hearing

---

[5] The Objection also describes the Plan Administrator's purported "thorough, multi-step process to review claims," which in general terms is set forth as follows: "collect and review documents . . . reconcile posted collateral . . .review valuation methodology . . . ." Objection at ¶ 15.

pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the basis for the calculation of and amount of the Claims.

## CONCLUSION

WHEREFORE, for the reasons set forth above, ING respectfully requests that the Bankruptcy Court (i) overrule the Objection as it pertains to the Claims, and (ii) grant such further relief as the Bankruptcy Court deems just.

Dated: New York, New York
February 18, 2014

Respectfully submitted,

CLIFFORD CHANCE US LLP

By: /s/ *Jennifer C. DeMarco*
Jennifer C. DeMarco
Sarah N. Campbell
Adam Lesman

31 West 52nd Street
New York, NY 10019
Tel: (212) 878-8000
Fax: (212) 878-8375

*Counsel to ING USA Annuity
and Life Insurance Company*