**Expedited Hearing Requested**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Alfredo R. Pérez

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

```
---------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.         :    08-13555 (SCC)
                                              :
              Debtors.                        :    (Jointly Administered)
                                              :
---------------------------------------------------------------------x
```

## MOTION OF LEHMAN BROTHERS HOLDINGS INC.
## PURSUANT TO BANKRUPTCY RULE 9019 FOR APPROVAL OF
## SETTLEMENT AGREEMENT RESOLVING CLAIM OF DR. H.C. TSCHIRA
## BETEILIGUNGS GMBH & CO. KG AND KLAUS TSCHIRA STIFTUNG GGMBH

## TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................................ 1

Background .................................................................................................................................. 2

Jurisdiction ................................................................................................................................. 3

Relief Requested ......................................................................................................................... 3

The Relevant Claims, Disputes, and Prior Proceedings ............................................................ 4

    A.  Settlement With LBF ...................................................................................................... 4

    B.  The Tschira Entities ....................................................................................................... 6

The Settlement Agreement .......................................................................................................... 9

Basis for the Relief Requested .................................................................................................. 13

Notice ........................................................................................................................................ 20

US_ACTIVE:\44432873\8\58399.0011

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*,
156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) .......................................14

*In re Best Products Co.*,
168 B.R. 35 (Bankr. S.D.N.Y. 1994) ..................................................................................14

*Case v. L.A. Lumber Prods. Co.*,
308 U.S. 106, 130 (1939) ...................................................................................................13

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
699 F.2d 599 (2d Cir. 1983) ........................................................................................ 13, 14

*In re Hibbard Brown & Co.*,
217 B.R. 41 (Bankr. S.D.N.Y. 1998) .................................................................................14

*Nellis v. Shugrue*,
165 B.R. 115 (S.D.N.Y. 1994).............................................................................................14

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) ..................................................................................................... 13, 14

*In re Spielfogel*,
211 B.R. 133 (Bankr. E.D.N.Y. 1997) ...............................................................................13

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
134 B.R. 499 (Bankr. S.D.N.Y. 1991) .......................................................................... 13, 14

### STATUTES & RULES

28 U.S.C. § 157..........................................................................................................................3

28 U.S.C. § 1334........................................................................................................................3

Fed. R. Bankr. P. 1015(b)..........................................................................................................2

Fed. R. Bankr. P. 9019 ........................................................................................... 2, 3, 5, 10, 13

US_ACTIVE:\44432873\8\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),[1] files this Motion and respectfully represents:

**Preliminary Statement**

1.     By this Motion, the Plan Administrator seeks approval of, and authority to enter into, a settlement agreement (the "Settlement Agreement") between the Plan Administrator, LBHI, the Debtors and Dr. H.C. Tschira Beteiligungs GmbH & Co. KG ("KG") and Klaus Tschira Stiftung gGmbH ("KTS" and together with KG, the "Tschira Entities") (each of the Plan Administrator, LBHI, the Debtors and the Tschira Entities, a "Party" and together, the "Parties").[2]  The Settlement Agreement will remove the last remaining impediment to the effectiveness of LBHI's settlement agreement with its Swiss affiliate, Lehman Brothers Finance AG (in Liquidation), also known as Lehman Brothers Finance SA (en liquidation) ("LBF"), and thus unlock the material benefits of that settlement to LBHI and its creditors.  These benefits include, among other things, more than one billion dollars in cash that will be transferred by LBF to LBHI within days of the effective date of the Settlement Agreement and the freeing-up of approximately $1.8 billion in cash that can be distributed to LBHI's creditors.  If this motion is granted by March 5, 2014, this $1.8 billion dollars in cash may be distributable to LBHI's creditors by as early as the next Distribution Date.  The Plan Administrator believes that the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan unless otherwise indicated.

[2] A copy of the Settlement Agreement is attached hereto as Annex A.

1

Settlement Agreement is fair and reasonable and in the best interests of LBHI and its creditors. Accordingly, the Plan Administrator requests authorization, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to enter into and perform the Settlement Agreement.

### Background

2.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries (collectively, the "Debtors") commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012. Pursuant to the Plan, the Plan Administrator is, among other things, authorized to implement the provisions of the Plan on behalf of LBHI and its controlled affiliates.

4.      On December 22, 2008, a bank/security dealer bankruptcy proceeding (the "Swiss Bankruptcy") was commenced for LBF pursuant to Swiss law and PricewaterhouseCoopers AG, Zurich ("PwC") was appointed as the bankruptcy liquidator of LBF by the Swiss Financial Market Supervisory Authority ("FINMA").

5.      On February 10, 2009, PwC commenced a case under chapter 15 of the Bankruptcy Code by filing a petition seeking recognition as the foreign representative of LBF, and of the Swiss Bankruptcy as a foreign main proceeding. *See In re Lehman Brothers Finance AG, in Liquidation*, Case No. 09-10583 (the "Chapter 15 Case").

6. On March 12, 2009, this Court entered an *Order Granting Recognition of Foreign Main Proceeding and Related Relief Under Chapter 15*, ECF No. 24 in the Chapter 15 Case.

7. On March 31, 2010, the Court entered an order establishing certain claims settlement procedures (the "First Settlement Procedures Order") (ECF No. 7936).  On July 18, 2012, the Court entered an order modifying the First Settlement Procedures Order and authorizing the Plan Administrator to, among other things, settle certain claims where the allowed amount of the settled claim is less than or equal to $200 million without further approval of the Court (the "Second Settlement Procedures Order") (ECF No. 29505).

## Jurisdiction

8. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

9. The Plan Administrator seeks authorization, pursuant to Bankruptcy Rule 9019, to enter into and perform the Settlement Agreement.  The Plan Administrator has determined, in the exercise of its sound business judgment, that the Settlement Agreement is fair and reasonable, in the best interests of LBHI and its creditors, and should be approved.

### The Relevant Claims, Disputes, and Prior Proceedings[3]

**A.    Settlement With LBF**

10.    Prior to the Commencement Date, LBF served as the global center for Lehman's equity derivatives business.  As one of the most significant holders of counterparty risk across the Lehman enterprise, LBF held open derivative positions with virtually every major Lehman affiliate that traded in derivatives or similar products, as well as with hundreds of third-party (*i.e.*, non-affiliate) counterparties.

11.    Because of its role as the hub of Lehman's global equity derivatives business, LBF's asset base is comprised primarily of receivables from "in the money" derivatives trades.  A substantial portion of these in the money trades are with Lehman affiliates that are now subject to a variety of insolvency proceedings in several foreign jurisdictions.  In some cases, LBF is the largest creditor in these affiliates' insolvency proceedings.  LBF currently has an aggregate of approximately $9.2 billion in claims against other Lehman affiliates.  To date, LBF has collected approximately $1.3 billion in cash on account of these affiliate claims.

12.    LBF's claims against LBHI are also among the largest Disputed Claims (as defined in the Plan) that remain unresolved against LBHI.  As amended on December 13, 2011, LBF's aggregate claims against LBHI aggregate to approximately $15.4 billion.  At the same time, LBHI has filed a substantial claim in the amount of approximately $14.2 billion against LBF in LBF's Swiss Bankruptcy, based primarily on intercompany loan transactions.  For years, both LBHI and LBF disputed the validity of their respective claims against each other.

---

[3] The description and characterization in this Motion of the events, facts, and circumstances giving rise to the claims and disputes (and the settlement of certain of those claims and disputes) referenced herein are made by LBHI are not binding in any way on the Tschira Entities and are without prejudice to any claims, defenses, and rights of the Parties thereto.

LBF, in particular, argued that LBHI's claim should be treated as equity, being paid after creditors but before holders of common stock.

13.    On March 27, 2013, after more than four years of highly contentious negotiations, LBHI and LBF reached an economic resolution of these disputes and signed a settlement agreement (the "LBF Settlement").  On April 25, 2013, this Court entered an order approving the LBF Settlement [ECF No. 36866] and recognized the significance of the LBF Settlement to LBHI and its creditors:

> I'm pleased to approve this transaction, which is mutually beneficial to the LBHI estate and also to the estate of Lehman Brothers Finance AG [in] Liquidation in Switzerland. . . . [N]egotiations leading up to this resolution have been going on for approximately four years. That's an extraordinarily long time to be negotiating anything. It is at least one indication of how remarkably complicated these interrelationships are, particularly when dealing with law that is not clearly erroneous. I think it is a significant achievement in the annals of cross-border insolvency and a testament to the capacity of well-informed professionals and others involved in the process to reconcile their differences. And to that extent, is important precedent, particularly in cases such as this that involve enterprises that operate across borders.

