UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                              :   Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*            :   08-13555 (JMP)
                                                   :
                       Debtors.                    :   (Jointly Administered)
------------------------------------------------------------------x

# DECLARATION OF DANIEL J. EHRMANN IN SUPPORT OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO BANKRUPTCY RULE 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT RESOLVING CLAIM OF DR. H.C. TSCHIRA BETEILIGUNGS GMBH & CO. KG AND KLAUS TSCHIRA STIFTUNG GGMBH

Pursuant to 28 U.S.C. § 1746, I, Daniel J. Ehrmann, declare:

1. I am over 18 years of age and make these statements based on my personal knowledge, my review of the business records of the Chapter 11 Estates,[1] and/or my consultation with employees and professionals of the Chapter 11 Estates and Alvarez & Marsal North America, LLC ("A&M"). If called to testify, I could testify to the truth of the matters set forth herein.

2. I make this declaration on behalf of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), in support of the Plan Administrator's motion, filed on February 26, 2014, for approval of a settlement agreement (the "Settlement Agreement") between LBHI, on the one hand, and Dr. H.C. Tschira Beteiligungs GmbH & Co. KG ("KG") and Klaus Tschira Stiftung

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion (defined below).

US_ACTIVE:\44431821\4\58399.0011

gGmbH ("KTS" and together with KG, the "Tschira Entities"), on the other hand [ECF No. ] (the "Motion").

3.  I am a Managing Director with A&M. I was assigned to the Lehman matter in September 2008. One of my primary areas of responsibility is the management of all international and foreign matters of the Chapter 11 Estates. I began my career as an attorney practicing law in France for five years. I have specialized in turnaround and restructuring with A&M since 2000, serving in a variety of interim management, advisory, and financial restructuring roles.

4.  On behalf of the LBHI, I led the negotiations with the Tschira Entities that resulted in the Settlement Agreement described in the Motion. I have knowledge of the facts and representations set forth in the Motion regarding the Settlement Agreement and the LBF Settlement. I have reviewed the Motion and it accurately reflects the foregoing. After careful consideration I have concluded that the Settlement Agreement is in the best interests of LBHI and its creditors and should be approved.

5.  Pursuant to the Settlement Agreement, the Tschira Entities will withdraw the Tschira Appeal, resulting in the effectiveness of the LBF Settlement. As a result of the LBF Settlement, LBF will assign to LBHI all of its right, title and interest in approximately $9.2 billion in claims that LBF has asserted against certain other Lehman affiliates, as well as more than $1.1 billion of the approximately $1.3 billion in cash proceeds that LBF has collected to date in respect of such claims. If the Motion is approved by March 5, 2014, it is possible that this $1.1 billion in cash will become available for distributions to LBHI's creditors at the next Distribution Date. LBF's $15.4 billion in aggregate claims against the Debtors will also be withdrawn and replaced with an allowed claim against LBHI in the amount of $942 million

based on certain securities guaranteed by LBHI. This massive claim reduction will free-up approximately $3.6 billion in reserves, including close to $700 million in cash from the Disputed Claims reserve for inclusion in the distributions that are made at the next Distribution Date. The Plan Administrator also anticipates that LBHI will recover billions of dollars more in the future both from LBF and the assigned intercompany claims.

6. In total, as a result of the Settlement Agreement (and in turn, the LBF Settlement), the Plan Administrator will have an additional $1.8 billion in Available Cash that can be distributed at the next Distribution Date. Absent the Settlement Agreement, it is LBHI's understanding that the Tschira Appeal and any subsequent appeals could delay the effectiveness of the LBF Settlement by as long as three years. Given these circumstances, the Plan Administrator has concluded that the prospect of $1.8 billion becoming available for distributions today compared with three years from today far outweighs any potential costs to LBHI that may arise pursuant to the Settlement Agreement.

