Hearing Date & Time: March 6, 2014 at 11:00 a.m.
Objection Deadline: February, 27, 2014 at 4:00 p.m.

Allan S. Brilliant
Shmuel Vasser
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Stonehill Institutional Partners, L.P.
and Stonehill Offshore Partners Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :    Case No. 08-13555 (SCC)
                                                    :
                                   Debtors.         :    Jointly Administered
------------------------------------------------------------x

**STONEHILL'S OBJECTION TO THE PLAN ADMINISTRATOR'S
MOTION TO ESTABLISH SINGLE RESERVE FOR STONEHILL CLAIMS**

19030603

## TABLE OF CONTENTS

|  | Page |
|---|---|
| SUMMARY OF ARGUMENT | 1 |
| BACKGROUND | 3 |
| OBJECTION | 5 |
|     A. The Motion Is Misleading and Does Not Provide any Authority for the Relief Requested therein | 5 |
|     B. The Reserve For the Stonehill Claims Should be $200 Million | 8 |
|     C. The Relief Sought In Motion Is Improper | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**CASES**

Charter Asset Corp. v. Victory Markets, Inc. (In re Victory Markets, Inc.),
   221 B.R. 298 (Bankr. S.D.N.Y. 1998) .................................................................7

In re Club Ventures Inv. LLC,
   No. 11 – 10891, 2012 WL 6139082 (Bankr. S.D.N.Y. Dec. 11, 2012) .................2

In re Lionel L.L.C.,
   No. 04-17324, 2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007) .....................3

In re Thomson McKinnon Secs., Inc.,
   143 B.R. 612 (Bankr. S.D.N.Y. 1992) .................................................................3

Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.),
   419 F.3d 115 (2d Cir. 2005) .................................................................................8

New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart
   Convenience Stores, Inc.),
   351 F.3d 86 (2d Cir. 2003) ...................................................................................7

Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs, LLC),
   423 F.3d 166 (2d Cir. 2005) .................................................................................7

Travelers Indemnity Co. v. Bailey,
   557 U.S. 137 (2009) .............................................................................................8

**STATUTES/RULES**

Bankruptcy Rule 3007(a) ...............................................................................................2

Bankruptcy Rule 9013 ...................................................................................................3

Bankruptcy Rule 9014 ...................................................................................................7

Federal Rule of Bankruptcy Procedure 2004 .............................................................2,4

Federal Rule of Evidence 408 .......................................................................................4

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Stonehill Institutional Partners, L.P. ("Stonehill Institutional") and Stonehill Offshore Partners Limited ("Stonehill Offshore" and, together with Stonehill Institutional, "Stonehill"), through its undersigned counsel, jointly object to the Motion To Establish Single Reserve For Duplicative Claims [ECF No. 42959] (the "Motion"), filed on February 20, 2014 by Lehman Brothers Holdings, Inc., as Plan Administrator[1] under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and its Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases (the "Chapter 11 Estates").

## Summary of Argument

1. Through its motion, the Plan Administrator seeks to effectively disallow a portion of Stonehill's claims by capping the reserves at a level below Stonehill's actual claim amount and purporting to establish a single reserve for such claims without filing an objection to such claims or giving the notice required by the Bankruptcy Code and Rules for claims objections. Neither the Bankruptcy Code, Rules or the Plan allows for such a relief at all, much less on short notice without discovery and a full evidentiary hearing. Moreover, there is no basis in the Plan or in law for the relief the Debtors' seek. Accordingly, the Motion must be denied.

2. In trying to justify such relief, the Plan Administrator purports to quote section 8.4 of the Plan but uses ellipses to omit critical language to give the impression that the Court has absolute discretion to grant the relief they seek. The relevant and controlling language ignored by LBHI, however, makes clear that the Court can only grant such relief to the extent it is permitted by the Bankruptcy Code and Rules. Since the relief requested by the Debtors is not permitted by the Bankruptcy Code or Rules, the motion must be denied.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

19030603

1

3. Through their Motion, the Debtors in actuality seek to cap the Stonehill claims (the "Stonehill Claims")[2] under the guise of a routine procedural Motion that purportedly does not affect substantive rights but in fact would, if the requested relief is granted, severely and negatively impact Stonehill's recovery on a significant portion of its claims, the substance of which have yet to be addressed by the Debtors more than five years into these cases and more than two years after the confirmation of the Debtors' Chapter 11 plan.

