Ms. Tamia Allen
3661 Monticello St
Douglasville, GA 30135

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

FRANKLIN AMERICAN MORTGAGE COMPANY

       Debtor.

Adv. Case No.: _____

TAMIA ALLEN, PRO SE

Case No: 08-BK-13555

vs.

FRANKLIN AMERICAN MORTGAGE COMPANY,

AND

GREEN TREE SERVICING LLC

AND

BANK OF AMERICA N.A.

AND

MORTGAGE ELECTRONIC REG. (MERS)

AND

FANNIE MAE

AND

MCCALLA RAYMER LLC

       Defendant

RECEIVED
FEB 2 6 2014
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 1

Tamia Allen, pro se for her verified complaint against Franklin American Mortgage Company, Green Tree

Servicing LLC, Bank of America, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae and

McCalla Raymer LLC, hereby alleges as follows:

**Preliminary Statement**

1. This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages, including a demand for a complete accounting of Franklin American Mortgage Company's account with the Plaintiff and proof of authority to transfer Plaintiff's mortgage while Franklin American Mortgage Company was in Chapter 11 Bankruptcy.

2. Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 (the "FCA"), Plaintiff seeks to recover, on behalf of herself damages and civil penalties arising from the illegal sale by Defendants of Plaintiff Mortgage/Note.

3. Defendant Green Tree Servicing LLC has filed an Illegal Foreclosure with a pending sale of March 4th, 2014.

4. Given the current insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief, Plaintiff Allen will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of Insolvency, an of wrongful foreclosure by the Defendants.

5. Plaintiff conducted her own investigations in furtherance of a False Claims Act qui tam action and found that the Defendants pursued and continue to pursue foreclosure actions using false and fabricated documents, particularly mortgage assignments. The Defendants used these fraudulent mortgage assignments to conceal that there trusts are missing critical documents, namely, the mortgage assignments that were required to have been delivered to the Trusts at inception of the trust.

6. Without lawfully executed mortgage assignments, the value of the mortgages and notes held by the trusts is impaired because effective assignments are necessary for Defendants to foreclose on its assets in the event of mortgage defaults. When the Defendants discovered that the Plaintiff's Mortgage Assignments were missing,

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 2

the Defendants, together with an associated servicing company (Green Tree), devised and operated a scheme to replace the Plaintiff's missing assignments with fraudulent, fabricate assignments.

7. The purpose of this scheme was to meet the evidentiary requirements imposed by courts in the foreclosure cases, and to conceal from Trust Shareholders the true, impaired value of the assets of each of the trusts, crippled by the missing assignments and related documents.

8. The fraud carried out by the Defendants in this case includes, inter alia:

a. Mortgage Assignments prepared and signed by individuals as corporate officers of Franklin American Mortgage Company while still in Chapter 11 Bankruptcy;

b. Mortgage Assignments prepared on behalf of grantor who had never themselves acquired ownership of the mortgages and notes by a valid transfer, including numerous such assignments were the grantor was identified as "Bogus Assignee for Intervening Assignments;" and

c. Mortgage Assignments notarized by notaries who never witnessed the signatures that they notarized.

d. Mortgage Assignments with forged signatures of the individuals signing on behalf of the grantors, and forged signatures of the witnesses and the notaries;

e. Mortgage Assignments with signature of the individuals signing as corporate officers for banks, and mortgage companies that never employed them;

## JURISDICTION AND VENUE

9. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

10. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2) and (b)(4).

11. Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3),(b)(2) and (b)(4).

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 3

12. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant to 15 U.S.C. §78fff(b).

13. This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in the Southern District of Georgia.

14. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in this court.

15. Plaintiff Tamia Allen, pro se, brings this action on behalf of herself pursuant to 31 U.S.C. §§ 3729-3733. Plaintiff is the owner of 3481 Lakeside Drive #1508 Atlanta, GA 30326.

**FIRST CAUSE OF ACTION**

**(Request for Immediate Injunctive Relief)**

16. Plaintiff Tamia Allen repeats and realleges the allegations set forth in paragraphs 1 – 15 as if fully set forth herein.

17. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief (i) to stop non-judicial foreclosure of here home.(ii) enjoining the Defendants from transferring the security to any third party while this case is pending in the Bankruptcy Court.

18. Green Tree Servicing does not have a legal right to college are demand payment from the Plaintiff.

19. In January 2014, without any prior notice, a real property foreclosure action was filed against Plaintiff, titled, GREEN TREE SERVICING and McCalla Raymer LLC to foreclose on the Property.

20. This action was commenced by Green Tree Servicing. Fannie Mae is the alleged owner of the note originally made to Franklin American Mortgage Company.

21. Green Tree Servicing lacks standing because they do not possess any title to Plaintiff's note or mortgage.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 4

22. Plaintiff discovered the forgery upon inspection and analysis and through her own investigations. First, the document, entitled, "Assignment of Security Deed bears an execution date of September 26, 2012, moths after the filing of Plaintiff's Foreclosure. Two individuals, Ashley Braband, Derrick White each, signed as Assistant Secretary. Two individuals, France Marie Moss and Wendy Ramirez, signed as witness. Based on information and belief Ashley Braband, and Derrick White were note employed by Franklin American Mortgage. The purported signatures of Ashley Braband and Derrick White on the Assignment submitted in Plaintiff's foreclosure were likely made by various other people, as Plaintiff's comparison of their various forged mortgage assignment makes clear. The purported witness signatures were also forged, Plaintiff analysis shows.

### A. DEFENDANTS'S USE OF FAKE DOCUMENTS, FALSE OFFICER TITLES, AND FORGED SIGNATURES VIOLATES THE FEDERAL LENDING LAWS, AND STATE MORTGAGE FRAUD AND NOTARY FRAUD LAWS.

23. Affixing or submitting false signatures on a mortgage document is a violation of federal and state law, and those signatures are without authority to complete the transaction.

24. The signatures contained on the assignments filed in Plaintiff's Foreclosure are fraudulent, in violation of Federal and Georgia law, and do not serve to assign the note and mortgage to Fannie Mae or Green Tree Servicing LLC. Therefore, Green Tree Servicing LLC lacks any authority to act on Plaintiff's note and mortgage, is not a true party in interest in Plaintiff's Foreclosure, and cannot prosecute the foreclosure.

25. Defendants created mortgage-backed securities lacking lawful assignments of the Plaintiff Note and Mortgage to the alleged Trusts, and Green Tree Servicing LLC, sign using false corporate offer titles, false dates of assignment, and forged signatures.

26. By 2009, at the latest, Bank of America and Green Tree Servicing LLC knew, or reasonably should have known, that the requisite mortgage assignments were not signed by the Trustee of the Bankruptcy Court and therefore making them invalid.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 5

**CAUSES OF ACTION**

**COUNT**

**(Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 1 of this Complaint.

28. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729 et seq., as amended.

29. Ass alleged in paragraphs 1 – 28, the Defendants created, sold or participated in mortgage-backed securities.

30. The Defendants falsely represented that Green Tree Servicing LLC held good title to the Plaintiff mortgages and note while Defendant Franklin American Mortgage Company had filed for Chapter 11 protection in November 2008.

31. By virtue of the wrongful conduct alleged here including, but not limited to, the false signatures used in manufactured mortgage assignments, Plaintiff Mortgage-backed securities sold to Fannie Mae, and MERS violated state and federal laws and furthered an effort to transfer impaired securities to the Treasury or other government funded entity.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants, ordering that:

a.    Defendants cease and desist from conducting an illegal foreclosure on Plaintiff Condo.

b.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. 3729;

c.    Defendants pay an amount equal to three times the amount of damages the Plaintiff have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $50,000 and not more than $100,000 for each violation of 31 U.S.C. § 3729

d.    Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

e.    Plaintiff be awarded all costs of this action pursuant to 31 U.S.C. § 3730(s)

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

f.  Plaintiff request for a Rule 2004 Examinations be granted.

g.  Recall all Mortgage Assignments; and declare the Assignment from Mortgage Electronic Registration Systems void and of no authority.

h.  The Plaintiff be granted all such other relief as the Court deems just and proper.

REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

TAMIA ALLEN, PRO SE, BY AGENT

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 7

B 250A
(8/96)

# United States Bankruptcy Court

### SOUTHERN District Of  NEW YORK

In re  FRANKLIN AMERICAN MORTGAGE CO ,  )
_____  )    Case No. 08-BK135
       Debtor  )
         )    Chapter 11
TAMIA ALLEN  )
_____ ,  )
       Plaintiff  )
         )
  v.  )
    GREEN TREE SERVICING LLC ,  )    Adv. Proc. No. _____
       Defendant  )

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | ONE BOWLING GREEN<br>NEW YORK, NY 10004-1408 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | 3661 MONTICELLO ST<br>DOUGLASVILLE GA 30135 |
|---|---|
| TAMIA ALLEN | |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____
          *Clerk of the Bankruptcy Court*

_____  By:_____
    Date                  Deputy Clerk

## CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
(name)

service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was made
_____ by:
(date)

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]                                                           (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____                    _____
Date                                                        Signature

| Print Name | | |
| Business Address | | |
| City | State | Zip |

Ms. Tamia Allen
3661 Monticello St
Douglasville, GA 30135

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

FRANKLIN AMERICAN MORTGAGE COMPANY

       Debtor.

Adv. Case No.: _____

TAMIA ALLEN, PRO SE

Case No: 08-BK-13555

vs.

FRANKLIN AMERICAN MORTGAGE COMPANY,

AND

GREEN TREE SERVICING LLC

AND

BANK OF AMERICA N.A.

AND

MORTGAGE ELECTRONIC REG. (MERS)

AND

FANNIE MAE

AND

MCCALLA RAYMER LLC

       Defendant

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 1

Tamia Allen, pro se for her verified complaint against Franklin American Mortgage Company, Green Tree Servicing LLC, Bank of America, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae and McCalla Raymer LLC, hereby alleges as follows:

## Preliminary Statement

1. This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages, including a demand for a complete accounting of Franklin American Mortgage Company's account with the Plaintiff and proof of authority to transfer Plaintiff's mortgage while Franklin American Mortgage Company was in Chapter 11 Bankruptcy.

2. Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 (the "FCA"), Plaintiff seeks to recover, on behalf of herself damages and civil penalties arising from the illegal sale by Defendants of Plaintiff Mortgage/Note.

3. Defendant Green Tree Servicing LLC has filed an Illegal Foreclosure with a pending sale of March 4th, 2014.

4. Given the current insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief, Plaintiff Allen will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of Insolvency, an of wrongful foreclosure by the Defendants.

5. Plaintiff conducted her own investigations in furtherance of a False Claims Act qui tam action and found that the Defendants pursued and continue to pursue foreclosure actions using false and fabricated documents, particularly mortgage assignments. The Defendants used these fraudulent mortgage assignments to conceal that there trusts are missing critical documents, namely, the mortgage assignments that were required to have been delivered to the Trusts at inception of the trust.

6. Without lawfully executed mortgage assignments, the value of the mortgages and notes held by the trusts is impaired because effective assignments are necessary for Defendants to foreclose on its assets in the event of mortgage defaults. When the Defendants discovered that the Plaintiff's Mortgage Assignments were missing.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 2

1    the Defendants, together with an associated servicing company (Green Tree), devised and operated a scheme

2    to replace the Plaintiff's missing assignments with fraudulent, fabricate assignments.

3    7.   The purpose of this scheme was to meet the evidentiary requirements imposed by courts in the foreclosure

4    cases, and to conceal from Trust Shareholders the true, impaired value of the assets of each of the trusts,

5    crippled by the missing assignments and related documents.

6    8.   The fraud carried out by the Defendants in this case includes, inter alia:

7    a.   Mortgage Assignments prepared and signed by individuals as corporate officers of Franklin American

8    Mortgage Company while still in Chapter 11 Bankruptcy;

9    b.   Mortgage Assignments prepared on behalf of grantor who had never themselves acquired ownership of the

10    mortgages and notes by a valid transfer, including numerous such assignments were the grantor was

11    identified as "Bogus Assignee for Intervening Assignments;" and

12    c.   Mortgage Assignments notarized by notaries who never witnessed the signatures that they notarized.

13    d.   Mortgage Assignments with forged signatures of the individuals signing on behalf of the grantors, and forged

14    signatures of the witnesses and the notaries;

15    e.   Mortgage Assignments with signature of the individuals signing as corporate officers for banks, and

16    mortgage companies that never employed them;

17    **JURISDICTION AND VENUE**

18    9.   The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C.

19    § 3732.

20    10.  This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2)

21    and (b)(4).

22    11.  Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3),(b)(2) and

23    (b)(4).

24

25

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 3

12. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant to 15 U.S.C. §78fff(b).

13. This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in the Southern District of Georgia.

14. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in this court.

15. Plaintiff Tamia Allen, pro se, brings this action on behalf of herself pursuant to 31 U.S.C. §§ 3729-3733. Plaintiff is the owner of 3481 Lakeside Drive #1508 Atlanta, GA 30326.

**FIRST CAUSE OF ACTION**

**(Request for Immediate Injunctive Relief)**

16. Plaintiff Tamia Allen repeats and realleges the allegations set forth in paragraphs 1 – 15 as if fully set forth herein.

17. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief  (i) to stop non-judicial foreclosure of here home.(ii) enjoining the Defendants from transferring the security to any third party while this case is pending in the Bankruptcy Court.

18. Green Tree Servicing does not have a legal right to college are demand payment from the Plaintiff.

19. In January 2014, without any prior notice, a real property foreclosure action was filed against Plaintiff, titled, GREEN TREE SERVICING and McCalla Raymer LLC to foreclose on the Property.

20. This action was commenced by Green Tree Servicing.  Fannie Mae is the alleged owner of the note originally made to Franklin American Mortgage Company.

21. Green Tree Servicing lacks standing because they do not possess any title to Plaintiff's note or mortgage.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 4

22. Plaintiff discovered the forgery upon inspection and analysis and through her own investigations. First, the document, entitled, "Assignment of Security Deed bears an execution date of September 26, 2012, moths after the filing of Plaintiff's Foreclosure. Two individuals, Ashley Braband, Derrick White each, signed as Assistant Secretary. Two individuals, France Marie Moss and Wendy Ramirez, signed as witness. Based on information and belief Ashley Braband, and Derrick White were note employed by Franklin American Mortgage. The purported signatures of Ashley Braband and Derrick White on the Assignment submitted in Plaintiff's foreclosure were likely made by various other people, as Plaintiff's comparison of their various forged mortgage assignment makes clear. The purported witness signatures were also forged, Plaintiff analysis shows.

### A.  DEFENDANTS'S USE OF FAKE DOCUMENTS, FALSE OFFICER TITLES, AND FORGED SIGNATURES VIOLATES THE FEDERAL LENDING LAWS, AND STATE MORTGAGE FRAUD AND NOTARY FRAUD LAWS.

23. Affixing or submitting false signatures on a mortgage document is a violation of federal and state law, and those signatures are without authority to complete the transaction.

24. The signatures contained on the assignments filed in Plaintiff's Foreclosure are fraudulent, in violation of Federal and Georgia law, and do not serve to assign the note and mortgage to Fannie Mae or Green Tree Servicing LLC. Therefore, Green Tree Servicing LLC lacks any authority to act on Plaintiff's note and mortgage, is not a true party in interest in Plaintiff's Foreclosure, and cannot prosecute the foreclosure.

25. Defendants created mortgage-backed securities lacking lawful assignments of the Plaintiff Note and Mortgage to the alleged Trusts, and Green Tree Servicing LLC, sign using false corporate offer titles, false dates of assignment, and forged signatures.

26. By 2009, at the latest, Bank of America and Green Tree Servicing LLC knew, or reasonably should have known, that the requisite mortgage assignments were not signed by the Trustee of the Bankruptcy Court and therefore making them invalid.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 5

### CAUSES OF ACTION

### COUNT

### <u>(Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)</u>

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 1 of this Complaint.

28. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729 et seq., as amended.

29. Ass alleged in paragraphs 1 – 28, the Defendants created, sold or participated in mortgage-backed securities.

30. The Defendants falsely represented that Green Tree Servicing LLC held good title to the Plaintiff mortgages and note while Defendant Franklin American Mortgage Company had filed for Chapter 11 protection in November 2008.

31. By virtue of the wrongful conduct alleged here including, but not limited to, the false signatures used in manufactured mortgage assignments, Plaintiff Mortgage-backed securities sold to Fannie Mae, and MERS violated state and federal laws and furthered an effort to transfer impaired securities to the Treasury or other government funded entity.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants, ordering that:

a.   Defendants cease and desist from conducting an illegal foreclosure on Plaintiff Condo.

b.   Defendants cease and desist from violating the False Claims Act, 31 U.S.C. 3729;

c.   Defendants pay an amount equal to three times the amount of damages the Plaintiff have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $50,000 and not more than $100,000 for each violation of 31 U.S.C. § 3729

d.   Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

e.   Plaintiff be awarded all costs of this action pursuant to 31 U.S.C. § 3730(s)

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

f.   Plaintiff request for a Rule 2004 Examinations be granted.

g.   Recall all Mortgage Assignments; and declare the Assignment from Mortgage Electronic Registration Systems void and of no authority.

h.   The Plaintiff be granted all such other relief as the Court deems just and proper.

REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

TAMIA ALLEN, PRO SE, BY AGENT

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 7

B 250A
(8/96)

# United States Bankruptcy Court

____SOUTHERN District Of__ NEW YORK ____

In re   FRANKLIN AMERICAN MORTGAGE CO ___,   )
_____        )   Case No._ 08-BK135 ___
                 Debtor                          )
                                                 )   Chapter 11 _____
        TAMIA ALLEN _____,   )
_____        )
                 Plaintiff                       )
                                                 )
        v.                                       )
        MCCALLA RAYMER LLC _____,       )
_____        )   Adv. Proc. No. _____
                 Defendant                       )

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | ONE BOWLING GREEN<br>NEW YORK, NY 10004-1408 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | 3661 MONTICELLO ST<br>DOUGLASVILLE GA 30135 |
|---|---|
| TAMIA ALLEN | |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____
                        *Clerk of the Bankruptcy Court*

_____    By:_____
        Date                           Deputy Clerk

# CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
    (name)

service of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made.  I further certify that the service of this summons and a copy of the complaint was made
_____ by:
    (date)

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:



☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:



☐ Residence Service: By leaving the process with the following adult at:



☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed
to the following officer of the defendant at:



☐ Publication: The defendant was served as follows: [Describe briefly]



☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]                                                 (name of state)



Under penalty of perjury, I declare that the foregoing is true and correct.



_____          _____
        Date                                   Signature

| | | |
|---|---|---|
| Print Name | | |
| Business Address | | |
| City | State | Zip |

1   Ms. Tamia Allen
    3661 Monticello St
2   Douglasville, GA 30135

3            IN THE UNITED STATES BANKRUPTCY COURT

4          FOR THE SOUTHERN DISTRICT OF NEW YORK

5   IN RE:

6   FRANKLIN AMERICAN MORTGAGE COMPANY

7          Debtor.              Adv. Case No.: _____

8

9   TAMIA ALLEN, PRO SE            Case No: 08-BK-13555

10

11   vs.

12   FRANKLIN AMERICAN MORTGAGE COMPANY,

13   AND

14   GREEN TREE SERVICING LLC

15   AND

16   BANK OF AMERICA N.A.

17   AND

18   MORTGAGE ELECTRONIC REG. (MERS)

19   AND

20   FANNIE MAE

21   AND

22   MCCALLA RAYMER LLC

23          Defendant

24

25       VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
        DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 1

Tamia Allen, pro se for her verified complaint against Franklin American Mortgage Company, Green Tree

Servicing LLC, Bank of America, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae and

McCalla Raymer LLC, hereby alleges as follows:

### Preliminary Statement

1.  This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages,

    including a demand for a complete accounting of Franklin American Mortgage Company's account with the

    Plaintiff and proof of authority to transfer Plaintiff's mortgage while Franklin American Mortgage Company

    was in Chapter 11 Bankruptcy.

