Hearing Date and Time:  March 6, 2014 at 11:00 a.m.  (Eastern Time)

WEIL, GOTSHAL & MANGES LLP  
767 Fifth Avenue  
New York, New York 10153  
Telephone: (212) 310-8000  
Facsimile: (212) 310-8007  
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.  
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x  
: 
In re                                    :   Chapter 11 Case No.  
                                         :  
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :   08-13555 (SCC)  
                                         :  
           Debtors.                      :   (Jointly Administered)  
                                         :  
------------------------------------------------------------------x

# REPLY IN FURTHER SUPPORT OF MOTION TO
# ESTABLISH SINGLE RESERVE FOR DUPLICATIVE CLAIMS

**Table of Contents**

**Page**

I. The Court Has Authority to Grant the Relief Requested in the Motion ..................................................................................................................................3

II. There Is No Authority to Require Reserves in Excess of Approximately $44 Million for the Duplicative Claims .......................................................7

III. Equity and Judicial Economy Favor Granting the Relief Sought In the Motion ................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Coral Air, Inc.*,
    40 B.R. 979 (D.V.I. 1984) ..................................................................................................4

*In re Enron Corp.*,
    No. 01-16034, 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) .........................................6

*In re Goldblatt Bros., Inc.*,
    132 B.R. 736 (Bankr. N.D. Ill. 1991) ..................................................................................4

*Harlow v. Palouse Producers, Inc. (In re Harlow Prop., Inc.)*,
    56 B.R. 794 (B.A.P. 9th Cir. 1985)......................................................................................4

*In re Johns-Mannville Corp.*,
    97 B.R. 174 (Bankr. S.D.N.Y. 1989) ...................................................................................4

*Jorgenson v. Fed. Land Bank of Spokane (In re Jorgenson)*,
    66 B.R. 104 (B.A.P. 9th Cir. 1986)......................................................................................5

*LTV Corp. v. Back (In re Chateaugay Corp.)*,
    201 B.R. 48 (Bankr. S.D.N.Y. 1996)...................................................................................4

*Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*
    419 F.3d 115 (2d Cir. 2005).................................................................................................10

*New England Dairies v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*,
    351 F.3d 86 (2d Cir. 2003)..................................................................................................6

*In re Riding*,
    44 B.R. 846 (Bankr. D. Utah 1984) ....................................................................................3

*In re Riverside Nursing Home*,
    137 B.R. 134 (Bankr. S.D.N.Y. 1992), *aff'd Riverside Nursing Home v. N. Metro. Residential Health Care Facility, Inc.*, 977 F.2d 78 (2d Cir. 1992) .........................................4

*Smart World Tech., LLC v. Juno Online Serv., Inc. (In re Smart World Tech., LLC)*,
    423 F.3d 166 (2d Cir. 2005)................................................................................................6

*In re Spiegel, Inc.*,
    No. 03-11540, 2007 WL 201112 (Bankr. S.D.N.Y. Jan. 23, 2007) .........................................6

**STATUTES**

11 U.S.C. § 105(a) ...........................................................................................................5, 6

11 U.S.C. § 1142(b) ..................................................................................................3, 4, 5, 6

**OTHER AUTHORITIES**

FED. R. BANKR. P. 3020(d)..................................................................................................6

Order Authorizing Use Of Non-Cash Assets In Lieu Of Available Cash As Reserves For
   Disputed Claims Pursuant To Section 8.4
   Feb. 22, 2001, ECF No. 25641 ..................................................................................5, 7

Order Denying Objection To Motion Authorizing Use Of Non-Cash Assets In Lieu Of
   Available Cash As Reserves For Disputed Claims
   Mar. 28, 2012, ECF No. 27196..........................................................................................7

Order Extending The Period To File Objections To And Requests To Estimate Claims
   Nov. 25, 2013, ECF No. 41286 .....................................................................................12

Order Granting The Debtors Authority To Issue Subpoenas For The Production Of
   Documents And Authorizing The Examination Of Persons And Entities
   Nov. 23, 2009, ECF No. 5910 ......................................................................................11

Order In Aid Of Execution Of The Modified Third Amended Chapter 11 Plan Of Lehman
   Brothers Holdings Inc. And Its Affiliated Debtors
   Jan. 31, 2013, ECF No. 34348 .........................................................................................5

Order In Aid Of Execution Of The Modified Third Amended Chapter 11 Plan Of Lehman
   Brothers Holdings Inc. And Its Affiliated Debtors
   Jan. 31, 2013, ECF No. 34347 .........................................................................................5

