UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
In re                                                         :    Chapter 11 Case No.
                                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,                        :    08-13555 (SCC)
                                                              :
                                    Debtors.                  :    (Jointly Administered)
                                                              :
------------------------------------------------------------- x

### DECLARATION OF CLAIMANT ROCCO F. ANDRIOLA IN OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE

Rocco F. Andriola declares, to the best of my knowledge and belief, under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman Brothers' 118th Omnibus Objection as it pertains to my claim (Claim No. 10544).

2. I was employed by Lehman Brothers ("Lehman") from November 10, 1986 through the cessation of Lehman's business operations in or about September, 2008. Thereafter, I worked for a brief time for Barclays Capital during the transition and was formally terminated by Barclays Capital on November 10, 2008 pursuant to notice of even date.

3. My termination was linked directly with Barclays Capital's own internal restructuring and consolidation following the acquisition of Lehman. I received a severance package from Barclays Capital based upon the length of my employment with Lehman. This consisted of 52 weeks of salary, two weeks of unused vacation pay, 2 months' notice pay and a

lump sum payment in lieu of my 2008 bonus of $140,000. Although technically terminated by Barclays Capital, my employment functionally ended with the demise of Lehman. In fact, the severance package I received from Barclays Capital corresponded to the basic Lehman severance package I would have received, had I been terminated prior to the demise of Lehman.

4. Lehman compensated me on what it called a Total Compensation basis, by payment of an annual salary (paid in bi-weekly installments) plus a bonus. My bonus was an integral part of my compensation – my annual salary during the years at issue here was generally only 20 to 25 percent of my total compensation.

5. For each year between 2003 and 2008 Lehman told me in writing, shortly after the end of each fiscal year (November 30), the amount of my bonus for that year and that my bonus was being divided into two portions, one designated "RSUs" and one designated as the "Total Cash Payment." For each of those years, between 16 percent and 30 percent of my bonus was designated as RSUs. Of course, we never made it to November 30, 2008, but I was expecting the same bonus structure had Lehman survived.

6. When Lehman paid me the "Total Cash Payment" portion of my bonus, Lehman reported it to the tax authorities as compensation income, and I paid income tax on it through customary withholding. While the RSU-designated portion was declared as part of my bonus at the same time, it was not immediately reported to the tax authorities until passage of the five (5) year waiting period (typically November 30 of each year), when the RSUs converted to common stock, which I sold immediately.

7. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete; I could not choose whether or not to participate or to limit the portion of my bonus that was designated as

RSUs; and I had no ability to direct how the amounts that Lehman withheld would be used. Because I received Lehman's contract promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation when the RSUs were issued to me each year. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman insisted that I wait five (5) years to receive.

8. When I was first hired by Lehman I was not told that I was required to take a minimum portion of my Total Compensation in the form of RSUs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation for that year that I would be required to accept in the form of RSUs, or even that I would be required to accept any portion as RSUs. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

9. Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contractual obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock after the RSUs converted to common stock. Prior to this time, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs.

10. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's exercise of financial control by withholding 16 percent to 30 percent of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to

work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of effectively handcuffing employees to the firm, since leaving meant a significant forfeiture of earned compensation.

11.     Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is misplaced. I only expected to treat shares as equity after the five (5) year waiting period ended. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock following conversion of the RSUs.

12.     Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put a large part of my bonus each year at risk in an investment over which I had no control or flexibility. I did not intend, and I had no reason to believe that Lehman intended, for me to be a stockholder before expiration of the five-year waiting period.

13.     Historically, I promptly sold all of the RSUs which converted into common stock on November 30 of each year, when the applicable waiting period ended. As such, I did not view my RSUs as a true investment device; I took my compensation as soon as it became available to me.

14.     I understand that Lehman has made representations that RSU holders had shareholder voting rights even before the stock was issued. This, too, is incomplete and misleading. Although I am advised that the Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of RSUs the holder held, the Brief never tells the Court what it never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding RSUs

(determining what fraction of a vote the purported RSU vote had, if any), when did the RSUs come to have this purported voting right (i.e., upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSUs had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

15. I understand that Lehman's alleges that it "equated RSUs to common stock and that if it had avoided bankruptcy Claimants would have reaped the benefit" of any increase in the stock price. This is not dispositive. The bottom line is that I had no rights as a stockholder during the five year waiting period. Accordingly, I could not take advantage of a rising market by selling the RSUs, or protect myself in the event I saw that the market was falling.

16. Moreover, in practice, Lehman treated me as a creditor during the five (5) year waiting period. In each of the years at issue, it was Lehman that declared what I earned as my bonus, promised payment of my bonus, including allocating a portion of my bonus to become due in five years using its own stock as currency when that time came. I had no rights concerning the stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had already declared and promised would be paid.

17. Lehman recognized my rights as those of a creditor in its petition and schedules, where RSU agreements were listed as Executory Contracts under Schedule G.

18. In addition, I have attached hereto, as Exhibit 1 , the Proof of Claim (without all of the attachments) that I filed in connection with my contract rights under the RSU

5

Agreements. My Claim was assigned Claim No. 10544, and includes the sum of $822,269 based upon the earned and unpaid RSUs.

19. Along with its bar date notice, Lehman provided me with this Proof of Claim form. In the form provided, Lehman had partially completed it, inserting the caption, supplying my name and address, and notifying me that I had a Claim scheduled as a "Schedule G claim for an 'Executory Contract.'" Lehman also stated on the form that the Schedule G claim related to the "Restricted Stock Unit Agreement."

20. The economic substance of the RSU Agreements to me was that a portion of my annual bonus was held back and would be paid to me only after passage of five (5) years. Lehman did this unilaterally, and imposed on me certain terms before it would pay the earned bonus portion relating to the RSUs.

21. Stock options that Lehman issued to me worked in a completely different way than RSUs. At the time of the grant, I received what is recognized as a security in the form of the stock option. The option provided me with the choice whether to buy LBH shares at a fixed price, the exercise price. The time for exercise was not a fixed date, but a period of time between exercise and lapse during which I would make an investment decision to pay the exercise price, and I then would receive LBH shares. The timing of any exercise, and even the decision whether to hold the option or exercise it, was solely my investment decision. No comparable security was issued to me under the RSU Agreement. With an RSU, there was a conversion whereupon Lehman stock was issued to me at the end of the waiting period, with no action on my part. At no time did I exercise any choice or make any investment decision regarding the RSUs or the delivery, the timing of delivery, or the form of the underlying compensation

22. Finally, with RSUs I paid tax at ordinary income rates on the market value of the shares Lehman issued to me upon conversion. Upon exercise of stock options I also paid tax at ordinary income rates, but only on the difference between the market value of the LBH shares at the time of exercise and the exercise price.

23. I understand that Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me all of the compensation it declared that I earned, Lehman now asserts that I am not entitled to all of the deferred compensation, and was an equity holder for the RSUs, even though no equity was ever issued and I had no rights as a holder of equity prior to the end of the waiting period.

24. In view of the foregoing, I respectfully maintain and reassert my rights to be paid as a general unsecured creditor under the wage laws of the State of New York.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 4, 2014

_____
Signature

Rocco F. Andriola
Printed Name

# EXHIBIT 1

# PROOF OF CLAIM

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) | UNIQUE IDENTIFICATION NUMBER: 555288270 |
|---|---|---|
| Name of Debtor Against Which Claim is Held LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor 08-13555 (JMP) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)
LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555288270*****
ROCCO F., ANDRIOLA
45 MOREWOOD OAKS
PORT WASHINGTON, NY 11050

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G – EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

Telephone number: _____ Email Address: _____

Name and address where payment should be sent (if different from above)
(212) 708-4693    ROCCO.ANDRIOLA @ NLP.COM

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ **1,507,706** (SEE ATTACHED SCHEDULE)
   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
   If all or part of your claim is entitled to priority, complete Item 5.
   If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   ☐ Check this box if all or part of your claim is based on a Derivative Contract.*
   ☐ Check this box if all or part of your claim is based on a Guarantee.*
   *IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: **SERVICES PERFORMED – EARNED BUT DEFERRED COMPENSATION PURSUANT** (See instruction #2 on reverse side.) **TO RESTRICTED STOCK UNIT AGREEMENTS AS ITEMIZED ON ATTACHED SCHEDULE**

3. Last four digits of any number by which creditor identifies debtor: **N/A**
   3a. Debtor may have scheduled account as: **N/A**
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
   Describe: _____
   Value of Property: $_____   Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____   Basis for perfection: _____
   Amount of Secured Claim: $ **N/A**   Amount Unsecured: $ **1,507,706 ***

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:
   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

   Amount entitled to priority:
   $ **N/A**

   * **GRANT VALUES OF $822,269 + $685,437 AS REFLECTED IN ATTACHED SCHEDULE.**

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ **N/A**
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

FOR COURT USE ONLY

Date: **9/1/09**
Signature: *Rocco F. Andriola* The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| Case No. | Debtor | Case No. | Debtor |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

# LEHMAN BROTHERS | LehmanLive

Data as of June 15, 2008

10028054 Rocco F. Andrio

## AWARD UNITS¹ OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value² | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested³ | Units Outstanding | Market Value at $21.72 |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/07/2007 | 2007 MD Principal | $44.4300 | $132,825 | 11/30/2012 | 2,989.53 | 23.50 | 0.00 | 0.00 | 3,013.03 | $65,44 |
| 12/07/2007 | 2007 MD Discount | $44.4300 | $56,925 | 11/30/2012 | 1,281.23 | 10.05 | 0.00 | 0.00 | 1,291.28 | $28,04 |
| 12/08/2006 | 2006 MD Principal | $53.9200 | $168,000 | 11/30/2011 | 3,115.73 | 52.18 | 0.00 | 0.00 | 3,167.91 | $68,80 |
| 12/08/2006 | 2006 MD Discount | $53.9200 | $72,000 | 11/30/2011 | 1,335.31 | 22.30 | 0.00 | 0.00 | 1,357.61 | $29,48 |
| 11/30/2005 | 2005 MD Principal | $44.1000 | $115,501 | 11/30/2010 | 2,619.06 | 62.22 | 0.00 | 0.00 | 2,681.28 | $58,23 |
| 11/30/2005 | 2005 MD Discount | $44.1000 | $49,500 | 11/30/2010 | 1,122.44 | 26.80 | 0.00 | 0.00 | 1,149.24 | $24,96 |
| 12/09/2004 | 2004 MD Principal | $30.0300 | $91,000 | 11/30/2009 | 3,030.30 | 96.66 | 0.00 | 1,563.47 | 3,126.96 | $67,91 |
| 12/09/2004 | 2004 MD Discount | $30.0300 | $39,000 | 11/30/2009 | 1,298.70 | 41.35 | 0.00 | 0.00 | 1,340.05 | $29,10 |
| 12/10/2003 | 2003 MD Principal | $24.9850 | $68,263 | 11/30/2008 | 2,732.16 | 109.90 | 0.00 | 1,421.03 | 2,842.06 | $61,73 |
| 12/10/2003 | 2003 MD Discount | $24.9850 | $29,255 | 11/30/2008 | 1,170.92 | 47.20 | 0.00 | 0.00 | 1,218.12 | $26,45 |
| **Total** | | | **$822,269** | | 20,695.38 | 492.16 | 0.00 | 2,984.50 | 21,187.54 | $460,19 |

## STOCK OPTIONS OUTSTANDING

| Grant Date | Description | Exercise Price | Black Scholes Grant Price | Expiration Date | Black Scholes Grant Value | Options Granted | Options Exercised | Options Exercisable | Options Outstanding | Intrinsic Value at $21.72 |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/2003 | 2003 MD Options | $35.6950 | $9.7250 | 11/29/2013 | $32,482 | 3,340 | 0 | 1,168 | 3,340 | $ |
| 12/11/2002 | 2002 MD Options | $27.2100 | $9.1250 | 11/29/2012 | $297,366 | 32,588 | 0 | 32,588 | 32,588 | $ |
| 12/03/2001 | December 2001 MD Options | $31.7000 | $10.5100 | 11/29/2011 | $174,718 | 16,624 | 0 | 16,624 | 16,624 | $ |
| 09/20/2001 | September 2001 MD Options | $23.3200 | $7.1650 | 09/19/2011 | $71,994 | 10,048 | 0 | 10,048 | 10,048 | $ |
| 11/30/2000 | 2000 MD Options | $24.7810 | $8.0100 | 11/29/2010 | $71,994 | 8,988 | 0 | 8,988 | 8,988 | $ |
| 11/30/1999 | 1999 MD Options | $19.0940 | $6.3900 | 11/29/2009 | $36,883 | 5,772 | 2,020 | 3,752 | 3,752 | $9,85 |
| **Total** | | | | | **$685,437** | 77,360 | 2,020 | 73,168 | 75,340 | $9,85 |
| **Total Equity** | | | | | | | | | | $470,04 |

\* Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock options is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise price. Please note that the current market price is based on a delayed 20 minutes feed from Reuters. (11:37 AM EDT on July 2 2008)

¹ Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.
² Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
³ Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.