**KAPLAN LANDAU LLP**
1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

**JULIEN & SCHLESINGER, P.C.**
One Whitehall Street
17th Floor
New York, NY  10004
(212) 962-8020

*Attorneys for Claimants:  Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Christian Reynolds (28442), Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711), and David I. Weiner (Claim No. 18314), Seth Finkel (Claim No. 18067) and Richard Levine (Claim No. 31657).*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re

LEHMAN BROTHERS HOLDINGS INC., et al.

                Debtors.
-----------------------------------------------------------------x

Chapter 11 Case No.

08-13555 (JMP)

(Jointly Administered)

**NEUBERGER BERMAN CLAIMANTS' REPLY AND
OPPOSITION MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................. 3

    The Restrictive Covenants Handcuffed The Neuberger Claimants ................................... 3

    The Neuberger Claimants Couldn't Vote With Their Feet ................................................. 5

    The Neuberger Claimants Had No Choice ......................................................................... 5

CONCLUSION ......................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Barbagallo v. Marcum LLP,*
   925 F.Supp.2d 275 (E.D.N.Y. 2013) ................................................................................ 5

*BDO Seidman v. Hirshberg,*
   93 N.Y.2d 382 (1999) ......................................................................................................... 5

*FTI Consulting, Inc. v. PricewaterhouseCoopers LLP,*
   8 A.D.3d 145, 779 N.Y.S.2d 56 (1st Dept. 2004) .............................................................. 5

*Gillman v. Chase Manhattan Bank, N.A.,*
   73 N.Y.2d 1 (1988) ............................................................................................................. 7

*In re Enron,*
   341 B.R. 141 (S.D.N.Y. 2006) ............................................................................................ 7

*In re Guttenplan,*
   222 A.D.2d 255, 634 N.Y.S.2d 702 (1st Dept. 1995) ........................................................ 7

*Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.,*
   323 F.Supp.2d 525 (S.D.N.Y. 2004) .................................................................................. 4

*King v. Fox,*
   7 N.Y.3d 181 (2006) ........................................................................................................... 7

*Pontone v. York Group, Inc.,*
   2008 WL 4539488 (S.D.N.Y. 2008) .................................................................................. 5

*Sosnoff v. Carter,*
   165 A.D.2d 486, 568 N.Y.S.2d 43 (1st Dept. 1991) .......................................................... 7

*Weiser LLP v. Coopersmith,*
   74 A.D.3d 465, 902 N.Y.S.2d 74 (1st Dept. 2010) ............................................................ 4

**STATUTES**

11 U.S.C. § 510(b) ............................................................................................................... passim

**KAPLAN LANDAU LLP**
1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

**JULIEN & SCHLESINGER, P.C.**
One Whitehall Street
17th Floor
New York, NY 10004
(212) 962-8020

*Attorneys for Claimants: Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Christian Reynolds (28442), Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711), and David I. Weiner (Claim No. 18314), Seth Finkel (Claim No. 18067) and Richard Levine (Claim No. 31657).*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., et al. | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------------x

## NEUBERGER BERMAN CLAIMANTS' REPLY AND OPPOSITION MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

The Neuberger Berman Claimants[1] respectfully submit this memorandum of law in reply and opposition to the arguments advanced by LBHI in its opening memorandum of law, dated January 28, 2014 (ECF No. 42404), that seeks to reclassify the Neuberger Claimants unpaid commission and compensation claims as subordinate equity interests under Section 510(b) of the Bankruptcy Code.

---

[1] As used herein, defined terms have the same meaning as used in the Neuberger Berman Claimants' Opening Memorandum of Law, dated January 28, 2014 (ECF No. 42385) ("Opening Memorandum").

1

In their Opening Memorandum[2], the Neuberger Claimants demonstrated that they had absolutely no choice but to become part of the Lehman compensation scheme when Neuberger merged with Lehman in October 2003. Each Neuberger Claimant was handcuffed by restrictive covenants that precluded their engaging in their chosen occupation elsewhere than at Neuberger; restrictive covenants that, as part of its acquisition, Lehman insisted be ratified and extended. The Neuberger Claimants were required by Lehman to submit to a pay scheme that allowed Lehman unilaterally to withhold and defer half or more of their currently earned, formulaic, production based compensation -- commissions -- for at least five years in the form of unvested RSUs -- more properly, illusory IOUs -- in order for the Neuberger Claimants to maintain the billions of dollars of assets under management and client relationships -- their books of business -- and the resulting revenue stream from their books of business that Lehman bought when it acquired Neuberger.

The Neuberger Claimants involuntary deferral of their earned production compensation in return for unvested, and ultimately worthless, RSUs was entirely a product of the 2003 merger that could not be avoided because of the multiple restrictive covenants imposed on them and as a matter of law. As a result, Lehman unilaterally deferred more than $100 million of compensation that it owed, and continues to owe, to the Neuberger Claimants and that it used for its own purposes in the years leading to its bankruptcy. Lehman now, shamelessly, seeks to reclassify these unmitigated compensation claims as valueless Lehman "equity" and subordinate that "equity" under Section 510(b), in order to deprive the Neuberger Claimants of over half of the compensation that they earned while producing enormous profits for Lehman from October 2003 through 2007.

---

[2] As in their Opening Memorandum, the Neuberger Claimants join in, and, by this reference, adopt all applicable arguments made and advanced by the other Represented Participates in their Reply Memorandum In Opposition To Debtors' Fourteen Omnibus Objections (ECF No. _____) of today's date.

2

To do so, apart from employing an entirely wrong analysis under § 510(b) that is demonstrated in the opening and reply memoranda of the other Represented Participants (ECF Nos. 42356 and _____), in which the Neuberger Claimants join and adopt, Lehman advances three specific arguments addressed to the Neuberger Claimants on pages 21 and 22 of its opening memorandum: (1) "the effects of any pre-merger non-compete agreements with Neuberger Berman" do not apply to Lehman; (2) "as equity holders of Neuberger Berman, the NB Employees certainly had a choice when it came to voting in favor or against the merger with Lehman"; and (3) "the NB Employees had bargaining power and nevertheless voluntarily elected to become Lehman employees . . . because they would have great difficulty finding any other employer who would pay them as much as they could receive by remaining at Lehman." Each of these arguments does not withstand even casual scrutiny and, indeed, is based neither on fact nor applicable law. Instead, Lehman resorts to empty speculation in order to contend that the Neuberger Claimants decision to remain at Neuberger after the merger "was an economic choice based on rational self-interest." *Id.* at p. 22.

## ARGUMENT

### The Restrictive Covenants Handcuffed The Neuberger Claimants

Lehman asserts that "any pre-merger non-compete agreements with Neuberger Berman" do not apply to LBHI. Lehman is factually and legally wrong.

As demonstrated in their Opening Memorandum, while the former partners of Neuberger Berman -- claimants Schwartz, Levine, Weiner and Stiefel -- entered into restrictive covenants incident to the Neuberger IPO in 1999, Lehman *insisted* "as a condition precedent" to the 2003 Lehman-Neuberger Merger Agreement that such three-year post-termination restrictive covenants be reiterated and reaffirmed. *See* Opening Memorandum at pp. 4-6, 8-9 and Stiefel

3

Dec. at Ex. A and B.[3] As made clear at Section 3.1(b) of the October 31, 2003 Amended and Restated Stockholders Agreement (Stiefel Dec., Ex. B), the restrictive covenants required by Lehman as a condition precedent to the merger were intended "to limit [Schwartz, Stiefel, Levine and Weiner's] ability to earn a livelihood in a business similar to the business of the Company Group" -- LBHI and its subsidiaries, including Neuberger, subsequent to the merger.

Likewise, the other Neuberger Claimants, who were Neuberger employees at the time of the merger -- Glasebrook, Nackenson, Ramallo, Finkel, Reynolds and Kenney -- not only were subject to post-employment restrictive covenants as part of their Neuberger employment contracts, but also were compelled as part of the merger and by their supervisors acting on behalf of Lehman to enter new and particularly stringent restrictive covenants that handcuffed them to Lehman and its pay scheme. *See* Opening Memorandum at pp. 6-8, 9-11; Kenney Dec. at Ex. A; Ramallo Dec. at ¶¶ 5-8 and Ex. A.[4]

In short, the restrictive covenants incident to the Lehman-Neuberger merger make it unmistakable that the Neuberger Claimants could work no place other that at Lehman, especially since their books of business and client goodwill were thereby acquired by Lehman.

Moreover, as a matter of law, the various pre and post-merger restrictive covenants entered by the Neuberger Claimants inured to the benefit of, and were fully enforceable by, LBHI. *See, e.g., Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F.Supp.2d 525, 536 (S.D.N.Y. 2004) (finding restrictive covenants enforceable because plaintiff employer had purchased the firm that previously employed employee and had acquired its client relationships and goodwill); *Weiser LLP v. Coopersmith,* 74 A.D.3d 465, 467-68, 902 N.Y.S.2d 74, 76 (1st Dept. 2010) (enforcing restrictive covenants in former firm's partnership agreement because new employer agreed to assume liabilities and obligations of purchased firm in return

---

[3] *See also,* Discovery Docs. NB 00001-00101; LEH-RSU-CL 0000697-719.
[4] *See also,* Discovery Docs. NB 00102-00146; LEH-RSU-CL 0000970-694.

4

for the restrictions and because the "the covenant was not more extensive than reasonably necessary to protect Weiser's legitimate interests in enjoying the goodwill acquired in the merger"). *See also, e.g., BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 392 (1999); *Barbagallo v. Marcum LLP*, 925 F.Supp.2d 275, 294-95 (E.D.N.Y. 2013); *Pontone v. York Group, Inc.*, 2008 WL 4539488 (S.D.N.Y. 2008); *FTI Consulting, Inc. v. PricewaterhouseCoopers LLP*, 8 A.D.3d 145, 779 N.Y.S.2d 56 (1st Dept. 2004).

### The Neuberger Claimants Couldn't Vote With Their Feet

Lehman next foolishly suggests that the Neuberger Claimants "had a choice when it came to voting in favor or against the merger with Lehman." Apart from the fact that the merger was approved by the Neuberger board of directors -- of which only Marvin Schwartz was one of numerous directors -- and, thus, was a fait accompli by the time of a shareholder vote, no claimant, individually -- even Schwartz, the single largest Neuberger shareholder -- or all of them collectively had sufficient votes to block the merger. It is simply absurd, especially when it then was unknown that Lehman was cooking the books, as the Examiner later exposed, to suggest that the Neuberger Claimants had a choice either to become Lehman employees or become a part of the Lehman phony pay scheme because of their minority, largely insignificant, voting interests as Neuberger shareholders. And, of course, the Neuberger Claimants could not vote with their feet, as other employees might have when faced with a merger or acquisition not to their liking, since they were handcuffed to Lehman by the multiple restrictive covenants imposed on them.

### The Neuberger Claimants Had No Choice

Lehman lastly argues that each Neuberger Claimant "voluntarily elected to become a Lehman employee and remain a Lehman employee" and accept deferred payment in

5

RSUs "because they would have great difficulty finding any other employer who would pay them as much as they could receive by remaining with Lehman." This simply is wrong.

But for the restrictive covenants that bound them to Lehman, Marvin Schwartz and the other members of the Straus Group -- Richard Glasebrook; Stephanie Stiefel; Henry Ramallo and David Weiner -- which had (and has) over $17 billion under management, for example, could have taken its clients and investment management expertise and opened its own shop, sharing its profits from an annual investment advisory fee of between 1.25 and 1.75% with no corporate hierarchy and paying only overhead costs and related transactional expenses. Each Straus Group member could have earned far, far in excess of their pay at Lehman -- at least $221 million a year less expenses divided among the Group members, as opposed to approximately 30% of that, or $66 million a year, while at Lehman[5] -- especially since half of that pay was in Lehman promissory notes called RSUs that never vested and yet is unrealized since LBHI failed just short of the first five year vesting period -- four years and eleven months after its merger with Neuberger.

Indeed, not only did Lehman insist on restrictive covenants inextricably tying the Neuberger Claimants to the merged Neuberger, but Richard Fuld sought personal assurance from Marvin Schwartz that he and the Straus Group would remain with Neuberger -- as if any of them could leave, other than by retirement or death -- as a precondition for the merger.

The Neuberger Claimants had absolutely no choice whatsoever, much less an "economic choice" that favored their "rational self interest." Indeed, what "rational self-interest" is advanced by intentionally deferring hard earned production compensation for five years under

---

[5] $17 billion is an average of the funds under Straus Group management during the Lehman years. This is multiplied by an average investment advisory fee of 1.3% to yield annual advisory fees of $221 million. At Lehman, the Group members received approximately 30% of the Group's annual advisory fees in compensation, at least half of which was deferred by Lehman as RSUs.

terms that LBHI could unilaterally change and which, in any event, further handcuffed the Neuberger Claimants as employees, other than solely the self-interest of LBHI.

Participation by the Neuberger Claimants in the Lehman pay scheme instead bears the very hallmarks of an unconscionable contract, which "has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v. Fox*, 7 N.Y.3d 181, 191 (2006). *See also, e.g., Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). Contrary to Lehman's argument, the continued handcuffs imposed by restrictions that only began post-employment prevented any repudiation of Lehman's continued and unilateral deferral of earned production compensation. *See, e.g., Sosnoff v. Carter,* 165 A.D.2d 486, 492, 568 N.Y.S.2d 43, 47 (1st Dept. 1991) ("where during the period of acquiescence or at the time of the alleged ratification the disaffirming party is still under the same continuing duress, he has no obligation to repudiate until the duress has ceased"). *See also, In re Guttenplan,* 222 A.D.2d 255, 257, 634 N.Y.S.2d 702, 703 (1st Dept. 1995).

In sum, the Neuberger Claimants had no bargaining power, made no election and had no choice but to participate in the Lehman RSU pay scheme. The decision to receive deferred RSUs instead of presently earned commissions simply was not "a condition of employment that the Claimants *willingly accepted* in return for their labor" and, thus, equity -- if equity at all -- that they purchased, *In re Enron,* 341 B.R. 141, 151 (S.D.N.Y. 2006) (emphasis supplied), but, instead, the result of an unconscionable employment contract that was forced on the Neuberger Claimants by the merger and the restrictive covenants that handcuffed them to Lehman.

7

Indeed, the post-bankruptcy payment of the Neuberger Claimants' production based compensation -- commissions -- that had been deferred during 2008 clearly evidences that the withheld amounts from 2003 through 2007 similarly were and are compensation and not any sort of "purchase" or investment in any "equity securities" of LBHI. "If you receive production compensation throughout the year and have had compensation deferred under the Lehman Brothers Equity Awards Program, those deferrals have . . . been placed in the trust with Wells Fargo. You will soon receive an individual statement of your deferral and, to the extent you are entitled to such deferrals, the payments will be made in January 2009." November 17, 2008 Memorandum from George Walker and Heather Zuckerman to U.S. Employees of Neuberger Berman Holdings (Discovery Doc. NB 00147-148). Such deferred 2008 production compensation thereafter was "paid on January 26, 2009" to the Neuberger Claimants (Discovery Doc. NB 00151).

In these circumstances, for LBHI to argue that the Neuberger Claimants "purchased" an "equity security" that gives rise to "damages" simply is disgraceful and a demonstrable perversion of Section 510(b). The Neuberger Claimants are general creditors of LBHI that are entitled to recover their deferred and unpaid commissions and production based compensation.

## CONCLUSION

For all of the foregoing reasons, and those set forth in the Neuberger Claimants' Opening Memorandum and its accompanying Declarations and in the Opening and Reply Memoranda submitted on behalf of the other Represented Participants, the various omnibus objections by LBHI to reclassify the claims of the Neuberger Claimants as equity interests under Section 510(b) must be denied and the Neuberger Claimants' general creditor compensation claims must be allowed.

Dated: New York, New York
       March 4, 2014

                                        KAPLAN LANDAU LLP

                                        By: _____
                                            Eugene Neal Kaplan (EK-4229)

                                        1065 Avenue of the Americas
                                        27th Floor
                                        New York, New York 10018
                                        (212) 593-1700

                                        Michael S. Schlesinger (MS-0399)
                                        **JULIEN & SCHLESINGER, P.C.**
                                        One Whitehall Street
                                        17th Floor
                                        New York, New York 10004
                                        (212) 962-8020

                                        *Attorneys for the Neuberger Claimants*