UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                 :

In re:                                                :

                                                   :         Chapter 11

LEHMAN BROTHERS HOLDINGS INC., et al.,    :         Case No. 08-13555 (SCC)

                                                   :

                          Debtors.                  :         (Jointly Administered)

                                                   :
------------------------------------------------------------- x

**DECLARATION OF ROGER SAKS IN OPPOSITION TO DEBTORS'
176TH OMNIBUS OBJECTION TO RECLASSIFY PROOFS OF CLAIM
AS EQUITY INTERESTS, OR ALTERNATIVELY, TO SUBORDINATE
CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE**

         Roger Saks declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

         1.      I make this declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon.

         2.      I was employed by Lehman Brothers beginning April 2001.  I remained a Lehman employee until the bankruptcy case was filed in September 2008.  Thereafter, I became an employee of Barclays.

         3.      Lehman compensated me on what it called a Total Compensation basis, by agreeing to pay commissions on the products I sold.  The commission varied depending on the product, but Lehman agreed to pay me a specific commission for each product.  On a monthly basis after my Gross Production was determined, Lehman told me what my "Total Sales Compensation" was, and then told me what portion of my Total Sales Compensation would be paid as "Cash Commissions."  The balance was unilaterally retained by Lehman and I received a statement containing the description "Equity Accrual Calculated."

{00006046v1 }

4. At the end of each fiscal year Lehman took that portion of my Total Sales Compensation that it had withheld as Equity Accrual Calculated and gave me a deferred compensation credit designated as RSUs.

5. When Lehman paid me my "Cash Commissions," Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion of my compensation was earned simultaneously as part of the agreed-upon commissions, it was not reported to the tax authorities as part of my compensation.

6. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs. My participation in this compensation plan was automatic and mandatory – there were no election or enrollment forms to complete, and I could not choose whether to participate or not participate. I paid no tax on the RSU-designated portion of my total compensation upon the grant of the RSU.

7. At the outset of employment I was told that at Lehman's discretion a portion of my Total Compensation *might* be payable in the form of RSUs pursuant to Lehman's employee stock award program. At the same time, I was not told that I was *required* to take a minimum portion of my Total Compensation in the form of RSUs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation that I would be required to accept in the form of RSUs.

8. Pursuant to the RSU Agreements, I recognized that to be paid my compensation, I was contractually obligated to avoid engaging in any "Detrimental Activity" and I had other employment-related conditions, none of which were performance-based, that needed to be met over the course of five years. As Lehman cautioned me in the program documents it provided, if it exercised its option to pay me a portion of my Total Compensation in RSUs, I had

2

no rights as a stockholder until I became the record holder of stock. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. Even after the RSUs vested, they did not convert to stock and I was not permitted to sell the shares.

9. What Lehman describes as a financial incentive to remain with Lehman was really its assertion of financial control over significant portions of my Total Compensation subject to the performance of the employment-related conditions. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings that made it costly for me to leave the firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees.

10. I did not join Lehman so that I could make a profit on its stock. My decision to join Lehman did not turn on the nature of the RSU plan. I came to Lehman as an employee and not as an investor.

11. Finally, with RSUs I paid tax at ordinary income rates on the market value of the shares Lehman issued to me upon conversion, not capital gains tax on any portion of the market value that might have been greater than the value at the initial grant date.

12. Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, after it filed for bankruptcy Lehman claims that the unpaid amount is equity, even though no equity was ever issued and I had no rights as an equity holder.

13. Lehman never told me, either in its annual brochures or its description of the RSUs, that if Lehman filed for bankruptcy there was a risk that I would not receive the

3

compensation that it declared and withheld.  I maintain my rights to be paid as a general unsecured creditor.

       I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Saddle River, New Jersey
       March 4, 2014

_____
Roger Saks

4

{00006046v1 }