UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                              :

In re                         :      Chapter 11 Case No.
                              :

LEHMAN BROTHERS HOLDINGS INC., et al.,   :      08-13555 (SCC)
                              :

                 Debtors.     :      (Jointly Administered)
                              :
------------------------------------------------------------- x

STATE OF NEW YORK     )
                        ss.:
COUNTY OF NEW YORK    )

## AFFIDAVIT OF TIMOTHY A. BURKE

Timothy A. Burke, being duly sworn, deposes and says:

1.      I make this affidavit based on my personal knowledge. The facts set forth below are true and correct to the best of my knowledge. I submit this affidavit in opposition to the Debtors' 217th and 314th omnibus objections to claims.

2.      I was employed by Lehman Brothers beginning December 1986. I remained a Lehman employee up to and through the date it filed for chapter 11. Lehman terminated my employment on or about September 21, 2008.

3.      Lehman compensated me on what it called a Total Compensation basis by payment of an annual salary payable bi-weekly plus a bonus. Consistent with the investment banking industry, my bonus was more than an integral part of my compensation; it was the majority of my compensation.

4.      For each year between 2003 and 2007, shortly after the end of the fiscal year, Lehman told me verbally and in writing, the amount of my total compensation for that year and

that it had determined the year-end part of my total compensation would be divided into

portions: for 2003, 2004 and 2005, one portion designated as RSUs, one designated as options

and the balance as a"Total Cash Payment;" for the remaining years I was told total compensation

would be divided into RSUs and the balance as the "Total Cash Payment."

    5.    When Lehman paid me the "Total Cash Payment," Lehman reported it to the tax

authorities as compensation income and I paid income tax on it through customary withholding.

While the RSU-designated portion was declared as part of my total compensation  at the same

time, it was not reported by Lehman to the tax authorities as compensation income.

    6.    When I was hired by Lehman, I was paid all my compensation on a current basis,

including  the year-end part of my total compensation that Lehman referred to as a bonus. When

Lehman implemented the RSU compensation plan in 1994, I was told that *at the Firm's*

*discretion* a portion of my total compensation (combined base salary and other compensation)

*may* be payable in the form of RSUs pursuant to the Firm's employee stock award program.  At

the same time, I was not told  that I was required to take a minimum portion of my Total

Compensation each fiscal year in the form of RSUs.  Further, any portion of my Total

Compensation payable in the form of RSUs in any years was at the discretion of Lehman and

varied from year to year.

    7.    Beginning in 1994, if Lehman exercised its discretion to pay part of my total

compensation in RSUs, my participation in the RSU plan was automatic and mandatory -- there

were no election or enrollment forms to complete, I could not choose whether or not to

participate.

    8.    In each of the years at issue here Lehman declared what I earned as my total

compensation, one portion in the form of a promised future payment of my total compensation,

and as one means of performing that promise contracted with me under the RSUs  to pay a

2

portion of my total compensation in five years, providing for the possible the use of its own stock as currency when that time came. I had no rights to any stock during this five-year period while Lehman held back that portion of my total compensation it had previously declared I had earned. When Lehman filed for bankruptcy, what I was left with was my contractual right to the total compensation Lehman had declared and promised would be paid, as well as my rights under the applicable labor laws.

9.      Pursuant to the RSU Agreements, I recognized that in order to be paid my compensation referred to in paragraph 8 after each of the aforementioned rolling five years, I was contractually obligated to avoid engaging in any "Detrimental Activity" and that under these Agreements I had other employment-related conditions, none of which were performance based, which needed to be met. If Lehman exercised its option to pay a portion of my total compensation in the form of RSUs, as the Firm cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. Even after the RSUs vested, the RSUs did not convert to stock and I was not permitted to sell the shares.

10.      What Lehman describes as a financial incentive to remain with Lehman was really Lehman's assertion of financial control by withholding significant portions of my total compensation. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the Firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the Firm.

11.      I did not join Lehman so that I could make a profit on its stock. My decision to join Lehman did not turn on the nature of the RSU plan. What drove me to join Lehman was a career decision. I came to Lehman as an employee and not as an investor.

12.    Finally, with RSUs I paid tax at ordinary income rates on the full market value of the shares Lehman issued to me upon conversion; not capital gains tax on any portion of the market value which might have been greater than the value at the initial grant date.

13.    Lehman does not dispute that it retained me to perform services as an employee and that it received the benefit of my services, for which at the end of each fiscal year it declared my Total Compensation.  Although I continued to work for Lehman in reliance on its promise to pay me the compensation it declared I had earned, Lehman subsequent to bankruptcy claims that unpaid amount is now classified as equity, even though no equity was ever issued and I had no rights as a holder of equity.

14.    Lehman never told me, either in its annual brochures or its description of the RSUs,  that if Lehman filed for bankruptcy that I would not have the same standing as other unpaid general creditors simply because I had been a participant in the employer imposed RSU plan.   Subsequent to the bankruptcy through my proof of claim filing, I learned that any priority wage claim I have would be limited to the 180-day period prior to the bankruptcy filing. Lehman never requested nor did I sign a written authorization for Lehman to withhold my wages.  . I maintain my rights to be paid as an unsecured creditor, both senior to general creditors for those declared and unpaid wages which fall within the limited time frame prior to the bankruptcy, and as a general creditor for all other declared and unpaid wages, my Total Compensation, under the wage laws of the State of New York.

_____
Timothy A. Burke

Sworn to before me this 4
day of March 2014
_____

4

3/4/2014

*Laura Celambrino*

Notary Public

LAURA CELAMBRINO
Notary Public, State of New York
No:01CE6224700
Qualified in New York County
Commision Expires July 12, 2014

5