UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
                                 :

In re                          :        Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., et al.,  :        08-13555 (SCC)

                     Debtors.    :        (Jointly Administered)
                                   :
--------------------------------------------------------------- x

STATE OF NEW YORK    )
                          ss.:
COUNTY OF NEW YORK  )

### AFFIDAVIT OF NACHIKETA DAS

Nachiketa Das, being duly sworn, deposes and says:

1.     I make this affidavit based on my personal knowledge.  The facts set forth below are true and correct to the best of my knowledge. I submit this affidavit in opposition to the Debtors' 130th omnibus objections to claims.

2.     I was employed by Lehman Brothers beginning September 1996.  I remained a Lehman employee up to and through the date it filed for chapter 11 until I was hired by Barclays.

3.     Lehman compensated me on what it called a Total Compensation basis by payment of an annual salary payable bi-weekly plus a bonus.  Consistent with the investment banking industry, my bonus was more than an integral part of my compensation; it was the majority of my compensation.

4.     For each year between 2003 and 2007, shortly after the end of the fiscal year, Lehman told me verbally and in writing, the amount of my total compensation for that year and that it had determined the year-end part of my total compensation would be divided into

portions: for 2003 one portion designated as RSUs, one designated as options and the balance as a "Total Cash Payment;" for the remaining years one portion designated as RSUs and the balance as the "Total Cash Payment."

5.      When Lehman paid me the "Total Cash Payment," Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding.

6.      My participation in the RSU compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate. I paid no tax on the RSU-designated portion of my total compensation upon the grant of the RSU.

7.      At the outset of employment I was told that *at the Firm's discretion* a portion of my total compensation (combined base salary and other compensation) *may* be payable in the form of RSUs pursuant to the Firm's employee stock award program. At the same time, I was not told at the outset of employment that I was required to take a minimum portion of my Total Compensation each fiscal year in the form of RSUs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation that I would be required to accept in the form of RSUs, or even that I would be required to accept any portion as RSUs.

8.      In each of the years at issue here Lehman declared what I earned as my total compensation, one portion in the form of a promised future payment of my total compensation, and as one means of performing that promise contracted with me under the RSUs to pay a portion of my total compensation in five years, providing for the possible the use of its own stock as currency when that time came. I had no rights to any stock during this five-year period while Lehman held back that portion of my total compensation it had previously declared I had earned. When Lehman filed for bankruptcy, what I was left with was my contractual right to the total

2

compensation Lehman had declared and promised would be paid, as well as my rights under the applicable labor laws.

9.      Pursuant to the RSU Agreements, I recognized that in order to be paid my compensation referred to in paragraph 8 after each of the aforementioned rolling five years, I was contractually obligated to avoid engaging in any "Detrimental Activity" and that under these Agreements I had other employment-related conditions, none of which were performance based, which needed to be met.  If Lehman exercised its option to pay a portion of my total compensation in the form of RSUs, as the Firm cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock.  Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs.  Even after the RSUs vested, the RSUs did not convert to stock and I was not permitted to sell the shares.

10.     What Lehman describes as a financial incentive to remain with Lehman was really Lehman's assertion of financial control by withholding significant portions of my total compensation subject to the performance of the employment-related conditions.  There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the Firm.  The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the Firm.

11.     I did not join Lehman so that I could make a profit on its stock.  My decision to join Lehman did not turn on the nature of the RSU plan.  What drove me to join Lehman was a career decision.  I came to Lehman as an employee and not as an investor.

12.     Finally, with RSUs I paid tax at ordinary income rates on the full market value of the shares Lehman issued to me upon conversion; not capital gains tax on any portion of the market value which might have been greater than the value at the initial grant date.

3

13.    Lehman does not dispute that it retained me to perform services as an employee and that it received the benefit of my services, for which at the end of each fiscal year it declared my Total Compensation.  Although I continued to work for Lehman in reliance on its promise to pay me the compensation it declared I had earned, Lehman subsequent to bankruptcy claims that unpaid amount is now classified as equity, even though no equity was ever issued and I had no rights as a holder of equity.

14.    Lehman never told me, either in its annual brochures or its description of the RSUs,  that if Lehman filed for bankruptcy  that I would not have the same standing as other unpaid general creditors because I had been a participant in the employer imposed RSU plan. Subsequent to the bankruptcy through my proof of claim filing, I learned that any priority wage claim I have would be limited to the 180-day period prior to the bankruptcy filing.  I maintain my rights to be paid as a general unsecured creditor, both senior to general creditors for those declared and unpaid wages which fall within the limited  time frame prior to the bankruptcy, and as a general creditor for all other declared and unpaid wages  under the wage laws of the State of New York.

_____
Nachiketa Das

Sworn to before me this 4th
day of March 2014

_____
Notary Public

MATTHEW J REVERE
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY, LIC. #07RE6239112
COMM. EXP. 10/11/14

4