UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------- x

STATE OF NEW YORK      )
                                            ss.:
COUNTY OF NEW YORK    )

## AFFIDAVIT OF VINCENT PRIMIANO

Vincent Primiano, being duly sworn, deposes and says:

1.        I make this affidavit based on my personal knowledge.  The facts set forth below are true and correct to the best of my knowledge. I submit this affidavit in opposition to the Debtors' 118th and 314th omnibus objections to claims.

2.        I was employed by Lehman Brothers beginning August 1990.   I remained a Lehman employee up to and through the date it filed for chapter 11.  Lehman terminated my employment on or about September 21, 2008.

3.        Lehman compensated me on what it called a Total Compensation basis by payment of an annual salary payable bi-weekly plus a bonus.  Consistent with the investment banking industry, my bonus was more than an integral part of my compensation; it was the majority of my compensation.  For year 2004, Lehman promised me in writing a minimum guaranteed bonus based on a fixed formula.

4.        For each year between 2003 and 2007, shortly after the end of the fiscal year, Lehman told me verbally and in writing, the amount of my total compensation for that year (other than for 2004 with respect to my minimum guaranteed bonus the terms of which were

agreed upon at the beginning of the year) and that it had determined the year-end part of my total

compensation  would be divided into portions: for 2003 one portion designated as RSUs, one as

options and the balance that was the "Total Cash Payment;" for the remaining years one portion

designated as RSUs and the balance as the "Total Cash Payment."

5.       When Lehman paid me the "Total Cash Payment," Lehman reported it to the tax

authorities as compensation income and I paid income tax on it through customary withholding.

6.       When I was hired by Lehman, I was paid all my compensation on a current basis

including the year-end part of my compensation that Lehman referred to as a  bonus.  Beginning

in 1994, when Lehman introduced the RSU compensation plan, my participation in the RSU plan

was automatic and mandatory -- there were no election or enrollment forms to complete, I could

not choose whether or not to participate.  I was not required nor did I pay tax on the RSU-

designated portion of my total compensation upon the grant of the RSUs.

7.       When the Firm implemented the RSU compensation plan, I was told that *at the

Firm's option* a portion of my total compensation (combined base salary and other

compensation) *may* be payable in the form of RSUs pursuant to the Firm's employee stock

award program.  Further, after Lehman implemented the RSU compensation program in 1994,  it

was in Lehman's discretion each year whether and to what extent part of my total compensation

would be paid in RSUs.

8.       In each of the years at issue here Lehman declared what I earned as my total

compensation, one portion in the form of a promised future payment of my total compensation,

and as one means of performing that promise contracted with me under the RSUs  to pay a

portion of my total compensation in five years, providing for the possible use of its own stock as

currency when that time came.  I had no rights to any stock during this five-year period while

Lehman held back that portion of my total compensation it had previously declared I had earned.

2

When Lehman filed for bankruptcy, what I was left with was my contractual right to the total

compensation Lehman had declared and promised would be paid provided I satisfied the

employment-related conditions, as well as my rights under the applicable labor laws.

9.        Pursuant to the RSU Agreements, I recognized that in order to be paid my

compensation referred to in paragraph 8 after each of the aforementioned rolling five years, I was

contractually obligated to avoid engaging in any "Detrimental Activity" and that under these

Agreements I had other employment-related conditions, none of which were performance based,

which needed to be met.   If Lehman exercised its option to pay a portion of my total

compensation in the form of RSUs, as Lehman cautioned me in the program documents it

provided, I had no rights as a stockholder until I became the record holder of stock.  Further, I

had no ability to sell, assign, pledge or otherwise dispose of the RSUs.  Even after the RSUs

vested, the RSUs did not convert to stock and I was not permitted to sell the shares.

10.       What Lehman describes as a financial incentive to remain with Lehman was

really Lehman's assertion of financial control over a significant portion of my total

compensation.  There was nothing in this practice that attracted me to work at Lehman – it was

just withholding my earnings as a means of making it costly for me to leave the Firm.  The RSUs

were never a form of compensation I elected to take; it was Lehman's way of handcuffing

employees to the Firm.

11.       I certainly did not join Lehman so that I could make a profit on its stock since

there was no RSU plan in place when I was hired.  My decision to join Lehman did not turn on

the nature of the RSU plan nor did my decision to remain with Lehman turn on the RSU plan,

except to the extent I sought to avoid the forfeiture of my previously earned compensation.

What drove me to join Lehman was a career decision.  I came to and remained with Lehman as

an employee and not as an investor.

3

12.    I would also like to inform the Court that I was an officer and worked for Lehman Bros. Bank ("LBB"), a Delaware based thrift, to the best of my recollection, during the years 2004 through 2007.   In that capacity, I was a dual Lehman employee, devoting a substantial amount of my time on a daily basis to LBB business and affairs while working out of Lehman's New York offices.   I recall that LBHI guaranteed all the obligations of LBB. As of April 12, 2007, I was elected an officer of LBHI as reflected in the LBHI Minutes of the Board of Directors.  The Firm generally did not communicate to you the name of the legal entity you resided within on the Firm's books and records or which legal entity was responsible for paying your compensation.

13.    Finally, with RSUs I paid tax at ordinary income rates on the full market value of the shares Lehman issued to me upon conversion; not capital gains tax on any portion of the market value which might have been greater than the value at the initial grant date.

14.    Lehman does not dispute that it retained me to perform services as an employee and that it received the benefit of my services, for which at the end of each fiscal year it declared my Total Compensation.  Although I continued to work for Lehman in reliance on its promise to pay me the compensation it had declared I earned, Lehman subsequent to its bankruptcy claims that  unpaid amount is now classified as equity, even though no equity was ever issued and I had no rights as a holder of equity.

15.    Lehman never told me, either in its annual brochures or its description of the RSUs,  that if Lehman filed for bankruptcy that I would not have the same standing as other unpaid general creditors simply because I had been a participant in the employer imposed RSU plan.  Subsequent to the bankruptcy through my proof of claim filing, I learned that any priority wage claim I have would be limited to the 180-day period prior to the bankruptcy filing.  I maintain my rights to be paid as a general unsecured creditor, both senior to general creditors for

4

those declared and unpaid wages which fall within the limited time frame prior to the

bankruptcy, and as a general creditor for all other declared and unpaid wages under the wage

laws of the State of New York.

_____
Vincent Primiano

Sworn to before me this 4th
day of March 2014

_____
Notary Public

CHARMAINE ANGELA WILLIAMS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01WI6296786
Qualified in Kings County
My Commission Expires February 10, 2018