UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,                           :    08-13555 (SCC)
                                                                 :
                                            Debtors.             :    (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

### DECLARATION OF CLAIMANT STEVEN ENGEL IN OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE

Steven Engel declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 313th Omnibus Objection.

2. I was employed by Lehman Brothers from September 1996 through Lehman's filing of its bankruptcy petition in September 2008. Following Lehman's sale of assets to Barclays Bank I was employed by Barclays.

3. Lehman compensated me on what it called a Total Compensation basis, by payment of an annual salary (paid in bi-weekly installments) plus a bonus. My bonus was an integral part of my compensation – my annual salary during the years at issue here was generally only 40 to 60 percent of my total compensation.

4. For each year between 2003 and 2008 Lehman told me in writing, shortly after the end of each fiscal year (November 30), the amount of my bonus for that year and that my bonus was being divided into two portions, one designated Restricted Stock Awards (or "RSUs")

and one designated as the "Total Cash Payment." For each of those years, between 15 percent and 25 percent of my bonus was designated as RSUs.

5. When Lehman paid me the "Total Cash Payment" portion of my bonus, Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion was declared as part of my bonus at the same time, I did not pay income tax on the RSU-designated portion.

6. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion amount of my bonus that was designated as RSUs, and I had no ability to direct how the amounts that Lehman withheld would be used. Since what I received was Lehman's contract promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

7. When I was first hired by Lehman I was not told that I was required to take a minimum portion of my Total Compensation in the form of RSUs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation for that year that I would be required to accept in the form of RSUs, or even that I would be required to accept any portion as RSUs. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

8.  Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. I had no rights but the contract rights of an employee whose compensation had been withheld.

9.  I understand that Lehman now has taken the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue. For prior years, not at issue here, after the five-year waiting period ended and I was issued the RSU-designated portion of my bonus, unless I paid the withholding tax myself Lehman withheld from this compensation a sufficient amount to account for the federal withholding tax, and then deliver the amount common stock into which the RSUs were converted. The entire amount of the bonus was taxed as ordinary income to me. I did not pay the tax myself, and accordingly Lehman withheld the tax from the compensation due. However, Lehman never reported to me, on a Form 1099 or elsewhere, that it had sold securities in my name to raise cash for the withholding tax, which would have been necessary if "equity securities" had been issued to me at the time of the declaration of the bonus.

10. I have reviewed the "Factual Background" included in Lehman's Memorandum in Support. It is self-serving, unsupported by the facts, and imputes an intent to me that wasn't there. The Background concedes that the RSU-designated portion was withheld from each employee's earned and declared Total Compensation. The Background claims that the RSUs gave employees a financial stake in the company, but until the end of the waiting period

3

employees had no rights as a stockholder and had nothing but Lehman's promise to pay us the balance of the bonus Lehman had previously declared. Employees like me had no choice as to our participation. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's arbitrary assertion of financial control by withholding 25 percent to 40 percent of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm.

11. Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period.

12. Lehman's representation to the Court that RSU holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of RSUs the holder held. But Lehman never tells the Court here what it also never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding RSUs (determining what fraction of a vote the purported RSU

4

vote had, if any), when did the RSU come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSU had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

13.    Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is simply meaningless. What has meaning is what I had before the end of five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue here Lehman declared what I earned as my bonus, promised payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had declared and promised would be paid.

14.    The economic substance of the RSU Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus.

15.    Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, Lehman now claims for the unpaid

5

amount the classification of equity, even though no equity was ever issued and I had no rights as a holder of equity.

16.    Lehman never told me in its annual brochures or its description of the RSUs, and I did not understand, that if Lehman filed for bankruptcy there was a risk I would not receive any of the compensation that it declared and withheld, or that I would not have the same standing as other unpaid creditors, because I had been compensated with RSUs. Lehman did not ask for, and I never provided, a written authorization for deductions or withholdings from my wages. I respectfully maintain and reassert my rights to be paid as a general unsecured creditor under the wage laws of the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 4, 2014

_____
Steven Engel