UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                        :

In re                                                   :        Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., et al.,  :        08-13555 (SCC)

                                Debtors.     :        (Jointly Administered)
                                                       :
------------------------------------------------------------ x

**DECLARATION OF CLAIMANT MARY E. LANGEVIN IN OPPOSITION
TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING
TO RECLASSIFY OR SUBORDINATE COMPENSATION CLAIMS AS EQUITY**

      I, Mary E. Langevin, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's Seventy-Third Omnibus Objection.

2. I was employed by Lehman Brothers in the State of New York from November 2000 through Lehman's chapter 11 filing of bankruptcy petition on Sept. 15, 2008.

3. Prior to its chapter 11 filing, Lehman compensated me on what it called a Total Compensation basis by payment of an annual salary payable bi-weekly plus a bonus. Consistent with the investment banking industry, my bonus was more than an integral part of my compensation; it was close to the majority – approximately 39% to 46% – of my compensation.

4. For each year between 2003 and 2008 Lehman told me in writing, shortly after the end of each fiscal year (November 30), the amount of my bonus for that year and that my bonus was being divided into two portions, one designated Restricted Stock Awards (or "RSUs") and one designated as the "Total Cash Payment." For each of those years, between 11% percent and 13% of my bonus was designated as RSUs.

5. When Lehman paid me the "Total Cash Payment," Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion was declared as part of my bonus at the same time, it was not reported to the tax authorities as my compensation income.

6. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion amount of my bonus that was designated as RSUs, and I had no ability to direct how the amounts that Lehman withheld would be used. I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

7. When I was first hired by Lehman I was told that I was required to take, "At the Firm's option, a portion of your 2000 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in restricted stock units pursuant to the Firm's employee stock award program as then in effect." A true and correct copy of my original employment offer letter is attached hereto as Exhibit A. I was not told at the outset of each fiscal year what portion of my Total Compensation for that year I would be required to accept in the form of RSUs, or even that I would be required to accept any portion as

2

RSUs. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

8. Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, hedge, pledge or otherwise dispose of the RSUs.

9. I understand that Lehman now has taken the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue. For prior years, not at issue here, after the five-year waiting period ended and I was issued the RSU-designated portion of my bonus, Lehman withheld from this compensation a sufficient amount of cash to pay the federal withholding tax, and then provided me with Lehman shares for the balance. After conversion to Lehman stock, the entire amount of the 5-year seasoned RSU value was taxed as ordinary income to me. There was never any sale of securities to raise cash for the withholding tax, which would have been necessary if "equity securities" had been issued to me at the time of the declaration of the bonus.

10. I have reviewed the "Factual Background" included in Lehman's Memorandum in Support. It is self-serving, unsupported by the facts, and imputes an intent to me that wasn't there. The Background concedes that the RSU-designated portion was withheld from each employee's earned and declared "Total Compensation." The Background claims that the RSUs gave employees a financial stake in the company, but until the end of the waiting

3

period employees had no rights as a stockholder and had nothing but Lehman's contract promise to pay us, someday, the balance of the bonus Lehman had previously declared and withheld. Employees like me had no choice as to our participation. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's arbitrary assertion of financial control by withholding a percentage of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the firm.

11. Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period.

12. Lehman's representation to the Court that RSU holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of RSUs the holder held. But Lehman never tells the

4

Court here what it also never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding RSUs (determining what fraction of a vote the purported RSU vote had, if any), when did the RSU come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSU had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

13. Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is simply meaningless and disingenuous to any finance professional. Common stock represents direct right of ownership in a company. RSU's, on the other hand, were accounting tricks to generate the illusion of equity, while keeping the company's cash outlays as minimal as possible. What matters is what I had before the end of five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue here Lehman declared what I earned as my bonus, promised payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. Even after vesting of the RSUs there was no real right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the RSU Agreement. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the withheld bonus Lehman had declared and promised would be paid as part of my wages.

5

14. Lehman recognized my rights as those of a contract creditor in its petition and schedules, where RSU agreements were listed as Executory Contracts under Schedule G. My claim was assigned Claim No. <u>24675</u> and corresponds to Schedule No. <u>555220800</u> according to the Epiq docket site "www.Lehman-Docket.com." A true and correct copy of the Proof of Claim that I filed in connection with my contract rights under the RSU Agreements is attached hereto as <u>Exhibit B</u>. Along with its bar date notice, Lehman provided me with this Proof of Claim form which it had largely pre-completed, including inserting the caption, supplying my name and address, and notifying me that I had a "Schedule G" claim for an "Executory Contract or Unexpired Lease." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement." I completed and filed the rest of the blanks on the form Lehman had sent and attached relevant employment records showing the amounts withheld. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent. Lehman still owes me unpaid wages for services I rendered in the amount stated on this form. The amount claimed is supported by the compensation statements attached to the proof of claim form for the relevant period of my employment, based on the amounts withheld.

15. Lehman does not dispute that it retained me to perform services as an employee and that it received the benefit of my services, for which at the end of each fiscal year it declared my Total Compensation. Although I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I had earned, subsequent to the bankruptcy Lehman claims the unpaid withheld amount is somehow "equity," even though no true equity (like common stock) was ever issued and I had no rights as a holder of real equity in Lehman.

16. Lehman also never told me, either in its employment offer, equity awards plan, or any of its descriptions of the mandatory RSU program that if Lehman filed for bankruptcy, it would try to prevent me from at least receiving full payment of the wages it had deducted and withheld from me. I maintain my rights to be paid as a general unsecured creditor under the wage laws of the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 4, 2014

_____
Signature

_____
Mary E. LANGEVIN
Printed Name

# Exhibit A



# LEHMAN BROTHERS

VICTORIA BERGER-GROSS
SENIOR VICE PRESIDENT
HUMAN RESOURCES

October 18, 2000

Ms. Mary Langevin
2 Adrian Avenue, Apartment 5A
Bronx, NY 10463

Dear Mary:

We are pleased to extend to you our offer of employment to join Lehman Brothers ("The Firm") as a Senior Market Data Analyst in the Global Infrastructure Services, Distributed Systems Department of the Information Technology Division. Your title of Vice President will be submitted for official approval by our Board of Directors at the next quarterly Board meeting following your start date. We expect your employment to commence on or about October 30, 2000.

For the performance year ending November 30, 2000, your compensation will be as follows:

- Salary at the annualized rate of $125,000, payable in biweekly installments in accordance with our customary payroll practices.

- A 2000 bonus in the amount of $75,000, less applicable taxes and deductions, will be paid on or about January 29, 2001 when the Firm pays its annual bonuses.

- At the Firm's option, a portion of your total 2000 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in restricted stock units pursuant to the Firm's employee stock award program as then in effect.

You will also be eligible to participate in the standard employee benefits program, which will be explained to you during your orientation session.

The salary and bonus amounts set forth above will be paid at the times and in the amounts stated, except that they will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the dates of scheduled payment, you have resigned, or have been terminated from the Firm because of misconduct, breach of Firm policies or rules, dishonesty, violation of laws or regulations, or substantial and continuing failure to perform employment duties or obligations satisfactorily. The salary and bonus amounts set forth above may be ratably reduced in the event of any authorized leave of absence during 2000. If you should die or become disabled before the bonus payment date, your base salary payments will end (subject to salary continuation in the event of disability), and you or your estate will be paid a pro-rata portion of the minimum bonus set forth above with respect to the year's which your death or disability occurs. Your compensation* for all periods following performance year 2000 will be determined at the Firm's discretion.

Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. Among other things, this means that you must have and maintain in good standing all applicable licenses and registrations. This also means that this offer of employment is contingent on the successful completion of a background investigation, as well as on your satisfactorily meeting all pre-employment requirements including passing a pre-employment drug screen and producing documentation to verify your identity and eligibility to work in the United States. Please contact Melissa Bauer at (201) 524-2967, to schedule a mutually convenient time for your pre-employment processing.

While the above compensation commitments will be honored (absent the listed exceptions), this letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time and for any reason.

This letter shall be binding upon the Firm and its successors and assigns.

If you agree with the terms outlined in this letter, please acknowledge the same by signing the enclosed copy and returning it to Dalva Durante in the ITD Human Resources Department.

Mary, this is an exciting time to be at Lehman Brothers. We are sure that you will find many opportunities to make a contribution to the Firm.

Sincerely,

*[signature]*

Victoria Berger-Gross
SVP/Director, Human Resources
Information Technology Division

Accepted on this 30th day of October, 2000

*[signature]*
Mary Langevin

cc:    Gregg Somma

\* compensation understood to be defined as bonus (mel)

# Exhibit B

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: | Chapter 11 | UNIQUE IDENTIFICATION NUMBER: 555220800 |
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) | Filed: USBC - Southern District of New York Lehman Brothers Holdings Inc., Et Al. 08-13555 (JMP)  0000024675 |
| Name of Debtor Against Which Claim is Held LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor 08-13555 (JMP) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555220800*****
MARY, LANGEVIN
19 FORT CHARLES PLACE
BRONX, NY 10463

2) ML10463@GMAIL.COM
1) LANGEVINSOW@NYC.RR.COM

Telephone number: 718-562-9427   Email Address:

Name and address where payment should be sent (if different from above)

Telephone number:   Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____ (If known)

**Filed on:** _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

NOTICE OF SCHEDULED CLAIM:
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

FILED / RECEIVED
SEP 21 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

1. **Amount of Claim as of Date Case Filed:** $ 52,415

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE INSTRUCTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** WAGES EARNED BUT NOT PAID
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 6888 (Soc.Sec)
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____  Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____  Basis for perfection: _____
   Amount of Secured Claim: $_____  Amount Unsecured: $_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
   (See instruction #6 on reverse side.)

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☒ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ 2070

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

| Date: 9/18/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *Mary Langevin* | FOR COURT USE ONLY FILED / RECEIVED SEP 18 2009 EPIQ BANKRUPTCY SOLUTIONS, LLC JF |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Personal Award Summary

# LEHMAN BROTHERS | LehmanLive

Data as of August 31, 2008                                                                 10204571 Mary Langevin

## AWARD UNITS[1] OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value[2] | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested[3] | Units Outstanding | Market Value at $0.044* |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2008 | July 2008 RSU | $20.9600 | $2,070 | 11/30/2011 | 98.76 | 1.26 | 0.00 | 0.00 | 100.02 | $4 |
| 12/07/2007 | 2007 Firmwide Principal | $47.6000 | $7,763 | 11/30/2012 | 163.08 | 3.36 | 0.00 | 0.00 | 166.44 | $7 |
| 12/07/2007 | 2007 Firmwide Discount | $47.6000 | $2,588 | 11/30/2012 | 54.36 | 1.10 | 0.00 | 0.00 | 55.46 | $2 |
| 12/08/2006 | 2006 Firmwide Principal | $57.7700 | $9,746 | 11/30/2011 | 168.71 | 4.99 | 0.00 | 0.00 | 173.70 | $8 |
| 12/08/2006 | 2006 Firmwide Discount | $57.7700 | $3,248 | 11/30/2011 | 56.23 | 1.65 | 0.00 | 0.00 | 57.88 | $3 |
| 11/30/2005 | 2005 Firmwide Principal | $47.2500 | $7,500 | 11/30/2010 | 158.74 | 5.82 | 0.00 | 164.56 | 164.56 | $7 |
| 11/30/2005 | 2005 Firmwide Discount | $47.2500 | $2,500 | 11/30/2010 | 52.90 | 2.00 | 0.00 | 0.00 | 54.90 | $2 |
| 12/09/2004 | 2004 Firmwide Principal | $32.1750 | $6,750 | 11/30/2009 | 209.80 | 9.41 | 0.00 | 219.21 | 219.21 | $10 |
| 12/09/2004 | 2004 Firmwide Discount | $32.1750 | $2,250 | 11/30/2009 | 69.92 | 3.30 | 0.00 | 0.00 | 73.22 | $3 |
| 12/10/2003 | 2003 Firmwide Principal | $26.7700 | $6,000 | 11/30/2008 | 224.14 | 11.98 | 0.00 | 236.12 | 236.12 | $10 |
| 12/10/2003 | 2003 Firmwide Discount | $26.7700 | $2,000 | 11/30/2008 | 74.70 | 4.00 | 0.00 | 0.00 | 78.70 | $3 |
| Total | | | $52,415 | | 1,331.34 | 48.87 | 0.00 | 619.89 | 1,380.21 | $59 |
| Total Equity | | | | | | | | | | $59 |

http://my.lehman.com/HRS/equityaward/westinghouse.do (1 of 2)1/5/2009 5:34:24 PM

**USPS Express Mail Label**

EH 853563711 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

- PO ZIP Code: 10463
- Date Accepted: 09/19/09
- Time Accepted: 1:55 PM
- Flat Rate or Weight: 2.1 ozs.
- Scheduled Date of Delivery: 09/21/09
- Scheduled Time of Delivery: Noon
- Postage: $17.50
- Military: 2nd Day
- Return Receipt Fee, COD Fee, Insurance Fee, Total Postage & Fees, Acceptance Emp. Initials

**FROM:** Mary LANGEVIN
19 Fort Charles Place
Bronx, NY 10463
PHONE: 718-302-9427
Claim # 555 220 800

**TO:** U.S. Bankruptcy Court / Southern District
LEHMAN BROTHERS HOLDINGS 08 NY
C/O EPIQ Bankruptcy Claims Processing Center
FDR Station, PO Box 5076
NY, NY 10150-5076

ZIP+4: 1 0 1 5 0 - 5 0 7 6

CASE 08-13555 (JMP)

RECEIVED SEP 21 2009

Mailing Label
Label 11-B, March 2004