UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
In re                                                  :    Chapter 11 Case No.
                                                       :
LEHMAN BROTHERS HOLDINGS INC., et al.,                 :    08-13555 (SCC)
                                                       :
                           Debtors.                    :    (Jointly Administered)
                                                       :
-------------------------------------------------------x

**DECLARATION OF CLAIMANT KAREN M. SIMON KRIEGER IN
OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING
TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR
ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT
TO § 510(b) OF THE BANKRUPTCY CODE**

Karen M. Simon Krieger declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 185th Omnibus Objection.

2. I was employed by Lehman Brothers from 1990 through 2008. My employment ended upon Lehman's asset sale to Barclays Bank, and I was subsequently employed by Barclays.

3. Lehman compensated me on what it called a Total Compensation basis, by payment of an annual salary (paid in bi-weekly installments) plus a bonus. My bonus was an integral part of my compensation – my annual salary during the years at issue here was generally only 39 to 54 percent of my total compensation.

4. For each year between 2003 and 2008 Lehman told me in writing, shortly after the end of each fiscal year (November 30), the amount of my bonus for that year and that my

bonus was being divided into two portions, one designated Restricted Stock Awards (or "RSUs") and one designated as the "Total Cash Payment." For each of those years, between approximately 12 percent and 17 percent of my bonus was designated as RSUs.

5. When Lehman paid me the "Total Cash Payment" portion of my bonus, Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion was declared as part of my bonus at the same time, it was not reported to the tax authorities as my compensation income.

6. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion amount of my bonus that was designated as RSUs, and I had no ability to direct how the amounts that Lehman withheld would be used. Since what I received was Lehman's contract promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

7. When I was first hired by Lehman there was no RSU program. When the program was instituted I had no choice as to whether to participate; I was simply required to take a minimum portion of my Total Compensation in the form of RSUs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation for that year that I would be required to accept in the form of RSUs. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

2

8. Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. I had no rights but the contract rights of an employee whose compensation had been withheld.

9. I understand that Lehman now has taken the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue. For prior years, not at issue here, after the five-year waiting period ended and I was issued the RSU-designated portion of my bonus, Lehman withheld from this compensation a sufficient amount of cash to pay the federal withholding tax, and then provided me with Lehman shares for the balance. The entire amount of the bonus was taxed as ordinary income to me. There was never any sale of securities to raise cash for the withholding tax, which would have been necessary if "equity securities" had been issued to me at the time of the declaration of the bonus.

10. I have reviewed the "Factual Background" included in Lehman's Memorandum in Support. It is self-serving, unsupported by the facts, and imputes an intent to me that wasn't there. The Background concedes that the RSU-designated portion was withheld from each employee's earned and declared "Total Compensation." The Background claims that the RSUs gave employees a financial stake in the company, but until the end of the waiting period employees had no rights as a stockholder and had nothing but Lehman's contract promise to pay us, someday, the balance of the bonus Lehman had previously declared. Employees like me had no choice as to our participation. What Lehman describes as a financial incentive to remain with

Lehman was really Lehman's arbitrary assertion of financial control by withholding 12 percent to 17 percent of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm. I did not stay at Lehman because of the program, nor was it feasible for me to leave because of the program. I had a good career and I liked working there. The RSU compensation was something just forced on employees and we had no choice about it.

11. Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. In fact, because of my prior work experience with Drexel Burnham Lambert and Sentinel Government Securities, both of which went bankrupt, I did not want to have equity in the firm that employed me. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period.

12. Lehman's representation to the Court that RSU holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of RSUs the holder held. But Lehman never tells the Court here what it also never told the employees: What was the proportion of shares held by the Trust

4

relative to the total outstanding RSUs (determining what fraction of a vote the purported RSU vote had, if any), when did the RSU come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSU had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

13.  Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is simply meaningless. What has meaning is what I had before the end of five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue here Lehman declared what I earned as my bonus, promised payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had declared and promised would be paid.

14.  Lehman recognized my rights as those of a contract creditor in its petition and schedules, where RSU agreements were listed as Executory Contracts under Schedule G. I have attached hereto as Exhibit 1 the Proof of Claim that I filed in connection with my contract rights under the RSU Agreements. My initial Claim was assigned Claim No. 9876 and after amendment was assigned Claim No. 18087. Lehman provided me with this Proof of Claim form. In the form provided, Lehman had largely completed the form, including inserting the caption, supplying my name and address, and notifying me that I had a Claim scheduled as a

"Schedule G" claim, for an "Executory Contract." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement."

15. All of this information was contained in the Proof of Claim form when Lehman provided it to me. I added only my phone number, email address, the amount of the claim, and my signature and date. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent.

16. The economic substance of the RSU Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus. Even after vesting of the RSUs there was no right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the RSU Agreement.

17. Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, Lehman now claims for the unpaid amount the classification of equity, even though no equity was ever issued and I had no rights as a holder of equity.

18. Lehman quotes my statement from my original Opposition to the 185th Omnibus Objection completely out of context. The point I was making is that I had worked at other companies in the securities industry that had become bankrupt, Drexel Burnham Lambert and Sentinel Government Securities, and my approach was to "minimize my investment in an organization [on which] I had a dependency for my annual earnings stream." I did not let that

6

approach to managing my investments interfere with my performance at Lehman, where I was an enthusiastic, loyal and dedicated employee who approached working at Lehman as if I was managing my own personal business. As I noted in that letter, however, "the management decision to establish this [RSU] program handcuffed my ability to manage my RSU investments. My objection . . . associated to the RSUs [was that] I had no ability to make prudent investment decisions." (My letter quoted here can be found at the Miller Aff., Ex. F., at p. 2.) It was not the RSU program that made me feel like an "owner." To the contrary, I became a captive, as I said in that statement, "handcuffed" and "dependent upon decisions outside of my control." It is shocking to me that Lehman's lawyers would twist my expression of enthusiasm for the Company and my approach to working there into support for a program to which I expressly objected.

19.   Lehman never told me in its annual brochures or its description of the RSUs, and I did not understand, that if Lehman filed for bankruptcy there was a risk I would not receive any of the compensation that it declared and withheld, or that I would not have the same standing as other unpaid creditors because I had been compensated with RSUs. Lehman did not ask for, and I never provided, a written authorization for deductions or withholdings from my wages. I respectfully maintain and reassert my rights to be paid as a general unsecured creditor under the wage laws of the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 4, 2014

*Karen M. Simon Krieger*
Karen M. Simon Krieger

# EXHIBIT 1

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held: LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor: 08-13555 (JMP) |

UNIQUE IDENTIFICATION NUMBER: ~~~~~~~~~

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000009876

THIS SPACE IS FOR COURT USE ONLY

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)
LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555173810*****
KAREN M. KRIEGER
19 MARSHALL COURT
GREAT NECK, NY 11021

Telephone number: 516-466-7795    Email Address: karenmsk@aol.com

**Name and address where payment should be sent** (if different from above)

Telephone number:    Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

1. **Amount of Claim as of Date Case Filed:** $ 225,396.55  (RSUs - $164,319.52)
   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
   If all or part of your claim is entitled to priority, complete Item 5.
   If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   ☐ Check this box if all or part of your claim is based on a Derivative Contract.*
   ☐ Check this box if all or part of your claim is based on a Guarantee.*
   *IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Restricted Stock Units, Common Stock, 401K Investment
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
       (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: _____
   Value of Property: $_____    Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____    Basis for perfection: _____
   Amount of Secured Claim: $_____    Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:
   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☒ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☒ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

   Amount entitled to priority:
   $ 15,756.67 (401K)
   $ 45,320.36 (Common Stock)

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain: See attached

| Date: 8/19/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Karen M. Simon Krieger |

FOR COURT USE ONLY

**FILED / RECEIVED**
AUG 31 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Data as of August 31, 2008    10021931 Karen M. Krieger

## Restricted Stock Units - AWARD UNITS OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value¹ | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested⁴ | Units Outstanding | Market Value at $0.05* | Grant Value x Units Outstanding |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2008 | July 2008 RSU | 20.9600 | $9,143 | 11/30/2011 | 436.19 | 5.52 | 0.00 | 0.00 | 441.71 | $22 | $9,258.24 |
| 12/07/2007 | 2007 Firmwide Principal | 47.6000 | $34,284 | 11/30/2012 | 720.26 | 14.84 | 0.00 | 0.00 | 735.10 | $37 | $34,990.78 |
| 12/07/2007 | 2007 Firmwide Discount | 47.6000 | $11,428 | 11/30/2012 | 240.09 | 4.95 | 0.00 | 0.00 | 245.04 | $12 | $11,663.90 |
| 12/08/2006 | 2006 Firmwide Principal | 57.7700 | $31,697 | 11/30/2011 | 548.67 | 18.24 | 0.00 | 0.00 | 564.91 | $28 | $32,634.85 |
| 12/08/2006 | 2006 Firmwide Discount | 57.7700 | $10,566 | 11/30/2011 | 182.89 | 5.40 | 0.00 | 0.00 | 188.29 | $9 | $10,877.51 |
| 11/30/2005 | 2005 Firmwide Principal | 47.2500 | $18,262 | 11/30/2010 | 386.92 | 14.22 | 0.00 | 401.14 | 401.14 | $20 | $18,953.87 |
| 11/30/2005 | 2005 Firmwide Discount | 47.2500 | $6,093 | 11/30/2010 | 128.96 | 4.65 | 0.00 | 0.00 | 133.61 | $7 | $6,313.07 |
| 12/09/2004 | 2004 Firmwide Principal | 32.1750 | $12,000 | 11/30/2009 | 372.96 | 16.76 | 0.00 | 389.72 | 389.72 | $20 | $12,539.24 |
| 12/09/2004 | 2004 Firmwide Discount | 32.1750 | $4,000 | 11/30/2009 | 124.32 | 5.60 | 0.00 | 0.00 | 129.92 | $7 | $4,180.18 |
| 12/10/2003 | 2003 Firmwide Principal | 26.7700 | $16,313 | 11/30/2008 | 609.36 | 32.55 | 0.00 | 641.91 | 641.91 | $32 | $17,183.93 |
| 12/10/2003 | 2003 Firmwide Discount | 26.7700 | $5,438 | 11/30/2008 | 203.12 | 10.70 | 0.00 | 0.00 | 213.82 | $11 | $5,723.96 |
| Total | | | $159,244 | | 3,953.74 | 131.43 | 0.00 | 1,432.77 | 4085.17 | $205 | $164,319.52 |
| Total Equity | | | | | | | | | | $205 | |

### Personal Account - Lehman Shares

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/30/2007 | | 62.6300 | | | | | | | 566.00 | | $35,448.58 |
| 11/30/2006 | | 73.6700 | | | | | | | 134.00 | | $9,871.78 |
| Total | | | | | | | | | 700.00 | | $45,320.36 |

### 401K/IRA - Lehman Shares/Units

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/26/2001 | | 10.0100 | | | | | | | 49.064 | | $491.13 |
| 4/17/2007 | | 20.6300 | | | | | | | 126.908 | | $2,618.11 |
| 6/20/2007 | | 20.0800 | | Received 625 shares on 10/20/08 - why? | | | | | 629.852 | | $12,647.43 |
| | | | | | | | | | 805.824 | | $15,756.67 |

| Grand Total | | | | | | | | | | | $225,396.55 |

* Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock options is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise price. Please note that the current market price is based on a delayed 20 minutes feed from Reuters (12:53 PM EDT on August 21 2009)

¹ Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.
² Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
³ Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

# LEHMAN BROTHERS | Lehman Live

Data as of August 31, 2008

## AWARD UNITS[1] OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value[2] | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested[3] | Units Outstanding | Market Value at $0.0501* |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2008 | July 2008 RSU | $20.9600 | $9,143 | 11/30/2011 | 436.19 | 5.52 | 0.00 | 0.00 | 441.71 | $22 |
| 12/07/2007 | 2007 Firmwide Principal | $47.6000 | $34,284 | 11/30/2012 | 720.26 | 14.84 | 0.00 | 0.00 | 735.10 | $37 |
| 12/07/2007 | 2007 Firmwide Discount | $47.6000 | $11,428 | 11/30/2012 | 240.09 | 4.95 | 0.00 | 0.00 | 245.04 | $12 |
| 12/08/2006 | 2006 Firmwide Principal | $57.7700 | $31,697 | 11/30/2011 | 548.67 | 16.24 | 0.00 | 0.00 | 564.91 | $28 |
| 12/08/2006 | 2006 Firmwide Discount | $57.7700 | $10,566 | 11/30/2011 | 182.89 | 5.40 | 0.00 | 0.00 | 188.29 | $9 |
| 11/30/2005 | 2005 Firmwide Principal | $47.2500 | $18,282 | 11/30/2010 | 386.92 | 14.22 | 0.00 | 401.14 | 401.14 | $20 |
| 11/30/2005 | 2005 Firmwide Discount | $47.2500 | $6,093 | 11/30/2010 | 128.96 | 4.65 | 0.00 | 0.00 | 133.61 | $7 |
| 12/09/2004 | 2004 Firmwide Principal | $32.1750 | $12,000 | 11/30/2009 | 372.96 | 16.76 | 0.00 | 389.72 | 389.72 | $20 |
| 12/09/2004 | 2004 Firmwide Discount | $32.1750 | $4,000 | 11/30/2009 | 124.32 | 5.60 | 0.00 | 0.00 | 129.92 | $7 |
| 12/10/2003 | 2003 Firmwide Principal | $26.7700 | $16,313 | 11/30/2008 | 609.36 | 32.55 | 0.00 | 641.91 | 641.91 | $32 |
| 12/10/2003 | 2003 Firmwide Discount | $26.7700 | $5,438 | 11/30/2008 | 203.12 | 10.70 | 0.00 | 0.00 | 213.82 | $11 |
| **Total** | | | **$159,244** | | **3,953.74** | **131.43** | **0.00** | **1,432.77** | **4,085.17** | **$205** |
| **Total Equity** | | | | | | | | | | **$205** |

* Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock options is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise price. Please note that the current market price is based on a delayed 20 minutes feed from Reuters. (12:38 PM EDT on August 21 2009)

[1] Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.
[2] Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
[3] Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

## Portfolio Holdings (continued)

| Quantity | Acquisition Date | Unit Cost | Cost Basis | Market Price | Market Value | Unrealized Gain/Loss | Estimated Annual Income | Estimated Yield |
|---|---|---|---|---|---|---|---|---|
| **Equities** (continued) | | | | | | | | |
| **Common Stocks** (continued) | | | | | | | | |
| **INTEL CORP COM** | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| Security Identifier: INTC | | | | | | | | |
| 200,000 | 04/15/09 | 15.5300 | 3,105.96 | 19.2500 | 3,850.00 | 744.04 | 112.00 | 2.90% |
| **INTERNATIONAL BUSINESS MACHS CORP COM** | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| Security Identifier: IBM | | | | | | | | |
| 50.000 | 03/18/09 | 91.4940 | 4,574.69 | 117.9300 | 5,896.50 | 1,321.81 | 110.00 | 1.86% |
| **JP MORGAN CHASE & CO COM** | | | | | | | | |
| ISIN#US46625H1005 | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| Security Identifier: JPM | | | | | | | | |
| 100.000 | 03/25/09 | 27.7610 | 2,776.07 | 38.6500 | 3,865.00 | 1,088.93 | 20.00 | 0.51% |
| 50.000 | 06/02/09 | 35.3410 | 1,767.03 | 38.6500 | 1,932.50 | 165.47 | 10.00 | 0.51% |
| 150.000 | Total | | $4,543.10 | | $5,797.50 | $1,254.40 | $30.00 | |
| **JOHNSON & JOHNSON COM** | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| Security Identifier: JNJ | | | | | | | | |
| 125.000 | 09/23/08 | 68.8430 | 8,605.34 | 60.8900 | 7,611.25 | -994.09 | 245.00 | 3.21% |
| **SLEHMAN BROS HLDGS INC COM** | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| Security Identifier: LEHMQ | | | | | | | | |
| 134.000 | 05/14/07 | N/A | Please Provide | 0.0381 | 5.11 | N/A | | |
| 566.000 | 01/22/08 | N/A | Please Provide | 0.0381 | 21.56 | N/A | | |
| 700.000 | Total | | N/A | | $26.67 | N/A | $0.00 | |
| **MICROSOFT CORP COM** | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| Security Identifier: MSFT | | | | | | | | |
| 300.000 | 06/16/09 | 23.9220 | 7,176.52 | 23.5200 | 7,056.00 | -120.52 | 156.00 | 2.21% |
| **MOSAIC CO COM** | | | | | | | | |
| Dividend Option: Cash | | | | | | | | |
| Security Identifier: MOS | | | | | | | | |
| 75.000 | 04/02/09 | 45.3670 | 3,402.53 | 52.1500 | 3,911.25 | 508.72 | 15.00 | 0.38% |
| 25.000 | 04/08/09 | 43.3190 | 1,082.98 | 52.1500 | 1,303.75 | 220.77 | 5.00 | 0.38% |
| 50.000 | 04/16/09 | 44.3130 | 2,215.67 | 52.1500 | 2,607.50 | 391.83 | 10.00 | 0.38% |

KAREN M KRIEGER

Clearing Through Pershing LLC, a subsidiary of The Bank of New York Mellon Corporation. Member FINRA, NYSE, SIPC



## LEHMAN BROTHERS HOLDINGS INC.

The Corporation will furnish without charge to each stockholder who so requests a statement of the designations, powers, preferences and relative participating, optional or other special rights of each class of stock or series thereof of the Corporation and the qualifications, limitations or restrictions of such preferences and/or rights. Such request may be made to the Corporation or the Transfer Agent.

The following abbreviations, when used in the inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common
TEN ENT — as tenants by the entireties
JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — _____ Custodian _____
(Cust) (Minor)
under Uniform Gifts to Minors
Act _____
(State)

Additional abbreviations may also be used though not in the above list.

*For value received, the undersigned hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE

_____
(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)

_____ *shares of the capital stock represented by the within Certificate, and do hereby irrevocably constitute and appoint*

_____ *Attorney to transfer the said stock on the books of the within named Corporation with full power of substitution in the premises.*

*Dated* _____

**NOTICE:** THE SIGNATURE TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATEVER.

Signature(s) Guaranteed:

THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATIONS AND CREDIT UNIONS WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM), PURSUANT TO S.E.C. RULE 17Ad-15.

226   8296143002290101   N-8304-4011-

FOR YOUR RECORDS AND FOR
POSSIBLE INCOME TAX PURPOSES
WE SUGGEST THAT YOU FILL IN:

DATE PURCHASED:

AMOUNT PAID

DETACH THIS TRANSMITTAL
AND PUT IT WITH YOUR TAX RECORDS

IMPORTANT INFORMATION
SEE REVERSE SIDE

YOUR SECURITIES ARE

VALUABLE

PROTECT THEM

HEREWITH SECURITIES TRANSFERRED AS PER YOUR INSTRUCTIONS. CONTENTS OF THIS PACKAGE ARE INSURED FOR REPLACEMENT IN THE MAIL. THE TAXPAYER NUMBER APPEARING ON THIS FORM IS SUBMITTED TO THE TRANSFER AGENT AS THE IDENTIFYING NUMBER NAME APPEARING ON THE CERTIFICATE. WILL YOU PLEASE VERIFY IS THE CORRECT NUMBER FOR THE NAME SHOWN. IN THE EVENT THE NUMBER SHOULD BE CHANGED, PLEASE SEND THE PROPER NUMBER. TRANSFER AGENT SHOWN ON THE SECURITY CERTIFICATE AND CORRECT THE RECORDS ACCORDINGLY. SHOULD YOU DESIRE YOUR SECURITIES AT ANYTIME, WE WOULD BE PLEASED TO HANDLE TRANSACTION FOR YOU.

NATIONAL FINANCIAL SERVICES LLC
P.O. BOX 775 BOWLING GREEN STATION
NEW YORK, NY 10274-0775

| SECURITY DESCRIPTION | CUSIP NUMBER | QUANTITY | DATE ISSUED |
|---|---|---|---|
| LEHMAN BRO HLDGS INC< | 524908100 | 825 | 10/23/2008 |

CERTIFICATE NUMBER(S):

LB-34899

REGISTRATION NAME AND ADDRESS        226

PERSHING LLC TR
IRA
FBO KAREN KRIEGER 10/20/08
19 MARSHALL COURT
GREAT NECK    NY 11021-4538

MAIL TO:   11/04/2008
PERSHING LLC TR
IRA
FBO KAREN KRIEGER 10/20/08
19 MARSHALL COURT
GREAT NECK    NY 11021-4538

| REFERENCE NUMBER | TAXPAYER NUMBER |
|---|---|
| T8295S00009 | |

9

QUESTIONS ABOUT THE ENCLOSED SECURITIES SHOULD
BE DIRECTED TO YOUR ACCOUNT REPRESENTATIVE.

*DO NOT SEND ANY MAIL TO THE POST OFFICE BOX
SHOWN ON THIS DOCUMENT.*

# YOUR SECURITIES ARE VALUABLE — PROTECT THEM

We transferred the enclosed securities and have had the transfer agent register them in your name as you instructed. You will want to take care of them because replacing lost, stolen or destroyed securities is complicated, involving an affidavit, an indemnity bond executed by a company, which could be very costly to you, and a considerable waiting period; that is why we suggest the following safeguards:

1. Put your certificates in a safe, fireproof place (a safe deposit box in a bank is an excellent choice).

2. Keep a separate record of your certificates to include exact registration, security description, cusip number, issuance date, certificate numbers and denominations, and the name of the transfer agent. Should your certificates become misplaced, this information will be of valuable help in replacing them.

3. If your certificates are lost or destroyed, be sure to notify the transfer agent and your account executive immediately.

4. Don't endorse your certificates until the actual delivery for sale or transfer. Directions to properly endorse your certificates are shown below.

- To insure non-negotiability of your securities while in transit, enter your Brokerage Firm's name in the attorney space on the certificate.

- Date signed by customer(s) on the certificate.

- Signature(s) of customer(s) on the certificate (must be exactly as shown on the front of certificate).

---

For Value received _____ hereby sell, assign and transfer unto

_____
(name and address of transferee should be printed)

_____ Shares

of stock represented by the within Certificate and do hereby irrevocably constitute

and appoint ① _____ Attorney

to transfer the said stock on Books of the within named Corporation with full power of substitution in the premises.

Date ② _____ 19____

③ _____

NOTICE: The signature to this assignment must correspond with the name as written upon the face of the certificate, in every particular, without alteration or enlargement or any change whatever.

