```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re                                                        :    Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,                       :    08-13555 (SCC)
                                                             :
                                     Debtors.                :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x
```

**DECLARATION OF CLAIMANT AMIT KUMAR SARKAR IN OPPOSITION
TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING
TO RECLASSIFY OR SUBORDINATE COMPENSATION CLAIMS AS EQUITY**

I, Amit Kumar Sarkar, a claimant in the above captioned matter, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the best of my recollection about the following if called upon. I submit this declaration in opposition to Lehman's One Hundred Seventy-Sixth Omnibus Objection.

2. I was employed by Lehman Brothers in their London, United Kingdom, office from 06/03/1999 through Lehman's chapter 11 filing of bankruptcy petition on September 15, 2008.

3. Prior to its chapter 11 filing, Lehman compensated me on what it called a Total Compensation basis by payment of an annual salary payable bi-weekly plus a bonus. Consistent with the investment banking industry, my bonus was more than an integral part of my compensation; it was the majority – approximately 75% to 85% – of my compensation.

4. For each year between 2003 and 2007, shortly after the end of the fiscal year, Lehman told me verbally and in writing, the amount of my total compensation for that year and that it had determined the year-end part of my total compensation would be divided into portions: for 2003 and 2005 one portion designated as Contingent Stock Awards ("CSAs"), one as Options and the balance as a "Total Cash Payment;" for the remaining years one portion designated as CSAs and the balance as the "Total Cash Payment"

5. When Lehman paid me the "Total Cash Payment," Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the CSA-designated portion was declared as part of my total compensation at the same time, it was not reported by Lehman to the tax authorities as compensation income.

6. My participation in the CSA compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate. I paid no tax on the CSA-designated portion of my total compensation upon the grant of the CSA.

7. At the outset of employment I was told, both verbally and in writing, that *at the Firm's option* a portion of my total compensation (combined base salary, and other compensation) *may* be payable in the form of CSAs pursuant to the Firm's employee stock award program. I was not told that I was required to take a minimum portion of my Total Compensation each fiscal year in the form of CSAs. I was not told at the outset of each fiscal year the portion of my Total Compensation that I would be required to accept in the form of CSAs, or even that I would be required to accept any portion as CSAs.

8. Lehman never obtained my express written authorization to deduct and withhold *specified* amounts of commissions from my bonuses. It was never clear what specific amounts would ultimately be withheld from me.

2

9. In each of the years at issue here Lehman declared what I earned as my total compensation, one portion in the form of a promised future payment of my total compensation, and as one means of performing that promise contracted with me under the CSAs to pay a portion of my total compensation in five years, providing for the possibility of using its own stock as currency when that time came. I had no rights to any stock during this five-year period while Lehman held back that portion of my total compensation it had previously declared I had earned; what I had was a contractual promise with Lehman for them to pay me my previously declared total compensation. When Lehman filed for bankruptcy, what I was left with was my contractual right to the total compensation Lehman had declared and promised would be paid, as well as my rights under the applicable labor laws.

10. Pursuant to the RSU / CSA Agreements, I recognized that in order to be paid my compensation referred to in Paragraph 8 after each of the aforementioned rolling five years, I was contractually obligated to avoid engaging in any "Detrimental Activity" and that under these Agreements I had other employment-related conditions, none of which were performance based, which needed to be met. If Lehman exercised its option to pay a portion of my total compensation in the form of CSAs, as the Firm cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock. Further, I had no ability to sell, assign, pledge or otherwise dispose of the CSAs. Even after the CSAs vested, the CSAs did not convert to stock and I was not permitted to sell the shares.

11. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's assertion of financial control by withholding significant portions of my total compensation and threatening not to pay it if I did not satisfy the employment-related conditions. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my

earnings as a means of making it costly for me to leave the Firm I did not view the Lehman CSAs as being designed for my benefit; it was simply Lehman's way of handcuffing employees to the firm. In other words, CSAs were designed to allow Lehman to penalize me if I left the firm in certain circumstances by forcing me to forfeit a portion of my earned commissions after not having given me any real equity in the company for at least the five (5) year-holding period. It goes without saying that CSAs were never a form of compensation I would have freely elected if given any choice in the matter. The unfairness of this mandatory "handcuffing" of employees was exacerbated in 2006 when Lehman unilaterally changed the terms of the CSA program such that any departure from the firm, be it for competitive activity or otherwise (for example, to work for a charity, travel the world, or retire completely) would result in a loss of the CSAs and effectively a forfeiture of the wage amounts that had been declared due to me years before.

12. I did not intend to be an investor in Lehman, or to take on the risk of potential costs and benefits of owning Lehman equity, by seeking and continuing employment with Lehman. I did not join Lehman so that I could make a profit on its stock. My sole intention in taking and keeping my job was to provide labor and services in order to pursue a career and livelihood. Lehman's claim that I "originally intended" to treat the CSAs as equity in the firm is unsupported by any evidence and is simply not true. Lehman also told me I had no rights as a stockholder until I became the record holder of stock. I never had the intent to put my compensation at risk in a pseudo-investment instrument over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an actual equity holder before real common stock was issued, after the five-year waiting period.

13. Finally, with CSAs I paid tax at ordinary income rates on the full market value of the shares Lehman issued to me upon conversion; not capital gains tax on any portion of the market value which might have been greater than the value at the initial grant date.

14. Lehman does not dispute that it retained me to perform services as an employee and that it received the benefit of my services, for which at the end of each fiscal year it declared my Total Compensation. Although I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, subsequent to the bankruptcy Lehman claims that unpaid amount is now classified as equity, even though no equity was ever issued and I had no rights as a holder of equity.

15. Lehman recognized my rights as those of a contract creditor in its petition and schedules, where CSA agreements were listed as Executory Contracts under Schedule G. My claim was assigned Claim No. 34872 and corresponds to Schedule No. 555012880 according to the Epiq docket site "www.Lehman-Docket.com." A true and correct copy of the Proof of Claim that I filed in connection with my CSA-related withheld wage amounts is attached hereto as Exhibit A. Along with its bar date notice, Lehman provided me with this Proof of Claim form which it had largely pre-completed, including inserting the caption, supplying my name and address, and notifying me that I had a "Schedule G" claim for an "Executory Contract or Unexpired Lease." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement." I completed and filed the rest of the blanks on the form Lehman had sent and attached relevant employment records showing the amounts withheld from my commissions. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent. Lehman still owes me unpaid wages for services I rendered in the amount stated on this form. The amount claimed is supported by the compensation

5

statements attached to the proof of claim form for the relevant period of my employment, based on the amounts withheld.

16. Lehman never told me, either in its annual brochures or its description of the CSAs, and I did not understand, that if Lehman filed for bankruptcy there was a risk that I would not receive my wages, the aforementioned Total Compensation, that it declared and withheld, or that I would not have the same standing as other unpaid general creditors because I had been a participant in the employer imposed CSA plan. I was of the belief that as an employee my declared and unpaid wages made me a creditor of Lehman and moreover, I would be senior to general creditors. Subsequent to the bankruptcy through my proof of claim filing, I learned that any priority wage claim I have would be limited to the 180 day period prior to the bankruptcy filing. I maintain my rights to be paid as an unsecured creditor, both senior to general creditors for those declared and unpaid wages which fall within the limited time frame prior to the bankruptcy, and as a general creditor for all other declared and unpaid wages under the wage laws of the United Kingdom, the Employment Rights Act 1996.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2014

_____
Signature

AMIT SARKAR
_____
Printed Name

# Exhibit A

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held<br>LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor<br>08-13555 (JMP) |

UNIQUE IDENTIFICATION NUMBER: 555012880

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)      0000034872

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)
LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555012880*****
AMIT K. SARKAR

Telephone number:          Email Address:

Name and address where payment should be sent (if different from above)

Telephone number:          Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

1. **Amount of Claim as of Date Case Filed:** $ 3,076,963.23 (see attached)
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Deferred compensation, employee priority
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 1916 (employee ID)
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

Date: 7th September
Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

FOR COURT USE ONLY

**FILED / RECEIVED**

**SEP 24 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**Amit K. Sarkar**

**Equity Awards Outstanding as of September 12, 2008**

**RSUs**

| Grant Date | FMV on Grant Date | RSUs Granted | Grant Value |
|---|---|---|---|
| December 10, 2003 | $35.695 | 8,055.42 | $287,538.22 |
| December 9, 2004 | $42.900 | 7,468.66 | $320,405.51 |
| December 9, 2005 | $63.825 | 7,836.00 | $500,132.70 |
| December 8, 2006 | $77.030 | 25,560.00 | $1,968,886.80 |
| | | Total | $3,076,963.23 |

| From: Origin ID: LKZA 02076459700<br>Lesley Heath<br>Citadel<br>120 London Wall<br><br>London, EC2Y5ET<br>UNITED KINGDOM |  | Ship Date: 16SEP09<br>ActWgt: 0.5 KG<br>CAD: 3580012/INET9060<br>Account#: S ******** |
|---|---|---|

REF:
DESC-1: Correspondence/No Customs Value
DESC-2:
DESC-3:
DESC-4:

**FILED / RECEIVED**

**SEP 2 4 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

SHIP TO: (207) 645-9797        BILL SENDER
**Lehman Brothers Claims Processing**
**United Stated Bankcruptcy Court**
**PO Box 5076**
**CI EPIG BANKCRUPTCY SOLUTIONS LCC**

NEW YORK, NY 10150
US

COUNTRY MFG: GB
CARRIAGE VALUE: 0.00 UKL
CUSTOMS VALUE: 0.00 UKL
T/C: S 213193201        D/T: R
SIGN: Lesley Heath
EIN/VAT:
PKG TYPE: PAK

TRK# 0430  7969 4799 3938         INTL PRIORITY
ISR



**EB JRBA**

10150
NY-US
EWR

The Warsaw Convention may apply and will govern and in most cases limit the liability of Federal Express for loss or delay of or damage to your shipment. Subject to the conditions of the contract.

**CONSIGNEE COPY - PLEASE PLACE IN POUCH**

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

LEGAL TERMS AND CONDITIONS OF FEDEX SHIPPING DEFINITIONS. On this Air Waybill, "we", "our", "us", and "FedEx" refer to Federal Express Corporation, its subsidiaries and branches and their respective employees, agents, and independent contractors. The terms "you" and "your" refer to the shipper, its employees, principals and agents. If your shipment originates outside the United States, your contract of carriage is with the FedEx subsidiary, branch or independent contractor who originally accepts the shipment from you. The term "package" means any container or envelope that is accepted by us for delivery, including any such items tendered by you utilizing our automated systems, meters, manifests or waybills. The term "shipment" means all packages which are tendered to and accepted by us on a single Air Waybill. AIR CARRIAGE NOTICE. For any international shipments by air, the Warsaw Convention, as amended, may be applicable. The Warsaw Convention, as amended, will then govern and in most cases limit FedEx's liability for loss, delay of, or damage to your shipment. The Warsaw Convention, as amended, limits FedEx's liability. For example in the U.S. liability is limited to $9.07 per pound (20$ per kilogram), unless a higher value for carriage is declared as described below and you pay any applicable supplementary charges. The interpretation and operation of the Warsaw Convention's liability limits may vary in each country. There are no specific stopping places which are agreed to and FedEx reserves the right to route the shipment in any way FedEx deems appropriate. ROAD TRANSPORT NOTICE. Shipments transported solely by road to or from a country which is a party to the Warsaw Convention or the Contract for the International Carriage of Goods by Road (the "CMR") are subject to the terms and conditions of the CMR, notwithstanding any other provision of this Air Waybill to the contrary. For those shipments transported solely by road, if a conflict arises between the provisions of the CMR and this Air Waybill, the terms of the CMR shall prevail. LIMITATION OF LIABILITY. If not governed by the Warsaw Convention, the CMR, or other international treaties, laws, other government regulations, orders, or requirements, FedEx's maximum liability for damage, loss, delay, shortage, mis-delivery, nondelivery, misinformation or failure to provide information in connection with your shipment is limited by this Agreement and as set out in the terms and conditions of the contract of carriage. Please refer to the contract of carriage set forth in the applicable FedEx Service Guide or its equivalent to determine the contractual limitation. FedEx does not provide cargo liability or all-risk insurance, but you may pay an additional charge for each additional U.S. $100 (or equivalent local currency for the country of origin) of declared value for carriage. If a higher value for carriage is declared and the additional charge is paid, FedEx's maximum liability will be the lesser of the declared value for carriage or your actual damages. LIABILITIES NOT ASSUMED. IN ANY EVENT, FEDEX WON'T BE LIABLE FOR ANY DAMAGES, WHETHER DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL IN EXCESS OF THE DECLARED VALUE FOR CARRIAGE (INCLUDING BUT NOT LIMITED TO LOSS OF INCOME OR PROFITS) OR THE ACTUAL VALUE OF THE SHIPMENT, IF LOWER, WHETHER OR NOT FEDEX HAD ANY KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED. FedEx won't be liable for your acts or omissions, including but not limited to incorrect declaration of cargo, improper or insufficient packaging, securing, marking or addressing of the shipment, or for the acts or omissions of the recipient or anyone else with an interest in the shipment or violations by any party of the terms of this agreement. FedEx won't be liable for damage, loss, delay, shortage, mis-delivery, non-delivery, misinformation or failure to provide information in connection with shipments of cash, currency or other prohibited items or in instances beyond our control, such as acts of God, perils of the air, weather conditions, mechanical delays, acts of public enemies, war, strike, civil commotion, or acts or omissions of public authorities(including customs and health officials) with actual or apparent authority. NO WARRANTY. We make no warranties, express or implied. CLAIMS FOR LOSS, DAMAGE OR DELAY. ALL CLAIMS MUST BE MADE IN WRITING AND WITHIN STRICT TIME LIMITS. SEE OUR TARIFF, APPLICABLE FEDEX SERVICE GUIDE, OR STANDARD CONDITIONS OF CARRIAGE FOR DETAILS. The Warsaw Convention provides specific written claims procedures for damage, delay or non-delivery of your shipment. Moreover, the interpretation and operation of the Warsaw Convention's claims provisions may vary in each country. Refer to the Convention to determine the claims period for your shipment. The right to damages against us shall be extinguished unless an action is brought within two years, as set forth in the Convention. FedEx is not obligated to act on any claim until all transportation charges have been paid. The claim amount may not be deducted from the transportation charges. If the recipient accepts the shipment without noting any damage on the delivery record, FedEx will assume the shipment was delivered in good condition. In order for us to consider a claim for damage, the contents, original shipping carton and packing must be made available to us for inspection. MANDATORY LAW. Insofar as any provision contained or referred to in this Air Waybill may be contrary to any applicable international treaties, laws, government regulations, orders or requirements such provisions shall remain in effect as a part of our agreement to the extent that it is not overridden. The invalidity or unenforceability of any provisions shall not affect any other part of this Air Waybill. Unless otherwise indicated, FEDERAL EXPRESS CORPORATION, 2005 Corporate Avenue, Memphis, TN 38132, USA, is the first carrier of this shipment. Email address located at www.fedex.com.