UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
: 
In re                                                        :    Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,                       :    08-13555 (SCC)
                                                             :
                              Debtors.                       :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x


# DECLARATION OF CLAIMANT BRIAN MONAHAN IN OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE

Brian W. Monahan, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.  I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 118 and 185 Omnibus Objection.

2.  I was employed by Lehman Brothers from May 1986 through September 2008. Lehman Brothers terminated my employment on September 2008 with my transfer to Barclays.

3.  I was transferred from Lehman to Barclays in September 2008 when Lehman sold it's U. S. operations to Barclays. At the time of my transfer from Lehman to Barclays I was owed the following unpaid balances by Lehman:

Claim 20774 / $ 1,648,973.70- This claim is comprised of withheld amounts for 2008 RSUs of $169,591.31 and Earned , but Unpaid Commissions of $1,479,382.39 from sales of Lehman Brothers Private Equity deals and from sales of Lehman Brothers Asset Management.

Claim 20775 / $1,653,621 for Unpaid Pre 2008 RSUs. This represents unpaid commissions / withheld commissions on pre 2008 business.

4. Lehman compensated me on what it called a Total Compensation basis, by agreeing to pay commissions on the products I sold. The commission varied depending on the product, but Lehman agreed to pay me a specific commission for each product. On a monthly basis after my Gross Production was determined, Lehman told me what my "Total Sales Compensation" was, and then told me what portion of my Total Sales Compensation would be paid as "Cash Commissions." The balance was unilaterally retained by Lehman and I received a statement containing the description "Equity Accrual Calculated."

5. At the end of each fiscal year Lehman took that portion of my Total Sales Compensation that it had withheld and denominated Equity Accrual Calculated and gave me a deferred compensation credit designated as RSUs. When Lehman paid me my "Cash Commissions," Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion of my commissions was earned simultaneously as part of the agreed-upon commissions, it was not reported to the tax authorities as my compensation income.

7. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion amount of my bonus that was designated as RSUs, and I had no ability to direct how the amounts that Lehman withheld would be used.

2

Since what I received was Lehman's contract promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

8. When I was first hired by Lehman I was not told that I was required to take a minimum portion of my Total Compensation in the form of RSUs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation for that year that I would be required to accept in the form of RSUs, or even that I would be required to accept any portion as RSUs. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

9. Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. I had no rights but the contract rights of an employee whose compensation had been withheld.

10. I understand that Lehman now has taken the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue. For prior years, not at issue here, after the five-year waiting period ended and I was issued the RSU-designated portion of my bonus, Lehman withheld from this compensation a sufficient amount of

3

cash to pay the federal withholding tax, and then provided me with Lehman shares for the balance.  The entire amount of the bonus was taxed as ordinary income to me.  There was never any sale of securities to raise cash for the withholding tax, which would have been necessary if "equity securities" had been issued to me at the time of the declaration of the bonus.

11.    I have reviewed the "Factual Background" included in Lehman's Memorandum in Support.  It is self-serving, unsupported by the facts, and imputes an intent to me that wasn't there.  The Background concedes that the RSU-designated portion was withheld from each employee's earned and declared "Total Compensation."  The Background claims that the RSUs gave employees a financial stake in the company, but until the end of the waiting period employees had no rights as a stockholder and had nothing but Lehman's contract promise to pay us, someday, the balance of the bonus Lehman had previously declared.  Employees like me had no choice as to our participation.  What Lehman describes as a financial incentive to remain with Lehman was really Lehman's arbitrary assertion of financial control by withholding 25 percent to 40 percent of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed.  There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm.  The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the firm.

12.    Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true.  I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed.  In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock.  Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity.  I joined Lehman to have a job and to further my career, and not to

4

have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period.

13. Lehman's representation to the Court that RSU holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of RSUs the holder held. But Lehman never tells the Court here what it also never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding RSUs (determining what fraction of a vote the purported RSU vote had, if any), when did the RSU come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSUs had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

14. Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is simply meaningless. What has meaning is what I had before the end of five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue here Lehman declared what I earned as my bonus, promised payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I

5

had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had declared and promised would be paid.

15. Lehman recognized my rights as those of a contract creditor in its petition and schedules, where RSU agreements were listed as Executory Contracts under Schedule G.

16. In addition, I have attached hereto as Exhibit 1 the Proof of Claim that I filed in connection with my contract rights under the RSU Agreements. My initial Claim was assigned Claim No. 5173 and 4705, and after amendment was assigned Claim Nos. 20774 and 20775.

17. Along with its bar date notice, Lehman provided me with this Proof of Claim form. In the form provided, Lehman had largely completed the form, including inserting the caption, supplying my name and address, and notifying me that I had a Claim scheduled as a *["Schedule F claim" or "Schedule G" claim]*, for an "Executory Contract." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement."

18. All of this information was contained in the Proof of Claim form when Lehman provided it to me. I added only my phone number, email address, the amount of the claim, and my signature and date. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent.

19. Through my attorney I amended my claim under the RSU Agreements. The Amended Claim is attached as Exhibit 2. Debtors acknowledged receipt of the Proof of Claim (the final page of Exhibit 2), and assigned the amended claim Claim Nos. 20774 and 20775.

20. The economic substance of the RSU Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus.

21. Even after vesting of the RSUs there was no right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the RSU Agreement. Even after I was terminated without cause, my right to draw down on the shares depended upon my continued observance of certain contract obligations. *[Consider whether this last sentence applies to you.]*

23. Stock options that Lehman issued to me worked in a completely different way than RSUs. At the time of the grant, I received what is recognized as a security in the form of the stock option. The option provided me with the choice whether to buy LBH shares at a fixed price, the exercise price. The time for exercise was not a fixed date, but a period of time between exercise and lapse during which I would make an investment decision to pay the exercise price, and I then would receive LBH shares. The timing of any exercise, and even the decision *whether* to hold the option or exercise it, was solely my investment decision. No comparable security was issued to me under the RSU Agreement. With an RSU, there was a conversion and Lehman stock was simply issued to me at the end of the waiting period Lehman imposed, with no action on my part. At no time did I exercise any choice or make any investment decision regarding the RSUs or the delivery, the timing of delivery, or the form of the underlying compensation

24. Finally, with RSUs I paid tax at ordinary income rates on the market value of the shares Lehman issued to me upon conversion. Upon exercise of stock options I also paid tax at ordinary income rates, but only on the difference between the current market value of the LBH shares at the time of exercise and the exercise price.

25. Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, Lehman now claims for the unpaid

7

amount the classification of equity, even though no equity was ever issued and I had no rights as a holder of equity.

26. Lehman never told me in its annual brochures or its description of the RSUs, and I did not understand, that if Lehman filed for bankruptcy there was a risk I would not receive any of the compensation that it declared and withheld, or that I would not have the same standing as other unpaid creditors because I had been compensated with RSUs.  Lehman did not ask for, and I never provided, a written authorization for deductions or withholdings from my wages.  I respectfully maintain and reassert my rights to be paid as a general unsecured creditor under the wage laws of the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2014

/s/ Brian Monahan
Signature

Brian W Monahan