UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | 08-13555 (SCC) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

------------------------------------------------------------- x

### DECLARATION OF CLAIMANT MICHAEL K. McCULLY IN OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE

Michael K. McCully declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 313th Omnibus Objection.

2.      I was employed by Lehman Brothers from 1988 through 2008. Lehman Brothers terminated my employment on March 10, 2008. Upon the termination of my employment, Lehman Brothers assured me that my termination was an "involuntary termination without cause" as that phrase is defined in the "RSU Agreements" between Lehman Brothers and employees. Upon my execution of a Separation Agreement and Release dated April 11, 2008, I satisfied the "Release Requirement" set forth in the RSU Agreements.

3.      Lehman compensated me on what it called a Total Compensation basis, by payment of an annual salary (paid in bi-weekly installments) plus a bonus. My bonus was an

integral part of my compensation – my annual salary during the years at issue here ranged from 18 to 57 percent of my total compensation.

4.      For each year between 2003 and 2007 Lehman told me in writing, shortly after the end of each fiscal year (November 30), the amount of my bonus for that year and that my bonus was being divided into two portions, one designated Restricted Stock Awards (or "RSUs") and one designated as the "Total Cash Payment." For each of those years, 25 percent of my bonus was designated as RSUs

5.      When Lehman paid me the "Total Cash Payment" portion of my bonus, Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion was declared as part of my bonus at the same time, Lehman did not report it to the tax authorities as my compensation income; nor did Lehman advise me that I should do so.

6.      At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs (except in two years to receive a portion in options). My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the amount of my bonus that was designated as RSUs, and I had no ability to direct how the amounts that Lehman withheld would be used. Since what I received was Lehman's contract promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

2

7.    Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements.  As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor.  Further, I had no ability to sell, assign, hedge, pledge or otherwise dispose of the RSUs.  I had no rights but the contract rights of an employee whose compensation had been withheld.

8.    I understand that Lehman takes the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue.  For prior years, not at issue here, after the five-year waiting period ended and I was issued the RSU-designated portion of my bonus, at my election, Lehman withheld from this compensation a sufficient amount of to pay the federal withholding tax, and then provided me with Lehman shares for the balance.  The entire amount of the bonus was taxed as ordinary income to me. Lehman never report to me any sale of shares on my behalf to raise cash for the withholding tax, which would have been necessary if "equity securities" had been issued to me at the time of the declaration of the bonus.

9.    I have reviewed the "Factual Background" included in Lehman's Memorandum in Support.  It is self-serving and imputes an intent to me that wasn't there.  The Background concedes that the RSU-designated portion was withheld from each employee's earned and declared "Total Compensation."  The Background claims that the RSUs gave employees a financial stake in the company, but until the end of the waiting period employees had no rights as a stockholder and had nothing but Lehman's contract promise to pay us, someday, the balance of the bonus Lehman had previously declared.  Employees like me had no choice as to our participation.  What Lehman describes as a financial incentive to remain with Lehman was really

3

Lehman's arbitrary assertion of financial control by withholding a material percentage of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the firm.

10.     Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five-year waiting period Lehman unilaterally imposed. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period. Further, as a prudent investor I, and many others, sold all stock as soon as it became free to trade, regardless of price. I maintained this practice right through the end of my employment.

11.     Lehman's representation to the Court that RSU holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of RSUs the holder held. But Lehman never tells the Court here what it also never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding RSUs (determining what fraction of a vote the purported RSU

vote had, if any), when did the RSU come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSU had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

12.    Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is meaningless to me. What has meaning is what I had before the end of the five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue here Lehman declared what I earned as my bonus, promised payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had declared and promised would be paid.

13.    Lehman recognized my rights as those of a contract creditor in its petition and schedules, where RSU agreements were listed as Executory Contracts under Schedule G.

14.    I have attached hereto as Exhibit 1 the Proof of Claim that I filed in connection with my contract rights under the RSU Agreements. My initial Claim was assigned Claim No. 32794. Lehman provided me with this Proof of Claim form. In the form provided, Lehman had largely completed the form, including inserting the caption, supplying my name and address, and notifying me that I had a Claim scheduled as a Schedule G" claim, for an "Executory Contract." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement."

5

15.    All of this information was contained in the Proof of Claim form when Lehman provided it to me. I added only my phone number, email address, the amount of the claim, and my signature and date. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent. (Through my attorney I amended my claim under the RSU Agreements. The Amended Claim was assigned Claim No. 65949.)

16.    The economic substance of the RSU Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus.

17.    Even after vesting of the RSUs there was no right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the RSU Agreement. Even after I was terminated without cause, my right to draw down on the shares depended upon my continued observance of certain contract obligations

18.    Stock options that Lehman issued to me worked in a completely different way than RSUs. At the time of the grant, I received what is recognized as a security in the form of the stock option. The option provided me with the choice whether to buy LBH shares at a fixed price, the exercise price, when the options vested several years after the grant. The time for exercise was not a fixed date, but a period of time between vesting and lapse during which I would make an investment decision to pay the exercise price, and I then would receive LBH shares. The timing of any exercise, and even the decision *whether* to hold the option or exercise it, was solely my investment decision. With an RSU, there was a conversion and Lehman stock was simply issued to me at the end of the waiting period Lehman imposed, with no action on my

6

part.  At no time did I exercise any choice or make any investment decision regarding the RSUs

or the delivery, the timing of delivery, or the form of the underlying compensation

19.    Finally, with RSUs I paid tax at ordinary income rates on the market value of the

shares Lehman issued to me upon conversion.  Upon exercise of stock options I also paid tax at

ordinary income rates, but only on the difference between the current market value of the LBH

shares at the time of exercise and the exercise price.

20.    Lehman does not dispute that it retained me to perform services as an employee

and that it received my services, for which at the end of each fiscal year it declared the bonus

portion of my Total Compensation.  While I continued to work for Lehman in reliance on its

promise to pay me the compensation it declared that I earned, Lehman now claims for the unpaid

amount the classification of equity, even though no equity was ever issued, I had no rights as a

holder of equity.

21.    Lehman did not ask for, and I never provided, a written authorization for

deductions or withholdings from my wages.  I respectfully maintain and reassert my rights to be

paid as a general unsecured creditor under the wage laws of the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: March 4, 2014



                                               Michael K. McCully


7

<u>EXHIBIT 1</u>

United States Bankruptcy Court/Southern District of New York

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: | Chapter 11 | UNIQUE IDENTIFICATION NUMBER: 555231120 |
|---|---|---|
| Lehman Brothers Holdings Inc., et al., Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) | |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor | Filed: USBC - Southern District of New York |
| LEHMAN BROTHERS HOLDINGS, INC. | 08-13555 (JMP) | Lehman Brothers Holdings Inc., Et Al. 08-13555 (JMP)        0000032794 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555231120*****
MICHAEL K., MCCULLY
333 EAST 18TH STREET
NEW YORK, NY 10003

212-353-2932    mkmccully@gmail.com

Telephone number:        Email Address:

□ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:
(If known)

Filed on:

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

$837,036

Name and address where payment should be sent (if different from above)

□ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

□ Check this box if you are the debtor or trustee in this case.

Telephone number:        Email Address:

1.    **Amount of Claim as of Date Case Filed:** $ _____

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

□  Check this box if all or part of your claim is based on a Derivative Contract.*
□  Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

□  Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2.    **Basis for Claim:** Unpaid compensation
(See instruction #2 on reverse side.)

3.    **Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4.    **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  □ Real Estate   □ Motor Vehicle   □ Other
Describe: _____
Value of Property: $ _____  Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____ Basis for perfection: _____
Amount of Secured Claim: $ _____  Amount Unsecured: $ _____

6.    **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
(See instruction #6 on reverse side.)

5.    **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

□ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☒ Wages, salaries or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

□ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

□ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

□ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

□ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)( __ ).

Amount entitled to priority:

$ 10,950

7.    **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8.    **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

FILED / RECEIVED
SEP 22 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/21/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Michael K. McCully |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# LEHMAN BROTHERS

## Executive Compensation Summary
### Michael K. McCully

Employee ID: 10005470

LEH
Price @ issue (12|3)

### AWARD UNITS*

| Grant Date | Description | Units Granted | Dividend Equivalents | Units Vested | Units Unvested | Units Outstanding | Units Exercised | Units Not Forfeited | Scheduled Expiration Date |
|---|---|---|---|---|---|---|---|---|---|
| Dec 10, 2003 | 2003 SVP Principal | 1,733.92 | 61.25 | 1,795.17 | 0.00 | 1,795.17 | 0.00 | 1,795.17 | November 30, 2008 |
| Dec 10, 2003 | 2003 SVP Discount | 577.96 | 20.33 | 0.00 | 598.29 | 598.29 | 0.00 | 598.29 | November 30, 2008 |
| Dec 09, 2004 | 2004 SVP Principal | 4,662.00 | 126.08 | 4,788.08 | 0.00 | 4,788.08 | 0.00 | 4,788.08 | May 31, 2009 |
| Dec 09, 2004 | 2004 SVP Discount | 1,554.00 | 42.05 | 0.00 | 1,596.05 | 1,596.05 | 0.00 | 1,596.05 | May 31, 2009 |
| Nov 30, 2005 | 2005 SVP Principal | 3,730.16 | 70.78 | 3,800.94 | 0.00 | 3,800.94 | 0.00 | 3,800.94 | May 31, 2009 |
| Nov 30, 2005 | 2005 SVP Discount | 1,243.38 | 23.60 | 0.00 | 1,266.98 | 1,266.98 | 0.00 | 1,266.98 | May 31, 2009 |
| Dec 08, 2006 | 2006 SVP Principal | 3,661.07 | 43.86 | 0.00 | 3,704.93 | 3,704.93 | 0.00 | 3,704.93 | November 30, 2011 |
| Dec 08, 2006 | 2006 SVP Discount | 1,220.36 | 14.60 | 0.00 | 1,234.96 | 1,234.96 | 0.00 | 1,234.96 | November 30, 2011 |
| Dec 07, 2007 | 2007 SVP Principal | 690.81 | 2.17 | 0.00 | 692.98 | 692.98 | 0.00 | 692.98 | November 30, 2012 |
| Dec 07, 2007 | 2007 SVP Discount | 230.27 | 0.70 | 0.00 | 230.97 | 230.97 | 0.00 | 230.97 | November 30, 2012 |
| | | | | | | 19,709.35 | 0.00 | 19,709.35 | |

_(handwritten annotations: "235", "$59", "440", "215", "200", "243", "OR", "274", "045", "45", "036", "$837,036"; and near Units Exercised column: "$53 00", "$45", "$64", "$74", "65")_

### STOCK OPTIONS

| Grant Date | Description | Exercise Price | Options Granted | Dividend Equivalents | Options Vested | Options Unvested | Options Outstanding | Options Currently Exercisable | Options Exercised | Options Not Forfeited | Scheduled Expiration Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dec 10, 2003 | 2003 SVP Options | $35.6950 | 1,978 | | | 494 | | 494 | Nov 29, 2013 | 0 | 494 | November 29, 2013 |
| | | | | | | 494 | | 494 | | 0 | 494 | |

Disposition of shares assumes an involuntary termination without Cause in March 2008.

For information regarding the provisions which may apply to any awards following your termination, please refer to the applicable plan documents.  Please note that with respect to any 2006 and/or 2007 awards, your entitlement to the unvested portion of any principal award is further conditioned on your execution of a Firm-standard release agreement, in accordance with applicable Firm policy.

* Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.

** Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

Prepared in March 2008

TO:                         Epiq Bankruptcy Solutions, LLC.
Lehman Brothers Holdings Claim Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

FR:                          Michael K. McCully
333 East 18th Street
New York, NY 10003-2802
212-353-2932
mkmccully@gmail.com

RE:                         Filing of 3 Proof of Claim Forms

DATE:                   September 21, 2009

I have enclosed stamped, self-addressed envelopes and a copy of each Proof of Claim
Form I am submitting.  Can you please date-stamp the copy and return it to me in the
enclosed envelopes, so that I may have a record of this filing.

Thank you.

