UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                                 :
In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,                           :    08-13555 (SCC)
                                                                 :
                                                   Debtors.      :    (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

**DECLARATION OF CLAIMANT MICHAEL J. PETRUCELLI IN OPPOSITION
TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING
TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR
ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT
TO § 510(b) OF THE BANKRUPTCY CODE**

Michael J. Petrucelli declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 313th Omnibus Objection.

2. I was employed by Lehman Brothers from December 1993 until September 9, 2008, when Lehman Brothers terminated my employment, without cause.

3. Lehman compensated me on what it called a Total Compensation basis, by agreeing to pay commissions on the products I sold. The commission varied depending on the product, but Lehman agreed to pay me a specific commission for each product. On a monthly basis after my Gross Production was determined, Lehman told me what my "Total Sales Compensation" was, and then told me what portion of my Total Sales Compensation would be paid as "Cash Commissions." The balance was unilaterally retained by Lehman and I received a statement containing the description "Equity Accrual Calculated."

4.      At the end of each fiscal year Lehman took that portion of my Total Sales Compensation that it had withheld and denominated Equity Accrual Calculated and gave me a deferred compensation credit designated as Restricted Stock Units (or "RSUs").

5.      When Lehman paid me my "Cash Commissions," Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion of my commissions was earned simultaneously as part of the agreed-upon commissions, it was not reported to the tax authorities as my compensation income.

6.      At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs (except, during two years to receive 25% in options). My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion amount of my bonus that was designated as RSUs, and I had no ability to direct how the amounts that Lehman withheld would be used. Since what I received was Lehman's contract promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

7.      Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as

2

grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. I had no rights but the contract rights of an employee whose compensation had been withheld.

8.  I understand that Lehman now has taken the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue. For prior years, not at issue here, after the five-year waiting period ended and I was issued the RSU-designated portion of my bonus, Lehman withheld from this compensation a sufficient amount of cash to pay the federal withholding tax, and then provided me with Lehman shares for the balance. The entire amount of the bonus was taxed as ordinary income to me. There was never any sale of securities to raise cash for the withholding tax, which would have been necessary if "equity securities" had been issued to me at the time of the declaration of the bonus.

9.  I have reviewed the "Factual Background" included in Lehman's Memorandum in Support. It is self-serving, unsupported by the facts, and imputes an intent to me that wasn't there. The Background concedes that the RSU-designated portion was withheld from each employee's earned and declared "Total Compensation." The Background claims that the RSUs gave employees a financial stake in the company, but until the end of the waiting period employees had no rights as a stockholder and had nothing but Lehman's contract promise to pay us, someday, the balance of the bonus Lehman had previously declared. Employees like me had no choice as to our participation. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's arbitrary assertion of financial control by withholding 25 percent to 40 percent of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making

3

it costly for me to leave the firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the firm.

10. Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period.

11. Lehman's representation to the Court that RSU holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of RSUs the holder held. But Lehman never tells the Court here what it also never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding RSUs (determining what fraction of a vote the purported RSU vote had, if any), when did the RSU come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSUs had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

12. Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price

4

is simply meaningless. What has meaning is what I had before the end of five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue here Lehman declared what I earned as my bonus, promised payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had declared and promised would be paid.

13. Lehman recognized my rights as those of a contract creditor in its petition and schedules, where RSU and CSA agreements were listed as Executory Contracts under Schedule G. I have attached hereto as Exhibit 1 the Proof of Claim that I filed in connection with my contract rights under the RSU Agreements. My Claim was assigned Claim No. 2770. Along with its bar date notice, Lehman provided me with this Proof of Claim form. In the form provided, Lehman had largely completed the form, including inserting the caption, supplying my name and address, and notifying me that I had a Claim scheduled as a "Schedule G" claim, for an "Executory Contract." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement."

14. All of this information was contained in the Proof of Claim form when Lehman provided it to me. I added only my phone number, email address, the amount of the claim, and my signature and date. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent.

15. The economic substance of the RSU Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the

years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus. Even after vesting of the RSUs there was no right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the RSU Agreement.

16.    Stock options that Lehman issued to me worked in a completely different way than RSUs. At the time of the grant, I received what is recognized as a security in the form of the stock option. The option provided me with the choice whether to buy LBH shares at a fixed price, the exercise price. The time for exercise was not a fixed date, but a period of time between exercise and lapse during which I would make an investment decision to pay the exercise price, and I then would receive LBH shares. The timing of any exercise, and even the decision *whether* to hold the option or exercise it, was solely my investment decision. No comparable security was issued to me under the RSU Agreement. With an RSU, there was a conversion and Lehman stock was simply issued to me at the end of the waiting period Lehman imposed, with no action on my part. At no time did I exercise any choice or make any investment decision regarding the RSUs or the delivery, the timing of delivery, or the form of the underlying compensation

17.    Finally, with RSUs I paid tax at ordinary income rates on the market value of the shares Lehman issued to me upon conversion. Upon exercise of stock options I also paid tax at ordinary income rates, but only on the difference between the current market value of the LBH shares at the time of exercise and the exercise price.

18.    Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, Lehman now claims for the unpaid

6

amount the classification of equity, even though no equity was ever issued and I had no rights as a holder of equity.

19. Lehman never told me in its annual brochures or its description of the RSUs, and I did not understand, that if Lehman filed for bankruptcy there was a risk I would not receive any of the compensation that it declared and withheld, or that I would not have the same standing as other unpaid creditors because I had been compensated with RSUs. Lehman did not ask for, and I never provided, a written authorization for deductions or withholdings from my wages. I respectfully maintain and reassert my rights to be paid as a general unsecured creditor under the wage laws of the State of New York

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 4, 2014

Michael J. Petrucelli

# EXHIBIT 1

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held: LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor: 08-13555 (JMP) |

UNIQUE IDENTIFICATION NUMBER: 555231040

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000005770

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555231040*****
MICHAEL J. PETRUCELLI
7 NEARWATER LANE
RIVERSIDE, CT 06878

Telephone number: 917-670-2952    Email Address: mpetruce@mindspring.com

☑ Check this box to indicate that this claim amends a previously filed claim.

Revise 2396 delete
Court Claim Number: 2396 / 206 (If known)
Filed on: 2/2/09

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:
SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE
DESCRIPTION: RESTRICTED STOCK UNIT AGREEMENT
delete 206

Name and address where payment should be sent (if different from above)

$2,452,214.56

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 2,452,214.56

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: _____
   (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
   3a. Debtor may have scheduled account as: _____
       (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: _____
   Value of Property: $_____ Annual Interest Rate ____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____ Basis for perfection: _____
   Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☑ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:
$10,950

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
   (See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

**FILED / RECEIVED**
JUL 20 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 7/15/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. [signature] |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

/



P 646 282 2500   F 646 282 2501
757 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

\*\*\*\* LBH CLMLTR (MERGE2,TXNUM2) 4000002374 \*\*\*\*
PETRUCELLI, MICHAEL J.
7 NEARWATER LANE
RIVERSIDE, CT 06878

July 01, 2009

## ACKNOWLEDGEMENT OF RECEIPT OF PROOF OF CLAIM

This letter serves as acknowledgement that the claim identified below has been recorded by Epiq Bankruptcy Solutions, LLC, the court-approved claims agent, on the claims register in the LEHMAN BROTHERS HOLDINGS INC. case. To ensure that your claim has been recorded correctly, please review the following information:

| | |
|---|---|
| Debtor: | LEHMAN BROTHERS HOLDINGS, INC. |
| Case Number: | 08-13555 |
| Creditor: | PETRUCELLI, MICHAEL J. |
| Date Received: | 02/02/2009 |
| Claim Number: | 2396 |

*Please note that nothing in this Acknowledgement should be construed to mean or imply that your claim is being allowed. The Debtor may elect to object to the identified claim on various grounds.*

We also strongly encourage you to review your proof of claim on our website at http://chapter11.epiqsystems.com/LBH. To find your imaged claim, click on the "Filed Claims & Schedules" icon at the top of the page, type in your claim number in the "Claim #" field, and click "Search". Additionally, you may search for your claim by typing in your name in the appropriate search field.

If you have any questions, please contact us at 646-282-2500 or via our contact form on our website at http://www.epiqbankruptcysolutions.com/contact.htm. Please be sure to specify the client name about which you are inquiring.

EPIQ BANKRUPTCY SOLUTIONS, LLC

2



P 646 282 2500  F 646 282 2501
757 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

\*\*\*\* LBH CLMLTR (MERGE2,TXNUM2) 4000000204 \*\*\*\*
PETRUCELLI, MICHAEL J.
7 NEARWATER LANE
RIVERSIDE, CT 06878

June 30, 2009

## ACKNOWLEDGEMENT OF RECEIPT OF PROOF OF CLAIM

This letter serves as acknowledgement that the claim identified below has been recorded by Epiq Bankruptcy Solutions, LLC, the court-approved claims agent, on the claims register in the LEHMAN BROTHERS HOLDINGS INC. case. To ensure that your claim has been recorded correctly, please review the following information:

| | |
|---|---|
| Debtor: | NO DEBTOR ASSERTED BY CREDITOR |
| Case Number: | NO CASEZ99 |
| Creditor: | PETRUCELLI, MICHAEL J. |
| Date Received: | 10/16/2008 |
| Claim Number: | 206 |

*Please note that nothing in this Acknowledgement should be construed to mean or imply that your claim is being allowed. The Debtor may elect to object to the identified claim on various grounds.*

We also strongly encourage you to review your proof of claim on our website at http://chapter11.epiqsystems.com/LBH. To find your imaged claim, click on the "Filed Claims & Schedules" icon at the top of the page, type in your claim number in the "Claim #" field, and click "Search". Additionally, you may search for your claim by typing in your name in the appropriate search field.

If you have any questions, please contact us at 646-282-2500 or via our contact form on our website at http://www.epiqbankruptcysolutions.com/contact.htm. Please be sure to specify the client name about which you are inquiring.

EPIQ BANKRUPTCY SOLUTIONS, LLC

3

Proof of Claim for creditor Michael J. Petrucelli
Debtor: Lehman Brothers Holdings
Case Number 08-13555
Revising Claim Number 2396

Attached are documents which detail and support my claim totaling $2,452,214.56.

**Section 1** is related to commissions due me for September 2008 production. A check for the amount of $18,595.70 was issued on or about September 12th to me by Lehman Brothers and was returned to me for insufficient funds. I am claiming this as apriority claim under 11 U.S.C }507(a).

**Section 2** is a claim for the lump sum special separation payment of $25,000 that was pledged to be delivered in the firm's September 9, 2008 separation Agreement to me. That commitment was rescinded in a letter from Lehman Brothers Holdings Inc. dated September 30, 2008 because of the bankruptcy filing.

**Section 3** is a claim for a payment of $1289.86 made by me to pay for Health Care coverage under Cobra which had been promised to have been paid for by Lehman Brothers until September 9, 2009 as outlined in the firm's September 9, 2008 separation agreement to me. That commitment was rescinded in a letter from Lehman Brothers Holdings Inc. dated September 30, 2008 because of the bankruptcy filing.

**Section 4** is a claim for earnings that were withheld involuntarily from my paycheck to participate in Lehman Brothers Restricted Stock Plan (RSU) and the Lehman Brothers Stock Option Plan (stock options only pertinent to me in 2004) dating back to 2003. The "Commissions Withheld" column totaling $2,380,959 correctly summarizes the yearly amounts contributed to the RSU and Stock Option Plan involuntarily by me. According to the RSU and Stock Option Plan (in Section 4 of this claim), this money was never invested in actual shares or options of Lehman Brothers and no shares for contribution years 2003-2008 were ever delivered to me, and the remaining options were not exercisable by me.

**Section 5** is a claim for the remaining balance of my "Lehman Brothers Partnership Account" for the amount of $26,370.

Michael J. Petrucelli
7 Nearwater Lane
Riverside, CT 06878
mpetruce@mindspring.com
(917) 670-2952

Michael Petrucelli Creditor Claims
For Lehman Brothers Bankruptcy

| | |
|---|---:|
| Commissions Due (paycheck dated 9/18/08 bounced) | $18,595.70 |
| Severance Due | $25,000.00 |
| September Cobra Payment | $1,289.86 |
| Cash commissions witheld for RSUs (see worksheet) | $2,380,959.00 |
| Lehman Brothers Partnership | $26,370.00 |
| | **$2,452,214.56** |

5