UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
In re                                                         :    Chapter 11 Case No.
                                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,                        :    08-13555 (SCC)
                                                              :
                                    Debtors.                  :    (Jointly Administered)
                                                              :
------------------------------------------------------------- x

## DECLARATION OF CLAIMANT BARRY PORTER IN OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE

Barry Porter declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 130th Omnibus Objection.

2. I was employed by Lehman Brothers from July 2004 and am still currently employed by Lehman Brothers under my original employment contract that is amended each year which included a Bonus element made up of Cash and CSA's, since 2008 there has only been a cash bonus element.

3. Lehman compensated me on what it called a Total Compensation basis, by payment of an annual salary (paid in monthly installments) plus a bonus. My bonus was an integral part of my compensation – my annual salary during the years at issue here was generally only 25 to 37 percent of my total compensation.

4. For each year between 2004 and 2008 Lehman told me in writing, shortly after the end of each fiscal year (November 30), the amount of my bonus for that year and that my

bonus was being divided into two portions, one designated Contingent Stock Awards (or "CSAs") and the balance that was the cash award. For each of those years, between 25 percent and 40 percent of my bonus was designated as CSAs. I was employed from July 2004 so my first bonus and CSA's were communicated to me in December 2004 and each subsequent year through 2007. After the Lehman Bankruptcy I was kept in employment remunerated by the administrators of the UK Lehman entity I was employed by. I was not at Lehman for 5 years so none of my CSA's were ever vested

5. When Lehman paid me the cash portion of my bonus, Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the CSA-designated portion was declared as part of my bonus at the same time, it was not reported to the tax authorities as my compensation income.

6. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of CSAs. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion amount of my bonus that was designated as CSAs, and I had no ability to direct how the amounts that Lehman withheld would be used. Since what I received was Lehman's contract promise to pay in the future, I paid no tax on the CSA-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this CSA-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

7.. When I was first hired by Lehman I was not told that I was required to take a minimum portion of my Total Compensation in the form of CSAs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation for that year that I would be required to

2

accept in the form of CSAs, or even that I would be required to accept any portion as CSAs. Whether any portion of my Total Compensation would be paid in CSAs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

8. Pursuant to the CSA Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called CSAs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, pledge or otherwise dispose of the CSAs. I had no rights but the contract rights of an employee whose compensation had been withheld.

9. I have reviewed the "Factual Background" included in Lehman's Memorandum in Support. It is self-serving, unsupported by the facts, and imputes an intent to me that wasn't there. The Background concedes that the CSA-designated portion was withheld from each employee's earned and declared "Total Compensation." The Background claims that the CSAs gave employees a financial stake in the company, but until the end of the waiting period employees had no rights as a stockholder and had nothing but Lehman's contract promise to pay us, someday, the balance of the bonus Lehman had previously declared. Employees like me had no choice as to our participation. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's arbitrary assertion of financial control by withholding 25 percent to 40 percent of our declared bonuses and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making

it costly for me to leave the firm. The CSAs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the firm.

10. Lehman's claim that I "originally intended" to treat the CSAs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period.

11. Lehman's representation to the Court that CSA holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted "in proportion" to the number of CSAs the holder held. But Lehman never tells the Court here what it also never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding CSAs (determining what fraction of a vote the purported CSA vote had, if any), when did the CSA come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the CSA holder's vote solicited? Lehman's statement that holders of CSAs had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

12. Lehman's claims that it "equated [CSAs] to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is simply meaningless. What has meaning is what I had before the end of five-year waiting period. In each of the years at issue here Lehman declared what I earned as my bonus, promised

4

payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had declared and promised would be paid.

13. The economic substance of the CSA Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus.

14. Even after vesting of the CSAs there was no right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the CSA Agreement. Even after I was terminated without cause, my right to draw down on the shares depended upon my continued observance of certain contract obligations.

15. Stock options that Lehman issued to me worked in a completely different way than CSAs. At the time of the grant, I received what is recognized as a security in the form of the stock option. The option provided me with the choice whether to buy LBH shares at a fixed price, the exercise price. The time for exercise was not a fixed date, but a period of time between exercise and lapse during which I would make an investment decision to pay the exercise price, and I then would receive LBH shares. The timing of any exercise, and even the decision *whether* to hold the option or exercise it, was solely my investment decision. No comparable security was issued to me under the CSA Agreement. With a CSA, there was a conversion and Lehman stock would have simply been issued to me at the end of the waiting period Lehman imposed,

with no action on my part. At no time did I exercise any choice or make any investment decision regarding the CSAs or the delivery, the timing of delivery, or the form of the underlying compensation. As stated before none of my Options or CSA's were fully vested due to my length of employment, and so were not exercised or converted.

16. Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, Lehman now claims for the unpaid amount the classification of equity, even though no equity was ever issued and I had no rights as a holder of equity.

17. Lehman never told me in its annual brochures or its description of the CSAs, and I did not understand, that if Lehman filed for bankruptcy there was a risk I would not receive any of the compensation that it declared and withheld, or that I would not have the same standing as other unpaid creditors because I had been compensated with CSAs. Lehman did not ask for, and I never provided, a written authorization for deductions or withholdings from my wages. I respectfully maintain and reassert my rights to be paid as a general unsecured creditor under the wage laws of the United Kingdom Employment Rights Act of 1996.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 4, 2014

Barry Porter