UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re                                                        :   Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,                       :   08-13555 (SCC)
                                                             :
                                            Debtors.         :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x

**DECLARATION OF CLAIMANT SANDY FLEISCHMAN RICHMAN IN OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE**

Sandy Fleischman Richman declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 118th Omnibus Objection.

2. I was employed by Lehman Brothers from 1993 through Lehman's filing of its bankruptcy petition in September 2008. Following Lehman's sale of assets to Barclays Bank I was employed by Barclays.

3. Lehman compensated me on what it called a Total Compensation basis, by payment of an annual salary (paid in bi-weekly installments) plus a bonus. My bonus was an integral part of my compensation – my annual salary during the years at issue was generally only 20 to 25 percent of my total compensation.

4. For each year between 2003 and 2008 Lehman told me in writing, shortly after the end of each fiscal year (November 30), the amount of my bonus for that year and that my

bonus was being divided into two portions, one designated Restricted Stock Awards (or "RSUs") and one designated as the "Total Cash Payment." For each of those years, between approximately 25 percent to 40 percent of my bonus was designated as RSUs.

5. When Lehman paid me the "Total Cash Payment" portion of my bonus, Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion was declared as part of my bonus at the same time, it was not reported to the tax authorities as my compensation income.

6. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion of my bonus that was designated as RSUs. Since what I received was Lehman's promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

7. When I was first hired by Lehman I was not told that I was required to take a minimum portion of my Total Compensation in the form of RSUs. Nor was I told at the outset of each fiscal year the portion of my Total Compensation for that year that I would be required to accept in the form of RSUs, or even that I would be required to accept any portion as RSUs. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

8. Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. I had no rights but the rights of an employee whose compensation had been withheld.

9. I understand that Lehman now has taken the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue. For prior years, not at issue here, after the five-year waiting period ended I was issued the RSU-designated portion of my bonus. At that time, Lehman withheld from this compensation a sufficient amount of cash to pay the federal withholding tax, and then provided me with Lehman shares for the balance. At the end of the five year period the entire amount of the bonus was taxed as ordinary income to me. Lehman never provided me with a Form 1099 indicating that RSU securities previously issued to me had been sold to pay taxes.

10. I have reviewed the "Factual Background" included in Lehman's Memorandum in Support. The Background concedes that the RSU-designated portion was withheld from my earned and declared "Total Compensation." The Background claims that the RSUs gave me a financial stake in the company, but until the end of the waiting period I had no rights as a stockholder and had nothing but Lehman's promise to pay me the balance of the bonus the company had previously declared. Employees like me had no choice as to our participation. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's assertion of financial control by withholding approximately 25 percent to 40 percent of my declared bonus and threatening not to pay it if I breached certain employment-related conditions

Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the firm.

11. Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career; not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended for me to be an equity holder before equity was actually issued.

12. Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is disingenuous. What is pertinent is what value I truly retained before the end of five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue, Lehman unilaterally determined what I earned as a bonus, promised payment of that bonus, and as one criterion for meeting their promise, contracted with me to pay a portion of my earned bonus at the end of five years using its own stock as currency when the time came. I had no rights to any stock during this five-year waiting period. What I had was a promise from Lehman to pay the bonus the company previously declared I had earned. I relied on that written agreement as a binding

4

obligation for Lehman to pay my bonus compensation according to the schedule they provided to me.

13.     Lehman recognized my rights as those of a contract creditor in its petition and schedules, where RSU agreements were listed as Executory Contracts under Schedule G. I have attached hereto as Exhibit 1 the Proof of Claim that I filed in connection with my contract rights under the RSU Agreements. My initial Claim was assigned Claim No. 8530. Lehman provided me with this Proof of Claim form. Lehman had largely completed the form it provided, including inserting the caption, supplying my name and address, and notifying me that I had a Claim scheduled as a "Schedule G" claim, for an "Executory Contract." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement."

14.     All of this information was contained in the Proof of Claim form when Lehman provided it to me. I added only my phone number, email address, the amount and basis of the claim, and my signature and date. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent.

15.     The economic substance of the RSU Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus.

16.     Even after vesting of the RSUs there was no right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the RSU Agreement.

17.     Stock options that Lehman issued to me worked in a completely different way than RSUs. At the time of the grant, I received what is recognized as a security in the form of

5

the stock option. The option provided me with the choice whether to buy LBH shares at a fixed price, the exercise price. The time for exercise was not a fixed date, but a period of time between exercise and lapse during which I would make an investment decision to pay the exercise price, and I then would receive LBH shares. The timing of any exercise, and even the decision *whether* to hold the option or exercise it, was solely my investment decision. No comparable security was issued to me under the RSU Agreement. With an RSU, there was a conversion and Lehman stock was simply issued to me at the end of the waiting period Lehman imposed, with no action on my part. At no time did I exercise any choice or make any investment decision regarding the RSUs or the delivery, the timing of delivery, or the form of the underlying compensation

18.    Finally, with RSUs I paid tax at ordinary income rates on the market value of the shares Lehman issued to me upon conversion. Upon exercise of stock options I also paid tax at ordinary income rates, but only on the difference between the current market value of the LBH shares at the time of exercise and the exercise price.

19.    Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, the company now claims that the unpaid amount promised to me should be classified as equity, even though no equity was ever issued and I had no rights as a holder of equity.

20.    Lehman never told me in its annual brochures, its description of the RSUs, or any other correspondence that if Lehman filed for bankruptcy there was a risk I would not receive any of the compensation that I earned and that they declared and withheld. Nor at any time was I advised or made aware that I would not have the same standing as other unpaid creditors because

I had been compensated with RSUs. I respectfully maintain and reassert my rights to be paid as a general unsecured creditor under the wage laws of the State of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 4, 2014

                                                                                          Sandy Fleischman Richman

# EXHIBIT 1

| United States Bankruptcy Court/Southern District of New York | | **PROOF OF CLAIM** |
|---|---|---|
| Lehman Brothers Holdings Claims Processing Center c/o Epiq Bankruptcy Solutions, LLC FDR Station, P.O. Box 5076 New York, NY 10150-5076 | | |

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) | UNIQUE IDENTIFICATION NUMBER: 555298050 |
|---|---|---|
| Name of Debtor Against Which Claim is Held **LEHMAN BROTHERS HOLDINGS, INC.** | Case No. of Debtor **08-13555 (JMP)** | Filed: USBC - Southern District of New York Lehman Brothers Holdings Inc., Et Al. 08-13555 (JMP)    0000008530 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor) LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555298050***** SANDY, FLEISCHMAN RICH 25 CENTRAL PARK WEST APT #6E NEW YORK, NY 10023 **212-246-3466    sfleisch@barcap.com** Telephone number:    Email Address: | ☐ Check this box to indicate that this claim amends a previously filed claim. Court Claim Number: **08-13555** (If known) Filed on: _____ | **NOTICE OF SCHEDULED CLAIM:** Your Claim is scheduled by the indicated Debtor as: SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE DESCRIPTION: RESTRICTED STOCK UNIT AGREEMENT |
|---|---|---|
| Name and address where payment should be sent (if different from above) Telephone number:    Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. | |

1. Amount of Claim as of Date Case Filed: $ **3,903,072.10**
   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
   If all or part of your claim is entitled to priority, complete Item 5.
   If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   ☐ Check this box if all or part of your claim is based on a Derivative Contract.*
   ☐ Check this box if all or part of your claim is based on a Guarantee.*
   *IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: **employee priority - deferred compensation  See attached**
   (See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____  Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____  Basis for perfection: _____
   Amount of Secured Claim: $_____  Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
   (See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

| 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|
| Specify the priority of the claim: |
| ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). |
| ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4). |
| ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). |
| ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). |
| ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). |
| ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___). |
| Amount entitled to priority: $_____ |

| Date: **8/14/09** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. **Sandy Fleischman Richman** | FOR COURT USE ONLY **FILED / RECEIVED AUG 17 2009 EPIQ BANKRUPTCY SOLUTIONS, LLC** |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**Sandy Fleischman Richman**
**Equity Awards Outstanding as of September 12, 2008**

**RSUs**

| Grant Date | FMV on Grant Date | RSUs Granted | Grant Value | Total |
|---|---|---|---|---|
| 12/10/2003 | $35.6950 | 9,966.26 | $355,745.65 | $355,745.65 |
| 12/9/2004 | $42.9000 | 18,648.02 | $800,000.06 | $800,000.06 |
| 11/30/2005 | $63.0000 | 13,968.26 | $880,000.38 | $880,000.38 |
| 12/8/2006 | $77.0300 | 13,896.14 | $1,070,419.66 | $1,070,419.66 |
| 12/7/2007 | $63.4700 | 10,214.72 | $648,328.28 | $648,328.28 |
| 7/1/2008 | $20.9600 | 4,330.53 | $90,767.91 | $90,767.91 |
|  |  |  | RSU Total | **$3,845,261.94** |

**Options**

| Grant Date | FMV on Grant Date | Black-Scholes Value | Options Granted | Total |
|---|---|---|---|---|
| 12/10/2003 | $35.6950 | $10.4200 | 5,548 | $57,810.16 |
|  |  |  | Options Total | **$57,810.16** |

|  |  |
|---|---|
| Grand Total | **$3,903,072.10** |

7009 0820 0000 6795 5287

**CERTIFIED MAIL**™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Ave, 3rd Floor
New York, NY 10017
10017520063

RECEIVED
AUG 17 2009

UNITED STATES POSTAL SERVICE
1000
10017

U.S. POSTAGE PAID
EAST HAMPTON, NY
11937
AUG 14, '09
AMOUNT
$5.54
00095551-16