Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS, INC.,

7              Debtors.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    ADV. CASE NO.: 12-01044-scc

10   In the Matter of:

11   LEHMAN BROTHERS HOLDINGS, INC., ET AL.,

12              Plaintiffs,

13   v.

14   CITIBANK, N.A., ET AL.,

15              Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17                   United States Bankruptcy Court

18                   One Bowling Green

19                   New York, New York

20

21                   March 5, 2014

22                   2:05 p.m.

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

Page 2

1   DOC # 43309 Motion of Lehman Brothers Holdings, Inc.

2   Pursuant to Bankruptcy Rule 9019 for Approval of Settlement

3   Agreement Resolving Claim of Dr. H.C. Tschira Beteiligungs

4   GmbH & Co KG and Klaus Tschira Stiftung gGmbH

5

6   Doc #43315 Order to Show Cause to Consider Motion of Lehman

7   Brothers Holdings, Inc. Pursuant to Bankruptcy Rule 9019 for

8   Approval of Settlement Agreement Resolving Claim of Dr. H.C.

9   Tschira Beteiligungs GmbH & Co. KG and Klaus Tschira

10   Stiftung gGmbH signed on 2/26/2014 (related

11   document(s)43309).  Hearing to be held on 3/5/2014 at 2:00

12   PM at Courtroom 621 (SCC).  Objections due by 3/4/2014 at

13   12:00 PM Eastern Time

14

15   Adversary Proceeding: 12-01044-scc Lehman Brothers Holdings,

16   Inc., et al. v. CITIBANK, N.A., et al.  Discovery Conference

17

18

19

20

21

22

23

24

25   Transcribed by:  Sherri L. Breach, CERT*D-397

```
 1   A P P E A R A N C E S :

 2   WEIL, GOTSHAL & MANGES, LLP

 3        Attorneys for Plan Administrator

 4        700 Louisiana, Suite 1600

 5        Houston, Texas 77002

 6

 7   BY:  ALFREDO R. PEREZ, ESQ.

 8

 9   JONES DAY

10        Attorneys for Debtors

11        222 East 41st Street

12        New York, New York 10017

13

14   BY:  JAYANT W. TAMBE, ESQ.

15

16   DECHERT, LLP

17        Attorneys for the Tschira entities

18        1095 Avenue of the Americas

19        New York, New York 10036

20

21   BY:  ALLAN S. BRILLIANT, ESQ.

22

23

24

25
```

Page 4

1   MILBANK, TWEED, HADLEY & MCCLOY, LLP

2        Attorneys for Ad Hoc Group

3        One Chase Manhattan Plaza

4        New York, New York 10005

5

6   BY:  ERIC K. STODOLA, ESQ.

7

8   QUINN EMANUEL

9        Attorneys for

10        51 Madison Avenue, 22nd Floor

11        New York, New York 10010

12

13   BY:  ANDREW J. ROSSMAN, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good afternoon.  Please have a seat.

 3              How is everybody today?

 4              MR. PEREZ:  Good, Your Honor.

 5              THE COURT:  All right.  I think I have a few folks

 6   on the phone.  Mr. Farkus from RBS; Mr. Hayek from Dechert,

 7   Mr. Sanjana from Reorganization Research, Mr. Schmidt from

 8   Dechert, Mr. Webster from Stutman and Mr. Zekyrgias from

 9   Merrill Lynch.  How are you?

10              MR. BRILLIANT:  Your Honor, if I could --

11              THE COURT:  Yes.

12              MR. BRILLIANT:  -- make a correction?

13              THE COURT:  How are you, Mr. Brilliant?

14              MR. BRILLIANT:  Good.  And good to see you, Your

15   Honor.

16              THE COURT:  Good to see you.

17              MR. BRILLIANT:  It's nice to be -- be back in your

18   courtroom.

19              THE COURT:  Welcome back.

20              MR. BRILLIANT:  Your Honor, Mr. Daniel Hayek is

21   joining from Geneva, Switzerland.  He is with the --

22              THE COURT:  I see.

23              MR. BRILLIANT:  -- Kramer Dreyfus law firm --

24              THE COURT:  Very good.

25              MR. BRILLIANT:  -- and he's the Tschira Swiss
```

Page 6

1     counsel.

2              THE COURT:  Okay.

3              MR. BRILLIANT:  Mr. Christoph Schmidt is with the

4     Bighton (ph) Burkhart firm in Frankfurt, Germany, and he's

5     the Tschira entities' German counsel.

6              THE COURT:  Okay.  Very good.  They were listed

7     with your firm --

8              MR. BRILLIANT:  Yeah.  We made arrangements --

9              THE COURT:  -- on my sheet.

10             MR. BRILLIANT:  We made the arrangements for --

11    for them to join.

12             THE COURT:  Okay.  Thank you so much.

13             Okay.

14             MR. PEREZ:  Good morning, Your Honor.  Alfredo --

15    afternoon.  Alfredo Perez on behalf of the plan

16    administrator.

17             So I'm happy to be here this afternoon to try and

18    resolve this matter.  And let me give you a little bit of

19    background, some of which I'm sure the Court has heard in

20    bits and pieces, but I wanted to --

21             THE COURT:  And I have read the papers, but you're

22    welcome to --

23             MR. PEREZ:  Well -- and, Your Honor, these papers

24    are probably much more extensive than we would normally do

25    on a 9019 because it really involved the culmination of two

Page 7

```
 1    separate settlement --

 2              THE COURT:  Right.

 3              MR. PEREZ:  -- agreements.

 4              THE COURT:  Right.

 5              MR. PEREZ:  And we wanted to indicate to the Court

 6    kind of how it was all related.  That's why we put that

 7    little chart in that took us a long time to figure out how

 8    to put it in.

 9              But just by way of background, we entered into a

10    settlement agreement with LBF in March of last year --

11              THE COURT:  Right.

12              MR. PEREZ:  -- almost a year ago.

13              THE COURT:  Right.

14              MR. PEREZ:  That was approved both in the -- in

15    our Chapter 11 and in the Chapter 15.  It was approved by

16    the creditors' committee.

17              At that point in May of 2013, Tschira requested an

18    appealable order from FINMA (ph) and FINMA is, in essence,

19    the regulatory entity similar, I would imagine, to, you

20    know, like the Department of Insurance in connection with

21    our rehabs.

22              THE COURT:  Right.  Right.

23              MR. PEREZ:  That -- and requested an appealable

24    order.

25              They issued an appealable order November 11th of
```

Page 8

1    2013 upholding the settlement in all respects.  That order

2    was subsequently appealed by Tschira and that's the basis of

3    what's in our mind, holding everything up.

4               THE COURT:  Right.

5               MR. PEREZ:  And the last condition that we need to

6    satisfy under the LBF settlement agreement is to have a

7    final non-appealable order from the Swiss Court.  That's

8    Section 5.2(d).

9               THE COURT:  Right.

10              MR. PEREZ:  So in order to obtain that order, in

11   essence, unlock the benefits of the LBF settlement, we've

12   entered into a settlement with KTS that, in essence, has a

13   bunch of gives for us and has a bunch of gives for them.

14              So with respect to our -- what we get out of this

15   is we get, one, the appeal is withdrawn so that the LBF

16   agreement can go effective;

17              Two, it doesn't impact LBF's ability to contest

18   the Tschira claims in Switzerland, in Germany, in England,

19   wherever they're contesting them.

20              LBF believes that Tschira is actually a net debtor

21   to --

22              THE COURT:  Right.

23              MR. PEREZ:  -- the LBF estates.  They have a

24   lawsuit pending in England seeking recovery of the amounts

25   they claim are due.

Page 9

1              Similarly, in their co-location plan they -- which

2    is, in essence, like the plan of arrangement, they held that

3    they have no claim.  Tschira has objected to that and is

4    asserting claims totaling about 664 million Swiss francs.

5    So those are kind of parallel proceedings.  There's another

6    proceeding in Switzerland --

7              THE COURT:  Right.

8              MR. PEREZ:  -- in which they're saying we don't

9    owe anything.

10             So none of that is impacted by what we're --

11             THE COURT:  Right.

12             MR. PEREZ:  -- doing here.

13             THE COURT:  Right.

14             MR. PEREZ:  That goes forward.  So in the event

15   that --

16             THE COURT:  I'm looking at this through LBHI eyes

17   --

18             MR. PEREZ:  Exactly.

19             THE COURT:  -- correct?

20             MR. PEREZ:  Correct.  Absolutely, Your Honor.

21             So in the event that LBF wins and there's no

22   claim, the estate doesn't owe anything to Tschira.

23             In the event that Tschira wins, then we have this

24   tiered concept where if -- if they either win or settle

25   within the first six months, our exposure is capped at 150.

Page 10

1    If they either win or settle within six to 12 months, our

2    exposure is capped at 210 on the guarantee.  And if it's

3    after that amount, it's capped at 300.

4              So if they hit a home run, get a $664 million --

5    million Swiss franc claim, our exposure would be capped at

6    300.

7              We then -- so that's, in essence, what we get out

8    of this.  What do they get?

9              Number one, they get --

10             THE COURT:  Well, we get -- we, LBHI, we then get

11   the claims that LBF could assert against other Lehman

12   entities, right?  That's the --

13             MR. PEREZ:  Absolutely.

14             THE COURT:  -- $9.2 billion.  So we get that,

15   right?

16             MR. PEREZ:  Yes.  But that's under the LBF

17   settlement.  Correct.

18             THE COURT:  Right.

19             MR. PEREZ:  Right.

20             THE COURT:  But it unlocks that.

21             MR. PEREZ:  It unlocks that.  It unlocks the

22   assignment of those receivables to us.

23             THE COURT:  Right.

24             MR. PEREZ:  And it also unlocks $700 million of

25   current reserves --

Page 11

1                THE COURT:  Right.

2                MR. PEREZ:  -- that we have because LBF, just on

3       the LBHI claim, we have a $3 billion reserve.

4                THE COURT:  Right.

5                MR. PEREZ:  And then there -- they have reserves

6       on other claims --

7                THE COURT:  Okay.

8                MR. PEREZ:  -- as well that we would get.

9                THE COURT:  Okay.

10               MR. PEREZ:  So not only -- it's actually about 1.1

11      billion.  There's about 1.3 billion that they've recovered,

12      but pursuant to the LBF settlement agreement, because the

13      Hong Kong hasn't been done yet, there's -- they -- there's

14      an indemnity that has to be collateralized up to $125

15      million.  So it's 1.1 coming from them and then 700 coming

16      from us that we already have, but are holding on account of

17      reserves that have been established pursuant to court order.

18               THE COURT:  Okay.

19               MR. PEREZ:  All right.

20               And so, in essence, what are we giving up for

21      that?

22               Number one, we're reinstating their guarantee that

23      they gave up.

24               THE COURT:  Right.

25               MR. PEREZ:  Two, we are agreeing that if they get

Page 12

1    a claim we will, in essence, advance 12.5 million Swiss

2    francs not in -- as an additional amount, but initially to

3    cover their costs and expenses.  And then if ultimately they

4    end up not getting 100 cents on the dollar, we agree that

5    with respect to whatever the capped amount is, we would top

6    up that amount.

7            So, for instance, if the Swiss recovery is 60

8    cents, if the guarantee recovery --

9            THE COURT:  Right.

10           MR. PEREZ:  -- is 25 cents, so there would be an

11   additional 15 cents that we would have to top up, subject to

12   the caps.

13           And, in essence, you know, then we go through this

14   whole process, which is probably more than you want to know

15   of what's an authorized objection or not.  But if they

16   settle greater than the amount of the cap during the various

17   time periods, we can object.  And if we object and win, then

18   we're limited to the cap.  If we object and lose, then it's

19   whatever cap is applicable at that time.

20           And, in essence, that's the way that we did it.

21           Your Honor, we have a declaration from Daniel

22   Irmin (ph) who has been intimately involved.  He's probably

23   been --

24           THE COURT:  Okay.

25           MR. PEREZ:  -- to Switzerland, you know, ten or 15

Page 13

1    times negotiating both with LBF.  And so he's very much

2    involved.  And, as I said, that declaration coupled with the

3    motion, which I believe is probably more extensive than we

4    would --

5              THE COURT:  But very helpful, very helpful.

6              MR. PEREZ:  -- than we would normally do.

7              So with that, Your Honor, we think it's a

8    tremendous benefit to the estate.  And we believe that

9    unlocking that value is just key.  And we're hoping to do it

10   very quickly so that we don't --

11             THE COURT:  So the timing is such that if we enter

12   the order today, that's in time for the next distribution,

13   correct?

14             MR. PEREZ:  Yes, Your Honor.  The one variable and

15   -- which I need to alert the Court is that they're required

16   -- so if we enter the order today, the 19th is the last day

17   to appeal.  So the 20th is the effective date.  We will

18   notify them at 12:01 on the 29th --

19             THE COURT:  Right.

20             MR. PEREZ:  -- of the occurrence of the effective

21   date.  They have till 9:30 in the morning to notify the

22   Swiss Administrative Court about that.  And so the issue is

23   we think the Swiss Administrative Court will dispose of the

24   appeal at that point quickly, but --

25             THE COURT:  I see.

```
 1              MR. PEREZ:  -- we don't -- we can't tell you with

 2     --

 3              THE COURT:  Sure.  Sure.

 4              MR. PEREZ:  We just don't control the court.

 5              THE COURT:  Okay.

 6              MR. PEREZ:  So that's -- that's the only little

 7     wrinkle that we don't know exactly.

 8              THE COURT:  The -- in terms of the claims that

 9     LBHI is getting back from LBF or getting assigned by LBF,

10     the -- one of the things that was unclear to me is to what

11     extent that that -- the notional amount of those claims is

12     effected by everything else that happens or is that notional

13     $9.2 billion -- are those actually claims that we here are

14     going to have to resolve unless settled?

15              MR. PEREZ:  No.  Those claims have all been

16     settled.

17              THE COURT:  They have?

18              MR. PEREZ:  They have.

19              THE COURT:  Okay.

20              MR. PEREZ:  With the exception of Hong Kong.

21     That's why we have the indemnity claim.

22              THE COURT:  Okay.

23              MR. PEREZ:  Okay.  Those claims have all been

24     settled by LBF.  So, in essence -- so if you look at our

25     chart, Your Honor, we're, in essence, getting all of those
```

Page 15

1    claims back with the largest ones being the LBT which is the

2    Dutch -- the Netherlands company --

3              THE COURT:  Right.

4              MR. PEREZ:  -- and LBS, which is the Netherlands

5    Antilles company.  Those are the two largest claims of net

6    creditors to LBF --

7              THE COURT:  Okay.

8              MR. PEREZ:  -- that we will be getting back.

9              THE COURT:  Okay.

10             MR. PEREZ:  Hong Kong is the only one that's not

11   --

12             THE COURT:  All right.

13             MR. PEREZ:  -- resolved.  And there may be smaller

14   ones, but of the bigs ones those are --

15             THE COURT:  Okay.

16             MR. PEREZ:  -- those are basically it.

17             THE COURT:  All right.

18             There was also a statement of the ad hoc group

19   that was filed.  Is someone here from Milbank who wishes to

20   speak?

21             MR. STODOLA:  Yes, Your Honor.

22             Good afternoon, Eric Stodola from Milbank Tweed on

23   behalf of the ad hoc group of Lehman Brothers Creditors.

24             As an initial matter, my colleague, Mr. Yuzzi (ph)

25   wanted to apologize to you. He would have liked to have been

Page 16

1     here himself, but --

2             THE COURT:  I'm always happy to see Mr. Yuzzi, but

3     no apology is necessary.

4             MR. STODOLA:  He had a personal commitment that

5     was scheduled before the hearing and he just couldn't get

6     out --

7             THE COURT:  Okay.

8             MR. STODOLA:  -- of it.

9             Nevertheless, he wanted me to come here and rise

10    to briefly -- just for two reasons.  Notwithstanding that

11    the motion is uncontested, the first is, if Your Honor has

12    any questions for us on the pleading I'll do my best to

13    answer them.

14            THE COURT:  I don't.  Your pleading --

15            MR. STODOLA:  Okay.

16            THE COURT:  -- was -- I was happy to see it in two

17    respects:

18            One, it was helpful;

19            Two, it was brief.

20            MR. STODOLA:  Okay.  Well, that's the first issue.

21            And then, second, given that you just took over

22    the cases from Judge Peck we wanted to briefly introduce you

23    to the ad hoc group.

24            The plan was confirmed a little over two years ago

25    and we were a key participant in that plan process.  It's a

Page 17

1   little bit of an odd situation because typically an ad hoc

2   group will disband post-confirmation.

3              Here, I think you heard a few weeks ago from Mr.

4   Cantor that there are still significant assets --

5              THE COURT:  Right.

6              MR. STODOLA:  -- left to be disposed.  There are

7   still significant claims and other issues to be dealt with.

8   And so for that reason the ad hoc group continues to keep

9   monitoring the cases and, where necessary, be in contact

10  with the debtors.

11             On that point we would like to thank the debtors

12  and their professionals.  Whenever we've raised issues with

13  them or went to discuss something, they've always been quite

14  accommodating.  So we've very thankful for that.  We think

15  it's one of the reasons --

16             THE COURT:  Well, it seems that it's a process

17  that's been working and continues to work, so --

18             MR. STODOLA:  Right.

19             THE COURT:  -- that's terrific.

20             MR. STODOLA:  We think it's one of the reasons the

21  case has been so successful and hopefully will continue to

22  be.

23             There have been a very limited number of instances

24  where we felt the need to object to anything.

25             THE COURT:  Okay.

1            MR. STODOLA:  Here, we didn't do that.  We filed a

2    statement in support.  We filed this and others, I think, as

3    Your Honor noted just because we think it's helpful to the

4    Court to see that economic participants are watching and

5    supportive of what's going on.

6            And, you know, as to the merits of the motion I

7    don't want to take up the Court's time.  I think you just

8    heard Mr. Perez and, you know, you read the pleadings.

9            THE COURT:  I did.

10           MR. STODOLA:  We think that the debtors are doing

11    exactly what they should be doing here and we're very

12    supportive of that.  So --

13           THE COURT:  Terrific.  All right.  Thank you.  I

14    appreciate that.

15           Mr. Brilliant.

16           MR. BRILLIANT:  Yes, Your Honor.  And I'll be very

17    brief.

18           Good afternoon, Your Honor.  Allan --

19           THE COURT:  Good afternoon.

20           MR. BRILLIANT:  For the record Allan Brilliant on

21    behalf of the Tschira entities.

22           Your Honor, I just wanted to point out this was a

23    very arm's length, hard fought, lengthy negotiation that

24    ultimately --

25           THE COURT:  Well, I will tell you in all candor

Page 19

1    that when I got a series of briefings from Judge Peck as I

2    prepared to take on the case this was a case that was -- had

3    a star next to it as something that was going to be very

4    difficult and very challenging.

5              So when the news came that it was settled, that

6    was a good thing.

7              MR. BRILLIANT:  Yes.  And, you know, and all the

8    parties, as you can tell from, you know, the settlement

9    agreement it's a very highly negotiated, you know, document.

10   You know, from our perspective we didn't get everything that

11   we would have gotten and we believe that claims should have

12   been paid, you know, in full in Switzerland, you know, to

13   LBF creditors.  You know, the settlement that the debtors

14   and LBF agreed to didn't provide for that.

15             But with this settlement, although there's a risk

16   that we won't get, you know, ultimately paid in full on our

17   claim if our claim is allowed in Switzerland and even with,

18   you know, then new unsecured claim that's being reinstated

19   here --

20             THE COURT:  Right.

21             MR. BRILLIANT:  -- and the admin claim, we still

22   may not get paid in full, but, you know, this was something

23   that, you know, made sense to us and was good for all the --

24   you know, the parties in the case.  And so we're glad we

25   were able to reach an agreement.

Page 20

1           Your Honor, there are a couple of things that

2     weren't mentioned by Mr. Perez.  I just wanted to point out

3     to the Court that I'm sure in reading the pleadings Your

4     Honor noticed there -- there are mutual releases in the

5     agreement.  The releases that are being given by LBHI are

6     general releases for all the Tschira entities and the -- you

7     know, various affiliates and other parties.  The releases

8     that we're giving to them are limited releases just in

9     connection, you know, with certain issues that were the

10    subject of these particular claims.

11          As part of the settlement agreement, the debtors

12    have agreed to dismiss the adversary complaint that they had

13    filed against the Tschira entities.

14          And as Mr. Perez very accurately talked about, you

15    know, the caps which were defined as the settlement amount,

16    you know, if it ultimately turns out that we have a large,

17    you know, reinstated claim, as Mr. Perez pointed out, that

18    really isn't any additional dollars.  It's just the dollars

19    that are, you know, being advanced up front.

20          But if it turns out that we only have one dollar

21    of claims, we still get the $12.5 million minimum amount of

22    the settlement amount.  So it's not -- it's a sort of a

23    minimum that kind of goes with -- you know, goes --

24          THE COURT:  Right.

25          MR. BRILLIANT:  -- goes with the cap assuming that

Page 21

```
 1   we ultimately, you know, have at least one dollar of claims.

 2            In addition to that, Your Honor, there's a

 3   provision in the settlement agreement that the parties have

 4   agreed to, you know, stay with respect to the adversary

 5   until this goes effective to stay all of the -- you know,

 6   the deadlines and various other things that go into the --

 7   you know, the adversary.

 8            And then we have had a conversation with LBF.

 9   There's a disputed issue as to whether they have to provide

10   discovery to us in connection with the adversary, and we

11   have agreed, you know, that, you know, I guess they had a

12   date for filing, you know, a reply brief this week and we

13   told them that in light of the settlement that they should

14   hold off on that subject to seeing whether it goes

15   effective.

16            There are certain conditions to the agreement

17   going effective, you know, which, you know, in particular

18   that LBF, you know, not terminate their settlement agreement

19   prior to the effective date.  And our expectation in hope is

20   that --

21            THE COURT:  Fairly logical.

22            MR. BRILLIANT:  Yeah.  Right.  You know, but we --

23   you know, obviously, you know, the expectation of all the

24   parties is that, you know, especially given that there's no

25   objection and --
```

Page 22

1              THE COURT:  Right.

2              MR. BRILLIANT:  -- corporate notice went out, that

3    there won't be any appeals that -- you know, and if LBF

4    doesn't, you know, terminate it it will go effective, and --

5    assuming Your Honor approves it, of course --

6              THE COURT:  Right.

7              MR. BRILLIANT:  -- and the parties will get the

8    benefit of --

9              THE COURT:  And the timing, as Mr. Perez pointed

10   out.  The timing of the dismissal of the appeal doesn't

11   affect the settlement.  It just -- that simply would affect

12   the timing for the distribution that LBHI would make.

13             MR. BRILLIANT:  Right.  If LBF doesn't terminate

14   the agreement prior to the effective date we will give the

15   notice -- effective with the time changes --

16             THE COURT:  Right.

17             MR. BRILLIANT:  You know, it's 9:30 in Switzerland

18   which is seven hours ahead of where we are here.

19             THE COURT:  Got it.

20             MR. BRILLIANT:  So --

21             THE COURT:  Right.

22             MR. BRILLIANT:  -- effectively 2:30 in the

23   morning, you know, New York time we'll get that notice and

24   hopefully, you know, the Swiss entities will move quickly

25   and monies will come in quickly.  Obviously, that's

Page 23

1    dependent upon the Swiss courts and, to some extent --

2              THE COURT:  Right.

3              MR. BRILLIANT:  -- LBF.

4              THE COURT:  Okay.  All right.

5              Does anyone else wish to be heard with respect to

6    the proposed settlement?

7              MR. PEREZ:  Your Honor, just two things.

8              Number one, Mr. Tambe is here who represents LBHI

9    in connection with the adversary proceedings, so --

10             THE COURT:  Okay.

11             MR. PEREZ:  -- just in case the Court had any

12   questions and to the extent we -- we baked it into the

13   settlement agreement --

14             THE COURT:  Right.

15             MR. PEREZ:  -- it's a separate adversary.

16             And second, Your Honor, we do have -- we filed a

17   slightly revised form of order --

18             THE COURT:  Okay.

19             MR. PEREZ:  -- which did --

20             THE COURT:  Should I take a look at that?

21             MR. PEREZ:  -- three things.

22        (Pause)

23             MR. PEREZ:  The first was we just -- and there's a

24   clean and then there's a redline which has in the back which

25   is in color.

```
1              THE COURT:  Okay.  I'm there.

2              MR. PEREZ:  So on the second page those are just

3    the things that have happened subsequent:  The show cause

4    order, the affidavit of service, the inclusion of Mr.

5    Irmin's affidavit as well as who we served, et cetera, and

6    the certificate of service.

7              But then on the last page Epiq is becoming very

8    precise in what they will do with the claims register.

9              THE COURT:  Okay.

10             MR. PEREZ:  So we have to have a basis to tell

11   them, you know, we've resolved this.  Please reflect this as

12   being modified, paid, et cetera, et cetera.

13             THE COURT:  Just not -- which is not atypical,

14   right?

15             MR. PEREZ:  Which is not atypical.  Usually, the

16   debtor has a little bit more flexibility than -- in most --

17             THE COURT:  So now they want specific decrial

18   language directing them to do --

19             MR. PEREZ:  Exactly.

20             THE COURT:  -- thus and such with the claims

21   register.

22             MR. PEREZ:  Exactly.  And so --

23             THE COURT:  Okay.

24             MR. PEREZ:  -- this is just both in connection

25   with the -- with this settlement and then to the extent that
```

Page 25

1    the -- you know, once the LBF settlement goes effective,

2    it's with respect to the LBF settlement.  And it's

3    permissive language that would allow us to do that in the

4    event that -- you know, that the conditions occur that would

5    happen.

6              THE COURT:  So these last two decrial paragraphs

7    that are in the blackline, what's the -- the first one says

8    that to the extent that he effective date occurs --

9              MR. PEREZ:  Right.

10             THE COURT:  -- the claims agent is directed to

11   update.

12             MR. PEREZ:  Right.  So right now --

13             THE COURT:  What's the difference between that and

14   the second one, which seems to be more precise, right?  The

15   first one seems to allow for -- puts them burden on them to

16   determine that it's occurred as opposed to the second one

17   that says that the plan administrator notifies them.

18             MR. PEREZ:  Right.  And the reason is the first

19   one, we would have to instruct them because we don't know

20   how much the amount is and we don't know whether, in fact,

21   there will be one.  But we want to have -- this is with

22   respect to -- let's assume that they settle for 150 Swiss

23   francs.

24             THE COURT:  Right.

25             MR. PEREZ:  Then we would have to tell them how

Page 26

1    much to reinstate the guarantee claim for us at that time.

2    So that's why this one is more permissive.

3             The ones -- the one -- the --

4             THE COURT:  But I guess what I'm saying is that

5    the -- in the second -- to the point that they want specific

6    instruction, what I'm focusing is on there is no parallel

7    language that says, to the extent that the effective date

8    occurs with respect to the settlement agreement, the claims

9    agent, upon notice from the plan administrator, is directed

10   to update.

11            In other words, it just says that they're directed

12   to update it in accordance with the settlement agreement.

13   The --

14            MR. PEREZ:  Correct.  And, Your Honor, just -- let

15   me just --

16            THE COURT:  Go ahead.

17            MR. PEREZ:  There's a reason for the madness,

18   okay?

19            THE COURT:  Okay.

20            MR. PEREZ:  Number two, these are the three claims

21   that are held by the -- by LBF.  This --

22            THE COURT:  Right.

23            MR. PEREZ:  That are getting assigned to us.

24            THE COURT:  Okay.

25            MR. PEREZ:  So once they -- once it goes

Page 27

1    effective, we know what they are.  They're getting assigned

2    to us.  The first one we don't know -- we can't tell them

3    today what the amount of the claim is.  The amount of the

4    claim could be zero or the amount of the claim could be 150

5    or something less or 210 or something less or 300 or

6    something less.  And we won't really know that until the

7    matter is resolved in Switzerland.

8              THE COURT:  I -- I understand that.  I guess what

9    I'm trying to say is that is the second paragraph intended

10   to provide more detail than the first paragraph or is -- are

11   these two different things?

12             MR. PEREZ:  Two different things completely.  The

13   first paragraph only deals with the claims by Tschira.

14             THE COURT:  Right.

15             MR. PEREZ:  The second paragraph deals with the

16   claims that LBF has asserted against the various entities

17   that are --

18             THE COURT:  So --

19             MR. PEREZ:  -- that will go -- that will be

20   assigned.

21             THE COURT:  Right.  Okay.  I -- so I understand --

22   I understand that --

23             MR. PEREZ:  Okay.

24             THE COURT:  -- I believe.  But I still -- I'm

25   stuck on the fact that when you start with the premise that

Page 28

1    Epiq wants specific direction, the first decrial paragraph

2    does not do that.  It does not have any notice being

3    provided to Epiq.  It's -- in other words, if you're Epiq,

4    then you simply have to satisfy yourself that the effective

5    date -- and that's upper case effective date because it's

6    referring to the settlement agreement as opposed to the LBF

7    settlement, right?

8              MR. PEREZ:  Right.

9              THE COURT:  Okay.  So to -- it's two different

10   things, but it would seem to me that the plan administrator

11   would still need to notify Epiq of the occurrence of the

12   effective date and that, therefore, Epiq would then be

13   directed to modify the claims register accordingly.

14             MR. PEREZ:  Your Honor, that's easily solved by

15   just putting --

16             THE COURT:  Right.

17             MR. PEREZ:  -- upon notice from the plan

18   administrator.

19             THE COURT:  Yeah.  I mean, I don't -- I'm not

20   working for Epiq here.

21             MR. PEREZ:  Yeah.

22             THE COURT:  But there's a lack of --

23             MR. PEREZ:  Absolutely.

24             THE COURT:  -- parallelism in --

25             MR. PEREZ:  Absolutely.

Page 29

```
1              MR. BRILLIANT:  Your Honor --

2              THE COURT:  Does anyone else know what I'm talking

3   about?

4              MR. BRILLIANT:  And I -- I understand exactly what

5   you were saying, Your Honor.  The -- you know, the way the

6   settlement agreement works -- and I understand this -- we're

7   talking about a different issue, not how it works.

8              THE COURT:  Right.

9              MR. BRILLIANT:  But getting Epiq to do this is

10  that it's automatic, you know, without further order of the

11  Court.  You know, the claims are automatically, you know,

12  allowed.

13             THE COURT:  I understand -- right.

14             MR. BRILLIANT:  So --

15             THE COURT:  I understand that.  But --

16             MR. BRILLIANT:  So --

17             THE COURT:  -- there's -- there still is a

18  document that Epiq has that has to be changed.

19             MR. BRILLIANT:  Correct, Your Honor.

20             So what we would -- if it's okay with --

21             THE COURT:  Sure.

22             MR. BRILLIANT:  -- Your Honor now, this is

23  actually pretty simple here because when we get it, we're

24  going to get a certification from the -- from the plan

25  administrator of the fact that the effective date has
```

Page 30

1    occurred.  Given this two hour time difference we need

2    something to certify that so that we can go ahead and do

3    what we need to do in Switzerland, but overnight here.

4              So if we can, I think --

5              THE COURT:  Now when you say -- I don't want to

6    make this more complicated.  When you say effective date do

7    you mean effective date of the LBF settlement?

8              MR. BRILLIANT:  No.  We're talking-- we're not

9    talking about effective --

10             THE COURT:  Effective date of this --

11             MR. BRILLIANT:  It's of the Tschira LBHI

12   settlement, Your Honor.

13             THE COURT:  This settlement.  Right.

14             MR. BRILLIANT:  Right.

15             THE COURT:  Okay.

16             MR. BRILLIANT:  So what I would propose is that

17   that the plan administrator -- that the order just say that

18   the plan administrator will send them a copy of the --

19             THE COURT:  That's --

20             MR. BRILLIANT:  -- new list --

21             THE COURT:  That's all I'm trying to do.

22             MR. BRILLIANT:  -- and then -- okay.  And so --

23             THE COURT:  Okay.

24             MR. BRILLIANT:  Right.

25             THE COURT:  All right.

Page 31

1              MR. BRILLIANT:  And then that's how they'll know.

2     So rather than change this language, you know, just say, you

3     know, just give them another thing that says that LBHI, you

4     know, will send -- will timely send notice of the, you know,

5     effective date, you know, to --

6              THE COURT:  That's fine.

7              MR. PEREZ:  Okay.

8              THE COURT:  That's fine.

9              MR. PEREZ:  We can do that.  And I have a stick,

10    so if we can --

11             THE COURT:  Yes.

12             MR. PEREZ:  Could we just pencil it in and then --

13             THE COURT:  That's fine.  Okay.

14             All right.  Anything else?

15             MR. PEREZ:  Not for us.  Not for us, Your Honor.

16             THE COURT:  All right.  Well, based on the

17    presentation and the papers and the clarifications and the

18    statements that were made in the court today it's clear that

19    the settlement satisfies the standards for a Rule 9019

20    settlement and I think I agree with the statement in the

21    papers filed by LBHI that it is actually beyond per

22    adventure (sic) that the settlement agreement is in the best

23    interest of LBHI and its creditors.

24             So we'll stand by to get the amended order and

25    we'll enter it as soon as we can take a look at it and

Page 32

1   certainly by 5:00 today.

2           MR. PEREZ:  Thank you, Your Honor.

3           THE COURT:  All right.  Thank you.  Thank you all

4   for coming in.

5           MR. BRILLIANT:  Thank you,  Your Honor.

6           THE COURT:  Is anyone here -- let me ask, is

7   anyone here for the 3:00 matters?  I know that there was a

8   little bit of confusion about whether or not those matters

9   are going forward at 2:00 or 3:00?

10          MR. ROSSMAN:  Yes, Your Honor.  On behalf of

11  (indiscernible).

12          THE COURT:  Okay.  It looks like not everyone is

13  here, though, and I apologize for that.  The discovery

14  matters had been scheduled for 3:00, but I think there was a

15  -- something lost in the translation when it migrated onto

16  the public calendar and came onto the public calendar as

17  2:00.

18          So we'll be back in 28 minutes.  You can go get a

19  cup of coffee if you would like.

20          All right.  Thank you.

21      (Recess at 2:32 p.m.; resumed at 3:02 p.m.)

22          THE COURT:  Good afternoon.

23          Wow, we have quite a crowd.

24          Why don't you folks move -- move up a little bit

25  and let's try to figure out what makes the most sense in

Page 33

1    terms of how we should handle this.

2              We have a court reporter.  I'm going to just

3    address the group collectively, but you can each -- each

4    group of you can give different answers to the questions.

5              So the way that I'm thinking about it, there is a

6    unique -- there is one set of unique issues, I think, that

7    relates to Citi and KMPG.  That's in one category.  And then

8    in the other category, I think, are the issues that have

9    been raised by, I'll call the third party providers.

10             So I think it would make some sense for me to deal

11   with the Citibank KPMG issue first and then deal with the

12   third party providers second.

13             Who's -- who is here from Quinn Emanuel?

14             MR. ROSSMAN:  That's fine.  I am, Your Honor.

15   Andrew Rossman from Quinn Emanuel.

16             THE COURT:  Okay, Mr. Rossman.  Is that -- does

17   that make sense to you?

18             MR. ROSSMAN:  Absolutely.

19             THE COURT:  You're -- since you get to play in

20   every --

21             MR. ROSSMAN:  I was going to suggest either --

22             THE COURT:  -- every hand.

23             MR. ROSSMAN:  -- either order you like.

24             THE COURT:  Okay.

25             MR. ROSSMAN:  But that that is the -- the KPMG

Page 34

1    Citi issue is discreet from the others.

2              THE COURT:  Right.  Okay.  And customarily I

3    conduct this type of conference off the record.  It's in the

4    nature of a chambers conference because it's a discovery

5    conference.

6              Now that being said I have a reporter.  If this is

7    the type of conference where we believe that no sooner do we

8    leave that everybody can't agree on what they agreed on,

9    then I'll have the recorder -- the reporter make a record.

10             If not, I'll cut the record and we can just do

11   this the way I would ordinarily do it.  But I'm happy to

12   hear from you as to what you would prefer.

13             MR. ROSSMAN:  Your Honor, I'm pleased to defer to

14   you on that.  I hope we don't need a record.  I --

15             THE COURT:  I don't think we need a record.  I

16   mean, this is the first time we're all getting together.  In

17   the event that we have to come back on this, which I

18   certainly hope not, then we can go to record.

19             So I'm going to excuse the court reporter.  I'm

20   sorry.  Is there a dissenting view?

21             UNIDENTIFIED SPEAKER:  No, not at all, just a -- a

22   procedural matter.  I don't know if you needed it -- we're

23   going to do it informally -- but we filed a pro hac vice for

24   my colleague.  So --

25             THE COURT:  That's okay.  Happy to have him.

Page 35

1              UNIDENTIFIED SPEAKER:  Okay.

2              THE COURT:  But thank you for bringing that to my

3    attention.

4              All right.  So we're going to go -- this will be

5    off the record.

6         (Whereupon, these proceedings concluded at 3:04 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      I N D E X

 2

 3                        RULINGS

 4    DESCRIPTION                          PAGE     LINE

 5    DOC # 43309 Motion of Lehman Brothers

 6    Holdings, Inc. Pursuant to Bankruptcy

 7    Rule 9019 for Approval of Settlement

 8    Agreement Resolving Claim of Dr. H.C.

 9    Tschira Beteiligungs GmbH & Co KG and

10    Klaus Tschira Stiftung gGmbH          31       16

11

12    Doc #43315 Order to Show Cause to Consider

13    Motion of Lehman Brothers Holdings, Inc.

14    Pursuant to Bankruptcy Rule 9019 for

15    Approval of Settlement Agreement Resolving

16    Claim of Dr. H.C. Tschira Beteiligungs

17    GmbH & Co. KG and Klaus Tschira Stiftung

18    gGmbH signed on 2/26/2014              31       16

19

20

21

22

23

24

25
```

Page 37

1                    C E R T I F I C A T I O N

2

3     I, Sherri L. Breach, CERT*D-397, certified that the

4     foregoing transcript is a true and accurate record of the

5     proceedings.

6
      Sherri L          Digitally signed by Sherri L
                         Breach
7     Breach             DN: cn=Sherri L Breach, o, ou,
                         email=digital1@veritext.com,
                         c=US
8                        Date: 2014.03.06 14:15:24 -05'00'

9     SHERRI L. BREACH

10    AAERT Certified Electronic Reporter & Transcriber

11    CERT*D-397

12

13    Veritext

14    330 Old Country Road

15    Suite 300

16    Mineola, New York 11501

17

18    Date: March 6, 2014

19

20

21

22

23

24

25