1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    CASE NO. 08-13555-scc

4    - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS, INC.,

8    ET AL,

9

10                    Debtors.

11    - - - - - - - - - - - - - - - - - x

12

13                         U.S. Bankruptcy Court

14                         One Bowling Green

15                         New York, New York

16

17                         March 6, 2014

18                         11:42 AM

19

20    B E F O R E :

21    HON. SHELLY C. CHAPMAN

22    U.S. BANKRUPTCY JUDGE

23

24

25

1   HEARING Re Doc # 42959 Motion to Establish Single Reserve

2   for Duplicative Claims

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sheila Orms

Page 3

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorneys for LBHI

4         767 Fifth Avenue

5         New York, NY 10153-0119

6

7    BY:  GARRETT A. FAIL, ESQ.

8

9    DECHERT LLP

10        Attorneys for Stonehill

11        1095 Avenue of the Americas

12        New York, NY  10036

13

14   BY:  ALLAN BRILLIANT, ESQ.

15        SHMUEL VASSER, ESQ.

16

17   TELEPHONIC APPEARANCES:

18   RAJ LYER, CANYON PARTNERS

19   JASON B. SANJANA, REORG RESEARCH

20   GEORGE C. WEBSTER, II, STUTMAN, TREISTER & GLATT

21

22

23

24

25

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  Okay.  Why don't you folks come on up.

3          (Pause)

4              THE COURT:  All right.  We should have on the line

5      Mr. Iyer from Canyon Partners, Mr. Sanjana from

6      Reorganization Research, and Mr. Webster from the Stutman

7      firm.  I really apologize for keeping you folks waiting,

8      there's just a lot going on down here today.

9              I read all the papers and it seems to me that

10     we're down to, I'll call it a bid and an ask.  It seems

11     clear that the estates ought not to be reserving $895

12     million for these claims.  That much seems clear.  Okay.

13             It seems that the outer limit of the number, as

14     far as Stonehill is concerned is the $44 million plus the

15     amount that they allege is comprised by their yet to be

16     filed amended proof of claim.

17             MR. BRILLIANT:  It's a little bit more complicated

18     than that, Your Honor.

19             THE COURT:  Okay.  Let me get --

20             MR. BRILLIANT:  We believe our claim --

21             THE COURT:  Let me get a little bit of --

22             MR. BRILLIANT:  We believe our claim encompasses

23     the additional amounts.  Our claim says no less than 23

24     million, no less than 20 million.

25             THE COURT:  Got it.  So it's not all in the

Page 5

1    amended, it's --

2         MR. BRILLIANT:  Correct, Your Honor.

3         THE COURT:  Okay.  But in any event, I was right

4    insofar as it's definitely not 895, right?

5         MR. BRILLIANT:  Correct, Your Honor.

6         THE COURT:  And you say it's 198.

7         MR. BRILLIANT:  Yes, Your Honor.

8         THE COURT:  Okay.  And the estate says it's 44,

9    right?  That's basically --

10        MR. FAIL:  That's correct, Your Honor.

11        THE COURT:  Those are kind of the numbers.  All

12   right.

13        MR. FAIL:  And I would also just add that the 198

14   number is a little bit higher because it includes claims of

15   Stonehill that were excluded from this motion, so it's

16   really 161 versus 44, roughly.

17        THE COURT:  Okay.  I don't know --

18        MR. FAIL:  43, 160, 162, but it isn't 198.

19        THE COURT:  Okay.  So can -- before we move

20   forward, though, can we agree that there is no objection,

21   and let me take the higher number just to make it easier,

22   there's no objection to releasing whatever the difference is

23   between 895 and 198?

24        MR. FAIL:  Correct, Your Honor.  I mean, we had

25   proposed that.  We don't believe that they can do it

Page 6

1   unilaterally or that Your Honor has the jurisdiction or the

2   authority under the plan to require it, but we would consent

3   to that --

4           THE COURT:  Okay.

5           MR. FAIL:  -- as we said in our papers.

6           THE COURT:  So that much we're going to do.  So

7   now let's go to the 198, and talk about what we should do

8   about that.  And it seems to me that to the extent that

9   amounts are being asserted that, Mr. Brilliant, you're

10  saying are kind of baked into the proof of claim, although

11  not explicitly laid out, that we need to have a process for

12  those being asserted in a more complete way, and then if the

13  estate wants to object to them, and I'm making this up, as

14  late filed claims or object to them on the merits, object to

15  them as improper amendments, whatever is the estate wants to

16  say, the estate ought to be able to say, and in essence, we

17  ought to do in a -- in that kind of a process, dealing with

18  the difference between the 44 and the 198, rather than kind

19  of shoehorning it into a motion about a reserve.

20          That's my initial reaction to the process because

21  I don't have enough here to actually know what the right

22  answer is on what the right amount is.  I mean, I read what

23  you -- I've read what you've said, but I don't have enough

24  to know whether or not you're properly asserting those

25  amounts, whether they are going to hold up as a claim.

Page 7

1          If the proof of claim -- if the piece of paper had

2     198 on it, that would be easy, but it doesn't, right.  So on

3     that basis, and perhaps I should've just called you up and

4     told you this and saved you the hour and a half coming down

5     here, but it seems to me the estate gets a lot of what it

6     wants, because you're going to free up 600 odd million from

7     the reserve.  And then we should just have some kind of a

8     process to deal with, you know, what the -- I won't say

9     allowability.  I mean, we could go right to allowability, or

10    we could two-step it and go to something that will provide a

11    record and a basis for me to reduce the reserve.  But no one

12    knows really what they're shooting at yet.

13          MR. BRILLIANT:  Yes, Your Honor, on behalf of the

14    Stonehill entities, we -- that is very acceptable to us.  We

15    think that's appropriate, and you know, we would be

16    agreeable to that.  And, you know, our sense is that, you

17    know, ultimately, you know, here whether you want -- you

18    know, they want to do this as an estimation or they want to

19    do as a claims allowance process, the reality is we need to

20    have, you know, a mini trial, you know, or some kind of, you

21    know, discovery and a hearing so Your Honor could determine

22    what the ultimate amount of the claim is.

23          But at the -- you know, the $200 million amount,

24    we feel we are, you know, adequately, you know, protected,

25    because that's the most of all our claims.

Page 8

1           The other thing, Your Honor, you know, I think

2    since we are, you know, in agreement of your proposal, maybe

3    I ought to just be quiet, but -- you know, but the other

4    thing is --

5           THE COURT:  Well, they're not, so it's okay.

6           MR. BRILLIANT:  Yeah, yeah, okay.  Yeah, the other

7    thing that, you know, I think that they miss here, is even

8    if they're right, and if you look at the claim itself, Your

9    Honor, it says no less than, you know, 23 million, no less

10   than 20 million.

11          So, you know, our sense is that -- and if you look

12   at paragraphs 16 and 18, 16 which allows us to amend and

13   then 18 which says it's all the things that are listed here

14   plus all consequential and other direct and indirect --

15          THE COURT:  I --

16          MR. BRILLIANT:  -- evidence.  So we believe it's

17   already baked in here.  But even if it's not, and Your Honor

18   said, all you can do is assert $40 million, $43 million

19   against each entity, we believe we could stack our claim, so

20   we could get a $43 million, you know, claim against one

21   entity for one of our, you know, claims.  A $43 million

22   against another, and given that there are 20 entities, we

23   would still be able to, you know, ultimately recover the

24   full 197.

25          So our sense is that -- you know, the way to go

1    here, you know, is to have a claims allowance, you know,

2    process.  And then all that this is, is an end around, you

3    know, our rights.

4            THE COURT:  Well, I think that -- let me hear from

5    the Weil folks.

6            MR. FAIL:  Good morning, Your Honor.

7            THE COURT:  Good morning.

8            MR. FAIL:  For the record, Garrett Fail from Weil

9    Gotshal for Lehman Brothers Holdings, Inc. as the plan

10   administrator.  Thank you for accommodating the schedule

11   today which is the second anniversary of the effective date

12   of the Lehman plan.

13           THE COURT:  Congratulations.

14           MR. FAIL:  Thank you, Your Honor.  I do think

15   congratulations are in order.  As Mr. Cantor noted last

16   week, or two weeks ago, the plan administrator has

17   distributed over $60 billion to holders of more than 26,150

18   allowed claims.

19           The plan administrator is working hard to resolve

20   the remaining 3,900 disputed claims, of which Stonehills are

21   40.

22           But as Mr. Cantor also noted, the approximately

23   $12 billion in cash that's being retained for the disputed

24   claims is one of the estate's largest assets.  And as we are

25   preparing for the fifth distribution, we filed this motion

1    and we're here today in that context to free up more than

2    the delta between the 200 and the 300 that's currently being

3    reserved, including more that would be reserved after.

4              THE COURT:  Can I ask you to hold on for one

5    second?

6              MR. FAIL:  Of course, Your Honor.

7        (Pause)

8              THE COURT:  I'm sorry, go ahead.

9              MR. FAIL:  Not at all, Your Honor.

10             I might have missed the jump, Your Honor, between

11   the fact that the proofs of claim do not assert $44 million,

12   and if Mr. Brilliant is right, if it's included in words to

13   be amended, you know, to be amended later, or included in an

14   unliquidated amount, the liquidation about $43.75 million

15   would be an amendment, and that amendment requires a motion

16   and Court approval.

17             THE COURT:  I'm sorry, say that again.  If you

18   file a proof of claim, and you say, well, it says not less

19   than $23 million, right, and you describe in words your

20   claim, then the liquidation of the amount is an amendment,

21   is that --

22             MR. FAIL:  To accomplish what Stonehill is asking

23   for in -- for the affirmative relief that they're asking for

24   in their reply would require an amendment, because the plan

25   is really clear that you've reserved based on the filed

1   amounts.  Stonehill received ballots in 2011 with the filed

2   amounts per the disclosure statement order, they voted

3   claims in the amounts of $43 million.

4          So even if they're right that they believe that in

5   words it was at a different amount, conversations under 408

6   don't require the plan administrator to increase the

7   reserves.

8          THE COURT:  Okay.  So if -- so -- and you have to

9   help me here, because I'm still coming up to speed.  If the

10  -- if Stonehill were -- if Mr. Brilliant were to leave the

11  courthouse and go back to his office and file an amended

12  complaint that had, in the aggregate, $198 million number in

13  it, what would the plan administrator be obligated to do in

14  that instance?  Or has -- is the plan administrator's --

15          MR. FAIL:  The plan administrator --

16          THE COURT:  -- view the ship already sailed on the

17  reserve?

18          MR. FAIL:  Ultimately we believe yes, but the plan

19  is -- the confirmation order is clear that if Stonehill were

20  to file the amended claim, Epiq would send a notice saying

21  the paragraph blank of the confirmation order prohibits the

22  filing of claims without Court approval.  And the claims

23  agent would not record it on the claims registry.

24          THE COURT:  I see.

25          MR. FAIL:  Absent an order of the Court.

 1            THE COURT:  So the confirmation order precludes

 2     the amendment of a claim without the permission of the

 3     Court?

 4            MR. FAIL:  Plainly, clearly, unambiguously.

 5            THE COURT:  I see.  Okay.

 6            MR. FAIL:  And that's why Your Honor approved --

 7     we sought permission for the IRS to amend its claim down

 8     from $2.1 billion to $800 million, something that you would

 9     think -- and it turned out to be totally uncontested,

10     freeing up 1. something billion dollars in reserves.  But

11     because we needed to amend the claim down, rather than doing

12     -- the IRS didn't want to do a partial withdrawal --

13            THE COURT:  Okay.

14            MR. FAIL:  -- the change in the term would have

15     required -- did require us to seek Court approval, and we

16     did it on a stipulation, and the Court approved it.

17            So amendment of claims up or down require Court

18     approval.  Withdrawals of claims do not.

19            THE COURT:  So claims where, as is a common

20     practice, where you say, you know, $10,000 plus unliquidated

21     amounts.

22            MR. FAIL:  The claims registry is recorded as

23     whatever the number that you -- the face amount that you

24     just said, and no additional amounts are -- we're not

25     reserving for the unliquidated amounts.  It would be

Page 13

1   impossible to do so.

2              When the plan was confirmed in December of 2011 --

3              THE COURT:  But that's for reserve it purposes --

4              MR. FAIL:  -- it became effective in 20 --

5              THE COURT:  -- not allowance?

6              MR. FAIL:  Not for allowance.  It -- claims are

7   either allowed or disallowed in the ordinary fashion, and

8   we've been able to resolve and allow 26,000 out of the

9   69,000, there's only 3,900 left, and we're working our way

10  through them.  But the plan is clear about how to reserve

11  and on what basis, and there is no basis to allow a disputed

12  creditor to require the debtor to reserve distributions,

13  both that would go into disputed claims reserve, and to

14  allow creditors.

15             THE COURT:  Well, and Mr. Brilliant is giving --

16  is arguing in the alternative that he could aggregate

17  claims, stack them, and get to his 190, so --

18             MR. FAIL:  So the case -- yeah, the case law on

19  that is -- we believe is clear and in the plan

20  administrator's favor, that if you have a -- if the single

21  recovery rule remains in place, if they have a claim for $40

22  million against one party, and the same 40 million against

23  the other, to the extent they recover 40 million from one or

24  the other, it -- the judgment is reduced.

25             The only way they can -- that Mr. Brilliant's

Page 14

1  theory works is if you can have a claim in excess of $40

2  million, or for a separate -- for separate harm.  And that's

3  not possible here because the claims are identical and they

4  allege the same harms.

5          Moreover, you know, this isn't an evidentiary

6  hearing where we have to consider whether or not the claim

7  asserts it.  That's for whether or not they can amend the

8  claim or to either liquidate what's already in it, or add

9  new claims.

10          Based on the information we've seen, we think it's

11  going to be new claims and it has to be.  But we'll find

12  that out at another point.

13          THE COURT:  But new claims which you say are

14  not --

15          MR. FAIL:  For another day.  And another day, that

16  may come before the Court if they file a motion, and if they

17  file an amended, try to file an amended proof of claim.

18  They haven't, and it's been over five years, and it's been

19  over two years since the effective date, and it's been

20  however many months since they filed their claim which is a

21  year after the beginning of the cases.

22          And so if Stonehill believed that they were owed

23  $200 million, there was plenty of opportunity to do so.

24  They haven't filed the claim yet, we didn't know if they

25  were going to oppose this motion.  They did, but they didn't

Page 15

1    file a motion to liquidate or amend the claim.

2          So based on the plain language on what's before

3    the Court today, the reserve must be maintained at $43.75

4    million.  And if Mr. Brilliant is allowed to amend his

5    claims at whatever amount they are, the reserves may or may

6    not be increased or decreased accordingly.

7          But Mr. Brilliant's claims are one of 3,900.

8    There are 500 fully unliquidated claims in the cases.

9    There's nothing different about these claims than any other.

10         The motion today is simply to say, we will reserve

11   the full face amount of this claim once, not up to 40 times.

12   So there are three debtors that are fully -- have paid 100

13   cents, that's $132 million.

14         THE COURT:  All right.  Well, Mr. Brilliant, you

15   conceded at the top that 895 was not the right number.  So I

16   don't really understand your stacking argument.

17         MR. BRILLIANT:  Okay.  Yeah, all right, Your

18   Honor, the first thing before I answer that, I just want to

19   -- because I think, you know, a little confusion here as to

20   what we're here about.

21         When Your Honor came out and gave your thoughts, I

22   think you got it, and I think again, counsel is, you know,

23   kind of confusing things.

24         We are happy with the reserves today.  We filed

25   proofs of claim, you know, they say not less than a certain

1    dollar amount, and we have -- you know, and they're only

2    required to and believe reserved on the basis of the face

3    amount and they've done it 20 times because we've asserted

4    claims against 20 different entities.

5              Now, it is right that --

6              THE COURT:  But they're duplicative.

7              MR. BRILLIANT:  Well, they -- no, that's the --

8              THE COURT:  You're only -- if they were to --

9              MR. BRILLIANT:  Your Honor --

10             THE COURT:  -- you're right, you know, we give up,

11   you're entitled to this claim --

12             MR. BRILLIANT:  Uh-huh.

13             THE COURT:  -- you don't get it 20 times.  You

14   don't get the recovery --

15             MR. BRILLIANT:  No, no.

16             THE COURT:  -- 20 times.

17             MR. BRILLIANT:  But, Your Honor, that's the point.

18   Duplicative, you know, is a very loaded word.  The claims

19   are facially similar, in that they assert a whole gamut of

20   claims and they do it against all of the entities.

21             THE COURT:  Right.

22             MR. BRILLIANT:  That is correct.  But it -- but we

23   believe that when the claim is ultimately liquidated, that

24   it'll be determined that we have a $197 million claim.

25             Now, we also believe, and Your Honor, it may make

1    some sense to just look at the claim, I'm sure Your Honor

2    looked at it but --

3              THE COURT:   Uh-huh.

4              MR. BRILLIANT:   -- we only attached one of the

5    claims, it's Exhibit A to our objection.

6              THE COURT:   Right.

7              MR. BRILLIANT:   You know, there are 20 of them

8    that are similar, you know, to this one against the

9    different debtors, and then there are, you know, 20 claims

10   for a little over $20 million, not less than a little over

11   $20 million also, you know, asserted by the other Stonehill

12   entity.

13             If you look at the amount of the claim, it says,

14   "not less than 23,460,716," and then if Your Honor turns to

15   paragraph -- let's start with 18, which is in the

16   reservation of rights, which is on page 7 --

17             THE COURT:   Right.

18             MR. BRILLIANT:   -- it said, "to the extent not set

19   forth in this claim, claimant also makes claim for all

20   direct, indirect, nominal, or consequential damages,

21   interest costs, attorney's fees, and other amounts owed or

22   owing to the extent recoverable under the applicable

23   agreement or applicable law, whether or not liquidated,

24   unliquidated," et cetera, et cetera.

25             And, Your Honor, the -- and then it also says that

Page 18

1    it's -- you know, this is all directly or indirectly related

2    to the matters discussed in the claim.

3            As we set forth in our objection, that additional

4    amount is that when we ultimately receive the distributions

5    back from LBI and the SIPA claim, they were a different

6    value.  So in other words, you know --

7            THE COURT:  I understand.

8            MR. BRILLIANT:  Okay.  So we -- that's a -- you

9    know, that's consequential damages that we have, you know,

10   from harm that we received that we believe that we can

11   assert against these debtor entities.  So we believe that we

12   have raised this claim.

13           Now, it's not that we have in here, their

14   argument, when you really boil it down to this, right, the

15   plan says that the face amount of the claims will be

16   reserved for each debtor.  They say, okay, but you can't

17   ever receive more than payment in full, therefore, the total

18   -- there should be one reserve for -- you know, for all the

19   -- we have a dispute as to whether the plan allows them, you

20   know, to come to this Court and do that.

21           But without getting to that right now --

22           THE COURT:  Uh-huh.

23           MR. BRILLIANT:  -- the point is, Your Honor, that

24   their statement, their fundamental belief here is that it's

25   the payment and more than in full that makes this unfair,

Page 19

1    that their -- that the multiple debtors, you know, provide

2    individual reserves.

3           But if Your Honor were to liquidate the claim and

4    find that a claim was 200 million but you, you know, somehow

5    not less than 43 million, means that it can't be more than

6    43, you cap it.  It's not that we're paid in full.  And also

7    the claims are divisible here.  There's the claim for this

8    security, it diminished in value by $20 million.

9           THE COURT:  I'm --

10          MR. BRILLIANT:  This security diminished by 50

11   million.

12          THE COURT:  Right.  I'm following you, but --

13          MR. BRILLIANT:  So --

14          THE COURT:  -- I come back to the point that the

15   way the -- what the plan administrator is not saying is that

16   the ship sailed on your ability to prove up and seek

17   allowance of the 198.  That's not what they're saying.

18          MR. BRILLIANT:  That's right.

19          THE COURT:  They're -- right.  So that it's not a

20   question of amending the proof of claim.  You get to prove

21   that, you get to prove that up or not, as allowance.

22          What the plan administrator is saying is that's

23   allowance, this is reserves.

24          MR. BRILLIANT:  Correct, Your Honor.

25          THE COURT:  The way the reserves worked was, you

Page 20

```
 1   had to pick a number, this is the number that you picked,

 2   everybody had to pick a number, this is your number.

 3             MR. BRILLIANT:  Okay.  But, Your Honor, we picked

 4   a number against each debtor.  This is the thing, they're

 5   saying like we're trying to raise what we're entitled to --

 6             THE COURT:  Right.

 7             MR. BRILLIANT:  -- we are not.  We're entitled to

 8   a $43 million reserve in each debtor, and that comes to 800,

 9   we're prepared to agree to something less than that because

10   we recognize that that's -- it's not beneficial to anyone to

11   do that.  But what we are entitled under the plan to have 43

12   million in reserve for each entity that we have a claim

13   against.  And that's what we have -- we have currently.

14             There is nothing in the plan that allows them to

15   say, yeah, you have unliquidated amounts, but we're going to

16   provide one reserve that caps all your claims, you know, at

17   the liquidated portion.  That's just not what the plan says.

18             Now, their whole premise on this --

19             THE COURT:  But your -- if you take your argument,

20   could be -- would be that a creditor files a claim for

21   $10 --

22             MR. BRILLIANT:  Right.

23             THE COURT:  -- right, and then comes in later and

24   says, it's $10 plus unliquidated amounts, and comes in and

25   says, the unliquidated amount is a billion dollars, that's
```

Page 21

1    what I want the reserve to be.  It can't --

2              MR. BRILLIANT:  No, Your Honor, that's --

3              THE COURT:  -- work that way.

4              MR. BRILLIANT:  That's not what we're saying at

5    all, Your Honor, and I apologize, obviously I'm not making

6    my point --

7              THE COURT:  No, I think you're telling --

8              MR. BRILLIANT:  -- clearly enough.  What --

9              THE COURT:  -- me to count the duplicative

10   claims --

11             MR. BRILLIANT:  Again, they're not --

12             THE COURT:  -- to allow you to --

13             MR. BRILLIANT:  Okay.  They're not -- see, that's

14   the thing, they're not duplicative.  We have an individual

15   claim against each entity, and again, Your Honor, this -- I

16   just ask you to step back and see the big picture here.  I

17   mean, there's two issues here, but -- that involve the big

18   picture.

19             But the first issue, right, the first issue is

20   whether or not we are going to be -- we have the potential

21   here -- whether there's being reserved an amount that

22   enables us to be paid more than in full, that's what they

23   say.  You know, that we should be able to reduce it to the

24   -- you know, in an amount that enables you to be paid in

25   full, you know, that Your Honor should use discretion that

Page 22

1   they believe you have under 105, you know, under the plan to

2   modify this so long as we're not -- you know, so -- that

3   there's an amount that's reserved that enables us to be paid

4   in full.

5            Again, we assert a claim of almost $200 million,

6   so there's no potential here, you know, if you reduce it

7   below 200, you're basically cutting off --

8            THE COURT:  All right.  But --

9            MR. BRILLIANT:  -- some of our claims.  So that's

10  number one.

11           THE COURT:  -- that -- I understand that.  But --

12           MR. BRILLIANT:  All right.

13           THE COURT:  -- there's an additional link.  Now

14  that we've gotten rid of everything above 200, between --

15           MR. BRILLIANT:  Uh-huh.

16           THE COURT:  -- the 200 and the 895, we're not

17  talking about more than payment in full.  Right now we're

18  talking about your desire to, via the reserve, ensure

19  payment in full --

20           MR. BRILLIANT:  That's right.

21           THE COURT:  -- of that amount --

22           MR. BRILLIANT:  That's right.

23           THE COURT:  -- as opposed to the plan

24  administrator saying that there was a procedure and you're

25  trying to fit a square peg into a round hole by now looking

```
 1    at your filed claims, doing the stacking, to get to your

 2    payment in full amount.

 3              MR. BRILLIANT:  You know, Your Honor, it's not

 4    that we're trying to use the stacking to do that.  The plan

 5    protects us by requiring each debtor to reserve the amounts.

 6    The plan protects us in that regard.  And they want to take

 7    away that protection.  They want to do that without

 8    estimating our claim, and they want to do it without having

 9    Your Honor make any determination as to, you know, whether

10    we are really, in fact, being protected.

11              You know, they say, you know, they get to decide

12    when they object to claims, that may be years from now, when

13    our claim is ultimately allowed, and there may not be any

14    money left, you know, for us at that point in time.

15              So the question then becomes a question of

16    contract, a question of the plan, and what it says, and

17    whether or not, you know, Your Honor has the authority to

18    take away the protections that were given to us pursuant to

19    the plan, which requires them, requires them --

20              THE COURT:  But here's the thing, Mr. Brilliant,

21    you can -- somebody could -- simply by filing duplicative

22    claims against all of the estates enables a creditor to

23    stack the reserve deck in a way that's unfair.

24              MR. BRILLIANT:  Yeah, but you see, Your Honor,

25    again, you know, and that is possible, and the remedy that
```

```
 1    this --

 2              THE COURT:  And you're saying --

 3              MR. BRILLIANT:  No, no --

 4              THE COURT:  Let -- Mr. Brilliant --

 5              MR. BRILLIANT:  Okay.  Uh-huh.

 6              THE COURT:  -- we know each other well, right?

 7              MR. BRILLIANT:  Right.

 8              THE COURT:  So let me talk.

 9              MR. BRILLIANT:  Sure.

10              THE COURT:  Okay?  You're saying that because you

11    now are going to fill in the blanks of what you previewed

12    before as being unliquidated, you're going to use the device

13    of having filed the same claim in each of the estates to get

14    you to that amount.  To get you to that amount, you're going

15    to take -- you're getting -- you know, that's your -- you

16    know, that's Oz, right --

17              MR. BRILLIANT:  Uh-huh.

18              THE COURT:  -- and instead of having gotten there

19    by filed a proof of claim in the amount of $198 million,

20    you're now going to get there by saying, oh, look, my

21    unliquidated amount is going to be that additional 150

22    million and I can get there because I've filed claims

23    against each of the entities.  It really -- it doesn't

24    really -- there's an illogic.  There's an -- I hear you, but

25    there's an illogic to it.
```

1          MR. BRILLIANT:  Well, Your Honor --

2          THE COURT:  Might I suggest -- go ahead.

3          MR. BRILLIANT:  Okay.  Your Honor, I think you see

4   the -- basically what you're saying, Your Honor, is it seems

5   illogical -- again, we're only talking at this point about

6   reserve, right.

7          THE COURT:  Correct.

8          MR. BRILLIANT:  I think that's the key --

9          THE COURT:  Correct.

10         MR. BRILLIANT:  -- we need to focus on.  We're

11  talking about reserve.

12         THE COURT:  Right.

13         MR. BRILLIANT:  And the plan provides certain

14  amounts of reserve.  Okay.

15         THE COURT:  Right.

16         MR. BRILLIANT:  And then, you know, and then

17  there's a question of how that can be amended if at all.

18         THE COURT:  Let me give you one other

19  hypothetical.  Suppose your proof of claim merely said $23

20  million.

21         MR. BRILLIANT:  Uh-huh.

22         THE COURT:  And it was filed 40 times.

23         MR. BRILLIANT:  Uh-huh.

24         THE COURT:  Right.  And there was no ability to

25  expand what you were claiming.  It said $23 million, that's

Page 26

1    it.  That's what the reserve would be $23 million once, not

2    40 times, right?

3            MR. BRILLIANT:  You're saying if I filed it 40

4    times?

5            THE COURT:  Yeah.

6            MR. BRILLIANT:  Or I filed it 20 times?

7            THE COURT:  Yeah.

8            MR. BRILLIANT:  Well, under the plan --

9            THE COURT:  Yeah.

10           MR. BRILLIANT:  -- they would be required to

11   reserve, unless the party agreed otherwise, to reserve in

12   each case for that amount.  And the remedy, Your Honor, and

13   that's what I think is being lost here, the remedy that the

14   debtor has if they think that the amount of the claim is not

15   being reserved appropriately, the only remedy they have is

16   to object to the claim and have it be allowed at a different

17   amount, or you know, reduced.  That's number one.

18           THE COURT:  So -- yeah.

19           MR. BRILLIANT:  And the second issue, or they

20   could file a claims estimation for reserve purposes.

21           THE COURT:  So let me ask Mr. Fail --

22           MR. BRILLIANT:  Neither of which they have done

23   here.

24           THE COURT:  Let me ask Mr. Fail a question.

25           So 40 identical proofs of claim are filed in a

Page 27

```
 1    liquidated amount with no escape hatch for unliquidated

 2    amounts.

 3              MR. FAIL:  Yep.

 4              THE COURT:  Okay.  What happens in that instance?

 5              MR. FAIL:  Nothing different than what's happened

 6    here today.

 7              THE COURT:  How do you pick --

 8              MR. FAIL:  An efficient --

 9              THE COURT:  How do you -- and --

10              MR. FAIL:  An efficient process whereby we don't

11    need to have evidence as to whether the claim for 150 is in

12    addition to or on top of or included the 44 that's already

13    filed, don't have to see if LBI paid 10 million, 20 million,

14    or 30 million or $40 million already to be satisfied, except

15    the claim as filed is 23.  And then you look to paragraphs

16    8.4 and 8.13 of the plan.

17              Mr. Brilliant is not correct.  If the only option

18    were to object to the claim or estimate the claims, we would

19    have done that.  We filed the motion pursuant to 1142 and

20    105 to enforce Sections 8.4 and 8.13 of the plan.

21              Section 8.4 describes what has to be reserved.

22    Each -- the plan administrator needs to reserve only that

23    which would be distributed, that's what 8.4 says.

24              8.13 tells you the maximum, it's called maximum

25    distribution, the maximum that can be distributed pursuant
```

Page 28

1    to this plan, and that is the amount of -- the allowed

2    amount of the claim.

3            Right now, the amount of the claim on file, as

4    recognized by the claims agent and by the debtor and on the

5    ballots that were submitted by Stonehill, is an aggregate of

6    $44.375 million.  There's no debate about that, there can't

7    be.

8            The only thing that could be debated is whether we

9    now should be required in this one instance above all others

10   to reserve an excess of $117 million incremental amount.

11   And there's no basis under the plan.  And Mr. Brilliant, and

12   Stonehill cite no authority for their affirmative request.

13           Our relief is provided for in the plan.  It's

14   mandated.  And so there's that, and there's also this Court

15   can grant the relief requested pursuant to the latter

16   section of 8.4, which is that even if Mr. Brilliant's right

17   and we couldn't do it pursuant to the first sentence, where

18   you as the Judge has to decide the amount, we're not using

19   that, you can say, that access, free access administered by

20   the plan administrator, that if LBHI is liable, there will

21   be the amount equal to the distribution paid by LBHI, less

22   than a hundred cents, far less than a hundred cents.  But if

23   they're successful against Lehman Brothers, Lehman over the

24   counter derivatives, that entity is paid a hundred cents.

25   There will be a hundred cents there.

1          But the plan requires that if you get a claim

2     against Locksey (ph) and you get a claim against LBHI, you

3     can only get 44.75, there's no question.  This isn't about

4     estimation, that Mr. Brilliant has made clear, will be very

5     -- could be very expensive.

6          They've alleged contract damages and tort damages.

7     And the plan administrator is working now to make the most

8     progress in getting distributions out, and will resolve

9     claims as it can.  Hopefully consensually --

10         THE COURT:  I mean, the way reserves --

11         MR. FAIL:  -- but if not, we'll be back.

12         THE COURT:  -- generally work is exactly the way

13    it's worked in this plan, that you set a number for the

14    reserve, allowance is a different issue, you know, the

15    reserve sits out there, and there is necessarily some risk

16    involved with respect to allowance being greater than the

17    amount of the reserve.  Otherwise, you would have -- you'd

18    have complete paralysis in a plan distribution process.

19         MR. FAIL:  Your Honor, and --

20         THE COURT:  You'd never, you'd never be able to

21    move forward.

22         MR. FAIL:  Any harm is of Stonehill's own making.

23    They could have filed a motion to amend at any point.  Had

24    they filed it a month ago, two months ago, three months ago,

25    four months ago, two years ago, three years ago, we wouldn't

Page 30

```
1    be having this conversation.  Instead, they admit that five

2    years after confirmation, after they've received

3    distributions of cash and securities from LBI, they now

4    allege additional harms.  Whether they are liquidating

5    something that's already in the claim, or they're adding new

6    things, the question will be at a later point if Stonehill

7    files a motion and an amended claim signed under penalty of

8    perjury.

9              The question will be, does it relate back, and is

10   it equitable.  Did it put us on notice that they were asking

11   for these damages.  That's for another time.  But there's no

12   question that it's a $44 million maximum at this point.

13             THE COURT:  Okay.  Mr. Brilliant --

14             MR. BRILLIANT:  Your Honor --

15             THE COURT:  -- one more round.

16             MR. BRILLIANT:  Okay.  I'll be brief, Your Honor.

17             I think, Your Honor, when you came out, I think

18   Your Honor really, you know, had the right process here.

19   Because, you know, the reality is, we've -- we believe we

20   have a claim that exceeds, you know, that is, you know,

21   approximately $200 million.

22             Our proof of claim, you know, facially does not

23   illuminate that.  So the question is, you know, whether or

24   not -- and I think it really come down to the question of

25   plan interpretation, whether they have -- Your Honor have
```

Page 31

1   the authority to do this, and if you do have the discretion,

2   whether or not under these circumstances Your Honor should,

3   you know, do it.

4          But effectively what they're saying is Your Honor

5   should, you know, reduce our claim or reduce our reserve,

6   you know, to the $43 million, and then we should come into

7   court with a motion asking Your Honor to allow us to, you

8   know, liquidate our claim or assert, you know, the full

9   amount.  And then if we're right about that, then put the

10  reserve -- you know, raise the reserve back to the amount of

11  the claim.  And that's just backwards.

12         Your Honor, the plan itself is very clear as to

13  how the -- you know, the reserves are to be established.

14  The plan could've said that a reserve, you know, should be,

15  you know, should be limited to the, you know, to one claim

16  if you asserted it multiple times, but it doesn't say that.

17         It says each debtor will set a reserve and it only

18  authorizes the Court to modify, you know, that through an

19  allowance an estimation of the claim itself, or

20  alternatively, you know, if it's otherwise permitted by the

21  Bankruptcy Code.

22         The sections that they cite 1142, has to do with

23  effectuating consummation of the plan.  It does not change

24  the -- you know, it does not change the plan itself.  105,

25  Your Honor, I mean, the Second Circuit we cite the, you

Page 32

1    know, the two cases, it does not give Your Honor discretion

2    to modify things.  I'm sure Your Honor knows it's what,

3    today is Thursday.  On Tuesday the Supreme --

4              THE COURT:  Lowell versus Segall (ph), I got it.

5              MR. BRILLIANT:  Yeah, right, and you know, which

6    also, you know, reflected the limitation on the use of 105,

7    although I'm not telling you there's anything in the

8    Bankruptcy Code here that specifically prohibits what you

9    want to do.

10             But clearly there, you know, if there was ever a

11   situation where there was, you know, an equitable reason,

12   you know, for using 105 --

13             THE COURT:  But if you're going to start talking

14   about equity, Mr. Brilliant, you're going to get into

15   trouble.  Because it's pretty persuasive that you've had a

16   lot of time.

17             MR. BRILLIANT:  Yep.

18             THE COURT:  And you could've amended it.

19             MR. BRILLIANT:  Right.  And, Your Honor --

20             THE COURT:  And you didn't.  So --

21             MR. BRILLIANT:  And Your Honor knows --

22             THE COURT:  So --

23             MR. BRILLIANT:  And Your Honor knows what was

24   going on, which counsel, you know, they seem to leave a lot

25   out of their papers, you know, we were having, what we

1    thought, were conversations.  We had given -- they sought

2    discovery, we gave them discovery.  We, of course, never got

3    discovery.  We gave them additional information, we talked

4    about reserves.  You know, when Mr. Fail says they're

5    surprised, we objected, you know, that's absurd, Your Honor.

6    They knew that this was not something that was agreeable,

7    you know, to us.  That they've not -- this is not the first

8    time in our papers that they heard the $200 million number.

9          We gave them information, we tried to work things

10    out.  We tried to stay out of court on these issues with the

11    expectation that a claims allowance and agreement on the

12    amount of our claim solves everything.  It solves the

13    reserves, it solves everything.

14          THE COURT:  Well, but --

15          MR. BRILLIANT:  But so instead of --

16          THE COURT:  -- you know --

17          MR. BRILLIANT:  -- Your Honor --

18          THE COURT:  -- they can't have everybody -- you

19    know, everyone wants to jump the line.  But, you know --

20          MR. BRILLIANT:  But this is --

21          THE COURT:  -- there would be chaos if the plan

22    administrator, you know, tried to make everybody happy in

23    that regard.

24          MR. BRILLIANT:  Right.  But you see, Your Honor,

25    what you're really seeing here is the opposite of that.

Page 34

1   We're not trying to, you know, to jump the line so to speak,

2   but they say that, you know, our claims, you know, the size

3   and the amount that the plan requires to be reserved somehow

4   requires that there be, you know, some kind of, you know,

5   Court intervention here, there needs to be some reduction.

6           The right to do this is to seek to estimate it

7   or to allow it.  It's not to try to find something -- you

8   know, ask Your Honor to use 105 discretion, you know, here

9   which doesn't exist, you know, to reduce our claims to an

10  amount which if our claims are allowed in the amount that we

11  think they would be is less than the amount of our claims.

12  That any consideration as to whether or not our claim, you

13  know, equals that amount.

14          The fact that we filed it against multiple

15  entities, you know, is, you know, it can't be used against

16  us.  There are different portions of our claim may very well

17  belong to different entities, you know, more than that.  We

18  can assert all of the issues within our claim as we see fit

19  against all the different entities, and that gets us to the

20  $200 million through the stacking situation, or if you want

21  to, you know, consider that somehow, you know, payment in

22  full, you know, provisions in the plan which have nothing to

23  do, you know, with the reserves somehow come in here,

24  payment in full of these claims would be $200 million.

25  Anything other than that, Your Honor, is just inappropriate.

1              THE COURT:  Okay.  Look, you can -- I can't give

2      you a decision today.  I have to go back and study the

3      papers.  You can certainly talk to each other and try to

4      come to an agreed resolution.  I'd like it to be clear that

5      the reserve above -- I'm saying 198, I don't know if that's

6      exactly the right number, but that -- and I don't know if

7      there's an agreement on that.  You said 160 something?

8              MR. FAIL:  They referenced $37 million for a

9      derivatives claim, a guarantee of a derivatives' claim, our

10     motion couldn't have been clearer, it's not included in

11     that, so subtracting 198 from 37 we get 162.

12             THE COURT:  You don't agree, Mr. Brilliant?

13             MR. BRILLIANT:  Your Honor, 198 doesn't include

14     the 37.

15             MR. FAIL:  The problem is, the foot -- the numbers

16     don't foot, right.  All of the numbers in this motion,

17     there's -- Judge Peck --

18             THE COURT:  It --

19             MR. FAIL:  -- once said at the hearing to deny a

20     challenge to exclusivity, proponent said, I can file a plan,

21     and the judge said -- and Judge Peck said, where's your

22     plan, you would attach it if you meant it.  There's no proof

23     of claim to show how you get to 198.  Is it duplicate, is it

24     not?  It's a random number, it's arbitrary at this point to

25     negotiate off of.

Page 36

```
 1              THE COURT:  Well, I think, Mr. Brilliant, you
 2     know, the numbers need to add up, right.  Right now you're
 3     saying 198.  My concern is that I want every penny of the
 4     reserve freed up as soon as possible consistent with the
 5     plan.
 6              So between 198 and 895, that's going to get
 7     released.  Right.  That's going to get --
 8              MR. BRILLIANT:  We've agreed to that, Your Honor.
 9              THE COURT:  Okay.
10              MR. BRILLIANT:  We didn't need to come to court to
11     do that.
12              THE COURT:  Okay.  Well, it would've been lovely
13     if we had done that before.  But in the meantime, I think
14     that you need to put together a piece of paper that really
15     lays out the math, so to speak.  You can have a
16     conversation.  If you come to an agreed resolution, great;
17     it doesn't have to be one number or the other, it could be
18     somewhere in between or, you know, put in a piece of paper
19     that actually makes the numbers add up because I did this
20     exercise, I had a hard time having it add up, and then I'll
21     give you a decision, you know, as soon as I can.
22              MR. FAIL:  Thank you very much, Your Honor.
23              THE COURT:  All right.
24              MR. BRILLIANT:  Thank you, Your Honor.
25              THE COURT:  Okay.  Thank you, and again I
```

Page 37

1    apologize for the delay in getting you started today.

2    (Proceedings concluded at 12:21 PM)

3                                    * * * * *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 38

1                   C E R T I F I C A T I O N

2

3

         I, Sheila G. Orms, certify that the foregoing is a

4    correct transcript from the official electronic sound

5    recording of the proceedings in the above-entitled matter.

6

7    Dated:   March 7, 2014

8
     Sheila Orms          Digitally signed by Sheila Orms
                          DN: cn=Sheila Orms, o, ou,
9                         email=digital1@veritext.com, c=US
                          Date: 2014.03.07 14:28:01 -05'00'

10   Signature of Approved Transcriber

11

     Veritext

12

     330 Old Country Road

13

     Suite 300

14

     Mineola, NY 11501

15

16

17

18

19

20

21

22

23

24

25