# Exhibit 13

# Lehman Brothers Limited
# In Administration

Joint Administrators' progress report for the period
15 September 2009 to 14 March 2010

13 April 2010

# Contents

| | | | |
|---|---|---|---|
| Section 1 | | Purpose of the Joint Administrators' progress report | 1 |
| Section 2 | | Joint Administrators' actions to date | 3 |
| | 2.1 | Infrastructure and Property | 4 |
| | 2.2 | Information Technology | 5 |
| | 2.3 | Human Resources | 7 |
| | 2.4 | Pensions | 9 |
| | 2.5 | Corporation Tax and VAT | 10 |
| | 2.6 | Intercompany | 11 |
| | 2.7 | Affiliate company relationships | 12 |
| | 2.8 | Recharges | 14 |
| Section 3 | | Statutory and other Information | 15 |
| Section 4 | | Joint Administrators' Remuneration | 16 |
| Section 5 | | Receipts and Payments to 14 March 2010 | 18 |

# Section 1   Purpose of the Joint Administrators' progress report

## Introduction

This report has been prepared by the Joint Administrators (the "Administrators") of Lehman Brothers Limited ("LBL" or the "Company") under Rule 2.47(3)(a) of the Insolvency Rules 1986 (the "Rules").

This is the third such report and provides an update on the work that the Administrators have undertaken, with particular focus on the progress made during the six months since 15 September 2009.

## Objectives of the Administration

The Administrators are pursuing the objective of achieving a better result for LBL's creditors as a whole than would be likely if LBL were wound up (without first being in Administration).

The specific aims of this Administration are to:

- Realise all assets of LBL, where value may exist;

- Provide ongoing employee and infrastructure support to the other group companies that are in Administration in exchange for appropriate reimbursement; and

- Mitigate, as far as possible, any further liabilities against LBL by the transfer or termination of contracts.

## Creditors' Committee

The Administrators regularly meet with the Creditors' Committee (the "Committee") and, to date, eight meetings of the Committee have taken place.

The meetings with the Committee provide the Administrators with the opportunity to explain in detail how we are dealing with key aspects of the Administration and to consult the Committee on critical issues.

## Outcome for unsecured creditors

The Administrators are not in a position to give an estimate of the timing or quantum of any dividend to unsecured creditors.

However, creditors should be aware that LBL is a shareholder of Lehman Brothers International (Europe) - in Administration ("LBIE"), an unlimited company.  LBL is therefore potentially liable for any shortfall to creditors of that estate.  Clearly, this could have a significant impact on funds available to other creditors of LBL.

## Additional Joint Administrator Appointed

On 23 November 2009 DA Howell, was appointed as an additional Joint Administrator by order of the Court. DA Howell is licensed in the United Kingdom to act as an insolvency practitioner by the Institute of Chartered Accountants in England and Wales.

AV Lomas, SA Pearson, DY Schwarzmann and MJA Jervis continue to act as Joint Administrators of the Company.

## Change of Address

The Company has relocated from 25 Bank Street and all future correspondence should be addressed to Level 23, 25 Canada Square, London, E14 5LQ, United Kingdom.

## Future reports

The next progress report to creditors will be in six months time.

Signed:

*[signature]*

MJA Jervis
Joint Administrator
Lehman Brothers Limited

# Section 2.1 Infrastructure and Property

## Overview

Infrastructure and Property ("I&P") is a function provided by LBL primarily for the management of the 25 Bank Street premises, and other leased properties and related assets. The continuing provision of the premises at 25 Bank Street was essential to support the Lehman Administration Companies. Costs are recovered by LBL from the various Lehman Brothers entities (mostly LBIE) and subtenants.

The focus of the I&P team has been to:

- Reduce LBL's cost base through relocating the Lehman Administration Companies to premises leased by another Group entity at 25 Canada Square, Canary Wharf;

- Continue essential IT and property services;

- Coordinate the recovery of costs incurred from the various Lehman Administration Companies and subtenants; and

- Realise value for creditors from physical assets.

## Progress

The key highlights for the period were:

- The relocation of the Lehman Administration Companies to 25 Canada Square;

- The generation of additional revenue by hosting a number of external events at Bank Street;

- Negotiation of IT contracts for software and applications on commercial terms with existing and new vendors;

- Delivery of a new, independent, IT infrastructure; and

- Receipt of funds for asset sales and usage.

The I&P team continued to successfully manage essential services for the ongoing operation of the Lehman Administration Companies in addition to:

- Completing the disposal or transfer of the remaining European offices to Nomura Holdings Inc ("Nomura"); and

- Renegotiating contracts for ongoing operations in Bank Street.

## Issues and challenges

The main challenge encountered by the I&P team has been in managing the vacation of 25 Bank Street, including negotiations with third party sub-lessees and arrangements for the provision of continuing building management services for third party sub-lessees.

The second significant challenge has been the negotiation of IT software and application licences. This has been resolved through the relationships established with Linklaters and vendors during the Administration.

The I&P team's main focus going forward will include:

- Managing ongoing issues in relation to 25 Bank Street;

- Managing the ongoing operations in 25 Canada Square; and

- Negotiating required IT software and application licences.

# Section 2.8  Recharges

## Overview

LBL exists as a service company, holding contracts and making payments to employees and suppliers for services that enable the other Lehman Administration Companies to perform their functions, but which do not necessarily benefit LBL on a standalone basis.

The priority upon appointment was to establish and implement a Cost Recharge Agreement to provide LBL with a contractual entitlement to recover its outgoings from other Group companies.

Under the Cost Recharge Agreement, LBL is reimbursed for payroll costs relating to any employee paid by LBL, who has worked for a Group company.  The identity of the Group company concerned is determined by reference to the objectives that have been agreed with each employee and which refer to the various work-stream activities being undertaken.

To recover building, occupancy and operational costs, which account for all non-payroll costs incurred by LBL, we have apportioned the total budgeted costs across the Group companies, based on the proportion of Lehman Group staff working in 25 Bank Street or 25 Canada Square on behalf of each company.  This method was decided upon as it gives an indication of the level of activity being carried out in each company and the costs incurred in support of that activity.

## Progress

Despite the move from 25 Bank Street into 25 Canada Square in March 2010, the cost recharge mechanism continues to be used as the mechanism under which LBL pays suppliers and recharges Group entities for costs incurred.

LBIE accounts for approximately 97% of Lehman Group staff working at 25 Canada Square and as a result LBIE is responsible for that percentage of building, occupancy and operational costs, to the extent these are incurred by LBL.  In recognition of this, regular meetings are held with LBIE to discuss the costs incurred and the amount to be recharged.

As at 14 March 2010 we had issued invoices totalling over £352 million to the Lehman Group companies under the Cost Recharge Agreement.