# Exhibit 23

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK
     -------------------------------------X
 3   In Re:

 4   LEHMAN BROTHERS HOLDINGS INC.,

 5   et al.,

 6                        Debtors.

 7   Chapter 11
     CASE NO.: 08-13555(JMP)
 8   (Jointly Administered)
     -------------------------------------X
 9

10
                     125 Broad Street
11                   New York, New York

12                   September 12, 2013
                     9:21 a.m.
13

14

15           VIDEOTAPED DEPOSITION of RICHARD

16   MILLETT, before Melissa Gilmore, a Notary

17   Public of the State of New York.

18

19

20

21

22

23      ELLEN GRAUER COURT REPORTING CO. LLC
         126 East 56th Street, Fifth Floor
24            New York, New York 10022
                   212-750-6434
25                 REF: 104785
```

```
 1                    MILLETT
 2      Q.    Do you agree that?
 3      A.    Yes.  Interestingly, just picking
 4  up, he says, at the end, which actually harks
 5  back to a point I made before, "It is this
 6  feature which leads to the person giving the
 7  indemnity to be described as a surety,
 8  although, strictly, the contract of indemnity
 9  cannot, itself, be a contract of suretyship."
10            MR. ISAKOFF:  She couldn't take it
11      down that fast.
12      A.    I'm so sorry.
13            The words he uses, "It is this
14  feature which leads to the person giving the
15  indemnity to be described as a 'surety,'
16  although, strictly, the contract of indemnity
17  cannot itself be a contract of suretyship."
18            That is really what I was referring
19  to earlier when I was referring to the word
20  "suretyship" and its use.
21      Q.    Do you agree with Sir William
22  Blackburne's conclusion in the Vossloh decision
23  that an essential feature of an indemnity is
24  that the indemnitor has a primary liability?
25      A.    Yes.
```

```
 1                   MILLETT
 2      Q.    And what is a primary liability?
 3      A.    He is liable for the performance of
 4  the obligation in question, regardless of
 5  whether somebody else is liable or not.
 6      Q.    And that's also referred to as a
 7  primary obligation; is that correct?
 8      A.    Yes.
 9      Q.    And would you agree that the
10  distinction between a primary obligation and a
11  secondary obligation is critical to determining
12  whether a contract is one of indemnity or
13  guarantee?
14      A.    Can I just back -- go back a little
15  bit?  I may have skated over perhaps what could
16  be a subtle difference.
17            We speak of obligations.  We speak
18  of liabilities.  In reality, what happens is
19  that parties assume obligations.  They don't
20  necessarily assume liabilities.  They assume
21  liabilities for the performance of that
22  obligation, and liabilities, whatever they are
23  in law, where those obligations are not
24  performed.
25            The word that he uses is a primary
```

```
 1                      MILLETT
 2      A.    (Perusing.)  Yes, I see that.
 3      Q.    You see that, in section ten of the
 4  lease, there is a reference to the surety
 5  having a primary obligation in the terms
 6  contained in Schedule 4.
 7            Do you see that?
 8      A.    I do.  I don't think you have quite
 9  phrased it right.  You paraphrased it, and not,
10  I think, accurately, I'm afraid.
11            What it says is, "In consideration
12  of this demise having been made at its request,
13  the surety hereby covenants with the landlord,
14  and as a separate covenant with the management
15  company, as a primary obligation, in the terms
16  contained in Schedule 4."
17            That's what it says.  I see it says
18  that.
19      Q.    Do you think that it's irrelevant
20  that the parties chose to use the words
21  "primary obligation" when referring to Schedule
22  4?
23      A.    Well, I doubt that it was
24  irrelevant, because one has to assume that when
25  the parties chose to use the words, they did so
```

```
 1                       MILLETT
 2   with some kind of purpose in mind.
 3        Q.   Do you have any explanation for why
 4   they used the words "primary obligation"?
 5        A.   Well, the first question is whether
 6   the words "as a primary obligation" in clause
 7   ten, which you are showing me, refer to the
 8   surety covenanting with the landlord, or
 9   whether they refer to the separate covenant
10   with the management company.
11             That ambiguity, to my mind, carries
12   through to paragraph one of Schedule 4 as well.
13             So picking those words, as you have,
14   is very interesting, but I'm not sure -- I
15   personally -- personally not completely clear
16   whether that's describing the covenant with the
17   management company or the covenant with the
18   landlord.
19        Q.   Are you saying that you believe that
20   the words "as a primary obligation" are only
21   referring to the covenant with the management
22   company as opposed to the covenant with the
23   landlord?
24        A.   No, I'm not going that far.  I'm
25   saying that it's arguable, at the very least,
```

```
 1                    MILLETT
 2   of guarantee or indemnity?
 3           MR. ISAKOFF:  Object to form.
 4      A.   I personally would ignore the labels
 5   used by the parties unless I really had to have
 6   recourse to them.  I don't believe you do.
 7           I'm also looking at the lease
 8   because I believe, and I'm sure I quoted it in
 9   my first opinion, there is a provision in the
10   lease which says that you aren't allowed to
11   look at the labels.
12           So, in forming my views, I don't
13   look at the labels, but it is right to say that
14   when I address Mr. Rabinowitz's opinions,
15   because he did look at the labels, I had to
16   form a view about them.
17      Q.   Well, beyond the label of paragraph
18   one, you recognize, do you not, that paragraph
19   one repeatedly uses the word "indemnify" or
20   "indemnified," correct?
21      A.   Well, paragraph one uses the word
22   "indemnify" and "keep indemnified."  You say
23   repeatedly.  We can read it.  It uses it seven
24   lines down.
25      Q.   Yes.  Okay.  So the fact of the use
```

1              **MILLETT**

2    of the word "indemnify" and "indemnified,"

3    would you agree with me that that's relevant,

4    but not dispositive, in considering whether a

5    contract is one of indemnity versus guarantee?

6              MR. ISAKOFF:  Object to form.

7         A.   Yes.  I mean, I can't sit here and

8    say that it's utterly irrelevant to the

9    question before an English court was, what is

10   Schedule 4 as a matter of its true

11   characteristics, properly interpreted,

12   nobody -- of course, you would look at all the

13   words, and included in the words are the words

14   "shall indemnify and keep indemnified."  I'm

15   not going to pretend it's irrelevant.

16        Q.   Use of those words would tend to

17   support an argument that the contract is one of

18   indemnity, but, in your view, you would need to

19   look at all the rest of the words in context,

20   correct?

21        A.   No, I don't think it tends to

22   support the argument one way or the other.

23   There is part -- hang on.

24        Q.   I apologize.  I saw you were

25   continuing, so I stopped.

1                    **MILLETT**

2    works and what the words "indemnify" and "keep

3    indemnified" mean.

4        Q.    And is it your view that the words

5    being used in Schedule 4 are not referring to

6    an obligation that is being given by way of

7    security for the performance of an obligation

8    by another?

9             MR. ISAKOFF:  Object to form.

10       A.    I do not believe that the words "the

11   surety shall indemnify and keep indemnified the

12   landlord and the management company," are -- et

13   cetera, are words which -- or under which

14   security is being provided for the performance

15   of an obligation.

16            My opinion is that paragraph one is

17   a single composite obligation, and that the

18   second element of it, following the words "and

19   the surety shall indemnify" are descriptors,

20   they describe the extent of the surety's

21   obligation to make payment, which is imposed

22   upon him or it under the first part of

23   paragraph one.

24       Q.    If I could ask you to take a look at

25   paragraph one of Schedule 4, which is marked as

1                           **MILLETT**
2    It can actually be used as "or."  It can also
3    be used, and is very commonly used, as a
4    serializing particle.
5         Q.    In either one of those three
6    different possibilities, conjunctive,
7    disjunctive or serial, there are multiple
8    items, at least two, correct?
9              MR. ISAKOFF:  Object to form.
10        A.    I think the use of the word "and"
11   isn't going to get you anywhere.  You've got to
12   look at what's being connected.
13        Q.    That's my question.  What's being
14   connected?
15             MR. ISAKOFF:  Object to form, asked
16        and answered.
17        Q.    What's being connected with that
18   word "and"?
19        A.    What's your question?
20        Q.    What are the two things or more that
21   are being connected by the word "and" on the
22   sixth line of paragraph one of Schedule 4?
23             MR. ISAKOFF:  Object to form and
24        asked and answered.
25        A.    What's being connected is the

```
 1                    MILLETT
 2   assumption of obligation with the promise, as
 3   it were, as to the extent and manner of
 4   performance of that obligation.
 5             Wash the car and don't use the red
 6   soap.
 7       Q.   So let's take those two pieces.  You
 8   said the first is the assumption of the
 9   obligation.
10             What words in paragraph one are the
11   assumption of obligation?
12       A.   The surety hereby covenants.  These
13   are the operative words of assumption of
14   obligation.
15       Q.   I'm sorry.  Are you saying that the
16   words "the surety hereby covenants" all the way
17   up to the word "specified" before and or --
18       A.   It's a slightly sort of an arid
19   question.  I'm sorry to be too critical.
20             But what's the word in that clause
21   that imposes the obligation on the surety?
22   Well, it's his promise, and that's the word
23   "covenant," but what he's covenanting to do is
24   the whole of it.
25       Q.   All of it up to the word
```

```
 1                      MILLETT
 2            MR. ISAKOFF:  Objection.
 3            MR. DE LEEUW:  I will restate it,
 4       because either it got mistranscribed or I
 5       misstated it, so I will say it again.
 6       A.    It sounded like that Groucho Marx
 7   thing from Night at the Opera, party of the
 8   first party saying do your best.
 9       Q.    Is there any provision in Schedule 4
10   or the lease that specifies that what you have
11   circled as the second part of paragraph one of
12   Schedule 4 can only be read as the extent and
13   manner of performance of the first part of
14   paragraph one of Schedule 4?
15            MR. ISAKOFF:  Object to form.
16       A.    There are no express words in
17   paragraph one or Schedule 4 or to the extent
18   that I have reread it again, which is not much,
19   the lease, which tells you that you have to
20   read paragraph one in the way that I believe it
21   should be read.  But to finish the answer, that
22   takes you nowhere.
23            In order to characterize a
24   commercial document, you don't look for --
25   you're not going to start by looking at express
```

```
 1                    MILLETT
 2    provisions where the parties tell you how to
 3    read it.  If the parties were going to do that,
 4    they would have that in the definitions clause.
 5           MR. ISAKOFF:  Are you ready for a
 6       break?  We have been going for about an
 7       hour and 20 minutes.
 8           THE WITNESS:  Sure.
 9           MR. DE LEEUW:  That's fine.  Why
10       don't we take lunch now.
11           THE VIDEOGRAPHER:  We are now off
12       the record at 12:37 p.m., September 12,
13       2013.
14           (Luncheon recess taken at
15       12:37 p.m.)
16
17
18
19
20
21
22
23
24
25
```