Robert Dziedziech
Horizons
Leatherhead Road
Oxshott
Surrey, KT22 0ET
United Kingdom



March 18, 2014

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-2301

Re: Case No. 08-13555 (JMP): Lehman Claim #13291

Dear Judge Chapman,

I wanted to briefly respond to LBHI's letter dated March 13, 2014.

As opposing counsel correctly points out, I did merely request to join the objections of former colleagues on an issue that is being heard by this court next month (and is accordingly a timely issue). It is not, however, what opposing counsel characterizes as a request to reconsider.

Additionally, as opposing counsel noted, I moved several times; but while I tried to be diligent in keeping up to date on claims in multiple jurisdictions, I did not receive the objections from LBHI dated April 6, 2011 because I had moved since the last update.

Per LBHI's request, I have attached a copy of my apartment lease dated October 4, 2010, showing that I moved addresses from 1 Blore House (address on record at time when LBHI's objections were sent) on or about November 15, 2010, to 13 Blenham House. I have attached the first four pages of the lease for the court's review, but can supply further support at the court's request. I believe this proof demonstrates that I did not receive LBHI's objection and did not have an opportunity to respond.

Nonetheless, I believe that LBHI's response letter misses the mark and I would like to highlight three brief points:

1. I do not believe that this is about why I should or should not have updated my address sooner (although I did earnestly try to be diligent in doing so across multiple claims in multiple jurisdictions while trying to restart my career following the collapse of my employer), but rather about the <u>factual question of whether I received the objections, which my attached lease (per LBHI's request) demonstrates I did not</u>.

2. I merely requested that the court permit me to join existing objections, which the court is scheduled to hear next month. Accordingly, I believe the <u>subject matter is timely</u>.

3. <u>Permitting me to join these objections would not prejudice any party</u> and is immaterial in the scope of the debtor's estate, but not permitting me to join would greatly prejudice me as it would effectively extinguish my claim, the amount of which is personally quite material. Further, I would also like to highlight that permitting me to join the existing objections would not cause any delays to court proceedings.

Again, I respectfully reiterate my request that the court permit me to join the objections of other similarly situated former colleagues, who are objecting to their compensation claim being downgraded to equity claims.

Sincerely,

*[signature]*

Robert Dziedziech

Page 2 of 2

# AGREEMENT FOR
# A COMMON
# LAW TENANCY

### Important Notice

This document contains the Terms of the Tenancy of 13 Benham House, Coleridge Gardens London SW10 ORD; parking spaces No. 73 and 74 and storage cage No. 42 . It sets out the promises made by the Tenant to the Landlord and vice versa. You should read this document carefully and thoroughly.

You should also ask to be shown a copy of any document referred to in this Agreement. Once signed and dated this Agreement will be legally binding and may be enforced by a court. Make sure that it does not contain Terms that you do not agree with and that it does contain everything you want to form part of the Agreement.

Both parties are advised to obtain confirmation in writing when the Landlord gives consent to the Tenant to carry out any action under this Agreement.

If you are in any doubt about the content or effect of this Agreement, we recommend that you seek independent legal advice before signing.

Initials:     Landlord  *[signature]*                             Tenant

THIS AGREEMENT IS MADE on the
4th day of October 2010

Definitions and Interpretation

"Landlord(s)" includes anyone owning an interest in the Premises, whether freehold or leasehold, entitling them to possession of it upon the termination or expiry of the Tenancy and anyone who subsequently owns the Premises. It may also include anyone acting as the Landlord's letting agent, rental collection agent, or managing agent.

"Tenant" includes anyone entitled to possession of the Premises under this Agreement.

"joint and several" means when more than one person comprise the Tenant, they will each be responsible for complying with the Tenant's obligations under this Agreement both individually and together. The Landlord may seek to enforce these obligations and claim damages against any one or more of those individuals.

"Agent" is whomever is appointed from time to time by the Landlord to act as his agent and notified in writing to the Tenant..

"Premises" includes any part or parts of the building boundaries fences garden and outbuildings belonging to the Landlord unless they have been specifically excluded from the Tenancy. When the Tenancy is part of a larger building the Premises include the use of common access ways and facilities.

"Fixtures and Fittings" include references to any of the fixtures, fittings, furnishings, or effects, floor, ceiling or wall coverings.

"Inventory and Schedule of Condition" is the document drawn up prior to the commencement of the Tenancy by the Landlord, the Agent, or Inventory Clerk which shall include the Fixtures and Fittings in the Premises including all matters specified in the Inventory and Schedule of Condition which will be given to the Tenant at the start of the Tenancy after the check in of the Inventory and Schedule of Condition if applicable.

"Term" or "Tenancy" includes any extension or continuation of the contractual Tenancy or any periodic Tenancy arising after the expiry of the original Term.

"Deposit" is the money held from time to time by the Agent in a stakeholder capacity during the Tenancy in case the Tenant should fail to comply with the terms of this Agreement.

"Stakeholder" means that deductions can only be made from the Deposit by the Agent at the end of the Tenancy with the written consent of both parties.

"Notice Period" is the amount of notice that the Landlord must give the Tenant and vice versa.

"Stamp Duty Land Tax" is the duty payable by the Tenant to the Stamp Office on the signing of this Agreement if the Rent exceeds the threshold after deduction of the discount. Further information can be obtained from the Inland Revenue.

"Emergency" means where there is a risk to safety or damage to the fabric of the Premises or Fixtures and Fittings contained therein.

"Water charges" include references to water sewerage and environmental service charges.

"Superior Landlord" means the person for the time being who owns the interest in the Premises which gives him the right to possession of the Premises at the end of the Landlord's lease of the Premises.

"Head Lease" sets out the promises your Landlord has made to his Superior Landlord. The promises contained in this Head Lease will bind the Tenant if he has prior knowledge of those promises.

Initials:        Landlord                                                        Tenant

"the Policy" means any insurance policy held by the Landlord for the Premises or the Fixtures and Fittings.

References to the singular include the plural and references to the masculine include the feminine.

The Tenant and Landlord agree that the laws of England and Wales shall apply to this Agreement.

Initials:        Landlord  [signature]                                    Tenant

The Parties to this Agreement

THIS AGREEMENT IS MADE BETWEEN

A.  Serge Walid Sarkis

    of  House B, 5 Mount Austin Road, The Peak, Hong Kong SAR

    ("the Landlord")

AND

B.  Robert Dziedziech and Yekaterina Antropova

    of  1 Blore House, Coleridge Gardens, London, SW10 ORB

    ("the Tenant")

AND IS MADE IN RELATION TO PREMISES AT:

13 Benham House, Coleridge Gardens, London, SW10 ORD and parking spaces No. 73 and 74 as well as storage cage No.42

("the Premises")

The Main Terms of the Tenancy

1. Term of Tenancy.
   The Landlord lets to the Tenant the Premises for a period of twelve months. The Tenancy shall start on (and include) the 15th day of November 2010 and shall end on (and include) the 14th day of November 2011 but subject to clause 32.2

   The Rent.
   The Tenant shall pay to the Landlord £9316.66 per month, payable in advance in 4 quarterly installments of £27950 each respectively on November 14th 2010, February 14th 2011, May 14th 2011 and August 14th 2011.

2. The Deposit.
   The Tenant shall pay upon signing of this Agreement £12900.00 as a Deposit. At the end of the Tenancy the Landlord or the Agent shall return the Deposit to the Tenant subject to the possible deductions set out in this Agreement.

3. Fixtures and Fittings
   The Tenancy shall include the Fixtures and Fittings in the Premises including all matters specified in the Inventory and Schedule of Condition.

4. Type of Tenancy
   This Agreement falls outside the scope of the Housing Act 1988.

Dealing with the Deposit

The following clauses set out:
- what the Landlord will do with the Deposit monies paid by the Tenant under clause 2 above;
- what the Tenant can expect of the Landlord or the Agent when the Landlord or the Agent deals with the Deposit;

Initials:    Landlord  [signature]                                              Tenant