UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
:
In re                                                        :     Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., et al.,                       :     08-13555 (SCC)
:
                                        Debtors.             :     (Jointly Administered)
:
------------------------------------------------------------- x

## DECLARATION OF CLAIMANT NICHOLAS P. HOWARD IN OPPOSITION TO DEBTORS' FOURTEEN OMNIBUS OBJECTIONS SEEKING TO RECLASSIFY COMPENSATION CLAIMS AS EQUITY, OR ALTERNATIVELY TO SUBORDINATE CLAIMS PURSUANT TO § 510(b) OF THE BANKRUPTCY CODE

Nicholas P. Howard declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.    I make this Declaration based on my personal knowledge and the documents available to me, and would testify to the following if called upon. I authorize the filing of this objection in opposition to Lehman's 313th Omnibus Objection.

2.    I was employed by Lehman Brothers from 1993 through September 2008. Upon the sale of Lehman' brokerage unit to Barclays in September 2008, my employment with Lehman was terminated.

3.    Lehman compensated me on what it called a Total Compensation basis, by agreeing to pay commissions on the products I sold. The commission varied depending on the product, but Lehman agreed to pay me a specific commission for each product. On a monthly basis after my Gross Production was determined, Lehman told me what my "Total Sales Compensation" was, and then told me what portion of my Total Sales Compensation would be

paid as "Cash Commissions." The balance was unilaterally retained by Lehman and I received a statement containing the description "Equity Accrual Calculated."

4. Exhibit 1 to this Declaration is my Proof of Claim filed in this proceeding. The seventh (7th) page of Exhibit 1 is a "Compensation Statement" that shows the calculation described in Paragraph 3 in the bottom five (5) lines. This statement was provided to me in the same format in prior years.

5. At the end of each fiscal year Lehman took that portion of my Total Sales Compensation that it had withheld and denominated Equity Accrual Calculated and gave me a deferred compensation credit designated as Restricted Stock Units (or "RSUs").

6. When Lehman paid me my "Cash Commissions," Lehman reported it to the tax authorities as compensation income and I paid income tax on it through customary withholding. While the RSU-designated portion of my commissions was earned simultaneously as part of the agreed-upon commissions, it was not reported to the tax authorities as my compensation income.

7. At no time could I decline to accept Lehman's designation of a portion of my compensation in the form of RSUs. My participation in this compensation plan was automatic and mandatory -- there were no election or enrollment forms to complete, I could not choose whether or not to participate or to limit the portion amount of my bonus that was designated as RSUs, and I had no ability to direct how the amounts that Lehman withheld would be used. Since what I received was Lehman's contract promise to pay in the future, I paid no tax on the RSU-designated portion of my compensation. While Lehman described it as part of my "Total Compensation" for that fiscal year, on a form Lehman called "200__ Total Compensation Statement," this RSU-designated portion of my bonus was essentially a part of my earned and declared compensation that Lehman forced me to wait five years to receive.

2

8.  When I was first hired by Lehman, I was not told that I would be required to take a minimum portion of my Total Compensation in the form of RSUs. Whether any portion of my Total Compensation would be paid in RSUs, or in equity awards such as stock options or restricted stock, was completely within Lehman's discretion, and Lehman simply dictated its decision to me at year end.

9.  Pursuant to the RSU Agreements, I recognized that I was contractually obligated to avoid engaging in any "Detrimental Activity" and that I had other ongoing contract obligations under these Agreements. As Lehman cautioned me in the program documents it provided, I had no rights as a stockholder until I became the record holder of stock, and as grantee of these deferred compensation devices called RSUs I had no better rights than those of a general creditor. Further, I had no ability to sell, assign, pledge or otherwise dispose of the RSUs. I had no rights but the contract rights of an employee whose compensation had been withheld.

10. I understand that Lehman now has taken the position that I was issued "equity securities" for the RSU-designated portion of my bonus in each of the years at issue. For prior years, not at issue here, after the five-year waiting period ended and I was issued the RSU-designated portion of my bonus, Lehman withheld from this compensation a sufficient amount of cash to pay the federal withholding tax, and then provided me with Lehman shares for the balance. The entire amount of the bonus was taxed as ordinary income to me. There was never any sale of securities to raise cash for the withholding tax, which would have been necessary if "equity securities" had been issued to me at the time of the declaration of the bonus.

11. I have reviewed the "Factual Background" included in Lehman's Memorandum in Support. It is self-serving, unsupported by the facts, and imputes an intent to me that wasn't there. The Background concedes that the RSU-designated portion was withheld from each

3

employee's earned and declared "Total Compensation." The Background claims that the RSUs gave employees a financial stake in the company, but until the end of the waiting period employees had no rights as a stockholder and had nothing but Lehman's contract promise to pay us, someday, the balance of the bonus Lehman had previously declared. Employees like me had no choice as to our participation. What Lehman describes as a financial incentive to remain with Lehman was really Lehman's arbitrary assertion of financial control by withholding approximately one-third of our earned commission compensation and threatening not to pay it if we breached certain employment-related conditions Lehman unilaterally imposed. There was nothing in this practice that attracted me to work at Lehman – it was just withholding my earnings as a means of making it costly for me to leave the firm. The RSUs were never a form of compensation I elected to take; it was Lehman's way of handcuffing employees to the firm.

12.    Lehman's claim that I "originally intended" to treat the RSUs as equity in the firm is unsupported by any evidence and is simply not true. I expected to treat shares as equity when I was issued shares, and that was after the five year waiting period Lehman unilaterally imposed. In fact, Lehman specifically told me I had no rights as a stockholder until I became the record holder of stock. Further, I did not join Lehman so I could make a profit on its stock or to be compensated with equity. I joined Lehman to have a job and to further my career, and not to have an opportunity to invest in Lehman stock. I never had the intent to put my bonus at risk in an investment over which I had no control. I did not intend, and I had no reason to believe that Lehman intended, for me to be an equity holder before equity was issued, after the five-year waiting period.

13.    Lehman's representation to the Court that RSU holders had shareholder voting rights even before the stock was issued is incomplete and misleading. The Lehman Brief cites to a description of a trust established to hold an unspecified number of shares that would be voted

4

"in proportion" to the number of RSUs the holder held. But Lehman never tells the Court here what it also never told the employees: What was the proportion of shares held by the Trust relative to the total outstanding RSUs (determining what fraction of a vote the purported RSU vote had, if any), when did the RSU come to have this purported voting right (*i.e.*, upon grant, upon vesting, or as amortized), and how was the RSU holder's vote solicited? Lehman's statement that holders of RSUs had voting rights is not supported by any explanation of how holders exercised these purported voting rights, if indeed they were exercised at all.

14.    Lehman's claims that it "equated RSUs to common stock and that if it had avoided bankruptcy "Claimants would have reaped the benefit" of any increase in the stock price is simply meaningless. What has meaning is what I had before the end of five-year waiting period. As noted above, Lehman told me I had no rights as a stockholder and equated my rights with those of a general creditor. In each of the years at issue here Lehman declared what I earned as my bonus, promised payment of my bonus, and as one means of performing that promise contracted with me to pay a portion of my bonus in five years using its own stock as currency when that time came. I had no rights to any stock during this five-year waiting period; what I had was a contract promise from Lehman to pay the bonus Lehman previously declared I had earned. When Lehman failed to "avoid bankruptcy," what I was left with was my contract right to the bonus Lehman had declared and promised would be paid.

15.    Lehman recognized my rights as those of a contract creditor in its petition and schedules, where RSU and CSA agreements were listed as Executory Contracts under Schedule G. I have attached hereto as Exhibit 1 the Proof of Claim that I filed in connection with my contract rights under the RSU Agreements. My Claim was assigned Claim No. 28278. Along with its bar date notice, Lehman provided me with this Proof of Claim form. In the form provided, Lehman had largely completed the form, including inserting the caption, supplying my

5

name and address, and notifying me that I had a Claim scheduled as a "Schedule G" claim, for an "Executory Contract." Lehman also stated on the form that the scheduled claim related to the "Restricted Stock Unit Agreement."

16. All of this information was contained in the Proof of Claim form when Lehman provided it to me. I added only my phone number, email address, the amount of and basis for the claim, and my signature and date. Lehman acknowledged receipt of my Proof of Claim form upon my delivery to its claims agent.

17. The economic substance of the RSU Agreements to me was that a portion of my annual bonus, the bonus that had been declared as part of my Total Compensation for each of the years at issue, was held back, and would be paid to me only after passage of five years. Lehman withheld this compensation unilaterally, and imposed on me certain terms before it would pay the declared bonus. Even after vesting of the RSUs there was no right to the common stock, and I did not receive and was not permitted to sell the shares until five years after the date of the RSU Agreement.

18. Stock options that Lehman issued to me worked in a completely different way than RSUs. At the time of the grant, I received what is recognized as a security in the form of the stock option. The option provided me with the choice whether to buy LBH shares at a fixed price, the exercise price. The time for exercise was not a fixed date, but a period of time between exercise and lapse during which I would make an investment decision to pay the exercise price, and I then would receive LBH shares. The timing of any exercise, and even the decision *whether* to hold the option or exercise it, was solely my investment decision. No comparable security was issued to me under the RSU Agreement. With an RSU, there was a conversion and Lehman stock was simply issued to me at the end of the waiting period Lehman imposed, with no action

on my part. At no time did I exercise any choice or make any investment decision regarding the RSUs or the delivery, the timing of delivery, or the form of the underlying compensation.

19. Finally, with RSUs I paid tax at ordinary income rates on the market value of the shares Lehman issued to me upon conversion. Upon exercise of stock options I also paid tax at ordinary income rates, but only on the difference between the current market value of the LBH shares at the time of exercise and my exercise price.

20. Lehman does not dispute that it retained me to perform services as an employee and that it received my services, for which at the end of each fiscal year it declared the bonus portion of my Total Compensation. While I continued to work for Lehman in reliance on its promise to pay me the compensation it declared that I earned, Lehman now claims for the unpaid amount the classification of equity, even though no equity was ever issued and I had no rights as a holder of equity.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 28, 2014

Nicholas P. Howard

7

**EXHIBIT 1**

# PROOF OF CLAIM

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held: LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor: 08-13555 (JMP) |

UNIQUE IDENTIFICATION NUMBER: 555248610

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000028278

**Name and address of Creditor:**
LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 555248610*****
NICHOLAS P. HOWARD
114 WEST ROAD
NEW CANAAN, CT 06840

Telephone number: 646-262-7204   Email Address: nicholas.howard@bercap.com

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION: RESTRICTED STOCK UNIT AGREEMENT

1. Amount of Claim as of Date Case Filed: $3,247,606.03

☑ Check this box if all or part of your claim is based on a Derivative Contract.

2. Basis for Claim: Deferred and accrued compensation, hedge fund promotes/carry, Derivative contract, long term medical benefits

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a):
☑ Wages, salaries or commissions (up to $10,950)... 11 U.S.C. § 507(a)(4).
☑ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

Date: 09/21/09
Signature: Nicholas P. Howard

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

(1)



H A N D   D E L I V E R Y

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

RECEIVED BY    DATE    11:17    TIME

Nick Hound

(2)

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | UNIQUE IDENTIFICATION NUMBER: 1000231801 |
| Name of Debtor Against Which Claim is Held<br>LEHMAN BROTHERS HOLDINGS INC | Case No. of Debtor<br>08-13555 (JMP) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)    0000028279 |

NOTE: [redacted]

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

LBH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000231801 ******
HOWARD, NICHOLAS P.
114 WEST ROAD
NEW CANAAN, CT 06840

Telephone number: 646-262-7204   Email Address: nicholas.howard@barcap.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number: _____   Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 3,247,606.03

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: Deferred and accrued compensation, MLP fund principal, Derivative Contract, Long Term retired Benefit (unclear)
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
  3a. Debtor may have scheduled account as: _____
    (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $ _____   Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____   Basis for perfection: _____
Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☑ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$ _____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____
(See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

**FILED / RECEIVED**

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 09/21/09

Signature: Nicholas P. Howard

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

(3)

To: whom it may concern:
From: Nick Howard

I received two proof of claim forms for some reason and therefore filled them both out.

(4)

Claim against Lehman Bros Holdings Inc     for N. HOWARD

A. 1. Unvested RSUs / Deferred Compensation Item

    Total Award Units Outstanding    44,700

    Grant Value of Award Units    $1,920,000

2. Unvested Stock Options    12,000

    Grant Value of Stock Option awards    $160,000

Total value of stock and options grants    $2,080,000

B. 1. Unpaid cash Commissions that were accrued in 2008    $362,226.03

C. 1. Derivative Contract.    $55,380.00
    Structured Investment with Lehman
    52520W143 is the Security Identifier
    213 units at $260 on July 24, 2007

D. 1. Lehman Brothers MLP Opportunity    $150,000.00
    Capital Partners L.P.
    Product Reference LBMLP;
    [Held in Lehman London liquidation]
    in Lehman Prime Services London.

※. Long Term Medical Benefits    $600,000.00
Age 50 plus 16 years of service
qualified me for this benefit.
20 x $30,000 a year.
[This I have not been able to clarify so I have been advised to submit this estimate by EPIQ personnel.]

Grand Total.        $3,247,606.03

ersonal Award Summary                                                                        Page 1 of

# EHMAN BROTHERS | LehmanLive

ata as of August 31, 2008                                                                    10051851 Nicholas P. Howar

## AWARD UNITS' OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested | Units Outstanding | Market Value at $0.142 |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/01/2008 | July 2008 IR RSU | $20.9600 | $109,303 | 11/30/2011 | 5,214.86 | 65.91 | 0.00 | 0.00 | 5,280.77 | $75( |
| 2/07/2007 | 2007 IR MD Principal | $44.4300 | $512,860 | 11/30/2012 | 11,543.11 | 237.76 | 0.00 | 0.00 | 11,780.87 | $1,67 |
| 2/07/2007 | 2007 IR MD Discount | $44.4300 | $219,797 | 11/30/2012 | 4,947.05 | 101.85 | 0.00 | 0.00 | 5,048.90 | $71 |
| 2/08/2006 | 2006 IR MD Principal | $53.9200 | $456,035 | 11/30/2011 | 8,457.63 | 250.32 | 0.00 | 0.00 | 8,707.95 | $1,23 |
| 2/08/2006 | 2006 IR MD Discount | $53.9200 | $195,444 | 11/30/2011 | 3,624.70 | 107.30 | 0.00 | 0.00 | 3,732.00 | $53( |
| 1/30/2005 | 2005 IR MD Principal | $44.1000 | $202,251 | 11/30/2010 | 4,586.20 | 168.34 | 0.00 | 0.00 | 4,754.54 | $67! |
| 1/30/2005 | 2005 IR MD Discount | $44.1000 | $86,679 | 11/30/2010 | 1,965.52 | 72.15 | 0.00 | 0.00 | 2,037.67 | $28! |
| 2/09/2004 | 2004 IR MD Principal | $30.0300 | $136,703 | 11/30/2009 | 4,552.22 | 204.46 | 0.00 | 2,378.33 | 4,756.68 | $67 |
| 2/09/2004 | 2004 IR MD Discount | $30.0300 | $58,587 | 11/30/2009 | 1,950.94 | 87.55 | 0.00 | 0.00 | 2,038.49 | $28 |
| 2/10/2003 | 2003 IR MD Principal | $24.9850 | $3,267 | 11/30/2008 | 130.76 | 6.90 | 0.00 | 68.83 | 137.66 | $2 |
| 2/10/2003 | 2003 IR MD Discount | $24.9850 | $1,400 | 11/30/2008 | 56.04 | 2.90 | 0.00 | 0.00 | 58.94 | $ |
| Total |  |  | $1,982,326 |  | 47,029.03 | 1,305.44 | 0.00 | 2,447.16 | 48,334.47 | $6,86 |

## STOCK OPTIONS OUTSTANDING

| Grant Date | Description | Exercise Price | Black-Scholes Grant Price | Expiration Date | Black-Scholes Grant Value | Options Granted | Options Exercised | Options Exercisable | Options Outstanding | Intrinsic Value at $0.142 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/30/2005 | 2005 IR MD Options | $63.0000 | $16.4350 | 11/29/2015 | $96,276 | 5,858 | 0 | 0 | 5,858 | $( |
| 2/09/2004 | 2004 IR MD Options | $42.9000 | $10.4750 | 11/29/2014 | $65,071 | 6,212 | 0 | 2,174 | 6,212 | $( |
| 2/10/2003 | 2003 IR MD Options | $35.6950 | $9.7250 | 11/29/2013 | $1,537 | 158 | 0 | 54 | 158 | $( |
| 2/11/2002 | 2002 MD Options | $27.2100 | $9.1250 | 11/29/2012 | $130,998 | 14,356 | 10,768 | 3,588 | 3,588 | $( |
| 2/03/2001 | December 2001 MD Options | $31.7000 | $10.5100 | 11/29/2011 | $274,710 | 26,138 | 17,148 | 8,990 | 8,990 | $( |
| 9/20/2001 | September 2001 MD Options | $23.3200 | $7.1650 | 09/19/2011 | $182,507 | 25,472 | 20,472 | 5,000 | 5,000 | $( |
| Total |  |  |  |  | $751,099 | 78,194 | 48,388 | 19,806 | 29,806 | $( |
| Total Equity |  |  |  |  |  |  |  |  |  | $6,86: |

Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock
otions is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise
ice. Please note that the current market price is based on a delayed 20 minutes feed from Reuters. (03:59 PM EDT on September 4 2009)

Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock
wards, as applicable.
Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable
an documents.

ttp://my.lehman.com/HRS/equityaward/westinghouse.do              9/7/200'

Compensation Statement

Name: 10051851 - NICHOLAS HOWARD
From: 12/1/2007 To: 12/31/2008

| | Year To Date | Dec-08 | Nov-08 | Oct-08 | Sep-08 | Aug-08 | Jul-08 | Jun-08 | May-08 | Apr-08 | Mar-08 | Feb-08 | Jan-08 | Dec-07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Production | 10,780,102.10 | 432,113.74 | 29,768.17 | 146,722.51 | 319,972.97 | 1,236,846.66 | 1,151,853.09 | 825,013.27 | 1,026,542.01 | 831,340.24 | 969,642.40 | 2,038,075.40 | 1,015,567.56 | 719,628.17 |
| Net Production | 1,402,072.06 | 58,057.01 | 3,493.35 | 24,766.55 | 47,071.21 | 148,452.98 | 147,065.43 | 105,365.92 | 152,408.82 | 121,165.13 | 127,998.21 | 228,561.56 | 138,630.51 | 98,697.18 |
| Average Rate (%) | 13.03 | 13.44 | 13.05 | 16.88 | 14.71 | 12 | 12.77 | 12.77 | 14.85 | 14.57 | 12.93 | 11.21 | 13.65 | 13.71 |
| Prior Months -Deficit/Overage | -175,803.55 | -29,208.97 | 0 | -945.87 | -46,503.29 | 0 | 0 | 0 | 0 | -0.01 | 0 | 0 | -0.01 | 0 |
| Adj to Net Production | 0 | -750 | 0 | 0 | -1,513.78 | -29,637.00 | -39,779.01 | -19,019.35 | -23,979.10 | -18,883.44 | -28,046.12 | -6,438.73 | -5,142.73 | -4,814.26 |
| Monthly Payout Balance | 0 | 29,098.05 | 3,493.35 | 23,840.68 | -945.87 | 119,815.98 | 107,307.42 | 86,396.57 | 128,507.72 | 102,281.68 | 101,152.09 | 222,122.83 | 133,657.69 | 93,882.89 |
| Draw Amount | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Sales Compensation | 1,151,557.14 | 29,098.05 | 3,493.35 | 23,840.68 | 0 | 119,815.98 | 107,307.42 | 86,396.57 | 128,507.72 | 102,281.68 | 101,152.09 | 222,122.83 | 133,657.69 | 93,882.89 |
| Cash Commissions | 789,331.11 | 29,098.05 | 3,493.35 | 23,840.68 | 0 | 80,553.14 | 74,649.10 | 63,320.47 | 84,150.52 | 75,548.36 | 75,177.86 | 118,086.10 | 87,100.65 | 63,962.68 |
| Equity Accrual Calculated | 362,226.03 | 0 | 0 | 0 | 0 | 39,262.84 | 32,658.32 | 17,046.10 | 44,357.18 | 26,733.31 | 25,974.20 | 104,036.72 | 46,567.20 | 25,570.17 |
| Recorded Total Sales Compensation | 1,228,269.41 | 29,098.05 | 31,702.32 | 23,840.68 | 0 | 166,319.27 | 107,307.42 | 86,398.57 | 128,507.72 | 102,281.68 | 101,152.09 | 222,122.83 | 133,657.69 | 93,882.90 |
| -Deficit/Overage | 0 | -29,208.97 | 0 | 0 | -945.87 | -46,503.29 | 0 | 0 | 0 | 0 | -0.01 | 0 | 0 | -0.01 |

7

 **BARCLAYS WEALTH**

Log Out | Contact Us

HOME    ACCOUNT    MY PROFILE    BARCLAYS CAPITAL

Summary    HOLDINGS    Activity    Gains/Losses    Margin Balances    Statements & Reports

# HOLDINGS – DETAILS

Account(s):        834-23469 - HOWARD NICHOLAS
Valuation Currency:    USD United States Dollar

[ SUBMIT ]

Showing results for account 834-23469 - HOWARD NICHOLAS; valuation currency USD; holdings are as of end of business day 18 Sep 2009

* Includes securities for which prices are not readily available or other factors that prevent the pricing of these securities. Market Values for thes computed and the total equity in your account does not reflect the long or short market value (if any) of those securities.

**Private Equity**

| Security | Total Capital Commitment/ Remaining Commitment | Called Capital/ Recallable Distributions | Total Contributions/ Total Distributions | Estimated Value | Value in Excess of Net Contributions | Pending Cash | Trading Currency |
|---|---|---|---|---|---|---|---|
| Lehman Brothers Capital Partners III, L.P. | | | | | | | |
| Product Ref: CAP3 | 25,000.00 | 19,077.65 | 19,077.65 | 11,342.00 | 405,660.43 | | USD |
| Closing Date: 21 Dec 1995 | | | 413,596.08 | | | | |
| Leverage Factor: 8:0 | | | | | | | |
| ⊞ ACTIVITY | | | | | | | |
| ⊞ HISTORY | | | | | | | |
| Lehman Brothers Capital Partners IV, L.P. | | | | | | | |
| Product Ref: CAP4 [20] | 15,000.00 | 11,874.00 | 11,874.00 | 2,804.17 | 11,261.10 | | USD |
| Closing Date: 21 Oct 1997 | | | 20,350.93 | | | | |
| Lehman Brothers Communications Capital Partners I, L.P. | | | | | | | |
| Product Ref: CCAP1 [22] | 75,000.00 | 18,750.00 | 18,750.00 | 27.09 | (5,668.91) | | USD |
| Closing Date: 31 Mar 2000 | | | 13,054.00 | | | | |
| ⊞ ACTIVITY | | | | | | | |
| ⊞ HISTORY | | | | | | | |
| Lehman Brothers MLP Opportunity Capital Partners L.P. | | | | | | | |
| Product Ref: LBMLP | 150,000.00 | 150,000.00 | 150,000.00 | 24 | (150,000.00) | | USD |
| Closing Date: 31 May 2007 | | | | | | | |
| ⊞ ACTIVITY | | | | | | | |
| ⊞ HISTORY | | | | | | | |
| **Total in Private Equity USD** | | | | 261,820.72 | | | |



Holdings - Details                                                                                                                 Page 1 of 


**BARCLAYS WEALTH**                                                                                                       Log Out | Contact Us

HOME   ACCOUNT   MY PROFILE   BARCLAYS CAPITAL

Summary   HOLDINGS   Activity   Gains/Losses   Margin Balances   Statements & Reports

# HOLDINGS - DETAILS

Account(s):              834-23469 - HOWARD NICHOLAS
Valuation Currency:      USD United States Dollar

[SUBMIT]

Showing results for account 834-23469 - HOWARD NICHOLAS; valuation currency USD; holdings are as of end of business day 18 Sep 2009

\* Includes securities for which prices are not readily available or other factors that prevent the pricing of these securities. Market Values for thes computed and the total equity in your account does not reflect the long or short market value (if any) of those securities.

**Private Equity**

Lehman Brothers Capital Partners III, L.P.
Product Ref: CAP3       25,000.00     19,077.65     19,077.65     11,342.00     405,860.43     USD
Closing Date: 21 Dec 1995                            413,596.08

Leverage Factor: 8:0
⊞ ACTIVITY
⊞ HISTORY

Lehman Brothers Capital Partners IV, L.P.
Product Ref: CAP4 [20]  15,000.00     11,674.00     11,674.00     2,804.17      11,281.10      USD
Closing Date: 21 Oct 1997                            20,350.93

| Security ▲ | Total Capital Commitment/ Remaining Commitment | Called Capital[B]/ Recallable Distributions | Total Contributions/ Total Distributions | Estimated Value | Value in Excess of Net Contributions | Pending Cash[E] | Trading Currency | Com |
|---|---|---|---|---|---|---|---|---|

Lehman Brothers Communications Capital Partners I, L.P.
Product Ref: CCAP1 [22]  75,000.00    16,750.00     16,750.00     27.09         (5,666.91)                    USD
Closing Date: 31 Mar 2000                            13,054.00

⊞ ACTIVITY
⊞ HISTORY

Lehman Brothers MLP Opportunity Capital Partners L.P.
Product Ref: LBMLP      150,000.00    150,000.00    150,000.00    24            (150,000.00)                  USD
Closing Date: 31 May 2007

⊞ ACTIVITY
⊞ HISTORY

**Total in Private Equity USD**                                              261,820.72

(9)

https://clientaccess.barclayswealthamericas.com/CCR/laa/listHoldingDetails.do?isFromHoldingDetailsPage...   9/21/200

loldings . . Page 11 of 1

| | | | | | |
|---|---|---|---|---|---|
| Index Tracking Stocks | GLD | SPDR GOLD TR GOLD SHS | 300.000 | 98.67 18 Sep 2009 | 29,601.00 |
| Structured Investment | 52520W143 | WTS LEHMAN BROS HLDGS INC CALL WT LKD DE SHAW OCULUS FD ACCD INVS | 213.000 | Unpriced* | |

## Howard, Nicholas: Equities Sales (NYK)

Structured Investment <u>52520W143</u> WTS LEHMAN BROS HLDGS INC CALL WT LKD DE SHAW OCULUS FD ACCD INVS <u>213.000</u> Unpriced* 0.00

*Nicholas P. Howard*
Managing Director
**Barclays Capital**
Institutional Client Group
Global Equity Sales
745 7th Avenue
New York, NY 10019
212-526-6789 *(phone)*
212-520-0231 *(fax)*
646-262-7204 *(cell)*



**HAND DELIVERY**

RECEIVED BY

FILED / RECEIVED
SEP 2 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

DATE

11:17
TIME

Nick Hound

(12)