Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555(SCC)

4

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    LEHMAN BROTHERS HOLDINGS INC.,

9                 Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                 U.S. Bankruptcy Court

13                 One Bowling Green

14                 New York, New York

15

16

17                 March 27, 2014

18                 9:08 AM

19

20

21

22   B E F O R E :

23   HON SHELLEY C. CHAPMAN

24   U.S. BANKRUPTCY JUDGE

25

Page 2

1    Hearing re:  Pre-Trial Conference for Evidentiary Hearing

2    Scheduled for April 1, 2, and 3.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorney for Lehman LBHI

4         1300 Eye Street NW, Suite 900

5         Washington, DC 20005-3314

6

7    BY:  RALPH I. MILLER, ESQ.

8

9    WEIL GOTSHAL & MANGES LLP

10        Attorneys for Lehman LBHI

11        767 Fifth Avenue

12        New York, NY 10153-0119

13

14   BY:  DORON P. KENTER, ESQ.

15        DENISE ALVAREZ, ESQ.

16        TERESA BRADY, ESQ.

17

18   KAPLAN LANDAU LLP

19        Attorney for Claimants

20        1065 Avenue of the Americas

21        27th Floor

22        New York, NY 10018

23

24   BY:  EUGENE NEAL KAPLAN, ESQ.

25

Page 4

1    RICH MICHAELSON MAGALIFF MOSER, LLP

2         Attorney for Claimants

3         340 Madison Avenue

4         19th Floor

5         New York, NY 10173

6

7    BY:  ROBERT N. MICHAELSON, ESQ.

8

9    LAW OFFICES OF LISA M. SOLOMON

10        Attorney for Compensation Claimants

11        305 Madison Avenue

12        Suite 4700

13        New York, NY 10165

14

15   BY:  LISA M. SOLOMON, ESQ.

16

17   DAY PITNEY LLP

18        Attorney for Fabio Liotti

19        One International Plaza

20        Boston, MA 02110-3179

21

22   BY:  DANIEL J. CARRAGHER, ESQ.

23

24

25

1   STAMELL & SCHAGER, LLP

2        Attorney for Claimants

3        One Liberty Plaza, 35th Floor

4        New York, NY 10006-1404

5

6   BY:   RICHARD J. SCHAGER, JR., ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

```
 1                    P R O C E E D I N G S

 2             THE CLERK:  All rise.

 3             THE COURT:  Good morning, please have a seat.

 4             All right, thank you for coming in on the early

 5     side today to accommodate my schedule.  All right, who'd

 6     like to start?

 7             MR. MILLER:  Your Honor, if I may for Lehman

 8     Brothers Holdings Inc.

 9             THE COURT:  Sure.  Yes, please.

10             MR. MILLER:  Good morning, Your Honor, may it

11     please the Court, I'm Ralph Miller with Weil, Gotshal &

12     Manges here for the plan administrator, Lehman Brothers

13     Holdings Inc.  With me at counsel table are Tom Hummell

14     (ph), who's the co-general counsel of LBHI, and Denise

15     Alvarez, Teresa Brady, and Doron Kenter from Weil, Gotshal.

16             THE COURT:  Okay.

17             MR. MILLER:  As Your Honor knows this is a

18     pretrial conference to prepare for next week's hearing on a

19     series of objections in which the sole issue is that LBHI

20     has moved to classify claims based on restricted stock units

21     and contingent stock awards as equity under its Chapter 11

22     plan.

23             Originally there were 3,738 proofs of claims based

24     on bonus or commission compensation that was either paid or

25     due to be paid in stock units or stock awards, but over
```

Page 7

1      3,500 of those have already been classified as equity

2      because the claimant stopped pursuing their claim.  There

3      are about 225 claims left for 213 claimants --

4                  THE COURT:  Right.

5                  MR. MILLER:  -- that there going to be considered

6      next week.

7                  At the first hearing of this group of objections

8      Judge Peck indicated he would allow these claimants to make

9      a full record, and about 100 of those claimants have pursued

10     over a year of discovery.

11                 Now LBHI has worked with the claimants --

12                 THE COURT:  Right.

13                 MR. MILLER:  -- and their lawyers to simplify the

14     upcoming hearing through stipulations, agreements, and

15     exhibits.

16                 THE COURT:  Right.

17                 MR. MILLER:  For example, we have a 20-page

18     stipulation with 21 exhibits attached to it and some other

19     stipulations that were coming in.  As a result of these

20     efforts --

21                 THE COURT:  So let me -- so there are more

22     stipulations coming in?  Because I've read -- I haven't read

23     the joint appendix or the exhibit binders, obviously in

24     full, but I've been studying the stipulation and the

25     procedures and I've read the memoranda of law and I had some

Page 8

1    -- I have some questions about -- largely about the conduct

2    of the hearing.

3            MR. MILLER:  All right.  Well, and Your Honor,

4    I'll try to address some of those.

5            THE COURT:  Okay.

6            MR. MILLER:  But let me respond on what those

7    stipulations are.  There are some stipulations that

8    essentially are admitting all the exhibits subject to some

9    relevance objections.

10           THE COURT:  Okay.

11           MR. MILLER:  So they're not substantive

12   stipulations --

13           THE COURT:  Okay.

14           MR. MILLER:  -- like the one that has facts in

15   them.

16           THE COURT:  Got it.

17           MR. MILLER:  I believe that's correct.

18           THE COURT:  Okay.

19           MR. MILLER:  Right?  And we do have -- we have

20   some declarations that have just been proposed that we're

21   working on getting admitted, we think there may be some

22   relevance objections left to portions of those, but we think

23   that in context it'll be a lot easier to deal with those in

24   the hearing --

25           THE COURT:  Okay.

Page 9

```
 1              MR. MILLER:  -- than to try to explain to context

 2   to you --

 3              THE COURT:  That answers that yes.

 4              MR. MILLER:  -- today.

 5              THE COURT:  Okay.

 6              MR. MILLER:  So as far as the hearing is

 7   concerned, Your Honor, the Court, as you know, had entered a

 8   hearing procedures order --

 9              THE COURT:  Right.

10              MR. MILLER:  -- it provided for up to three days

11   of hearings, if needed.  It is --

12              THE COURT:  Right.

13              MR. MILLER:  -- in fairness it's always been the

14   position of LBHI that an evidentiary hearing is not needed

15   and that any material facts can be derived from the equity

16   awards program documents.

17              THE COURT:  Right.

18              MR. MILLER:  So --

19              THE COURT:  So let's go to the organization of the

20   evidentiary hearing, which is paragraph 17 of the

21   stipulation.

22              MR. MILLER:  Yes, Your Honor.

23              THE COURT:  So it says:

24              "The first day the hearing will be reserved for

25   LBHI and the represented participants to present their
```

1  cases.  LBHI will open, have three hours, including opening

2  statements and direct and cross-examinations."

3           So I don't -- my first question is -- so then I

4  look at the witness lists and there is no live direct

5  testimony in LBHI's case; is that correct?

6           MR. MILLER:  That's correct, Your Honor.

7           THE COURT:  Okay.  Then -- so you'll be indicating

8  -- you'll be proceeding by way of proffer or --

9           MR. MILLER:  That's correct, Your Honor.

10          THE COURT:  Okay.

11          MR. MILLER:  And we hope to give some time back to

12  the Court.

13          THE COURT:  Okay.  All right.  Then it says, "And

14  cross-examinations," and that's where I get lost.  Because

15  in a typical case then the other side would cross-examine

16  your witnesses.  Is that what that refers to?

17          MR. MILLER:  I will ask for clarification.  I

18  think that's correct, but I think the intent was that that

19  three-hour block was going to have enough time built into it

20  so that if we did offer a live witness a reasonable length

21  of cross-examination could be included and the Court could

22  plan on the three-hour block.

23          THE COURT:  Okay.  So that three-hour block is

24  your direct case, right?

25          MR. MILLER:  Or less, Your Honor, we hope.

Page 11

```
 1              THE COURT:  Okay.  But then in terms of the cross-
 2   examination, since you're not going have a live witness, is
 3   that the opportunity for any of the represented claimants or
 4   the pro se claimants to cross-examine your declarant?
 5              MR. MILLER:  Well, there have been no objections
 6   to our declarations, Your Honor, and the only declarant we
 7   have that actually -- I have some document declarations and
 8   then we have Mr. Twosto (ph), who has offered some numeric
 9   testimony.  There was a 30(b)(6) deposition.
10              THE COURT:  Right.  Right.
11              MR. MILLER:  Parts of that have been designated by
12   both parties --
13              THE COURT:  Okay.
14              MR. MILLER:  -- no one has asked to have that
15   person present.  So we don't believe there's going to be
16   anything to --
17              THE COURT:  Okay.
18              MR. MILLER:  -- cross-examine.
19              THE COURT:  Well why don't I ask -- the
20   represented participants are all here by counsel, right?
21              MR. KAPLAN:  Yes, Your Honor.
22              THE COURT:  All right.  So does anyone intend to
23   cross -- to conduct any cross-examination during LBHI's case
24   in chief?
25              MR. KAPLAN:  Eugene Kaplan, I represent the
```

Page 12

1    Neuberger claimants.

2              THE COURT:  Yes.

3              MR. KAPLAN:  The only declaration that was offered

4    with respect to my clients is the Twosto declaration which

5    has numbers in it.  I think the numbers are correct, so I

6    don't have -- I don't intend --

7              THE COURT:  Okay.

8              MR. KAPLAN:  -- to cross-examine him, and I don't

9    intend to cross-examine Mr. Miller on the documents that

10   were attached to his declaration.  So no, I don't see any

11   cross-examination.

12             THE COURT:  Okay.  Okay.

13             MR. KAPLAN:  Anybody else?

14             THE COURT:  And was it contemplated that the --

15   was it contemplated that the -- and I don't know if any of

16   the pro se claimants are here or on the phone -- but was it

17   contemplated that the pro se claimants would conduct any

18   cross-examination?

19             MR. MILLER:  I think it was not, Your Honor, but

20   there is a time reserved in the second day --

21             THE COURT:  Yes.

22             MR. MILLER:  -- for the pro se claimants to --

23             THE COURT:  It says --

24             MR. MILLER:  -- do what they wish to do.  We have

25   noticed the pro se claimants with the various orders and

1   procedures --

2           THE COURT:  Right.

3           MR. MILLER:  -- and other things and no one has --

4           THE COURT:  Okay.

5           MR. MILLER:  -- has made any request that we know

6   of for cross-examination.  I see someone is rising --

7           THE COURT:  Okay.

8           MR. MILLER:  -- to speak.

9           THE COURT:  Yes, sir?

10          MR. CARRAGHER:  Your Honor, Daniel Carragher form

11  the firm of Day Pitney.  I represent a claimant, Fabio

12  Liotti --

13          THE COURT:  Right.

14          MR. CARRAGHER:  -- that's not part of the

15  represented parties group, although he's not pro se, so I'm

16  representing him, but I'm not -- technically not part of

17  this coordinating group.

18          THE COURT:  I'm sorry.  Is he a --

19          MR. CARRAGHER:  So I would be --

20          THE COURT:  -- he is represented pro se, is that

21  what you're saying?

22          UNIDENTIFIED SPEAKER:  Under the terms of the

23  order, yes, Your Honor, I think that's correct.

24          MR. CARRAGHER:  They chose the term represented

25  parties, it wasn't my choice.  Yes, but he is a claimant

Page 14

1    with --

2            THE COURT:  Okay.  I -- now I'm completely

3    confused.  I had thought that you -- you're a signatory to

4    this, so I had thought that --

5            MR. CARRAGHER:  I'm not.

6            THE COURT:  -- you're a represented -- are you not

7    a signatory to this?

8            MR. CARRAGHER:  No, I'm not, Your Honor.  I have

9    coordinated with this group off and on over the last couple

10   of years --

11           THE COURT:  Okay.

12           MR. CARRAGHER:  -- and I'm generally in agreement

13   with them --

14           THE COURT:  Okay.

15           MR. CARRAGHER:  -- although we don't have all of

16   the same issues.

17           THE COURT:  All right.  Are you going to conduct

18   any cross-examination?

19           MR. CARRAGHER:  No, that's what I wanted to --

20           THE COURT:  Okay.

21           MR. CARRAGHER:  -- rise to say, Your Honor.

22           THE COURT:  Fine.  Okay.  So that takes care of

23   day one.  I'm sorry, that takes care of the first three

24   hours of day one.

25           Then let's talk about what the represented

Page 15

1    participants intend to do during their three hours on day

2    one.

3              MR. KAPLAN:  If I might, Your Honor.

4              THE COURT:  Mr. Miller, you can stay there.

5              MR. KAPLAN:  With respect to the Neuberger

6    claimants --

7              THE COURT:  Right.

8              MR. KAPLAN:  -- I intend to make an opening

9    statement.

10             THE COURT:  Okay.

11             MR. KAPLAN:  We I think have supplemental

12   declarations with -- with Your Honor's permission, which we

13   will file that will encompass the direct testimony of the

14   Neuberger witnesses.

15             THE COURT:  Okay.

16             MR. KAPLAN:  I just circulated them last night, so

17   there will be no -- I don't think there will be any need for

18   any direct testimony by the Neuberger witnesses.  We have

19   agreed to put in, subject to objections as to relevance or

20   other -- not -- all of the Neuberger exhibits have been

21   stipulated to be authentic, the issue whether they are

22   received in evidence we will debate at the hearing if there

23   are any issues.

24             THE COURT:  Okay.

25             MR. KAPLAN:  So my sense is there wouldn't be any

Page 16

1    direct --

2                 THE COURT:  Okay.

3                 MR. KAPLAN:  -- testimony by the Neuberger

4    witnesses.

5                 Mr. Miller has indicated that Lehman may --

6    reserves the right to cross-examine those witnesses.  They

7    will let us know some time during our case.  And if they in

8    fact cross-examine Mr. Ramolo (ph), who is one of the

9    declarants, I would ask for leave to present Christian

10   Reynolds (ph), who's another of the claimants.

11                We haven't given -- we didn't give notice because

12   we didn't know that Mr. Ramolo was going to be cross-

13   examined.  Mr. Reynolds could testify similarly to

14   Mr. Ramolo.  He's a claimant, he's a managing director of

15   Neuberger, and his testimony would be pretty much identical

16   to that of Mr. Ramolo.  But if they intend to cross-examine

17   Mr. Ramolo I would like to call him in rebuttal for that.

18                THE COURT:  Okay.  So here -- now we get to the

19   part that I don't understand, which is that the witness list

20   -- there's a list of compensation claimants rebuttal witness

21   list.  When -- so in a normal case there would be case in

22   chief, there would be defense case, and then there would be

23   a rebuttal case.  Where -- where is the rebuttal case

24   happening in this schedule?

25                MR. KAPLAN:  It's --

1           THE COURT:  What is that --

2           MR. KAPLAN:  -- it's kind of -- it's kind of up in

3    the air, but I think it's all within the six hours that --

4    that we have on the first day.  The three hours and the

5    three hours.  As best as I can tell it all comes in in that

6    first days testimony.

7           THE COURT:  Okay.

8           MR. KAPLAN:  I mean I guess if we --

9           THE COURT:  So what you're -- what you're calling

10   a rebuttal witness though is what I would just call a

11   witness.

12          MR. KAPLAN:  Well -- well, yeah, he's a witness,

13   except --

14          THE COURT:  Right?

15          MR. KAPLAN:  -- except that I wouldn't -- I

16   wouldn't call him unless -- unless they -- unless they --

17          THE COURT:  Right.  But --

18          MR. KAPLAN:  -- decide to cross-examine Ramolo.

19   If they do yes, then I'll -- I would like to call Christian

20   Reynolds, but if they decide not to question Ramolo then I

21   don't think there's need to duplicate the testimony and so

22   on.

23          THE COURT:  Okay.  But let me -- I'm just trying

24   to in my own simplistic way fit this into a more -- a less

25   complicated procedurally as --

```
 1              MR. KAPLAN:  Yeah.

 2              THE COURT:  -- complicated case, which is that so

 3     there's a case in chief and then when the defense stands up

 4     that's not a rebuttal case, that's --

 5              MR. KAPLAN:  That's our case.

 6              THE COURT:  -- that's your case.

 7              MR. KAPLAN:  Right.

 8              THE COURT:  Right?  A rebuttal case is what the

 9     plaintiff --

10              MR. KAPLAN:  Right.

11              THE COURT:  -- puts on in response to the defense

12     case.

13              MR. KAPLAN:  Right.

14              THE COURT:  So it's the word rebuttal that threw

15     me.

16              MR. KAPLAN:  Forget -- forget the word rebuttal.

17              THE COURT:  Very good.  Okay.

18              MR. KAPLAN:  We do not intend -- the Neuberger

19     claimants do not intend to call any witnesses --

20              THE COURT:  Okay.

21              MR. KAPLAN:  -- on their direct case if Your Honor

22     grants us leave to file the supplemental declarations.

23              THE COURT:  I got it.

24              MR. KAPLAN:  If however Mr. Miller and Lehman

25     decide to cross-examine Mr. Ramolo we would ask for leave to
```

Page 19

1    add to our witness list Christian Reynolds, who we didn't

2    put on the list initially, who is also a managing director,

3    also a claimant, who could testify as we indicated in our

4    letter to -- to Mr. Miller last night similarly to

5    Mr. Ramolo about the entreaties he received from Ms. Steiger

6    (ph) to sign up at the time of the merger between Neuberger

7    and Lehman.

8              THE COURT:  Okay.  All right.  So you two still

9    are going to be talking about that.

10             MR. KAPLAN:  Yeah.

11             MR. MILLER:  Yes, Your Honor.  And to demystify

12   this just a little bit so we don't have to talk around it,

13   this is all about an economic duress defense --

14             THE COURT:  Right.

15             MR. MILLER:  -- that is being asserted.

16             THE COURT:  Right.

17             MR. MILLER:  And, for example, part of the LBHI

18   objection is the most recent declaration drafted looks to us

19   like a brief not like a witness declaration.  It has a bunch

20   of legal conclusions in our view.  So I think some of this

21   rebuttal issue may have to do with how much of this the

22   Court actually allows to be heard.  I think that's maybe

23   what rebuttal was meaning -- had to do with, I think that's

24   how this terminology came about.

25             We think that actually what rebuttal means is late

Page 20

1    designated here.  It is a code word for things they've

2    decided to add later.  And so we -- at this point we don't

3    want to restrict the Court's access to a full record, so

4    we're not planning to say to the Court you shouldn't hear

5    it --

6            THE COURT:  Okay.

7            MR. MILLER:  -- (indiscernible - 00:13:46) know

8    it, but we do want to take the position, Your Honor, that we

9    believe this entire duress digression is both irrelevant and

10   unavailable, for example, because it wasn't raised until

11   years later.

12           THE COURT:  Right.  Well, I think that in

13   reviewing all of this it seems as if -- that initially at

14   least Judge Peck was inclined kind of on an across the board

15   basis to deal with these claims as a matter of law, and then

16   it became clear that represented individuals and pro se

17   individuals wanted to have an opportunity to present facts

18   in evidence that brings their particular claims outside the

19   scope of the legal framework that would otherwise seem to

20   apply, is the best way that I could put it, and that this

21   very nuanced procedure was intended to accommodate every

22   single persons' opportunity to have due process and present

23   their case within limits, that due process doesn't mean

24   endless process, it means that process which is due.  And

25   this stipulation now reflects the parties' agreement as to

1    what process is due and what process everyone is going to

2    get, and it's going to happen during those three days next

3    week, right?

4              MR. MILLER:  I think that's a fair summary as our

5    understanding goes, Your Honor.

6              THE COURT:  Right.  Okay.

7              MR. MILLER:  And we're trying hard to cooperate

8    with that process.

9              THE COURT:  Okay.  Okay.  I mean it's impressive.

10   So --

11             MR. KAPLAN:  Yeah, I think we're all trying to

12   streamline this --

13             THE COURT:  Okay.

14             MR. KAPLAN:  -- as best we can and --

15             THE COURT:  The only concern that I have is not so

16   much on day one, and we'll go from 10:00 to 1:00 and we'll

17   take an hour break and then we'll go from 2:00 to 5:00 and

18   that'll be -- that'll be day one.  My concern -- and I

19   guess, Mr. Miller, this is largely directed at you and your

20   colleagues, is the logistics of day two, because we have --

21   chambers has gotten communications that a lot of folks want

22   to testify by phone, appear by phone, et cetera.

23             So just to deal with something purely logistical

24   at the moment we had originally thought that we would

25   conduct this in Judge Lifland's courtroom where I'm in the

Page 22

```
1    middle of conducting another trial.  That courtroom is all

2    wired up with technology for that trial and I am going to be

3    sitting on that trial till late in the day on Monday the

4    31st.  So it's not going to be possible to have the

5    technical people take out that crowds' stuff and put in your

6    stuff in there.  So we're going to direct your folks to come

7    here and set up however you need to set up.

8             MR. MILLER:  If it's any help, Your Honor, we

9    don't have any stuff.

10            THE COURT:  Somebody called and said they had

11   stuff, they had technology that they wanted to set up, so if

12   that's not true great, then we're just going to do it the

13   old fashion way with paper.

14            Sir?

15            MR. SCHAGER:  Sorry, Your Honor, Richard Schager,

16   and it was my firm that called in about the technology, and

17   if the Court prefers to work with paper we're happy to work

18   with paper.

19            Our idea was that for purposes of -- excuse me --

20   examining witnesses and for the Court's convenience there

21   are certain exhibits that might be easily read on screen and

22   would facilitate the hearing.

23            THE COURT:  I am at your -- I mean my rule is I

24   will do whatever the parties want to do to make it easier

25   for them.  I'm happy to work with paper, I'm happy to have
```

Page 23

```
 1    you send in people to wire up to technology.  So we'll do --

 2              MR. SCHAGER:  Okay.

 3              THE COURT:  -- we are at your service.

 4              MR. SCHAGER:  We can work that out then.

 5              THE COURT:  So just decide what you want to do.

 6    If you do want to send people in it's going to have to be

 7    here just because I can't get the other people out of the

 8    other room fast enough --

 9              MR. SCHAGER:  Well, I think --

10              THE COURT:  -- and I frankly didn't know how many

11    people are going to be here during your actual trial.  I

12    don't know, are you going have dozens of people, are you

13    going to have hundreds of people, do you know?  Because we

14    then will set up an overflow room as we do in large cases

15    and that I can do easily.  So in other words if the

16    courtroom is not large enough to hold everybody via screens

17    other people can participate -- you know, can watch from the

18    other room.

19              Does anybody have a notion of if we're talking

20    about dozens or hundreds?

21              MR. SCHAGER:  Your Honor, I don't think we're

22    talking about a large group in the courtroom --

23              THE COURT:  Okay.

24              MR. SCHAGER:  -- but there's one potential hiccup,

25    and you eluded to it already, to our knowledge we're
```

Page 24

1    expecting three pro ses --

2              THE COURT:  Okay.

3              MR. SCHAGER:  -- to offer testimony on Tuesday.

4              THE COURT:  Okay.

5              MR. SCHAGER:  And I know of one or two others who

6    may come to observe.

7              THE COURT:  Okay.

8              MR. SCHAGER:  But they've told me that they were

9    not intending to offer any statements -- sorry I said on

10   Tuesday, I meant on Wednesday --

11             THE COURT:  Okay.

12             MR. SCHAGER:  -- on Wednesday morning.  They might

13   come to observe one or both days, but I -- myself I have not

14   heard from more than half a dozen people who expect to be

15   here on the pro se side --

16             THE COURT:  Okay.

17             MR. SCHAGER:  -- and as far as I know the

18   represented claimants would be a very small group, probably

19   those who are coming to testify.

20             But Your Honor said that you'd been getting calls

21   from -- from other people, and I don't know if pro ses are

22   contacting you without contacting us.

23             I would say pursuant to Judge Peck's order we did

24   reach out and we've tried to facilitate communications, but

25   they may have decided not to communicate through us, they

Page 25

1    may have decided to communicate directly to the Court.

2              THE COURT:  Okay.  Well, I -- I'm prepared for a

3    little bit of bobbing and weaving, so that's -- that's not a

4    problem, and we'll just do our best to keep things flowing

5    smoothly throughout.  There may be some hiccups, but we'll

6    just deal with them as they come.

7              MR. MILLER:  And, Your Honor, in the bobbing and

8    weaving category, we would be prepared to present any short

9    closing that LBHI has hopefully on Wednesday and try to give

10   you back Thursday if this moves rapidly, and think it would

11   be helpful if everyone recognized the possibility that this

12   three-day hearing might -- might be done in two days.  But

13   we're here and we're prepared, and if the Court chooses to

14   extend the time for the pro ses obviously that's going to be

15   the Court's --

16             THE COURT:  Okay.

17             MR. MILLER:  -- discretion, but the great unknown

18   here is that there are over 100 pro se --

19             THE COURT:  Right.

20             MR. MILLER:  -- parties.

21             THE COURT:  We have -- we have set aside the three

22   days, if we can conclude it earlier for the sake of

23   everybody that would be lovely, under normal circumstances I

24   would say let's have a long day, but I didn't get out of

25   here until 9 o'clock last night and I don't know that I have

Page 26

1   another weeks worth of 12-hour days in me to be honest.  So

2   if we have to go to the third day that's fine, but beyond

3   that we're -- you know, it's not -- we're not going to do

4   that.

5          And now in terms of the -- again, in a more

6   traditional kind of a hearing there might be post-trial

7   submissions.  I take it that we're not doing that, that

8   you're going to do -- it was not contemplate and that you're

9   going to do your closings and we're going to close the

10  record and then I'm going to take it under submission.

11         MR. MILLER:  Certainly as far as LBHI is concerned

12  we think that's the efficient way to proceed, Your Honor.

13         THE COURT:  Okay.

14         MR. MILLER:  We think plenty of money has been

15  spent on briefing at this point.

16         THE COURT:  Okay.  All right.

17         Yes, ma'am?

18         MS. SOLOMON:  Your Honor, good morning, Lisa

19  Solomon --

20         THE COURT:  Yes, Ms. Solomon.

21         MS. SOLOMON:  -- on behalf of a group of

22  compensation claimants.

23         With regard to day one on behalf of my clients I

24  am not participating, I am not putting any witnesses on the

25  stand --

Page 27

```
 1              THE COURT:  Okay.

 2              MS. SOLOMON:  -- I think that the declarations

 3     that have been submitted are more than sufficient to carry

 4     the burden of compensation claimants in conjunction with the

 5     memoranda of law that had been submitted.

 6              And I believe that's correct, that with the

 7     initial brief that was submitted and the opposition brief by

 8     both sides that there's no requirement for further briefing

 9     to the Court --

10              THE COURT:  Okay.

11              MS. SOLOMON:  -- on the -- on the trial.

12              THE COURT:  Okay.  I would -- if I had to make a

13     guess, unless day two is very, very short, I would say that

14     we would go to day three for closing because closing is very

15     important to me, it's my time to really engage with counsel

16     and ask questions that I have about the cases and the record

17     that's been presented, and I just think that probably in

18     order to give me the maximum amount of time to be prepared

19     for that and to give you folks the maximum amount of time

20     probably that will be day three.  So I would assume that

21     that's what -- the way it's going to play out.

22              So there have been no motions in limine, correct?

23              MR. MILLER:  Correct, Your Honor.

24              MS. SOLOMON:  Correct.

25              MR. KAPLAN:  Correct.
```

1        THE COURT:  Okay.  And you don't have any pending

2   disputes.

3        MR. MILLER:  Well, we don't think we have pending

4   disputes that we think the Court should consider, Your

5   Honor.  As I say we have some relevance issues that are left

6   open.

7        THE COURT:  Okay.

8        MR. MILLER:  We may be able to resolve them, but

9   they're -- the context is fairly complex and it seems to us

10  it would be -- from LBHI's standpoint if we don't resolve

11  them they will come up in context --

12       THE COURT:  Okay.

13       MR. MILLER:  -- and at that point it will be

14  perfectly clear why LBHI thinks it's not relevant and they

15  think it is relevant --

16       THE COURT:  Okay.

17       MR. MILLER:  -- and I'm sure you will probably say

18  you'll give it whatever weight it deserves would be my guess

19  on how those are going to be resolved.  I can't predict.

20       THE COURT:  It would be a bold prediction.

21       MR. MILLER:  What?

22       THE COURT:  That would be a bold prediction.

23       All right.  So is there anything else that we need

24  to do today?

25       MR. MILLER:  Not as far as LBHI is concerned, Your

Page 29

```
1   Honor.  We look forward to trying to present an efficient

2   matter.

3            And I hope the Court understands, we've said this

4   before, LBHI is not in the business of denying claims, it's

5   in the business of trying to pay those claims that are due,

6   and it particularly wants to have the former employees of

7   the Lehman system, LBHI was the only source of stock, so

8   there are people from all over the Lehman group of companies

9   who are involved, we want them to have their full

10  opportunity to present their case and we want the Court to

11  consider it fully and openly, but we believe that this is a

12  matter that is governed by the law and we are -- we believe

13  we're all obligated to follow the law even though there are

14  certainly sympathy issues and other considerations here.

15           THE COURT:  Understood.

16           MR. MILLER:  So we want a full hearing and we

17  appreciate the cooperation that everyone has shown --

18           THE COURT:  Okay.

19           MR. MILLER:  -- in trying to get it as manageable

20  for the Court as possible.

21           THE COURT:  Okay.  Well it looks good to me and

22  I'm obviously still to a certain extent playing catch up,

23  but I think I have -- I think I understand the way this is

24  supposed to unfold, you've clarified the couple of questions

25  that I had mostly related to the procedure.
```

```
 1                 Is there anything else?

 2                 MS. SOLOMON:  No, Your Honor.

 3                 MR. MILLER:  Not from us, Your Honor.

 4                 THE COURT:  Yes, sir?

 5                 MR. SCHAGER:  One small point, Your Honor --

 6                 THE COURT:  Yes.

 7                 MR. SCHAGER:  -- about additional submissions.

 8                 The Court has in the second brief from the

 9     represented claimants a page that was tacked onto the end

10     that tried to expand the citations that were -- the

11     citations to declarations that were noted in the statement

12     of facts in that brief.  That additional page was submitted,

13     added to the brief with the kind courtesy of Lehman's

14     counsel for which I'm grateful.

15                 It seems to me, Your Honor --

16                 THE COURT:  Is there -- I'm just trying to see

17     which document this is.  This is the --

18                 MR. SCHAGER:  It would have been attached --

19                 THE COURT:  -- memorandum in further opposition?

20                 MR. SCHAGER:  That's correct, Your Honor.

21                 THE COURT:  Okay.

22                 MR. SCHAGER:  And there should be the last page

23     there --

24                 THE COURT:  Yes.

25                 MR. SCHAGER:  -- which is just --
```

1              THE COURT:  Supplemental citations.

2              MR. SCHAGER:  -- supplemental citations.

3              THE COURT:  Okay.

4              MR. SCHAGER:  Those -- that supplement refers to

5    about 15 citations.  I frankly think it would be helpful for

6    the Court to have a little more guidance through the other

7    25 citations who they -- they're not my client so I'm not

8    trying to gain any unfair advantage for myself here, I'm

9    just trying to think of well what would be useful for the

10   Court, and it seems to me that an index citing to the full

11   list of declarations and the relevant paragraphs, which are

12   not the same for each declaration, would be helpful for the

13   Court in terms of going through those declarations and

14   seeing what they're cited for.  That could be a supplemental

15   submission submitted either in advance of the hearing or --

16             THE COURT:  Who would --

17             MR. SCHAGER:  -- after the hearing.

18             THE COURT:  Who would prepare that?

19             MR. SCHAGER:  Represented claimants would prepare

20   it.

21             MS. SOLOMON:  Your Honor?

22             THE COURT:  Yes.

23             MS. SOLOMON:  Mr. Schager has made a request I

24   think on behalf of his clients and not on behalf of all of

25   the represented claimants just for purposes of

Page 32

1    clarification.

2              THE COURT:  Okay.  I'm a little confused.  If he's

3    -- if you're volunteering to do something that no one has an

4    objection to then I don't have an objection to it.  But

5    maybe I'm not understanding what -- what the request is.

6    This is just an index, right?

7              MR. SCHAGER:  Let me try to clarify the request,

8    Your Honor, if I may.

9              It's not adding any new words to the brief, it's

10   just that because of space limitations where we got to

11   writing the brief the declarations were not fully cited.  In

12   my view those facts are very important for the Court and the

13   Court would want to be able to refer to the other

14   declarations that support the statements made in the brief.

15             THE COURT:  But let's just take an example,

16   because I'm not -- I'm not following what you're saying.

17   All right, so page 4, lines 10 and 11.

18        (Pause)

19             THE COURT:  So in other words on page 4 of the

20   brief where in the brief there's a citation to the Virgilio

21   Kasupli (ph) declaration -- I'm -- I -- what you're telling

22   me is that I should also go and look at in addition to

23   looking at the Spiro (ph) and Kasupli to these other

24   declarations, these other paragraphs.  That's what this page

25   does?

Page 33

```
 1              MR. SCHAGER:  That's what that page does that's in

 2    the brief right now, Your Honor.

 3              THE COURT:  So you make the statement, "Claimants

 4    also assert" -- there's a typo -- "that did not consider

 5    themselves as stockholders based on their grants of RSU."

 6    So you want to cite me to everybody else's declaration where

 7    they make a similar statement.

 8              MR. SCHAGER:  Well in a nutshell, Your Honor, yes,

 9    that's correct.  And if I can offer a sentence of --

10              THE COURT:  Well wait, I'm just trying --

11              MR. SCHAGER:  I'm sorry.

12              THE COURT:  -- so you've done that here, now what

13    more do you want to do?

14              MR. SCHAGER:  There are about 40 declarations that

15    are on file.

16              THE COURT:  Right.

17              MR. SCHAGER:  The background for this is what I

18    think is the proper approach here, and that is that, you

19    know, we're not just looking at a statute, we're looking at

20    how statutes apply to facts.

21              THE COURT:  Okay.

22              MR. SCHAGER:  And that's what lawyers are taught

23    to do.

24              THE COURT:  Right.

25              MR. SCHAGER:  And I think it would be relevant for
```

Page 34

1    the Court not to see just the citations to my 15 clients

2    there in that page that we added to the brief, but to the

3    other declarations as well.  I think the Court ought to have

4    -- be able to refer to 40 different people of the 100 or so

5    involved here who submitted these declarations, spent a lot

6    of time working on them, and that's basically their

7    testimony, and I think there ought to be an index to their

8    testimony.

9              THE COURT:  But you're -- but what you're -- but

10   you don't represent them, right, and then you're seeking to

11   characterize what they said in their declarations in your

12   submission.  They may not agree with the way that you

13   characterize what they said.

14             So the purpose of testimony is that -- I mean the

15   purpose of testimony is that it speaks for itself.  So I

16   just don't understand what -- you would sit down and you

17   would go through everybody else's declaration and you would

18   give me citations to portions of their declarations that

19   support your arguments?

20             MR. SCHAGER:  Well, I wouldn't phrase it exactly

21   like that, Your Honor.

22             THE COURT:  Well how would you --

23             MR. SCHAGER:  I had something to do with the

24   development of that form.  My firm basically developed the

25   model for those declarations and it was used by all counsel.

Page 35

1    So I pretty much know where the declarations are.

2              I'm not talking about citing things to support my

3    individual arguments, the declarations were developed to

4    support the statement of facts in the brief, and I thought

5    an index to the declarations would be helpful for the Court

6    to see how the claimants testified in support of the

7    allegations of the brief.  It wouldn't be to add any

8    substantive allegations, it would be to point out that it's

9    not just one person who argues that fact, it's 40.  And I

10   think the volume of that testimony, and we did this without

11   live witnesses to facilitate the hearing, but I think the

12   volume of that testimony is relevant and I think the Court

13   ought to be able to see it in -- see it through an index so

14   the Court doesn't have to itself go through 40 declarations

15   to find the additional support for that point.

16              THE COURT:  Okay.  Mr. Miller?

17              MR. MILLER:  Well, Your Honor, this is outside the

18   hearing procedures order which was designed to get ready and

19   get prepared, and the problem that this raises is the one of

20   optional completeness.  If they're going to now cite a bunch

21   of new material on the eve of the hearing then we're going

22   to have to divert resources to go through and say, yeah, but

23   if you're going to look at that you ought to look at this as

24   well.  And the question is why that adds anything to what's

25   already in the record?

1          It's in the record, it's available to the Court,

2     you can see it --

3          THE COURT:  Well --

4          MR. MILLER:  -- and the fact that a number of

5     people express some subjective view on something and a bunch

6     of other people express the same subjective review -- view

7     in response to a form, which counsel says he prepared,

8     doesn't seem to us like that's a valuable use of our

9     immediate pretrial resources.

10          THE COURT:  That's not -- yeah, that's not -- I

11     mean that's why this is -- that's why this procedure -- the

12     utility of the procedure has its limits.

13          I do not believe that the fact that you are going

14     to be able to add additional citations, which as you just

15     told me the testimony is tailored to meet the argument,

16     that's not what -- that's not what testimony is supposed to

17     be.  Testimony is supposed to be here's what happened to me.

18     It's not supposed to be generated by a legal argument that

19     someone makes.

20          So if in your closing arguments you want to say,

21     and oh by the way, a bunch of other claimants feel the same

22     way and you want to generally point me in that direction

23     that's fine, but I think Mr. Miller is right, if you then

24     formally, I'll say, cherry pick out particular paragraphs

25     then it's an exercise in completeness because then someone

1   else should have an opportunity to say, yes, but in the next

2   paragraph something else was said.  So we're going get into

3   a bottomless pit.

4          Yes, it's a substantial record, but it's quite

5   manageable compared to records that I handle routinely.  So

6   I think you can trust that I will read the record, comb the

7   record, look for every favorable inference from the record.

8          And just to be clear, and I think it -- you know,

9   to pick up on something that Mr. Miller said, I'm very aware

10  that, you know, this is not the usual case in the sense that

11  you folks are representing real people who didn't get what

12  they expected, feel they deserved, who were swept into a

13  situation that few people could predict and no one wanted to

14  occur.

15         So I think you should be assured that I come to

16  this from an impartial standpoint just as you say, I'm going

17  apply the law to the facts and give you a decision, and to

18  the extent that it turns out that one or two or ten people

19  establish a factual record that takes them, you know, from a

20  -- to a different place than the others that's what I'm

21  supposed to do.  That may not happen, I don't know, but I

22  think that we're going to devolve into an unmanageable

23  situation if I agree with your request.

24         I mean you've got the supplemental citations, so

25  we've got, you know, for each of your original citations

```
 1    you've already got in here supplemental citations.  And,

 2    Mr. Miller, I didn't hear you to be complaining about the --

 3            MR. MILLER:  No, Your Honor, we agreed to the

 4    supplemental filing, and you know, we've allowed that, Your

 5    Honor, but that was some time ago and this is the --

 6            THE COURT:  Well --

 7            MR. MILLER:  -- at the end of the week right

 8    before the hearing.

 9            THE COURT:  -- we're at the eve of, so.

10            MR. SCHAGER:  That's fine, Your Honor.

11            THE COURT:  Okay.

12            MR. SCHAGER:  Yeah.  Thank you.

13            THE COURT:  Okay.

14            MS. SOLOMON:  Your Honor, I just wanted to add to

15    that, that -- and I wanted to be clear on this, from my

16    perspective my clients aren't asking anything other than the

17    Court decide this matter on the law --

18            THE COURT:  Sure.

19            MS. SOLOMON:  -- and not on the basis of sympathy.

20            THE COURT:  No, and I completely agree with you,

21    and I was simply reacting to the fact that I think that some

22    folks sometimes feel that there's a predisposition to just

23    do whatever it is, you know, the company or the debtor says.

24    It's a big case, the big guy must be right.  And I'm just

25    stating the fact and the reality that that's not the way it
```

Page 39

```
 1    is here as far as I'm concerned, as far as anybody in this

 2    building is concerned frankly.

 3              So you're absolutely right, you don't -- if the

 4    law is against you and sympathy is with you then --

 5              MS. SOLOMON:  Too bad.

 6              THE COURT:  -- too bad.

 7              MS. SOLOMON:  Right?

 8              THE COURT:  But yes, I will apply the facts to the

 9    law, but I just wanted to express that I'm mindful of the

10    fact that these are, you know, real folks.

11              MS. SOLOMON:  We appreciate that, Your Honor.

12              THE COURT:  That's all.  Okay?

13              MR. MILLER:  We have nothing further, Your Honor.

14              THE COURT:  There's someone behind you with

15    something further.

16              MR. KAPLAN:  I will -- we will get the

17    supplemental declarations of -- we'll obviate the direct of

18    the Neuberger witnesses --

19              THE COURT:  Okay.

20              MR. KAPLAN:  -- down to the Court later today or

21    tomorrow.  We will try and work out whatever objections --

22              THE COURT:  Okay.

23              MR. KAPLAN:  -- there are, if there are -- if --

24              THE COURT:  Okay.

25              MR. KAPLAN:  -- we can't work them out then Your
```

Page 40

1    Honor will deal with them on Tuesday.

2           THE COURT:  Okay.  And then just be in contact

3    with chambers to the extent that you want to work out, you

4    know, the -- the technical.  If you want to go with paper

5    because it's cheaper --

6           MR. KAPLAN:  I'm fine with paper, I don't know

7    what my colleagues want to do.

8           THE COURT:  Whatever -- whatever you want to do.

9           MR. KAPLAN:  Yeah.

10           THE COURT:  Whatever you want to do we'll do.

11    That's the --

12           MR. KAPLAN:  Thank you, Your Honor.

13           THE COURT:  -- clearest way to say it.

14           MR. KAPLAN:  We'll work that out and be in touch

15    with chambers, Your Honor.  Thank you.

16           THE COURT:  Mr. Michaelson is being unusually

17    quiet hiding in the back there.

18           MR. MICHAELSON:  I think my colleagues have done

19    an excellent job of --

20           THE COURT:  How are you today, Mr. Michaelson?

21           MR. MICHAELSON:  I'm doing fine, Your Honor.  I

22    think my colleague did an excellent job of explaining our

23    position.

24           THE COURT:  Okay.

25           MR. MICHAELSON:  I have nothing to add.

Page 41

1              THE COURT:  Okay.  All right, thank you folks very

2    much.  We will see you at 10 o'clock on --

3              UNIDENTIFIED SPEAKER:  Tuesday.

4              THE COURT:  -- Tuesday.

5         (A chorus of thank you)

6              THE COURT:  All right.  Have a good weekend.

7         (Whereupon, these proceedings concluded at 9:47 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 42

1                    C E R T I F I C A T I O N

2

3     I, Dawn South, certify that the foregoing transcript is a

4     true and accurate record of the proceedings.

5

6        Dawn          Digitally signed by Dawn South
                        DN: cn=Dawn South, o, ou,
                        email=digital1@veritext.com,
7        South          c=US
                        Date: 2014.04.01 10:51:14 -04'00'

8

9     AAERT Certified Electronic Transcriber CET**D-408

10

11    Veritext

12    330 Old Country Road

13    Suite 300

14    Mineola, NY 11501

15

16    Date:  April 1, 2014

17

18

19

20

21

22

23

24

25