UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

LEHMAN BROTHERS HOLDINGS INC. *et al.*,

                Debtors.

Chapter 11

Case No. 08-13555 (SCC)

---

### MOTION OF GROUP OF DEFENDANTS TO MODIFY CERTAIN ORDERS AFFECTING LITIGATION OF ADVERSARY PROCEEDING

The undersigned parties (the "Defendants") – all of which are defendants in the adversary proceeding titled *Lehman Bros. Special Financing Inc. v. Bank of America National Association et al.*, Adv. Pro. No. 10-03547 (the "Adversary Proceeding") – are filing this motion (the "Motion") in conjunction with the (i) Response of Group of 77 Defendants to LBSF's Proposed Scheduling Order (the "Defendants' Response") and the Defendants' proposed scheduling order proposed therein (the "Defendants' Proposed Scheduling Order"), attached hereto as Exhibit A, and (ii) the Joinder of Certain Trustee Defendants to the Response of Group of 77 Defendants to LBSF's Proposed Scheduling Order and Limited Objection to the Proposed Scheduling Order, each filed this day in the Adversary Proceeding [Adv. Pro. Docket Nos. 730,731].[1]   The Defendants' Response, among other things, requests modification of existing orders of the Court staying litigation and establishing alternative dispute resolution procedures, to the extent such orders apply to the Adversary Proceeding.  Because the orders that would be modified by the Defendants' Proposed Scheduling Order were entered on the docket of the chapter 11 bankruptcy cases of Lehman Brothers Holdings Inc. and its affiliates, jointly administered under Chapter 11

---

[1] In submitting this Motion, Defendants expressly reserve all rights, including without limitation with respect to personal jurisdiction, and by joining this Motion do not herein submit to personal jurisdiction of this Court.

Case No. 08-13555, the Defendants are filing this Motion in the bankruptcy cases to provide

notice to parties therein of the relief requested in Defendants' Proposed Scheduling Order.

In further support of this Motion, Defendants respectfully state as follows:

1.      On March 24, 2014, Lehman Brothers Special Financing, Inc. ("LBSF")

submitted its Proposed Scheduling Order (the "LBSF Proposed Order") setting forth a proposed

schedule and litigation protocol for the adjudication of the Adversary Proceeding [Adv. Pro.

Docket No. 717].  Defendants have opposed entry of the LBSF Proposed Order, and have

requested that the Court instead enter the Defendants' Proposed Scheduling Order.

2.      The Defendants' Proposed Scheduling Order, among other things, provides that

the stay imposed by the *Order Staying Avoidance Actions and Granting Certain Related Relief*

*Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated

October 20, 2010 [Docket No. 12199] (the "Initial Stay Order"), and subsequent orders of the

Court further extending the stay (together with the Initial Stay Order, the "Stay Orders")[2], will be

lifted with respect to the Adversary Proceeding.  The Defendants' Proposed Scheduling Order

also provides for modifications to the *Alternative Dispute Resolution Procedures Order for*

*Affirmative Claims of Debtors Under Derivative Contracts*, dated September 17, 2009 [Docket

No. 5207], as amended by the *Amended Order Providing for Alternative Dispute Resolution*

*Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special*

*Purpose Vehicle Counterparties*, dated July 18, 2012 [Docket No. 59209] (together, the "ADR

Orders").  Specifically, the Defendants' Proposed Scheduling Order provides that the ADR

Orders, and also the Stay Orders to the extent applicable, shall be modified (i) to allow for any

---

[2] The stay of Adversary Proceeding imposed by the Stay Orders was most recently extended to the later of (i) May 20, 2014 or (ii) thirty (30) days after the date on which the Court enters a scheduling order governing the Adversary Proceeding by that *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January 31, 2014 [Docket No. 42417].

Adversary Proceeding defendants to participate in the Adversary Proceeding without restriction

on such participation, and (ii) to allow for communications among Adversary Proceeding

defendants with respect to the Adversary Proceeding, including with respect to potential

settlement.

3.      Defendants' Proposed Scheduling Order does not modify the ADR Orders with

respect to matters not related to the Adversary Proceeding, and does not modify any defendant's

continuing confidentiality obligations with respect to third parties or the Court or affect the

restrictions pursuant to Federal Rule of Evidence 408 on any party seeking to utilize any

proceedings, discussions, or proposals that occur as part of the alternative dispute resolution

process.

4.      This Motion serves to provide notice of the proposed modifications to the Stay

Orders and ADR Orders, as such orders apply to the Adversary Proceeding, provided for in the

Defendants' Proposed Scheduling Order.  Notice of this Motion is provided to (i) counsel to

Lehman Brothers Holdings Inc. and certain of its affiliates, (ii) the Office of the United States

Trustee for Region 2, (iii) counsel to the Official Committee of Unsecured Creditors, and (iv) all

parties requesting service of notice in these chapter 11 cases pursuant to Rule 2002 of the Federal

Rules of Bankruptcy Procedure.

5.      For the reasons and on the terms set forth in the Defendants' Response,

Defendants respectfully request that the Court enter the Defendants' Proposed Scheduling Order,

which will thereby effect a modification of the Stay Orders and ADR Orders solely with respect

to the Adversary Proceeding, and also further grant Defendants such other related relief as may

be necessary or appropriate.

Dated:  April 14, 2014                              Respectfully Submitted,
New York, New York

NOTEHOLDER DEFENDANTS

| AKIN GUMP STRAUSS HAUER & FELD | BINGHAM MCCUTCHEN LLP |
|---|---|
| /s/ Deborah Newman<br>Deborah Newman<br>djnewman@akingump.com<br>Justin Bell<br>bellj@akingump.com<br>Roxanne Tizravesh<br>rtizravesh@akingump.com<br>Craig Karger<br>ckarger@akingump.com<br>One Bryant Park<br>New York, NY 10036<br>212-872-7481 (phone)<br>212-872-1002 (fax)<br><br>*Attorneys for Daegu Bank Ltd.; Nonghyup Bank, Korea's National Agricultural Cooperative Federation and Shinhan Bank* | /s/ Joshua Dorchak<br>Joshua Dorchak<br>joshua.dorchak@bingham.com<br>399 Park Avenue<br>New York, NY 10022<br>212-705-7784 (phone)<br>212-702-3667 (fax)<br><br>*Attorneys for Continental Insurance Co. of Brentwood Tennessee; Modern Woodmen of America, Inc.; Phoenix Home Life Variable Insurance Co.; Phoenix Life Insurance Co.; Sun Life Assurance Co. of Canada; Sun Life Assurance Co. of Canada (U.S.); Marsh & McLennan Master Retirement Trust; and Ensign Peak Advisors* |
| BRICKER & ECKLER LLP | CHAPMAN AND CUTLER LLP |
| /s/ Quintin F. Lindsmith<br>Quintin F. Lindsmith<br>qlindsmith@bricker.com<br>100 South Third Street<br>Columbus, OH 43215<br>614-227-8802 (phone)<br>614-227-2390 (fax)<br><br>WONG FLEMING, P.C.<br>James Haney<br>jhaney@wongfleming.com<br>821 Alexander Road<br>Suite 150<br>Princeton, NJ 08540<br>609-951-9520 (phone)<br>609-951-0270 (fax)<br><br>*Attorneys for Nationwide Life Insurance Co. and Nationwide Mutual Insurance Co.* | /s/ Franklin H. Top, III<br>Franklin H. Top, III *(pro hac vice)*<br>top@chapman.com<br>Scott A. Lewis<br>slewis@chapman.com<br>111 West Monroe Street<br>Chicago, IL 60603<br>312-845-3000 (phone)<br>312-701-2361 (fax)<br><br>and<br><br>Craig M. Price (CP 9039)<br>cprice@chapman.com<br>1270 Avenue of the Americas<br>New York, NY 10020-1708<br>212-655-2522 (phone)<br>212-655-2523 (fax) |

| | |
|---|---|
| | *Attorneys for U.S. Bank National Association, as Trustee, and U.S. Bank Trust National Association, as Trustee, as applicable, for the transactions commonly known as: Diversey Harbor ABS CDO; KLIO II Funding; KLIO III Funding; Lancer Funding II; Montrose Harbor CDO I; Pinnacle Point Funding; Putnam Structured Product CDO 2002-1; Putnam Structured Product CDO 2003-1; Mariner LDC; Class V Funding III; and Whitehawk Funding, which transactions hold Notes issued by certain Issuer Defendants* |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>/s/ Carmine D. Boccuzzi, Jr.<br>Carmine D. Boccuzzi, Jr.<br>cboccuzzi@cgsh.com<br>Shiwon Choe<br>schoe@cgsh.com<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 (phone)<br>212-225-3999 (fax)<br><br>*Attorneys for Goldman, Sachs & Co. and Goldman Sachs International* | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>/s/ Jeffrey A. Rosenthal<br>Jeffrey A. Rosenthal<br>jrosenthal@cgsh.com<br>James W. Doggett<br>jdoggett@cgsh.com<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 (phone)<br>212-225-3999 (fax)<br><br>*Attorneys for Merrill Lynch, Pierce, Fenner & Smith Incorporated* |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>/s/ Lewis J. Liman<br>Lewis J. Liman<br>lliman@cgsh.com<br>Matthew Gurgel<br>mgurgel@cgsh.com<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 (phone)<br>212-225-3999 (fax)<br><br>*Attorneys for ANZ Nominees Limited and Morgan Financial Limited (f/k/a RBS Morgans Limited)* | DRINKER BIDDLE & REATH LLP<br><br>/s/ James Millar<br>James Millar<br>james.millar@dbr.com<br>1177 Avenue of the Americas, 41st Floor<br>New York, NY 10036-2714<br>212-248-3264 (phone)<br><br>*Attorneys for Union Investment Institutional GmbH* |

| FRESHFIELDS BRUCKHAUS DERINGER US LLP | FROST BROWN TODD LLC |
|---|---|
| /s/ Timothy P. Harkness<br>Timothy P. Harkness<br>timothy.harkness@freshfields.com<br>David Y. Livshiz<br>david.livshiz@freshfields.com<br>Caitrin Una McKiernan<br>caitrin.mckiernan@freshfields.com<br>Michelle Young Suh Park<br>michelle.park@freshfields.com<br>601 Lexington Ave., 31st Floor<br>New York, NY 10022<br>212-277-4000 (phone)<br>212-277-4001 (fax)<br><br>*Attorneys for Shield Securities Limited* | /s/ Nelson Alexander<br>Nelson Alexander<br>nalexander@fbtlaw.com<br>201 North Illinois Street<br>Suite 1900<br>Indianapolis, IN 46204<br>317-237-3800 (phone)<br>317-237-3900 (fax)<br><br>Lindsey Baker<br>lbaker@fbtlaw.com<br>Ronald Eric Gold<br>rgold@fbtlaw.com<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH  45202<br>513-651-6800 (phone)<br>513-651-6981 (fax)<br><br>*Attorneys for Ohio Public Employee Retirement System* |
| HOGAN LOVELLS US LLP | HUNTON & WILLIAMS LLP |
| /s/ Andrew Behrman<br>Andrew Behrman<br>andrew.behrman@hoganlovells.com<br>Dan Lanigan<br>daniel.lanigan@hoganlovells.com<br>Peter Ivanick<br>peter.ivanick@hoganlovells.com<br>875 Third Avenue<br>New York, NY 10022<br>212-918-3000 (phone)<br><br>*Attorneys for SCOR Reinsurance Co.* | /s/ Joseph J. Saltarelli<br>Joseph J. Saltarelli<br>jsaltarelli@hunton.com<br>John Richard Hein<br>jhein@hunton.com<br>200 Park Avenue<br>New York, NY 10166<br>212-309-1091 (phone)<br>212-309-1100 (fax)<br><br>Shannon E. Daily<br>sdaily@hunton.com<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA 23219<br>804-788-8200 (phone)<br>807-788-8218 (fax)<br><br>*Attorneys for Shenandoah Life Insurance Co.* |

| JACKSON WALKER L.L.P. | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |
|---|---|
| /s/ Patty Tomasco<br>Patty Tomasco<br>ptomasco@jw.com<br>Emilio Nicolas<br>enicolas@jw.com<br>100 Congress Avenue<br>Suite 1100<br>Austin, TX 78701<br>512-236-2076 (phone)<br>512-691-4438 (fax)<br><br>*Attorneys for RGA Reinsurance Company* | /s/ Matthew Gold<br>Matthew Gold<br>mgold@kkwc.com<br>Marc Rosen<br>mrosen@kkwc.com<br>551 Fifth Avenue, 18th Floor<br>New York, NY 10176<br>212-880-9827 (phone)<br>212-986-8866 (fax)<br><br>*Attorneys for Elliott International, L.P. and The Liverpool Limited Partnership* |
| LOWENSTEIN SANDLER LLP | MAYER BROWN LLP |
| /s/ Jeffrey Prol<br>Jeffrey Prol<br>jprol@lowenstein.com<br>65 Livingston Ave.<br>Roseland, NJ 07068<br>973-597-2490 (phone)<br>973-597-2491 (fax)<br><br>*Attorneys for Bank Sinopac, f/k/a International Bank of Taipei* | /s/ Steven Wolowitz<br>Steven Wolowitz<br>swolowitz@mayerbrown.com<br>Christopher Houpt<br>choupt@mayerbrown.com<br>Brian Trust<br>btrust@mayerbrown.com<br>1675 Broadway<br>New York, NY 10019<br>212-506-2500 (phone)<br>212-849-5830 (fax)<br><br>*Attorneys for Société Générale Investment Corporation* |

| MCCARTER & ENGLISH, LLP | MCDERMOTT WILL & EMERY LLP |
|---|---|
| /s/ David Adler<br>David Adler<br>dadler@mccarter.com<br>245 Park Avenue<br>New York, NY 10167<br>212-609-6847 (phone)<br>212-609-6921 (fax)<br><br>Katharine Mayer<br>McCarter & English, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE 19801<br>302-984-6312 (phone)<br>302-984-2494 (fax)<br><br>*Attorneys for Security Benefit Life Insurance Co.* | /s/ Andrew B. Kratenstein<br>Andrew B. Kratenstein<br>akratenstein@mwe.com<br>Sandra B. Saunders<br>ssaunders@mwe.com<br>340 Madison Avenue<br>New York, NY 10173<br>212-547-5400 (phone)<br>212-547-5444 (fax)<br><br>*Attorneys for Cannington Funding Ltd.* |
| MCKENNA LONG & ALDRIDGE LLP | MORGAN LEWIS & BOCKIUS LLP |
| /s/ Gary W. Marsh<br>Gary W. Marsh<br>gmarsh@mckennalong.com<br>David E. Gordon<br>dgordon@mckennalong.com<br>303 Peachtree Street, Suite 5300<br>Atlanta, GA 30306<br>404-527-4000 (phone)<br>404-527-4198 (fax)<br><br>Christopher F. Graham<br>cgraham@mckennalong.com<br>230 Park Avenue, Suite 1700<br>New York, NY  10169<br>212-905-8300 (phone)<br>212-922-1819 (fax)<br><br>*Attorneys for AXIS Specialty Limited (f/k/a Atlas Specialty Insurance Limited)* | /s/ Andrew Gottfried<br>Andrew Gottfried<br>agottfried@morganlewis.com<br>Patrick Fleming<br>pfleming@morganlewis.com<br>101 Park Avenue<br>New York, NY 10178<br>212-309-6614 (phone)<br>212-309-6001 (fax)<br><br>*Attorneys for Deutsche Apotheker und Arztebank, Susquehanna Bank and SBSI, Inc.* |

| | |
|---|---|
| MORGAN LEWIS & BOCKIUS LLP<br><br>/s/ Marc Shanker<br>Marc Shanker<br>mshanker@morganlewis.com<br>101 Park Avenue<br>New York, NY 10178<br>212-309-7145 (phone)<br>212-309-6001 (fax)<br><br>*Attorneys for Clearstream Banking S.A.* | MORGAN LEWIS & BOCKIUS LLP<br><br>/s/ John C. Goodchild, III<br>John C. Goodchild, III<br>jgoodchild@morganlewis.com<br>Rachel Mauceri<br>rmauceri@morganlewis.com<br>1701 Market Street<br>Philadelphia, PA 19103<br>215-963-5000 (phone)<br>215-963-5001 (fax)<br><br>*Attorneys for Country Life Insurance Co. and Lincoln National Life Insurance Co.* |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br><br>/s/ Claudia L. Hammerman<br>Claudia L. Hammerman<br>chammerman@paulweiss.com<br>Stephen J. Shimshak<br>sshimshak@paulweiss.com<br>Liza M. Velazquez<br>lvelazquez@paulweiss.com<br>1285 Avenue of the Americas<br>New York, NY 10019<br>212-373-3133 (phone)<br>212-757-3990 (fax)<br><br>*Attorneys for Citigroup Global Markets Inc.* | REED SMITH LLP<br><br>/s/ Eric Schaffer<br>Eric Schaffer<br>eschaffer@reedsmith.com<br>K. Issac deVyver<br>kdevyver@reedsmith.com<br>225 Fifth Ave.<br>Pittsburgh, PA 15222<br>412-288-3131 (phone)<br>412-288-3063 (fax)<br><br>*Attorneys for PPL Services Corporation Master Trust* |

| SATTERLEE STEPHENS BURKE & BURKE LLP | SEWARD & KISSEL LLP |
|---|---|
| /s/ Richard C. Schoenstein<br>Richard C. Schoenstein<br>rschoenstein@ssbb.com<br>Dai Wai Chin Feman<br>dchinfeman@ssbb.com<br>230 Park Avenue<br>New York, NY 10169<br>212-404-8707 (phone)<br><br>*Attorneys for Helios High Income Fund Inc. (f/k/a RMK High Income Fund Inc.); Helios Multi-Sector High Income Fund Inc. (f/k/a RMK Multi-Sector High Income Fund Inc.); Helios Strategic Income Fund Inc. (f/k/a RMK Strategic Income Fund Inc.) and Helios Advantage Income Fund Inc. (f/k/a RMK Advantage Income Fund Inc.)* | /s/ John Ashmead<br>John Ashmead<br>ashmead@sewkis.com<br>Ronald Cohen<br>cohen@sewkis.com<br>Justin Shearer<br>shearer@sewkis.com<br>One Battery Park Plaza<br>New York, NY 10004<br>212-574-1200 (phone)<br>212-480-8421 (fax)<br><br>*Attorneys for PB Capital Corporation* |
| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP |
| /s/ Alex Rovira<br>Alex Rovira<br>arovira@sidley.com<br>787 Seventh Ave.<br>New York, NY 10019<br>212-839-5300 (phone)<br>212-839-5699 (fax)<br><br>*Attorneys for Genworth Life & Annuity Insurance Co. LV SPIA; Genworth Life & Annuity Insurance Co. LV STISL; Magnetar Capital; Magnetar Constellation Master Fund II, Ltd.; Magnetar Constellation Master Fund III, Ltd.; Magnetar Constellation Master Fund, Ltd. and UniCredit Bank AG, London Branch* | /s/ Michael G. Burke<br>Michael G. Burke<br>mgburke@sidley.com<br>787 Seventh Ave.<br>New York, NY 10019<br>212-839-5300 (phone)<br>212-839-5699 (fax)<br><br>*Attorneys for Delphi Financial Group, Inc.* |

| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP |
|---|---|
| /s/ Bryan Krakauer<br>Bryan Krakauer<br>bkrakauer@sidley.com<br>Mark Blocker<br>mblocker@sidley.com<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>312-853-7000 (phone)<br>312-853-7036 (fax)<br><br>*Attorneys for Principal Life Insurance Co.* | /s/ Mark Blocker<br>Mark Blocker<br>mblocker@sidley.com<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>312-853-7000 (phone)<br>312-842-7036 (fax)<br><br>*Attorneys for Reliance Standard Life Insurance Co. and Safety National Casualty Corp.* |
| STROOCK & STROOCK & LAVAN LLP | SULLIVAN & CROMWELL LLP |
| /s/ Claude Szyfer<br>Claude Szyfer<br>cszyfer@stroock.com<br>Mark Speiser<br>mspeiser@stroock.com<br>Sherry Millman<br>smillman@stroock.com<br>180 Maiden Lane<br>New York, NY 10038<br>212-806-5400 (phone)<br>212-806-6006 (fax)<br><br>*Attorneys for Mizuho International plc and Structured Credit America Ltd.* | /s/ Robinson Lacy<br>Robinson Lacy<br>lacyr@sullcrom.com<br>125 Broad Street<br>New York, NY 10004<br>212-558-3879 (phone)<br>212-558-9088 (fax)<br><br>*Attorneys for Barclays Bank PLC; Barclays Capital, Inc. and Long Island International Limited* |

| VENABLE LLP | WACHTELL, LIPTON, ROSEN & KATZ |
|---|---|
| /s/ Edward Smith<br>Edward Smith<br>easmith@venable.com<br>David N. Cinotti<br>dncinotti@venable.com<br>Rishi Kapoor<br>rkapoor@venable.com<br>Venable LLP<br>Rockefeller Center<br>1270 Avenue of the Americas, 25th Floor<br>New York, NY 10020<br>212-307-5500 (phone)<br>212-307-5598 (fax)<br><br>*Attorneys for Euroamerica Seguros De Vida SA; Garadex Inc.; Gatex Properties Inc. and Morgan Stanley & Co. Incorp. n/k/a Morgan Stanley & Co. LLC* | /s/ Ian Boczko<br>Ian Boczko<br>IBoczko@wlrk.com<br>51 West 52nd Street<br>New York, NY 10019-6150<br>212-403-1000 (phone)<br>212-403-2000 (fax)<br><br>*Attorneys for JP Morgan Chase Bank, NA and JP Morgan Securities, LLC* |

TRUSTEE DEFENDANTS

| ALSTON & BIRD LLP | CHAPMAN AND CUTLER LLP |
|---|---|
| /s/   John C. Weitnauer<br>John C. Weitnauer *(pro hac vice)*<br>Michael E. Johnson<br>90 Park Avenue<br>New York, NY 10016<br>Tel: 212-210-9400<br>Fax: 212-210-9444<br>Email: kit.weitnauer@alston.com<br>Email: michael.johnson@alston.com<br><br>*Attorneys for Bank of America, National Association, as Trustee* | /s/ Franklin H. Top, III<br>Franklin H. Top, III *(pro hac vice)*<br>Scott A. Lewis<br>111 West Monroe Street<br>Chicago, IL 60603-4080<br>Tel: 312-845-3000<br>Fax: 312-701-2361<br>Email: top@chapman.com<br>Email: slewis@chapman.com<br><br>Craig M. Price (CP 9039)<br>1270 Avenue of the Americas<br>New York, New York 10020-1708<br>Tel:  212-655-2522<br>Fax:  212-655-2523<br>Email: cprice@chapman.com<br><br>*Attorneys for U.S. Bank National Association, as Trustee and U.S. Bank Trust National Association, as Trustee* |

| | |
|---|---|
| NIXON PEABODY LLP<br><br>/s/ Amanda D. Darwin<br>Amanda D. Darwin<br>Richard C. Pedone<br>Christopher M. Desiderio<br>437 Madison Avenue<br>New York, NY 10022-7039<br>Tel: 212-940-3000<br>Fax: 212-940-3111<br>Email: adarwin@nixonpeabody.com<br>Email: rpedone@nixonpeabody.com<br>Email: cdesiderio@nixonpeabody.com<br><br>*Attorneys for Deutsche Bank Trust Company Americas, as Trustee* | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br><br>/s/ Claudia L. Hammerman<br>Claudia L. Hammerman<br>chammerman@paulweiss.com<br>Stephen J. Shimshak<br>sshimshak@paulweiss.com<br>Liza M. Velazquez<br>lvelazquez@paulweiss.com<br>1285 Avenue of the Americas<br>New York, NY 10019<br>212-373-3133 (phone)<br>212-757-3990 (fax)<br><br>*Attorneys for Citibank, N.A., as Trustee* |
| REED SMITH LLP<br><br>/s/ Eric A. Schaffer<br>Eric A. Schaffer<br>Michael J. Venditto<br>599 Lexington Avenue<br>New York, NY 10022<br>Tel: 212-521-5400<br>Fax: 212-521-5450<br>Email: eschaffer@reedsmith.com<br>Email: mvenditto@reedsmith.com<br><br>*Attorneys for The Bank of New York Mellon, as Trustee, and BNY Corporate Trustee Services Ltd., as Trustee* | |

# **EXHIBIT A**

**Hearing Date and Time: May 14, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Reply Date and Time: May 5, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC. *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | |
| Plaintiff, | |
| v. | Adversary Proceeding |
| BANK OF AMERICA NATIONAL ASSOCIATION *et al.*, | No. 10-03547 (SCC) |
| Defendants. | |

## RESPONSE OF GROUP OF 77
## DEFENDANTS TO LBSF'S PROPOSED SCHEDULING ORDER

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

PROCEDURAL HISTORY............................................................................................ 4

    A.    The Adversary Proceeding................................................................... 4

    B.    The Proposed Orders............................................................................ 8

ARGUMENT ............................................................................................................... 10

I.    In Contrast To The LBSF Proposed Order, The Defendants' Proposed Order
Allows For Efficient Litigation And Case Management Of This Case ......................... 10

II.    LBSF's Attempt To Dictate How Defendants Organize Themselves By Requiring
Appointment Of Liaison Counsel And An Executive Committee Should Be
Rejected....................................................................................................................... 17

III.    The Court Should Enter The Scheduling Order Proposed By Defendants..................... 22

    A.    LBSF Threshold Disclosures ............................................................. 22

    B.    Establishment Of Document Repository ............................................ 23

    C.    Amendment Of Complaint.................................................................. 24

    D.    Threshold Motions To Dismiss.......................................................... 25

    E.    Process Of The Litigation After Phase I Motions To Dismiss ........... 25

    F.    Coordination Of Briefing, Argument And Discovery ........................ 27

    G.    Reservation Provisions....................................................................... 27

    H.    Preservation Of LBSF's Right To Continue To Discover Additional
Defendants ......................................................................................... 28

    I.    Termination Of ADR Injunctions ...................................................... 28

    J.    Service Of Pleadings.......................................................................... 29

CONCLUSION............................................................................................................. 29

i

# TABLE OF AUTHORITIES

**Page(s)**

*Ampudia v. Lloyd,*
531 F. App'x 32 (2d Cir. 2013) ........................................................................ 16

*Authors Guild, Inc. v. Google Inc.,*
721 F.3d 132 (2d Cir. 2013) ............................................................................ 11-12

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,*
402 U.S. 313 (1971) ........................................................................................ 13-14

*Bottaro v. Hatton Assocs.,*
680 F.2d 895 (2d Cir. 1982) ............................................................................ 18-19

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005) ............................................................................ 25

*Cleveland Bd. of Educ. v. Loudermill,*
470 U.S. 532 (1985) ........................................................................................ 16

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991) .............................................................................. 25

*Curtin v. United Airlines, Inc.,*
275 F.3d 88 (D.C. Cir. 2001) .......................................................................... 12

*Drexel Burnham Lambert Grp. v. Galadari,*
127 B.R. 87 (S.D.N.Y. 1991) .......................................................................... 16

*Emmons v. Tennessee,*
No. 3:07-CV-405, 2008 WL 111977 (E.D. Tenn. Jan. 8, 2008) ...................... 10

*Ernst Haas Studio, Inc. v. Palm Press, Inc.,*
164 F.3d 110 (2d Cir. 1999) ............................................................................ 29

*Foti v. NCO Fin. Sys. Inc.,*
424 F. Supp. 2d 643 (S.D.N.Y. 2006) ............................................................. 11

*Greenlee Cnty., Ariz. v. United States,*
487 F.3d 871 (Fed. Cir. 2007) ......................................................................... 11

*Gulf Oil Co. v. Bernard,*
452 U.S. 89 (1981) .......................................................................................... 28

*Hungate v. United States,*
626 F.2d 60 (8th Cir. 1980) ............................................................................. 10-11

*Larson v. United Healthcare Ins. Co.*,
723 F.3d 905 (7th Cir. 2013) ........................................................................    13

*Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*,
422 B.R. 407 (Bankr. S.D.N.Y. 2010) ..........................................................    2, 7

*Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*,
No. 09-01242, slip op. (S.D.N.Y. Sept. 23, 2010), ECF No. 117.....................    7, 15

*Lehman Bros. Special Fin. Inc. v. BNY Mellon Corp. (In re Lehman Bros. Holdings Inc.)*,
Nos. 11 Civ. 2404 (CM), 11 Civ. 2784 (CM), 2011 WL 2651771 (S.D.N.Y. June 21, 2011) ................................................................................................    7, 15

*Mathews v. Eldridge*,
424 U.S. 319 (1976)........................................................................................    16

*McReynolds v. Merrill Lynch & Co., Inc.*,
694 F.3d 873 (7th Cir. 2012) ........................................................................    13

*Medien Patent Verwaltung AG v. Warner Bros. Entm't Inc.*,
No. 10 Civ. 4119 (CM) (GWG), 2014 WL 1169575 (S.D.N.Y. Mar. 21, 2014) ...............    16-17

*Nelson v. Adams USA, Inc.*,
529 U.S. 460 (2000) .......................................................................................    10

*Red Hawk Constr., Inc. v. United States*,
108 Fed. Cl. 779 (Fed. Cl. 2013) ...................................................................    10

*Reynolds v. Barrett*,
741 F. Supp. 2d 416 (W.D.N.Y. 2010) ...........................................................    11

*Schick v. Berg*,
No. 03 Civ. 5513 (LBS), 2004 WL 856298 (S.D.N.Y. Apr. 20, 2004)............................    20

*Schweitzer v. Trans Union Corp.*,
136 F.3d 233 (2d Cir. 1998)...........................................................................    11

*SEC v. Arias*,
No. CV 12-2937 (ADS) (GRB), 2012 WL 4849151 (E.D.N.Y. Sept. 14, 2012)
*adopted*, 2012 WL 4849346 (E.D.N.Y. Oct. 11, 2012).....................................    10

*Thomas v. UBS AG*,
706 F.3d 846 (7th Cir. 2013) ........................................................................    13

The undersigned parties—77 defendants in this adversary proceeding represented by 28 separate law firms ("Defendants")—hereby submit this response in opposition to the Proposed Scheduling Order (the "LBSF Proposed Order") submitted by Plaintiff Lehman Brothers Special Financing Inc. ("LBSF") on March 24, 2014 [Adv. Pro. Docket No. 717].[1]  For the reasons explained below, the LBSF Proposed Order should not be entered.  Instead, Defendants respectfully submit that the Court should enter the proposed litigation protocol order attached hereto as Exhibit A (the "Defendants' Proposed Order"), which unlike the LBSF Proposed Order, provides for fair and efficient case management without unfairly prejudicing any party's rights.

In further opposition to the LBSF Proposed Order, and in support of entry of the Defendants' Proposed Order, Defendants state as follows:

## PRELIMINARY STATEMENT

This Court should reject the LBSF Proposed Order because it embodies an unprecedented, unworkable and unfair schedule and set of procedures designed solely to give LBSF an undue advantage in this litigation.  The LBSF Proposed Order is unprecedented— Defendants have found no cases in which a court has prohibited defendants from moving to dismiss the complaint until the Court first addresses class certification.  In fact, the LBSF Proposed Order is contrary to Second Circuit precedent.  The LBSF Proposed Order is unworkable because LBSF's proposed schedule would impose on the Court the burden of deciding class certification issues (in the context of LBSF's entirely *sui generis* proposed "Defendant Class Action") almost entirely in a vacuum.  That is because, in the absence of threshold motion practice, the Court will not even know which claims for relief, if any, are

---

[1] In submitting this response, Defendants expressly reserve all rights, including without limitation with respect to personal jurisdiction, and by joining this response do not herein submit to personal jurisdiction of this Court.

viable, let alone which defendants remain in the case, making it impossible to address critical

elements necessary to certify a class, namely, numerosity, commonality, typicality, adequacy or

predominance.  And the LBSF Proposed Order is unfair because it prejudices the defendants by

further delaying their right to a hearing on their defenses, while forcing defendants to expend

enormous resources determining the secondary issue of class certification without knowing

which, if any, of the claims LBSF brings are even viable.

LBSF has yet to articulate a cogent rationale for this illogical and unfair construct, and

for obvious reasons.  The only "basis" that exists for such a scheme is LBSF's desire—already

noted by the District Court—to keep untouched for as long as possible the putatively favorable

ruling that it obtained in a separate litigation, *Lehman Brothers Special Financing, Inc. v. BNY*

*Corporate Trustee Services, Ltd. (In re Lehman Brothers Holdings Inc.)*, 422 B.R. 407 (Bankr.

S.D.N.Y. 2010) ("*BNY*"), so that LBSF can use that ruling as leverage over the defendants in

settlement discussions (including the mandatory alternative dispute resolution ("ADR") process).

This, however, is not legitimate grounds for preventing defendants from raising the many

threshold legal deficiencies in the complaint; to the contrary, the years of delay already created

by LBSF further support the urgent need for the narrowing, and quite possibly resolution, of this

case that threshold motion practice can bring.  As demonstrated below, Defendants' Proposed

Order will in fact enable the Court and the parties to do just that, as the Federal Rules of Civil

and Bankruptcy Procedure, for good reason, explicitly allow.

Separate and apart from the improper ordering of issues, the LBSF Proposed Order

creates additional unfairness by imposing on the defendants an organizational structure

unilaterally determined by LBSF, in which the defendants must elect an "Executive Committee"

and "Liaison Counsel" (under threat of *LBSF* picking who will represent all of the defendants if

2

the defendants cannot designate suitable representatives on LBSF's timetable). The LBSF

Proposed Order also promises further disputes and inefficiency, as it requires any defendant not

selected to serve on the Executive Committee or as Liaison Counsel to seek issue-by-issue

special permission from the Court to present any unique defenses, arguments or concerns it may

have. *See* LBSF Proposed Order ¶¶ 11, 13 (parties must request and obtain permission before

they may "participate directly in that aspect of the Action").

Further, under the LBSF Proposed Order, any party still participating in the mandatory

ADR process is stayed under the ADR Orders[2] from litigating in this action unless LBSF

determines it is "necessary," and all defendants are barred from discussing with one another any

attempts to settle this action. *See* LBSF Proposed Order ¶¶ 20, 39, 42. Rather than simply

agreeing to lift the ADR stay simultaneously with the litigation stay, the LBSF Proposed Order

makes the vague statement that LBSF will "modify" the ADR Order "as necessary"—apparently

as determined by LBSF. This is wholly unjustified and unfair.

In contrast to the LBSF Proposed Order, the Defendants' Proposed Order protects the

rights of both LBSF and the defendants and serves the interest of party and judicial efficiency.[3]

Under the Defendants' Proposed Order, motions to dismiss are addressed at the outset of the

litigation, and prior to any class certification motion, which is consistent with standard practice

in class actions and with basic due process. Further, the Defendants' Proposed Order allows the

defendants to self-organize and coordinate, as a substantial majority have successfully done to

---

[2] These include the Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Oct. 20, 2010), ECF No. 12,199, which was subsequently extended by multiple Orders thereafter, and the Amended Order Providing for Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 18, 2012), ECF No. 29,507.

[3] For the Court's reference, Defendants have attached as Exhibit B a chart listing the major differences between the LBSF Proposed Order and Defendants' Proposed Order.

3

date, and provides for contemporaneous lifting of the ADR and litigation stays to allow the

action to proceed on a unified basis.  Moreover, to streamline and coordinate the litigation, the

Defendants' Proposed Order requires, consistent with Rule 26, limited preliminary disclosures

by LBSF.  These disclosures will enable the parties and the Court to identify and resolve legal

issues currently obscured by LBSF's blunderbuss complaint, which groups 47 distinct CDO

deals without citing to any of the contractual language from the documents governing any

specific deal or to specific circumstances of termination.  The Defendants' Proposed Order will

help clarify differences with respect to each deal and crystallize legal issues so that threshold

dismissal motions can be dealt with efficiently.  Should a class certification phase be necessary,

under the Defendants' Proposed Order, the Court and the parties will know which defendants

and claims remain prior to consideration of any proposed class so as to appropriately frame

discovery and briefing germane to certification issues.

Accordingly, Defendants oppose entry of the LBSF Proposed Order, which is contrary to

established law and practice, seeks to improperly avoid addressing motions to dismiss on

threshold dispositive issues, and seeks to deny individual defendants the right to appropriately

defend themselves.  Defendants respectfully propose their alternative Proposed Order for entry

by the Court.

## PROCEDURAL HISTORY

### A.    The Adversary Proceeding

On September 14, 2010—over three and a half years ago—LBSF filed this action, against

131 separate defendants.  The initial complaint purported to name 76 of these defendants both in

their individual capacity and as representatives of a putative defendant "Noteholder Class" (the

"Putative Noteholder Class") of entities that held notes issued by 43 separate collateralized debt

obligation vehicles (the "CDOs") and allegedly received distributions in connection with those

CDOs.  LBSF subsequently amended its complaint twice.  Its second amended complaint, filed

on July 23, 2012, asserts claims in connection with 47 separate CDOs, and 274 separate

defendants comprised of 81 CDO issuers and co-issuers, 8 CDO trustees and 185 CDO

noteholders named both in their individual capacity and as representatives of the Putative

Noteholder Class.  LBSF claims that it is owed over $3 billion, although the complaint offers no

specifics about how this total amount relates to any particular defendant, group of defendants or

the Putative Noteholder Class.  *See* Second Amended Complaint ("SAC") ¶ 1 [Adv. Pro. Docket

No. 303-1].[4]

Although LBSF does not proffer allegations about the actual terms of any of the dozens

of separate transaction documents or the specific facts and circumstances surrounding any

particular distribution, LBSF asserts that the transaction documents associated with each of the

CDOs generally gave LBSF a right to payment priority senior to that of the CDO noteholders.

LBSF then claims that these same, unidentified transaction documents were somehow

"modified" so as to subordinate LBSF to the noteholders when Lehman Brothers Holding Inc.

("LBHI") filed its Chapter 11 bankruptcy petition, and that these "modifications" constituted

unenforceable *ipso facto* clauses under Sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy

Code.  *See* SAC ¶¶ 3-4.  As to the noteholder defendants—who played no role with respect to the

administration of the CDOs—LBSF requires an additional theory to subject them to a monetary

claim, and appears to rely on Sections 547, 548 and 549 of the Bankruptcy Code and various

common law theories to claim that the noteholders are liable to LBSF.  *See* SAC ¶¶ 97-135, 145-

74.

---

[4] LBSF has benefitted from single-sided discovery for more than three years, while the defendants have
been denied basic information from LBSF regarding the particular distributions or amounts that LBSF claims it can
recover from them.

There are numerous reasons why the Second Amended Complaint must be dismissed as to some or all defendants, including that LBSF fails to state a cognizable claim, that LBSF's claims are time-barred as to certain defendants, and that LBSF cannot establish personal jurisdiction over certain defendants.  Notwithstanding these grounds for dismissal, in the three-and-a-half years since the first complaint in this action was filed, no defendant has been allowed to present any of them to any court because the litigation has been stayed to allow LBSF to engage in ADR proceedings with various defendants according to its own agenda.  While LBSF now asks this Court as a first order of business to address certification of a defendant class, LBSF has decidedly *not* engaged with defendants as a putative class—rather, LBSF has forced defendants one by one into separate mediation proceedings subject to various confidentiality restrictions that expressly prevent defendants (and any member of the Putative Noteholder Class) from coordinating regarding settlement.

Defendants and LBSF have very different views of the merits of LBSF's claims.  *First*, Defendants strongly dispute that the CDO transaction documents in this action gave LBSF a right to "senior priority payment," or that LBSF's *ipso facto* theory that it was improperly deprived of any putative senior right is valid.  LBSF necessarily relies heavily in its complaint on the prior *BNY* decision by the Bankruptcy Court, which addressed a variant of LBSF's *ipso facto* theory, but that case involved a CDO with distinct transaction documents and payments made under different factual circumstances, and the conclusions of *BNY* are contested.  Defendants thus dispute that *BNY* applies to the CDOs in this case or in any way controls this action.  LBSF, needless to say, disputes Defendants' positions.

Whether *BNY* was correctly decided, how *BNY* should be interpreted and how *BNY* might apply—or not apply—to the 47 different CDOs in this case remain very much unsettled issues.

The *BNY* decision was "unprecedented" and "controversial," as Judge Peck noted in the decision

itself. *BNY*, 422 B.R. at 422. The District Court granted leave for an interlocutory appeal of

*BNY*, likewise recognizing that there was "genuine doubt as to whether the Bankruptcy Court

applied the correct standard." *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd.

(In re Lehman Bros. Holdings Inc.)*, No. 09-0242, slip op. at 11 (S.D.N.Y. Sept. 23, 2010), ECF

No. 117 ("*BNY II*"). LBSF then settled the *BNY* litigation before the District Court could

consider the appeal, and since then, as the District Court has noted, has been using the stay in

this litigation to prevent any defendant from testing the merits—or lack thereof—of LBSF's

theories. *See id.* at 15 (observing LBSF's conscious strategy of using stays to "vigorously . . .

forestall any review [of *BNY*]" so as to obtain "leverage in settlement negotiations concerning

billions of dollars worth of similar transactions"); *see also Lehman Bros. Special Fin. Inc. v.

BNY Mellon Corp. (In re Lehman Bros. Holdings Inc.)*, Nos. 11 Civ. 2404 (CM), 11 Civ. 2784

(CM), 2011 WL 2651771, at *4 (S.D.N.Y. June 21, 2011) ("*BNY III*") ("the stay is being used . .

. to keep [*BNY*] from being reviewed"), *vacated on other grounds*, 697 F.3d 74 (2d Cir. 2012).

*Second*, even setting aside questions regarding the applicability of *BNY*, no court has ever

considered ten of the twelve claims (Counts III-XII) that LBSF brings here. None of these

avoidable transfer or common-law theories were present or addressed in *BNY*, and Defendants

strongly dispute their viability, because they are, among other things, not cognizable, time-barred

and foreclosed by the safe harbors in the Bankruptcy Code. LBSF presumably believes

otherwise. Again, the parties have yet to receive a hearing from any court on these issues.

The parties have negotiated, and continue to negotiate, in the context of the Court's ADR

program in good faith. But given how long this litigation has been stayed (not to mention

ordinary practice), the defendants should now be permitted to present their good-faith, threshold

7

defenses, for a judicial determination pursuant to Rule 12 (made applicable to this litigation by

Rule 7012 of the Federal Rules of Bankruptcy Procedure).

**B.      The Proposed Orders**

LBSF first filed a proposed litigation protocol on January 10, 2014 (the "January 2014

Protocol"), as part of its motion to once again extend the stay of proceedings in this action.

Having stayed this case for three-and-a-half years, LBSF provided defendants just two weeks to

respond to its unilaterally proposed litigation structure.  *See* Mot. of Lehman Bros. Holdings Inc.,

Pursuant to Section 105(a) of the Bankr. Code and Bankr. Rule 7004(a)(1), to Extend Stay of

Avoidance Actions and Grant Certain Related Relief ¶¶ 1, 14, *In re Lehman Bros. Holdings Inc.*,

No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 10, 2014), ECF No. 42,023 ("LBSF January 2014

Motion").  Faced with numerous objections from defendants—both formally in court and

informally as individual Defendants began assembling this group—LBSF initially agreed to

withdraw its request for immediate imposition of the January 2014 Protocol.  Instead, LBSF

promised to meet and confer with defendants to try to negotiate a mutually agreed upon

alternative schedule for the litigation, after which LBSF would file a revised order incorporating

changes coming out of that process.  *See* Order Extending Stay of Avoidance Actions and

Granting Certain Related Relief Pursuant to Section 105(a) of the Bankr. Code and Bankr. Rule

7004(a)(1), *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 10,

2014), ECF No. 42,417.  Defendants coordinated to provide LBSF with consolidated written

comments, and jointly met-and-conferred with LBSF on March 17, 2014 (the "March 2014

Meet-and-Confer"), where Defendants again discussed their concerns with the January 2014

Protocol.  LBSF, however, thereafter ignored Defendants without even the courtesy of a

substantive response on *any* point, and submitted a Proposed Order on March 24, 2014, which is

virtually identical to the January 2014 Protocol.

8

LBSF's stated rationale for the LBSF Proposed Order has been to increase efficiency and

"prevent a free-for-all" or "haphazard litigation of the Avoidance Actions."  While Defendants

agree with those objectives, the LBSF Proposed Order does none of these things, and instead is

unworkable, including because it:

- requires the parties to spend inordinate amounts of time and money litigating the ancillary issue of class certification first, thereby taxing the resources of both defendants and LBSF without knowing what claims are viable and who members of the Putative Noteholder Class may be for purposes of considering the Rule 23 factors (numerosity, commonality, typicality, adequacy or predominance)—and thus leaves wide open the possibility that, if defendants or claims are dismissed and the Rule 23 factors consequently change, class certification would need to be re-litigated again (even presuming that defendants would not simply opt-out of any class);

- precludes defendants from raising meritorious grounds for dismissal under Rule 12, as the Federal Rules contemplate, until after class certification, and then limits such motions to challenges to personal jurisdiction and to statute of limitations, only after which defendants can assert Rule 12(b)(6) defenses that may be dispositive of the action in the first place—defendants would likely be barred from filing a motion to dismiss until 2016, *six years* after this action was commenced;

- extends to LBSF the ability to amend its complaint after certification and dismissal, raising the prospect that the action would need to be re-litigated;

- imposes a structure on defendants that dictates how defendants may organize and participate in the litigation—and bars defendants from participating in meaningful ways;

- purports to treat defendants as a putative class even before consideration of the class certification motion, while at the same time requiring that each defendant participate only in individualized settlement negotiations and refusing to lift confidentiality restrictions that prevent defendants from coordinating and trying to settle this action on a class-wide basis;

- fails to require any disclosures by LBSF regarding the defendants LBSF has named, the nature of the claims LBSF brings against them, or the amounts LBSF is claiming from them, thereby impeding defendants in their efforts to organize themselves.

In contrast, and as discussed more fully in Section III, *infra*, the Defendants' Proposed Order

provides a framework to address the legitimate organizational concerns presented by this

litigation and to prevent haphazard litigation while simultaneously protecting both the

defendants' and LBSF's rights.

## ARGUMENT

**I.    In Contrast To The LBSF Proposed Order, The Defendants' Proposed Order Allows For Efficient Litigation And Case Management Of This Case**

Under Second Circuit precedent, the Federal Rules and basic principles of due process and fairness, Defendants have a right to respond to a plaintiff's complaint at the outset of litigation and to move to dismiss it pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000) ("the opportunity to respond to original pleadings secured by Rule 12" is "fundamental to due process"); *see also, e.g.*, *SEC v. Arias*, No. CV 12-2937 (ADS) (GRB), 2012 WL 4849151, at *4 (E.D.N.Y. Sept. 14, 2012) (report and recommendation) (denying motion to stay motions to dismiss, as "defendants should, if appropriate, make motions to dismiss promptly" given court's obligations to comply with Rule 1 "so as to achieve a 'just, speedy and inexpensive determination' of this matter"), *adopted*, 2012 WL 4849346 (E.D.N.Y. Oct. 11, 2012); *Emmons v. Tennessee*, No. 3:07-CV-405, 2008 WL 111977, at *1 (E.D. Tenn. Jan. 8, 2008) ("One of the ways in which the Rules allow for the just, speedy, and inexpensive determination of an action is by allowing opposing parties to file a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. . . .  [F]orbidding the defendants from taking advantage of Rule 12, would pervert the spirit and the letter of the Rules and would hamper the just, speedy, and inexpensive administration of justice."); *Red Hawk Constr., Inc. v. United States*, 108 Fed. Cl. 779, 784 (Fed. Cl. 2013) ("In light of the requirement that the court construe the [Rules] 'to secure the just, speedy, and inexpensive determination of every action and proceeding,' . . . the court informed the parties that it would address defendant's motion to dismiss before considering the other motions.") (internal quotation marks omitted); *see also, e.g.*, *Hungate v. United States*, 626 F.2d 60, 62 (8th Cir. 1980)

("[F]ederal courts . . . should remain . . . sensitive to the mandates of Rule 1 to 'secure the just, speedy, and inexpensive determination of every action.' Meritless claims should be disposed of at the first opportunity.").

Consistent with this clear law and usual practice, the Defendants' Proposed Order provides for the presentation of defendants' threshold motions to dismiss at the outset, followed by motion practice concerning class certification (to the extent such motion practice is not mooted). Indeed, the Second Circuit recently held that a district court erred in deciding class certification before considering the merits of the defendant's defenses, explaining that

> the resolution of [defendant]'s . . . defense in the first instance will necessarily inform and perhaps moot our analysis of many class certification issues, including those regarding the commonality of plaintiffs' injuries, the typicality of their claims, and the predominance of common questions of law or fact.

*Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132, 134 (2d Cir. 2013) (vacating class certification order); *accord, e.g.*, *Schweitzer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) (Rule 12 motion to dismiss and Rule 56 motion for summary judgment may precede resolution of class certification issues).[5]  As the Second Circuit explained, "[a] court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Authors Guild*, 721 F.3d at 135 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)).

---

[5] *See also, e.g.*, *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 880 (Fed. Cir. 2007) ("[W]e have repeatedly found on appeal that issues related to class certification were moot in light of our resolution against the plaintiff of a motion to dismiss or for summary judgment."); *Reynolds v. Barrett*, 741 F. Supp. 2d 416, 425 n.3 (W.D.N.Y. 2010) (favoring consideration of dispositive merits issues prior to class certification where it "spare[s] both the parties and the court a needless, time-consuming inquiry into certification"), *aff'd*, 685 F.3d 193 (2d Cir. 2012); *Foti v. NCO Fin. Sys. Inc.*, 424 F. Supp. 2d 643, 647 n.2 (S.D.N.Y. 2006) ("consideration of the Motion to Dismiss [prior to class certification] is appropriate, particularly given the considerable 'expense . . . and time of dealing with [large] class' . . . when certain issues may be able to be resolved as a matter of law").

Given that resolution of dismissal motions at the outset necessarily frames what must be considered on certification, it is standard practice in district courts to enter scheduling orders that decide class certification motions only after resolving motions to dismiss.  The *Tribune* and *Lyondell* actions—both of which were brought as putative defendant class actions and are currently pending in this District—are illustrative.  In *Tribune*, the court ordered that class certification motions not be filed until after the conclusion of an initial two-phase dispositive motion practice, in which defendants were entitled to submit first an omnibus pre-answer motion to dismiss on grounds that would, if successful, dispose of the case entirely and second, if necessary, a subsequent pre-answer motion to dismiss on other grounds.  Master Case Order No. 3 ¶¶ 12-42, *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 1:12-mc-02296-WHP (S.D.N.Y. Sept. 7, 2012), ECF No. 45 ("Tribune Case Order").  Likewise, in *Lyondell*, the court allowed defendants to move to dismiss in advance of any motions on class certification.  *See* Docket, *Weisfelner v. A. Holmes & H. Holmes (In re Lyondell Chem. Co.)*, No. 10-05525-reg (Bankr. S.D.N.Y. filed Dec. 23, 2010).

As in the *Tribune* and *Lyondell* actions, resolving Defendants' Rule 12 motions is warranted here where "delaying" consideration of class certification issues will not prejudice either party.  *See, e.g.*, *Authors Guild*, 721 F.3d at 135 (reasoning that dispositive motions should be decided first where "holding the issue of class certification in abeyance until [the defendant's merits claim] has been resolved will not prejudice the interests of either party during the projected proceedings"); *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001) (court does not abuse its discretion by resolving the merits before considering the question of class certification where defendant seeks early disposition of claims and plaintiffs are not prejudiced

12

thereby).[6]

While LBSF's submissions to this Court to date offer no reason at all for LBSF's demand that motions to dismiss be delayed until class certification is decided, at the March 2014 Meet-and-Confer LBSF mentioned two possible justifications, neither of which has any merit.

*First*, LBSF claimed that there was "some authority" from the Seventh Circuit suggesting that class certification should be decided first. But even the Seventh Circuit cases to which LBSF apparently refers do not establish any uniform rule on this point. Indeed, the Seventh Circuit recently noted that a court "properly addresse[s] the Rule 12(b)(6) motions ahead of class certification." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 910 n.3 (7th Cir. 2013); *see also, e.g.*, *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012) (affirming Rule 12(b)(6) dismissal decided before class certification).[7] In any event, as shown above, controlling Second Circuit law is to the contrary.

*Second*, LBSF suggested that class certification should come first because it has already "won" on the *ipso facto* issue in the *BNY* litigation and hence should be able to move directly into class certification here without having to litigate a motion to dismiss again in this action. But a decision in a prior litigation against another party is not a basis for delaying or divesting defendants of their right to move to dismiss *this* action. It should go without saying that "litigants . . . who never appeared in a prior action[ ]may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of

---

[6] LBSF can hardly claim prejudice by a delay in class certification given that LBSF itself has sought to delay prosecution of this action for nearly four years.

[7] Another Seventh Circuit panel, in affirming a dismissal ruling, noted that while "[n]ormally the issue of class certification should be resolved first," class certification can take a long time and so if a "suit can quickly be shown to be groundless, it may make sense for the district court to skip certification and proceed directly to the merits." *See Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013).

the identical issue which stand squarely against their position." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971). Additionally, ten of the twelve claims that LBSF raises in this action (Counts III-XII) are wholly new—none of them were litigated in *BNY*, and all of them are ripe for adjudication now. *See* SAC ¶¶ 97-174 (asserting claims under Sections 547, 548 and 549 of the Bankruptcy Code and common law claims). Defendants have every right to challenge LBSF's complaint and arguments here, including the right to challenge whether *BNY* applies to the facts and circumstances at issue here, if so, whether *BNY* was correctly decided, and whether LBSF's new claims here that were unaddressed by *BNY* should be dismissed.

The LBSF Proposed Order flouts these basic rights. The LBSF Proposed Order affirmatively *bars* Defendants from moving to dismiss the complaint until after the litigation of the issues that LBSF has unilaterally decided that it wants to litigate first—namely, class certification and various "individualized defenses." *See* LBSF Proposed Order ¶¶ 18, 38. Thus, before any judicial determination as to whether LBSF has even pleaded a cognizable claim, the LBSF Proposed Order contemplates putting the parties through the burden and expense of document discovery, depositions, expert reports and depositions, and briefs of class certification before Defendants can move to dismiss. *See* LBSF Proposed Order ¶¶ 18-40. Ironically, only once all of those efforts are addressed in dealing with the novelty of certifying a defendant class (where LBSF has already individually named the majority of the putative class members), does LBSF propose to have the Court consider "individualized defenses," which, if they predominate over common ones, would have defeated certification in the first place. This does not achieve the "just, speedy, and inexpensive determination of [this] action." *Cf.* Fed. R. Civ. P. 1; Fed. R. Bankr. P. 1001.

*Third*, LBSF has also indicated that it will argue that, unless it is allowed to certify the

class before motions to dismiss are addressed, it cannot bind absent class members to any order

adjudicating the motions to dismiss.  This, however, assumes (without basis) that a class will be

certified and that absent class members would be bound by it in any jurisdiction where a

judgment might be enforced, and ignores that class certification may become unnecessary to the

extent claims and defendants are dismissed.  Additionally, as a practical matter, LBSF has

already named 274 defendants in their individual capacity, who represent over 80% of the

putative class (as LBSF informed Defendants at the March 2014 Meet-and-Confer).  It is not fair

to force these 274 defendants to wait years to assert their defenses just to satisfy LBSF's hopes

that it can bind the other 20%, who may never be located, may no longer remain in business after

the financial crisis, or may be beyond the jurisdiction of this Court, particularly in light of the

fact that LBSF has for nearly four years been taking discovery for the purpose of identifying

noteholders.  *See* Order Staying Avoidance Actions and Granting Certain Related Relief

Pursuant to Section 105(a) of the Bankr. Code and Bankr. Rule 7004(a)(1), at 3, *In re Lehman*

*Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Oct. 20, 2010), ECF No. 12,199.

The delay promised by the LBSF Proposed Order is all the more unjustified given that

LBSF has already succeeded in maintaining a nearly four-year stay of this litigation.  *See BNY II*,

slip op. at 15 (LBSF is using the stay to "vigorously . . . forestall any review [of *BNY*]" so as to

obtain "leverage in settlement negotiations concerning billions of dollars worth of similar

transactions"); *BNY III*, 2011 WL 2651771, at *4 ("the stay is being used . . . to keep [*BNY*] from

being reviewed.").  While the purported rationale for the stay was to enable LBSF to

consensually negotiate resolution with defendants, after many years it appears that more than a

hundred individual defendants remain in this litigation and are prepared to address the merits.

The Court should afford defendants their long-awaited right to move to dismiss—not make them

wait another two years and incur inordinate expense litigating certification of a defendant class

before they can seek to dismiss—particularly when the greater majority of the putative class has

been individually named and given the unique issues presented generally in certification of a

defendant class.[8]

The prejudice to Defendants of this delay of their right to move to dismiss is manifest.

*See, e.g.*, *Ampudia v. Lloyd*, 531 F. App'x 32, 34 (2d Cir. 2013) ("[T]hough prejudice can be

presumed as a matter of law where the delay is 'lengthy and inexcusable,' we need not invoke

that presumption here because [plaintiff]'s delay . . . increased litigation costs to defendants.").[9]

The right to move to dismiss is illusory unless Defendants are afforded an "opportunity to be

heard 'at a meaningful time and in a meaningful manner.'" *See, e.g.*, *Mathews v. Eldridge*, 424

U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). As courts have

long recognized, "delay can be so unreasonable as to deny due process, such as when it is

inordinately long." *Drexel Burnham Lambert Grp. v. Galadari*, 127 B.R. 87, 101 (S.D.N.Y.

1991) (quoting *Isaacs v. Brown*, 865 F.2d 468, 477 (2d Cir. 1989)); *see also, e.g.*, *Cleveland Bd.

of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) ("At some point, a delay . . . become[s] a

constitutional violation."); *Medien Patent Verwaltung AG v. Warner Bros. Entm't Inc.*, No. 10

Civ. 4119 (CM) (GWG), 2014 WL 1169575, at *2 (S.D.N.Y. Mar. 21, 2014) ("In addition to the

---

[8] Under the LBSF Proposed Order, Defendants compute that it would take roughly two years— without any extensions—to reach the point in the schedule at which defendants would be permitted to file Rule 12(b)(6) motions to dismiss. In other words, it would be *six years* after this litigation was first commenced that defendants could take the routine step of filing a motion testing the legal sufficiency of the claims.

[9] LBSF's multi-year stay of this litigation has in fact served to inject another dispute into the case—namely, LBSF's inappropriate demand for prejudgment interest at New York's 9% statutory rate for the entire period of the stay demanded by LBSF. *See, e.g.*, Omnibus Reply in Supp. of Mot. of Lehman Bros. Holding Inc., Pursuant to Section 105(a) of the Bankr. Code and Bankr. Rule 7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief ¶¶ 9, 38-40, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 27, 2014), ECF No. 42,217.

axiom that 'justice delayed is justice denied,' it is a practical reality that the longer litigation

lasts, the more expensive it will be.  Allowing [one party] to drag this case out even further . . .

will impose even more financial hardship on [the other party] for a longer period of time.").  The

more sensible and appropriate course is to first determine the validity, or invalidity, of LBSF's

claims at the outset.

## II.    LBSF's Attempt To Dictate How Defendants Organize Themselves By Requiring Appointment Of Liaison Counsel And An Executive Committee Should Be Rejected

LBSF's demand that the defendants nominate several of themselves to act as lead

defendants—made without proffering any justification or citing any legal authority—is unfair

and unwarranted.  *See* LBSF Proposed Order ¶¶ 7-10 (requiring that nominees for Liaison

Counsel and Executive Committee positions provide information required to appoint class

counsel).  The LBSF Proposed Order forces all defendants to organize according to how *LBSF*

sees fit, with no heed given to each defendant's own, individual right to manage its own

participation in this litigation.  The Court should reject LBSF's attempt to dictate to the

defendants how they must organize themselves.

As an initial matter, LBSF's claim that efficiency demands that individual defendants

should be forced to act through a designated "Executive Committee" and "Liaison Counsel," and

thereby be represented by counsel other than that of their own choosing, rings hollow.  And

LBSF's suggestion that left to their own devices, the defendants will burden this Court and LBSF

with duplicative filings and make the litigation unworkable is similarly baseless.[10]  As the

conduct of Defendants to date demonstrates, Defendants have already organized themselves

efficiently, and presumably more defendants would have joined in this effort had LBSF

responded to inquiries regarding the identities of other defense counsel.  Counsel for 77

---

[10] Defendants understand that the sole purported basis for LBSF's demand is efficiency.  LBSF's papers offer no justification at all for imposing this structure on Defendants.

Defendants submitted this objection to the LBSF Proposed Order and proposed a single

alternative scheduling order.  Before that, counsel for over thirty Defendants coordinated to

provide to LBSF a single set of comments on the LBSF Order and participated in a single meet-

and-confer session with LBSF's counsel.[11]  Defendants' conduct is consistent with common

practice in this District, where defendants in large multi-defendant cases routinely coordinate to

file a limited number of briefs, which further demonstrates the hollowness of LBSF's purported

concerns.  *See, e.g.*, Docket, *Weisfelner v. A. Holmes & H. Holmes (In re Lyondell Chem. Co.)*,

No. 10-05525-reg (Bankr. S.D.N.Y. filed Dec. 23, 2010) (in a defendant class action, over 40

defendants joined a single motion to dismiss and over 100 defendants joined a single reply brief,

all without any requirement from the court for defendants to coordinate).[12]

    While LBSF's proposal is unlikely to result in any increased efficiency, it would, if

adopted, prejudice the defendants by putting them into a proverbial Catch-22:  each defendant

can either (1) forgo the ability to be represented by counsel of its choice at critical junctures of

this litigation, including at court conferences and at oral argument or (2) bear the substantial

expense of having its counsel act as Liaison Counsel or a member of the Executive Committee

representing the interests of dozens of other defendants.  On the one hand, imposing the

Executive Committee and Liaison Counsel structure on the defendants undermines each

individual defendant's ability to actively participate in this litigation through its chosen

counsel—a right that is central in our litigation system.  *See Bottaro v. Hatton Assocs.*, 680 F.2d

---

[11] If any party is responsible for any perceived lack of coordination in this action it is LBSF—not
Defendants.  On several occasions, counsel for various Defendants contacted LBSF's counsel requesting the contact
information of counsel for other Defendants—information often uniquely available to LBSF, but not Defendants—
in order to facilitate coordination.  Each time, LBSF's counsel refused, thereby creating needless barriers to
Defendants coordinating effectively.

[12] If anything, requiring Defendants to act through Liaison Counsel may cause, rather than resolve,
inefficiencies.  For example, should one of the Defendants represented by Liaison Counsel settle or otherwise be
dismissed from the litigation, the Court would have to examine anew which new counsel should be appointed in its
place—a process which would only add to the Court's workload.

895, 897 (2d Cir. 1982) (right to be represented by counsel of one's choice can only be abridged

for compelling reasons).  On the other hand, LBSF's Proposal would also prejudice those

defendants whose counsel are selected to serve on the Executive Committee or as Liaison

Counsel by forcing them to bear the costs of the defense on behalf of all defendants throughout

the course of the litigation.

*First*, many if not all of the defendants in this action are sophisticated financial

institutions with millions of dollars at stake who, understandably, would like to participate in

their own defenses.  At present, Defendants have organized themselves so as to act in a

coordinated fashion whenever possible but have done so in a way that preserves the ability of

any individual defendant to act through its own selected counsel to vindicate its specific interests

in this litigation.  This approach promotes the goal of efficient adjudication, while also

preserving each defendant's ability to be represented in this litigation by a counsel of its

choosing.

By contrast, requiring the defendants to act through the Executive Committee or Liaison

Counsel—who in the overwhelming majority of cases will not be the counsel of choice for any

single defendant—undermines this balance.  While the LBSF Proposed Order purports to

"preserve[]" each defendant's right to be represented by its own counsel, *see* LBSF Proposed

Order ¶ 13, it is inevitable that those defendants whose counsel do not serve on the Executive

Counsel or as Liaison Counsel, will have, at best, a limited ability to participate in their own

defense.[13]  This is especially troublesome where, as here, defendants are alleged to be connected

---

[13] To take but one obvious example:  the LBSF Proposed Order expressly provides that except for Liaison Counsel, defendants' counsel "may not address the Court unless permission is granted *prior* to the hearing or conference."  LBSF Proposed Order ¶ 13 (emphasis supplied).  This means that should an unexpected point arise during colloquy between the Court and Liaison Counsel in which the Liaison Counsel makes an admission prejudicial to one defendant, counsel for that defendant—not having obtained permission before the hearing—would be unable to speak, and its client would effectively be denied the representation of its chosen counsel.  Recognizing this very concern, other courts in this District administering large multi-defendant cases have permitted counsel for

with at least 47 separate and distinct CDO deals, which may impact the types of arguments that

they wish to advance, and the manner in which they chose to do so.[14]  This challenge, which

would be of concern in any multi-defendant litigation, is exacerbated here, where the counsel

designated to speak on behalf of all defendants would owe fiduciary duties only to some of

them.[15]  *See id.* ¶ 13; *cf. Schick v. Berg*, No. 03 Civ. 5513 (LBS), 2004 WL 856298 (S.D.N.Y.

Apr. 20, 2004) (class counsel owes putative class fiduciary duty to the extent it cannot

compromise the putative class's substantive rights), *aff'd*, 430 F.3d 112 (2d Cir. 2005).

        *Second*, the way in which Defendants have already organized themselves preserves

defendants' flexibility to decide which counsel or group of counsel will take the lead on

particular issues, permitting defendants to spread the costs and burden of the litigation as they

see fit.  Requiring a single counsel to act as Liaison Counsel would, in effect, impose on the

defendant represented by that counsel the costs and responsibilities of being a *de facto* class

representative—something that is simply unwarranted this early in the litigation (all the more so

as Defendants believe that this action may well be resolved on a motion to dismiss which would

obviate the need for any one defendant to bear the burden of being the lead defendant).

        In light of these concerns, it is hardly surprising that courts in this District have, absent

---

all defendants to appear and be heard, if they so wished.  *See, e.g.*, Order Relating to Consolidated Proceedings, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 1:12-mc-115-JSR (S.D.N.Y. Jun. 25, 2012), ECF No. 197.  Indeed, denying defendants the ability to be heard in such circumstance may violate their due process rights.

        [14] Defendants were involved with 47 *different* CDO transactions, with *different* transaction documents, and the relevant provisions at issue in this litigation may differ in possibly material respects, with some receiving distributions before LBSF filed for bankruptcy and others receiving distributions later.  These differences may require the defendants to organize themselves in a way other than that conceived by LBSF, and they should be permitted to do so.

        [15] The Court should be especially vigilant in protecting the defendants' due process rights in the context of a putative defendant class action, where defendants who are not allowed to fully participate in the litigation may be adversely affected by the conduct of their purported representatives.  *See Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 820 (7th Cir. 2000) ("This is so precisely because classes include not only the parties directly before the court, but absentees, and in some cases the active participants may sell out the interests of the others.").  Further, requiring defendants to act through the Executive Committee or Liaison Counsel fails to take into account that firms may have conflicts of interest.

extreme circumstances not present here, avoided imposing executive committee and liaison

counsel structures on defendants in large multi-defendant cases.  *See, e.g.*, Docket, *Weisfelner v.*

*A. Holmes & H. Holmes (In re Lyondell Chem. Co.)*, Ch. 11 Case No. 09-10023, Adv. No. 10-

05525 (Bankr. S.D.N.Y. filed Dec. 23, 2010); Docket, *Holliday v. K Road Power Mgmt., LLC*

*(In re Boston Generating, LLC)*, Ch. 11 Case No. 10-14419, Adv. No. 12-01879 (Bankr.

S.D.N.Y. filed Aug. 17, 2012); Revised Proposed Order, *SIPC v. Bernard L. Madoff Inv. Sec. (In*

*re Bernard L. Madoff)*, No. 08-01789 (Bankr. S.D.N.Y. Mar. 26, 2014), ECF No. 6045-2, at 4.

The *Lyondell* litigation is particularly instructive.  There, plaintiffs sued in excess of one

hundred defendants on identical clawback claims seeking to avoid transfers the defendants

received as part of the leveraged buy-out.  Despite the number of defendants and the fact that

they faced identical claims, the court nevertheless did not require defendants to organize in an

executive committee or act through liaison counsel.  Instead, the *Lyondell* defendants self-

organized.  Contrary to what LBSF appears to suggest will happen here, the *Lyondell* defendants

did not overwhelm the court with duplicative filings.  To the contrary, 26 defendants acted

jointly to file a single brief in support of a motion to dismiss, which was joined by more than a

dozen others; the subsequent reply brief was joined by more than one hundred other defendants.

*See Weisfelner v. A. Holmes & H. Holmes (In re Lyondell Chem. Co.)*, Ch. 11 Case No. 09-

10023, Adv. No. 10-05525 (Bankr. S.D.N.Y. filed Dec. 23, 2010).[16]

In light of Defendants' demonstrated willingness and ability to act in a coordinated

---

[16] While the Court in the *Tribune* case ordered the appointment of an Executive Committee and Liaison
Counsel, the circumstances of that case were entirely different.  Not only did the *Tribune* case involve more than
2,100 defendants (as opposed to approximately 270 here),  many defendants were individuals being sued for
relatively modest amounts ($100,000) who otherwise could not have effectively participated in the litigation.  In
addition, unlike this case, in *Tribune* a structure providing for the appointment of a court appointed liaison counsel
and  executive committee of some sort was accepted by virtually all by defendants who appeared .  Initial Case
Mgmt. Conference 7, 9, *Deutsche Bank Trust Co. v. Law Debenture Trust Co. of New York* (*In re Tribune
Fraudulent Conveyance Litig.*), No. 1:12-mc-2296-WHP (S.D.N.Y. July 12, 2012), ECF No. 1282.  Here, by
contrast, Defendants are sophisticated financial institutions with millions of dollars at stake who are interested in
participating in the litigation and who have already organized themselves to do so.

manner and the absence of any compelling or pressing reasons to force defendants to organize themselves into an Executive Committee that acts through Liaison Counsel, this Court should decline to do so.

## III.    The Court Should Enter The Scheduling Order Proposed By Defendants

Defendants respectfully request that their Proposed Order be entered by the Court.  The Defendants' Proposed Order provides a standard litigation protocol which attempts to promote litigation efficiency, avoid bias, and preserve the parties' due process rights.  The main points of the Defendants' Proposed Order, all of which were raised by the Defendants in their March 2014 Meet-and-Confer with LBSF's counsel and thereafter ignored by LBSF without any substantive response on any point, are as follows:

### A.    LBSF Threshold Disclosures

The Defendants' Proposed Order, in Paragraph 2, provides for LBSF to disclose limited threshold information that will aid in the coordination of briefing, argument, and other matters in this litigation.  The information requested is basic data already in LBSF's possession (either directly or through discovery it has taken to date), and limited to the following items: (1) contact information for each defendant to the extent of LBSF's most current information, to allow Defendants to communicate with those defendants whom have not yet filed an appearance in this litigation but will likely do so in the future after the litigation stay has expired and responses to the complaint are due,[17] (2) the monetary amount (itemizing principal and interest), by security, which LBSF is seeking from each defendant, so each of the defendants may understand the specific quantum of the claims at issue in this litigation and the allocation of such

---

[17] LBSF has been able to ascertain location and contact information for defendants over a period of years by, among other things, conducting discovery under Bankruptcy Rule 2004 to which the defendants have not been privy, and LBSF also has likely learned the identity of counsel acting for many defendants by engaging in informal and formal mediation with defendants to which the defendants also have not been privy.

claims among the defendants and assess their relative exposure,[18] (3) the capacity in which

LBSF asserts each noteholder defendant is being sued with respect to each security, so

noteholders can understand the nature of the claims LBSF is asserting against defendants whom

LBSF does not contend are beneficial owners, and (4) a grouping of defendants by the CDO or

CDOs for which LBSF brings claims against them, so each defendant may know which among

the other defendants are associated with the same CDO and thus governed by substantially the

same set of transaction documents.

The requested information is readily accessible by LBSF, directly pertinent to the claims

asserted in this litigation, and will materially aid the progress of this case.  Further, requiring

LBSF to disclose this information now is consistent with Rule 26 of the Federal Rules of Civil

Procedure, made applicable to adversary proceedings by Rule 7026 of the Federal Rules of

Bankruptcy Procedure.  *See* Fed. R. Civ. P. 26(a)(1)(A); Fed. R. Bankr. P. 7026.  Paragraphs 2

and 12 of the Defendants' Proposed Order further requires LBSF to provide updates as new

information on these topics becomes available to it, which is also consistent with Bankruptcy

Rule 7026.[19]

### B.    Establishment Of Document Repository

Paragraph 3 of the Defendants' Proposed Order provides for LBSF to establish an

electronic document repository (the "Document Repository") containing the underlying CDO

transaction documents upon which LBSF's claims are based.  This will allow the parties to

---

[18] At the March 2014 Meet-and-Confer, LBSF stated that each defendant should know the amount in distributions it received with respect to the CDOs at issue in this litigation—but the amount in distributions each defendant received is not necessarily the same as the principal amount which LBSF is *claiming* from each defendant in this action.  The defendants have no access to the latter figures.  Moreover, a noteholder may not necessarily know the capacity in which it is being sued with respect to any particular distribution, or even the identity of that distribution's beneficial owner.

[19] In the event that LBSF fails to provide the information requested under Paragraph 2 of the Defendants' Proposed Order, Defendants reserve the right to file a motion for a more definite statement pursuant to Rule 12(e).

review and access a uniform set of transaction documents basic to the litigation, and also to cite

to them in court pleadings. Upon information and belief, LBSF has already compiled most, and

possibly substantially all, of these documents.[20] The Defendants' Proposed Order also requires

that the Trustee Defendants cooperate with LBSF so that the Document Repository can be as

complete as possible.[21] The Defendants' Proposed Order provides for the transaction documents

to be placed in an electronic location accessible to counsel to all parties to the litigation. The

Document Repository will be subject to confidentiality restrictions, and the use of the materials

will be limited to purposes related to the litigation. The establishment of the Document

Repository is consistent with Rule 26 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ.

P. 26(a)(1)(A)(ii); Fed. R. Bankr. P. 7026.

### C.    Amendment Of Complaint

Paragraph 4 of the Defendants' Proposed Order provides LBSF with thirty (30) days to

file a final amended complaint. LBSF filed its bankruptcy petition on October 3, 2008, and

commenced this Adversary Proceeding nearly two years later on September 14, 2010. All told,

LBSF has now had more than five years since its bankruptcy petition was filed to review,

investigate and analyze the facts and circumstances relating the alleged claims and causes of

action in this litigation. In informal discussions with Defendants, LBSF has indicated it intends

to further amend its complaint and may assert new causes of action. LBSF should file its final

amended complaint promptly so that defendants can know the particular claims being made

against them and have the ability to respond to such claims and to avoid the waste and further

---

[20] Upon information and belief, all of the CDOs at issue in this action were structured and sponsored by *LBSF and its affiliates*, and hence the transaction documents are all in the possession of the Chapter 11 Debtors. Further, Defendants also understand that LBSF already compiled these documents to prepare for mediations with the defendants.

[21] If and to the extent LBSF or the Trustee Defendants do not include one or more documents in the Document Repository reflective of the pertinent transactions, the Defendants' Proposed Order would further permit parties to supplement the Document Repository as needed.

delay that would occur if LBSF were to amend its complaint again after the defendants file their

motions to dismiss as LBSF proposes.

### D.    Threshold Motions To Dismiss Pursuant

Paragraph 6 of the Defendants' Proposed Order provides that Phase I shall consist of

threshold filing and adjudication of motions to dismiss for failure to state a claim pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure (incorporated by Bankruptcy Rule 7012)

(the "Phase I Motions to Dismiss").[22]  For the reasons discussed above, the motions to dismiss

should be decided as the first order of business in this case, and before the Court considers other

matters—class certification and other substantive motions—that will only be necessary if some

portion of the complaint survives the motions to dismiss.  The Phase I Motions to Dismiss can be

decided based solely on the applicable law and the transaction documents in the Document

Repository upon which the LBSF's claims are based.[23]  The Defendants' Proposed Order

requires no discovery in connection with Phase I Motions to Dismiss.

### E.    Process Of The Litigation After Phase I Motions To Dismiss

Paragraphs 7-19 of the Defendants' Proposed Order sets forth the litigation process in the

event the Phase I Motions to Dismiss for failure to state a claim do not result in a full dismissal

of the claims asserted in this adversary proceeding.  During "Phase II," motions to dismiss which

require limited discovery may be filed based upon circumstances particular to an individual or

---

[22] Defendants' motions to dismiss will address, among other things, that certain of LBSF's claims are time-barred and that the statute of limitations with respect to those claims is not tolled by the filing of a defendant class action.  LBSF offers no justification for its attempt to arrogate to itself the right to be the movant with the right of reply on the statute of limitations issue—which is a defense issue.  *See* Fed. R. Civ. P. 8(c); Fed. R. Bankr. P. 7008; *cf.* LBSF Proposed Order ¶ 34.

[23] *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196-97 (2d Cir. 2005) (where a plaintiff relies on the terms and effect of a document in its complaint, a court may properly consider the document in evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (court could consider stock purchase agreement, offering memorandum and warrant when determining a motion to dismiss a securities fraud complaint under Rule 12(b)(6) because such documents were integral to the complaint despite plaintiff's decision not to attach documents to complaint or incorporate such documents by reference).

group of defendants (the "Phase II Motions to Dismiss").  *See* Defendants' Proposed Order ¶ 7.

These would include, by way of example, motions to dismiss based upon lack of personal

jurisdiction.[24]

To the extent there are surviving claims after the determination of the motions to dismiss

in Phase I and Phase II of the litigation, the Defendants' Proposed Order provides that the Parties

may file a motion for class certification within 30 days after the determination of the motions to

dismiss.  *See* Defendants' Proposed Order ¶ 10.  Discovery with respect to potential class

certification issues would be completed within six months after the Court has ruled on the Phase

I and Phase II motions to dismiss.  Following the close of discovery related to the potential

certification of a class, the Defendants' Proposed Order provides for further briefing with respect

to the class certification motion and, to the extent necessary, depositions of any experts

submitting an export report with respect to the class certification issues.

Paragraphs 11-12 of the Defendants' Proposed Order contemplate the commencement of

substantive merits discovery following the determination of the Phase I and Phase II motions to

dismiss.  Merits discovery would not await a decision on a class certification motion. Following

Phase I and Phase II determinations, the parties will meet and confer to develop a protocol to

address substantive merits discovery with respect to any remaining claims or parties.  The factual

merits discovery period will remain open for 270 days, and the expert discovery period will

remain open for 120 days following the completion of the factual merits discovery period.

Following the completion of fact and expert discovery, the parties will commence briefing with

---

[24] Defendants note that one defendant has filed a separate request asking that the Court allow it to adjudicate its motion to dismiss based upon lack of personal jurisdiction during Phase I of the litigation. *See* Appl. to Lift Litig. Stay Solely for the Purpose of Filing Mot. to Dismiss For Lack of Personal Jurisdiction, *Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings Inc.)*, No. 10-03547 (SCC) (Bankr. S.D.N.Y. Mar. 19, 2014), ECF No. 714.  Defendants believe that it may be more orderly to address these motions in Phase II, but do not strongly object if the Court believes it appropriate to handle personal jurisdiction motions in Phase I alongside motions to dismiss for failure to state a claim.

respect to motions for summary judgment as set forth in Paragraph 14 of the Defendants'

Proposed Order.  Following resolution of any summary judgment motions, the remaining matters

will be set for trial in accordance with Paragraphs 15 through 19 of the Defendants' Proposed

Order.

### F.    Coordination Of Briefing, Argument And Discovery

The Defendants' Proposed Order provides for the coordination among defense counsel

with respect to briefing and argument with respect of matters of common interest for the benefit

of the Court, and also provides for coordination among both defendants and LBSF with respect

to discovery so as to avoid duplication on matters of common interest.  *See, e.g.*, Defendants'

Proposed Order ¶¶ 6(d), 7(a), 7(d), 10(g), 11(e), 14(f).  These mechanisms will promote

efficiency and mitigate duplication, without forcing upon the defendants a non-consensual and

inappropriate liaison counsel and executive committee structure.  These provisions are also

consistent with established practice in this district and consistent with Rule 26 of the Federal

Rules of Civil Procedure, which requires parties to meet and confer with respect to discovery

issues.

### G.    Reservation Provisions

Paragraphs 26 and 27 of the Defendants' Proposed Order makes clear that the defendants

do not waive any rights or defenses not asserted in the Phase I Motions to Dismiss.  This

reservation is appropriate to avoid the operation of the waiver provisions of Rules 12(g) and (h)

of the Federal Rules of Civil Procedure (incorporated by Bankruptcy Rule 7012) and is

consistent with other case management and scheduling orders entered in similar multi-phase

complex litigation.  *See, e.g.*, Tribune Case Order ¶¶ 12, 48 (separating motions to dismiss into

two phases and noting that such scheduling procedures do not constitute a waiver of any rights or

defenses).

27

## H.    Preservation Of LBSF's Right To Continue To Discover Additional Defendants

Paragraph 12 of the Defendants' Proposed Order preserves LBSF's right to continue to seek discovery pertinent to identification and service of additional defendants in this adversary proceeding, provided that LBSF shares this information with the defendants.

## I.    Termination Of ADR Injunctions

Paragraphs 20 and 21 of the Defendants' Proposed Order provides for modification of the ADR Orders.  Put simply, given that this Adversary Proceeding will no longer be stayed, defendants should be entitled to participate on an equal basis with LBSF in the litigation of the causes of action asserted against them, and it is not appropriate for a defendant to be subject to extraordinary restrictions on such participation.[25]  The Defendants' Proposed Order further clarifies that defendants may freely communicate with each other with regard to settlement discussions with LBSF, henceforth correcting the unbalanced situation where LBSF knows the communicated negotiation and settlement position of itself and each and every defendant in the Adversary Proceeding, but no defendant is allowed to communicate with other defendants on these same topics.  There is no legal basis to provide LBSF with such an unfair advantage.  *See, e.g., Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981) (holding that a court should not limit communications between parties absent a clear and specific factual finding demonstrating a need for such a limitation, and noting that any such limitation on speech should be as minimal as possible).  Further, the Defendants' Proposed Order does not preclude LBSF and individual defendants from consensually agreeing between themselves in the future to keep settlement discussions confidential, and does not negate any agreement to maintain the confidentiality of

---

[25] The LBSF Proposed Order does not address this point sufficiently, merely providing that such stay will be modified as "necessary," inviting future litigation about what modifications are "necessary" and what portions of the stay, if any, are or are not still in effect.

28

any existing settlement.

In certain other respects, the Defendants' Proposed Order leaves the provisions of the ADR Orders in place. The Defendants' Proposed Order does not have an effect on any other proceeding besides this specific action. The Defendants' Proposed Order does not modify the parties' continuing confidentiality obligations with respect to persons not a party to this litigation, and does not modify the restriction that no party may seek to utilize any proceedings, discussions or proposals that occurred in connection with the ADR proceedings. *See* Defendants' Proposed Order ¶ 21. Further, the Defendants' Proposed Order provides that parties continue to participate in the ADR process in good faith. *See id.*

### J.    Service Of Pleadings

Paragraph 23 of the Defendants' Proposed Order provides for electronic service of pleadings in this litigation where appropriate.

### CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court deny entry of the LBSF Proposed Order and enter the Defendants' Proposed Order.[26]

---

[26] As LBSF has yet to set forth its arguments in any filing, Defendants reserve their right to file a response to LBSF's reply. *See* Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bank. Code and Bank. Rule 7004(a)(1), at 4, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (SCC) (Bankr. S.D.N.Y. Jan. 31, 2014), ECF No. 42,417 (LBSF's May 5, 2014 submission is a "reply"); *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("new arguments may not be made in a reply").

Dated:  April 14, 2014
        New York, New York

Respectfully submitted,

| AKIN GUMP STRAUSS HAUER & FELD | BINGHAM MCCUTCHEN LLP |
|---|---|
| /s/ Deborah Newman<br>Deborah Newman<br>djnewman@akingump.com<br>Justin Bell<br>bellj@akingump.com<br>Roxanne Tizravesh<br>rtizravesh@akingump.com<br>Craig Karger<br>ckarger@akingump.com<br>One Bryant Park<br>New York, NY 10036<br>212-872-7481 (phone)<br>212-872-1002 (fax)<br><br>*Attorneys for Daegu Bank Ltd.; Nonghyup Bank, Korea's National Agricultural Cooperative Federation and Shinhan Bank* | /s/ Joshua Dorchak<br>Joshua Dorchak<br>joshua.dorchak@bingham.com<br>399 Park Avenue<br>New York, NY 10022<br>212-705-7784 (phone)<br>212-702-3667 (fax)<br><br>*Attorneys for Continental Insurance Co. of Brentwood Tennessee; Modern Woodmen of America, Inc.; Phoenix Home Life Variable Insurance Co.; Phoenix Life Insurance Co.; Sun Life Assurance Co. of Canada; Sun Life Assurance Co. of Canada (U.S.); Marsh & McLennan Master Retirement Trust; and Ensign Peak Advisors* |
| BRICKER & ECKLER LLP | CHAPMAN AND CUTLER LLP |
| /s/ Quintin F. Lindsmith<br>Quintin F. Lindsmith<br>qlindsmith@bricker.com<br>100 South Third Street<br>Columbus, OH 43215<br>614-227-8802 (phone)<br>614-227-2390 (fax)<br><br>WONG FLEMING, P.C.<br>James Haney<br>jhaney@wongfleming.com<br>821 Alexander Road<br>Suite 150<br>Princeton, NJ 08540<br>609-951-9520 (phone)<br>609-951-0270 (fax)<br><br>*Attorneys for Nationwide Life Insurance Company and Nationwide Mutual Insurance Company* | /s/ Franklin H. Top, III<br>Franklin H. Top, III *(pro hac vice)*<br>top@chapman.com<br>Scott A. Lewis<br>slewis@chapman.com<br>111 West Monroe Street<br>Chicago, IL 60603<br>312-845-3000 (phone)<br>312-701-2361 (fax)<br><br>and<br><br>Craig M. Price (CP 9039)<br>cprice@chapman.com<br>1270 Avenue of the Americas<br>New York, NY 10020-1708<br>212-655-2522 (phone)<br>212-655-2523 (fax) |

|  | *Attorneys for U.S. Bank National Association, as Trustee, and U.S. Bank Trust National Association, as Trustee, as applicable, for the transactions commonly known as: Diversey Harbor ABS CDO; KLIO II Funding; KLIO III Funding; Lancer Funding II; Montrose Harbor CDO I; Pinnacle Point Funding; Putnam Structured Product CDO 2002-1; Putnam Structured Product CDO 2003-1; Mariner LDC; Class V Funding III; and Whitehawk Funding, which transactions hold Notes issued by certain Issuer Defendants* |
|---|---|
| CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>/s/ Carmine D. Boccuzzi, Jr.<br>Carmine D. Boccuzzi, Jr.<br>cboccuzzi@cgsh.com<br>Shiwon Choe<br>schoe@cgsh.com<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 (phone)<br>212-225-3999 (fax)<br><br>*Attorneys for Goldman, Sachs & Co. and Goldman Sachs International* | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>/s/ Jeffrey A. Rosenthal<br>Jeffrey A. Rosenthal<br>jrosenthal@cgsh.com<br>James W. Doggett<br>jdoggett@cgsh.com<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 (phone)<br>212-225-3999 (fax)<br><br>*Attorneys for Merrill Lynch, Pierce, Fenner & Smith Incorporated* |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>/s/ Lewis J. Liman<br>Lewis J. Liman<br>lliman@cgsh.com<br>Matthew Gurgel<br>mgurgel@cgsh.com<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 (phone)<br>212-225-3999 (fax)<br><br>*Attorneys for ANZ Nominees Limited and Morgan Financial Limited (f/k/a RBS Morgans Limited)* | DRINKER BIDDLE & REATH LLP<br><br>/s/ James Millar<br>James Millar<br>james.millar@dbr.com<br>1177 Avenue of the Americas, 41st Floor<br>New York, NY 10036-2714<br>212-248-3264 (phone)<br><br>*Attorneys for Union Investment Institutional GmbH* |

| FRESHFIELDS BRUCKHAUS DERINGER US LLP | FROST BROWN TODD LLC |
|---|---|
| /s/ Timothy P. Harkness<br>Timothy P. Harkness<br>timothy.harkness@freshfields.com<br>David Y. Livshiz<br>david.livshiz@freshfields.com<br>Caitrin Una McKiernan<br>caitrin.mckiernan@freshfields.com<br>Michelle Young Suh Park<br>michelle.park@freshfields.com<br>601 Lexington Ave., 31st Floor<br>New York, NY 10022<br>212-277-4000 (phone)<br>212-277-4001 (fax)<br><br>*Attorneys for Shield Securities Limited* | /s/ Nelson Alexander<br>Nelson Alexander<br>nalexander@fbtlaw.com<br>201 North Illinois Street<br>Suite 1900<br>Indianapolis, IN 46204<br>317-237-3800 (phone)<br>317-237-3900 (fax)<br><br>Lindsey Baker<br>lbaker@fbtlaw.com<br>Ronald Eric Gold<br>rgold@fbtlaw.com<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202<br>513-651-6800 (phone)<br>513-651-6981 (fax)<br><br>*Attorneys for Ohio Public Employee*<br>*Retirement System* |
| HOGAN LOVELLS US LLP | HUNTON & WILLIAMS LLP |
| /s/ Andrew Behrman<br>Andrew Behrman<br>andrew.behrman@hoganlovells.com<br>Dan Lanigan<br>daniel.lanigan@hoganlovells.com<br>Peter Ivanick<br>peter.ivanick@hoganlovells.com<br>875 Third Avenue<br>New York, NY 10022<br>212-918-3000 (phone)<br><br>*Attorneys for SCOR Reinsurance Co.* | /s/ Joseph J. Saltarelli<br>Joseph J. Saltarelli<br>jsaltarelli@hunton.com<br>John Richard Hein<br>jhein@hunton.com<br>200 Park Avenue<br>New York, NY 10166<br>212-309-1091 (phone)<br>212-309-1100 (fax)<br><br>Shannon E. Daily<br>sdaily@hunton.com<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA 23219<br>804-788-8200 (phone)<br>807-788-8218 (fax)<br><br>*Attorneys for Shenandoah Life Insurance Co.* |

| | |
|---|---|
| JACKSON WALKER L.L.P.<br><br>/s/ Patty Tomasco<br>Patty Tomasco<br>ptomasco@jw.com<br>Emilio Nicolas<br>enicolas@jw.com<br>100 Congress Avenue<br>Suite 1100<br>Austin, TX 78701<br>512-236-2076 (phone)<br>512-691-4438 (fax)<br><br>*Attorneys for RGA Reinsurance Company* | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.<br><br>/s/ Matthew Gold<br>Matthew Gold<br>mgold@kkwc.com<br>Marc Rosen<br>mrosen@kkwc.com<br>551 Fifth Avenue, 18th Floor<br>New York, NY 10176<br>212-880-9827 (phone)<br>212-986-8866 (fax)<br><br>*Attorneys for Elliott International, L.P. and*<br>*The Liverpool Limited Partnership* |
| LOWENSTEIN SANDLER LLP<br><br>/s/ Jeffrey Prol<br>Jeffrey Prol<br>jprol@lowenstein.com<br>65 Livingston Ave.<br>Roseland, NJ 07068<br>973-597-2490 (phone)<br>973-597-2491 (fax)<br><br>*Attorneys for Bank Sinopac, f/k/a International*<br>*Bank of Taipei* | MAYER BROWN LLP<br><br>/s/ Steven Wolowitz<br>Steven Wolowitz<br>swolowitz@mayerbrown.com<br>Christopher Houpt<br>choupt@mayerbrown.com<br>Brian Trust<br>btrust@mayerbrown.com<br>1675 Broadway<br>New York, NY 10019<br>212-506-2500 (phone)<br>212-849-5830 (fax)<br><br>*Attorneys for Société Générale Investment*<br>*Corporation* |

| McCarter & English, LLP | McDermott Will & Emery LLP |
|---|---|
| /s/ David Adler<br>David Adler<br>dadler@mccarter.com<br>245 Park Avenue<br>New York, NY 10167<br>212-609-6847 (phone)<br>212-609-6921 (fax)<br><br>Katharine Mayer<br>McCarter & English, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE 19801<br>302-984-6312 (phone)<br>302-984-2494 (fax)<br><br>*Attorneys for Security Benefit Life Insurance Co.* | /s/ Andrew B. Kratenstein<br>Andrew B. Kratenstein<br>akratenstein@mwe.com<br>Sandra B. Saunders<br>ssaunders@mwe.com<br>340 Madison Avenue<br>New York, NY 10173<br>212-547-5400 (phone)<br>212-547-5444 (fax)<br><br>*Attorneys for Cannington Funding Ltd.* |
| McKenna Long & Aldridge LLP | Morgan Lewis & Bockius LLP |
| /s/ Gary W. Marsh<br>Gary W. Marsh<br>gmarsh@mckennalong.com<br>David E. Gordon<br>dgordon@mckennalong.com<br>303 Peachtree Street, Suite 5300<br>Atlanta, GA 30306<br>404-527-4000 (phone)<br>404-527-4198 (fax)<br><br>Christopher F. Graham<br>cgraham@mckennalong.com<br>230 Park Avenue, Suite 1700<br>New York, NY 10169<br>212-905-8300 (phone)<br>212-922-1819 (fax)<br><br>*Attorneys for AXIS Specialty Limited (f/k/a Atlas Specialty Insurance Limited)* | /s/ Andrew Gottfried<br>Andrew Gottfried<br>agottfried@morganlewis.com<br>Patrick Fleming<br>pfleming@morganlewis.com<br>101 Park Avenue<br>New York, NY 10178<br>212-309-6614 (phone)<br>212-309-6001 (fax)<br><br>*Attorneys for Deutsche Apotheker und Arztebank, Susquehanna Bank and SBSI, Inc.* |

| MORGAN LEWIS & BOCKIUS LLP | MORGAN LEWIS & BOCKIUS LLP |
|---|---|
| /s/ Marc Shanker<br>Marc Shanker<br>mshanker@morganlewis.com<br>101 Park Avenue<br>New York, NY 10178<br>212-309-7145 (phone)<br>212-309-6001 (fax)<br><br>*Attorneys for Clearstream Banking S.A.* | /s/ John C. Goodchild, III<br>John C. Goodchild, III<br>jgoodchild@morganlewis.com<br>Rachel Mauceri<br>rmauceri@morganlewis.com<br>1701 Market Street<br>Philadelphia, PA 19103<br>215-963-5000 (phone)<br>215-963-5001 (fax)<br><br>*Attorneys for Country Life Insurance Co. and*<br>*Lincoln National Life Insurance Co.* |
| PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br><br>/s/ Claudia L. Hammerman<br>Stephen J. Shimshak<br>sshimshak@paulweiss.com<br>Claudia L. Hammerman<br>chammerman@paulweiss.com<br>Liza M. Velazquez<br>lvelazquez@paulweiss.com<br>1285 Avenue of the Americas<br>New York, NY 10019<br>212-373-3133 (phone)<br>212-757-3990 (fax)<br><br>*Attorneys for Citigroup Global Markets Inc.* | REED SMITH LLP<br><br>/s/ Eric Schaffer<br>Eric Schaffer<br>eschaffer@reedsmith.com<br>K. Issac deVyver<br>kdevyver@reedsmith.com<br>225 Fifth Ave.<br>Pittsburgh, PA 15222<br>412-288-3131 (phone)<br>412-288-3063 (fax)<br><br>*Attorneys for PPL Services Corporation*<br>*Master Trust* |

| SATTERLEE STEPHENS BURKE & BURKE LLP | SEWARD & KISSEL LLP |
|---|---|
| /s/ Richard C. Schoenstein<br>Richard C. Schoenstein<br>rschoenstein@ssbb.com<br>Dai Wai Chin Feman<br>dchinfeman@ssbb.com<br>230 Park Avenue<br>New York, NY 10169<br>212-404-8707 (phone)<br><br>*Attorneys for Helios High Income Fund Inc.<br>(f/k/a RMK High Income Fund Inc.); Helios<br>Multi-Sector High Income Fund Inc. (f/k/a<br>RMK Multi-Sector High Income Fund Inc.);<br>Helios Strategic Income Fund Inc. (f/k/a RMK<br>Strategic Income Fund Inc.) and Helios<br>Advantage Income Fund Inc. (f/k/a RMK<br>Advantage Income Fund Inc.)* | /s/ John Ashmead<br>John Ashmead<br>ashmead@sewkis.com<br>Ronald Cohen<br>cohen@sewkis.com<br>Justin Shearer<br>shearer@sewkis.com<br>One Battery Park Plaza<br>New York, NY 10004<br>(212) 574-1200 (phone)<br>(212) 480-8421 (fax)<br><br>*Attorneys for PB Capital Corporation* |
| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP |
| /s/ Alex Rovira<br>Alex Rovira<br>arovira@sidley.com<br>787 Seventh Ave.<br>New York, NY 10019<br>212-839-5300 (phone)<br>212-839-5699 (fax)<br><br>*Attorneys for Genworth Life & Annuity<br>Insurance Co. LV SPIA; Genworth Life &<br>Annuity Insurance Co. LV STISL; Magnetar<br>Capital; Magnetar Constellation Master Fund<br>II, Ltd.; Magnetar Constellation Master Fund<br>III, Ltd.; Magnetar Constellation Master Fund,<br>Ltd. and UniCredit Bank AG, London Branch* | /s/ Michael G. Burke<br>Michael G. Burke<br>mgburke@sidley.com<br>787 Seventh Ave.<br>New York, NY 10019<br>212-839-5300 (phone)<br>212-839-5699 (fax)<br><br>*Attorneys for Delphi Financial Group, Inc.* |

| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP |
|---|---|
| /s/ Bryan Krakauer<br>Bryan Krakauer<br>bkrakauer@sidley.com<br>Mark Blocker<br>mblocker@sidley.com<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>312-853-7000 (phone)<br>312-853-7036 (fax)<br><br>*Attorneys for Principal Life Insurance Co.* | /s/ Mark Blocker<br>Mark Blocker<br>mblocker@sidley.com<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>312-853-7000 (phone)<br>312-842-7036 (fax)<br><br>*Attorneys for Reliance Standard Life Insurance Co. and Safety National Casualty Corp.* |
| STROOCK & STROOCK & LAVAN LLP | SULLIVAN & CROMWELL LLP |
| /s/ Claude Szyfer<br>Claude Szyfer<br>cszyfer@stroock.com<br>Mark Speiser<br>mspeiser@stroock.com<br>Sherry Millman<br>smillman@stroock.com<br>180 Maiden Lane<br>New York, NY 10038<br>212-806-5400 (phone)<br>212-806-6006 (fax)<br><br>*Attorneys for Mizuho International plc and Structured Credit America Ltd.* | /s/ Robinson Lacy<br>Robinson Lacy<br>lacyr@sullcrom.com<br>125 Broad Street<br>New York, NY 10004<br>212-558-3879 (phone)<br>212-558-9088 (fax)<br><br>*Attorneys for Barclays Bank PLC; Barclays Capital, Inc. and Long Island International Limited* |

| VENABLE LLP | WACHTELL, LIPTON, ROSEN & KATZ |
|---|---|
| /s/ Edward Smith<br>Edward Smith<br>easmith@venable.com<br>David N. Cinotti<br>dncinotti@venable.com<br>Rishi Kapoor<br>rkapoor@venable.com<br>Venable LLP<br>Rockefeller Center<br>1270 Avenue of the Americas<br>25th Floor<br>New York, NY 10020<br>212-307-5500 (phone)<br>212-307-5598 (fax)<br><br>*Attorneys for Euroamerica Seguros De Vida SA; Garadex Inc.; Gatex Properties Inc. and Morgan Stanley & Co. Incorp. n/k/a Morgan Stanley & Co. LLC* | /s/ Ian Boczko<br>Ian Boczko<br>IBoczko@wlrk.com<br>51 West 52nd Street<br>New York, NY 10019-6150<br>212-403-1000 (phone)<br>212-403-2000 (fax)<br><br>*Attorneys for JP Morgan Chase Bank, NA and JP Morgan Securities, LLC* |

10-03547-scc    Doc 730    Filed 04/14/14    Entered 04/14/14 15:37:53    Main Document
Pg 43 of 60

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC. *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | |
| Plaintiff, | |
| v. | Adversary Proceeding |
| BANK OF AMERICA NATIONAL ASSOCIATION *et al.*, | No. 10-03547 (SCC) |
| Defendants. | |

## [PROPOSED] SCHEDULING ORDER

WHEREAS, Plaintiff Lehman Brothers Special Financing Inc. initiated the above-captioned action (the "Action") by filing a complaint, dated September 14, 2010 (the "Original Complaint"), which asserts claims against certain indenture trustees, certain special-purpose entities, and specific holders of notes (the "Notes") issued by the special-purpose entities both individually and as representatives of a purported class of noteholders (the "Alleged Noteholder Class") that allegedly received distributions (the "Distributions") from the indenture trustees pursuant to certain transaction documents (the "Transaction Documents");

WHEREAS, on September 17, 2009, this Court entered an Order titled *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts* [Dkt. No. 5207; In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP)] (the "ADR Order"), which mandated Alternative Dispute Resolution ("ADR")

participation of all parties to any Derivatives ADR Dispute and compliance with all Derivatives ADR Procedures;[1]

WHEREAS, the ADR Order was subsequently amended by Order dated July 18, 2012 (*Amended Order Providing for Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties* [Dkt. No. 59207, In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555 (JMP)]) (the "Amended ADR Order");

WHEREAS, the Action has been stayed since October 20, 2010 pursuant to an Order[2] of this Court and subsequent extensions of that Order;[3]

WHEREAS, Plaintiff subsequently amended the Original Complaint, most recently on July 23, 2012 [Dkt. No. 303] (the "Second Amended Complaint");

WHEREAS, on January 31, 2014, this Court entered an *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Case No. 08-13555; Dkt. No. 42471] (the "Bridge Order") that extended the Stay[4] of proceedings to the later of (i) May 20, 2014 or (ii) thirty (30) days after the date on which the Court enters a scheduling order governing this

---

[1]  As defined in the ADR Order.

[2]  *See Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated October 20, 2010 [Dkt. No. 12199, In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555].

[3]  *See Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Dkt. No. 17763, In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555]; *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Dkt. No. 24198, In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555]; *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Dkt. No. 29506, In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555]; *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Dkt. No. 34697, In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555]; *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Dkt. No. 42417, In re Lehman Brothers Holdings Inc., et al., Case No. 08-13555].

[4]  As defined in the Bridge Order.

Action;

WHEREAS, pursuant to the Bridge Order, Plaintiff filed a proposal to govern the schedule of this Action [Dkt. No. 707], to which Defendants objected and offered a counterproposal [Dkt. No. __], and Plaintiff filed a reply in support of its proposal [Dkt. No. __];

WHEREAS, this Court, having considered the documents and arguments submitted in support of the competing schedules, hereby finds that the procedures set forth in this Order are necessary and appropriate to conserve the resources of the Court and the parties and to promote the just, speedy and the expedient disposition of this Action;

Pursuant to Bankruptcy Rule 7016, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.    Effective upon entry of this Order, the Stay of proceedings initially ordered by this Court in its *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated October 20, 2010 [Dkt. No. 12199, <u>In re Lehman Brothers Holdings Inc., et al.</u>, Case No. 08-13555] and subsequently extended by multiple Orders thereafter, is lifted with respect to this Action subject only to the provisions contained in this Order.

2.    Pursuant to Fed. R. Civ. P. 26(a)(1)(A), as made applicable herein by Bankruptcy Rule 7026 and the Court's inherent authority, within thirty (30) days of the entry of this Order, Plaintiff shall disclose to Defendants, subject to such confidentiality restrictions as may be appropriate to limit the use of such information to purposes related to this Action, the following information:

(a)    contact information for counsel for each Defendant, based upon the most recent information available to Plaintiff (whether through a filed appearance or otherwise);

(b)    the monetary amount, including an itemization of the principal and interest amounts demanded from each Defendant;

(c)    the capacity in which each Noteholder Defendant[5] is being sued with respect to each security (and, for any Distribution where a Defendant was not the beneficial owner, identification of the beneficial owner insofar as such information is within its possession, custody or control); and

(d)    grouping of Defendants by the security issued.

3.    Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), Plaintiff shall establish a document repository of the Transaction documents (the "Document Repository") that Plaintiff may use to support its claims.   The Document Repository shall be organized by transaction, and shall include the respective swap agreements, indentures, note purchase agreements, purchasing memoranda, trust deed and any supplement to the trust deed, termination letters, termination calculation statements pertaining to the transactions upon which the claims are based, and any other documents in Plaintiff's possession, custody or control that support its claims.   Plaintiff shall grant access rights to the relevant documents in the Document Repository to counsel for each of the parties, and subject to such confidentiality restrictions as may be appropriate, to the parties to litigation and other persons who may be appropriate, and the use of such materials shall be limited to purposes related to this Action.   The Trustee Defendants shall reasonably cooperate with the Plaintiff so that the documents in the Document Repository are as accurate and complete as is feasible.   To the extent Plaintiff, even after cooperation with the Trustee Defendants, is not in possession of any of the documents described above, Plaintiff shall disclose and describe to Defendants the documents not in Plaintiff's possession.   Within forty-five (45) days of the entry of this Order, Plaintiff shall certify its compliance with this Order's requirements regarding

---

[5]   As defined in Plaintiff's Second Amended Complaint.

4

disclosures to Defendants and the creation and population of the Document Repository. Plaintiff's obligation to populate the Document Repository is ongoing, and Plaintiff shall supplement the Document Repository with any Transaction documents regardless of when received. Any Defendant shall be entitled to supplement the Document Repository with additional documents related to the transactions as it may deem appropriate.

**Amendments to Pleadings**

4.     Plaintiff has thirty (30) days from the entry of this Order to file any amendments to the Second Amended Complaint.

5.     Amendments to any Answers filed by Defendants shall be governed by Fed. R. Civ. P. 15.

**Phase I and Phase II:  Dismissal Motions Pursuant to Fed. R. Civ. P. 12**

6.     <u>Phase I:</u>   Within sixty (60) days after either the filing by Plaintiff of an amended complaint, or the deadline for filing an amended complaint, Defendants may file motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("<u>Phase I Motions to Dismiss</u>").

        (a)     Plaintiff shall have sixty (60) days from the filing of any Phase I Motions to Dismiss to file a brief in opposition.

        (b)     Defendants shall have forty-five (45) days to file a reply to any opposition.

        (c)     In advance of the hearing on the Phase I Motions to Dismiss, the Court will advise the Parties how much time, in aggregate, the Parties shall have for oral argument.

        (d)     While any Defendant moving to dismiss in Phase I shall have the opportunity to submit a brief on its own behalf and participate in oral argument, Defendants shall use their best efforts to coordinate briefing and oral argument to minimize redundancy of arguments.

7.     <u>Phase II:</u>  Within sixty (60) days after the Court has ruled upon all Phase I Motions to Dismiss, Defendants may file any remaining dispositive motions pursuant to Fed. R. Civ. P. 12,

or any motions or objections based on statutes of limitations to the extent not addressed in Phase I, including, without limitations, any motion or objection related to the timeliness of the claims added by the Plaintiff under the Second Amended Complaint ("Phase II Motions to Dismiss").

(a)    Limited discovery pertaining to the issues raised in any Phase II Motions to Dismiss shall be completed within forty-five (45) days after the service of such Phase II Motions to Dismiss.  Similarly situated Defendants shall coordinate discovery with respect to Phase II Motions to Dismiss to the extent possible.  No discovery shall be required of any Defendant that does not file (or join) a Phase II Motion to Dismiss.

(b)    Plaintiff shall have sixty (60) days from service of any Phase II Motion to Dismiss to file a brief in opposition.

(c)    Defendants shall have forty-five (45) days from service to file a reply to any opposition.

(d)    While any Defendant that files or joins in a Phase II Motion to Dismiss may submit a brief on its own behalf and participate in oral argument, Defendants shall use best efforts to coordinate briefing and oral argument to minimize redundancy of arguments.

8.    Answer:  Within sixty (60) days after the Court has ruled upon all Phase II Motions to Dismiss, Defendants shall file Answers, to the extent Defendants' motions to dismiss are denied in whole or in part.  Defendants are permitted to incorporate by reference all or portions of any form of answer, including any affirmative defenses, filed by any other Defendant.

(a)    Amendments to an Answer shall be governed by Fed. R. Civ. P. 15;

(b)    Any Defendant wishing to implead a third party pursuant to Fed. R. Civ. P. 14 must do so concurrently with the filing of its Answer;

(c)    Thirty (30) days after service of Defendants' Answers, no further joinder of parties by Plaintiff shall be permitted.

9.      All initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) not covered by Paragraph 1 herein shall be exchanged within thirty (30) days of Defendants' filing of Answers.

**Phase III:  Class Certification Pursuant to Fed. R. Civ. P. 23**

10.     Thirty (30) days after the Court has ruled upon all Phase II Motions to Dismiss, Plaintiff may file a motion for class certification ("Class Certification Motion") pursuant to Fed. R. Civ. P. 23.

(a)      All discovery disputes related to class certification shall be governed by this Court's Individual Rules of Practice.

(b)      Within fourteen (14) days following the Court's ruling on all Phase II Motions to Dismiss, any remaining Parties shall meet and confer to develop a protocol to handle discovery matters consistent with Fed. R. Civ. P. 26(f) ("Class Discovery Protocol").

(c)      The Parties shall present the Class Discovery Protocol to the Court within fourteen (14) days after the Parties have met and conferred.  If the Parties cannot reach agreement, they shall submit a joint document to the Court describing the areas of agreement and disagreement within fourteen (14) days after the Parties have met and conferred.

(d)      The parties may commence discovery related to class certification issues ("Class Certification Discovery") upon the agreement or further order establishing the Class Discovery Protocol.  All discovery related to class certification (except as identified in paragraphs 11 and 12, below) will be completed no later than 180 days after the Court has ruled on the Phase II Motions to Dismiss.

(e)      To the extent the Class Certification Motion is accompanied by an expert report or factual declaration, Defendants may depose Plaintiff's expert or any declarants within sixty (60) days from the establishment of the Class Discovery Protocol;

(f)     Plaintiff may utilize the Document Repository to share materials produced by Plaintiff pursuant to Class Certification Discovery, if confidentiality concerns can be appropriately addressed.

(g)     While each Defendant is entitled to participate in Class Certification Discovery, Defendants shall use their best efforts to coordinate the preparation of requests for production, interrogatories, requests for admission, and the taking of depositions.

(h)     Defendants may file an opposition to the Class Certification Motion ("Class Certification Opposition") within thirty (30) days after the deadline for completion of Class Certification Discovery, or if no such discovery is taken, within thirty (30) days of service of the Class Certification Motion.  Defendants are encouraged and permitted to incorporate by reference all or portions of a memorandum of law in support of the Class Certification Opposition submitted by any Defendant.

(i)     To the extent the Class Certification Opposition is accompanied by an expert report or factual declaration, Plaintiff may depose Defendants' expert or any declarants within forty-five (45) days from the filing of the Class Certification Opposition.

(j)     Plaintiff may file a reply memorandum of law in support of the Class Certification Motion within thirty (30) days after the deadline for completion of the discovery described in the previous paragraph, or if no such discovery is required, within thirty (30) days of service of the Class Certification Opposition.

(k)     The Court will advise the Parties in advance how much time, in aggregate, the Parties shall have for oral argument on the Class Certification Motion.

(l)     Notwithstanding anything to the contrary herein, (i) none of the Trustee Defendants will need to have any involvement in any of the Phase III class certification issues

8

and (ii) no opinions or orders of this Court on any Phase III class certification issue will have any preclusive effect, whether under principles of res judicata, collateral estoppel or otherwise, on any claims or defenses of any of the Trustee Defendants.

**Merits Discovery**

11.    With the exception of discovery and disclosures otherwise expressly provided for in this Order, merits discovery is stayed until thirty (30) days after the Court has ruled upon all Phase II Motions to Dismiss.  Merits discovery shall be completed within 270 days from the end of the stay ("Merits Discovery Period") and may be extended upon motion for cause shown.

(a)    All discovery disputes shall be governed by this Court's Individual Rules of Practice;

(b)    Within fourteen (14) days following the Court's ruling on the Phase II Motions to Dismiss, any remaining Parties shall meet and confer to develop a protocol to handle discovery matters consistent with Fed. R. Civ. P. 26(f) ("Merits Discovery Protocol");

(c)    The Parties shall present the Merits Discovery Protocol to the Court within fourteen (14) days after the Parties' meet and confer.  If the Parties cannot reach agreement, they shall submit a joint document to the Court describing the areas of agreement and disagreement within fourteen (14) days after the Parties have met and conferred;

(d)    Plaintiff may utilize the Document Repository to share materials produced by Plaintiff pursuant to discovery, if confidentiality concerns can be appropriately addressed;

(e)    While each Defendant is entitled to participate in discovery, Defendants shall use their best efforts to coordinate the preparation of protocols, requests for production, interrogatories, requests for admission, and the taking of depositions to avoid redundancy.

12.    This Order does not affect Plaintiff's right to continue with limited discovery related to the identification and service of additional Defendants to this Action as described in this Court's

9

October 25, 2010 *Order Granting Plaintiff's Motion for Expedited Discovery Pursuant to Bankruptcy Rules 7026 and 9014 and Establishing a Protocol Governing the Confidentiality of and Access to Certain Discovery Materials* [Dkt. No. 27]. Any pertinent information learned by Plaintiff through this discovery shall be disclosed to all Parties in accordance with Paragraph 1, above.

### **Expert Discovery**

13.     Pursuant to Fed. R. Civ. P. 26(a), Plaintiff shall disclose the identity of any witnesses they may use at trial to present evidence under Fed. R. Evid. 702, 703, or 705 within thirty (30) days of the close of the Merits Discovery Period and shall make all disclosures required under Fed. R. Civ. P. 26(a)(2)(B) and (C).

(a)     Within 30 days of service of any Plaintiff's expert disclosures (identified in the above paragraph), Defendants shall disclose the identity of any witnesses they may use at trial to present evidence under Fed. R. Evid. 702, 703, or 705 and shall make all disclosures required under Fed. R. Civ. P. 26(a)(2)(B) and (C);

(b)     Plaintiff shall have thirty (30) days from the service of any Defendant expert reports to disclose any rebuttal experts and produce any rebuttal expert reports pursuant to Fed. R. Civ. P. 26(a)(2);

(c)     Expert discovery shall be completed within 120 days after the close of Merits Discovery Period.

## Motions for Summary Judgment

14.    Pursuant to Local Rule 7056-1(a), Parties shall file any letter requests requesting a pre-motion conference within thirty (30) days following the close of expert discovery.

(a)    The Court will schedule the pre-motion conference by separate order.

(b)    Any motions for summary judgment pursuant to Fed. R. Civ. P. 56, as made applicable herein by Bankruptcy Rule 7056, shall be filed within thirty (30) days following the pre-motion conference.

(c)    Any opposition to a summary judgment motion shall be filed within sixty (60) days of service of the motion for summary judgment.

(d)    Any reply memoranda of law may be filed within forty-five (45) days of service of any opposition.

(e)    The Court will advise the Parties in advance how much time, in aggregate, the Parties shall have for oral argument on motions for summary judgment.

(f)    While any Defendant moving for summary judgment shall have the opportunity to submit a brief on its own behalf and participate in oral argument, Defendants shall use their best efforts to coordinate briefing and oral argument to minimize redundancy of arguments.

## Pre-Trial

15.    Pursuant to Fed. R. Civ. P. 16(e), a Final Pre-trial Conference shall be scheduled by further order of this Court.

16.    Pursuant to Fed. R. Civ. P. 26(a)(3)(A), all pre-trial disclosures shall be served sixty (60) days prior to the Pre-trial Conference.  Time frames for responses and objections shall be as provided in the Rule.

17.    Any *Daubert* motion to strike or limit the testimony of any expert shall be filed ninety (90) days prior to the Final Pre-trial Conference.

11

(a)    Any opposition to a *Daubert* motion shall be filed within thirty (30) days after service of the motion;

(b)    Any reply shall be filed within fourteen (14) days after service of the opposition;

(c)    The Court will advise the Parties in advance how much time, in aggregate, the Parties shall have for oral argument on *Daubert* motions.  The aggregate time shall be divided equally between moving and responding parties.

18.    All other motions, including motions *in limine*, shall be filed thirty (30) days prior to the Pre-trial Conference.

(a)    Any opposition shall be filed within fourteen (14) days of service of the motion;

(b)    Any reply shall be filed within five (5) days of service of the opposition.

19.    This Action shall be set for trial by further order of this Court.

## Termination of ADR Injunctions

20.    Effective upon entry of this Order, the Amended ADR Order is hereby modified to allow for any Defendants continuing to participate in the ADR process to participate in this Action without any restriction on such participation.

21.    In order to facilitate coordination among the Defendants, the Confidentiality provisions of the Amended ADR Order (at Section 13) and any agreements implementing the ADR process anticipated therein, are hereby modified to allow for unrestricted communications regarding this Action between Defendants to this Action.  For avoidance of doubt, this Order does not modify the Amended ADR Order or any agreements implementing the ADR process anticipated therein with respect to communications not regarding this Action.  This Order does not modify the Parties' continuing confidentiality obligations under Section 5.0 of the Standing Order to third parties or this Court.  Nor does this Order affect the restrictions pursuant to Fed. R. Evid. 408 on any Party seeking to utilize any proceedings, discussions, or proposals that occur as part of the

ADR effort.  Consistent with the foregoing, the Parties shall to continue to participate in the ADR process in good faith.

**Miscellaneous**

22.     This order may be modified *sua sponte* or on motion of a party for cause shown.

23.     Except for the summons and complaint, and as further described in this paragraph, no Party shall be required to serve – other than by electronic means via ECF system or, with respect to Defendants that appear *pro se*, via email – any docket entry upon any other Party (including any Defendant who does not file a notice of appearance), and the filing of a notice of appearance shall be deemed consent to service of all documents via the ECF system only; provided that Plaintiff shall be required to serve by either postal mail or commercial delivery service any Defendant who is both appearing *pro se* and who does not have access to email.

24.     In respect of all motion practice related to Phase I Motions to Dismiss, Phase II Motions to Dismiss, Phase III Class Certification, and Summary Judgment Motions, page limitations shall be set forth in a future Order.

25.     All communications and documents (including drafts) exchanged between and among any of the Defendants, and/or their respective attorneys, shall be deemed to be privileged communications and/or work product, as the case may be, subject to a joint interest privilege.

**No Waiver of Rights**

26.     Nothing in this Order will be construed to waive any otherwise applicable right of Plaintiff or Defendants with respect to any constitutional issues (including *Stern v. Marshall*), any potential motion to withdraw the reference, or any subject-matter or personal jurisdictional issues in connection with this Action.

27.     Nothing in this Order will be construed to waive any otherwise applicable right of Plaintiff or Defendants to seek immediate interlocutory appeal of any adverse Order or proposed

finding of fact or law.  Nothing in this Order will be construed to waive any otherwise applicable

right of Plaintiff or Defendants to object to any such interlocutory appeal.



Dated:  New York, New York
        May ___, 2014


                                            _____

                                            Shelley C. Chapman

                                            Bankruptcy Judge

10-03547-scc    Doc 730    Filed 04/14/14    Entered 04/14/14 15:37:53    Main Document
Pg 59 of 60

# EXHIBIT B

**Differences in Defendants' and LBSF's Proposed Orders**

| | Defendants | LBSF |
|---|---|---|
| **Order of Proceedings** | | |
| Amending Complaint | ¶ 4:  Final operative complaint will be filed within 30 days from entry of scheduling order (est. June/July 2014). | ¶ 44:  Final operative complaint might not be filed until the end of "Phase III" (est. 2016). |
| Rule 12 Motions | ¶ 6:  "Phase I" briefing on Rule 12(b)(6) motions will begin 60 days after, and be complete 165 days after, entry of amended complaint (est. Aug. 2014–Jan. 2015).<br><br>¶ 7:  "Phase II" briefing on remaining Rule 12 motions and statute of limitations to the extent not addressed in Phase I will begin 60 days after, and be complete 165 days after, determination of the Phase I Rule 12(b)(6) motions. | ¶¶ 38-43:  Rule 12(b)(6) briefing will not begin until "Phase III" (est. 2016).<br><br>Personal jurisdiction and statute of limitations briefing will be allowed in "Phase II" (est. 2015-2016).<br><br>¶¶ 34-37:  Plaintiff is movant on statute of limitations defense with right of reply, despite this issue being a defense issue. |
| Discovery | ¶ 11:  No discovery (other than certain preliminary disclosures) required at the outset of litigation.<br><br>¶ 7(a):  Discovery to the extent necessary on personal jurisdiction issues in "Phase II."<br><br>¶¶ 10, 11:  Discovery on class certification issues and merits to proceed simultaneously following rulings on motions to dismiss.  All discovery to be completed within 390 days of rulings on motions to dismiss (est. 2016). | ¶¶ 21-30:  Extensive class certification discovery required at the outset of litigation prior to determination of viability of claims.<br><br>¶ 45:  Merits discovery not to commence until after the Court decides "Phase III" motions (est. 2016).  No timetable set for close of discovery. |
| Class Certification | ¶ 10:  Class certification stage to commence following rulings on motions to dismiss.<br><br>Class certification would only need to be addressed once. | ¶¶ 18-37: Class certification stage precedes Rule 12 motions.<br><br>If a class is certified and then rulings on motions to dismiss result in dismissal of defendants or claims that affect Rule 23 factors, class certification might need to be addressed a second time. |

|  | **Defendants** | **LBSF** |
|---|---|---|
| Summary Judgment Motions | ¶ 14: Summary judgment briefing will begin after the close of discovery (est. 2016). | No timetable set for summary judgment briefing.<br><br>Motions to dismiss and merits discovery will likely not begin until 2016, so summary judgment would likely not take place until 2017-2018. |
| **Organization** | | |
| Defense Coordination | ¶¶ 6(d), 7(a), 7(d), 10(g), 11(e), 14(f): Defendants to use best efforts to coordinate briefing, oral argument and discovery. | ¶¶ 7-17: Defendants required to nominate "Executive Committee" and "Liaison Counsel" and provide "information used to appoint class counsel under Federal Rule of Civil Procedure 23(g)," prior to any determination of class certification.<br><br>Other Defendants required to file written requests with the Court every time they wish to address the Court. |
| LBSF Preliminary Disclosures to | ¶ 2: LBSF to disclose limited threshold information re Defendants.<br><br>¶ 3: LBSF to establish electronic document repository containing underlying transaction documents. | LBSF not required to disclose any information to Defendants. |
| Ability of Defendants to Participate in Litigation | ¶¶ 6(d), 7(a), 7(d), 10(g), 11(e), 14(f), 20, 21: Defendants permitted to participate in the litigation and will use best efforts to coordinate briefing, oral argument and discovery. ADR Orders are modified to confirm that Defendants may participate in their own defense in this litigation and may communicate with each other regarding possible settlement. | ¶¶ 11, 15: Non-Executive Committee/Liaison Counsel Defendants required to file written requests with the Court every time they wish to address the Court.<br><br>¶¶ 20, 39, 42: LBSF to seek modification of ADR Orders "as necessary" to allow all Defendants to participate in the litigation of Phases I, II, III. Until such time, Defendants in ADR proceedings are stayed and barred from participating in their own defense in this litigation. No representations provided as to what LBSF will determine is "necessary." Defendants prohibited from communicating with each other regarding possible settlement. |