# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------

No. 13 Civ. 2211 (RJS)

----------------------

IN RE LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtors.

----------------------

TRACY HOPE DAVIS, UNITED STATES TRUSTEE FOR REGION 2,

Appellant,

VERSUS

ELLIOT MANAGEMENT CORP., *et al.*,

Appellees.

----------------------

MEMORANDUM AND ORDER
March 31, 2014

----------------------

RICHARD J. SULLIVAN, District Judge:

Appellant, the United States Trustee for Region 2[1] (the "UST"), appeals from the bankruptcy court's decision granting the application for payment of professional fees submitted by the individual members of the official committee of unsecured creditors (the "Individual Members") in the Lehman Brothers bankruptcy proceeding. *See In re Lehman Bros. Holdings Inc.*, 487 B.R. 181 (Bankr. S.D.N.Y. 2013). For the reasons set forth below, the Court vacates the bankruptcy court's decision and remands to the bankruptcy court to determine whether the Individual Members' professional fee expenses qualify for payment under

---

[1] Region 2 is the name used by the United States Trustee Program for the states included within the Second Circuit. *See* USTWEB – Region 2, http://www.justice.gov/ust/r02 (last visited Mar. 31, 2014).

§ 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

## I. BACKGROUND

Lehman Brothers Holdings filed for Chapter 11 bankruptcy on September 15, 2008.[2] (Voluntary Petition, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y.), Doc. No. 1.) The subsequent bankruptcy case has been among history's largest and most complicated. *In re Lehman*, 487 B.R. at 185 n.5. As a result, the bankruptcy process itself has been enormously expensive. Indeed, the professional fees alone have totaled approximately $1.8 billion. *Id.* at 182. This appeal is about a small part of that sum – $26 million. (UST Br. at 5–6); *In re Lehman*, 487 B.R. at 184.

Appellees are the official committee of unsecured creditors and its individual members.[3] An official committee of unsecured creditors is one of the key players in the Chapter 11 bankruptcy process. It is comprised of creditors appointed by the UST, 11 U.S.C. § 1102(a)(1), who are usually the holders of the largest claims, *id.* § 1102(b)(1). The committee works with the debtor to administer the case, to investigate claims, and – most importantly – to write the Chapter 11 reorganization plan. *Id.* § 1103(c). That last duty is so important

---

[2] The following facts are undisputed and are drawn from the bankruptcy court's decision, *In re Lehman*, 487 B.R. 181, Appellant's Brief (Doc. No. 11 ("UST Br.")), Appellees' Brief (Doc. No. 12 ("Resp.")), and Appellant's Reply Brief (Doc. No. 13 ("UST Reply")). All page citations are to the internal page numbers of the document, where available.

[3] Two of the Individual Members are also indenture trustees. (Resp. at 1.) The parties do not argue that the indenture trustees should be treated differently than other committee members, and the Court finds that the legal analysis for committee members applies equally to indenture trustees.

because the reorganization plan is at the heart of the Chapter 11 process. The plan controls how the estate's assets will be distributed – in other words, who gets paid and how much. *See id.* § 1123(a).

To be effective, an official committee must hire lawyers and accountants. The expenses of paying those professionals are "administrative expenses" and thus, pursuant to the Bankruptcy Code, must be paid under the reorganization plan. *See id.* §§ 330(a), 503(b)(2), 507(a), 1103(a), 1129(a)(9)(A). Similarly, to help in the work, individual members of the official committee sometimes also hire their own professionals, separate from and in addition to the professionals hired by the committee. Here, the Individual Members did precisely that. They each hired their own attorneys, who billed approximately $26 million for work in connection with the committee. (UST Br. at 5–6); *In re Lehman*, 487 B.R. at 184. The problem, however, was paying for that work.

Unlike an official committee's professional fee expenses, individual members' professional fee expenses are not administrative expenses. As will be discussed in greater detail below, § 503(b)(4) of the Bankruptcy Code addresses professional fee administrative expenses and does not cover expenses on the basis of committee membership. *See id.* § 503(b)(4). Thus, individual members must usually pay their own attorneys and accountants.

Nevertheless, the Individual Members here devised a work-around. They included a provision in the reorganization plan – section 6.7 – that allowed the Individual Members' reasonable professional fee expenses as "Administrative Expense Claims" and therefore required the debtor (and ultimately, claimants) to pay the

expenses in full. (Chapter 11 Plan, *In re Lehman Brothers Holdings, Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y.), Doc. No. 19627 (the "Plan"), § 6.7.)

The UST objected to section 6.7 of the Plan during the plan confirmation process. *In re Lehman*, 487 B.R. at 187. After negotiation, the UST agreed to defer her objection until after the Plan had been confirmed. *Id.* Once the Plan had been put to a vote of the claimants and approved, the Individual Members filed an application with the bankruptcy court for payment pursuant to section 6.7, or in the alternative, pursuant to § 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code. *Id.* at 188. The UST objected again and argued that the Bankruptcy Code not only did not provide for the payment of the Individual Members' professional fee expenses, but also prohibited payment of such expenses. *Id.* As a result, the UST argued, section 6.7 was invalid and the expenses could not be paid under § 503(b)(3)(D) and 503(b)(4). *Id.*

On February 15, 2013, the bankruptcy court held that section 6.7 was permissible and declined to reach whether the expenses could be paid under § 503(b)(3)(D) and 503(b)(4). *In re Lehman*, 487 B.R. at 184 n.4, 190 n.8, 193. Although the bankruptcy court acknowledged that the Bankruptcy Code did not provide for payment of committee members' professional fees – and characterized section 6.7 as an attempt to "circumvent the apparent restrictions on administrative expense treatment for professional compensation claims of this sort" – it held that the Bankruptcy Code did *not forbid* such payment. *Id.* at 185, 191. Therefore, the bankruptcy court reasoned, the payments were not inconsistent with any Bankruptcy Code provision and were thus permissible pursuant to 11 U.S.C. § 1123(b)(6). *Id.* at 191.

The UST appealed (Doc. No. 1) and filed her brief on May 1, 2013 (Doc. No. 11). Appellees submitted their brief on May 29, 2013 (Doc. No. 12), and the UST replied on June 25, 2013 (Doc. No. 13). The Court held oral argument on September 9, 2013.

## II.  STANDARD OF REVIEW

"The district court evaluates the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *In re Cousins*, No. 09 Civ. 1190 (RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010) (citing *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998)). Questions of statutory interpretation are purely legal and are therefore reviewed de novo. *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011).

## III.  DISCUSSION

Under § 1123(b)(6) of the Bankruptcy Code, plans may "include any . . . appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). Thus, a provision is permissible only if it is both "appropriate" and "not inconsistent with" any applicable provision of the Bankruptcy Code. At minimum, these requirements imply that § 1123(b)(6) does not authorize plan provisions that override, undermine, or rewrite relevant Bankruptcy Code provisions. *Cf. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070–71 (2012) (holding that general authorizations in the Bankruptcy Code cannot be used to avoid specific statutory provisions); *In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d Cir. 2005) (holding that the bankruptcy court's authority to make "necessary or appropriate" orders does not allow the bankruptcy court to "overstep" "statutory limitations"); "Inconsistent," *The Oxford English Dictionary Online* (2013),

http://www.oed.com/view/Entry/93864 (defining "inconsistent," when used in "inconsistent with," to mean "[n]ot consisting; not agreeing in substance, spirit, or form; not in keeping; not consonant or in accordance; at variance, discordant, incompatible, incongruous"). The bankruptcy court held that section 6.7 is not inconsistent with the Bankruptcy Code – including § 503(b) – and therefore is permissible under § 1123(b)(6). Appellees urge the Court to affirm that holding. The UST, however, argues that § 503(b) forbids payment of official committee members' professional fee expenses and that § 1123(b)(6) therefore could not authorize such payments. For the reasons set forth below, the Court finds that section 6.7 is invalid.

A.  § 503(b) Is The Exclusive Avenue For Payment Of Administrative Expenses And § 503(b) Excludes Official Committee Members' Professional Fee Expenses

Administrative expenses – with a few specified exceptions not relevant to this appeal, *see* 11 U.S.C. § 503(b)(3)(A), (b)(9) – are expenses incurred after the bankruptcy petition has been filed that receive special payment priority under the Bankruptcy Code. *See In re Mid Region Petrol., Inc.*, 1 F.3d 1130, 1132 (10th Cir. 1993) ("Administrative expenses are specially favored post-petition claims, given priority in asset distribution over most other claims against the bankruptcy estate."). The kinds of expenses that qualify as administrative expenses are described by a list in § 503(b), and the special treatment given to those expenses is established by § 507(a)(2). 11 U.S.C. §§ 503(b), 507(a)(2). In Chapter 11 cases, such as this one, all administrative expenses must be paid in full. *See id.* § 1129(a)(9)(A).

To the extent an expense is not covered by § 503(b), it is not an administrative expense. *See, e.g.*, *Norton Bankruptcy Law and Practice 3d Dictionary of Bankruptcy Terms* § A60 (defining "administrative expenses" solely by reference to § 503(b)). Although § 503 introduces its list with the term "including," *see* 11 U.S.C. § 503(b), which implies that the list is not exhaustive or exclusive, *see id.* § 102(3) (stating that, in the Bankruptcy Code, "'includes' and 'including' are not limiting"), the list is meant to be illustrative of the whole universe of administrative expenses. "Including" modifies the term "administrative expenses," suggesting that the list describes all administrative expenses, not merely a subset of administrative expenses. *See id.* § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses . . . including – [a list of nine categories]."). Moreover, the priority status that defines administrative expenses is granted only to expenses falling under § 503(b). *See* 11 U.S.C. § 507(a)(2) (granting priority to "administrative expenses allowed under section 503(b)"). Thus, while there can be some administrative expenses that are not listed in § 503(b), they must nonetheless fall within § 503(b)'s interstices. The Plan itself recognizes this concept. Section 1.1 of the Plan defines "Administrative Expense Claim" as "any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under *sections 503(b) and 507(a)(2)* of the Bankruptcy Code." (Plan § 1.1 (emphasis added).)

Relevant here, official committee members' professional fee expenses are not included in § 503(b). The problem is not that such expenses are not listed – the list is not exhaustive – but instead that the structure of § 503(b)(3) and (4) glaringly exclude professional fee expenses for official committee members. *See* 11 U.S.C.

§ 503(b)(3), (4).[4]  Specifically, § 503(b)(3) allows for the payment of "actual, necessary

---

[4] The full text of § 503(b)(3)–(4) reads:

(b) After notice and a hearing, there shall be allowed administrative expenses . . . including –

. . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary

expenses" incurred in situations listed in § 503(b)(3)(A) through (F), all of which involve work contributing to the bankruptcy case.  *See* 11 U.S.C. § 502(b)(3).  Section 503(b)(3)(F) provides for the payment of the expenses incurred by official committee members in performing committee work.  Section 503(b)(3), however, explicitly excludes *professional fee* expenses – that is, the cost of hiring lawyers or accountants – from the expenses it authorizes.  *Id.* § 503(b)(3).  Professional fee expenses are instead covered by § 503(b)(4).  That section authorizes professional fee expenses for any entity that qualifies for expenses under § 503(b)(3)(A) through (E).  *Id.* § 502(b)(4).  Importantly, entities eligible for expenses under § 503(b)(3)(F) – members of an official committee – are not covered by § 503(b)(4).  *Id.*  Consequently, § 503(b)(3) and 503(b)(4) work together to guarantee full payment for any professional fee expense incurred in a situation covered by § 503(b)(3)(A) through (E), but not (F).

Statutory history confirms that this omission was intentional.  Before 2005, § 503(b)(4) allowed professional fee expenses for *all* categories of § 503(b)(3), including for official committee members.  In 2005, however, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amended § 503(b)(4) to exclude professional fee expenses for official committee members.  *See* BAPCPA, Pub. L. 109-8, 119 Stat. 23, 194 (2005) (amending § 503(b)(4) by "inserting 'subparagraph (A), (B), (C), (D), or (E) of' before 'paragraph (3)'").  Indeed, section 6.7's very existence is a recognition of this omission – if the expenses could be paid under § 503(b) on the basis of committee membership, section 6.7 would not have been necessary.

---

expenses incurred by such attorney or accountant.

Thus, because § 503(b) – the sole source of administrative expenses – excludes paying professional fee expenses on the basis of committee membership, the Individual Members cannot have their professional fee expenses paid as administrative expenses solely on the basis of their committee membership.

### B. Section 6.7 Calls For Payment Of The Individual Members' Professional Fee Expenses As Administrative Expenses Solely On The Basis Of Official Committee Membership

For several reasons, the Court determines that section 6.7 calls for the payment of administrative expenses. Section 6.7 itself describes the expenses it covers as "Administrative Expense Claims." (Plan § 6.7.)[5] That description cannot be disregarded as poor word choice. Section 6.7's whole purpose is to provide that precise label. The Plan provides for payment of certain kinds of claims and expenses only. (See id. § 8.3 (providing for payment of "Administrative Expense Claims," "Priority Tax Claims," "Non-

---

[5] The full text of section 6.7 of the Plan reads:

Subject to entry of the Confirmation Order, the reasonable fees and expenses (including attorneys['] fees) of (a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent accrued and unpaid as of the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement, and (ii) to the extent incurred after the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

Priority Tax Claims," "Secured Claims," and "Claims").) The Individual Members' professional fee expenses are only paid at all to the extent they are smuggled in under the "Administrative Expense Claims" label. Similarly, the Individual Members' professional fees get their special treatment of payment in full only because the Plan – as required by statute, see 11 U.S.C. §§ 507(a)(2), 1129(a)(9)(A) – provides for payment in full for all "Administrative Expense Claims." (See id. § 2.1.)

Further, even if the Court were to overlook the "Administrative Expense Claims" label, section 6.7 functionally pays the professional fee expenses as administrative expenses. The concept of "administrative expenses" exists only to describe the postpetition expenses given the special treatment of priority payment. The Plan, through section 6.7, attempts to give the Individual Members' professional fee expenses that same special treatment. As a result, there is no practical difference between an administrative expense under § 503(b) and an "Administrative Expense Claim" under section 6.7. Indeed, the Individual Members' themselves have previously shown how little difference they see between payment under the Plan and payment as an administrative expense. As previously mentioned, in the Individual Members' own application to the bankruptcy court for payment of their professional fee expenses, they argued that the expenses could be paid under either the Plan or as an administrative expense under § 503(b)(3)(D) and 503(b)(4). See In re Lehman, 487 B.R. at 188, 190 n.8.

Finally, section 6.7 and administrative expenses have the same underlying justification. Appellees argue that paying the section 6.7 expenses in full incentivizes committee members to take on the difficult work necessary for a productive bankruptcy

process, and that the resulting benefits accrue to all claimants. (Tr. of Oral Argument, dated Sep. 9, 2013, Doc. No. 16 ("Tr."), at 30:9–31:15; Resp. at 23–24.) That is the same purpose underlying all administrative expenses: promising to pay some entities in full encourages them to work with the estate and to benefit the estate as a whole. *See Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) ("Congress granted priority to administrative expenses in order to facilitate the efforts of the trustee or debtor in possession to rehabilitate the business for the benefit of all the estate's creditors."); 4 *Collier on Bankruptcy* ¶ 507.02[b] (stating that administrative expenses are given priority "because they are believed to benefit all holders of claims by increasing the proceeds in the bankruptcy estate available for distribution"). By name, function, and spirit, section 6.7 deals with administrative expenses.

Section 6.7 thus effectively rewrites § 503(b) by calling for payment of an administrative expense on a basis that § 503(b) pointedly omits. As a result, section 6.7 is inconsistent with § 503(b) and therefore impermissible under § 1123(b)(6).

### C.  Section 6.7 Cannot Be Justified As A "Permissive Plan Payment"

Notwithstanding the fact that the claims referenced in section 6.7 "walk[], talk[], and squawk[]" like administrative expenses, *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 757 (2002) (internal quotation marks omitted), Appellees nonetheless insist that section 6.7 does not pay administrative expenses, but instead authorizes permissive "plan payments."[6]  (Tr. at 25:24–26:5.)  The

difference, according to Appellees, is that administrative expenses *must* be paid in every case while permissive plan payments are paid only when the debtor and claimants agree to include the payments in the plan and the bankruptcy court approves them as "reasonable." (Resp. 16–19.)

To support their position that such payments are distinct from administrative expenses, Appellees rely primarily on *In re Adelphia Commc'ns Corp.*, 441 B.R. 6 (Bankr. S.D.N.Y. 2010). (Resp. 14–17); *see also In re Lehman*, 487 B.R. at 191–93 (adopting the reasoning of *In re Adelphia*); *In re AMR Corp.*, 497 B.R. 690, 694–696 (Bankr. S.D.N.Y. 2013) (adopting the reasoning of *In re Lehman* and *In re Adelphia*). *Adelphia* dealt with a similar plan provision and held that the Bankruptcy Code allows for permissive non-administrative-expense plan payments outside of § 503(b). *See In re Adelphia*, 441 B.R. at 9. The bankruptcy court in *Adelphia* reasoned that (1) nothing in the Bankruptcy Code says that administrative expense payments are the only kinds of plan payments or forbids other kinds of plan payments; (2) 11 U.S.C. § 1129(a)(4) "permits the possibility" that it "might or might not" be possible to make some plan payments for professional fees beyond the payments authorized by § 503(b); and (3) § 1123(b)(6)'s "broad grant of authority" allows debtors and bankruptcy courts to include plan provisions to meet the needs of a particular case. *Id.* at 12–19; *see also In re Lehman*, 487 B.R. at 186 ("To fulfill its reorganization purposes, a plan must be an

---

[6] More specifically, Appellees described the expenses as "plan payments" to cover "expenses of administration." (Tr. at 26:1–11). Given that the term "expenses of administration" was the

nomenclature previously used in the Bankruptcy Act for the expenses now called "administrative expenses," *compare* 11 U.S.C. § 104(a)(1) (1976), *with* 11 U.S.C. § 503(b), and is still sometimes used in case law to refer to administrative expenses, *see In re Bridgeport Jai Alai, Inc.*, 99 F. App'x 254, 256 (2d Cir. 2004), the Court finds Appellees' choice of words – even if unintentional – to be telling.

endlessly adaptable tool that fits the particular needs and dynamics of each case.").

The Court is not persuaded by the reasoning of *In re Adelphia* or by Appellees' arguments. Although the Bankruptcy Code does not explicitly forbid payments professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and postpetition expenses. *See* 11 U.S.C. § 1123(a)(1)–(4), 1124, 1129(a)(9); *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 428–29 (2d Cir. 2009). Here, the Individual Members' professional fee expenses were all incurred postpetition, and thus cannot be treated as "claims." *See* 11 U.S.C. § 502(e)–(i) (addressing claims that may arise after the commencement of the case); *see also In re Worldcom, Inc.*, 401 B.R. 637, 643 (Bankr. S.D.N.Y. 2009) ("[A] claimant whose right to payment against the estate arises postpetition does not file a proof of claim . . . but rather can file their claim as a request for payment [of an administrative expense] under § 503(b)."). Therefore, the Individual Members' professional fee expenses are either administrative expenses or not, and if the latter, they cannot be paid under a plan.[7]

Indeed, allowing payments under the plan beyond claims and expenses could lead to serious mischief. To give one example, the "absolute priority rule . . . provides that a reorganization plan may not give 'property' to the holders of any junior claims or interests 'on account of' those claims or interests, unless all classes of senior claims either receive the full value of their claims

or give their consent." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (quoting 11 U.S.C. § 1129(b)(2)(B)). If a plan could contain "plan payments" outside of claims or expenses, a plan could, without the consent of senior claims holders, provide for payment to a junior claimant not "on account of" the junior claim, but on account of a plan provision specifically authorizing payment to that particular entity. Such a plan provision would of course be based on wordplay alone and would be an obvious circumvention of the Code's requirements. S*ee In re DBSD N. Am.*, 634 F.3d at 97–101 (reversing a bankruptcy court decision allowing a "gift" from secured creditors to junior creditors in violation of the absolute priority rule). And the same is true of Appellees' arguments here.

Moreover, neither the need for flexibility in bankruptcy cases, the consensual nature of section 6.7,[8] nor a bankruptcy court's approval of a payment as "reasonable" can justify a plan provision that is merely a backdoor to administrative expenses that § 503 has clearly excluded. The Bankruptcy Code is meant to be a "comprehensive

---

[7] Again, the Plan itself reflects the law better than Appellees' arguments. As noted above, the Plan does not purport to provide for payment of anything other than claims or expenses authorized by the Bankruptcy Code. (Plan § 8.3.)

[8] The Court notes that Appellees overstate the amount of consent involved in the approval of section 6.7. True, majorities of each class of claimant voted for the Plan, but claimants had only an up-or-down vote on the Plan as a whole and could not vote provision-by-provision. (See Reply at 2, 10.) Even if a majority of claimants opposed section 6.7, the Plan would still have won a majority if claimants were willing to swallow the relatively small price of $26 million spread across all claimants in exchange for moving the process forward. Indeed, the risk of such a distortion of the voting process is particularly heightened in cases like this one because the beneficiaries of section 6.7 were the same entities charged with representing creditors in plan negotiations. See 11 U.S.C. § 1103(c)(3) (authorizing official committees to "participate in the formulation of a plan, [and] advise those represented by such committee of such committee's determinations as to any plan formulated").

federal scheme . . . to govern" the bankruptcy process. *E. Equip. & Servs. Corp. v. Factory Point Nat. Bank*, 236 F.3d 117, 120 (2d Cir. 2001). Although flexibility is necessary, *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 578 (S.D.N.Y. 2007) ("Bankruptcy reorganization is an inherently flexible process . . . ."), the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences, *RadLAX Gateway Hotel, LLC*, 132 S. Ct. at 2070–71 (referring to the Bankruptcy Code as a "comprehensive scheme [that] has deliberately targeted specific problems with specific solutions" (internal quotation marks omitted)). *Adelphia*'s holding – that (1) "the wisdom of a policy permitting the payment of individual creditors' fees for advancing their own private interests, in the absence of a benefit to the estate, is subject to a fair policy debate," and (2) "Congress might conclude that in the absence of a benefit to the estate, reorganization plans shouldn't provide for the legal fees incurred by individual creditors," *In re Adelphia*, 441 B.R. at 19 – wholly misses the point. The debate and Congressional action have already taken place. By amending § 503(b), Congress and the President evidently determined that official committee members – who are normally the holders of the largest claims against the estate, 11 U.S.C. § 1102(b)(1), and are presumably amply motivated to advance the bankruptcy process – do not need to be incentivized with payment of their professional fees by the estate. To the extent official committee members perform extraordinary work to benefit the estate, above and beyond normal committee duties, they may, as will be explained below, seek to be reimbursed under § 503(b)(3)(D) and 503(b)(4), which provide for payment of the professional fees incurred by entities that have made a

"substantial contribution in a case." *See* 11 U.S.C. § 503(b)(3)(D), 503(b)(4). Nevertheless, those provisions require the bankruptcy court to provide notice and a hearing and to determine for itself that a substantial contribution has been made. Whatever the merits of that scheme, it is binding on courts and bankruptcy participants. *See RadLAX Gateway* Hotel, 132 S. Ct. at 2073 ("[T]he pros and cons of [choices made in the Bankruptcy Code] are for the consideration of Congress, not the courts."); *In re DBSD N. Am., Inc.*, 634 F.3d at 100 (noting that courts cannot challenge the merits of Congress's policy decisions in the Bankruptcy Code). A plan provision cannot short-circuit the process by effectively deeming an entity to have made a substantial contribution.

The Court therefore determines that section 6.7 indeed calls for payment of administrative expenses and that Appellees may not circumvent the requirements of § 503(b) merely by using a different label such as "permissive plan payments."[9]

---

[9] To the extent *Adelphia* and Appellees rely on 11 U.S.C. § 1129(a)(4) to justify plan payments for professional fees outside of § 503(b), they misread that section. (Resp. at 20.) Section 1129(a)(4) is partly focused on ensuring disclosure of payments made in connection with the plan, but not written into the plan. *See In re Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 514 (5th Cir. 1998) (stating that § 1129(a)(4) is not limited to payments made from the bankruptcy estate (citing *Leiman v. Guttman*, 336 U.S. 1, 5, 8 (1949))); *In re Journal Register Co.*, 407 B.R. 520, 537 (Bankr. S.D.N.Y. 2009) (noting that § 1129(a)(4) is focused on disclosure); 7 *Collier on Bankruptcy* ¶ 1129.02[4] (same); 6 *Norton Bankruptcy Law and Practice* 3d § 112:11 (same); Robert E. Ginsberg, Robert D. Martin & Susan V. Kelley, *Ginsberg and Martin on Bankruptcy* § 13.13[D] (same); *compare* 11 U.S.C. § 1129(a)(4) (addressing "payment[s] . . . in or in connection with the case, or in connection with the plan and incident to the case"), *with id.* § 1129(a)(15), (a)(16), (b)(2)(B)(ii), (b)(2)(C)(ii) (addressing property transferred, distributed, or received "under the plan").

9

### D.  Appellees' Alternative Argument

In their original application to the bankruptcy court, the Individual Members raised the alternative argument that they could be paid under § 503(b)(3)(D) and 503(b)(4), on the ground that they made a "substantial contribution" to the case.  *In re Lehman*, 487 B.R. at 184 n.4, 190 n.8.  The bankruptcy court declined to address that argument, but the UST, then and now, argues that such payment is impossible because § 503(b) forbids reimbursement of official committee members' professional fee expenses, even if the committee members independently satisfy some other category listed in that section.  (UST Br. at 19–20.)  The Court disagrees.

True, as explained above, § 503(b) does not authorize payment of professional fee expenses solely on the basis of official committee membership.  Similarly, it is true that BAPCPA amended § 503(b)(4) to prevent reimbursement for professional fee expenses on the basis of committee membership alone.  But the current structure and the amendment imply nothing more than a rejection of a per se rule that official committee members should have their professional fee expenses paid.  That is an understandable choice, as paying committee members' professional fee expenses regardless of contribution can lead to abuses or could create an incentive to litigate for the members' benefit at the estate's expense.  *See In re Chemtura Corp.*, 439 B.R. 561, 612 (S.D.N.Y. 2010) ("[T]hose whose fees are paid by someone else have no incentive

to keep costs under control, or to bring the litigiousness to an end.").  Nevertheless, there is no reason to think that the Bankruptcy Code would punish an entity that *has* made a substantial contribution solely because it was also willing and able to serve on the official committee.  According to the UST's logic, a creditor who has used a lawyer to help file a petition or to recover property for the estate's benefit – expenses that are normally reimbursed under § 503(b)(3)(A)–(B) and 503(b)(4) – would be prevented from getting reimbursed simply because the creditor also served as a member of an official committee.  Nothing in the language of the statute requires or suggests such a perverse outcome.

An interpretation allowing official committee members to be paid if they satisfy some category of § 503(b) is further strengthened by comparison with the language and structure of § 503(c).  *See* 11 U.S.C. § 503(c).  That section very clearly states that certain kinds of expenses – retention or severance payments to insiders – cannot be paid unless certain conditions are met, even if they could have been independently authorized by some part of § 503(b).  This section shows that Congress and the President know how to – and are willing to – specifically forbid payments of certain expenses if they so choose.  Indeed, § 503(c) was added by BAPCPA, the same statute that amended § 503(b)(4) to omit committee membership as a basis for payment.  *See* BAPCPA, 119 Stat. at 102–03.  The different approaches taken in § 503(b)(4) and § 503(c) imply that a different result was intended.  *See Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

---

That section therefore necessarily addresses payments other than those governed by § 503(b), which would all be addressed in the plan itself.  However, § 1129(a)(4)'s contemplation of payments outside of the plan in no way implies the possibility of freestanding non-claim and non-expense payments *under* the plan.

exclusion." (internal quotation marks omitted)).

Accordingly, the Court holds that the Bankruptcy Code does not necessarily exclude official committee members from the benefits of § 503(b) in all situations. Although official committee membership alone cannot be a sufficient condition for reimbursement of professional fee expenses, it is not a disqualification. As such, to the extent the Individual Members qualify under § 503(b)(3)(D) by virtue of having made a "substantial contribution" to the bankruptcy case, they may have their professional fee expenses paid under § 503(b)(4).

Nevertheless, the Court is in no position to determine whether the Individual Members made such a substantial contribution, and the bankruptcy court declined to reach this issue when it was first presented. The Court therefore remands the case to the bankruptcy court to address that issue now.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the bankruptcy court's decision is vacated and the case is remanded for further proceedings consistent with this opinion. The Clerk of the Court is respectfully directed to terminate this appeal.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 31, 2014
New York, New York

*        *        *

Appellant is represented by Tracy Hope Davis, United States Trustee for Region 2, Linda A. Rifkin, Assistant United States Trustee, and Susan D. Golden, Trial Attorney, Department of Justice, Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, and Ramona D. Elliot, Deputy Director and General Counsel, P. Matthew Sutko, Associate General Counsel, and Noah M. Schottenstein, Trial Attorney, Department of Justice, Executive Office for United States Trustees, 441 G Street NW, Suite 6150, Washington, District of Columbia 20530.

Appellee Wilmington Trust Co. is represented by Michael B. Hopkins, Covington & Burling LLP, 620 Eighth Avenue, New York, New York 10018, and Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154.

Appellee The Bank of NY Mellon is represented by Russell Lowell Reid, Sheppard Mullin Richter & Hampton LLP, 30 Rockefeller Plaza, New York, New York 10112.

Appellee Mizuho Corporate Bank, Ltd. is represented by Mark A. Speiser, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038.

Appellee Elliott Management Corp. is represented by Matthew J. Gold, Kleinberg, Plan, Wolff & Cohen, P.C., 551 Fifth Avenue, 18th Floor, New York, New York 10176.

Appellee U.S. Bank National Association is represented by Richard Hiersteiner, Sullivan & Worcester LLP, One Post Office Square, Boston, Massachusetts 02109.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/14

11

Appellee Shinsei Bank, Ltd. is represented by Dov R. Kleiner, Vinson & Elkins LLP, 666 Fifth Avenue, New York, New York 10103.

Appellee The Vanguard Group is represented by David L. Dubrow, Arent Fox LLP, 1675 Broadway, New York, New York 10019.

Appellee Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. is represented by Dennis F. Dunne, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, and 1850 K Street NW, Suite 1100, Washington, District of Columbia 20006.