WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                          :      **Chapter 11 Case No.**
                                               :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :      **08-13555 (SCC)**
                                               :
                  Debtors.                     :      **(Jointly Administered)**
-------------------------------------------------------------------x

**REPLY TO RESPONSE**
**TO THE ONE HUNDRED ELEVENTH OMNIBUS OBJECTION TO CLAIMS**
**(NO LIABILITY CLAIMS) FILED BY BANCO INTERIOR DE SAO PAULO, S.A.**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") as Plan Administrator under the

*Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its*

*Affiliated Debtors* [ECF No. 22737] (the "Plan") for the entities in the above referenced chapter

11 cases (collectively, the "Chapter 11 Estates"), files this reply (the "Reply") to the response

(the "Response") of Banco Interior de São Paulo, S.A. ("Banco Interior") [ECF No. 22879]

opposing the *One Hundred Eleventh Omnibus Objection to Claims (No Liability Claims)* [ECF

No. 15012] (the "Objection"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      Banco Interior's proof of claim number 21949 (the "Claim"), filed against

LBHI, alleges that Lehman Brothers Inc. ("LBI") and/or Lehman Brothers International (Europe)

("LBIE") aided and conspired in a fraudulent scheme and breach of fiduciary duty allegedly

orchestrated by Banco Interior's former principal, Aureo Ferreira, in 2000, and seeks a recovery

of $14 million.  Shortly after Ferreira's alleged wrongdoing, in 2001, the Brazilian Central Bank

placed Banco Interior into liquidation and appointed a liquidator (the "Liquidator").  *Eight years*

*later*, in September 2009, Banco Interior (acting through the Liquidator) filed its Claim.

2.      In its Claim, Banco Interior made no factual or legal allegations that LBHI

was involved in Ferreira's wrongdoing, focusing entirely on LBI and LBIE.   Accordingly, LBHI

objected and requested the Claim be expunged because it is based on alleged wrongdoing for

which LBHI is not liable.

3.      In its Response, Banco Interior makes only one specific factual allegation

that even potentially links LBHI to Ferreira's alleged wrongdoing — that LBHI controlled, "in

whole or in part," a bank account that received funds allegedly connected to Ferreira's activities.

(Resp. ¶ 8.)   In the face of expungement of a $14 million claim, this is the only factual allegation

against LBHI that Banco Interior can provide, despite the Liquidator having had *thirteen years* to

review Banco Interior's documents, collect evidence, and interview witnesses connected to

Ferreira's alleged wrongdoing.

4.      After thirteen years of investigation, Banco Interior does not allege that

LBHI employees knew of Ferreira's wrongdoing, that they assisted him in any way, or that they

even communicated with Ferreira.  Banco Interior's sole factual assertion with regard to LBHI,

that LBHI owned or controlled a bank account that received funds allegedly connected with the

fraud, is patently insufficient to establish a fraud claim against LBHI.

5.      In light of Banco Interior's failure to assert any facts demonstrating that

LBHI conspired with Ferreira, this Claim should be expunged for three reasons.  First, and as

stated in the Objection, Banco Interior has failed to assert any facts or theories in the Claim or the Response that could give rise to liability on the part of LBHI as to any of the asserted causes of action. LBHI is not liable for the alleged fraud of LBI or LBIE, and merely asserting that LBHI had an interest in a certain bank account is wholly inadequate to sustain a fraud claim against LBHI. <u>Second</u>, the Claim alleges that LBHI aided or conspired with Ferreira in defrauding Banco Interior. Banco Interior, therefore, must comply with the heightened pleading requirements established under Rule 9 of the Federal Rules of Civil Procedure (the "<u>Rules</u>"), but the Claim does not state with particularity any of the elements of the aiding or conspiracy causes of action. <u>Third</u>, Banco Interior failed to commence an action against LBHI before the statute of limitations on its aiding a fraud and conspiracy causes of action had expired, and the Claim was not filed until after the expiration of the applicable limitations period.

6.       Although Banco Interior has significantly delayed pursuing its Claim, expunging it now will not leave Banco Interior without a remedy. It has a claim pending in LBIE's bankruptcy (although it waited until May 2012 to file this claim) and can seek relief in LBIE's English insolvency proceedings, the appropriate forum for its claims.[1]

## I.       BACKGROUND

### A.       In 2000, Ferreira Allegedly Defrauds Banco Interior.

7.       In February 2001, the Central Bank of Brazil ordered the extrajudicial liquidation of Banco Interior, a bank located in Sao Paulo, Brazil. (Summary Regarding Claim and Documents in Support of Proof of Claim ("<u>Claim Summary</u>") 1.)

8.       Subsequently, the liquidator appointed by the Central Bank of Brazil (the "<u>Liquidator</u>") determined that Banco Interior's former "principal," Aureo Ferreira, in September

---

[1] Banco Interior failed to assert a claim against LBI before the bar date.

2000, had "implement[ed] a scheme that resulted in the fraudulent misrepresentation of Banco

Interior's financial position." (Resp. ¶ 6.) As described in the Response, the "scheme:"

> essentially involved the "renting" of part of a government coupon bond issued by the Brazilian Treasury in the amount of approximately $16.8 million (the "Brazilian Bond"). After Banco Interior became insolvent in 2001 and was forced into liquidation, the Central Bank of Brazil uncovered evidence that Ferreira embarked on a scheme to cover up certain insider loans that were all in default and which totaled $14 million by substituting them on Banco Interior's books with part of the Brazilian Bond as an asset.

(*Id.*)

9.      As described in the Claim and the Response, in approximately September

2000, in furtherance of his "scheme," Ferreira allegedly opened bank accounts with LBI or LBIE

— not LBHI . The Response provides that "upon information and belief" Garter Trading S.A.,

an entity potentially involved in the scheme, deposited a payment of $420,000 "related to the

acquisition of the Brazilian Bond" in an account at LBI. (Claim Summary 2; Resp. ¶ 8.)

10.      The Claim and the Response allege that an unknown entity transferred the

$420,000 from this account to "an account at Bank of America International" (the "Bank of

America Account"). (Claim Summary 2; Resp. ¶ 8.) The Claim initially alleged that the Bank of

America Account belonged to LBI or LBIE, while the Response now alleges that the Bank of

America Account "is now known to have belonged to, or to have been controlled, in whole or in

part by, Lehman Brothers Holdings, Inc. at the relevant time." (Claim Summary 2; Resp. ¶ 8.)

The Claim and the Response make no other factual allegation regarding LBHI's knowledge of or

involvement in Ferreira's alleged scheme.

11.      Several months after Ferreira engaged in the alleged scheme, Banco

Interior failed, and the Central Bank of Brazil ordered its extrajudicial liquidation and appointed

the Liquidator. (Claim Summary 1.)

4

B.    **Years After the Alleged Fraud, Banco Interior Requests Information From LBI and LBIE and Then Files the Claim in 2009.**

12.    Years after being appointed, the Liquidator sent requests for information to LBI about certain bank accounts allegedly involved in Mr. Ferreira's fraud.  LBI provided information in response to these requests on June 29, 2007.  (*See* Ex. A.)

13.    In November 2007, the Liquidator requested information related to Mr. Ferreira's alleged fraud from LBIE.  The Liquidator sent additional correspondence related to this matter to LBIE in March and April 2009.

14.    On September 21, 2009, the Liquidator, on behalf of Banco Interior, filed the Claim against LBHI.  The Claim asserted:

> Upon information and belief, ***Lehman Brothers, Inc. and / or Lehman Brothers International (Europe)*** willingly aided and knowingly conspired with [Ferreira] to commit a fraud on Banco Interior . . . [which] enabled the breach of fiduciary duties by [Ferreira]; and

> Upon information and belief, ***Lehman Brothers, Inc. and / or Lehman Brothers International (Europe)*** received a "rent fee" of approximately US$420,000.00 and possibly more, as consideration for its or their participation in this scheme.

(Claim Summary 2) (emphasis added.)

15.    The Claim Summary focused solely on LBI's and LBIE's alleged conspiracy with and aiding Ferreira.  The Claim alleged five possible causes of action against LBI: (1) fraud; (2) conspiracy; (3) knowing assistance; (4) aiding a fraud; and (5) breach of fiduciary duties.  (*Id.*)[2]

16.    On March 14, 2011, LBHI and its affiliated debtors in the above captioned chapter 11 cases (the "Debtors") filed the Objection, which sought to expunge certain proofs of claim, including the Claim, because they were filed against the Debtors based upon alleged

---

[2] Knowing assistance is not a recognized cause of action under New York law.

US_ACTIVE:\44319907\12\58399.0011

wrongdoing by entities that are not Debtors in these chapter 11 cases and for which the Debtors are not liable.  The Claim was included on the Objection because it is based upon allegedly fraudulent acts of LBI and LBIE.  Both LBI and LBIE are affiliates of LBHI, but neither is a Debtor in these chapter 11 cases.  The Debtors are not liable for the asserted obligations of LBI or LBIE.

17.    In July 2011, in response to requests for information from Banco Interior, LBHI informed Banco Interior that LBHI had, in fact, controlled the Bank of America Account.

18.    On December 2, 2011, Banco Interior filed the Response.  In its Response, Banco Interior made only a single, new factual allegation regarding LBHI, alleging that it "controlled, in whole or in part," the Bank of America Account.  (Resp. ¶ 8.)  Other than that, the Response merely re-asserted the Claim's allegations that Lehman entities had "upon information and belief . . . willingly aided and knowingly conspired with [Mr. Ferreira]" but replaced the Claim's references to LBI with references to LBHI.  (*Id.* ¶ 9.)  Additionally, the Response emphasized the importance of denying the Objection so that Banco Interior "may engage in discovery . . . to determine the extent of LBHI's liability."  (*Id.* ¶¶ 1, 2, 5, 13.)

19.    In May 2012, Banco Interior filed a "proof of debt" against LBIE in its United Kingdom insolvency proceeding based on LBIE's alleged involvement in Ferreira's fraud.  (*See* Ex. B.)

6

**C.    Close to Twelve Years After the Alleged Fraud, Banco Interior Serves Discovery on LBHI.**

20.    On February 2, 2012 — close to twelve years after Ferreira's alleged fraud — Banco Interior sent LBHI a First Request for Production of Documents relating to the Objection (the "First Document Request").  The First Document Request asserted thirteen document requests, which sought documents from "January 1, 2000 to December 31, 2001."

21.    The First Document Request was in violation of this Court's April 19, 2010 *Order Pursuant To Section 105 of The Bankruptcy Code, Bankruptcy Rule 9014, And General Order M-390 Authorizing The Debtors To Implement Claims Hearing Procedures And Alternative Dispute Resolution Procedures For Claims Against The Debtors* [ECF No. 8474] (the "Claims Procedures Order").

22.    The Claims Procedures Order imposes a "Temporary Litigation Injunction" in any contested matter arising from claim objections in these cases.  The Temporary Litigation Injunction enjoins claimants from serving discovery on LBHI unless the claimant follows certain procedures set forth in the Claims Procedures Order.  However, the Temporary Litigation Injunction does not apply "to any Claimant with respect to the investigation, prosecution, or defense of any of its claims or rights as against [LBI or] any other entity affiliated with the Debtors that is the subject of a bankruptcy, insolvency, or similar proceeding in a foreign jurisdiction . . . ."  (Claims Procedures Order 3.)

23.    On March 5, 2012, LBHI sent Banco Interior a letter informing Banco Interior that pursuant to the Temporary Litigation Injunction, LBHI would not be responding to the First Document Request.

24.    Banco Interior did not challenge LBHI's refusal.  Instead, on March 11, 2013, Banco Interior sent LBHI a Second Request for Production of Documents (the "Second

7

Document Request" and together with the First Document Request, the "Document Requests").
The Second Document Request stated that it "relate[d] to Banco Interior's investigation and
prosecution of claims against [LBIE] in connection" with its insolvency proceedings and "thus
[the Second Document Request] is not subject to" the Temporary Litigation Injunction. (Second
Document Request 1.) In the Second Document Request, thus, Banco Interior conceded that it
was seeking documents from LBHI as a third-party in connection with Banco Interior's claim
against LBIE.

       25.      Although Banco Interior sought documents dating back over a decade ago
from LBHI as a third-party, LBHI still diligently reviewed its files to determine if it had any
responsive documents. After review, it determined that no responsive documents existed in
LBHI's current files and that the cost associated with retrieving archived data from the requested
timeframe would be prohibitively expensive.

## II.      LBHI IS NOT LIABLE FOR THE ALLEGED FRAUD OF LBI OR LBIE

       26.      As set forth in LBHI's Objection, claims alleging wrongdoing by entities
that are not Debtors in these chapter 11 cases, and for which Debtors are not liable, should be
expunged. (*See* Omnibus Objection 24.) Nothing in the Response provides a reason for this
Court to deviate from this general rule.

       27.      In the Response, Banco Interior admits that it filed the Claim against
LBHI without alleging any fraud or wrongdoing by LBHI, acknowledging that the Claim's
"supporting documentation referenced LBI and alleged potential liability on behalf of LBI."
(Resp. ¶ 3.) Banco Interior's Response nevertheless accuses LBHI of "fail[ure] to support [the]
conclusory statement" that LBHI is not liable for the alleged wrongdoing of LBI. But it is not
LBHI's burden to show it is not liable for LBI's conduct; it is axiomatic that "affiliated
corporations are, as a rule, treated separately and independently so that one will not be held liable

for the contractual obligations of [an]other." *Krys v. Aaron* (*In re Refco Inc. Sec. Litig.*), 826 F. Supp. 2d 478, 495 (S.D.N.Y. 2011) (Adopting Report and Recommendation).  The Claim should be disallowed and expunged for the simple reason that, as Banco Interior itself admits, the Claim fails to allege a single fact that would suggest any potential liability of LBHI.

28.     The Response, moreover, is nothing more than an appeal to this Court to allow Banco Interior to continue seeking discovery from LBHI with respect to claims against entities that are not debtors in these chapter 11 cases.  (*See* Resp. ¶¶ 1, 2, 5, 13.)  The Response does not allege any new legal theories that would give rise to a claim against LBHI.  And the Response asserts only one new factual allegation: that the Bank of America Account was owned or controlled "in whole or in part" by LBHI.  (*Id.* ¶5.)  The Response does not provide any facts or theories that link LBHI to the alleged wrongdoing of Ferreira.

29.     In response to Banco Interior's two Document Requests in connection with the Claim (at least one of which was served in violation of this Court's Temporary Litigation Injunction) LBHI has conducted a preliminary review of its files and cannot locate any information concerning any of the allegations referenced in the Claim, the Response, or the Document Requests.

30.     Banco Interior should not be permitted to continue asserting a claim against LBHI based on the alleged liability of its affiliated, non-Debtor entities, and solely "so that Banco Interior may conduct discovery."  (Resp. ¶13.)  Banco Interior has failed to assert any facts or theories in the Claim or the Response that could give rise to liability on the part of LBHI as to any of the asserted causes of action.  For this reason, the Claim should be expunged.

US_ACTIVE:\44319907\12\58399.0011

### III.   BANCO INTERIOR'S ALLEGATIONS THAT LBHI CONSPIRED WITH FERREIRA OR AIDED HIS WRONGDOING DO NOT COMPLY WITH RULE 9

31.     Banco Interior admits in the Response that the Claim's allegations and supporting documentation related solely to LBI.  (Resp. ¶3.)  However, the Response also alleges — for the first time — that LBHI conspired with Ferreira or aided Ferreira's alleged fraudulent scheme and breach of fiduciary duty.  But the Response fails to allege specific facts in support of its claims as required under Rule 8 (general rules of pleading) and Rule 9, and, indeed, even fails to assert the elements of its claims, all of which warrant the expungement of the Claim.

**A.     The Claim is Subject to Fed. R. Civ. P. 8 and 9 Pleading Standards.**

32.     As this Court has explained, "[i]n determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure."  *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (JMP); *In re 20/20 Sport, Inc*., 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer . . . .").

33.     Under the Rules, the "Claimant must assert 'enough facts to state a claim to relief that is plausible on its face.'  To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [Debtor] is liable for the misconduct alleged.'"  *In re DJK Residential LLC,* 416 B.R. at 106 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 577 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

34.     In addition to these requirements, "Rule 9 imposes more stringent pleading requirements when a party is alleging fraud."  *In re DJK Residential LLC,* 416 B.R. at 106; Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

10

circumstances constituting fraud or mistake."). Allegations of fraud based "upon information and belief" are insufficient to satisfy the heightened pleading standard of Rule 9. *See Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) ("Rule 9(b) pleadings cannot be based on 'information and belief.' While the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded.") (internal citations omitted).

35.     The Rule 9 pleading requirements apply to allegations that a party aided a fraud. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (applying Rule 9(b) in analysis of aiding and abetting fraud claim). Rule 9 also applies to allegations that a party aided another party's breach of fiduciary duty, when, as here, that breach of fiduciary duty claim is primarily based on an alleged fraud. *See Clarke v. Cosmo (In re Agape Litig.)*, 773 F. Supp. 2d 298, 307 (E.D.N.Y. 2011) ("Rule 9(b) applies equally to claims alleging aiding and abetting fraud [and] aiding and abetting breach of fiduciary duty sounding in fraud . . . .") (internal citations omitted); (Resp. ¶ 9 (stating that the "fraud enabled Ferreira to breach his fiduciary duties").)

36.     While courts in the Southern District of New York are divided on whether conspiracy to defraud claims are subject to Rule 9(b), *see Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 463 (S.D.N.Y. 2009), at the very least "general allegations that the defendants 'conspired' in the scheme do not sufficiently attribute responsibility for fraud to each individual defendant." *NCA Holding Corp. v. Ernestus*, No. 97-1372 (LMM), 1998 WL 229510, at *3 (S.D.N.Y. May 7, 1998) (citations omitted). "Broad allegations that several defendants participated in a scheme . . . or that some defendants are guilty because of their association with

11

others, do not inform each defendant of its role in the fraud . . . ." *Kolbeck v. LIT Am., Inc.*, 923

F. Supp. 557, 569 (S.D.N.Y. 1996), *aff'd*, No. 96-9422, 1998 WL 406036 (2d Cir. June 8, 1998).

37.    To state a claim for aiding a fraud under New York law, a claimant must

allege: "the existence of the underlying fraud, actual knowledge, and substantial assistance."

*Oster v. Kirschner*, 77 A.D.3d 51, 55 (N.Y. App. Div. 2010).[3]    The knowledge element requires

"actual knowledge of the fraud as discerned from the surrounding circumstances." *Id.* at

56.   "Substantial assistance exists 'where (1) a defendant affirmatively assists, helps conceal, or

by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions

of the aider/abettor proximately caused the harm on which the primary liability is predicated.'"

*Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 64 A.D.3d 472, 476 (N.Y. App.

Div. 2009) (internal citations omitted).

38.    To state a claim for conspiracy under New York law, a claimant must

allege: "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of

the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose;

and (4) resulting damage or injury." *Kottler*, 607 F. Supp. 2d at 463 (citation omitted).

39.    If a claimant does not satisfy the above-referenced pleading requirements,

its claim is subject to expungement. *In re DJK Residential LLC,* 416 B.R. at 107 (holding that

---

[3] New York law, rather than Brazilian law, applies to the Claim.  As a general rule, bankruptcy courts within the Second Circuit will apply the choice of law rules of the state in which they sit. *See O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 389 (Bankr. S.D.N.Y. 2011) ("When performing a choice-of-law analysis, a court should follow the choice-of-law rules of the forum state."); *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 601-02 (2d Cir. 2001) ("[B]ankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state.").  Under New York choice of law rules, "a distinction must be made between a choice-of-law analysis involving standards of conduct and one involving the allocation of losses." *Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994).  "'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'" *Id.* (internal citation omitted); *see also Rose v. Arthur J. Gallagher & Co*, 87 A.D.3d 733, 734 (N.Y. App. Div. 2011) ("Since the laws alleged to be in conflict  . . . are of a conduct-regulating nature, the law of the place of the tort applies.").  Here, based on the bare-bones allegations in the Claim and the Response, any purported wrongdoing by LBHI occurred in New York and, accordingly, New York law applies to causes of action asserted in the Claim.

US_ACTIVE:\44319907\12\58399.0011

when a claim was "so general, conclusory, and lacking in factual support [that it failed the *Twombly* pleading standard]" it "therefore failed . . . to meet the minimum standard necessary to support a challenged proof of claim.").

### B.    The Claim Does Not Comply With the Applicable Pleading Standards.

40.    The Claim does not allege facts sufficient to state a claim under Rule 8, much less Rule 9(b), as to the aiding a fraud or conspiracy claims. The Claim makes no factual allegations regarding LBHI.  It does not allege that LBHI communicated with Ferreira at all, assisted Ferreira in his fraud in any manner, or was even aware of the fraud.   Indeed, it is only the Response—not the Claim itself—that alleges any facts regarding LBHI.  And the Response alleges only that LBHI, "in whole or in part," owned the Bank of America Account, although it does not even claim that LBHI withdrew or otherwise benefitted from the funds that were transferred to the account.  (Resp. ¶ 8.)

41.    Banco Interior cannot excuse its lack of factual support by claiming that the information it needs is entirely in LBHI's possession.  If Ferreira had communicated with LBHI in furtherance of his alleged fraud or breach of fiduciary duty, or otherwise involved LBHI in any manner, it is likely that Ferreira would have some documentation reflecting this in his possession, which Banco Interior could have accessed in the course of Brazilian litigation, or in Banco Interior's files, which the Liquidator would presumably have access to.  And, if LBHI had been involved in Ferreira's wrongdoing, it is likely that the Liquidator could have obtained testimony in some Brazilian judicial proceeding reflecting LBHI's involvement.  But thirteen years after taking control of Banco Interior, the only allegation the Liquidator can put forward is the claim that LBHI owned the Bank of America Account.

42.    Further, it is notable that the Claim and the Response make no reference to any Brazilian judicial determination of Ferreira's responsibility for his alleged fraud and breach of fiduciary duties.  This absence raises the question of whether Ferreira was ultimately held responsible in Brazil and, if not, whether there was even a primary tort that LBHI could have aided or conspired to further.

43.    But putting aside Ferreira's liability, the Claim, even when read in conjunction with the Response, simply makes no attempt to even allege the elements of aiding a fraud or conspiracy, much less provide factual support in furtherance of all of these elements. For this reason, the Claim should be expunged.  *See In re DJK Residential LLC*, 416 B.R. at 106-07 (expunging claim when claimants did not "provide facts to support any of [their] assertions" and claim was "general, conclusory and lacking in factual support"); *In re Worldcom, Inc.*, 296 B.R. 115, 124 (Bankr. S.D.N.Y. 2003) (expunging claim when claimants failed to "render any allegations with particularity or present evidence" in support of a fraudulent inducement claim).[4]

## IV.    ALL APPLICABLE STATUES OF LIMITATIONS HAVE EXPIRED

44.    The Claim should also be expunged because the statute of limitations for Banco Interior's aiding a fraud and conspiracy causes of action expired before the Claim was filed.  *See* 11 U.S.C. § 558 (providing that "[t]he estate shall have the benefit of any defense

---

[4] Although the Claim lists fraud and breach of fiduciary duty as potential causes of action, the Response make clear that the Claim's gravamen is that LBHI allegedly aided or conspired with Ferreira in his fraud.  But, to the extent that Banco Interior is attempting to bring a fraud or breach of fiduciary duty cause of action against LBHI itself, it has entirely failed to allege any facts that would support such causes of action.  To plead a fraud cause of action in accordance with Rule 9, a complaint "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  Banco Interior has made no allegations in support of any of these elements.  To plead a breach of fiduciary duty cause of action, a complaint must allege: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."  *Smallwood v. Lupoli*, 107 A.D.3d 782, 784 (N.Y. App. Div. 2013).  Banco Interior has not made any allegations in support of these elements either.

US_ACTIVE:\44319907\12\58399.0011

available to the debtor as against any entity other than estate, including statutes of limitations");

*In re Brill*, 318 B.R. 49, 53 (Bankr. S.D.N.Y. 2004) ("A challenged claim will not be allowed by

the bankruptcy court if the claim is barred by the applicable statute of limitations.").

### A. New York Law Provides the Relevant Statute of Limitations.

45.     As a general rule, federal courts within the Second Circuit will apply the

choice of law rules of the state in which they sit. *See In re Trinsum Group, Inc.*, 460 B.R. at 389;

*In re Gaston & Snow*, 243 F.3d at 601-02.  Under New York law choice of law rules, CPLR §

202, New York's "borrowing statute" provides the relevant statute of limitations regardless of

which jurisdiction's law applies to the substantive claims at issue (although LBHI's position is

that New York law governs the Claim here, *see, supra*, footnote 3).  *See In re Gaston & Snow*,

243 F.3d at 608 ("CPLR 202 is in the nature of an exception to the normal New York conflicts

rule . . . CPLR 202 is to be applied as written, without recourse to a conflict of law analysis")

(internal quotations and citation omitted); *Jager v. Mitschele*, No. 06-1938 (JS)(WDW), 2010

WL 4722292, at *2 (E.D.N.Y. Nov. 12, 2010) ("And courts must apply § 202 without

conducting a typical choice-of-law analysis.").

46.     CPLR § 202 provides:

> An action based upon a cause of action accruing without the state cannot be
> commenced after the expiration of the time limited by the laws of either the state
> or the place without the state where the cause of action accrued, except that where
> the cause of action accrued in favor of a resident of the state the time limited by
> the laws of the state shall apply.

N.Y. C.P.L.R. § 202 (emphasis added).[5]

---

[5] "Two principal policies underlie the borrowing statute:  first, the statute prevents non-residents from forum shopping in New York for a longer period of limitation; second, the statute is designed to promote certainty and uniform application of the law."  *RA Global Servs., Inc. v. Avicenna Overseas Corp.*, 817 F. Supp. 2d 274, 282 (S.D.N.Y. 2011).

US_ACTIVE:\44319907\12\58399.0011

47.   For CPLR § 202 to apply, the cause of action must have accrued "without the state," *i.e.*, outside of New York. *See id.* New York law provides that the phrase "accruing" refers to "the time and in the place of the injury," and "when an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999); *RA Global Servs., Inc.*, 817 F. Supp. 2d at 282 ("[W]e find that the injury is economic and therefore conclude that the cause of action accrued where plaintiffs reside.")

48.   Here, all of the causes of action asserted in the Claim accrued "without the state," in Brazil, where Banco Interior is located and sustained any alleged economic impact. Accordingly, CPLR § 202 applies, requiring "application of the <u>shorter</u> statutory period of either New York or the place where the nonresident's cause of action accrued." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 801 (E.D.N.Y. 1984) (emphasis added), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

49.   It is unnecessary to consider whether Brazil or New York have the "shorter" statutory period, because under New York law, the statute of limitations for the aiding a fraud and conspiracy causes of action expired before Banco Interior brought the Claim. Thus, it does not matter whether Brazil's statute of limitations is longer or shorter; either way, the causes of action are time-barred.

**B.   The Statute of Limitations Expired Six Years After Ferreira's Alleged Wrongdoing or Two Years After it Was Discovered or Could With Reasonable Diligence Have Been Discovered.**

50.   The statutes of limitation for aiding a fraud and conspiracy causes of action are identical to those of the underlying tort. *See Landow v. Wachovia Secs., Inc.*, No. 12-3277 (SJF)(AKT), 2013 WL 4432383, at *15 (E.D.N.Y. Aug. 12, 2013) ("The statute of limitations

16

for a claim of aiding and abetting a breach of fiduciary duty is the same limitations period that would apply to the underlying breach.") (citation omitted); *U.S. Bank, N.A. v. Gestetner*, 103 A.D.3d 962, 963 n.2 (N.Y. App. Div. 2013) ("As no independent cause of action is recognized for civil conspiracy to commit a fraud, the timeliness of plaintiff's claim that defendants joined in a fraudulent scheme is fully governed by the statute of limitations applicable to fraud.") (citation omitted).

51.    The underlying torts at issue in the Claim are Ferreira's alleged fraud and breach of fiduciary duty against Banco Interior.  For the purposes of this Reply, LBHI will assume that Banco Interior's fraud and breach of fiduciary duty causes of action against Ferreira are governed under CPLR § 213[7], which provides a six year statute of limitations for an "action by or on behalf of a corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property . . . ."[6]

52.    First addressing Banco Interior's fraud claim against Ferreira, under CPLR § 213[7], fraud claims "accrue upon breach, rather than plaintiff's discovery of the breach," unless the claim involves "actual fraud*," i.e.*, "fraud claims alleging an intent to deceive," in which New York's discovery rule applies.  *See Whitney Holdings, Ltd. v. Givotovsky¸* 988 F. Supp. 732, 744 (S.D.N.Y. 1997) ("Despite the general rule that claims under . . . Section 213(7) accrue upon breach rather than discovery, New York law traditionally has

---

[6] It is not clear whether Banco Interior, a foreign bank, constitutes a "corporation" for the purposes of CPLR § 213[7]. However, LBHI will assume, for sake of argument, that CPLR § 213[7] applies here because statutes of limitation that could alternatively apply would be shorter;   CPLR § 213[7]'s application is immaterial to the outcome here; and, in analogous circumstances, courts have applied this statute.  *See F.D.I.C. v. Bober*, No. 95-9529 (JSM), 2000 WL 235271, at *2-3 (S.D.N.Y. Mar. 1, 2000) ("Courts in this district have consistently applied [CPLR § 213[7]] to FDIC actions brought as receiver of a bank against former directors for negligence and breach of fiduciary duty.").

US_ACTIVE:\44319907\12\58399.0011

excepted claims of fraud, which instead accrue only upon the plaintiff's actual or constructive discovery of the facts constituting the fraud.").[7]

53.    Under New York's discovery rule, a fraud cause of action accrues the later of six years from when the fraud occurred or "two years from the time the plaintiff discovered the fraud or 'could with reasonable diligence have discovered it.'" *Sargiss v. Magarelli*, 909 N.E.2d 573, 576 (N.Y. 2009) (internal citation omitted); CPLR § 213[8] (reciting statute of limitation for fraud).   The "'test as to when fraud should with reasonable diligence have been discovered is an objective one.'   'Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry . . . knowledge of the fraud will be imputed to him.'" *Gutkin v. Siegal*, 85 A.D.3d 687, 688 (N.Y. App. Div. 2011) (internal citations omitted).

54.    Next, turning to Banco Interior's breach of fiduciary duty claim against Ferreira, the statute of limitations for a breach of fiduciary duty claim under CPLR § 213[7] is six years from when the breach occurred, unless the breach of fiduciary duty claim is based on an alleged fraud, in which case New York's discovery rule also applies to the breach of fiduciary duty claim. *See Whitney Holdings*, 988 F. Supp. at 744-45 ("As previously explained, the breach of fiduciary duty claim here is governed by the six year period of Section 213(7).   Plaintiff in this case therefore may gain the benefit of a discovery accrual rule only by establishing that the breach of fiduciary duty claim is essentially one of actual fraud.")  *In re Fischer*, 308 B.R. 631, 653 (Bankr. E.D.N.Y. 2004) ("The general rule is that breach of fiduciary duty claims under CPLR § 213(7) accrue upon breach rather than on plaintiff's imputed or actual discovery of the

---

[7] LBHI will assume, again, for sake of argument, that Banco Interior has alleged a claim of "actual fraud" against Ferreira because, even assuming this point in Banco Interior's favor, the statute of limitations still expired before the Claim was brought.

US_ACTIVE:\44319907\12\58399.0011

breach. However, New York courts have held that, in the case of actual fraud, a breach of

fiduciary duty claim accrues upon discovery of the fraud, rather than upon the breach itself").

Additionally, the statute of limitations on a breach of fiduciary duty claim begins to run when

"the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise

terminated." *People v. Ben*, 55 A.D.3d 1306, 1308 (N.Y. App. Div. 2008) (citation omitted).

55.    Accordingly, the statutes of limitations as to Banco Interior's fraud and

breach of fiduciary duty claims against Ferreira expired the later of six years from when Ferreira

committed the fraud and breach of fiduciary duty or two years from when the fraud or breach of

fiduciary duty were discovered or could have been discovered with "reasonable diligence."

*Gutkin*, 85 A.D.3d at 688.

### C.    The Statutes of Limitation Expired Before the Claim Was Brought.

56.    Applying the governing statutes of limitations, it is clear that they expired

as to Banco Interior's fraud and breach of fiduciary duty claims against Ferreira before Banco

Interior filed the Claim, and therefore the aiding a fraud and conspiracy causes of action against

LBHI are untimely.

57.    Banco Interior filed the Claim several years after the six year statute of

limitation on its claims against Ferreira had expired. According to the Claim and the Response,

Ferreira committed the alleged fraud and breach of fiduciary duty on or around September 2000.

(*See* Claim 1 (stating that "in approximately September 2000, Ferreira opened bank accounts . . .

either with [LBI] or [LBIE]"); Resp. ¶ 6 (stating that purchase agreements for the Brazilian Bond

were "dated as of September 1, 2000"). Ferreira's fiduciary relationship with Banco Interior

terminated in approximately February 2001, when the Central Bank of Brazil ordered the

liquidation of the bank and appointed the Liquidator. Therefore, the statute of limitations on

Banco Interior's fraud claim against Ferreira began to run in September 2000 and the statute of limitations on the breach of fiduciary duty claim began to run in approximately February 2001. Banco Interior filed the Claim on September 21, 2009, well after the six year statute of limitations on both causes of action had passed.

58.    Banco Interior's Claim also fails if the New York discovery rule is applied.  Banco Interior's correspondence with LBI shows that on or before June 2007, Banco Interior had requested information from LBI about certain bank accounts allegedly involved in Ferreira's wrongdoing.  (*See* Ex. A.)  This evidences that Banco Interior had discovered the alleged fraud and breach of fiduciary duty by, at least, June 2007, more than two years before Banco Interior filed the Claim on September 21, 2009.

59.    Alternatively, even if Banco Interior lacked knowledge of Ferreira's alleged fraud and breach of fiduciary as of June 2007, with "reasonable diligence" it should have discovered the fraud and breach well before then.   Banco Interior failed in 2001, and the Liquidator was appointed in approximately February 2001.  (Claim Summary 2.)  A reasonable person in the Liquidator's position would have been alerted to the possibility of fraud or other wrongdoing by Banco Interior's failure and undertaken a thorough review of its books and records, thereby uncovering Ferreira's alleged wrongdoing by *at least* 2007, six years after the Liquidator's appointment.  Accordingly, since the relevant statutes of limitations had expired before Banco Interior brought its Claim, the Claim should be expunged.  *See In re Brill*, 318 B.R. at 53.

## V.    RESERVATION OF RIGHTS

60.    In the event that the Court denies the Objection with respect to the Claim, the Plan Administrator reserves the right to object to the Claim on all other grounds.  The Plan

US_ACTIVE:\44319907\12\58399.0011

Administrator reserves the right to conduct discovery as to the Claim and any matters raised in the Response and to supplement this filing as a result thereof.

## VI.    CONCLUSION

WHEREFORE for the reasons set forth above and in the Objection, the Plan Administrator respectfully requests that the Court enter an order disallowing and expunging the Claim in its entirety and granting such other and further relief as the Court may deem just and appropriate.

Dated: April 30, 2014
      New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

US_ACTIVE:\44319907\12\58399.0011

**<u>EXHIBIT A</u>**

# LEHMAN BROTHERS

OFFICE OF THE GENERAL COUNSEL
MIA HOWARD
PARALEGAL

June 29, 2007

**VIA UPS**
Henrique Forssell
Forssell Consultatoria Ltda.
Av. Paulista 2001 -Cj. 201/210
São Paulo/SP - Brazil CEP 11740-000

RE: **Banco Interior de São Paulo**

Dear Mr. Forssell:

This represents the initial response of Lehman Brothers Inc. ("Lehman") to the authorization issued by attorneys-in-fact for Banco Interior de São Paulo in connection with the extrajudicial liquidation of the bank ("the Authorization"). Thank you for cooperating with outside counsel and providing the requested supplementary documents.

Enclosed please find client agreements for accounts held by Banco Interior de São Paulo to include 831-20448, 831-20687 and 082400BISP. No account statements have been generated in any of these accounts. Responsive documents are bates stamped LBI 1-18.

All documents are marked "CONFIDENTIAL." Lehman trusts that this production will only be used in connection with the aforementioned proceeding. Lehman reserves all objections and the right to supplement this response. If you have any questions, please contact me at (212) 320 6646.

Very truly yours,

Mia L.Howard
Legal Assistant

**<u>EXHIBIT B</u>**

4 More London Riverside
London SE1 2AU

T/ +44 (0)20 7379 0000
F/ +44 (0)20 7379 6854
DX/ 132076 London Bridge 4

Your ref.
Our ref.         CZM/AW/A518/1
Doc. number    12411817.2
jennifer.iglesias@lg-legal.com

Direct Dial
T/    +44 (0)20 7759 6922
F/    +44 (0)20 7173 8922

info@lg-legal.com
www.lg-legal.com



Lehman Brothers International (Europe)
(In Administration)
Level 23
25 Canada Square
London
E14 5LQ

29 May 2012

Dear Sirs

**Proof of debt**
**Creditor: Banco Interior de São Paulo S.A. acting by its liquidator, Alcides Roberto de Oliveira Chaves**
**Further information regarding documents and particulars of debt**

We act for Mr Alcides Roberto de Oliveria Chaves the liquidator of Banco Interior de São Paulo S.A. (the "**Creditor**") which is currently under extra-judicial liquidation with the Central Bank of Brazil.

We enclose, for filing, a proof of debt (in Form 4.25) in relation to an unsecured claim in an amount in excess of US$14 million against Lehman Brothers International (Europe) ("**LBIE**") arising from LBIE's involvement in an apparent fraud relating to a bond scheme orchestrated by the Creditor's founder, Mr Aureo Ferreira ("**Mr Ferreira**"). Investigations indicate that LBIE may have been caught up in this fraud in that LBIE appears to have been custodian of the bond(s) and to have operated related accounts. We understand that PWC have set up a creditor portal in order to submit proofs of debt online. Should it be necessary for us to file the proof of debt again online, we would be grateful if you could provide us with the relevant login details.

**Previous correspondence with LBIE**

Our client (through his Brazilian attorney, Dr Henrique Forssell) originally requested assistance from LBIE in November 2007. A copy of that correspondence is enclosed together with a copy of a letter dated 17 January 2008 from George Hallsworth of LBIE which confirms that the request was at that time being dealt with by the Prime Services London Legal Department. The matter appears to have gone no further.

There has also been previous correspondence between Dr Forssell and Lehman Brothers, Inc., and again we enclose copies for reference together with a copy of the master agreement signed between the Creditor and LBIE (again for reference).

Lawrence Graham LLP is a limited liability partnership registered in England and Wales under registration number OC307935 and is authorised and regulated by the Solicitors Regulation Authority. A list of members may be inspected at 4 More London Riverside, its registered office.

On 3 March and 9 April 2009 this firm wrote to LBIE requesting assistance in relation to the ongoing investigation being undertaken by the Creditor. Copies of these letters are enclosed. We did not receive a reply to that correspondence.

**Further particulars of the claim**

For ease, we now set out again what is known about the factual background:

1.      On an investigation by the Central Bank of Brazil (the "**Central Bank**"), it appears that the Creditor issued a number of "insider loans" to 16 individuals and companies (the "**Borrowers**") totalling $14 million, in violation of the applicable laws of Brazil (the "**Insider Loans**"). An investigation by the liquidator for the Creditor also uncovered evidence that the Creditor's founder, Mr Ferreira, embarked on a scheme to cover up those liabilities, which were all in default, by substituting them on the Creditor's books with an asset, namely, part of a government coupon bond issued by the Brazilian Treasury, Bonus Global Brasil 27, ISIN 105756AB07 (the "**Brazilian Bond**"). LBIE appears to have held the Brazilian Bond as custodian.

2.      The scheme to substitute the questionable Insider Loans was accomplished by having each of the Borrowers, in collusion with Mr Ferreira, enter into purchase agreements with a Maryland-based company named Financial Services International, Inc. ("**FSII**") to "purchase" a share of FSII's interest in the Brazilian Bond. These purchase agreements are dated 1 September 2000 and total $14 million; the aggregate value of the Brazilian Bond acquired by the Borrowers (a copy of one of the purchase agreements in its original Portuguese with an English translation is enclosed for your reference).

3.      In consideration of FSII's interest in the Brazilian Bond, each of the Borrowers purportedly agreed to pay one single instalment on 1 September 2003 corresponding to the principal balance of the interest they were acquiring in respect of the Brazilian Bond. Additionally, the Borrowers were required to pay three annual instalments due on 1 September 2000, 1 September 2001, and 1 September 2002, each representing 3%, 1% and 1% of that principal balance. The aggregate amounts due by the Borrowers on account of these three annual instalments equalled $420,000, $140,000 and $140,000, respectively. Pursuant to the terms of the purchase agreements, the Brazilian Bond was in the custody of LBIE.

4.      In the next step in the fraud, the Borrowers transferred their bond interests to the Creditor in return for cancellation of their underlying loans. Specifically, on 6 September 2000, each of the Borrowers entered into separate agreements with the Creditor whereby the interests in the Brazilian Bond acquired by the Borrowers from FSII were then transferred to the Creditor in exchange for a full and total release of the Borrowers' Insider Loans. This scheme is believed to have been conceived and implemented by Lehman Brothers Holdings, Inc. and/or LBIE in collusion with Mr Ferreira.

5.      In or around September 2000, Mr Ferreira opened bank accounts at Lehman Brothers in New York (whether through LBIE or Lehman Brothers, Inc.) in the name of the Creditor and in the name of Aufer Empreendimendos Imobiliarios Ltda ("**AEI**"). The known account numbers of those accounts are 831-20448, 831-20687, 084200BISP, 831-20686-15 399 and 084200AUFL. It is possible that Mr Ferreira or his son, Aureo

12326871.3

Ferreira Jr, may have opened further accounts in the names of Aureo Ferreira, Aureo Ferreira, Jr, Aufer Agropecuaria S.A. or Garter Trading S.A.

6.    Our client believes that the initial instalment owed by the Borrowers was deposited into one of the accounts held within LBIE or Lehman Brothers, Inc.  This is based on bank records showing a deposit of US $420,000 in the account of AEI, No. 831-20686-15 399, made by an entity named Garter Trading S.A. on or around 1 September 2000. The US $420,000 deposit made to AEI's account is equivalent to 3% of the $14,000,000 - the aggregate value of the interest acquired by the Borrowers in respect of the Brazilian Bond.

7.    On the same date, this US $420,000 was transferred from AEI's account to account number 6550161536 at Bank of America International.  At the relevant time, account number 6550161536 at Bank of America is now known to have belonged to, or to have been controlled, in whole or in part by, Lehman Brothers Holdings, Inc.  We enclose copies of the bank statements and other documents previously provided by Lehman Brothers, Inc. to our client in respect of AEI.

8.    Ultimately, a transaction between the Creditor and Lehman related to the Brazilian Bond was purportedly cancelled on 9 February 2001.  Mr Ferreira sent a cancellation letter to a Mr Adrian Devenyl and Mr Jose Luis Piccinini of Lehman Brothers Inc. apparently backdated to 26 January 2001 (a copy of this letter is enclosed).  This cancellation followed the appointment of a liquidator to the Creditor on 7 February 2001.[1]

9.    The liquidator for the Creditor has not been able to determine the status of the Creditor's interest in respect of the Brazilian Bond despite numerous attempts to obtain information from Lehman and its affiliates, including, Lehman Brothers Holdings, Inc.

By improperly booking the Brazilian Bond (which was acquired on credit) as an asset on the Creditor's balance sheet, it is our client's contention that Mr Ferreira misrepresented the Creditor's financial position and thereby committed fraud against its shareholders, depositors, and the Brazilian regulatory authorities.  It is alleged that Lehman Brothers Holdings, Inc. and/or LBIE were involved in that fraud, which, without limitation, under English law, could constitute a breach of their fiduciary duties, and/or conspiracy and/or dishonest assistance.  Further, Lehman Brothers Holdings, Inc. and/or LBIE  could also be liable in the United States for having willingly aided and knowingly conspired with Mr Ferreira to commit that fraud through the renting of a bond that allowed the Creditor to misrepresent its financial position.

Our client further contends that this fraud and conspiracy enabled Mr Ferreira to breach his fiduciary duties and allowed the Creditor to forestall its insolvency, at least temporarily, while simultaneously adding to the Creditor's liabilities and deepening its insolvency to the ultimate detriment and damage to its other shareholders, creditors, the estate and the Central Bank.  It is alleged that Lehman Brothers Holdings, Inc. and/or LBIE received a "rent fee" of approximately US $420,000 and possibly more, as consideration for participating in this scheme.  Moreover, as set out above, the Creditor has suffered loss and damage of in excess of US $14 million as a

---

[1]    On 27 January 2001, Roberto Pichard, Executive Vice President for FSII, sent a letter to Mr Ferreira at AEI acknowledging Mr Ferreira's purported request to cancel a transaction between the Creditor and FSII.  AEI had no legitimate role in the Borrowers' transactions with FSII mentioned above, but paid at least US $420,000.00 into Account No. 6550161536 at Bank of America International as described above.  A copy of the 27 January 2001 letter is enclosed.

consequence of this fraudulent scheme. Our client therefore contends that LBIE and/or Lehman Brothers Holdings, Inc. are liable to the Creditor for that loss and damage.

The Creditor has filed an equivalent proof of claim dated 19 September 2009 in the bankruptcy of Lehman Brothers Holdings Inc as the parent company of Lehman Brothers, Inc. (a copy of which is enclosed). By submitting the enclosed proof of debt in respect of LBIE the Creditor does not seek to double recover, but seeks to reserve its rights to the extent that it has a claim in the administration of LBIE.

Yours faithfully

*Lawrence Graham LLP*

**LAWRENCE GRAHAM LLP**

Encs.

Rule 4.73

**PROOF OF DEBT – GENERAL FORM**

Form 4.25

| | | |
|---|---|---|
| Lehman Brothers International (Europe) (In administration) | | |
| Date of Winding-Up Order/Resolution for voluntary winding-up | | 15 September 2008 |
| 1. | Name of creditor (If a company please also give company registration number). | Banco Interior de São Paulo SA (in liquidation) (São José de Rio Preto, State of São Paulo, Brazil) |
| 2. | Address of creditor for correspondence. | Lawrence Graham LLP, 4 More London Riverside, London SE1 2AU |
| 3. | Total amount of claim, including any Value Added Tax and outstanding uncapitalised interest as at the date the company went into liquidation. | In excess of US$14,000,000.00 |
| 4. | Details of any documents by reference to which the debt can be sustained. (Note: There is no need to attach them now but the liquidator may call for any document or evidence to substantiate the claim at his discretion as may the chairman or convenor of any meeting.) | Please see attached. Given the nature of the claim, not all relevant documents are in the possession of the Creditor. |
| 5. | If amount in 3 above includes outstanding uncapitalised interest please state amount. | £ |
| 6. | Particulars of how and when debt incurred. (If you need more space append a continuation sheet to this form). | The involvement of the Company in a fraudulent bond scheme orchestrated by the founder of the Creditor. Please see attached. |
| 7. | Particulars of any security held, the value of the security, and the date it was given. | |
| 8. | Particulars of any reservation of title claimed in respect of goods supplied to which the claim relates. | |
| 9. | Signature of creditor or person authorised to act on his behalf | |
| | Name in BLOCK LETTERS ANDREW WITTS | |
| | Position with or in relation to creditor Partner, Lawrence Graham LLP, Solicitors to the Creditor | |

| Admitted to vote for | Admitted for dividend for |
|---|---|
| £ | £ |
| Date | Date |
| Liquidator | Liquidator |

10756704.1