Robert Dziedziech
Horizons
Leatherhead Road
Oxshott
Surrey, KT22 0ET
United Kingdom



April 28, 2014

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-2301

Re: Case No. 08-13555 (JMP): Lehman Claim #13291

Dear Judge Chapman,

Following my letter to the court dated April 7, 2014, which was docketed on
April 15, 2014 (doc 44030), debtor's counsel replied within a week with its own
letter (doc 44081), again using procedural nuances to avoid addressing the
equitable and substantive issues of my claim.

Debtor's counsel amongst other things argues that I should not have my day in
court because it never received notice of my April 7 letter, despite the fact that
the letter was properly docketed, and debtor's counsel had no problem
responding within a week of the letter being docketed.  To avoid any doubt of
receiving notice of my prior correspondence, I have sent a copy of this letter to
Court's chambers, the clerk for docketing, and opposing counsel along with an
attached copy of all prior correspondence.

To date, I have never asked this court to opine on the substantive nature of my
claim, but rather just to afford me the opportunity to to be heard on the merits of
my claim – something that opposing counsel repeatedly has attempted to
frustrate through numerous procedurals nuances and "gotchas."

Since the underlying substantive questions in other similarly situated claims
have not yet been fully adjudicated, I do not see how the court exercising its
equitable discretion (as provided by Federal Rule of Civil Procedure Rule
60(b)(5)), by reversing the reclassification of my claim so that I can join other
objections, would in any way undermine the court's finality.  Rather it would
merely afford me my day in court.

As opposing counsel rightly notes, "final judgments should not be lightly
reopened" and Rule 60(b) "may not be used a s a substitute for a timely appeal."
But the reclassification of my claim was never a final judgment as opposing
counsel states, but rather nothing more than a default order that was entered

Page 1 of 3

because I never received the objections and accordingly, to which I never had the opportunity to respond.

Had the court reached a final judgment on the substantive merits of this case, that would certainly be one thing, and the arguments for finality would be compelling.  But my situation is wholly different in that the substantive issue has not yet been adjudicated, and as such I believe it would be inequitable to use a procedural nuance as a "gotcha" to prevent me from ever having the opportunity to be heard on the substantive nature of my claim.

Thus, this is also, not a judgment in which I am merely "displeased," but rather a recently discovered default order that prevented me from ever having the substantive issues of my claim adjudicated in the first place.

The recent discovery of this default order, prior to the court adjudicating the substance matter of my claim, I think supports the very nature of Rule 60(b)(5), which states that it would "no longer [be] equitable that the judgment should have prospective application."

If the court grants my request for relief, reversing the reclassification of my claim so that I can join existing objections, yet strikes down these objections on substantive grounds, there would have been no harm in granting my request. Yet, if the court denies my request, and later upholds the objections of other similarly situated parties on substantive merits, it would create the significant inequity of barring my otherwise meritorious claim merely as a result of a default order, that I never received but properly raised to the court's attention as soon as I learned of it, yet prior to it ever having heard the substantive issues.

Surely, equity does not fall on the side of utilizing a procedural nuance or default order to slam the door on my ever having my day in court to argue the substance of my claim (when to do so would not prejudice the court or the other party, but not doing so would greatly prejudice me) prior to the court actually adjudicating such an issue.

Lastly, I believe it unlikely that many if any claimants who did not object to debtor's objections can prove that they did not actually receive the objections (as I did with my  apartment lease), yet seek the court's relief prior to the court actually opining on the substantive issues of these claims.  Accordingly, I do not believe there is any threat against finality.

While it is true that the reason I did not receive the debtor's April 6, 2011 objections was because I had not timely updated my address, I think I have otherwise shown my diligence in pursuing multiple claims across multiple jurisdictions.  As such, this is not a situation of me ignoring debtor's objections, but rather the impossibility of my responding since I had moved.

I recognize that I should have more timely updated my address, which I have since remedied, but I hope the court will similarly agree that it would be inequitable to use this fact as a procedural "gotcha" that prevents me from ever

having being heard, prior to the court actually adjudicating the issue.

Accordingly, I respectfully reiterate my request to the court that it exercise its equitable discretion under FRCP Rule 60(b)(5) and reverse the reclassification of my claim, merely so I can join other similarly situated objections and have my day in court on the substantive matters, prior to the court reaching its final judgment on these issues.

I presume that my April 7, 2014 letter was tantamount to a motion for the court to exercise this discretion, that opposing counsel's prompt reply, and my prompt response to that reply are sufficient for the court to come to a decision on the merits of my request for relief, but if the court wishes me to enter this request in a more formal manner, I will happily oblige if so requested.

Further, I never requested a hearing and thus never failed to give notice of such, as opposing counsel suggests, but if the court wishes to have this matter heard by hearing, I respectfully request the court to so advise.

Sincerely,

Robert Dziedziech

Robert Dziedziech
Horizons
Leatherhead Road
Oxshott
Surrey, KT22 0ET
United Kingdom

April 7, 2014

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-2301

Re: Case No. 08-13555 (JMP): Lehman Claim #13291

Dear Judge Chapman,

I respectfully request the court reverse the June 3, 2011 recharacorization of my
claim to equity, resulting from the debtor's uncontested objections, dated April 6,
2011.

As discussed more fully below, I believe this is the most equitable result for all
parties, does not prejudice any parties, and does not threaten the finality of
proceedings.

While I concededly, had not timely updated my address in time to receive the
debtor's April 6, 2011 objection, I have tried in earnest to keep current on
various Lehman related employment claims that I have in multiple jurisdictions,
as demonstrated by my repeated address updates following numerous home
moves subsequent to my initial filing of claims.

Further, I believe it is important to note that because I had changed addresses[1], I
did not receive the debtor's objection, and accordingly I did not have the
opportunity to object to the debtor's objection.

From the court's order dated March 31, 2014, it appears that technically, the
debtor met its filing criteria as required by Federal Rules of Bankruptcy
Procedure 2002(g). But I believe that it is most equitable for the court to reverse
the recharacterization of my claim.

Pursuant to Federal Rules of Civil Procedure 60(b)(5), the court can reverse the
prior judgment if "applying it prospectively is no longer equitable." Since the
subject matter is currently pending before the court, it is timely, and would not
prejudice the court, debtor's counsel, or any others, to reverse the

---

[1] As shown in the attached lease covering pages.

Page 1 of 2

recharacterization of my claim <u>so that I would have the opportunity to have the merits of my claim heard</u>, rather than to be barred as I am now on a procedural technicality.

To be sure, opposing counsel confirmed on our March 21, 2014 telephone call, that reversing the recharacterization of my claim so that I could pursue my own objection, <u>would require "no additional work" for the debtor's counsel</u>.

Lastly, I wish to note, that there is likely an extremely finite group of creditors (if any) who have claims that have been recharacterized on a procedural technicality, can prove that they did not actually receive the debtor's objections[2], but for which the subject matter is pending in very analogous situations (i.e. my claim, and other former colleagues claims, related to nearly identical employment related claims), and these creditors seek the court's relief to reverse the recharacterization prior to the resolution of the subject matter.  To permit such requests for relief (if any other than my own), I believe would have almost no impact on the court's proceedings, and <u>not materially threaten the finality</u> of proceedings.

But <u>to bar my request, would be extremely inequitable</u>, because it would <u>prevent my claim from being resolved on its merits</u>; and <u>prejudice me greatly</u> (this is a material claim to me personally), when the alternative would not prejudice the debtor or the court, and would not threaten the finality of proceedings.

In the alternative and/or in addition, I seek relief from the court pursuant to Federal Rules of Civil Procedure 60(b)(6), on the basis that since I did not actually receive the debtor's objection, and factually, I did not have the opportunity to respond.


Accordingly, I respectfully request the court to reverse the June 3 2011 recharacterization of my claim.


Sincerely,


Robert Dziedziech


---

[2] I attach the covering pages to my lease.

# AGREEMENT FOR

# A COMMON

# LAW TENANCY

<u>Important Notice</u>

This document contains the Terms of the Tenancy of 13 Benham House, Coleridge Gardens London SW10 ORD; parking spaces No. 73 and 74 and storage cage No. 42 . It sets out the promises made by the Tenant to the Landlord and vice versa. You should read this document carefully and thoroughly.

You should also ask to be shown a copy of any document referred to in this Agreement. Once signed and dated this Agreement will be legally binding and may be enforced by a court. Make sure that it does not contain Terms that you do not agree with and that it does contain everything you want to form part of the Agreement.

Both parties are advised to obtain confirmation in writing when the Landlord gives consent to the Tenant to carry out any action under this Agreement.

If you are in any doubt about the content or effect of this Agreement, we recommend that you seek independent legal advice before signing.

Initials:        Landlord        Tenant

THIS AGREEMENT IS MADE on the
4th day of October 2010

## Definitions and Interpretation

"Landlord(s)" includes anyone owning an interest in the Premises, whether freehold or leasehold, entitling them to possession of it upon the termination or expiry of the Tenancy and anyone who subsequently owns the Premises. It may also include anyone acting as the Landlord's letting agent, rental collection agent, or managing agent.

"Tenant" includes anyone entitled to possession of the Premises under this Agreement.

"joint and several" means when more than one person comprise the Tenant, they will each be responsible for complying with the Tenant's obligations under this Agreement both individually and together. The Landlord may seek to enforce these obligations and claim damages against any one or more of those individuals.

"Agent" is whomever is appointed from time to time by the Landlord to act as his agent and notified in writing to the Tenant..

"Premises" includes any part or parts of the building boundaries fences garden and outbuildings belonging to the Landlord unless they have been specifically excluded from the Tenancy. When the Tenancy is part of a larger building the Premises include the use of common access ways and facilities.

"Fixtures and Fittings" include references to any of the fixtures, fittings, furnishings, or effects, floor, ceiling or wall coverings.

"Inventory and Schedule of Condition" is the document drawn up prior to the commencement of the Tenancy by the Landlord, the Agent, or Inventory Clerk which shall include the Fixtures and Fittings in the Premises including all matters specified in the Inventory and Schedule of Condition which will be given to the Tenant at the start of the Tenancy after the check in of the Inventory and Schedule of Condition if applicable.

"Term" or "Tenancy" includes any extension or continuation of the contractual Tenancy or any periodic Tenancy arising after the expiry of the original Term.

"Deposit" is the money held from time to time by the Agent in a stakeholder capacity during the Tenancy in case the Tenant should fail to comply with the terms of this Agreement.

"Stakeholder" means that deductions can only be made from the Deposit by the Agent at the end of the Tenancy with the written consent of both parties.

"Notice Period" is the amount of notice that the Landlord must give the Tenant and vice versa.

"Stamp Duty Land Tax" is the duty payable by the Tenant to the Stamp Office on the signing of this Agreement if the Rent exceeds the threshold after deduction of the discount. Further information can be obtained from the Inland Revenue.

"Emergency" means where there is a risk to safety or damage to the fabric of the Premises or Fixtures and Fittings contained therein.

"Water charges" include references to water sewerage and environmental service charges.

"Superior Landlord" means the person for the time being who owns the interest in the Premises which gives him the right to possession of the Premises at the end of the Landlord's lease of the Premises.

"Head Lease" sets out the promises your Landlord has made to his Superior Landlord. The promises contained in this Head Lease will bind the Tenant if he has prior knowledge of those promises.

Initials:        Landlord  *[signature]*                                              Tenant

"the Policy" means any insurance policy held by the Landlord for the Premises or the Fixtures and Fittings.

References to the singular include the plural and references to the masculine include the feminine.

The Tenant and Landlord agree that the laws of England and Wales shall apply to this Agreement.

Initials:        Landlord                                    Tenant

### The Parties to this Agreement

THIS AGREEMENT IS MADE BETWEEN

A.          Serge Walid Sarkis

   of          House B, 5 Mount Austin Road, The Peak, Hong Kong SAR

       ("the Landlord")

AND

B.          Robert Dziedziech and Yekaterina Antropova

   of          1 Blore House, Coleridge Gardens, London, SW10 0RB

       ("the Tenant")

AND IS MADE IN RELATION TO PREMISES AT:

       13 Benham House, Coleridge Gardens, London, SW10 0RD and parking spaces No. 73 and 74 as well as storage cage No.42

       ("the Premises")

### The Main Terms of the Tenancy

1. Term of Tenancy.
   The Landlord lets to the Tenant the Premises for a period of twelve months. The Tenancy shall start on (and include) the 15th day of November 2010 and shall end on (and include) the 14th day of November 2011 but subject to clause 32.2

   The Rent.
   The Tenant shall pay to the Landlord £9316.66 per month, payable in advance in 4 quarterly installments of £27950 each respectively on November 14th 2010, February 14th 2011, May 14th 2011 and August 14th 2011 .

2. The Deposit.
   The Tenant shall pay upon signing of this Agreement £12900.00 as a Deposit. At the end of the Tenancy the Landlord or the Agent shall return the Deposit to the Tenant subject to the possible deductions set out in this Agreement.

3. Fixtures and Fittings
   The Tenancy shall include the Fixtures and Fittings in the Premises including all matters specified in the Inventory and Schedule of Condition.

4. Type of Tenancy
   This Agreement falls outside the scope of the Housing Act 1988.

### Dealing with the Deposit

The following clauses set out:

- what the Landlord will do with the Deposit monies paid by the Tenant under clause 2 above;
- what the Tenant can expect of the Landlord or the Agent when the Landlord or the Agent deals with the Deposit;

Initials:          Landlord  𝓈𝓌𝓈                                             Tenant

Robert Dziedziech
Horizons
Leatherhead Road
Oxshott
Surrey, KT22 0ET
United Kingdom

March 18, 2014

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-2301

Re: Case No. 08-13555 (JMP): Lehman Claim #13291

Dear Judge Chapman,

I wanted to briefly respond to LBHI's letter dated March 13, 2014.

As opposing counsel correctly points out, I did merely request to join the objections of former colleagues on an issue that is being heard by this court next month (and is accordingly a timely issue). It is not, however, what opposing counsel characterizes as a request to reconsider.

Additionally, as opposing counsel noted, I moved several times; but while I tried to be diligent in keeping up to date on claims in multiple jurisdictions, I did not receive the objections from LBHI dated April 6, 2011 because I had moved since the last update.

Per LBHI's request, I have attached a copy of my apartment lease dated October 4, 2010, showing that I moved addresses from 1 Blore House (address on record at time when LBHI's objections were sent) on or about November 15, 2010, to 13 Blenham House. I have attached the first four pages of the lease for the court's review, but can supply further support at the court's request. I believe this proof demonstrates that I did not receive LBHI's objection and did not have an opportunity to respond.

Nonetheless, I believe that LBHI's response letter misses the mark and I would like to highlight three brief points:

1. I do not believe that this is about why I should or should not have updated my address sooner (although I did earnestly try to be diligent in doing so across multiple claims in multiple jurisdictions while trying to restart my career following the collapse of my employer), but rather about the <u>factual question of whether I received the objections, which my attached lease (per LBHI's request) demonstrates I did not</u>.

Page 1 of 2

2. I merely requested that the court permit me to join existing objections, which the court is scheduled to hear next month.  Accordingly, I believe the <u>subject matter is timely</u>.

3. <u>Permitting me to join these objections would not prejudice any party</u> and is immaterial in the scope of the debtor's estate, but not permitting me to join would greatly prejudice me as it would effectively extinguish my claim, the amount of which is personally quite material.  Further, I would also like to highlight that permitting me to join the existing objections would not cause any delays to court proceedings.

Again, I respectfully reiterate my request that the court permit me to join the objections of other similarly situated former colleagues, who are objecting to their compensation claim being downgraded to equity claims.


Sincerely,



Robert Dziedziech

# AGREEMENT FOR
# A COMMON
# LAW TENANCY

### Important Notice

This document contains the Terms of the Tenancy of 13 Benham House, Coleridge Gardens London SW10 ORD; parking spaces No. 73 and 74 and storage cage No. 42 . It sets out the promises made by the Tenant to the Landlord and vice versa. You should read this document carefully and thoroughly.

You should also ask to be shown a copy of any document referred to in this Agreement. Once signed and dated this Agreement will be legally binding and may be enforced by a court. Make sure that it does not contain Terms that you do not agree with and that it does contain everything you want to form part of the Agreement.

Both parties are advised to obtain confirmation in writing when the Landlord gives consent to the Tenant to carry out any action under this Agreement.

If you are in any doubt about the content or effect of this Agreement, we recommend that you seek independent legal advice before signing.

Initials:      Landlord  ᏩᏌᎦ                                    Tenant

THIS AGREEMENT IS MADE on the
4th day of October 2010

### Definitions and Interpretation

"Landlord(s)" includes anyone owning an interest in the Premises, whether freehold or leasehold, entitling them to possession of it upon the termination or expiry of the Tenancy and anyone who subsequently owns the Premises. It may also include anyone acting as the Landlord's letting agent, rental collection agent, or managing agent.

"Tenant" includes anyone entitled to possession of the Premises under this Agreement.

"joint and several" means when more than one person comprise the Tenant, they will each be responsible for complying with the Tenant's obligations under this Agreement both individually and together. The Landlord may seek to enforce these obligations and claim damages against any one or more of those individuals.

"Agent" is whomever is appointed from time to time by the Landlord to act as his agent and notified in writing to the Tenant..

"Premises" includes any part or parts of the building boundaries fences garden and outbuildings belonging to the Landlord unless they have been specifically excluded from the Tenancy. When the Tenancy is part of a larger building the Premises include the use of common access ways and facilities.

"Fixtures and Fittings" include references to any of the fixtures, fittings, furnishings, or effects, floor, ceiling or wall coverings.

"Inventory and Schedule of Condition" is the document drawn up prior to the commencement of the Tenancy by the Landlord, the Agent, or Inventory Clerk which shall include the Fixtures and Fittings in the Premises including all matters specified in the Inventory and Schedule of Condition which will be given to the Tenant at the start of the Tenancy after the check in of the Inventory and Schedule of Condition if applicable.

"Term" or "Tenancy" includes any extension or continuation of the contractual Tenancy or any periodic Tenancy arising after the expiry of the original Term.

"Deposit" is the money held from time to time by the Agent in a stakeholder capacity during the Tenancy in case the Tenant should fail to comply with the terms of this Agreement.

"Stakeholder" means that deductions can only be made from the Deposit by the Agent at the end of the Tenancy with the written consent of both parties.

"Notice Period" is the amount of notice that the Landlord must give the Tenant and vice versa.

"Stamp Duty Land Tax" is the duty payable by the Tenant to the Stamp Office on the signing of this Agreement if the Rent exceeds the threshold after deduction of the discount. Further information can be obtained from the Inland Revenue.

"Emergency" means where there is a risk to safety or damage to the fabric of the Premises or Fixtures and Fittings contained therein.

"Water charges" include references to water sewerage and environmental service charges.

"Superior Landlord" means the person for the time being who owns the interest in the Premises which gives him the right to possession of the Premises at the end of the Landlord's lease of the Premises.

"Head Lease" sets out the promises your Landlord has made to his Superior Landlord. The promises contained in this Head Lease will bind the Tenant if he has prior knowledge of those promises.

Initials:       Landlord       Tenant

"the Policy" means any insurance policy held by the Landlord for the Premises or the Fixtures and Fittings.

References to the singular include the plural and references to the masculine include the feminine.

The Tenant and Landlord agree that the laws of England and Wales shall apply to this Agreement.

Initials:        Landlord  ᴸᵁ        Tenant

### The Parties to this Agreement

THIS AGREEMENT IS MADE BETWEEN

A.       Serge Walid Sarkis

    of     House B, 5 Mount Austin Road, The Peak, Hong Kong SAR

         ("the Landlord")

AND

B.       Robert Dziedziech and Yekaterina Antropova

    of     1 Blore House, Coleridge Gardens, London, SW10 0RB

         ("the Tenant")

AND IS MADE IN RELATION TO PREMISES AT:

         13 Benham House, Coleridge Gardens, London, SW10 0RD and parking spaces No. 73 and 74 as well as storage cage No.42

         ("the Premises")

### The Main Terms of the Tenancy

1. **Term of Tenancy.**
   The Landlord lets to the Tenant the Premises for a period of twelve months. The Tenancy shall start on (and include) the 15th day of November 2010 and shall end on (and include) the 14th day of November 2011 but subject to clause 32.2

   **The Rent.**
   The Tenant shall pay to the Landlord £9316.66 per month, payable in advance in 4 quarterly installments of £27950 each respectively on November 14th 2010, February 14th 2011, May 14th 2011 and August 14th 2011 .

2. **The Deposit.**
   The Tenant shall pay upon signing of this Agreement £12900.00 as a Deposit. At the end of the Tenancy the Landlord or the Agent shall return the Deposit to the Tenant subject to the possible deductions set out in this Agreement.

3. **Fixtures and Fittings**
   The Tenancy shall include the Fixtures and Fittings in the Premises including all matters specified in the Inventory and Schedule of Condition.

4. **Type of Tenancy**
   This Agreement falls outside the scope of the Housing Act 1988.

### Dealing with the Deposit

The following clauses set out:

• what the Landlord will do with the Deposit monies paid by the Tenant under clause 2 above;
• what the Tenant can expect of the Landlord or the Agent when the Landlord or the Agent deals with the Deposit;

Initials:     Landlord *SWS*                    Tenant

Robert Dziedziech
Horizons
Leatherhead Road
Oxshott
Surrey, KT22 0ET
United Kingdom

March 5, 2014

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-2301

Re: Case No. 08-13555 (JMP): Lehman Claim #13291

Dear Judge Chapman,

I respectfully request that the court permit me to join the objections of other similarly situated former colleagues, who are objecting to their compensation claim being downgraded to equity claims.

## History

Below is a brief history of events:

- Claim filed: September 16, 2009 (attached as an addendum to this letter)
- Address on record updated: September 6, 2010
- I moved to a different home in late 2010
- Debtor filed Motion: "Motion for Omnibus Objection to Claim(s) : Debtors One Hundred Eighteenth Omnibus Objection to Claims (to Reclassify Proofs of Claim as Equity Interests) filed by Robert J. Lemons on behalf of Lehman Brothers Holdings Inc.": April 6, 2011 (Docket No. 15666)
- Order Signed: June 3, 2011 (Docket No. 17349)
- Address on record updated: September 2011
- Address on record updated: February 2014

As a former UK employee I was jointly pursuing claims in both the US and UK, proceeding in earnest to simultaneously keep up with claims in both jurisdictions. While the US claim proceeded, I diligently answered numerous UK requests through the years. This included updating my address numerous times.

- Updated address for UK claim: September 2013
- Filed for severance in UK: February 2014

Approximately 1.5 weeks ago, and subsequent to filing for severance in the UK last month, I contacted a friend/former colleague to confirm that she had also

filed for severance. During this discussion, she asked me about my claim and informed me of the upcoming April court hearing on her objection to the debtor's motion to downgrade our compensation claims to equity claims.

Only then did I learn about the debtor's motion, which I had not received because it was sent to my old address.

Accordingly, I did not have an opportunity to timely object to the reclassification of my claim to an equity claim, which essentially equates to a dismissal.

Shortly thereafter, I contacted the Court in order to promptly make the request to join these existing, identical objections.

**No Prejudice to Court or Debtor**

My claim is no different from many similarly situated claims of former colleagues of mine, many of whom objected to the reclassification of these compensation claims to equity – an issue currently pending before the court, and scheduled to be heard in April 2014.

As the court is currently considering objections to the reclassification of claims completely identical to my own, the court would not be prejudiced by permitting me to join these existing objections.

Similarly, should the court permit me to join these existing objections, the debtor would not be prejudiced, since my claim is nominal in the context of the entire estate, and my claim is again identical to those currently pending before the court.

**Denial of This Request Would Only Prejudice Me**

While my claim is not material in the context of the debtor's estate, it is quite material to me as an individual.  Accordingly, this claim is very significant to me and the court's denial of this request (which would amount to a dismissal of my claim), would only, and would greatly prejudice me.

**Conclusion**

1. I have attempted to be diligent in keeping current on all of my concurrent claims, which have proceeded in multiple jurisdictions.

2. Since I did not receive the debtor's April 2011 motion, I had no opportunity to timely object to the reclassification of my claim to equity.

3. My claim is identical to many others, of which the court is currently considering their objections.

4. I merely ask the court to permit me to join these identical and currently pending objections.

5. Permitting me to join these claims would not prejudice the court or debtor, but denying my request would greatly prejudice me.

Accordingly, I respectfully request that the court permit me to join these existing objections.


Sincerely,


Robert Dziedziech

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re:  Lehman Brothers Holdings Inc., et al.  Debtors. | Chapter 11  Case No. 08-13555 (JMP)  (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held  Lehman Brothers Holdings Inc. | Case No. of Debtor  08-13555 |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000013291

THIS SPACE IS FOR COURT USE ONLY

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor:

Robert Z. Dziedzlech
24 Benham House
Coleridge Gardens
London
SW10 0RD
UK

Telephone number: +44 787 0659 326    Email Address: bobd72@yahoo.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number:_____
    (If known)

Filed on:_____

Name and address where payment should be sent (if different from above)

Same as above

Telephone number:         Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1.  Amount of Claim as of Date Case Filed: $  2,072,577.91

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete Item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2.  Basis for Claim: Employee Claim: Compensation for Services Performed/Deferred Equity Compensation
(See instruction #2 on reverse side.)

3.  Last four digits of any number by which creditor identifies debtor: 5261
3a. Debtor may have scheduled account as:_____
(See instruction #3a on reverse side.)

4.  Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:_____
Value of Property: $_____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____  Basis for perfection:_____

Amount of Secured Claim: $_____  Amount Unsecured: $_____

5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

6.  Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7.  Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8.  Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

FILED / RECEIVED
SEP 16 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:  9/15/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  ROBERT Z. DZIEDZIECH |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**Robert Z. Dziedziech**
**Lehman deferred equity compensation units outstanding as of September 14th, 2008**

| Grant Date | Units Granted | Dividend Equivalents | Outstanding Units | Price At Grant Date | Value At Grant Date |
|---|---|---|---|---|---|
| December 10, 2003 | 2,540.16 | 135.62 | 2,675.78 | $35.695 | $95,511.97 |
| December 9, 2004 | 9,650.36 | 433.37 | 10,083.73 | $42.900 | $432,592.02 |
| November 30, 2005 | 8,460.32 | 310.57 | 8,770.89 | $63.000 | $552,566.07 |
| December 8, 2006 | 12,463.22 | 368.83 | 12,832.05 | $77.030 | $988,452.81 |
| July 1, 2008 | 162.77 | 2.07 | 164.84 | $20.960 | $3,455.05 |
| Total | 66,390.89 | 2,498.85 | 68,889.74 | | $2,072,577.91 |

