# EXHIBIT 57

other way; for as soon as the other three townships were separated, the remaining five had a right to be so. It is clear that the parish, as a parish, cannot have the benefit of the Statute 43 Eliz. because it has always had a greater number of overseers than are allowed by that Act. Therefore upon that ground, as well as upon the former, that the other three townships have had separate overseers, I am of opinion that the five remaining ones are also entitled to have them.

Buller, J. The parties applying for this rule must necessarily make out two points before they can succeed. First, that this is a township. And, secondly, that it cannot have the benefit of the 43 Eliz.

The last is the point which has been most relied on: for as to the first, it certainly is a township. Wherever there is a constable, there there is a township. There may be a constable for a larger district than a township, but not for a smaller. The doubt in many of the cases, whether such a place was a township or not, has arisen where there was no constable.

Then the remaining question is, whether the township of Pilsworth can have the benefit of the 43 Eliz.? What is a decisive answer against that is, that the other three townships have separate overseers. We must consider what is meant by the bene-[377]-fit of the statute. It is that the parish may maintain their own poor, as a parish: for unless they can do it, as such, they cannot have the benefit of that statute. Now it is here stated that three of the townships maintain their own poor; but unless they all join, they cannot reap the benefit of the statute.

It has been argued that the parties applying for the mandamus should have shewn special reasons to the Court why they cannot have the benefit of the statute. But in fact they have done so; for they have stated the largeness of the parish, and its great population, which circumstances are not denied by the other side. Independently of these reasons, another ground laid for the mandamus is that the five remaining townships require five overseers. If from necessity they must have five overseers to govern their poor, that affords a strong argument to prove that even if these five comprehended one parish, independent of the other three, yet they could not enjoy the benefit of the 43 Eliz. which allows only four overseers.

The cases which have been mentioned were all rightly decided, but they do not apply to the present. As to the case of *Peart and Westgarth* (a), the parish had enjoyed the benefit of the Statute of Elizabeth for 120 years. After such a length of time, the Court said that they must have shewn to them some strong reasons to induce them to believe that it could not be continued, before they would appoint overseers in a different manner from that pointed out by the Statute of Elizabeth, notwithstanding any intervening custom for 40 years: but no sufficient reason appearing, they directed one joint appointment for the whole parish. Next, as to the case of *The King* against *The Justices of Middlesex* (b), it appeared most clearly that the parish of Kentish Town could have the benefit of the Statute of Elizabeth. There were two overseers appointed for the whole parish, which was sufficient to answer the purposes of the statute. Then as to the case of *The King and Uttoxeter* (c), the answer to it is, that the parish did not shew that they could not have the benefit of the 43 Eliz.

Per Curiam (d),
Rule absolute (e).

[378] BIRCH *against* WRIGHT. Friday, Nov. 10th, 1786. An action for use and occupation may be maintained by a grantee of an annuity after a recovery in ejectment against a tenant, who was in possession under a demise from year to year, for all rent in his hands at the time of notice by the grantee, and down to the day of the demise in the ejectment; but not afterwards.

[Adopted, *Phillips* v. *Homfray*, 1883-86, 24 Ch. D. 462; 11 App. Cas. 466.]

This was an action for use and occupation, tried at the sittings at Westminster,

---

(a) 3 Burr. 1610.            (b) Bott, 17.            (c) Dougl. 332.
(d) Ld. Mansfield was not able to attend on this or any subsequent day in the term.
(e) Vid. *R.* v. *The Inhabitants of Leigh*, post, 3 vol. 746; and *R.* v. *T. Newell*, post, 4 vol. 266.

after last Easter term, before Buller, J. when a verdict was found for the plaintiff, subject to the opinion of the Court of King's Bench, on a case which stated in substance as follows:

That the defendant, before the 18th of July 1777, was tenant from year to year of the lands in question to Mr. Bowes, at the yearly rent of 223l. 10s.—payable half yearly, viz. on the 12th of May and the 22d of November.

That by indenture of 18th of July 1777, Mr. Bowes and his wife Lady Strathmore granted annuities to several persons therein named for the life of Lady Strathmore; and they covenanted to levy a fine to the use of the plaintiff and Mr. Goostrey (who is since dead) upon trust to receive the rents and pay the annuities out of them, and then to pay the residue to Mr. Bowes and Lady Strathmore. That a fine was levied accordingly.

That the defendant paid all the rent which was due on the 22d of November 1785, except 81l. 15s. to Mr. Bowes, which sum of 81l. 15s. is still unpaid; and no rent has been paid by the defendant since that time.

That in May 1785, the plaintiff and Goostrey brought an ejectment against the defendant, and laid the demise on the 6th of April 1785.

That in Trinity term 1785, they obtained judgment; and in September 1785 gave notice to the defendant of their title, and required him to attorn to them and to pay to them the money already in his hands: but the defendant refused to attorn, and thereupon a writ of possession was executed, and the defendant quitted the premises mentioned in the declaration.

That Lady Strathmore is still living.

The question for the opinion of the Court is, whether the plaintiff is entitled to recover any and what sum of money in this action?

This case was argued in last Trinity term by Chambre for the plaintiff, and Law for the defendant; and again on this day by Cowper for the plaintiff, and Mingay for the defendant. But as the Court in giving judgment went so fully into all the points made, and cases cited, at the Bar, it is thought unnecessary to state the arguments at length.

[379] Ashhurst, J. It is very material to distinguish the different dates and times. From the 6th of April 1785 to the time of recovering in the action of ejectment, in my opinion the plaintiff is precluded from recovering in this form of action; for that would be blowing both hot and cold at the same time, by treating the possession of the defendant as that of a trespasser, and that of a lawful tenant, during the same period. The plaintiff cannot first recover in ejectment, and then for use and occupation for the time subsequent to the day of the demise in such ejectment.

But as for the rent due antecedent to the time of the demise, there is no doubt but this action is maintainable. For the Statute of the 4th of Ann. having rendered attornment unnecessary, and having put the party in the same situation by the conveyance as if the tenant had attorned, he is to be considered in possession; and then, as there is no deed between these parties, he may maintain this action for use and occupation. Moss v. Gallimore (a) is expressly in point, and stronger than the present case. So that the plaintiff may recover all the rent due at the time of notice given which remained in his hands, and must be considered as landlord from such time, provided the tenant be not prejudiced by the payment of any rent before notice.

The question then is, whether bringing an ejectment is a bar to an action for use and occupation for rent due before the time of the demise? In my opinion it is not, for the actions are not inconsistent. The landlord admits him to be tenant till the 6th of April 1785, and consequently is entitled to rent before that period; and after that he considers him a trespasser.

Buller, J. Upon this case two questions have been argued;

1st, whether the plaintiff be entitled to any of the rents and profits of the lands occupied by the defendant? and,

2dly, supposing him to be entitled to them, whether he can recover them in this form of action?

The material thing to be considered is, who are the parties in the business, and what are their respective interests.

First, I will begin with the defendant, who is the tenant. He originally came

---

(a) Dougl. 265.

| 1150 | BIRCH v. WRIGHT | 1 T. R. 380. |

into the estate as tenant from year to year to Mr. Bowes; he was so at the time of the conveyance from Mr. Bowes to the plaintiff, and he continued to hold the estate, as such, without any new agreement or notice of the conveyance till the ejectment was brought. Whilst he was tenant to Mr. Bowes, he clearly was entitled to six months' notice before [380] the end of a year to quit, and he could not have been turned out without it. I hold that he was entitled to the same notice from the plaintiff before he could be evicted; for as the plaintiff claims under a conveyance from Mr. Bowes, he cannot be in a better situation than Mr. Bowes himself was. He stands exactly in the place of Mr. Bowes, with this difference, that his title is subsequent to the title of the defendant. I mention this difference only for the purpose of at once laying the case of *Keech and Hall*, Dougl. 21, out of the question. There a mortgagor made a lease for years subsequent to the mortgage, and that lease was holden to be void as against the mortgagee.

In this case I consider the defendant as holding during all the time under a demise made before the conveyance to the plaintiff. For if a tenant from year to year hold for four or five years, either he or his landlord at the expiration of that time may declare on the demise as having been made for such a number of years. So it is expressly laid down by the Court in *Legg* v. *Strudwick*, Salk. 414; though in the next preceding page there are two cases which at first seem to have been determined otherwise; the one in the Court of Common Pleas, the other by Holt, Ch.J. at Nisi Prius: but those are short loose notes jumbled together with others, and not to be relied on. Besides, when those cases are examined, they will be found not to contradict the case of *Legg* v. *Strudwick*. That in the Common Pleas was *Bellasis and Burbrich*; and Salkeld (a) states it thus: On a lease made for a year, and so from year to year so long as both parties pleased, it was adjudged a lease for two years, and afterwards at will. The same case is reported in Lutw. 213; and it was an action for a rescue; and the plaintiff stated in his declaration a demise for a year, and so from year to year, &c., and he distrained for a year and a half's rent. It was objected that the lease determined at the end of one year, and so the plaintiff could not distrain for the rent of that year and half a year more: but it was answered, and so agreed by the Court, that it was a good lease for two years at the least. Two years covered the whole time which was material in that case; it was quite unnecessary to say what would be the effect of the lease after the two years, and therefore the Court said nothing about it. Much less did they say that after the two years it was only a lease at will; on the contrary, the expression of at the least, imports that it might be good for more. The other is a case said to have been determined by Holt, Ch.J. at Nisi Prius at Lincoln; and Salkeld reports it thus: If A. demise lands to B. [381] for a year, and so from year to year, this is not a lease for two years and afterwards at will, but it is a lease for every particular year, and after the year is begun the defendant cannot determine the lease before the year is ended. But in a lease at will, the defendant may determine his will after the payment of his rent at the end of a quarter, but not in the beginning, lest his lessor should lose his rent. In that case the question seems to have been whether, after the third year commenced, the lessor was entitled to the whole year's rent, and Holt, Ch.J. held that he was; because the tenant could not determine the estate in the middle of the year. And the expression for every particular year, does not mean that such a lease operates as a distinct demise for each year separately, but that when any year has commenced, it is good for the whole of that year. Besides, if the case admitted of any other construction, yet after *Legge and Strudwick*, which was decided by Holt himself in this Court ten years afterwards, it is impossible to entertain a doubt about it.

It would be unjust to a tenant to say he should be turned out by the assignee of a reversion, or by any person claiming under his lessor, when he could not be turned out by the lessor himself. On the other hand it is no injustice, it is no hardship on the assignee to say, he must comply with the same rules and conditions as the person of whom he bought has subjected himself to.

Whether the plaintiff be considered as a mortgagee only, or as a purchaser, or assignee of the reversion, it will make no difference in this part of the case. His title first accrued in July 1777; it was too late then to give notice to the defendant to quit at the end of the current year, for that expired on the 22d of November. The

(a) 413.

defendant, therefore, at the time that the plaintiff's title accrued, had as permanent an interest in the estate till the 22d of November 1778, as if it had been leased to him by deed till that time. He had also a further interest in it, unless determined by six months' notice previous to that time; which notice never having been given, he continued rightful tenant to some one down to the time that the ejectment was brought.

This brings me to consider who is entitled to that rent? That depends on the nature and effect of the conveyance from Mr. Bowes to the plaintiff, and the operation of the statute of the 4th Ann. c. 16. And whether it be considered as a mortgage, or as an absolute grant of the reversion, in my opinion it will make no difference. There is in some respects an analogy [382] between this case and the case of a mortgage, for it is a security for money; the annuities or rents are to be paid out of the rents and profits, and then the remainder of those rents and profits is to be paid to Mr. Bowes. So in the case of a mortgage, till the principal is called for, the interest is to be paid out of the rents and profits, and the remainder is to be retained by the mortgagor. In both cases the borrower would be liable to pay it, if the rents and profits were not sufficient; but that is by virtue of his covenant. In other respects this case is not at all like a mortgage; for a mortgage is always in its nature redeemable, but these annuities are not made so. And I hold that this is a grant of the reversion, and not a mortgage.

But I will first state how the case would stand, supposing Mr. Bowes and the plaintiff are to be considered as mortgagor and mortgagee. In that light it would be said that there is an implied agreement between the mortgagor and the mortgagee, that the mortgagor shall hold as tenant at will to the mortgagee, paying the interest from time to time, and the principal when called for. If the mortgagor be tenant at will, he is entitled to the rents and profits till that will is determined; and whenever the will is determined, it cannot have relation back to a former time; because that would be by a subsequent Act to make an estate tortious which was rightful at the time it existed. That a mortgagor has often been called a tenant at will to the mortgagee in Courts of Law and Equity is undoubtedly true, but I think inaccurately so; and the expression has been used when it was not very material to ascertain what his powers or interest were, or to settle with any great precision in what respects he did, and in what respects he did not, resemble a tenant at will. In old cases he is sometimes called tenant at will, and sometimes tenant at sufferance. In *Keech* v. *Hall*, Wallace called him the agent of the mortgagee, and Lord Mansfield stated him to be tenant at will to some purposes, but not to others. In *Moss* v. *Gallimore*, Lord Mansfield said a mortgagor is not in reality a tenant to the mortgagee; if he were he must pay rent, but that is not so. To many purposes he is like a tenant at will; but he does not pay rent; he must pay interest only. Mr. Justice Ashhurst said, "In some respects a mortgagor is strictly tenant at will:" but that is not so here; for the mortgagor is not in possession, and there cannot be a tenant to a tenant at will. If a tenant at will lease, it determines the will.

[383] Whoever wishes to wade through all the old books on this subject will find a great collection of cases in Comyns's Digest, title Estate, 1. H. But it is an herculean labour; and, with the opinion which I hold, namely, that this is not a mortgage, it would be quite useless and immaterial in the present case.

Whenever it is necessary to decide a similar question between the mortgagor and mortgagee, it seems to me that it will be quite sufficient to call them so, without having recourse to any other description of men, or to what they are most like. But if a likeness must be found, I think, as it was put by Ashhurst, J. in *Moss* v. *Gallimore*, a mortgagor is as much, if not more, like a receiver than a tenant at will. In truth he is not either. He is not a tenant at will, because he is not entitled to the growing crops after the will is determined. He is not considered as tenant at will in those proceedings which are in daily use between a mortgagor and mortgagee; I mean in ejectments brought for the recovery of the mortgaged lands. If he were tenant at will, the demise could not be laid on a day antecedent to the determination of the will (a). But it is every day's practice to lay the demise on a day long before there has been any actual determination of the will; sometimes back to the time when the mortgage became forfeited, and no objection has ever been made on that account.

---

(a) Vid. *Goodtitle d. Gallaway* v. *Herbert*, post, 4 vol. 680.

He is not a receiver; for, if he were, he would be obliged to pay all the rents and profits to the mortgagee, which is not the case. Two things which differ from each other in any respect cannot be the same; therefore he is neither tenant at will, nor receiver. Nor is it necessary that he should be so; for a mortgagor and mortgagee are characters as well known, and their rights, powers, and interests as well settled, as any in the law. The possession of the mortgagor is the possession of the mortgagee; and as to the inheritance, they have but one title between them. The mortgagor has no power of making leases to bind the mortgagee. He cannot against the will of the mortgagee do any act to disseise him. Cro. Jac. 660. Cro. Car. 304. 3 Lev. 388, and Skin. 424. And the reason is, because the mortgagee, so long as he receives his interest, is virtually and in the eye of the law in possession. The mortgagee has a right to the actual possession whenever he pleases; he may bring his ejectment at any moment that he will; and he is entitled to the estate as it is with all the crops growing on it. He is also entitled to all the rents which have become due [384] since his mortgage, and which are unpaid; as was determined in *Moss and Gallimore*, which case I hold to be sound law; and I am desired by Lord Mansfield to declare, that, on consideration, he is most perfectly satisfied with that decision. The case was, that one Harrison, having demised an estate to the plaintiff for 20 years, afterwards mortgaged it to the defendant, who, without having ever been in the actual possession of the rents, distrained on the plaintiff for rent in arrear, and the distress was held lawful. The legality of the distress depended on the stat. 4 Ann. c. 16. Before that statute, if a reversion were granted over by deed which operated only as a common law conveyance, without attornment the grant itself was void to all intents and purposes. But it was not so where the grant was by fine or by deed of uses, on which the Stat. 27 H. 8 operated; for, in the case of a fine, the estate passed to the conusee and his heirs, and an attornment in that case was necessary only to make a privity between the tenant and the conusee, and, if made after the death of the conusee to his heirs, was sufficient. Where the reversion was conveyed by a deed of uses, the grantee might distrain without any attornment at all. Co. Lit. 309. 6 Co. 68. Cro. Jac. 192. The statute enacts, that all grants or conveyances thereafter to be made by fine or otherwise, of any manors, rents, reversions, or remainders, shall be good and effectual to all intents and purposes, without any attornment of their tenants, as if their attornment had been made. This clause comprehends all grants and conveyances, and therefore whether it be a grant by way of mortgage, or of the fee-simple, or only of the reversion for a term of years, as in the present case, it makes no difference. And the effect of the clause is, that it creates an immediate privity between the grantee and the tenant. It cannot be restrained merely to the making of the grant good as between the grantor and grantee; 1st, because it expressly mentions grants by fine; and they were good to all purposes before without attornment, except as to creating such a privity as would enable thé grantee to distrain; 2dly, because the statute says the conveyance shall have the same effect as if an attornment had been made. Now if an attornment in fact were made before the statute, there can be no doubt but the grantee was perfect landlord to the tenant, and entitled to all the rents accruing due from the time of the attornment; though according to Co. Lit. 310 b. it would not have entitled him to the rents which became due between the time of the grant and the time of the attornment; which is contrary to what the [385] plaintiff's counsel have contended on this point, namely, that the attornment would relate back to the time of the grant.

The Legislature having gone the length of making the grantee a perfect landlord without the knowledge of the tenant, it occurred to them that mischiefs might ensue by leaving the tenant open to a distress or action for the rent at the suit of a person of whom he knew nothing, and after he had paid his rent to his original landlord; and therefore they prudently added the proviso, that no person should be prejudiced by payment of rent to any grantor or conusor, or by breach of any condition for non-payment of the rent, before notice should be given to him of the grant by the conusee or grantee. I say they prudently added that proviso, because perhaps it was not absolutely necessary; for the wisdom, the benevolence, and the liberality of the common law had made the same provision before.

The case of *Sir John Watts and Others* v. *Ognell*, Cro. Jac. 392, is a strong proof how much equity and good sense have always prevailed in the law. That case was debt for rent by the assignees of a reversion under a fine levied to their use. Several

08-13555-mg    Doc 44409-57    Filed 05/22/14    Entered 05/22/14 19:27:39    Exhibit 57
Pg 7 of 8

objections were made in arrest of judgment; one of which was that the declaration was not good, because it was not alleged that the lessee upon this grant by fine attorned, nor that he had any notice of the use limited; and even if he might avow without attornment, yet notice ought to be given to the lessee, for otherwise he should be at mischief; for the use might be limited, and he not having conusance thereof might pay his rent to his ancient lessor. Of this point the Court doubted; but afterwards they held that the action was well brought, and that notice need not be alleged in the declaration. But they agreed that the lessee is not bound to pay without notice; and if he hath paid it to his ancient lessor, it is a good excuse for him, and he may plead it: and if he hath not paid it, the action gives him notice to pay it to the grantee, and then he is chargeable for all which was not paid. This case, though decided almost 100 years before the passing of the Act of Queen Ann., where actual attornment was not necessary, established the same rule which the Act professes to make. And it is a case well worthy of observation; for, 1st, it shews how much the common law regarded and required notice, where a person had not the means of knowing; for at that time there was no statute which required notice to be given. 2dly, it shews that, where attornment is dispensed with or supplied by a [386] statute, the grantee has as complete and perfect a title as if attornment had actually been made. 3dly, this case fortifies an argument, on which I relied much in the case of *Moss and Gallimore*, drawn from the form of pleading, namely, that since the statute an attornment never is alleged either in a declaration in covenant, or in an avowry; which can only be because it is supplied by the statute, and therefore unnecessary. And, 4thly, it proves that nothing can excuse the lessee from paying the rent to the assignee, but actual payment to the original lessor without notice of the grant; and, if that be his case, he may plead it.

From hence I conclude that the plaintiff was the landlord of the defendant. He had a clear legal title which he could support upon pleading, either in an action of covenant, or in avowry; and the tenant was answerable to his action, unless he could allege some legal bar in his defence, and which I think he could only do by shewing payment to the grantor before notice.

The first proposition which I laid down was, that the defendant under his first demise continued rightful tenant to some one till the time when the ejectment was brought. And now I say that that some one, during all the time that the rent in arrear accrued, was the plaintiff. Consequently the plaintiff is entitled to maintain an action for use and occupation against the defendant for all that is due and unpaid, as rent during the time that the plaintiff was landlord and the defendant had the premises as his tenant.

But then another question remains to be considered, namely, down to what time the plaintiff is entitled to recover that rent in the present action.

For the plaintiff it was contended, that he had a right to recover it down to the time of executing the writ of possession; and to establish this point four cases were quoted.

1st, a Nisi Prius determination cited in Cowp. 246. There is no name to it; but it was tried at Launceston Assizes when Gould, J. was at the Bar; and there the lessor of the plaintiff in ejectment had likewise brought an action for use and occupation of the same premises for rent which had accrued subsequent to the time of the demise. Both actions came on to be tried at the same assizes; and in the action for use and occupation it was objected that it was an action founded on promises, and a supposed permission by the plaintiff to the defendant to occupy, therefore an acknowledgment on the part of the plaintiff that he was tenant, and consequently a waver of his notice. But the objection [387] was over-ruled, and the plaintiff recovered, first in the ejectment and afterwards in the action for use and occupation. This at best is but a Nisi Prius determination; and I can find no principle whatever on which to support it to the extent to which it goes. If the plaintiff recovered only in the action for use and occupation to the time of the demise in the ejectment, which he might do notwithstanding his declaration claimed the rent to a later period, I think the case is good law. But if he recovered rent due after the demise, I cannot give my assent to it. For the action for use and occupation is founded on contract; and unless there were a contract either express or implied, the action could not be maintained; as was held by Lord Mansfield in the case cited at the Bar of *Carmier* v. *Mercer*, which was tried about two years ago. And if there were a contract subsisting at the time of the demise, the ejectment could not be maintained.

K. B. XXVIII.—37

Two other cases quoted were *Hambly* v. *Trott*, Cowp. 371, and *Goodtitle* v. *North and Others*, Dougl. 562. But as those cases do not seem to me to apply to the present, I shall pass them over. They only relate to the questions, what actions may be maintained against an executor or a bankrupt, and what die with the person, or are barred by the certificate.

The last quoted was *Feltham* v. *Terry* (a)[1], where an action for money had and received was brought against an overseer of the poor to recover money in his hands which had been levied on a conviction, but that conviction was afterwards quashed; and the Court held that the action was maintainable for the clear money in the defendant's hands, because the plaintiffs might wave the tort and sue for the clear money really due. I agree that he may do so; but in the present case the plaintiff has not waved the tort: he has brought his ejectment and obtained judgment on it, which is insisting on the tort; and he cannot be permitted to blow both hot and cold at the same time. The action for use and occupation, and the ejectment, when applied to the same time, are totally inconsistent; for in one the plaintiff says the defendant is his tenant, and therefore he must pay him rent; in the other he says he is no longer his tenant, and therefore he must deliver up the possession. He cannot do both. The plaintiff's counsel admit that an action would lie for the mesne profits; it is of course after ejectment, and may be maintained without proving any title. The ejectment is the suit in which the [388] defendant is considered as a trespasser; and, unless the judgment in ejectment be laid out of the case, the tort is not waved. The defendant stands convicted on record by judgment as a trespasser from the 6th of April 1785.

Therefore I am of opinion that the plaintiff is in this action entitled to recover the 81l. 15s. which remained unpaid as part of the half year's rent due on the 22d of November, and also a proportional part of the rent up to the 6th of April 1785; the defendant having continued tenant to the plaintiff up to that time, which is the day of the demise laid in the declaration in ejectment. But I think he is not entitled in this action to recover any rent subsequent to that day.

Per Cur. Let the postea be delivered to the plaintiff.

EXECUTORS OF WRIGHT, BART. *against* NUTT, in Error. Friday, Nov. 10th, 1786.
Executors, against whom a scire facias is sued out, recover damages assessed on an interlocutory judgment against their testator before his death, cannot bring error, if the testator's attorney agreed for him that no writ of error should be brought in that action. The Court on motion will order the attorney to nonpros the writ.

The present defendant, who was plaintiff in the original action, obtained an interlocutory judgment against the testator, and executed a writ of inquiry. Pending that action, the testator's attorney agreed that no writ of error should be brought. After the testator's death, a scire facias, to shew cause why the damages assessed by the jury should not be adjudged to the plaintiff, was sued out against the executors; who thereupon brought a writ of error. A rule having been granted against the attorney to shew cause why he should not nonpros the writ of error, as having been brought contrary to his agreement, by which it was insisted that the executors were bound;

Mingay and Law now shewed cause; contending that the agreement entered into by the testator's attorney not to bring a writ of error in that action was not binding upon the executors in the present case; because a scire facias is considered as a new action, though it must pursue the first (a)[2]. That, as the defendant died between the time of executing the writ of inquiry and final judgment, this case was in some measure omitted out of the statute of 8 and 9 W. 3, c. 11, s. 6, which had only declared that, if the defendant died after interlocutory judgment and before final judgment signed, the plaintiff should have a scire facias against his executors to shew cause why damages should not be assessed: but in the present case the damages have been assessed by executing the writ of inquiry. Therefore, if the [389] statute did not apply, it stood as at common law, and the suit abated by the death of the parties.

Cowper and Erskine, in support of the rule, observed that this was not an action

---

(a)[1] E. 13 Geo. 3, B. R. cited in Cowp. 419.
(a)[2] Cro. Jac. 331. Hob. 4.