# EXHIBIT   63

1 C. B. 749.                    FRANKLIN  v.  CARTER                        737

[749] TINDAL, C. J.  I am of opinion that the replication in question is bad, as professing to answer the whole of the plea to the last count, whereas, in ordinary understanding, it must be taken to answer part only ; for, it is impossible to say that many of the articles referred to in the sixth count, are either beasts of the plough or implements of husbandry (a).  As, therefore, the plea to that count is unanswered, there must be judgment for the defendant thereon.

The rest of the court concurred.

Judgment for the defendant.

## [750]  FRANKLIN v. CARTER.  May 28, 1845.

[S. C. 3 D. & L. 213 ; 14 L. J. C. P. 241 ; 9 Jur. 874.  Referred to, *Cumming* v. *Bedborough*, 1846, 15 Mee. & W. 441.  Applied, *Skinner* v. *Hunt*, [1904] 2 K. B. 462.]

To covenant for rent under an indenture, the defendant pleaded, as to 2l. 0s. 10d., that, on the 5th of April, 1843, before any part of the rent became due, 2l. 0s. 10d., being at the rate of 7d. for every 20s. of the annual value, was duly, and according to the form of the statute, assessed on the premises, in respect of the property thereof, for the year ensuing ; that, on the 28th of August, 1844, before the commencement of the suit, the defendant, then being occupier and tenant, paid to T. C., then being collector, the 2l. 0s. 10d. ; and that the defendant had never made any payment on account of the rent since the payment of the 2l. 0s. 10d. :—Held, on general demurrer, that the plea sufficiently shewed that the assessment was made under the property and income tax act, 5 & 6 Vict. c. 35, and that it answered that part of the demand to which it was pleaded.—The defendant also pleaded, in bar of the further maintenance of action, as to 52l. 10s., other parcel of the rent, that the plaintiff held the premises on lease from A., subject to a proviso for re-entry by A. for breach of covenant ; that on the 1st of January, 1844, before any part of that rent became due, the plaintiff incurred a forfeiture by breach of covenant ; that, in consequence of such forfeiture, A. recovered in ejectment against the plaintiff ; and that the defendant afterwards paid A. 52l. 10s., for the profits from the day of the demise in the declaration (1st of January, 1844) :—Held, that the plea disclosed a substantial answer as to the 52l. 10s., argumentativeness not being pointed out as a ground of demurrer.

Covenant, for four quarters' rent, the last quarter due on the 29th of September, 1844, under an indenture of lease reserving 70l. a year "free from all rates, taxes, charges, duties, and assessments."

First plea—as to 2l. 0s. 10d., parcel of the 70l. in the declaration mentioned as due and in arrear to the plaintiff—that, after the making of the indenture, and whilst the defendant held the said tenements thereunder as tenant thereof to the plaintiff, and whilst the plaintiff was entitled to the annual sum of 70l. reserved by the said declaration, the plaintiff would only have been bound to prove the conversion of some articles, or of some one article, mentioned in the last count of the declaration. The defendant in this case, appears, in effect, to say—"I admit having taken goods falling within some one or more of the descriptions contained in the last count of your declaration, and to the extent of that admission, I justify the taking as a distress." The plaintiff replies that the goods and chattels in the last count mentioned (that is, some goods coming within some one or more of the descriptions in the last count), were beasts of the plough and implements of husbandry.

The question, whether the replication is good or bad, appears to depend upon whether the allegations in the last count bound the plaintiff to prove that some articles coming within each of the descriptions in that count, had been taken.  If not, it is difficult to see why the replication does not afford a complete answer to the plea. If the insertion of the books, bedsteads, &c., though under a videlicet, had pledged the plaintiff to shew that some books and some bedsteads had been converted by the defendant to his own use, the replication would have been bad on the ground of departure.

(a) If the replication is to be construed as alleging that books and bedsteads are implements of husbandry, is the truth of that allegation a question of law, for the court, or of fact, for a jury ?

C. P. XIII.—24

FRANKLIN *v.* CARTER

indenture, and before any part of the rent in the declaration mentioned had accrued due, to wit, on the 5th of April, 1843, a large sum of money, to wit, 2l. 0s. 10d., being at and after the rate of 7d. for every 20s. of the annual value, to wit, 70l., of the said messuage, &c., was duly, and according to the form of the statute in such case made, assessed on the said messuage, &c., in respect of the property thereof, for the year next **[751]** ensuing, which sum of 2l. 0s. 10d. was payable by four quarterly instalments, that is to say, on the 20th of June, &c., then next ensuing; that afterwards, and before the commencement of the suit, to wit, on the 28th of August, 1844, the defendant, then being the occupier and tenant of the said messuage, &c., paid to Thomas Casey, then being the collector of the said tax, the said sum of 2l. 0s. 10d.; which sum of 2l. 0s. 10d. so paid by the defendant, was and is 7d. for every 20s. of the said sum of 70l., the annual rent payable by the defendant to the plaintiff, under and by virtue of the said indenture, for the said messuage, &c.; and that the defendant had never made any payment to the plaintiff on account of the rent of the said messuage, &c., since the payment of the said sum of 2l. 0s. 10d.—verification.

To this plea there was a general demurrer.

Second plea—as to 52l. 10s., parcel of the 70l. in the declaration mentioned, being the rent which was alleged to have accrued due on the 25th of March, the 24th of June, and the 29th of September, 1844, and all damages and causes of action in respect thereof—that the plaintiff ought not further to maintain his action thereof, because, before and at the time of making the indenture in the declaration mentioned, to wit, on the 14th of August, 1820, R. J. Smith was lawfully possessed, for a term of years, whereof upwards of fifty-three and a half years, wanting twenty-one days, from the 24th of June, were to come and unexpired, of and in the said messuage, &c., in the declaration mentioned, and, being so seised thereof, before making the said indenture, to wit, on the said 14th of August, in the year last aforesaid, by a certain indenture then made between the said R. J. Smith of the one part, and the plaintiff of the other part, the said R. J. Smith did demise and lease the said messuage, &c., with the appurtenances, in the declaration mentioned, unto the plaintiff, his executors, ad-**[752]**-ministrators, and assigns: to have and to hold the same unto the plaintiff, his executors, &c., from the 24th of June then last, for and during the term of fifty-three years and a half, wanting twenty-one days, from thence next ensuing; and the plaintiff did in and by the last-mentioned indenture, amongst other things, covenant with the said R. J. Smith, that he the said R. J. Smith, his heirs, executors, administrators, and assigns, should and would, from time to time, and at all times during the term thereby granted, at his and their own proper costs and charges, well and sufficiently repair, uphold, &c.; and also that the plaintiff, his executors, &c., should and would, from time to time, and at all times during the said term thereby granted, insure or cause to be insured the said messuage, &c., and every part thereof, in the Albion Fire Office, in London, to the full amount of the value thereof; and that, in and by the last-mentioned indenture it was and is afterwards provided, and the last-mentioned indenture was declared to be upon the express condition, that, if the plaintiff, his executors, &c., should not in and by all things well and sufficiently observe, perform, fulfil, and keep all and singular the covenants, clauses, articles, conditions, and agreements in the said last-mentioned indenture before contained, which on his and their part and behalf were and ought to be observed, &c., according to the true intent and meaning of the said indenture, then and from thenceforth, and in either of the said cases, it should and might be lawful for the said R. J. Smith, into and upon the said messuage, &c., wholly to re-enter, and the same to have again, retain, repossess, and enjoy as in his and their first and former estate, and the plaintiff, his executors, &c., and all other occupiers, thereout and thence utterly to expel, put out, and amove, the same indenture, or anything thereinbefore contained, to the contrary in any wise notwithstanding: that, after the **[753]** making of the last-mentioned indenture, and before the making of the indenture in the declaration mentioned, to wit, on the 14th of August, 1820, Franklin entered into the said messuage, &c., and became and was possessed thereof under and by virtue of the said indenture between the said R. J. Smith and Franklin, for the term by the same indenture granted, and was so thereof possessed at the time of the making of the indenture in the declaration mentioned; that afterwards, and before any part of the rent in the introductory part of that plea mentioned, accrued due and in arrear, to wit, on the 1st of January, 1844, Franklin did not nor would, on the day and year last aforesaid, insure or cause to be

1 C. B. 754.         FRANKLIN *v.* CARTER         739

insured the said messuage, &c., in the said fire-office, but wholly neglected so to do, and the same was, on the day and year last aforesaid, wholly uninsured in the said fire-office, contrary to the form and effect of the said covenant in that behalf: that, by means of the premises, after the making of the said indenture, and before any part of the said sum of 52*l.* 10*s.*, parcel, &c., became due and payable, to wit, on the 1st of January, 1844, the estate, term, and interest of Franklin in the demised messuage became and were ended, forfeited, and determined (*a*)[1] : that, by reason and in consequence of the said forfeiture, John Doe, on the demise of the said R. J. Smith, afterwards, to wit, in Hilary term, 7 Vict., commenced an action of trespass and ejectment in the court of Queen's Bench at Westminster: that to this action (*b*) Franklin afterwards, in Easter term, in the year last aforesaid, duly appeared in the said court to defend the same as the landlord of the said messuage, &c., and pleaded thereto (*b*); that thereupon, to wit, in [754] Hilary term, in the year last aforesaid, the said John Doe duly declared in the said court, against Franklin, for that the said R. J. Smith, on the 1st of January, 1844, being a day before any part of the said sum of 52*l.* 10*s.*, parcel, &c., became payable, demised to John Doe, who entered and was ejected by Franklin, &c.: and that such proceedings were thereupon had, &c., that afterwards, and after the commencement of this suit, to wit, on the 28th of January, in Hilary term, 8 Vict., it was considered by the said court, that the said John Doe should recover against Franklin his said term, &c.; of all which premises the said R. J. Smith afterwards, to wit, on the day and year last aforesaid, gave notice to the now defendant, and then called upon, and required him to attorn (*a*)[2] tenant to him the said R. J. Smith of the said messuage, &c., and to pay him for the proceeds, issues, and profits of the said messuage, &c., from the day of the said demise to the said John Doe, and the defendant then attorned (*a*)[2] tenant to the said R. J. Smith, of the said messuage, &c., and paid him, for the said profits, issues, and proceeds of the same, a large sum of money, to wit, 52*l.* 10*s.*—verification, and prayer of judgment, if the plaintiff ought further to maintain his action.

To this plea the plaintiff demurred specially, assigning for causes—that, although the defendant had therein admitted the making of the indenture of lease, and that he thereupon entered into the demised premises, and became thereof possessed as tenant to the plaintiff for the said term, yet the defendant had attempted to deny and to put in issue the plaintiff's title as landlord to the said messuage, &c., which the defendant was, by the [755] said indenture and tenancy, estopped from doing; that the said plea admitted and confessed a breach of the covenant in non-payment of the rent, and a right of action in the plaintiff, without shewing how or when the same was satisfied or discharged, or why the defendant was not in law liable to be sued for breaches of covenant in the said lease, or liable for damages in respect of any such breach; that the defendant, in his said second plea, alleged that the title of the plaintiff to the said premises was forfeited before the commencement of the action, for the non-performance of the covenants contained in a certain indenture of demise in the second plea set forth, and that the defendant had pleaded and relied upon such indenture, without making profert of, or offering to produce, the same, or shewing any matter in excuse of such profert; that the plea was double and multifarious, in this, that it was therein stated that the said term and interest of the plaintiff had expired and determined before the commencement of the suit, and also that the defendant was evicted by title paramount to that of the plaintiff; and that by the said second plea it was attempted to put in issue matters of law; and that no certain issue could be taken thereon, &c.

Joinder in demurrer.

Channell, Serjt. (with whom was Petersdorff), in support of the demurrers. The first plea is bad in substance. It is probably founded upon the 5 & 6 Vict. c. 35, s. 60, No. iv. reg. 9, which provides that "the occupier of any lands, tenements, heredita-

---

(*a*)[1] The proviso in the lease gave an optional power of re-entry, but created no cesser of the term, ipso facto, by the mere force of a breach of covenant.

(*b*) Franklin, being a stranger to the action against the casual ejector (the action here referred to), could not appear to, or plead to, or defend, that action.

(*a*)[2] No grant having been made of any reversion or remainder expectant upon the defendant's tenancy, there could be no legal attornment. The term is used in the wide and popular sense of—acknowledgment of a tenancy under a new landlord. Vide 6 N. & M. 634, n., 640, n., 4 M. & G. 148.

ments, or heritages, being tenant of the same, and paying the said duties, shall deduct so much thereof in respect of the rent payable to the landlord for the time being (all sums allowed by the commissioners being first deducted) as a rate of 7d. for every 20s. thereof would, by a just proportion, amount unto; which deduction shall be made **[756]** out of the first payment thereafter to be made on account of rent; and the tenant paying the said assessment shall be acquitted and discharged of so much money, as if the same had actually been paid unto the person to or for whom his rent shall have been due and payable." That clause gives to the tenant who has paid property-tax that is chargeable on the landlord, the right to deduct the amount on payment of the next rent, but not to set it off in an action. There is nothing in this plea to shew by what authority, or when, the alleged assessment was made, or that the residue of the rent was paid. It is true, the payment of property-tax was made the subject of a plea in the case of *Tinckler* v. *Prentice* (4 Taunt. 549); but that was under the 46 G. 3, c. 65, s. 74.

It is doubtful, on the face of the second plea, whether it seeks to set up an answer to the action by way of eviction, or is intended as a plea of payment of the rent to a third party. It cannot, however, be a plea of eviction; for, there is no allegation that the defendant was tenant in possession at the time the ejectment was brought, or that there was any eviction until after the commencement of the suit. Neither does it shew that the landlord's title expired before the rent became due. [Cresswell, J. Does not the second plea sufficiently shew that the plaintiff's title ceased and determined (*b*)[1], before any of the rent became due, by a forfeiture, of which the landlord afterwards elected to take advantage? Maule, J. The defence suggested is, that the plaintiff ought not further to enforce his claim to the rent, because since the commencement of the action, the superior landlord has availed himself of the previous forfeiture, and enforced his claim.] That would be giving the tenant a defence by effluxion of time. There is no allegation in the plea that the plaintiff in the ejectment ever enforced that judgment against the present plaintiff.

**[757]** Byles, Serjt. contrà. The ninth regulation of the 60th section of the recent property and income tax act, puts the payment of the property-tax on the same footing as a payment to the superior landlord. [Maule, J. It seems to provide what would have been implied by law without such provision.] The first plea sufficiently shews, on general demurrer, at least, that the money therein mentioned was assessed under that act; for, it could only have been assessed under some act of parliament in force at the time, which authorized a deduction of 7d. in the pound. [Tindal, C. J. When we see the day on which the rate is alleged to have been assessed, and that it is stated to have been duly assessed in respect of property for the year next ensuing, we can hardly doubt that the 5 & 6 Vict. c. 35, is the act pointed at, seeing that it is the only statute that will support that statement.] *Tinckler* v. *Prentice* (4 Taunt. 549) is a distinct authority to shew that a payment of property-tax on account of the landlord may properly be the subject of a plea.

The second plea is, in substance, a plea of eviction : it alleges that a forfeiture (*b*)[2] was incurred, and that, by reason and in consequence of that forfeiture, the superior landlord brought ejectment, and recovered judgment.

The formal objections urged are not sustainable.

Channell, Serjt., was heard in reply.

TINDAL, C. J. A tenant, no doubt, is at liberty to shew that his landlord's title has expired by effluxion of time, or has been forfeited by some breach of condition, and that the superior landlord has entered for the forfeiture. That seems to me to be in substance the defence set up in this case, by the second plea. The only objection I can see to it is, that it is an argumentative statement **[758]** that the landlord entered for the condition broken ; which, however, is not pointed out as a ground of special demurrer. The statement in the plea is, that, "by reason and in consequence of the said forfeiture," an action of ejectment was commenced by Smith, the superior landlord, in which the present plaintiff was made defendant, laying the demise on the 1st of

---

(*b*)[1] Vide post, 760, n.

(*b*)[2] The plea shews a right to re-enter and a judgment in ejectment founded upon a declaration in which an entry by Doe, under Smith, is alleged ; but it shews no re-entry in fact, either by Doe or by Smith, under a writ of habere facias possessionem or otherwise.

FRANKLIN *v.* CARTER 741

January, 1844, being a day before any part of the rent in question accrued, and that John Doe recovered judgment in that action. It is true, the judgment in the ejectment is not alleged to have been recovered until after the commencement of the present action ; and therefore it is that the plea is pleaded to the further maintenance of the action. It appears to me that it affords a substantial answer as to the 52l. 10s. to which it is pleaded.

COLTMAN, J. There can be no doubt that the second plea discloses a substantially good answer to the action as to the 52l. 10s., though I should have had a difficulty in holding it to have been well pleaded, had the real objection been properly pointed out by the demurrer. It appears, that, before the commencement of the present action, the term of the plaintiff was put an end to, that is, that he had committed a forfeiture, and that certain proceedings in ejectment were in consequence had against him. That raises an inference that the superior landlord elected to take advantage of the forfeiture. It is true that it is merely an argumentative statement of the fact of the plaintiff's title having been put an end to. But, though many grounds of demurrer are specially assigned, this is not one of them.

MAULE, J. I also am of opinion that both of these pleas must be held to be sufficient. Obscurely as the statute is hinted at, I think the first plea sufficiently shews, upon general demurrer, that the 2l. 0s. 10d. was assessed upon the value of the property under the **[759]** 5 & 6 Vict. c. 35, s. 60, No. iv. reg. 9. The plea clearly refers to an assessment under some statute ; and the plaintiff does not suggest that it was made under any other statute than that of Victoria. It is impossible to entertain any judicial doubt upon the subject. Then comes the question whether money paid by a tenant on account of his landlord under that act, may be set off, or deducted, in an action brought by the landlord for the recovery of rent. The act says, that " the occupier of any lands, tenements, hereditaments, or heritages, being tenant of the same, and paying the said duties, shall deduct so much thereof, in respect of the rent payable to the landlord for the time being (all sums allowed by the commissioners being first deducted,) as a rate of 7d. for every 20s. thereof would, by a just proportion, amount unto ; which deduction shall be made out of the first payment thereafter to be made on account of rent." I think we may hold, without unduly straining the words of the act, that the deduction may be claimed out of the next payment, though made under legal process. It is too much to ask us to go out of our way to put an inconvenient construction upon the words of the act, when they are well susceptible of a meaning that is consistent with reason and justice. For these reasons, I am of opinion that the first plea is a good answer as to the 2l. 0s. 10d.

The second plea, in substance, is this,—that the plaintiff, under whom the defendant held, was entitled to the premises under a lease from one Smith, containing, amongst others, a covenant to insure, and a proviso that Smith should be at liberty to re-enter for breach of that covenant ; that there was a breach of the covenant to insure ; that Smith brought an ejectment thereupon and recovered judgment ; and that the defendant was called upon to, and did, attorn tenant to Smith, and pay him the 52l. 10s. for profits, &c. It would be monstrous, indeed, if that were to afford no **[760]** defence upon the merits. A doubt is raised as to whether the defence is properly pleaded. I think it is. The plea states,—in a manner that seems to me not to be open to objection,—that a breach of covenant had been committed by the plaintiff before any part of the 52l. 10s. became due for rent, and before the commencement of the action, and that the superior landlord took certain proceedings by reason and in consequence of such forfeiture, and recovered the term (*a*) from the time of the forfeiture, and that he called upon the defendant, and compelled him, to attorn tenant to him, and to pay him a compensation for the use of the land from that time. If that be a sufficient statement of an election on the part of the superior landlord to proceed for the forfeiture, I see no objection to the plea. But, when it is shewn that the superior landlord had title by reason of the forfeiture, from a given day, and that

---

(*a*) The term recovered, was, not the term held by Franklin, which, consistently with the allegations in the plea, may still subsist, but the term created in favour of Doe,— a term which must here be regarded as having no existence, actual or conventional, Carter not being party or privy to the estoppel arising between Doe and Franklin upon the judgment in ejectment, and being therefore not entitled to set up that estoppel against Franklin.

he enforced his right from that day, and recovered the term (*a*), I think the plea discloses circumstances which made it impossible for the defendant to resist the right of the superior landlord to turn him out (*b*).  For these reasons, I think the defendant is entitled to judgment on the second plea also.

CRESSWELL, J.    I am entirely of the same opinion.

Judgment for the plaintiff (*c*).

[761]    MARRIAGE *v.* MARRIAGE.    May 28, 1845.

[S. C. 14 L. J. C. P. 244 ; 9 Jur. 581.]

Debt on a bond in the penal sum of 4000*l.*, the condition of which bond,—after reciting that the obligor was indebted to the obligee in the sum of 2000*l.*, and that the latter had agreed to accept and take from the informer, interest for the same at the rate of 5*l.* per cent. per annum, payable half-yearly, during the joint lives of the obligee and his wife, in full satisfaction and discharge of the debt, provided the same were regularly paid,—was declared to be, that, if the obligor should pay the interest in the manner stipulated, the obligation should be void ; but, in case of failure of payment of all or any part of the interest, for twenty-eight days next after each payment should become due, the same having been demanded, the bond was to remain in full force.  The condition further stated that it was agreed, that, in case of failure in making the several payments aforesaid, within the respective times aforesaid, the bond, or any payments made under the same, should not be construed or taken as a discharge of the debt of 2000*l.*, or any part thereof, but the same should forthwith, after such default, become due and payable to the obligee, his executors, &c.—Held—on special demurrer to a plea alleging that the annual sum in the condition mentioned was granted for a pecuniary consideration, and that no memorial was inrolled pursuant to the 53 G. 3, c. 141,—that this was not a grant of an annuity within that statute.—Whether the annuity acts apply to annuities granted in consideration of the forbearance of pre-existing debts—quære.— The defendant further pleaded, that payment of the second half-yearly payment was not demanded by the plaintiff on the day it became due, or at any time within twenty-eight days after, but that the defendant, after the twenty-eight days, and before the commencement of the action, paid the same to the plaintiff, who accepted it in satisfaction, &c. :—Held, on special demurrer, that this was not a good plea of solvit post diem, within the 4 Ann. c. 16, s. 12.

Debt, on a bond in the penal sum of 4000*l.*

The defendant craved oyer of the bond and condition.    The bond was as follows :— " Know all men by these presents, that I, Francis Marriage, of, &c., am held and firmly bound to Joseph Marriage the elder, of, of, &c., in the penal sum of 4000*l.* of lawful British money, to be paid to the said Joseph Marriage, or his attorney, executors, administrators, or assigns ; for which payment to be well and truly made, I bind myself, my heirs, executors, and administrators, firmly, by these presents, sealed with my seal.    Dated, the 9th February, 1843."    The condition was as follows :—" Whereas the above-bounden Francis Marriage is indebted to the [762] above-named Joseph Marriage in the sum of 2000*l.* : and whereas the said Joseph Marriage has, at the request of the said Francis Marriage, agreed to accept and take from the said Francis Marriage interest for the same at the rate of 5*l.* per cent. per annum, payable during

---

(*a*) The term recovered, was, not the term held by Franklin, which, consistently with the allegations in the plea, may still subsist, but the term created in favour of Doe,—a term which must here be regarded as having no existence, actual or conventional, Carter not being party or privy to the estoppel arising between Doe and Franklin upon the judgment in ejectment, and being therefore not entitled to set up that estoppel against Franklin.

(*b*) There was, however, no actual turning out.

(*c*) The lease from Smith containing no clause of forfeiture creating a cesser of the term upon a breach of covenant, but merely a power of re-entry, until the exercise of that power, by actual entry, Franklin's term continued.    The second plea alleges, not a re-entry, but certain proceedings in ejectment,—proceedings which would be nugatory unless preceded or followed by an entry by or on behalf of Smith, and which, with such entry, would be unnecessary.