# EXHIBIT 65

Hill and Redman's Law of Landlord and Tenant/Division A General Law/Chapter 6 Rent/A The nature of rent/2 The nature of rent

## 2 The nature of rent

**[1541]**

Rent is the recompense paid by the lessee to the lessor for the exclusive possession of corporeal hereditaments. It must be reserved on the demise[1] and historically has been regarded as issuing out of the lands demised[2].

[1] See *Duke of Westminster v Store Properties Ltd [1944] Ch 129*.

[2] Holdsworth History of English Law vol VII, p 262.

**[1542]**

Although rent originally consisted of the performance of services to the landlord, in modern times it is conceived of as a payment which the tenant is bound by contract to make to the landlord[1]. However, rent in its correct sense even in modern times has four distinguishing qualities[2], being:

(a) a periodical sum;
(b) paid in return for the occupation of land;
(c) issuing out of the land; and
(d) for non-payment of which distress is leviable.

As is indicated above, rent need not consist of the payment of money: it may consist in the render of chattels[3] or in the performance of services[4] but it must be certain[5]. Although the landlord may reserve to himself as a rent part of the produce of the land (such as a corn rent[6]) or a rent assessed by reference to the profits from the land (for instance, a royalty assessed by reference to the quantity of minerals worked[7]) the lessor cannot reserve as a rent the right to use the demised land itself because reservation of the actual use of the land is repugnant to the grant for which the rent is payable[8].

[1] Holdsworth History of English Law vol VII, p 262; *Property Holding Co Ltd v Clark [1948] 1 KB 630 at 648*; see also *C H Bailey Ltd v Memorial Enterprises Ltd [1974] 1 All ER 1003, [1974] 1 WLR 728*; *United Scientific Holdings Ltd v Burnley Borough Council [1978] AC 904*; *John Smith & Co (Edinburgh) Ltd v Hill and ors [2010] EWHC 1016 (Ch) at [22]-[23]*.

[2] *Escalus Properties Ltd v Robinson [1995] 2 EGLR 23 at 25, CA*, per Nourse LJ.

[3] Co. Litt. 142a; *Pitcher v Tovey (1692) 4 Mod Rep 71*; *Lanyon v Carne (1669) 2 Saund 161*; see also *Montague v Browning [1954] 1 WLR 1039, CA* (in context of Rent Acts).

[4] Co. Litt. 96A; *Vyvyan v Arthur (1823) 1 B & C 410* (taking corn to be ground in landlord's mill); *Doe d Tucker v Morse (1830) 1 B & Ad 365* (carrying coals); *Doe d Edney v Benham (1845) 7 QB 976* (cleaning a church); *Duke of Marlborough v Osborn (1864) 5 B & S 67* (work with horses and cart); *Montague v Browning [1954] 1 WLR 1039* (cleaning a synagogue).

[5] See paras HR A[1549] ff.

[6] *Master of St Cross Hospital v Lord Howard de Walden (1795) 6 Term Rep 338 at 343*.

[7] *Coal Commission v Earl Fitzwilliam's Royalties Co [1942] Ch 365*; see also *R v Westbrooke; R v Everist (1847) 10 QB 178 at*

203; *Daniel v Gracie* (1844) 6 QB 145; *Edmonds v Eastwood* (1858) 2 H & N 811; *Barrs v Lea* (1864) 33 LJ Ch 437.

8   Co. Litt. 142a.

**[1543]**

Leases are contractual in their origin. In principle, the rights and obligations of the parties in respect of rent will be determined as a matter of the construction of the contract, just as payment obligations under any other contract[1]. Where, however, a tenant is in breach of his obligation to pay rent, the landlord is not obliged to 'mitigate' his losses by taking steps to terminate the lease. If the lease remains in force, the landlord is entitled to the rent and other sums falling due, but if the landlord elects to determine the tenancy, the landlord is not entitled to rent or damages for loss of future rent. Accordingly, in practice it cannot be considered unreasonable for a landlord to choose to allow the lease to continue and he will not be disentitled from receiving rent because of a failure to 'mitigate' his loss[2].

1   See HR A[1542] and *United Scientific Holdings Ltd v Burnley Borough Council* [1978] AC 904.

2   *Reichman v Beveridge* [2006] EWCA 1659, [2007] 08 EG 138.