# EXHIBIT 68

172

[2000]

[HOUSE OF LORDS]                                                                          A

CHRISTOPHER MORAN HOLDINGS LTD.    . .    RESPONDENTS

AND

BAIRSTOW AND ANOTHER    .    .    .    .    .    .    APPELLANTS

[On appeal from *In re* PARK AIR SERVICES PLC.]                        B

1998 Nov. 18, 19;           Lord Slynn of Hadley, Lord Lloyd of Berwick,
1999 Feb. 4                 Lord Hope of Craighead, Lord Hobhouse of
                                Woodborough and Lord Millett

*Insolvency—Winding up—Disclaimer of lease—Solvent company entering into members' voluntary winding up—Liquidators disclaiming lease—Ascertainment of extent of loss or damage sustained by landlord in consequence of disclaimer—Whether discount for early payment applicable to amount proved for by landlord—Whether landlord proving for future rent—Insolvency Act 1986 (c. 45), s. 178(6)—Insolvency Rules 1986 (S.I. 1986 No. 1925), (as amended by the Insolvency (Amendment) Rules 1987 (S.I. 1987 No. 1919), r. 141), r. 11.13*                        C

D

In 1990 the landlord leased office premises to a company for a term of 25 years from 29 September 1989 at an initial rent during the first three years of £140,000 per annum, rising to £160,000 per annum for the fourth and fifth years, with a provision for upwards only reviews at five-year intervals thereafter. Because of the state of the property market in September 1994 the rent payable for 1994–95 remained at £160,000, that sum being substantially in excess of the current rental value of the premises. On 9 December 1994 the company entered into a members' voluntary winding up and joint liquidators were appointed who, on the same date, gave notice under section 178 of the Insolvency Act 1986[1] of disclaimer of the lease as onerous property. In their statement of affairs the directors of the company estimated the surplus assets of the company at £6·7m., but that took no account of any sum payable to the landlord as a result of the disclaimer. The landlord's initial proof of damage of some £5·3m. was rejected by the liquidators. The landlord appealed, but recalculated its claim at some £3·5m., whereas the liquidators calculated it to be less than £200,000. On the question of what basis should be adopted for quantifying the landlord's loss or damage for the purpose of section 178(6) of the Act of 1986, the judge held that the act of disclaimer created an immediate notional debt due to the landlord so that rule 11.13 of the Insolvency Rules 1986,[2] which applied only to debts payable in the future, had no application, and that the proper basis for making the calculation was to calculate the value at the date of disclaimer of the rent and other sums payable by the company to which the landlord would otherwise have been entitled during the residue of the term and to apply thereto a discount at a market risk rate to reflect the current worth of payments which would only have been due in the future and then to give credit for the       E

F

G

H

---

[1] Insolvency Act 1986, s. 178(4): see post, p. 183B-C.
S. 178(6): see post, p. 183G.
[2] Insolvency Rules 1986, r. 11.13: see post, p. 186E-G.

A    value of what was left to the landlord after the disclaimer and finally to take into account the cost of any repairs necessary to secure a reletting on the terms of a new lease for a term equivalent to the residue of the term granted by the disclaimed lease. On the landlord's appeal the Court of Appeal decided that in principle the compensation should be calculated without any discount for early receipt, that the landlord was to be regarded as a secured creditor, his security taking the form of a right to re-enter and recover possession for non-payment of rent and to distrain for

B    unpaid rent and that rule 11.13(3) was to be applied.

    On appeal by the liquidators:—

    *Held*, allowing the appeal, that the right conferred by section 178(4) was a statutory right to compensation for the loss caused by the operation of the disclaimer, to be assessed in the same way as damages for breach of a contract which had been wrongfully terminated, and in assessing damages allowance would

C    be made for accelerated receipt of any sums which had not fallen due at the date the contract was terminated; that the landlord was not a secured creditor within the meaning of section 248 since the right of re-entry did not secure the performance of the tenant's liability to pay rent, and if the tenancy had not been disclaimed the landlord would not have been able to prove in the liquidation for future rent but only for rent already accrued and unpaid; that when the company went into liquidation the landlord was not a

D    creditor in respect of any loss arising in consequence of the disclaimer because the lease had not then been disclaimed, so that rule 11.13 of the Insolvency Rules 1986 had no application as the landlord was not proving for a debt for which payment was not due at the date when the company went into liquidation but for statutory compensation which, subject to quantification, was a present right to immediate payment; and that, accordingly, the order of the judge would be restored subject only to an 8·5 per

E    cent. per annum discount rate, being the yield on gilt-edged securities for an equivalent term (*post*, pp. 179B-D, 180C-D, E-F, G-181A, B-D, 184C-F, G-H, 186B-D, 187A-C, 188D-F).

    Decision of the Court of Appeal [1997] 1 W.L.R. 1376; [1997] 3 All E.R. 193 reversed.

    The following cases are referred to in their Lordships' opinions:

F    *Hardy v. Fothergill* (1888) 13 App.Cas. 351, H.L.(E.)
*Hindcastle Ltd. v. Barbara Attenborough Associates Ltd.* [1997] A.C. 70; [1996] 2 W.L.R. 262; [1996] 1 All E.R. 737, H.L.(E.)
*Llynvi Coal and Iron Co., Ex parte; In re Hide* (1871) L.R. 7 Ch.App. 28
*London and Colonial Co., In re; Horsey's Claim* (1868) L.R. 5 Eq. 561
*Metropolis Estates Co. Ltd. v. Wilde* [1940] 2 K.B. 536; [1940] 3 All E.R. 522
*New Oriental Bank Corporation (No. 2), In re* [1895] 1 Ch. 753

G    *Oppenheimer v. British and Foreign Exchange and Investment Bank* (1877) 6 Ch.D. 744
*Overstone Ltd. v. Shipway* [1962] 1 W.L.R. 117; [1962] 1 All E.R. 52, C.A.
*Photo Production Ltd. v. Securicor Transport Ltd.* [1980] A.C. 827; [1980] 2 W.L.R. 283; [1980] 1 All E.R. 556, H.L.(E.)

    The following additional cases were cited in argument:

H    *Blake, Ex parte; In re McEwan* (1879) 11 Ch.D. 572, C.A.
*Carruthers, In re; Ex parte Tobit* (1895) 2 Manson 172
*Chesapeake and Ohio Railway Co. v. Kelly* (1916) 241 U.S. 485
*Gooch v. London Banking Association* (1886) 32 Ch.D. 41, C.A.

174

In re Park Air Services Plc. (H.L.(E.))    [2000]

*Grand Trunk Railway Co. of Canada v. Jennings* (1888) 13 App.Cas. 800, P.C.
*Panther Lead Co., In re* [1896] 1 Ch. 978
*Razzaq v. Pala* [1997] 1 W.L.R. 1336
*Robophone Facilities Ltd. v. Blank* [1966] 1 W.L.R. 1428; [1966] 3 All E.R. 128, C.A.
*Tickle, In re; Ex parte Leather Sellers' Co.* (1886) 3 Morr. 126
*Wells v. Wells* [1998] 3 W.L.R. 329; [1998] 3 All E.R. 481, H.L.(E.)
*Yeoman Credit Ltd. v. McLean* [1962] 1 W.L.R. 131

APPEAL from the Court of Appeal.

This was an appeal by Vivian Murray Bairstow and Nigel Ruddock, the joint liquidators of Park Air Services Plc. in members voluntary liquidation, by leave of the House of Lords (Lord Goff of Chieveley, Lord Hoffmann and Lord Hutton) on 25 March 1998 from the decision of the Court of Appeal (Nourse, Potter and Mummery L.JJ.) on 1 May 1997 allowing an appeal by the landlord, Christopher Moran Holdings Ltd., from a decision of Ferris J. on 9 February 1996 on the landlord's originating application seeking a determination of the debt the landlord was entitled to prove for in the liquidation.

The facts are stated in the opinion of Lord Millett.

*Jonathan Sumption Q.C.* and *Richard Adkins Q.C.* for the liquidators. Damages for future loss are always less than the lump sum claimed because payment of an immediate sum is worth more than the future right to such sum. This fundamental rule is taken for granted and has only rarely been judicially described: see *Overstone Ltd. v. Shipway* [1962] 1 W.L.R. 117, 124 and *Yeoman Credit Ltd. v. McLean* [1962] 1 W.L.R. 131. The best discussion is to be found in *Chesapeake and Ohio Railway Co. v. Kelly* (1916) 241 U.S. 485, 489. There is nothing special about a winding up to change the application of the rule. It is not the function of the rules governing winding up to alter rights between parties.

A provision such as section 178(6) of the Insolvency Act 1986 has been part of the law of personal insolvency since the Bankruptcy Act 1869 and of corporate insolvency since the Companies Act 1929. By the operation of section 178 the liabilities of the tenant company were extinguished by virtue of the disclaimer and subsection (6) deemed the landlord to be a creditor of the tenant which could prove in the winding up.

Rule 11.13 of the Insolvency Rules 1986 is concerned with the calculation of the dividend payable to a creditor in respect of future debt. Under rule 4.94 of the Rules the creditor is entitled to prove for the nominal (i.e., undiscounted) amount of the debt, but by rule 11.13(2), for the purpose of calculating the dividend payable, the amount is to be discounted by 5 per cent. per annum over the period of acceleration. Before the Rules of 1986 came into effect there were equivalent provisions to paragraphs (1) and (2) of rule 11.13 but not to paragraph (3).

The effect of rule 11.13(3) on its face is that in a solvent liquidation the payment of interest out of surplus funds to creditors with accrued debts is to be postponed until any creditor with a future debt has been paid the discount deducted under paragraph (2). That is a priority provision which appears to assume that a creditor which proves for a future debt is entitled to the undiscounted value if there are sufficient funds to pay it, although

A   there is in fact no provision of the Act or Rules which entitles a creditor to any more than the discounted dividend provided for by rule 11.13(2). Rule 11.13(3) has no application to the assessment of the "loss or damage" arising from a disclaimer and provable under section 178(6) of the Act, first, because rule 11.13 is concerned only with future debts, i.e., those binding on the debtor but not accruing until some future time; and second, because rule 11.13 is concerned not with the amount for which a creditor

B   might prove but with the calculation of the dividend payable in respect of proof.

The only authority on the measure of damages for the disclaimer of a lease is *Ex parte Llynvi Coal and Iron Co.; In re Hide* (1871) L.R. 7 Ch.App. 28, which did not deal with the issue of accelerated receipt but decided that the assessment of damages should proceed by analogy with

C   repudiation and damages at common law without regard to the bankruptcy or winding up.

The origin of discounting for accelerated receipts lay in the practice of calculating damages for lost income from employment by reference to the capital value of an annuity equal to the income lost. The first case where there was overt discussion of the concept of discounting for accelerated receipt is *Grand Trunk Railway Co. of Canada v. Jennings* (1888)

D   13 App.Cas. 800. During the 20th century the practice has become routine. The reasoning behind the concept is precisely applicable to the assessment of loss and damage arising from the disclaimer of a contract such as a lease which gives rise to a future income stream.

Contrary to *Ex parte Llynvi Coal and Iron Co.; In re Hide* (1871) L.R. 7 Ch.App. 28, the approach of the Court of Appeal was to regard a creditor proving under section 178(6) as proving for the future debt itself

E   and not a sum analogous to damages for loss of that future income. That approach was fallacious and unsustainable in principle. The court went on to apply rule 11.13(3) and hold that its effect was that there could be no discount for accelerated receipt in a solvent liquidation. As rule 11.13 was concerned only with future debts it could not have any direct application. Damages for the disclaimer of the lease constituted an immediate debt, not

F   a future debt. The effect of section 178 was to create a right, as a consequence of the disclaimer, which was an immediate right. Nor could rule 11.13 have any application by virtue of an analogy with a right to future rent from a subsisting lease. The landlord could not, but for the disclaimer, have proved for future rent and recovered without discount. He could only have proved for accrued rent on the footing that the lease

G   subsisted or for damages for the loss of the right to future rent on the basis that it had been disclaimed or wrongfully terminated. A proof on the latter basis would have had to take account of the value of the accelerated receipt.

When a lease is subsisting a landlord is unable to prove for future rent and rule 11.13 has no application. All he can hope to get is rent as it falls due and perhaps some security set aside to ensure that funds will be

H   available at the relevant time: see *Oppenheimer v. British and Foreign Exchange and Investment Bank* (1877) 6 Ch.D. 744 and *Gooch v. London Banking Association* (1886) 32 Ch.D. 41. For further examples of the approach of the courts see *In re New Oriental Bank Corporation (No. 2)*

08-13555-mg   Doc 44409-68   Filed 05/22/14   Entered 05/22/14 19:27:39   Exhibit 68
                              Pg 6 of 19

176
                    In re Park Air Services Plc. (H.L.(E.))                    [2000]

[1895] 1 Ch. 753; *In re Panther Lead Co.* [1896] 1 Ch. 978 and *Metropolis Estates Co. Ltd. v. Wilde* [1940] 2 K.B. 536. If any anomaly arises it consists not in the application of a discount in the assessment of loss and damage under section 178 but in the non-application of the discount to a proof for future debts.

The appropriate discount rate to be applied is 10 per cent., reflecting the return on gilt edged securities: see *Wells v. Wells* [1998] 3 W.L.R. 329.

*Terence Etherton Q.C.* and *Peter R. Griffiths* for the landlord. It is incorrect that the concept of discount for accelerated receipt only came into being at the end of the 19th century. There was a long tradition whereby practitioners were required by statute to discount for accelerated receipt. A statutory discount of 5 per cent. across the board in relation to future debt went back to 1720 and was continued throughout the 19th century. The only change of any substance since the introduction of the Bankruptcy Rules 1870 has been the introduction of rule 11.13 in the Insolvency Rules 1986. Until 1986 the discount of 5 per cent. per annum applied to all liquidations, whether solvent or insolvent. Rule 11.13(3) was not enacted in error. Its clear effect is to add back the discount taken away under rule 11.13(2) in the case of a company which is solvent. There is nothing unacceptable in providing that when a solvent company wishes to repudiate a contract with a third party the third party should not bear the risk of changes in the value of money. The policy behind rule 11.13(3) is to deal with the relative and respective priorities of creditors who have been subject to a discount under rule 11.13(2) and creditors who have suffered no such discount but wish to receive interest on the capital amount of their proof.

The procedure for payment of creditors in a liquidation is in two stages. The first stage involves a creditor proving for his debt under rules 4.73 and 4.94 of the Rules of 1986. The next stage is payment of dividends to creditors under Part 11 of the Rules. The two stages are distinct. Under rule 4.94 a creditor can prove for a debt of which payment is not yet due. There is no suggestion of any discount when he proves his debt. Rule 11.13 applies only for the purpose of a dividend. The discount is only applicable at the point when the dividend is declared, i.e., at the stage when what is to be paid is calculated, not the date of the winding up or payment. That is correct in principle as it is impossible to anticipate, at the proof stage, the date on which the dividend will be declared and paid and thus impossible to calculate the amount to be paid. A string of 19th century cases showed that there was an assumption that the discount would apply at the dividend stage and they illustrate how the modern rules should interact: see *Ex parte Llynvi Coal and Iron Co.; In re Hide,* L.R. 7 Ch.App. 28; *Ex parte Blake; In re McEwan* (1879) 11 Ch.D. 572; *In re Tickle; Ex parte Leather Sellers' Co.* (1886) 3 Morr. 126 and *In re Carruthers; Ex parte Tobit* (1895) 2 Manson 172.

On the liquidators' interpretation the discount is applied at the proof stage, not the dividend stage, which is impractical and not supported by anything in the Act or Rules. There will always be a discount for accelerated receipt, however solvent the company, which means it will always be in a liquidator's interest to disclaim. There will be little practical scope left in rule 11.13(3). The more onerous the contract is to the

A   company the easier it is to disclaim and the worse it will be for the creditor. In addition, the effect of the formula to be applied under rule 11.13, that a debt payable after 20 years cannot be claimed, will be nullified. There will be no 20-year limit to the future period which can be claimed for.

It is also to be inferred that the liquidators' contention is that in every case the discount is to apply from the date of disclaimer. There is no logic

B   or principle for the discount to be taken from before the date of the declaration. The injustice is obvious on the facts of the instant case where the judge, having treated the accelerated payment as made on the date of disclaimer, gave judgment some one year after the disclaimer during which period no rent was paid. Any discount for the payments due during that period was inappropriate. It cannot have been Parliament's intention that

C   a creditor should be so disadvantaged. In successive insolvency enactments there had been a discount at the dividend stage but no mention of any other discounts.

If the liquidators are correct it is on the basis that proofs for loss and damage sustained in consequence of the operation of a disclaimer are calculated on a different basis from the proofs of all other debts. The landlord would be in a significantly worse position by virtue of the

D   statutory power of disclaimer than if the landlord were voluntarily to agree to prove on the basis that the lease had come to an end. That would distinguish him from every other creditor with a future income stream and put him in the same position as secured creditors. There is no discernable reason of policy why the landlord should be prejudiced by disclaimer. Landlords are not in any different position from other creditors.

E   A provision such as section 178 had existed in more or less the same form since the Bankruptcy Act 1883 (46 & 47 Vict. c. 52). The reason for the change in 1883 was to give a narrow construction to deemed surrender. The statutory purpose was to allow the company to sort out its affairs quickly and to facilitate the winding up of the company by compelling creditors to prove at once for all future and contingent claims: see

F   *Hindcastle Ltd. v. Barbara Attenborough Associates Ltd.* [1997] A.C. 70. The purpose was not to disadvantage creditors.

The extent of the landlord's injury was the loss of what it would have received in future rent. "Debt" is given a wide meaning in the Insolvency Rules. Parliament cannot have intended that in relation to a future income stream a different method of proof should apply.

Although a landlord is precluded from claiming for future rent so long

G   as he retains possession of the premises and refuses to give credit for the reletting value he can, without a disclaimer, claim future rent in the liquidation if he is prepared to enter into an arrangement with the liquidator under which the lease is deemed to be surrendered and he is willing to give credit for the reletting value. The reason why a landlord is not able to claim for future rent while the lease is on foot is that, in those

H   circumstances, he is treated as a secured creditor: see *In re London and Colonial Co.; Horsey's Claim* (1868) L.R. 5 Eq. 561; *In re New Oriental Bank Corporation (No. 2)* [1895] 1 Ch. 753; *In re Panther Lead Co.* [1896] 1 Ch. 978 and *Razzaq v. Pala* [1997] 1 W.L.R. 1336. A creditor cannot

178

In re Park Air Services Plc. (H.L.(E.))          [2000]

prove for the debt and be secured. He can only prove for the debt if he gives up the security.

    *In re Panther Lead Co.* [1896] 1 Ch. 978 shows that to enable a liquidator to bring an end to the liquidation and in order that land should not be unduly affected the liquidator will be encouraged to agree that in return for a surrender the landlord can prove for the future income stream which will have been due.

    In the case of a solvent company Parliament has, by enacting rule 11.13, provided that there should be full recovery. That is of great value and the liquidators' approach destroys that benefit.

    If there were to be a discount it should be 5 per cent., the same as the discount under rule 11.13(2). Any higher rate would produce an anomalous distinction (to the prejudice of the creditor) between a voluntary termination of the lease by the creditor and an enforced termination by the operation of the disclaimer provisions, even in the case of a liquidation where the assets were insufficient to pay the creditors in full. Alternatively, the discount should be no more than reflected the value of the use of money over the discounted period, usually reflected in the rate of interest on medium term bank deposits: see *Robophone Facilities Ltd. v. Blank* [1966] 1 W.L.R. 1428.

    *Sumption Q.C.* in reply. The landlord's argument is based on the assumption that a lessor's claim when a lease is brought to an end is a claim for something akin to rent rather than damages. That is contrary to principle as well as the authority.

    The landlord's view of the security held by a secured creditor is incorrect: see section 248 of the Act of 1986 and *Gore-Browne on Companies,* 44th ed. (1986), vol. 2, para. 34.10. A lessor's right of re-entry is simply a right to terminate the lease. The only way to surrender the right of re-entry was to terminate the lease and thereby terminate the right to income. The landlord's attempt to assimilate a surrendered lease with a future debt is impossible. *Ex parte Llynvi Coal and Iron Co.; In re Hide,* L.R. 7 Ch.App. 28; *In re New Oriental Bank Corporation (No. 2)* [1895] 1 Ch. 753; *Ex parte Blake; In re McEwan,* 11 Ch.D. 572 and *In re Panther Lead Co.* [1896] 1 Ch. 978 do not support the landlord's view of the position.

    Section 178 is inconsistent with the landlord's case as it extinguishes the right to rent under the contract after disclaimer. If the right under a disclaimed lease is not a right to future rent it is not a right under rule 11.13.

    Rule 11.13 is an enormous expansion in the language of the winding up rules which was not well thought out and was badly drafted. The only discernable policy behind it was that dividends payable should be discounted back to the declaration at a rate of 5 per cent. per annum.

    Lessors are not placed in a different position to other creditors. The only difference is that leases are more likely to be disclaimed by liquidators than other liabilities. The distinction is not between leases and other forms of contract, it is between contracts which involve an absolute right to money and those which do not.

    If a creditor accepts a repudiation of his contract he has a right to damages. If the same contract is disclaimed by the liquidator the creditor

08-13555-mg    Doc 44409-68    Filed 05/22/14    Entered 05/22/14 19:27:39    Exhibit 68
Pg 9 of 19

A   has a right to damages. The award will be the same. A lessor is thus not in a worse position by virtue of a disclaimer. It is also no injustice to discount the lessor's claim as he is getting his money up front instead of waiting for the rent to fall due.

Their Lordships took time for consideration.

B   4 February. LORD SLYNN OF HADLEY. My Lords, I have had the advantage of reading in draft the speech of my noble and learned friend, Lord Millett. For the reasons he gives I, too, would allow the appeal. The judge's order should be restored subject to the discount rates applied being varied to 8·5 per cent.

C   LORD LLOYD OF BERWICK. My Lords, I have had the advantage of reading in draft the speech prepared by my noble and learned friend, Lord Millett. For the reasons he gives I would allow the appeal.

LORD HOPE OF CRAIGHEAD. My Lords, I have had the advantage of reading in draft the speech prepared by my noble and learned friend, Lord Millett. I agree with it, and for the reasons which he gives I also would
D   allow the appeal and make the order which he has proposed.

LORD HOBHOUSE OF WOODBOROUGH. My Lords, I have had the advantage of reading a draft the speech of my noble and learned friend, Lord Millett, and agree with him that this appeal should be allowed for the reasons which he gives.

E   Your Lordships are disagreeing with a unanimous judgment of the Court of Appeal delivered by Mummery L.J. and I therefore consider it appropriate that I should briefly in my own words state why it is that I would allow this appeal.

Section 178 of the Insolvency Act 1986 gives a liquidator the option to disclaim onerous property, that is to say, any unprofitable contract or any other property of the company which is such that it may give rise to a
F   liability to pay money or perform any other onerous act. On 10 December 1994 the liquidator chose to exercise that power and disclaim the 25-year lease dated 9 January 1990 of 48, Gray's Inn Road, London, W.C.1. The disclaimer operated so as to determine from the date of the disclaimer the rights, interests and liabilities of the company in respect of the property. The consequence of this was well summarised in the speech of Lord
G   Nicholls of Birkenhead in *Hindcastle Ltd. v. Barbara Attenborough Associates Ltd.* [1997] A.C. 70, 87:

> "In order to determine these rights and obligations it is necessary, in the nature of things, that the landlord's obligation and rights, which are the reverse side of the tenant's rights and obligations, must also be determined. If the tenant's liabilities to the landlord are to be
H   extinguished, of necessity so also must be the landlord's rights against the tenant. The one cannot be achieved without the other. Disclaimer also operates to determine the tenant's interests in the property, namely the lease. Determination of a leasehold estate has the effect of

accelerating the reversion expectant upon the determination of that estate. The leasehold estate ceases to exist."

The act of disclaimer brings into existence the right of the lessor to claim for the loss or damage which he has sustained in consequence of the operation of the disclaimer. This right is given by section 178(6) of the Act. A lessor is deemed to be a creditor of the company to the extent of the loss or damage and he is accordingly given the right to prove for the loss or damage in the winding up.

This is a statutory right to compensation directly analogous to a right to claim damages for a statutory fault. Its character is compensatory. It is a right which comes into existence without more at the moment of the disclaimer. It is not a right to the performance of the contract disclaimed; it is not a right to the payment of future debts.

Two things follow from this. The first is that the assessment of the compensation involves, as the statute says, an ascertainment of the loss or damage sustained by the lessor as a result of the disclaimer. It is necessary to quantify the relevant sum in money terms. This is precisely the same exercise as has to be undertaken when assessing the damages for a breach of contract, as, for example, where one party has repudiated a contract and the other party has accepted that repudiation as terminating the contract and he then exercises his secondary right to claim damages: see Lord Diplock in *Photo Production Ltd. v. Securicor Transport Ltd.* [1980] A.C. 827, 849. It is interesting to note that this is the way in which the Court of Appeal chose to express themselves in *Ex parte Llynvi Coal and Iron Co.; In re Hide* (1871) L.R. 7 Ch.App. 28. Thus Mellish L.J. said, at p. 34: "Surely he is to prove for the damage which could be recovered for the breach of the contract."

Any award of damages involves arriving at a single monetary figure which in present terms quantifies that loss. Where the loss will be suffered over a period in the future, the computation will have to make allowance for any advancement that has occurred (e.g. *Overstone Ltd. v. Shipway* [1962] 1 W.L.R. 117). To fail to take into account the element of advancement leads to an over-compensation of the claimant.

I consider that the Court of Appeal [1997] 1 W.L.R. 1376, 1383–1384 fell into error in the present case when, under the heading "General Principles," they gave their first reason for deciding in favour of the lessor. They failed to take into account that ordinary principles require that the element of advancement should be allowed for and that the sum awarded should be appropriately scaled down.

The second consequence of the character of a disclaimer of a lease and the requirement to pay compensation is that the right to prove for loss and damage is not a right to prove in respect of any debt due in the future. Such considerations cease to be relevant. For example, rule 11.13 of the Insolvency Rules 1986 cannot have any application. The creditor is not proving for a debt "of which payment is not due at the date of the declaration of dividend." He is claiming in respect of a present right to compensation which came into existence at the date of disclaimer, that is to say, in the present case, on 10 December 1994. The argument of the

A   lessor and the third ground of decision of the Court of Appeal, at pp. 1388–1389, are therefore misconceived. The rule has no application.

Further (as the lessor has expressly conceded before us) the position under a lease has particular characteristics which it may share with other types of synallagmatic relationship. Whilst the lease is subsisting, the lessor is not entitled to prove for any instalment of rent until the date upon which that payment becomes due. Similarly, if the lease is
B   determined, the right to rent is also determined. This is an additional reason why the attempt of the lessor to introduce rule 11.13 into the assessment of the compensation to which he is entitled under section 178(6) is mistaken. Subsequent to the commencement of the winding up but before the disclaimer, he had no right to receive future payments of rent; he would have to wait until they fell due. The provisions of rule 11.13
C   would not have applied nor, at the time that a dividend was declared, would there have been a future debt in respect of which a dividend could be paid.

After the disclaimer the right to rent is lost. There is only a right to compensation. That involves a comparison between the pre-disclaimer and post-disclaimer positions. For material purposes this difference is the aggregate of the differences between the contractual rent and the market
D   rent over the period of the remainder of the lease discounted to allow for advancement. The second ground on which the Court of Appeal decided in favour of the lessor, at pp. 1384–1388, is accordingly in my judgment mistaken. It does not take into account the inability of the lessor to make an advanced proof of rent and the fact that section 178(6) gives him an immediate right to compensation without having to wait.

E   Further, for the reasons stated by Lord Millett, the references to security are mistaken. The right of re-entry does not secure the payment of rent. The approach in the 19th century cases, for example *In re New Oriental Bank Corporation (No. 2)* [1895] 1 Ch. 753, do not derive from any assertion that the lessor is a secured creditor. They arise from the practical problems resulting from the then inability of a liquidator to disclaim a lease and the need to protect the lessor, who (as stated
F   previously) has to wait before he can prove for instalments of rent, from being defeated by a premature distribution of the assets of the company.

The Court of Appeal were obviously impressed, as were your Lordships, by the detailed historical review undertaken by Mr. Etherton. But the Court of Appeal were mistaken to be persuaded that the right to compensation now given by section 178(6) was simply to be equated with a preservation of the right to be paid rent from time to time during the
G   remainder of the lease. The right to compensation is a different kind of right to the primary right of performance. Just as an acceptance of a repudiatory breach means that the injured party can sue at once for damages without waiting for the time of performance, so also the exercise of the right of disclaimer and the provision in section 178(6) give the lessor an immediate right to compensation. Making an adjustment for the
H   element of advancement is an essential ingredient in the quantification of the compensation.

On the remaining questions argued before us I do not need to add anything to what has been said by Lord Millett. I agree that, on the

findings of fact made in this case by the judge, the 8·5 per cent. discount rate is the appropriate rate. It is a matter of evidence. There is no remaining dispute on the question of statutory interest. It runs from the date of the disclaimer.

    On the question of costs, I agree with what Lord Millett has said.

    I agree with the order proposed.

    LORD MILLETT. My Lords, a solvent company is a tenant of property under an onerous lease. It goes into members' voluntary liquidation, and the liquidator disclaims the lease. The landlord comes in to prove for his loss. Must the landlord submit to an appropriate discount to reflect the present value of the rents and other payments which would have accrued in the future but for the disclaimer? The judge (Ferris J.) held that he must; the Court of Appeal that he need not.

*The facts*

    The respondent is the owner of a freehold property 48, Gray's Inn Road, London, W.C.1. In 1990 it granted a lease of the property to a company now known as Park Air Services Plc. ("the company") for a term of 25 years from 29 September 1989. Rent was payable quarterly in advance with provision for periodic upwards only rent reviews. By the date of the first rent review in September 1994 the state of the property market had declined to such an extent that the passing rent was more than four times the then rental value of the property.

    On 9 December 1994 the company entered into members' voluntary winding up and the appellants were appointed liquidators. The company has been fully solvent throughout. On the following day the appellants gave notice to the respondent under section 178(2) of the Insolvency Act 1986 disclaiming the lease. This entitled the respondent under section 178(6) to prove in the winding up for any loss or damage which it had sustained in consequence of the operation of the disclaimer.

    The respondent duly submitted a proof of debt for a sum in excess of £5·3m. This sum represented the difference between (i) the amounts which would have been receivable by the respondent in respect of rent, insurance rent and other sums payable under the lease for the residue of the term if there had been no disclaimer and (ii) the amounts which the respondent would be likely to receive in respect of rent, insurance rent and other sums on a notional reletting or series of relettings for a similar term after the disclaimer. Each of these amounts was calculated without any discount for accelerated receipt.

    The appellants rejected the proof on the ground that each of the relevant amounts ought to have been discounted for accelerated receipt. The respondent appealed against the rejection of its proof. The appeal was heard by Ferris J. He upheld the appellants' contention and assessed the respondent's loss at £1,053,000 with interest. The appellants duly paid this amount. The Court of Appeal allowed the respondent's appeal. The effect of the judgment of the Court of Appeal was to increase the amount for which the respondent was entitled to prove to £2,548,899 together with interest thereon pursuant to section 189 of the Insolvency Act 1986. That

A   sum, together with interest, has been paid. The appellants now appeal to your Lordships.

*The main question: should a discount be applied?*

The office-holder's right to disclaim onerous property has been part of our bankruptcy law since the Bankruptcy Act 1869 (32 & 33 Vict. c. 71). It was introduced into corporate insolvency by section 267 of the Companies Act 1929. It is currently contained in section 178 of the Insolvency Act 1986. Subsection (4) states the effect of a disclaimer as follows:

> "(4) A disclaimer under this section—(*a*) operates so as to determine, as from the date of the disclaimer, the rights, interests and liabilities of the company in or in respect of the property disclaimed; but (*b*) does not, except so far as is necessary for the purpose of releasing the company from any liability, affect the rights or liabilities of any other person."

It has long been recognised that the effect of the disclaimer of a lease is to extinguish the lease as between the landlord and the tenant. Where (as in the present case) these are the only parties involved, the disclaimer operates to determine the lease altogether with the result that the landlord's reversion is accelerated: see *Hindcastle Ltd. v. Barbara Attenborough Associates Ltd.* [1997] A.C. 70, 87, *per* Lord Nicholls of Birkenhead. This is because the subsection expressly provides that the tenant's rights and liabilities in respect of the leasehold property are determined. These include its right to possession and its liability to pay rent. Once these are determined, the landlord is entitled to immediate possession and has no right to any further payment of rent. In *Hindcastle Ltd. v. Barbara Attenborough Associates Ltd.* your Lordships explained that the disclaimer has the same effect even where third parties such as sureties are involved. When the lease is disclaimed it is determined and the reversion accelerated, but the effect of subsection (4)(*b*) is to preserve the rights and liabilities of others, such as guarantors and original tenants, as though the lease continued: see p. 88.

Since the disclaimer operates to bring to an end both the tenant's liability to pay rent and the landlord's right to receive it, the landlord cannot prove for future rent. The tenant's obligation to pay it has gone. Since this is the consequence of an act which is authorised by statute, the landlord has no right to claim damages at common law for his loss. Instead section 178(6) gives him a statutory right to compensation. This provides:

> "(6) Any person sustaining loss or damage in consequence of the operation of a disclaimer under this section is deemed a creditor of the company to the extent of the loss or damage and accordingly may prove for the loss or damage in the winding up."

This gives the landlord an immediate right to prove for the loss or damage which he has sustained in consequence of the operation of the disclaimer, that is to say in consequence of the determination of the lease and the acceleration of the reversion. This is normally measured by

reference to the difference between the rents and other payments which the landlord would have received in future but for the disclaimer and the rents and other sums which the disclaimer will enable him to receive by reletting. But the subject matter of the landlord's proof is compensation for loss of his right, inter alia, to future rent, not the rent itself, to which he no longer has any claim. The amount of this loss has to be assessed. This involves giving credit for the receipts which the disclaimer will enable him to obtain by reletting. Thus even the undiscounted amount of the landlord's proof does not represent the aggregate amount of the rents and other sums which he would actually have received but for the operation of the disclaimer. The appellants contend that, in order accurately to reflect the value of receipts which would have accrued at a future time, but in respect of which the landlord is given an immediate right of proof, the amount of such receipts must be discounted to an amount which reflects their present value.

It has always been recognised that the right conferred by section 178(6) or its predecessors is a statutory right to compensation for the loss caused by the operation of the disclaimer, and that this must be assessed in the same way as damages. There was a bold attempt in *Ex parte Llynvi Coal and Iron Co.*; *In re Hide*, L.R. 7 Ch.App. 28 to argue that the landlord was only entitled to compensation for the loss of his dividend in the liquidation, thus compounding the effect of the insolvency; but this was firmly rejected. What is determined by the disclaimer is the landlord's right to the rent, not merely his right to prove for it. As Mellish L.J. asked: Surely he is to prove for the damage which could be recovered for the breach of contract?"

There is no justification for employing a different approach in the assessment of compensation for such damage than would be employed if the claimant were claiming damages for breach of a contract which had been wrongfully terminated. In assessing damages in such a case, however, allowance would have to be made for accelerated receipt of any sums which had not fallen due at the date of breach (and which the contract did not make immediately due and payable in the event of breach). An award of compensation which failed to take this into account would over-compensate the claimant.

It follows that I cannot accept the premise on which the judgment of the Court of Appeal was based, viz., that in principle the compensation should be calculated without any discount for early receipt, and that a discount should not be imposed unless there was something in the Insolvency Act 1986, the Insolvency Rules 1986 or the authorities which required it. The opposite is the truth. Nor do I accept the proposition that the purpose of the disclaimer provisions, which the Court of Appeal described as the early closure of the liquidation, does not require the application of any discount for early payment. It is true that the reason the liquidator is given the right to disclaim onerous property is in order to enable him to achieve an early closure of the liquidation. But the reason the landlord is given a statutory right to compensation by section 178(6) is different. It is to ensure that he is fairly compensated for his loss, and this requires a discount for early receipt.

A    The Court of Appeal conducted an examination of the authorities in order to explain the position which obtained before 1929, but in my view they failed to draw the right conclusion from them. In those days the absence of any right on the part of a liquidator of an insolvent company to disclaim an onerous lease left both parties in an unenviable position. The landlord could forfeit the lease if it contained a proviso for entry in the event of liquidation, as any well-drawn lease did. This would enable

B    him to relet the property but he would lose the right to future rent under the lease, for he could not have both rent and possession, and he could not obtain compensation for the consequences of his own action in forfeiting the lease. In practice, therefore, where the passing rent was greater than the current market rent he would normally treat the lease as still on foot. But if he did so he would be likely to be met by the argument that he

C    could only prove for rent already accrued due: see *In re London and Colonial Co.; Horsey's Claim* (1868) L.R. 5 Eq. 561; *In re New Oriental Bank Corporation (No. 2)* [1895] 1 Ch. 753; *Metropolis Estates Co. Ltd.* [1940] 2 K.B. 536. These decisions are not easy to reconcile with *Hardy v. Fothergill* (1888) 13 App.Cas. 351, as that case might have been considered to decide that he could prove for the value of future rent in the event of the lessee's bankruptcy. But on the existing state of the authorities a claim

D    for future rent was likely to encounter difficulty. I shall return to the reason for this later. In respect of such rent his only course in practice was to leave the property empty and submit proofs quarter by quarter as the rent fell due.

    The liquidator's position was equally unsatisfactory. He could not safely distribute the estate once he had notice of the landlord's interest. If

E    he did so, he would be personally liable for the rents as they fell due. He could retain an amount by way of indemnity, but without an order of the court he would still be personally liable if the amount he retained proved insufficient. The court would give him leave to distribute, thus protecting him from any risk of personal liability, but only if he retained a sum sufficient when invested at compound interest to fund the future liabilities: see *Oppenheimer v. British and Foreign Exchange and Investment Bank*

F    (1877) 6 Ch.D. 744. In other words, he was required to retain an amount equal to their present or discounted value.

    Even this was not wholly satisfactory to either party. The landlord could not relet the property, and the liquidator was bound to retain a sum which gave no credit for its current rental value. In practice the parties were well advised to negotiate a surrender of the lease, and the court encouraged this course while recognising that it could not compel it: see *In*

G    *re New Oriental Bank Corporation (No. 2)* [1895] 1 Ch. 753. The amount of the compensation payable by the liquidator to the landlord on a surrender was a matter for negotiation, but it would be surprising if it did not normally include a discount to reflect the present value of the future liabilities as well as credit for the current rental value of the property. The liquidator would be unlikely to agree to pay more than he would be

H    compelled by the court to retain.

    The Court of Appeal rejected the appellants' argument that the question should be approached simply as a claim for damages for breach of an ordinary commercial contract in which the claimant is seeking

compensation for the loss of future income; although that is what the language of section 178(6) indicates. Instead the Court of Appeal regarded the landlord as a secured creditor, his security taking the form of a right to re-enter and recover possession for non-payment of rent and to distrain for unpaid rent. This enabled the Court of Appeal to treat the respondent as a secured creditor who had voluntarily surrendered his security and was proving for the whole debt as if it was unsecured: see rule 4.88(2) of the Insolvency Rules 1986.

The short answer to this is that a landlord is not a secured creditor within the meaning of section 248 of the Insolvency Act 1986. Section 248 defines "secured creditor" as a creditor of the company who holds a security over the property of the company. A secured creditor who does not realise or voluntarily surrender his security must put a value on his security and prove only for the balance as an unsecured creditor. None of these provisions is capable of applying to the landlord's right of re-entry. This is not a security interest subsisting in the tenant's property, nor is it capable of being realised by the landlord. It does not secure the performance of the tenant's liability to pay rent, which remains unsatisfied as well after re-entry as before. It cannot be valued or surrendered. If the lease is disclaimed it is not voluntarily surrendered by the landlord but brought to an end by the liquidator without his consent. Once it is disclaimed, the right to re-enter is gone together with the right to future rents payment of which it is supposed have secured. It is a very curious security which is liable to evaporate just when it is needed.

Having thus circumnavigated section 178(6), the Court of Appeal applied rule 11.13(3) to the respondent's proof of debt. Rule 11.13 is concerned with the proof of debts payable at a future time. It provides:

> "(1) Where a creditor has proved for a debt of which payment is not due at the date of the declaration of dividend, he is entitled to dividend equally with other creditors, but subject as follows. (2) For the purpose of dividend (and for no other purpose), the amount of the creditor's admitted proof (or, if a distribution has previously been made to him, the amount remaining outstanding in respect of his admitted proof) shall be reduced by a percentage calculated as follows—I x M/12 where I is 5 per cent. and M is the number of months (expressed, if need be, as, or as including, fractions of months) between the declaration of dividend and the date when payment of the creditor's debt would otherwise be due. (3) Other creditors are not entitled to interest out of surplus funds under section 189(2) or (as the case may be) 328(4) until any creditor to whom paragraphs (1) and (2) apply has been paid the full amount of his debt."

By rule 4.94 a creditor whose debt is not due at the date when the company went into liquidation is entitled to prove for the nominal, i.e. undiscounted, amount of the debt; but this is subject to adjustment of the dividend when payment is made before the time it would have become due. Rule 11.13(2) adjusts the dividend payable in respect of the proof by requiring it to be discounted at the rate of 5 per cent. per annum over the period of acceleration. Rule 11.13(3) is a very curious provision, newly

A   introduced in 1986, when interest during the winding up was for the first time made payable on debts proved in the winding up. Its effect seems to be that there is no discount for accelerated receipt of a future debt in a solvent winding up.

The judge was plainly right to hold that this rule has no application to a proof submitted by a landlord pursuant to section 178(6). Such a proof is not a proof for a debt of which payment was not due at the date when
B   the company went into liquidation within the meaning of rule 4.94. At that date the landlord was not a creditor in respect of any loss or damage arising in consequence of the disclaimer, for the lease had not then been disclaimed. That is why section 178(6) only deems him to be a creditor. Nor does he afterwards prove for a debt of which payment is not due at the date of the declaration of a dividend. He proves for the statutory
C   compensation to which he is entitled by virtue of the section. That is not a right to a future payment. The claim remains to be quantified; but subject thereto it is a present right to immediate payment.

The respondent's argument attached great importance to the alleged anomaly of applying a discount to the landlord's claim in respect of future rents and not to the proofs of other creditors in respect of future debts. Both, the respondent submitted, suffered the loss of a future stream of
D   income. Why, it was asked, should the landlord be singled out in this way?

But there is no anomaly. The Court of Appeal evidently considered that the landlord could, but for the disclaimer, have proved for the future rent and recovered it without discount. But as I have already pointed out, in practice he could not have proved for the future rent. He would have had to wait until the rent fell due and then prove quarter by quarter. This
E   is because rent is not a simple debt. It is the consideration for the right to remain in possession. The tenant's liability to pay future rent is not debitum in praesenti solvendum in futuro. Its existence depends upon future events. Rent in respect of a future rental period may never become payable at all. Rent payable in future under a subsisting lease cannot be treated as a series of future debts making up a pure income stream.

There is a critical distinction between contracts which have been fully
F   performed by the creditor and contracts which remain executory on his part. The creditor who has lent money which has not been repaid or supplied goods or services which have not been paid for sues or proves in respect of a debt. If the debt is not yet due at the date on which a dividend is declared, the dividend is subject to adjustment under rule 11.13. The creditor who has contracted for payment for goods or services still to be supplied by him, however, is not and may never become entitled to
G   payment. He cannot sue or prove in respect of a debt. The office-holder may adopt the contract and enforce it in return for payment in full. But if the creditor is entitled to treat the contract as discharged by breach or the office-holder disclaims the contract, the creditor is entitled to compensation. He may quantify his loss and prove for it, giving credit for the cost of the goods or services which he is no longer bound to supply.
H   Rule 11.13 has no application to such a proof.

It would be wrong for me to leave rule 11.13 without drawing attention to the respects in which its drafting appears to be seriously defective. For more than a hundred years provision has been made for future debts to be

discounted at the rate of 5 per cent. per annum in order to arrive at their present value. The process of discounting involves applying the discount to the reducing amount of the debt, thus arriving at a sum which, invested at compound interest, would equal the nominal value of the debt at the date when it fell due. Rule 11.13(2), however, applies the discounting formula to the full (i.e. unreducing) amount of the admitted proof. Such a process would reduce the proof to zero after 20 years, and at no stage yields an amount which, invested at 5 per cent. compound interest, would equal the nominal value of the debt at the date fixed for payment.

The second respect in which the drafting appears defective is in relation to the amount and priority of the discount to be added back where the company is solvent. Obviously the first priority is to satisfy the principal amount of the debts, including the discounted value of any future debt. Once these have been satisfied in full, one would expect the amount of the discount from the date of the liquidation to the date of final distribution to be paid pari passu with the interest payable during the winding up to other creditors. Instead, however, the creditor whose proof has been discounted recovers the full amount of the discount, not to the date of final distribution, but to the date, possibly still far into the future, when his debt would have fallen due for payment; and he recovers this, not pari passu with the interest payable to other creditors during the winding up, but in priority to such interest. It is difficult to believe that this was the intention of the Rules Committee.

*Two subsidiary issues*

The first issue concerns the rate of discount. The best evidence of the appropriate discount rate is the yield on gilt-edged securities for an equivalent term. The judge found that this was 8·5 per cent. per annum. But he applied different rates to the passing rents (10 per cent.) and to the current market rents for which credit must be given (12 per cent.) to reflect the fact that the property was over-rented and the risk that the company might default. The appellants do not seek to support the judge's use of higher rates to reflect the risk of default, and are content for a rate of 8·5 per cent. The respondent contends for 5 per cent. to reflect the discount rate provided for by rule 11.13. I would reject the latter approach as without merit. The 5 per cent. rate is a purely nominal rate which has remained constant for more than a hundred years during periods of high and low interest rates alike, and its application would not yield a correct assessment of the amount of the respondent's loss.

There was a second issue which concerned the date from which interest should run under section 189 of the Insolvency Act 1986. It is now common ground that if the value of the respondent's loss is to be assessed at the date of disclaimer then the discounted amount can properly be treated as outstanding at that date and carry interest for the whole period thereafter until payment.

*Costs*

The respondent lodged a proof for £5·3m. The appellants rejected the proof, as they were entitled to do, in toto without admitting it in part. At

08-13555-mg    Doc 44409-68    Filed 05/22/14    Entered 05/22/14 19:27:39    Exhibit 68
Pg 19 of 19


08-13555-mg    Doc 44409-68    Filed 05/22/14    Entered 05/22/14 19:27:39    Exhibit 68
Pg 19 of 19

A  the hearing, and on the basis of its own expert evidence, the respondent reduced the amount of its claim to £3·5m. The appellants contended for a sum of £200,000. The respondent recovered £1,053,000. This was far less than it claimed, and far more than the smallest sum for which the appellants contended. The judge recognised that this was hostile litigation, and that accordingly it would not be right to order the costs of both parties to be paid out of the assets of the company. At the same time he

B  did not consider it appropriate to award the respondent its costs on the footing that costs should follow the event. Indeed he said that he could not tell what the event really was. The truth was that the issue had to be determined by the court; and that he had accepted the arguments and evidence of one party on some aspects and those of the other on others. In those circumstances he made no order for costs.

C  The respondent accepts the judge's ruling that this was hostile litigation, but submits that the ordinary rule should follow. The judge was wrong to say that he could not tell what the event was. The respondent was the successful party, in that it obtained an award higher than it could have obtained without coming to court.

I do not think that this is right, even at the most technical level. The respondent submitted an excessive proof. The appellants were entitled to

D  reject it. The respondent appealed from their rejection of its proof. It was unsuccessful. It did not obtain an order that its proof be admitted. On this footing the respondent was the unsuccessful party. But the judge's order reflected the realities of the situation. Neither party was wholly successful or wholly unsuccessful. In my view the judge's order for costs was well within the exercise of his discretion and should be affirmed.

E  *Conclusion*

I would allow the appeal and restore the order of the judge but varied so as to reflect a discount rate of 8·5 per cent. per annum.

*Order accordingly.*

F  Solicitors: *Memery Crystal; Lawrence Graham.*

B. L. S.

G

H