# EXHIBIT 69

[153]  *In re* STRAND MUSIC HALL COMPANY (LIMITED).  *Ex parte* EUROPEAN AND AMERICAN FINANCE COMPANY (LIMITED).  *June* 12, 27, 1865.

[S. C. affirmed on appeal, 3 De G. J. & S. 147; 46 E. R. 594; 13 L. T. 177; 14 W. R. 6.  See *Ross* v. *Army and Navy Hotel Company*, 1886, 34 Ch. D. 49.  Distinguished, *In re Johnston Foreign Patents Company* [1904], 2 Ch. 239.]

Where directors of a public company have entered into an informal agreement, within the limits of their power, it is in equity binding on the company, and this Court will give effect to it.

Whether bonds issued by a public company, in which the names of the obligees are left in bank, are valid, *quære*.

The proper mode of construing any written instrument is to give effect to every part of it, if this be possible, and not to strike out or nullify one clause in a deed, unless it be impossible to reconcile it with another and more express clause in the same deed.

The 78th clause of articles of association limited the power of the directors of borrowing to £10,000, unless authorized by a "general meeting."  By the 35th clause, a "special meeting" might authorize the borrowing of such sums as it thought fit.

854         IN RE STRAND MUSIC HALL COMPANY (LTD.)        35 BEAV. 154.

Held, that the directors might be authorized to borrow beyond £10,000, either by a general or a special meeting.

The Strand Music Hall Company (Limited) was incorporated in 1862, and, by the 78th article, the directors were empowered to borrow on mortgage or by **[154]** bonds any sum not exceeding £10,000, unless authorized *by a general meeting* to borrow a larger amount.

By the 35th article the company *in special meeting* might authorize the borrowing of such sums of money as it might think fit.

The directors having borrowed £9200, the company, at a *general meeting* held on the 1st of February 1864, empowered the directors to borrow a sum not exceeding £30,000.

On the 7th of April 1864 the Credit Mobilier Company lent the Strand Music Hall Company £5000 or the security of 200 bonds of the Strand Music Hall Company, £50 each (representing £10,000), and on the security of the directors. These bonds were issued with the names of the obligees in blank. Eleven of these bonds (£5500) were sold by the Credit Mobilier Company, and the names of the purchasers were then inserted as the obligees in the bonds.

Before the 10th of October 1864 all the interest of the Credit Mobilier Company had been transferred to the European and American Finance Company, and on the 10th of October 1864 an agreement was duly executed between the Strand Music Hall Company of the first part, the six directors of it of the second part, and the European and American Finance Company of the third part, whereby the remaining 189 bonds of £50 each, constituting a first charge on all the property of the Strand Music Hall Company, were made liable for the payment of £5000 to the latter company. The price of the other eleven bonds was paid over.

The Strand Music Hall Company was ordered to be **[155]** wound up, and the European and American Finance Company claimed to be specialty creditors by virtue of the bond.

Mr. Jessel and Mr. E. Romilly, for the European and American Finance Company. It will be contended that the resolution of the 1st of February 1864 to increase the borrowing powers of the directors is invalid, by reason of its having been made at a *general*, and not at a *special*, meeting of the shareholders. That is not so, they acted under the power given by the 78th article, and not under the 35th, and these powers are cumulative. Secondly, it is said that the bonds have no validity, because the names of the obligees were omitted; *Tayler* v. *The Great Indian Peninsular Railway Company* (4 De G. & Jones, 559). The answer is that an implied power was given, by the deed under seal, to insert the names of the obligees. At all events there is an agreement on the part of the Strand Music Hall Company to give valid bonds as a security; this agreement the claimants are entitled to have made good in equity.

The agreement of the 10th of October 1862 is a valid equitable contract, and this Court considers that done which has been agreed to be done, and it will give effect to imperfect instruments executed for a valuable consideration. This is laid down clearly by Lord Redesdale (p. 116). He says, "where parties, meaning to create a perfect title, have used an imperfect instrument, a feoffment without livery of seisin; a bargain and sale without enrolment; a surrender of copyhold not presented according to the custom of the manor, Courts of Equity have considered the imperfect instrument as evidence of a contract for making a perfect instrument, and have remedied the defect even against judgment creditors."

**[156]** Mr. Baggallay and Mr. Lawson, for the official liquidators of the Strand Music Hall Company. The acts of the directors were *ultra vires*, and the shareholders are not bound by this transaction. The power of the directors to borrow was limited to £10,000, and even then they could only exercise it by giving bonds to the extent of the money advanced; they were not justified in giving bonds to the extent of £10,000 to secure a debt of £5000. Secondly, the bonds, being in blank, were void, for there was no one to whom they were made payable, no obligation to anyone, and they could not be altered by the insertion of a name after they had been executed by the obligors. The object was to commit a fraud on the revenue and avoid the transfer stamp. If they be void, the agreement constitutes no charge for the money

35 BEAV. 157.    IN RE STRAND MUSIC HALL COMPANY (LTD.)    855

advanced. Lastly, the 35th article of the association is positive that the borrowing powers can only be authorized at a *special* meeting of the shareholders, and therefore the excess beyond £10,000 is clearly void. They cited *Peto* v. *The Brighton, &c., Railway Company* (1 Hem. & Mil. 468); *Re The British Provident Company* (10 Jur. 713).

Mr. Elderton, for the bondholders.

Mr. Jessel, in reply.

*June* 27. THE MASTER OF THE ROLLS [Sir John Romilly]. In this case, the European and American Finance Company claim to be specialty creditors of the Strand Music Hall Company (Limited) for two sums, one of £5000, together with interest thereon at £10 per cent. [157] per annum from the 16th of March 1865, and another of £2700, together with interest thereon at the same rate from the 17th of March 1865.

The first question to be decided is whether the directors had power to borrow this amount. The second question is, assuming the first question to be decided in favour of the claimants, whether the directors of the Strand Music Hall Company have, by the transaction in question, created a valid specialty debt to the amount claimed. There is no question but that the amount was duly advanced to or for the use of the Strand Music Hall Company, the question is whether the claimants are specialty or only simple contract creditors.

The first question is one of construction on the articles of association of the Strand Music Hall Company, and it is whether the directors had power to borrow beyond the sum of £10,000.

The company had, in fact, previously to the transaction in question on this summons, raised £9200, and, consequently, if they had no power to raise more than £10,000, the loan, in respect of which the present claimants seek to be specialty creditors, would have been invalid, except to the amount of £800.

The 78th clause of articles is to be found under the head of "Increase and decrease in capital," and is in these words, "The company *in special meeting*" (which is defined to mean "an extraordinary special general meeting") "may authorize the borrowing of such sum or sums of money, and on such terms and conditions, as they may think fit; and may also, by the resolution of a *special meeting*, increase the capital of the company by the issue of new shares."

[158] On the 21st January 1864 notice was given of a general meeting to be held on the 1st of February following. The general meeting was held accordingly, and a resolution was proposed, empowering the directors to borrow a sum not exceeding £30,000 according to clause 78. This was resisted, a poll was demanded and taken on the 8th of that month, when the resolution was carried by a majority of the shareholders of the company.

The resolution, if it required confirmation, has not since been confirmed by any subsequent meeting of the shareholders.

If the matter rested there, no question as to the validity of the power to raise money, to the extent of £30,000, could arise. But the 35th clause of the articles is in these words:—The directors "may borrow in the name, or otherwise on behalf of, the company, such sums of money as they may from time to time think expedient, either by way of mortgage of the whole or any part of the property of the company, or by bonds or debenture notes, or in such other manner as they may deem best; provided, nevertheless, that the aggregate of the principal money to be so borrowed shall not at any one time exceed £10,000, unless the borrowing of a larger amount shall have been previously authorized *by a general meeting*, in which case the directors may borrow to such an extent as is so authorized."

This claim, it is contended, is inconsistent with clause 78, which requires that a special meeting should be called to authorize the borrowing of any sum exceeding £10,000, and that no special meeting having been called for that purpose, the directors had no power to borrow more than £10,000.

[159] On referring to the interpretation clause, little assistance is derived therefrom; a "general meeting" is defined to mean an "ordinary general meeting;" an "extraordinary meeting" means an "extraordinary general meeting," and a "special meeting" to mean an "extraordinary special meeting." It is obvious that these definitions leave the matter exactly where it was.

856        IN RE STRAND MUSIC HALL COMPANY (LTD.)        35 BEAV. 160.

The proper mode of construing any written instrument is to give effect to every part of it, if this be possible, and not to strike out or nullify one clause in a deed, unless it be impossible to reconcile it with another and more express clause in the same deed. I think that I must, if possible, give effect to both these clauses in the articles in question; and I also think that this may be done by declaring that by the 78th clause power is given to a general meeting to authorize the directors to borrow a sum exceeding £10,000, and that by the 35th clause power is also given to a special meeting of the company to authorize the borrowing of such sums of money as the meeting shall think proper. But for the 78th clause, such power could only be exercised by a special meeting; but for the 35th such authority could only be given by a general meeting; but by the combined effect of those two clauses power is given either to a special meeting or to a general meeting to raise money; and though this is not very skilfully expressed in the articles before me, there is, in my opinion, no other construction of which these, the clauses in question, are susceptible.

Various other clauses were read and commented upon, but, in truth, they none of them control or modify the effect of either of the clauses in question. There is no clause requiring a subsequent confirmation **[160]** of such a resolution, and no such confirmation was, in my opinion, essential to its validity.

The next question is, have the directors, by what has taken place, created a valid specialty debt of the company, and to what extent? The way in which they endeavoured to accomplish this was as follows:—On the 7th April 1864 a deed was executed by the Strand Music Hall Company of the first part, the chairman and five other directors (by name) of the second part, and the Credit Mobilier Company of the third part. By this deed the Credit Mobilier Company agreed to advance £5000 to the company for six months, with interest at £10 per cent. per annum, on the security of 200 mortgage bonds of the company for £50 each, and, secondly, on two joint and several promissory notes of the six directors for £2500. The validity of these bonds is disputed, first, because the name of the obligee is not stated in the bonds, and, secondly, because it is contended that it was *ultra vires* to issue bonds for £10,000 as a security for only £5000 advanced.

Eleven of the bonds, so deposited, were sold by the Credit Mobilier Company, and on the sale, the name of the purchaser was inserted as the obligee in the bond.

In October 1864 the Credit Mobilier Company required, if they continued their loan, certain conditions and a bonus of £400, which were accepted, with a modification, by the directors of the Strand Music Hall Company. This new plan was carried into execution by an agreement of 10th October 1864, duly made and executed by and between the Strand Music Hall Company of the first part, the same six directors of the second part, and the European and American Finance Company of the third part. It was agreed that the **[161]** agreement of 7th April 1864 with the Credit Mobilier Company should be renewed and confirmed between the parties to the said agreement.

1stly. That the loan was to be for six months from the date of the agreement, with interest at £10 per cent. per annum, together with a bonus of £400, and commission of £3, 10s. per cent. on sale of shares hereinafter mentioned.

2dly. The deposit by the Strand Music Hall Company of 189 mortgage bonds of £50 each, representing £9450, and forming part of £25,000 mortgage bonds, constituting a first charge on all the property of the Strand Music Hall Company with the Credit Mobilier Company by way of collateral security; and

3dly. Two joint and several promissory notes for £2500 each, by the said directors; and if the notes should not be paid at maturity, it should be lawful for the European and American Finance Corporation to sell the mortgage bonds, and out of the proceeds pay themselves the £5000, with interest and all the costs, together with a commission of £3, 10s. per cent. on the amount of such sale.

The first point to be considered is, whether this transaction creates a valid charge on the property of the company, for the sum of £5000. Although there be considerable informality in the instrument itself and in the bonds given, still I am of opinion that this creates a valid charge upon the property of the company. Assuming that I am right in the first point, and that the Strand Music Hall Company had the power to raise this money, and consequently to give a valid charge upon their

35 BEAV. 162.                                                                                      857

property, I am of opinion that they have endeavoured to do so, and that the deed executed [162] being for valuable consideration, they have effected that object. I think this rests upon the principle of the cases insisted upon by counsel, and referred to in the passages cited to me from Lord Redesdale's book. The Strand Music Hall Company has, in this instance, by contract for value, given a right to the Credit Mobilier Company, and through them by transfer and also directly to the European and American Finance Company, to obtain a valid charge on all their property. If this instrument be incomplete at law, this Court will interfere to carry the contract into execution, and complete and make effectual the object of both parties. If the Strand Music Hall Company had proved a flourishing concern, and had refused to complete this agreement, this Court would, on a bill filed for that purpose, have compelled them to do so. The rights in equity are, in my opinion, complete when the agreements were executed, and the fact that the company has failed, instead of becoming prosperous, cannot affect this right. I think, therefore, that a valid mortgage in equity on the whole of the property of the Strand Music Hall Company, for the sum of £5000, was effected.

On the question of the frame of the bonds, I give no opinion as to their validity; but I am disposed to think that the suggestion of an implied authority having been given to the holder of the bonds to insert, on behalf of the Strand Music Hall Company, the name of the obligee is not sufficient to render them valid.

The objection that the bonds to the nominal value of £10,000 were given to secure £5000 has not, in my opinion, any weight. It is frequently, and indeed usually, the case that the property pledged exceeds the value of the charge; but this does not render the trans-[163]-action invalid, independently of there being some limitation of authority in the power which they profess to exercise. On turning to this authority, I do not see anything in the articles of their association to limit this authority, or to make the case of this company, or of the directors of it, different in this respect from that of any ordinary individual. I am, therefore, of opinion that the European and American Finance Company have a valid charge on the property of the Strand Music Hall Company to the extent of the £5000 advanced by them.

NOTE.—Affirmed by the Lords Justices the 3d of August 1865. [3 De G. J. & S. 147.]