**EXHIBIT 70**

by the added plea. On taxation, Master Walker allowed the plaintiff the costs of the remanet from the first assizes; upon which an application was made to us to review his taxation. On consideration, we think the Master was right, although we have had some doubt upon the point. We think he was right upon this principle:—The plaintiff would have succeeded on all the issues which were upon the record at the first assizes; he underwent the delay of the postponement from those assizes; and as part of the costs of those issues he ought to have the costs of the delay, and consequently of the remanet.

This rule must therefore be discharged.

Rule discharged.

[718]  JONES v. CARTER. *July 4, 1846.*—The service by lessor upon lessee of a declaration in ejectment for the demised premises, for a forfeiture, operates as a final election by the lessor to determine the term; and he cannot afterwards (although there has not been any judgment in the ejectment) sue for rent due, or covenants broken, after the service of the declaration.

[S. C. 10 Jur. 33. Commented on, *Dendy* v. *Nicholl,* 1859, 4 C. B. (N. S.) 376. Explained, *Grimwood* v. *Moss,* 1872, L. R. 7 C. P. 364. Applied, *Toleman* v. *Portbury,* 1871, L. R. 6 Q. B. 249; *Scarf* v. *Jardine,* 1882, 7 A. C. 360; *James* v. *Young,* 1884, 27 Ch. D. 663. Referred to, *Croft* v. *Lumley,* 1858, 6 H. L. Cas. 705; *Clough* v. *London and North Western Railway Company,* 1876, L. R. 7 Ex. 34; *Morrison* v. *Universal Marine Insurance Company,* 1873, L. R. 8 Ex. 204; *Evans* v. *Wyatt,* 1880, 43 L. T. 177; *Serjeant* v. *Nash, Field, and Company,* [1903] 2 K. B. 304; *Moore* v. *Ullcoats Mining Company Limited,* [1908] 1 Ch. 587.]

Covenant on an indenture, dated the 16th of September, 1844, made between the plaintiff of the one part, and the defendant and Joseph Foster of the other part, whereby the plaintiff gave, granted, and demised to the defendant and Foster full power and authority to work, delve, dig, and open, all the mines, veins, seams, and beds of lead ore, copper ore, sulphate of barytes, mines, minerals, and mineral substances, which were or should be thereafter found, gained, dug, or opened within, under, or upon a certain common or waste land belonging to her Majesty, and then in lease to the plaintiff, situate in the parish of Llysfaen, in the county of Carnarvon; with full powers for the purpose of getting and taking the minerals, erecting machinery, &c. &c.; to hold to the defendant and Foster, their executors, &c., from the 29th of September then instant, for the term of fourteen years, subject to a yearly rent of £50, payable half-yearly in advance, in the nature of a forehand rent, on the 25th of March and the 29th of September in each year, the first payment to be made on the 29th day of September then instant; and subject also to the payment of a certain royalty on the ores and minerals raised and gotten. And the defendant thereby covenanted with the plaintiff, his executors, &c., well and truly to pay and render, or cause to be paid or rendered, to the plaintiff, his executors, &c., the rent and royalty thereinbefore reserved and made payable, at the days and times and according to the true intent and meaning of the said indenture, without any deduction or abatement whatever; and also to pay and discharge all taxes, &c., charged or assessed upon the demised premises. There were also covenants that the defendant and Foster, their executors, &c., would, during the continuance of the demise, with six men at the least, search for lead and other ores and minerals in proper and likely places, &c., and would fairly and effec-[719]-tually work and carry on all the mines and works with six able and experienced miners at the least; that they would not cease or discontinue such work, with the aforesaid number of men, for the space of one month in any one year, unless prevented by unavoidable impediments: and other covenants, providing for the dressing and making merchantable of the ores gotten as soon as might be after they were gotten, for the weighing or measuring them within a certain time, for the keeping and regularly casting up fair and legible books of account of all ores and minerals gotten and sold, and producing the same for inspection, &c., upon notice, to the lessor and his agents; for the general repair of the demised premises; for the fencing off and securely inclosing open pits, &c.; for effectually filling up and levelling such pits, &c., as should from time to time become useless; for preventing unnecessary or extraordinary damage to the lands through or under which the mines, &c., should be carried on; and for the non-

commission of any wilful or voluntary waste. The declaration then alleged as a breach of the first covenant (for payment of the rent), that after the making of the indenture, and during the term, to wit, on the 25th of March, 1845, a large sum of money, to wit, £50 of the rent aforesaid, to wit, the rent for a year of the said term, became due and still was in arrear and unpaid to the plaintiff. Breaches were also assigned of all the other covenants in the indenture.

The defendant pleaded, as to the breach of covenant first assigned, that there was not, on the said 25th day of March, 1845, or at any time since, the said sum of £50 of the said rent, or any part thereof, due and in arrear from the defendant and Foster to the plaintiff, in manner and form, &c. on which issue was joined. There were also pleas of performance as to the other breaches, and issues joined thereon.

At the trial, before Williams, J., at the last assizes for the county of Carnarvon, the plaintiff clearly proved **[720]** breaches, in the years 1844 and 1845, of several of the covenants set forth in the declaration; as to others also, the proof of performance of which lay on the defendant, no evidence was given on his part. With respect to the rent, payment was proved of all that was due on the 25th of March, 1845: and it appeared that, on the 19th of May, 1845, a declaration in ejectment for the recovery of the demised premises (brought under a proviso in the lease, that for any breach of covenant it should determine and be utterly void, and the lessor should be at liberty to re-enter), upon the several demises of the plaintiff and William Lloyd Roberts (a mortgagee), was served on the defendant and Foster, with notice to appear in the following Trinity Term. There was no distinct evidence when the plea and consent rule were delivered; but it was proved that on the 3rd of December, 1845, the defendants obtained a Judge's order, giving them liberty to withdraw their plea; since which time no further proceedings had been taken in that action. The present action of covenant was commenced in January, 1846. It appeared that the defendants had not done anything upon the demised premises since July, 1845; but it was not shewn that any possession of them had been taken by the plaintiff. It was thereupon contended for the defendant, that by the service of the declaration in ejectment, and the subsequent proceedings in that action, the plaintiff had elected to consider the term as having then determined, and to treat the defendant and Foster as trespassers; and that he could not, therefore, recover in this action for the rent which would otherwise have become due on the 29th of September, 1845. The learned Judge overruled the objection, and told the jury that the plaintiff was entitled, on the first issue, to recover the sum of £25, for half a year's rent due on the 29th of September, 1845, and also directed them that he was entitled to a verdict on several of the other breaches (on which nominal damages only were claimed). The jury, however, **[721]** found a general verdict for the defendant, saying they were of opinion that there was no rent due, and that there were no breaches of covenant.

In Easter Term, Jervis obtained a rule nisi for a new trial, on the ground of the verdict being contrary to the evidence, and to the direction of the learned Judge.

W. Yardley and Unthank shewed cause on a former day in these sittings (June 26). The verdict of the jury, it must be admitted, was contrary to the direction of the learned Judge on several of the issues. But with respect to the first breach, as to the rent, upon which alone the plaintiff claimed substantial damages, the proceedings in the action of ejectment were an answer to that claim. The plaintiff, when he sued the lessees in ejectment as for a forfeiture of their term, elected thereby to put an end to the term, and could not afterwards treat it as a subsisting term, and the rent as a subsisting rent. It is true there was no judgment in the ejectment; the plea having been withdrawn, the defendant has no means of compelling the lessors of the plaintiff to proceed to judgment. [Platt, B. If they choose to proceed to judgment now, they may have an action of trespass for the mesne profits from the day of the demise.] Yes, and so they would be recovering this rent twice over. *Birch* v. *Wright* (1 T. R. 378) is an authority for the defendant. It was there held, that an action for use and occupation might be maintained by the grantee of an annuity, after a recovery in ejectment against a tenant from year to year of the lands out of which the annuity issued, for all rent in his hands at the time of notice by the grantee, and down to the day of the demise in the ejectment, but not afterwards. Ashhurst, J., there says—"From the 6th of April of 1785 [the day of the **[722]** demise] to the time of recovering in the action of ejectment, the plaintiff is precluded from recovering in this form of

action; for that would be blowing both hot and cold at the same time, by treating the possession of the defendant as that of a trespasser, and that of a lawful tenant, during the same period." Littleton says (sect. 219)—"If a man grant by his deed his rent-charge to another, and the rent is behind, the grantee may choose whether he will sue a writ of annuity for this against the grantor, or distreine for the rent behind, and the distress detain until he be paid. But he cannot do or have both together, &c. For if he recovers by a writ of annuity, the land is discharged of the distress," &c. Lord Coke, commenting on these words, "But he cannot do or have both together," says (Co. Litt. 145 a.)—"For there he should recover one thing twice, which should be a double charge to the grantor." In *Bridges* v. *Smyth* (5 Bing. 410), it was held that a landlord, having treated an occupier of his land as a trespasser, by serving him with an ejectment, could not afterwards distrain on him for rent, although the ejectment was directed against the claim of a third person, who came in and defended as tenant, and the occupier was aware of that circumstance, and was never turned out of possession. That case is therefore, stronger than the present.

Welsby (Jervis with him), contrà. No doubt, although the lease says that it is to determine and be void for any breach of covenant, that is to be construed to mean that it is thereupon voidable at the option of the lessor. But there is no conclusive election to treat the term as determined and void, until judgment recovered in the action of ejectment. The mere service of the declaration has no such effect. Might not the plaintiff, notwithstanding that, have waived the forfeiture by subsequent receipt of rent? It is said **[723]** that he may still proceed to judgment in the ejectment, and have his remedy in trespass for the mesne profits; but if he did, the recovery of the rent in this action would be pleadable in bar, pro tanto, to the action for the mesne profits. The authority cited from Co. Litt. itself shews that there is no conclusive exercise of this option until judgment. Lord Coke there says—"If I grant to another for life an annuity or a robe at the feast of Easter, and both are behind, the grantee ought to bring his writ of annuity in the disjunctive; for if he bring his writ of annuity for the one only, and recover, that judgment shall determine his election for ever; for he shall never have a writ of annuity afterwards, but a scire facias upon the said judgment. Which reason Fitzherbert, in his Natura Brevium, not observing, held an opinion to the contrary. But if I contract with you to pay you twenty shillings or a robe at the feast of Easter, after the feast you may bring an action of debt for the one as for the other." [Alderson, B. Lord Coke, and Fitzherbert in the passage there referred to (Fitz. N. B. 152, G.), are distinguishing between the cases when the thing granted "is of things annual, and are to have continuance,"—in which the election remains to the grantor, as well after the day as before, —and "when the things are to be performed unicâ voce," as in the case of the contract to pay twenty shillings or a robe at Easter.] In *Birch* v. *Wright*, the grantee of the annuity had recovered judgment in the ejectment. And Buller, J., there says—"In the present case the plaintiff has not waived the tort. He has brought his ejectment, and obtained judgment on it, which is insisting on the tort, and he cannot be permitted to blow both hot and cold at the same time." And again—"The ejectment is the suit in which the defendant is considered as a trespasser; and unless the judgment in ejectment be laid out of the case, the tort is not waived. The defendant stands convicted on **[724]** record by judgment, as a trespasser, from the 6th of April, 1785." In *Bridges* v. *Smyth*, also, there had been judgment against the casual ejector, and the Court relied upon the fact that that judgment would be conclusive against the tenant in possession, although the ejectment was in truth directed against the party who came in to defend as landlord.

Cur. adv. vult.

The judgment of the Court was now delivered by

PARKE, B. This was an action of covenant on a mining lease, in which breaches were assigned, the first for non-payment of rent, and others for different violations of covenants relative to mining. The principal question related to the rent. By the lease, it was to be paid half-yearly in advance, on the 25th of March and the 29th of September. The rent due on the 25th of March, 1845, was paid on that day. On the 19th of May the plaintiff brought an ejectment for breach of covenant, the lease containing a stipulation that for any breach of covenant it should "determine and be utterly void." Some of the breaches of covenant declared upon were clearly proved to have been committed prior to the bringing of the ejectment. The notice, in the

action of ejectment, was to appear in Trinity Term, and no doubt a consent-rule was entered into in or after that term. The plea to the ejectment was afterwards abandoned; but it does not appear by the learned Judge's note that possession was actually taken by the plaintiff.

Under these circumstances, the question which was brought before us for consideration was, whether the lease was put an end to before the 29th of September, 1845, when the half-year's rent became due. We are all of opinion that it was.

Though the lease is declared to be void for breach of covenant, it is perfectly well settled that the true construc-[725]-tion of the proviso is, that it shall be void at the option of the lessor; *Rede* v. *Farr* (6 M. & Selw. 121), *Doe* v. *Bancks* (4 B. & Ald. 401), and other cases; and consequently, on the one hand, if the lessor exercises the option that it shall continue, the lease is rendered valid; if he elect that it shall end, the lease must be determined. In the cases above referred to, the option was held to have been exercised by the receipt of rent subsequently due, and the lease thereby rendered valid. In like manner, the lease would be rendered invalid by some unequivocal act, indicating the intention of the lessor to avail himself of the option given to him, and notified to the lessee, after which he could no longer consider himself bound to perform the other covenants in the lease; and if once rendered void, it could not again be set up. An entry, or ejectment, in which an entry is admitted, would be necessary in the case of a freehold lease, or of a chattel interest, where the terms of the lease provided that it should be avoided by re-entry. Whether any other act unequivocally indicating the intention of the lessor would be sufficient to determine this lease, which is made void at the option of the lessor, we need not determine, because an ejectment was brought, and proceeded with to the consent-rule, by which the defendant admitted an entry, and the entry would certainly be an exercise of the option; and, once determined, the lease could not be revived.

It was said there was no authority upon the point now under consideration; but there is a case at Nisi Prius materially bearing upon it, in which Lord Tenterden expressed a clear opinion that the receipt of rent after an ejectment brought for a forfeiture was no waiver of such forfeiture: *Doe d. Morecraft* v. *Meux* (1 C. & P. 848). A case was desired, but we cannot find that any was argued. We entirely agree in Lord Tenterden's opinion. The precise point that he decided was, that on the trial of an ejectment for a forfeiture [726] (in which of course the entry was admitted), the receipt of rent after the bringing of that ejectment was too late, and the lease was not rendered valid. We think the same consequence follows from an entry admitted by the consent-rule; but even supposing no consent-rule to have been entered into, we think that the bringing of an ejectment for a forfeiture, and serving it on the lessee in possession, must be considered as the exercise of the lessor's option to determine the lease; and the option must be exercised once for all. Without inquiring whether an ejectment be a real action, the bringing of which and the counting in which would, according to the authority of Lord Coke, be a determination of an election between two remedies, it seems to us that so distinct and unequivocal an act must, independently of any technical reason, be a final determination of the landlord's option; for after such an act, by which the lessor treats the lessee as a trespasser, the lessee would know that he was no longer to consider himself as holding under the lease, and bound to perform the covenants contained in it; and it would be unjust to permit the landlord again to change his mind, and hold the tenant responsible for the breach of duty, after that time.

We are all, therefore, of opinion that the lease was determined in May, 1845, and consequently the defendant was not liable to pay the subsequent rent, or damages for any subsequent breach of covenant. There is no reason, therefore, for a new trial as to the issue on the rent being in arrear.

With respect to the remainder, the verdict was clearly wrong, and there must be a new trial, unless the defendant will consent that a verdict be entered for the plaintiff with nominal damages, subject to the same discretion as Mr. Justice Williams would have had at the trial, to certify to deprive the plaintiff of costs.

Rule accordingly.