# EXHIBIT 72

08-13555-mg    Doc 44409-72    Filed 05/22/14    Entered 05/22/14 19:27:39    Exhibit 72
Pg 2 of 4

lessee of refreshment-rooms and a coal-cellar, and there was an opening for putting coals into the coal-cellar on the arrival platform at a railway station. The defendant employed a coal merchant to put coals into the cellar, and the coal merchant's servants, while putting coals into the cellar, left the hole insufficiently guarded. The plaintiff, whilst passing in the usual way out of the station, fell into the coal-cellar and was injured. It was held that the defendant was liable. The principle of the decision, I think, is this—that when a person employs a contractor to do work in a place where the public are in the habit of passing, which work will, unless precautions are taken, cause danger to the public, an obligation is thrown upon the person who orders the work to be done to see that the necessary precautions are taken, and that, if the necessary precautions are not taken, he cannot escape liability by seeking to throw the blame on the contractor. *Pickard v. Smith* is an authority for the proposition that no sound distinction in this respect can be drawn between the case of a public highway and a road which may be, and to the knowledge of the wrongdoer probably will in fact be, used by persons lawfully entitled so to do. The district council employ the contractor to do work upon the surface of a road which they know is being used by the public, and they must have known that the works which were to be executed would cause some obstruction to the traffic, and some danger unless means were taken to give due warning to the public. The duty of affording protection to the public was in the circumstances incurred by the district council, and the district council could not avoid the obligation of the duty by entering into a contract with Iles. The question remains, Can the defendants, the district council, avail themselves of the separate defence which is pleaded by Iles? The two defendants, if they had pleased, might have joined in a defence of payment into court which would have been available for both. But the district council have chosen to put in a separate defence. I cannot see in the circumstances that they can avail themselves of the payment into court by Iles. So far as their defence is concerned it simply amounts to a denial of liability, but in that defence they have failed. The plaintiff is therefore entitled to judgment for 50*l.* and costs. Of course, as the 50*l.* has been obtained from the other defendant, Iles, the judgment against the district council will be confined to costs only.

*Judgment accordingly.*

Solicitor for the plaintiff, *S. A. Jones.*
Solicitor for the district council, *W. H. Whitfield.*
Solicitor for Iles, *A. E. Copp.*

---

*Jan. 29 and June 7.*
(Before KENNEDY, J.)
MARSHALL v. MACKINTOSH. (a.)

*Contract—Building—Power to re-enter and take possession of plant—Breach of agreement—Damages.*

By a building agreement dated the 10th June 1896, the defendant agreed with the plaintiff to pull down and re-erect Holloway's Hotel, Dover-street, in carcase before the 25th Dec. 1896, and thereupon to take a lease of it from the plaintiff for eighty years from the 24th June 1896 at a peppercorn rent for the first year, and at a rent of 1100l. for the second and every subsequent year of the term. The defendant undertook to finish his part of the agreement by the 25th Dec. 1896.

By clause (2) of the agreement "on default by the lessee of the stipulation contained in this clause" (i.e. to complete within the time allowed) he shall forfeit all benefit under this agreement which shall thereupon cease and be determined, and all the materials and buildings on the said premises shall be forfeited to and become the absolute property of the lessor."

And by clause (11): "If the new buildings shall not be erected or completed within the time and in the manner aforesaid before the 25th Dec. 1896, or if the lessee shall fail to observe or perform any of the stipulations herein and in the said form of lease contained or on his part to be observed and performed, or if he shall not proceed with the works with proper diligence, then and in any of the said cases the lessor shall be entitled to re-enter upon and to take immediate possession of the said piece of land and premises with all buildings, erections, plant, and materials thereon without making to the lessee any allowance or compensation in respect thereof, and without any process at law or any notice to the lessee or any other person or persons to quit the said premises or to determine the holding thereof."

The defendant went into possession on the 10th June 1896, but beyond pulling down about 200l. worth of materials did nothing, and on the 19th Jan. 1897 the plaintiff re-entered.

The defendant contended that the effect of these two clauses was to limit the plaintiff to such compensation as he could get by re-entry and taking possession of the materials on the premises, and that he could recover no damages. The plaintiff on re-entry could only relet from June 1899 at 900l. a year rent.

Held, that, in addition to the re-entry, the plaintiff could recover as damages the loss of two years rent at 1100l., and the loss of 200l. a year at twenty-five years' purchase, viz. 5000l., in all 7200l.

THIS was an action brought to recover damages for the breach of a building agreement.

The facts sufficiently appear from the headnote and the judgment.

*Morten* for the plaintiff.
*G. A. Scott* for the defendant.

*June 7.*—KENNEDY, J.—In this case the only point I have to decide is the question of the damages which the plaintiff is entitled to recover. The damages assessed by the learned official referee under alternative heads are large, and as Field J. took occasion to say in his judgment in *Wigsell v. The School for the Indigent Blind* (8 Q. B. Div. 359), few questions as to the principle upon which damages ought to be assessed are free from difficulty. The defendant by an agreement in writing of the 10th June 1896 contracted with the plaintiff (in substance) to pull down and remove certain buildings numbered 47 and 48 Dover-street, Piccadilly, and to build on the site a new structure

---

(a) Reported by W. DE B. HERBERT, Esq., Barrister-at-Law.

08-13555-mg    Doc 44409-72    Filed 05/22/14    Entered 05/22/14 19:27:39    Exhibit 72
Pg 3 of 4

according to certain approved plans, elevations, sections, and specifications. The defendant contracted that the new structure should before the 25th Dec. 1896 be erected "in carcase," that is to say the walls built, the structure roofed in, the timbers of the floors and partitions fixed, and all gutters, rain water pipes and drains completed and made good in communication with the common sewer in a workmanlike and substantial manner with the best material and in conformity with the approved plans, elevations, sections, and specifications, under the superintendence, and to the satisfaction of the plaintiff's architect. Upon this being done the plaintiff contracted with the defendant to give him a lease of the land and buildings for the term of eighty years from the 24th June 1896, at a peppercorn rent for the first year and thereafter at a yearly rent of 1100*l*. The only other provisions of the building agreement to which I will refer specially are the latter part of clause 2 and clause 11. By clause (2) "on default by the lessee of the stipulation contained in this clause" (*i.e.* to complete within the time allowed) "he shall forfeit all benefit under this agreement, which shall thereupon cease and be determined, and all the materials and buildings on the said premises shall be forfeited to and become the absolute property of the lessor." And by clause 11: "If the new buildings shall not be erected or completed within the time and in the manner aforesaid before the 25th Dec. 1896, or if the lessee shall fail to observe or perform any of the stipulations herein and in the said form of lease contained or on his part to be observed and performed, or if he shall not proceed with the works with proper diligence, then and in any of the said cases the lessor shall be entitled to re-enter upon and to the immediate possession of the said piece of land and premises with all buildings, erections, plant, and materials thereon, without making to the lessee any allowance or compensation in respect thereof, and without any process at law or any notice to the lessee or any other person or persons to quit the said premises or to determine the holding thereof." By clause 13 the defendant had an option during the first year of the term granted by the agreement to purchase the fee simple at the price of 28,600*l*. The defendant, as stated in the report of the official referee, got possession of the site on the 10th June 1896, but, except that he took down and removed 200*l*. worth of materials from the old buildings, he did nothing whatever towards the fulfilment of his contract. The fact was that he had entered upon the undertaking as a speculation without the means of fulfilling it. He frankly stated in his evidence before me that the terms of the agreement were such that he could not raise money to build. He added that shortly before the plaintiff took possession there was just a prospect of his being able to sell the freehold. So far as I can see in the evidence no communication of such a prospect was made to the plaintiff. Finding nothing beyond the removal of the 200*l*. worth of material being done, and no prospect of anything being further done by the defendant, the plaintiff re-entered on the 19th Jan. 1897. There can be no question of his right under the agreement to do so, and apart from the express terms of that document, I think that upon the facts in evidence the defendant had broken the agreement as he admits he did, and that the breach was of such a nature that the plaintiff would be reasonably justified in treating the defendant's conduct as showing an intimation on the defendant's part, not further to perform the contract. It is clear, in my view, that the mere fact of re-entry for a forfeiture, does not of itself exonerate the defendant from the liability to damages for breach of contract prior to re-entry. If authority were needed *Hartshorne v. Watson* (4 Bing. N. C. 178). seems to be one on the point. I do not think Mr. Scott contended for that view, but he did contend for the defendant that the effect of clauses 2 and 11 do in this contract limit the plaintiff to such compensation as might be afforded to him by taking possession of the materials, plant, and buildings on the premises at the time of re-entry without any allowance or compensation to the defendant, and that the plaintiff could not claim damages beyond that. I cannot accept that view, for that would be to read into these clauses "as and for liquidated damages" or words to the same effect, and this, I conceive I am not entitled to do. It is common enough to find the insertion of such words when there was an intention of the parties so to limit the liability for a breach of the contract. Instances of this are to be found in *Reilly v. Jones* (1 Bing. 302); *Lea v. Whitaker* (27 L. T. Rep. 676; L. Rep. 8 C. P. 70); and in *Ex parte Newitt*; *Re Garrud* (44 L. T. Rep. 5; 16 Ch. Div. 522), which was like the present, the case of a building agreement. In the last cited case Brett, L.J. in the course of the argument at p. 529, says, "the words 'as and for liquidated damages' are inserted in favour of the builder; if they were not there, the landowner could also bring an action for damages for the breach of the agreement." James, L.J. on the same page says, "'liquidated damages' only means that the things seized are to be taken in full satisfaction," and in the course of his judgment at page 531 he adds in reference no doubt to this stipulation "as and for liquidated damages," "the building agreement provides in effect that in a certain event certain property of the builder may be taken by the landowner in full satisfaction of the agreement." It appears to me that in the absence of some such express words as "as and for liquidated damages," I cannot construe clauses 2 and 11 as depriving the landowner of the right to prove, if he can, actual damages from the defendant's failure to perform the contract. I may add that I do not think that the words in clause 11 "without making any allowance or compensation in respect thereof," would operate to prevent the builder, if the landowner after a breach re-enters and claims damages, from having included in the damages any value which might exist in the buildings, plant, &c., seized by the landowner when he re-entered. The damages must be assessed *rebus sic stantibus*, and it might be the case that, if the structure was nearly completed "in carcase" or if any valuable plant or material were on the lands at the time of the re-entry, the landowner would fail to prove any substantial damage at all to flow from the breach on which he sued, as he had failed in the case of *Oldershaw v. Holt* (12 A. & E. 591), where, after re-entry be made an advantageous lease with a new contractor. The remaining question is what are the damages to which the

08-13555-mg    Doc 44409-72    Filed 05/22/14    Entered 05/22/14 19:27:39    Exhibit 72
Pg 4 of 4
752—Vol. LXXVIII.]    THE LAW TIMES.    [Aug. 6, 1898.

Q.B. DIV.]    JENKINS AND SONS v. COOMBER AND OTHERS.    [Q.B. DIV.

plaintiff here is entitled for the breach which was committed before the plaintiff re-entered on the 19th Jan.? The learned official referee to whom I referred the question of damages has given two alternative assessments. He reported that the plaintiff had, after entering, relet at the best rent he could—viz., 900l. a year, after the first year, and he assessed the damages at the loss of two years' rent of 1100l., and the loss of 200l. a year from the 24th June 1899, at twenty-five years' purchase amounting to 5000l., making in all 7200l. In the alternative, if the plaintiff was only entitled to recover damages caused by the removal of materials by the defendant and by the loss of possession from the 24th June 1896 to the 19th Jan. 1897, the official referee found that the amount of such damage was 200l., and one year's rent of 900l. from the 24th June 1896 to the 24th June 1897, the earliest date at which the plaintiff was able to relet the premises. The damages must be assessed in my view, upon well-recognised principles. They must be such as flowed naturally, and, in the circumstances of the case, necessarily from the breach of contract; further, they must be such damages as might reasonably be shown to have been in the contemplation of the parties when they entered into the contract. Subject to this, at all events, the plaintiff was, in the language of Field, J. in *Wigsell v. School for Indigent Blind* (ubi sup.), " entitled to have his damages assessed at the pecuniary amount of the difference between the state of the plaintiff upon the breach of the contract and what it would have been if the contract had been performed." Now what would have been the state here if the defendant's contract had been performed before the date of the re-entry on the 19th Jan.? There would have been a complete removal of the old buildings, and upon this important site the "carcase" completely erected, of a valuable building. If this had been the case, and the defendant had further failed to complete his contract and take his lease, there would have been no difficulty in the plaintiff getting someone to take the undertaking on at least as profitable terms. As it is, there is no new building erected or even begun, but the old building is still on the ground and substantially as it was on the 10th June 1896, except so far as it has been made as I suppose less valuable by its having had 200l. worth of material removed from it by the defendant. It is shown by evidence to the satisfaction of the referee that the plaintiff forthwith took reasonable precautions to endeavour to sublet without loss, and did relet on the best terms he could obtain. Those terms as he states in his report involve the money loss of 7200l. I have most carefully considered if there is any fault of principle in this assessment, and I can find none. It appears to be fair to assume that if the defendant had not broken this contract the state of the plaintiff would have been that which he had under his contract with the defendant—he would have got the value of the contract either from the defendant, if he completed it, or from a new contractor, if the defendant after performing the contract so far, had subsequently incurred a forfeiture. *Oldershaw v. Holt* (ubi sup.), which is the case most in point of which I am aware, has never been disapproved, and there it was held by the Court of Queen's Bench in a very similar case of re-entry upon breach of a building lease, the breach being as here the neglect to build, that the jury might properly give a verdict on an estimate of the plaintiff's real damage, taking into consideration an increased rent secured by the agreement which had been made with a new lessee after the re-entry. Upon the same reasoning the official referee might, as it seems to me, properly consider here in getting at the real damages, the fact of the reduced rent which the plaintiff is practically obliged to accept from a new contractor, and come to the conclusion to which he has arrived, that the difference between that rent and what the plaintiff could recover under his contract with the defendant, fairly represents the damages which flowed naturally and necessarily from the defendant's breach of contract before the plaintiff re-entered, as under the agreement with the defendant he is entitled to do on the 19th Jan. On the second or alternative assessment, it is only necessary to say that I do not think that the damages could, according to legal principles be assessed upon this basis.

*Judgment for the plaintiff for 7200l.*

Solicitors for the plaintiff, *Tarry, Sherlock, and King*.

Solicitor for the defendant, *A. M. Bradley*.

---

Tuesday, May 17.
(Before WILLS and KENNEDY, JJ.)

JENKINS AND SONS v. COOMBER AND OTHERS. (a.)

*Bills of exchange—Bill to order of drawer—Indorsement by way of security before indorsement by drawer—Bill not complete and regular—Liability of indorser to drawer—Bills of Exchange Act* 1882 (45 & 46 Vict. c. 61), ss. 55, 56.

A. was indebted to the plaintiffs, and, as he required time for payment, the plaintiffs agreed to take a bill from him provided he got his father's name on the back of the bill to guarantee payment. The plaintiffs accordingly drew a bill upon A. payable to their own order, and without indorsing the bill, sent it to A., who accepted it and brought it back and gave it to the plaintiffs with the signature of his father (the defendant) written across the back of the bill. The plaintiffs subsequently indorsed the bill, which was not paid at maturity. In an action by the plaintiffs, as holders, against the defendant, as indorser:

*Held*, that, as the bill had not become a complete and regular bill by the necessary indorsement of the drawers at the time the defendant wrote his name on the bill, the defendant by so signing his name incurred no liability to the plaintiffs either on the bill, or upon any contract of indemnity or suretyship.

*The principle laid down by the House of Lords in* Steele v. McKinlay (43 L. T. Rep. 358; 5 App. Cas. 754), *before the passing of the Bills of Exchange Act* 1882, *followed.*

APPEAL by the plaintiffs from a judgment of Judge Lumley Smith, Q.C. sitting at the Westminster County Court, in a remitted action.

The plaintiffs claimed against the defendant Alfred Coomber, as indorser of a bill of exchange,

(a) Reported by W. W. ORR, Esq., Barrister-at-Law.