# EXHIBIT 76

# THE MODERN CONTRACT OF GUARANTEE

### English Edition

## Dr James O'Donovan

*Professor of Law at the University of
Western Australia and as Special Counsel,
Lavan Legal, Perth, Western Australia*

**and**

## Dr John Phillips

*Professor of English Law
King's College, London
Barrister of the Middle Temple*

**SWEET & MAXWELL**      THOMSON REUTERS

Published in 2010 by
Thomson Reuters (Legal) Limited (Registered in
England & Wales, Company No 1679046. Registered Office
and address for service. 100 Avenue Road, London NW3 3PF)
trading as Sweet & Maxwell.

Typeset by YHT Ltd, London.
Printed and bound in Great Britain by
TJ International, Padstow, Cornwall.

For further information on our products and services,
visit www.sweetandmaxwell.co.uk

ISBN 978 1 847 03569 1

Crown copyright material is reproduced with the permission
of the Controller of HMSO and the Queen's Printer for Scotland.

A CIP catalogue record for this book
is available from the British Library.

All rights reserved. No part of this publication may be reproduced or
transmitted in any form or by any means, or stored in any retrieval system
of any nature without prior written permission, except for permitted fair
dealing under the Copyright, Designs and Patents Act 1988, or in
accordance with the terms of a licence issued by the Copyright Licensing
Agency in respect of photocopying and/or reprographic reproduction.
Application for permission for other use of copyright material including
permission to reproduce extracts in other published works shall be made to
the publishers. Full acknowledgement of author, publisher and source must
be given.

Thomson Reuters and the Thomson Reuters Logo
are trademarks of Thomson Reuters.
Sweet & Maxwell ® is a registered trademark
of Thomson Reuters (Legal) Limited.

No natural forests were destroyed to make this product,
only farmed timer was used and re-planted

© 2010 John Phillips and James O'Donovan

FORMATION AND VALIDITY

## (v) Subordination agreements

**1-88**   A subordination agreement is an agreement under which one creditor, whose debt ranks in priority to or equal with the debts of other creditors of the same debtor, agrees to postpone or defer payment of his debt until the other creditors have been paid. Such an agreement is valid even though it varies the *pari passu* principle inherent in insolvency legislation.[290]

**1-89**   A subordination agreement bears some similarity to a guarantee in that it provides creditors with some extra assurance that they will be paid because they are not competing with the subordinated creditor. But a subordination agreement is not a guarantee because it is not a binding promise to be responsible for the debt, default or miscarriage of another party.

**1-90**   The courts perform their most difficult exercise in differentiating between a primary and a secondary liability when they draw the distinction between a guarantee and an indemnity. The difficulties inherent in this exercise, which merits separate discussion,[291] are accentuated because an indemnity is often used to secure the due performance of another's obligations.

## 7. DISTINCTION BETWEEN GUARANTEE AND INDEMNITY

**1-91**   The performance of an obligation or the payment of a debt of another may be secured not by a guarantee, but by a contract of indemnity. The distinction between a contract of guarantee and a contract of indemnity[292] is that in a contract of indemnity a primary liability is assumed whether or not a third party makes default[293] whilst, as has been seen, in a contract of guarantee the surety assumes a secondary liability to the creditor for the default of another who remains primarily liable to the creditor.[294] The contract of indemnity, therefore, is "a contract by one party to keep the other harmless against loss"[295] and is not dependent on the continuing

---

[290] *Re Maxwell Communications Corp plc (No. 2)* [1994] 1 All E.R. 737 at 753–755; *Home v Chester & Fein Property Developments Pty Ltd* [1987] V.R. 913; *United States Trust Co of New York v Australia & New Zealand Banking Group Ltd* (1995) 13 A.C.L.C. 1225.

[291] See below, paras 1–91 to 1–110.

[292] "Indemnity" in this section is referred to in this narrow sense. In a wider sense, the term "indemnity" may embrace recompense for any loss or liability which one person has incurred, which may arise by contract (e.g. a contract of insurance) or by operation of law (e.g. an employer has a right of indemnity against an employee when held vicariously liable to a third party as a result of the employee's negligence: *Lister v Romford Ice & Cold Storage Co Ltd* [1957] A.C. 555). An example of a right of indemnity which may arise as a result of operation of the law in the context of the law of guarantees is the guarantor's right of indemnity from the principal: see below, Ch. 12.

[293] See, e.g. *Guild & Co v Conrad* [1894] 2 Q.B. 885 at 882.

[294] *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828 at 831; *Total Oil Products (Aust) Pty Ltd v Robinson* [1970] 1 N.S.W.R. 701; *Goulston Discount Co Ltd v Clark* [1967] 2 Q.B. 493 at 496–497; *Argo Caribbean Group Ltd v Lewis* [1976] 2 Lloyd's Rep. 289 at 296.

[295] *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828 at 830–831; *Total Oil Products (Aust) Pty Ltd v Robinson* [1970] 1 N.S.W.R. 701 at 703; *Davys v Buswell* [1913] 2 K.B. 47 at 53–55. An indemnity is an independent obligation to make good a loss: *Sutton & Co v Grey* [1894] Q.B. 285 at 288–289 per Lord Esher M.R.

greement under which one creditor,
l with the debts of other creditors of
r defer payment of his debt until the
n agreement is valid even though it
in insolvency legislation.²⁹⁰

ne similarity to a guarantee in that it
rance that they will be paid because
inated creditor. But a subordination
it is not a binding promise to be
carriage of another party.

lt exercise in differentiating between
n they draw the distinction between
ifficulties inherent in this exercise,
accentuated because an indemnity is
ce of another's obligations.

## N GUARANTEE AND
## NITY

the payment of a debt of another
t by a contract of indemnity. The
tee and a contract of indemnity²⁹² is
y liability is assumed whether or not
as has been seen, in a contract of
ary liability to the creditor for the
arily liable to the creditor.²⁹⁴ The
contract by one party to keep the
not dependent on the continuing

---

liability of the principal debtor. The obligation has no reference in law to the debt of another.²⁹⁶ In other words, an indemnity imposes a primary obligation which is independent of the continuing obligation of another.²⁹⁷

**1–92**  The distinction between the two types of contract is important for several reasons. First, the statutory provision which requires certain types of contracts to be evidenced in writing in general applies to guarantees and not to indemnities.²⁹⁸ Secondly, as the guarantor's liability is usually treated as being co-extensive with that of the principal, the guarantor's liability will be affected by the discharge of the principal or by the fact that the principal contract is void or unenforceable, but an indemnifier's liability is less likely to be affected by these matters.²⁹⁹ Thirdly, a guarantor has been held to be discharged from liability by certain types of conduct of the creditor. Such conduct will discharge an indemnifier in some, but not all, cases in which a guarantor is discharged.³⁰⁰

**1–93**  Although it is a question of construction in each case,³⁰¹ it may be relatively easy to determine whether a contract is one of indemnity rather than of guarantee. For example, in the context of an undertaking to a finance company entering into a hire-purchase contract, an undertaking in these terms will be construed as an indemnity:

> "I agree to indemnify you against any loss you may suffer by reason of the fact that the hirer under the said agreement for any cause whatsoever does not pay the amounts which he would have paid if he completed his agreement by exercising the option to purchase. The loss is recoverable whether or not the hirer is in breach of the provisions of the agreement. Loss shall mean the difference between the total amount the hirer would have had to pay to acquire title to the goods under the hire-purchase agreement, plus your expenses, less payments received by you."³⁰²

---

[1994] 1 All E.R. 737 at 753–755; *Home v*
7] V.R. 913; *United States Trust Co of New*
*td* (1995) 13 A.C.L.C. 1225.

is narrow sense. In a wider sense, the term
or liability which one person has incurred,
nsurance) or by operation of law (e.g. an
oyee when held vicariously liable to a third
*ter v Romford Ice & Cold Storage Co Ltd*
y which may arise as a result of operation of
he guarantor's right of indemnity from the

at 882.
at 831; *Total Oil Products (Aust) Pty Ltd v*
*t Co Ltd v Clark* [1967] 2 Q.B. 493 at 496–
oyd's Rep. 289 at 296.

at 830–831; *Total Oil Products (Aust) Pty*
*ys v Buswell* [1913] 2 K.B. 47 at 53–55. An
d a loss: *Sutton & Co v Grey* [1894] Q.B. 285

²⁹⁶ *Clipper Maritime Ltd v Shirlstar Container Transport Ltd* [1987] 1 Lloyd's Rep. 546 at 555; *Harburg India Rubber Comb Co v Martin* [1902] 1 K.B. 778 at 784.

²⁹⁷ *Clement v Clement* (1996) 71 P. & C.R.D. 19.

²⁹⁸ Guarantees are *prima facie* unenforceable if they do not satisfy the requirements of s.4 of the Statute of Frauds 1677. See below, paras 3–150 to 3–154. Not surprisingly, the need to distinguish guarantees from indemnities for the purposes of the Statute of Frauds "has raised many hair-splitting distinctions of exactly that kind which brings the law into hatred, ridicule and contempt by the public": *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828 at 835 *per* Harman L.J.

²⁹⁹ See, e.g. *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828; *Goulston Discount Co Ltd v Clark* [1967] 2 Q.B. 493. *Cf. Bentworth Finance Ltd v Lubert* [1968] 1 Q.B. 680 (where there was no hire-purchase contract because there was an implied condition of the agreement that a log-book would be provided). See below, paras 5–175 and 6–103. But note *Citicorp Australia Ltd v Hendry* (1985) 4 N.S.W.L.R. 1.

³⁰⁰ e.g. see below, paras 6–103, 7–68, and 8–104.

³⁰¹ *Moschi v Lep Air Services Ltd* [1973] A.C. 331 at 349; *Alfred McAlpine Construction Ltd v Unex Corp Ltd* (1994) 38 Com. L.R. 38.

³⁰² See a similar example in *Goulston Discount Co Ltd v Clark* [1967] 2 Q.B. 493. See also *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828, CA (an indemnity). *Cf. Western Credit Ltd v Alberry* [1964] 2 All E.R. 938, CA (a guarantee). Note that the position has been modified by the Minors' Contracts Act 1987.

**1–94**    An example of a guarantee in a similar context would be a promise to "guarantee the obligations of the hirer under the agreement".

**1–95**    Another example is *ANZ Banking Group Ltd v Beneficial Finance Corp Ltd*[303] where the Judicial Committee of the Privy Council decided that a "take-out" letter in the following terms was an indemnity, rather than a guarantee:

> ... It is hereby agreed as follows:
>
> 1.  In the event of the bank's liability in respect of the loan not being satisfied on or before the expiration of two (2) years (the expiration date) from the date hereof Beneficial undertakes upon receipt of ninety (90) days notice in writing from the bank to pay or otherwise make such arrangements (the take-out) as are satisfactory to the bank to discharge the liability to the bank under the said loan."

**1–96**    In doubtful cases, the courts will decide whether the contract is one of indemnity rather than a contract of guarantee by a careful perusal of all the provisions of the agreement to ascertain if the rights of the creditor against the party entering into the contract are different in extent from those available against the debtor.[304] Thus, the agreement will be construed as an indemnity if the contract, according to some of its clauses, operates to render the promisor liable in circumstances in which the principal is not in default,[305] or renders the promisor liable for a greater amount than the principal.[306] By reference to these criteria, a contract by which a dealer agrees to indemnify a finance company against losses arising from a consumer credit contract has been held to be an indemnity.[307]

**1–97**    Other factors may also indicate whether the contract is one of indemnity or guarantee. The fact that the words "guarantee" or "indemnity" appear in the instrument are indications of the intentions of the parties, especially if

---

[303] [1983] 1 N.S.W.L.R. 199. For further examples, see *Anglomar Shipping Co Ltd v Swan Hunter Shipbuilders Ltd* [1980] 2 Lloyd's Rep. 456; *Alfred McAlpine Construction Ltd v Unex Corp Ltd* (1994) 38 Con LR 63.

[304] This is the approach taken in *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828 at 830–833; *Argo Caribbean Group Ltd v Lewis* [1976] 2 Lloyd's Rep. 289 at 296; *Direct Acceptance Finance Ltd v Cumberland Furnishing Pty Ltd* [1965] N.S.W.R. 1504; *Total Oil Products (Aust) Pty Ltd v Robinson* [1970] 1 N.S.W.R. 701; *Cameo Motors Ltd v Portland Holdings Ltd* [1965] NZLR 109.

[305] *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828 at 832–833. *Direct Acceptance Finance Ltd v Cumberland Furnishing Pty Ltd* [1965] N.S.W.R. 1504 at 1509.

[306] *Direct Acceptance Finance Ltd v Cumberland Furnishing Pty Ltd* [1965] N.S.W.R. 1504 at 1509; *Argo Caribbean Group Ltd v Lewis* [1976] 2 Lloyd's Rep. 289 at 296.

[307] *Direct Acceptance Finance Ltd v Cumberland Furnishing Pty Ltd* [1965] N.S.W.R. 1504; *Goulston Discount Co Ltd v Clark* [1967] 2 Q.B. 493; *United Dominions Trust (Commercial) Ltd v Eagle Aircraft Services Ltd* [1968] 1 All E.R. 104, CA. Cf. *Unity Finance Ltd v Woodcock* [1963] 1 WLR 455, where it was held that, on similar wording, a recourse agreement was a guarantee. The case can probably be explained on the narrower ground that the creditors had repossessed the goods illegally and were seeking an indemnity from the consequences of their own illegal act: see this explanation in *Goulston Discount Co Ltd v Clark* [1967] 2 Q.B. 493. In *Direct Acceptance Finance Ltd v Cumberland Furnishing Pty Ltd* [1965] N.S.W.R. 1504, the N.S.W. Court of Appeal doubted *Unity Finance Ltd v Woodcock* [1963] 1 W.L.R. 455.

ND VALIDITY

milar context would be a promise to
r under the agreement".
Group Ltd v Beneficial Finance Corp
of the Privy Council decided that a
rms was an indemnity, rather than a

ility in respect of the loan not being
ation of two (2) years (the expiration
eneficial undertakes upon receipt of
ng from the bank to pay or otherwise
ke-out) as are satisfactory to the bank
bank under the said loan."

decide whether the contract is one of
uarantee by a careful perusal of all the
ain if the rights of the creditor against
t are different in extent from those
the agreement will be construed as an
g to some of its clauses, operates to
stances in which the principal is not in
liable for a greater amount than the
riteria, a contract by which a dealer
any against losses arising from a con-
to be an indemnity.[307]
hether the contract is one of indemnity
"guarantee" or "indemnity" appear in
e intentions of the parties, especially if

amples, see *Anglomar Shipping Co Ltd v Swan*
. 456; *Alfred McAlpine Construction Ltd v Unex*

dit Ltd v Latter* [1961] 1 W.L.R. 828 at 830–833;
loyd's Rep. 289 at 296; *Direct Acceptance Finance*
N.S.W.R. 1504; *Total Oil Products (Aust) Pty Ltd*
*lotors Ltd v Portland Holdings Ltd* [1965] NZLR

R. 828 at 832–833. *Direct Acceptance Finance Ltd v*
.R. 1504 at 1509.
*land Furnishing Pty Ltd* [1965] N.S.W.R. 1504 at
76] 2 Lloyd's Rep. 289 at 296.
*rland Furnishing Pty Ltd* [1965] N.S.W.R. 1504;
B. 493; *United Dominions Trust (Commercial) Ltd*
.R. 104, CA. Cf. *Unity Finance Ltd v Woodcock*
on similar wording, a recourse agreement was
ed on the narrower ground that the creditors had
king an indemnity from the consequences of their
*ton Discount Co Ltd v Clark* [1967] 2 Q.B. 493. In
d Furnishing Pty Ltd* [1965] N.S.W.R. 1504, the
ance Ltd v Woodcock* [1963] 1 W.L.R. 455.

---

the expressions are repeated a number of times[308] or appear in the heading to the instrument,[309] but they are not decisive[310] and the essential nature of the agreement must always be considered.[311]

If the agreement contains a provision preserving the liability of the **1–98** guarantor in the event of the creditor giving time to the principal to perform the principal obligation, this will suggest that the contract is one of guarantee because, if the contract were one of indemnity, there would be no need for such a provision since an indemnifier is not discharged by such conduct of the creditor.[312] Conversely, the contract may well be one of indemnity if the parties know that the principal contract is void (for example as a result of the principal's infancy), because if it were construed as a guarantee the transaction would be ineffective since there would be no valid principal obligation, and the parties could not have intended this result.[313]

The difficulty of determining whether the contract is one of guarantee or **1–99** indemnity is reflected in modern forms of contract used to secure the obligation of another, some of which cannot easily be classified into these two separate categories. The most commonly found forms are as follows:

*(a) A simple guarantee*: Some guarantees merely contain one simple **1–100** undertaking to guarantee the obligations of a named principal. The agreement contains no special clauses and is clearly a contract of guarantee according to traditional definitions. Surprisingly, this form is still used by some finance companies.

*(b) A guarantee containing clauses preserving the guarantor's liability in* **1–101** *certain circumstances*: The form of this guarantee is the same as in para.(a) above, but it also contains clauses which preserve the liability of the guarantors in circumstances in which they would otherwise be discharged (for example, by the creditor varying the principal contract or impairing securities held for the enforcement of the principal obligation).[314] Even if the agreement contains a clause to the effect that the creditor may treat the

---

[308] *Heald v O'Connor* [1971] 1 W.L.R. 497 at 503.
[309] *Goulston Discount Ltd v Clark* [1967] 2 Q.B. 493 at 498 per Danckwerts L.J. *Western Credit Ltd v Alberry* [1964] 2 All E.R. 938 at 940 per Davies L.J.; *Crown Lumber Co Ltd v Engel* (1961) 28 D.L.R. (2d) 762.
[310] *Total Oil Products (Aust) Pty Ltd v Robinson* [1970] 1 N.S.W.R. 701; *Western Credit Ltd v Alberry* [1964] 2 All ER 938 at 940 per Davies L.J.
[311] *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828 at 833.
[312] *Western Credit Ltd v Alberry* [1964] 2 All E.R. 938 at 940 *per* Davies L.J. *Western Dominion Investment Co v MacMillan* [1925] 2 DLR 442, affirmed in [1925] 4 D.L.R. 562, CA. But in *Associated British Ports v Ferryways NV* [2009] EWCA 189 at paras 11–12 it was said that the absence of the usual protective terms (for example, preserving the liability of the guarantor in event of a variation of the principal contract) was not a reason in itself for concluding that the instrument was not a guarantee. The absence of such terms was of neutral effect in the construction of the contract. Additionally the fact that the agreement makes no provision for a demand being made on the principal debtor does not convert what would otherwise be a guarantee into an indemnity: *Chiswell Shipping Ltd v State Bank of India* [1987] 1 Lloyd's Rep. 165.
[313] *Yeoman Credit Ltd v Latter* [1961] 1 W.L.R. 828 (but see this factor criticised in a note in (1961) 24 M.L.R. 644 at 647–648.)
[314] See below, Chs 7 and 8.

guarantor "as a principal debtor" it will probably still be viewed as a contract of guarantee,[315] but this may not be the case if certain clauses specifically preserve the guarantor's liability in circumstances where the principal is no longer liable: see below, para.(c).

**1–102**  (c) *A guarantee which contains clauses preserving the liability of the guarantor in specified circumstances where the principal is no longer liable:* The form of this guarantee is the same as in para.(b) above, but it also contains clauses which, in specified and limited situations, preserve the liability of the guarantor in circumstances in which the principal will no longer be liable to the creditor. Examples are the preservation of the guarantor's liability where the principal is released by the creditor, and where the principal contract is void because of the principal's infancy. In the first of these examples, an assumption has been made that the contract remains properly classified as a guarantee,[316] whilst in the second it has been suggested that the contract is in fact one of indemnity.[317] In such situations, therefore, the question of categorisation is an open one.

**1–103**  Where the terms of the instrument confine the preservation of the guarantor's liability to one or at least a small number of situations in which the principal is no longer liable, it is difficult to conclude that the contract renders the creditor "harmless against loss" within the definition of an indemnity. Yet it cannot be said the contract is strictly a guarantee because liability may be incurred in these specific situations without the default of the principal. It may be that this type of contract should be regarded as a hybrid, generally being in the nature of a guarantee but containing elements of an indemnity. At least one authority has recognised this possibility.[318]

**1–104**  (d) *A guarantee containing a "principal debtor" clause:* A guarantee which contains clauses preserving the liability of the guarantor in certain circumstances when the principal is no longer liable (as in para. (c) above) will invariably also contain a "principal debtor" clause, whereby the creditor is "given liberty to act as though the guarantor were a principal debtor".[319] It is clear that the effect of such a clause, even standing alone, may be to preserve the guarantor's liability in circumstances in which he would otherwise be discharged, for example, where the creditor improperly releases a security[320] or grants the principal an extension of time to repay the debt.[321] Depending on its precise construction, the clause may also obviate the necessity for a demand to be made upon the guarantor before issuing

---

[315] *Heald v O'Connor* [1971] 1 W.L.R. 497 at 503; *General Produce Co v United Bank Ltd* [1979] 2 Lloyd's Rep. 255 at 259. See also below, para. 1–104 to 1–105.

[316] e.g. *Bank of Adelaide v Lorden* (1970) 45 A.L.J.R. 49, where the terminology of guarantee is used.

[317] *Alliance Acceptance Co Ltd v Hinton* (1964) 1 D.C.R. (NSW) 5. Note, however, that an alternative basis of this decision was that the clause operated as an estoppel against the guarantor.

[318] *General Surety & Guarantee Co Ltd v Francis Parker Ltd* (1977) 6 Build. L.R. 18 at 21.

[319] An example taken from *Fletcher Organisation Pty Ltd v Crocus Investments Pty Ltd* [1988] 2 Qd. R. 517.

[320] *ibid.*

[321] *Heald v O'Connor* [1971] 1 W.L.R. 497. See also *Brown Bros Motor Lease Canada Ltd v Ganapathi* (1983) 139 D.L.R. (3d) 227.

Entered 05/22/14 19:27:39 Exhibit 76

**ND VALIDITY**

t will probably still be viewed as a
ly not be the case if certain clauses
liability in circumstances where the
, para.(c).

*lauses preserving the liability of the*
*here the principal is no longer liable:*
me as in para.(b) above, but it also
d limited situations, preserve the lia-
s in which the principal will no longer
e the preservation of the guarantor's
sed by the creditor, and where the
he principal's infancy. In the first of
een made that the contract remains
whilst in the second it has been sug-
e of indemnity.[317] In such situations,
on is an open one.

confine the preservation of the guar-
all number of situations in which the
fficult to conclude that the contract
st loss" within the definition of an
ntract is strictly a guarantee because
ific situations without the default of
of contract should be regarded as a
a guarantee but containing elements
y has recognised this possibility.[318]

*al debtor" clause*: A guarantee which
y of the guarantor in certain circum-
er liable (as in para. (c) above) will
btor" clause, whereby the creditor is
rantor were a principal debtor".[319] It
se, even standing alone, may be to
circumstances in which he would
here the creditor improperly releases
xtension of time to repay the debt.[321]
n, the clause may also obviate the
upon the guarantor before issuing

*General Produce Co v United Bank Ltd* [1979]
1–104 to 1–105.
.R. 49, where the terminology of guarantee is

D.C.R. (NSW) 5. Note, however, that an
clause operated as an estoppel against the

*Parker Ltd* (1977) 6 Build. L.R. 18 at 21.
*Pty Ltd v Crocus Investments Pty Ltd* [1988] 2

also *Brown Bros Motor Lease Canada Ltd v*

---

proceedings.[322] It may also be a relevant factor in reaching a conclusion that
a particular instrument is an unconditional performance bond.[323]

The dominant view, however, is that the incorporation of a "principal **1–105**
debtor" clause does not convert what would otherwise be interpreted as a
contract of guarantee into a contract of indemnity.[324] The effect of a
"principal debtor" clause in particular contexts is considered elsewhere in
the text.[325]

*(e) Simple indemnity*: Some forms of contract securing the obligation or **1–106**
the payment of a debt of another are clearly indemnities. An example is
given earlier in this section.

*(f) A combined "guarantee and indemnity"*: The contract securing the **1–107**
obligation or payment of another may be drafted in such a way that it
expressly contains a promise to guarantee and a promise to indemnify. An
example is an agreement in these terms:

"(1) I will upon demand pay to you such sum or sums of money as at any
time or from time to time have become payable by the customer but be
unpaid by her/him. (2) I will indemnify and keep indemnified you, your
successors and assigns from all loss or damage suffered and all claims
costs and expenses made against or incurred by you in any way arising out
of or consequent upon your having entered into such agreement, whether
arising out of a breach by the customer of any of the terms and conditions
thereof or otherwise including any such loss or damage, etc. as aforesaid
as may arise from the said agreement being (for whatever reason) unen-
forceable against the customer. (3) No relaxation or indulgence which you
may from time to time or at any time extend to the customer shall in any
way prejudice or act as a waiver of your strict rights against me
hereunder."

[322] *Esso Petroleum Co Ltd v Alstonbridge Properties Ltd* [1975] 1 W.L.R. 1474 at 1478. *Cf. Re Taylor, Ex p. Century 21 Real Estate Corp* (1995) 130 A.L.R. 723, where Burchett J. emphasised that the issue was one of construction of the particular guarantee, and added "[N]o general-isation is possible."

[323] *Van Der Merwe v IIG Capital LLC* [2008] EWCA 542 at paras 31–32; *Maureen McLaughlin v Suspension & Interdict* [2009] C.S.O.H. 49.

[324] *Citicorp Australia Ltd v Hendry* (1985) 4 N.S.W.L.R. 1 at 20 *per* Clarke J. (at first instance); *Heald v. O'Connor* [1971] 1 W.L.R. 497. See also *Clipper Maritime Ltd v Shirlstar Container Transport Ltd* [1987] 1 Lloyd's Rep. 546 at 555; *Brown Bros Motor Lease Canada Ltd v Ganapathi* (1983) 139 D.L.R. (3d) 227.; *Berghoff Trading Ltd v Swinbrook Developments Ltd* [2009] EWCA Civ 413 (where it was left open whether a principal debtor clause whereby the guarantors "[agreed] to pay as if they were the primary obliger" even had the effect of abro-gating the relationship of suretyship between the guarantor and principal debtor (see this case discussed in more detail above at para.1–30); *Valstar v Silversmith* [2009] N.S.W.C.A. 80 at para.37 where the Court of Appeal doubted that the "principal debtor" clause in that case would in itself "have entitled the appellant to sue the respondents simply as principal debtors under the Mortgage, rather than as guarantors". Cf. *Fletcher Organisation Pty Ltd v Crocus Investments Pty Ltd* [1988] 2 Qd. R. 517 at 526–527, 536, where the effect of a principal debtor clause is equated with a specific variation of the contractual arrangements whereby the guar-antor clearly assumes a primary liability.

[325] See below, paras 5–172; 7–36; 7–99; 8–98 to 8–99; and 10–121.

FORMATION AND VALIDITY

**1-108**      In this situation the agreement has sometimes been construed simply as a guarantee, despite the inclusion of an indemnity provision. Thus in *Stadium Finance Co Ltd v Helm*,[326] the Court of Appeal held that an agreement containing the above clauses and headed "indemnity form" was in fact a guarantee, with the result that the contract was unenforceable against the guarantor when the principal contract was void due to the principal's infancy. Russell L.J. was of the view that, as most people were not prepared to subject themselves to the nuisance of primary liability, a clearer form must be adopted before the instrument could be construed as an indemnity.[327] The construction of a contract in this form as a guarantee is more likely if the obligation is only to attach in the event of the failure of the principal to discharge his obligations,[328] since this in indicative of a secondary liability.

**1-109**      Another possibility is to construe the agreement as two separate obligations of guarantee and indemnity and, indeed, this appears to be the usual approach.[329] However, even if the instrument is treated as embodying separate obligations, the interrelationship of the guarantee and the indemnity may well have a significant impact on the effectiveness of the provisions.[330] In particular, the fact that the substantial part of the document (apart from the indemnity clause) is drafted as a guarantee can, at least on one view, result in the indemnity provision being much less effective from the creditor's point of view.[331] An illustration is *Citicorp Australia Ltd v Hendry*,[332] where it was held that an indemnity provision did not preserve the obliger's liability when the sums payable pursuant to the principal contract were irrecoverable as being in the nature of a penalty. The indemnity clause (as well as the guarantee) had been drafted on the basis that there was an existing obligation of the principal to pay, which was not the case because the sums as a matter of law were at no stage recoverable from the principal.[333]

**1-110**      As the above analysis of common forms indicates, the distinction between a contract of guarantee and one of indemnity is often blurred, and it is

[326] (1965) 109 S.J. 471. This decision was quoted with approval in *Re: Taylor; Ex Parte Century 21 Real Estate Corporation* (1995) 130 A.L.R. 723, (cited more recently in *Valstar v Silversmith* [2009] N.S.W.C.A. 80 at para.36). *Cf.* however *Total Oil Products (Aust) Pty Ltd v Robinson* [1970] 1 N.S.W.R. 701 at 703–704, where it was held that a particular clause in a contract which was phrased in terms of a guarantee was a promise of indemnity.

[327] See also *Re Taylor, Ex p. Century 21 Real Estate Corp* (1995) 130 A.L.R. 723.

[328] *Re Taylor, Ex p. Century 21 Real Estate Corp* (unreported, Fed Ct of Australia, Burchett J. June 27, 1995) at 9–10.

[329] *Citicorp Australia Ltd v Hendry* (1985) 4 N.S.W.L.R. 1 at 20 *per* Clarke J. (at first instance). The matter was treated similarly on appeal (1985) 4 N.S.W.L.R. 1 at 36, where the instrument was referred to as a "guarantee/indemnity document". See also *James Hardie & Co Pty Ltd v Burrows* (unreported, Vic Sup Ct, July 5, 1991).

[330] *The "Barenbels"* [1985] 1 Lloyd's Rep. 528 at 532, although here the obligations were embodied in the same clause.

[331] In *Citicorp Australia Ltd v Hendry* (1985) 4 N.S.W.L.R. 1 at 20, Clarke J. in fact regarded "the agreement as a whole as an agreement of guarantee" and the indemnity as an "additional" liability.

[332] (1985) 4 N.S.W.L.R. 1.

[333] See below, para.5–173 and note, in particular, a different interpretation in *Gulf Bank KSC v Mitsubishi Heavy Industries Ltd* [1994] 2 Lloyd's Rep. 145 at 151.

sometimes been construed simply as a
indemnity provision. Thus in *Stadium*
t of Appeal held that an agreement
ded "indemnity form" was in fact a
ntract was unenforceable against the
ct was void due to the principal's
at, as most people were not prepared
of primary liability, a clearer form
nt could be construed as an indem-
t in this form as a guarantee is more
ch in the event of the failure of the
,[328] since this in indicative of a sec-

he agreement as two separate obliga-
, indeed, this appears to be the usual
nstrument is treated as embodying
hip of the guarantee and the indem-
ct on the effectiveness of the provi-
he substantial part of the document
rafted as a guarantee can, at least on
vision being much less effective from
ustration is *Citicorp Australia Ltd v*
ndemnity provision did not preserve
payable pursuant to the principal
in the nature of a penalty. The
ntee) had been drafted on the basis
f the principal to pay, which was not
of law were at no stage recoverable

rms indicates, the distinction between
ndemnity is often blurred, and it is

with approval in *Re: Taylor; Ex Parte Century*
3, (cited more recently in *Valstar v Silversmith*
*Total Oil Products (Aust) Pty Ltd v Robinson*
eld that a particular clause in a contract which
ise of indemnity.
*tate Corp* (1995) 130 A.L.R. 723.
(unreported, Fed Ct of Australia, Burchett J.

W.L.R. 1 at 20 *per* Clarke J. (at first instance).
5) 4 N.S.W.L.R. 1 at 36, where the instrument
nent". See also *James Hardie & Co Pty Ltd v*

at 532, although here the obligations were

.S.W.L.R. 1 at 20, Clarke J. in fact regarded
arantee" and the indemnity as an "additional"

a different interpretation in *Gulf Bank KSC v*
Rep. 145 at 151.

always essential to give effect to the particular wording in each case, rather than attempt a rigid categorisation.[334] The authors in this work have, therefore, on many occasions looked at the law in regard to both types of contract. Indeed, as the modern forms of guarantee often contain elements of an indemnity this is why the authors have entitled the work *The Modern Contract of Guarantee*. Instances of the treatment of a contract of indemnity, or a guarantee which contains elements of indemnity, are found in Chapter 5 (where the principles of construction applicable to a contract of indemnity are analysed). Chapters 6–8 (where the effect of circumstances discharging the guarantor are considered also in relation to the indemnifier) and Chapters 10–12 (where the rights of an indemnifier are discussed).

## 8. DISTINCTION BETWEEN GUARANTEE AND WARRANTY

In common parlance, the terms "guarantee" and "warranty" are used **1–111** interchangeably. There is some historical basis for this usage for it appears that the words were once the same, the letter "g" of the Norman-French being convertible with the "w" of the German and English, as in the names William and Guillaume.[335] In general, however, the term "guarantee" should be used to describe a collateral contract "by which one person is bound to another for the due fulfilment of a promise or engagement of a third party",[336] while the term "warranty" should be reserved for "a contract as to the title, quality or quantity of a thing sold"[337] or an undertaking that the title, quality or quantity of the subject matter of a contract is as it appears to be or as it has been represented. Unlike a guarantee, a warranty does not necessarily relate to the obligations of a third party, and generally will not do so.

The determination of whether or not the promise is a guarantee or, **1–112** alternatively, a contractual warranty, should be approached in a common sense way, and having regard to the context in which the word "guarantee" or "warranty" is used in the agreement as a whole.[338] Nomenclature is not

[334] *Alfred McAlpine Construction Ltd v Unex Corp Ltd* (1994) 38 Con. L.R. 63.
[335] H.A. de Colyar, *A Treatise on the Law of Guarantees* (3rd edn, 1897), pp.1–2. The Old French noun "garantie" and verb "garantie" were derived from the Frankish word "garant", itself a derivation of an earlier form "warrant", meaning a warrant or supporter.
[336] *Parson's Law of Contracts* (5th ed.), Vol. ii, p.3, quoted in H.A. de Colyar, *A Treatise on the Law of Guarantees* (3rd edn, 1897), p.2.
[337] *ibid.* A retailer's obligation to effect repairs to goods sold is a warranty, not a guarantee: See, e.g. *Adams v Richardson & Starling Ltd* [1969] 1 W.L.R. 1645. Technically, a "warranty" is a subsidiary term of a contract which gives rise to a right to damages if the term is breached, but which does not give the injured party a right to treat the contract as at an end: *Oscar Chess Ltd v Williams* [1957] 1 All E.R. 325 at 328 per Denning L.J., CA.
[338] *Trajovski v RK Findlay Pty Ltd* [2008] N.S.W.S.C. 278 at para.106; *Quest 4 Finance Ltd v Maxfield* [2007] EWHC 2313 (QB) at para.25.