**EXHIBIT 77**

# THE MODERN CONTRACT OF GUARANTEE

English Edition

**Dr James O'Donovan**
*Professor of Law at the University of
Western Australia and as Special Counsel,
Lavan Legal, Perth, Western Australia*

and

**Dr John Phillips**
*Professor of English Law
King's College, London
Barrister of the Middle Temple*

**SWEET & MAXWELL**          THOMSON REUTERS




Published in 2010 by
Thomson Reuters (Legal) Limited (Registered in
England & Wales, Company No 1679046. Registered Office
and address for service. 100 Avenue Road, London NW3 3PF)
trading as Sweet & Maxwell.

Typeset by YHT Ltd, London.
Printed and bound in Great Britain by
TJ International, Padstow, Cornwall.

For further information on our products and services,
visit www.sweetandmaxwell.co.uk

ISBN 978 1 847 03569 1

Crown copyright material is reproduced with the permission
of the Controller of HMSO and the Queen's Printer for Scotland.

A CIP catalogue record for this book
is available from the British Library.

All rights reserved. No part of this publication may be reproduced or
transmitted in any form or by any means, or stored in any retrieval system
of any nature without prior written permission, except for permitted fair
dealing under the Copyright, Designs and Patents Act 1988, or in
accordance with the terms of a licence issued by the Copyright Licensing
Agency in respect of photocopying and/or reprographic reproduction.
Application for permission for other use of copyright material including
permission to reproduce extracts in other published works shall be made to
the publishers. Full acknowledgement of author, publisher and source must
be given.

Thomson Reuters and the Thomson Reuters Logo
are trademarks of Thomson Reuters.
Sweet & Maxwell ® is a registered trademark
of Thomson Reuters (Legal) Limited.

No natural forests were destroyed to make this product,
only farmed timer was used and re-planted

© 2010 John Phillips and James O'Donovan

Economic reces
society and the
particularly vuln
collateral securi
there has been h
been untouched
decision quite as
*Scotland v Etridg*
and responsibilit
which was exhau
many decisions h
application of ex
arrangements.

The relevant d
structural framew
("Formation and
recent case law as
can be impugned
iting defences com
to the Statute of F
by co-guarantor to
letters of comfort a
respect of non-disc
their effect on the
impact of the Uni
Consumer Contra
antee in the light o

As examined in (
been much case lav
perhaps not withou
interpretation appli
issues of constructi
drafting guarantees
current problems of
monies" guarantee;
indebtedness, or bc
antor; and whether
liability. The determ

moneys 'to be made available ... have been ... distributed ... I will be released' means just that. The release is not to take effect (if at all) until the debtor's obligations under the proposals have been fulfilled."

It might be that this type of conditional agreement, however, is better viewed not as an implied reservation of rights against the surety, but simply as an agreement not amounting to an absolute release at all.

Yet even if the agreement is unconditional other circumstances may indicate that the rights against the surety are to be preserved. Extrapolating from *Watts v Aldington*,[169] such circumstances might be if the amount paid by the principal upon his release is small in respect of the total indebtedness and there are circumstances known to the parties (guarantor, debtor and principal) indicating that the creditor would be seeking additional sums from the guarantor. Additionally, the fact that the guarantor has provided an additional security may also be a factor indicating the creditor does not intend to give up his (secured) rights against the guarantor upon a release of the principal.[170]

6–75

### (c) A "reservation of rights" clause in the contract of guarantee

There is clear authority that a clause in the original contract of guarantee can preserve a right of action against the guarantor.[171] In *Perry v National Provincial Bank of England*,[172] the guarantor mortgaged certain deeds to the bank to secure the indebtedness of a partnership customer, and the bank, without reference to the guarantor, released the customer from all further liability under an arrangement whereby it obtained instead debentures in a limited company incorporated to take over the assets of the original business. The guarantor claimed to be released from liability on the ground that, as the bank had released the principal debtor, his liability under the guarantee was discharged. The argument was rejected because the guarantee (embodied in the mortgage documents) contained a clause authorising the bank "to compound with and give time for payment of and accept compositions from and make any other arrangements with the debtors". In the words of Cozens-Hardy M.R.:

6–76

"it is perfectly possible for a surety to contract with a creditor in the suretyship instrument that notwithstanding any composition, release, or

---

[169] *The Times*, December 16, 1993.
[170] See this argument advanced in *Finley v Connell Associates* [1999] Lloyd's Rep. P.N. 895 at 907.
[171] *Perry v National Provincial Bank of England* [1910] 1 Ch. 464; *Cowper v Smith* (1838) 4 M. & W. 519; 150 E.R. 1534; *Union Bank of Manchester Ltd v Beech* (1865) 3 H. & C. 672; 159 E.R. 695; *Greene King plc v Stanley* [2001] EWCA Civ 1966 at para. 77: *Bank of Adelaide v Lorden* (1970) 45 A.L.J.R. 49; *Fletcher Organisation Pty Ltd v Crocus Investments Pty Ltd* [1988] 2 Qd. R. 517 (concerning the release of a co-surety).
[172] [1910] 1 Ch. 464.

arrangement the surety shall remain liable although the principal does not."[173]

6-77    Although the law is clearly settled, it should be observed that the conclusion the courts have reached is arguably inconsistent with a number of earlier cases and, in particular, with the view of the Privy Council in *Commercial Bank of Tasmania v Jones*.[174] In that case, there was a novation—the creditor giving the debtor an absolute release and accepting a third party in his place. The Privy Council regarded the fact that there had been an absolute release of the debtor, rather than a mere covenant not to sue him, as important in coming to a conclusion that the guarantor was discharged in spite of a reservation of rights clause contained in the agreement of guarantee:

> "It may be taken as settled law that where there is an absolute release of the principal debtor, the remedy against the surety is gone because the debt is extinguished, and where such actual release is given no right can be reserved because the debt is satisfied, and no right of recourse remains when the debt is gone."[175]

6-78    It has been seen that when the reservation of rights clause is contained in the agreement of release between creditor and debtor it was at one time treated as void because the clause was treated as being incompatible with the absolute release. This passage appears to apply that reasoning to a situation where the reservation of rights clause is contained in the guarantee. The result would be that the reservation of rights clause in the guarantee would only be valid if the agreement between the creditor and the debtor is worded as a covenant not to sue rather than a release. The application of the reasoning of the Privy Council to the facts in *Perry v National Provincial Bank of England* would have rendered the reservation of rights clauses ineffective, because it is clear that absolute releases were given to the debtors in that case.[176] The releases could not be construed as covenants not to sue as the releases themselves did not contain reservation of rights clauses.

6-79    In *Perry v National Provincial Bank of England*, the court distinguished *Commercial Bank of Tasmania v Jones* on the ground that the acts done by the bank in the latter case did not fall within the meaning of the clause in the guarantee.[177] Yet this distinction is of doubtful validity because the relevant clause stated expressly that the guarantee was to continue notwithstanding that there was a "release" or "discharge",[178] and that is what occurred, even

---

though a th
argument, h(
a reservatio1
whether the
creditor cov(
A commo
the liability (
states "the c
or release o1
the guarant(
been defined
contracts wi1
his reinstate
creditors of
sufficient in
to agree to 1
depending o
than the full
not embrac(
guarantor w
"discharge".
lation that t
debtor, but ;
to continue
the guarant(
courts are f(
antor's autl
continue.
    The abov(
"at all time
Zealand the
to preserve
principal, e\
compound \

---

[173] [1910] 1 Ch. 464.
[174] [1893] A.C. 313. See also *Re Mount Costigan Lead & Silver Mining Co Ltd* (1896) 17 L.R. (NSW) Eq. 80 at 93 per Manning J.
[175] [1893] A.C. 313 at 316.
[176] See per Cozens-Hardy M.R. in *Perry v National Provincial Bank of England* [1910] 1 Ch. 464 at 474.
[177] [1910] 1 Ch. 464 at 476 per Fletcher-Moulton L.J.
[178] See the clause set out in *Commercial Bank of Tasmania v Jones* [1893] A.C. 313 at 314. See also *Re Mount Costigan Lead & Silver Mining Co Ltd* (1896) 17 L.R. (NSW) Eq. 80.

[179] See the autl
[180] As similar (
*National Provi*
A.L.J.R. 49.
[181] *Aitken's Tr*
[182] *Union Bank*
[183] See *Aitken':*
the guarantor
will not disch
*Organisation F*
concerned the
[184] *Bond & Bo1*

though a third party took on the liabilities. Whatever the merits of this argument, however, it is now overwhelmingly clear from the authorities that a reservation of rights clause embodied in the guarantee will be upheld whether the debtor is absolutely released by the creditor or whether the creditor covenants not to sue the debtor.[179]

A common type of clause which is inserted in the guarantee to preserve  **6–80**
the liability of the guarantor in the event of a release of the principal debtor states "the creditor may at any time and from time to time compound with or release or discharge the principal debtor without impairing or releasing the guarantor".[180] The reference to a "composition" in such a clause has been defined as a "form of transaction ... by which an insolvent debtor ... contracts with his creditors as a body for his discharge extrajudicially, or for his reinstatement in his estate, in consideration of his payment to the creditors of an agreed proportion of their several debts".[181] It is probably sufficient in order to come within the term "composition" for the creditors to agree to take, in satisfaction of the debt, property of the debtor which, depending on the amount subsequently realised, might or *might not* be less than the full value of the debt.[182] But the word "composition" will probably not embrace an unqualified release of the debtor,[183] so in that event the guarantor will be discharged unless there is a reference to a "release" or "discharge". It should be noted that the clause not only contains a stipulation that the creditor is authorised to "release" or "compound with" the debtor, but also a statement by the guarantor that the guarantor's liability is to continue despite such action by the creditor. It may not be sufficient that the guarantee contains the former statement and not the latter, so that the courts are forced to draw the implication from the mere fact of the guarantor's authorisation of the release that the guarantor's liability should continue.

The above clause is often combined with a clause with permits the creditor  **6–81**
"at all times ... to treat the guarantor as a principal debtor".[184] In New Zealand the view has been taken that this clause standing alone is effective to preserve the liability of the guarantor in the event of a release of the principal, even when there is no specific authority given to the creditor "to compound with or release or discharge the principal debtor" in the terms of

---

[179] See the authorities cited above, n.171.
[180] As similar examples, see *Cowper v Smith* (1838) 4 M. & W. 519; 150 E.R. 1534; *Perry v National Provincial Bank of England* [1910] 1 Ch. 464; *Bank of Adelaide v Lorden* (1970) 45 A.L.J.R. 49.
[181] *Aitken's Trustees v Bank of Scotland* [1944] S.C. 270 at 278.
[182] *Union Bank of Australia v Rogan* (1892) 13 L.R. (NSW) 285.
[183] See *Aitken's Trustees v Bank of Scotland* [1944] S.C. 270 at 278. Similarly, a clause by which the guarantor agrees that "any favour, grace or consideration" shown to the principal debtor will not discharge the debtor will probably not embrace an unqualified release: *Fletcher Organisation Pty Ltd v Crocus Investments Pty Ltd* [1988] 2 Qd. R. 517, although the decision concerned the release of a co-guarantor. Note also the dissenting judgment of Williams J.
[184] *Bond & Bond Ltd v Rothery* [1935] G.L.R. 179.

the clause set out in the previous paragraph.[185] But there is no decisive authority and the creditor would be unwise to rely on such a clause in isolation. This is especially so in view of other statements which have stressed that the effect of a "principal debtor" clause is not to enlarge the ambit of the guarantee[186] or to convert the contract of guarantee into an indemnity,[187] but merely to avoid the consequences of the guarantor being discharged where the creditor gives time or other indulgence to the principal.[188]

6–82　　The effect of a clause in a contract of guarantee by which the guarantor promises to remain liable despite a release of or compromise with, the principal will be different from when the agreement is contained in the agreement of release between creditor and debtor. One of the major reasons why a release of the principal debtor discharges the guarantor is that, if it were otherwise, the guarantor could claim an indemnity from the debtor on payment to the creditor, thus rendering the release illusory from the principal debtor's point of view. This would result in a fraud on the debtor.[189] This principle is not seen to be infringed where the reservation of rights clause is contained in the agreement of release because the debtor's assent to the clause constitutes an implied agreement to the continuation of the guarantor's right of indemnity against the debtor.[190] This implication cannot be drawn where the clause is contained in a separate agreement of guarantee because usually the debtor will not have assented to the clause.[191]

6–83　　The issue therefore arises whether a reservation of rights contained in the guarantee should deprive the guarantor of his right of indemnity. On one view this may be the consequential result. In *Watts v Aldington*[192] Neil L.J. was of the view that, although it was "legitimate" to imply a term into the release of one joint debtor that there should be a reservation of rights

---

[185] *Bond & Bond Ltd*, [1935] G.L.R. 179. at 180; *General Produce Co v United Bank Ltd* [1979] 2 Lloyd's Rep. 255 at 259. where Lloyd J. appears inclined to this view. The clause in the latter case did, however, contain further specific wording referring to a continuation of the guarantor's liability despite a release, and the facts of the case were concerned with a release of the principal by operation of law. See also *Bank of New Zealand v Baker* [1926] N.Z.L.R. 462 at 487, which would also support the efficacy of such a clause standing alone to preserve the liability of the guarantor. In Australia, see *Fletcher Organisation Pty Ltd v Crocus Investments Pty Ltd* [1988] 2 Qd. R. 517, where there is some support for the view that, the principal debtor clause is sufficient alone (see per Shepardson J. at 526–527. Ryan J. at 543), but the relevant clause also contained a promise by which the guarantor waived his rights in respect of the provisions of the instrument (see clause 6). The decision was also concerned with the release of a coguarantor, not the principal debtor.
[186] *Parker v Bayly* [1927] G.L.R. 265 at 268.
[187] See above, para.1–104.
[188] *Heald v O Connor* [1971] 1 W.L.R. 497 at 503. Note also that in *Payton v SG Brookes & Sons Pty Ltd* [1977] W.A.R. 91 it was specifically left open whether such a clause even had that effect.
[189] *Cole v Lynn* [1942] 1 K.B. 142 at 146; *Mercantile Bank of Sydney v Taylor* (1891) 12 L.R. (NSW) 252 at 260 per Windeyer J.; *Re Notal Investment Co (Nevill's Case)* (1870) 6 Ch. App. 43 at 47 per Mellish L.J.
[190] *Cole v Lynn* [1942] 1 K.B. 142 at 146.
[191] If the debtor does assent (as in *Atkins v Revell* (1860) 1 De G.F. & J. 360; 45 E.R. 398) then the right of indemnity should be preserved.
[192] *The Times*, December 16, 1993.

10 decisive
t clause in
'hich have
:nlarge the
ee into an
ntor being
ce to the

guarantor
with, the
1ed in the
or reasons
; that, if it
debtor on
1 the prin-
: debtor.[189]
1 of rights
s assent to
on of the
on cannot
guarantee
1
ined in the
y. On one
[2] Neil L.J.
m into the
of rights

: Ltd [1979] 2
in the latter
the guaran-
elease of the
.L.R. 462 at
preserve the
; Investments
icipal debtor
the relevant
:spect of the
e release of a

7okes & Sons
d that effect.
391) 12 L.R.
Ch. App. 43

R. 398) then

against the other there was no "basis for making any implication as regards possible contribution rights"[193] by the latter.

Nonetheless, it is not clear why the guarantor should be deprived of his right of indemnity against the principal simply as an inference from a bare promise made *to the creditor* in the guarantee that he will remain liable despite a release, especially if he does not also consent to being treated as a "principal debtor". But if the guarantor is permitted to exercise his right of indemnity a "fraud on the debtor" will result since the debtor's legitimate expectation (arising from the release) is that his liability is extinguished. There is no easy answer to this question, but in the authors' view a reservation of rights clause in the guarantee should generally (and subject to the particular factual matrix of the contract) be interpreted as promise by the guarantor that his liability should continue but that his right of indemnity against the debtor should not.[194]

6–84

### (d) Agreement by the guarantor to the continuation of liability

If there is no reservation of rights clause contained in the contract of guarantee, the creditor may seek to obtain the consent of the guarantor to the continuation of the guarantor's liability at the same time that the creditor release the debtor. It has been held that such consent, when it is given before the release, will be effective to preserve the guarantor's liability, even if given verbally.[195] The relevant authority speaks of a binding agreement between guarantor and creditor[196] If the guarantor requested the release, it can be argued this is so because the guarantor's promise to remain liable on the existing guarantee would be supported by the consideration of the creditor's release of the debtor.[197] This conclusion, however, is inconsistent with other authorities[198] which on similar facts have not adopted such an approach but have clearly held that when the release is in writing, parol evidence cannot be adduced to prove a contractual promise by the guarantor to remain liable. It has been suggested[199] that these cases are wrong, because the parol evidence is not being used to add to or vary the main

6–85

---

[193] The term "contribution" is probably being used here in a general sense to embrace the right of indemnity against a co-debtor.
[194] There is no definitive authority on this point, although in the Australian case of *Bank of Adelaide v Lorden* (1970) 45 A.L.J.R. 49 at 52 Barwick C.J. was of the view that the debtor when released was "effectively discharged ... from *any* further liability to pay *any* sum on account of that debt".
[195] *Davidson v M'Gregor* (1841) 8 M. & W. 755; 151 E.R. 1244. See also *Re Blakely Ex p. Harvey* (1854) 4 De G.M. & G. 881; 43 E.R. 752.
[196] *Davidson v M'Gregor* (1841) 8 M. & W. 755 at 767–768; 151 E.R. 1244 at 1249–1250.
[197] The pleadings in *Davidson v M'Gregor* (1841) 8 M. & W. 755; 151 E.R. 1244 did allege this request.
[198] *Brooks v Stuart* (1839) 9 Ad. & E. 854; 112 E.R. 1437; *Cocks v Nash* (1832) 9 Bing. 341; 131 E.R. 643 (a case of joint debtors but, in this context, the principles are the same). In both these cases the pleadings alleged that the release was at "the request" of the guarantor.
[199] G. L. Williams, *Joint Obligations* (1949), p.128, para.60.

contract, but to establish a separate collateral contract between the guarantor and the creditor. The parol evidence rule is not, therefore, infringed.

6–86 Another way in which the guarantor might be rendered liable in these circumstances is as a result of the application of the principles of estoppel, the guarantor being estopped from pleading the release because the guarantor had acknowledged that, notwithstanding the release, liability under the guarantee should continue.[200] The creditor then relies on this assurance by releasing the principal debtor.

6–87 If the guarantor's consent to the continuation of liability is given after the creditor's release of the debtor, it has been said that the guarantor's liability will still revive if the guarantor makes a new promise to perform the obligation with knowledge of the release.[201] It is irrelevant that the promise is not supported by consideration.[202] This conclusion is based on authorities which have held that, where the creditor varies the principal contract by giving time to the principal[203] or impairs a security given by the principal[204] the discharge of the guarantor, which would be the normal result of these actions, can be prevented by the subsequent consent of the guarantor. The basis of the continuation of the guarantor's liability in these situations is that the guarantor's subsequent promise "is valid, not as the constitution of a new, but the revival of an old debt"[205] But a giving of time or the impairment of a security given by the principal is unlike a release because those actions do not extinguish the debt. The guarantor is discharged because the guarantor's position has been prejudiced.[206] The reason for the continuation of the guarantor's liability based on a "revival of an old debt" is, therefore, less readily applied where the debt has been effectively extinguished by the release. Any argument that the subsequent consent is binding because it operates as an estoppel[207] may also fail because the release has already been given and the creditor could not therefore be said to be acting upon the guarantor's promise to remain liable.[208] But the position may be otherwise if there is some other evidence of reliance.

---

[200] A suggestion first made in G. L. Williams. *Joint Obligations* (1949), p.128, para.60.
[201] *Bogart v Robertson* (1905) 11 O.L.R. 295 at 306.
[202] *Mayhew v Crickett* (1818) 2 Swan 185; 36 E.R. 585. If there is consideration, this would constitute a new agreement, although if not in writing, it would be unenforceable: see above, Ch. 3.
[203] *Smith v Winter* (1838) 4 M. & W. 454; 150 E.R. 1507; *Phillips v Foxall* (1872) L.R. 7 Q.B. 666 at 676–677 per Quain J.
[204] *Mayhew v Crickett* (1818) 2 Swan. 185; 36 E.R. 585.
[205] *Mayhew* (1818) 2 Swan. 185 at 191; 36 E.R. 585 at 587. It has been said that an analogous situation exists when a promise or acknowledgement may revive a debt already barred by the Statute of Limitations: *Wilson v Cristall* (1922) 63 D.L.R. 187 at 192 and see below, para.7–65, where consent to a variation is discussed.
[206] See the topic of discharge on these bases discussed below, paras 7–72 and 8–46.
[207] Estoppel has also been suggested as a basis for the continued liability of the guarantor where consent is given subsequent to a variation of the principal contract: see below, para.7–65.
[208] This is one of the requirements of an estoppel: see generally, *Chitty on Contracts* (30th edn, 2008) para. 3–093.

### (v) Partial release

The creditor, instead of releasing the principal debtor absolutely, may release the principal debtor from only a portion of the debt, making it clear that liability remains for the balance. In this situation, it is considered that the guarantor will only be partially released by an amount corresponding to the extent of the release of the principal.[209] Although the agreement of release constitutes a variation of the principal contract, such a variation does not lead to an absolute discharge of the guarantor because it is a variation which is obviously for the benefit of the guarantor, as it reduces the extent of the guarantor's liability.[210] The position would be different if the agreement of release with the principal in some way altered the nature of the guaranteed obligation, as, for example, where a mortgagor is released from an obligation to pay a portion of the mortgage debt *and* is also released from the convenant to insure.[211] The guarantor would then be fully discharged because the variation of the principal contract would not be one which was obviously beneficial to the guarantor.[212]

6–88

A clause in the guarantee will usually provide for the continuation of the guarantor's total liability despite a release of the principal. Ideally, such a clause should specifically refer to a "*partial* or absolute" release if the guarantor's liability is to be preserved in the event of a partial release.

6–89

### (vi) The effect of the discharge of the principal in bankruptcy or in liquidation

Section 281(7) of the Insolvency Act 1986 expressly provides that discharge of the principal from his bankruptcy does not release any person from liability as surety for the principal or a person in the nature of such a surety. The reference to "in the nature of such a surety" probably encompasses the situation where there is no promise to be personally liable for the debt of another, but the "guarantor" simply provides a security.[213]

6–90

Similarly where a company is dissolved the guarantor remains liable for the obligations of the company he has guaranteed which are outstanding at

6–91

---

[209] See, in support, the Australian case of *Hancock v Williams* (1942) 42 S.R. (N.S.W.) 252. *Cf.* the view of the South Australia Law Reform Commission. *Report Relating to the Reform of the Law of Suretyship*. Report No.39 (1977), para. 6. The Report quotes *Croydon Gas Co v Dickinson* (1876) 2 C.P.D. 46 at 51 as authority, but that case does not appear to support the Report's conclusion.
[210] *Croydon Gas Co v Dickinson* (1876) 2 C.P.D. 46 at 51 *per* Amphlett J.A. As to the effect of a variation of the principal contract, see below, Ch. 7.
[211] This example is given by Jordan C.J. in *Hancock v Williams* (1942) 42 S.R. (NSW) 252 at 257.
[212] See below, paras 7–01 to 7–04.
[213] See *Bank of New Zealand v Baker* [1926] N.Z.L.R. 462. Apart from the operation of the insolvency legislation it has been held that the creditor may take steps to bankrupt the principal without discharging the guarantor: *Browne v Carr* (1831) 7 Bing. 508: 131 E.R. 197; *Rainbow v Juggins* (1880) 5 Q.B.D. 422.