# EXHIBIT 78

# RAINEY BROTHERS LTD v KEARNEY

In the Court of Appeal before Hutton LCJ and Kelly LJ: 21,30 March 1990.

*Landlord and tenant – Breach of covenant – Rent – Lease terminated – Landlord relet premises at a lower rent – Whether loss on rental after termination of lease recoverable as damages.*

Under a lease dated 12 October 1981, the respondent demised to Hairite Ltd premises at Port Road, Letterkenny, Co Donegal, for a term of twenty years from 1 May 1981 at an annual rent of £4,160. The lease contained a normal proviso for re-entry for non-payment of rent or for breach of covenant by the lessee and stated further that upon re-entry the "demise should be absolutely determined but without prejudice to any claim by the Lessor in respect of any antecedent breach of any covenant ...". On 9 December 1982, Hairite Ltd assigned the premises to Morris Wilson for the residue of the term subject to the rents and covenants contained in the lease. Mr Wilson died on 8 August 1985 and the appellant became his personal representative. No rent was paid from 1 July 1985 onwards and the respondent re-entered the premises on 19 May 1986 and determined the lease.

The respondent subsequently relet the premises but at an annual rent which was IR£1,340 less than the rent which had been payable under the original lease. The respondent claimed, inter alia, damages for loss of rent between the termination of the lease and the date of the granting of the new lease and for the loss arising thereafter by reason of the difference between the rent under the original lease and the rent under the new lease. McCollum J found in favour of the respondent in respect of both claims and the appellant appealed.

*Held,* dismissing the appeal, that a lessor who terminates a lease for non-payment of rent may recover damages to compensate him for the loss of rent which would have been payable under the lease.

The following cases are referred to in the judgment:

*Gray v Owen* [1910] 1 KB 622
*Hartshorne v Watson* (1838) 4 Bing NC 178
*Marshall v Mackintosh* (1898) 78 LT 750
*William v Lewis* [1915] 3 KB 493

APPEAL by Brendan Kearney as personal representative of Morris Wilson against an award of damages by McCollum J in favour of Rainey Brothers Ltd. The facts appear sufficiently in the judgment.

*CJ Keenan* (instructed by *Doris & MacMahon*) for the respondent/ plaintiff.

*JO McNulty QC* and *DJC Mulrine* (instructed by *Brendan Kearney)* for the appellant/defendant.

*Cur adv vult*

HUTTON LCJ. This is an appeal against part of the decision of McCollum J in which he awarded damages against the appellant. The claim by the respondent against the appellant arose in the following way.

By Indenture of Lease dated 12 October 1981 the respondent demised to Hairite Ltd premises at Port Road, Letterkenny, County Donegal, for the term of 20 years from 1 May 1981 at the yearly rent of £4,160. The lease contained a normal proviso for re-entry for non-payment of rent or for breach of covenant by the lessee and the proviso further stated that upon re-entry:

"this demise should be absolutely determined but without any prejudice to any claim by the Lessor in respect of any antecedent breach of any covenant or provision herein contained."

By Indenture of Assignment dated 9 December 1982 Hairite Ltd assigned the premises to Morris Wilson for the residue of the term of twenty years subject to the rent and covenants contained in the Lease.

Mr Morris Wilson died on 8 August 1985 and the appellant, Mr Brendan Kearney, became his personal representative.

No rent was paid under the lease in respect of the premises from 1 July 1985 onwards and the respondent re-entered the premises on 19 May 1986 for non-payment of rent and determined the demise.

The respondent subsequently relet the premises but at an annual rent which was IR£1,340 less than the rent which had been payable under the lease of 12 October 1981. The respondent then brought an action against the appellant in respect of rent due up to the date of re-entry on 19 May 1986 and in respect of money which it had to expend to repair the premises, and McCollum J awarded the respondent sums under these two heads. There is no appeal against these parts of his judgment. In addition the respondent claimed damages for the loss of rent between the termination of the lease on 19 May 1986 and the date of the granting of the new lease and for the loss arising thereafter by reason of the difference of IR£1,340 per annum between the rent under the former lease and the rent under the new lease. At the trial the appellant advanced no submission that the respondent had been guilty of delay in reletting the premises or that it had failed to mitigate its damages. McCollum J awarded a sum to the respondent in respect of the claim for loss of rent and reduction in rent after the termination of the lease. The appellant now appeals against this part of the judgment.

The submission advanced on behalf of the appellant by Mr McNulty was that where a lessee was in breach of covenant by failing to pay rent and the lessor terminated the lease by re-entry, the lessor could not recover damages to compensate him for the loss he sustained where he was unable to relet the premises at a rent equal to, or higher than, the rent payable under the former lease. Mr McNulty submitted that the lessor had to make an election: he could decide not to terminate the lease so that the lease would continue, and this would enable the lessor to go on suing the lessee for the rent as it became payable during the term, or else the lessor could decide to terminate the lease and regain possession, but having terminated the lease he would have no right to claim compensation for any loss he might suffer by reason of the non-receipt of the rent payable under the lease.

Mr McNulty was unable to cite any authority to support his submission. I consider that his submission is unsound in law and that the authorities establish that the lessor who terminates a lease for non-payment of rent can

recover damages to compensate him for the loss of the rent which would have been payable under the lease. In *Marshall v Mackintosh* (1898) 78 LT 750 the headnote reads:

> "By a building agreement dated the 10th June 1896, the defendant agreed with the plaintiff to pull down and re-erect Holloway's Hotel, Doverstreet, in carcase before the 25th Dec. 1896, and thereupon to take a lease of it from the plaintiff for eighty years from the 24th June 1896 at a peppercorn rent for the first year, and at a rent of £1100 for the second and every subsequent year of the term. The defendant undertook to finish his part of the agreement by the 25th Dec. 1896. ... The defendant went into possession on the 10th June 1896, but beyond pulling down about £200 worth of materials did nothing, and on the 19th Jan. 1897 the plaintiff re-entered.
>
> The defendant contended that the effect of these two clauses was to limit the plaintiff to such compensation as he could get by re-entry and taking possession of the materials on the premises, and that he could recover no damages. The plaintiff on re-entry could only relet from June 1899 at £900 a year rent.
>
> Held, that, in addition to the re-entry, the plaintiff could recover as damages the loss of two years rent at £1100 and the loss of £200 a year at twenty-five years' purchase, viz £5000, in all £7200."

At 751 Kennedy J stated:

> "Finding nothing beyond the removal of the £200 worth of material being done, and no prospect of anything being further done by the defendant, the plaintiff re-entered on the 19th Jan 1897. There can be no question of his right under the agreement to do so, and apart from the express terms of that document, I think that upon the facts in evidence the defendant had broken the agreement as he admits he did, and that the breach was of such a nature that the plaintiff would be reasonably justified in treating the defendant's conduct as showing an intimation on the defendant's part, not further to perform the contract. It is clear, in my view, that the mere fact of re-entry for a forfeiture, does not of itself exonerate the defendant from the liability to damages for breach of contract prior to re-entry. If authority were needed *Hartshorne v. Watson* (4 Bing. N. C. 178), seems to be one on the point. I do not think Mr Scott contended for that view, but he did contend for the defendant that the effect of clauses 2 and 11 do in this contract limit the plaintiff to such compensation as might be afforded to him by taking possession of the materials, plant, and buildings on the premises at the time of re-entry without any allowance or compensation to the defendant, and that the plaintiff could not claim damages beyond that. I cannot accept that view, for that would be to read into these clauses 'as and for liquidated damages' or words to the same effect, and this, I conceive I am not entitled to do. It is common enough to find the insertion of such words when there was an intention of the parties so to limit the liability for a breach of the contract. ... It appears to me that in absence of some such express words as 'as and for liquidated damages,' I cannot construe

clauses 2 and 11 as depriving the landowner of the right to prove, if he can, actual damages from the defendant's failure to perform the contract."

Mr McNulty submitted that *Marshall v Mackintosh* was distinguishable from the present case because in *Marshall v Mackintosh* there was an agreement to take a lease whereas in the present case there was a lease. But in my opinion that distinction is of no substance and does not affect the principle. If a landowner can recover damages for loss of rent on termination of an agreement for a lease, I consider that a landowner can also recover damages for loss of rent on termination of a lease.

In *Gray v Owen* [1910] 1 KB 622 the headnote reads:

"The plaintiff let a house to the defendant, a naval officer, for a term of years subject to a proviso that 'should the tenant be ordered away from Portsmouth by the Admiralty he may determine this agreement by giving to the landlord one quarter's notice in writing.' During the continuance of the tenancy the defendant received an order from the Admiralty to join a ship for foreign service, but shortly afterwards that order was cancelled. Subsequently to the cancellation the defendant, purporting to act under the terms of the agreement and in the belief that he was thereby entitled to do so, gave the plaintiff a quarter's notice of his intention to give up possession. The plaintiff, in the belief that the defendant was at that time under orders from the Admiralty to leave, resumed possession of the house on the expiry of the notice and advertised it for sale. Subsequently the plaintiff discovered the true facts, and brought the action to recover the rent which had accrued in the interval:–

*Held*, (1.) that the defendant was under the circumstances not entitled to give the notice to terminate the tenancy; (2.) that, as the non-disclosure of the cancellation of the Admiralty's order was not fraudulent, the fact that the plaintiff accepted the notice under a mistake induced by the act of the defendant did not prevent that acceptance from working a surrender by operation of law; but (3.) that the giving of the notice was a breach of an implied contract in respect of which the plaintiff was entitled to recover the amount of the rent due as damages."

Bucknill J stated at 626:

"We have already expressed the opinion that, as the defendant in giving the notice had no intention to deceive, the fact of the plaintiff having been misled by the defendant's act did not prevent his acceptance of the surrender from operating as a determination of the tenancy, and consequently the defendant is not liable for rent as though the tenancy were subsisting. But the acceptance of the surrender does not preclude the plaintiff from suing for damages for the breach by the defendant of the contract. It did not destroy the existing cause of action. If the plaintiff had succeeded in letting the house at the same or a higher rent, of course he would have only been entitled to nominal damages, but as he did not succeed in letting or selling it he is entitled to recover the amount of the rent which he has lost."

In *William v Lewis* [1915] 3 KB 493 a landlord, after the determination of the tenancy, sued the tenant for damages for breach of the implied obligation arising out of the tenancy (see 494). At 497 Bray J stated:

> "As the evidence proved no custom as to the measure of damages, the usual rule of law must, in my opinion, be followed in respect of all the breaches, namely, that it is the injury to the reversion occasioned by the breaches. In practice in such a case as the present it is the diminution in the rent that the landlord will get on reletting, or the allowance he will have to make to the incoming tenant."

Accordingly I would dismiss this appeal.

KELLY LJ. I concur.

*Appeal dismissed*
EJDMcB