# EXHIBIT 81

APPEARANCES: *Patrick Bennett (Vizard, Oldham, Crowder & Cash,* for *Wm. Furness & Son,* Manchester); *Norman Francis (Theodore Goddard & Co.,* for *Sydney Tapper Jones,* Cardiff).

Reported by L. NORMAN WILLIAMS, Esq., Barrister-at-Law

### Hire Purchase: 'Indemnity Form': Whether Indemnity or Guarantee: Test

*STADIUM FINANCE CO., LTD. *v.* HELM AND ANOTHER

C.A.—Lord Denning, M.R., Davies and Russell, L.JJ.

25th May, 1965

Appeal from Slough County Court.

On 17th October, 1962, the plaintiffs, a hire-purchase finance company, let a second-hand motor car on hire purchase to a hirer, then an infant aged nineteen, on terms that he paid £30 down and £4 17s. 7d. a month. His mother signed a document described as an 'indemnity form' by which she undertook as follows: '(1) I will upon demand pay to you such sum or sums of money as may at any time or from time to time have become payable by the customer but be unpaid by him. (2) I will indemnify and keep indemnified you your successors and assigns from all loss or damage suffered and all claims costs and expenses made against or incurred by you in any way arising out of or consequent upon your having entered into such agreement, whether arising out of a breach by the customer of any of the terms and conditions thereof or otherwise including any such loss or damage, etc., as aforesaid as may arise from the said agreement being (for whatever reason) unenforceable against the customer. (3) No relaxation or indulgence which you may from time to time or at any time extend to the customer shall in any way prejudice or act as a waiver of your strict rights against me hereunder'. The hirer paid the first instalment, but shortly after gave notice to terminate the agreement and returned the car. The finance company claimed against the hirer and his mother the amount to make the sum up to one-half of the hire-purchase price, i.e., £18 7s. 4d. At the hearing the finance company learned for the first time that the hirer was an infant but they pursued the claim against his mother, claiming that the document which she had signed was an indemnity. Judge Duveen held that it was a guarantee and dismissed the claim. The finance company appealed.

LORD DENNING, M.R., said that the test was whether, as between two people, one of the two was under a primary liability to perform the obligation, while the other's obligation was secondary only. If so, it was a contract of guarantee and not of indemnity. One always looked to see if there was a primary and a secondary obligation, or two primary obligations. Clause (1) of this document was a contract of guarantee. It was something which the customer ought to pay and had not paid. Clause (3) was also applicable to a guarantee. But the company relied on cl. (2) as an indemnity. His lordship did not think that these cases could be decided on a literal construction of these documents. Reading cl. (2) in relation to cll. (1) and (3), the whole burden of this document was that it was a guarantee, to come into force if the principal debtor defaulted and to the extent of his default. Indeed the very claim was made under cl. (1) for the amount not paid which the hirer should have paid. This being a guarantee as a whole, it was not enforceable against the guarantor, and the principal debtor was not liable because he was an infant.

DAVIES, L.J., concurred.

RUSSELL, L.J., also concurring, said that if finance companies wished to make sure that a primary liability was put on others, particularly to the full limit of the hire-purchase price, they must find some other and clearer form, bearing in mind that most people were not prepared to subject themselves to the nuisance of primary liability, and were not prepared to pay what the contract did not oblige the hirer himself to pay. Appeal dismissed.

APPEARANCES: *M. Anwyl-Davies (A. E. Samuels & Co.).*

Reported by Miss M. M. HILL, Barrister-at-Law

### CRIME

### Criminal Law: Sentence: Institutional Upbringing of Defendant: Opportunity of a Home: Whether Borstal Appropriate

*R. *v.* TREGUNNA

C.C.A.—Sachs, Thomson and Browne, JJ.

10th May, 1965

Application for leave to appeal against sentence.

The applicant, who had numerous previous convictions, pleaded guilty to larceny and breaking and entering and was sentenced to borstal training. He had no knowledge of his parents, having lived in institutions for fifteen years. He applied for leave to appeal against sentence and at the hearing of the application a probation officer gave evidence that the applicant was engaged to a girl whose mother was prepared to assist them financially when they married.

SACHS, J., said that the applicant had spent some seven months in custody and had learned a lesson from it. From the evidence of the probation officer before the court he could, for the first time in his life, have the opportunity of being received into a home. The original sentence was not wrong in principle but, bearing in mind the facts, the court was prepared to substitute a sentence of probation for three years. Application allowed.

APPEARANCES: *Anthony Scrivener (Kingsley, Napley & Co.).*

Reported by WILLIAM PEPPER, Esq., Barrister-at-Law

### Criminal Law: Larceny: Larceny as a Bailee: Whether Finder a Bailee

THOMPSON *v.* NIXON

Q.B.D.—Lord Parker, C.J., Sachs and Browne, JJ.

14th May, 1965

Case stated by Cumberland Quarter Sessions.

The defendant found a large paper bag lying by the roadside. He stopped his car, got out and examined the bag. It contained rabbit feeding pellets worth 17s. 6d. He picked it up and drove off with it. At the time when he took it he believed that the owner could be discovered by taking reasonable steps. He was convicted by justices of larceny as a bailee of the pellets and appealed to quarter sessions. Quarter sessions found that some time after he had taken the bag, but they could not say how long after, the defendant had formed the intention of keeping the pellets and his intention had been fraudulent and without a claim of right. They dismissed the appeal and the defendant appealed.

SACHS, J., said that if the defendant was not the bailee of the rabbit pellets he was entitled to be acquitted since, except in the case of a bailee, the intention to steal had to be formed at the time of the taking. The issue was whether the word bailee included all those cases in which a man had those special rights and duties which arose when he was not the legal owner of goods or whether it only referred to the limited class of persons who had received goods from another person with an express or implied condition attached. In Halsbury's Laws of England, 3rd ed., vol. 2, at p. 99, it was stated that, although there was no obligation on a finder to take charge of a lost chattel, if he did so he constituted himself what in fact amounted to a bailee. Was that, however, sufficient to make him a bailee within the meaning