# EXHIBIT  83

## WALLS v. ATCHESON.

1826.
Monday,
April 24th.

THIS was an action of *assumpsit*, for use and occupation. The cause was tried before Lord Chief Justice *Best*, at the Sittings at *Westminster*, in the present Term.

The plaintiff, a widow, let to the defendant part of a furnished house in *Manchester Square*, at the rent of sixty-five guineas, for one year certain, from the 14th of *September*, 1824. The defendant quitted at the end of the first quarter, *viz.* on the 14th *December*, paying rent up to that day. About three weeks afterwards, the plaintiff let the apartments to another person, at the rent of one guinea *per* week. At the expiration of the second quarter, the plaintiff sent in an account to the defendant, charging him for a quarter's rent according to the terms of the original taking, deducting the sums received from the person to whom she had re-let the apartments, and making the defendant debtor to her for the sum of 7*l*. 5*s*. 0*d*.; which sum the defendant paid. The second tenant quitted in the beginning of *July* 1825, from which time, until the 14th of *December* following, the apartments remained vacant. The plaintiff accordingly brought this action, to recover from the defendant, 21*l*. 0*s*. 6*d*., the balance of rent due to her from him, by the terms of the original letting.

His Lordship, being of opinion, that, by letting the apartments to another, the plaintiff had rescinded the previous contract with the defendant, directed a nonsuit.

Mr. Serjeant *Vaughan* now applied for a rule *nisi*, that the nonsuit might be set aside and a new trial had.—The defendant is not discharged from the liability imposed upon him by the terms of his contract. Having taken the premises for a year certain, he could not quit without the

*The defendant took premises for a year certain, but quitted at the end of the first quarter. The plaintiff then let the premises, for a portion of the remaining three quarters, to another tenant, at a less rent; and afterwards sued the defendant for the difference:—Held, that, by re-letting the premises, the plaintiff had assented to the determination of the original tenancy, and dispensed with the necessity of a legal surrender.*

380 CASES IN EASTER TERM,

1826.

WALLS
v.
ATCHESON.

assent of the landlady, or a legal surrender. Here, there was no evidence of either. The plaintiff did not release the defendant, by the subsequent letting; she let the apartments on his account: and, to shew a valid surrender by operation of law, it must, according to the statute of frauds, appear in writing. In *Redpath* v. *Roberts* (a), it was held, that, in *assumpsit* for use and occupation of apartments which the defendant had quitted without giving notice, the fact of the plaintiff's having put up a bill to let them, was no bar to the action. Lord *Kenyon* there said—" that it was for the benefit of the defendant that the apartments should be let, nor would he infer from the circumstance of the party's endeavouring to let them, that the contract was put an end to; that there must be other circumstances to shew it, and not an act of so equivocal a kind; and that, as the plaintiff had proved the taking of the premises, and the payment of the rent, it was incumbent on the defendant to prove that the tenancy was put an end to, by express evidence." In *Mollett* v. *Brayne* (b), it was held, that a tenancy from year to year created by parol, is not determined by a parol licence from the landlord to the tenant, to quit in the middle of a quarter, and the tenant's quitting the premises accordingly; and in *Doe* d. *Read* and Another v. *Ridout* (c), Mr. Justice *Chambre* held, that a tenancy from year to year cannot be determined unless there be either a legal notice to quit, or a surrender in writing. In the present case, it is perfectly clear that the contract was not rescinded. The defendant was still held liable, notwithstanding the subsequent demise. There was nothing to shew a mutual assent to the determination of the tenancy.

Lord Chief Justice BEST.—By her own act, the plain-

(a) 3 Esp. Rep. 225.    (b) 2 Camp. 103.    (c) 5 Taunt. 519.

IN THE SEVENTH YEAR OF GEO. IV. 381

1826.

WALLS
v.
ATCHESON.

tiff prevented the defendant from occupying these premises. She let them to another tenant. Can a landlord have two tenants, and be receiving rent from one, and at the same time holding the other liable? The case of *Mollett* v. *Brayne* is altogether distinguishable from the present. In *Whitehead* v. *Clifford* (a), it was held, that, if a landlord, in the middle of a quarter, accept from his tenant the key of the house demised, under a parol agreement, that, upon her then giving up the possession, the rent shall cease, and she never afterwards occupies the premises, he cannot recover, in an action for the use and occupation of the house, for the time subsequent to his accepting the key. Lord Chief Justice *Gibbs* there said: "In *Mollett* v. *Brayne*, both parties did not act on the parol notice to quit, but the tenant only. The present action can never succeed. The action for use and occupation depends, either upon actual occupation, or upon an occupation which the defendant might have had, if she had not voluntarily abstained from it. Here, the plaintiff himself takes possession of the house, and makes the profit of the premises; and it was therefore impossible for the defendant, during the same time, to have used and occupied the premises, if she would." I think both law and justice are with the defendant.

Mr. Justice PARK.—I am of opinion that my Lord Chief Justice properly nonsuited the plaintiff; and that there is no colour for calling upon us to disturb that nonsuit. The case of *Mollett* v. *Brayne* is very different from the present: there, the tenant had a subsisting term, which could not be determined by a mere parol surrender. Here, the plaintiff, by her own act, rescinded the contract with the defendant, and dispensed with the necessity of a surrender. In *Redpath* v. *Roberts*, the landlord had only offer-

(a) 5 Taunt. 518.

1826.

WALLS
v.
ATCHESON.

ed to let the premises, but had not in fact let them: thus there was nothing to obstruct the defendant's occupation of them, had he been so minded. In *Lloyd* v. *Crispe* (a), the lessor having, by receiving rent from him, assented to the occupation of an assignee, he was held, by Sir *James Mansfield*, to have waived the necessity of a licence for the subsequent assignment, notwithstanding a covenant in the lease, that the premises should not be assigned without the licence of the lessor. In *Whitehead* v. *Clifford*, the plaintiff, the landlord, had accepted the key, and thus the tenant was prevented from occupying the house. So, here, the conduct of the plaintiff in re-letting the apartments, signified as complete an acquiescence in the tenancy being determined, as could be conveyed by the acceptance of the key.

Mr. Justice BURROUGH.—If the tenancy on the part of the defendant in this case were to be considered a continuing tenancy after the period at which he ceased to occupy the premises, the letting of them to another person was, on the part of the plaintiff, a tortious act; it was in the nature of an eviction. I think the case discloses abundant evidence that the contract was put an end to with the assent of the plaintiff herself.

Mr. Justice GASELEE.—If the plaintiff had given the defendant notice, that, if he would not occupy the apartments himself, she would let them to another tenant, on his account, the case would have been different. Under the circumstances, I see no reason for disturbing the nonsuit.

Rule refused.

(a) 5 Taunt. 257.