**Hearing Date: June 19, 2014 at 10:00 a.m. (Eastern Time)**

Allan S. Brilliant
Shmuel Vasser
Stephen M. Wolpert
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Stonehill Institutional Partners, L.P.*
*and Stonehill Offshore Partners Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------x | | Chapter 11 |
| In re: | : | |
| | : | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| ------------------------------------------------------------x | | |

### REPLY TO PLAN ADMINISTRATOR'S OBJECTION TO STONEHILL'S MOTION TO RE-FILE PROOFS OF CLAIM TO FIX PREVIOUSLY UNLIQUIDATED CLAIM AMOUNTS OR ALTERNATIVELY FOR LEAVE TO FILE AMENDED CLAIMS

19383466.16

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ................................................................................................... 1

Argument ........................................................................................................................ 5

    A.    Fixing The Amount Of The Diminution Claims  Is Not An Amendment ...................... 5

    B.    Stonehill Meets the Standard for Amendment of  Claims ................................................ 7

        i.    The Diminution Claims Relate Back to the Original Proofs of Claim ................... 8

        ii.    Equity Favors Allowing Amendment ................................................................... 13

    C.    Stonehill Is Not Seeking Double Recovery ................................................................. 18

# TABLE OF AUTHORITIES

CASES

Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC
    2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) ........................................................................16

Aristeia Capital, L.L.C. v. Calpine Corp. (In re Calpine Corp.)
    No. 05-60200, 2007 WL 4326738 (S.D.N.Y. Nov. 21, 2007)..................................................9

Associated Container Trans. (Austl.) Ltd. v. Black & Geddes, Inc. (In re Black &
    Geddes, Inc.)
    58 B.R. 547 (S.D.N.Y. 1983).................................................................................................13

Colucci v. Beth Israel Med. Center
    531 Fed.Appx. 118 (2d Cir. 2013)..........................................................................................10

DiGirolamo v. United States
    279 Fed.Appx. 37 (2d Cir. 2008)............................................................................................10

Feldberg v. Queechee Lakes Corp.
    463 F.3d 195 (2d Cir. 2006)....................................................................................................10

Fisher v. Outlet Co. (In re Denby Stores, Inc.)
    86 B.R. 768 (Bankr. S.D.N.Y. 1988)......................................................................................13

Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)
    62 F.3d 730 (5th Cir. 1995) ....................................................................................................14

In re AM Int'l
    67 B.R. 79 (N.D. Ill. 1986) .....................................................................................................12

In re Best Payphones, Inc.
    No. 01-15742, 2007 WL 1388103 (Bankr. S.D.N.Y. May 8, 2007) ........................................5

In re Drexel Burnham Lambert Group Inc.
    151 B.R. 684 (Bankr. S.D.N.Y. 1993).......................................................................12, 16, 17

In re Integrated Res., Inc.
    157 B.R. 66 (Bankr. S.D.N.Y. 1993).....................................................................................7, 8

In re Lehman Bros. Holdings Inc.
    433 B.R. 113 (Bankr. S.D.N.Y. 2010)..............................................................................15, 16

In re Manville Forest Prod. Corp.
    89 B.R. 358 (Bankr. S.D.N.Y. 1988)......................................................................................12

In re McLean Industries, Inc.
    121 B.R. 704 (Bankr. S.D.N.Y. 1990) ......................................................................................8

In re O'Brian Envtl. Energy, Inc.
 188 F.3d 116 (3d Cir. 1999)..................................................................................16

In re Pearson
 773 F.2d 751 (6th Cir. 1985) ...................................................................................5

In re PT-1 Commc'ns Inc.
 292 B.R. 482 (Bankr. E.D.N.Y. 2003)....................................................................12

In re Sneijder
 407 B.R. 46 (Bankr. S.D.N.Y. 2009) ............................................................. passim

In re Stavriotis
 977 F.2d 1202 (7th Cir. 1992) ...........................................................................16, 17

In re Washington
 420 B.R. 643 (Bankr. W.D. Pa. 2009) ......................................................................8

Midland Cogeneration Venture v. Enron Corp. (In re Enron)
 419 F.3d 115 (2d Cir. 2005)...............................................................7, 13, 14, 15

Toyota Motor Credit Corp. v. Rodriguez
 No. 2:10-cv-00057, 2010 WL 1838286 (Bankr. M.D. Fla. May 3, 2010).............................12

United States v. Kolstad (In re Kolstad)
 928 F.2d 171 (5th Cir. 1991) ..................................................................................12

Wall Street Plaza LLC v. JSJF Corp. (In re JSJF Corp.),
 344 B.R. 94 (9th Cir. BAP 2006)............................................................................15

**STATUTES**

11 U.S.C. § 101 ........................................................................................................12

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

 Stonehill Institutional Partners, L.P. ("Stonehill Institutional") and Stonehill Offshore

Partners Limited ("Stonehill Offshore" and, together with Stonehill Institutional, "Stonehill"),

through its undersigned counsel, hereby file this reply (the "Reply") to the objection [ECF No.

44249] (the "Objection") of Lehman Brothers Holdings Inc., as Plan Administrator (the "Plan

Administrator") to Stonehill's motion [ECF No. 43988] (the "Motion")[1] for an order authorizing

Stonehill to re-file (the "Re-Filed Proofs of Claim") certain timely filed proofs of claim (the

"Original Proofs of Claim") to fix the amounts of claims previously asserted in unliquidated

amounts in the Original Proofs of Claim, and alternatively, to amend the Original Proofs of

Claim.  In support of the Reply, Stonehill respectfully states as follows:

### Preliminary Statement

 1. Fixing the amount of an unliquidated, timely-filed claim and providing additional

support for such claim does not require Court approval.  Moreover, amendments of timely filed

claims are generally freely allowed.  Unable to overcome these obstacles, the Plan Administrator

improperly and inaccurately attempts to characterize the Re-Filed Proofs of Claims as "new

claims" and engages in a misguided attempt to identify each and every fact asserted in the Re-

Filed Proofs of Claim that is not in the Original Proofs of Claim.  As is shown in the Motion and

herein, Stonehill does not assert any "new claims" but instead merely fixes, liquidates and

provides more details as to the unliquidated portions of the Original Proofs of Claims.  Calling

these additional facts "new claims" is nothing but misguided sophistry.

 2. Moreover, applicable case law makes clear that an original proof of claim does

not have to include every single element, but can be freely supplemented at or before the time of

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

  1

objections.  The standard is not *perfect* notice; rather it is *reasonable* notice of the type, nature, and amount of the claim.

3.      The Original Proofs of Claim contain, among others, the following facts and allegations:

- Stonehill and each of the Lehman Entities were party to the PB Agreement. Attachment, ¶ 3.

- Prior to the filing of these chapter 11 cases, LBI was Stonehill's sole prime broker pursuant to the PB Agreement.  Attachment, ¶ 4.

- As Stonehill's sole prime broker, LBI had "custody of a substantial portion of Stonehill's assets, including cash and securities."  Attachment, ¶ 4.

- LBI was "a regulated broker dealer and by virtue of course of conduct among the parties, industry practice and custom, and an implied duty of good faith and fair dealing … [t]he failure of LBI to return Claimant's cash and securities … constituted a breach of the PB Agreement by the Debtor and the other Lehman Entities."  Attachment, ¶ 4.

- Due to certain fraudulent material misrepresentations by Lehman representatives, Stonehill was induced to delay termination of its prime brokerage relationship with LBI, including demanding the return of all of its securities in LBI's possession, until LBI's normal operations effectively ceased, and accordingly the Debtors are fully liable for **any and all amounts** owed in connection with the PB Agreement and the prime brokerage relationship.  Attachment, ¶¶ 8-13.

- "To the extent not set forth in this Claim, Claimant also makes claim for all direct, indirect, nominal or consequential damages … and other amounts owed or owing to it ... directly or indirectly related to the matters discussed in this Claim." Attachment, ¶ 18.

4.      In light of these allegations, the Plan Administrator's assertion that the Original Proofs of Claim provide no notice of the Diminution Claims, and its incessant characterization of the Diminution Claims as "new claims," is simply wrong.  The Original Proofs of Claim clearly manifest Stonehill's intention to hold the Debtors liable for (1) breach of the PB Agreement caused by LBI's failure to return any and all of its securities promptly in accordance with its responsibilities as a regulated broker-dealer (2) breach by all parties thereto, including the

Debtors, of the PB Agreement and the duty good faith and fair dealing as well as other causes of

action arising from the Lehman Entities' failure to return Stonehill's property, and (3) the

fraudulent misrepresentations that induced Stonehill to delay demanding the return of those

securities prior to Lehman's collapse, and for any and all damages directly or indirectly related to

such claims. Of course, the primary form of damages that a party may suffer from delayed

access to its own securities is a diminution in their value. But even if the Diminution Claims

were not sufficiently detailed in the Original Proofs of Claim, the Diminution Claims arise out of

the same transactions described therein and thus "relate back" to the detailed facts and

allegations in the Original Proofs of Claim, providing the Debtors with more than adequate

notice of the Diminution Claims such that an amendment is either unnecessary or appropriate.

5.     This is especially true here, where the estates and other creditors would not be

unduly prejudiced. With an excess of $899 billion in claims, it is not remotely credible that

Debtors would have administered the estates differently or proposed a different plan if Stonehill

had filed its claims as the Plan Administrator suggests it should have. In fact, the record is

absolutely clear that prior to the filing of the Motion, Stonehill's aggregate timely-filed claims

against the Debtors totaled over $800 million. Thus, until approximately one month ago, and,

importantly, when the Plan was confirmed, the expectation of the Debtors and other creditors

could only have been that Stonehill was asserting over $800 million in aggregate claims.

Moreover, until the hearing on the Plan Administrator's motion to reduce reserves, certain of the

Debtors held cash reserves aggregating in excess of $297 million on account of those claims.

See *Motion to Establish Single Reserve for Duplicative Claims* [ECF No. 42959] at ¶¶ 22-23.

Since Stonehill has drastically reduced its aggregate claim amount and the applicable reserves, it

has not unduly prejudiced the estates.

6.      Moreover, while the Plan Administrator attempts to latch on to fears of "opening of the floodgates," it has not offered any evidence establishing that an amendment of the Original Proofs of Claim in these unique circumstances will open the "floodgates."  Accordingly, no party will be harmed if the court grants the Motion, and the equities weigh squarely in favor of Stonehill.

7.      Much of the Plan Administrator's argument refers to case law denying claimant's requests to file late claims, thereby conflating the standard applied to late-filed claims with the standard applied to claim amendments.  Courts, however, have clearly delineated between the two, holding that whereas permission to file *late claims* will ordinarily be denied absent compelling reasons for allowance, *amendment of timely-filed claims* is to be freely allowed.

8.      The position advanced by the Plan Administrator is contrary to (1) the Bankruptcy Code, which expressly acknowledges that parties may file unliquidated claims, and (2) the authority in this district that parties should file unliquidated claims in order to avoid the need to seek court approval for amending their claims See In re Sneijder, 407 B.R. 46, 53 n. 10 (Bankr. S.D.N.Y. 2009).  The Plan Administrator seeks to have this Court adopt, as a rule, that unliquidated claims are effectively limited to the amount of the liquidated portion of the claim. Such a change in the law should be rejected.

9.      For all of the reasons stated in the Motion and herein, Stonehill has the right to liquidate its claim amount without amendment, and alternatively, meets the lenient standard for claims amendments.  The Plan Administrator has not shown otherwise.  Accordingly, Stonehill requests that the Court enter an order allowing it to file the Re-Filed Claims.

## Argument

**A.    Fixing The Amount Of The Diminution Claims
Is Not An Amendment**

10.    As this Court made clear in Best Payphones, the liquidation of an unliquidated

claim through litigation after a claims objection is **not** an amendment.  In re Best Payphones,

Inc., No. 01-15742, 2007 WL 1388103, *21 (Bankr. S.D.N.Y. May 8, 2007).  There, the Court

observed that the claimant "never filed an amended proof of claim for lost profits in a liquidated

amount," before unequivocally rejecting the debtor's "novel argument that the liquidation of a

claim through litigation constitutes amendment of that claim."  Id.   The Plan Administrator

latches on to the Court's discussion of the evidentiary burden resulting from the filing of claims

in unliquidated amounts, as opposed to liquidated claims, Id. at *21, and argues that, as a result

of such discussion, Best Payphones somehow supports its position.  See Objection, ¶ 18.  This

assertion—that Best Payphones stands for the exact opposite proposition from its unambiguous

holding—is simply wrong.

11.    As in Best Payphones, Stonehill stands ready to prove the validity and amount of

the unliquidated Diminution Claims[2] asserted in the Original Proofs of Claim after a proper

claims objection; and the filing of the Original Proofs of Claim gives it the right to do so.  If

---

[2]    The Plan Administrator disputes that Stonehill's claims were "unliquidated" because it assumes that the value
of the Diminution Claims were "easily ascertainable" at the time Stonehill filed the Original Proofs of Claim.
See Objection, ¶¶ 41-42.  The argument is irrelevant and misses the point as the Plan Administrator's remedy
was to object to the claim and force it to be liquidated.  But, in any event, most, if not all of the securities that
were eventually returned to Stonehill, however, were thinly-traded, if at all, making the market value of those
securities not easily ascertainable.  If the value of a house may give rise to an unliquidated claim as discussed in
Sneijder, this is clearly so for these securities. The Plan Administrator, however, has indicated in the Objection
(at 18 n.6) that it will dispute the valuation or methodology employed by Stonehill in calculating the Diminution
Claims, acknowledging that an evidentiary hearing with respect to the amount of those claims would be
required.  "The fact that evidence must be taken indicates that, until [a hearing on the merits], the claim was
unliquidated."  In re Pearson, 773 F.2d 751, 756 (6th Cir. 1985).

5

Stonehill were not allowed to do so, the purposes of allowing creditors to preserve their rights by filing unliquidated claims, articulated in Sneijder (discussed below), would be defeated.

12.     Stonehill's filing of claims that include liquidated and unliquidated portions followed the guidance given to the bankruptcy bar in In re Sneijder, 407 B.R. 46, 53 n.10 (Bankr. S.D.N.Y. 2009).  The Sneijder court stated that a secured creditor that is unsure of the amount of its deficiency claim should file an unliquidated unsecured claim in addition to its secured claim to "avoid the risk of having a motion to file an amended claim denied."  In re Sneijder, 407 B.R. at 53, n.10.  Thus, by filing an unliquidated claim, the secured creditor's right to prove its deficiency claim is preserved without having to attempt to later amend its secured claim. Stonehill did exactly that.[3]

13.     The Original Proofs of Claim, on their face, allege that (1) LBI held a substantial portion of Stonehill's assets, including both cash and securities, in its custody; (2) its failure to promptly return securities constituted a breach of the PB Agreement; (3) the fraudulent misrepresentations of Lehman executives caused Stonehill to delay the termination of its prime brokerage relationship with LBI, including the return of the substantial portion of Stonehill's securities and (4) all of the Debtors were, individually, liable for these claims.

14.     Further, the Original Proofs of Claim assert claims for "any and all amounts owed to [Stonehill] in connection with the PB Agreement or otherwise arising in connection with [Stonehill's] prime brokerage relationship with Lehman Brothers," and "direct, indirect, nominal or consequential damages … recoverable under the applicable agreement and/or applicable

---

[3]     The Plan Administrator's argument that Sneijder suggests that fixing the amount of a claim through litigation is an amendment because the Court held that the creditor "may file an amended claim," see Objection, ¶ 19, is misplaced.  The Court's holding that the secured creditor could amend its secured claim to assert an unsecured deficiency claim does not change the Court's statement that if the creditor had filed an unliquidated unsecured deficiency claim, the creditor would not need to seek to amend the secured claim in order to fix the amount of the deficiency claim.

law… directly or indirectly related to the matters discussed in [the Original Proof of Claim]."

See Attachment, ¶¶ 13, 18.  Thus, the Original Proofs of Claim include the Diminution Claims,

which are claims for damages resulting from the Debtors' liability for breach of the PB

Agreement and for damages resulting from LBI's failure to promptly return Stonehill's securities

upon demand after the Debtors fraudulently induced Stonehill to maintain its relationship until it

was too late.

15.    As the Diminution Claims have been asserted in the Original Proofs of Claim,

Stonehill has the right to fix the amount of those claims through litigation and the Court should

find that Stonehill's request to file the Re-Filed Claims to fix the Diminution Claim amounts is

not a request to file "new claims" nor to amend its timely filed claims, but merely to do what it

would otherwise have the right to do under Sneijder and in response to a claims objection.

**B.    Stonehill Meets the Standard for Amendment of
       Claims**

16.    Even if the Court views the relief requested in the Motion as a request to amend

the Original Proofs of Claim, the Court should grant that relief.  In attempting to characterize the

standard applied by courts to claims amendments as a stringent one, the Plan Administrator

ignores the well settled law, as well as the holdings of cases cited in its own Objection, that claim

amendments, in contrast to late-filed new claims, should be "freely allowed."  See Midland

Cogeneration Venture v. Enron Corp. (In re Enron), 419 F.3d 115, 134-35 (2d Cir. 2005)

("While belated *amendments* will ordinarily be 'freely allowed' where other parties will not be

prejudiced, belated *new* claims will ordinarily be denied") (emphasis in original); In re Integrated

Res., Inc., 157 B.R. 66, 69-70 (Bankr. S.D.N.Y. 1993) (stating that the decision to allow an

amendment "rests within the sound discretion of the bankruptcy judge" but that proper

amendments should be "freely allowed").

17.     Assuming that the Re-Filed Proofs of Claim are viewed as amendments, the Court should exercise its discretion to allow Stonehill to amend the Original Proofs of Claim, because the Diminution Claims, at the very least, relate back to the facts and allegations in the Original Proofs of Claim, and the equities favor amendment.  Thus, Stonehill has met the lenient standard for amendment.

i.     <u>The Diminution Claims Relate Back to the Original Proofs of Claim</u>

18.     Contrary to the Plan Administrator's assertion, courts, in this district and otherwise, have found that claim amendments relate back to the original claim if they arise out of the same "conduct, transaction or occurrence" described in the original claim.  <u>See</u> <u>In re Integrated Res., Inc.</u>, 157 B.R. at 71.  An "amendment that changes only the legal theory of the action or adds another claim arising out of the same transaction or occurrence will relate back." <u>Id</u>. at 72 (citing with approval 3 Moore, <u>Moore's Federal Practice</u> ¶ 15.15[3] at 15–148 (1992)); <u>In re McLean Industries, Inc.</u>, 121 B.R. 704, 709 (Bankr. S.D.N.Y. 1990) (permitting claimant to amend his claim for personal injury where the original claim provided "*reasonable notice* of the underlying facts" of the claim) (emphasis added).  "The standard for permitting amendments is that the claim gives Debtor notice of the transaction, *not that it perfectly defines the claim in the first instance* … Otherwise, there would be no need for amendment."  <u>In re Washington</u>, 420 B.R. 643, 646 (Bankr. W.D. Pa. 2009) (emphasis added).

19.     While acknowledging that claims may be amended when the original claim "put the debtor on reasonable and sufficient notice," Objection, ¶ 25, the Plan Administrator essentially ignores the content of the Original Proofs of Claims and inexplicably argues that the Debtors were not given proper notice of the Diminution Claim.  <u>See</u> Objection, ¶¶ 29-36.  The Plan Administrator essentially advocates a standard that requires *near-perfect* notice rather than *reasonable* notice.

8

20.      Here, the Diminution Claims unquestionably arise from the same conduct, transactions or occurrences described with particularity in the Original Proofs of Claim, which is all that is required for a finding of "relation back."  Even if, as the Plan Administrator suggests, the standard were more stringent (which it is not), the Original Proofs of Claim would still meet it, because they clearly assert claims for all damages for breach of the PB Agreement caused by the conduct and circumstance specifically described therein.

21.      The Plan Administrator's heavy reliance on <u>Aristeia Capital, L.L.C. v. Calpine Corp. (In re Calpine Corp.)</u>, No. 05-60200, 2007 WL 4326738 (S.D.N.Y. Nov. 21, 2007), in arguing that the Diminution Claims do not relate back to the Original Proofs of Claim, is misplaced.  <u>See</u> Objection, ¶ 31.  In <u>Calpine</u>, the court rejected the attempts of certain noteholders to amend proofs of claim to add claims for damages for breach of conversion rights under the relevant indentures.  The court so held because (1) the original proofs of claim "did not mention the Noteholders' conversion rights or any alleged breach of those rights," <u>Calpine</u>, 2007 WL 4326738 at *3, and (2) the catch-all provisions[4] in the original proofs of claim did not provide reasonable notice that the noteholders were asserting claims for breach of conversion rights because those claims were novel and substantively dissimilar from the claims for principal and interest asserted in the original claim.  <u>Id</u>. at *5.

22.      Here, the Original Proofs of Claim provide significant detail regarding Stonehill's rights that give rise to the Diminution Claims.  They begin by citing LBI's failure to return Stonehill's securities.  They then assert that such failure was both a breach of the PB Agreement

---

[4]      The catch all provision in <u>Calpine</u> was for "any and all other amounts due or to become due under the Indenture and the Notes, whether now due or hereafter arising, which amounts may, presently, be unliquidated or contingent, but may become fixed and liquidated in the future, including … compensatory, secondary and/or punitive damages."  <u>Calpine</u>, <u>id.</u>, at *2.

and a tort arising from the Debtors' fraudulent conduct that induced Stonehill to refrain from seeking the securities' return prior to Lehman's collapse.  <u>See</u> Attachment, ¶¶ 4, 12.

23.    In addition, damages for diminution in value are the primary damages that may be suffered by a party due to a prime broker's delay in the return of its securities upon demand, and the breach of contract and fraudulent inducement giving rise to those damages are explicitly stated in the Original Proofs of Claim.  Thus, unlike the catch-all in <u>Calpine</u>, the language asserting all "direct, indirect, nominal or consequential damages … to the extent recoverable under the applicable agreement and/or applicable law … directly or indirectly *related to the matters discussed*" in the Original Proof of Claim relates to the facts and allegations underlying the Diminution Claims, providing more than adequate notice of those claims.  Attachment, ¶ 18 (emphasis added).  Further, contrary to the Plan Administrator's suggestion, <u>see</u> Objection, ¶¶ 26, 32, Stonehill does not attempt to rely solely on a generic, boiler-plate reservation of the right to amend the claim, and thus the cases the Plan Administrator cites in support of such argument are inapposite.  Stonehill's claim and its reservation of rights is specific and narrowly tailored.

24.    The Plan Administrator further cites three Second Circuit authorities to support its argument that merely filing a "placeholder" is insufficient to preserve rights.  <u>See</u> Objection, ¶¶ 32-33.  First and foremost, as fully described in the Motion and herein, the unliquidated portions of Stonehill's claims were described in detail in the Original Proofs of Claims.  Referring to them as "placeholders" is inaccurate.  Second, these authorities do not involve bankruptcy cases or the filing of claims and thus, are wholly irrelevant.  Both <u>DiGirolamo v. United States</u>, 279 Fed.Appx. 37 (2d Cir. 2008) and <u>Feldberg v. Queechee Lakes Corp.</u>, 463 F.3d 195 (2d Cir. 2006), involved submissions that were admittedly "timely yet insufficient placeholder[s]," in lieu of proper Rule 59(e) motions.  <u>DiGirolamo</u>, 279 Fed.Appx. at 38; <u>Feldberg</u>, 463 F.3d at 197.

Colucci v. Beth Israel Med. Center, 531 Fed.Appx. 118 (2d Cir. 2013), did not involve a "placeholder" filing at all; it simply involved an untimely filing of a motion for relief from a final judgment under Rule 60. Id. at 119.

25.    The Plan Administrator also argues that the Diminution Claims cannot relate back to the Original Proofs of Claim because Stonehill included descriptions of the securities that were still held by LBI at the time of the filing of the Original Proofs of Claim, but did not include a description of the other securities that lost value before they were returned to Stonehill. See Objection, ¶ 44.  Nowhere in the Original Proofs of Claim does Stonehill state that the claims were limited only to a specific set of securities.  In fact, the Original Proofs of Claim allege that LBI, as Stonehill's prime broker, held a substantial portion of Stonehill's assets, including cash and securities at the time the SIPA proceeding commenced.  See Attachment, ¶ 4.

26.    The Original Proofs of Claim also allege that, in general, LBI's failure to return securities in accordance with its responsibilities as a regulated broker-dealer constituted a breach of the PB Agreement.  See id.  There is no language limiting that assertion to LBI's failure to return specific cash or specific securities, and thus the proper reading of that statement is that LBI's failure to promptly return **any and all** of the cash and securities in its custody breached the PB Agreement.  Stonehill's inclusion of detail regarding certain securities that were still held by LBI as of the filing of the Original Proofs of Claim does not limit the claims for breach to the failure to return those specific securities, and the Plan Administrator cites no case to the contrary.  Accordingly, the Original Proof of Claim put the Debtors on notice of potential claims with respect to **all** of the securities held by LBI, and the lack of a specific listing of each security held

in LBI custody at the time of its breach does not prevent the Diminution Claims from relating

back to the ample factual allegations in the Original Proofs of Claim.[5]

27.    The Plan Administrator's citation to <u>Toyota Motor Credit Corp. v. Rodriguez</u>, No.

2:10-cv-00057, 2010 WL 1838286 (Bankr. M.D. Fla. May 3, 2010), an irrelevant, out of district,

chapter 13 case, does not change this result.  There, the court found that a post-bar date

amendment to a claim that simply increases the amount of a claim *without providing any basis*

*for doing so* did not, as is permissible, "describe the claim with greater particularity."  <u>Id</u>. at *3.

Here, Stonehill seeks to *fix the amount of its claims*, is actually *reducing or "capping" the*

*aggregate amount of those claims* against the estates and *provides a more than adequate basis*

*for doing so*.  <u>Toyota</u> is simply inapplicable.

28.    Moreover, the Plan Administrator argues that the Re-Filed Proofs of Claim do not

"plead a new theory of recovery on the facts set forth in the original claim"—which the Plan

Administrator concedes is permissible—because it claims the theory of recovery is not based "on

---

[5]    The Plan Administrator attempts to construct a categorical rule that would reject any claim amendment that increases the amount of the claim on the theory that the original claim can never provide notice of the increased claim amount.  <u>See</u> Objection, ¶¶ 27, 37, 45.  This attempt suffers from various fatal defects.  First, it essentially reads unliquidated claims out of section 101(5)(A) of the Bankruptcy Code.  Second, it ignores the instructions communicated to the bar in this district by the <u>Sneijder</u> court.  Finally, is inconsistent with the case law it cites.  None of those cases hold that an increase in claim size, on its own, justifies denying an amendment if it relates back to the facts of the original claim and other equitable factors favoring the claimant are present.  <u>See</u> In re PT-1 Commc'ns Inc., 292 B.R. 482, 487 (Bankr. E.D.N.Y. 2003) (although size of claim factored in analysis, other reasons for denial of amendment to tax claim included that amendment would include an entirely new tax year); <u>In re AM Int'l</u>, 67 B.R. 79, 81-82 (N.D. Ill. 1986) (amendment sought to add a new tax claim); <u>In re Drexel Burnham Lambert Group Inc.</u>, 151 B.R. 684, 694 (Bankr. S.D.N.Y. 1993) (amendment did not relate back because original claim was for a credit balance due a state office, while amendment was a claim for abandoned property); <u>In re Manville Forest Prod. Corp.</u>, 89 B.R. 358, 374 (Bankr. S.D.N.Y. 1988) (claimant offered no justification for increased amount).  Moreover, courts have found that amendments that merely allege higher amounts may be allowed.  <u>See</u>, <u>e.g.</u>, <u>United States v. Kolstad (In re Kolstad)</u>, 928 F.2d 171, 175 (5th Cir. 1991) (finding bankruptcy court did not abuse its discretion in allowing claim amendment that simply increased the amount of tax claim).  Even if there were, in fact, a categorical rule, it would not apply to Stonehill in this instance where the amendment would actually reduce the amount of its aggregate claim.  In any event, the Original Proofs of Claim allege, and the Debtors were well aware, that LBI, as Stonehill's sole prime broker, had nearly all of Stonehill's securities in its custody.  Given that fact, the Debtors had more than adequate notice that claims for breach of the PB Agreement related to the failure to promptly return Stonehill's securities would be large.

the facts set forth in the original claim." <u>See</u> Objection, ¶ 44-45.  This is simply wrong.  As set forth above, <u>see</u>, <u>e.g.</u> ¶ 26, the Diminution Claims are based on the exact facts alleged in the Original Proofs of Claim.[6]

29.    In sum, the Court should find that the Re-Filed Proofs of Claim, which include the Diminution Claims, relate back to the Original Proofs of Claim.  The Original Proofs of Claim contain more than adequate factual detail and allegations to provide notice of the Diminution Claims.  The Re-Filed Proofs of Claim describe the claim with greater particularity and, at most, plead a new theory of recovery based on the same facts alleged in the Original Proofs of Claim. <u>See</u> <u>Fisher v. Outlet Co. (In re Denby Stores, Inc.)</u>, 86 B.R. 768, 775 (Bankr. S.D.N.Y. 1988) (finding that an amendment that liquidated the amount sought and clarified the statutory authority for the claim did "precisely what is permitted").

ii.    <u>Equity Favors Allowing Amendment</u>

30.    Courts routinely consider five factors in analyzing whether equity favors allowing a claim amendment: (1) undue prejudice to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed. The critical consideration, however, is whether the estate will be unduly prejudiced by the amendment.  <u>See</u> <u>In re Enron Corp.</u>, 419 F.3d at 133 (quoting <u>In re Integrated Res., Inc.</u>, 157 B.R. at 70).  Factors (1), (3), and (4) are mischaracterized and unreasonably slanted in the Plan Administrator's prejudice analysis.

---

[6]    The Plan Administrator argues in ¶ 45 of the Objection that Stonehill's assertion that the Re-Filed Proofs of Claim do not "plead a new theory of recovery" and consequently are not permissible amendments, based on a misapplication of <u>Associated Container Trans. (Austl.) Ltd. v. Black & Geddes, Inc. (In re Black & Geddes, Inc.)</u>, 58 B.R. 547 (S.D.N.Y. 1983).  That case, however, is inapposite.  There, the court rejected a creditor's attempt to amend the claim to obtain a higher priority in the bankruptcy case than asserted in the original proof of claim.  <u>Id</u>. at 549.  Here, Stonehill makes no attempt to elevate the priority of its claims.

        (a)     *Allowing Amendment Would Not Result in Prejudice*

31.     Here, the amendment of the Original Proofs of Claim to fix the Diminution

Claims would cause no undue prejudice to either the estate or creditors.  Until approximately one

month ago—approximately four and a half years from the filing of the Original Proofs of

Claim—the public record in these cases reflected only that Stonehill had asserted an aggregate

liquidated claim of $875,036,162.40, plus other unliquidated amounts, against the Debtors.

Thus, for four and a half years, including at the time of confirmation of the Plan, the expectations

of both the Debtors and the other creditors were informed by those amounts.  See Greyhound

Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.), 62 F.3d 730, 737-38 (5th Cir. 1995) (finding

no prejudice to debtor from filing of late claim where reorganization plan was negotiated and

approved after debtor had notice of the claims).  In fact, as the Court is well aware, the Debtors

held reserves totaling nearly $300 million on account of those aggregate claims, which reserves

were only reduced after the entry of the Consent Order approximately two months ago.

32.     In agreeing to reduce its reserves pursuant to the Consent Order and, through the

Motion, Stonehill is voluntarily capping its aggregate claim at $202 million.  By reducing its

claim, Stonehill unquestionably is providing a benefit to the estate and its other creditors by

freeing cash for distributions.[7]  The Plan Administrator cites no authority, and Stonehill is aware

of none, denying a claimant's attempt to amend claims in order to reduce its aggregate claim

amount.

33.     The Plan Administrator relies on Enron in arguing that a claim increase that is

small in relation to the overall estate does not prevent a finding of prejudice.  Objection, ¶ 25.  At

---

[7]     The Plan Administrator's only answer to this argument is that the claims asserted in the Original Proofs of
Claim are duplicative. See Objection, ¶ 60.  This argument, like the Reserve Motion, is merely an attempt to
assert a claim objection indirectly, thereby subverting the proper procedures that would provide Stonehill the
opportunity to prove the nature and amount of its claims.  The Court should disregard any such argument until
the Plan Administrator sees fit to file a proper objection to the Original Proofs of Claim.

issue in <u>Enron</u>, however, was a *late-filed new claim*, rather than a request to amend a timely-filed existing claim.  <u>See</u> <u>In re Enron</u>, 419 F.3d at 134.  The court there noted that, even with respect to late-filed claims, a prejudice analysis must include consideration of more than "a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims."  <u>Id</u>. at 130 (quoting <u>In re R.H. Macy & Co., Inc.</u>, 166 B.R. 799, 802 (S.D.N.Y. 1994)); <u>see also</u> <u>Wall Street Plaza LLC v. JSJF Corp. (In re JSJF Corp.)</u>, 344 B.R. 94, 102 (9th Cir. BAP 2006) (holding that the need to litigate and potentially pay a late or amended claim does not constitute prejudice (citing <u>In re O'Brian Envtl. Energy, Inc.</u>, 188 F.3d 116 (3d Cir. 1999)).  Further, the court acknowledged the difference between the two analyses, finding that amendments are to be freely allowed where other parties will not be prejudiced, as opposed to late-filed claims, which will ordinarily be denied even absent prejudice unless there is a compelling reason for delay.  <u>Id</u>. at 133-34.

34.    Given that claim amendments, as distinct from late-filed claims, are to be freely allowed absent undue prejudice, a relatively small increase in a claims pool and the size of a claim compared to the size of the estate should weigh in favor of the claimant, contributing to a finding that prejudice does not exist.  Here, Stonehill is not seeking to file new claims but, at most, amend the Original Proofs of Claim.  As discussed above, the proposed amendment will reduce, rather than increase, the size of its aggregate claim.  Even if, however, the Court were to view Stonehill's request as one to increase its claim, any such increase would be small compared to the overall estates, which, in the context of a request to amend, weighs in favor of Stonehill.

35.    Further, the concern expressed in <u>Enron</u>, and previously in this case, regarding disruption to the claims process by opening up "floodgates" to similar claims is inapplicable. First, like <u>Enron</u>, the decision in <u>In re Lehman Bros. Holdings Inc.</u>, 433 B.R. 113 (Bankr.

S.D.N.Y. 2010) related to creditors that *did not file timely proofs of claim* prior to the bar date, and therefore was in the context of relief that is routinely denied. <u>Id</u>. at 117. Moreover, the Plan Administrator has not shown any evidence that the granting of the Motion would open the "floodgates." <u>See</u> <u>O'Brian Envtl.</u>, 188 F.3d at 128 (the debtor "has not alleged that any other creditor promptly sought to be excused from the [bar date] order so as to now be entitled to relief on the basis of excusable neglect.").

(b)    *Stonehill's Request Is Justified And It Has Not Acted In Bad Faith*

36.    Stonehill has proceeded in good faith at every stage in these cases. Stonehill did not, as the Plan Administrator asserts, delay purposefully as a matter of strategy with respect to the its claims, including the Diminution Claims. Objection, ¶ 49. Rather, Stonehill merely reasonably concluded that, in filing of the Original Proofs of Claim, it had done all it needed to do to preserve its rights with respect to the Diminution Claims. Moreover, the Plan Administrator provides no explanation to support its assertion that attempting to fix the amount of claims that it reasonably believed were already asserted is "inconsistent with indicia of good faith," especially in light of the fact that the requested amendment actually reduces the aggregate claim against the estates. Objection, ¶ 49. The Diminution Claims represent actual damages suffered by Stonehill due to fraud and mismanagement of the Lehman entities, of which the Original Proofs of Claim gave the Debtors reasonable and adequate notice, making it inequitable to prevent Stonehill from asserting those claims based on trumped-up and unsupported allegations of bad faith.

37.    In support of its allegations, the Plan Administrator cites several inapposite cases. <u>See</u> Objection, ¶ 50. In <u>Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC</u>, 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) the court found that the requested amendment was not an amendment at all, but rather an attempt to assert a new claim that the claimant could have filed prior to the

16

bar date.  Id. at *4.  Similarly, in In re Stavriotis, 977 F.2d 1202 (7th Cir. 1992) and  In re Drexel

Burnham Lambert Group, Inc., 151 B.R. 684 (Bankr. S.D.N.Y. 1993), the courts found that

certain portions of the attempted amendment related to *different transactions* giving rise to *new*

*claims*.  Stavriotis, 977 F.2d at 1203; Drexel Burnham, 151 B.R. at 694.  Here, Stonehill

asserted the Diminution Claims in the Original Proofs of Claim prior to the bar date, and, at a

minimum they arise from the same transactions described therein.  Stonehill's only request is to

fix the amount of, and further detail, those claims.

38.     With respect to other portions of the proposed amendments that did relate back to

the original claims in Stavriotis and Drexel Burnham, the courts disallowed those amendments

based on the drastic increase in total claim amounts, combined with other factors, such as the

failure to justify the increase.  Here, Stonehill proposes the opposite of a drastic increase in total

claim amount, *i.e.*, a drastic reduction in its total claim amount.  For these reasons, the cases

cited by the Plan Administrator in an attempt to characterize Stonehill's actions as bad faith or

dilatory behavior are inapplicable.

39.     Further, while the Plan Administrator disputes that the course of dealing between

the parties justified Stonehill's delay in seeking amendment, see Objection, ¶ 51, the Plan

Administrator still has not objected to the claims filed four and a half years ago even though

Stonehill answered the Debtors' discovery requests in late 2012 and early 2013.  Moreover, it

waited four and a half years to engage in litigation regarding Stonehill's reserves, despite holding

nearly $300 million in reserves on account of Stonehill's claims.  If Stonehill's delay is

unjustified, the Plan Administrator's delay is equally unjustified.  Since Stonehill and its

investors are the victims of the Debtors' breach of contract, fraud, and mismanagement, the

Court should find that the balance of equities weighs decidedly in Stonehill's favor.

40.     The critical consideration for the Court with respect to whether allowing an amendment would be equitable is whether the estate or other creditors will be unduly prejudiced. As demonstrated herein, there is no undue prejudice from Stonehill's requested re-filing of its claims or, if the Court chooses to characterize it as such, the amendment of its claims, which has the effect of capping and liquidating its aggregate claim amount, thereby providing greater certainty to the Plan Administrator, the estates, and all creditors.  To the extent the Court finds that Stonehill has delayed in seeking to re-file or amend its claims, the Court should find that it did so based on reasonable expectations stemming from, among other things, the course of dealing with the Debtors and the SIPA trustee over the past four and a half years without causing any undue harm to the Debtors, their estates or creditors.  Thus, if the Court finds that the Motion is a request for an amendment, it should exercise its discretion to allow the amendment due to the lack of any discernable prejudice.

## C.      Stonehill Is Not Seeking Double Recovery

41.     In the Motion Stonehill seeks as an alternative relief a declaration that Stonehill may hold each Debtor liable for up to $40 million.  Motion, ¶¶ 37-38.  The Plan Administrator responds that case law prevents Stonehill from recovering twice for the same injury. See Objection, ¶¶ 53, 60.  That response is nonsensical.  The Original Proofs of Claim sought to hold each Debtor liable for the damages asserted in these claims.  If Stonehill is able to establish that the injury it suffered from the Debtors' actions described in the Original Proofs of Claim is $202 million, even if Stonehill is limited to a claim of $40 million against each Debtor, holding each Debtor liable for a portion of the damages up to $40 million is not subject to the rule against double recovery.  See Attachment, ¶ 14 ("Claimant is entitled to assert and is asserting against the Lehman Entities, including the Debtor, *the full amount of claims arising under the PB Agreement* … provided that Claimant may not recover more than 100%....") (emphasis added).

18

WHEREFORE, Stonehill respectfully requests that the Court grant the Motion, allow

Stonehill to file the Re-Filed Proofs of Claim to fix the amount of its asserted unliquidated

Diminution Claims, or in the alternative, allow Stonehill to amend the Original Proofs of Claim,

and grant Stonehill such other and further relief as is just.

Dated: New York, New York                     DECHERT LLP
       May 23, 2014
                                        By:   */s/ Allan S. Brilliant*

                                        Allan S. Brilliant
                                        Shmuel Vasser
                                        Stephen M. Wolpert
                                        1095 Avenue of the Americas
                                        New York, New York  10036
                                        Tel. (212) 698-3500
                                        Fax. (212) 698-3599

                                        *Attorneys for Stonehill Institutional*
                                        *Partners, LP and Stonehill Offshore*
                                        *Partners Limited*