WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:    (212) 382-0050
William A. Maher
James N. Lawlor
Adam M. Bialek

JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone:    (303) 573-1600
Facsimile:    (303) 573-8133
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Special Counsel for Lehman Brothers Holdings Inc. and*
*Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                 :      **Chapter 11**

**In re:**                             :
                                 :      **Case No. 08-13555 (SCC)**

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :
                                 :
                 **Debtors.**         :
———————————————————————— x

**NOTICE OF HEARING ON MOTION FOR ALTERNATIVE DISPUTE**
**RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION**
**CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

**PLEASE TAKE NOTICE** that on May 29, 2014, Lehman Brothers Holdings Inc.

("LBHI" or the "Plan Administrator"), as Plan Administrator for the entities in the above

referenced chapter 11 cases (the "Debtors"), filed a motion for an alternative dispute resolution

procedures order for indemnification claims of the Debtors against mortgage loan sellers (the

"Motion"), and that a hearing (the "Hearing") to consider the Motion will be held before the

Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 621 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **June 19, 2014, at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in text-searchable Portable Document Format (PDF) (with a hard copy delivered directly to Chambers), and shall be served upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 621; (ii) special counsel for LBHI, Jones & Keller, P.C., 1999 Broadway, suite 3150, Denver, Colorado 80202 (attn.: Michael A. Rollin, Esq. and Maritza Dominguez Braswell, Esq.) and Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York 10110 (Attn:  James N. Lawlor, Esq., and Adam M. Bialek, Esq.); and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.), so as to be so filed and received by no later than **June 12, 2014, at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Motion or any relief requested therein, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the

proposed order annexed to the Motion, which order may be entered with no further notice or

opportunity to be heard offered to any party.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  New York, New York
        May 29, 2014


/s/ William A. Maher
William A. Maher
James N. Lawlor
Adam M. Bialek

Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone:(212) 382-3300
Facsimile: (212) 382-0050

/s/ Michael A. Rollin
Michael A. Rollin
Maritza Dominguez Braswell

Jones & Keller, P.C.
1999 Broadway, suite 3150
Denver, Colorado 80202
Telephone:        (303) 573-1600
Facsimile: (303) 573-8133

*Special Counsel for Lehman Brothers Holdings
Inc. and Certain of Its Affiliates*

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:    (212) 382-0050
William A. Maher
James N. Lawlor
Adam M. Bialek

JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone:    (303) 573-1600
Facsimile:    (303) 573-8133
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Special Counsel for Lehman Brothers Holdings Inc. and
Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————— x | | |
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | |
| | : | |
| **Debtors.** | : | |
| ———————————————— x | | |

**MOTION FOR ALTERNATIVE DISPUTE RESOLUTION
PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS
OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors, for LBHI and certain of its subsidiaries

(collectively, the "Debtors"), moves for an alternative dispute resolution procedures order for

indemnification claims of the Debtors against mortgage loan sellers (the "Motion"), and

respectfully represents as follows:

## Preliminary Statement

1.      By this Motion, the Plan Administrator seeks authority to establish an alternative

dispute resolution ("ADR") procedure to efficiently address indemnification claims LBHI holds

against approximately 3,000 counterparties involving more than 11,000 mortgage loans related to

the recent settlements of claims litigation with the Federal National Mortgage Association

("Fannie Mae") and the Federal Home Loan Mortgage Corp. ("Freddie Mac").  As a result of the

settlements, LBHI may assert contractual or other rights to require banks and other mortgage

lending institutions from which LBHI or its affiliates purchased mortgage loans (collectively, the

"Sellers") to reimburse and indemnify LBHI pursuant to related transaction documents that

contain indemnification provisions, wherein the Sellers agreed to hold the Debtors harmless from

any losses or damages suffered with respect to the mortgage loans (the "Indemnification

Claims").  The proposed ADR procedure will benefit the Debtors' creditors by expediting the

resolution and recovery on account of such claims and by increasing distributions to creditors.

## Background

2.      Commencing on September 15, 2008, and periodically thereafter (as applicable,

the "Commencement Date"), the Debtors commenced with this Court voluntary cases (the

"Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code").  The Chapter 11 Cases have been consolidated for procedural purposes only and are

being jointly administered pursuant to Bankruptcy Rule 1015(b).

3.      By Order dated December 6, 2011 (the "Confirmation Order"), the Bankruptcy

Court confirmed the Modified Third Amended Plan of Reorganization of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), which became effective on March 6, 2012.

4.      The Plan provides for the orderly liquidation of all the property of the Debtors,

which revested on the Effective Date for the benefit of creditors and equity holders.  Post-

confirmation, the equity in LBHI is held 100% by a trust defined in the Plan as the "Plan Trust."

The Plan Trust is charged with liquidating the assets of all the Debtors, including LBHI.  *See* Plan

§ 7.4 ("The Plan Trust shall be established on the Effective Date and shall continue in existence

until the Closing Date. . . .  The Plan Trust shall exercise voting rights . . . in furtherance of the

liquidation of the Debtors and compliance with the provisions of the Plan.").  Moreover, the Plan

provides that LBHI, the Plan Administrator, "shall wind-down, sell and otherwise liquidate assets

of the Debtors and/or Debtor-Controlled Entities in accordance with Section 6.1(b)(iii) of the

Plan."  Plan §§ 1.115, 7.6.  The Plan Administrator has the sole authority to liquidate assets,

including the prosecution of Litigation Claims (as defined below), to maximize distributions to

creditors.  Plan § 6.1(b)(iii) and (iv).

5.      The Plan also expressly provides that LBHI will retain all Litigation Claims that

are not otherwise disposed of in the Plan.  Plan § 13.8.  "Litigation Claims" under the Plan means

"any and all Causes of Action held by" LBHI.  Plan § 1.102.  The Plan further defines "Causes of

Action" as "any and all actions, causes of action, controversies, liabilities, obligations, rights,

suits, damages, judgments, Claims, and demands whatsoever . . . liquidated or *unliquidated*, fixed

or *contingent*, matured or *unmatured*, disputed or undisputed, secured or unsecured, assertable

directly or derivatively, existing *or hereafter arising*, in law, equity, or otherwise, *based in whole*

3

*or in part upon any act or omission or other event occurring prior to the Effective Date.*  Plan

§ 1.17 (emphasis added).  This definition encompasses the Indemnification Claims.

6.    Section 8.14 of the Plan also expressly preserves the Debtors' rights to assert

Litigation Claims for reimbursement and indemnification on account of Distributions made to the

holders of Allowed Claims and provides, in relevant part, as follows:

> [e]xcept as otherwise agreed by the Debtors, the Debtors' rights to
> assert or prosecute Litigation Claims for *reimbursement,*
> *indemnification*, recoupment or any other similar right, including,
> without limitation, any right to setoff with respect to any of the
> foregoing, against any entity, including, without limitation, a
> Primary Obligor, *on account of Distributions made to the holders*
> *of Allowed Claims* or Allowed Guarantee Claims, *shall be fully*
> *preserved* to the fullest extent permitted by applicable law.

Plan § 8.14(b) (emphasis added).  The Confirmation Order reiterates LBHI's "rights to *assert or*

*prosecute* Litigation Claims for *reimbursement, indemnification*, recoupment or any other similar

right . . . ."  Confirmation Order ¶ 79 (emphasis added).  Thus, the Plan contemplates the post-

confirmation monetization of LBHI's indemnification and reimbursement claims against Sellers,

including claims that would arise from the allowance of proofs of claim filed by Fannie Mae and

Freddie Mac.

## The Triggering of the Indemnification Claims

7.    Historically, LBHI was a purchaser, seller and servicer of residential mortgage

loans, arranging directly or through its affiliates for the purchase of mortgage loans from the

Sellers and then packaging them for securitization and/or sale.  In such transactions, the Sellers

granted the contractual right to require Sellers to indemnify the purchaser and hold it harmless

from any losses or damages suffered with respect to the mortgage loans.  When LBHI sold

mortgage loans to Fannie Mae and Freddie Mac, the purchasers obtained a similar contractual

right to recover from LBHI for defective mortgage loans.

4

8.      Both Fannie Mae and Freddie Mac filed proofs of claims against LBHI and other

Lehman entities (collectively, the "Claims"), which claims included, *inter alia*, "alleged

indemnity/reimbursement obligations," "indemnity claims" arising from the sale of mortgage

loans, including mortgage loans purchased from the Sellers and transferred to Fannie Mae and

Freddie Mac.  *See generally*, Settlement Agreement, dated January 22, 2014, by and among

LBHI, *et al*., and Fannie Mae (the "Fannie Settlement") § 1 [Docket. No. 42153]; Settlement and

Assignment Agreement, dated February 12, 2014, by and among LBHI, *et al*., and Freddie Mac

(the "Freddie Settlement") §§ C, E [Docket. No. 42754].  (The Fannie Settlement and the Freddie

Settlement are sometimes hereafter referred to together as the "Settlement Agreements.").

9.      The Debtors and Fannie Mae and Freddie Mac entered into certain stipulations

that addressed the Claims for purposes of confirming the Plan, but did not otherwise resolve the

allowance and treatment of the Claims prior to confirmation.

10.      After entry of the Confirmation Order, the Plan Administrator objected to the

Fannie Mae and Freddie Mac Claims.  While those objections were pending, the parties entered

into extensive settlement negotiations.  As a result of those negotiations, LBHI filed a motion on

January 23, 2014, seeking the Bankruptcy Court's approval of the Fannie Settlement, and a

second motion on February 12, 2014, seeking court approval of the Freddie Settlement.  The

motions were granted, and the Settlement Agreements were approved by Orders dated January 31

and February 19, 2014 (the "Settlement Orders").

11.      The Settlement Agreements expressly allowed a portion of the Claims, including

those for indemnification and/or reimbursement related to the mortgage loans purchased from the

Sellers.  The Settlement Agreements also obligate Fannie Mae and Freddie Mac to provide LBHI

with certain documents and information that will, in turn, allow LBHI to pursue the

Indemnification Claims against the Sellers.  *See* Fannie Settlement § 3.1; Freddie Settlement §

4.1.  The Settlement Agreements also contain expansive provisions designed to assist LBHI in

bringing the Indemnification Claims.  *See* Fannie Settlement §§ 3.1-3.6 (provisions requiring

Fannie Mae to assist LBHI in pursuing "Rep and Warranty Default" claims); Freddie Settlement

§§ 4.1-4.6 (similar provisions to assist LBHI pursuing claims related to "Liquidated Rep and

Warranty Default Loans").  The Plan Administrator expects to obtain substantial recoveries in

connection with the Indemnification Claims, which will ultimately be distributed to holders of

Allowed Claims under the Plan.

       12.      The Indemnification Claims arise from valid repurchase demands made on the

Debtors by Fannie Mae and Freddie Mac.  A *valid* repurchase claim requires loan-level proof of

one or more breaches of representations and warranties made in the agreements governing

Debtors' sale of mortgage loans.  Thus, Fannie Mae and Freddie Mac – having reviewed

thousands of mortgage loans files to determine which were in breach of the Debtors'

representations and warranties – presented loan-level claims to the Debtors and in return were

granted Allowed Claims under the Plan.  After meeting its obligations under the Plan to

compensate Fannie Mae and Freddie Mac for the defective loans, LBHI then acquired the

contractual right to pursue the Indemnification Claims against the Sellers.  Further, in the

Settlement Agreements, Fannie Mae and Freddie Mac agreed to assist LBHI in its enforcement

efforts for the benefit of creditors.  Fannie Mae and Freddie Mac's efforts and ability to provide

loan-level breach information and assurances of cooperation were central to LBHI's decision to

settle.[1]

---

[1] By contrast, the private-label RMBS trustees filed nearly $40 billion in claims without taking even the threshold
step of identifying which mortgage loans were in breach.  Consequently, resolution of those claims has been delayed
for years.

**Jurisdiction**

13.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Moreover, the Motion and relief requested herein satisfy the requirements for the

exercise of post-confirmation jurisdiction by the Bankruptcy Court.  <u>First</u>, the Motion and the

relief have a "close nexus" to the bankruptcy case.  *Ace Am. Ins. Co. v. DPH Holdings Corp. (In*

*re DPH Holdings Corp.)*, 448 Fed. Appx. 134, 137 (2d Cir. 2011).  *See also In re Metro-*

*Goldwyn-Mayer*, 459 B.R. 555, 556 (Bankr. S.D.N.Y. 2010) ("The 'close nexus' test is met when

a matter affects the interpretation, implementation, consummation, execution, or administration

of the confirmed plan" (citation and internal quotation marks omitted)).  As noted, Section 13.8

of the Plan specifically provides that LBHI retains Litigation Claims, and the Plan's definition of

Litigation Claims as "liquidated or unliquidated, fixed or contingent, matured or unmatured"

causes of action "based in whole or in part upon any act or omission or other event occurring

prior to the Effective Date" clearly encompasses the Indemnification Claims.

14.     Significantly, Section 8.14 of the Plan and Paragraph 79 of the Confirmation

Order expressly preserve LBHI's power to prosecute Indemnification Claims, while Section

6.1(b)(iv) of the Plan grants LBHI the power to prosecute Litigation Claims generally.  The Plan

and the Confirmation Order expressly provide that the Plan Administrator is to liquidate all assets

in order to maximize distributions to creditors.  *See* Plan § 6.1(b)(iii); *see also* § 7.6 (purpose of

the Plan is to "sell and otherwise liquidate assets of the Debtors" to allow LBHI to maximize

distributions pursuant to § 6.1(b)(iii)).  In that regard, the Plan directs the Plan Administrator to

liquidate all Litigation Claims, which includes the Indemnification Claims, for the benefit of

creditors.  *See* Plan § 6.1(b)(iv).  The prosecution of such claims undoubtedly will have an impact

on the amounts available for distribution to creditors and effectuate the Plan's goal of

maximizing distributions, thus satisfying the close nexus requirement.  *See*, *e.g.*, *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLP*, 396 B.R. 602, 605-606 (S.D.N.Y. 2008) (finding jurisdiction over third-party dispute where stream of payments were to be made to the liquidated debtor to be used for distributions to creditors); *Krys v. Sugrue*, 08 Civ. 3065, 2008 WL 4070920, at *6 (S.D.N.Y. Oct. 23, 2008) (finding jurisdiction over actions by litigation trust formed by plan to liquidate private action claims contributed by creditors).

15.    <u>Second</u>, the Bankruptcy Court was expressly granted the jurisdiction to adjudicate the Indemnification Claims (as well as enter orders in connection with such adjudications, as is the case here).  "Where the plan contains broad jurisdictional provisions, the 'Bankruptcy Court's post-confirmation jurisdiction is as broad as the statutory grant – that is, it extends to all proceedings 'related to' the bankruptcy.'"  *See Eastern Airlines, Inc. v. General Mills, Inc. (In re Ionosphere Clubs, Inc.)*, No. 89 B 10448, 1999 Bankr. LEXIS 1875, at *21 (Bankr. S.D.N.Y. May 12, 1999) (quoting *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638 (S.D.N.Y. 1997)).

16.    The Confirmation Order provides that the Bankruptcy Court shall, upon the "Effective Date," retain "exclusive jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without limitation, the matters set forth in Article XIV of the Plan."  *See* Confirmation Order ¶ 77.  Article XIV of the Plan contains a list of matters over which the Bankruptcy Court retained exclusive jurisdiction, including but not limited to the following:

> (b)  To determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases;

> \* \* \*

> (e)  To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

\* \* \*

  (i)  To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce or to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

\* \* \*

  (k)  To hear and determine any actions brought to recover all assets of LBHI and property of the estates, wherever located or to determine or declare entitlement to such assets and property . . .

Plan § 14.1.  Section 14.1(b) authorizes generally the initiation of adversary proceedings.  Section 14.1(k) dovetails with the Plan provisions directing liquidation of all assets, including Litigation Claims, for the purpose of maximizing distributions.  Similarly, Sections 14.1(e) and (i) are provisions intended to retain jurisdiction for the Bankruptcy Court to enforce and implement the Plan, the Confirmation Order and all other orders of the Bankruptcy Court.  Given that the Plan and Confirmation Order expressly preserve Indemnification Claims for the benefit of creditors, both provisions support the exercise of jurisdiction to implement ADR procedures with respect to such claims.

  17. Finally, both Settlement Orders contain the following identical language with respect to jurisdiction:  "[T]his Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order."  The applications to approve the Settlement Agreements, as well as the Settlement Agreements themselves, expressly identified the Indemnification Claims that would vest in the Debtors as a result and noted that one of the key benefits of the agreements would be the Plan Administrator's ability to recover value by pursuing the Sellers for the transferred mortgage loans.  The retention of jurisdiction to implement the Settlement Agreements necessarily includes the power to adjudicate the

9

Indemnification Claims vested by the Settlement Agreements.  Such power is consistent with the

Plan provisions expressly permitting the Plan Administrator to retain the authority to prosecute

reimbursement and indemnification claims.

## Relief Requested

18.     Pursuant to section 105(a) of the Bankruptcy Code and the Court's General Order

M-143 (the "Standing Order"), LBHI requests ADR procedures with respect to the

Indemnification Claims.

## The Indemnification Claims

19.     LBHI estimates it holds Indemnification Claims against approximately 3,000

Sellers arising out of more than 11,000 loans.  Given the sheer volume of the Indemnification

Claims, LBHI believes that the most efficient initial means to enforce its right to reimbursement

and indemnification would be through an ADR procedure, rather than through the immediate

commencement of litigation.  Requiring LBHI to initially resort to litigation would be expensive

and time consuming, causing undue delay in the liquidation of the Debtors' assets and increased

costs to LBHI.  Many common issues exist with respect to LBHI's Indemnification Claims,

including the central reimbursement and indemnification rights.  In furtherance of the effort to

capture the value in the Indemnification Claims and streamline their liquidation, LBHI proposes

to implement certain ADR procedures, which will also reduce the cost associated with enforcing

LBHI's affirmative claims, preserve value and promote judicial efficiency (the "Indemnification

ADR Procedures").

20.     LBHI has a good faith belief that there are approximately 3,000 Sellers, with each

Seller potentially subject to multiple Indemnification Claims for which LBHI believes a right to

monetary recovery exists (whether or not an actual lawsuit or adversary proceeding has been commenced).

21.     LBHI's goal is to obtain, for the benefit of creditors, similar benefits as it has obtained from the implementation of other ADR procedures in these cases, which Judge Peck previously lauded as "indisputably a success" and further observed that "the results speak for themselves as being beneficial to the estate and also beneficial to the Court . . . because this means that matters that might otherwise be burdening the Court are being managed in a private fashion." Tr. of Hr'g, Jan. 11, 2012, at 22:23-25, 23:1-2.  In addition, LBHI anticipates utilizing the Standing Order, which governs mediation of matters in bankruptcy cases and adversary proceedings.

**Indemnification ADR Disputes**

22.     LBHI will designate a dispute (an "Indemnification ADR Dispute") as to any Indemnification Claim by serving on a Seller (i) a copy of an order approving this Motion on a Seller and (ii) a notice (an "Indemnification ADR Notice") containing sufficient information regarding LBHI's affirmative claim and its demand for settlement (together with the Indemnification ADR Notice, an "Indemnification ADR Package").  Under the proposed procedure, service on or notice to a Seller of an Indemnification ADR Package will be deemed adequate if such service or notice is provided to the Seller, the Seller's counsel, legal guardian, estate representative, or other representative by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

**Mandatory Participation**

23.     The proposed ADR order provides that LBHI and each Seller (a) must participate in good faith with the proposed Indemnification ADR Procedures and (b) must comply with the

Indemnification ADR Procedures, unless otherwise provided in a specific order applicable to a particular Indemnification ADR Dispute. The Indemnification ADR Procedures do not compel LBHI and the Seller to settle or compromise any dispute, but each party will be required to (i) serve an answer in response to the proposed settlement set forth in an Indemnification ADR Package, (ii) engage in settlement discussions, (iii) participate in any mediation in good faith, (iv) follow the directions of the mediator, and (v) follow the Indemnification ADR Procedures approved by this Court.

## No Substitute for Claims Procedures and Removal of Actions

24.    The Indemnification ADR Procedures are not intended to and will not be utilized (i) as a substitute for chapter 11 claims procedures, or (ii) to limit LBHI's rights to, among other things, object to claims filed by Sellers on any basis permitted by the Bankruptcy Code. Nothing contained herein, however, will limit a Seller's right to assert valid and enforceable setoff rights with respect to an Indemnification Claim or any other valid defense to LBHI's demand thereunder.

25.    If a Seller has commenced any action or proceeding in any other court or forum, or commences any other action or proceeding in any other court or forum following service upon it of an Indemnification ADR Package, LBHI reserves the right to remove to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect LBHI's creditors, despite the incomplete status of the steps prescribed under the Indemnification ADR Procedures.

## Notice/Response Stage

26.    Upon receipt of the Indemnification ADR Package, the Seller will have twenty (20) calendar days to respond in writing with respect to LBHI's demand. The Seller may (i)

agree to settle the Indemnification ADR Dispute in accordance with the terms in LBHI's

Indemnification ADR Notice, (ii) propose alternative settlement terms and provide a brief

explanation setting forth the reasons for such proposal, or (iii) decline to settle the

Indemnification ADR Dispute and provide a brief explanation setting forth the reasons for such

denial ((i), (ii) and (iii) together, the "Statement of Position").

27.    Upon receipt of a Seller's Statement of Position, LBHI will have fifteen (15) days

to serve a reply (the "Reply") to the Seller, which may include (i) a modification of LBHI's

demand in the Indemnification ADR Notice, (ii) a response to a Seller's counteroffer, (iii)

additional information or briefing supporting the demand made in the Indemnification ADR

Notice, or (iv) a rejection of any counteroffer in which case the Indemnification ADR Dispute

will automatically proceed to the Mediation Stage.  If the Seller fails to respond, LBHI may elect

to seek Sanctions (as defined in Paragraph 36 herein).[2]  The Indemnification ADR Package,

Statement of Position, the Reply, and remedies imposed as part of any Sanctions are collectively

referred to herein as the "Notice/Response Stage."

## Settlement Conferences

28.    At any time after service of an Indemnification ADR Package, LBHI or a Seller

may request an initial telephonic settlement conference (a "Settlement Conference") (or in person

if the parties agree) to be held within five (5) calendar days of the receipt of such request (the

"Notice of Settlement Conference").  The purpose of the Settlement Conference will be for the

parties to attempt to settle prior to mediation.  Upon receipt of the Notice of Settlement

Conference, the recipient will be required to respond within two (2) calendar days by either

accepting the proposed date and time in the Notice of Settlement Conference or proposing an

---

[2] LBHI may also be subject to Sanctions should it fail to mediate in accordance with the requirements of the proposed Order.  *See, infra*, ¶ 36.

13

alternate date and time that is no later than five (5) calendar days from the date and time in the

Notice of Settlement Conference. If the parties are not able to agree on a time and date for the

Settlement Conference, the Indemnification ADR Dispute will proceed to the Mediation Stage (as

defined below).

29.    The proposed procedures provide that the parties will allocate approximately one

(1) hour for the initial Settlement Conference and that only LBHI and its representatives and the

Seller and its representatives will participate. All discussions between the parties and the

contents of any papers submitted prior to the Mediation Stage (as defined below) shall remain

confidential and privileged in accordance with the confidentiality provisions of the proposed

order and shall not be discoverable or admissible as evidence in any subsequent litigation of the

Indemnification ADR Dispute or elsewhere, except as provided by further order of this Court.

**Mediation Stage**

30.    If LBHI and the Seller are not able to resolve the Indemnification ADR Dispute

during the Notice/Response Stage, such dispute will proceed to mediation (the "Mediation

Stage"). LBHI seeks to have the Court select a slate of mediators who will hear and preside over

all mediations hereunder in order to permit multiple mediations to occur simultaneously. Once a

matter has reached the Mediation Stage, LBHI will select a mediator, and LBHI and the Seller

together will contact the mediator to schedule the initial mediation date. Attached as Schedule A

is a list of mediators whom LBHI seeks to have designated as approved mediators. The list is

comprised of mediators that already serve as panel mediators for either the United States District

Court or the United States Bankruptcy Court for the Southern District of New York.

31.    If the initially selected mediator is unwilling or unavailable to serve, then LBHI

shall select an alternate mediator from the approved list. In the unlikely event that none of the

mediators on the approved list are willing and/or available, the parties will select an alternate

mediator as mutually agreed in writing by all parties subject to the applicable Indemnification

ADR Dispute.  If LBHI and the Seller cannot agree upon a mediator within ten (10) calendar

days after the Notice/Response Stage, the Court will appoint one or more mediators.

32.    The mediator will have the broadest possible discretion as provided under the

Standing Order.

33.    The mediation proceedings will take place in New York, New York.

34.    LBHI shall submit to the mediator (i) the Indemnification ADR Package, (ii) the

Seller's Statement of Position, (iii) the Reply, if any, and (iv) any other materials exchanged by

the parties reflecting the parties' relative positions ("Mediation Materials").  No additional papers

shall be submitted to the mediator unless requested by the mediator.  All Mediation Materials will

be delivered at least ten (10) days prior to the scheduled mediation proceeding and will not be

filed with the Court.

35.    All parties to an Indemnification ADR Dispute will appear in person at the

mediation proceeding.  Each party must have a business principal in attendance having settlement

authority.  In addition, the parties' counsel may attend the mediation proceeding.

**General Mediation Rules**

36.    Upon the filing of an application, and after notice and a hearing, the Court may

sanction the parties for failing to comply with the Indemnification ADR Procedures.  If the

mediator reports to the Court that a party subject to the Indemnification ADR Procedures is not

cooperating, the Court may, on its own motion, schedule a hearing to consider sanctions

("Sanctions") against that party for its failure to cooperate in good faith.  Sanctions as they relate

to LBHI may include but are not limited to (i) attorneys' fees; (ii) fees and costs of the mediator;

15

and/or (iii) termination of the Indemnification ADR Procedures as to one or more

Indemnification Claims.  Sanctions as they relate to Sellers may include but are not limited to (a)

attorneys' fees, (b) fees and costs of the mediator and/or (c) termination of the mediation with

respect to the sanctioned Seller.  Litigation with respect to the issuance of Sanctions will not

delay the commencement of the Mediation Stage of these procedures upon the completion of the

Notice/Response Stage.

37.    All proposed deadlines may be modified by the mutual consent of LBHI and the

applicable Sellers or by the Court for cause shown.  All parties will be responsible for their

counsel fees and shall share equally in the fees and expenses of the mediator.

## Confidentiality

38.    The proposed order approving this Motion and the Indemnification ADR

Procedures incorporates the confidentiality provisions of section 5.0 of the Standing Order.  No

statements or arguments made or positions taken by the mediator, LBHI or a Seller during any

part of the alternative dispute resolution process, including Settlement Conferences and the

Mediation Stage, may be disclosed for any purpose by the mediator or by any such parties (or

their attorneys or advisors) to the Court or to any third party.  Similarly, all briefs, records,

reports, and other documents received or made by the mediator while serving in such capacity

will remain confidential and will not be provided to the Court, unless they would be otherwise

admissible.  In addition, the mediator will not be compelled to disclose such records, reports, and

other documents in connection with any hearing held by the Court; provided, however, the

mediator may report to the Court the status of the mediation efforts but will not disclose the

content thereof.

39.     Rule 408 of the Federal Rules of Evidence will apply to all aspects of the

Indemnification ADR Procedures including the Settlement Conferences and Mediation Stage.

## The Mediation Procedures Should Be Approved

40.     Section 1.1 of the Standing Order permits the Court to assign a matter to

mediation upon the motion of a party in interest, the U.S. Trustee, or on its own motion.  Further,

Standing Order section 1.3 permits the Court to assign an adversary proceeding, contested matter,

or other dispute to mediation.  Moreover, section 105(a) of the Bankruptcy Code grants

bankruptcy courts the "equitable power to 'issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title.'"  *New Eng. Dairies, Inc v. Dairy Mart*

*Conv. Stores, Inc. (In re Dairy Mart Conv. Stores, Inc.*), 351 F.3d 86, 91 (2d Cir. 2003) (quoting

11 U.S.C. § 105(a)).

41.     Thus, the Standing Order expressly states the intent of the Court to facilitate the

use of mediation in all matters.  Consistent with that intent, LBHI respectfully requests that the

Court exercise its authority to implement the Indemnification ADR Procedures with respect to the

Indemnification ADR Disputes.

42.     The litigation of the Indemnification Claims without at least exploring the

possibility of an early resolution would not serve the interest of LBHI and the Debtors' creditors

in maximizing the value of the Debtors' assets that are to be liquidated under the Plan.  Given the

Debtors' success in implementing ADR Procedures in other contexts, it is reasonable to assume

that a similar level of efficiency and progress can be achieved with respect to promptly

monetizing the Indemnification Claims.

43.    LBHI believes that the Indemnification ADR Procedures will help develop a productive and consensual resolution process that will reduce the costs associated with the litigation and collection of LBHI's affirmative claims.

44.    The relief requested in the Motion is substantially similar to the relief that has been granted by this Court in connection with similar motions to implement mediation procedures, both in these cases and in other large chapter 11 cases.  *See, e.g., In re Lehman Bros. Holdings Inc., et al.,* Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 19, 2009) (Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts) [Docket No. 5207]; *In re Enron Corp.,* Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. March 4, 2003) [Docket No. 9533] and (Bankr. S.D.N.Y. March 20, 2003) [Docket No. 9862] (ordering mediation procedures with respect to twenty-four adversary proceedings regarding certain trading disputes); *In re Ames Dep't Stores, Inc., et al.,* Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007) [Docket No. 3195] (ordering mandatory mediation procedures with respect to over 900 adversary proceedings that the debtors commenced against various preference defendants).

45.    The fundamental purpose of mediation is to allow an unbiased third party to assist adversaries in reaching resolution of issues upon which they disagree.  LBHI submits that the Indemnification ADR Procedures will be a worthwhile process that will enable it to reduce its costs and expenses of collection, maximize the value of the Indemnification Claims and promote judicial efficiency by consensually resolving many of these claims.  Based upon the foregoing, LBHI respectfully requests that the Court approve the Indemnification ADR Procedures.

## Notice

46.    No trustee has been appointed in these chapter 11 cases.  LBHI, in accordance with the procedures set forth in the amended order entered on February 13, 2009 governing case

18

management and administrative procedures for these cases [Docket No. 2837] (the "Case

Management Order"), have served notice of this Motion on (i) the U.S. Trustee; (ii) all known

Sellers; and (iii) all parties who have requested notice in these chapter 11 cases.  LBHI submits

that no other or further notice need be provided.

47.      No previous request for the relief sought herein has been made by LBHI to this or

any other court.

WHEREFORE, LBHI respectfully requests that the Court grant the relief requested herein

and such other and further relief as it deems just and proper.

Dated:  New York, New York
        May 29, 2014

/s/ William A. Maher
William A. Maher
James N. Lawlor
Adam M. Bialek

Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone:(212) 382-3300
Facsimile: (212) 382-0050

/s/ Michael A. Rollin
Michael A. Rollin
Maritza Dominguez Braswell

Jones & Keller, P.C.
1999 Broadway, suite 3150
Denver, Colorado 80202
Telephone:        (303) 573-1600
Facsimile: (303) 573-8133

*Special Counsel for Lehman Brothers Holdings
Inc. and Certain of Its Affiliates*

# SCHEDULE A

| Mediator | Contact Information |
|---|---|
| **Peter L. Borowitz** | c/o Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, NY 10022<br>Tel: 212-909-6525<br>Fax: 212-521-7525<br>Email: plborowitz@debevoise.com |
| **Timothy T. Brock** | Satterlee Stephens Burke & Burke, LLP<br>230 Park Avenue, 11th Floor<br>New York, NY 10169<br>Tel: 212-818-9200<br>E-mail: tbrock@ssbb.com |
| **Martin G. Bunin** | Alston & Bird, LLP<br>90 Park Avenue, 15th Floor<br>New York, NY 10016-1387<br>Tel: 212-210-9492<br>E-mail: marty.bunin@alston.com |
| **Keith N. Costa** | Dilworth Paxson LLP<br>99 Park Avenue<br>Suite 320<br>New York, NY 10016<br>Tel: 917-675-4250<br>E-mail: kcosta@dilworthlaw.com |
| **Melanie L. Cyganowski** | Otterbourg P.C.<br>230 Park Avenue<br>New York, NY 10169-0075<br>Tel: 212-905-3677<br>E-mail: mcyganowski@otterbourg.com |
| **Andrew B. Eckstein** | Blank Rome LLP<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, NY 10174<br>Tel: 212-885-5505<br>Fax: 917-332-3724<br>E-mail: aeckstein@blankrome.com |
| **Judith Elkin** | Haynes and Boone, LLP<br>30 Rockefeller Plaza, 26th Floor<br>New York, NY 10112<br>Tel: 212-659-4968<br>Fax: 212-884-8228<br>E-mail: Judith.elkin@haynesboone.com |
| **Yann Geron** | Fox Rothschild LLP<br>100 Park Avenue, Suite 1500<br>New York, NY 10017<br>Tel: 212-878-7901<br>Fax: 212-692-0940<br>E-mail: ygeron@foxrothschild.com |

| Mediator | Contact Information |
|---|---|
| Eric Haber | Cooley LLP<br>1114 Avenue of Americas<br>New York, NY 10036<br>Tel: 212-479-6144<br>E-mail: ehaber@cooley.com |
| Ira L. Herman | Thompson & Knight LLP<br>900 Third Avenue, 20th Floor<br>New York, NY 10022-3915<br>Tel: 212-751-3045<br>Fax: 214-999-9139<br>E-mail: Ira.herman@tklaw.com |
| Marc E. Hirschfield | BakerHostetler<br>45 Rockefeller Plaza<br>New York, NY 10111-0100<br>Tel: 212-589-4610<br>Fax: 212-589-4201<br>Email: mhirschfield@bakerlaw.com |
| Norman N. Kinel | Lowenstein Sandler LLP<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel: 646-414-6878<br>E-mail: NKinel@lowenstein.com |
| Tracey L. Klestadt | Klestadt & Winters, LLP<br>570 Seventh Avenue, 17th Floor<br>New York, NY 10018<br>Tel: 212-972-3000<br>Fax: 212-972-2245<br>E-mail: tklestadt@klestadt.com |
| Kenneth M. Lewis | LEWIS LAW PLLC<br>120 Bloomingdale Road, Suite 100<br>White Plains, NY 10605<br>Tel: 914-761-8400<br>Fax: 914-761-6316<br>E-mail: klewis@lewispllc.com |
| Joseph T. Moldovan | Morrison Cohen LLP<br>909 Third Avenue<br>New York, NY 10022-4371<br>Tel: 212-735-8603<br>E-mail: jmoldovan@morrisoncohen.com |
| Robert J. Rosenberg | 125 East 61st Street<br>New York, NY 10065<br>Tel: 917-273-5216<br>E-mail: robertrosenbe@gmail.com |