# EXHIBIT E

## EXHIBIT 6

Lehman Brothers Inc. Memorandum to SkyPower Corp. Board of Directors
dated September 5, 2007

DOCSNY-475441v1

# Memorandum

| | |
|---|---|
| TO | SkyPower Corp. Board of Directors |
| FROM | Lehman Brothers Inc. |
| DATE | 5 September, 2007 |
| SUBJECT | Deemed and actual Shareholder dilution related to the executed GE Turbine Frame Agreement and the anticipated HSH Nord Bank Turbine Warehouse Facility |

The purpose of this memorandum is to clarify Lehman Brothers' deemed and actual equity contributions to SkyPower Corp (the "Company") with regard to (i) the recently executed GE turbine frame agreement dated July 11, 2007 incorporating the associated performance guaranty executed by Lehman Brothers (the "GE Frame Agreement") and (ii) the anticipated equity contribution agreement (the "ECCA") with respect the turbine warehouse facility (the "TWF") being negotiated with HSH Nord Bank ("HSHN"), as lender.

This memo covers only the guarantee under the GE Frame Agreement and the ECCA, and not any general working capital investments by Lehman, such as the recent $ 7 million investment.

All actual and deemed equity investments by Lehman shall take the form of subscriptions for Class A Shares at a price reflective of the Initial Pre-Money Valuation.

As of the date of this memorandum, US$19,000,000 cash was invested by Lehman Brothers into SkyPower which, in turn, was utilized by SkyPower to pay the initial deposit under the GE Frame Agreement on July 11, 2007. Dilution has been computed on this amount.

On July 11, 2007, Lehman Brothers Holdings also signed a Parent Guarantee, in favour of GE (the "GE Parent Guarantee") guaranteeing the positive difference, if any, between the then current termination payments under the GE Frame Agreement, and the aggregate cash deposits made to GE under the frame agreement.

Upon execution by SkyPower of the TWF, Lehman Brothers Holdings will execute an ECCA or similar document, for the benefit of HSHN, guaranteeing equity contributions by Lehman Brothers into SkyPower, in an amount sufficient to fund the payment of the equity portion of the turbine order.

*Analysis of TWF and ECCA*

The TWF is expected to have two features that have to be evaluated in order to calculate the deemed dilution associated with the ECCA. The first feature is the "optionality" associated with the TWF, and the second is the "ratchet up" feature on the advance rates.

*Optionality Feature.* The TWF – in current draft Term Sheet form – is designed to finance up to $1,200 million in turbine orders, but Skypower can elect to utilize, or not utilize, substantial portions of the facility. (For simplicity in this memo, we have ignored the $37 million upcoming order for turbines for the 4th quarter 2008 project (the $29 million Tranche A under the TWF), and we assume for illustrative purposes that the TWF consists of Tranche B, up to $304 million (supporting the $380 million signed GE Frame Agreement), and a Tranche C, up to $600 million (supporting up to $750 million of as yet unsigned future frame agreements)). The Tranche B is for 2009 deliveries, and the Tranche C is for 2010 deliveries. Skypower has the option to move the unutilized portion of the TWF from 2010 to 2009 deliveries.

Upon execution of the ECCA – assuming the GE Frame Agreement is the only frame agreement then signed – there will be deemed investment (thus dilution) of the portion of the ECCA which supports Tranche B. As additional frame agreements are signed, then the deemed dilution will increase, based on the portion of the ECCA that supports each future frame agreement. To the extent that the entire TWF is utilized to support frame agreements ($1,130 million of orders in the simplified example), then the full face amount of the ECCA will constitute deemed equity investment. To the extent that only $1,000 million of orders are signed during the TWF term, then 1,000/1,130 of the face amount of the ECCA will consitiute deemed equity investment.

*[Note that this concept – whereby the deemed equity contribution, and thus the associated dilution, is "compartmentalized", on a TSA by TSA basis, will be applicable only to the extent that the "at risk" dollars under the ECCA are also "compartmentalized" on a TSA by TSA basis. (i.e., the entire notional amount of the ECCA will not be "at risk" until all the remaining TSAs are actually executed). To the extent that HSHN ultimately requires that the full notional amount of the ECCA supports the entire TWF on Day One, then the full notional amount of the ECCA would be dilutive Day One. This item is being negotiated with HSHN as we go]*

*Ratchet Up feature.* Each of the Tranches A, B and C has a "ratchet up" feature, in terms of advance rate, and a "ratchet down" feature, in terms of the ECCA. Tranche A (2008 deliveries) provides for 80% advance rate, 20% ECCA. Tranche B (2009 deliveries) starts out at 75% advance rate, and 25% ECCA, but "flips" to "80/20" at 6/30/08 (subject to conditions). Tranche C (2010 deliveries) starts out with a 70% advance rate, and 30% ECCA, but "flips" to "75/25" at 6/30/08 (subject to conditions), and to "80/20" (subject to conditions) at 6/30/09.

We propose, for simplicity, that the initial deemed equity contribution be based on the 20% equity. To the extent that the "ratchet down" on the ECCA does not occur as scheduled, then there will be additional "deemed equity contribution" at 6/30/08 and/or 6/30/09, as applicable, for the incremental 5 % or 10 %, with the preference earned on such amounts accruing as of the *initial* date of the ECCA, as the amounts will have been "at risk" as of such date.

*[Note that this concept – whereby the dilution is initially based on the "low end" of the ECCA (i.e., assuming that the "ratchet down" on the ECCA does occur), would not be applicable for Clipper turbines, or any other "non-standard" turbines, whereby the "ratchet down" may be less certain. (HSHN has suggested that initial advance rates could be as low as 50% for Clipper turbines, for example).]*

*TWF Summary.* Thus, there will be deemed equity contributions (and thus dilution), as outlined above, upon (1) signing the ECCA, (2) upon any failure of a scheduled "ratchet up" in advance rates and (3) the execution of future frame agreements supported by the TWF.

Additional "decision rules" regarding the TWF are as follows:

(1) Any cash actually contributed to Skypower as "principal" pursuant to the ECCA will not be a "double count" and will not count as incremental dilution.

(2) Any cash contributed to Skypower between the date of this memo and the first funding under the ECCA will count as dilutive.

(3) Investments by Lehman in Skypower to pay interest and fees under the TWF (which will be typical "working capital" investments) will count as dilutive.

(4) To the extent that HSHN "finances" the "up front" fees out of the first TWF draw (in which case the ECCA amount would be higher, reflecting such amount), then that portion of the ECCA supporting such "financed" up front fees will count as dilutive when signed.

(5) To the extent that the equity support under the ECCA fails to "ratchet down" as scheduled, the incremental dilution will "relate back" to the date of the ECCA; to the extent that equity support has to be increased above what is in the ECCA (to the extent that turbine values were to decline), then there would be incremental dilution at the time of any such increase.

[(6) To the extent that the TSL is funded in Canadian Dollars(CAN $$); as the Shareholders Agreement is denominated in US Dollars (US $$), then for dilution calculations, we would use the "spot rate" [at the time of each cash infusion][at the time of the ECCA being signed] [ This point is to be discussed].

(7) Given the complexity, once the TWF is paid in full, to the extent that actual ECCA "principal" investments by Lehman exceed the sum of the "deemed" ECCA equity investments, then such excess, if any, shall count as dilution at such time.

*Analysis of GE parent Guarantee*

Regarding the GE Parent Guarantee, assuming that the ECCA is, in fact, entered into, there will be no dilution due to the signing of the GE Parent Guarantee; there will, however, be dilution under the GE Parent Guarantee to the extent that the sum of (1) actual payments under the GE Parent Guarantee by Lehman plus (2) actual "principal" investments by Lehman to Skypower under the ECCA, would exceed the face amount of the ECCA.

Any such dilution would be computed at the time such positive difference were to occur.