# EXHIBIT I

## AGREEMENT FOR TERMINATION OF INTERWIND RECEIVERSHIP
## AND RELATED MATTERS

This Agreement for Termination of the Interwind Receivership and Related Matters (this "Agreement") is entered into this _____ day of January, 2013, by and among HSH Nordbank AG, New York Branch ("HSH"), Bayerische Landesbank, New York Branch ("BLB"), Union Bank, Canada Branch (together with HSH and BLB, the "HSH Syndicate" or the "HSH Syndicate Lenders"), Lehman Brothers Holdings Inc., as debtor and debtor-in-possession ("LBHI") and Lehman Brothers Special Financing, Inc. as debtor and debtor-in-possession ("LBSF" and, together with LBHI, the "Lehman Entities");

WHEREAS LBHI indirectly owns a controlling equity interest in, and has made certain secured subordinated loans to Skypower Corp. now known as Interwind Corp. ("Interwind");

WHEREAS the HSH Syndicate Lenders have made certain senior loans to Interwind (the "Syndicate Loans") which are secured by certain specified assets of Interwind (the "HSH Syndicate Security");

WHEREAS, LBHI and LBSF, together with various affiliates, are each debtors in cases commenced under chapter 11 of title 11 of the United States Code (collectively, the "Lehman Bankruptcy Case") pending in the United States Bankruptcy Court for the Southern District of New York (the "U.S. Court");

WHEREAS Interwind has filed various claims against the Lehman Entities in the Lehman Bankruptcy Case, including Proof of Claim # 66602 against LBHI (the "ECA Claim"), Proof of Claim #33429 against LBSF ("Foreign Exchange Claim No. 1") and Proof of Claim # 33430 against LBSF ("Foreign Exchange Claim No. 2" and, together with the ECA Claim and Foreign Exchange Claim No. 1, the "Interwind Lehman Claims") and Interwind's right, title and interest in and to such Interwind Lehman Claims and all proceeds thereof are subject to the HSH Syndicate Security;

WHEREAS as the ECA Claim shall be resolved as part of this agreement, the Equity Contribution Agreement dated February 22, 2008 as among Skypower Corp., LBHI as sponsor and HSH as collateral agent, shall be terminated and treated as at an end;

WHEREAS the Interwind Receivership estate also holds additional property of Interwind, including the potential CPV Earnout as outlined in the agreement with CPV dated January 1, 2010; Professional Retainers held in respect of the Receivership Proceedings; the Panama Joint Venture interest; and cash totaling approximately CDN $2 million and US$ 590,000 less the unsecured amount of CDN$224,000 which shall remain with Interwind's Bankruptcy Trustee (once appointed). Such assets together with the Interwind Lehman Claims are collectively known as the "Transferred Assets". For the avoidance of doubt, the Transferred Assets shall not include the shares of subsidiary entities of Interwind, nor shall it include the books and records of Interwind that do not otherwise pertain to the Transferred Assets;

WHEREAS Interwind is currently in a receivership proceeding in Canada (the "Interwind Receivership Proceeding") and PricewaterhouseCoopers Inc. ("PwC") was appointed as receiver (the "Receiver") of Interwind and certain of its assets pursuant to an order of the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") made on March 30, 2010 (the "Receivership Order");

WHEREAS a case for Interwind under Chapter 15 of the United States Bankruptcy Code (the "Interwind Chapter 15 Case") was also commenced in the United States Bankruptcy Court for the District of Delaware and is currently pending; and

WHEREAS the parties to this Agreement have concluded that the continued administration of the Interwind Receivership Proceeding is not warranted and desire to enter into this Agreement in order to memorialize the terms and conditions pursuant to which they will, among other things, (i) seek to terminate the Interwind Receivership Proceeding, (ii) settle and compromise the allowed amount of certain of the Interwind Lehman Claims for the purposes of the Lehman Bankruptcy Case; (iii) transfer the Transferred Assets to the SPV.

NOW, THEREFORE, for good and valuable consideration, the receipt, sufficiency and adequacy of which is hereby acknowledged by each party, the HSH Syndicate and the Lehman Entities agree as follows:

I.    Termination of Interwind Receivership Proceeding

A.    HSH, as collateral agent for the HSH Syndicate in connection with the Syndicate Loans shall file in the Interwind Receivership Proceeding a foreclosure motion ("Foreclosure Motion") pursuant to which the HSH Syndicate will seek to have the Transferred Assets, but excluding (i) the unsecured cash in the amount of CDN$224,000 (the "Unsecured Amount") now being held by the Receiver; and (ii) a reserve for the amounts equal to the total professional fees of the Receiver and its U.S. and Canadian legal counsel incurred up to and including the date of the termination of the Interwind Receivership Proceedings and the Interwind Chapter 15 Case (the "Receiver Fee Reserve") to be determined by the Receiver in consultation with HSH and LBHI, acting reasonably, with any surplus remaining in the Receiver Fee Reserve to form part of the Transferred Assets, transferred to a newly formed special purpose entity (the "SPV") designated by the HSH Syndicate (save and except for any cash component that shall be remitted directly to HSH on behalf of the HSH Syndicate) in final satisfaction of the Syndicate Loan and related claims held by the HSH Syndicate against Interwind. The Receiver, LBSF and LBHI and its affiliates shall not object to the Foreclosure Motion or the provisions of the Order to be made in respect thereof ("Foreclosure Order"). The Receiver shall bring a motion in the Interwind Receivership Proceedings terminating the Receivership Proceedings ("Termination Order"). The Termination Order to be sought in the Interwind Receivership Proceeding terminating the Interwind Receivership Proceeding shall be in a form and substance acceptable to the HSH Syndicate, LBHI and the Receiver, acting reasonably, and shall include, *inter alia*, provisions requiring the

2

Receiver to seek and obtain a court order in the pending Interwind Chapter 15 Case recognizing the Foreclosure Order and the Termination Order and to thereafter dismiss such Interwind Chapter 15 Case.

B.    Following the transfer of the Transferred Assets by the Receiver to the SPV, as contemplated in Section I. A. above, the following steps shall be taken in the order set out below:

     i.    PwC shall assign Interwind into bankruptcy (the "Interwind Bankruptcy Proceeding") pursuant to its powers under section 5(p) of the Initial Receivership Order. PwC shall act as trustee in bankruptcy of Interwind (the "Bankruptcy Trustee") in the Interwind Bankruptcy Proceeding; and

     ii.    the Interwind Receivership Proceeding shall be terminated.

Neither the HSH Syndicate, LBSF nor LBHI shall object to the implementation of the steps set out above.

C.    The HSH Syndicate shall have no claim in the Interwind Bankruptcy Proceeding and shall not share in any distributions to Interwind's unsecured creditors that may be made therein.

II.    Creation of SPV and Allowance of Claims Against the Lehman Entities

A.    The HSH Syndicate shall form the SPV and shall be solely responsible for all costs required to create the SPV and to maintain its good standing. The HSH Syndicate Lenders currently contemplate that the SPV shall be formed as a limited liability company under Delaware law. All matters respecting the formation, capitalization and governance of the SPV are to be agreed to by the HSH Syndicate Lenders in their sole and absolute discretion.

B.    Except to the limited extent specifically provided herein, neither the Lehman Entities, their respective bankruptcy estates, nor any affiliate, or other person or entity related to, or claiming through, either of them shall have any right, title or interest in or to the SPV, the Transferred Assets, or to any receipts or proceeds generated by the future sale or disposition of any such Transferred Assets by the SPV.

C.    The Lehman Entities acknowledge that the SPV is to be operated initially for the benefit of the HSH Syndicate. The SPV shall report to the Lehman Entities by providing (i) all reports received from CPV; (ii) an accounting of all net proceeds from CPV; and (iii) an accounting of all net proceeds from other collateral. Reporting obligations shall continue until the later of CPV's obligations to report are at an end in December 2014; or the last of the Interwind Lehman Claims are sold, collected or extinguished by the SPV or distributions in respect therof

3

amounting to payments in full of the Interwind Lehman Claims are made by Lehman in the Lehman Bankruptcy Case. Other than providing the reports and accounting as specifically set forth in this section II C, the SPV shall otherwise be free from liability to the Lehman Entities in respect of the operations of the SPV, save and except for any gross negligence or willful misconduct on the part of the SPV and its directors and officers.

D.  As promptly as reasonably possible following receipt thereof, cash, receipts, and any net proceeds generated by the sale, transfer, settlement or other disposition of any asset of the SPV shall be applied and distributed by the SPV as follows:

1.  First to any reasonable professional fees (including attorney's fees) and costs and expenses (other than Receiver's costs) incurred by the SPV in generating such proceeds or incurred by the Receiver or the HSH Syndicate in connection with the preparation, negotiation and execution of this Agreement, the Interwind Receivership Proceeding, the termination of the Interwind Receivership Proceeding and the Interwind Chapter 15 Case, or the transfer of Interwind's remaining assets to the SPV as contemplated in Section I.A. hereof, but excluding any costs of the type referred to in Section II.A. hereof (collectively, "Professional Fees");

2.  Second to pay any amounts owing to Marathon as secured by the Marathon Charge granted in the Receivership Proceedings;

3.  Third to the HSH Syndicate Lenders, pro rata, based upon their interests in the SPV, until such time as the HSH Syndicate receives from the SPV or such other amounts as received directly from the Receiver under this agreement an aggregate amount equal to US $45 million being the total agreed and allowed remaining claim of the HSH Syndicate Lenders as against the Interwind estate after accounting for distributions made in the Interwind Receivership Proceedings (the "Interwind Claim"); and

4.  Fourth, any remaining amounts shall be distributed to LBHI.

For purposes of the foregoing, any proceeds received by the SPV in US dollars shall be used first to pay any expenses incurred by the SPV in US dollars. Proceeds received by SPV in Canadian dollars shall be converted to US dollars on the date of receipt. Notwithstanding the foregoing, any amounts derived from the CPV Earnout shall be applied and distributed by the SPV first to pay any amounts owing to Marathon as secured by the Marathon Charge, and then in accordance with the waterfall set out above.

E.  Upon repayment in full of the Interwind Claim, as herein defined, the SPV shall hold all remaining assets, if any, for the benefit of LBHI and any recoveries, income, profits or amounts earned in respect of such remaining assets shall be paid to LBHI in its capacity as secured creditor of Interwind. Such obligations

4

5837018 v9

survive the granting of any vesting order in the Interwind Receivership Proceedings. Notwithstanding the foregoing, at anytime following the payment in full of the Interwind Claim, the HSH Syndicate Lenders may cause the SPV to transfer and convey to a person or entity designated by the Lehman Entities the remaining Transferred Assets, if any, then held by the SPV. In the event that the Lehman Entities refuse to accept such transfer or conveyance, the HSH Syndicate Lenders in their absolute discretion shall be permitted to cause the remaining Transferred Assets to be sold or abandoned and to dissolve the SPV and shall provide the net proceeds, net of reasonable expenses, if any, to LBHI.

F.    The Lehman Entities each agree that following the transfer of the Interwind Lehman Claims to the SPV, as contemplated in Section I.A. hereof, the SPV shall be deemed to be the holder of such Interwind Lehman Claims for all purposes of the Lehman Bankruptcy Case and the SPV shall be novated to the position of Interwind as it relates to the Foreign Exchange Claim No. 1 and the Foreign Exchange Claim No. 2.

G.    HSH and the Lehman Entities acknowledge that:

1.    The Foreign Exchange Claim. No. 1 (Claim Number 33429) has been allowed against LBSF for all purposes of the Lehman Bankruptcy Case in the amount of US$11,990,427.28 as provided in and in accordance with the terms of that certain Termination Agreement dated April 29, 2009 ("First Termination Agreement") between LBSF and Interwind (the "FX Claim No. 1 Allowed Amount"). LBSF has agreed that such claim shall be an LBSF Class 4A Claim as defined in the Third Lehman Plan.

2.    The Foreign Exchange Claim No. 2 (Claim Number 33430 has been allowed against LBSF for all purposes of the Lehman Bankruptcy Case in the amount of US$2,700,000 as provided in the Termination Agreement (the "Foreign Exchange Claim No. 2 Allowed Amount"). LBSF agrees that such Foreign Exchange Claim No. 2 shall be an LBSF Class 4A Claim as defined in the Third Lehman Plan.

H.    The Lehman Entities each agree that upon the execution of this Agreement and the transfer of the Interwind Lehman Claims to the SPV:

1.    The ECA Claim (Claim Number 66602, as amended) shall be allowed against LBHI for all purposes of the Lehman Bankruptcy Case in the amount of US $50 Million (the "ECA Claim Allowed Amount"). LBHI agrees that such ECA Claim shall be an LBHI Class 7 Claim, as defined in the Third Amended Joint Plan of Reorganization dated August 31, 2011 as previously approved in the Lehman Bankruptcy case (the "Third Lehman Plan").

SE37018 v9

2.    In order to reflect the entry into this Agreement, the Parties hereto acknowledge and agree that (i) LBHI may object through a filing with the Bankruptcy Court in the Lehman Bankruptcy Case to any proofs of claim filed against LBHI in relation to the "ECA Claim" that are greater than the ECA Claim Allowed Amount, but for the avoidance of doubt LBSF shall not object to and shall allow such claim at the amount of the ECA Claim Allowed Amount, and (ii) LBSF may object through a filing with the US Court to any proofs of claim filed against LBSF in relation to the Foreign Exchange Claim No. 1 or the Foreign Exchange Claim No. 2 that are greater than the FX Claim No. 1 Allowed Amount or the FX Claim No. 2 Allowed Amount, respectively, or are unliquidated in nature, but for the avoidance of doubt LBSF has not objected to and has allowed such claims in the amounts of the Foreign Exchange Claim No. 1 Allowed Amount and the Foreign Exchange Claim No. 2 Allowed Amount, respectively; (iii) the SPV shall not pursue claims into the Lehman Bankruptcy case in respect of the ECA Claim in an amount greater than the ECA Claim Allowed Amount; (iv) the SPV shall not pursue claims into the LBSF Bankruptcy case in respect of the Foreign Exchange Claim No. 1 or the Foreign Exchange Claim No. 2 in an amount greater than the Foreign Exchange Claim No. 1 Allowed Amount or the Foreign Exchange Claim No. 2 Allowed Amount, respectively. Pending the filing of such objections, such proofs of claim and related Derivative Questionnaires and/or Guarantee Questionnaire, if any, shall be deemed so amended.

III.    Miscellaneous

A.    The Lehman Entities and the HSH Syndicate Lenders each acknowledge and agree that the actions provided for in Section I of this Agreement are subject in all respects to the approval of the Canadian Court by final Order, after the expiry of all appeal periods and the Board of LBHI.

B.    Each party hereto represents and warrants to each other party hereto that (i) the execution, delivery and performance by such party of this Agreement are within the powers of such party and have been duly authorized by all necessary action on the part of such party, (ii) this Agreement has been duly executed and delivered by such party and constitutes a valid and binding obligation of such party, enforceable against such party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations or agreements other than those expressly set forth in this Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, which it enters into voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other parties hereto will disclose facts material to the documents underlying the Interwind Lehman Claims or this Agreement except as contemplated herein and (vii) it knowingly waives any and all claims that this

SEE7018 v9

Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Agreement based upon presently existing facts, known or unknown.

C.    This Agreement may be executed in counterparts and each executed counterpart shall be deemed an original of this Agreement. Delivery of executed counterparts of this Agreement by telecopy or other secure electronic format (pdf) shall be effective as an original.

D.    THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES).

E.    Any legal action or proceeding with respect to this Agreement and any action for enforcement of any judgment in respect thereof may be brought in the courts of the State of New York, for the County of New York, or of the United States of America for the Southern District of New York, and, by execution and delivery of this Agreement, each party hereto hereby accepts for itself and in respect of its property, generally and unconditionally, the exclusive jurisdiction of the aforesaid courts and appellate courts from any appeal thereof. Each party hereto irrevocably consents to the service of process out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the applicable notice address set forth below such person's signature page hereto (as such address may be modified by prior written notice to each of the parties hereto). Each party hereto hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Agreement brought in the courts referred to above and hereby further irrevocably waives and agrees, to the fullest extent permitted by law, not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

F.    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

G.    The headings of the sections hereof are provided for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

H.    If any provision of this Agreement is held to be illegal, invalid or unenforceable, (a) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby and (b) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity

7

of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

IV.   Notices

A.   Any notice, direction, certificate, consent, determination or other communication required or permitted to be given or made under this Agreement shall be in writing and shall be effectively given and made if (i) delivered personally, (ii) sent by prepaid courier service or mail, or (iii) sent prepaid by fax or other means of electronic communication, in each case to the applicable address set out below:

HSH Syndicate
c/o HSH Nordbank AG
230 Park Avenue
32nd Floor
NY, NY 10169
USA

Attn.:  Carl Stetz, General Counsel and Robert Koester
        Email: carl.stetz@hsh-nordbank.com
        Email: robert.koester@hsh-nordbank.com
        Fax: (212) 407-6807

With copies to:

Michael Pepe
mpepe@wellford energy.com

And to:

Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue,
New York, NY 10169-0075
USA

Attn: Peter Feldman
Email: pfeldman@oshr.com

****

Lehman Brothers Special Financing Inc.
Derivatives Legal, c/o Office of General Counsel
1271 Avenue of the Americas, 39th Floor
New York, NY 10020

Tel. +1.646.285.9000

8

3837819 v9

\*\*\*\*

LBHI
1271 Avenue of the Americas, 40th Floor
New York, NY 10020

Attn.   Eleena Melamed, Managing Director and Ashvin Rao
Email: eleena.melamed@lehmanholdings.com
Email: ashvin.rao@lehmanholdings.com

With a copy to:

Stikeman Elliott LLP
Commerce Court West
199 Bay Street, Suite 5300
Toronto, ON M5L IB9

Attn: Elizabeth Pillon
lpillon@stikeman.com

*[Remainder of page intentionally left blank]*

5857078 v9

IN WITNESS WHEREOF, this Agreement is entered into on the date first written above.

HSH NORDBANK AG, NEW YORK BRANCH,
in its capacity as Administrative Agent and
Collateral Agent under the Third Amended and
Restated Credit Agreement dated as of February 22,
2008 Among

SKYPOWER CORP., as Borrower,
and

HSH NORDBANK AG, NEW YORK BRANCH,
as Administrative Agent and Collateral Agent

HSH NORDBANK AG, NEW YORK BRANCH,
as Issuing Bank

HSH NORDBANK AG, NEW YORK BRANCH,
as Sole Mandated Lead Arranger, and

BAYERISCHE LANDESBANK, NEW YORK
BRANCH,
as Co-Lead Arranger, and

UNION BANK OF CALIFORNIA, CANADA
BRANCH
as Co-Lead Arranger

By: _____

Its: _____
Michael Pape
Senior Vice President
HSH Nordbank AG, NY Branch

By: _____

Its: _____
David Watson
Vice President
HSH Nordbank AG, New York Branch

LEHMAN BROTHERS HOLDINGS, INC.,
Debtor and debtor-in-possession

By: _____

Its: _Senior Vice President_

*[Signature page to Agreement for Termination of Interwind Receivership and Related Matters]*

AMECURRENT 700168318.8 09-Jun-11 13:53

5837018 v9

LEHMAN BROTHERS SPECIAL FINANCING, INC.,
Debtor and debtor-in-possession
By:    Lehman    Brothers    Holding    Inc.,
      as Plan Administrator

By: _____
Its: _____

*[Signature page to Agreement for Termination of Interwind Receivership and Related Matters]*

AMECURRENT 700168318.8 09-Jan-11 13:53

5857018 v9

IN THE MATTER OF THE RECEIVERSHIP OF INTERWIND CORP.

Court File No.  CV-10-8637-00CL

BETWEEN:

HSH NORDBANK AG, NEW YORK BRANCH
Applicant

- and -

INTERWIND CORP.
Respondent

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

PROCEEDINGS COMMENCED AT TORONTO

---

### SUPPLEMENT TO THE NINTH REPORT OF THE
### RECEIVER (PRICEWATERHOUSECOOPERS INC.)

---

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza, 40 King Street West
Toronto. Ontario
M5H 3Y4

**Roger Jaipargas**
Tel: (416) 367-6266
Fax: (416) 361-7067
(LSUC #43275C)

**James Szumski**
Tel: (416) 367-6310
Fax: (416) 682-2811
(LSUC #56958S)

Lawyers for PricewaterhouseCoopers Inc., in its capacity as
Court-appointed Receiver of Interwind Corp.

71