WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**OMNIBUS REPLY TO RESPONSES OF**
**HEIDI STEIGER AND STEIGER ASSOCIATES LP TO**
**THE TWO HUNDRED FIFTY-FOURTH OMNIBUS OBJECTIONS TO CLAIMS**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator, files this reply in further support of its Two Hundred Fifty-Fourth Omnibus Objection to Claims [ECF No. 25059] (the "Objection"), and respectfully represents:

**REPLY**

1. The claims of Heidi Steiger and her family limited partnership Steiger Associates LP (the "Claimants"), which assert more than $33 million in the aggregate based on their ownership of common stock of LBHI, must be reclassified as equity.[1] The petition date

---

[1] Ms. Steiger filed claim number 32379 for $30 million (the "Steiger Claim") and Steiger Associates LP ("Associates" and together with Ms. Steiger, the "Claimants") filed claim number 32380 for $3,264,192 (the "Associates Claim" and together with the Steiger Claim, the "Claims").

value of their stock was only $58,157.93 and $8,726.85, respectively, (*see* Steiger Claim 3; Associates Claim 1) but they assert Claims approximately 448 times greater based alternatively on (i) the February 2004 value of LBHI's stock and (ii) the opportunity cost of forgone alternative employment worth $10 million-per-year. *See* Steiger Claim 1-2; Associates Claim 1.

2. As set forth in the Objection, Claimants possess an "equity security," defined in Bankruptcy Code section 101(16) as a "share in a corporation, *whether or not transferable* or denominated 'stock', or similar security." *See* Objection ¶ 20; *see also* 11 U.S.C. 101(16) (emphasis added). Claimants refer to their "stock," "stockholdings," and "LBHI shares," and it is undisputed that the Claimants possessed shares of common stock in LBHI. *See* Claims at 1; Resp. 1, ¶ 11. Thus, the Claims should be reclassified as "Equity Interests," as defined in and pursuant to the *Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors* [ECF No. 22973], in a reduced amount equal to the product of the relevant number of shares and their petition-date value.

3. Section 510(b) of the Bankruptcy Code likewise mandates that the remainder of the Claims – essentially for the loss over time in the value of LBHI's stock – be reclassified as Equity Interests. *See* Objection ¶¶ 20-23. Section 510(b) of the Bankruptcy Code states:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11. U.S.C. § 510(b).

4. In their responses, Claimants argue (i) section 510(b) does not apply based on a reading of the statute, (ii) the policies underlying section 510(b) do not apply to

2

subordination of *their* Claims, and (iii) they may recover on claims based on theories of breach of contract and unjust enrichment. *See* ECF Nos. 26041 at 6-11, 26050 at 6-11 (the "Responses"). As described below, none of these arguments withstands scrutiny.

5.      The Responses do not allege any fact or law sufficient to rebut the arguments set forth in the Objection. Claimants failed to and cannot satisfy their burden of proof to establish the validity of the Claims. *See, e.g., In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

I. **"Plain Meaning" of Section 510(b)**

6.      Claimants argue that the Claims should not be subject to subordination "under the 'plain meaning'" of section 510(b) because a "purchase or sale of a security" must be "voluntary," and Claimants did not voluntarily acquire LBHI stock. Resp. §I.A. Neither this proposition of law nor this asserted fact is supported.

7.      Claimants cite no case that holds that section 510(b) requires a voluntary affirmative act. To the contrary, courts have routinely subordinated shareholders' "claims" for losses on stock acquired in connection with mergers, including losses sustained when existing shares in a non-debtor entity were exchanged for shares in a debtor. *In re Peregrine Systems, Inc., et al.* is a case with facts that are nearly identical to those presented in the Claims. No. 02-12740, 2004 WL 716714, at *1 (Bankr. D. Del. Mar. 30, 2004). In that case, like the present case, the claimant had been the shareholder of a company acquired prepetition by the debtor. *Id.* As part of the merger, claimant exchanged all of the stock in his company for stock in the debtor. *Id.* As a condition of the merger, claimant signed a six-month employment agreement and a non-competition agreement. *Id.* The claimant filed a claim based upon the non-competition agreement, which the debtor sought to subordinate pursuant to section 510(b) of the Bankruptcy Code. *Id.* In that case, the court found that "it is clear from the face of the document that the

3

noncompetition agreement was entered into as part and parcel of the merger and for no other purpose or consideration." *Id.* at *2. As such, the court held that "this transaction falls squarely within the types of transactions required to be subordinated by 11 U.S.C. § 510(b)." *Id.*

8. Likewise, in *In re Kaiser Group Int'l, Inc., et al.*, the bankruptcy court subordinated shareholders' claims, including claims for fraud and breach of contract, for losses sustained in connection with a merger pursuant to which claimants' shares in the merged entity were exchanged for shares in the debtor. 260 B.R. 684, 689 (Bankr. D. Del. 2001). The result was the same in *Official Committee of Unsecured Creditors v. Fli Deep Marine, LLC, et al.*, where the bankruptcy court subordinated shareholders' claims, including claims for fraud, breach of fiduciary duty, and unjust enrichment, in connection with confiscation of shareholders' shares of the debtor pursuant to a merger. 2011 WL 160595, at *1, 7 (Bankr. S.D. Tex. Jan. 19, 2011). Courts have similarly found "purchases" where parties were "required to take" equity in other contexts. *See e.g., In re Enron Corp, et al.*, 341 B.R. 141, 151 (Bankr. S.D.N.Y. 2006) (finding claimants "purchased" stock options with their labor where it "was a condition of employment the Claimants willingly accepted in return for their labor"); *In re Motor Liquidation Co.*, No. 11-7893 (DLC), 2012 WL 398640, at *4 (S.D.N.Y. Feb. 7, 2012) ("Section 510(b) mandates subordination when an individual receives equity securities in exchange for labor even when there is 'no actual sale or purchase' of securities.") (*citing In re Med Diversified*, 461 F.3d 251, 258 (2d Cir. 2006)).

9. Claimants attempt to confuse their acquisition of stock in Neuberger Berman, Inc. ("NB") in 1999 with their acquisition of LBHI stock in 2003. But the NB stock (itself acquired in an IPO in exchange for Claimants' former partnership interests) (*see* Resp. ¶ 4) is relevant only insofar as it was part of the consideration exchanged by Claimants for equity in

4

LBHI. Further, Claimants contradict their own argument that they "did not acquire their LBHI shares directly or as part of a voluntary transfer or transaction" (*see* Resp. 7) by stating:

- "At the time of Lehman's acquisition of Neuberger, Steiger *agreed* that her stock holdings in Neuberger would be converted to shares of Lehman stock and would be subject to certain restrictions . . ." (Steiger Claim 1; *see also* Associates Claim 2);

- "In connection with the Acquisition [of NB by LBHI], Steiger *signed* an amendment to the Stockholders Agreement (the "Amended Agreement"), which contained new restrictions and restrictive covenants. The Amended Agreement was a pre-condition in the LBHI-NB agreement for the closing of LBHI's acquisition of NB." (Resp. ¶ 8 (emphasis added)); and

- Claimants "*agreed* to amend the Stockholders Agreement and *accept* new restrictions on transferring their stockholdings and on employment by Steiger in the financial services industry." Resp. 9 (emphasis added).

Based on the foregoing, Ms. Steiger's voluntary consent was required for the acquisition of NB by LBHI and the exchange of NB stock for LBHI stock. Ms. Steiger was free pre- and post-acquisition to make economic choices based on rational self-interest. Steiger had the choice to "vote with her feet" and leave NB or Lehman employment but chose instead to remain an employee and a holder of LBHI stock. Claimants confuse not having a choice with not having more desirable alternatives.

10. Claimants both rely on *Enron* and argue that it is inapposite because its conclusion was limited to stock options. Resp. 7-8. But it does not help Claimants to argue that the Claims are for actual shares of LBHI stock, not stock options, and Claimants fail to identify a single characteristic that would exclude the Claims from the reasoning in *Enron*. If anything, the case for subordination in the present case is even stronger than it was in *Enron*.

11. Based on the foregoing, the Court should subordinate the Claims pursuant to section 510(b) of the Bankruptcy Code.

5

## II. The Policies Underlying Section 510(b)

12. Section 510(b) was enacted specifically to prevent parties like Claimants from bootstrapping their way to parity with general unsecured creditors. *See Enron*, 341 B.R at 158 ("[T]he policy judgment behind section 510(b), is clear: 'Congress enacted § 510(b) to prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding.'"), *citing to Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 142 (3d Cir. 2002).

13. As Claimants note, "the real question is whether the claimant bargained for the risks and rewards of a holder of equity rather than a holder of debt." Resp. 9 (quoting *In re CIT Group*, 460 B.R. 633, 639 (Bankr. S.D.N.Y. 2011)). There is no question here that Claimants bargained for the rights of, and were, equity holders rather than debt holders:

- Ms. Steiger was a partner (i.e. equity owner) of NB before NB's IPO in 1999. Resp. ¶ 4.

- In 1999, Claimants' partnership interests in NB were converted to shares of equity in NB. *Id.*

- In 2003, Claimant's shares of equity in NB were converted to shares of equity in LBHI. Resp. ¶ 6.

At each stage, Claimants stood to benefit from the rewards of ownership but voluntarily assumed risks of share ownership. Indeed, between Claimants' acquisition of LBHI stock and Ms. Steiger's retirement, the value of their equity dropped approximately 29%, from $23,489,208.00 to $16,800,000.00. *See* Steiger Claim 1-2. (Claimants appear to distinguish and do not appear to claim for this diminution in value, as opposed to subsequent diminution.)

14. Further, reference to restrictions on transferability of Claimants' LBHI equity interests does not support Claimants' position. Claimants cite no decision that held that

6

transfer restrictions on shares of stock or non-competition agreements tied to shares transformed equity interests into claims. Bankruptcy Code section 101(16) states that stock is an "equity security" "*whether or not transferable*," and a "security," as defined in Bankruptcy Code section 101(49), includes interests such as the "interest of a limited partner in a limited partnership," the transfer of which is almost always restricted. Courts have, in fact, subordinated as equity proofs of claim based on securities subject to transfer restrictions, *see Enron*, 341 B.R. at 146 (subordinating where claimants "could not . . . transfer the stock options themselves or sell the options on the open market"), and based on a non-competition agreement executed in connection with a share exchange, *see Peregrine*, 2004 WL 716714 at *2. In addition, transfer restrictions on Claimants' shares of LBHI equity appear irrelevant, as Claimants' preexisting interests in NB were subject to the very same types of restrictions. *Id.* at ¶ 5. While Claimants may have preferred to receive alternative consideration from NB or LBHI, they did not bargain successfully for or receive it.

        15.    Claimants' final "policy" argument similarly fails. Claimants argue the "causal connection" between the purchase or sale of their securities was too remote to require subordination of their contract claim. *See* Resp. 10. But to reach this conclusion, Claimants mistakenly argue that they acquired the relevant equity in 1999, referring to Claimants' acquisition of stock in NB. *Id.* The relevant transaction, however, was the subsequent exchange of NB's restricted equity for LBHI equity and Claimants' agreements to restrictions thereon at that time.[2] Claimants argue that they did not receive fair value in the exchange because, five years later, the consideration (i.e., LBHI stock) decreased in value. The acquisition of LBHI stock is, thus, directly connected to the damages asserted in the Claims. The facts in the present

---

[2] Claimants did not submit any documentation governing Ms. Steiger's termination of employment.

case are distinguishable from those in *CIT Group*, a case in which the court declined to subordinate a claim pursuant to an agreement unrelated to the equity in or ownership of the debtor. *See In re CIT Group,* 460 B.R. at 641.

16. Thus, in accordance with well-established precedent, the Claims should be subordinated pursuant to Bankruptcy Code section 510(b). *See, e.g., KIT digital, Inc. v. Invigor Group Ltd. (KIT digital, Inc.)*, 497 B.R. 170, 183 (Bankr. S.D.N.Y. 2013) (subordinating a claim under section 510(b), holding that "by agreeing to accept stock instead of cash . . . [the claimant] subjected itself to the greater risk that the price of the stock it would then receive might go down" and that "[the claimant] also would get the benefits if the price of the stock went up."); *see also In re Med Diversified, Inc.,* 461 F.3d at 257; *Enron*, 341 B.R at 158.

## IV. Contract And Equitable Arguments

17. In their Claims and in the Responses, Claimants state that LBHI is liable for "breach of contract and unjust enrichment," but they assert none of the required prima facie elements of such causes of action. Specifically, with respect to a breach of contract claim, Claimants cite no obligation which LBHI failed to perform. *See* Resp. 11. Likewise, with respect to a claim for unjust enrichment, Claimants have not established that LBHI obtained a benefit without providing compensation. *See id.* Ms. Steiger negotiated for and obtained equity in the companies for which she worked. The equity was valuable when obtained, but as a professional investment advisor, Ms. Steiger was necessarily aware of the risks associated with long-term investments in equity markets.

18. Regardless of Claimants' characterizations, the Claims are governed by section 510(b) because the alleged damages relate to Claimants' possession of LBHI stock and would not have been incurred but for Claimants' acquisition of LBHI stock. *See Telegroup, Inc.*,

8

281 F.3d at 135, *citing In re Granite Partners L.P.*, 208 B.R. 332 (Bankr. S.D.N.Y. 1997) (holding that section 510(b) should be read broadly so that claims which would not have arisen but for the purchase of the securities, may arise from that purchase, even though the actionable conduct occurred after the transaction was completed.). "So long as the nature of the damage or harm complained of by a shareholder can be said to result as a consequence of his having purchased or sold shares of stock or other securities of the debtor, the claimant falls within the scope of Section 510(b) . . . ." *In re Worldcom, Inc.*, 329 B.R. 10, 14 (Bankr. S.D.N.Y. 2005)); *see also Queen v. Official Comm. Of Unsecured Creditors (In re Response U.S.A., Inc.)*, 288 B.R. 88, 94-95 (D.N.J. 2003) (affirming bankruptcy court's holding that claims seeking cash compensation under the terms of a stock purchase agreement for the decline in value of stock were damage claims that fit within the scope of section 510(b) rather than claims for a contractual right to payment); *In re PT-1 Commc'ns, Inc.*, 304 B.R. 601, 608 (Bankr. E.D.N.Y. 2004) (holding that "the claim need not flow directly from the securities transaction, but can be viewed as 'arising from' the transaction if the transaction is part of the causal link leading to the injury"); *KIT digital,* 497 B.R. at 183 (holding a claim must be subordinated under section 510(b) in part because claimant "didn't bargain for the difference in value in cash" but rather "for the right to receive more stock, and the gravamen of its claim is that it didn't get it. But all that [the claimant] was entitled to demand was more stock.").[3]

19. There is absolutely no basis for Claimants' position that they are now entitled to a claim for cash consideration or anything other than the stock they already received from LBHI as consideration for Claimants' compliance with restriction on competitive

---

[3] LBHI does not concede Claimants suffered any injury or any liability for the Claims.

employment activities.[4]  *See* Resp. 11.  Claimants' disappointment that their LBHI stock lost value does not give rise to a cognizable claim.[5]  Ms. Steiger made an investment decision every day that she chose to retain restricted LBHI stock worth less than the $30 million for which she could have traded it.  *See* Steiger Claim 2.  LBHI has no liability for these ultimately poor decisions.

---

[4] The Court recently rejected similar arguments of claimants seeking more than an Equity Interest in LBHI:

> They … accepted the benefit …, which was during the years leading up to the bankruptcy the greatest rise in the stock market ever, … and they got that stock…. They got the full benefit of that run up . . . You can't accept the benefit of a program and then claim that it's not what it was that entire time. You can't accept the characterization of it for that entire period of time and then when it becomes less valuable to you you say, forget that history, now what I want is something else.

Hr'g Tr. 98:7-13 and 99: 15-19, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Apr. 3, 2014).

[5] Courts have subordinated claims to the level of equity even when the debtor failed to deliver consideration that would be considered equity.  *See, e.g., Med Diversified*, 461 F.3d. 256 (affirming subordination of claim of a former executive of debtor alleging breach of termination agreement based on failure to issue common stock in the debtor to the employee *in exchange for* the employee's stock in another company); *American Broadcasting Systems, Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 831 (9th Cir. 2001) (subordinating shareholders' claims in connection with a merger that never closed where claimants never received shares in the debtor).

10

## RESERVATION OF RIGHTS

20. The Plan Administrator reserves the right to object to the Claims on any other basis. The Plan Administrator further reserves the right to conduct discovery as to the Claims and any matters raised by Claimants and to supplement this and other filings as a result thereof.

## CONCLUSION

WHEREFORE for the reasons set forth above and in the Objections, the Plan Administrator respectfully requests that the Court enter the annexed order reclassifying the Claims as equity interests and granting such other and further relief as the Court may deem just and appropriate.

Dated: June 6, 2014
      New York, New York

                                    /s/ Ralph I. Miller
                                    Ralph I. Miller
                                    Garrett A. Fail

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Lehman Brothers Holdings Inc.
                                    and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                   :    Chapter 11 Case No.
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,            :    08-13555 (SCC)
                                                        :
        Debtors.                                        :    (Jointly Administered)
---------------------------------------------------------------x

**ORDER GRANTING TWO**
**HUNDRED FIFTY-FOURTH OMNIBUS**
**OBJECTION TO CLAIMS (EMPLOYMENT-RELATED CLAIMS)**

Upon the two hundred fifty-fourth omnibus objection to claims, dated February 7, 2012 (the "Two Hundred Fifty-Fourth Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (the "Chapter 11 Estates"), pursuant to section 502 of the Bankruptcy Code, Rule 3007 of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF No. 6664]; and due and proper notice of the Two Hundred Fifty-Fourth Omnibus Objection to Claims having been provided, and it appearing that no other or further notice need be provided; and an opposition to the Two Hundred Fifty-Fourth Omnibus Objection to Claims having been interposed by Heidi Steiger and Steiger Associates L.P. [ECF Nos. 26041, 26050] (collectively, the "Responses"); and LBHI having filed a reply thereto [ECF No. ___] (the "Reply"); and the Court having reviewed the Two Hundred Fifty-Fourth Omnibus Objection to Claims, the Responses, and the Reply, and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Two Hundred Fifty-Fourth Omnibus Objection to Claims and the Reply

---

[1] Terms not defined herein shall have the same meaning ascribed to them in the Two Hundred Fifty-Fourth Omnibus Objection to Claims.

at the Hearing establish just cause for the ruling herein; and the Court having determined that the relief requested in the Two Hundred Fifty-Fourth Omnibus Objection to Claims and the Reply and granted herein is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest; and based upon the reasoning and the rulings set forth on the record at the Hearing; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Responses are overruled; and it is further

ORDERED that the relief requested in the Two Hundred Fifty-Fourth Omnibus Objection to Claims and the Reply is granted to the extent provided herein; and it is further

ORDERED the Employment-Related Claims listed on <u>Exhibit 1</u> annexed hereto are hereby reclassified as Equity Interests (as such term is defined in the Modified Third Amended Joint Chapter 11 Plan of LBHI and its Affiliated Debtors [ECF No. 22973]) having the same priority as, and no greater priority than, common stock interests in LBHI; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of, and all rights to object and defend on any basis are expressly reserved with respect to any claim listed on <u>Exhibit A</u>, <u>Exhibit B</u>, and <u>Exhibit C</u> annexed to the Two Hundred Fifty-Fourth Omnibus Objection to Claims that is not listed on <u>Exhibit 1</u> annexed hereto; and it is further

      ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2014
      New York, New York

                                  _____
                                  UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**OMNIBUS OBJECTION 254: EXHIBIT 1 - CLAIMS TO BE RECLASSIFIED AS EQUITY INTERESTS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS |
|---|---|---|---|---|---|---|
| 1 | STEIGER ASSOCIATES LP | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 32380 | $3,264,192.00 |
| 2 | STEIGER, HEIDI L. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 32379 | $30,000,000.00 * |
| | | | | | TOTAL | $33,264,192.00 * |