**SAUL EWING LLP**
A Delaware LLP
Francis X. Riley III
750 College Road East
Princeton, NJ 08540
(609) 452-3100

*Attorneys for PHH Home Loans, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | Re: Docket No. 44450 |

**OBJECTION OF PHH HOME LOANS, LLC TO MOTION FOR ALTERNATIVE
DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION
CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

PHH Home Loans, LLC ("PHH") hereby objects (the "Objection") to the *Motion for Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers* (the "Motion"), filed by Lehman Brothers Holdings Inc. (the "Plan Administrator" or "LBHI"), and in support hereof, respectfully states as follows:

I.   **PRELIMINARY STATEMENT**

1.   The Plan Administrator has not sued PHH on any claim. If the Plan Administrator wishes to assert a claim against PHH, the only proper vehicle is an adversary proceeding or other litigation in a court of competent jurisdiction. In such litigation, PHH would have the protections of court procedural rules to protect itself from meritless claims. With the proposed ADR procedures, however, the Plan Administrator need do nothing more than serve PHH with a copy of the Motion, and PHH is automatically subject to a complex and expensive

633355.1 6/12/14

mandatory mediation process. The ADR procedures proposed in the Motion are an inappropriate and unprecedented shortcut around PHH's procedural due process rights, and should be denied.

II. **OBJECTION**

    A. **The Relief Requested in the Motion Would Deny PHH Its Procedural Due Process Rights**

2. A proceeding to recover money or property is an adversary proceeding. See Fed. R. Bankr. P. 7001(1) ("The following are adversary proceedings . . . a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002 . . . ."); see generally 10 Collier on Bankruptcy ¶ 7001.02 (Alan N. Resnick and Henry J. Sommer eds., 16th ed.) ("Proceedings within Rule 7007(1) include actions by trustees or debtors to collect on the debtor's accounts receivable [and] to obtain a money judgment based on a breach of contract or tortuous injury to a debtor. . . ."). The Bankruptcy Rules give "an adversary proceeding all the trappings of traditional civil litigation." In re Celotex Corp., 124 F.3d 619, 630 (4th Cir. 1997); Diamond Mortg. Corp. of Illinois v. Sugar, 913 F.2d 1233, 1241 (7th Cir. 1990). The Part VII Bankruptcy Rules largely incorporate the procedural rules of federal district court, and ensure that litigants enjoy the same due process protections in Bankruptcy Court. See, e.g., In re Benjamin, No. 13-30646, 2013 WL 5310530, at *2 (Bankr. N.D.N.Y. Sept. 19, 2013) (holding that the Part VII Rules are to ensure "that litigation in bankruptcy court corresponds to a large extent to litigation in the district court, governed by the same procedural due process norms."); In re Futrell, 69 B.R. 378 (Bankr. W.D. La. 1987) (holding that the purpose of establishing special adversary procedures for certain bankruptcy disputes "appears to be the need to invoke the due process solemnities indicative of the significance of the issues litigated"). Here, however, the Plan Administrator attempts to circumvent these procedural due process protections.

3.  Under the Part VII Rules, in order to validly assert a claim, a plaintiff must plead allegations consistent with the "plausibility" standard of Twombly/Ashcroft in a complaint that is signed by an attorney pursuant to Rule 11 of the Federal Rules of Civil (as incorporated in Bankruptcy Rule 9011). Here, however, the Plan Administrator seeks to impose the ADR Procedures on Sellers merely on the Plan Administrator's "good faith belief" that a Seller is "potentially subject to . . . Indemnification Claims." See Mot. ¶ 20. Notably, and in stark contrast to the pleading requirements of Bankruptcy Rule 7008, the Motion does not specifically name the Sellers that the Plan Administrator purports to make subject to the ADR Procedure. Rather, the Motion merely generally asserts that there are "3,000 Sellers," and served the Motion on thousands of parties, including PHH.

4.  Under the Part VII Rules, a defendant that wishes to contest issues such as subject matter jurisdiction or sufficiency of pleading may file a motion to dismiss. See Fed. R. Bankr. P. 7012. Here, however, asserted Sellers are subject to the ADR Process, regardless of any such issues and without such protections. This is not a trifling distinction in this situation. PHH and the other asserted Sellers are not put on notice of the source of their asserted indemnification obligations beyond a conclusory statement in the Motion. See Mot. ¶ 7 ("[T]he Sellers granted the contractual right to require Sellers to indemnify the purchaser . . . ."). The Plan Administrator's bare conclusion raises more questions than it provides answers: What are the loans PHH purportedly sold to LBHI? What were the losses or damages with respect to these purportedly sold loans? What is the source of PHH's alleged contractual obligation to hold LBHI harmless? If the claims against PHH were being asserted in a complaint (the only proper device for the Plan Administrator to assert affirmative claims for relief in this Court), the Plan

Administrator's general, conclusory statement would not survive a Rule 12(b)(6) motion under the Twombly/Iqbal standard.

5. Additionally, the indemnification claims that the Plan Administrator asserts against PHH and the other asserted Sellers were apparently purchased by LBHI post-petition. See Mot. ¶ 12 ("After meeting its obligations under the Plan to compensate Fannie Mae and Freddie Mac for the defective loans, LBHI then acquired the contractual right to pursue the Indemnification Claims against Sellers." (emphasis added)). Were this the basis for subject matter jurisdiction in a complaint, PHH would challenge any asserted "related to" subject matter jurisdiction by filing a Rule 12(b)(1) motion. But if the Motion is granted, PHH is prevented from making this challenge.

6. The Motion attempts to force PHH into an ADR process without the procedural due process protections of Rule 12 and other provisions of the Part VII Rules. As such, the Motion should be denied.

### B. The Motion Does Not Provide Sufficient Basis or Authority for the Relief Requested in the Motion

7. The Motion cites a number of bases for the relief requested, but none of these bases stand up to scrutiny.

#### i. Section 105(a) Does Not Support the Requested Relief

8. The Motion cites section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") as a basis for relief. As additional support for invoking this Court's section 105 power, the Plan Administrator cites New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 91 (2d Cir. 2003). The problem with the Plan Administrator's position is that section 105 authority is not a stand-alone power. Rather, as stated in the very case cited by the Plan Administrator, section 105 only

authorizes the Court to use its equitable powers to carry out the provisions of the Bankruptcy Code. See id. at 91 ("The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing. This language 'suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective.'" (emphasis in original) (quoting 2 Collier on Bankruptcy ¶ 105.01[1])).[1] The Plan Administrator cannot invoke this Court's section 105 power in this manner because there is no underlying basis for the Motion under the Bankruptcy Code or the Bankruptcy Rules.

### ii. *The Standing Order Does Not Support the Requested Relief*

9. As additional support for the relief requested the Plan Administrator cites the Court's General Order M-143 (defined in the Motion as the "Standing Order"). See Mot. ¶ 18. True, paragraph 1.1 of the Standing Order provides that the Court may "order assignment of a matter to mediation upon its own motion, or upon motion by any party in interest." However, importantly for this Motion, the Standing order provides, "The motion by a party in interest must be filed promptly <u>after filing the initial document in the matter.</u>" (Emphasis added.) Thus, while the Standing Order undoubtedly provides authority for mediation of a pending adversary proceeding, it only authorizes the imposition of ADR <u>after</u> the adversary proceeding is initiated. The Standing Order is not some independent basis for imposing ADR where there is no litigation

---

[1] Dairy Mart does not at all support the Plan Administrator's requested relief. In that case, the Second Circuit confirmed the bankruptcy court's denial of equitable relief under section 105, where the creditor was not entitled to substantive relief under the Bankruptcy Code. Id. at 92 ("It may be that [the creditor's] motion 'implicates' sections 361 and 362 of the Bankruptcy Code, but we have determined that [the creditor] is not entitled to substantive relief under those sections. Because no provision of the Bankruptcy Code may be successfully invoked in this case, section 105(a) affords [creditor] no independent relief."). Here, like the creditor in Dairy Mart, the Plan Administrator does not identify any underlying Bankruptcy Code or Bankruptcy Rule provision that would justify this relief, and thus the Plan Administrator's request for relief under section 105(a) should be rejected.

brought against a party, as advanced by Plan Administrator. Also, the Standing Order makes clear that the order is not an end-run around the procedural protections of the Bankruptcy Rules: "Nothing in this General Order shall relieve any debtor, party in interest, or the U.S. Trustee from complying with any other court orders, U.S. Code, the Federal Rules of Bankruptcy Procedure, or this court's Local Rules. . . ." As such, the Standing Order does not support the relief requested in the Motion.

### *iii.   The Purported "Similar Motions" Not Support the Requested Relief*

10.   As an additional justification for the Motion, the Plan administrator cites purportedly "similar motions to implement mediation procedures" in three cases: (1) the Alternative Dispute Procedures Order for Affirmative Claims of Debtors Under Derivative Contracts entered in these chapter 11 cases (the "Derivative Contracts ADR Procedures Order"), (2) an order entered in *In re Enron Corp.*, and (3) an order entered in *In re Ames Dept't Stores, Inc.*

11.   The *Enron* and *Ames Department Stores* orders required mediation in previously filed adversary proceedings, and thus are inapposite to the Plan Administrator's Motion. PHH has no quarrel with the proposition that this Court has the power to order pending adversary proceedings to mediation. However, the orders entered in these other cases do not support the proposition that parties can be forced into mediation where there is, at least as to PHH, no pending litigation.

12.   The Derivative Contracts ADR Procedures Order deserves a closer analysis than it is given in the Plan Administrator's Motion. When the proceedings relating to the Derivative Contracts ADR Procedures Order are examined closer (as PHH does below), it becomes clear that it does not support the Plan Administrator's requested relief here because the Derivative

Contracts ADR Procedures Order only imposed ADR on parties to ongoing derivative contracts, not on parties against whom the debtor had unasserted litigation claims.

13. On July 20, 2009, LBHI filed the motion [Docket No. 4453] (the "Derivative Contracts ADR Motion"), attached hereto as **Exhibit A**, to approve the Derivative Contracts ADR Procedures Order. Paragraph 3 of the proposed form of order filed with the Derivative Contract ADR Motion provided that "[a]ny Debtor may designate any dispute regarding a Derivative Contract with Recovery Potential to the Derivatives ADR Procedures." (Emphasis added.) As provided in paragraph 9 of the Derivative Contracts ADR Motion, some of the derivative contracts had been terminated, which resulted in amounts owed LBHI (i.e., a claim against third parties). Therefore, just like the proposed form of order filed with the instant Motion, the proposed form of order filed with the Derivative Contracts ADR Motion allowed LBHI to impose ADR procedures on any third party (including a party against whom LBHI had an unasserted litigation claim), regardless of whether that party had filed a proof of claim or was facing pending litigation from LBHI.

14. However, there were fifty-six objections to the Derivative Contracts ADR Motion, and the proposed form of order was modified. On September 11, 2009, LBHI's counsel filed a supplemental declaration (attached hereto as **Exhibit B**), which in paragraph 8 of the declaration, recited that, because of the objections, LBHI was narrowing the scope of the "disputes" that would be subject to the ADR procedures:

> Such new changes reflect significant additional accommodations Debtors made in the spirit of compromise and cooperation, including:
> \* \* \*
> - clarified the meaning of "dispute" by expressly providing that Debtors will not implement Derivatives ADR Procedures with respect to a Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated and (ii) with respect to which a Derivatives Counterparty has not failed to make a

> payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Derivatives Contract with Recovery Potential that purports to permit a Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates). . . .

This modified language was incorporated into the Derivative Contracts ADR Procedures Order that was signed by the Court, apparently on a largely (if not wholly) consensual basis.

15. In summary: The proposed form of order originally filed with the Derivative Contracts ADR Motion sought to impose mediation regarding "any disputes" relating to a derivative contract. But the Derivative Contracts ADR Procedures Order actually signed by the Court (the one cited by the Plan Administrator in support of this instant Motion) only imposed ADR on parties to derivative contracts that had not been terminated and were not in default (and were therefore ongoing, mutual, post-petition obligations of both parties). In citing the Derivative Contracts ADR Procedures Order as a basis for this Motion, the Plan Administrator is comparing apples to oranges.

16. Accordingly, the three purportedly similar cases of ADR advanced by the Plan Administrator are inapposite to the situation before this Court in this Motion. In those other cases, ADR was only imposed on parties that (1) were facing a pending adversary (as in the case of *Enron* and *Ames Department Stores*) or (2) were party to an ongoing derivative contract (as in the case of the Derivative Contracts ADR Procedures Order). None of these other orders support imposing ADR in this situation, where there is no ongoing post-petition operational relationship and there is no pending litigation.

### C. The Proposed ADR Procedure Is Biased Towards the Plan Administrator and Against PHH and Other Asserted Sellers

17. Independent of the issues identified above, PHH objects to the ADR procedures for the following reasons.

18. For any failure of a Seller to respond during the "Notice/Response Stage" (as defined in the Motion), LBHI has the unilateral right to seek sanctions. Mot. ¶ 27. These procedures are inflexible and inappropriate. For example, what if PHH's response is a request for clarification or for more information? Is that a sanctionable offense? What if PHH believes that the Plan Administrator's statement of position is insufficient and requests a more definitive statement? Is that a sanctionable offense? The threat of sanctions is needlessly *in terrorum*, but if the Court is inclined to include this feature, both parties should have a right to seek sanctions.

19. Although not mentioned in the proposed order, the Motion provides that "multiple mediations [are] to occur simultaneously," apparently before the same mediator, with no limit on the number of mediations that may occur at the same time. Mot. ¶ 30. Having one mediator preside over multiple simultaneous mediations would be unduly prejudicial to PHH. While this system would no doubt be convenient for the Plan Administrator, it would be a waste of time and expense for PHH and the other asserted Sellers.

20. Paragraph 16 of the proposed order provides that "[a]ll parties . . . will share equally in the reasonable fees and expenses of the mediator." PHH has not requested mediation and objects to bearing this expense. If the Plan Administrator requests mandatory mediation via the Motion or otherwise, the estate should be responsible for payment of all fees and costs charged by the mediator. An equal sharing of the mediator's fees is particularly inappropriate if, as provided in paragraph 30 of the Motion, multiple mediations are to occur simultaneously before a single mediator.

21. Paragraph 10.b of the proposed order gives the mediator the broadest possible discretion, "including the discretion to certify specific legal issues to the Court for decision." Such authority is in conflict, or at least inconsistent, with the confidentiality provisions in paragraph 13 of the proposed order and paragraph 5.0 of the Standing Order.

## IV. CONCLUSION

22. For the foregoing reasons, the Motion should be denied as to PHH.

WHEREFORE, PHH requests that this Court deny the relief requested in the Motion, and grant PHH such other and further relief as is proper.

Respectfully submitted,

**SAUL EWING LLP**

By: /s/ *Francis X. Riley, III*
Francis X. Riley, III
Lucian B. Murley (DE Bar No. 4892)
750 College Road East, Suite 100
Princeton, New Jersey 08540
Tel: (609) 452-3150
Fax: (609) 514-3744

*Counsel for PHH Home Loans, LLC*

Dated: June 12, 2014