BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
Mindy A. Mora
State Bar No. MM8305
Philip R. Stein (admitted *pro hac vice*)
1450 Brickell Avenue
Suite 2300
Miami, Florida 33131
Telephone:  (305) 350-2414

*Attorneys for Universal American Mortgage Company, LLC,*
*Standard Pacific Mortgage, Inc., Shea Mortgage, Inc.,*
*CTX Mortgage Company, LLC, PrimeLending, a PlainsCapital*
*Company, Allied Mortgage Group, Inc., and Direct Mortgage, Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,:    Case Nos. 08-13555 (SCC)
                                          :
         Debtors.                         :
                                          :        Hearing:  June 19, 2014
-------------------------------------------------------------------x
```

**RESPONSE OF UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,
STANDARD PACIFIC MORTGAGE, INC., SHEA MORTGAGE, INC., CTX
MORTGAGE COMPANY, LLC, PRIMELENDING, A PLAINSCAPITAL, COMPANY,
ALLIED MORTGAGE GROUP, INC., AND DIRECT MORTGAGE, CORP. IN
OPPOSITION TO DEBTORS' MOTION FOR ALTERNATIVE DISPUTE
RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE
DEBTORS AGAINST MORTGAGE LOAN SELLERS [DOCKET NO. 44450]**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................................ii

I. PRELIMINARY STATEMENT ................................................................................................. 1

II. ARGUMENT ........................................................................................................................... 3

      A.      Requiring Mortgage Sellers to Engage in ADR Procedures of Claims That Are Very Likely Time-Barred Is Patently Unfair and Prejudicial. ................................................ 3

      B.      Mortgage Sellers Should Not Be Compelled to Engage in ADR Procedures to Which They Have Not Consented. .......................................................................................... 4

      C.      The Proposed ADR Mechanism Is One-Sided and Procedurally Unfair. ..................... 5

      D.      The Court Does Not Have Constitutional Authority to Finally Adjudicate the Debtors' Indemnification Claims ................................................................................................. 6

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989)..................................................................................................8, 9

*Great Am. Ins. Co. v. Ramasso,*
    402 N.Y.S.2d 556 (N.Y. Sup. Ct. 1978) ....................................................................4

*Murray's Lessee v. Hoboken Land & Improvement Co.,*
    59 U.S. 272 (1856)......................................................................................................7

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
    102 S.Ct. 2858 (1982)...........................................................................................7, 8, 9

*Rico Tile Co. v. Persichilli Homes, Inc.,*
    312 N.Y.S.2d 515 (Dist. Ct. 1970) ............................................................................4

*Schenkers Int'l Forwarders, Inc. v. Meyer,*
    564 N.Y.S.2d 323 (1991)............................................................................................4

*Stern v. Marshall,*
    131 S.Ct. 2594 (U.S. 2011).................................................................................6, 7, 8, 9

Universal American Mortgage Company, LLC ("UAMC"), Standard Pacific Mortgage, Inc. ("Standard Pacific"), Shea Mortgage, Inc. ("Shea"), CTX Mortgage Company, LLC ("CTX"), PrimeLending, a PlainsCapital Company ("PrimeLending"), Allied Mortgage Group, Inc. ("Allied"), and Direct Mortgage, Corp. ("Direct Mortgage," and together with UAMC, Standard Pacific, Shea, CTX, PrimeLending, Allied and Direct Mortgage, the "Mortgage Sellers"),[1] object to the Debtors' Motion for Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers (the "Motion").   In furtherance hereof, the Mortgage Sellers respectfully state as follows:

## I.
## PRELIMINARY STATEMENT

The Debtors have prosecuted state law indemnification and loan repurchase claims in non-bankruptcy federal courts, and in state courts, against literally hundreds of residential mortgage loan originators and sellers for at least the last five years.  They and/or their affiliates have in that time period sued each of the Mortgage Sellers, and even entered settlement agreements with some of them (for example, Direct Mortgage) with comprehensive releases precluding any future claims. Never during that five-year period have the Debtors filed any mortgage loan indemnification or repurchase claims in bankruptcy court, or even suggested to any court or any counter-party that this Court's involvement in any such actions was necessary or advisable; to the contrary, the Debtors alleged that each court in which they instituted suit had

---

[1] The Mortgage Sellers have filed a joint Notice of Limited Appearance solely to object to the Motion.  Neither this Objection nor any subsequent appearance, pleading, proof of claim, or other writing or conduct shall constitute an admission or acknowledgement of the Court's jurisdiction over them or over any Indemnification Claims, as defined in the Debtors' Motion, nor shall it constitute a waiver of any: (a) rights to have any and all final orders in any and all non-core matters entered only after *de novo* review by a United States District Court; (b) rights to trial by jury in any proceeding as to any and all matters so triable; (c) rights to have the reference withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; and (d) other rights, claims, actions, defenses, setoffs, recoupments, or other matters under any agreement, law or equity. All of such rights hereby are reserved and preserved without exception and with no purpose of confessing or conceding jurisdiction in any way by this filing or by any other participation in this proceeding.

1

jurisdiction over the controversy. The Debtors' apparent change of heart (or desire for a change of litigation tactics) does not confer on this Court constitutional authority to exercise jurisdiction over new claims of this same type that the Debtors may believe they can bring in the future, or to impose alternative dispute resolution procedures on parties who never consented to such procedures, particularly in the absence of a filed action. There is no justification for hailing non-parties to these bankruptcy cases to New York at their own expense in a one-sided cost-shifting process which the Debtors admit is designed to save them the expense and burden of affording the Mortgage Sellers due process. These are private, state law claims of the Debtors against non-creditors with no physical nexus to New York, and in no way does the existence of these claims hinge on the concurrent existence of bankruptcy proceedings. Most fundamentally, this Court should not force the Mortgage Sellers into an ADR process to which they never consented, in a proceeding in which they have no involvement, in a jurisdiction in which the Mortgage Sellers have no physical nexus.

Moreover, the Debtors propose to initiate an ADR process that is not merely non-consensual (thus violating all typical notions of ADR as a voluntary process), but patently unfair, in that, among other things, the Debtors would unilaterally select the roster of purported neutrals from which a mediator would be selected, and impose unfair ground rules on the Mortgage Sellers that they had no hand in establishing.

For these reasons, the Debtors' Motion should be denied.

## II.
## ARGUMENT

**A.**    **Requiring Mortgage Sellers to Engage in ADR Procedures of Claims That Are Very Likely Time-Barred Is Patently Unfair and Prejudicial.**

For the past five years, the Debtors (and their non-debtor affiliates, such as Aurora Commercial Corp., formerly known as Lehman Brothers Bank, FSB) have filed hundreds of lawsuits throughout the country against sellers of mortgage loans, including the Mortgage Sellers, seeking repurchase of loans or indemnification of its alleged "loan defect" claims. Indeed, there are *pending* lawsuits brought by Debtor Lehman Brothers Holdings, Inc. ("LBHI") against some of the Mortgage Sellers.

None of the past or ongoing suits has been at all dependent on the bankruptcy court or deemed essential to a bankruptcy proceeding, which reinforces the fact that these disputes are quintessential "private" matters.  The Debtors' new attempt to invoke the "jurisdiction" of the Court can only be construed as a shift in tactics aimed at forcing mortgage loan sellers, including the Mortgage Sellers, to engage in costly ADR in an inconvenient forum on loan claims that are almost certainly time-barred in any event at this late date; indeed, most of the mortgage loan sellers stopped selling loans to the Debtors or their affiliates back in 2007 or early 2008.  Indeed, the concept of requiring mortgage loan sellers, including the Mortgage Sellers, to have to incur the cost of participating in mandatory mediation in New York, New York, which is a jurisdiction to which they have no physical nexus, in connection with claims that would customarily be the subject of a motion to dismiss based upon a statute of limitations defense, imposes an undue burden on the mortgage loan sellers.

3

### B.    Mortgage Sellers Should Not Be Compelled to Engage in ADR Procedures to Which They Have Not Consented.

Compelling the Mortgage Sellers to engage in compulsory *pre-suit* ADR (see Motion, ¶26), when the parties *have not contracted* for any such process, is inherently unfair, costly and improper.  A "non-binding mediation," like a binding arbitration, is an ADR process that is supposed to be consensual in nature, and the notion of requiring parties, before a suit has been filed against them, to submit to court-ordered mediation, is exceedingly difficult to portray as time-honored and well-supported.   "[A] party is not to be compelled to surrender his right to resort to the courts, unless he has made a valid agreement so to do, since arbitration depends for its existence, as well as its jurisdiction, upon the voluntary agreements of the parties, limited only by express provisions of law." *Rico Tile Co. v. Persichilli Homes, Inc.*, 312 N.Y.S.2d 515, 517 (Dist. Ct. 1970).  "The general rule is that a party may not be "forced into arbitration and, thus, denied the procedural and substantive rights otherwise available in a judicial forum, absent evidence of an express intention to be so bound." *Schenkers Int'l Forwarders, Inc. v. Meyer*, 564 N.Y.S.2d 323, 324 (1991); *Great Am. Ins. Co. v. Ramasso*, 402 N.Y.S.2d 556, 558 (N.Y. Sup. Ct. 1978) ("Except for statutes requiring compulsory arbitration . . . no one is under a duty to resort to arbitration unless he has agreed to do so in clear language.").  If an ADR mechanism focused on efficiently providing a final resolution of all matters in dispute (arbitration) is recognized as generally being dependent on the parties' mutual consent, it is difficult to fathom how as yet un-sued "non-parties" could be forced into a pre-suit, non-binding process in an inconvenient forum, much less what would be regarded as efficient about requiring that exercise to take place.

Indeed, this Court's General Orders recognize that in order for mediation to be required, there must be a pending adversary proceeding or contested matter.  *See* General Order M-452, at ¶1.3.

General Order M-143 of this Court contemplates that a motion by a party seeking mediation of a dispute "must be filed promptly <u>after filing the initial document in the matter</u>."  Clearly, this order contemplates the use of mediation in the context of an adversary proceeding or contested matter, by referring to the necessity of a filed initial document to trigger a party's right to seek court-ordered-mediation.

By contrast, the procedures contemplated in the Motion expressly allows LBHI to initiate mandatory ADR merely by asserting claims through a mailed notice to a mortgage seller, without affording such mortgage seller any of the procedural protections afforded to a defendant in an adversary proceeding or a respondent in a contested matter under the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.  Failure to respond to a mailed notice can subject the recipient to sanctions, without allowing the recipient to contest receipt of the notice. These procedures simply fail to ensure due process to the mortgage sellers, in the absence of the procedural safeguards built into the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.  General Order M0143 requires a debtor in seeking mediation to comply with all applicable rules, and simply does not support the relief requested in the Motion.

### C.        The Proposed ADR Mechanism Is One-Sided and Procedurally Unfair.

The proposed ADR procedures are one-sided in favor of LBHI and unfair to the mortgage loan sellers. They expressly contemplate just one venue where mediation will take place:  New York, New York.  (Motion, ¶33.)  The Mortgage Sellers do not reside in New York: two are in California, and one each are in Utah, Colorado, Texas, Florida and Pennsylvania.  LHBI does not offer to pay travel costs of any mortgage loan seller, and requires each mortgage loan seller to share the cost of the Debtors' hand-picked mediator, without affording the mortgage loan seller an opportunity to participate in the selection of the mediator.

Moreover, the proposed procedural rules are asymmetrical.  For example, while LBHI has no time limit to designate any claim as one which is subject to the ADR procedures or serve upon the Mortgage Sellers its "Indemnification ADR Package," (Motion, ¶¶22, 26) the Mortgage Sellers have a strict limit on their time and an unreasonably short timeframe to respond to both an Indemnification ADR Package and a demand by LBHI for a Settlement Conference.  Even if a mortgage loan seller declines to settle the demand by LBHI, the mortgage loan seller is still compelled by these procedures, in the absence of an adversary proceeding, to incur the time and expense of participating in a mediation process in New York.

If a Mortgage Seller fails to "timely" respond to the "Indemnification ADR Package," "LBHI may elect to seek Sanctions."  (Motion, ¶27.)  However, the Mortgage Loan Sellers have no similar ability to seek sanctions if LBHI fails to timely reply to the Mortgage Loan Seller's response.  Further, *only LBHI is permitted to select a mediator.*  (Motion, ¶30.)  In these regards and others, LBHI tips its hand. Not only does LBHI want the Court's blessing for a radical shift in tactics after the Debtors averred to courts throughout the nation that each was the proper place to bring these types of claims, even against these very same companies, LBHI wants the deck stacked heavily in its favor in this Court through the requested procedures.

### D.    The Court Does Not Have Constitutional Authority to Finally Adjudicate the Debtors' Indemnification Claims

This Court lacks constitutional authority to finally adjudicate the Debtors' purported claims against the Mortgage Sellers, and by extension, enter final orders in connection with such adjudications. This issue was addressed by the Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (U.S. 2011).

In *Stern*, the Supreme Court declared that a state law counterclaim to a proof of claim -- even though such a matter is within the statutory core jurisdiction of the bankruptcy court -- is not within the constitutional authority of a bankruptcy court, and that such a counterclaim must

be heard by an Article III judge or a state court judge. *Id.* at 2601. In holding that a bankruptcy court does not have the requisite constitutional authority, the Supreme Court found that the bankruptcy court went beyond its role as a bankruptcy tribunal and usurped the role of judicial tribunal. *Id.* at 2611.

The Supreme Court focused on the importance of separation of powers and reiterated the long-standing principle that "Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Id.* at 2609 (citing *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856).

Further, the Supreme Court rejected the notion that the counterclaim at issue, which sounded purely in state law, fell under the "public rights" exception so as to allow the bankruptcy court constitutional authority to adjudicate the state law counterclaim. *Id.* at 2610. The "public rights exception" recognizes that there is "a category of cases involving 'public rights' that Congress could constitutionally assign to 'legislative' courts for resolution." *Id.* at 2610. The "'public rights' exception extends 'only to matters arising between' individuals and the Government 'in connection with the performance of the constitutional functions of the executive or legislative departments ... that historically could have been determined exclusively by those' branches." *Id.* at 2610 (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 102 S.Ct. 2858 (1982)).

Holding that the state law counterclaim did not fall under the public rights exception, the Supreme Court reviewed a line of cases applying the public-rights doctrine to bankruptcy proceedings. The Court discussed *Northern Pipeline, supra*, which held that the bankruptcy court's power to rule on a debtor's objections to a creditor's proof of claim against the estate must be distinguished from *the adjudication of state-created private rights*, such as in that case, *a*

debtor's state-law action for contract damages against a non-creditor. "The former may well be a 'public right,' but the latter is obviously is not." 102 S.Ct. 2858, 2871 (1982). In *Northern Pipeline*, the Supreme Court "rejected the argument that the public rights doctrine permitted a bankruptcy court to adjudicate a state law suit brought by a debtor against a company that had not filed a claim against the estate." *Id.* at 2611.

The Supreme Court also reviewed *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) which "rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the 'public rights' exception." *Id.* at 2787. The Supreme Court explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." *Id.* at 2614 (citing *Granfinanciera*, 109 S.Ct. 2782). There, the Supreme Court "reasoned that fraudulent conveyance suits were 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy *res*.'" *Id.* at 2614 (citing *Granfinanciera*, 109 S.Ct. 2782). The Supreme Court concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.* at 2614 (citing *Granfinanciera*, 109 S.Ct. 2782).

Here, like the parties in *Northern Pipeline* and *Granfinanciera*, none of the Mortgage Sellers is a creditor of the bankruptcy estate. They have not filed proofs of claim in these proceedings nor are they otherwise parties to these bankruptcy cases.

Any "Indemnification Claims" against the Mortgage Sellers are private breach of contract causes of action sounding purely in state law, like the claims asserted in *Stern*, *Northern Pipeline* and *Granfinanciera*. In all respects, these are independent breach of contract claims that do not depend on or require a bankruptcy proceeding, and consequently must be evaluated as non-core matters.

Further, the "Indemnification Claims," like the state law claims in *Stern*, *Granfinanciera* and *Northern Pipeline*, do not fall within the public rights exception. It is not a matter "that can be pursued only by grace of the other branches . . . or one that 'historically could have been determined exclusively by' those branches." *Id.* at 2614 (internal citations omitted). As the Supreme Court characterized the trustee's counterclaim in *Stern*:

> The claim is instead one under state common law between two private parties. It does not depend[ ] on the will of congress. Congress has nothing to do with it.

*Id.* at 2614 (internal citations/quotations omitted).

It is of no moment that the Debtors argue that the "Bankruptcy Court [i]s expressly granted the *jurisdiction to adjudicate* the Indemnification Claims (as well as enter orders in connection with such adjudications, as is the case here)" (Motion, ¶15) (emphasis added) and that the Court's "retention of jurisdiction to implement the Settlement Agreements [with Fannie Mae and Freddie Mac] necessarily includes the power to adjudicate the Indemnification Claims vested by the Settlement Agreements." (Motion, ¶17) None of the Mortgage Sellers were parties to these bankruptcy cases, nor did they receive notice of the Settlement Agreements and the proposed orders thereon. Instead, whatever jurisdictional grant the Plan and the Order approving the Settlement Agreements purport to bestow upon this Court must be carefully scrutinized in light of a bankruptcy court's more limited post-confirmation jurisdiction and under the *Stern*

admonition against a bankruptcy court exceeding its constitutional authority with respect to non-core matters.

In short, the Motion seeks to impose an undue burden on and violates the due process rights of the mortgage loan sellers who did business with the Debtors, including the Mortgage Sellers, by requiring them to participate in mandatory alternative dispute resolution proceedings to which they never agreed, in a jurisdiction to which they have no physical nexus, without the procedural safeguards provided by the Federal Rules of Civil Procedure, under the oversight of a court which does not have the constitutional authority to enter final adjudications in disputes.

**WHEREFORE**, the Mortgage Sellers respectfully request that the Court deny the Motion and grant such other and further relief to the Mortgage Sellers as the Court may deem just and proper.

Dated: June 12, 2014

Respectfully submitted,

UNIVERSAL AMERICAN MORTGAGE
COMPANY, LLC, STANDARD PACIFIC
MORTGAGE, INC., SHEA MORTGAGE, INC.,
CTX MORTGAGE COMPANY, PRIMELENDING,
A PLAINSCAPITAL COMPANY, ALLIED
MORTGAGE GROUP, INC., AND DIRECT
MORTGAGE, CORP.

By their counsel,

BILZIN SUMBERG BAENA PRICE &
AXELROD, LLP

/s/ Philip R. Stein
Mindy A. Mora
State Bar No. MM8305
Philip R. Stein (admitted *pro hac vice*)
1450 Brickell Avenue
Suite 2300
Miami, Florida 33131
Telephone: (305) 350-2414

10