**Objection Deadline (by stipulation): June 13, 2014 at 4:00 p.m. (prevailing Eastern Time)**
**Hearing Date and Time: June 19, 2014 at 10:00 a.m. (prevailing Eastern Time)**

**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York, 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502

*Attorneys for MortgageIT, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF MORTGAGEIT, INC. TO MOTION OF
LEHMAN BROTHERS HOLDINGS INC. FOR ALTERNATIVE DISPUTE
RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION
<u>CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS</u>**

MortgageIT, Inc. ("MIT"), by and through its attorneys, Simpson Thacher & Bartlett LLP, respectfully objects to the Motion of Lehman Brothers Holdings Inc. ("LBHI") for Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers, Docket No. 44450 (the "Motion").[1]

The Motion seeks to impose complex and one-sided mandatory alternative dispute resolution procedures (the "ADR Procedures") on thousands of "banks and other mortgage lending institutions from which LBHI or its affiliates purchased mortgage loans" (the "Sellers") who are otherwise not involved in these bankruptcy cases and who have yet to be told what "potential" claims concerning which mortgages and contracts LBHI is contemplating against them. MIT, like other Sellers, is unaware whether LBHI actually intends to pursue any purported claims against it, or whether it was simply caught up in LBHI's indiscriminate dragnet. As discussed below, LBHI has not established a basis for imposing the sweeping and unusual relief it requests on thousands of nonparties, much less in a time frame that provides those nonparties with inadequate time to evaluate and respond to LBHI's extraordinary proposal. The Motion should be denied.

In the alternative, entry of any order concerning alternative dispute resolution proceedings should be deferred so that the parties in interest can negotiate an even-handed and workable process. An alternative dispute resolution process must be fair to all parties involved if it is to achieve its intended goals. If adopted, the one-sided, coercive nature of the procedures currently proposed by LBHI (without consulting the potentially-affected Sellers) will substantially impede the prospects of consensual and efficient resolution of disputes.

---

[1] The filing of this objection should not be deemed or construed to submit MIT to the equitable jurisdiction of the Bankruptcy Court, nor as a waiver or compromise of any of MIT's rights, including without limitation, the right to seek withdrawal of the reference in any future proceeding, the right to trial by jury, or the right to adjudication before Article III tribunals.

MIT received LBHI's Motion less than two weeks ago and its investigation into the issues presented by LBHI's Motion is ongoing. MIT reserves its rights to object to the Motion on grounds other than those specifically identified herein.

## I.     LBHI's Motion Is Premature

LBHI filed the Motion before even determining whether it actually intends to assert claims against any particular Seller. Indeed, LBHI is willing to represent to the Court nothing more than that it has a "good faith belief" that approximately 3000 Sellers are "potentially subject" to its contemplated claims. Mot. 10. There are sound reasons why a dispute must be commenced, as a basic matter of due process, by a pleading containing sufficient information under the Federal Rules of Civil Procedure and the strictures of Rule 11 (incorporated into bankruptcy practice by Federal Rule of Bankruptcy Procedure 9011) to give notice of the plaintiff's claims and afford the defendant an opportunity to respond. Those rules do not permit an entity, such as LBHI, to burden the court system and thousands of putative defendants with premature litigation concerning the establishment of a complex dispute resolution procedures for potential claims that may not even exist or be capable of surviving a motion to dismiss.

By serving its Motion without any further investigation into whether any possible claim might actually exist, LBHI has improperly forced thousands of nonparties with no connection to these bankruptcy proceedings to expend time and resources responding to a motion that may or may not be relevant to them, or to risk waiver of significant rights and procedural protections with respect to claims whose contours are utterly unclear and whose potential value is unknown. As such, rather than "reducing cost" and promoting "efficiency," the Motion improperly and inefficiently shifts pre-suit investigative costs that should be borne by LBHI onto the Sellers and forces them to hire counsel and file court papers to address how claims against them may be

2

handled in the event any such claims are actually brought.[2] LBHI's Motion should be denied for this reason alone.

## II. LBHI Fails To Demonstrate That This Court Has Authority To Grant The Requested Relief

LBHI argues that the Court has the authority to implement the ADR Procedures because the Court retained jurisdiction in the Plan Confirmation Order and in the order approving the settlements that "vested" in LBHI the unasserted claims ostensibly at issue. Mot. 9-10. LBHI also contends that the requested relief is authorized by section 105(a) of the Code and the Court's standing order concerning mediation. LBHI is wrong on all counts.

First, it is elementary that "regardless of how a confirmation order may read, it does not confer jurisdiction—a bankruptcy court does not have the power to create its own jurisdiction." *Savoy Senior Housing Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009). Even more specious is the argument that jurisdiction was somehow created over persons not parties to a settlement agreement by an order authorizing that agreement. In any event, the mere existence of subject matter jurisdiction is irrelevant to the propriety of the ADR Procedures proposed by LBHI.[3]

Second, LBHI's reliance on § 105(a) is without merit. "Section 105(a)'s equitable scope is plainly limited by the provisions of the Code." *In re Smart World Techs., LLC*, 423 F.3d 166,

---

[2] The prejudice to Sellers arising from the Motion's prematurity is compounded by its needlessly compressed timetable. The Motion was set for hearing shortly after its filing, and notice was provided by ordinary mail service to nonparties not represented by counsel in these proceedings. The Sellers and their newly-retained counsel have been left with minimal time to analyze the Motion and the complex issues it raises, both as to the potential claims contemplated by LBHI and the highly complex procedural history of these bankruptcy proceedings. MIT sought an extension from LBHI to respond to this Motion. LBHI would only agree to extend the initial response time by one day.

[3] MIT takes no position as to whether subject matter jurisdiction might actually exist. Since no claims have actually been asserted against MIT, such a determination is premature.

3

183 (2d Cir. 2005). It empowers bankruptcy courts "to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *Id.* at 184 (quoting *New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 91-92 (2d Cir. 2003)). Thus, "an exercise of § 105 power [must] be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." *Id.* LBHI, of course, identifies no specific Bankruptcy Code section that authorizes the relief it seeks (because there is none); rather, it relies on the paradigmatic "general bankruptcy concept" of maximizing recoveries for creditors. LBHI's attempt to rely on § 105(a) therefore fails.

Third, General Order M-452[4] does not authorize the ADR Procedures. It provides that a motion to assign a matter to mediation "must be filed promptly ***after filing the initial document in the matter***." M-452 § 1.1. This, of course, clearly contemplates mediation as an option for existing "matters" for which an "initial document" has been filed. Here, by contrast, LBHI is seeking to implement its ADR Procedures with respect to a vaguely-defined category of hypothetical claims against nonparties, without having commenced a "matter" by filing an "initial document" (*i.e.*, a complaint). While the standing order also provides that the Court may order mediation "on its own motion," this clearly does not support the remarkable proposition that the Court may *sua sponte* order a party ***not otherwise before the Court*** to mediate. LBHI should not be permitted to bootstrap nonparties into court by bringing a defective motion and "curing" the defect by claiming that its motion can somehow be deemed a *sua sponte* motion of the Court.

---

[4] The Motion cites superseded General Order M-143, which General Order M-452 "amend[s] restate[s] and supersede[s]." M-452 at 1.

4

Finally, while Judge Peck approved mandatory mediation in these bankruptcy proceedings with respect to certain claims under derivatives contracts (Docket No. 5207, the "Derivatives ADR Order"), the Order was not accompanied by any explanation of the basis for the authority to enter such an order. Moreover, the circumstances of the Derivatives ADR Order were materially distinguishable: When the Derivatives ADR Order was entered, LBHI's plan was not yet confirmed, and many, if not most of LBHI's derivatives counterparties were already before the Court in proceedings concerning these same derivatives contracts.[5] Tellingly, the only other precedents LBHI cites are orders which—as LBHI conceded in its briefing in support of the Derivatives ADR Order—"related only to pending adversary proceedings." Docket No. 4903 at ¶ 14. Indeed, to justify entry of the Derivatives ADR Order, LBHI distinguished the circumstances of those cited orders in part by arguing that the debtors in those cases "were much deeper into their cases than here, and, thus those debtors had the ability to evaluate and assess the pool of disputes that would be appropriate for mediation." *Id.* at ¶ 16. This argument now applies to its own motion: LBHI's bankruptcy proceedings are presently in their fifth year; when the Derivatives ADR Order was entered, they were in their first. The urgency, and the need for this Court's oversight, that attended the early pre-confirmation stages of these cases is gone; indeed, LBHI has been prosecuting purported "reimbursement or indemnification claims" against loan sellers in state and federal courts around the country for years. LBHI has simply now chosen to attempt to pursue a self-defined group of as-yet-unasserted, hypothetical claims against loan sellers through this particular procedure, and in this Court, because LBHI finds its proposed process advantageous. If LBHI has claims it wishes to mediate, it is of course free to

---

[5] For instance, LBHI had already "implemented special procedures through the 'Derivatives Questionnaire'" to "reconcil[e] claims of counterparties against the Debtors' estates." Docket No. 4903 at ¶ 2.

5

do so as a consensual matter, but the mere fact that LBHI is a debtor in bankruptcy does not mean that its litigation strategies merit this Court's imprimatur.

### III.    LBHI's Proposed ADR Order Is Inequitable

Even assuming that the overall process contemplated by the Motion is appropriate—which MIT does not concede—LBHI's proposed ADR Order is one-sided and inequitable and should be rejected for that reason alone. Preliminarily, the proposed order purports to "find and determine" that "LBHI holds contractual claims for indemnification and/or reimbursement . . . by virtue of settlements between" LBHI and Fannie Mae and Freddie Mac, that "[c]ertain common issues exist regarding" these claims, and that these claims could yield "[s]ubstantial value . . . for the benefit of creditors." Proposed Order ¶¶ C-E. Such "findings and determinations" are manifestly inappropriate as to hypothetical unasserted claims under unidentified contracts, which may well be facially defective or subject to threshold defenses.[6]

LBHI's proposed order also inexplicably removes numerous provisions protecting LBHI's counterparties that are found in the Derivatives ADR Order entered by Judge Peck. To be clear, even if such provisions were included, LBHI's Motion is defective for the reasons stated above and should be denied. Nonetheless, the manner in which LBHI has chosen to edit the Derivatives ADR Order belies any stated intention on its part to establish a fair and even-handed process. For instance, the Derivatives ADR Order provided that "[a]ll rights, remedies, claims and defenses of any [counterparty] in good faith compliance with the Derivatives ADR Procedures shall not be impaired, waived or compromised in any further proceedings in these cases should no settlement or compromise result from participation in these Derivatives ADR Procedures," and that "[p]articipation in the Derivatives ADR Procedures . . . shall not waive the

---

[6] Notably, LBHI filed a complaint against MIT alleging purported loan defects in Colorado state court in 2013, but subsequently voluntarily dismissed that action with prejudice.

6

defense of lack of in personam jurisdiction, if any, which defense shall be preserved." Derivatives ADR Order ¶ 5(d). LBHI's proposed order here inexplicably omits this common-sense provision. Similarly, the proposed order confusingly states that a Seller's jury rights can be waived if it "affirmatively chooses the mediation option set forth herein." Proposed Order ¶ 15. However, the proposed order also provides that mediation is "mandatory." *See id.* ¶ 6. The Derivatives ADR Order contained no comparable language, and instead straightforwardly provided that jury rights were "[u]naffected." Derivatives ADR Order ¶ 14.[7]

Similarly, while the Derivatives ADR Order granted a list of court-selected mediators the power to "allocate among themselves specific mediations on a fair and equitable basis" (Derivatives ADR Order ¶ 10(b)), LBHI's proposed order gives LBHI complete discretion to select the mediator for a particular mediation from a list of mediators already handpicked by LBHI. Proposed Order ¶ 10(c). Also, while the Derivatives ADR Order provided that LBHI, as the initiating party, would pay the neutrally-selected mediator's fees, the proposed order purports to require the Sellers to "share equally in" the fees of a mediator that LBHI alone selects. *Compare* Derivatives ADR Order ¶ 15 *with* Proposed Order ¶ 16.

Moreover, the proposed order contains a provision empowering the mediator to "certify specific legal issues to the court for decision." Proposed Order ¶ 10(b). This is an inappropriate role for a mediator, and is particularly objectionable where mediators selected at the discretion of LBHI will have the power to unilaterally frame and present legal issues to the Court. That a court would issue legal rulings on matters arising during a confidential mediation makes no sense

---

[7] LBHI's proposed order also reduces the time allotted for responses to its submissions and demands from that prescribed in the Derivatives ADR Order. *Compare* Derivatives ADR Order ¶ 8(b) (30 days to respond to "ADR Notice") *with* Proposed Order ¶ 8(b) (20 days); Derivatives ADR Order ¶ 9 (4 days to respond to request for initial settlement conference) *with* Proposed Order ¶ 9 (2 days).

7

on its own terms, and calls into question LBHI's description of its proposed ADR process as focused on obtaining "consensual" resolutions and furthering "judicial efficiency." Furthermore, it is entirely unclear what legal effect "decisions" on such "certified issues" might have, either in the mediations or in any subsequent litigation, or how an aggrieved party might appeal from such decisions. Significantly, LBHI initially proposed this certification process in its 2009 motion to implement the Derivatives ADR Procedures, but then agreed to strike this provision in response to similar objections by derivatives counterparties. *See* Docket No. 4903, Exhibit A § B.10 (pg. 30). LBHI should not be proposing terms on this Motion which it has previously conceded are inappropriate and unworkable.

The manifestly imbalanced process embodied in LBHI's proposed order does not bode well for the prospects of any mediation conducted under its auspices. It is also particularly unfair to couple this one-sided approach with a potentially costly sanctions regime applicable where parties ostensibly fail to participate in the process in "good faith," or to adequately respond to whatever materials LBHI chooses to send out in its "Indemnification ADR Package." (*E.g.*, Mot. ¶ 27.) Participation in a process structurally biased in favor of LBHI is, of course, much easier, and more attractive, for LBHI than for its adversaries, which would render even the most facially evenhanded sanctions regime inappropriate and imbalanced.

The above discussion of the proposed ADR Order's defects is preliminary and non-exhaustive. Should the Court determine that some form of alternative dispute resolution procedures is appropriate, MIT respectfully submits that the parties should be afforded the opportunity to negotiate a procedures order that is as balanced and equitable as is possible under the circumstances before any order is entered.

## CONCLUSION

For the foregoing reasons, MIT respectfully requests that this Court deny the Motion, and grant such other and further relief as is just and proper.

Dated: New York, New York
June 13, 2014

SIMPSON THACHER & BARTLETT LLP

By:      /s/ David J. Woll
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Evan Cohen (ecohen@stblaw.com)
Isaac Rethy (irethy@stblaw.com)

425 Lexington Avenue
New York, New York, 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502

*Attorneys for MortgageIT, Inc.*