June 6, 2014

FOR:    The Honorable Shelley C. Chapman

Judge, United States Bankruptcy Court

Southern District of New York

One Bowling Green

New York NY 10004-1408

FROM:   Andrea T. Jao (Pro Se)

77 Seventh Ave., Apt. 10-S

New York NY 10011

RE:     Lehman Brothers Holdings Inc., et al. Debtors

Chapter 11 Case No. 08-13555 (SCC)

Seventy Third Omnibus Objection

Dear Judge Chapman:

Thank you very much for making sure that pro se claimants are able to be part of these proceedings and voice our concerns. This is much appreciated, because the whole bankruptcy experience has been complicated, difficult and tedious.

Allow me to make the following three responses to some of the points and questions Your Honor raised during last April's evidentiary hearing.

*I.   Fairness as a Constant in a Complex Situation*

As Your Honor explained, during a re-organization, Bankruptcy Law determines a hierarchy by which assets get distributed. From first-hand experience, I know that recovery and reconstruction is more orderly and less encumbered, because we have these laws.

However, one important question remains unanswered: Where are employees, working to earn a livelihood, supposed to be located in this hierarchy? Specifically, what priority should be given to unpaid, deferred compensation?

If I am not mistaken, Labor Law gives clear protection to traditional cash compensation – and so this is not the topic of disagreement in our discussion. However, in the years leading up to the recent financial crisis, compensation schemes grew increasingly complex. For Lehman in particular:

- While the RSU scheme was touted as a compensation mechanism, during the evidentiary hearings we heard how RSUs were used by Lehman to manage non-compensation related financial objectives. Accounting practices gave Lehman the incentive to use compensation mechanisms that were not necessarily transparent, fair, or in the best interest of rank and file employees, working for the company to make a livelihood.
- Not only were RSU structures complicated, disclosures were just as complex. Two examples come to mind. First was the disclosure that "RSU holders do not have the rights of shareholders" and this was discussed during the evidentiary hearing. Second, while Lehman asserted that RSUs placed

employees on the same footing as shareholders, during the evidentiary hearing, we discussed reasons why this was not the case and RSU holders were actually worse off.

- The RSU structure was even further complicated by the fact that it was an alternative to cash compensation, the use and extent of which was only determined at the end of each year, after employees rendered labor, and not at the outset of employment. We also discussed this during the hearing.

For many years, such complicated compensation schemes were mostly offered to key employees, i.e. decision makers who had a direct and substantial impact on company policy, strategy and operations. Later on, these were rolled-out to rank and file employees, whose primary relationship with the company was as a means to earn a livelihood.

If the use of these compensation schemes were limited to a handful of key employees, we would likely not be having this discussion at all. But complex compensation schemes became very widespread, prior to the financial crisis. In my humble opinion, it is possible that current legal prescriptions have not yet caught-up with this growth in complexity. After all, it takes events just like the Lehman bankruptcy to test current legal prescriptions for relevance and applicability as well as to push for progress.

That said, I do realize that the principles on which Bankruptcy Law is founded remain constant, no matter how complex the situation. From my experience as a pro se claimant, I've learned that fairness is foremost among these principles.

I respectfully point out, that if the Court rules to classify RSUs as equity, it will effectively classify unpaid compensation of rank and file employees, _**not**_ at par with equity shareholders, but _**below**_ equity shareholders – for reasons discussed during the April evidentiary hearing. It would go against the principle of fairness, if unpaid compensation of rank and file employees were located lower in the hierarchy, especially since equity ownership by definition is supposed to bear the residual risk. For labor to bear a burden, even greater than residual risk, would be equivalent to a substantial penalty on labor.

## II.    *Participation of labor in Bankruptcy's Recovery and Reconstruction Process*

If the Lehman bankruptcy were to continue its function as a recovery and reconstruction process, labor should be given protections that allow them to participate in this recovery and reconstruction process. Even if our voice is being heard, which it is, labor is not a participant at the current time. In my opinion, it is only fair that labor be given the chance to participate. In addition, more than five years have gone by since Lehman filed for Chapter 11 protection and that time has value. Institutions, higher up in the hierarchy have already been receiving distributions and have therefore been participating in bankruptcy's recovery and reconstruction process. That labor has to wait to the very end of the proceedings is in itself an additional penalty. I hope the Court does not interpret this as a complaint, which is not my intent at all. I do appreciate that there is a hierarchy and order to the bankruptcy process. But the value of employees' waiting time has to be recognized.

In a related matter, please consider that any event which further delays this process will only serve to penalize labor some more, exacerbating an already unfair situation. One such potential delay would result if Lehman Brothers Holdings is allowed to reclassify RSU claims as claims against its subsidiary, Lehman Brothers Inc.

### III. Choice or No Choice at All

Separately, during the evidentiary hearings, we also discussed choice and the ability of employees to "vote with their feet." Your Honor stated that Lehman employees could have gone to competitors if they did not like Lehman's compensation schemes. However, these compensation schemes were widely used across the finance industry, and if I am not mistaken, even in other industries. There is no need to reiterate how costly it would have been for employees to "vote with their feet" because this was discussed in detail during the evidentiary hearing.

I would just want to pose the following question: Should rank and file employees really have to face such a costly choice? I think this is one area where current legal prescriptions have yet to catch-up. Because we are all free people responsible for ourselves, I agree that we should all live with choices and consequences available to us. However, it is possible to posit exceptions, such as during life and death situations, wherein a very costly choice is equivalent to "no choice at all." It is now in the Court's hands to decide whether rank and file employees had a reasonable choice, given that the RSU scheme was designed as a retention device and so it was severely punitive for employees to "vote with their feet." My personal opinion is that this was equivalent to a "no choice at all" situation for employees.

Once more, I would like to respectfully petition the Court to recognize that RSU claims are unpaid compensation and that claimants should receive payment from Lehman Brothers Holdings.

Thank you very much for your time and consideration.

Andrea Jao (signed)