JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice pending*)

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
**In re**                                    :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*  :    **08-13555 (SCC)**
:
Debtors.                                     :    **(Jointly Administered)**
:
------------------------------------------------------------------x

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

### REPLY IN SUPPORT OF OBJECTION TO
### PROOF OF CLAIM NO. 33514 FILED BY FRANK TOLIN, JR.

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan"), on behalf of BNC Mortgage, LLC ("BNC"), files this reply (the "Reply") to the response (the "Response"), ECF No. 39912 filed by Frank Tolin, Jr. ("Mr. Tolin" or the "Claimant") opposing the Plan Administrator's Objection to Proof of Claim 33514 ("Objection"), ECF No. 37839, and respectfully represents as follows:

### PRELIMINARY STATEMENT

Mr. Tolin's claim is that he was compelled to take out a loan at on terms that were different from those his loan broker said she could obtain. On that basis, Mr. Tolin asserted a one-million dollar ($1,000,000.00) claim against Debtor BNC, alleging fraud and certain

statutory claims. However, there is no factual basis for any such claim because Mr. Tolin had full knowledge of the loan terms at the time of the closing and freely signed all of the loan documents. He did so, as he admitted in deposition, because he needed the money—a $60,000 cash out. Thus, Mr. Tolin was not defrauded and BNC committed no statutory violations.

Nevertheless, Mr. Tolin maintains that his broker, one Patricia Washington ("Ms. Washington"), promised him a loan on more favorable terms. There is no evidence of this and Mr. Tolin has called no witnesses. Regardless, even if Ms. Washington promised more favorable terms than Mr. Tolin accepted at closing, those promises would not be actionable against BNC. Ms. Washington was Mr. Tolin's agent, not an agent of BNC. No matter what others may have done, BNC committed no wrongs against Mr. Tolin.

The inverse, however, is not true. In deposition, the Plan Administrator learned not only that Mr. Tolin had full knowledge of the loan terms, and that he had no evidence that Ms. Washington was an agent of BNC, but that the mortgage he gave in order to obtain a $60,000 cash-out was riddled with his misrepresentations about every important credit characteristic, including income, employment, residence, and the purpose of the mortgage.

For the reasons set forth in the Objection, as elaborated upon herein by reference to Mr. Tolin's deposition testimony, Mr. Tolin's claims against BNC should be disallowed and expunged. Mr. Tolin's fraud claims fail because (1) he was fully aware of the loan terms before he closed on the loan, (2) BNC is not liable for wrongs committed by a third party, and (3) Mr. Tolin procured the loan through material misrepresentations to BNC. Any remaining statutory claims fail because they merely restate the fraud claims, because Mr. Tolin misapprehends or misapplies the applicable statutes, and because on these facts, they are inapplicable.

2

**ARGUMENT**

I. **Mr. Tolin's Fraud Claims Fail Because He Knew and Agreed to the Allegedly Misrepresented Loan Terms, Because the Broker is Not an Agent of BNC, and Because Mr. Tolin Comes to Court with Unclean Hands**

   A. **Mr. Tolin's Deposition Testimony Reveals That There was No Fraud Because He Knew and Agreed to All of the Purportedly Misrepresented Terms**

Mr. Tolin has failed to state a cause of action against BNC for fraud (Objection at ¶¶ 14-29), and since filing his claim, Mr. Tolin has come forward with no evidence that any of the underlying misrepresentations occurred. Indeed, what has been established in discovery is that Mr. Tolin was fully aware of the terms of his loan before he consummated the loan at closing, including:

- The loan amount. Deposition of Frank Tolin, December 5, 2013 ("Tolin Dep.") (Exhibit A, hereto) at 52:24-53:1.

- The interest rate. *Id.* at 60:18-20.

- The adjustable nature of the interest rate. *Id.* at 61:13-17.

With full knowledge of the loan terms, Mr. Tolin could not have been—and was not—defrauded. Mr. Tolin, rather, took out the loan—a loan that grossly exceeded the value of the home—because he wanted to take $60,000 in cash from the loan amount. Tolin Dep. at 62:22-25. Mr. Tolin needed the money because he was "strapped for cash" and was unable to pay all of his bills. *Id.* at 63:1-6.

   B. **Mr. Tolin's Deposition Testimony Reveals That Ms. Washington Could Not Have Been BNC's Agent Because She had Neither Actual Nor Apparent Authority**

Even assuming there was fraud or other alleged misconduct by Ms. Washington, BNC cannot be liable for Ms. Washington's actions because Ms. Washington was not BNC's agent. Objection ¶¶ 20-21. Nonetheless, Mr. Tolin's Response renews—without support—his

3

unfounded allegation that BNC and Ms. Washington had an agency relationship. In this way, Mr. Tolin seeks to hold BNC responsible not only for the allegedly misrepresented loan terms but also for several payments and loans Mr. Tolin made to Ms. Washington, including from the loan proceeds.

As a threshold matter, Mr. Tolin and Ms. Washington had been acquaintances for 12 years, and had dealings long before the series of events that culminated in this claim took place. Tolin Dep. at. 34:20-35:1. At one point, Ms. Washington asked Mr. Tolin to put her house in his name for 30 days. *Id.* at 107:19-108:1. According to Mr. Tolin, the purpose of this transaction was so that he would be able to "watch that property for her two [adult] children." *Id.* at 108:-11. When asked in deposition, "Then why for only 30 days," Mr. Tolin responded, "You know what, I don't know. I don't know." *Id.* at 108:12-13. But what Mr. Tolin did know about Ms. Washington is that her honesty was suspect. *See, e.g.*, *id.* at 108:14-23 (testifying that Ms. Washington was being sued at the time and that Mr. Tolin found out that "her" house was not in her name).

In addition to being on notice that he was dealing with an untrustworthy person in Ms. Washington, Mr. Tolin's deposition testimony contradicts his allegations, which are central to his claim against BNC, that Ms. Washington was an agent of BNC.

An agency relationship requires either actual or apparent authority between the principal and agent. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 110 (S.D.N.Y. 2009). In order for actual agency to exist, there must be "a direct manifestation of consent from the principal to the agent." *Id.* (internal quotations and citations omitted). "[I]t exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *Id.* The control must be of such a degree that the alleged agent

4

seems to have almost no independence. *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 300 (E.D. Pa. 2008). For there to be apparent agency, "the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him . . . and cannot be established by the actions or representations of the agent." *Meisel*, 651 F. Supp. 2d at 110 (internal quotation and citation omitted).

Mr. Tolin has not presented the requisite evidence to prove Ms. Washington was BNC's agent, and indeed, Mr. Tolin's deposition testimony provides facts that would *disprove* an agency relationship. For example, Mr. Tolin testified that he did not know if Ms. Washington was working with any particular lender (Tolin Dep. at 99:13-101:3), had the impression that she was independent (*id.* at 99:22-100:4), and acknowledged that Ms. Washington was required to submit his loan application to underwriting for approval (*id.* at 97:5-99:4).

On facts more favorable to Mr. Tolin's position, the Delaware bankruptcy court found no agency relationship. *See In re New Century TRS Holdings, Inc.*, 495 B.R. 625, 644 (Del Bankr. 2013). In *New Century*, the evidence showed that the borrowers believed they were working with a New Century agent, *id.* at 644 (showing that the borrowers faxed a letter to the agent and identifying him as "[a]t New Century"), but the court rejected both the actual and apparent authority theories advanced by the borrowers. As to actual authority, the court found no evidence that the alleged agent was controlled in any way by New Century. *Id.* In reaching that conclusion, the court noted that the agent, like Ms. Washington, here, was required to submit loan applications to the lender for approval. *Id.* As to the apparent authority theory, the Court found as dispositive the fact that, like here, the borrower adduced no evidence of actions or conduct by the lender that would reasonably indicate that it had conferred authority on the

5

alleged agent. *Id.* at 644-45. On these points, *New Century* is on all fours with this case.

Thus, Mr. Tolin's deposition testimony confirms there is no agency relationship between BNC and Washington, and the Court should disallow and expunge all claims based on Ms. Washington's alleged misconduct.

### C. Mr. Tolin has Unclean Hands and His Claim Should be Disallowed

"Because a court sitting in equity is a vehicle for affirmatively enforcing the requirements of conscience and good faith, a party who comes into equity must come with clean hands if relief is to be granted." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999) (internal citations and quotations omitted). "The doctrine of unclean hands allows a court to deny relief in an action in which a party has been guilty of unconscionable conduct in relation to the matter that he seeks." *Goldstein v. Delgratia Min. Co.*, 176 F.R.D. 454, 458 (S.D.N.Y. 1997) (internal citations omitted). Courts have repeatedly barred fraud and misrepresentation claims against lenders when the borrower admittedly misrepresented facts on his loan application. *Beaulialice v. Fed. Home Loan Mortgage Corp.*, No. 8:04-CV-2316-T-24-EAJ., 2007 WL 744646, at *8 (M.D. Fla. Mar. 6, 2007) ("Accordingly, the Court concludes that Defendant has shown that Plaintiff misrepresented facts on her application in order to secure the loan, and this deception bars her claims"); *Eghtesadi v. Wells Fargo Bank, N.A.*, No. 3:12-CV-1978-GPC-JMA, 2013 WL 1498999, at *8 (S.D. Cal. Apr. 11, 2013) ("As to Plaintiff's allegedly misreported income, Plaintiff alleges she signed the loan application knowing her income was misreported. Thus, not only did Plaintiff know of that fact at the time she executed the re-finance loan documents, but she failed to exercise any diligence. Indeed, Plaintiff's admittedly unclean hands bar any fraud claim based on the misreporting of her income.").

Here, Mr. Tolin admitted that his loan application, which he signed under penalty of

6

perjury, contains numerous and significant misrepresentations as to the following material credit indicators:

<u>Income</u>.  Mr. Tolin stated in his loan application that he earned around $6,600 a month (Tolin Dep. at 28:23-29:5; 26:4-8), when in fact he was "earning substantially less," was "in pretty severe financial straits," and owed more money than he was earning (Tolin Dep. at 26:9-27:4).

<u>Employment</u>.  Mr. Tolin stated in his loan application that he had held his job for five years when he had actually begun working for himself only months before filling out the loan application (*id.* at 44:2-8); and stated that he was not self-employed when, in fact, he was (*id.* at 43:14-44:1).

<u>Residence</u>.  Mr. Tolin stated in his loan application that he owned the property he lived in at the time he applied for the loan, when that was "not true" because he was living in his parents' house at the time he applied for the loan and he "did not" own his parents' house (*id.* at 40:23-41:23; 55:19-56:8); and that he had lived at his current address (his parents' house) for 15 years when he had only moved into it months before filling out the loan application (*id.* at 40:23-42:19).

<u>Purpose</u>.  Mr. Tolin stated in his loan application that the property would be owner-occupied within sixty days while knowing at the time he signed that document, it was not possible to do so. *Id.* at 64:3-7.

Mr. Tolin's willful and admitted misrepresentation of numerous material facts is the type of "unconscionable conduct" the doctrine of unclean hands is designed to address. *Cf. Goldstein v. Delgratia Min. Co.*, 176 F.R.D. at 458 (purposeful misrepresentation of facts to court is a "striking example of a plaintiff caught with unclean hands").  Mr. Tolin's own

7

misrepresentations negate his ability to seek any redress in this Court.

## II.     Mr. Tolin's Remaining Claims Fail as a Matter of Law

Mr. Tolin's remaining claims allege statutory and other violations that do not apply to him, are misstated, and/or lack any evidence in support. BNC refutes the claims on the grounds stated in the Objection. In addition, to the extent any claims were fleshed out in any more detail in deposition, BNC responds, they nevertheless fail for the reasons set forth below.:

*First,* Mr. Tolin claims that BNC violated the Truth-in-Lending Act ("TILA") because he "didn't receive any right to rescind the loan. Nothing with regard to that." Tolin Dep. at 126:14-19. However, the subject property was an investment property (*id.* at 31:10-14) and, consequently TILA does not apply. *Mauro v. Countrywide Home Loans, Inc.*, 727 F.Supp. 2d 145, 154-56 (E.D.N.Y. 2010); *Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1129 (C.D. Cal. 2010). Furthermore, any TILA claim for damages must fail because the statute of limitations expired one year from the date the loan was consummated, almost two years before he filed the underlying action. 15 U.S.C. § 1635(f).

*Second*, Mr. Tolin's predatory lending claim, to the degree he is making one, fails because it is merely a restatement of his fraud allegations. *See Sutherland v. Remax 2000*, 20 Misc. 3d 1131(A), 872 N.Y.S.2d 693 (Sup. Ct. 2008) *judgment entered*, 22405/07, 2008 WL 8874294 (N.Y. Sup. Ct. Sept. 4, 2008) (holding that "a claim for predatory lending must be dismissed where the allegations 'are nothing more than a rehash of [the claimant's] fraud allegations.'") (citation omitted). The claim further fails because it is beyond dispute that Mr. Tolin was very aware of his severe financial straits and unable to pay his debts (Tolin Dep. at 26:9-27:4; 63:1-6); *see Sutherland*, 2008 WL 8874294, at *2 (the claim must be dismissed where "the plaintiff is 'well aware of [his] own financial circumstances at the time []he entered into [an]

8

agreement.'") (citation omitted). Any predatory lending claim also fails because the mortgage was not on Mr. Tolin's principal dwelling but rather on an investment property.

*Third*, Mr. Tolin claims that BNC violated either TILA or the Real Estate Settlement Procedures Act ("RESPA") because "BNC failed to provide [him] [certain] documents after written request to do so." Tolin Dep. at 128:8-11. However, Mr. Tolin points to no legal obligation to produce his loan file: and, in any event, BNC provided the loan file upon Mr. Tolin's request. *Id*. at 129:6-14. To the extent Mr. Tolin claims that there was a RESPA violation, the RESPA document-production provisions apply to the mortgage servicer, not the originator, *See* 12 U.S.C. § 2605(e)(1)(A), and RESPA does not provide a private right of action for disclosure violations . *In re New Century*, 495 B.R. at 639.

*Fourth*, Mr. Tolin alleged "a discrepancy in the fees that were actually disclosed and the actual fees disbursed." Tolin Dep. at 130:3-6. Specifically, he referenced a $150 underdisclosure of the appraisal fee between the first loan application and the second. *Id.* at 130:15-22. However, TILA's disclosure requirements for "finance charges," 15 U.S.C. § 1605(e)(5), specifically exempt appraisal fees from inclusion in the overall finance charge disclosure requirements. Further, the underdisclosure was much less than the one half of the 1% tolerance for accuracy minimum required for a TILA violation. 15 U.S.C. § 1605(f); 12 C.F.R. § 226.23(g).

*Fifth*, Mr. Tolin alleges that BNC is liable for "the broker's fee, the $2,500" he paid to Ms. Washington via check after the closing. Tolin Dep. at 132:11-12. However, BNC had no way of knowing about the additional money Mr. Tolin paid to Ms. Washington. To the contrary, during the closing, Mr. Tolin signed a document acknowledging that he would not be paying any sort of additional fees to the broker other than the ones listed on the document. *Id.* at 65:13-

9

67:22. Any additional fees he paid directly to Ms. Washington do not involve BNC. Rather, the payment appears to be part of whatever side transactions Mr. Tolin had with Ms. Washington, including two $10,000 loans, the first of which was made partially payable to a third person and the second of which was for one day and followed Ms. Washington's prior non-payment of the first loan. *Id.* at 114:22-118:12. Mr. Tolin's recourse would be with Ms. Washington, not BNC, and although she was named and served in a lawsuit on the same grounds as the instant claim, Mr. Tolin dismissed her and the brokerage and chose to pursue only BNC. Tolin Dep. 118:24-119:25.

*Sixth*, Mr. Tolin "believes" BNC should have notified him of a fraud alert on his credit report. Resp. ¶ 7; Tolin Dep at 133:18-19; 134:5-21. However, it was Mr. Tolin himself who placed the fraud alert on his credit report (*id.* at 75:18-22) and thus his claim that BNC should have notified him of it is untenable. Regardless, the "fraud alert" is wholly unrelated to the alleged misrepresentations by Ms. Washington and therefore irrelevant. It was a 90-day alert on Mr. Tolin's credit report asking that all creditors verify his identity before extending credit. The fraud alert stated, "Do not extend credit without first verifying the identity of the applicant." *See* copy of section loan file, attached as Exhibit B; Tolin Dep. Ex. 11. Indeed, and in compliance with that alert, BNC's underwriter called Mr. Tolin on April 29, 2005, to confirm his identity prior to extending credit. *See* Exhibit C (BNC000274-275); Tolin Dep. at 73:13-74:11. There is no allegation of identity theft and Mr. Tolin's best recollection was that the closing agent confirmed his identity at closing. *Id.* at 73:13-74:11. Thus, there is no claim that BNC failed to check his identity or that the fraud alert was in any way related to Mr. Tolin's claims.

Mr. Tolin's final allegation is that the mortgage was not recorded and that BNC was somehow responsible. Resp. ¶ 20; Tolin Dep. at 140:12-19. However, recording the mortgage

10

was unequivocally the responsibility of the *title company*, not BNC in its role as loan originator. *See In re Bell*, 309 B.R. 139, 152 (Bankr. E.D. Pa. 2004) (party that received recording fees has the duty to record the mortgage). In any event, Mr. Tolin's claim is overstated by $4,725 because, according to the HUD-1 statement, the actual amount he paid for the mortgage to be recorded was $275. *See* Exhibit D (Tolin Dep. Ex. 5).

Mr. Tolin has failed to articulate any reasonable basis for his $1,000,000 claim against BNC, and despite ample opportunity to develop the record, Mr. Tolin fails to present the requisite evidence in support of his claim. In fact, the record has developed to the contrary. The evidence shows: (1) Mr. Tolin *knowingly* accepted the terms of the loan because he needed the money; (2) Mr. Tolin misrepresented key facts in his loan application, including facts about income, employment, residence, and the purpose of the mortgage; and (3) notwithstanding Mr. Tolin's bare conclusions that Ms. Washington was somehow operating as an agent of BNC, Mr. Tolin's own testimony shows there was no agency relationship. Without agency, Mr. Tolin's fraud claim and any other claims arising from the conduct of Ms. Washington necessarily fail because he cannot point to a single improper act of BNC. Similarly, Mr. Tolin has not presented evidence to support any statutory claims (which fail anyway as a matter of law), and on all counts Mr. Tolin's claims against BNC falter. BNC has committed no wrong. Respectfully, the Court should reject Mr. Tolin's effort to capitalize and collect on his own misrepresentations, and to shoehorn any purported claims against Ms. Washington,into this unfounded claim against BNC.

## CONCLUSION

Wherefore, the Plan Administrator respectfully requests that the Court disallow and expunge Mr. Tolin's claims.

Dated: June 17, 2014
      Denver, Colorado

/s/ Michael A. Rollin
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice pending*)
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133

Attorneys for Lehman Brothers Holdings Inc. and Certain of Its Affiliates