WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:     (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek

JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone:    (303) 573-1600
Facsimile:     (303) 573-8133
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Special Counsel for Lehman Brothers Holdings Inc. and
Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ x | | |
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | |
| | : | |
| **Debtors.** | : | |
| _____ x | | |

### DEBTORS' OMNIBUS RESPONSES TO OBJECTIONS TO
### MOTION FOR ALTERNATIVE DISPUTE RESOLUTION
### PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF
### THE DEBTORS AGAINST MORTGAGE LOAN SELLERS

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors, for LBHI and certain of its subsidiaries

(collectively, the "Debtors"), file this omnibus response to the objections interposed to their

motion, dated May 29, 2014, for an order approving alternative dispute resolution procedures for

indemnification claims of the Debtors against Mortgage Loan Sellers (the "Motion")[1] and respectfully represent:

## PRELIMINARY STATEMENT

1.      Mediation is a process that continues to be favored by Congress, courts, and litigants as a means to settle disputes in the most cost-efficient and speedy way possible without burdening the court system.  The proposed ADR procedure set forth in the Motion and proposed order (the "Indemnification ADR Order") furthers these interests by providing a structured but efficient way for claims to be presented and possibly resolved prior to the commencement of litigation.  Mediation of the kind proposed herein has been established even without the institution of a prior adversary proceeding in other large complex bankruptcy cases,[2] as well as in this case,[3] with great success.  The overwhelming majority of the approximately 2,500 Mortgage Loan Sellers identified by LBHI that were served with the Motion did not file an objection.  Only 11 objections to the Motion representing 26 different entities were filed, and 3 of the objections were substantially similar to one another and filed by the same attorney.[4]

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] *See, e.g. Residential Capital, LLC*, S.D.N.Y. Bankr. Case No. 12-12020 [Dkt. No. 2519].

[3] *See* [Dkt. No. 5207] (ADR Order for claims); [Dkt. No. 8474] (ADR Order for counter-parties to derivatives contracts).

[4] The objections were filed by: (i) Allied Mortgage Group, Inc., CTX Mortgage Company, LLC, Direct Mortgage, Corp., PrimeLending, a PlainsCapital Company, Shea Mortgage, Inc., Standard Pacific Mortgage, Inc., Universal American Mortgage Company [Dkt. No. 44680]; (ii) Amerifirst Financial Corp., First Options Mortgage, Broadview Mortgage Corporation, New FED Mortgage Corporation, Loan Simple, Inc. f/k/a Ascent Home Loans, Inc., Arlington Capital Mortgage Corporation, Gateway Funding Diversified Mortgage Services, L.P., WR Starkey Mortgage, LLP, Sterling National Mortgage Company, Inc., Sun America Mortgage Company [Dkt. No. 44684]; (iii) DHI Mortgage Company, Ltd. [Dkt. No. 44682]; (iv) First California Mortgage Corporation [Dkt. No. 44679]; (v) MortgageIT, Inc. [Dkt. No. 44704]; (vi) Mountain West Financial, Inc. [Dkt. No. 44677]; (vii) PHH Home Loans, LLC [Dkt. No. 44673]; (viii) Plaza Home Mortgage Inc. [Dkt. No. 44674]; (ix) Republic Mortgage Home Loans, LLC [Dkt. No. 44681]; (x) SecurityNational Mortgage Company [Dkt. No. 44672]; and (xi) V&M International Mortgage, Corp. [Dkt. No. 44721].  A schedule of the issues raised by each of the Objections is attached as **Exhibit A**.

2.      Certain of the objectors assert that this Court lacks the power to enter the Indemnification ADR Order either because of Constitutional limitations on court power to enter final judgments in non-core matters under *Stern v. Marshall* or because this dispute lacks the close nexus to the bankruptcy needed to exercise post-confirmation jurisdiction.  The objectors' arguments are misguided, as the issue of whether the Court has jurisdiction over the Indemnification Claims themselves is not before the Court.  LBHI respectfully submits that the Court has the power to order parties to a dispute to engage in mediation of that dispute before litigation concerning that dispute has been commenced.  Moreover, LBHI asserts that establishment of a program within which such disputes may be negotiated, mediated, and potentially resolved is within the Court's post-confirmation jurisdiction under the close nexus standard.[5]

3.      All of the objections raise complaints in some form about being "forced" to mediate in an unfair process, but each overlooks one fundamental point:  The mediation is non-binding.  Therefore, the assertions that the mediation would somehow violate due process or result in the waiver of claims or defenses (to jurisdiction or otherwise) is erroneous.  Further, any argument based on the purportedly burdensome nature of mediation ignores the simple fact that litigation of the claims against the individual Sellers would be much more costly and burdensome on the Sellers and LBHI, as well as on the judicial system.  And, any suggestion that LBHI would use mediation as a sword to strip the Sellers of any claims or defenses they hold is belied by the terms of the proposed Indemnification ADR Order itself.

---

[5] LBHI anticipates that additional Indemnification Claims susceptible to resolution within the proposed Indemnification ADR Order may arise in connection with the possible resolution of claims by trustees for approximately 400 trusts holding approximately 20,000 mortgage loans that have been filed against the Debtors asserting claims for breaches by LBHI of representations and warranties.

4.       Finally, the arguments that either the process is unfair or that LBHI will use the

Indemnification ADR Order unfairly assumes, without any basis, that LBHI would seek to

mediate in bad faith.  Indeed, the record of success in the existing ADR proceedings before this

Court is strong evidence of the merit of such a process here.  Accordingly, as the Court has

jurisdiction to order mediation, LBHI respectfully requests that its Motion seeking to institute the

Indemnification ADR Procedures be granted.

## ARGUMENT

5.       This omnibus reply will respond to each of the issues raised by all of the

objections.

### A.       Jurisdictional and Due Process Objections

Objection**:**       The Bankruptcy Court Lacks Jurisdiction to Order Mediation
Under *Stern v. Marshall*, *EBIA v. Arkison* and Related Authority

6.       Response:       Several objectors challenge this Court's power to order parties to

mediation, relying on the Supreme Court's rulings in *Stern v. Marshall*, 131 S. Ct. 2594 (2011)

and *Exec. Benefits Ins. Agency v. Arkison*, 12-1200, 2014 WL 2560461 (U.S. June 9, 2014).  In

doing so, they conflate this Court's jurisdiction to hear and determine the underlying

Indemnification Claims with the Court's jurisdiction to enter the Indemnification ADR Order.

Whether the Court can enter a final judgment in an adversary proceeding asserting the

underlying claims is not presented in this Motion.  And no case has been cited that holds that a

bankruptcy court, as an Article I court, cannot enter an order directing mediation of a non-core

matter.[6]  The objectors' argument inordinately stretches the contours of the Supreme Court's

holdings, ignores the fact that the Motion does not seek final judgment on any claim LBHI holds

---

[6] As a post-confirmation matter, the core/non-core distinction is not the relevant analysis required by the Court.  *See*
*In re Park Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011) (cited by objector DHI) ("the distinction
between core and non-core jurisdiction may not be particularly relevant after confirmation").  Rather, bankruptcy
courts focus on whether the matter satisfies the post-confirmation jurisdictional requirements discussed below.

against the Sellers, and disregards the Court's power to refer parties to mediation in all manner

of cases, with or without their consent.

       7.       The *Arkison* ruling itself exposes the error in the objectors' analysis.  In *Arkison*,

the Supreme Court clarified that *Stern v. Marshall* was concerned only with the Constitutional

limitations on a bankruptcy court's ability to enter final judgments against non-creditors, not how

the courts were to proceed in light of that limitation.  To that end, the Court stated:

> In *Stern v. Marshall*, . . . this Court held that even though bankruptcy courts are statutorily authorized to enter final judgment on a class of bankruptcy-related claims, Article III . . . prohibits bankruptcy courts from finally adjudicating certain of those claims. *Stern* did not, however, decide how bankruptcy or district courts should proceed when a "*Stern* claim" is identified.  We hold today that when, under *Stern*'s reasoning, the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court.

*Id*. at *3.  The *Arkison* Court expanded on *Stern* and affirmed the bankruptcy courts' continued

power and authority to exercise judicial power in bankruptcy-related cases just shy of the point

of final judgment:

> With the "core" category no longer available for the *Stern* claim at issue, we look to §157(c)(1) to determine whether the claim may be adjudicated as a non-core claim—specifically, whether it is "not a core proceeding" but is "otherwise related to a case under title 11."  If the claim satisfies the criteria of §157(c)(1), the bankruptcy court simply treats the claims as ***non-core***:  The ***bankruptcy court should hear the proceeding*** and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment.

*Id*. at *7 (emphasis added).  By holding that bankruptcy courts should continue to adjudicate

non-core matters as they always have, the Supreme Court confirmed that bankruptcy courts have

the power to enter necessary and appropriate orders in non-core matters.  One of those powers is to direct mediation of disputes.

8.    The contemplated Indemnification ADR Procedures neither seeks adjudication on the merits, nor binding submissions by the parties.  All activities would be protected by a broad confidentiality provision.  Participation would not constitute a waiver of defenses or other rights, and the Sellers would not be foregoing any substantive or procedural rights except to the extent they agree to a settlement.[7]  The Bankruptcy Court's exercise of jurisdiction in entering the Indemnification ADR Order would certainly not constitute a final judgment on the merits of any claim and would comport with the *Arkison* court's express endorsement of this Court's continued role in non-core matters.

9.    As *Arkison* has affirmed the Court's authority to adjudicate non-core matters short of final judgment, there is no legitimate Constitutional challenge to the Court's power to approve the Indemnification ADR Procedures.  The power of Article I courts to direct the parties to mediation without their consent is also recognized in the Rules of the District Court for the Southern District of New York.  *See* S.D.N.Y. Local Rule 89.9(d)(3) (providing that a magistrate judge "may determine that a case is appropriate for mediation and may order that case to mediation, with or without the consent of the parties").

10.    The Indemnification ADR Procedures are authorized by:

- The Court's inherent power under section 105(a) of the Bankruptcy Code to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).[8]

---

[7] Contrary to the assertion by some of the objecting parties, nothing in the Indemnification ADR Order puts the parties at risk.  For convenience and clarity, the Debtors have has no objection to adding language that makes it express that all defenses, and rights to jury trial, are preserved to the extent there is no settlement during the mediation process.

[8] Section 105(a) of the Bankruptcy Code provides the Court broad authority to fashion appropriate relief.  *See Adelphia Commc'ns Corp. v. America Channel, LLC (In re Adelphia Commc'ns. Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("[s]ection 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own

- The Standing Order,[9] which expressly provides:

  - "In re: Court Annexed Mediation Program: Adoption of Procedures Governing Mediation of Matters *in Bankruptcy Cases* and Adversary Proceedings," *see* Standing Order Title (emphasis added);

  - "The court may order assignment of a matter to mediation *upon its own motion*, or upon a motion by a party in interest or the U.S. Trustee," *id.* § 1.1 (emphasis added); and

  - "Unless otherwise ordered by the presiding judge, any adversary proceeding, contested matter *or other dispute* may be referred by the court to mediation", *id.* § 1.3 (emphasis added).

- Precedent in this District. *See In re Enron Corp.*, Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. Mar. 4, 2003 and Mar. 20, 2003) [Dkt. Nos. 9533 and 9862]; *In re Ames Dep't Stores, Inc.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y. 2007) [Dkt. No. 3195]; *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. 2012) (ordering plan mediation when no adversary proceeding was implicated).

- Precedent in this bankruptcy case[10] that now constitutes the "law of the case." *See In re Renz*, 476 B.R. 382, 388 (Bankr. E.D.N.Y. 2012) (treating prior ruling in adversary proceeding as "law of the case" in main bankruptcy case); *Artra Group, Inc. v. Salomon Bros. Holding Co.*, 95 C 5233, 1996 WL 637595, at *5 (N.D. Ill. Oct. 31, 1996) (holding that decision in main bankruptcy case constitutes "law of the case" in later adversary proceeding); *In re GGW Brands, LLC*, 2:13-BK-15130-SK, 2013 WL 6906375, at *16 (Bankr. C.D. Cal. Nov. 15, 2013) ("In the context of a bankruptcy proceeding, adversary proceedings are considered part of a bankruptcy case and the law of the case doctrine applies in adversary proceedings in a bankruptcy case, and even between separate adversary proceedings in the same bankruptcy case.") (internal citation and quotation omitted).

---

jurisdiction and to facilitate the reorganization process."); *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987), *aff'd*, 88 B.R. 30 (S.D.N.Y. 1988) ("the basic purpose of [section 105(a)] is to enable the court to do whatever is necessary to aid its jurisdiction, *i.e.*, anything arising in or relating to a bankruptcy case.") (citation omitted).  In *In re Ephedra Prods. Liab. Litig.*, the district court, sitting in a Chapter 15 case, authorized and approved a claims resolution procedure crafted in a foreign insolvency proceeding that included mandatory mediation designed to speedily assess and value claims against a foreign debtor.  349 B.R. 333, 335 (S.D.N.Y. 2006).  The court specifically relied upon its powers under, among other provisions, section 105(a) of the Bankruptcy Code.  *Id.*

[9] Since at least 1995, this District has encouraged mediation by means of the Standing Order, General Order M-452.

[10] *See* [Dkt. No. 5207] (ADR Order for claims against the estate); [Dkt. No. 8474] (ADR Order for counterparties to derivatives contracts).

11.     There is no case cited by any objector that requires commencement of an adversary proceeding before mediation may be ordered.  In *Residential Capital*, the Court ordered mediation to resolve issues that prevented the formulation of a consensual plan without the pendency of an adversary proceeding.  *In re Residential Capital, LLC*, Bankr. Case No. 12-12020 (S.D.N.Y.) [Dkt. No. 2519] (mediation order).  As a result of mediation, the parties entered into settlements that resulted in a plan support agreement providing for a $2.1 billion contribution from the Debtor's non-bankrupt parent, Ally Financial, and resolved treatment of billions in competing claims among different debtor and creditor constituencies.  *See Id.* [Dkt. No. 3814] (motion to approve plan support agreement in ResCap); [Dkt. No. 3814-4] (ResCap plan support agreement).

12.     Mediation has also proven to be an extremely successful tool in these bankruptcy cases.  To date, hundreds of successful mediations have added more than $2,261,800,888 in funds to be distributed to creditors.[11]  All of this was accomplished at significantly less cost to the Debtors and the other parties to the mediations than if they were forced to incur the substantial costs inherent in litigation.  Mediation of the Indemnification Claims against the Sellers will further these ongoing efforts and potentially increase the funds available for distribution to creditors.

Objection:     The Bankruptcy Court Lacks Post-
               Confirmation Jurisdiction to Enter the Mediation Order

13.     Response:     One objector, DHI Mortgage Company, Ltd. ("DHI"), argued that the bankruptcy court lacks jurisdiction to enter the Indemnification ADR Order after confirmation as there is purportedly no "close nexus" with the bankruptcy proceeding.  DHI's argument is baseless.  To the extent the core/non-core jurisdiction argument is relevant to this

---

[11] *See* [Dkt. No. 44319] (fifty-fourth status report to the Court concerning mediation recoveries).

analysis, LBHI asserts that the Court has core jurisdiction over the Motion. Congress specifically empowered bankruptcy courts to resolve matters affecting the liquidation of assets of the estate and designated such actions core proceedings. *See* 11 U.S.C. § 157(O). Such core jurisdiction persists post-confirmation when the matter at issue has an impact on distributions to creditors under a plan. *See In re Allegiance Telecom, Inc.*, 03-13057, 2006 Bankr. LEXIS 5052, at *6 (Bankr. S.D.N.Y. Nov. 8, 2006) (finding core jurisdiction post-confirmation under section 157(b)(2)(A) and (O) as the matter required the interpretation and implementation of a court-approved asset purchase agreement and the Plan and directly affected distributions to creditors). Thus, regardless whether the Indemnification Claims themselves involve core proceedings, the Motion is a core proceeding under section 157(b)(2)(O).

14. This Court may exercise jurisdiction over a proceeding post-confirmation if the matter has a "close nexus" to the bankruptcy case.[12] *See Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 Fed. App'x 134, 137 (2d Cir. 2011) (summary order and opinion holding the lower court was correct in first determining whether it had jurisdiction using the close nexus test). The determination of whether a matter bears a close nexus to the bankruptcy case is a "fact sensitive endeavor." *New England Nat'l, LLC v. Town of East Lyme (In re New England Nat'l, LLC)*, 2012 Bankr. LEXIS 4204, at *15 (Bankr. D. Conn. Sept. 11, 2012). "Broadly speaking, the proceeding must affect some aspect of the plan—its meaning, its implementation or its consummation—to come within the Court's post-confirmation jurisdiction." *General Media, Inc. v. Guccione (In re General Media, Inc.)*, 335 B.R. 66, 74

---

[12] Post-confirmation jurisdiction also requires that the matters or claims at issue be retained in the Plan. *See Krys v. Sugrue*, 08CIV3065(GEL), 2008 WL 4700920, at *6 (S.D.N.Y. Oct. 23, 2008). No objection was raised to the Court's post-confirmation jurisdiction based on any purported lack of reference to the claims at issue in the Plan and/or Confirmation Order. Nevertheless, as stated in the Motion, the Plan and Confirmation Order expressly preserve indemnification claims at issue here for the Bankruptcy Court's jurisdiction. LBHI reserves its right to respond to any subsequent objections raised, including any jurisdictional objections.

(Bankr. S.D.N.Y. 2005).  In the case of a liquidating plan, the close nexus text is more easily satisfied because of the anticipation that the bankruptcy court will be involved in the liquidation process after confirmation.  *See Eastern Airlines, Inc. v. General Mills, Inc. (In re Ionosphere Clubs, Inc.)*, 89 B 10448, 1999 Bankr. LEXIS 1875, at *18 (Bankr. S.D.N.Y. May 12, 1999).  As Judge Lifland noted in *In re Ionosphere*:

> Because 'the liquidation purpose is effectuated by the bankruptcy
> estate, via the trustee, creditors' committee or disbursing agent,
> marshaling assets for distribution to creditors. . . disputes between
> the debtors and others that develop out of liquidation are the
> responsibility of the bankruptcy court.'

*Id*. (citation omitted).

15.    The close nexus requirement is satisfied here, particularly given that this is a liquidating Plan.  As the Plan Administrator for the post-confirmation Debtors, LBHI is directed to wind down and liquidate the assets of all the Debtors.  Plan § 7.6.  The liquidation of all the assets, including eventually LBHI itself, will be used to fund distributions by operation of the implementation provisions of the Plan.  Plan § 6.1(b)(iii).  Section 8.14(b) of the Plan and paragraph 79 of the Confirmation Order both provide that the Debtors retain the right to assert and prosecute Indemnification Claims.  The foregoing provisions also make clear that LBHI will pursue Indemnification Claims as a means to fund additional distributions to creditors.  Liquidating the Indemnification Claims undoubtedly will affect recoveries by creditors, a factor which warranted the exercise of post-confirmation jurisdiction in other cases in this District.  *See Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 11-cv-2232, 2011 WL 4965150, at *3-4 (S.D.N.Y. Oct. 19, 2011); *In re Ionosphere*, 1999 Bankr. LEXIS 1875, at *20-21; *In re Allegiance Telecom, Inc.*, 2006 Bankr. LEXIS 5052, at *6.

16.     DHI's attempt to distinguish LBHI's post-confirmation jurisdictional analysis in the Motion fails.  DHI takes issue with LBHI's reliance on *Krys v. Sugrue*, 08-cv-3065, 2008 WL 40700920, at *6 (S.D.N.Y. Oct. 23, 2008), but the case is instructive.  *Krys* involved a litigation trust formed by a plan to liquidate private action claims contributed by creditors.  *Id.* The court held that such claims "arise under" the plan and "implementation and execution" of the confirmed plan is directly at issue and found post-confirmation jurisdiction.  *Id.*  In *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLP*, 396 B.R. 602, 605-06 (S.D.N.Y. 2008), the district court found post-confirmation jurisdiction could properly be exercised over a third-party dispute where a stream of payments were to be made to the liquidated debtor to be used for distributions to creditors.  The third-party litigation threatened the amount to be realized by creditors under a sale and confirmation order where the purchaser had an obligation to collect and turn over certain assets to a trust for the benefit of creditors.  *Id.*

17.     While no separate trust was created upon confirmation, LBHI serves as the Plan Administrator for the very same purposes as the private-action trustee in *Krys*—the liquidation, collection and distribution of claims for the benefit of creditors.  In addition, the proposed ADR procedure deals with direct claims held by LBHI against the Sellers, which have a stronger connection to the chapter 11 case than the third-party claims at issue in *CCM Pathfinder.*

18.     In support of its argument, DHI cites to a single case, *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461 (Bankr. S.D.N.Y. 2011).  *See* DHI Objection [Dkt. No. 44682] at 9.[13]  In *Park*, the post-confirmation debtor (a doctor's office) sought to file suit in bankruptcy

---

[13] DHI also cites to *In re New Eng. Nat'l, LLC*, 02-33699, 2012 WL 3987648, at *15 (Bankr. D. Conn. Sept. 11, 2012), for the erroneous assertion that the "Debtors have offered the Court no facts to support" the Court's close nexus determination.  DHI Objection at 9.  Unlike in *New Eng. Nat'l, LLC*, LBHI laid out the basis for the Bankruptcy Court's jurisdiction in the Motion, including a detailed analysis of the Indemnification Claims to be pursued in mediation and the "close nexus" of those claims to the bankruptcy case.  *See* Motion ¶¶ 3-14.  Moreover, *New Eng. Nat'l, LLC* was decided in the context of post-trial briefing in an adversary proceeding, and because the

court against a former employee of the debtor for alleged breach of a restrictive covenant. *In re Park Ave. Radiologists, P.C.*, 450 B.R. at 463. However, in *Park*, the "close nexus" test was not satisfied because any recovery in the underlying adversary proceeding would have been enjoyed by the reorganized debtor, *not* the debtor's creditors. *Id.* at 470 ("any recovery in this case would inure solely to the benefit of the Reorganized Debtor"). By contrast, all recoveries from the Sellers will be shared by the Debtors' creditors by operation of the Plan. Moreover, in *Park*, unlike here, the plan did not explicitly retain jurisdiction over the claims at issue. *Id.* at 471 ("Absent a sufficiently broad retention of jurisdiction Plan provision, the Court lacks subject matter jurisdiction over the Complaint."). This distinction is especially notable because none of the objectors argue that the Plan failed to retain jurisdiction of these types of claims in the Bankruptcy Court.

19.      Finally, both the Fannie Mae and Freddie Mac (collectively, the "GSEs") Settlement Orders preserve Bankruptcy Court jurisdiction over the "implementation" of the Settlements. One of the key benefits of the Settlements to LBHI is the ability to recover value from the Sellers. While the Indemnification Claims were not created by the Settlement Orders, they accrued in LBHI as a direct result. The retention of jurisdiction to implement that aspect of the Settlements should carry with it the power to implement an ADR program with respect to the Indemnification Claims acquired under the Settlements. Such power is consistent with the Plan provisions expressly permitting the Plan Administrator to retain the authority to recover on such

---

briefs filed by the parties did "not contain a separate statement of material facts," the court ordered submissions of fact for the order to be entered by the court. *New Eng. Nat., LLC*, 2012 WL 3987648, at *6.

claims.  Consequently, the Court should find that the Indemnification ADR Order bears a close nexus to the Plan and the objection should be overruled.[14]

> Objection:    Due Process Would Be Violated by Forcing Sellers Into Mediation

20.    Response:    Some objectors argue that the Indemnification ADR Order violates due process because it would force the Sellers into mediation without adequate notice of the claims being asserted against them.  However, due process concerns only arise when there is the threat of a binding order or judgment on a party.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (due process concerns arise in context of "power to render a ***valid judgment***" over out of state defendants) (emphasis added); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a ***judgment to be binding on a litigant*** who was not a party or a privy and therefore has never had an opportunity to be heard.") (emphasis added); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1176-77 (5th Cir. 1979) (held mandatory mediation process "do not violate the federal right to due process of law of law").  Whereas here, mediation is by its very nature non-binding and the Indemnification ADR Order explicitly states that the Sellers cannot be forced to accept any specific settlement or compromise.  *See* Indemnification ADR Order § 6(b) ("No party is required to settle or compromise any dispute or enter into a particular settlement or compromise.").  The Indemnification ADR Notice will be specifically tailored to the individual Seller, providing further information about the claims at issue, including the total amount sought to settle the dispute.  *See* Indemnification ADR Order ¶ 8(a).

---

[14] DHI also objects to the purported lack of "commonality" among the Indemnification Claims.  LBHI need not prove commonality prior to the entry of the Indemnification ADR Order.  Nevertheless, the Indemnification Claims to be asserted against the Sellers are legally identical in that they all arose from the Debtors' settlement of the GSEs' claims against the estates.

21.     Further, the Motion as well as the Indemnification ADR Order gave adequate notice that the claims being asserted against the Sellers are indemnification claims related to mortgage loans sold to LBHI and other Lehman entities by the Sellers, and resold by LBHI to the GSEs. Even if Rule 8 applied here – which it plainly does not because no suit has been filed – the Rule merely requires a "short and plain statement" of the claim being asserted. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (plaintiff need only state "plausible" claim); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (same). That standard has been satisfied in that the Sellers have sufficient notice that Lehman is seeking to mediate indemnification claims that arose from the Sellers' sale of mortgage loans to the Debtors, and LBHI's recent settlement with Fannie Mae and Freddie Mac.

Objection:     Indemnification ADR Procedures Should
Only Apply to Pending Adversary Proceedings

22.     Response:     Some objectors assert that the Court has the power to order mediation only with respect to disputes that are the subject of adversary proceedings. In support of this argument, these objectors cite to the *Enron* and *Ames* mediation orders, which related to pending adversary proceedings. However, no case has been cited which limits the Court's power to direct mediation of disputes only if an adversary proceeding has been filed.

23.     These objections ignore the broad authority granted to this Court by section 105(a) of the Bankruptcy Code and the Standing Order. First, the title of the Standing Order itself undermines these objections by providing: "In re: Court Annexed Mediation Program: Adoption of Procedures Governing Mediation of Matters ***in Bankruptcy Cases*** and Adversary Proceedings." (emphasis added). Additionally, section 1.3 of the Standing Order provides that "unless otherwise ordered by the presiding judge, any adversary proceeding, contested matter ***or other dispute*** may be referred by the Court to mediation." Standing Order ¶ 1.3 (emphasis

14

added).  Fundamental principles of interpretation require that the Court give effect to all of the

words in the order and the use of the phrase "or other dispute" after "adversary proceeding" and

"contested matter" demonstrates that the Standing Order is not meant to be limited to disputes as

to which an Adversary Proceeding or contested matter has already been commenced.  *See Perry*

*v. Dowling*, 95 F.3d 231, 238 (2d Cir. 1996).  Accordingly, the Standing Order clearly

contemplates that the Court may order matters to mediation that are not the subject of adversary

proceedings.  Oddly, some of the objectors appear to be demanding to be sued as a condition to

negotiating; requiring such an exercise would achieve little other than increasing the costs to the

objectors and the estates. Such an exercise would also be contrary to the purpose of mediation –

to foster settlement and avoid litigation and its related costs.

24.     Further, certain objectors argue that because the chapter 11 cases are already

several years old, there is no need for an efficient ADR process.  The argument ignores the fact

that the Indemnification Claims at issue accrued only a few months ago when LBHI settled with

the GSEs pursuant to settlement agreements in January 2014 [Dkt. No. 42153] and February

2014 [Dkt. No. 42754].

25.     Additionally, in cases of this size and complexity, ordering mediation without

pending adversary proceedings is not uncommon.  *See, e.g. LightSquared Inc., et al.,* S.D.N.Y.

Bankr. Case No. 12-12080 [Dkt. No. 1557] at 4 (ordering mediation of (i) allocation of estate

value among creditors and other Plan confirmation issues not subject to pending adversary

proceeding, and (ii) equitable subordination of claims subject to pending adversary proceeding);

*Residential Capital, LLC,* S.D.N.Y. Bankr. Case No. 12-12020 [Dkt. No. 2519] at 1 (ordering

mediation of Plan confirmation issues not subject to pending adversary proceeding).  Such a

process has also been used in the Debtors' bankruptcy cases without pending adversary

15

proceedings with great success.  *See* Dkt. No. 5207 (claims ADR Order); Dkt. No. 8474

(derivatives counterparty ADR Order).  Accordingly, the Court need not wait until adversary

proceedings are filed prior to ordering the parties to mediation.

Objection:    Court Does Not Have Personal Jurisdiction
<u>Over Sellers to Direct Them to Mediation</u>

26.    <u>Response</u>:    Certain objectors assert that the Court lacks personal jurisdiction

over them, and lacks the power to order mediation over parties located outside the Court's

jurisdiction which have not filed a proof of claim.  The Motion, however, is a contested matter

under Bankruptcy Rule 9014(a).  Under Rule 9014(b), service in a contested matter is made "in

the manner provided for service of a summons and complaint by Rule 7004."  The Court has

jurisdiction over a party under Rule 7004 so long as such party has minimum contacts with the

United States, as all the Sellers do.  *See Warfield v. KR Entertainment, Inc.* (*In re Fed. Fountain,

Inc.*), 165 F.3d 600, 602 (8th Cir. 1999); *In re Enron Corp.*, 316 B.R. 434, 440 (Bankr. S.D.N.Y.

2004) (citing *J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin.

Corp.)*, 124 B.R. 931, 942 (S.D.N.Y. 1991) ("In a Chapter 11 [proceeding, the court] has

nationwide personal jurisdiction over the defendants."); *Alliance Commun. Group, Inc. v. N.

Telecom, Inc.*, 65 B.R. 581, 584 (S.D.N.Y. 1986) (rejecting motion to remove matter from

bankruptcy court for lack of personal jurisdiction as "irrelevant in the context of a bankruptcy

proceeding with nationwide jurisdiction"); *In re Ismael Longoria*, 400 B.R. 543, 551-52 (W.D.

Tex. 2009) (where a party to contested matter has been properly served under Bankruptcy Rules

7004 and 9014, the Court can exercise nationwide personal jurisdiction).

Objection:      Participation in Mediation Will
<u>Cause Sellers to Waive Right to Jury Trial</u>

27.    <u>Response</u>:    Some of the objectors argue that participation in mediation would cause the Sellers to waive their right to a jury trial.  However, nothing in the Indemnification ADR Order purports to waive any claims or defenses held by the Sellers, including the Sellers' right to a jury trial.  While there was some confusion over the language of the Indemnification ADR Order, these concerns were misguided.  The Indemnification ADR Order provides that the participants specifically retain their right to a jury trial, except to the extent that the mediation is successful and the parties enter into a binding settlement, in which case both parties would waive their rights to a jury trial.[15]  The Indemnification ADR Procedures are non-binding, and do not provide for the waiver of any defenses that the Sellers may hold, if the parties do not reach settlement.  LBHI is not opposed to inserting clarifying language on this point.

Objection:      Pending or Prior Litigation or Settlements Among
<u>the Debtors and Individual Sellers Precludes Mediation</u>

28.    <u>Response</u>:    Certain objectors argue that current or prior litigation between LBHI and the individual Sellers precludes mediation.  *First*, to the extent that there is any binding order or settlement agreement with respect to certain claims that LBHI may hold against individual Sellers for specific mortgage loans, LBHI will not institute mediation with respect to those claims.  However, the resolution of claims against individual Sellers for certain loans may not extinguish LBHI's rights to assert claims against the Sellers with respect to other mortgage loans that were not a part of the settlement.  Again, LBHI will act in good faith in pursuing claims against Sellers that are valid and have merit.  To suggest otherwise assumes that LBHI

---

[15] "<u>Jury Trials Unaffected</u>.  Except to the extent a Seller affirmatively chooses the mediation option set forth herein, participation in the Indemnification ADR Procedures shall not waive any right to a jury trial that might otherwise exist."  Indemnification ADR Order ¶ 15.

intends to act in bad faith, an unwarranted assumption based on LBHI's conduct throughout this case.  It is reasonable to assume that LBHI only intends to pursue legitimate claims which have not been released, as to do otherwise would waste both LBHI's and the released Seller's time and resources.

29.    *Second*, to the extent that there is pending litigation with the Sellers over certain mortgage loans that may be pursued in mediation, there is nothing in the Federal Rules, Local Rules or otherwise prohibiting mediation while litigation is taking place.  To the contrary, mediation is often pursued in parallel with litigation because mediation can push the parties to resolve their claims and defenses at a reduced cost.  *See In re Teligent, Inc.*, 417 B.R. 197, 205 (Bankr. S.D.N.Y. 2009) ("Mediation plays a critical role in the resolution of lawsuits by fostering settlement and preserving personal and judicial resources.").  Thus, mediation is beneficial to all parties involved, and often encouraged by the courts, and should not be prohibited simply because there is a pending lawsuit between the parties.  *See Fields–D'Arpino v. Rest. Assocs., In*c., 39 F. Supp. 2d 412, 417 (S.D.N.Y.1999) ("mediation provides a vital alternative to litigation," whose benefits "include its cost-effectiveness, speed and adaptability").

30.    *Third*, the assertion that mediation would stay pending litigation is incorrect as the Indemnification ADR Order does not provide for a stay.  Further, nothing in the Federal Rules, Local Rules, or otherwise would mandate the stay of any pending actions.  To the extent that LBHI, a Seller, or both parties seek to stay litigation pending the outcome of mediation contemplated by the Indemnification ADR Order, such issue is not before the Court.  The Court need not rule on issues that are not yet ripe for Court determination.  *See Bronx Household of Faith v. Bd. of Educ. of City of New York*, 492 F.3d 89, 95 n.2 (2d Cir. 2007).

31.     *Fourth*, the argument that the institution of mediation in New York while lawsuits

are pending outside the jurisdiction amounts to improper "forum shopping" is misguided.

Almost none of the Sellers face litigations instituted in other jurisdictions at this point.  However,

LBHI has always been headquartered in New York.  As a result, the Debtors' bankruptcy cases

are venued in New York, so the suggestion that LBHI is engaged in "forum shopping" is

illogical.  Further, issues concerning forum shopping only arise when a plaintiff or a defendant

seeks to have its claims adjudicated in what it perceives to be an unfavorable forum for the other

party.  *See Lorentzen v. Levolor Corp.*, 754 F. Supp. 987, 994 (S.D.N.Y. 1990) (stating federal

policy against forum shopping in context when litigant attempts to file lawsuit in more favorable

forum).  In fact, "forum shopping" has been defined as a litigant's attempt "to have his action

***tried in a particular court or jurisdiction*** where he feels he will receive the most favorable

***judgment or verdict***."  *Forum Shopping Reconsidered*, 103 Harv. L. Rev. 1677 (1990) (emphasis

added) (citation omitted).

32.     Mediation does not lead to adjudication, but it may lead to resolution.  There will

be no final judgment or verdict by the mediator.  The mediation is non-binding on the parties, is

protected by broad confidentiality provisions, and preserves all rights or defenses that the parties

may otherwise hold.  Mediation is simply a cost-effective and speedy method for the parties to

negotiate possible settlement of valid claims before neutral third-parties.

> Objection:     The Sellers' Defenses May Be Waived
> if the Indemnification ADR Order Is Entered

33.     <u>Response</u>:     Certain objectors assert the need for specific amendments to the

Indemnification ADR Order to protect the Sellers' rights.  The proposed changes are redundant

of existing provisions or simply unneeded.

34.     It is argued that there should be an additional express reference in the Indemnification ADR Order that all claims, defenses, and remedies held by the Sellers are not waived by the institution of mediation.  As previously stated, the mediation is *non-binding*, and, by its very nature, the parties do not waive any claims, defenses, or remedies that they may have by participating in mediation.  Concerns over waiver of any claims, defenses, or remedies are unfounded**.**  Nonetheless, LBHI would agree to a specific provision to resolve these objections.

**B.     Objection Based Upon Statute of Limitations**

<u>Objection</u>:     It Would Be Unfair to Force Mediation Because the
<u>Claims Are Barred by the Applicable Statute of Limitations</u>

35.     <u>Response</u>:     Certain Sellers contend that they should not be burdened with claims that would customarily be the subject of a motion to dismiss based upon a statute of limitations defense.  The issue whether LBHI's claims are barred by the statute of limitations is not before the Court.  However, the Debtors believe these objections are meritless as a matter of law.  As described in the Motion (¶¶ 7-12), the Debtors' Indemnification Claims stem from the Debtors' Settlement Agreements and subsequent payments on Fannie Mae and Freddie Mac's allowed claims.  The Sellers were contractually obligated to indemnify the party that suffers losses as a result of defects in their loans.  LBHI suffered losses when the GSEs' claims were allowed.  Under New York law, courts have consistently held that claims for indemnification do not accrue until, at the earliest, the claimant has paid the claim giving rise to the right of indemnification.  *See e.g., McDermott v. City of New York*, 50 N.Y.2d 211, 217 (1980) (held indemnification action "is not complete until loss is suffered," and thus "Statute of Limitations principles dictate that accrual occurs upon payment by the party seeking indemnity") (citations omitted).  The six-year statute of limitations for indemnification[16] did not begin to accrue until at

---

[16] *See Id.* at 217 (six year statute of limitations applies to indemnification action).

earliest January or February 2014 when payments could have been made after the Settlement

Agreements were approved by this Court.

**C.      Objections Based on the Purported Unfairness of the ADR Procedures**

<u>Objection</u>:      <u>The Process for the Selection of Mediators is Unfair</u>

36.      <u>Response</u>:      Some objectors assert that the procedure for the selection of the

mediator favors LBHI and suggest that the parties should together select the mediator for each

particular dispute.  These objectors fail to recognize that the mediators will be appointed by the

Court not by LBHI, and continue to display their unfounded fears that LBHI is acting in bad

faith.  LBHI has no advantage whatsoever because mediations are non-binding.  Simply stated,

the mediator is not a decision-maker.  The Sellers can decline to settle if good faith efforts fail.

37.      In addition, due to the sheer number of mediations that the Debtors expect to

initiate, it is impractical to require LBHI and the Sellers to mutually select an independent

mediator for each dispute, and then request the Court to appoint a mediator each time the parties

cannot agree.  That process alone could take an inordinate amount of time before the mediations

even commence.  LBHI has followed a similar procedure in the existing ADRs without incident.

38.      Finally, the mediators are already well known to the Court.  Each has either been

approved to serve as a mediator by this Court or the District Court for the Southern District of

New York.  To suggest that selecting any particular one from those lists would be unfair is

unfounded.

<u>Objection</u>:      New York Is an Inconvenient
<u>Venue for the Mediation to Take Place</u>

39.      <u>Response</u>:      Certain objectors complain that parties should agree on the

location of mediation rather than requiring mediation to take place in New York.  As a threshold

matter, such objections ignore that the Indemnification ADR Procedures are consistent with the

21

principle of centralizing bankruptcy disputes to one forum.  *See In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997).  The burden imposed on LBHI to mediate with thousands of Sellers far outweighs the minimal burden on the Sellers from mediating their limited number of disputes in New York.  To engage in mediation prior to litigation will undoubtedly save costs for all participants, including the Sellers.  Requiring litigation at the outset without first attempting to engage in mediation defeats the intent of the Standing Order and Indemnification ADR Order.

40.    Further, the Sellers' appearance, if any, is required only should the "Notice/Response Stage" of the Indemnification ADR Procedures prove unsuccessful.  *See* Indemnification ADR Order ¶ 8-9.  LBHI is hopeful that the Notice/Response Stage will be successful in providing for meaningful settlement.

Objection:     Costs, Travel Expenses and
               Mediator Fees Should Be Incurred by Debtors

41.    Response:    Some objectors contend that all costs, travel expenses, and mediator fees should be incurred by LBHI.  Under the American Rule, absent statutory authority, attorneys' fees, costs and expenses are usually the burden of each party; consequently, mediating parties are not entitled to shift the costs and fees of mediation to the other party.  *See Grove v. Wells Fargo Fin. Calif., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (noting that under the "'American Rule," non-taxable costs, including "mediation services" are borne by each party absent statutory authority to the contrary) (citation omitted); *Tiedel v. Northwestern Mich. Coll.*, 865 F.2d 88, 93-94 (6th Cir. 1988) (reversing an award of mediation costs and attorneys' fees to the prevailing party at trial arising from a local rule that shifted fees and expenses if the prevailing party was also successful in mediation; district court lacked authority to ignore the American Rule to make mediation more meaningful).  Such treatment is appropriate considering

that all parties, including the Sellers, can benefit from good faith participation. The costs of participation are also significantly less than if the parties were instead engaged in litigation.

42.    Finally, contrary to the objectors' position, the Standing Order does not mandate that LBHI should pay the mediator's fee or the parties' expenses. *See* Standing Order § 4.0. Instead, the Standing Order provides that payment should be on terms that are "reasonable and just." *Id.* LBHI submits that it would be "reasonable and just" to provide that the mediator's fee should be shared equally by LBHI and the Sellers, while each of the parties bear the burden of their own travel expenses, costs, and attorneys' fees. *C.f.* Local Rules for the Northern District of New York, Appendix IV § 6.1(2) (proving default rule that all parties to mediation are to pay mediator fees equally).

Objection:    Thousands of Mediations Will Impose an Undue Burden<br>on the Individual Mediators, Which Will Prejudice the Sellers

43.    <u>Response</u>:    DHI Mortgage Company, Ltd. argues that interposing thousands of mediations across the mediator pool would impose an undue burden on the mediators, which in turn will inherently prejudice the individual Sellers. LBHI has no interest in overburdening the mediators. LBHI fully intends to act in good faith in order to obtain as many settlements as it can through the mediation process, and to minimize the costs associated with litigation. Overburdening the mediators will not achieve that goal. Moreover, the objector wrongly assumes that mediators will be appointed for each Seller noticed by the Motion. To the contrary, LBHI fully expects that settlements can be reached with many of the Sellers prior to the appointment of a mediator. To the extent that the number of mediations becomes too burdensome for the mediators, additional mediators may be appointed by the Court. Appointment of additional mediators has already occurred in other ADR proceedings as necessary. *See, e.g.,* Dkt. Nos. 11537, 37940 (adding mediators for derivatives counterparties

23

ADR).  The flexibility of the ADR process ensures that it will not become ineffective simply because of the volume of mediations.

> Objection:    LBHI Will Unfairly Wield Sanctions
> <u>Against the Sellers Without Any Recourse</u>

44.    <u>Response</u>:    Certain objectors misperceive the language in the Indemnification ADR Order as giving LBHI the power to impose burdensome sanctions against the Sellers. However, the objections are based on a misreading of the express provisions of the Indemnification ADR Order.  The Indemnification ADR Order provides that sanctions apply equally to both the Sellers and LBHI, and will only be imposed by order of the Court, after notice and a hearing, if any party fails to act in good faith:

> 12. <u>Sanctions for Parties</u>. LBHI and each Seller must participate in good faith with these Indemnification ADR Procedures with regard to the ADR Disputes specified in the applicable Indemnification ADR Notice.  If, ***after notice and a hearing***, ***the Court determines*** that LBHI or the Seller have not complied with the Indemnification ADR Procedures in good faith in connection with any Indemnification ADR Dispute, ***LBHI or the Seller*** may be subject to such sanctions as the ***Court deems appropriate*** (the "Sanctions").

Indemnification ADR Order § 12 (emphasis added).

45.    Accordingly, under no circumstances can a technical default result in automatic sanctions.  Moreover, LBHI does not have the power to unilaterally impose sanctions; instead both parties are treated equally and may seek sanctions from the Court if the other party fails to mediate in good faith.  Despite the fears of certain objectors, LBHI does not intend to use the Indemnification ADR Order as a means to seek sanctions for technical defaults or gain leverage. The record from the hundreds of ADR proceedings to date demonstrates that LBHI has rarely sought sanctions, and only in cases of egregious behavior.

<u>Objection</u>:      Certain Provisions of the Indemnification
                <u>ADR Order Are in Conflict With One Another</u>

46.      <u>Response</u>:      It is argued that Paragraph 10(b) of the Indemnification ADR

Order concerning the powers of the mediator (the "<u>Powers Provision</u>") is overbroad and cannot

be reconciled with Paragraph 13 and section 5.0 of the Standing Order, which is incorporated by

reference into the Indemnification ADR Order.  The Powers Provision affords the mediator "the

broadest possible discretion consistent with the Standing Order . . . including the discretion to

certify specific legal issues to the court for decision."  LBHI will agree to delete the mediator's

ability to certify legal issues to the Court for decision, unless and until an action is filed against

the particular Seller.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, LBHI respectfully requests that the Court

(i) overrule the objections to the Motion; (ii) approve the Indemnification ADR Order and

authorize the Indemnification ADR Procedures; and (iii) grant such other and further relief as the

Court may deem just and appropriate.

Dated: New York, New York
       June 17, 2014

/s/ Paul R. DeFilippo
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek

Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone:      (212) 382-3300
Facsimile:      (212) 382-0050

/s/ Michael A. Rollin
Michael A. Rollin
Maritza Dominguez Braswell

Jones & Keller, P.C.
1999 Broadway, suite 3150
Denver, Colorado 80202
Telephone:      (303) 573-1600
Facsimile:      (303) 573-8133

*Special Counsel for Lehman Brothers Holdings
Inc. and Certain of Its Affiliates*