WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David J. Lender
Peter D. Isakoff
Kevin F. Meade
Arielle Gordon

**Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re:** | **:** | **Chapter 11 Case No.** |
| | **:** | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | **:** | **08-13555 (SCC)** |
| | **:** | |
| **Debtors.** | **:** | **(Jointly Administered)** |

------------------------------------------------------------------x

**LEHMAN BROTHERS HOLDINGS INC.'S RESPONSE TO CANARY WHARF'S
STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF
UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 7056-1**

Pursuant to Rule 7056-1 of the Local Rules of the United States Bankruptcy Court

for the Southern District of New York, Lehman Brothers Holdings Inc. ("LBHI"), by and

through its undersigned counsel, respectfully submits the following response to the Canary

Wharf Claimants' Statement of Undisputed Material Facts and statement of undisputed material

facts as to which there is no genuine issue to be tried in support of its cross-motion for summary

judgment.

**Response to Canary Wharf's Statement of Material Undisputed Facts**

1.       A lease for the property at 25 Bank Street in London, England, dated March 16,

2005 (the "Lease") was executed by Lehman Brothers Holdings Inc. ("Lehman"), a wholly-

owned subsidiary of Lehman called Lehman Brothers Limited ("Lehman Sub"), Canary Wharf,

and Canary Wharf Holdings Limited. (Stipulation of Undisputed Facts, executed June 13, 2013 ("Facts Stipulation") (Ex. 1) ¶ 1; Lease (Ex. 9).)   A true and correct copy of the Lease is attached as Exhibit 9 to the accompanying De Leeuw Declaration. The Facts Stipulation is attached hereto as Appendix A.

LBHI's Response No. 1:       Admitted.  *See* LBHI's Statement of Undisputed Material Facts ("LBHI's SUF") ¶¶ 4–5.

2.       In the Lease, Lehman Sub is defined as the "Tenant," Lehman is defined as the "Surety," Canary Wharf is defined as the "Landlord" and "Management Company," and Canary Wharf Holdings Limited is defined as "Landlord's Guarantor." (Ex. 9 at LBHI_CW-9 (Lease Particulars ¶ 3).)

LBHI's Response No. 2:       Admitted.

3.       The Lease is for a term of 30 years commencing July 3, 2003. (Facts Stipulation (Ex. 1) ¶ 3; *see also* Lease (Ex. 9) at LBHI_CW-10 (Lease Particulars ¶ 6).)

LBHI's Response No. 3:       Admitted.  *See* LBHI's SUF ¶ 5.

4.       The Lease states (§ 8.16) that it is governed by the laws of England.  (Facts Stipulation (Ex. 1) ¶ 2; *see also* Lease (Ex. 9) at LBHI_CW-67 (§ 8.16).)

LBHI's Response No. 4:       Admitted.  *See* LBHI's SUF ¶ 6.

5.       Paragraph 1 of Schedule 4 to the Lease, entitled "Indemnity by Surety," provides as follows:

**1. Indemnity by Surety**

The Surety hereby covenants with the Landlord and as a separate covenant with the Management Company as a primary obligation that the Tenant or the Surety shall at all times until the Tenant shall cease to be bound by the Tenant's covenants in the Lease during the Term duly perform and observe all the covenants on the part of the Tenant contained in this Lease including the payment of the rents hereby reserved and all other sums payable under this Lease in the manner and at the times herein specified and the

Surety shall indemnify and keep indemnified the Landlord and the Management Company against all claims demands losses damages liability costs fees and expenses whatsoever sustained by the Landlord or the Management Company by reason of or arising directly or indirectly out of any default by the Tenant in the performance and observance of any of its obligations or the payment of any rents and other sums Provided That the Landlord and the Management Company shall notify the Tenant of any such actions or other matters and take all reasonable steps to mitigate such losses having regard to the nature of the breach

(Lease (Ex. 9) at LBHI_CW-101 (Schedule 4 ¶ 1)).

LBHI's Response No. 5:    Admitted.  *See* LBHI's SUF ¶ 9.

6.    On September 15, 2008, Lehman filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York under chapter 11 of the U.S. Bankruptcy Code, and on that same day, Lehman Sub was placed into administration in the United Kingdom. (Facts Stipulation (Ex. 1) ¶ 4.)

LBHI's Response No. 6:    Admitted.  *See* LBHI's SUF ¶ 14.

7.    On September 17, 2009, Canary Wharf filed Proofs of Claim Numbers 14824 and 14826 against Lehman in this proceeding. (Facts Stipulation (Ex. 1) ¶ 5.)

LBHI's Response No. 7:    Admitted.  *See* LBHI's SUF ¶ 15.

8.    In March 2010, Lehman Sub vacated the 25 Bank Street building and stopped paying rent or any of the other amounts due under the Lease. (Joint Administrators' Progress Report, dated April 13, 2010 (Ex. 13) at 1, 4, 14; Transcript of Deposition of Sir George Iacobescu, Canary Wharf's Chairman and CEO, taken June 18, 2013 ("Iacobescu Tr.") (Ex. 5) 49:20-50:2, 246:5-12; Transcript of Deposition of Pamela Kendall, Canary Wharf Counsel, taken June 20, 2013 (Ex. 14) 99:21-100:8.)

LBHI's Response No. 8:    Undisputed as written but incomplete.  Subtenants continued to occupy HQ2 after March 2010, paying rent to the Landlord until December 2010. *See* LBHI's SUF ¶¶ 17–18.

9.      Lehman Sub, its administrators, and Canary Wharf entered into an agreement,

dated December 3, 2010, pursuant to which Canary Wharf would forfeit the Lease. (Facts

Stipulation (Ex. 1) ¶ 6; *see also* Forfeiture Letter (Ex. 16).)

LBHI's Response No. 9:      Admitted.  *See* LBHI's SUF ¶ 79.

10.     On December 10, 2010, Canary Wharf forfeited the Lease and took possession of

the 25 Bank Street property. (Iacobescu Tr. (Ex. 5) 37:7-11; Lehman's Reply to Canary Wharf's

Response and in Further Support of Objection to Proofs of Claim Number 14824 and 14826,

filed Jan. 10, 2013 (ECF# 33774) ¶ 6.)

LBHI's Response No. 10:      Admitted.  *See* LBHI's SUF ¶ 80.

11.     A 999-year lease for the property at 25 Bank Street in London, England, dated

December 20, 2010, was executed among HQCB Investments Limited as "Landlord," JPMorgan

Chase Bank, N.A. as "Tenant," Heron Quays Properties Limited as "Estate Landlord," Canary

Wharf Management Company Limited as "Management Company," Canary Wharf Investments

Limited as "Estate Freeholder," and Canary Wharf Limited as "Canary Wharf Landlord."

(JPMorgan Lease, dated Dec. 20, 2010 (Ex. 19) Prescribed Clauses LR1, LR3, LR6.)

LBHI's Response No. 11:      Admitted.  *See* LBHI's SUF ¶¶ 20, 72.

**LBHI's Statement of Undisputed Material Facts**

**I.      The Parties**

1.      Canary Wharf Group plc ("Canary Wharf") is the parent company for a group of

entities that developed and manage a business complex in London.  *See* Response of Canary

Wharf to Objection to Proofs of Claim Numbers 14824 and 14826, filed October 12, 2012, at ¶¶

1 n.1, 8 (ECF No. 31341) (hereinafter "Canary Wharf's Resp.").

2.      One of its buildings is HQ2, a thirty-floor office tower with more than one million

square feet located at 25 Bank Street.  *See id.* at ¶ 10.

4

3.      Canary Wharf's subsidiaries include Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited's (collectively, the "Landlord"), which was the landlord for HQ2, and Canary Wharf Management Limited (the "Management Company"), which was the management company for HQ2.  *See id.* at n.1.

4.      LBHI was the parent company of Lehman Brother Limited ("LBL"), a subsidiary located in London.  *See* Facts Stipulation, attached as Ex. 1 to Decl. of Marc De Leeuw, filed March 14, 2014, at ¶ 1 (ECF No. 43540-1).

## II.      The Lease and Surety Agreement

5.      On March 16, 2005, LBL, as tenant, entered into a thirty-year lease with the Landlord, the Management Company, and Canary Wharf Holdings Limited ("CWHL"), commencing on July 3, 2003 (the "Lease").  *See* De Leeuw Decl. Ex. 1, at ¶¶ 1, 3; Lease, attached as Ex. 9 to Decl. of Marc De Leeuw, filed March 14, 2014, at Lease Particulars ¶¶ 1, 3, 6 (ECF No. 43540-9).

6.      The Lease was governed by English law.  *See* De Leeuw Decl. Ex. 1, at ¶ 2; De Leeuw Decl. Ex. 9, at § 8.16.

7.      LBHI signed the Lease as LBL's surety.  *See* De Leeuw Decl. Ex. 9, at Lease Particulars ¶ 3.  LBHI's obligations are contained in Schedule 4 to the Lease (the "Surety Agreement").  *See* Lease Sch. 4 (Ex. 1).[1]

8.      Canary Wharf drafted the Surety Agreement.  *See* Iacobescu Dep. 21:12–22:2, June 18, 2013 (Ex. 45); Bartolotta Dep. 15:9–13, May 7, 2014 (Ex. 44).

9.      Paragraph 1 of the Surety Agreement provides in relevant part:

_____

[1] Unless otherwise specified, references to "Ex. __" are to exhibits attached to the Declaration of Kevin F. Meade, dated May 22, 2014, being filed herewith.

The Surety hereby covenants with the Landlord and as a separate covenant with the Management Company as a primary obligation that the Tenant or the Surety shall at all times until the Tenant shall cease to be bound by the Tenant's covenants in the Lease during the Term duly perform and observe all the covenants on the part of the Tenant contained in this Lease including the payment of the rents hereby reserved and all other sums payable under this Lease in the manner and at the times herein specified and the Surety shall indemnify and keep indemnified the Landlord and the Management Company against all claims demands losses damages liability costs fees and expenses whatsoever sustained by the Landlord or the Management Company by reason of or arising directly or indirectly out of any default by the Tenant in the performance and observance of any of  its obligations or the payment of any rents and other sums[.]

Ex. 1 at ¶ 1.

10.    Paragraph 7 of the Surety Agreement, titled "Disclaimer or forfeiture of Lease,"

provides in relevant part:

(a) The Surety herby further covenants with the Landlord and the Management Company that:- . . .

(ii) if this Lease shall be forfeited . . .

THEN the Surety shall if the Landlord by notice in writing given to the Surety within one hundred and eighty (180) days after such disclaimer or other event so requires accept from and execute and deliver to the Landlord a counterpart of a new lease of [HQ2] . . . for a term commencing on the date of the disclaimer or other event and continuing for the residue then remaining unexpired of the Term such new lease to be at the cost of the Surety and to be at the same rents and subject to the same covenants conditions and provisions as are contained in this Lease[.]

(b) If the Landlord shall not require the Surety to take a new lease the Surety shall nevertheless upon demand pay to the Landlord a sum equal to the Rent and other sums that would have been payable under this Lease but for the disclaimer or other event in respect of the period from and including the date of such disclaimer or other event until the expiration of one hundred and eighty (180) days therefrom or until the Landlord shall have granted a lease of [HQ2] to a third party (whichever shall first occur)[.]

*Id.* at ¶ 7.

11.    Sir George Iacobescu, CEO of Canary Wharf, was not present for any of the negotiations over the Surety Agreement, and does not know what was communicated during those negotiations.  *See* Iacobescu Dep. (Ex. 45) 7:18–8:10; 12:20–13:16.

12.    Frank Bartolotta, a former Lehman employee who provided an affidavit to Canary Wharf, knows only that LBHI, although initially resistant to taking on any suretyship obligations, ultimately agreed to include the Surety Agreement in the Lease.  *See* Aff. of Frank Bartolotta, filed March 28, 2014 (ECF No. 43804-1); Bartolotta Dep. (Ex. 44) 30:7–32:17; 59:14–60:18.

13.    Mr. Bartolotta was not involved in the negotiations of the Surety Agreement; did not have any understanding of the distinction between guarantees and indemnities under English law; and knew only that Canary Wharf would not agree to the Lease unless LBHI accepted the Surety Agreement as ultimately drafted.  *See* Bartolotta Dep. (Ex. 44) 15:5–8; 17:9–18:8; 37:24–38:6; 59:14–60:18.

### III.    LBHI's and LBL's Bankruptcy Filings

14.    On September 15, 2008, LBHI filed for bankruptcy protection in this Court and LBL entered insolvency proceedings in the United Kingdom.  *See* De Leeuw Decl. Ex. 1, at ¶ 4.

15.    On September 17, 2009, the Landlord and the Management Company filed proofs of claim numbers 14826 and 14824 against LBHI in the amounts of $4,280,970,000 and $195,550,000, respectively.  *See* De Leeuw Decl. Ex. 1, at ¶ 5; Proof of Claim Nos. 14826 & 14824, Exs. 11 & 12 to Decl. of Marc De Leeuw, filed March 14, 2014 (ECF Nos. 43540-12–13).

16.    Canary Wharf asserted the claims against LBHI under "Clause 10 of the Lease Agreement pursuant to the terms contained in Schedule 4 of the Lease Agreement (the '*Guarantee*')."  Pursuant to the *Guarantee*, the Debtor, among other things, *guaranteed all of the*

*Tenant's obligations arising under the Lease Agreement.*"  *See* De Leeuw Decl. Ex. 11, at ¶ 1

(emphasis added), De Leeuw Decl. Ex. 12, at ¶ 1 (emphasis added).

17.    LBL initially remained in HQ2, but, in December 2009, informed Canary Wharf

that it would vacate the premises by March 2010 and subsequently did so.  *See* Letter from

Linklaters LLP, dated December 11, 2009, (Ex. 2) at ¶ 7.1; Iacobescu Dep. (Ex. 45) 49:20–50:2,

246:5–12.

18.    Nomura International Plc occupied a portion of HQ2 through September 2010 and

Jones Lang LaSalle and the New York Stock Exchange each occupied a portion of the building

through December 2010.  *See* Decl. of Anthony Jordan, filed October 12, 2012, at ¶ 11 (ECF No.

31344); Canary Wharf's Resp. ¶ 27.

**IV.    Canary Wharf Begins Negotiating with J.P.Morgan About HQ2**

19.    In early 2010, unbeknownst to LBHI, Canary Wharf had begun discussing HQ2

with J.P.Morgan Chase Bank, National Association ("J.P.Morgan").  *See, e.g.*, Letter from G.

Iacobescu, dated January 27, 2010, (Ex. 3) at CW32604; Krasnow Dep. 42:16–43:9, June 25,

2013 (Ex. 49).

20.    On August 13, 2010, Canary Wharf signed a Memorandum of Understanding

with J.P.Morgan (the "MOU"), which provided that Canary Wharf would grant a 999-year lease

of HQ2 to J.P.Morgan in exchange for f███████.  *See* MOU (Ex. 4) at §§ 2.1–2.1.1, 3.1.

21.    Section 4 of the MOU provided that ███████████████████████

████████████████████████████████████████████.  *See id.* at

§ 4.

**V.      Canary Wharf's Negotiations with LBL Concerning a Surrender of the Lease**

22.      As of September 2010, Canary Wharf and LBL were negotiating a consensual surrender of HQ2.  *See* Email exchange between S. Dawson and K. Bradford, dated September 20–23, 2010 (Ex. 5); Email exchange between B. Taylor, T. Briam, S. Dawson and K. Bradford, dated September 24–27, 2010 (Ex. 6).

23.      Canary Wharf insisted that any surrender be structured so as to preserve its claims against LBHI.  *See* Ex. 5 at CW0000482; Email from G. Iacobescu to C. Coombe, dated November 25, 2010, (Ex. 7) at CW0000812.

24.      LBL's counsel, Katie Bradford of Linklaters LLP, explained in an email to Canary Wharf's representatives that "once the lease is ended by surrender, in law[,] claims under the lease in respect of future rent, must end– whether against the principal ( the tenant) or its guarantor.  So, if a surrender is agreed, there is no claim over to be pursued or saved."  *See* Ex. 5 at CW0000482.

25.      On September 30, 2010, Canary Wharf and LBL reached an agreement in principle, under which LBL would surrender the Lease and pay Canary Wharf £1.5 million (approximately $2.4 million), and in return Canary Wharf would release all other claims against LBL.  *See* Email exchange between G. Iacobescu and M. Jervis, dated September 30, 2010, (Ex. 8) at 0000539–40; Iacobescu Dep. (Ex. 45) 112:16–113:23.

26.      Canary Wharf sought to obtain a Court-approved settlement of its claims against LBHI before any actual surrender of the Lease took place because, without it, Canary Wharf was concerned about losing those claims.  *See* Ex. 6 at CW0000588; Briam Dep. 67:8–19; 69:6–19; 75:11–16, June 19, 2013 (Ex. 42).

**VI.    Canary Wharf's Attempt to Negotiate a Settlement of Its Guarantee Claims Against LBHI**

27.    In late October 2010, Canary Wharf and LBHI had reached a tentative agreement on the amount of a settlement, but that was subject to agreement on other essential terms and conditions, which never occurred.  *See* Email exchange between D. Cash and P. Kendall, dated October 26–27, 2010 (Ex. 9); Email from D. Cash to P. Kendall attaching a draft settlement agreement, dated November 2, 2010 (Ex. 10); Ehrmann Dep. 148:5–18, June 27, 2013 (Ex. 43); Iacobescu Dep. (Ex. 45) 173:17–174:5.

28.    Paragraph 2 of the draft settlement agreement required Canary Wharf to

"███████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████.  *See* Ex. 10, at LBHI_CW0005814, ¶ 2; *see* Ehrmann Dep. (Ex. 43) 63:4–64:10.

29.    This requirement, which ███████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████.  *See* Ehrmann Dep. (Ex. 43) 148:19–149:12; *see also id.* at 149:2–3 (███████████████████████████

████████.").

**VII.    Mr. Iacobescu Explains to Canary Wharf's Board that the J.P.Morgan Transaction is of Critical Importance**

30.    On October 28, 2010, Mr. Iacobescu sent a memorandum to Canary Wharf's Board of Directors ███████████████████████████████████.  *See* Email

from G. Iacobescu attaching Memorandum to Canary Wharf's Board of Directors, dated October

28, 2010 (Ex. 11).

31.    J.P.Morgan would 

. *See id.* at CW0019137,

CW0019142; Iacobescu Dep. (Ex. 45) 144:20–146:6.

32.    The deal would also

. *See* Ex. 11 at CW0019137.

33.    At his deposition, Mr. Iacobescu explained that it was "by a miracle in a way

[that] J.P.Morgan" was looking for a building like HQ2, "because there [was] no other tenant."

*See* Iacobescu Dep. (Ex. 45) 126:2–19.

**VIII.    Canary Wharf Tries to Re-Cut Its Surrender Deal with LBL Based on Paragraph 2
of the Draft Settlement Agreement with LBHI**

34.    On November 12, 2010, Canary Wharf sent LBL a revised draft surrender

agreement that provided for an acknowledged claim against LBL in the amount of £262.5

million.  *See* Email from S. Dawson to B. Taylor attaching cover letter and draft surrender

agreement, dated November 12, 2010, (Ex. 12) at CW0000776, CW0000788 § 11.1.2.

35.    The new term providing for an acknowledged claim against LBL was "based on

the stip from LBHI."  Iacobescu Dep. (Ex. 45) 191:4–192:6; *see also* Ex. 12 at CW0000776;

Briam Dep. (Ex. 42) 205:17–206:17; Kendall Dep. 98:6–22, 120:15–25, June 20, 2013 (Ex. 48).

36.    Mr. Iacobescu knew that LBL was "not likely" to accept the new term.  *See*

Iacobescu Dep. (Ex. 45) at 192:17–24.

37.    Pamela Kendall, Canary Wharf's in-house counsel was uncertain whether LBL would accept the new term but did not disclose her uncertainty to LBHI.  *See* Kendall Dep. (Ex. 48) 119:10–20.

38.    Yet, one minute after sending the draft surrender agreement to LBL, Ms. Kendall e-mailed Daniel Ehrmann of LBHI that the draft agreement with LBL "provides for acknowledgement/preservation of our claim in the sum of £262.5m."  *See* Email from P. Kendall to D. Ehrmann and J. DeMarco, dated November 12, 2010 (Ex. 13) at CW0011679–80.

39.    Ms. Kendall repeated that statement to LBHI two weeks later.  *See* Email from P. Kendall to D. Ehrmann and D. Cash, dated November 24, 2010 (Ex. 14) at CW0016742.

## IX.    LBHI Learns about the J.P.Morgan Transaction Through a Press Leak

40.    On November 24, 2010, LBHI learned for the first time through a Financial Times article that Canary Wharf had been negotiating with J.P.Morgan.  *See* Email from R. Krasnow to J. DeMarco, dated November 24, 2010 (Ex. 15); Krasnow Dep. (Ex. 49) 42:16–43:9, 90:11–92:6; Kendall Dep. (Ex. 48) 66:6–67:20 (Canary Wharf did not tell LBHI about the proposed transaction).

41.    LBHI's counsel, Richard Krasnow of Weil, Gotshal & Manges LLP, immediately advised Canary Wharf that LBHI needed to understand the impact of the J.P.Morgan transaction on Canary Wharf's claims against LBHI and requested further information for due diligence purposes.  *See* Ex. 15 at LBHI_CW0006436; Email from R. Krasnow to J. DeMarco, dated November 30, 2010, (Ex. 16) at CW0010419–20; *see also* Email exchange between R. Krasnow and A. Dietderich, dated December 8, 2010, (Ex. 17) at CW0018462; Krasnow Dep. (Ex. 49) 178:20–179:14.

**X.       LBL Rejects Canary Wharf's Attempt to Re-Cut Their Deal**

42.       On November 26, 2010, LBL flatly rejected Canary Wharf's proposal to add the

new term to the settlement agreement preserving Canary Wharf's claims against LBL.  *See*

Email from K. Bradford to T. Briam and S. Dawson, dated November 26, 2010, (Ex. 18) at

CW0018403.

43.       Ms. Bradford, LBL's counsel, wrote in an email to Canary Wharf's

representatives:

> Setting aside the fact that this claim was previously agreed at nil (after extensive
> negotiations) my clients struggle to see how they can acknowledge claims which
> are currently in the region of c.£35 million (representing accrued rent and estate
> charges) at a substantially higher sum.

*See id.*

44.       Ms. Bradford explained that Canary Wharf is "entitled to make formal claims

(when the LBL administration reaches that stage) for the rent accruing quarterly.  It will take

some years before that sum exceeds £200 million." *See id.*

45.       Ms. Bradford further explained:

> Alternatively, your clients can take steps to bring the lease to an end, either
> consensually through a surrender, or through forfeiture.  In either case, a line is
> drawn under the amount of rent accruing.  And in either case, your clients would
> have no damages claim for loss of future rent.

*Id.*

46.       Ms. Bradford suggested that Canary Wharf could (1) forfeit the Lease, (2) serve

LBHI with written notice under Paragraph 7(a) of the Surety Agreement requiring it to take a

replacement lease, and (3) bring a claim against LBHI for breach if it refused to perform.  *See id.*

47.       Canary Wharf never told LBHI that LBL rejected Canary Wharf's new proposed

term.  *See* Ehrmann Dep. (Ex. 43) 146:15–147:21; Kendall Dep. (Ex. 48) 123:8–124:16.

XI.    **Canary Wharf Attempts to Create A Claim Under Paragraph 7(a) for Post-
Forfeiture Rent and Other Amounts**

48.    On November 30, 2010, Canary Wharf refused to agree to paragraph 2 of the draft
settlement agreement with LBHI.  *See* Ex. 16, at CW0010421.  Canary Wharf's counsel wrote
that "[t]he situation might be different if LBHI were willing to step in and assume the lease in
accordance with its terms, but we assume that LBHI has no interest in doing so, and therefore the
client must proceed." *See id.*

49.    On December 1, 2010, Tony Briam of Clifford Chance, Canary Wharf's counsel,
sought confirmation from LBHI's counsel that LBHI had no interest in taking over the existing
Lease or taking on a new Lease.  *See* Email from T. Briam to R. Jones, dated December 1, 2010,
(Ex. 19) at CW0022960.

50.    On December 3, 2010, Mr. Briam again sought confirmation that LBHI had no
intention of taking a lease of HQ2.  *See* Email from T. Briam to R. Krasnow, dated December 3,
2010, (Ex. 20) at CW0010424.

51.    On December 5, 2010, Mr. Briam asked for an update on LBHI's position on
taking a new lease of HQ2.  *See* Email from T. Briam to R. Krasnow, dated December 5, 2010,
(Ex. 21) at CW0010432.

52.    On December 6, 2010, Andrew Dietderich, of Sullivan & Cromwell LLP, Canary
Wharf's counsel, informed LBHI's counsel that Canary Wharf was waiting to provide
information on the J.P.Morgan deal until LBHI confirmed that it was not interested in taking a
lease of HQ2.  *See* Email from A. Dietderich to R. Krasnow and D. Ehrmann, dated December 6,
2010, (Ex. 22) at CW0010436.

53.     On the same day, at an in person meeting, Mr. Dietderich asked LBHI's counsel to confirm that LBHI was not interested in taking a new lease of HQ2.  *See* Krasnow Dep. (Ex. 49) 137:12–140:20; Dietderich Dep. 57:9–16, June 11, 2013 (Ex. 41).

54.     On December 8, 2010, Mr. Dietderich asked LBHI's counsel four separate times to confirm that LBHI did not want a new lease or that LBHI intended to review the J.P.Morgan documents only in order to confirm that it did not want a new lease.  *See* Email from A. Dietderich to R. Krasnow, R. Jones and E. Del Nido, dated December 8, 2010 (Ex. 23); Ex. 17 at CW0018461–63.

55.     Canary Wharf's requests made no sense to LBHI since, under the plain terms of the Surety Agreement, LBHI had no right to demand a lease.  *See* Krasnow Dep. (Ex. 49) 159:11–25; 175:17–177:17; 178:20–180:8.

56.     On December 9, 2010, solely in order to break the logjam so that it could obtain the due diligence information, LBHI's counsel advised Canary Wharf that LBHI "would not elect" to take a lease.  *See* Ex. 17 at CW0018461; Krasnow Dep. (Ex. 49) 182:19–183:2.

## XII.   J.P.Morgan Was Not Seeking Confirmation from LBHI That It Was Not Interested in a New Lease under Paragraph 7(a) of the Surety Agreement.

57.     In his email correspondence with LBHI's counsel, Mr. Dietderich told LBHI's representatives that J.P.Morgan would not permit Canary Wharf to provide any information about the deal unless LBHI first represented that it was not interested in taking a lease of HQ2. *See* Ex. 23; Ex. 17 at CW0018461–63; *see also* Dietderich Dep. (Ex. 41) 60:20–63:14; Kendall Dep. (Ex. 48) 155:20–157:25.

58.     J.P. Morgan's counsel, Jeremy Clay of Mayer Brown, never saw LBHI's December 9 email to Canary Wharf.  *See* Clay Dep. 68:21–69:10, July 9, 2013 (Ex. 46).

59.    J.P.Morgan's only concern was that Canary Wharf not serve a Paragraph 7(a) notice on LBHI at all, so that no issue of whether LBHI's taking a new lease for the premises could arise.  *See id.* at 19:6–22; 70:22–71:18.

60.    On December 3, 2010, Justin Turner of Clifford Chance LLP, Canary Wharf's counsel, informed Mr. Clay, J.P.Morgan's counsel, that Canary Wharf was seeking confirmation from LBHI that it had no interest in taking up a new lease after forfeiture of the Lease.  *See* Email exchange between J. Turner and J. Clay, dated December 3, 2010, (Ex. 9) at CW0029714.

61.    That same day, Mr. Clay, J.P.Morgan's counsel, wrote in response:

> I note CW are still pushing for the confirmation.  As I made clear on the telephone whilst this maybe a step forward this will not be sufficient for JPM to proceed to a simultaneous exchange and completion where notice has been served by CW under the Lehman lease guarantee.

*See id.*

62.    In sending the December 3 email, Mr. Clay was stating J.P.Morgan's previously expressed position that Canary Wharf "must not serve a notice" on LBHI and J.P.Morgan would not "complete,"*i.e.* close, the transaction if a notice was served.  *See* Clay Dep. (Ex. 46) 57:20–58:12; 69:17–70:8.

63.    Mr. Briam, Canary Wharf's counsel, believed that message was clear from Mr. Clay's December 3 email.  *See* Briam Dep. (Ex. 42) 185:21–186:4.

64.    Mr. Iacobescu admitted that he too knew that J.P.Morgan did not want Canary Wharf to serve a Paragraph 7(a) notice on LBHI.  *See* Iacobescu Dep. (Ex. 45) 38:4–10.

65.    Moreover, Canary Wharf would have been "wary" of serving such a notice if it risked not meeting J.P.Morgan's timetable.  *See* Kendall Dep. (Ex. 48) 152:9–19.

16

66.    Canary Wharf knew that J.P.Morgan wanted to complete the deal by year-end of 2010. *See* Ex. 11 at CW0019138; Kendall Dep. (Ex. 48) 72:19–73:2; *see also* Clay Dep. (Ex. 46) 29:4–21; 48:19–49:17.

67.    This prohibition was so important to J.P.Morgan that, as part of the final executed transaction documents, J.P.Morgan formally required Canary Wharf to ███████████

███████████████████████████████████████████.

*See* Clay Dep. (Ex. 46) 60:17–61:6; Agreement Relating to the Grant of a Lease, dated December 20, 2010, (Ex. 25) at §§ 7.16.4, 11.3.2.

68.    Section 7.16.4 of the principal agreement with J.P.Morgan provides:



Ex. 25 at § 7.16.4.

69.    Section 11.3.2 provides:



*Id.* at § 11.3.2.

70.    The parties agreed in principle to these provisions over the phone on Friday, December 10, 2010. *See* Email from J. Clay to T. Briam, dated December 11, 2010, (Ex. 26) at MB0003093; Briam Dep. (Ex. 42) 185:9–20; *see also* Clay Dep. (Ex. 46) 60:13–61:22; Kendall Dep. (Ex. 48) 148:15–149:3.

71.     The language was negotiated over the weekend and agreed upon in almost final form by Monday, December 13, 2010. *See* Email from T. Briam to P. Kendall, dated December 13, 2010, (Ex. 27) at CW0030796.

72.     On December 20, 2010, Canary Wharf and J.P.Morgan closed on their transaction. *See* Ex. 25.

73.     Canary Wharf witnesses confirmed that the warranty in Section 11.3.2 was true when made and continues to remain true. *See* Iacobescu Dep. (Ex. 45) 238:11–23; Kendall Dep. (Ex. 48) 38:22–39:12; 40:22–42:15; Briam Dep. (Ex. 42) 191:4–192:12.

74.     Canary Wharf never prepared either a draft Paragraph 7(a) notice or a substitute lease. *See* Iacobescu Dep. (Ex. 45) 44:21–45:5; Kendall Dep. (Ex. 48) 38:10–16, 42:16–21; Briam Dep. (Ex. 42) 22:6–25.

75.     It also did not prepare any form of request for relief from the automatic stay in order to serve the notice. *See* Iacobescu Dep. (Ex. 45) 46:23–47:4; Kendall Dep. (Ex. 48) 46:23–47:7; Briam Dep. (Ex. 42) 22:6–25.

76.     Throughout 2010, Canary Wharf obtained advice concerning the United States Bankruptcy Code as regards its claims against LBHI from Skadden, Arps, Slate, Meagher & Flom LLP, Clifford Chance LLP, and Sullivan & Cromwell LLP. *See* Kendall Dep. (Ex. 48) 57:8–61:14.

77.     With regard to Canary Wharf's intentions in seeking LBHI's confirmation that it would not want a new lease under Paragraph 7(a) of the Surety Agreement, Ms. Kendall testified:

> Q. Isn't it a fact that you were trying to set up a claim for anticipatory repudiation for an obligation to accept a lease that would have been triggered upon a notice that you had no intention of serving?

A.  Well, the e-mail was certainly with paragraph 4 [should be Paragraph 7(a) of
Schedule 4] in mind, and we believe that we had done sufficient to give us any
additional right that that paragraph afforded us.

Q.  And that was one of your purposes behind sending these e-mails to Mr. Krasnow and
Mr. Rupert Jones at my law firm, correct?

A.  Yes.

Kendall Dep. (Ex. 48) 156:15–157:4.

78.    Canary Wharf also did not ███████████████████████. *See* Email

exchange between T. Briam and J. Clay, dated December 15, 2010, (Ex. 28) at MB0000654.

## XIII.  Canary Wharf Forfeits the Lease

79.    On December 3, 2010, without LBHI's consent, LBL and Canary Wharf signed a

letter agreement under which (1) Canary Wharf agreed to forfeit the lease by 11:59 pm on

December 10, 2010, (2) Canary Wharf would release any administration expense claim for

unpaid amounts up to the date of forfeiture, and (3) LBL would pay Canary Wharf £1.5 million

($2.4 million).  *See* Ex. 16 to Decl. of Marc De Leeuw, filed March 14, 2014, at ¶ ¶ 2; 4(a) & (c);

Iacobescu Dep. (Ex. 45) 90:3–91:5; Email from A. Dietderich to R. Krasnow, R. Jones and E.

Del Nido attaching the forfeiture agreement, dated December 7, 2010, (Ex. 29) at LBHI

_CW0006531–32.

80.    On December 10, 2010, Canary Wharf forfeited the Lease.  *See* Canary Wharf's

Statement of Undisputed Material Facts, filed March 14, 2014, at ¶ 10 (ECF No. 43538-1);

Iacobescu Dep. (Ex. 45) 37:7-11.

## XIV.  Canary Wharf's Negotiations with LBHI Fall Apart

81.    That same day, LBHI signed a confidentiality agreement with Canary Wharf to

gain access to information about the proposed J.P.Morgan transaction.  *See* Ex. 17 at

CW0018457.

19

82.     Canary Wharf sent LBHI a draft of its principal agreement with J.P.Morgan.  *See* Email from A. Dietderich to R. Krasnow, E. Del Nido, D. Cash, R. Jones and D. O'Donnell, dated December 10, 2010, attaching draft agreement (Ex. 30). ████████████████

██████████████████████████████████████████████

███████████████████. *See id.*

83.     On December 22, 2010, LBHI advised Canary Wharf that it could not proceed with a settlement of Canary Wharf's guarantee claims absent, among other things, a review of the final, executed agreement with J.P.Morgan.  *See* Ex. 17 at CW0018456–57.

84.     On January 27, 2011, Canary Wharf responded with documents and a cover letter from Mr. Dietderich informing LBHI that redactions had been made "to prevent disclosure of privileged legal advice in which the parties share a common legal interest."  *See* Letter from A. Dietderich to R. Krasnow, dated January 27, 2011 (Ex. 31).

85.     But in all of the 152 documents to LBHI's counsel, the only redactions were of Sections 7.16 and 11.3.2, ██████████████████████████

████. *See* Redacted Agreement Relating to the Grant of a Lease, dated December 20, 2010, (Ex. 32) at LBHI_CW0013667–70; LBHI_CW0013678–79.

86.     Neither Mr. Dietderich, the author of the cover letter, nor Ms. Kendall, Canary Wharf's in-house counsel, took responsibility for making the redactions or tried to defend them. *See* Dietderich Dep. (Ex. 41) 77:12–80:13; Kendall Dep. (Ex. 48) 163:19–166:5.

87.     Canary Wharf then tried to limit discovery in this action to just (i) emails between Canary Wharf's and LBHI's counsel, which LBHI already had in its possession, (ii) deposition testimony from Mr. Dietderich, who was not involved in and had no knowledge of the J.P.Morgan transaction, and (iii) documents showing the uncontested fact that LBL stopped

paying rent during 2010. *See* Canary Wharf's Submission in Advance of the February 13, Status

Conference (Proofs of Claim Numbers 14824 and 14826), filed February 11, 2013 (ECF No.

34533) ¶¶ 14–21; Letter from Canary Wharf, filed February 11, 2013 (ECF No. 34533-3); Hr'g

Tr. 27:13–28:14, February 13, 2013 (Ex. 33).

88.    Canary Wharf produced an unredacted copy of the Lease only after the Court

overruled its objections to discovery. *See* Ex. 25; Hr'g Tr. (Ex. 33) at 29:14–30:4.

89.    It was the first time that LBHI saw the provisions prohibiting Canary Wharf from

serving a notice on LBHI under Paragraph 7(a) of the Surety Agreement and warranting that

Canary Wharf had not done so. *See* Krasnow Dep. (Ex. 49) 185:10–186:7.

Dated: May 22, 2014

Respectfully submitted,

_____/s/ David J. Lender_____
David J. Lender
Peter D. Isakoff
Kevin F. Meade
Arielle Gordon
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*