**EXHIBIT   12**

*SURRENDER.*

**Mandy Reeves**

| | |
|---|---|
| **From:** | Pamela Kendall |
| **Sent:** | 12 November 2010 19:24 |
| **To:** | Mandy Reeves |
| **Subject:** | FW: 25 Bank Street |

  

UK-2599367-v2-LetUK-2588649-v7-Dra
ter to Beatri...    ft Deed for t...      Please print

-----Original Message-----
From: Sarah.Dawson@CliffordChance.com [mailto:Sarah.Dawson@CliffordChance.com]
Sent: 12 November 2010 19:22
To: Pamela Kendall
Cc: Wendy.Miller@blplaw.com; Tony.Briam@CliffordChance.com;
Benjamin.Hatton@CliffordChance.com
Subject: FW: 25 Bank Street


Pamela
Please see below as requested.
Kind regards
Sarah

From: Dawson, Sarah (Real Estate-LON)
Sent: 12 November 2010 19:16
To: 'Taylor, Beatrice'
Cc: Briam, Tony (Real Estate-LON)
Subject: 25 Bank Street
Béatrice
Please see attached.
Kind regards
Sarah
Sarah Dawson
Clifford Chance LLP
10 Upper Bank Street, London, E14 5JJ
Direct Dial: +44 (0)20 7006 4322
Mobile: +44 (0)7919 227286
sarah.dawson@cliffordchance.com
<<UK-2599367-v2-Letter to Beatrice Taylor.DOC>> <<UK-2588649-v7-Draft Deed for the
Surrender of a Lease.DOC>>
[CC]70-40394288[/CC]
This message and any attachment are confidential and may be privileged or otherwise
protected from disclosure.
If you are not the intended recipient, please telephone or email the sender and delete this
message and any
attachment from your system. If you are not the intended recipient you must not copy this
message or attachment
or disclose the contents to any other person.

Clifford Chance LLP is a limited liability partnership registered in England & Wales under



**EXHIBIT**

34

18 June 2013

CONFIDENTIAL

CW0000775

**CLIFFORD CHANCE LLP**

10 UPPER BANK STREET
LONDON
E14 5JJ

TEL +44 20 7006 1000
FAX +44 20 7006 5555
DX 149120 CANARY WHARF 3

www.cliffordchance.com

**By E-mail**

Beatrice Taylor
Linklaters
One Silk Street
London EC2Y 8HQ

Your ref:
Our ref: 70-403394288
Direct Dial: +44 207006 4322
E-mail: sarah.dawson@cliffordchance.com

12 November 2010

Dear Beatrice

**25 Bank Street**

I return the draft deed for the surrender of the lease, duly amended.

You will see that the deed provides for an acknowledgement of the UK claim in a sum of
£262.5 million and for that claim to be "preserved" post the date of surrender. This is equal to
the maximum settlement that your client has agreed Canary Wharf may make with Lehman
Brothers Holdings Inc (as Guarantor).

The reduction of Canary Wharf's claim to £262.5 million represents a reduction of
approximately 90% of the original claim filed. However, as was made clear in a meeting
earlier this week between my client and PWC, to agree that Canary Wharf's claim is zero in
the UK proceedings jeopardises the agreement reached with LBHI and is therefore
unacceptable.

I look forward to hearing from you.

Yours sincerely

Sarah Dawson

Enclosure

UK-2599367-v2

70-40394288

CLIFFORD CHANCE LLP IS A LIMITED LIABILITY PARTNERSHIP REGISTERED IN ENGLAND AND WALES UNDER NUMBER
OC323571. THE FIRM'S REGISTERED OFFICE AND PRINCIPAL PLACE OF BUSINESS IS AT 10 UPPER BANK STREET,
LONDON, E14 5JJ. A LIST OF THE MEMBERS AND THEIR PROFESSIONAL QUALIFICATIONS IS OPEN TO
INSPECTION AT THIS OFFICE. THE FIRM USES THE WORD 'PARTNER' TO REFER TO A MEMBER OF CLIFFORD CHANCE
LLP OR AN EMPLOYEE OR CONSULTANT WITH EQUIVALENT STANDING AND QUALIFICATIONS. THE FIRM IS REGULATED
BY THE SOLICITORS REGULATION AUTHORITY.

CONFIDENTIAL

CW0000776

Contract treated as
exchanged at [          ] am/pm
on [          ] [date]
using Law Society Formula
..................
Ref......................... on
behalf of the Landlord/Tenant

Dated                    2010

### LEHMAN BROTHERS LIMITED
(in administration)

and

**ANTHONY VICTOR LOMAS, STEVEN ANTHONY PEARSON, DAN YORAM
SCHWARZMANN, MICHAEL JOHN ANDREW JERVIS AND DEREK ANTHONY
HOWELL (AS JOINT ADMINISTRATORS OF LEHMAN BROTHERS LIMITED)**

and

**HERON QUAYS (HQ2) T1 LIMITED
HERON QUAYS (HQ2) T2 LIMITED**

and

**CANARY WHARF MANAGEMENT LIMITED**

and

**CANARY WHARF HOLDINGS LIMITED**

and

**CANARY WHARF (CAR PARKS) LIMITED
HERON QUAYS (RT3) T1 LIMITED
HERON QUAYS (RT3) T2 LIMITED**

and

**CANARY WHARF CONTRACTORS LIMITED**

[and

**LEHMAN BROTHERS LEASE FINANCE (1) LIMITED[1]**

**and**

~~and Broadgate Payments Agreement counterparties~~

HERON QUAYS PROPERTIES LIMITED and CANARY WHARF
GROUP PLC[2]

## DEED

for the surrender of
25 Bank Street, Canary Wharf, London E14 5LE

Linklaters

---

[1] This is a party to the Fit Out Contract.

[2] These are parties to the Broadgate Payments Agreement

Linklaters LLP
One Silk Street
London EC2Y 8HQ
Telephone (44-20) 7456 2000
Facsimile (44-20) 7456 2222
Ref  B Taylor

## PARTICULARS

| Date | : | 2010 |
|------|---|------|
| **The Tenant** | : | LEHMAN BROTHERS LIMITED (in administration) of Level 23, 25 Canada Square, Canary Wharf, London E14 5LQ (Company No. 00846922) acting by the Administrators |
| **The Administrators** | : | ANTHONY VICTOR LOMAS, STEVEN ANTHONY PEARSON, DAN YORAM SCHWARZMANN, MICHAEL JOHN ANDREW JERVIS and DEREK ANTHONY HOWELL (AS JOINT ADMINISTRATORS OF LEHMAN BROTHERS LIMITED) each a partner of PricewaterhouseCoopers LLP of Plumtree Court, London EC4A 4HT acting as agents of the Tenant and without personal liability |
| **The First Landlord** | : | HERON QUAYS (HQ2) T1 LIMITED and HERON QUAYS (HQ2) T2 LIMITED both of One Canada Square, Canary Wharf, London E14 (Company Nos. 4290562 and 4290529 respectively) |
| **The Second Landlord** | : | CANARY WHARF (CAR PARKS) LIMITED, HERON QUAYS (RT3) T1 LIMITED and HERON QUAYS (RT3) T2 LIMITED all of One Canada Square, Canary Wharf, London E14 (Company No.s 3682170, 425109 and 452130 respectively) |
| **The Management Company** | : | CANARY WHARF MANAGEMENT LIMITED of One Canada Square, London E14 (Company No. 2067510) |
| **The Landlord's Guarantor** | : | Canary Wharf Holdings Limited of One Canada Square, London E14 (Company No. 2798284) |
| **CWCL** | : | CANARY WHARF CONTRACTORS LIMITED of One Canada Square, Canary Wharf, London E14 (Company No. 02352250) |
| **LBLF** | : | LEHMAN BROTHERS LEASE & FINANCE (No.1) LIMITED (in administration) of [         ] (Company No. 04387086) |
| **HQPL** | : | **HERON QUAYS PROPERTIES LIMITED** of One Canada Square, Canary Wharf, London E14 (Company No. 2276627) |
| **CWG** | | CANARY WHAR GROUP PLC of One Canada Square, Canary Wharf, London E14 (Company No. 3114622) |
| **Property** | : | 25 Bank Street, Canary Wharf, London E14 5LE  as more fully described in Schedule 1 |
| **Completion Date** | : | [                    ] |
| **Completion Time** | : | 1pm |

A12462506/0.8/29 Sep 2010

- 1 -

CW0000779

| | | |
|---|---|---|
| **Registered Title/Root of Title** | : | EGL492964 and the Car Parking Agreement dated 16 March 2005 |
| **Title Guarantee** | : | No title guarantee |
| **Tenant's Solicitor** | : | Linklaters LLP, One Silk Street, London EC2Y 8HQ (Ref: B Taylor) |
| **Landlord's Solicitor** | : | Clifford Chance LLP, 10 Upper Bank Street, London E14 5JJ (Ref: 70-40394288/AMB) |

CONFIDENTIAL

CW0000780

**WHEREAS:**

(A)     The Administrators were appointed to act as joint administrators of the Tenant pursuant to an Order of the High Court of Justice, Chancery Division on 15 September 2008 and on 30 November 2009 (in the case of the appointment of Derek Anthony Howell).

(B)     The Tenant has agreed to surrender its interest in the Property and the Landlord has agreed to accept a surrender of the Property and the Car Park on the terms and conditions set out in this Deed.

**THIS DEED** is made on the date and between the parties specified in the Particulars, who agree as follows:

**1     Interpretation**

**1.1**     This Deed incorporates the Standard Commercial Property Conditions (Second Edition) ("the Conditions"). In case of conflict between this Deed and the Conditions, this Deed prevails. Terms used or defined in the Conditions have the same meanings when used in this Deed, and vice versa and in each case notwithstanding the fact (if the case) that in one the term bears an initial capital letter but not in the other.

**1.2**     Any references in the Conditions to:

**1.2.1**     "**the Seller**" or "**the Buyer**" shall be construed as references to **the Tenant** and **the Landlord** respectively;

**1.2.2**     "**sale**" or "**assignment**" shall be construed as references to "**surrender**"; and

**1.2.3**     "**transfer**" shall be construed as references to "**surrender**".

**1.3**     The Particulars on page 1 form part of this Deed, and terms specified in them bear the same meanings when used elsewhere in this Deed.

**1.4**     Unless otherwise indicated, references to Clauses or Schedules are to Clauses and Schedules of this Deed.

**1.5**     Clause headings in this Deed are for ease of reference only.

**1.6**     The following further definitions apply in this Deed:

**Access Letter: the letter dated 30 September 2010 from the Management Company to the Tenant and the Administrators;**

**Actual Completion**: completion of the surrender of the Property pursuant to this Deed;

**Affiliate**: in the case of the Tenant, any entity in administration or liquidation or subject to a company voluntary arrangement or in respect of which a scheme of arrangement has been approved, which (a) the Tenant own, which owns the Tenant or which was under common ownership with Tenant on 15 September 2008; and (b) all or a majority of whose administrators or liquidators or the supervisors in respect of a company voluntary arrangement or scheme of arrangement are partners in the same partnership as all or the majority of administrators or liquidators of the Tenant.

A12462506/0.8/29 Sep 2010

CONFIDENTIAL

CW0000781

[**Broadgate Payments Agreement**: the agreement dated 30 March 2001 between HQPL, CWG and the Tenant relating to numbers 1 and 2 Broadgate and various other premises on the Broadgate Estate London EC2 and any documents supplemental to it.    ]

**Car Park**: means the car parking spaces referred to in the Car Parking Documents;

**Car Parking Documents**: the Car Parking Agreement and other documents listed in Part B of Schedule 3 and any documents supplemental to them;

**Deed of Surrender**: in relation to the Property, the Form TR1 (relating to the Lease Documents) and, in relation to the Car Park, the Deed of Surrender (relating to the Car Parking Documents) which are to be executed pursuant to this Deed in the form annexed to Schedule 2;

**Fit Out Contract**: the agreement dated 30 March 2001 between the Tenant, CWCL and LBHI as novated to LBLF by an agreement dated 29 November 2002 and any document supplemental to them;

[**Guarantees**: the guarantees and warranties listed in Schedule 6;]

[**Guarantee Assignment**: the assignment of the Guarantees in the form annexed to Schedule 7;]

**Items**: the tenant fixtures, fittings, chattels and other items listed in the inventory at Schedule 5 and the furniture (other than that which is the property of the tenants of the Letting Documents) in the Property at 30 September 2010.

**Landlord**: the First Landlord and the Second Landlord;

**LBHI**: Lehman Brothers Holdings Inc [—];

**Landlord's Solicitors' Bank Account**: the following account: Clifford Chance Client A/C at HSBC Bank plc, 60 Queen Victoria Street, London EC4N 4TR, sort code 40-05-30, account number 23181499 or such other client account details of which are notified to the Tenant at least two working days prior to the Completion Date.

**Lease Documents**: the Lease and other documents listed in Part A Schedule 3 and any documents supplemental to them;

**Letting Documents**: all leases, licences and rights of occupation affecting the Property brief particulars of which are set out in Schedule 4 including any document which is supplemental to them;

**Tenant's Solicitors Bank Account**: the following account: [    ] or such other client account details of which are notified to the Landlord at least two working days prior to the Completion Date."**VAT**" means value added tax imposed by VATA and legislation and regulations supplemental thereto and includes any other tax of a similar fiscal nature whether imposed in the United Kingdom (instead of or in addition to value added tax) or elsewhere from time to time;

"**VAT Group**" means a group for the purposes of the VAT Grouping Legislation;

"**VAT Grouping Legislation**" means (a) sections 43 to 43D (inclusive) of VATA and (b) the Value Added Tax (Groups: eligibility) Order 2004;

"**VATA**" means the Value Added Tax Act 1994;

**2002 Act**: the Land Registration Act 2002.

CONFIDENTIAL

1.7     A reference to the Administrators shall be construed as being to the Administrators both jointly and severally and to any other person who is appointed as an administrator in substitution for any administrator or as an additional administrator in conjunction with the Administrators.

1.8     Any reference to any person, when construing any provision in relation to VAT, shall (where appropriate and unless the context otherwise requires) be construed, at any time when such person is treated as a member of a VAT Group, to include a reference to the representative member of such group at such time (so that a reference to x, for example, would read "x or the relevant representative member of the VAT Group of which x is a member (as the case may be)") (the term "representative member" to have the same meaning as for the purposes of the VAT Grouping Legislation).

1.9     Any reference to any person, at any time when the grant of an interest in, right over or licence to occupy the Property would, if made by that person, be treated pursuant to paragraph 40 of Schedule 10 to VATA as having been made by any other person, includes (where appropriate and unless the context otherwise requires) a reference to such other person, and "the grant of an interest in right over or licence to occupy" is to be construed in accordance with paragraph 40 of the said Schedule 10

## 2    Agreement for Surrender in respect of the Property

2.1     The Tenant acting by the Administrators shall surrender and the Landlord shall accept a surrender of such estate, right, title and interest as the Tenant may have in the Property so that upon completion the unexpired residue of the term created by the Lease Documents will merge and be extinguished in the Landlord's reversion.

2.2     [The Landlord and the Tenant agree that the surrender of such estate, right, title and interest as the Tenant may have in the Property pursuant to this Deed shall not be for money or anything that has a monetary value. To be discussed].

## 3    Agreement for Surrender in respect of the Car Park

3.1     The Tenant acting by the Administrators shall surrender and the Second Landlord shall accept a surrender of such estate, right, title and interest as the Tenant may have in the Car Park so that upon completion the Car Parking Documents will be extinguished and have no further effect.

3.2     [The Second Landlord and the Tenant agree that the surrender of such estate, right, title and interest as the Tenant may have in the Car Park pursuant to this Deed shall not be for money or anything that has a monetary value. To be discussed].

## 4    Transfer of Items

4.1     The Tenant and the First Landlord acknowledge that the Items have been left on the Property and the Tenant agrees that it shall transfer to the First Landlord such estate, right, title and interest as it may have in the Items on the completion of the surrender of the Property in consideration of the payment of £1 by the First Landlord to the Tenant.

CONFIDENTIAL

CW0000783

**5    Title Guarantee**

No covenant for title shall be implied or guaranteed either in this Deed or in any transfer or assignment of the Property and Condition 6.6 shall not apply.

**6    No Deposit**

No deposit shall be paid on the date of this Deed and Conditions 2.2 and 2.3 shall not apply.

**7    Completion**

7.1    Completion shall take place on the Completion Date and before the Completion Time.

7.2    The surrender shall be effected by the Tenant delivering to the Landlord (subject as provided in clause 9.4) to the extent only they are in the Tenant's possession:

    7.2.1    the Lease Documents and the Car Parking Documents;

    7.2.2    the counterparts of the Letting Documents;

    7.2.3    any operating manuals relating to the plant and machinery at the Property together with any test certificates for the electrical and mechanical service installations and the CDM Health and Safety File;

    7.2.4    an application to the Land Registry on the appropriate form duly completed by the Tenant's Solicitor requesting the removal of any entry on the First Landlord's registered title protecting the Lease Documents;

    7.2.5    the Deed of Surrender duly executed by the Tenant [NB Administrators not party to TR1 or Car Park surrender]; and

    7.2.6    [the Guarantee Assignment duly executed by the Tenant together with the Guarantees provided always that this shall only apply where the Guarantees are capable of assignment]; and

    7.2.7    An official, sealed or certified copy of the court orders appointing the Administrators to act as joint administrators of the Tenant and of the court order (dated less than one year prior to the date of Actual Completion) extending such appointment to the Administrators.

7.3    Conditions 8.3, 8.4 and 8.5 shall not apply.

7.4    Condition 8.1.1 shall be amended such that the initial words "Completion date is twenty working days after the date of the contract" are replaced by the following:

"The completion date is the date defined in the contract"

The remainder of Condition 8.1.1 shall remain unchanged.

7.5    Any completion by post or through a document exchange shall be at the Landlord's expense and risk and neither the Tenant nor the Tenant's Solicitor shall be liable for the loss of any documents so sent so long as they were properly addressed.

7.6    Title to the Items shall pass to the First Landlord by delivery on Actual Completion.

CONFIDENTIAL                                                                 CW0000784

**8    Title**

8.1    The Landlord acknowledges that the Tenant has deduced good title to the Property prior to the date of this Deed and shall not raise any enquiry, objection or requisition in respect of the Tenant's title to the Property or any matter arising out of them and shall be deemed to have accepted the same by entering into this Deed.

8.2    Conditions 6.1 and 6.2.2 shall not apply.

8.3    Condition 6.2.1(a) shall be amended by omission of the words "taking the steps described in Condition 6.1.1".

8.4    Condition 6.2.3 shall not apply.

8.5    The Tenant and the Administrators[3] each confirms to the First Landlord that as at the date of this Deed and so far as it is aware it has not received notice (written or otherwise) of any claim or proposed claim to any estate, right, title or interest in the Items by any party.

**9    Incumbrances Affecting the Property**

9.1    The Property is surrendered subject to and where applicable with the benefit of:

   9.1.1

(i)    any unregistered interests which override first registration under Schedule 1 of the 2002 Act and any interests which fall within Section 11(4)(c) of the 2002 Act and any unregistered interests which override registered dispositions under Schedule 3 of the 2002 Act;

(ii)    such unregistered interests as may affect the Property to the extent and for so long as they are preserved by the transitional provisions of Schedule 12 of the 2002 Act.

   9.1.2    all matters contained or referred to in the Property Proprietorship and Charges registers of the Registered Title (except fixed and floating charges securing money or liabilities);

   9.1.3    the rents, obligations and other provisions contained or referred to in the Lease Documents and the Car Parking Documents;

   9.1.4    the Letting Documents;

   9.1.5    all rights of way, light, support, water and drainage; all other rights, easements, profits, quasi-easements, liabilities, wayleaves, charges and public or private rights whatever; any liability to repair or to contribute to the repair of roads, driveways, passageway servers, drains, fences and other like matters; and all encumbrances of whatever nature, in each case affecting the Property;

   9.1.6    any covenants, conditions, restrictions, exceptions, reservations, agreements declarations, overriding interests and other matters affecting the Property;

---

[3] We understand that the inclusion of the reference to the Administrators here and in clause 9.1 has been agreed in discussions between Canary Wharf and PWC.

A12462506/0.8/29 Sep 2010

- 7 -

CONFIDENTIAL

CW0000785

9.1.7   any matters discoverable by inspection of the Property before the date of this Deed;

9.1.8   any matters (other than monetary charges) disclosed or which would have been disclosed by the searches and enquiries which a prudent buyer would have made before entering into this Deed;

9.1.9   all local Land Charges;

9.1.10  all notices, served at or in respect of the Property by or on behalf of any person, and

9.1.11  the incumbrances mentioned in Condition 3.1.2.

and the Tenant and the Administrators each confirm-s to the Landlord that as far as it is aware and since 15 September 2008 it has not been a party to the creation of any interest in the Property save as referred to in Schedule 4.

9.2   The Landlord is deemed to purchase with full knowledge of the matters referred to in Clause 9.1.

9.3   Neither the Tenant nor the Administrators give any condition warranty or representation whether express or implied, statutory or customary, as to the use, area, description or identity of the Property and shall not be required to define the exact boundaries of the Property and any such condition, warranty or representation is hereby excluded. The surrender provided for in this Deed shall not be annulled nor shall any compensation be allowed or payable in respect of any error, misstatement or omission in respect of any such matters.

9.3.1   The Landlord acknowledges that the Tenant and the Administrators may not have all of the title deeds in respect of the Property. The Landlord shall not be entitled to raise any enquiry, objection or requisition about any title document which the Tenant's Solicitor is unable to provide the Landlord (whether before or on Actual Completion).

9.3.2   To the extent the Tenant or the Administrators receives any of the original title deeds and documents after Actual Completion the Tenant or the Administrators, as the case may be, shall forward the originals to the Landlord as soon as practicable following receipt of the same.

9.4   The Property is to be surrendered with vacant possession on Actual Completion (subject to the Items) but the obligation of the Tenant to give vacant possession shall not oblige it to give vacant possession of any part of it in occupation or possession of any person pursuant to the Letting Documents. The Landlord shall not be entitled to raise any requisition or objection if any third party (save for any third party that is not in occupation pursuant to a Letting Document) has or claims to have a right to occupy, use or possess the whole or any part of the Property.

9.5   Replies to enquiries:

9.5.1   The Landlord acknowledges that no person acting for the Tenant or the Administrators has at any time had the authority of the Tenant and/or the Administrators to make any statement or representation in relation to the Property.

CONFIDENTIAL                                          CW0000786

9.5.2   The Landlord acknowledges that no statement or representation has been made to the Landlord before this Deed which has influenced or induced it to enter into this Deed or which forms part of this Deed or any agreement collateral to this Deed.

9.5.3   The Landlord acknowledges that the Administrators have specifically told the Landlord that the Landlord must rely absolutely on the Landlord's own opinion and/or professional advice concerning the Property, its state and condition, fitness and/or suitability for any purpose and the possibility that the Property may have defects not apparent on inspection and examination.

9.6   Conditions 3.1.1 and 3.1.3 shall not apply.

## 10   Surrender and Release

10.1   The surrender of each of the Property and the Car Park shall be in the form of the relevant Deed of Surrender, containing provisions for release in the form of the attached draft.

10.2   Subject as provided in clause 11.1, Tthe First Landlord and the Management Company shall on Actual cCompletion release the Tenant from all obligations contained in, and all claims, demands, expenses and liabilities under the Lease Documents and the Tenant shall on Actual cCompletion release the First Landlord and the Management Company from all obligations contained in, and all claims, demands, expenses and liabilities under the Lease Documents.

10.3   The Second Landlord shall on completion release the Tenant from all obligations contained in, and all claims, demands, expenses and liabilities under the Car Parking Documents and the Tenant shall on completion release the Second Landlord from all obligations contained in, and all claims, demands, expenses and liabilities under the Car Parking Documents.

10.4   The engrossment Deed of Surrender and duplicate thereof (both duly executed by the Tenant, the Administrators) shall be delivered to the Landlord's Solicitor (or by prior agreement, direct to the Landlord) no later than five working days before the Completion Date.

10.5   The duplicate transfer shall (if not already held by the Tenant's Solicitor or the Tenant) be delivered within twenty-one days of completion to the Tenant's Solicitor (for retention by the Tenant).

10.6   Conditions 6.3 and 6.4 shall not apply.

10.7   Condition 3.3 shall not apply.

10.8   Conditions 9.1, 9.2, 10.2 and 10.3 shall not apply.

10.9   The Tenant shall provide and shall procure that the Tenant's Solicitor shall provide all assistance reasonably required by the Landlord to deal to the satisfaction of the Land Registry with any requisitions which may be raised in connection with the Tenant's title to surrender the Property or any application made by the Landlord or the Tenant in connection with the registration of the surrender.

CONFIDENTIAL

CW0000787

11    **Existing Claims [LL to comment once Nomura position clarified]**

11.1    The First Landlord has filed claims of £2,540,400,000 in respect of the Lease Documents ~~parties acknowledge that the First Landlord has claims~~ against the Tenant (the "Claim") and in respect of the Claim it is agreed that the following provisions shall apply:

11.1.1    the Claim is ~~Tenant~~ in respect of, among other things, unpaid rent and service charge that fell due and were payable under the Lease Documents prior to the Completion Date. ~~(the "Claims")~~ ~~and~~ and that the ~~parties have agreed that the~~ Tenant shall pay to the First Landlord on or before Actual Completion the sum of one million five hundred thousand pounds (£1,500,000) in respect of such unpaid rent in full and final settlement of any claim the First Landlord may have against the Administrators that any unpaid rent that fell due and was payable under the Lease Documents prior to the Completion Date should have been paid by the Administrators as an expense properly incurred by the Administrators in performing their functions in the administration of the Tenant within the meaning of Rule 2.67(1) of the Insolvency Rules 1986 ~~the Claims~~ (such payment being made by way of a direct transfer from the Tenant's Solicitors' Bank Account to the Landlord's Solicitors' Bank Account and being treated as having been made at the time at which it is credited to the Landlord's Solicitors' Bank Account)~~.~~;

11.1.2    the Tenant and the Administrators acknowledge that the Claim is valid to the extent of £262,500,000 (the "Agreed Claim") and the Agreed Claim is expressly preserved by agreement between the parties such that the surrender of the Property by the Tenant pursuant to this Deed shall not operate to terminate the Agreed Claim;

11.1.3    neither the Tenant nor the Administrators shall make any objections to the Agreed Claim; and

~~11.1~~ 11.1.4    the First Landlord acknowledges with effect from Actual Completion that it has irrevocably given up all of its rights in respect of any breaches of the Lease Documents and to receive any distributions in the insolvency process of the Tenant in either case in respect of the Claim in excess of the Agreed Claim.

11.2    The Tenant and the Administrators acknowledge that the First Landlord and the Management Company have asserted claims against LBHI as guarantor under the Lease Documents in the amount of [$4,280,970,000]. The Tenant and the Administrators acknowledge that the First Landlord and the Management Company have entered into a settlement of such guarantee claims and have no objection to any such settlement provided that the guarantee claims do not exceed [$427,875,000 (amounting to **£262,500,000 based on an exchange rate of 1.63**)].

CONFIDENTIAL

**11.3**    In the event that the assets and liabilities of the Tenant are substantively consolidated into LBHI, the settlement referred to in clause 11.2 shall continue in full force and effect and the First Landlord and the Management Company shall have valid claims in an amount of [$427,875,000] against the consolidated estate.

**11.4**    For the avoidance of doubt, nothing in this ~~Agreement~~ Deed shall release, waive or otherwise discharge the liabilities, obligations and agreements of the Management Company, the Tenant and/or the Administrators under the Access Letter.

~~11.3~~    *11.5 With effect from Actual Completion, CWCL unconditionally and irrevocably releases and discharges and LBLF ~~(and shall procure that their affiliates and any third parties which have rights under the Lease Documents, the Car Parking Documents, the Broadgate Payments Agreement and~~ **[doc between LBLF and CWCL]** unconditionally and irrevocably releases and discharges) the Tenant, its Affiliates and any predecessors and successors in title CWCL, from any claims and counterclaims between the parties in relation to the **Fit Out Contract**~~Lease Documents, the Car~~ Parking Documents, the Broadgate Payments Agreement and **[doc between LBLF and CWCL]; and each of CWCL and LBLF**

covenant and undertake in favour of the other that it ~~Tenant and its Affiliates that the First Landlord, Second Landlord, the Management Company, the Landlord's Guarantor [and the Broadgate Agreement counterparties and CWCL]~~ **will not make** or cause to be made or maintained ~~(and it will~~ **procure that the First Landlord's, Second Landlord's, the Management Company's, the Landlord's Guarantor's [and the Broadgate Agreement counterparties' and CWCL's] affiliates and any third parties which have rights under the Lease Documents, the Car Parking Documents, the Broadgate Payments Agreement and [doc between LBLF and CWCL] will not make or cause to be made or maintained) any claims and or counterclaims ~~between the parties~~ in relation to the Fit Out Contract ~~Lease Documents, the Car Parking Documents, the Broadgate Payments Agreement and [doc between LBLF and CWCL]~~ against the Tenant, its Affiliates and predecessors and successors in title; and

11.6 With effect from **Actual Completion, HQPL** and CWG each unconditionally and irrevocably release and discharge the Tenant and the Tenant unconditionally and irrevocably releases and discharges each of HQPL and CWG, from any claims and counterclaims **between the parties in relation to the Broadgate** Payments **Agreement and each of HQPL, CWG** and the **Tenant covenant and undertake in favour of each other** that it will not make or cause to be made or maintained any claims or counterclaims un relation to the Broadgate Payments Agreement.

11.7 ~~s~~Subject to clauses 11.1 and **11.2**4 ~~above,~~ **the parties accept** and agree with effect from **Actual Completion** that this Deed, including the surrenders provided for herein, is in full and final settlement of all claims and counterclaims (other than, for the avoidance of any doubt, the Agreed Claim) between the parties in relation to the Lease Documents, the Car Parking Documents, the Broadgate Payments Agreement and the Fit Out Contract. ~~and [doc between LBLF and CWCL].~~

~~[LBHI]~~

---

* References to the Lease Documents and Car Parking Documents have been deleted as appropriate releases are contained in the TR1 and Deed of Surrender. The release of the Tenant in the TR1 will need to be qualified in view of clause 11.1 .

A12462506/0.8/29 Sep 2010

CONFIDENTIAL

CW0000789

## 12 Management of Property Pending Completion

12.1 Except pursuant to any statutory duty or contractual obligation, the Tenant shall not do any of the following in relation to the Property:

12.1.1 grant any lease;

12.1.2 terminate or accept a surrender of any lease;

12.1.3 vary the terms of, or grant any consent pursuant to, the Letting Documents;

12.2 The Tenant shall as soon as reasonably practicable notify the Landlord in writing of any notice, demand, application, registration or other communication which the Tenant or the Administrators may give to or receive from, or have with any tenant under a Letting Document.

12.3 Condition 4.2.5 shall not apply.

## 13 Insurance

13.1 As between the Tenant and the Landlord, the Property shall be at the risk of the Landlord from the date of this Deed.

13.2 Conditions 7.1.1 to 7.1.4 (inclusive) shall not apply.

## 14 Notices

14.1 Conditions 1.3.3,1.3.5(c) and 1.3.7(d) and (e) shall not apply.

14.2 Condition 1.3.5(a) shall not apply.

## 15 Exclusions

15.1 Save for the matters referred to in clauses 8.5 and 9.1, all representations, warranties, conditions, guarantees and stipulations, express or implied, statutory, customary or otherwise in respect of the Lease Documents or the Property or any of the rights, title and interests surrendered or transferred or agreed to be transferred or transferred pursuant to this Deed made by the Tenant or the Administrators are expressly excluded (including without limitation warranties and conditions as to title, quiet possession, merchantable quality, fitness for purpose and description).

15.2 The Property is surrendered and transferred in its condition and location at the Completion Date. Unless otherwise required by law (and then only to that extent) the Tenant and the Administrators and each of them shall not be liable for any loss or damage of any kind whatever, consequential or otherwise, arising out of, or due to, or caused by any defect or deficiencies in the Property.

15.3 The Landlord agrees that the terms and conditions of this Deed and the exclusions and limitations contained in it are fair and reasonable having regard to the following:

(a) that this is a surrender by an insolvent company in circumstances where it is usual that no representations and warranties can be given by or on behalf of the Tenant or the Administrators save as expressly set out in this Deed;

A12462506/0.8/29 Sep 2010

- 12 -

CONFIDENTIAL

CW0000790

(b) that the Landlord has relied solely upon the opinions of itself and its professional advisers concerning the Lease Documents and the Property, their quality, condition, description, fitness and/or suitability for any purpose, the possibility that the Property may have defects not apparent on inspection and examination, and the use it intends or proposes to put them to;

(c) that the Landlord has agreed to the surrender of the Property "as seen" in its present state and condition for a consideration which takes into account the risk to the Landlord represented by the parties' belief that the said exclusions and limitations are or would be recognised by the courts; and

(d) that the Landlord, its representatives and advisers have been given every opportunity it or they may wish to have to examine and inspect the Property.

**15.4** The Landlord acknowledges that if the Tenant does not have title or unencumbered title to any or all of the Lease Documents or the Property, or if the Landlord cannot exercise any right conferred or purported to be conferred on it by this Deed, this shall not be a ground or grounds for rescinding, avoiding or varying any or all of the provisions of this Deed.

## 16  Administrators' Liability

**16.1** Notwithstanding anything to the contrary contained herein, the Administrators have entered into and signed this Deed as agents for and on behalf of the Tenant and neither they, their firm, partners, employees, agents, advisers or representatives shall incur any personal liability whatever in respect of any of the obligations undertaken by the Tenant; or in respect of any failure on the part of the Tenant to observe, perform or comply with any such obligations; or under or in relation to any associated arrangements or negotiations; or under any document or assurance made pursuant to this Deed. The exclusion of liability set out in this clause shall arise and continue notwithstanding the termination of the agency of the Administrators and shall operate as a waiver of any claims in tort as well as under the laws of contract., the Administrators are party to this Deed in their personal capacities only for the purpose of receiving the benefit of all limitations, exclusions, undertakings, covenants and indemnities in their favour contained in this Deed.

## 17  Confidentiality

**17.1** Subject as mentioned in Clause 17.2, each party shall keep confidential the terms of this Deed and all information received or obtained as a result of negotiating preparing executing performing or implementing it which relates to the other party or any agent or sub-contractor acting on its behalf including for the avoidance of doubt all discussions relating to financial claims between the parties and any information concerning persons currently employed by the Tenant in connection with the management of and services provided at the Property. Neither party shall use such information for any purpose other than to perform its obligations under this Deed.

**17.2** Notwithstanding the other provisions of this clause 17 any party may after prior reasonable notification to the other party whenever practicable disclose confidential information if and to the extent:

(a) required by law; or

CONFIDENTIAL

CW0000791

(b)   required by any securities exchange on which any party's, or any group company of any party's, securities are listed or traded; or

(c)   required by any regulatory or governmental or other authority with relevant powers to which either party is subject or submits (whether or not the authority has the force of law); or

(d)   required to vest the full benefit of this Deed in that party or to enforce any of the rights of that party in this Deed; or

(e)   required by its professional advisers officers employees consultants sub-contractors or agents to provide their services (and subject always to similar duties of confidentiality); or

(f)   such disclosure is to any party which has (or has had at any time) an interest in, or charge over, the Landlord's reversion or any superior interest to the Property or the income derived from the Property;[please explain why these tenants should be made aware of confidential details].

(g)   such disclosure is required to make all appropriate applications to the Land Registry in relation to this Deed, the completion of the surrender pursuant to this Deed and the closure of the Tenant's registered title to the Property;

(h)   required in connection with complying with the requirements of TUPE;

(i)   such disclosure is to potential occupiers of 25 Bank Street in connection with the marketing of 25 Bank Street only and for the avoidance of doubt such disclosure shall not extend to discussions relating to financial claims between the parties or any information concerning the persons currently employed by the Tenant in connection with the management and services provided at the Property;

(j)   that information is in or has come into the public domain through no fault of that party; or

(k)   the other party has given prior written consent to the disclosure (such consent not to be unreasonably withheld); or

(l)   it is necessary to obtain any relevant tax clearances from any appropriate tax authority; or

(m)   such disclosure is being made to LBHI.

17.3   This duty of confidentiality shall not apply to information disclosed in the exercise of the statutory duties of the Administrators or to the extent required by current insolvency practice or to enable the Administrators properly to carry out the duties of their office.

## 18   Contracts (Rights of Third Parties) Act 1999

Any person who is not a party to this Deed shall have no right (whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise) to enforce or enjoy the benefit of any term of this Deedprovided that the Administrators, their firm, employees and representatives shall be entitled to rely on clause 16 (Administrators' Liability) of this Deed as if they were a party to it.

CONFIDENTIAL

**19    VAT**

19.1    All sums or other consideration set out in this Deed or otherwise payable or otherwise provided by any party to any other party pursuant to this Deed or the Deed of Surrender shall be deemed to be exclusive of any VAT which is chargeable on the supply or supplies for which such sums or other consideration (or any part thereof) are the whole or part of the consideration for VAT purposes.

19.2    Where, pursuant to the terms of this Deed or the Deed of Surrender, any party (the "**Supplier**") makes a supply to any other party (the "**Recipient**") for VAT purposes and VAT is or becomes chargeable on such supply, the Recipient shall, subject to the receipt of a valid VAT invoice in respect of such supply from the Supplier, pay to the Supplier (in addition to and at the same time as any other consideration for such supply) a sum equal to the amount of such VAT.

19.3    Conditions 1.4.1, 1.4.2 and 1.4.3 shall not apply.

**20    Authorisation under s38 Landlord and Tenant Act 1954**

20.1    The Tenant hereby confirms that prior to the date of this Deed:

20.1.1    The First Landlord served on the Tenant a notice ("the Notice") dated 2010 in relation to this Deed in a form complying with the requirements of Schedule 3 to the Regulatory Reform (Business Tenancies) (England and Wales) Order 2003 ("the Order")

20.1.2    The Tenant, or a person duly authorised by the Tenant, in relation to the Notice made a statutory declaration ("the Declaration") dated 2010 in a form complying with the requirements of Schedule 4 of the Order.

20.2    The Tenant further confirms that, where the Declaration was made by a person other than the Tenant, the declarant was duly authorised by the Tenant to make the Declaration on the Tenant's behalf.

20.3    The First Landlord and the Tenant agree that the tenancy created by the Lease shall be surrendered as provided in this Deed.

**21    Governing Law and Jurisdiction**

This Deed and all non-contractual obligations arising from or connected with it are governed by English law. The courts of England have exclusive jurisdiction to hear and decide any suit, action or proceedings and to settle any disputes which may arise out of or in connection with this Deed (including a dispute relating to non-contractual obligations arising from or in connection with this Deed or a dispute regarding the existence, validity or termination of this Deed) and, for these purposes, each party irrevocably submits to the jurisdiction of the courts of England.

**22    Entire Agreement**

**The parties acknowledge that this Deed and any agreed form of document or other instrument referred to in this Agreement** contain all of the terms of the contract between the parties for the surrender of the Property.

A12462506/0.8/29 Sep 2010

- 15 -

CONFIDENTIAL

23      **Invalidity of Certain Provisions**

If any term of this Deed or the application of such term to any person or circumstances shall to any extent be invalid or unenforceable the same shall be severable and the remainder of this Deed or the application of such term to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected by such invalidity or unenforceability and each term and provision of this Deed shall be valid and be enforced to the fullest extent permitted by law.

24      **Continuation of this Agreement**

Notwithstanding the completion of the surrender of the Property, all the provisions of this Deed shall continue in full force and effect to the extent that anything remains to be performed or observed under it.

CONFIDENTIAL                                                                     CW0000794

**Schedule 1**

CONFIDENTIAL

CW0000795

## Part A
## (the Property)

**All that** leasehold property known as 25 Bank Street, Canary Wharf, London E14 5LE being all the property comprised in the Lease Documents and registered at the Land Registry with absolute title under Title Number EGL492964.

Part B

(The Car Park)

All that property comprising car parking spaces as described in the Car Parking Documents.

CONFIDENTIAL

CW0000796

**Schedule 2**
**(the Deed of Surrender)**

A12462506/0.8/29 Sep 2010

- 19 -

CONFIDENTIAL

CW0000797

## Schedule 3

### Part A
### (the Lease Documents)

| Date | Document | Parties |
|------|----------|---------|
| 30 March 2001 | Agreement for Lease | Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (1) |
| | | Canary Wharf Group PLC (2) |
| | | Lehman Brothers Limited (3) |
| | | Lehman Brothers Holdings Inc (4) |
| 16 March 2005 | Lease | Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (1) |
| | | Canary Wharf Management Limited (2) |
| | | Canary Wharf Holdings Limited (3) |
| | | Lehman Brothers Limited (4) |
| | | Lehman Brothers Holdings Inc (5) |
| 16 March 2005 | Deed in respect of Tenant Requested Modifications | Heron Quays Properties Limited (1) |
| | | Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (2) |
| | | Canary Wharf Estate Limited (3) |
| | | Lehman Brothers Limited (4) |
| | | Lehman Brothers Holdings Inc (5) |

### Part B
### (the Car Parking Documents)

| | | |
|------|----------|---------|
| 30 March 2001 | Agreement to Grant a Car Parking Agreement | Heron Quays Properties Limited (1) |
| | | Canary Wharf (Car Parks) Limited (2) |
| | | Lehman Brothers Limited (3) |
| 12 December 2003 | Deed of Variation and Agreement | Heron Quays Properties Limited (1) |
| | | Canary Wharf Estate Limited (2) |
| | | Canary Wharf Holdings Limited (3) |
| | | Canary Wharf (Car Parks) Limited (4) |
| | | Canary Wharf Contractors Limited (5) |
| | | Lehman Brothers Limited (6) |

A12462506/0.8/29 Sep 2010

CONFIDENTIAL

CW0000798

Lehman Brothers Holdings Inc (7)

Lehman Brothers Lease & Finance No.1
Limited (8)

16 March 2005 Car Parking Agreement Canary Wharf (Car Parks) Limited, Heron
Quays (RT3) T1 Limited and Heron Quays
(RT3) T2 Limited (1)

Canary Wharf Management Limited (2)

Lehman Brothers Limited (3)

A12462506/0.8/29 Sep 2010

CONFIDENTIAL

CW0000799

## Schedule 4
## (the Letting Documents)

| Date | Document | Parties |
|---|---|---|
| 11 October 2006 | Licence to underlet Floor 18 | Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (1) |
| | | Lehman Brothers Limited (2) |
| | | Heron Quays Properties Limited (3) |
| | | Canary Wharf Holdings Limited (4) |
| | | Jones Lang La Salle Limited (5) |
| 16 March 2005 | Sub-Underlease of Floor 18 | Lehman Brothers Limited (1) |
| | | Heron Quays Properties Limited (2) |
| | | Canary Wharf Holdings Limited (3) |
| | | Canary Wharf Management Limited (4) |
| 11 October 2006 | Licence to underlet Floor 19 | Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (1) |
| | | Lehman Brothers Limited (2) |
| | | Heron Quays Properties Limited (3) |
| | | Canary Wharf Holdings Limited (4) |
| | | Jones Lang La Salle Limited (5) |
| 16 March 2005 | Sub-Underlease of Floor 19 | Lehman Brothers Limited (1) |
| | | Heron Quays Properties Limited (2) |
| | | Canary Wharf Holdings Limited (3) |
| | | Canary Wharf Management Limited (4) |
| 16 March 2005 | Sub-Underlease of Floor 20 | Lehman Brothers Limited (1) |
| | | Heron Quays Properties Limited (2) |
| | | Canary Wharf Holdings Limited (3) |
| | | Canary Wharf Management Limited (4) |
| 7 September 2006 | Licence to carry out alterations to Level 21 and part Floor 20 | Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (1) |
| | | Lehman Brothers Limited (2) (Landlord) |
| | | Heron Quays Properties Limited (3) |
| | | Canary Wharf Holdings Limited (4) |
| | | Atos Euronext Market Solutions Limited (5) |

A12462506/0.8/29 Sep 2010

CONFIDENTIAL

CW0000800

| Date | Document | Parties |
|------|----------|---------|
| | | Euronext NV and Atos Origin SA (6) |
| 18 July 2006 | Licence to underlet Floor 21 and part Floor 20 | Lehman Brothers Limited (1) |
| | | Heron Quays Properties Limited (2) |
| | | Canary Wharf Holdings Limited (3) |
| | | Atos Euronext Market Solutions Limited (4) |
| | | Euronext NV and Atos Origin SA (5) |
| 9 April 2008 | Consent Letter | Lehman Brothers Limited (1) |
| | | Heron Quays Properties Limited (2) |
| | | Atos Euronext Market Solutions Limited (3) |
| 16 March 2005 | Sub-Underlease of Floor 21 | Lehman Brothers Limited (1) |
| | | Heron Quays Properties Limited (2) |
| | | Canary Wharf Holdings Limited (3) |
| | | Canary Wharf Management Limited (4) |
| 9 December 2008 | Licence to Underlet | Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited (1) |
| | | Canary Wharf Management Limited (2) |
| | | Lehman Brothers Limited (in administration) (3) |
| | | Nomura International plc (4) |
| | | Nomura Holdings Inc (5) |
| 9 December 2008 | Sub-Underlease of Floors 31, 30, 27, 26, Part 7, 5, Part 4, 3, Part 2, Part 1 | Lehman Brothers Limited (in administration) (1) |
| | | Nomura International plc (2) |
| | | Nomura Holdings Inc (3) |
| 13 May 2009 | Lease of Medical Suite | Lehman Brothers Limited (in administration) (1) |
| | | Nomura International Plc (2) |
| | | Nomura Holdings Inc (3) |
| 27 March 2010 | Lease of part 7th and part 1st Floors | Lehman Brothers Limited (in administration) (1) |
| | | Nomura International Plc (2) |
| | | Nomura Holdings Inc (3) |
| 29 June 2010 | Notice of termination of three Leases in favour of Nomura International Plc | Nomura International Plc |
| | | Lehman Brothers Limited (in administration) |

CONFIDENTIAL

CW0000801

**Schedule 5**

(The Inventory)

CONFIDENTIAL

CW0000802

## Schedule 6
## (Guarantees)[to be discussed]

[Data cable warranty]

[Fibre cable warranty]

[Please provide copies of these and other warranties that we understand can be assigned to the First Landlord.]

CONFIDENTIAL

CW0000803

**Schedule 7**
**(Guarantee Assignment)[to be discussed]**

CONFIDENTIAL

CW0000804

Execute as a Deed

EXECUTED as a DEED on behalf of LEHMAN
BROTHERS LIMITED (in administration) by one of
the Administrators (acting as its agent without
personal liability) in the presence of:

_____

Witness signature

_____

Name:

_____

_____

Address:

_____

Occupation:

A12462506/0.8/29 Sep 2010

- 27 -

CONFIDENTIAL                                                                CW0000805

SIGNED as a DEED by one of the Administrators
on behalf of all of them (without personal liability
and solely for the purpose of receiving the benefit
of provisions in this Deed in their favour) in the
presence of:

_____
Witness signature

_____
Name:

_____
_____
Address:

_____
Occupation:

SIGNED by [                                  ] on
behalf of the Landlord

A12462506/0.8/29 Sep 2010

- 28 -

CONFIDENTIAL

CW0000806