# EXHIBIT 18

Angela Emery

**From:** George Iacobescu
**Sent:** 26 November 2010 15:27
**To:** 'levcapital@aol.com'; Peter Anderson; Sir Martin Jacomb; Christopher Henderson; Pamela Kendall; Simon Waugh; Richard Archer; Jo Shenker (shenkerj@sullcrom.com); dietdericha@sullcrom.com
**Subject:** FW: 25 Bank Street - draft agreement for surrender

**Importance:** High

   

HQ2 Warranty Letter.doc (87 KB...  lehman bro level 17 warranty.p...  lbia level 22-24 warranty.pdf ...  2010112611344224 3.pdf (5 MB)

Redacted

From: Pam.Sansom@CliffordChance.com [mailto:Pam.Sansom@CliffordChance.com] On Behalf Of Tony.Briam@CliffordChance.com
Sent: 26 November 2010 12:31
To: Pamela Kendall; Christopher Henderson
Cc: George Iacobescu; Peter Anderson; Sarah.Dawson@CliffordChance.com; Benjamin.Hatton@CliffordChance.com; Nicholas.Frome@CliffordChance.com
Subject: 25 Bank Street - draft agreement for surrender

Redacted

Kind regards.

Tony Briam
Partner
Clifford Chance LLP
10 Upper Bank Street, London, E14 5JJ
Direct Dial:    +44 (0)20 7006 4004
tony.briam@cliffordchance.com


From: Fisher, Pauline [mailto:pauline.fisher@Linklaters.com] On Behalf Of Bradford, Katie
Sent: 26 November 2010 12:19
To: Briam, Tony (Real Estate-LON); Dawson, Sarah (Real Estate-LON)
Cc: Taylor, Beatrice
Subject: 25 Bank Street - draft agreement for surrender


Dear Tony and Sarah

Thankyou for your email of yesterday afternoon.

1

EXHIBIT
4
KL 6/11/13

I write to respond to Sarah's email of Friday evening 12 November with amended draft documentation, and to follow up our recent email exchanges. Beatrice has carriage of the draft documents at this end but is working away from the office for the rest of this week and so on my return to the office yesterday, I have been trying to clarify and advance matters. I have discussed the issues in detail with my clients.

Your clients' request, for an acknowledgment of a valid claim of £262.5million, presents LBL and its administrators with a significant problem. Setting aside the fact that this claim was previously agreed at nil (after extensive negotiations) my clients struggle to see how they can acknowledge claims which are currently in the region of c.£35million (representing accrued rent and estate charges) at a substantially higher sum.

Your email of yesterday afternoon (14.21) refers to mitigation of a damages claim but of course that is not the context in which our respective clients have negotiated. This is not a Park Air claim following disclaimer. Nor are my clients offering a premium for a surrender. Indeed, your clients have up to now on an open basis consistently refused to accept LBL's offers of a surrender, choosing instead to affirm the lease as continuing. They are entitled to make formal claims (when the LBL administration reaches that stage) for the rent accruing quarterly. It will take some years before that sum exceeds £200million.

Alternatively, your clients can take steps to bring the lease to an end, either consensually through a surrender, or through forfeiture. In either case, a line is drawn under the amount of rent accruing. And in either case, your clients would have no damages claim for loss of future rent.

My clients have been consistent in rejecting the quasi Park Air basis of your clients' claim, as was debated between our firms and our respective clients earlier this year.

In those circumstances, both we and our clients struggle to see how they can acknowledge as "valid" and without challenge a claim for £262.5million, even if LBL/the Administrators had power to admit claims at this stage (which as you know from previous correspondence, they do not).

We recognise that your clients wish to amend the deal with LBL in order to reach agreement with LBHI and in particular to be able to provide the requested stipulation numbered 2 in the draft agreement.

However, and forgive us if this is something you have previously debated and rejected, a different route occurs to us which would enable your clients to reach agreement with LBHI, but would not necessitate any claim against LBL. Our suggestion is as follows: your clients now and/or in the future would be in a position to forfeit the Lease and on doing so would be entitled to require LBHI to enter into a new lease on the same terms. In the circumstances of agreement 3 in the draft settlement with LBHI (namely that your client does not currently anticipate entering into a lease for all or substantially all of the premises within 12 months of the court ratifying the LBHI settlement) it appears to us that your clients can make a claim against LBHI if it refuses to accept a new lease.

We note that this independent right of your client against LBHI is not currently referred to in the draft Settlement Agreement with LBHI but it would seem to present a solution to the deadlock which your clients have reached. We hope that this suggestion would be regarded as helpful. It seems to resolve the tension between our respective clients and so if you cannot adopt it, it would be helpful to know why that is.

Turning to the details of the current draft.

Parties:  We have not seen the fit out agreement and so will check details with our clients as to the inclusion of Lehman Brothers Lease Finance (1) Limited. It would be helpful to have copies of the relevant documents (described at Recital C in the LBHI draft settlement agreement).

CONFIDENTIAL                                                                                                                    CW0018403

Definitions: Please reinstate the definition of Affiliate.

Items: As previously stated, our clients' instructions are that they cannot agree any list of items so this must be a general description.

Paragraphs 2.2 and 3.2: We do not appear to have received from you the requested explanation as to why these sub-paragraphs have been included by your client. They appear to be inconsistent with clause 11 as you have re-drafted it and in any event with the agreement that our client pay £1.5million (subject to the clarification of the Nomura Agreement). Our clients do not want to reject these paragraphs if they could understand their purpose but currently are not inclined to agree them.

Paragraphs 8.5 and 9.1: Our instructions are firm that the administrators will not give these confirmations.

Paragraph 11.1.1: Despite the clear frustration of your client (no doubt with Nomura) our clients do require copies of the Nomura documentation for clause 11.1.1 to be completed. Whilst you have explained the general background of the arrangements with Nomura, it is not appropriate to ask our clients to draft general provisions in respect of arrangements, the details of which they are unaware. We understand your clients offered to show the Nomura documents to our clients (but not to us). Please supply the documents.

Paragraphs 11.1 and 11.2: Claims against LBL and LBHI: Please supply copies. Whilst your clients have passed certain documentation to our clients, we must ask for copies to be provided on a formal basis.

Paragraphs 11.1.2 and 11.1.3: We have commented above on the difficulties our client has with the proposal that they acknowledge the claim "is valid to the extent of £262.5million" and that LBL and the administrators shall not object to that claim, for this does not reflect legal reality.

Paragraph 11.1.5: In any event we shall need a warranty from the First Landlord, with an acknowledgment of reliance upon that warranty by LBL and the Administrators, to the effect that the First Landlord has and retains the right to payment of accrued and accruing rents. Given that we are uncertain of the position following the agreements with Nomura we must ask you to draft the appropriate warranty.

Paragraphs 11.1.1 and 11.4: We have deleted reference to the Administrators.

Paragraph 11.3: We note this reflects an agreement requested by LBHI. We shall need to liaise with our New York office to consider its effect.

Paragraph 11.5: Consistent with the reinstatement of the definition of Affiliates, we ask that this clause be reinstated as amended by us.

Paragraph 17.2(f): Please address our question.

Guarantees: We attach documents our client has provided to us in respect of warranties, which is all they can identify.

We attach a copy of the draft with our handwritten comments.

We recognise your clients' desire to move this forward. However we do ask them to acknowledge that the change of tack in inserting a provision requiring our clients to acknowledge as valid (and not challenge) a claim for £262.5million, and also the delay in provision of the Nomura documentation, provides our clients with real difficulties. Those difficulties are not assisted by your clients' proposed release to LBHI in terms of paragraph 5 of the Settlement Agreement with LBHI.

We look forward to hearing from you. We suggest that our firms seek to agree the balance of the

3

CONFIDENTIAL
CW0018404

draft agreement for surrender as far as possible and that once we have your response on these points, we meet (clients and solicitors from both parties) to debate points of principle. We understand that our clients could attend a meeting early next week, subject to their having reasonble opportunity to consider your response and subject to the convenience of you and your clients.

Yours faithfully

Katie Bradford
Partner, Property and Finance Litigation
Linklaters LLP
One Silk Street
London EC2Y 8HQ
Tel: 020 7456 4234
Fax: 020 7456 2222
Email: katie.bradford@linklaters.com
http:/www.linklaters.com
Go to www.linklaters.com/disputetoolkit - for free litigation and arbitration advice

Any business communication, sent by or on behalf of Linklaters LLP or one of its affiliated firms or other entities (together "Linklaters"), is confidential and may be privileged or otherwise protected. If you receive it in error please inform us and then delete it from your system. You should not copy it or disclose its contents to anyone. Messages sent to and from Linklaters may be monitored to ensure compliance with internal policies and to protect our business. Emails are not secure and cannot be guaranteed to be error free. Anyone who communicates with us by email is taken to accept these risks. Linklaters LLP is a limited liability partnership registered in England and Wales with registered number OC326345. It is a law firm regulated by the Solicitors Regulation Authority (www.sra.org.uk). The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. Please refer to www.linklaters.com/regulation for important information on our regulatory position.
A list of Linklaters LLP members together with a list of those non-members who are designated as partners and their professional qualifications, may be inspected at our registered office, One Silk Street, London EC2Y 8HQ and such persons are either solicitors, registered foreign lawyers or European lawyers.

[CC]70-40394288[/CC]
This message and any attachment are confidential and may be privileged or otherwise protected from disclosure.
If you are not the intended recipient, please telephone or email the sender and delete this message and any
attachment from your system. If you are not the intended recipient you must not copy this message or attachment
or disclose the contents to any other person.

Clifford Chance LLP is a limited liability partnership registered in England & Wales under number OC323571.
CC Asia Limited is a company registered in England & Wales under number 5663642. The registered office and principal place of business of both is at 10 Upper Bank Street, London, E14 5JJ.

4