In re Lehman Brothers Holdings, Inc., et al.
Debtors, Case No. 08-13555 (SCC)
Chapter 11


EXHIBIT 1

TO

DECLARATION OF J. GARY GWILLIAM
IN SUPPORT OF MOTION FOR RELIEF FROM STAY
AND INJUNCTION PROVIDED UNDER PLAN

11/8/05

1  J. GARY GWILLIAM, Esq. (State Bar No. 33,430)
2  MONIQUE G. MORALES, Esq. (State Bar No. 229,533)
   GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
3  1999 Harrison Street, Suite 1600
   Oakland, CA 94612-3528
4  Telephone: (510) 832-5411
   Facsimile: (510) 832-1918
5
6  Attorney for Plaintiffs



FILED
ENDORSED

NOV 8 2005

By M. Cifuentes
Deputy Clerk

10       IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11           IN AND FOR THE COUNTY OF SACRAMENTO

13  COLEEN DENISE COLOMBO; ISABEL          Case No.:     05AS05161
    GUAJARDO; LINDA HOWARD-JAMES;
14  CHERYL McNEIL; MICHELLE SEYMOUR;       COMPLAINT FOR DAMAGES BASED
    SYLVIA VEGA-SUTFIN                      ON:
15
16            Plaintiffs,                   1. EMPLOYMENT DISCRIMINATION
                                            2. HARASSMENT
17  vs.                                     3. FAILURE TO PREVENT
                                               DISCRIMINATION
18  BNC MORTGAGE INC.; JOE                  4. RETALIATION
    PENNINGTON; DANIEL KEENAN; NICK         5. INTENTIONAL INFLICTION OF
19  MURPHY; and Does 1-100, inclusive,         EMOTIONAL DISTRESS
                                            6. DEFAMATION
20            Defendants.                   7. WRONGFUL TERMINATION IN
                                               VIOLATION OF PUBLIC POLICY
21                                          8. BREACH OF IMPLIED AND/OR
                                               EXPRESS CONTRACT OF
22                                             CONTINUED EMPLOYMENT
                                            9. BREACH OF IMPLIED COVENANT
23                                             OF GOOD FAITH AND FAIR
                                               DEALING
24
25
26
27
28

-1-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

EXHIBIT 1

## PARTIES

### *Plaintiffs*

1.     Coleen Colombo is an individual, a female, and formerly an employee of BNC MORTGAGE INC., ("BNC").

2.     Isabel Guajardo is an individual, a Hispanic-American female, and formerly an employee of BNC.

3.     Linda Howard-James is an individual, an African-American female, and formerly an employee of BNC.

4.     Cheryl McNeil is an individual, an African-American female, and formerly an employee of BNC.

5.     Michelle Seymour is an individual, a female, and formerly an employee of BNC.

6.     Sylvia Vega-Sutfin is an individual, a Hispanic-American female, and formerly an employee of BNC.

### *Defendants*

7.     Plaintiffs are informed and believe and herein allege that Defendant, BNC, is and at all relevant times hereto was a corporation doing business in the State of California.

8.     Defendant Daniel Keenan is an individual and on information and belief resides in the State of California.

9.     Defendant Nick Murphy is an individual and on information and belief resides in the State of California.

10.     Defendant Joe Pennington is an individual and on information and belief resides in the State of California.

11.     Reference made in this complaint to Defendants' acts shall be deemed to mean the acts of Defendants acting individually, jointly, and/or severally.

-2-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

12.     Plaintiffs are ignorant of the true names or capacities of the Defendants sued here under the fictitious names DOE ONE through DOE ONE HUNDRED, inclusive. Plaintiffs are informed and believe that each of DOE defendants was responsible in some manner for the occurrences and injuries alleged in this complaint.

13.     At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent, servant, joint venturer or employee of each and every other defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission, and authorization of each of the remaining Defendants. All actions of each defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other defendant.

**JURISDICTION AND VENUE**

14.     Defendants' acts that form the basis for the causes of action in this complaint occurred in the County of Sacramento, State of California.

**CONDITIONS PRECEDENT**

15.     Each of the Plaintiffs, within one year of their respective terminations, filed complaints against Defendants with the Department of Fair Employment and Housing ("DFEH"), received right to sue notices, served copies of the complaints and right to sue notices on Defendants and filed this action within one year of those right to sue notices.

16.     Plaintiff Coleen Colombo's DFEH complaints against BNC, Daniel Keenan, Nick Murphy and Joe Pennington were filed on September 7, 2005.  Her notice of closure and right to sue letters are dated September 14, 2005.

-3-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

17.    Plaintiff Isabel Guajardo's DFEH complaints against BNC, Daniel Keenan, Nick
Murphy and Joe Pennington were filed on September 7, 2005.  Her notice of closure letters are
dated September 14, 2005.

18.    Plaintiff Linda Howard-James's DFEH complaints against BNC, Daniel Keenan,
Nick Murphy and Joe Pennington were filed on September 7, 2005.  Her notice of closure and
right to sue letters are dated September 14, 2005.

19.    Plaintiff Cheryl McNeil's DFEH complaints against BNC, Daniel Keenan, Nick
Murphy and Joe Pennington were filed on September 7, 2005.  Her notice of closure and right to
sue letters are dated September 13, 2005.

20.    Plaintiff Michelle Seymour's DFEH complaints against BNC, Daniel Keenan,
Nick Murphy and Joe Pennington were filed on September 7, 2005.  Her notice of closure and
right to sue letters are dated September 9, 2005.

21.    Plaintiff Sylvia Vega-Sutfin's DFEH complaints against BNC, Daniel Keenan,
Nick Murphy and Joe Pennington were filed on September 7, 2005.  Her notice of closure and
right to sue letters are dated September 9, 2005.

## FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION

### *Defendant Daniel Keenan's Sexual and Racial Harassment of Plaintiffs*

22.    Defendant Daniel Keenan began working at BNC's Sacramento Branch in
approximately March 2005.

23.    Almost immediately after he started working at the Sacramento branch, Daniel
Keenan began to sexually and racially harass plaintiffs Coleen Colombo, Isabel Guajardo, Linda
Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin as detailed below.

24.    Plaintiffs' repeated complaints to Defendants were ignored.  Branch manager
Defendant Joe Pennington even referred to Keenan's offensive and unwelcome behavior as "just

-4-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

fun and games" and nicknamed him "Chester Molester."

*Plaintiff Coleen Colombo*

25.    Plaintiff Coleen Colombo began working at BNC on or about September 22, 2003 as a senior underwriter.

26.    At all times herein mentioned, Plaintiff was fully competent to perform the duties to which she was assigned. In March 2005, Plaintiff received a work performance rating of "exceeds expectations."

27.    In approximately April or May 2005, Plaintiff emailed the regional Vice President of Operations, Kim Bugay, about company practices which she believed to be fraudulent and/or illegal, including sexual harassment and hostile work environment.  Plaintiff informed Ms. Bugay that defendant Joe Pennington was pressuring her to push through questionable loans and that his actions were taking a toll on her physical and emotional health.  Rather than thank Plaintiff for bringing the fraud to her attention, Ms. Bugay responded by berating her for not finding and reporting the fraud sooner.  Plaintiff left the office in tears.  After Plaintiff's protected disclosure, BNC retaliated against Plaintiff.

28.    The day of Plaintiff's protected disclosure to Ms. Bugay, defendant Joe Pennington tried to bribe Plaintiff to allow a loan with fraudulent information to go through. This added to her emotional and physical distress.

29.    The day of Plaintiff's protected disclosure to Ms. Bugay, Plaintiff's doctor advised her to take a short leave of absence to alleviate her stress.

30.    During Plaintiff's short leave of absence in or about May 2005, BNC Human Resources personnel questioned the BNC Sacramento branch employees about Plaintiff's complaints.  Plaintiff Linda Howard-James confirmed the complaints, including the fraud and hostile work environment.  After this, BNC retaliated against Plaintiffs, including but not limited to plaintiff Howard-James and continued to retaliate against plaintiff Colombo.

-5-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

31.    BNC told plaintiff Michelle Seymour not to associate with plaintiffs Colombo and Howard-James.

32.    When Plaintiff returned from her short leave of absence, defendant Joe Pennington informed her that defendant Nick Murphy wanted her terminated for making the complaints.

33.    After Plaintiff's protected disclosure about the company practices which she believed to be fraudulent and/or illegal, defendant Daniel Keenan began a campaign of harassing Plaintiff, through unwelcome touching and inappropriate behavior including but not limited to entering Plaintiff's office and intentionally rubbing his body against hers.    Defendant Daniel Keenan made Plaintiff very uncomfortable and fearful.

34.    In May 2005, Plaintiff renewed her complaint about the company practices which she believed to be fraudulent and/or illegal.    This time, she emailed Regional Sales Manager Casey Copeland and Regional Account Manager Martha Stevens.    She informed them that defendant Joe Pennington and Linda Harris had been putting pressure on her to "look the other way" on fraudulent loan documentation.    She complained of the hostile work environment, harassment and management's failure to address previous complaints.    Plaintiff advised them of the stress the work environment was putting on her and the physical manifestations of that stress. Plaintiff expressed her fear of continued harassment and retaliation.

35.    After months of being subjected to Defendants' retaliation and harassment, work conditions became so intolerable that Plaintiff was left with no reasonable alternative but to resign on September 7, 2005.

36.    Defendants' actions caused and continue to cause Plaintiff great emotional distress.

37.    Defendants engaged in a continuing course of tortious and discriminatory conduct culminating in Plaintiff's constructive termination.

-6-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

*Plaintiff Isabel Guajardo*

38.    Plaintiff Isabel Guajardo is a survivor of childhood sexual abuse.

39.    On or about April 18, 2005 BNC hired Plaintiff as an account manager and promised to train her. BNC never gave Plaintiff the training promised and later placed her in a receptionist position. At that time, Defendants again promised her training. Defendants failed to do so.

40.    At all times herein mentioned, Plaintiff was fully competent to perform the duties to which she was assigned. She received commendations for her work.

41.    When Plaintiff was first hired she was told not to associate with the other women in the office. Plaintiff later learned that these women had complained about company practices which they believed to be fraudulent or illegal and a hostile work environment. After Plaintiff began to associate with the women in the office who had complained, Defendants retaliated against her.

42.    Defendant Daniel Keenan and Linda Harris gave work instructions to Plaintiff including but not limited to requesting her to report on what plaintiffs Colombo and Howard-James were doing throughout the day.

43.    Almost immediately after Plaintiff started working at BNC, Mr. Keenan began a campaign of sexually and racially harassing her through unwelcome touching and inappropriate behavior including but not limited to pressing his body against hers, grabbing his crotch and simulating masturbation in front of Plaintiff, looking down her blouse, making inappropriate and offensive comments about her body and yelling at and berating Plaintiff.

44.    In apparent reference to her ethnicity, defendant Daniel Keenan made tasteless jokes about Ms. Guajardo and her family using illegal drugs.

45.    Daniel Keenan made Plaintiff very uncomfortable and fearful.

46.    Plaintiff complained to Linda Harris and defendant Joe Pennington about defendant Daniel Keenan's actions. Plaintiff was aware that similar complaints by other

-7-

Plaintiffs had been ignored by Defendants.

47.    After months of being subjected to Defendants' retaliation and harassment, work conditions became so intolerable that Plaintiff was left with no reasonable alternative but to resign on September 7, 2005.

48.    Defendants' actions caused and continue to cause Plaintiff great emotional distress.

49.  ·  Defendants engaged in a continuing course of tortious and discriminatory conduct culminating in Plaintiff's constructive termination.

*Plaintiff Linda Howard-James*

50.  ·  Plaintiff Linda Howard-James is a rape survivor.

51.    Plaintiff began working at BNC on or about April 2004 as a senior underwriter.

52.    At all times herein mentioned, Plaintiff was fully competent to perform the duties to which she was assigned.

53.    As set forth above, plaintiff Coleen Colombo complained to BNC about the company practices which she believed to be fraudulent or illegal, including sexual harassment and hostile work environment.  BNC questioned Plaintiff about plaintiff Colombo's complaints. Plaintiff confirmed the complaints, including fraud and hostile work environment.  BNC retaliated against Plaintiff.

54.    Defendant Daniel Keenan began racially and sexually harassing Plaintiff soon after he started working at the BNC Sacramento branch in March 2005 through unwelcome touching and inappropriate behavior including but not limited to, repeatedly pressing his body against hers, yelling at and berating Plaintiff, making racially charged remarks to her and using offensive and vulgar language in Plaintiff's presence.  She complained to branch manager, Joe Pennington.  He did nothing.

55.  ·  In June 2005, defendant Daniel Keenan made a remark that Plaintiff should not

-8-

have some antique coins because "that was before [her] people were freed." Plaintiff

complained to branch manager, defendant Joe Pennington. He did nothing. Plaintiff told

plaintiff Sylvia Vega-Sutfin, about the racially offensive remark defendant Daniel Keenan made.

Plaintiff Vega-Sutfin caused the matter to be brought to corporate management's attention, as

detailed below.

56.     In September 2005, defendant Daniel Keenan cornered Plaintiff in a file room and

forced himself up against her buttocks. Plaintiff broke down and left the workplace in tears.

57.     Defendant Daniel Keenan made Plaintiff very uncomfortable and fearful.

58.     Defendant Joe Pennington expressed a desire to terminate Plaintiff but an inability

to do so because of a fear of liability for Defendants' actions.

59.     After months of being subjected to defendants' retaliation and harassment, work

conditions became so intolerable that Plaintiff was left with no reasonable alternative but to

resign on September 7, 2005.

60.     Defendants' actions caused and continue to cause Plaintiff great emotional

distress.

61.     Defendants engaged in a continuing course of tortious and discriminatory conduct

culminating in Plaintiff's constructive termination.

### Plaintiff Cheryl McNeil

62.     Plaintiff Cheryl McNeil began working as an account manager for BNC in

January 2004. She managed and processed loans for defendant Nick Murphy.

63.     At all times herein mentioned, Plaintiff was fully competent to perform the duties

to which she was assigned. Plaintiff received numerous awards for "Excellence in

Performance."

64.     In approximately April 2005 Plaintiff reported defendant Nick Murphy's actions

which she believed to be fraudulent and/or illegal to regional account manager, Martha Stevens.

-9-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

Plaintiff suffered retaliation as a result. Before she complained, Plaintiff always met the required

performance quotas. After she complained, defendant Nick Murphy stopped giving Plaintiff

loans to process. As a result, Plaintiff missed her quotas which negatively affected her

performance statistics and income. Eventually, Plaintiff had no loans to process.

65.    Defendant Daniel Keenan began racially and sexually harassing Plaintiff soon

after he started working at the BNC Sacramento branch in March 2005 through unwelcome

touching and inappropriate behavior including but not limited to making tasteless and offensive

remarks about "black people and their music," Plaintiff's clothes, the way they fit, and the

"pleasure" they provided him, asking Plaintiff about her sex life, trying to trip Plaintiff as she

walked past and yelling at and berating Plaintiff.

66.    In June 2005, defendant Daniel Keenan made a racially offensive remark to co-

worker plaintiff Linda Howard-James, for which Plaintiff chastised him.

67.    Plaintiff knew that plaintiffs Coleen Colombo and Linda Howard-James had

complained to Defendants about sexual harassment and hostile work environment and that

Defendants ignored these complaints.

68.    After months of being subjected to Defendants' retaliation and harassment, work

conditions became so intolerable that Plaintiff was left with no reasonable alternative but to

resign on July 22, 2005.

69.    Defendants' actions caused and continue to cause Plaintiff great emotional

distress.

70.    Defendants engaged in a continuing course of tortious and discriminatory conduct

culminating in Plaintiff's constructive termination.

*Plaintiff Michelle Seymour*

71.    Plaintiff Michelle Seymour began working at BNC on or about May 16, 2005 as

an underwriter.

-10-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

72.    At all times herein mentioned, Plaintiff was fully competent to perform the duties to which she was assigned. Plaintiff was given commendations for her work.

73.    On multiple occasions beginning in or about May 20, 2005, Plaintiff discovered fraudulent documents in mortgage application files. Plaintiff reported the fraud to the corporate credit manager, Thadi Abujasier, who finally responded "It takes a lot to have a loan declined." Plaintiff suffered retaliation as a result of her protected disclosure.

74.    In or about May 2005 Defendant Daniel Keenan began a campaign of sexually harassing Plaintiff through unwelcome touching and inappropriate behavior including but not limited to pressing his body against hers, touching her inappropriately, telling her that he loved her, looking down her blouse and trying to hug and kiss her.

75.    Defendant Daniel Keenan made Plaintiff very uncomfortable and fearful.

76.    When Plaintiff complained about defendant Daniel Keenan's harassment to defendant Joe Pennington in or about August 2005, he acknowledged that he had witnessed defendant Daniel Keenan's offensive behavior and that he thought it was just "fun and games."

77.    After months of being subjected to Defendants' retaliation and harassment, work conditions became so intolerable that Plaintiff was left with no reasonable alternative but to resign on September 7, 2005.

78.    Defendants' actions caused and continue to cause Plaintiff great emotional distress.

79.    Defendants engaged in a continuing course of tortious and discriminatory conduct culminating in Plaintiff's constructive termination.

*Plaintiff Sylvia Vega-Sutfin*

80.    Plaintiff Sylvia Vega-Sutfin began working as an accounts executive for BNC on or about July 15, 2004.

81.    At all times herein mentioned, Plaintiff was fully competent to perform the duties

-11-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

to which she was assigned. BNC informed Plaintiff that she had job security because of her work performance.

82.    In or about January 2005 Plaintiff complained to defendant Nick Murphy about the sexually hostile work environment at the Sacramento branch. Defendant Nick Murphy discouraged Plaintiff from complaining about sexual harassment, and told her he would rather not go through the bother of filling out the appropriate paperwork.

83.    After Plaintiff complained about the sexual harassment in January, branch manager Nick Murphy retaliated against Plaintiff when he gave many of Plaintiff's accounts on her protected broker list to others. This substantially impacted Plaintiff's income.

84.    In or about January 2005, Plaintiff complained to Nick Murphy about this practice. The practice continued so in or about March 2005, Plaintiff complained to Sales Vice President Gary Vander-Haeghen about this practice. Shortly after this, Regional Sales Vice President Casey Copeland sent out a mass email stating that this practice was unacceptable. The next day, Casey Copeland, and branch managers defendant Nick Murphy and defendant Joe Pennington retaliated against Plaintiff when they took away Plaintiff's account manager disrupting her closings.

85.    After Plaintiff made complaints to the corporate office, defendant Nick Murphy began referring to her as "that bitch" and said he "hate[s] that bitch."

86.    After Plaintiff made complaints, Gary Vanderhagen, Nick Murphy, Joe Pennington, branch manager Bill Smalley and Casey Copeland plotted to "make [Ms. Vega-Sutfin] pay." Defendant Nick Murphy and Casey Copeland yelled at, berated and otherwise discriminated against Plaintiff.

87.    In March 2005, defendant Daniel Keenan began working at the Sacramento branch and almost immediately began a campaign of sexually harassing Plaintiff including but not limited to pressing his body against hers, breathing on her neck and making offensive and sexually-charged comments to Plaintiff. When Plaintiff complained and relayed defendant

-12-

1    Daniel Keenan's acts to branch manager defendant Joe Pennington, he laughed.

2         88.    Defendant Daniel Keenan's offensive and unwelcome actions made Plaintiff so

3    uncomfortable and fearful that she went home and looked on the internet to see if he was a

4    registered sex offender.

5         89.    In an effort to escape the hostile environment at the Sacramento branch, Plaintiff

6    asked for a transfer to the Santa Rosa office. Regional Sales Vice President Casey Copeland

7    transferred her to the Concord office in March 2005.

8         90.    After she left, BNC management threatened other plaintiffs in the Sacramento

9    office with termination if they associated with Plaintiff. In Concord, Plaintiff faced retaliation

10   from her account manager until her termination.

11        91.    In June 2005, plaintiff Linda Howard-James told Plaintiff about racially offensive

12   remarks made to her by defendant Daniel Keenan. Plaintiff caused the matter to be brought to

13   corporate management's attention. Minutes later, Regional Sales Vice President Casey

14   Copeland informed her that he was unhappy with her for having made a complaint.

15        92.    After months of being subjected to defendants' retaliation and harassment, work

16   conditions became so intolerable that Plaintiff was left with no reasonable alternative but to

17   resign on September 7, 2005.

18        93.    Defendants' actions caused and continue to cause Plaintiff great emotional

19   distress.

20        94.    Defendants engaged in a continuing course of tortious and discriminatory conduct

21   culminating in Plaintiff's constructive termination.

22                              **FIRST CAUSE OF ACTION**

23                                    **HARASSMENT**

24                        **[All Plaintiffs Against All Defendants]**

25        95.    Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 to 94 as though

26   fully set forth herein.

27

28                                        -13-

96.    At all times relevant to this complaint, Government Code § 12900 *et seq.* and its implementing regulations were in full force and effect.

97.    It is unlawful for an employer to harass an employee on account of race, color, ancestry or sex and to fail to take all reasonable steps necessary to prevent harassment.  (Cal. Govt. Code § 12940(j)).

98.    Defendants created an intolerable, hostile work environment and failed to take steps to correct such environment.

99.    Plaintiff Coleen Colombo's sex was a motivating factor in Defendants' unwanted harassment.

100.    Plaintiff Isabel Guajardo's sex, race, color and/or ancestry was a motivating factor in Defendants' unwanted harassment.

101.    Plaintiff Linda Howard-James's sex, race, color and/or ancestry was a  motivating factor in Defendants' unwanted harassment.

102.    Plaintiff Cheryl McNeil's sex, race, color and/or ancestry was a  motivating factor in Defendants' unwanted harassment.

103.    Plaintiff Michelle Seymour's sex was a motivating factor in Defendants' unwanted harassment.

104.    Plaintiff Sylvia Vega-Sutfin's sex was a motivating factor in Defendants' unwanted harassment.

105.    The unwanted harassment by Defendants was so severe, widespread, and/or persistent that a reasonable woman in any of plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin's circumstances would have considered the work environment to be hostile and/or abusive.

106.    Plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin considered the work environment to be hostile and/or abusive.

-14-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

107.    Defendants' wrongful conduct has caused plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin to suffer and continue to suffer injury including, but not limited to, loss of income and benefits, severe emotional distress and other damages.

108.    In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin with malice, oppression and fraud and with willful and conscious disregard to Plaintiffs' rights, entitling each plaintiff to awards of punitive damages.

## SECOND CAUSE OF ACTION

### DISCRIMINATION

**[All Plaintiffs Against Defendant BNC Mortgage Inc.]**

109.    Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 to 108 as though fully set forth herein.

110.    At all times relevant to this complaint, Government Code § 12900 *et seq.* and its implementing regulations were in full force and effect.

111.    It is unlawful for an employer to terminate or otherwise discriminate against a person in compensation or in terms, conditions or privileges of employment on account of race, color, ancestry or sex. (Cal. Govt. Code § 12940(a)).

112.    As set forth above, Defendants discriminated against Plaintiffs, harassed Plaintiffs, subjected Plaintiffs to a hostile work environment and eventually, terminated their employment.

113.    Plaintiff Coleen Colombo's sex was a motivating factor in Defendants' decision to terminate her employment.

114.    Plaintiff Isabel Guajardo's sex, race, color and/or ancestry was a motivating factor in Defendants' decision to terminate her employment.

-15-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

115.   Plaintiff Linda Howard-James's sex, race, color and/or ancestry was a motivating factor in Defendants' decision to terminate her employment.

116.   Plaintiff Cheryl McNeil's sex, race, color and/or ancestry was a motivating factor in Defendants' decision to terminate her employment.

117.   Plaintiff Michelle Seymour's sex was a motivating factor in Defendants' decision to terminate her employment.

118.   Plaintiff Sylvia Vega-Sutfin's sex was a motivating factor in Defendants' decision to terminate her employment.

119.   Defendants' wrongful conduct has caused plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin to suffer and continue to suffer injury including, but not limited to, loss of income and benefits, severe emotional distress and other damages.

120.   In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin with malice, oppression and fraud and with willful and conscious disregard to Plaintiffs' rights, entitling each plaintiff to awards of punitive damages.

### THIRD CAUSE OF ACTION

### FAILURE TO PREVENT DISCRIMINATION

### [All Plaintiffs Against Defendant BNC Mortgage Inc.]

121.   Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 to 120 as though fully set forth herein.

122.   At all times relevant to this complaint, Government Code § 12900 *et seq.* and its implementing regulations were in full force and effect.

123.   It is unlawful for an employer to fail to prevent discrimination and harassment on account of race, color, ancestry or sex from occurring in the workplace. (Cal. Govt. Code §

-16-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

12940(k)).

124.    In engaging in the conduct described above, Defendants failed to engage in any reasonable steps to prevent discrimination in the workplace.

125.    Defendants' wrongful conduct has caused plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin to suffer and continue to suffer injury including, but not limited to, loss of income and benefits, severe emotional distress and other damages.

126.    In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin with malice, oppression and fraud and with willful and conscious disregard to Plaintiffs' rights, entitling each plaintiff to awards of punitive damages.

## FOURTH CAUSE OF ACTION

## RETALIATION

### [All Plaintiffs Against All Defendants]

127.    Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 to 126 as though fully set forth herein.

128.    At all times relevant to this complaint, Government Code § 12900 *et seq.* and its implementing regulations were in full force and effect.

129.    It is unlawful for an employer to retaliate, terminate or discriminate against a person in compensation or in the terms, conditions or privileges of employment because that person has opposed any practices forbidden by the Fair Employment and Housing Act.    (Cal. Govt. Code § 12940(h)).

130.    As set forth above, plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin complained about pervasive discrimination on behalf of themselves and each other.

-17-

131.    As set forth above, Plaintiffs' participation in protected activities was a
motivating factor in Defendants decision to harass, retaliate against and/or otherwise
discriminate against Plaintiffs.

132.    Defendants' wrongful conduct has caused plaintiffs Coleen Colombo, Isabel
Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin to
suffer and continue to suffer injury including, but not limited to, loss of income and benefits,
severe emotional distress and other damages.

133.    In doing the things alleged herein, Defendants' conduct was despicable.
Defendants acted toward plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James,
Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin with malice, oppression and fraud
and with willful and conscious disregard to Plaintiffs' rights, entitling each plaintiff to awards of
punitive damages.

## FIFTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### [All Plaintiffs Against All Defendants]

134.    Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 through 133 as
though fully set forth herein.

135.    Defendants, in the conduct set forth above, engaged in outrageous behaviors.  By
such conduct, Defendants intended to cause each Plaintiff emotional distress, or engaged in
conduct with reckless disregard of the probability of causing Plaintiffs emotional distress, or
both.

136.    As to plaintiff Coleen Colombo, Defendants' conduct was outrageous, and by
such conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct
with reckless disregard of the probability of causing Plaintiff emotional distress, or both.

137.    As to plaintiff Isabel Guajardo, Defendants' conduct was outrageous, and by such
conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct with

-18-

reckless disregard of the probability of causing Plaintiff emotional distress, or both.

138.    As to plaintiff Linda Howard-James, Defendants' conduct was outrageous, and by such conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct with reckless disregard of the probability of causing Plaintiff emotional distress, or both.

139.    As to plaintiff Cheryl McNeil, Defendants' conduct was outrageous, and by such conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct with reckless disregard of the probability of causing Plaintiff emotional distress, or both.

140.    As to plaintiff Michelle Seymour, Defendants' conduct was outrageous, and by such conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct with reckless disregard of the probability of causing Plaintiff emotional distress, or both.

141.    As to plaintiff Sylvia Vega-Sutfin, Defendants' conduct was outrageous, and by such conduct, Defendants intended to cause Plaintiff emotional distress, or engaged in conduct with reckless disregard of the probability of causing Plaintiff emotional distress, or both.

142.    Each of the plaintiffs suffered severe emotional distress.

143.    The outrageous conduct of the Defendants was a substantial factor of the severe emotional distress suffered by Plaintiffs.

144.    Defendants' wrongful conduct has caused plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin to suffer and continue to suffer injury including, but not limited to, loss of income and benefits, severe emotional distress and other damages.

145.    In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin with malice, oppression and fraud and with willful and conscious disregard to Plaintiffs' rights, entitling each plaintiff to awards of punitive damages.

-19-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

## SIXTH CAUSE OF ACTION

### DEFAMATION

**[All Plaintiffs Against BNC, DOES 1-50, Nick Murphy and Joe Pennington]**

146.    Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 to 145 as though fully set forth herein.

147.    During the course and scope of their employment, BNC employees including but not limited to Sacramento branch supervising account manager, Linda Harris and branch managers defendant Nick Murphy and defendant Joe Pennington recklessly and intentionally published false information to others disparaging plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Sylvia Vega-Sutfin and on information and belief Michelle Seymour's work performance and abilities.

148.    These false publications are per se defamatory.

149.    Third persons to whom BNC employees recklessly and intentionally published defamatory statements about Plaintiffs include, but are not limited to persons within the company and others within the professional community.

150.    The false and defamatory statements directly injured Plaintiffs' personal, business and professional reputations.

151.    Defendants' false publications about Plaintiffs were made with malice and with intent to injure Plaintiffs, damage their reputations, and interfere with their employment.

152.    As a proximate result of Defendants' false publications, Plaintiffs have suffered injury to their personal, business and professional reputations, and have suffered severe emotional distress, loss of employment and significant economic loss in the form of lost wages and future earnings.

153.    In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard to Plaintiffs' rights, entitling each Plaintiff to an award of punitive damages.

-20-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

### SEVENTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### [All Plaintiffs Against Defendant BNC Mortgage Inc.]

154.    Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 to 153 as though fully set forth herein.

155.    It is the public policy of the State of California to prohibit employers from discharging employees in a discriminatory manner, harassing employees, or retaliating against employees for participating in legally protected activities.  (Cal. Govt. Code, § 12900 *et seq*.)

156.    It is the public policy of the State of California to encourage employees to complain about fraudulent, deceptive, unfair or unethical business practices.  (Cal. Bus. & Prof. Code §§ 17200, 17500 *et. seq*.; Cal. Civ. Code §§ 1572, 1709, 1710; Cal. Pen. Code §§ 484, 536.)

157.    As set forth above, discrimination was a motivating factor in the terminations, harassment and retaliation suffered by plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin.

158.    As set forth above, Plaintiffs' participation in protected activities was a motivating factor in Defendants decision to harass, retaliate against and/or otherwise discriminate against Plaintiffs.

159.    Defendants' wrongful conduct has caused plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin to suffer and continue to suffer injury including, but not limited to, loss of income and benefits, severe emotional distress and other damages.

160.    In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiffs Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin with malice, oppression and fraud and with willful and conscious disregard to Plaintiffs' rights, entitling each Plaintiff to awards of

-21-

1    punitive damages.

2    ## EIGHTH CAUSE OF ACTION

3    ### BREACH OF IMPLIED AND/OR EXPRESS CONTRACT OF CONTINUED

4    ### EMPLOYMENT

5    **[All Plaintiffs Against Defendant BNC Mortgage Inc.]**

6    161.    Plaintiff re-incorporates and repeat the allegations in paragraphs 1 to 160 as

7    though fully set forth herein.

8    162.    Based on oral and/or written representations, promises and/or conduct of the

9    defendant, Plaintiffs had employment contracts with Defendant that they would be employed by

10    Defendant so long as their performance was satisfactory and that Defendant would not discharge

11    them without good cause.

12    163.    The terms of the employment contract included but were not limited to, the

13    following: Defendant would not constructively discharge Plaintiff without good cause and fair

14    warning, based on objective, reasonable job evaluations of Plaintiff.

15    164.    As set forth above, notwithstanding the promise to terminate the employment

16    contract only for good cause, Plaintiffs' employment was constructively terminated.

17    165.    Defendants' wrongful conduct has caused Plaintiffs to suffer and continue to

18    suffer injury including, but not limited to, loss of income and benefits, severe emotional distress

19    and other damages which they would have received had Defendants not breached the

20    employment agreement with Plaintiffs, in an amount to be established at trial.

21

22    ## NINTH CAUSE OF ACTION

23    ### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

24    **[All Plaintiffs Against Defendant BNC Mortgage Inc.]**

25    166.    Plaintiffs re-incorporate and repeat the allegations in paragraphs 1 to 165 as

26    though fully set forth herein.

27

28

-22-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

167.    The employment agreement referred to above contained an implied covenant of good faith and fair dealing, which obligated Defendants to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act which would prevent or impede Plaintiffs from performing any or all of the conditions of the agreement to be performed by them, and to refrain from any act that would prevent, impede or deprive Plaintiffs of the benefits of the employment agreement.

168.    Defendants were required to fairly, honestly and reasonably perform the terms and conditions of the employment agreement.

169.    Defendants acted in bad faith and breached the implied covenant of good faith and fair dealing under the employment agreement when they harassed, discriminated and retaliated against Plaintiffs and created a work environment so hostile that Plaintiffs could not perform their jobs.

170.    Plaintiffs performed all the duties and conditions of the employment agreement.

171.    Defendants knew that Plaintiffs had fulfilled all duties and conditions of the employment agreement.

172.    Plaintiffs' constructive discharge from employment by Defendants was wrongful, in bad faith, arbitrary and unfair, and therefore in breach of said covenant because Plaintiffs were discharged without just, good or legitimate cause and/or because Plaintiffs were discharged from their employment for making protected disclosures and for discriminatory reasons.

173.    Defendants' wrongful conduct has caused plaintiffs Sylvia Vega-Sutfin and Isabel Guajardo to suffer and continue to suffer injury including, but not limited to, loss of income and benefits, severe emotional distress and other damages which they would have received had Defendants not breached the employment agreement with Plaintiffs, in an amount to be established at trial.

-23-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS Coleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Michelle Seymour and Sylvia Vega-Sutfin respectfully request relief as follows:

1. For special and economic damages, including back pay and front pay, benefits and for consequential damages, for all causes of action;

2. For general and non-economic damages for all causes of action;

3. For punitive damages;

4. For costs and attorneys fees, under California Government Code § 12965, or Cal. Civ. Proc. Code § 1021.5, or both, including a contingency fee enhancement beyond the lodestar in accordance with *Ketchum v. Moses* (2001) 24 Cal.4th 1122, and related authorities;

4. For prejudgment interest at the prevailing legal rate;

5. For such other and further relief as the Court may deem proper.

DATED: November 7, 2005

GWILLIAM, IVARY, CHIOSSO,
CAVALLI & BREWER


By: _____
J. GARY GWILLIAM
MONIQUE G. MORALES
Attorneys for Plaintiffs

72865

-24-

Complaint for Damages
Colombo, et al. v. BNC Mortgage, et al., Case No.



1   J. GARY GWILLIAM, Esq. (State Bar No.33430)
    RANDALL E. STRAUSS, Esq. (State Bar No. 168363)
2   GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
    1999 Harrison Street, Suite 1600
3   Oakland, CA 94612-3528
    Telephone: (510) 832-5411
4   Facsimile: (510) 832-1918

5
    Attorney for Plaintiffs
6

7

8

9
                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                                COUNTY OF SACRAMENTO
11
    COLEEN DENISE COLOMBO; ISABEL              Case No.: 05AS05161
12  GUAJARDO; LINDA HOWARD-JAMES;
    CHERYL McNEIL; MICHELLE SEYMOUR;           **PLAINTIFFS' DOE AMENDMENT**
13  SYLVIA VEGA-SUTFIN,                        **REGARDING LEHMAN BROTHERS**
                                               **INC. AS DOE 1**
14              Plaintiffs,

15  vs.

16  BNC MORTGAGE INC.; JOE
    PENNINGTON; DANIEL KEENAN; NICK
17  MURPHY; and DOES 1-100, inclusive,

18          Defendants .                    /

19

20       Plaintiffs COLEEN DENISE COLOMBO; ISABEL GUAJARDO; LINDA HOWARD-

21  JAMES; CHERYL McNEIL; MICHELLE SEYMOUR; SYLVIA VEGA-SUTFIN, hereby amend

22  the Complaint as follows:  Lehman Brothers, Inc. as Doe 1.

23

24  DATED: February 28, 2008

25                                  GWILLIAM, IVARY, CHIOSSO,
                                    CAVALLI & BREWER
26
                            By:     J. Gary Gwilliam
27                                  J. GARY GWILLIAM
                                    Attorneys for Plaintiffs
28  90595

                                           -1-
                            Plaintiffs' Doe Amendment
              COLOMBO, et al. v. BNC MORTGAGE, et al., Case No. 05AS05161

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

## PROOF OF SERVICE

1

2    I, Marilyn Gee-Cartwright, declare:

3        I am employed in the city of Oakland, County of Alameda, California. I am over the age
of 18 years and not a party to the within action. My business address is GWILLIAM, IVARY,
4    CHIOSSO, CAVALLI & BREWER 1999 Harrison Street, Suite 1600, Oakland, CA 94612-3528.

5        On March 17, 2008, I served the attached:

6        • **PLAINTIFFS' DOE AMENDMENT REGARDING LEHMAN BROTHERS INC. AS DOE 1 (WITH
          PROOF OF SERVICE)**

7
on the parties in this action by placing true and correct copies thereof in sealed packages,
8    addressed as follows:

9    Robert S. Shwarts, Esq.            Telephone: 415/773-5700
     Orrick, Herrington & Sutliffe      Fax: 415/773-5759
10   The Orrick Building
     405 Howard Street
11   San Francisco, CA 94105-2669

12   Alexander M. Sperry, Esq.          Telephone: 916/447-9200
     Orrick, Herrington & Sutcliffe     Fax: 916/329-4900
13   400 Capitol Mall
     Suite 3000
14   Sacramento, CA 95814-4497

15   [ X ] (BY U.S. MAIL) I placed such sealed envelope, with postage thereon fully prepaid for first-
         class mail, for collection and mailing at GWILLIAM, IVARY, CHIOSSO, CAVALLI &
16       BREWER, Oakland, California, following ordinary business practices. I am readily familiar
         with the practice of GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER for collection
17       and processing of correspondence, said practice being that in the ordinary course of business,
         correspondence is deposited in the United States Postal Service the same day as it is placed for
18       collection.

19   [ ] (BY PERSONAL SERVICE) I caused each such envelope to be delivered by hand to the
         addressee as noted above.
20   [ ] (VIA FEDERAL EXPRESS) I caused each such envelope to be delivered via Federal Express
         overnight service to the addressee(s) noted above.
21   [ ] (VIA FACSIMILE) I caused each such document to be sent via facsimile to the above
22       facsimile number(s).
         I declare under penalty of perjury under the laws of the State of California that the
23   foregoing is true and correct.

24       Executed at Oakland, California, on March 17, 2008.

25

26   75998                                      Marilyn Gee-Cartwright

27

28

-1-