# Exhibit 27

2014 WL 2116915 Page 1
[2014] EWHC 1674 (Comm) Official Transcript [2014] EWHC 1674 (Comm) Official Transcript

© 2014 Sweet & Maxwell

**ABM Amro Commerical Finance Plc v McGinn**

**Queen's Bench Division (Commercial Court)**

**23 May 2014**

**Case Analysis**

**Where Reported**   [2014] EWHC 1674 (Comm);  Official Transcript;

**Case Digest**

**Subject:** Banking and finance

**Keywords:** Variation, Summary judgments, Interpretation, Debts, Assignment, Indemnities, Administration, Agreements

   **Abstract:** The applicant company (X) applied for summary judgment on its claim against the respondents (Y) for sums said to be due under deeds of indemnity.

   X had purchased the debts of its client (J), an importer and distributor of food products, pursuant to an agreement dated June 2003. The agreement was a confidential invoice discounting agreement under which X purchased all the present and future debts, which vested automatically in X upon their coming into existence. Y were the directors of J. Each of them entered into a deed of indemnity with X, which were dated May 2, 2007 in the case of the first and second respondents (R1 and R2), and December 10, 2008 in the case of the third respondent (R3). In May 2009, J entered administration and many debts were disputed. When X had exhausted the collection process, the administrators acknowledged in writing that J was indebted to X in the sum of some £9 million. X commenced proceedings in April 2012 to recover that sum from Y under the deeds of indemnity. X subsequently served certificates of indemnity on Y which it contended were conclusive against them by virtue of each of the deeds of indemnity. X recognised that there was a major dispute of fact as to the collection process and its effectiveness, which could not be resolved on a summary judgment application. However, its case on the application did not depend on the determination of such disputes of fact. The issues for determination were whether (i) upon their true construction, the deeds of indemnity were contracts of indemnity or performance bonds such that the liability of Y was primary rather than secondary so as to prevent them from relying on defences available to J; (ii) the deeds of indemnity were discharged by subsequent material variations of the agreement; (iii) the parties agreed on or about December 8, 2008 that the agreement would be supported by new personal guarantees in substitution for the deeds of indemnity signed by R1 and R2; (iv) proofs of delivery constituted financial records within the meaning of the agreement; (v) X had failed to collect the debts and/or taken proper steps to enforce them.

© 2014 Thomson Reuters.

08-13555-mg    Doc 44878-2    Filed 06/26/14    Entered 06/26/14 13:45:13    Exhibit 27
Pg 3 of 5

2014 WL 2110915
[2014] EWHC 1674 (Comm) Official Transcript

Page 2
[2014] EWHC 1674 (Comm) Official Transcript

Y submitted that there were a number of variations to the agreement over time, which were material and which discharged them from the deeds of indemnity pursuant to the rule in Holme v Brunskill (1878) 3 Q.B.D. 495.

A claimant was granted summary judgment in its claim for monies due from the directors of a company in administration. The claimant had purchased the debts of the insolvent company pursuant to a confidential invoice discounting agreement and the directors had entered into deeds of indemnity with the claimant.

Judgment for claimant. (1) On the true construction of the deeds of indemnity, Y's liability was primary rather than secondary and accordingly a defence based upon the rule in *Holme v Brunskill* was not available to them, *Holme* considered. It followed that, irrespective of the factual position which seemed to demonstrate clearly that R1 and/or R2 were aware of and consented to the allegedly material variations, Y's case that they were discharged from liability under the deeds of indemnity by virtue of those variations had no real prospect of success at trial (see paras 23, 37 of judgment). (2) Since R3's deed of indemnity was not signed until December 10, the personal guarantees given by R1 and R2 two days earlier could not discharge him from liability under that deed, whatever their effect on R1 and R2 (para.38). (3) Proofs of delivery did fall within the definition of financial records in the agreement because they were "other information pertaining to a debt". However, if that was not correct, they were on any view "any other records or documents" within the meaning of the agreement (para.39). (4) The suggestion that X had failed to mitigate its loss or caused its own loss was misconceived. Under the agreement it had purchased and thus owned the entire debt, and the agreement made it clear that it was in X's discretion whether and how to enforce any part of the overall debt. In the circumstances, it could not be said that X was in breach of the agreement for failing to collect particular debts. Equally, failure to collect debts did not give rise to a defence of failure to mitigate under a contract of indemnity, Royscot Commercial Leasing Ltd v Ismail Independent, May 17, 1993 and Codemasters Software Co Ltd v Automobile Club de l'Ouest [2009] EWHC 3194 (Ch), [2010] F.S.R. 13 considered. The contention that X had caused its own loss by failing to collect all outstanding debts was entirely circular; it was no more than a contention of failure to mitigate by another name. A party providing an indemnity could not challenge his obligation to pay under the contract of indemnity which was a claim in debt, by reference to principles relating to the assessment of damages for breach of contract which had no application to debts, *Codemasters* considered. In any event, in circumstances where J, through its administrators, had acknowledged the overall indebtedness and X had certified the amount payable under the agreement, in the absence of a manifest error, which there was not, the agreement precluded any argument which Y sought to put forward to the effect that X had caused its own loss (paras 57- 59). (5) Accordingly, Y had no real prospect of success in any of their defences on the issues on which X had sought summary judgment (para.60).

Judgment for claimant

**udges:** Flaux, J.

© 2014 Thomson Reuters.

**Counsel:** For I :the applicant: Simon Mills For I :the respondents: Kavan Gunaratna

**Solicitors:** For I :the applicant: Squire Sanders (UK) LLP For I :the respondents: Coyle White Devine

## Appellate History

### Related Cases

### Significant Cases Cited

**North Shore Ventures Ltd v Anstead Holdings Inc**
[2011] EWCA Civ 230; [2012] Ch. 31; [2011] 3 W.L.R. 628; [2011] 2 All E.R. (Comm) 1024; [2011] Bus. L.R. 1036; [2011] 2 Lloyd's Rep. 45; [2011] B.L.R. 757; Official Transcript
CA (Civ Div)

**considering**
**Codemasters Software Co Ltd v Automobile Club de l'Ouest**
[2009] EWHC 3194 (Ch); [2010] F.S.R. 13; Official Transcript
Ch D (Patents Ct)

**Van der Merwe v IG Capital LLC**
[2008] EWCA Civ 542; [2008] 2 All E.R. (Comm) 1173; [2008] 2 Lloyd's Rep. 187; Times, June 25, 2008; Official Transcript
CA (Civ Div)

**Marubeni Hong Kong and South China Ltd v Mongolia**
[2005] EWCA Civ 395; [2005] 1 W.L.R. 2497; [2005] 2 All E.R. (Comm) 288; [2005] 2 Lloyd's Rep. 231; [2005] 1 C.L.C. 540; Times, April 22, 2005; Official Transcript
CA (Civ Div)

**considering**
**Royscot Commercial Leasing Ltd v Ismail**
Independent, May 17, 1993; Official Transcript
CA (Civ Div)

**considering**
**Holme v Brunskill**
(1877-78) L.R. 3 Q.B.D. 495
CA

### Cases Citing This Case

### Legislation cited

Civil Procedure Rules 1998 (SI 1998/3132) Pt 24

© 2014 Thomson Reuters.

Insolvency Act 1986 (c.45)

**ournal Articles**

**Boo s**

END OF DOCUMENT

© 2014 Thomson Reuters.