# Exhibit 28

2009 WL 3805458                                                                                                    Page 1
[2009] EWHC 2965 (Ch) Official Transcript [2009] EWHC 2965 (Ch) Official Transcript

© 2014 Sweet & Maxwell

### CDV Software Entertainment AG v Gamecock Media Europe Ltd

Chancery Division

20 November 2009

Case Analysis

| **Where Reported** | [2009] EWHC 2965 (Ch); Official Transcript; |

Case Digest

**Subject:** Contracts

**Keywords:** Interpretation, Termination, Late delivery, Repudiation

   **Abstract:** The claimant company (C) sought the repayment of sums which it had paid out under a publishing and distribution agreement with the first defendant company (G) upon the purported termination of that agreement in respect of certain video games.

   C, a distributor of video games, and G, a video games publisher, had entered into a five-year agreement under which G granted C exclusive distribution and other rights in respect of seven video games in the United Kingdom and other countries. C paid very substantial advances to G in respect of the products and had, in addition, incurred marketing and other costs in preparation for their launch and distribution. C subsequently claimed that G was late in delivering a number of the products, and it sought to exercise a contractual right under the agreement by terminating it in respect of four of the video games, but leaving the agreement in place in relation to the remaining three. The agreement expressly provided that, in the event that C exercised its partial termination right, it would be entitled to be repaid the advances in respect of the terminated games, together with certain wasted costs, and that C would retain the rights to those products unless and until those sums were repaid.

   G admitted the late delivery of one game and accepted that it was liable to repay the advances in respect of that product, but it denied late delivery in respect of the other three games ("Dementium", "Velvet Assassin" and "Mushroom Men") and further contended that, in any event, C had waived its rights or affirmed the agreement. G submitted that, by terminating the agreement, C had repudiated it, thus entitling G to bring it to an end by accepting that repudiatory breach. Since that purported termination of the agreement, G and the second and third defendants (S) had set about exploiting the products. C contended that G had thereby breached the agreement, and that S had induced such breaches by G or infringed C's intellectual property rights as it was the exclusive licensee under the agreement. The court was required to determine, inter alia (i) G's delivery obligations under the terms of the agreement;

© 2014 Thomson Reuters.

(ii) the circumstances in which C was entitled to exercise a right of partial termination of the agreement; (iii) whether C was entitled to exercise a right of termination in respect of the three remaining terminated games; (iv) whether, by purporting partially to terminate the agreement, C had renounced or repudiated it.

On the proper construction of a publishing and distribution agreement concerning a number of video games, following the late delivery of two of the games by the publisher, the distributor had been entitled to exercise its right of partial termination of the agreement and recover advances paid in respect of the terminated games together with certain wasted costs.

Judgment for claimant in part. (1) When the language used in an instrument gave rise to difficulties of construction, the court had to decide what a reasonable person would have understood the parties to have meant by using the language which they did, Chartbrook Ltd v Persimmon Homes Ltd [2009] UKHL 38, [2009] 1 A.C. 1101 applied. In the instant case, although the agreement had been drafted clumsily, a reasonable person would have understood the parties to have meant that G was required to have obtained approval from the games' console manufacturer or C (as the case might be), and to have delivered the master versions of the game to C by, at the latest, the last day of the month specified in a schedule to the agreement. In the light of that construction, G had delivered the three remaining terminated games late. (2) The practical way in which the agreement was expected to operate was that G complied with its obligations to C so far as development schedules and delivery of the game were concerned, and if unforced and reasonable delays in development occurred, then G had to face up to that fact and agree a revised delivery date, which might, or might not, trigger C's partial termination rights. Prior refusal by C to consent to revised delivery dates was not required for the right of partial termination to be exercisable, nor was C required to exercise its partial termination rights within a reasonable time. (3) In the circumstances, C was not entitled to exercise its right of partial termination in respect of "Dementium", as, by its conduct, C had demonstrated that it had accepted delays in the development and delivery of that game and therefore waived its right to partial termination. However, no such affirmation of the delays had occurred in respect of "Velvet Assassin" and "Mushroom Men", and C was, accordingly, entitled to exercise its right of termination in respect of those two games and to recover the advances paid as well as sums in respect of wasted costs. (4) Although C was wrong about its entitlement to terminate the agreement in relation to "Dementium", it had not, by purporting to do so, renounced or repudiated the agreement. Far from repudiating the contract, C had relied upon it and invoked one of its contractual provisions, in order to exercise its right of partial termination. The position which it adopted was that the agreement remained fully in force, except to the extent that it had been terminated in respect of particular products. Accordingly, C did not repudiate the agreement and G was accordingly not entitled to treat itself as discharged from the agreement on the alleged grounds of C's repudiatory breach.

Judgment for claimant in part

 udges: Gloster, J DBE

**Counsel:**          For I :the claimant: Robert Howe QC, Mark Vinall For I :the defendants:

© 2014 Thomson Reuters.

Duncan McCall QC, Benjamin Pilling

**Solicitors:** For I :the claimant: Harbottle & Lewis LLP For I :the defendants: Bird & Bird LLP

## Appellate istory

### Related Cases

**CDV Software Entertainment AG v Gamecock Media Europe Ltd**
[2010] EWHC 159 (Ch); Official Transcript; Ch D (Patents Ct)

### Significant Cases Cited

applying
**Chartbrook Ltd v ersimmon omes Ltd**
[2009] UKHL 38; [2009] 1 A.C. 1101; [2009] 3 W.L.R. 267; [2009] Bus. L.R. 1200; [2009] 4 All E.R. 677; [2010] 1 All E.R. (Comm) 365; [2009] B.L.R. 551; 125 Con. L.R. 1; [2010] 1 P. & C.R. 9; [2009] 3 E.G.L.R. 119; [2009] C.I.L.L. 2729; [2009] 27 E.G. 91 (C.S.); (2009) 153(26) S.J.L.B. 27; [2009] N.P.C. 87; [2009] N.P.C. 86; Times, July 2, 2009; Official Transcript
HL

**K MG v Network Rail nfrastructure Ltd**
[2007] EWCA Civ 363; [2007] Bus. L.R. 1336; [2008] 1 P. & C.R. 11; [2007] L. & T.R. 32; (2007) 151 S.J.L.B. 611; [2007] N.P.C. 51; Official Transcript
CA (Civ Div)

**Woodar nvestment Development Ltd v Wimpey Construction K Ltd**
[1980] 1 W.L.R. 277; [1980] 1 All E.R. 571; (1980) 124 S.J. 184
HL

**Reardon Smith Line Ltd v ansen angen he Diana rosperity**
[1976] 1 W.L.R. 989; [1976] 3 All E.R. 570; [1976] 2 Lloyd's Rep. 621; (1976) 120 S.J. 719
HL

**ank of Credit and Commerce nternational SA n Li uidation v Ali No**
[2001] UKHL 8; [2002] 1 A.C. 251; [2001] 2 W.L.R. 735; [2001] 1 All E.R. 961; [2001] I.C.R. 337; [2001] I.R.L.R. 292; [2001] Emp. L.R. 359; (2001) 98(15) L.S.G. 32; (2001) 151 N.L.J. 351; (2001) 145 S.J.L.B. 67; (2001) 145 S.J.L.B. 70; Times, March 6, 2001; Official Transcript
HL

**Ateni Maritime Corp v Great Marine Ltd he Great Marine No**
[1990] 2 Lloyd's Rep. 245
QBD (Comm)

© 2014 Thomson Reuters.

**niversal Cargo Carriers Corp v Citati  No**
[1957] 2 Q.B. 401; [1957] 2 W.L.R. 713; [1957] 2 All E.R. 70; [1957] 1 Lloyd's Rep. 174; (1957) 101 S.J. 320
QBD

**Lidl  K Gmb  v  ertford  oods Ltd**
[2001] EWCA Civ 938; Official Transcript
CA (Civ Div)

**Walker v  irmingham City Council**
[2007] UKHL 22; [2007] 2 A.C. 262; [2007] 2 W.L.R. 1057; [2007] 3 All E.R. 445; [2007] H.L.R. 38; [2008] 1 P. & C.R. 16; [2007] L. & T.R. 24; [2007] 2 E.G.L.R. 58; [2007] 21 E.G. 131 (C.S.); (2007) 157 N.L.J. 742; (2007) 151 S.J.L.B. 673; [2007] N.P.C. 61; [2007] 2 P. & C.R. DG10; Times, May 17, 2007; Official Transcript
HL

**E imenco  andels AG v  artredereit  ro Chief and Levantes Maritime Corp  he  ro Chief**
[1983] 2 Lloyd's Rep. 509; (1983) 133 N.L.J. 642
QBD (Comm)

**ele2  nternational Card Co SA v Kub 2  echnology Ltd  ormerly C  Calling Card Co  reland  Ltd**
[2009] EWCA Civ 9; Official Transcript
CA (Civ Div)

**Garrud E  p Newitt  Re**
(1880-81) L.R. 16 Ch. D. 522
CA

**Maple  lock Co Ltd v  niversal  urniture  roducts  Wembley  Ltd**
[1934] 1 K.B. 148
CA

**Mediterranean Salvage   owage Ltd v Seamar  rading  Commerce  nc  he Re born**
[2009] EWCA Civ 531; [2010] 1 All E.R. (Comm) 1; [2009] 2 Lloyd's Rep. 639; [2009] 1 C.L.C. 909; (2009) 159 N.L.J. 898; Official Transcript
CA (Civ Div)

** R  rench Ltd v Redbus LMDS Ltd**
[2005] EWHC 1436 (Ch); [2006] F.S.R. 13; Official Transcript
Ch D

**East v  antiles  lant  ire**
[1982] 2 E.G.L.R. 111; (1982) 263 E.G. 61; Official Transcript
CA (Civ Div)

**Takitota v Attorney General**
[2009] UKPC 11; 26 B.H.R.C. 578; Official Transcript
PC (Bah)

**Scandinavian Trading Tanker Co AB v Flota Petrolera Ecuatoriana The Scaptrade**
[1981] 2 Lloyd's Rep. 425; [1981] Com. L.R. 214
QBD (Comm)

**Chilean Nitrate Sales Corp v Marine Transportation Co Ltd The Hermosa**
[1982] 1 Lloyd's Rep. 570; Times, March 4, 1982
CA (Civ Div)

**Mannai Investment Co Ltd v Eagle Star Life Assurance Co Ltd**
[1997] A.C. 749; [1997] 2 W.L.R. 945; [1997] 3 All E.R. 352; [1997] C.L.C. 1124; [1997] 1 E.G.L.R. 57; [1997] 25 E.G. 138; [1997] 24 E.G. 122; (1997) 16 Tr. L.R. 432; [1997] E.G. 82 (C.S.); (1997) 94(30) L.S.G. 30; (1997) 147 N.L.J. 846; (1997) 141 S.J.L.B. 130; [1997] N.P.C. 81; Times, May 26, 1997
HL

**Investors Compensation Scheme Ltd v West Bromwich Building Society (No.1)**
[1998] 1 W.L.R. 896; [1998] 1 All E.R. 98; [1998] 1 B.C.L.C. 531; [1997] C.L.C. 1243; [1997] P.N.L.R. 541; (1997) 147 N.L.J. 989; Times, June 24, 1997
HL

**Mardorf Peach & Co Ltd v Attica Sea Carriers Corp of Liberia The Laconia**
[1977] A.C. 850; [1977] 2 W.L.R. 286; [1977] 1 All E.R. 545; [1977] 1 Lloyd's Rep. 315; (1977) 121 S.J. 134
HL

## Cases Citing This Case

## Legislation cited

## Journal Articles

**Update: commercial contracts (March)**
Admissibility, Commercial contracts, Contract terms, Contractual negotiations, Drafting, Interpretation, Rectification, Without prejudice communications
S.J. 2010, 154(11), 22,24

## Books

**The Interpretation of Contracts 4th Ed. Lewison**
Chapter: Chapter 6 - Implied Terms
Documents: Section 11 - The Term Must not Contradict Any Express Term of the Contract

**The Interpretation of Contracts 4th Ed. Lewison**
Chapter: Chapter 6 - Implied Terms

© 2014 Thomson Reuters.

Documents: Section 3 - Implication of Terms as Interpretation

**Dilapidations: he Modern Law and ractice th Ed**
Chapter: Chapter 4 - The Construction of Repairing and Other Covenants Imposing Liability for Dilapidations
Documents: General Principles of Interpretation of Contracts

he nterpretation of Contracts th Ed Lewison
Chapter: Chapter 7 - The Canons of Construction
Documents: Section 8 - Construction Contra Proferentem

END OF DOCUMENT

© 2014 Thomson Reuters.