# Exhibit 30

13555-mg    Doc 44878-5    Filed 06/26/14    Entered 06/26/14 13:45:13    Exhibit
Pg 2 of 6

1910

PARKINSON
v.
GARSTANG
AND
KNOTT END
RAILWAY.

Bucknill J.

which has been caused by their breach of the duty which the statute has by s. 61 placed upon them. In the present case the county court judge has found that this gate was insufficient. There was evidence on which he could so find, and therefore in my opinion the defendants are liable. I agree with what Phillimore J. has said as to there being no evidence on which the county court judge could find that the plaintiff was guilty of contributory negligence.

*Appeal allowed.*

Solicitors for plaintiff: *Francis White & Needham, for Forshaw & Parker, Preston.*

Solicitor for defendants: *R. H. Bentley, for C. C. & D. Forrester Addie, Fleetwood.*

F. O. R.

---

1910
Feb. 15.

GRAY v. OWEN.

*Landlord and Tenant—Surrender by Operation of Law—Acceptance of Surrender under Mistake of Fact induced by Tenant—Liability of Tenant for Rent.*

The plaintiff let a house to the defendant, a naval officer, for a term of years subject to a proviso that "should the tenant be ordered away from Portsmouth by the Admiralty he may determine this agreement by giving to the landlord one quarter's notice in writing." During the continuance of the tenancy the defendant received an order from the Admiralty to join a ship for foreign service, but shortly afterwards that order was cancelled. Subsequently to the cancellation the defendant, purporting to act under the terms of the agreement and in the belief that he was thereby entitled to do so, gave the plaintiff a quarter's notice of his intention to give up possession. The plaintiff, in the belief that the defendant was at that time under orders from the Admiralty to leave, resumed possession of the house on the expiry of the notice and advertised it for sale. Subsequently the plaintiff discovered the true facts, and brought the action to recover the rent which had accrued in the interval:—

*Held,* (1.) that the defendant was under the circumstances not entitled to give the notice to terminate the tenancy; (2.) that, as the non-disclosure of the cancellation of the Admiralty's order was not fraudulent, the fact that the plaintiff accepted the notice under a mistake induced by the act of the defendant did not prevent that acceptance from working

a surrender by operation of law; but (3.) that the giving of the notice was a breach of an implied contract in respect of which the plaintiff was entitled to recover the amount of the rent due as damages.

1910

GRAY
v.
OWEN.

APPEAL from the Portsmouth County Court.

By an agreement dated March 19, 1907, the plaintiff let to the defendant, an officer in the Royal Navy, a house at Havant for a term of three years and one half-quarter from May 9, 1907, at a yearly rent of 34*l*. The agreement provided that "should the tenant be ordered away from Portsmouth by the Admiralty he may determine this agreement by giving to the landlord one quarter's notice in writing to expire on any of the usual quarter days." The defendant entered under the agreement. On February 12, 1908, he received orders from the Admiralty to join H.M.S. *Ocean*, which was ordered to the Mediterranean. As his wife was ill and he was anxious not to be separated from her, he petitioned the Admiralty to withdraw his appointment. The Admiralty gave him the alternative of taking up his appointment or of being put on half pay. The defendant elected to go on half pay. On February 20 the Admiralty cancelled their order and on March 14 they put him on half pay. On March 25, 1908, the defendant gave notice in writing to the plaintiff of his intention to give up possession of the house on June 24. In giving that notice he purported to act under the terms of the agreement, and he did so under the belief that he was entitled to give it notwithstanding the cancellation of the Admiralty's order. The plaintiff, in the belief that the defendant was then under orders to leave Portsmouth, accepted the notice. The defendant gave up possession on June 24, and the plaintiff advertised the house for sale by auction with vacant possession. Subsequently the plaintiff, having discovered the true facts, brought this action in January, 1909, to recover two quarters' rent due at Christmas, 1908. The county court judge held that, the defendant having once been ordered away from Portsmouth, the condition entitling him to give notice to quit had arisen, and that the notice was valid notwithstanding the cancellation of the order, and that even if the notice was bad the plaintiff's acceptance of possession effected a surrender by operation of law. He accordingly gave judgment for the defendant. The plaintiff appealed.

1910
———
GRAY
*v.*
OWEN.

*St. Gerrans*, for the plaintiff. The notice to quit was bad. The meaning of the agreement was that the tenant might give notice to quit if he was under orders to leave at the time of the notice given. Here, as the order to leave was cancelled before the date of the notice, the defendant was in the same position as if no order had ever been given. Secondly, there was no surrender by operation of law. Such a surrender only takes effect by way of estoppel, where the landlord has done some act inconsistent with the continuance of the tenancy disentitling him to allege that it is still continuing. But there can be no estoppel where the act of the landlord is done in ignorance of the facts, and a fortiori is this the case where the mistake of the landlord is induced by the conduct of the tenant, as was the case here.

*Rankin*, for the defendant. The defendant was under the circumstances entitled to give the notice. The order to leave was, it is true, withdrawn on February 20, but that withdrawal did not put the defendant in the same position as if it had never been made, for he was thereby put on half pay, which rendered him less able to pay the rent of the house, and he was on half pay when he gave the notice. But if the defendant is wrong on that point, it is clear that the resumption of possession by the plaintiff with the intention of putting an end to the tenancy effected a surrender by operation of law.

[PHILLIMORE J. The defendant by giving the notice induced in the mind of the plaintiff a mistaken belief that the condition on which alone the notice might be given had arisen. Can he under those circumstances be heard to say that the plaintiff is estopped from disputing the determination of the tenancy? In *Bruce* v. *Ruler* (1), where a landlord at the request of his tenant, the defendant, accepted as tenant in his stead a third person who to the knowledge of the defendant had compounded with his creditors, and the defendant did not communicate that fact to the landlord, upon the new tenant proving to be insolvent it was held that the defendant was liable to the landlord for the rent. The suppression of a fact which, had it been known to the landlord, would have caused him to refuse the third person as his tenant was a fraud which vitiated the surrender.]

(1) (1828) 2 Man. & Ry. 3.

1 K. B. KING'S BENCH DIVISION. 625

But here there was no fraud, and in the absence of fraud the non-disclosure of a fact however material cannot prevent the surrender from taking effect upon the landlord's resuming possession.

1910
GRAY
v.
OWEN.

[BUCKNILL J. We agree that the surrender of the tenancy was complete. But was not the defendant guilty of a breach of contract in giving the notice in circumstances in which he was not entitled to give it, and is he not liable in damages for that breach?]

There was no implied contract that the defendant would not give notice except in a certain event. It was for the landlord before accepting possession of the premises to satisfy himself that the occasion upon which the notice may be given has arisen.

BUCKNILL J. Though the facts of this case are somewhat novel, the rights of the parties may be determined by reference to ordinary principles. The plaintiff in March, 1907, let a house under a tenancy agreement to the defendant, who is an officer in the Navy, and by the terms of that agreement in the event of the defendant being ordered away by the Admiralty he was to be at liberty to terminate the tenancy by giving a quarter's notice to quit. On February 12 in the following year he was ordered away by the Admiralty, having been appointed to a ship which was ordered to the Mediterranean. In consequence of his wife's illness he begged the Admiralty to withdraw the appointment. He was given the option of joining the ship or being put on half pay. He chose the latter, and on February 20 his appointment was cancelled, and he was shortly afterwards put on half pay. At that time he had given no notice to give up possession, and it was not until March 25, when there was no existing order of the Admiralty ordering him away from Portsmouth, that he gave the plaintiff notice. The first question is whether under those circumstances he was entitled to give the notice. I think not, for it was not in accordance with the terms of the agreement, as he was not at that time under orders to leave. Therefore I am of opinion that the notice was bad, though in the absence of any finding of fraud we are bound to assume that it was given honestly and under a misunderstanding as to his rights under the agreement. It was

13555-mg   Doc 44878-5   Filed 06/26/14   Entered 06/26/14 13:45:13   Exhibit
Pg 6 of 6
13555-mg   Doc 44878-5   Filed 06/26/14   Entered 06/26/14 13:45:13   Exhibit
Pg 6 of 6

1910

GRAY
v.
OWEN.

Bucknill J.

indeed suggested that as the defendant was in a worse pecuniary position by being put on half pay, and it was a condition of the withdrawal of the Admiralty's order that he should be put on half pay, he could not fairly be treated as being in the same position as if the order had never been made. We cannot accept that contention. It does not get over the difficulty that at the time of the notice there was no existing order to leave. The notice then being bad, we have to decide whether the defendant in giving it was guilty of a breach of his agreement. We think he was. The liberty given by the agreement to the defendant to terminate the tenancy upon the occurrence of one specified event excludes his liberty to do so except in that event, and the agreement must be read as containing an implied undertaking by him not to give notice except in that event. On receiving the notice the plaintiff, in the belief that the notice was a valid one, accepted it, and, upon the defendant giving up possession at the quarter day, advertised the house for sale with vacant possession. We have already expressed the opinion that, as the defendant in giving the notice had no intention to deceive, the fact of the plaintiff having been misled by the defendant's act did not prevent his acceptance of the surrender from operating as a determination of the tenancy, and consequently the defendant is not liable for rent as though the tenancy were subsisting. But the acceptance of the surrender does not preclude the plaintiff from suing for damages for the breach by the defendant of the contract. It did not destroy the existing cause of action. If the plaintiff had succeeded in letting the house at the same or a higher rent, of course he would have only been entitled to nominal damages, but as he did not succeed in letting or selling it he is entitled to recover the amount of the rent which he has lost. The appeal must be allowed.

PHILLIMORE J. concurred.

*Appeal allowed.*

Solicitors for plaintiff: *Fielder, Le Riche & Co.*, for *Biscoe-Smith & Blagg, Portsmouth.*

Solicitors for defendant: *Mills & Morley*, for *B. Kent, Portsmouth.*

J. F. C.