# Exhibit 32

**Neutral Citation Number: [2009] EWHC 3389 (Ch)**

Case No.536 of 2009

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT

Royal Courts of Justice

Monday, 7th December 2009

Before:

HIS HONOUR JUDGE PURLE QC

(sitting as a High Court Judge)

- - - - - - - - - - - - - - - - - - - -

B E T W E E N :

| GOLDACRE (OFFICES) LIMITED | Applicant |
|---|---|
| - and - | |
| NORTEL NETWORKS UK LIMITED (in administration) | Respondent |

- - - - - - - - - - - - - - - - - - - -

*Transcribed by **BEVERLEY F. NUNNERY & CO***
*Official Shorthand Writers and Tape Transcribers*
*Quality House, Quality Court, Chancery Lane, London WC2A 1HP*
*Tel:  020 7831 5627   Fax:  020 7831 7737*
*info@beverleynunnery.com*

- - - - - - - - - - - - - - - - - - - -

MR. S. JOURDAN QC and MISS. B. LEAHY (instructed by Olswang LLP) appeared on behalf of the Applicant.

MR. W. TROWER QC and MR. D. ALLISON (instructed by Herbert Smith) appeared on behalf of the Respondent.

- - - - - - - - - - - - - - - - - - - -

**J U D G M E N T**

JUDGE PURLE:

1    In this case I have to decide whether the rent that is soon to fall due, and future rent thereafter, in respect of property held by the respondent company (now in administration) in Harlow is payable as an expense of the administration. There are two long leases, both pre-dating the date of the administration. The premises in question have, since the date of the administration, been used to an extent by the administrators for the more efficient conduct of the administration and rent has been paid to date, albeit late so far as the last September quarter was concerned. It is accepted on behalf of the administrators that interest in respect of that late payment will be paid. The real issue therefore is a future one, but the problem is a pressing one because the commercial needs of the applicant, who is the landlord of the premises in question, require an immediate decision. Moreover, the administrators wish to know where they stand, as that may inform their future conduct of the administration. I would ideally have wished to take more time to prepare this judgment, but the parties expressed a preference for speed of decision rather than perfection of language. I have nevertheless reached a clear view and have, in approving the transcript, taken the opportunity of refining my reasoning.

2    Although the administrators are using part of the premises in respect of both of the demises in question, they are only using part and it is a relatively small part. There are, in addition, sub-tenants in respect of other parts. As regards those sub-tenants, notices have been served under section 6 of the Law of Distress Amendment Act 1908, having the effect of transferring the company's right to receive rent to the landlord. As it happens, some rents are still coming in to the administrators, as I understand the position, but they are passing those over to the landlord. In those circumstances, it cannot be said that the company in administration is, in any realistic sense, in receipt of rents and profits, so that possession of the premises in that sense can be ignored. What I am concerned with is the relative minor use that the administrators are making of the properties in question.

3    Mr. Jourdan, for the applicant landlord, submits that upon established authority once the administrators decide, as they have done, to continue to use any part of the properties for the beneficial outcome of the administration, they are liable to pay the rent as it falls due in full as an administration expense. He says that this follows nowadays from the insolvency rules that were adopted following the enactment of the Enterprise Act 2000, and that the previous decision of Blackburne J in *In Re Salmet International Ltd*. [2001] BCC 796 should not be followed in relation to this administration, which is governed by the Insolvency Rules 1986 as now amended. He prays in aid the more recent decision of David

Richards J in *Exeter City Council v Bairstow* [2007] 4 All ER 437; [2007] 2 BCLC 455; [2007] BCC 236.  In that case David Richards J, after a careful analysis both of the rules and of the previous decision of the House of Lords in *In Re Toshoku Finance UK Plc* [2002] 1 WLR 671 (which related to a company in liquidation) held that the expenses regime set out in the rules is mandatory in the case of administrations as well as liquidations.  David Richards J was struck - in my judgment, rightly so - by the closeness of the wording between what is now rule 2.67 (applicable to administrations) with the wording in rule 4.218 considered by the House of Lords in *Toshoku*.  He held, in accordance with his ruling, that rates in an administration are payable as an administration expense. He also expressed the view that that was so in respect of unoccupied as well as occupied property, though that is no longer so as a result of subsequent delegated legislation which came into effect on 1st April 2008.  The House of Lords in *Toshoku* held that corporation tax was payable in a liquidation as a liquidation expense, as it was made necessary by statutory enactment, notwithstanding that the income which was taxed was only deemed income and not income in fact received by the company in liquidation.

4   I agree with Mr. Jourdan's submission that the matter is now to be considered exclusively by reference to the rules and that if the rental liability falls within the rules, then that is payable as a matter of mandatory obligation, not as a matter of discretion, either on the part of the administrators or on the part of the court.

5   *Toshoku*, though a case on corporation tax, considered what is referred to sometimes as the salvage principle, sometimes as the *Lundy Granite* principle, and sometimes as the liquidation expenses principle.  The main speech in the House of Lords was given by Lord Hoffmann, all other four Law Lords agreeing, though in Lord Hobhouse's case with uncharacteristic diffidence.  Lord Hoffmann, in a masterly analysis of the previous law, traced the history of the *Lundy Granite* principle (so named after *In Re Lundy Granite Co., ex p. Heavan* (1871) 6 Ch App 462).  Under that principle, liquidators are held liable to pay rent as a liquidation expense where the liquidators make use of or retain, for the benefit of the liquidation, possession of leasehold premises.  Express reference was made and approval given to the judgment of Lindley LJ (a judge of at least as great eminence in this field as Lord Hoffmann) in *In re Oak Pitts Colliery Co.*, (1882) 21 Ch D 322.  At para.26 of his speech, Lord Hoffmann referred to the following citation of Lindley LJ at p 330:

> "When the liquidator retains property for the purpose of advantageously disposing of it, or when he continues to use it, the rent of it ought to be regarded as a debt contracted for the purposes of winding up the

company, and ought to be paid in full like any other debt or expense properly incurred by the liquidators for the same purpose..."

6   Lord Hoffmann continued in para.27:

"My Lords, it is important to notice Lindley LJ was not saying that the liability to pay rent had been incurred as an expense of the winding up. It plainly had not. The liability had been incurred by the company before the winding up for the whole term of the lease. Lindley LJ was saying that it would be just and equitable, in the circumstances to which he refers, to treat the rent liability *as if* it were an expense of the winding up and to accord it the same priority."

7   That principle (if it applies in administrations at all) plainly applies to the present case and has effectively been acknowledged as applicable by the payment of rent hitherto. As Lord Hoffmann went on to explain, although the rule emerged historically in the context of the exercise of a discretion (whether or not to allow forfeiture proceedings to be brought or distress to be levied) it has evolved into a principle which, as he put it in para.38, "does not involve an exercise of discretion any more than the application of any other legal principle to the particular facts of the case". He held that the rules - and in that case he was concerned with rule 4.218 - applicable to liquidations were to be construed to include debts which, under the *Lundy Granite* principle, were deemed to be expenses of the liquidation, and concluded that ordinarily this meant that debts such as rent under a lease would be treated as coming within para.(a) of rule 4.218(1), but that the principle might possibly enlarge the scope of other paragraphs as well.

8   Paragraph (a), as it then stood, referred to "expenses properly chargeable or incurred by the official receiver or the liquidator in preserving, realising or getting in any of the assets of the company". In a liquidation, therefore, upon the authority of Lord Hoffmann and the remainder of the House of Lords, rent, where the *Lundy Granite* principle applies, will ordinarily fall within (a) and will be payable mandatorily.

9   So far as administration is concerned, the relevant rule, as I have said, is rule 2.67(1). Two subparagraphs have been highlighted before me, (a) and (f). 2.67(1) contains a list of expenses payable in the following order of priority: (a) refers to "expenses properly incurred by the administrator in performing his functions in the administration of the company"; (f) refers to "any necessary disbursements by the administrator in the course of the administration (including any expenses incurred by members of the creditors' committee or their representatives and allowed for by the administrator under rule 2.63, but not

including any payment of corporation tax in circumstances referred to [in a later subparagraph which I need not consider]". Given the closeness of the opening words of rule 4.218(1)(a) as it stood at the time of *Toshoku* (and indeed as the rule now stands, though the relevant part is now para.4.218(3)(a)(ii) and a number of other words have been added) to the opening words of rule 2.67(1)(a), my inclination would be to regard rent as falling within rule 2.67(1)(a). It seems to me that that subparagraph, were the matter free from authority, would be apt to refer to all of the expenses incurred by the administrator in performing his functions in the administration of the company, making no distinction for this purpose between expenses incurred on his own account for which he was entitled to be reimbursed, and expenses incurred on behalf of the company.

10    Nonetheless, that construction did not find favour with David Richards J in the *Bairstow* case. He relied on the closeness of wording between section 19(4) of the Insolvency Act 1986 and the wording of rule 2.67(1)(a). The House of Lords previously in *Centre Reinsurance International Co v. Freakley and Others* [2006] 1 WLR 2863, had ruled that section 19(4) applied only to liabilities incurred personally. Section 19 seems to me to be different, however, as the contrast (in cases where that section still applies) is made between "remuneration and expenses" (to which section 19(4) applies) which are due to the administrator, and "sums payable in respect of debts or liabilities incurred" (to which section 19(5) applies) which are due to outside creditors, and are expressly given priority over sums payable to the administrator under 19(4), as are sums payable under adopted contracts of employment where 19(6) applies. There is no similar contrast in rule 4.218 or 2.67. Moreover, as Blackburne J observed in the *Salmet* case, section 19(4) is concerned merely with the ranking of remuneration and expenses (as a class) as against the claims of floating charge holders.

11    It is however not necessary for me to reach a final view on the point because if the rent does not fall within (a), it falls in my judgment within (f) - the disbursement is a necessary one because the application of the *Lundy Granite* principle requires rent to be paid. It is clear from other provisions of the Insolvency Act 1986 that the administrator has power to make payments whether or not they are necessary in any ordinary sense of that word. They may, for example, be merely "incidental" to the performance of his functions within para.13 of Schedule 1, without being "necessary" (both words being used in that paragraph) and his powers under para.59(1) of Schedule B1 enable him to do (and therefore to incur liability in respect of) anything "necessary or expedient" for the management of the affairs, business and property of the company. It would be surprising if necessary expenses had a measure of priority, but liabilities incurred merely incidentally or through expediency had no priority whatsoever. That

suggests either that (a) should be construed more broadly, or "necessary" given an extended meaning, or both.

12    In construing what is "necessary", I was referred to the decision of Briggs J in the recent *Lehman Brothers International (Europe)* decision [2009] EWHC 2545, where Briggs J (though his remarks on this point were clearly *obiter*) considered that necessity extended to a payment which ought to be made in fairness and justice to - in that case - a counterparty which, because of administration, had been or would be prejudiced by Lehman Brothers' retention of securities beyond the date when they should have been redelivered.  He also confirmed that necessity was not confined to a situation in which there had been a specific threat for redelivery.  I agree with that observation, which was not in my judgment confined to the facts of that particular case.  In the present case, there has been no threat by the applicant landlord to bring forfeiture proceedings, though Mr Jourdan said he would seek permission to do so if that was thought to be necessary.  In my judgment, it is not, and the application of the *Lundy Granite* principle does not require it.

13    In those circumstances, whatever the precise extent of the meaning of the word "necessary", it is plainly apt, in my judgment, to extend to a case where the *Lundy Granite* principle applies.  Briggs J at para.98 considered the *Lundy Granite* principle to apply to administrations.  The difficulty in its application to the *obiter* part of his judgment was that the securities had not been used for the purpose of the administration within the strict confines of the *Lundy Granite* principle (see para.109).  That is not a difficulty facing me.

14    Mr. Trower, for the administrators, said that a disbursement can only be regarded as necessary if the administrators choose to make it or if the court, founding itself upon some proper jurisdictional basis, orders it.  He said that the court had no jurisdictional basis in the present case for ordering payment of rent, there being no unfair harm which would trigger the court's jurisdiction under para.74 of Schedule B1, or no other good and compelling reason for the court to give directions to that effect to the administrators under para.63 or 68(2) of Schedule B1.

15    Mr Trower also said that there is a major distinction between rule 4.218 as it applies to liquidations and rule 2.67(1) as it applies to administrations because of the absence in rule 2.67(1)(a) of the word "chargeable" which he said meant chargeable to the estate.  For my part I would naturally read "chargeable" in rule 4.218(3)(a)(ii) as chargeable by the liquidators in preserving etc., as the rule goes on to say.  I do not consider the absence of that word in rule 2.67(1)(a) to have any significance in the present context.

16    I do not accept the reasons that Mr. Trower has advanced for not regarding rent as an administration expense in the present case. The *Lundy Granite* principle seems, in my judgment, clearly to apply, and the Court's jurisdiction to order payment derives from the relevant rules which, properly construed in accordance with the *Lundy Granite* principle, compel payment. Any failure on the part of the administrators to recognise this unfairly harms the applicant landlord, and there can be no doubting the appropriateness of the Court directing the administrators to act in accordance with the mandatory requirements of the rules, properly construed.

17    I am urged also to construe the rules in accordance with the underlying importance, which I do not dispute for one moment, of the rescue culture upon which the Insolvency Act 1986 is based. Mr. Jourdan, however, pointed out that in a number of the older cases where the *Lundy Granite* principle was developed, liquidators were in fact carrying on business for the purpose of the winding up in an endeavour to sell the business as a going concern, which is what administrators now do, certainly in the early stages, very often. That did not prevent the *Lundy Granite* principle from emerging and is no reason, in my judgment, for excluding it in the present case. As, moreover, administrators now have power (with the permission of the Court) to make distributions to unsecured creditors under para.65(3) of Schedule B1, administrations may come to resemble liquidations, and it would be surprising were the *Lundy Granite* principle to apply to the one and not the other.

18    Mr. Trower does not of course say that the administrators should be entitled to occupy or use the premises for nothing. What he says is that payments should be tailored to the use that they are making. Mr. Jourdan answered that by reference to *Powdrill v. Watson* [1995] 2 AC 394 and the cases therein referred to. At p.450, Lord Browne-Wilkinson said this in the context of contracts of employment adopted by an administrator, and section 19(5) of the Insolvency Act 1986 as it then stood:

> "Although the authorities show that debts incurred before the liquidation could not obtain priority, they indicate that even on the salvage principle all liabilities under a contract incurred after the time of adoption of the contract by a liquidator are entitled to priority."

19    He then cited *Re S. Davis and & Co. Ltd.* [1945] Ch 402, a case on bailment, and *Re Levi & Co. Ltd.* [1919] 1 Ch 416, a landlord and tenant case, in which the liquidator who retained a lease for the benefit of the liquidation was held liable to

pay as a liquidation expense a dilapidations claim under a covenant to deliver up the premises in good repair at the end of the term. He continued:

> "The salvage principle in liquidation indicates that if a liquidator adopts a contract for the purpose of the more beneficial conduct of a liquidation, all such liabilities under such contract after the date of adoption are entitled to priority. This principle is therefore of no assistance in seeking to limit the administrators' liability in this case."

20  In my judgment, that principle applies here so that, as the rent falling due on the next quarter day is a payment in advance, it is not subject to the Apportionment Act 1870 (*see Ellis v. Rowbotham* [1900] 1QB 740) from which it follows, as Mr. Jourdan submits and I accept, that the quarter's rent becomes payable in full from that date as one of the costs and expenses of the administration and would not fall to be apportioned should the administrators vacate the premises during that quarter. It follows also from this that the earlier decision of *Shackell v. Chorlton* [1895] 1 Ch 378 in the other direction is no longer good law, notwithstanding its application in *In re A.B.C. Coupler & Engineering Co. Ltd. (No. 3)* [1970] 1 WLR 702, where the point was conceded. The fuller citation of authority in the *Levi* case, and its approval in *Powdrill*, establishes that a liquidator electing to hold leasehold premises can do so only on the terms and conditions contained in the lease, and that any liability incurred while the lease is being enjoyed or retained for the benefit of the liquidation is payable in full as a liquidation expense. The same principle in my judgment applies in an administration. As Lord Hoffmann recognised in *Toshoku* at para.28, the liability to pay rent is not treated as an expense having priority until (and lasts only so long as) the office holder makes use of or decides to retain the property. Subject to that, any such liability accruing during that period is in my judgment to be treated as an expense having the requisite priority.

21  I mention also that in *In re Linda Marie Ltd*. [1988] 4 BCC 463, rent was accepted to be a necessary disbursement of the liquidator. As, however, the case proceeded on a concession, it was not a matter of decision and so it remains open to me to decide the point. I do decide it in the applicant's favour and insofar, therefore, as the rent does not fall within 2.67(1)(a), it does fall within (f). I should mention that Warner J in the *Linda Marie* case did not consider that the rent was correctly described as having been incurred in preserving the underlease. It seems to me that that observation is difficult now to square with the observations of the House of Lords in *Toshoku*, who held that rent will ordinarily fall within para.(a) of what was then para.4.218(1).

22  I should also make reference to the decision of the Court of Appeal in *Sunberry Properties Ltd v. Innovate Logistics Ltd.* [2009] 1 BCLC 145; [2009] BCC 164. In that case the Court of Appeal refused permission, after balancing the interests of the applicant landlord against the interests of the administrators, to bring proceedings requiring the administrators to terminate an occupational licence for 6 months granted by them to a third party in breach of covenants in a lease with a remaining unexpired term of 20 years. That was the main point in the appeal. Under the heading "Consequential matters" starting at para.55 and going through to para.60, Mummery LJ, after recording that it was accepted that the landlord had no automatic right to be paid the contractual amount during the occupation of the company in administration, limited the amount which the administrators should pay to the sums passing under the licence from the third party. What passed under the licence was a monthly payment equivalent to the rent payable under the lease, whereas under the lease rent was payable quarterly in advance. The Court of Appeal also held that the administrators should pay interest on the passing rent, not at the contractual rate, but only to the extent of interest actually received by them.

23  As a decision of the Court of Appeal, that case might be said to require me to exercise a discretion to consider how much it would be fair for the administrators to pay in this case. If I were required to carry out that exercise, I would conclude that on the particular facts of this case it was fair for the administrators to pay the whole of the rent falling due in December because the only evidence of anyone qualified to express an opinion on the matter is that of the applicant's Chartered Surveyor, demonstrating that there is no realistic possibility of maximising the return from the property so long as the administrators are using part, as issues of data security intrude, and the prospect of redevelopment is adversely affected. The administrators themselves do not contend that the rent payable by them should be calculated at a rate other than that provided for in the leases. Nor do they pray in aid (as was the case in *Innovate Logistics*) inability to pay. Their point is that they should only pay a proportionate amount of the rent attributable to the floor space that they occupy, and the applicant landlord is free to have the rest. However, as I have said, that is not, on the evidence, a realistic proposal, or fair to the applicant landlord.

24  Despite the clear indication of the Court of Appeal in the *Innovate Logistics* case that the issue of what the administrators should pay should be approached flexibly, that approach was adopted, as I have said, as a result of a concession, and it was accepted on both sides before me that the decision of the Court of Appeal did not strictly bind me to adopt a similar approach. It is not difficult to see why the matter proceeded by way of concession. On the first part of the case, the landlord had argued (see para.46 of the judgment) that because the landlord

did not have an automatic right to rent, the balancing exercise should be resolved in its favour by allowing the landlord to bring the proposed proceedings. Consistently with that, the landlord could hardly turn round and say the opposite when considering the terms upon which the administrators should be allowed to leave the licence in place. Nor was it in the interests of the administrators to argue that.

25   The Court of Appeal in *Innovate Logistics* did not consider the *Toshoku* case, the *Lundy Granite* line of cases, or *Powdrill*. Had it done so, it would have needed to address the application of the salvage principle, and the rejection in *Toshoku* of the approach of Nicholls LJ in *In re Atlantic Computers Systems Plc* [1992] Ch 505, as subsequently applied by him in *In re Kentish Homes Ltd.* [1993] BCLC 1375. In the *Kentish Homes* case, Nicholls VC (as he had by then become) considered the issue of whether a post-liquidation liability to community charge on empty flats in the possession not of the liquidator but of an administrative receiver was an expense of the liquidation. He held that it was not, but would only rank as such if the court, as a matter of discretion, directed the liquidators to discharge the obligation out of the assets in their hands. The House of Lords, in agreement in this respect with the Court of Appeal in *Toshoku*, concluded that this case was wrongly decided, as the community charge was clearly a post-liquidation liability of the company, and the *Lundy Granite* principle was irrelevant to such liabilities.

26   The House of Lords in *Toshoku* also disapproved of the proposition that the *Lundy Granite* principle conferred a discretion, Lord Hoffmann observing, at p.682 in para.39:

> "There is of course no question that section 130(2) of the 1986 Act (the lineal descendant of section 87 of the 1862 Act upon which the *Lundy Granite Co* principle was originally constructed) confers a statutory discretion. But the discretion is as to the remedy which the creditor should be allowed to exercise; whether he should be able to bring proceedings, levy distress or execution or should have to wait for the distribution of the assets in due course of liquidation. The fact that a debt counts as an expense of the liquidation does not necessarily mean that the creditor should be allowed immediately to bring proceedings or levy execution. The order of priorities under rule 4.218(1) may mean that if he is paid at once, the assets to satisfy prior expense claims may be insufficient. So the question of remedy is entirely a matter of discretion. But the discretion does not determine whether a claim is a liquidation expense or not. It is rather the other way round; the claim must be a liquidation expense before the court can have any discretion to grant a

       remedy which will enable the creditor to obtain payment in priority to other claims."

27    In other words, the court might have a discretion as to whether or not to allow forfeiture proceedings to be brought or to allow distress to issue, but there is no discretion to declare something to be or not to be a liquidation expense. The same principle applies, in my judgment, to administrations.

28    There is one other point. The treatment of rent as a liquidation or administration expense under the *Lundy Granite* principle is not necessarily determinative of the point of time at which the rent should be paid. As Lord Hoffmann recognised in *Toshoku* in the passage I have just cited, if the sufficiency of the realisable assets is in doubt, the landlord may have to wait and see to what extent the assets will be enough to satisfy his claim, even though properly treated as a liquidation or administration expense, as there may be other claims also having priority. There is in that sense no right to immediate payment, though the right for the accruing rent to be treated as an expense having appropriate priority where the liquidator or administrator is making use of the property still remains. None of that is relevant here, as the assets are acknowledged to be sufficient to meet the claim of the applicant landlord for rent to be treated as an administration expense, whether under rule 2.67(1)(a) or (f), and the administrators are paying administration expenses as they go along, recognising correctly, as is commonly the case, that they have no justification for acting otherwise.

29    For all those reasons, the application succeeds in relation to the December rent as it is common ground that the premises, even if the administrators now decide to give them up, will not then be vacant, and rent will continue to be payable as an administration expense quarterly in advance under the terms of the two leases so long as the administrators retain or use any part of the premises demised under each such lease for the benefit of the administration. If of course they vacate the property demised under one of the leases entirely, the rental liability under that lease, but not under the other, will cease to be payable as an administration expense. If they vacate the other demised property as well, the rental liabilities under both leases will cease to be payable as administration expenses.

---