# Exhibit 43

1            CONFIDENTIAL - L. Rabinowitz

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   -------------------------------x

5   In Re:                            Chapter 11 Case No.
                                      08-13555(JMP)
6   LEHMAN BROTHERS HOLDINGS INC.,    (Jointly Administered)
    et al.,
7
                    Debtors.
8   -------------------------------x

9

10

11           * * * CONFIDENTIAL * * *

12   VIDEOTAPED DEPOSITION OF LAURENCE RABINOWITZ

13              New York, New York

14              September 4, 2013

15

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 65270

1                CONFIDENTIAL - L. Rabinowitz
2     cases are.  They are standard textbooks in
3     England dealing with the law of guarantees,
4     including the law of indemnity, and I went to
5     those basic textbooks and I looked at them.
6          Q.     Is that where you found the cases that
7     you considered to be the key cases?
8          A.     That would be sometimes where I found
9     the cases, and obviously when you look at a
10    case, that may take you to another case; so both
11    of those approaches were taken.
12         Q.     How did you find the Rainey case?
13         A.     The Rainey case Mr. Patton discovered.
14         Q.     How did he discover it?
15         A.     I think he was doing a search, having
16    identified one particular case in order to
17    ascertain that there was -- that he was aware of
18    all cases which touched on the subject that was,
19    in effect, a West Law type search or a Lexis
20    search, I'm not sure how you would refer to it
21    here, I looked Rainey.
22         Q.     Did you find the Rainey case in any of
23    the key textbooks that you looked at?
24         A.     I don't think we did, no.
25         Q.     Did you conduct any interviews?

```
 1                CONFIDENTIAL - L. Rabinowitz
 2     University of South Africa.  In effect, what
 3     they have at the university, University of
 4     Witwatersrand, is a prize for the top graduating
 5     student and the top non-graduating student.
 6     Juta was a famous, I think, judge in South
 7     African history and he gave his name to this
 8     prize.
 9          Q.    And you won both of them?
10          A.    I won it in both years.
11          Q.    You say that you're the current editor
12     of Weinberg & Blank on takeovers and mergers,
13     and it's the leading text on that subject.
14                Have you done any writing in the field
15     of landlord and tenant law?
16          A.    No, I haven't.
17          Q.    And have you done any writing in the
18     field of the law of guarantees?
19          A.    No, I haven't.
20          Q.    What do you think makes you an expert
21     on the subject matter of this case?
22          A.    I have many years' experience
23     practicing in commercial law.  Law of guarantees
24     is a subset of the law of contract, which is my
25     specialist area, if you like, it's what I do.
```

1                CONFIDENTIAL - L. Rabinowitz
2      Commercial law is contract, and contract
3      includes guarantees.
4                I have over the years advised on a
5      number of occasions in relation to guarantees
6      and indemnities, and I guess, more than that,
7      the way in which English law works, I suspect
8      the way in which American, US law works, is that
9      the law is to be gleaned from decided cases.
10               I have an expertise in understanding
11     and interpreting English law cases and, in
12     particular, English law cases in the commercial
13     law field.
14          Q.   Isn't that what all lawyers do?
15          A.   Well, maybe some lawyers do it better
16     than others, but I guess that is what all
17     lawyers do.  Indeed, I suspect in England a lot
18     of lawyers don't practice in commercial law.  In
19     England, there are subdivisions between
20     commercial law, I guess people do administrative
21     law, they do criminal law, matrimonial law.
22          Q.   Right.  Is there anything that makes
23     you more of an expert in the subject matter of
24     this case than other lawyers practicing
25     commercial law in England?

1          CONFIDENTIAL - L. Rabinowitz

2      A.    I suppose that there will be lawyers

3   in England who have an equal expertise to me,

4   but there will be some who don't have either my

5   experience or, indeed, I guess my abilities,

6   without trying to be funny about it, in terms of

7   analyzing and understanding commercial law

8   cases.

9      Q.    So what makes you an expert in this

10  field as compared to other commercial lawyers is

11  that you are better at it than they are?

12     A.    I have a great deal of experience in

13  the area and I understand the way English law

14  works.

15     Q.    Do you believe you have more or less

16  experience than Richard Millett in the areas

17  that are the subject matter of this case?

18     A.    Mr. Millett, because he's been

19  involved in a textbook, would certainly have a

20  more general familiarity with the Law of

21  Guarantees, as he calls his book, than I would.

22  However, in relation to the issues that arise in

23  this dispute, I would suggest that I have as

24  much expertise as he does because there is no

25  real dispute between us as to what the law of

1                CONFIDENTIAL - L. Rabinowitz
2    guarantees and indemnities is.  It's all about
3    the interpretation of that law to the facts of
4    this case.
5             In terms of that, that is to say the
6    interpretation of the law to the facts of this
7    case, that primarily turns on issues of
8    contractual interpretation.  In that particular
9    area, I would suggest I have at least as much
10   expertise, if not more, than Mr. Millett.
11      Q.    Paragraph 14 on page 4 says, "I have
12   not testified as an expert at trial or by
13   deposition in the last four years," and just to
14   confirm, you have never testified as an expert
15   at trial or by deposition at any time in your
16   career, correct?
17      A.    Correct.
18      Q.    Okay. And let's go to appendix A,
19   which is your CV.  Did you write this yourself?
20      A.    I think this was written by the clerks
21   in my chambers.  They probably showed bits to
22   me, but I wasn't the primary author of this.  By
23   "this" we're talking about the CV at the end.
24      Q.    Yes, we are.  Appendix A.
25      A.    Yes.

1                CONFIDENTIAL - L. Rabinowitz
2       the principle applying as against the party
3       invoking or benefiting from a particular
4       clause."  Do you see that?
5           A.    I do.
6           Q.    Do you have a view on that subject as
7       to whether it applies to the draftsperson?
8           A.    As I say there, there are differing
9       views.  The view I have on contra preferentem is
10      that it's a largely relevant doctrine, certainly
11      in commercial contracts between two
12      sophisticated commericial parties.
13              So, to the extent I have a view as to
14      when it applies as between those people, I don't
15      have a strong view.  I'm very happy to go with
16      what Sir Kim says about there being two views.
17          Q.    Let's just talk about what triggers
18      the contra proferentem rule.
19          A.    Uh-huh.
20          Q.    Do you have a view as to whether or
21      not -- so you don't have a view as to whether it
22      applies with respect to who is the draftsperson;
23      is that correct?
24          A.    I don't have a strong view.  To me the
25      key question is whether it applies at all rather

1           CONFIDENTIAL - L. Rabinowitz
2    than whether it applies to this person or that
3    person.
4           Q.    All right.  And do you agree, as you
5    say here, that it applies against the party
6    either invoking or benefiting from the
7    particular clause?
8           A.    Well, that is one of the two views,
9    and I can see that the contra proferentem
10   doctrine, if it ever applies, may be invoked
11   against the person who seeks to benefit.
12          Q.    Would you agree that whether it's the
13   draftsperson or the party invoking it or the
14   party benefiting from it in this case, it's
15   Canary Wharf in all three?
16          A.    Yes, I would agree.
17          Q.    And your view is that the contra
18   proferentem rule is largely irrelevant, as I
19   understand your testimony; is that correct?
20          A.    That is correct in the context of the
21   case involving Canary Wharf on one side and
22   Lehman on the other side, both very
23   sophisticated parties, who neither of whom need
24   the protection in the way that a consumer might
25   need from rules like the contra proferentem

1                CONFIDENTIAL - L. Rabinowitz
2    rule.
3         Q.    All right.  Do you have any -- do you
4    cite any case law for the notion that the contra
5    proferentem rule does not apply as between two
6    commercially sophisticated parties?
7         A.    Well, if you look further down
8    paragraph 33, you will see a reference to Mrs.
9    Justice Gloster, now Lady Justice Gloster, "the
10   principle is 'of uncertain application and
11   little utility in the context of commercially
12   negotiated agreements.'"
13              That reflects a long-standing
14   understanding to the effect that, where you're
15   doing with sophisticated parties who can take
16   care of themselves and object to what is being
17   preferred to them, as Lehman would plainly have
18   been able to do, the contra proferentem rule
19   really doesn't help.
20        Q.    Well, would you agree that where a
21   court who is looking at a contract is unable to
22   determine because there are things that point
23   both ways as to its meaning, that it is a rule
24   at least of last resort?
25        A.    It certainly can be a rule of last

1              CONFIDENTIAL - L. Rabinowitz

2      indicia that something is a contract of

3      guarantee, yes.

4           Q.    And if you go to the next page, that

5      page 312 -- I guess part of what I read was on

6      312 -- a few lines down, it says, "The surety's

7      liability in such a case is conditional upon the

8      principal's failure to pay the particular debt."

9                 Would you agree that that is also an

10     indicia of something being a guarantee where it

11     is contingent upon the principal's failure to

12     perform?

13          A.    I would.  I think what Sir William

14     Blackburne is describing is the fact that a

15     guarantee is, in general, regarded as a

16     secondary obligation, that is to say the primary

17     debtor has the primary obligation and the

18     guarantor has a secondary obligation, and he

19     says that in order to distinguish it from the

20     contract of indemnity where the surety has a

21     primary obligation or undertakes the primary

22     obligation.

23          Q.    Right, and that's the point that is

24     made in the next paragraph where it says, "An

25     essential distinguishing feature of the true