# Exhibit 49

# Linklaters

Linklaters LLP
One Silk Street
London EC2Y 8HQ
Telephone (+44) 20 7456 2000
Facsimile (+44) 20 7456 2222
DX Box Number 10 CDE
Direct Line (+44) 20 7456 4996
Direct Fax (+44) 20 7456 2222
frances.richardson@linklaters.com

Clifford Chance LLP
10 Upper Bank Street
London
E14 5JJ

**By Post and Email (benjamin.hatton@cliffordchance.com)**           16 April 2010

Your Ref      BEJH/70-40394288
Our Ref       Katie Bradford/Frances Richardson

Dear Sirs

**Lehman Brothers Limited (in Administration) ("LBL") - 25 Bank Street, Canary Wharf, London ("the Building")**

Thank you for your letter of 7 April 2010.

**1     Rent in respect of the Building**

1.1    There is an issue in law between our clients as to whether any rents are payable by the Administrators of LBL to your client landlords, as administration expenses or otherwise, save in respect of lettable areas within the Building occupied by our clients. This issue relates directly to an asserted claim for some £2.6million by your client relating to rent for vacant areas for the quarter 1 January to 31 March 2010.

1.2    It appears from your letter that there is a second potential issue, being one of fact as to whether the Administrators of LBL are from 1 April 2010 in occupation of the Building such as to trigger a claim by your client for this quarter's rent in accordance with the first issue. Any such claim might be for substantial sums of rent going forward. It is, to say the least, highly desirable that your client clarifies its position on this point swiftly. It is regrettable that your letter raises the point without indicating any urgency in seeking to resolve it. Your client has been kept fully informed of the Administrators' plans to vacate the building by 31 March 2010 through principal to principal discussions and, formally, in our letter of 11 December 2009. Given our clients' position, effectively abandoning the Underlease of the Building, your caveat as to inspection of the Building not constituting taking possession is unnecessary, but is noted. Please let us know if our clients can assist on any points so that your client can urgently confirm whether it advances any claim, or not.

This communication is confidential and may be privileged or otherwise protected by work product immunity.

Linklaters LLP is a limited liability partnership registered in England and Wales with registered number OC326345. It is a law firm regulated by the Solicitors Regulation Authority. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ or on www.linklaters.com and such persons are either solicitors, registered foreign lawyers or European lawyers.

Please refer to www.linklaters.com/regulation for important information on our regulatory position.
A11921642/1.1/16 Apr 2010

Linklaters

1.3  If your client seeks to argue that sums are payable as an expense of the administration for the quarter from 1 April 2010, please set out its reasoning based on its allegations as to our clients' occupation of the building. Should your client seek to argue this point, our clients would apply to court for directions in relation to rent from 1 April 2010, as part of their application to court for directions in respect of the first issue. In order that this can be dealt with in the most efficient and appropriate way, we look forward to clarification as to whether your client advances any claim, no later than the end of April 2010. Our clients will then be in a position to proceed with the application to court for directions in relation to the identified issues in dispute.

1.4  As to claims for rents for the quarter commencing 1 January 2010, and going forward from 1 April 2010, we seek clarification on points stated in paragraph 2.3 of your letter. Through our letters of 11 December 2009 and 24 March 2010, our clients have offered back space within the building (in part and/or in whole) through any appropriate legal agreement, as your client may choose. Please explain your client's response that these offers are "unrealistic": we note that there is no suggestion on your part there would be no legal difficulty in a surrender, lease back of part or whole, or otherwise.

1.5  We further note that the proposals are not "acceptable", since your client prefers its asserted position that full rents are payable by a company in administration with no use for vacated space rather than your client taking any active role in procuring third party use and payment for the space. Please clarify your reference to "claims filed": does this relate to claims made by your client in respect of the Underlease US guarantor? Please provide us with full copies of any claims made and/or filed.

1.6  We also note the restrictively worded statement that your client has "no current use for the space" and no knowledge of any prospective tenant interested in taking immediate occupation of the building". We note that you have not disputed the background facts set out in our letter dated 11 December 2009. As we have set out in correspondence, various third parties expressed real interest in taking space within the Building last year but had concerns as to our clients being in administration, and so sought reassurance from your client as head landlord: one of those third parties, LOCOG, then took space from your client within the Canary Wharf Estate. This gives rise to the impression that your client favoured its own interests, in preference to co-operating with our clients to sub-let. Further, as noted in public statements made by your client relating to this Building and this rent dispute, we note your client has apparently discussed lettings of and within the Building with potential tenants, including full scale presentations to at least 3 potential tenants.

1.7  We reiterate our clients' position is that the court may exercise a discretion as to whether and when rents are payable by a tenant in administration in occupation of premises for the benefit of the administration. Matters such as your client's dealings with LOCOG and with other potential tenants would be directly relevant to the exercise of that discretion. They will need to be addressed fully by your client through disclosure in the prospective court proceedings. We invite you to clarify these points now.

2  **Sub-underletting of part first and seventh Floors of the Building to Nomura**

2.1  We confirm that the sub-underlease dated 27 March 2010 to Nomura of part first and seventh floors is on the same terms as the original sub-underlease to Nomura dated 9 December 2008. Tony Briam of your firm was sent a Notice from Linklaters on behalf of LBL

CONFIDENTIAL                                                                                                                            CW0018844

Linklaters

of the sub-letting to Nomura International Plc with a certified copy of the sub-lease on 8 April 2010. Your clients will have received rents from Nomura in respect of the quarter commencing 1 April 2010 for those areas.

3  **Management of the Buildings**

   3.1  The outcome of discussions between our client and Nomura on management is that our client will manage the Building on an agreed basis and until such time as the Nomura sub-underleases expire or are otherwise determined. Otherwise, all management obligations arise in pre-administration agreements and we reiterate that accordingly LBL will not continue to manage the building. If you suggest that these obligations are enforceable at the request of your client landlords or by those companies associated with your client as sub-tenants, please set out those arguments.

   3.2  As previously indicated, the Administrators are willing to co-operate with your client to assist in the smooth transition of service provision within the building. We suggest that a meeting takes place between our respective clients to discuss this, sooner rather than later, given the length of notice periods in key service contracts. Should your client not wish to take up this offer of liaison, our clients will proceed to wind down management and terminate appropriate service contracts, mothballing relevant plant, once the Nomura sub-underleases end.

Yours faithfully

*Linklaters*

Linklaters LLP

CONFIDENTIAL                                                                                                                                    CW0018845