# EXHIBIT A

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Special Financing Inc. | Case No. of Debtor 08-13888 |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000068076

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Conway Hospital, Inc.
c/o Andrew J. White Jr.
Haynsworth Sinkler Boyd, P.A.
P.O. Box 2048
Greenville, SC 29602

Telephone number: 864.240.3288    Email Address: awhite@hsblawfirm.com

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: 4/18/2012

Name and address where payment should be sent (if different from above)

Telephone number: _____   Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 1,290,795.04 (as of Effective Date See Addenda I & II attached*
   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
   If all or part of your claim is entitled to priority, complete Item 5.
   If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   ☑ Check this box if all or part of your claim is based on a Derivative Contract.* Precautionary designa-
   ☐ Check this box if all or part of your claim is based on a Guarantee. tion—see Addendum II attached

   *IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE TO A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

   ☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee. See Addendum I

2. **Basis for Claim:** securities contract, see Addendum I attached
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: see Addendum I attached ☐
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $ _____   Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $ _____   Basis for perfection: _____
   **Amount of Secured Claim:** $ _____   **Amount Unsecured:** $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.
   Specify the priority of the claim:
   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

   **Amount entitled to priority:**
   $ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
   If the documents are not available, please explain:

**FOR COURT USE ONLY**
FILED / RECEIVED
APR 18 2012
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 4/17/2102 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | Andrew J. White, Jr. attorney for Creditor |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

*Claim amount is determined as of the Effective Date of Debtor's Plan (March 6, 2012), not the petition date, pursuant to 11 U.S.C. 562(a). See Addendum I attached.

Creditor: Conway Hospital, Inc.
      300 Singleton Ridge Rd.
      Conway, SC 29526

Debtor: Lehman Brothers Special Financing Inc. (Case 08-13888)

# ADDENDUM I
# TO CREDITOR'S PROOF OF CLAIM

Creditor, Conway Hospital, Inc., appears in Debtor's Schedule G and is designated as "Schedule # 888011260".

Creditor cannot locate the Proof of Claim (if any) which may have been mailed to it in this case, and therefore Creditor does not know its "unique identification number" and is uncertain whether it has such a unique identification number in this case.

This Proof of Claim is based on a Securities Contract dated as of June 8, 1998, among Creditor, The Bank of New York Mellon Trust Company N.A. (f/k/a The Bank of New York) as Trustee, and Debtor. A copy of the operative documents are attached to this Proof of Claim as described below.

Creditor asserts that the contract at issue in this Proof of Claim constitutes a "Securities Contract" (as such term is defined in the Section 741(7) of the Bankruptcy Code). However and solely out of abundance of caution, in the event that the Securities Contract were to be deemed a "Derivatives Contract" as such term is defined in the Court's Notice of Deadlines for Filing Proofs of Claim filed in the jointly administered cases and dated July 8, 2009, then as a precaution only (and with no intent to have this claim classified as arising from a Derivatives Contract instead of a Securities Contract):

1.    Creditor, as a precaution only, has checked the "Derivative Contract" Box in Part 1 of the Proof of Claim only in the event that that it is determined that its claim should be classified as being based on a Derivative Claim in this case.

2.    Creditor, as a precaution only, on April 17, 2012, completed the "Derivative Questionnaire" and uploaded the relevant documents thereto on the website www.lehman-claims.com. A hard copy of that questionnaire as submitted on that website, together with copies of all the uploaded documents submitted on that website, is attached to this Proof of Claim.

Other matters relevant to Creditor's Proof of Claim attached:

A.   Pursuant to 11 U.S.C 562(a), the damages set forth in a claim of a creditor arising under a Securities Contract (or a Swap Contract, Forward Contract or other financial instrument listed in that statute) are determined as of the earlier of the date of (a) rejection or (b) liquidation, termination or acceleration of the contract.

B.   Pursuant to 11 U.S.C. 562(a): (1) the damages in Creditor's attached Proof of Claim have been determined (and submitted to this Court as Addendum II hereto) as of the Effective Date in this case (March 6, 2012), which is the date the Creditor's subject Security Contract with Debtor is deemed to have been rejected in this case; (2) the petition date is not applicable to the date of determination of Creditor's damages in this case.

C.   A copy of the operating Securities Contract is submitted to this Court as Addendum III hereto.

D.   A copy of the Account Statement of the Trustee for the period 07/01/2008 through 07/31/2008 (and submitted to this Court as Addendum IV hereto), reflecting that the last securities delivered by Debtor under the Securities Contract was July 1, 2008. Debtor's obligations under the Securities Contract, however, call for Debtor's delivery of securities thereunder through and including July 1, 2028, and Debtor's failure to deliver under the required period constitutes a default under the Securities Agreement resulting in economic and other damages included within this Proof of Claim.

E.   In regard to the above damages, Creditor notes that it attempted to terminate the subject Securities Contract by sending a post-petition Notice of Termination (submitted to this Court for purposes of open disclosure as Addendum V hereto) on November 18, 2012. However, Creditor is informed and believes that such termination was ineffective under the Bankruptcy Code and also under the *Metavante* decision of this Court. Therefore, this Proof of Claim has been determined and submitted under the assumption that the subject Securities Contract was not terminated by the above notice and that it was an unrejected executory contract existing in this case as of March 6, 2012, and, as such, has been deemed rejected as of March 6, 2012.

# ADDENDUM II

## DEBT SERVICE RESERVE FUND AGREEMENT – GUARANTEED YIELD STRUCTURE
### DATED AS OF JUNE 8, 1998 AMONG
### CONWAY HOSPITAL, INC., THE BANK OF NEW YORK AND LEHMAN BROTHERS SPECIAL FINANCING INC.

### CALCULATED AS OF THE "EFFECTIVE DATE" (MARCH 6, 2012)

**(i) Calculation of payment due from Lehman Brothers Special Financing Inc.**

| | |
|---|---|
| Reserve Requirement as of date of demand: | $2,334,280 |
| Agreement Termination Date | 7/1/2028 |
| Interest rate on Agreement (A): | 5.8550% |
| Market interest rate as of the date of demand (B): | 2.622% |
| Present Value of a Basis Point on remaining term (C): | $2,626.36 |

Formula used to determine payment: (A-B)*C*10,000

| | |
|---|---|
| Calculation: (5.885% - 2.622%) * $2,626.36*10,000 | **$849,102.04** |

**(ii) Interest Payments Owed to Conway Hospital, Inc.**

| | |
|---|---|
| **Interest owed at rate of 5.855% from 1/1/09 – 3/5/2012** | **$434,693** |

**(iii) Incidental costs and expenses**

| | |
|---|---|
| Haynsworth Sinkler Boyd, P.A. | $2,000* |
| Kensington Capital Advisors LLP | $5,000* |
| **Total** | **$7,000** |

| | |
|---|---|
| **Total payment due to Conway Hospital, Inc. (i)+(ii)+(III)** | **$1,290,795.04** |

*Any additional professional fees will be paid as an out of pocket expense of Conway Hospital, Inc.*

## ADDENDUM II (Page II)

| Period Start Date | Period End Date | Reserve Fund Balance | Fixed Rate | Interest | Discount Factor | Discounted Cash Flow |
|---|---|---|---|---|---|---|
| 03/06/2012 | 07/01/2012 | 2,334,280.02 | 0.50014 | $ 3,794.27 | 0.9986805 | $ 3,789.26 |
| 07/01/2012 | 01/01/2013 | 2,334,280.02 | 0.58087 | $ 6,930.23 | 0.9963254 | $ 6,904.76 |
| 01/01/2013 | 07/01/2013 | 2,334,280.02 | 0.6701 | $ 7,864.45 | 0.9936506 | $ 7,814.52 |
| 07/01/2013 | 01/01/2014 | 1,862,500.00 | 0.7638 | $ 7,270.95 | 0.9903839 | $ 7,201.03 |
| 01/01/2014 | 07/01/2014 | 1,862,500.00 | 0.87627 | $ 8,205.60 | 0.9866333 | $ 8,095.92 |
| 07/01/2014 | 01/01/2015 | 1,862,500.00 | 1.07161 | $ 10,201.13 | 0.9816589 | $ 10,014.03 |
| 01/01/2015 | 07/01/2015 | 1,862,500.00 | 1.33577 | $ 12,508.46 | 0.9755770 | $ 12,202.97 |
| 07/01/2015 | 01/01/2016 | 1,862,500.00 | 1.60505 | $ 15,279.18 | 0.9679251 | $ 14,789.10 |
| 01/01/2016 | 07/01/2016 | 1,862,500.00 | 1.89966 | $ 17,887.15 | 0.9592594 | $ 17,158.42 |
| 07/01/2016 | 01/01/2017 | 1,862,500.00 | 2.2059 | $ 20,998.94 | 0.9488782 | $ 19,925.44 |
| 01/01/2017 | 07/01/2017 | 1,862,500.00 | 2.46268 | $ 23,061.11 | 0.9375309 | $ 21,620.50 |
| 07/01/2017 | 01/01/2018 | 1,862,500.00 | 2.71724 | $ 25,866.61 | 0.9249788 | $ 23,926.07 |
| 01/01/2018 | 07/01/2018 | 1,862,500.00 | 2.95006 | $ 27,625.06 | 0.9117220 | $ 25,186.38 |
| 07/01/2018 | 01/01/2019 | 1,862,500.00 | 3.13108 | $ 29,806.14 | 0.8976718 | $ 26,756.13 |
| 01/01/2019 | 07/01/2019 | 1,862,500.00 | 3.22877 | $ 30,234.96 | 0.8836763 | $ 26,717.92 |
| 07/01/2019 | 01/01/2020 | 1,862,500.00 | 3.29673 | $ 31,383.04 | 0.8692169 | $ 27,278.67 |
| 01/01/2020 | 07/01/2020 | 1,862,500.00 | 3.35273 | $ 31,569.22 | 0.8550506 | $ 26,993.28 |
| 07/01/2020 | 01/01/2021 | 1,862,500.00 | 3.40232 | $ 32,388.20 | 0.8404260 | $ 27,219.89 |
| 01/01/2021 | 07/01/2021 | 1,862,500.00 | 3.4499 | $ 32,305.68 | 0.8265252 | $ 26,701.46 |
| 07/01/2021 | 01/01/2022 | 1,862,500.00 | 3.50073 | $ 33,325.00 | 0.8119325 | $ 27,057.65 |
| 01/01/2022 | 07/01/2022 | 1,862,500.00 | 3.58125 | $ 33,535.67 | 0.7980317 | $ 26,762.53 |
| 07/01/2022 | 01/01/2023 | 1,862,500.00 | 3.65047 | $ 34,750.45 | 0.7835321 | $ 27,228.09 |
| 01/01/2023 | 07/01/2023 | 1,862,500.00 | 3.69172 | $ 34,570.13 | 0.7695284 | $ 26,602.70 |
| 07/01/2023 | 01/01/2024 | 1,862,500.00 | 3.71278 | $ 35,343.60 | 0.7555590 | $ 26,704.17 |
| 01/01/2024 | 07/01/2024 | 1,862,500.00 | 3.71164 | $ 34,948.70 | 0.7420066 | $ 25,932.17 |
| 07/01/2024 | 01/01/2025 | 1,862,500.00 | 3.695 | $ 35,174.35 | 0.7284649 | $ 25,623.28 |
| 01/01/2025 | 07/01/2025 | 1,862,500.00 | 3.67372 | $ 34,401.58 | 0.7155948 | $ 24,617.59 |
| 07/01/2025 | 01/01/2026 | 1,862,500.00 | 3.65109 | $ 34,756.35 | 0.7026791 | $ 24,422.56 |
| 01/01/2026 | 07/01/2026 | 1,862,500.00 | 3.62721 | $ 33,966.05 | 0.6904081 | $ 23,450.44 |
| 07/01/2026 | 01/01/2027 | 1,862,500.00 | 3.60522 | $ 34,319.69 | 0.6779553 | $ 23,267.22 |
| 01/01/2027 | 07/01/2027 | 1,862,500.00 | 3.59309 | $ 33,646.54 | 0.6663658 | $ 22,420.90 |
| 07/01/2027 | 01/01/2028 | 1,862,500.00 | 3.57613 | $ 34,042.77 | 0.6544723 | $ 22,280.05 |
| 01/01/2028 | 07/03/2028 | 1,862,500.00 | 3.54805 | $ 33,775.46 | 0.6425549 | $ 21,726.23 |

| | | | | | **Total** | **$ 688,391.33** |

| | | | | | **Net Cashflow** | **$ 849,102.04** |

**Addendum II**
**Debt Service Reserve Fund Agreement - Guaranteed Yield Structure**
**Dated as of June 8, 1998**
**among Conway Hospital, Inc.**
**The Bank of New York Mellon Trust Company, N.A.**
    **(f/k/a The Bank of New York)**
**and Lehman Brothers Special Financing Inc.**
**Calculated as of the "Effective Date" (March 6, 2012)**

**(i) Calculation of payment due from Lehman Brothers Special Financing Inc.**

| | | |
|---|---|---|
| Reserve Requirement as of date of demand: | $2,334,280 | |
| Agreement Termination Date | 7/1/2028 | |
| Interest rate on Agreement (A): | 5.855% | |
| Market interest rate as of the date of demand (B): | 2.622% | 3/6/2012 |
| Present Value of a Basis Point on remaining term (C): | $2,626.36 | 1/1/2009 minus |
| | | 1145 days |
| Formula used to determine payment: (A-B)*C*10,000 | | 360 divided by |
| Calculation: (5.855% - 2.622%) * $2,626.36*10,000 | **$849,102** | 3.181 years |
| | | 5.855% times |
| **(ii) Interest Payments Owed to Conway Hospital, Inc.** | | $2,334,280 times |
| **Interest owed at rate of 5.855% from 1/1/09 – 3/6/2012** | **$434,693** | $434,693.19 |

**(iii) Incidental costs and expenses**

| | |
|---|---|
| Haynsworth Sinkler Boyd, P.A. | 2,000 |
| Kensington Capital Advisors LLP | 5,000 |
| **Total** | **$7,000** |

| | |
|---|---|
| **Total payment due to Conway Hospital, Inc. (i)+(ii)+(III)** | **$1,290,795** |

**This version of Page 1 of Addendum II is created for access in MS Excel Format**

**ADDENDUM III**

Sent by: LEHMAN         212 5267746;         06/08/98, 9:17AM;JetFax #550;Page 27/23

# DEBT SERVICE RESERVE FUND AGREEMENT
# GUARANTEED YIELD STRUCTURE

This Debt Service Reserve Fund Agreement (this "Agreement") dated as of June 8, 1998, among CONWAY HOSPITAL, INC., a nonprofit corporation organized under the laws of the State of South Carolina (the "Borrower"), THE BANK OF NEW YORK, a New York banking corporation (the "Trustee") and LEHMAN BROTHERS SPECIAL FINANCING INC., a Delaware corporation ("Lehman").

SECTION 1.          DEFINITIONS

For purposes of this Agreement, unless the context clearly indicates otherwise, the words and terms defined in this Section 1 have the respective meanings given to them herein:

"Bond Indenture" means the Bond Indenture dated as of March 1, 1998 between Horry County, South Carolina and the Trustee.

"Bond Payment Date" means each January 1 and July 1, commencing July 1, 1998, or, if such day is not a Business Day, the immediate succeeding Business Day.

"Bond Insurer" means Ambac Assurance Corporation, a Wisconsin stock insurance company.

"Bonds" means $31,275,000 Horry County, South Carolina Hospital Revenue Bonds (Conway Hospital, Inc.) Series 1998.

"Business Day" means any day other than (a) a Saturday or Sunday, (b) a day on which the principal corporate trust office of the Trustee is authorized or required by law to close, or (c) a day on which any Eligible Securities which may be sold hereunder are not subject to delivery in New York, New York.

"Debt Service Reserve Fund" means the Debt Service Reserve Fund created under the Bond Indenture.

"Differential" means the amount, if any, by which the Purchase Price of any Eligible Security sold hereunder exceeds the Market Value thereof.

"Default Rate" means a per annum rate equal to Three Month LIBOR plus 1%.

"Downgrade Event" means, with respect to Lehman, the long-term unsecured debt rating of Lehman is suspended, withdrawn or falls below BBB- by Standard & Poor's, or Baa3 by Moody's.

Sent by: LEHMAN                    212 5267748;              06/08/98  9:18AM; JetFax #550; Page 3/23

"Earnings Amount" means the product of the Purchase Price multiplied by 5.855% which product is further multiplied by a fraction equal to the number of days from the Bond Payment Date occurring in the Sale Period relating to the Purchase Price to the maturity date of the Eligible Securities sold during such Sale Period divided by 365 or 366, as appropriate for the number of days in the year in which sold, such sum rounded down to the nearest $1000.

"Eligible Securities" means direct obligations of (including obligations issued or held in book-entry form on the books of) the Department of Treasury of the United States of America and other securities which the Trustee is permitted to invest in under the Indenture as identified in Exhibit D, which shall mature not later than the Bond Payment Date following the date of sale thereof.

"Event of Default" has the meaning specified in Section 6.1.

"Financing Documents" means the Indenture and the Loan Agreement.

"Indenture" means the Indenture dated as of March 1, 1998 between the Issuer and the Trustee.

"Issuer" means Horry County, South Carolina, a political subdivision of the State of South Carolina, its successors and assigns.

"Loan Agreement" means the Loan Agreement dated as of March 1, 1998 by and between the Issuer and the Borrower.

"Market Value" means with respect to any Eligible Security sold hereunder, the market value thereof as specified by the Qualified Dealer selling that security, provided that the Market Value of any such security shall in no event exceed the Reserve Requirement thereof.

"Maturity Amount" means, with respect to any Eligible Security, the amount to be paid on such Eligible Security at the maturity date thereof.

"Moody's" means Moody's Investors Service, Inc., its successors and assigns.

"Purchase Price" means with respect to any Eligible Securities, the amount described as the specified purchase price in the Sale Notice, provided that the aggregate Purchase Price with respect to the Eligible Securities sold during any one Sale Period may not exceed the Reserve Requirement.

"Qualified Dealer" means Lehman Brothers Inc. or any other dealer in Eligible Securities selected by Lehman.

"Reserve Requirement" means the amounts shown on Exhibit E as of the dates shown on Exhibit E.

Sent by: LEHMAN                              212 5267746;          06/08/98   9:18AM; JetFax #550; Page 4/23

"Sale Notice" means a notice substantially in the form of Exhibit C or in such other form as provided by the Qualified Dealer and is reasonably acceptable to the Trustee.

"Sale Period" means each period beginning (i) on each Bond Payment Date and (ii) on each date Eligible Securities purchased by the Trustee hereunder mature and ending eight Business Days after receipt by Lehman of notice from the Borrower that Lehman has not caused to be sold Eligible Securities following such Bond Payment Date.

"Standard & Poor's" means Standard & Poor's Ratings Group, a division of the McGraw-Hill Companies, its successors and assigns.

"Three Month LIBOR" as of any date of determination means the rate for deposits in US dollars for a period of three months which appears on the Telerate Page 3750 as of 11:00 a.m., London time, on the day that is two Business Days before the day for which such determination is being made. If no such rate appears on the Telerate Page 3750 as of such date, Lehman may select another nationally recognized published source to determine Three Month LIBOR.

"Termination Date" means July 1, 2028.

## SECTION II.        PURCHASE AGREEMENT

Section 2.1    Purchase and Sale of Eligible Securities.   (a)  Subject to the terms and conditions hereof, Lehman shall, on each Bond Payment Date, and may, on any date that Eligible Securities mature (or as soon thereafter as is reasonably possible during the Sale Period), cause a Qualified Dealer to sell to the Trustee Eligible Securities at the Purchase Price thereof, which Eligible Securities shall have a Maturity Amount equal to the sum of (i) the cash on deposit in the Debt Service Reserve Fund on the date of sale plus (ii) the Earnings Amount.

(b)    The Trustee shall, at the time of the sale of any Eligible Securities by the Qualified Dealer, purchase such securities and pay to the Qualified Dealer or Lehman, as applicable, in accordance with Section 2.2(b) hereof, an amount equal to the Purchase Price.

Section 2.2    Sale; Payment.        (a)  All Eligible Securities sold hereunder shall be sold, without recourse, to the Trustee to the account specified in Section 7.1 hereof, in such manner as at the time is generally acceptable for delivery of Eligible Securities. All Eligible Securities sold hereunder shall be sold to the Trustee on a "delivery versus payment" basis.

(b)    (i)    The Qualified Dealer shall give the Trustee at least two Business Days prior notice of the sale of any Eligible Securities hereunder. Any such notice shall be in substantially the form of the Sale Notice.

(ii)    Concurrently with the sale of such Eligible Securities, unless otherwise directed by Lehman in writing, the Trustee shall, subject to clause (iii) below, pay the Qualified

Sent by: LEHMAN          212 5267746;          06/08/98  9:18AM; JetFax #550; Page 5/23

Dealer selling such Eligible Securities in its individual capacity the Market Value thereof, and to the Qualified Dealer as agent for Lehman, the Differential, if any.

(iii)    Lehman may, by giving the Trustee two Business Days prior written notice substantially in the form of the Sale Notice direct the Trustee to pay to the Qualified Dealer the Market Value of any Eligible Securities sold to the Trustee hereunder and to pay the Differential, if any, directly to Lehman. Any such payment to Lehman shall be to Lehman's account as set forth in the Sale Notice. The Trustee may conclusively rely on the specification by the Qualified Dealer of the Market Value and the Maturity Amount of an Eligible Security.

(iv)    All payments of the Purchase Price to be made hereunder (either to Lehman or the Qualified Dealer) shall be made in immediately available funds from the Debt Service Reserve Fund.

(v)    Lehman agrees and acknowledges that neither it nor any Qualified Dealer has any right, title or interest in or to any securities, cash, or other property held in the Debt Service Reserve Fund or by the Trustee, including without limitation, the Eligible Securities. The Trustee, the Borrower, and Lehman understand and expect that the purchase prices for the Eligible Securities may be different than the market prices for such securities at the time of the purchase by the Trustee and the fact that Lehman is bearing the risk of changes in interest rates.

Section 2.3    Direction by Borrower to Trustee. The Borrower hereby irrevocably instructs the Trustee to enter into this Agreement and to take the actions required of the Trustee hereunder, and the Trustee agrees to take the actions required of it hereunder, including but not limited to making the purchases required by this Agreement.

Section 2.4    Borrower and Trustee Cooperation. (a) The Trustee shall not (i) act in contravention of its obligations hereunder or under the Indenture, (ii) invest moneys held in the Debt Service Reserve Fund other than in Eligible Securities pursuant to this Agreement, or (iii) hold uninvested amounts required hereunder to be used to purchase Eligible Securities.

(b) The Borrower and the Trustee agree that neither of them shall, without Lehman's written consent, amend or consent to the amendment any of the Financing Documents to which it is a party, or exercise any right or option under the Financing Documents to which it is a party or do or undertake any act pursuant thereto, including any sale, redemption, substitution or reinvestment of any investment held in the Debt Service Reserve Fund or reinvestment or distribution therefrom of amounts received in respect of any such investment, whether cash or investments held therein, which would qualify, impede or otherwise affect the ability of the Trustee to perform its duties hereunder or would impair the rights or interests of Lehman under this Agreement.

Sent by: LEHMAN                    212 5286664;               06/08/98  2:17PM; JetFax #568; Page 2/6

SECTION III.        DECREASE IN RESERVE REQUIREMENT; REFUNDING

    Section 3.1    Decrease in Reserve Requirements; Refunding.    (a)    In the event the amount of the Reserve Requirement is decreased from the amounts listed on Exhibit E at the dates listed on Exhibit E, the Borrower shall notify Lehman of such decrease. Following such decrease, Lehman shall have the right to demand payment of damages by written notice to the Borrower, which the Borrower agrees to pay, as liquidated damages and not as a penalty, of an amount equal to the total amount required, determined as of the date of demand for such payment by Lehman in good faith to preserve for Lehman the economic equivalent of its right to sell Eligible Securities to the Trustee under this Agreement, assuming the Reserve Requirement had not decreased, through the termination date described in Section 7.5 hereof and otherwise to compensate Lehman for any losses and costs (including loss of bargain and costs of funding and any amount payable by Lehman to any dealer) that Lehman may incur as a result of the decrease in the Reserve Requirement; provided that, if the Reserve Requirement decreased because of a refunding of the obligations issued under the Indenture, the Borrower, subject to the conditions of Section 3.1(b) below, may apply this Agreement to the debt service reserve fund for the refunding obligations and, if the conditions of Section 3.1(b) below are satisfied, the Borrower shall not owe the damages described in this Section 3.1(a).

    (b)    The Borrower may apply this Agreement to the reserve fund for the refunding obligations as described in Section 3.1(a) above upon fifteen (15) Business Days written notice to Lehman, and Lehman shall agree to such application provided the following conditions are satisfied:

        (i)    the rating on the refunding obligations equals or exceeds the then existing rating on the obligations secured by the Debt Service Reserve Fund;

        (ii)    the security and source of payment for the refunding obligations is substantially the same as the security and source of payment for the obligations secured by the Debt Service Reserve Fund;

        (iii)    in the event the right of Lehman to sell Eligible Securities to the reserve fund for the refunding obligations has a value which is less than the right of Lehman to sell Eligible Securities hereunder (absent the refunding), that the Borrower pays to Lehman the difference in the value of such rights, and

        (iv)    Lehman receives such other documentation, opinions or assurances as it may reasonably request to preserve its rights and interests under this Agreement.

    If the subsections (i) through (iv) above are not satisfied with respect to the refunding obligations, Lehman may terminate this Agreement by giving notice thereof to the Borrower with a copy to the Trustee, and receive from or pay to the Borrower the Termination Amount. As used herein, "Termination Amount" means an amount, as determined by Lehman reasonably and in good faith on the basis of the arithmetic mean of quotations from at least three leading dealers in the relevant markets ("Dealers"), of the amount, if any, that each such Dealer would

require Lehman to pay to or receive from the Dealer in consideration of such Dealer entering into an agreement with Lehman which would have the effect of preserving for Lehman the economic equivalent of its rights under this Agreement commencing on the termination date of this Agreement; provided, however, that:

(i)     if more than three quotations are provided, the Termination Amount will be the arithmetic mean of such quotations, without regard to the quotations having the highest and lowest values,

(ii)     if exactly three quotations are provided, the Termination Amount will be the quotation remaining after disregarding the highest and lowest quotations,

for purposes of clauses (i) and (ii), if more than one quotation has the same highest value or lowest value, then one of such quotations shall be disregarded, and

(iii)     if Lehman is unable to obtain three such quotations, the Termination Amount shall be the amount, as reasonably determined in good faith by Lehman, to be its total gains or losses and costs in connection with a termination of this Agreement, including any gain or loss of bargain, cost of funding or, at the election of Lehman but without duplication, any gain or loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position, and

provided further, however, that in any event the Termination Amount shall also include reasonable losses and costs in respect of any payment required to have been made (assuming satisfaction of each applicable condition precedent) on or before the date on which this Agreement shall be terminated or deemed terminated as provided herein and not made. Any determination of the Termination Amount by Lehman shall be conclusive and binding on the parties hereto absent manifest error.


SECTION IV.          REPRESENTATIONS AND WARRANTIES

Section 4.1     Representations and Warranties.     Each party hereto represents and warrants to the other party hereto that:

(a)     this Agreement has been duly authorized, executed and delivered by it and, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes a legal, valid and binding obligation of it enforceable against it in accordance with the terms hereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity regardless of whether enforcement is sought in a proceeding in equity or at law;

(b)     its execution and delivery of this Agreement and its performance of its obligations hereunder do not and will not conflict with or constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under, its charter or

Sent by: LEHMAN                    212 5267746;         06/08/98  9:20AM; JetFax #550; Page 8/23

by-laws, (or, in the case of the Borrower and the Trustee, the Financing Documents to which it is a party), or any other agreement, instrument, judgment, injunction or order applicable to it or any of its property;

(c)    there is no proceeding pending or, to the best of its knowledge, threatened against it at law or in equity, or before any governmental instrumentality or in any arbitration, which would materially impair its ability to perform its obligations under this Agreement, and there is no such proceeding pending against it which purports or is likely to affect the legality, validity or enforceability of the Agreement;

(d)    in the case of the Borrower, each of the Financing Documents to which it is a party is a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with the terms thereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law);

(e)    in the case of the Borrower, no "event of default" or event which would with the passage of time or the giving of notice constitute an event of default has occurred and is continuing under the Financing Documents;

(f)    in the case of the Borrower, it is the owner and holder of all rights granted to or obtained by it under the Financing Documents, including the reinvestment rights contained therein, and there are no liens, claims or charges against the Borrower's interest in the reinvestment rights to the securities held in the Debt Service Reserve Fund other than any liens, claims or charges created by the Financing Documents;

(g)    in the case of the Borrower, the Bond Payment Dates and Reserve Requirement listed on Exhibit E are identical to the Bond Payment Dates and Reserve Requirement established under the Financing Documents.

(h)    in the case of the Borrower (i) it is not entitled to claim, and shall not assert any claim, with respect to itself or its revenues, assets or property (irrespective of the use or intended use thereof), of immunity on the grounds of sovereignty or similar grounds from suit, jurisdiction of any court, relief by way of injunction, order for specific performance or for recovery of property, attachment of its assets (whether before or after judgment, in aid of execution, or otherwise) and execution or enforcement of any judgment to which it or its revenues or assets or property might otherwise be entitled in any suit, action or proceeding relating to this Agreement in the courts of any jurisdiction, nor may there be attributed to the Borrower or its revenues, assets or property any such immunity (nor shall such attribution be claimed by the Borrower), and (ii) the Borrower has entered into this Agreement for purposes of managing its borrowings or investments by increasing the predictability of its cash flow from earnings on its investments and not for purposes of speculation.

SECTION V.        CONDITIONS PRECEDENT

Sent by: LEHMAN                    212 5267746;              06/08/98  9:20AM;JetFax #550;Page 9/23

Section 5.1    Conditions Precedent.  The performance of the obligations of the Trustee and Lehman hereunder are conditioned upon the occurrence of the following:

(a)    delivery to the Trustee, the Bond Insurer and the Borrower of an opinion of counsel to Lehman, in the form of Exhibit A; and

(b)    delivery to the Trustee, the Bond Insurer and Lehman of an opinion of counsel to the Borrower, in the form of Exhibit B.

## SECTION VI        DEFAULTS; TERMINATION

Section 6.1    Events of Default.  The occurrence of any of the following events shall constitute an Event of Default hereunder:

(a)    the Trustee shall fail, for any reason, (other than because (i) cash is not available in the Debt Service Reserve Fund and (ii) such cash is not available because the Trustee withdrew funds from the Debt Service Reserve Fund in order to make a regularly scheduled debt service payment on a Bond Payment Date on the obligations issued under the Indenture) to purchase any Eligible Securities tendered by the Qualified Dealer in accordance with this Agreement in accordance with Section 2.1 upon due tender of such Eligible Securities in accordance with the provisions of this Agreement;

(b)    the Trustee or the Borrower shall default in the performance of any its respective obligations or agreements under this Agreement, other than as described in clause (a) above;

(c)    any representation or warranty of the Borrower contained in this Agreement proves to have been incorrect, false or misleading in any material respect as of the date on which it was made;

(d)    Lehman shall fail to cause to be sold to the Trustee, during any Sale Period, Eligible Securities; or

✱    (e)    Lehman shall admit its inability to pay its debts or shall file or have filed against it (and such filing against it shall remain unstayed or not be dismissed within sixty (60) days of the date thereof) a petition under the United States Bankruptcy Code.

Section 6.2    Remedies of Lehman.  Upon the occurrence of an Event of Default described in Section 6.1(a), (b) or (c), Lehman shall have the right to:

(a)    cause a Qualified Dealer to sell to the Trustee or sell to any other purchaser all of the Eligible Securities which were to be sold hereunder which have not theretofore been sold to and purchased by the Trustee;

DSRPA(GY): RC/BONY(CHI)

(b)     immediately terminate this Agreement by giving notice thereof to the Trustee, the Bond Insurer and the Borrower; and/or

(c)     make demand for the payment of damages, by notice to the Trustee, the Bond Insurer and the Borrower, whereupon the Borrower shall pay to Lehman, as liquidated damages and not as a penalty, on demand, (i) (A) if this Agreement has not been terminated, an amount equal to the Resale Loss Amount (as defined below) for any Eligible Securities which have been sold to a third party or sold to the Trustee pursuant to clause (a) above or (B) if this Agreement has been terminated, an amount equal to the total amount required, determined as of the date of demand for such payment by Lehman in good faith, to preserve for Lehman the economic equivalent of its right to cause to be sold Eligible Securities to the Trustee under this Agreement through the Termination Date and otherwise to compensate Lehman for any losses and costs (including loss of bargain and costs of funding and any amount payable by Lehman to any dealer) that it may incur as a result of the failure of the Trustee to purchase such Eligible Securities or the termination of this Agreement, and (ii) without duplication of any costs described in (i) above, any incidental costs and expenses (including reasonable legal fees and expenses) incurred by Lehman and the Qualified Dealer in connection with any resale of such Eligible Securities and the enforcement of its rights hereunder. As used herein "Resale Loss Amount" means with respect to any Eligible Securities, the sum of (x) interest on the Purchase Price of such Eligible Securities for each day from and including the date the Trustee failed to purchase the Eligible Securities to but excluding the date on which such Eligible Securities are resold to a third party or to the Trustee, (y) the excess, if any, of the Purchase Price of such Eligible Securities over the amount received by the Qualified Dealer upon such resale of the securities (the "Shortfall Amount"), and (z) interest on the Shortfall Amount from and including the resale date to but excluding the date on which the Trustee or the Borrower, as applicable, compensates Lehman for its losses as described herein. Interest shall accrue at a rate per annum equal to the Default Rate.

Section 6.3     Remedies of Borrower.     Upon the occurrence of an Event of Default described in Section 6.1(d) or (e), the Borrower shall have the right , with the consent of the Bond Insurer, and shall, at the direction of the Bond Insurer:

(a)     to direct Lehman to cause a Qualified Dealer to sell to the Trustee the Eligible Securities which were to be sold hereunder which have not theretofore been sold to the Trustee;

(b)     to immediately terminate this Agreement by giving written notice thereof to the Trustee and Lehman; and/or

(c)     to make demand for the payment of damages, by written notice to the Trustee and Lehman, whereupon Lehman shall pay to the Borrower, as liquidated damages and not as a penalty, on demand, (i)(A) if this Agreement has not been terminated, an amount equal to the Borrower Loss Amount (as defined below) for any Eligible Securities which were to have been sold to the Trustee pursuant to clause (a) above or (B) if this Agreement has been terminated, an amount equal to the total amount required, determined as of the date of demand for such payment by the Borrower in good faith, to preserve for the Borrower the economic equivalent of the value

Sent by: LEHMAN                    212 5267746;           06/08/98  9:21AM;*JetFax* #550;Page 11/23

which the Borrower would receive hereunder upon the sale of Eligible Securities to the Trustee under this Agreement through the Termination Date and otherwise to compensate the Borrower for any losses and costs (including loss of bargain and costs of funding) that it may incur as a result of the failure of Lehman to cause to be sold such Eligible Securities or the termination of this Agreement, and (ii) without duplication of any costs described in (i) above, any incidental costs and expenses (including reasonable legal fees and expenses) incurred by the Borrower in connection with the enforcement of its rights hereunder. As used herein "Borrower Loss Amount" means with respect to any Eligible Securities, the amount which would have been earned by the Borrower on such Eligible Securities for each day from and including the Bond Payment Date immediately preceding the date the Event of Default under Section 6.1(d) or (e) occurred to but excluding the earlier of the date such Eligible Securities were sold to the Trustee or the Bond Payment Date immediately following the date the Event of Default under Section 6.1(d) or (e) occurred, which amount shall be calculated as if the Trustee had purchased such Eligible Securities at the Purchase Price thereof.

Section 6.4    No Waiver; Remedies Cumulative.  No failure or delay on Lehman's of the Borrower's part in exercising any if its respective rights or remedies hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such rights or remedies preclude any other or further exercise thereof or the exercise of any other rights or remedies. Lehman's and the Borrower's respective rights and remedies hereunder are cumulative and not exclusive to any rights or remedies provided by law, this Agreement or otherwise. None of the terms or provisions of this Agreement may be waived, modified or amended except in a writing duly signed by the Borrower, the Trustee, the Bond Insurer and Lehman.

SECTION VII.    MISCELLANEOUS

Section 7.1    Notices.  All notices, demands or other communications hereunder shall be given or made in writing and shall be delivered personally, or sent by certified or registered mail, postage prepaid, return receipt requested, or overnight delivery service, telex or telecopy to the party to whom they are directed at the following addresses, or at such other addresses as may be designated by notice from such party to all other parties:

To Lehman:

Lehman Brothers Special Financing Inc.
3 World Financial Center, 7th Floor
New York, NY 10285
Attention:     Municipal Swaps and Investment Products - Middle Office
Telephone:     212-526-7133
Telecopy:      212-528-6927

DSBFA(GY): HC/BONY(CIII)

10

To the Trustee:

The Bank of New York
10161 Centurion Parkway
Jacksonville, FL 32256
Attention:      Corporate Trust – South Carolina
Telephone:     904-998-4707
Telecopy:      904-645-1972

[FOR DELIVERY OF BOOK-ENTRY GOVERNMENT OBLIGATIONS]
BANK OF NYC/CUST/Conway Hosp 98/TAS #411999
ABA: 021000018

[FOR DELIVERY OF DTC ELIGIBLE SECURITIES]
DTC: PARTICIPANT ID 901
A/C: Conway Hospital 98 #411999

To the Borrower:

Conway Hospital, Inc.
300 Singleton Ridge Road
Conway, SC 29526-9175
Attention:      Vice President, Fiscal Services
Telephone:     843-347-8037
Telecopy:      843-347-0647

To the Bond Insurer:

Ambac Assurance Corporation
One State Street Plaza
New York, NY 1004
Attention:      Manager of Healthcare Underwriting
Telephone:     212-208-3419
Telecopy:      212-797-5725

Any notice, demand or other communication given in a manner prescribed in this Section 7.1 shall be deemed to have been delivered on receipt.

Section 7.2    Binding Effect; Transfer.    This Agreement shall be binding upon the Borrower, the Trustee and Lehman and upon their respective permitted successors and transferees. Lehman shall be entitled to transfer this Agreement, and its interests and obligations hereunder upon notice to the Borrower, the Bond Insurer and the Trustee, to any affiliate of Lehman or, with the written consent of the Bond Insurer (such consent not to be unreasonably

Sent by: LEHMAN          212 5267746;          06/08/98   9:21AM;JetFax #550;Page 13/23

withheld) to any entity with a rating of at least "A" by a nationally recognized rating agency (or its obligations shall be guaranteed by an entity so rated), provided that the transferee shall assume all of the rights and obligations of Lehman hereunder. Such transferee shall immediately become Lehman hereunder upon the delivery of such notice to the Trustee, the Bond Insurer and the Borrower, and if required, upon the written consent of the Bond Insurer. Neither the Borrower nor the Trustee may transfer this Agreement without the prior written consent of Lehman and the Bond Insurer, provided that this Agreement may be transferred by the Trustee to a successor trustee appointed pursuant to the Indenture.

Section 7.3   Limitation.   Nothing expressed or implied herein is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto, any right, remedy or claim by reason of this Agreement or any term hereof, and all terms contained herein shall be for the sole and exclusive benefit of the parties hereto and the Bond Insurer, and their successors and permitted transferees.

Section 7.4   Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

Section 7.5   Termination.   Unless earlier terminated pursuant to Section 6.2 hereof, this Agreement shall terminate on the later of (i) of the last Bond Payment Date set forth in Exhibit D, and (ii) the date the Trustee and the Borrower satisfy all of their respective obligations hereunder.

Section 7.6   Counterparts.   This Agreement may be executed in one or more counterparts and when each party hereto has executed at least one counterpart, this Agreement shall become binding on all parties and such counterparts shall be deemed to be one and the same document.

Section 7.7   Severability.   If one or more provisions of this Agreement or the applicability of any such provisions to any set of circumstances shall be determined to be invalid or ineffective for any reason, such determination shall not affect the validity and enforceability of the remaining provisions or the applicability of the same provisions or any of the remaining provisions to other circumstances.

Section 7.8   Amendments, Changes and Modifications.   This Agreement may be amended or any of its terms modified only by a written document authorized, executed and delivered by each of the parties hereto and with the prior written consent of the Bond Insurer (such consent not to be unreasonably withheld).

Section 7.9   Role of Lehman.   (a)  The Borrower and the Trustee each acknowledge and agree that (i) Lehman has not and is not acting as a fiduciary, agent or other representative for the holders of the bonds issued pursuant to the Indenture or for any other person in connection with this Agreement, (ii) Lehman has made no investigation with respect to the tax-exempt status of the bonds issued pursuant to the Indenture, and (iii) neither Lehman nor any of its directors, officers, agents or affiliates shall be liable or responsible for:  (A) the payments of any amounts owing on or with respect to the bonds issued pursuant to the Indenture; (B) the use

or application by the Trustee of any moneys payable to the Trustee hereunder; (C) any acts or omissions of the Borrower or the Trustee under the Indenture; (D) the validity, tax exemption or enforceability of the Indenture and the Bonds; or (E) the Trustee's or the Borrower's performance of its obligations under the Indenture or any other agreement or instrument with respect to the Indenture. Without limiting the foregoing, Lehman shall have no duty to ascertain whether the Trustee or the Borrower is in compliance with any applicable statutes, regulation or law or the Indenture.

(b)    The Borrower acknowledges that the economic terms of this Agreement have been individually negotiated by it and that, to the extent it has deemed necessary, it has consulted with its own legal, tax and investment advisors regarding its decision to enter into this Agreement.

Section 7.10    Fees and Commissions.   In connection with Lehman's negotiation and issuance of this Agreement, fees and commissions may have been paid by Lehman.   Upon written request from or on behalf of the Borrower or the Trustee, Lehman will identify in writing any such fee or commission, the amount thereof and the payee thereof.

Section 7.11    No Set Off.   The parties hereto expressly waive any right to set off claims and apply property held by any party in respect of any transaction against any obligations owing to it from the other party hereunder.

Section 7.12    Downgrade Event.    If a Downgrade Event has occurred, Lehman shall notify the Borrower, the Bond Insurer and the Trustee within five Business Days of such event. Lehman shall, within ten Business Days of written notice from the Borrower or the Trustee and, with the written consent or at the direction of the Bond Insurer, either (a) assign and transfer this Agreement to a provider of such investments whose long-term unsecured debt is rated at least A- by Standard & Poor's and A3 by Moody's, or (ii) terminate this Agreement in accordance with Section 6.3(c) hereof with respect to the Borrower's Loss Amount.

IN WITNESS WHEREOF, the Borrower, the Trustee and Lehman have caused this Debt Service Reserve Fund Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

CONWAY HOSPITAL, INC.

By:_____
Name:
Title:

THE BANK OF NEW YORK, AS TRUSTEE

By:_____
Name:   TREVOR A. COORE
Title:       VICE PRESIDENT

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____
Name:   T. Courtney Jenkins
Title:   Vice President

06/08/98  MON 14:50 FAX 2123140444          SHATTUCK HAMMOND                    ☒002

DRAFT 2 · May 26, 1998

**IN WITNESS WHEREOF,** the Borrower, the Trustee and Lehman have caused this Debt Service Reserve Fund Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

CONWAY HOSPITAL, INC.

By:

Name: PHILIP A. CLAYTON

Title: CEO

THE BANK OF NEW YORK, AS TRUSTEE

By:

Name: TREVOR A. COORE

Title: VICE PRESIDENT

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:

Name:

Title:

14

# LEHMAN BROTHERS

June 8, 1998

Conway Hospital, Inc.
Conway, SC

The Bank of New York
Jacksonville, FL

Ambac Assurance Corporation
New York, NY

Re:   $31,275,000 Horry County, South Carolina Hospital Revenue Bonds (Conway
Hospital, Inc.) Series 1998

Ladies and Gentlemen:

I have acted as counsel to Lehman Brothers Special Financing Inc.("Lehman") in
connection with the execution and delivery by Lehman of the Debt Service Reserve Fund
Agreement dated as of June 8, 1998 (the "Agreement") by and among Lehman, The Bank
of New York, as Trustee (the "Trustee") and Conway Hospital, Inc. (the "Borrower").
Capitalized terms used herein and not defined herein have the respective meanings given
to them in the Agreement.

In connection with the opinions expressed below, I have examined, or have had
examined on my behalf, a copy of the Agreement executed by Lehman and such other
agreements, instruments, documents and records of Lehman and certificates and
statements by public officials and officers of Lehman as I have deemed necessary or
appropriate as a basis for the opinions hereinafter expressed.

Based on the foregoing but subject to the assumptions, exceptions, qualifications
and limitations hereinafter expressed, I am of the opinion that:

1.      Lehman is a corporation duly incorporated, validly existing and in good
        standing under the laws of the State of Delaware and has the corporate
        power and authority to execute and deliver the Agreement and to perform
        its obligations thereunder.

2.      The Agreement has been duly and validly authorized, executed and
        delivered by Lehman and each constitutes the legal, valid and binding
        obligation of Lehman, enforceable against Lehman in accordance with its
        terms.

Sent by: LEHMAN    212 5286664;    06/08/08 2:18PM; *Jetfax #568;Page 6/6*

The foregoing opinions are subject to the following assumptions, exceptions, qualifications and limitations:

A.    My opinion in paragraph 2 above is subject to the effect of any bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally (including, without limitation, the effect of statutory or other laws regarding fraudulent or other similar transfers) and general principles of equity, regardless of whether enforceability is considered in a proceeding in equity or at law.

B.    I am a member of the Bar of the State of New York and render no opinion on the laws of any jurisdiction other than the State of New York, the United States of America and the General Corporation Law of the State of Delaware.

C.    My opinions are limited to the present laws and to the facts as they presently exist. I assume no obligation to revise or supplement this opinion should the present laws of the jurisdictions referred to in paragraph B above be changed by legislative action, judicial decision or otherwise.

D.    This letter is rendered to you in connection with the Agreement and the transactions related thereto and may not be relied upon by any other person or by you in any other context or for any other purpose. This letter may not be quoted in whole or in part, nor may copies thereof be furnished or delivered to any other person, without the prior written consent of Lehman, except that you many furnish copies hereof (i) to your independent auditors and attorneys, (ii) to any United States, state or local authority having jurisdiction over you or over Lehman, (iii) pursuant to the order or any legal process of any court of competent jurisdiction or any governmental agency, and (iv) in connection with any legal action arising out of the Agreement.

E.    I have assumed with your permission (i) the genuineness of all signatures by the Trustee and the Borrower, (ii) the authenticity of documents submitted to me as originals and the conformity with the original documents of all documents submitted to me as copies, and (iii) the due execution and delivery, pursuant to due authorization, of the Agreement by each party other than Lehman.

Very truly yours,

Sent by: LEHMAN                               212 5267746;              06/08/P° 9:23AM; *JetFax* #550; Page 20/23

**EXHIBIT C**

---

## Lehman Brothers Special Financing Inc.
### Sale Notice
### Under the (_____) Agreement
### Dated as of:  (_____)

**To:**      _____, as (Trustee/Trustee)
         Attention: _____
         Fax: _____
         Phone: _____

**From:**     Lehman Brothers Inc.
         Attention: _____
         Fax: _____
         Phone: _____

**Date:**      (_____)

**Re:**        (_____)

**Date and Price**

Purchase Date:              (_____)
Specified Purchase Price:      (_____)

**Specific Government Obligations**

| Cusip | Type | Maturity | Coupon | Face Amount | Maturity Amount | Accrued Interest |
|-------|------|----------|--------|-------------|-----------------|------------------|
| (____) | (____) | (____) | (____) | (____) | (____) | (____) |

**Delivery vs. Payment (Book Entry Delivery)**

On the Purchase Date, LBI will sell Face Value (_____)      (BILLS/NOTES) maturing (_____)
to:
         (_____)
         (_____)
         Re: (_____)

On the Purchase Date, LBI will receive (_____)
         **CHASE NYC/Lehman**
         **ABA: 021000021**
         **A/C #066206677**

---

Sent by: LEHMAN          212 5267746;          06/09 '98  9:23AM; *JetFax* #550; Page 21/23

**EXHIBIT D**

Eligible Securities shall further mean:

(1)     obligations of any of the following federal agencies which obligations represent the full faith and credit of the United States of America, including: Export-Import Bank; Farm Credit System Financial Assistance Corporation; Rural Economic Community Development Administration (formerly the Farmers Home Administration); General Services Administration; U.S. Maritime Administration; Small Business Administration; Government National Mortgage Association (GNMA); U.S. Department of Housing and Urban Development (PHA's); Federal Housing Administration and Federal Financing Bank;

(2)     direct obligations of any of the following federal agencies which are not fully guaranteed by the full faith and credit of the United States of America: senior debt obligations rate "AAA" by Standard & Poor's Corporation ("S&P") and "Aaa" by Moody's Investors Service, Inc. ("Moody's") issued by the Federal National Mortgage Corporation; obligations of the Resolution Funding Corporation (REFCORP); senior debt obligations of the Federal Home Loan Bank System; and senior debt obligations of other Government Sponsored Agencies approved by Ambac Assurance;

(3)     U.S. dollar denominated deposit accounts, federal funds and bankers' acceptances with domestic commercial banks which have a rating on their short-term certificates of deposit on the date of purchase of "A1" or "A-1+" by S&P and "P-1" by Moody's and maturing no more than 360 days after the date of purchase (ratings on holding companies are not considered as the rating of the bank); and

(4)     commercial paper which is rated at the time of purchase in the single highest classification, "A-1+" by S&P and "P-1" by Moody's and which matures not more than 270 days after the date of purchase.

Sent by: LEHMAN                    212 5267746;              06/00/98  9:24AM; JetFax #550; Page

**EXHIBIT E**

Schedule of Bond Payment Dates
and Reserve Requirement

| Bond Payment Dates | Reserve Requirement |
|---|---|
| 07/01/1998 | $2,334,280.02 |
| 01/01/1999 | $2,334,280.02 |
| 07/01/1999 | $2,334,280.02 |
| 01/01/2000 | $2,334,280.02 |
| 07/01/2000 | $2,334,280.02 |
| 01/01/2001 | $2,334,280.02 |
| 07/01/2001 | $2,334,280.02 |
| 01/01/2002 | $2,334,280.02 |
| 07/01/2002 | $2,334,280.02 |
| 01/01/2003 | $2,334,280.02 |
| 07/01/2003 | $2,334,280.02 |
| 01/01/2004 | $2,334,280.02 |
| 07/01/2004 | $2,334,280.02 |
| 01/01/2005 | $2,334,280.02 |
| 07/01/2005 | $2,334,280.02 |
| 01/01/2006 | $2,334,280.02 |
| 07/01/2006 | $2,334,280.02 |
| 01/01/2007 | $2,334,280.02 |
| 07/01/2007 | $2,334,280.02 |
| 01/01/2008 | $2,334,280.02 |
| 07/01/2008 | $2,334,280.02 |
| 01/01/2009 | $2,334,280.02 |
| 07/01/2009 | $2,334,280.02 |
| 01/01/2010 | $2,334,280.02 |
| 07/01/2010 | $2,334,280.02 |
| 01/01/2011 | $2,334,280.02 |
| 07/01/2011 | $2,334,280.02 |
| 01/01/2012 | $2,334,280.02 |
| 07/01/2012 | $2,334,280.02 |
| 01/01/2013 | $2,334,280.02 |
| 07/01/2013 | $1,862,500.00 |
| 01/01/2014 | $1,862,500.00 |
| 07/01/2014 | $1,862,500.00 |
| 0 | 1,862,500.00 |
| 0 | 1,862,500.00 |
| 0 | 1,862,500.00 |
| 0 | 1,862,500.00 |
| 0 | ,862,500.00 |
| 0 | ,862,500.00 |

Sent by: LEHMAN          212 5267746;          06/0   98 09:24AM; JetFax #550; Page

**EXHIBIT E**

Schedule of Bond Payment Dates
and Reserve Requirement

| Bond Payment Dates | Reserve Requirement |
| --- | --- |
| 01/01/2018 | $1,862,500.00 |
| 07/01/2018 | $1,862,500.00 |
| 01/01/2019 | $1,862,500.00 |
| 07/01/2019 | $1,862,500.00 |
| 01/01/2020 | $1,862,500.00 |
| 07/01/2020 | $1,862,500.00 |
| 01/01/2021 | $1,862,500.00 |
| 07/01/2021 | $1,862,500.00 |
| 01/01/2022 | $1,862,500.00 |
| 07/01/2022 | $1,862,500.00 |
| 01/01/2023 | $1,862,500.00 |
| 07/01/2023 | $1,862,500.00 |
| 01/01/2024 | $1,862,500.00 |
| 07/01/2024 | $1,862,500.00 |
| 01/01/2025 | $1,862,500.00 |
| 07/01/2025 | $1,862,500.00 |
| 01/01/2026 | $1,862,500.00 |
| 07/01/2026 | $1,862,500.00 |
| 01/01/2027 | $1,862,500.00 |
| 07/01/2027 | $1,862,500.00 |
| 01/01/2028 | $1,862,500.00 |
| 07/01/2028 | $1,862,500.00 |

**ADDENDUM IV**



**THE BANK OF NEW YORK MELLON**
The Bank of New York Mellon Trust Company, N.A.

| | |
|---|---|
| CONWAY HOSPITAL<br>ATTN: MS. TIFFANY RHODES<br>300 SINGLETON RID RD 829<br>CONWAY          SC 29528-0829<br><br>007445 | **Account Statement**<br>Statement Period 07/01/2008 Through 07/31/2008<br><br>Account<br>HORRY COUNTY, SOUTH CAROLINA<br>HOSPITAL REVENUE BONDS (CONWAY HOSPITAL,<br>INC.) SERIES 1998<br>RESERVE FUND |

If you are interested in accessing your Account Statement on-line, please contact your Relationship Manager about our web-based INFORM product.

Visit us at www.bnymellon.com

**ADMINISTRATIVE CONTACT: SHARON S. SETTERLUND**
10161 CENTURION PARKWAY
JACKSONVILLE, FL 32256
904-998-4715
SHARON.SETTERLUND@BNYMELLON.COM

## Account Overview



| Percent of all Investments | | Asset Classification | Market Value |
|---|---|---|---|
| 100% | O | CASH AND SHORT TERM | 2,431,805.83 |
| **100%** | | **TOTAL OF ALL INVESTMENTS** | **2,431,805.83** |

## Summary of Assets Held

| Asset Classification | Market Value | Cost | Accrued Income | Est Annual Income | Market Yield |
|---|---|---|---|---|---|
| CASH AND SHORT TERM | 2,431,805.83 | 2,403,168.26 | 6,634.19 | 2,711.29 | 0.11% |
| **ACCOUNT TOTALS** | **2,431,805.83** | **2,403,168.26** | **6,634.19** | **2,711.29** | **0.11%** |

## Summary of Cash Transactions

| | Current Period | | | Year-to-Date | |
|---|---|---|---|---|---|
| Transaction Category | Income | Principal | Realized Gains/Losses | Income | Principal |
| OPENING BALANCE | 0.00 | 0.00 | | 0.00 | 0.00 |
| DIVIDENDS | 0.30 | 0.00 | 0.00 | 502.42 | 0.00 |
| INTEREST | 58,158.10 | 0.00 | 0.00 | 124,717.91 | 0.00 |
| SALES AND REDEMPTIONS | 0.00 | 2,346,451.48 | 11,073.78 | 0.00 | 4,816,996.26 |
| OTHER CASH ADDITIONS | 0.00 | 36.19 | 0.00 | 0.00 | 36.19 |
| OTHER CASH RECEIPTS | 1,454.02 | 0.00 | 0.00 | 3,393.15 | 0.00 |
| PAYMENTS AND WITHDRAWALS | 36.19 - | 1,454.02 - | 0.00 | 36.19 - | 69,606.55 - |
| FEES AND EXPENSES | 0.00 | 0.00 | 0.00 | 9.44 - | 0.00 |
| OTHER CASH DISBURSEMENTS | 59,586.23 - | 0.00 | 0.00 | 128,567.85 - | 0.00 |
| PURCHASES | 0.00 | 2,345,033.65 - | 0.00 | 0.00 | 4,747,425.90 - |
| **CLOSING BALANCE** | **0.00** | **0.00** | **11,073.78** | **0.00** | **0.00** |

The above cash transactions summary is provided for information purposes only and may not reflect actual taxable income or deductible expenses as reportable under the Internal Revenue Code.



**THE BANK OF NEW YORK MELLON**
The Bank of New York Mellon Trust Company, N.A.

Statement Period 07/01/2008 Through 07/31/2008
Account
CONWAY HOSPITAL 98 RESERVE FUND

## Statement of Assets Held

| Shares / Par Value | Asset Description | Market Price Average Cost | Market Value Cost | Accrued Income Est Annual Income | Market Yield |
|---|---|---|---|---|---|
| **CASH AND SHORT TERM** | | | | | |
| 2,334,280.000 | CORAL COML PAPER TR SER K IAM | 100.00000 | 2,334,280.00 | 6,634.19 | 0.00% |
| | V/R | 98.77866 | 2,305,770.57 | 0.00 | |
| | CUSIP: 2177M9AG5 | | | | |
| | MATURITY DATE: 01/02/2009 | | | | |
| | RATE: 3.35175% | | | | |
| 68,888.270 | DREYFUS CASH MGMT 288 INST'L | 1.00000 | 68,888.27 | 0.00 | 2.54% |
| | CUSIP: S99991750 | 1.00000 | 68,888.27 | 1,756.65 | |
| 29,000.000 | GENERAL ELEC CAP CORP DISC CP | 98.75019 | 28,637.56 | 0.00 | 3.33% |
| | CUSIP: 36959HN29 | 98.30834 | 28,509.42 | 954.64 | |
| | MATURITY DATE: 01/02/2009 | | | | |
| | RATE: 0.00% | | | | |
| **Total CASH AND SHORT TERM** | | | 2,431,805.83 | 6,634.19 | 0.11% |
| | | | 2,403,168.26 | 2,711.29 | |
| | | | | | |
| **ACCOUNT TOTALS** | | | 2,431,805.83 | 6,634.19 | 0.11% |
| | | | 2,403,168.26 | 2,711.29 | |

Total Market Value Plus Total Accrued Income 2,438,440.02

## Statement of Transactions

| Transaction Date | Transaction Description | Income | Principal | Cost | Realized Gains/Losses |
|---|---|---|---|---|---|
| 07/01/08 | **OPENING BALANCE** | 0.00 | 0.00 | 2,333,926.08 | |
| | | | | | |
| 07/01/08 | Purchase | 0.00 | 2,305,770.57 - | 2,305,770.57 | 0.00 |
| | CORAL COML PAPER TR SER K IAM | | | | |
| | RATE: 0.00% MATURITY: 01/02/09 | | | | |
| | @ 98.778663 | | | | |
| | LEHMAN-LBI | | | | |
| | TRADE DATE 7/01/08 SET/DATE 7/01/08 | | | | |
| | CUSIP 2177M9AG5 | | | | |
| | 2,334,280.00 SHARES | | | | |
| 07/01/08 | Purchase | 0.00 | 28,509.42 - | 28,509.42 | 0.00 |
| | GENERAL ELEC CAP CORP DISC CP | | | | |
| | MATURITY: 01/02/09 | | | | |
| | @ 98.308 | | | | |
| | LEHMAN-LBI | | | | |
| | TRADE DATE 7/01/08 SET/DATE 7/01/08 | | | | |
| | CUSIP 36959HN29 | | | | |
| | 29,000.00 SHARES | | | | |
| 07/01/08 | Purchase | 59,585.93 - | 0.00 | 59,585.93 | 0.00 |
| | DREYFUS CASH MGMT 288 INST'L | | | | |
| | 59,585.93 SHARES | | | | |
| 07/01/08 | Purchase | 0.00 | 10,717.47 - | 10,717.47 | 0.00 |
| | DREYFUS CASH MGMT 288 INST'L | | | | |
| | 10,717.47 SHARES | | | | |
| 07/01/08 | Redemptn | 1,282.54 | 10,717.46 | 10,717.46 - | 0.00 |
| | GENERAL ELEC CAP CORP DISC CP | | | | |
| | MATURITY: 07/01/08 | | | | |
| | @ 100.00 | | | | |
| | 12,000.00 SHARES | | | | |
| 07/01/08 | **DAILY ENDING BALANCE** | 58,303.39 - | 2,334,280.00 - | 4,727,792.01 | 0.00 |
| | | | | | |
| 07/02/08 | Purchase | 0.30 - | 0.00 | 0.30 | 0.00 |
| | DREYFUS CASH MGMT 288 INST'L | | | | |
| | 0.30 SHARES | | | | |
| 07/02/08 | Dividend | 0.30 | 0.00 | 0.00 | 0.00 |
| | DREYFUS CASH MGMT 288 INST'L | | | | |
| | DIVIDEND | | | | |
| 07/02/08 | **DAILY ENDING BALANCE** | 58,303.39 - | 2,334,280.00 - | 4,727,792.31 | 0.00 |
| | | | | | |
| 07/03/08 | Sale | 0.00 | 1,417.83 | 1,417.83 - | 0.00 |
| | DREYFUS CASH MGMT 288 INST'L | | | | |
| | 1,417.83 SHARES | | | | |
| 07/03/08 | Redemptn | 56,885.56 | 2,334,280.00 | 2,323,206.22 - | 11,073.78 |
| | CORAL CP TRUST | | | | |



**THE BANK OF NEW YORK MELLON**
The Bank of New York Mellon Trust Company, N.A.



Statement Period 07/01/2008 Through 07/31/2008
Account ▮▮▮▮▮▮
CONWAY HOSPITAL 98 RESERVE FUND

## Statement of Transactions - Continued

| Transaction Date | Transaction Description | Income | Principal | Cost | Realized Gains/Losses |
|---|---|---|---|---|---|
| | RATE: 4.84675% MATURITY: 07/01/08 S-K REDEMPTION AS OF 07/01/08 2,334,280.00 SHARES | | | | |
| 07/03/08 | **DAILY ENDING BALANCE** | **1,417.83 -** | **1,417.83** | **2,403,168.26** | **11,073.78** |
| 07/07/08 | Cash Debit TRANSFER TO INCOME | 0.00 | 1,417.83 - | 0.00 | 0.00 |
| 07/07/08 | Cash Credit TRANSFER FROM PRINCIPAL | 1,417.83 | 0.00 | 0.00 | 0.00 |
| 07/07/08 | **DAILY ENDING BALANCE** | **0.00** | **0.00** | **2,403,168.26** | **11,073.78** |
| 07/16/08 | Purchase DREYFUS CASH MGMT 288 INST'L 36.19 SHARES | 0.00 | 36.19 - | 36.19 | 0.00 |
| 07/16/08 | Sale DREYFUS CASH MGMT 288 INST'L 36.19 SHARES | 0.00 | 36.19 | 36.19 - | 0.00 |
| 07/16/08 | Cash Debit TRANSFER TO PRINCIPAL | 36.19 - | 0.00 | 0.00 | 0.00 |
| 07/16/08 | Cash Debit TRANSFER TO INCOME TO REVERSE INCORRECT TRANSFER | 0.00 | 36.19 - | 0.00 | 0.00 |
| 07/16/08 | Cash Credit TRANSFER FROM INCOME | 0.00 | 36.19 | 0.00 | 0.00 |
| 07/16/08 | Cash Credit TRANSFER FROM PRINCIPAL | 36.19 | 0.00 | 0.00 | 0.00 |
| 07/16/08 | **DAILY ENDING BALANCE** | **0.00** | **0.00** | **2,403,168.26** | **11,073.78** |
| 07/31/08 | **CLOSING BALANCE** | **0.00** | **0.00** | **2,403,168.26** | **11,073.78** |

Cumulative realized capital gain and loss position from 12/31/2007 for securities held in principal account:

Short Term:     12,860.02 *        Long Term:         0.00 *

* The above gain and loss position does not include transactions where tax cost information is incomplete or unavailable.

Cash and securities set forth on this Account Statement are held by The Bank of New York Mellon, an affiliate of The Bank of New York Mellon Trust Company, N.A. In addition, The Bank of New York Mellon Trust Company, N.A. may utilize subsidiaries and affiliates to provide services and certain products to the Account. Subsidiaries and affiliates may be compensated for their services and products.

The value of securities set forth on this Account Statement are obtained by The Bank of New York Mellon Trust Company, N.A., from its affiliate, The Bank of New York Mellon which determines such values for Global Corporate Trust on the basis of market prices and information obtained by The Bank of New York Mellon from unaffiliated third parties (including independent pricing vendors) ("third party pricing services"). The Bank of New York Mellon has not verified such market values or information and makes no assurances as to the accuracy or correctness of such market values or information or that the market values set forth on this Account Statement reflect the value of the securities that can be realized upon the sale of such securities. In addition, the market values for the securities set forth in this Account Statement may differ from the market prices and information for the same securities used by other business units of The Bank of New York Mellon Trust Company, N.A., The Bank of New York Mellon or their respective subsidiaries or affiliates based upon market prices and information received from other third party pricing services utilized by such other business units. Global Corporate Trust does not compare its market values with those used by, or reconcile different market values used by, other business units of The Bank of New York Mellon Trust Company, N.A., The Bank of New York Mellon or their respective subsidiaries or affiliates. Neither The Bank of New York Mellon Trust Company, N.A. nor The Bank of New York Mellon shall be liable for any loss, damage or expense incurred as a result of or arising from or related to the market values or information provided by third party pricing services or the differences in market prices or information provided by other third party pricing services.

# ADDENDUM V



November 18, 2008

Capital Markets Contracts Legal
Lehman Brothers
1271 Avenue of the Americas, 43rd Floor
New York, New York 10020

The Bank of New York Mellon Trust Company, N.A.
10161 Centurion Parkway
Jacksonville, Florida 32256
Attn: Corporate Trust – South Carolina

**NOTICE OF TERMINATION AND DEMAND FOR PAYMENT OF DAMAGES
WITH RESPECT TO THAT CERTAIN
DEBT SERVICE RESERVE FUND AGREEMENT – GUARANTEED YIELD STRUCTURE
DATED AS OF JUNE 8, 1998 AMONG
CONWAY HOSPITAL, INC., THE BANK OF NEW YORK AND
LEHMAN BROTHERS SPECIAL FINANCING INC.**

This notice is given pursuant to Sections 6.3 (b) and (c) of that certain Debt Service Reserve Fund Agreement – Guaranteed Yield Structure (the *"Agreement"*) dated as of June 8, 1998, among Conway Hospital, Inc., a nonprofit corporation organized and existing under the laws of the State of South Carolina (the *"Borrower"*), The Bank of New York, now known as The Bank of New York Mellon Trust Company, N.A. (the *"Trustee"*) and Lehman Brothers Special Financing, Inc., a Delaware Corporation (*"Lehman"*).

Pursuant to Section 6.1 (e) of the Agreement, Lehman has admitted its inability to pay its debts by filing a bankruptcy petition 08-1388 on October 3, 2008, which constitutes an "Event of Default" under the Agreement.

Accordingly, and with the consent of Ambac Assurance Corporation (the *"Bond Insurer"*) signified below, the Borrower hereby gives written notice to the Trustee and Lehman that it is exercising its right:

        1.     To immediately terminate, as of the date of this notice, the Agreement pursuant to Section 6.3 (b) of the Agreement; and

        2.     To make demand for the payment of damages pursuant to Section 6.3 (c) of the Agreement.

*Member of Premier: The Nation's Largest Healthcare Alliance*

300 Singleton Ridge Road / P. O. Box 829 / Conway, South Carolina 29528-0829 / 843.347.7111 / **www.conwaymedicalcenter.com**

As the Agreement is being terminated, pursuant to Section 6.3 (c)(i)(B) of the Agreement, Lehman shall pay to the Borrower, as liquidated damages and not as a penalty, on demand,

       (i)     an amount equal to the total amount required, determined as of the date of demand by the Borrower in good faith, to preserve for the Borrower the economic equivalent of the value which the Borrower would receive under the Agreement upon the sale of Eligible Securities (as defined in the Agreement) to the Trustee under the Agreement through the Termination Date (July 1, 2028, as defined in the Agreement) and otherwise to compensate the Borrower for any losses and costs (including loss of bargain and costs of funding) that it may incur as a result of the termination of the Agreement, and

       (ii)    without duplication of any costs described in (i) above, any incidental costs and expenses (including reasonable legal fees and expenses) incurred by the Borrower in connection with the enforcement of its rights under the Agreement.

The Borrower has calculated the amount due under (i) above as $739,006.18 and the amount due under (ii) above as $12,000 (as shown on the attached Exhibit A).

Please contact James Engel of Kensington Capital Advisors LLC, 518-392-5010, jengel@kensington-advisors.com, should you have any questions with respect to the calculation of the amounts due to the Borrower and please contact me for payment instructions.

CONWAY HOSPITAL, INC.

By Bret Barr
Its Vice President of Fiscal Services and
Chief Financial Officer

Ambac Assurance Corporation consents to Conway Hospital, Inc's termination and demand for payment of damages under that certain Debt Service Reserve Fund Agreement – Guaranteed Yield Structure (the "Agreement") dated as of June 8, 1998, among Conway Hospital, Inc., The Bank of New York, now known as The Bank of New York Mellon Trust Company, N.A. and Lehman Brothers Special Financing, Inc., a Delaware Corporation.

AMBAC ASSURANCE CORPORATION

By:
Its

JAMES M. CAPRUSO
FIRST VICE PRESIDENT
AMBAC ASSURANCE CORPORATIO'

November 20, 2008

## EXHIBIT A

### DEBT SERVICE RESERVE FUND AGREEMENT – GUARANTEED YIELD STRUCTURE
### DATED AS OF JUNE 8, 1998 AMONG
### CONWAY HOSPITAL, INC., THE BANK OF NEW YORK AND
### LEHMAN BROTHERS SPECIAL FINANCING INC.

**CALCULATED AS OF THE DATE OF NOTICE OF TERMINATION**

**(i) Calculation of payment due from Lehman Brothers Special Financing Inc.**

| | |
|---|---:|
| Reserve Requirement as of date of demand: | $2,334,280 |
| Agreement Termination Date | 7/1/2028 |
| Interest rate on Agreement (A): | 5.8550% |
| Market interest rate as of the date of demand (B): | 3.1380% |
| Present Value of a Basis Point on remaining term (C): | $2,690.23 |

Formula used to determine payment: (A-B)*C*10,000
Calculation: (5.885% - 3.138%) * $2,690.23*10,000          **$739,006.18**

**(ii) Incidental costs and expenses**

| | |
|---|---:|
| Parker Poe Adams & Bernstein LLP | $5,000 |
| Haynsworth Sinkler Boyd, P.A. | $2,000 |
| Kensington Capital Advisors LLP | $5,000 |
| **Total** | **$12,000** |

**Total payment due to Conway Hospital, Inc. (i)+(ii)          $751,006.18**

## QUESTIONNAIRE SUBMITTED ON WEBSITE APRIL 17, 2012

**NOTE: Supporting documents uploaded with Questionnaire on April 17, 2012, are the same documents attached hereto as Addenda III through V, inclusive**

## CLAIM FORM FILING CONFIRMATION

Your claim form was successfully filed on 4/17/2012 at 2:33 PM Central. Please print this page as proof of your filing.

**Conway Hospital, Inc.**
**c/o Andrew J. White Jr., Esq.**
**Haynsworth Sinkler Boyd, P.A.**
**P.O. Box 2048**
**Greenville, SC 29601 UNITED STATES**

| | |
|---|---|
| Name of Debtor | Lehman Brothers Special Financing Inc. (08-13888) |
| Please identify the counterparties, guarantor and/or credit support provider to the derivative contract. | Lehman Brothers Special Financing Inc. (as INVESTMENT provider) and Conway Hospital, Inc. (as securities agreement investor) |
| Have you entered into a termination agreement with the Debtors establishing the agreed upon amounts due in respect of derivative contracts? | Selected: No |
| Have the derivative contracts matured or been terminated? | Selected: Yes |

| Item | Amount due to Debtor | Amount due from Debtor |
|---|---|---|
| Transaction Valuations | $0.00 | $849,102.04 |
| Unpaid Amounts | $0.00 | $0.00 |
| Collateral | $0.00 | $0.00 |
| Interest | $0.00 | $434,693.00 |
| Other costs | $0.00 | $7,000.00 |
| **DERIVATIVE CLAIM AMOUNT** | | $1,290,795.04 |

Provide the derivative claim amount by supplying each line item included in the calculation thereof.

Documentation of Transactions: Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim.

The claim of Creditor Conway Hospital, Inc. is based on a securities contract. However and solely out of abundance of caution, in the event that that it is determined that its claim should be classified as being based on a Derivative Claim in this case, then for such purpose this Creditor is completing this Questionnaire and submitting this and other documentation as contemplated by this Questionnaire. Pursuant to 11 U.S.C 562(a), the damages set forth in a claim of a creditor arising under a Securities Contract (or a Swap Contract, Forward Contract or other financial instrument listed in that statute) are determined as of the earlier of the date of (a) rejection or (b) liquidation, termination or acceleration of the contract. For purposes of this Questionnaire and Creditor's related Proof of Claim, the above securities contract is deemed to have been rejected by Debtor as of the Effective Date in this case (March 6, 2012) inasmuch as Creditor contends the subject contract was an unrejected

executory contract prior to such Effective Date. See Creditor's Proof of
Claim Addendum I for further discussion of this topic as well as
information regarding an attempted termination prior to the Effective Date,
which this Creditor asserts as ineffective.

**Documents**
Lehman Securities Agreement.pdf

Termination Notice: Please provide a
copy of the termination notice, including
evidence supporting delivery date of the
termination notice.

Termination of this contract occurred by reason of the rejection of the
contract on the Effective Date (March 6, 2012), as provided in the Notice of
Entry of Order Confirming Modified Third Amended Joint Chapter 11 Plan of
Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated January
19, 2012.

Valuation Statement: Please provide a
copy of the valuation statement. Please
identify any collateral that has been
posted by any party in connection with
the transactions and any claims of set-off
against other transactions reflected in
the claim.

**Documents**
Conway.xls

Individual Trade Level Detail: Please
provide with respect to each transaction
(i) the valuation date (to the extent not
included in your valuation statement) and
value and (ii) details for the purpose of
identifying and reconciling each
transaction (e.g. including, as applicable,
trade id, electronic trade reference id,
trade type, product, trade date, reference
obligation or reference entity, factor and
original contract notional amount,
quantity/unit of measure, currency, price
or strike price, buy/sell, call or put, cap or
floor, effective date, and maturity date.
(For the avoidance of doubt, you are not
required to submit each and every one of
the foregoing)). Please provide this
information in Microsoft Excel format.

**Documents**
Conway.xls

ISDA Master Agreements Specifying
Market Quotation Methodology: If not
already provided in the valuation
statement, provide the date and identity
of and quotations received from
Reference Market-makers or other
persons (i.e. name of institution)
concerning the transactions.

Selected: No

ISDA Master Agreements Specifying
Loss Methodology: To the extent
applicable, if not already provided in the
valuation statement, provide the date and    Selected: No
identity of and quotations received from
Reference Market-makers or other
persons (i.e. name of institution)
concerning the transactions.

ISDA Master Agreements Specifying
Close-Out Amount Methodology: To the
extent applicable, if not already provided
in the valuation statement, provide the
date and identity of and quotations         Selected: No
received from Reference Market-makers
or other persons (i.e. name of institution)
concerning the transactions.

ISDA Master Agreements Specifying Any
Other Methodology: To the extent
applicable, if not already provided in the
valuation statement, provide the date and
identity of and quotations received from    Selected: No
Reference Market-makers or other
persons (i.e. name of institution)
concerning the transactions.

Non-ISDA Master Agreements: To the
extent applicable, if not already provided
in the valuation statement, provide the
date and identity of and quotations
received from Reference Market-makers
or other persons (i.e. name of institution)
concerning the transactions.

Selected: Yes
As mentioned above, the claim of Creditor Conway Hospital, Inc. is based
on a securities contract. However and solely out of abundance of caution,
in the event that that it is determined that its claim should be classified as
being based on a Derivative Claim in this case, then for such purpose this
Creditor is completing this Questionnaire and submitting this and other
documentation as contemplated by this Questionnaire. Pursuant to 11
U.S.C 562(a), the damages set forth in a claim of a creditor arising under a
Securities Contract (or a Swap Contract, Forward Contract or other
financial instrument listed in that statute) are determined as of the earlier
of the date of (a) rejection or (b) liquidation, termination or acceleration of
the contract. For purposes of this Questionnaire and Creditor's related
Proof of Claim, the above securities contract is deemed to have been
rejected by Debtor as of the Effective Date in this case (March 6, 2012)
inasmuch as Creditor contends the subject contract was an unrejected
executory contract prior to such Effective Date. See Creditor's Proof of
Claim Addendum I for further discussion of this topic as well as
information regarding an attempted termination prior to the Effective Date,
which this Creditor asserts as ineffective.

**Documents**
Lehman Securities Agreement.pdf

Replacement Transactions: If you
replaced a terminated transaction with a
transaction with the same economic
terms as the terminated transaction,
provide documentation evidencing such
replacement transaction and the
quotation(s) used, including specifying     Selected: No

any cash (or other consideration) paid or
received by or to any person to replace
the transactions, the name of each entity
that effectuated a replacement and when
any such transactions were effected.

If claim includes other costs, please
include a schedule that lists each such
cost by vendor and indicates the service
provided and amount paid.

**Documents**
Conway.xls

If claim includes interest charges,
please provide calculation in Microsoft
Excel format of interest including
principal amount, interest rate, term and
assumptions.

**Documents**
Conway.xls

Unpaid Amounts: Please specify any
unpaid amounts and interest accrued
thereon included in calculation of any
amounts due with respect to the
transactions.

**Documents**
Conway.xls

From: (864) 240-3275
Kim Karr
Haynsworth Sinkler Boyd
75 Beattie Place
11th Floor
Greenville, SC 29601

Origin ID: LQKA



Ship Date: 17APR12
ActWgt: 2.0 LB
CAD: 8172925/INET3250

Delivery Address Bar Code

Ref # AJW; 09762-0014
Invoice #
PO #
Dept #

J12101112190225

SHIP TO: (646) 282-2500          BILL SENDER
**ATT:Lehman Brothers Holdings Claims**
**Epiq Bankruptcy Solutions, LLC**
**757 3RD AVE FL 3**

**NEW YORK, NY 10017**



WED - 18 APR  A1
PRIORITY OVERNIGHT
ASR
**10017**
NY-US
**EWR**

TRK# **7934 6400 9392**
0201



# NB OGSA

512G1/C44D/A278

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an addtional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en//PrintIFrame.html                                    4/17/2012