# EXHIBIT C

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555(JMP)

Case No. 08-01420(JMP)(SIPA)

Adv. Case No. 09-01258

Adv. Case No. 08-01743

Adv. Case No. 09-01242

Case No. 09-14884-jmp

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS HOLDINGS, INC., et al.,

                    Debtors.

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

LEHMAN BROTHERS INC.,

                    Debtor.

- - - - - - - - - - - - - - - - - - -x

NEUBERGER BERMAN, LLC,

                    Plaintiff,

        -against-

PNC BANK, NATIONAL ASSOCIATION,

LEHMAN BROTHERS INC., AND LEHMAN

BROTHERS COMMERICAL CORPORATION,

                    Defendants.

- - - - - - - - - - - - - - - - - - -x

2

1    - - - - - - - - - - - - - - - - - - - -x

2    STATE STREET BANK AND TRUST COMPANY,

3                      Plaintiff,

4    LEHMAN COMMERCIAL PAPER INC.,

5           -against-

6                      Defendant.

7    - - - - - - - - - - - - - - - - - - - -x

8    LEHMAN BROTHERS SPECIAL FINANCING INC.,

9                      Plaintiff,

10   BNY CORPORATE TRUSTEE SERVICES, LTD.,

11          -against-

12                     Defendant.

13   - - - - - - - - - - - - - - - - - - - -x

14   In the Matter of:

15   LEHMAN RE LTD.,

16                     Debtor.

17   - - - - - - - - - - - - - - - - - - - -x

18               U.S. Bankruptcy Court

19               One Bowling Green

20               New York, New York

21               September 15, 2009

22               10:03 a.m.

23   B E F O R E :

24   HON. JAMES M. PECK

25   U.S. BANKRUPTCY JUDGE

3

1

2   RE: CASE NOS. 08-13555(JMP) and 08-01420(JMP)(SIPA)

3   HEARING re Interim Applications for Allowance of Compensation

4   for Professional Services Rendered and for Reimbursement of

5   Actual and Necessary Expenses [Docket No. 4839]

6

7   HEARING re Motion of Wells Fargo, NA for Relief from the

8   Automatic Stay [Docket No. 4640]

9

10  HEARING re Motion of Wells Fargo, NA for Relief from the

11  Automatic Stay [Docket No. 4671]

12

13  HEARING re Motion of Washington Mutual Bank f/k/a Washington

14  Mutual Bank, FA. For Relief from the Automatic Stay [Docket No.

15  4759]

16

17  HEARING re Motion of A/P Hotel, LLC for Relief from the

18  Automatic Stay [Docket No. 4950]

19

20  HEARING re Motion for Authorization to Assume an Interest Rate

21  Swap with MEG Energy Corp. [Docket No. 5012]

22

23

24

25

4

1

2  HEARING re Debtors' Motion for Establishment of Procedures for

3  the Debtors to Transfer Their Interests in Respect of

4  Residential and Commercial Loans Subject to Foreclosure to

5  Wholly-Owned Non-Debtor Subsidiaries [Docket No. 4966]

6

7  HEARING re Debtors' Motion for Establishment of Procedures for

8  the Debtors to Compromise Claims of the Debtors in Respect of

9  Real Estate Loans [Docket No. 4942]

10

11  HEARING re Motion of Landwirtschaftliche Rentenbank for 2004

12  Examination [Docket No. 4800]

13

14  HEARING re Debtors' Motion for Authorization to Implement

15  Alternative Dispute Resolution Procedures for Affirmative

16  Claims of Debtors Under Derivative Contracts [Docket No. 4453]

17

18  HEARING re Debtors' Motion to Compel Performance of Metavante

19  Corporation's Obligations Under an Executory Contract and to

20  Enforce the Automatic Stay [Docket No. 3691]

21

22  HEARING re Motion of DnB Nor Bank ASA for Allowance and Payment

23  of Administrative Expense Claim and Allowing Setoff of Such

24  Claim [Docket No. 4054]

25

5

1

2    HEARING re Motion of William Kuntz, III for Review of Dismissal

3    of Appeal [Docket No. 1261]

4

5    RE: ADV. CASE NO. 09-01258:

6    PRE-TRIAL CONFERENCE

7

8    RE: ADV. CASE NO. 08-01743:

9    PRE-TRIAL CONFERENCE

10

11   RE: ADV. CASE NO. 09-01242:

12   Motion of BNY Corporate Trustee Services Limited to Stay

13   Further Proceedings Pending Disposition of its Motion for Leave

14   to Appeal the August 12, 2009 Order Denying BNY's Motion to

15   Dismiss and any Disposition of the Merits of that Appeal

16

17   RE: CASE NO. 09-14884-jmp

18   HEARING re Joint provisional liquidators' request that the

19   Court grant recognition of the company's Chapter 15 case as a

20   foreign main proceeding or, alternatively, as a foreign non-

21   main proceeding, and award the JPLs the requested associated

22   relief

23

24   Transcribed by:  Clara Rubin

25                    Pnina Eilberg

6

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES, LLP

4          Attorneys for Debtors

5          767 Fifth Avenue

6          New York, NY 10153

7

8   BY:   HARVEY R. MILLER, ESQ.

9          ROBERT J. LEMONS, ESQ.

10         MARK I. BERNSTEIN, ESQ.

11         RICHARD P. KRASNOW, ESQ.

12         PETER GRUENBERGER, ESQ.

13         DENISE ALVAREZ, ESQ.

14         HOWARD B. COMET, ESQ.

15         RICHARD W. SLACK, ESQ.

16

17   WEIL, GOTSHAL & MANGES, LLP

18          Attorneys for Plaintiffs/Movants Lehman Brothers

19           Holdings, Inc. ("LBHI") and Lehman Brothers

20           Special Financing, Inc. ("LBSF")

21          1300 I Street, N.W.

22          Suite 900

23          Washington, DC 20005

24

25   BY:   RALPH I. MILLER, ESQ.

7

```
 1

 2     WEIL, GOTSHAL & MANGES, LLP

 3          Attorneys for Plaintiffs/Movants Lehman Brothers

 4            Holdings, Inc. ("LBHI") and Lehman Brothers

 5            Special Financing, Inc. ("LBSF")

 6          8911 Capital of Texas Highway

 7          Building One, Suite 1350

 8          Austin, TX 78759

 9

10     BY:   MEREDITH B. PARENTI, ESQ.

11

12     ANDREWS KURTH LLP

13          Attorneys for EPCO Holdings, Inc.

14          450 Lexington Avenue

15          New York, NY 10017

16

17     BY:   PETER S. GOODMAN, ESQ.

18

19     BINGHAM MCCUTCHEN LLP

20          Attorneys for State Street Bank and Trust

21          One Federal Street

22          Boston, MA 02110

23

24     BY:   ANDREW C. PHELAN, ESQ.

25
```

8

1

2    BUCHANAN INGERSOLL & ROONEY PC

3         Attorneys for PNC

4         One Oxford Centre

5         301 Grant Street, 20th Floor

6         Pittsburgh, PA 15219

7

8    BY:   STANLEY YORSZ, ESQ.

9

10

11   CADWALADER, WICKERSHAM & TAFT LLP

12        Attorneys for Lehman Re Ltd.

13        One World Financial Center

14        New York, NY 10281

15

16   BY:   INGRID BAGBY, ESQ.

17        ELIZABETH BUTLER, ESQ.

18        JONATHAN M. HOFF, ESQ.

19        GREGORY M. PETRICK, ESQ.

20

21

22

23

24

25

9

1

2    CLEARY GOTTLIEB STEEN & HAMILTON LLP

3         Attorneys for D.E. Shaw Composite Portfolios LLC, D.E.

4          Shaw Oculus Portfolios LLC, and Affiliates, and Wachovia

5         One Liberty Plaza

6         New York, NY 10006

7

8    BY:   JEFFREY A. ROSENTHAL, ESQ.

9          DAVID Y. LIVSHIZ, ESQ. (admitted pro hac vice)

10

11   CLEARY GOTTLIEB STEEN & HAMILTON LLP

12        Attorneys for Barclays Capital, Inc.

13        One Liberty Plaza

14        New York, NY 10006

15

16   BY:   LUKE A. BAREFOOT, ESQ.

17

18   DEWEY & LEBOEUF, LLP

19        Attorneys for Royal Bank of Scotland PLC and Its

20         Affiliates

21        1301 Avenue of the Americas

22        New York, NY 10019

23

24   BY:   MARTIN J. BIENENSTOCK, ESQ.

25        IRENA M. GOLDSTEIN, ESQ.

10

1

2    HOGAN & HARTSON LLP

3         Attorneys for Landwirtschaftliche Rentenbank

4         875 Third Avenue

5         New York, NY 10022

6

7    BY:   LYNDON M. TRETTER, ESQ.

8

9

10   HUGHES HUBBARD & REED LLP

11        Attorneys for the James W. Giddens, SIPA Trustee

12        One Battery Park Plaza

13        New York, NY 10004

14

15   BY:   JEFFREY S. MARGOLIN, ESQ.

16        JEFFREY M. GREILSHEIMER, ESQ.

17

18

19   JENNER & BLOCK LLP

20        Attorneys for Anton R. Valukas, Examiner

21        919 Third Avenue

22        37th Floor

23        New York, NY 10022

24

25   BY:   PATRICK J. TROSTLE, ESQ.

11

1

2    KIRKLAND & ELLIS LLP

3        Attorneys for Lehman Re

4        300 North LaSalle Street

5        Chicago, IL 60654

6

7    BY:    ANDREW R. MCGAAN, ESQ.

8

9    MAYER BROWN LLP

10        Attorneys for Societe Generale and Certain of its

11         Affiliates, and CIBC and Certain of its Affiliates

12        1675 Broadway

13        New York, NY 10019

14

15    BY:    AMIT K. TREHAN, ESQ.

16

17    MILBANK, TWEED, HADLEY & MCCLOY, LLP

18        Attorneys for the Official Committee of

19         Unsecured Creditors

20        One Chase Manhattan Plaza

21        New York, NY 10005

22

23    BY:    DENNIS C. O'DONNELL, ESQ.

24        DENNIS F. DUNNE, ESQ.

25        EVAN R. FLECK, ESQ.

12

1

2    MILBANK, TWEED, HADLEY & MCCLOY, LLP

3          Attorneys for the Official Committee of

4           Unsecured Creditors

5          International Square Building

6          1850 K Street, NW

7          Washington, DC 20006

8

9    BY:   DAVID S. COHEN, ESQ.

10

11   MILLER & MARTIN PLLC

12          1200 One Nashville Place

13          150 Fourth Avenue North

14          Nashville, TN 37219

15

16   BY:   W. NEAL MCBRAYER, ESQ.

17

18   O'MELVENY & MYERS LLP

19          Attorneys for Oceania Cruises, Inc.

20          Times Square Tower

21          7 Times Square

22          New York, NY 10036

23

24   BY:   SHANNON LOWRY NAGLE, ESQ.

25

13

```
1
2    PACHULSKI STANG ZIEHL & JONES
3         780 Third Avenue
4         36th Floor
5         New York, NY 10017
6
7    BY:   ROBERT J. FEINSTEIN, ESQ.
8
9
10   PILLSBURY WINTHROP SHAW PITTMAN LLP
11        Attorneys for Embarcadero Aircraft Securitization Trust
12        1540 Broadway
13        New York, NY 10036
14
15   BY:   RICK B. ANTONOFF, ESQ.
16
17
18   QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
19        Special Counsel to the Official Creditors' Committee
20        51 Madison Avenue
21        22nd Floor
22        New York, NY 10010
23
24   BY:   JAMES G. TECCE, ESQ.
25
```

14

1

2   REED SMITH, LLP

3        Attorneys for BNY Corporate Trustee Services, Bank of

4         New York Mellon

5        599 Lexington Avenue

6        New York, New York 10022

7

8   BY:   ERIC A. SCHAFFER, ESQ.

9

10

11   RICHARDS KIBBE & ORBE LLP

12        One World Financial Center

13        New York, NY 10281

14

15   BY:   MICHAEL FRIEDMAN, ESQ.

16

17

18   SALANS LLP

19        Attorneys for Swedbank AB

20        Rockefeller Center

21        620 Fifth Avenue

22        New York, NY 10020

23

24   BY:   CLAUDE D. MONTGOMERY, ESQ.

25

15

1

2    SHEARMAN & STERLING LLP

3         Attorneys for Bank of America and Merrill Lynch and Their

4          Affiliates

5         599 Lexington Avenue

6         New York, NY 10022

7

8    BY:   DANIEL H.R. LAGUARDIA, ESQ.

9          NED S. SCHODEK, ESQ.

10

11

12   SHEARMAN & STERLING LLP

13        Attorneys for Nomura International plc

14        599 Lexington Avenue

15        New York, NY 10022

16

17   BY:   SOLOMON J. NOH, ESQ.

18

19   STROOCK & STROOCK & LAVAN LLP

20        Attorneys for Omnibus Derivative Counterparties

21        180 Maiden Lane

22        New York, NY 10038

23

24   BY:   CLAUDE G. SZYFER, ESQ.

25

16

1

2      STROOCK & STROOCK & LAVAN LLP

3           Attorneys for Neuberger Berman

4           180 Maiden Lane

5           New York, NY 10038

6

7      BY:   DEREK I. A. SILVERMAN, ESQ.

8

9

10     SULLIVAN & CROMWELL LLP

11          Attorneys for Defendant Barclays Bank PLC and Long Island

12           International

13          125 Broad Street

14          New York, NY 10004

15

16     BY:   ROBINSON B. LACY, ESQ.

17

18

19     WHITE & CASE, LLP

20          Attorneys for Ad Hoc Group of Creditors

21          1155 Avenue of the Americas

22          New York, NY 10036

23

24     BY:   LISA THOMPSON, ESQ.

25

17

1

2    WHYTE HIRSCHBOECK DUDEK S.C.

3          Attorneys for Creditor Metavante Corporation

4          555 East Wells Street

5          Suite 1900

6          Milwaukee, WI 53202

7

8    BY:   BRUCE G. ARNOLD, ESQ.

9

10

11   WINTHROP COUCHOT PC

12         660 Newport Center Drive

13         Fourth Floor

14         Newport Beach, CA 92660

15

16   BY:   SEAN A. O'KEEFE, ESQ.

17

18

19   U.S. DEPARTMENT OF JUSTICE

20         Office of the United States Trustee

21         33 Whitehall Street, 21st Floor

22         New York, NY 10004

23

24   BY:   LINDA A. RIFFKIN, ESQ.

25

18

1

2    U.S. DEPARTMENT OF JUSTICE

3         U.S. Attorney's Office, Southern District of New York

4         86 Chambers Street

5         3rd Floor

6         New York, NY 10007

7

8    BY:   JOSEPH N. CORDARO, ESQ.

9

10   SELTZER CAPLAN MCMAHON VITEK

11        Attorneys for Lusardi Construction Co.

12        2100 Symphony Towers

13        750 B Street

14        San Diego, CA 92101

15

16   BY:   DENNIS J. WICKHAM, ESQ. (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

99

1   that it has been presented and will make some judgments as to

2   the identity of the mediators in consultation with counsel for

3   the debtors and for the creditors' committee who have been so

4   active in developing these procedures.

5         I recognize that a lot of people who are in court at

6   this moment are here for the ADR procedures, and I'm going to

7   give people who want to leave an opportunity to leave.  I'm

8   also going to give everybody an opportunity for a break.  But

9   because of the congestion of this docket, I think I'm going to

10   go until 1 o'clock.  So let's take a break for ten minutes, and

11   then resume, and then go until 1 o'clock and then break for

12   lunch.  We're adjourned until then.

13         MR. GRUENBERGER:  Thank you, Your Honor.

14       (Recess from 12:12 p.m. to 12:28 p.m.)

15         THE COURT:  Be seated please.  Number 11, Metavante.

16         MR. SLACK:  Your Honor, Richard Slack from Weil,

17   Gotshal for the debtors.  We're here on the debtors' motion to

18   compel performance of Metavante Corporation.  As Your Honor

19   knows, two months ago we had argument, after fully briefing the

20   issue.  Your Honor is in receipt of letters from both

21   Metavante's counsel and from the debtors, which I think

22   provides the status of where we are in terms of discussions,

23   which is, essentially, that the parties have not had

24   substantial discussions, as the letters which are docketed

25   state.

1        The debtors were requested to make a proposal to

2   resolve it, which we did.  We have not received a proposal from

3   Metavante in the two months since the hearing, and Metavante

4   has not responded to our proposal that we've made.

5        Your Honor has mentioned Metavante a couple of times

6   today, and so Your Honor may have a plan for the conference,

7   but it is the debtors' position that this matter should be

8   considered and decided, at the Court's discretion, obviously.

9        THE COURT:  Understood.  I'm ready to rule today.

10       MR. ARNOLD:  May it please the Court, mindful of that

11   comment, I want you to know why we wrote the letter, so that

12   you have in mind that parties do take into account the risks of

13   not settling, and you were quite clear at the hearing on July

14   14th that there was an opportunity for the parties to consider

15   resolving this matter.

16       For the Court's information, neither Lehman nor its

17   counsel have been obdurate, ornery, or in any fashion

18   unprofessional.  Our dealings have been quite, to the contrary,

19   exceptional throughout the history of our relationships.  I

20   reached out to counsel for the debtors to explain how it is

21   that an impending transaction which will close on October 1st

22   would, in my judgment, have a favorable impact on the

23   likelihood of this matter resolving consensually.  That was the

24   singular purpose for us writing the letter to the Court.  We

25   are not here today to reargue the motion.  The Court heard

101

1    extensive oral argument.  It has been well briefed.  The issues

2    have come up again in, frankly, in other instances and motions

3    and adversary proceedings.  I wanted the Court to know that it

4    was not by design, neglect or deliberately ignoring your

5    comments on July 14th that the settlement has not proceeded

6    further than it has.  About a week ago we received a settlement

7    proposal.  I am authorized to state by both Fidelity and

8    Metavante that post-closing of the merged entity we expect to,

9    and intend to, and will make a settlement proposal, but we're

10   also mindful that it hasn't been settled, and if it is the

11   Court's desire to rule on the matter today, we govern ourselves

12   accordingly.  I just wanted the Court to know what I've done

13   since July 14th to try to move this matter on.

14            THE COURT:  Okay.  Thank you for that update.

15            MR. ARNOLD:  Thank you, Your Honor.

16            THE COURT:  The Metavante matter consumed the better

17   part of an afternoon's oral argument.  My best recollection is

18   that we specially listed it on the afternoon before the July

19   omnibus hearing.  Candidly, I don't recall why it was specially

20   listed all by itself, but it's just as well that it happened,

21   because it took a lot of time.

22            It's correct that I encouraged the parties to attempt

23   to resolve this consensually, and I appreciate the fact that

24   large enterprises, particularly those that are involved in

25   major transactions in which acquisitions are literally weeks

102

1    away from being consummated, may be distracted or may have

2    other priorities.  But I also believe that when I suggested

3    that this be listed for the September 15th omnibus hearing it

4    was with the notion that, in effect, time would be up.

5         I'm also mindful of the fact that on today's calendar

6    a matter very similar to this, item 6, has been consensually

7    resolved, involving the payment of fifty percent more dollars

8    to the debtors than are at issue in this current dispute.

9         I am prepared to rule and will do so now.  Recognize

10   that what I'm about to do will take some time and will probably

11   take us to the lunch hour.  If there is anyone here who doesn't

12   want to hear the ruling in this case I'd like you to be free to

13   both leave, because I won't be offended, or, if at some point

14   during my rendition of this ruling you say to yourself this is

15   something I don't need to hear, you're also free to leave at

16   that point.

17        LBSF requests that the Court compel Metavante to

18   perform its obligations under that certain 1992 ISDA Master

19   Agreement dated as of November 20, 2007, defined as the "Master

20   Agreement".  And that certain trade confirmation dated December

21   4, 2007, defined as the "Confirmation", and together with the

22   Master Agreement, the "Agreement".

23        The Master Agreement provides the basic terms of the

24   parties' contractual relationship and contemplates being

25   supplemented by trade confirmations that provide the economic

1  terms of the specific transactions agreed to by the parties.

2  Under the Master Agreement, Metavante and LBSF entered into an

3  interest rate swap transaction, the terms of which were

4  documented pursuant to the Confirmation.

5        LBHI is a credit support provider for LBSF's payment

6  obligations under the Agreement.

7        Due to declining interest rates the value of LBSF's

8  position under the Agreement has increased.  As of May 2009,

9  under the payment terms of the Agreement, Metavante owed LBSF

10  in excess of 6 million dollars, representing quarterly payments

11  due November, 2008, February, 2009 and May, 2009, plus default

12  interest in excess of 300,000 dollars.

13        It is possible that due to current market conditions

14  and to the quarterly payment schedule prescribed by the

15  Agreement the amounts that Metavante owes to LBSF as of today

16  are even higher than those stated in the motion.  Metavante has

17  refused to make any payments to LBSF.  In fact, it has refused

18  to perform its obligations under the Agreement, as of November

19  3, 2008.  Instead, Metavante claims that LBSF and LBHI, via the

20  filing of their respective Chapter 11 cases, each caused an

21  event of default under the Agreement.

22        Metavante argues that due to such events of default it

23  has the right, but not the obligation, under the safe harbor

24  provisions of the Bankruptcy Code, to terminate all outstanding

25  derivative transactions under the Agreement.  Metavante also

104

1   maintains that it is not otherwise required to perform under

2   the Agreement.

3       The parties presented their arguments to the Court at

4   a hearing held on July 14, 2009.  Notably at the hearing

5   counsel to Metavante stated that, quote, "the opportunity to

6   settle the matter", is a possibility.  The reference in the

7   transcript is page 58, lines 18 to 19.  The Court took the

8   matter under advisement and suggested that it be calendared for

9   the September 15, 2009 omnibus hearing for purposes of either a

10  bench ruling or a status conference on any progress the parties

11  may have made towards a resolution.

12      I want to make clear that I am proceeding with this

13  ruling because I view the letter described by counsel for

14  Metavante, which talked about a possible settlement

15  counterproposal occurring sometime after the closing of a

16  merger on October 1, as being an insufficient commitment to a

17  timely settlement.

18      On September 14, 2009 the Court received letters from

19  counsel to each of the parties.  Counsel to Metavante requests

20  an adjournment to October 14.  Counsel states that an

21  adjournment will facilitate the parties' settlement

22  negotiations but explains that Metavante may not make a

23  counterproposal to LBSF's September 5, 2009 settlement proposal

24  until after the proposed October 1, 2009 closing of a merger.

25  Counsel also suggests that an adjournment will allow the Court

105

1    to put the motion on the same track as two other motions

2    currently pending before the Court.  Which motions, counsel

3    claims, raise similar issues to the motion?  Counsel to LBSF

4    and LBHI maintain that inasmuch as Metavante has done nothing

5    since July 14, 2009 to settle this matter other than asking

6    LBSF and LBHI to make a settlement proposal, the parties are no

7    closer to settlement than they were at the hearing, and,

8    therefore, the status conference should go forward as planned.

9         While each of the matters reference by counsel to

10   Metavante may have overlapping issues with those presented in

11   the current dispute, each matter involves its own distinct set

12   of fats.  Moreover, each of the two referenced matters is in

13   its infancy.  No response has been filed in either one, which

14   may further delay resolution here.

15        This is a dispute that has been fully briefed and

16   argued and is ripe for determination.  Moreover, I note that

17   the settlement that was achieved with MEG Energy that was

18   referenced this morning indicates that parties who are willing

19   to settle can, and do.

20        Under the Agreement LBSF is obligated to pay the

21   floating three month USD LIBOR BBA interest rate on a notional

22   amount of 600 million dollars, which notional amount declines

23   over time, beginning in May, 2010.  Metavante, in turn, is

24   obligated to pay a fixed interest rate, 3.865 percent, on the

25   notional amount.  The Agreement is set to expire on February 1,

106

1    2012.  The Agreement defines event of default to include the

2    bankruptcy of any party or credit support provider.  Under the

3    terms of the Agreement, upon an event of default the non-

4    defaulting party may designate an early termination date.  Upon

5    termination a final payment is calculated and paid in order to

6    put the parties into the same economic position as if the

7    termination had not occurred.

8         In the instant case Metavante has refused to perform

9    under the Agreement on account of the event of default that has

10   occurred, and is continuing, on account of the bankruptcies of

11   LBSF and LBHI.  Metavante has not, however, attempted to

12   terminate the Agreement.  Instead, Metavante entered into a

13   replacement hedge covering the period from November 3, 2008

14   through February 1, 2010.

15        LBSF and LBHI argue that the Agreement is an executory

16   contract because material performance, specifically payment

17   obligations, remain due by both LBSF and Metavante.  Under

18   Bankruptcy Code Section 365(a) a debtor in possession may,

19   "subject to the court's approval, assume or reject any

20   executory contract".  The case law makes clear, however, that

21   while a debtor determines whether to assume or reject an

22   executory contract the counterparty to such contract must

23   continue to perform.

24        LBSF and LBHI further argue that the safe harbor

25   provisions do not excuse Metavante's failure to perform.

107

1    Indeed, the safe harbor provisions permit qualifying non-debtor

2    counterparties to derivative contracts to exercise certain

3    limited contractual rights triggered by, among other things, a

4    Chapter 11 filing.  They're available, however, only to the

5    extent that a counterparty seeks to one, liquidate, terminate

6    or accelerate its contracts or two, net out its positions.  All

7    other uses of ipso facto provisions remain unenforceable under

8    the Bankruptcy Code.

9         Notably, Metavante does not dispute that it has failed

10   to perform under the Agreement.  Instead, Metavante argues that

11   the occurrence of an event of default under the Agreement gives

12   rise to its right, as the non-defaulting party, to terminate

13   under the safe harbor provisions.  According to Metavante the

14   occurrence of an event of default does not, however, create the

15   obligation for it to terminate under the safe harbor

16   provisions.  Metavante emphasizes the term, quote, "condition

17   precedent" set forth in Sections 2(a), 1 and 3 of the

18   Agreement, which subject payment obligations to the condition

19   precedent that no event of default with respect to the party

20   has occurred and is continuing.

21        Metavante argues that under New York State contract

22   law a failure of a condition precedent excuses a party's

23   obligation to perform.  Metavante states that its unequivocal

24   right to suspend payments until the termination of the

25   Agreement is fundamental to the manner in which swap parties

108

1    government themselves.  Metavante takes issue with LBSF and

2    LBHI in asking the Court to treat the Agreement like a garden

3    variety executory contract, arguing that it cannot be compelled

4    to pay because LBSF and LBHI cannot provide the essential item

5    of value Metavante bargained for, namely an effective

6    counterparty.

7         Metavante further argues on information and belief

8    that LBSF and LBHI also are in default under certain

9    unspecified indebtedness that allegedly may have created a

10   cross default under the Agreement, asserting, as a result, an

11   alleged need to engage in the discovery process.

12        It is clear that the filing of bankruptcy petitions by

13   LBHI and LBSF constitute events of default under the Agreement.

14   Specifically, Section 5(a)(vii) of the Agreement provides that

15   it shall constitute an event of default should a party to the

16   Agreement or any credit support provider of such party

17   institute a proceeding seeking a judgment of insolvency or

18   bankruptcy, or any other relief under any bankruptcy insolvency

19   law or similar law affecting creditors' rights.

20        Section 2(a)(i) and 3 of the Agreement, in turn,

21   subject payment obligations to the condition precedent that no

22   event of default with respect to the other party has occurred

23   and is continuing.  It is also clear, however, that the safe

24   harbor provisions, primarily Bankruptcy Code Sections 560 and

25   561, protect a non-defaulting swap counterparty's contractual

109

1   rights solely to liquidate, terminate or accelerate one or more

2   swap agreements because of a condition of the kind specified in

3   Section 365(e)(1), or to "offset or net out any termination

4   values or payment amounts arising under or in connection with

5   the termination, liquidation or acceleration of one or more

6   swap agreements".  That language comes from Section 560.

7           In the instant matter Metavante has attempted neither

8   to liquidate, terminate or accelerate the Agreement, nor to

9   offset or net out its position as a result of the events of

10  default caused by the filing of bankruptcy petitions by LBHI

11  and LBSF.  Metavante simply is withholding performance, relying

12  on the conditions precedent language in Sections 2(a)(i) and

13  (iii) under the Agreement.

14          The question presented in this matter and the issue

15  that was argued by the parties at the hearing is whether

16  Metavante's withholding of performance is permitted, either

17  under the safe harbor provisions or under terms of the

18  Agreement itself.  It is not.

19          Although complicated at its core the Agreement is, in

20  fact, a garden variety executory contract, one for which there

21  remains something still to be done on both sides.  Each party

22  to the Agreement still is obligated to make quarterly payments

23  based on a floating or fixed interest rate of a notional

24  amount, it being understood that the net obligor actually makes

25  a payment after the parties respective positions are calculated

1    on a quarterly basis, in February, May, August and November of

2    each calendar year.

3         Under relevant case law it is clear that while an un-

4    assumed executory contract is not enforceable against a debtor,

5    see NLRB v. Bildisco & Bildisco, 465 US 513 at 531, such a

6    contract is enforceable by a debtor against the counterparty.

7    See McLean Industries, Inc. v. Medical Laboratory Automation,

8    Inc., 96 B.R. 440 at 449 (Bankr. S.D.N.Y. 1989).  Metavante

9    relies on In re Lucre, Inc., 339 BR 648 (WD Mich.) for the

10   proposition that a debtor's uncured pre-petition breach of its

11   executory contract, here the event of default caused by the

12   bankruptcy filings of LBHI and LBSF, will, in and of itself,

13   justify continued nonperformance by the non-debtor

14   counterparty, and mere commencement of bankruptcy proceedings

15   and the imposition of the automatic stay does not empower the

16   debtor to compel performance from a non-debtor party.

17        The Court rejects the Lucre decision as nonbinding and

18   non-persuasive.  While Metavante's argument for the events of

19   default caused by the bankruptcy filings of LBHI and LBSF do

20   create an obligation for it to terminate the Agreement under

21   the safe harbor provisions, that's a tenable argument.  Its

22   conduct of riding the market for the period of one year, while

23   taking no action whatsoever, is simply unacceptable and

24   contrary to the spirit of these provisions of the Bankruptcy

25   Code.

1          First, inasmuch as the Bankruptcy Code trumps any

2     state law excuse of nonperformance, Metavante's reliance on New

3     York contract law is misplaced.  Moreover, legislative history

4     evidences Congress's intent to allow for the prompt closing out

5     or liquidation of open accounts upon the commencement of a

6     bankruptcy case.  Citation is to the Congressional history of

7     this, H.R. Rep. 97-420 at 1 (1982), as well as its stated

8     rationale that the immediate termination for default and the

9     netting provisions are critical aspects of swap transactions

10    and are necessary for the protection of all parties in light of

11    the potential for rapid changes in the financial markets.

12    Citation to the Senate Report number 101-285 at 1 (1990).

13         The safe harbor provisions specifically permit

14    termination solely, quote, "because of a condition of the kind

15    specified in Section 365(e)(1) that is the insolvency or

16    financial condition of the debtor and the commencement of a

17    bankruptcy case.  See also In re Enron Corp., 2005. WL 3874285,

18    at *4, Judge Gonzalez's case, 2005.  Noting that a

19    counterparty's action under the safe harbor provisions must be

20    made fairly contemporaneously with the bankruptcy filing, less

21    the contract be rendered just another ordinary executory

22    contract.

23         The Court finds that Metavante's window to act

24    promptly under the safe harbor provisions has passed, and while

25    it may not have had the obligation to terminate immediately

112

1    upon the filing of LBHI or LBSF, its failure to do so, at this

2    juncture, constitutes a waiver of that right at this point.

3            Metavante's references to defaults under certain

4    unspecified indebtedness that allegedly may have created a

5    cross default under the Agreement are of no moment.  First,

6    Metavante failed to set forth the basis, either in its papers

7    or at the hearing, for its information and belief that such a

8    default may have occurred.  Its assertion that such a default

9    may have occurred indicates that Metavante is not aware of any

10   such default, and, therefore, did not rely on that default in

11   its refusal to perform under the Agreement or lacks knowledge

12   of what that default may be.

13           Additionally, the argument that LBSF or LBHI may have

14   defaulted under other specified indebtedness, as that term is

15   defined in the Agreement, relies upon the financial condition

16   of bankruptcy debtors to withhold performance.  That is also

17   unenforceable as an ipso facto clause that may not be enforced

18   under the Bankruptcy Code Section 365(e)(1)(A).

19           LBSF and LBHI are entitled to continued receipt of

20   payments under the Agreement.  Metavante's attempts to control

21   LBSF's right to receive payment under the Agreement constitute,

22   in effect, an attempt to control property of the estate.  See

23   In re Enron Corp., 300 B.R. 201 at 212 (S.D.N.Y. 2003),

24   recognizing that contract rights are property of the estate and

25   that therefore those rights are protected by the automated

113

1    stay.

2         This is a violation of the automatic stay imposed by

3    Code Section 362.  Accordingly, for the reasons set forth in

4    LBSF's and LBHI's papers, for the reasons stated on the record

5    at the hearing and for the reasons stated on the record today,

6    pursuant to Bankruptcy Code Sections 105(a), 362 and 365,

7    Metavante is directed to perform under the Agreement until such

8    time as LBSF and LBHI determine whether to assume or reject.

9    That's the ruling of the Court.

10        MR. KRASNOW:  Good afternoon, Your Honor.  Richard

11   Krasnow, Weil, Gotshal & Manges, for the Chapter 11 debtors.

12   We are close to the end of this morning's agenda, but not quite

13   there as yet.  The next item, Your Honor, is number 12.  It is

14   the motion of DnB Nor Bank described in the agenda.  Your

15   Honor, that matter has been fully submitted to the Court, fully

16   briefed, arguments held on November 5th, and today is the

17   scheduled status conference.

18        THE COURT:  Okay.  I'm ready to rule on that, but

19   given the hour I'm not going to take the time to do that now.

20   But we'll issue a short memorandum in due course.  So as to not

21   create any undue suspense for those parties who are here in

22   connection with the DnB Nor matter, I am deciding that in favor

23   of the debtors and against DnB Nor, denying DnB Nor's motion

24   for allowance of an administrative expense claim, substantially

25   for the reasons set forth in the committee's papers.