# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re                                                   Chapter 11 Case No.
                                                        08-13555 (SCC)

LEHMAN BROTHERS HOLDINGS INC., *et al.*,      (Jointly Administered)
                               Debtors.

------------------------------------------------------------------x

## MEMORANDUM DECISION SUSTAINING FOUR HUNDRED FIFTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

A P P E A R A N C E S:

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
By:     Turner P. Smith, Esq.

*Attorneys for Lehman Brothers Holdings Inc.*

BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
By:     Howard S. Steel, Esq.

*Attorneys for Newport Global Advisors LP*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the Four Hundred Fifty-Eighth Omnibus Objection to Claims (No Liability Claims) (the "Objection") filed by Lehman Brothers Holdings Inc. ("LBHI") as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors. The Plan Administrator seeks to disallow and expunge the 19 claims (one against each of the debtors in these chapter 11 cases) filed by Newport Global Advisors LP ("Newport").

The claims seek recovery on account of a reduction of management fees due to Newport from the two private investment funds it managed. Newport maintains that the reduction in management fees is a direct cause of Lehman Brothers Inc. ("LBI"), as prime broker to the funds, having failed to comply with instructions to transfer securities in September 2008. In its pleadings, Newport set forth an additional theory of recovery – diminution in value damages based on an alleged lost opportunity to close a sale transaction. *See Response of Newport Global Advisors LP to the Four Hundred Fifty-Eighth Omnibus Objection to Claims* ("Response") ¶¶ 27-28. Newport asserts that it is a third-party beneficiary of each Fund's Customer Account Agreement Prime Brokerage (each, an "Agreement" and together, the "Agreements") and seeks damages in the aggregate amount of $100.2 million.[1]

LBHI counters that there is no evidence on the face of any agreement between any Lehman party and the funds that Newport was an intended direct beneficiary.[2] LBI, as prime broker, agreed to provide execution, custody, and settlement services to the funds in return for brokerage fees and interest on margin loans; LBI was not, however, taking on an unlimited obligation to compensate the funds' manager for any loss it may suffer by reason of the funds' investment activities.

The matter has been fully briefed and the Court heard oral argument on May 14, 2014. The Objection triggered a "Sufficiency Hearing," as defined in the Court's April 19, 2010 Order

---

[1] The proofs of claim that Newport filed assert loss of management fees for 2009 in the amount of $4,021,500 and state that Newport "files this Proof of Claim for this amount, and amounts presently undetermined for any subsequent years' reduction in its Management Fee as a result of Lehman's actions described herein." *Declaration of Roger May in Support of the Response of Newport Global Advisors LP to the Four Hundred and Fifty-Eighth Omnibus Objection to Claims* ("May Decl.") Ex. G ¶ 4. In its Response, Newport clarifies its assertion that all debtors are jointly and severally liable under the Agreements and states that it is "entitled to recover no less than $30,200,000" for loss of management fees, and "no less than $70 million" for the lost sale opportunity. Response ¶¶ 27-28.

[2] Lehman further argues that even if Newport were found to be a third-party beneficiary, the Agreements prohibit recovery for "special, indirect, incidental or consequential damages" arising out of the Agreements. May Decl. Ex. A ¶ 30. For the reasons set forth herein, the Court need not, and will not, address this alternative argument.

2

Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors [ECF No. 8474].  Pursuant to that order, all hearings "to address the legal sufficiency of [a] particular Contested Claim and whether the Contested Claim states a claim against the asserted Debtor under Bankruptcy Rule 7012" shall be "Sufficiency Hearings," unless the Plan Administrator serves the holder of a contested claim with a Notice of ADR Procedure or Notice of Merits Hearing.  *Id.* ¶ 4(a).  The standard of review for a Sufficiency Hearing is "equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim."  *Id.*

As described in this Memorandum Decision, the Court sustains the Objection.  Even after accepting the truth of all assertions of fact in the proofs of claim and drawing all reasonable inferences in Newport's favor, Newport is unable to support claims based on a theory that it is a third-party beneficiary of the Agreements.  Accordingly, it fails to state a claim upon which relief may be granted under the applicable standard.

## **STANDARD**

Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted.  In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000).  To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint must be

3

supported by more than mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).

A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). Therefore, the appropriate inquiry "is not whether a plaintiff is likely to prevail, but whether [he] is entitled to offer evidence to support [his] claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (citations omitted).

**BACKGROUND**

Newport manages two private investment funds – Newport Global Opportunities Fund L.P. and Newport Global Credit Fund (Master) L.P. (together, the "Funds"). In exchange for managing the Funds, Newport receives a fee that is calculated as a percentage of the Funds' net asset value. Response ¶ 2. In 2006, the Funds entered into the Agreements,[3] pursuant to which a prime brokerage account was opened at LBI for each Fund. May Decl. Ex. A ¶ 1. Under the terms of each Agreement, in addition to LBI as prime broker, LBHI "and any of [its] subsidiaries, parents, affiliates" are parties to the Agreements. *Id*. Each Fund also entered into a Margin Lending Agreement with LBI and Lehman Brothers International (Europe) ("LBIE"), pursuant to which LBIE agreed to make loans to the Funds in connection with transactions effected under the Agreements. May Decl. ¶ 7, Ex. B.

---

[3] The Agreements are governed by New York law. May Decl. Ex. A ¶ 24.

4

Under the Agreements, the Funds' requests to purchase or sell securities were placed with, and confirmed by, Lehman.[4]  May Decl. ¶ 8, Ex. C.  On September 10, 2008, the Funds instructed Lehman to transfer all assets held in their prime brokerage accounts to Credit Suisse Securities (USA) LLC ("Credit Suisse"), which was to assume the duties as prime broker for the Funds going forward.  May Decl. ¶ 18.  Lehman acknowledged the transfer request on September 11, 2008.  *Id.* ¶ 19.  On September 12, 2008, at Lehman's request, the Funds provided Letters of Authorization to facilitate the asset transfer.  *Id.* ¶ 20, Ex. E.  Upon receipt of the Letters of Authorization and related approvals from Credit Suisse and the Funds, Lehman booked the transfer on September 12, 2008.  *Id.* ¶ 21, Ex. F.

On September 15, 2008, LBHI and certain of its affiliates and subsidiaries filed voluntary petitions under chapter 11.  LBI's SIPA proceeding was commenced on September 19, 2008.  As of the date of the Response (April 22, 2014), the Funds' securities had never been transferred pursuant to the Funds' instructions, nor had they been returned to the Funds.  *Id.* ¶ 24.  Newport timely filed the proofs of claim at issue on September 22, 2009.  *Id.* Ex. G.

## **DISCUSSION**

Newport argues that its claims are allowable as a matter of law because it is an intended third-party beneficiary of the Agreements.  It acknowledges that it is not referenced as a third-party beneficiary on the face of the Agreements, but maintains that the circumstances surrounding the execution of the Agreements combined with Lehman's knowledge of its relationship to the Funds demonstrate that all parties to the Agreement intended to benefit Newport.

---

[4] The Court uses the term "Lehman" to describe all counterparties to the Agreements; it has been used in this manner by Newport in its proofs of claim and its pleadings.

5

Under New York law, a party claiming to be a third-party beneficiary of a contract bears the burden of demonstrating that the parties to the contract intended to confer a benefit on the third party. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citing *State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000)). A putative third party may meet this burden by proving (i) the existence of a valid and binding contract; (ii) that the contract was intended for the third party's benefit; and (iii) that the benefit to the third party is sufficiently immediate to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost. *See BDG Oceanside, LLC v. RAD Terminal Corp.*, 787 N.Y.S.2d 388, 390 (N.Y. App. Div. 2005).

While a third party "need not be specifically mentioned in the contract before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown *on the face of the agreement*." *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989) (citations omitted); *see also Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996) (emphasis added) (citing *Gulf Oil*). Here, Newport asserts that the Funds' intent to benefit it through the Agreements is evidenced by the fee calculation as a percentage of net asset value and "the entities' mutually beneficial relationship." Response ¶ 42. Newport further asserts that "Lehman was well aware that the Agreements benefitted [Newport]" because it "knew and therefore was on notice that [Newport's] management fee was directly linked to the Funds' net asset value." *Id.* ¶ 43. Even accepting these factual allegations as true (which the Court is required to do under the 12(b)(6) standard), however, none of them appears within the four corners of the Agreements.

6

A thorough review of the Agreements reveals that they are clear and unambiguous – and completely silent as to whether Newport is an intended beneficiary. In fact, the Agreements include specific provisions that limit liability, including an integration clause stating that "[e]xcept as set forth above, this Agreement represents the entire agreement and understanding between [the Funds] and Lehman Brothers concerning the subject matter hereof." May Decl. Ex. A ¶ 33. Rather than demonstrating an intended benefit to Newport, this contract provision demonstrates the parties' intent to limit the agreement. *See Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 267-68 (S.D.N.Y. 2006) (holding that a contract containing an integration clause and no provision specifically conferring any benefit on a party claiming third-party beneficiary status clearly evidenced no intent to benefit the claimant); *see also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 457-58 (S.D.N.Y. 2010) (holding that a contract's "deafening silence" on third party beneficiary rights demonstrated a lack of intent to confer benefits on the third party). Moreover, Newport "Acknowledged and Agreed" to the Agreements as a signatory "solely for the purposes of the [ERISA] representation in Section 35," effectively limiting its role by its own hand. May Decl. Ex. A at 11.

"[D]ismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant, … or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant." *Subaru*, 425 F.3d at 124. (citations omitted). It is clear that the Agreements evidence no intent on their face to benefit Newport; moreover, no assertion that Newport has made in the proofs of claim or its pleadings supports the inference that Lehman and the Funds intended to confer a benefit on Newport. Accordingly, Newport fails to state a claim upon which relief may be granted and the Objection is sustained.

7

**CONCLUSION**

For the reasons stated, the Objection is sustained. LBHI is directed to submit a proposed order consistent with this Memorandum Decision.

IT IS SO ORDERED.

Dated: June 18, 2014
New York, New York

/s/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE