**HEARING DATE AND TIME: July 16, 2014 at 10:00 a.m.**

Relates to ECF Nos. 18397, 19315, 44503

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Tel.: 212-277-6500
Fax: 212-277-6501
Deborah A. Skakel
Shaya M. Berger

*Attorneys for 2138747 Ontario Ltd. and 6785778 Canada Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
| In re | : |  |
|  | : | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC., | : | (Jointly Administered) |
| *et al.*, | : |  |
|  | : |  |
| Debtors. | : |  |
|  | : |  |

------------------------------------------------------------ x

**SUR-REPLY OF 2138747 ONTARIO LTD. AND 6785778 CANADA INC.
IN FURTHER SUPPORT OF THEIR OPPOSITION TO DEBTORS'
OBJECTION TO PROOFS OF CLAIM (CLAIM NOS. 33583 AND 33586)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

Preliminary Statement.........................................................................................1

Argument ............................................................................................................2

I.  THE CLAIMS ARE DIRECT CLAIMS WHICH THE MINORITY
    SHAREHOLDERS HAVE STANDING TO PURSUE.......................................3

II. THE MINORITY SHAREHOLDERS HAVE STATED VALID CLAIMS ....................9

    A.  All Of The Agreements To The Transaction Must Be Construed Together..........10

    B.  Claimants Are Third-Party Beneficiaries Of The Equity Contribution
        Agreement.........................................................................................16

    C.  The Corporate Veil Should Be Pierced To Hold LBI And LBHI Liable For
        Breaches Under The Shareholder Agreement.........................................................20

Conclusion ........................................................................................26

i

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

Albany-Plattsburgh United Corp. v. Bell, 307 A.D.2d 416 (3d Dep't 2003) ................................8

Andejo Corp. v. S. St. Seaport Ltd. P'ship, 40 A.D.3d 407 (1st Dep't 2007) .............................22

Andrew Greenberg, Inc. v. Svane, Inc., 36 A.D.3d 1094 (3d Dep't 2007) ................................5, 9

Bank of N.Y. v. Fed. Deposit Ins. Co., 453 F. Supp.2d 82 (D.D.C. 2006),
    aff'd, 508 F.3d 1 (D.C. Cir. 2007) ................................................................13, 15

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................3

Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2003) ..................................................14

Blackman v. GMC, Case No. 75 Civ. 1033 (MEF), 1978 U.S. Dist. LEXIS 17021
    (S.D.N.Y. June 23, 1978)........................................................................6

Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359 (2d Cir. 1995) ...17

Cerchia v. V.A. Mesa, Inc., 191 A.D.2d 377 (1st Dep't 1993) .......................................21

Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49 (2d Cir. 1993) ...................12

Consol. Edison Inc. v. N.E. Utils., 426 F.3d 524 (2d Cir. 2005).....................................17

Dorset Indus., Inc. v. Unified Grocers, Inc., 893 F. Supp. 2d 395 (E.D.N.Y. 2012)....................23

Eisenberg v. Flying Tiger Line, Inc., 451 F.2d 267 (2d Cir. 1971)......................................5

Emposimato v. CIFC Acquisition Corp., 30 Misc. 3d 1233(A) (table), 2011 WL 833801
    (Sup. Ct. N.Y. County), aff'd, 89 A.D.3d 418 (1st Dep't 2011) ..............................21, 22, 25

Fishoff v. Coty Inc., 634 F.3d 647 (2d Cir. 2011) ........................................................25

Foss v Harbottle, (1843) 67 Eng. Rep. 189 (Ch.); 2 Hare 461 ........................................6

G.E. Capital Commercial Fin. Bus. Prop. v. Erba Food Prods. Inc., 15 Misc. 3d 1104(A)
    (table), 2007 WL 776621 (Sup. Ct. N.Y. County 2007).......................................21

Goldex Mines Ltd. v. Revill, [1974] 7 O.R. 2d (Can. Ont. C.A.)....................................7

Gosconcert v. Hillyer, 158 B.R. 24 (S.D.N.Y. 1993) ....................................................8

Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73 (2d Cir. 2002) ........................23

Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423 (S.D.N.Y. 2006)...........................6

DOCSNY-569823

CASES (cont.)                                                                    Page(s)

Hercules Mgmts. Ltd. v. Ernst & Young, [1997] 2 S.C.R. 165 (Can.)........................6, 7

In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F. Supp. 712 (S.D.N.Y. 1989) ...................17

In re Lehman Bros. Holdings Inc., Case No. 08-13555 (SCC), 2014 Bankr. LEXIS 2666
    (Bankr. S.D.N.Y. June 18, 2014)...............................................................3, 18

In re Universal Profile, Inc., 6 B.R. 196 (Bankr. N.D. Ga. 1980) ...............................22

Kyung Sup Anh, M.C., P.C. Ret. Trust Pension v. Rooney, Pace Inc., 624 F. Supp. 368
    (S.D.N.Y. 1985).......................................................................................18

LaSalle Nat'l Bank v. Ernst & Young LLP, 285 A.D.2d 101 (1st Dep't 2001)...........................18

McKenzie v. Hannibal, 2012 BCSC 1547 (Can.)..............................................................7

McPheeters v. McGinn, Smith & Co., 953 F.2d 771 (2d Cir. 1992)......................................18, 19

Meyerson v. Franklin Knitting Mills, 185 A.D. 458 (1st Dep't 1918)...........................................7

MK W. St. Co. v. Meridien Hotels, Inc., 184 A.D.2d 312 (1st Dep't 1992)..........................17, 19

Morgan Stanley v. Skowron, 958 F. Supp. 2d 417 (S.D.N.Y. 2013) ...............................................5

Nordberg v. Lord, Day & Lord, 107 F.R.D. 692 (S.D.N.Y. 1985)......................................................8

Pritchard Servs. (NY) Inc. v. First Winthrop Props., Inc., 172 A.D.2d 394 (1st Dep't 1991) ......22

Prudential Assurance Co. v. Newman Indus. Ltd. (No. 2), [1982] Ch. 204 (C.A.).........................7

Res. Funding Corp. v. Congrecare, Inc., No. 91 Civ. 8163 (RWS), 1994 WL 24825
    (S.D.N.Y. Jan. 21, 1994)...........................................................................17, 19

Rogers v. Bank of Montreal (1985) 64 B.C.L.R. 63 (Can. B.C. S.C.),
    aff'd, (1986) 9 B.C.L.R. 2d 190 (Can. B.C. C.A.)...............................................7

Rosen v. Mega Bloks Inc., No. 06 Civ. 3474 (LTS) (GWG), 2007 U.S. Dist. LEXIS 48479
    (S.D.N.Y. July 6, 2007) ...............................................................13, 14, 15

Russo v. Heller, 80 A.D.3d 531 (1st Dep't 2011)..........................................................22

Simon v. Unum Group, Case No. 07 Civ 11426 (SAS), 2008 U.S. Dist. LEXIS 47719
    (S.D.N.Y. June 18, 2008).............................................................................23

Smith v. CPC Int'l, Inc., 177 F.3d 110 (2d Cir. 1999) ................................................25

Teachers Ins. Annuity Ass'n of Am. v. Cohen's Fashion Optical of 485 Lexington Ave. Inc.,
    45 A.D.3d 317 (1st Dep't 2007) ...............................................................22

DOCSNY-569823

CASES (cont.)                                                                                          Page(s)

This Is Me, Inc. v. Taylor, 157 F.3d 139 (2d Cir. 1998) .......................................11, 12, 13, 15, 19

TVT Records v. Island Def Jam Music Grp., 412 F.3d 82 (2d Cir. 2005) ............11, 12, 13, 15, 19

DOCSNY-569823

2138747 Ontario Ltd. ("Ontario") and 6785778 Canada Inc. ("Canada" and, together with Ontario, the "Claimants" or "Minority Shareholders") hereby submit this Sur-Reply in further support of Claimants' Opposition to Debtors' Objection to Proofs of Claim Filed by 2138747 Ontario Ltd. and 6785778 Canada Inc. (Claim Nos. 33583 and 33586), ECF No. 19315 (the "Opposition"), and in response to the Plan Administrator's Reply Brief in Support of Debtors' Objection to Proofs of Claim filed by 2138747 Ontario Ltd. and 6785778 Canada Inc. (Claim Nos. 33583 and 33586), ECF No. 44503 (the "Reply"), and respectfully represent as follows:

## Preliminary Statement

1.      Although Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced case (collectively, the "Debtors") – themselves or through the Plan Administrator – had almost three years to present the Court with arguments to support their objection to the Minority Shareholders' proofs of claims (the "Claims"), they have not been able to do so.   First, the Plan Administrator argues that the Claims are derivative claims.   That argument fails because the Claims arise out of breaches of contractual promises that LBHI made directly to the Minority Shareholders in exchange for their agreement to relinquish their controlling ownership interest in SkyPower[1] and other related rights.   Because the Claims, as more fully described in the Opposition, set forth facts that demonstrate breaches of contractual obligations that ran from LBHI to the Minority Shareholders, the Claims are direct.

2.      Next, the Plan Administrator contends that the Minority Shareholders have failed to state a breach of contract claim against LBHI.   Except for one instance, the Plan Administrator does not even acknowledge, let alone distinguish, any of the cases the Minority Shareholders cite in the Opposition that provide ample authority for the validity of their breach of contract claims.

---

[1]      All terms not defined herein shall have the meaning given to them in the Opposition.

Instead, the Plan Administrator asks the Court to rely on other cases that cannot be applied to the facts here.  For example, in arguing that the operative agreements should not be considered part of the same transaction and the Minority Shareholders cannot be deemed third-party beneficiaries to the Equity Contribution Agreement, the Plan Administrator principally relies on cases where parties attempted to apply an arbitration clause outside their own contracts.  Such cases concerning arbitrability of the underlying dispute shed no light on the matter at hand, where LBHI's subsidiary, a shell entity, undertook direct contractual obligations running to the Minority Shareholders to provide funding to SkyPower, and LBHI entered into a second contract with SkyPower to provide that very funding.  Similarly, the Plan Administrator argues that the Minority Shareholders fail to state a claim for piercing the corporate veil and relies on cases where a landlord seeks to collect rent from an individual or entity that owns the tenant, but fails to allege any other fact that would support a veil piercing claim.  In contrast, the Minority Shareholders allege here that LBHI was the true party that obligated itself to fulfill contractual obligations that ran directly to the Minority Shareholders and used its shell subsidiary to avoid fulfilling those obligations – veil piercing allegations that are substantiated by documentary evidence and the conduct of the parties.

3.      Because the Minority Shareholders have stated tenable, direct claims against LBHI, the Objection should be denied, and the Claims should be allowed.

## Argument

4.      Under the Court's April 19, 2010 Order Pursuant to Section 105 of the Bankruptcy Code,  Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, ECF No. 8474 (the "Claims Hearing Procedure Order"), the Objection triggers a requirement for the Court to hold a "Sufficiency Hearing."  The standard of review in a

2

Sufficiency Hearing is equivalent to the standard on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Claims Procedure Order ¶ 4.

5.      To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  That, too, is all that is required of a claimant to survive a Sufficiency Hearing; thus, "the appropriate inquiry is not whether a plaintiff is likely to prevail, but whether [he] is entitled to offer evidence to support [his] claims."  In re Lehman Bros. Holdings Inc., Case No. 08-13555 (SCC), 2014 Bankr. LEXIS 2666, at *6 (Bankr. S.D.N.Y. June 18, 2014) (alterations in original) (citation omitted) (internal quotation marks omitted).

## I.      THE CLAIMS ARE DIRECT CLAIMS WHICH THE MINORITY SHAREHOLDERS HAVE STANDING TO PURSUE

6.      Almost three years ago, the Debtors objected to the Claims, contending that the only agreement the Minority Shareholders identified that LBHI allegedly breached was the Equity Contribution Agreement, and only SkyPower was a counterparty to that agreement. Debtors' Objection to Proofs of Claim Filed by 2138747 Ontario Ltd. and 6785778 Canada Inc. (Claim Nos. 33583 and 33586), ECF No. 18397 (the "Objection") ¶¶ 18-19.  Additionally, the Debtors noted that SkyPower itself had already filed a claim for Lehman's alleged breach of the Equity Contribution Agreement.  Objection ¶¶ 11-12.

7.      The Minority Shareholders timely filed the Opposition, asserting that (i) LBHI had breached contractual obligations that ran directly from LBHI to the Minority Shareholders – in addition to those that ran to SkyPower, and (ii) these direct obligations arose not only from the Equity Contribution Agreement, but also from other agreements that were entered into by the Minority Shareholders in connection with LBHI's and its affiliates' purchase of a controlling interest in SkyPower.

3

8.      Specifically, the Minority Shareholders explained that they held direct claims against LBHI, stating that "the multifaceted transaction that closed on June 11, 2007 . . . reveals the extent of the Debtors' role and amplifies the nexus between the Debtors and Claimants underlying the Claims." Opp'n ¶ 4 (emphasis added).  The Minority Shareholders then provided the facts that supported their contention, including identifying the various agreements that created the direct obligations on which the Claims were based.  See, e.g., Opp'n ¶ 6 (identifying the Letter of Intent in which Lehman Brothers Inc. ("LBI") and its affiliates agreed to enter into a transaction to acquire a controlling interest in SkyPower and incur certain funding obligations); id. ¶ 7 (identifying the Stock Purchase Agreement and the Shareholder Agreement through which Lehman and its affiliates "implemented the acquisition [] of the controlling interest in SkyPower, established the mechanism by which Lehman was to acquire additional SkyPower stock and thereby positioned the parties for the post-closing equity contributions by Lehman to fund SkyPower's business"); id. ¶ 11 (stating that, as a result of entering into the Shareholder Agreement, the Minority Shareholders essentially relinquished all their rights of ownership and control of SkyPower to Lehman, as they could no longer transfer their SkyPower shares and had given Lehman control over SkyPower's board of directors, management and operations); id. ¶ 14 (noting that, as contemplated by the transactional documents, "'Lehman' – through LBHI – provided the requisite equity contribution in 2007 pursuant to [the original] Equity Contribution Agreement, dated December 28, 2007," which was amended and restated in the Equity Contribution Agreement approximately three months later).

9.      Nearly three years later, the Plan Administrator responded to the Opposition and seeks to expunge the Claims, erroneously characterizing them as derivative claims.  The Plan Administrator argues, without any analysis of the facts the Minority Shareholders have set forth

4

in support of the Claims, that "Claimants have not alleged (nor could they) any personal, distinct injuries arising from LBHI's alleged 'failure to fund' that are independent of their status as shareholders in the now-defunct SkyPower."  Reply ¶ 36 (citing Opp'n ¶¶ 15, 29, 31).  This conclusory contention has no merit.

10.    The Plan Administrator's derivative argument is premised on both (i) Canadian law, which the Plan Administrator favors insofar as the question is whether the Claims are derivative of SkyPower, a Canadian entity, and (ii) New York law because three of the contracts at issue each contain a New York choice of law provision.  Where there is no substantive difference between Canadian law and New York law on an issue, the Court does not need to engage in a choice of law analysis and can apply New York law.  Morgan Stanley v. Skowron, 958 F. Supp. 2d 417, 424 (S.D.N.Y. 2013).

11.    The very cases on which the Plan Administrator relies hold that "where the thrust of a plaintiff's claim is to vindicate his or her personal rights as an individual and not on behalf of the corporation, the claim will be considered direct."  Andrew Greenberg, Inc. v. Svane, Inc., 36 A.D.3d 1094, 1097 (3d Dep't 2007) (alterations omitted) (citations omitted) (internal quotation marks omitted) (claims for tortious interference and misappropriation of trade secrets (which were owned by plaintiff shareholder, but licensed to corporation) were direct claims belonging to shareholder); Eisenberg v. Flying Tiger Line, Inc., 451 F.2d 267, 269 (2d Cir. 1971) (plaintiff had standing to bring claim on behalf of himself and other shareholders to enjoin reorganization plan that would deprive the shareholders themselves of the right to vote on the company's affairs).

12.    Canadian law similarly recognizes that where a plaintiff shareholder had a direct relationship with a defendant and seeks to vindicate a personal right arising out of that

5

relationship, the claim is direct.  As stated in <u>Hercules Managements Ltd. v. Ernst & Young</u>, also a case on which the Plan Administrator relies:

> In finding that claims in respect of losses stemming from an alleged inability to oversee or supervise management are really derivative and not personal in nature, I have found only that shareholders cannot raise individual claims in respect of a wrong done <u>to the corporation</u>.  Indeed, this is the limit of the rule in <u>Foss v. Harbottle</u>.[2]  Where, however, a separate and distinct claim (say, in tort) can be raised with respect to a wrong done to a shareholder <u>qua</u> individual, a personal action may well lie, assuming that all the requisite elements of a cause of action can be made out.

<u>Hercules Mgmts. Ltd. v. Ernst & Young</u>, [1997] 2 S.C.R. 165, para. 62 (Can.).

13.    The Minority Shareholders have made specific allegations that LBHI breached contractual funding obligations and "Rights" obligations to purchase additional shares that were owed directly to the Minority Shareholders under the Equity Contribution Agreement, the Letter of Intent, the Stock Purchase Agreement, and the Shareholder Agreement.  To obtain these contractual rights, the Minority Shareholders relinquished significant personal rights, including the rights to (i) control what was at the time a valuable company and (ii) freely transfer their shares in that company.  Thus, LBHI's breaches of its funding and Rights obligations damaged the Minority Shareholders in a direct and personal way, which makes the Claims direct, not derivative, claims.  <u>Henneberry v. Sumitomo Corp. of Am.</u>, 415 F. Supp. 2d 423, 443 (S.D.N.Y. 2006) (holding that the plaintiff, a majority stockholder of a corporation, had standing to assert a claim for promissory estoppel against defendant for breaking promises to make additional investments in the corporation because certain statements were made to the plaintiff personally); <u>Blackman v. GMC</u>, Case No. 75 Civ. 1033 (MEF), 1978 U.S. Dist. LEXIS 17021, at *3-4

---

[2]    <u>Foss v Harbottle,</u> (1843) 67 Eng. Rep. 189 (Ch.); 2 Hare 461, is the leading English case that established the rule that individual shareholders have no cause of action for wrongs done to the corporation.

DOCSNY-569823

(S.D.N.Y. June 23, 1978) (plaintiff had standing to bring direct claims against defendants for failing to provide financing to plaintiff's wholly-owned company because plaintiff "assert[ed] injuries based on an alleged direct relationship between himself and the defendants"); Meyerson v. Franklin Knitting Mills, 185 A.D. 458, 460 (1st Dep't 1918) (plaintiff that agreed to purchase defendant's shares in a corporation had standing to sue defendant for breaching contract to supply goods and credit to the corporation because such promises were considered to be made directly to plaintiff in exchange for his agreement to purchase the shares).[3]

14.     The cases on which the Plan Administrator relies that find a plaintiff's claim to be derivative are easily distinguishable and do not apply here because each involves a plaintiff that had no separate, direct relationship with the defendant.  See Hercules, [1997] 2 S.C.R. 165, para. 60 (shareholders of a corporation asserted negligent representation claim against corporation's auditor); Prudential Assurance Co. v. Newman Indus. Ltd. (No. 2), [1982] Ch. 204 at 222 (C.A.) (shareholders of corporation asserted fraud claims against directors for concealing the true nature of a transaction that cost the company £445,000); Rogers v. Bank of Montreal, (1985) 64 B.C.L.R. 63 (Can. B.C. S.C.) (shareholder's claims against creditor of the corporation and the

---

[3]     Because Canadian law also deems claims by a shareholder to vindicate a personal right to be direct claims, the Minority Shareholders' Claims are direct claims under Canadian law as well.  While the Plan Administrator cites Goldex Mines Ltd. v. Revill in arguing the Claims are derivative, the court there actually found some of plaintiff's claims were direct because, like here, even if defendants' acts are "undoubtedly a wrong to the company, . . . [it] is in our view also a wrong to the shareholders . . . affecting their own personal rights."  Goldex Mines Ltd. v. Revill, [1974] 7 O.R. 2d 216 para. 37 (Can. Ont. C.A.).  The Canadian court's decision in McKenzie v. Hannibal, 2012 BCSC 1547 (Can.), provides even further guidance.  In McKenzie, a minority shareholder and its individual owner sued the majority shareholder for breach of fiduciary duty and for breaching the share purchase agreement between the parties based on the majority shareholder's failure to honor his guarantee of the corporation's letter of credit and other wrongful conduct.  The court dismissed the breach of fiduciary claim as derivative, but not the breach of contract claim, reasoning that "evidence might well disclose circumstances resulting in damages distinct to the plaintiffs arising from the alleged breach of the contractual terms of the [share purchase agreement]."  Id. para. 36.  Thus, whether New York or Canadian law applies, the Claims are direct claims.

corporation's receiver for losses incurred by the company because of the receiver's appointment deemed derivative), aff'd, (1986) 9 B.C.L.R. 2d 190 (Can. B.C. C.A.); Albany-Plattsburgh United Corp. v. Bell, 307 A.D.2d 416, 420 (3d Dep't 2003) (minority shareholder's claim against majority shareholder for accounting and misappropriation of company's assets deemed derivative because "none of the stricken causes of action arise from an independent duty owed to [plaintiff] individually, unrelated to his status as shareholder"); Nordberg v. Lord, Day & Lord, 107 F.R.D. 692, 698 (S.D.N.Y. 1985) (shareholder's RICO claim against company's insurers and company's lawyers for company's loss of insurance recovery was derivative because "Plaintiffs . . . have failed to allege injuries, other than those inflicted on the corporation, or a special relationship with defendants, entitling them to file an individual suit"); Gosconcert v. Hillyer, 158 B.R. 24 (S.D.N.Y. 1993) (claim asserted by company's creditors against company's president based on her shifting assets and liabilities among various companies and intermingling her personal funds with those of the company were claims that belonged to the company itself because there were "no allegations which uniquely affected Plaintiffs" and "the harm suffered by Plaintiffs is precisely that suffered by all other creditors" (citation omitted) (internal quotation marks omitted)).

15.    Unsuccessfully attempting to resuscitate its derivative argument, the Plan Administrator notes that (i) SkyPower settled its own claim against LBHI based on the Equity Contribution Agreement and (ii) the Minority Shareholders did not oppose that settlement in SkyPower's insolvency proceedings in Canada and the United States. Reply ¶ 38. The Plan Administrator posits that the Minority Shareholders cannot pursue a derivative claim on behalf of SkyPower as a means "to reopen" a settlement between the actual owner of that claim – SkyPower – and LBHI to which they did not object. Id. But the Minority Shareholders are not

pursuing a derivative claim on behalf of SkyPower; rather, the Minority Shareholders have their own direct claims. Thus, SkyPower's settlement of its own claim vis-à-vis its own insolvency proceeding has no preclusive effect whatsoever on the Minority Shareholders' pursuit of their own direct claims in this bankruptcy proceeding. Indeed, SkyPower's settlement of its claims against LBHI is irrelevant to the Court's determination as to whether the Claims should be allowed. See Andrew Greenberg, 36 A.D.3d at 1096-97 (settlement between corporate debtor and defendants on debtor's own claims did not preclude debtor's shareholder from pursuing its direct claims).[4]

16.     For the foregoing reasons, this Court should find that the Claims set forth direct claims belonging to, and properly asserted by, the Minority Shareholders.

## II.     THE MINORITY SHAREHOLDERS HAVE STATED VALID CLAIMS

17.     In their Objection, the Debtors also contended that the Claims "lack prima facie validity as they do not set forth any facts or legal basis in support of their asserted theory of liabilities." Objection ¶ 14. The Debtors' specifically argued that the Minority Shareholders appeared to be asserting a breach of contract claim when they were not parties to any contracts with any of the Debtors. Id. ¶ 18.

---

[4]     The Plan Administrator does not argue that the settlement between LBHI and SkyPower precludes direct claims; nor does it reference any provision in the settlement agreement that would do so. In any event, there is no basis to allow this settlement to have any preclusive effect against the Minority Shareholders. The Debtors objected to the Claims in this Court, the Court with exclusive jurisdiction to resolve objections to claims against LBHI. In the midst of an indefinite adjournment, LBHI settled another claim made by a third party in another jurisdiction. Allowing that settlement and any foreign court orders entered in connection with that settlement to affect the objection to the Claims pending in this Court would not only be inequitable, but would usurp this Court's authority. Finally, given the Plan Administrator's acknowledgment of the Minority Shareholders' low level of priority in the SkyPower estate, it is not clear what objection they could have made to oppose a settlement that was strongly supported by the highest ranking beneficiaries of that estate.

9

18.    In response, the Minority Shareholders made three distinct legal arguments as to why their direct claims were legally viable: (i) the various agreements (including the Equity Contribution Agreement) entered into in connection with LBHI's purchase of a controlling interest in SkyPower and commitment to acquire additional shares through continued equity contributions should be read together as part of a single transaction (Opp'n ¶¶ 20-26); (ii) given that LBHI's funding obligations under the Equity Contribution Agreement were simply the mechanism used to implement and effectuate the funding obligations owed by LBHI's shell subsidiary to the Minority Shareholders under the Shareholder Agreement, the Minority Shareholders should be deemed third-party beneficiaries (id. ¶¶ 27-31); and (iii) the corporate veil between LB SkyPower and LBHI should be pierced to hold LBHI liable for LB SkyPower's breaches of the Stock Purchase Agreement and Shareholder Agreement (id. ¶¶ 32-38).

19.    The Plan Administrator now maintains that the Minority Shareholders' effort "falls short" and that the legal theories on which they base their Claims against LBHI "do not withstand scrutiny."  Reply  ¶¶ 4-5.  For the reasons stated below, the Plan Administrator is incorrect – the Minority Shareholders have adequately stated valid claims against LBHI based on any one of the three legal theories set forth in the Opposition.

**A.**    **All Of The Agreements To The Transaction Must Be Construed Together**

20.    The Minority Shareholders have stated a viable direct claim for breach of contract by LBHI, alleging that the various operative documents – the Letter of Intent, the Stock Purchase Agreement, Shareholder Agreement, and Equity Contribution Agreement – should be considered parts of one transaction.  In the Opposition, the Minority Shareholders identified the common purpose permeating these transactional documents: LBI and LBHI – themselves or through their affiliates –  were to purchase a controlling interest in SkyPower, incur the Rights obligations to purchase additional interests, and incur ongoing funding obligations.  Opp'n ¶ 23.  The parties'

10

inclusion of the Goodmans Steps Memo as the closing memorandum for this transaction, which delineates each of the agreements and transactions as steps of a single transaction, offers even stronger support for applying the single transaction theory.   Opp'n Ex. 2.   Moreover, the Goodmans Steps Memo explicitly references post-closing transactions that were integral to this unitary transactional purpose, including that "[f]uture equity contributions by Lehman will be made in consideration for additional Class A common shares of Acquisitionco [the entity to become SkyPower's direct parent] pursuant to the Rights." Id. at 5.[5]

21.     In an unsuccessful attempt to challenge the sufficiency of the Minority Shareholders' "single transaction"-based breach of contract claim, the Plan Administrator contends: (i) the two Second Circuit cases on which the Minority Shareholders rely to apply the single transaction theory (TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 90 (2d Cir. 2005) and This Is Me, Inc. v. Taylor, 157 F.3d 139, 143 (2d Cir. 1998)) are distinguishable; (ii) even if the single transaction theory applies, it "does not mean that every provision in the Equity Contribution Agreement should be read into the [Shareholder Agreement], or visa versa";  and (iii) the fact that the Equity Contribution Agreement was signed eight months after the other agreements and that LBHI provided funding to SkyPower during that gap period "belies the Minority Shareholders' argument that the Equity Contribution Agreement was simply a tool for implementation of the [Shareholder Agreement]."   Reply ¶¶ 44-46.   These arguments have no merit.

---

[5]     The Plan Administrator is wrong when it argues that the Minority Shareholders assert "that LBHI is liable under the [Shareholder Agreement] as an 'Affiliate' of LB SkyPower." Reply ¶ 48.   That is not the Minority Shareholders' position.   Rather, the Minority Shareholders contend that "LBHI and LBI also maintain obligations under the various agreements as 'Affiliates' of LB SkyPower." Opp'n ¶ 25 (emphasis added).   In other words, the inclusion of the defined term "Affiliates" in the Shareholder Agreement demonstrates that the parties to the Shareholder Agreement recognized that that agreement was a part of a larger transaction in which the parties' affiliates would also incur obligations.

11

22.     First, the Plan Administrator argues that the parties in TVT Records "plainly indicated an intent by the parties that the agreements constitute a single transaction" by requiring one party in one agreement to honor certain terms in the second agreement to which it was not a signatory and modifying certain terms of that second agreement.  Reply ¶ 44.  Likewise, This Is Me involved agreements that cross-referenced each other.  According to the Plan Administrator, because the Equity Contribution Agreement does not modify or reference the Shareholder Agreement, the facts here do not match precisely with these two cases, and the Claims are subject to objection.

23.     The Second Circuit's decision in TVT Records, however, sets forth a flexible standard for determining when the single transaction theory applies, stating that "'[w]hether multiple writings should be construed as one agreement depends upon the intent of parties.'" TVT Records, 412 F.3d at 89 (alteration in original) (quoting Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49, 52-53 (2d Cir. 1993)).  As long as multiple agreements are designed to effectuate the same purpose, even if they are executed on different dates, they will be considered part of a single transaction.  Id.; This Is Me, 157 F.3d at 143.  Thus, under TVT Records and This is Me, a plaintiff is required to allege, and ultimately establish at trial, only that multiple agreements were entered to effectuate a single purpose, thereby demonstrating that it was the intent of the parties to consider such multiple agreements to be part of a single transaction.  The Minority Shareholders have done that in the Claims and in the Opposition.

24.     Moreover, the Goodmans Steps Memo is at least as strong an indication that the parties intended all the relevant agreements at issue to be part of a single transaction as the evidence put forth in TVT Records and This Is Me.  The entire purpose of the Goodmans Steps Memo was to put all the steps of these interrelated transactions and agreements together in one

12

document to serve as the closing memorandum for the transaction.    Importantly, the Plan Administrator offers nothing in rebuttal to the Goodmans Steps Memo that would demonstrate that the intent of the parties was to consider each agreement separately.    See Bank of N.Y. v. Fed. Deposit Ins. Co., 453 F. Supp. 2d 82, 100 (D.D.C. 2006) (applying New York law to deem bank to be a party to an indenture agreement entered into in connection with a securitization transaction by relying, in part, on plaintiff's failure to offer any rebuttal to statements in offering memoranda and legal opinion letters that demonstrated parties' intent to consider indenture part of a single transaction), aff'd, 508 F.3d 1 (D.C. Cir. 2007).

25.    Second, the Plan Administrator relies on Rosen v. Mega Bloks Inc., No. 06 Civ. 3474 (LTS) (GWG), 2007 U.S. Dist. LEXIS 48479 (S.D.N.Y. July 6, 2007), for its argument that even if the single transaction theory applies, it "does not mean that every provision in the Equity Contribution Agreement should be read into the [Shareholder Agreement], or vice versa."    Reply ¶ 45.    While that may be true, such complete cross-referencing is not required. What is necessary – and what the Minority Shareholders have set forth with respect to the Claims – is that the single transaction theory must consider those provisions that actually effectuate the common purpose of the multiple agreements at issue.    The reason multiple agreements can be read as one to make a party to one agreement obligated to perform under a second agreement is because the agreements are designed to effectuate the same purpose.    TVT Records, 412 F.3d at 89; This Is Me, 157 F.3d at 143.    Here, as explained above, one of the common purposes the parties sought to effectuate was to implement the funding obligations owed directly to the Minority Shareholders under the operative agreements at issue, including the Shareholder Agreement.    Thus, any obligation in the Equity Contribution Agreement relating to funding should be read into the Shareholder Agreement.

13

26.    Moreover, <u>Rosen</u> is inapplicable here.  Initially, the Report and Recommendation of Magistrate Judge Gorenstein in <u>Rosen</u> addressed the question of arbitrability – i.e., whether the parties agreed to arbitrate – on a motion to compel arbitration under the Federal Arbitration Act.  <u>Rosen</u>, 2007 U.S. Dist. LEXIS 484479, at *9-10.  Unlike this Sufficiency Hearing (the standard for which is akin to a Rule 12(b)(6) dismissal motion), the motion to compel under the FAA is reviewed under "'a standard similar to that applicable for a motion for summary judgment' in that [the court] must determine whether there is 'an issue of fact as to the making of the agreement for arbitration.'"  <u>Id.</u> at *9-10 (quoting <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003)).  Further, the facts in <u>Rosen</u> were starkly different to those set forth in the Claims.  In <u>Rosen</u>, the defendants entered into a stock purchase agreement with the plaintiffs to purchase the shares of the plaintiffs' company as well as separate employment agreements with each plaintiff.  <u>Id.</u> at *1.  While the employment agreements each had an arbitration provision, the stock purchase agreement did not.  <u>Id.</u> at *4-5.  When the plaintiffs sued for breach of the stock purchase agreement, the defendants argued that the three agreements should be read as one and the arbitration provisions in the employment agreements should be read into the stock purchase agreement.  <u>Id.</u> at *11-12.  The court rejected the argument, because there was no support for the defendants' contention that the parties intended the arbitration provisions of the employment agreements to apply to the stock purchase agreement.  Arbitrating disputes was certainly not a common purpose that the parties intended to effectuate through these agreements.  Quite the contrary, the fact that two of three agreements contained an arbitration clause, while the other related agreement did not, demonstrated that the parties' intent was not to arbitrate disputes under the stock purchase agreement.  <u>Id.</u> at *16.  The court also noted that the stock purchase agreement contained a forum selection clause, which further demonstrated the parties' intent not

14

to arbitrate.  Id. at *16-17.  In contrast, the operative agreements here were intended to effectuate a common purpose – to implement and effectuate the funding obligations that ran directly to the Minority Shareholders under the Shareholder Agreement.

27.    Finally, the Plan Administrator argues that the single transaction theory does not apply because (i) the Equity Contribution Agreement was signed eight months after the other agreements, and (ii) the fact that LBHI provided funding to SkyPower during that gap period "belies the Minority Shareholders' argument that the Equity Contribution Agreement was simply the tool for implementation of the [Shareholder Agreement]."  Reply ¶ 46.  The first argument is a non-starter because the Second Circuit in TVT Records and This is Me explicitly held that agreements signed on different dates would not preclude the application of the single transaction theory.  TVT Records, 412 F.3d at 89; This Is Me, 157 F.3d at 143; see also Bank of N.Y., 453 F. Supp. 2d at 100 (holding "it does not matter whether the Master Indenture and the other documents were . . . between different parties" nor "does it matter that the Master Indenture was executed on a different date from the Trust Agreement and the Administration Agreement").

28.    More importantly, the fact that LBHI provided $157,400,900 does not belie the Minority Shareholders' argument that the agreements must be read as one; it makes it stronger. The Plan Administrator does not argue, and cannot deny, that such funding was provided in fulfillment of the obligations that LBHI knew it would eventually incur under the Equity Contribution Agreement.  Thus, the fact that LBHI began providing this funding to SkyPower as soon as the other agreements were executed demonstrates that the Minority Shareholders are correct – the parties to the Shareholder Agreement, the Stock Purchase Agreement, and the Equity Contribution Agreement intended to enter into one single transaction that would be

15

comprised of multiple agreements. The delay in actually executing the Equity Contribution Agreement therefore did not matter.

29.     Because the Minority Shareholders have pled facts demonstrating that the collective intent of LBHI and its affiliates, SkyPower, and the Minority Shareholders was to consider all the operative agreements entered into in connection with LBHI's investment in SkyPower – including the Equity Contribution Agreement – as part of a single transaction, the Minority Shareholders' Claims based on LBHI's breaches of these agreements should be allowed.

### B.     Claimants Are Third-Party Beneficiaries Of The Equity Contribution Agreement

30.     The Minority Shareholders also have a valid breach of contract claim because they are third-party beneficiaries to the Equity Contribution Agreement. The Claims and Opposition allege facts demonstrating that LBHI and SkyPower intended that the Minority Shareholders be third-party beneficiaries. Specifically, the Minority Shareholders set forth in the Opposition that (i) under the Equity Contribution Agreement, LBHI undertook the unconditional obligation to provide equity contributions to SkyPower; (ii) these equity contributions were designed to keep SkyPower a competitive, profitable, and operating business; and (iii) LBHI's equity contribution obligations matched LB SkyPower's funding obligations to the Minority Shareholders under the Shareholder Agreement. Opp'n ¶¶ 28-29. These facts demonstrate that LBHI's funding obligations under the Equity Contribution Agreement were simply the mechanism used to implement and effectuate LB SkyPower's obligations under the Shareholder Agreement. Id. ¶ 29.

31.     In the Opposition, the Minority Shareholders rely on cases to support their contention that whether a party qualifies as a third-party beneficiary to an agreement is a matter

16

of the parties' intent and that such intent may be inferred from the fact that the non-signatory was an integral part of an overall transaction involving multiple, related parties and agreements. Opp'n ¶¶ 27, 30 (citing MK W. St. Co. v. Meridien Hotels, Inc., 184 A.D.2d 312, 313 (1st Dep't 1992); Res. Funding Corp. v. Congrecare, Inc., No. 91 Civ. 8163 (RWS), 1994 WL 24825, at *8 (S.D.N.Y. Jan. 21, 1994)).

32.    In response, the Plan Administrator makes several arguments why the Minority Shareholders do not have a third-party beneficiary breach of contract claim based on the Equity Contribution Agreement, all of which are off the mark.    First, it argues that the Minority Shareholders "have the burden of establishing third-party beneficiary status under the Equity Contribution Agreement."    Reply ¶ 40.    But that is an appropriate standard for trial or summary judgment, not for the upcoming Sufficiency Hearing on the Objection.[6]    Rather, the more appropriate burden is the one utilized by the court in the LaSalle National Bank case cited by the Plan Administrator:    whether the pleading "set[s] forth any basis upon which we could construe the existence of third-party rights and that plaintiffs were intended to be the third-party

---

[6]    Even if the cases on which the Plan Administrator relies to require a plaintiff to "establish" his third-party beneficiary status were not summary judgment cases, they would have no bearing on the merits of the Objection during the Sufficiency Hearing before this Court.    In those cases, the court found that explicit language in the contract precluded the plaintiff from claiming third-party beneficiary status either at all or in the context of the claim being made. Consol. Edison Inc. v. N.E. Utils., 426 F.3d 524, 528 (2d Cir. 2005) ("[T]he parties to the Agreement clearly created a third-party right, but just as clearly they took the pains to assure that the right was limited . . . ."); In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F. Supp. 712, 733 (S.D.N.Y. 1989) ("Explicit language in the Merger Agreement demonstrates that the parties specifically intended not to confer third-party beneficiary status on anyone."); see also Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 371 (2d Cir. 1995) (defendant that belatedly claimed ownership to vessel failed to meet its burden on a summary judgment motion to prove it was a third-party beneficiary to a letter of undertaking between plaintiff and company insuring the vessel because the letter "necessarily referred to a known owner, not one lurking in the background" (internal quotation marks omitted)).

17

beneficiaries."  LaSalle Nat'l Bank v. Ernst & Young LLP, 285 A.D.2d 101, 109 (1st Dep't 2001).

33.    Here, the Minority Shareholders have met their burden because they have pled facts that demonstrate that LBHI's funding obligations under the Equity Contribution Agreement are the mirror image of, and were the mechanism for effectuating, LB SkyPower's obligations to the Minority Shareholders under the Shareholder Agreement.  Indeed, the Plan Administrator does not dispute that LB SkyPower increased its ownership interest in SkyPower to almost 80% by 2008 through the Rights provisions in the Shareholder Agreement as a result of the funding LBHI provided under the Equity Contribution Agreement.  Opp'n ¶ 14.  For this reason, the Plan Administrator's "broker versus customer" cases do not control.  In those cases, the introducing or opening broker could not claim to be a third-party beneficiary of the contract between its customer and the clearing broker to take advantage of that contract's arbitration clause, because those parties entered into their contract for their own mutual benefit, not to benefit the opening broker.  McPheeters v. McGinn, Smith & Co., 953 F.2d 771, 773 (2d Cir. 1992); Kyung Sup Anh, M.C., P.C. Ret. Trust Pension v. Rooney, Pace Inc., 624 F. Supp. 368, 371 (S.D.N.Y. 1985).[7]  In any event, the Plan Administrator is again erroneously relying on cases where a defendant sought to enforce an arbitration provision under the Federal Arbitration Act, which

---

[7]    The Court's recent decision granting an objection to a claim based on third-party beneficiary rights is likewise distinguishable.  In re Lehman Bros. Holdings Inc., 2014 Bankr. LEXIS 2666.  There, the Court rejected the claimant's argument that it should be deemed a third-party beneficiary based on (i) the claimant's "mutually beneficial relationship" with the investment funds that were parties to the contract with the Debtors, and (ii) the fact the Debtors were aware of the benefits flowing to the claimant.  Id. at *9-10.  In contrast, the Minority Shareholders' basis for claiming third-party beneficiary status is not so limited.  They have alleged facts demonstrating that the intent of the parties to the Equity Contribution Agreement was to create the mechanism by which obligations owed to the Minority Shareholders under the Shareholder Agreement would be effectuated.

DOCSNY-569823

required the court to "apply the 'federal substantive law of arbitrability.'" <u>McPheeters</u>, 953 F.2d
at 772 (citation omitted).

34.    Next, the Plan Administrator claims "[t]he Minority Shareholders do not cite any
legal authority to support their contention that being a party to a prior, separate agreement
somehow automatically confers third-party beneficiary status to a later agreement to which they
are not a party." Reply ¶ 43.    The Plan Administrator has grossly misstated the Minority
Shareholders' position.    The Minority Shareholders do not argue that they are "somehow
automatically" third-party beneficiaries simply because they were parties to the Shareholder
Agreement or Stock Purchase Agreement.    Rather, as explained above, the Minority
Shareholders rely on specific factual allegations regarding the obligations under these
agreements, the relationship between and among the parties to these agreements, and the conduct
of the parties in performing under these agreements, to demonstrate that the intent of the parties
to the Equity Contribution Agreement was to confer on the Minority Shareholders third-party
beneficiary status.    Moreover, contrary to the Plan Administrator's inaccurate accusation, the
Minority Shareholders provide legal authority to support their argument, citing <u>MK W.</u>,
184 A.D.2d at 313, and <u>Res. Funding</u>, 1994 WL 24825, at *8, to support their position that
whether a plaintiff is entitled to third-party beneficiary status depends on the intent of the parties.
More importantly, they cite <u>Res. Funding</u>, an instructive decision in which Judge Sweet found
that a third-party beneficiary counterclaim was adequately pled based on the non-signatory being
a party to another agreement that was signed several months later, but was part of the same
overall transaction at issue. <u>Res. Funding</u>, 1994 WL 24825, at *8.[8]

---

[8]    The Plan Administrator's final argument is that the Minority Shareholders mistakenly
rely on <u>TVT Records</u> and <u>This is Me</u> to support their third-party beneficiary argument.  Reply
¶ 43.  It is the Plan Administrator that is mistaken.  These two cases are cited in support of the

DOCSNY-569823

35.    Because the Minority Shareholders have set forth sufficient facts to support their contention that they are third-party beneficiaries to the Equity Contribution Agreement, their Claims based on LBHI's breaches of the Equity Contribution Agreement survive the Objection.

**C.    The Corporate Veil Should Be Pierced To Hold LBI And LBHI Liable For Breaches Under The Shareholder Agreement**

36.    Contrary to the Plan Administrator's wrong-headed characterization, the Minority Shareholders' veil piercing claim goes well beyond conclusory and "bare-bones allegations." Specifically, they allege in detail that (i) LBI and LBHI created LB SkyPower as an indirect wholly-owned subsidiary with the sole purpose of serving as the vehicle through which LBI and LBHI would fulfill their contractual obligation to invest in SkyPower; (ii) LB SkyPower was completely controlled by LBHI and LBI, and was merely a shell and instrument of LBHI and LBI; (iii) LBI and its affiliate LBHI held themselves out to SkyPower as the real party in interest to the overall transaction throughout negotiation and in various memos from LBI's counsel and other documents; and (iv) LBI and LBHI, as a result of their complete domination and control of LB SkyPower, should be held liable for breaches of the operative agreements as the alter ego of LB SkyPower.   Opp'n ¶¶ 34-37; ¶34 (providing the Court with, and citing to, documents that support these detailed allegations).   Notwithstanding the Plan Administrator's current protestations, LBHI disclosed to the public that it was the real party in interest, stating in its 2007 Annual Report: "We [referring to LBHI and its subsidiaries, collectively] also acquired a 56.5%

---

Minority Shareholders' breach of contract claim based on the single transaction theory, but not their breach of contract claim based on their status as a third-party beneficiary.  This is evident from the fact that the two cases are cited and discussed extensively in the section of the Opposition titled "All Of The Agreements To The Transaction Must Be Construed Together," but not at all in the section titled "Claimants Are Third-Party Beneficiaries Of The Equity Contribution Agreement."  Opp'n ¶¶ 20-26, 27-31.

20

controlling interest in SkyPower Corp."; and "SkyPower Corp. is consolidated in our results of operations." Lehman Bros. Holdings Inc., Annual Report (Form 10-K) 6, 45 (Jan. 29, 2008).

37.     The Plan Administrator's contention that these allegations are nothing more than conclusory and bare-bones allegations flies in the face of extensive and specific detailed allegations contained in the Opposition.  Allegations regarding when Lehman's subsidiary shell entity was created, why it was created, and how it was used to commit a wrong against the Minority Shareholders are precisely the types of allegations that can support a veil piercing claim. Emposimato v. CIFC Acquisition Corp., 30 Misc. 3d 1233(A) (table), 2011 WL 833801, at *10-11 (Sup. Ct. N.Y. County) (holding that complaint sufficiently stated alter ego claim against the defendant "JCP" by including allegations "that JCP created [a subsidiary] CIFC for the sole purpose of serving as the vehicle for JCP's purchase of the Stock; that CIFC . . . was acting merely as an instrument of JCP"; and that "it was JCP which caused CIFC to commit [a] breach" of the covenant of good faith and fair dealing), aff'd, 89 A.D.3d 418 (1st Dep't 2011); Cerchia v. V.A. Mesa, Inc., 191 A.D.2d 377 (1st Dep't 1993) (reversing trial court's granting of motion to dismiss based on allegations of when alleged alter ego company was formed, overlapping officers and addresses, and that alter ego was created to avoid paying plaintiff's commissions); G.E. Capital Commercial Fin. Bus. Prop. v. Erba Food Prods. Inc., 15 Misc. 3d 1104(A) (table), 2007 WL 776621, at *3 (Sup. Ct. N.Y. County 2007) (denying motion to dismiss based on allegations that alter ego entity was created by borrower's principal's wife after dissolution of the borrower to operate the same business as the borrower and to avoid repayment of a loan).  This is especially true here, where these allegations are supported by documentary evidence such as the Letter of Intent, the Goodmans Steps Memo, and the Lehman Brothers Inc. memorandum dated September 5, 2007.

21

38.    Presumably recognizing the fatal flaw in its argument, the Plan Administrator seeks to exclude the Minority Shareholders' evidence under the parol evidence rule.  Reply ¶ 57. But the parol evidence rule does not exclude evidence demonstrating that another entity should be held liable for the debts of a contracting party as its alter ego, because such evidence is not being used to alter the terms of the contract.  In re Universal Profile, Inc., 6 B.R. 196, 201-02 (Bankr. N.D. Ga. 1980) (the parol evidence rule did not preclude plaintiff from proving alter ego claim because "[t]his rule of evidence is not applicable in this instance because the evidence introduced would not be for the purpose of varying the terms of the settlement agreement; it would be for the purpose of establishing liability on equitable principles").  In any event, even if these specific documents are ultimately found to be inadmissible as evidence, the detailed allegations supporting the Minority Shareholders' veil piercing claim have been sufficiently pled; thus, there is no basis to object to the veil piercing claim at the Sufficiency Hearing.

39.    Additionally, the Plan Administrator again fails to acknowledge the cases supporting the Minority Shareholders' veil piercing claim, let alone explain why they should not apply here.  Opp'n ¶ 33 (citing Pritchard Servs. (NY) Inc. v. First Winthrop Props., Inc., 172 A.D.2d 394, 395 (1st Dep't 1991); Emposimato, 2011 WL 833801, at *10; Teachers Ins. Annuity Ass'n of Am. v. Cohen's Fashion Optical of 485 Lexington Ave. Inc., 45 A.D.3d 317, 318 (1st Dep't 2007)).  Instead, the Plan Administrator relies on two inapposite cases, each involving a landlord that sought to bring a veil piercing claim to collect rent from an individual or entity that owned the tenant – based solely on that ownership interest, but without alleging any other fact to support the claim.  Reply ¶ 57 (citing Andejo Corp. v. S. St. Seaport Ltd. P'ship, 40 A.D.3d 407 (1st Dep't 2007); Russo v. Heller, 80 A.D.3d 531, 532 (1st Dep't 2011)); cf. Teachers Ins., 45 A.D.3d at 318 (finding landlord adequately pled veil piercing claim because

22

"plaintiffs allege that [the parent] negotiated the lease on behalf of [its subsidiary], while holding itself out as the real party in interest, and, in direct violation of the lease . . . installed a franchisee to operate the business, leaving a judgment-proof [subsidiary] an empty shell with no assets"). The Claims, on the other hand, adequately state veil piercing claims.

40.    Finally, in addition to asserting a claim to pierce the corporate veil to hold LBHI liable for all breaches of the contractual obligations owing to the Minority Shareholders (including obligations incurred under the Shareholder Agreement), the Minority Shareholders seek to hold LBHI liable for its breach of the covenant of good faith and fair dealing.  The Plan Administrator argues that claim must fail because New York law does not recognize a separate cause of action for breach of the covenant of good faith and fair dealing where there is a breach of contract claim based on the same facts.  Reply ¶ 58.  But as the cases on which the Plan Administrator relies demonstrate, that rule applies only where the claims are duplicative.  Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) (holding that under New York law, the district court properly dismissed claim for breach of covenant of good faith and fair dealing against insurer for denial of coverage because plaintiff also asserted a breach of contract claim for that denial); Simon v. Unum Group, Case No. 07 Civ. 11426 (SAS), 2008 U.S. Dist. LEXIS 47719, at *16-17 (S.D.N.Y. June 18, 2008) (same).

41.    On the other hand, a plaintiff can bring a claim for breach of the covenant of good faith and fair dealing based on the plaintiff being "entitled to expect that the [counterparty] would not act to destroy its rights to enjoy the fruits of its contract," if such a claim does not simply duplicate a claim for breach of an express contractual provision.  Dorset Indus., Inc. v. Unified Grocers, Inc., 893 F. Supp. 2d 395, 410 (E.D.N.Y. 2012).  The Minority Shareholders should be allowed to pursue such a claim here.

23

42.     The Minority Shareholders allege (Opp'n ¶¶ 11-12) that under the Shareholder Agreement:

- "As and <u>when determined by Lehman to be necessary</u> to fund expenditures contemplated by an approved annual operating Budget for the Operating Plan, Lehman will exercise the Rights."   Shareholder Agreement § 8.1 (emphasis added).

- "Lehman will as appropriate either (a) provide <u>reasonable</u> assistance to [SkyPower] or any other relevant subsidiary in obtaining a credit rating; or (b) use commercially <u>reasonable</u> efforts to provide a 'keep well,' guarantee or other suitable arrangement, in the <u>necessary</u> amount as applicable, to allow [SkyPower] or a Subsidiary to be competitive in a RFP process in which Lehman has agreed that [SkyPower] or a Subsidiary shall participate." <u>Id.</u> § 8.2 (emphasis added).

LB SkyPower may argue that its failure to exercise the Rights did not breach the Shareholder Agreement because it was allowed to determine that it was not "necessary" to fund expenditures, given SkyPower's impending demise into insolvency.  Similarly, LB SkyPower may argue that its failure to provide credit assistance was not a breach because, given SkyPower's financial straits, such assistance "in the necessary amount" would not be "reasonable."

43.     Nevertheless, the Minority Shareholders would still have a valid claim for the breach of covenant of good faith and fair dealing.  The Minority Shareholders allege that they and their investment were wholly dependent on LB SkyPower providing SkyPower with adequate funding <u>and</u> management, and that LB SkyPower was specifically responsible for dictating "whether the Projects that were the lifeblood of SkyPower's business as well as Claimants' investment were funded."  Opp'n ¶ 13.   If anything, it was LB SkyPower's incompetency in managing SkyPower and utter failure to adequately fund SkyPower's "lifeblood" Projects that caused SkyPower to be in a position that could allow LB SkyPower to claim that it was not "necessary" to exercise the Rights, nor "reasonable" to provide credit support "in the necessary amount."  In addition to breaching express terms of the Shareholder

24

Agreement, LB SkyPower's conduct also prevented the Minority Shareholders from enjoying the benefits of the contract and was antithetical to the reasonable expectations of the Minority Shareholders.  Thus, these bad acts also constituted breaches of the covenant of good faith and fair dealing for which LBHI should be liable.  See Fishoff v. Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011) (covenant of good faith and fair dealing includes not doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" and a duty to exercise one's discretion "reasonably and with proper motive" and not "in a manner inconsistent with the reasonable expectations of the parties" (citations omitted) (internal quotation marks omitted)).  This claim is plainly not duplicative of the Minority Shareholders' express breach of contract claim.  See Smith v. CPC Int'l, Inc., 177 F.3d 110 (2d Cir. 1999) (holding claims for breach of contract and breach of implied covenant should have survived summary judgment because there were factual disputes as to whether defendant breached distribution agreements in bad faith by terminating without good cause);[9] Emposimato, 2011 WL 833801, at *10-11 (denying dismissal of breach of covenant of good faith and fair dealing claim because it was not "merely an impermissible substitute for a nonviable breach of contract claim," but a claim for breach of "a contract term which is not express, but should be implied").

44.    The implied covenant is intended to fill gaps in the express terms of the contract to insure that the parties' intent and reasonable expectations in entering the contract are not frustrated.  The Minority Shareholders' expectations – that the funding and related obligations would be fulfilled in consideration for their relinquishment of all management and control and

---

[9]    The Minority Shareholders also state a claim for breach of the covenant of good faith and fair dealing because LB SkyPower failed to employ "best efforts" in performing its contractual obligations.  Opp'n ¶ 38.  The Plan Administrator fails to address this aspect of the Claims.

their ability to exit the company – were certainly reasonable.  And LBHI and LBI's bad acts certainly frustrated the Minority Shareholders' right to receive the fruits of the contract.

45.    Based on the foregoing, the Minority Shareholders' Claims based on a veil piercing theory and the breach of the covenant of good faith and fair dealing should be allowed to proceed.

## Conclusion

46.    Consistent with the facts and description set forth in the Claims and the Opposition, Claimants have asserted direct claims for damages that they have directly and personally incurred due to (i) LBHI and LBI's failure to adequately fund, or to cause its wholly-owned subsidiary LB SkyPower to adequately fund, SkyPower; (ii) LBHI's breach of the Equity Contribution Agreement based on Claimants status as third-party beneficiaries of that Agreement; (iii) Debtors and LB SkyPower's breaches of the Shareholder Agreement – an agreement that was integral to LBHI and LBI's investment in SkyPower; and (iv) breaches of the covenant of good faith and fair dealing.  The Claims should therefore be allowed.

26

WHEREFORE, 2138747 Ontario Ltd. and 6785778 Canada Inc. respectfully request that

the Court deny the Objection, allow the Claims, and grant 2138747 Ontario Ltd. and 6785778

Canada Inc. such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 9, 2014

Respectfully submitted,

DICKSTEIN SHAPIRO LLP

By:    s/Deborah A. Skakel
      Deborah A. Skakel
      Shaya M. Berger
1633 Broadway
New York, New York  10019
Tel.:  (212) 277-6500
Fax:  (212) 277-6501

*Attorneys for 2138747 Ontario Ltd.
and 6785778 Canada Inc.*

DOCSNY-569823