# KAPLAN LANDAU LLP

ATTORNEYS AT LAW
1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018-0161

(212) 593-1700

FAX: (212) 593-1707

WWW.KAPLANLANDAU.COM

MARK S. LANDAU
EUGENE NEAL KAPLAN

PAUL C. EVANS
VALERIE A. PHILLIPS
MARY CECILIA SWEENEY
PATRICK TRAIN-GUTIÉRREZ

ALFRED M. MARKS
LOUIS I. KAPLAN
(1914-2007)
COUNSEL

July 9, 2014

**VIA FEDEX**

Honorable Shelley C. Chapman
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

Re:   In re Lehman Brothers Holdings, Inc., Chapter 11 Case No. 08-13555

Dear Judge Chapman:

We are attorneys for the Neuberger Berman Claimants.

We write in response to the recently submitted Debtors' Proposed Findings of Fact and Conclusions of Law ("DFF") and Debtors' Reply to RSU Claimants' Proposed Findings of Fact and Conclusions of Law not to expand the already lengthy record of these proceedings, but simply to point out the Debtors' use of disingenuously edited quotations from the testimony of our clients, Stephanie Stiefel and Henry Ramallo, to purportedly bolster Debtors' case -- one that once again relies largely on Debtors' well-worn mantra regarding the numerous uncounseled RSU holders that did not contest Debtors' omnibus objections and defaulted. *See, e.g.* DFF p. 2 at ¶ 4.

Debtors' use of ellipses in the quotations from Ms. Stiefel and Mr. Ramallo, *see,* DFF p. 13 at ¶¶ 29 and 30 and p. 19 at ¶ 41, rob their testimony of its true meaning. For example, the omitted pages of Mr. Ramallo's testimony place in context that the statements quoted by Lehman relate to only one aspect of his restrictive covenant (*see,* 4/2 Tr. at pp. 215-218) and that the two sentences of his answer that precede the quotation cited by Debtors from page 221 of the 4/2 Tr. were an emphatic response to Mr. Miller: "Sir, there were no options for me, sir. You don't want to believe it, but there were no options." (4/2 Tr. at p. 221:14-15.)

KAPLAN LANDAU LLP

Honorable Shelley C. Chapman
July 9, 2014
Page 2

Similarly, on page 13 of the DFF, Debtors' insert misleadingly edited quotations from Ms. Stiefel's testimony that are found on pages 124 and 137 of the 4/2 Tr. and that consciously omit the context found on the pages that fall in between, including, for example:

> Q .... In 2004, and this is true of all Neuberger Berman group, at least it was certainly true of you, there was no 2003 deferral that you would give up if you'd left in 2004; is that true?
>
> A I think that's correct, but I had founder shares.
>
> Q All right. So what would you give up if you left other -- in the way of deferred compensation as opposed to the restrictive covenants?
>
> A If I would've gone to a competitor, I could've lost my stock.
>
> Q All right. If you'd gone to a competitor –
>
> A If I would sit on a beach, I would be able to sell 10 percent a year.
>
> Q Well, let's ask whether you understand that literally means if you'd gone to a competitor, or do you understand that it mean if you went to a competitor and did certain things? Do you have that distinction in mind?
>
> A So it was my understanding again, I'm not a lawyer, that there was virtually nothing I could do in the industry. . . .
>
> \* \* \*
>
> Q All right. And now let's go back to A. You couldn't solicit or accept business from an existing client from Neuberger Berman, right, or a prospective client that either you directly solicited or you supervised the solicitation of, right?
>
> A That's correct.
>
> Q That still left a lot of people that were on Sanford Bernstein's list of prospective clients that you'd never heard of before probably?

KAPLAN LANDAU LLP

Honorable Shelley C. Chapman
July 9, 2014
Page 3

A    What list are you referring to, Sanford Bernstein's list?

Q    You don't think that any competitor is going to have a list of prospective clients that you've never heard of?

A    Absolutely not, I don't think that.

Q    That has that --

A    That's what they're hiring a wealth advisor is to generate that list.

Q    All right. And you belief is that all the prospective clients in the world were already on your list?

A    That's a gross exaggeration, of course, because you can't get to all of the prospective clients in the world, but what -- where you build a business is on the basis of your rolodex and your network. And for me, being in public accounting, I was networking with my former Arthur Andersen colleagues. I was networking with matrimonial lawyers. I was networking with trust and estate lawyers, and I was networking with ERISA lawyers, and they are lifeblood of what we do. Nobody gives you a list, nobody gives you clients, you generate all of them on your own, and they're based on your own contacts.

And the reason I was successful is because I had initially believe it or not, even though it doesn't exist anymore, I had the base of Arthur Andersen as a reference to refer clients to me. And I built a business from that, and you know, other related --

Q    All right.

A    -- referral sources.

\*   \*   \*

Q    Did you make any effort to sit down and consider what practically you would have in going to a competitor and saying, I can to work here, but here are the things that I can't do based on what we've been through, but I can go back more than a year, and I can work with all the information that I had more a year ago, that I built up from Arthur Andersen and people I haven't had business

KAPLAN LANDAU LLP

Honorable Shelley C. Chapman
July 9, 2014
Page 4

    contacts with, and define what you could do? Did you ever go through that exercise in your own mind?

A    First of all, how do you track it, right? You'd have to go back and research you calendar and, you know, et cetera, et cetera. But in my mind, I was out of business, because I could not solicit and accept clients, I could not network with the intermediaries that I had cultivated, and what typically happens, the way that you continue to build your business is that you are trying to touch them with, you know, different materials so that they think of you, if there is a situation, a life cycle situation where there's an asset management opportunity.

    So the facts -- I know you believe that if you just eliminated the time period that you would've been, you know, open for business, and you could just continue what you do, but the reality is, you're hoping to continually touch them. You build a database of these referral sources, and you send them a recent article, or you send them something about the markets.

    So you essentially are out of business because if you're doing you job properly, and how I was successful in building my business is that I'm reaching out and touching them. It's not perfect. The database always has to be, you know, updated and adjusted and sometimes you get busy with client demands, so you best intentions don't necessary get executed in that way.

    But effectively I believe that I would be out of business because my base of generating a business, I would go from a book of let's say in 2003, it was 700 million to zero. And when you have zero, you are valueless to your competitor, because you can't bring your clients, they're not going to generate revenue. And if you go to a competitor, someone has to pay you. And if they pay you, it's coming from somewhere. And if you're not generating revenue, then you are a lost leader.

    And maybe you're a nice person and maybe you have a great personality, but effectively it can take five to seven years to build a business. And if you are closed with respect to al the clients that you did this wonderful work for, help them buy houses, help them send their kids to college, and all these wonderful things that you've been responsible for, and if you eliminate that, then you are out of business.

KAPLAN LANDAU LLP

Honorable Shelley C. Chapman
July 9, 2014
Page 5

       Q    Your --

       A    You are worthless in the marketplace.

(4/2 Tr. at pp. 124:18-125:11 and pp. 133:5-136:24.)

       We are confident that in making its findings of fact, the Court will consider the complete testimony of our clients and not the truncated versions submitted by Debtors.

Respectfully yours,

Eugene Neal Kaplan

cc:    (By e-mail)
       Ralph Miller, Esq.
       Richard J. Schager, Jr., Esq.
       Lisa M. Solomon, Esq.
       Howard P. Magaliff, Esq.
       A. James Boyajian, Esq.