1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555 (SCC)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5

6   In the Matter of:

7

8   LEHMAN BROTHERS HOLDINGS, INC., et al.,

9            Debtors.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  U.S. Bankruptcy Court

14                  One Bowling Green

15                  New York, New York

16

17                  July 1, 2014

18                  2:03 PM

19

20

21

22  B E F O R E :

23  HON  SHELLEY C. CHAPMAN

24  U.S. BANKRUPTCY JUDGE

25

Page 2

1    Hearing re: Doc #15012 Debtors' One Hundred Eleventh Omnibus

2    Objection to Claims (No Liability Claims) filed by Shai

3    Waisman of behalf of Lehman Brother Holdings Inc.

4

5    Hearing re:  Doc #19377 Debtors' One Hundred Seventy-Eighth

6    Omnibus Objection to Claims (No Liability 401(k) Claims)

7    filed by Robert J. Lemons on behalf of Lehman Brother

8    Holdings, Inc.

9

10   Hearing re:  Doc #19714 Debtors' One Hundred Eighty-Fifth

11   Omnibus Objection to Claims (Compound Claims) filed by

12   Robert J. Lemons on behalf of Lehman Brothers Holdings, Inc.

13

14   Hearing re:  Doc #19921 Debtors' Two Hundredth Omnibus

15   Objection to Claims (No Liability Claims) filed by Robert J.

16   Lemons on behalf of Lehman Brothers Holdings, Inc.

17

18   Hearing re:  Doc #30031 Three hundred Forty-Second Omnibus

19   Objection to Claims (Employment-related claims) filed by

20   Robert J. Lemons on behalf of Lehman Brothers Holdings, Inc.

21

22   Hearing re:  Doc #30030 Three Hundred Forty-first Omnibus

23   Objection to Claims (No Liability Claims) filed by Robert J.

24   Lemons on behalf of Lehman Brothers Holdings, Inc.

25

1    Hearing re:  Doc #36007 Four Hundred Third Omnibus Objection

2    to Claims (No Liability Claims) filed by Robert J. Lemons on

3    behalf of Lehman Brothers Holdings Inc.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Jamie Gallagher

Page 4

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3        Attorneys for LBHI

4        767 Fifth Avenue

5        New York, NY 10153

6

7    BY:  MAURICE HORWITZ, ESQ.

8        ERIKA DEL NIDO, ESQ.

9        LAWRENCE J. BAER, ESQ.

10

11   WEIL, GOTSHAL & MANGES LLP

12       Attorney for LBHI

13       1300 Eye Street, NW

14       Suite 900

15       Washington, DC 20005

16

17   BY:  RALPH MILLER, ESQ.

18

19   STAMELL & SCHAGER, LLP

20       Attorney for Karen Krieger

21       One Liberty Plaza

22       35th Floor

23       New York, NY 10006

24

25   BY:  RICHARD SCHAGER, JR., ESQ.

1   ASTIGARRAGA DAVIS

2       Attorney for the liquidator for Banco Interior de Sao

3       Paulo

4       1001 Brickell Bay Drive

5       9th Floor

6       Miami, FL 33131

7

8   BY:  ARNOLDO B. LACAYO, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    P R O C E E D I N G S

2            THE COURT:  Okay, ready when you are.

3            MR. HORWITZ:  Good afternoon, Your Honor.  Maurice

4    Horwitz from Weil, Gotshal & Manges on behalf of Lehman

5    Brothers Holdings Inc. as the plan administrator.

6            The -- just a note before we begin, we did not

7    have an opportunity to file an amended agenda, but the last

8    item on today's agenda has actually been resolved and so it

9    will be coming off the calendar today.

10           THE COURT:  And that is the Barry O'Brien?

11           MR. HORWITZ:  That's right.

12           THE COURT:  Okay, very good.

13           MR. HORWITZ:  The first item on the agenda is a

14   carry-over from the 111th omnibus objection to claims, which

15   is ECF number 15012, filed on March 14th, 2011.  Today, the

16   plan administrator is proceeding with respect to one claim

17   on this objection, claim number 21949, which was filed

18   against LBHI by, and I'll use -- I'll pronounce this the way

19   it's spelled for the record, Alcides Roberto De Oliveira

20   Chavez (ph), as liquidator of Banco Interior to Sao Paulo,

21   S.A.

22           Your Honor, LBHI included this claim on the 111th

23   omnibus objection because the proof of claim makes no

24   mention of LBHI other than to say that the claimant asserts

25   a claim in the amount in excess of $14 million against LBHI

1    as the parent of Lehman Brothers Holdings Inc., which as

2    this Court is aware is a subsidiary of LBHI, but not a

3    debtor in these cases, separately administered under

4    liquidation pursuant to Securities Investor Protection Act

5    of 1970.

6           The proof of claim goes on to describe certain

7    transactions involving the former principal of Banco

8    Interior, Areo Ferrera (ph), that include the deposit of

9    $420,000 in an LBI bank account.  The claim alleges that

10   these transactions constituted a purported scheme to cover

11   up certain insider loans made by Mr. Ferrera and that LBI

12   and another indirect subsidiary of LBHI, Lehman Brothers

13   International Europe, aided and conspired Mr. Ferrera to

14   commit a fraud on Banco Interior, its creditors, and its

15   shareholders.  LBIE, Lehman Brothers International Europe,

16   is itself a separately administered entity.  It's an

17   administration of the United Kingdom under the control of

18   PricewaterhouseCoopers.

19          Because the claim made no allegations at all about

20   LBHI, LBHI included the claim on its omnibus objection on

21   the grounds that it asserts alleged wrongdoing by entities

22   that are not debtors in these cases.  The claimant then

23   filed a response which is ECF 22879 on December 2nd, 2011,

24   and recited essentially the same facts as are in the proof

25   of claim but replaced LBI with LBHI in its allegations of

Page 8

1    fraud.

2           Before filing this response, the attorneys for the

3    liquidator had actually served a discovery request on LBHI

4    and LBHI responded informing the attorneys for the

5    liquidator that there is a stay on discovery pursuant to the

6    claims procedures in these cases, but nevertheless, LBHI did

7    try to find out if it did have any information about the

8    bank accounts identified in the proof of claim, or anything

9    that's alleged in the proof of claim in the response.

10           LBHI was unable to find any documents for the time

11    period in question, which is 2000 to 2001 that would be

12    responsive to the liquidator's request.  In fact, very

13    little information at all, other than records indicating

14    that LBHI did own one of the bank accounts mentioned in the

15    proof of claim, and that is the Bank of America account into

16    which $450,000 were transferred from the LBI account.

17    That's all the information that LBHI was able to discern

18    from its records.

19           So, from the plan administrator's perspective,

20    Your Honor, we're faced with very broad allegations that

21    LBHI somehow conspired with Mr. Ferrera to commit some kind

22    of a fraud, but we don't know what the liquidator thinks

23    LBHI did.  We, frankly, don't know what, if anything, was

24    fraudulent or illegal about anything that's asserted in the

25    proof of claim or in the response.

Page 9

1                As we state in our papers in determining whether a

2        party has met its burden in connection with the proof of

3        claim, Bankruptcy Courts look to the pleading standards in

4        the Federal Rules of Civil Procedure.

5                THE COURT:  Can I ask you a question, because

6        you've made these arguments in your papers, which I've read,

7        but aren't we at the beginning, middle, and end with the

8        statute of limitations?

9                MR. HORWITZ:  We believe that we are, yes.

10                THE COURT:  I hear a hint of doubt in your voice

11        and I want to know what it is, if anything, about the

12        statute of limitations defense either flat out or even post-

13        discovery that gives you any pause about it taking care of

14        this claim without even getting to Rule 9(b), failure to

15        plead, anything else.  Is there anything that gives you

16        pause about the completeness of the statute of limitations

17        defense?

18                MR. HORWITZ:  We believe we've anticipated, or

19        identified, all the statutory or legal predicates that the

20        liquidator could have to assert a -- to try to assert a

21        fraud claim, and based on what we've identified, we believe

22        the statute of limitations, under whatever statute this

23        claim's based on, has lapsed.

24                THE COURT:  Is dispositive?

25                MR. HORWITZ:  Yes.

Page 10

```
 1              THE COURT:  Okay.  All right, why don't I hear

 2     from counsel for the liquidator?  Thank you.

 3              We also received yesterday, not yesterday, a few

 4     days ago some correspondence and I suppose that was

 5     ultimately filed on the docket and I -- well, I guess I

 6     could ask you, sir, why don't you come on up?

 7              MR. LACAYO:  Yes, Judge.  Your Honor, Arnoldo

 8     Lacayo on behalf of Mr. Chavez, the liquidator for Banco

 9     Interior de Sao Paulo.

10              Your Honor, that was our correspondence.  I'll

11     take that issue up first.  It was correspondence that we

12     wanted the Court to take notice of in connection with this

13     matter and I can explain why.

14              Your Honor, our matter involves a Brazilian bank

15     that failed and --

16              THE COURT:  I've read all the papers.  I know

17     about the Brazilian bank that failed.  I know about

18     Mr. Ferrera's fraud.  I know about the renting of the bond

19     and the substitution on the books and records.

20              The only fact -- the only allegation, I should say

21     -- is that for a brief moment in time, LBHI controlled a

22     bank account into which $420,000 was allegedly transferred

23     from an AEI bank account.  That's it.  Nothing in this

24     correspondence adds anything to that.  In fact, this

25     correspondence sheds further light on the fact that your
```

Page 11

1    client has not even made a claim out against LBIE or LBI,

2    and LBHI is even further removed.

3            Your response to the debtor's objection appears to

4    believe that once you make an allegation such as you have

5    that the existence of that fleeting bank account that

6    somehow you win if LBHI cannot come forward with contrary

7    evidence.  That's the position you've taken in favor and

8    that's not the way it works.

9            MR. LACAYO:  Your Honor, if I may?

10           THE COURT:  Sure.

11           MR. LACAYO:  My client did file a claim against

12   LBIE in London.  The correspondence that we gave Your Honor

13   has to do with that.  And the reason that we put that in

14   front of the Court, Your Honor, is that the administrator in

15   the UK rejected the claim in London, rejected it on the

16   basis that my client could not substantiate that claim while

17   denying our right to obtain information that they had cited

18   in a letter that is included in this packet.

19           Our position, Judge, is that we have two

20   bankruptcy proceedings, if you will, where we've needed

21   evidence and in both, that evidence has been denied.  And

22   we're presented with a situation, we think, where the client

23   is being shut out because it can't get the evidence that it

24   needs to substantiate some of its claims.

25           THE COURT:  LBHI looked for documents.

Page 12

1            MR. LACAYO:  Yes, Your Honor, that is --

2            THE COURT:  They came up empty handed, number one.

3    Number two, you didn't think to ask until after the period

4    of limitations had run.  This fraud was discovered and

5    occurred in 2000 and 2001.

6            MR. LACAYO:  Your Honor, my client was appointed

7    in July of 2008, not in 2000 or 2001.

8            THE COURT:  That does not matter.  When your

9    client was appointed has nothing to do with when this might

10   have -- what if your client -- what if it hadn't -- he

11   hadn't been appointed until next year?

12           MR. LACAYO:  There's a discovery rule, Your Honor,

13   that Lehman identifies and acknowledges in their papers.  My

14   client comes in, appointed by the Court in Brazil in July of

15   2008, files his claim a year later in 2009, and begins a

16   process of trying to investigate the matter with Lehman,

17   consensually, Your Honor, because my client runs in --

18           THE COURT:  No, no, no.  You're way ahead in the

19   timeframe.  Mr. Ferrera did what he did in 2001.  The bank

20   went into insolvency proceedings, right?

21           MR. LACAYO:  Your Honor, the bank failed --

22           THE COURT:  The bank failed?

23           MR. LACAYO:  -- in 2001, yes.

24           THE COURT:  Okay.  At that point, it was

25   reasonably knowable that something -- some other bad things

Page 13

```
1    might have happened in connection with the fraud.  It can't

2    be that the discovery rule operates to keep open a statutory

3    limitations period simply because nobody decides to appoint

4    a liquidator.  At that point, if there was to be a cause of

5    action, the facts were discoverable.  The facts were

6    discoverable, number one.

7              Number two, LBHI has made a diligent search and

8    has come up with nothing.  And your client filed a

9    miscellaneous proceeding in which it subpoenaed Grant,

10   Hermann, Schwartz & Klinger.  Are you familiar with that?

11             MR. LACAYO:  Not in this matter, Your Honor.  I

12   don't -- I'm not familiar with that.

13             THE COURT:  Are you familiar with that?  Are you

14   familiar with the fact that there was a subpoena issued to

15   the foreign -- on behalf of the foreign representative to

16   obtain documents from the New York law firm that allegedly

17   provided services to the Ferrera family in connection with

18   the fraud perpetrated against Banco Santos, are you familiar

19   with that?

20             MR. LACAYO:  Your Honor, that's Banco Santos.

21   It's a different matter, different liquidator, has nothing

22   to do with Banco Interior.

23             THE COURT:  Okay.

24             MR. LACAYO:  Nothing at all.  That's a Chapter 15

25   matter pending in the Southern District of Florida.
```

Page 14

1            THE COURT:  I understand that.  Let us assume that

2      there are no documents.

3            MR. LACAYO:  The answer we had, Your Honor, from

4      Lehman was that there were no documents that were readily

5      accessible, that there were electronic sources that could

6      be --

7            THE COURT:  You have access to your clients'

8      documents.

9            MR. LACAYO:  Yes, Your Honor.

10           THE COURT:  Not your client, to the Ferrera

11      documents.

12           MR. LACAYO:  To the Banco Interior documents --

13           THE COURT:  Right --

14           MR. LACAYO:  -- yes, Your Honor.

15           THE COURT:  -- do you have anything?

16           MR. LACAYO:  Your Honor, what we had, because this

17      involved a pretty significant fraud on the bank.

18           THE COURT:  Right.

19           MR. LACAYO:  What we had was appended to our

20      claim.  In November of 2011, we gave Lehman an amended claim

21      form that changed the name of the entity from LBI to LBHI

22      because LBHI had confirmed for us in July of 2011 --

23           THE COURT:  You are not answering my questions.

24           MR. LACAYO:  Yes, Your Honor.  Sorry.

25           THE COURT:  We all can agree that LBHI had control

Page 15

1    of that bank account for a short period of time, and the one

2    transaction that occurred in connection with that bank

3    account was subsequently cancelled.  There is -- it's in the

4    documents you sent me.

5              MR. LACAYO:  Your Honor, what we know is that LBHI

6    owned the bank account, that it received $420,000 that were

7    related to the scheme that we've alleged.  We don't know

8    what happens to that $420,000 once it goes into that

9    account.

10             THE COURT:  But you have alleged nothing

11   indicating any knowledge, any nexus of LBHI to the acts

12   leading up in connection with the fraud.  You have no

13   documents.  LBHI has no documents.

14             MR. LACAYO:  If I may, Your Honor, what LBHI said

15   is we may have documents, but it's going to cost $100,000 to

16   get them.  What we did at that point in representing the

17   liquidator for an estate with very limited resources, Your

18   Honor, is that we focused on London, because the London

19   administrator was saying we may have some documents for you.

20   Ultimately, they began to give us documents last month.

21   That's what this correspondence is about.

22             THE COURT:  But nothing in this correspondence

23   sheds any light on LBHI's connection to --

24             MR. LACAYO:  Except for, Your Honor --

25             THE COURT:  -- the fraud.

Page 16

```
 1              MR. LACAYO:  Except for the fact that LBIE also

 2    confirms that LBHI owned the Bank of America bank account --

 3              THE COURT:  Okay, let's -- we will stipulate that

 4    LBHI owned that bank account.  What is your allegation that

 5    that fact constitutes a fraud claim against LBHI?

 6              MR. LACAYO:  Your Honor --

 7              THE COURT:  There is none.

 8              MR. LACAYO:  -- two parts to that answer.  The

 9    first is that we had five claims.  We had fraud.  We had

10    aiding and abetting.  We had conspiracy.

11              THE COURT:  No, you're --

12              MR. LACAYO:  Breach of a fiduciary duty.

13              THE COURT:  I'm going to really try to be very

14    patient, okay?  This is what your claim says.  Now, LBHI

15    owned a bank account into which $420,000 was deposited by a

16    third party entity that's related to the Ferrera fraud.

17    And, therefore, LBHI aided and abetted, committed a fraud,

18    conspired, et cetera.  That's what your pleading says.

19              MR. LACAYO:  We also say --

20              THE COURT:  It does not say that some person did X

21    act.  It says nothing.  It's as if your pleading says that

22    Mr. Fold (ph) conspired to perpetrate this fraud and there

23    is no evidence of that whatsoever, none.  There is no

24    evidence of that.  Moreover, you haven't alleged any act.

25    You haven't alleged a relationship, a person, a department,
```

Page 17

```
 1    a path -- you've alleged nothing other than the fact that
 2    you happen to have found a $420,000 bank account which
 3    you're seeking to parlay into a $14 million claim.  And
 4    because you've hit a brick wall with LBIE, somehow you're
 5    now telling me that that should make me more amenable to
 6    hearing the claim against LBHI.  You have not gotten out of
 7    the starting gate.
 8              MR. LACAYO:  Your Honor, if I may briefly, the
 9    $420,000 we allege in our claim is the first payment in a
10    series of payments that were expected as part of this
11    fraudulent process.  LBHI admits that it received it into
12    its account.
13              THE COURT:  Yes, but you have no allegation that
14    LBHI received the payment as part of the scheme because
15    you've got no basis to allege that.  All you have is a
16    statement that the money was deposited into that account.
17              MR. LACAYO:  We do say, Your Honor, that it was
18    received as part of the scheme in our claim.  We do.  And
19    what we're saying is that this -- now, it's admitted by
20    LBHI.  It's admitted by -- that it's owned -- the account is
21    owned by LBHI.
22              THE COURT:  So what?  I just do not understand.
23    So if there were a deposit into a bank account owned by
24    General Electric, were they part of the scheme?  I mean, I
25    don't -- you're connecting these dots just because you can,
```

Page 18

1   just because we're here in this proceeding.  There is no

2   allegation.  There's no theory.  There's just, look, LBHI

3   owned this account.  Here was a fraud.  There's a

4   connection.  There is nothing --

5           MR. LACAYO:  Your Honor, what LBHI asked us --

6           THE COURT:  If we were to go to trial tomorrow,

7   what would your proof be?

8           MR. LACAYO:  I would ask Your Honor to allow me to

9   conduct discovery, Your Honor.

10          THE COURT:  They've already looked in their files

11  for the time period.

12          MR. LACAYO:  Your Honor, no.  It's for the -- the

13  time from --

14          THE COURT:  Then your client should offer to pay

15  the expense.

16          MR. LACAYO:  Your Honor, we did and the answer was

17  it's going to cost tens of thousands of dollars.

18          THE COURT:  Then whatever the expense is, your

19  client should pay for it.

20          MR. LACAYO:  So what we said to them was, we have

21  limited resources.  We're going to look to see if we can get

22  some of this in London, and here we are, Your Honor.  We're

23  starting to get the stuff in London now.  Okay?  It's just

24  -- it's the reality of where we are, Your Honor.  We were

25  trying to conserve resources for the creditors of our

Page 19

```
 1   estate.

 2            THE COURT:  And they're trying to conserve

 3   resources for the creditors of their estate.

 4            MR. LACAYO:  But we haven't asked them to do

 5   anything, Your Honor.

 6            THE COURT:  You've got a 14 year old claim that

 7   nobody did anything about for years, and years, and years.

 8            MR. LACAYO:  Your Honor, it's a five year old

 9   claim and --

10            THE COURT:  This was a massive fraud that the

11   Ferrera's --

12            MR. LACAYO:  Yes.

13            THE COURT:  -- conducted, a massive fraud.

14            MR. LACAYO:  That's right.

15            THE COURT:  So beginning in 2001, on behalf of the

16   bank, somebody had authority to look into it.  Somebody did

17   and they didn't.  So then when a liquidator comes on to the

18   scene and decides that he, then, is going to look into it, I

19   don't understand why that magically extends the statute of

20   limitations.  The time has come and gone.

21            MR. LACAYO:  The question there, Your Honor, is

22   the reasonableness of the liquidator's efforts to discover

23   the claim.  We think we were reasonable.

24            THE COURT:  No, you're -- you are continuing to

25   ignore my point.  At 2001, the fraud was known.  That's when
```

Page 20

1    the discovery rule kicks in.

2              MR. LACAYO:  Your Honor, the bank failed in 2001.

3    It failed because it lacked money, not because someone knew

4    that there was a fraud.  It took years to get a liquidator

5    appointed.

6              THE COURT:  When was the fraud discovered?

7              MR. LACAYO:  Your Honor, we think that in 2008

8    when our client was appointed, he began to look into the

9    bank documentation down in Brazil.  He began to write

10   correspondence to LBI at that point, concede --

11             THE COURT:  You're not answering my question.  I'm

12   not interested when the liquidator was appointed.  I'm

13   interested in when the fraud was discovered.

14             MR. LACAYO:  Your Honor, it could not have

15   happened before the liquidator was appointed.

16             THE COURT:  When did the bank fail?

17             MR. LACAYO:  2001, Your Honor.

18             THE COURT:  So, it took seven years?

19             MR. LACAYO:  Your Honor, I don't know what to tell

20   you about the Brazilian legal system.  It is -- it works the

21   way it works.  The liquidator was appointed in 2008.  He

22   comes onto the scene and begins to look at the things that

23   he's been charged with looking at as liquidator.

24             THE COURT:  You've made no allegation that any

25   employees at LBHI knew anything about this, none.

Page 21

1          MR. LACAYO:  LBHI asked that question, Your Honor,

2     at one point and we gave LBHI a list of names of people that

3     we thought might be knowledgeable or may have received an e-

4     mail.  The answer was, we looked.  You're forcing us to go

5     back into our backup tapes.  This is going to cost $100,000.

6     We said we don't have $100,000 to spend right now on this

7     discovery issue.  We're going to go try to get this in

8     London.

9          We served two requests for productions, Your

10    Honor, both of them the answer was no.  It was voluntary, I

11    will grant that.  They did look.  They did confirm that the

12    bank account was owned by Lehman Holdings, but nothing else

13    happened, Your Honor.

14          We have not put the estate through any expense.

15    What they've wanted to do throughout is force us to come to

16    the Court on this day while we're getting press here and in

17    London without documentation.  And the same thing is

18    happening in London, Your Honor.  We're fighting hard to get

19    that, but they've rejected our claim saying the same thing.

20    You can't substantiate your claim.  And we're saying, of

21    course we can't.  You have the documentation.  And they have

22    the documentation.  It's very expensive to get at

23    apparently, but they have it.  We don't have it.  So we're

24    trying to get at that.  What we have is --

25          THE COURT:  Well, what's your suggested solution?

Page 22

1           MR. LACAYO:  Your Honor, I would ask that the

2    Court give us 90 days to try to wrap up what we're doing in

3    London.  If we can't, then our claim goes away, Your Honor.

4           THE COURT:  That's fine.

5           MR. HORWITZ:  Your Honor, this is Maurice Horwitz.

6    That's -- we can wait 90 days to see if -- I mean, we'll

7    have to agree on this and submit an order or something, or a

8    stipulation, but --

9           THE COURT:  I mean, there are limits to how much

10   ought to be spent to try to establish a claim that on its

11   face appears to be tenuous.  If, in fact, you discover

12   documents that you obtain from LBIE because in the first

13   instance the allegations in the main involve LBI and LBIE,

14   not LBHI.  LBHI just happens to be in the family, so to

15   speak.  So in the unlikely event that you find something

16   that actually specifically implicates LBHI, certainly

17   fairness would dictate that that be considered.  But if

18   after all this time, there's nothing, then the claim needs

19   to be dismissed.

20           So, why don't you two work together to draft an

21   appropriate order and you can make it self-executing so that

22   you need not come back before the Court.

23           MR. LACAYO:  Thank you, Your Honor.

24           THE COURT:  All right?

25           MR. LACAYO:  I appreciate it.

Page 23

1              THE COURT:  Thank you.

2              MR. HORWITZ:  Thank you, Your Honor.

3              THE COURT:  How are you, Mr. Miller?

4              MR. MILLER:  Good afternoon, Your Honor.

5              THE COURT:  It's getting to be a weekly visit.

6              MR. MILLER:  I'm grateful for that, Your Honor.

7    I'm Ralph Miller from Lehman Brother Holdings, Inc., LBHI.

8              I have the next four agenda items, Your Honor.

9              THE COURT:  Right, so let me walk through them

10   with you to make sure that we're on the same page.  So, I

11   have Dorothea Douglas?

12             MR. MILLER:  Yes, Your Honor.

13             THE COURT:  Yes.  Karen Simon Krieger.

14             MR. MILLER:  Yes, Your Honor.

15             THE COURT:  Rose Seraydar.

16             MR. MILLER:  Yes, Your Honor.

17             THE COURT:  Winsome McDonald.

18             MR. MILLER:  Yes, Your Honor.

19             THE COURT:  And on the 341st, Ms. Baricevic,

20   Mr. Blum, and Mr. Kenney.

21             MR. MILLER:  I believe Ms. Nikki Marshall is in

22   there, Your Honor, on item 5.

23             THE COURT:  I have -- let's see, I see.  Okay.

24   Right.  Got it.

25             MR. MILLER:  So, there --

Page 24

1          THE COURT:  So, all of those?

2          MR. MILLER:  It's four objections, but there are

3     actually five --

4          THE COURT:  Yes.

5          MR. MILLER:  -- five claims, Your Honor --

6          THE COURT:  Right.

7          MR. MILLER:  -- in those because one of them's a

8     double.

9          THE COURT:  Okay.  So, and let me ask if any or

10    all of those claimants are here in the courtroom.  Yes, sir.

11         MR. SCHAGER:  Karen Krieger is here by her

12    counsel, Richard Schager, Your Honor.

13         THE COURT:  Okay, thank you.  Is -- are any of the

14    other individuals here?  Ms. Douglas?  Ms. Seraydar?

15    Mr. McDonald?  Ms. Baricevic?  Mr. Blum?  Mr. Kenney?  Or

16    Ms. Marshall?

17         Okay.  They're not on the phone, let the record

18    reflect that it's 2:30 and none of the aforementioned

19    claimants are present.  So, go ahead, Mr. Miller.

20         MR. MILLER:  Thank you, Your Honor.

21         These are contested claims but the plan

22    administrator believes the Court should resolve all of these

23    summarily on the basis of admissions in the record, or the

24    claims themselves, or matters of which the Court can take

25    judicial notice.

Page 25

1            I want to be clear before we begin that at least

2    two of these claimants have RSU claims, but the objections

3    before the Court today do not deal with the --

4            THE COURT:  Right.

5            MR. MILLER:  -- RSU portions of their claims and

6    proposed orders have been tailored to carve out --

7            THE COURT:  Okay.

8            MR. MILLER:  -- any of the RSU claims.

9            THE COURT:  These claims -- I did note that these

10   claims today relate to stock.

11           MR. MILLER:  Yes, or some other --

12           THE COURT:  Or some other rights.

13           MR. MILLER:  -- odds and ends.

14           THE COURT:  Right.

15           MR. MILLER:  But they're primarily stock claims,

16   Your Honor.  Agenda item 2 from the 178th omnibus objection,

17   as the Court noted as claim number 15265 of Dorothea

18   Douglas, we understand she is represented by counsel and we

19   thought he might be here, but we don't see him.  Paragraph 8

20   of the response is the (indiscernible - 00:28:36) to the

21   basis for the claim for $39,581.46 that Ms. Douglas asserts.

22   She says she lost value in her 401(k) savings plan due to

23   the decrease in value of the Lehman Brothers stock.

24           As demonstrated, she says on her attachment.  The

25   attachment is a page from a Lehman Brothers Savings Plan

Page 26

1    statement that shows -- 18,011 and some fractions of Lehman

2    Brothers' stock.  It also lists two mutual funds that seem

3    to have lost value.  There's no explanation in the claim

4    itself or the response of any legal theory for why LBHI

5    should be responsible for loss in value of either the mutual

6    funds or its own common stock.  She does make some reference

7    to breach of fiduciary duties, but she doesn't who owed

8    those duties, or to whom, or how they were breached, or how

9    they caused her damage.

10            There is a reference to services performed alone

11   in handwriting, but other than the fact that she apparently

12   repaid $7,474.32 of a loan from her savings plan, we can't

13   make any sense out of that.  So, in essence, with regard to

14   the $39,581, we think there is no legal theory of recovery

15   that's been asserted.

16            To the extent that there is an unliquidated amount

17   of claim relating to this loss of value in her stock, as the

18   Court is well aware, Section 510(b) requires the

19   subordination of claims for damages arising from the

20   purchase of stock of the debtor, so her loss of value claim

21   is right in the core of the statute.

22            So what we've proposed, Your Honor, is that there

23   would be a disallowance of the stated claim amount but there

24   would be a reclassification of an unspecific and

25   unliquidated amount of claim related to her stock ownership

Page 27

1    as an equity interest.

2              THE COURT:  All right, I agree with that,

3    Mr. Miller.  I just want to say, and this is applicable,

4    well, to all the claims that are on the agenda today or are

5    related to stock, and loss in value of stock, and in a sense

6    are related also to the claims dealing with the medical

7    benefits.  I think it's worth noting that to the extent that

8    these claimants feel that there's an unfairness involved in

9    this case and have expressed their feelings about that

10   unfairness in their letters to the Court and in their

11   pleadings, that -- obviously that gets taken to heart by me,

12   and it undoubtedly was taken to heart by Judge Peck before

13   me.

14              My job is to follow the law and whenever possible,

15   do justice at the same time.  It's a particularly good day

16   when you get to do both.  In a lot of cases, large cases,

17   where stockholders don't receive a distribution, there's

18   been a crime.  In Adelphia communications, the Regas (ph)

19   family members went to jail and the government created a

20   victims' fund.  And individuals who held stock were able to

21   make claims against that victims' fund.

22              In the Lehman Brothers' cases, there is no

23   victims' fund and there were no criminal prosecutions.  That

24   leaves me with administering the estate, and the

25   distribution of such funds as there are in accordance with

Page 28

1    the Bankruptcy Code and in accordance with SIPA.

2           Therefore, even though I might think in a

3    particular case somebody has a particularly compelling story

4    and I'd really like to help them, that wouldn't be a good

5    thing for me to do because there are lots of people who have

6    compelling stories that it would be impossible and wrong for

7    me to try to choose among them.  And apart from the fact

8    that these folks have lost a lot of their savings and feel

9    that they were cheated and deprived, they too would not want

10   a system in which a judge picks and chooses according to

11   whatever he or she thinks is the most worthy candidate,

12   which is not to say that every once in a while, when there's

13   a particularly compelling story, we all don't find a way to

14   make something happen.

15          But it struck me in reading this group of

16   objections that there's a common theme and the common theme

17   is that it's just not fair.  I worked really hard and people

18   profited by my hard work and now I've lost my stock, I've

19   lost my pension, I've lost my medical care benefits.

20          And across the board, frankly, and you can address

21   each of them for the purposes of making the record, the

22   debtors' position is correct.  The law requires that the

23   stock claims that -- be allowed, and stock claims and not

24   converted them to cash, and the law requires that claims

25   related to those stock claims be subordinated pursuant to

1   510(b).

2            But I just, for the benefit of the claimants who

3   I'm surprised aren't here today, I just wanted to make

4   mention of kind of the broader framework under which we're

5   operating on these claims and in this case.  So, thank you

6   for your patience and listening.

7            MR. MILLER:  Your Honor, I'm sure that the

8   claimants will appreciate that explanation as I think we

9   have said a number of times in Court, the plan administrator

10  is not in the business of trying to resist claims.  We want

11  to pay claims that are validly supported, and that's part of

12  our duty, and we share with the Court the desire to try to

13  sort out those claims that have legal support and the Court

14  system requires to be paid from those claims that despite

15  opportunities, and all of the claimants we did leave

16  messages for, or speak with, those claims that we just, at

17  this point, don't believe there's any basis for a recovery

18  from this estate.  In some of these instances, Your Honor,

19  as you'll note, they're really going to the wrong place.

20            THE COURT:  Yes.

21            MR. MILLER:  And we want to make that clear on the

22  record, and we invite people to go to the right place.

23            THE COURT:  Okay, so why don't I let you continue?

24            MR. MILLER:  All right, well just to make a

25  record, Your Honor, moving to item number 2, that's two

1   claims from the 185th omnibus objection and I'm told, by the

2   way, that the logic to this is that it (indiscernible -

3   00:35:47) a number of omnibus objections, starting with the

4   lowest number omnibus objection, that's why it moves in this

5   order.

6           So we're up to 185.  That has the claims of

7   Ms. Krieger.

8           THE COURT:  185.

9           MR. MILLER:  185, yes, Your Honor.  185.  That has

10  the claim of Ms. Karen M. Krieger.  And it would be helpful

11  to look at her claims form.  I have an extra copy for the --

12          THE COURT:  I have it.

13          MR. MILLER:  -- may I approach?  All right.

14          THE COURT:  Sure.

15          MR. MILLER:  Your Honor, if you look to the first

16  page --

17          THE COURT:  Right.

18          MR. MILLER:  -- there's a little table --

19          THE COURT:  Yes.

20          MR. MILLER:  -- in the lower right-hand corner of

21  that, and then the response explains that table.  It says

22  "my claim consists of $164,319.52 in Lehman Brothers

23  restricted stock units, $45,320.36 in Lehman Brothers common

24  stock, and $15,756.67 in 401(k) investment in Lehman

25  Brothers common stock."  We are only dealing with the second

Page 31

1    two components --

2              THE COURT:  Right.

3              MR. MILLER:  -- the 45,000 and the 15,000 and

4    those, because they arise from Lehman Brothers common stock,

5    they are either equity interest under the plan to begin

6    with, as common stock is, or they would be subject to

7    reclassification as equity interest under 510(b), and that

8    is the relief sought, which is the reclassification of those

9    two components of the claim as equity interest under the

10   plan, the total to be reclassified as shown on the proposed

11   order is $61,077.03 and of course, the $164,000 RSU claim is

12   preserved.

13             THE COURT:  All right.

14             MR. MILLER:  And, Your Honor, I assume Mr. Schager

15   wants to say something.

16             MR. SCHAGER:  Hi.

17             THE COURT:  How are you?

18             MR. SCHAGER:  Good afternoon, Your Honor, Richard

19   Schager for Karen Krieger, Your Honor.  I can be very brief.

20             Ms. Krieger does not object to the form of the

21   order that has been submitted to the Court.  I did speak

22   with people at the plan administrator's counsel before the

23   hearing and suggested that we have a stipulation, but a

24   stipulation was not forthcoming, but there is no objection

25   to this order as it's proposed.

Page 32

1        THE COURT:  Okay, so I'm sorry.  She filed an

2    objection and now you're saying she's withdrawing her

3    objection?  I mean, it's -- look, the --

4        MR. SCHAGER:  She filed an objection, Your Honor,

5    on a pro se basis before she retained me and part of --

6        THE COURT:  Why didn't you communicate to

7    Mr. Miller that this was done?

8        MR. SCHAGER:  Well, I spoke with the firm, Your

9    Honor.  I didn't speak with Mr. Miller directly about it,

10   but I did speak with the firm.

11       THE COURT:  Okay, let's not spend any more time

12   then.  The claims are classified as equity.

13       MR. SCHAGER:  Thank you.

14       MR. MILLER:  I'm sorry, Your Honor.  I do want to

15   clarify that I was certainly not aware that there was an

16   offer to do this by stipulation.

17       THE COURT:  Okay.

18       MR. MILLER:  We would have done it by stipulation,

19   of course.

20       THE COURT:  Okay, all right.  So, we're up to 200.

21       MR. MILLER:  Yes, Your Honor.  Well, actually I

22   think we are not quite.  I think we have to do Ms., and I

23   think it's pronounced, Seraydar's claim, which I think is in

24   -- I'm sorry, is that in -- no, you're right.  Yes, you're

25   right, Your Honor, we are up to 200, I'm sorry.

Page 33

1          Yes, we have to do next is -- actually, I believe

2     that Ms. Seraydar is the 185th.

3          THE COURT:  Yes, you're right.

4          MR. MILLER:  So that is right and that's only --

5     that's a $3,117.12 claim and annual pension benefits and

6     there's a lot of material in her claim.

7          THE COURT:  Right.

8          MR. MILLER:  She apparently worked with Shearson

9     Lehman years ago and there's been some communications with

10    her.  There's correspondence with lawyers for the SIPA

11    trustee concerning --

12         THE COURT:  Right.

13         MR. MILLER:  -- some stock.  But paragraphs 25 and

14    26 of the 185th omnibus objection explain that the Court can

15    take judicial notice of the pension benefits guaranty fund

16    settlement, which Judge Peck approved on June 3rd, 2009, ECF

17    3751, and under that rather complicated settlement, the

18    benefits fund assumed responsibility to pay pension benefits

19    in accordance with ERISA.

20         Under the plan and termination of the pension

21    plan, which occurred at the end of 2008, LBHI has no direct

22    liability.  So, and with regard to any unliquidated claim

23    for loss stock in an LBI brokerage account, that should be

24    addressed at LBI and she's in contact with LBI.

25         Consequently, we would ask in this order to

Page 34

```
1    disallow both the pension fund claim and any unliquidated

2    claims related to the alleged stock because those claims

3    would be the responsibility of LBI.

4            THE COURT:  All right.  I agree.  I'll enter that

5    order.

6            MR. MILLER:  Thank you, Your Honor.  Now, I think

7    we made it to 200.

8            THE COURT:  Right.

9            MR. MILLER:  Item 4 is claim number 7163 from

10   Winsome McDonald for $894.92 based on her Neuberger Berman

11   brokerage account.  She has a three line response that says

12   she opposes it and she says these funds were held in cash

13   and should be covered under SIPA.  Actually, Your Honor, the

14   Neuberger Berman accounts were all transferred to the entity

15   Neuberger Berman and there was a sale of the LBHI investment

16   management division pursuant to an order that was approved

17   by Judge Peck.  I have copies of the order and copies of the

18   agreement, paragraphs 45 and 46 of that agreement, which the

19   Court can take notice of show that those accounts were to be

20   transferred.  We suspect, by the way, that if she would go

21   to Neuberger Berman, they ought to have her money.

22           THE COURT:  Well, that's why it was unfortunate

23   that she didn't appear here today because that's exactly

24   what I was going to tell her to do.  So I'm going to guess

25   that after this order gets entered expunging her claim,
```

Page 35

1    someone at your firm is probably going to get a phone call

2    alarmed, and perhaps that person could tell her that she

3    might want to call the Neuberger Berman firm --

4                MR. MILLER:  Well, and we've been in touch with

5    her, but I don't know whether it's been explained to her or

6    not yet, but we'll certainly try to, Your Honor.

7                THE COURT:  Okay, so the motion is granted and the

8    claim is disallowed and expunged.

9                MR. MILLER:  Thank you, Your Honor.  Item number 5

10   is actually the easiest in many respects.  It's a claim from

11   Nikki Marshall for $77,286.68, which she says were taxes she

12   paid on receipt of about $202,000 worth of LBHI common stock

13   between 2001 and 2008.  The relief sought is to reclassify

14   this entire claim under Section 510(b) as damages arising

15   from the purchase of stock of the debtor and that is the

16   order we have submitted, Your Honor.

17               THE COURT:  Okay, that's granted.

18               MR. MILLER:  That's it, for me.  Thank you for

19   your time, Your Honor.

20               May I be excused, Your Honor?

21               THE COURT:  Yes.

22               MR. MILLER:  Thank you.

23               MR. BAER:  Good afternoon, Your Honor.  Lawrence

24   Baer, Weil Gotshal & Manges on behalf of LBHI.

25               I'm here this afternoon on agenda item number 6,

Page 36

1    which is the 341st omnibus objection.  And specifically, I'm

2    here with respect to the objection to the claims of Joanna

3    Baricevic, claim number 13425; G. Kevin Blum, claim number

4    27323; and Arthur J. Kenney, claim number 27321.

5            Each of the claimants, Your Honor, seek the value

6    of lifetime retiree medical benefits that were provided by

7    the debtors.  However, as we note in our papers, the summary

8    plan description attached as Exhibit B to our motion

9    provides an express reservation of rights to terminate or

10   modify those benefits at any time without notice.  And,

11   indeed, that is what happened, Your Honor, in this case.

12   Pardon me, and those benefits were terminated.

13           The claimants cite to a rule of 75 under the terms

14   of our plan, which is simply an eligibility rule.  That rule

15   provided that if age and service equaled 75, or certain

16   minimum threshold requirements, one was eligible to receive

17   the benefits, but nevertheless what the terms of the plan

18   applied.

19           Claimants further cite to a Bankruptcy Court case

20   in the Western District of Missouri that held that Section

21   1114 of the Bankruptcy Code trumped the express reservation

22   of rights in a plan at issue in that case.  That case was

23   decided in the Bankruptcy Court in Missouri in 2003.

24   Subsequent to that decision, decisions of this Court by

25   Judge Drain in Delphi and Judge Gerber in General Motors,

Page 37

1    both in 2009, rejected the conclusions reached in the

2    Farmland case and held that the reservation of rights that

3    existed pre-petition did not vanish by virtue of the

4    Bankruptcy Court -- Bankruptcy petition and remained in

5    effect.  Thus, the right to terminate benefits before the

6    petition remained during the pendency of the case.

7           And accordingly, LBHI acted within its rights in

8    determining those benefits.  We respectfully urge that the

9    claims be disallowed and expunged.

10          THE COURT:  All right, well, I agree with your

11   recitation with respect to the law.  The law in this

12   district as articulated by both Judge Drain and by

13   Judge Gerber provides that notwithstanding the bankruptcy,

14   the contractual right to modify/terminate the benefit plan

15   continues to exist and Section 1114 is inapplicable.  The

16   motion will be granted with respect to these claims.

17          MR. BAER:  Thank you very much, Your Honor.

18          THE COURT:  All right, thank you.

19          All right, have we covered everybody?  We have.

20   Okay.  So I don't know, do we already have orders?

21          UNIDENTIFIED SPEAKER:  (Indiscernible - 00:46:45).

22          THE COURT:  You have them with you?

23          MS. DEL NIDO:  Your Honor, we'll -- we will submit

24   the orders.

25          THE COURT:  Okay.  All right, okay.  Anything else

Page 38

1    anyone?   Okay.   Thank you all for coming down today.

2         (Whereupon these proceedings were concluded at 2:49 PM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 39

1                        I N D E X

2

3                        RULINGS

4                                              Page        Line

5    Debtors' One Hundred Eleventh Omnibus        22          9

6    Objection to Claims

7

8    Debtors' One Hundred Seventy-Eighth          27          2

9    Omnibus Objection to Claims

10

11   Debtors' One Hundred Eighty-Fifth            32         12

12   Omnibus Objection to Claims (Krieger)

13

14   Debtors' One Hundred Eighty-Fifth            34          4

15   Omnibus Objection to Claims (Serayder)

16

17   Debtors' Two Hundredth Omnibus Objection     35          7

18   to Claims

19

20   Three hundred Forty-Second Omnibus Objection 35         17

21   to Claims

22

23   Three Hundred Forty-first Omnibus            37         16

24   Objection to Claims

25

Page 40

1                    C E R T I F I C A T I O N

2

3    I, Jamie Gallagher, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6

7    Jamie

8    Gallagher
Digitally signed by Jamie
Gallagher
DN: cn=Jamie Gallagher, o, ou,
email=digital1@veritext.com,
c=US
Date: 2014.07.09 10:12:21 -04'00'

9

10

     Veritext

11

     330 Old Country Road

12

     Suite 300

13

     Mineola, NY 11501

14

15

     Date:  July 2, 2014

16

17

18

19

20

21

22

23

24

25