**Hearing Date and Time: July 16, 2014 at 10:00 a.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

**REPLY TO RESPONSE OF CONWAY HOSPITAL, INC.**
**TO LEHMAN BROTHERS HOLDINGS INC.'S THREE HUNDRED**
**TWENTY THIRD OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)**

**Hearing Date and Time: July 16, 2014 at 10:00 a.m. (Eastern Time)**

# TABLE OF CONTENTS

**Page**

Preliminary Statement....................1

Background....................2

Conway Hospital Cannot Undo
Its Own Election To Terminate The Forward Purchase Agreement....................5

Conway's Claim Is A "Prepetition Claim" Subject To The Bar Date Order....................8

Conway Received Notice of The Bar Date....................11

The Termination Notice Does Not
Satisfy The Requirements Of An Informal Proof of Claim....................11

Reservation of Rights....................13

Conclusion....................13

i

US_ACTIVE:\44504157\4\58399.0011

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Pool Equip. Corp. v. Lee*,
419 F.2d 556 (2d Cir. 1969)....5

*In re Drexel Burnham Lambert Group Inc.*,
129 B.R. 22 (Bankr. S.D.N.Y. 1991)....11

*ESPN Inc. v. Office of The Comm'r of Baseball*,
76 F.Supp.2d 383 (S.D.N.Y. 1999)....7

*In re Gibraltar Amusements Ltd.*,
315 F.2d 210 (2d Cir. 1963)....12

*In re Houbigant, Inc.*,
190 B.R. 185 (Bankr. S.D.N.Y. 1995)....11

*J.B. Orcutt Co. v. Green*,
204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390 (1907)....12

*In re Lehman Brothers Holdings Inc.*,
433 B.R. 113 (Bankr. S.D.N.Y. 2010)....11

*Levine v. First Nat'l Bank of Lincolnwood (In re Evanston Motor Co., Inc.)*,
26 B.R. 998 (N.D. Il. 1983)....12

*In re National Gypsum Co.*
208 F.3d 498 (5th Cir. 2000)....9

*N.L.R.B. v. Bildisco & Bildisco*
465 U.S. 513 (1984)....9

*In re Nutri*Bevco, Inc.*,
117 B.R. 771 (Bankr. S.D.N.Y. 1990)....11

*Southmark Corp. v. Marley*
62 F.3d 104 (5th Cir. 1995)....9

*Strasbourger v. Leerburger*,
134 N.E. 834 (N.Y. 1922)....6

**Statutes**

11 U.S.C. § 101 (5) ....................4, 10, 11

11 U.S.C. § 101(53B)(A)(i)(I) ....................10

11 U.S.C. § 101(53B)(A)(ii) ....................10

11 U.S.C. §101(53B) ....................4, 10

11 U.S.C. § 502(b)(9) ....................9

11 U.S.C. §502(g)(2) ....................9

11 U.S.C. §560 ....................6

11 U.S.C. §561 ....................6

11 U.S.C. §562(a) ....................8, 9

**Other Authorities**

Rule 1015(b) of the Fed. R. of Bankr. P. ....................3

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 22737] (the "Plan")[1] for the entities in the above referenced chapter 11 cases (the "Debtors"), files this reply in further support of the Three Hundred Twenty Third Omnibus Objection to Claims (Late-Filed Claims), filed on July 9, 2012 [ECF No. 29295] (the "Objection"), and respectfully represents:[2]

**Preliminary Statement**

1. In November of 2008, Conway Hospital, Inc. ("Conway") elected to exercise its safe-harbored contractual right to terminate its forward purchase agreement with LBSF (the "Forward Purchase Agreement") because of the commencement of LBSF's chapter 11 case in October. As of that date, the Debtors had received termination notices for more than 730,000 of their derivatives contracts and in respect of more than a million transactions. Like thousands of other counterparties, each electing to terminate its contract with LBSF, Conway became entitled to assert a prepetition claim against LBSF for damages, if any, measured as of the termination date. By September 22, 2009 – the bar date for prepetition claims in these cases – many thousands of proofs of claim had been filed in respect of the Debtors' terminated derivatives contracts, including numerous forward purchase agreements like Conway's Forward Purchase Agreement. Conway failed to file its proof of claim by the bar date.

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[2] This Reply only addresses the Late-Filed Claim (defined below). The Plan Administrator reserves its right to file reply briefs responding to all other responses received in opposition to the Objection.

2. More than two and a half years later, Conway filed a claim against LBSF. In response to an objection to the lateness of the claim, Conway attempts to challenge the validity of *its own* termination – a preposterous argument that, if accepted, would render the Forward Purchase Agreement executory, and therefore rejected, on the effective date of the Plan. Through self-sabotage, Conway now attempts to win an option to choose a new bar date and a new valuation date, which would allegedly multiply its damages claim against LBSF. The result would be grossly inequitable, and this Court should reject it.

3. In the alternative, Conway argues that the bar date order in these cases somehow does not apply to claims arising from terminated securities contracts. This argument fails to account for the fact that the bar date order very clearly and plainly applies to *all* prepetition claims – a broad category that includes claims arising from terminated contracts of any kind.

4. Finally, Conway argues that its termination notice – the same notice it has argued was invalid – should be treated as an informal proof of claim. But the letter does not meet the relevant standard in the Second Circuit for such relief, because it was not filed with this Court and did not become part of the judicial record. Moreover, Conway does not even attempt to explain how a termination notice asserting one amount ($751,006.18) can be informal proof of claim for a different, significantly higher amount ($1,290,795.04).

5. For these reasons, Conway has failed to provide any basis to overcome the Plan Administrator's Objection. Conway's prepetition claim was filed years after the bar date in these cases and should therefore be expunged with prejudice.

## **Background**

6. On June 8, 1998, Conway and LBSF entered in the Forward Purchase Agreement. The Forward Purchase Agreement was a forward agreement intended to provide

Conway with a fixed rate of return on the amounts held in an account. On each semiannual delivery date, the trustee for Conway's bonds would deliver the cash in that account to LBSF and LBSF would cause certain debt securities yielding an interest rate of 5.855% to be delivered to the trustee. On or before each delivery date from July 1998 through July 2008, the trustee delivered the required cash and LBSF delivered the required debt securities.

7. On September 15, 2008 and periodically thereafter, the Debtors commenced with this Court voluntary cases under the Bankruptcy Code (the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. LBSF commenced its Chapter 11 Case on October 3, 2008.

8. On November 21, 2008, 48 days after the commencement of LBSF's Chapter 11 Case, Conway sent a notice to LBSF (the "Termination Notice") terminating the Forward Purchase Agreement as of November 18, 2008 (the "Termination Date"). The Termination Notice was sent to 1271 Avenue of the Americas, New York, NY 10020 – an address that LBSF has occupied since at least early 2008, and which has been its headquarters since its petition date – to the attention of Locke McMurray, the lead in-house derivatives lawyer in charge of, among other things, the logging the thousands of termination notices that LBSF was receiving at that time. Like all of these notices, the Termination Notice was logged upon receipt, and the Forward Purchase Agreement was marked as terminated in LBSF's books and records.

9. The termination notice states that Conway is "exercising its right" to terminate the Forward Purchase Agreement because of LBSF's "filing a bankruptcy petition 08-1388 [*sic*] on October 3, 2008," and that Conway "has calculated the amount due" under the Forward Purchase Agreement as $739,006.18 plus $12,000 for costs and expenses. The

Termination Notice was received by LBSF. LBSF has never challenged the validity of Conway's termination of the Forward Purchase Agreement.

10. By order dated July 2, 2009 (the "Bar Date Order"), the Court established, among other things, (a) September 22, 2009 at 5:00 p.m. as the Bar Date "for each person or entity…to file proofs of claim…based on prepetition claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors" and (b) October 22, 2009 at 5:00 p.m. as the deadline for the filing of Guarantee Questionnaires and Derivative Questionnaires (each as defined in the Bar Date Order) against the Debtors in these Chapter 11 Cases. [ECF No. 4271 at 2, 7-8]. Only "each holder of a claim against a Debtor based on amounts owed pursuant to any Derivative Contract" was required to file a Derivative Questionnaire. *Id.* at 7. The Bar Date Order defines the term "Derivative Contract" as "any contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code…." *Id.* at 6. The Bar Date Order stated that any holder of a claim against the Debtors that fails to file a proof of claim in accordance with the Bar Date Order would "forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto) . . . ." *Id.* at 9-10.

11. On July 8, 2009, the Debtors provided actual notice of the deadline to file proofs of claim (the "Bar Date Notice") to, *inter alia*, Conway by first class mail. *See* ECF No. 9395.

12. On December 6, 2011, the Court approved and entered an order confirming the Plan (the "Confirmation Order"). [ECF No. 23023]. The Confirmation Order provides:

> Pursuant to Section 11.4 of the Plan, if the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to Section 11.1 of the Plan results in damages to the other party or parties to such contract or lease, if not evidenced by a previously filed proof of Claim, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors, or any property to be distributed under the Plan, unless a proof of Claim is filed with the Court and served upon the Debtors, on or before the date that is forty-five (45) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order and occurrence of the Effective Date, and (c) notice of an amendment to the Plan Supplement relating to such executory contract or unexpired lease.

(Confirmation Order ¶ 37.)

13. The Plan became effective on March 6, 2012.

14. On April 18, 2012, Conway filed the Late-Filed Claim, asserting a claim against LBSF in the amount of $1,290,795.04 "as of Effective Date."

15. On July 9, 2012, the Plan Administrator filed the Three Hundred Twenty-Third Omnibus Objection to Claims (Late-Filed Claims) [ECF No. 29295] (the "Objection") and requested that this Court expunge certain claims, including the Late-Filed Claim, because they were filed after the applicable bar date in these cases.

16. On August 9, 2012, Conway filed its Response to the Objection [ECF No. 30091]. On June 23, 2014, Conway filed an amended response to the Objection [ECF No. 44912] (the "Amended Response").

**Conway Hospital Cannot Undo**
**Its Own Election To Terminate The Forward Purchase Agreement**

17. By electing to terminate the Forward Purchase Agreement, Conway chose between two remedies: continuing the contract or terminating it. Under the doctrine "election of remedies," Conway is bound by this choice. Under this doctrine, "[w]here a contract is broken in the course of performance, the injured party has a choice … of continuing the contract or of refusing to go on." *See Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969). The

injured party is "required, however, to make an election. He could not at the same time treat the contract as broken and as subsisting. One course of action excludes the other." *See Strasbourger v. Leerburger*, 134 N.E. 834, 835 (N.Y. 1922).

18. Conway now asserts that it waived its termination right. Conway cites to this Court's bench ruling from September 15, 2009 ("Metavante") as its sole authority for attempting to retroactively revoke its election to terminate the Forward Purchase Agreement. But, *Metavante*, in fact, militates against affording Conway this belated optionality. In *Metavante*, the party to a safe-harbored contract with LBSF did not attempt to terminate the contract until a year after the commencement of LBSF's chapter 11 case. The counterparty then asserted that the Bankruptcy Code's safe harbor provisions permitted it to withhold performance and payment. The Court rejected the counterparty's attempt to ride the market.

19. This Court took note of the language of the safe harbor provisions – specifically, sections 560 and 561 of the Bankruptcy Code – which

> protect a non-defaulting swap counterparty's contractual rights solely to liquidate, terminate or accelerate one or more swap agreements because of a condition of the kind specified in Section 365(e)(1)

and held that the safe harbor provisions were inapplicable because the counterparty, *for one year*,

> has attempted neither to liquidate, terminate or accelerate the Agreement, nor to offset or net out is position as a result of the events of default caused by the filing of the bankruptcy petitions by LBHI and LBSF.

Hr'g Tr. 108:23 – 109:11. This Court held that the non-debtor counterparty's

> conduct of riding the market for the period of one year, while taking no action whatsoever, is simply unacceptable and contrary to the spirit of these provisions of the Bankruptcy Code.

Hr'g Tr. at 110:22-25. When the counterparty argued that it should be permitted to terminate its swap agreement, the Court held that

> [the counterparty's] window to act promptly under the safe harbor provisions has passed, and while it may not have had the obligation to terminate immediately upon the filing of LBHI or LBSF, its failure to do so, at this juncture, constitutes a waiver of that right at this point.

Hr'g Tr. at 111:23 – 112:2.

20. Unlike the counterparty in *Metavante*, Conway did not fail to act; it acted promptly by terminating the Forward Purchase Agreement within weeks of LBSF's petition date. Nor was Conway's action a waiver; it was a clear election of a remedy.[3] Conway's action also fell squarely within the terms of the safe harbors, which only protect a counterparty's contractual termination right if exercised because of a condition of the kind specified in Section 365(e)(1) – a section that includes "the commencement of a case under this title." Conway did not waive its termination right; it made an election to terminate its Forward Purchase Agreement on the Termination Date.[4]

21. The Termination Notice is clear in stating that Conway was terminating because of LBSF's "filing a bankruptcy petition…on October 3, 2008," and the short span of time between LBSF's petition date and the Termination Date makes this statement perfectly credible. Conway strives to analogize itself to the counterparty in *Metavante* – arguing that they both waived their termination rights by not acting promptly – but the analogy cannot be taken

---

[3] "In contrast to a waiver of contractual rights, an election is simply a choice among remedies by the party; it is a decision by that party as to how it should proceed in the wake of the breaching party's nonperformance. In other words, "an election is not a waiver of any rights under the contract but rather a choice between two inconsistent remedies for breach of the contract." *ESPN Inc. v. Office of The Comm'r of Baseball*, 76 F.Supp.2d 383, 389 (S.D.N.Y. 1999).

[4] Conway argues, in the alternative, that its termination should be deemed invalid because it was not sent to 3 World Trade Center, one of the buildings that were severely damaged in the terrorist attacks of September 11, 2001 ("9/11"). However, Conway was evidently cognizant that LBSF had moved to 1271 Avenue of the Americas, and LBSF has never challenged Conway's termination notice on the grounds that it was sent to a building that LBSF vacated on 9/11. For the same reasons articulated above, Conway should not be able to manufacture an option from its own technical defaults such as sending a termination notice to a proper address rather than an abandoned location where it may never have been received by LBSF.

seriously. Conway terminated the Forward Purchase Agreement in mid-November, after the commencement of LBSF's Chapter 11 Case in October. In *Metavante*, the Court held that the counterparty had waived its termination right after riding the market *for a full year*.

22. *Metavante* is therefore inapposite to Conway, in all but one respect: like the counterparty in *Metavante*, who sought to "ride[] the market," Conway, in challenging its own election to terminate the Forward Purchase Agreement in November of 2008, is seeking to avail itself of the option to choose a later valuation date that is allegedly more favorable for Conway. Conway's requested outcome would turn the rationale underlying this Court's *Metavante* ruling on its head.

23. Finally, the post-petition of the parties is inconsistent with Conway's claim that the contract was never terminated. Despite Conway's assertion that "Conway has treated the [Forward Purchase Agreement] as not having been terminated" (Amended Response at ¶6), neither Conway nor the trustee have made any effort to deliver cash to LBSF on any of the delivery dates following the Termination Date (as they would be obligated to do if the contract had not been terminated), nor have they reached out to LBSF to request the debt securities. As stated above, LBSF logged the Termination Notice upon receipt and marked the Forward Purchase Agreement as terminated in its books and records. Conway has produced no evidence to support any allegation that the conduct of the parties could be construed as a waiver of the Termination Notice.

**<u>Conway's Claim Is A "Prepetition Claim" Subject To The Bar Date Order</u>**

24. Section 562(a) of the Bankruptcy Code provides, in pertinent part:

> (a) If the trustee rejects a swap agreement, securities contract (as defined in section 741), forward contract, commodity contract (as defined in section 761), repurchase agreement, or master netting agreement pursuant to section 365(a), or if a forward contract merchant, stockbroker, financial institution, securities clearing agency, repo participant, financial participant, master netting agreement

> participant, or swap participant liquidates, terminates, or accelerates such contract or agreement, damages shall be measured as of the earlier of—
>
> (1) the date of such rejection; or
>
> (2) the date or dates of such liquidation, termination, or acceleration.

11 U.S.C. § 562(a). Section 502(g)(2) of the Bankruptcy Code provides:

> A claim for damages calculated in accordance with section 562 shall be allowed under subsection (a), (b), or (c), or disallowed under subsection (d) or (e), as if such claim had arisen before the date of the filing of the petition.

25.     Conway strains credulity by arguing that the Late-Filed Claim is not governed by the Bar Date Order. To the extent Conway was ever entitled to damages in connection with the Forward Purchase Agreement, those damages were reduced to a prepetition claim pursuant to section 502(g)(2) of the Bankruptcy Code when Conway elected to terminate the Forward Purchase Agreement, and should have been measured as of the Termination Date pursuant to section 562(a) of the Bankruptcy Code. The Forward Purchase Agreement also ceased to be an executory contract as a result of Conway's termination. When this Court entered the Bar Date Order, the termination had already occurred. Thus, pursuant to the Bar Date Order, Conway was a "person or entity" required "to file proofs of claim…based on prepetition claims" by the Bar Date.[5]

26.     Conway argues that the Bar Date Order does not apply to the Forward Purchase Agreement because the Forward Purchase Agreement is not a Derivative Contract, as

---

[5] In support of its argument that its claim is not a prepetition claim, Conway cites to *In re National Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000); *Southmark Corp. v. Marley*, 62 F.3d 104 (5th Cir. 1995); and *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984) (Amended Response at I.A.) None of these cases states or stands for the propitiation that a claim for rejection damages is treated as a postpetition claim. On the contrary, as the Court states in *Bildisco* states, such claims are treated as prepetition claims:

> The Bankruptcy Code specifies that the rejection of an executory contract which had not been assumed constitutes a breach of the contract which relates back to the date immediately preceding the filing of a petition in bankruptcy. 11 U.S.C. § 365(g)(1).

*Bildisco*, 465 U.S. at 530.

defined by the Bar Date Order. But the definition of Derivatives Contract was only included in the Bar Date Order for the purpose of designating those proofs of claim in respect of which a Derivatives Questionnaire (as defined in the Bar Date Order) needed to be filed.[6] The Bar Date Order clearly applies to *all* prepetition claims, whether or not they are based on Derivatives Contracts. If the Forward Purchase Agreement is not a Derivatives Contract within the meaning of the Bar Date Order, this only means that Conway was not required to submit a Derivatives Questionnaire with its proof of claim; Conway was still required to file a timely proof of claim for damages, if any, to assert a prepetition claim arising from its termination of the Forward Purchase Agreement.[7]

27. Having terminated the Forward Purchase Agreement, Conway made its election of remedies; its rights under the Forward Purchase Agreement constitute a prepetition claim. Having been terminated, the Forward Purchase Agreement ceased to be an executory contract capable of being rejected by LBSF on the effective date of the Plan. Accordingly, the bar date applicable to rejected contracts did not apply to the Forward Purchase Agreement.

---

[6] *See Notice of Presentment of Debtors Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form*, filed on May 26, 2009 [ECF No. 3654] at ¶¶ 21-22 (explaining that "[t]he calculation of the claim amounts with respect to Derivative Contracts is a complex process," and in order to efficiently evaluate the accuracy and validity of these claim amounts, for each such claim, the Debtors request that the holder of such claim be required, on or prior to the Bar Date, to (i) submit a Proof of Claim in the manner set forth above and (ii) complete a questionnaire on an online database established by the Debtors.")

[7] The Plan Administrator reserves the right to argue that the Forward Purchase Agreement is a "swap agreement" as defined in section 101(53B) of the Bankruptcy Code. The definition in the Bankruptcy Code includes "an interest rate swap, *see* 11 U.S.C. § 101(53B)(A)(i)(I), and "any agreement or transaction that is similar to" an interest rate swap that is also "a forward…on one or more…debt securities." *See* 11 U.S.C. § 101(53B)(A)(ii). The Forward Purchase Agreement is certainly a forward transactions on one or more debt securities, and like most forward purchase agreements, it is similar to an interest rate swap (*i.e.*, it was entered into for the same fundamental purpose and is priced in the same manner). In fact, Conway *did* submit a Derivatives Questionnaire with the Late-Filed Claim – a strong indication that Conway believed the Forward Purchase Agreement to fall within Bar Date Order's definition of a Derivative Contract.

**Conway Received Notice of The Bar Date**

28. As stated above, the Bar Date Order clearly established September 22, 2009 as the Bar Date "for each person or entity…to file proofs of claim…based on prepetition claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors." (Bar Date Order at 2). Conway argues that the Bar Date Order failed to notify it of the need to file a proof of claim because it did not state that the Bar Date applied to "securities contracts" or "termination claims." But such claims, and myriad others, are prepetition claims as that term is broadly defined in section 101(5) of the Bankruptcy Code. If this Court takes Conway's argument to its logical conclusion, it would have required the Debtors to specifically identify in the Bar Date Order every form and kind of prepetition claim that could possibly be held by all of the Debtors' creditors, including specifically that the order applies to terminated securities contracts, if any, between LBSF and Conway Hospital. In a case of any size, this would be an unreasonable requirement; in the largest bankruptcy cases in history, in which more than 69,000 proofs of claim were filed, Conway's argument is patently absurd.

**The Termination Notice Does Not
Satisfy The Requirements Of An Informal Proof of Claim**

29. As this Court has stated, to qualify as an informal proof of claim, a document purporting to evidence such claim

> must have (1) been timely filed with the bankruptcy court and have become part of the judicial record, (2) state the existence and nature of the debt, (3) state the amount of the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt.

*In re Lehman Brothers Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010); *see also In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995). Within the Second Circuit, courts generally enforce the first prong of the informal proof of claim doctrine (*i.e.*, that the document must be timely and part of the judicial record). *See, e.g.*, *In re Drexel Burnham Lambert Group*

*Inc.*, 129 B.R. 22, 27 (Bankr. S.D.N.Y. 1991) (letter requesting payment was "properly characterized as a general correspondence letter," which, standing alone, was "insufficient to establish that Barclays intended to hold [the debtor] liable"); *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 789 (Bankr. S.D.N.Y. 1990) ("Mere awareness by the debtor of a creditor's claim through telephone conversations or general correspondence has been held to be insufficient as an informal proof of claim.").

30. Conway only cites to one Second Circuit case to support its argument that delivery of a letter to the debtor can constitute an informal proof of claim: *In re Gibraltar Amusements Ltd.*, 315 F.2d 210 (2d Cir. 1963). This case is wholly inapposite. As at least one other court has noted, *Gibraltar* is among a line of cases

> decided by reference to the now-defunct General Order 21 in bankruptcy and the Supreme Court's construction of it in *J.B. Orcutt Co. v. Green*, 204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390 (1907). General Order 21…stated, "Proofs of debt received by the trustee shall be delivered to the referee to whom the case is referred." 204 U.S. at 100, 27 S.Ct. at 196–97. The Bankruptcy Act then stated that claims could be filed with the district court or the referee. *Id.* at 102, 27 S.Ct. at 197. The Supreme Court held that delivery of a claim to the trustee was a sufficient filing, since the general "order is equivalent to saying that proofs of debt (or claim) may be received by the trustee." *Id.* Since the order placed the trustee under a duty to file the claim with the referee, the Court concluded that filing with the trustee was equivalent to filing with the referee, which the statute permitted. General Order 21 and *Orcutt* should be contrasted with the current bankruptcy rules, which constitute a change from prior practice.

*Levine v. First Nat'l Bank of Lincolnwood (In re Evanston Motor Co., Inc.)*, 26 B.R. 998, 1004-5 (N.D. Il. 1983). Thus, Conway's statement, that "pre-Code practice in this regard has [not] changed," is wrong, and *Gibraltar* is inapplicable to this case. Moreover, as the court in *Levine* explains, the letter in *Gibraltar* did, in fact, become part of the judicial record. The Termination Notice was not timely filed with this Court and never became part of the judicial record prior to

the Bar Date. As such, it does not satisfy the standard that this Court and others in the Second Circuit apply when granting such relief.[8]

**Reservation of Rights**

31. The Plan Administrator reserves the right to object to the Late-Filed Claim on any other basis. The Plan Administrator further reserves the right to conduct discovery as to the Late-Filed Claim and any matters raised by Conway and to supplement this and other filings as a result thereof.

**Conclusion**

**WHEREFORE** for the reasons set forth above and in the Objection, the Plan Administrator respectfully requests that the Court enter the annexed order disallowing and expunging the Late-Filed Claim with prejudice.

Dated: July 11, 2014
New York, New York

/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc. and Certain of Its Affiliates*

[8] Even if the Termination Notice were an informal proof of claim, Conway does not even attempt to justify its attempt to file an amendment to such information proof of claim, increasing the asserted amount by approximately $540,000, in violation of the Confirmation Order, which provides that "a proof of Claim relating to a prepetition Claim may not be filed or amended without the authority of the Court." (Confirmation Order at ¶86.)