Hearing Date: Tuesday, August 12, 2014 @ 10:00 a.m.
Objections Due: August 5, 2014 @ 4:00 p.m.

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ X
In re:                                                         :   Chapter 11
                                                               :   Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :
                                                               :
                    Debtors.                          :
------------------------------------------------------------------------ X

### NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR AN ORDER (I) DETERMINING (A) AUTOMATIC STAY REMAINS IN FULL FORCE AND EFFECT AND (B) APPLICABILITY OF STATE LAW TOLLING STATUTES AND 11 U.S.C. § 108(c) TO STATE LAW CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS OF INDIVIDUAL CREDITORS OR, IN THE ALTERNATIVE, (II) SEEKING A LIMITED MODIFICATION OF THE STAY

PLEASE TAKE NOTICE THAT, upon the accompanying Motion, and all pleadings and

proceedings heretofore had before this Court, Lehman Brothers Holdings Inc. ("LBHI"), by its

undersigned counsel, will move before the Honorable Shelley C. Chapman of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623,

New York, New York 10004, on **Tuesday, August 12, 2014 at 10:00 a.m. (ET)**, or such other

time as the Court may determine, pursuant to Rule 9014 of the Federal Rules of Bankruptcy

Procedure, and Rule 9014-1 of the Local Bankruptcy Rules for the Southern District of New

York, for entry of an order determining:  (i) the automatic stay (the "Bankruptcy Stay") imposed

by 11 U.S.C § 362(a) and continued under the Modified Third Amended Joint Chapter 11 Plan

Of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, dated December 5, 2011 [Docket

No. 22973 (08-13555-SCC)] (the "Plan") and this Court's order, entered December 6, 2011

[Docket No. 23023 (08-13555-SCC)], confirming the Plan (the "Confirmation Order"), remains

in full force and effect precluding individual creditors of LBHI from commencing state law constructive fraudulent conveyance claims (the "SLCFC Claims") against JPMorgan Chase Bank, N.A. ("JPMorgan") until such time as the stay is lifted; (ii) the deadline for individual creditors to commence their SLCFC Claims against JPMorgan is tolled by applicable state law in light of the Bankruptcy Stay; (iii) section 108(c) of the Bankruptcy Code preserves individual creditors' SLCFC Claims against JPMorgan until 30 days after the expiration or termination of the Bankruptcy Stay; and (iv) LBHI retains the exclusive power to settle all of its timely commenced avoidance actions pending expiration or termination of the Bankruptcy Stay; or (v) in the alternative, granting individual creditors (including affiliates of LBHI) limited relief from the Bankruptcy Stay solely to permit one or more such creditors to file a complaint asserting SLCFC Claims against JPMorgan, on certain conditions (the "Motion").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be in writing, must conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, must set forth the name of the objecting party, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy hand delivered directly to the Chambers of the Honorable Shelley C. Chapman at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004), in accordance with General Order M-242, and any objection must further be served upon (i) The Office of the Untied States Trustee for the Southern District of New York, 201 Varick

Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq., Susan

Golden, Esq., and Andrea B. Schwartz, Esq.; (ii) Quinn Emanuel Urquhart & Sullivan, LLP, 51

Madison Avenue, 22nd Floor, New York, New York 10010, Attn: Susheel Kirpalani, Esq. and

Andrew J. Rossman, Esq., attorneys for LBHI; (iii) Wachtell, Lipton, Rosen & Katz, 51 West

52nd Street, New York, NY 10019, Attn: David C. Bryan, Esq., Emil A. Kleinhaus, Esq., and

Paul Vizcarrondo, Esq., attorneys for JPMorgan, so as to be filed and received by no later than

**August 5, 2014 at 4:00 p.m. (ET)** (the "Objection Deadline").

       PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received

by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy

Court may enter an order granting the relief sought without a hearing on any date after the

Objection Deadline.

       PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

Hearing, and failure to appear may result in relief being granted upon default.

Dated: July 25, 2014
     New York, New York

                            Respectfully submitted,

                            **QUINN EMANUEL URQUHART &**
                               **SULLIVAN LLP**

                            By: */s/ Susheel Kirpalani*
                            Susheel Kirpalani
                            Andrew J. Rossman
                            James C. Tecce
                            51 Madison Avenue, 22nd Floor
                            New York, New York 10010

                            *Counsel for Lehman Brothers Holdings Inc.*

3

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ X

In re:                                                                              :    Chapter 11
                                                                                        :    Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                :
                                                                                        :
                      Debtors.                                                 :
------------------------------------------------------------------------ X

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR AN ORDER**
**(I) DETERMINING (A) AUTOMATIC STAY REMAINS IN FULL FORCE AND**
**EFFECT AND (B) APPLICABILITY OF STATE LAW TOLLING STATUTES AND**
**11 U.S.C. § 108(c) TO STATE LAW CONSTRUCTIVE FRAUDULENT CONVEYANCE**
**CLAIMS OF INDIVIDUAL CREDITORS OR, IN THE ALTERNATIVE,**
**(II) SEEKING A LIMITED MODIFICATION OF THE STAY**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................................2

II.   JURISDICTION AND VENUE ..................................................................................6

III.  FACTUAL BACKGROUND ......................................................................................7

    A.    PRE-PETITION TRANSFERS .......................................................................7

        1.    AUGUST AGREEMENTS .................................................................7

        2.    SEPTEMBER AGREEMENTS ...........................................................7

        3.    COLLATERAL TRANSFERS ............................................................8

    B.    THE ESTATE AVOIDANCE ACTION ...........................................................8

    C.    THE AUTOMATIC STAY ...............................................................................9

IV.   ARGUMENT ...............................................................................................................10

    A.    THE COURT HAS AUTHORITY TO INTERPRET PROVISIONS IN THE PLAN ................10

    B.    THE AUTOMATIC STAY REMAINS IN FULL FORCE AND EFFECT WITH
        RESPECT TO SLCFC CLAIMS ....................................................................10

    C.    APPLICABLE STATE LAW STATUTES TOLL THE LIMITATIONS PERIOD ...................12

    D.    SECTION 108(C) EXTENDS TIME TO ASSERT SLCFC CLAIMS UNTIL STAY IS
        LIFTED ......................................................................................................13

    E.    LBHI Retains Exclusive Authority To Settle Avoidance Actions .........................15

    F.    IN THE ALTERNATIVE, THE STAY SHOULD BE LIFTED TO ALLOW
        INDIVIDUAL CREDITORS TO COMMENCE AND PRESERVE SLCFC CLAIMS ............16

    G.    WAIVER OF BANKRUPTCY RULE 4001(A)(3) .........................................18

V.    NOTICE .......................................................................................................................19

VI.   PRIOR RELIEF ..........................................................................................................19

VII.  CONCLUSION ............................................................................................................19

i

# TABLE OF AUTHORITIES

**Page**

### Cases

AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.),
117 B.R. 789 (Bankr. S.D.N.Y. 1990) ...................................................................10

Arochem Int'l, Inc. v. Buirkle,
968 F.2d 266 (2d Cir. 1992) ...............................................................................13

Aslandis v. United States Lines,
7 F.3d 1067 (2d Cir. 1993) .................................................................................15

In re Berg,
376 B.R. 303 (Bankr. D. Kan. 2007) ...................................................................16

Brashear v. Victoria Gardens of McKinney, L.L.C.,
302 S.W.3d 542 (Tex. App Dec. 16, 2009) ...........................................................15

C.H. Robinson Co. v. Paris & Sons, Inc.,
180 F. Supp. 2d 1002 (N.D. Iowa 2001) ..............................................................14

Cantor Fitzgerald Inc. v. Lutnick,
313 F.3d 704 (2d Cir. 2002) ...............................................................................13

In re Charter Communications,
No. 09-11435, 2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010) .........................10

In re Colonial Realty Co.,
980 F.2d 125 (2d Cir. 1992) .......................................................................5, 11, 14

In re Containership Co. (TCC) A/S,
466 B.R. 219 (Bankr. S.D.N.Y. 2012) ................................................................17

In re Dreier LLP,
429 B.R. 112 (Bankr. S.D.N.Y. 2010) .......................................................11, 15, 16

Drenis v. Haligiannis,
452 F. Supp. 2d 418 (S.D.N.Y. 2006) ................................................................12

Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs Inc.),
124 B.R. 635 (S.D.N.Y. 1991) ..........................................................................10

In re Fernstrom Storage & Van Co.,
100 B.R. 1017 (Bankr. N.D. Ill. 1989), subsequently aff'd sub nom.,
Matter of Fernstrom Storage & Van Co., 938 F.2d 731 (7th Cir. 1991) ................18

In re Frigitemp Corp.,
8 B.R. 284 (S.D.N.Y. 1981)...............................................................................11

Highland Capital Mgmt. LP v. Chesapeake Energy Corp.(In re Seven Seas Petroleum, Inc.), 522 F.3d 575 (5th Cir. 2008) .................................................................................14, 16

In re Hunters Run Ltd. Partnership, 875 F.2d 1425 (9th Cir. 1989) ...................................................................................13

James v. McCoy, 56 F. Supp. 2d 919 (S.D. Ohio 1998) .....................................................................14

Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Brothers Holdings Inc.), 480 B.R. 179 (S.D.N.Y. 2012) ........................................................................3

In re Lyondell Chem. Co., 503 B.R. 348 (Bankr. S.D.N.Y. 2014) .................................................................11

Marshall v. Picard (In re Bernard L. Madoff Investment Securities LLC), 740 F.3d 81 (2d Cir. 2014) ...............................................................................14, 15

Orr v. Kinderhill Corp., 991 F.2d 31 (2d Cir. 1993) ...................................................................................12

O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734 (Bankr. S.D.N.Y. 2012) .......................................................................4

In re Petrie Retail, Inc., 304 F.3d 223 (2d Cir. 2002) ...............................................................................10

Picard v. Katz, 466 B.R. 208 (S.D.N.Y. 2012) ........................................................................4

Rodgers v. Corrosion Prods., Inc., 42 F.3d 292 (5th Cir. 1995) ...............................................................................15

Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209 (S.D.N.Y. 2004) ................................................................12

In re Saunders, 101 B.R. 303 (Bankr. N.D. Fla. 1989) .............................................................14

Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189 (1985) ........................................................................13

In re Smith, 293 B.R. 220 (9th Cir. 2003) ...............................................................................15

In re Sonnax Indus, 907 F.2d 1280 (2d Cir. 1990) ...............................................................................17

St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688 (2d Cir. 1989) ...............................................................................16

Stern v. Marshall, 131 S. Ct. 2594 (2011) .................................................................................6, 17

Travelers Indem. Co. v. Bailey,
    557 U.S. 137 (2009) .................................................................................10

In re Tribune Co.,
    499 B.R. 310 (S.D.N.Y. 2013) ...............................................................6, 11

Valley Transit Mix of Ruidoso, Inc.,
    928 F.2d 354 (10th Cir. 1991) ................................................................14

Zuckerman v. 234-6 West 22nd Street Corp.,
    645 N.Y.S.2d 967 (1996) .........................................................................12

**Rules / Statutes**

11 U.S.C. § 102(2) ........................................................................................14

11 U.S.C. § 102(3) ........................................................................................14

11 U.S.C. § 105 ..............................................................................................9

11 U.S.C. § 105(a) .........................................................................................6, 10

11 U.S.C. § 108 ............................................................................................12

11 U.S.C. § 108(c) ................................................................................. passim

11 U.S.C. § 108(c)(1) ...................................................................................15

11 U.S.C. § 108(c)(2) ...................................................................................15

11 U.S.C. § 362 ........................................................................................4, 6, 9, 13

11 U.S.C. § 362(a) .......................................................................................1, 13

11 U.S.C. § 362(a)(1) ...............................................................................5, 10, 14

11 U.S.C. § 362(a)(3) ...................................................................................14

11 U.S.C. § 362(c)(2) ...................................................................................11

11 U.S.C. § 362(d)(1) ...................................................................................17

11 U.S.C. § 544(b) ..........................................................................................8

11 U.S.C. § 544(b)(2) ......................................................................................4

11 U.S.C. § 546(a)(1)(A) .................................................................................2

11 U.S.C. § 546(e) .......................................................................................9, 11

11 U.S.C. § 547 ..............................................................................................9

11 U.S.C. § 548(a)(1)(A) .................................................................................8

11 U.S.C. § 548(a)(1)(B) ...................................................................................................8

28 U.S.C. § 1408 ...............................................................................................................6

28 U.S.C. § 1409 ...............................................................................................................6

28 U.S.C. § 157 .................................................................................................................6

28 U.S.C. § 157(b) ............................................................................................................6

28 U.S.C. § 1334 ...............................................................................................................6

Fed. R. Civ. P. 54(b) .........................................................................................................4

Fed. R. Bankr. P. 4001(A)(3) ....................................................................................18, 19

N.Y.C.P.L.R. § 204 ......................................................................................................4, 12

N.Y.C.P.L.R. § 213(1) .....................................................................................................12

Lehman Brothers Holdings Inc. ("LBHI") respectfully submits this motion (the "Motion") for entry of an order (the "Stay Order") determining: (i) the automatic stay (the "Bankruptcy Stay") imposed by 11 U.S.C § 362(a) and continued under the Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, dated December 5, 2011 [Docket No. 22973 (08-13555-SCC)] (the "Plan"[1]) and this Court's order, entered December 6, 2011 [Docket No. 23023 (08-13555-SCC)], confirming the Plan (the "Confirmation Order"), remains in full force and effect precluding individual creditors of LBHI from commencing state law constructive fraudulent conveyance claims (the "SLCFC Claims"[2]) against JPMorgan Chase Bank, N.A. ("JPMorgan") until such time as the stay is lifted; (ii) the deadline for individual creditors to commence their SLCFC Claims against JPMorgan is tolled by applicable state law in light of the Bankruptcy Stay; (iii) section 108(c) of the Bankruptcy Code preserves individual creditors' SLCFC Claims against JPMorgan until 30 days after the expiration or termination of the Bankruptcy Stay; and (iv) LBHI retains the exclusive power to settle all of its timely commenced avoidance actions pending expiration or termination of the Bankruptcy Stay. In the alternative, Plaintiffs seek entry of an order (the "Stay Modification Order") granting individual creditors (including affiliates of LBHI) limited relief from the Bankruptcy Stay solely to permit one or more such creditors to file a complaint asserting SLCFC Claims against JPMorgan, on certain conditions. In support of this Motion, Plaintiffs respectfully state as follows:

---

[1]    All capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

[2]    The terms "conveyance" and "SLCFC" as used herein includes "conveyances" and "obligations" as used in New York's Debtor and Creditor Law as well as any transfers or obligations permitted to be avoided by other applicable state laws.

1

## I.    PRELIMINARY STATEMENT

1.    Prior to the expiration of the two-year limitations period set forth in section 546(a)(1)(A) of the Bankruptcy Code, LBHI and the Official Committee of Unsecured Creditors (the "Committee") commenced an adversary proceeding against JPMorgan (the "Estate Avoidance Action") to, among other things, avoid certain obligations and to avoid and recover certain transfers for the benefit of LBHI's estate.  The Estate Avoidance Action is being actively prosecuted and no claims asserted therein have been resolved by agreement or final adjudication. By this Motion, LBHI seeks an order determining that the Bankruptcy Stay prevents individual creditors from commencing litigation or otherwise prosecuting their SLCFC Claims against JPMorgan.

2.    The statute of limitations for individual creditors to commence certain SLCFC Claims against JPMorgan could arguably run on or about August 29, 2014—six years after the initial subject obligations or transfers were incurred or made.  Not coincidentally, LBHI has received inquiries as to whether it would be willing to lift the Bankruptcy Stay in order to permit creditors to pursue SLCFC Claims before they are at risk of lapsing.  Given the inability of individual creditors to assert such claims due to the Bankruptcy Stay, LBHI seeks a determination that the statute of limitations applicable to the SLCFC Claims of individual creditors is extended by virtue of New York's tolling statute and section 108(c) of the Bankruptcy Code.  LBHI also seeks to confirm that to the extent LBHI and the Committee successfully prosecute or settle the Estate Avoidance Action with JPMorgan, such resolution would finally dispose of any and all litigation challenging the subject obligations and transfers, including any SLCFC Claims of individual creditors.[3]  In the event the foregoing relief is denied,

---

[3]    While a successful prosecution or settlement of the estate's challenge of certain obligations or transfers would preclude individual creditors from subsequently litigating the same transactions, the same may not be true if the estate's claims are dismissed for reasons that are not applicable to individual creditors' SLCFC Claims.  No advance determination is requested with respect to that potential outcome at this time, which may depend heavily on the specific issues adjudicated.

2

LBHI requests the Bankruptcy Stay be modified upon certain conditions in order to ensure the fair and equitable treatment of creditors and to maximize judicial economy.

3.      On May 26, 2010, LBHI and the Committee commenced the Estate Avoidance Action alleging that JPMorgan received intentional and constructive fraudulent transfers by using its leverage as principal clearing bank for Lehman's broker-dealer business to obtain improper guarantees and liens, and to extract more than $8.6 billion from LBHI in the days preceding its bankruptcy filing.[4]  On October 19, 2010, JPMorgan moved to dismiss the Estate Avoidance Action arguing that the safe harbor provisions of the Bankruptcy Code shielded the transactions from avoidance.  Judge Peck granted the motion as to counts based on constructive fraudulent transfer and preference but denied the motion with respect to other counts asserted in the action.[5]  LBHI and the Committee continue to pursue the remaining counts, including claims for intentional fraudulent transfer.

---

[4]      First Amended Complaint dated September 15, 2010 (Adv. Pro. 10-03266-SCC, Docket No. 19) (the "First Amended Complaint") filed against JPMorgan at ¶¶1-8.

[5]      Memorandum Decision Granting in Part and Denying in Part Motion to Dismiss by Defendant JPMorgan Chase Bank, N.A. dated April 19, 2012 (Adv. Pro. 10-03266-SCC, Docket No. 134) (the "Memorandum Decision") at 5.  In the Memorandum Decision, the Court (Hon. James M. Peck) concluded that the Bankruptcy Code's safe harbor provisions applied to all claims asserted in LBHI's First Amended Complaint based on a preference or constructively fraudulent transfer theory (including counts that merely sought the avoidance of *obligations incurred*).  The Court thereupon entered an order dismissing all such claims, but denied the motion to dismiss with respect to the remaining causes of action asserted in the First Amended Complaint, including claims for intentional fraudulent transfer.  See Order Granting in Part and Denying in Part Motion to Dismiss by Defendant JPMorgan Chase Bank, N.A. dated May 4, 2012 (Adv. Pro. 10-03266-SCC, Docket No. 139) (the "Partial Dismissal Order").  On August 7, 2012, the Court entered an Order Denying Plaintiffs' Motion for Reconsideration (Adv. Pro. 10-03266-SCC, Docket No. 156).  Plaintiffs did not seek leave to appeal the Partial Dismissal Order at that time and continue to prosecute the claims remaining in the First Amended Complaint.  The Partial Dismissal Order is an interlocutory order to which an appeal will lie when the Court enters a final order disposing of all of the claims on a final basis.  See Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Brothers Holdings Inc.), 480 B.R. 179, 186 (S.D.N.Y. 2012) (in denying JPMorgan's motion to withdraw the reference, the District Court noted that a bankruptcy court may enter an interlocutory order dismissing fewer than all of the claims in an adversary

4.    Recent decisions in this District have held that the safe harbor provisions of the Bankruptcy Code only apply—as written—to actions by the trustee (including the debtor in possession).  Furthermore, the claims of individual creditors under state law to sue to avoid transfers are not preempted by the commencement of a bankruptcy case except to the extent provided by section 544(b)(2) in respect of certain charitable contributions.

5.    Thus, individual creditors of LBHI may have meritorious SLCFC Claims against JPMorgan, arising out of the transactions challenged in the Estate Avoidance Action, which are not subject to the safe harbor defense.[6]  However, because of the Bankruptcy Stay, individual creditors are stayed from taking actions that seek to recover on a claim against LBHI.  As noted, the Plan and Confirmation Order continued the stay imposed by section 362 until the closing of Lehman's chapter 11 cases.  Consequently, the Bankruptcy Stay will prevent the commencement of SLCFC Claims by individual creditors unless the Court enters an order modifying the Bankruptcy Stay to allow for the commencement of such actions.

6.    JPMorgan should not receive a windfall (i.e., a forfeiture of creditor SLCFC claims) merely as a consequence of LBHI's bankruptcy case.  It would be inequitable and unfair (and indeed illogical) if creditor SLCFC Claims became time-barred while the Bankruptcy Stay was in place.  Certain states, including New York, have tolling statutes that generally prevent the running of an applicable statute of limitations during the pendency of a bankruptcy stay.  See N.Y.C.P.L.R. § 204.  As a result, under New York law, which applies to the transactions in

---

complaint) (citing O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 738-39 (Bankr. S.D.N.Y. 2012) (an order dismissing some but not all claims in an adversary complaint is an interlocutory order)); see also Picard v. Katz, 466 B.R. 208, 210 (S.D.N.Y. 2012) (denying trustee's motion for certification of interlocutory appeal and for entry of a partial final judgment under Rule 54(b) of the Federal Rules of Civil Procedure of an order dismissing certain of the trustee's claims under the safe harbors).

[6]    Nothing herein should be construed as an acknowledgment or admission that the safe harbors apply to any claims asserted in the Estate Avoidance Action.  LBHI and the Committee reserve all appellate rights in that regard.

question, LBHI submits that the statute of limitations has not been running on individual creditor claims since LBHI commenced its bankruptcy case.

7.      In addition to state substantive law, section 108(c) of the Bankruptcy Code provides an additional safeguard to creditors who are prevented from asserting claims by operation of the automatic stay.  Specifically, section 108(c) preserves a creditor's state law statute of limitations with respect to commencing or continuing an action in a non-bankruptcy court on a claim against the debtor until the later of (a) the end of the applicable state law statute of limitations (including any suspensions occurring during the bankruptcy case) or (b) 30 days after the expiration of the stay.  See 11 U.S.C. § 108(c).  LBHI submits that, for purposes of section 108(c), a SLCFC Claim against a third-party transferee is "an action . . . on a claim against the debtor."  Id.; cf. In re Colonial Realty Co., 980 F.2d 125, 132 (2d Cir. 1992) (holding constructive fraudulent transfer claim by a creditor is barred by the automatic stay because "it is an 'action . . . to recover a claim against the debtor' within the meaning of § 362(a)(1)").  Thus, section 108(c) should apply to extend the time in which individual creditors may seek to commence SLCFC Claims against JPMorgan until 30 days after termination or expiration of the Bankruptcy Stay.

8.      In order to ensure the proper operation of the Bankruptcy Stay, LBHI respectfully seeks entry of the Stay Order, determining that individual creditors are precluded from commencing SLCFC Claims and individual creditors are protected against the running of any applicable statute of limitations by virtue of state law tolling provisions and/or section 108(c) of the Bankruptcy Code until 30 days after termination or expiration of the Bankruptcy Stay.

9.      In the alternative, if the Court does not enter the Stay Order, LBHI respectfully requests that the Court enter the Stay Modification Order for the limited purpose of allowing one or more individual creditors to file SLCFC Claims against JPMorgan on the following conditions: (i) any such claims must be brought as a class action on behalf of all similarly situated non-

5

subordinated creditors of LBHI; (ii) those actions must initially be commenced in this Court,

subject only to <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011) and its progeny; and (iii) such actions

shall immediately be stayed pending final resolution of all remaining claims asserted by LBHI in

the Estate Avoidance Action.  Although LBHI believes that the Bankruptcy Stay prevents both

the ability of individual creditors to commence SLCFC Claims and the running of any statute of

limitations in respect of such actions, this relief is being sought as an alternative to the Stay

Order to ensure that individual creditors are not unfairly time-barred while simultaneously

preventing them from prosecuting their own litigation concerning the same transactions.[7]

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are §§ 105(a),

108(c), and 362 of the Bankruptcy Code.

---

[7]    In the <u>Tribune Company</u> bankruptcy case, after the bankruptcy court modified the stay to allow creditors to commence individual constructive fraudulent conveyance actions, District Judge Sullivan held that individual creditors lacked the power to bring a claim while the estate prosecutes its own claim on the same transaction.  <u>See</u> <u>In re Tribune Co.</u>, 499 B.R. 310, 313 n.2 and 322-23 (S.D.N.Y. 2013).  The decision in the <u>Tribune</u> case is currently on appeal to the Second Circuit Court of Appeals, and oral argument has been scheduled for November 5, 2014.

If the Court enters the Stay Order, the Court need not consider the propriety of contemporaneous prosecution by the estate and individual creditors because only the Estate Avoidance Action will be pending.  If the Court declines to enter the Stay Order, LBHI acknowledges that the relief sought in the Stay Modification Order is inconsistent with the above aspect of the <u>Tribune</u> decision.  LBHI, however, respectfully seeks entry of the Stay Modification Order to allow LBHI's creditors to file their SLCFC Claims prior to the expiration of the statute of limitations pending further guidance from the Second Circuit in the <u>Tribune</u> case.

### III.    FACTUAL BACKGROUND

**A.    PRE-PETITION TRANSFERS**

11.    On September 15, 2008, LBHI and certain of its subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Prior to the filing, JPMorgan acted as the principal clearing bank for LBHI's broker-dealer subsidiary Lehman Brothers, Inc. ("LBI").  Among other things, JPMorgan performed clearing activities for LBI pursuant to a Clearance Agreement dated June 15, 2000 (the "Clearance Agreement").  Prior to August 2008, LBHI neither used JPMorgan's clearance services nor did it guarantee any of LBI's obligations under the Clearance Agreement.

**1.    AUGUST AGREEMENTS**

12.    On August 18, 2008, JPMorgan presented LBHI with a set of documents altering the terms and nature of the parties relationship.  The new agreements included a guaranty agreement, security agreement, and an amendment to the Clearance Agreement (collectively, the "August Agreements") pursuant to which LBHI was required to guarantee the obligations of LBI under the Clearance Agreement.  The August Agreements also required LBHI to grant JPMorgan a lien on certain LBHI accounts at JPMorgan to which LBHI had posted collateral as security for payment.  The August Agreements were executed on August 29, 2008.

**2.    SEPTEMBER AGREEMENTS**

13.    Using its leverage as Lehman's principal clearing bank, JPMorgan demanded a new set of guarantee and security agreements and billions of dollars of additional collateral in September 2008.  Specifically, during the night of September 9, 2008, JPMorgan required LBHI to execute a guaranty agreement, a security agreement, and a further amendment to the Clearance Agreement (collectively, the "September Agreements"; together with the August Agreements, the "Agreements").  Pursuant to the September Agreements, JPMorgan required that LBHI guarantee and secure *all* exposures of *all* JPMorgan entities to *all* Lehman subsidiaries, without regard to the nature or source of such obligations.

7

### 3.    COLLATERAL TRANSFERS

14.    Immediately following execution of the September Agreements, JPMorgan demanded that LBHI deliver additional collateral to secure JPMorgan's exposure to LBHI and its subsidiaries.  In particular, on September 9, 2008, JPMorgan required LBHI to post to its account at JPMorgan (upon which JPMorgan purportedly had a lien) $1 billion in cash and $1.67 billion in money market funds.  The following day, on September 10, 2008, LBHI posted approximately $300 million in cash.  On September 11, 2008, LBHI posted additional cash in the amount of $600 million.  Finally, on September 11, 2008, JPMorgan demanded that LBHI deliver an additional $5 billion of cash to JPMorgan, which LBHI did on September 12, 2008.

### B.    THE ESTATE AVOIDANCE ACTION

15.    On May 26, 2010, LBHI initiated the Estate Avoidance Action against JPMorgan seeking to avoid the transfers made and obligations incurred in connection with the Agreements. The Court authorized the Committee's intervention in the Estate Avoidance Action on June 24, 2010.[8]  After JPMorgan filed a motion to dismiss the initial complaint, LBHI and the Committee filed the First Amended Complaint on September 15, 2010.  The First Amended Complaint consists of forty-nine separate causes of action, and asserts, among other things, that the Agreements and related transfers may be avoided as (1) actual fraudulent transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (2) constructive fraudulent transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (3) constructive fraudulent transfers pursuant to section 544(b) of the Bankruptcy Code and applicable state law.  The First Amended Complaint also seeks damages and invalidation of the Agreements based on several common law doctrines.

16.    On October 19, 2010, JPMorgan filed a motion to dismiss the First Amended Complaint.[9]  On April 19, 2012, the Court granted in part and denied in part JPMorgan's motion.

---

[8]    See Order Authorizing Committee's Intervention dated June 24, 2010 (Adv. Pro. 10-03266-SCC, Docket No. 7).

[9]    See Motion to Dismiss First Amended Complaint dated October 19, 2010 (Ad. Pro. 10-03266-SCC, Docket No. 28).

Specifically, the Court found that the safe harbor provisions in section 546(e) of the Bankruptcy Code barred LBHI's federal and state law claims for constructive fraudulent transfers, as well as preference claims under section 547 of the Bankruptcy Code as a matter of law. As a result, those causes of action were dismissed. The Court, however, denied JPMorgan's motion with respect to each of the other causes of action in the First Amended Complaint, including, among others, claims for actual fraudulent transfer, breach of contract, coercion, duress, violation of the automatic stay, declaratory judgment, constructive trust, and unjust enrichment. LBHI and the Committee continue to pursue those claims in the Estate Avoidance Action, and expert discovery is nearly complete.

### C. THE AUTOMATIC STAY

17.    The Court confirmed the Plan on December 6, 2011. The Plan specifically provided that "all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases."[10] Similarly the Confirmation Order states "[p]ursuant to Section 13.7 of the Plan . . . all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Closing Date."[11] The Closing Date is defined as the date upon which all of the Chapter 11 Cases have been closed.[12]

---

[10]    Plan at 89 (§ 13.7).

[11]    Confirmation Order at 46 (§ 54).

[12]    Plan at 4 (§ 1.27).

## IV.    ARGUMENT

### A.    THE COURT HAS AUTHORITY TO INTERPRET PROVISIONS IN THE PLAN

18.    Bankruptcy courts have inherent authority to interpret and enforce their own prior

orders, including after confirmation of a plan.  Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151

(2009) (upholding the bankruptcy court's jurisdiction to enter a "clarifying order," interpreting

the scope of an injunction contained in a prior order confirming a chapter 11 plan); In re Petrie

Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation

jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a

bankruptcy plan of reorganization."); In re Charter Communications, No. 09-11435, 2010 WL

502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010) (holding that bankruptcy court was best situated to

interpret injunction that was part of its own confirmation order).

19.    In addition, section 105(a) of the Bankruptcy Code grants the Bankruptcy Court

broad authority and discretion to take such actions and implement such procedures as are

necessary to enjoin parties from commencing actions in violation of the stay.  11 U.S.C. § 105(a);

see also Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs Inc.), 124 B.R. 635, 642

(S.D.N.Y. 1991) (Section 105(a) "extends to creditor's actions against third parties, when such

an injunction is necessary to protect the debtors and the parties in interest to the reorganization in

their attempt to reorganize successfully"); AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus.,

Inc.), 117 B.R. 789, 801-02 (Bankr. S.D.N.Y. 1990) (finding it appropriate to issue an injunction

pursuant to § 105(a) of the Code to stay state court actions in order to preserve and protect the

debtor and its creditors).

### B.    THE AUTOMATIC STAY REMAINS IN FULL FORCE AND EFFECT WITH RESPECT TO SLCFC CLAIMS

20.    Although individual creditors can pursue fraudulent conveyance actions in aid of

recovering on their claims under applicable state law, upon the filing of a bankruptcy petition,

section 362(a)(1) of the Bankruptcy Code automatically stays any creditor's individual

10

fraudulent transfer claim against a transferee.  <u>Colonial Realty</u>, 980 F.2d at 131-32 (holding that

"a third-party action to recover fraudulently transferred property is properly regarded as

undertaken 'to recover a claim against the debtor' and subject to the automatic stay").[13]  The

purpose of the automatic stay is to "prevent a chaotic and uncontrolled scramble for the debtor's

assets in a variety of uncoordinated proceedings in different courts."  <u>In re Frigitemp Corp.</u>, 8

B.R. 284, 289 (S.D.N.Y. 1981) (citations omitted); <u>see also</u> <u>In re Dreier LLP</u>, 429 B.R. 112, 133

(Bankr. S.D.N.Y. 2010) (the automatic stay prevents individual creditors from "interfer[ing] with

Trustees' ability to pursue recoveries for the benefit of all creditors").  In order to continue to

centralize disputes in one forum and maintain uniformity of treatment as LBHI seeks to monetize

estate assets to benefit its creditors, the Plan and Confirmation Order explicitly preserved all

stays arising under section 362 of the Bankruptcy Code until the closing of Lehman's Chapter 11

Cases.[14]

21.     The stay does not permanently deprive creditors of their individual SLCFC

Claims.  Although the Court previously dismissed LBHI's state law constructive fraudulent

transfer claims against JPMorgan on safe harbor grounds, that dismissal does not mean

individual creditors lost their own SLCFC Claims.  <u>Tribune</u>, 499 B.R. at 320 (Section 546(e) safe

harbor applies only to the trustee, it does not preempt individual creditors from pursuing their

own state law fraudulent conveyance claims); <u>see also</u> <u>In re Lyondell Chem. Co.</u>, 503 B.R. 348,

366 (Bankr. S.D.N.Y. 2014).  Such creditors, however, may not step in to assert their own claims

while the Bankruptcy Stay remains in place.

---

[13]     In the Second Circuit, fraudulently transferred property is not considered property of the estate within the meaning prescribed by section 541(a)(1) until it is actually recovered. <u>See</u> <u>Colonial Realty Co.</u>, 980 F.2d at 131 (citing 11 U.S.C. § 541(a)(3)).

[14]     <u>See also</u> section 362(c)(2) of the Bankruptcy Code:  the automatic stay continues until the earliest of the time (1) the case is closed; (2) the case is dismissed; or (3) a discharge is granted or denied.  Here, the case has not been closed or dismissed, nor has a discharge been granted or denied.  Plan at 88 (§13.4) (providing for a discharge "upon the date that all Distributions under the Plan have been made").

C.    APPLICABLE STATE LAW STATUTES TOLL THE LIMITATIONS PERIOD

22.    Because individual creditors' SLCFC Claims are stayed by operation of federal law, LBHI submits that any applicable statute of limitations will not expire.  Certain states, including New York, have tolling provisions which toll the running of a statute of limitations on a claim until such time as the Bankruptcy Code's automatic stay is lifted.[15]  See, e.g., CPLR § 204 ("Where the commencement of an action has been stayed by a court or by a statutory prohibition, the duration of the stay is not part of the time within which the action must be commenced."); Zuckerman v. 234-6 West 22nd Street Corp., 645 N.Y.S.2d 967, 970-71 (1996) (suspending statute of limitations on a claim pursuant to CPLR § 204 until automatic stay was lifted in the debtor's bankruptcy case).[16]  Accordingly, LBHI submits that the applicable statute of limitations in New York has *not* been running on individual creditor SLCFC Claims since the commencement of Lehman's bankruptcy case.

23.    The transfers and obligations in question indisputably were made between LBHI and JPMorgan in New York and, accordingly, New York's substantive law applies to creditor SLCFC Claims.  See Drenis v. Haligiannis, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006) ("When the law is one which regulates conduct, such as fraudulent conveyance statutes, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."); Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 225 (S.D.N.Y. 2004) ("A fraudulent conveyance statute is conduct regulating

---

[15]    Under New York state law the period for commencing state law constructive fraudulent conveyance claims is six years from the date of the subject obligation or transfer.  See CPLR § 213(1); see also Orr v. Kinderhill Corp., 991 F.2d 31, 35 (2d Cir. 1993) ("[A]ctions for constructive—rather than actual—fraud have long been subject to the [six year] catch-all limitations period of CPLR § 213(1)").  Thus, in New York the applicable statute of limitations (not taking into account any applicable suspensions) would run on August 29, 2014 with respect to the August Agreements.

[16]    CPLR § 204 applies irrespective of whether section 108(c) of the Bankruptcy Code applies.  Zuckerman, 645 N.Y.S.2d at 971 ("[S]ection 108 of the Bankruptcy Code . . . has no relevance to the issue of whether § 204 creates a toll under state law upon the filing of a bankruptcy petition.").

rather than loss allocating."). The substantive law of New York includes its statute of limitations. See Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002) ("A state's rules providing for the start and length of the statute of limitations is substantive law."). See also Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 195 (1985) (holding that where the wrongful conduct occurred in one jurisdiction and the plaintiff's injuries were felt in another, "the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurs."); Arochem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992) ("The locus jurisdiction has the predominant interest where rules regulating conduct are at issue, because of its interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of the actors whose conduct is at issue.").

24.    Assuming New York law (or the law of a state with a similar tolling provision) applies, individual creditors will be able to file timely SLCFC Claims against JPMorgan if and when the Bankruptcy Stay is no longer in effect.

**D.    SECTION 108(C) EXTENDS TIME TO ASSERT SLCFC CLAIMS UNTIL STAY IS LIFTED**

25.    But even if state law tolling provisions do not apply to certain individual creditors' SLCFC Claims, section 108(c) and section 362 work in conjunction to extend a statute of limitations when the automatic stay blocks a creditor from commencing suit. In re Hunters Run Ltd. Partnership, 875 F.2d 1425, 1427 (9th Cir. 1989) ("Applicability of section 108(c) . . . hinges on the applicability of . . . the automatic stay provisions of 11 U.S.C. § 362."). Specifically, section 108(c) extends the "period for commencing . . . an action . . . on a claim against the debtor . . . until the later of: (1) the end of such period, including any suspension of such period . . . or (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . ." 11 U.S.C. § 108(c).

26.    Section 362(a) stays individual creditors' SLCFC Claims against a non-debtor transferee, because such claims are deemed "actions to recover on a claim against the debtor."

13

Colonial Realty Company, 980 F.2d at 132 ("We conclude that although the Florida Action is not an 'act to obtain possession of property of the estate' within the meaning of 362(a)(3) or an 'action against the debtor' within the meaning of 362(a)(1), it is an action to recover a claim against the debtor within the meaning of 362(a)(1)."). This is because "[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee. Moreover, the creditor can only recover property or value thereof received from the debtor sufficient to satisfy the creditor's claim against the debtor." Id. (quoting In re Saunders, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989)).

27.    Use of the phrase "on a claim" in section 108(c) suggests that this provision is not limited in its application to "an action . . . against the debtor."[17] Instead, section 108(c) encompasses claims against the debtor as well as fraudulent transfer claims against non-debtor transferees. Moreover, because individual creditors are stayed from asserting collection actions against JPMorgan on their claims against LBHI, section 108(c) must include such claims for precisely this reason. See James v. McCoy, 56 F. Supp. 2d 919, 929-31 (S.D. Ohio 1998) ("108(c) governs and provides an alternative form of relief for claimants whose claims would expire while the stay is in effect.").[18]

---

[17]    Section 102(2) of the Bankruptcy Code states that the phrase "'claim against the debtor' includes a claim against property of the debtor." Thus, section 108(c) would also apply to actions against third-parties which seek to recover property of the debtor. Either under the precedent of Colonial Realty or the definition in section 102(2), which merely provides an illustrative example of what "claim against the debtor" includes, see section 102(3), the phrase should encompass a claim against property transferred in fraud of creditors that becomes property of the debtor upon avoiding the transfer. See Marshall v. Picard (In re Bernard L. Madoff Investment Securities LLC), 740 F.3d 81, 91 (2d Cir. 2014) (describing a fraudulent transfer claim as "really seeking to recover property of the estate") (quoting Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.), 522 F.3d 575, 589 n.9 (5th Cir. 2008)).

[18]    See also Valley Transit Mix of Ruidoso, Inc., 928 F.2d 354, 356 (10th Cir. 1991) (holding section 108(c) tolled mechanics' lien foreclosure claim against non-debtor third party where action was stayed by operation of section 362(a)); C.H. Robinson Co. v. Paris & Sons, Inc., 180 F. Supp. 2d 1002, 1020 (N.D. Iowa 2001) ("[T]he logical extension … [is] that section 108(c)(2) also applies to any claims against a non-bankrupt

14

28.     While section 108(c)(1) does not itself provide for tolling of the statute of limitations, it incorporates any suspension of time provided for under applicable nonbankruptcy statutes.  Aslandis v. United States Lines, 7 F.3d 1067, 1073 (2d Cir. 1993) (The reference to suspensions in § 108(c)(1) "incorporates suspensions of deadlines that are expressly provided in other [nonbankruptcy] federal or states statutes."); see also In re Smith, 293 B.R. 220, 225 (9th Cir. 2003) (suspensions of time may arise under either state or federal nonbankruptcy law); Rodgers v. Corrosion Prods., Inc., 42 F.3d 292, 297 (5th Cir. 1995) (§ 108(c)(1) incorporates suspensions provided for under federal nonbankruptcy or state law).  To that end, state law tolling statutes are preserved.  But even where the statute of limitations is not tolled by applicable state law, section 108(c) provides creditors 30 days from expiration or termination the Bankruptcy Stay within which to file their SLCFC Claims against JPMorgan.  See 11 U.S.C. § 108(c)(2).  Thus, even if an applicable statute of limitations would otherwise have lapsed during the duration of the Bankruptcy Stay, the otherwise time-barred claim remains viable under section 108(c).

### E.     LBHI RETAINS EXCLUSIVE AUTHORITY TO SETTLE AVOIDANCE ACTIONS

29.     Although individual creditors' litigation rights against JPMorgan are suspended while the Bankruptcy Stay is in effect, to the extent that LBHI and the Committee settle the Estate Avoidance Action on behalf of the estate, such settlement would bind individual creditors with respect to any SLCFC Claims asserted or assertable against JPMorgan.  Bankruptcy courts have the authority to enjoin third-party fraudulent transfer actions on a permanent basis.  See Marshall, 740 F.3d at 93 (holding that individual claims that are duplicative of estate's fraudulent transfer claims are precluded by the trustee's settlement of the estate's claims); In re Dreier LLP,

---

codefendant to whom the stay applies."); Brashear v. Victoria Gardens of McKinney, L.L.C., 302 S.W.3d 542, 548 (Tex. App Dec. 16, 2009) ("If the automatic stay bars a creditor from proceeding against a nondebtor in a particular case, it would be irrational and unjust not to extend the benefit of § 108(c) to that creditor.").

429 B.R. at 133 (the court has jurisdiction to make the automatic stay permanent following the settlement of a fraudulent transfer claim by the trustee); In re Berg, 376 B.R. 303, 314 (Bankr. D. Kan. 2007) (a release of a fraudulent transfer claim by the trustee is binding upon unsecured creditors and prevents a creditor from pursuing a state law action). Without this authority, the trustee is hampered in its ability to pursue and settle avoidance actions for the benefit of all creditors. In re Dreier LLP, 429 B.R. at 133 (noting transferees will remain "fearful of paying twice for the same transfer—once on the Trustees' claim and a second time on the derivative claim.").

30.     "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989); see also Marshall, 740 F.3d at 91 (a fraudulent transfer claim is "the paradigmatic example of a claim that is 'general' to all creditors . . . in bankruptcy such a claim is usually brought by the trustee, for the benefit of all creditors") (quoting Highland Capital Mgmt., 522 F.3d at 589 n.9). Thus, if LBHI ultimately settles the *estate's* fraudulent transfer claims with JPMorgan, individual creditors will be bound by the outcome with respect to their own SLCFC Claims. Because this issue could have a substantial effect on LBHI's ability to negotiate a consensual resolution of the estate's claims against JPMorgan, LBHI seeks confirmation that this Court has the authority to bind individual creditors to a resolution of the Estate Avoidance Action even though the commencement of the bankruptcy case did not itself preempt individual SLCFC Claims.

### F.     IN THE ALTERNATIVE, THE STAY SHOULD BE LIFTED TO ALLOW INDIVIDUAL CREDITORS TO COMMENCE AND PRESERVE SLCFC CLAIMS

31.     If the Court declines to enter an order confirming the applicability of the stay, state law tolling statutes, and section 108(c) to the SLCFC Claims, LBHI respectfully requests that, in the alternative, the Court modify the automatic stay solely to permit one or more

individual creditors, whose claims against LBHI are not subordinated claims, to file a class

action complaint asserting the SLCFC Claims under applicable state law against JPMorgan,

subject to immediate re-imposition of the stay to prevent the simultaneous prosecution of such

claims until further order of the Court.  Such a creditor may include both affiliates of LBHI

holding allowed claims against LBHI, as well as non-affiliated entities.

32.    In addition, the putative class action must be filed in this Court, subject only to

the requirements of Stern v. Marshall and its progeny.  See Stern v. Marshall, 131 S. Ct. at 2608.

This will in effect preserve the Court's ability to manage and protect the estate's assets and all

similarly situated creditors' SLCFC Claims while maintaining the *status quo* until the

Bankruptcy Stay is unconditionally lifted.

33.    Section 362(d)(1) of the Bankruptcy Code provides that the bankruptcy court

shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  While the

Bankruptcy Code does not define "cause" courts in this district routinely evaluate some or all of

twelve factors set forth by the Second Circuit in In re Sonnax Indus, 907 F.2d 1280 (2d Cir.

1990).  See e.g., In re Containership Co. (TCC) A/S, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012).

"In deciding whether to lift a stay and allow a creditor to continue litigation in another forum, a

bankruptcy court should consider the particular circumstances of the case, and ascertain what is

just to the claimants, the debtor and the estate."  Id. at 226.  Some of the relevant factors to

consider in this context include:  whether the action primarily involves third parties; whether

litigation in another forum would prejudice the interests of other creditors; the interests of

judicial economy and the expeditious and economical resolution of litigation; and the impact of

the stay on the parties and the balance of harms.  In re Sonnax Indus., Inc., 907 F.2d at 1286.

34.    Here, if the Court does not enter the Stay Order, individual creditors' SLCFC

Claims may become time-barred under the applicable state law statute of limitations.  This would

not only cause substantial prejudice to creditors but potentially result in a windfall for JPMorgan

17

if, for example, the requirements for constructive fraudulent transfer can be established and this Court's dismissal on safe harbor grounds is upheld on appeal.  Courts have found that mere delay imposed on a creditor's right to litigation is alone prejudicial to creditors sufficient to constitute "cause" for modification of the stay.  In re Fernstrom Storage & Van Co., 100 B.R. 1017, 1024 (Bankr. N.D. Ill. 1989) subsequently aff'd sub nom. Matter of Fernstrom Storage & Van Co., 938 F.2d 731 (7th Cir. 1991).  Here, the consequence to individual creditors of maintaining the stay without confirming the applicability of tolling statutes and/or section 108(c) of the Bankruptcy Code is not merely delay, but instead a complete forfeiture.  This sort of forfeiture should be avoided, as "[t]he opportunity to litigate is a significant right which cannot easily be set aside, despite the existence of a bankruptcy proceeding."  Id.

35.     Moreover, LBHI seeks a limited modification to the stay, only seeking to allow creditors to *file* complaints to preserve causes of action, not to pursue those causes of action at this time.  Thus, the limited modification of the stay will not prejudice LBHI or any party in interest.  Nor will creditors be prejudiced if the Court modifies the stay to allow one or more creditors to file a class action complaint against JPMorgan on behalf of all similarly-situated creditors.  Rather, the limited modification requested herein both promotes judicial economy by allowing LBHI and the Committee to continue to pursue the estate's causes of action, while also striking the appropriate balance by ensuring that claims and rights of individual creditors are preserved.

### G.     WAIVER OF BANKRUPTCY RULE 4001(A)(3)

36.     To the extent the Court decides to grant relief from the automatic stay, LBHI respectfully requests that the Court direct that the order granting such relief be effective immediately.  The six-year statute of limitations (without application of any suspensions) with respect to the August Agreement expires on August 29, 2014.  In order to ensure that one or more creditors are provided sufficient time to file timely complaints, LBHI requests that any

order lifting the stay be given immediate effect and not be subject to the 14 day stay provided under Bankruptcy Rule 4001(A)(3).

## V.    NOTICE

37.    Notice of this Motion has been provided to (a) the Office of the United States Trustee, (b) counsel for JPMorgan, and (c) each entity that filed a Notice of Appearance in the Lehman bankruptcy Case No. 08-13555-SCC.

## VI.    PRIOR RELIEF

38.    The request for the relief sought herein has not previously been made by LBHI to this or any other court.

## VII.    CONCLUSION

For the foregoing reasons, the Motion should be granted.

Respectfully submitted,

Dated: New York, New York
       July 25, 2014

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:  */s/ Susheel Kirpalani*
Susheel Kirpalani
Andrew Rossman
James C. Tecce

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: susheelkirpalani@quinnemanuel.com
       andrewrossman@quinnemanuel.com
       jamestecce@quinnemanuel.com

*Counsel for Lehman Brothers Holdings Inc.*