# **EXHIBIT 88**

Neutral Citation Number: [2001] EWCA Civ 1821
IN THE SUPREME COURT OF JUDICATURE          NO:  A3/2000/2646
COURT OF APPEAL (CIVIL DIVISION)
ON APPEAL FROM  CHANCERY DIVISION
(HIS HONOUR JUDGE COOKE)

Royal Courts of Justice
Strand
London WC2

Monday 22nd October 2001

B e f o r e :

LORD JUSTICE BUXTON

LORD JUSTICE LAWS

and

LADY JUSTICE ARDEN

- - - - - - - -

DR KEHINDE AKINTOLA ABIDOGUN
(Appellant)

- v -

(1) FROLAN HEATH CARE LIMITED
(2) DR OLANREWAJU OLAITAN LABINJO
(Respondent)

- - - - - - - -

Computer Aided Transcript of the Stenograph Notes of
Smith Bernal Reporting Limited
190 Fleet Street, London EC4A 2HG
Telephone No: 020 7421 4040 Fax No: 020 7404 1424
(Official Shorthand Writers to the Court)

- - - - - - - -

MR WEST (instructed by NEDD & CO SOLICITORS) appeared on behalf of the Appellant
MR SMITZ (instructed by SHAIK & CO) appeared on behalf of the Respondent

- - - - - - - -
J U D G M E N T
(As Approved by the Court)
- - - - - - - -
Crown Copyright

1. LADY JUSTICE ARDEN: This is an appeal from the order dated 26th June 2000 of His Honour Judge Cooke, sitting as a deputy judge of the Chancery Division of the High Court, in Newcastle knowing the trial of two actions heard together. By his order the judge dismissed the claim of the claimant for forfeiture of a lease dated 17th November 1994 and made between himself and the defendant, whom I shall called "Frolan", of nursing home premises 72 Marine Avenue, Whitley Bay. I will call these premises "the property" The claim for forfeiture was made in the but of the two actions which the judge tried to which I refer below as "the forfeiture action."

2. The judge also made certain other orders with which we are not directly concerned as the only permission for appeal is in respect of his rejection of the claim for forfeiture by denial of title. However, it is important to note that (with respect to the allegation in the second of the two actions which he tried and which I shall call "the first action") the judge found that the appellant, Dr Abidogun, was the sole legal owner of the property, and that he held it on trust as seven-fifteenths for Dr Labinjo and as to the balance for himself.

3. I now turn to the background facts. Prior to 1994, Dr Labinjo, who is the sister of the appellant, with her husband was running a number of nursing homes including one at the property. The property was charged to the bank. The Labinjos fell into arrears and the bank appointed receivers. Dr Labinjo's brother, that is the appellant, Dr Abidogun, agreed to help buy the property with a loan from Midland Bank. Dr Labinjo and Dr Abidogun acquired a company off-the-shelf, Frolan, and shares were issued to them and Dr Abidogun became the sole Director. Frolan paid two-thirds of the purchase price, £150,000, which it borrowed. The property was transferred into the sole name of Dr Abidogun and charged to the bank. Dr Abidogun granted a lease to Frolan. It was said that this was to be done in this way as opposed to a straight purchase by Frolan for tax reasons.

4. A lease was then granted for three years at a rent of £1,300 per annum. The lease was only for 3 years but, it was common ground before the judge that it continued thereafter under the Landlord and Tenant Act 1954.

5. In 1997, Frolan started proceedings against Dr Abidogun claiming that it, Frolan, was the beneficial owner of the property. In 1998, Dr Abidogun, the appellant, began proceedings against Frolan for forfeiture of the lease on the grounds of non-payment of rent and breach of repairing covenants. In the latter action, the validity of the lease was denied. In its answer, the respondent said as follows:

> "i) It is denied that the Respondent is a tenant of the said property whether as set forth in paragraph 1 of the Originating Application or at all. No admission is made as to whether or not there was ever executed a valid or enforceable tenancy agreement or lease and/or in the alternative if, which is not admitted, such a document was in fact executed or such an agreement was in fact made, it is denied that the same is valid or enforceable.
>
> Ii) It is denied that the applicant is the freehold owner of the property or entitled to possession whether as set forth in paragraph 2 of the Originating Applications and/or at all. It is averred that the First Respondent, Frolan Health Care Limited, is the true freehold owner for the matters set forth in the Particulars of Claim filed in case number NE774799 in the Newcastle upon Tyne County Court."

6. That is the record number for the trust action.

Supplied by Smith Bernal Reporting Ltd for Lawtel

7.  Dr Abidogun's case was that he is the legal and beneficial owner of the property subject to a minor interest on the part of Dr Labinjo on account of her contribution to the purchase price.

8.  In the forfeiture action the appellant claimed that Frolan was in arrears with rent and breach of its repairing covenants and, as I have explained, it was in those proceedings that Frolan denied Dr Abidogun's title. Dr Labinjo, in the trust action, complained that the lease was invalid and that she was unaware of it. She said it had always been intended that the property would be purchased by Frolan.

9.  The judge, in his judgment, dealt with the facts relating to the trust claim, and with which we are not concerned, as there is no appeal with respect to any of those matters, and the judge held that, as I have said, the appellant held the property on a constructive or resulting trust, for himself and Dr Labinjo in the shares mentioned above. The judge then turned to deal with the forfeiture action. He pointed out that three heads of forfeiture were relied upon: first, arrears of rent (and he held that that particular claim was unsustainable and I need not go into that), second, denial of title, to which I return in a moment, and third, disrepair. On the last ground he rejected, for lack of evidence, the claim that the section 146 notice was not complied with and accordingly the action did not succeed on that ground.

10. In relation to denial of title, the judge also rejected the claim. He held that the whole basis of a claim for forfeiture by denial of title was breach of implied condition to do service faithfully to him by whom the lands were given. He referred to Lord Denning's dissenting judgment in <u>Warner v Sampson</u> [1959] QB 297. When that case was at first instance, Ashworth J thought the landlord could forfeit the lease in the same action as that in which title was denied see [1958] 1 QB 404. But the particular point on which Ashworth J rejected the claim of the tenant did not arise in the Court of Appeal.

11. The judge, in his judgment, went on to consider the more recent decision of Mr Morison QC, as he then was, sitting as a deputy judge of the Chancery Division of the High Court, in <u>Clarke v Dupre Properties</u> [1992] Ch 297, at pages 308 to 309, Mr Morison QC analysed the reasons given by Ashworth J for saying that section 146 did not apply to a claim by a landlord to forfeit on the grounds of denial of title. It is sufficient, for present purposes, for me to read this description rather than read both Ashworth J's decision and that of Mr Morison QC, as Mr Morison sets out the basis of Ashworth J's decision. Starting at 308F:

    "Ashworth J found four reasons why the Act [that is the Law of Property Act 1925 section 146(1)] did not apply to the case of a disclaimer: (a) forfeiture does not arise under any stipulation or proviso in a lease, it is a forfeiture which arises by operation of law; (b) it would be quite impossible for a landlord to comply with the notice requirements in section 146(1); (c) relief had never been granted before in a similar case; (d) it would be strange if a tenant could deny the relationship of landlord and tenant and at the same time seek relief on the footing that the lease still existed.

    He concluded that he was not prepared to be a 'pioneer' and be the first judge to grant relief in a disclaimer case. With great diffidence and considerable trepidation, had I been required to decide the point, I would have been prepared to hold that section 146 did apply and that the tenant is entitled to seek relief under the statute. I can express my reasons shortly. (a) As a matter of construction, I do not consider that the Act of 1925 is inapt to apply to a case such as the present. Indeed, I take the view that, prima facie, the words of the Act of 1925 do apply. Whenever there has been a breach of covenant, for example a repairing covenant, which has not been remedied within the

Supplied by Smith Bernal Reporting Ltd for Lawtel

time specified in the notice, the landlord is treating the tenant's breach as repudiatory and, by serving proceedings claiming forfeiture of the lease, is accepting that repudiation. In principle there appears to me to be no difference between a claim for forfeiture because the implied condition referred to above has been broken or because of the breach of any other condition. That section by its terms, is not confined to breaches of express conditions. (b) The Act of 1925 contemplates that some breaches may be incapable of remedy. I cannot see that it would be impossible for a landlord to comply with the notice conditions in the Act. It may frequently be difficult for a landlord to put a figure on the amount of compensation he requires. (c) Whilst I am troubled that better minds than mine have either overlooked the provisions for relief, or have decided that relief could not be sought for reasons which are not apparent, the fact that relief has never before been granted in such a case as this does not persuade me to conclude that, since 1925, relief has not been available to a tenant. (d) Section 146 provides a statutory code which, when it applies, is apt to cover 'wilful' breaches of covenant, unlike the position under the court's general equitable jurisdiction: See Billson v Residential Apartments Limited [1992] AC 494, 510-512. A tenant who repudiated the tenancy relationship by disclaimer and then sought relief would be in no different position from a tenant who repudiated the relationship by breach of the other conditions. No doubt relief would only be granted provided that the landlord's position had not been irrevocably damaged by the disclaimer; in appropriate cases it might be proper to grant an injunction to restrain any further such conduct or impose a penalty.

Despite the persuasive decision of Ashworth J, I would have reached a different conclusion and held, as a pure matter of statutory construction, that a notice under subsection (1) was a prerequisite to Clark's right of re-entry and subject thereto, that relief was available to Dupre under section 146(2) of the Act. It is most unlikely in this case that the court would not have been willing to grant relief on terms. Because of the absence of argument I cannot say what those terms should be."

12. For completeness I should set out section 146(1) and (2) as the precise wording is in issue in these case:

"(1) A right of re-entry or forfeiture under any proviso or stipulation in a lease for a breach of any covenant or condition in the lease shall not be enforceable, by action or otherwise, unless and until the lessor serves on the lessee a notice-

(a) specifying the particular breach complained of; and

(b) if the breach is capable of remedy, requiring the lessee to remedy the breach; and

(c) in any case, requiring the lessee to make compensation in money for the breach; and the lessee fails, in a reasonable time thereafter, to remedy the breach, if it is capable of remedying, and to make reasonable compensation in money, to the satisfaction of the lessor, for the breach.

(2) Where a lessor is proceeding, by action by otherwise, to enforce such a right of re-entry or forfeiture, the lessee may, in the lessor's action, if any, or

Supplied by Smith Bernal Reporting Ltd for Lawtel

in any action brought by himself, apply to the court for relief; and the court may grant or refuse relief, as the court, having regard to the proceedings and conduct of the parties under the foregoing provisions of the section, and to all the other circumstances, thinks fit; and in case of relief may grant it on such terms, if any as to costs, expenses, damages, compensation, penalty or otherwise, including the granting of an injunction to restrain any like breach in the future, as the court, in the circumstances of each case, thinks fit."

13. His Honour Judge Cooke having referred to <u>Clarke v Dupre Properties Ltd</u> concluded that a section 146 notice was required and therefore that if a denial in the pleadings in the case before him were removed by amendment, it could not be relied upon. The judge followed <u>Clarke v Dupre</u> as the more recent and compelling decision as between that decision and the decision of Ashworth J. The judge granted Dr Labinjo permission to remove the allegation of denial of title from the pleadings and the judge held that that was the end of the matter, so far as the claim of forfeiture by way of denial of title was concerned. The judge then gave permission to appeal, solely on the question of forfeiture by denial of title. That is a matter which has been before the Court.

14. The subject of denial of title is arcane and complex. Thus, in my judgment, it is helpful to set out, by way of introduction and overview to what follows in this judgment the description given to the doctrine in Megarry & Wade Law of Real Property (6 edition) (2000) at page 182:

> "1. Denial of title.
>
> The rule is that a tenant who denies landlord's title is automatically made liable to forfeit his lease, a rule derived from the feudal principle that repudiation of the lord destroys the tenure. The doctrine has now been detached from its feudal foundation and justified on a new basis. It is an implied condition of the lease that the tenant not do anything to prejudice the title of the landlord."

15. I pause to note that there is a footnote reference there to <u>Clarke v Dupre</u>:

> "The tenant's denial of title is therefore akin to repudiation of a contract. The denial must be clear and unambiguous in demonstrating that attention by the tenant no longer to be bound by the relationship of landlord and tenant. Thus a denial of title as to part only of the property comprised in the lease will not usually suffice. The tendency to treat the doctrine in this comparatively narrow way is a modern one. At one time it was even held to apply by the with tenant inadvertently denied the landlord's title in a pleading in an action."

16. There is a reference to <u>Kisch v Hawes Bros Limited</u> [1935] Ch 102 which was over ruled in <u>Warner v Sampson</u>, to which I will come:

> "However a mere pleader's general denial which sets out no adverse title has since been held to be innocuous. In any event the tenant may sometimes save themselves if leave is given to amend his pleading before the claim. The amendment will not assist the tenant in the more common case where the landlord has already forfeited the lease by commencing proceedings for possession. In the case of a tenancy for years an oral denial of title will not produce forfeiture, it will however do so in a case of a yearly or periodic

> tenancy. This is because the tenant by denying that he has a tenancy is taken to waive any notice to quit. The landlord can claim possession at once.
>
> It may be doubted whether forfeiture by denial of title should be regarded as any longer taking effect by operation of law at all. If it is in reality based on an implied term in the lease that the tenant will do nothing to prejudice the title of the landlord, it may be better to treat such cases in the same way as the breach of any other implied covenant. The Law Commission has recommended that the implied condition that the tenant shall not deny the landlord's entitlement should be abolished."

17. There is then a reference to the Law Commission's report on Forfeiture (1985) Law Com No 142 at paragraph 5.32K and 5.35 and the Law Commission's recent report on Termination of Tenancies (1994) Law Com No 221.

18. The appellant's notice in this case states that the judge was wrong in law to say that there had been no forfeiture by way of denial of title. That point is one which is argued by the appellant in submissions before us. It is said that the forfeiture arises by operation of law but it is impossible for the landlord to comply with section 146; that relief has never been given in a case where the forfeiture was by way of denial of title and it would be strange if the tenant could, at the same time, deny the landlord's title and claim relief. Those were all the reasons why Ashworth J gave in <u>Warner v Sampson</u>. In other words in support of the appellant's notice, it is contended that the decision on this point by Ashworth J in <u>Warner v Sampson</u> was correct and that the judge should have found that there was forfeiture in this case, and should not have dismissed the action.

19. It is also sought to raise a new argument in this appeal, for which permission is required, since it is beyond the permission to appeal given by the judge and also beyond the appellant's notice. It is sought to be argued that denial of title amounts to a repudiation of the lease and that the landlord accepted this repudiation. It is submitted that the normal contractual principles apply to lease, since a lease is only a contract which creates an interest in land (see <u>United Scientific Holdings Ltd v Burnley Borough Council</u> [1978] AC 904, <u>Hussain v Mehlman</u> [1992] 32 EGLR 87 and <u>Chartered Trust v Davies</u> [1997] 2 EGLR 83). Accordingly, it is submitted that denial of title should no longer be treated as a mere breach of condition.

20. Mr Mark West, for the appellant, submits that it is rare for a tenant's breaches to be treated as repudiatory, it would all depend on all the circumstances and it would be surreal for the landlord to follow section 146 because that section is clearly designed to benefit tenants and not those who no longer desire to be treated as members of that class. Mr West further submits that not all denials are repudiatory but here the denial on his submission clearly was see the answer which I have already read. He also refers to the decision of Lindsay J, <u>BT Plc v Department of Environment</u> ("DOE") 9th October 1996, unreported, on which the respondent relies. He seeks to distinguish that case on the facts although that particular submission has not been amplified. In short, Mr West seeks to advance the proposition that there is no jurisdiction to grant relief from forfeiture by way of denial of title because it was a repudiatory act by the tenant which has been accepted, and thus outside section 146.

21. So far as the respondent is concerned, we have not thought it necessary to call on Mr Smitz for Frolan, but we have had the benefit of counsel's skeleton argument which was in fact lodged on behalf of Dr Labinjo, who is not in fact a party to the forfeiture action. He has indicated to us that he would seek to pursue those selfsame submissions on behalf of Frolan, if he was called upon and if indeed permission were given to argue all these points in full.

22. Mr Smitz's skeleton argument on behalf of Frolan contends that there was no fully constituted cause of action in this case unless a section 146 notice was served. He relies on Clarke v Dupre. He submits that in any event the denial was not so unambiguous on the facts as to amount to a denial of title. The skeleton argument enlarges those submissions. It refers to the need for a section 146 notice and the affect of amendment and refers to the decision of Lindsay J in BT Plc v DoE. He submits that section 146 must cover implied terms (see per Lindsay J in BT Plc v DoE at page 40 - 1 of the transcript.) To destroy the lease, the act of the tenant would have to be prejudicial (see per Lord Denning in Warner v Sampson at 312 to 313. He seeks to rely on what Mr Morison QC said in Clarke v Dupre, about the judgment of Ashworth J and which I have already set out. He contends, in the skeleton argument, that the Court could look to other material, apart from the denial in the pleadings. This was the approach taken by Lindsay J in BT Plc v DoE, having cited a number of authorities including Woodar Ltd v Wimpey 1 WLR 277.

23. In any event, submits Mr Smitz, the tenant can properly put forward questions in good faith for the decision of the Court, as Lindsay J had held, and here, in this case, there was nothing to suggest that Frolan would persist in its denial if the court decided issues against it. In any event, he submits that the real issue was not the legal title to the property but the beneficial ownership of the property. He submits that, while there was a denial of title, there was also a bona fide dispute as to the nature of the parties' obligations under the lease, which largely resolved in favour of Dr Labinjo and Frolan but, he submits, that the existence of those disputes about the rights and obligations under the lease rendered Dr Abidogun's title ambiguous. He also seeks to rely on an argument as regards inherent jurisdiction based on Shiloh Spinners Ltd v Harding with which we have not been concerned.

24. It would be convenient, at this point, to refer to the decision of Lindsay J, though, unfortunately, it has not been reported. This contains an analysis of the question whether or not section 146 applies where what is alleged is the right to forfeit by way of denial of title. This decision was not, it appears, before the learned judge in this case, at the trial of this action, but lends considerable support to the conclusion which he reached.

25. Turning to page 40 of the transcript, Lindsay J set out section 146(1) which, it will be recalled, provides that a right of re-entry or forfeiture "in a lease" for breach of any covenant or condition "in the lease" shall not be enforceable unless certain conditions are met. Lindsay J continued:

> "Both the right and the condition have therefore to be found in the lease. There is no pointer in subsections (1) and (2) as to whether it suffices if it is implied into, rather than being expressed, in the lease, but that latter term is enlarged by section 146(5)(a), section 154 and section 205(1) (xxiii) of the Law of Property Act 1925 to include oral tenancies. Given the informal manner in which Parliament must have known that oral tenancies habitually come into being, I find it difficult to suppose that Parliament intended to make relief available for that minuscule or negligible proportion of tenants which might orally but expressly agree with their landlords that a right of re-entry or forfeiture and the condition against disputing the landlord's title, but yet that yet Parliament intended deny relief to a vast majority of those who made oral tenancies in which the right or condition could only be said to be "in" the "lease" by implication of law. That consideration suggests that implication should suffice, both as to the right and condition. But as against it Mr Morgan, for the department, submits that there are the terms of section 146(6) and (7). Subsection (6) provides that the section applies although the

proviso on stipulation under the right of re-entry or forfeiture approves accrues is inserted in the lease in pursuance of the directions of any Act of Parliament."

26. Subsection (7) reads:

"For the purposes of this section a lease limited to continue as long only as the lessee abstains from committing a breach of covenant shall be and take effect as a lease to continue for any longer term for which it could subsist but determinable by a proviso for re-entry on such a breach.

The Department points to section 146(7) as the instance of Parliament requiring the leases within it to be treated as if a proviso for re-entry on its breach was to be found "in" the lease even though such a proviso had not been expressed. Together, says the Department, subsections (6) and (7) provide the only cases, in which matter not in leases be treated as if it were present; expressio unis est exclusio alterirs. As to this, in 1925, there would have been very much in mind, for example, provisions such as those in paragraph 10(1) of the 15th schedule to the Law of Property Act 1922 by which covenants by lessees and related powers of entry deemed to contain in the leases there described. It is to be noted that section 146(6) deals in terms only with the insertion into the lease of re-entry of the right (of forfeiture) and not of the related covenant or condition when the tenant's part. It would have been quite idle for Parliament to have provided in such cases statutorily implied rights for the treatment of the right as if "in" the lease if the related condition were not also to be treated as "in" it by implication.

So far from excluding all implication, section 146(6) thus suggest at least in statutory cases with which it is dealing implication of the conditions as the right is contemplated as sufficing to make the matter fall under subsection (1) and (2) of section 146. Once thus one arrives at the conclusion that section 146(6) cannot be an indication of the inadequacy of implied material in all cases and if, indeed its provision suggest some implication necessary outside the implication which it expressly mentions, then so far from being an exclusion of cases the statutory expression of the one form of implication suggests the need for other forms of implication as well. Subsections (6) and (7) are reduced, in my judgment, to being only for the avoidance of any doubt in special cases to which they particularly relate and do not have the effect of excluding rights and conditions implied in other cases from the range of what had been treated as being "in" the leases considered.

If then the condition not expressed in that to be found in leases only by way of implication of statute law are not in terms excluded by any other parts of section 146, I find it difficult to resist the conclusion that all conditions properly to be implied into a lease are "in the lease" for the purposes of section 146(1), and if implication suffices to the introduction of conditions, it is impossible as it seems to me, to exclude it in relation to the introduction of the corresponding rights of re-entry or forfeiture which, under section 146(1), also have to be "in" the lease."

27. So the principal argument before this Court has been the appellant's submission that denial of title, unlike other breaches of condition, involves a fundamental rejection of the relationship between landlord and tenant and, further, that in this case, that the landlord

accepted that repudiation and that repudiation is outside section 146 of the Law of Property Act 1925.

28. Mr West for the appellant submits that this indeed is the true basis of the decision of Ashworth J, Ashworth J used the terms renunciation of the tenancy, and repudiation of the tenancy, in the context of denial of title. In short, Ashworth J was right ahead of his time, because the important decision in the <u>United Scientific v Burnley</u> had not been decided.

29. Mr West further submits that, if the Court of Appeal in <u>Warner v Sampson</u> had had this argument placed before them, they might well have come to a different decision in that case. As it was he submits that case is distinguishable or per incuriam because the Court of Appeal did not address the question of whether these had been a repudiation of the lease by the tenants denial of title which was accepted by the landlord in its reply in the pleadings in that case.

30. As I have said, Mr West needs permission to appeal and permission to amend his appellant's notice in order to run this point. In my judgment, the argument which Mr West seeks to advance cannot succeed for the following four reasons, and should not be permitted to be raised in this Court.

31. First, this is a new argument; it was not raised below. There is simply no finding by the judge that a tenant intended no longer to be bound by the terms of the lease.

32. Mr West has drawn our attention to the pleadings. He has also drawn our attention to the submissions which were made at the hearing before the judge, where the defendant's appeared in person. He has drawn our attention particularly to what was said paragraph 17 of the closing written closing submissions in paragraph 17 on behalf of Frolan and Dr Labinjo placed before the judge:

> "Since the lease on which Dr Abidogun relies is a nullity, the contents including reference to repairs cited in the Notice to Lessee of Breach of Covenant to Repair is null and void."

33. So, submits Mr West, there is a clear denial of the landlord's title and that whatever the judge said by way of permitting an application to amend, in truth, the tenant persisted in their denial. As I say that particular submission must be seen in the context of the points being made in the closing submissions, at paragraph 6, 10, 11 and 12.

34. The defendants were saying that the lease was not valid because of the trust which they alleged of the property, that the lease was not valid because Dr Abidogun, in transferring the title of the property to his own name, contravened section 320 of the Companies Act 1985, a submission which the judge rejected. Frolan further sought in paragraph 11 of the closing submission, "the court's approval to void the transaction giving title to 72 Marine Avenue to Dr Abidogun." It was said in paragraph 12 that Frolan and Dr Labinjo denied the existence of the lease because no rent had been stipulated, the signature on behalf of Frolan was a purported signature which was denied, the signatures were not witnessed, Frolan's seal had not been affixed and the document was stamped late.

35. As I see it, the submission on which Mr West particularly relied has to be seen in the context of all the issues which Frolan was raising in the action. In my judgment, it is not the law that a tenant cannot submit issues of this nature to the determination of the court without risking the landlord bringing the tenancy to an end, in a manner in which the tenant would have no right to relief.

36. But more importantly, for present purposes, it is my judgment the court cannot simply assume that there would have been a finding in, in the appellant's favour that the tenant intended thereby to repudiate the lease and was not seeking merely the determination by the court of some legal issues that arose. Mr West submits that the Court itself can make some decision as to whether or not the conduct of tenant was repudiatory. As I see it, it would not be right for the court to make findings itself on this issue since the points were not, as I understand it, ever put to the witnesses.

37. Secondly, as I see it the modern view is that denial of title has to be seen as giving rise to a right to forfeiture by implication of law. This is a matter which Mr Morison QC, in <u>Clarke v Dupre</u>, addressed at page 302 to 303 of the report. He says as follows:

   > "Counsel for Dupre sought to persuade me that the doctrine of disclaimer by denial of title by record was an unfortunate hangover from medieval feudal relationships and that either the doctrine did not now still exist or had never existed. In the light of the ratio of Warner's case such a contention is unarguable.
   >
   > In any event, it seems to me there is no reason in principle why the doctrine should not exist. A tenant who repudiates the relationship of landlord and tenant should be in no different position from a party to a contract who repudiates or renounces it. It seems to me that the doctrine of disclaimer is analogous to the concept of repudiation of a contract.
   >
   > Counsel for the landlord in Warner's case used the phrase 'repudiation, renunciation or denial.' Hill and Redman's Law of Landlord and Tenant, 18th ed (1991), vol 1, para 2181, says:
   >
   > 'There is implied into every lease a condition that the lessee shall not do anything that may prejudice the title of the lessor; and that if this is done the lessor may re-enter for breach of this implied condition. The principle may be traced back to the reign of Henry II and appears to be founded on the oath of fealty given by a tenant of real property to his lord under the medieval system of tenure.'"

38. Lindsay J, in the case of <u>BT v DoE</u> also proceeded on the basis that the landlord's right arose by implication into the lease (see the passage I have already cited. See also the passage which I have read from Megarry Wade.)

39. The counter argument is that which Ashworth J pursued, on the basis that the right to forfeit was given by way of operation of law. As I have explained, the question of whether section 146 applied was not a matter which arose on the view which the Court of Appeal took.

40. Returning, however, to the judgment of Ashworth J, it seems to me that his judgment has to be read in the light of the arguments that were being addressed to him on that occasion. It was argued on behalf of the tenant that the express proviso or stipulation in a lease in section 146(1) could apply to a condition more specifically mentioned in the lease and also to one attached to it by operation of law. The argument to the contrary was that there was no jurisdiction to grant relief under section 146 on the basis that the right of forfeiture did not arise under any proviso or stipulation in a lease but on a denial of tenancy and as a legal consequence of relationship of landlord and tenant.

41. When Ashworth J said that the right arose by operation of law he did not find it necessary to

Supplied by Smith Bernal Reporting Ltd for Lawtel
08-13555-mg    Doc 45468-3    Filed 07/31/14    Entered 07/31/14 17:14:52    Exhibit 88
Pg 12 of 18

analyse further whether the term arose from an implied term in the lease and thus was in effect by way of implication of law. In the earlier part of his judgment, he was clearly thinking in terms of express terms and, likewise, although his Lordship referred to repudiation and to renunciation, it seems to me that those references to them have to be read in the light of the fact that his Lordship did not analyse whether, when he said by reason of law it was a term which was in fact implied into a lease.

42. For my own part, I find it difficult to see how the right can be said to arise by operation of law but not by way of implication into the lease. It is a term which clearly can be varied or made explicit by agreement. The lease does not determine by operation of law automatically because of the denial of title. Even on the appellant's submission, it can only be a repudiation which has of course to be accepted by the landlord.

43. In those circumstances, it seems to me truer to the doctrine of <u>United Scientific v Burnley</u> to treat it as an implied term rather than treat it as a relic feudal law without any contractual basis.

44. Moreover, on the facts of this case, in my judgment, there was no sufficient acceptance of repudiation in this case. The argument below was in terms of forfeiture. The landlord never pleaded in this case that he had any right to terminate the lease because of the denial of title. All that is said that counsel accepted the repudiation in submissions, that the court allowed counsel to raise the point and that therefore the point was taken before the judge.

45. When one examines the judge's judgment, it is clear that the judge thought and considered that the argument being raised was one of forfeiture. We see, in particular at page 34 of the transcript, where the judge refers to it as a claim to forfeiture and permitted the amendment. (see also page 32 where the judge recalls the submission by counsel for the claimant, Mr Nichols as follows:

> "Mr Nichols submits on the basis of a long line of authority, some of it of remote antiquity that there is thereby a forfeiture."

46. So, clearly, the argument proceeded before the judge in terms of forfeiture. One can see there is also counsel's closing submissions paragraph 6:

> "Further the defendant has breached the implied/condition in the lease the tenant implied, see Warner v Sampson [1959] 1 QB 297 at 309-317 per Lord Denning..."

47. That is all put under the heading of forfeiture. In those circumstances, I do not consider that the landlord clearly accepted the repudiation which he alleged resulted from the tenant's denial in the answer, as I have set it out, of the landlord's title. Moreover, there is no challenge to the judge's decision to allow an amendment to the pleadings to delete the denial of title. So, as I see it, this particular point must fail on that ground too.

48. Furthermore, in my judgment, section 146 must apply in a case of denial by way of title. There are three points here. First, as I have already explained, in my judgment, the right to forfeit on the grounds of denial of title is based on implied terms. Second, for the reasons given by Lindsay J, on which I could not improve, the terms is "in a lease" for the purposes of section 146(1). Third, the right to bring the lease to an end by accepting repudiation is, in my judgment, a forfeiture. The term "forfeiture" is not defined in section 146(1). However, in Woodfall on Landlord on Tenant, it is said as follows at paragraph 17.057

Supplied by Smith Bernal Reporting Ltd for Lawtel

> "In broad terms a right of forfeiture, in broad terms may be defined as right of forfeiture, defined as a right to determine a lease by a landlord if (a) when exercised it operates to bring the lease to an end earlier than it would naturally terminate and (b) it is exercisable in the event by some default by the tenant."

49. That particular definition was also cited by Lindsay J in BT v DoE. It is clear that on that definition a right to bring a tenancy to an end by reason of denial of title would be a right of forfeiture. I agree with Lindsay J in that case, that the right of forfeiture for denial of title must be included within the right of forfeiture referred to in section 146. If it were not so, it would be possible to bring a lease to an end by a means which is wholly outside of section 146, with significant consequences for the law of landlord and tenant and the fact that such repudiatory conduct may only arise occasionally does not seem to me to diminish the significance of the contrary conclusion.

50. As I see it, for all those points must mean that the appeal fails and that permission to amend the appellant's notice and to raise a new point and for permission to appeal on the new point should not be granted. The appeal should be dismissed, for there was in this case no section 146 notice. Mr West has not sought to argue that Warner v Sampson must have been decided per incuriam because the Court of Appeal did not appreciate the consequences for the lease on the contract of the landlord's repudiation. In my judgment, that argument does not assist for reasons I have already given.

51. LORD JUSTICE LAWS: I agree. There are no facts found in this case to support the proposition essential for Mr West's argument that the company's denial of the appellant's title was distinctly treated by him as an act entitling him to repudiate the lease or that he accepted any such repudiation. The premise of the party's approach to the case was that the question was one of forfeiture.

52. LORD JUSTICE BUXTON: I agree with both judgments. I can well accept the first point in Mr West's argument that relations between a landlord and his tenant, under a lease, are governed by the ordinary law of contract as well as by the more specific doctrines of the law of landlord and tenant. It does not, however, follow from the interaction of those two parts of the law that the protection for a tenant, as has been provided by Parliament in section 146, can be avoided by recourse to a purely contractual doctrine such as that of repudiatory breach.

53. That is for the reasons that my Lady has pointed out in detail, and also because a substantial difficulty about such an argument, at least in this Court, would be provided by the decision of this Court in Warner v Sampson where, in my judgment, the second paragraph of the headnote accurately reports the views of Hodson and Ormerod LJJ, which make it quite clear that situations such as the present are seen by the law as being dealt with under the law of forfeiture and not under some more general contractual doctrine. As my Lady has pointed out, Mr West was obliged to argue that Warner v Sampson had been decided in per incuriam, in that it did not take the view of later developments in the law that Mr West would wish to urge upon us.

54. However, those matters do not, in any event, arise in this case. First, because if the doctrine of repudiation is to be applied, the Court must determine the seriousness of what has occurred and whether it amounts to repudiatory conduct. As my Lord pointed out, there are no findings in this case to that effect and it would be wholly inappropriate in the view of the history of this case for this Court to embark upon such a consideration. Secondly, it is trite law that a repudiation is not effective unless it is accepted. For the alleged acceptance in this

case the landlord relies, firstly, on what was said by counsel during the trial; and secondly, on the part of the skeleton argument advanced by counsel who appeared at trial, not Mr West who appears before us, that my Lady has already set out.

55. There are four difficulties about that argument. First, as my Lord has pointed out, it is entirely couched in terms of forfeiture; there is no sign at all that the landlord or those then advising him thought that they were accepting a repudiation. Secondly, as Mr West accepted, significant difficulty is caused to him by the observation of Ormerod LJ in <u>Warner v Sampson</u> at page 326, indicating what was alleged to be the acceptance of forfeiture in that case that he found unsatisfactory. He said this:

> "The landlord delivered her reply on 29th July 1955, paragraph 3 which was as follows:
>
> 'The plaintiff hereby exercises her said right to forfeit the said term, claimant thereby entitled to re-enter on the said premises'
>
> Nothing was done at that time to complete the re-entry and Mr Scarman agreed the paragraph in reply without the issue of writ insufficient for the purpose."

56. If that pleading was insufficient in a case that was analysed as one forfeiture, I cannot understand how a similar though unpleaded allegation in our present case could ground the acceptance of a repudiation. Thirdly, and in any event, although this point was not argued it seems to me that the exchanges in this case on the part of the landlord did not have the clarity and unequivocal nature that would be required to ground the acceptance of a repudiation, particularly in a case where the landlord did not think that that is what he was doing. Fourthly (by way of illustration of the inappropriateness of this doctrine in this case) Mr West argued that the fragile exchanges on the part of the landlord accepted the repudiation there and then and, therefore, excluded the possibility of the tenant correcting the position, as this tenant did on the encouragement of the judge, by withdrawing the pleading that was objected to. I cannot think it realistic to say that the combination of the alleged doctrine of repudiation and the landlord's argument in this case sufficed in any event first of all, create repudiatory conduct; and second, to amount to an acceptance of that conduct such as to exclude the correct and sensible course that the judge encouraged the tenant to take.

57. For those reasons and in addition to those given by my Lord and my Lady, I also would dismiss this appeal.

58. MR SMITZ: My Lords and my Lady, in the first place I much obliged. Secondly, I respectfully ask for costs in this matter as was initially raised at the beginning.

59. LORD JUSTICE BUXTON: You want Frolan's costs, what about Dr Labinjo?

60. MR SMITZ: May I sketch out what the position is. My Lords, my Lady, I understand from those instructing me that my solicitors have in fact paid by company cheques drawn on Frolan, and therefore up to a point it would not matter whether your Lordships were - assuming your Lordship were minded to allow costs on our side - whether they were to be granted to Dr Labinjo personally or granted in favour of Frolan because if Dr Labinjo gets the money, she has to account to Frolan for whence it came.

61. The difficulty which I can see is, until this morning, my instructing solicitors and I were not

Supplied by Smith Bernal Reporting Ltd for Lawtel

on record as acting for Frolan but only for Dr Labinjo. Also until this morning I, nor my instructing solicitors were aware that by order of the Court Dr Labinjo had been removed as a party to this appeal.

62. LORD JUSTICE BUXTON: That only happened on Friday, and was subject to our hearing further submissions on it. We had a notice of acting amongst the many sheets of paper that descended on this building on Friday. There was a notice from your solicitor, Shaik & Co. Is that right? Saying they had been appointed to represent Dr Labinjo generally in this matter. Were they not representing her before that?

63. MR SMITZ: They were indeed. I am not entirely clear why it was further, regarding Dr Labinjo, but may I just take instructions?

64. The explanation is very straightforward. Dr Labinjo took the case back, disinstructed my solicitors and shortly, when it became apparent the hearing was effective, asked my instructing solicitors again to act for her. So, the notice of action is in effect to tell everyone she is no longer in person.

65. LORD JUSTICE BUXTON: How long have your solicitors been instructed on behalf of Frolan?

66. MR SMITZ: Only since, I think it was Friday. My solicitors naturally wanted to satisfy themselves that they had received adequate authority from their counsel that they could go on record on its behalf.

67. LADY JUSTICE ARDEN: Would it not be possible to deal with those costs, if the Court thought fit, by making a provision in the order of certain costs incurred by Dr Labinjo should be treated as incurred by Frolan for the purposes of any award of costs?

68. MR SMITZ: With the greatest of respect that must be the solution. My sole concern was that on a taxation, it might be said merely that Frolan costs be made, that certain costs were not really Frolan's but Dr Labinjo who was on a frolic of her own.

69. LORD JUSTICE LAWS: Talking about anything other than a skeleton argument in this context which was put in her name?

70. MR SMITZ: If I might just take instructions? I believe my Lords, my Lady that is all that it is. Whether there is anything that arrives the question...

71. LORD JUSTICE BUXTON: Find out. If you need to take instructions would you find out (Pause).

72. MR SMITZ: I can say except for the skeleton argument there is not anything else.

73. LORD JUSTICE BUXTON: It was suggested to you when we started that you might wish to adopt the skeleton on behalf of Frolan.

74. MR SMITZ: Indeed that is precisely what happened.

75. LORD JUSTICE BUXTON: Well, we will hear Mr West on this but, as presently advised, subject to any argument Mr West wants to advance, your submission is that Frolan gets it costs. Those should include the costs of preparing the skeleton argument that was in fact submitted on behalf of Dr Labinjo, save for that Dr Labinjo should get no other costs.

76. MR SMITZ: That is my submission. Might I just add, although it is probably not now the right moment to go into it in detail, that I would be asking for costs on the indemnity basis. I shall address your Lordships and Ladyship on that.

77. LORD JUSTICE BUXTON: Why are you asking for costs on an indemnity basis?

78. MR SMITZ: It can be stated very simply. Is that this skeleton argument has been in the possession of the appellants since March, along with the judgment of Lindsay J, as he then was.

79. LORD JUSTICE BUXTON: Look, wait a minute. I know it has been extremely tiresome for you, it has not been very helpful for the Court, I do not mind saying, that this all happened at the 19th hour, as it were. First of all you had not suffered any extra expense because of that, or if you have, you will be able to recover it. Secondly, we do not give indemnity costs just because there has been some not wholly satisfactory lack of zeal. Indemnity costs is punitive. It is big stuff, if I may put it like that. Anyhow we will see what Mr West has to say.

80. MR SMITZ: Before I sit down, if I could simply state what it is based on.

81. LORD JUSTICE BUXTON: Based on the argument was put very late.

82. MR SMITZ: Based on the fact it was never foreshadowed below.

83. LORD JUSTICE BUXTON: My Lady has made that very clear indeed in what she said. We understand the point. Yes Mr West?

84. MR WEST: I cannot resist, in principle, Frolan should have its costs. My concern is it should have it costs full stop. If it incurred no cost because the work has been done in preparation for this appeal by another party, another person, I should say rather than another party who has instructed solicitors who has instructed counsel to prepare a skeleton argument. Solicitors have briefed counsel, some week or so ago, I apprehend. Then, so much the better, so much the good fortune of Frolan, this respondent. But there it should stop.

85. LORD JUSTICE LAWS: When was Dr Labinjo pleaded as a party in the proceedings?

86. MR WEST: As far as I am concerned she never was.

87. LORD JUSTICE BUXTON: Look at page 8 of your bundle would you, please?

88. MR WEST: Yes I accept it appears there in the originating application, she was a party to the action, but by the time the matter came to be subject of a notice of appeal, that is headed appellant and respondent, it does not appear that she is a party to it. Quite where that change took place I am not entirely clear.

89. LORD JUSTICE BUXTON: She can be forgiven for thinking she had got some involvement in the matter and needed to take steps.

90. MR WEST: I am not sure about that. I am looking at the pleadings in the action, I thought they proceeded that apart on the basis of two parties, Dr Abidogun and Frolan.

91. LORD JUSTICE BUXTON: After this document it is between the two parties.

92. MR WEST: What was made clear in the pleadings is that Dr Labinjo was being permitted to

speak on behalf of Frolan. The judge did make it quite clear in the judgment. The general thrust of the pleadings and the judgment is that the case, that action proceeded on the basis of two parties. I would have made the originating application, had it been framed and, on that basis this appeal has proceeded between the two parties and, as has happened very recently, the error, however it may have arisen in thinking in some way that Dr Labinjo is a party to this appeal, has been corrected by the unilateral step of the support in removing her name from the appeal. So the matter comes full circle. The position is that Frolan has had work done on its behalf by somebody else but that is not the reason why this court should not make an order for Frolan to have its cost no more.

93. LORD JUSTICE BUXTON: Right. Thank you very much. You need not address us about indemnity costs either.

94. The appeal will be dismissed with the costs of Frolan Health Care Limited to be paid by the appellant on the ordinary, not an indemnity, basis. The Court declares that the cost of the skeleton argument prepared by Mr David Smitz of counsel, dated 13th February 2001, shall be deemed to be the costs of Frolan Health Care Limited. We make no further order.

95. MR SMITZ: My Lords, my Lady there is a schedule of costs, might I submit it?

96. LORD JUSTICE BUXTON: Has Mr West seen this?

97. MR SMITZ: He has. I believe he has taken a point that having been served about 2 o'clock on Friday it was served rather late.

98. LORD JUSTICE BUXTON: I am sure he does not mind us looking at it and then he will tell us what he objects to. We need three copies.

99. Mr West are you in a position to address us about this?

100. MR WEST: As I understand your Lordships' and Ladyship's order it amounts to item 1 in the middle of the second page and I am not going to object to that point.

101. LORD JUSTICE BUXTON: This a statement of the second respondent's cost not of Frolan.

102. MR SMITZ: Those are the costs, indeed I would ask that that be treated by your Lordships and Ladyship as the costs of Frolan, especially bearing in mind the earlier ruling of the Court on the question of the skeleton argument.

103. MR WEST: Justice is served on behalf of the second respondent, but in view of the fact there was only a briefing, an instruction on behalf of Frolan, on Friday, I invite your Lordships to say there are no further costs on behalf of Frolan. There is no evidence of it, this is prepared on behalf of Dr Labinjo. The only material on which your Lordships can proceed is item 1 on page 2, which is that figure drafting the...

104. LORD JUSTICE BUXTON: What is the...

105. MR WEST: The brief figure incurred on behalf of Dr Labinjo, Frolan was ever -- they instructed these solicitors?

106. LORD JUSTICE BUXTON: What the Court is minded to order is that there should be recovered by Frolan Health Care Limited as it costs of this appeal, the sum in item 3 of this note, described as the attendance at the hearing. Three hours, which is a modest amount, in view of the fact the length of time that the hearing has taken place and charged at a very

modest rate. As we have already ordered the cost of the skeleton be recovered, we also think it right, in all the circumstances, that Mr Smitz should have his brief fee. We would undoubted have called on him and regarded him as addressing us on behalf Frolan as well as Dr Labinjo. There will be awarded by way of costs the sum claimed of £3,350 but there should be omitted the sum of £350 in items 1 and 2 of the first column, making a total of £3,000 in all.

107. Since costs is a matter of general fairness, I am bound to say, speaking entirely for myself (I do not speak for my Lord or my Lady) that I am not uninfluenced by the level of the cost bill submitted on behalf of the appellants.

108. My Lady points out to me that of course the company will be billed or has already dispersed these amounts, not Dr Labinjo, and I understand in effect, Mr Smitz gave an undertaking and was describing the background to us. Now, does that conclude our business?

109. MR SMITZ: May be, for the sake of house keeping mention, because this case would probably be reported, might I mention two matters my Lord and my Lady arising out of the judgment of Lady Justice Arden.

110. LORD JUSTICE BUXTON: We always value help.

111. MR SMITZ: In the first instance, my Lady did say the trusts were declared at 55:45, that was in fact the shareholding of the company and His Honour Judge Cooke--

112. LADY JUSTICE ARDEN: Thank you very much

113. MR SMITZ: The only other point which arises comes from a quotation from the judgment of Morison J, in <u>Clarke v Dupre</u>, where he refers, this relates to an issue which ultimately did not arise, which was whether the Court had inherent jurisdiction to relieve against forfeiture, but what Morison J said was that there was no jurisdiction in the inherent jurisdiction to relief against a wilful breach and he cited Wilson's case at page 512, overlooking at page 513 the Court of Appeal in that case referred to <u>Shiloh Spiller v Harding</u> as saying that 150 years of jurisprudence was overturned and the Court--

114. LORD JUSTICE BUXTON: I am sure my Lady is finding this all terribly helpful. As I understand it this Court made no finding or holding on that I think this is an interesting footnote.

115. LADY JUSTICE ARDEN: Mr Smitz's suggestion is that I should not set out that passage, that part of the passage was not put.

116. LORD JUSTICE BUXTON: Mr Smitz does not approve of it. I am sure my Lady will bear that in mind.

117. MR SMITZ: I only mention it because someone in the position, seek mischief by saying that the Court of Appeal is allowing--

118. LORD JUSTICE BUXTON: Mr Smitz, counsel never make mischief. We will rise for a moment to allow the Court to reconstitute itself.