# EXHIBIT 89

# Law of Guarantees

## SIXTH EDITION

By

**Geraldine Mary Andrews, QC**
*LLB, LLM (King's College London) of
Gray's Inn and Lincoln's Inn, Barrister*

**Richard Millett, QC**
*BA (Trinity Hall, Cambridge) of
Lincoln's Inn, Barrister*

**SWEET & MAXWELL**



**THOMSON REUTERS**



# Rights of the surety before payment or performance

## Rights of the surety before demand

*Is there a right to compel the creditor to pursue the principal?*
Before the surety has been called upon to perform the guaranteed obligation, but after that obligation has accrued, it has been said that the surety has the right to compel the creditor himself to press the principal for performance.[13] This right is said to arise from the equitable principle that a creditor could "be controlled and prevented from enforcing its legal right inequitably against one alone of the sureties".[14] It has also been said that the right arises in order to ensure that the principal bears the whole burden of the guaranteed debt in relief of his sureties.[15] The most commonly cited authority for the existence of this right is the obiter statement of A. L. Smith L.J. in *Rouse v Bradford Banking Co* [1894] 2 Ch. 32 at 75, where he said, in the course of explaining the reason why a surety is discharged by the giving of time to the principal:[16]

11–002

> "I apprehend that the main reason is that a surety is entitled at any time to require the creditor to call upon the principal debtor to pay off the debt, or himself to pay off the debt, and that when he has paid it off he is at once entitled in the creditor's name to sue the principal debtor, and if the creditor has bound himself to give time to the principal debtor, the surety cannot do either one or the other of these things until the time so given has elapsed, and it is said that by reason of this the surety's position is altered to his detriment without his consent."[17]

Certainly, the right did exist under Roman law, where sureties could compel the creditor to exhaust his remedies against the principal before having recourse to the sureties unless the creditor could show that this would be futile because the principal was absent or insolvent or had expressly waived their right.[18] Many jurisdictions whose domestic law is based on Roman civil law have adopted it.[19] It is this, together with the authorities cited above, which appears to have prompted the

---

[13] See *Halsbury's Laws of England* (5th edn, 2008) Vol.49, para.1131; *Rowlatt on the Law of Principal and Surety* (4th edn, 1982), pp.132–133; the views of the editors of *Rowlatt* have changed somewhat in the 5th edn (1999): see below.
[14] *Wolmershausen v Gullick* [1893] 2 Ch. 514 at 522 per Wright J.; *Dering v Earl of Winchelsea* (1787) 2 Bos. & P. 270; *Craythorne v Swinburne* (1807) 14 Ves. Jr. 160.
[15] *Anson v Anson* [1953] 1 Q.B. 636.
[16] As to which see Ch.9, paras 9–029–9–034.
[17] See Ch.9. See also *Newton v Chorlton* (1853) 10 Hare 346, per Turner V.C. at 652; *Craythorne v Swinburne* (1807) 14 Ves. Jr. 160; *Wolmershausen v Gullick* [1893] 2 Ch. 514.
[18] De Colyar, *Law of Guarantee*, (3rd edn, 1897), p.148.
[19] As have certain common law jurisdictions: a significant minority of states in the USA have adopted the doctrine of *Pain v Packard* 13 Johns (NY) 174 (1816) either judicially or by legislation. This case decided that where the defendant is merely a surety and he requests the creditor to go against a solvent principal when the debt is due, the creditor is bound to use due diligence against the principal to exonerate the surety. In New South Wales, Victoria and Western Australia, the Credit Act 1984 in some circumstances requires prior proceedings against the principal, or requires the surety and principal to be sued jointly. See O'Donovan and Phillips, *The Modern Contract of Guarantee* (2nd English edn, 2010), paras 11–29 and following.

editors of *Rowlatt on the Law of Principal and Surety* (4th edn, 1982) to depart from the views of their eminent predecessor in the 3rd edition in suggesting that the surety has an equitable right to compel the creditor to pursue the principal. It is submitted that this view is untenable, is contrary to authority, and has no basis in English law or equity. In the 5th edition of *Rowlatt*, the editors have implicitly retreated from this view, although they have said that the contrary is "still arguable".[20] The point therefore continues to merit attention.

The editors of *Rowlatt* rely strongly on the dicta of Wright J. in *Wolmershausen v Gullick* [1893] 2 Ch. 514, and the authorities cited there, including the views of Lord Eldon in *Craythorne v Swinburne* (1807) 14 Ves. Jr. 160 who decided (at 163) that *Dering v Earl of Winchelsea* (1787) 2 Bos. & P. 270 was authority for the proposition that "the creditor, who can call upon all, shall not be at liberty to fix one with the payment of the whole debt".

However, Wright J.'s remarks were directed at the surety's rights to recover contribution from his co-sureties. In that context it is true that the creditor may be prevented from imposing the entire burden of the debt on one surety alone, in the sense that equity will adjust the surety's position, if he has paid more than his pro rata burden of the debt, by giving him rights of contribution against his co-sureties. Furthermore, the surety is entitled, as against the creditor, to have his rights against his co-sureties preserved. This cannot, however, be equated with an equitable right to prevent the creditor bringing down the burden upon the surety as opposed to the principal. What Lord Eldon meant in *Craythorne v Swinburne* was that the creditor should not unduly burden one surety of several, rather than the surety instead of the principal. Indeed it is settled law that the creditor is at liberty to fix one surety with payment of the principal debt. Where the principal fails to perform his obligation when called upon to do so by the creditor, the surety, in the absence of express stipulation,[21] may not compel the creditor to sue the principal before claiming or commencing action against the surety,[22] even though he is solvent.[23] Nor is the surety entitled, at least before the creditor has made a demand of him,[24] to insist that the creditor have recourse first to securities for the obligation before suing him.[25] Nor is he entitled to insist that the creditor sues his co-sureties.[26] The surety's liability usually arises on default by the prin-

---

[20] See *Rowlatt* (5th edn, 1999), p.144; see also the discussion in O'Donovan and Phillips, (2nd English edn, 2010), paras 11–29–11–37.

[21] When rights of marshalling may arise, see para.11–015.

[22] This principle seems to have been implicitly applied in *China & South Seas Bank v Tan* [1990] 1 A.C. 536, PC and in *TSB Bank Plc v Dickson* (unreported, July 24, 1998, CA), but see *Cottin v Blane* (1795) 2 Anst. 544 and the discussion below. See also, *Re Marley* [1976] 1 W.L.R. 952; cf. *Re Mitchell Houghton Ltd* [1970] 14 C.B.R.301, Ont. Supreme Ct.

[23] In *Holl v Hadley* (1828) 5 Bing. 54, the guarantee provided that it was a condition precedent to the surety's liability that the creditor should use "utmost efforts and legal proceedings against the principal". In *Musket v Rodgers* (1839) 5 Bing. N.C. 728, the creditor undertook first to go against available securities.

[24] *Belfast Banking v Stanley* (1867) 15 W.R. 989; *Rede v Farr* (1817) 6 M. & S. 121; *Lilley v Hewitt* (1822) 11 Price 494; *Re Brown, Brown v Brown* [1893] 2 Ch. 300.

[25] *Wright v Simpson* (1802) 6 Ves. Jr. 714, where it was observed that there was no obligation on the part of the creditor of active diligence against the principal.

[26] See e.g. *McLean v Discount and Finance Ltd* (1939) 64 C.L.R. 312, at 328 per Latham C.J.

cipal, even though in certain cases a demand may be necessary.[27] Even where the surety deposits the amount of the guaranteed debt, he is still bound to indemnify the creditor against risk, delay and expense before he can compel the creditor to sue the principal.[28] Any unequal or unfair distribution of the burden of the debt between the sureties inter se is regulated by the surety's rights of contribution.[29]

The correct view of the law is, therefore, that the surety who has not paid the principal for which he is liable cannot require the creditor to proceed against the principal, or co-surety, or against any security for the debt guaranteed, before having recourse to the surety. This has the highest authority. In *Ewart v Latta* (1865) 4 Macq. 983, HL, Lord Westbury said (at 987):

> "[U]ntil [the surety] has discharged himself of his liability, until he has fulfilled his own contract, he has no right to dictate terms, to prescribe any duty or to make any demand upon his creditor."

And at 989:

> "It is quite a misapprehension of the principle of equity which entitles the surety to call upon the creditor to discuss the principal debtor. Unquestionably the surety had no such right except he undertook to pay the whole debt."

Further, in *Jackson v Digby* (1854) 2 W.R. 540, the Court of Appeal held that a surety, in the absence of circumstances to prevent him from recovering over against the principal, had no equity to restrain the creditor from proceeding against him on the grounds that he could recover against the principal. In *McLean v Discount and Finance Ltd* (1939) 64 C.L.R. 312, Latham C.J. said (at 328):

> "A creditor to whom guarantees have been given may compel any surety to pay according to his contract. He is not bound to take any steps to distribute the burden among the sureties. Thus a surety who has guaranteed the whole of the debt may be compelled to pay the whole debt even though there are other sureties."

The rationale of this principle is that it is the duty of the surety, and not that of the creditor, to ensure that the principal performs his obligations to the creditor,[30] and the creditor should be entirely at liberty to pursue whichever remedies his contract affords him, without having to adopt a course of action at the compulsion of a person who remains his debtor.[31]

In support of the "arguable" right to compel the creditor, the editors of *Rowlatt* have put forward illustrations of cases where the surety has been able to compel his creditor to exercise a particular right of recourse. *Cottin v Blane* (1795) 2

---

[27] See the discussion of when a surety's liability arises in Ch.7, paras 7–002–7–008.
[28] *Wright v Simpson* (1802) 6 Ves. Jr. 714.
[29] As to which see Ch.12.
[30] *Moschi v Lep Air Services Ltd* [1973] A.C. 331.
[31] This reflects the modern approach: see *China & South Seas Bank v Tan* [1990] 1 A.C. 536, PC.

480            *Rights of the Surety Against the Creditor*

Anstr. 544 is cited as authority for the proposition that the creditor is compellable by the surety where the creditor has the opportunity to recover the debt from the principal which is not open to the surety. In that case the surety had guaranteed due performance of a charterparty. The vessel was detained by the French government, which was prepared to pay compensation to the (neutral) American owners but not to the surety (who was not neutral). It was held that the creditor should be compelled to seek compensation from the fund before pursuing the surety. However, this decision can be justified on the basis:

(a) that the creditor was not compelled to take action against the principal, but to claim against an independent fund provided by a third party not as security for the performance of the charterparty but as compensation for its non-performance;

(b) that the fund was personal to the creditor, and the surety could never have had recourse to it even by rights of subrogation; and

(c) that relief was granted only upon the surety paying the debt into court.[32]

It is also fair to regard that case as having been decided on its own facts and as an exercise in pragmatism rather than as containing any statement of principle.[33]

In *Re Westzinthus* (1833) 5 B. & Ad. 817, the creditor held goods from the principal and from the surety to secure the guaranteed debt, and he was compelled to apply the proceeds from the principal's goods in satisfaction of the debt before the proceeds of those of the surety. However, this is an illustration of marshalling[34] rather than of any right to compel the creditor to sue the principal, the goods having been sold and the proceeds received by the creditor; it is explicable on the basis that the receipt of the proceeds constituted payment by the principal.[35] In *Ex p. Goodman* (1818) 3 Madd. 373 it was held that the sureties had an equity that the creditor should first prove his debt against the insolvent principal's estate before proceeding against the sureties' security. There is no other authority to support this proposition, and it is thought to be incorrect.[36]

In *Law v The East-India Company* (1799) 4 Ves. Jr. 824, the creditor had extracted a payment from the surety by means of duress. It was ordered to refund the amount to the surety pending the determination of the rights of the parties. This is not, as the editors of *Rowlatt* in the 4th edition said that it was, an example of the exercise of an equity by the surety against the creditor: first, the court did not compel action by the creditor against the principal, and secondly, the sum paid

---

[32] See the discussion of *Cottin v Blane* in *Rowlatt* (5th edn, 1999), and the commentary in 7–010 of this work..
[33] That was the view of Humphrey Lloyd QC in *Laing Management Ltd v Aegon Insurance Co (UK) Ltd* (1997) 86 B.L.R. 70 at 116.
[34] See para.11–015.
[35] See also *Duncan Fox and Co v North and South Wales Bank* (1880) L.R. 6 App. Cas. 1, where (at 14) Lord Selborne L.C. said that where a creditor had received the proceeds from the securities, it is difficult to distinguish the receipt of such a sum from payment on account by the principal.
[36] See O'Donovan and Phillips (2nd English edn, 2010), para.11–24. The case of *Re Westzinthus* (1833) 5 B. & Ad. 817 relates to the position after sale of the securities, when the surety may marshal them in his favour.

by the surety would in any event have been recoverable as having been paid under duress. In the 5th edition, the editors rightly recognise that *Law v The East-India Company* was a special case, turning on its own facts.

Accordingly, the suggestion that the surety has a right to compel the creditor to sue the principal is wholly at odds with the freedom of the creditor to claim against the surety. Since the weight of authority supports the principle that the creditor, in the absence of any agreement to the contrary, should not be obliged to pursue the principal before claiming from the surety, it would seem that any right to compel the creditor to pursue the principal may, in most ordinary cases, very simply be defeated by the creditor making a demand of the principal, notwithstanding that the creditor has not made a demand of the surety. Further, it is difficult to see why this right should exist universally. In many cases the guarantee will provide that the surety's liability is not to arise until the principal has defaulted or there has been a demand on the surety.[37] It would seem that in such cases, on the basis of the authorities that suggest the existence of a right in the surety to compel the creditor to pursue the principal, such a right would exist without any corresponding liability on the part of the surety having yet arisen, and where such might never arise. In such a situation there is no justification for equity to come to the assistance of the surety.

Further still, in many cases the surety may revoke the guarantee as to future liabilities,[38] and so it is hard to see to what practical use the right may be put. It is submitted, therefore, that the alleged right to compel the creditor to pursue the principal before proceeding against the surety is an invention. Lord Westbury L.C.'s notion as expressed in *Ewart v Latta* that the surety should not be entitled to dictate to the creditor has found sympathy in modern times;[39] and is consistent with guarantees being a low-cost and relatively burden-free form of personal security for the creditor.

*The right to pay off and sue*

At any time after the principal obligation has fallen due, the surety is entitled to pay off the creditor (or perform the obligation) and to sue the principal. The authority for this proposition is *Swire v Redman* (1876) 1 Q.B.D., per Cockburn C.J. (at 53).[40] Prior to the Mercantile Law Amendment Act 1856 the surety who sought to exercise this right was obliged to sue in the creditor's name, joining the

11–003

---

[37] Certainly any such right that the surety might have to compel the creditor to pursue the principal would have to be circumscribed by the contractual relationship between the creditor and the principal. For example, where the creditor has made a term loan to the principal, he may not be entitled, absent a breach of the loan contract by the principal or a clear provision in the loan agreement, to make a demand on him for the full amount until the term has expired: Paget's *Law of Banking* (13th edn, 2007) Ch.13 para. 13.1 (pp.231–232). See *Lloyds Bank Plc v Lampert* [1999] Lloyd's Rep. Bank. 138, and *Bank of Ireland v AMCD (Property Holdings) Ltd* [2001] 2 All E.R. (Comm) 894, in which the loan agreements did contain clear terms. It would seem that if the creditor was not entitled to make a demand, the surety certainly could have no right to compel him to do so.

[38] See Ch.8.

[39] See *China & South Seas Bank v Tan* [1990] 1 A.C. 536, PC, a case which concerned the creditor's obligations in respect of securities held for the debt; see also *TSB Bank Plc v Dickson* (unreported, July 24, 1998, CA); *BCCI (No.8), Re* [1997] 3 W.L.R. 909; and *Mahomed v Morris* [2000] 2 B.C.L.C. 536.

[40] See also *Rouse v Bradford Banking Co* [1894] 2 Ch. 32 at 75, namely the passage quoted at the beginning of para.11–002.