# EXHIBIT   91

# Part  2

Historical considerations and the case law

This conveniently brings me to the third argument. It is said that to apply the doctrine of accepted repudiation to leases is historically unsound. Properly analysed, that argument can in fact be seen to support the contention that the doctrine applies to leases: "historical soundness" is really a euphemism for out of date technicalities.

The notion that a lease cannot be determined by accepted repudiation is based on an old fashioned view of leases. The point was well expressed in an article by William O Douglas and Jerome Frank[11] in the Yale Law Journal in 1933:

"[T]he law of landlord and tenant went through a profound development at a time when the law of contract was only nascent and the law of property dominant. It is but natural that its roots should be found in the latter. Yet this history should not bar courts from treating leases more realistically today. To assimilate leases of modern office buildings to feudal tenure in 17th-century England is to disregard the essential elements of the bargain made, the present market economy, and the great development in contract law which has taken case since Coke wrote."

---

[11] Landlords' Claims in Reorganisations (1933) 42 Yale Law Journal 1003, at 1005.

Repudiation of Leases                                    Blundell Lecture 26th June 2000

That was an American opinion in 1933. More importantly from our point of view,
it is the modern view in England. Thus, Lord Diplock said in the United Scientific
case[12]:

> "[T]he medieval concept of rent as a service rendered by the tenant to the
> landlord has been displaced by the modern concept of a payment which a
> tenant is bound by his contract to pay to the landlord for the use of his
> land."

In 1993, an article in The Conveyancer observed: "This increasing
"contractualisation" of leases is a process which has been gathering pace in this
country for the last 20 years"[13]. This view is also to be found in the most recent
edition of Megarry & Wade[14].

The decision of the House of Lords in National Carriers[15], when contrasted with
the earlier decision in Cricklewood[16] not only shows how the law has developed in
this country in the second half of this century, but renders the argument against
determination by accepted repudiation very difficult to maintain. In Cricklewood,
decided in 1945, the majority of the Court of Appeal and two members of the
House of Lords (Lord Russell and Lord Goddard) indicated that a lease could not
be determined by frustration, essentially because a lease was an estate in land.

---

[12] United Scientific Instruments Ltd -v- Burnley Borough Council [1978] AC 904 at 935.
[13] [1993] Conv. 71 (S Bright).
[14] Law of Real Property (6th edition) para 14.003.
[15] National Carriers Ltd -v- Pandjuin (Northern) Ltd [1981] AC 675.
[16] Cricklewood Property and Investment Trust Ltd -v- Leighton's Investment Trust Ltd [1943] KB
493;[1945] AC 221

Two other members of the House of Lords (Viscount Simon LC and Lord Wright) took the opposite view. Some 40 years later, in <u>National Carriers</u> the House of Lords (by a majority of 4 to 1) reached the conclusion that a lease could be determined by frustration. This shows how the law has developed so that the contractual nature of a lease now predominates, and the normal incidents of contract will apply to leases.

<u>National Carriers</u> is also important more specifically to the present debate: if a lease can be determined by frustration, it is hard to see any argument of principle why it should not be capable of being determined by accepted repudiation. In the case of frustration, an unanticipated event puts an end to the contract, normally against the wishes of one of the parties; that is a more extreme result than the act or statement of one of the parties putting an end to the contract, only if the other party agrees.

Indeed, as a matter of principle, if (as the House of Lords have held) a lease can be determined by frustration, then it must follow that it can be determined by accepted repudiation. In his judgment in the famous <u>Hong Kong Fir</u> case[17], Diplock LJ said this:

"Where an event occurs the occurrence of which neither the parties nor Parliament expressly stated will discharge one of the parties from further performance of his undertakings. It is for the court to determine whether

---

[17] <u>Hong Kong Fir Shipping Co Ltd -v- Kawasaki Kissen Kaisha Ltd</u> [1962] 2 QB 26 at 66.

the event has this effect or not. The test whether an event has this effect or not has been stated in a number of metaphors.... This test is applicable whether or not the event occurs as a result of the default of one of the parties to the contract, but the consequences of the event is different in the two cases."

Diplock LJ went on to explain that if the event is due to the fault of one of the parties, then "the fundamental legal and moral rule that a man should not be allowed to take advantage of his own wrong"[18] means that the defaulting party cannot rely on his own default as a reason for saying the contract is at and end. Importantly, he then went on to say this:

"This branch of the common law has reached its present stage by the normal process of historical growth, and the fallacy in Mr Ashton Roskill's contention that a different test is applicable when the event occurs as a result of the default of one party from that applicable in cases of frustration where the event occurs as a result of the default of neither party lies, in my view, from a failure to view the cases in their historical context."[19]

As he explained, determination by frustration and determination by accepted repudiation are part of the same "branch of the common law", and "it is the event and not the fact that the event is a result of a breach of contract which relieves the

---

[18] ibid.
[19] ibid.

party not in default of further performance"[20]. Indeed, the point is underlined by the fact that all four members in the majority of the House of Lords in National Carriers not only decided that leases could determine by frustration, but when doing so approved the Canadian decision in the Highways Properties case[21], which decided that leases could be determined by accepted repudiation[22].

So far as other authorities are concerned, the position is as follows. In 1971, in Total Oil[23] the Court of Appeal held, relying on Cricklewood, that a lease could not be determined by accepted repudiation. However, we are now in a very different world. Cricklewood is no longer good law, and leases can be frustrated: see National Carriers. Total Oil is similarly no longer good law, according to Sedley LJ, albeit then only an Assistant Recorder: see Hussein -v- Mehlman[24]. That case, where he held that a landlord had committed a repudiatory breach, was, described in the Cambridge Law Journal as "a striking exception to the rule that county court decisions are neither reported nor of authority"[25]. In other common law or quasi-common law jurisdictions it now seems to be clear that leases can be determined by accepted repudiation: it has been so held in Australia[26], Canada[27]

---

[20] ibid. at 69.
[21] Highways Properties Limited -v- Kelly Douglas & Co. Limited (1971) 17 DLR (3d) 710 at 721.
[22] [1981] AC 675, at 690A, per Lord Hailsham, 696A-C, per Lord Wilberforce, 703A-C, per Lord Simon, and 716D-G, per Lord Roskill.
[23] Total Oil Great Britain Ltd -v- Thompson Garages (Biggin Hill) Ltd [1972] 1 QB 318.
[24] [1992] 2 EGLR 87.
[25] [1993] CLJ 212 per Charles Harpum.
[26] Progressive Mailing Co. -v- Tabali Pty Limited (1985) 157 CLR 17.
[27] Highway Properties.

and the United States[28]. The alleged conceptual and practical difficulties of leases being determined by accepted repudiation could be raised in those jurisdictions just as much as in the English jurisdiction. Why should the result be any different here?

One further fairly recent at first instance case deserves a mention to indicate how well the law of accepted repudiation ties in with landlord and tenant law. It is a well established, if somewhat controversial, doctrine that, a tenant who denies his landlord's title is liable to have his lease forfeited[29]. In a case in 1991 (the WG Clark case)[30], it was held that this doctrine was effectively equivalent to, and was to be treated in the same way as, repudiation of a contract: the denial of title was a renunciation by the tenant which the landlord could accept by forfeiting.

Avoidance of relief from forfeiture

A fourth argument is that, if a landlord can determine a lease by accepting a repudiation by the tenant, that would avoid the equitable and statutory power of the court to grant relief to the tenant. This argument involves identifying the basis upon which the estate determines if a lease can be ended by repudiation.

The easy answer is that the same problem, indeed a more difficult problem, arises with frustration, but that did not prevent the House of Lords holding that a lease could determine by frustration. The more satisfactory answer is that the

---

[28] Teller -v- McCoy 253 SE 2d 114.

[29] see e.g. Warner -v- Simpson [1959] 1 QB 297.

[30] WG Clark (Properties) Ltd -v- Dupre Properties Ltd [1992] Ch 297 at 307.

determination of the estate is effected by forfeiture, surrender or by a new sui
generis method. It does not embarrass my case to say that there is more than one
possible answer to the problem: on the contrary.

The forfeiture solution was favoured by Sedley LJ in Hussein[31] and is supported by
the WG Clark case[32]. There are obvious similarities between determination by
accepted repudiation and determination by forfeiture. If forfeiture is the correct
analysis, then either Section 146 of the Law of Property Act 1925 applies[33] or it
does not. If it does, then the tenant can seek relief under its provisions. If it does
not then there is a powerful argument for saying that there would be an inherent
equitable jurisdiction to grant relief. If statute has not intervened, then there is
nothing to stand in the way of equity doing so[34]. The fact that it may represent an
extension of the equitable jurisdiction should not cause concern: equity is not past
child-bearing[35], and if the law develops to extend repudiation to leases, why should
equity not develop as well, especially in light of its wide powers to grant relief[36].

There is a powerful case for saying that the determination of the estate in a case of
accepted repudiation is not by forfeiture, but by surrender or an arrangement
similar to surrender. At first sight, of course, repudiation appears closer to
forfeiture, because each involves a breach by one party, which gives the other party

---

[31] [1992] 2 EGLR 87 at 90J.
[32] see WG Clark [1992] Ch 297.
[33] as was held in WG Clark [1992] Ch 297 at 309.
[34] Official Custodian for Charities -v- Parkway Estates Developments Ltd [1985 Ch 151 at 153F-166F
and Billson -v- Residential Apartments Ltd [1992] 1 AC 494 at 516D-519D, 520C-522H.
[35] Re Murphy [1998] 3 All ER 1 at 10e.
[36] see e.g. BICC Ltd -v- Burndy Corporation [1985] Ch 232 and Johnson -v- Johnson [1989] 1 WLR
1026.

a right to determine. However, apart from the fact that repudiation can apply either way as between landlord and tenant, whereas a tenant cannot ever forfeit his landlord's interest, the essential difference between determination by forfeiture and determination by accepted repudiation is that forfeiture is a determination in accordance with the express terms of the lease: it has been catered for by the parties. As the observations I have quoted from Diplock LJ in Hong Kong Fir demonstrate, the whole point of determination by accepted repudiation (or by frustration) is that it is extra-contractual. In that sense, it is like a surrender.

Determination by repudiation is like surrender for another important reason. Like a surrender, a determination by accepted repudiation can be said to involve each party communicating to the other a desire and intention to put an end to the lease. The repudiating party either expressly (by renunciation) or impliedly (by committing a breach which goes to the root of the contract) evinces an intention no longer to be bound by the contract, but the contract only comes to an end if and when the other party unequivocally communicates his acceptance that the contract is at an end. As it is of the essence of determination by repudiation that the repudiation has to be accepted, there is force in the notion that the estate is effectively surrendered when the repudiation on the part of a tenant or landlord is accepted by the landlord or tenant. As was very recently said by Lord Millett in Barrett -v- Morgan[37]:

---

[37] [2000] 1 All ER 481 at 485C-E.

08-13555-mg    Doc 45468-7    Filed 07/31/14    Entered 07/31/14 17:14:52    Exhibit 91
Part 2 of 2    Pg 10 of 22
Repudiation of Leases                                    Blundell Lecture 26th June 2000

> "A surrender is ineffective unless the landlord consents to accept it, and is therefore consensual in the in the fullest sense of the term. ...It is because the landlord... has not, by granting the tenancy, previously agreed that the tenant should have the right to surrender the tenancy prematurely that the landlord's consent is necessary."

Given that determination of a lease in a case of repudiation can be said to involve both parties mutually communicating, by word or deed, the desire to put an end to the lease, it may be that it leads to an actual surrender of the lease.

If that is the right analysis then there would be no room for relief for the tenant or the landlord. That is not a particularly startling or unfair result. The principle unfairness of forfeiture without relief is that the forfeiture clause can be implemented for relatively slight breaches. Repudiatory breaches are, by definition very serious. Particularly if leases can only determine by repudiation rarely, the breaches would have to be particularly substantial, and the absence of a right to relief would not be particularly unjust.

The same conclusion applies, I think, if the determination of the estate in the case of repudiation is neither by forfeiture or surrender, but is sui generis.

The argument based on third party rights

I turn to the fifth argument that might be raised, which is based more on practicalities than principle. It is that many leases are subject to inferior interests such as mortgages and underleases, and the position of mortgagees and under tenants would be quite unsatisfactory or quite uncertain if a lease could be determined by accepted repudiation. Once again, a good, if not intellectually satisfactory, answer is that this argument applies equally to determination of a lease by frustration. Yet, as I have said, there can be no doubt now that it is the law that a lease can be determined by frustration, and the consequences for third parties with derivative interests remain to be decided by the court. However, merely to shelter behind that answer would be cowardly.

The substantive answer is that, whether the determination is by forfeiture, surrender or sui generis does not matter: third party rights are protected. If, the proper analysis is that the estate is forfeited, then owners of inferior interests have all the rights given by Section 146 to apply for relief as they would have had if the estate had been forfeited. If the proper analysis is that the estate is surrendered, then any inferior interests are preserved by Section 139 of the Law of Property Act 1925, in the same way as they are preserved in the event of any other surrender. This is not an unjust result in practice: if the landlord repudiates and the tenant accepts the repudiation, the landlord can scarcely complain if he is "landed" with any inferior interest; if the tenant repudiates, it is not as if he has forced any inferior

interests on the landlord, because it is up to the landlord whether to accept the tenant's repudiation or not.

What if it is wrong to characterise the effect of the repudiation as a forfeiture or surrender of the estate, so that the determination is sui generis? Lord Millett in Barrett shows why inferior interests will not be detrimentally affected by the determination of the leasehold estate by accepted repudiation. He said this[38]:

> "Although a person such as a sub-tenant having a derivative interest may benefit by the surrender and consequent extinguishment of the estate out of which his interest is derived, he cannot be prejudiced by it. It is a general and salutary principle of law that a person cannot be adversely affected by an agreement or arrangement to which he is not a party. So far as he is concerned, it is res inter alios acta. It would conflict with this principle if the destruction of a tenancy by surrender carried with it the destruction of the interest of a sub-tenant under a sub-tenancy previously granted. It has been clear from the earliest times that it does not do so."

Those observations suggest that, if determination by accepted repudiation does not result in forfeiture, then, whether the estate is determined by surrender or on some other similar, albeit sui generis, basis does not matter. The determination is by a quasi-consensual extra-contractual arrangement between landlord and tenant, and it will not detrimentally affect the rights of third parties, such as mortgagees and

---

[38] [2000] 1 All ER 481 at 485H-J.

sub-tenants. The only sensible way in which their rights could be preserved, of course, would be if their interests were accelerated effectively in the way that Section 139 of the 1925 Act provides.

## Repudiation and the forfeiture clause

A sixth argument against determination by accepted repudiation is that it is said to be inconsistent with the existence of a forfeiture clause, which, of course, almost all leases contain. As a point of principle, this has no merit. First, it does not deal with the point as one of principle. There must be commercial contracts subject to determination provisions; in such cases a similar problem as to the application of the doctrine of accepted repudiation could arise. Secondly, the argument does not deal with the case of leases, which are still not infrequent, which have no forfeiture clause. Thirdly, no lease contains a forfeiture clause in favour of the tenant, and therefore the argument does not even begin to address the question of repudiation by the landlord.

Perhaps a more difficult question, which does not go to the principle being debated today, but merely how it is to be applied, is the interrelation of a landlord's right to forfeit and a landlord's right to treat the tenant as being in repudiatory breach. I suggest that the two rights can co-exist, as has been concluded by the High Court of Australia[39]. A forfeiture clause can be implemented by a landlord for any breach, however trivial; as I have mentioned, repudiation can only arise where a

---

[39] Progressive Mailing House Property Ltd -v- Tabali Property Ltd (1985) 57 ALR 609.

party either renounces the contract or where his breach is so substantial that it goes
to the root of the contract.

## The damages argument

If a landlord forfeits a lease, he cannot recover damages which flow from his
election to forfeit, even though he could obviously argue that he would not have
been able to forfeit unless the tenant had been in breach[40]. If, however, a lease
were determinable by repudiation on the part of the tenant which is accepted by the
landlord, then, unless a special rule applies to leases, the landlord would be able to
claim damages which resulted from the lease being determined. I suppose that it
might be contended that, as the determination of the lease by repudiation results
that the lease being surrendered, this normal rule would not apply.

However, assuming that that contention is wrong, I do not see this as giving rise to
a valid, seventh, argument against determination by repudiation. This is not an
unfair result: the landlord would be under a duty to mitigate his loss in the normal
way - e.g. by re-letting). Nor is this an "anti-tenant" conclusion: a concomitant
right to damages would be equally available to a tenant who had accepted a
repudiatory breach by the landlord. In any event, it would put a repudiator of a
lease in no worse and no better a position than a repudiator of any contract of a
continuing nature. Indeed, it would mean that a liability of a repudiating tenant for
damages would be effectively the same as the liability of a tenant whose liquidator

---

[40] Hanson -v- Newman [1934] Ch 298.

disclaims the lease - see Section 178 of the Insolvency Act 1986. As was said by
Lord Millett in <u>Re Park Air Services PLC</u>[41], a disclaimer gives the landlord "an
immediate right to prove for the loss or damages which he has suffered in
consequence of the operation of the disclaimer, that is to say in consequence of the
determination of the lease and the acceleration of the reversion". He then went on
to explain that such compensation is calculated in the same way as common law
damages[42].

## Present remedies sufficient

The eighth argument raised against the doctrine applying to leases is that the
present remedies are sufficient. The obvious answer to that is that, while a
landlord normally has a right to forfeit, a tenant has no such right. It ought not be
the law that a tenant should always be forced to bring proceedings for damages or
specific performance against a persistently and seriously bad landlord and that,
even in an appropriate case, that he should have no opportunity of treating the
landlord as being in repudiatory breach.

Given that almost every landlord has the benefit of a forfeiture clause, I accept that
the case is less forceful so far as a bad tenant is concerned. However, there are
instances where it would be right for a landlord to be able to put an end to a lease
where the tenant has been guilty of very bad behaviour. It is not hard to think of

---

[41] [1999] 1 All ER 673 at 679E.
[42] [1999] 1 All ER 673 at 679H

08-13555-mg    Doc 45468-7    Filed 07/31/14    Entered 07/31/14 17:14:52    Exhibit 91
Part 2 of 2    Pg 16 of 22
Repudiation of Leases                                          Blundell Lecture 26th June 2000

cases where a landlord should not have to go through the cost and delay involved

in a Section 146 Notice and fighting an application for relief from forfeiture.

Further, there will be cases where the landlord should be forced by an

unscrupulous tenant to elect between keeping a beneficial lease with a bad tenant

or forfeiting: in such cases it would be positively just that a landlord should be

entitled to damages for premature determination of the lease, as with any other

contract.

While on the question of policy, I can see a powerful argument, once again

mirroring the approach of the House of Lords in National Carriers relating to

frustration, for concluding that, while a lease can be determined by accepted

repudiation, it would be a comparatively rare case which justified such a

conclusion.

### Long leases

An ninth argument, leading on from this, which is sometimes raised, is that it is

offensive to think that a tenant may be at risk of the court holding that a 999 year

lease at a very low rent with few, if any covenants, could be at risk of being

determined through accepted repudiation, without any equivalent of a right to

apply for relief from forfeiture. I accept that it would be unsatisfactory if there was

a risk of such a lease being determined by accepted repudiation, save in very

exceptional circumstances. However, even assuming that there is no possibility of

applying for relief, I would suggest that that does not, indeed cannot, go to the

question of whether a lease is capable of being determined by accepted repudiation. It is more a reason for concluding, as I have just mentioned, that, while the doctrine of determination by accepted repudiation can apply to leases, it should only be applied in comparatively rare circumstances. Indeed, this was the view of the House of Lords in <u>National Carriers</u>, so far as determination of leases by frustration is concerned[43]. Lord Simon addressed the point in these terms:

"[I]t would be only in exceptional circumstances that a lease for as long 999 years would in fact be susceptible of frustration."

Once one appreciates that the law and principles relating to determination by frustration and determination by accepted repudiation are part of the same branch of the common law, it must follow that, if frustration can only rarely apply (as the House of Lords held), then repudiation can only rarely apply, to leases.

Legitimate expectation

A tenth and final reason which may be advanced for concluding that the doctrine of accepted repudiation cannot apply to leases is that many lessors and lessees will have entered into their relationship on the common assumption that the law is such that their lease cannot be so determined.

---

[43] see [1981] AC 675 at 697A per Lord Wilberforce and 701F per Lord Simon, quoted above.

That is a very unattractive argument. Determination by accepted repudiation only arises where the repudiating party behaves in a way which the other party reasonably would not expect - first because it is inconsistent with their contractual arrangement, and secondly, by definition, because it is something for which the parties have not expressly catered for (see again per Diplock LJ in the passage which I cited from Hong Kong Fir). For the repudiating party to turn round and say that he behaved in such a way in the confident belief that the doctrine of repudiation did not apply to leases is unmeritorious, to say the least.

Quite apart from this, since 1980, when the decision in National Carriers was given, and even more since 1992, when Sedley LJ decided Hussein, prospective lessors and lessees, and their advisers, should have been aware that there was, to put it at its lowest, a risk that the law of accepted repudiation would apply to leases.

As the House of Lords have emphasised in more than one recent decision, the court should be slow to uphold principles or beliefs which are wrong, merely because parties have acted in reliance on them, particularly when the party seeking to invoke the wrong principle or belief has little merit[44].

---

[44] see e.g. Hindcastle Ltd -v- Barnborough Attenborough Associates Ltd [1997] AC 70 and Sudbrook Trading Estate Ltd -v- Eggleton [1983] 1 AC 444

Concluding comments

Finally, may I consider the matter a little more widely. The difference between a lease and a licence is that the former gives exclusive possession to the occupier, whereas the latter merely gives the right to occupy. The distinction is rather fine, and is understood only by lawyers (and not by many of them). However, the distinction is well established and it does lead to differences between leases and licences. The same thing may be said about the difference between leases of property and time charterparties of ships: they both grant terms to enjoy the relevant property in return for payment and other covenants. Once again, there are historical, and indeed commercial, reasons for differences in the law applicable to the two sorts of interest.

Time charterparties of ships and licences of land[45], can be determined by accepted repudiation. Why should that not be true of leases? Unless legal analysis or practical considerations absolutely require it, it is a little difficult to see why a licence or a time charterparty should be capable of determination by accepted repudiation just like any other contract, whereas a lease should be absolutely incapable of such determination in any circumstances. If there are clear and cogent reasons for such a distinction, so be it. However, as I hope this talk has demonstrated, there are no such convincing reasons.

---

[45] Krell -v- Henry [1903] 2 KB 740 shows licences may be frustrated: it must follow that they can be determined by accepted repudiation.

Once again, I draw support for the analogy of licences and charter parties from observations in National Carriers: Lord Simon referred to the fact that "the distinction between a licence and a lease is notoriously difficult to draw" and went on to say that "when it comes to the application of a doctrine imported to secure justice [it is] even more difficult to justify"[46]. Lord Roskill referred to the illogically of the situation if the lease could not be determined by frustration, whereas a charterparty could[47].

The argument that a lease cannot be determined by accepted repudiation because it is an estate in land does not, I would suggest, bear analysis. The essence of the argument is that the estate in land and the contractual aspect are indissolubly entwined and, as an estate cannot be determined by an accepted repudiation, the doctrine of accepted repudiation cannot apply to leases. First, there is no inherent reason why the estate should not be determined by accepted repudiation. Secondly, in any event, now that a lease is to be treated primarily as contractual in nature, the argument involves letting the estate tail wag the contractual dog or, if I may stick with my original zoological metaphor, letting the duck bill wag the platypus. I accept that the contractual aspects of a lease and the fact that it is an estate are indissolubly entwined. Indeed, I rely on it. The modern law clearly indicates that the contractual aspect is to prevail, and, as the contractual aspect and estate are insolubly entwined, if the contractual aspect goes by accepted repudiation, the estate goes with it.

---

[46] [1981] AC 675 at 702A.
[47] see at [1981] AC 675 at 705D.

I end with a quotation which encapsulates my case: it shows how modern courts approach the issue and it has been specifically quoted and approved by the House of Lords[48]. In Highway Properties,[49] Laskin J said

> "It is no longer sensible to pretend that a commercial lease... is simply a conveyance and not also a contract. It is equally untenable to persist in denying resort to the full armours of remedies ordinarily available to redress repudiation of covenants, merely because the covenants may be associated with an estate in land."

**Sir David Neuberger**

---

[48] National Carriers [1981] AC 675, at 696B per Lord Wilberforce at 703B and per Lord Roskill at 716E-F.
[49] [1971] 17 DLR 3d) 710 at 721.