# EXHIBIT 92

THE COMMON LAW LIBRARY

# CHITTY ON CONTRACTS

THIRTY-FIRST EDITION

Volume I

**GENERAL PRINCIPLES**



SWEET & MAXWELL        THOMSON REUTERS

08-13555-mg    Doc 45468-8    Filed 07/31/14    Entered 07/31/14 17:14:52    Exhibit 92
Pg 3 of 5

**24-012**          Chap. 24—Discharge by Breach

obligations where that failure is attributable to his attempt to comply with the fresh stipulation.[90]

**24-013**    **Acceptance of repudiation.** Where there is an anticipatory breach, or the breach of an executory contract, and the innocent party wishes to treat himself as discharged, he must "accept the repudiation".[91] An act of acceptance of a repudiation requires no particular form.[92] It is usually done by communicating the decision to terminate to the party in default,[93] although it may be sufficient to lead evidence of an:

> "Unequivocal overt act which is inconsistent with the subsistence of the contract ... without any concurrent manifestation of intent directed to the other party."[94]

In an appropriate case an acceptance of a repudiation may take the form of reliance on a contractual term which entitles the innocent party to terminate the contract. Where the conduct of the party in breach is such as to entitle the

---

[90] *B.V. Oliehandel Jonglarid v Coastal International Ltd* [1983] 2 Lloyd's Rep. 463.

[91] *Heyman v Darwins Ltd* [1942] A.C. 356, 361. The appropriateness of the word "acceptance" has, however, been questioned: Smith, "Anticipatory Breach of Contract" in Lomnicka and Morse (eds), *Contemporary Issues in Commercial Law: Essays in Honour of A.G. Guest*, pp.175, 184–188.

[92] *Vitol SA v Norelf Ltd* [1996] A.C. 800, 810–811; *Stocznia Gdanska SA v Latvian Shipping Co* [2001] 1 Lloyd's Rep. 537, 563, 566. (Where the acceptance took the form of a notice to rescind which was in fact invalid. The important fact was held to be that the letter which constituted the acceptance unequivocally stated that the contractual obligations were at an end. The claimants had a right to terminate the contract and the fact that they did not set that ground out in the letter which constituted the acceptance was held to be irrelevant. The analysis of Thomas J. was upheld by the Court of Appeal but not without some hesitation: see [2002] EWCA Civ 889, [2002] 2 Lloyd's Rep. 436 at [88]–[92]. The safest course of action would have been for the innocent party expressly to have reserved its common law rights.) The latter case demonstrates that an invalid invocation of a right to terminate contractually, on account of a breach of contract, is capable of amounting to an acceptance of a repudiatory breach if it unequivocally demonstrates an intention to treat the contractual obligations as at an end. Given that the same conduct is capable of giving rise both to a contractual right to terminate and to a common law entitlement to accept a repudiatory breach, recourse to the former does not necessarily constitute an affirmation of the contract since in both cases the innocent party is electing to terminate the contract (see also *Gold Group Properties Ltd v BDW Trading Ltd* [2010] EWHC 1632 (TCC), [2010] All E.R. (D) 18 (Jul) at [110]). Matters are otherwise, however, in the case where a termination notice makes explicit reference only to a particular contractual clause. In such a case the notice might demonstrate that the giver of the notice was only relying upon the contractual clause and was not intending to accept the repudiation: *Shell Egypt West Manzala GmbH v Dana Gas Egypt Ltd* [2010] EWHC 465 (Comm), [2010] All E.R. (D) 156 (Mar) at [31].

[93] *Heyman v Darwins Ltd* [1942] A.C. 356, 361; *The Mihalis Angelos* [1971] 1 Q.B. 164, 204. The innocent party need not personally, or by an agent, notify the repudiating party of his election to treat the contract as at an end. It is sufficient that the fact of the election is brought to the attention of the repudiating party, for example, by notification by an unauthorised broker or by another intermediary may be sufficient: *Vitol SA v Norelf Ltd* [1996] A.C. 800, 811.

[94] *State Trading Corp of India Ltd v M. Golodetz Ltd* [1989] 2 Lloyd's Rep. 277, 286; *Holland v Wiltshire* (1954) 90 C.L.R. 409, 416. See also Dawson [1981] C.L.J. 83, 103. cf. *Vitol SA v Norelf Ltd (The Santa Clara)* [1993] 2 Lloyd's Rep. 301, 304 where Phillips J. preferred to leave open the question whether "an innocent party can accept an anticipatory repudiation by conduct which is not communicated to the party in anticipatory breach". When deciding whether or not inconsistent actions amount to an acceptance of a repudiation, the courts apply an objective test: *Enfield London BC v Sivanandan* [2004] EWHC 672 (QB), [2004] All E.R. (D) 73 (Apr) at [38]–[39].

[1706]

innocent party to terminate the contract either pursuant to a term of the contract or under the general law, the innocent party is not required to elect between its two rights to terminate and so can be treated as having terminated the contract both under the appropriate term of the contract and in accordance with its rights at common law.[95] Unless and until the repudiation is accepted the contract continues in existence for "an unaccepted repudiation is a thing writ in water".[96] Acceptance of a repudiation must be clear and unequivocal[97] and mere inactivity or acquiescence will generally not be regarded as acceptance for this purpose.[98] But there may be circumstances in which a continuing failure to perform will be sufficiently unequivocal to constitute acceptance of a repudiation. It all depends on "the particular contractual relationship and the particular circumstances of the case".[99] An example of a failure to perform which has been suggested as sufficient to constitute an acceptance is the following:

> "Postulate the case where an employer at the end of the day tells a contractor that he, the employer, is repudiating the contract and that the contractor need not return the next day. The contractor does not return the next day or at all. It seems to me that the contractor's failure to return may, in the absence of any other explanation, convey a decision to treat the contract as at an end."[100]

The requirement that the acceptance be communicated "clearly and unequivocally" is likely to mean that it is only where there has been a failure to carry out an act in relation to the party in breach that silence or inactivity will be

---

[95] *Dalkia Utilities Services Plc v Celtech International Ltd* [2006] EWHC 63 (Comm), [2006] 1 Lloyd's Rep. 599 at [135]–[144].

[96] *Howard v Pickford Tool Co* [1951] 1 K.B. 417, 421. See also *Cranleigh Precision Engineering Ltd v Bryant* [1965] 1 W.L.R. 1293; *Thomas Marshall (Exports) Ltd v Guinle* [1979] Ch. 227; *Gunton v Richmond-on-Thames LBC* [1981] Ch. 448; *London Transport Executive v Clarke* [1981] I.C.R. 355; *State Trading Corp of India Ltd v M. Golodetz Ltd* [1989] 2 Lloyd's Rep. 277, 285; *Boyo v Lambeth LBC* [1994] I.C.R. 727 (although it should be noted that the court was rather reluctant to follow *Gunton*; see in particular the judgment of Staughton L.J. (747)); *Geys v Societe Generale London Branch* [2011] EWCA Civ 307, [2011] I.R.L.R. 482 (where the Court of Appeal noted the disquiet expressed in *Boyo* and observed (at [18]) that there was the possibility of an appeal to the Supreme Court "to reconsider this area of the law and hold that, in the context of employment law, a repudiatory dismissal of an employee in breach of contract will by itself terminate the contract even if the repudiation is not accepted"). cf. *Savage v Sainsbury Ltd* [1981] I.C.R. 1; and see Vol.II, para.39-188 (contracts of employment).

[97] *Harrison v Northwest Holt Group Administration* [1985] I.C.R. 668; *Boyo v Lambeth LBC* [1994] I.C.R. 727; *Vitol SA v Norelf Ltd* [1996] A.C. 800; *Holland v Glendale Industries Ltd* [1998] I.C.R. 493; *Sookraj v Samaroo* [2004] UKPC 50 at [17]; *South Caribbean Trading Ltd v Trafigura Beheer BV* [2004] EWHC 2676 (Comm), [2005] 1 Lloyd's Rep. 128 at [129]–[130]; *Banham Marshall Services Unlimited v Lincolnshire CC* [2007] EWHC 402 (QB), [2007] All E.R. (D) 02 (Mar) at [52]; *BSkyB Ltd v HP Enterprise Services UK Ltd* [2010] EWHC 86 (TCC), 129 Con. L.R. 147 at [1373].

[98] *Denmark Productions Ltd v Boscobel Productions Ltd* [1969] 1 Q.B. 699, 732; *State Trading Corp of India Ltd v M. Golodetz Ltd* [1989] 2 Lloyd's Rep. 277, 286; *Lefevre v White* [1990] 1 Lloyd's Rep. 569, 574, 576.

[99] *Vitol SA v Norelf Ltd* [1996] A.C. 800, 811. In such a case the contractor may be absolved from his contractual obligation before he communicates his acceptance: *Potter v RJ Temple* [2003] All E.R. (D) 327 (Dec).

[100] *Vitol SA v Norelf Ltd* [1996] A.C. 800, 811.

**24-013**      CHAP. 24—DISCHARGE BY BREACH

sufficiently unequivocal for this purpose. Where the silence or inactivity relates to the performance of a contract to which the party in breach is not privy then it is unlikely that silence will be sufficiently unequivocal.[101] Once a repudiation has been accepted, the acceptance cannot be withdrawn.[102] If the parties thereafter resume performance of the contract, their rights are governed by a new contract, even if the terms remain the same.[103]

**24-014**      **No reason or bad reason given.** The general rule is well established that, if a party refuses to perform a contract, giving a wrong or inadequate reason or no reason at all, he may yet justify his refusal if there were at the time facts in existence which would have provided a good reason, even if he did not know of them at the time of his refusal.[104] Thus when an employee brings an action against his employer, alleging that he has been wrongfully dismissed, the employer can rely on information acquired after the dismissal when seeking to justify the dismissal.[105] The general rule is the subject of a number of exceptions. First, a party cannot rely on a ground which he did not specify at the time of his refusal to perform "if the point which was not taken could have been put

---

[101] *Jaks (UK) Ltd v Cera Investment Bank SA* [1998] 2 Lloyd's Rep. 89, 96 (where the party alleged to be in breach was the bank under a letter of credit but the inactivity related to the non-performance of the contract of sale).

[102] *Scarf v Jardine* (1882) 7 App. Cas. 345, 361; *Motor Oil Hellas (Corinth) Refineries SA v Shipping Corp of India* [1990] 1 Lloyd's Rep. 391, 398. cf. Vold (1926) 5 Texas L. Rev. 9.

[103] *Aegnoussiotis Shipping Corp of Monrovia v A/S Kristian Jebsens Rederi of Bergen* [1977] 1 Lloyd's Rep. 268, 276.

[104] *Ridgway v Hungerford Market Co* (1835) 3 A. & E. 171, 177, 178, 180; *Baillie v Kell* (1838) 4 Bing N.C. 638; *Boston Deep Sea Fishing and Ice Co v Ansell* (1888) 39 Ch D 339, 352, 364; *Taylor v Oakes Roncoroni Co* (1922) 127 L.T. 267, 269; *British & Beningtons Ltd v N.W. Cachar Tea Co* [1923] A.C. 48, 71; *Etablissements Chainbaux S.A.R.L. v Harbormaster Ltd* [1955] 1 Lloyd's Rep. 303, 314; *Universal Cargo Carriers Corp v Citati* [1957] 2 Q.B. 401, 443–445; affirmed in part [1957] 1 W.L.R. 979, and reversed in part [1958] 2 Q.B. 254; *Denmark Productions Ltd v Boscobel Productions Ltd* [1969] 1 Q.B. 699, 722, 732; *The Mihalis Angelos* [1971] 1 Q.B. 164, 195, 200, 204; *Cyril Leonard & Co v Simo Securities Trust* [1972] 1 W.L.R. 80, 85, 87, 89; *Scandinavian Trading Co A/B v Zodiac Petroleum SA* [1981] 1 Lloyd's Rep. 81, 90; *State Trading Corp of India Ltd v M. Golodetz Ltd* [1988] 2 Lloyd's Rep. 182; *Sheffield v Conrad* (1988) 22 Con. L.R. 108; *South Caribbean Trading Ltd v Trafigura Beheer BV* [2004] EWHC 2676 (Comm), [2005] 1 Lloyd's Rep. 128 at [133]–[134]. The latter case demonstrates that there are limits to the willingness of the courts to speculate about the reaction of the innocent party to the breach of which he was unaware. In *Reinwood Ltd v L Brown & Sons Ltd* [2008] EWCA Civ 1090, [2009] B.L.R. 37 Lloyd L.J. observed (at [51]) that, although the principle is often used in relation to facts unknown to the party refusing at the time of its refusal, there "is no reason why it should not be used in relation to facts which were known to that party at that time. Waiver can apply to qualify that principle, but only in cases of, in effect, estoppel". Care must be also taken when applying the general rule to cases in which it is alleged that the repudiatory breach takes the form of a renunciation. In such a case an essential ingredient of the words or conduct amounting to a repudiation is that they are communicated to or otherwise known to the innocent party. If they are not, there cannot be a renunciation: *Seadrill Management Services Ltd v OAO Gazprom* [2009] EWHC 1530 (Comm), [2010] 1 Lloyd's Rep. 543 at [265].

[105] *Ridgway v Hungerford Market Co* (1835) 3 A. & E. 171; *Baillie v Kell* (1838) 4 Bing N.C. 638; *Boston Deep Sea Fishing and Ice Co v Ansell* (1888) 39 Ch D 339; *Cyril Leonard & Co v Simo Securities Trust* [1972] 1 W.L.R. 80. The rule does not apply in cases of *unfair* dismissal: *Earl v Slater & Wheeler (Airline) Ltd* [1973] 1 W.L.R. 51; *W. Devis & Sons Ltd v Atkins* [1977] A.C. 931; cf. *Polkey v A.E. Dayton Services Ltd* [1988] A.C. 344; Vol.II, para.39–222.