# EXHIBIT 93

A    The term "place where the harmful event occurred" in article 5(3) of
the Convention of 27 September 1968 on Jurisdiction and the Enforcement
of Judgments in Civil and Commercial Matters must be interpreted as not
referring to the place where the victim claims to have suffered financial
loss consequential on initial damage arising and suffered by him in another
contracting state.

B                    [Reported by MICHAEL HAWKINGS ESQ., Barrister]

C

<hr>

[COURT OF APPEAL]

ESCALUS PROPERTIES LTD. v. ROBINSON AND OTHERS

D                    SAME v. DENNIS AND OTHERS

SAME v. COOPER-SMITH AND ANOTHER

SINCLAIR GARDENS INVESTMENTS (KENSINGTON) LTD.
v. WALSH AND OTHERS

E
1994   Nov. 29, 30;                         Nourse, Roch and Henry L.JJ.
       Dec. 1;
1995   March 30

*Landlord and Tenant—Forfeiture of lease—Relief from forfeiture—
Long lease granted for premium at low rent—Lease mortgaged by
subdemise—Tenant defaulting with mortgage payments and pay-*
F    *ments of rent and service charges—Terms on which mortgagee
entitled to relief—Whether landlord entitled to mesne profits—
Whether "rent" including service charge deemed by lease to be sum
due by way of additional rent—Law of Property Act 1925 (15 &
16 Geo. 5, c. 20), s. 146(2)(4)—Supreme Court Act 1981 (c. 54),
s. 38(1)(2)—County Courts Act 1984 (c. 28), s. 138(2)(9A)(9B)
(as inserted by Administration of Justice Act 1985 (c. 61),*
G    *s. 55(4))*

Each case concerned a claim by a mortgagee by subdemise for
relief against the forfeiture of a long leasehold interest in
residential property granted for a premium and at a low rent. The
various tenants had all mortgaged their properties and defaulted
in making mortgage payments as well as those required under the
leases, being arrears of rent and in three of the cases arrears of
H    service charges. In two of the cases where there were arrears of
service charges the leases contained provisions deeming such
charges to be sums due by way of additional rent and recoverable
as such, but in none of the leases was the service charge reserved
as rent by the reddendum. The landlords commenced possession

**Escalus Properties Ltd. v. Robinson (C.A.)**                    **[1996]**

proceedings, the mortgagees in all cases being joined as defendants   A
in the actions and the tenants taking no part in the proceedings.
The landlords conceded that the mortgagees were entitled to relief
against forfeiture but only as from the date of the court's order
and on terms that they paid all arrears of rent and service charges
up to the date of forfeiture and mesne profits thereafter until the
date of the order. In two of the cases the landlords brought their
actions in the county court and the mortgagees sought relief to
be granted retrospectively under section 138 of the County Courts   B
Act 1984.[1] In the third case the action was brought in the High
Court, similar relief being sought under section 38 of the Supreme
Court Act 1981.[2] In the fourth case the landlord, not being able
to rely on section 138 of the Act of 1984 because there were
arrears of service charges which were not deemed by the lease to
be additional rent, proceeded in the county court claiming
entitlement to retrospective relief under section 146 of the Law of   C
Property Act 1925.[3] The mortgagees were granted relief
retrospectively on terms that all arrears owing under the leases
and costs, but not mesne profits, were paid by them.

On appeal by the landlords:—

*Held,* dismissing the appeals, (1) that "rent" in section 138 of
the County Courts Act 1984 and section 38 of the Supreme Court
Act 1981 referred to a periodical sum paid in return for the
occupation of land, issuing out of the land and for non-payment   D
of which a distress was leviable; and that a lease, by providing
that the service charge should be deemed to be sums due by way
of additional rent, invested the charge with the character of rent
and, notwithstanding an omission to reserve it as rent in the
reddendum, it was for the purposes of claiming the relief to be
treated as such (post, pp. 243G–244A).

(2) That in proceedings in either the High Court or the county
court brought by a landlord for forfeiture of a lease for non-   E
payment of rent by the tenant, the mortgagee of the property was
entitled under section 38 of the Supreme Court Act 1981 or under
section 138 of the County Courts Act 1984 respectively to
retrospective relief against forfeiture on payment to the landlord
of all arrears; and that, accordingly, where retrospective relief was
sought by the mortgagees as underlessees and where the sums
owing by the tenants to the landlord were solely in respect of   F
arrears of rent, the mortgagees were entitled to relief in the form
of reinstatement of the lease and without incurring liability to pay
mesne profits to the landlords (post, pp. 244D–F, H–245A, 246A–E).

*United Dominions Trust Ltd. v. Shellpoint Trustees Ltd.* [1993]
4 All E.R. 310, C.A. applied.

(3) That the relief granted by section 138 of the County
Courts Act 1984 was restricted to cases of forfeiture for non-   G
payment of rent and had no application to the case where there
were arrears of service charges not deemed by the terms of the
lease to be additional rent; that under section 146(2) of the Law

[1] County Courts Act 1984, s. 138: "(2) If the lessee pays into court not less than five
clear days before the return day all the rent in arrear and the costs of the action, the action
shall cease, and the lessee shall hold the land according to the lease without any new
lease. . . . (9A) Where the lessor recovers possession of the land at any time after the making   H
of the order under subsection (3) . . . the lessee may . . . apply to the court for relief; . . .
(9B) Where the lessee is granted relief on an application under subsection (9A) he shall hold
the land according to the lease without any new lease."
[2] Supreme Court Act 1981, s. 38: see post, p. 245C–D.
[3] Law of Property Act 1925, s. 146(2)(4)(5)(11): see post, pp. 246G–247E.

**Q.B.**                    Escalus Properties Ltd. v. Robinson (C.A.)

A       of Property Act 1925 the court had a discretion to grant
        retrospective relief in appropriate circumstances to "the lessee"
        against forfeiture for breach of covenant and under section 146(4)
        to grant relief to "a person claiming as underlessee" but only as
        from the date of the order granting it; that the definition of a
        "lessee" in section 146(5)(b) of the Act of 1925 included persons
        deriving title "under a lessee" and as such included those persons
        such as mortgagees who acquired their estate by way of subdemise;

B       and that, accordingly, where arrears of service charges, not
        deemed under the lease to be additional rent, had accrued the
        mortgagee was entitled to the relief given by section 146(2) of the
        Act of 1925 to the same extent as he would have been under
        either section 138 of the County Courts Act 1984 or, in respect of
        proceedings in the High Court, under section 38 of the Supreme
        Court Act 1981 (post, pp. 250c–G, 251B–G).

C       *Nind v. Nineteenth Century Building Society* [1894] 2 Q.B. 226,
        C.A. not followed.


        The following cases are referred to in the judgment of Nourse L.J.:

        *Abbey National Building Society v. Maybeech Ltd.* [1985] Ch. 190; [1984]
            3 W.L.R. 793; [1984] 3 All E.R. 262
        *Bowser v. Colby* (1841) 1 Hare 109
D       *Burt v. Gray* [1891] 2 Q.B. 98, D.C.
        *Cadogan v. Dimovic* [1984] 1 W.L.R. 609; [1984] 2 All E.R. 168, C.A.
        *Creswell v. Davidson* (1887) 56 L.T. 811
        *Dendy v. Evans* [1910] 1 K.B. 263, C.A.
        *Doe d. Wyatt v. Byron* (1845) 1 C.B. 623
        *Gray v. Bonsall* [1904] 1 K.B. 601, C.A.
        *Hare v. Elms* [1893] 1 Q.B. 604, D.C.
E       *Nind v. Nineteenth Century Building Society* [1894] 2 Q.B. 226, C.A.
        *Official Custodian for Charities v. Mackey* [1985] Ch. 168; [1984] 3 W.L.R.
            915; [1984] 3 All E.R. 689
        *Property Holding Co. Ltd. v. Clark* [1948] 1 K.B. 630; [1948] 1 All E.R. 165,
            C.A.
        *Street v. Mountford* [1985] A.C. 809; [1985] 2 W.L.R. 877; [1985] 2 All E.R.
            289, H.L.(E.)
F       *United Dominions Trust Ltd. v. Shellpoint Trustees Ltd.* [1993] 3 All E.R. 301;
            [1993] 4 All E.R. 310, C.A.


        The following additional cases were cited in argument:

        *Associated Dairies Ltd. v. Pierce* (1982) 265 E.G. 127, C.A.
        *Bailey (C.H.) Ltd. v. Memorial Enterprises Ltd.* [1974] 1 W.L.R. 728; [1974]
            1 All E.R. 1003, C.A.
G       *Belgravia Insurance Co. Ltd. v. Meah* [1964] 1 Q.B. 436; [1963] 3 W.L.R. 1033;
            [1963] 3 All E.R. 828, C.A.
        *Berney v. Moore* (1791) 2 Ridg. 310
        *Billson v. Residential Apartments Ltd.* [1992] 1 A.C. 494; [1991] 3 W.L.R. 264;
            [1991] 3 All E.R. 265, C.A.
        *Blatherwick (Services) Ltd. v. King* [1991] Ch. 218; [1991] 2 W.L.R. 848;
            [1991] 2 All E.R. 874, C.A.
H       *Brown v. Peto* [1900] 2 Q.B. 653, C.A.
        *Canas Property Co. Ltd. v. K.L. Television Services Ltd.* [1970] 2 Q.B. 433;
            [1970] 2 W.L.R. 1133; [1970] 2 All E.R. 795, C.A.
        *Chelsea (Viscount) v. Hutchinson* [1994] 2 E.G.L.R. 61, C.A.
        *Doe d. Whitfield v. Roe* (1811) 3 Taunt. 402

*Drake v. Mundy* (1631) Cro.Car 207                                     A

*Driscoll v. Church Commissioners for England* [1957] 1 Q.B. 330; [1956]
    3 W.L.R. 996; [1956] 3 All E.R. 802, C.A.

*Egerton v. Jones* [1939] 2 K.B. 702; [1939] 3 All E.R. 889, C.A.

*Federated Homes Ltd. v. Mill Lodge Properties Ltd.* [1980] 1 W.L.R. 594;
    [1980] 1 All E.R. 371, C.A.

*Grand Junction Co. Ltd. v. Bates* [1954] 2 Q.B. 160; [1954] 3 W.L.R. 45; [1954]
    2 All E.R. 385                                                        B

*Hill v. Griffin* [1987] 1 E.G.L.R. 81, C.A.

*Howard v. Fanshawe* [1895] 2 Ch. 581

*Humphreys v. Morten* [1905] 1 Ch. 739

*Leeds Permanent Building Society v. Manyfield Ltd.* (unreported), 16 June
    1993, Dyson J.

*Liverpool Properties Ltd. v. Oldbridge Investments Ltd.* [1985] 2 E.G.L.R. 111,
    C.A.

*Lovelock v. Margo* [1963] 2 Q.B. 786; [1963] 2 W.L.R. 794; [1963] 2 All E.R.      C
    13, C.A.

*Moore v. Smee and Cornish* [1907] 2 K.B. 8, C.A.

*Newbolt v. Bingham* (1895) 72 L.T. 852, C.A.

*Official Custodian for Charities v. Mackey (No. 2)* [1985] 1 W.L.R. 1308;
    [1985] 2 All E.R. 1016

*Royston Industries Ltd. v. Lawrence* [1994] 1 E.G.L.R. 110

*Sambrin Investments Ltd. v. Taborn* [1990] 1 E.G.L.R. 61                          D

*Shiloh Spinners Ltd. v. Harding* [1973] A.C. 691; [1973] 2 W.L.R. 28; [1973]
    1 All E.R. 90, H.L.(E.)


### ESCALUS PROPERTIES LTD. V. ROBINSON AND OTHERS

APPEAL from Judge Willis sitting in the Croydon County Court.

On 21 December 1989 the landlord, the predecessor in title of Escalus      E
Properties Ltd., granted to the tenants, Stephen Robinson and Julie
Patricia Sims, a lease of premises at 60, Robinson Road, London, S.W.19
for a term of 99 years from 1 July 1989 for a premium of £67,000 and at
an initial rent of £200 per annum. The reddendum did not reserve the
service charges due to the landlord as rent but the lease provided that
such charges "shall be deemed to be sums due by way of additional
rent and shall be recoverable by the landlord as such." The tenants      F
charged the lease to the mortgagee, Abbey National Plc., as security for
the loan of the bulk of the premium and, having fallen into arrears with
the mortgage payments, handed over possession of the premises to the
landlord, then being Escalus Properties Ltd. On 15 March 1993 the
landlord issued proceedings for possession, arrears of rent and non-
payment of service charges against the tenants, the mortgagee being joined      G
as a defendant. The judge made an order for forfeiture in the landlord's
favour and held that the service charges were "rent" and that the
mortgagee, by paying the arrears of rent and service charges and the
landlord's costs, could reinstate the lease. The judge concluded that
the lease could be retrospectively reinstated on the basis that the mortgagee
could claim relief from forfeiture under section 138 of the County Courts
Act 1984 or under section 146(2) of the Law of Property Act 1925.      H

The landlord appealed, with the leave of the judge, on the grounds
that (1) the judge erred in fact and in law in holding that the service
charge payable under the original lease to reimburse the landlord for

A moneys expended, inter alia, on the insurance and maintenance of the building of which the demised premises formed a part was rent; (2) the judge erred in law in holding that the mortgagee of the forfeited leasehold interest could avail itself of the provisions for relief set out in section 138(2) or (5) of the Act of 1984; (3) the judge erred in law in holding that the mortgagee of the forfeited leasehold interest could have availed itself of the provisions for relief set out in section 146(2) of the Act of 1925;

B (4) the judge erred in law in holding that the forfeited lease could be reinstated without the original and actual tenants being before the court or having consented to the burdens of the lease being reimposed on them; and (5) in all the circumstances the judge erred in law in refusing to make an order vesting the property comprised in the lease in the mortgagee on terms as to payment of rent, costs, expenses, damages, compensation or

C otherwise as sought by the landlord.


ESCALUS PROPERTIES LTD. V. DENNIS AND OTHERS

APPEAL from Judge Willis sitting in the Croydon County Court.
By a lease dated 21 January 1988 the landlord, the predecessor in title

D of Escalus Properties Ltd., granted the tenants, Gladwyn Marshall Dennis and Jennifer Michelle Ann Williams-Dennis, a lease of Flat 3, 192, High Street, London, S.W.19 for a term of 99 years from 24 June 1987 for a premium of £57,275 and an initial rent of £75 per annum. The reddendum reserved the rent but not the service charge as rent and the terms of the lease contained no reference to the service charges being rent. The tenants

E mortgaged the lease of the property to the mortgagee, Abbey National Plc., for the loan of the bulk of the premium. The tenants fell into arrears under the mortgage and on 25 September 1991 the mortgagee entered into possession of the premises. The landlord began proceedings in the county court for possession against the tenants for arrears of rent and service charges, the mortgagee being joined as a defendant. On 22 December 1993 the judge made an order in favour of the landlord and held that the

F service charges were not rent and accordingly that relief from forfeiture could only be sought under the provisions of section 146 of the Law of Property Act 1925 and that the mortgagee was entitled to such relief under section 146(2).

By a notice of appeal dated 5 January 1994 the landlord appealed, with the leave of the judge, on the grounds that (1) the judge erred in law

G in holding that the mortgagee of the forfeited leasehold interest could avail itself of the provisions for relief set out in section 146(2) of the Act of 1925; (2) the judge erred in law in holding that the forfeited lease could be reinstated without the original and actual tenants being in court or having consented to the burdens of the lease being imposed on them; (3) the judge erred in law in holding that, if the mortgagee was entitled to relief under section 146(2), such relief could be by reinstatement of the

H original lease and not solely by way of a vesting order; and (4) in all the circumstances the judge erred in law in refusing to make an order vesting the property in the mortgagee on terms as to payment of rent, costs, expenses, damages, compensation or otherwise as sought by the landlord.

ESCALUS PROPERTIES LTD. V. COOPER-SMITH AND ANOTHER                A

APPEAL from Judge Fawcus sitting as a judge of the Queen's Bench
Division.

By a lease dated 16 November 1989 the landlord, the predecessor in
title of Escalus Properties Ltd., demised to the tenant, Patrick Cooper-
Smith, for a term of 99 years premises at 9, Harcourt Avenue, Wallington,
Surrey, from 1 July 1989 for a premium of £69,950 and an initial rent of    B
£200 per annum. The terms of the lease were effectively the same as those
in *Escalus Properties Ltd. v. Robinson*. The tenant charged the lease of the
premises to the mortgagee, Abbey National Plc., as security for the loan
of the bulk of the premium. On 3 February 1993 the landlord issued
proceedings against the tenant in the High Court for forfeiture based on
arrears of rent and service charges and joined the mortgagee, which had
by then been in possession of the premises for some two years, as second    C
defendant. On 17 June 1993 the landlord obtained an order for possession
in default against the tenant. On 3 December 1993 Master Foster granted
relief from forfeiture to the mortgagee by reinstating the lease. The judge
upheld the master's decision pursuant to section 38 of the Supreme Court
Act 1981 and section 146(2) of the Law of Property Act 1925.

The landlord appealed, with the leave of the judge, on the grounds      D
that (1) the judge erred in fact and in law in holding that the service
charge payable under the original lease to reimburse the landlord for
moneys expended, inter alia, on the insurance and maintenance of the
building of which the demised premises formed part was rent; (2) the
judge erred in law in holding that the mortgagee of the forfeited leasehold
interest could avail itself of the provisions for relief set out in section 38
of the Act of 1981; (3) the judge erred in law in holding that the mortgagee    E
of the forfeited leasehold interest could have availed itself of the provisions
for relief set out in section 146(2) of the Act of 1925; (4) the judge erred
in law in holding that the forfeited lease could be reinstated without the
original and actual tenant being before the court or having consented to
the burdens of the lease being reimposed on him; (5) the judge erred in
law in holding that, if the mortgagee was entitled to relief under    F
section 38 of the Act of 1981 or section 146(2) of the Act of 1925 such
relief could be by reinstatement of the original lease and not solely by way
of a vesting order; and (6) in all the circumstances the judge erred in law
in refusing to make an order vesting the property comprised in the lease
in the mortgagee on terms as to payment of rent, costs, expenses, damages,
compensation or otherwise as sought by the landlord.

                                                                         G

SINCLAIR GARDENS INVESTMENTS (KENSINGTON) LTD. V. WALSH AND
                            OTHERS

APPEAL from Mr. Recorder Bridges-Adams sitting in the Woolwich
County Court.

By a lease made on 1 February 1991 the landlord, the predecessor in     H
title of Sinclair Gardens Investments (Kensington) Ltd., granted a lease
for a term of 97 years to the tenants, Patrick Walsh and Bridie Folan, of
Flat 1, 1–24, Grantley House, 11, Myers Lane, New Cross, London, at a
premium of £56,500 and a rent of £80 per annum. The tenants charged

A  the lease to the mortgagee, Bristol & West Building Society, as security for the loan for the premium and fell into arrears under the mortgage deed. On 8 December 1992 the landlord, by then Sinclair Gardens Investments (Kensington) Ltd., issued proceedings in the county court for forfeiture for non-payment of rent and on 21 April 1993 judgment was given for possession. The possession order was executed on 17 June 1993. On 6 July 1993 the mortgagee was added as a defendant and on 25 August

B  1993, having paid £2,176·03 into court, was granted relief against forfeiture under section 138 of the County Courts Act 1984, it being thought that the effect of the judge's decision was that the lease had been effectively retrospectively reinstated.

By a notice of appeal the landlord appealed on the grounds that the judge erred in law (1) in that (a) he wrongly disallowed the landlord's

C  claim that, as a condition of granting a vesting order to the mortgagee, mesne profits were liable to be paid by the mortgagee for that period during which the tenants were in adverse possession and (b) he wrongly disallowed the landlord's claim that, as a condition of granting a vesting order to the mortgagee, mesne profits were liable to be paid by the mortgagee for that period during which the mortgagee was in occupation and prior to the vesting order being granted; (2) in holding that the

D  mortgagee could in no circumstances be required to pay mesne profits for a period during which it was not itself in adverse possession of the property; (3) in holding that in the circumstances of the case the mortgagee was not liable for mesne profits for the period during which it was itself in occupation of the property and prior to the vesting order being granted; and (4) in holding that the mortgagee was under no obligation to take any steps to safeguard its position, having been put on notice of the

E  proceedings by service on them of the particulars of claim. The appeals were heard together.

The facts are stated in the judgment of Nourse L.J.


*David Neuberger Q.C.* and *Graham Clark* for the landlords. Each case

F  is concerned with the basis on which a mortgagee of a long lease at a low rent can obtain relief from forfeiture. The issues which arise are (1) whether service charges payable under a lease are "rent;" (2) whether a mortgagee seeking relief under section 138 of the County Courts Act 1984 is entitled to rely on subsection (5); (3) whether the relief afforded to a mortgagee in the High Court under section 38 of the Supreme Court Act 1981 takes effect retrospectively; (4) whether a mortgagee seeking

G  relief under section 146 of the Law of Property Act 1925 can rely on subsection (2) or can rely only on subsection (4); (5) the terms on which relief from forfeiture should be granted to a mortgagee.

*Do service charges constitute rent?* "Rent" means the consideration payable by the tenant to the landlord in respect of the tenant's possession of premises demised to him by the landlord. It does not include service charges which are payments for services provided by the landlord, not for

H  the enjoyment of possession: see *Property Holding Co. Ltd. v. Clark* [1948] 1 K.B. 630, 642; *C.H. Bailey Ltd. v. Memorial Enterprises Ltd.* [1974] 1 W.L.R. 728 and *Blatherwick (Services) Ltd. v. King* [1991] Ch. 218, 224. In *Abbey National Building Society v. Maybeech Ltd.* [1985] Ch. 190, 198,

A

199  Nicholls J. accepted that the service charge was not rent. Applying
the reasoning of Lord Templeman in *Street v. Mountford* [1985] A.C. 809,
826, one can no more turn a service charge into a rent by calling it rent
than one can turn a tenancy into a licence by calling it a licence.
[Reference was also made to *Royston Industries Ltd. v. Lawrence* [1994]
1 E.G.L.R. 110 and section 205(1)(xxiii) of the Law of Property Act 1925.]

*Relief from forfeiture.* The date of forfeiture is the date on which
proceedings claiming possession are served on the tenant: *Canas Property   B
Co. Ltd. v. K.L. Television Services Ltd.* [1970] 2 Q.B. 433. Where a tenant
applies either under section 138(2) of the County Courts Act 1984 or
under section 146(2) of the Law of Property Act 1925 and obtains relief,
whether for non-payment of rent or for breach of any other covenant, the
lease is reinstated retrospectively to the date of forfeiture: *Dendy v. Evans*
[1910] 1 K.B. 263. If relief is granted under section 146(4) it does not take   C
effect retrospectively but by means of a vesting order which vests a new
term in the subtenant: *Official Custodian for Charities v. Mackey* [1985]
Ch. 168 and *Cadogan v. Dimovic* [1984] 1 W.L.R. 609. A mortgagee
seeking relief is in the same position as a subtenant: *Belgravia Insurance
Co. Ltd. v. Meah* [1964] 1 Q.B. 436 and *Grand Junction Co. Ltd. v. Bates*
[1954] 2 Q.B. 160.

Section 138 of the Act of 1984 can be relied on only where forfeiture   D
is claimed for arrears of rent. Thus it cannot apply in the *Cooper-Smith*
case or in the *Dennis* case where there is no question of the service charge
being rent. It might apply in the *Robinson* case if the service charge there
were held to be rent, but it is not open to the mortgagee to rely on section
138(5) to have the lease reinstated retrospectively, notwithstanding the
decision in *United Dominions Trust Ltd. v. Shellpoint Trustees Ltd.* [1993]   E
4 All E.R. 310. The section can be relied on in the *Walsh* case, the
mortgagee only being able to seek relief under section 138(9C) which
would involve a fresh lease being granted by a vesting order. If the effect
of the *United Dominions Trust* case is that a mortgagee can rely on section
138(5) or 138(9A) of the Act of 1984, and if service charges are rent
within the meaning of section 138, then the appeal in the *Robinson* case
and/or the *Dennis* case must fail unless (a) relief under section 138(5)   F
should not be granted in the absence of the original tenant, or (b) the
effect of granting relief under section 138(5) to a mortgagee at any rate
does not reinstate the lease retrospectively. If (a) is correct then relief
from forfeiture should have been afforded under section 146(4) of the Act
of 1925. If (b) is correct then the effect of granting relief under section
138(5) to a mortgagee is effectively the same as granting such relief under   G
section 146(4).

As to relief under section 146, three issues arise. (a) Can a mortgagee
seek relief from forfeiture under section, 146(2) or only under section
146(4)? But for the reasoning in the *United Dominions Trust* case the
answer would be that he could only rely on section 146(4). Subsections
(2) and (4) of section 146 are each intended to be a self-contained code,
for the tenant under the lease and his subtenant or mortgagee respectively:   H
see *Nind v. Nineteenth Century Building Society* [1894] 2 Q.B. 226; *Creswell
v. Davidson* (1887) 56 L.T. 811 and *Burt v. Gray* [1891] 2 Q.B. 98. The
decision in the *United Dominions Trust* case might have been reached per

**Q.B.**                          Escalus Properties Ltd. v. Robinson (C.A.)

A    incuriam. However, that case concerned rent, and relief from forfeiture on
grounds other than non-payment of rent involves different principles: see
*per* Sir Nicolas Browne-Wilkinson V.-C. in *Billson v. Residential
Apartments Ltd.* [1992] 1 A.C. 494, 508–515. (b) If the court can grant a
mortgagee relief under section 146(2), is the nature of the relief left open?
It would be wrong for the relief granted to a mortgagee under section
146(2) to be any different from that which would be granted under section
B    146(4): see *per* Lord Denning M.R. in *Belgravia Insurance Co. Ltd. v.
Meah* [1964] 1 Q.B. 436, 445–446. (c) Can the relief under section 146(4)
be granted retrospectively? It is clear from *Cadogan v. Dimovic* [1984]
1 W.L.R. 609 and *Leeds Permanent Building Society v. Manyfield Ltd.*
(unreported), 16 June 1993 that it cannot.

C    Section 38 of the Supreme Court Act 1981 also has the effect of
restoring the original lease. Consequently the mortgagee would not be
granted relief from forfeiture unless the tenant was before the court: see
*Hare v. Elms* [1893] 1 Q.B. 604, 606 and *Gray v. Bonsall* [1904] 1 K.B.
601, 607–608, 609 and *Humphreys v. Morten* [1905] 1 Ch. 739 is
distinguishable on the facts: there was no reason for the original lessees to
require the lease to be reinstated.

D    The person entitled to possession as against the landlord is the tenant,
but only so long as the lease subsists. Once the lease has been determined
the landlord is in principle entitled to possession because determination of
the lease determines any subsidiary interests. Accordingly, where relief is
granted under section 146(4) of the Act of 1925 to a mortgagee, the
landlord is entitled to the fruits of possession between the date of forfeiture
and the date of a vesting order: *Official Custodian for Charities v. Mackey*
E    [1985] Ch. 168. Under section 146(2) and (4) relief is to be granted as the
court thinks fit. Where the mortgagee has been in possession between the
date of forfeiture and the date of the vesting order he should be required,
as a condition of obtaining relief, to pay to the landlord mesne profits
representing the letting value of the premises: *Associated Dairies Ltd. v.
Pierce* (1982) 265 E.G. 127. As a further condition of obtaining relief a
mortgagee who traces his title through a defaulting tenant is required to
F    remedy any breaches of covenant by the tenant: *Egerton v. Jones* [1939]
2 K.B. 702, 708–709; *Belgravia Insurance Co. Ltd. v. Meah* [1964] 1 Q.B.
436, 445, 446; *Gray v. Bonsall* [1904] 1 K.B. 601 and *Hill v. Griffin* [1987]
1 E.G.L.R. 81. Further, a landlord is effectively prevented from benefiting
from his right to possession during the period when relief from forfeiture
is sought by a mortgagee or anyone else. An application for relief from
G    forfeiture has been held to be a counterclaim which raises a valid defence
to a landlord's claim for possession: *Liverpool Properties Ltd. v. Oldbridge
Investments Ltd.* [1985] 2 E.G.L.R. 111 and *Sambrin Investments Ltd. v.
Taborn* [1990] 1 E.G.L.R. 61.

*Michael Driscoll Q.C., Timothy Harry* and *John McGhee* for the
mortgagees. *Do service charges amount to rent?* Where a lessee has an
obligation to pay a service charge to the landlord under the lease, does
H    the service charge amount to rent for the purpose of the court's inherent
and statutory jurisdiction relating to relief from forfeiture if the service
charge is "deemed to be due by way of additional rent and recoverable by
the landlord as such" even though it is not expressly reserved as rent in

the reddendum? Not every payment of a service charge is a payment of        A
rent, but every forfeiture based on non-payment of money by a tenant
should be capable of relief under the same jurisdiction as is available in
the case of forfeiture for non-payment of rent. For this purpose "rent"
has a wider meaning which includes payment of a service charge which is
not reserved as rent or deemed to be rent or recoverable as rent: see
*Property Holding Co. Ltd. v. Clark* [1948] 1 K.B. 630; *United Dominions
Trust Ltd. v. Shellpoint Trustees Ltd.* [1993] 3 All E.R. 301, 310; *Shiloh*        B
*Spinners Ltd. v. Harding* [1973] A.C. 691, 722–723; *Billson v. Residential
Apartments Ltd.* [1992] 1 A.C. 494, 510, 513; *Bailey Ltd. v. Memorial
Enterprises Ltd.* [1974] 1 W.L.R. 728; *Brown v. Peto* [1900] 2 Q.B. 653;
*Drake v. Mundy* (1631) Cro.Car. 207; section 2(ix) of the Conveyancing
Act 1881 (44 & 45 Vict. c. 41) and section 205(1) (xxiii) of the Law of
Property Act 1925. In *Abbey National Building Society v. Maybeech Ltd.*        C
[1985] Ch. 190 the lease had been forfeited for arrears of rent and service
charge and the case is thus distinguishable. So, too, is *Blatherwick
(Services) Ltd. v. King* [1991] Ch. 218 as there the service charge was not
deemed to be rent or to be recoverable as such. If a sum is deemed to be
rent, then it is so deemed for all purposes, and therefore is rent for all
purposes.

   *Section 138 of the County Courts Act 1984.* A mortgagee of a lease is        D
entitled to relief under section 138(2)(9A) and (9B) in a form the effect of
which is that the lease is reinstated as though it had never been forfeited.

   The court in the exercise of its jurisdiction has always been willing to
grant a mortgagee of a lease relief from forfeiture of the lease for non-
payment of rent in the form of reinstatement of the lease. Where the lease
is reinstated it is as though it had never been forfeited: see *Berney v.*        E
*Moore* (1791) 2 Ridg. 310; *Doe d. Whitfield v. Roe* (1811) 3 Taunt. 402;
*Hare v. Elms* [1893] 1 Q.B. 604; *Howard v. Fanshaw* [1895] 2 Ch. 581;
*Lovelock v. Margo* [1963] 2 Q.B. 786; *Doe d. Wyatt v. Byron* (1845) 1 C.B.
623; *Gray v. Bonsall* [1904] 1 K.B. 601; *Moore v. Smee and Cornish* [1907]
2 K.B. 8; *Newbolt v. Bingham* (1895) 72 L.T. 852 and *Belgravia Insurance
Co. Ltd. v. Meah* [1964] 1 Q.B. 436. Relief under section 138 of the Act of
1984 is available to "the lessee," which is defined in section 140 of the Act        F
as including "an original or derivative underlessee" and "persons deriving
title under a lessee" and has been held to include a mortgagee: *United
Dominions Trust Ltd. v. Shellpoint Trustees Ltd.* [1993] 4 All E.R. 310.
Section 138(2) (5) and (9B) expressly provides that relief shall be in the
form that "the lessee" holds the land "according to the lease without any
new lease," i.e., in the form of reinstatement of the lease: *United Dominions*        G
*Trust Ltd. v. Shellpoint Trustees Ltd.* The mortgagee is similarly entitled
to relief from forfeiture under section 38 of the Supreme Court Act 1981.

   *Section 38 of the Supreme Court Act 1981.* A mortgagee is entitled to
relief from forfeiture for non-payment of rent in the county court under
section 38 in a form the effect of which is that the lease is reinstated as
though it had never been forfeited. The statutory jurisdiction under section
38 confirms the existing inherent jurisdiction and section 38(2) is expressed        H
in terms that "Where the lessee or a person deriving title under him is
granted relief . . . he shall hold the demised premises in accordance with
the terms of the lease without the necessity for a new lease." The

Q.B.              **Escalus Properties Ltd. v. Robinson (C.A.)**

A authorities relied on in the paragraph above show that where this statutory jurisdiction is exercised on the application of a mortgagee the relief takes the form of a reinstatement of the lease.

*Section 146 of the Law of Property Act 1925.* A mortgagee of a lease is entitled to seek relief under section 146(2) in a form the effect of which is that the lease is reinstated as though it had never been forfeited. His entitlement is not restricted to relief in the form of a vesting order under

B section 146(4). Section 146(2) of the Act of 1925 is not available where the only ground of forfeiture is non-payment of rent. Relief under section 146(2) is available to "the lessee." The definition of "lessee" in section 146(5)(*b*) is the same as the definition of "lessee" in section 138 of the Act of 1984 and therefore includes a mortgagee: see *Federated Homes Ltd. v. Mill Lodge Properties Ltd.* [1980] 1 W.L.R. 594. The grant of relief under

C section 146(2) also takes the form of reinstatement of the lease: *Dendy v. Evans* [1910] 1 K.B. 263 and *Driscoll v. Church Commissioners for England.* [1957] 1 Q.B. 330. The landlords rely on *Creswell v. Davidson,* 56 L.T. 811; *Burt v. Gray* [1891] 2 Q.B. 98 and *Nind v. Nineteenth Century Building Society* [1894] 2 Q.B. 226. In so far as they suggest that the mortgagee cannot seek such relief those cases are either distinguishable or wrong, being inconsistent with the *United Dominions Trust* case. The grant of

D relief to a mortgagee under section 146(2) is discretionary but it would be an unreasonable exercise of the discretion in the present cases to refuse relief under section 146(2). Especially if to do so will result in the landlord achieving a windfall profit. If a mortgagee is entitled to seek relief under section 146(2) in the form of a reinstatement of the lease then there is a consistency of approach to applications for relief by mortgagees in rent

E and non-rent cases.

If relief is only available to a mortgagee in the form of a vesting order under section 146(4) of the Law of Property Act 1925 should the mortgagee be required as a condition of relief: (a) to pay mesne profits in respect of any period between the date of forfeiture and the order granting relief during which the lessee was in possession of the property, and (b) to pay mesne profits in respect of any period between the date of the

F forfeiture and the order granting relief during which the mortgagee was in possession of the property? The question only arises if it is held that there is no jurisdiction to grant relief in the form of a reinstatement of the lease or that jurisdiction should not be exercised in favour of a reinstatement of the lease.

There is no reason why in an appropriate case the court cannot make

G a retrospective vesting order. *Cadogan v. Dimovic* [1984] 1 W.L.R. 609; *Official Custodian for Charities v. Mackey* [1985] Ch. 168; *Leeds Permanent Building Society v. Manyfield Ltd.* (unreported), 16 June 1993 and *Viscount Chelsea v. Hutchinson* [1994] 2 E.G.L.R. 61 should not be followed. The purpose of section 146(4) must be to enable the court to restore the mortgagee of the lease to his position before the forfeiture. If that can only be achieved by making the vesting order retrospective then the court

H should so order: see *Official Custodian for Charities v. Mackey (No. 2)* [1985] 1 W.L.R. 1308.

*Attendance of lessee.* It is a matter of discretion for the judge whether to grant the mortgagee relief in the form of reinstatement of the lease

Escalus Properties Ltd. v. Robinson (C.A.)                    [1996]

without the lessee either being present or giving his consent. Ordinarily,    A
however, the lessee should be made a party to the mortgagee's application
for relief and given an opportunity to be heard: *Hare v. Elms* [1893]
1 Q.B. 604 and *Abbey National Building Society v. Maybeech Ltd.* [1895]
Ch. 190.

In each appeal the judge concluded correctly that the mortgagee was
entitled to relief in the form of reinstatement of the lease without any
liability to pay the landlord any mesne profits.                              B

*Neuberger Q.C.* replied.      .

The original tenants of the properties did not appear and were not
represented.

*Cur. adv. vult.*

C

30 March 1995.   The following judgments were handed down.

NOURSE L.J.

*Introduction*                                                               D

In each of these four appeals a mortgagee by subdemise seeks relief
against forfeiture of a long lease granted for a premium and at a low rent.
The landlord accepts that relief is available. The dispute is as to its nature
and the terms on which it ought to be granted. The mortgagee says that
relief can be granted retrospectively and on terms that it pays all arrears
of rent and service charge and costs. The landlord says that relief can only    E
be granted as from the date of the order granting it and on terms that the
mortgagee pays all arrears of rent and service charge up to the date of
forfeiture, thereafter mesne profits until the date of the order, and costs.
The lease having been granted at a low rent, it is evident that mesne
profits would be far more valuable to the landlord.

Because different considerations apply depending on whether the
landlord takes proceedings in the county court or the High Court and       F
whether they are based on non-payment of rent or of sums other than
rent, each case must be considered separately. Although the erstwhile
tenants, against all of whom the leases have been forfeited, have taken no
part in the proceedings, the convenient course is to refer to each case by
the name of the first defendant, being the tenant, or one of them, under
the forfeited lease. In *Robinson, Dennis* and *Cooper-Smith* the plaintiff    G
landlord is Escalus Properties Ltd. and the mortgagee is Abbey National
Plc. In *Walsh* the plaintiff landlord is Sinclair Gardens Investments
(Kensington) Ltd. and the mortgagee is Bristol & West Building Society.
In *Robinson, Dennis* and *Walsh* proceedings have been brought in the
county court; in *Cooper-Smith* in the High Court.

Each of the leases was of a house or flat in London or Surrey for a
term of 97 or 99 years from a date in 1987 or later at a premium of        H
between £56,500 and £67,000 and at a rent of between £80 and £200 for
the first 33 years or more. Each lease contained covenants by the tenant
to pay service charge as well as rent. In none of them did the reddendum

A reserve the service charge as rent. However, in both *Robinson* and *Cooper-Smith* the lease contained a provision that service charge "shall be deemed to be sums due by way of additional rent and shall be recoverable by the landlord as such." The leases in *Dennis* and *Walsh* contained no such provision. Each lease contained a proviso for re-entry on non-payment of rent. In each case the lease was mortgaged by the tenant or tenants in favour of Abbey National or Bristol & West as the case might be. In each

B case the tenant or tenants defaulted under the mortgage as well as under the lease.

   In *Robinson*, *Dennis* and *Cooper-Smith* judgment was obtained by the landlord against the respective tenants on the basis of arrears of both rent and service charge; in *Walsh* on the basis of arrears of rent only. In each case the appropriate mortgagee was joined as a defendant for the purpose of claiming relief against forfeiture. In each case the judge in the court

C below (in *Robinson* and *Dennis* Judge Willis sitting in the Croydon County Court, in *Cooper-Smith* Judge Fawcus sitting as a judge of the Queen's Bench Division and in *Walsh* Mr. Recorder Bridges-Adams sitting in the Woolwich County Court) held that relief could be granted retrospectively and that it ought to be granted on terms that all arrears owing under the lease and costs, but not mesne profits, were paid. Against those decisions

D the landlords appeal to this court.


### *Robinson and Cooper-Smith: was the service charge "rent?"*

   Because the statutory provisions relating to non-payment of rent differ from those relating to other breaches of covenant, for example for payment of service charge, the first point to be decided in *Robinson* and

E *Cooper-Smith* is into which category the case falls. The point does not arise in *Walsh*, which is a rent only case. Moreover, in *Dennis*, where there were arrears of service charge but the lease contained no provision deeming them to be sums due by way of additional rent and recoverable as such, the mortgagee accepts, correctly, that the service charge cannot be treated as rent. So the point only arises in *Robinson* and *Cooper-Smith*.

F   The question is whether a provision that service charge shall be deemed to be sums due by way of additional rent and shall be recoverable by the landlord as such invests the charge with the character of rent, even though it is not reserved as such by the reddendum. Curiously enough, there appears to be no reported decision directly in point. Several authorities were cited, for example *Property Holding Co. Ltd. v. Clark* [1948] 1 K.B. 630, but they went rather to the question whether service charge can be

G "rent" without any deeming provision such as that found here. What we have to do is to decide, first, what is meant by "rent" in the statutory provisions and, secondly, whether the relevant provision in each lease had the effect of converting service charge into rent in that sense.

   Seeing that the current statutory provisions derive from others enacted in the 18th and 19th centuries, I regard it as axiomatic that they refer to rent in its correct sense being (i) a periodical sum, (ii) paid in return for

H the occupation of land, (iii) issuing out of the land, (iv) for non-payment of which a distress is leviable. All those attributes were enjoyed by the rents payable under the leases in *Robinson* and *Cooper-Smith*. Each of those leases, by providing that service charge should be deemed to be ·

sums due by way of *additional* rent, had the effect of conferring the like    A
attributes on the service charge, an effect confirmed by the further
provision that it should be recoverable as rent. To hold thus is to do no
more than give full effect to the agreement between the parties. That
agreement is not defeated or modified by the omission to reserve the
service charge as rent in the reddendum.

The primary submission of Mr. Neuberger, for the landlords, was that
service charge cannot become rent even if reserved as such in the    B
reddendum. I do not know why that should be so. I can think of no
ground in public policy such as there was, for example, in *Street v.
Mountford* [1985] A.C. 809, with which Mr. Neuberger sought to draw an
analogy, for holding that the parties to a lease are not entitled to treat as
rent something which is not rent. Alternatively, Mr. Neuberger submitted
that the provision here goes no further than to treat the service charge as    C
being recoverable as rent. That submission ignores the first part of the
provision, which says that the charge shall be deemed to be due by way
of additional rent; in other words, that it is to have all the attributes of
rent.

For these reasons, I am satisfied that both *Robinson* and *Cooper-Smith*
are, like *Walsh*, to be treated as rent only cases. At this point they must
be realigned, the proceedings in *Robinson* and *Walsh* being in the county    D
court and in *Cooper-Smith* in the High Court.

### *Robinson: section 138(2) of the County Courts Act 1984*

In *Robinson* the mortgagee had paid into court, not less than five clear
days before the return date, all the rent and service charge in arrear and
also the costs of the action. Accordingly, Judge Willis, applying the    E
decision of this court in *United Dominions Trust Ltd. v. Shellpoint Trustees
Ltd.* [1993] 4 All E.R. 310, held that the mortgagee was automatically
entitled to retrospective relief against forfeiture under section 138(2) of
the County Courts Act 1984. I will return to the *United Dominions Trust*
case in due course. At this stage it is enough to say that it is binding
authority on this court so far as the effect of section 138 is concerned. On    F
that footing the decision of Judge Willis was correct. It follows that the
appeal in *Robinson* must be dismissed.

### *Walsh: section 138(9A) and (9B) of the County Courts Act 1984*

In *Walsh* the proceedings became confused, it being assumed that, as
between the landlord and the tenants, the case was governed by    G
section 146 of the Law of Property Act 1925. However, given that the
only basis for forfeiture was non-payment of rent, the landlord accepts
that it was in reality governed by section 138 of the County Courts Act
1984. What happened was that, after an order for possession had been
executed against the tenants, the mortgagee was added as a defendant and
ordered to pay into court within 14 days the sum of £2,176·03, being the
amount of the judgment already entered against the tenants. It was further    H
ordered that the mortgagee "will be given [relief] from forfeiture pending
the final hearing of this matter." The mortgagee duly paid the money into
court. At the final hearing, Mr. Recorder Bridges-Adams made an order

A    granting the mortgagee's application for relief. The landlord, through Mr. Neuberger, accepts that the recorder must be taken to have acted under section 138(9A) and (9B) of the Act of 1984, which, on the authority of the *United Dominions Trust* case [1993] 4 All E.R. 310, empower the court to grant a mortgagee by subdemise retrospective relief against forfeiture. In the result, *Walsh* stands on the same footing as *Robinson* and the appeal must likewise be dismissed.

B

*Cooper-Smith: section 38 of the Supreme Court Act 1981*

It is convenient to deal next with *Cooper-Smith*, the third rent only case, which differs from *Robinson* and *Walsh* in that the proceedings are in the High Court. That means that it is governed by section 38 of the Supreme Court Act 1981:

C
"(1) In any action in the High Court for the forfeiture of a lease for non-payment of rent, the court shall have power to grant relief against forfeiture in a summary manner, and may do so subject to the same terms and conditions as to the payment of rent, costs or otherwise as could have been imposed by it in such an action immediately before the commencement of this Act. (2) Where the
D    lessee or a person deriving title under him is granted relief under this section, he shall hold the demised premises in accordance with the terms of the lease without the necessity for a new lease."

The dates here may be of some importance. The writ was issued on 3 February 1993, an order for substituted service on the tenant being made on 10 March. The mortgagee applied to be joined as a defendant
E    and for relief against forfeiture. On 9 March the master made an order for joinder and adjourned the application for relief. On 17 June 1993 judgment for possession was entered against the tenant in default of notice of intention to defend. The mortgagee having paid into court more than enough to satisfy the arrears of rent and service charge and costs, on 3 December 1993 the master made an order granting it relief against
F    forfeiture by reinstating the lease. The landlord's appeal against the master's order was dismissed by Judge Fawcus on 27 January 1994.

Having held, correctly, that the arrears of service charge were to be treated as arrears of rent, the judge turned to consider relief under section 38(2), which, by referring to "a person deriving title under" the lessee, expressly contemplates that relief may be granted to an underlessee. Moreover, it appears to have been accepted on behalf of the landlord that
G    relief, if granted, would be by way of reinstatement of the lease. The objection taken, based primarily on *Hare v. Elms* [1893] 1 Q.B. 604, was that such relief could not be granted in the absence of the tenant. However, the judge, having read passages from the judgments of Day J. in *Hare v. Elms*, at p. 607, and Nicholls J. in *Abbey National Building Society v. Maybeech Ltd.* [1985] Ch. 190, 206B, held that there was no absolute rule and that the question was whether, on the facts before him,
H    the mortgagee had shown good cause for proceeding in the tenant's absence. Having referred to two affidavits of the mortgagee's solicitor deposing to the unsuccessful efforts that had been made to trace the tenant, Judge Fawcus answered that question in the affirmative, stating

Nourse L.J.          **Escalus Properties Ltd. v. Robinson (C.A.)**          **|1995|**

that it was difficult to see what else the mortgagee could have done.     A
Accordingly, being satisfied that the case fell under section 38, he dismissed
the landlord's appeal against the master's order.

The original predecessor of section 38 of the Act of 1981 was section 1
of the Common Law Procedure Act 1860 (23 & 24 Vict. c. 126), on which
several authorities, besides *Hare v. Elms* [1893] 1 Q.B. 604, were cited to
us. None of them casts any doubt on the proposition that an underlessee,
including a mortgagee by subdemise, could apply for relief under that     B
provision and its successors. Indeed they establish the contrary. So the
questions for decision in regard to section 38 are, first, whether relief is
granted retrospectively by reinstatement of the lease and, secondly,
whether Judge Fawcus was entitled to grant the mortgagee relief in the
circumstances of this case.

As to the first of those questions, Mr. Neuberger referred us to a     C
number of authorities which he claimed supported the proposition that
relief granted under section 38 can only be granted as from the date of the
order granting it. However, none of them really dealt with the point and
the proposition advanced is inconsistent with the terms of section 38(2),
which provides that the person to whom relief is granted "shall hold the
demised premises in accordance with the terms of the lease without the
necessity for a new lease." That wording is identical to that of section     D
138(9B) of the County Courts Act 1984 and there is no reason for giving
it an effect different from that already given to the latter provision in
*Walsh.*

As to the second question, I think that Judge Fawcus applied an
entirely correct test as established by the authorities. Moreover, in
applying the test, he gave a decision with which it would be impossible     E
for this court to interfere. The application of the test was essentially a
matter within his discretion. For my part, I do not see that he could
reasonably have given any other decision. Accordingly, I would also
dismiss the appeal in *Cooper-Smith.*

*Dennis: section 146 of the Law of Property Act 1925*

I come finally to *Dennis*, which is without doubt the most difficult of     F
the four cases. It having been accepted by the mortgagee that it is not a
rent only case, it follows that section 138 of the County Courts Act 1984
is not in point and that relief can only be granted under section 146 of the
Law of Property Act 1925, of which the material provisions are the
following. Subsection (1) provides that a right of re-entry or forfeiture
shall not be enforceable unless and until the lessor serves on the lessee an     G
appropriate notice and the lessee fails, within a reasonable time thereafter,
to remedy the breach, if it is capable of remedy, and to make reasonable
compensation in money to the satisfaction of the lessor, for the breach.
Section 146(2) provides:

"Where a lessor is proceeding, by action or otherwise, to enforce
such a right of re-entry or forfeiture, the lessee may, in the lessor's
action, if any, or in any action brought by himself, apply to the court     H
for relief; and the court may grant or refuse relief, as the court,
having regard to the proceedings and conduct of the parties under the
foregoing provisions of this section, and to all the other circumstances,

A      thinks fit; and in case of relief may grant it on such terms, if any, as
to costs, expenses, damages, compensation, penalty, or otherwise,
including the granting of an injunction to restrain any like breach in
the future, as the court, in the circumstances of each case, thinks fit."

Subsection (3) provides for the lessor to recover as a debt due from the
lessee all reasonable costs and expenses properly incurred by the lessor in
B reference to any breach which is waived or from which the lessee is
relieved. Subsection (4) provides:

     "Where a lessor is proceeding by action or otherwise to enforce a
right of re-entry or forfeiture under any covenant, proviso, or
stipulation in a lease, or for non-payment of rent, the court may, on
application by any person claiming as under-lessee any estate or
interest in the property comprised in the lease or any part thereof,
C either in the lessor's action (if any) or in any action brought by such
person for that purpose, make an order vesting, for the whole term
of the lease or any less term, the property comprised in the lease or
any part thereof in any person entitled as under-lessee to any estate
or interest in such property upon such conditions as to execution of
any deed or other document, payment of rent, costs, expenses,
D damages, compensation, giving security, or otherwise, as the court in
the circumstances of each case may think fit, but in no case shall any
such under-lessee be entitled to require a lease to be granted to him
for any longer term than he had under his original sub-lease."

Subsection (5) provides that for the purposes of the section:

     "(b) 'Lessee' includes an original or derivative under-lessee, and the
E persons deriving title under a lessee; also a grantee under any such
grant as aforesaid and the persons deriving title under him; . . ."

Subsection (11) provides:

     "This section does not, save as otherwise mentioned, affect the
law relating to re-entry or forfeiture or relief in case of non-payment
of rent."

F
The effect of subsection (11) is to exclude from subsection (2) proceedings
based only on non-payment of rent. Subsection (4), on the other hand,
expressly includes such proceedings, thus giving effect to the decision of
this court in *Gray v. Bonsall* [1904] 1 K.B. 601. Since the proceedings in
*Dennis* were based on arrears of service charge as well as rent, the
mortgagee, provided it is a "lessee" within subsection (5)(b), is prima
G facie entitled to apply for relief either under that subsection or under
subsection (4).

     It is well established that the effect of an order for relief under
section 146(2) is to restore the lease as if it had never been forfeited, and
with it any underlease: see the decision of this court in *Dendy v. Evans*
[1910] 1 K.B. 263. That is what is meant when it is said that relief is
granted retrospectively. But where relief is granted under section 146(4) it
H can only be granted as from the date of the order granting it: see *Cadogan
v. Dimovic* [1984] 1 W.L.R. 609, 613, 616, *per* Fox and Robert Goff L.JJ.
and the decision of Scott J. in *Official Custodian for Charities v. Mackey*
[1985] Ch. 168.

The rival contentions as to section 146(2) and (4) are, shortly stated,      A
as follows. Relying on the definition of "lessee" in subsection (5)(b) and
the decision in *United Dominions Trust Ltd. v. Shellpoint Trustees Ltd.*
[1993] 4 All E.R. 310, the mortgagee contends that it is entitled to apply
for and obtain relief under subsection (2), with the same results as under
section 138(9A) and (9B) of the County Courts Act 1984. In answer, the
landlord, relying on authorities not cited in the *United Dominions Trust*
case, in particular the decision of this court in *Nind v. Nineteenth Century*      B
*Building Society* [1894] 2 Q.B. 226, contends that an underlessee cannot be
granted relief under subsection (2), but only under subsection (4), and
that in any event, as a matter of discretion, the mortgagee ought to be
granted relief under subsection (4). In reply, the mortgagee contends that
*Nind's* case and the other authorities relied on by the landlord were
decided in ignorance of *Doe d. Wyatt v. Byron* (1845) 1 C.B. 623, on      C
which this court relied in the *United Dominions Trust* case [1993] 4 All
E.R. 310, further or alternatively, that those authorities, having depended
on the narrow definition of "lessee" in section 14(3) of the Conveyancing
Act 1881 (44 & 45 Vict. c. 41), have been overruled by the enactment of
section 146(5)(b).

These contentions make it necessary to consider the earlier legislation
with some care. The original predecessor of section 146(2) was section      D
14(2) of the Act of 1881, the two subsections being expressed in identical
terms. So far as material, section 14(3) provided that for the purposes of
that section: "a lessee includes an original or derivative under-lessee,
and the heirs, executors, administrators, and assigns of a lessee . . ."
Section 14(8), like section 146(11), provided that section 14 should not
affect the law relating to re-entry or forfeiture or relief in case of non-
payment of rent.      E

Before the enactment of section 14 of the Act of 1881 relief against
forfeiture could only be granted in respect of non-payment of rent. So
section 14 was novel in its effect. Moreover, the Act of 1881 contained no
provision equivalent to section 146(4). The original predecessor of that
provision, in nearly identical terms, was section 4 of the Conveyancing
and Law of Property Act 1892 (55 & 56 Vict. c. 13), whose long title      F
described it as an Act to amend the Act of 1881. It appears that section 4
was enacted because the view was taken that the definition of "lessee" in
section 14(3) did not include a lessee of a lessee. Thus in *Creswell v.*
*Davidson* (1887) 56 L.T. 811, 812, Kay J., after reading section 14(3), said:

"I am not at all sure, therefore, that it can be said that a lessee
includes an underlessee from an original lessee. By the words of the      G
third subsection it includes an original or derivative underlessee, but
apparently not a lessee of a lessee."

In *Burt v. Gray* [1891] 2 Q.B. 98 a Queen's Bench Divisional Court
concurred in the opinion of Kay J. that the effect of section 14(3) was not
to create any privity as between the original lessor and the underlessee
which did not exist before. It further held that "lessee" in section 14(3)      H
did not apply to an underlessee of a part of the demised property.

*Nind v. Nineteenth Century Building Society* [1894] 2 Q.B. 226 was a
case on section 2(1) of the Conveyancing and Law of Property Act 1892,

A    the predecessor of section 146(3) (recovery by the landlord of reasonable costs and expenses properly incurred in relation to breaches by the tenant). It was held that an underlessee was not, as between himself and the original lessor, a "lessee." The decision was based on the wording of section 14(3) of the Act of 1881. Following the views expressed in *Creswell v. Davidson*, 56 L.T. 811 and *Burt v. Gray* [1891] 2 Q.B. 98, this court held that "lessee" in section 2(1) of the Act of 1892 did not include a lessee of

B    a lessee, between whom and the head lessor there was no privity of contract or estate. Thus, Davey L.J., with whose judgment Lord Esher M.R. agreed, said [1894] 2 Q.B. 226, 232:

> "Now, it has been held by Kay L.J. in *Creswell v. Davidson*, 56 L.T. 811 and by a Divisional Court in *Burt v. Gray* [1891] 2 Q.B. 98, that the word 'lessee' in section 14 does not include the lessee of a lessee
C    between whom and the lessor there is no privity of contract or tenure, and that the definition clause in subsection (3), which I need not read again, is to be construed only so as to make the provisions of the section applicable as between a derivative lessor and his lessee as well as between the first or head lessor and his lessee. On the whole, I agree with those decisions. I do not find any sufficient grounds for holding that by section 14 it was intended to create new statutory
D    rights between an original lessor and a derivative lessee claiming under his lessee, between whom no privity of contract exists; and I think that the words of subsection (3) can have full effect given to them without assuming such an intention on the part of the legislature."

A similar view was expressed by A. L. Smith L.J., at p. 231.

E    As I have said, Mr. Neuberger relied on the decision in *Nind's* case for the proposition that an underlessee, including a mortgagee by subdemise, cannot obtain relief against forfeiture under section 146(2), but only under section 146(4). In seeking to controvert that proposition Mr. Driscoll, for the mortgagee, relied not only on the wider definition of "lessee" in section 146(5)(*b*) but also on the comments of the editors of successive editions of *Wolstenholme & Cherry's Conveyancing Statutes*. It is convenient
F    to deal with those comments first. In the 6th edition (1891), of which the principal editor was the eminent conveyancer Mr. E. P. Wolstenholme, the following note appeared under section 14(3) of the Act of 1881, at p. 52:

> "As to an underlessee's right to relief against the superior landlord, see *Burt v. Gray* [1892] 2 Q.B. 98; *Creswell v. Davidson*, 56 L.T. 811. The former case, in which the underlessee was tenant of part of the
G    property only, decided he had none. But this seems a narrow construction of the section; and see *Doe v. Byron* (1845) 1 C.B. 623 (which was not cited in either *Burt v. Gray*, or *Creswell v. Davidson*), where it was held that an underlessee was a 'tenant' within the remedial clause against ejectment for non-payment of rent in [the Landlord and Tenant Act 1730 (4 Geo. 2, c. 28)], section 4."

H    In the 8th edition (1899), of which the editors included both Mr. Wolstenholme and Mr. Benjamin Cherry, the following note appeared under section 14(3) of the Act of 1881, at pp. 56–57:

> "An underlessee has under this section no right to relief against the superior landlord: *Nind v. Nineteenth Century Building Society*

[1894] 2 Q.B. 226—approving *Burt v. Gray*; *Creswell v. Davidson*. In
*Doe v. Byron* (which was not cited in [any] of the three last mentioned
cases), it was held that an underlessee was a 'tenant' within the
remedial clause against ejectment for non-payment of rent, in [the
Landlord and Tenant Act 1730], section 4; but see now [Conveyancing
and Law of Property Act 1892], section 4."

In the 11th edition (1925), vol. 1, of which Sir Benjamin Cherry, by then
the principal draftsman of the 1925 property legislation, was the principal
editor, the following note appeared under section 146(3), at p. 384:

"Lessee (subsection (5)(*b*)) includes an original or derivative
underlessee, overruling in this respect *Nind v. Nineteenth Century
Building Society*."

It is clear that the definition of "lessee" in section 146(5)(*b*) of the Act
of 1925 is wider than that in section 14(3) of the Act of 1881. Instead of
including merely an original underlessee, a derivative underlessee and the
heirs, executors, administrators and assigns of a lessee, it now includes
"the persons deriving title under a lessee." Although Mr. Neuberger
submitted that those words were no more than an omnibus description of
the heirs, executors, administrators and assigns of a lessee, it is plain that
they cannot be so limited. They must include not only those who acquire
the lessee's own estate but also those who acquire a lesser estate by way
of subdemise. So much indeed is recognised in the application of
section 38 of the Supreme Court Act 1981, subsection (2) of which, by
referring to "a person deriving title under" the lessee allows an underlessee
to obtain relief in the lessor's action: see under *Cooper-Smith* above.

If therefore the definition of "lessee" in section 146(5)(*b*) is applied to
"the lessee" in section 146(2), it is seen that where a lessor is proceeding
to enforce a right of forfeiture under section 146(1) an underlessee, no less
than the lessee himself, may apply to the court for relief. It is no longer
permissible, as a matter of construction, to restrict the class of applicants
to those who are in privity of contract or estate with the lessor. Such a
construction would fail to give full effect to subsection (5)(*b*). In order to
arrive at this conclusion it is unnecessary to rely directly either on *United
Dominions Trust Ltd. v. Shellpoint Trustees Ltd.* [1993] 4 All E.R. 310 or
on the view of the editors of *Wolstenholme & Cherry's Conveyancing
Statutes*, 11th ed., that *Nind v. Nineteenth Century Building Society* [1894]
2 Q.B. 226 has been overruled. The conclusion has the incidental merit of
producing an identity amongst those who can obtain relief under section
146(2), section 38 of the Supreme Court Act 1981 and section 138 of the
County Courts Act 1984.

From his very great experience in these matters Mr. Neuberger has
told us that it has never before been suggested that an underlessee can
obtain relief under section 146(2). Had I not heard the full and careful
arguments on these appeals, I too would have assumed the suggestion to
be ill-founded. But on reflection I do not think it surprising that
Parliament should have brought about the result I now believe it has.

All relief against forfeiture stems from that granted by the old Court
of Chancery in cases of non-payment of rent. The practice of the court
and the effect of its decrees are described by Wigram V.-C. in *Bowser*

251

**Q.B.**             Escalus Properties Ltd. v. Robinson (C.A.)             Nourse L.J.

A  *v. Colby* (1841) 1 Hare 109, 126, 130 and by Sir Herbert Cozens-
Hardy M.R. and Farwell L.J. in *Dendy v. Evans* [1910] 1 K.B. 263, 266–
267, 270. In the case where the lessor had already taken possession at law,
the court ordered him to grant a new lease to the lessee, the effect of
which, in the words of Farwell L.J., at pp. 270–271, was that: "The
forfeiture is stopped in limine; so that there is no question of any
destruction of an estate which has to be called into existence again." In
B  such a case the remedy, the only remedy which could be granted, was the
reinstatement of the lease. Equally, relief was granted to an underlessee by
the reinstatement of the lease, and with it the underlease. Against that
background it would not have been surprising if the draftsman of section
14 of the Act of 1881 had intended that an underlessee should be
able to apply thereunder for relief in the lessor's action. The comments of
C  the editors of *Wolstenholme & Cherry's Conveyancing Statutes*, 6th ed.,
suggest that a section of informed opinion thought that that objective
had been achieved. After the decision in *Nind's* case [1894]
2 Q.B. 226 had established that that was not the case, it would not have
been surprising if the draftsman of section 146 of the Act of 1925 had
intended to go one better. In my view he succeeded. I would therefore
hold that in *Dennis* the mortgagee is entitled to apply for relief either
D  under section 146(2) or (4).
    There remains the question whether the mortgagee ought to have been
granted relief under section 146(4) instead of subsection (2). That was a
question within the discretion of the judge. Although he dealt with the
matter quite briefly, it is clear that Judge Willis exercised his discretion by
deciding to proceed under subsection (2) and, moreover, that he was
E  entitled to do so. His omission to deal with the *Hare v. Elms* [1893] 1 Q.B.
604 point does not in my view invalidate his decision. The judge said:

> "An applicant for relief has an alternative and in some cases might
> prefer to proceed under subsection (4) if he wanted a clear new lease
> in his own name rather than taking on the old lease. In my view
> therefore the *Dennis* case comes under section 146(2) which in the
> proper exercise [of] my discretion involves the payment of the arrears
F  > of ground rent and service charges only with no mesne profits (subject
> to any argument about costs if these are not agreed)."

As a general point in cases of this kind, a judge might well think it
inequitable that a landlord who had received a premium should receive in
addition mesne profits vastly exceeding a rent whose minimal rate had
been the very means of his acquiring the premium. As in the other three
G  cases, I would also dismiss the appeal in *Dennis*.

    ROCH L.J.    I agree.

    HENRY L.J.    I also agree.

                                        *Appeals dismissed with costs.*
                                        *Leave to appeal refused.*

H    *Solicitors: Malthouse Chevalier; George Ide Phillips, Bognor Regis;
Denton Hall; Shoosmiths & Harrison, Northampton; Veale Wasbrough,
Bristol.*

                                                          H. D.