**EXHIBIT  94**

C. A.

FINANCINGS LTD. *v.* BALDOCK.

1962
*Dec.* 17, 18.

[1961 F. No. 2102.]

Lord Denning
M.R.,
Upjohn and
Diplock L.JJ.

*Hire-purchase—Hire-purchase agreement—Damages for breach—Hirer's*
*failure to pay first two instalments—Termination of agreement by*
*owners—No repudiation by hirer—Seizure of goods by owners—*
*Quantum of damages.*

*Damages—Hire, contract of—Termination for non-payment of hire—*
*Non-payment not a repudiation — Measure of damages — Hire-*
*purchase agreement.*

Under an agreement dated January 25, 1960, for the hire pur-
chase of a Bedford truck for the aggregate sum of £772 16s. the
hirer paid £100 on the signing of the agreement. The balance was
payable over a period of two years by monthly instalments of
£28 0s. 8d. The agreement provided by clause 8 that if the hirer
should fail to pay any instalment within 10 days after it had
become due " the owner may by written notice forthwith and for all
" purposes terminate the hiring." By clause 9: " Should the
" hiring be terminated by clause 8 hereof, the owner may . . .
" without any notice retake possession of the goods . . ." Clause 11
provided that should the hiring be terminated by the owner under
clause 8, " the hirer shall . . . forthwith pay to the owner either
" (a) such further sum as with the total amount of any instalments
" previously paid hereunder will equal two-thirds of the total hiring
" cost shown in the schedule as agreed compensation for the
" depreciation of the goods or (b) the amount of all instalments
" and other moneys then already due hereunder, whichever is the
" greater."

The hirer failed to pay the first two instalments due on
February 25 and March 22 respectively amounting to £56 1s. 4d.
On April 7, when the hirer had had the truck for 10 weeks, the
owners served a written notice on him expressed to be in exercise
of their powers under the agreement which stated " we now put an
" end to the hiring and will forthwith take possession of our
" property . . . this is entirely without prejudice to our remedies
" against you for any moneys . . . recoverable from you under
" this agreement." The owners took possession of the truck, their
agent who took the truck stating that they would hold it for seven
days to give the hirer the opportunity of repaying the arrears.
The truck was sold by the owners' agent on October 20, 1961, for
£140. The owners claimed a total sum of £538 1s. The master
held that the owners had not been reasonable in terminating the
agreement as they did. He awarded to them £56 1s. 4d., the amount
of the two instalments in arrears with interest at 10 per cent.
(being the rate payable on overdue instalments) from the time
when they became due. The owners appealed :—

*Held,* that the failure by the hirer to pay the two instalments did
not amount to a repudiation by him of the hire-purchase agreement
(post, pp. 112, 114, 120); that clause 11 was unenforceable being a

**2 Q.B.**            QUEEN'S BENCH DIVISION.                    ·105

penalty clause and that therefore the owners, who had retaken the
vehicle, could recover damages only for any breach up to the date of
termination and not thereafter (post, p. 111). Accordingly, the
owners were entitled only to the two instalments in arrear amount-
ing to £56 1s. 4d. with interest at 10 per cent. up to the date of
judgment.

    *Cooden Engineering Co. Ltd.* v. *Stanford* [1953] 1 Q.B. 86;
[1952] 2 T.L.R. 822; [1952] 2 All E.R. 915, C.A., and *Bridge* v.
*Campbell Discount Co. Ltd.* [1962] A.C. 600; [1962] 2 W.L.R. 439;
[1962] 1 All E.R. 385, H.L.(E.) applied.

    *Per* Upjohn and Diplock L.JJ. Where under the express terms
of a contract one party has in the circumstances which have arisen
a right to determine the contract, no question whether the exercise
of the right was "reasonable" or "unreasonable" affects the
measure of damages (post, pp. 115, 122, 123).

    *Yeoman Credit Ltd.* v. *Waragowski* [1961] 1 W.L.R. 1124;
[1961] 3 All E.R. 145, C.A., and *Overstone Ltd.* v. *Shipway*
[1962] 1 W.L.R. 117; [1962] 1 All E.R. 52, C.A. considered.

    *Per* Lord Denning M.R. While the decisions in *Yeoman Credit
Ltd.* v. *Waragowski* and *Overstone Ltd.* v. *Shipway* (supra) can be
distinguished on the ground that they were cases of repudiation by
the hirer, I am disturbed about the assessment of damages in them
as a matter of principle. I should have thought that the damages
should be the same whichever party terminated the hiring (post,
p. 113).

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

APPEAL from Master Harwood.

In this action the plaintiffs, Financings Ltd., claimed against
the defendant, John William Baldock, the aggregate sum of
£538 1s. 0d. alleged to be due to them as damages under a hire-
purchase agreement dated January 25, 1960.

By that agreement between the plaintiffs as the owners of the
one part and the defendant as hirer of the other part the hirer
agreed to take on hire-purchase terms a Bedford five-ton truck.
He paid £100 down and the balance of £672 16s. 0d. was payable
by 24 monthly instalments of £28 0s. 8d. each, the first instal-
ment being payable on February 25, 1960. The hirer failed to
pay that instalment and also the second payable on March 22.
On April 7 the owners gave notice terminating the agreement
and retook possession of the truck. That was sold on October 20,
1961, for £140. In this action the owners claimed £538 1s. 0d.
damages.

    The terms of the hire-purchase agreement are fully stated in
the headnote and in the judgment of Lord Denning M.R.

On the owners' application to sign judgment in default of
defence Master Harwood considered the decision in *Overstone*

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

*Ltd.* v. *Shipway* [1] and came to the conclusion that the test was reasonableness which had to be applied when the agreement was determined. He held that it was not reasonable in the circumstances of the present case for the owners to have treated the contract as at an end and to terminate it and he awarded to the owners the sum of £56 1s. 4d., being the aggregate amount of the unpaid instalments, with interest thereon at 10 per cent.

The owners appealed on the ground that the master had misdirected himself (inter alia) (1) in holding that in judging whether or not it was unreasonable for the owners to terminate the agreement regard should only be had to matters occurring before and at the time of the giving of the notice of determination and not to matters which occurred after the notice was given; (2) in holding that the evidence showed that the hirer had the intention of continuing to be bound by the agreement; (3) in holding that the damages suffered by the owners arose from the voluntary election by the owners to terminate the agreement and not from the hirer's breaches of the agreement.

*Alan Rawley* for the owners. Having regard to the decision of the House of Lords in *Bridge* v. *Campbell Discount Co. Ltd.* [2] the owners cannot claim the sum fixed by clause 11 of the hire-purchase agreement for that sum is a penalty, and the clause is so regarded where, as here, owners terminate upon a hirer's breach. By their pleadings the owners ignore the penalty clause and claim damages for breach of contract: *Overstone Ltd.* v. *Shipway.* [3] Master Harwood has only awarded to them £56 1s. 4d., the amount of the two instalments unpaid at the date when the hiring was determined, together with interest. The master considered *Overstone Ltd.* v. *Shipway* [3] and concluded that whether or not the owners were entitled to damages depended on whether they had acted reasonably in terminating the hiring. He was of the opinion that the owners had not acted reasonably in this case and, accordingly, that any loss they had suffered over and above the amount of the unpaid instalments was not attributable to the hirer's breach of contract but to their own election to terminate the hiring.

The question of reasonableness is purely a matter to be taken

[1] [1962] 1 W.L.R. 117; [1962] 1 All E.R. 52, C.A.
[2] [1962] A.C. 600; [1962] 2 W.L.R. 439; [1962] 1 All E.R. 385, H.L.(E.).

[3] [1962] 1 W.L.R. 117; [1962] 1 All E.R. 52, C.A.

**2 Q.B.**        QUEEN'S BENCH DIVISION.                    107

into account in mitigation of damages. It may in some cir-
cumstances be quite unreasonable to terminate the hiring where,
for example, the hirer is only fractionally late in paying an
instalment. In such a case termination may not be the correct
solution and any loss suffered by the owners as a result of their
hasty action may be their own fault. But in this case the owners
clearly acted reasonably. Moreover, they held the lorry for 14
days to allow the hirer to pay the arrears. It became obvious
that he could not do so. Master Harwood held that he was not
entitled to have regard to the conduct of the owners after the
service of the notice of termination. He was wrong to exclude
this evidence when considering the question of reasonableness.
If, as is contended, the owners acted reasonably, they are
entitled to recover as damages the loss which they suffered by
reason of the hirer not completing his contract: *Yeoman Credit
Ltd.* v. *Waragowski*[4]; *Overstone Ltd.* v. *Shipway.*[5] Those dam-
ages are calculated by deducting from the hire-purchase price
(i) the option to purchase fee, (ii) the amounts already paid by the
hirer, including the down payment of £100, (iii) the price realised
on the sale of the vehicle and (iv) some part of the interest
charges by reason of the fact that by selling the vehicle the
owners have received an accelerated payment of part of their
capital outlay. It is conceded that the amount to be deducted
from the hire-purchase price in respect of the sale price of the
vehicle should be £400 and not £140. Master Harwood assessed
the value of the vehicle at the date of termination as £400. It
is conceded that the delay in selling the vehicle and its con-
sequent depreciation in value should not be visited upon the
hirer.

The basis of assessing the damages now claimed was laid
down in *Yeoman Credit Ltd.* v. *Waragowski*[6] and *Overstone Ltd.*
v. *Shipway,*[7] and those decisions bind this court. Further, in
*Bridge's* case[8] Lord Denning said that damages should be
assessed on this basis and the case was remitted to the county
court judge to determine the amount of the loss, if any, which
the hire-purchase company sustained. If the hirer exercises his
option to determine the hiring he must pay for the privilege of
so doing. Where such is the case, the sum fixed by clause 11
is not a penalty. That is the present state of the law in so far

[4] [1961] 1 W.L.R. 1124; [1961]           [6] [1961] 1 W.L.R. 1124.
3 All E.R. 145, C.A.                        [7] [1962] 1 W.L.R. 117.
  [5] [1962] 1 W.L.R. 117.                    [8] [1962] A.C. 600, 632.

108                    QUEEN'S BENCH DIVISION.            **[1963]**

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

as these are decisions on the point which bind this court. In *Bridge's* case opinion was equally divided.

Those cases did not proceed on the basis of repudiation by the hirer as opposed to mere termination by the owners. In *Overstone Ltd.* v. *Shipway* [9] Willmer L.J. said that he thought that it was unnecessary to hold that the defendant's refusal to pay the instalments amounted to a repudiation of the contract although, on the facts, it was a possible contention. To make a distinction between a case where the hirer has repudiated and a case where the owners have exercised a right to terminate upon a breach by the hirer is both unnecessary and illogical. In any event, clause 8 of this agreement provides, inter alia, that if any instalment of hire-rent is not paid punctually then the owners are entitled to terminate. The effect of this clause is to elevate the term providing for punctual payment to the status of a condition of the contract: see the judgment of Somervell L.J. in *Cooden Engineering Co. Ltd.* v. *Stanford.* [10] Where there is a breach of a condition in a contract the innocent party is entitled on principle to accept the breach as a repudiation and to rescind. It follows that in this case there is no need for the owners to prove on the facts that the hirer has repudiated; they are entitled to rely on the hirer's breach of condition and to exercise their right to terminate. In other words, on its true construction, the effect of this agreement is to provide that failure by the hirer to make punctual payment shall be regarded as repudiation on his part.

If repudiation must be proved on the facts then there was a repudiation here. The hirer may have desired to continue but could not in fact do so. In an instalment contract the test of repudiation is objective and not subjective: *Maple Flock Co. Ltd.* v. *Universal Furniture Products (Wembley) Ltd.* [11]

The hirer did not enter an appearance.

LORD DENNING M.R. In this case we have had the great advantage of hearing Mr. Rawley, who knows much about hire-purchase matters, and he has presented the case very fairly before us in the absence of the hirer or any one on his behalf.

The facts are these: on January 25, 1960, the hirer entered into a hire-purchase agreement with Financings Ltd. (by their

[9] [1962] 1 W.L.R. 117.
[10] [1953] 1 Q.B. 86, 96; [1952] 2 T.L.R. 822; [1952] 2 All E.R. 915, C.A.
[11] [1934] 1 K.B. 148; 50 T.L.R. 58, C.A.

**2 Q.B.**     QUEEN'S BENCH DIVISION.                                    109

then name of Financings (Southern) Ltd.) whereby he agreed to
take on hire-purchase a Bedford five-ton truck. The cash price of
the truck was £675. He paid £100 down as the first instalment
of rent. The hire-purchase company charged as interest the sum
of £97 16s. The result was that altogether, in addition to the
£100, they wanted £672 16s. to be paid to them. They stipulated
that it was to be paid to them over a period of two years by 24
monthly instalments of £28 0s. 8d. each, the first payment being
on February 25, 1960, and thereafter monthly. If he paid all
those instalments, then at the end of the two years he had an
option to purchase for £1 10s. 0d.

The hire-purchase agreement was in familiar terms. I must
point out at once that it was not for two years certain. It was
for two years "unless determined by the hirer or the owner"
and there was a provision that interest be paid at 10 per cent.
on all overdue instalments. Clause 8 ran: "Should the hirer
"fail to pay the initial instalment or any subsequent instalment
"within ten days after the same shall have become due . . . or
"if he shall die . . . the owner may by written notice forthwith
"and for all purposes terminate the hiring." Clause 10: "The
"hirer may at any time terminate the hiring by returning the
"goods at his own expense and risk to the owner." Clause 11:
"Should the hiring be terminated by the hirer under clause 10
"or by the owner under clause 8 hereof, the hirer shall . . .
"forthwith pay to the owner either (a) such further sum as with
"the total amount of any instalments previously paid hereunder
"will equal two-thirds of the total hiring cost shown in the
"schedule as agreed compensation for the depreciation of the
"goods or (b) the amount of all instalments and other moneys
"then already due hereunder, whichever is the greater." Those
are all the clauses I need read.

The initial instalment of rent of £100 was paid, but the first
payment due thereafter on February 25 was not paid. The com-
pany on March 22 wrote this letter to the hirer: "We have to
"remind you that your account shows arrears of £28 0s. 8d."—
that was the instalment of February 25—"with a further amount
"due on the 25th inst. Please ensure that your remittance for
"£56 1s. 4d. reaches us on the 26th inst." He did not pay, with
the result that on April 7, 1960—that is, after the hirer had had
the lorry 10 weeks—the hire-purchase company sent a messenger
to him with this notice of termination: "As you are in default
"in payment of moneys due under this agreement, we give you
"notice that in exercise of our powers under this agreement, we

C. A.

1962

FINANCINGS
LTD.
v.
BALDOCK.

Lord Denning
M.R.

110                    QUEEN'S BENCH DIVISION.          **[1963]**

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

Lord Denning
M.R.

"now put an end to the hiring, and will forthwith retake posses-
"sion of our property. You must understand that this is entirely
"without prejudice to our remedies against you for any moneys,
"damages, or expenses recoverable from you under this agree-
"ment." The messenger handed that notice to the hirer; he
collected the lorry from the hirer's premises and took it away. The
hirer said he could not possibly pay the arrears at the time but
might possibly be able to raise the money within the next three
days. The messenger said that they would hold the lorry for
seven days to give him that opportunity. They held it for a
fortnight but heard nothing. The company then put the lorry
into the hands of the dealer who originally handled it, but they
did not do what one would have thought would be the reasonable
thing to do, try to let it on hire-purchase again: they asked
the dealers to try to sell it. They did not sell it for 18 months,
until eventually on October 20, 1961, they sold it for £140.
Then on November 27, 1961, they issued the writ in this action
claiming a total sum of £538 1s. In the result they have
already had the £100: the hirer had the lorry for 10 weeks; and
they sued in addition for £538 1s. The hirer did not enter an
appearance. But they did not get final judgment. They got
judgment for damages to be assessed. The matter was referred
to the master. Master Harwood (applying, as he thought, the
latest case in this court of *Overstone Ltd.* v. *Shipway* [1]), held
that the hire-purchase company had not acted reasonably in
terminating the agreement as they did; and he was not prepared
to give them the damages for which they asked. He awarded
them the arrears of the two instalments amounting with interest
at 10 per cent. from the time that they became due, to £56 1s. 4d.
The hire-purchase company appeal to this court.

   Undoubtedly the cases in the past give rise to some conflict,
and therefore I will try to state the matter on principle. It
seems to me that when an agreement of hiring is terminated by
virtue of a power contained in it, and the owner retakes the
vehicle, he can recover damages for any breach up to the date
of termination but not for any breach thereafter, for the simple
reason that there are no breaches thereafter. I see no difference
in this respect between the letting of a vehicle on hire and the
letting of land on a lease. If a lessor, under a proviso for re-
entry, re-enters on the ground of non-payment of rent or of dis-
repair, he gets the arrears of rent up to the date of re-entry and

---

[1] [1962] 1 W.L.R. 117; [1962] 1 All E.R. 52, C.A.

**2 Q.B.**    QUEEN'S BENCH DIVISION.    111

damages for want of repair at that date, but he does not get
damages for loss of rent thereafter or for breaches of repair
thereafter.

In this and many hire-purchase agreements the owners have
sought to avoid that general principle by inserting a "minimum
"payment" clause such as we see in clause 11 (a) here, which
provides that, should the hiring be terminated, whether by the
owner or the hirer, the hirer has to pay at least two-thirds of
the total hiring cost. By a series of cases starting with the deci-
sion of the Court of Appeal in *Cooden Engineering Co. Ltd.* v.
*Stanford,*[2] and culminating in the decision of the House of Lords
in *Bridge* v. *Campbell Discount Co. Ltd.,*[3] such a clause has now
been held to be a penalty clause. The owners by such a clause
are really seeking, on an early termination of the hiring, to recover
damages for loss of future rentals when they have not lost any.
They have no right to future rentals after they have terminated
the agreement and got the vehicle back. They cannot, therefore,
pray clause 11 (a) in aid. And clause 11 (b) cannot help them:
for that applies only when the hiring lasts so long that the instal-
ments are greater than two-thirds of the total hiring cost. The
owners in that event are entitled to the unpaid instalments or
other moneys due. There can be no objection to such a provision,
but it adds nothing to the general principle I have stated. It has
no application to this case.

Seeing that they can no longer rely with any confidence on the
"minimum payment" clause, the owners have reverted recently
to a claim for damages under the general law. But they can only
do so, it seems to me, subject to the general principle which I
have already stated, namely, that when they terminate the hiring
and retake the vehicle, they can only get damages for any
breaches up to the date of termination but not thereafter. That
principle is implicit in what Salter J. said as long ago as 1926
in *Elsey & Co. Ltd.* v. *Hyde,*[4] an unreported case quoted by
Jenkins L.J. in *Cooden Engineering Co. Ltd.* v. *Stanford.*[5]
Salter J. took the very case "where the hire is determined by
"the owner, because the hirer is in arrear with his payments.
"It is proved that this is a breach of this contract, and it is
"proved that that breach, apart from any termination of the

C. A.

1962

FINANCINGS
LTD.
v.
BALDOCK.

Lord Denning
M.R.

[2] [1953] 1 Q.B. 86; [1952] 2
T.L.R. 822; [1952] 2 All E.R. 915,
C.A.
[3] [1962] A.C. 600; [1962] 2 W.L.R.
439; [1962] 1 All E.R. 385, H.L.(E.).

[4] (1926) Jones & Proudfoot's Notes
on Hire-Purchase Law, 2nd ed., 107,
112.
[5] [1953] 1 Q.B. 86, 102.

112                    QUEEN'S BENCH DIVISION.        **[1963]**

C. A.
1962
────
FINANCINGS
LTD.
*v.*
BALDOCK.
────
Lord Denning
M.R.
────

" hirer, would give the owner a right to damages against the hirer.
" But what would those damages be? They would be interest
" on the amount unpaid and nothing more. The fact that the
" hirer is in arrear with his payments will not entitle the owner
" to any damages for depreciation of these things. The reason
" that they have suffered is that they have secondhand goods
" put on their hands before they have received very much money
" in respect of them. That is not the result of the hirer's breach
" of contract, in being late in his payments, it is the result of
" their own election to determine the hiring." That passage is
in my view good law: and Jenkins L.J. seems to have accepted
the reasoning in it as correct.

In applying this principle, I asked Mr. Rawley: what were
the breaches by the hirer up to the termination of the hiring?
He could only point to the simple failure to pay the two instal-
ments of rent. In these circumstances the only moneys which
the owners can recover are those two instalments which are in
arrear and unpaid with the interest thereon. If the owners could
prove damages for breach of contract to repair, they could recover
them. But no more. When you remember that the hirer only
had the vehicle 10 weeks and that the owners have already
received the initial instalment of £100, it seems to me that if they
get these two instalments amounting with interest at 10 per
cent. up to the date of judgment to £56 1s. 4d., it meets the
justice of the case.

So much for the matter of principle: but now for the
authorities. They are *Yeoman Credit Ltd.* v. *Waragowski* [6] and
*Overstone Ltd.* v. *Shipway,* [7] and a passage at the end of my
own speech in *Bridge's* case. [8] When those cases are examined,
it will be found that there was not only a failure to pay
past rentals, but there was a *repudiation* by the hirer of his
obligation to pay future rentals. Thus in *Waragowski's* case [9]
the hirer, by his long non-payment for six months, evinced an
intention no longer to be bound by his contract. In *Overstone
Ltd.* v. *Shipway* [10] he had written a letter saying: " I cannot
" afford to carry on paying for this car." In *Bridge's* case [11] he
had written saying: " I am very sorry but I will not be able to
" make any more payments." Once the hirer repudiated his
liability for future rentals, the owners were entitled to treat the

[6] [1961] 1 W.L.R. 1124; [1961] 3        [9] [1961] 1 W.L.R. 1124.
All E.R. 145, C.A.                      [10] [1962] 1 W.L.R. 117.
    [7] [1962] 1 W.L.R. 117.               [11] [1962] A.C. 600.
    [8] [1962] A.C. 600, 632.

**2 Q.B.**     QUEEN'S BENCH DIVISION.     118

repudiation as itself a breach going to the root of the contract: and, on accepting it as such, they were entitled to regard the hiring as at an end and retake the vehicle. The *repudiation* being itself a breach which took place before the termination, it is within the class of breaches for which the owners can recover damages according to the principle I have already stated. But if there is no repudiation, and simply, as here, a failure to pay one or two instalments (the failure not going to the root of the contract and only giving a right to terminate by virtue of an express stipulation in the contract), the owners can only recover the instalments in arrear, with interest, and nothing else: for there was no other breach in existence at the termination of the hiring. The same result can be reached by saying that, on a repudiation, it is " reasonable " for the owners to terminate the hiring: whereas on a mere non-payment of instalments, it is " unreasonable." But I would prefer to ask whether there is a repudiation or not of the obligation to pay future instalments.

But while those cases can be distinguished on the ground that they were cases of repudiation, I must say I am disturbed about the assessment of damages in them. Take the present case. A hirer does not pay two instalments, whereupon the owners retake the vehicle. There is no repudiation. The damages are limited to the unpaid instalments with interest. But take another case. If he had been more courteous and had written: " I cannot pay " any more instalments," that would have been a repudiation and the damages would be multiplied tenfold. It seems that in the " repudiation " cases the damages were calculated on the basis that the hirer had bound himself by a firm contract to pay all instalments up to the very end—indeed, as if he had made a firm contract to purchase—and had repudiated it. No regard seems to have been paid to the fact that the hirer had the right to terminate the hiring at any time and thus bring to an end his obligation to pay any more instalments. I should have thought that, on this account, he would not be liable for any more damages than if he had himself given a notice to terminate (see *Withers* v. *General Theatre Corporation Ltd.*[12]), and that if he had given notice himself, the damages would be limited to the breaches up to the date of termination and no more: unless, of course, the owners could rely on the " minimum payment " clause. As a matter of principle, I should have thought that the damages should be the same in either case, whoever terminated the hiring.

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

Lord Denning
M.R.

[12] [1983] 2 K.B. 536, 549, C.A.

114                QUEEN'S BENCH DIVISION.        **[1963]**

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

Lord Denning
M.R.

I say no more on this point, however, because it does not arise for decision today.

Suffice it to say that in this case there was no repudiation but only non-payment: for which the owners themselves, under an express stipulation in that behalf, terminated the agreement. In that situation they can only recover the unpaid instalments with interest. I think that the master was right and I would dismiss this appeal.

UPJOHN L.J. I agree that this appeal must be dismissed. The owners in this case make a claim for damages in respect of a hire-purchase agreement which they have lawfully terminated and they claim all the instalments that would have been paid had the agreement run its full course, making allowance, of course, for the value of the lorry that they have taken and sold and other ancillary matters. The master has done no more than award them the arrears of the rent which were outstanding and unpaid—there were two instalments only—at the date when the owners terminated the agreement. It is, of course, of the essence of this case that the hirer has not repudiated his contract. He did no such thing: he committed two breaches of it: he failed to pay the first two monthly instalments that were due in February and March, but that did not amount, as the master in effect found, to a repudiation, and on the facts of this case I entirely agree with the finding of the master.

What, then, was the situation? When the hirer failed to pay the second instalment, the owners, as they were perfectly entitled to do under clause 8 of the agreement, terminated the contract and retook the lorry. There was nothing unreasonable in that at all; it was their option to do so. Thereupon it seems to me that clause 11 operated: " Should the hiring be terminated "—leaving out the irrelevant words—" by the owner under clause 8 hereof, the hirer " shall forthwith pay to the owner either (a) a further sum which " amounts to two-thirds of the total hiring cost or (b) the amount " of all instalments and other moneys then already due, which- " ever is the greater." The whole trouble from the owners' point of view is that the House of Lords have held that the sum to be claimed under paragraph (a) is a penalty and irrecoverable. Whether the owners can recover the instalments already due under paragraph (b) is doubtful. The argument is that as the sums irrecoverable under paragraph (a) are larger than the sums recoverable under paragraph (b), then on a strict construction of clause 11 nothing can be recovered under paragraph (b). I need

**2 Q.B.**        QUEEN'S BENCH DIVISION.                    115

not pause to consider that, for the reason that at the date of the
termination of the contract by the owners, admittedly the hirer
was already in breach of his obligation to pay these two instal-
ments, and so, of course, the owners can sue for those two
instalments as damages and do not have to rely on clause 8, and
that cannot be disputed.

But that seems to me prima facie the extent of the remedy of
the owners in this action, for there was no repudiation by the hirer.
The master reached the same result, but he did so by a rather differ-
ent route because he considered that the notice of termination had
been given unreasonably. This appears to introduce some prin-
ciple whereby damages may vary according to some test as to
whether it was reasonable to give a notice of termination. I
should be sorry to find a new concept of law introduced that a man
may unreasonably exercise his right of termination, which was
clearly given to him by the contract which he has entered into with
the hirer, and thereby alter his rights and liabilities. As I observed
earlier, the owners were perfectly entitled to determine the agree-
ment on the failure to pay an instalment, and they are not to be
criticised for that. I think that this question of reasonableness was
introduced by the master through a too literal reading of the obser-
vations of two of the judges in *Overstone Ltd.* v. *Shipway.*[13] It is
true that they used the word "reasonable" in reference to
termination of the contract. I am sure that they used this word
not as laying down any test, except in the sense that it was
reasonable to accept the hirer's repudiation and put an end to
the contract. I go straight to the judgment of Holroyd Pearce
L.J. in that case.[14] He read some words of Salter J. quoted in
*Cooden Engineering Co. Ltd.* v. *Stanford.*[15] I only propose to
read the last sentences of the quotation: "The reason that they
" have suffered is that they have second-hand goods put on their
" hands before they have received very much money in respect
" of them. That is not the result of the hirer's breach of con-
" tract, in being late in his payments, it is the result of their
" own election to determine the hiring." On the next page
Holroyd Pearce L.J. said this[16]: "Where, as in *Yeoman
" Credit Ltd.* v. *Waragowski*[17] and in the present case, the hirer
" pays no instalments and clearly does not intend to go on with
" the hiring, the only reasonable solution for the impasse is for
" the owner to retake the hired article. In such a case the

C. A.

1962

FINANCINGS
LTD.
v.
BALDOCK.

Upjohn L.J.

---

[13] [1962] 1 W.L.R. 117.          [16] [1962] 1 W.L.R. 117, 123.
[14] Ibid. 122.                    [17] [1961] 1 W.L.R. 1124.
[15] [1953] 1 Q.B. 86, 102.

116                    QUEEN'S BENCH DIVISION.              **[1963]**

C. A.
1962

FINANCINGS
LTD.
v.
BALDOCK.

Upjohn L.J.

" proposition put forward by Davies L.J.," who delivered the
judgment in *Waragowski's* case,[17] " applies." Pausing there, it
seems to me quite plain that what Holroyd Pearce L.J. is
saying is that the hirer had in fact repudiated, for he says that
the hirer paid no instalments and clearly did not intend to go on
with the hiring. When he continued by saying that the only
reasonable solution was to retake the vehicle, I read that as
meaning that the reasonable solution which the owner took was
to accept that repudiation and so put an end to the contract.
It is clear, too, from the next sentence, which I have read, that
Holroyd Pearce L.J. was treating *Waragowski's* case [17] again as a
case of repudiation, accepted by the owner. But then he turns to
the case where there is no repudiation and he says this [18]: " Where
" the hirer is slightly in arrears and does not show that he is *not*
" going on with the contract, the seizure of the hired article may
" not be the reasonable solution of the situation, and it may well
" be that damage consequent on and flowing from it was not
" caused by the hirer's breach, but by the owner's decision to
" exercise his right to retake possession." That, of course, was
a reflection of Salter J.'s words. I think, as did the master,
that Holroyd Pearce L.J. had in mind something very like this
case. The owner was entitled to terminate the contract, but
that does not mean in this case that he was entitled to treat it as
repudiation by the hirer. Therefore the only damages for which he
could sue were those pointed out by clause 11 of the contract, to-
gether with any claim he might have for some other damage for
antecedent breach: for example, damage to the lorry or something
of that sort which he could prove had occurred before he terminated
the contract, but he is not entitled to damages on the footing of
repudiation. That, I venture to think, is what Holroyd Pearce
L.J. said there. Davies L.J. said this [19]: " I agree with my
" Lord that really the facts of this case are not distinguishable
" from *Waragowski's* case.[20] It seems to me that if a hirer
" under a hire-purchase agreement is guilty of such a breach or
" non-observance of the terms of the agreement as would satisfy
" any court, not merely that the hire-purchase company had a
" right to terminate the contract but that, in all the circum-
" stances, it would be reasonable to terminate the contract, it
" cannot thereafter be said on behalf of the hirer: ' You exercised
" ' your remedy for my breach of contract by terminating the
" ' contract, and having done that you cannot claim damages for

[17] [1961] 1 W.L.R. 1124.           [19] Ibid. 130.
[18] [1962] 1 W.L.R. 117, 123.       [20] [1961] 1 W.L.R. 1124.

**2 Q.B.**    QUEEN'S BENCH DIVISION.    117

" ' my non-performance or breach of contract during such period " ' as it had to run thereafter.' " There again, as I understand the Lord Justice, he is really saying that if the hirer has repudiated the contract so that the only sensible or reasonable thing to do is to accept that repudiation and then sue for damages for breach, the hirer cannot thereafter turn round and say: " I " am entitled to say that the damages were caused not by my " breach but by your election to terminate the agreement." So to my mind it is clear that where there is a case of repudiation, and the owner retakes possession on the footing that he is accepting this wrongful repudiation as putting an end to the contract, he is entitled to sue at common law for damages for the wrongful repudiation, and so he may properly claim the instalments that would have become payable and would have been paid had the contract run its course, making allowance, of course, for the value of the lorry and other ancillary matters.

For my part I desire to throw no doubt on the correctness of *Waragowski's* case[20] or *Overstone's* case,[21] in cases of repudiation. But, as I have said, this is not a case of repudiation: this is a case where the owner elected to terminate the contract, and owing to his difficulties on clause 11 of the contract he can only sue for any breaches which can be proved before he terminated the contract.

For these reasons I agree that this appeal must be dismissed.

DIPLOCK L.J. In order to avoid the necessity of complying with the statutory requirements relating to money-lenders and to bills of sale, hire-purchase finance companies enter into a contract with the hirer whereby they hire to him a chattel for a fixed period at an agreed monthly rental and confer upon him an option to purchase the chattel at the end of the fixed period for an agreed (and nominal) sum. The business nature of the transaction is that of moneylending, and accordingly clauses are inserted by the finance company in the contract of hire in an endeavour to ensure that upon breach by the hirer of his obligation to pay an instalment of hire, the finance company shall be entitled, not only to terminate the contract of hire, but also to recover from the hirer sums which bear no relation to the damages appropriate to a breach of a genuine contract of hire. But hire-purchase finance companies cannot eat their cake and have it. If they choose to conduct their business by entering into contracts of hire of

[20] [1961] 1 W.L.R. 1124.          [21] [1962] 1 W.L.R. 117.

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

Upjohn L.J.

118                    QUEEN'S BENCH DIVISION.        **[1963]**

C. A.

1962

FINANCINGS
LTD.

v.
BALDOCK.

Diplock L.J.

chattels, instead of entering into moneylending contracts secured
by chattel mortgages, their legal rights will be governed by the
terms of the contracts into which they enter and by the general
principles of law applicable to contracts of that nature.

In the present case the owners, before the decision of the
House of Lords in *Bridge* v. *Campbell Discount Co. Ltd.*,[22]
entered into a contract of hire with the hirer whereby they under-
took to hire to him for a period of two years a motor-van at an
initial instalment of rent of £100 and 24 monthly instalments of
£28 0s. 8d. each, and gave him an option to purchase it at the end
of the hiring for £1 10s. Clause 8 of that contract specified a
number of events upon the occurrence of any of which the owners
had an option to terminate the hiring, i.e., to put an end to the
contract. Those events were: " Should the hirer fail to pay the
" initial instalment of rent in full at the time when this agreement
" is made or to pay any subsequent instalment or other sum
" payable hereunder in full within ten days after the same shall
" have become due or if he shall die or have a receiving order
" made against him or be made bankrupt or call any meeting of
" or make any arrangement or composition with his creditors
" or if the hirer being a limited company shall call any meeting
" of its creditors or be wound up compulsorily or go into
" voluntary liquidation or have a receiver of any of its assets
" appointed or if the goods or any part thereof shall be seized
" under any execution or legal process issued against the hirer or
" under any distress for rent or if the hirer shall fail to observe
" or fulfil any term of this agreement or shall do or suffer anything
" whatsoever which in the owner's opinion bona fide formed upon
" reasonable grounds will or may have the effect of jeopardising
" the owner's right of property in the goods."

It is to be observed that some of these events, such as the
death of the hirer, would not constitute breaches of contract on
his part at all, others do constitute breaches of contract by the
hirer, but these are not limited to breaches going to the root of
the contract which, if committed, would, apart from any express
provision of the contract, have entitled the owners to treat
it as wrongfully repudiated by the hirer. They included such
breaches as delay in payment of a single instalment for more
than 10 days, even if the instalment is tendered on the eleventh
day after it fell due. That time of payment is not of the essence
of the contract is apparent from the provision in clause 1 that

[22] [1962] A.C. 600.

**2 Q.B.**        QUEEN'S BENCH DIVISION.                            119

interest at 10 per cent. per annum shall be paid on all overdue
instalments, thus providing an express remedy in damages, of
which the measure is agreed, for breach of the hirer's obligation
to pay an instalment on the due date. All that clause 8 does
is to entitle the owners to terminate the hiring upon the occurrence
of any of the events therein defined, whether amounting to
breaches of contract or not, and to put an end to the hirer's
right to possession of the chattel. This clause does not deal
expressly with any other rights, apart from the right to retake
possession, which accrue to the owners upon the exercise of
the option to terminate the hiring so granted to them. Those
are left to be dealt with by other express provisions in the
contract or, in so far as the contract is silent or its relevant
provisions unenforceable, by the general principles of the common
law of contract. Clause 11 of the contract does contain express
provisions as to the rights of the plaintiffs as owners in the event
of their exercising their option to terminate the contract under
clause 8. They are the same, although I do not think this is
relevant for the purpose of deciding the present appeal, as in the
case where the hirer exercises his contractual option under clause
10 of the contract to determine the hiring without any breach
of contract by either party thereto. So far as is relevant, clause
11 reads as follows: " Should the hiring be terminated by the
" owner under clause 8 hereof the hirer shall forthwith pay to
" the owner either (a) such further sum as with the total amount
" of any instalments previously paid hereunder will equal two-
" thirds of the total hiring cost shown in the schedule as agreed
" compensation for the depreciation of the goods or (b) the amount
" of all instalments and other moneys then already due here-
" under, whichever is the greater." This purports to give the
owners the right to recover a sum of money representing which-
ever is the higher result of two alternative calculations. This
sum is not expressed to be payable as damages for breach of
contract. It is payable irrespective of whether the event giving
rise to the owners' right to terminate the contract is a breach of
contract by the hirer or not. It is an arbitrary sum which,
where the event giving rise to the owners' right to determine
the contract is a breach of contract by the hirer, is not a genuine
pre-estimate of the loss suffered by the plaintiffs as a result of
such breach. In *Bridge* v. *Campbell Discount Co. Ltd.*[23] it was
held that a similar provision, when sought to be enforced upon

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

Diplock L.J.

[23] [1962] A.C. 600.

120          QUEEN'S BENCH DIVISION.      **[1963]**

C. A.
1962
———
FINANCINGS
LTD.
*v.*
BALDOCK.
———
Diplock L.J.

the termination of the contract of hiring upon breach of his contract by the hirer, was a penalty from which the court would grant relief. Whatever may have been the position before the fusion of law and equity, the effect today of the court's granting relief against a penalty agreed to be paid pursuant to a penalty clause in a contract is that the penalty clause is treated as void and the plaintiff is forced to rely upon his right to such measure of damages as he would be entitled to at common law for the breach of contract which the defendant has committed.

In the present case the only breaches of contract which the hirer had committed by April 7, 1960, when the owners exercised their option to determine the contract, was his failure to pay two of the 24 monthly instalments of hire payable respectively on February 25 and March 22, 1960; but as recently as January 25 he had paid, or is acknowledged by the contract to have paid, to the owners no less than £100 as the first instalment of hire. He had at the date on which the owners exercised their option to terminate the contract said nothing to indicate his unwillingness or his inability to pay either these or any future instalments. He was clearly in breach of his obligation to pay two instalments on the due dates but, in the absence of any express provision to the contrary in the contract, these breaches of a contract of hire expressed to be for a duration of 24 months would not of themselves go to the root of the contract or evince an intention on the part of the hirer no longer to be bound by the contract. The owners' only remedy would have been to sue for the two instalments overdue and their measure of damages would have been the amount of these instalments, together with interest at the agreed rate of 10 per cent. per annum. They would also have continued to be liable to perform their own obligations under the contract, viz., to continue to hire the van to the hirer; for again, in the absence of express provision to the contrary, the non-payment of two instalments would not be an event which relieved the owners from their undertaking to do what they had agreed to do but had not yet done.

As I ventured to point out in *Hongkong Fir Shipping Co. Ltd.* v. *Kawasaki Kisen Kaisha Ltd.,*[24] parties to a contract may incorporate in it provisions which expressly define the events, whether or not they amount to breaches of contract, which are to have this result. But such a provision of itself may do no more than define an event which of itself, or at the option of one or

[24] [1962] 2 Q.B. 26; [1962] 2 W.L.R. 474; [1962] 1 All E.R. 474, C.A.

**2 Q.B.**        QUEEN'S BENCH DIVISION.        121

other of the parties, brings the contract to an end and thus relieves both parties from their undertakings further to perform their obligations thereunder. Whether it does more than this and confers any other rights or remedies on either party on the termination of the contract, depends upon the true construction of the relevant provision. If it does not, then each party is left with such causes of action, if any, as had already accrued to him at the date that the contract came to an end, but acquires no fresh cause of action as a result of the termination. If it does purport to confer on one of the parties a right to recover a sum of money from the other, a question may arise whether this right is unenforceable as constituting a penalty.

In the present contract clause 8 itself merely defines a number of events, the occurrence of any one of which gives the owners an option to bring the contract to an end. Clause 11 purports to confer upon the owners other rights upon exercising their option to bring the contract to an end, but this clause is void as a penalty clause, at any rate in so far as it purports to confer rights upon the owners in the events which in fact gave rise to their right to bring the contract to an end, namely, the hirer's breach of contract in failing to pay two instalments of hire. The owners are, therefore, in my opinion, forced to rely upon their ordinary remedies for those breaches of contract which had accrued at the date when the contract was determined, viz., April 7, 1960.

I have already expressed my opinion that on that date the only causes of action which had accrued to the owners were for the two instalments due on February 25 and March 22, 1960, then in arrear. There had on April 7, 1960, been no repudiation by the hirer of his contract and no fresh breach by him which went to the root of the contract so as to evince his intention no longer to be bound by it. The owners' remedy is accordingly limited to recovery of the two instalments, together with interest thereon at the agreed rate of 10 per cent. per annum from the dates they respectively fell due.

I turn next to see whether there is anything in two recent cases in this court, *Yeoman Credit Ltd.* v. *Waragowski* [25] and *Overstone Ltd.* v. *Shipway* [26] which compels me to come to a conclusion different from that which I have arrived at by applying what I believe to be correct general principles of the law of

C. A.

1962

FINANCINGS
LTD.
*v.*
BALDOCK.

Diplock L.J.

[25] [1961] 1 W.L.R. 1124.        [26] [1962] 1 W.L.R. 117.

122          QUEEN'S BENCH DIVISION.        **[1963]**

C. A.
1962

FINANCINGS
LTD.
v.
BALDOCK.

Diplock L.J.

contract to the particular facts of this case and the terms of the relevant contract of hire.

In the *Yeoman Credit* case [27] the hirer had paid no monthly instalments of hire and was in arrears for six months when the owners terminated the hiring. The clause of the contract which entitled them to do so is not set out. The clause, which corresponded to clause 11 in the present case, differed from clause 11 in that it expressly provided that the hirer should pay damages for the breach (if any), in addition to one or other of two alternative sums, calculated differently from the sums specified in clause 11, at the option of the owner. The judgment of the court, which was delivered by Davies L.J., proceeded on the basis, no doubt justified on the facts, that the hirer had repudiated his contract and the damages were assessed on that basis. That this was the ratio decidendi of the *Yeoman Credit* case [27] is, I think, shown by the *Overstone* case, [28] to which Davies L.J. was also a party, and in which each member of the court expressly said that the case was governed by the *Yeoman Credit* case. [29] In the *Overstone* case [30] the hirer had also paid no monthly instalments and two months before the owners terminated the contract had written a letter stating that he could not afford to carry on paying for the car. Holroyd Pearce L.J. said [31]: " Where, as in *Yeoman Credit Ltd.* v. *Waragowski* [32] and in the " present case, the hirer pays no instalments and clearly does " not intend to go on with the hiring, the only reasonable solution " for the impasse is for the owner to retake the hired article. " In such a case the proposition put forward by Davies L.J. " applies. In some cases, however, it is, as Salter J. suggested, " seizure rather than failure to pay which has caused the damage. " Where the hirer is slightly in arrears and does not show that " he is *not* going on with the contract, the seizure of the hired " article may not be the reasonable solution of the situation, and " it may well be that damage consequent on and flowing from it " was not caused by the hirer's breach, but by the owner's " decision to exercise his right to retake possession." In referring to " the reasonable solution," the Lord Justice was plainly not intending to lay down some wholly novel proposition of the law of contract peculiar to contracts of hire-purchase. Read in its context, I do not think that the phrase " the reasonable solution " was intended to refer to anything other than the well-settled

[27] [1961] 1 W.L.R. 1124.
[28] [1962] 1 W.L.R. 117.
[29] [1961] 1 W.L.R. 1124.

[30] [1962] 1 W.L.R. 117.
[31] Ibid. 123.
[32] [1961] 1 W.L.R. 1124.

## 2 Q.B.    QUEEN'S BENCH DIVISION.

rule of law that a party to a contract has an option to treat
as rescinded a contract which the other party has wrongfully
repudiated by conduct which evinces his intention no longer to
be bound by the contract.  Such conduct is in itself a breach of
contract, apart from any antecedent breaches there may have
been, which entitles the party exercising his option to treat the
contract as rescinded, also to recover from the party in default
damages for non-performance of his future obligations under the
contract.  Willmer L.J., who dissented upon what in his view
was a closely related point, made no reference to reasonableness.
The other majority judgment was delivered by Davies L.J.  He,
too, following no doubt the phraseology of the leading judgment
of Holroyd Pearce L.J., drew a distinction between cases where [33]
" it would be reasonable to terminate the contract " and those
where " it would be unreasonable to exercise the right to
" terminate."  The right of the owners to determine the contract
" on any default in punctual payment of rent " was expressly
conferred by the terms of the contract irrespective of whether it
would be reasonable to exercise it or not.  The " reasonableness "
or " unreasonableness " of the termination was, in Davies L.J.'s
view, relevant to the question whether, upon exercising their right
to determine the contract, the owners could claim damages from
the hirer, not only for any antecedent breaches, but also for his
" non-performance or breach of contract during such period as it
" had to run thereafter "—which, of course, is the measure of
damages at common law for wrongful repudiation of a contract
when such wrongful repudiation is accepted as rescinding the
contract.  I do not read Davies L.J. as expounding any new legal
doctrine, or as intending to say more than that where one party
has done something which the law (which " is the perfection of
" reason ") regards as a wrongful repudiation of the contract and
the other party has thereupon determined the contract, whether
under an express power contained in the contract or in the
exercise of his right to do so under the common law, he is entitled
to damages for non-performance of the contract during the period
that it has still to run; but that if that party has not done
something which the law regards as a wrongful repudiation of
the contract, the other party, although he may be entitled under
an express power to determine the contract, is not entitled to
damages for non-performance of the contract during the period for
which it would have continued to run but for such determination.

[33] [1962] 1 W.L.R. 117, 130.

C. A.
1962

FINANCINGS
LTD.
v.
BALDOCK.

Diplock L.J.

124                    QUEEN'S BENCH DIVISION.            **[1963]**

C. A.

1962

FINANCINGS
LTD.
v.
BALDOCK.

If this be, as I think it is, the true ratio decidendi of the *Yeoman Credit* case [34] and the *Overstone* case,[35] it is in accordance with what I have already stated to be my own view of the law. I would accordingly dismiss this appeal.

> *Appeal dismissed.*
> *Leave to appeal to the House of*
> *Lords refused.*

Solicitors: *Lawford & Co.*

B. A. B.

[34] [1961] 1 W.L.R. 1124.          [35] [1962] 1 W.L.R. 117.

---

C. A.

1963
*Jan.* 29, 30.

Ormerod.
Upjohn and
Davies L.JJ.

### HOBHOUSE AND OTHERS v. WALL.

[Plaint No. S. 91.]

*Landlord and Tenant—Rent restriction—Premises within the Acts—Sub-lease—Agricultural cottage—Head lease of agricultural holding—Farm cottage on holding sub-let—Sub-tenant not employed on farm—Surrender of head lease by tenant—Whether sub-tenant protected—" Premises " — Housing Repairs and Rents Act, 1954, (2 & 3 Eliz. 2, c. 53), s. 41.*

The plaintiffs were the owners of a large farm which they let to C. At all material times a cottage on the farm had been sub-let by C.'s predecessors and by C. to the defendant, who was not employed on the farm. C. determined the defendant's contractual tenancy in 1959 by a notice to quit and thereafter the defendant remained in possession of the cottage as a statutory tenant vis-à-vis C. under the Rent Restriction Acts. In 1961, C. surrendered his tenancy to the plaintiffs who let the farm two months later to H. No rent was accepted from the defendant by the plaintiffs or by H. after the surrender of C.'s tenancy, and they treated the defendant as a trespasser from the date of the surrender.

On a claim for possession of the cottage by the plaintiffs, to which they joined H. as co-plaintiff, the defendant relied on the protection given by section 41 of the Housing Repairs and Rents Act, 1954 [1]:—

[1] Housing Repairs and Rents Act, 1954, s. 41: " Where a dwelling-" house to which the Act of 1920 " applies . . . forms part of premises, " not being such a dwelling-house, " which have been let as a whole on a " superior letting, then from the

" coming to an end of the superior " letting the operation of the Rent " Acts in relation to the sub-let part " shall be the same as if in lieu of " the superior letting there had been " separate lettings of the sub-let part " and the remainder of the premises,