# EXHIBIT   97

**1 K. B.**        KING'S BENCH DIVISION.                         417

" ' in use, a liability for the consequence is imposed on the
" ' users '. So to put the matter is, in my view, to overstate
" the absolute character of the obligation imposed by the statute
" and to make liability an automatic and inevitable consequence
" of the bare fact that a rope broke in use ".

    If a rope breaks in use it obviously is not of adequate strength
for the work for which it is being used; but if the argument which
has been put forward here on behalf of the plaintiff is sound,
I think that the inadequacy of the rope, whatever the task
imposed upon it was, would entitle her to judgment. I do not
see any difference between the interpretations to be placed on
" adequate strength " and " good construction ". I agree with
the judgments which have been delivered.

*Appeal allowed.*

    Solicitors: *Bell, Brodrick & Gray for Harold Jackson & Co.,
Sheffield; Jackson & Jackson for J. W. Fenoughty Ashton & Co.,
Sheffield.*

A. W. G.

C. A.

1950

BEADSLEY
*v.*
UNITED
STEEL COM-
PANIES, LD.

Bucknill, L.J.

---

HOWARD *v.* PICKFORD TOOL CO. LD.

[1950 H. 857.]

*Procedure—Master and servant—Servant's claim to declaration that
service agreement repudiated by master—Servant still in master's
employment—R. S. C., Ord. 25, r. 5.*

    By an agreement of May, 1950, the defendant company agreed to
employ the plaintiff as joint managing director for a period of six
years. He brought an action against them and by his statement of
claim alleged that the defendants had shown by the conduct of their
chairman that they no longer intended to be bound by the agreement.
He claimed a declaration that the conduct of the defendants was
such as to constitute a repudiation by them of their contract so that
he was excused from further performance of his obligations under it.
He had not ceased to carry out his duties under the contract. The
defendants applied under R. S. C., Ord. 25, r. 4, to have the
statement of claim struck out.

    *Held,* that, while the jurisdiction conferred on the court by
Ord. 25, r. 5, to make a declaratory order was most valuable in
appropriate cases, it should not be used to answer academic questions
as would be the case if a declaration were made here, for since the
plaintiff was still performing his part of the contract, the alleged
acts of the defendants were wholly nugatory and insufficient in law
to constitute repudiation. A declaration that the plaintiff might
at the time have accepted the acts of the defendant as a repudiation

C. A.

1950
*Nov.* 27.

Evershed,
M.R., Asquith
and Singleton,
L.JJ.

418          KING'S BENCH DIVISION.      **[1951]**

C. A.

1950

HOWARD
*v.*
PICKFORD
TOOL CO.
LD.

would not involve the result that he could nunc pro tunc rely on them as a repudiation and accept them as such. Moreover, if the plaintiff obtained the declaration sought, another action would be inevitable. The statement of claim should accordingly be struck out.

*Société Maritime et Commerciale* v. *Venus Steam Shipping Co. Ld.* (1904) 9 Com. Cas. 289, and *Spettabile Consorzio Veneziano di Armamento e. Navigazione* v. *Northumberland Shipbuilding Co. Ld.* (1919) 121 L. T. 628, considered.

APPEAL from McNair, J., in chambers.

The plaintiff, Walter Howard, by his statement of claim in this action alleged that by an agreement dated May 31, 1950, made between himself of the one part and the defendants, Pickford Tool Co. Ld. of the other part, it was agreed that the defendants should employ the plaintiff as joint managing director of the defendant company for a period of six years from January 1, 1950. The plaintiff alleged in para. 3 that it was an implied term of the agreement that the powers, duties and directions given to him by the company should be reasonable and that he should be permitted without undue interference by the defendants to carry on his employment as joint managing director. By para. 4 he alleged that the defendants by the conduct of their chairman in September, 1950, had not performed the implied terms and obligations of the contract, and particulars of the conduct of which the plaintiff complained were given.

The statement of claim then continued : " By reason of the " conduct of the chairman as aforesaid it has become impossible " for the plaintiff to perform his part of the said agreement " although he has been and is willing and ready to do so and " the plaintiff will say that such conduct on the part of the said " chairman has shown that the defendants intend no longer to " be bound by the said agreement or that, in the alternative, " such conduct is incompatible with its due performance ". The plaintiff further alleged that the defendants were in breach of the agreement and claimed damages for the breach.

When the matter came before the master, it was shown by proper evidence that, notwithstanding the allegations of impossibility, the plaintiff was in fact still acting as managing director under the agreement; and it was plain from that fact that there could be no claim for damages. The master therefore directed that the statement of claim should be struck out. When the matter came before McNair, J., in chambers, counsel, who had not settled the statement of claim in its original form, asked leave to amend the claim or prayer at the end of the statement of claim by substituting for the claim for damages a claim for a declaration in the following terms : " The plaintiff therefore says " that the defendants are in breach of the said agreement and

**1 K. B.**        KING'S BENCH DIVISION.                    419

" claims a declaration that the conduct of the defendants set
" forth in para. 4 hereof is such as to constitute repudiation by
" the defendants of the contract and that the plaintiff is excused
" further performance of his obligations under the contract ".

McNair, J., subject to that amendment being made, permitted
the action to proceed. The defendants appealed.

C. A.

1950

HOWARD
*v.*
PICKFORD
TOOL CO.
LD.

*C. D. Aarvold* for the defendants. The defendants ask to
have the plaintiff's statement of claim struck out either under
Ord. 25, r. 4, or under the inherent jurisdiction of the court on
the ground that, assuming that the defendants' conduct amounted
to a repudiation of the contract, the plaintiff did not accept it as
such but has gone on performing his part of the contract.
Accordingly, he must be deemed to have affirmed the contract :
*Heyman* v. *Darwins Ld.* (1). This is not a case where a declara-
tion should be made under Ord. 25, r. 5 (2). This case is
distinguishable from *Société Maritime et Commerciale* v. *Venus
Steam Shipping Co. Ld.* (3), and *Spettabile Consorzio Veneziano
di Armamento e. Navigazione* v. *Northumberland Shipbuilding Co.
Ld.* (4). If a declaration is made, it will not settle the dispute
between the parties : the plaintiff will have to bring another
action. This statement of claim should be struck out.

*Cumming-Bruce* for the plaintiff. It is submitted that it is
open to the plaintiff to come to the court and ask for a declara-
tion as to his rights. The judge had jurisdiction to refuse to
strike out this statement of claim, and, since he exercised his
discretion in the matter, it is submitted that there are no grounds
for interfering with the way in which he exercised it. It is
important that, if a party is in doubt as to his rights under an
agreement, it should be open to him to apply under Ord. 25, r. 5,
for a declaration as to his rights, before he commits himself to
any course of conduct which may prejudice him. Had the
plaintiff refused to continue his service with the defendants
pending the determination of this action, he might have been
held to be in breach of his service agreement. There must be a
middle road by which a plaintiff can obtain the directions of the
court without losing his employment. A declaration under
Ord. 25, r. 5, is a convenient procedure for a plaintiff who does
not know his position. It is admitted that, if the plaintiff
obtains the declaration he seeks, he will, should he want further

(1) [1942] A. C. 356, 361.
(2) R. S. C., Ord. 25, r. 5 : " No
" action or proceeding shall be open
" to objection, on the ground that a
" merely declaratory judgment or
" order is sought thereby, and the

" court may make binding declara-
" tions of right whether any conse-
" quential relief is or could be
" claimed, or not ".
(3) (1904) 9 Com. Cas. 289.
(4) (1919) 121 L. T. 628.

420                    KING'S BENCH DIVISION.              **[1951]**

C. A.

1950

HOWARD
*v.*
PICKFORD
TOOL CO.
LD.

relief, have to take other proceedings: see *Guaranty Trust Co. of New York* v. *Hannay & Co.* (5).

EVERSHED, M.R., stated the facts, and continued:—The question is a brief one, whether a claim for such a declaration as is sought, and in such circumstances as are found here, is within the intendment of Ord. 25, r. 5. The declaration sought is " a " declaration that the conduct of the defendants set forth in " para. 4 hereof is such as to constitute repudiation by the defen- " dants of the contract and that the plaintiff is excused further " performance of his obligations under the contract ".

I wish to be cautious in what I say, because I do not doubt that Ord. 25, r. 5, confers upon the court most valuable jurisdiction to make declaratory judgments in appropriate cases. A good example of the utility of the Order is to be found in *Société Maritime et Commerciale* v. *Venus Steam Shipping Co. Ld.* (6). There was in that case a written contract of an elaborate character. There had been an assignment by the original contractors of their rights under it, but the real question was whether as a result of certain acts and events the plaintiffs could properly refuse to load a ship which, if the contract were still binding on them, they were bound to do. They declined to load it, and, without waiting for action to be brought against them, brought the proceedings for a declaration that, in all the circumstances of the case, they were entitled so to refuse; and that very learned judge, Channell, J., held that they were so entitled. From that case and the reference to it in the later case to which we have also been referred of *Spettabile Consorzio Veneziano di Armamento e. Navigazione* v. *Northumberland Shipbuilding Co. Ld.* (7) in the Court of Appeal, it may be taken that where a party says that he is no longer bound by a contract he may, in certain circumstances, seek a declaration of the court to that effect; and if the declaration is against him, he will not be taken, by his having merely declined to do some particular thing, to have repudiated the contract.

It is to be observed that this case is fundamentally different in character from those, for this reason: the plaintiff is still performing (it is said) to the best of his ability, his contract; that is to say, at the moment he is still attending at his place of business. It is quite plain (and I refer, if it be necessary to quote authority, to the speech of Lord Simon, L.C., in *Heyman* v. *Darwins Ld.* (8), that if the conduct of one party to a contract amounts to a repudiation, and the other party does not accept it as such but goes on performing his part of the contract and

(5) [1915] 2 K. B. 536.          (7) 121 L. T. 628.
(6) 9 Com. Cas. 289.            (8) [1942] A. C. 356, 361.

**1 K. B.**      KING'S BENCH DIVISION.                          421

affirms the contract, the alleged act of repudiation is wholly
nugatory and ineffective in law.

C. A.

1950

HOWARD
v.
PICKFORD
TOOL CO.
LD.

Evershed, M.R.

It is to be noted that the plaintiff has alleged that certain
actions of the defendants' chairman at some period before the issue
of the writ in September constituted a breach of this contract.
If the action were to proceed, the court would be asked to say
whether those actions in September then amounted to a repudia-
tion which the plaintiff could then have accepted. He did not,
however, accept them as a repudiation, and a decision that they
might have been accepted would not, so far as I can see, involve
the result that they could now be relied upon as such repudiation
and that the plaintiff could accept them now and say nunc pro
tunc that the contract was at an end. Indeed, Mr. Cumming-
Bruce virtually conceded that, if he obtained a favourable declara-
tion, the result would almost inevitably be another action, if not
a series of other actions.

Although Ord. 25, r. 5, is most useful in the jurisdiction which
it confers, and I am not anxious to put unnecessary limitations
upon it, it is plain that it could not, and should not, be used so
as to require the court to answer academic questions. In effect
that is what would happen here, for, if Mr. Cumming-Bruce is
right, it would be possible for a person who alleged that he had
been wronged to ask the court to declare in his favour that that
was conduct which he could, if he had liked, have accepted as
repudiation and which accordingly, if it were repeated, could then
be so accepted.

I want to confine my observations strictly to the matter in
hand, and I therefore prefer to say no more than that in this
particular case, I am satisfied that the court ought not in the
circumstances to entertain an action for a declaration of this
nature. That is not to say that the plaintiff may not have some
other cause of action which he may litigate—that will be for him;
because the result of striking out the statement of claim in no
sense bars him from any other claim he may rightfully have
arising out of the same subject-matter. But this particular
claim, with all respect to the judge who took a contrary view,
is in my opinion beyond what I have called the intendment of
the order, and I think that the action is one which the court
could not properly entertain. I would therefore allow the appeal
and order that the statement of claim be struck out.

ASQUITH, L.J. I agree. An unaccepted repudiation is a
thing writ in water and of no value to anybody: it confers no
legal rights of any sort or kind. Therefore a declaration that the
defendants had repudiated their contract with the plaintiff would
be entirely valueless to the plaintiff if it appeared at the same
time, as it must appear in this case, that it was not accepted.

422                    KING'S BENCH DIVISION.                    **[1951]**

C. A.

1950

HOWARD
*v.*
PICKFORD
TOOL CO.
LD.

Asquith, L.J.

The plaintiff's having stayed on and continued to perform the contract for something like two months and being still in the act of performing it, seems to me to be a sufficient reason for saying that the remedy asked for is an academic one such as cannot properly be sought under Ord. 25, r. 5. For that reason, with the others given by my Lord, I agree that the appeal ought to be allowed.

SINGLETON, L.J. I also agree, and I would add only this: Mr. Cumming-Bruce submitted to the court that to grant a declaration in the terms sought in this case would be a convenient way of dealing with the matter. I do not think that it would be so: I think that it would be rather inconvenient. At the most it would be making up the plaintiff's mind for him; but that is not the purpose of this procedure under Ord. 25, r. 5. I agree that the appeal should be allowed.

*Appeal allowed.*

Solicitors: *Biddle, Thorne, Welsford & Barnes, for Wake, Smith & Co., Sheffield; Bell, Brodrick & Gray, for Harry Glass, Sheffield.*

B. A. B.

1950
*June* 12, 13,
14, 15, 16,
19, 20, 21,
22, 23, 26,
27, 28, 29,
30; *July* 3.
4, 5, 28.

Devlin, J.

BIGGIN & CO. LD. AND ANOTHER *v.* PERMANITE, LD.,
BERRY WIGGINS & CO. LD. (THIRD PARTIES).

*Damages—Measure of—Sale of goods—Resale—Series of contracts—Foreseeable consequence of breach of contract—Compromise of other proceedings by plaintiffs—Vendor's liability to plaintiffs—Warranties added to successive contracts—Liability of original vendor.*

Manufacturers of specialised products from bitumen prepared an adhesive called Permasec for use with roofing felt which was to be capable of being applied cold owing to the scarcity of fuel at that time in Holland where it was to be used. They sold it to roofing contractors who resold it to specialists in roofing materials for supply to the Dutch government, who disposed of it to numerous Dutch roofing contractors. The Permasec was used in the repair of house roofs mainly during the winter of 1945, and in the spring of 1946 it began to "creep" (drip and run). The roofs had to be repaired or renewed and claims were made against the Dutch government. In May, 1946, the Dutch government asked their