# EXHIBIT 104

A    W. G. CLARK (PROPERTIES) LTD. v. DUPRE PROPERTIES LTD.

[1989 W. No. 8470]

1991 May 20;                                    Thomas Morison Q.C.
     June 4                          sitting as a deputy High Court judge

B   *Landlord and Tenant—Forfeiture of lease—Repudiation of landlord's title—Tenant's claim for damages alleging third party owner of part of demised premises—Demised premises incapable of separate letting—Landlord's claim for possession of whole of demised premises—Whether pleading constituting disclaimer of landlord and tenant relationship—Whether landlord entitled to possession— Law of Property Act 1925 (15 & 16 Geo. 5, c. 20), s. 146(1)*

C       In 1985 the lease of a basement flat was assigned by the landlord to the tenant. In 1986 the parties entered into a deed of variation whereby the landlord purported to consent to the tenant carrying out building works to extend the flat into an adjoining courtyard on payment of £5,000. The effect of the deed was the surrender by the tenant of its original interest and the re-granting by the landlord of a new lease to the tenant comprising both flat and courtyard. The extension created
D   premises which were not severable and which were incapable of separate letting. In 1987 the land registry refused to register the deed because a third party was shown as the registered proprietor of the courtyard although the landlord claimed right to the title on the ground of adverse possession. In July 1989 the tenant claimed damages against the landlord for making a false representation of title to the courtyard. The statement of
E   claim, inter alia, positively asserted that the landlord was owner of the flat but that the third party was owner of the courtyard. The following month the landlord brought proceedings against the tenant claiming possession of the whole of the demised premises on the ground that the statement of claim in the tenant's action had denied the landlord's title to the premises. The tenant's summons to strike out the landlord's statement of claim, pursuant to R.S.C., Ord. 18, r. 19, was dismissed by the
F   master.
    On the tenant's appeal:—
    *Held*, allowing the appeal and striking out the landlord's action, that since the tenant's pleading, positively asserting the landlord's title to the flat but denying its title to the courtyard, was merely a partial disclaimer insufficient to amount to an unequivocal or clear repudiation of the single relationship between landlord and tenant, it was not enough to constitute a
G   disclaimer as to the whole demise; and that, accordingly, the landlord was not entitled to possession (post, pp. 303C–E, 305B– c).
    *Doe d. Phipps v. Gowen* (1837) 1 Jur. 794 and *G.M.S. Syndicate Ltd. v. Gary Elliott Ltd.* [1982] Ch. 1 considered.
    *Per curiam.* (i) If the tenant's disclaimer had amounted to a denial of the landlord's title, an amendment to the tenant's
H   pleading to avoid that contention would not have saved its position because when the amendment was made the landlord had already irrevocably accepted the repudiation by issuing proceedings for possession which is equivalent to actual entry upon the premises (post, p. 306D–F).

(ii) If the disclaimer had entitled the landlord to possession a notice under section 146(1) of the Law of Property Act 1925 would be a prerequisite to the landlord's right of re-entry and the tenant would be entitled to seek relief from forfeiture under section 146(2) (post, p. 309E).

*Quaere.* Whether, where the two parts of the demised property are physically separated from one another and capable of being distinctly let and enjoyed, a partial disclaimer might lead to a forfeiture of part of the demised premises (post, p. 305A, D).

The following cases are referred to in the judgment:

Barrow v. Isaacs & Son [1891] 1 Q.B. 417, C.A.
Beaufort (Duke of) v. Neeld (1844) 12 Cl. & F. 248, H.L.(E.)
Billson v. Residential Apartments Ltd. [1992] 1 A.C. 494; [1991] 3 W.L.R. 264; [1991] 3 All E.R. 265, C.A.
Doe d. Gray v. Stanion (1836) 1 M. & W. 695
Doe d. Phipps v. Gowen (1837) 1 Jur. 794
G.M.S. Syndicate Ltd. v. Gary Elliott Ltd. [1982] Ch. 1; [1981] 2 W.L.R. 478; [1981] 1 All E.R. 619
Jenkin R. Lewis & Son Ltd. v. Kerman [1971] Ch. 477; [1970] 3 W.L.R. 673; [1970] 3 All E.R. 414, C.A.
Miller v. Emcer Products Ltd. [1956] Ch. 304; [1956] 2 W.L.R. 267; [1956] 1 All E.R. 237, C.A.
Shiloh Spinners Ltd. v. Harding [1973] A.C. 691; [1973] 2 W.L.R. 28; [1973] 1 All E.R. 90, H.L.(E.)
Warner v. Sampson [1958] 1 Q.B. 404; [1958] 2 W.L.R. 212; [1958] 1 All E.R. 44; [1958] 1 All E.R. 314; [1959] 1 Q.B. 297; [1959] 2 W.L.R. 109; [1959] 1 All E.R. 120, C.A.

The following additional case, supplied by courtesy of counsel, was cited in argument:

Wisbech St. Mary Parish Council v. Lilley [1956] 1 W.L.R. 121; [1956] 1 All E.R. 301, C.A.

APPEAL from Master Munrow.

By a writ dated 28 September 1989 the plaintiff landlord, W. G. Clark (Properties) Ltd. ("Clark"), claimed against the defendant tenant, Dupre Properties Ltd. ("Dupre"), possession of a flat and adjoining courtyard at 5, Dilke Street, London, S.W.3, which the landlord had demised to the tenant in July 1986, on the ground that the tenant had, by its statement of claim, in an action for damages against the landlord, denied the landlord's title to the demised premises, in particular by asserting that New Model Flats & Properties Ltd. and not the landlord was the freehold owner of the courtyard at the time of the demise.

By a summons dated 16 May 1990 the tenant applied under R.S.C., Ord. 18, r. 9 and/or the inherent jurisdiction of the court to have the landlord's statement of claim struck out as disclosing no reasonable cause of action and/or being frivolous or vexatious and/or being otherwise an abuse of the court. On 14 June 1990 Master Munrow dismissed the summons.

By a notice dated 15 June 1990 the tenant appealed.

The hearing was in chambers but judgment was handed down in open court.

A    The facts are stated in the judgment.

*Paul Collins* for the tenant, Dupre.
*Christopher Parker* for the landlord, Clark.

*Cur. adv. vult.*

B    4 June.  The following judgment was handed down.

THOMAS MORISON Q.C.  This is an appeal against the refusal of Master Munrow to strike these proceedings out under R.S.C., Ord. 18, r. 19, alternatively under the inherent jurisdiction of the court. I shall refer to the present proceedings as "the Clark action."

C

*The facts*

The material facts are not in dispute and may be shortly stated. In 1934, a company called New Model Flats & Properties Ltd. ("N.M.F.P.") was registered as the proprietor of a courtyard at the rear of a property called 5, Dilke Street, London, S.W.3, under title 451173. In 1957, W. G. Clark (Properties) Ltd., the plaintiff ("Clark"), was registered as the proprietor of the adjoining property under title 450695.

D

By a lease dated 7 October 1974 Clark demised to a Mr. Pritchard the basement flat of Clark's property for a term of 57 years from 29 September 1973. That lease was assigned to Dupre Properties Ltd. ("Dupre") in 1985. Subsequently, in July 1986, Dupre, being anxious to develop the courtyard area, entered into a deed of variation and licence with Clark, whereby Clark purported to give consent to Dupre to carry out certain works to the area, on payment of a fee of some £5,000. It is common ground between the parties that the effect of the deed was a surrender by Dupre of its original interest and a re-grant by Clark of a new lease of the flat and courtyard area: reference being made to *Woodfall, Landlord and Tenant,* 28th ed. (1978), vol. 1, para. 1–1852 and to *Jenkin R. Lewis & Son Ltd. v. Kerman* [1971] Ch. 477, 496F–497A. The building works were carried out, the effect of which was to incorporate part of the basement area into the flat, leaving the other part of the area as an open patio.

E

F

In April 1987 the Land Registry refused to register the deed of variation because the courtyard was owned by N.M.F.P. Clark then submitted a statutory declaration asserting a right to the courtyard through adverse possession and in May 1989 Clark applied to the registry for registration as proprietor of the courtyard by reason of that possession. That application remains unresolved at the present time.

G

Proceedings were commenced by N.M.F.P. against Dupre on 12 June 1989 alleging that building works had been done on their courtyard and seeking an order that the extension should be pulled down ("the N.M.F.P. action").

H

By proceedings numbered 1989 D. No. 6139 issued on 21 July 1989 Dupre brought an action claiming damages against Clark, alleging that N.M.F.P. was the registered owner of the courtyard and that Clark had, in the course of negotiations leading to the making of the deed of

variation, falsely represented that it had title to the courtyard and as a result of that misrepresentation Dupre had suffered loss and damage, including the cost of removing the extension ("the Dupre action"). I shall refer to the statement of claim in the Dupre action in more detail later, as it forms the basis of the matter which I have to decide.

A month later on 21 August 1989 Dupre filed a defence in the N.M.F.P. action claiming that N.M.F.P. had lost its title to the courtyard as a result of Clark's adverse possession of it. Dupre asserted its right to possession of the courtyard by virtue of its tenancy from Clark. Clark's defence in the Dupre action was served on 28 September 1989, claiming that Dupre was estopped from denying Clark's title to the courtyard by reason of the tenancy created by the deed of variation.

On the same day, 28 September 1989, these proceedings, the Clark action, were commenced by Clark against Dupre. Clark claims possession from Dupre on the grounds that, by its statement of claim in the Dupre action, Dupre had:

"denied [Clark's] title to the demised premises, in particular by asserting that [N.M.F.P.] and not [Clark] was the freehold owner of the said courtyard at the time of the said demise. . ."

The demise was identified as the deed of variation and licence made in July 1986. In its defence and counterclaim in the Clark action Dupre asserted that it had not denied Clark's title so as to repudiate its tenancy relationship, that any such denial related only to the courtyard and, by way of counterclaim, prayed for relief from forfeiture. Clark joined issue with these assertions in its reply and defence to defence and counterclaim.

On 16 May 1990 Dupre issued its summons under R.S.C., Ord. 18, r. 19.

On 13 June 1990 Dupre obtained leave to amend its statement of claim in the Dupre action, in an attempt to avoid the contention that it was denying Clark's title. I shall consider the terms of the amendment, and the consequences, later in this judgment. On the following day Master Munrow dismissed Dupre's summons to strike out the statement of claim in the Clark action. The matter came on before me as an appeal against Master Munrow's order, although, by consent, the parties have suggested that I should exercise the powers given to the court under R.S.C., Ord. 14A.

I am told that neither of the other two actions have progressed. The question of the true title to the courtyard remains unresolved. It is a mystery as to why Dupre did not bring Clark into the N.M.F.P. action as third party, alleging, in effect, that if the N.M.F.P. succeeded in showing good title to the courtyard then there was a claim over against Clark. If that had happened, the present proceedings would probably not have been commenced. I say nothing about the merits of Dupre's claim against Clark, whether as framed in the Dupre action or as might have been framed in third party proceedings.

*The parties' submissions*

I turn now to the rival contentions of the parties. For Dupre it was submitted that (1) denial of title by a tenant in a pleading does not give

A    rise to a right in the landlord to "forfeit" or terminate a tenancy; whether such a right truly ever existed is a point that counsel would wish to keep open, but for present purposes, whatever the position may have been before, since *Warner v. Sampson* [1959] 1 Q.B. 297 no such right can arise. (2) If, contrary to the first submission, such a right may arise, it does not do so on the facts before me; my attention was drawn to the full terms of the statement of claim in the Dupre action.
B    (3) Although counsel said he might want to argue differently on another occasion, he submitted that (i) at most there had been a denial of title in relation to the courtyard but not to the whole or a substantial part of the premises, (indeed, the landlord's title to the rest was positively asserted), and, because the courtyard and the main flat were integrated and not capable of being separated, no question of forfeiture or right to
C    termination had arisen; there could only be a "forfeiture" in relation to part of premises if it were physically separable from the other part; (ii) once a tenant had renounced the relationship of landlord and tenant, no relief from forfeiture could be granted by the court, and, therefore, what would appear to be a lawyer's mistake would have drastic and unacceptable consequences, if Clark's contention were correct. In support of this proposition counsel relied upon the judgment of
D    Ashworth J. in *Warner v. Sampson* [1958] 1 Q.B. 404, 442 et seq.; *Barrow v. Isaacs & Son* [1891] 1 Q.B. 417, and *Billson v. Residential Apartments Ltd.* [1992] 1 A.C. 494. (4) By reason of the amendment to the statement of claim in the Dupre action made on 13 June 1990, pursuant to the order of Master Munrow, and of the provisions of R.S.C., Ord. 20, the statement of claim is to be treated as if originally
E    drawn in the terms of the amendment; in other words, the amendment dates back to the date when the writ was first issued. Therefore, even if the unamended statement of claim gave the landlord a right to possession, that right had been lost as a result of the amendment. Whilst Clark might have had grounds to resist the amendment because the amendment would deprive it of the right being asserted in the Clark action, leave to make the amendment was granted, and no appeal was
F    entered against that decision.

For Clark it was argued (1) whilst a mere denial of title in a pleading might not be sufficient to constitute a ground for possession, the cases showed that if a tenant positively asserted in a pleading that title to the demised premises was either in himself or a third party then such a ground did exist; and it was contended that that was the effect of the
G    statement of claim in the Dupre action. (2) The fact that Dupre had pleaded implied terms as to title showed that Dupre was denying its status as tenant of the courtyard, since the express covenant of quiet enjoyment in the lease precluded the implication of an implied term as to title: *Miller v. Emcer Products Ltd.* [1965] Ch. 304, 319. (3) The lease is of the courtyard and flat as one, and the landlord is entitled to possession of the whole even if there has been disclaimer of part only.
H    (4) By bringing the Clark action, Clark had done the equivalent of effecting an actual entry. Forfeiture dates from service of the writ; therefore the amendment of the statement of claim was made after the lease had already been forfeited and was too late to save the tenant

from the consequences of its original pleading. In any event the terms of the amendment did not achieve the result sought. (5) In a case of disclaimer, the court has no statutory jurisdiction to grant relief from forfeiture: *per* Ashworth J. in *Warner v. Sampson* [1958] 1 Q.B. 404, and, in principle, the court's equitable jurisdiction will not be exercised where, as here, there has been "inadvertence" or "negligence" on the part of Dupre's legal advisers: *Barrow v. Isaacs & Son* [1891] 1 Q.B. 417 and *Billson v. Residential Apartments Ltd.* [1992] 1 A.C. 494.

*The issues*

It seems to me that the following issues arise. (1) In what circumstances, if any, does a landlord become entitled to claim possession by reason of a "denial" by a tenant in a pleading of the relationship of landlord and tenant? (2) Does what was pleaded in the Dupre action constitute such a "denial?" (3) What is the effect, if any, of the amendment to the statement of claim? (4) What jurisdiction, if any, does the court have to grant relief from forfeiture, and how should that power be exercised in this case? I shall deal with each of these issues in turn, although issues (3) and (4) do not, strictly, arise for determination in the light of my decision on issues (1) and (2).

*Decision*

*Issue (1). Denial of title in a pleading*

Following the decision of the Court of Appeal in *Warner v. Sampson* [1959] 1 Q.B. 297 it is not possible to accede to the first submission put forward on Dupre's behalf. In that case, the landlord sought to forfeit the lease by reason of a general traverse at the end of the tenant's defence in an action brought against him by his landlord for forfeiture for non-payment of rent and breaches of the repairing covenants. The essence of the decision was that (a) to constitute a disclaimer by record giving rise to a right to forfeiture there must be a renunciation by the party of his character of tenant "either by setting up the title of a rival claimant or by asserting a claim of ownership in himself:" *per* Hodson L.J., at p. 318 and *per* Ormerod L.J., at p. 324 (see also *per* Lord Denning, at p. 315); and (b) accordingly, a general denial, which did not amount to a positive averment, was not such a disclaimer: see *per* Hodson L.J., at p. 319, and *per* Ormerod L.J., at p. 325.

Counsel for Dupre sought to persuade me that the doctrine of disclaimer by denial of title by record was an unfortunate hangover from medieval feudal relationships and that either the doctrine did not now still exist or had never existed. In the light of the ratio of *Warner's* case such a contention is unarguable.

In any event, it seems to me that there is no reason in principle why the doctrine should not exist. A tenant who repudiates the relationship of landlord and tenant should be in no different position from a party to a contract who repudiates or renounces it. It seems to me that the doctrine of disclaimer is analogous to the concept of repudiation of a contract. Counsel for the landlord in *Warner's* case used the phrase "repudiation, renunciation, denial." *Hill and Redman's Law of Landlord and Tenant*, 18th ed. (1991), vol. 1, para. 2181, says:

A     "There is implied in every lease a condition that the lessee shall not do anything that may prejudice the title of the lessor; and that if this is done the lessor may re-enter for breach of this implied condition. The principle may be traced back to the reign of Henry II and appears to be founded on the oath of fealty given by a tenant of real property to his lord under the medieval system of tenure."

B     The repudiation of the relationship by a tenant may be ignored by the landlord, who may continue to enforce the terms of the demise; or the landlord may accept the repudiation by re-entry or by issuing and serving proceedings claiming possession. This common law position is to be contrasted with statutory rights to disclaim, such as a trustee in bankruptcy or a liquidator of a company have. When that statutory right is exercised, the tenant's interests in the property are extinguished. No

C question of acceptance arises. The act of disclaimer itself, by virtue of the relevant statute, determines the tenant's interests and liabilities.

    In my judgment, a disclaimer does not constitute a repudiation of the landlord and tenant relationship unless it is clear and unambiguous: *Doe d. Gray v. Stanion* (1836) 1 M. & W. 695. Where the disclaimer is by words, as here, then whether there has been a repudiation of the

D relationship is to be determined by looking at the words used in the context in which they were used. The court must decide whether those words in that context evinced an intention on the part of the tenant no longer to be bound by the relationship of landlord and tenant. As a matter of binding precedent, *Warner v. Sampson* [1959] 1 Q.B. 297 decides that where a pleading is relied upon as a disclaimer a tenant must be asserting that the property belongs either to himself or to a third party. In effect, the tenant must be saying to the alleged landlord,

E "You are not my landlord; I am not in the relationship of landlord and tenant with you." Simply putting the landlord to proof is not sufficient.

*Issue (2). Has Dupre disclaimed?*

    Both counsel took me through the terms of the unamended statement

F of claim in the Dupre action. Paragraph 1 asserts that Clark was the owner of the flat and N.M.F.P. was the owner of the courtyard. The original lease of the flat to Pritchard followed by assignment to Dupre was pleaded. It was then pleaded that Clark represented to Dupre that it was the freehold owner of the courtyard and was willing and able to let it to Dupre. The deed of variation and licence was referred to whereby Clark "purported" (paragraph 7) to vary the lease by adding

G the courtyard. The claim continues, paragraph 8: "It was an implied term of the deed that [Clark] had title to the courtyard and was able to demise it to [Dupre]." The pleader then recited (paragraph 11) that Dupre's solicitors were informed by the Land Registry that Clark had no title to the courtyard. In paragraph 12 it was asserted that, by reason of the foregoing, ("In the premises") Clark was in breach of the term pleaded in paragraph 8 and the representations made were false. The

H damages claim was the difference in value of the lease (without the courtyard) and a lease of the flat and courtyard (together with the extension erected thereon) and the direct and indirect costs of building the extension, including the premium of £5,000 paid by Dupre to Clark.

Counsel for Dupre argued that what the pleading was doing was asserting the landlord's title to the bulk of the demised premises rather than denying its title; he also suggested that there was no denial of the relationship of landlord and tenant in relation to the courtyard. Counsel for Clark submitted that by the pleading Dupre was asserting that title to the courtyard belonged to a third party (paragraph 1) and that Clark had no right to let it to Dupre: paragraphs 8 and 12. He also referred to the word "purported" in paragraph 7 and the way the damages claim was put forward. Finally he referred to paragraph 8 and submitted that to plead such a term the pleader had to treat the lease of the courtyard as never having been granted and thus denied Dupre's status as tenant of the courtyard: *Miller v. Emcer Products Ltd.* [1956] Ch. 304.

It seems to me that by its pleading Dupre was asserting that Clark did not have the right to let the courtyard to Dupre and that that right belonged to a third party, namely N.M.F.P. The pleading expressly referred to N.M.F.P.'s ownership of the courtyard and Clark's lack of capacity to lease it to Dupre. Although the pleader seems to have confused the right to let with ownership, I think it would be straining the words of the pleading to suggest that Dupre were doing other than disclaim Clark's right to let the courtyard. Equally, as to the flat, Dupre was positively asserting both Clark's right to let and the relationship of landlord and tenant between them.

Both counsel stress that by virtue of the deed of variation there has been a re-grant by Clark to Dupre of the flat and the courtyard as one hereditament. There is one lease and one covenant of quiet enjoyment. The position, therefore, is that the pleading is disclaiming the landlord's title to part of the demised premises and asserting the landlord's title to the remainder. I accept that in terms of value and floor space the flat constitutes the major part of the holding. Counsel for Clark argues that by disclaiming part, Dupre has repudiated the whole lease: it is all or nothing. Counsel for Dupre argues that by asserting title to most of the premises and disclaiming only as to part, either the position is equivocal and lacks the element of certainty that is required for the doctrine of disclaimer to operate, or disclaimer of part can only lead to a right to forfeit in part and then only if the part is severable from the whole.

Counsel's researches have produced only one case in which partial disclaimer has been considered: *Doe d. Phipps v. Gowen* (1837) 1 Jur. 794. It is difficult to understand the facts of that case. The report is short and not easy to follow. It appears that the court was prepared to accept the right of a landlord to forfeit part of a holding, because part had been disclaimed. I do not consider that the case supports Clark's contention that disclaimer as to part leads to disclaimer of the whole; if anything it suggests the contrary. There is no authority which supports Clark's case on this point.

The conclusion reached in *Phipps'* case is consistent with the decision in *G.M.S. Syndicate Ltd. v. Gary Elliott Ltd.* [1982] Ch. 1, 12, where Nourse J. considered whether a court could grant relief from forfeiture as to part of demised premises. He emphasised that a court could only grant such relief when to do so would produce a "fair and workable result" and said:

A  "I emphasise that I do not intend to go beyond the circumstances of the present case, where the two parts of the demised property are physically separated one from the other and are capable of being distinctly let and enjoyed."

B  As a result of the works which have been done, part of the courtyard has become an integral part of the rest of the flat. The two parts are neither physically separate nor capable of being let and enjoyed separately. This appears to be common ground. Clark's counsel does not seek to distinguish between the flat and the courtyard or ask for forfeiture of the courtyard alone.

C  In my judgment, on the facts here, I do not consider that Dupre has unequivocally or clearly repudiated the single relationship of landlord and tenant. Partial disclaimer is, in my judgment, not enough to constitute a disclaimer as to the whole. To conclude otherwise would be to ignore the fact that the relationship was, at the same time, being asserted. This is not a case of a tenant saying "you are not my landlord" but rather saying "you are my landlord, but you did not have the right to grant me a lease of a small part of the premises." In my judgment it cannot be fairly said that the tenant has evinced an intention no longer

D  to be bound by the contract or relationship between it and Clark.

In the light of such authority as there is I do not rule out the possibility that, where the conditions referred to by Nourse J. in *G.M.S. Syndicate Ltd. v. Gary Elliott Ltd.* [1982] Ch. 1 exist, a partial disclaimer might lead to a forfeiture of part of the demised premises.

E  In reaching my conclusion I have taken into account what was submitted to me by Clark's counsel about the effect of paragraph 8 of the statement of claim. In *Miller v. Emcer Products Ltd.* [1956] Ch. 304, 318–319, Romer L.J., giving the judgment of the court, stated that the fact of a demise was sufficient to create an implied condition that the landlord was "entitled to grant some term in the demised premises, and that the lessee shall have quiet enjoyment of the premises; . . ." but that:

F  "there is no room for the implication of the covenant [as to title] in a demise if the lessor enters into an express covenant for quiet enjoyment. The reason for this is that an express covenant as to one branch of the covenant implied by the word "demise" excludes the other on the principle expressio unius est exclusio alterius . . ."

Here, the covenant was in, what was said to be, standard form:

G  "That the lessee . . . shall and may peaceably and quietly hold and enjoy the premises during the said term without any interruption by the lessors . . ."

The plea in paragraph 8 of the statement of claim in the Dupre action appears to be unsustainable in law, because there is an express covenant promising quiet enjoyment with no promise as to title.

H  However, I consider that it would be over subtle to conclude that the pleader must have been denying the existence of the lease. That is not what the paragraph says, and not, in my judgment, what the pleading as a whole demonstrates.

A

No argument was addressed to me as to whether I could or should construe the words in the statement of claim in the Dupre action against the background that, a month later, Dupre was asserting as against N.M.F.P. that Clark had title to the flat and courtyard and had demised the premises to Dupre. I have not taken this later pleading into account in reaching my decision. If I had, it would have reinforced my view that, judged objectively, having regard to the words used and their context, Dupre did not evince an intention no longer to be bound by its relationship with Clark of landlord and tenant.

B

It follows, therefore, that I do not consider that the statement of claim in the Clark action discloses a reasonably arguable case and, on the basis of the material before me, I would allow the appeal and dismiss the action. The parties have indicated that they would wish my judgment to be given in open court and it is possible that the matter may go further. That being so, I think it is appropriate that I should deal with the third issue even though it does not arise for decision.

C

*Issue (3). The effect of the amendment*

There are two quite separate points under this head: (a) does the amendment itself change the original pleading in any material way?; and if so (b) does the amendment, because of the doctrine of relation back, defeat Clark's rights to forfeit for disclaimer of title (assuming, contrary to my decision, the original statement of claim in the Dupre action gave Clark such rights).

D

In my judgment the amendments to the statement of claim do not improve Dupre's position. Dupre is still asserting that Clark did not have the ability to demise the courtyard because N.M.F.P. were the owners of the courtyard, and, implicitly, as such were the only people able to demise it. The amendments have, I think, achieved nothing.

E

But if I were wrong about that I do not consider that the amendments would have "saved" Dupre in any event, because when the amendment was made, Clark had already irrevocably accepted the repudiation by issuing proceedings for possession. Serving proceedings for possession in such circumstances is equivalent to actual entry upon the premises: *Hill and Redman's Law of Landlord and Tenant*, 18th ed., vol. 1, para. 2201.

F

In *Warner v. Sampson* [1959] 1 Q.B. 297, Hodson L.J. and Ormerod L.J. would have allowed the tenant's appeal on the ground that the offending general traverse had been deleted from the defence by way of amendment. Hodson L.J. put it thus, at p. 322:

G

> "I cannot accept that this pleading should be regarded as any more immutable than any other pleading, and, accordingly, if it were necessary, would hold that the appeal should succeed on the ground that *before the landlord had re-entered or taken effective proceedings for re-entry* the defendant by amending his defence had removed from it the denial of title which it had previously contained." (My emphasis.)

H

Ormerod L.J. said, at p. 326:

A    "The defence in question is a pleading which is capable of
     amendment like any other pleading. Once it is amended, it takes its
     place on the record as a part of the pleadings setting out the issues
     upon which the action will be tried. When the amended defence
     was delivered, nothing had been done by the landlord to claim
     possession of the premises. Had a writ claiming possession been
     issued before the amendment the position might have been different.
B    This was not done, and when a claim was made the position on the
     record was that the landlord's title was admitted."

    It seems to me that there is a potential conflict between two different
principles: namely that an amendment dates back "not from the date
when the amendment is made but from the date of the original
document which it amends" (see *The Supreme Court Practice 1991*, note
C  20/5–8/2, p. 363) on the one hand, and that service of proceedings for
possession is equivalent to re-entry, on the other. The point is open for
decision. In *Warner's* case the amendment was made before notional re-
entry.
    My view is that the argument on behalf of Clark is to be preferred.
Once proceedings for possession have been served the tenant's position
cannot be improved by any subsequent amendment, for the following
D  reasons. (a) Denial of title could have occurred in proceedings to which
the landlord was not a party. Thus, in this case, Dupre might have put
in a defence admitting N.M.F.P.'s claim in the N.M.F.P. action. If,
thereafter, Clark had started its action against Dupre claiming possession,
it would be an odd result if Clark's rights could be removed by a
procedural step taken in an action to which it was not a party and in
E  which it had no right to be heard. There cannot be different rules which
depend on whether the disclaimer in question was made in an action to
which the landlord was and was not a party. (b) On my analysis of the
nature of a disclaimer, the landlord is entitled to re-enter because the
tenant has repudiated the relationship. By serving proceedings for
possession the repudiation has been accepted. The relationship is at an
end, subject to the rules which apply to the period of time between
F  service of proceedings and judgment, which are set out in *Hill and
Redman's Law of Landlord and Tenant*, 18th ed., vol. 1, para. 2201,
and to possible relief from forfeiture. (c) The submission on behalf of
Clark would be consistent with what I assume must be the policy of the
law, namely to encourage peaceful re-possession. Although there are
statutes preventing actual re-entry in certain circumstances, it would be
G  undesirable to encourage landlords to self-help. If the landlords had
been able to effect re-entry after the disclaimer and before the
amendment, even for a short period of time, then I do not believe that
the amendment could have availed the tenant. Service of proceedings
for possession are intended to put the landlord, so far as possible, into
at least as good a position as he would have been in if he had resorted
to self-help.
H

    *Issue (4). Relief from forfeiture*
    As I have already indicated, Dupre's counsel reserved the right to
argue for relief on some other occasion. I have, therefore, not had the

benefit of full argument. As the question of relief does not arise on my findings, I am disinclined to arrive at any conclusions. However, in case the matter were to go to appeal, it would be right, I think, that I should give an indication of my approach to the three questions which appear to arise for consideration: (a) does section 146 of the Law of Property Act 1925 apply where a landlord is seeking possession due to disclaimer? (b) Does the court have a residual power to grant relief? (c) In either event, how should the court now decide the matter?

In *Warner v. Sampson* [1958] 1 Q.B. 404, 422 et seq., at first instance, Mr. Scarman on behalf of the landlord persuaded Ashworth J. that section 146 did not apply. The matter was never argued in the Court of Appeal, the question of relief being held over; and, in the event, it did not arise for consideration. In *Hill and Redman's Law of Landlord and Tenant*, 18th ed., vol. 1, para. 2267 it is said: "It is doubtful whether relief can be granted where the forfeiture arises out of a denial of the landlord's title." Footnote 21 to the words quoted reads:

> "This is because the forfeiture is not 'under any proviso or stipulation in a lease . . .'"—reference is made to Ashworth J.'s judgment—"Quaere whether an implied condition cannot be a stipulation in a lease."

The proviso for re-entry in the lease operates "if the lessee shall at any time fail or neglect to perform or observe any of the covenants conditions or agreements herein contained." This seems to me to be apt to include implied conditions, such as the implied condition that the lessee will not do anything that may prejudice the title of the lessor.

Section 146(1) of the Act of 1925 provides:

> "A right of re-entry or forfeiture under any proviso or stipulation in a lease for breach of any covenant or condition in the lease shall not be enforceable, by action or otherwise, unless and until the lessor serves on the lessee a notice . . ."

Ashworth J. found four reasons why the Act did not apply to the case of a disclaimer: (a) forfeiture does not arise under any stipulation or proviso in a lease, it is a forfeiture which arises by operation of law; (b) it would be quite impossible for a landlord to comply with the notice requirements in section 146(1); (c) relief had never been granted before in a similar case; (d) it would be strange if a tenant could deny the relationship of landlord and tenant and at the same time seek relief on the footing that the lease still existed.

He concluded that he was not prepared to be a "pioneer" and be the first judge to grant relief in a disclaimer case. With great diffidence and considerable trepidation, had I been required to decide the point, I would have been prepared to hold that section 146 did apply and that the tenant is entitled to seek relief under the statute. I can express my reasons shortly. (a) As a matter of construction, I do not consider that the Act of 1925 is inapt to apply to a case such as the present. Indeed, I take the view that, prima facie, the words of the Act of 1925 do apply. Whenever there has been a breach of covenant, for example a repairing covenant, which has not been remedied within the time specified in the

A   notice, the landlord is treating the tenant's breach as repudiatory and, by serving proceedings claiming forfeiture of the lease, is accepting that repudiation. In principle there appears to me to be no difference between a claim for forfeiture because the implied condition referred to above has been broken or because of the breach of any other condition. The section by its terms, is not confined to breaches of express conditions. (b) The Act of 1925 contemplates that some breaches may

B   be incapable of remedy. I cannot see that it would be impossible for a landlord to comply with the notice conditions in the Act. It may frequently be difficult for a landlord to put a figure on the amount of compensation he requires. (c) Whilst I am troubled that better minds than mine have either overlooked the provisions for relief, or have decided that relief could not be sought for reasons which are not

C   apparent, the fact that relief has never before been granted in such a case as this does not persuade me to conclude that, since 1925, relief has not been available to a tenant. (d) Section 146 provides a statutory code which, when it applies, is apt to cover "wilful" breaches of covenant, unlike the position under the court's general equitable jurisdiction: see *Billson v. Residential Apartments Ltd.* [1992] 1 A.C. 494, 510–512. A

D   tenant who repudiated the tenancy relationship by disclaimer and then sought relief would be in no different position from a tenant who repudiated the relationship by breach of the other conditions. No doubt relief would only be granted provided that the landlord's position had not been irrevocably damaged by the disclaimer; in appropriate cases it might be proper to grant an injunction to restrain any further such conduct or impose a penalty.

E   Despite the persuasive decision of Ashworth J., I would have reached a different conclusion and held, as a pure matter of statutory construction, that a notice under subsection (1) was a prerequisite to Clark's right of re-entry and, subject thereto, that relief was available to Dupre under section 146(2) of the Act. It is most unlikely in this case that the court would not have been willing to grant relief on terms. Because of the

F   absence of argument I cannot say what those terms should be.

If I were wrong that section 146 applied to a disclaimer of a landlord's title, then, based upon *Barrow v. Isaacs & Son* [1891] 1 Q.B. 417; *Shiloh Spinners Ltd. v. Harding* [1973] A.C. 691 and *Billson v. Residential Apartments Ltd.* [1992] 1 A.C. 494, I would not have considered that this was an appropriate case for relief under the court's

G   residual equitable jurisdiction. It seems to me that "mere inadvertence" is not a ground for relief: see the *Shiloh* case [1973] A.C. 691, 722E. In *Barrow v. Isaacs* [1891] 1 Q.B. 417, a tenant's solicitor forgot to check the head lease and discover that the landlord's consent was required for an underletting. In giving his judgment, with which Lopes L.J. agreed, Kay L.J. cited, at p. 427, *Duke of Beaufort v. Neeld* (1844) 12 Cl. & F. 248. He concluded [1891] 1 Q.B. 417, 428: "It is a decision of the

H   highest tribunal that equity will not relieve when the mistake arises from the negligence of the suitor who seeks its help." He went on to hold that the suitor must be held responsible for his solicitor's negligence and relief was refused.

Here, either the statement of claim in the Dupre action was an     A
intentional disclaimer (if such it was) or it was an error on the part of
the pleader. In either event, it would not have appeared to me that it
would have been a proper exercise of the court's discretion to grant
relief on the ground of "fraud, accident or mistake," the three remaining
heads under which relief from forfeiture may be granted in equity.

Accordingly, in my judgment the appeal against the decision of
Master Munrow not to dismiss the Clark action must be allowed. That     B
action must be struck out as disclosing no reasonable cause of action.

Mr. Collins, who appeared for Dupre before me, was not the counsel
who pleaded the claims against Clark.

> *Appeal allowed.*
> *Landlord's action dismissed*     C
> *with costs.*
> *Leave to appeal.*

Solicitors: *Sookias & Sookias; Lee Davies & Co., Bishop's Stortford.*

[Reported by IAN SAXTON ESQ., Barrister]
                                                                    D


                                                                    E
                          [COURT OF APPEAL]

                         TINSLEY v. MILLIGAN

1991 June 24, 25;                               Lloyd, Ralph Gibson
     July 30                                    and Nicholls L.JJ.     F

> *Equity—Equitable interest—Illegality—Joint enterprise—Property jointly
> purchased but registered in plaintiff's sole name—Common
> intention to defraud—Plaintiff claiming possession—Defendant
> claiming beneficial share in property—Whether defendant's claim
> arising ex turpi causa—Whether defeated by clean hands doctrine*

> The plaintiff and the defendant, two single women, formed a     G
> joint business venture to run lodging houses. Using funds
> generated by the business they purchased a house in which they
> lived together and which was vested in the sole name of the
> plaintiff, but on the understanding that they were joint beneficial
> owners of the property. The purpose of that arrangement was
> to assist in the perpetration of frauds on the Department of
> Social Security ("D.S.S.") and over a number of years the     H
> defendant, with the connivance of the plaintiff, made false
> benefit claims on the D.S.S. The plaintiff did likewise. The
> money thus obtained helped the parties meet their bills but did
> not represent a substantial part of their income and contributed