# EXHIBIT 105

08-13555-mg Doc 45468-21 Filed 07/31/14 Entered 07/31/14 17:14:52 Exhibit 105
08-13555-jmp Doc 33774-10 Filed 01/10/13 Pg 2 of 4 Entered 01/10/13 17:31:59 Appendix 461
Part 10 Pg 21 of 48
*West Horndon Industrial Park Ltd v Phoenix Timber Group plc* 77

A notices required to be served under the Act and that a notice under section 48 as opposed, for example, to those under section 5(1) or section 7(2) is not such a notice. Be that as it may, in my opinion, the notice under section 48 must be in writing, whether because of section 54 or because it is so required on the proper construction of section 48(1) itself. But in so far as the court held in the *Dallhold* case that it was necessary for the notice to state expressly that the address specified was that at which notices (including notices in proceedings) might be served, in my opinion, it went further than was necessary for the decision in that case and was *obiter*.

By stating that the address of the solicitors was that at which the rent or money due under the statutory demands was to be paid, by B implication it was not to be regarded as the address for any other purpose. There was, in other words, a limitation placed upon that address for the purposes for which it might be used, which did not include the service of notices.

For these reasons, in my judgment, the *Dallhold* case is distinguishable and should be confined to the construction of section 48 to the facts of that particular case. For these reasons, and for those given by Sir Ralph Gibson, I would dismiss this appeal.

Also agreeing, RUSSELL LJ said: In my judgment, the words "by notice" appearing in section 48(1) of the 1987 Act must connote a C writing. Had the draftsman intended that the address in England or Wales of the landlord could be furnished orally, the words "by notice" would not have been necessary. On the other hand, the section does not require that the notice should contain any indication that the address given is the address at which notices can be served by the tenant.

I agree that this requirement of the section can be satisfied by the use of the tests suggested by my lords, namely whether the circumstances of the individual case are such that a reasonable tenant must be taken to understand the purport and purpose of the notice.

I confess that at one time I was troubled by *Dallhold Estates (UK)* D *Pty Ltd v Lindsey Trading Properties Inc* to which reference has been made in the judgments of my lords. That decision of this court is binding upon us. But in the light of the analysis of the case by my lords, I am now satisfied that it presents no impediment to the decision which we reach in the instant case.

I, too, would dismiss this appeal.

*Appeal dismissed.*

E
# West Horndon Industrial Park Ltd v Phoenix Timber Group plc

CHANCERY DIVISION

March 1 1995

MR ROGER KAYE QC, sitting as a deputy judge of the division

Estates Gazette May 20 1995
[1995] 20 EG 137

F
*Landlord and tenant — Lease containing covenant of guarantee — Licence to assign permitted lessor to enter and carry out external improvements — Whether covenant of guarantee disentitled guarantor from being released from obligation to pay rent*

By a lease dated June 25 1979, to which the defendant was guarantor, premises were demised for 20 years from March 25 1979 at an initial yearly rent of £22,500. The plaintiff owns the reversion. Under clause 10(1) of the lease the defendant covenants, *inter alia*, to pay the rent and perform the lessee's covenants during the term "notwithstanding . . . any other act or thing whereby but for this provision the Guarantor would have been released". By clause 3 of a licence to assign dated January 4 1990 the lessor was permitted to G enter the premises to make external improvements and provide external cladding. The lessee having incurred some £129,750 arrears of rent, the plaintiff claimed the same under clause 10 of the lease from the defendant. The defendant contended that by clause 3 of the licence it had been released from its covenant of guarantee, because the licence imposed on the lessee (and therefore the guarantor) a burden additional to the lease, and that the concluding words of clause 10(1) did not prevent such release. The plaintiff appealed from the decision of the master dismissing its claim.

*Held*: The appeal was dismissed. The intention of clause 10 of the lease was that the guarantor should guarantee the H performance of the covenants of the lease and not those which might be contained in some other document. The concluding words of clause 10(1) were concerned with events arising under the lease and did not cover additional burdens created by documents other than the lease.

The following cases are referred to in this report.

*British Motor Trust Co Ltd v Hyams* (1934) 50 TLR 230
*Credit Lyonnais (Australia) Ltd v Darling* [1991] 5 ACSR 703
*R v Payne* (1866) LR 1 CCR 27
J

This was an appeal from the decision of Master Moncaster, who had dismissed summons' issued by the plaintiff, West Horndon Industrial Park Ltd, under RSC Ords 14 and 14A claiming arrears of rent from the defendant, Phoenix Timber Group plc.

Anthony Radevsky (instructed by Talfourds, of Hornchurch) appeared for the plaintiff; David Neuberger QC and Charles Morrison (instructed by Bishop & Sewell) represented the defendant.

Giving judgment, MR ROGER KAYE QC said: By a lease dated June 25 1979 (the reversion of which is now vested in the plaintiff) and made between Tesna Properties Ltd, as landlord, Hardwood K Components (Horndon) Ltd, as tenant, and the defendant as guarantor, the landlord demised to the tenant premises at Unit 13, Industrial Park, West Horndon, Essex, for a term of 20 years from March 25 1979 at the yearly rent (subject to review) of £22,500 payable in advance on the usual quarter days.

The relevant provisions in the lease to which I should refer seem to me to be these.

By clause 4 of the lease, dealing with the rent review provisions, the reviewed rent is to disregard improvements carried out by the tenant. By clause 5(1), (2), (3), (19) and (23) the tenant covenanted to pay the rent, rates and other similar outgoings, insurance moneys and service charges, together with interest on any arrears as therein set out. L By clause 5(5) and (6) the tenant was obliged to keep the whole of the demised premises in repair and to decorate inside and out. By clause 5(9) the tenant was not to assign the whole without consent. By clause 5(11) the tenant was to permit the landlord entry for the purposes of developing neighbouring property or the industrial park in accordance with clause 6(5). By clause 5(12) and (13) the tenant was to permit the landlord entry to inspect for any purpose and for the purposes of repair.

Clause 10 of the lease contained covenants by the defendant as guarantor and provides as follows:
M
(1) That if the Tenant shall make any default at any time during the term (as hereinbefore defined) in payment of rent or in observing or performing any of the covenants or restrictions herein contained the Guarantor will pay the rent and observe or perform the covenants or restrictions in respect of which the Tenant shall be in default notwithstanding any time or indulgence granted by the Landlord to the Tenant or that this lease may have been assigned or that the Tenant may have ceased to exist or any other act or thing whereby but for this provision the Guarantor would have been released.

(2) That if this lease shall be disclaimed the Guarantor will if the Landlord shall by notice in writing within two months after such disclaimer so require take from the Landlord a lease of the demised premises for the residue of the term which would have remained had there been no disclaimer at the same rent and subject to the same covenants and restrictions as in this lease with the

08-13555-mg   Doc 45468-21   Filed 07/31/14   Entered 07/31/14 17:14:52   Exhibit 105
Pg 3 of 4
08-13555-jmp   Doc 33774-10   Filed 01/10/13   Entered 01/10/13 17:31:59   Appendix A.61
Part 10   Pg 22 of 48

78                                  Landlord and Tenant – General                              [1995] 1 EGLR

A  exception of this clause such new lease to take effect from the date of the said disclaimer and in such case the Guarantor shall pay the costs of such new lease and execute and deliver to the Landlord a counterpart thereof.

From March 25 1989 the passing rent rose to £56,000 and the rent due for review on March 25 1994 has not yet been assessed.

It is common ground that the tenant was and is in default of his obligations under clause 5 to pay the rent and other charges since March 25 1992. The current arrears of rent as at the date of the writ in this case was some £129,750 odd, to which is added a claim of some £16,400 odd by way of interest. The plaintiff therefore contended and contends that the defendant guarantor is liable for these sums under

B  clause 10 of the lease.

The defendant, however, contends that it is not so liable. Its defence arises in this way. The lease was first assigned by a company called Plasitfurn Ltd, who in turn assigned it to a company called Liebside Ltd pursuant to a licence to assign made on January 4 1990 between the then reversioner, Bartlett Land plc, Plasitfurn Ltd (the then lessee), Liebside Ltd (the proposed assignee), and a fourth party being the proposed assignee's guarantor. I shall refer to this document hereinafter as "the licence".

By clause 3 of the licence it was provided:

C  In consideration of the Lessor's consent hereinbefore obtained the Lessee hereby grants unto the Lessor the right at any time during the term created by the aforesaid Lease to enter upon the demised premises for the purpose of carrying out at the Lessor's own cost external improvements thereto being part of an estate improvement scheme including in particular but without prejudice to the foregoing external cladding to the walls of the demised premises provided always that in exercising such right the Lessor will make good any damage caused to the demised premises and cause as little inconvenience as possible to the Lessee its employees or agents and will carry out such improvements and cladding in a good and workmanlike manner.

It is also common ground that this clause conferred on the landlord a right of entry wider than the terms previously contained in the lease

D  to which I have already referred. The defendant contends that the effect of this clause was to release its obligations as guarantor under clause 10 of the lease because, in effect, it amounted to imposing an additional burden on the tenant (and thereby on the surety) additional to those contained in the lease. I shall have to return to clause 3 of this licence in a moment.

The defendant having refused to pay the sums due, the plaintiff issued a writ on August 4 1994 claiming the arrears and a declaration that the defendant's covenants under clause 10 of the lease are enforceable throughout the term of the lease. The defendant served a defence denying liability, broadly for the reasons that I have

E  mentioned. It is common ground that the issue between the parties is one of law, namely are the guarantor's liabilities under clause 10 preserved notwithstanding clause 3 of the licence? If the effect of the concluding words of clause 10(1) is not to release the defendant from its obligations as surety under the lease then the plaintiff must succeed. If the concluding words of clause 10(1) do not preserve the surety's liability then the defendant must win. In short, the issue between the parties concentrates upon the meaning or effect of the words in clause 10(1) "or any other act or thing whereby but for this provision the Guarantor would have been released".

On November 1 1994 the plaintiff issued a summons seeking

F  summary judgment under Ords 14 and 14A, very properly raising these issues of construction. On January 6 1995 Master Moncaster resolved that issue in favour of the defendant and dismissed the action. The plaintiff now appeals and it is that appeal which is now before me.

This case has, if I may say so, been very well and very economically argued, but all the relevant points have I think been put. It is conceded, rightly in my view, that clause 3 of the licence viewed as at the date of the licence went wider than any provision contained in the lease, and therefore potentially affected the defendant guarantor so as to be sufficient *prima facie* to release it. This is, of course, but an application of the principle that, unless expressly provided for or expressly consented to by the surety, any material alteration, variation

G  or addition to the terms of the contract between the principal debtor and the creditor potentially prejudicial to the surety will discharge that surety. But, the plaintiff argues, as I have said, the effect of the concluding words of clause 10(1), namely that the guarantor will pay the rent and so forth notwithstanding "any other act or thing whereby but for this provision the Guarantor would have been released" is precisely the type of express provision which is sufficient to preserve the defendant's liability.

I have been helpfully referred to a number of authorities, but it is, in my view, always dangerous in cases of construction to place too much reliance on authoritative examples of words or phrases used in the documents in those cases. Ultimately, and somewhat tritely, each

H  case of course depends upon its own facts and its own documents. The task of the court of course is to ascertain the intention of the parties at the time they entered into their written agreement and to ascertain that intention from the wording of the document viewed as a whole, concentrating of course on the words of particular relevance in the case. Essentially therefore the material words in this case, ie the concluding words of clause 10(1), to which I have already referred, must therefore be construed in the context in which they find themselves.

At the end of the day, in my judgment, the defendant is entitled to succeed, as it succeeded before the master, for the following reasons.   J

1. It is axiomatic that contracts of guarantee are to be construed according to ordinary canons of construction, but in cases of any doubt or uncertainty in favour of the surety.

2. It seems, however, plain to me on the true construction of clause 10 that what was contemplated or intended by the parties as reflected in clause 10(1) was that the guarantor should guarantee the rent and performance of the covenants or restrictions "herein contained", ie those contained in the lease and not those contained or imposed by any other additional, extraneous or subsequent document. It is noticeable that the licence did not on its face purport to vary the terms of the lease but simply imposed an additional clause to which the then tenant

K  and proposed assignee agreed. The effect of clause 3 was, however, as was accepted, potentially to increase and add to the burdens imposed on the tenant by the lease in at least three ways: first, by increasing the potential rent payable on review because the improvements under clause 3 of the licence would not be disregarded under clause 4; second, in that the premiums of insurance payable by the tenant under clause 5 of the lease are potentially liable to be increased as a result of those improvements; and, third, by increasing the tenant's, and thereby the surety's, repairing obligations in consequence of the improvements. The plaintiff points out that no such burden has in fact occurred to date. That, as he rightly accepts, is irrelevant, however, to

L  the present issue. The question is whether as at the date of the licence clause 3 had then — not subsequently — the effect of releasing or discharging the guarantor from its obligations under the lease.

3. Some support for this view seems also to emerge, to my mind, from clause 10(2). There the landlord is entitled to demand that the guarantor take a fresh lease if the current lease has been disclaimed. Such new lease is to be "subject to the same covenants and restrictions as in this lease with the exception of this clause". This subclause seems to me to imply two things: first, that in being compelled to take a new lease the guarantor is thereby intended to be released from any future obligations under the existing lease; second, that that new lease

M  (that is instead of and in place of his discharged obligations under the existing lease) is to make the guarantor (that is now *qua* tenant) liable for the same covenants and restrictions as subsisted in the existing lease. So here too the guarantor could not be compelled to include in the new lease a term such as is contained in clause 3 of the licence.

4. Reasons 2 and 3 seem to me to lead inevitably to the conclusion that the parties to the original lease only intended that the guarantor's obligations should extend to those embraced by or contemplated by the terms of the original lease and not, for example, additional or wider burdens of the type imposed by clause 3 of the licence.

5. The concluding words of clause 10(1), which I am urged to give a wide interpretation were, however, in my judgment, intended to

08-13555-mg   Doc 45468-21   Filed 07/31/14   Entered 07/31/14 17:14:52   Exhibit 105
08-13555-jmp   Doc 33774-10   Filed 01/10/13   Entered 01/10/13 17:31:59   Appendix 4
Pg 4 of 4
Part 10   Pg 23 of 48

A.61

*Howard de Walden Estates Ltd* v *Pasta Place Ltd*                                                                 79

A   preserve the guarantor's liability to such obligations and no further. The words "any other act or thing" were therefore, in my judgment, not intended to cover the type of additional burden having the potential effect that clause 3 of the licence has in this case.

Clause 10(1) was therefore not, in my view, intended to be, nor is it, a complete *carte blanche* to entitle the landlord to extract every and any additional burden from the surety. If it were so intended that any such additional burden should be extractable from the surety then, in my judgment, it was necessary so to have provided either expressly or by some clearer implication than is afforded by those concluding words. I accept that they must be given some effect and clearly were

B   intended to imply something additional to the mere giving of time or indulgence or assignment of the lease or the tenant ceasing to exist. But I think Mr David Neuberger QC is right when he submits that what was contemplated was that this should cover such cases as the landlord refusing rent in a case where he wrongly believes there to be a breach of covenant or where, say as a condition of an assignment, he has received security for the rent which he subsequently releases. No doubt there are also other examples such as forebearance or where the landlord has agreed for a time with the tenant that the tenant might suspend payment of the rent for reasons best known to the tenant or the landlord. I do not attempt an exhaustive category of cases intended

C   to be covered by those general words at the end of clause 10(1). Suffice it to say that, in my judgment, they were not intended to cover and do not cover the additional burden imposed by clause 3 of the licence.

I note, for example, that the case of *British Motor Trust Co Ltd* v *Hyams* (1934) 50 TLR 230, to which I was helpfully referred, was a case where hire purchase payments were guaranteed by the defendant under two hire purchase agreements relating to two separate vehicles. In each of the agreements it was expressly provided that the guarantee should not be avoided by any variation in the terms of the agreement. Branson J held that the replacement of the old agreements with a new

D   single consolidated agreement covering both vehicles was a variation contemplated by the original agreements and accordingly the guarantor was not released. There, there was clearly the type of express provision which is wholly absent from this case.

I was referred also to the decision of the Supreme Court of New South Wales in *Credit Lyonnais (Australia) Ltd* v *Darling* [1991] 5 ACSR 703. There the guarantor of a financial facility was not to be exonerated under the provisions of clause 8 of the guarantee, *inter alia*, by "any matter or thing which under the law relating to sureties would but for this provision have the effect of releasing the guarantor from his guarantee and indemnity or of discharging his guarantee and

E   indemnity". The question was whether a subsequent variation in the financial arrangements which had been consented to on behalf of the sureties nevertheless had the effect of releasing the surety, and it was held by that court on this particular point that the effect of clause 8 was that the sureties were not released by that variation. But that seems to me to be a different case in a different context and a much clearer and a much more obvious example of the surety not being released. I note, for example, that the opening words of clause 8 in that case were specifically that: "this guarantee and indemnity shall be without prejudice to nor shall the guarantor be exonerated in whole or in part nor shall the rights or remedies of the creditor be in any way prejudiced or adversely affected by any of the matters following".

F   Then one of the matters following was the words which I have already quoted from clause 8. Those words seem to me to appear in a much wider context and a much more different context than this case.

I was also referred to the case of *R* v *Payne* (1866) LR 1 CCR 27. There the relevant provision which was being construed was the Prison Act 1865, section 37, which forbade the conveyance into any prison with intent to facilitate the escape of a prisoner, of any "mask, dress or other disguise or of any letter or of any other article or thing". This case, as was *Credit Lyonnais*, was urged upon me as support for the wide width to be applied to the concluding words of clause 10(1) of the lease. In *Payne* it was held that a crowbar, notwithstanding that it was vastly different from a "mask, dress or other disguise or any

G   letter", was nevertheless included within the concluding provisions, "any article or thing", of section 37. I have absolutely no doubt in my mind whatsoever that that was a just and right conclusion having regard to the obvious purpose for which section 37 of the Prison Act 1865 was passed. I do not think, however, it is necessarily of any assistance in the construction of the words "any other act or thing" in this particular case.

In the result I dismiss the appeal.

*Appeal dismissed.*

H

# Howard de Walden Estates Ltd *v* Pasta Place Ltd and others

CHANCERY DIVISION

May 19 1994

MORLAND J

J

Estates Gazette June 3 1995
[1995] 22 EG 143

*Landlord and tenant — Liability of sureties — Whether liability discharged by variation in the obligations of the lessee and assignees*

On November 24 1987 the plaintiff landlords granted two leases to the first defendant, Pasta Place Ltd, of premises for use as a delicatessen; the landlords forbid the sale of wines. The second, third and fourth defendants were sureties to the two leases; the surety covenants containing a proviso that their obligation should not be released by any deeds or documents given to the tenant supplemental to the leases. On February 9 1989 the first defendants assigned the K leases to NB Ltd. On August 4 1989 the landlords permitted NB Ltd to serve Italian wine to persons consuming food at the premises, eight tables having earlier been permitted in the premises. On July 16 1990 the landlords granted a licence to use the premises as an off-licence and a licence to use the adjoining premises as a fire escape. NB Ltd went into administrative receivership on October 1990. The landlords who had obtained a judgment for arrears of rent against the first defendants on October 27 1992, which was not satisfied, claimed the arrears from the sureties. The sureties contended that they had been discharged from their liabilities because of the variation of the obligations of the lessee by the three licences granted by the landlords L on August 4 1989 and on July 16 1990.

*Held*: **The landlords' claim was dismissed. In applying *Holme* v *Brunskill* (1878) 3 QBD 495, and in deciding whether alterations to the obligations of the lessee are substantial or prejudicial to the surety, the court must assess the alteration objectively. It is not for the court to decide whether in fact there has been material prejudice. The licence granted on August 4 1989 and the two granted on July 16 1990 would be likely to increase the rental value of the premises; the existence of the licences is a factor of potential commercial value, likely at least to a degree to influence a lessee in deciding what the rent would be that he would be M prepared to pay. The sureties' liabilities were therefore discharged and were not saved by the proviso in the leases which envisaged a breach or apprehended breach of covenant.**

The following cases are referred to in this report.

*Holme* v *Brunskill* (1878) 3 QBD 495
*Selous Street Properties Ltd* v *Oronel Fabrics Ltd* [1984] 1 EGLR 50; [1984] EGD 360; (1984) 270 EG 643 & 743

This was the hearing of a claim by the plaintiffs, Howard de Walden Estates Ltd, for arrears of rent against the sureties of two leases of premises at 102 Marylebone High Street, London W1.