# EXHIBIT 106

## WESTERN CREDIT, LTD. v. ALBERRY.                A

[COURT OF APPEAL (Sellers, Davies and Russell, L.JJ.), April 21, May 14, 1964.]

*Hire-Purchase—Guarantee—Indemnity—Distinguished—" Loss " sustained by hire-purchase company as a result of the act, default or negligence of the hirer—Termination by hirer, in accordance with terms of agreement, by paying, altogether, fraction of hire-purchase price and returning car during period of hire—Hire-purchase company's profit consequently smaller than if hirer had hired for full period.*         B

A hire-purchase agreement was entered into by an adult, for whom his father stood surety by signing the following, which was included in the same document as the agreement: " Guarantee to Western Credit, Ltd. In consideration of your having agreed at my request to enter into the   C
annexed agreement with the person named therein as hirer, I, the undersigned, guarantee the payment by the said hirer to you of the instalments in the said agreement agreed to be paid and the performance and observance by the said hirer of the terms of the said agreement: and I will indemnify you against any loss or damage which you may sustain as a result of the act, default or negligence of the said hirer (in connexion with or in any way   D
arising out of the said agreement).  This guarantee shall not be terminated or affected by my death or by you giving time or other indulgence to the said hirer.  Signature of surety . . ."  The hire-purchase agreement provided for a hiring of a car for four years, on payment of an initial payment and monthly instalments totalling £848, with an option to purchase at the end of the hire for £1 (making a total hire-purchase price of £849), but gave   E
the hirer the right to terminate earlier by returning the car and making his total payments up to three quarters of the hire-purchase price.  The hirer exercised this right.  As a result the hire-purchase company, even after making allowance for the value of the returned car and a discount for the hirer's early payment, received £93 6s. less than it would have done if the hirer had elected to hire for the full four year period, and then to purchase.   F
The hire-purchase company claimed this sum from the surety as loss sustained " as a result of the act . . . of the hirer ".

Held: the claim failed because the contract signed by the surety was a guarantee of the due performance by the hirer of the hire-purchase agreement not a contract of indemnity, and, as the hirer had duly performed his obligations, the hire-purchase company could not recover under the guarantee;   G
moreover there was no " loss " suffered by the hire-purchase company, for the company had merely failed to obtain the profit that they would have derived if the hirer had not elected to terminate the contract (see p. 940, letter A, p. 941, letters E and H, and p. 942, letter A, post).

*Yeoman Credit, Ltd.* v. *Latter* ([1961] 2 All E.R. 294) distinguished.

Per SELLERS, L.J., and DAVIES, L.J.: a termination of the contract by the   H
hirer in accordance with his rights thereunder is not an " act " within the meaning of the words " act default or negligence " (see p. 940, letter C, and p. 941, letter A, post).

Appeal allowed.

[ As to the nature of a guarantee and of a contract of indemnity, see 18 HALS-   I
BURY'S LAWS (3rd Edn.) 411, para. 767, and 528, para. 973.

As to guarantees in relation to hire-purchase transactions, see 19 HALSBURY'S LAWS (3rd Edn.) 525, para. 844.]

Cases referred to:
*Coutts & Co.* v. *Browne-Lecky* ([1946] 2 All E.R. 207; [1947] K.B. 104; 115
    L.J.K.B. 508; 26 Digest (Repl.) 100, 683.
*Yeoman Credit, Ltd.* v. *Latter*, [1961] 2 All E.R. 294; [1961] 1 W.L.R. 828;
    3rd Digest Supp.

C.A.        WESTERN CREDIT, LTD. *v.* ALBERRY (SELLERS, L.J.)        939

A   **Appeal.**
The defendant, who had signed an agreement with the plaintiff finance company whereby he became a surety for the hirer under a hire-purchase agreement, appealed against the judgment of His Honour JUDGE FLINT, given at Worksop County Court on Nov. 19, 1963, for the finance company for £93 6s. against him under the agreement. The facts are stated in the judgment of SELLERS, L.J.

B   *G. Milner* for the defendant surety.
The plaintiff finance company did not appear and was not represented on the hearing of the appeal.

*Cur. adv. vult.*

May 14. The following judgments were read.

C   **SELLERS, L.J.:** This appeal by the defendant from the judgment of His Honour JUDGE FLINT was heard without the successful plaintiffs, a hire-purchase company, appearing to support the judgment in their favour. The court was properly informed in due time by the solicitors for the plaintiffs that their clients did not intend to take any steps in regard to the appeal, but no reason was given.

The defendant is the father of René Alberry, who on June 19, 1959, when
D   twenty-one years of age, entered into a hire-purchase agreement with Western Credit, Ltd., the plaintiffs, in respect of a Jaguar motor car, registration No. KUK814. This was a secondhand Mark VII saloon car for which the cash price was £650, of which the son made an initial payment of £100. The plaintiffs' hire-purchase costs were £198, which, plus a final payment of £1, made a total purchase price of £849 and the agreement was for payment of forty-eight instal-
E   ments of £15 11s. 8d. a month. In 1962 the son was minded to terminate the agreement. He had paid the instalments regularly when due and having paid a total of £534 14s. to the plaintiffs in addition to the £100 paid to the dealer he had paid as the learned judge found " every penny for which he was liable ". On Feb. 21, 1962, the son, as hirer, had returned the hired car to the plaintiffs and had terminated the contract in accordance with cl. 9 of its conditions. It
F   is clear that the son had committed no breach of contract, but on the contrary had properly brought it to an end in a manner for which the agreement itself provided. The plaintiffs claimed nevertheless a further £93 6s. from the defendant, being the whole of the purchase price unpaid by the son, after giving credit for the value of the car which he returned, less a discount for the earlier payment of the instalments and the learned judge has found in their favour.

G   On June 18, 1959, a day earlier than the date of the son's hiring agreement, the defendant, his father, had signed, in the presence of a witness, the lower portion of the document of hire, which is as follows:

> " Guarantee to Western Credit, Ltd. In consideration of your having agreed at my request to enter into the annexed agreement with the person named therein as hirer, I, the undersigned, guarantee the payment by the
H   said hirer to you of the instalments in the said agreement agreed to be paid and the performance and observance by the said hirer of the terms of the said agreement: and I will indemnify you against any loss or damage which you may sustain as a result of the act default or negligence of the said hirer (in connexion with or in any way arising out of the said agreement). This guarantee shall not be terminated or affected by my death or by you giving
I   time or other indulgence to the said hirer."

At its commencement and at its termination " This guarantee . . ." treats the undertaking as a single obligation of guarantee. The obvious obligation of the surety (for the form requires the " signature of surety ") is to answer only for the failure of the hirer to carry out his part of the contract, the liability primarily falling on him.

The son is now admittedly under no outstanding liability to the plaintiffs and it would, in my opinion, require a very clear and unambiguous contract to impose

a further liability on a signatory to what might well be thought by anyone signing   A
such a document as this, to be a guarantee and nothing more.

The word "indemnity" is used but the sentence is descriptive in its context
of the kind of non-performance or non-observance which might arise under the
guarantee, following as it does the guarantee of the performance and observance
by the hirer under the agreement. I cannot read it as an indemnity against any
loss or damage as a result of the termination of the contract by the hirer when   B
the contract of hire has been fully performed by him according to its tenor.
It would be a remarkable contract. It would release the hirer completely and
leave the "surety" liable for the best possible performance of it in favour of the
finance company without any redress against the hirer. If there were said to be
redress against the hirer then cl. 9 would be a snare, for the hirer's liability would,
in effect, not terminate but would continue to his surety who had paid it. Further,   C
in the context "act default or negligence" the word "act" does not include
a termination of the contract in accordance with the hirer's rights under the
contract and a contract so terminated creates no "loss" in the sense of the clause.
A salesman does not make a loss merely because he sells at a price less than he
seeks to get. The contract he makes is a less advantageous one than he desired.

It would seem that the judge would have taken the view of no liability, but for   D
*Yeoman Credit, Ltd.* v. *Latter* (1) and some of the observations in the judgments
there. In my view that case in no way bound the learned judge and its reasoning
is not properly to be applied to the circumstances of the present case. It con-
cerned the hire of a car to an infant, and, because of that fact and the unenforce-
ability of the infant's liability and probably of a guarantee of the bargain, it
was stipulated that an adult must sign a special form of indemnity. The second   E
defendant, an adult, signed the special form which was described "Hire purchase
indemnity and undertaking" and the liability for loss and the basis thereof was
specifically set out. The circumstances and the defined liability are so different
that the case in no way bears on the solution of the present provisions on which
the plaintiffs relied.

I would allow the appeal and enter judgment for the defendant with costs   F
here and below.

**DAVIES, L.J.**: When the hirer in February, 1962, exercised his right to
terminate the hire-purchase agreement which he had entered into in June, 1959,
he paid to the plaintiffs the full amount which under the agreement he had
contracted to pay to them in that event. That meant, therefore, that he was
under no further liability to them; but it meant also that, although they had   G
recovered with interest the whole of the sum which they had originally paid to
the dealers for the car, they were short by £93 6s. of the profit which they would
have made had the hirer instead of terminating the agreement, continued the
hiring to the end of the contemplated four-year period. That is the sum which
they claim to have lost and for which they recovered judgment against the
defendant.   H

The agreement between the parties has already been read by SELLERS, L.J.
The learned judge held that the first part of this agreement was a guarantee;
but he considered that he was bound by the decision of this court in *Yeoman
Credit, Ltd.* v. *Latter* (1) to hold that the latter part was an indemnity and so gave
judgment for the plaintiffs for the amount of their alleged loss.

In the present case the agreement is headed "Guarantee" and starts as such,   I
though that fact is not in any way decisive. The second part commences "and
I will indemnify you". The final sentence reverts to the word "guarantee"
and expressly provides that it shall not be affected by the giving of time to the
hirer, a provision which would, of course, be apt in the case of a guarantee but
wholly inapt in the case of an indemnity. Moreover it is difficult to appreciate
how the plaintiffs can be said to have suffered any loss when they have recovered

---

(1) [1961] 2 All E.R. 294.

A   from the hirer all that they were entitled to under the contract, and have merely been deprived of the further profit which they would have received but for his valid exercise of the right which they for good consideration had granted to him; and it is quite impossible to see how such an exercise of a contractual right can be brought within the words " act default or negligence of the hirer ". If the plaintiffs had intended that the defendant should in any event pay any
B   difference between the amount paid by the hirer and the full hire-purchase price, the agreement ought to have, and could have, expressly so provided.

Yeoman Credit, Ltd. v. Latter (2) was an entirely different case. There the hirer was an infant, and therefore the hire-purchase agreement was void. A guarantee of such an agreement would probably also have been void (*Coutts & Co. v. Browne-Lecky* (3)), though the point was left open. Perhaps for this reason
C   the " guarantee " form was not used but instead a form called " Hire-purchase indemnity and undertaking " expressed to be appropriate in the case of an infant hirer. Most important of all, the " loss resulting from or arising out of the agreement " which was the indemnity covered was expressly defined (4) as

  " the total amount which the hirer would have had to pay under the agree-
  ment to enable him to exercise the option of purchasing the chattels plus
D all expenses you may incur in the exercise or enforcement of your rights
  under the agreement . . . less the amount actually paid to you under the
  agreement by the hirer."

This definition was a clear formula by which the amount payable could be ascertained.

That case, therefore, was entirely different from the present one and, in my
E   judgment, has really no bearing on it. In the circumstances I am of the opinion that the undertaking in the present case was a guarantee by the defendant of the due performance by the hirer of the agreement and that as the hirer had duly performed his obligations under the agreement and the plaintiffs had suffered no loss, they are not entitled to recover.

F       RUSSELL, L.J.: There was more than one way in which the hirer could perform his part of the bargain with the plaintiffs, the finance company. The way that he chose, was, in accordance with cl. 9, to return the car to the plaintiffs in proper condition and pay the amount by which the payments already made fell short of three-quarters of the hire-purchase price.

At the foot of the document constituting the contract was printed the agree-
G   ment by the defendant now under consideration. It was headed " *Guarantee* to Western Credit, Ltd." and below it was a space for signature labelled "Signature of *Surety* ". It would indeed be surpising to find that signature of a clause so topped and tailed could involve the signer in any liability if the hirer complied faithfully with his obligations under his contract with the plaintiffs. The body of the clause has already been read (5).    It is said that it compels the surety to
H   pay to the plaintiffs the whole balance of the hire-purchase price, less the value of the car, and less a discount for accelerated payment.

Construing this provision apart from authority I have no doubt that it is not to be regarded as other than a guarantee of due performance by the hirer. The final sentence labels all that has gone before as " this guarantee " in a context which plainly shows that guarantee is meant. I construe the part starting " and
I   I will indemnify " as expository of the liability involved in the guarantee, rather than as imposing a liability which, by embracing all the liability under the guarantee and more, renders the guarantee superfluous as a protection to the plaintiffs. Moreover to regard the clause as imposing in part a guarantee and in part an obligation to indemnify would involve the proposition that for part of his possible liability under the clause the surety would have a right over against the hirer, but not for the other part. Or, if his right over was for the whole, the

(2) [1961] 2 All E.R. 294.            (3) [1946] 2 All E.R. 207; [1971] K.B. 104.
(4) See [1961] 2 All E.R. at p. 297.        (5) See p. 939, letter H, ante.

result would be that at one remove the plaintiffs could impose a liability on the   A
hirer which the contract expressly enabled him to avoid.   Additionally I do not
think that in this contract it can properly be said that, when the plaintiffs have
received the full amount of profit which according to the terms of the contract
they were entitled to expect, should the hirer take a particular step open to him
according to those terms, they have sustained any loss or damage.   All that has
happened is that the plaintiffs have not received as great a profit as would have   B
been made had another permissible course been adopted by the hirer.

The county court judge, though reluctantly, felt himself bound, after reference
to the case in this court of *Yeoman Credit, Ltd.* v. *Latter* (6), to conclude that
the plaintiffs' claim was justified.   For some reason the plaintiffs have chosen
not to be represented before us to support that conclusion: it is not profitable
to speculate on the reason—whether it be overweening confidence, or utter   C
despair, or some other.   I do not consider that that case leads to that conclusion.
It was a totally different and very special case.   The hirer was to the knowledge
of all an infant; it was appreciated that the contract could not bind him for that
reason, and that completion of a guarantee form (which was provided at the foot
of the hire-purchase agreement but was not used) would probably for the same
reason be valueless.   At the foot of the agreement was a note saying " If the   D
hirer is under twenty-one an adult must sign a special form of indemnity ".   This
special form, which was signed, was headed " Hire-purchase indemnity and under-
taking ".   The obligation was " to indemnify you against any loss resulting from
or arising out of the agreement ".   Clause 2 expressly provided (7)

> " the amount of your loss for the purpose of this indemnity whether
> or not the agreement . . . shall have been terminated by any party thereto   E
> shall be the total amount which the hirer would have had to pay under the
> agreement to enable him to exercise the option of purchasing . . . plus all
> expenses you may incur . . . less the amount actually paid to you under the
> agreement by the hirer."

There was thus an express definition of " loss ", which would avoid the difficulty   F
of asserting a loss when due fulfilment of a contract resulted in profit, and
which made it perfectly plain that the liability of the second defendant was
not co-extensive with the liability (if any) of the hirer.   Moreover there was a
clause which made it clear that no absolute right of recourse to the hirer—such
as is implicit in a guarantee—was intended.

These matters show that that case was totally different from the present case,   G
and neither the decision nor any comments in the judgments are of any assistance
in deciding the present case.   In my judgment the appeal should be allowed.

*Appeal allowed.*

Solicitors: *Corbin, Greener and Cook*, agents for *E. P. Bastide & Son*, Staveley
(for the defendant, the surety).

[*Reported by* HENRY SUMMERFIELD, ESQ., *Barrister-at-Law.*]   H

I

———

(6) [1961] 2 All E.R. 294.                 (7) See [1961] 2 All E.R. at p. 297.