JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice pending*)

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*                 :    **08-13555 (SCC)**
                                                            :
                           Debtors.                         :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

**SUPPLEMENTAL OBJECTION AND REPLY
IN FURTHER SUPPORT OF OBJECTION TO PROOF
OF CLAIM NO. 33605 FILED BY SANFORD A. AND TINA A. MOHR**

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan"), on behalf of BNC Mortgage, LLC ("BNC"), files this supplemental objection and reply (the "Supplemental Objection & Reply") to the response (the "Response"), ECF. No. 41101, filed by Sanford A. Mohr and Tina A. Mohr (the "Mohrs" or "Claimants") opposing the Plan Administrator's Objection to Proof of Claim 33605 ("Objection"), ECF. No. 39348, and respectfully states as follows:

{JK00607535.1 }

**PRELIMINARY STATEMENT**

*Brief Background*

The Mohrs stopped paying their mortgage in October of 2004. For almost a decade they have lived in their home payment-free and have continued in their efforts to have their loan rescinded—efforts they initiated only *after* defaulting on their payment obligations. They admit the default was due to personal matters having nothing to do with BNC or the subject loan transaction. *See* Complaint ¶ 18 at Ex. A to POC.

Although foreclosure proceedings were initiated in 2004 when the Mohrs first defaulted on their payment obligations, those proceedings were cancelled when the Mohrs initiated a lawsuit in Hawai'i state court seeking rescission of the loan and damages. In an effort to conserve resources and reach resolution, BNC negotiated a settlement with the Mohrs. Under that settlement, the Mohrs agreed to return the loan amount to BNC, minus bank charges and interest payments, and BNC would in turn release the mortgage. On the eve of settlement, and after BNC complied with its side of the bargain by executing a release of the mortgage, the Mohrs failed to place the agreed upon amount into escrow and the settlement fell through.

*The Claim*

Now the Mohrs have filed a proof of claim in the amount of $667,675.04. Their claim is based on alleged TILA violations, which purportedly entitle the Mohrs to rescission and damages. But the Mohrs' claim suffers from several fatal defects.

*The Plan Administrator's Objection and Supplemental Objection*

After the Plan Administrator filed its initial Objection, the Lehman Estate sold the loan as part of its ordinary administration of Estate affairs. Because BNC no longer holds the subject note and cannot effectuate the rescission remedy that the Mohrs seek, the Mohrs' rescission

claim fails as a matter of law. This argument was not made in the Plan Administrator's initial Objection because that information was not known at the time. As such, the Plan Administrator files this Supplemental Objection to provide the Mohrs with adequate notice of the new basis for disallowing this claim.

As to the Mohrs' TILA claim (and as set forth in the Plan Administrator's initial Objection) any claim for damages based upon TILA violations expired before the Mohrs filed their claim in the underlying state action.

Finally, although the Mohrs only asserted TILA violations in their proof of claim, their Response vaguely suggests they may argue for relief on other grounds. The Court should reject any such arguments as untimely and improper since the Mohrs' proof of claim is unequivocally based on TILA violations only. In the event the Court is inclined to hear additional arguments, the Mohrs' claim nevertheless fails because a state law claim based on the same predicate facts as alleged TILA violations is preempted.

In short, the Mohrs do not have a cognizable claim at law or in equity against BNC. To the extent the Mohrs believe they are entitled to pursue an equitable claim for rescission, they may be able to do so against the current note holder.

**BRIEF STATEMENT OF FACTS**

**On April 16, 2004**, the Mohrs executed a promissory note in favor of BNC's predecessor, Finance America (the "Note") and gave a mortgage (the "Mortgage") encumbering their interest in real property located at 73-4787 Halolani Street, Kailua-Kona, Hawai'i, 96740. Ex. 1 to Objection. Finance America loaned $467,500.00 to the Mohrs (the "Loan").

**On or about October 1, 2004**, the Mohrs stopped making payments on the Mortgage.

**On or about March 21, 2005**, the Mohrs received a Notice of Mortgagee's Intention to

Foreclose Under Power of Sale. Ex. C to Proof of Claim 33605 ("POC").

**On April 18, 2005,** the Mohrs, through counsel, sent a letter to Finance America purporting to rescind their mortgage. Ex. E to POC.

**On April 19, 2005**, the Mohrs filed a lawsuit in Hawai'i state court, Civil No. 05-1-095K, seeking rescission of the Mortgage and damages for alleged TILA violations. Ex. A to POC.

**On April 20, 2005**, the non-judicial foreclosure was cancelled. Complaint ¶ 28 at Ex. A to POC.

**In August, 2008**, BNC and the Mohrs reached a compromise and a settlement agreement was drafted. The Mohrs agreed to place $463,394.32 (the amount of the Loan less some bank charges and interest payments made by the Mohrs) in escrow as required for rescission under TILA, and BNC would in turn release the Mortgage. *Compare* Objection at ¶ 10 *and* Response at ¶ 10.

**On December 2, 2008**, the Mohrs, through counsel, wrote to BNC's counsel and represented that the funds were available to be wired and could be disbursed by December 5, 2008. The Mohrs further requested that BNC immediately release the Mortgage. Ex. H to POC.

That same day, BNC conditionally released the Mortgage. Ex. I to POC.

Contrary to the Mohrs' representations to BNC, the Mohrs failed to place the requisite funds in escrow and the settlement fell through.

**On February 2, 2009,** BNC rescinded and cancelled the prior release. *See* attached **Exhibit 1**.

**On September 20, 2009**, the Mohrs filed their proof of claim.

**In July, 2013**, the Mohrs—relying upon the invalid release BNC previously executed

{JK00607535.1 }

*and rescinded*—persuaded the servicer, Ocwen Financial Corporation ("Ocwen"), to record a release of the Mortgage.

**On August 12, 2013,** the Plan Administrator filed an Objection to the Mohrs' proof of claim.

**On September 9, 2013,** the Lehman Estate sold the Note to a third party. *See* Katz Decl. at ¶ 5.

**On October 31, 2013**, the Mohrs served their Response to the Plan Administrator's Objection. Despite knowing that: 1) the release of the Mortgage was conditioned upon settlement, and 2) the settlement with BNC was never consummated, the Mohrs stated in their Response that "BNC released the note and mortgage to the Mohrs[,]" Mohrs' Response, Doc. 41101 at ¶ 7, suggesting that release was effective even though the settlement was never consummated and even though BNC properly rescinded that release on February 2, 2009.

**On March 31, 2014,** after discovering that the Mohrs improperly procured a release of the Mortgage, Ocwen filed a rescission of their prior release of the Note. *See* attached **Exhibit 2**.

**On July 30, 2014,** the foreclosure proceedings were renewed. *See* attached **Exhibit 3**.

## ARGUMENT

I.  **The Mohrs Do Not Have a Rescission Claim Against BNC**

   A.  *BNC Does Not Hold the Note and Therefore Cannot Rescind the Mortgage*

Even if the Mohrs were entitled to rescission of their mortgage loan (and as set forth below they are not), that claim for relief cannot lie against BNC.

An equitable claim for rescission is unavailable against a party that no longer possesses any interest in the subject loan. *See Karakus v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 318,

{JK00607535.1 }
5

325 (E.D.N.Y. 2013). *See also Zakarian v. Option One Mortg. Corp.*, 642 F. Supp. 2d 1206, 1213 (D. Haw. 2009) (holding former loan holder lacked any authority to grant rescission of the loan or affect any of the assignee's rights or interests to the loan).

In *Karakus*, the plaintiff borrowers claimed TILA violations by the mortgage lender, Wells Fargo, and purported to rescind the loan. However, Wells Fargo assigned its interest in the loan to Deutsche Bank. In light of that assignment, the court held, "Deutsche Bank is the only party that can be ordered to remove the lien on [plaintiffs'] home." It further held, "Wells Fargo, by the same token, is dismissed from the case, since it no longer possesses any interest in that loan." *Id.*

Here, like in *Karakus*, BNC no longer has an interest in the subject loan. The Lehman Estate sold the loan in September, 2013 as part of its ordinary administration of the Estate. *See* Katz Decl. at ¶ 4. In light of that assignment, the current owner is the only party that can be ordered to rescind. By that same token, the claim against BNC should be disallowed because BNC no longer possesses any interest in that loan. For that reason, the portion of the Mohrs' claim that is based upon a claim for rescission should be disallowed and expunged.

### B. The Mohrs Cannot Obtain Rescission Because They Have Not Pled and Cannot Show They Can Tender the Loan Amount

Even if BNC did own the Note (though it does not), the Mohrs' claim for rescission fails because the Mohrs are unable to tender the loan amount.

It is well settled that a party seeking rescission must show two things: 1) a TILA violation triggering rescission rights, and 2) the ability to tender the loan amount. 15 U.S.C. § 1635(b) (2011); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1170-1171 (9th Cir. 2003); *HSBC USA v. Chernilas*, No. 5183/08, 2010 WL 4155292 (N.Y. Sup. Ct. Oct. 6, 2010); *Berkeley Fed. Bank & Trust FSB v. Siegel*, 247 A.D.2d 498, 498-499 (2d Dep't. 1998). This is also true

under Hawai'i's Unfair and Deceptive Acts and Practices statute ("UDAP").  *Young v. Bank of N.Y. Mellon*, 848 F. Supp. 2d 1182, 1193-94 (D. Haw. 2012) ("[A] plaintiff seeking affirmatively to void a mortgage transaction under [H.R.S.] § 480-12 must be able to place the parties in as close a position as they held prior to the transaction.") (Internal quotations and citation omitted).

The amount the Mohrs would need to tender is the Loan amount of $467,500 less the interest they previously paid and other finance charges, for a total of $463,394.32.  *See* Objection ¶ 10.  Yet the Mohrs have not offered to tender that amount or submitted any evidence that they are able to do so.  Indeed, when the Plan Administrator raised this defense in its Objection, the Mohrs avoided a meaningful response.  *See* Response ¶¶ 10, 15-18.  Instead of stating they can tender the loan amount and providing proof of the same, the Mohrs argued BNC did not comply with the prior settlement agreement.  *Id.*  This argument is a distraction and irrelevant.

Furthermore, the Mohrs' failure to make any payments of principal or accrued interest in almost a decade also weighs against awarding rescission.  *See HSBC USA v. Chernilas*, 2010 WL 4155292 (N.Y. Sup. Ct. Oct. 6, 2010) (finding the borrowers' failure to make payments in over two years since foreclosure was initiated weighed against finding they could tender the loan amount).  Because the Mohrs cannot tender the loan amount, their claim for rescission fails and the portion of the pending claim based upon rescission should be disallowed and expunged.

## II. The Statute of Limitations Applicable to TILA Claims Bars the Mohrs' Claim for Damages

As set forth in the Plan Administrator's Objection, the Mohrs' damages claim is barred by TILA's one-year statute of limitations.  *See generally* Objection at ¶¶ 19-29; *see also Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011) ("Here, it is undisputed that the mortgage loan transactions closed on October 12, 2005. Thus, the applicable [TILA] statute of limitations ran on October 12, 2006. . . ."). The loan transaction between the Mohrs and

BNC's predecessor, Finance America, closed on April 16, 2004. The Mohrs initiated their lawsuit by filing their complaint in Hawai'i state court on April 19, 2005, 3 days after their claim expired. The claim is time-barred.

Notably, the Mohrs have made only two "arguments" in response to the Plan Administrator's statute of limitations defense. First, the Mohrs state their proof of claim was filed to preserve all matters involved in the underlying state action. *See* Response at ¶¶ 19-23. That statement is of no consequence. It was that very state action that was untimely.

Second, the Mohrs ask the Court to note that BNC no longer has certain original loan documents and that the Mohrs were informed of this fact on February 16, 2007. Response at ¶ 23. This fact is entirely irrelevant to the statute of limitations analysis because the Mohrs filed their suit two years earlier, on April 19, 2005.

For the reasons set forth herein and in the Plan Administrator's initial Objection, and because the Mohrs have not raised a single viable defense to the application of TILA's one year statute of limitations, the Plan Administrator respectfully requests that the Court disallow the Mohrs' damages claim against BNC.

### III. Any Additional Claims Rest On The Same Predicate Facts as The TILA Violations And Are Therefore Preempted

In their Response, the Mohrs allude to claims other than the TILA claim set forth in their proof of claim. They state their proof of claim was "filed to preserve all matters involved in the [underlying state action]." *See, e.g.,* Response at ¶ 19 (emphasis in original). Setting aside the vague nature of such a statement and the fact that the Mohrs have not articulated any basis for their claim other than the purported TILA violations, the Plan Administrator looks to the complaint filed in the underlying state action. There, the Mohrs brought claims under TILA and

{JK00607535.1}
8

under § 480-2 of Hawai'i's UDAP.  *See* Complaint at Ex. A to POC.  To the extent the Mohrs now seek to make an additional claim under UDAP, that claim fails as a matter of law.

First, the Mohrs did not file a proof of claim based on UDAP violations.  Their proof of claim only alleged TILA violations.  *See* Proof of Claim.  The Mohrs' Response likewise did not make any factual allegations or include any legal arguments to support a UDAP claim.  *See generally* Response.  Thus, such a claim (to the extent the Mohrs seek to raise it now) should not be allowed.

Second, it is well settled that "federal law preempts § 480-2 claims that are based on the same conduct alleged to violate TILA in originating the loan or failing to provide TILA disclosures."  *Au v. Republic State Mortg. Co.*, Civil No. 11-00251 JMS/KSC, 2013 WL 1339738, *12 (D. Haw. Mar. 29, 2013); *see also Kajitani v. Downey Sav. & Loan Ass'n,* 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008) (holding that TILA preempts a claim under HRS Ch. 480, where both are based on a lender's actions and representations in originating the loan); *Matsumura v. Bank of Am., N.A.,* Civ. No. 11-00608 JMS-BMK, 2012 WL 463933, *6 n.7 (D. Haw. Feb. 10, 2012) ("Any claims under HRS Ch. 480 based upon violations of TILA (e.g., failure to provide sufficient copies of right to-cancel forms) are barred."); *Tedder v. Deutsche Bank Nat'l Trust Co.,* 863 F. Supp. 2d 1020, 1030 (D. Haw. 2010) ("To the extent Plaintiff alleges a UDAP claim based on the alleged failure to provide TILA disclosure documents, such claims are preempted to the extent they are based on alleged TILA violations."); *Reyes v. Downey Savings and Loan Ass'n, F.A.,* 541 F. Supp. 2d 1108, 1115 (C.D. Cal. 2008) (where plaintiffs' claim arose under California's Unfair Competition Law ("UCL") but was predicated on alleged violations of TILA, the court dismissed the UCL claim finding, "[p]laintiffs' use of the UCL as predicated on TILA [was] preempted.").  The Mohrs' entire claim (whether for

rescission or damages) rests on BNC's disclosure obligations under TILA and purported violations of the same. *See* Complaint at Ex. A to POC. Because any purported UDAP claim is based on the same conduct alleged to violate TILA, such a claim is preempted and thus fails as a matter of law.

## CONCLUSION

For the reasons set forth herein and in the Plan Administrator's initial Objection, the Plan Administrator respectfully requests that this Court disallow and expunge the pending claim.

Dated: August 5, 2014
   Denver, Colorado

                /s/ Michael A. Rollin
                Michael A. Rollin
                Maritza Dominguez Braswell (*pro hac vice pending*)
                JONES & KELLER, P.C.
                1999 Broadway, Suite 3150
                Denver, Colorado 80202
                Telephone: (303) 573-1600
                Facsimile: (303) 573-8133

                Attorneys for Lehman Brothers Holdings Inc. and Certain of Its Affiliates