# COVINGTON & BURLING LLP

BEIJING   BRUSSELS   LONDON   NEW YORK
SAN DIEGO   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

DIANNE COFFINO

THE NEW YORK TIMES BUILDING
620 EIGHTH AVENUE
NEW YORK, NY 10018-1405
T 212.841.1043
dcoffino@cov.com

August 11, 2014

**ELECTRONIC TRANSMISSION**

Honorable Shelley C. Chapman
United States Bankruptcy Court
For the Southern District of New York
One Bowling Green
New York, NY 10004-1408

> Re:    In re Lehman Brothers Holdings, Inc.
>        <u>Chapter 11 Case No. 08-13555 (SCC)</u>

Dear Judge Chapman:

Covington & Burling LLP ("**Covington**") represents Wilmington Trust Company, as Indenture Trustee, and as Co-Chair of the Official Committee of Unsecured Creditors ("**Committee**") of Lehman Brothers Holdings Inc. and its affiliated debtors ("**Debtors**").[1] To assist in the efficient administration of the case, we write in anticipation of the August 12 status conference regarding the recent remand by the District Court of Judge Peck's Memorandum Decision Granting Omnibus Application for Payment of Fees and Reimbursement of Expenses Claimed by Individual Members of Official Committee of Unsecured Creditors ("**Bankruptcy Court Decision**"),[2] to provide Your Honor with (i) a summary of the procedural history of the litigation, (ii) a description of the issues the Individual Members will present for decision

---

[1]     Wilmington Trust Company, Mizuho Bank Ltd., f/k/a Mizuho Corporate Bank, Ltd., The Bank of NY Mellon, Elliott Management Corp., Shinsei Bank, Limited, U.S. Bank National Association, and The Vanguard Group, Inc. ("**Individual Members**") are each a current or former member of the Committee. Covington is counsel only to Wilmington Trust Company; however, each of the Individual Members joins in, and authorizes Covington to submit, this letter on their behalf.

[2]     *See In re Lehman Bros. Holdings Inc.*, 487 B.R. 181 (Bankr. S.D.N.Y. 2013). Copies of the Bankruptcy Court Decision and the District Court decision, *Davis v. Elliot Management Corp., et al. (In re Lehman Brothers Holdings Inc.)*, 508 B.R. 283 (S.D.N.Y 2014) ("**District Court Decision**"), are attached hereto as **Exhibit A** and **Exhibit B**.

COVINGTON & BURLING LLP

consistent with the District Court Decision,[3] and (iii) the Individual Members' suggested timeline in connection with the remand proceeding in order to establish a scheduling order.

## I.    Procedural History

### A.    The Bankruptcy Court Decision

On December 6, 2011, the Bankruptcy Court confirmed a chapter 11 plan for the Debtors ("**Plan**") that was predicated on a series of interconnected settlements that resolved many of the contested issues that had arisen in the Debtors' chapter 11 cases and garnered support of close to 100% of the Debtors' voting creditors.   As the Bankruptcy Court acknowledged at the confirmation hearing, this level of creditor consensus was unprecedented and was made possible through the efforts of the many constituents and their professionals who worked, as both adversaries and allies over a three-year period, to resolve the various aspects of these complex cases. The Individual Members were at the forefront of these efforts.  Their extraordinary efforts (*i.e.*, well above and beyond normal committee duties) in connection with every aspect of the cases, culminated in the consummation of the plan settlements and confirmation of the Plan, provided significant benefit to the Debtors' estates, and resulted in the Debtors' commitment to pay all the reasonable fees and expenses including attorney's fees, incurred by the Individual Members in connection with the chapter 11 cases.

On January 30, 2012, the Individual Members filed an omnibus application (as amended, "**Omnibus Application**") pursuant to section 1129(a)(4), or alternatively, sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, seeking reimbursement of approximately $26 million in fees and expenses ("**Fees**")[4] that they incurred in connection with the extraordinary work performed during the chapter 11 cases.[5]   The sole objection to the Omnibus Application was filed by the Office of the United States Trustee ("**US Trustee**").[6]

The Bankruptcy Court overruled the US Trustee's objection, and on February 15, 2013, issued the Bankruptcy Court Decision, which granted the Omnibus Application. The Bankruptcy Court concluded that the voluntary reimbursement of the Fees pursuant to a provision in the confirmed Plan was not inconsistent with section 503(b) of the Bankruptcy Code, and in any

---

[3]     The remand proceedings are without prejudice to the Individual Members' right to further appeal the District Court's decision with respect to the Plan Payment Question (as defined herein) at the procedurally appropriate time and all arguments in connection with such appeal are expressly preserved.

[4]     Bankr. Dkt. No. 25394.  The Fees sought were a small fraction of the $1.8 billion in overall fees paid to professionals retained by the estate and other parties granted substantial contribution awards in the chapter 11 cases.

[5]     Bankr. Dkt. Nos. 24762, 24881.

[6]     As noted by Judge Peck in the Bankruptcy Court Decision, "[n]o economic stakeholder has complained about payment of th[e] [F]ees.  The Plan providing for these payments was accepted by an overwhelming percentage of creditors and confirmed in a consensual hearing on December 6, 2011." *Lehman I*, 487 B.R. at 184 n3

COVINGTON & BURLING LLP

case, was governed by sections 1123(b)(6) and 1129(a)(4). Accordingly, the Fees were approved as proper to the extent they were reasonable. Although the US Trustee originally objected to the reasonableness of the Fees, this objection was later withdrawn.[7]   In light of this holding, the Bankruptcy Court did not reach the issue of whether the Fees could also be paid on a "substantial contribution" theory under sections 503(b)(3)(D) and 503(b)(4).[8]

### B.    The District Court Decision

The U.S. Trustee appealed the Bankruptcy Court Decision.   In the District Court Decision, the District Court (i) reversed the Bankruptcy Court Decision insofar as it awarded the Fees as permissible consensual "plan payments" under sections 1123(b)(6) and 1129(a)(4) of the Bankruptcy Code ("**Plan Payment Question**"); (ii) held that the Fees could be paid under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, to the extent that the Individual Members could demonstrate that they had made a "substantial contribution" to the Debtors' chapter 11 cases above and beyond normal committee duties ("**Substantial Contribution Standard Question**"); and (iii) remanded the matter to the Bankruptcy Court to determine whether the Individual Members had, in fact, made a substantial contribution.

On appeal, the US Trustee argued (as it had before the Bankruptcy Court), that section 503(b) prohibits reimbursement of the professional fees of official committee members, even if those members satisfy another provision of section 503(b), such as section 503(b)(3)(D).   The District Court rejected this argument, holding that "the Bankruptcy Code does not necessarily exclude official committee members from the benefits of § 503(b) in all situations."   To the contrary, "[a]lthough official committee membership alone cannot be a sufficient condition for reimbursement of professional fee expenses, it is not a disqualification."   Thus, "*[t]o the extent official committee members perform extraordinary work to benefit the estate, above and beyond normal committee duties, they may . . . seek to be reimbursed under          § 503(b)(3)(D) and 503(b)(4), which provide for payment of the professional fees incurred by entities that have made a 'substantial contribution in a case.'*"   On this basis, the District Court held that if the Individual Members "qualified under § 503(b)(3)(D) by virtue of having made a 'substantial contribution' to the bankruptcy case," the professional fee expenses they incurred in connection with the performance of their duties as Committee members would qualify to be paid under section 503(b)(4).[9]

### C.    The Certification Order

Recognizing that the new rule announced by the District Court in deciding the Plan Payment Question was in conflict with other decisions[10] in this District and confirmed plans[11] in

---

[7]       Bankr. Dkt. No. 35661.

[8]       *Lehman I*, 487 B.R. at 184 n.4, 190 n.8, 193.

[9]       *Lehman II*, 508 B.R. at 294-96 (emphasis added).

[10]       The few Southern District of New York cases that have addressed the Plan Payment Question have reached conclusions that differ from those reached by the District Court.   In both *Adelphia* and (continued...)

3

COVINGTON & BURLING LLP

numerous chapter 11 cases in this and other districts that provided for the payment of committee member fees, the Individual Members filed a motion to certify the District Court Decision for interlocutory appeal ("**Certification Motion**") to the Court of Appeals for the Second Circuit on the Plan Payment Question. Further, if the Individual Members' prevailed and the District Court Order was reversed, the Individual Members would have been entitled to payment of the Fees in accordance with the terms of the Plan, and no further proceedings would have been required—including the remand trial currently before Your Honor. The US Trustee opposed the Certification Motion. On June 20, 2014, the District Court issued an Order denying the Certification Motion.[12]

## II.  Subject of the Remand Proceedings

As a result of the District Court Decision and Certification Order, this matter is now before the Bankruptcy Court on remand to determine the factual issue of whether the extraordinary efforts of the Individual Members qualify them for substantial contribution awards.

The Substantial Contribution Standard Question was squarely addressed by the District Court, which held that the Bankruptcy Code permits payment of substantial contribution awards to members of a committee where, as here, those members performed extraordinary work over

---

*AMR*, the bankruptcy court reviewed similar plan provisions and held that the Bankruptcy Code leaves room for permissive plan payment of committee member professional fees outside of section 503(b). *See In re Adelphia Communications Corp.*, 441 B.R. 6, 9 (Bankr. S.D.N.Y. 2010); *In re AMR Corp.*, 497 B.R. 690, 694-96 (Bankr. S.D.N.Y. 2013). By contrast, the District Court concluded, we believe incorrectly, that section 503(b) is the only avenue available for the payment of such fees, regardless of whether such fees are disputed by, or acceptable to, the debtor.

[11]     *See, e.g., In re Tribune Co.*, Case No. 08-13141 (KJC), Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A., as Modified July 19, 2012 [Dkt. No. 12072-2] at § 9.1 (Bankr. D. Del. July 19, 2012) (providing for payment of creditors' committee members' professional fees, subject to a reasonableness review, pursuant to section 1129(a)(4) of the Bankruptcy Code); *In re The Great Atlantic & Pacific Tea Co.*, Case No. 10-24549 (RDD), Confirmation Order [Dkt. No. 3477] at 30-31 ¶ 58 (Bankr. S.D.N.Y. Feb 28, 2012) (finding that plan provision that provided for payment of "reasonable and documented fees and expenses incurred by members of the Creditors' Committee during the pendency of the Chapter 11 Cases in their capacities as members of the Creditors' Committee" satisfied requirements of section 1129(a)(4) of the Bankruptcy Code); *In re Refco*, Case No. 05-60006 (RDD), Confirmation Order [Dkt. No. 3971] at 13 ¶ N (Bankr. S.D.N.Y. Dec. 15, 2006) (approving as reasonable, pursuant to section 1129(a)(4) of the Bankruptcy Code, payment of fees to Senior Subordinated Note Indenture Trustee, who served on unsecured creditors' committee in Refco, and in that capacity, incurred a portion of the fees to be paid under fee-payment provision); *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW), Order Confirming 7th Am. Joint Plan [Dkt. No. 9759] at 112 ¶ 78 (Bankr. D. Del. Feb. 23, 2012) (providing for submission of claims for committee members' professionals' "reasonable fees and expenses" and reserving parties' rights to object thereto).

[12]     *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.)*, 2014 WL 3408574 (S.D.N.Y. 2014).

COVINGTON & BURLING LLP

and beyond the normal duties performed by committees.[13]  Nevertheless, we have learned (based
on recent "meet and confer" discussions held by an Individual Member with a representative of
the US Trustee) that it is the US Trustee's position that a creditor can never qualify for
substantial contribution awards for service on a committee, regardless of how extraordinary the
work performed and that this is a legal issue that must be resolved in the remand proceeding.

The Individual Members disagree.  All that has been left to the Bankruptcy Court on
remand is to apply the legal standard adopted by the District Court with respect to the Substantial
Contribution Standard Question to the facts submitted and to be submitted by the Individual
Members in support of their requests.  Specifically, the Bankruptcy Court must examine the
extent to which the Individual Members performed "*extraordinary work to benefit the estate,
above and beyond normal committee duties*"[14] in determining whether and to what extent the
Individual Members made the requisite "substantial contribution" to these chapter 11 cases.[15]

If this Court concurs that the standard to be applied on remand is settled law of the case,
as the Individual Members believe it is, the Individual Members propose that a schedule be
established, pursuant to which the parties would submit both legal and factual support for their
substantial contribution requests at the same time (with an evidentiary hearing scheduled by the
Court at its earliest convenience) as follows:

- Individual Members' Supplemental Memorandum of Law and Supporting
  Declarations:  December 12, 2014

- US Trustee's Response:  January 16, 2015

- Individual Members' Reply:  January 30, 2015

---

[13]     *Lehman II*, 508 B.R. at 296.  The District Court's decision is consistent with rulings by other
courts that have recognized circumstances in which individual committee members or their attorneys can
be entitled to reimbursement of legal fees when they have made a "substantial contribution" to the case.
*See, e.g., In re Worldwide Direct, Inc.*, 334 B.R. 112 (D. Del. Bankr. 2005) (indenture trustee that served
as co-chair of creditors' committee was entitled to reimbursement of certain fees and expenses that it and
its legal counsel incurred in connection with review of a plan and disclosure statement and participation in
litigation); *In re General Oil Distributors, Inc.*, 51 B.R. 794 (E.D.N.Y. Bankr. 1990) (law firm
representing chairman of creditors' committee was entitled to reimbursement of legal fees for work "over
and above its own client's interest" in performing services for the plan negotiating committee).

[14]     *Id.* at 294 (emphasis added).

[15]     As Judge Peck recognized in the Bankruptcy Court Decision, the "dispute regarding entitlement
to fees for individual members of a committee arises within an atypical context" because the Debtors'
cases "are considered by many observers to be the most complicated bankruptcy cases in history."  Thus,
the Individual Members' "performed services within such extraordinary setting of complexity that it
would have been difficult if not impossible for them to have carried out their duties without being able to
confer with their own counsel." *Lehman I*, 487 B.R. at 185, n.5.

COVINGTON & BURLING LLP

If, however, the Court concludes that a threshold legal issue—whether the Bankruptcy Code permits individual committee members performing extraordinary committee work to receive substantial contribution awards—remains to be resolved by this Court, the Individual Members propose that an initial schedule be fixed, pursuant to which the parties submit memoranda addressing this legal issue only (with oral argument scheduled by the Court at its earliest convenience), as follows:

- Individual Members' Opening Brief:  October 10, 2014
- US Trustee's Opposing Brief:  November 14, 2014
- Individual Members' Reply Brief:  December 5, 2014.

In such event, the Individual Members believe that initial briefing of this issue before the introduction of evidence is the most efficient and cost-effective manner in which to proceed, and will assist the parties in framing the evidence presented to the court.  We understand, however, that the US Trustee would prefer that the parties submit all of their evidence and legal memoranda at one time.

We will be prepared to discuss these issues, and respond to any questions the Court may have, at the upcoming status conference.

Respectfully submitted,

Dianne Coffino

Encls.
Copies (w/encls.) to:  William Harrington, Esq.
Susan Golden, Esq.
Andrea Schwartz, Esq.
Elizabetta Gasparini, Esq.
Office of United States Trustee

Dennis F. Dunne, Esq.
Dennis C. O'Donnell, Esq.
Evan R. Fleck, Esq.
Milbank, Tweed, Hadley & McCloy LLP
Counsel for the Committee

6

**JOINED BY THE INDIVIDUAL MEMBERS:**

**LOEB & LOEB LLP**


By: /s/ Walter H. Curchack
    Walter H. Curchack

Special Counsel for Wilmington Trust Company, as Co-Chair of the Committee

**STROOCK & STROOCK & LAVAN LLP**

By: /s/ Mark A. Speiser
    Mark A. Speiser
    Sherry J. Millman

Counsel for Mizuho Bank Ltd., as Co-Chair of the Committee

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

By: /s/ Michael Ahrens
    Michael Ahrens

Counsel for the Bank of New York, as member of the Committee
And indenture trustee

**ARENT FOX LLP**

By: /s/ George Angelich
    George Angelich
    Jordana Renert

Counsel for The Vanguard Group, Inc., as member of the Committee

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: /s/ David Parker
    David Parker
    Matthew J. Gold

Counsel for Elliott Management Corp., as member of the Committee

By: /s/ Dov Kleiner
    Dov Kleiner

Counsel for Shinsei Bank, Limited, as former member of the Committee

**SULLIVAN & WORCESTER LLP**

By: /s/ Richard Hiersteiner
    Richard Hiersteiner
    Jeanne Darcey

Counsel for U.S. Bank National Association, member of the Committee
and indenture trustee

# EXHIBIT A

In re Lehman Brothers Holdings Inc., 487 B.R. 181 (2013)

57 Bankr.Ct.Dec. 159

■ KeyCite Red Flag - Severe Negative Treatment
**Vacated and Remanded by**   In re Lehman Bros. Holdings Inc.,
  S.D.N.Y.,   March 31, 2014

487 B.R. 181
United States Bankruptcy Court,
S.D. New York.

In re LEHMAN BROTHERS
HOLDINGS INC., et al., Debtors.

No. 08–13555 (JMP).   |   Feb. 15, 2013.

**Synopsis**
**Background:** United States Trustee (UST) objected to application filed by members of creditors' committee for reimbursement of their counsel fees as allowed by provision of confirmed Chapter 11 plan, and the UST objected that plan could not be used to avoid limitations imposed by administrative expense provision.

**[Holding:]** The Bankruptcy Court, James M. Peck, J., held that, while members of official unsecured creditors' committee might have been unable to obtain reimbursement, on priority basis as administrative expense, for legal fees incurred in connection with their service on committee, this did not affect their ability, as part of plan confirmation process, to bargain for inclusion of provision in plan that they played substantial role in negotiating to allow them to obtain reimbursement of their counsel fees as allowed administrative expenses.

Objection overruled.

West Headnotes (7)

**[1]**   **Bankruptcy**
        Administrative expenses in general
     **Bankruptcy**
        Reorganization cases
     **Bankruptcy**
        Requisites of Confirmable Plan

Administrative expense provision is not a straitjacket, and language in provision governing allowance of administrative expense claims does not control Chapter 11 plan process. 11 U.S.C.A. § 503(b).

1 Cases that cite this headnote

**[2]**   **Bankruptcy**
        Administrative expenses in general
     **Bankruptcy**
        Professional services; attorney fees
     **Bankruptcy**
        Creditors' and equity security holders' committees and meetings

Members of official committee may obtain reimbursement, on priority basis as administrative expense, for costs incurred in connection with service on committee, such as out-of-pocket travel expenses for attending a meeting of committee, but appear to be barred from asserting administrative expense claim for legal fees incurred while serving on committee, due to Congress's omission of committee members from list of those entities eligible to assert administrative expense claim for counsel fees incurred in making substantial contribution in bankruptcy case. 11 U.S.C.A. § 503(b)(3, 4).

Cases that cite this headnote

**[3]**   **Bankruptcy**
        Contents in general

Bankruptcy Code provision specifying that Chapter 11 plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title" is a broadly-worded, open-ended invitation to creativity of those who are engaged in drafting plan language, and amounts to a green light for those engaged in plan negotiations to include just about any provision in plan, provided that terms of plan do not run afoul of applicable bankruptcy law. 11 U.S.C.A. § 1123(b)(6).

1 Cases that cite this headnote

In re Lehman Brothers Holdings Inc., 487 B.R. 181 (2013)

57 Bankr.Ct.Dec. 159

**[4]    Bankruptcy**
&#x21AA; Confirmation; Objections

Bankruptcy courts have great deal of flexibility to confirm a Chapter 11 plan, as long as plan does not otherwise violate the Bankruptcy Code.

Cases that cite this headnote

**[5]    Bankruptcy**
&#x21AA; Professional services; attorney fees
**Bankruptcy**
&#x21AA; Creditors' and equity security holders' committees and meetings
**Bankruptcy**
&#x21AA; Contents in general

While members of official unsecured creditors' committee might have been unable to obtain reimbursement, on priority basis as administrative expense, for legal fees incurred in connection with their service on committee, due to Congress's omission of committee members from list of entities eligible to assert administrative expense claim for counsel fees incurred in making substantial contribution in bankruptcy case, this did not affect their ability, as part of plan confirmation process, to bargain for inclusion of provision in plan that they played substantial role in negotiating to allow them to obtain reimbursement of their counsel fees as allowed administrative expenses; with such a provision having been included in plan that was confirmed with overwhelming creditor support, committee members' application for reimbursement of legal fees could not be disallowed as contrary to administrative expense provision. 11 U.S.C.A. §§ 503(b)(3,4), 1123(b)(6), 1129(a)(4).

1 Cases that cite this headnote

**[6]    Bankruptcy**
&#x21AA; Confirmation; Objections

Provisions of Chapter 11 plan are to be favored and respected, unless those provisions can be shown to be contrary to the law.

Cases that cite this headnote

**[7]    Bankruptcy**
&#x21AA; Confirmation; Objections

Benefit of any doubt as to propriety of provision included in proposed Chapter 11 plan should be accorded to plan proponent, unless a troubling inconsistency with other provisions of the Bankruptcy Code is manifest.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*182**  Office of the United States Trustee, Susan Golden, Esq., Tracy Hope Davis, Esq., New York, NY, for United States Trustee.

Milbank, Tweed, Hadley & McCloy LLP, Dennis F. Dunne, Esq., New York, NY, for Official Committee of Unsecured Creditors.

Godfrey & Kahn, S.C., Katherine Stadler, Esq., Madison, WI, for Fee Committee.

Covington & Burling LLP, Michael B. Hopkins, Esq., New York, NY, for Wilmington Trust Company.

Sullivan & Worcester LLP, Richard Hiersteiner, Esq., Jeanne P. Darcey, Esq., Boston, MA, for U.S. Bank National Association.

Sheppard Mullin Richter & Hampton LLP, Russell L. Reid, Jr., Esq., Michael Ahrens, Esq., San Francisco, CA, for Bank of New York Mellon.

Kleinberg, Kaplan, Wolff & Cohen, P.C., Matthew J. Gold, Esq., New York, NY, for Elliott Management Corp.

Weil, Gotshal & Manges LLP, Harvey Miller, Esq., New York, NY, for the Debtors.

**Opinion**

**MEMORANDUM DECISION GRANTING OMNIBUS APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES CLAIMED BY INDIVIDUAL MEMBERS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

In re Lehman Brothers Holdings Inc., 487 B.R. 181 (2013)
57 Bankr.Ct.Dec. 159

JAMES M. PECK, Bankruptcy Judge.

### Introduction and Analytical Overview

These historic bankruptcy cases have been characterized by professional excellence and creative problem solving leading to negotiation, cooperation and the ultimate compromise of conflicting positions. One commendable administrative achievement is that professional fees for estate professionals have been managed so smoothly in uncontested proceedings. Disputes relating to the approval of these fees have been resolved and have not burdened the Court. That is a remarkable feat given the sheer magnitude of the professional activities and associated fees and expenses that together exceed $1.8 billion.

Efficient and fair handling of fee allowance procedures has resulted in an unbroken pattern of uncontested applications for compensation of the retained professionals. Even applications based on substantial contribution claims have been approved without controversy. [1] This transparent  **\*183** and consensual fee review and approval process worked well and is a tribute to the professionals involved and to the constructive and positive role played by the Fee Committee appointed in these cases.

That record of avoided conflict and pragmatic compromise has now been broken in a contested matter in which the United States Trustee for Region 2 (the "UST") challenges the legal right of members of a committee appointed under Section 1102 of the Bankruptcy Code—*i.e.* an official committee —to be paid reasonable compensation for legal services rendered to the individual members of that committee by their own attorneys when those fees, subject to findings of reasonableness, have been awarded under Lehman's confirmed plan of reorganization (the "Plan"). [2] The issue presented, whether to allow the professional fees of members of the Official Committee of Unsecured Creditors (the "Committee"), including two indenture trustees (collectively, the "Applicants"), focuses attention on the suitability of using plan provisions as a means to authorize the payment of professional fees where it is unclear—or even doubtful— that such fees could be recovered as administrative expenses  **\*184**  if payment provisions had not been specified in the Plan.

Given the resolution of each of the other prior disagreements relating to professional fees, this isolated fee dispute stands out from the rest and must be about more than the fees themselves. A total of approximately $26 million is at stake, but in the context of the Lehman cases, that is not much money. [3] This fight is about principle and the proper way to interpret distinct sections of the Bankruptcy Code in relation to enabling language in the Plan that authorizes distributions of cash from the Lehman estate to individual Committee members and certain indenture trustees to pay for their counsel fees. The Court assumes that Section 6.7 of the Plan detailing the entitlement to these distributions was added purposefully to give the Applicants greater assurance that they actually would receive these payments notwithstanding sections of the Bankruptcy Code indicating that payment of such counsel fees, in the ordinary course, would not be allowable as administrative expenses. [4]

As a practical matter, members of the Committee would not have been able to claim these payments with any degree of confidence were it not for the implementing language in the Plan. That is due to the structure of Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code. Under these sections, members of an official committee are not included in the list of creditors who qualify to claim administrative expense treatment for counsel fees for having made a substantial contribution in a bankruptcy case.

Section 6.7 of the Plan (securing the right to such payments for the Applicants) introduces what amounts to a contractual patch designed to cure these statutory omissions, and therein lies the rub. There are important appearance and policy issues at stake here: should members of any official committee who by statute have a central role in plan negotiations be allowed to use the plan process for their own financial gain and should they be able to realize benefits that the Bankruptcy Code ordinarily would not sanction? The Court believes this question animates the current dispute and is the reason compromise has not been possible.

These big picture concerns may explain motivations but do not change the analysis.  **\*185**  The inclusion of Section 6.7 as a mechanism to pay these professional fees is but one example of the creativity of the plan process itself, especially in a large and complex—and, in this instance, the largest ever—chapter 11 case. The Bankruptcy Code allows and even encourages such creativity within the broad outlines of what a plan must include (Section 1123(a)) or may include (Section 1123(b)). The available structuring alternatives are unconstrained but not limitless. The provisions of a plan simply must not be inconsistent with provisions of the Bankruptcy Code.

In establishing a right to receive reasonable payments under a plan that otherwise would not have been available to the Committee members if they had sought to recover such payments as allowed administrative expenses, Section 6.7 illustrates the ability to use language in a plan to achieve desired economic outcomes. It highlights the distinction between the types of administrative expenses that parties may claim against a debtor entity under applicable provisions of the Bankruptcy Code and other permissible expenses, not catalogued within the statute itself, that still may be identified and paid by the estate pursuant to a consensual plan of reorganization. The plan language provides for detailed treatment of the claims of stakeholders and becomes the means to provide for payment of certain expenses that are not specified in the Bankruptcy Code.

The question presented is whether that result should be permitted under the circumstances presented and whether a plan legitimately may provide for payment of the legal expenses of individual members of an official committee if the very same sort of expenses would not have been payable if sought as part of the process of allowing administrative expenses. Stated differently, can a plan properly circumvent the apparent restrictions on administrative expense treatment for professional compensation claims of this sort? The Court concludes that these payments under a plan are proper, provided that the payments are reasonable and not inconsistent with applicable provisions of the Bankruptcy Code. Here, the proposed payments of professional fees incurred by individual members of the Committee, even though not expressly provided by Section 503(b), are also not inconsistent with Section 503(b)[5].

In reaching this conclusion, the Court rejects as overly restrictive the reading of Section 503(b) advanced by the UST in her objection to the requested fees. The *186 UST's argument is built on the proposition that Section 503(b) has a controlling and preclusive impact and is the exclusive pathway by which a member of an official committee can ever be entitled to receive compensation for legal fees incurred while serving on such a committee. Under her interpretation, the limitations in Sections 503(b)(3) and 503(b)(4) are disqualifying for members of the Committee. She submits that they both eliminate the potential for members of an official committee to receive payment for counsel fees under these sections *and* foreclose the option for such compensation to be paid permissibly by any other means. Her argument, if accepted, would negate in absolute terms the possibility of

plan treatment that might offer to compensate members of an official committee for their personal professional fees under any and all circumstances.

That reading goes too far and confuses the capacity to assert a substantial contribution claim with the ability to be granted the functional equivalent of such a right to payment under a plan that has been ratified so overwhelmingly by creditors. The flaw in the UST's argument is the embedded assumption that the administrative claim formulation of Section 503(b) functions as a trump card that extends across the Bankruptcy Code to block the formulation of a plan that proposes independent grounds for granting comparable payment rights. There is no basis for such a contention. Moreover, the objection of the UST discounts both the enormous leeway granted to the architects of plans under Section 1123(b)(6) of the Bankruptcy Code (providing that a plan may include any other appropriate provision not inconsistent with the applicable provisions of this title) and the authority and discretion of the bankruptcy court to approve payments in connection with a plan as being reasonable under Section 1129(a)(4).

Every chapter 11 plan in a complex business case necessarily is a one of a kind formulation, the product of negotiations that are peculiar to the fact pattern, requirements, circumstances, business realities and political pressures of the case. In the negotiations that produced the Plan, the parties involved succeeded in constructing a pragmatic global settlement that, among other things, conspicuously provided for the Applicants to receive the now-disputed payments. The fact that the parties agreed to include Section 6.7 in the Plan during the course of their negotiations is a strong indication that the parties considered the proposed treatment to be justified and that alone really should end the discussion provided that the section is not inconsistent with the Bankruptcy Code. How this feature came to be part of the Plan does not matter for purposes of this decision. The undisputed fact remains that payment of these fees became an element of the grand bargain that all creditors voted on and accepted by a landslide.

[1]    When it comes to plan provisions, the variations are virtually without limit, and properly so. To fulfill its reorganization purposes, a plan must be an endlessly adaptable tool that fits the particular needs and dynamics of each case. The free expression of plan proponents should not be restrained except to the extent of complying with the requirements of the Bankruptcy Code that govern plan content. Section 503(b) is not a straitjacket, and the

In re Lehman Brothers Holdings Inc., 487 B.R. 181 (2013)

57 Bankr.Ct.Dec. 159

provisions of that section that directly govern the allowance of administrative claims do not control the plan process and are not inconsistent with more the more liberal treatment prescribed in the Plan.

For the reasons stated in this decision, the Court agrees with the Applicants and **\*187** finds that the Plan provision in question is a proper means to provide for payment of the requested fees. Any unresolved disputes as to reasonableness of the fees sought by individual Applicants shall be the subject of further proceedings should that be necessary. The UST is directed to meet and confer with the Applicants in an effort to resolve any open issues regarding reasonableness.

The following two sections of this decision discuss the procedural setting in which this contested matter arises and the legal authority that supports the Court's conclusion.

### *Procedural Background for the Fee Dispute*

The issues presented in this contested fee dispute are linked to the successful negotiations that culminated in the formulation and confirmation of the Plan. This process of negotiation and consensual dispute resolution was unprecedented in its complexity and involved exceptionally difficult questions that implicated distribution rights and creditor treatment. Issues in relation to substantive consolidation and re-characterization were overwhelmingly complicated and unpredictable. A contested confirmation would have been virtually impossible to litigate. Settlements were needed and emerged as the only practical alternative to avoid a monumental and unmanageable confirmation battle.

These settlements are the foundation of the Plan, and the Applicants individually take some of the credit for having helped to bring the chapter 11 cases of Lehman Brothers Holdings Inc. and its affiliated debtors (the "Debtors") to a successful conclusion. Presumably in recognition of these efforts, the Debtors agreed to pay all of the reasonable fees and expenses, including attorneys' fees, incurred by the Applicants in connection with the chapter 11 cases.

This commitment of the Debtors is memorialized in Section 6.7 of the Plan which provides that

> [s]ubject to entry of the Confirmation Order, the reasonable fees and expenses (including attorneys fees)

of (a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or member of the Creditors' Committee, respectively, shall, (i) to the extent incurred and unpaid by a Debtor prior to the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement upon application to and subject to approval of the Bankruptcy Court, and (ii) to the extent incurred after the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

Plan § 6.7.

In November 2011, the UST filed an objection to the confirmation of the Plan (the "UST Objection"). ECF No. 21640. Among the points raised is the argument that payment of the fees and expenses under Section 6.7 violated the Bankruptcy Code. The UST asserted that Section 503(b) of the Bankruptcy Code is the proper standard for evaluating the reasonable fees and expenses of members of the Committee. *See* UST Objection. As a result of subsequent negotiations, the UST agreed to withdraw the UST Objection upon a reservation of her rights with respect to "the appropriate legal standard for such applications, and any objection that payment of such fees is unauthorized under the Bankruptcy Code and the Bankruptcy Rules." Confirmation Order ¶ 74.

**\*188** The Applicants filed the Application on January 30, 2012, and immediately thereafter filed a Notice of Amendment to Omnibus Application of (I) Individual Members of Official Committee of Unsecured Creditors and (II) Indenture Trustees Pursuant to Section 1129(a)(4), or, Alternatively, Sections 503(b)(3)(D) and 503(b)(4) of Bankruptcy Code for Payment of Fees and Reimbursement of Expenses (the "Amendment"). ECF No. 24881. The Amendment corrects the amounts of fees and expenses requested in the Application. Amendment ¶¶ 2, 3, Ex. A. The corrected aggregate amount is $26.3 million. *Id.*

The Applicants assert that the substantial contribution standard of Section 503(b) is applicable only to compensation requests that are not otherwise agreed to by a debtor or provided for in a plan. *See* Application ¶ 4. They also argue that nothing in Section 503(b) dictates that it is the only mechanism for approval of administrative expenses for professional fees and expenses. *Id.* Therefore, they contend, courts properly may look to other potentially applicable provisions of the Bankruptcy Code, including Section 1129(a)(4). [6] The Applicants argue in the alternative that they have, in fact, made a substantial contribution to the success of these chapter 11 cases.

The UST filed an Omnibus Objection of the United States Trustee to Creditors' Applications for Reimbursement of Professional Fees and Expenses (the "UST Fee Objection") on February 15, 2012. ECF No. 25394. In the UST Fee Objection, the UST argues that Section 503(b) determines the right to professional fees in this instance by specifying procedures for approval of fees and expenses incurred by a member of an official committee. UST Fee Objection 12. The UST asserts that Section 503(b) does not allow for the payment of the requested fees to members of the Committee and that the indenture trustees have failed to show a substantial contribution in these cases. *Id.* The UST quarrels with the attempt here to bypass the requirements of Section 503(b) in favor of the more general, non-specific provisions of Section 1129(a)(4) of the Bankruptcy Code and makes a number of other arguments challenging the right of the Applicants to payment of the requested fees. *Id.*

After a period of negotiation, on November 15, 2012 the Applicants submitted their Reply to the UST Objection (the "Applicant Reply"). ECF No. 32129. Although the Applicant Reply dealt with fee requests of the individual Applicants, the pleading was signed and filed by Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), as counsel to the Committee. The UST expressed concern regarding Milbank's role in performing services on behalf of the Applicants as a group and this prompted another round of briefing on the question of whether Milbank had acted for the Applicants in a manner that exceeded its authority as counsel to the Committee.

The UST pressed the issue in a supplemental objection in which it argued that Milbank should not be permitted to represent individual members of the Committee. The UST complained that Milbank had a conflict of interest associated with having to review the fees on behalf of the Committee at the same time that is was also seeking payment of those fees on behalf of the individual committee members.

On December 17, 2012, the Committee filed a response to these assertions, and *189 shortly thereafter the Court heard oral argument at a hearing held on December 19, 2012. At the outset that hearing, the Court dealt with the question of Milbank's role in the proceeding, stating that "I'm going to permit Milbank to act as it has acted throughout these cases as counsel for the [C]ommittee and I'm going to leave it to Mr. Dunne and his partners and his firm to conclude whether the conduct of today's hearing is or is not conduct on behalf of his actual client, the [C]ommittee, or conduct which is on behalf of members of the [C]ommittee. He has asserted that he is acting on behalf of the [C]ommittee and I accept that." 12/19/2012 Tr. 58:2–10.

### Discussion

### The structure of Section 503(b) and its impact upon claims for fees by members of the Committee

Section 503(b) of the Bankruptcy Code lists various categories of allowed administrative expenses. Section 503(b)(3) in particular sets forth a basis for allowing administrative expenses for

> the actual, necessary expenses, *other than compensation and reimbursement specified in paragraph (4)* of this subsection, incurred by—
>
> (A) a creditor that files a petition under section 303 of this title;
>
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>
> (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
>
> (D) *a creditor,* an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, *in making a substantial contribution in a case* under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) *a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee.*

11 U.S.C. § 503(b)(3) (emphasis added).

Section 503(b)(4) provides for the reimbursement of certain professional fees incurred by parties listed in Section 503(b)(3). Specifically, Section 503(b)(4) provides reimbursement for the

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4).

**[2]** Although expenses incurred by a member an official committee qualify for reimbursement under Section 503(b)(3)(F), that entitlement does not extend to reasonable compensation for professional fees under Section 503(b)(4).[7] When read together, **\*190** these two subsections enable members of an official committee to obtain reimbursement of expenses incurred in connection with service on a committee (such as out of pocket travel expenses for attending a meeting of an official committee) but, by omission, appear to exclude the possibility of obtaining administrative expense treatment for professional fees rendered to a member of an official committee because subparagraph (F) is not mentioned in Section 503(b)(4).

The UST views this missing reference to subparagraph (F) as definitive and dispositive. Under her interpretation, the fact that subparagraph (F) is not included within the list of entities that may assert an administrative claim for professional fees completely eliminates the possibility that such fees may be reimbursed under any circumstance.[8] This conclusion, while a fair reading of the internal standards applicable to allowance of administrative claims, fails to take into account the ability, addressed below, to identify other means to provide for reimbursement of such professional fees.

### *Prescribing the payment of professional fees under provisions of a plan*

**[3]** Section 1123(b) sets forth a list of those provisions that may be included in a reorganization plan. Section 1123(b)(6) is a broadly-worded, open-ended invitation to the creativity of those who are engaged in drafting plan language. This catch-all provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). This amounts to a green light for those engaged in plan negotiations. Just about anything can be included, provided that the terms of the plan do not run afoul of applicable bankruptcy law.

**[4]** Section 105(a) of the Bankruptcy Code also authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This general repository of power gives the bankruptcy court a great deal of flexibility to confirm a reorganization plan so long as the plan does not otherwise violate the Bankruptcy Code. *Unites States v. Energy Res. Co., Inc.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) ("These statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships" (citing *Pepper v. Litton,* 308 U.S. 295, 303–04, 60 S.Ct. 238, 84 L.Ed. 281 (1939); **\*191** *United States National Bank v. Chase National Bank,* 331 U.S. 28, 36, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947); *Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966))).[9]

Therefore, the Court analyzes Section 6.7 of the Plan recognizing the importance of creativity and flexibility in the plan formulation process. The Court approaches the issue of plan treatment for professional fees from the point of view that plan terms are valid unless those terms are inconsistent with another applicable provision of the Bankruptcy Code. Plans need to be custom-made so that they have the necessary components to respond to the special circumstances of each case. The division of labor is simple: the proponents propose

plan terms, parties in interest have an opportunity to object to those terms and the bankruptcy court has the power to assess whether provisions contained in the plan are appropriate and consistent with applicable law.

The Plan provision now before the Court—Section 6.7—necessarily invokes Section 1129(a)(4) of the Bankruptcy Code. That section provides a mechanism for judicial review of payments made or to be made by the debtor in connection with a reorganization plan. Specifically, Section 1129(a)(4) requires that

> [a]ny payment made or to be made ...
> by the debtor ... for services or for
> costs and expenses in or in connection
> with the case, or in connection with
> the plan and incident to the case, has
> been approved by, or is subject to the
> approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4).

**[5]   [6]**   The Applicants argue that Section 6.7 of the Plan authorizing the reimbursement of Applicants' professional fees is a provision that easily fits within the broad spectrum of Section 1123(b)(6) and is not inconsistent with provisions that govern the allowance of administrative expenses. The Court agrees. Plan provisions, especially in a unique setting such as this, are to be favored and respected unless those provisions can be shown to be contrary to law. In this instance, the provision authorizing payment of professional fees does not conflict with sections of the Bankruptcy Code that, read literally, would not allow for the payment of the same fees as administrative expenses.

Section 6.7 provides for a consensual reimbursement of professional fees to members of the Committee, not the granting of an administrative expense priority. The difference is a subtle one, but quite real. While the provision under the Plan may be another structure to achieve the same basic objective (payment of fees), the path chosen is not improper simply because it provides an alternative method to secure payment of the fees. The fact that administrative claim status may not be allowed does not mean that an agreed payment under a fully consensual plan should not be permitted. The confirmation of the Plan substitutes all of the protections that are needed, and the proposed payments to reimburse professionals retained by the Applicants need only to be subjected to the Court's approval as "reasonable" under Section 1129(a)(4).

### The Adelphia *decision supports the conclusion that payments are proper under Section 6.7*

The Applicants rely heavily on Judge Gerber's decision in *In re Adelphia Commc'ns Corp.*, 441 B.R. 6 (Bankr.S.D.N.Y.2010). In *Adelphia*, fourteen *ad hoc* committees and certain individual creditors sought reimbursement for professional **\*192** fees pursuant to a plan provision similar to Section 6.7 of the Plan. *Id.* at 8–9. The applicants in *Adelphia*, as part of a global settlement, negotiated for plan treatment in which they would receive reimbursement for professional fees incurred in connection with the chapter 11 cases. *Id.* at 10–11. Upon confirmation, the applicants submitted fee applications arguing that such applications were only subject to a reasonableness review under Section 1129(a)(4) of the Bankruptcy Code. *Id.* at 11. The United States Trustee objected to these fee applications making substantially similar arguments to the ones being made here. *Id.*

In *Adelphia*, Judge Gerber held that "to the extent that the requested fees are reasonable, and the requirements of section 1129(a)(4) likewise are complied with, [the plan provision providing for reimbursement for certain creditors' professional fees] is permissible, and the [Bankruptcy] Code permits the [applicants'] reasonable fees to be recovered under that provision without showing compliance with sections 503(b)(3) or (4)." *Id.* at 19. His reasoning, while addressed to members of *ad hoc* committees rather than official committees, is persuasive and applies to the present controversy.

**[7]**   Plan provisions must be clearly in conflict with applicable provisions of the Bankruptcy Code to become unenforceable. The standards of Section 1123(b)(6) are liberal, and deliberately so. To state this colloquially, a "tie" should go to the "runner" with respect to whether a plan provision is valid. In this instance, that suggests that the benefit of any doubt properly should be given to the plan proponent unless a troubling inconsistency with other provisions of the Bankruptcy Code is manifest. That is not the case here. Indeed, the provisions of Section 6.7 state an independent basis for reimbursing the requested professional fees that stand on their own and that are not inconsistent with the restrictions contained in Section 503(b).

In re Lehman Brothers Holdings Inc., 487 B.R. 181 (2013)

57 Bankr.Ct.Dec. 159

The UST argues that the circumstances applicable to Section 6.7 of the Plan are distinguishable from *Adelphia* because the applicants in *Adelphia* were creditors in *ad hoc* committees while the Applicants are members of an official committee under Section 1102 of the Bankruptcy Code. However, the exclusion of such professional fees from Section 503(b)(4) does not equate to complete prohibition. Section 503(b)(4) is silent on the subject and simply fails to mention payment of such fees. As noted in *Adelphia*, "[S]ection 503(b) does not provide that it is the *only* way by which individual creditors' fees may be absorbed by an estate." 441 B.R. at 14–15 (emphasis in original). That quotation sums it up well: regardless of whether the focus is an *ad hoc* committee or an official committee, Section 503(b) does not prohibit the payment of professional fees by means other than the allowance of administrative expenses.

Applications for the payment of administrative expenses as provided in Section 503(b) and the right to payments made consensually under a plan are clearly distinct. As noted in *Adelphia,* there are basic differences between a claim for reimbursement of professional fees under Section 503(b) and payments that are made pursuant to a plan of reorganization. Requests for payment under Section 503(b) are "nonconsensual in nature," 441 B.R. at 12, but a payment "made in connection with a reorganization plan" ordinarily will be made on a consensual basis. *Id.* at 13.

But this is not just an abstract discussion about the significance of consensual plan treatment. The Plan that includes Section 6.7 offers a vivid example of a spectacularly successful plan process. The **\*193** Plan was accepted in a lopsided affirmative vote by a vast majority of accepting creditors, and their votes ratified the compromises embodied in the Plan and all of its provisions. One reasonable conclusion from that vote is that the creditors have spoken, virtually with one voice, and have chosen not to object to the payments that the UST has determined to oppose. The fact of informed voting by sophisticated creditors distinguishes payments that the Debtors propose to make under the Plan from those that might be claimed in the ordinary course as administrative expenses. Here the payments are specified in the Plan and, but for the arguments advanced by the UST,

seem not to be the least bit controversial. The acceptances of the Plan are a strong, one-sided referendum in support of paying the fees requested by the Applicants. [10]

### Conclusion

For the reasons stated, the UST Fee Objection is not well-founded and is overruled. It is based on the proposition that Section 503(b) standards for allowing administrative expenses necessarily must govern the right of individual members of an official committee to receive reimbursements for their professional expenses. That mixes up the test for being able to assert an administrative expense claim with the right to receive a payment that the Debtors voluntarily have proposed to make under the Plan and that may be authorized in accordance with Section 1129(a)(4).

A consensual payment offered by a debtor is not the same as and should not be confused with the treatment of a claim made against a debtor. Section 6.7 is an example of such a consensual payment offered to the Applicants in consideration of their extraordinary services in the Lehman cases that contributed to the success of the Plan. Provisions such as this are not standard, but they are permissible. While permissible, payment of professional fees to members of an official committee under a plan is a practice that, in the Court's judgment, should be reserved for those special occasions of exceptional justification comparable to those presented by the Applicants.

The Applicants shall meet and confer with the UST in an effort to resolve any remaining questions as to reasonableness of the fees granted under Section 6.7 of the Plan. Unresolved questions shall be submitted to the Court for a determination of reasonableness in accordance with Section 1129(a)(4).

SO ORDERED.

### Parallel Citations

57 Bankr.Ct.Dec. 159

Footnotes

1    *See* Application of the Ad Hoc Group of Lehman Brothers Creditors for Compensation for Professional Services Rendered by, and Reimbursement of Actual and Necessary Expenses of, Its Professionals Pursuant to Section 503(b) of the Bankruptcy Code, ECF No. 29195; Application of the Ad Hoc Group of Holders of Notes Issued by Lehman Brothers Treasury Co. B.V. and Guaranteed by Lehman Brothers Holdings, Inc., Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Expenses for Counsel's Services

Incurred in Making a Substantial Contribution in These Cases, ECF No. 29222; Lehman Brothers Special Financing Inc. Working Group's Application for Entry of an Order, Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution in these Cases, ECF No. 29239; Application of Goldman Sachs Bank USA and Goldman Sachs International for Entry of an Order Pursuant to 11 U.S.C. §§ 503(b)(3) (D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees in Making a Substantial Contribution in These Cases, ECF No. 29240; Order Granting the Application of the Ad Hoc Group of Holders of Notes Issued by Lehman Brothers Treasury Co. B.V. and Guaranteed by Lehman Brothers Holdings, Inc., Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Expenses for Counsel's Services Incurred in Making a Substantial Contribution in These Cases, ECF No. 30162; Order Granting in Part the Application of the Ad Hoc Group of Lehman Brothers Creditors for Compensation for Professional Services Rendered By, and Reimbursement of Actual and Necessary Expenses, of, Its Professionals Pursuant to Section 503(b) of the Bankruptcy Code, ECF No. 31063; Order Granting Application of Goldman Sachs Bank USA and Goldman Sachs International for Entry of an Order Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees in Making a Substantial Contribution in These Cases, ECF No. 31064; Order Granting Lehman Brothers Special Financing Inc. Working Group's Application, as Modified, for Entry of an Order, Pursuant to §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution in These Cases, ECF No. 31310; Order Granting in Part the Application of the Ad Hoc Group of Lehman Brothers Creditors for Compensation for Professional Services Rendered By, and Reimbursement of Actual and Necessary Expenses of, Its Professionals Pursuant to Section 503(b) of the Bankruptcy Code, ECF No. 31480.

2    See Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated August 31, 2011, ECF No. 19627; Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22737; Notice of Filing of Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22973; Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Confirmation Order"), ECF No. 23023.

3    No economic stakeholder has complained about payment of these fees. The Plan providing for these payments was accepted by an overwhelming percentage of creditors and confirmed in a consensual hearing on December 6, 2011. See Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on Debtors' Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22743; Supplement to Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on Debtors' Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22972.

4    The Court notes that the Bankruptcy Code allows for payment of "reasonable compensation for professional services rendered" by an attorney or accountant employed by an indenture trustee if such indenture trustee has an allowable expense under Section 503(b)(3) (D), i.e., an allowable administrative expense for substantial contribution. 11 U.S.C. § 503(b)(4). This Memorandum Decision focuses on whether the Applicants are entitled to reimbursement of professional fees under Section 6.7 of the Plan, and the Court finds, for the reasons stated in this decision, that payment of the requested fees is permissible under Section 1129(a)(4) of the Bankruptcy Code. Accordingly, the Court does not need to determine whether the indenture trustees who are Applicants are entitled to reimbursement of professional fees under Section 503(b)(3)(D) of the Bankruptcy Code.

5    The Lehman cases are considered by many observers to be the most complicated bankruptcy cases in history and, as stated in the respective declaration of each of the Applicants in support of the Application (defined below), the Applicants performed services within such an extraordinary setting of complexity that it would have been difficult if not impossible for them to have carried out their duties without being able to confer with their own counsel. See Omnibus Application of (I) Individual Members of Official Committee of Unsecured Creditors and (II) Indenture Trustees Pursuant to Section 1129(a)(4), or, Alternatively, Sections 503(b)(3) (D) and 503(b)(4) of Bankruptcy Code for Payment of Fees and Reimbursement of Expenses (the "Application"), Exs. B1–B8, ECF No. 24762. In that sense, this dispute regarding entitlement to fees for individual members of a committee arises within an atypical context. The Court assumes that it will be the rare chapter 11 case in which individual members of an official committee will choose to retain or will need access to their own personal counsel in addition to committee counsel and even rarer still that a plan would include a payment provision such as the one being considered here. The conclusions reached, while not limited to the facts presented, relate to those situations where the plan provision fits the needs of the particular case and should not be viewed as an open invitation to craft similar provisions to cover the expenditures of individual committee members for their own retained professionals.

6    Section 1129(a)(4) requires a bankruptcy court to exercise substantive control over fees and costs related to confirmation and the chapter 11 case. See 11 U.S.C. § 1129(a)(4); 7 Collier on Bankruptcy ¶ 1129.04.

7    Section 503(b)(4) was amended by enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 to exclude professional fees incurred by an individual member of an official committee. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, § 1208, 119 Stat. 23, 194 (2005). A review of legislative history does not shed any light on the thinking that

underlies this amendment to Section 503(b)(4) or why such fees are not included in the category of allowed administrative expenses. *See, e.g.,* H.R. REP. No. 109–31 (2005), 2005 U.S.C.C.A.N. 88. One possible explanation is that members of an official committee ordinarily will not need personal counsel and will be able to rely upon the services of those professionals who have been retained by the committee.

8    Notwithstanding that argument, a creditor, even one serving on an official creditors' committee, can seek to have his, her or its attorney/accountant fees reimbursed for having made a "substantial contribution" to the case under Section 503(b)(3)(D). The Applicants here have moved for approval of their professional fees under Section 1129(a)(4) (subject only to the court's approval as reasonable) or, alternatively, under Section 503(b) for making a "substantial contribution" to the case. *See supra* note 4. The Court does not need to address whether the Applicants here have made a "substantial contribution" because, as discussed below, the professional fees at issue may be approved provided that they meet the test of reasonableness under Section 1129(a)(4).

9    Even with such broad powers, the bankruptcy court should exercise discretion in circumstances where a plan provision, "[e]ven if consistent with the [Bankruptcy] Code," is "conflicted with another law." *Energy Res.,* 495 U.S. at 550, 110 S.Ct. 2139.

10    The UST argues that the Plan was not consensual because the UST preserved her ability to object to Section 6.7. UST Fee Objection 20–21. While true, that reservation of rights does nothing to diminish the fact that the Plan is an outstanding example of consensus achieved and conflict avoided.

---

**End of Document**            © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# **EXHIBIT B**

508 B.R. 283
United States District Court,
S.D. New York.

In re LEHMAN BROTHERS
HOLDINGS INC., et al., Debtors.
Tracy Hope Davis, United States
Trustee for Region 2, Appellant,
v.
Elliot Management Corp., et al., Appellees.

No. 13 Civ. 2211(RJS).    |    Signed March 31, 2014.

**Synopsis**
**Background:** United States Trustee (UST) objected to application filed by individual members of creditors committee for reimbursement of their counsel fees as allowed by provision of confirmed Chapter 11 reorganization plan, arguing that plan could not be used to avoid limitations imposed by the Bankruptcy Code's administrative expense provisions. The Bankruptcy Court, James M. Peck, J., 487 B.R. 181, overruled objection, and UST appealed.

**Holdings:** The District Court, Richard J. Sullivan, J., held that:

[1] the administrative expenses section of the Bankruptcy Code excludes paying professional fee expenses on the basis of committee membership and, thus, individual members here could not have their professional fee expenses paid as administrative expenses solely on the basis of their committee membership;

[2] the plan, which called for payment of individual members' professional fee expenses as administrative expenses solely on the basis of official committee membership, was inconsistent with the Code and therefore impermissible;

[3] even if the payments to members' professionals were characterized as "permissive plan payments," and not as administrative expenses, the Code did not authorize their payment; and

[4] alternatively, if they made the requisite showing, individual members could be reimbursed their professional fee expenses on the ground that they made a "substantial contribution" to the case.

Vacated and remanded.

West Headnotes (19)

[1]    **Bankruptcy**
    &#9753; Creditors' and equity security holders' committees and meetings
"Official committee of unsecured creditors," as one of the key players in the Chapter 11 bankruptcy process, is comprised of creditors appointed by the United States Trustee (UST), who are usually the holders of the largest claims, and works with the debtor to administer the case, to investigate claims, and to write the Chapter 11 reorganization plan. 11 U.S.C.A. § 1102(a)(1), (b)(1).

Cases that cite this headnote

[2]    **Bankruptcy**
    &#9753; Professional services; attorney fees
**Bankruptcy**
    &#9753; Creditors' and equity security holders' committees and meetings
**Bankruptcy**
    &#9753; Provisions for satisfaction of claims; relation to recovery in liquidation
Expenses of paying professionals hired by an official committee of unsecured creditors are "administrative expenses" and, thus, pursuant to the Bankruptcy Code, must be paid under the reorganization plan. 11 U.S.C.A. §§ 330(a), 503(b)(2), 507(a), 1103(a), 1129(a)(9)(A).

Cases that cite this headnote

[3]    **Bankruptcy**
    &#9753; Professional services; attorney fees
**Bankruptcy**
    &#9753; Creditors' and equity security holders' committees and meetings
Unlike an official committee's professional fee expenses, individual committee members' professional fee expenses are not "administrative

expenses" and, thus, individual members must usually pay their own attorneys and accountants. 11 U.S.C.A. § 503(b)(4).

Cases that cite this headnote

**[4]**    **Bankruptcy**
     ☞ Contents in general
Provision of a Chapter 11 plan is permissible only if it is both "appropriate" and "not inconsistent with" any applicable provision of the Bankruptcy Code. 11 U.S.C.A. § 1123(b)(6).

Cases that cite this headnote

**[5]**    **Bankruptcy**
     ☞ Contents in general
At minimum, requirement that a provision of a Chapter 11 plan be both "appropriate" and "not inconsistent with" any applicable provision of the Bankruptcy Code implies that the Code does not authorize plan provisions that override, undermine, or rewrite relevant Code provisions. 11 U.S.C.A. § 1123(b)(6).

Cases that cite this headnote

**[6]**    **Bankruptcy**
     ☞ Administrative expenses in general
     **Bankruptcy**
     ☞ Time of accrual; prepetition claims
"Administrative expenses," with a few specified exceptions, are expenses incurred after the bankruptcy petition has been filed that receive special payment priority under the Bankruptcy Code. 11 U.S.C.A. §§ 503(b), 507(a)(2).

Cases that cite this headnote

**[7]**    **Bankruptcy**
     ☞ Provisions for satisfaction of claims; relation to recovery in liquidation
In Chapter 11 cases, all administrative expenses must be paid in full. 11 U.S.C.A. §§ 503(b), 1129(a)(9)(A).

Cases that cite this headnote

**[8]**    **Bankruptcy**
     ☞ Administrative expenses in general
To the extent an expense is not covered by the administrative expenses section of the Bankruptcy Code, it is not an administrative expense. 11 U.S.C.A. § 503(b).

Cases that cite this headnote

**[9]**    **Bankruptcy**
     ☞ Administrative expenses in general
List of administrative expenses set forth in the Bankruptcy Code is meant to be illustrative of the whole universe of administrative expenses, not merely a subset of administrative expenses. 11 U.S.C.A. § 503(b).

Cases that cite this headnote

**[10]**    **Bankruptcy**
     ☞ Administrative expenses in general
Priority status that defines administrative expenses is granted only to expenses falling under the administrative expenses section of the Bankruptcy Code. 11 U.S.C.A. §§ 503(b), 507(a)(2).

Cases that cite this headnote

**[11]**    **Bankruptcy**
     ☞ Administrative expenses in general
While there can be some administrative expenses that are not listed in the administrative expenses section of the Bankruptcy Code, because the list is not exhaustive, they must nonetheless fall within the interstices of that provision. 11 U.S.C.A. § 503(b).

Cases that cite this headnote

**[12]**    **Bankruptcy**
     ☞ Professional services; attorney fees
     **Bankruptcy**
     ☞ Creditors' and equity security holders' committees and meetings

Administrative expenses section of the Bankruptcy Code excludes paying professional fee expenses on the basis of committee membership and, thus, individual members of official creditors committee could not have their professional fee expenses paid as administrative expenses solely on the basis of their committee membership; not only were committee members' professional fee expenses not listed in the administrative expenses section of the Bankruptcy Code, but the structure of that section glaringly excludes professional fee expenses for official committee members, and statutory history confirmed that the omission was intentional. 11 U.S.C.A. § 503(b), (b)(3, 4).

Cases that cite this headnote

[13]    **Bankruptcy**
☞ Professional services; attorney fees

**Bankruptcy**
☞ Creditors' and equity security holders' committees and meetings

**Bankruptcy**
☞ Provisions for satisfaction of claims; relation to recovery in liquidation

Section of Chapter 11 reorganization plan allowing individual members of official unsecured creditors committee to obtain reimbursement, on priority basis as "administrative expense claims," for professional fees incurred in connection with their service on committee, was inconsistent with the administrative expenses section of the Bankruptcy Code, which pointedly omits payment of professional fee expenses for official committee members, and so the plan provision was impermissible. 11 U.S.C.A. §§ 503(b), (b)(4), 1123(b)(6).

Cases that cite this headnote

[14]    **Bankruptcy**
☞ Administrative expenses in general

Purpose underlying all administrative expenses is the same: promising to pay some entities in full encourages them to work with the estate and to benefit the estate as a whole. 11 U.S.C.A. § 503(b).

Cases that cite this headnote

[15]    **Bankruptcy**
☞ Professional services; attorney fees

**Bankruptcy**
☞ Creditors' and equity security holders' committees and meetings

**Bankruptcy**
☞ Provisions for satisfaction of claims; relation to recovery in liquidation

Even if payments to professionals hired by individual members of official unsecured creditors committee were characterized as "permissive plan payments," and not as administrative expenses, their payment by debtors' Chapter 11 plan was not authorized by the Bankruptcy Code; reorganization plans exist to pay claims and postpetition expenses, the individual members' professional fee expenses were incurred postpetition and so could not be treated as claims, such that the professional fee expenses were either administrative expenses or not, and if the latter, they could not be paid under a plan, as neither the need for flexibility in bankruptcy cases, the consensual nature of the plan provision at issue, nor a bankruptcy court's approval of a payment as "reasonable" could justify a plan provision that was merely a backdoor to administrative expenses that the administrative expenses section of the Code clearly excluded. 11 U.S.C.A. §§ 502(e–i), 503(b), 1123(a)(1–4), 1124, 1129(a)(9).

Cases that cite this headnote

[16]    **Bankruptcy**
☞ Purpose

Bankruptcy Code is meant to be a comprehensive federal scheme to govern the bankruptcy process and, although flexibility is necessary, the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences.

In re Lehman Bros. Holdings Inc., 508 B.R. 283 (2014)

59 Bankr.Ct.Dec. 80

Cases that cite this headnote

**[17]**    **Bankruptcy**
    Professional services; attorney fees

**Bankruptcy**
    Creditors' and equity security holders' committees and meetings

To the extent official committee members perform extraordinary work to benefit the estate, above and beyond normal committee duties, they may seek to be reimbursed for their professional expenses under the sections of the Bankruptcy Code providing for payment of the professional fees incurred by entities that have made a "substantial contribution" in a case. 11 U.S.C.A. § 503(b), (b)(3)(D), (b)(4).

1 Cases that cite this headnote

**[18]**    **Bankruptcy**
    Notice and hearing

**Bankruptcy**
    Provisions for satisfaction of claims; relation to recovery in liquidation

Sections of the Bankruptcy Code providing administrative expense claims for professional fees incurred in making a substantial contribution to the bankruptcy case require the bankruptcy court to provide notice and a hearing and to determine for itself that a substantial contribution has been made; a plan provision cannot short-circuit the process by effectively deeming an entity to have made a substantial contribution. 11 U.S.C.A. § 503(b)(3)(D), (b)(4).

1 Cases that cite this headnote

**[19]**    **Bankruptcy**
    Professional services; attorney fees

**Bankruptcy**
    Creditors' and equity security holders' committees and meetings

If individual members of official unsecured creditors committee made the requisite showing, they could be reimbursed their professional fee expenses on the ground that they made a "substantial contribution" to the case; although the Bankruptcy Code does not authorize payment of professional fee expenses solely on the basis of official committee membership, and the Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) to expressly prevent reimbursement for professional fee expenses on the basis of committee membership alone, this constituted nothing more than rejection of a per se rule that official committee members should have their professional fees paid, and nothing in the language of the Code precludes such members who have made a substantial contribution from seeking reimbursement. 11 U.S.C.A. § 503(b), (b)(3)(D), (b)(4).

Cases that cite this headnote

**Attorneys and Law Firms**

**\*286**  Tracy Hope Davis, United States Trustee for Region 2, Linda A. Rifkin, Assistant United States Trustee, and Susan D. Golden, Trial Attorney, Department of Justice, Office of the United States Trustee, New York, NY, and Ramona D. Elliot, Deputy Director and General Counsel, P. Matthew Sutko, Associate General Counsel, and Noah M. Schottenstein, Trial Attorney, Department of Justice, Executive Office for United States Trustees, Washington, DC, for Appellant.

Michael B. Hopkins, Covington & Burling LLP, New York, NY, and Loeb & Loeb LLP, New York, NY, for Appellee Wilmington Trust Co.

Russell Lowell Reid, Sheppard Mullin Richter & Hampton LLP, New York, NY, for Appellee The Bank of N.Y. Mellon.

Mark A. Speiser, Stroock & Stroock & Lavan LLP, New York, NY, for Appellee Mizuho Corporate Bank, Ltd.

Matthew J. Gold, Kleinberg, Plan, Wolff & Cohen, P.C., New York, NY, for Appellee Elliott Management Corp.

Richard Hiersteiner, Sullivan & Worcester LLP, One Post Office Square, Boston, MA, for Appellee U.S. Bank National Association.

Dov R. Kleiner, Vinson & Elkins LLP, New York, NY, for Appellee Shinsei Bank, Ltd.

David L. Dubrow, Arent Fox LLP, New York, NY, for Appellee The Vanguard Group.

Dennis F. Dunne, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, and Washington, DC, for Appellee Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc.

**Opinion**

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Appellant, the United States Trustee for Region 2 [1] (the "UST"), appeals from the bankruptcy court's decision granting the **\*287** application for payment of professional fees submitted by the individual members of the official committee of unsecured creditors (the "Individual Members") in the Lehman Brothers bankruptcy proceeding. *See In re Lehman Bros. Holdings Inc.,* 487 B.R. 181 (Bankr.S.D.N.Y.2013). For the reasons set forth below, the Court vacates the bankruptcy court's decision and remands to the bankruptcy court to determine whether the Individual Members' professional fee expenses qualify for payment under § 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

## I. BACKGROUND

Lehman Brothers Holdings filed for Chapter 11 bankruptcy on September 15, 2008. [2] (Voluntary Petition, *In re Lehman Bros. Holdings Inc.,* No. 08–13555(JMP) (Bankr.S.D.N.Y.), Doc. No. 1.) The subsequent bankruptcy case has been among history's largest and most complicated. *In re Lehman,* 487 B.R. at 185 n. 5. As a result, the bankruptcy process itself has been enormously expensive. Indeed, the professional fees alone have totaled approximately $1.8 billion. *Id.* at 182. This appeal is about a small part of that sum—$26 million. (UST Br. at 5–6); *In re Lehman,* 487 B.R. at 184.

**[1]**    Appellees are the official committee of unsecured creditors and its individual members. [3] An official committee of unsecured creditors is one of the key players in the Chapter 11 bankruptcy process. It is comprised of creditors appointed by the UST, 11 U.S.C. § 1102(a)(1), who are

usually the holders of the largest claims, *id.* § 1102(b)(1). The committee works with the debtor to administer the case, to investigate claims, and—most importantly—to write the Chapter 11 reorganization plan. *Id.* § 1103(c). That last duty is so important because the reorganization plan is at the heart of the Chapter 11 process. The plan controls how the estate's assets will be distributed—in other words, who gets paid and how much. *See id.* § 1123(a).

**[2]**    To be effective, an official committee must hire lawyers and accountants. The expenses of paying those professionals are "administrative expenses" and thus, pursuant to the Bankruptcy Code, must be paid under the reorganization plan. *See id.* §§ 330(a), 503(b)(2), 507(a), 1103(a), 1129(a)(9)(A). Similarly, to help in the work, individual members of the official committee sometimes also hire their own professionals, separate from and in addition to the professionals hired by the committee. Here, the Individual Members did precisely that. They each hired their own attorneys, who billed approximately $26 million for work in connection with the committee. (UST Br. at 5–6); *In re Lehman,* 487 B.R. at 184. The problem, however, was paying for that work.

**[3]**    Unlike an official committee's professional fee expenses, individual members' professional fee expenses are not administrative expenses. As will be discussed in greater detail below, § 503(b)(4) of the Bankruptcy Code addresses professional fee administrative expenses and does not cover expenses on the basis of committee membership. *See id.* § 503(b)(4). Thus, **\*288** individual members must usually pay their own attorneys and accountants.

Nevertheless, the Individual Members here devised a work-around. They included a provision in the reorganization plan—section 6.7—that allowed the Individual Members' reasonable professional fee expenses as "Administrative Expense Claims" and therefore required the debtor (and ultimately, claimants) to pay the expenses in full. (Chapter 11 Plan, *In re Lehman Brothers Holdings, Inc.,* No. 08–13555(JMP) (Bankr. S.D.N.Y.), Doc. No. 19627 (the "Plan"), § 6.7.)

The UST objected to section 6.7 of the Plan during the plan confirmation process. *In re Lehman,* 487 B.R. at 187. After negotiation, the UST agreed to defer her objection until after the Plan had been confirmed. *Id.* Once the Plan had been put to a vote of the claimants and approved, the Individual Members filed an application with the bankruptcy court for

payment pursuant to section 6.7, or in the alternative, pursuant to § 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code. *Id.* at 188. The UST objected again and argued that the Bankruptcy Code not only did not provide for the payment of the Individual Members' professional fee expenses, but also prohibited payment of such expenses. *Id.* As a result, the UST argued, section 6.7 was invalid and the expenses could not be paid under § 503(b)(3)(D) and 503(b)(4). *Id.*

On February 15, 2013, the bankruptcy court held that section 6.7 was permissible and declined to reach whether the expenses could be paid under § 503(b)(3)(D) and 503(b)(4). *In re Lehman,* 487 B.R. at 184 n. 4, 190 n. 8, 193. Although the bankruptcy court acknowledged that the Bankruptcy Code did not provide for payment of committee members' professional fees—and characterized section 6.7 as an attempt to "circumvent the apparent restrictions on administrative expense treatment for professional compensation claims of this sort"—it held that the Bankruptcy Code did *not forbid* such payment. *Id.* at 185, 191. Therefore, the bankruptcy court reasoned, the payments were not inconsistent with any Bankruptcy Code provision and were thus permissible pursuant to 11 U.S.C. § 1123(b)(6). *Id.* at 191.

The UST appealed (Doc. No. 1) and filed her brief on May 1, 2013 (Doc. No. 11). Appellees submitted their brief on May 29, 2013 (Doc. No. 12), and the UST replied on June 25, 2013 (Doc. No. 13). The Court held oral argument on September 9, 2013.

## II. STANDARD OF REVIEW

"The district court evaluates the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *In re Cousins,* No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010) (citing *In re Bennett Funding Grp., Inc.,* 146 F.3d 136, 138 (2d Cir.1998)). Questions of statutory interpretation are purely legal and are therefore reviewed de novo. *In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 674 (S.D.N.Y.2011).

## III. DISCUSSION

[4]    [5]    Under § 1123(b)(6) of the Bankruptcy Code, plans may "include any ... appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). Thus, a provision is permissible only

if it is both "appropriate" and "not inconsistent with" any applicable provision of the Bankruptcy Code. At minimum, these requirements imply that § 1123(b)(6) does not authorize plan provisions that override, undermine, or rewrite relevant Bankruptcy Code provisions. *Cf. RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* — U.S. —, 132 S.Ct. 2065, 2070–71, 182 L.Ed.2d 967 (2012) (holding that general authorizations in the Bankruptcy Code cannot be used to **\*289** avoid specific statutory provisions); *In re Smart World Techs., LLC,* 423 F.3d 166, 184 (2d Cir.2005) (holding that the bankruptcy court's authority to make "necessary or appropriate" orders does not allow the bankruptcy court to "overstep" "statutory limitations"); "Inconsistent," *The Oxford English Dictionary Online* (2013), http://www.oed. com/view/Entry/93864 (defining "inconsistent," when used in "inconsistent with," to mean "[n]ot consisting; not agreeing in substance, spirit, or form; not in keeping; not consonant or in accordance; at variance, discordant, incompatible, incongruous"). The bankruptcy court held that section 6.7 is not inconsistent with the Bankruptcy Code—including § 503(b)—and therefore is permissible under § 1123(b)(6). Appellees urge the Court to affirm that holding. The UST, however, argues that § 503(b) forbids payment of official committee members' professional fee expenses and that § 1123(b)(6) therefore could not authorize such payments. For the reasons set forth below, the Court finds that section 6.7 is invalid.

### A. § 503(b) Is The Exclusive Avenue For Payment Of Administrative Expenses And § 503(b) Excludes Official Committee Members' Professional Fee Expenses

[6]    [7]    Administrative expenses—with a few specified exceptions not relevant to this appeal, *see* 11 U.S.C. § 503(b)(3)(A), (b)(9)—are expenses incurred after the bankruptcy petition has been filed that receive special payment priority under the Bankruptcy Code. *See In re Mid Region Petrol., Inc.,* 1 F.3d 1130, 1132 (10th Cir.1993) ("Administrative expenses are specially favored post-petition claims, given priority in asset distribution over most other claims against the bankruptcy estate."). The kinds of expenses that qualify as administrative expenses are described by a list in § 503(b), and the special treatment given to those expenses is established by § 507(a)(2). 11 U.S.C. §§ 503(b), 507(a)(2). In Chapter 11 cases, such as this one, all administrative expenses must be paid in full. *See id.* § 1129(a)(9)(A).

[8]    [9]    [10]    [11]    To the extent an expense is not covered by § 503(b), it is not an administrative expense. *See, e.g., Norton Bankruptcy Law and Practice 3d Dictionary of*

In re Lehman Bros. Holdings Inc., 508 B.R. 283 (2014)

59 Bankr.Ct.Dec. 80

*Bankruptcy Terms* § A60 (defining "administrative expenses" solely by reference to § 503(b)). Although § 503 introduces its list with the term "including," *see* 11 U.S.C. § 503(b), which implies that the list is not exhaustive or exclusive, *see id.* § 102(3) (stating that, in the Bankruptcy Code, " 'includes' and 'including' are not limiting"), the list is meant to be illustrative of the whole universe of administrative expenses. "Including" modifies the term "administrative expenses," suggesting that the list describes all administrative expenses, not merely a subset of administrative expenses. *See id.* § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses ... including—[a list of nine categories]."). Moreover, the priority status that defines administrative expenses is granted only to expenses falling under § 503(b). *See* 11 U.S.C. § 507(a)(2) (granting priority to "administrative expenses allowed under section 503(b)"). Thus, while there can be some administrative expenses that are not listed in § 503(b), they must nonetheless fall within § 503(b)'s interstices. The Plan itself recognizes this concept. Section 1.1 of the Plan defines "Administrative Expense Claim" as "any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under *sections 503(b) and 507(a)(2* ) of the Bankruptcy Code." (Plan § 1.1 (emphasis added).)

**\*290** **[12]** Relevant here, official committee members' professional fee expenses are not included in § 503(b). The problem is not that such expenses are not listed—the list is not exhaustive—but instead that the structure of § 503(b) (3) and (4) glaringly exclude professional fee expenses for official committee members. *See* 11 U.S.C. § 503(b)(3), (4). [4] Specifically, § 503(b)(3) allows for the payment of "actual, necessary expenses" incurred in situations listed in § 503(b)(3)(A) through (F), all of which involve work contributing to the bankruptcy case. *See* 11 U.S.C. § 502(b)(3). Section 503(b)(3)(F) provides for the payment of the expenses incurred by official committee members in performing committee work. Section 503(b)(3), however, explicitly excludes *professional fee* expenses—that is, the cost of hiring lawyers or accountants—from the expenses it authorizes. *Id.* § 503(b)(3). Professional fee expenses are instead covered by § 503(b)(4). That section authorizes professional fee expenses for any entity that qualifies for expenses under § 503(b)(3)(A) through (E). *Id.* § 502(b)(4). Importantly, entities eligible for expenses under § 503(b)(3) (F)—members of an official committee—are not covered by § 503(b)(4). *Id.* Consequently, § 503(b)(3) and 503(b)(4) work together to guarantee full payment for any professional fee

expense incurred in a situation covered by § 503(b)(3)(A) through (E), but not (F).

Statutory history confirms that this omission was intentional. Before 2005, § 503(b)(4) allowed professional fee expenses for *all* categories of § 503(b)(3), including for official committee members. In 2005, however, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amended § 503(b)(4) to exclude professional fee expenses for official committee members. *See* BAPCPA, Pub.L. 109–8, 119 Stat. 23, 194 (2005) (amending § 503(b) (4) by "inserting 'subparagraph (A), (B), (C), (D), or (E) of' before 'paragraph (3)' "). Indeed, section 6.7's very existence is a recognition of this omission—if the expenses could be paid under § 503(b) on the basis of committee membership, section 6.7 would not have been necessary.

Thus, because § 503(b)—the sole source of administrative expenses—excludes paying **\*291** professional fee expenses on the basis of committee membership, the Individual Members cannot have their professional fee expenses paid as administrative expenses solely on the basis of their committee membership.

### B. Section 6.7 Calls For Payment Of The Individual Members' Professional Fee Expenses As Administrative Expenses Solely On The Basis Of Official Committee Membership

**[13]** For several reasons, the Court determines that section 6.7 calls for the payment of administrative expenses. Section 6.7 itself describes the expenses it covers as "Administrative Expense Claims." (Plan § 6.7.) [5] That description cannot be disregarded as poor word choice. Section 6.7's whole purpose is to provide that precise label. The Plan provides for payment of certain kinds of claims and expenses only. (*See id.* § 8.3 (providing for payment of "Administrative Expense Claims," "Priority Tax Claims," "Non–Priority Tax Claims," "Secured Claims," and "Claims").) The Individual Members' professional fee expenses are only paid at all to the extent they are smuggled in under the "Administrative Expense Claims" label. Similarly, the Individual Members' professional fees get their special treatment of payment in full only because the Plan—as required by statute, *see* 11 U.S.C. §§ 507(a)(2), 1129(a)(9)(A)—provides for payment in full for all "Administrative Expense Claims." (*See id.* § 2. 1.)

Further, even if the Court were to overlook the "Administrative Expense Claims" label, section 6.7

functionally pays the professional fee expenses as administrative expenses. The concept of "administrative expenses" exists only to describe the postpetition expenses given the special treatment of priority payment. The Plan, through section 6.7, attempts to give the Individual Members' professional fee expenses that same special treatment. As a result, there is no practical difference between an administrative expense under § 503(b) and an "Administrative Expense Claim" under section 6.7. Indeed, the Individual Members' themselves have previously shown how little difference they see between payment under the Plan and payment as an administrative expense. As previously mentioned, in the Individual Members' own application to the bankruptcy court for payment of their professional fee expenses, they argued that the expenses could be paid under either the Plan or as an administrative expense under § 503(b)(3)(D) and 503(b)(4). *See In re Lehman,* 487 B.R. at 188, 190 n. 8.

[14]    Finally, section 6.7 and administrative expenses have the same underlying justification. Appellees argue that paying the section 6.7 expenses in full incentivizes committee members to take on the difficult work necessary for a productive bankruptcy process, and that the resulting benefits accrue to all claimants. (Tr. of Oral Argument, dated Sep. 9, 2013, Doc. No. 16 ("Tr."), at 30:9–31:15; Resp. at 23–24.) *292 That is the same purpose underlying all administrative expenses: promising to pay some entities in full encourages them to work with the estate and to benefit the estate as a whole. *See Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986) ("Congress granted priority to administrative expenses in order to facilitate the efforts of the trustee or debtor in possession to rehabilitate the business for the benefit of all the estate's creditors."); 4 *Collier on Bankruptcy* ¶ 507.02[b] (stating that administrative expenses are given priority "because they are believed to benefit all holders of claims by increasing the proceeds in the bankruptcy estate available for distribution"). By name, function, and spirit, section 6.7 deals with administrative expenses.

Section 6.7 thus effectively rewrites § 503(b) by calling for payment of an administrative expense on a basis that § 503(b) pointedly omits. As a result, section 6.7 is inconsistent with § 503(b) and therefore impermissible under § 1123(b)(6).

## C. Section 6.7 Cannot Be Justified As A "Permissive Plan Payment"

[15]    Notwithstanding the fact that the claims referenced in section 6.7 "walk[ ], talk[ ], and squawk[ ]" like administrative expenses, *Fed. Mar. Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 757, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) (internal quotation marks omitted), Appellees nonetheless insist that section 6.7 does not pay administrative expenses, but instead authorizes permissive "plan payments." [6] (Tr. at 25:24–26:5.) The difference, according to Appellees, is that administrative expenses *must* be paid in every case while permissive plan payments are paid only when the debtor and claimants agree to include the payments in the plan and the bankruptcy court approves them as "reasonable." (Resp. 16–19.)

To support their position that such payments are distinct from administrative expenses, Appellees rely primarily on *In re Adelphia Commc'ns Corp.,* 441 B.R. 6 (Bankr.S.D.N.Y.2010). (Resp. 14–17; *see also In re Lehman,* 487 B.R. at 191–93 (adopting the reasoning of *In re Adelphia* ); *In re AMR Corp.,* 497 B.R. 690, 694–696 (Bankr.S.D.N.Y.2013) (adopting the reasoning of *In re Lehman* and *In re Adelphia* ). *Adelphia* dealt with a similar plan provision and held that the Bankruptcy Code allows for permissive non-administrative-expense plan payments outside of § 503(b). *See In re Adelphia,* 441 B.R. at 9. The bankruptcy court in *Adelphia* reasoned that (1) nothing in the Bankruptcy Code says that administrative expense payments are the only kinds of plan payments or forbids other kinds of plan payments; (2) 11 U.S.C. § 1129(a)(4) "permits the possibility" that it "might or might not" be possible to make some plan payments for professional fees beyond the payments authorized by § 503(b); and (3) § 1123(b)(6)'s "broad grant of authority" allows debtors and bankruptcy courts to include plan provisions to meet the needs of a particular case. *Id.* at 12–19; *see also In re Lehman,* 487 B.R. at 186 ("To fulfill its reorganization purposes, a plan must be an endlessly adaptable tool that fits the *293 particular needs and dynamics of each case.").

The Court is not persuaded by the reasoning of *In re Adelphia* or by Appellees' arguments. Although the Bankruptcy Code does not explicitly forbid payments professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and postpetition expenses. *See* 11 U.S.C. § 1123(a)(1)-(4), 1124, 1129(a)(9); *In re Ames Dep't Stores, Inc.,* 582 F.3d 422, 428–29 (2d Cir.2009). Here, the Individual Members' professional fee expenses were all incurred postpetition, and thus cannot be treated as "claims." *See* 11 U.S.C. § 502(e)-(i)

In re Lehman Bros. Holdings Inc., 508 B.R. 283 (2014)
59 Bankr.Ct.Dec. 80

(addressing claims that may arise after the commencement of the case); *see also In re Worldcom, Inc.,* 401 B.R. 637, 643 (Bankr.S.D.N.Y.2009) ("[A] claimant whose right to payment against the estate arises postpetition does not file a proof of claim ... but rather can file their claim as a request for payment [of an administrative expense] under § 503(b)."). Therefore, the Individual Members' professional fee expenses are either administrative expenses or not, and if the latter, they cannot be paid under a plan. [7]

Indeed, allowing payments under the plan beyond claims and expenses could lead to serious mischief. To give one example, the "absolute priority rule ... provides that a reorganization plan may not give 'property' to the holders of any junior claims or interests 'on account of' those claims or interests, unless all classes of senior claims either receive the full value of their claims or give their consent." *In re DBSD N. Am., Inc.,* 634 F.3d 79, 88 (2d Cir.2011) (quoting 11 U.S.C. § 1129(b) (2)(B)). If a plan could contain "plan payments" outside of claims or expenses, a plan could, without the consent of senior claims holders, provide for payment to a junior claimant not "on account of" the junior claim, but on account of a plan provision specifically authorizing payment to that particular entity. Such a plan provision would of course be based on wordplay alone and would be an obvious circumvention of the Code's requirements. *See In re DBSD N. Am.,* 634 F.3d at 97–101 (reversing a bankruptcy court decision allowing a "gift" from secured creditors to junior creditors in violation of the absolute priority rule). And the same is true of Appellees' arguments here.

[16]    [17]    [18]    Moreover, neither the need for flexibility in bankruptcy cases, the consensual nature of section 6.7, [8] nor a bankruptcy court's approval of a payment as "reasonable" can justify a plan provision that is merely a backdoor to administrative expenses that § 503 has clearly excluded. **\*294** The Bankruptcy Code is meant to be a "comprehensive federal scheme ... to govern" the bankruptcy process. *E. Equip. & Servs. Corp. v. Factory Point Nat. Bank,* 236 F.3d 117, 120 (2d Cir.2001). Although flexibility is necessary, *In re Parmalat Sec. Litig.,* 501 F.Supp.2d 560, 578 (S.D.N.Y.2007) ("Bankruptcy reorganization is an inherently flexible process...."), the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences, *RadLAX Gateway Hotel, LLC,* 132 S.Ct. at 2070–71 (referring to the Bankruptcy Code as a "comprehensive scheme [that] has deliberately targeted specific problems with specific solutions" (internal quotation

marks omitted)). *Adelphia* 's holding—that (1) "the wisdom of a policy permitting the payment of individual creditors' fees for advancing their own private interests, in the absence of a benefit to the estate, is subject to a fair policy debate," and (2) "Congress might conclude that in the absence of a benefit to the estate, reorganization plans shouldn't provide for the legal fees incurred by individual creditors," *In re Adelphia,* 441 B.R. at 19—wholly misses the point. The debate and Congressional action have already taken place. By amending § 503(b), Congress and the President evidently determined that official committee members—who are normally the holders of the largest claims against the estate, 11 U.S.C. § 1102(b)(1), and are presumably amply motivated to advance the bankruptcy process—do not need to be incentivized with payment of their professional fees by the estate. To the extent official committee members perform extraordinary work to benefit the estate, above and beyond normal committee duties, they may, as will be explained below, seek to be reimbursed under § 503(b)(3)(D) and 503(b)(4), which provide for payment of the professional fees incurred by entities that have made a "substantial contribution in a case." *See* 11 U.S.C. § 503(b)(3)(D), 503(b)(4). Nevertheless, those provisions require the bankruptcy court to provide notice and a hearing and to determine for itself that a substantial contribution has been made. Whatever the merits of that scheme, it is binding on courts and bankruptcy participants. *See RadLAX Gateway* Hotel, 132 S.Ct. at 2073 ("[T]he pros and cons of [choices made in the Bankruptcy Code] are for the consideration of Congress, not the courts."); *In re DBSD N. Am., Inc.,* 634 F.3d at 100 (noting that courts cannot challenge the merits of Congress's policy decisions in the Bankruptcy Code). A plan provision cannot short-circuit the process by effectively deeming an entity to have made a substantial contribution.

The Court therefore determines that section 6.7 indeed calls for payment of administrative expenses and that Appellees may not circumvent the requirements of § 503(b) merely by using a different label such as "permissive plan payments." [9]

**\*295 D. Appellees' Alternative Argument**

[19]    In their original application to the bankruptcy court, the Individual Members raised the alternative argument that they could be paid under § 503(b)(3)(D) and 503(b)(4), on the ground that they made a "substantial contribution" to the case. *In re Lehman,* 487 B.R. at 184 n. 4, 190 n. 8. The bankruptcy court declined to address that argument, but the UST, then and now, argues that such payment is impossible

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

In re Lehman Bros. Holdings Inc., 508 B.R. 283 (2014)

59 Bankr.Ct.Dec. 80

because § 503(b) forbids reimbursement of official committee members' professional fee expenses, even if the committee members independently satisfy some other category listed in that section. (UST Br. at 19–20.) The Court disagrees.

True, as explained above, § 503(b) does not authorize payment of professional fee expenses solely on the basis of official committee membership. Similarly, it is true that BAPCPA amended § 503(b)(4) to prevent reimbursement for professional fee expenses on the basis of committee membership alone. But the current structure and the amendment imply nothing more than a rejection of a per se rule that official committee members should have their professional fee expenses paid. That is an understandable choice, as paying committee members' professional fee expenses regardless of contribution can lead to abuses or could create an incentive to litigate for the members' benefit at the estate's expense. *See In re Chemtura Corp.,* 439 B.R. 561, 612 (S.D.N.Y.2010) ("[T]hose whose fees are paid by someone else have no incentive to keep costs under control, or to bring the litigiousness to an end."). Nevertheless, there is no reason to think that the Bankruptcy Code would punish an entity that *has* made a substantial contribution solely because it was also willing and able to serve on the official committee. According to the UST's logic, a creditor who has used a lawyer to help file a petition or to recover property for the estate's benefit—expenses that are normally reimbursed under § 503(b)(3)(A)–(B) and 503(b)(4)—would be prevented from getting reimbursed simply because the creditor also served as a member of an official committee. Nothing in the language of the statute requires or suggests such a perverse outcome.

An interpretation allowing official committee members to be paid if they satisfy some category of § 503(b) is further strengthened by comparison with the language and structure of § 503(c). *See* 11 U.S.C. § 503(c). That section very clearly states that certain kinds of expenses—retention or severance payments to insiders—cannot be paid unless certain conditions are met, even if they could have been independently authorized by some part of § 503(b). This section shows that Congress and the President know how to —and are willing to—specifically forbid payments of certain expenses if they so choose. Indeed, § 503(c) was added

by BAPCPA, the same statute that amended § 503(b)(4) to omit committee membership as a basis for payment. *See* BAPCPA, 119 Stat. at 102–03. The different approaches taken in § 503(b)(4) and § 503(c) imply that a different result was intended. *See Kucana v. Holder,* 558 U.S. 233, 249, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010) ( "Where *296 Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).

Accordingly, the Court holds that the Bankruptcy Code does not necessarily exclude official committee members from the benefits of § 503(b) in all situations. Although official committee membership alone cannot be a sufficient condition for reimbursement of professional fee expenses, it is not a disqualification. As such, to the extent the Individual Members qualify under § 503(b)(3)(D) by virtue of having made a "substantial contribution" to the bankruptcy case, they may have their professional fee expenses paid under § 503(b)(4).

Nevertheless, the Court is in no position to determine whether the Individual Members made such a substantial contribution, and the bankruptcy court declined to reach this issue when it was first presented. The Court therefore remands the case to the bankruptcy court to address that issue now.

### IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the bankruptcy court's decision is vacated and the case is remanded for further proceedings consistent with this opinion. The Clerk of the Court is respectfully directed to terminate this appeal.

SO ORDERED.

**Parallel Citations**

59 Bankr.Ct.Dec. 80

Footnotes

1    Region 2 is the name used by the United States Trustee Program for the states included within the Second Circuit. *See* USTWEB—Region 2, http://www.justice.gov/ust/r02 (last visited Mar. 31, 2014).

In re Lehman Bros. Holdings Inc., 508 B.R. 283 (2014)

59 Bankr.Ct.Dec. 80

2    The following facts are undisputed and are drawn from the bankruptcy court's decision, *In re Lehman,* 487 B.R. 181, Appellant's Brief (Doc. No. 11 ("UST Br.")), Appellees' Brief (Doc. No. 12 ("Resp.")), and Appellant's Reply Brief (Doc. No. 13 ("UST Reply")). All page citations are to the internal page numbers of the document, where available.

3    Two of the Individual Members are also indenture trustees. (Resp. at 1.) The parties do not argue that the indenture trustees should be treated differently than other committee members, and the Court finds that the legal analysis for committee members applies equally to indenture trustees.

4    The full text of § 503(b)(3)–(4) reads:

    (b) After notice and a hearing, there shall be allowed administrative expenses ... including—

    ...

    (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

    (A) a creditor that files a petition under section 303 of this title;F

    (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

    (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

    (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

    (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

    (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

5    The full text of section 6.7 of the Plan reads:

    Subject to entry of the Confirmation Order, the reasonable fees and expenses (including attorneys['] fees) of (a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent accrued and unpaid as of the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement, and (ii) to the extent incurred after the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

6    More specifically, Appellees described the expenses as "plan payments" to cover "expenses of administration." (Tr. at 26:1–11). Given that the term "expenses of administration" was the nomenclature previously used in the Bankruptcy Act for the expenses now called "administrative expenses," *compare* 11 U.S.C. § 104(a)(1) (1976), *with* 11 U.S.C. § 503(b), and is still sometimes used in case law to refer to administrative expenses, *see In re Bridgeport Jai Alai, Inc.,* 99 Fed.Appx. 254, 256 (2d Cir.2004), the Court finds Appellees' choice of words—even if unintentional—to be telling.

7    Again, the Plan itself reflects the law better than Appellees' arguments. As noted above, the Plan does not purport to provide for payment of anything other than claims or expenses authorized by the Bankruptcy Code. (Plan § 8.3.)

8    The Court notes that Appellees overstate the amount of consent involved in the approval of section 6.7. True, majorities of each class of claimant voted for the Plan, but claimants had only an up-or-down vote on the Plan as a whole and could not vote provision-by-provision. (*See* Reply at 2, 10.) Even if a majority of claimants opposed section 6.7, the Plan would still have won a majority if claimants were willing to swallow the relatively small price of $26 million spread across all claimants in exchange for moving the process forward. Indeed, the risk of such a distortion of the voting process is particularly heightened in cases like this one because the beneficiaries of section 6.7 were the same entities charged with representing creditors in plan negotiations. *See* 11 U.S.C. § 1103(c)(3) (authorizing official committees to "participate in the formulation of a plan, [and] advise those represented by such committee of such committee's determinations as to any plan formulated").

9    To the extent *Adelphia* and Appellees rely on 11 U.S.C. § 1129(a)(4) to justify plan payments for professional fees outside of § 503(b), they misread that section. (Resp. at 20.) Section 1129(a)(4) is partly focused on ensuring disclosure of payments made in connection with the plan, but not written into the plan. *See In re Cajun Elec. Power Co-op., Inc.,* 150 F.3d 503, 514 (5th Cir.1998) (stating that § 1129(a)(4) is not limited to payments made from the bankruptcy estate (citing *Leiman v. Guttman,* 336 U.S. 1, 5, 8, 69 S.Ct. 371,

93 L.Ed. 453 (1949))); *In re Journal Register Co.,* 407 B.R. 520, 537 (Bankr.S.D.N.Y.2009) (noting that § 1129(a)(4) is focused on disclosure); 7 *Collier on Bankruptcy* ¶ 1129.02[4] (same); 6 *Norton Bankruptcy Law and Practice* 3d § 112:11 (same); Robert E. Ginsberg, Robert D. Martin & Susan V. Kelley, *Ginsberg and Martin on Bankruptcy* § 13.13[D] (same); *compare* 11 U.S.C. § 1129(a)(4) (addressing "payment[s] ... in or in connection with the case, or in connection with the plan and incident to the case"), *with id.* § 1129(a)(15), (a)(16), (b)(2)(B)(ii), (b)(2)(C)(ii) (addressing property transferred, distributed, or received "under the plan"). That section therefore necessarily addresses payments other than those governed by § 503(b), which would all be addressed in the plan itself. However, § 1129(a)(4)'s contemplation of payments outside of the plan in no way implies the possibility of freestanding non-claim and non-expense payments *under* the plan.

---

**End of Document**                              © 2014 Thomson Reuters. No claim to original U.S. Government Works.