UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | (Jointly Administered) |
| Debtors | |

------------------------------------------------------------------------x

**MEMORANDUM DECISION SUSTAINING DEBTORS' OBJECTION TO PROOFS OF
CLAIM FILED BY 2138747 ONTARIO LTD. AND 6785778 CANADA INC.
(CLAIM NOS. 33583 AND 33586)**

A P P E A R A N C E S :

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
By:     Stephen A. Youngman, Esq.

*Attorneys for Lehman Brothers Holdings Inc.*

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, NY 10019
By:     Shaya M. Berger, Esq.

*Attorneys for 2138747 Ontario Ltd. and 6785778 Canada Inc.*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

        Lehman Brothers Holdings Inc. ("LBHI") has filed an objection (the "Objection") to two

proofs of claim filed by minority shareholders of SkyPower Corp. ("SkyPower"), a Canadian

corporation whose controlling shareholder was an indirect subsidiary of LBHI.  The asserted

claims are based on alleged breaches of various agreements that, the minority shareholders

submit, when construed together, paint a picture of a transaction that was designed to provide a

benefit directly to them -- despite the fact that they are not party to (nor are they named third-party beneficiaries of) any agreement with LBHI, including the equity contribution agreement on which they rely to assert their claims.  Indeed, all of the other agreements that the minority shareholders allege are part of a "multifaceted transaction" designed to use "Lehman Brothers" as a funding source and investor to support and grow SkyPower's business are signed by Lehman entities other than LBHI.  While SkyPower and its minority shareholders may well have been victims of Lehman's failure, it is SkyPower and not its minority shareholders who has the right to assert claims against LBHI.[1]  With respect to the claims at issue here, for the reasons set forth in this Memorandum Decision, the Objection is sustained.

## FACTUAL BACKGROUND

On June 1, 2008, Lehman Brothers Inc. ("LBI"), an affiliate of LBHI and subject of its own liquidation proceeding under the Securities Investor Protection Act ("SIPA"), and SkyPower signed a letter of intent (the "Letter of Intent") for the potential acquisition of SkyPower.  LBI's Canadian counsel for the transaction subsequently prepared a memorandum (the "Goodmans Steps Memo") describing (i) a potential acquisition of SkyPower by LBI through LB SkyPower Inc. ("LB SkyPower"), a separate legal entity established for the purpose of the acquisition and (ii) the steps necessary to effectuate such acquisition.  Thereafter, on June 11, 2007, various entities, including 2138747 Ontario Ltd., 6785778 Canada Inc. (together, the "Minority Shareholders"), LB SkyPower, and SkyPower entered into a Stock Purchase Agreement (the "SPA") pursuant to which LB SkyPower acquired a controlling interest in SkyPower and the Minority Shareholders received $87.5 million at closing.  On that same day,

---

[1] As receiver for SkyPower in its insolvency proceedings under the Companies' Creditors Arrangement Act (Canada), after SkyPower had changed its name to Interwind Corp., PwC filed its proof of claim number 66602 asserting that LBHI breached its alleged obligation to fund SkyPower under the amended and restated equity contribution agreement.  In January 2013, PwC negotiated and entered into a resolution with LBHI resolving all claims of SkyPower against the LBHI estate, including claim number 66602.

various entities, including the Minority Shareholders, LB SkyPower, and HSH Nordbank AG ("HSH Nordbank") entered into a Unanimous Shareholder Agreement (the "SHA") by which the parties agreed on (i) transfer/ownership restrictions for the stock and (ii) the manner in which the affairs of SkyPower would be conducted.  On September 5, 2007, LBI addressed a post-closing memorandum (the "September 5 Memo") to the SkyPower board of directors discussing anticipated equity contributions.

On February 22, 2008, SkyPower, as borrower, LBHI, as sponsor, and HSH Nordbank entered into an Amended and Restated Equity Contribution Agreement (the "ECA") to coincide with the amendment and restatement of a credit agreement between SkyPower and HSH Nordbank.  Pursuant to the ECA, which was structured for a specific transaction, LBHI agreed to make cash equity contributions to SkyPower in order to cover any shortfall that may have been owing under the credit agreement.

On September 15, 2008, LBHI and certain of its affiliates and subsidiaries filed voluntary petitions under chapter 11.  LBI's SIPA proceeding was commenced on September 19, 2008.  Following its chapter 11 filing, LBHI failed to meet its funding obligations under the ECA.  In or around August 2009, SkyPower filed its own insolvency proceeding under the Companies' Creditors Arrangement Act (Canada).

The Minority Shareholders timely filed their claims, asserting that LBHI's failure to fund under the ECA led to their investment being wiped out.  Specifically, the Minority Shareholders state that their damages arise out of or relate to (i) LBHI's failure to adequately fund SkyPower or cause its direct or indirect subsidiaries to adequately fund SkyPower; (ii) LBHI's breaches and defaults under the ECA and any other wrongful acts relating to the agreement; (iii) LBHI's, or its direct or indirect subsidiaries', breaches and defaults under other agreements and other wrongful

acts that were in any way associated with LBHI's investment in SkyPower; and (iv) related

claims as a result of LBHI's bankruptcy filing.  The matter has been fully briefed,[2] and the Court

heard oral argument on July 16, 2014.

## STANDARD

The Objection triggered a "Sufficiency Hearing," as defined in the Court's April 19, 2010

Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General

Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative

Dispute Resolution Procedures for Claims Against Debtors [ECF No. 8474].  Pursuant to that

order, all hearings "to address the legal sufficiency of [a] particular Contested Claim and whether

the Contested Claim states a claim against the asserted Debtor under Bankruptcy Rule 7012"

shall be "Sufficiency Hearings," unless the Plan Administrator serves the holder of a contested

claim with a Notice of ADR Procedure or Notice of Merits Hearing.  *Id.* ¶ 4(a).  The standard of

review for a Sufficiency Hearing is "equivalent to the standard applied by the Court upon a

motion to dismiss for failure to state a claim."  *Id.*

Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12(b)(6)"), permits a bankruptcy court to dismiss an adversary

proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted.  In

reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of

the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007);

---

[2] LBHI has filed (i) the Objection and (ii) Plan Administrator's Reply Brief in Support of Debtors' Objection to
Proofs of Claim Filed by 2138747 Ontario Ltd. and 6785778 Canada Inc. (Claim Nos. 33583 and 33586) (the
"Reply") [ECF No. 44503].  The Minority Shareholders have filed (i) Opposition to Debtors' Objection to Proofs of
Claim Filed by 2138747 Ontario Ltd. and 6785778 Canada Inc. (Claim Nos. 33583 and 33586) (the "Opp'n") [ECF
No. 19315] and (ii) Sur-Reply of 2138747 Ontario Ltd. and 6785778 Canada Inc. in Further Support of their
Opposition to Debtors' Objection to Proofs of Claim (Claim Nos. 33583 and 33586) (the "Sur-Reply") [ECF No.
45078].

*E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000).  To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint must be supported by more than mere conclusory statements.  *Twombly*, 550 U.S. at 555.  The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action."  *Id.* (citations omitted).

A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  Therefore, the appropriate inquiry "is not whether a plaintiff is likely to prevail, but whether [he] is entitled to offer evidence to support [his] claims."  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (citations omitted).

In ruling on a motion to dismiss, a court may consider documents omitted from the plaintiff's complaint (here, the proof of claim) but attached by a defendant to its motion to dismiss (here, the Objection).  *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d. Cir. 1991) (district court may consider exhibits omitted from plaintiff's complaint but attached as exhibits to defendant's motion papers because "there was undisputed notice to plaintiffs of their content and they were integral to plaintiffs' claim").  The Court finds, based in large part on the parties' mutual reliance on such documents, that, in addition to the ECA, a copy of which the Minority Shareholders attached to their proof of claim, the Court may consider the Letter of Intent, the Goodman Steps Memo, the SPA, the SHA, and the September 5 Memo, even though they were attached to pleadings submitted later in the briefing process.

## DISCUSSION

### *Derivative Claims*

As a threshold matter, LBHI objects to the Minority Shareholders' standing to pursue

their claims and characterizes them as derivative of SkyPower's claims that already have been

settled via agreement with PwC as receiver.  The Minority Shareholders assert that

> [w]ith [LBHI's] bankruptcy in September 2008 came the failure to fund
> SkyPower as required under, inter alia, the Shareholder Agreement and the Equity
> Contribution Agreement.  And with that failure to fund came the dire financial
> straits that resulted in SkyPower filing a Canadian insolvency proceeding – and
> Claimants' investment being wiped out.

Opp'n ¶ 15.  In response, LBHI submits that the Minority Shareholders "have not alleged (nor

could they) any personal, distinct injuries arising from LBHI's alleged 'failure to fund' that are

independent of their status as shareholders in the now-defunct SkyPower."  Reply ¶ 36.  LBHI

agreed to make cash equity contributions *to SkyPower* under § 2.01 of the ECA – an agreement

to which the Minority Shareholders are not party.  *See* ECA, Opp'n Ex. 5.  The Minority

Shareholders quarrel with LBHI's characterization of their claims and urge that, when construed

together, the documents related to the 2007 transaction evidence a direct obligation by LBHI to

the Minority Shareholders.

Generally, courts look to the state of incorporation of the company to determine issues of

shareholder standing.  *See Amusement Indus. v. Stern*, 2010 U.S. Dist. LEXIS 74822 at *19 n.5

(S.D.N.Y. 2010) (citations omitted).  In this instance, inasmuch as SkyPower is a Canadian

corporation, the Court must apply Canadian law.  Because the shareholder "accepts the fact that

the value of his investment follows the fortunes of the company," *Prudential Assurance Co. v.

Newman Industries Ltd.* (No. 2), [1982] 1 All E.R. 354 (A.C.) at 367, the relevant rule – the so-

called "rule in *Foss v. Harbottle*" – provides that

> [i]ndividual shareholders have no cause of action in law for any wrongs done to the corporation and … if an action is to be brought in respect of such losses, it must be brought either by the corporation itself (through management) or by way of a derivative action.

*Hercules Mgmt. Ltd. v. Ernst & Young*, [1997] 2 S.C.R. 165, ¶ 59 (Can.).  Similarly, New York law, which governs each of the ECA, the SPA, and the SHA, provides that "if the gravamen of the [shareholder's] complaint is injury to the corporation the suit is derivative … ."  *Eisenberg v. Flying Tiger Line, Inc.*, 451 F.2d 267, 269 (2d Cir. 1971) (citation omitted) (applying New York law).

Both at oral argument and in their papers, the Minority Shareholders focused on §§ 6.1 and 8.1 of the SHA to support the argument that LBHI breached obligations that it owed directly to them.  *See* Hr'g Tr. 64:8-68:19; Opp'n ¶¶ 11- 14; Sur-Reply ¶ 13.  Section 6.1 provides that "Lehman shall have the exclusive right to make all equity investments" in SkyPower and that all such equity investments "shall take the form of subscriptions for Class A Shares … ."  SHA, Opp'n Ex. 4 § 6.1.  That is, according to the Minority Shareholders, "Lehman" has the right, by virtue of this provision, to acquire additional shares from them – the owners of the Class A Shares at the time of execution of the SHA.  *See* Hr'g Tr. 66:12-67:15.  Section 8.1, in turn, provides that "[a]s and when determined by Lehman to be necessary … Lehman will exercise [its right to acquire additional Class A Shares]."  SHA, Opp'n Ex. 4 § 8.1.  The Minority Shareholders assert that this provision describes "Lehman's" obligation to exercise the rights granted to it by § 6.1.  *See* Hr'g Tr. 68:4-19.  The Court finds that the Minority Shareholders' "read between the lines" exercise ignores key provisions of the transaction documents, even when the documents are construed together.  That is, when one reads the transaction documents together, one must still *read* the transaction documents.

7

First, even if the Court were to find that §§ 6.1 and 8.1 of the SHA creates rights for the Minority Shareholders, a careful review of the document reveals that "Lehman" refers to LB SkyPower. That is, LB SkyPower, and not LBHI, had the exclusive right to make all equity investments in SkyPower and would exercise that right when it determined it was necessary. The Court has noticed a recent trend of claimants referring generally to any Lehman entity as "Lehman." It is important to note, however, that each exists as a separate legal entity and, when one specific legal entity enters into a contract, it is that entity alone that takes on the obligations and enjoys the rights under the contract.

Second, under the transaction documents, any cash contribution from any Lehman entity goes to the corporation, not to the Minority Shareholders. *See, e.g.,* SHA, Opp'n Ex. 4 § 6.1 (providing for equity investments in the form of subscriptions[3] of Class A Shares); ECA, Opp'n Ex. 5 § 2.01 (stating that LBHI "agrees to make one or more cash equity contributions to [SkyPower]"); September 5 Memo (providing that "[a]ll actual and deemed equity investments by Lehman shall take the form of subscriptions for Class A Shares"). To be sure, no Lehman entity acquired shares from any claimant in this matter. Rather, LBHI invested in excess of $400 million in SkyPower. Reply ¶ 16. The only feasible argument, then, is that the investment was supposed to have resulted in a financially healthy company that would have resulted in increased value of the Minority Shareholders' shares. This, however, is the quintessential derivative claim. That is, as shareholders, the Minority Shareholders' fortunes were designed to rise and fall

---

[3] In commercial terms, there is an important distinction between a subscription for shares and a share purchase. The proceeds of a subscription, which involves the issue of new shares by the company, go to the company. A purchase, on the other hand, involves the acquisition of shares that already have been issued, with the proceeds going to the seller of the shares. *See, e.g., Camilo v. Nieves*, 792 F. Supp. 2d 232, 237 (D.P.R. 2011) (noting that a "share subscription agreement is different from a contract of purchase and sale, being a contract to issue or create new shares as opposed to an agreement for the transfer of title to shares already in existence"); *see also Witters v. Sowles*, 38 F. 700, 703 (D. Vt. 1889) (explaining that "[a] person can become a shareholder in only one of two ways, -- by original subscription for shares, or by a transfer which operates as a novation, and substitutes the transferee in the place of … the original subscriber").

together with the fortunes of the corporation; any claim based on the fall of the company's

fortunes – i.e., a claim that essentially complains of injury to the corporation – is derivative.  *See*

*Flying Tiger Line*, 451 F.2d at 269.

PwC pursued SkyPower's claims directly against LBHI.  The settlement between the

parties was approved by the Canadian court and by the Delaware court overseeing the chapter 15

proceeding filed there.  Reply ¶¶ 23, 26.  Those claims have been fully adjudicated, and the

Minority Shareholders may not seek to prosecute them now.  Accordingly, the Minority

Shareholders fail to state a claim upon which relief may be granted.

### No Third-Party Beneficiaries to the ECA

Even if the Court had found that the Minority Shareholders' claims were direct, they still

would fail based on the Minority Shareholders' inability to meet the burden of establishing that

they are third-party beneficiaries under the ECA.  This is not the first time a claimant in these

cases has sought to recover as a third-party beneficiary of an agreement signed by a Lehman

entity.  The Court recently granted LBHI's four-hundred fifty-eighth omnibus objection to

claims based upon a claimant's inability to establish third-party beneficiary status under the

agreement at issue.  *See In re Lehman Brothers Holdings Inc.*, 2014 Bankr. LEXIS 2666 (Bankr.

S.D.N.Y. July 9, 2014) ("Newport Global").  The Court explained that under New York law, a

party claiming to be a third-party beneficiary of a contract bears the burden of demonstrating that

the parties to the contract intended to confer a benefit on the third party.  *Newport Global*, 2014

Bankr. LEXIS 2666 at *8 (citing *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119,

124 (2d Cir. 2005) (internal citation omitted)).  A putative third party may meet this burden by

proving (i) the existence of a valid and binding contract; (ii) that the contract was intended for

the third party's benefit; and (iii) that the benefit to the third party is sufficiently immediate to

indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost. *Newport Global*, 2014 Bankr. LEXIS 2666 at *8-9 (citing *BDG Oceanside, LLC v. RAD Terminal Corp.*, 787 N.Y.S.2d 388, 390 (N.Y. App. Div. 2005)).

"While a third party need not be specifically mentioned in the contract before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown *on the face of the agreement*." *Id*. at *9 (citing *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989)) (internal quotation marks and additional citations omitted) (emphasis in original). The Minority Shareholders attempt to distinguish their claims, asserting that their "basis for claiming third-party beneficiary status is not so limited" as was the case in *Newport Global*; however, the fact remains that nowhere on the face of the ECA is there any indication that the Minority Shareholders are intended beneficiaries of the document. Sur-Reply ¶ 33 n. 7; *see generally* ECA, Opp'n Ex. 5. The Minority Shareholders suggest that when read together "as part of a single transaction," it becomes apparent that they are intended third-party beneficiaries under the ECA. Opp'n ¶ 27. The Court disagrees.

Again, even when "reading the documents together," one still must *read* the actual words of each document. To that end, the Court notes that each of the SPA and the SHA contains an integration clause providing in essence that the agreement comprises the sole and entire agreement between the parties. *See* SPA, Opp'n Ex. 3 § 15.02; SHA, Opp'n Ex. 4 § 11.7. Neither agreement refers to either the ECA or LBHI. The ECA itself, a document to which the Minority Shareholders are not party, is "clear and unambiguous – and completely silent as to whether [the Minority Shareholders are] intended beneficiar[ies]." *Newport Global*, 2014 Bankr. LEXIS 2666 at *10; s*ee also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 457-58

10

(S.D.N.Y. 2010) (holding that a contract's "deafening silence" on third-party beneficiary rights demonstrated a lack of intent to confer benefits on the third party); ECA, Opp'n Ex. 5. The ECA does, however, confer third-party enforcement rights upon SkyPower's lenders, indicating that the drafters of the document knew how to confer third-party rights when they wished to do so. ECA, Opp'n Ex. 5 § 10.01.

"[D]ismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant, … or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant." *Newport Global*, 2014 Bankr. LEXIS 2666 at *11 (citing *Subaru*, 425 F.3d at 124). Here, there clearly is no manifest intent to grant third-party beneficiary rights to the Minority Shareholders anywhere on the face of the ECA, and the Minority Shareholders have presented no plausible argument that the parties otherwise intended to confer such rights on them.

## <u>CONCLUSION</u>

For the reasons stated, the Objection is sustained. LBHI is directed to submit a proposed order consistent with this Memorandum Decision.

IT IS SO ORDERED.

Dated:  August 19, 2014
New York, New York

/s/ Shelley C. Chapman_____
UNITED STATES BANKRUPTCY JUDGE
