# *Mortgage Experts*

August 13, 2014

Mr. Adam Bialek
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Ms. Brittany Smith
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Mr. Fletcher Strong
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Residential Claims Team
Lehman Brothers Holdings Inc.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Honorable Shelley C. Chapman
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: **Case No. 08-13555** (SCC) Mortgage Experts, LBH Loan number 36257533 410 Acacia Avenue, Manteca, CA 95336

Dear Mr. Bialek, Ms. Smith, Mr. Strong, Residential Claims team and Honorable Judge Chapman,

I appreciate your help.

**I have been requesting the Mortgage Express loan File, Mortgage Broker Agreement and associated documents since July 30, 2014 (see attached copy of four emails send and telephone conversations with Mr. Adam Bialek and Mr. Fletcher Strong. I have sent these four emails and will send this letter by both email and certified mail (my fifth request).**

**2647 Pleasant Hill Road, Pleasant Hill, CA 94523 Office 925.818.8081**

I have not received any documents or agreements or an acknowledgement of my emails.

**I again formally request the acknowledgement of these five emails and this certified letter that these documents be sent by email and United Parcel Service express mail.**

I have received the letter dated August 1, 2014 that was delivered by two day United Parcel Service on August 2, 2014. This letter noted LBH loan number 36257533 for 410 Acacia Avenue, Manteca, CA 95336 was the only file noted in Case No. 08-13555

I have obtained copies of the recorded documents that relate to this address (see summary below and the documents attached):

> 8/26/2005 Grant Deed Jared B. Cook to Maureen So
> 8/26/2005 Interspousal Transfer Deed Noe Lazo to Maureen So
> 8/26/2005 Deed of Trust Maureen So, a married woman as her sole and separate property to Lehman Brothers Bank, FSB
> 8/26/2005 Deed of Trust and Request for Notice of Default
> 3/9/2009 Notice of Default and Election to Sell under Deed of Trust
> 6/5/2009 Notice of Trustee's Sale
> 7/3/2009 Trustee's Deed upon Sale Quality Loan Service Corporation grants to Aurora Loan Services LLC

The initial documents were recorded on 8/26/2005 (over eight years and eleven months ago).  The Notice of Default and Election to Sell under Deed of Trust was recorded on 3/9/2009 (over five years and five months ago).

The statute of Limitations has passed regarding any action against Mortgage Experts (see attached copy of United State District Court Southern District of New York – Lehman XS Trust, Series 2006-4N v Greenpoint Mortgage Funding, Inc.).

We deny the demand based on the statute of limitations and on the lack of providing the information requested above.

This matter should be dismissed.

Sincerely,

Stephen R. Williams
President

# LEHMAN BROTHERS HOLDINGS, INC.

August 1, 2014

**VIA UPS DELIVERY**

Mortgage Experts
2647 Pleasant Hill Road
Pleasant Hill, CA 94523

Re:    **Demand for Payment**

Dear Sir or Madam,

I write on behalf of the Bankruptcy Estate of Lehman Brothers Holdings Inc. ("LBHI") in connection with the enforcement of (i) Broker Agreement made by and between Lehman Brothers Bank, FSB, and Mortgage Experts (the "Broker"), dated as of September 2, 2005 (the "Broker Agreement"), and the incorporated Lender's Guidelines, and (ii) the Assignment Agreement between Aurora Banks FSB (formerly known as Lehman Brothers Bank, FSB) ("Lehman Bank") and LBHI, dated as of June 25, 2010 (the "Assignment Agreement").

In sum, pursuant to the Broker Agreement, the Broker submitted to Lehman Bank application packages for residential mortgage loans, which were accepted and funded to create the loan(s) identified in Schedule A (the "Loan(s)"). Lehman Bank subsequently sold the Loan(s) to LBHI and assigned to LBHI its contractual rights with respect to the Loan(s), including its rights to indemnification. With respect to the Loan(s), the Broker breached representations, warranties and covenants and other provisions of the contracts. LBHI seeks to recover on claims it allowed in its bankruptcy with respect to the Loan(s) as a result of those breaches.

More specifically, with respect to the application packages provided by Broker to Lehman Bank under the Broker Agreement, Broker made a number of representations, warranties and covenants concerning the Loan(s) set forth in Schedule A. The Loan(s) did not satisfy those representations, warranties and covenants set forth in the Broker Agreement. See Schedule A. As a result of Broker's breaches, LBHI has allowed loan level claims in its bankruptcy and been damaged in an amount equal to the amount set forth in Schedule A (the "Disputed Amount").

As such, LBHI hereby demands that Broker immediately pay LBHI the Disputed Amount. The Disputed Amount must be paid no later than thirty (30) days after receipt of this demand notice by wire transfer to the following account:

Bank: _____
Account Name: _____
Account Number: _____
ABA Number: _____

Please note that LBHI is prepared to pursue its rights to address the Broker's breaches of the Broker Agreement in the event that payment is not received within thirty days. Indeed, if payment is not received or a mutually acceptable resolution reached between LBHI and Broker, LBHI will immediately commence Court ordered mediation in New York. A copy of the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers, dated June 24, 2014 (the "Order"), is enclosed. Moreover, if resolution is not reached, LBHI will seek, in addition to the Disputed Amount: (i) prejudgment interest on the Disputed Amount at the statutory rate (9%); and (ii) its reasonable attorneys' fees incurred in forcing Broker's indemnification obligations. Finally, if mediation is required, pursuant to the Order, the Broker will be responsible for one half of the fees and costs charged by the mediator.

Please be guided accordingly.

Nothing in this letter shall be deemed to constitute a waiver by LBHI of any rights and remedies that LBHI may have against the Broker under the Agreements, at law, in equity or otherwise, all of which are expressly reserved.

Any question you may have regarding this matter should be directed to the undersigned. I look forward to your prompt response.

Very truly yours,

Residential Claims Team
Lehman Brothers Holdings Inc.
claims@lehmanholdings.com

Enclosures

| LB Loan # | Seller Loan # | Property Address | City | State | Zip | Claim Reason 1 | Claim Reason 2 | Disputed Amount |
|---|---|---|---|---|---|---|---|---|
| 36257533 | 36257533 | 410 ACACIA AVENUE | MANTECA | CA | 95336 | MISREP - INCOME/EMPLOY | | $296,974.19 |

Schedule A

## Stephen R. Williams

| | |
|---|---|
| **From:** | Stephen R. Williams |
| **Sent:** | Thursday, August 07, 2014 1:49 PM |
| **To:** | 'fletcher.strong@wmd-law.com' |
| **Cc:** | 'a.biakek@wmd-law.com'; 'bsmith@wmd-law.com' |
| **Subject:** | FW: 4th Request request for Mortgage Expert loan files and associated documents - please confirm receipt of these emails |

Hello Fletcher,

I appreciate your help.

It was nice speaking with you earlier. Please confirm your receipt of this email and see my previous comments below.

Thank you,

Stephen R. Williams
Diablo View Realtors/ CRH Group
   Incorporated since 1979
Broker Owner / Realtor
(925) 818.8081  I  Direct
(925) 401.0999  I  eFax
BRE#: 00511589
Steve.williams@dvpca.com
www.diabloviewrealtors.com

**From:** Stephen R. Williams [mailto:steve.williams@dvpca.com]
**Sent:** Sunday, August 03, 2014 8:17 PM
**To:** a.biakek@wmd-law.com
**Cc:** bsmith@wmd-law.com
**Subject:** RE: Third request for Mortgage Expert loan files and associated documents - please confirm receipt of these emails

August 3, 2014

Mr. Adam Bialek
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Ms. Britiny Smith
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Dear Mr. Bialek and Ms. Smith,

Please confirm receipt of these three emails.

Please forward these files (if any).

Thanks again,


Stephen R. Williams
Mortgage Exprerts
2647 Pleasant Hill Road
Pleasant Hill, CA 94523


925.818.8081
NMLS 348589

**From:** Stephen R. Williams [mailto:steve.williams@dvpca.com]
**Sent:** Wednesday, July 30, 2014 5:04 PM
**To:** 'a.biakek@wmd-law.com'
**Cc:** 'bsmith@wmd-law.com'
**Subject:** Second request for Mortgage Expert loan files and associated documents

July 30, 2014

Mr. Adam Bialek
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Dear Mr. Bialek,

I appreciate your help.

We talked on the phone a few weeks back and you promised to send me information on the specific loans that your firm believes were related to Mortgage Experts.

I have not received any correspondence and request these files be forwarded within in the next two weeks.

Thanks again,

Stephen R. Williams
Mortgage Experts
2647 Pleasant Hill Road
Pleasant Hill, CA 94523


925.818.8081
NMLS 348589

RECORDING REQUESTED BY:
Fidelity National Title Company
Escrow No.: 05-244687-KZ
Locate No.: CAFNT0939-0907-0001-0000432549
Title No.: 05-432549-JS

When Recorded Mail Document
and Tax Statement To:
Mrs. Maureen F. So
410 Acacia Avenue
Manteca, CA 95336

**DOC # 2005-212221**
08/26/2005 07:43A Fee:10.00
Page 1 of 2 Doc T Tax Paid
Recorded in Official Records
County of San Joaquin
GARY W. FREEMAN
Assessor-Recorder-County Clerk
Paid by FIDELITY NATL TITLE INS CO

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 217-240-02

## GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $ 357.90

- [ X ] computed on full value of property conveyed, or
- [ ] computed on full value less value of liens or encumbrances remaining at time of sale,
- [ ] Unincorporated Area    City of Manteca,

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** Jared B. Cook, an unmarried man

**hereby GRANT(S) to** Maureen So, a married woman as sole and separate property

**the following described real property in the** City of **Manteca**, County of **San Joaquin**, State of **California**:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED: August 19, 2005

_Jared B. Cook_
Jared B. Cook

STATE OF CALIFORNIA
COUNTY OF San Joaquin
ON August 23, 2005 _____ before me,
the undersigned Notary Public _____ personally appeared
JARED B. COOK

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.

Signature _Patrick J. Bill_

PATRICK J. BILL
Commission # 1493295
Notary Public - California
San Joaquin County
My Comm. Expires Jun 1, 2008

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

FD-213 (Rev 7/96)
(grant)(04-05)

GRANT DEED

Escrow No.: 05-244687-KZ
Locate No.: CAFNT0939-0907-0001-0000432549
Title No.: 05-432549-JS

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF MANTECA, COUNTY OF SAN JOAQUIN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Thast portion of Lot 8 in Block 1, as shown on that certain Map entitled, BURGESS ADDITION TO THE TOWN OF MANTECA, filed for record April 17, 1919 in Book 9 of Maps and Plats, Page 27, San Joaquin County Records., described as follows:

Beginning at a point which bears South 0 degrees 30' East 150 feet and South 89 degrees 30' West, 164.39 feet from the Northeast corner of said lot; thence continuing South 89 degrees 30' West, 120 feet to the West line of said lot; thence North 2 degrees 27' West along said West line 65.04 feet; thence North 89 degrees 30' East, 120 feet; thence South 2 degrees 27' East 65.04 feet to the point of beginning.

Note: Said land and other land is shown on Map of Survey filed April 12, 1965 in Vol. 13 of Book of Surveys, Page 250, San Joaquin County Records.

Initials: _____

**RECORDING REQUESTED BY:**
Fidelity National Title Company
Escrow No.: 05-244687-KZ
Locate No.: CAFNT0939-0907-0001-0000432549
Title No.: 05-432549-JS

**When Recorded Mail Document
and Tax Statement To:**
Maureem So
410 Acacia Avenue
Manteca, CA  95336

DOC # 2005-212222
08/26/2005 07:43A Fee:10.00
Page 1 of 2
Recorded in Official Records
County of San Joaquin
GARY W. FREEMAN
Assessor-Recorder-County Clerk
Paid by FIDELITY NATL TITLE INS CO

APN: 217-240-02                                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

# INTERSPOUSAL TRANSFER DEED
(Excluded from reappraisal under California Constitution Article 13 A Section 1 et seq.)

The undersigned grantor(s) declare(s)

Documentary transfer tax is $ 0.00      City Tax is $ 0.00

[  ]  Unincorporated area: [  ] City of **Manteca**

This is an Interspousal Transfer and not a change in ownership under Section 63 of the Revenue and Taxation Code and Grantor(s) has (have) checked the applicable exclusion from reappraisal:

- A creation, transfer, or termination, solely between spouses, of any co-owner's interest.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Noe Lazo, spouse of the grantee** hereby GRANT(S) to **Maureen So, a married woman, as her sole and separate property**

the real property in the City of **Manteca**, County of **San Joaquin**, State of **California**:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

The grantor is executing this instrument for the purpose of relinquishing all of grantor's rights, title and interest, including, but not limited to, any community property interest in and to the land described herein and placing title in the name of the grantee as his/her separate property.

DATED:  August 22, 2005

STATE OF CALIFORNIA
COUNTY OF __Contra Costa__
ON __8/22/05__ before me,
__the undersigned Notary Public__ personally appeared
__Noe Lazo__

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_____
Noe Lazo

KAREN L. ZOOK
COMM. # 1317793
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
COMM. EXP. AUG. 29, 2005

Witness my hand and official seal.

Signature __Karen L. Zook__

MAIL TAX STATEMENT AS DIRECTED ABOVE

UD-13C (Rev 12/95)                    INTERSPOUSAL TRANSFER DEED
(intrspsl)(04-05)

Escrow No.: 05-**244687**-KZ
Locate No.: CAFNT0939-0907-0001-0000432549
Title No.: 05-**432549**-JS

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF MANTECA, COUNTY OF SAN JOAQUIN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Thast portion of Lot 8 in Block 1, as shown on that certain Map entitled, BURGESS ADDITION TO THE TOWN OF MANTECA, filed for record April 17, 1919 in Book 9 of Maps and Plats, Page 27, San Joaquin County Records., described as follows:

Beginning at a point which bears South 0 degrees 30' East 150 feet and South 89 degrees 30' West, 164.39 feet from the Northeast corner of said lot; thence continuing South 89 degrees 30' West, 120 feet to the West line of said lot; thence North 2 degrees 27' West along said West line 65.04 feet; thence North 89 degrees 30' East, 120 feet; thence South 2 degrees 27' East 65.04 feet to the point of beginning.

Note: Said land and other land is shown on Map of Survey filed April 12, 1965 in Vol. 13 of Book of Surveys, Page 250, San Joaquin County Records.

Branch :F41,User :AT09                                    Comment:

44

100025440002636444
0036257533

Recording Requested By:   FIDELITY NATIONAL TITLE
3100 OAK ROAD, STE 100 , WALNUT CREEK, CA 94597

DOC # 2005-212223
DOC # 2005-212223 Fee:72.00
08/26/2005 07:43A
Page 1 of 22
Recorded in Official Records
County of San Joaquin
GARY W. FREEMAN
Assessor-Recorder-County Clerk
Paid by FIDELITY NATL TITLE INS CO

Return To:   AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

Prepared By:   SERGIO GUERRERO
LEHMAN BROTHERS BANK
18200 VON KARMAN, #700
IRVINE, CA 92612

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN   100025440002636444

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   August 18, 2005
together with all Riders to this document.
(B) "Borrower" is   MAUREEN SO , A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower's address is   410 ACACIA AVENUE
MANTECA, CALIFORNIA 95336   . Borrower is the trustor under this Security Instrument.
(C) "Lender" is   LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

Lender is a                                    UNITED STATES
organized and existing under the laws of

CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

-6A(CA) (0207)
Page 1 of 15                    Initials: MS

VMP MORTGAGE FORMS - (800)521-7291

100025440002636444
0036257533

Lender's address is   **18200 VON KARMAN, #250 , IRVINE, CA 92612**

(D) "Trustee" is   **FIDELITY NATIONAL TITLE**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **August 18, 2005**
The Note states that Borrower owes Lender
**TWO HUNDRED FIFTY NINE THOUSAND NINE HUNDRED TWENTY & 00/100**          Dollars
(U.S. $       **259,920.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than        **September 1, 2035**        .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | PREPAY/ |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: **MS**

-6A(CA) (0207)                    Page 2 of 16                              Form 3005  1/01

100025440002636444
0036257533

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                                  of   San Joaquin                        :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.

Parcel ID Number:   217-240-02                              which currently has the address of
410 ACACIA AVENUE                                                                      [Street]
MANTECA                                          [City] , California    95336    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-SA(CA)  (0207)                        Page 3 of 16                Initials: _MS_                Form 3005  1/01

100025440002636444
0036257533

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

100025440002636444
0036257533

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

Initials: MS

-6A(CA) (0207)              Page 6 of 15                          Form 3005  1/01

Branch :F41,User :AT09                                                          Comment:

100025440002636444
0036257533

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: MS

-6A(CA) (0207)                          Page 6 of 15                          Form 3005  1/01

100025440002636444
0036257533

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)                    Page 7 of 16          Initials: MS                  Form 3005  1/01

100025440002636444
0036257533

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

-6A(CA) (0207)                          Page 8 of 15                  Initials: MS                Form 3005  1/01

100025440002636444
0036257533

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

Initial: __MS__

-6A(CA) (0207)                         Page 9 of 15                                     Form 3005  1/01

10002544000263644
0036257533

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

Initials: MS

-6A(CA) (0207)                    Page 10 of 15                    Form 3005   1/01

100025440002636444
0036257533

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207)                    Page 11 of 15                 Initials: _MB_                Form 3005  1/01

100025440002636444
0036257533

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Branch :F41,User :AT09                                                        Station Id :WDL2

100025440002636444
0036257533

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _MC_

-6A(CA) (0207)                    Page 13 of 15                    Form 3005  1/01

100025440002636444
0036257533

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        MAUREEN SO              -Borrower

_____        _____ (Seal)
                                                                -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                                -Borrower

-SA(CA) (0207)              Page 14 of 16              Form 3005  1/01

100025440002636444
0036257533

State of California
County of Contra Costa          } ss.

On  8/19/05          before me,  Karen L. Zook          personally appeared

— Maureen So —

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Karen _____ (Seal)

KAREN L. ZOOK
COMM. # 1317793
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
COMM. EXP. AUG. 29, 2005

-6A(CA)  (0207)                    Page 15 of 15          Initials: / NS          Form 3005   1/01

Branch :F41,User :AT09                                          Comment:                                          Station Id :VOL2

100025440002636444
0036257533

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 18th day of August, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**LEHMAN BROTHERS BANK, FSB**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

410 ACACIA AVENUE, MANTECA, CALIFORNIA 95336

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 6.125 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of September , 2010 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 25 HUNDREDTHS percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL )** - Single Family - Fannie Mae Uniform Instrument

VMP®-838R (0402)    **Form 3138 1/01**
Page 1 of 3        Initials: X  MS
VMP Mortgage Solutions, Inc.
(800)521-7291

Branch :F41,User :AT09

100025440002636444
0036257533

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.125** % or less than **2.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points ( **2.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **12.125** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: _X̶ MS_

-838R (0402)                    Page 2 of 3                    Form 3138 1/01

100025440002636444
0036257533

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
MAUREEN SO       -Borrower                     -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                     -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                     -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                     -Borrower

VMP-838R (0402)          Page 3 of 3          Form 3138 1/01

Branch :F41,User :AT09                     Comment:                              Station Id :WH12

100025440002636444
0036257533

# PREPAYMENT RIDER
## *(Multi-state)*

This Prepayment Rider is made this 18th day of **August, 2005** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **LEHMAN BROTHERS BANK, FSB** (the "Lender") of the same date and covering the property described in the Security Instrument and located at **410 ACACIA AVENUE MANTECA, CALIFORNIA 95336** (the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

**If, within the 3 -year period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 0 year(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)          _____ (Seal)
Borrower    **MAUREEN SO**                                   Borrower

_____ (Seal)          _____ (Seal)
Borrower                                               Borrower

603B2                               page 1 of 1                           11/15/99
ALSB2M1

100025440002636444
0036257533

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made **August 18 , 2005**                    and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**410 ACACIA AVENUE , MANTECA , CALIFORNIA 95336**

**AMENDED PROVISIONS**
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **12.125**% or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **12.125** %. My interest rate will never be less than **2.250** %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

| | |
|---|---|
| Witness | X _____ |
| _____ | **MAUREEN SO** |
| Date | |
| _____ | _____ |
| Date | |
| _____ | _____ |
| Date | |
| _____ | |
| Date | |

DIS0221
1202  LIBOR Addendum to Rider

1/01

Branch :F41,User :AT09                                      Comment:

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: 0036257533

PROPERTY ADDRESS: 410 ACACIA AVENUE
MANTECA, CALIFORNIA 95336

THIS ADDENDUM is made this 18th day of August , 2005           and is incorporated
into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to
LEHMAN BROTHERS BANK, FSB, 18200 VON KARMAN, #250, IRVINE, CA 92612
                                                                    (the Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the
Note are changed by this Addendum.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
      (C)  Calculation of Changes
            Before each Change Date, the Note Holder will calculate my new interest rate by
adding 2.25            percentage point(s) ( 2.25 %) to the Current Index for such
Change Date. The Note Holder will then round the result of this addition to the nearest one-
eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date.

            During the Interest-Only Period, the Note Holder will then determine the amount of
the monthly payment that would be sufficient to repay accrued interest. This will be the
amount of my monthly payment until the earlier of the next Change Date or the end of the
Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I
make a voluntary prepayment of principal during the Interest-Only Period, my payment amount
for subsequent payments will be reduced to the amount necessary to pay interest at the then
current interest rate on the lower principal balance. At the end of the Interest-Only Period and
on each Change Date thereafter, the Note Holder will determine the amount of the monthly
payment that would be sufficient to repay in full the unpaid principal that I am expected to owe
at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly
payments over the remaining term of the Note. The result of this calculation will be the new
amount of my monthly payment. After the end of the Interest-Only Period, my payment
amount will not be reduced due to voluntary prepayments.

Dated: 8|19|05 _____              X  _____
                                               MAUREEN SO

                                            _____

                                            _____

                                            _____

DIS0291                        page 1 of 1                           1/01
Form 603F

Branch :F41,User :AT09

Escrow No.: 05-**244687**-KZ
Locate No.: CAFNT0939-0907-0001-0000432549
Title No.: 05-**432549**-JS

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF MANTECA, COUNTY OF SAN JOAQUIN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Thast portion of Lot 8 in Block 1, as shown on that certain Map entitled, BURGESS ADDITION TO THE TOWN OF MANTECA, filed for record April 17, 1919 in Book 9 of Maps and Plats, Page 27, San Joaquin County Records., described as follows:

Beginning at a point which bears South 0 degrees 30' East 150 feet and South 89 degrees 30' West, 164.39 feet from the Northeast corner of said lot; thence continuing South 89 degrees 30' West, 120 feet to the West line of said lot; thence North 2 degrees 27' West along said West line 65.04 feet; thence North 89 degrees 30' East, 120 feet; thence South 2 degrees 27' East 65.04 feet to the point of beginning.

Note: Said land and other land is shown on Map of Survey filed April 12, 1965 in Vol. 13 of Book of Surveys, Page 250, San Joaquin County Records.

Exhibit Page - Legal(exhibit)(8-02)

Branch :F41,User :AT09                              Comment:

45

Recording Requested By:                            100025440002636550
                                                   0036258853

Return To:                                         DOC # 2005-212224
                                                   08/25/2005 07:43A Fee:42.00
          AURORA LOAN SERVICES, LLC                         Page 1 of 9
          601 5th Ave, PO Box 4000                 Recorded in Official Records
          Scottsbluff, NE 69363                       County of San Joaquin
                                                         GARY W. FREEMAN
                                                   Assessor-Recorder-County Clerk
Prepared By:                                       Paid by FIDELITY NATL TITLE INS CO
          SERGIO GUERRERO
          18200 VON KARMAN, #700
          IRVINE, CA 92612

---

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

    THIS DEED OF TRUST is made this    18    day of   August, 2005   , among the Trustor,
MAUREEN SO , A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

whose address is
        410 ACACIA AVENUE MANTECA, CALIFORNIA 95336                    (herein "Borrower"),

    FIDELITY NATIONAL TITLE                        (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

    LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK              ("Lender") is organized and
existing under the laws of          UNITED STATES                             , and has an address of
        18200 VON KARMAN, #250, IRVINE, CA 92612
    BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys
to Trustee, in trust, with power of sale, the following described property located in the County of
        San Joaquin          , State of California:

    All that tract or parcel of land as shown on Schedule "A" attached
    hereto which is incorporated herein and made a part hereof.

                                                        which has the address of
        410 ACACIA AVENUE                                                  [Street]
    MANTECA             [City] , California    95336    [ZIP Code] (herein "Property Address");

CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

VMP -76N(CA) (0307)              Form 3805
®                               Amended 9/99
Page 1 of 7                      Initials: X MS
        VMP Mortgage Solutions (800)521-7291

100025440002636550
0036258853

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **August 18 , 2005**                    and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ **64,980.00**                , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **September first, 2020**            ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

-76N(CA) (0307)                              Page 2 of 7                              Initials: MS    **Form 3805**

100025440002636550
0036258853

Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict

Initials: MS

Form 3805

-76(CA) (0207)        Page 3 of 7

Branch :F41,User :AT09

100025440002636550
0036258853

shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such

VMP®-76N(CA) (0007)

Initials: _MS_    Form 3805

10002544002636550
0036258853

action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

  **Rider Attached**

**REQUEST FOR NOTICE OF DEFAULT**

**AND FORECLOSURE UNDER SUPERIOR**

**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded    8/26/05                        , in Book
                        , Page            , records of    San Joaquin  2005              County, or filed for
record with recorder's serial number                          ,    212224              County,
California, executed by
  MAUREEN SO , A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY


as trustor (or mortgagor) in which                                                                        is named

as beneficiary (or mortgagee) and

  FIDELITY NATIONAL TITLE                                                                    as trustee

be mailed to
at
  AURORA LOAN SERVICES, LLC
  601 5th Ave, PO Box 4000
  Scottsbluff, NE 69363


Initials: **MS**
                                                    **Form 3805**

-76N(CA) (0307)                                Page 6 of 7

100025440002636550
0036258853

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

State of California
County of Contra Costa
On 8|19|05 , before me Karen Book , personally appeared

—Maureen So— , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)          _____ (Seal)
MAUREEN SO              -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                    -Borrower

[Sign Original Only]

VMP-76N(CA) (0307)              Page 6 of 7                          Form 3805

Branch :F41,User :AT09

100025440002636550
0036258853

State of California
County of Contra Costa
On 8/19/05                  , before me Karen L. Zook                  , personally appeared

— Maureen So —                                        , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Karen L. Zook

KAREN L. ZOOK
COMM. # 1317793
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
COMM. EXP. AUG. 29, 2005

KAREN L. ZOOK
COMM. # 1317793
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
COMM. EXP. AUG. 29, 2005

Initials: MS
Form 3805

VMP-76N(CA)  (0307)                    Page 7 of 7

100025440002636550
0036258853

# BALLOON RIDER
## SECOND MORTGAGE

This Balloon Rider is made this **18th** day of **August, 2005** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to

**LEHMAN BROTHERS BANK, FSB**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at

**410 ACACIA AVENUE
MANTECA, CALIFORNIA 95336**

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____(Seal)                    _____(Seal)
MAUREEN SO

_____(Seal)                    _____(Seal)

_____(Seal)                    _____(Seal)

_____(Seal)                    _____(Seal)

Form 651                             page 1 of 1                              5/1/01
DIS0681

Branch :F41,User :AT09                                                    Comment:                                          Station Id :WEL2

Escrow No.: 05-**244687**-KZ
Locate No.: CAFNT0939-0907-0001-0000432549
Title No.: 05-**432549**-JS

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF MANTECA, COUNTY OF SAN JOAQUIN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Thast portion of Lot 8 in Block 1, as shown on that certain Map entitled, BURGESS ADDITION TO THE TOWN OF MANTECA, filed for record April 17, 1919 in Book 9 of Maps and Plats, Page 27, San Joaquin County Records., described as follows:

Beginning at a point which bears South 0 degrees 30' East 150 feet and South 89 degrees 30' West, 164.39 feet from the Northeast corner of said lot; thence continuing South 89 degrees 30' West, 120 feet to the West line of said lot; thence North 2 degrees 27' West along said West line 65.04 feet; thence North 89 degrees 30' East, 120 feet; thence South 2 degrees 27' East 65.04 feet to the point of beginning.

Note:  Said land and other land is shown on Map of Survey filed April 12, 1965 in Vol. 13 of Book of Surveys, Page 250, San Joaquin County Records.

Exhibit Page - Legal(exhibit)(8-02)

SAN JOAQUIN (SJ),CA                          Page 9 of 9                          Printed on 8/7/2014 6:02:51 PM
Document: DOT 2005.212224

Doc #: 2009-034537
Tue Mar 03 09:35:03 PST 2009
Page: 1 of 2   Fee: $13.00
Kenneth W. Blakemore
San Joaquin County Recorders
Paid By: TITLE COURT SERVICE

. Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

Space above this line for Recorder's use

TS No.: **CA-09-255601-CL**          Loan No.: **0036257533**

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$15,936.83** as of 3/2/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Aurora Loan Services**
**C/O Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711**

TS No.: CA-09-255601-CL
Loan No.: 0036257533
**Notice of Default and Election To Sell Under Deed of Trust**

    If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

    NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 8/18/2005, executed by MAUREEN SO, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB , as beneficiary, recorded 8/26/2005, as Instrument No. 2005-212223, in Book XXX, Page XXX of Official Records in the Office of the Recorder of  SAN JOAQUIN County, California describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $259,920.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 9/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

    That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

    The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 3/2/2009

**Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
BY: ServiceLink-Irvine

_____  Authorized Agent
Juanita Wise

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Recording requested by:
Quality Loan Service Corp.

**ServiceLink**

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

Doc #: 2009-084488
Fri Jun 05 09:04:27 PDT 2009
Page: 1 of 2   Fee: $11.00
Kenneth W Blakemore
San Joaquin County Recorders
Paid By: SPL EXPRESS

TS # CA-09-255601-CL          Loan # 0036257533          SPACE ABOVE THIS LINE FOR RECORDER'S USE

# 101916

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 8/18/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **MAUREEN SO, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Recorded:       8/26/2005 as Instrument No. 2005-212223 in book XXX, page XXX of Official Records in the office of the Recorder of SAN JOAQUIN County, California;

Date of Sale:    **6/24/2009 at 10:00 AM**
Place of Sale:   **At the East Weber Avenue entrance to the County Courthouse, 222 East Weber Avenue, Stockton, CA 95201**
Amount of unpaid balance and other charges: **$282,388.48**
The purported property address is:   **410 ACACIA AVE**
                                      **MANTECA, CA 95336**

Assessors Parcel No. 217-240-02

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

Date: 6/4/2009          Quality Loan Service Corp.
                        2141 5th Avenue
                        San Diego, CA 92101
                        619-645-7711 For NON SALE information only
                        Sale Line: 714-730-2727 or Login to: www.fidelityasap.com
                        Reinstatement Line: 619-645-7711

Quality Loan Service Corp. by: Adriana Banuelos, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Doc #: 2009-099313
Fri Jul 03 08:14:36 PDT 2009
Page: 1 of 2  Fee: $11.00
Kenneth W Blakemore
San Joaquin County Recorders
Paid By: SUNG PAPPAS & LAGMAN EXPRESS INC.

Trustee's Deed Upon Sale
1 | Page

Recording requested by:
ServiceLink

When recorded mail to:

Aurora Loan Services
327 South Inverness Drive
Englewood, CO 80112

Forward tax statements to the address given above

*Deed of Trust in 1st position*

Space above this line for recorders use

TS # CA-09-255601-CL          Order # 101916          Loan # 0036257533

# Trustee's Deed Upon Sale

A.P.N.: **217-240-02**                          Transfer Tax: **$0.00**

The undersigned grantor declares:
The grantee herein **IS** the foreclosing beneficiary.
The amount of the unpaid debt together with costs was:     **$291,268.87**
The amount paid by the grantee at the trustee sale was:     **$291,268.87**
The documentary transfer tax is:                            None
Said property is in the City of:  MANTECA, County of SAN JOAQUIN

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**Aurora Loan Services LLC**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of  SAN JOAQUIN, State of California, described as follows:
THAT PORTION OF LOT 8 IN BLOCK 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED, BURGESS ADDITION TO THE TOWN OF MANTECA, FILED FOR RECORD APRIL 17, 1919 IN BOOK 9 OF MAPS AND PLATS, PAGE 27, SAN JOAQUIN COUNTY RECORDS, DESCRIBED AS FOLLOWS: BEGINNING AT A POINT WHICH BEARS SOUTH 0 DEGREES 30' EAST 150 FEET AND SOUTH 89 DEGREES 30' WEST, 164.39 FEET FROM THE NORTHEAST CORNER OF SAID LOT: THENCE CONTINUING SOUTH 89 DEGREES 30' WEST, 120 FEET TO THE WEST LINE OF SAID LOT: THENCE NORTH 2 DEGREES 27' WEST ALONG SAID WEST LINE 65.04 FEET: THENCE NORTH 89 DEGREES 30' EAST, 120 FEET: THENCE SOUTH 2 DEGREES 27' EAST 65.04 FEET TO THE POINT OF BEGINNING. NOTE: SAID LAND AND OTHER LAND IS SHOWN ON MAP OF SURVEY FILED APRIL 12, 1965 IN VOL. 13 OF BOOK OF SURVEYS, PAGE 250, SAN JOAQUIN COUNTY RECORDS.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by  MAUREEN SO, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as trustor, dated 8/18/2005, and recorded on 8/26/2005 as instrument number 2005-212223, in Book XXX, Page XXX of Official Records in the

SAN JOAQUIN (SJ),CA                   Page 1 of 2           Printed on 8/7/2014 6:02:50 PM
Document: DOT FCL 2009.99313

Branch :F41,User :AT09                                                                                      Station Id :WL12

Trustee's Deed Upon Sale
2 : Page
office of the Recorder of **SAN JOAQUIN**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 3/3/2009, instrument no 2009-034537, Book , Page , of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **6/24/2009** at the place named in the Notice of Sale, in the County of **SAN JOAQUIN**, California, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$291,268.87** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date: 6/25/2009                        **QUALITY LOAN SERVICE CORPORATION**

By: _____
        Karla Sanchez, Assistant Secretary

State of California    )
County of San Diego )

On **6/30/09** before me, **Michelle Nguyen** a notary public, personally appeared **Karla Sanchez**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
        **Michelle Nguyen**

MICHELLE NGUYEN
COMM. #1665032
NOTARY PUBLIC ● CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. MAY 8, 2010

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

SAN JOAQUIN (SJ),CA                        Page 2 of 2                        Printed on 8/7/2014 6:02:50 PM
Document: DOT FCL 2009.99313

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LEHMAN XS TRUST, SERIES 2006-4N, by
U.S. BANK NATIONAL ASSOCIATION,
solely in its capacity as Trustee,

               Plaintiff,

   - against -

GREENPOINT MORTGAGE FUNDING,
INC.,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/10/14

 

<u>OPINION AND ORDER</u>

13 Civ. 4707 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Plaintiff U.S. Bank National Association (the "Trustee"), as

Trustee for Lehman XS Trust, Series 2006-4N (the "Trust"), brings this

diversity action for breach of contract against GreenPoint Mortgage

Funding, Inc. ("GreenPoint").[1] GreenPoint moves to dismiss all claims as

time-barred.[2] For the following reasons, GreenPoint's motion to dismiss is

---

[1]     This Court has subject matter jurisdiction under 28 U.S.C. § 1332
because complete diversity of citizenship exists between the parties and the amount
in controversy exceeds $75,000. *See* Complaint ("Compl.") ¶ 12.

[2]     While the Trust also brought an indemnity claim against GreenPoint,
it later stated that "Plaintiff will not oppose GreenPoint's separate motion to
dismiss the contractual claim for indemnification." Plaintiff's Reply to

granted.

## II.    BACKGROUND

Lehman Brothers Bank, FSB ("Lehman") bought groups of residential

mortgage loans from GreenPoint and Countrywide Home Loans, Inc.

("Countrywide") in 2006, pursuant to a Flow Mortgage Loan Purchase and

Warranties Agreement executed on December 12, 2001 (the "Purchase

Agreement").[3] Through a series of assignments, these loans were ultimately

deposited into the Trust, securitized and issued in the form of certificates (the

"Certificates") and sold to investors (the "Certificateholders").[4] The Trust is

collateralized by 4,001 mortgage loans with an original principal balance of over

$1.3 billion, of which nearly 2,700 loans were originated by GreenPoint (the

"Loans").[5] The Trust Agreement (the "Trust Agreement") assigned the Trustee all

of the right, title, and interest in the Loans for the Certificateholders' benefit,

including the right to bring the present action to enforce GreenPoint's obligations

---

Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss
("Opp. Mem."), at 4 n. 3.  The contractual indemnification claim is hereby
dismissed.

[3]    *See* Compl. ¶ 2.

[4]    *See id.*

[5]    *See id.* ¶ 3.

2

under the Purchase Agreement.[6]

## A.     The Purchase Agreement

### 1.     Seller Representations

Through several representations in the Purchase Agreement,

GreenPoint guaranteed the accuracy of the information that it provided regarding

the credit quality and the characteristics of the Loans (the "Seller

Representations").[7]  In relevant part, GreenPoint promised that the Purchase

Agreement does not "contain[ ] any untrue statement of fact or omits to state a fact

necessary to make the statements contained therein not misleading."[8]  GreenPoint

also affirmed that its "decision to originate any mortgage loan . . . is an

independent decision based upon [GreenPoint's] Underwriting Guidelines," and

not based on the loan "Purchaser's decision to purchase, or not to purchase . . . any

such mortgage loan, if originated."[9]

### 2.     Loan Representations

GreenPoint also guaranteed several representations regarding the

---

[6]      See Compl. ¶ 17.

[7]      See id. ¶¶ 21–22.

[8]      Flow Mortgage Loan Purchase and Warranties Agreement ("Purchase
Agreement"), Ex. A to Compl., § 6(h). See also Compl. ¶ 22.

[9]      Purchase Agreement § 6(o). See also Compl. ¶ 22.

credit quality and characteristics of the Loans (the "Loan Representations").[10] In

relevant part, GreenPoint guaranteed that it "has reviewed all of the documents

constituting the Servicing File and has made such inquiries as it deems necessary

to make and confirm the accuracy of the representations,"[11] that there is "no

default, breach, violation or event of acceleration existing under the Mortgage or

the Mortgage Note,"[12] that the "Mortgage Loan was underwritten in accordance

with . . . [GreenPoint's] Underwriting Guidelines,"[13] that GreenPoint had "no

knowledge of any circumstances or conditions" regarding the mortgages

underlying the Loans "that can reasonably be expected to cause private investors to

regard the Mortgage Loan as an unacceptable investment . . . or adversely affect

the value or marketability,"[14] and that "[n]o error, omission, misrepresentation,

negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken

place on the part of any person . . . ."[15]

---

[10]    *See* Compl. ¶ 21.

[11]    Purchase Agreement § 7(k).

[12]    *Id.* § 7(q).

[13]    *Id.* § 7(v).

[14]    *Id.* § 7(z).

[15]    *Id.* § 7(yy).

4

### 3.    Remedies for Breach of Representations

Section 8 states that if GreenPoint breaches a Representation, and it is determined that such breach "materially and adversely affects the value of the [loans] or the interest of the Purchaser"[16] (the "Breach"),  GreenPoint must either (i) cure the Breach or (ii) repurchase the affected loans within sixty days upon its own discovery or upon receiving written notice by the Trust.[17] If GreenPoint cannot cure the Breach within sixty days of either the Breach's discovery or written notice, the Trust can compel GreenPoint to repurchase all of the Loans.[18] Section 8(c) of the Purchase Agreement (the "Accrual Provision") stipulates the following:

> Any cause of action against the Seller relating to or arising out of the Breach of any representations and warranties made in Sections 6 and 7 shall accrue as to any Mortgage Loan upon (i) discovery of such Breach by the Purchaser or notice thereof by the Seller to the Purchaser, (ii) failures by the Seller to cure such Breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon the Seller by the Purchase for compliance with this Agreement.[19]

---

[16]    *Id.* § 8(b).

[17]    *See id.* § 8(c).

[18]    *See id.*

[19]    *Id.*

### B.    The Trust's Discovery of the Alleged Breaches of Representation

Upon reviewing a sample of the Loans in 2012, the Trust alleges that

it identified at least one Breach of Representation "that had a material and adverse

impact on the value of the Loans or the Certificateholders' interests therein" in

approximately eighty-two percent of loans in the reviewed sample.[20] Based on

these breaches, the Trust alleges borrower fraud, violations of GreenPoint's

underwriting guidelines, and violations of state and federal law.[21]

According to the Trust, its Master Servicer notified GreenPoint of the

alleged Breaches of Representations that it had found during its review of the

Loans.[22] The Trustees sent notices to GreenPoint on December 18, 2012 and

January 28, 2013 (the "Breach Notices"), demanding that GreenPoint repurchase

the defective loans in the event it could not cure the Breaches.[23]

GreenPoint responded to the Breach Notices on February 8, 2013,

stating that the Trust has not provided GreenPoint sufficient information to enable

it to determine whether or not there has been a Breach.[24] The Trust asserts that

---

[20]    Compl. ¶¶ 36–37.

[21]    *See id.* ¶¶ 37–53.

[22]    *See id.* ¶ 54.

[23]    *See id.*

[24]    *See id.* ¶ 55.

6

GreenPoint had no discretion to contest the Breaches, and that the sixty day "cure or repurchase" window had passed.[25]  Five months after receiving GreenPoint's response, the Trust filed this action.

## III.   APPLICABLE LAW

### A.    Statute of Limitations for Breach of Contract

The Purchase Agreement is governed by New York law.[26] Under New York law, breach of contract claims are subject to a six year statute of limitations.[27]  A breach of contract claim accrues at the time of breach, even if plaintiff does not suffer damages until a later date.[28]

CPLR § 206(a) states that "where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete." "New York courts do not instinctively apply

---

[25]     *See id.* ¶ 56–57.

[26]     *See* Purchase Agreement § 18.  The New York borrowing statute would require application of New York law even if there were no choice of law provision in the Agreement because New York's statute of limitations is shorter than Ohio's, the state where the cause of action occurred.  *See* Civil Practice Law and Rules ("CPLR") § 202

[27]     *See* CPLR § 214(3).

[28]     *See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993).

7

CPLR 206(a) in every case where a demand is a predicate to suit. Rather, they distinguish between substantive demands and procedural demands."[29]

A substantive demand is an "essential [legal] element of the plaintiff's cause of action."[30] In these cases, the statute of limitations does not begin to run until demand is made and refused.[31] By contrast, a procedural demand is "not [a] requisite element[] of the cause of action," but a mere procedural trigger to commence proceedings.[32] "[W]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the *right to make the demand* is complete."[33] The period "runs from the time when the party making the demand first becomes [legally] *entitled* to make

---

[29]    *Continental Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996).

[30]    *Id.* For example, "[d]emand upon, and refusal of, the person in possession of the chattel to return it [are] essential elements of a cause of action in replevin." *In re Peters*, 821 N.Y.S.2d 61, 65 (2006).

[31]    *See Continental Cas.*, 77 F.3d at 21.

[32]    *Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982).

[33]    *Parker v. Town of Clarkstown*, 629 N.Y.S.2d 787, 788 (2d Dep't 1995) (emphasis added).

the demand, and not from the time the actual demand is made."[34]

## IV.    DISCUSSION

### A.    The Parties' Arguments

GreenPoint argues that any alleged breach of Representations

occurred in March 2006 when the Loans were deposited into the Trust and the

parties entered into the Purchase Agreement.[35]  Because the Trust was entitled to

make the repurchase demands at that time, the statute of limitations began running

on March 2006 and expired six years later -- before the Trust filed this action in

July 2013.[36]  The Trustee counters that the Accrual Provision in § 8(c) of the

Purchase Agreement delayed the accrual of the breach of contract claim, and in

fact "*defines the breach* from which the limitations period begins to run."[37]  Under

this view, the limitations period began to run in 2013, when GreenPoint refused to

cure upon receipt of the Trust's Breach Notices.

GreenPoint responds that the sixty day notice-and-cure clause in the

---

[34]    *Woodlaurel, Inc. v. Wittman*, 606 N.Y.S.2d 39, 40 (2d Dep't 1993)
(emphasis added).

[35]    *See* Defendant's Memorandum of Law in Support of its Motion to
Dismiss the Complaint, at 7-13.

[36]    *See id.* at 7-8.

[37]    Opp. Mem. at 3 (emphasis in original).

9

Accrual Provision was merely a procedural prerequisite to the filing of a suit, and

that the substantive *right to demand relief* arose the moment when GreenPoint sold

and deposited the allegedly non-conforming Loans into the Trust in 2006.[38]

GreenPoint also argues that the Accrual Provision cannot indefinitely extend the

statute of limitations, as a matter of New York state law and policy.[39] Finally,

GreenPoint denies that its failure to repurchase the Loans under the Purchase

Agreement constitutes an independent breach of contract for statute of limitations

purposes.[40]

## B.    The Breach of Contract Claims Accrued in March 2006

"[U]nder New York law, claims which are subject to pre-suit cure or

demand requirements accrue when the underlying breach occurs, not when the

demand is subsequently made or refused."[41] This issue has been repeatedly

addressed and resolved,[42] most recently in a case from New York's intermediate

---

[38]    *See* Defendant's Reply Memorandum of Law in Support of
Defendant's Motion to Dismiss ("Reply Mem."), at 2–3.

[39]    *See id.* at 2-6.

[40]    *See id.* at 8–10.

[41]    *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB
Structured Prods., Inc.*, No. 12 Civ. 8594, 2013 WL 3863861, at *10 (S.D.N.Y.
July 24, 2013).

[42]    *See, e.g., Structured Mortg Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02
Civ. 3232, 2003 WL 548868, at *2-3 (S.D.N.Y. 2003) ("Daiwa's false warranties

10

appellate court interpreting a substantially similar contractual provision in a case with substantially similar facts.[43] In *ACE Securities v. DB Structured Produces*, a Trust purchased a pool of mortgage loans on March 1, 2006. The contract stated that "[u]pon discovery or receipt of notice of . . . any breach" that "materially or adversely affects the value of such Mortgage Loan," the Trustee had to notify the loan sponsor and request that it cure the breach.[44] If the sponsor failed to cure within the specified time period, the contract required the Trustee to "enforce the [sponsor's] obligations to . . . repurchase" the loans.[45] As in this case, the Trust in *ACE Securities* could not sue before three conditions were met – discovery, lapse

---

and representations breached the contract at its inception in March 1994 . . . [S]ince the facts warranted in the March 1994 Pooling Agreement were not true when made, the statute of limitations began to run at that time, and expired six years later. . . . [P]laintiffs are asking this Court to [impose] in contract cases where there is a demand requirement . . . the otherwise rejected accrual-at-injury rule. Plaintiffs' argument must be rejected."); *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v. Nomura Credit & Capital,Inc.*, 39 Misc. 3d 1226(A), at *9-10 (Sup. Ct. N.Y. Co. 2013) ("If the Mortgage Representations were false when made, they are still false today. . . . The Statute of Limitations runs from the time of breach of the Mortgage Representations, not from the time plaintiff elected to make demands for repurchase.").

[43]    *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 2013 WL 6670379 (1st Dep't Dec. 19, 2013), reversing 40 Misc. 3d 562 (Sup. Ct. N.Y. Co. 2013).

[44]    Pooling and Servicing Agreement § 2.03, Ex. A to Complaint, *ACE Sec. Corp. v. DB Structured Prods., Inc.*, Index No. 650980 (Sup. Ct. N.Y. Co. 2012).

[45]    *Id.*

11

of cure period and demand for repurchase. Nevertheless, the First Department held

that the [breach of contract] claims accrued on the closing date of the [Mortgage

Loan Purchase Agreement], when any breach of the representations and warranties

contained therein occurred" not when "defendant either failed to timely cure or

repurchase a defective mortgage loan."[46]

       The Trust attempts to distinguish *ACE Securities* by stating that "the

contract at issue in *ACE* did not contain a provision expressly stating the conditions

that must be satisfied before a cause of action can *accrue*."[47] That is true.

However parties may not contractually adopt an accrual provision that effectively

extends the statute of limitations before any claims have accrued.[48] In another case

---

[46]    *Id.* at *1 (citations omitted). As the Second Circuit recently stated,
federal courts applying state law "are not strictly bound by state intermediate
appellate courts, [but] will look to their decisions unless 'convinced by other
persuasive data that the highest court of the state would decide otherwise.'" *Licci
ex rel. Licci v. Lebanese Canadian Bank, SAL*, No. 10 Civ. 1306, slip. op. at 6 (2d
Cir. Jan. 9, 2014) (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237
(1940)). In the absence of contrary law from the New York Court of Appeals or
"persuasive data" that it would rule differently, I follow the First Department's
decision in *ACE Securities*.

[47]    12/20/13 Letter from Jennifer Barrett, Counsel for Plaintiff, at 1
(emphasis added). *Accord* Opp. Mem. at 24.

[48]    CPLR § 201 states that "a shorter time [may be] prescribed by written
agreement" but courts have held that parties may not contractually waive or extend
the statute of limitations indefinitely. *See, e.g., John J. Kassner & Co. v. City of
New York*, 46 N.Y.2d 544, 551 (1979) ("If the agreement to waive or extend the
Statute of Limitations is made at the inception of liability it is unenforceable

pertaining to mortgage loans, the Western District of Washington, applying New York law, held that parties "may not extend the accrual date of the statute of limitations simply by delaying its demand for payment [because a ] cause of action for breach of contract accrues when the party making the claim possesses a *legal right* to demand payment."[49]

### C.    The Accrual Provision Does Not Define a New Breach

The Accrual Provision does not define a new breach which triggers the running of a new limitation period. The Purchase Agreement clearly defines "Breach" as "a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans" and provides no other definition.[50] GreenPoint's alleged failure to comply with its cure or repurchase obligations does not give rise to a separate breach of contract at the time of refusal because "New York law . . . does not recognize pre-suit remedial provisions as constituting separate promises which can serve as the basis for

---

because a party cannot in advance, make a valid promise that a statute founded in public policy shall be inoperative.") (quotation marks and citations omitted); *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 431 (2d Cir. 2013) (holding that a plaintiff does not have "'power to put off the running of the Statute of Limitations indefinitely.'") (quotations omitted).

[49]    *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1194 (W.D. Wash. 2011) (emphasis added).

[50]    *See* Purchase Agreement §§ 8(a), 8(c); Second Reply Mem. at 2.

13

independent causes of action."[51]

The alleged underlying breach occurred when the Trust experienced a "material and adverse" effect.[52] The Trust experienced such effect when GreenPoint allegedly made untrue Representations regarding the quality and characteristics of the Loans, sold the Loans and entered into the Purchase Agreement with Lehman on March 31, 2006. The Accrual Provision is a pre-suit remedial provision that is neither an element of the breach of contract claim, nor grounds for a separate breach of contract claim. The Trust's suit is barred under New York's six-year statute of limitations and thus untimely.

## IV.    CONCLUSION

For the foregoing reasons, GreenPoint's motion to dismiss is granted. The Clerk of Court is directed to close this motion and this case.

---

[51]    *Deutsche*, 2013 WL 3863861, at *10 (citing *Hahn Auto. Warehouse, Inc. v. American Zurich Ins. Co.*, 18 N.Y.3d 765, 770–71 (2012) and *Continental Cas. Co. v. Stronghold Ins. Co., Ltd.*, 77 F.3d 16, 21 (2d Cir.1996)). *But see Federal Housing Finance Agency, as Conservator for the Federal Home Loan Mortgage Corporation, on behalf of the Trustee of the Securitized Asset Backed Receivables LLC Trust 2006-WM4 (SABR 2006WM4) v. WMC Mortgage,LLC*, No 13 Civ. 0584, Dkt. No. 53 (S.D.N.Y. Dec. 17, 2013) (denying a loan company's motion to dismiss complaint as time-barred on the ground that plaintiff pled the loan company's failure to cure as an independent breach).

[52]    Purchase Agreement §§ 8(a), 8(c).

14

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 10, 2014

15

## - Appearances -

*For Plaintiff:*

Jennifer J. Barrett, Esq.
Maya Daria Cater, Esq.
Philippe Zuard Selendy, Esq.
Sean Patrick Baldwin, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7000


*For Defendant:*

James Alwin Murphy, Esq.
Cameron S. Matheson, Esq.
Murphy & McGonigle, P.C.
4870 Sadler Road, Ste. 301
Glen Allen, VA 23060
(804) 762-5320

James K. Goldfarb, Esq.
Soren Elliot Packer, Esq.
Murphy & McGonigle, P.C.
60 East 42nd St., Ste 5230
New York, NY 10165
(212) 880-3999

Theodore R. Snyder, Esq.
Murphy & McGonigle, P.C.
One Exchange Plaza
55 Broadway, Suite 1600
New York, NY 10006
(212) 825-9811

16