Hearing Date and Time:  September 9, 2014 at 10:00 a.m. (EST)
Objection Deadline: September 2, 2014 at 4:00 p.m. (EST)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------------x

### NOTICE OF THE RMBS TRUSTEES' MOTION TO (I) INCREASE THE RESERVE TO $12.143 BILLION AND (II) ESTIMATE AND ALLOW THEIR CLAIMS FOR COVERED LOANS AT $12.143 BILLION PURSUANT TO SECTION 502(C) OF THE BANKRUPTCY CODE

Franklin H. Top III (admitted *pro hac vice*)
Scott A. Lewis (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone: (312) 845-3000

*Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts*

M. William Munno
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York  10004
Telephone: (212) 574-1587

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts*

John C. Weitnauer (admitted *pro hac vice*)
Jason Solomon (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309
Telephone: (404) 881-7000

*Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

Richard C. Pedone (admitted *pro hac vice*)
Christopher Desiderio
NIXON PEABODY LLP
437 Madison Avenue
New York, New York  10022
Telephone: (212) 940-3085

*Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

PLEASE TAKE NOTICE that, on September 9, 2014, at 10:00 a.m. (EST), or as soon thereafter as the matter may be heard, before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004 (the "Hearing"), the aforementioned Trustees for certain residential mortgage backed securitization transactions will move (the "Motion") for an order (a) increasing the reserve amount on their proofs of claims (the "RMBS Claims") from $5 billion to $12.143 billion, and (b) scheduling a hearing to estimate and allow their claims.

PLEASE TAKE FURTHER NOTICE that any objection or response to this Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York, and (i) shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 can be found at http://www.nysb.uscourts.gov., the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format ("PDF"), WordPerfect, or any other Windows-based word processing format; and (ii) a hardcopy of such objection or response shall be served in accordance with General Order M-399, upon (A) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (B) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Jacqueline Marcus, Esq., Shai Y. Waisman, Esq. and Robert J. Lemons, Esq.), attorneys for Debtors; (C) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan D. Golden, Esq., and Andrea B. Schwartz, Esq.); (D) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Wilbur F. Foster, Jr., Esq., Dennis C. O'Donnell, Esq., and Evan R. Fleck. Esq.), attorneys for the official committee of unsecured creditors; (E) Chapman and Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603 (Attn: Franklin H. Top III, Scott A. Lewis), attorneys for U.S. Bank National Association, as Trustee; (F) Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, Georgia 30309 (Attn: John C. Weitnauer, Jason Solomon), attorneys for Wilmington Trust Company, as Trustee and Wilmington Trust, National Association, as Trustee; (G) Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004 (Attn: M. William Munno), attorneys for Law Debenture Trust Company of New York, as Trustee; (H) Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022 (Attn: Christopher Desiderio), attorneys for Deutsche Bank National Trust Company, as Trustee; (I) the attorneys for any other official committee(s) that may be appointed in these cases; and (H) any person or entity with a particularized interest in this Motion; and so as to be actually filed and received no later than September 2, 2014, at 4:00 p.m. (EST) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  New York, New York
        August 22, 2014

Respectfully, submitted,

SEWARD & KISSEL LLP


By:  /s/ _____

     M. William Munno
     Seward & Kissel LLP
     One Battery Park Plaza
     New York, New York  10004
     Telephone:  (212) 574-1587

     Attorneys for Law Debenture Trust
      Company of New York, as Trustee

SK 16271 0159 6093908

Hearing Date: **September 9, 2014 at 10:00 a.m. (EST)**
Objection Deadline: **September 2, 2014 by 4:00 p.m. (EST)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
In re:                                                      :      Chapter 11
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*     :      Case No. 08-13555 (SCC)
                                                            :
                           Debtors.                         :      (Jointly Administered)
-----------------------------------------------------------------------x

### THE RMBS TRUSTEES' MOTION TO (I) INCREASE THE RESERVE TO $12.143 BILLION AND (II) ESTIMATE AND ALLOW THEIR CLAIMS FOR COVERED LOANS AT $12.143 BILLION PURSUANT TO SECTION 502(c) OF THE BANKRUPTCY CODE

Franklin H. Top III (admitted *pro hac vice*)
Scott A. Lewis (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000

*Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts*

M. William Munno
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1587

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts*

John C. Weitnauer (admitted *pro hac vice*)
Jason Solomon (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000

*Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

Richard C. Pedone (admitted *pro hac vice*)
Christopher Desiderio
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
Telephone: (212) 940-3085

*Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................. 1

JURISDICTION ...................................................................................................... 2

BACKGROUND ..................................................................................................... 3

      A.   The RMBS Claims ............................................................... 6

      B.   The Experts' Forensic Review ........................................... 6

RELIEF REQUESTED .......................................................................................... 9

BASIS FOR REQUESTED RELIEF ..................................................................... 9

    I.   The Court Should (a) Increase the Reserve to $12.143 Billion, and (b) Estimate
and Allow the RMBS Claims for Covered Loans at $12.143 Billion Pursuant
to Section 502(c) ............................................................................................. 9

      A.   Liquidation of the RMBS Claims Is Not Feasible And Would Unduly
Delay Administration of the Chapter 11 Cases ................................. 11

      B.   Estimation of Similar Representation and Warranty Claims Using the
Same Sampling Methodology Has Been Utilized and Approved in Other
Cases .......................................................................................... 13

    II.   The Court Should Enter a Scheduling Order to Facilitate An Estimation
Hearing ..................................................................................................... 16

NOTICE ............................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Addison v. Langston (In re Brints Cotton Mktg., Inc.),
 737 F.2d 1338 (5th Cir. 1984) .............................................................................11

Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB,
 920 F. Supp. 2d 475 (S.D.N.Y. 2013)...............................................................14, 16

Bell v. Farmers Ins. Exchange,
 115 Cal. App. 4th 715 (2004) ..............................................................................15

Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC,
 2014 WL 3824333 (D. Conn. Aug. 4, 2014) .........................................................14

Fostvedt v. Dow (In re Fostvedt),
 823 F.2d 305 (9th Cir. 1987) ...............................................................................12

In re Chemtura Corp.,
 448 B.R. 635 (Bankr. S.D.N.Y. 2011).....................................................................11

In re Eagle Bus Mfg., Inc.,
 158 B.R. 421 (S.D. Tex. 1993) ..............................................................................11

In re G-I Holdings, Inc.,
 323 B.R. 583 (Bankr. D.N.J. 2005) .......................................................................11

In re Lane,
 68 B.R. 609 (Bankr. D. Haw. 1986) ......................................................................11

In re Lionel L.L.C.,
 2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007) ...............................................11

In re Nova Real Estate Inv. Trust,
 23 B.R. 62 (Bankr. E.D. Va. 1982)........................................................................11

In re Residential Capital, LLC,
 Case No. 12-12020 (Bankr. S.D.N.Y. filed May 14, 2012) (MG) ...........................7

In re Residential Capital, LLC,
 No. 12-12020, 2013 WL 3286198 (Bankr. S.D.N.Y. June 27, 2013) ....................14

In re Windsor Plumbing Supply Co.,
 170 B.R. 503 (Bankr. E.D.N.Y. 1994).............................................................10, 11

Interco Inc. v. ILGWU Nat'l Retirement Fund (In re Interco Inc.),
 137 B.R. 993 (Bankr. E.D. Mo. 1992)...................................................................10

*Mazzeo v. United States (In re Mazzeo)*,
    131 F.3d 295 (2d Cir. 1997)..................................................................12

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    958 N.Y.S.2d 647, 2010 WL 5186702 (N.Y. Sup. Ct. 2010)............................................15, 16

*Nicholes v. Johnny Appleseed of Wash. (In re Nicholes)*,
    184 B.R. 82 (9th Cir. BAP 1995) ..........................................................12

*Ratanasen v. State of Cal. Dept. of Health Servs.*,
    11 F.3d 1467 (9th Cir. 1993) ................................................................15

*Republic Servs. Inc. v. Liberty Mutual Ins. Co.*,
    2006 WL 2844122 (E.D. Ky. Oct. 2, 2006)..............................................15

*Rosado v. Wyman*,
    322 F. Supp. 1173 (E.D.N.Y. 1970), *aff'd*, 437 F.2d 619 (2d Cir. 1970)...............................15

*Syncora Guar. Inc. v. EMC Mortgage Corp.*,
    2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) ..............................................13, 14

*Total Care Physicians, P.A. v. O'Hara*,
    C.A. No. 99C-11-201-JRS, 2003 WL 21733023 (Del. Super. July 10, 2003) .......................15

*United States v. Lahey Clinic Hosp.*,
    399 F.3d 1 (1st Cir. 2005) ....................................................................15

*United States v. Verdunn*,
    89 F.3d 799 (11th Cir. 1996) ................................................................12

## RULES

Bankruptcy Rule 1015(b).............................................................................3

FED. R. BANKR. P. 1001 ............................................................................11

FED. R. BANKR. P. 7026 ............................................................................16

FED. R. CIV. P. 26(a)(2)(B) ........................................................................16

## STATUTES

11 U.S.C. §§ 101-1532 .................................................................... passim

11 U.S.C. § 502(c) ........................................................................ passim

28 U.S.C. §§ 157 and 1334..........................................................................3

28 U.S.C. § 157(b)(2)(A), (B), and (O) ........................................................3

**OTHER AUTHORITIES**

2 COLLIER ON BANKRUPTCY ¶ 109.06[2][c] (Alan N. Resnick & Henry J. Sommer eds. 16th
ed. 2013) ..................................................................................................................................12

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 11.493 (4th ed. 2010) ................15

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

## PRELIMINARY STATEMENT

1.      The RMBS Trustees[1] request an order (a) increasing the reserve amount on their proofs of claims (the "RMBS Claims") from $5 billion to $12.143 billion, and (b) scheduling a hearing to estimate and allow their claims.[2]

2.      Lehman has acknowledged that it "typically made certain representations or warranties regarding the nature or quality of the loans and the delivery thereof to the securitization trusts ..." (ECF No. 24254, ¶ 20) (discussing "Lehman Originated Loans" and "Bank Originated Loans"). Accordingly, it has liability for material breaches of the representations and warranties made on those loans (the "Covered Loans").[3] The number of Covered Loans sold to the RMBS Trusts and identified by the RMBS Trustees is approximately 416,000. Declaration of Charles A. Parekh, Ph.D., dated August 21, 2014, at ¶ 14 (the "Parekh Declaration"), which is submitted herewith.

3.      The total RMBS Claims arise from approximately 405 RMBS Trusts and approximately 1 million mortgage loans. The RMBS Claims related to Covered Loans are a subset of the total RMBS Claims. The approximately 416,000 Covered Loans at issue in this Motion are

---

[1]      The RMBS Trustees are U.S. Bank National Association, Wilmington Trust Company, Wilmington Trust, National Association, Law Debenture Trust Company of New York, and Deutsche Bank National Trust Company, solely in their capacity as trustee, separate trustee or indenture trustee (collectively, the "RMBS Trustees") for certain trusts that issued residential mortgage-backed securities (the "RMBS Trusts").

[2]      The RMBS Trustees request this order pursuant to sections 105(a), 502(c) and 1142(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, dated December 5, 2011 [ECF No. 22973] (the "Plan"). The RMBS Trustees filed their proofs of claims in the Chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and Structured Asset Securities Corporation ("SASCO," and LBHI and SASCO together with their affiliated debtors in the above-captioned cases, the "Debtors" or "Lehman").

[3]      Lehman asserts it is not liable for breaches of representations and warranties for mortgage loans where the right to "put-back" the loan to a third-party originator has been passed through to a Trust.

included in 255 of the 405 RMBS Trusts (the "Covered Trusts").[4]  The Covered Trusts are listed in

Attachment III of the Parekh Declaration.

4.      A re-underwriting and a detailed review of a sample of nearly 5,000 Covered

Loans that suffered a loss (the "Sample" by the RMBS Trustees' experts found breaches of

representations and warranties in approximately 57% of the Covered Loans.  The RMBS Trusts

have already experienced losses relating solely to Covered Loans of $15.680 billion, and Duff &

Phelps, LLC ("Duff & Phelps") one of the RMBS Trustees' experts, has estimated future losses of

another $5.548 billion, for total losses of $21.228 billion. Parekh Declaration ¶ 12 ("The Covered

Trusts suffered Realized Losses of $15.680 billion and are estimated to suffer an additional $5.548

billion in Projected Losses.").  Based in part on the 57% breach rate, the RMBS Trusts' claims

associated with Covered Loans containing breaches of representations and warranties total not less

than $12.143 billion.  Declaration of James H. Aronoff, dated August 21, 2014, at ¶¶ 11, 46 and

Table 5 (the "Aronoff Declaration"), which is submitted herewith.

5.      In the face of these losses associated with loans containing breaches of

representations and warranties, the RMBS Trustees request (a) that the reserve be increased

immediately to $12.143 billion and (b) that a hearing be scheduled to estimate and allow the

RMBS Claims.

## JURISDICTION

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

---

[4]      The RMBS Trustees reserve, and do not waive, any of their rights in regard to their proofs of claims,
including claims related to breaches of representations and warranties concerning mortgage loans other than Covered
Loans at issue in this Motion.

## BACKGROUND

7.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of the Debtors commenced with this Court voluntary cases (the "Chapter 11 Cases") under Chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.      From time to time, the Debtors objected to the RMBS Claims, including those related to Covered Loans, upon the grounds that the claims were submitted without sufficient supporting documentation or an explanation as to why such documentation was unavailable.  (*See, e.g.,* ECF No. 14493, 14494, 15008.) The objections were *not* granted.  (*See* June 30, 2011 Hearing Tr. at 70:19-20 [ECF No. 18251].)

9.      On December 6, 2011, the Court approved and entered an order (ECF No. 23023, the "Confirmation Order") confirming the Plan.  The Plan became effective on March 6, 2012.

10.      On January 12, 2012, the Debtors filed a motion (ECF No. 24254, the "Reserve Motion") requesting that the Court estimate the RMBS Claims under section 502(c) solely for the purposes of establishing a reserve for such claims under the Plan.  (Reserve Motion ¶¶ 2, 4, 37.) The Debtors asserted that, without estimation of the claims, they would have been required to establish a reserve based on the $37 billion face amount of the claims, which limited their ability to make meaningful distributions to other creditors under the Plan.[5]  (*Id.* at ¶¶ 23, 33.)

11.      The Debtors argued that estimation of the RMBS Claims was appropriate because determining the allowed amount of the claims through litigation would be "extraordinarily lengthy and complex" and "take years to complete."  (*Id.* at ¶ 31.)

---

[5]      The $37 billion face amount of the claims included RMBS-related claims of the RMBS Trustees and Bank of America, N.A. and HSBC Bank USA, N.A. (each as indenture trustee).  LBHI and SASCO, however, entered into stipulations and agreements with Bank of America, N.A. and HSBC Bank USA, N.A. estimating the amount of such claims filed thereby for purposes of establishing separate reserves under the Plan.  (See ECF No. 25643, at p.1 n.1).

12.    On February 22, 2012, the Court entered an order (ECF No. 25643, the "Reserve Order") estimating the RMBS Claims for the RMBS Trusts in the aggregate amount of $5 billion and classifying the claims as unsecured solely for the purpose of establishing a reserve for such claims under the Plan.  Under the Reserve Order, the amount of the allowed RMBS Claims may be greater than the amount reserved.[6]

13.    The Reserve Order further required the RMBS Trustees and Lehman to participate in mediation to attempt to settle the allowed amount of the RMBS Claims.  The parties participated in mediation on July 31, 2012 before the Honorable Gary McGowan, but were unable to reach an agreement.

14.    On April 17, 2012, LBHI and its affiliates made an initial distribution to creditors under the Plan.  Four additional distributions have been made, and the sixth distribution is scheduled for October 2, 2014.  ECF No. 45740.

15.    The Debtors' estates have distributed billions of dollars.  Because the RMBS Claims remain unresolved, the RMBS Trusts have not yet received any of the distributions.

16.    During the two years since July 2012, the RMBS Trustees have engaged experts, had a sample of nearly 5,000 Covered Loans re-underwritten, and had experts analyze and assess

---

[6]    The Reserve Order provides as follows:

ORDERED that the estimation of the Indenture Trustees' Claims, as set forth herein, is not deemed to determine or affect in any respect the allowed amount, validity or priority of the Indenture Trustees' Claims for any purpose other than establishing the reserve amounts for such claims under the Plan; and it is further

ORDERED that the estimation of the Indenture Trustees' Claims, as set forth herein, is without prejudice to the rights of the Indenture Trustees to assert that the allowed amount of the Indenture Trustees' Claims should be greater than the Estimated Claim; and it is further

ORDERED that the estimation of the Indenture Trustees' Claims, as set forth herein, is without prejudice to LBHI, SASCO or the Plan Administrator's rights, defenses and objections to the merits, amount and priority of the Indenture Trustees' Claims; and it is further

ORDERED that all rights of the Indenture Trustees, LBHI, SASCO and the Plan Administrator with respect to the Indenture Trustees' Claims are fully preserved ....

Reserve Order at p. 3.

the nature of breaches of representations and warranties for materiality in accordance with the underlying trust documents. The RMBS Trustees' allowed claims are not less than $12.143 billion, based on the analysis of the RMBS Trustees' experts.[7] (*See* Aronoff Declaration ¶ 46 and Table 5).

17.    In a recent motion filed with the Court, LBHI indicated that the RMBS Claims, including those claims related to Covered Loans, require loan-level proof of one or more breaches of representations and warranties. *See* ECF No. 44450, at ¶ 12 & fn. 1. As discussed further herein, (i) the sampling and loan review methodology authoritatively and sufficiently establishes the existence of such breaches, Parekh Declaration at Part VI, and the amount of losses associated with same, Aronoff Declaration ¶ 46 and Table 5, and (ii) requiring loan-level proof of each breach is, practically speaking, impossible given the time (many years of court time alone) and resources (many millions of dollars by the RMBS Trusts and the Debtors) that would be required. Parekh Declaration at Part VII.

18.    Further, the Court's intervention is necessary, as the risk increases that the allowed amount of the RMBS Claims will not be finally adjudicated prior to distribution of all assets in excess of those held in reserve. Lehman has no incentive to reach a timely settlement with the RMBS Trustees. If the RMBS Claims are not addressed promptly, the $5 billion reserve will soon serve as a cap on the claims, which is contrary to the intent of the Court's Reserve Order. In the period between the Debtors' first distributions to their creditors on April 17, 2012 to their fifth distributions on April 3, 2014, LBHI's total assets-to-reserves-for-disputed-claims ratio has decreased from 10.4 to 2.8. *See* ECF No. 27312, Ex. C; ECF 43745, Ex. C. Based on the RMBS

---

[7]    This analysis does not take into consideration that the Plan also provides that a claimant receive interest on the amount of the Allowed Claim from the Effective date of the Plan through the Distribution. See Section 8.4 of the Plan. In this instance, depending on the length of the delay before the RMBS Trusts receive distributions, the accumulated interest could be substantial.

Trustees' evidence that the allowed amount of the RMBS Claims for Covered Loans is not less than $12.143 billion, which is more than twice as large as the current reserve for the RMBS Claims, the reserve must be increased immediately.  Accordingly, it is now time for the Court to set a hearing date for the estimation and allowance of the RMBS Trustees' Claims.

### A.  The RMBS Claims

19.    Lehman securitized and sold mortgage loans, including the Covered Loans, to the RMBS Trusts and sponsored the transactions.  The loans provide the revenue to make payments on, and also collateralize, the certificates issued by the RMBS Trusts to investors (the "Certificates," and the investors that hold the Certificates, the "Certificateholders").  Lehman (i) made representations and warranties concerning the origination and characteristics of each and every one of the Covered Loans (the "Representations and Warranties") and (ii) agreed to cure the breach or, if the breach were not timely cured, to repurchase the Covered Loan or substitute a non-breaching loan.

20.    The review of the Sample by the RMBS Trustees' experts statistically implies that Lehman breached its representations and warranties with respect to over half of the Covered Loans that suffered a loss or are projected to suffer a loss.  Parekh Declaration ¶ 36.  Losses, both actual and projected, associated with mortgage loans containing those material breaches are estimated to total $12.143 billion.  Aronoff Declaration ¶ 46 and Table 5.

### B.  The Experts' Forensic Review

21.    Since July 2012, the RMBS Trustees engaged experts to conduct a comprehensive loan-by-loan forensic review of the Sample.[8]

---

[8]    The methodology used by the RMBS Trustees in this contested matter and described in this Motion is consistent with the methodology used to estimate the value of similar claims for breach of representation and warranty claims in the ResCap bankruptcy.  *See In re Residential Capital, LLC*, Case No. 12-12020 (Bankr. S.D.N.Y. filed May 14, 2012) (MG).

22.     The RMBS Trustees engaged Cowen & Company, LLC ("Cowen"), Digital Risk, LLC ("Digital Risk"), and Duff & Phelps to conduct this comprehensive loan-by-loan forensic review.

(a) Cowen is a financial services firm with expertise in the mortgage origination sector.  Cowen constructed the Sample to produce a statistically sufficient estimate of the overall breach rates for all Covered Loans that suffered a loss or are projected to suffer a loss in the Covered Trusts.  The Sample was chosen using June 2012 remittance data from a population of 149,568 Covered Loans with realized losses, delinquent loans, or previously modified loans.  The population from which the Sample was selected was classified into twelve cohorts by product type and loan vintage.  These classifications were designed to account for any potential variation in breach rates between different loan products and vintages.  The product type classification included three groups: loans which were classified as prime, alt-A, and subprime, and the vintage was classified into four groups: loans included in a trust issued in 2004 and prior, 2005, 2006, and 2007 and later.  All of the Covered Trusts closed on or after September 15, 2002.

(b) Digital Risk is an independent forensic review firm that reviews mortgage loan and servicing files to determine if there have been breaches of representations and warranties.  Digital Risk re-underwrote the Sample constructed by Cowen.  Digital Risk reviewed the mortgage origination and servicing files to determine if a loan breached a Representation and Warranty included in the Sample loans' trust governing documents.   Digital Risk's review process included a

7

materiality threshold so that only breaches of a Representation and Warranty that have been determined to be material and adverse were deemed significant.

(c) Duff & Phelps is a valuation and corporate finance advisor with expertise in complex valuation, including specific expertise in mortgage loan origination, bankruptcy and restructuring, financial forecasting and statistical analysis. Among other relevant experience, Duff & Phelps served as the advisor to the RMBS trustees in the ResCap bankruptcy. James Aronoff, who has 30 years of experience including mortgage origination and testimony in RMBS matters, and Dr. Charles Parekh, who has 14 years of experience in the use of statistics and economic modeling in damages calculations for litigation, worked on the analysis to determine the amount of the RMBS Trusts' claims for Covered Loans. Duff & Phelps (i) reviewed the sampling and selection work performed by Cowen, (ii) reviewed and analyzed the findings made by Digital Risk, and (iii) opined on the amount of the RMBS Trusts' claims, based on its reviews and analysis.

23.    Of the 5,000 Covered Loans selected for the Sample, Digital Risk received and reviewed 4,579 loan files.  In re-underwriting the loans, Digital Risk identified one or more material breaches in 2,612 of the 4,579 loans reviewed — a material breach rate of approximately 57%.  Aronoff Declaration ¶ 27 and Table 2.

24.    The material breach rate found in the Sample is substantially similar to the breach rate of 50% that Lehman uncovered in a prior internal review.  *See* Lehman Brothers, Risk Review: Aurora and BNC February 2007 (Mar. 19, 2007), at p. 10 (noting "**Special Investigations** completed the review of 240 LXS loans which resulted in 50% of the loans contained [sic] material

misrepresentation") (emphasis in original), a copy of which, in pertinent part, is attached as Exhibit 1 hereto.

25.    Digital Risk discovered a total of 4,940 material and adverse breaches of Lehman's Representations and Warranties with respect to 2,612 of the reviewed Covered Loans.    Forty-four material breach types were identified, which can be classified into four categories: Capacity, Credit, Collateral, and Compliance.    The frequencies of each breach type are set forth in Exhibit E to the Aronoff Declaration.    The Sample also included breaches that were deemed *not* material and adverse and were thus *excluded* from the calculation of the material breach rate for Covered Loans. *See* Aronoff Declaration ¶ 24.

26.    Based on a material breach rate of 57%, as of April 25, 2014, and based on the realized and projected losses in the Covered Trusts, claims associated with the mortgage loans containing  such breaches total $12.143 billion. Aronoff Declaration ¶ 46 and Table 5.

## RELIEF REQUESTED

27.    The RMBS Trustees request that (a) the reserve be increased immediately from $5 billion to $12.143 billion, and (b) a hearing be scheduled at which their claims can be estimated and allowed for the benefit of the Certificateholders of Covered Trusts.

## BASIS FOR REQUESTED RELIEF

**I.  The Court Should (a) Increase the Reserve to $12.143 Billion, and (b) Estimate and Allow the RMBS Claims for Covered Loans at $12.143 Billion Pursuant to Section 502(c)**

28.    The Parekh and Aronoff Declarations provide a thorough and reliable basis for increasing the reserve immediately from $5 billion to $12.143 billion, as well as a methodology by which to estimate and allow the RMBS Claims under Section 502(c).  As Lehman has already admitted, liquidation of the RMBS Claims would require unduly protracted and costly litigation that would delay the administration of the Chapter 11 Cases for *decades*.  Reserve Motion at ¶ 31,

Parekh Declaration at Part VII.  Accordingly, estimation of these claims and allowance in the amount so estimated is warranted.

29.    A creditor may request estimation and allowance of its unliquidated claim pursuant to Section 502(c), which provides:

> There *shall* be estimated for purposes of allowance under this section—
>
> (1)  any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2)  any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c) (emphasis added); *see In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 512 (Bankr. E.D.N.Y. 1994).  Estimation ensures the timely and just resolution of a creditor's claim in bankruptcy.  *Interco Inc. v. ILGWU Nat'l Retirement Fund (In re Interco Inc.)*, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992) ("Congress intended that the bankruptcy courts continue to use [section 502(c)] to facilitate the speedy and expeditious resolution of claims in bankruptcy courts."); *see also* FED. R. BANKR. P. 1001 (providing the bankruptcy rules "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding.").

30.    Further, the Bankruptcy Code's directive to estimate unliquidated claims is mandatory.  *In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005).  The Court must estimate an unliquidated claim if the fixing or liquidation of such claim would unduly delay the administration of the case.  *See, e.g.*, *In re Lane,* 68 B.R. 609, 611 (Bankr. D. Haw. 1986) ("This duty of the bankruptcy court is mandatory, since the language of [section 502(c)] states 'shall'."); *In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982) ([Section 502(c)] is mandatory, not permissive, and creates in the Court an affirmative duty under proper circumstances to estimate any unliquidated claim ….").

10

31.    Courts have broad discretion to fashion estimation procedures using "whatever method is best suited to the circumstances." *In re Eagle Bus Mfg., Inc.*, 158 B.R. 421, 437 (S.D. Tex. 1993) (quoting *Addison v. Langston (In re Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1341 (5th Cir. 1984)); *see also In re Lionel L.L.C.*, 2007 WL 2261539, at *5 (Bankr. S.D.N.Y. Aug. 3, 2007) (same); *Windsor Plumbing*, 170 B.R. at 520 ("The methods used by courts have run the gamut from summary trials to full-blown evidentiary hearings to a mere review of pleadings, briefs, and a one-day hearing involving oral argument of counsel.") (citations omitted).

32.    In this district, courts have estimated "the expected value of a claim based on the probability of the success of various potential outcomes if decided on the merits." *In re Chemtura Corp.*, 448 B.R. 635, 650 (Bankr. S.D.N.Y. 2011); *see also Windsor Plumbing*, 170 B.R. at 521 ("An *expected value* can then be found by multiplying a number of possible recovery values by the probability of their occurrence and taking the sum of these products.")  (emphasis in original).

33.    The expert analysis performed on the Sample provides a reliable and accepted method for estimating the expected value of the RMBS Claims.  The Court should adopt the methodology and findings of the RMBS Trustees' experts to (a) increase the reserve now to $12.143 billion, and (b) estimate and allow the RMBS Claims for Covered Loans under Section 502(c) in an amount determined after the estimation hearing.

**A. Liquidation of the RMBS Claims Is Not Feasible And Would Unduly Delay Administration of the Chapter 11 Cases**

34.    There is no dispute that the RMBS Claims are unliquidated and that liquidation of the Claims would require years of litigation, causing undue delay in the administration of the Debtors' bankruptcy cases.  The Debtors expressly said as much in their Reserve Motion, *see* Reserve Motion ¶ 31 — and the RMBS Trustees agree.  Parekh Declaration at Part VII (estimating court time to review loans with asserted material breaches at approximately 41 years).

11

35.     The term "unliquidated" is not defined in the Bankruptcy Code.  However, courts have consistently defined an unliquidated claim as one that is not subject to "ready determination and precision in computation of the amount due" or "capable of ascertainment by reference to an agreement or by simple computation."  *Fostvedt v. Dow (In re Fostvedt),* 823 F.2d 305, 306 (9th Cir. 1987); *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes),* 184 B.R. 82, 90 (9th Cir. BAP 1995); *see also* 2 COLLIER ON BANKRUPTCY ¶ 109.06[2][c] (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2013) ("[C]ourts have generally held that a debt is liquidated if its amount is readily and precisely determinable, as where the claim is determinable by reference to an agreement or by a simple computation.").  If, on the other hand, determining the value depends instead on "a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated."  *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 304 (2d Cir. 1997) (quoting *United States v. Verdunn*, 89 F.3d 799, 802 n. 9 (11th Cir. 1996)).

36.     The RMBS Claims are unliquidated because they are not easily ascertainable or determinable by a simple computation.  To compute an estimated value for the RMBS Claims for the Covered Loans, first, Duff & Phelps calculated the realized losses and estimated the projected losses for each Trust.  *See* Parekh Declaration Part IV. Second, Duff & Phelps (replying upon the re-underwriting work of Digital Risk) examined the materiality, type, and frequency of the breaches of Representations and Warranties and used that information, along with the realized and projected losses, to determine the RMBS Claim associated with material breaches of the Covered Loans.  *See* Aronoff Declaration Parts IV(C) and V.

37.     Without estimation, these Chapter 11 Cases would be unduly delayed.  Reviewing all Covered Loans is a practical impossibility.  Based on Parekh's estimate that an underwriter could review the loan file and governing documents and determine whether there is a breach of the

representations and warranties at a rate of three loans per day, a review of only the Covered Loans

in the sample population would likely take a 40-person reviewing team, working 52 weeks a year,

five days a week, over *4.5 years* to complete (assuming all loan files were readily available) and

cost tens of millions of dollars. Parekh Declaration at Table 7.    Additionally, the court time

necessary to adjudicate breaches on hundreds of thousands of loans would also take more than 41

years (assuming the Court did nothing else for those many years) and add additional tens of

millions of dollars for professional costs.  *Id.  See Syncora Guar. Inc. v. EMC Mortgage Corp.*,

2011 WL 1135007, at *6 n.4 (S.D.N.Y. Mar. 25, 2011) (noting that the defendant "cannot

reasonably expect the Court to examine each of the 9,871 transactions to determine whether there

has been a breach …."). Consequently, estimation is mandatory.[9]

### B.  Estimation of Similar Representation and Warranty Claims Using the Same Sampling Methodology Has Been Utilized and Approved in Other Cases

38.    Because it would be unduly costly and time-consuming to conduct a trial to

determine liability on a loan-by-loan basis, statistical sampling has been used in similar residential

mortgage-backed securities actions to prove liability and calculate damages.  Statistical sampling

promotes judicial economy and yields virtually the same precision as if every loan at issue were

individually evaluated by the Court, because statistical sampling is a proven methodology for

producing accurate estimates of breach rates that are representative of the loan pool from which

each loan is drawn.  For this reason, the overwhelming weight of authority in the Second Circuit

(as well as other jurisdictions) supports the use of statistical sampling in the context of RMBS

litigation.

---

[9]    LBHI also recently stated in a motion filed with this Court that resolving certain claims that LBHI asserts against mortgage sellers that are similar to the RMBS Claims and arise in connection with 11,000 mortgage loans, on a loan-by-loan basis, would cause "undue delay in the liquidation of the Debtors' assets."  (ECF 44450, ¶ 19.)  *The number of Covered Loans that suffered a loss or are projected to suffer a loss is approximately 13.5 times greater than the number of loans in dispute in that matter.*

39.     As Judge Rakoff recently stated in *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013) ("<u>Flagstar</u>"), "[s]ampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims."  *Id.* at 512 (approving sampling of 400 loans from each of two securitizations backed by approximately 15,000 loans).

40.     The general sampling and claims estimation methodology used by the RMBS Trustees' experts has been recognized and approved in other cases asserting representation and warranty claims.  *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2013 WL 3286198, at 21 (Bankr. S.D.N.Y. June 27, 2013) (approving Duff & Phelps' analysis of loans on behalf of RMBS trustees); *Syncora Guar. Inc.*, 2011 WL 1135007, at *4, 6 n. 4; *Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, 2014 WL 3824333, *9 (D. Conn. Aug. 4, 2014) ("statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case"); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 958 N.Y.S.2d 647, 2010 WL 5186702, at *4 (N.Y. Sup. Ct. 2010).

41.     The use of sampling to prove liability and damages is well settled.  *See, e.g.*, *Rosado v. Wyman*, 322 F. Supp. 1173, 1180 (E.D.N.Y. 1970) ("Sampling has long been considered an acceptable method of determining the characteristics of a large universe …. Such mathematical and statistical methods are well recognized by the courts as reliable and acceptable in determining adjudicative facts."), *aff'd*, 437 F.2d 619 (2d Cir. 1970); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 11.493 (4th ed. 2010) ("Acceptable sampling techniques, in lieu of discovery and presentation of voluminous data from the entire population, can save substantial time and expense, and in some cases provide the only practicable means to collect and present relevant data.").

42.    In New York[10] as well as other jurisdictions across the country,[11] courts have accepted statistical sampling as an appropriate and efficient method of establishing liability and damages in RMBS cases.  *See, e.g.*, *MBIA Ins. Corp.*, 2010 WL 5186702, at *4-6 (applying New York law and permitting plaintiff to allow sampling as proof of liability and damages in RMBS case).

43.    Indeed, courts recognize that "[s]cientific literature and testing is replete with the use of statistical sampling [and that] the validity of properly conducted sampling is not a question for debate;" thus, "[s]tatistical sampling is a widely used method to present evidence from a large population of data." *Id.* at *4.  This method works to streamline cases where, as here, they involve a large pool of mortgage loans that share certain traits, but also possess unique characteristics: "The very purpose of creating a representative sample of sufficient size is so that, despite the unique characteristics of the individual members populating the underlying pool, the sample is nonetheless reflective of the proportion of the individual members in the entire pool exhibiting any given characteristic." *Flagstar*, 920 F. Supp. 2d at 512.

44.    Sampling is a generally accepted and reliable means to substantiate pool-wide breaches of representations and warranties and should be adopted by the Court to estimate the RMBS Claims under Section 502(c).

---

[10]    The governing documents for the RMBS Trusts provide for the application of New York law.

[11]    *See, e.g.*, *United States v. Lahey Clinic Hosp.*, 399 F.3d 1, 18 n. 19 (1st Cir. 2005) ("[S]ampling of similar claims and extrapolation from the sample is a recognized method of proof[.]"); *Ratanasen v. State of Cal. Dept. of Health Servs.*, 11 F.3d 1467, 1471-72 (9th Cir. 1993) (approving sampling and extrapolation to prove claims); *Republic Servs. Inc. v. Liberty Mutual Ins. Co.*, 2006 WL 2844122, at *3 (E.D. Ky. Oct. 2, 2006) ("The essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole . . . [and] the applicability of inferential statistics [has] long been recognized by the courts."); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 754-59 (2004) (approving use of statistical sampling); *Total Care Physicians, P.A. v. O'Hara*, C.A. No. 99C-11-201-JRS, 2003 WL 21733023, at *3 (Del. Super. July 10, 2003) ("Statistical sampling is a tried and true approach to establishing causation and damages in cases involving a universe of claimants which exceeds the court's adjudicatory capacity…. The Court … will be receptive to … any [ ] approach which will package the causation and damages evidence manageably and reliably.")

**II. The Court Should Enter a Scheduling Order to Facilitate An Estimation Hearing**

45.     Based on the expert affidavits submitted herewith, the Court should immediately increase the reserve from $5 billion to $12.143 billion.

46.     To facilitate the expeditious estimation and allowance of the RMBS Claims, the Court should also enter a scheduling order to provide for discovery in advance of the estimation hearing.  The RMBS Trustees propose the following:

(1)    Expert Discovery:

(i)    The Parties shall disclose the identities of any testifying expert witnesses and serve any expert reports pursuant to FED. R. CIV. P. 26(a)(2)(B) (made applicable to this matter pursuant to FED. R. BANKR. P. 7026) on any issue(s) as to which that party bears the burden of proof no later than 30 days after entry of the scheduling order.[12]

(ii)    Any party's expert report intended to rebut any other expert report shall be served no later than 45 days after entry of the scheduling order.

(iii)    All expert depositions shall be completed on or before 90 days after entry of the scheduling order.

(2)    Motions:

(i)    Any motions shall be filed and served no later than 120 days after the entry of the scheduling order.

(ii)    Oppositions to any motions shall be filed no later than 145 days after the entry of the scheduling order

---

[12]    The Parekh and Aronoff declarations are their expert reports.

        (iii)    Reply briefs in further support of any motions shall be filed no later than 160 days after the entry of the scheduling order.

        (3)    <u>Estimation Hearing</u>:

        (i)    The Court shall hold a final pre-trial conference on Monday, April 13, 2015, or as soon thereafter as is convenient for the Court's schedule, including with respect to its disposition of any motions.

47.    This proposed schedule affords the parties ample time to conduct expert discovery while ensuring the prompt estimation and allowance of the RMBS Claims for Covered Loans under Section 502(c).  A proposed order is attached as Exhibit 2.

<strong>NOTICE</strong>

48.    No trustee has been appointed in the Chapter 11 Cases.  The RMBS Trustees, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635), have served notice of this Motion on (i) the Debtors; (ii) the U.S. Trustee; (iii) the Unsecured Creditors Committee; (iv) the United States Attorney for the Southern District of New York; and (v) all parties who have requested notice in these Chapter 11 Cases.  The RMBS Trustees submit that no other or further notice need be provided.

WHEREFORE the RMBS Trustees respectfully request that the Court grant the relief requested herein and (i) enter an order immediately increasing the reserve for the RMBS Claims from $5 billion to $12.143 billion, and (ii) enter a scheduling order for a hearing to estimate and allow the RMBS Claims.

Dated: August 21, 2014
New York, New York

s/ Franklin H. Top III
Franklin H. Top III (admitted *pro hac vice*)
Scott A. Lewis (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone: (312) 845-3000

*Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts*

s/John C. Weitnauer
John C. Weitnauer (admitted *pro hac vice*)
Jason Solomon (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309
Telephone: (404) 881-7000

*Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

s/M. William Munno
M. William Munno
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York  10004
Telephone: (212) 574-1587

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts*

s/Richard C. Pedone
Richard C. Pedone (admitted *pro hac vice*)
Christopher Desiderio
NIXON PEABODY LLP
437 Madison Avenue
New York, New York  10022
Telephone: (212) 940-3085

*Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

SK 16271 0159 6093296

18