# ATTACHMENT V
# Part 3

Cowen_US Bank_Final_Version_15

| 13 | 0121338610 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/05/2006, in the amount of $353,700, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 49% Loan to Value/Combined Loan to Value, and a 31.128% Debt to Income. There was a manual approval dated 06/05/2006, in the loan file. The Borrower received $23,784 cash out at closing. | Full | | $353,700.00 | 2846139 | |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain Credit Report | Failure to Obtain Valid Credit Report | 1 | 3 | The loan file did not contain an origination credit report.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of a valid credit report; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846139 | |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that she owned her current residence for 3 years with a monthly payment of $2,729. The loan file did not contain an origination credit report or a payoff. The audit credit report reflected a 4 month history from 03/2006 through 06/2006; however, there is no evidence in the loan file of verification of the Borrower's housing history from 07/2005 through 02/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the housing history was not properly verified and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846139 | |
| | . | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of an orchid company earning $20,469 per month on the loan application. The loan file contained post-closing documentation, which reflected the Borrower filed for a chapter 13 Bankruptcy on 04/07/2007 and a chapter 7 on 01/10/2008. The chapter 13 Bankruptcy was filed in the United States Bankruptcy Court Middle District of Florida and the Statement of Financial Affairs revealed the Borrower's 2006 income was $13,602, or $1,134 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of an orchid company earning $20,469 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846139 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/29/2013 12:32:57 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| 14 | 0122251044 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/15/2006, in the amount of $223,550, as a cash out refinance of a second home single family residence located in a planned unit development. The loan was approved as a Full Documentation (6 months bank statements) loan, with an 85% Loan to Value/Combined Loan to Value, and a 28.799% Debt to Income Ratio. There was a manual approval dated 08/18/2006, in the loan file. | Full | | $223,550.00 | 2844912 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrower stated on the loan application that she owned her current residence for 6 months with a monthly payment of $2,956; however, the subject loan was for a second home. The loan file contained an origination credit report, dated 07/28/2006, which did not reflect a mortgage payment history for the second home. The loan file contained a payoff statement, dated 08/07/2006, which reflected the Borrower was due for the 08/01/2006 payment; however, there is no evidence in the loan file of verification of the Borrower's previous 12 month housing history for the second home.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations,the housing history was not properly verified and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844912 |
| 15 | 0122253651 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/09/2006, in the amount of $159,000, as rate and term refinance of an owner occupied single family residence located in a planned unit development. The loan was approved as a Full Documentation loan, with a 66.25% Loan to Value/Combined Loan to Value, and a 48.035% Debt to Income. There was a manual approval dated 08/14/2006, in the loan file. | Full | | $159,000.00 | 2844917 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrowers stated on the loan application that they owned their current residence for 2.1 years with a monthly payment of $1,156. The loan file contained an origination credit report, dated 07/27/2006 which reflected a mortgage payment history from 03/2005 through 03/2006. The loan file also contained a payoff, dated 08/03/2006 which reflected the Borrowers were due for the 05/2006 payment; however, there is no evidence in the loan file of verification of the Borrower's housing history from 05/2006 through 07/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the housing history was not properly verified and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844917 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/29/2013 12:32:57 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

# Digital Risk - Loan Review Findings
08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
part 3 Pg 6 of 59

| 16 | 0122254121 | 1st | BNCMT 2006-2 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/18/2006, in the amount of $176,000 on a cash-out refinance of an owner-occupied condominium property. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan was represented as a Full Documentation loan; however, the loan file was missing income and asset documentation. The loan file was also missing the second lien Note in the amount of $44,000 and an origination credit report. | Full | | $176,000.00 | 2844920 | |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain Credit Report | Failure to Obtain Valid Credit Report | | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of a valid credit report; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844920 | |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Income | Improper Calculation of Income | 2 | 3 | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The loan was represented as a Full Documentation loan; however, the loan file did not contain any income documents. No monthly income was used to determine the DTI. An income was unable to be determined; therefore, the correct recalculation results in no monthly income.<br><br>A recalculation of Debt to Income Ratio (DTI) based the Borrower's proper income calculation results in an invalid DTI which has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Despite the Seller's representations, a review of the loan file reveals the Lender failed to accurately calculate the Borrower's income, and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844920 | |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Incomplete Income Documentation | Incomplete Income Documentation | 3 | | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file of a review of the Borrower's income documentation. The loan was represented as a Full Documentation loan; however, there are no income documents to determine if the income stated on the origination application is correct and if it supported the Borrower's liabilities at the time of closing.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844920 | |

| 17 | 0122271356 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/22/2006, in the amount of $295,000.00, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Stated Asset loan with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 127.29% Debt to Income ratio (DTI). There was a Manual approval dated 08/15/2006, in the loan file. | SISA | | $295,000.00 | 2844953 | |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Laborer for 1.2 years, earning $5,700 per month.\n\nThe Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.\n\nThe Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.\n\nIncome of $5,700 per month for a Laborer is unreasonable and is a red flag for potential misrepresentation. The US Bureau of Labor Statistics reported the average salary at the 75th percentile for a Laborer in 2006 and in the same geographic region was $2,922 per month.\n\nDespite the Seller's representations, the Borrower's stated income was unreasonable and has a significant impact on the Borrower's reasonable ability to repay the subject loan.\n\nPursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844953 | |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1\n\n1.04 (b) (xxi) BNC 2006-2_No Fraud\n\n1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Laborer earning $5,700 per month on the loan application. An audit verification of employment was obtained, which verified the Borrower's income for the subject year loan closing 2006 was $2,173 per month.\n\nThe Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.\n\nThe Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.\n\nThe Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.\n\nIn addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.\n\nDespite the Seller's representations, the Borrower falsely stated income as a Laborer earning $5,700 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.\n\nPursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844953 | |

Cowen_US Bank_Final_Version_15

**Digital Risk - Loan Review Findings**
08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment part 2 Pg 6 of 256

| 18 | 0123001760 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/25/2006, in the amount of $412,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Stated Asset loan, with an 84.94% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 39.96% debt to income ratio (DTI). There was a Manual approval dated 10/31/2006, in the loan file. | SISA | $412,000.00 | 2846867 |
|  |  |  |  | 1.04 (b) (xiii) SAS 2006-BC6_Compliance with Applicable Law - Deemed MnA

1.04 (b) (xviii) (g) SAS 2006-BC6_Fees Disclosed - Deemed MnA_Pool 1

1.04 (b) (xviii) (h) SAS 2006-BC6_Written Disclosure - Deemed MnA_Pool 1

1.04 (c) (vii) SAS 2006-BC6_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 is in file; however, the 1200 section is cut off.

The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. |  |  | 2846867 |
| 19 | 0123011900 | 1st | SAS 2006-Z | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/11/2006, in the amount of $117,000, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 90%/95% loan-to-value/combined loan-to-value, and a 41.53% debt-to-income ratio. There was a Manual approval dated 10/16/2006, in the loan file. | Stated | $117,000.00 | 2844766 |
|  |  |  |  | 1.04 (b) (xix) (j) SAS 2006-Z_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 3 | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Monthly debts of $1,329 were used by the Lender to determine the debt-to-income ratio (DTI). The Borrower was qualified with a combined monthly payment of $230 for the Borrower's homeowner's insurance and property taxes; however, a review of the homeowner's insurance policy revealed the Borrower's homeowner's insurance payment was $69 per month and a review of the appraisal revealed the Borrower's property tax payment was $196 per month, or a total of $265 per month. The correct recalculation of total debt results in a monthly debt of $1,363.

Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. |  |  | 2844766 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/29/2013 12:32:57 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

**Digital Risk - Loan Review Findings**

Cowen_US Bank_Final_Version_15    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment pt 2 Pg 9 of 256

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | 1.04 (b) (xix) (j) SAS 2006-Z_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (c) (v) SAS 2006-Z_No Fraud

1.04 (c) (vii) SAS 2006-Z_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented her disclosed income. The Borrower stated income as an Inventory Associate earning $3,200 per month on the loan application. An audit re-verification of employment and income was obtained through The Work Number, which revealed the Borrower's actual income was $5,447, or $694 per month based on a hire date of 05/2006, or 7.83 months, for the year of the subject loan closing.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as an Inventory Associate earning $3,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844766 |
| . | | | 1.04 (c) (v) SAS 2006-Z_No Fraud

1.04 (c) (vii) SAS 2006-Z_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 5 | 3 | The Borrower misrepresented her employment on the loan application. Per the loan application, the Borrower indicated employment an Inventory Control Associate for 2 years, earning $3,200 per month. An audit re-verification of employment and income was obtained through The Work Number, which revealed the Borrower's start date was 05/05/2006; therefore, the Borrower was only employed for 5 months.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated employment as Inventory Control Associate for 2 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | | 2844766 |
| 20 | 0123523482 | 1st | BNCMT 2007-1 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/20/2006, in the amount of $183,750, as a cash-out refinance of an owner-occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 75% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49.32% Debt to Income Ratio (DTI). There was a Manual approval dated 12/07/2006, in the loan file. | Stated | $183,750.00 | 2845001 |
| . | | | 1.04 (b) (xl) (i) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 2 | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The inaccurately calculated debt significantly impacted the determination of the Borrower's reasonability to repay the subject loan. Monthly debts of $1,507 were used by the Lender to determine the Debt to Income ratio (DTI).

An auto loan was obtained in 08/2006 with a balance of $33,380 and a monthly payment of $690, which was not included in the Lender's calculation. The correct recalculation results in a monthly debt of Total Verified Debt of $2,206.

Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845001 |

Cowen_US Bank_Final_Version_15

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | 0123535874 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | Per the data tape, the subject loan closed on 12/15/2006, in the amount of $165,750. The loan was approved as a rate and term refinance of an owner occupied property Interest Income/Agreement Stated Documentation loan, with a 65% Loan To Value/Combined Loan To Value (LTV/CLTV). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed loan application, the Note, and the Mortgage, the title report, verbal Verification of Employment (VOE) and origination credit report. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | SISA | $165,750.00 | 2845022 | |
| . | . | | | 1.04 (b) (xi) (I) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The loan file only contained the Borrower's signed loan application, the Note, Mortgage, the title report, verbal Verification of Employment (VOE) and origination credit report. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845022 | |
| 22 | 0123557605 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/15/2006, in the amount of $390,150, as a purchase of an owner-occupied single family residence located in a Planned Unit Development. The loan was approved as a Stated Income/Verified Assets loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV) and a Debt to Income Ratio (DTI) of 48.654%. There was a Manual approval dated 12/05/2006, in the loan file. | Stated | $390,150.00 | 2845060 | |
| . | . | | | 1.04 (b) (xi) (I) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Building Manager for 4 years, earning $9,800 per month.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $9,800 per month for a Building Manager is unreasonable and is a red flag for potential misrepresentation. The U.S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Building Manager in 2006 and in the same geographic region was $5,977 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845060 | |
| . | . | | | 1.04 (b) (xi) (I) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $52,352. In addition, the Borrower was required to verify $6,000 in earnest money deposits along with 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $7,460 for the subject property. In total, assets of $65,813 were required to be verified. The loan file did not contain any asset documentation to verify the required funds.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $65,813 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845060 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/29/2013 12:32:57 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xl) (i) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2007-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2007-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Building Manager earning $9,800 per month on the loan application. An audit Verification of Employment was performed by the Borrower's employer, which revealed the Borrower made $41,559 in 2006, or $3,463 per month. The loan file contained tax returns, which also supported this income showing a combined income with his spouse in 2006 of $56,618.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Building Manager earning $9,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2845060 |
| 23 | 0123850844 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/04/2007, in the amount of $238,000, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40.7% Debt to Income ratio (DTI). There was neither an Automated Underwriting System (AUS) approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Full | $238,000.00 | 2845064 |
| . | | | 1.04 (b) (xii) BNC 2007-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxiii) BNC 2007-2_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 statement to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1 statement.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845064 |
| . | | | 1.04 (b) (xii) BNC 2007-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxiii) BNC 2007-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final Truth in Lending (TIL) statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final Truth in Lending statement.<br><br>The Seller represented and warranted that the originating practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845064 |
| . | | | 1.04 (c) (xxxiv) BNC 2007-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal was missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845064 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24 | 0123851743 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/22/2007, in the amount of $331,200, as a cash out refinance of an owner occupied undisclosed property type. The loan was approved as a Full Documentation Loan, with an undisclosed Loan to Value/Combined Loan to Value (LTV/CLTV) and a undisclosed Debt to Income ratio (DTI). There was neither an Automated Underwriting System approval (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $331,200.00 | 2845065 |
| . | | | | 1.04 (b) (xd) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. There was no critical documentation provided for the file that was represented on the data Tape by the Seller.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845065 |
| 25 | 0123855538 | 1st | SASC 2007-BC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/23/2007, in the amount of $141,300, as a cash out refinance of an owner occupied condominium. The loan was approved as a Stated Income/Stated Asset loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.463% Debt to Income ratio (DTI). There was a Manual approval dated 01/31/2007, in the loan file. | SISA | $141,300.00 | 2847020 |
| . | | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Legal Residency | Failure to Verify Legal Residency | 1 | 3 | The Borrower indicated on the loan application that she was a United States citizen; however, the loan file contained the Borrower's expired Employment Authorization Card. The loan file did not contain Form 408 or the Borrower's current permanent resident alien card.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>There is no evidence in the file that the Borrower's legal residency or right to earn income in the United States was verified.<br><br>Despite the Seller's representation, the loan application stated the Borrower was a United States citizen; however, the Borrower was a permanent resident alien.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the subject loan and interest of the Certificateholders. | | | 2847020 |
| 26 | 0123859910 | 1st | SASC 2007-BC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/09/2007, in the amount of $338,990, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation/12 Month Bank Statement loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.71% Debt to Income (DTI). There was a Manual approval dated 01/12/2007, in the loan file. | Full | $338,990.00 | 2847021 |
| . | | | | 1.04 (c) (v) SAS 2007-BC3_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 2 | 3 | The Borrower misrepresented her employment on the loan application as the Co-Owner of a tax preparation service business for 5 years. The loan file contained post closing income documentation, including the Borrower's 2007 tax return, which reflected her spouse was the Owner/Operator of the business listed on the loan application.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as the Co-Owner of a tax preparation service business for 5 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2847021 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/29/2013 12:32:57 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repo

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 1.04 (c) (v) SAS 2007-8C3_No Fraud<br><br>1.04 (c) (vii) SAS 2007-8C3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented her declared income. The Borrower falsely stated income as a Co-Owner of a tax preparation services business earning $17,950 per month on the loan application. The Borrower also indicated that she would be renting out her departing address with a gross rental amount of $1,900 per month. The loan file contained post closing income documentation, including the Borrower's 2007 tax return, which reflected her spouse was the Owner/Operator of the business listed on the loan application. In addition, the loan file contained a rental agreement for the subject property that was provided by the Borrower for loss mitigation. The rental agreement was dated 01/10/2007, which was one day after the subject loan closed. Additionally, a search of Accurint, confirmed through utility records, revealed the Borrower continued to occupy her departing address from 03/2003 through 01/2013; therefore, no rental income was given to the Borrower departing address.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Co-Owner of a tax preparation services business earning $17,950 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | 2847021 |
| | 1.04 (c) (v) SAS 2007-8C3_No Fraud<br><br>1.04 (c) (vii) SAS 2007-8C3_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 4 | 3 | The Borrower misrepresented her intent to occupy the subject property. The loan file contained a rental agreement for the subject property that was provided by the Borrower for loss mitigation. The rental agreement was dated 01/10/2007, which was one day after the subject loan closed. Additionally a search of Accurint, confirmed through utility records, revealed the Borrower continued to occupy her departing address from 03/2003 through 01/2013.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | 2847021 |
| | | | | | **Grand Total of Repurchase Demand** | **$6,683,120.00** | |

| Loan Count | Loan Number | First or Second | Deal Name | Section of the | Issue Description | Breach | Breach | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 00011938701 | 1st | SASC 2003-39EX | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/03/2003, in the amount of $46,800, as an attached townhouse. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The credit package is missing from the loan file; therefore, document type is unknown. The loan file did include the Title Commitment, Home Owners Insurance, Note, HUD-1, final TIL and Mortgage. | Unknown | $46,800.00 | 2846476 | |
| . | | | | 1.04 (b) (xxxiii) SAS 2003-39EX_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 1 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal contained pages 1 and 2; however, the complete report was not provided.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846476 | |
| 2 | 00047005038 | 1st | SARM 2007-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/11/2007, in the amount of $510,000, as a rate/term refinance of an owner-occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 70.84% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 34.72% Debt to Income Ratio (DTI). There was a Manual Approval dated 07/10/2007, in the loan file. | Stated | $510,000.00 | 2846372 | |
| . | | | | 1.04 (c) (v) SARM 2007-8_No Fraud<br><br>1.04 (c) (vii) SARM 2007-8_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 1 | 3 | The Borrowers misrepresented their ownership of assets. The loan file contained 2 months checking account bank statements with the most recent bank statement, dated through 06/13/2007, indicating an ending balance of $35,942; however, an audit Verification of Deposit from the institution revealed the balance as of 06/13/2007 was $3,942.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers falsely disclosed they had $35,942 in assets when in fact they had $3,942. The amount of assets disclosed was misrepresented by $32,000, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846372 | |
| . | | | | 1.04 (c) (v) SARM 2007-8_No Fraud<br><br>1.04 (c) (vii) SARM 2007-8_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrowers misrepresented their disclosed income. The Borrowers falsely stated income as the Owners of a restaurant for 3 years earning a combined $17,915 per month. The loan file contained the Borrowers' 2008 tax return, which revealed the Borrowers' self employment income for 2007 the year the subject loan closed was $885 per month each, or a combined income of $1,770.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers falsely stated income as Owners of a restaurant earning a combined $17,915 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846372 | |

Copyright 2013, Digital Risk, LLC.     Internal & Confidential - Do Not Duplicate     Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| # | Loan Number | Lien | Deal | Finding Code | Category | Finding | | | Description | Doc | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 00047889407 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/03/2008, in the amount of $448,000, as a rate and term refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) documentation loan, with an 80% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 48% Debt to Income (DTI). There was a Manual approval dated 12/11/2007, in the loan file. | Stated | $448,000.00 | 2846427 |
| | . | | 1.04 (c) (v) SARM 2008-2_No Fraud<br><br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Co-Borrower misrepresented her disclosed income. The Co-Borrower falsely stated income as a Medical Assistant earning $3,400 per month on the loan application. An audit of verification of employment was obtained from the Co-Borrower's employer, which revealed the Co-Borrower earned $2,509 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Co-Borrower falsely stated income as a Medical Assistant earning $3,400 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846427 |
| 4 | 00121839542 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/14/2006, in the amount of $168,000, as a purchase of an owner occupied single 2-family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.866% Debt to Income Ratio (DTI). There was a Manual approval dated 07/19/2006, in the loan file. | Stated | $168,000.00 | 2844808 |
| | . | | 1.04 (b) (xxi) BNC 2006-1_No Red Flags Present<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Sales Associate earning $3,200 per month on the loan application. The loan file contained audit verification of employment and income conducted through The Work Number, which revealed the Borrower's 2006 gross earnings through 10/24/2006 as $25,044, or $2,563 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Sales Associate earning $3,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2844808 |
| 5 | 00124901612 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/18/2007, in the amount of $300,000, as a cash-out refinance of an owner occupied single family residence located in a Planned Unit Development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 83.33% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.99% Debt to Income Ratio (DTI). There was a Manual approval dated 07/24/2007, in the loan file. | Stated | $300,000.00 | 2847109 |
| | . | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower indicated that he was self-employed as an Owner of a home-based cable installation business for 4 years, earning $6,855 per month.<br><br>Income of $6,855 per month for an Owner of a home-based cable installation business is unreasonable and is a red flag for potential misrepresentation. The Bureau of Labor Statistics reported the average salary at the 75th percentile for a Cable Installer in 2007 and in the same geographic region was $3,909 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847109 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 2 | 3 | The origination credit report contained a from inquiry dated 04/12/2007 through 07/09/2007; however, a letter of explanation was not provided. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there is no evidence in the file that the accuracy of the Borrower's credit profile was verified. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | 2847109 | |
| . | | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 4 | 3 | The Borrower misrepresented his debt obligations. A review of the audit credit report revealed the Borrower opened an undisclosed installment loan prior to the subject loan closing on 07/18/2007. The Borrower opened the undisclosed installment loan in 05/2007 in the amount of $30,631 with a monthly payment of $393 The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose a $393 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | 2847109 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower's representation to earning $6,855 per month. The Borrower falsely stated income as an Owner of a home-based cable installation business earning $6,855 per month on the loan application. The loan file contained the Borrower's 2007 federal income tax return, provided for loss mitigation, which revealed the Borrower's income was $1,494 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a home-based cable installation business earning $6,855 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847109 | |
| 6 | 0014603088 | 2nd | SAIL 2003-BC1 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $84,000.00 | 2845692 | |
| . | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845692 | |
| . | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845692 | |
| . | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 5 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance.<br>The subject note is missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2845692 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | 0015503436 | 2nd | SAIL 2003-BC8 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $38,440.00 | 2845704 | |
| . | | | | 1.04 (b) (xvii) (d) SAIL 2003-BC8_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845704 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 0120883590 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 0 | The subject loan closed on 05/12/2006, in the amount of $57,000, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 2.41% Debt to Income Ratio (DTI). There was a Manual approval dated 05/12/2006, in the loan file. | Full | $57,000.00 | 2845923 |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Income | Improper Calculation of Income | 2 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.

A monthly income of $35,000 for the Borrower and $15,000 for the Co-Borrower was used to determine the Debt to Income Ratio (DTI). The loan file contained 12 month business bank statements; however, the Borrower's business was a money transfer service, creating the inability to determine deposits for business transactions or deposits from income. The loan file contained post-closing documentation 1040 Tax Returns and Schedule C for the Borrower which reflected income loss of $2,459 in 2006, the year of the subject loan closing and total annual income of $3,662 for 2007. It should be noted that the origination underwriting worksheet indicated the same information pertaining to the business bank statements along with indicating the taxes not showing positive income. In addition, the final application reflected wage earner income for the Co-Borrower in the amount of $15,000; however, the loan file did not contain pay stubs or W-2 to support the Co-Borrower's income.

Despite the Seller's representations, a review of the loan file reveals the Lender failed to accurately calculate the Borrowers' income
and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845923 |
| 9 | 0121299663 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 0 | The subject loan closed on 06/22/2006, in the amount of $259,250, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 30.75% Debt to Income Ratio (DTI). There was a Manual approval dated 06/27/2006, in the loan file. | Stated | $259,250.00 | 2846049 |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 3 | The Borrower stated on the loan application self-employment as an Owner/Painter for 5 years, earning $7,500 per month.

The Bureau of Labor Statistics reported the average salary at the 75th percentile for a Painter in 2006 and in the same geographic region was $3,649 per month. The Borrower's stated income is more than the Bureau of Labor Statistics' 75th percentile, which is a red flag the Borrower's income was overstated.

The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's income, so as to confirm the adequacy of the Borrower's financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846049 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_14

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 0121335293 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/22/2006 in the amount of $412,000, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with an 80%/95% loan-to-value/combined loan-to-value, and a 49.85% debt-to-income ratio. There was a Manual approval dated 06/30/2006, in the loan file. | Stated | $412,000.00 | 2846129 |
| . | | | | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Care Giver Provider for 8 months, earning $9,500 per month.<br><br>Income of $9,500 per month for a Care Giver is unreasonable and is a red flag for potential misrepresentation. The United States Bureau of Labor Statistics reported the average salary at the 75th percentile for a Care Giver in 2006 and in the same geographic region was $2,266 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846129 |
| . | | | | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented her debt obligations. A review of the audit credit report revealed 2 undisclosed installment loans. The first undisclosed installment loan closed in 03/2006 in the amount of $9,575 and a monthly payment of $148. The second undisclosed installment loan closed 06/2004 in the amount of $6,100 and a monthly payment of $178. The subject loan closed on 06/22/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented their debt obligations by failing to disclose $326 in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846129 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower was represented as a Care Giver earning $9,500 per month. The Borrower falsely stated income as a Care Giver earning $9,500 per month on the loan application. A written Verification of Employment was obtained from the Borrower's employer, which revealed the Borrower's actual income for the year of the subject loan closing was $23,695, or $1,975 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Care Giver earning $9,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846129 |
| 11 | 0122248560 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/11/2006, in the amount of $121,410, as a purchase of an owner occupied, condominium. The loan was approved as a Full Documentation loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.6% Debt to Income Ratio (DTI). There was a Manual approval dated 08/16/2006, in the loan file. | Full | $121,410.00 | 2844909 |
| | . | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that she rented her current residence for 2.8 years with a monthly payment of $400.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of an acceptable verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844909 |
| | . | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $10,322. In addition, the Borrower was required to verify earnest money of $2,000 from gift funds for the subject property. In total, assets of $12,322 were required to be verified.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $10,322 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844909 |

| # | Loan # | Lien | Deal | | | | | | | | Description | Doc | | Amount | Loan ID | |
|---|--------|------|------|---|---|---|---|---|---|---|-------------|-----|---|--------|---------|---|
| 12 | 0122253149 | 1st | BNCMT 2006-2 | | | Loan Summary | Loan Summary | | 0 | 0 | The subject loan closed on 07/28/2006, in the amount of $296,000, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 50.82% Debt to Income Ratio (DTI). There was a Manual approval dated 08/02/2006, in the loan file. | Full | | $296,000.00 | 2844915 | |
| . | | | | 1.04 (b) (xii) BNC 2006-2_Compliance with Applicable Law - Deemed MnA  1.04 (b) (xl) (g) BNC 2006-2_Fees Disclosed - Deemed MnA_Pool 1  1.04 (b) (xl) (h) BNC 2006-2_Written Disclosure - Deemed MnA_Pool 1  1.04 (b) (xxxiii) BNC 2006-2_Origination Practices | Final TIL Invalid/Incomplete/Incorrect/Stale/ Not Executed | Failure to Provide Final TIL | | | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a valid final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. Although there is what appears to be a final TIL in the loan file, the Borrower did not sign the TIL.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, the TIL contained in the loan file was invalid for the following reason.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844915 | |
| . | | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | | | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $215. In total, assets of $215 were required to be verified. The loan file did not contain asset documentation.  The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.  Despite the Seller's representations, there was a $215 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844915 | |
| 13 | 0123001752 | 1st | SASC 2006-BC6 | | | Loan Summary | Loan Summary | | 0 | 0 | The subject loan closed on 10/20/2006, in the amount of $360,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 79.12% Loan to Value/Combined Loan To Value (LTV/CLTV), and a 42.93% debt to income ratio (DTI). There was a Manual approval dated 10/27/2006, in the loan file. | Stated | | $360,000.00 | 2846866 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application the position as an Owner/Landscaper for 2 years, earning $6,000 per month.<br><br>Income of $6,000 per month for a Owner is unreasonable and is a red flag for potential misrepresentation. The U.S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Landscaper in 2006 and in the same geographic region was $4,242 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846866 |
| 14 | 0123008815 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/04/2006, in the amount of $517,750, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 95% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.062% Debt to Income Ratio (DTI). There was a Manual approval dated 10/24/2006, in the loan file. | Stated | $517,750.00 | 2846882 |
| . | | | 1.04 (b) (xiii) SAS 2006-BC6_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xviii) (g) SAS 2006-BC6_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xviii) (h) SAS 2006-BC6_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (c) (xvii) SAS 2006-BC6_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file contained the final HUD-1; however, the final HUD-1 is missing the attachment to line 1206.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846882 |
| . | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 2 | 3 | The origination credit report reflected 12 credit inquiries.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that the credit inquiries were investigated and as such inquiries resulted in additional debt undisclosed on the loan application, such there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846882 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 <br><br> 1.04 (c) (v) SAS 2006-BC6_No Fraud <br><br> 1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 4 | 3 | The Borrower misrepresented his debt obligations. A review of the audit credit report revealed the Borrower opened an undisclosed installment loan prior to the subject loan closing on 10/04/2006. The Borrower opened an undisclosed installment loan in 08/2006 in the amount of $39,577 with a monthly payment of $735. <br><br> The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. <br><br> The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose a $735 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. <br><br> Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846882 |
| | | | 1.04 (c) (v) SAS 2006-BC6_No Fraud <br><br> 1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Chief Executive Officer earning $15,000 per month on the loan application. The loan file contained the Borrower's federal income tax return for 2007, provided by the Borrower for loss mitigation, which revealed was $3,417 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed in the same line of work. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower falsely stated income as a Chief Executive Officer earning $15,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846882 |
| 15 | 0123009540 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/19/2006, in the amount of $320,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 70.33% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45.495% Debt to Income ratio (DTI). There was a Manual approval dated 10/19/2006, in the loan file. | Full | $320,000.00 | 2846887 |

Cowen_US Bank_Final_Version_14

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2006-BC6_No Fraud<br><br>1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Income – Red Flags Present | Misrepresentation of Income | 2 | 3 | The Borrower represented on the loan application. The Borrower falsely stated income as a Security Officer earning $4,995 per month on the loan application. In addition, the Borrower stated he received social security income in the amount of $1,266 per month. The loan file contained the Borrower's 2005 W-2 form, a pay stub and the Borrower's award letter. The Borrower's W-2 did not reflect any social security tax or Medicare tax withholdings. In addition, per the Official Website of the US Social Security Administration for the subject year loan closing 2006 the maximum wages was $33,240 and the Social Security Administration would withhold $1 in benefits for every $3 of earnings in excess of the amount. Therefore, the Borrower would not have been eligible to receive any social security benefits. In addition, the W-2 form wages and Federal Income Tax box were altered. The numbers are in different fonts. It should be noted the Internal Revenue Service website, section 15, Special Rules for Various Types of Services and Payments did not indicate the Borrower would be exempt from paying social security or Medicare tax.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Security Guard earning $4,995 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. | | | 2846887 |
| 16 | 0123525826 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $277,000.00 | 2845005 |
| | | | | 1.04 (b) (xl) (l) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845005 |

| 17 | 0123527178 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/7/2006 in the amount of $236,000, as a purchase of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Assets loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 46.35% Debt to Income (DTI). There was a Manual approval dated 12/19/2006, in the loan file. | Stated | | $236,000.00 | 2845009 | |
| . | | | | 1.04 (b) (xl) (l) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a self-employed home based Day Care Provider/Tutor for 3 years, earning $7,900 per month.<br><br>Income of $7,900 per month for a Day Care Provider is unreasonable and is a red flag for potential misrepresentation. The US Bureau of Labor Statistics reported the average salary at the 75th percentile for a Child Care Worker in 2006 and in the same geographic region was $2,677 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845009 | |
| . | | | | 1.04 (b) (xl) (l) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrower stated on the loan application that they rented their current residence for 4 years with a monthly payment of $1,500.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The loan file contained a verification of rent; however, 12 months canceled checks were required when the landlord was a private individual. The loan file did not contain canceled checks from the Borrower for rent and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing payment history and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845009 | |
| . | | | | 1.04 (b) (xl) (l) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 4 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify an earnest money deposit of $827 along with 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $4,866 for the subject property. In total, assets of $5,693 were required to be verified.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $2,326 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845009 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate     Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | . | | | 1.04 (b) (xl) (l) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2007-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2007-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented qualifying income for 2007. The Borrower falsely stated income as a home based self-employed Day Care Provider/Tutor earning $7,900 per month on the loan application. The post closing tax returns for 2007 indicated the Borrower was not self-employed and did not earn income for the year. In addition, the Bankruptcy petition filed 12/02/2010 did not indicate the Borrower was self-employed in Section 18 of the Statement of Financial Affairs. It is highly unlikely the Borrower would have dissolved her business 24 days after the subject closing date of 12/07/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a self-employed Day Care Provider/Tutor earning $7,900 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. | | | 2845009 |
| | . | | | 1.04 (b) (xxi) BNC 2007-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2007-1_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 6 | 3 | The Borrower misrepresented her self-employment on the loan application as a Day Care Provider/Tutor for 3 years. The post closing tax returns obtained through the foreclosure/modification process, for 2007, did not indicate self-employed income. In addition, the Bankruptcy records filed 12/02/2010, did not reflect self-employment on Section 18 of the Statement of Financial Affairs. Further, the origination credit report also did not reflect self-employment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a self-employed Day Care Provider/Tutor for 3 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2845009 |
| | | | | | | | | | | | | |
| 18 | 0123527285 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/14/2006, in the amount of $351,000, as a cash out refinance of an owner occupied Single Family Residence (SFR). The loan was approved as a Full Documentation loan, with a 79.77% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45.24% Debt to Income Ratio (DTI). There was a Manual approval dated 11/22/2006, in the loan file. | Full | $351,000.00 | 2845010 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate     Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| # | Loan No. | Lien | Deal | Rep | Finding | Finding | a | b | Description | Doc | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xl) (I) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 1 | 3 | The Borrower stated on the loan application that they owned their current residence for 2 years with a monthly payment of $2,465; however, verification of the Borrower's housing history was not provided.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845010 |
| . | | | | 1.04 (b) (xxi) BNC 2007-1_No Fraud

1.04 (b) (xxiii) BNC 2007-1_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Inspector of a metal fabrication company, earning $6,500 per month on the loan application. The loan file contained 12 months bank statements with average deposits of $6,500 per month; however, the post closing tax return obtained through the modification/foreclosure process, for 2006, the year of the subject loan closing, reflected the income for the Borrower as $2,026 per month. The Borrower did not reflect any other income source on the loan application other than the employment as an Inspector. The additional income source as reflected on the bank statement in the deposits was not documented or explained in the loan file.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as an Inspector of a metal fabrication company earning $6,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845010 |
| 19 | 0123530172 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/22/2006, in the amount of $277,000, as a cash out refinance of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Assets loan, with a 50.83% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 35.44% Debt to Income Ratio (DTI). There was a Manual approval dated 11/022/2006, in the loan file. | Stated | $277,000.00 | 2845011 |
| . | | | | 1.04 (b) (xxi) BNC 2007-1_No Fraud

1.04 (b) (xxiii) BNC 2007-1_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Carpenter earning $4,500 per month on the loan application. The audit re-verification obtained through The Work Number indicated the Borrower earned $3,777 per month for 2006, the year of the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Carpenter earning $4,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845011 |
| 20 | 0123852261 | 1st | SASC 2007-BC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/23/2007, in the amount of $292,000, as a purchase of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 22.99% Debt to Income Ratio (DTI). There was a Manual approval dated 01/30/2007, in the loan file. | Full | $292,000.00 | 2847019 |

# Digital Risk - Loan Review Findings

Cowen_US Bank_Final_Version_14     08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
V - part 3   Pg 27 of 256

| | | | | | | | | Narrative | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | . | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 3 | The application report, found on 02/27/2007, reflected 9 credit inquiries, which were not addressed by the Borrower.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there is no evidence in the file that credit inquiries were investigated and as such there is no evidence in the loan file the accuracy of the Borrower's credit profile was confirmed.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847019 |
| | . | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify earnest money of $3,019 for the subject property. In total, assets of $3,019 were required to be verified.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there was a $3,019 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847019 |
| | . | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (c) (v) SAS 2007-BC3_No Fraud

1.04 (c) (vii) SAS 2007-BC3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 4 3 | The Borrower misrepresented her debt obligations. Per the audit credit report and public records obtained through the Mortgage Electronic Registry System (MERS), the Borrower obtained 4 undisclosed mortgages prior to or within 30 days of the subject property's origination on 01/23/2007. The Borrower refinanced 2 disclosed properties. The Borrower refinanced the first property located in Kerman, CA and obtained a first mortgage on 12/22/2006 in the amount of $336,000 with a monthly payment of $1,481 and a second mortgage on 12/11/2006 with a mortgage for $84,000 and monthly payment of $528. The origination loan application reflected a mortgage on this property for $380,210 with a monthly payment of $1,755, which results in an increase of $254 per month; however, no verification of this mortgage was in the loan file. The second property located in Mendota, CA was refinanced on 02/12/2007. A first mortgage was obtained in the amount of $172,000 with a monthly payment of $1,246 and a second mortgage of $60,000 with a payment of $560. The loan application indicated a mortgage in the amount of $157,700 with a payment of $536 was attached to this property, which results in an increase of $1,270 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose $1,524 in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. | | | 2847019 |
| 21 | 0123881666 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 0 | The subject loan closed on 01/26/2007, in the amount of $400,000, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 78.431% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48.864% Debt to Income (DTI). There was a Manual approval dated 01/31/2007, in the loan file. | Stated | $400,000.00 | 2845097 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 3 | 3 | The subject loan was underwritten to prove the Borrower's reasonable ability to repay. Verification of the Borrower's debt, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845097 | |
| | | | | 1.04 (b) (xxi) BNC 2007-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2007-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a home-based landscaping service business earning $8,600 per month on the loan application. The loan file contained the Borrower's federal income tax return, provided by the Borrower for loss mitigation, which revealed the Borrower's income for 2007, the year the subject loan closed, was $3,725 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a home-based landscaping service business earning $8,600 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845097 | |
| 22 | 0124033747 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/09/2007, in the amount of $208,000, as cash out refinance of an owner occupied single-family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 84.89% Loan to Value/Combined Loan to Value, and a 44.91% Debt to Income Ratio. There was a manual approval dated 02/05/2007, in the loan file. | Stated | $208,000.00 | 2845114 | |
| | | | | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Lead Packer for 21 years, earning $5,200 per month.<br><br>Income of $5,200 per month for a Packer is unreasonable and is a red flag for potential misrepresentation. The Bureau of Labor Statistics reported the average salary at the 90th percentile for a Packer in 2007 and in the same geographic region was $2,000 per month.<br><br>The Seller represented and warranted, in part, the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845114 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2007-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2007-2_No Event of Default | Misrepresentation of Income – Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower reported being employed as an Lead Packer earning $5,200 per month on the loan application. The loan file contained post-closing 2007 tax return transcripts, which reflected the Borrower earned $14,222, or $1,185 per month in 2007.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Packer earning $5,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845114 |
| 23 | 0124035346 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/20/2007, in the amount of $219,000, as a purchase of an owner occupied single family residence located in a planned unit development. The loan was approved as a Full Documentation loan, with a 100% Loan to Value/Combined Loan to Value, and a 22.744% Debt to Income Ratio. There was a manual approval dated 02/26/2007, in the loan file. | Full | $219,000.00 | 2845115 |
| | | | | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 2 | 3 | Per the final HUD-1 Settlement Statement, the Borrower had an earnest money deposit of $1,000 and was required to bring $178 in funds to closing. In total, the Borrower was required to verify $1,178 in assets for the subject property.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $1,178 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845115 |
| 24 | 0124054255 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an AUS nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $440,000.00 | 2845133 |

|  |  |  |  |  |  |  |  |  | Findings |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | | The subject loan was underwritten with regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845133 |
| 25 | 0124054818 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | | The subject loan closed on 01/29/2007, in the amount of $288,888, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value, and a 49.941% Debt to Income Ratio. There was a manual approval dated 01/29/2007, in the loan file. | Stated | $288,888.00 | 2845134 |
| . | | | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | | The Borrower stated on the loan application employment as a Janitor for 3.6 years, earning $6,250 per month.<br><br>Income of $6,250 per month for a Janitor is unreasonable and is a red flag for potential misrepresentation. The U.S. Bureau of Labor and Statistics reported the average salary at the 75th percentile for a Janitor in 2006 and in the same geographic region was $2,479 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845134 |
| . | | | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | | The Borrower stated on the loan application that she rented her current residence for 5 years with a monthly payment of $675; however, the Borrower's housing payment history was not provided.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845134 |
| 26 | 0124242603 | 1st | SASC 2007-BC3 | | Loan Summary | Loan Summary | 0 | 0 | | The subject loan closed on 03/23/2007, in the amount of $307,000, as cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 70.575% Loan to Value/Combined Loan to Value, and a 44.479% Debt to Income Ratio. There was a manual approval dated 03/30/2007, in the loan file. | Stated | $307,000.00 | 2847039 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | . | | . | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 3 | The Borrower stated on the loan application for 10.5 years as a Truck Driver for 9 years, earning $7,250 per month. Income of $7,250 per month for a Truck Driver is unreasonable and is a red flag for potential misrepresentation. Salary.com reported the average salary at the 75th percentile for a Truck Driver/Tractor Trailer in the same geographic region was $4,682 per month. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847039 | |
| 27 | 0124264037 | 1st | SASC 2007-BC3 | | Loan Summary | Loan Summary | 0 0 | The subject loan closed on 03/17/2007, in the amount of $227,970, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 21.90% Debt to Income Ratio (DTI). There was a Manual approval dated 03/22/2007, in the loan file. | Full | | $227,970.00 | 2847044 | |
| | . | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Income | Improper Calculation of Income | 1 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Accurate calculation of the Borrower's income, so as to confirm the adequacy of the Borrower's financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. A monthly income of $9,566 per month was used to determine the Borrower's Debt to Income Ratio (DTI). An audit verification of employment and income was obtained from the Borrower's employer, which revealed that the Borrower was employed with the same employer listed on the loan application from 07/26/2004 through 03/16/2007, which was only 1 day prior to the subject loan closing date of 03/17/2007. Therefore, the Borrower's income was misrepresented and should be omitted from the DTI. Despite the Seller's representations, a review of the loan file reveals the Lender failed to accurately calculate the Borrower's income and has a significant impact on the Borrower's reasonable ability to repay the subject loan. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847044 | |
| | | | | 1.04 (c) (v) SAS 2007-BC3_No Fraud  1.04 (c) (vii) SAS 2007-BC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 3 3 | The Borrower misrepresented his employment on the loan application, as an Electric Engineer for 3 years. An audit verification of employment and income was obtained from the Borrower's employer, which revealed that the Borrower was employed with the same employer listed on the loan application from 07/26/2004 through 03/16/2007, which was 1 day prior to the subject loan closing date of 03/17/2007. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. There was no evidence that the Borrower had the ability to earn sufficient income to support the subject obligation. Despite the Seller's representations, the Borrower falsely stated employment as an Electric Engineer for 3 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | | 2847044 | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (c) (v) SAS 2007-BC3_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower represented on the loan application that the Borrower falsely stated income as an Electric Engineer earning $9,566 per month on the loan application. An audit verification of employment and income was obtained from the Borrower's employer, which revealed that the Borrower was employed from 07/26/2004 through 03/16/2007, which was 1 day prior to the subject loan closing date of 03/17/2007.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Electric Engineer earning $9,566 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2847044 |
| 28 | 0124281825 | 1st | SASC 2007-BC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/05/2007, in the amount of $160,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's loan application, credit report, title and income documents. The loan file did not contain a final HUD-1 statement, Truth in Lending statement, Note, Mortgage, appraisal and home owner's insurance. | Unknown | $160,000.00 | 2847048 |
| | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. The loan file only contained the Borrower's signed loan application, credit report, title and income documents.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847048 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

**Digital Risk - Loan Review Findings**

Cowen_US Bank_Final_Version_14    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
7/8/8    33 of 256

| # | Loan # | Lien | Deal | Finding Code | Finding | Finding Desc | | | Narrative | Doc | Amount | ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 29 | 30918445 | 1st | LMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/30/2005, in the amount of $1,495,000, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 65% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.67% Debt to Income ratio (DTI). There was a Manual approval dated 07/06/2005, in the loan file. | Full | $1,495,000.00 | 2845250 | |
| | . | | | 1.04 (b) (xii) LMT 2006-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xxxiv) LMT 2006-2_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The disclosed finance charge ($723,578.22) is ($3,175.18) below the actual finance charge($726,753.40).<br><br>The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d)(1)).<br><br>Despite the Seller's representations, the Annual Percentage Rate (APR) and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845250 | |
| 30 | 40145724 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/15/2007, in the amount of $342,000, as a purchase of an owner occupied single family residence. The loan was approved as a No Ratio loan (No Income, Verified Asset), with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV). There was a Manual approval dated 02/15/2007, in the loan file. | NIVA | $342,000.00 | 2845633 | |
| | . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income ratio (DTI) in excess of 60%.<br>The subject loan was a No Ratio loan (No Income, Verified Asset). The loan file contained post closing income documentation for the subject year loan closing 2007. The Borrower's 2007 W-2 income reflected the Borrower's actual income was $3,903 per month.<br><br>Despite the Seller's representations, a re-calculation of the Debt to Income ratio (DTI) based on the Borrower's verified income results in a DTI of 102.95%, which exceeds the represented Debt to Income ratio (DTI) of 60%. | | | 2845633 | |
| 31 | 40284671 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/19/2002, in the amount of $460,000, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 49.73% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 34.63% Debt to Income ratio (DTI). There was a Desktop Underwriting (DU) approval dated 11/19/2002, in the loan file. | Full | $460,000.00 | 2845648 | |
| | . | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrowers misrepresented their debt obligations. The subject loan closed 11/19/2002. A review of the audit credit report revealed the Borrowers obtained an auto installment loan in the same month as the subject loan closing. The undisclosed auto installment loan had a balance of $58,996 with a monthly payment of $1,638.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $1,638 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845648 | |
| 32 | 40421323 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/06/2007, in the amount of $600,000, as a purchase of an owner occupied property in a Planned Unit Development (PUD). The loan was approved as a No Ratio loan (No Income, Verified Asset), with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV). There was a Manual approval dated 04/06/2007, in the loan file. | NIVA | $600,000.00 | 2845653 | |
| | . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income ratio (DTI) in excess of 60%.<br><br>The subject loan was a No Ratio loan (No Income, Verified Asset). The loan file contained post closing income documentation for the subject year loan closing 2007, which verified the Borrower's actual income was $3,295 per month.<br><br>Despite the Seller's representations, a re-calculation of the Debt to Income ratio (DTI) based on the Borrower's verified income results in a DTI of 169.59%, which exceeds the represented Debt to Income ratio of 60%. | | | 2845653 | |
| | . | | | | | Grand Total of Repurchase Demand | | | | | $10,519,508.00 | | |

Cowen_US Bank_Final_Version_14

**Digital Risk - Loan Review Findings**
08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
V - part 3    Pg 34 of 256

Copyright 2013, Digital Risk, LLC.     Internal & Confidential - Do Not Duplicate     Run: 3/28/2013 3:17:51 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_13

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 00011765351 | 1st | SASC 2003-39EX | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrowers' post-closing documents. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $213,750.00 | 2846472 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law  1.04 (b) (xxvii) SAS 2003-39EX_Mortgage File  1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2846472 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law  1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846472 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law  1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846472 | |
| . | | | | 1.04 (b) (xxxiii) SAS 2003-39EX_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal was missing from the loan file.  The Seller represented and warranted, in part, that the appraisal complied with FIRREA.  Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846472 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 00015149370 | | SASC 2003-39EX | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/16/2004, in the amount of $108,000. There was neither an Automated Underwriting System (AUS) nor manual approval included in the loan file to definitively determine whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, HUD-1 settlement statement and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $108,000.00 | 2846495 | |
| | . | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law  1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846495 | |
| | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law  1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846495 | |
| | . | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law  1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The Right of Rescission is missing from the loan file.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, the loan file did not contain a Right of Rescission, which is evidence of the subject loan's noncompliance with applicable law. | | | 2846495 | |
| | | | | 1.04 (b) (xxxiii) SAS 2003-39EX_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 4 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal was missing from the loan file.  The Seller represented and warranted, in part, that the appraisal complied with FIRREA.  Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846495 | |
| | . | | | | | | | | | | | |

Cowen_US Bank_Final_Version_13

| 3 | 00121871206 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/12/2006, in the amount of $129,600, as a cash out refinance of an owner occupied condominium. The loan was approved as a Stated Income/Verified Assets (SIVA) loan with an 80%/100% loan-to-value/combined loan-to-value (LTV/CLTV), and a 44.39% debt-to-income ratio (DTI). There was a Manual approval dated 07/12/2006, in the loan file. | Stated | $129,600.00 | 2844872 | |
| | | | | 1.04 (b) (xii) BNC 2006-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xi) (g) BNC 2006-1_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xi) (h) BNC 2006-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxiii) BNC 2006-1_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, and acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844872 | |
| | | | | 1.04 (b) (xii) BNC 2006-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xi) (g) BNC 2006-1_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xi) (h) BNC 2006-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxiii) BNC 2006-1_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844872 | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xI) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Closing Coordinator earning $5,100 per month on the loan application. The bankruptcy documentation filed by the Borrower with the United States Bankruptcy Court Middle District of Florida on 08/18/2008 indicated the Borrower's actual income for the year of the subject loan closing was $26,800, or $2,233 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Closing Coordinator earning $5,100 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844872 | |
| 4 | 00123530230 | 2nd | SASC 2007-BNC1 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $39,200.00 | 2847152 | |
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xli) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the subject loan was underwritten pursuant to the Originator's underwriting guidelines.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847152 | |

| 5 | 00124278706 | 1st | SASC 2007-BNC1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/16/2007. It is in the amount of $284,750 as a cash-out refinance of an owner occupied, single family residence located in a planned unit development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49.42% Debt to Income Ratio (DTI). There was a Manual approval dated 03/16/2007, in the loan file. | Stated | $284,750.00 | 2847167 | |
| | | | | 1.04 (b) (xl) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xli) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAS 2007-BNC1_No Fraud<br><br>1.04 (b) (xxiii) SAS 2007-BNC1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Financial Counselor earning $6,800 per month on the loan application. Per post closing documentation obtained from the loan file, the Borrower's 2007 1040 tax returns indicated his actual earnings for the year of the subject loan closing in 2007, was $36,773, or $3,064 per month. Additionally, an audit Verification of Employment was obtained from The Work Number, which also reflected the Borrower's earnings as shown on the tax returns.<br><br>The Seller represented and warranted, in part, that the subject loan was underwritten in accordance with the Originator's underwriting guidelines.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Furthermore, the Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Financial Counselor earning $6,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847167 | |
| 6 | 00124412594 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/06/2007, in the amount of $152,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Commitment and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $152,000.00 | 2847058 | |
| | | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847058 | |

| 7 | 00124671249 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/25/2007, in the amount of $288,000, as cash out refinance of an owner occupied single family residence. The Stated loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 79.558% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 32.441% Debt to Income Ratio (DTI). There was a manual approval dated 05/31/2007, in the loan file. | | $288,000.00 | 2847074 |
| | . | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentatio n of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Mechanic earning $7,500 per month on the loan application. An audit verification of employment was obtained from the Borrower's employer, which revealed the Borrower's 2007 gross earnings were $45,517, or $3,793 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Mechanic earning $7,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847074 |
| 8 | 00124692948 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/25/2007, in the amount of $135,000, as cash out refinance of an owner occupied single-family residence. The Full loan was approved as a Full Documentation loan, with a 90%Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45.28% Debt to Income Ratio (DTI). There was a manual approval dated 05/24/2007, in the loan file. | | $135,000.00 | 2847080 |
| | . | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that they owned their current residence for 4 years with a monthly payment of $1,495.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The loan file contained a verification of mortgage, dated 05/22/2007, which reflected a private lien in the amount of $10,807 with a monthly payment of $180 per month. The loan file contained no evidence of payment or 12 months canceled checks to confirm the Borrower's housing payment.<br><br>Despite the Seller's representations, the loan file did not contain verification of the Borrower's housing payment history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847080 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_13

| # | Loan ID | Lien | Deal | Methodology | Finding | Sub-Finding | | | Narrative | Doc Type | Amount | Loan # | |
|---|---------|------|------|-------------|---------|-------------|---|---|-----------|----------|--------|--------|---|
| 9 | 0121335111 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/02/2006, in the amount of $119,600 as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48.71% Debt to Income Ratio (DTI). There was a Manual approval dated 06/02/2006, in the loan file. | Stated | $119,600.00 | 2846128 | |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that she rented her current residence for 2 years; however, the Borrower's monthly payment was not disclosed.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.
The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846128 | |
| | | | | 1.04 (b) (xlii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud

1.04 (b) (xliii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented her debt obligations. A review of the Mortgage Electronic Registration System and an audit credit report revealed 2 undisclosed mortgages tied to 1 undisclosed property located in Oakland, CA. The first undisclosed mortgage closed on 06/18/2006 with a loan amount of $392,000 and a monthly payment of $2,409. The second undisclosed mortgage closed on 06/07/2006 with a loan amount of $98,000 and a monthly payment of $1,113. The audit credit report also revealed 6 undisclosed student loans. The first undisclosed student loan was opened on 08/1999 with a loan amount of $2,625 and a payment of $20. The second undisclosed student loan was opened on 08/2000 with a loan amount of $1,280 and a payment of $9. The third undisclosed student loan was opened on 01/2001 with a loan amount of $1,345 and a payment of $10. The fourth undisclosed student loan was opened on 09/2001 with a loan amount of $1,750 and a payment of $13. The fifth undisclosed student loan was opened on 10/2003 with a loan amount of $2,750 and a payment of $21. The sixth undisclosed student loan was opened on 06/2004 with a loan amount of $1,499 and a payment of $11. The subject loan closed on 06/02/2006.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose $3,606 in monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the | | | 2846128 | |
| 10 | 0122230527 | 2nd | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/12/2006, in the amount of $78,000, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48.70% Debt to Income Ratio (DTI). There was a Manual approval dated 08/02/2006, in the loan file. | Stated | $78,000.00 | 2844886 | |
| | | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Quality Assurance Specialist for 2 years, earning $8,000 per month.

Income of $8,000 per month for a Quality Assurance Specialist is unreasonable and is a red flag for potential misrepresentation. The United States Bureau of Labor Statistics reported the average salary at the 75th percentile for a Quality Assurance Specialist in 2006 and in the same geographic region was $5,830 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844886 | |

| | | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrower stated on the loan application that he rented his current residence for 5 years with a monthly payment of $1,200. | | 2844886 |
| | | | | | | | | | | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's housing history, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan. | | |
| | | | | | | | | | | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. | | |
| | | | | | | | | | | The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. | | |
| | | | | | | | | | | Despite the Seller's representations, there is no evidence in the file of Borrower's housing payment history. | | |
| | | | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | |
| | | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 4 | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. | | 2844886 |
| | | | | | | | | | | The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. | | |
| | | | | | | | | | | Monthly debts of $3,896 were used by the Lender to determine the debt-to-income ratio (DTI). A review of the loan approval indicated the Borrower was qualified with a monthly payment of $2,048 for the first mortgage; however, the mortgage note revealed the actual monthly payment was $2,208. The correct recalculation results in a monthly debt of $4,057. | | |
| | | | | | | | | | | Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts. The inaccurately calculated debt significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. | | |
| | | | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | |
| | | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1  1.04 (b) (xxi) BNC 2006-2_No Fraud  1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Quality Assurance Specialist earning $8,000 per month on the loan application. An audit re-verification of employment and income was obtained from the Borrower's employer, which revealed the Borrower's income was $3,247 per month. | | 2844886 |
| | | | | | | | | | | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. | | |
| | | | | | | | | | | The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. | | |
| | | | | | | | | | | The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. | | |
| | | | | | | | | | | In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. | | |
| | | | | | | | | | | Despite the Seller's representations, the Borrower falsely stated income as a Quality Assurance Specialist earning $8,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. | | |
| | | | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 6 | 3 | The Borrower misrepresented her ownership of assets. The loan file contained a Verification of Deposit for the Borrower's savings account dated 07/21/2006, which reflected an ending balance of $1,497 and bank statements for the Borrower's checking account dated 5/24/2006, which reflected an ending balance of $1,497. The loan file also contained a Verification of Deposit for the Borrower's checking account dated 07/21/2006, which reflected an ending balance of $6,488; however, an audit verification was sent to the financial institution, which revealed the Borrower's checking account balance was $1,202.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that she had $9,000 down payment and 2 month's reserves in assets when in fact she had $3,714, meaning the amount of assets disclosed was misrepresented by $5,286, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2844886 |
| 11 | 0122230691 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/31/2006, in the amount of $420,000, as a purchase of an owner occupied, 2-unit property. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 38.74% Debt to Income Ratio (DTI). There was a Manual approval dated 07/31/2006, in the loan file. | Stated | $420,000.00 | 2844887 |
| | | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 1 | 3 | The Borrower misrepresented his ownership of assets. The loan file contained a Verification of Deposit for the Borrower's checking account dated 07/25/2006, which reflected an ending balance of $17,419. An audit verification of deposit was obtained, which revealed the Borrower's actual balance was $7,419.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>The Borrower falsely disclosed that he had $17,419 down payment and 2 month's reserves when in fact he had $7,419, which constitutes an event of default under the executed Mortgage and or Deed of Trust.<br><br>Despite the Seller's representations, the amount of assets verified was misrepresented by $10,000. | | | 2844887 |
| 12 | 0122236581 | 2nd | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/03/2006, in the amount of $82,000, as a purchase of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 43.79% Debt to Income Ratio (DTI). There was a Manual approval dated 08/03/2006, in the loan file. | Stated | $82,000.00 | 2844896 |
| | | | | 1.04 (b) (x) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The Origination credit report dated 07/14/2006, reflected 3 credit inquiries from 05/13/2006 to 07/07/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that the credit inquiries for the previous 90 days were investigated so as to determine whether such inquires resulted in additional debt undisclosed on the loan application, such that an accurate credit profile was verified. Loan inquiries give a lender insight as to any potential loans a Borrower may be in the process of acquiring at the time of application for the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders | | | 2844896 |

Cowen_US Bank_Final_Version_13

| | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrower stated on the loan application that he rented his current residence for 1 year with a monthly payment of $1,300. | | | 2844896 | |
| | | | | | | | | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. | | | | |
| | | | | | | | | The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. | | | | |
| | | | | | | | | The loan file contained evidence of a verification of the Borrower's housing history; however, the landlord was a private individual and 12 months canceled checks were required when landlord was not an institution or management company, and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed. | | | | |
| | | | | | | | | Despite the Seller's representations, the Borrower's housing history was not properly verified. | | | | |
| | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | |
| | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 <br><br>1.04 (xxi) BNC 2006-2_No Fraud <br><br>1.04 (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 4 | 3 | The Borrower misrepresented her debt obligations. Public Records and the Audit Credit Report indicated the Borrower purchased an undisclosed property on 07/11/2006, 22 days prior to the subject loan closing, and acquired a first mortgage in the amount of $337,600 with a calculated monthly payment using the same interest rate as the subject's first mortgage loan transaction, in the amount of $2,584. The Borrower also acquired a second mortgage on 07/14/2006, in the amount of $84,400 with a calculated monthly payment using the same interest rate as the subject loan transaction, of $907. | | | 2844896 | |
| | | | | | | | | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan | | | | |
| | | | | | | | | The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. | | | | |
| | | | | | | | | In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. | | | | |
| | | | | | | | | Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose $3,491 in monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. | | | | |
| | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | |

| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 5 | 3 | The Borrower misrepresented her employment on the loan application as a Self-employed Party Planner for 2 years with secondary employment as an Assistant Supervisor for 12 years. The Bankruptcy Petition filed 09/22/2008, indicated in Section 18 of the Statement of Financial Affairs, that the Borrower was not self-employed. The Bankruptcy schedules indicated the Borrower was employed with the employer listed as a secondary source of income; however, there was no indication of being self-employed as a Party Planner as stated on the loan application. The Borrower's position with the secondary employment was stated as an Assistant Supervisor of a hotel; however, Schedule I of the Bankruptcy petition indicated the Borrower was a Housekeeper for 15 years.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Self-employed Party Planner for 2 years with secondary employment as an Assistant Supervisor for 12 years, which constituted an event of default under the executed Mortgage and or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844896 | |
| . | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 6 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a self-employed Party Planner earning $5,200 per month with secondary employment as an Assistant Supervisor for a hotel, earning an additional $4,000 per month on the loan application. The Bankruptcy Petition filed 09/22/2008, indicated in Section 18 of the Statement of Financial Affairs, that the Borrower was not self-employed. The Bankruptcy schedules indicated the Borrower was employed with the employer listed as a secondary source of income; however, there was no indication of being self-employed as a Party Planner as stated on the loan application. The Borrower's position with the secondary employment was stated as an Assistant Supervisor of a hotel; however, the Schedule I of the Bankruptcy petition indicated the Borrower was a Housekeeper for 15 years. The Bankruptcy records obtained revealed the Borrower's monthly earnings for 2006, the year of the subject loan closing as $2,171.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a self-employed Party Planner earning $5,200 per month with secondary employment as an Assistant Supervisor of a hotel, earning $4,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844896 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 7 | 3 | The Borrower misrepresented his intent to occupy the subject property. Public records, the Bankruptcy Petition filed 09/22/2008 and the Audit Credit Report reveals the Borrower did not occupy the subject property after the subject loan closing date of 08/03/2006. The Borrower purchased an undisclosed property on 07/11/2006, 22 days prior to the subject loan closing, and occupied the undisclosed property as her primary residence from 07/2006 to 01/2008. Public records indicated numerous other individuals occupied the subject property from 11/2001 to 02/2007.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2844896 |
| 13 | 0122237399 | 1st | BNCMT 2006-2 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/15/2006, in the amount of $286,000, as a cash out refinance of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with 65% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 29.66% Debt to Income Ratio (DTI). There was a Manual approval dated 08/15/2006, in the loan file. | Stated | $286,000.00 | 2844897 |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Automobile Painter earning $5,800 per month on the loan application. An audit re-verification of employment was obtained from the Borrower's employer, which revealed the Borrower earned $3,003 per month for 2006, the year of the subject loan closing.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Automobile Painter earning $5,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | 2844897 |
| 14 | 0122240716 | 2nd | BNCMT 2006-2 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/20/2006 , in the amount of $88,000, as a purchase of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 46.22% Debt to Income Ratio (DTI). There was a Manual approval dated 08/09/2006, in the loan file. | Stated | $88,000.00 | 2844898 |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that he rented his current residence for 4 years with a monthly payment of $2,200.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, 12 months canceled checks were required to confirm the housing payment history and were not provided, and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | 2844898 |

| | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $6,760 for the subject property. In total, assets of $6,760 were required to be verified. The loan file did not contain any asset documentation.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $6,670 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844898 |
| | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Sales Manager earning $10,000 per month on the loan application. The Bankruptcy petition filed 10/28/2008 indicated the Borrower earned $3,204 per month for 2006, the year of the subject loan closing.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Sales Manager earning $10,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | 2844898 |
| | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 5 | 3 | The Borrower misrepresented his intent to occupy the subject property. Public records and the Bankruptcy petition filed 10/28/2008, indicated the Borrower continued to occupy the proposed departure residence indicated on the loan application, from 03/2002 to 01/2013 and did not occupy the subject property after the subject loan closing date of 07/20/2006 as disclosed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2844898 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_13

| 15 | 0123004863 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/25/2006, in the amount of $116,000 as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan with a 20.351% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 53.8% Debt to Income (DTI). There was a Manual approval dated 09/25/2006, in the loan file. | Full | $116,000.00 | 2846875 | |
| . | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Cash Out Exceeds Maximum Allowable | Cash Out Amount Exceeds Guideline Maximum | 1 | 3 | Per the final HUD-1, dated 09/30/2006, the Borrower received $8,193 cash back at closing. The loan file contained a final loan approval dated 10/10/2006, which reflected the loan was approved as a rate and term refinance, which limits the cash to the Borrower to the greater of 2% of the loan amount or $2,000.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's cash out received at closing exceeded the maximum allowable and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846875 | |
| 16 | 0123005787 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/12/2006, in the amount of $255,000, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45.792% Debt to Income (DTI). There was a Manual approval dated 10/31/2006, in the loan file. | Stated | $255,000.00 | 2846876 | |
| . | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower indicated that he was a Transportation Security officer with a government agency for 4 years, earning $4,250 per month. The Co-Borrower indicated that she was an Accountant with a religious organization for 5 years and 3 months, earning $4,100 per month.<br><br>Incomes of $4,250 per month for a Transportation Security Officer and $4,100 per month for an Accountant are unreasonable and are red flags for potential misrepresentation. The Bureau of Labor Statistics reported the average salary at the 75th percentile for a Transportation Security Officer in 2006 and in the same geographic region was $2,041 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income were unreasonable and significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846876 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| Categories | | | | |
|---|---|---|---|---|
| 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | | | | 2846876 |
| 1.04 (c) (v) SAS 2006-BC6_No Fraud | | | | |
| 1.04 (c) (vii) SAS 2006-BC6_No Event of Default | | | | |

The Borrower misrepresented their disposed income. The Borrower falsely stated income as a Transportation Security Officer earning $4,250 per month on their loan application. The co-borrower stated income of $4,100 per month as an Accountant. An audit verification of employment, obtained through The Work Number, revealed the Borrower's income for 2006, the year the subject loan closed, was $3,192 per month. An audit verification of employment, obtained through the Co-Borrower's employer, revealed the Co-Borrower's income for 2006 was $2,683 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrowers falsely stated incomes as a Transportation Security Officer earning $4,250 per month and an Accountant earning $4,100 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrowers' reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

---

**17  0123007304  1st  SASC 2006-BC6     Loan Summary   Loan Summary   0   0     Full   $258,000.00   2846878**

The subject loan closed on 10/11/2006, in the amount of $258,000, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 78.18% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 54.072% Debt to Income (DTI). There was a Manual approval dated 09/29/2006, in the loan file.

| Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Cash Out Exceeds Maximum Allowable | Cash Out Amount Exceeds Guideline Maximum | 1 | 3 | | | | 2846878 |

Per the final Hud-1 dated 10/24/2006, the Borrower paid off an auto installment loan in the amount of $12,898, a home equity line of credit that was opened on 08/2006 in the amount of $27,421, and received cash back in the amount of $3,201, which exceeds the maximum allowable cash out of the lesser of either 2% of the loan amount or $2,000.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the Borrower received cash back in excess of the maximum allowable amount and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

---

**18  0123007668  1st  SASC 2006-BC6     Loan Summary   Loan Summary   0   0     Stated   $138,000.00   2846879**

The subject loan closed on 09/05/2006, in the amount of $138,000, as a rate and term refinance of an owner occupied, singe family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 77% loan-to-value/combined loan-to-value, and a 50.30% debt-to-income ratio. There was a Manual approval dated 10/17/2006, in the loan file.

| Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Cash Out Exceeds Maximum Allowable | Cash Out Amount Exceeds Guideline Maximum | 1 | 3 | | | | 2846879 |

Per the final HUD-1, dated 09/18/2006, the Borrower received $39,257 cash back at closing, which exceeds the maximum allowable cash back of 2% or $2,000 for a rate and term refinance.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the Borrower received excessive cash back at closing and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

| | | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 2 | 3 | The Borrower stated on the loan application employment as a House Cleaner for 5 years, earning $4,150 per month. | | | | 2846879 |
| | | | | | | | | | | Income of $4,150 per month for a House Cleaner is unreasonable and is a red flag for potential misrepresentation. The United States Bureau of Labor Statistics reported the average salary at the 75th percentile for a House Cleaner in 2006 and in the same geographic region was $1,720 per month. | | | | |
| | | | | | | | | | | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. | | | | |
| | | | | | | | | | | The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. | | | | |
| | | | | | | | | | | Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. | | | | |
| | | | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | |

Copyright 2013, Digital Risk, LLC.     Internal & Confidential - Do Not Duplicate     Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_13

| 19 | 0123008740 | 2nd | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/12/2006. Loan amount of $98,400 as a purchase of an owner occupied single family residence located in a Planned Unit Development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 50.543% Debt to Income (DTI). There was a Manual approval dated 10/23/2006, in the loan file. | Stated | $98,400.00 | 2846881 | |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Supervisor with a public transportation company for 6 years, earning $8,420 per month.<br><br>Income of $8,420 per month for a Supervisor is unreasonable and is a red flag for potential misrepresentation. The Bureau of Labor Statistics reported the average salary at the 75th percentile for a Supervisor in 2006 and in the same geographic region was $5,508 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846881 | |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrower stated on the loan application that he rented his current residence for 7 years with a monthly payment of $1,700.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The loan file contained a loan approval dated 10/23/2006, which conditioned for a 12 month rental payment history confirmed through a verification of rent (VOR) or 12 months canceled checks, which were not provided.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846881 | |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 4 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. The Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $7,620 for the subject property. In total, assets of $7,620 were required to be verified. The loan file did not contain asset documentation.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $7,620 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846881 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | . | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2006-BC6_No Fraud<br><br>1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | | | 2846881 |

The Borrower misrepresented her disclosure of income. The Borrower falsely stated income as a Supervisor earning $8,420 per month on the loan application. According to a Statement of Financial Affairs filed by the Borrower with the Central District of California Bankruptcy Courts as part of a Chapter 7 Bankruptcy case dated 04/01/2008, the Borrower's income for 2006, the year of the subject loan closed, was $4,874 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Supervisor earning $8,420 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

| | . | | | 1.04 (c) (v) SAS 2006-BC6_No Fraud<br><br>1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 6 | 3 | | | 2846881 |
|---|---|---|---|---|---|---|---|---|---|---|

The Borrower misrepresented her intent to occupy the subject property. According to Section 15 of the Statement of Financial Affairs, filed by the Borrower with the Central District of California Bankruptcy Courts as part of a Chapter 7 Bankruptcy case dated 04/01/2008, the Borrower never occupied the subject property. The Borrower continued to reside at his departing address located in Los Angeles, CA.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust.

| 20 | 0123011488 | 2nd | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | Stated | $91,980.00 | 2846892 |
|---|---|---|---|---|---|---|---|---|---|---|---|

The subject loan closed on 10/16/2006, in the amount of $91,980, as a purchase money second mortgage of an owner occupied detached single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 50.031% Debt to Income Ratio (DTI). There was a Manual dated 10/25/2006, in the loan file.

| | . | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | | | 2846892 |
|---|---|---|---|---|---|---|---|---|---|---|---|

The Borrower stated on the loan application employment as a Medical Assistant for 6 years, earning $7,880 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

Cowen_US Bank_Final_Version_13

| 21 | 0123019168 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/12/2006, in the amount of $549,862 as a cash out refinance of an owner occupied detached single family residence. The loan was approved as a Stated Income, Stated Asset loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 41.558% Debt to Income ratio (DTI). There was a Manual approval dated 10/25/2006, in the loan file. | SISA | $567,000.00 | 2846911 | |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Manager for a Parcel Service for 12 years, earning $10,350 per month.<br><br>Income of $10,350 per month for a Manager is unreasonable and is a red flag for potential misrepresentation. The US Bureau of Labor Statistics reported the average salary at the 90th percentile for a Manager for a Parcel Service in 2006 and in the same geographic region was $6,376 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846911 | |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2006-BC6_No Fraud<br><br>1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Manager of a Parcel Service earning $10,350 per month on the loan application. An audit verification of employment was obtained from the Borrower's employer, which revealed the Borrower's actual income for the year 2007 was $5,429 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Manager of a Parcel Service earning $10,350 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846911 | |

# Digital Risk - Loan Review Findings

Cowen_US Bank_Final_Version_13     08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
Part 7   Pg 54 of 256

| 22 | 0123024424 | 2nd | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/18/2006, in the amount of $80,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 44.76% Debt to Income Ratio (DTI). There was a Manual approval dated 10/30/2006, in the loan file. | Stated | $80,000.00 | 2846925 | |
| . | | | | 1.04 (b) (xiii) SAS 2006-BC6_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xviii) (g) SAS 2006-BC6_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xviii) (h) SAS 2006-BC6_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (c) (xvii) SAS 2006-BC6_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846925 | |
| . | | | | 1.04 (c) (v) SAS 2006-BC6_No Fraud<br><br>1.04 (c) (viii) SAS 2006-BC6_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 4 | 3 | The Borrower misrepresented her employment on the loan application. The origination loan application indicated the Borrower was employed as a Multiple Store Manager for 5 years, 6 months, earning $9,400 per month. An audit verification of employment was obtained from The Work Number, which indicated the Borrower was employed as of 11/22/2005 with a current job title as Sales Associate. The subject loan closed on 10/19/2006; therefore, the Borrower was with her current employer for 11 months and not 5 years, 6 months, as indicated on the loan application. Furthermore, the Borrower's annual earnings were provided from 2008 through 2013, of which the greatest amount of income was $16,991 in 2008. The current rate of pay is indicated as $9.25 hourly.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of a Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Multiple Store Manager for 5.6 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2846925 | |
| 23 | 0123539363 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/04/2006, in the amount of $352,500, as a cash out refinance of an owner occupied Single Family Residence. The loan was approved as a Full Documentation loan, with a 75% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 42.15% Debt to Income Ratio (DTI). There was a Manual approval dated 12/04/2006, in the loan file. | Full | $352,500.00 | 2845025 | |
| . | | | | 1.04 (b) (xxi) BNC 2007-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2007-1_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 2 | 3 | The Borrower misrepresented her ownership of assets. The loan file contained a bank statement, dated 10/19/2006, which reflected an ending balance of $3,359; however, an audit Verification of Deposit (VOD) was obtained, which reflected an ending balance of $754 on 10/19/2006.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that she had $3,359 month's reserves when in fact she had $754. The amount of assets verified was misrepresented by $2,605, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845025 | |

# Digital Risk - Loan Review Findings

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xxi) BNC 2007-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2007-1_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Health Care Assistant earning $6,000 per month on the loan application. The loan file contained 12 months bank statements with average deposits of $7,593 per month; however, the post closing W-2 form obtained through the modification/foreclosure process, for 2006 the year of the subject loan closing, reflected the income for the Borrower was $2,399 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Health Care Assistant earning $6,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845025 |
| 24 | 0123545253 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/27/2006, in the amount of $55,000, as a purchase of an owner occupied single-family residence. The loan was approved as a Full Documentation loan, with a 100% Loan to Value/Combined Loan to Value, and a 40.98% Debt to Income Ratio. There was a manual approval dated 12/26/2006, in the loan file. | Full | $55,000.00 | 2845034 |
| . | | | | 1.04 (b) (xii) BNC 2007-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xl) (h) BNC 2007-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxiii) BNC 2007-1_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845034 |
| . | | | | 1.04 (b) (xii) BNC 2007-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xl) (h) BNC 2007-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxiii) BNC 2007-1_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845034 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xi) (I) BNC 2007-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 5 | 3 | the Borrower rented on the basis application that they resided in their current residence for 16 years with no monthly payment disclosure.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845034 | |
| . | | | 1.04 (b) (xxxiv) BNC 2007-1_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 6 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845034 | |
| 25 | 0123546608 | 1st | BNCMT 2007-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/11/2006, in the amount of $488,750, as a cash out refinance of an owner occupied Single Family Residence (SFR). The loan was approved as a Full Documentation loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 50.70% Debt to Income Ratio (DTI). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Full | $488,750.00 | 2845038 | |
| | | | 1.04 (b) (xii) BNC 2007-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xI) (h) BNC 2007-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxii) BNC 2007-1_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845038 | |
| . | | | 1.04 (b) (xii) BNC 2007-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xI) (h) BNC 2007-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxii) BNC 2007-1_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845038 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1.04 (b) (xii) BNC 2007-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxiii) BNC 2007-1_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2845038 |
| 1.04 (b) (xxxiv) BNC 2007-1_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal was missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | 2845038 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_13

| 26 | 0123866600 | 1st | SASC 2007-BC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/12/2007, in the amount of $408,000 as a cash-out refinance of an owner occupied single family residence. The loan was approved as a stated income/verified asset (SIVA) loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.781% Debt to Income Ratio (DTI). There was a Manual approval dated 01/24/2007, in the loan file. | Stated | | $408,000.00 | 2847023 | |
| | . | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower indicated that she was an Administrative Assistant with a government agency for 5 years, earning $6,200 per month and received supplemental income in the amount of $1,241 in Social Security benefits for her son and daughter. 

Income of $6,200 per month for a Administrative Assistant is unreasonable and is a red flag for potential misrepresentation. The Bureau of Labor Statistics reported the average salary at the 75th percentile for an Administrative Assistant in 2007 and in the same geographic region was $4,183 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847023 | |
| | . | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (c) (v) SAS 2007-BC3_No Fraud

1.04 (c) (vii) SAS 2007-BC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated employment income as an Administrative Assistant earning $6,200 per month on the loan application. An audit verification of employment was conducted through The Work Number, which revealed the Borrower earned $43,143, or $3,596 per month in 2007 the year the subject loan closed.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as an Administrative Assistant earning $6,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847023 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_13

| 27 | 40370504 | 1st | LXS 2007-8H | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/26/2007. The amount of $226,500 was a rate and term refinance of an owner occupied single-family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 98.90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 44.61% Debt to Income. There was a manual approval dated 03/26/2007, in the loan file. | Stated | $226,500.00 | 2845650 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrowers' verified income results in an increase from 44.61% to 71.80%, which exceeds the represented DTI of 60%. | | | 2845650 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (vii) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrowers misrepresented their disclosed incomes. The Borrower falsely stated income as a Head Waitress earning $4,500 per month and the Co-Borrower falsely stated income as a Detailer earning $3,600 per month on the loan application. The loan file contained post-closing 2008 tax returns and the Borrower's 2008 W-2 form, which revealed the Borrower earned $15,390, or $1,282 per month as a Waitress and in 2008 the Co-Borrower earned $1,368 per month in self employment, which was not disclosed on the loan application. It is unlikely the Borrowers' incomes would have decreased considering the Borrowers were employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Head Waitress earning $4,500 per month and the Co-Borrower falsely stated income as a Detailer earning $3,600 per month on the loan application, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust, it also significantly impacted the determination of the Borrower's reasonability to repay the subject loan. | | | 2845650 |
| . | | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 4 | 3 | The Co-Borrower misrepresented his employment on the loan application as a Detailer for a car wash for 19 years. The loan file contained post-closing 2008 tax returns which reflect a 2-year tax history for 2007 and 2008. The tax return for 2008 reflects the Co-Borrower was self-employed with the same employer at the same address as listed on the 1003. The Co-Borrower's final loan application did not reflect any self employment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Co-Borrower falsely stated employment as a Detailer for a car wash for 19 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2845650 |
| | | | | | | | | **Grand Total of Repurchase Demand** | | **$5,559,030.00** | |

.
.

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 2:30:23 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_12

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 000000031273485 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/15/2005, in the amount of $485,000, as a cash out refinance of an owner occupied multi family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 64.67% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 37% debt to income ratio (DTI). There was a Manual approval dated 07/14/2005, in the loan file. The Hud-1, revealed the Borrower received $57,573 at closing. | Stated | $485,000.00 | 2845362 | |
| . | | | | 1.04 (c) (v) LXS 2005-4_No Fraud<br><br>1.04 (c) (vii) LXS 2005-4_No Event of Default | Misrepresentatio n of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentatio n of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income in General Maintenance earning $9,500 per month on the loan application. The subject loan file contained post closing documentation, which contained the Borrower's 2006 tax returns, which revealed the Borrower's verified income was $1,078 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income in General Maintenance earning $9,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845362 | |
| 2 | 000000033737024 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/27/2006, in the amount of $67,400, as a purchase of a non owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 45% Debt To Income Ratio (DTI). There was a Manual approval dated 12/26/2006, in the loan file. | Full | $67,400.00 | 2845584 | |
| . | | | | 1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Misrepresentatio n of Debt Obligations - No Red Flags Present | Misrepresentatio n of Debt Obligations | 1 | 3 | The Borrower misrepresented his debt obligations. A review of the audit credit report revealed the Borrower obtained an undisclosed mortgage prior to the subject loan closing of 12/27/2006. In 07/2006, the Borrower obtained an undisclosed mortgage with a loan amount of $80,000 and a monthly payment of $712 on an undisclosed property.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose a $712 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845584 | |
| 3 | 000000033769118 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/30/2007, in the amount of $370,000, as a purchase of an owner occupied detached single family residence located in a Planned Unit Development (PUD). The loan was approved as a Stated Income/Stated Asset loan, with a 100% Loan to Value/Combined Loan to Value, and a 37.532% Debt to Income Ratio (DTI). There was a Manual approval dated 01/30/2007, in the loan file. | SISA | $370,000.00 | 2845589 | |
| . | | | | 1.04 (b) (xviii) LXS 2007-5H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt To Income (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of Debt To Income (DTI) based on the Borrower's verified income results in an increase from 37.55% to 122.09%, which exceeds the represented Debt To Income (DTI) of 60%. | | | 2845589 | |
| . | | | | 1.04 (b) (xviii) LXS 2007-5H_DTI<br><br>1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Misrepresentatio n of Income - Red Flags Present - Same Year Income Evidence | Misrepresentatio n of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Commercial Driver earning $9,000 per month on the loan application. The Borrower provided post closing income documentation for the purpose of obtaining a home modification loan. The Borrower provided his W-2 form for the subject year loan closing, which verified the Borrower's actual income was $2,823 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt To Income Ratio (DTI) based on the Borrower's verified income yields a Debt To Income (DTI) of 122.09%, which exceeds the Seller's represented 60% Debt to income ratio.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Commercial Truck Driver earning $9,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845589 | |

| # | Loan Number | Lien | Deal | | | | | Description | Doc Type | Amount | Loan ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 00014241574 | 1st | SASC 2003-GEL1 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/13/2002, in the amount of $299,250.00, as a purchase of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Assets loan, with a 99.75% Loan to Value/Combined Loan to Value LTV/CLTV, and a 48.52% Debt to Income (DTI). There was a Manual approval dated 08/16/2002, in the loan file. | Stated | $299,250.00 | 2846501 | |
| | . | | | 1.04 (c) (v) SAS 2003-GEL1_No Fraud  1.04 (c) (vii) SAS 2003-GEL1_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented her employment on the loan application as a self-employed Real Estate Investor for 2.75 years. The Bankruptcy petition records filed 07/30/2005 in Section 18 of the Statement of Financial Affairs did not reflect the Borrower as self-employed as stated on the loan application.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated employment as a self-employed Real Estate Investor for 2.75 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2846501 | |
| | . | | | 1.04 (c) (v) SAS 2003-GEL1_No Fraud  1.04 (c) (vii) SAS 2003-GEL1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a self-employed Partner of a real estate company earning $9,500 per month on the loan application. The Bankruptcy petition records filed 07/30/2005 in Section 18 of the Statement of Financial Affairs did not reflect self employment for Borrower.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a self-employed Partner of a real estate investment company earning $9,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846501 | |
| 5 | 0120893045 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/18/2006, in the amount of $123,300, as a purchase of an owner occupied single-family residence. The loan was approved as a Full Documentation loan, with a 90% Loan to Value/Combined Loan to Value, and a 7.3% Debt to Income Ratio. There was a manual approval dated 05/31/2006, in the loan file. | Full | $123,300.00 | 2845946 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that they rented their current residence for 1 year with a monthly payment of $750. The loan file contained a verification of rent dated 4/30/2006, which reflects a housing history for the Borrower from 03/03/2005 through 04/30/2006. However, due to the property owner being a private party, 12 months cancelled checks front and back were required as evidence of payment, which were not required.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed and also significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845946 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1, the parts' statement of funds required for closing were $15,673. In addition, the Borrower was required to verify $14,000 in gift funds for the subject property. In total, assets of $29,673 were required to be verified. The loan file contained a $14,000 gift letter from the Borrower's nephew. Accompanying the gift letter, were bank statements, dated 04/01/2006 through 04/29/2006, reflecting a balance of $32,138. The bank statements reflect large deposits; however, none in the amount of $14,000 being transferred to or from the nephew's account. Further, the Borrower provided bank statements dated 03/31/2006 with a final balance of $6,417.\n\nThe Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.\n\nThe Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.\n\nPursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845946 | |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1\n\n1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud\n\n1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as Owner and Operator of a Transportation Company earning $20,539 per month on the loan application. According to the Statement of Financial Affairs on the Bankruptcy petition filed 09/05/2007, by the Borrower with the Eastern District of Wisconsin Bankruptcy Court, the Borrower's income for the year of the subject loan closing of 2006 was listed as $35,000 or $2,916 per month. Further, the Borrower's income for the year 2005 was listed as $15,000 or $1,250 per month.\n\nThe Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.\n\nThe Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.\n\nThe Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.\n\nIn addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.\n\nDespite the Seller's representations, the Borrower falsely stated income as an Owner and Operator of a Transportation Company earning $20,539 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and also significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.\n\nPursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845946 | |
| 6 | 0120897384 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/15/2006, in the amount of $184,000, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset documentation loan, with a 75.10% loan to value/combined loan to value ratio, and a 41.33% debt to income ratio (DTI). There was a manual approval, dated 05/23/2006, in the loan file. Per the final HUD-1, dated 05/24/2006, the Borrower paid off two other debts, totaling $8,383 and received cash proceeds in the amount of $18,431. | Stated | $184,000.00 | 2845965 | |

Copyright 2013, Digital Risk, LLC.     Internal & Confidential - Do Not Duplicate     Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_12

| | | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Office Manager, earning $5,300 per month on the loan application. Per the Borrower's 2008 W-2 form, obtained post-closing, the Borrower's actual 2008 income was $3,000 per month, the subject loan closed 05/15/2006. It is unlikely the Borrower's income would have decreased considering the Borrower was with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Office Manager, earning $5,300 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | 2845965 | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_12

| 7 | 0121285712 | 2nd | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan's closing occurred on 05/23/2006, for the purpose of a rate and term refinance purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 20%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 48.260% Debt to Income Ratio (DTI). There was a Manual approval dated 06/01/2006, in the loan file. | Stated | | $113,000.00 | 2846016 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Drywall Specialist for 14 years, earning $12,897 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Research conducted through the U. S. Bureau of Labor Statistics revealed that a Drywall Specialist located in the same area in 2006 could expect to earn a monthly income of $6,528 in the 90th percentile.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846016 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud

1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented his debt obligations. The origination credit report and the Mortgage Electronic Registry System report reflected that the Borrower opened two undisclosed mortgages in the amount of $624,000 and $156,000 on 06/06/2006, which was 12 days after the subject loan closing date on 05/25/2006. The undisclosed mortgages secured a property located in Salinas, California and resulted in an undisclosed monthly mortgage payment of $3,708 for the undisclosed mortgage in the amount of $624,000 and resulted in an additional undisclosed monthly mortgage payment of $837 for the undisclosed mortgages in the amount of $156,000. The Borrower's undisclosed mortgage resulted in a total undisclosed mortgage of $780,000 and resulted in an undisclosed monthly mortgage payment of $4,545.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose $4,545 in monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust and also significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846016 | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Drywall Specialist earning $12,897 per month on the loan application. An audit verbal verification of employment and income was obtained from the Borrower's employer, which revealed that the Borrower actually earned a monthly income of $6,327 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Drywall Specialist earning $12,897 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846016 | |
| | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 5 | 3 | The Borrower misrepresented his intent to occupy the subject property. Research conducted through Accurint and the address history listed on the audit credit report revealed that there were no occupancy history by the Borrower at the subject property and did not list any occupancy history as the subject purchase of an owner occupied property. A utility report was obtained through Accurint, which indicated that the Borrower opened utilities in the Borrower's name at the Borrower's departing address on 11/30/2006, which was only 6 months after the subject loan closing date. No records could be found to support that the Borrower ever occupied the subject property. Research conducted through public records indicated that in 2006 and 2007 the Borrower continued to occupy the proposed departure address and did not occupy the subject property after the closing date of 05/25/2006, as disclosed.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846016 | |
| | | | | | | | | | | | | |
| 8 | 0121287676 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/09/2006, in the amount of $744,000, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation/Bank Statement loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 45.41% Debt to Income Ratio (DTI). There was a Manual approval dated 06/09/2006, in the loan file. | Full | $744,000.00 | 2846022 | |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $13,934 for the subject property. In total, assets of $13,934 were required to be verified.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $13,934 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846022 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 3 | 3 | The Borrower misrepresented his intended use of the subject property. Research of public records revealed the Borrower filed a Chapter 7 bankruptcy with the Northern District of California on 04/17/2007. The petition included a Statement of Financial Affairs, which required the Borrower to report any previous addresses for the prior 3 years. The Borrower reported his current address as a property he purchased in 11/2006, 5 months after the subject loan closing on 06/09/2006, and reported his previous address as an address located in Oakland, CA, which matched the verification of rent and bank statements located in the loan file for the Borrower's departing address. It is important to note, the loan application did not list the Oakland, CA property as the Borrowers current address at closing, but listed the Borrower's rental property located in Stockton, CA as his current or departing residence. The discrepancy on the loan application for the Borrower's departing address was not addressed at origination.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and Deed of Trust also significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2846022 |
| 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 4 | 3 | The Borrower misrepresented his self employment on the loan application. Per the loan application, the Borrower indicated that he was self employed as a National Production Manager for 3 years. The loan file contained a letter of explanation from the Borrower, a business card and a reference letter as verification. Research of public records revealed the Borrower filed a Chapter 7 bankruptcy with the Northern District of California on 04/17/2007. The petition included a Statement of Financial Affairs, which required the Borrower to report any self employment for the previous addresses for the prior 6 years; however, the Borrower did not report any self employment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a self employed as a National Production Manager for 3 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | 2846022 |
| 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a self employed as a National Production Manager for 3 years, earning $19,000 per month, and had secondary employment as a Production Manager for a music company for 2 years, earning $7,000 per month on the loan application. Research of public records revealed the Borrower filed a Chapter 7 bankruptcy with the Northern District of California on 04/17/2007. The petition included a Statement of Financial Affairs, which required the Borrower to report any self employment for the previous addresses for the prior 6 years; however, the Borrower did not report any self employment and reflected report wages from various employers in the amount of $45,000, or $3,750 per month, in 2006 the year the subject loan closed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a self employed as a National Production Manager for 3 years, earning $19,000 per month and secondary employment as a Production Manager for a music company for 2 years, earning $7,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. | | 2846022 |

| # | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 | 0121288468 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 7/13/2006. The loan was identified as a cash out refinance of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Assets loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40% Debt to Income Ratio (DTI). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $346,500.00 | 2846025 | |
| | . | | | 1.04 (b) (xii) SAIL 2006-BNC3_Compliance with Applicable Law - Deemed MnA  1.04 (b) (xxxiii) SAIL 2006-BNC3_Origination Practices | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The Right of Rescission was missing from the loan file.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846025 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain Credit Report | Failure to Obtain Valid Credit Report | 3 | 3 | The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.  Despite the Seller's representations, there is no evidence in the loan file of a valid credit report; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846025 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 4 | 3 | The Borrower stated on the loan application that she owned her current residence for 9 years with a monthly payment of $1,678.  The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.  Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846025 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Employment ' Self-Employed Borrower | Failure to Verify Employment | 5 | 3 | The Borrower stated self employment as a home based Interior Designer for 2 years on the loan application.  The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.  Despite the Seller's representations, the loan file did not contain any verification of self-employment documentation, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846025 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 6 | 3 | The Borrower misrepresented his employment on the loan application. The loan file did not contain any documentation of self-employment and the bankruptcy petition records filed 03/20/2008 indicated the Borrower was not self-employed in Section 18 of the Statement of Financial Affairs.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a self-employed Interior Designer for 2 years, which constituted an event of default under the executed Mortgage and or Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders | | 2846025 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 7 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a home based self-employed Interior Designer earning $6,200 per month on the loan application. The Bankruptcy petition records filed 03/20/2008, indicated the total income for the Borrower and her non-signing spouse was $3,209 per month for 2006, the year of the subject loan closing. It could not be determined what percentage of earnings belonged to the Borrower or the source of the earnings; however, the total amount of earnings was much less than the $6,200 monthly income stated on the loan application which confirmed overstatement of income. The Bankruptcy records obtained through Pacer indicated on Section 18 of the Statement of Financial Affairs that the Borrower was not self-employed; therefore, the income source for the Borrower was ineligible.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a home based self-employed Interior Designer earning $6,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and also significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders | | 2846025 |
| 10 | 0121292692 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/23/2006, in the amount of $228,000, as a purchase of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 42.86% Debt to Income Ratio (DTI). There was a Manual approval dated 06/06/2006, in the loan file. | Stated | $228,000.00 | 2846034 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_12

| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The origination Vandina was dated 05/11, Diversification to 2005 from 02/23/2006 to 05/01/2006. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there is no evidence in the file that the credit inquiries for the previous 90 days were investigated so as to determine whether such inquires resulted in additional debt undisclosed on the loan application, such that an accurate credit profile was verified. Loan inquiries give a lender insight as to any potential loans a Borrower may be in the process of acquiring at the time of application for the subject loan. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846034 | |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that they rented his current residence for 6 months with a monthly payment of $3,000. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846034 | |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $4,691 for the subject property. In total, assets of $4,691 were required to be verified. The loan file contained no documentation of assets. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there was a $4,691 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846034 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 4 | 3 | The Borrower misrepresented his debt obligations on 05/23/2006, and the Audit Credit Report indicated the Borrower purchased 2 undisclosed properties in 06/2006, the month after the subject loan closing on 05/23/2006. The Borrower acquired a first mortgage and second mortgage on 06/01/2006, 8 days after the subject closing on 05/23/2006, in the amounts of $396,000 and $99,000 with payments of $2,858 and $9691 on 1 property. The Borrower also acquired a first and second mortgage in 06/2006 in the amounts of $560,000 and $140,000 with payments of $4,234 and $1,456 on the second property. The Borrower also acquired an undisclosed automobile loan in 04/2006, the month prior to the subject loan closing in the amount of $56,952 with a calculated payment at 0% for 36 months of $132.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented his debt obligations by failing to disclose $9,649 in monthly debts, which constitutes an event of default under the executed Mortgage and or Deed of Trust also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Certificateholders. | | | 2846034 | |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 5 | 3 | The Borrower misrepresented his employment on the loan application as a self-employed Real Estate Investor for 2 years. The business license and audit business search indicated the Borrower was self-employed for 1 year and not 2 years as reflected on the loan application.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a self-employed Real Estate Investor for 2 years, which constituted an event of default under the executed Mortgage and or Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846034 | |

Cowen_US Bank_Final_Version_12

| | | | | | | | | Narrative | Status | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 6 | 3 | The Borrower misrepresented his intent to occupy the subject property. Public records indicated the Borrower did not occupy the subject property after closing on 05/23/2006. Public records indicated other individuals occupied the subject property from 01/1989 to 02/2013. Public records indicated the Borrower occupied the business address of the Borrower's self-employment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846034 |
| 11 | 0121303846 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/13/2006, in the amount of $244,000, as a purchase of an owner occupied, condominium. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 46.16% Debt to Income Ratio (DTI). There was a Manual approval dated 06/26/2006, in the loan file. | Stated | $244,000.00 | 2846055 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as an Executive Manager of a retail store for 6 months, earning $8,000 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $8,000 per month for a Retail Manager is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported a Retail Manager in the 75th percentile in the same geographic ares would earn an average of $3,818 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846055 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrower stated on the loan application that he rented his current residence for 5 months with a monthly payment of $920.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The loan file contained a Verification of Rent, dated 06/20/2006, which indicated the Borrower rented that property from 11/01/2005 through the present paying $920 per month. The verification was completed by the Resident Manager. A second Verification of Rent, dated 06/23/2006 was also provided to complete the required 12 month housing history for the Borrower. However, the second verification indicted the Borrower rented that property from 06/01/2005 through 11/01/2005 paying $500 per month, which was completed by the Landlord. Any Verification completed by a private party was required to be supported by canceled rent checks. The loan file did not contain the required canceled rent checks.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846055 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_12

**Digital Risk - Loan Review Findings**
08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
V   part 3   Pg 72 of 256

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Employment | Failure to Verify Employment | 4 | 3 | The Borrower stated on the loan application that he was an Executive Manager of a retail store for 6 months.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was no evidence in the file that the Borrower's employment was verified and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846055 | |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Executive Manager for a retail store, earning $8,000 per month on the loan application. Per an audit Verification of Employment conducted through The Work Number, the Borrower's actual earnings for the year of the subject loan closing in 2006 was $65,800, or $5,483 per month. The verification indicated the Borrower was employed as an ETL Logistics Overnight with a hire date of 08/03/2005. The Borrower was inactive with this employer as of 06/19/2006, 6 days after the subject loan closing on 06/13/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Executive Manager earning $8,000 per month on the loan application, which constitutes an event of default under the executed Mortgage or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846055 | |
| 12 | 0121304802 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/01/2006, in the amount of $349,200, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 90%/95% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 46.36% Debt to Income Ratio (DTI). There was a Manual approval dated 05/26/2006, in loan file. | Stated | $349,200.00 | 2846058 | |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrowers stated on the loan application that they rented their current residence for 2 months with a monthly payment of $1,500. The Borrowers also stated on the loan application that they rented their previous residence for 2 years. Rental history was required to be verified with either a verification of rent from a management company or 12-month canceled checks.<br><br>The loan file contained a letter from the Borrowers' current landlord, dated 05/30/2006, which reflected the Borrowers paid on time in Cash. The loan file contained a letter from the Borrowers' previous landlord, dated 05/29/2006, which reflected the Borrowers paid on time in Cash as well.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrowers' housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846058 | |

Cowen_US Bank_Final_Version_12

| 13 | 0121305437 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/06/2006, for a loan amount of $397,600.00 as a purchase of an owner occupied single family residence. The loan Stated was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 46.43% Debt to Income Ratio (DTI). There was a Manual approval dated 06/06/2006, in the loan file. | | $397,600.00 | 2846060 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 2 | 3 | The loan file contained the Borrower's origination credit report, dated 06/05/2006, which reflected a collection account.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that a letter of explanation was obtained for derogatory credit as required, and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846060 | |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrower stated on the loan application that she rented her current residence for 1 year with a monthly payment of $1,000. Twelve months of canceled checks are required to be provided if the landlord is a private party. The loan file contained a verification of rent, dated 06/19/2006, which reflected the landlord was a private party.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing payment history with twelve months canceled checks as required; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846060 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 4 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $7,978 for the subject property. In total, assets of $7,978 were required to be verified. Assets were required to be verified with two consecutive account statements. The loan file contained the first page of a bank statement for the Borrower's checking account, dated 04/20/2006 through 05/18/2006, which reflected ending balance of $20,866; however, the statements were incomplete.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $7,978 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846060 | |

Cowen_US Bank_Final_Version_12

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Asset Misrepresentation - With Red Flags Present | Misrepresentation of Assets | 6 | 3 | The Borrower's misrepresentation overstated of assets. The loan file contained the first page of a bank statement for the Borrower's checking account, dated 04/20/2006 through 05/18/2006, which reflected ending balances of $20,866. The Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $7,978 for the subject property. In total, assets of $7,978 were required to be verified. Assets were required to be verified with two consecutive account statements. An audit verification of deposit was obtained, which revealed the Borrower had $259 in ending balances on 05/18/2006, the ending date of the provided bank statements.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that she had $20,866 in assets when in fact she had $259, meaning the amount of assets disclosed was misrepresented by $20,607, which constitutes an event of default under the executed Mortgage and or Deed of Trust and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846060 |
| | | | | | | | | | | | | |
| 14 | 0121306047 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/21/2006, in the amount of $304,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 44.71% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 35.06% Debt to Income Ratio (DTI). There was a Manual approval dated 06/21/2006, in the loan file. | Stated | | $304,000.00 | 2846063 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as an Owner of a home-based child care center for 5 years, earning $11,500 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $11,500 per month for an Owner of a home-based child care center is unreasonable and is a red flag for potential misrepresentation.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846063 |
| | | | | | | | | | | | | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| 15 | 0121320139 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed in February 2006, for a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan to Value/Combined Loan To Value (LTV/CLTV), and a 46.03% Debt to Income Ratio (DTI). There was a Manual approval dated 06/02/2006, in the loan file. | Stated | | $558,639.00 | 2846091 | |
| | . | | | 1.04 (b) (xlii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as an Advertising Sales Director for 3.8 years, earning $13,500 per month and the Co-Borrower was employed as a Medical Biller for 6 months, earning $4,700 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $4,700 per month for a Medical Biller is unreasonable and is a red flag for potential misrepresentation. The US Bureau of Labor Statistics reported the average salary at the 75th percentile for an Advertising and Promotions Manager in 2006 and in the same geographic region was $9,575 per month.<br><br>Despite the Seller's representations, the Borrowers' stated income was unreasonable and significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846091 | |
| | . | | | 1.04 (b) (xlii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 2 | 3 | Per the final HUD-1 Settlement Statement, the Borrowers' funds required for closing were $2,549. In total, assets of $2,549 were required to be verified.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The loan file contained one month bank statement for the Borrower's checking account, dated 05/24/2006, which reflected an ending balance of $41,010; however, the Borrower did not provide an additional month bank statement to properly source and season the Borrower's funds.<br><br>Despite the Seller's representations, there was a $2,549 shortage of verified assets, which significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846091 | |
| | . | | | 1.04 (b) (xlii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Asset Misrepresentation – With Red Flags Present | Misrepresentation of Assets | 3 | 3 | The Borrower misrepresented his ownership of assets. The loan file contained a one month bank statement for the Borrower's checking account, dated 05/24/2006, which reflected an ending balance of $41,010. The balance and total deposit balance were in different fonts. In addition, the description section was blacked out. An audit verification of deposit was obtained which indicated the actual balance of the Borrower's checking account on 05/24/2006 was $21,010.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that he had $41,010 in assets when in fact he had $21,010, meaning the amount of assets disclosed was misrepresented by $20,000, which constitutes an event of default under the executed Mortgage and or Deed of Trust and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846091 | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 4 | 3 | The Borrower misrepresented their debt obligations. A residential mortgage credit report revealed the Borrowers' obtained an undisclosed installment loan in 05/2006, 1 month prior to the subject loan closing on 06/02/2006, in the amount of $46,025 with a monthly payment of $1,095. The Borrowers' paid off a disclosed auto installment loan with a monthly payment of $662, which resulted in an undisclosed increase in payment of $433.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any part thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $433 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846091 |
| 16 | 0121320295 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/14/2006, in the amount of $183,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 67.78% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 50.73% Debt to Income Ratio (DTI). There was a Manual approval dated 06/27/2006, in the loan file. | Full | $183,000.00 | 2846092 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Asset Misrepresentation - With Red Flags Present | Misrepresentation of Assets | 1 | 3 | The Borrower misrepresented his ownership of asset. The Borrower provided 12 months bank statements. The statement dated 02/14/2006 reflected total deposits on the first page of the bank statement in the amount of $6,500; however, the second page of the bank statement under branch/ATM deposits reflected total deposits in the amount of $3,500. The Lender failed to properly review the bank statements in their entirety. In addition, an audit verification of deposit was obtained for the bank statement dated 04/17/2006, which verified the actual balance was $2,689; however, the bank statement in the loan file dated 04/17/2006, reflected a balance of $5,889.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any part thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that he had $5,889 in assets when in fact he had $2,689, meaning the amount of assets disclosed was misrepresented by $3,200, which constitutes an event of default under the executed Mortgage and or Deed of Trust and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846092 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| # | Loan # | Lien | Pool | | Finding | Finding | Severity | Narrative | | Doc Type | Amount | ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Row (cont. from prior, ID 2846092):**

1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 — Misrepresentation of Income - Red Flags Present - Same Year Income Evidence — Misrepresentation of Income — 2 / 3

1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud

1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default

The Borrower misrepresented the disclosed occupation and falsely stated income as a Construction Worker earning $6,100 per month on the loan application. An audit verification of employment was obtained from the employer, which verified the Borrower's actual income for the subject year loan closing 2006 was $396 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Construction Worker earning $6,100 per month on the loan application, which constitutes an event of default under the executed Mortgage or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

— 2846092

---

**17  0121322002  1st  SAIL 2006-BNC3** — Loan Summary — Loan Summary — 0 / 0 — The subject loan closed on 06/05/2006, in the amount of $472,000, as a purchase of an owner occupied detached Planned Unit Development (PUD). The loan was approved as a Stated Income/Stated Asset loan, with an 80%/100% Loan to Value (LTV/CLTV), and a 50.628% Debt to Income (DTI). There was a Manual approval dated 06/13/2006, in the loan file. — SISA — $472,000.00 — 2846095

1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 — Failure to Determine Reasonable Ability to Repay (Stated) — Failure to Determine Reasonable Ability to Repay — 1 / 3 — The Borrower stated on the loan application employment as an Owner of a Painting business for 5.11 years, earning $10,700 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Income of $10,700 per month for an owner of a Painting business is unreasonable and is a red flag for potential misrepresentation. The US Bureau of Labor Statistics reported the average salary at the 75th percentile for a Painter in 2006 and in the same geographic region was $3,496 per month.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

— 2846095

---

**18  0121322200  1st  SAIL 2006-BNC3** — Loan Summary — Loan Summary — 0 / 0 — The subject loan closed on 05/31/2006, in the amount of $595,000, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 70%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48.38% debt to income ratio (DTI). There was a Manual approval dated 06/07/2006, in the loan file. — Stated — $595,000.00 — 2846096

1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 — Failure to Determine Reasonable Ability to Repay (Stated) — Failure to Determine Reasonable Ability to Repay — 1 / 3 — The Co-Borrower stated on the loan application employment as an Insurance Agent Owner for 30 years, earning $20,000 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.

Income of $20,000 per month for an Insurance Agent is unreasonable and is a red flag for potential misrepresentation. CBSalary.com reported the average salary for an Insurance Agent in the same geographic region in the 90th percentile was $9,167 per month.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

— 2846096

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_12

| 19 | 0121324867 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/08/2006, in the amount of $145,900, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 20%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 45.98% debt to income ratio (DTI). There was a Manual approval dated 06/16/2006, in the loan file. | Full | | $145,900.00 | 2846102 | |
| | . | | | 1.04 (b) (xii) SAIL 2006-BNC3_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxiii) SAIL 2006-BNC3_Origination Practices | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The Right of Rescission was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846102 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 2 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $18,166. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $10,782 for the subject property. In total, assets of $28,949 were required to be verified. The loan file did not contain any asset documentation.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make payments on the subject loan.<br><br>Despite the Seller's representations, there was a $28,949 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846102 | |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 3 | 3 | The Borrower misrepresented her intent to occupy the subject property. A public records search conducted through Accurint, verified the Borrower did not occupy the subject property. Accurint revealed the Borrower had occupied her rental property in Soledad, Ca.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846102 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| # | Loan | Lien | Deal | Finding | Type | Type2 | | | Narrative | Doc | Amount | ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 | 0121328009 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | | 0 | 0 | The subject loan closed on 04/27/2006, in the amount of $395,000, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan with an 80%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 39.58% debt to income ratio (DTI). There was a Manual approval dated 05/31/2006, in the loan file. | Full | $316,000.00 | 2846107 | |
| . | | | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify earnest money of $3,166 for the subject property. In total, assets of $3,166 were required to be verified. The loan file did not contain asset documentation.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there was a $3,166 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846107 | |
| 21 | 0121328058 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | | 0 | 0 | The subject loan closed on 05/22/2006, in the amount of $418,500, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with a 90% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 34.80% Debt to Income Ratio (DTI). There was a Manual approval dated 06/02/2006, in the loan file. | Full | $418,500.00 | 2846109 | |
| . | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud

1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | | 3 | 3 | The Borrower misrepresented her employment on the loan application. The Borrower falsely stated employment as a self employed Owner of a house cleaning business for 3 years. The Borrower filed a chapter 13 bankruptcy on 11/08/2007 with the Central District of California, which revealed the Borrower did not earn income or own a business during the near year of 2007. Additionally, the Pacer report reflected that the Borrower was a self-employed home care provider for 14 years prior to the subject loan closing date of 05/22/2006, which covers the subject closing date; therefore, the Borrower was not employed in the same business as indicated on the loan application.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated employment as Owner of a house cleaning business for 3 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2846109 | |
| . | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud

1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | | 4 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a self-employed Owner of a house cleaning business earning $8,500 per month on the loan application. The Borrower filed a chapter 13 bankruptcy on 11/08/2007 with the Central District of California, which revealed the Borrower did not earn any income or own a business during the year of 2007. Additionally, the report reflected that the Borrower was a self-employed home care provider for 14 years prior to the subject loan closing date of 05/22/2006, which covers the subject closing date; therefore, the Borrower was not employed in the same business as indicated on the loan application. Additionally, the Pacer report did not report any income earned in the prior two years, which covers the subject loan closing date of 05/22/2006; therefore, no income could be used to qualify the Borrower.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a as a self-employed Owner of a house cleaning business earning $8,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846109 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repo

Cowen_US Bank_Final_Version_12

**Digital Risk - Loan Review Findings**
08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
V part 5    Pg 80 of 256

| 22 | 0121328488 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/25/2006, in the amount of $325,000, as a cash-out refinance of an owner occupied property. The loan was approved as a Full Documentation loan with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 35.42% Debt to Income Ratio (DTI). There was a Manual approval dated 06/02/2006, in the loan file. | Full | $324,800.00 | 2846111 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrower misrepresented his employment on the loan application. Research conducted through Accurint revealed that the Borrower owned 4 additional businesses that were opened from 1997 through the present that was not disclosed at origination, which covered the subject loan closing date of 05/25/2005 and could have had a negative impact on the Borrower's business income stated.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a self-employed Owner/Accountant Manager of an insurance business for 9 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2846111 | |
| 23 | 0121328876 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/14/2006, in the amount of $600,000, as a purchase of a second home single family residence. The loan was approved as a Stated Income/Verified Assets (SIVA) loan, with an 80%/100% loan-to-value/combined loan-to-value (LTV/CLTV), and a 48.79% debt-to-income ratio (DTI). There was a Manual approval dated 06/22/2006, in the loan file. | Stated | $600,000.00 | 2846114 | |
| . | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Employment | Failure to Verify Employment | 3 | 3 | The loan application reflected the Borrower had secondary employment as an Operations Manager of a retail store for 2 years.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was no evidence in the file that the Borrower's employment was verified for the second employer and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846114 | |
| . | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 4 | 3 | The Borrower misrepresented his debt obligations. A review of the audit credit report revealed an undisclosed mortgage obtained on 04/1999 in the amount of $9,314 and a monthly payment of $73. The subject loan closed on 06/22/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $73 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust and significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846114 | |

Cowen_US Bank_Final_Version_12

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 5 | 3 | The Borrower misrepresented his employment information. Per the loan application, the Borrower indicated primary employment as a Chief Executive Officer of an accounting business for 6 years and secondary employment as an Operations Manager for a retail store for 2 years. The bankruptcy documentation filed by the Borrower on 03/31/2008 with the United States Bankruptcy Court Northern District of California revealed the Borrower was actually the Owner of the first employer and the Owner of a company located at the same address as the second employer from 1998 to 2007.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated primary employment as a Chief Executive Officer of an accounting business for 6 years and secondary employment as an Operations Manager for a retail store for 2 years, which constituted an event of default under the executed Mortgage and or Deed of Trust and significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846114 | |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 6 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income with his primary employment as a Chief Executive Officer of an accounting business for 6 years, of $18,750 per month and secondary employment as an Operations Manager for a retail store for 2 years, of $14,500 per month. The bankruptcy documentation filed by the Borrower on 03/31/2008 with the United States Bankruptcy Court Northern District of California revealed the Borrower was actually the owner of the 1st employer and the owner of a company located at the same address as the 2nd employer from 1998 to 2007. Furthermore, the bankruptcy documentation indicated the Borrower had no employment income the year of the subject loan closing.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income with his primary employment as a Chief Executive Officer of an accounting business for 6 years, of $18,750 per month and secondary employment as an Operations Manager for a retail store for 2 years, of $14,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846114 | |

| # | Loan # | Lien | Deal | Finding Code | Finding Category | Sub-Category | A | B | Narrative | Doc Type | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 7 | 3 | The Borrower misrepresented his owned assets. The loan file contained bank statements for the Borrower's savings account, dated 05/19/2006, which reflected an ending balance of $1,259. The loan file contained bank statements for the Borrower's checking account, dated 05/19/2006, which reflected an ending balance of $31,012 and the previous bank statement, dated 04/19/2006, indicated an account balance of $31,012. An audit verification of deposit was obtained from the financial institution, which revealed the Borrower's checking account balance as of 04/19/2006 was $1,024.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that he had $32,271 down payment and 2 month's reserves when in fact he had $2,283, meaning the amount of assets disclosed was misrepresented by $29,988, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846114 |
| 24 | 0121330682 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/05/2006, in the amount of $67,000, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 34.74% Debt to Income Ratio (DTI). There was a Manual approval dated 05/30/2006, in the loan file. | Stated | $67,000.00 | 2846118 |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The Borrowers stated on the loan application that they rented their current residence for 12 years with a monthly payment of $1,450.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The loan file contained a verification of rent, dated 05/08/2006, which reflected the Borrowers were tenants since 1994 and paid rent in the amount of $1,500 per month. The discrepancy in the payment was not addressed at origination. The verification of rent was completed by a private party. Twelve months canceled checks are required when the Borrowers are renting from a private party; however, the canceled checks were not provided. It should be noted, the Borrowers' landlord was also the Borrower's employer.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrowers' housing history; and as such, there is no evidence in the file that the accuracy of the Borrowers' credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846118 |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Housing History - With Red Flags Present | Misrepresentation of Housing History | 4 | 3 | The Borrowers misrepresented their housing history. The Borrowers stated on the loan application that they rented their current residence for 12 years with a monthly payment of $1,450. An audit verbal verification of rent revealed the Borrowers did rent from the landlord; however, the Borrowers' cared for the landlord's Aunt in lieu of paying rent. There was no monetary exchange between the landlord and Borrowers.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers falsely stated they paid rent in the amount of $1,450 per month on the loan application , which constituted an event of default under the executed Mortgage and/or Deed of Trust and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846118 |

Cowen_US Bank_Final_Version_12

| 25 | 0121334940 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/23/2006, for $352,000, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets (SIVA) loan, with an 80%/100% loan-to-value/combined loan-to-value (LTV/CLTV), and a 48.32% debt-to-income ratio (DTI). There was a Manual approval dated 06/02/2006, in the loan file. | Stated | | $352,000.00 | 2846127 |
| | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud <br><br> 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 2 | 3 | The Borrower misrepresented her ownership of assets. The loan file contained bank statements for the Borrower's savings account dated 05/17/2006, which reflected an ending balance of $7,879. An audit verification of deposit was sent to the financial institution, which revealed the Borrower's actual balance was $878. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower falsely disclosed that she had $7,879 in assets when in fact she had $878, meaning the amount of assets disclosed was misrepresented by $7,001, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | | 2846127 |
| | . | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud <br><br> 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrower misrepresented her employment on the loan application. The Borrower stated employment as an Owner of a cleaning service for 5 years on the loan application. The loan file contained 3 letters of reference to confirm the above information. A re-verification of one of the reference letters was obtained, which indicated that the individual did not write the reference letter, dated 05/09/2006, and that the Borrower had never worked for the individual. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower falsely stated employment as Owner of a cleaning service for 5 years, which constituted an event of default under the executed Mortgage or Deed of Trust. | | | | 2846127 |
| | . | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud <br><br> 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as an Owner of a cleaning service earning $7,500 per month on the loan application. The loan file contained 3 letters of reference to confirm the above information. A re-verification of one of the reference letters was obtained, which indicated that the individual did not write the reference letter, dated 05/09/2006, and that the Borrower had never worked for the individual. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower falsely stated income as an Owner of a cleaning service earning $7,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | | 2846127 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| 26 | 0122253735 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/03/2006. The subject loan was a cash out refinance of a non-owner occupied, single family residence. The loan was approved as a Full Documentation loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 37.22% Debt to Income Ratio (DTI). There was a Manual approval dated 08/16/2006, in the loan file. | Full | | $136,000.00 | 2844918 |
| . | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | | 2 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. The Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $2,074 for the subject property. In total, assets of $2,074 were required to be verified.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $2,074 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844918 |
| . | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | | 3 | 3 | The Borrower misrepresented his debt obligations. Per the audit credit report and public records obtained from the Mortgage Electronic Registry System, the Borrower refinanced his current primary residence on 08/25/2006, 22 days after the subject loan closing on 08/03/2006. The Borrower obtained a new mortgage in the amount of $172,000 and increased his monthly payment from $453 to $986.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose an increase of $533 in monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | | 2844918 |
| | . | | | | | | | | **Grand Total of Repurchase Demand** | | | **$8,424,089.00** | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 12:50:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_2573_11

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 000000019584457 | 1st | SARM 2005-6XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/07/2005, in the amount of $207,200, as a purchase of a non owner occupied 2 unit residence. The loan was approved as a Full Documentation loan, with an 80%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 44.70% debt to income ratio (DTI). There was a Manual approval dated 01/06/2005, in the loan file. | Full | $207,200.00 | 2846192 | |
| | | | | 1.04 (c) (v) SARM 2005-6XS_No Fraud 1.04 (c) (vii) SARM 2005-6XS_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrowers' misrepresented their debt obligations. An audit credit report revealed the Borrowers' opened two undisclosed mortgages for a different property purchased on 01/07/2005. A first mortgage was obtained in the amount of $199,200 with a monthly payment of $1,000. A second mortgage was obtained in the amount of $49,800 with a monthly payment of $410. A public records search conducted through the Mortgage Electronic Registry System revealed the undisclosed property closed on the same day as the subject loan-closing on 01/07/2005.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose $1,410 in monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846192 | |
| 2 | 00033410036 | 1st | SASC 2007-BC2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/13/2006, in the amount of $220,800, as a cash out refinance of an owner occupied condominium. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80% Loan to Value/Combined Loan To Value (LTV/CLTV), and a 34.48% Debt to Income Ratio (DTI). There was a Manual approval dated 11/10/2006, in the loan file. | Stated | $220,800.00 | 2847007 | |
| | | | | 1.04 (c) (v) SAS 2007-BC2_No Fraud 1.04 (c) (vii) SAS 2007-BC2_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented her disclosed income. The Borrower stated income as a self-employed Owner of a home based antique/collectible sales business earning $5,500 per month on the loan application. The loan file contained post closing income documentation including the Borrower's 2007 tax return, which revealed the Borrower's 2007 income was $168, or $14 per month from her self-employment. It is unlikely the Borrower's income would have decreased by 97% considering the Borrower was self-employed in the same line of work.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a self employed Owner of an antique/collectible sales business earning $5,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2847007 | |
| 3 | 00040864381 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/07/2007, in the amount of $443,400, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 79.18%/89.89% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 41.8% Debt to Income Ratio (DTI). There was an Automated Underwriting System approval dated 08/15/2007, in the loan file. | Stated | $443,400.00 | 2846377 | |
| | | | | 1.04 (c) (v) SARM 2008-2_No Fraud 1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Sales Manager for a Medical Supply company earning $9,500 per month on the loan application. The Borrower provided post closing income documentation for the purpose of obtaining a short sale. The Borrower provided 2007 tax returns, which revealed the Borrower's actual income for 2007 was $865 per month.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Sales Manager earning $9,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846377 | |
| 4 | 00040879355 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/12/2007, in the amount of $472,000, as a rate and term refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with an 80% Loan to Value/Combined Loan to Value, and a 42.79% debt-to-income ratio. There was a Desktop Underwriting Approval/Ineligible dated 09/24/2007, in the loan file; however, the loan file did not contain a loan approval for a Stated Income loan. | Stated | $472,000.00 | 2846382 | |
| | | | | 1.04 (c) (v) SARM 2008-2_No Fraud 1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Regional Manager of a restaurant earning $10,800 per month on the loan application. The loan file contained post closing income documentation including the Borrower's 2008 tax return, which revealed the Borrower's income for the year after the subject loan closing was $26,750 or $2,229 per month. The loan file also contained the Borrower's 2009 W-2 form, which confirmed the Borrower was still employed with the same employer. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Regional Manager earning $10,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846382 | |

Cowen_US Bank_Final_Version_2573_11

| 5 | 00047994033 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/22/2008, in the amount of $524,000, as a refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an approved Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.56% Debt to Income Ratio (DTI). There was a Manual approval dated 01/22/2008, in the loan file. | Stated | $524,000.00 | 2846435 |
| | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br><br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Co-Borrower misrepresented her disclosed income. The Co-Borrower falsely stated income as a self employed Midwife for 2 years and 6 months earning $7,300 per month on the loan application. The loan file contained post closing income documentation including the Co-Borrower's 2009 tax return, which revealed the Co-Borrower's self employment income for the business listed on the loan application was $283 per month. It is unlikely the Co-Borrower's income would have decreased considering the Co-Borrower was self employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the loan for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Co-Borrower falsely stated income as a self employed Midwife earning $7,300 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846435 |
| 6 | 00121828826 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/22/2006, in the amount of $378,000, as cash out refinance of an owner occupied single-family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.93% Debt to Income Ratio (DTI). There was a manual approval dated 07/06/2006, in the loan file. | Stated | $378,000.00 | 2844794 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Cabinet Maker for 30 years, earning $4,500 per month with secondary employment as a Cook for 22 years, earning $2,800 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $7,300 per month for a Cabinet Maker and a Cook is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 90th percentile for a Cabinet Maker in 2006 and in the same geographic region was $3,039 per month and for a Cook in the same environment is $2,371 per month for a total of $5,410 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844794 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated primary income as a Cabinet Maker earning $4,500 per month. An audit verification of employment was completed by the original employer for the Borrower's primary employment, which reflects the Borrower's 2006 income as $27,459 or $2,288 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage or Deed of Trust securing the loan for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated primary income of $2,288 as a Cabinet Maker earning $4,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844794 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_2573_11

| 7 | 001218829451 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/21/2006 in the amount of $105,000.00 and secured by a primary owner-occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 78.33% total Combined Loan to Value (TCLTV) and a 27.57% Debt to Income Ratio (DTI). There was a Manual Approval dated 07/28/06, in the loan file. | Stated | | $105,000.00 | 2844795 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 2 | 3 | The Borrower misrepresented her employment on the loan application as a self-employed Owner of a home-based jewelry business for 6 years. The loan file contained the Borrower's 2006 tax returns as part of a request for modification, which revealed the Borrower had an additional self-employment, as a Realtor, which was not disclosed on the origination application. The Borrower also wrote a hardship letter in 2010, which also revealed that she had been Real Estate Agent for the last 4 years. In addition, according to a Bankruptcy, filed by the Borrower with the Eastern District of California Division Bankruptcy Courts as part of a Chapter 7 bankruptcy case dated 03/05/11, the Borrower had been a Real Estate Agent for the past 6 years.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as self-employed Owner of a home-based jewelry business for 6 years, which constituted an event of default under the executed Mortgage and or Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844795 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as an Owner of a home-based jewelry business earning $4,000 per month on the loan application. The loan file contained the Borrower's 2006 tax returns as part of a request for modification, which revealed the Borrower's total income for the same year as the subject closing was $1,030. It should be noted, the income included another business not on origination application as well as unemployment.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a home-based jewelry business earning $4,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844795 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_2573_11

| 8 | 00121845374 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/21/2006 in the amount of $335,000.00 and is secured by an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 28% loan product, and a 44.3% total debt-to-income ratio. There was a Manual approval dated 07/27/2006, in the loan file. | Stated | $335,000.00 | 2844815 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Bookkeeper/Accountant for 3 years, earning $6,247 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $6,247 per month for a Bookkeeper/Accountant is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Bookkeeper/Accountant in 2006 and in the same geographic region was $3,548 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844815 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Bookkeeper/Accountant earning $6,247 per month on the loan application. A verbal audit re-verification of employment and income was obtained from the Borrower's employer, which revealed the Borrower was never employed with the employer listed on the loan application.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Bookkeeper/Accountant earning $6,247 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844815 |
| | | | 1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 4 | 3 | The Borrower misrepresented her employment on the loan application. A verbal audit re-verification of employment and income was obtained from the Borrower's employer, which revealed the Borrower was never employed with the employer listed on the loan application.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as Bookkeeper for 3 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2844815 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| 9 | 00121852263 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/21/2006, in the amount of $685,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) documentation loan, with a 93.197% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 45.991% Debt to Income Ratio (DTI). There was a Manual approval dated 07/31/2006, in the loan file. | $685,000.00 | 2844828 |
| | | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a as a Manager of an embroidery and screen-printing company for 5 years, earning $12,000 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Research conducted through the U.S. Bureau of Labor Statistics reported that a Borrower in the same position located in the same area in 2006 could expect to earn a monthly income of $6,033 per month, which was much less than the monthly income stated of $12,000 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2844828 |
| | | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxii) BNC 2006-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Manager of a screen-printing and embroidery company earning $12,000 per month on the loan application. The Borrower filed a chapter 13 bankruptcies on 03/11/2007, 04/19/2007, 08/19/2007, 01/16/2008 and 02/19/2008, which revealed that the Borrower earned a combined monthly income of $1,167 per month during the year of the subject loan closing in 2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Manager of a screen printing and embroidery company earning $12,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2844828 |
| 10 | 00121867683 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/29/2006, in the amount of $328,500, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) documentation loan, with a 90% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 49.84% Debt to Income Ratio (DTI). There was a Manual approval dated 07/10/2006, in the loan file. | $328,500.00 | 2844865 |
| | | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Sales Person with a computer service and repair company for 3.3 years, earning $5,862 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $5,862 per month for a Sales Person with a computer service and repair company is unreasonable and is a red flag for potential misrepresentation. The U.S. Bureau of Labor Statistics reported the average salary at the 75th percentile for the same position in 2006 and in the same geographic region was $4,745 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2844865 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_2573_11

| 11 | 00121872758 | 2nd | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/05/2006, in the amount of $70,400, as a purchase of an owner occupied single-family residence. The loan was approved as a Full Documentation loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 44.74% Debt to Income Ratio. There was a manual approval dated 7/05/2006, in the loan file. | Full | | $70,400.00 | 2844876 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The original credit report, dated 6/16/2006, reflects 7 inquiries from 4/10/2006 through 5/17/2006. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there is no evidence in the file that a letter of explanation was obtained for inquiries as required, and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844876 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that they rented their current residence for 2.5 years with a monthly payment of $1,500. The loan file contained a verification of rent, dated 6/26/2006. The verification was completed by a private party requiring 12 months canceled checks to verify the rental payment history; however, the documentation was not provided. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844876 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 / 1.04 (b) (xxi) BNC 2006-1_No Fraud / 1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented his debt obligations. Per the audit credit report the Borrower had acquired a loan in the amount of $20,990 with a monthly payment of $237. The subject loan closed on 7/05/2006. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $237 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | | 2844876 |
| 12 | 00122742919 | 1st | SASC 2007-BNC1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/18/2006, in the amount of $455,200, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 46.36% Debt to Income Ratio (DTI). There was a Manual Approval dated 08/18/2006, in the loan file. | Full | | $455,200.00 | 2847144 |
| | | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines / 1.04 (b) (xii) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify a earnest money deposit of $8,052 along with 2 months reserves of principal, interest, taxes and insurance payments (PITI) totalling $8,686 for the subject property. In total, assets of $16,738 were required to be verified. The subject loan file contained copies of the earnest money deposit checks in the total amount of $8,052; however, seasoning of the funds was not documented. The Seller represented and warranted, in part, that the subject loan was underwritten pursuant to the Originator's underwriting guidelines. The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there was a $16,738 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonability to repay the subject loan. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847144 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xii) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Income | Improper Calculation of Income | 2 | 3 | The Seller represented and warranted, in part, that the subject loan was underwritten pursuant to the Originator's underwriting guidelines.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The loan approval required that the Borrower provide the most recent 12 months personal bank statements to reflect income used to qualify; however, there were no income documents provided in the loan file. As a result, the income could not be calculated due to the missing income documentation. A monthly income of $10,650 was used to determine the Debt to Income Ratio (DTI).<br><br>Despite the Seller's representations, a review of the loan file reveals the Lender failed to accurately calculate the Borrower's income, which significantly impacted the determination of the Borrower's reasonable ability to repay.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847144 |
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xii) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1 | Incomplete Income Documentation | Incomplete Income Documentation | 3 | 3 | The Seller represented and warranted, in part, that the subject loan was underwritten pursuant to the Originator's underwriting guidelines.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The loan approval required that the Borrower provide the most recent 12 months personal bank statements to reflect income used to qualify; however, there were no income documents provided in the loan file.<br><br>Despite the Seller's representations, there is no evidence in the file of a verification and review of the Borrower's income documentation.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847144 |
| 13 | 00124269002 | 1st | SASC 2007-BNC1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/26/2007, in the amount of $188,000, as a cash out refinance of an owner occupied Single Family Residence (SFR). The loan was approved as a Stated Income/Verified Asset loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 41.94% Debt to Income Ratio (DTI). There was a Manual approval dated 03/26/2007, in the loan file. | Stated | $188,000.00 | 2847166 |
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xii) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a self-employed Photographer for 6 years, earning $5,000 per month.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $5,000 per month for a Photographer is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 90th percentile for a Photographer in 2007 and in the same geographic region was $4,044 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847166 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 11:27:01 AM

Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xii) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAS 2007-BNC1_No Fraud<br><br>1.04 (b) (xxiii) SAS 2007-BNC1_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his deceased income. The Borrower stated income as self-employed Photographer earning $5,000 per month on the loan application. The loan file contained a post closing document package including the Borrower's 2008 tax return. The 2008 tax return with the Schedule C Profit and Loss Statement for the self-employment income indicated the Borrower earned $690 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self employed in the same line of work.<br><br>The Seller represented and warranted, in part, that the subject loan was underwritten pursuant to the Originator's underwriting guidelines.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Photographer earning $5,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2847166 |
| 14 | 00124439373 | 1st | SASC 2007-BC4 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/27/2007, in the amount of $291,550, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49.23% Debt to Income Ratio (DTI). There was a Manual approval dated 04/02/2007, in the loan file. | Stated | $291,550.00 | 2847064 |
| | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 1 | 3 | The Borrower misrepresented her intent to occupy the subject property. The loan application Schedule of Real Estate Owned indicated the Borrower owned an additional property located in San Leandro, CA. The property was not listed as an investment property nor was rental income stated on the application. Per public records obtained from Accurint, the Borrower occupied this property from 06/2004 through 01/2013 instead of the subject property as indicated at origination. This same property does not have history of any other occupants other than the Borrower and the Borrower's family members, per public records. In addition, the subject property's appraisal reflected occupancy as a Tenant by the appraiser. No additional explanation or clarification was provided at origination. Further, the loan file contained the Borrower's driver's license, which reflected the other address in San Leandro, CA as her current address. The origination credit report, dated 03/21/2007 reflected the Borrower's current address as the San Leandro, CA location. The audit credit report is indicating the Borrower's current address as the San Leandro, CA property, and all previous addresses do not include the subject property. Furthermore, post-closing documentation including the Borrower's pay stub, dated 03/06/2008, was still reflecting the San Leandro, CA address.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847064 |
| 15 | 00124798331 | 1st | SASC 2007-BNC1 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/15/2007, in the amount of $274,500, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Stated Asset loan, with a 90% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 44.46% debt to income ratio (DTI). There was a Manual approval dated 06/22/2007, in the loan file. | SISA | $274,500.00 | 2847203 |
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xii) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as an Owner of a carpet business for 7 years, earning $7,300 per month.<br><br>The Seller represented and warranted, in part, that the subject loan was underwritten pursuant to the Originator's underwriting guidelines.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $7,300 per month for the Owner of a carpet business is unreasonable and is a red flag for potential misrepresentation. A salary search conducted through CBSalary.com reported the average salary at the 75th percentile for the Borrower's occupation in the same geographic region was $3,333 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847203 |

Cowen_US Bank_Final_Version_2573_11

| | | | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xii) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAS 2007-BNC1_No Fraud<br><br>1.04 (b) (xxiii) SAS 2007-BNC1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his decreased income. The Borrower falsely stated income as a Owner of a carpet business earning $7,300 per month on the loan application. The subject loan file contained post closing income documentation received on the Borrower's 2007 tax return, which revealed his income was $13,680 or $1,140 per month.<br><br>The Seller represented and warranted, in part, that the subject loan was underwritten pursuant to the Originator's underwriting guidelines.<br><br>The Seller also represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Owner of a carpet business earning $7,300 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847203 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final_Version_2573_11

| 16 | 0017753740 | 1st | SAIL 2004-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/20/2004, in the amount of $256,000, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with an 80% loan-to-value, and a 29.55% debt-to-income ratio. There was a Manual approval dated 04/12/2004, in the loan file. Per the final HUD-1, the Borrower received a disbursement of $12,216 at closing. | Stated | $256,000.00 | | 2845786 |
| | | | 1.04 (c) (v) SAIL 2004-8_No Fraud | Misrepresentation of Income - No Red Flags | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Pricing Analyst earning $4,000 per month on the loan application. An audit Verification of Employment was conducted through The Work Number, which revealed the Borrower's actual income was $39,769, or $3,314 per month in the year the subject loan closed. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Despite the Seller's representations, the Borrower falsely stated income as a Pricing Analyst earning $4,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | | 2845786 |
| | | | 1.04 (c) (vii) SAIL 2004-8_No Event of Default | | | | | | | | | |
| 17 | 0018239558 | 1st | SAIL 2004-11 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/09/2004, in the amount of $442,400, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 80% loan-to-value, and a 33.18% debt-to-income ratio. There was a Manual approval dated 07/21/2004, in the loan file. Per the final HUD-1, the Borrower received a disbursement of $31,352 at closing. | Stated | $442,400.00 | | 2845746 |
| | | | 1.04 (c) (v) SAIL 2004-11_No Fraud - With No Red Flags Present | Misrepresentation of Employment | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented his employment on the loan application as the Owner of a construction company or years. The bankruptcy documentation filed by the Borrower on 05/20/2008 with the United States Bankruptcy Court Central District of California revealed the Borrower did not have an ownership interest in a business in the prior 6 years (from 2003 - to 2008). The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Despite the Seller's representations, the Borrower falsely stated employment as an Owner of a construction company for 5 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | | 2845746 |
| | | | 1.04 (c) (vii) SAIL 2004-11_No Event of Default | | | | | | | | | |
| | | | 1.04 (c) (v) SAIL 2004-11_No Fraud - No Red Flags Present | Misrepresentation of Income - No Red Flags | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a construction company earning $7,500 per month on the loan application. The bankruptcy documentation filed by the Borrower on 05/20/2008 with the United States Bankruptcy Court Central District of California revealed the Borrower did not have an ownership interest in a business in the prior 6 years (from 2003-2008) and the Borrower reported no income the year of the subject loan closing in 2004. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Despite the Seller's representations, the Borrower falsely stated income as an Owner of a construction company earning $7,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | | 2845746 |
| | | | 1.04 (c) (vii) SAIL 2004-11_No Event of Default | | | | | | | | | |
| 18 | 0036774495 | 1st | SARM 2005-23 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/01/2005, in the amount of $648,000. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Hazard Insurance, Title Commitment, HUD-1 Settlement Statement, and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $648,000.00 | | 2846176 |
| | | | 1.04 (b) (xii) SARM 2005-23_Compliance with Applicable Law - Origination | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | | 2846176 |
| | | | 1.04 (c) (xvii) SARM 2005-23_Origination Practices | | | | | | | | | |
| | | | 1.04 (c) (xxiv) SARM 2005-23_Compliance with Applicable Law | | | | | | | | | |
| | | | 1.04 (c) (xviii) SARM 2005-23_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal was missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | | 2846176 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repo

| 19 | 0038277315 | 1st | SARM 2006-7 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/30/2006, in the amount of $825,000, as a purchase of an owner occupied single family residence located in a planned unit development. The loan was approved as a Stated Income/Verified Asset loan with a 75% Loan to Value/Combined Loan to Value, and a 35.74% Debt to Income Ratio (DTI). There was a Manual approval dated 06/05/2006, in the loan file. | Stated | $825,000.00 | 2846336 |
| | | | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrowers misrepresented their debt obligations. Research conducted through the Mortgage Electronic Registry System and an audit credit report revealed the Borrowers purchased a property in Bella Vista, AR on 06/16/2006, within 30 days of the subject loan closing on 05/30/2006. The Borrowers obtained a mortgage in the amount of $148,410 with a monthly payment of $988.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $988 monthly payment, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846336 |
| | | | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated income as the Owner of a window shade installation company for 2 years, earning $32,000 per month and the Co-Borrower falsely stated income as a self employed Hairdresser for 20 years, earning $6,500 per month on the loan application. The loan file contained post closing income documentation including the Borrowers' 2006 tax return, which revealed the Borrower earned a negative $18,717, or a negative $1,559 per month and revealed the Co-Borrower earned $37,343, or $3,111 per month in the month the subject loan closed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers falsely stated income as the Owner of a window shade installation company earning $32,000 per month and the Co-Borrower falsely stated income as a self employed Hairdresser earning $6,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846336 |
| 20 | 0120866454 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/25/2006, in the amount of $290,000, as a purchase of an owner occupied single family residence located in a Planned Unit Development. The loan was approved as a Stated Income/Stated Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 38.593% Debt to Income Ratio (DTI). There was a Manual approval dated 05/01/2006, in the loan file. | SISA | $290,000.00 | 2845888 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as an Owner of an Auto Detail Business for 6 years, earning $4,950 per month. The Borrower also stated on the loan application additional employment as a General Worker at an automotive dealership for 4 years, earning $3,500 per month.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Incomes of $4,950 per month for a Owner of an Auto Detail Business and $3,500 per month for a General Work at an automotive dealership are unreasonable. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for an Owner of an auto detail business in 2006 and in the same geographic region was $1,923 per month.<br><br>Additionally, the U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a General Worker at an automotive dealership in 2006 and in the same geographic region was $1,703 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845888 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The loan application reflected the Borrower was a renter at his current address for 4 years. The loan file contained a letter from the Borrower indicating he was living with his mother in law the previous 4 years and paid monthly rent in the amount of $750. Twelve months canceled checks must be provided when the Borrower is renting from a private party.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845888 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed secondary income. The Borrower falsely stated secondary income as a General Worker earning $3,500 per month on the loan application. An audit verification of employment obtained through the Borrower's secondary employer, revealed the Borrower's income for 2006, the year the subject loan closed, was $1,861 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated secondary income as a General worker earning $3,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845888 | |
| 21 | 0120867809 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/23/2006, in the amount of $500,000, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Stated Asset (SISA) loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48.81% Debt to Income Ratio (DTI). There was a Manual approval dated 05/30/2006, in the loan file. | SISA | $500,000.00 | 2845893 | |
| | | | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Supervisor/Manager for 3 years, earning $11,000 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $11,000 per month for a Supervisor is unreasonable. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Manager in 2006 and in the same geographic region was $8,688 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845893 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| 22 | 0120877923 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/26/2006, in the amount of $415,192.00, as a purchase of an owner occupied single family residence located in a Planned Unit Development. The loan was approved as a Stated Income/Stated Asset (SISA) loan with a 89.99% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48.754% Debt to Income (DTI). There was a Manual approval dated 05/02/2006, in the loan file. | SISA | $415,192.00 | 2845914 |
|  |  |  |  | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Banquet Service Coordinator for 15 years, earning $12,000 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $12,000 per month for a Banquet Service Coordinator is unreasonable. The U. S. Bureau of Labor Statistics reported the average salary at the 90th percentile for a Banquet Service Coordinator in 2006 and in the same geographic region was $3,570 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and negatively impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. |  |  | 2845914 |
|  |  |  |  | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Banquet Service Coordinator earning $12,000 per month on the loan application. The loan file contained post closing income documentation including the Borrower's W-2 form for 2006, which was provided by the Borrower for loss mitigation. The W-2 form revealed the Borrower income for 2006, the year the subject loan closed, was $2,574 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the origination of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Banquet Service Coordinator earning $12,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. |  |  | 2845914 |
| 23 | 0120889993 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/17/2006, in the amount of $295,920, as a purchase of an owner occupied single family residence located in a Planned Unit Development. The loan was approved as a Stated Income/Stated Asset (SISA) loan, with a 79.98% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 34.96% Debt to Income (DTI). There was a Manual approval dated 05/25/2006, in the loan file. | SISA | $295,920.00 | 2845941 |
|  |  |  |  | 1.04 (b) (xii) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated income as a Financial Planner earning $7,700 per month on the loan application. The Co-Borrower falsely stated income as a Medical Assistant earning $3,500 per month on the loan application. The loan file contained the Borrower's federal income tax return for 2006, which was provided by the Borrower for loss mitigation, which revealed the Borrower's total income for 2006, the year the subject loan closed, was $324 or $27 per month. An audit verification of employment ducted through The Work Number, revealed the Co-Borrower's income for 2006 was $3,017 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the origination of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Financial Planner earning $7,700 and the Co-Borrower falsely stated income as a Medical Assistant earning $3,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust and has a significant impact on the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. |  |  | 2845941 |
|  |  |  |  |  | Grand Total of Repurchase Demand |  |  |  |  | $8,651,062.00 |  |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/27/2013 11:27:01 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 00011815750 | 1st | SASC 2003-39EX | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/04/2003, in the amount of $240,000. There was neither an automated underwriting system (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file contained no origination documentation for the subject transaction. There was no critical documentation provided for the file and was not represented on the data tape by the Seller. | Unknown | $240,000.00 | 2846474 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law<br><br>1.04 (b) (xxvii) SAS 2003-39EX_Mortgage File<br><br>1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2846474 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law<br><br>1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846474 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law<br><br>1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846474 | |
| . | | | | 1.04 (b) (xxxiii) SAS 2003-39EX_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal was missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846474 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 00030520175 | 1st | SAIL 2005-HE3 | | Loan Summary | Loan Summary | 0 0 | The subject loan closed on 04/01/2005 on the amount of $164,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the file. A presumptively Eligible stipulation – the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $164,000.00 | 2845860 |
| | | | | 1.04 (b) (xiii) SAIL 2005-HE3_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xii) SAIL 2005-HE3_Mortgage File<br><br>1.04 (c) (xvii) SAIL 2005-HE3_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 3 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject note. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845860 |
| | | | | 1.04 (b) (xiii) SAIL 2005-HE3_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2005-HE3_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 4 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 settlement statement to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a Final HUD-1 statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845860 |
| | | | | 1.04 (b) (xiii) SAIL 2005-HE3_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2005-HE3_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 5 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a Truth in Lending statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845860 |
| | | | | 1.04 (c) (xviii) SAIL 2005-HE3_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 6 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an origination appraisal.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845860 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 00121824726 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/21/2006, in the amount of $228,000 for a purchase of an owner occupied condominium. The loan was approved as a Stated Income/Verified Asset loan, with an 80% Loan to Value (Combined Loan to Value), and a 48.231% Debt to Income Ratio (DTI). There was a Manual approval dated 07/25/2006, in the loan file. | Stated | $228,000.00 | 2844788 |
| . | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay | Failure to Determine Reasonable Ability to Repay (Stated) | | 1 | 3 | The Borrower stated on the loan application employment as a Medical Assistant for a medical center for 3 years, earning $6,000 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $6,000 per month for a Medical Assistant for a medical center is unreasonable. Research conducted through the U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Medical Assistant in the same geographic region was $3,067 per month. The Borrower's stated income exceeded the U. S. Bureau of Labor Statistics' 75th percentile, which is a red flag that the Borrower's income was overstated.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844788 |
| . | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | | 2 | 3 | Per the final HUD-1 Settlement Statement, the Borrower paid a $2,000 earnest money deposit, an additional deposit in the amount of $58,921 and received $2,064 cash back at closing. In total, assets of $58,857 were required to be verified, per the loan approval. The loan application reflected a $2,000 earnest money deposit and a bank account was listed with no balance reflected. The loan file contained a copy of a cashier's check drawn from the bank listed on the loan application in the amount of $2,000; however, the account or account balance was not verified to source the funds. The loan application also reflected a retirement account balance in the amount of $5,000, which was not verified and proceeds from the sale of the Borrower's departing residence were listed on the loan application in the approximate amount of $75,757, which was to be used for closing funds. A copy of a cashier's check in the amount of $58,921 was provided; however, the final HUD-1 for the sale was not provided to verify the source of funds.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $58,857 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844788 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 00121827331 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/31/2006 in the amount of $412,000 as a purchase of an owner occupied single family detached residence. The loan was approved as a Stated Income/Verified Asset loan, with a 80% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 42.377% Debt To Income Ratio (DTI). There was a Manual approval dated 07/31/2006, in the loan file. | Stated | $412,000.00 | 2844790 |
| | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Superintendent for a Landscaping business for 7 years, earning $11,000 per month. The Borrower's housing payment was increasing from $2,688 to $4,575, which results in a payment shock of 70.20%. The Borrower's credit profile reflects 6x30 day late payments and 1x60 day late payment on a mortgage account. In addition, a review of the Borrower's origination credit report reflected 6x30 day late payment on an installment account of which 1x30 was within 12 months of the subject loan closing. The Borrower had no revolving credit. The loan file did not contain asset documentation; therefore, a determination of the Borrower's ability to accumulate reserves could not be ascertained.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used in the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844790 |
| | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that he rented the current residence for 7 years with a monthly payment of $2,690. The loan file contained a Verification of Rent from the Borrower's relative. Per the underwriting guidelines, the Borrower was required to provide twelve month of canceled checks. The loan file did not contain evidence of the 12 month canceled checks.<br><br>The Seller represented and warranted, in part, that the methodology used in the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower falsely stated on the loan application that he rented the current residence for 7 years, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844790 |
| | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $13,768. In addition, the Borrower was required to verify earnest money deposit in the amount of $1,000 along with 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $22,918 for the subject property. In total, assets of $22,918 were required to be verified.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's assets, so as to confirm the Borrower's strength of savings patterns, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $22,918 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844790 |
| | . | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 4 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's debt, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts, which significantly impacted the determination of the Borrower's reasonable ability to repay..<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844790 |

Cowen_US Bank_Final_Version_10

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 00121828701 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/30/2006, in the amount of $187,200.00 as a purchase of an owner occupied, single family residence. The loan was approved as a Full Documentation loan with an 81.00% loan to value/combined Loan to Value (LTV/CLTV), and a 48.10% Debt to Income Ratio (DTI). There was a Manual approval dated 07/07/2006, in the loan file. | Full | $187,200.00 | 2844793 |
| | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 1 | 3 | The Borrower stated on the loan application that he rented his current residence for 2 years with a monthly payment of $550. The loan file contained a private Verification of Rent, dated 07/05/2006 which reflected monthly rent paid by the Borrower from 05/01/2004 through 07/2006. The loan file also contained 4 months bank statements, dated 03/15/2006 through 06/15/2005 reflecting checks paid in the amount of $550; however, the copy of the canceled check was not included nor did the loan file include all 12 months rental payment history.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the housing history was not properly verified, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844793 |
| | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 2 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. However, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $4,132 for the subject property. In total, assets of $4,132 were required to be verified.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's assets, so as to confirm the Borrower's strength of savings patterns, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $2,994 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844793 |
| 6 | 00121856181 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/13/2006, in the amount of $205,200, as a purchase of an owner occupied, single family dwelling. The loan was approved as a Full Documentation loan, with a 90% loan to value/combined loan to value (LTV/CLTV), and a 34.29% debt to income ratio (DTI). There was a manual approval dated 07/18/2006, in the loan file. | Full | $205,200.00 | 2844841 |
| | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 1 | 3 | The subject loan was underwritten without proper regard for the Borrower's reasonable ability to repay.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Monthly debts of $2,142 were used by the Lender to determine the Debt to Income Ratio (DTI). Per origination credit report, an automobile loan payment of $472 and 3 revolving credit accounts with a combined monthly payment of $84 were excluded from the calculation of the Debt to Income Ratio (DTI). The correct recalculation results in a monthly debt of $2,698, which resulted in a recalculated DTI of 50.05%.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844841 |

| 7 | 00121862007 | 2nd | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/20/2006, in the amount of $53,500, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income Verified Asset documentation loan, with a 100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 42.33% Debt to Income Ratio (DTI). There was a Manual approval dated 07/26/2007, in the loan file. | Stated | $53,500.00 | 2844856 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as an Accounting Manager for 3.6 years, earning $6,000 per month. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. Research conducted through The U.S. Bureau of Labor Statistics for the Borrower's position as an Account Manager position located in the same area in 2006 indicated a monthly income of $3,315 per month in the 75th percentile. Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844856 |
| 8 | 00124780909 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/11/2007, in the amount of $220,500, as a purchase of a non owner occupied single family residence. The loan was approved as a full documentation (12 months bank statements) loan, with a 90% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 48.48% debt to income ratio (DTI). There was a Manual approval dated 06/14/2007, in the loan file. | Full | $220,500.00 | 2847085 |
| | | | | 1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a self employed Financial Advisor earning $18,342 per month on the loan application. The subject loan file contained post closing income documentation including the Borrower's 2007 tax return, which revealed the Borrower earned negative income, the year the subject loan closed. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Despite the Seller's representations, the Borrower falsely stated income as a self employed Financial Advisor earning $18,342 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2847085 |
| 9 | 00124832676 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/22/2007, in the amount of $309,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with an 82% loan-to-value, and a 50.84% debt-to-income ratio. There was a Manual approval dated 06/27/2007, in the loan file. Per the final HUD-1, the Borrower received a disbursement of $4,626 at closing. | Full | $309,000.00 | 2847097 |
| | | | | 1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented his intent to occupy the subject property. Per public records, the Borrower occupied the subject property from 03/1999 to 06/2007 and occupied an undisclosed property located Richmond, CA from 06/2007 to 01/2013. The subject loan closed as an owner occupied property on 06/22/2007. The loan file contained post closing 2008 tax transcripts and 2009 tax returns, which confirmed the Borrower occupied the undisclosed property and the subject property was an investment property. Research conducted through SiteX.com indicated the undisclosed property located in Richmond, CA was owned by the Borrower's relative. The post closing documentation also included a hardship letter, which indicated the subject loan was for an investment property. Furthermore, an Accruint search revealed the Borrower had utilities connected at this undisclosed property on 06/01/2007. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2847097 |

| 10 | 00124864166 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/25/2007, in the amount of $348,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with an 85% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 48.14% Debt-to-income ratio. There was a Manual approval dated 08/07/2007, in the loan file. Per the final HUD-1, the Borrower received a disbursement of $39,190 at closing. | Full | | $348,000.00 | 2847101 |
| | | | 1.04 (b) (xiii) SAS 2007-BC4_Compliance with Applicable Law - Deemed MnA | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, the loan file did not contain a Right of Rescission, which is evidence of the subject loan's noncompliance with applicable law.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847101 |
| 11 | 0121282735 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/21/2006, in the amount of $437,600, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Stated Asset (SISA) documentation loan, with an 80%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 40.429% Debt to Income (DTI). There was a Manual approval dated 06/28/2006, in the loan file. | SISA | | $437,600.00 | 2846011 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a self-employed Owner of lawn landscaping service for 3.8 years, earning $12,000 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $12,000 per month for a as a self-employed Owner of lawn landscaping service is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a a self-employed Owner of lawn landscaping service in 2006 and in the same geographic region was $4,753 per month. The Borrower's stated income is more than 2.5 times the U. S. Bureau of Labor Statistics' at the 75th percentile, which is a red flag that the Borrower's income was overstated.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846011 |
| | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrower misrepresented his employment on the loan application. The Borrower falsely stated self-employment as the Owner of a lawn landscaping service company for 3.8 years. It should be noted, no additional employment or self employment was disclosed. However, research conducted through Accurint revealed that the Borrower owned 2 additional businesses that were not disclosed at origination. The Borrower owned a trucking company since 1966 to the present and an additional landscape business from 2004 to the present, which covers the subject loan closing date of 06/21/2006 and could have resulted in a negative impact on the Borrower's current business.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a self-employed Owner of a lawn landscaping service company for 3.8 years as his sole source of employment, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | | 2846011 |
| 12 | 0121287262 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/02/2006, in the amount of $510,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with an 85% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 46.293% Debt to Income (DTI). There was a Manual approval dated 06/02/2006, in the loan file. | Full | | $510,000.00 | 2846020 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The origination credit report dated 05/05/2006, reflected 7 inquiries reported from 02/06/2006 through 05/02/2006, including an inquiry on 03/23/2006, which was affiliated with a creditor resulting in undisclosed debt.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that a letter of explanation was obtained for inquiries as required and as such, there is no evidence in the file that the accuracy of the Borrowers' credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846020 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Incomplete Income Documentation | Incomplete Income Documentation | 3 | 3 | The subject loan was approved as a Full Documentation mortgage; however, the Borrowers' 2 year income documentation is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that the Borrowers' income documentation was provided, and as such, there is no evidence in the file that the accuracy of the Borrowers' income was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2846020 |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentatio n of Debt Obligations - With Red Flags Present | Misrepresentatio n of Debt Obligations | 4 | 3 | The Borrowers misrepresented their debt obligations. The audit credit report reflected that the Borrowers obtained an undisclosed installment loan in the amount of $6,879 in 03/2006, or 3 months prior to the subject loan closing on 06/02/2006 with a payment of $148 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by the Borrowers or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $148 monthly debt, which not only constituted an event of default under the executed Mortgage and or Deed of Trust, but also significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2846020 |
| 13 | 0121287833 | 1st | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/05/2006, in the amount of $400,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Stated Asset (SISA) documentation loan, with a 66.667% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 48.22% Debt to Income Ratio (DTI). There was a Manual approval dated 06/13/2006, in the loan file. | SISA | $400,000.00 | 2846023 |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 (Stated) | Failure to Determine Reasonable Ability to Repay | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Claims Dental Processor for 10 years, earning $6,900 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $6,900 per month for a Claims Dental Processor is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Carpenter in 2006 and in the same geographic region was $3,831 per month.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders | | 2846023 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

# Digital Risk - Loan Review Findings

Cowen_US Bank_Final_Version_10        08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment 7 Pg 107 of 257

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Claims Dental Processor earning $6,900 per month on the loan application. An audit verification of employment income was obtained through The Work Number, which revealed that the Borrower earned $2,960 per month during the year of the subject loan closing in 2006.<br><br>The Seller represented and warranted, in part, that no document submitted for underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representations and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Claims Dental Processor earning $6,900 per month on the loan application, which not only constituted an event of default under the executed Mortgage and or Deed of Trust, but also significantly impacted the determination of the Borrowers' reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2846023 |
| 14 | 0121296784 | 2nd | SAIL 2006-BNC3 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/05/2006, in the amount of $84,000, as a purchase of an owner occupied, single family residence. The loan was approved as a Full Documentation/6-months of bank statement loan program, with a 20%/100% loan-to-value/combined loan-to-value, and a 41.93% debt-to-income ratio. There was a Manual Approval dated 06/13/2006, in the loan file. | Full | $84,000.00 | 2846039 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 2 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Monthly debts of $3,234 were used by the Lender to determine the debt-to-income ratio (DTI). The Underwriter failed to use the correct qualifying interest rate to calculate the qualifying mortgage payment for the first mortgage. According to the note in the loan file, the correct qualifying rate was 6.8%. A monthly principal and interest payment of $2,191 should have been used to qualify the Borrower. The correct recalculation results in a monthly debt of $3,423.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts. The inaccurately calculated debt significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2846039 |
| . | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 3 | 3 | The Borrower misrepresented her ownership of assets. The loan file contained bank statements for the Borrower's checking account dated 05/12/2006, which reflected an ending balance of $10,667. An audit verification was sent to the financial institution, which revealed the Borrower's actual account balance as of 05/12/2006 was $345.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that she had a $10,667 down payment and/or month's reserves when in fact she had $345, meaning the amount of assets verified was misrepresented by $10,322, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | 2846039 |
| | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as an Assembly Clerk earning $4,300 per month and self-employed as a Seamstress earning $3,000 on the loan application. The loan file contained 6 months bank statements confirming the Borrower's total combined income. An audit verification of deposit completed on 02/26/2013 indicated the balances on the bank statements dated 04/14/2006 and 05/12/2006 were incorrect. The loan file contained a bank statement dated 04/14/2006 which reflected an ending balance of $10,212; however, the audit Verification of Deposit revealed the actual balance as $2,741 and the loan file contained a bank statement dated 05/12/2006 which reflected an ending balance of $10,667; however, the audit Verification of Deposit revealed the actual balance was $345. Therefore, the bank statements used to calculate the Borrower's income was misrepresented.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Assembly Clerk earning $4,300 per month and self-employed as a Seamstress earning $3,000 on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | 2846039 |

Cowen_US Bank_Final_Version_10

| 15 | 0121304224 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/29/2006, in the amount of $272,000, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 34.1% Debt to Income Ratio (DTI). There was a Manual approval dated 06/29/2006, in the loan file. | Stated | | $272,000.00 | 2846056 |
| | | | | 1.04 (b) (xii) SAIL 2006-BNC3_Compliance with Applicable Law - Deemed MnA the Final TIL<br><br>1.04 (b) (xli) (g) SAIL 2006-BNC3_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xli) (h) SAIL 2006-BNC3_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxii) SAIL 2006-BNC3_Origination Practices | Failure to Provide | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846056 |
| 16 | 0121305593 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/12/2006, in the amount of $259,120, as a purchase of an owner occupied single family residence located in a condominium. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45.55% Debt to Income (DTI). There was a Manual approval dated 06/12/2006, in the loan file. | Stated | | $259,120.00 | 2846061 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Manager with a parking services company for 4 years, earning $6,491 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $6,491 per month for a Manager is unreasonable. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Manager in 2006 and in the same geographic region was $5,000 per month.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846061 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

# Digital Risk - Loan Review Findings

| 17 | 0121313803 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/31/2006 in the amount of $490,000.00 as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Stated Assets Loan, with a 80% Loan to Value/Combined Loan to Value (LTV/ CLTV) and a 47.529% Debt To Ratio (DTI). There was a Manual approval dated 06/28/2006, in the loan file. | SISA | $370,000.00 | 2846078 |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 / 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud / 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Foreman earning $6,500 per month on the loan application. An audit verification of employment was obtained, which verified the Borrower's actual income for the subject year loan closing in 2006 was $4,089 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. The Borrower's credit profile did not support the ability to repay the subject mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Foreman earning $6,500 per month on the loan application, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846078 |
| 18 | 0121318562 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 6/09/2006, in the amount of $216,000, as a purchase of an owner occupied single-family residence. The loan was approved as a Stated Income/Verified Assets Loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 48.54% Debt to Income Ratio. There was a manual approval dated 6/09/2006, in the loan file. | Stated | $216,000.00 | 2846088 |
| . | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Driver for 2 months, earning $6,000 per month and receiving $332 in net rental income.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Income of $6,000 per month for a Driver is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Driver/Delivery in 2006 and in the same geographic region was $2,930 per month.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846088 |
| . | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 / 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud / 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrower misrepresented his employment on the loan application as a Driver for 2 months. An audit verification of employment was completed by the Borrower's original employer which reflects the Borrower's employment position as a Merchandiser earning $9 per hour. Further, the Borrower was hired on 5/22/2006 and was terminated on 6/02/2006. The subject property closed on 6/09/2006.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated employment as a Driver for 2 months, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846088 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 <br><br> 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud <br><br> 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Driver earning $6,000 per month on the loan application. An audit verified current employment as a Merchandiser earning $9 per hour. Further, the Borrower was hired on 5/22/2006 and was terminated on 6/02/2006. The subject property closed on 6/09/2006. <br><br> The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. <br><br> The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that; no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower falsely stated income as a Driver earning $6,000 per month on the loan application, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. <br><br> Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846088 | |
| | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud <br><br> 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 5 | 3 | The Borrower misrepresented his intent to occupy the subject property. Per public records the Borrower's original phone number as it reflects on the final 1003 is still registered to the Borrower's departing residence. Further, research through Accurint reflects a large number of individuals maintained a residence at the subject property other than the Borrower since the subject loan closing on 06/09/2006. A search using the Borrower's social security number reflects the Borrower's original property as the Borrower's residence and not the subject property. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846088 | |
| | | | | | | | | | | | | |
| 19 | 0121321988 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 6/27/2006, in the amount of $201,450, as cash out refinance of an investment property. The loan was approved as a Stated Income/Verified Assets loan, with an 83.24% Loan to Value/Combined Loan to Value, and a 37.46% Debt to Income Ratio. There was a manual approval dated 6/27/2006, in the loan file. | Stated | $201,450.00 | 2846094 | |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | | The Borrower stated on the loan application self-employment as a home based Home Inspector for 2 years and 8 months, earning $8,000 per month. <br><br> The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. <br><br> The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan. <br><br> Income of $8,000 per month for a home based Home Inspector is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Home Inspector in 2006 and in the same geographic region was $4,810 per month. The Borrower's stated income is more than 1.5 times the Bureau of Labor Statistics' 75th percentile, which is a red flag that the Borrower's income was overstated. <br><br> Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. <br><br> Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846094 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate     Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrower misrepresented his employment on the loan application. The Borrower stated on the loan application self-employment as a home based Home Inspector for 2 years and 8 months. According to the Statement of Financial Affairs on the Bankruptcy petition filed 06/04/2008 by the Borrower with the District of Arizona Bankruptcy Court, the Borrower's employment for 2006 was as a retired individual with a total earning of $16,035 or $1,336 per month. Further, the Bankruptcy petition reflects no evidence the Borrower was self-employed or owned and operated a business for the closing year of 2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Home Inspector for 2 years and 8 months, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846094 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner Operator of a home based Home Inspection earning $8,000 per month on the loan application. According to the Statement of Financial Affairs on the Bankruptcy petition filed 06/04/2008 by the Borrower with the District of Arizona Bankruptcy Court, the Borrower's employment for 2006 was as a retired individual with total earnings of $16,035 or $1,336 per month. Further, the Bankruptcy petition reflects no evidence the Borrower was self-employed or owned and operated a business for the closing year of 2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner Operator of a home based Home Inspection Business earning $8,000 per month on the loan application, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846094 |
| 20 | 0121333512 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 5/31/2006, in the amount of $176,000, as a purchase of an owner occupied single-family residence. The loan was approved as a Full Documentation loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 31.26% Debt to Income. There was a manual approval dated 5/26/2006, in the loan file. | Full | $176,000.00 | 2846124 |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 1 | 3 | The Borrower stated on the loan application that she rented her current residence for 2 years with a monthly payment of $1,250. The loan file contained a verification of rent dated 5/26/2006 which was signed and completed by a private party. The loan file is missing the required 12 months canceled checks from the Borrower's account confirming the Borrower's housing payments, as required.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's housing history was not verified, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846124 |

| 21 | 0121333850 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/16/2006, in the amount of $196,000, as a cash out refinance of an owner occupied single-family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 70% Loan to Value/Combined Loan to Value, and a 29.44% Debt to Income Ratio. There was a manual approval dated 6/23/2006, in the loan file. | Stated | $196,000.00 | 2846125 | |
| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that they owned their current residence for 3 years with a monthly payment of $1,685.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Due to the Borrower filing for bankruptcy and previous foreclosure status, a 24 month payment history was required. The subject loan closed on 6/16/2006 which establishes the Borrower's 24-month period from 6/2004 to 6/2006. Borrower's original credit report, dated 6/01/2006, reported the Borrower's previous mortgage with an opening date of 06/2003.

Despite the Seller's representations, the loan file did not contain the Borrower's complete payment history, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846125 | |
| 22 | 0122254444 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/17/2006, in the amount of $297,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 90% LTV/CLTV, and a 50.967% Debt to Income Ratio (DTI). There was a Manual approval dated 08/17/2006, in the loan file. | Stated | $297,000.00 | 2844921 | |
| | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Registered Nurse for 13 years, earning $8,150 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Income of $8,150 per month for a Registered Nurse is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 90th percentile for a Registered Nurse in the same geographic region was $6,520 per month. The Borrower's stated income exceeded the U. S. Bureau of Labor Statistics' 90th percentile which is a red flag that the Borrower's income was overstated.

Despite the Seller's representations, the Borrower's stated income was unreasonable, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844921 | |
| 23 | 0122266372 | 2nd | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/21/2006, in the amount of $49,980, as a purchase of an owner-occupied, single family residence located in a Planned Unit Development (PUD). The loan was approved as a Stated Income/Verified Asset loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49.33% Debt to Income (DTI). There was a Manual approval dated 08/04/2006, in the loan file. | Stated | $49,980.00 | 2844944 | |
| | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $746. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $4,314 for the subject property. In total, assets of $5,060 were required to be verified. The loan file contained a Verification of Deposit for the Borrower's checking and savings accounts, dated 08/01/2006, which reflected ending balances of $4,035 and $45; however, the verification reflected 2-month average balances of $1,210 for each account; therefore, the seasoned balances were $1,210 and $45, which totaled $1,255 in seasoned assets.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there was a $3,805 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844944 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 24 | 0122266604 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/02/2006, in the amount of $159,200.00, as a purchase of an owner occupied single family residence located in a Planned Unit Development (PUD). The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 40.752% Debt To Income Ratio (DTI). There was a Manual approval dated 07/31/2006, in the loan file. | Stated | $159,200.00 | 2844945 |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Restaurant Manager for 3 years, earning $4,800 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $4,800 per month for a Restaurant Manager is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Restaurant Manager in 2006 and in the same geographic region was $2,978 per month. The Borrower's stated income is more than 1.5 times the U. S. Bureau of Labor Statistics' 75th percentile which is a red flag that the Borrower's income was overstated.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844945 |
| 25 | 0122267057 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/15/2006, in the amount of $140,000, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with a 69% Loan to Value/Combined Loan to Value, and a 48.64% debt-to-income ratio. There was a Manual approval dated 08/22/2006 in the loan file. | Full | $140,000.00 | 2844946 |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The origination credit report, dated 08/04/2006, reported 6 inquiries, dated from 07/11/2006 through 08/01/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>A qualified credit report includes credit inquiries for the previous 90 days and the origination Underwriter should have determined whether any recent credit inquiries listed on the report resulted in additional debt undisclosed on the loan application. The Underwriter failed to obtain sufficient explanation from the Borrower.<br><br>Despite these requirements, the Underwriter failed to investigate the Borrower's credit history, and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844946 |
| | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented his debt obligations. The Borrower failed to disclose three installment student loans and one installment auto loan obtained prior to the subject closing dated 08/15/2006. The Borrower opened the first undisclosed student loan on 08/1988 in the amount of $1,500 with a monthly payment of $42. The Borrower opened the second undisclosed student loan on 09/1988 in the amount of $2,500 with a monthly payment of $71. The Borrower opened the third undisclosed student loan on 03/1989 in the amount of $4,000 with a monthly payment of $113 and the Borrower opened an undisclosed auto loan on 07/2006 in the amount of $22,762 with a monthly payment of $468.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose $694 in monthly debt, which not only constituted an event of default under the executed Mortgage and Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844946 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 26 | 0122282403 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 8/02/2006 in the amount of $160,648, as purchase of an owner occupied single-family residence. The loan was approved as a Full Documentation loan with an 85% loan-to-value/Combined Loan to Value, and a 43.84% Debt to Income. There was a manual approval dated 8/18/2006, in the loan file. | Full | $160,648.00 | 2844975 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Employment | Failure to Verify Employment | 1 | | The loan application reflected the Borrower was employed as a Machinist for 1 year and 1 month, had previous employment as a Machinist for 1 year and 3 months and previously had been employed as a Machinist for 2 years and 5 months. The application reflected the Co-Borrower had been employed as a Postal Worker for 5 months and had previously been a student. The loan file contained a verbal verification of employment for both Borrowers confirming their current employment; however, the loan file was missing a complete 24-month verification of employment history for both Borrowers.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the employment was not properly verified, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844975 |
| 27 | 0122282619 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/26/2006, in the amount of $179,775, as cash out refinance of an owner occupied single-family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 85% Loan to Value/Combined Loan to Value, and a 48.87% Debt to Income Ratio. There was a manual approval dated 08/01/2006, in the loan file. | Stated | $179,775.00 | 2844976 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Store Supervisor/Sale Manager for 2 years and 6 months, earning $5,120 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

Income of $5,120 per month for a Store Supervisor/Sale Manager is unreasonable and is a red flag for potential misrepresentation. The U. S. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Store Supervisor/Sale Manager in 2006 and in the same geographic region was $3,620 per month.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844976 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (b) (xxi) BNC 2006-2_No Fraud

1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Store Supervisor/Sales Manager earning $5,120 per month on the loan application. According to the Statement of Financial Affairs on the Bankruptcy petition filed 02/12/2008 by the Borrower with the District of Arizona Bankruptcy Court, the Borrower's income for the year of the subject loan closing of 2006 was $4,006 or $333 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.

The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Store Supervisor/Sales Manager earning $5,120 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844976 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_10

| 28 | 0122283203 | 2nd | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/14/2006 in the amount of $37,000, for a purchase of an owner occupied, single family residence. The loan was approved as a Full Documentation loan with a 20% Loan To Value (LTV), and a 45.08% Debt To Income Ratio (DTI). There was a Manual approval dated 08/29/2006, in the loan file. | Full | | $37,000.00 | 2844978 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Asset Misrepresentation - With Red Flags Present | Misrepresentation of Assets | 1 | 3 | The Borrower misrepresented his ownership of assets. The loan file contained a Verification of Deposit (VOD) for the Borrower's checking account, dated 08/17/2006, which indicated a current balance of $3,818. An audit Verification of Deposit (VOD) was obtained, which revealed the Borrower's account balance on 08/17/2006 was $480.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that he had $3,818 in assets when in fact he had $480, meaning the amount of assets disclosed was misrepresented by $3,337, which not only constituted an event of default under the executed Mortgage and or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844978 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Housing History - With Red Flags Present | Misrepresentation of Housing History | 2 | 3 | The Borrower misrepresented his housing history. The loan application reflected the Borrower rented his current residence for 1 year with a monthly payment of $675. The loan file contained a Verification of Rent (VOR) from a management company, which indicated the Borrower had rented his current residence since 09/08/2005 with a payment of $675 per month. A verbal audit Verification of Rent (VOR) was obtained, which revealed the Borrower's current address was not managed by the management company indicated on the VOR. Additionally, the Verification of Rent was dated 08/08/2007; however, the loan closed on 08/14/2006. This is a red flag that the Borrower's housing history was misrepresented.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated on the loan application that he rented his current residence from the management company that completed the Verification of Rent (VOR), which not only constituted an event of default under the executed Mortgage and or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844978 |

| 29 | 0123023145 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/23/2006, in the amount of $532,000, as a rate and term refinance of an owner occupied detached single family residence located in a Planned Unit Development, which was approved as a Stated Income/Stated Asset (SISA) loan, with a 95% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 43.301% Debt To Income Ratio (DTI). There was a Manual approval dated 10/30/2006, in the loan file. | SISA | $532,000.00 | 2846923 |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Cash Out Exceeds Maximum Allowable | Cash Out Amount Exceeds Guideline Maximum | 1 | 3 | The subject loan was approved as a rate and term refinance transaction. Per the final HUD-1 settlement statement dated 10/30/2006, the Borrower paid off two revolving accounts in the amount of $7,540 and received cash out in the amount of $544, for a total cash out of $8,084, which exceeds the 2% of the loan amount or maximum $2,000 cash back threshold for rate and term refinances.  The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.  Despite the Seller's representations, the cash out to the Borrower exceeded the maximum allowable, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846923 |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Transaction Type | Underwriting Guidelines Breach | 2 | 3 | The subject loan was approved as a rate and term refinance transaction, which allows 2% of the loan amount or maximum $2,000 cash back at closing. Per the final HUD-1 settlement statement dated 10/30/2006, the Borrower paid off two revolving accounts in the amount of $7,540 and received cash out in the amount of $544, for a total cash out of $8,084, which was not within the rate and term program guidelines. The subject loan was not underwritten under cash out refinance guidelines, which may have had a significant impact on loan requirements and qualifications.  The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.  Despite the Seller's representations, the subject transaction closed as a cash out refinance and not a rate and term refinance.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846923 |
| 30 | 0123025439 | 2nd | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/17/2006, in the amount of $21,000, as a purchase money second mortgage of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 20%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 43.276% Debt To Income Ratio (DTI). There was a Manual approval dated 10/25/2006, in the loan file. | Stated | $21,000.00 | 2846927 |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1  1.04 (c) (v) SAS 2006-BC6_No Fraud  1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented his employment on the loan application. The Borrower indicated he was employed as a Foreman for 2 years on the loan application. An audit verbal verification of employment was obtained, which revealed there was no record for the Borrower's employment.  The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower falsely stated employment as Foreman for 2 years, which not only constituted an event of default under the executed Mortgage and or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846927 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2006-BC6_No Fraud<br><br>1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented his intent to occupy the subject property. The Borrower continued to reside in the departing residence disclosed on the loan application. Utility records reflect the Borrower continuing utilities at the departing residence from 06/2005 through 01/2013. In addition, the Borrower has never had phone service using the subject property address. The Borrower used the departing residence to obtain phone service. It should be noted the departing residence mortgage has never had a late payment and the subject property has had multiple late payments. The loan file contained a money order for evidence of earnest money deposit which was paid by the Borrower's brother. In addition, the final HUD-1 Settlement Statement reflected a different address for the Borrower than the subject property.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which not only constituted an event of default under the executed Mortgage and or Deed of Trust, but also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846927 |
| | | | 1.04 (c) (v) SAS 2006-BC6_No Fraud<br><br>1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Foreman earning $4,450 per month on the loan application. An audit verbal verification of employment was obtained, which revealed there was no record of the Borrower's employment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Foreman earning $4,450 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846927 |
| 31 | 0123032849 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/10/2006, in the amount of $218,500, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 95% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 32.374% Debt To Income Ratio (DTI). There was a Manual approval dated 10/18/2006, in the loan file. | Stated | $218,500.00 | 2846943 |
| | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Satisfaction of Derogatory Debts | Failure to Pay Open Collections | 1 | 3 | The loan file contained a title commitment, which reflected the Borrower had a judgment in the amount of $4,551. The closing instructions and the approval required the Borrower to pay off the judgment in full at closing. The final HUD-1 settlement statement did not reflect the judgment being paid and the loan file did not contain evidence of a satisfaction of the debt.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the satisfaction of pre-existing debts was verified prior to closing or that the loan proceeds were used to pay off the debts; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846943 |
| | | | | | **Grand Total of Repurchase Demand** | | | | | **$7,284,673.00** | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 3:31:53 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_9

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 14430086 | | SASC 2003-39EX | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Unknown | | 2846484 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law   1.04 (b) (xxvii) SAS 2003-39EX_Mortgage File   1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject Note.   The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.   The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).   Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2846484 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law   1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.   The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.   Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846484 | |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law   1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.   The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.   Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846484 | |
| . | | | | 1.04 (b) (xxxii) SAS 2003-39EX_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 4 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an Origination Appraisal.   The Seller represented and warranted, in part, that the appraisal complied with FIRREA.   Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846484 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 1:24:41 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| # | Loan Number | Lien | Deal | Category | Finding | Finding Detail | | | Narrative | Income/Emp | Loan Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 00014669139 | | SASC 2003-39EX | Loan Summary | Loan Summary | | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Unknown | | 2846485 |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law<br><br>1.04 (b) (xxvii) SAS 2003-39EX_Mortgage File<br><br>1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2846485 |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law<br><br>1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846485 |
| . | | | | 1.04 (b) (xi) SAS 2003-39EX_Compliance with Applicable Law<br><br>1.04 (b) (xxxii) SAS 2003-39EX_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846485 |
| . | | | | 1.04 (b) (xxxiii) SAS 2003-39EX_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 4 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an Origination Appraisal.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846485 |
| 3 | 00031775562 | 1st | LMT 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/05/2005, in the amount of $160,000, as cash out refinance of an owner occupied single family residence. The loan was approved as a No Documentation (No Income, No Employment, No Asset Verification) loan, with a 64% Loan To Value/Combined Loan To Value (LTV/CLTV). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | NINENA | $160,000.00 | 2845226 |
| . | | | | 1.04 (b) (xii) LMT 2005-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LMT 2005-2_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The disclosed finance charge ($192,200.18) is ($264.89) below the actual finance charge ($192,465.07). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d)(1)).<br><br>Despite the Seller's representations, the Annual Percentage Rate (APR) and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845226 |

Cowen_US Bank_Final_Version_9

| # | Loan No. | Lien | Deal | Sub-Category | Category | Finding | | | Narrative | Doc Type | Loan Amount | ID |
|---|----------|------|------|--------------|----------|---------|---|---|-----------|----------|-------------|-----|
| 4 | 00032974289 | 1st | LMT 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/21/2006, in the amount of $479,000.00, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset Documentation loan with an 85% Loan To Value/Combined Loan To Value (LTV/CLTV) and a 41.94% debt-to-income ratio (DTI). There was a Manual approval dated 07/26/2006, in the loan file. | Stated | $479,000.00 | 2845261 |
| | | | | 1.04 (c) (xxii) LMT 2006-8_No Fraud<br><br>1.04 (c) (xxiv) LMT 2006-8_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated secondary income as a Registered Nurse, earning $3,700 per month on the loan application. Additionally, the Borrower falsely stated net rental income for an investment property in the amount of $370 per month. According to the Borrower's 2006 tax returns with attached W2 Summary, contained in the post-closing loan file as part of a hardship request, the Borrower's earnings from the secondary employment were $18,973 or $1,581 per month for the year of the subject loan closing. The Borrower did not report rental income from or ownership of an investment property on the tax returns.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated secondary income as a Registered Nurse, earning $3,700 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845261 |
| 5 | 00040656704 | 1st | LXS 2007-15N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/29/2007, in the amount of $408,000, as cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with an 80%/90% Loan to Value/Combined Loan to Value, and a 33.02% Debt to Income. There was a manual approval dated 05/17/2007, in the loan file. The Borrower's received $56,418 cash out at closing. | Stated | $408,000.00 | 2845513 |
| | | | | 1.04 (b) (xxi) (i) LXS 2007-15N_Underwriting Methodology - Deemed MnA_Pool 3 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a Carpenter for 3 years, earning $7,965 per month and the Co-Borrower stated on the loan application employment as a Food Service Director for 5 years, earning $6,839 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845513 |
| | | | | 1.04 (c) (v) LXS 2007-15N_No Fraud<br><br>1.04 (c) (vii) LXS 2007-15N_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower and Co-Borrower misrepresented their disclosed income. The Borrower falsely stated income as a Carpenter earning $7,965 per month on the loan application and the Co-Borrower falsely stated income as a Food Service Director earning $6,839 per month on the loan application. The loan file contained post-closing documentation which reflected the Borrowers 2007 tax return which reflected the Borrowers schedule C net income of $87,725 or $7,310 per month. In addition, the post-closing documentation revealed the Co-Borrower's 2006 near year W2 from which reflected gross earnings of $22,354 or $1,863 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower's falsely stated income as a Carpenter earning $7,965 per month and as a Food Service Manager earning $6,839 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845513 |
| 6 | 00040914103 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/20/2007, in the amount of $573,750, as a rate-term refinance of an owner occupied single family residence located in a planned unit development. The loan was approved as a Full Documentation loan, with an 85% loan-to-value, and a 44.69% debt-to-income. There was a Desktop Underwriting approval dated 12/18/2007, in the loan file. | Full | $573,750.00 | 2846399 |
| | | | | 1.04 (b) (xii) SARM 2008-2_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xxiv) SARM 2008-2_Compliance with Applicable Law | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure as to the APR and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The disclosed finance charge ($876,983.10) is ($1,267.23) below the actual finance charge ($878,250.33). For rescission after initiation of foreclosure, the Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $35 below the actual finance charge. (15 USC Sec. 1635(i)(2)).<br><br>The disclosed finance charge ($876,983.10) is ($1,267.23) below the actual finance charge ($878,250.33). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d)(1)).<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower. | | | 2846399 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 1:24:41 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 7 | 00121827505 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/14/2006, in the amount of $262,000.00, for a cash out refinance of an owner occupied, single family residence. The loan was approved as a stated income/verified asset loan, a 79.39% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.59% Debt to Income Ratio (DTI). There was a Manual approval dated 07/21/2006, in the loan file. | Stated | $262,000.00 | 2844791 | |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | 3 | The Borrower stated on the loan application employment as a self-employed Certified Massage Therapist for 6 years, earning $5,500 per month. Income of $5,500 per month for a Massage Therapist is unreasonable. The Bureau of Labor Statistics reported the average salary at the 75th percentile for a Massage Therapist in 2005 and in the same geographic region was $3,918 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844791 | |
| 8 | 00121836605 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/11/2006, in the amount of $495,000, a purchase of an owner occupied, 2 unit property. The loan was approved as a full documentation loan, with a 90% loan to value, combined loan to value (LTV/CLTV), and a 37.24% debt to income (DTI). There was a manual approval dated 07/13/2006, in the loan file. | Full | $495,000.00 | 2844805 | |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented his debt obligations. Per audit credit report the Borrower failed to disclose an automobile loan that was acquired prior to the subject's loan closing on 07/11/2006. The Borrower acquired an undisclosed automobile loan 05/2006; loan amount of $14,272, with a monthly payment of $428, payment was calculated as 3% of loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $428 monthly debt, which not only constituted an event of default under the executed Mortgage and or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844805 | |
| . | | | | 1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Housing History - With No Red Flags Present | Misrepresentation of Housing History | 4 | 3 | The Borrower misrepresented his housing history. Per loan application, the Borrower owned and resided at current residence for 10 years. The Borrower filed Chapter 7 Bankruptcy on 06/04/2010; according to the Statement of Financial Affairs statement, Section 15, the Borrower occupied a different property located in Riverside, CA from 1999 through 2009. The subject closed on 07/11/2006.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage<br><br>Despite the Seller's representations, the Borrower falsely stated on the loan application that they resided at their current residence for 10 years, which constituted an event of default under the executed Mortgage and/or Deed of Trust. | | | 2844805 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxii) BNC 2006-1_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 5 | 3 | The Borrower misrepresented his intent to occupy the subject property. The Borrower filed Chapter 7 Bankruptcy on 06/04/2010; according to the Statement of Financial Affairs statement, it shows the the Borrower occupied a different property located in Riverside, CA from 1999 through 2009. The subject closed on 07/11/2006. According to the appraisal, the subject property was a duplex; the living area for unit 1 was 840 square feet and unit 2 was 864 square feet.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2844805 |
| 9 | 00121849848 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/13/2006, in the amount of $375,000, as cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 75% Loan to Value/Combined Loan to Value, and a 42.727% Debt to Income. There was a manual approval dated 07/27/2006, in the loan file. The Borrower paid off over $33,600 in debt and received $20,293 in cash at closing. | Stated | | $375,000.00 | 2844825 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that the following credit inquiries for the previous 90 days were investigated so as to determine whether such inquires resulted in additional debt undisclosed on the loan application, such that an accurate credit profile was verified:<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844825 |
| | | | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. Per the audit credit report the Borrower had 1 undisclosed mortgage at the time of the subject property's origination on 07/13/2006. The Borrower obtained a mortgage in the amount of $16,000 with an estimated monthly payment of $129 based on an interest rate of 9.050% and amortized over 30 years in 01/2004 with an undisclosed property location.<br><br>Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $129 monthly debt, which not only constituted an event of default under the executed Mortgage and or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844825 |

Cowen_US Bank_Final_Version_9

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1.04 (b) (xxi) BNC 2006-1_No Fraud | Misrepresentation of Housing History - With No Red Flags Present | Misrepresentation of Housing History | 3|3 | The Borrower misrepresented her housing history. Per a credit supplement, the Borrower opened a mortgage in 01/2004 in the amount of $16,000 with an estimated monthly payment at a $0 balance on an interest rate of 9.050% amortized over 30 years.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated on the loan application that they owned their current residence for 18 years with a monthly payment of $2,489 and an unknown property with and undisclosed mortgage with a monthly payment of $129, which constituted an event of default under the executed Mortgage and/or Deed of Trust. | | | 2844825 |
| | 1.04 (b) (xxii) BNC 2006-1_No Event of Default | | | | | | | | |
| 10 | 00121852438 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0|0 | The subject loan closed on 07/26/2006, in the amount of $306,000, as cash out refinance of an owner occupied condominium. The loan was approved as a Stated Income/Verified Assets loan, with an 89.736% Loan to Value/Combined Loan to Value, and a 47.764% Debt to Income Ratio. There was a manual approval dated 07/26/2006, in the loan file. | Stated | $306,000.00 | 2844829 |
| | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1|3 | The Borrower stated on the loan application employment as an Owner of a bridal accessory business, earning $7,600 per month. Income of $7,600 per month for an Owner of a bridal accessory business is unreasonable. Salary.com reported the average salary at the 75th percentile for a Wedding Manager in the same geographic region was $6,215 per month. The Borrower's stated income exceeded Salary.com 75th percentile by $1,385 per month, which is a red flag that the Borrower's income was overstated.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844829 |
| | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 3| | Monthly debts of $3,630 were used by the Lender to determine the Debt to Income Ratio (DTI). The origination underwriter used a negative rental income of $472 per month for the Borrower's investment property and the actual negative rental income was $872 per month. The correct recalculation results in a monthly debt of $4,049.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts. The inaccurately calculated debt significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844829 |
| | 1.04 (b) (xl) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 4|3 | The Borrower misrepresented her employment on the loan application. The loan file contained post-closing documentation which reflected a hardship letter written by the Borrower dated 07/12/2010 and revealed the Borrower has not filed taxes because she has not had a real job since 2005.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Owner of a bridal accessory business for 9 years, which not only constituted an event of default under the executed Mortgage and or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844829 |
| | 1.04 (b) (xxi) BNC 2006-1_No Fraud | | | | | | | | |
| | 1.04 (b) (xxiii) BNC 2006-1_No Event of Default | | | | | | | | |

**Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 1:24:41 PM**
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented his disclosed income. The borrower falsely stated income as an Owner of a bridal accessory business earning $7,600 per month on the loan application. The loan file contained post-closing documentation which reflected a hardship letter written and signed by the Borrower dated 07/12/2010 and revealed the Borrower has not filed taxes because she has not had a real job since 2005.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a bridal accessory business earning $7,600 per month on the loan application, which not only constituted an event of default under the executed Mortgage and Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844829 |
| 11 | 00121859094 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/19/2006, in the amount of $171,700, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Stated Asset (SISA) documentation loan, with a 44.597% Loan to Value/Combined Loan To Value (LTV/CLTV), and a 46.64% Debt to Income (DTI). There was a Manual approval dated 07/29/2006, in the loan file. | SISA | $171,700.00 | 2844847 |
| | | | | 1.04 (b) (xii) BNC 2006-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xl) (g) BNC 2006-1_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xl) (h) BNC 2006-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxiii) BNC 2006-1_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure as to the APR and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The disclosed finance charge ($536,117.40) is ($1,280.83) below the actual finance charge ($537,398.23). For rescission after initiation of foreclosure, the Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $35 below the actual finance charge. (15 USC Sec. 1635(i) (2)).<br><br>The disclosed finance charge ($536,117.40) is ($1,280.83) below the actual finance charge ($537,398.23). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d) (1)).<br><br>The disclosed finance charge ($536,117.40) is less than the actual finance charge ($537,398.23) by ($1,280.83). For rescission purposes, the Truth in Lending Act considers the finance charge inaccurate if it is understated by more than half of 1% of the note amount ($858.50) or $100, whichever is greater. (12 CFR Sec. 1026.23(g)).<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844847 |

| # | Loan | Lien | Deal | Finding | Finding Type | Finding Subtype | | | Narrative | Doc | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay | Failure to Determine Reasonable Ability to Repay (Stated) | 2 | 3 | Per the loan application, the Borrower was a self employed owner of a home based landscaping business, for 10 years, earning $4,790 per month.<br><br>The Borrower owned a home based landscaping business and was approved with a qualifying credit score of 521 and the Borrower's credit profile reflected that the Borrower had excessive late payments on all open lines of credit from 3x30 days late to 3x30 days late on 4 trades as recent as 05/2006, which was only 2 months prior to the subject loan closing date of 07/19/2006. There were also two unpaid collection accounts in the amount of $155 and $255. Additionally, the Borrower had just recently refinanced the subject property only 12 months prior to the subject loan closing and received $47,399 in cash out from the subject; however, the Borrower could only state total assets of $50,000; therefore suggesting that the Borrower maintained monthly dues from cash out received from the subject property and not from income earned from the business.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844847 |
| 12 | 00121860670 | 2nd | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/13/2006, in the amount of $35,000, as cash out refinance transaction. The loan was approved as a stated income, verified asset (SIVA) loan, with a 20%/100% loan to value/combined loan to value (LTV/CLTV), and a 41.56% debt to income (DTI). The SIVA loan program requires income to be stated on loan application, verification of employment and assets. There was a manual approval dated 07/25/2006, in the loan file. | Stated | $35,000.00 | 2844853 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay | Failure to Determine Reasonable Ability to Repay (Stated) | 1 | 3 | The Borrower stated on the loan application employment as a Foreman for a Brick Mason Company for 8 years, earning $5,750 per month.<br><br>Income of $5,750 per month for a Brick Mason is unreasonable. Bureau of Labor Statistics reported the average salary at the 75th percentile for a Brick Mason in 2006 and in the same geographic region was $4,648 per month. The Borrower's stated income exceeds the Bureau of Labor Statistics 75th percentile which is a red flag the Borrower's income was overstated.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844853 |
| 13 | 00121872659 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/28/2006, in the amount of $208,000, as a cash out refinance of an owner occupied, planned urban development. The loan was approved as a Full Documentation loan, with an 81.89% loan to value/combined loan to value (LTV/CLTV), and a 28.89% debt-to-income ratio. There was a Manual approval dated 06/28/2006, in the loan file. | Full | $208,000.00 | 2844875 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The applicable guidelines required the Lender to obtain a written explanation from the Borrower regarding derogatory credit. Despite these requirements, the Underwriter failed to obtain sufficient explanation from the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844875 |

| # | Loan # | Lien | Deal | Code | Finding Name | Finding | | | Narrative | Doc Type | Amount | Loan ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 00121873442 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/23/2006, in the amount of $244,700.00, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 100% loan to value, and a 45.97% debt-to-income ratio. There was a Manual approval dated 07/18/2006, in the loan file. | Stated | $244,700.00 | 2844879 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The applicable guidelines required the Lender to obtain a written explanation from the Borrower regarding derogatory credit. Despite these representations, the Underwriter failed to obtain sufficient explanation from the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844879 |
| 15 | 00121874150 | 1st | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/20/2006, in the amount of $209,000, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 95% Loan To Value/Combined Loan To Value, and a 49.85% Debt to Income Ratio (DTI). There was a Manual approval dated 07/20/2006, in the loan file. | Full | $209,000.00 | 2844883 |
| . | | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $9,410. In total, assets of $9,410 were required to be verified. The loan file contained a verification of deposit (VOD) dated 07/26/2006 for the Borrower's checking account, which reflected 60 day seasoned assets of $9,148.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $262 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844883 |
| 16 | 00121874275 | 2nd | BNCMT 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/25/2006, in the amount of $41,200, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 20%/100% Loan To Value/Combined Loan To Value, and a 48.37% Debt to Income Ratio (DTI). There was a Manual approval dated 07/25/2006, in the loan file. | Full | $41,200.00 | 2844884 |
| . | | | | 1.04 (b) (ii) BNC 2006-1_No Delinquent Taxes/Charges<br><br>1.04 (b) (ix) BNC 2006-1_Mechanics' Liens<br><br>1.04 (b) (v) BNC 2006-1_Valid Lien<br><br>1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Pay Tax Lien | Failure to Satisfy Liens | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. The origination credit report, dated 07/20/2006, reported 4 tax liens in the amounts of $367, $677, $1,832 and $1,165; however, no documentation the debts were paid was provided.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Additionally, the Seller represented and warranted, in part, that the subject mortgage represents a valid, subsisting, enforceable and perfected first lien on the subject property.<br><br>Despite the Seller's representations, there is no evidence in the loan file that 4 tax liens reflected on the origination credit report dated 07/20/2006 in the amounts of $367, $677, $1,832 and $1,165 were paid.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844884 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/21/2013 1:24:41 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xxi) BNC 2006-1_No Fraud<br><br>1.04 (b) (xxii) BNC 2006-1_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented his intent to occupy the subject property. The Borrower filed for Chapter 7 Bankruptcy on 01/21/2009 with the United States Bankruptcy Court, District of Arizona. The attached Schedule of Real Affairs Section 15 requires the Borrower to list all properties occupied in the last 3 years, which dates back to 01/21/2006. The Borrower's current address listed on the loan application in Phoenix, AZ is the same address the Borrower occupied from 1997 to 12/2007 according the bankruptcy documents; therefore, the Borrower never moved out of his current address into the subject, which was a purchase of an owner occupied residence.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2844884 |
| 17 | 00124862624 | 1st | SASC 2007-BC4 | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The data tape indicated the transaction was a cash out refinance of an owner occupied property at a loan-to-value of 56% with a loan amount of $142,000 which closed 06/29/2007. There was no critical documentation provided for the file that was represented on the data Tape by the Seller. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $142,000.00 | 2847100 |
| | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | All of the documents in the file were for a different Borrower and a different property located that what was represented on the Data Tape by the Seller.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847100 |
| 18 | 00124864604 | 1st | SASC 2007-BNC1 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/26/2007, in the amount of $216,000, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset documentation loan, with an 80% loan to value/combined loan to value, and a 45.09% debt to income (DTI). There was a manual approval, dated 07/03/2007, in the loan file. Per the final HUD-1, dated 07/02/2007, the Borrower received cash proceeds in the amount of $30,578 at closing. | Stated | $216,000.00 | 2847212 |

Cowen_US Bank_Final_Version_9

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xli) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAS 2007-BNC1_No Fraud<br><br>1.04 (b) (xxiii) SAS 2007-BNC1_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented her employment on the loan application. The Borrower falsely stated income as a Manager for 4 years on the loan application. The loan file contained a verbal verification of employment dated 07/03/2007, which indicated the Lender had to call an individual on a cell phone, who claimed to be a Builder with no land line. The verification document indicated the verifier spoke with the owner and verified the business via the state of Arizona; however, the document did not verify the person reflected on the verification document as the owner of the company, but a manager. Per the Borrower's 2007 tax returns, the Borrower did not earn any wage income in 2007. Furthermore, the Borrower was self-employed as the Owner of an Adult Day Care.<br><br>The Seller represented and warranted, in part, that the subject loan was underwritten in accordance with the Originator's underwriting guidelines. Further, the Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as Manager for 4 years, which constituted an event of default under the executed Mortgage and or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847212 |
| | | | 1.04 (b) (xi) SAS 2007-BNC1_Underwriting Guidelines<br><br>1.04 (b) (xli) (H) SAS 2007-BNC1_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAS 2007-BNC1_No Fraud<br><br>1.04 (b) (xxiii) SAS 2007-BNC1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Manager, earning $5,490 per month on the loan application. Per the Borrower's 2007 tax returns, the Borrower did not earn any wage income in 2007. Furthermore, the Borrower was self-employed as the Owner of an Adult Day Care.<br><br>The Seller represented and warranted, in part, that the subject loan was underwritten in accordance with the Originator's underwriting guidelines. Further, the Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Manager, earning $5,490 per month on the loan application, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847212 |
| 19 | 0014363949 | 1st | SAIL 2003-BC5 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file.<br><br>Per the Data Tape, the subject loan amount was $45,000. | Unknown | $45,000.00 | 2845700 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| . | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xii) SAIL 2003-BC5_Mortgage File<br><br>1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act; neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845700 |
| . | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845700 |
| . | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845700 |
| . | | 1.04 (c) (xviii) SAIL 2003-BC5_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 4 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an Origination Appraisal.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845700 |
| 20 | 0015321185 | 1st | SAIL 2003-BC9 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file.<br><br>Per the Data Tape, the subject loan amount was $85,000. | Unknown | $85,000.00 | 2845707 |

| # | Loan # | Lien | Deal | Code | Subtitle | Finding | | | Narrative | Type | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xvii) (d) SAIL 2003-BC9_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. The credit package was not provided.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with applicable law. | | | 2845707 |
| 21 | 0030364624 | 1st | SAIL 2005-7 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application. All of the documents in the loan file were for a different Borrower and a different property location than represented on the Data Tape by the Seller.<br><br>Per the Data Tape, the subject loan amount was $147,200. | Unknown | $147,200.00 | 2845848 |
| | | | | 1.04 (b) (xiii) SAIL 2005-7_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xii) SAIL 2005-7_Mortgage File<br><br>1.04 (c) (xvii) SAIL 2005-7_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845848 |
| | | | | 1.04 (b) (xiii) SAIL 2005-7_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2005-7_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845848 |
| | | | | 1.04 (b) (xiii) SAIL 2005-7_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2005-7_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Certificateholders. | | | 2845848 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | 1.04 (c) (xviii) SAIL 2005-7_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. To meet the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an Origination Appraisal.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that origination appraisal complied with the Act. | | | 2845848 | |
| 22 | 0121293211 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/09/2006, in the amount of $485,000, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 56.40% loan-to-value, and a 38.28% debt-to-income. There was a Manual approval dated 06/28/2006, in the loan file. | Stated | | $485,000.00 | 2846035 | |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented his employment on the loan application. The loan file did not contain the Borrower's business license or letter from a CPA to confirm the Borrower's self-employment status. Additionally, the origination credit report did not indicate that the Borrower had a history of being self-employed and reflected the Borrower was retired, which is a red flag that the Borrower was not self-employed. According to a Statement of Financial Affairs, filed by the Borrower with the District of Arizona Bankruptcy Courts as part of a Chapter 13 bankruptcy case dated 04/23/2008, the Borrower was not self-employed for the prior 6 years of the filing date; therefore, the Borrower was not self-employed at the time of the subject loan; therefore, the Borrower's employment was misrepresented.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Owner of a motorcycle business for 3 years, which not only constituted an event of default under the executed Mortgage and or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846035 | |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a motorcycle business earning $9,300 per month on the loan application. According to a Statement of Financial Affairs, filed by the Borrower with the District of Arizona Bankruptcy Courts as part of a Chapter 13 bankruptcy case dated 04/23/2008, the Borrower was not self-employed for the prior 6 years of the filing date; therefore, the Borrower was not self-employed at the time of the subject loan; therefore, the Borrower's income was misrepresented.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a motorcycle business earning $9,300 per month on the loan application, which not only constituted an event of default under the executed Mortgage and Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2846035 | |
| 23 | 0121318067 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/16/2006, in the amount of $188,000, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with an 85.45% loan-to-value, and a 44.66% debt-to-income. There was a Manual approval dated 06/16/2006, in the loan file. | Stated | | $188,000.00 | 2846086 | |

| | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Automotive Technician earning $3,500 per month on the loan application. According to a judgment which was filed by the Borrower with the District of Arizona Bankruptcy Courts as part of a Chapter 7 bankruptcy case dated 10/22/2007, the Borrower's income for the year of the subject loan closing of 2006 was $18,856 or $1,571 per month. | | | 2846086 |

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as an Automotive Technician earning $3,500 per month on the loan application, which not only constituted an event of default under the executed Mortgage and Deed of Trust.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.

Also referenced: 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud; 1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default

Cowen_US Bank_Final_Version_9

| # | Loan # | Lien | Deal | | | Finding Type | Code L | Code R | Narrative | Doc Type | Amount | ID |
|---|--------|------|------|---|---|---|---|---|---|---|---|---|
| 24 | 0121318976 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/23/2006, in the amount of $181,050.00, as a rate and term refinance of an owner occupied detached Planned Unit Development (PUD). The loan was approved as a Full documentation loan, with an 85% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 49.234% Debt To Income (DTI). There was a Manual approval dated 06/23/2006, in the loan file. | Full | $181,050.00 | 2846089 |
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Cash Out Exceeds Maximum Allowable | Cash Out Amount Exceeds Guideline Maximum | 1 | 3 | Per the final HUD-1 settlement statement dated 06/29/2006, the Borrower received $2,440 cash back at closing.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the subject loan closed as a rate and term refinance; however, the final HUD-1 settlement statement reflected the Borrower paid off revolving debt which is not allowed on a rate and term refinance.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846089 |
| | . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Transaction Type | Underwriting Guidelines Breach | 2 | 3 | The final HUD-1 settlement statement reflected the Borrower paid off revolving debt which is not allowed on a rate and term refinance.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the subject transaction was approved as a rate and term refinance which is not supported by the evidence in the loan file. A determination of the Borrower's reasonable ability to repay is not evidenced in the loan file.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846089 |
| 25 | 0121334502 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/22/2006, in the amount of $40,600, as a purchase of an owner occupied single family residence. The loan was approved as a stated income/verified asset loan, with a 20%/100% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 48.22% debt to income ratio (DTI). There was a Manual approval dated 06/28/2006, in the loan file. | Stated | $40,600.00 | 2846126 |
| | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Foreman earning $6,000 per month on the loan application. A post closing audit verification of employment was contained, which verified the Borrower's hourly wage of $15, which results in the Borrower earning $2,600.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Foreman earning $6,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846126 |
| 26 | 0122242100 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/03/2006, in the amount of $189,900, as a cash out refinance of an owner occupied single family residence. The loan was approved as a full documentation loan, with a 90% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 45.68% debt to income ratio (DTI). There was a Manual approval dated 08/03/2006, in the loan file. The HUD-1 reflected the Borrower received $19,277 at closing. | Full | $189,900.00 | 2844900 |
| | | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $2,666 for the subject property. In total, assets of $2,666 were required to be verified. The loan file did not contain asset documentation.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $2,666 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844900 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. A soft credit pull revealed the Borrower had opened 2 undisclosed student loans prior to the subject loan closing in the amount of $50,000 with a monthly payment of $246.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $246 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2844900 |
| 27 | 0122266273 | 2nd | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/28/2006, in the amount of $46,942, as a purchase of an owner occupied planned unit development. The loan was approved as a full documentation loan, with an 20%/100% Loan To Value/Combined Loan To Value LTV/CLTV, and a 44.42% debt to income ratio (DTI). There was a Manual approval dated 07/10/2006, in the loan file. The Hud-1 revealed the Borrower received $862 at closing. | Full | $46,942.00 | 2844943 |
| | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify earnest money of $6,805 for the subject property. In total, assets of $6,805 were required to be verified. The subject loan file contained page 2 of 8 pages for the 11/2005 bank statement, to verify the escrow deposits for the subject property. The Borrower was required to disclose all 8 pages of the Borrowers' bank statements.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to repay the subject loan.<br><br>Despite the Seller's representations, there was a $6,805 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844943 |
| | | | | | | | | | | | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 1:24:41 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| # | Loan Number | Lien | Deal | Code | Finding | Finding | A | B | Description | Doc Type | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 28 | 0122267065 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/16/2006, in the amount of $270,000.00, as a purchase of an owner-occupied single-family detached Planned Unit Development (PUD). The loan was approved as a Stated Income/Verified Asset documentation loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 42.38% Debt to Income Ratio (DTI). There was a manual approval, dated 08/16/2006, in the loan file. | Stated | $292,000.00 | 2844947 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $74,998. In total, assets of $74,998 were required to be verified. The loan file contained a copy of the Borrower's check for closing; however, the Lender's guidelines required assets be verified with a Verification of Deposit or two consecutive bank statements.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there was a $74,998 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844947 |
| | | | | 1.04 (b) (xi) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (b) (xxi) BNC 2006-2_No Fraud

1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a General Manager earning $8,750 per month on the loan application. The Borrower filed Chapter 7 Bankruptcy documents with the District of Arizona on 08/07/2009. Review of the Statement of Financial Affairs, revealed the Borrower, declared under penalty of perjury, 2007 employment income of $20,695, or 1,725 per month. Additionally, on 02/21/2013, audit verification of the Borrower's employment was received, which confirmed the Borrower was still employed with the employer indicated at origination. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a General Manager earning $8,750 per month on the loan application, which not only constituted an event of default under the executed Mortgage and/or Deed of Trust.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844947 |
| 29 | 0123023046 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/10/2006, in the amount of $190,000, as a purchase of a primary single family residence. The loan was approved as a Stated Income/Verified Asset Loan, with a 100% Loan to Value, and a 44.03% Debt to Income ratio. There was a Manual approval dated 10/13/2006, in the loan file. | Stated | $190,000.00 | 2846922 |
| | | | | 1.04 (c) (v) SAS 2006-BC6_No Fraud

1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 2 | 3 | The Borrower misrepresented his ownership of the assets stated on the loan application. The Lender obtained a Verification of Deposit (VOD) dated 10/04/2006 confirming a current balance of $8,309 in the Borrower's checking account. Further, an audit VOD was received confirming the balance on 10/04/2006 was actually $7,476. The assets were misrepresented by $833 at the time of origination.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the borrower falsely disclosed that he had $8,308 when in fact he had $7,476, meaning the amount of assets verified was misrepresented by $833, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846922 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | 0123025520 | 1st | SASC 2006-BC6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/25/2006, in the amount of $228,000, as a cash-out refinance of a primary single family residence. The loan was approved as a Full Documentation loan with a 95% Loan to Value/ Combined and a 48% Debt To Income ratio. There was a Manual approval dated 10/30/2006, in the loan file. | Full | $228,000.00 | 2846928 |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The origination credit report, dated 10/18/2006, contained five credit inquires dated from 08/22/2006 through 10/09/2006. The loan file did not contain a Letter of Explanation for credit inquiries.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there is no evidence in the file that the following credit inquiries for the previous 90 days were investigated so as to determine whether such inquiries resulted in additional debt undisclosed on the loan application, such that an accurate credit profile was verified.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846928 |
| | | | | 1.04 (b) (xviii) (d) SAS 2006-BC6_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (c) (v) SAS 2006-BC6_No Fraud

1.04 (c) (vii) SAS 2006-BC6_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrowers misrepresented their debt obligations. The audit credit report revealed the Borrower's obtained an installment account the same month as the subject closing. The account was opened in the amount of $15,836 with a monthly payment of $213.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $213 monthly debt, which not only constituted an event of default under the executed Mortgage and or Deed of Trust.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846928 |
| 31 | 0123866006 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/22/2006, in the amount of $369,000, as a cash-out refinance of a primary detached single family residence. The loan was approved as a Full Documentation loan (24 month bank statements), with a 90% Loan to Value / Combined Loan to Value (LTV/CLTV), and a 49.05% Debt to Income Ratio (DTI). There was a Manual Approval dated 01/03/2007, in the loan file. Per the final HUD-1, the Borrower received a $48,316 disbursement at closing. | Full | $369,000.00 | 2845082 |
| | . | | | 1.04 (b) (xl) (H) BNC 2007-2_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Income | Improper Calculation of Income | 1 | 3 | A monthly income of $7,941 was used to determine the Debt to Income Ratio (DTI). The loan file contained the Lender's 24 month bank statement income calculation worksheet which reflected the Borrower's monthly average income of $7,546; however, income of $7,941 was used on the final 1008 (transmittal summary) and 1003 (loan application). The correct recalculation results in a monthly income of $7,546. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, a review of the loan file reveals the Lender failed to accurately calculate the Borrower's income, which significantly impacted the determination of the Borrower's reasonable ability to repay.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845082 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 1:24:41 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 32 | 0124046541 | 1st | SASC 2007-BC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/01/2006 in the amount of $216,541 to lease or purchase of an owner occupied single family residence located in a planned unit development which was approved as a full income verified Asset loan, with a 100% Loan to Value/Combined Loan to Value, and a 43.258% Debt to Income. There was a manual approval dated 01/09/2007, in the loan file. | Stated | | $221,541.00 | 2847034 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 1 | | The Borrower stated on the loan application employment as a Personal Trainer for 2 years, earning $6,300 per month.

Income of $6,300 per month for a Personal Trainer is unreasonable. The Bureau of Labor Statistics reported the average salary at the 75th percentile for an Athletic Trainer in 2006 and in the same geographic region was $3,559 per month.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, the Borrower's stated income was unreasonable and significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847034 |

| | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's was not required to bring funds to closing. In addition, the Borrower was required to verify earnest money of $3,000 along with 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $4,727 for the subject property. In total, assets of $7,727 were required to be verified.

The subject loan was underwritten without regard to the Borrower's reasonable ability to repay. Verification of the Borrower's assets, so as to confirm the Borrower's strength of savings patterns, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

Despite the Seller's representations, there was a $2,106 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847034 |

| | | | 1.04 (b) (xviii) (d) SAS 2007-BC3_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (c) (v) SAS 2007-BC3_No Fraud

1.04 (c) (vii) SAS 2007-BC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Personal Trainer earning $6,300 per month on the loan application. The loan file contained audit verification of employment which revealed the Borrowers 2006 gross earnings of $39,444. In addition, the loan file contained the Borrower's 2006 tax return which revealed gross earnings of $38,329 or $3,194 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.

The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Personal Trainer earning $6,300 per month on the loan application, which not only constitutes an event of default under the executed Mortgage and Deed of Trust.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847034 |

| | | | | | | | | **Grand Total of Repurchase Demand** | | | $7,035,583.00 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/21/2013 1:24:41 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 000000019785286 | 1st | SARM 2005-8XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/01/2005, in the amount of $117,600. The loan was approved with a 75.87% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $117,600.00 | 2846202 | |
| . | | | | 1.04 (b) (xii) SARM 2005-8XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xii) SARM 2005-8XS_Mortgage File<br><br>1.04 (c) (xvii) SARM 2005-8XS_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846202 | |
| . | | | | 1.04 (b) (xii) SARM 2005-8XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SARM 2005-8XS_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846202 | |
| . | | | | 1.04 (b) (xii) SARM 2005-8XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SARM 2005-8XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846202 | |
| . | | | | 1.04 (c) (xviii) SARM 2005-8XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846202 | |
| . | | | | | | | | | | | | | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_6

| # | Loan Number | | Deal | Finding | Category | Category | | | Description | | Amount | ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 000000040061772 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 1/09/2007, in the amount of $142,455.00, as a purchase of an investment property. The loan was approved as a Stated Income/Verified Asset loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 43.62% Debt to Income (DTI). There was a manual approval dated 2/07/2007, in the loan file. | Stated | $142,455.00 | 2845602 | |
| . | | | | 1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Straw Purchaser Transaction | Straw Purchaser Transaction | 1 | 3 | The purchase was an ineligible transaction. Evidence in the file should have put the Underwriter on notice for potential fraud. The loan file contained two post-closing hardship letters dated 1/18/2011 and 12/1/2010 to which the Borrower goes into detail on how he purchased the subject property for his son and family due to his son having bad credit. The Borrower has indicated his was only supposed to be on the loan for a maximum of one year while his son paid the mortgage payments. The loan file contained more than one 1003 in the loan file which reflects the Borrower as a Computer Analyst for 10 years earning $6,000 per month which was signed by the Borrower. The final 1003 and verbal verification of employment reflects the Borrower as a Coach Bus Driver for 7 years earning $6,000 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower provided misleading information on the loan file, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2845602 | |
| 3 | 000000040597312 | 1st | LXS 2007-10H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 5/03/2007, in the amount of $323,000.00, as a purchase of a vacation home. The loan was approved as a Stated Income/Verified Asset loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 33.61% Debt to Income Ratio (DTI). There was a manual approval dated 4/25/2007, in the loan file. | Stated | $323,000.00 | 2845468 | |
| . | | | | 1.04 (b) (xviii) LXS 2007-10H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 33.61% to 69.13%, which exceeds the represented DTI. | | | 2845468 | |
| . | | | | 1.04 (b) (xviii) LXS 2007-10H_DTI<br><br>1.04 (c) (v) LXS 2007-10H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-10H_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Real Estate Agent earning $13,800 per month on the loan application. The loan file contained post-closing 2008 W-2s from the same origination employer which reflects income of $10,477 or $873 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Moreover, a recalculation of Debt to Income (DTI) based on the Borrower's verified income yields a DTI of 69.13%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Real Estate Agent earning $13,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845468 | |
| 4 | 00033404724 | 1st | LMT 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/29/2006, in the amount of $498,400, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 37.4% Debt to Income Ratio (DTI). There was a Manual approval dated 09/28/2006, in the loan file. | Stated | $498,400.00 | 2845266 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | Loan # | Lien | Deal | Guideline | Finding Subtype | Finding Type | | | Narrative | Doc | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (xxii) LMT 2006-8_No Fraud  1.04 (c) (xxiv) LMT 2006-8_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Facilities Maintenance Manager earning $6,000 per month on the loan application...employment received from the Co-Borrower's employer that revealed the Borrower's income for 2006, the same year the subject loan closed, was $4,000 per month.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification and disclosure of the Borrower's income, so as to confirm the adequacy of the Borrower's financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Co-Borrower falsely stated employment as a Facilities Manager earning $6,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845266 |
| 5 | 00040289548 | 1st | LMT 2007-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/27/2007 in the amount of $319,200, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 46% Debt to Income Ratio (DTI). There was a Manual approval dated 04/27/2007, in the loan file. | Stated | $319,200.00 | 2845299 |
| . | | | | 1.04 (c) (v) LMT 2007-8_No Fraud  1.04 (c) (vii) LMT 2007-8_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented her debt obligations. A post closing audit credit report revealed the Borrower opened an installment auto loan in 02/2007, in the amount of $47,408 with a monthly payment of $605. The undisclosed installment loan was opened prior to the subject loan closing.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $605 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845299 |
| . | | | | 1.04 (c) (v) LMT 2007-8_No Fraud  1.04 (c) (vii) LMT 2007-8_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Operations Finance Manager earning $11,500 per month on the loan application. According to a Statement of Financial Affairs filed by the Borrower with the District of New Jersey, dated 09/23/2009, the Borrower's same year income was $5,243 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Operations Finance Manager earning $11,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845299 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_6

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 00040444358 | 1st | LXS 2007-15N | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/22/2007 by the amount of $144,000 for a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 80.53% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40.54% Debt to Income Ratio (DTI). There was a manual approval dated 05/21/2007, in the loan file. | Stated | $144,000.00 | 2845509 |
| | | | 1.04 (b) (xxi) (i) LXS 2007-15N_Underwriting Methodology - Deemed MnA_Pool 3 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower's funds required for closing were $14,154. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $2,210 for the subject property. In total, assets of $16,364 were required to be verified.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's assets, so as to confirm the Borrower's strength of savings patterns, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $15,177 shortage of verified assets.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845509 |
| | | | 1.04 (b) (xxi) (i) LXS 2007-15N_Underwriting Methodology - Deemed MnA_Pool 3<br><br>1.04 (c) (v) LXS 2007-15N_No Fraud<br><br>1.04 (c) (vii) LXS 2007-15N_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Clerk With Steps earning $2,800 per month and also employed as a Senior Bank Teller earning $2,500 per month on the loan application. An audit verification of employment was obtained from The Work Number which indicated the Borrower earned $1,451 per month as a Clerk and $2,075 per month as a Teller for the year of the subject loan closing, 2007.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Clerk with Steps earning $2,800 per month and also employed as a Senior Bank Teller earning $2,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845509 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_6

| 7 | 00040626251 | 1st | LXS 2007-17H | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/03/2007 for the amount of $270,000 as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 43.59% Debt to Income Ratio (DTI). There was a Manual approval dated 05/11/2007, in the loan file. | Stated | $270,000.00 | 2845536 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | 1.04 (b) (xvi) LXS 2007-17H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income (DTI) in excess of 60%.<br><br>Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income and undisclosed debt results in an increase from 43.59% to 95.81%, which exceeds the represented DTI. | | | 2845536 |
| . | | | 1.04 (b) (xvi) LXS 2007-17H_DTI<br><br>1.04 (b) (xxiv) LXS 2007-17H_No Red Flags Present<br><br>1.04 (b) (xxvi) LXS 2007-17H_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented his/her debt obligations. A post closing audit credit report, revealed the Borrower had opened a new mortgage in the amount of $220,400 to refinance their previous property, and pay off the two existing mortgages; however the new mortgage payment increased to a monthly payment of $1,833, and was opened within 30 days after the subject loan closed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Moreover, a recalculation based on the Borrowers' undisclosed debt and verified income yields a debt to income ratio (DTI) of 95.81%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $1,833 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845536 |
| . | | | 1.04 (b) (xvi) LXS 2007-17H_DTI<br><br>1.04 (b) (xxiv) LXS 2007-17H_No Fraud<br><br>1.04 (b) (xxvi) LXS 2007-17H_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Plumber earning $6,600 per month on the loan application. Post closing documentation, revealed the Borrower's near year 2008 tax returns, which verified their monthly income of $974. It is unlikely the Borrower's income would have decreased considering the Borrower was self employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income (DTI) based on the Borrower's undisclosed debt and verified income yields a DTI of 95.81%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Plumber earning $6,600 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845536 |
| . | | | 1.04 (b) (xxxvii) LXS 2007-17H_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 6 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an Origination Appraisal.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845536 |

| 8 | 00040869687 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/08/2007, in the amount of $384,000, as a rate/term refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset Loan, with an 80%/89% Loan to Value/Combined Loan to Value, and a 49.12% Debt to Income. There was a Manual approval dated 11/14/2007, in the loan file. | Stated | $384,000.00 | 2846379 |
| . | | | | 1.04 (c) (v) SARM 2008-2_No Fraud — With No Red Flags Present  1.04 (c) (vii) SARM 2008-2_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 1 | 3 | The Borrower misrepresented his ownership of the following assets. The loan file contained 2 months Bank Statements as verification of the assets. The statement dated 10/16/2007 reflected total balances of $25,924 and was support by the prior month's statement. An audit verification of the assets revealed the origination statement had been modified or altered. The audit verification indicated that the balance on the closing day of that statement was $5,380.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the amount of assets verified was misrepresented by $20,544; the borrower falsely disclosed that he/she had $25,924 assets when in fact he/she had $5,380, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846379 |
| . | | | | 1.04 (c) (v) SARM 2008-2_No Fraud  1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as self employed owner of a Facilities Maintenance business earning $7,650 per month on the loan application. A review of the loan file revealed the Borrower's income for 2007 on a 1040 return provided for a loan modification. The return indicated the Borrower's income for 2007 was $13,630 or $1,136 per month.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower falsely stated employment as a self employed owner of a Facilities Maintenance business earning $7,650 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846379 |
| 9 | 00040904385 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/21/2007, in the amount of $520,000, as a rate term refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80% Loan to Value/Combined Loan to Value, and a 49.53% Debt to Income Ratio. There was a Manual approval dated 12/15/2007, in the loan file. | Stated | $520,000.00 | 2846394 |
| . | | | | 1.04 (c) (v) SARM 2008-2_No Fraud  1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Driver earning $5,540 per month on the loan application. The Co-Borrower listed income of $7,760 per month as a Guardian. The loan file contained post closing documentation which included the Borrowers' 2007 W-2 and tax return submitted for a modification. The Borrower's primary employment income for 2007 was $4,599.83 per month and the secondary income was $768.83 per month. The Co-Borrower's income for 2007 was $2,763.75 per month.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrowers falsely stated employment as a Driver earning $5,540 per month as a Guardian earning $7,760 on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846394 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 10 | 00046473609 | 1st | LMT 2007-7 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/15/2007, in the amount of $163,200, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan with an 80% Loan to Value/Combined Loan to Value, and a 32.42% Debt to Income Ratio. There was a Manual approval dated 05/03/2007, in the loan file. The HUD-1 Settlement Statement, revealed the Borrower received $381 at closing. | Stated | $163,200.00 | 2845297 |
| | | | 1.04 (b) (xii) LMT 2007-7_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LMT 2007-7_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final Truth in Lending (TIL) statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845297 |
| | | | 1.04 (c) (v) LMT 2007-7_No Fraud<br><br>1.04 (c) (xvii) LMT 2007-7_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Billing and Insurance Supervisor earning $7,500 per month on the loan application. Post closing documentation included the Borrower's near year 2009 W-2 which revealed income of $2,632 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Billing and Insurance Supervisor earning $7,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845297 |
| 11 | 00047150271 | 1st | LXS 2007-16N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/20/2007, in the amount of $280,000, as a rate term refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 63.64% Loan to Value/Combined Loan to Value, and a 33.12% Debt to Income Ratio. There was a Manual approval dated 07/10/2007, in the loan file. | Stated | $280,000.00 | 2845530 |
| | | | 1.04 (b) (xxi) (i) LXS 2007-16N_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 2 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's income, so as to confirm the adequacy of the Borrower's financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Bureau of Labor Statistics reported the salary at the 75th percentile for a similar position in 2007 and in the same geographic region was $1,598 per month. The Borrower's stated income is more than 4 times the Bureau of Labor Statistics 75th percentile. Per the loan application, the Borrower had no assets, the Origination Credit report the Borrower had 2 collections, 6X60 days and 7X90 days late payments. The unreasonable income, the lack of assets and the credit profile are not indicative of a Borrower earning $72,000 per year and are red flags the Borrower's income was overstated.<br><br>A re-calculation of the Debt to Income Ratio (DTI) based upon a more reasonable income of $1,598 per month yields a DTI 868.35%.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845530 |

**Digital Risk - Loan Review Findings**

08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
Cowen_US Bank_Final_Version_6
Part 4 Pg 144 of 229

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xxi) (i) LXS 2007-16N_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) LXS 2007-16N_No Fraud<br><br>1.04 (c) (vii) LXS 2007-16N_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a cleaning business earning $8,000 per month on the loan application. A public records search revealed that on 11/18/2011 the Borrower filed for protection in the United States Bankruptcy Court in the District of New Hampshire. The filing revealed that the Borrower's actual 2009 income was $5,390 or $449.16 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed in the same line of work.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a cleaning business earning $8,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845530 |
| | | | | 1.04 (c) (v) LXS 2007-16N_No Debt Obligations - No Red Flags Present<br><br>1.04 (c) (vii) LXS 2007-16N_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 4 | 3 | The Borrower misrepresented her debt obligations. A search of public records revealed the Borrower obtained a Home Equity Line of Credit in 04/2007 in the amount of $152,300, with a calculated monthly payment of $1,523.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $1,523 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845530 |
| | | | | 1.04 (c) (xviii) LXS 2007-16N_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an Origination Appraisal.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845530 |
| 12 | 00047214580 | 1st | LXS 2007-17H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/10/2007, in the amount of $155,000, as a rate/term refinance of an owner occupied property. The loan was approved as a Full Documentation loan, with a 100% Loan to Value/Combined Loan to Value, and a 54.75% Debt to Income Ratio. There was a Manual approval dated 7/27/2007, in the loan file. | Full | $155,000.00 | 2845559 |
| | | | | 1.04 (b) (xvi) LXS 2007-17H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%.<br><br>Despite the Seller's representations, a re-calculation of DTI based on the Borrower's undisclosed and re-calculated debt results in an increase from 54.75% to 130%, which exceeds the represented DTI. | | | 2845559 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_6

PAGE 145 of 256

| | | | | Code | Finding | Sub | # | # | Description | | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xvi) LXS 2007-17H_DTI | Improper Calculation of Debts | Improper Calculation of Debts | 2 | | The subject loan was underwritten without a proper record of the Borrower's reasonable ability to repay. Verification of the Borrower's debt, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The following facts support the proper calculation of debts: A review of the 1003 and origination credit report indicates the Borrower had $976 in recurring monthly debts at origination.<br><br>The correct recalculation results in a monthly debt of $4,370.<br><br>A recalculation of DTI based on the Borrower's proper debt calculation yields a DTI of 129.93% which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts. | | | 2845559 |
| | | | | 1.04 (b) (xvi) LXS 2007-17H_DTI<br><br>1.04 (b) (xxiv) LXS 2007-17H_No Fraud<br><br>1.04 (b) (xxiv) LXS 2007-17H_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented his/her debt obligations. A review of the loan file and information obtained through Public Records indicates the Borrower purchased another home in Navarre, FL on 08/16/2007, 6 days after the subject loan closing of 08/10/2007. The audit credit report and public records reflects there was a mortgage on this property in the amount of $280,000 with a $2,182 monthly payment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of DTI based on the Borrower's undisclosed debt yields a DTI of 130%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $2,182 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845559 |
| | | | | 1.04 (b) (xxiv) LXS 2007-17H_No Fraud<br><br>1.04 (b) (xxvi) LXS 2007-17H_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 5 | 3 | The Borrower misrepresented his intent to occupy the subject property. A review of the loan file and information obtained through Public Records indicates the Borrower purchased another home in Navarre, FL on 08/16/2007, 6 days after subject loan closing of 08/10/2007 and occupied this property as of 08/16/2007. The origination credit report reflects 8 mortgage related inquiries in the prior 90 days with no explanation of these inquiries or evidence of the underwriter investigation of these. There is no evidence in the file that at least one named Borrower occupied the subject property. A significantly greater risk of default exists on those loans used to finance non-owner occupied properties.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845559 |
| 13 | 00047520218 | 1st | LXS 2007-20N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/07/2007, in the amount of $440,000, as a purchase of an owner occupied single family residence. The loan was approved as a stated income, verified assets loan, with an 80%/85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.21% Debt to Income (DTI). There was a Manual approval dated 09/05/2007, in the loan file. | Stated | $440,000.00 | 2845571 |

Cowen_US Bank_Final_Version_6

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (v) LXS 2007-20N_No Fraud<br><br>1.04 (c) (vii) LXS 2007-20N_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented as disclosed income. The Borrower falsely stated income as a Director Of Sales earning $18,000 per month on the loan application. A re-audit verification of employment was obtained for the Borrower from the Borrower's employer, which revealed that the Borrower's actual income for 2007; the year of the subject loan closing, was $118,655 or $9,887 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Director of Sales earning $18,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845571 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| 14 | 00047782560 | 1st | SARM 2008-2 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/16/2008 in the amount of $535,000 for the purchase of an owner occupied 2 unit property. The loan was approved as a Full Documentation loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 44.99% Debt to Income (DTI). There was a Manual approval dated 01/14/2008, in the loan file. | Full | | $535,000.00 | 2846416 |
| | . | | 1.04 (c) (v) SARM 2008-2_No Fraud Obligations - With Red Flags Present 1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Debt Obligations | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his/her debt obligations. Public records and the audit credit report indicated the Borrower purchased a property on 11/30/2007, 48 days prior to the subject loan closing, and a acquired a mortgage in the amount of $315,000 with a payment of $2,323 per month.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $2,323 monthly debt, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | | 2846416 |
| | . | | 1.04 (c) (v) SARM 2008-2_No Fraud Obligations - With Red Flags Present 1.04 (c) (vii) SARM 2008-2_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented her intent to occupy the subject property. A review of public records and utility records indicated the Borrower did not occupy the subject property after the closing date of 01/16/2008, as disclosed. The records indicated the Borrower remained at the proposed departure residence from 11/1994 to 11/2012. Post-closing documentation indicated payments were made by a Church organization and the loan file contained a request to assume the mortgage and payments. A post closing letter obtained through the modification/foreclosure process, indicated the Borrower purchased the subject property for the church in which she was a member of the congregation. The Bishop of this church was the occupant of the subject property from 08/2008 to 03/2011 and was confirmed by a letter from the Bishop of the church. The origination package also contains a Gift Letter from the same church for a portion of the down payment in the amount of $10,000.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | | 2846416 |
| | . | | 1.04 (c) (v) SARM 2008-2_No Fraud Transaction 1.04 (c) (vii) SARM 2008-2_No Event of Default | Straw Purchaser Transaction | Straw Purchaser Transaction | 3 | 3 | The purchase was an ineligible transaction. The loan file contained post closing letters obtained through the modification/foreclosure process which indicated the Borrower purchased the subject property for a church in which she was a member of the congregation. The loan file contained a gift letter for $10,000 from the church. A letter from the Bishop of the church and the Borrower indicated the church was making the payment and wished to assume the mortgage and monthly payments. Public records indicated the Borrower never occupied the subject property and indicated the Bishop of the church occupied the subject property from 2008 to 2012.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower provided misleading information on the loan file, which constituted an event of default under the executed Mortgage or Deed of Trust. The Borrower had no intention of repaying the subject loan as the loan was obtain on behalf of a third party not party to the transaction. | | | | 2846416 |
| | . | | | | | | | | | | | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_6

| 15 | 00121847206 | 1st | BNCMT 2006-1 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/26/2006, in the amount of $540,000, as a purchase of an owner occupied, single family residence. The loan was approved as a Full Documentation loan with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 37.74% Debt to Income (DTI). There was a Manual approval dated 08/02/2006, in the loan file. | Full | | $540,000.00 | 2844819 |
| . | | | 1.04 (b) (xii) BNC 2006-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xi) (g) BNC 2006-1_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xi) (h) BNC 2006-1_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (b) (xxxiii) BNC 2006-1_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure as to the APR and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The disclosed finance charge ($1,308,409.62) is ($511.60) below the actual finance charge($1,308,921.22). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d)(1)).<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844819 |
| . | | | 1.04 (b) (xi) (d) BNC 2006-1_Underwriting Methodology - Deemed MnA_Pool 1 | Improper Calculation of Debts | Improper Calculation of Debts | 2 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's debt, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, is a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrower's debts. Monthly debts of $7,293 were used by the Lender to determine the DTI.<br><br>The following facts support the proper calculation of debts: The origination credit report reflects 2 revolving accounts with an aggregate payment of $3,690 per month which were not included in the debt calculation. The file does not contain evidence to support the omission of these debts.<br><br>The correct recalculation results in a monthly debt of $10,983.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2844819 |
| 16 | 00124442583 | 1st | SASC 2007-BC4 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/10/2007, in the amount of $166,250, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 95% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49.711% Debt to Income (DTI). There was a Manual approval dated 04/16/2007, in the loan file. | Full | | $166,250.00 | 2847065 |
| . | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan. The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that the following credit inquiries for the previous 90 days were investigated so as to determine whether such inquires resulted in additional debt undisclosed on the loan application, such that an accurate credit profile was verified: The origination credit report contained 5 loan inquiries. Loan inquiries give a lender insight as to any potential loans a Borrower may be in the process of acquiring at the time of application for the subject loan. There was no evidence in the file that the Underwriter requested or obtained an explanation from the Borrower for the 5 inquiries, dated from 02/13/2007 through 03/29/2007, listed on the origination credit report dated 04/05/2007.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2847065 |

| # | Loan # | Lien | Deal | Finding | Category | Sub-Category | | | Description | Doc Type | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 <br> 1.04 (c) (v) SAS 2007-BC4_No Fraud <br> 1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. There was a reference in the file that the Underwriter requested or obtained an explanation from the Borrower for the 5 inquiries, dated from 02/15/2007 through 03/29/2007, listed on the origination credit report dated 04/05/2007 to determine if the Borrower had opened any additional debt. Research of an audit credit report revealed the Borrower obtained a mortgage in 04/2007, the same month as the subject loan closing in the amount of $10,302 with a monthly payment of $150 and failed to disclose the debt on the loan application.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liability. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $150 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | 2847065 |
| 17 | 0031876527 | 1st | SARM 2006-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/16/2005, in the amount of $216,800, as a purchase of an owner-occupied single family property. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 43.51% Debt to Income Ratio. There was a Manual approval dated 11/30/2005, in the loan file. | Stated | $216,800.00 | 2846210 |
| | | | | 1.04 (c) (v) SARM 2006-1_No Fraud <br> 1.04 (c) (vii) SARM 2006-1_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Custodian earning $5,700 per month on the loan application. The VOE in the loan file indicated the Borrower's actual job title to be a Grounds Worker. The Borrower also stated secondary employment as a Basketball Coach for 8 years, earning $2,000 per month. The loan file contained an audit Work Number for the employment as a Grounds Worker which revealed the Borrower earned $2,745 per month. The loan file also contained an audit VOE for the employment as a Basketball Coach which revealed the Borrower earned $229 per month. The Borrower's total verified combined income $2,974.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated incomes as a Custodian earning $5,700 per month and Basketball coach earning $2,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846210 |
| 18 | 0031902513 | 1st | SARM 2005-23 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/19/2005, in the amount of $520,000, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/95% Loan to Value/Combined Loan to Value, and a 42.458% Debt to Income Ratio. There was a Manual approval dated 11/09/2005, in the loan file. | Stated | $520,000.00 | 2846167 |
| | | | | 1.04 (c) (v) SARM 2005-23_No Fraud <br> 1.04 (c) (vii) SARM 2005-23_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Co-Borrower misrepresented her disclosed income. The Co-Borrower falsely stated income as a Cosmetics Sales Person earning $4,900 per month on the loan application. An audit verification of employment and income for the Co-Borrower was conducted through The Work Number which revealed the Co-Borrower earned $785 per month, in 2006. It is unlikely the Co-Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Co-Borrower falsely stated employment as a Cosmetics Sales Person earning $4,900 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846167 |

| # | Loan # | Lien | Deal | | Finding 1 | Finding 2 | Finding 3 | | | Narrative | Doc Type | | Amount | Loan ID |
|---|--------|------|------|--|-----------|-----------|-----------|--|--|-----------|----------|--|--------|---------|
| 19 | 0032180358 | 1st | SARM 2006-2 | | Loan Summary | Loan Summary | | 0 | 0 | The subject loan closed on 12/06/2005, in the amount of $594,296, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan with an 80%/95% Loan to Value/Combined Loan to Value, and a 44.98% Debt to Income Ratio. There was a Manual approval dated 12/06/2005, in the loan file. | Stated | | $594,296.00 | 2846237 |
| | . | | | 1.04 (c) (v) SARM 2006-2_No Fraud<br><br>1.04 (c) (vii) SARM 2006-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Finance Manager of an Auto Dealership earning $15,000 per month on the loan application. The loan file contained post-closing income documentation which included a hardship letter which revealed the Borrower's actual income for the same year as the subject's loan closing was $11,000 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Finance Manager earning $15,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | | 2846237 |
| 20 | 0032584054 | 1st | SARM 2006-4 | | Loan Summary | Loan Summary | | 0 | 0 | The subject loan closed on 03/14/2006, in the amount of $680,000, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/95% Loan to Value/Combine Loan to Value, and a 37.50% Debt to Income Ratio. There was a Manual approval dated 03/14/2006, in the loan file. | Stated | | $680,000.00 | 2846261 |
| | . | | | 1.04 (c) (v) SARM 2006-4_No Fraud<br><br>1.04 (c) (vii) SARM 2006-4_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented his/her employment on the loan application. The loan file only contained a CPA letter which indicated the Borrower had been self-employed but did not disclose the ownership percentage as required. There was no evidence in the file that the Underwriter obtained the Borrower's two year Business License and ownership percentage to document a 24 month employment history verification as required by the underwriting guidelines. The loan file contained a hardship letter from the Borrower which revealed the Borrower was not employed as stated on the loan application. The Borrower was not employed receiving income from the Ownership of a Real Estate Investment business. The loan file contained a hardship letter from the Borrower which revealed the Borrower was employed as a Loan Officer at the time of the subject's loan closing.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as Owner of a real estate investment business for 3.1 years, which constituted an event of default under the executed Mortgage or Deed of Trust. | | | | 2846261 |
| | | | | 1.04 (c) (v) SARM 2006-4_No Fraud<br><br>1.04 (c) (vii) SARM 2006-4_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a Real Estate Investment Business earning $19,000 per month on the loan application. The loan file contained a hardship letter from the Borrower which revealed the Borrower was not employed as stated on the loan application. The Borrower was not employed receiving income from the Ownership of a Real Estate Investment business. The loan file contained a hardship letter from the Borrower which revealed the Borrower was employed as a Loan Officer at the time of the subject's loan closing.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Owner of a Real Estate Investment Business earning $19,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2846261 |

| 21 | 0032775603 | 1st | SARM 2006-7 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/04/2006, in the amount of $680,000.00, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80% Loan to Value/Combined Loan to Value, and a 44.84% Debt to Income Ratio. There was a Manual approval dated 04/25/2006, in the loan file. | Stated | | $680,000.00 | | 2846287 |
|  | . | | | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Manager earning $16,615 per month on the loan application. The loan file contained post-closing income documentation for the purpose of obtaining a home modification loan. The Borrower provided the subsequent year W-2 which revealed the Borrower's actual income was $10,522. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Manager earning $16,615 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | | 2846287 |
| 22 | 0037979267 | 1st | SARM 2006-5 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/03/2006, in the amount of $1,500,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 69.77%/80% Loan to Value/Combined Loan to Value, and a 35.45% Debt to Income Ratio. There was a Manual approval dated 03/30/2006, in the loan file. | Stated | | $1,500,000.00 | | 2846267 |
|  | . | | | 1.04 (b) (xii) SARM 2006-5_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xvii) SARM 2006-5_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2006-5_Compliance with Applicable Law | Right of Rescission Invalid /Incomplete / Stale / Incorrect | Failure to Provide Right of Rescission | 1 | 3 | "The subject loan did not comply with applicable law. The Truth in Lending Act required a valid Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, the Right of Rescission disclosure contained in the loan file was invalid for the following reason: The loan disbursement date (20060405) is earlier than, or the same day as, the calculated "Right to Cancel Expire Date" (20060406). Under Reg Z, funds may not be disbursed to the borrower until after the expiration of the rescission period. | | | | | 2846267 |
|  | . | | | 1.04 (b) (xii) SARM 2006-5_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xvii) SARM 2006-5_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2006-5_Compliance with Applicable Law | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 2 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure as to the APR and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The applicable guidelines required all loans to comply with Federal, State and Local laws and regulations. The disclosed finance charge ($2,398,725.85) is ($409.79) below the actual finance charge($2,399,135.64). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge.<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower. | | | | | 2846267 |

| # | Loan # | Lien | Deal | | Finding | Finding | | | Description | Income | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (v) SARM 2006-5_No Fraud<br><br>1.04 (c) (vii) SARM 2006-5_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a President earning $40,000 per month on the loan application. The Borrower's actual income was $20,120 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a President earning $40,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846267 |
| 23 | 0038232682 | 1st | SARM 2006-6 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/08/2006, in the amount of $100,500, as a cash out refinance of a non owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 75% Loan to Value/Combine Loan to Value, and a 29.81% Debt to Income Ratio. There was a manual approval dated 05/04/2006, in the loan file. | Stated | $100,500.00 | 2846272 |
| | | | | 1.04 (c) (v) SARM 2006-6_No Fraud<br><br>1.04 (c) (vii) SARM 2006-6_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his/her debt obligations. The audit credit report and public records obtained from MERS and Sitex revealed the Borrower refinanced an investment property on the same day as the subject loan closing with the same Lender; however, the new mortgage was not disclosed or included in the DTI calculation. The Borrower refinanced the investment property located in Jacksonville, FL and obtained a mortgage in the amount of $73,500 with a monthly payment of $527.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $527 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846272 |
| | | | | 1.04 (c) (v) SARM 2006-6_No Fraud<br><br>1.04 (c) (vii) SARM 2006-6_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of an appraisal business earning $19,500 per month on the loan application. According to a Statement of Financial Affairs, filed by the borrower with the Middle District of Florida Bankruptcy Courts as part of a Chapter 7 bankruptcy case dated 12/02/2009, the borrower indicated annual income for the year ending 2007 of $24,000 from the business, or $2,000 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Owner of an appraisal business earning $19,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846272 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| # | Loan ID | Lien | Program | | | | | Narrative | Doc | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 24 | 0038341905 | 1st | SARM 2006-7 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/09/2006, in the amount of $512,810, as a cash out refinance of an owner occupied Single Family Residence. The loan was approved as a Stated Income/Verified Asset loan, with a 74.32% Loan to Value/Combined Loan to Value, and a 43.77% Debt to Income (DTI). There was a Manual approval dated 06/22/2006, in the loan file. | Stated | $512,810.00 | 2846339 |
| | . | | | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (xi) SARM 2006-7_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his/her debt obligations. Public records and the Audit Credit Report reflected the Borrowers purchased a property on 06/21/2006, two days prior to the subject loan closing, and acquired a first and second mortgage in the amounts of $304,792 and $75,522 with payments of $1,587 and $179. The Audit Credit Report also indicated the Borrower traded in an automobile and acquired a new automobile loan in 05/2006, the month prior to the subject's loan closing in the amount of $44,015 with a payment of $1,222, which was an increase in payment of $487 of the prior automobile payment and failed to disclose the debt on the loan application.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $2,253 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846339 |
| 25 | 0038865192 | 1st | SAS 2006-Z | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/18/2006, in the amount of $69,600, as a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 46.90% Debt to Income Ratio. There was a Manual approval dated 09/13/2006, in the loan file. | Full | $69,600.00 | 2844750 |
| | . | | | 1.04 (b) (xix) (j) SAS 2006-Z_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that the following credit inquiries for the previous 60 days were investigated so as to determine whether such inquires resulted in additional debt undisclosed on the loan application, such that an accurate credit profile was verified: The applicable guidelines required a written letter of explanation from the Borrower for derogatory credit to appropriately document the transaction in which they failed to do. The origination credit report, dated 06/19/2006, reflected the Borrower had 14 collections.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844750 |
| | . | | | 1.04 (b) (xix) (j) SAS 2006-Z_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | There is no evidence in the loan file of verification of the Borrower's housing history; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844750 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xix) (j) SAS 2006-Z_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the borrower's total funds required for closing were $1,937. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $893 for the subject property. In total, assets of $2,830 were required to be verified.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $2,784 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844750 | |
| 26 | 0124033523 | 1st | BNCMT 2007-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed in the amount of $133,000, as a cash out refinance of an owner occupied single family residence. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Unknown | $133,000.00 | 2845113 | |
| . | | | 1.04 (b) (xii) BNC 2007-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxii) BNC 2007-2_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845113 | |
| . | | | 1.04 (b) (xii) BNC 2007-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxii) BNC 2007-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The loan file did not contain a final TIL statement.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845113 | |
| . | | | 1.04 (b) (xii) BNC 2007-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxii) BNC 2007-2_Origination Practices | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, the loan file did not contain a Right of Rescission, which is evidence of the subject loan's noncompliance with applicable law.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845113 | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xii) BNC 2007-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xxxiii) BNC 2007-2_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 5 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845113 | |
| | | | | 1.04 (c) (xxxiv) BNC 2007-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 6 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The loan file did not contain an Origination Appraisal.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845113 | |

| 27 | 32747800 | 1st | LXS 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/13/2006 in the amount of $204,800 for a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with an 80/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 42.6416% Debt to Income Ratio (DTI). There was a manual approval dated 04/13/2006, in the loan file. | Stated | $204,800.00 | 2845430 |
| . | | | | 1.04 (b) (xvii) LXS 2006-8_DTI_Pool 2 | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's more reasonable income results in an increase from 42.64% to 156.91%, which exceeds the represented DTI. | | | 2845430 |
| . | | | | 1.04 (b) (xviii) (D) LXS 2006-8_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Determine Reasonable Ability to Repay (Stated) | Failure to Determine Reasonable Ability to Repay | 2 | | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's income, so as to confirm the adequacy of the Borrower's financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Income of $8,950 per month for a Real Estate Transaction Manager is unreasonable. Salary.com reported the average salary at the 75th percentile for a Senior Real Estate Clerk and in the same geographic region was $2,432 per month. The Borrower's stated income is more than 3.5 times the Salary.com 75th percentile which is a red flag the Borrower's income was overstated.<br><br>A re-calculation of the DTI based upon a more reasonable income of $2,432 per month yields a DTI of 156.91%, which exceeds the Seller's represented DTI of 60%.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845430 |
| | | | | | | | | | **Grand Total of Repurchase Demand** | | **$10,209,991.00** | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 5:40:44 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 000000040390221 | 1st | LXS 2007-9 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/27/2007, in the amount of $680,000, as a purchase of an owner occupied 2-unit property. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47% Debt to Income (DTI). There was a manual approval dated 03/23/2007, in the loan file. | Stated | $680,000.00 | 2845683 | |
| | | | | 1.04 (b) (xii) LXS 2007-9_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2007-9_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845683 | |
| | | | | 1.04 (c) (v) LXS 2007-9_No Fraud<br><br>1.04 (c) (xii) LXS 2007-9_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 2 | 3 | The Borrower misrepresented his ownership of the following assets: The loan file contained bank statements for the Borrower's savings and checking account, dated 01/10/2007 through 03/15/2007, which reflected an ending balance of $57,428 for the checking account and ending balance of $301 for the savings account. An audit verification of deposit revealed the Borrower's ending balance for the same checking account on the same date of 03/15/2007 was $10,428. In addition, the audit verification of deposit (VOD) reflected the Borrower's ending balance for this same checking account on 02/13/2007 and 02/16/2007 had no variation and was also $10,428 on those prior dates.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely disclosed that he had $27,055 for closing and 2 months reserves of $7,026, a total of $41,107, when in fact he had only $10,428, meaning the amount of disclosed assets $57,428 was misrepresented by $47,301, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845683 | |
| | | | | 1.04 (c) (v) LXS 2007-9_No Fraud<br><br>1.04 (c) (xii) LXS 2007-9_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 3 | 3 | The Borrower misrepresented his intent to occupy the subject property. A search of Accurint revealed the Borrower lived at an undisclosed property located on Astoria, NY from 12/2006 through 10/2012. Accurint also reported numerous individuals occupied both units of the subject property from 04/1989 through 10/2012. The residence section of the Borrower's origination credit report indicated the Borrower lived at the undisclosed property located in Astoria, NY with a first report date of 12/2006 and a last report date of 02/2007. All three reporting agencies indicated this was the Borrower's current residence. There was no evidence in the loan file that this discrepancy was addressed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845683 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 3:32:39 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_5

| 2 | 000000045235348 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/29/2007, in the amount of $499,000.00, as a purchase of an owner occupied single family property. The loan was approved as a Stated Income/Stated Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 21.50% Debt to Income Ratio (DTI). There was a Manual approval dated 01/25/2007, in the loan file. | Stated | $499,000.00 | 2845612 | |
| | | | | 1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated income as a Registered Nurse earning $8,590 per month on the loan application. The Co-Borrower listed income of $8,500 per month as a Radiographer earning $ 8,500 per month. An audit re-verification of employment was conducted through the Work Number revealing the Borrower earned $65,763, or $5,480 per month, and the Co-Borrower earned $61,348, or $5,112 per month, in 2007, the year of the subject loan closing.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrowers or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Registered Nurse earning $8,590 per month and Co-Borrower falsely stated employment as a Radiographer earning $8,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845612 | |
| 3 | 00019781269 | 1st | SASC 2005-GEL4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/16/2005, in the amount of $41,225, as a cash-out refinance of a non-owner occupied, single family residence. The loan was approved as a Stated Income/Stated Asset (SISA) documentation loan, with an 85% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 25.41% Debt to Income Ratio (DTI). There was a Manual approval dated 02/08/2005, in the loan file. | SISA | $41,225.00 | 2846727 | |
| | | | | 1.04 (c) (v) SAS 2005-GEL4_No Fraud<br><br>1.04 (c) (vii) SAS 2005-GEL4_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his debt obligations. The audit credit report revealed the Borrower obtained an undisclosed mortgage in the amount of $153,200 in 02/2005, which was the same month as the subject loan closing on 02/16/2005. The undisclosed mortgage resulted in an undisclosed monthly mortgage payment of $2,557 per month and secured an unknown property.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the executed Mortgage and or Deed of Trust.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligation by failing to disclose a $2,557 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846727 | |

Exhibit 218

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 3:32:39 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 00031709736 | 1st | LMT 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/30/2005, in the amount of $80,000, for the purpose of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with an High Combined Loan to Value (LTV/CLTV), and a 40.73% Debt to Income Ratio (DTI). There was a Manual approval dated 09/13/2005, in the loan file. | Full | $80,000.00 | 2845216 | |
| | | | | 1.04 (c) (v) LMT 2005-2_No Fraud of Debt Obligations - 1.04 (c) (vii) LMT 2005-2_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his debt obligations. A review of public records and an audit credit report revealed that the Borrower acquired two properties, located in Hinesville, GA, the month prior to the subject loan closing, utilizing 4 mortgages totaling $292,600. Per the Audit Credit Report, the 4 mortgages had total combined monthly payments of $1,769 per month. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower misrepresented his debt obligation by failing to disclose $1,769 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845216 | |
| | | | | 1.04 (c) (v) LMT 2005-2_No Fraud 1.04 (c) (vii) LMT 2005-2_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented his intent to occupy the subject property. The loan file contained a post closing schedule of real estate which revealed the subject property was a rental property. Additionally, a search of public records found no indication that the Borrower ever lived in the subject property. A search for Driver's license records obtained through Accurint, revealed that Borrower maintained their driver's license in the state of Missouri through 2009; however, the subject property was located in Georgia. In addition, Accurint reflected several other individuals occupying the subject property prior to and after the subject's loan closing. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845216 | |
| 5 | 00031725963 | 1st | LMT 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/26/2005, in the amount of $223,000, as a cash out refinance of an owner occupied single family residence located in a planned unit development property. The loan was approved as a Stated Income/Verified Assets loan, with a 64.45% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System approval nor manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $223,000.00 | 2845221 | |
| | | | | 1.04 (c) (v) LMT 2005-2_No Fraud of Debt Obligations - 1.04 (c) (vii) LMT 2005-2_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented their debt obligations. An audit credit report obtained revealed the Borrower had obtained an undisclosed debt prior to the subject loan closing. The subject loan closed on 09/26/2005. The Borrower acquired the undisclosed debt in 08/2005 with a balance of $8,396 and a monthly payment of $350. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrowers misrepresented their debt obligation by failing to disclose a $350 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845221 | |
| | | | | 1.04 (c) (v) LMT 2005-2_No Fraud 1.04 (c) (vii) LMT 2005-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Casino Cocktail Server earning $6,300 per month on the loan application. An audit re-verification of employment conducted through The Work Number revealed that the Borrower's actual 2005 income, the same year as subject loan closing was $16,484, or $1,939 per month based on 8.5 months employment in 2005. <br><br> The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. <br><br> In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. <br><br> Despite the Seller's representations, the Borrower falsely stated income as a Casino Cocktail Server earning $6,300 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845221 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 00032139859 | 1st | LXS 2006-3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/30/2005, in the amount of $71,000, as a purchase of an investment single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80/100% Loan to Value/combined loan to value (LTV/CLTV) and a 25.25% debt to income (DTI). There was a Manual approval dated 12/01/2005 in the loan file. | Stated | $71,000.00 | 2845415 |
| | | | | 1.04 (c) (v) LXS 2006-3_No Fraud | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented their debt obligations. An audit credit report revealed that the Borrower had acquired two undisclosed properties. The subject loan closed on 12/08/2005. The first property was acquired on 11/04/2005 with a mortgage balance of $91,200 and a monthly payment of $662; the second property was purchased on 12/23/2005 with a first mortgage balance of $74,400, a monthly payment of $265 and a second mortgage with a balance of $18,600, a monthly payment of $191.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrowers misrepresented their debt obligation by failing to disclose $1,118 in monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845415 |
| | | | | 1.04 (c) (vii) LXS 2006-3_No Event of Default | | | | | | | |
| 7 | 00033380148 | 1st | LMT 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/04/2006, in the amount of $79,500, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 75%/100% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting nor Manual Approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $79,500.00 | 2845265 |
| . | | | | 1.04 (c) (xxii) LMT 2006-8_No Fraud | Misrepresentation of Income - Red Flags Present - Near Year | Misrepresentation of Income | 1 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated income as a Substitute Bus Driver earning $1,500 per month on the loan application. The Co-Borrower listed Social Security income of $1,800 per month. The loan file contained post-closing documentation which included the Borrower's 2008 W-2, near year income of $669 per month. Additionally, the Co-Borrower provided their 2008 social security award letter revealing benefits of $15,473, or $1,612 per month, which includes an additional 125% allowance for non-taxable status. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrowers falsely stated income as a Substitute Bus Driver earning $1,500 per month and Co-Borrower's Social Security income of $1,800, on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845265 |
| | | | | 1.04 (c) (xxiv) LMT 2006-8_No Event of Default | Income Evidence | | | | | | |
| 8 | 00036287308 | 1st | LMT 2005-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 9/20/2005, in the amount of $93,600, as a purchase of an owner occupied single-family residence. The loan was approved as a Full Documentation loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 44.83% Debt to Income ratio. There was a manual approval dated 9/19/2005, in the loan file. | Full | $93,600.00 | 2845176 |
| . | | | | 1.04 (b) (iii) LMT 2005-1_Compliance with Applicable Law - Deemed MnA | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.

The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.

The disclosed finance charge ($153,299.23) is ($497.94) below the actual finance charge ($153,797.17). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d)(1)).

Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845176 |
| | | | | 1.04 (c) (xvii) LMT 2005-1_Origination Practices | | | | | | | |

| 9 | 00037424587 | 1st | LXS 2006-3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/20/2006, in the amount of $150,500.00, as a cash-out refinance of an owner occupied, single family property. The loan was approved as a Stated Income/Stated Asset (SISA) loan, with a 79.95% Loan to Value/Combined Loan to Value, and a 19.90% Debt to Income ratio. There was a manual approval dated 01/19/2006, in the loan file. Public records indicate the Borrower deceased as of 10/09/2010. | SISA | $150,500.00 | 2845420 |
| | | | 1.04 (c) (v) LXS 2006-3_No Fraud<br>1.04 (c) (vii) LXS 2006-3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his debt obligations. Per public records obtained through the Mortgage Electronic Registry System and the audit credit report, the Borrower purchased another property on the same street five days after the subject loan closing on 01/20/2006. The mortgage note dated 01/25/2006 closed in the amount of $115,332 with a $1,099 monthly payment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose a $1,099 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845420 |
| 10 | 00040788952 | 1st | LXS 2007-17H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/12/2007, in the amount of $122,500, a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Stated Asset (SIVA) loan, with a 100%/100% Loan to Value/Combined Loan to Value, and a 48.14% Debt to Income ratio. There was a manual approval dated 07/10/2007, in the loan file. | Stated | $122,500.00 | 2845545 |
| | | | 1.04 (b) (xvi) LXS 2007-17H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%.<br><br>Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 48.14% to 207.34%, which exceeds the represented DTI of 60%. | | | 2845545 |
| | | | 1.04 (b) (xvi) LXS 2007-17H_DTI<br>1.04 (b) (xxiv) LXS 2007-17H_No Fraud<br>1.04 (b) (xxvi) LXS 2007-17H_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Head Waitress earning $3,500 per month on the loan application. The file contained post-closing documentation which included a W-2 for 2007 for the same employer in the same year as the subject closing revealing income of $811 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income ratio (DTI) based on the Borrower's verified income yields a DTI of 207.34%, which exceeds the Seller's represented 60% Debt to Income Ratio.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Head Waitress earning $3,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845545 |
| 11 | 00040793259 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/17/2007, in the amount of $326,320 as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/95% Loan to Value/Combined Loan to Value and a 44.81% Debt to Income ratio. There was a manual approval dated 07/11/2007, in the file. | Stated | $326,320.00 | 2846375 |
| | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Maintenance Crew Leader earning $4,400 per month on the loan application. According to a Statement of Financial Affairs filed in the Northern District of California, dated 10/28/2010, the Borrower's near year 2008 income was $2,800 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Maintenance Crew Leader earning $4,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846375 |

Cowen_US Bank_Final_Version_5

| 12 | 00040902231 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/21/2007, in the amount of $568,000.00 as a rate and term refinance of an owner occupied, single family property. Stated Income/Verified Assets, at a 49.34% Loan to Value/Combined Loan to Value, and a 49.34% Debt to Income ratio. There was a Manual approval dated 09/19/2007, in the loan file. | Stated | $568,000.00 | 2846392 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br><br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented her employment on the loan application. The Borrower stated employment on the loan application as an Area Manager for 6 years. The file contained post-closing documentation which included the Borrower's 2007 tax return, which revealed the Borrower was a Baker. The origination credit report listed employment for the Borrower as a Baker; however, the discrepancy was not addressed at origination. In addition, the file did not contain any investigation of the Business listed on the loan application which is a Multi-Level Marketing Business.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Area Manager for 6 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2846392 | |
| . | | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br><br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented the disclosed income. The Borrower falsely stated income as an Area Manager earning $7,400 per month on the loan application. The file contained post closing documentation which included the Borrower's 2007 tax return, which revealed income of $22,276, or $1,857 per month, from the Borrower's secondary employment as a Baker. However, the tax return did not evidence an additional income from the primary employer listed on the loan application.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Area Manager earning $7,400 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846392 | |
| 13 | 00046699674 | 1st | SARM 2007-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/21/2007, in the amount of $189,600. There was neither an Automated Underwriting Approval nor a Manual Approval in the loan file to definitely ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed loan application. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $189,600.00 | 2846366 | |
| . | | | | 1.04 (b) (xii) SARM 2007-8_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xii) SARM 2007-8_Mortgage File<br><br>1.04 (c) (xvii) SARM 2007-8_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2007-8_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2846366 | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/11/2013 3:32:39 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final_Version_5

**Digital Risk - Loan Review Findings**
08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
part 3 Pg 63 of 256

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xii) SARM 2007-8_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xvii) SARM 2007-8_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2007-8_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846366 | |
| | | | 1.04 (b) (xii) SARM 2007-8_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xvii) SARM 2007-8_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2007-8_Compliance with Applicable Law | Failure to Provide the Final TIL | Failure to Provide Final TIL | 5 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846366 | |
| 14 | 00046814125 | 1st | SARM 2007-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/15/2007, in the amount of $427,500. There was neither an Automated Loan Approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file contained a lock-in confirmation, loan transmittal and title commitment. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $427,500.00 | 2846368 | |
| | | | | 1.04 (b) (xii) SARM 2007-8_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xii) SARM 2007-8_Mortgage File<br><br>1.04 (c) (xvii) SARM 2007-8_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2007-8_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the subject note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2846368 | |

Cowen_US Bank_Final_Version_5

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xii) SARM 2007-8_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xvii) SARM 2007-8_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2007-8_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846368 |
| 15 | 00046896866 | 1st | LXS 2007-16N | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/28/2007, in the amount of $330,000, as a cash-out refinance of an owner-occupied single family property. The loan was approved as a Stated Income/Verified Assets loan, with a 45.52% Loan to Value/Combined Loan To Value, and a 43.35% Debt to Income Ratio. There was a Manual approval dated 06/28/2007, in the loan file. | Stated | $330,000.00 | 2845527 |
| | | | 1.04 (c) (v) LXS 2007-16N_No Fraud<br><br>1.04 (c) (vii) LXS 2007-16N_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated primary income as a Loss Prevention Clerk for a delivery service company earning $4,500 per month on the loan application. An audit re-verification of the Borrower's income conducted through The Work Number revealed the Borrower's monthly primary income in 2007 was $21,392 or $1,782 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated primary income as a Loss Prevention Clerk for a delivery service company earning $4,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845527 |
| 16 | 00046928958 | 1st | LXS 2007-16N | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/26/2007, in the amount of $416,000. There was neither an Automated Underwriting Approval nor a Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note and Mortgage. There was no other critical documentation provided for the file that was represented on the Data Tape by the Seller. | Unknown | $416,000.00 | 2845528 |
| | | | 1.04 (b) (xxi) (i) LXS 2007-16N_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan. The loan file only contained a copy of the Note and Mortgage. There were no other critical documents provided for the file that was represented on the data tape by the Seller.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845528 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 3:32:39 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| 17 | 00047189667 | 1st | LXS 2007-18N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/03/2007, in the amount of $300,000.00, for the purchase of an owner occupied condominium property. The loan was Stated approved as a Stated Income/Verified Assets loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 44.53% Debt to Income Ratio (DTI). There was a Manual Approval dated 07/27/2007, in the loan file. | Stated | $300,000.00 | 2845563 |
| | | | | 1.04 (c) (v) LXS 2007-18N_No Fraud<br>1.04 (c) (vii) LXS 2007-18N_No Event of Default | Misrepresentatio n of Income - Red Flags Present - Near Year Income Evidence | Misrepresentati on of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a self-employed Owner of a construction company earning $5,837 per month and was also employed as a Ski Patrol, earning $2,000 per month on the loan application. An audit re-verification of employment was obtained from the Borrower's secondary employer, which revealed the Borrower had been employed as an Advanced Ski Patrol since 1998. However, the loan file also included the Borrower's 2009 W-2 statement from the Borrower's second employer, which indicated the Borrower earned a monthly income of $1,366 per month during the year of 2009. It is unlikely the Borrower's income would have decreased considering the Borrower was self employed and employed on his second job with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a self-employed Owner of a construction company earning $5,837 per month and a Ski Patrol earning $2,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845563 |
| 18 | 00047901863 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/20/2007, in the amount of $530,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 74.97% Loan to Value/Combined Loan to Value, and a 36.99% Debt to Income ratio. There was a manual approval dated 12/19/2007, in the loan file. | Stated | $530,000.00 | 2846429 |
| | | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentatio n of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentati on of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Realtor/Broker earning $13,775 per month on the loan application. The loan file contained the Borrower's near year 2008 tax return, which was obtained pursuant to a loan modification request. The tax return revealed that the Borrower's actual 2008 income was $23,889 or $1,990 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Realtor/Broker earning $13,775 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846429 |
| 19 | 0017332982 | 1st | SAIL 2004-3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/04/2004, in the amount of $237,250, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a No Documentation loan (No Income, No Employment, No Asset Verification), with a 65% Loan to Value/Combined Loan to Value (LTV/CLTV). There was a Manual Approval dated, 01/28/2004, in the loan file. Per the final HUD-1 Settlement Statement, the Borrower received $50,247 in cash proceeds at closing. | NINENA | $237,250.00 | 2845766 |
| | | | | 1.04 (b) (xiii) SAIL 2004-3_Compliance with Applicable Law - Deemed MnA<br>1.04 (c) (xvii) SAIL 2004-3_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under- Disclosed | 2 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The disclosed finance charge ($314,732.99) is ($160.00) below the actual finance charge ($314,892.99). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d)(1)).<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845766 |

Copyright 2013, Digital Risk, LLC.     Internal & Confidential - Do Not Duplicate     Run: 3/11/2013 3:32:39 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_5

| | 20 | 0031314180 | 1st | SAIL 2005-10 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/19/2005 in the amount of $80,000, for purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan with a FICO score of 590, a 100.00% Combined Loan to Value, and a 30.42% Debt to Income ratio. There was a Manual Approval dated 07/07/2005, in the loan file. | Full | | $80,000.00 | 2845807 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (xix) (d) SAIL 2005-10_Underwriting Methodology - Deemed MnA_Pool 2<br><br>1.04 (b) (xviii) (i) SAIL 2005-10_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Investigate Credit History | Failure to Investigate Credit History | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the file that the Underwriter requested or obtained a sufficient explanation letter from the Borrower regarding the 21 collection accounts and the 17 x 30 day late notices appearing on the origination credit report and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845807 |
| . | | | | 1.04 (b) (xix) (d) SAIL 2005-10_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xviii) (i) SAIL 2005-10_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 2 | 3 | The Borrower stated on the loan application that they rented their current residence for 3 years with a monthly payment of $675. The loan file contained a Verification of Rent, dated 06/27/2005, signed by a private landlord; however, the 12 months canceled rent checks were missing from the loan file.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>The underwriting methodology required verification of the Borrower's housing history for their current residence for the 12 months preceding loan closing. Additionally, if rents were paid to a private individual, 12 months canceled checks were required to validate the housing history.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrower's housing history; therefore, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845807 |
| . | | | | 1.04 (b) (xix) (d) SAIL 2005-10_Underwriting Methodology - Deemed MnA_Pool 2<br><br>1.04 (b) (xviii) (i) SAIL 2005-10_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. The Borrower was required to verify an earnest money deposit in the amount of $1,000 along with 2 months reserves of principal, interest, taxes and insurance (PITI) totaling $1,315 for the subject property. In total, assets of $2,315 were required to be verified. The loan file contained a copy of two money order receipts in the amount of $500 each for a total of $1,000; however, no documentation was provided to determine the funds were properly sourced and seasoned. The loan file did not contain any additional asset documentation.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $2,315 shortage of verified assets, which was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845807 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 3/11/2013 3:32:39 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

# Digital Risk - Loan Review Findings

| 21 | 0036628741 | 1st | SARM 2005-23 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/24/2005 in the amount of $640,000 on a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income Verified Asset loan with a 90.84%/90.84% Loan to Value/Combined Loan to Value, and a 42.97% Debt to Income Ratio. There was a Manual Approval dated 10/24/2005, in the loan file. | Stated | $640,000.00 | 2846173 | |
| | | | 1.04 (c) (v) SARM 2005-23_No Fraud<br><br>1.04 (c) (vii) SARM 2005-23_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented the disclosed income. The Borrower falsely stated income as an Owner of a financial services business earning $22,000 per month on the loan application. The file contained post-closing documentation, which included the Borrower's near year 2007 tax returns revealing income of $16,505 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed with the same business.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a financial services business earning $22,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846173 | |
| | | | | | | **Grand Total of Repurchase Demand** | | | | | $6,084,995.00 | | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 3/11/2013 3:32:39 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final_Version_4

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 000000031342942 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/20/2005, in the amount of $167,200, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/90% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 27.01% Debt to Income ratio (DTI). There was a Manual approval dated 07/13/2005, in the loan file. | Stated | $167,200.00 | 2845366 | |
| . | . | | | 1.04 (c) (v) LXS 2005-4_No Fraud | Misrepresentation of Income - No Red Flags Present - Near Year | Misrepresentation of Income | 1 | 3 | The BorrowerS misrepresented their disclosed income. The Borrower falsely stated income as a self-employed Architect Designer earning $3,348 on the loan application. The Co-Borrower listed income of $2,117 per month as a Massage Therapist. The Borrowers provided 2007 tax returns during loss mitigation, which verified the Borrowers position as an Architect Designer during the year of 2007 and reported a monthly income of $646. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated self-employment as an Architect Designer earning $3,348 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845366 | |
| | | | | 1.04 (c) (vii) LXS 2005-4_No Event of Default | Income Evidence | | | | | | | | |
| 2 | 000000031467400 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/06/2005, in the amount of $196,000, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Stated Asset loan, with a 79.67% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 36.17% Debt to Income ratio (DTI). There was a Manual approval dated 08/08/2005, in the loan file. | SISA | $196,000.00 | 2845374 | |
| . | . | | | 1.04 (c) (v) LXS 2005-4_No Fraud | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented their debt obligations. The audit credit report indicated the Borrower acquired an auto loan in 07/2005, the month prior to the subject loan closing, in the amount $34,002 with a payment of $597 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented their debt obligations by failing to disclose a $597 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845374 | |
| | | | | 1.04 (c) (vii) LXS 2005-4_No Event of Default | | | | | | | | | |
| 3 | 000000033557877 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/09/2006, in the amount of $270,000, as a purchase of an owner occupied single family residence. The loan was approved as a No Ratio Loan (No Income, Verified Asset), with a 100% Loan to Value/Combined Loan To Value (LTV/CLTV). There was a Manual approval dated 11/22/2006, in the loan file. | NIVA | $270,000.00 | 2845576 | |
| | | | | 1.04 (b) (xii) LXS 2007-5H_Compliance with Applicable Law - Deemed MnA | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The last page of the HUD-1 was missing from the loan file. Charges on the HUD-1 do not add up to the Settlement charges indicated on line 103 (Settlement charges to Borrower - line 1400).<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845576 | |
| | | | | 1.04 (c) (xvii) LXS 2007-5H_Origination Practices | | | | | | | | | |

| 4 | 000000040001158 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/09/2007, in the amount of $608,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Stated Asset loan, with a 95% Loan to Value/Combined Loan To Value (LTV/CLTV), and a 46.64% Debt to Income ratio (DTI). There was a Manual approval dated 12/18/2006, in the loan file. | SISA | $608,000.00 | 2845596 |
| . | | | | 1.04 (b) (xviii) LXS 2007-5H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%.<br><br>Despite the Seller's representations, a re-calculation of DTI based on the Borrowers' verified income results in an increase from 46.64% to 69.19%, which exceeds the represented DTI. | | | 2845596 |
| . | | | | 1.04 (b) (xviii) LXS 2007-5H_DTI<br><br>1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Misrepresentatio n of Income - Red Flags Present - Same Year Income Evidence | Misrepresentatio n of Income | 2 | 3 | The Borrowers misrepresented their disclosed income. The Borrowers falsely stated income as Retired Borrowers, earning a combined monthly income of $11,740 per month on the loan application. The file contained post-closing documentation, which included the Borrower's and the Co-Borrower's 2007 tax returns, which revealed a combined monthly income of $7,913 in retirement income.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of debt to income (DTI) based on the Borrowers' verified income yields a DTI of 69.19%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrowers falsely stated income as retired Borrowers earning $11,740 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845596 |
| 5 | 000000046237665 | 1st | LXS 2007-10H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/04/2007, in the amount of $247,066, as a purchase of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 100% Loan to Value/Combined Loan To Value (LTV/CLTV), and a 45% Debt to Income (DTI). There was a Manual approval dated 05/04/2007, in the loan file. | Stated | $247,066.00 | 2845488 |
| . | | | | 1.04 (b) (xviii) LXS 2007-10H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 45% to 68.47%, which exceeds the represented DTI. | | | 2845488 |
| . | | | | 1.04 (b) (xviii) LXS 2007-10H_DTI<br><br>1.04 (c) (v) LXS 2007-10H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-10H_No Event of Default | Misrepresentatio n of Income - Red Flags Present - Same Year Income Evidence | Misrepresentatio n of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Houseman at a hotel earning $5,600 per month on the loan application. An audit verification of employment and income was conducted through The Work Number, which revealed the Borrower earned $3,548 per month during the year of the subject loan closing in 2007.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income yields a DTI of 68.47%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Houseman at a hotel earning $5,600 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845488 |

| # | Loan # | Lien | Deal | Finding | Category | Subcategory | | | Description | Doc | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 00030950067 | 1st | LMT 2005-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/07/2005 in the amount of $650,000 as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Full Documentation loan, with a 76% Loan To Value/Combined Loan To Value (LTV/CLTV), and a 40.93% Debt to Income (DTI). There was a Desktop Underwriter (DU) approval dated 06/22/2005, in the loan file. | Full | $650,000.00 | 2845151 |
| | | | | 1.04 (b) (vii) LMT 2005-1_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LMT 2005-1_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The disclosed finance charge ($819,173.81) is ($591.59) below the actual finance charge ($819,765.40). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d) (1)).<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845151 |
| 7 | 00031636012 | 1st | LMT 2005-1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/13/2005, in the amount of $248,900, as a purchase of an owner-occupied single family property. The loan was approved as a Stated Income/Verified Asset loan, with a 62.397% Loan to Value/Combined Loan to Value, and a 49.02% Debt to Income Ratio. There was a Manual approval dated 08/24/2005, in the loan file. | Stated | $248,900.00 | 2845167 |
| | | | | 1.04 (c) (v) LMT 2005-1_No Fraud<br><br>1.04 (c) (vii) LMT 2005-1_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated income as an Owner of a small business earning $7,500 per month on the loan application. The Co-Borrower listed income of $583 per month as an Owner of the same business. The loan file contained post closing documentation which included the Borrowers' near year 2006 tax returns revealing the combined income was $28,298 or $2,358 per month. It is unlikely the Borrowers' income would have decreased considering the Borrowers were self employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers falsely stated self employment income as a Owners of a small business earning combined income of $8,083 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845167 |
| 8 | 00031865363 | 1st | LMT 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | Per the Data Tape the subject loan closed on 10/31/2005, in the amount of $302,800, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Stated Asset loan, with an 80%/99.15% Loan to Value/Combined Loan to Value and a 40.68% Debt to Income Ratio. There was neither an Automated Underwriting System Approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | SISA | $302,800.00 | 2845236 |
| | | | | 1.04 (c) (v) LMT 2005-2_No Fraud<br><br>1.04 (c) (vii) LMT 2005-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Security Guard earning $8,500 per month on the loan application. An audit re-verification of employment and income revealed that the Borrower's actual 2005 income was $4,501 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>The Borrower stated receipt of monthly retirement pension in the amount of $6,500. Per the Borrower's 2007 tax return obtained through post-closing documents, revealed that the Borrower's near year 2007 pension income was $4,481. The Borrower indicated on the loan application assets in the amount of $4,555 which is not indicative of an individual earning $180,000 annually.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Security Guard earning $8,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845236 |

Cowen_US Bank_Final_Version_4

**Digital Risk – Loan Review Findings**
08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
V - part 3   Pg 171 of 256

| 9 | 00032779167 | 1st | LXS 2006-10N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/24/2006, in the amount of $104,000, as a cash out refinance of an owner-occupied 2 unit property. The loan was approved as a Stated Income/Verified Asset loan, with a 69.33% Loan to Value/Combined Loan to Value, and a 42% Debt to Income Ratio. There was a Manual approval dated 04/19/2006, in the loan file. | Stated | $104,000.00 | 2845384 | |
| | | | 1.04 (c) (v) LXS 2006-10N_No Fraud<br><br>1.04 (c) (vii) LXS 2006-10N_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Assembler earning $4,800 per month on the loan application. The loan file contained the Borrower's near year 2008 tax returns and W-2 forms revealing earnings of $22,675 or $1,889 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Assembler earning $4,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845384 | |
| 10 | 00040536559 | 1st | LXS 2007-12N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/24/2007, in the amount of $464,000, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 78.64%/86.10% Loan to Value/Combined Loan to Value, and a 32.86% Debt to Income Ratio. There was a Manual approval dated 4/16/2007, in the loan file. | Stated | $464,000.00 | 2845499 | |
| | | | 1.04 (c) (v) LXS 2007-12N_No Fraud<br><br>1.04 (c) (vii) LXS 2007-12N_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Internet Sales Department Manager earning $11,000 per month on the loan application. The file contained post closing documentation, which included the Borrower's 2007 W-2 form and tax return revealing income of $10,404 or $867 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Internet Sales Department Manager earning $11,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845499 | |
| 11 | 00040703514 | 1st | LXS 2007-17H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/14/2007, in the amount of $252,700, as a purchase of an owner occupied multi-family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 100% Loan to Value/Combined Loan to Value, and a 47% Debt to Income Ratio. There was a Manual approval dated 06/13/2007, in the loan file. | Stated | $252,700.00 | 2845541 | |
| | | | 1.04 (b) (xvi) LXS 2007-17H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 47% to 120.08%, which exceeds the represented DTI. | | | 2845541 | |
| | | | 1.04 (b) (xvi) LXS 2007-17H_DTI<br><br>1.04 (b) (xxiv) LXS 2007-17H_No Fraud<br><br>1.04 (b) (xxvi) LXS 2007-17H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income in Quality Control earning $6,438 per month on the loan application. According to a Statement of Financial Affairs filed in the Northern District of Illinois dated 02/13/2010, the Borrower disclosed near year income of $1,937 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income yields a DTI of 120.08%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated employment in Quality Control earning $6,438 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845541 | |

Cowen_US Bank_Final_Version_4

**Digital Risk - Loan Review Findings**
08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment V - part 3   Pg 172 of 256

| 12 | 00046750477 | 1st | LXS 2007-16N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/29/2007, in the amount of $442,000. According to the loan represented by the data tape, the file presented for review did not contain any of the actual transaction documentation. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. There was no critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $442,000.00 | 2845526 | |
| . | | | 1.04 (b) (xxi) (i) LXS 2007-16N_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Provide the Credit Package | Failure to Provide Credit Package | 1 | 3 | The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification of the Borrower's credit, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan. Despite the Seller's representations, there is no evidence in the loan file that a complete credit package was provided and reviewed; and as such, there is no evidence in the file that the accuracy of the Borrower's credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845526 | |
| 13 | 00047504220 | 1st | LXS 2007-20N | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/25/2007, in the amount of $548,000, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset documentation loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 50% debt to income ratio (DTI). There was a Manual approval dated 08/24/2007, in the loan file. | Stated | $548,000.00 | 2845570 | |
| . | | | 1.04 (b) (xii) LXS 2007-20N_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xxiv) LXS 2007-20N_Compliance with Applicable Law | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, the loan file did not contain a Right of Rescission, which is evidence of the subject loan's noncompliance with applicable law.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845570 | |
| . | | | 1.04 (c) (v) LXS 2007-20N_No Fraud<br><br>1.04 (c) (vii) LXS 2007-20N_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrowers misrepresented their employment on the loan application. The loan file included a post-closing letter of explanation, which indicated that the Borrowers opened a bed and breakfast business renting out 3 rooms and two thirds of the subject property in 09/2007, which was the same month and year as the subject loan closing date of 09/25/2007. Research conducted through Accurint revealed that the Borrowers were owners of a self-employed bed and breakfast business that was not disclosed at origination and reflected an operational begin date of 04/09/2007 and is presently in business; therefore, the Borrowers started the business 5 months prior to the subject loan closing date of 09/25/2007 and they were aware the subject property was to be used to run the bed and breakfast business prior closing. Accurint also confirmed that the businesses were registered in the Borrower's name at the Borrower's primary residence.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as Truck Driver for 1 year and the Co-Borrower falsely state employment as an Adult Teaching Specialist for 13 years on the loan application, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2845570 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (c) (v) LXS 2007-20N _No Fraud

1.04 (c) (vii) LXS 2007-20N_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented their disclosed income. The Borrower falsely stated income as a Truck Driver earning $7,350 per month on the loan application. The Co-Borrower listed income of $4,583 per month as an Adult Teacher. The loan file included the Borrowers' 2008 income taxes, which reflected that the Borrowers earned a combined monthly income of $6,725 per month during the near year of 2008. Furthermore, an audit re-verification of employment was obtained from the Borrowers' employers and the loan file also included the Borrowers' 2009 income and employment documents, which indicated that the Borrower and the Co-Borrower was still employed with the same employers in the same line of business. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.

Additionally, the loan file included a post-closing letter of explanation, which indicated the Borrowers opened a bed and breakfast business renting out 3 rooms and two thirds of the subject property in 09/2007, which was the same month and year as the subject loan closing date of 09/25/2007. The post-closing letter of explanation also indicated that the Borrower had earned an annual income of $8,000 since the business opened; however, the loan file also included the Borrower's 2008 income tax returns, which reflected that the Borrower's business resulted in a negative $25,000 in annual income. Research conducted through Accurint revealed that the Borrowers were owners of a self-employed bed and breakfast business that was not disclosed at origination and reflected an operational begin date of 04/09/2007 and is presently in business; therefore, the Borrowers started the business 5 months prior to the subject loan closing date of 09/25/2007 and they were aware the subject property was to be used to run the bed and breakfast business prior closing. The opening of the undisclosed business could have had a negative impact on the Borrower's stated income at origination. Accurint also confirmed that the businesses were registered in the Borrowers' names at the Borrowers' primary residence.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated employment income as a Truck Driver earning $7,350 per month and the Co-Borrower listed income of $4,583 per month as an Adult Teacher on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845570 |
| 14 | 00047699392 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/29/2007, in the amount of $476,000, as a rate term refinance of an owner occupied, single family property. The loan was approved as a Stated Income/Verified Asset loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49.71% debt to income ratio (DTI). There was a Manual approval dated 11/14/2007, in the loan file. | Stated | $476,000.00 | 2846407 |
| | | | 1.04 (c) (v) SARM 2008-2_No Fraud

1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented her employment on the loan application. A review of post-closing income documentation submitted for a loan modification reflects the Borrower misrepresented her employment position. A review of post-closing income documentation submitted for a loan modification reflects the Borrower misrepresented her employment position. The 2007 tax return revealed the Borrower was a commissioned Insurance Agent and not employed as a Regional Manager for 3.5 years.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated employment as a Regional Manager for 3.5 years, which constituted an event of default under the executed Mortgage and Deed of Trust. | | | 2846407 |
| | | | 1.04 (c) SARM 2008-2_No Fraud

1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Regional Manager earning $8,572 per month on the loan application. A review of post-closing income documentation submitted for a loan modification reflects the Borrower misrepresented her income. The 2007 1040 tax return revealed the Borrower was a commissioned Insurance Agent and total earnings for 2007 was $14,100, or $1,175 per month.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated employment as a Regional Manager earning $8,572 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846407 |

Cowen_US Bank_Final_Version_4

| 15 | 00047858576 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/06/2007, in the amount of $645,000, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 78.19% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.87% debt to income ratio (DTI). There was a Manual approval dated 12/06/2007, in the loan file. | Stated | $645,000.00 | 2846422 |
| . | | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br><br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Bookkeeping Consultant earning $11,550 per month on the loan application. The loan file contained post closing documentation including the Borrower's 2007 tax return, which revealed the Borrower's income for 2007 was $40,224 or $3,352 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Bookkeeping Consultant earning $11,550 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846422 |
| 16 | 00047879911 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/23/2008, in the amount of $428,000, as a rate and term refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 79.56% Loan to Value/Combined Loan to Value, and a 51.62% Debt to Income Ratio (DTI). There was a Manual approval dated 01/22/2008, in the loan file. | Full | $428,000.00 | 2846424 |
| . | | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br><br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated income as a Welder earning $6,327 per month on the loan application. The Co-Borrower stated income of $3,247 per month as a Grocery Clerk. The Borrowers' income was properly calculated; however, the Borrowers misrepresented their occupancy and the negative cash flow of $1,061 per month is increased to the full principal, interest, taxes and insurance payments (PITI) payment of $3,161, which is considered negative cash flow. In addition, the homeowner's insurance declaration page indicated the policy type was a Landlord Protector policy.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers falsely stated the occupancy of the subject property resulting in negative cash flow of $1,061 per month, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846424 |
| . | | | | 1.04 (c) (v) SARM 2008-2_No Fraud<br><br>1.04 (c) (vii) SARM 2008-2_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrowers misrepresented their intent to occupy the subject property. The Borrowers did not occupy the subject property after the subject loan closing of 01/23/2008. The Borrowers resided in the property the Borrowers' disclosed as their investment property. The loan file contained a copy of the Borrowers' homeowner's insurance declaration page which indicated the Borrowers mailing address was the investment property, not the subject property. In addition, the homeowner's insurance declaration page indicated the policy type was a Landlord Protector policy. The origination credit report reflected an alert for the subject property address not being the same as the address used on file. The origination credit report reflected the Borrowers had used the investment property address to obtain credit. Furthermore, the title policy reflected the subject property did not file for a homestead exemption on the subject property. The loan file contained post closing documentation which included the Borrowers' 2008 tax returns which revealed the Borrower's mailing address was the investment property. The Schedule E reflected the subject property as an investment property.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846424 |

Cowen_US Bank_Final_Version_4

| 17 | 0017340357 | 1st | SAIL 2004-3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/16/2004 in the amount of $472,500 for a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset Loan, with an 85.14% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 32.32% debt to income ratio (DTI). There was a Manual approval dated 01/14/2004, in the loan file. | Stated | $472,500.00 | 2845767 | |
| | | | 1.04 (b) (xiii) SAIL 2004-3_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2004-3_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The disclosed finance charge ($661,023.10) is ($105.16) below the actual finance charge ($661,128.26). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d) (1)).<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable federal, state, or local law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845767 | |
| | | | 1.04 (c) (v) SAIL 2004-3_No Fraud<br><br>1.04 (c) (vii) SAIL 2004-3_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrowers misrepresented their debt obligations. The review of the audit credit report reflects an installment loan open at origination that does not appear on the origination credit report or application. The Borrowers obtained the loan in 11/2003 in the amount of $49,787 with a monthly payment of $842, which was not calculated in the original debt to income ratio (DTI). The subject loan closed 01/16/2004.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $842 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845767 | |

Cowen_US Bank_Final_Version_4

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 0017888371 | 1st | SAIL 2004-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/15/2004, in the amount of $125,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 59.84% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40.80% debt to income ratio (DTI). There was a Manual approval dated 06/23/2004, in the loan file. | Full | $125,000.00 | 2845790 |
| | . | | | 1.04 (b) (xviii) (d) SAIL 2004-8_Underwriting Methodology - Deemed MnA_Pool 1 and Pool 3 | Failure to Verify Assets | Failure to Verify Assets | 1 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance payments totaling $2,044 for the subject property. In total, assets of $2,044 were required to be verified.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $2,044 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845790 |
| | . | | | 1.04 (b) (xviii) (d) SAIL 2004-8_Underwriting Methodology - Deemed MnA_Pool 1 and Pool 3 | Improper Calculation of Debts | Improper Calculation of Debts | 3 | 3 | The subject loan was underwritten without proper regard to the Borrowers' reasonable ability to repay. Verification of the Borrowers' debt, so as to confirm the Borrowers' overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrowers' reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>Monthly debts of $1,046 were used by the Lender to determine the Debt to Income Ratio (DTI). The following facts support the proper calculation of debts:<br><br>The Lender failed to use the correct hazard insurance premium and the flood insurance monthly premium of $133 per month. The correct recalculation results in a monthly debt of $1,179.<br><br>Despite the Seller's representations, a review of the loan file revealed the Lender failed to accurately calculate the Borrowers' debts, which significantly impacted the determination of the Borrowers' reasonability to repay.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845790 |
| 19 | 0017898586 | 1st | SAIL 2004-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/23/2004, in the amount of $212,000, as a cash out refinance of an owner occupied, single family property. The loan was approved as a Stated Income/Verified Asset loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 38.83% debt to income ratio (DTI). There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $212,000.00 | 2845796 |
| | . | | | 1.04 (b) (xviii) (d) SAIL 2004-8_Underwriting Methodology - Deemed MnA_Pool 1 and Pool 3 | Failure to Verify Assets | Failure to Verify Assets | 3 | 3 | Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. The Borrower was required to verify 2 months reserves of principal, interest, taxes and insurance payments totaling $4,466 for the subject property.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to assets. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there was a $4,466 shortage of verified assets, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845796 |

Cowen_US Bank_Final_Version_4

| 20 | 0030324834 | 1st | SAIL 2005-5 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/02/2005, in the amount of $364,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45.279% debt to income ratio (DTI). There was a Manual approval dated 02/0/2005, in the loan file. | Full | $364,000.00 | 2845831 | |
| | . | | 1.04 (b) (xviii) (d) SAIL 2005-5_Underwriting Methodology - Deemed MnA_Pool 1 | Ineligible Transaction | Ineligible Transaction | 1 | 3 | A loan amount of over $300,000 for the subject transaction when the Borrowers' credit score was a C grade was prohibited. The loan approval reflects the credit grade of A+ was downgraded to a C as the origination credit report reflected a 1 x 90 late payment. The subject transaction was approved with a loan amount of $364,000.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to credit worthiness. The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the subject transaction was an ineligible transaction as evidenced by improper loan amount for the Borrower's credit grade. The insufficient credit score significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845831 | |
| 21 | 0031606817 | 1st | SARM 2005-22 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/12/2005, in the amount of $551,250, a purchase of an investment, single family property. The loan was approved as a Stated Income/Verified Asset loan, with a 75%/80% Loan to Value/Combined Loan to Value, and a 34% Debt to Income Ratio (DTI). There was a Manual approval dated 08/25/2005, in the loan file. | Stated | $551,250.00 | 2846147 | |
| | . | | 1.04 (c) (v) SARM 2005-22_No Fraud<br><br>1.04 (c) (vii) SARM 2005-22_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented her debt obligations. According to the audit credit report, the Borrower acquired an undisclosed home equity line of credit the same month as the subject loan closing on 09/12/2005. The Borrower acquired an undisclosed mortgage in 09/2005, loan amount of $100,000, with a monthly payment of $1,992, secured by unknown property.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose a $1,992 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2846147 | |
| | | | 1.04 (c) (v) SARM 2005-22_No Fraud<br><br>1.04 (c) (vii) SARM 2005-22_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Realtor earning $12,250 per month on the loan application. The Borrower provided 2007 tax returns during loss mitigation, which verified Borrower's position as a Realtor; however, it also revealed the Borrower's income for 2007 was listed as a negative $16,196, or negative $1,349 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Realtor earning $12,250 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846147 | |

| 22 | 0032646630 | 1st | SARM 2006-5 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/15/2006, in the amount of $860,000, as a purchase of an owner occupied single family residence located in a Planned Unit Development. The loan was approved as a Stated Income/Stated Asset loan, with a 76.67% Loan to Value/Combined Loan to Value, and a 49.40% Debt to Income Ratio. There was an Automated Underwriting System approval dated 03/24/2006, in the loan file. | SISA | $860,000.00 | 2846265 | |
|  | . |  |  | 1.04 (c) (v) SARM 2006-5_No Fraud<br><br>1.04 (c) (vii) SARM 2006-5_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as Senior Systems Administrator earning $18,300 per month on the loan application. The loan file contained post closing income documentation including the Borrower's tax return for 2006, the year of the subject closing, which indicated the Borrower and non-borrowing spouse earned $13,379 per month and interest/dividend income of $214 per month. It could not be determined what the Borrower's individual income for 2006 was; however, the combined income did not support the income stated on the loan application. An audit re-verification of employment conducted through The Work Number indicated the Borrower earned $1,316 per month; however, the Borrower's employer merged with another company and did not reflect the income prior to the merger. The Work number indicated the Borrower's income for 2007, the subsequent year after the subject closing, was $8,178 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Senior Systems Administrator earning $18,300 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. |  |  | 2846265 | |
| 23 | 0032652018 | 1st | SARM 2006-7 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/14/2006, in the amount of $328,000, as a cash out refinance of an owner occupied, 2 unit property. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/89.27% Loan to Value/Combined Loan to Value, and a 39% Debt to Income Ratio. There was a Manual approval dated 03/07/2006, in the loan file. | Stated | $328,000.00 | 2846282 | |
|  | . |  |  | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income in Shipping earning $8,475 per month on the loan application. The file contained post closing documentation which included the Borrower's 2007 tax return revealing income of $55,654 or $4,638 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment in Shipping earning $8,475 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. |  |  | 2846282 | |
| 24 | 0032773889 | 1st | SARM 2006-7 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/21/2006, in the amount of $488,000, as a purchase of an owner occupied, single family property. The loan was approved as a Stated Income/Verified Asset loan, with an 80%/100% Loan to Value/Combined Loan to Value, and a 37.22% Debt to Income Ratio. There was neither an Automated Underwriting System Approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $488,000.00 | 2846286 | |
|  | . |  |  | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (vii) SARM 2006-7_No Event of Default | Asset Misrepresentation - With No Red Flags Present | Misrepresentation of Assets | 1 | 3 | The Borrowers misrepresented their ownership of the following assets. Per the final HUD-1 Settlement Statement, the Borrower was not required to bring funds to closing. In addition, the Borrowers were required to verify earnest money of $6,800 along with 6 months reserves of PITI totaling $23,909 for the subject property. In total, assets of $30,709 were required to be verified. The loan file contained a Verification of Deposit dated 04/18/2006, reflecting a current balance of $17,547 and a copy of the canceled check for the earnest money deposit dated 04/07/2006 in the amount of $6,800. However, an audit re-verification of deposit was received, which revealed the actual balance on 04/18/2006 was $6,047.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers falsely disclosed that they had $17,547 month's reserves when in fact they had $6,047, meaning the amount of assets verified was misrepresented by $11,500, which constitutes an event of default under the executed Mortgage and or Deed of Trust. |  |  | 2846286 | |

**Digital Risk - Loan Review Findings**

Cowen_US Bank_Final_Version_4          08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
7 Pg 179 of 256

| | | | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 2 | 3 | The Borrower misrepresented his employment on the loan application. The Borrower stated on the loan application employment as an Owner of a carpet installation business for 6 years; however, the loan file contained Financial Affidavits completed by Borrower, dated in 2009 and 2011, which revealed the Borrower was employed by a flooring company for 14 years, the same employer listed on the origination credit report. The subject loan closed on 04/21/2006. Furthermore, according to a Statement of Financial Affairs, filed by the Borrower with the Northern District of California Bankruptcy Courts as part of a Chapter 13 bankruptcy case dated June 20, 2010, the Borrower did not list ownership of a business within 6 years of filing date of Bankruptcy. In addition, the Borrowers' credit report dated 04/11/2006 did not list the Borrower's business; however; a different flooring business was listed, with a report date as 01/1998.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Owner of a carpet installation business for 5 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | 2846286 | |
| | | | 1.04 (c) (v) SARM 2006-7_No Fraud<br><br>1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a carpet installation business for 5 years earning $13,375 per month on the loan application. The loan file contained Financial Affidavits completed by Borrower, dated in 2009 and 2011, which revealed the Borrower was employed by a flooring company for 14 years, the same employer listed on the origination credit report. The subject loan closed on 04/21/2006. Furthermore, according to a Statement of Financial Affairs, filed by the Borrower with the Northern District of California Bankruptcy Courts as part of a Chapter 13 bankruptcy case dated June 20, 2010, the Borrower did not list ownership of a business within 6 years of filing date of Bankruptcy and revealed the Borrower's income, reported jointly with his spouse, as $88,427, or $7,369 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as an Owner of a carpet installation business for 5 years, earning $13,375 per month, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | 2846286 | |
| | | | | | | **Grand Total of Repurchase Demand** | | | | | | $9,450,416.00 | | |

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 00047776406 | 1st | SARM 2008-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/29/2007, in the amount of $470,000, as a rate and term refinance of an owner occupied Single Family Residence. The loan was approved as a Stated Income, Verified Assets loan, with a 75.81% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.81% Debt to Income Ratio (DTI). There was a Manual approval dated 11/28/2007, in the loan file. | Stated | $470,000.00 | 2846415 | |
| | | | | 1.04 (c) (v) SARM 2008-2_No Fraud  1.04 (c) (vii) SARM 2008-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated his income as an Owner of a restaurant supply business earning $20,745 per month on the loan application. The loan file contained post-closing income documentation including the Borrower's 2007 tax return, which revealed the Borrower earned $11,954 per month the year the subject loan closed.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower falsely stated income as an Owner of a restaurant supply business earning $20,745 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846415 | |
| 2 | 0019041904 | 1st | SAIL 2004-10 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/14/2004, in the amount of $244,000, as a purchase of a non-owner occupied 4 unit property. The loan was approved as a Stated Income, Verified Assets loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 20.79% Debt to Income Ratio (DTI). There was a Manual approval dated 09/03/2004, in the loan file. | Stated | $244,000.00 | 2845724 | |
| | | | | 1.04 (c) (v) SAIL 2004-10_No Fraud  1.04 (c) (vii) SAIL 2004-10_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated her income as an Office Administrator earning $6,500 per month with additional income of $2,122 and net rental income of $232 per month for the subject property. The loan file contained post-closing income documentation including the Borrower's 2005 tax return, which revealed the Borrower earned a total of $2,674 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was with the same employer in the same line of work.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower falsely stated income as an Office Administrator earning $6,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845724 | |
| 3 | 14338925 | 1st | SAS 2003-RNP2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/27/2002, in the amount of $88,200, as a purchase of a non-owner occupied 3 unit property. The loan was approved as a Stated Income, Verified Assets loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40.92% Debt to Income Ratio (DTI). There was a Manual approval dated 11/14/2002, in the loan file. | Stated | $88,200.00 | 2844693 | |
| | | | | 1.04 (b) (xxviii) SAS 2003-RNP2_No High Cost | High Cost Loan - State | No High Cost Loan | 1 | 3 | The subject loan did not comply with applicable law. The loan fees ($4,333.00) exceed the (NYPart41Old) High Cost fee limit, which is ($4,179.32), the difference is ($153.68).  The Seller represented and warranted that the subject loan was not a high cost loan under any applicable predatory or abusive lending law.  The Seller further represented and warranted that the subject loan complied in all material respects with applicable laws.  Despite the Seller's representations, the subject loan was a "covered" or high cost loan as defined by applicable law. | | | 2844693 | |

Cowen_US Bank_Final Version_44

| 4 | 32732083 | 1st | LXS 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/03/2005, in the amount of $94,320.00, as a purchase of a non-owner occupied Single Family Residence. The loan was approved as a Stated Income, Verified Assets loan, with an 80%/90% Loan to Value (LTV/CLTV), and a 31.49% Debt to Income Ratio (DTI). There was neither an Automated Underwriting System (AUS )nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $94,320.00 | 2845429 | |
| . | | | | 1.04 (c) (v) LXS 2006-8_No Fraud<br><br>1.04 (c) (vii) LXS 2006-8_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Airline Pilot earning $20,000 per month on the loan application. A audit verification of employment was conducted through The Work Number, which revealed the Borrower earned $16,260 per month for the year 2008. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Airline Pilot earning $20,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845429 | |
| 5 | 32921090 | 1st | LXS 2006-15 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/05/2006, in the amount of $282,400, as a purchase of an owner occupied 2 unit property. The loan was approved as a Stated Income, Stated Assets loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 43.37% Debt to Income Ratio (DTI). There was a Manual approval dated 05/17/2006, in the loan file. | SISA | $282,400.00 | 2845396 | |
| . | | | | 1.04 (c) (v) LXS 2006-15_No Fraud<br><br>1.04 (c) (vii) LXS 2006-15_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated his income as a home based Painter earning $5,750 per month. The post closing tax return obtained through the modification process for 2008, revealed the Borrower earned $4,806 per month in gross earnings. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a home based self-employed Painter earning $5,750 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845396 | |
| . | | | | 1.04 (c) (v) LXS 2006-15_No Fraud<br><br>1.04 (c) (vii) LXS 2006-15_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented his intent to occupy the subject property. Public records including utility records and the Borrower's Financial Statement obtained through the modification process revealed the Borrower remained at the proposed departure residence from 11/2005 through 09/2013 and did not occupy the subject property as required. Public records also indicated other individuals occupied the subject property from 01/2006 to 08/2013.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2845396 | |

Cowen_US Bank_Final Version_44

| 6 | 32972721 | 1st | LXS 2006-15 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/26/2006 in the amount of $400,000, as a purchase of a non-owner occupied Single Family Residence. The loan was approved as a Full Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 37.79% Debt to Income Ratio (DTI). There was a Manual approval dated 06/13/2006, in the loan file. | Full | $400,000.00 | 2845397 |
| . | | | 1.04 (b) (xvii) LXS 2006-15_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's undisclosed debt results in an increase from 37.79% to 112.26%, which exceeds the Seller's represented DTI of 60%. | | | 2845397 |
| . | | | 1.04 (b) (xvii) LXS 2006-15_DTI<br><br>1.04 (c) (v) LXS 2006-15_No Fraud<br><br>1.04 (c) (vii) LXS 2006-15_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. Public records and the Audit Credit Report indicated the Borrower purchased 2 undisclosed properties on 06/14/2006 and 06/16/2006, 1 day prior and 1 day after the subject loan closing on 06/15/2006. The Borrower acquired 3 mortgages in the amount of $320,000, $80,000 and $380,000 with monthly payments of $2,128, $679, and $2,968.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation based on the Borrower's undisclosed debt yields a debt to income ratio (DTI) of 112.26%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose $5,775 in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845397 |
| 7 | 33183328 | | LXS 2006-15 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/15/2006, in the amount of $208,000, as a purchase of a condominium. The loan was approved with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Unknown | $208,000.00 | 2845407 |
| . | | | 1.04 (b) (xii) LXS 2006-15_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2006-15_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | 2845407 |
| . | | | 1.04 (c) (xviii) LXS 2006-15_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845407 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate      Run: 12/31/2013 4:50:32 PM

Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

**700**

**Digital Risk - Loan Review Findings**

Cowen_US Bank_Final Version_44    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
Part 3 Pg 183 of 256

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 33709882 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 1/23/2007 in the amount of $142,500, as a cash-out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) Documentation loan, with a 95% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 28.63% Debt to Income Ratio (DTI). There was a Manual approval dated 01/05/2007, in the loan file. | Stated | $142,500.00 | 2845624 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI

1.04 (c) (v) LXS 2007-8H_No Fraud

1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Co-Borrower misrepresented her disclosed income. The Co-Borrower falsely stated her income as a Retail Sales Manager with a mattress store earning $4,167 per month on the loan application. The loan file included the Co-Borrower's post-closing 2007 pay stub, dated 03/31/2007, revealing the Borrower earned $2,453 per month the year the subject loan closed.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact necessary to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Co-Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

A recalculation of Debt to Income Ratio (DTI) based on the Co-Borrower's verified $2,453 per month in income yields a DTI of 40.88%, which constitutes an event of default under the executed Mortgage and/or Deed of Trust.

Despite the Seller's representations, the Co-Borrower falsely stated income as a Retail Sales Manager earning $4,167 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845624 |
| 9 | 37307303 | 1st | LMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/27/2005, in the amount of $147,200. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file contained a copy of the note, mortgage, the HUD-1 Settlement Statement, homeowner's insurance certificate, the title policy and the title commitment. There were no other critical documentations provided for the file and no data tape was provided for the subject loan. | Unknown | $147,200.00 | 2845258 |
| . | | | | 1.04 (b) (xii) LMT 2006-2_Compliance with Applicable Law - Deemed MnA

1.04 (c) (xxxiv) LMT 2006-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.

The Seller represented and warranted that origination practices and subject loan complied in all material respects with applicable laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | 2845258 |
| . | | | | 1.04 (c) (xxxv) LMT 2006-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.

The Seller represented and warranted, in part, that the appraisal complied with FIRREA.

Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845258 |

Cowen_US Bank_Final Version_44

| 10 | 39905989 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/15/2007, in the amount of $235,000, as a purchase of a non-owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 43.73% Debt to Income Ratio (DTI). There was a Manual approval dated 02/15/2007, in the loan file. | Stated | | $235,000.00 | 2845625 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 2 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income and undisclosed debt results in an increase from 43.73% to 181.25%, which exceeds the Seller's represented DTI of 60%. | | | | 2845625 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI  1.04 (c) (v) LXS 2007-8H_No Fraud With Red Flags Present  1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented his debt obligations. Research performed through the Mortgage Electronic Registration Service (MERS) report, Sitexdata.com and the audit credit report, revealed the Borrower refinanced the primary home on 03/09/2007, or 21 days after the subject loan closing date of 02/15/2007, with a new mortgage in the amount of $236,000 with a monthly payment of $1,304 and obtained a second home equity loan of credit in the amount of $29,500 with a monthly payment of $295 per month, based on 1% of the balance. The undisclosed refinance increased the total monthly payment from $1,298 to a new monthly payment of $1,599, or $301 per month. In addition, 2 additional undisclosed mortgages opened on the same date as the undisclosed refinance of the primary home on 03/09/2007, in the amounts of $286,400 with a monthly payment of $1,878 and $71,600 with a monthly payment of $642, which secured a property located in same city and state as the Borrower's primary home in University Place, Washington. The Borrower's undisclosed monthly mortgage payments totaled $4,119.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  A recalculation of debt to income ratio (DTI) based on the Borrower's verified income of $3,801 per month and the undisclosed monthly mortgage payments $4,119 per month yields a DTI of 181.25%, which exceeds the Seller's maximum represented DTI of 60%.  Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose $4,119 in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845625 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI  1.04 (c) (v) LXS 2007-8H_No Fraud  1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated his income as an Account Manager of tools sales earning $9,500 per month on the loan application. An audit re-verification of employment and income was conducted through The Work Number, which revealed the Borrower actually earned a monthly income of $3,801.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  A recalculation of debt to income ratio (DTI) based on the Borrower's verified income of $3,801 per month and the undisclosed monthly mortgage payments $4,119 per month yields a DTI of 181.25%, which exceeds the Seller maximum represented DTI of 60%.  Despite the Seller's representations, the Borrower falsely stated income as an Account Manager of tools sales earning $9,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845625 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:50:32 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final Version_44

| 11 | 40059859 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/24/2007. The purpose of the loan was a purchase of a non-owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 35% Debt to Income Ratio (DTI). There was a Manual approval dated 01/23/2007, in the loan file. | Stated | $80,000.00 | 2845628 | |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI 1.04 (c) (v) LXS 2007-8H_No Fraud 1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his/her debt obligations. Research of public records and an audit credit report, revealed the Borrower purchased an undisclosed property located in Kansas City, Missouri on 01/24/2007, which was the same day as the subject loan closing date and obtained a first mortgage in the amount of $78,000. The undisclosed monthly mortgage payment was not reported on the audit credit report; therefore, the undisclosed monthly mortgage payment was calculated using a conservative 5% rate over 30 years, which resulted in an undisclosed monthly mortgage payment of $419.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

A recalculation of DTI based on the Borrower's undisclosed debt of $419 and the Borrower's verified income of $2,770 per month yields a DTI of 88.02%, which exceeds the seller's represented 60% Debt to income ratio.

Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $419 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845628 | |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI 1.04 (c) (v) LXS 2007-8H_No Fraud 1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Tech Editor earning $5,050 per month on the loan application. Research of public records reported the Borrower filed a Chapter 7 Bankruptcy with the District of Nevada on 08/22/2008. The subject loan closed on 01/24/2007; therefore, the 2006 income would have used to qualify the subject loan with the same employer in the same line of business as indicated on the Schedule I section of The Statement of Financial Affairs; Section 1 of The Statement of Financial Affairs found on the Borrower's Bankruptcy report revealed the Borrower earned a monthly income of $2,770 during the near year of 2006, which would have been the required income used to qualify the Borrower at origination. Furthermore, the Borrower's bankruptcy report also indicated the Borrower earned a monthly income of $3,404 during the subject year of 2007 while being employed with the same employer and the same job title; therefore, the Borrower's income was misrepresented. The Borrower's 2006 verified income of $2,770 was calculated to be 1.75 times more than the Borrower's stated monthly income of $5,050.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

A recalculation of DTI based on the Borrower's undisclosed monthly debt of $419 and the Borrower's verified income of $2,770 per month yields a DTI of 88.02%, which exceeds the seller's represented 60% Debt to income ratio.

Despite the Seller's representations, the Borrower falsely stated income as a Tech Editor earning $5,050 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845628 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (v) LXS 2007-8H_No Fraud - With No Red Flags Present<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 5 | 3 | The Borrower misrepresented his employment. Per the loan application, the Borrower was employed as a Tech Editor with the military for 8.5 years, earning $5,050 per month. The loan file included a verbal verification of employment (VVOE) dated 01/22/2007 to support the Borrower's employment information as listed on the loan application; however, research of public records reported the Borrower filed a Chapter 7 Bankruptcy with the District of Nevada on 08/22/2008. The petition included a Statement of Financial Affairs and section 18 of the State of Financial Affairs reported the Borrower had an undisclosed self-employed business with no dates listed. Further research conducted through Accurint for the Borrower's business report revealed the Borrower was a self-employed Owner of two undisclosed investment businesses of which one was open and active from 12/23/2003 through 01/01/2011 and the second undisclosed self-employed business was opened and active from 04/18/2005 through 05/01/2009, which both covered the subject loan closing date of 01/24/2007 and listed the Borrower as the Owner of both businesses. The undisclosed businesses could have resulted in a negative impact on the Borrower's stated monthly income $5,050.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as Tech Editor for 8.5 years, which constituted an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845628 |
| 12 | 40173742 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/23/2007, in the amount of $123,000, as a purchase of a non-owner occupied, single family residence. The loan was approved as a Full Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 35% Debt to Income Ratio (DTI). There was a Manual approval dated 02/22/2007, in the loan file. | Full | $123,000.00 | 2845636 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's undisclosed debt results in an increase from 35% to 117.99%, which exceeds the Seller's represented DTI of 60%. | | | 2845636 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented his debt obligations. Research of public records conducted through the Mortgage Electronic Registration System (MERS) report and an audit credit report revealed the Borrower obtained 5 undisclosed mortgages that secured 5 different properties all located in Louisville, Kentucky. Two of the mortgages were opened on the same day as the subject loan closing date of 02/23/2007 one in the amount of $83,500 with a monthly payment of $448 and the other in the amount of $123,000 with a monthly payment of $660. It should be noted, the payments were calculated using a conservative 5% interest rate for 30 years. Two additional undisclosed mortgages were opened in the amount of $105,000 on 02/07/2007, 16 days prior to the subject loan closing date of 02/23/2007 with a monthly payments of $835, based on an 8.87% rate over 30 years as reported on the sitexdata.com property report. Furthermore, the Borrower opened an additional undisclosed mortgage in the amount of $184,500 on 03/13/2007, 18 days after the subject loan closing date with a monthly mortgage payment of $1,885. The Borrower opened a total of $601,000 in undisclosed mortgages resulting in a total of $4,663 in undisclosed monthly mortgage payment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation based on the Borrower's undisclosed monthly debts of $4,663 and the verified monthly income of $5,800 per month yields a debt to income ratio (DTI) of 117.99%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose $4,663 in undisclosed monthly debts, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845636 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:50:32 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repo

**Digital Risk - Loan Review Findings**

08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
Cowen_US Bank_Final Version_44
Pg 187 of 256

| 13 | 40215139 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/23/2007 in the amount of $297,000, as a cash-out refinance of an owner occupied, single family residence located in a Planned Unit Development (PUD). The loan was approved as a Stated Income/Stated Asset (SISA) Documentation loan, with a 97.3770% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 41.80% Debt to Income Ratio (DTI). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | SISA | | $297,000.00 | 2845641 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 2 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 41.80% to 60.08%, which exceeds the Seller's represented DTI 60%. | | | | 2845641 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated his income as a Maintenance Specialist earning $6,900 per month on the loan application. The loan file contained post-closing income documentation including the Borrower's 2006 income tax return, which revealed the Borrower earned a monthly income of $4,854.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of debt to income ratio (DTI) based on the Borrower's verified income of $4,854 per month yields a DTI of 60.08%, which exceeds the Seller's verified DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Maintenance Specialist earning $6,900 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845641 |
| 14 | 40223349 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/02/2007, in the amount of $174,000, as a purchase of a non-owner occupied, 4-Unit property. The loan was approved as a No Income/Verified Asset (No Ratio) Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System (AUS) nor a Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | NIVA | | $174,000.00 | 2845642 |
| . | | | | 1.04 (b) (xii) LXS 2007-8H_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2007-8H_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TILA) required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower. The disclosed finance charge ($350,110.40) is ($215.40) below the actual finance charge ($350,325.80). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d) (1)).<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificate holders. | | | | 2845642 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:50:32 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| # | Loan # | Lien | Seller | Finding Code | Finding Category | Finding Subcategory | | | Finding Detail | Doc Type | Orig Amount | Loan ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 | 40247330 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/08/2007, in the amount of $220,000, as a purchase of a non-owner occupied, single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48% Debt to Income Ratio (DTI). There was a Manual approval dated 03/07/2007, in the loan file. | Stated | $220,000.00 | 2845644 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 48% to 125.30%, which exceeds the Seller's represented DTI of 60%. | | | 2845644 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI  1.04 (c) (v) LXS 2007-8H_No Fraud  1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated her income as a Marketing Director with a financial institution, earning $12,000 per month on the loan application. An audit re-verification of employment and income was obtained from the Borrower's employer, which revealed the Borrower earned an actual monthly income of $4,496 per month.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income of $4,496 per month yields a DTI of 125.30%, which exceeds the Seller's represented DTI of 60%.  Despite the Seller's representations, the Borrower falsely stated income as a Marketing Director earning $12,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845644 |
| 16 | 40266371 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/06/2007, in the amount of $259,900, as a purchase of a second home single family residence located in a planned unit development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 47.90% Debt to Income Ratio (DTI). There was a Manual approval dated 03/08/2007, in the loan file. | Stated | $259,900.00 | 2845647 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 47.90% to 587.93%, which exceeds the Seller's represented DTI of 60%. | | | 2845647 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI  1.04 (c) (v) LXS 2007-8H_No Fraud  1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as the Owner of a beauty salon for 4.6 years, earning $8,350 per month. The loan file contained post-closing income documentation including the Borrower's 2007 tax return, which revealed the Borrower earned $680 per month in 2007 the year the subject loan closed and the Borrower's 2006 tax return, which revealed the Borrower earned $656 per month.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income for 2007, the year the subject loan closed, yields a DTI of 587.93%, which exceeds the Seller's represented DTI of 60%.  Despite the Seller's representations, the Borrower falsely stated income as the Owner of a beauty salon for 4.6 years, earning $8,350 on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845647 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 4 | 3 | The Borrower misrepresented her intent to occupy the property as a second home. The loan file contained post-closing income documentation including the Borrower's 2007 tax return, which revealed the property was an investment property and the Borrower received rental income in 2007, the year the subject loan closed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as a second home transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845647 | |
| 17 | 40296550 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/15/2007, in the amount of $50,000, as a purchase of an investment single family residence located in a planned unit development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49% Debt to Income Ratio (DTI). There was a Manual approval dated 03/01/2007, in the loan file. | Stated | $50,000.00 | 2845649 | |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Capacity Planning Manager for 8.6 years, earning $9,065 per month on the loan application. Research of public records revealed the Borrower filed a Chapter 7 Bankruptcy with the Central District of California on 12/14/2008. The petition included a Statement of Financial Affairs, which revealed the Borrower earned $8,125 per month in 2007 the year the subject loan closed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Capacity Planning Manager for 8.6 years, earning $9,065 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845649 | |
| . | | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 2 | 3 | The Borrower misrepresented his employment on the loan application as a Capacity Planning Manager for 8.6 years as his sole source of employment. Research of public records revealed the Borrower filed a Chapter 7 Bankruptcy with the Central District of California on 12/14/2008. The petition included a Statement of Financial Affairs, which revealed the Borrower was also the Owner of a Real Estate Development Company from 12/2006 through 06/2008.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification and disclosure of the Borrower's employment, so as to confirm the accuracy and stability of the Borrower's employment and adequacy of his financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Without properly verifying the employment status of the Borrower, the lender could not properly evaluate the Borrower's ability to earn an income and support the subject obligation.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Capacity Planning Manager for 8.6 years as his sole source of employment, which constitute an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845649 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:50:32 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final Version_44

| 18 | 40442675 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/02/2007 in the amount of $450,000.00 as a purchase of a second home single family residence located in a planned unit development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 42% DTI. There was a Manual approval dated 04/02/2007, in the loan file. | Stated | | $450,000.00 | 2845654 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income yields a DTI of 425.82%, which exceeds the Seller's represented DTI of 60%. | | | | 2845654 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a self-employed Insurance Agent for 22 years, earning $9,200 per month. The loan file contained post-closing income documentation including the Borrowers' 2008 tax return, which reflected the Borrower as a self-employed Insurance Agent and the Co-Borrower as a Homemaker and revealed the Borrower's self-employment income was $2,526 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed in the same line of work.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification and disclosure of the Borrower's income, so as to confirm the adequacy of the Borrower's financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income yields a DTI of 425.82%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a self-employed Insurance Agent for 22 years, earning $9,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845654 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a self-employed Insurance Agent for 22 years, earning $9,200 per month. The loan file contained post-closing income documentation including the Borrowers' 2008 tax return, which reflected the Borrower as a self-employed Insurance Agent and the Co-Borrower as a Homemaker and revealed the Borrower's self-employment income was $2,526 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was self-employed in the same line of work.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification and disclosure of the Borrower's income, so as to confirm the adequacy of the Borrower's financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income yields a DTI of 425.82%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a self-employed Insurance Agent for 22 years, earning $9,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845654 |

**Digital Risk - Loan Review Findings**

Cowen_US Bank_Final Version_44     08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18     Attachment     7 Pg 191 of 256

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 4 | 3 | The Borrowers misrepresented their intent to occupy the subject property. The loan file contained post-closing documentation including a hardship letter from the Co-Borrower, which revealed the Borrowers had agreed to co-sign for their son for the subject loan; however, were unaware the loan was made solely in their names and were not aware the loan had become delinquent confirming they had not been making the payments.<br><br>Verification and disclosure of the Borrowers' intent to occupy the subject property as a second home, so as to confirm the Borrowers' personal investment in the subject property, was a significant factor in determining the Borrowers' reasonable ability to repay the subject loan<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage<br><br>There is no evidence in the file that at least one named Borrower occupied the subject property as a second home. A significantly greater risk of default exists on those loans used to finance non-owner occupied properties.<br><br>Despite the Seller's representations, the subject loan was falsely represented as a second home transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845654 | |
| . | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Straw Purchaser Transaction | Straw Purchaser Transaction | 5 | 3 | The purchase was an ineligible transaction. The loan file contained post-closing documentation including a hardship letter from the Co-Borrower, which revealed the Borrowers had agreed to co-sign for their son for the subject loan; however, were unaware the loan was made solely in their names and were not aware the loan had become delinquent confirming they had not been making the payments.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers provided misleading information on the loan file, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845654 | |
| 19 | 40447799 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/11/2007, in the amount of $351,000, as a purchase of an owner occupied 3-unit property. The loan was approved as a No Ratio loan (No Income, Verified Asset), with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV). There was a Manual approval dated 04/02/2007, in the loan file. | NIVA | $351,000.00 | 2845655 | |
| . | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 1 | 3 | The Borrower misrepresented their intent to occupy the subject property. The loan was approved as an owner occupied transaction; however, the loan file contained post-closing documentation including the Borrower's pay stubs for 07/16/2007, 08/01/2007 and 08/16/2007 and bank statements dated 05/18/2007, 06/19/2007 and 07/10/2007, which all reflected the Borrower's departing address as her current address on the income verification, which were dated within 4 months after the closing on 04/11/2007. In addition, public records reported the Borrower resided at the departing residence from 08/2004 through 10/2007. Further, the loan file contained a hardship letter, which revealed the property was purchased as an investment.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845655 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 | 40484743 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 4/20/2007, in the amount of $440,000, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45% Debt to Income Ratio (DTI). There was a Manual approval dated 04/19/2007, in the loan file. | Stated | $440,000.00 | 2845658 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified primary income and stated secondary income results in an increase from 45% to 83.84%, which exceeds the Seller's represented DTI of 60%. | | | 2845658 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI  1.04 (c) (v) LXS 2007-8H_No Fraud  1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentatio n of Income - Red Flags Present - Same Year Income Evidence | Misrepresentatio n of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Supervisor of a janitorial company for 8.6 years, earning $4,550 per month. An audit verification of employment and income was obtained through the employer, which revealed the Borrower was employed as a Janitor and earned $1,761 per month in 2007, the year the subject loan closed.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified primary income and stated secondary income yields a DTI of 83.84%, which exceeds the Seller's represented DTI of 60%.

Despite the Seller's representations, the Borrower falsely stated income as a Supervisor of a janitorial company for 8.6 years, earning $4,550 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845658 |
| 21 | 45215480 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/01/2007, in the amount of $182,000, as a purchase of a single family investment property. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40.13% Debt to Income Ratio (DTI). There was a Manual approval dated 01/29/2007, in the loan file. | Stated | $182,000.00 | 2845661 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a DTI in excess of 60%. Despite the Seller's representations, a re-calculation of Debt to Income Ratio (DTI) based on the Borrower's more reasonable income and undisclosed debt results in an increase from 40.13% to 137.86%, which exceeds the Seller's represented DTI of 60%. | | | 2845661 |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI  1.04 (c) (v) LXS 2007-8H_No Fraud  1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentatio n of Debt Obligations - No Red Flags Present | Misrepresentatio n of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. Research of public records conducted through the Mortgage Electronic Registry System, Accurint and an audit credit report, revealed the Borrower obtained 8 undisclosed mortgages the month prior, in the same month or within 30 days after the subject loan closing on 02/01/2007. The Borrower purchased an undisclosed property located in Merritt Island, FL on 01/30/2007, obtaining a first mortgage in the amount of $344,000 with a monthly payment of $2,405 and a second mortgage of $86,000 with a monthly payment of $842; purchased an undisclosed property located in Orlando FL on 01/30/2007, obtaining a first mortgage in the amount of $252,000 with a monthly payment of $1,417 and a second mortgage in the amount of $63,000 with a monthly payment of $565 and purchased an undisclosed property located in Edgewater, FL on 02/09/2007, obtaining a first mortgage in the amount of $228,800 with a monthly payment of $1,692 and a second mortgage in the amount of $57,200 with a monthly payment of $661. The records also revealed the Borrower obtained an undisclosed mortgage in the amount of $395,600 with a monthly payment of $1,290 on an unknown property in 01/2007 and obtained an undisclosed third mortgage on her primary residence in the amount of $120,500 with a monthly payment of $613 on 02/12/2007.

The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification and disclosure of the Borrower's debt, so as to confirm the Borrower's overall creditworthiness and actual outstanding debt obligations, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

There is no evidence in the file that a public records search was performed. The non-disclosure of $9,486 in monthly debt prohibits the lender from properly evaluating the Borrower's ability to repay the subject debt.

A recalculation based on the Borrower's more reasonable income and undisclosed debt yields a debt to income ratio (DTI) of | | | 2845661 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated her income as the Director of Operations for an electrical company for 2.11 years, earning $12,150 per month. The loan file contained post-closing income documentation including the Borrower's 2008 pay stubs, dated 02/21/2008 and 03/06/2008, which revealed the Borrower earned a weekly salary of $650, or $2,816 per month. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's more reasonable income and undisclosed debt yields a DTI of 137.86%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as the Director of Operations for an electrical company for 2.11 years, earning $12,150 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845661 |
| 22 | 45769676 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/28/2007, in the amount of $295,000, as a purchase of a single family investment property located in a planned unit development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40% Debt to Income Ratio (DTI). There was a Manual approval dated 03/27/2007, in the loan file. | Stated | $295,000.00 | 2845669 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated his income as a self-employed Owner of a roofing company for 5.5 years, earning $16,000 per month and the Co-Borrower falsely stated her income as an Electrocardiogram (EEG) Technician for 5.5 years, earning $4,500 per month. Research of public records reported the Borrowers filed a Chapter 7 Bankruptcy on 03/16/2009 with the District of Arizona. The petition included a Statement of Financial Affairs, which revealed the Borrower earned $1,733 per month in self-employment income and the Co-Borrower earned $3,339 per month from employment in 2007, the year the subject loan closed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrowers or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of DTI based on the Borrowers' verified income yields a DTI of 116.21%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a self-employed Owner of a roofing company for 5.5 years, earning $16,000 per month and the Co-Borrower falsely stated her income as an Electrocardiogram (EEG) Technician for 5.5 years, earning $4,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845669 |
| 23 | 45830395 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/03/2007, in the amount of $99,540, as a purchase of an attached single family investment property. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 42.42% Debt to Income Ratio (DTI). There was a Manual approval dated 03/28/2007, in the loan file. | Stated | $99,540.00 | 2845671 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 39.03% to 92.58%, which exceeds the Seller's represented DTI of 60%. | | | | 2845671 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xii) LXS 2007-8H_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2007-8H_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with the Truth-in-Lending(TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final executed TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | 2845671 | |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated his primary income as the Owner of a property management company for 2 years and secondary self-employment as an Environmental Consultant for 2 years earning a total monthly income of $11,000. However, the loan file contained post-closing income documentation including the Borrower's 2007 tax return filed jointly with his spouse, which revealed the Borrower's household annual income was negative. The return reflected a negative $6,211 per month for the Borrower's property management business, a monthly income of $93 for his consulting business and $4,954 per month in salaried wages. It should be noted, the Borrower did not state any salaried wages and the return does not reflect the Borrower's spouse's employment; therefore, all income was credited to the Borrower and combined for a total income of negative $1,164 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income of $0 yields an invalid DTI, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated primary income as the Owner of a property management company for 2 years and secondary self-employment as an Environmental Consultant for 2 years earning a total monthly income of $11,000 on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | 2845671 | |
| 24 | 46009130 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/05/2007, in the amount of $305,000, as a purchase of an owner occupied 2 unit residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.03% Debt to Income Ratio (DTI). There was a Manual approval dated 04/03/2007, in the loan file. | Stated | $305,000.00 | 2845675 | |
| . | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a re-calculation of DTI based on the Borrower's verified income results in an increase from 39.03% to 92.58%, which exceeds the Seller's represented DTI of 60%. | | 2845675 | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 12/31/2013 4:50:32 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentatio n of Income - No Red Flags Present - Near Year Income Evidence | Misrepresentatio n of Income | 2 | 3 | The Borrower's misrepresentation is discovered in the facts. The Borrower falsely stated income as a Case Manager for a health care facility for 9 years, earning $7,500 per month. The loan file contained post-closing income documentation including the Borrower's 2006 W-2 form, which revealed the Borrower earned $3,177 per month. In addition, an audit verification of employment was obtained through the employer confirming the Borrower was employed in the same position. It is unlikely the Borrower's income would have decreased considering the Borrower was employed with the same employer in the same line of work.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income yields a DTI of 92.58%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Case Manager for a health care facility for 9 years, earning $7,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845675 |
| | | | | | | | | | | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:50:32 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| # | Loan | | | | | | | | Description | | | | |
|---|------|---|---|---|---|---|---|---|-------------|---|---|---|---|
| 25 | 718056 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/25/1987, in the amount of $34,669. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the loan purpose, lien position, documentation type, Loan to Value/Combined Loan to Value (LTV/CLTV) and Debt to Income Ratio (DTI) could not be determined due to missing documentation. | Unknown | $34,669.00 | 2844666 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrowers, acknowledged and executed by the Borrowers, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844666 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844666 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrowers and maintained in the loan file as evidence of compliance. The Seller represented and warranted that the subject loan complied with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2844666 |
| 26 | 7763501 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/03/1997, in the amount of $40,388. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the loan purpose, documentation type, occupancy, Loan to Value/Combined Loan to Value (LTV/CLTV) and Debt to Income Ratio (DTI) could not be determined due to missing documentation. | Unknown | $40,388.00 | 2844664 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844664 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844664 |
| 27 | 8629198 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/15/2006, in the amount of $64,823. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $64,823.00 | 2844670 |

| # | Loan ID | Program | Code | Finding | Finding | | | Description | | | ID |
|---|---------|---------|------|---------|---------|---|---|-------------|---|---|----|
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844670 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844670 |
| 28 | 8718363 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/04/1991, in the amount of $31,762. There was neither an Automated Underwriting System (AUS)nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, title commitment and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $31,762.00 | 2844667 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan is in compliance with the Act. | | | 2844667 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan is in compliance with the Act. | | | 2844667 |
| 29 | 8859860 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/12/1992, in the amount of $53,457. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $53,457.00 | 2844659 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan is in compliance with the Act. | | | 2844659 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan is in compliance with the Act. | | | 2844659 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:50:32 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final Version_44

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | 8897969 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. There was no critical documentation provided for the file. | Unknown | | 2844671 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The HUD-1 was missing from the loan file.  The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844671 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.  The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844671 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject Note was missing from the loan file.  The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither there is evidence that the note for the subject transaction was provided. | | | 2844671 |
| 31 | 8913246 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed in the amount of $52,505. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. There was no critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $52,505.00 | 2844653 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.  The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844653 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.  The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844653 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject Note was missing from the Loan file.  The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither there is evidence that the note for the subject transaction was provided. | | | 2844653 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 | 9318692 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/01/2001, in the amount of $80,692. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $80,692.00 | 2844669 | |
| | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844669 | |
| | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844669 | |
| | | | | | | | | | **Grand Total of Repurchase Demand** | | $5,996,356.00 | | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:50:32 PM

Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

**717**

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0032968737 | 1st | SARM 2006-7 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/13/2006, in the amount of $540,000, as a cash out refinance of an owner occupied, single family residence located in a planned unit development. The loan was approved as a Full Documentation loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 39.11% Debt to Income Ratio (DTI). There was a Manual approval dated 06/13/2006, in the loan file. | Full | $540,000.00 | 2846322 | |
| . | | | | 1.04 (c) (v) SARM 2006-7_No Fraud  1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his debt obligations. Research of public records and an audit credit report revealed the Borrower acquired two undisclosed mortgages in the amounts of $440,000 and $82,500 with undisclosed monthly mortgage payments of $2,756 and $773 on 05/10/2006, which was only 1 month prior to the subject loan closing on 06/13/2006.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose a $3,529 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846322 | |
| . | | | | 1.04 (c) (v) SARM 2006-7_No Fraud  1.04 (c) (vii) SARM 2006-7_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 2 | 3 | The Borrower misrepresented his employment on the loan application as a self-employed President of a mortgage company as his sole source of income. Research performed through Accurint revealed the Borrower was also a Member/Owner of a title agency, which was active from 05/17/2005 through 09/05/2006 and a President/Owner of a paralegal service company from 03/08/2000 through 06/2011, which covered the subject loan closing date of 06/13/2006.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower falsely stated self-employment as a President of a mortgage company as s e of income for 3.5 years, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846322 | |
| . | | | | 1.04 (c) (v) SARM 2006-7_No Fraud  1.04 (c) (vii) SARM 2006-7_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 3 | 3 | The Borrower misrepresented his intent to occupy the subject property. The loan file included post-closing documents dated 04/20/2007, which was only 10 months after the subject loan closing date of 06/13/2006 that also listed a different mailing location in Phoenix, Arizona.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846322 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:38:45 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final Version_43

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0400731386 | 2nd | SASC 2004-S3 | | Loan Summary | Loan Summary | 0 | 0 | The loan was closed on 08/24/2004, in the amount of $52,000. The data tape indicated that the subject loan was a purchase of an owner occupied property. The loan was approved as a Stated Income/Verified Asset (SIVA) documentation loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a Debt to Income Ratio (DTI) could not be determined. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file included the subject second lien note, the first lien and the subject second lien mortgage and title policy. There were no other critical documentations provided for the file and additional information could be obtained from the data tape that was provided for the subject loan. | Unknown | $52,000.00 | 2846669 | |
| . | | | | 1.04 (b) (xiii) SAS 2004-S3_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAS 2004-S3_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846669 | |
| . | | | | 1.04 (b) (xiii) SAS 2004-S3_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAS 2004-S3_Origination Practices | Failure to Provide the final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846669 | |
| . | | | | 1.04 (c) (xviii) SAS 2004-S3_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846669 | |
| 3 | 0400734695 | 1st | SAIL 2004-10 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 09/08/2004, in the amount of $159,000. The data tape indicated that the subject loan was a purchase of an owner occupied, Condominium. The loan was approved as a Full Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a Debt to Income Ratio (DTI) could not be determined. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file included the subject note, the subject mortgage, the title policy, the homeowner's insurance policy and HUD-1 Settlement Statement. There was no other critical documentations provided for the file and additional information could be obtained from the data tape was provided for the subject loan. | Unknown | $159,000.00 | 2845732 | |

Digital Risk - Loan Review Findings

Cowen_US Bank_Final Version_43    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
Part 3 Pg 202 of 256

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (xiii) SAIL 2004-10_Compliance with Applicable Law - Deemed MnA

1.04 (b) (xviii) (h) SAIL 2004-10_Fees Disclosed - Deemed MnA_Pool 1

1.04 (b) (xviii) (i) SAIL 2004-10_Written Disclosure - Deemed MnA_Pool 1

1.04 (c) (xvii) SAIL 2004-10_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.

The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845732 | |
| . | | | | 1.04 (c) (xviii) SAIL 2004-10_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.

The Seller represented and warranted, in part, that the appraisal complied with FIRREA.

Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845732 | |
| 4 | 108956962 | 1st | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/22/1998, in the amount of $42,433. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file contained a copy of the subject note, the subject mortgage, and a partial title policy. There were no other critical documentations provided for the file and no data tape was provided for the subject loan. | Unknown | $42,433.00 | 2844663 | |
| . | | | | 1.04 (b) (j) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.

The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844663 | |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.

The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844663 | |
| 5 | 108957184 | 1st | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/10/1998, in the amount of $50,460. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file contained a copy of the subject note and the subject mortgage. There were no other critical documentations provided for the file and no data tape was provided for the subject loan. | Unknown | $50,460.00 | 2844665 | |
| . | | | | 1.04 (b) (j) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.

The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844665 | |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.

The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844665 | |

Cowen_US Bank_Final Version_43

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 123968174 | 1st | LXS 2007-8H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/01/2007, in the amount of $175,990.00 as a purchase of an owner-occupied, Condominium. The loan was approved as a Stated Income/Verified Asset (SIVA) Documentation loan, with a 100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 31.93% Debt to Income Ratio (DTI). There was a Manual approval dated 11/28/2006, in the loan file. | Stated | $175,990.00 | 2845676 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income Ratio (DTI) in excess of 60%. Despite the Seller's representations, a recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income of $3,670 per month and the undisclosed monthly debt of $1,349 per month results in an increase in the DTI from 31.93% to 99.84%, which exceeds the Seller's represented DTI of 60%. | | | 2845676 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. Research of public records and an audit credit report, revealed the Borrower purchased an undisclosed property located in Albany, Oregon on 12/19/2006, 14 days prior to the subject loan closing date of 01/02/2007 and obtained a first mortgage in the amount of $156,753 with an undisclosed monthly payment of $1,039 and a second mortgage in the amount of $39,189 with an undisclosed monthly payment of $310.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income of $3,670 per month and the undisclosed monthly debt of $1,349 per month yields a DTI of 99.84%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose $1,349 in additional monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845676 |
| . | | | | 1.04 (b) (xviii) LXS 2007-8H_DTI<br><br>1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Driver with a transportation company earning $7,000 per month on the loan application. An audit re-verification of employment and income was included in the loan file. The loan file contained the Borrower's 2006 W-2 statement and the Borrower's 2007 W-2 statement in the post-closing documents. The subject loan closed on 01/02/2007; therefore, the Borrower's 2006 income would have been used to qualify the Borrower at origination, which revealed the Borrower earned a monthly income of $3,670.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of Debt to Income Ratio (DTI) based on the Borrower's verified income of $3,670 per month and the undisclosed monthly debt of $1,349 per month yields a DTI of 99.84%, which exceeds the Seller's represented DTI of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Driver earning $7,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845676 |
| . | | | | 1.04 (c) (v) LXS 2007-8H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-8H_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 6 | 3 | The Borrower misrepresented her employment on the loan application as a Driver Transportation for 6.58 years as her sole source of employment. Research of public records reported the Borrower filed a Chapter 7 Bankruptcy with the Central District of California on 04/10/2009. The petition included a Statement of Financial Affairs, which revealed the Borrower was an Owner of an undisclosed self-employed business. Additional research performed through Accurint revealed the Borrower's undisclosed self-employed business was active from 01/2005 to the present, which covers the subject loan closing date of 01/02/2007.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Driver Transportation for 6.58 years as her sole source of employment, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845676 |
| 7 | 14868327 | 2nd | SASC 2004-GEL2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/20/2002, in the amount of $20,000, as a purchase of a non-owner occupied Single Family Residence. The loan was approved as a Stated Income/Verified Assets loan, with a 13.84%/90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 43.43% Debt to Income Ratio (DTI). There was a Manual approval dated 11/25/2002, in the loan file. | Stated | $20,000.00 | 2846627 |

# Digital Risk – Loan Review Findings

| # | Loan # | Lien | SAS | Category | Finding | | | Description | Status | Amount | ID |
|---|--------|------|-----|----------|---------|---|---|-------------|--------|--------|-----|
| | | | 1.04 (c) (v) SAS 2004-GEL2_No Fraud<br><br>1.04 (c) (vii) SAS 2004-GEL2_No Event of Default | Failure to Verify Social Security Number | Failure to Verify Social Security Number | 1 | 3 | The subject loan was underwritten without a proper regard to the Borrower's capacity and ability to repay. Verification of the Borrower's identity, so as to confirm the absence of fraud and/or the Borrower's personal investment in the subject property, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan. The origination credit report was missing from the loan file. Public records and Social Security Number validator indicated the Borrower's Social Security number was invalid.<br><br>The Seller represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representation, there is no validation in the file of the Borrower's Social Security number. | | | 2844627 |
| 8 | 20136362 | 1st | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/02/1991, in the amount of $80,050. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the documentation type, Loan to Value/Combined Loan to Value (LTV/CLTV), occupancy and Debt to Income Ratio (DTI) were unable to be determined due to missing documentation. | Unknown | $80,050.00 | 2844654 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844654 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TIL) required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844654 |
| 9 | 20184925 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/16/1990, in the amount of $41,987. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the documentation type, Loan to Value/Combined Loan to Value (LTV/CLTV), occupancy and Debt to Income Ratio (DTI) were unable to be determined due to missing documentation. | Unknown | $41,987.00 | 2844658 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844658 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TIL) required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844658 |
| 10 | 20264289 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/16/1986, in the amount of $48,950. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Title Insurance Policy, an illegible copy of the note and an illegible copy of the deed. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $48,950.00 | 2844652 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844652 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, the copy of the note in file was illegible and there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2844652 |

Cowen_US Bank_Final Version_43

| # | | Program | Ref | Category | Finding | Finding Type | | | Description | Status | Amount | ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | 20360426 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/23/1994, in the amount of $42,700.00. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the documentation type, Loan to Value/Combined Loan to Value (LTV/CLTV), occupancy and Debt to Income Ratio (DTI) were unable to be determined due to missing documentation. | Unknown | $42,700.00 | 2844660 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844660 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TIL) required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844660 | |
| 12 | 20552873 | 1st | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/13/1989, in the amount of $52,350 with a 101.65% Loan to Value/Combined Loan to Value (LTV/CLTV), due to financed mortgage insurance premiums. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Appraisal, Final HUD-1, Title Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the documentation type, occupancy and Debt to Income Ratio (DTI) were unable to be determined due to missing documentation. | Unknown | $52,350.00 | 2844651 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TIL) required a final TIL statement to be acknowledged and executed by the Borrowers and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844651 | |
| 13 | 20625067 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed loan application, the Note, and the Mortgage. There was no other critical documentation provided for the file. | Unknown | | 2844662 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 is missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844662 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844662 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2844662 | |
| 14 | 20644282 | | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed loan application, the Note, and the Mortgage. There was no other critical documentation provided for the file. | Unknown | | 2844655 | |

Cowen_US Bank_Final Version_43

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 is missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844655 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844655 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2844655 |
| | | | | | | | | | | | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 | 20659454 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed loan application, the Note, and the Mortgage. There was no other critical documentation provided for the file. | Unknown | | 2844657 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 is missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844657 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844657 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2844657 |
| 16 | 20952917 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/08/1993, in the amount of $45,153. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan. The loan file only contained the Note, Title Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the loan file contained a mortgage insurance certificate, which reflected the loan was a refinance; however, type of refinance, documentation type, occupancy and Debt to Income Ratio (DTI) were unable to be determined due to missing documentation. | Unknown | $45,153.00 | 2844661 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844661 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TIL) required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844661 |
| 17 | 21025192 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed loan application, the Note, and the Mortgage. There was no other critical documentation provided for the file. | Unknown | | 2844649 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 is missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844649 |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844649 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2844649 | |
| 18 | 21113519 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed loan application, the Note, and the Mortgage. There was no other critical documentation provided for the file. | Unknown | | 2844673 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 is missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844673 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844673 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2844673 | |
| 19 | 21187166 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/03/1992, in the amount of $74,984. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Policy and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, due to missing documentation the documentation type, loan purpose, Loan to Value/Combined Loan to Value (LTV/CLTV), occupancy and Debt to Income Ratio (DTI) could not be determined. | Unknown | $74,984.00 | 2844668 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrowers, acknowledged and executed by the Borrowers, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844668 | |
| . | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TIL) required a final TIL statement to be acknowledged and executed by the Borrowers and maintained in the loan file. The final TIL was missing from the loan file. The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844668 | |
| 20 | 21278502 | SAS 2003-NP3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/24/1992, in the amount of $40,150. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, the documentation type, Loan to Value/Combined Loan to Value (LTV/CLTV), occupancy and Debt to Income Ratio (DTI) were unable to be determined due to missing documentation. | Unknown | $40,150.00 | 2844648 | |

Cowen_US Bank_Final Version_43

| # | Loan Number | Lien | Deal | Guideline | Finding | Finding Detail | | | Comment | | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844648 |
| . | | | | 1.04 (b) (v) SAS 2003-NP3_Compliance with Applicable | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TIL) required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2844648 |
| 21 | 32147621 | 1st | LMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/23/2005, in the amount of $488,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Policy and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. It should be noted, due to missing documentation type, Loan to Value/Combined Loan to Value (LTV/CLTV) and Debt to Income Ratio (DTI) could not be determined. | Unknown | $488,000.00 | 2845254 |
| . | | | | 1.04 (b) (xii) LMT 2006-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xxxiv) LMT 2006-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrowers and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845254 |
| . | | | | 1.04 (b) (xii) LMT 2006-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xxxiv) LMT 2006-2_Origination Practices | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrowers, and maintained in the loan file as evidence of compliance. The Right of Rescission is missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, the loan file did not contain a Right of Rescission, which is evidence of the subject loan's noncompliance with applicable law.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845254 |
| . | | | | 1.04 (b) (xxxv) LMT 2006-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845254 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 12/31/2013 4:38:45 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

Cowen_US Bank_Final Version_43

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | 32542011 | 1st | LXS 2006-11 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/01/2006, in the amount of $769,000, as a purchase of an owner occupied single family residence located in a planned unit development. The loan was approved as a Stated Income/Verified Assets (SIVA) loan, with a 75% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 44.263% Debt to Income Ratio (DTI). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $576,750.00 | 2845385 |
| . | | | | 1.04 (c) (v) LXS 2006-11_No Fraud | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his debt obligations. Research of public records conducted through the Mortgage Electronic Registry System and an audit credit report revealed the Borrower owned an undisclosed property located in Mira Loma, CA and refinanced an undisclosed mortgage on 02/09/2006, 20 days prior to the subject loan closing on 03/01/2006, and obtained a new mortgage in the amount of $386,000 with a monthly payment of $2,638.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Mortgage.

Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose a $2,638 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845385 |
| . | | | | 1.04 (c) (v) LXS 2006-11_No Fraud | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented his disclosed rental income. The Borrower falsely stated rental income in the amount of $2,400 per month for his departing residence. Research of public records revealed the Borrower remained residing in the proposed departure residence from 10/1975 thru 11/2013; therefore, the rental income was misrepresented.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated rental income on his departing residence in the amount of $2,400 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845385 |
| . | | | | 1.04 (c) (v) LXS 2006-11_No Fraud | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 5 | 3 | The Borrower misrepresented his intent to occupy the subject property. The loan application reflected the Borrower was purchasing a new primary residence and his departure residence was to become a rental property. Research conducted through public records revealed the Borrower continued to reside in the departure residence form 10/1975 through 11/2013 and did not occupy the subject property as required.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845385 |
| 23 | 32672586 | 1st | LXS 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 03/28/2006, in the amount of $308,500, as a purchase of an owner occupied Single Family Residence located in a Planned Unit Development (PUD). The loan was approved as a Stated Income, Verified Assets, with a 79.97%/99.93% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 38.54% Debt to Income Ratio (DTI). There was a Manual approval dated 02/24/2006, in the loan file. | Stated | $308,500.00 | 2845424 |
| . | | | | 1.04 (b) (xviii) (D) LXS 2006-8_Underwriting Methodology - Deemed MnA_Pool 1

1.04 (c) (v) LXS 2006-8_No Fraud

1.04 (c) (v) LXS 2006-8_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a home based electrical business, earning $15,000 per month on the loan application. The post-closing tax return, obtained through the modification process for 2006 the year of the subject loan closing, did not reflect any income. The post-closing tax return for 2005 indicated earnings of $1,135 per month.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as an Owner of a home based electrical business, earning $15,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845424 |

Cowen_US Bank_Final Version_43

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 24 | 32751166 | 1st | LXS 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/11/2006, in the amount of $58,000, a purchase of an owner occupied Single Family Residence. The loan was approved as a Stated Income, Verified Assets loan, with an 80%/95% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 30.05% Debt to Income Ratio (DTI). There was a Manual approval dated 04/11/2006, in the loan file. | Stated | $58,000.00 | 2845431 |
| . | | | | 1.04 (c) (v) LXS 2006-8_No Fraud<br><br>1.04 (c) (vii) LXS 2006-8_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a sports card business earning $6,500 per month on the loan application. The Bankruptcy records obtained through Pacer, filed on 07/20/2008, indicated the Borrower earned $5,923 per month in 2006, the year of the subject loan closing.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a sports card business earning $6,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845431 |
| 25 | 32763682 | | LXS 2006-8 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/19/2006, in the amount of $146,400 as purchase of a second home located in a Planned Unit Development (PUD)The loan was approved with an 80%/99.99% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title, Hazard Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $146,400.00 | 2845432 |
| . | | | | 1.04 (b) (xii) LXS 2006-8_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xviii) (G) LXS 2006-8_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xviii) (H) LXS 2006-8_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (c) (xvii) LXS 2006-8_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845432 |
| . | | | | 1.04 (c) (xviii) LXS 2006-8_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 2 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845432 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 12/31/2013 4:38:45 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| # | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 26 | 32902298 | | LXS 2006-11 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/31/2006, in the amount of $412,000, as a purchase of an owner occupied property. The loan was approved with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title, Hazard Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | | $412,000.00 | 2845387 |
| . | | | | 1.04 (b) (xii) LXS 2006-11_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2006-11_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845387 |
| . | | | | 1.04 (c) (xviii) LXS 2006-11_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | | 2845387 |
| 27 | 32904377 | | LXS 2006-11 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 05/17/2006, in the amount of $223,920, as a purchase of a property. The loan was approved with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title, Hazard Insurance and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | | $223,920.00 | 2845388 |
| . | | | | 1.04 (b) (xii) LXS 2006-11_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2006-11_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | 2845388 |
| . | | | | 1.04 (c) (xviii) LXS 2006-11_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 2 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | | 2845388 |
| 28 | 32980104 | 1st | LXS 2006-15 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/15/2006, in the amount of $538,500, as a purchase of an owner occupied condominium. The loan was approved as a Stated Income, Verified Assets loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 42.57% Debt to Income Ratio (DTI). There was a Manual approval dated 06/30/2006, in the loan file. | Stated | | $538,500.00 | 2845398 |
| . | | | | 1.04 (c) (v) LXS 2006-15_No Fraud<br><br>1.04 (c) (vii) LXS 2006-15_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented his employment on the loan application as a Pediatric Dentist for 2.5 years as his sole source of employment. Public records and the post-closing tax returns obtained through the modification process for the year 2008, revealed the Borrower was also a self-employed Dentist from 08/20/2003.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Pediatric Dentist for 2.5 years as his sole source of employment, which constituted an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2845398 |

Cowen_US Bank_Final Version_43

| # | Loan # | Lien | Pool | Code / Exception | Finding | Finding Category | | Description | Type | Amount | ID |
|---|--------|------|------|------------------|---------|------------------|---|-------------|------|--------|----|
| 29 | 33079369 | 1st | LXS 2006-15 | | Loan Summary | Loan Summary | 0 0 | The subject loan closed on 07/13/2006, in the amount of $89,250.00, as a cash out refinance of a non-owner occupied Single Family Residence. The loan was approved as a No Income, No Assets (NINA) loan, with a 75% Loan to Value/Combined Loan to Value (LTV/CLTV). There was a Manual approval dated 07/18/2006, in the loan file. | NIVA | $89,250.00 | 2845401 |
| . | | | | 1.04 (c) (v) LXS 2006-15_No Fraud<br><br>1.04 (c) (vii) LXS 2006-15_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 3 | The Borrower misrepresented his debt obligations. The audit credit report indicated the Borrower acquired an undisclosed mortgage in 07/2006, the same month as the subject loan closing, in the amount of $407,000 with a monthly payment of $2,679 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose a $2,679 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845401 |
| 29 | 33105735 | 1st | LXS 2006-15 | | Loan Summary | Loan Summary | 0 0 | The subject loan closed on 07/12/2006, in the amount of $431,097, as a purchase of an owner occupied Single Family Residence located in a Planned Unit Development (PUD). The loan was approved as a Stated Income, Verified Assets loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 49.71% Debt to Income Ratio (DTI). There was a Manual approval dated 06/15/2006, in the loan file. | Stated | $431,097.00 | 2845405 |
| . | | | | 1.04 (b) (xii) LXS 2006-15_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2006-15_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The disclosed finance charge ($740,798.13) is ($159.79) below the actual finance charge ($740,957.92). The Truth in Lending Act considers<br><br>The disclosed finance charge is inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d) (1)).<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845405 |
| . | | | | 1.04 (c) (v) LXS 2006-15_No Fraud<br><br>1.04 (c) (vii) LXS 2006-15_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 2 3 | The Borrower misrepresented his intent to occupy the subject property. Public records and Utility records indicated the Borrower remained at the proposed departure residence from 12/2002 to 09/2013 and also indicated other individuals occupied the subject property from 07/2006 to 08/2013.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845405 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 12/31/2013 4:38:45 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repo

Cowen_US Bank_Final Version_43

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | 33163841 | | LXS 2006-15 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/10/2006, in the amount of $164,000, as a cash-out refinance. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title, Hazard Insurance, and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $164,000.00 | 2845406 | |
| . | | | | 1.04 (b) (xii) LXS 2006-15_Compliance with Applicable Law - Deemed MnA   1.04 (b) (xvii) LXS 2006-15_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrowers and maintained in the loan file. The final TIL was missing from the loan file.   The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.   Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.   Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845406 | |
| . | | | | 1.04 (c) (xviii) LXS 2006-15_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.   The Seller represented and warranted, in part, that the appraisal complied with FIRREA.   Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845406 | |
| . | | | | | | Grand Total of Repurchase Demand | | | | | $4,902,624.00 | | |

.
.

Cowen_US Bank_Final Version_29

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 000000019159672 | 1st | SASC 2004-21XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/13/2004, in the amount of $124,000, as a purchase of a non owner occupied property. The subject loan had an 80%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Note, Mortgage, Homeowners Insurance Policy, Hud-1 settlement statement and Title Policy. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $124,000.00 | 2846564 | |
| . | | | | 1.04 (c) (viii) SAS 2004-21XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 1 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846564 | |
| . | | | | 1.04 (c) (xvii) SAS 2004-21XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with origination practices. The Truth in Lending Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with the origination practices.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the origination practices. | | | 2846564 | |
| 2 | 000000019393552 | 1st | SARM 2005-6XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/10/2004, in the amount of $148,000, as a purchase of a second home detached single family residence. The subject loan was approved with an 80%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Note, Mortgage, final HUD-1 Settlement Statement, Title Policy and Homeowners Insurance Policy. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $148,000.00 | 2846186 | |
| . | | | | 1.04 (b) (xii) SARM 2005-6XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SARM 2005-6XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846186 | |
| . | | | | 1.04 (c) (xviii) SARM 2005-6XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846186 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final Version_29

| # | Loan Number | Lien | Deal | Category | Finding Type | Finding Name | | | Description | Occupancy | Amount | Loan ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 000000019413442 | 1st | SARM 2005-6XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/6/2004, in the amount of $214,400, as a purchase of a non owner occupied detached single family residence located in a unit development. The subject loan was approved with an 80%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was manually stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Note, Mortgage, Title Policy and Homeowner's Insurance Policy. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $214,400.00 | 2846187 | |
| | | | | 1.04 (b) (xii) SARM 2005-6XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SARM 2005-6XS_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 settlement statement to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846187 | |
| | | | | 1.04 (b) (xii) SARM 2005-6XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SARM 2005-6XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846187 | |
| | | | | 1.04 (c) (xviii) SARM 2005-6XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 4 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846187 | |
| 4 | 000000019597343 | 1st | SASC 2005-7XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/28/2005, in the amount of $359,650, as a cash-out refinance of a non-owner occupied, 4-unit property. The loan was approved as a Stated Income/Verified Asset loan program, with a 74.16%/90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 35% Debt to Income Ratio (DTI). There was a Manual approval dated 01/27/2005, in the loan file. The subject loan closed with a second lien in the amount of $76,850. | Stated | $359,650.00 | 2846703 | |
| | | | | 1.04 (b) (xii) SAS 2005-7XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAS 2005-7XS_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act (TILA) required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The Truth in Lending Act may apply if an owner plans to occupy an investment property for more than 14 days during the coming year. (Commentary to 12 CFR Sec. 1026.3(a)). TILA considers a disclosed APR inaccurate if it is lower than the actual APR by more than .125% on a regular mortgage loan. (12 CFR Sections 1026.17(f), 1026.19(a)(2), & 1026.22(a)(2)). The disclosed APR (7.169%) varies from the actual APR (8.7568%).<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, the APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846703 | |
| | | | | 1.04 (b) (xii) SAS 2005-7XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAS 2005-7XS_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 2 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act (TILA) required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.<br><br>The Truth in Lending Act may apply if an owner plans to occupy an investment property for more than 14 days during the coming year. (Commentary to 12 CFR Sec. 1026.3(a)). TILA considers a disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 1026.18(d)(1)). The disclosed finance charge ($485,475.47) is lower than the actual finance charge($670,384.65) by ($184,909.18), which is a 1.5878% difference.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, the APR and/or points and fees were not adequately disclosed to the Borrower.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846703 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| . | | | 1.04 (c) (v) SAS 2005-7XS_No Fraud<br><br>1.04 (c) (vii) SAS 2005-7XS_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrower misrepresented his employment; he was stated as the Owner of a business consulting company for 6 years as his sole source of self employment. Research conducted through Accurint on the Borrower's business report revealed that the Borrower had two undisclosed businesses that were open and active at the time of closing. The Borrower had a public benefit business with an operation date from 04/05/2002 to the present and an additional business with an operation date from 08/30/2001 to the present, which covered the subject loan closing date of 01/28/2005. Accurint also revealed the undisclosed businesses were registered in the Borrower's name at the Borrower's primary residence.<br><br>The subject loan was underwritten without proper regard to the Borrower's reasonable ability to repay. Verification and disclosure of the Borrower's employment, so as to confirm the accuracy and stability of the Borrower's employment and adequacy of his financial means, was a significant factor in determining the Borrower's reasonable ability to repay the subject loan.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Without properly verifying the employment status of the Borrower, the lender could not properly evaluate the Borrower's ability to earn an income and support the subject obligation.<br><br>Despite the Seller's representations, the Borrower falsely stated self-employment as the Owner of a Business Consultant company for 6 years, as his sole source of self employment, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | 2846703 | |
| 5 | 000000019597848 | 1st | SARM 2005-6XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/22/2004, in the amount of $215,600, as a cash out refinance of a non owner occupied detached single family residence. The loan was approved as a No Documentation loan (No Income, No Employment, No Asset Verification), with a 70% Loan to Value/Combined Loan to Value. There was a Manual approval dated 12/14/2004, in the loan file. | NINENA | $215,600.00 | 2846193 | |
| . | | | 1.04 (c) (v) SARM 2005-6XS_No Fraud<br><br>1.04 (c) (vii) SARM 2005-6XS_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrowers misrepresented their debt obligations. A review of the Mortgage Electronic Registry System and the audit credit report reflected the Borrowers obtained an undisclosed refinance on the same day as the subject loan closing of 12/22/2004 on a property located in Hesperia, CA in the amount of $229,500 with a monthly payment of $1,458. The Borrowers paid off an existing disclosed mortgage with a payment of $1,101, which results in a payment increase of $357.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>The non-disclosure of a $357 monthly debt prohibits the lender from properly evaluating the Borrowers' ability to repay the subject debt. Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $357 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | 2846193 | |
| 6 | 000000019634534 | 1st | SARM 2005-8XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/27/2005, in the amount of $53,600, as a purchase of a non-owner occupied, 3-unit residence. The loan was approved as a Stated Income/Stated Asset documentation loan, with an 80%/95% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 37% Debt to Income Ratio (DTI). There was a Manual approval dated 01/26/2005, in the loan file. | SISA | $53,600.00 | 2846197 | |
| . | | | 1.04 (c) (v) SARM 2005-8XS_No Fraud<br><br>1.04 (c) (vii) SARM 2005-8XS_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented his employment on the loan application as the Owner of a home repair business for 6 years. Research of public records revealed the Borrower filed a Chapter 7 bankruptcy with the Western District of Pennsylvania on 07/14/2007. The petition included a Statement of Financial Affairs, which revealed the Borrower started a rental property investment business on 01/01/2005, 26 days prior to the subject loan closing date of 01/27/2005. Furthermore, the Statement of Financial Affairs indicated the Borrower was also employed as a Bus Driver with an undisclosed employer as a wage earner for 4 years prior to the bankruptcy filing date of 07/14/2007, which would have also covered the subject loan closing date. Additional research conducted through Accurint revealed that the Borrower incorporated the undisclosed business on 12/28/2004 to the present date, which was 1 month prior to the subject loan closing and the business was registered in the Borrower's name at the Borrower's primary residence.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated self employment as the Owner of one home repair business for 6 years as his sole source of employment, which constituted an event of default under the executed Mortgage and Deed of Trust. | | 2846197 | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (c) (v) SARM 2005-8XS_No Fraud | Misrepresentation of Income - Red Flags Present - Near Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented as disclosed income in the loan file. The Borrower falsely stated income as the Owner of a home based home construction business for 6 years, earning $6,000 per month for the Borrower. Research of public records revealed the Borrower filed a Chapter 7 bankruptcy with the Western District of Pennsylvania on 07/14/2007. The petition included a Statement of Financial Affairs, which revealed the Borrower started a rental property investment business on 01/01/2005, 26 days prior to the subject loan closing date of 01/27/2005. Furthermore, the Statement of Financial Affairs indicated that the Borrower was also employed as a Bus Driver with an undisclosed employer as a wage earner for 4 years prior to the bankruptcy filing date of 07/14/2007, which would have also covered the subject loan closing date. Additional research conducted through Accurint revealed that the Borrower incorporated the undisclosed business on 12/28/2004 to the present date, which was 1 month prior to the subject loan closing and the business was registered in the Borrower's name at the Borrower's primary residence. The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Despite the Seller's representations, the Borrower falsely stated income as a self-employed Owner of a home based home construction business for 6 years, earning $6,000 per month for the Borrower, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846197 | |
| | | | 1.04 (c) (vii) SARM 2005-8XS_No Event of Default | | | | | | | | | | |
| 7 | 000000019641448 | 1st | SASC 2005-7XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/11/2005, in the amount of $303,200, as a purchase of a non owner occupied four unit dwelling. The subject loan had an 80%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Note, Mortgage, Title Policy and Homeowner's insurance. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $303,200.00 | 2846704 | |
| . | | | 1.04 (b) (xii) SAS 2005-7XS_Compliance with Applicable Law - Deemed MnA | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act (TILA) required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846704 | |
| | | | 1.04 (c) (xvii) SAS 2005-7XS_Origination Practices | | | | | | | | | | |
| . | | | 1.04 (c) (xviii) SAS 2005-7XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846704 | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final Version _29

| # | Loan Number | Lien | Deal | Sub-category | Finding | Finding | | | Narrative | Doc Type | Amount | Ref |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 000000019680297 | 1st | SASC 2005-7XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/01/2005, in the amount of $135,150, as a purchase of a non-owner occupied, single family residence. The loan was approved as a stated income/verified asset (SIVA) documentation loan, with a 79.99%/89.99% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 45% Debt to Income Ratio (DTI). There was a Manual approval dated 02/09/2005, in the loan file. | Stated | $135,150.00 | 2846705 |
| | | | | 1.04 (c) (v) SAS 2005-7XS_No Fraud<br><br>1.04 (c) (vii) SAS 2005-7XS_No Event of Default | Misrepresentatio n of Debt Obligations - No Red Flags Present | Misrepresentatio n of Debt Obligations | 1 | 3 | The Borrower misrepresented her debt obligations. The Mortgage Electronic Registry System report and the audit credit report revealed that the Borrower opened two undisclosed mortgages. The first undisclosed mortgage was in the amount of $409,500 that resulted in an undisclosed monthly mortgage payment of $4,634 per month and was opened in 10/2004, which was 4 months prior to the subject loan closing and secured a property located in West Palm Beach, Florida. The second undisclosed mortgage was a refinance transaction of the Borrower's primary home in which the Borrower opened an undisclosed home equity line in the amount of $85,000 in 08/2004. The undisclosed monthly debt for the $85,000 home equity line securing the second lien for the Borrower's primary home was calculated using a rate of 5% over 30 years and resulted in an undisclosed monthly payment of $456. The Borrower's undisclosed mortgages totaled $494,500 and resulted in a total undisclosed monthly mortgage payment of $5,090.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose $5,090 in monthly debts, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846705 |
| | | | | 1.04 (c) (v) SAS 2005-7XS_No Fraud<br><br>1.04 (c) (vii) SAS 2005-7XS_No Event of Default | Misrepresentatio n of Income - Red Flags Present - Same Year Income Evidence | Misrepresentatio n of Income | 2 | 3 | The Borrower misrepresented disclosed income. The Borrower falsely stated income as a Professor earning $9,500 per month on the loan application. An audit re-verification of employment and income was obtained, which revealed the Borrower earned $7,430 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Professor earning $9,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846705 |
| 9 | 000000019737048 | 1st | SASC 2005-7XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/31/2005, in the amount of $541,246. The data tape indicated that the subject loan was approved with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's the First Lien Note, the First Lien Mortgage, the HUD-1, the HOI and the title report. There were no other critical documentations provided for the file that was represented on the data Tape by the Seller. | Unknown | $541,246.00 | 2846706 |
| | | | | 1.04 (b) (xii) SAS 2005-7XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAS 2005-7XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846706 |
| | | | | 1.04 (c) (xviii) SAS 2005-7XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846706 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

# Digital Risk - Loan Review Findings

Cowen_US Bank_Final Version_29    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment part 01 of 50

| 10 | 000000019760354 | 1st | SARM 2005-8XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/18/2005 in the amount of $320,000. The data tape indicated that the subject loan was approved with a 79.04% Loan to Value. Underwritten Loan to Value is 79.04%. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's HUD-1, HOI, The First Lien Note, the First Lien Mortgage, and the title report. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $320,000.00 | 2846201 | |
| . | | | | 1.04 (b) (xii) SARM 2005-8XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SARM 2005-8XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846201 | |
| . | | | | 1.04 (c) (xviii) SARM 2005-8XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846201 | |
| 11 | 000000019780295 | 1st | SASC 2005-7XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/08/2005 in the amount of $56,250. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, title, HUD-1, Hazard insurance, and the Mortgage. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $56,250.00 | 2846707 | |
| . | | | | 1.04 (b) (xii) SAS 2005-7XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAS 2005-7XS_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846707 | |
| . | | | | 1.04 (b) (xii) SAS 2005-7XS_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAS 2005-7XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846707 | |
| . | | | | 1.04 (c) (xviii) SAS 2005-7XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846707 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 12 | 000000019813369 | 1st | SARM 2005-8XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/01/2005, in the amount of $39,750, as a purchase of a non owner occupied detached single family residence. The loan was approved as an Alt-A Reduced Documentation loan, with a 75%/100% Loan to Value/Combined Loan to Value, and a 24.679% Debt to Income ratio. There was a Manual approval dated 02/10/2005, in the loan file. | SISA | $39,750.00 | 2846203 | |
| . | | | | 1.04 (c) (v) SARM 2005-8XS_No Fraud  1.04 (c) (vii) SARM 2005-8XS_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as an Assistant Manger for a Financial Institution for 2.6 years, earning $5,000 per month on the loan application. The Borrower provided post closing income documentation for the purpose of a short sale. The Borrower provided a W-2 from the subject year loan closing 2005, which revealed the Borrower's actual income was $3,335 per month.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as an Assistant Manager of a Financial Institution earning $5,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846203 | |
| 13 | 000000030003677 | 1st | SARM 2005-8XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/15/2004, in the amount of $192,948, as a purchase of a non owner occupied detached single family residence located in a Planned Unit Development. The subject loan had an 80%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's final HUD-1 Settlement Statement, Note, Mortgage, Homeowners Insurance and Title Policy. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $192,948.00 | 2846204 | |
| . | | | | 1.04 (b) (xii) SARM 2005-8XS_Compliance with Applicable Law - Deemed MnA  1.04 (c) (xvii) SARM 2005-8XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.

The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846204 | |
| . | | | | 1.04 (c) (xviii) SARM 2005-8XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.

The Seller represented and warranted, in part, that the appraisal complied with FIRREA.

Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846204 | |
| 14 | 000000030023576 | 1st | SARM 2005-8XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/30/2004, in the amount of $171,500, as a purchase of a non owner occupied detached single family residence. The subject loan was approved with a 70%/95% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Note, Mortgage, final HUD-1 Settlement Statement, Title Policy and Homeowners insurance Policy. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $171,500.00 | 2846205 | |
| . | | | | 1.04 (b) (xii) SARM 2005-8XS_Compliance with Applicable Law - Deemed MnA  1.04 (c) (xvii) SARM 2005-8XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.

The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.

Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.

Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846205 | |

Cowen_US Bank_Final Version_29

| | Loan # | Lien | Deal | Col 1 | Finding | Sub-Finding | | | Description | Status | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (xviii) SARM 2005-8XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846205 |
| 15 | 000000030132740 | 1st | SARM 2005-8XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/28/2005 in the amount of $80,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, title, HUD-1, Hazard insurance, and the Mortgage. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $80,000.00 | 2846208 |
| . | | | | 1.04 (b) (xii) SARM 2005-8XS_Compliance with Applicable Law - Deemed MnA  1.04 (c) (xvii) SARM 2005-8XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846208 |
| . | | | | 1.04 (c) (xviii) SARM 2005-8XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846208 |
| 16 | 000000030215362 | 1st | SASC 2005-7XS | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/24/2005, in the amount of $100,000. The data tape indicated that the subject loan was approved with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV) and did not provide any additional information on the subject loan. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's HUD-1, HOI, Note, the Mortgage, and the title report. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $100,000.00 | 2846715 |
| . | | | | 1.04 (b) (xii) SAS 2005-7XS_Compliance with Applicable Law - Deemed MnA  1.04 (c) (xvii) SAS 2005-7XS_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846715 |
| . | | | | 1.04 (c) (xviii) SAS 2005-7XS_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 2 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846715 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 17 | 000000030443857 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/06/2005, in the amount of $49,100, for the purchase of an owner occupied Single Family Residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 17.66% Debt to Income Ratio (DTI). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. | Stated | $49,100.00 | 2845347 | |
| | | | 1.04 (c) (v) LXS 2005-4_No Fraud | Misrepresentation of Income - No Red Flags Present | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated gross income as $595 per month on the loan application for the proposed departure residence. The Borrower remained at the departure residence and did not occupy the subject property and therefore; the rental income was invalid. | | | 2845347 | |
| | | | 1.04 (c) (vii) LXS 2005-4_No Event of Default | - Same Year Income Evidence | | | | The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. | | | | |
| | | | | | | | | In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. | | | | |
| | | | | | | | | Despite the Seller's representations, the Borrower falsely stated rental income as $595 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | |
| | | | 1.04 (c) (v) LXS 2005-4_No Fraud | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented her intent to occupy the subject property. Public records indicated the Borrower remained at her departing residence from 09/1999 to 01/2013 and did not occupy the subject property. A post closing tax return obtained through the modification process for 2007 the subsequent 2 years following the subject loan closing, indicated the subject property as an investment property. | | | 2845347 | |
| | | | 1.04 (c) (vii) LXS 2005-4_No Event of Default | | | | | The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan. | | | | |
| | | | | | | | | In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. | | | | |
| | | | | | | | | Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | |
| 18 | 000000030621809 | 1st | LXS 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/06/2005, in the amount of $83,200. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, title, Hazard insurance, and the Mortgage. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $83,200.00 | 2845311 | |
| | | | 1.04 (b) (xii) LXS 2005-2_Compliance with Applicable Law - Deemed MnA | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file. | | | 2845311 | |
| | | | 1.04 (c) (xvii) LXS 2005-2_Origination Practices | | | | | The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. | | | | |
| | | | | | | | | Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | | |
| | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | |
| | | | 1.04 (b) (xii) LXS 2005-2_Compliance with Applicable Law - Deemed MnA | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file. | | | 2845311 | |
| | | | 1.04 (c) (xvii) LXS 2005-2_Origination Practices | | | | | The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. | | | | |
| | | | | | | | | Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | | |
| | | | | | | | | Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (c) (xviii) LXS 2005-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845311 |
| 19 | 000000030663876 | 1st | LXS 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/13/2005, in the amount of $612,500. The data tape indicated that the subject loan was approved with a 79.04% Loan to Value/Combined Loan to Value (LTV/CLTV) and did not provide any additional information on the subject loan. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's HUD-1, HOI, Note, the Mortgage, and the title report. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $612,500.00 | 2845314 |
| . | | | | 1.04 (b) (xii) LXS 2005-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845314 |
| . | | | | 1.04 (c) (xviii) LXS 2005-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 2 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845314 |
| 20 | 000000030675409 | 1st | LXS 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 04/22/2005, in the amount of $312,000. The calculation of the Loan to Value/Combined Loan to Value (LTV/CLTV) and The data tape indicated that the subject loan was approved with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's First Lien Note, the First Lien Mortgage, the HUD-1, the HOI and the title report. There were no other critical documentations provided for the file that was represented on the data Tape by the Seller. The subject loan was also approved with a second lien on 04/22/2005, in the amount of $78,000. | Unknown | $312,000.00 | 2845316 |
| . | | | | 1.04 (b) (xii) LXS 2005-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845316 |
| . | | | | 1.04 (c) (xviii) LXS 2005-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845316 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 21 | 000000030786719 | 1st | LXS 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 3/04/2005, in the amount of $336,000, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 84% (illegible) Loan to Value/Combined Loan to Value, and a 43.41% debt to income ratio. There was a manual approval dated 4/29/2005, in the loan file. | Stated | $336,000.00 | 2845324 |
| | | | 1.04 (b) (xii) LXS 2005-2_Compliance with Applicable Law - Deemed MnA  1.04 (c) (xvii) LXS 2005-2_Origination Practices | Under-Disclosed Fees / APR | Loan Fees Under-Disclosed | 1 | 3 | The subject loan did not comply with applicable federal, state, or local law. The Truth in Lending Act required written disclosure as to the Annual Percentage Rate (APR) and/or applicable fees, such disclosure was required to be acknowledged and executed by the Borrower, and evidence of such disclosure was required to be maintained in the loan file.  The disclosed finance charge ($509,268.30) is ($302.34) below the actual finance charge ($509,570.64). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, the APR and/or points and fees were not adequately disclosed to the Borrower.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845324 |
| | | | 1.04 (c) (v) LXS 2005-2_No Fraud  1.04 (c) (vii) LXS 2005-2_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. Per public records and the audit credit report, the Borrower had acquired a $64,800 home equity line in 2/2005 with a monthly payment of $176 per month.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose a $176 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845324 |
| | | | 1.04 (c) (v) LXS 2005-2_No Fraud  1.04 (c) (vii) LXS 2005-2_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 3 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Youth Correction Officer/Prison earning $9,200 per month on the loan application. The loan file contained a verification of employment from the Borrower's original employer dated 5/01/2005, which reflects the Borrower's true income as $5,912.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower falsely stated income as a Youth Correction Officer/Prison earning $9,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2845324 |
| 22 | 000000030840318 | 1st | LXS 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/03/2005, in the amount of $650,000, as a purchase of an owner occupied three unit property. The loan was approved as a Stated Income/Verified Asset loan, with a 79.74%/89.76% Loan to Value/Combined Loan to Value, and a 39.33% debt to income ratio. There was a manual approval dated 6/23/2005, in the loan file. | Stated | $650,000.00 | 2845329 |
| | | | 1.04 (c) (v) LXS 2005-2_No Fraud  1.04 (c) (vii) LXS 2005-2_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented her debt obligations. Per public records and an audit credit report, the Borrower had purchased two properties prior to the purchase of the subject property dated 5/23/2005. The first property located in Los Angeles, CA was purchased on 5/17/2005 in the amount of $630,000 with a payment of $4,191. The second property located in Los Angeles, CA was purchased on 5/18/2005 in the amount of $168,000 with a payment of $1,117.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose $5,308 in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845329 |

Copyright 2013, Digital Risk, LLC.     Internal & Confidential - Do Not Duplicate     Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

# Digital Risk – Loan Review Findings

Cowen_US Bank_Final Version_29    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
part 7g-2 Pg 91 of 256

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 000000030991038 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/30/2005 in the amount of $329,200 for a Purchase of a second home detached single family residence located in a Planned Unit Development. The loan closed with 89.999/99.034% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Final HUD-1 Settlement Statement, the Note, the Mortgage, Title Policy and home owner's insurance policy. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $329,200.00 | 2845352 | |
| | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA 1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845352 | |
| | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845352 | |
| 24 | 000000031153307 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/01/2005, in the amount of $236,000. There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title, Hazard Insurance, final HUD-1 and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $236,000.00 | 2845356 | |
| | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA 1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845356 | |
| | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845356 | |

# Digital Risk - Loan Review Findings

Cowen_US Bank_Final Version_29    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment part 9 Pg 227 of 256

| 25 | 000000031175011 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/30/2005 in the amount of $101,600, as a purchase of a condominium with an 80%/95% Loan to Value/Combined Loan to Value (LTV/CLTV). There was neither an Automated Underwriting System nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's signed Note, Title, Hazard insurance, 2nd page of the loan application, final HUD-1 and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $101,600.00 | 2845357 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending (TIL) statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845357 | |
| . | | | | 1.04 (c) (xvii) LXS 2005-4_Origination Practices | | | | | | | | | |
| . | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845357 | |
| 26 | 000000031195126 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/13/2005, in the amount of $90,600, as a purchase transaction. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Hazard insurance, final HUD-1, Title commitment and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $90,600.00 | 2845358 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845358 | |
| . | | | | 1.04 (c) (xvii) LXS 2005-4_Origination Practices | | | | | | | | | |
| . | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845358 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| 27 | 000000031232937 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/07/2005, in the amount of $115,800, as a rate and term refinance transaction. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Hazard insurance, final HUD-1, Title commitment and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $115,800.00 | 2845360 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845360 | |
| . | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 2 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845360 | |
| 28 | 000000031330905 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/08/2005, in the amount of $550,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Hazard insurance, Title commitment and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $550,000.00 | 2845365 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was not provided.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845365 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 2 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845365 | |
| . | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845365 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final Version_29

| 29 | 000000031400765 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/06/2005, in the amount of $274,100, as a purchase transaction. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Hazard insurance, final HUD-1, Title commitment and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $274,100.00 | 2845368 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845368 | |
| . | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845368 | |
| 30 | 000000031416324 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/10/2005, in the amount of $32,000, as a purchase transaction with a 76.2%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Note, Mortgage, Title, final HUD-1 settlement statement and home owner's insurance. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $32,000.00 | 2845371 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845371 | |
| . | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845371 | |
| 31 | 000000031423346 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/10/2005, in the amount of $556,000, as a cash out refinance of an owner occupied detached single family residence. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file contained the Borrowers' Note, Mortgage, HUD-1 settlement statement, Title and home owner's insurance. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $556,000.00 | 2845372 | |
| . | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845372 | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal under the Financial Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required to be a minimum, that complies or employs with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845372 | |
| 32 | 000000033715053 | 1st | | LXS 2007-SH | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/20/2006, as a purchase of an owner occupied three unit dwelling. The loan was approved as a Stated Income/Verified Asset loan, with a 100% Loan to Value/Combined Loan to Value, and a 44.951% Debt to Income ratio. There was a Manual approval dated 12/19/2006, in the loan file. | Stated | $460,000.00 | 2845581 | |
| . | | | | | 1.04 (b) (xviii) LXS 2007-SH_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income ratio in excess of 60%.<br><br>Despite the Seller's representations, a re-calculation of the Debt to Income ratio based on the Borrower's verified income and undisclosed debt results in an increase from 44.951% to 72.49%, which exceeds the Seller's represented Debt to Income ratio of 60%. | | | 2845581 | |
| . | | | | | 1.04 (b) (xviii) LXS 2007-SH_DTI<br><br>1.04 (c) (v) LXS 2007-SH_No Fraud<br><br>1.04 (c) (vii) LXS 2007-SH_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 2 | 3 | The Borrower misrepresented her debt obligations. A review of Mortgage Electronic Registry Systems and the audit credit report reflected the Borrower obtained an undisclosed mortgage prior to the subject loan closing of 12/20/2006. On 09/07/2006, the Borrower obtained an undisclosed mortgage on a property located in Malden, Massachusetts in the amount of $265,500 with a monthly payment of $2,008.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of the Debt to Income ratio based on the Borrower's undisclosed debt and verified income yields a Debt to Income ratio of 72.49%, which exceeds the Seller's represented Debt to income ratio of 60%.<br><br>Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose a $2,008 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845581 | |
| . | | | | | 1.04 (b) (xviii) LXS 2007-SH_DTI<br><br>1.04 (c) (v) LXS 2007-SH_No Fraud<br><br>1.04 (c) (vii) LXS 2007-SH_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 5 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated primary income as a Nurse for 8 years and had secondary income as a Nurse for 8 years at the earning a combined income of $9,366 per month. The Borrower provided post closing income documentation from the subject year loan closing 2006 for the purpose of obtaining a short sale. The Borrower's 2006 income as reported on the Borrower's federal tax return reflected the Borrower's total earnings were $7,356 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of the Debt to Income ratio based on the Borrower's verified income and undisclosed debt yields a Debt to Income ratio of 72.49%, which exceeds the Seller's represented Debt to income ratio of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Nurse earning $9,366 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845581 | |
| . | | | | | 1.04 (c) (v) LXS 2007-SH_No Fraud<br><br>1.04 (c) (vii) LXS 2007-SH_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 6 | 3 | The Borrower misrepresented her intent to occupy the subject property. The Borrower continued to reside in the departing residence disclosed on the loan application after the subject loan closing of 12/20/2006. The Borrower provided post closing federal tax returns for the purpose of obtaining a short sale. The Borrower provided both the subject year loan closing and subsequent year tax returns which indicated the Borrower's mailing address was the same as the departing address disclosed on the loan application. In addition, both Schedule E's reflected the subject property as a rental property. A search of Vehicle Registrations reflects the Borrower registered two vehicles on 04/09/2007 and 06/15/2007 using the departing address disclosed on the loan application.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845581 | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final Version_29

| 33 | 000000033732223 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/26/2006, in the amount of $450,000, as a purchase of a non owner occupied attached single family residence. The loan was approved as a No Income/Verified Assets loan, with a 100% Loan to Value/Combined Loan to Value. There was a Manual approval dated 12/26/2006, in the loan file. | NIVA | $450,000.00 | 2845583 |
| | | | 1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented her debt obligations. A review of the Mortgage Electronic Registry Systems and the audit credit report reflect the Borrower obtained three undisclosed mortgages prior to and within 30 days of the subject loan closing of 12/26/2006. On 12/07/2006, the Borrower obtained a first and second mortgage on a property located in North Las Vegas, Nevada. The first mortgage was in the amount of $328,000 with a monthly payment of $2,517 and the second mortgage was in the amount of $82,000 with a monthly payment of $939. On 01/25/2007, the Borrower obtained an undisclosed mortgage on a property located in Quartz Hill, California with a loan amount of $91,000 and a monthly payment of $1,078.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose $4,534 in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845583 |
| 34 | 000000033748153 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 01/31/2007, in the amount of $169,900, as a purchase of a non owner occupied condominium. The loan was approved as a Stated Income/Verified Asset loan, with a 100% Loan to Value/Combined Loan to Value, and a 36.74% Debt to Income ratio. There was a Manual approval dated 01/29/2007, in the loan file. | Stated | $169,900.00 | 2845587 |
| | | | 1.04 (b) (xviii) LXS 2007-5H_DTI<br><br>1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Owner of a Mortgage Brokerage business for 2.9 years, earning $18,000 per month on the loan application. The Borrower provided post closing income documentation for the purpose of obtaining a short sale. The Borrower provided federal income tax returns from the subject year loan closing 2007, which revealed the Borrower had a loss of $1,105 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>A recalculation of the Debt to Income ratio based on the Borrower's verified income results in an invalid Debt to Income ratio, which exceeds the Seller's represented Debt to Income ratio of 60%.<br><br>Despite the Seller's representations, the Borrower falsely stated income as an Owner of a Mortgage Brokerage business earning $18,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845587 |
| | | | 1.04 (b) (xviii) LXS 2007-5H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 2 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income ratio in excess of 60%.<br><br>Despite the Seller's representations, a re-calculation of the Debt to Income ratio based on the Borrower's verified income and undisclosed debt results in an increase from 44.951% to 72.49%, which exceeds the Seller's represented Debt to Income ratio of 60%. | | | 2845587 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

| 35 | 000000033752783 | 1st | LXS 2007-5H | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 12/28/2006, in the amount of $147,500, as a purchase of a non owner occupied detached single family residence. The loan was approved as a Stated Income/Verified Assets loan, with a 100% Loan to Value/Combined Loan to Value, and a 36% Debt to Income ratio. There was a Manual approval dated 12/28/2006, in the loan file. | Stated | $147,500.00 | 2845588 | |
| | | | 1.04 (b) (xviii) LXS 2007-5H_DTI | DTI Exceeds 60% | DTI Exceeds 60% | 1 | 3 | The Seller represented and warranted that the subject loan would not have a Debt to Income ratio in excess of 60%.<br><br>Despite the Seller's representations, a re-calculation of Debt to Income ratio based on the Borrower's verified income results in an increase from 36% to 115.83%, which exceeds the Seller's represented Debt to Income ratio 60%. | | | 2845588 | |
| | | | 1.04 (b) (xviii) LXS 2007-5H_DTI<br><br>1.04 (c) (v) LXS 2007-5H_No Fraud<br><br>1.04 (c) (vii) LXS 2007-5H_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as a Pastor for 4 years, earning $8,200 per month. The Borrower provided post closing income documentation for the purpose of obtaining a home modification loan. The Borrower's federal tax returns for the subject year loan closing 2006 reflected the Borrower's actual income was $2,131 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Pastor earning $8,200 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845588 | |
| 36 | 000000035630672 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/23/2005, in the amount of $78,750, as a cash out refinance of a non owner occupied detached single family residence. The loan was approved with a 75% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Mortgage, HUD-1 settlement statement, Title and home owner's insurance. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $78,750.00 | 2845375 | |
| | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845375 | |
| | | | 1.04 (b) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 2 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845375 | |
| 37 | 000000035724640 | 1st | LXS 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/15/2005, in the amount of $121,600, as a purchase of an owner occupied property. The loan was approved with an 80%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Note, Mortgage, HUD-1 settlement statement, Title and home owner's insurance. There was no other critical documentation provided for the file that was represented on the data tape by the Seller. | Unknown | $121,600.00 | 2845344 | |
| | | | 1.04 (b) (xii) LXS 2005-2_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) LXS 2005-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845344 | |

| # | Loan # | Lien | Deal | Finding | | | | | Description | | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (xviii) LXS 2005-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845344 |
| 38 | 000000035734052 | 1st | LXS 2005-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/16/2005, in the amount of $57,200, as a purchase of a non owner occupied single family attached Town house with an 80%/100% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System Approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's final HUD-1 settlement statement, Note, Mortgage, Title and home owner's insurance policy. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $57,200.00 | 2845345 |
| | | | | 1.04 (b) (xii) LXS 2005-2_Compliance with Applicable Law - Deemed MnA 1.04 (c) (xvii) LXS 2005-2_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845345 |
| | | | | 1.04 (c) (xviii) LXS 2005-2_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845345 |
| 39 | 000000036016053 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/25/2005, in the amount of $128,000, as a cash out refinance of a non owner occupied detached single family residence, with an 80%/87.3% Loan to Value/Combined Loan to Value. There was neither an Automated Underwriting System Approval nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Borrower's Final HUD-1 Settlement statement, Mortgage, Note, Title Policy and Evidence of Home Owner's insurance. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $128,000.00 | 2845377 |
| | | | | 1.04 (b) (xii) LXS 2005-4_Compliance with Applicable Law - Deemed MnA 1.04 (c) (xvii) LXS 2005-4_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final Truth in Lending statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final Truth in Lending statement was missing from the loan file. The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws. Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845377 |
| | | | | 1.04 (c) (xviii) LXS 2005-4_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 3 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file. The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845377 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 9/30/2013 9:14:20 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final Version_29

| | 40 | 000000036073229 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/09/2005, in the amount of $95,600, as a purchase of a non-owner occupied Single Family Residence located in a Planned Unit Development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 26.94% Debt to Income Ratio (DTI). There was a Manual approval dated 08/09/2005, in the loan file. | Stated | $95,600.00 | 2845378 |
| | | | | | 1.04 (c) (v) LXS 2005-4_No Fraud<br><br>1.04 (c) (vii) LXS 2005-4_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented his debt obligations. Public records and the audit credit report indicated the Borrower purchased 2 undisclosed properties on 08/25/2005, 16 days after the subject loan closing, and acquired first and second mortgages in the amount of $90,000, $22,500, $76,400 and $19,100 with monthly payments of $516, $225, $438, and $168. The Borrower also refinanced an investment property the same day as the subject loan closing on 08/09/2005, and acquired new mortgages in the amounts of $95,600 and $23,950 with payments of $1,562 and $210.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented his debt obligations by failing to disclose $2,166 in additional monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845378 |
| | 41 | 000000036099695 | 1st | LXS 2005-4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/09/2005, in the amount of $97,500, as a purchase of an owner occupied Single Family Residence. The loan was approved as a No Documentation loan (No Income, No Employment, No Asset Verification) loan, with a 79.93%/94.89% Loan to Value/Combined Loan to Value (LTV/CLTV). There was a Manual approval dated 08/05/2005, in the loan file. | NINENA | $97,500.00 | 2845379 |
| | | | | | 1.04 (c) (v) LXS 2005-4_No Fraud<br><br>1.04 (c) (vii) LXS 2005-4_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrowers misrepresented their debt obligations. Public records and the audit credit report reflected the Borrowers purchased an undisclosed property on 08/09/2005, the same day as the subject loan closing, and acquired a first mortgage in the amount of $200,000 with a monthly payment of $1,546.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose $1,546 in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845379 |
| | | | | | 1.04 (c) (v) LXS 2005-4_No Fraud<br><br>1.04 (c) (vii) LXS 2005-4_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrowers misrepresented their intent to occupy the subject property. Public records reflected the Borrowers occupied an undisclosed property from 09/2005 to 07/2013, which was purchased on the same day of the subject loan closing. Public records indicated other individuals occupied the subject property from 10/2005 to 08/2013.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2845379 |
| | | | | | | | **Grand Total of Repurchase Demand** | | | | | **$9,189,444.00** | |

.
.

.

Cowen_US Bank_Final Version_25

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Breach Description | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0121861843 | 1st | SAS 2007-GEL1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/24/2006, in the amount of $40,000, as a cash-out refinance of a non-owner occupied single family residence. The loan was approved as a Full Documentation loan, with an 80% Loan to Value/Combined Loan to Value, and a 33.24% Debt to Income Ratio. There was a Manual Approval dated 07/21/2006, in the loan file. | Full | $40,000.00 | 2844771 | |
| . | | | | 1.04 (c) (v) SAS 2007-GEL1_No Fraud<br><br>1.04 (c) (vii) SAS 2007-GEL1_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrowers misrepresented their debt obligations. The Audit Credit Report and public records research both reveal an undisclosed mortgage debt on a disclosed property at origination. Public records research through Accurint and Corelogic reveal a mortgage loan opened 06/2006 for $395,000 with a payment, based on the subject note rate of 9.925%, of $3,444. This undisclosed loan was opened the same month of the subject closing of 07/24/2006; however, it was not disclosed on the origination application.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrowers or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $3,444 monthly debt, which constitutes an event of default under the executed Mortgage and or Deed of Trust. | | | 2844771 | |
| . | | | | 1.04 (c) (v) SAS 2007-GEL1_No Fraud<br><br>1.04 (c) (vii) SAS 2007-GEL1_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 2 | 3 | The Borrower misrepresented his employment on the loan application. According to the Schedule I of the Bankruptcy Documents, filed by the Borrower with the Western District of Oklahoma Bankruptcy Courts as part of a Chapter 13 bankruptcy case dated 06/02/2009, the Borrower stated employment as a Mortgage Broker for 7 years and did not include that he was self-employed in the most recent 6 years as a Real Estate Investor, as was stated on the origination application.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated self-employment as a Real Estate Investor for 2 years, which constituted an event of default under the executed Mortgage and or Deed of Trust. | | | 2844771 | |
| 2 | 0122232564 | 1st | BNCMT 2006-2 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/03/2006, in the amount of $542,700, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 90% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40.04% debt to income ratio (DTI). There was a Manual approval dated 08/08/2006, in the loan file. | Stated | $542,700.00 | 2844889 | |
| . | | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud<br><br>1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as an Senior Banking Manager earning $8,575 per month on the loan application. An audit Verification of Employment was conducted through The Work Number, which revealed the Borrower's monthly income was $5,872 the year the subject loan closed.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Senior Banking Manager earning $8,575 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2844889 | |

Cowen_US Bank_Final Version_25

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 0122235518 | 1st | | BNCMT 2006-2 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/11/2006, in the amount of $262,620, as a cash-out refinance of an owner occupied 2-unit property. The loan was approved as a Stated Income/Verified Asset loan, with a 71% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 38.541% Debt to Income Ratio (DTI). There was a Manual approval dated 08/15/2006, in the loan file. | Stated | $262,620.00 | 2844894 |
| . | | | | 1.04 (b) (xxi) BNC 2006-2_No Fraud  1.04 (b) (xxiii) BNC 2006-2_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 1 | 3 | The Borrower misrepresented his intent to occupy the subject property. An Accurint search of the Borrower revealed the Borrower purchased a single family residence located in Chicago, IL 60652 on 10/17/2006, 2 months after the subject loan closing on 08/11/2006. Accurint reported that the Borrower occupied the single family residence from 10/2006 through 01/2013. Accurint also reported numerous individuals resided in both units of the subject property from 10/2006 through 01/2013.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2844894 |
| 4 | 0122255102 | 1st | | BNCMT 2006-2 | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/08/2006, in the amount of $343,000, as a cash-out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation/12 Month Bank Statement loan, with a 79.767% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 48.264% Debt to Income Ratio (DTI). There was a Manual approval dated 08/15/2006, in the loan file. | Full | $343,000.00 | 2844924 |
| . | | | | 1.04 (b) (xl) (d) BNC 2006-2_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain Credit Report | Failure to Obtain Valid Credit Report | 1 | 3 | The loan file contained a credit report; however, pages one and two of the credit report were missing and the Borrowers' credit scores could not be verified.  The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844924 |
| . | | | | | | **Grand Total of Repurchase Demand** | | | | | **$1,188,320.00** | |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 5/31/2013 10:04:07 AM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repo

| Loan Count | Loan Number | First or Second | Deal Name | Section of the MLSAA Breached | Issue Description | Breach | Breach Count | Rating | Narrative | Document Type | Original Balance | Tracking Number | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 00124784216 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/08/2007, in the amount of $132,742, a purchase of an owner occupied single family residence located in a planned unit development. The loan was approved as a Full Documentation (12 months' bank statements) loan, with a 75% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 17.819% Debt to Income Ratio (DTI). There was a Manual approval dated 06/15/2007, in the loan file. | Full | $132,742.00 | 2847089 | |
| . | | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrower misrepresented his disclosed income. The Borrower falsely stated income as the Owner of a marble and tile company for 6 years, earning $6,500 per month. The loan file contained post closing income documentation including the Borrower's 2007 tax return, which revealed the Borrower earned $1,670 per month the year the subject loan closed.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Further still, the Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as the Owner of a marble and tile company for 6 years, earning $6,500 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. | | | 2847089 | |
| 2 | 00124799297 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/11/2007, in the amount of $110,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 78.571% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 29.118% Debt to Income Ratio (DTI). There was a Manual approval dated 06/08/2007, in the loan file. Per the estimated HUD-1, the Borrower received $40,546 cash back at closing. | Full | $110,000.00 | 2847092 | |
| . | | | | 1.04 (b) (xiii) SAS 2007-BC4_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xviii) (g) SAS 2007-BC4_Written Disclosure - Deemed MnA_Pool 1 | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 1 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file contained an unsigned estimated HUD-1 stamped by the title company; however, the subject property was located in Iowa, which is a wet funding state, and required a final signed HUD-1, which was not provided.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847092 | |

# Digital Risk - Loan Review Findings

Cowen_US Bank_Final Version_24     08-13555-mg   Doc 46080-7   Filed 08/22/14   Entered 08/22/14 15:34:18   Attachment
Part 8 Pg 238 of 256

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The loan was a rate/term refinance of the subject property for 1.3 years with a mortgage payment of $400 per month. The loan file contained a verification of mortgage executed by a private individual as verification; however, 12 months canceled checks were not provided as required for private mortgages. The loan file contained copies of 3 cashier's checks; however, they were not legible.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, the housing history was not properly verified, which significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2847092 | |
| 3 | 00124834474 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/18/2007, in the amount of $217,000, as a cash-out refinance of an owner-occupied attached single family residence. The loan was approved as a Stated Income/Verified Asset loan, with a 68.89% Loan to Value/Combined Loan to Value, and a 49.96% Debt to Income Ratio. There was a Manual Approval dated 06/15/2007, in the loan file. | Stated | $217,000.00 | 2847099 |
| . | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (c) (v) SAS 2007-BC4_No Fraud<br><br>1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 1 | 3 | The Borrowers misrepresented their disclosed income. The Borrower falsely stated income as a Clerk earning $3,400 per month on the loan application. The Co-Borrower listed income of $2,700 per month as a Customer Service Person. The loan file contained tax returns for the same year of the subject closing in 2006, which revealed the Borrower earned $2,601 per month and the Co-Borrower earned $1,756 per month.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Further still, the Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and/or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrowers or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Clerk earning $3,400 per month on the loan application and the Co-Borrower falsely stated income as a Customer Service Person earning $2,700 per month, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay the subject loan. | | | 2847099 | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 00124903345 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/23/2007, in the amount of $188,000, as a cash out refinance of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 40.96% debt to income ratio (DTI). There was a Manual approval dated 07/23/2007, in the loan file. | Stated | $188,000.00 | 2847111 |
| . | | | | 1.04 (c) (v) SAS 2007-BC4_No Fraud  1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as an Administrative Assistant earning $3,648 per month on the loan application. The subject loan file contained post closing income documentation including the Borrower's 2007 tax return, which revealed the Borrower's monthly income was $1,676 the year the subject loan closed.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.  Despite the Seller's representations, the Borrower falsely stated income as a Administrative Assistant earning $3,648 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2847111 |
| 5 | 00124913583 | 1st | SASC 2007-BC4 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 07/09/2007, in the amount of $275,000, a purchase of an owner occupied single family residence. The loan was approved as a Full Documentation loan, with a 100% loan-to-value/combined loan-to-value, and a 46.47% debt-to-income ratio. There was a Manual approval dated 07/27/2007, in the loan file. | Full | $275,000.00 | 2847125 |
| . | | | | 1.04 (b) (xviii) (d) SAS 2007-BC4_Underwriting Methodology - Deemed MnA_Pool 1  1.04 (c) (v) SAS 2007-BC4_No Fraud  1.04 (c) (vii) SAS 2007-BC4_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | 1 | 3 | The Borrower misrepresented his employment on the loan application. The loan file contained a verbal verification of employment confirming the Borrower's position and tenure; however, the original audit credit report indicated the Borrower was employed with a different company the year of the subject loan closing. The loan file contained post-closing 2007 joint tax returns that indicated the Borrower had self-employment income which matched a post-closing 1099 statement; however, the Borrower's self-employment was not disclosed. Furthermore, the loan file contained a pay stub provided at origination, which reflected a year-to-date income of $30,521; however, the loan file also contained post-closing income documentation including the Borrower's 2007 joint tax return, the year of the subject loan closing, which revealed income of only $3,249, or $271 per month.  Further still, the Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.  The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.  The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.  In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage. Without properly verifying the employment status of the Borrower, the lender could not properly evaluate the Borrower's ability to earn an income and | | | 2847125 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 5/31/2013 2:34:40 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

# Digital Risk - Loan Review Findings

Cowen_US Bank_Final Version_24    08-13555-mg    Doc 46080-7    Filed 08/22/14    Entered 08/22/14 15:34:18    Attachment
part 5 Pg 240 of 256

| | | | | Misrepresentation | Misrepresentation | 2 | 3 | | | | 2847125 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

1.04 (c) (v) SAS 2007-BC4_No Fraud

1.04 (c) (vii) SAS 2007-BC4_No Event of Default

Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence

Misrepresentation of Income

The Borrower misrepresented his income, the Borrower falsely stated income as a Warehouse Supervisor earning $6,730 per month on the loan application. The loan file contained a pay stub provided at origination, which reflected a year-to-date income of $30,521; however, the loan file also contained post-closing income documentation including the Borrower's 2007 joint tax return, the year of the subject loan closing, which revealed income of only $3,249, or $271 per month.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the Borrower falsely stated income as a Warehouse Supervisor earning $6,730 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust.

---

| | | | | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 3 | 3 | | | | 2847125 | |

1.04 (c) (v) SAS 2007-BC4_No Fraud

1.04 (c) (vii) SAS 2007-BC4_No Event of Default

The Borrower misrepresented his intent to occupy the subject property. The loan file contained post-closing income documentation including the Borrower's 2007 and 2008 tax returns, which revealed the Borrower occupied the previous primary residence located in Pico Rivera, CA. The bankruptcy documentation filed by the Borrower on 03/24/2011 with the United States Bankruptcy Court Central District of California confirmed the Borrower occupied the property located in Pico Rivera, CA until 06/2010. In addition, the loan file contained a post closing lease agreement for the subject property.

The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.

In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.

Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and or Deed of Trust.

| # | Loan Number | | | | | | | Finding Description | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 0014567333 | 2nd | SAIL 2003-BC1 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $20,000.00 | 2845687 |
| . | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845687 |
| . | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845687 |
| . | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 5 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws. The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2845687 |
| 7 | 0014567481 | 2nd | SAIL 2003-BC1 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $20,600.00 | 2845688 |
| . | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. he Final Hud-1, was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845688 |

| # | Loan ID | Lien | Deal | Finding | Finding Type | Sub-Finding | a | b | Description | | Amount | Claim ID | |
|---|---------|------|------|---------|--------------|-------------|---|---|-------------|--|--------|----------|--|
| | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth In Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The Truth In Lending (TIL) disclosure was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845688 | |
| | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 5 | 3 | The subject loan did not comply with applicable law. The subject note was missing from the loan file. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2845688 | |
| 8 | 0014567499 | 2nd | SAIL 2003-BC1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 10/01/2002, in the amount of $20,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $20,000.00 | 2845689 | |
| | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain the final HUD-1.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845689 | |
| | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth In Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845689 | |
| | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2845689 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 5/31/2013 2:34:40 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 | 0014602460 | 2nd | SAIL 2003-BC1 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $21,990.00 | 2845691 |
| . | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845691 |
| . | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2845691 |
| . | | | | 1.04 (b) (xi) SAIL 2003-BC1_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 5 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject note was missing from the loan file.<br><br>The Seller represented and warranted that the subject loan complied in all material respects with applicable local, state, and federal laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2845691 |
| 10 | 0015137268 | 1st | SAIL 2003-BC5 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/07/2003, in the amount of $71,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $71,000.00 | 2845702 |
| . | | | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xii) SAIL 2003-BC5_Mortgage File<br><br>1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the Subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845702 |

| # | Loan # | Lien | Product | Sub-category | Finding | Finding Desc | Sev | Req | Narrative | Approval | Amount | ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 4 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain the final HUD-1.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845702 |
| . | | | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 5 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845702 |
| . | | | | 1.04 (c) (xviii) SAIL 2003-BC5_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 6 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845702 |
| 11 | 0015163561 | 1st | SAIL 2003-BC5 | | Loan Summary | Loan Summary | 0 | 0 | There was neither an Automated Underwriting System (AUS) nor Manual Approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All the documents in the file were for a different Borrower and a different property location than what was represented on the data tape by the Seller. | Unknown | $54,825.00 | 2845703 |
| . | | | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xii) SAIL 2003-BC5_Mortgage File<br><br>1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The subject Note was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845703 |

| | | | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA  1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845703 | |
| . | | | | 1.04 (b) (xii) SAIL 2003-BC5_Compliance with Applicable Law - Deemed MnA  1.04 (c) (xvii) SAIL 2003-BC5_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.  The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable local, state, and federal laws.  Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.  Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845703 | |
| . | | | | 1.04 (c) (xviii) SAIL 2003-BC5_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.  The Seller represented and warranted, in part, that the appraisal complied with FIRREA.  Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845703 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 12 | 0015317563 | 1st | SAIL 2003-BC9 | | Loan Summary | Loan Summary | 0 | 0 | We submitted a closed document request of $175,500. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Commitment and the Mortgage. There was no other critical documentation provided for the file that was represented on the data Tape by the Seller. | Unknown | $175,500.00 | 2845706 |
| . | | | | 1.04 (b) (xiii) SAIL 2003-BC9_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xvii) (g) SAIL 2003-BC9_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xvii) (h) SAIL 2003-BC9_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (c) (xvii) SAIL 2003-BC9_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The final HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845706 |
| . | | | | 1.04 (b) (xiii) SAIL 2003-BC9_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xvii) (g) SAIL 2003-BC9_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xvii) (h) SAIL 2003-BC9_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (c) (xvii) SAIL 2003-BC9_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 3 | 3 | The subject loan did not comply with applicable law. The Truth in Lending (TIL) Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845706 |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 5/31/2013 2:34:40 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (c) (xviii) SAIL 2003-BC9_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 4 | 3 | The subject loan was subject to Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA. Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2845706 | |
| 13 | 0015373921 | 2nd | SAIL 2003-BC9 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 02/27/2003, in the amount of $25,798. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All of the documents in the file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | $25,798.00 | 2845708 | |
| . | | | | 1.04 (b) (xiii) SAIL 2003-BC9_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xvii) (g) SAIL 2003-BC9_Fees Disclosed - Deemed MnA_Pool 1<br><br>1.04 (b) (xvii) (h) SAIL 2003-BC9_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (c) (xvii) SAIL 2003-BC9_Origination Practices | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The loan file did not contain a final HUD-1.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2845708 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| . | | | | 1.04 (b) (xiii) SAIL 2003-BC9_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (b) (xvii) (g) SAIL 2003-BC9_Fees Disclosed - Deemed MnA-Pool 1<br><br>1.04 (b) (xvii) (h) SAIL 2003-BC9_Written Disclosure - Deemed MnA_Pool 1<br><br>1.04 (c) (xvii) SAIL 2003-BC9_Origination Practices | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final Truth in Lending (TIL) statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2845708 | |
| . | | | | 1.04 (b) (xiii) SAIL 2003-BC9_Compliance with Applicable Law - Deemed MnA<br><br>1.04 (c) (xii) SAIL 2003-BC9_Mortgage File<br><br>1.04 (c) (xvii) SAIL 2003-BC9_Origination Practices | Failure to Provide the Subject Note | Failure to Provide Subject Note | 5 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file did not contain the Subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided.<br><br>Pursuant to the MLSAA, the subject loan's failure to comply with applicable law is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | 2845708 | |
| . | | | | 1.04 (c) (xviii) SAIL 2003-BC9_Qualified Appraisal | Failure to Provide the Origination Appraisal | Failure to Obtain Qualified Appraisal | 7 | 3 | The subject loan was subject to a qualified appraisal. Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.<br><br>The Seller represented and warranted, in part, that the appraisal complied with FIRREA.<br><br>Despite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | 2845708 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 0031871486 | 1st | SARM 2005-23 | | Loan Summary | Loan Summary | 0 | 0 | Neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. All the documents in the loan file were for a different Borrower and a different property location than what was represented on the Data Tape by the Seller. | Unknown | | 2846161 |
| . | | | | 1.04 (b) (xii) SARM 2005-23_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xii) SARM 2005-23_Mortgage File<br><br>1.04 (c) (xvii) SARM 2005-23_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2005-23_Compliance with Applicable Law | Failure to Provide the Subject Note | Failure to Provide Subject Note | 2 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required that a fully executed note for the subject transaction be executed by the Borrower and maintained in the loan file as evidence of compliance. The loan file was missing the subject Note.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>The Seller further represented and warranted, in part, that it was in possession of a complete, true and accurate Mortgage File, including, but not limited to, the subject note, as required by the Mortgage Loan Sale and Assignment Agreement (MLSAA).<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act, neither is there evidence that the note for the subject transaction was provided. | | | 2846161 |
| . | | | | 1.04 (b) (xii) SARM 2005-23_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xvii) SARM 2005-23_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2005-23_Compliance with Applicable Law | Failure to Provide Final HUD-1 | Failure to Provide Final HUD-1 | 3 | 3 | The subject loan did not comply with applicable law. The Real Estate Settlement Procedures Act required a complete and final HUD-1 to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The HUD-1 was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846161 |
| . | | | | 1.04 (b) (xii) SARM 2005-23_Compliance with Applicable Law - Origination<br><br>1.04 (c) (xvii) SARM 2005-23_Origination Practices<br><br>1.04 (c) (xxiv) SARM 2005-23_Compliance with Applicable Law | Failure to Provide the Final TIL | Failure to Provide Final TIL | 4 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a final TIL statement to be acknowledged and executed by the Borrower and maintained in the loan file. The final TIL was missing from the loan file.<br><br>The Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.<br><br>Despite the Seller's representations, there is no evidence in the loan file that the subject loan was in compliance with the Act. | | | 2846161 |

Cowen_US Bank_Final Version_24

Cowen_US Bank_Final Version_24

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (c) (xviii) SARM 2005-23_Qualified Appraisal | Failure to Provide the Origination Qualified Appraisal | Failure to Obtain Qualified Appraisal | 5 | 3 | We subsequently as suggested Section 501 for of Title XI of the Federal Institutions of the Reform, Recovery, and Enforcement Act (FIRREA) required that, at a minimum, the appraisal comply with the Uniform Standards of Professional Appraisal Practice. The origination appraisal is missing from the loan file.\n\nThe Seller represented and warranted, in part, that the appraisal complied with FIRREA.\n\nDespite this requirement, there is no evidence in the file that the origination appraisal complied with the Act. | | | 2846161 | |
| 15 | 0113205744 | 1st | SAS 2007-TC1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 11/02/1998, in the amount of $42,000. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The loan file only contained the Note, Title Commitment, HUD-1 Settlement Statement, Loan Application, Appraisal and the Mortgage. There was no other critical documentation provided for the file that was represented on the data. | Stated | $42,000.00 | 2844780 | |
| . | | | | 1.04 (b) (xiii) SAS 2007-TC1_Compliance with Applicable Law - Deemed MnA\n\n1.04 (c) (xxxvii) SAS 2007-TC1_Origination Practices | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The Right of Rescission is missing from the loan file.\n\nThe Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.\n\nDespite the Seller's representations, the loan file did not contain a Right of Rescission, which is evidence of the subject loan's noncompliance with applicable law.\n\nPursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844780 | |
| 16 | 0117077461 | 1st | SASC 2005-S1 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 08/14/2000, in the amount of $56,950, as a rate and term refinance of a land contract for an owner occupied single family residence. There was neither an Automated Underwriting System (AUS) nor Manual approval included in the loan file to definitively ascertain whether the loan was properly stipulated and approved in adherence with the guidelines of the loan program in effect at the time of application in the loan file. The final HUD-1 reflected the Borrowers received $641 cash back at closing. | Unknown | $56,950.00 | 2844738 | |
| . | | | | 1.04 (b) (xiii) SAS 2005-S1_Compliance with Applicable Law - Deemed MnA\n\n1.04 (c) (xvii) SAS 2005-S1_Origination Practices | Failure to Provide the Right of Rescission | Failure to Provide Right of Rescission | 1 | 3 | The subject loan did not comply with applicable law. The Truth in Lending Act required a Right of Rescission disclosure to be provided to the Borrower, acknowledged and executed by the Borrower, and maintained in the loan file as evidence of compliance. The Right of Rescission is missing from the loan file.\n\nThe Seller represented and warranted that the origination practices and subject loan complied in all material respects with applicable laws.\n\nDespite the Seller's representations, the loan file did not contain a Right of Rescission, which is evidence of the subject loan's noncompliance with applicable law.\n\nPursuant to the Mortgage Loan Sale and Assignment Agreement, the subject loan's failure to comply with applicable law, including, but not limited to, applicable lending and disclosure laws, is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2844738 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 17 | 0121283352 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject closed on 05/22/2006, in the amount of $126,800, as a purchase of an owner occupied single family residence located in a planned unit development. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 38.728% Debt to Income Ratio (DTI). There was a Manual approval dated 06/22/2006, in the loan file. | Stated | $126,800.00 | 2846012 |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - With Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrower misrepresented her debt obligations. Research of public records conducted through the Mortgage Electronic Registry System and an audit credit report revealed the Borrower refinanced 2 of her investment properties on 05/31/2006, 9 days prior to the subject loan closing on 06/09/2006, which were not disclosed at origination. The Borrower refinanced a property located in Richmond, VA and obtained an undisclosed refinance in the amount of $158,950 with a monthly payment of $1,517, which increased the balance by $79,215 and the monthly payment by $823 and refinanced an additional rental property also located in Richmond, VA and obtained a first mortgage in the amount of $78,200 with a monthly payment of $719, which increased the balance by $53,781 and the monthly payment by $548.<br><br>Further still, the Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower misrepresented her debt obligations by failing to disclose a $1,371 increase in monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and also significantly impacted the determination of the Borrower's reasonable ability to repay.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders.. | | | 2846012 |
| . | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With Red Flags Present | Misrepresentation of Occupancy | 2 | 3 | The Borrower misrepresented her intent to occupy the subject property. Research of public records revealed the Borrower filed a Chapter 13 Bankruptcy on 08/19/2008, with the Eastern District of Virginia. The petition included a Statement of Financial Affairs, which revealed the Borrower continued to reside in her departing address from 08/2006 through the date of the filing and had previously resided in the previous address reflected on the loan application from 2005 through 08/2006 and did not occupy the subject address after the subject loan closing on 06/09/2006.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller also represented and warranted, in part, that the underwriting methodology used confirmed that the borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Further still, the Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay | | | 2846012 |

Cowen_US Bank_Final Version_24

Cowen_US Bank_Final Version_24

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With No Red Flags Present | Misrepresentation of Employment | 3 | 3 | The Borrower misrepresented her employment on the loan application as a Real Estate Investor for 2 years. Research of public records revealed the Borrower filed a Chapter 13 Bankruptcy on 08/19/2008, with the Eastern District of Virginia. The petition included a Statement of Financial Affairs, which revealed the Borrower was self employed as the Owner of the business listed on the loan application from 2005 to the date of the filing, or 1.8 years.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated employment as a Real Estate Investor for 2 years, which constituted an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846012 | |
| . | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 4 | 3 | The Borrower misrepresented her disclosed rental income. The Borrower falsely stated rental income in the amount of $2,350 per month on the loan application for her departing residence. Research of public records revealed the Borrower filed a Chapter 13 Bankruptcy on 08/19/2008, with the Eastern District of Virginia. The petition included a Statement of Financial Affairs, which revealed the Borrower continued to reside in her departing address and did not occupy the subject address after the subject loan closing on 06/09/2006; therefore, no rental income for the property would have been collected<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated rental income on her departing address in the amount of $2,350 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846012 | |
| . | | | | | | | | | | | | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 5/31/2013 2:34:40 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule
Repor

Cowen_US Bank_Final Version_24

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 0121286223 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 6/19/2006, in the amount of $32,000, as a purchase of an owner-occupied single family residence. The loan was approved as a Full Documentation loan (6 months bank statements), with a 20%/100% Loan to Value/Combined Loan to Value, and a 27.61% Debt to Income Ratio. There was a Manual Approval dated 06/16/2006, in the loan file. The loan closed simultaneously with a first lien in the amount of $128,000. | Full | $32,000.00 | 2846017 |
| . | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 3 | 3 | The Borrower misrepresented her debt obligations. The Audit Credit Report revealed an undisclosed mortgage, obtained in 05/30/2006, the month prior to the subject loan closing on 06/19/2006, in the amount of $164,587 with a monthly payment of $1,283, secured by a property located in Richton Park, IL. The payment was calculated using the subject's first lien rate of 8.65% for 30 years.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented her debt obligations by failing to disclose a $1,283 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846017 |
| . | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 4 | 3 | The Borrower misrepresented her intent to occupy the subject property. The Borrower signed an Occupancy Affidavit at closing, which indicated the Borrower agreed to occupy the subject property within 60 days and reside there for at least one year after the closing date of 06/19/2006. Research of public records revealed the Borrower purchased an undisclosed property located in Richton Park, IL on 05/30/2006, 19 days prior to the subject loan closing and resided at t he property from 06/2006 through 02/2013.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846017 |

Copyright 2013, Digital Risk, LLC.   Internal & Confidential - Do Not Duplicate   Run: 5/31/2013 2:34:40 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

| # | Loan | Lien | Deal | | | | | | | | Findings | | | |
|---|------|------|------|---|---|---|---|---|---|---|----------|---|---|---|
| 19 | 0121303184 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | | 0 | 0 | | The subject loan closed on 05/25/2006, in the amount of $195,500, as a cash out refinance of an owner occupied, single family residence. The loan was approved as a Stated Income/Verified Assets loan, with an 85% loan-to-value/combined loan-to-value, and a 48.37% debt-to-income ratio. There was a Manual approval dated 06/07/2006, in the loan file. Per the final HUD-1, the Borrower received a disbursement of $29,242 at closing. | Stated | $195,500.00 | 2846054 |
| . | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - No Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | | 1 | 3 | | The Borrower misrepresented her disclosed income. The Borrower falsely stated income as a Shampoo Porter earning $3,000 per month on the loan application. An audit re-verification of employment and income was conducted through The Work Number, which revealed the Borrower's actual income for the year of the subject loan closing was $26,056 or $2,171 per month.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated income as a Shampoo Porter earning $3,000 per month on the loan application, which constitutes an event of default under the executed Mortgage and Deed of Trust. | | | 2846054 |
| 20 | 0121306351 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | | 0 | 0 | | The subject loan closed on 06/22/2006, in the amount of $125,000, as a purchase of an owner occupied 2 unit residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 50.257% Debt to Income Ratio (DTI). There was a Manual approval dated 06/27/2006, in the loan file. | Stated | $125,000.00 | 2846064 |
| . | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Employment - With Red Flags Present | Misrepresentation of Employment | | 1 | 3 | | The Borrower misrepresented his employment on the loan application. Per the loan application, the Borrower indicated that he had secondary income as a Mason for 3 years. An audit verbal re-verification of employment and income was obtained through the Borrower's secondary employer, which revealed the Owner had a personal relationship with the Borrower; however, the Borrower was never employed by him.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller also represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Further still, the Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated secondary income as a Mason for 3 years, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan | | | 2846064 |

Cowen_US Bank_Final Version_24

| # | Loan # | Lien | Deal | Rep/Warranty | Finding Type | Finding Detail | | | Details | | Amount | ID | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1<br><br>1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Income - Red Flags Present - Same Year Income Evidence | Misrepresentation of Income | 2 | 3 | The Borrower misrepresented income. In support of income, the Borrower falsely stated secondary income as a Mason earning $4,800 per month on the loan application. An audit verbal re-verification of employment and income was obtained through the Borrower's secondary employer, which revealed the Owner had a personal relationship with the Borrower; however, the Borrower was never employed by him.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to income.<br><br>The Seller also represented and warranted, in part, that the underwriting methodology used confirmed that the Borrower had a reasonable ability to make timely payments on the subject loan.<br><br>Further still, the Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrower falsely stated secondary income as a Mason earning $4,800 per month on the loan application, which constitutes an event of default under the executed Mortgage and/or Deed of Trust and has a significant impact on the Borrower's reasonable ability to repay the subject loan. | | | | 2846064 | |
| 21 | 0121306757 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/22/2006, in the amount of $92,000, as a cash out refinance of an investment property. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 20.191% Debt to Income Ratio (DTI). There was a Manual approval dated 07/06/2006, in the loan file. | Stated | | $92,000.00 | 2846065 | |
| . | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Misrepresentation of Debt Obligations - No Red Flags Present | Misrepresentation of Debt Obligations | 1 | 3 | The Borrowers misrepresented their debt obligations. Research of public records conducted through the Mortgage Electronic Registry System and an audit credit report revealed the Borrowers obtained an undisclosed mortgage on their primary residence on 06/27/2006, 5 days after the subject loan closing on 06/22/2006, in the amount of $104,000 with a monthly payment of $770. It should be noted, the Borrowers primary residence was listed as free and clear of any mortgages at origination.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the Borrowers misrepresented their debt obligations by failing to disclose a $770 monthly debt, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | | 2846065 | |

Copyright 2013, Digital Risk, LLC.    Internal & Confidential - Do Not Duplicate    Run: 5/31/2013 2:34:40 PM
Report: /Digital Risk/Department Specific Reporting/Private Label Securities/Cowen/Cowen Standard Findings Schedule Repor

Cowen_US Bank_Final Version_24

| 22 | 0121307409 | 1st | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/02/2006, in the amount of $312,000, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with an 80%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 31.635% Debt to Income Ratio (DTI). There was a Manual approval dated 06/28/2006, in the loan file. | Stated | $312,000.00 | 2846066 |
| . | | | | 1.04 (b) (xxi) SAIL 2006-BNC3_No Fraud<br><br>1.04 (b) (xxiii) SAIL 2006-BNC3_No Event of Default | Occupancy Misrepresentation - With No Red Flags Present | Misrepresentation of Occupancy | 1 | 3 | The Borrower misrepresented his intent to occupy the subject property. The loan application reflected the Borrower rented his current address for 8 years and the loan file contained a verification of rent indicating the Borrower had a monthly rent payment of $1,200. At closing, the Borrower signed a security instrument reflecting the Borrower agreed to occupy the subject property within 60 days of closing and continue to reside in the property for a minimum of 12 months. Research of public records revealed the Borrower continued to reside in the departing address from 02/1987 through 04/2013. The records also reflected the Borrower's Voter's Registration was active from 08/31/1992 through 11/12/2010 reflecting the departing address and the Borrower had phone and email services at the departing address; however, no services were found for the subject address. Further research of public records revealed the departing address was owned by a third party who shared the same last name as the Borrower and was the Co-Owner of the assets provided for qualification.<br><br>The Seller represented and warranted, in part, that no document submitted for loan underwriting was falsified; neither did such documentation contain any untrue or misleading statements of material fact or omit to state a material fact required to be stated therein; and that, no fraud was committed in connection with the origination of the subject loan.<br><br>In addition to the Seller's representation and warranty regarding events of defaults and acceleration, the executed Mortgage and or Deed of Trust securing the collateral for the subject loan provides that the delivery of any false, misleading or inaccurate statements to Lender by Borrower or any agent thereof in connection with the approval of the Loan constitutes an event of default under the Mortgage.<br><br>Despite the Seller's representations, the subject loan was falsely represented as an owner occupied transaction, which constitutes an event of default under the executed Mortgage and/or Deed of Trust. | | | 2846066 |
| 23 | 0121309041 | 2nd | SAIL 2006-BNC3 | | Loan Summary | Loan Summary | 0 | 0 | The subject loan closed on 06/02/2006, in the amount of $45,800, as a purchase of an owner occupied single family residence. The loan was approved as a Stated Income/Verified Asset (SIVA) loan, with a 20%/100% Loan to Value/Combined Loan to Value (LTV/CLTV), and a 30.932% Debt to Income Ratio (DTI). There was a Manual approval dated 06/7/2006, in the loan file. | Stated | $45,800.00 | 2846070 |
| . | | | | 1.04 (b) (xli) (d) SAIL 2006-BNC3_Underwriting Methodology - Deemed MnA_Pool 1 | Failure to Obtain VOM/VOR | Failure to Verify Housing History | 3 | 3 | The loan application reflected the Borrowers lived in a residence located in New Hope, MN; however, the loan application did not reflect how long the Borrowers resided at the property, previous addresses, whether the Borrowers were renting or purchasing the property or a monthly payment. The loan file did contain a verification of rent executed by a management company, which reflected housing dates of 07/01/2005 through 06/30/2006 with a monthly rent payment of $859; however, the verification was completed on 05/17/2006, or 10 months prior to the subject loan closing on 06/02/2006. There was no additional documentation provided to complete a 12 months housing payment history as required.<br><br>The Seller represented and warranted, in part, that the methodology used in underwriting the extension of credit for the subject loan employs objective mathematical principles which relate to liabilities.<br><br>The Seller further represented and warranted, in part, that the underwriting methodology used confirmed that the Borrowers had a reasonable ability to make timely payments on the subject loan.<br><br>Despite the Seller's representations, there is no evidence in the loan file of verification of the Borrowers' complete 12 month housing payment history; and as such, there is no evidence in the file that the accuracy of the Borrowers' credit profile was confirmed.<br><br>Pursuant to the Mortgage Loan Sale and Assignment Agreement, the failure of the subject loan to be underwritten in accordance with the represented underwriting methodology is deemed to materially and adversely affect the value of the Mortgage Loan and interest of the Certificateholders. | | | 2846070 |