# Exhibit E

# Description of Breach Findings Categories

## Description of Breach Finding Categories

### Major Credit Findings

*Failure to Verify Housing History*

A failure to verify housing history typically occurs when there is insufficient documentation in the file to evidence housing payments made by the borrower in the twelve months prior to the date they have applied for a loan. Borrower housing history reflects the willingness of the borrower in the past to make mortgage or rent payments as required. This information enables a loan underwriter to make an assessment regarding the propensity of a borrower to make mortgage loan payments in the future. The inability of a loan underwriter to verify housing history impairs the ability of such underwriter to assess the likelihood the borrower will make future payments and increases the probability of default with respect to such loan.

*Failure to Provide Credit Package*

If all, or a significant portion, of the credit documentation in a loan file is missing, then a loan underwriter cannot make a reasonable assessment regarding a borrower's credit profile or ability to repay a loan. A loan underwriter requires a potential borrower's credit package in order to determine the likelihood that such borrower will default. A file missing this information indicates that the loan was not underwritten properly and, as a result, the loan has a greater default probability than a properly underwritten loan.

*Failure to Obtain Required Documentation*

A loan underwriter requires a potential borrower's documentation regarding income, employment status, existing debt, credit and other information in order to assess the creditworthiness of a borrower and to determine the likelihood that such borrower will default. In addition, a loan underwriter may ask for additional documentation to explain a blemish or other derogatory information in a borrower's credit file. A file missing required documentation indicates that the loan was not underwritten properly and, as a result, the loan has a greater default probability than does a loan that was underwritten properly.

*Failure to Investigate Credit History*

In order to assess the likelihood that a borrower will default, a loan underwriter must investigate the credit history of such borrower. The failure to conduct such an investigation means that a loan was not properly underwritten and, as a result of such deficient underwriting, has a higher default probability than a properly underwritten loan.

*Misrepresentation of Housing History*

A borrower's housing history (i.e. the record of how regularly a borrower paid their rent or mortgage loan in the past) reflects the willingness of a borrower to make mortgage or rent payments as required. This information enables a loan underwriter to make an assessment regarding the propensity of a borrower to make mortgage loan payments in the future. The falsification or misrepresentation of a borrower's housing history impairs the ability of a loan underwriter to assess the likelihood the borrower will make future payments, and increases the probability of default with respect to such loan.

*Failure to Obtain Valid Credit Report*

A credit report identifies a borrower's past and present creditors, lists any public records or filings or derogatory credit history, provides known addresses and other names (if any), confirms the borrower's Social Security number, and lists the borrower's credit score, among other information. The failure of a loan underwriter to obtain a valid credit report prevents such underwriter from properly assessing the willingness and ability of a borrower to make mortgage loan payments, and increases the probability of default with respect to such loan.

In addition, a missing a credit report serves as a red flag for potential negligence by the original loan underwriter and facilitates the potential for manipulation of a borrower's credit information. Without a valid credit report, a loan underwriter cannot properly calculate a borrower's debt-to-income ratio, or DTI. The DTI is a key indicator of whether or not a borrower has the capacity to make timely payments on a mortgage loan. If a loan underwriter is not aware of all of a borrower's other outstanding debt, the DTI will be understated and the related loan will have a higher likelihood of default than it would if a valid credit report had been obtained.

Finally, the credit report generally notes if a borrower is seeking to obtain additional financing, or debt. A missing credit report denies the loan underwriter the opportunity to ascertain if, as a result of the potential new debt, a borrower's DTI will change substantially in the near future. As a borrower's DTI increases, the probability of default associated with such loan increases also.

*Failure to Pay Open Collections*

Pre-existing debt and unpaid judgments are generally required to be satisfied by a borrower prior to or at closing of a mortgage loan. If such open collections are not satisfied prior to closing, a borrower's DTI would be higher and disposable income lower, increasing the likelihood of default for such loan.

## **Major Capacity Findings**

*Misrepresentation of Income*

A loan underwriter must evaluate if a borrower's income is sufficient for that borrower to make the required monthly mortgage payments. Generally, the borrower's income from salaries, commissions and investments is verified by the provision of supporting documentation, such as tax returns and pay stubs. Even in the case of certain loan products that may not require that income be fully documented, the underwriter still must substantiate that the borrower's income is reasonable. If the income of a borrower is misrepresented (i.e. overstated), then the probability of default with respect to any such mortgage loan will be greater than otherwise indicated.

*Misrepresentation of Debt Obligations*

The outstanding debt of a borrower's is verified by a loan underwriter in order to confirm a borrower's ability to pay and assess a borrower's overall creditworthiness. As noted above, if the debt obligations of a borrower are misrepresented, the loan underwriter is unable to accurately calculate the related DTI or assess if a borrower has sufficient disposable income to afford such loan. If the DTI is intentionally or erroneously understated, then the probability of default with respect to such loan is increased.

*Misrepresentation of Employment*

A borrower must disclose and a loan underwriter must verify a borrower's employment to enable the underwriter to assess the accuracy and stability of such borrower's employment and the adequacy of the related income. If a borrower's employment is misrepresented, then the related income used to qualify a borrower for such loan is inaccurate and, as noted above, the likelihood of default increases with respect to any such loan.

In addition to verifying a borrower's employment, the underwriter should consider whether a borrower's income is reasonable given such borrower's profession, title or position within the related employer, geographic location, and length of experience. As previously noted, if a borrower's income is overstated, the loan underwriter cannot properly assess the credit risk associated with such loan and the likelihood of default is increased.

*Failure to Determine Reasonable Ability to Repay*

The failure to determine a borrower's ability to repay a loan occurs when a loan underwriter either does not or cannot review the borrower's credit history, loan application or credit score to confirm the borrower's overall creditworthiness and likelihood of making timely mortgage payments. The inability of a loan underwriter to assess a borrower's capacity to pay by means of a failure to review and verify the accuracy of the borrower's credit history, loan application or credit score increases the probability of default with respect to such loan.

*Failure to Verify Assets*

A failure to verify a borrower's assets occurs when a loan underwriter either does not or cannot review the adequacy of the borrower's cash reserves to pay principal, interest, taxes and insurance (PITI) with respect to a mortgage loan. The inability of a loan underwriter to assess a borrower's capacity to pay by means of a failure to review and verify a borrower's assets increases the probability of default with respect to such loan.

*Misrepresentation of Assets*

A loan underwriter cannot accurately assess the capacity of a borrower if the assets of such borrower are misrepresented. In addition, the misrepresentation of assets by a borrower is

51

generally a strong indicator, or "red flag", that such borrower is attempting to obtain a loan through fraudulent means. Therefore, a misrepresentation of assets by the borrower increases the probability of default with respect to such loan.

*Improper Calculation of Debts*

Improper calculation of debts occurs when a loan underwriter either does not or cannot accurately or properly calculate a borrower's outstanding debt. As noted above, if the debt obligations of a borrower are not properly calculated, the loan underwriter is unable to accurately calculate the related DTI or assess if a borrower has sufficient disposable income to afford such loan. If the DTI is intentionally or erroneously understated, then the probability of default with respect to such loan is increased.

*Improper Calculation of Income*

Improper calculation of income occurs when a loan underwriter either does not or cannot accurately or properly calculate a borrower's income. If a borrower's income is not properly calculated, the loan underwriter is unable to assess if such borrower has sufficient income to afford the loan. Thus, if income is not properly calculated, probability of default with respect to such loan increases.

*Failure to Verify Employment*

A failure to verify a borrower's assets occurs when a loan underwriter either does not or cannot verify the employment of a borrower. Verification of a borrower's employment enables a loan underwriter to consider the adequacy and stability of a borrower's income and assess the borrower's on-going ability to repay the mortgage loan. The inability of a loan underwriter to assess a borrower's capacity to pay by means of a failure to verify a borrower's employment increases the probability of default with respect to such loan.

*Incomplete Income Documentation*

Incomplete income documentation occurs if there is insufficient documentary evidence in a loan file to support the borrower's income. If a loan underwriter cannot determine a borrower's income with sufficient certainty, then the loan underwriter cannot assess the likelihood that a

borrower will default on such loan. The inability of a loan underwriter to assess a borrower's capacity to pay by means of incomplete income documentation increases the probability of default with respect to such loan.

*Failure to Satisfy Liens*

A loan underwriter should verify that a borrower has satisfied all liens prior to a loan closing. If a borrower has failed to satisfy any liens, the loan underwriter is unable to calculate a borrower's outstanding debt obligations. As noted above, if the debt obligations of a borrower cannot be determined then the loan underwriter is unable to assess if a borrower has sufficient disposable income to afford such loan. Therefore, the failure of a borrower to satisfy liens increases the probability of default with respect to such loan. In addition, if the liens that have not been satisfied run to the related mortgaged property, the loss severity in the event of a loan default would be greater than if such liens had been satisfied.

*Excessive DTI*

A loan where the borrower has an excessive DTI is generally well outside of a lender's acceptable risk parameters. If a borrower's DTI is found to be excessive, then such a borrower's capacity to make payments is below the threshold permitted by such lender. A borrower with insufficient income to make the required loan payment represents a much greater risk, and has a much higher likelihood of default, then does a loan to a qualifying borrower.

*Excessive Payment Shock*

The term "payment shock" refers to the impact of increased housing payments relative to the amount of a borrower's prior monthly mortgage or rent payment. Increased payments can occur for several reasons, including the purchase of a new home, a refinancing at a higher balance or a change in monthly payments pursuant to an adjustable rate mortgage loan. Excessive payment shock occurs when a borrower has insufficient capacity to make mortgage payments at the new, higher monthly payment amount. A loan that obligates the borrower to make monthly payments well in excess of the amount of such borrower's prior housing payment, has a higher likelihood of default than does a loan without this impairment.

**Major Collateral Findings**

*Failure to Obtain Qualified Appraisal*

A loan underwriter obtains an appraisal to assess whether the value of the mortgaged property is sufficient to offset the loan amount and the cost of foreclosure if a borrower were to default on the loan. If a qualified appraisal is not obtained, then the loan underwriter cannot determine the sufficiency of the mortgaged property. If an unqualified appraisal overstates the value of the property securing a loan, relative to the actual value of the collateral, then the Loan to Value Ratio (LTV) for the loan is masked and the likelihood of default is increased. In addition, the loss severity will be greater also as the proceeds from the sale of the related mortgaged property would be lower than expected based upon the unqualified appraisal. Finally, without a qualified appraisal the likelihood of default is higher because a loan underwriter cannot accurately calculate the associated LTV for the loan.

*Misrepresentation of Occupancy*

A loan underwriter cannot accurately assess the likelihood a borrower will default if the occupancy status is misrepresented. The occupancy status of the mortgaged property (i.e. whether it is an owner-occupied residence, a second or vacation home or an investor property) is correlated to the probability that a borrower might default. Generally, a borrower is much less likely to default when their primary home is at risk, as opposed to if the subject property is an investment property. In addition, the misrepresentation of occupancy status by a borrower is generally a strong indicator, or "red flag," that such borrower is attempting to obtain a loan through fraudulent means. Therefore, a misrepresentation of occupancy by the borrower increases the probability of default with respect to such loan.

*Straw Purchaser Transaction*

A straw purchaser transaction occurs when an individual who is otherwise unable to qualify for a loan conspires with a third party (the "straw purchaser") to have such third party purchase and finance a property on behalf of the individual that cannot qualify for a loan. In this way, the unqualified individual gets the benefit of the loan utilizing the credit standing and income of the straw purchaser. Clearly, a straw purchaser transaction represents a loan obtained through fraudulent means as the loan underwriter was denied the ability to assess the credit risk of lending to the "actual" (non-straw) borrower.

A loan that has been obtained by fraudulent means has a significantly greater likelihood of default than does a loan approved using true and accurate information regarding the related borrower. Further, the potential loss severity with respect to any such fraudulently induced loan is likely to be greater also.

*LTV/CLTV Exceeds Max*

A loan with a LTV or CLTV that exceeds the maximum permitted LTV/CLTV is generally well outside of a lender's acceptable risk parameters. If a loan has a LTV/CLTV that exceeds a lender's maximum permitted LTV/CLTV, then the probability of default for such loan exceeds the risk tolerance of such lender. A loan with a LTV/CLTV outside of a lender's risk parameters represents a greater risk, and has a higher likelihood of default, than does a loan with an acceptable LTV/CLTV.

*Ineligible Property Type*

A loan underwriter must evaluate the quality of property offered as collateral for a loan to determine if such property is sufficient to offset the loan amount and the cost of foreclosure if a borrower were to default on the loan. If a property type is ineligible, it is outside the parameters defining the type and quality of collateral a lender will accept to secure a loan and is not sufficient to secure a loan. If a loan is secured by an ineligible property type, the loss severity will be greater than if such loan were secured by acceptable collateral.

*LTV/CLTV Exceeds 100%*

A loan that exceeds the maximum LTV/CLTV is outside of a lender's acceptable risk parameters. If a loan has a LTV/CLTV that exceeds a lender's maximum permitted LTV/CLTV, then the probability of default for such loan exceeds the risk tolerance of such lender. A loan with a LTV/CLTV exceeding a lender's established parameters represents a greater risk, and has a higher likelihood of default, than does a loan with a LTV/CLTV that does not exceed acceptable limits.

## **Major Compliance Findings**

*Failure to Provide Final TIL*

55

The Truth in Lending Act requires that a truth in lending disclosure statement ("TIL") is acknowledged and executed by the Borrower and maintained in the related loan file. The purpose of the TIL is to notify the borrower of the true cost of a loan prior to the funding of such loan. The failure to provide a final TIL is a compliance violation which can be used by a borrower to impair or delay a foreclosure action. Thus, the failure to provide a final TIL increases the loss severity associated with such loan.

*Loan Fees Under Disclosed*

If the fees to be paid by a borrower in connection with a new loan were under disclosed, the TIL is invalid because the borrower was misinformed of the true cost of his loan. The failure to provide a borrower with a valid TIL is a compliance violation which can be used by a borrower to impair or delay a foreclosure action. Thus, the failure to provide a valid TIL increases the loss severity associated with such loan.

*Failure to Provide Right of Rescission*

The Truth in Lending Act requires a lender to provide each borrower with a form notifying the borrower of their right to rescind the loan. The failure to provide a borrower with a right of rescission notice is a compliance violation which can be used by a borrower to impair or delay a foreclosure action. Thus, the failure to provide a right of rescission notice increases the loss severity associated with such loan.

*Failure to Provide a Prepayment Disclosure*

The Truth in Lending Act and Real Estate Settlement Procedures Act require that a borrower be provided with written disclosure as to prepayment penalties, if such borrower's loan contains a prepayment penalty. Such disclosure must be acknowledged and signed by a borrower, and evidence of such disclosure must be maintained in the related loan file. The failure to provide a borrower with prepayment disclosure is a compliance violation which can be used by a borrower to impair or delay a foreclosure action. Thus, the failure to provide prepayment disclosure increases the loss severity associated with such loan.

*Failure to Provide Final HUD-1*

56

Pursuant to the Real Estate Settlement Procedures Act, a lender must provide a borrower with a HUD-1, or "settlement statement", when a loan is funded. The HUD-1 is used to confirm the proper use and disbursement of the loan proceeds. The failure to provide a borrower with a final HUD-1 is a compliance violation which can be used by a borrower to impair or delay a foreclosure action. Thus, the failure to provide a final HUD-1 increases the loss severity associated with such loan.

*Failure to Provide Subject Note*

Pursuant to the Real Estate Settlement Procedures Act, a lender must provide a borrower with the subject note. The note memorializes the terms of the loan between a borrower and a lender. The failure to provide a borrower with the subject note is a compliance violation which can be used by a borrower to impair or delay a foreclosure action. Thus, the failure to provide the subject note increases the loss severity associated with such loan.

*No High Cost Loans*

Pursuant to the Truth in Lending Act certain loans defined as "high cost loans" must be originated in compliance with the Home Ownership and Equity Protection Act (HOEPA), which requires a lender to provide certain specific disclosures in connection with the origination of such loans. A loan that was not originated as a high cost loan that nonetheless meets the definition of a high cost loan does not meet the applicable regulations, and is non-compliant. A high cost loan that was not originated in conformity with the applicable regulations is a compliance violation which can be used by a borrower to impair or delay a foreclosure action. Thus, the origination of non-compliant high cost loans increases the loss severity associated with such loan.

*Failure to Obtain Title Insurance*

Title insurance assures a lender that a borrower owns the property offered as collateral for a loan and that such property is not otherwise encumbered with other liens. The failure to obtain title insurance can prevent a lender from foreclosing on the mortgaged property in the event of default, substantially increasing the loss severity associated with such loan.

*Failure to Verify Social Security Number*

57

A loan underwriter verifies a borrower's social security number to confirm a borrower's identity. Without such verification and confirmation, a loan underwriter cannot be assured that the information evaluated in connection with a loan approval (e.g. residency, credit report, income, pay history, property ownership) has any relationship to the person obtaining the loan. In addition, the failure to verify a social security number is a strong indicator, or "red flag", that a borrower has obtained a loan by fraudulent means. The failure to verify a borrower's social security number precludes a loan underwriter from confirming a borrower's identity, increasing the likelihood of default for such loan.

*Failure to Obtain Flood/Hazard Insurance*

Hazard and/or flood insurance assure a lender that the mortgaged property will be repaired or restored if such property is damaged as a result of a covered risk (e.g. fire, wind, and flood). If hazard and/or flood insurance are not obtained, the lender is exposed to the risk that if the mortgaged property is severely damaged the value of such collateral will be insufficient to secure the related loan. The failure to obtain flood and/or hazard insurance exposes the mortgaged property to a potentially significant diminution in value, increasing the loss severity associated with such loan.

*Cash-Out Amount Exceeds Guideline Maximum*

"Cash-out" refers to the amount of cash a borrower obtains by means of refinancing an existing mortgage loan. A borrower that takes "cash out" through a refinancing effectively reduces the equity that such borrower maintains in the related mortgaged property and increases the likelihood that the borrower will default on such loan. A loan that exceeds the maximum amount of cash out permitted with respect to a refinancing is outside of a lender's acceptable risk parameters. A loan that is outside a lender's established parameters represents a greater risk, and has a higher likelihood of default, than does a loan that does not exceed acceptable limits.

*Failure to Obtain Mortgage Insurance Coverage*

Mortgage insurance provides loss coverage to a lender in the event the proceeds realized from the sale of the mortgaged property are insufficient to make the lender whole (i.e. repay the lender the loan balance at the time of default and the expenses associated with liquidating the mortgaged property). If a lender fails to obtain mortgage insurance, such lender must rely on the

58

mortgaged property as the sole source of repayment if a borrower defaults. The failure of a lender to obtain mortgage insurance for a loan in accordance with such lender's policies increases the loss severity with respect to such loan.

*Failure to Obtain First or Second Lien Note*

The failure of a loan underwriter to obtain a first or second lien note (as applicable, when such note is not the subject note) impairs such underwriter's ability to verify both the CLTV of a loan and a borrower's DTI. As both the CLTV and DTI are correlated to the probability that a loan may default, the failure to obtain the applicable lien note increases the likelihood of default with respect to any such loan.

*Failure to Verify Legal Residency*

A borrower's legal residency is important because it enables a loan underwriter to assess a borrower's commitment to the mortgaged property, the borrower's continuing ability to work in the United States and to determine if there may be any impediments to servicing the mortgage loan. A failure to verify the legal residency of a borrower inhibits a loan underwriter from adequately assessing a borrower's willingness and ability to make timely payments on a loan. Therefore, a failure to verify the legal residency of a borrower increases the likelihood of default for such loan.

*Ineligible Transaction*

An ineligible transaction refers to a loan that is not in compliance with a lender's acceptable risk parameters and should not have been made. A loan that is outside a lender's established parameters represents a greater risk, and has a higher likelihood of default, than does a loan that complies with such parameters.

*Documentation Type Lowered Prior to Closing*

This situation occurs when a borrower does not qualify for a loan requiring full documentation and the loan underwriter switches the borrower to a loan product where less information is required. Thus, because the adverse information pertaining to the borrower is no longer "required", the loan underwriter can "forget" that such adverse information was provided at all. Of course, conduct of this type by a loan underwriter is inappropriate in that it encourages a

borrower to obtain a loan through fraudulent means. Evidence in a loan file that the loan program requirements were changed prior to closing to enable a borrower to qualify for such loan indicates that the loan was not underwritten properly and, as a result, the loan has a greater likelihood of default than a properly underwritten loan.

*Failure to Obtain Clear Title*

In order to assure that the mortgaged property is adequate collateral for a loan, a borrower must have clear title to the property and the lender must have a security interest (i.e. the mortgage) in the property. The failure to obtain clear title can prevent a lender from foreclosing on the mortgaged property in the event of default, substantially increasing the loss severity associated with such loan.

*Ineligible Borrower*

A lender can determine that certain types of borrowers are ineligible to obtain a loan due to the uncertain or unacceptable risks associated with such borrowers. For example, non-permanent residents, individuals who cannot provide satisfactory proof of identity, or individuals currently incarcerated in prison, are generally unable to obtain loans. If a mortgage loan file indicates that a loan was obtained by an ineligible borrower then the likelihood of default is higher than it would be for a loan to an eligible borrower.