Hearing Date and Time: September 9, 2014 at 10:00 a.m. (Eastern)
Response Deadline: August 29, 2014 at 4:00 p.m. (Eastern)

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Jennifer C. DeMarco
Adam Lesman

*Counsel to Wincent Investment Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | : | |
| | : | Case No. 08-13555 (SCC) |
| Debtors. | : | |
| | : | |
| | : | (Jointly Administered) |

---------------------------------------------------------------x

**RESPONSE OF WINCENT INVESTMENT LIMITED TO THE
PLAN ADMINISTRATOR'S FOUR HUNDRED SEVENTY-SEVENTH
OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

Wincent Investment Limited ("Wincent"), by and through its undersigned counsel, respectfully submits this response (the "Response") to the Four Hundred Seventy-Seventh Omnibus Objection to Claims (No Liability Claims) [Docket No. 45446], dated July 30, 2014 (the "Objection"), filed by Lehman Brothers Holdings Inc., as Plan Administrator (the "Plan Administrator"), and in support thereof respectfully states as follows:

**PRELIMINARY STATEMENT AND BACKGROUND**

1.      Wincent timely filed a proof of claim against Lehman Brothers Holdings Inc. ("LBHI") on account of its guarantee of the obligations of Lehman Brothers Finance AG (in Liquidation), also known as Lehman Brothers Finance SA (*en liquidation*) ("LBF"), a foreign

affiliate of LBHI that is not a debtor in these jointly administered chapter 11 cases, under an ISDA Master Agreement with Wincent.  The Objection interposed by the Plan Administrator is insufficient to overcome the *prima facie* validity of Wincent's properly filed Claim (as defined below).  In order to properly shift the burden back to Wincent, the Plan Administrator is required to adduce evidence of equal or greater probative force than that put forth by Wincent.  The cursory assertion that "[t]he Plan Administrator has determined that, based on the fair, accurate, and reasonable values of [Wincent's] Derivatives Contract and the netting provisions thereunder, LBF and, therefore, LBHI do not owe any amounts to [Wincent]" is plainly insufficient.  Objection at ¶ 10.

**A.    The Agreement and Claim**

2.      On May 2, 2008, Wincent and LBF entered into an English law governed ISDA Master Agreement that governed the terms of certain swap transactions entered into between the Parties (together with the appurtenant Schedule dated as of the same date, the Credit Support Annex and any confirmations setting forth terms and conditions for particular transactions thereunder and related agreements, the "Agreement").  LBHI was designated as a Credit Support Provider in relation to LBF's obligations under the Agreement.

3.      On September 15, 2008, LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York.

4.      On October 29, 2008, the Swiss Federal Banking Commission (the "SFBC") (now the Swiss Financial Market Supervisory Authority) ordered the solvent liquidation of LBF.  On December 19, 2008 a bankruptcy order was entered which took effect on December 22, 2008,

pursuant to which the SFBC ordered the opening of bankruptcy proceedings for LBF (the "LBF Proceedings").

5. The commencement of the chapter 11 case of LBHI constituted an Event of Default under Section 5(a)(vii) of the ISDA Master Agreement. Section 6(a) of the ISDA Master Agreement states that upon an occurrence of an Event of Default, the Non-Defaulting Party may elect to terminate all Transactions under the Agreement and designate an Early Termination Date. On September 18, 2008, Wincent exercised its rights under Section 6(a) of the ISDA Master Agreement and designated September 18, 2008 as the Early Termination Date.

6. Under the Agreement, the Non-Defaulting Party is entitled to calculate the Early Termination Amount and send notice of the same to the Defaulting Party. The Agreement specifies Loss and Second Method as being the applicable payment measure and method. In accordance with these provisions, Wincent calculated its "Loss" in relation to the termination of each outstanding Transaction under the Agreement.

7. On December 1, 2008, Wincent delivered a calculation statement (the "Calculation Statement") to LBF pursuant to Section 6(d)(i) of the ISDA Master Agreement. The Calculation Statement included the basis for Wincent's calculation of the amounts due in respect of the termination of the outstanding Transactions and certain of its collateral held by LBF, including the amount of "Loss" calculated on an individual Transaction basis (the "Early Termination Amount"). Also on December 1, 2008, Wincent filed its statement of claim (Claim no. 324) in the LBF Proceedings (the "LBF Claim").

8. In addition to the LBF Claim, Wincent has a valid claim against LBHI for the entirety of the Early Termination Amount calculated in accordance with Section 6(e) of the Agreement (and such other amounts as permitted under the Agreement and as set forth in the

Claim (as defined below)) as a result of its guarantee of amounts owing by LBF to Wincent under the Agreement.

9. Pursuant to the Bar Date Order,[1] on September 21, 2009, Wincent timely filed proof of claim number 21965 against LBHI (the "Claim") in the amount of $30,317,653.95 (plus interest, fees, costs and expenses) on account of LBHI's guarantee of LBF's payment obligations with respect to the Early Termination Amount and certain other amounts as further described in the Calculation Statement and Claim. The Claim asserts that the LBF payment obligations also are guaranteed by LBHI pursuant to that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., dated June 9, 2005 (the "Board Resolution Guarantee").[2] On October 22, 2009, Wincent submitted a derivative questionnaire and supporting documentation with respect to the Claim pursuant to the Bar Date Order.[3]

**B.    The LBF Proceedings**

10. On April 3, 2013, PricewaterhouseCoopers AG, as the appointed bankruptcy liquidator (the "Liquidator") of the LBF estate issued Ruling no. 181 (the "Liquidator's Ruling") rejecting the LBF Claim in the LBF Proceedings. In response thereto, on April 22, 2013, Wincent filed a "Position Paper" with the Liquidator setting forth its reasons why the

---

[1]   On July 2, 2009, the Bankruptcy Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

[2]   Pursuant to the Board Resolution Guarantee, LBHI guaranteed the obligations of certain of its affiliates, including LBF.

[3]   In accordance with the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated as of April 19, 2010, all of the information and documentation submitted by Wincent in connection with the Claim and questionnaire are part of the record and incorporated herein. Wincent is not required to submit them in connection with this Response.

Liquidator's Ruling with respect to the LBF claim was wrong and without legal merit. In the same correspondence, Wincent notified the Liquidator that it did not intend to file a challenge with the bankruptcy court in Switzerland due, among other reasons, to the unreasonably high court fees associated with filing such a challenge in Switzerland and the fact that the issues in question are English law governed and fall to be determined by an English Court. As a result, the LBF Claim was rejected by the Liquidator in the LBF Proceedings, however, Wincent still is a party to a dispute regarding the value of such claim in the English Court as explained below (¶ 18).

## ARGUMENT

11.     As noted at the outset, the Plan Administrator seeks to disallow the Claim in its entirety with such disallowance being based on no more than a generic statement that "[t]he Plan Administrator has determined that, based on the fair, accurate, and reasonable values of [Wincent's] Derivatives Contract and the netting provisions thereunder, LBF and, therefore, LBHI do not owe any amounts to [Wincent]."[4]  Objection ¶ 10. This determination is premised on the Plan Administrator's generic assertion that it has reviewed the claims, documentation provided in support thereof, LBHI's books and records, and "other available information."[5] The Objection does not contain any further detail or explanation and fails on its face to identify *any*

---

[4]     The Objection s sets forth a generic statement regarding the "multi-step process" used by the Plan Administrator to review claims based on derivative contracts without any specific detail as to the process or the specific Claim at issue.  *See* Objection, fn. 1.

[5]     The Objection, in passing, notes that "upon information and belief, the LBF Claimants each asserted a claim against LBF in LBF's foreign insolvency proceeding. In each such case, the liquidators of LBF's estate determined that LBF had no liability to the LBF Claimants. The LBF Claimants did not challenge the liquidators' determination and therefore, the primary claims were expunged against LBF." The Objection does not purport to seek disallowance of the Claim against LBHI based on the Liquidator's rejection of the LBF Claim, nor can it.

basis to support an objection to the Claim. To the extent that the Objection rests upon the foregoing to shift the burden back to the claimant, it fails.

### A. Applicable Legal Standard

12. A properly filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). Section 502(b) of the Bankruptcy Code provides, in pertinent part, that if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim and shall allow the claim in such amount except to the extent that one of the exceptions enumerated in section 502(d) applies. U.S.C. §502(b); *In re Rockefeller Center Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). A properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed R. Bankr. P. 3001(f).

13. Following the establishment of a claim's *prima facie* validity, the burden shifts to the objector to show "sufficient evidence" to negate such *prima facie* validity. *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15 (Bankr. S.D.N.Y., Feb. 20, 2007); *J.P. Morgan Sec's., Inc. v. Spiegel Creditor Trust (In re Spiegel, Inc.)*, Case Nos. 03-11540 (BRL), 06-CV-13477 (CM), 2007 WL 2456626 at * 15 n.6 (S.D.N.Y. Aug. 22, 2007). Such "sufficient evidence" must be of equal or greater probative force to that of the proof of claim which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (*internal quotations omitted*) (quoting *In re Allegheny Intern., Inc.* 954 F.2d 167, 173-174 (3d Cir. 1992) quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)); *In re Spiegel, Inc.*, 2007 WL 2456626 at *15; *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (evidence must be of equal force). "Mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence. *See Riverbank, Inc. v. Make Meat Corp. (In re Make*

*Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear.  To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim."); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (testimonial evidence was sufficient to shift the burden back to the claimant to prove the validity of its claim).

14. Only when the objector meets its burden and puts forth such "sufficient evidence" does the burden shift back to the claimant and the claimant "is required to meet the usual burden of proof to establish the validity of the claim."  *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15-16; *In re Oneida Ltd.*, 400 B.R. at 389.

B. **The Plan Administrator Has Not Put Forth Evidence to Rebut the Claim**

15. In order to satisfy its burden, the Plan Administrator must put forth sufficient evidence to demonstrate that the Claim should be disallowed.  The Plan Administrator has not put forth any "evidence" to rebut the *prima facie* validity of the Claim.  Instead, the Objection summarily asserts that the Plan Administrator "has determined" based on its review of materials that "LBF, and therefore LBHI, do not owe any amounts" to Wincent.  Objection at ¶ 10.

16. The Plan Administrator's statements are conclusory and amount to, at best, mere assertions.  *See*, *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence).

17. The Agreement is clear that the Non-Defaulting Party is the party that is entitled to calculate the Early Termination Amount.  LBF as the Defaulting Party is not entitled pursuant to the Agreement to merely put forth its own determination of such amount, and neither is the

guarantor. Pursuant to the Agreement, the Plan Administrator's determination with respect to value is irrelevant unless the Plan Administrator puts forth evidence and demonstrates that Wincent's calculations do not comply with the Agreement. The Plan Administrator has not put forth any such evidence in its Objection. Accordingly, the Objection should be denied on that ground.

18.     Additionally, the Early Termination Amount, upon which the Claim is premised, is currently the subject of English court proceedings (the "English Proceedings") in the Commercial Court in the Queen's Bench Division of the High Court of Justice (the "English Court"), under Claim no. 2013 Folio 470.[6] Under the case management schedule set in the English Proceedings, a trial on the parties' claims and counterclaims is scheduled for February 2015 (the "English Proceedings Trial"). Although not binding on this Court, Wincent submits that a decision by the English Court as to an English-law governed agreement and after the occurrence of a full merits trial, including the exchange of witness and expert reports on the valuation issues, may be influential to this Court in making a determination on the Claim. Indeed, to the extent the English Court finds after conclusion of the English Proceedings Trial that amounts are owing to Wincent as a result of the termination of Transactions under the Agreement and certain collateral provided to LBF, it may provide further weight as to the validity of the Claim. Accordingly, litigating the complex valuation issues under an English-law governed ISDA agreement before this Court at this time would result in unnecessary costs for the parties and be a waste of judicial resources.

---

[6]     On November 12, 2009, the English Court entered an order recognizing the insolvency proceedings of LBF as foreign main proceedings under the Cross-Border Insolvency Regulation 2006 (SI2006/1030).

19.     Consequently, the Plan Administrator has not met its initial burden of refuting the amounts set forth in the Claim and, accordingly, has not shifted the burden of proving the Claim to Wincent.  It remains the Plan Administrator's burden to produce "sufficient evidence" that the Claim should be disallowed.

C.      **Reservation of Rights**

20.     Wincent reserves the right to file a supplemental and/or amended response to the Objection, shall it deem it necessary to do so.  To the extent that an evidentiary hearing is needed to adjudicate the merits of the Claim, Wincent reserves the right to request a full evidentiary hearing pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the basis for, the calculation methodology, and the amount of the Claim.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Wincent respectfully requests that the Court (i) overrule the Objection as it pertains to the Claim, and (ii) grant such further relief as the Court deems just.

Dated: New York, New York
August 28, 2014

                                              Respectfully submitted,
                                              CLIFFORD CHANCE US LLP

                                              By: /s/ *Jennifer C. DeMarco*
                                              Jennifer C. DeMarco
                                              Adam Lesman

                                              31 West 52nd Street
                                              New York, NY 10019
                                              Tel: (212) 878-8000
                                              Fax: (212) 878-8375

                                              *Counsel to Wincent Investment Limited*