Tr. of Hr'g 24:8-25:1, Apr. 24, 2013.

14.    When it becomes effective, the LBF Settlement will provide value to LBHI.  Among other things, pursuant to the LBF Settlement, LBHI will receive (i) an allowed claim against LBF in an amount equal to CHF 9.5 billion (corresponding to $8.75 billion converted to Swiss Francs at the rate of USD/CHF 1.0913) (the "LBHI Claim")[4] and (ii) assignment from LBF of LBF's claims against certain Lehman affiliates (including all cash collected to date).  Furthermore (and as explained more fully below), because of LBF's centrality to Lehman's global pre-petition equity derivatives business, the effectiveness of the LBF

---

[4] To resolve the legal dispute concerning treatment of LBHI's claim as equity, LBHI has agreed partially to subordinate the LBHI Claim to the claims of LBF's third-party creditors, as more fully described in the *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of Settlement Agreement with Lehman Brothers Finance AG (In Liquidation)* [ECF No. 36300].

Settlement is a *sine qua non* for the resolution of several other key Lehman insolvency proceedings around the world whose estates are deeply intertwined with LBF's estate and whose distributions to creditors ultimately inure to the benefit of LBHI. [5]

15.     The effectiveness of the LBF Settlement is subject to a number of conditions precedent.  To date, all of these conditions have been fulfilled except one.  Section 5.2(d) of the LBF Settlement provides for following condition precedent:

> Upon publication of the realization plan with regard to this Agreement, either no creditor of LBF shall, in due time (i.e. the time period specified by the LBF Liquidator upon publication of the realization plan) and form, have requested an order from FINMA, or if such an order is requested in due time and form, (1) FINMA issues a final and enforceable order that does not disapprove in substance the Agreement, or its execution by the LBF Liquidator (the "FINMA Settlement Order") and the FINMA Settlement Order is not substantially altered, or modified by FINMA itself (*Wiedererwägung*) prior to the Effective Date, or (2) a competent Swiss court issues a Swiss Court Order that does not declare invalid, or set aside in total or in part the FINMA Settlement Order and that thereby does not disapprove in substance the Agreement, or its execution by the LBF Liquidator.

A "Swiss Court Order" is defined as a final, nonappealable order of a Swiss court.

16.     On May 21, 2013, the Tschira Entities requested an appealable order from FINMA relating to the LBF Settlement.  On November 11, 2013, FIMNA issued such an order, holding that the settlement constituted a lawful act of realization (the "FINMA Order").  The Tschira Entities have filed an appeal of the FINMA Order with the Swiss Bundesverwaltungsgericht (the "Tschira Appeal").

**B.     The Tschira Entities**

17.     The Tschira Appeal is only one of multiple fronts in a dispute that has existed for years between the Tschira Entities and LBF.  The dispute centers upon the proper

---

[5] In addition, under the Settlement Agreement, LBF will have an allowed claim against LBHI in the amount of approximately $942 million on account of LBHI's guarantee of certain securities owned by LBF that will receive a distribution on the Distribution Date.

US_ACTIVE:\44432873\8\58399.0011

calculation of damages arising from the termination of certain variable forward transactions (the "Transactions") between LBF's Netherlands Antilles branch and the Tschira Entities. The Transactions were governed by (i) ISDA Master Agreements dated May 16, 2007, (ii) Schedules thereto dated May 16, 2007, (iii) Credit Support Annexes to the Schedules dated July 14, 2008, and (iv) the Confirmations of the Transactions thereunder (collectively, and as amended from time to time prior to the events described herein, the "Master Agreements"). LBHI was LBF's Credit Support Provider under the Master Agreements and issued a Restated Guarantee in respect thereof dated May 15, 2008 to each Tschira Entity (the "Guaranties").

18.     The Tschira Entities deposited approximately 59 million SAP Shares with Lehman Brothers International (Europe) (Lehman's primary broker/dealer in Europe prior to the Commencement Date) to hold in custody and granted LBF a collateral interest. On September 12, 2008, LBF and the Tschira Entities agreed to amend certain of the transaction documents to require LBF to post an independent amount of €100 million with the Tschira Entities for the period of September 12, 2008 until September 18, 2008. On that same date, LBHI transferred €100 million to the Tschira Entities (the "Transferred Funds").

19.     All transactions under the Master Agreements terminated automatically on September 15, 2008 as a result of the commencement of the Chapter 11 Cases. A dispute subsequently arose between the Tschira Entities and LBF concerning the correct calculation of damages under the Master Agreements. LBF has argued that the plain language of the ISDA Agreements requires the Tschira Entities to value their claims against LBHI as of September 15, 2008, *i.e.*, the termination date. The Tschira Entities, on the other hand, have calculated their damages as of October 16, 2008. The difference in calculation attendant to these two dates is

7

material.  LBF believes that it is owed in excess of €186 million plus interest by the Tschira

Entities.  The Tschira Entities, however, allege that LBF owes them in excess of €511 million.

20.  As illustrated in the timeline below, this dispute has been waged on

multiple fronts by both LBF and LBHI, giving rise to multiple legal proceedings:

| | |
|---|---|
| December 19, 2008 and February 27, 2009 | Tschira Entities file claims against LBF in the amount of (i) CHF 278,097,592 based on the Master Agreements, (ii) CHF 6110,037.72 for interest of 4.5% on CHF 278,097,592 up to December 22, 2008, (iii) CHF 284,421 for legal expenses up to December 22, 2008, (iv) CHF 364,663,050 based on the Master Agreements, (v) CHF 14,731,312.93 for EONIA interest +11% on CHF 364,663,050 up to December 22, 2008, and (vi) CHF 304,781.41 for legal expenses up to December 22, 2008 (the "Tschira-LBF Claims"). |
| September 21, 2009 | KTS files proof of claim against LBHI (Claim No. 22671) based on the Guaranties, asserting unsecured claim in the amount of $259,126,673.93 (the "KTS Claim"). |
| September 22, 2009 | KG files proof of claim against LBHI (Claim No. 32395) based on the Guaranties, asserting an unsecured claim in the amount of $345,842,978.50 (the "KG Claim" and together with the KTS Claim, the "Guarantee Claims"). |
| March 21, 2013 | Tschira Entities requested an appealable order from FINMA relating to the LBF Settlement. |
| March 25, 2013 | Tschira Entities file a claim with the Peace Judge in Zurich, requesting a judgment holding that they owe nothing to LBF (the "Negatory Swiss Proceeding"). |
| April 2, 2013 | LBF Liquidator files action in the High Court of Justice (UK) seeking damages arising from the Master Agreements from the Tschira Entities (the "UK Proceeding"). |
| April 3, 2013 | LBF Liquidator publishes its schedule of admitted claims against LBF (the "Kollokationsplan"), pursuant to which the Tschira-LBF Claims are disallowed by the LBF Liquidator. |
| April 15, 2013 | Plan Administrator files the Supplemental Four Hundred Second Omnibus Objection to Claims 32395 and 22671 (No Liability Derivatives Claims) [ECF No. 36569] (the "Claim Objection"), requesting that the Court disallow and expunge the Guarantee Claims. |

8

| April 22, 2013 | The Tschira Entities commence an action against LBF in the Zurich District Court challenging the determination of the LBF Liquidator that the Tschira-LBF Claims not be admitted to the Kollokationsplan (the "Swiss Proceeding"). |
| November 11, 2013 | FINMA issues the FINMA Order. |

21.     On July 18, 2013, the Tschira Entities filed a motion pursuant to Bankruptcy Rule 3006 seeking authority to withdraw the Guarantee Claims (the "Withdrawal Motion"). [ECF No. 38809]. LBHI opposed the Withdrawal Motion. [ECF No. 38975]. On August 2, 2013, this Court entered an order [ECF No. 39128] granting the Withdrawal Motion in part and authorizing the Tschira Entities to withdraw the Guarantee Claims, subject to the terms and conditions contained in the order.

22.     In addition to above disputes concerning the calculation of damages arising from the terminated Master Agreements, on August 23, 2013 LBHI commenced an adversary proceeding against the Tschira Entities in this Court, Adv. Case No. 13-01431 (the "Adversary Proceeding"), seeking the return of the Transferred Funds.

**The Settlement Agreement**

23.     Pursuant to the Settlement Agreement, the Tschira Entities have agreed, on terms and conditions contained therein, to withdraw the Tschira Appeal, thus removing the last remaining obstacle to the effectiveness of the LBF Settlement, in exchange for a reinstatement of the Guarantee Claims, a portion of which will be classified as an Administrative Expense Claim, automatically and without further Court order, as a single, allowed claim in an amount greater than $0.00 if, and to the extent that, the Tschira Entities ultimately prevail against LBF. The Settlement Agreement does not resolve the dispute that lies at the core of the proceedings listed above, *i.e.*, the fundamental question of whether the Tschira Entities owe

9

damages to LBF, or *vice versa*, and the correct calculation of such damages.  However, the

Settlement Agreement effectively serves to decouple this dispute from the LBF Settlement and

allows the LBF Settlement to become effective, with the result that pursuant to sections 3.2(g)

and 3.2(h) of the LBF Settlement, LBHI will immediately receive more than $1.1 billion in cash

from LBF (*i.e.*, a more than 12% recovery on its approximately $8.75 billion claim against LBF),

and billions of dollars more in the future both from LBF and the assigned intercompany claims.

      24.    A summary of the salient terms of the Settlement Agreement is set forth

below:[6]

| | |
|---|---|
| **Effectiveness** | The Settlement Agreement shall become effective upon entry of a final order by this Court approving the Settlement Agreement pursuant to Bankruptcy Rule 9019 (the "Effective Date"). |
| **Withdrawal of Tschira Appeal** | On the Effective Date, the Tschira Entities shall withdraw the Tschira Appeal with prejudice by sending a letter to the Swiss Bundesverwaltungsgericht with a copy to FINMA. |
| **Withdrawal of the Adversary Proceeding** | Within 5 days of the Effective Date, LBHI shall withdraw the Adversary Proceeding with prejudice. |
| **Reinstatement and Allowance of Guarantee Claim** | Upon the effective date of the LBF Settlement, the Guarantee Claims shall be reinstated and Allowed as a single Allowed Guarantee Claim in LBHI Class 9A (the "Tschira-LBHI Claims") in an amount equal to (and converted to USD at the exchange rate applicable on September 15, 2008) the aggregate allowed amount of the Tschira-LBF Claims (which may be $0.00, if such claims are ultimately disallowed) reflected on a revised Kollokationsplan as determined either by (i) the Final Order of a court of competent jurisdiction, (ii) a settlement agreement between LBF and the Tschira Entities (a "Tschira-LBF Settlement"), or (iii) if any party, including LBHI, objects to a Tschira-LBF Settlement or the revised Kollokationsplan in |

---

[6] This summary, as well as the other descriptions of the Settlement Agreement contained in the Motion (the "Summary") are qualified in their entirety by the provisions of the Settlement Agreement.  This Summary is intended to be used for information purposes only and shall not, in any way, affect the meaning or interpretation of the Settlement Agreement.  Capitalized terms used in this summary, but not otherwise defined, have the meanings ascribed to such terms in the Settlement Agreement.

US_ACTIVE:\44432873\8\58399.0011

Switzerland, the final, unappealable order of a court of competent jurisdiction in Switzerland in respect of such objection, or a settlement agreement resolving such objection.

No Distributions shall be made in respect of the Tschira-LBHI Claim unless and until the Tschira-LBHI Claim is determined as set forth above to be an amount greater than $0.00.

**Tschira-LBHI Claim Caps**   If determined by a Final Order or Tschira-LBF Settlement, the amount of the Tschira-LBHI Claim may not exceed (a) CHF 150,000,000, if determined within six (6) months of the Effective Date, (b) CHF 210,000,000, if determined between six (6) and twelve (12) months after the Effective Date, and (c) CHF 300,000,000, if determined later than twelve (12) months after the Effective Date.

If LBHI objects to a Tschira-LBF Settlement and wins, the amount of the Tschira-LBHI Claim shall be the lower of the amount provided in the Tschira-LBF Settlement and (a) CHF 150,000,000, if the objection was filed within six (6) months of the Effective Date, (b) CHF 210,000,000, if the objection was filed between six (6) and twelve (12) months after the Effective Date, and (c) CHF 300,000,000, if the objection was filed later than twelve (12) months after the Effective Date.

If LBHI objects to the Tschira-LBF Settlement and loses, the amount of the Tschira-LBHI shall be  the lower of the amount in the Tschira-LBF Settlement and (a) CHF 150,000,000, if the objection is decided by a final order within six (6) months of the Effective Date, (b) CHF 210,000,000, if the objection is decided by a final order between six (6) and twelve (12) months after the Effective Date, and (c) CHF 300,000,000, if the objection is decided by a final order later than twelve (12) months after the Effective Date.

If any other party objects, but LBHI does not object, irrespective of whether the objecting party wins or loses, the amount of the Tschira-LBHI Claim shall be the lower of the amount provided in the Tschira-LBF Settlement and (a) CHF 150,000,000, if the objection was filed within six (6) months of the Effective Date, (b) CHF 210,000,000, if the objection was filed between six (6) and twelve (12) months after the Effective Date, and (c) CHF 300,000,000, if the objection

11

was filed later than twelve (12) months after the Effective Date.

| | |
|---|---|
| **LBHI Objection Right and Tschira-LBF Claim Caps** | LBHI may object to any Tschira-LBF Settlement if such settlement results in a Tschira-LBF Claim that exceeds (a) CHF 150,000,000, if determined within six (6) months of the Effective Date, (b) CHF 210,000,000, if determined between six (6) and twelve (12) months after the Effective Date, and (c) CHF 300,000,000, if determined later than twelve (12) months after the Effective Date (in each case, a "Tschira-LBF Claim Cap") (but only seek to reduce such claims to the applicable Tschira-LBF Claim Cap). |
| **Waiver of Third Party Rights** | The Tschira Entities waive their third party beneficiary rights pursuant to section 4.1 of the LBF Settlement (wherein LBHI waived its right to object to LBF's settlements with third parties) and consent to LBHI interposing an Authorized Objection. |
| **Settlement Payment** | If the Allowed amount of the Tschira-LBHI Claim is determined to be an amount greater than $0.00, LBHI shall pay the Tschira Entities a settlement payment of CHF 12,500,000 to the Tschira Entities in full satisfaction of all expenses incurred by the Tschira Entities in defending the Adversary Proceeding and prosecuting the Tschira Appeal, which payment will be credited to any future Distributions in respect of the Tschira-LBHI Claim; and |
| **Administrative Expense Claim** | If the Allowed amount of the Tschira-LBHI Claim is determined to be an amount greater than $0.00, Tschira Entities shall have an Allowed Administrative Expense Claim in an amount (which may be $0.00) equal to the Allowed amount of the Tschira-LBHI Claim converted to CHF at the exchange rate applicable on September 15, 2008 times (a) 1 less the percentage recovery of the Tschira-LBF Claims, less (b) all Distributions received in respect of the Tschira-LBHI Claim converted to CHF at the exchange rate applicable on each Distribution Date.  The Administrative Expense Claim shall be converted to USD at the exchange rate applicable on the date that the claim is finally determined and fixed. |
| **Termination** | The parties shall have the right to terminate the Settlement Agreement prior to the Effective Date by written notice if (a) there is a breach, in any material respect, of the representations, warranties, and/or covenants of the Plan Administrator under this Settlement Agreement that has not |

US_ACTIVE:\44432873\8\58399.0011

been cured within three (3) business days after notice thereof is given to Plan Administrator, or (b) the LBF Settlement has been terminated by LBF.

## **Basis for the Relief Requested**

25.     Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts "to approve settlements if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Id.*; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

26.     "Compromises are a normal part of the process of reorganization." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson* ("*TMT Trailer Ferry*"), 390 U.S. 414, 424 (1968) (*quoting Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The court's discretion must be exercised "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.,* 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and … in the best interest of the [debtor's] estate." *In re Best Products Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted). The court must apprise itself "of all [relevant] facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *TMT Trailer Ferry,* 390 U.S. at 424.

13

27.     While a court must evaluate "all … factors relevant to a full and fair assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry,* 390 U.S. at 424, there is no requirement for the conduct of a "mini-trial" of the claims being settled or a full independent investigation. *See W.T. Grant*, 699 F.2d at 608; *Drexel Burnham*, 134 B.R. at 505. "The bankruptcy judge does not have to decide the numerous questions of law and fact. . . . The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).  Lastly, in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993) (emphasis added), *aff'd,* 17 F.3d 600 (2d Cir. 1994).

28.     The Settlement Agreement is manifestly in the best interests of LBHI and its creditors because it removes the last remaining impediment to the effectiveness of the LBF Settlement while still preserving the ability of LBHI to ensure that the Tschira Entity's claims against LBF are either mitigated or expunged.  Any cost to LBHI of reinstating the Guarantee Claims or withdrawing the Adversary Proceeding is negligible when compared with the real economic benefits of the LBF Settlement and the time-value of money that is recouped by its immediate effectiveness.  Moreover, because the all parties' rights in the Swiss Proceeding, the Negatory Swiss Proceeding, and the UK Proceeding remain intact, the possibility remains of expunging the Tschira-LBF Claims and converting the Tschira-LBF relationship into a receivable for LBF, thus making the reinstatement of the Guarantee Claims and the withdrawal of the Adversary Proceeding immaterial.

14

29.    Because withdrawal of the Tschira Appeal will result in the effectiveness of the LBF Settlement, the immediate, tangible economic benefit of the Settlement Agreement cannot be overstated.  As a result of the LBF Settlement, LBF will assign to LBHI all of its right, title and interest in approximately $9.2 billion in claims that LBF has asserted against certain other Lehman affiliates.  The assigned claims include LBF's claims against (i) Lehman Brothers Securities N.V. ("LBS"), which LBS has allowed in the amount of approximately $4.4 billion, and (i) Lehman Brothers Treasury Co. B.V. ("LBT"), which LBT has allowed in the amount of approximately $3.3 billion.  LBF will also assign to LBHI approximately $1.1 billion of the net proceeds that LBF has collected to date in respect of the assigned affiliate claims.  Thus, if the Motion is approved and the Settlement Agreement becomes effective, LBHI will, within a matter of days, obtain approximately $1.1 billion in cash that will be immediately available for distribution to LBHI's creditors, and the potential of receiving multiple billions of dollars more in the future.

30.    Furthermore, pursuant to the LBF Settlement, LBF's $15.4 billion in asserted claims against the Chapter 11 Estates will be replaced by an allowed claim against LBHI in the amount of approximately $942 million based on certain securities guaranteed by LBHI, thus freeing approximately $3.6 billion in reserves, close to $700 million of which is in cash that will also become available for distribution to creditors.  Thus, if the Settlement Agreement is approved and the LBF Settlement becomes effective, a total of approximately $1.8 billion in cash will become immediately available for distribution to creditors.  Finally, LBHI will have an allowed claim against LBF in the amount of CHF 9.548875 billion (corresponding to approximately $8.75 billion converted to Swiss Francs at the rate of USD/CHF 1.0913).[7]

---

[7] LBHI has agreed partially to subordinate its claim against LBF to the claims of LBF's third-party creditors. Specifically, LBF will implement a waterfall in its liquidation that provides an initial priority recovery to general

31.    Effectiveness of the LBF Settlement will benefit LBF and its creditors immensely as well.  To date, LBF's creditors have only received approximately 9.4% in respect of their claims because LBF has needed to maintain considerable reserves on account of LBHI's approximately $14.1 billion disputed claim.  Even if LBF could make further distributions to its creditors, until the settlement with LBHI becomes effective, these distributions would be *de minimis* given the large reserves that LBF still needs to maintain.  If the LBF Settlement becomes effective, however, LBF no longer be required to reserve for the LBHI claim because LBHI has agreed to partially subordinate its claim against LBF to the claims of LBF's third-party creditors (see n.7 above).  Given the $2.2 billion in cash that LBF has on hand, LBF should be able to fully satisfy its creditors' 50% priority payment.  As a result, effectiveness of the LBF Settlement should allow LBF creditors recoveries to exceed 50% of their allowed claims (including the 9.4% that they have received to date) shortly after the effective date of the LBF Settlement.  LBF's approximately $942 million claim against LBHI will also become an Allowed Claim and entitled to Distributions (including a significant catch-up distribution) at the next Distribution Date.

32.    The effectiveness of the LBF Settlement has more global implications as well for Lehman's creditors.  Just as it will free-up reserves and enable LBF to progress its estate towards a final resolution, it is also critical to the resolution of other material Lehman proceedings around the world.  LBF's pre-bankruptcy trading activity, which resulted in LBF having significant claims against Lehman entities such as LBT and LBS, also resulted in material claims by other Lehman affiliates against LBF.  Indeed, LBF is at the center of, and the lynchpin

---

unsecured third-party creditors of $1.275 billion (provided that no such creditor shall receive more than 50% of its allowed claim).  LBF's affiliate creditors shall receive a priority distribution equal, on a percentage basis, to the priority recovery, on a percentage basis, of LBF's third party creditors.  Following this initial priority distribution, LBHI will participate pro rata with all creditors in LBF's distributions.

16

to a world-wide set of relationships that must be resolved in order for other Lehman affiliates and their third-party creditors to receive distributions.  The chart below shows the interdependence of the key Lehman estates and the importance of the resolution of the LBF proceedings to the other Lehman estates.



8

As illustrated above, LBF is a creditor of the following Lehman affiliates: LBS, LBT, Lehman Brothers International (Europe) ("LBIE"), Lehman Brothers Asia Holdings Ltd. and certain of its affiliates  ("LB Hong Kong"), Lehman Brothers Inc. ("LBI"), and Lehman Brothers Bankhaus AG ("LBB").  At the same time, LBF is a debtor to LBHI and Lehman Brothers Japan Inc. ("LBJ").  LBHI, in turn, is also the single largest creditor of both LBI and LB Hong Kong.  Until

---

[8] The diagram above illustrates the most significant intercompany claims among the Lehman entities.  It is *not* meant to be a comprehensive view of all intercompany claims among Lehman affiliates.  With the exception of the $14.2B owed from LBF to LBHI (which pursuant to the LBF Settlement would be reduced to approximately $8.74 billion), all other amounts represent settled intercompany balances.

17

the LBF Settlement is effective, distributions that must ultimately flow among these affiliates will remain "trapped" at LBF, stalling LBF's ability to execute a viable "exit plan" for its proceeding, frustrating LBF's affiliate counterparties' ability to expedite their proceedings, and withholding recoveries to thousands of Lehman creditors worldwide (including LBF's largest creditor, LBHI).[9]

33.    Another significant benefit of the LBF Settlement is that it will facilitate the elimination of much of the wasteful circularity that currently exists among LBHI and its foreign affiliates, particularly LBHI, LBT, and LBS, as demonstrated in the diagram above.  The assignment by LBF to LBHI of its claims against LBT and LBS will eliminate one extra entity from this intercompany relationship and make it more possible for LBHI to collapse the LBT and LBS claims to the extent of the assigned LBF claims, thus making it possible to accelerate the resolution of these estates and distributions to creditors.  Until LBHI's settlement with LBF becomes effective, this work that could lead to the crucial "collapsing" of intercompany balances cannot occur.

34.    While LBHI cannot predict how long it will take for the Tschira Appeal to be resolved absent the Settlement Agreement, even a short delay has a serious and harmful effect on the time-value of money, and it is LBHI's understanding that if the Tschira Entities pursue their appeal to the highest instance, the delay could extend to as long as three years.  When the costs of the Settlement Agreement are compared to the potential loss in value that would result from such a delay, there is no question that the Settlement Agreement is manifestly in the best interests of LBHI and its creditors.

---

[9] Because LBHI is also the single largest creditor of LBI and of LB Hong Kong, any further delay in the effectiveness of the LBF Settlement not only delays direct distributions to LBHI, but also indirect distributions through the assignment of the LBI and LB Hong Kong receivables to LBHI.

18

35.     Moreover, the "cost" of the Settlement Agreement to LBHI is in some respects nothing more than returning LBHI and the Tschira Entities to the *status quo* before the Tschira Entities initiated the Tschira Appeal.  Although the Guarantee Claims (and a related Administrative Expense Claim) will be reinstated and allowed in a contingent amount, this amount could still be $0.00 if the Tschira-LBF Claims are ultimately expunged.

36.     On the other hand, as noted above, pursuant to the Settlement Agreement the Tschira Entities will waive a right that they would otherwise have as third-party beneficiaries of section 4.1 of the LBF Settlement, pursuant to which LBHI waived its right to object to the Kollokationsplan established by the LBF Liquidators.  Absent this waiver from the Tschira Entities, LBHI would not be able to object to a settlement between the Tschira Entities and LBF that resulted in the Tschira Entities obtaining a claim against LBF that appears on a revised Kollokationsplan.  The only limitation on this right is that LBHI may only object to the extent that a Tschira-LBF Settlement results in a Tschira-LBF Claim that exceeds the applicable Tschira-LBF Claim Cap, and to reduce such claims to the applicable cap.

37.     Moreover, all of LBF's rights are preserved with respect to the key dispute that lies at the heart of all of the legal proceedings between the Tschira Entities and Lehman, *i.e.*, the question of whether the Tschira-LBF relationship gives rise to a claim by the Tschira Entities against LBF, or *vice versa*.  Thus, while LBHI will withdraw the Adversary Proceeding with prejudice as part of the Settlement Agreement, the possibility remains that LBHI through its participation in the LBF distributions will ultimately obtain a recovery from the Tschira Entities, if LBF prevails in the UK Proceeding.

38.     Finally, to induce the Tschira Entities to abandon the Tschira Appeal, LBHI has provided them with the potential right to a Settlement Payment and Administrative

Expense Claim.  However, even if these liabilities do ultimately arise, their cost, even in the worst case, will be only a small fraction of the immediate and long term economic benefit that LBHI's creditors will realize as a result of the withdrawal of the Tschira Appeal and the effectiveness of the LBF Settlement.  And as with the Tschira-LBHI Claim, it is possible that LBHI will owe *no* Settlement Payment or Administrative Expanse Claim to the Tschira Entities if, as LBHI expects, LBF ultimately prevails in the UK Proceeding or is ultimately successful in expunging the Tschira-LBF Claims through the Swiss Proceeding and Swiss Negatory Proceeding.

39.     For all the foregoing reasons, it is beyond peradventure that the Settlement Agreement is in the best interests of LBHI and its creditors and should be approved.

## Notice

40.     No trustee has been appointed in the Chapter 11 Cases.  The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635), has served notice of this Motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the Tschira Entities; (vi) the LBF Liquidator; and (vii) all parties who have requested notice in these chapter 11 cases.  The Plan Administrator submits that no other or further notice need be provided.

41.     No previous request for the relief sought herein has been made by LBHI or the Plan Administrator to this or any other court.

US_ACTIVE:\44432873\8\58399.0011

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated: February 26, 2014
New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

21

**<u>Annex A</u>**
**(Settlement Agreement)**

US_ACTIVE:\44432873\8\58399.0011

## SETTLEMENT AGREEMENT RESOLVING CLAIM OF DR. H.C. TSCHIRA BETEILIGUNGS GMBH & CO. KG AND KLAUS TSCHIRA STIFTUNG GGMBH

       This settlement agreement (the "Settlement Agreement") is entered into as of February 26, 2014 (the "Execution Date") by and between Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan")[1], for and on behalf of itself and the jointly-administered debtors in the chapter 11 cases described in the recitals below (the "Debtors"), on the one hand, and Dr. H.C. Tschira Beteiligungs GmbH & Co. KG ("KG") and Klaus Tschira Stiftung gGmbH ("KTS" and together with KG, the "Tschira Entities"), on the other hand (each of the Plan Administrator and the Tschira Entities, a "Party" and together, the "Parties").

### RECITALS:

       A.     Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "Court"), Case No. 08-13555 (JMP). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

       B.     On December 19, 2008 (with effect as of December 22, 2008), the Swiss Federal Banking Commission (now the Swiss Financial Markets Supervisory Authority ("FINMA") entered an order opening bankruptcy proceedings over Lehman Brothers Finance AG (in Liquidation), also known as Lehman Brothers Finance SA (en liquidation) ("LBF") and appointing PricewaterhouseCoopers AG, Zurich as bankruptcy liquidator of LBF with sole authority to act on LBF's behalf (the "LBF Liquidator").

       C.     LBF acting through its Netherlands Antilles branch was party to certain variable forward transactions (the "Transactions") with the Tschira Entities which were governed by (i) ISDA Master Agreements dated May 16, 2007, (ii) Schedules thereto dated May 16, 2007, (iii) Credit Support Annexes to the Schedules dated July 14, 2008, and (iv) the Confirmations of the Transactions thereunder (collectively, and as amended from time to time prior to the events described herein, the "Master Agreements").

       D.     LBHI was LBF's Credit Support Provider under the Master Agreements and issued Restated Guaranties in respect thereof dated May 15, 2008 to each Tschira Entity (the "Guaranties").

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Plan.

19023204.7



E.     All transactions under the Master Agreements terminated automatically on September 15, 2008 as a result of the commencement of the Chapter 11 Cases.

F.     A dispute subsequently arose between the Tschira Entities and LBF concerning the correct calculation of damages under the Master Agreements.

G.     On December 19, 2008, the Tschira Entities filed claims against LBF, which were supplemented on February 27, 2009, in the amount of (i) CHF 278,097,592 based on the Master Agreements, (ii) CHF 6,110,037.72 for interest of 4.5% on CHF 278,097,592 up to December 22, 2008, (iii) CHF 284,421 for legal expenses up to December 22, 2008, (iv) CHF 364,663,050 based on the Master Agreements, (v) CHF 14,731,312.93 for EONIA interest +11% on CHF 364,663,050 up to December 22, 2008, and (vi) CHF 304,781.41 for legal expenses up to December 22, 2008 (the "Tschira-LBF Claims").

H.     By order, dated July 2, 2009 [ECF No. 4271], the Court established September 22, 2009 as the deadline to file proofs of claim against the Chapter 11 Estates.

I.     On September 21, 2009, KTS filed a proof of claim against LBHI based on the Guaranties, which was assigned claim number 22671 by the Court-approved claims and noticing agent (the "Claims Agent"), asserting an unsecured claim in the amount of $259,126,673.93 (the "KTS Claim"). On September 22, 2009, KG filed proof of claim against LBHI based on the Guaranties, which was assigned claim number 32395 by the Claims Agent, asserting an unsecured claim in the amount of $345,842,978.50 (the "KG Claim" and together with the KTS Claim, the "Guarantee Claims").

J.     On December 6, 2011, the Court entered an order confirming the Plan [ECF No. 23023] (the "Confirmation Order"). On March 6, 2012, the Plan became effective.

K.     On March 25, 2013 the Tschira Entities filed a request with the Zurich Conciliatory Authority, requesting a judgment holding that they owe nothing to LBF and on September 20, 2013, filed a statement of claim with the Zurich District Court requesting a judgment that they owe nothing to LBF (the "Negatory Swiss Proceeding")

L.     On March 27, 2013, LBF entered into a settlement agreement with the LBHI Parties (as defined therein), including LBHI, to resolve outstanding disputes and other issues among the parties thereto (as amended on October 1, 2013, the "LBF Settlement Agreement"). On April 25, 2013, the Court entered an order approving the LBF Settlement Agreement [ECF No. 36866].

M.     On April 2, 2013, the LBF Liquidator filed in the High Court of Justice (UK) an action seeking damages from the Tschira Entities arising from the Master Agreements.

2



N.    On April 3, 2013, the LBF Liquidator published the schedule established by the LBF Liquidator listing the admitted claims against LBF (the "Kollokationsplan"). Pursuant to the Kollokationsplan, the Tschira-LBF Claims were disallowed by the LBF Liquidator.

O.    On May 21, 2013, the Tschira Entities requested an appealable order from FINMA relating to the LBF Settlement Agreement. On November 11, 2013, FINMA issued such an order, holding that the settlement constituted a lawful act of realization (the "FINMA Order"). The Tschira Entities have filed an appeal of the FINMA Order with the Swiss Bundesverwaltungsgericht (the "Tschira Appeal").

P.    On April 15, 2013, the Plan Administrator filed the Supplemental Four Hundred Second Omnibus Objection to Claims 32395 and 22671 (No Liability Derivatives Claims) [ECF No. 36569], requesting that the Court disallow and expunge the Guarantee Claims.

Q.    On April 22, 2013, the Tschira Entities commenced an action against LBF in the Zurich District Court challenging the determination that the Tschira-LBF Claims had not been admitted to the Kollokationsplan (the "Swiss Proceedings").

R.    On July 18, 2013, the Tschira Entities filed a motion pursuant to Bankruptcy Rule 3006 seeking authority to withdraw the Guarantee Claims (the "Withdrawal Motion"). On August 2, 2013, the Court entered an order [ECF No. 39128] granting the Withdrawal Motion on terms and conditions contained in that order.

S.    On August 23, 2013, LBHI filed an adversary proceeding against the Tschira Entities, Adv. Case No. 13-01431 (the "Adversary Proceeding") on account of certain transfers related to the Transactions.

T.    After good-faith, arms'-length negotiations, the Parties have agreed to conclude a settlement pursuant to the terms and conditions set forth in this Settlement Agreement.

## AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    The Recitals set forth above form an integral part of this Settlement Agreement and are incorporated fully herein.



2.    This Settlement Agreement shall become effective upon an order of the Court, in form and substance reasonably acceptable to the Plan Administrator and the Tschira Entities, approving the Settlement Agreement pursuant to Bankruptcy Rule 9019 (the "Approval Order") becoming a Final Order, as hereinafter defined (the "Effective Date").  On the Effective Date, LBHI shall provide the Tschira Entities with a written certification certifying that the Approval Order has become a Final Order and the LBF Settlement Agreement has not been terminated by LBF (the "Certificate").  The Certificate shall be sent to Daniel Hayek via fax at +41 44 254 55 99 and via email (Daniel.Hayek@prager-dreifuss.com), with copies to Allan Brilliant via fax at 212.698.0612 and via email (allan.brilliant@dechert.com) and Shmuel Vasser via fax at 212.698.0418 and via email (svasser@dechert.com).  As soon as practicable after the Execution Date, the Plan Administrator shall file a motion, in form and substance reasonably acceptable to the Tschira Entities, seeking the Approval Order (the "Approval Motion") and request a hearing on the Approval Motion on shortened notice by Order to Show Cause.

Final Order means:  "An order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing sought shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order."

3.    On and after the Execution Date:

(i)    the Tschira Entities shall not, and shall procure that their Affiliates;[2] successors and assigns; and past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys neither oppose nor object to (nor support any objection to) this Settlement Agreement, nor take any action to alter, delay or impede the effectiveness and consummation of this Settlement Agreement, other than pursuant to rights contained herein.

(ii)    the Debtors shall not, and shall procure that their Affiliates; successors and assigns; and past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives,

---

[2]    As used herein, the term "Affiliate" shall have the meaning ascribed to it in Rule 405 of the Securities Act of 1933, provided however that as of the date of execution of this Settlement Agreement, either Party has the power to control the business and/or operations of these entities, which, for removal of doubt, as to LBHI shall not include LBF, LBIE and their direct and indirect subsidiaries.

4



administrators, executors, trustees and attorneys neither oppose nor object to (nor support any objection to) this Settlement Agreement, nor take any action to alter, delay or impede the effectiveness and consummation of this Settlement Agreement, other than pursuant to rights contained herein .

4.      In the period after the issuance of the Approval Order of the Court, but prior to the Effective Date, the Tschira Entities shall orally inform the Swiss Bundesverwaltungsgericht about the existence of the Approval Order by the Court.

5.      On and after of the Effective Date, the Tschira Entities shall not, and shall procure that their Affiliates; successors and assigns; and past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys neither oppose nor object to (nor support any objection to) the LBF Settlement Agreement, nor take any action to alter, delay or impede the effectiveness and consummation of the LBF Settlement Agreement, other than pursuant to rights contained herein.

6.      On or before 9:30 am local Swiss time on the Effective Date, and provided that on or before 8:30 am local Swiss time the Tschira Entities actually received the Certificate, the Tschira Entities shall withdraw the Tschira Appeal with prejudice by sending via facsimile a German translation of the letter attached hereto as Exhibit A to the Swiss Bundesverwaltungsgericht with a copy to FINMA.  Separately, the Tschira Entities shall forward a copy of said letter to LBF Liquidator and LBHI.

7.      Upon the Effective Date of this Settlement Agreement, automatically and without the need for any further Court order, the Guarantee Claims shall be reinstated and Allowed as a single Allowed Guarantee Claim in LBHI Class 9A (the "Tschira-LBHI Claim") in an amount equal to (and converted to USD at the exchange rate applicable on September 15, 2008) the aggregate admitted amount of the Tschira-LBF Claims (which may be $0.00, if such claims are ultimately disallowed in the Swiss Proceedings) reflected on a revised Kollokationsplan as admitted either by, or pursuant to (i) the Final Order of a court of competent jurisdiction in Switzerland entering judgment without a settlement for which no objection is interposed by any party, (ii) a settlement agreement between LBF and the Tschira Entities (a "Tschira-LBF Settlement"), or (iii) if any party, including LBHI, objects to a Tschira-LBF Settlement or the revised Kollokationsplan in Switzerland, the Final Order of a court of competent jurisdiction in Switzerland in respect of such objection, or a settlement agreement, resolving such objection, *provided that*

> (x) if the Tschira-LBF Claim are admitted as described in (i) and (ii) (based on Kollokationsklage), the Tschira-LBHI Claim may not exceed (a) CHF 150,000,000, if the Tschira-LBF Claims are admitted pursuant to a Final Order or a Tschira-LBF Settlement that is no longer subject to objection within six (6) months of the Effective Date , (b) CHF 210,000,000, if the Tschira-LBF Claims are admitted pursuant to a Final Order or a Tschira-LBF Settlement that is no longer subject to objection between six (6) and twelve (12) months after the Effective Date, and (c)

5



CHF 300,000,000, if the Tschira-LBF Claims are admitted as a claim pursuant to a Final Order or a Tschira-LBF Settlement that is no longer subject to objection later than twelve (12) months after the Effective Date;

(y) if LBHI interposes an Authorized Objection as hereinafter defined, to a Tschira-LBF Settlement or revised Kollokationsplan (Negative Kollokationsklage), and the Tschira-LBF Claim is admitted pursuant to (iii), and

(A) such Final Order does not grant LBHI's objection, then the Tschira-LBHI Claim shall be the lower of the admitted amount and (a) CHF 150,000,000, if such Final Order is issued within six (6) months of the Effective Date (b) CHF 210,000,000, if such Final Order is issued between six (6) and twelve (12) months after the Effective Date and (c) CHF 300,000,000, if such Final Order is issued later than twelve (12) months after the Effective Date; or

(B) such Final Order grants LBHI's objection by reducing the amount of the Tschira-LBF Claims provided for in the settlement of revised Kollokationsplan, then the Tschira-LBHI Claim shall be the lower of the admitted amount and (a) CHF 150,000,000, if LBHI's objection is interposed within six (6) months of the Effective Date (b) CHF 210,000,000, if LBHI's objection is interposed between six (6) and twelve (12) months after the Effective Date and (c) CHF 300,000,000, if LBHI's objection is interposed later than twelve (12) months after the Effective Date, provided however, that anything to the contrary herein notwithstanding, such the Tschira-LBHI Claim shall not be reduced below the applicable Tschira-LBF Claim Cap, as hereinafter defined, applicable as of the date such objection was interposed; and

(z) if any party objects, but LBHI does not object (Negative Kollokationsklage by a third party) prior to the last day for filing an objection, the lower of amount provided for in the Tschira-LBF Settlement or the applicable Tschira-LBF Claim Cap, as hereinafter defined as of the date of such objection, shall automatically and without need for Court order become the Allowed Tschira-LBHI Claim regardless of whether it is ever admitted.

8.    To the extent that a the Kollokationsplan, as revised by the LBF Liquidator, admits an aggregate amount for the Tschira-LBF Claims that exceeds (a) CHF 150,000,000, if determined pursuant to a Tschira-LBF Settlement that is executed within six (6) months of the Effective Date, (b) CHF 210,000,000, if determined pursuant to a Tschira-LBF Settlement that is executed between six (6) and twelve (12) months after the Effective Date, and (c) CHF 300,000,000, if determined pursuant to a Tschira-LBF Settlement that is executed later than twelve (12) months after the Effective Date (in each case, a "Tschira-LBF Claim Cap"), LBHI may interpose an objection to any such



Tschira-LBF Settlement and/or the admitted amount of the Tschira-LBF Claims as set forth in the revised Kollokationsplan (but only seek, by court motion or otherwise, to reduce the admitted amount of the Tschira-LBF Claims to the applicable Tschira-LBF Claim Cap and solely in Switzerland) (an "Authorized Objection"), and the Tschira Entities waive any and all rights that they may have in respect of LBHI pursuant to section 4.1 of the LBF Settlement as third party beneficiary (*Vertrag zugunsten Dritter*) and consent to LBHI interposing an Authorized Objection to any Tschira-LBF Settlement and/or the amount of the Tschira-LBF Claims that is set forth in the Kollokationsplan, as revised by the LBF Liquidator. LBHI shall indemnify the Tschira Entities for any and all losses, damages, costs and expenses, including, without limitation legal fees, incurred by them in connection with an objection by LBHI or its Affiliates to any Tschira-LBF Settlement and/or the amount of the Tschira-LBF Claims that is set forth in the Kollokationsplan, as revised by the LBF Liquidator, that is not an Authorized Objection and such indemnity claim shall be considered an Administrative Expense Claim (as defined in the Plan).

9.      Notwithstanding anything to the contrary in section 7, no Distribution shall be made in respect of the Tschira-LBHI Claim by LBHI pursuant to the Plan until the first Distribution Date that occurs at least thirty (30) days after the date upon which the Allowed amount of the Tschira-LBHI Claim is determined as set forth in section 7 (the "Tschira Claim Determination Date"). If the Allowed amount of the Tschira-LBHI Claim is determined as set forth in section 7 above to be an amount greater than $0.00, then

(i)      (a) upon the first Distribution Date that occurs at least thirty (30) days after the Tschira Claim Determination Date, LBHI shall (i) pay CHF 12,500,000 (converted to USD at the exchange rate applicable on the date of such payment) to the Tschira Entities in full satisfaction of all expenses incurred by the Tschira Entities in defending the Adversary Proceeding and prosecuting the Tschira Appeal (the "Settlement Payment") and (b) make payment to the Tschira Entities in an amount equal to its pro-rata share of all accumulated distributions made to holders of Allowed Class 9A Claims from the Effective Date of the Plan through and including such Distribution Date (the "Initial Settlement Payment"), less the Settlement Payment, such that LBHI shall only make Distributions in respect of the Tschira-LBHI Claim to the extent that the cumulative amount distributable in respect of such claim exceeds the Settlement Payment; and

(ii)     the Tschira Entities shall have an Allowed Administrative Expense Claim in the amount (which may be $0.00) equal to (and converted to USD at the exchange rate applicable on the Admin Expense Calculation Date (as defined below)) of the Tschira-LBHI Claim converted to CHF at the exchange rate applicable on September 15, 2008 times (a) 1 less the percentage recovery of the Tschira-LBF Claims, less (b) all Distributions received in respect of the Tschira-LBHI Claim converted to CHF at the exchange rate applicable on each Distribution Date (the "Administrative Expense Claim"). The amount of the Administrative Expense Claim shall be finally determined and fixed in amount and, as soon as practicable thereafter, LBHI shall make a Distribution in respect of the Administrative Expense Claim on the date (the "Admin

7



Expense Calculation Date") that is the earlier of (x) the date upon which all distributions have been made in respect of the Tschira-LBHI Claim and the Tschira-LBF Claims, (y) the date upon which the Tschira-LBHI Claim has been deemed satisfied in full pursuant to section 8.13 of the Plan, on which date the Parties shall use reasonable efforts in good faith to determine and fix the amount of the Administrative Expense Claim within thirty-six (36) months based on a good faith determination of the expected distributions on the Tschira-LBF Claims and taking into account the prices of the Tschira-LBF Claims available on such date from generally recognized sources or the most recent closing bid quotations for such sources, or (z) five (5) years from the Effective Date, on which date the Parties shall use reasonable efforts in good faith to determine and fix the amount of the Administrative Expense Claim based on a good faith determination of the expected distributions on the Tschira-LBF Claims and the Tschira-LBHI Claim and taking into account the prices of the Tschira-LBHI Claim and the Tschira-LBF Claims available on such date from generally recognized sources or the most recent closing bid quotations for such sources.

        10.     The Tschira Entities authorize the Plan Administrator to provide a copy of this Settlement Agreement to the Claims Agent with instructions to update the claims registry in accordance with this Settlement Agreement.

        11.     Within 5 days of the Effective Date, LBHI shall withdraw the Adversary Proceeding with prejudice. Until the earlier of the Effective Date or the termination of this Settlement Agreement pursuant to its terms, the Adversary Proceeding and all time periods agreed to or imposed by any applicable statute, rule or the Bankruptcy Court shall be stayed.

        12.     Other than the right to receive the Settlement Payment and Distributions under the Plan and in accordance with this Settlement Agreement on account of the Tschira-LBHI Claim and the Administrative Expense Claim, the Tschira Entities and their Affiliates, successors and assigns, and their past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Tschira Releasing Parties"), shall following the Effective Date have no further right to payment from LBHI, the Debtors, the Plan Administrator, their Affiliates (which shall not include LBF and Lehman Brothers International (Europe) "LBIE") or their respective successors or assigns (collectively, the "LBHI Released Parties") in respect of the Transactions, Master Agreements, Guarantee Claims, Tschira-LBF Claims, Tschira Appeal, Swiss Proceedings, or the Adversary Proceeding. Other than the right of the Tschira Entities to receive the Settlement Payment, the Administrative Expense Claim and Distributions under the Plan and in accordance with this Settlement Agreement, following the Effective Date, the Tschira Releasing Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and recoupment, debt, liens, losses, demands, damages, costs and causes of action of whatever nature arising out of or relating to the Guarantee Claims, Tschira Appeal, or the Adversary Proceeding (collectively, the "LBHI Released Claims") against any of the LBHI Released Parties, and shall be barred from asserting any and all LBHI Released Claims whatsoever, whether known or unknown, whether accrued or

8



unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Settlement Agreement; provided, however, that the releases granted in this section 12 shall not apply to obligations, rights, remedies or actions arising or accruing pursuant to this Settlement Agreement. On and after the Effective Date, and subject to the proviso herein, the LBHI Released Parties shall not, directly or indirectly, assist or support with information, documents or any other kind of evidence, take any action or commence any proceeding of any kind or nature against the Tschira Entities, including, without limitation, intervening or otherwise participating in any manner and in whatever capacity in the Negatory Swiss Proceedings, the Tschira Appeal, the Swiss Proceedings and any pending or future legal proceeding between and among LBF and the Tschira Entities in any court or other tribunal in any jurisdiction, including, without limitation, in the United Kingdom, other than the filing and prosecution of an Authorized Objection, *provided, however,* that to the extent requested by LBF, the LBHI Released Parties may provide the information and "derivative valuation and reconciliation services" expressly required by sections 4.5 and 9 of the LBF Settlement Agreement, but shall not provide any other assistance to LBF, including, without limitation, providing strategic or other advice to LBF, participate, directly or indirectly in negotiations regarding the Tschira-LBF Claims or any litigation concerning the Tschira Entities. For removal of doubt, nothing herein shall affect (i) a release of the Tschira Entities' claims of any kind, directly or indirectly, against LBF and /or Lehman Brothers International (Europe) ("LBIE"), including any such claim that is held, owned or pursued by LBHI through assignment, subrogation, sale or otherwise, or (ii) in any way the Tschira Entities' rights, if any, to claim, offset, obtain or otherwise deal in or with any cash, assets or other properties pledged to or held by LBF in connection with the Transactions, the Master Agreements or otherwise, or held by LBIE.

13. LBHI, the Plan Administrator, the Debtors, their respective successors or assigns, their Affiliates (which shall not include LBF and LBIE), and their past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "LBHI Releasing Parties"), shall upon the Effective Date automatically be deemed to have released the Tschira Entities, their respective successors or assigns, their Affiliates, and their past and present members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Tschira Released Parties") in respect of any claim, debt, liability, obligation, cause of action of whatever nature, whether known or unknown, including, without limitation, the Transactions, Master Agreements, Guarantee Claims, Tschira-LBF Claims, Tschira Appeal, Swiss Proceedings and the Adversary Proceeding. Other than LBHI's rights as provided in this Settlement Agreement, following the Effective Date, the LBHI Releasing Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and recoupment, debt, liens, losses, demands, damages, costs and causes of action of whatever nature, including, without limitation, arising out of or relating to the Transactions, Master Agreements, Guarantee Claims, Tschira Appeal and the Adversary Proceeding (collectively, the "Tschira Released Claims") against any of the Tschira Released Parties, and shall be barred from

9



asserting any and all Tschira Released Claims whatsoever, whether known or unknown, whether accrued or unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Settlement Agreement; provided, however, that the releases granted in this section 13 shall not apply to obligations, rights, remedies or actions arising or accruing pursuant to this Settlement Agreement. On or after the Effective Date, the LBHI Releasing Parties shall not object, and are barred from objecting, to the Allowed amount of the Tschira-LBHI Claim, the Administrative Expense Claim, and the Settlement Payment.

14.    Prior to the Effective Date,

(i)    the Plan Administrator shall have the right, in its discretion, to terminate this Settlement Agreement by written notice which must be delivered to the Tschira Entities prior to the Effective Date if (a) there is a breach, in any material respect, of the representations, warranties, and/or covenants of the Tschira Entities under this Settlement Agreement that has not been cured within three (3) Business Days after notice thereof is given to each of the Tschira Entities, or (b) the LBF Settlement Agreement has been terminated by LBF;

(ii)    the Tschira Entities shall have the right, in their discretion, to terminate this Settlement Agreement by written notice which must be delivered to the Plan Administrator prior to the Effective Date, if (a) there is a breach, in any material respect, of the representations, warranties, and/or covenants of the Plan Administrator under this Settlement Agreement that has not been cured within three (3) business days after notice thereof is given to Plan Administrator, or (b) the LBF Settlement Agreement has been terminated by LBF; and

(iii)    this Settlement Agreement shall be deemed terminated if, absent the consent of the Parties, the Effective Date has not occurred by March 20, 2014; *provided, however,* that such dates may be extended with the written consent of the Parties.

(iv)    Notwithstanding anything to the contrary in this Settlement Agreement, this Settlement Agreement may not be terminated after the Effective Date.

(v)    LBHI shall provide to the Tschira Entities copies of any and all termination notices ("Termination Notices") received, on and after the Execution Date, from LBF concerning the LBF Settlement Agreement and any all communications related to termination or potential termination of the LBF Settlement Agreement (collectively with Termination Notices, "Termination Communications"), on the day LBHI received such notices or communications. Within one day of the Execution Date LBHI shall provide to the Tschira Entities with copies of Termination Communications received between the Execution Date and February 19, 2014.

15.    In the event that this Settlement Agreement is terminated in accordance with its terms, neither this Settlement Agreement (except for this section 15)

10



nor any motion or other papers filed in the Court or on appeal with respect to the approval of this Settlement Agreement shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies, and defenses shall be restored without prejudice as if this Settlement Agreement had never been executed, and the Parties shall be automatically relieved of any further obligations under this Settlement Agreement. Upon such termination, this Settlement Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties' rights and remedies and the Parties hereby reserve all claims, defenses, and positions that they may have with respect to each other.

16.     This Settlement Agreement contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto.

17.     This Settlement Agreement may not be modified other than by signed writing executed by the Parties hereto.

18.     Each person who executes this Settlement Agreement represents and warrants that he or she is duly authorized to do so on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to this Settlement Agreement.

19.     The Tschira Entities represent and warrant that on the Effective Date, (i) they own the Tschira-LBF Claims free and clear of any and all liens, claims, setoff rights, security interests, participations, or encumbrances, and have not transferred or assigned to any other person any of the Tschira-LBF Claims, in whole or in part, except for any such interests and rights that do not limit their rights to enter into this Settlement Agreement and perform their obligations thereunder, and (ii) neither Tschira Entity has entered into any agreements with LBF concerning any of the claims or legal proceedings that are the subject of this Settlement Agreement.

20.     LBHI represents and warrants that on the Effective Date, it owns the alleged claims against the Tschira entities free and clear of any and all liens, claims, setoff rights, security interests, participations, or encumbrances, and have not transferred or assigned to any other person any of the alleged claims, in whole or in part.

21.     Each Tschira Entity represents and warrants that the execution and delivery by it of, and the performance by it of its obligations under, this Settlement Agreement are within its corporate powers, have been duly authorized by all necessary action, and will not contravene any constitutional document or other instrument or agreement binding on it, or any law, regulation, judgment, order or administrative action binding on it.

22.     Subject to entry of an order by the Bankruptcy Court approving the Settlement Agreement pursuant to Bankruptcy Rule 9019, the Plan Administrator represents and warrants that the execution and delivery by it of, and the performance by it

11



of its obligations under, this Settlement Agreement are within its corporate powers, have been duly authorized by all necessary action, and will not contravene any constitutional document or other instrument or agreement binding on it, or any law, regulation, judgment, order or administrative action binding on it.

23.     This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Settlement Agreement to present any copy, copies, or facsimiles signed by the Parties hereto to be charged. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

24.     This Settlement Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns.

25.     All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the release sections of this Settlement Agreement. Section 1542 of the California Civil Code reads as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

26.     This Settlement Agreement shall be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof.

27.     The Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Settlement Agreement. Should the Court abstain from exercising its jurisdiction or be found not to have jurisdiction over a matter relating to this Settlement Agreement, such matter shall be adjudicated in either a federal district court in the State of New York or a state court in the State of New York.

28.     The fees and expenses incurred by each Party in connection with this Settlement Agreement will be paid by such Party.

29.     Each Party acknowledges that this Settlement Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

30.     This Settlement Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Settlement Agreement.

12



**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS SETTLEMENT AGREEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING AND EXECUTING THE SETTLEMENT AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS SETTLEMENT AGREEMENT.**

LEHMAN BROTHERS HOLDINGS
INC.
By: _____
Print Name:  Daniel J. Ehrmann
Title: Senior Vice President

DR. H.C. TSCHIRA BETEILIGUNGS
GMBH & CO. KG
By: _____
Print Name:_____
Title:_____

KLAUS TSCHIRA STIFTUNG GGMBH
By: _____
Print Name:_____
Title:_____

**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS SETTLEMENT AGREEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING AND EXECUTING THE SETTLEMENT AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS SETTLEMENT AGREEMENT.**

LEHMAN BROTHERS HOLDINGS INC.
By: _____
Print Name:  Daniel J. Ehrmann
Title: Senior Vice President

DR. H.C. TSCHIRA BETEILIGUNGS GMBH & CO. KG
By: _____
Print Name: _____ (BERND KRATHERLANDER)
Title: _____ *DELEGATE* _____

KLAUS TSCHIRA STIFTUNG GGMBH
By: _____
Print Name: _____ (BERND KRATHERLANDER)
Title: _____ *DELEGATE* _____

13

**<u>Annex B</u>**
**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                                        :        Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.*                      :        08-13555 (SCC)
                                                             :
                    Debtors.                                 :        (Jointly Administered)
------------------------------------------------------------------x

### ORDER PURSUANT TO BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT RESOLVING CLAIM OF DR. H.C. TSCHIRA BETEILIGUNGS GMBH & CO. KG AND KLAUS TSCHIRA STIFTUNG GGMBH

Upon the motion (the "Motion") dated February 26, 2014, of Lehman Brothers

Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified

Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for authorization

to enter into the Settlement Agreement[1] with Dr. H.C. Tschira Beteiligungs GmbH & Co. KG

("KG") and Klaus Tschira Stiftung gGmbH ("KTS" and together with KG, the "Tschira

Entities"), all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the

United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the

Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York;

(v) the Tschira Entities; (vi) the LBF Liquidator; and (vii) all other parties entitled to notice in

---

[1] Capitalized terms used but not defined in this Order have the meanings ascribed to them in the Motion.

accordance with the procedures set forth in the second amended order entered on June 17, 2010

governing case management and administrative procedures for these cases [ECF No. 9635]; and

it appearing that no other or further notice need be provided; and a hearing having been held to

consider the relief requested in the Motion; and the Court having found and determined that the

relief sought in the Motion is in the best interests of LBHI, its creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Court having found and determined that the compromises and

settlements set forth in the Settlement Agreement are reasonable and appropriate, the Motion is

GRANTED; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the compromises and

settlements described in the Motion and contemplated by and provided for in the Settlement

Agreement are approved and the Plan Administrator, LBHI, and the Debtors are authorized to

enter into and perform the Settlement Agreement; and it is further

ORDERED that the Plan Administrator, LBHI, and the Debtors are authorized to

execute, deliver, implement, and fully perform any and all obligations, instruments, documents,

and papers and to take any and all actions reasonably necessary or appropriate to consummate

the Settlement Agreement and perform any and all obligations and transactions contemplated

therein; and it is further

ORDERED that the terms of this Order shall be immediately effective and

enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

US_ACTIVE:\44432873\8\58399.0011

ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: _____, 2014
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE:\44432873\8\58399.0011