7. Effectiveness of the LBF Settlement will benefit LBF and its creditors immensely as well. To date, LBF's creditors have only received approximately 9.4% in respect of their claims because LBF has needed to maintain considerable reserves on account of LBHI's approximately $14.2 billion disputed claim. Even if LBF could make further distributions to its creditors, until the settlement with LBHI becomes effective, these distributions would be *de minimis* given the large reserves that LBF still needs to maintain. If the LBF Settlement becomes effective, however, LBF no longer be required to reserve for the LBHI claim because LBHI has agreed to partially subordinate its claim against LBF to the claims of LBF's third-party creditors. Given the $2.2 billion in cash that LBF has on hand, LBF should be able to fully satisfy its creditors' 50% priority payment. As a result, effectiveness of the LBF Settlement

3

should allow LBF creditors recoveries to exceed 50% of their allowed claims (including the 9.4% that they have received to date) shortly after the effective date of the LBF Settlement. LBF's approximately $942 million claim against LBHI will also become an Allowed Claim and entitled to Distributions (including a significant catch-up distribution) at the next Distribution Date.

8.  The effectiveness of the LBF Settlement is also critical to the resolution of other material Lehman proceedings around the world. LBF's pre-bankruptcy trading activity, which resulted in LBF having significant claims against Lehman entities such as LBT and LBS, also resulted in material claims by other Lehman affiliates against LBF. The chart below shows the interdependence of the key Lehman estates and the importance of the resolution of the LBF proceedings to the other Lehman estates.

US_ACTIVE:\44431821\4\58399.0011



2

As illustrated above, LBF is a creditor of the following Lehman affiliates: LBS, LBT, Lehman Brothers International (Europe) ("LBIE"), Lehman Brothers Asia Holdings Ltd. and certain of its affiliates ("LB Hong Kong"), Lehman Brothers Inc. ("LBI"), and Lehman Brothers Bankhaus AG ("LBB"). At the same time, LBF is a debtor to LBHI and Lehman Brothers Japan Inc. ("LBJ"). LBHI, in turn, is also the single largest creditor of both LBI and LB Hong Kong. Until the LBF Settlement Agreement is effective, distributions that must ultimately flow among these affiliates will remain "trapped" at LBF, and LBF will not be able to execute a viable "exit plan" for its proceeding. This delay, in turn, will frustrate LBF's affiliate counterparties' ability to expedite their own proceedings, and will delay recoveries to thousands of Lehman creditors

---

[2] The diagram above illustrates the most significant intercompany claims among the Lehman entities. It is *not* meant to be a comprehensive view of all intercompany claims among Lehman affiliates. With the exception of the $14.2B owed from LBF to LBHI (which pursuant to the LBF Settlement would be reduced to approximately $8.74 billion), all other amounts represent settled intercompany balances.

5

worldwide (including LBF's largest creditor, LBHI).[3]  The cost of this delay to creditors of LBHI and other Lehman estates will be material.

9. Another significant benefit of the LBF Settlement is that it will eliminate much of the wasteful circularity that currently exists among LBHI and its foreign affiliates, particularly LBHI, LBT, and LBS, as demonstrated in the diagram above.  The assignment by LBF to LBHI of its claims against LBT and LBS will allow LBHI to collapse the LBT and LBS claims to the extent of the assigned LBF claims, significantly accelerating the resolution of these estates and distributions to creditors.  Until LBHI's settlement with LBF becomes effective, this crucial "collapsing" of intercompany balances cannot occur and will unnecessarily prolong the LBT and LBS proceedings.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

    Executed on this 26th day of February, 2014.

                                        /s/ Daniel J. Ehrmann
                                        Daniel J. Ehrmann

---

[3] Because LBHI is also the single largest creditor of LBI and of LB Hong Kong, any further delay in the effectiveness of the LBF Settlement not only delays direct distributions to LBHI, but also indirect distributions through the assignment of the LBI and LB Hong Kong receivables to LBHI.