4. As the Debtors very well know, but fail to advise the Court, Stonehill asserts claims aggregating approximately $200 million against each of the 20 Chapter 11 Estates (the "Applicable Debtors"), not $44 million as the Debtors allege. Thus, the Motion seeks to effectively cap Stonehill's claims below the full amount they are asserting, thus effectively disallowing a large majority of the Stonehill Claims. Had the Debtors objected to Stonehill's Claims, Stonehill would have been entitled to significantly more notice[3] and an opportunity to take discovery from the Debtors to defend its claims (an opportunity that LBHI has already been afforded via discovery provided by Stonehill in late 2012 and early 2013 pursuant to a Rule 2004 request as well as materials voluntarily provided by Stonehill), and would have been entitled to a full evidentiary estimation hearing, i.e. a mini-trial or a contested evidentiary hearing on the issues in dispute.[4] The Debtors seek to deprive Stonehill of these due process protections in

---

[2] A portion of Stonehill's originally filed claims, arising from derivatives transactions with Lehman Brothers Special Financing Inc. and a guarantee of those transactions by LBHI, was consensually settled, reduced and allowed in 2011 (via a settlement agreement which was approved as part of the order granting the Debtors' 137th omnibus objection to claims) and those allowed claims are not at issue here and are not included in the defined term "Stonehill Claims" in this reply. In broad strokes, the remaining Stonehill Claims include 1) contractual, tort and equitable claims against all of the Debtors arising from Stonehill's prime brokerage relationship with LBI; and 2) LBHI's guarantee of Stonehill's derivatives transactions with Lehman Brothers International (Europe). (See footnote 7 below).

[3] Bankruptcy Rule 3007(a) requires 30 days notice for objection to claims.

[4] See In re Club Ventures Inv. LLC, No. 11-10891, 2012 WL 6139082, at *5 (Bankr. S.D.N.Y. Dec. 11, 2012) (in connection with an estimation hearing the court reviewed "voluminous evidentiary materials" and heard oral

2

connection with their facially and superficially procedural Motion. LBHI should not be allowed, through the use of a procedurally and substantively defective Motion, to strip Stonehill of due process.

5.   Finally, equity requires that to the extent the Debtors dispute Stonehill's Claim that they file an objection to the Stonehill Claims at this time. Five years after the filing date, over two years following the confirmation of the Plan, and two years after LBHI demanded and received discovery from Stonehill, it is time for LBHI to address the substance of the claims rather than engage in side shows that do nothing to advance the ultimate resolution of the claims. It is time for LBHI to object to Stonehill's Claims, if it seeks to disallow them in whole or in part.[5]

### Background

6.   The two Stonehill entities are private investment funds managed by Stonehill Capital Management LLC. Prior to the Debtors' Chapter 11 filings, Lehman Brothers Inc. ("LBI") was Stonehill's prime broker. Pursuant to the prime brokerage agreement, LBI and its affiliates, including the Debtors in these cases, are jointly and severally liable for all damages suffered by Stonehill under the agreement.

---

argument); In re Thomson McKinnon Secs., Inc., 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992) (estimating claims based on the submission of a live witness and relevant depositions). In re Lionel L.L.C., No. 04-17324, 2007 WL 2261539, at *5 (Bankr. S.D.N.Y. Aug. 3, 2007) (describing the most common method of claim estimation as "a procedure akin to a summary trial where there was no jury, live testimony by one witness per party, a discovery cutoff date, and only two days for the hearing.".)

[5] In addition, the Motion was not properly served as required by the order governing notice and case management procedures in this case [ECF No. 9635]. Since the Motion was filed fifteen days prior to the hearing date, LBHI was required to serve it via overnight delivery on Stonehill. Id. at ¶ 29. No such service was affected. Stonehill's counsel's inquiry in this regard was left unanswered by LBHI's counsel. In addition, since LBHI failed to include the authorities it alleges support the Motion, and provided these to Stonehill's counsel at 5:03 p.m. on February 21, 2014, it failed to comply with Rule 9013 that requires that each "motion shall state with particularity the grounds therefor...." The motion should be denied on this ground alone.

3

7. In September 2009, Stonehill filed the Stonehill Claims. Motion, ¶ 8. A copy of the claim filed by Stonehill Offshore against LB Rose Ranch LLC (Claim No. 19887), is representative of said claims, and is annexed hereto as Exhibit A. Annexed to each of the Claims is an attachment (the "Attachment") describing at length the basis for LBHI's and its affiliates' liability to Stonehill.

8. In addition to the claims specifically set forth in the Claims, Stonehill specifically preserved its rights to amend and supplement the Stonehill Claims. See Attachment, ¶ 6, last bullet ("Claimant fully reserves the right to amend this Claim to include any and all such amounts as part of its Claim."); ¶ 16 ("Claimant reserves all of its rights to supplement or amend this Claim in any and all respects, including to liquidate amounts which are presently unliquidated or estimated.").

9. On November 16, 2012, the Plan Administrator made certain discovery requests on Stonehill pursuant to Federal Rule of Bankruptcy Procedure 2004. A copy of the Subpoena served on Stonehill Institutional is annexed hereto as Exhibit B. A substantially identical subpoena was served on Stonehill Offshore. On January 17, 2013, Stonehill sent the Plan Administrator objections and responses and provided responsive documents to the discovery requests. Stonehill also provided additional responsive documents on February 11, 2013.

10. In addition, during the later part of 2013 and early 2014, Stonehill provided LBHI with information supporting its calculation of amounts that were unliquidated at the time the Stonehill Claims were filed. These calculations evidenced that Stonehill Institutional asserts that it lost $72 million and Stonehill Offshore has a claim of approximately $80 million on account of the diminution in value of securities returned by LBI (*i.e.*, the difference in value between the petition date claim amount and the value of the securities on the date they were returned). In

addition Stonehill advised LBHI that it is has a claim for over $11 million on account of a foreign exchange derivative claim not paid by LBI as a customer claim in its SIPC proceeding and specifically included in the Stonehill Claims, and additional amounts on account of the guarantee of Stonehill claims against Lehman Brothers International (Europe) ("LBIE") for approximately $37 million, which claim is not disputed but has not yet been paid in full by LBIE. Adding up these various components results in a claim of approximately $198 million. On January 31, 2014 Stonehill's counsel sent an email to LBHI's counsel providing him this exact same information.[6]

11.     Stonehill asserts that it has a claim against the Debtors for such amounts as a result of the Debtors' joint and several liabilities with LBI under the Stonehill prime brokerage agreement. In addition, prior to the Bankruptcy, Stonehill was induced to continue its relationship with LBI and the other Debtors based on willful and material misrepresentations made by or on behalf of the Debtors regarding their financial condition, giving rise to an equitable basis for the Stonehill Claims. In its filed proofs of claims, among other things, Stonehill seeks reimbursement for its losses suffered based on such misrepresentations. See, e.g. Attachment, ¶¶ 8-14.

**OBJECTION**

A.   **The Motion Is Misleading and Does Not Provide any Authority for the Relief Requested therein**

12.     For the purpose of reducing the reserve for Stonehill's claims, LBHI purports to rely on section 8.4 of the Plan. See Motion, ¶ 12. Section 8.4 of the Plan provides that LBHI is required to retain a reserve for Disputed Claims equal to the lesser of (a) the filed amount of the

---

[6] This and other information exchanged among the parties was made subject to Federal Rule of Evidence 408, and for that reason copies of such correspondence are not attached herein.

5

Disputed Claim, (b) to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules the amount determined by the Court, or (c) an amount agreed upon by LBHI and the creditor. Subsections (a) and (c) are inapplicable herein. Thus, LBHI is seeking to reduce the reserve for the Stonehill Claims in reliance on Plan section (b).

13. In quoting the relevant language of section 8.4 (b), however, LBHI uses ellipses to omit crucial language contained in that paragraph. The full portion of section 8.4(b) provides: "[T]he amount determined, *to the extent permitted by the Bankruptcy Code and Bankruptcy Rules*, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claim" (emphasis added). The Motion not only neglects to include the emphasized language, it fails to cite to *any* Bankruptcy Code section or Bankruptcy Rule that permits the relief sought by LBHI.

14. To understand the purported basis for the relief sought in the Motion and prepare its response, Stonehill's counsel requested LBHI's counsel to cite the legal authority for the relief requested. See email attached as Exhibit C. In response, LBHI's counsel cited to sections 105, 502(c), 1123(a)(4) of the Bankruptcy Code and 1142(b) and Bankruptcy Rule 9014. See email attached as Exhibit D. None of these Code sections has any applicability to the relief sought in the Motion, nor does Rule 9014. Section 502(c) allows for estimation of claims for "purpose of allowance" of contingent or other claims that would unduly delay the administration of a case, or claims arising from right of an equitable remedy for breach of performance. Such section is clearly inapplicable and is not the relief sought by the Debtors. Section 1123(a)(4) deals solely with permissible contents of chapter 11 plans, which is not at issue herein. Section 1142(b) deals with plan implementation, which is also not at issue herein. Notwithstanding the Court's equitable powers, section 105 does not provide the Court with authority to modify the

6

express reserve requirements of the Plan unanchored to any particular Code section -- section 105 is to be used only in carrying out other provisions of the Bankruptcy Code. See New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003); Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 184 (2d Cir. 2005) (citing Dairy Mart; finding § 105(a) inapplicable where no provision of the Bankruptcy Code could be invoked to support appellant's claim for relief). None of which are applicable here. Finally, Rule 9014 deals with the rules applicable to contested matters, which has nothing to do with the substance of the relief sought by LBHI.

15. In addition, LBHI's counsel pointed to two additional authorities allegedly supporting the relief sought in the Motion. First, LBHI's counsel referred to the Order Granting Motion Of Lehman Brothers Holdings Inc. And Lehman Brothers Special Financing, Inc. To Estimate Claims Filed By Citadel Equity Fund Ltd. For Purposes Of Establishing Reserves [ECF No. 27112]. Not only is this order not binding on Stonehill, by its terms it deals with LBHI's request to estimate the claims; this Motion seeks no such relief. Second, LBHI's counsel referred to In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP), Tr. of Jan. 26, 2012 Hr'g, at 16:22 – 17:11. This authority is irrelevant as well since it involves the Debtors' motion to estimate claims under section 502(c). See [ECF No. 24254].

16. In short, LBHI failed to assert in its Motion, or otherwise identify any Bankruptcy Code section or Bankruptcy Rule permitting the relief it is seeking. It is black letter law that the Plan is a binding contract, see Charter Asset Corp. v. Victory Markets, Inc. (In re Victory Markets, Inc.), 221 B.R. 298, 303 (Bankr. S.D.N.Y. 1998), and as such must be enforced

pursuant to its unambiguous terms. See Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 149 (2009). Thus, the Motion must be denied.

B. **The Reserve For the Stonehill Claims Should be $200 Million**

17. Even though LBHI is fully aware that the Stonehill Claims total $198 million rather than $44 million, none of this is disclosed to the Court by LBHI. In fact, LBHI affirmatively suggests to the Court that the Motion will not prejudice Stonehill in any way. See Motion, ¶ 2. It is impossible to reconcile this statement with LBHI's and its counsel's actual knowledge that Stonehill asserts that each of the Stonehill Claim is for almost $200 million.

18. As mentioned, Stonehill provided LBHI's counsel schedules and information explaining the amounts and categories of the unliquidated portions of its claims. Stonehill's counsel also advised LBHI's counsel that Stonehill will formally amend its claims to the extent that the parties cannot resolve their disagreements concerning the allowed amount of these claims. While LBHI may disagree with Stonehill as to the amount by which the claims should be allowed, or whether Stonehill should be allowed to amend its claims, none of this is before the Court on the current Motion. Stonehill is allowed to amend and supplement the Stonehill Claim under Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115 (2d Cir. 2005), but in any event, this issue is not before the Court at this time as the adjudication of proper amount of these claims is simply not the subject of the Motion.[7]

---

[7] Various claims filed by Stonehill against the Debtors and LBI were negotiated and settled over different time periods making it impractical to amend the Stonehill Claims at each stage of the proceeding. Stonehill's claims against LBI were finally resolved and allowed on or about June, 2010. Stonehill's claim against Lehman Brothers Commercial Paper, Inc. was partially resolved by a settlement agreement on or about July 15, 2011. Certain portions of Stonehill's claims against LBHI and Lehman Brothers Special Financing Inc. were resolved via termination agreements on or about September 30, 2011. On or about September 2013, and after LBHI served and received discovery from Stonehill, LBHI requested Stonehill to withdraw the Stonehill Claims. Stonehill refused. Since that time Stonehill provided to LBHI's counsel documents and legal arguments supporting its $200 million claims in an attempt to reach an agreement on the allowed amount of the Stonehill Claims. Without any substantive response, LBHI filed the Motion.

19. In short, due process demands that whatever substantive or procedural objections LBHI may have to Stonehill's Claims, LBHI should not be allowed to cap such claims without a full hearing on allowance of such claims. Accordingly, the Motion should be denied.

C. **The Relief Sought In Motion Is Improper**

20. Last but not least, the Motion is improper as a matter of equity (as well as judicial economy) because the Plan Administrator, after waiting over five years to resolve Stonehill's claims and subjecting Stonehill to discovery, is only now seeking to establish a single reserve for Stonehill's claims rather than resolving them substantively. In doing so, of course, the Motion would not advance the resolution of any of the disputes among LBHI and Stonehill, but rather delay further any potential distributions to Stonehill.

21. Stonehill stands ready to litigate, mediate or otherwise resolve any objection that the Debtors may have to its claims. Stonehill has proposed to LBHI to mediate the dispute, requested LBHI to engage in settlement discussions regarding the allowed amount of its claims and offered to negotiate a reserve reduction. LBHI simple refuses to engage.

22. Absent cooperation, therefore, Stonehill is required to litigate the validity of its claims and believes that doing so would result in maximizing the recoveries of all creditors of the Chapter 11 Estates. In fact, the sooner LBHI challenges Stonehill's claims, the sooner creditors, including Stonehill, will receive the distributions they deserve in this case. The forgoing notwithstanding, Stonehill is amenable to setting the reserve for the Stonehill Claims at $200 million, reflecting the actual aggregate amount of the Stonehill Claims so that duplicative reserves are not required (provided that the reserve is established in a manner that protects the collectability of the Stonehill Claims).

## Conclusion

Stonehill respectfully requests that the Court deny the Motion, or alternatively set the reserve for the Stonehill Claims at $200 million and direct LBHI to expeditiously file objections to Stonehill's Claims, and grant Stonehill such other and further relief as is just.

Dated: New York, New York
February 27, 2014

                                               DECHERT LLP

                                               By:    */s/ Allan S. Brilliant*
                                                             Allan S. Brilliant

                                             1095 Avenue of the Americas
                                             New York, New York  10036
                                             Tel. (212) 698-3500
                                             Fax. (212) 698-3599

                                             *Attorneys for Stonehill Institutional*
                                             *Partners, LP and Stonehill Offshore*
                                             *Partners Limited*

# CERTIFICATE OF SERVICE

I, Katarina McClellan, hereby certify that on February 27, 2014, I caused a true and correct copy of the foregoing Stonehill's Objection to the Plan Administrator's Motion to Establish Single Reserve for Stonehill Claims, to be served via First Class Mail, upon:

Garret Fail, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

_____
Katarina McClellan