2.  Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 (the "FCA"), Plaintiff seeks to recover, on

    behalf of herself damages and civil penalties arising from the illegal sale by Defendants of Plaintiff

    Mortgage/Note.

3.  Defendant Green Tree Servicing LLC has filed an Illegal Foreclosure with a pending sale of March 4th, 2014.

4.  Given the current insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief,

    Plaintiff Allen will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of

    Insolvency, an of wrongful foreclosure by the Defendants.

5.  Plaintiff conducted her own investigations in furtherance of a False Claims Act qui tam action and found that

    the Defendants pursued and continue to pursue foreclosure actions using false and fabricated documents,

    particularly mortgage assignments. The Defendants used these fraudulent mortgage assignments to conceal

    that there trusts are missing critical documents, namely, the mortgage assignments that were required to have

    been delivered to the Trusts at inception of the trust.

6.  Without lawfully executed mortgage assignments, the value of the mortgages and notes held by the trusts is

    impaired because effective assignments are necessary for Defendants to foreclose on its assets in the event of

    mortgage defaults. When the Defendants discovered that the Plaintiff's Mortgage Assignments were missing,

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 2

the Defendants, together with an associated servicing company (Green Tree), devised and operated a scheme to replace the Plaintiff's missing assignments with fraudulent, fabricate assignments.

7. The purpose of this scheme was to meet the evidentiary requirements imposed by courts in the foreclosure cases, and to conceal from Trust Shareholders the true, impaired value of the assets of each of the trusts, crippled by the missing assignments and related documents.

8. The fraud carried out by the Defendants in this case includes, inter alia:

a.  Mortgage Assignments prepared and signed by individuals as corporate officers of Franklin American Mortgage Company while still in Chapter 11 Bankruptcy;

b.  Mortgage Assignments prepared on behalf of grantor who had never themselves acquired ownership of the mortgages and notes by a valid transfer, including numerous such assignments were the grantor was identified as "Bogus Assignee for Intervening Assignments;" and

c.  Mortgage Assignments notarized by notaries who never witnessed the signatures that they notarized.

d.  Mortgage Assignments with forged signatures of the individuals signing on behalf of the grantors, and forged signatures of the witnesses and the notaries;

e.  Mortgage Assignments with signature of the individuals signing as corporate officers for banks, and mortgage companies that never employed them;

## JURISDICTION AND VENUE

9.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

10. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2) and (b)(4).

11. Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3),(b)(2) and (b)(4).

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 3

12. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant to 15 U.S.C. §78fff(b).

13. This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in the Southern District of Georgia.

14. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in this court.

15. Plaintiff Tamia Allen, pro se, brings this action on behalf of herself pursuant to 31 U.S.C. §§ 3729-3733. Plaintiff is the owner of 3481 Lakeside Drive #1508 Atlanta, GA 30326.

## FIRST CAUSE OF ACTION

### (Request for Immediate Injunctive Relief)

16. Plaintiff Tamia Allen repeats and realleges the allegations set forth in paragraphs 1 – 15 as if fully set forth herein.

17. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief (i) to stop non-judicial foreclosure of here home.(ii) enjoining the Defendants from transferring the security to any third party while this case is pending in the Bankruptcy Court.

18. Green Tree Servicing does not have a legal right to college are demand payment from the Plaintiff.

19. In January 2014, without any prior notice, a real property foreclosure action was filed against Plaintiff, titled, GREEN TREE SERVICING and McCalla Raymer LLC to foreclose on the Property.

20. This action was commenced by Green Tree Servicing. Fannie Mae is the alleged owner of the note originally made to Franklin American Mortgage Company.

21. Green Tree Servicing lacks standing because they do not possess any title to Plaintiff's note or mortgage.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 4

22. Plaintiff discovered the forgery upon inspection and analysis and through her own investigations. First, the document, entitled, "Assignment of Security Deed bears an execution date of September 26, 2012, moths after the filing of Plaintiff's Foreclosure. Two individuals, Ashley Braband, Derrick White each, signed as Assistant Secretary. Two individuals, France Marie Moss and Wendy Ramirez, signed as witness. Based on information and belief Ashley Braband, and Derrick White were note employed by Franklin American Mortgage. The purported signatures of Ashley Braband and Derrick White on the Assignment submitted in Plaintiff's foreclosure were likely made by various other people, as Plaintiff's comparison of their various forged mortgage assignment makes clear. The purported witness signatures were also forged, Plaintiff analysis shows.

**A.   DEFENDANTS'S USE OF FAKE DOCUMENTS, FALSE OFFICER TITLES, AND FORGED SIGNATURES VIOLATES THE FEDERAL LENDING LAWS, AND STATE MORTGAGE FRAUD AND NOTARY FRAUD LAWS.**

23. Affixing or submitting false signatures on a mortgage document is a violation of federal and state law, and those signatures are without authority to complete the transaction.

24. The signatures contained on the assignments filed in Plaintiff's Foreclosure are fraudulent, in violation of Federal and Georgia law, and do not serve to assign the note and mortgage to Fannie Mae or Green Tree Servicing LLC. Therefore, Green Tree Servicing LLC lacks any authority to act on Plaintiff's note and mortgage, is not a true party in interest in Plaintiff's Foreclosure, and cannot prosecute the foreclosure.

25. Defendants created mortgage-backed securities lacking lawful assignments of the Plaintiff Note and Mortgage to the alleged Trusts, and Green Tree Servicing LLC, sign using false corporate offer titles, false dates of assignment, and forged signatures.

26. By 2009, at the latest, Bank of America and Green Tree Servicing LLC knew, or reasonably should have known, that the requisite mortgage assignments were not signed by the Trustee of the Bankruptcy Court and therefore making them invalid.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 5

## CAUSES OF ACTION

## COUNT

### (Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 1 of this Complaint.

28. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729 et seq., as amended.

29. Ass alleged in paragraphs 1 – 28, the Defendants created, sold or participated in mortgage-backed securities.

30. The Defendants falsely represented that Green Tree Servicing LLC held good title to the Plaintiff mortgages and note while Defendant Franklin American Mortgage Company had filed for Chapter 11 protection in November 2008.

31. By virtue of the wrongful conduct alleged here including, but not limited to, the false signatures used in manufactured mortgage assignments, Plaintiff Mortgage-backed securities sold to Fannie Mae, and MERS violated state and federal laws and furthered an effort to transfer impaired securities to the Treasury or other government funded entity.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants, ordering that:

a.    Defendants cease and desist from conducting an illegal foreclosure on Plaintiff Condo.

b.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. 3729;

c.    Defendants pay an amount equal to three times the amount of damages the Plaintiff have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $50,000 and not more than $100,000 for each violation of 31 U.S.C. § 3729

d.    Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

e.    Plaintiff be awarded all costs of this action pursuant to 31 U.S.C. § 3730(s)

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

f.  Plaintiff request for a Rule 2004 Examinations be granted.

g.  Recall all Mortgage Assignments; and declare the Assignment from Mortgage Electronic Registration Systems void and of no authority.

h.  The Plaintiff be granted all such other relief as the Court deems just and proper.

REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

TAMIA ALLEN, PRO SE, BY AGENT

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 7

B 250A
(8/96)

# United States Bankruptcy Court

## SOUTHERI District Of   NEW YORK

In re   FRANKLIN AMERICAN MORTGAGE CO   ,   )
               Debtor   )   Case No.  08-BK135
                  )
    TAMIA ALLEN   ,   )   Chapter 11
               Plaintiff   )
                  )
    v.   )
    MORTGAGE ELECTRONIC REG   ,   )   Adv. Proc. No. _____
               Defendant   )

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | ONE BOWLING GREEN<br>NEW YORK, NY 10004-1408 |
| --- | --- |
| | |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | 3661 MONTICELLO ST<br>DOUGLASVILLE GA 30135 |
| --- | --- |
| TAMIA ALLEN | |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____
*Clerk of the Bankruptcy Court*

_____    By:_____
    Date                     Deputy Clerk

# CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
               (name)

service of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made. I further certify that the service of this summons and a copy of the complaint was made
_____ by:
   (date)

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:




☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:




☐ Residence Service: By leaving the process with the following adult at:




☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed
to the following officer of the defendant at:




☐ Publication: The defendant was served as follows: [Describe briefly]




☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]                                  (name of state)



Under penalty of perjury, I declare that the foregoing is true and correct.



_____          _____
       Date                                      Signature

| Print Name | | |
|---|---|---|
| Business Address | | |
| City | State | Zip |

1 | Ms. Tamia Allen
   | 3661 Monticello St
2 | Douglasville, GA 30135

3 | IN THE UNITED STATES BANKRUPTCY COURT

4 | FOR THE SOUTHERN DISTRICT OF NEW YORK

5 | IN RE:

6 | FRANKLIN AMERICAN MORTGAGE COMPANY

7 | Debtor.                                    Adv. Case No.: _____

8 |

9 | TAMIA ALLEN, PRO SE                        Case No: 08-BK-13555

10 |

11 | vs.

12 | FRANKLIN AMERICAN MORTGAGE COMPANY,

13 | AND

14 | GREEN TREE SERVICING LLC

15 | AND

16 | BANK OF AMERICA N.A.

17 | AND

18 | MORTGAGE ELECTRONIC REG. (MERS)

19 | AND

20 | FANNIE MAE

21 | AND

22 | MCCALLA RAYMER LLC

23 | Defendant

24 |

25 |

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 1

1    Tamia Allen, pro se for her verified complaint against Franklin American Mortgage Company, Green Tree

2    Servicing LLC, Bank of America, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae and

3    McCalla Raymer LLC, hereby alleges as follows:

4                                **Preliminary Statement**

5    1.   This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages,

6         including a demand for a complete accounting of Franklin American Mortgage Company's account with the

7         Plaintiff and proof of authority to transfer Plaintiff's mortgage while Franklin American Mortgage Company

8         was in Chapter 11 Bankruptcy.

9    2.   Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 (the "FCA"), Plaintiff seeks to recover, on

10        behalf of herself damages and civil penalties arising from the illegal sale by Defendants of Plaintiff

11        Mortgage/Note.

12   3.   Defendant Green Tree Servicing LLC has filed an Illegal Foreclosure with a pending sale of March 4th, 2014.

13   4.   Given the current insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief,

14        Plaintiff Allen will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of

15        Insolvency, an of wrongful foreclosure by the Defendants.

16   5.   Plaintiff conducted her own investigations in furtherance of a False Claims Act qui tam action and found that

17        the Defendants pursued and continue to pursue foreclosure actions using false and fabricated documents,

18        particularly mortgage assignments.  The Defendants used these fraudulent mortgage assignments to conceal

19        that there trusts are missing critical documents, namely, the mortgage assignments that were required to have

20        been delivered to the Trusts at inception of the trust.

21   6.   Without lawfully executed mortgage assignments, the value of the mortgages and notes held by the trusts is

22        impaired because effective assignments are necessary for Defendants to foreclose on its assets in the event of

23        mortgage defaults.  When the Defendants discovered that the Plaintiff's Mortgage Assignments were missing,

24

25
                     VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
                     DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 2

the Defendants, together with an associated servicing company (Green Tree), devised and operated a scheme to replace the Plaintiff's missing assignments with fraudulent, fabricate assignments.

7. The purpose of this scheme was to meet the evidentiary requirements imposed by courts in the foreclosure cases, and to conceal from Trust Shareholders the true, impaired value of the assets of each of the trusts, crippled by the missing assignments and related documents.

8. The fraud carried out by the Defendants in this case includes, inter alia:

a. Mortgage Assignments prepared and signed by individuals as corporate officers of Franklin American Mortgage Company while still in Chapter 11 Bankruptcy;

b. Mortgage Assignments prepared on behalf of grantor who had never themselves acquired ownership of the mortgages and notes by a valid transfer, including numerous such assignments were the grantor was identified as "Bogus Assignee for Intervening Assignments;" and

c. Mortgage Assignments notarized by notaries who never witnessed the signatures that they notarized.

d. Mortgage Assignments with forged signatures of the individuals signing on behalf of the grantors, and forged signatures of the witnesses and the notaries;

e. Mortgage Assignments with signature of the individuals signing as corporate officers for banks, and mortgage companies that never employed them;

## JURISDICTION AND VENUE

9. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

10. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2) and (b)(4).

11. Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3),(b)(2) and (b)(4).

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 3

12. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant to 15 U.S.C. §78fff(b).

13. This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in the Southern District of Georgia.

14. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in this court.

15. Plaintiff Tamia Allen, pro se, brings this action on behalf of herself pursuant to 31 U.S.C. §§ 3729-3733. Plaintiff is the owner of 3481 Lakeside Drive #1508 Atlanta, GA 30326.

### FIRST CAUSE OF ACTION

### (Request for Immediate Injunctive Relief)

16. Plaintiff Tamia Allen repeats and realleges the allegations set forth in paragraphs 1 – 15 as if fully set forth herein.

17. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief (i) to stop non-judicial foreclosure of here home.(ii) enjoining the Defendants from transferring the security to any third party while this case is pending in the Bankruptcy Court.

18. Green Tree Servicing does not have a legal right to college are demand payment from the Plaintiff.

19. In January 2014, without any prior notice, a real property foreclosure action was filed against Plaintiff, titled, GREEN TREE SERVICING and McCalla Raymer LLC to foreclose on the Property.

20. This action was commenced by Green Tree Servicing. Fannie Mae is the alleged owner of the note originally made to Franklin American Mortgage Company.

21. Green Tree Servicing lacks standing because they do not possess any title to Plaintiff's note or mortgage.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 4

22. Plaintiff discovered the forgery upon inspection and analysis and through her own investigations. First, the document, entitled, "Assignment of Security Deed bears an execution date of September 26, 2012, moths after the filing of Plaintiff's Foreclosure. Two individuals, Ashley Braband, Derrick White each, signed as Assistant Secretary. Two individuals, France Marie Moss and Wendy Ramirez, signed as witness. Based on information and belief Ashley Braband, and Derrick White were note employed by Franklin American Mortgage. The purported signatures of Ashley Braband and Derrick White on the Assignment submitted in Plaintiff's foreclosure were likely made by various other people, as Plaintiff's comparison of their various forged mortgage assignment makes clear. The purported witness signatures were also forged, Plaintiff analysis shows.

A. **DEFENDANTS'S USE OF FAKE DOCUMENTS, FALSE OFFICER TITLES, AND FORGED SIGNATURES VIOLATES THE FEDERAL LENDING LAWS, AND STATE MORTGAGE FRAUD AND NOTARY FRAUD LAWS.**

23. Affixing or submitting false signatures on a mortgage document is a violation of federal and state law, and those signatures are without authority to complete the transaction.

24. The signatures contained on the assignments filed in Plaintiff's Foreclosure are fraudulent, in violation of Federal and Georgia law, and do not serve to assign the note and mortgage to Fannie Mae or Green Tree Servicing LLC. Therefore, Green Tree Servicing LLC lacks any authority to act on Plaintiff's note and mortgage, is not a true party in interest in Plaintiff's Foreclosure, and cannot prosecute the foreclosure.

25. Defendants created mortgage-backed securities lacking lawful assignments of the Plaintiff Note and Mortgage to the alleged Trusts, and Green Tree Servicing LLC, sign using false corporate offer titles, false dates of assignment, and forged signatures.

26. By 2009, at the latest, Bank of America and Green Tree Servicing LLC knew, or reasonably should have known, that the requisite mortgage assignments were not signed by the Trustee of the Bankruptcy Court and therefore making them invalid.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 5

**CAUSES OF ACTION**

**COUNT**

**(Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 1 of this Complaint.

28. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729 et seq., as amended.

29. Ass alleged in paragraphs 1 – 28, the Defendants created, sold or participated in mortgage-backed securities.

30. The Defendants falsely represented that Green Tree Servicing LLC held good title to the Plaintiff mortgages and note while Defendant Franklin American Mortgage Company had filed for Chapter 11 protection in November 2008.

31. By virtue of the wrongful conduct alleged here including, but not limited to, the false signatures used in manufactured mortgage assignments, Plaintiff Mortgage-backed securities sold to Fannie Mae, and MERS violated state and federal laws and furthered an effort to transfer impaired securities to the Treasury or other government funded entity.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants, ordering that:

a.    Defendants cease and desist from conducting an illegal foreclosure on Plaintiff Condo.

b.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. 3729;

c.    Defendants pay an amount equal to three times the amount of damages the Plaintiff have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $50,000 and not more than $100,000 for each violation of 31 U.S.C. § 3729

d.    Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

e.    Plaintiff be awarded all costs of this action pursuant to 31 U.S.C. § 3730(s)

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

f.   Plaintiff request for a Rule 2004 Examinations be granted.

g.   Recall all Mortgage Assignments; and declare the Assignment from Mortgage Electronic Registration Systems void and of no authority.

h.   The Plaintiff be granted all such other relief as the Court deems just and proper.

REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

TAMIA ALLEN, PRO SE, BY AGENT

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 7

B 250A
(8/96)

# United States Bankruptcy Court

### SOUTHERN District Of __NEW YORK__

In re __FRANKLIN AMERICAN MORTGAGE CO__ ,  )
              Debtor                )      Case No. __08-BK135__
                                      )
__TAMIA ALLEN__ ,  )      Chapter __11__
              Plaintiff             )
                                        )
      v.                            )
__FRANKLIN AMERICAN MORTGA__ ,  )      Adv. Proc. No. _____
             Defendant           )

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | ONE BOWLING GREEN<br>NEW YORK, NY 10004-1408 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | 3661 MONTICELLO ST<br>DOUGLASVILLE GA 30135 |
|---|---|
| TAMIA ALLEN | |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____
                    _Clerk of the Bankruptcy Court_

_____    By:_____
     Date                                  Deputy Clerk

## CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
(name)

service of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made. I further certify that the service of this summons and a copy of the complaint was made
_____ by:
(date)

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed
to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]
(name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____          _____
Date                                              Signature

| Print Name | | |
|---|---|---|
| Business Address | | |
| City | State | Zip |

Ms. Tamia Allen
3661 Monticello St
Douglasville, GA 30135

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

FRANKLIN AMERICAN MORTGAGE COMPANY

Debtor.                                    Adv. Case No.: _____

TAMIA ALLEN, PRO SE                        Case No: 08-BK-13555

vs.

FRANKLIN AMERICAN MORTGAGE COMPANY,

AND

GREEN TREE SERVICING LLC

AND

BANK OF AMERICA N.A.

AND

MORTGAGE ELECTRONIC REG. (MERS)

AND

FANNIE MAE

AND

MCCALLA RAYMER LLC

Defendant

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 1

Tamia Allen, pro se for her verified complaint against Franklin American Mortgage Company, Green Tree

Servicing LLC, Bank of America, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae and

McCalla Raymer LLC, hereby alleges as follows:

**Preliminary Statement**

1.  This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages,

    including a demand for a complete accounting of Franklin American Mortgage Company's account with the

    Plaintiff and proof of authority to transfer Plaintiff's mortgage while Franklin American Mortgage Company

    was in Chapter 11 Bankruptcy.

2.  Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 (the "FCA"), Plaintiff seeks to recover, on

    behalf of herself damages and civil penalties arising from the illegal sale by Defendants of Plaintiff

    Mortgage/Note.

3.  Defendant Green Tree Servicing LLC has filed an Illegal Foreclosure with a pending sale of March 4th, 2014.

4.  Given the current insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief,

    Plaintiff Allen will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of

    Insolvency, an of wrongful foreclosure by the Defendants.

5.  Plaintiff conducted her own investigations in furtherance of a False Claims Act qui tam action and found that

    the Defendants pursued and continue to pursue foreclosure actions using false and fabricated documents,

    particularly mortgage assignments. The Defendants used these fraudulent mortgage assignments to conceal

    that there trusts are missing critical documents, namely, the mortgage assignments that were required to have

    been delivered to the Trusts at inception of the trust.

6.  Without lawfully executed mortgage assignments, the value of the mortgages and notes held by the trusts is

    impaired because effective assignments are necessary for Defendants to foreclose on its assets in the event of

    mortgage defaults. When the Defendants discovered that the Plaintiff's Mortgage Assignments were missing,

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 2

the Defendants, together with an associated servicing company (Green Tree), devised and operated a scheme to replace the Plaintiff's missing assignments with fraudulent, fabricate assignments.

7.  The purpose of this scheme was to meet the evidentiary requirements imposed by courts in the foreclosure cases, and to conceal from Trust Shareholders the true, impaired value of the assets of each of the trusts, crippled by the missing assignments and related documents.

8.  The fraud carried out by the Defendants in this case includes, inter alia:

a.   Mortgage Assignments prepared and signed by individuals as corporate officers of Franklin American Mortgage Company while still in Chapter 11 Bankruptcy;

b.   Mortgage Assignments prepared on behalf of grantor who had never themselves acquired ownership of the mortgages and notes by a valid transfer, including numerous such assignments were the grantor was identified as "Bogus Assignee for Intervening Assignments;" and

c.   Mortgage Assignments notarized by notaries who never witnessed the signatures that they notarized.

d.   Mortgage Assignments with forged signatures of the individuals signing on behalf of the grantors, and forged signatures of the witnesses and the notaries;

e.   Mortgage Assignments with signature of the individuals signing as corporate officers for banks, and mortgage companies that never employed them;

## JURISDICTION AND VENUE

9.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

10. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2) and (b)(4).

11. Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3),(b)(2) and (b)(4).

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 3

12. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant to 15 U.S.C. §78fff(b).

13. This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in the Southern District of Georgia.

14. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of this lawsuit in this court.

15. Plaintiff Tamia Allen, pro se, brings this action on behalf of herself pursuant to 31 U.S.C. §§ 3729-3733. Plaintiff is the owner of 3481 Lakeside Drive #1508 Atlanta, GA 30326.

## FIRST CAUSE OF ACTION

### (Request for Immediate Injunctive Relief)

16. Plaintiff Tamia Allen repeats and realleges the allegations set forth in paragraphs 1 – 15 as if fully set forth herein.

17. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief (i) to stop non-judicial foreclosure of here home.(ii) enjoining the Defendants from transferring the security to any third party while this case is pending in the Bankruptcy Court.

18. Green Tree Servicing does not have a legal right to college are demand payment from the Plaintiff.

19. In January 2014, without any prior notice, a real property foreclosure action was filed against Plaintiff, titled, GREEN TREE SERVICING and McCalla Raymer LLC to foreclose on the Property.

20. This action was commenced by Green Tree Servicing. Fannie Mae is the alleged owner of the note originally made to Franklin American Mortgage Company.

21. Green Tree Servicing lacks standing because they do not possess any title to Plaintiff's note or mortgage.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 4

22. Plaintiff discovered the forgery upon inspection and analysis and through her own investigations. First, the document, entitled, "Assignment of Security Deed bears an execution date of September 26, 2012, moths after the filing of Plaintiff's Foreclosure. Two individuals, Ashley Braband, Derrick White each, signed as Assistant Secretary. Two individuals, France Marie Moss and Wendy Ramirez, signed as witness. Based on information and belief Ashley Braband, and Derrick White were note employed by Franklin American Mortgage. The purported signatures of Ashley Braband and Derrick White on the Assignment submitted in Plaintiff's foreclosure were likely made by various other people, as Plaintiff's comparison of their various forged mortgage assignment makes clear. The purported witness signatures were also forged, Plaintiff analysis shows.

A.  **DEFENDANTS'S USE OF FAKE DOCUMENTS, FALSE OFFICER TITLES, AND FORGED SIGNATURES VIOLATES THE FEDERAL LENDING LAWS, AND STATE MORTGAGE FRAUD AND NOTARY FRAUD LAWS.**

23. Affixing or submitting false signatures on a mortgage document is a violation of federal and state law, and those signatures are without authority to complete the transaction.

24. The signatures contained on the assignments filed in Plaintiff's Foreclosure are fraudulent, in violation of Federal and Georgia law, and do not serve to assign the note and mortgage to Fannie Mae or Green Tree Servicing LLC. Therefore, Green Tree Servicing LLC lacks any authority to act on Plaintiff's note and mortgage, is not a true party in interest in Plaintiff's Foreclosure, and cannot prosecute the foreclosure.

25. Defendants created mortgage-backed securities lacking lawful assignments of the Plaintiff Note and Mortgage to the alleged Trusts, and Green Tree Servicing LLC, sign using false corporate offer titles, false dates of assignment, and forged signatures.

26. By 2009, at the latest, Bank of America and Green Tree Servicing LLC knew, or reasonably should have known, that the requisite mortgage assignments were not signed by the Trustee of the Bankruptcy Court and therefore making them invalid.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 5

**CAUSES OF ACTION**

**COUNT**

**(Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 1 of this Complaint.

28. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729 et seq., as amended.

29. Ass alleged in paragraphs 1 – 28, the Defendants created, sold or participated in mortgage-backed securities.

30. The Defendants falsely represented that Green Tree Servicing LLC held good title to the Plaintiff mortgages and note while Defendant Franklin American Mortgage Company had filed for Chapter 11 protection in November 2008.

31. By virtue of the wrongful conduct alleged here including, but not limited to, the false signatures used in manufactured mortgage assignments, Plaintiff Mortgage-backed securities sold to Fannie Mae, and MERS violated state and federal laws and furthered an effort to transfer impaired securities to the Treasury or other government funded entity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered against Defendants, ordering that:

a.   Defendants cease and desist from conducting an illegal foreclosure on Plaintiff Condo.

b.   Defendants cease and desist from violating the False Claims Act, 31 U.S.C. 3729;

c.   Defendants pay an amount equal to three times the amount of damages the Plaintiff have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $50,000 and not more than $100,000 for each violation of 31 U.S.C. § 3729

d.   Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

e.   Plaintiff be awarded all costs of this action pursuant to 31 U.S.C. § 3730(s)

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

f.   Plaintiff request for a Rule 2004 Examinations be granted.

g.   Recall all Mortgage Assignments; and declare the Assignment from Mortgage Electronic Registration Systems void and of no authority.

h.   The Plaintiff be granted all such other relief as the Court deems just and proper.

REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

TAMPA ALLEN, PRO SE, BY AGENT

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 7

B 250A
(8/96)

# United States Bankruptcy Court

### _____ SOUTHERN District Of __NEW YORK__

In re   FRANKLIN AMERICAN MORTGAGE CO , )
                  Debtor                         )   Case No. __08-BK135__
                                                 )
        TAMIA ALLEN                          ,  )   Chapter 11
                  Plaintiff                      )
                                                 )
        v.                                       )
        FANNIE MAE                           ,  )   Adv. Proc. No. _____
                  Defendant                      )


## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | ONE BOWLING GREEN
NEW YORK, NY 10004-1408 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | 3661 MONTICELLO ST
DOUGLASVILLE GA 30135 |
|---|---|
| TAMIA ALLEN | |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____
            _Clerk of the Bankruptcy Court_

_____    By:_____
            Date                              Deputy Clerk

## CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
                    (name)
service of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made.  I further certify that the service of this summons and a copy of the complaint was made
_____ by:
          (date)

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:


☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:


☐ Residence Service: By leaving the process with the following adult at:


☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed
to the following officer of the defendant at:


☐ Publication: The defendant was served as follows: [Describe briefly]


☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]                                                                    (name of state)


Under penalty of perjury, I declare that the foregoing is true and correct.


_____               _____
          Date                                                         Signature

| Print Name | | |
|---|---|---|
| Business Address | | |
| City | State | Zip |

1    Ms. Tamia Allen
     3661 Monticello St
2    Douglasville, GA 30135

3                        IN THE UNITED STATES BANKRUPTCY COURT

4                        FOR THE SOUTHERN DISTRICT OF NEW YORK

5    IN RE:

6    FRANKLIN AMERICAN MORTGAGE COMPANY

7              Debtor.                        Adv. Case No.: _____

8

9    TAMIA ALLEN, PRO SE                      Case No: 08-BK-13555

10

11   vs.

12   FRANKLIN AMERICAN MORTGAGE COMPANY,

13   AND

14   GREEN TREE SERVICING LLC

15   AND

16   BANK OF AMERICA N.A.

17   AND

18   MORTGAGE ELECTRONIC REG. (MERS)

19   AND

20   FANNIE MAE

21   AND

22   MCCALLA RAYMER LLC

23              Defendant

24

25
                     VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
               DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 1

1   Tamia Allen, pro se for her verified complaint against Franklin American Mortgage Company, Green Tree

2   Servicing LLC, Bank of America, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae and

3   McCalla Raymer LLC, hereby alleges as follows:

4                                              **Preliminary Statement**

5   1.  This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages,

6       including a demand for a complete accounting of Franklin American Mortgage Company's account with the

7       Plaintiff and proof of authority to transfer Plaintiff's mortgage while Franklin American Mortgage Company

8       was in Chapter 11 Bankruptcy.

9   2.  Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 (the "FCA"), Plaintiff seeks to recover, on

10      behalf of herself damages and civil penalties arising from the illegal sale by Defendants of Plaintiff

11      Mortgage/Note.

12  3.  Defendant Green Tree Servicing LLC has filed an Illegal Foreclosure with a pending sale of March 4th, 2014.

13  4.  Given the current insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief,

14      Plaintiff Allen will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of

15      Insolvency, an of wrongful foreclosure by the Defendants.

16  5.  Plaintiff conducted her own investigations in furtherance of a False Claims Act qui tam action and found that

17      the Defendants pursued and continue to pursue foreclosure actions using false and fabricated documents,

18      particularly mortgage assignments.  The Defendants used these fraudulent mortgage assignments to conceal

19      that there trusts are missing critical documents, namely, the mortgage assignments that were required to have

20      been delivered to the Trusts at inception of the trust.

21  6.  Without lawfully executed mortgage assignments, the value of the mortgages and notes held by the trusts is

22      impaired because effective assignments are necessary for Defendants to foreclose on its assets in the event of

23      mortgage defaults.  When the Defendants discovered that the Plaintiff's Mortgage Assignments were missing,

24

25                         VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
                           DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 2

the Defendants, together with an associated servicing company (Green Tree), devised and operated a scheme to replace the Plaintiff's missing assignments with fraudulent, fabricate assignments.

7. The purpose of this scheme was to meet the evidentiary requirements imposed by courts in the foreclosure cases, and to conceal from Trust Shareholders the true, impaired value of the assets of each of the trusts, crippled by the missing assignments and related documents.

8. The fraud carried out by the Defendants in this case includes, inter alia:

a.   Mortgage Assignments prepared and signed by individuals as corporate officers of Franklin American Mortgage Company while still in Chapter 11 Bankruptcy;

b.   Mortgage Assignments prepared on behalf of grantor who had never themselves acquired ownership of the mortgages and notes by a valid transfer, including numerous such assignments were the grantor was identified as "Bogus Assignee for Intervening Assignments;" and

c.   Mortgage Assignments notarized by notaries who never witnessed the signatures that they notarized.

d.   Mortgage Assignments with forged signatures of the individuals signing on behalf of the grantors, and forged signatures of the witnesses and the notaries;

e.   Mortgage Assignments with signature of the individuals signing as corporate officers for banks, and mortgage companies that never employed them;

**JURISDICTION AND VENUE**

9.   The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

10. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2) and (b)(4).

11. Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3),(b)(2) and (b)(4).

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 3

12. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil

   Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant

   to 15 U.S.C. §78fff(b).

13. This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this

   action pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of

   this lawsuit in the Southern District of Georgia.

14. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that

   is the subject matter of this lawsuit in this court.

15. Plaintiff Tamia Allen, pro se, brings this action on behalf of herself pursuant to 31 U.S.C. §§ 3729-3733.

   Plaintiff is the owner of 3481 Lakeside Drive #1508 Atlanta, GA 30326.

### FIRST CAUSE OF ACTION

### (Request for Immediate Injunctive Relief)

16. Plaintiff Tamia Allen repeats and realleges the allegations set forth in paragraphs 1 – 15 as if fully set forth

   herein.

17. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief (i) to stop non-judicial foreclosure

   of here home.(ii) enjoining the Defendants from transferring the security to any third party while this case is

   pending in the Bankruptcy Court.

18. Green Tree Servicing does not have a legal right to college are demand payment from the Plaintiff.

19. In January 2014, without any prior notice, a real property foreclosure action was filed against Plaintiff, titled,

   GREEN TREE SERVICING and McCalla Raymer LLC to foreclose on the Property.

20. This action was commenced by Green Tree Servicing. Fannie Mae is the alleged owner of the note originally

   made to Franklin American Mortgage Company.

21. Green Tree Servicing lacks standing because they do not possess any title to Plaintiff's note or mortgage.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 4

22. Plaintiff discovered the forgery upon inspection and analysis and through her own investigations. First, the document, entitled, "Assignment of Security Deed bears an execution date of September 26, 2012, moths after the filing of Plaintiff's Foreclosure. Two individuals, Ashley Braband, Derrick White each, signed as Assistant Secretary. Two individuals, France Marie Moss and Wendy Ramirez, signed as witness. Based on information and belief Ashley Braband, and Derrick White were note employed by Franklin American Mortgage. The purported signatures of Ashley Braband and Derrick White on the Assignment submitted in Plaintiff's foreclosure were likely made by various other people, as Plaintiff's comparison of their various forged mortgage assignment makes clear. The purported witness signatures were also forged, Plaintiff analysis shows.

**A.  DEFENDANTS'S USE OF FAKE DOCUMENTS, FALSE OFFICER TITLES, AND FORGED SIGNATURES VIOLATES THE FEDERAL LENDING LAWS, AND STATE MORTGAGE FRAUD AND NOTARY FRAUD LAWS.**

23. Affixing or submitting false signatures on a mortgage document is a violation of federal and state law, and those signatures are without authority to complete the transaction.

24. The signatures contained on the assignments filed in Plaintiff's Foreclosure are fraudulent, in violation of Federal and Georgia law, and do not serve to assign the note and mortgage to Fannie Mae or Green Tree Servicing LLC. Therefore, Green Tree Servicing LLC lacks any authority to act on Plaintiff's note and mortgage, is not a true party in interest in Plaintiff's Foreclosure, and cannot prosecute the foreclosure.

25. Defendants created mortgage-backed securities lacking lawful assignments of the Plaintiff Note and Mortgage to the alleged Trusts, and Green Tree Servicing LLC, sign using false corporate offer titles, false dates of assignment, and forged signatures.

26. By 2009, at the latest, Bank of America and Green Tree Servicing LLC knew, or reasonably should have known, that the requisite mortgage assignments were not signed by the Trustee of the Bankruptcy Court and therefore making them invalid.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 5

## CAUSES OF ACTION

### COUNT

### (Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 1 of this Complaint.

28. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729 et seq., as amended.

29. Ass alleged in paragraphs 1 – 28, the Defendants created, sold or participated in mortgage-backed securities.

30. The Defendants falsely represented that Green Tree Servicing LLC held good title to the Plaintiff mortgages and note while Defendant Franklin American Mortgage Company had filed for Chapter 11 protection in November 2008.

31. By virtue of the wrongful conduct alleged here including, but not limited to, the false signatures used in manufactured mortgage assignments, Plaintiff Mortgage-backed securities sold to Fannie Mae, and MERS violated state and federal laws and furthered an effort to transfer impaired securities to the Treasury or other government funded entity.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants, ordering that:

a.   Defendants cease and desist from conducting an illegal foreclosure on Plaintiff Condo.

b.   Defendants cease and desist from violating the False Claims Act, 31 U.S.C. 3729;

c.   Defendants pay an amount equal to three times the amount of damages the Plaintiff have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $50,000 and not more than $100,000 for each violation of 31 U.S.C. § 3729

d.   Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

e.   Plaintiff be awarded all costs of this action pursuant to 31 U.S.C. § 3730(s)

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

f.   Plaintiff request for a Rule 2004 Examinations be granted.

g.   Recall all Mortgage Assignments; and declare the Assignment from Mortgage Electronic Registration Systems void and of no authority.

h.   The Plaintiff be granted all such other relief as the Court deems just and proper.

REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

TAMIA ALLEN, PRO SE, BY AGENT

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 7

B 250A
(8/96)

# United States Bankruptcy Court

### _____ SOUTHERN District Of__ NEW YORK _____

In re   FRANKLIN AMERICAN MORTGAGE CO   ,   )
                    Debtor                     )      Case No. 08-BK135
                                               )
                                               )      Chapter 11
        TAMIA ALLEN                     ,      )
                    Plaintiff                  )
                                               )
                                               )
        v.                                     )
        BANK OF AMERICA                 ,      )
                    Defendant                  )      Adv. Proc. No. _____

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of Clerk   ONE BOWLING GREEN
                   NEW YORK, NY 10004-1408

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney   3661 MONTICELLO ST
                                           DOUGLASVILLE GA 30135
TAMIA ALLEN

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____
_Clerk of the Bankruptcy Court_

_____   By:_____
        Date                        Deputy Clerk

## CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
                           (name)
service of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made.  I further certify that the service of this summons and a copy of the complaint was made
_____ by:
      (date)

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed
to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]
                                                 (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____      _____
        Date                                   Signature

| Print Name | | |
|---|---|---|
| Business Address | | |
| City | State | Zip |

1  Ms. Tamia Allen
   3661 Monticello St
2  Douglasville, GA 30135

3              IN THE UNITED STATES BANKRUPTCY COURT

4              FOR THE SOUTHERN DISTRICT OF NEW YORK

5  IN RE:

6  FRANKLIN AMERICAN MORTGAGE COMPANY

7         Debtor.                    Adv. Case No.: _____

8

9  TAMIA ALLEN, PRO SE              Case No: 08-BK-13555

10

11 vs.

12 FRANKLIN AMERICAN MORTGAGE COMPANY,

13 AND

14 GREEN TREE SERVICING LLC

15 AND

16 BANK OF AMERICA N.A.

17 AND

18 MORTGAGE ELECTRONIC REG. (MERS)

19 AND

20 FANNIE MAE

21 AND

22 MCCALLA RAYMER LLC

23         Defendant

24

25         VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
           DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 1

1    Tamia Allen, pro se for her verified complaint against Franklin American Mortgage Company, Green Tree

2    Servicing LLC, Bank of America, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae and

3    McCalla Raymer LLC, hereby alleges as follows:

4                                    **Preliminary Statement**

5    1.   This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages,

6         including a demand for a complete accounting of Franklin American Mortgage Company's account with the

7         Plaintiff and proof of authority to transfer Plaintiff's mortgage while Franklin American Mortgage Company

8         was in Chapter 11 Bankruptcy.

9    2.   Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 (the "FCA"), Plaintiff seeks to recover, on

10        behalf of herself damages and civil penalties arising from the illegal sale by Defendants of Plaintiff

11        Mortgage/Note.

12   3.   Defendant Green Tree Servicing LLC has filed an Illegal Foreclosure with a pending sale of March 4th, 2014.

13   4.   Given the current insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief,

14        Plaintiff Allen will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of

15        Insolvency, an of wrongful foreclosure by the Defendants.

16   5.   Plaintiff conducted her own investigations in furtherance of a False Claims Act qui tam action and found that

17        the Defendants pursued and continue to pursue foreclosure actions using false and fabricated documents,

18        particularly mortgage assignments.  The Defendants used these fraudulent mortgage assignments to conceal

19        that there trusts are missing critical documents, namely, the mortgage assignments that were required to have

20        been delivered to the Trusts at inception of the trust.

21   6.   Without lawfully executed mortgage assignments, the value of the mortgages and notes held by the trusts is

22        impaired because effective assignments are necessary for Defendants to foreclose on its assets in the event of

23        mortgage defaults.  When the Defendants discovered that the Plaintiff's Mortgage Assignments were missing,

24

25
                      VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
                      DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 2

the Defendants, together with an associated servicing company (Green Tree), devised and operated a scheme to replace the Plaintiff's missing assignments with fraudulent, fabricate assignments.

7.  The purpose of this scheme was to meet the evidentiary requirements imposed by courts in the foreclosure cases, and to conceal from Trust Shareholders the true, impaired value of the assets of each of the trusts, crippled by the missing assignments and related documents.

8.  The fraud carried out by the Defendants in this case includes, inter alia:

a.   Mortgage Assignments prepared and signed by individuals as corporate officers of Franklin American Mortgage Company while still in Chapter 11 Bankruptcy;

b.   Mortgage Assignments prepared on behalf of grantor who had never themselves acquired ownership of the mortgages and notes by a valid transfer, including numerous such assignments were the grantor was identified as "Bogus Assignee for Intervening Assignments;" and

c.   Mortgage Assignments notarized by notaries who never witnessed the signatures that they notarized.

d.   Mortgage Assignments with forged signatures of the individuals signing on behalf of the grantors, and forged signatures of the witnesses and the notaries;

e.   Mortgage Assignments with signature of the individuals signing as corporate officers for banks, and mortgage companies that never employed them;

## JURISDICTION AND VENUE

9.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

10. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2) and (b)(4).

11. Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3),(b)(2) and (b)(4).

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 3

12. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil

Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant

to 15 U.S.C. §78fff(b).

13. This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this

action pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that is the subject matter of

this lawsuit in the Southern District of Georgia.

14. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact the business that

is the subject matter of this lawsuit in this court.

15. Plaintiff Tamia Allen, pro se, brings this action on behalf of herself pursuant to 31 U.S.C. §§ 3729-3733.

Plaintiff is the owner of 3481 Lakeside Drive #1508 Atlanta, GA 30326.

## FIRST CAUSE OF ACTION

## (Request for Immediate Injunctive Relief)

16. Plaintiff Tamia Allen repeats and realleges the allegations set forth in paragraphs 1 – 15 as if fully set forth

herein.

17. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief (i) to stop non-judicial foreclosure

of here home.(ii) enjoining the Defendants from transferring the security to any third party while this case is

pending in the Bankruptcy Court.

18. Green Tree Servicing does not have a legal right to college are demand payment from the Plaintiff.

19. In January 2014, without any prior notice, a real property foreclosure action was filed against Plaintiff, titled,

GREEN TREE SERVICING and McCalla Raymer LLC to foreclose on the Property.

20. This action was commenced by Green Tree Servicing. Fannie Mae is the alleged owner of the note originally

made to Franklin American Mortgage Company.

21. Green Tree Servicing lacks standing because they do not possess any title to Plaintiff's note or mortgage.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 4

22. Plaintiff discovered the forgery upon inspection and analysis and through her own investigations. First, the document, entitled, "Assignment of Security Deed bears an execution date of September 26, 2012, moths after the filing of Plaintiff's Foreclosure. Two individuals, Ashley Braband, Derrick White each, signed as Assistant Secretary. Two individuals, France Marie Moss and Wendy Ramirez, signed as witness. Based on information and belief Ashley Braband, and Derrick White were note employed by Franklin American Mortgage. The purported signatures of Ashley Braband and Derrick White on the Assignment submitted in Plaintiff's foreclosure were likely made by various other people, as Plaintiff's comparison of their various forged mortgage assignment makes clear. The purported witness signatures were also forged, Plaintiff analysis shows.

**A.    DEFENDANTS'S USE OF FAKE DOCUMENTS, FALSE OFFICER TITLES, AND FORGED SIGNATURES VIOLATES THE FEDERAL LENDING LAWS, AND STATE MORTGAGE FRAUD AND NOTARY FRAUD LAWS.**

23. Affixing or submitting false signatures on a mortgage document is a violation of federal and state law, and those signatures are without authority to complete the transaction.

24. The signatures contained on the assignments filed in Plaintiff's Foreclosure are fraudulent, in violation of Federal and Georgia law, and do not serve to assign the note and mortgage to Fannie Mae or Green Tree Servicing LLC. Therefore, Green Tree Servicing LLC lacks any authority to act on Plaintiff's note and mortgage, is not a true party in interest in Plaintiff's Foreclosure, and cannot prosecute the foreclosure.

25. Defendants created mortgage-backed securities lacking lawful assignments of the Plaintiff Note and Mortgage to the alleged Trusts, and Green Tree Servicing LLC, sign using false corporate offer titles, false dates of assignment, and forged signatures.

26. By 2009, at the latest, Bank of America and Green Tree Servicing LLC knew, or reasonably should have known, that the requisite mortgage assignments were not signed by the Trustee of the Bankruptcy Court and therefore making them invalid.

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 5

**CAUSES OF ACTION**

**COUNT**

**(Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 1 of this Complaint.

28. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729 et seq., as amended.

29. Ass alleged in paragraphs 1 – 28, the Defendants created, sold or participated in mortgage-backed securities.

30. The Defendants falsely represented that Green Tree Servicing LLC held good title to the Plaintiff mortgages and note while Defendant Franklin American Mortgage Company had filed for Chapter 11 protection in November 2008.

31. By virtue of the wrongful conduct alleged here including, but not limited to, the false signatures used in manufactured mortgage assignments, Plaintiff Mortgage-backed securities sold to Fannie Mae, and MERS violated state and federal laws and furthered an effort to transfer impaired securities to the Treasury or other government funded entity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered against Defendants, ordering that:

a.    Defendants cease and desist from conducting an illegal foreclosure on Plaintiff Condo.

b.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. 3729;

c.    Defendants pay an amount equal to three times the amount of damages the Plaintiff have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $50,000 and not more than $100,000 for each violation of 31 U.S.C. § 3729

d.    Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

e.    Plaintiff be awarded all costs of this action pursuant to 31 U.S.C. § 3730(s)

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

f.  Plaintiff request for a Rule 2004 Examinations be granted.

g.  Recall all Mortgage Assignments; and declare the Assignment from Mortgage Electronic Registration Systems void and of no authority.

h.  The Plaintiff be granted all such other relief as the Court deems just and proper.

REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

TAMIA ALLEN, PRO SE, BY AGENT

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 7

# EXHIBIT "A"

# SECURITY DEED

Deed Book 43520 Pg 189
Filed and Recorded Sep-22-2006 01:33pm
2006-0321358
Georgia Intangible Tax Paid $480.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

After Recording Return To:
Franklin American Mortgage Company
501 Corporate Centre Drive, Suite 400
Franklin, Tennessee 37067

Morris Hardwick Schneider
Attorneys at Law
3800 Camp Creek Parkway
Suite 102, Bldg. 1800
Atlanta, Georgia 30331

RECALL N. CA. FILE NO.
F0120003282246



_____ [Space Above This Line For Recording Data] 13189700S

## SECURITY DEED

ALLEN
Loan Number 1100329610
MIN 100052200003296101

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated **SEPTEMBER 18, 2006**
together with all Riders to this document.
**(B)** "Borrower" is **TAMIA ALLEN, A SINGLE WOMAN**

Borrower is the grantor under this Security Instrument.
**(C)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888) 679-MERS.
**(D)** "Lender" is **FRANKLIN AMERICAN MORTGAGE COMPANY**

Lender is a corporation organized and existing under the laws of **THE STATE OF TENNESSEE**

Lender's address is       **501 CORPORATE CENTRE DRIVE, SUITE 400, FRANKLIN, TENNESSEE 37067**

**(E)** "Note" means the promissory note signed by Borrower and dated **SEPTEMBER 18, 2006**
The Note states that Borrower owes Lender **ONE HUNDRED FIFTY-NINE THOUSAND NINE HUNDRED AND 00/100ths**
Dollars (U.S. $ **159,900.00**                 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **OCTOBER 1, 2036**
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

GEORGIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                Form 3011 1/01 *(page 1 of 13 pages)*
GV2013.HP

Deed Book 43520 Pg 190

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☒ Condominium Rider          ☐ 1 - 4 Family Rider

☐ Biweekly Payment Rider     ☐ Planned Unit Development Rider

☐ Balloon Rider              ☐ Second Home Rider

☒ Other(s)
[specify] - Waiver of Borrower's Rights

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of    **FULTON**                    :

Deed Book **43520** Pg **191**

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of __3481 LAKESIDE DRIVE #1508__

[Street]

__ATLANTA_____, Georgia __30326____ ("Property Address"):

[City]                                         [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01 *(page 3 of 13 pages)*
GV2013.HP



Deed Book 43520 Pg 192

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of

TA

Deed Book 43520 Pg 194

requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-

refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of

Deed Book 43520 Pg 197

the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01 *(page 9 of 13 pages)*
GV2013.HP

*TA*

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3011 1/01 *(page 10 of 13 pages)*
GV2013.HP



Deed Book 43520 Pg 199

default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance,

Deed Book 43520 Pg  200

and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

Deed Book 43520 Pg 201

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
TAMIA ALLEN                    -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower

Signed, sealed and delivered in the presence of:

Witnesses:

_____                  _____
Unofficial Witness                               Notary Public,                    County

_____[Space Below This Line For Acknowledgment]_____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011  1/01 (page 13 of 13 pages)
GV2013.HP

Deed Book 43520 Pg 202

# CONDOMINIUM RIDER

ALLEN
Loan Number 1100329610
MIN 100052200003296101

THIS CONDOMINIUM RIDER is made this **18TH** day of **SEPTEMBER, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **FRANKLIN AMERICAN MORTGAGE COMPANY**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3481 LAKESIDE DRIVE #1508, ATLANTA, GEORGIA 30326**
[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**GRANDVIEW CONDOMINIUMS**
[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3140 1/01    *(page 1 of 3 pages)*
GV3286.HP

7A

Deed Book 43520 Pg 203

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Deed Book 43520 Pg  204

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium
Rider.

...................................................................(Seal)
TAMIA ALLEN                                            -Borrower

...................................................................(Seal)
                                                      -Borrower

...................................................................(Seal)
                                                      -Borrower

...................................................................(Seal)
                                                      -Borrower

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3140 1/01    *(page 3 of 3 pages)*
GV3286.HP

Deed Book 43520 Pg   205

Loan Number  1100329610

GRANTOR:  **TAMIA ALLEN**

LENDER:  **FRANKLIN AMERICAN MORTGAGE COMPANY**

DATE OF SECURITY DEED:  **SEPTEMBER 18, 2006**

# WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.  THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

GV8919.HP                              Page 1 of 3

Deed Book 43520 Pg 206

**READ AND AGREED BY GRANTOR:**

Signed, sealed and delivered in the presence of:

_____ Unofficial Witness

_____ Notary Public



_____ (Seal)
TAMIA ALLEN                    -Grantor

_____ (Seal)
                              -Grantor

_____ (Seal)
                              -Grantor

_____ (Seal)
                              -Grantor

GV8919:HP                    Page 2 of 3

Deed Book 43520 Pg 207
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
Notary Public

_____
Closing Attorney

*[Notary seal: DOREENA THOMAS, COMM. EXP., NOTARY PUBLIC, 05-11-07, DEKALB COUNTY, GA]*

GV8919.HP                          Page 3 of 3

# EXHIBIT "B"

# NOTE

ALLEN
Loan Number 1100329610
MIN 100052200003296101

# NOTE

SEPTEMBER 18, 2006            ATLANTA                    , GEORGIA
[Date]                       [City]                   [State]

**3481 LAKESIDE DRIVE #1508, ATLANTA, GEORGIA 30326**
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **159,900.00**        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FRANKLIN    AMERICAN MORTGAGE COMPANY**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **6.875**   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1ST**    day of each month beginning on **NOVEMBER 1, 2006**      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    **OCTOBER 1, 2036**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at      **501    CORPORATE    CENTRE    DRIVE,    SUITE    400, FRANKLIN, TENNESSEE 37067**
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  **1,050.43**        .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**            Form 3200 1/01
GV1363.HP                                          *(page 1 of 3 pages)*



**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **5.0**    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
GV1363.HP
*(page 2 of 3 pages)*



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)          _____ (Seal)
TAMIA ALLEN                    -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                          -Borrower

*[Sign Original Only]*

**PAY TO THE ORDER OF**

**WITHOUT RECOURSE**
**FRANKLIN AMERICAN MORTGAGE COMPANY**

BY:_____

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3200 1/01
GV1363.RP                                   *(page 3 of 3 pages)*

# EXHIBIT "A"

# SECURITY DEED

Deed Book 43520 Pg 189
Filed and Recorded Sep-22-2006 01:33p
2006-0321350
Georgia Intangible Tax Paid $480.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

After Recording Return To:
Franklin American Mortgage Company
501 Corporate Centre Drive, Suite 400
Franklin, Tennessee 37067

Morris Hardwick Schneider
Attorneys at Law
3800 Camp Creek Parkway
Suite 102, Bldg. 1800
Atlanta, Georgia 30331

610   131897005   D2   001   001

RECALL N. CA. FILE NO.

F0120003282246

_____ [Space Above This Line For Recording Data] _13189700S_

## SECURITY DEED

ALLEN
Loan Number 1100329610
MIN 100052200003296101

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  SEPTEMBER 18, 2006
together with all Riders to this document.
(B) "Borrower" is  TAMIA ALLEN, A SINGLE WOMAN

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888) 679-MERS.
(D) "Lender" is  FRANKLIN AMERICAN MORTGAGE COMPANY

Lender is a corporation organized and existing under the laws of THE STATE OF TENNESSEE

Lender's address is     501 CORPORATE CENTRE DRIVE, SUITE 400, FRANKLIN, TENNESSEE
37067

(E) "Note" means the promissory note signed by Borrower and dated  SEPTEMBER 18, 2006
The Note states that Borrower owes Lender  ONE HUNDRED FIFTY-NINE THOUSAND NINE HUNDRED
AND 00/100ths
Dollars (U.S. $ 159,900.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  OCTOBER 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP                                                          Form 3011  1/01 (page 1 of 13 pages)

Deed Book 43520 Pg 190

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☒ Condominium Rider          ☐ 1 - 4 Family Rider

☐ Biweekly Payment Rider       ☐ Planned Unit Development Rider

☐ Balloon Rider                    ☐ Second Home Rider

☒ Other(s)
   [specify] - Waiver of Borrower's Rights

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of    FULTON

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP

Form 3011  1/01 *(page 2 of 13 pages)*

TA

Deed Book 43520 Pg 191

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of  3481 LAKESIDE DRIVE #1508

_____
                                      [Street]

ATLANTA                                   , Georgia   30326          ("Property Address"):
        [City]                                              [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP                                                    Form 3011  1/01 (page 3 of 13 pages)

Deed Book 43520 Pg 192

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP
Form 3011  1/01 *(page 4 of 13 pages)*

Deed Book 43520 Pg 193

such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP

Form 3011 1/01 *(page 5 of 13 pages)*

Deed Book 43520 Pg 194

requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP                                             Form 3011 1/01 (page 6 of 13 pages)

TA

Deed Book 43520 Pg 195

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP

Form 3011 1/01 *(page 7 of 13 pages)*

*TA*

Deed Book 43520 Pg 196

refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP
Form 3011 1/01 (page 8 of 13 pages)

Deed Book 43520 Pg 197

the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Deed Book 43520 Pg 198

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP

Form 3011  1/01 *(page 10 of 13 pages)*

TA

Deed Book 43520 Pg 199

default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance,

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP

Form 3011 1/01 *(page 11 of 13 pages)*

Deed Book 43520 Pg 200

and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP                                                    Form 3011  1/01 (page 12 of 13 pages)

Deed Book **43520** Pg    **201**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____(Seal)
TAMIA ALLEN                    -Borrower

_____(Seal)
                               -Borrower

_____(Seal)
                               -Borrower

_____(Seal)
                               -Borrower

Signed, sealed and delivered in the presence of:

Witnesses:

_____
Unofficial Witness

_____
Notary Public,                            County

_____[Space Below This Line For Acknowledgment]_____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2013.HP

Form 3011  1/01 *(page 13 of 13 pages)*

Deed Book 43520 Pg 202

# CONDOMINIUM RIDER

ALLEN
Loan Number 1100329610
MIN 100052200003296101

THIS CONDOMINIUM RIDER is made this **18TH** day of **SEPTEMBER, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **FRANKLIN AMERICAN MORTGAGE COMPANY**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3481 LAKESIDE DRIVE #1508, ATLANTA, GEORGIA 30326**
[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**GRANDVIEW CONDOMINIUMS**
[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3140 1/01    *(page 1 of 3 pages)*
GV3286.HP**

Deed Book 43520 Pg 203

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Deed Book 43520 Pg 206

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

_____ (Seal)
TAMIA ALLEN                           -Grantor

_____
Unofficial Witness

_____ (Seal)
                                      -Grantor

_____
Notary Public

_____ (Seal)
                                      -Grantor



_____ (Seal)
                                      -Grantor

GV8919:HP                    Page 2 of 3

Deed Book 43520 Pg  207
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

# CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
Notary Public

_____
Closing Attorney

DOREENA THOMAS
COMM. EXP.
NOTARY
PUBLIC
05-11-07
DEKALB COUNTY, GA

GV8919.HP                    Page 3 of 3

# EXHIBIT "B"

# NOTE

ALLEN
Loan Number 1100329610
MIN 100052200003296101

# NOTE

SEPTEMBER 18, 2006          ATLANTA                                    , GEORGIA
    [Date]                          [City]                                    [State]

**3481 LAKESIDE DRIVE #1508, ATLANTA, GEORGIA  30326**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

    In return for a loan that I have received, I promise to pay U.S. $    159,900.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    **FRANKLIN    AMERICAN MORTGAGE COMPANY**

I will make all payments under this Note in the form of cash, check or money order.

    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **6.875**    %.

    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

    **(A) Time and Place of Payments**

    I will pay principal and interest by making a payment every month.

    I will make my monthly payment on the    **1ST**    day of each month beginning on    **NOVEMBER 1, 2006**    .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    **OCTOBER 1, 2036**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

    I will make my monthly payments at    **501    CORPORATE    CENTRE    DRIVE,    SUITE    400, FRANKLIN, TENNESSEE 37067**
or at a different place if required by the Note Holder.

    **(B) Amount of Monthly Payments**

    My monthly payment will be in the amount of U.S. $    **1,050.43**

## 4. BORROWER'S RIGHT TO PREPAY

    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE-**Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3200 1/01
GV1363.HP
*(page 1 of 3 pages)*



**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
GV1363.HP                          *(page 2 of 3 pages)*                          **Form 3200 1/01**



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)       _____ (Seal)
TAMIA ALLEN                      -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                                 -Borrower                                      -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
FRANKLIN AMERICAN MORTGAGE COMPANY

BY:_____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3200 1/01
GV1363.HP                              *(page 3 of 3 pages)*