Order Modifying Certain Existing Claim Orders
   Jul. 18, 2012, ECF No. 29505........................................................................................12

Order Pursuant To Section 105(a) And 1142(b) Of The Bankruptcy Code In Aid Of
   Execution Of The Modified Third Amended Chapter 11 Plan Of LB Rose Ranch LLC
   Apr. 25, 2011, ECF No. 36865 .........................................................................................5

Order Pursuant To Section 105 Of The Bankruptcy Code, Bankruptcy Rule 9014, And
   General Order M-390 Authorizing The Debtors To Implement Claims Hearing
   Procedures And Alternative Dispute Resolution Procedures For Claims Against
   Debtors
   Apr. 19, 2010, ECF No. 8474 ........................................................................................12

Order Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rules 3007
   And 9019(b) Approving Settlement Procedures
   Mar. 31, 2010, ECF No. 7936........................................................................................12

Order Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rules 3007
And 9019(b) For Approval Of Claim Objection Procedures
Jan. 14, 2010, ECF No. 6664 ................................................................................................11

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, files this reply to the objection [ECF No. 43335] (the "Response") interposed to its motion, dated February 20, 2014 [ECF No. 42959] (the "Motion"),[1] and respectfully represents:

## REPLY

1. Pursuant to section 8.13 of the Plan and applicable case law, Stonehill is prohibited from receiving a multiple recovery on account of its duplicative claims. Stonehill does not contest the applicability of section 8.13 of the Plan or the case law cited in the Motion. Indeed, Stonehill concedes that a single reserve – in the amount of the sum of two of its forty duplicative claims – is appropriate, stating "Stonehill is amenable to setting the reserve for the Stonehill Claims . . . so that duplicative reserves are not required." Resp. ¶ 22.

2. Yet Stonehill opposes the Plan Administrator's request to establish a single, fully-funded reserve in the filed amount of Stonehill's claims, arguing that the Court lacks authority to grant the relief. This is Stonehill's sole argument in opposition to the establishment of a single reserve and the elimination of reserves for thirty-eight completely redundant claims. This argument fails under the slightest scrutiny. It fails because the relief requested is clearly permitted by Bankruptcy Code sections 1142(b) and 105(a) and Bankruptcy Rule 3020(d). Separately, it fails because the Motion does not rely exclusively on clause (b) of the first sentence of section 8.4 of the Plan, which contains the phrase: "to the extent permitted by the Bankruptcy Code and Bankruptcy Rules." As set forth in the Motion, the last sentence of section

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

8.4 of the Plan, together with clause (a) of the first sentence of section 8.4, separately provides authority for the establishment of a single reserve through the substitution of "non-cash assets" in the "filed amount of the Disputed Claim[s]." Mot. ¶ 21. Accordingly, the objection must be overruled.

3. The remainder of the Response contains no basis for an objection to the establishment of a single reserve in the amount of Stonehill's claim. Stonehill argues instead that the reserve for the Duplicative Claims should be maintained in an amount inflated to approximately four times the filed amount of such claims (approximately $161 million compared to approximately $44 million) – approximately $117 million more than the filed amount of such claims.[2] The suggestion is inconsistent with and prohibited by the Plan and Confirmation Order and is without foundation. Among other things, the Plan and Confirmation Order provide for reserves based on the filed amount of claims, restrictions on the amendment of claims, and maximum Plan Distributions based on amounts received from co-obligors. Stonehill failed to account for any of these factors in its Response. Consideration of these provisions requires that Stonehill's objection be overruled.

4. Stonehill's final suggestion is that "all creditors of the Chapter 11 Estates" would be better served if, before the Court were to grant the relief requested, the Court used its equitable power to compel the Chapter 11 Estates to (a) reserve up to forty times the amount of the liabilities asserted in the Duplicative Claims, (b) withhold distributions in excess of $253 million from the Plan Distribution in April and more for each subsequent Distribution, and (c) commence, conduct and conclude two separate, and potentially-lengthy, litigations over the

---

[2] The $198 million amount referenced in the Response includes additional claims of approximately $37 million that were excluded from the definition of Disputed Claims and that were unaffected by the Motion. *See* Mot. ¶ 9, n 2. The Plan Administrator will continue to maintain a reserve for these claims in addition to the single reserve.

2

speculative amendment and then the allowance of Stonehill's $44 million claims. Resp. ¶¶ 5, 20-22. Put simply, this defies logic. Further, it is an ironic suggestion that the Plan Administrator should "expeditiously" take further action to resolve Stonehill's filed claims, when more than four years after the bar date, Stonehill is suggesting that it may first assert additional claims. Stonehill characterizes the Motion as an attempt to "cap" such additional claims, but Stonehill cannot avoid or shift the burdens it bears to amend the Duplicative Claims. A proof of claim must be filed before the Plan Administrator can object to it. The Court granted the Plan Administrator the discretion and the time to object to claims and the Plan Administrator should not be compelled to expend resources on Stonehill's claims ahead of any of the approximately 3,900 other Disputed Claims. Stonehill's request must be denied.

## I. The Court Has Authority to Grant the Relief Requested in the Motion

5. Contrary to Stonehill's contention, the relief requested is "permitted by the Bankruptcy Code and Bankruptcy Rules." Specifically, the establishment of a single reserve is permitted by sections 1142(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 3020(d).[3]

6. Section 1142(b) states, in pertinent part, "[t]he court may direct the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). The post-confirmation powers granted to the Court under section 1142(b) of the Bankruptcy Code are broad. *See, e.g.*, *In re Coral Air,*

---

[3] The Motion provides sufficient grounds for the requested relief, including citations to various cases and the operative provisions of the Plan and Confirmation Order. *See In re Riding*, 44 B.R. 846, 858 (Bankr. D. Utah 1984) ("A motion will seldom be found to be too vague to satisfy the particularity requirement, and will not be stricken if the court can comprehend the basis of the motion and deal fairly with it."). In addition, service is not an issue. As evidenced by Exhibit D of the Response, Stonehill's counsel had actual receipt of the Motion and supplemental authorities on the day on which overnight delivery would have been made. Stonehill received physical copies of the Motion on the same day. *See* Affidavit of Service of Pete Caris [ECF No. 43356]. Stonehill's counsel received electronic notice the day prior. *See* S.D.N.Y. ELECTRONIC CASE FILING RULES & INSTRUCTIONS § 9.1.

3

*Inc.*, 40 B.R. 979, 982 (D.V.I. 1984) ("The Court retains wide jurisdiction on a continuing basis to oversee those responsible for implementation of the plan, and to enter appropriate orders to enforce the intent and specific provisions of the plan."); *LTV Corp. v. Back (In re Chateaugay Corp.)*, 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996) (noting that section 1142(b) "assure[s] that the terms and provisions of a confirmed chapter 11 plan are carried out until the plan is completed and the final decree is entered closing the case").

       7.      Courts have invoked section 1142(b) to enforce specific plan provisions. *See, e.g.*, *In re Riverside Nursing Home*, 137 B.R. 134, 137-39 (Bankr. S.D.N.Y. 1992) (requiring a debtor to consent to a receivership where a plan provision contemplated that the debtor would consent to the appointment of a receiver if certain events occurred post-confirmation), *aff'd Riverside Nursing Home v. N. Metro. Residential Health Care Facility, Inc.*, 977 F.2d 78 (2d Cir. 1992); *In re Johns-Mannville Corp.*, 97 B.R. 174, 180-81 (Bankr. S.D.N.Y. 1989) (invoking section 1142(b) to enjoin asbestos claimants from asserting claims against the debtor in order to enforce certain "Claims Resolution Procedures" set forth in the debtor's confirmed plan); *see also Harlow v. Palouse Producers, Inc. (In re Harlow Prop., Inc.)*, 56 B.R. 794, 798 (B.A.P. 9th Cir. 1985) (holding that the bankruptcy court retained jurisdiction to order the sale of the debtor's property under section 1142(b) where the plan expressly envisioned such a sale under certain conditions). In addition, section 1142(b) has been used by courts to issue orders that advance the purpose and intent of a plan more generally, even where the plan does not expressly contemplate such relief. *See, e.g.*, *Coral Air,* 40 B.R. at 984-85 (ordering, among other things, (i) the debtor to hire professional management, (ii) certain individuals barred from involvement in management, (iii) payments to shareholders barred, and (iv) a shareholder to make payments to certain creditors); *In re Goldblatt Bros., Inc.*, 132 B.R. 736, 741 (Bankr. N.D. Ill. 1991) (authorizing a search for creditors entitled to distributions where no plan provision

4

required same); s*ee also Jorgenson v. Fed. Land Bank of Spokane (In re Jorgenson)*, 66 B.R. 104, 108 (B.A.P. 9th Cir. 1986) (appointing an individual that was "the most knowledgeable and motivated to obtain the best return on [the] property," even though the plan required the appointment of a different individual). Indeed, this Court has entered numerous orders granting relief in these chapter 11 cases pursuant to section 1142(b) of the Bankruptcy Code. *See, e.g.*, *Order Authorizing Use Of Non-Cash Assets In Lieu Of Available Cash As Reserves For Disputed Claims Pursuant To Section 8.4 Of The Debtors' Confirmed Joint Chapter 11 Plan* [ECF No. 25641]; *Order Pursuant To Sections 105(a) And 1142(b) Of The Bankruptcy Code In Aid Of Execution of The Modified Third Amended Chapter 11 Plan Of LB Rose Ranch LLC* [ECF No. 36865]; *Order In Aid Of Execution Of The Modified Third Amended Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors* [ECF No. 34347]; *Order In Aid Of Execution Of The Modified Third Amended Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors* [ECF No. 34348].

    8. Section 1142(b) permits the relief requested in the Motion to implement both the plain reading and the intent of sections 8.4 and 8.13 of the Plan. Mot. ¶ 20. As set forth in the Motion, sections 8.4 and 8.13 prohibit double recoveries on account of a single claim for damages. The Motion seeks to implement these sections by establishing a single reserve for the Duplicative Claims.

    9. Section 105(a) of the Bankruptcy Code further permits the relief requested by the Motion. It provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). As set forth above, section 1142(b) of the Bankruptcy Code grants the Court broad authority to issue post-confirmation orders in furtherance of the Plan and in its provisions, including an order granting the Motion. As set forth in the Motion and herein, a single reserve

5

for the Duplicative Claims is necessary and appropriate to the implementation of sections 8.4 and 8.13 of the Plan.

10. The two cases cited by Stonehill regarding section 105(a) are inapposite. In each case, the Second Circuit found that the relief requested pursuant to section 105(a) was not tied to any other provisions of the Bankruptcy Code or Bankruptcy Rules. *See Smart World Tech., LLC v. Juno Online Serv., Inc. (In re Smart World Tech., LLC)*, 423 F.3d 166, 184 (2d Cir. 2005) (finding that section 1109(b) of the Bankruptcy Code could not be invoked to support the requested relief); *New England Dairies v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 90-91 (2d Cir. 2003) (finding that sections 361 and 362 of the Bankruptcy Code could not be invoked to support the requested the relief). Here, the relief requested is tied to and permitted by section 1142(b) of the Bankruptcy Code, s*ee supra* ¶¶ 6-8, and should therefore be granted. *See In re Spiegel, Inc.*, No. 03-11540, 2007 WL 201112 (Bankr. S.D.N.Y. Jan. 23, 2007) (granting a variety of post-confirmation relief pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code); *In re Enron Corp.*, No. 01-16034, 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) (ordering the estimation of certain claims for reserve purposes pursuant to, among others, sections 105(a) and 1142(b) of the Bankruptcy Code).

11. Bankruptcy Rule 3020(d) further permits the relief requested in the Motion. Bankruptcy Rule 3020(d) provides that, "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." FED. R. BANKR. P. 3020(d).

12. Stonehill did not dispute that the last sentence of section 8.4 of the Plan, together with clause (a) of the first sentence of section 8.4, separately provides authority for the establishment and use of a single reserve as a "non-cash asset" to satisfy each Chapter 11

6

Estate's reserve and potential Distribution requirement for a Duplicative Claim. Nor does Stonehill acknowledge the Court's previously issued orders pursuant to this provision of the Plan, which granted the Plan Administrator authority to substitute other non-cash assets in lieu of Available Cash. *See Order Authorizing Use Of Non-Cash Assets In Lieu Of Available Cash As Reserves For Disputed Claims Pursuant To Section 8.4 Of The Debtors' Confirmed Joint Chapter 11 Plan* [ECF No. 25641]; *Order Denying Objection to Motion Authorizing Use Of Non-Cash Assets In Lieu Of Available Cash As Reserves For Disputed Claims* [ECF No. 27196] (denying creditor objection and granting motion).

## II. There Is No Authority to Require Reserves in Excess of Approximately $44 Million for the Duplicative Claims

13. As set forth in the Motion, pursuant to the Plan, unless a *lower* amount is agreed upon or ordered, the reserve for Disputed Claims is based on "the filed amount of the Disputed Claim." *See* Mot. ¶ 12 (quoting Plan § 8.4 (requiring the retention of cash "in an amount equal to *the least of* (a) . . . , (b) . . . , and (c) . . . .) (emphasis added)). Said differently, *section 8.4 of the Plan provides no authority to increase the reserve above the filed amount of a Disputed Claim.* Therefore, as set forth more fully below, absent a valid amendment to the Duplicative Claims, there is no authority for Stonehill's request to increase the reserve for such claims above approximately $44 million.

14. Section 8.4 of the Plan ensures, among other things, that amounts withheld from Distributions to holders of Allowed Claims will be based upon representations of amounts and bases for Disputed Claims made under penalty of perjury by the holders of such claims. *See, e.g.*, Proof of Claim, B 10 (Official Form 10). As set forth in the Motion, the Confirmation Order further ensures that, subsequent to March 6, 2012, the Chapter 11 Estates will not be required to increase reserves and reduce Distributions to holders of Allowed Claims unless and

7

until the Court permits an amendment to a Disputed Claim upon a proper showing by the claimant. Mot. ¶ 18 (quoting Confirmation Order ¶ 86 (ordering that claims "may not be filed or amended without authority of the Court")).

15. These established rules enable the Plan Administrator to make Distributions from the Chapter 11 Estates while Disputed Claims remain outstanding. Chaos would ensue without these rules and if the Plan Administrator were required – or permitted unilaterally – to adjust reserves based on assertions, whether in settlement discussions, confidential meditation or otherwise, that a creditor is owed an amount greater than the filed amount of its claim. The Plan required the Plan Administrator to make the initial Plan Distribution with 11,500 Disputed Claims outstanding. *See* Plan § 8.3. Since that time, the Plan Administrator dramatically and expeditiously reduced the number of Disputed Claims, but as the fifth Distribution approaches, approximately 3,900 Disputed Claims remain outstanding.

16. In its Response, Stonehill suggests that it may seek to "amend" the Duplicative Claims to assert a loss that was not included in the Duplicative Claims: "the diminution in value of securities *returned by LBI*," including securities returned prior to the filing of the Duplicative Claims (the "New Claim"). Resp. ¶¶ 10, 18 (emphasis added). The Response ascribes approximately $150 million of value to the New Claim. *Id.* ¶ 10.[4] It is clear that this New Claim is accretive, as opposed to simply a secondary basis for a claim component asserted in the Duplicative Claims. *See* Duplicative Claims ¶ 6 (asserting claim for an aggregate of $890,336.82 for securities *not returned by LBI* as of the filing of the Duplicative Claims).

---

[4] Stonehill also suggests it will pursue against the Chapter 11 Estates one component currently included in the Duplicative Claims: a claim for approximately $11 million in damages related to foreign currency trades entered into by or with LBI. Resp. ¶ 10.

8

17. Stonehill filed the Duplicative Claims more than a year after the commencement of LBHI's chapter 11 case and more than a year after the commencement of LBI's SIPA Proceeding. Stonehill did not amend its claims in the thirty months prior to the Effective Date or file a motion seeking to amend its claims in the twenty-four months after the Effective Date.

18. The Motion seeks to establish a single reserve in the full amount of the Duplicative Claims, the only proofs of claim that the Plan Administrator and Court can currently consider.[5] The Court must address the Motion based on the language in the Plan, Confirmation Order and the Duplicative Claims on file, not based on speculation on the course of future events. Stonehill's repeated characterizations of the Motion as seeking to "disallow a portion of Stonehill's claims" or "cap Stonehill's claims below the full amount they are asserting" are unsupported, as Stonehill has not filed, or been permitted to file, the New Claims. *See* Resp. ¶¶ 1, 3, 4, 19. Stonehill's statement that it may, in the future, seek to amend its claims to assert the New Claims does not alter this reality and is irrelevant. Stonehill cannot overcome the plain and unambiguous terms of the Plan and Confirmation Order, which require the Court to limit the single reserve to approximately $44 million, absent a valid amendment to the Duplicative Claims.

19. The Plan Administrator reserves all of its rights to object in the event that Stonehill does in fact later seek to amend any of its claims.[6] If Stonehill seeks to amend its

---

[5] Indeed, as stated by Stonehill: "While LBHI may disagree with Stonehill as to the amount by which the claims should be allowed, or whether Stonehill should be allowed to amend its claims, none of this is before the Court on the current Motion." Resp. ¶ 18 (emphasis added); *see also id.* (repeating that whether "Stonehill is allowed to amend . . . is not before the Court at this time as the adjudication of proper amount of these claims is simply not the subject of the Motion").

[6] Although Stonehill cites to *Midland Cogeneration Venture L.P. v. Enron Corp.* (*In re Enron Corp.*), Resp. ¶ 18, *Enron* does not stand for the proposition that a claimant may amend its claims without limitation. *Enron*, 419 F.3d 115, 133-34 (2d Cir. 2005) (affirming the denial of a creditor's motion to amend proof of claim).

9

claims, among other things, Stonehill will bear the burden of proving that either (a) the New Claims "relate back" to the Duplicative Claims and it would be "equitable" to allow the amendment or (b) Stonehill's neglect to include or file a claim for approximately $150 million for over four years was "excusable." *See Enron*, 419 F.3d at 133-34.

### III. Equity and Judicial Economy Favor Granting the Relief Sought In the Motion

20. Stonehill argues that the Motion is "improper as a matter of equity (as well as judicial economy)." Resp. ¶ 20. But Stonehill does not articulate how "all creditors of the Chapter 11 Estates" or the Court would benefit from denial of the Motion. *Id.* ¶ 22.

21. Stonehill states that the Motion "would not advance the resolution of any of the disputes among LBHI and Stonehill," but this is a strawman argument. *Id.* ¶ 20. The goal of the Motion was to release more than $253 in excess reserves to distribute to creditors in accordance with the Plan. It was not to dispute or resolve Stonehill's claims. The Motion does not require discovery or protracted litigation.[7]

22. As conceded by Stonehill, an objection to the Disputed Claims will require a separate filing by the Plan Administrator. Resp. ¶ 22. Critically, however, any objection filed to date could have addressed only the Duplicative Claims, as neither the Plan Administrator nor the Court would recognize the New Claims. Confirmation Order ¶ 86 (ordering that claims "may not be filed or amended without authority of the Court"). Stonehill's complaints based on "waiting over five years" to resolve its claims are not credible in the face of Stonehill's admission that it first provided information regarding its New Claims in November 2013 and in 2014 – over five years after the commencement of these cases. Resp. ¶ 10. Stonehill cannot

---

[7] Indeed, to avoid any factual disputes and preserve judicial economy at this time, the Plan Administrator did not seek to further reduce the reserves by an additional 75% to approximately $11 million, the maximum Distribution that Stonehill could hope to receive from the Chapter 11 Estates on account of the Duplicative Claims after accounting for Distributions already received from LBI.

avoid or shift the burdens it bears if it determines to seek to add the New Claims. Any harm that may befall Stonehill as a result of Stonehill's failure to timely file an amendment of its Duplicative Claims is necessarily of Stonehill's own making.

23. The Plan grants the Plan Administrator authority and sole discretion to "control and effectuate the Claims reconciliation process." Plan § 6.1(b)(i). The Plan Administrator continues to demonstrate success in exercising its broad discretion and its authority to file objections to claims when appropriate, to schedule and adjourn hearings to consider claims objections, to take discovery, to commence alternative dispute resolution procedings, and to settle claims as appropriate.[8] The Plan Administrator's discretion has resulted in the resolution of approximately 65,000 claims without proceeding directly to contested hearings or compelling alternative dispute resolution, benefiting all of the Chapter 11 Estates' creditors and the Court. As this Court has previously recognized, individual claimants should not be permitted to hijack the claims process by compelling the Plan Administrator to file objections to claims prematurely. *See Order Extending The Period To File Objections To And Requests To Estimate Claims* [ECF No. 41286].

24. It would be highly prejudicial to thousands of the Chapter 11 Estates' creditors to require the maintenance of excess reserves. It is inconceivable that Stonehill is

---

[8] *See Order Granting The Debtors Authority To Issue Subpoenas For The Production of Documents And Authorizing The Examination Of Persons And Entities*[ECF No. 5910]; *Order Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rules 3007 And 9019(b) For Approval Of Claim Objection Procedures* [ECF No. 6664]; *Order Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rules 3007 And 9019(b) Approving Settlement Procedures* [ECF No. 7936]; *Order Pursuant To Section 105 Of The Bankruptcy Code, Bankruptcy Rule 9014, And General Order M-390 Authorizing The Debtors To Implement Claims Hearing Procedures And Alternative Dispute Resolution Procedures For Claims Against Debtors* [ECF No. 8474]; and *Order Modifying Certain Existing Claims Orders* [ECF No. 29505].

11

asking other creditors to forgo their Distributions while Stonehill continues to contemplate whether to seek to amend its claims at this late date.

WHEREFORE the Response should be overruled and the Chapter 11 Estates granted such other and further relief as is just.

Dated:   March 4, 2014
         New York, New York

/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates