WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
|  |  |
|---|---|
| In re | : **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : **08-13555 (SCC)** |
| Debtors. | : **(Jointly Administered)** |

--------------------------------------------------------------------x

**DECLARATION OF WILLIAM A. OLSHAN**
**IN SUPPORT OF MOTION FOR AUTHORIZATION FOR LEHMAN**
**BROTHERS SPECIAL FINANCING INC. AND LEHMAN BROTHERS**
**COMMERCIAL CORPORATION TO INVEST DISPUTED CLAIMS RESERVES**
**FOR CLAIM NUMBERS 66455 AND 66476 PURSUANT TO SECTION 8.4 OF**
**THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN**
**BROTHERS HOLDINGS INC.  AND ITS AFFILIATED DEBTORS**

Pursuant to 28 U.S.C. § 1746, I, William A. Olshan, declare:

1.      I am over the age of 18 years and make these statements of my own personal

knowledge, my review of relevant business records of Lehman Brothers Holdings Inc. ("LBHI"

or the "Plan Administrator"), Lehman Brothers Special Financing Inc. ("LBSF"), and Lehman

Brothers Commercial Corporation ("LBCC," collectively with their other chapter 11 affiliates,

the "Chapter 11 Estates"), and my consultation with other employees and advisors of the Chapter

11 Estates.  If called to testify, I could testify to the truth of the matters set forth herein.

2.      I submit this declaration in support of the Plan Administrator's *Motion for Authorization for Lehman Brothers Special Financing Inc. and Lehman Brothers Commercial Corporation to Invest Disputed Claims Reserves for Claim Numbers 66455 and 66476 Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, dated August 22, 2014 (ECF No. 46073) (the "Motion").[1]

3.      I am a Managing Director with LBHI in its in-house litigation department. I joined Lehman Brothers in 1990 and continued with LBHI after the commencement of these chapter 11 cases. In my current role at LBHI, I am responsible for and involved in overseeing litigations brought by and against the Chapter 11 Estates, including, in particular, the litigation with JPMCB and certain of its affiliates regarding the validity and amount of the JPMCB Claims (Adv. Pro. No. 12-01874) and the assertion that the JPMCB Claims were secured by LBHI collateral (Adv. Pro. No. 10-03266). As stated in the Motion, the "JPMCB Claims" refer to claim number 66455 filed by JPMCB against LBSF (the "LBSF Claim") and claim number 66476 filed by JPMCB against LBCC (the "LBCC Claim"). JPMCB and its affiliates have asserted other claims against the Chapter 11 Estates and their affiliates and applied LBHI collateral to such other claims. Those other claims are unrelated to the Motion.

4.      I am the primary representative on behalf of the Chapter 11 Estates on matters concerning the Collateral Disposition Agreement among the Chapter 11 Estates and JPMCB and certain of its affiliates (the "CDA"). The CDA was approved by the Court on March 24, 2010. I was involved in the negotiation of the CDA in 2010 and subsequent amendments thereto. I also participated on behalf of the Chapter 11 Estates in negotiations relating to the modifications to

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

the CDA that are referred to in the Motion, which are embodied in a letter agreement among

LBHI, LBSF, LBCC, JPMCB and J.P. Morgan Securities plc that was executed on September 4,

2014 (the "Letter Agreement"). The Letter Agreement also addresses LBSF's claims for certain

distributions by special purpose vehicles. A copy of the Letter Agreement is attached hereto as

Exhibit A.

     5.     I have reviewed the Motion, which I approved prior to its filing. I adopt the

representations contained in the Motion, including the description of the terms and conditions of

the Investments as described in paragraph 14 of the Motion, as if set forth in full in this

Declaration. Copies of the LBSF Note and the LBCC Note are attached hereto as Exhibit B and

Exhibit C, respectively.

     6.     The Motion seeks authorization for an inter-debtor arrangement whereby the

Lehman Entities would invest excess Cash reserves for the LBSF Claim and the LBCC Claim

that are currently trapped in their estates in secured notes to be issued by LBHI. If the

Investments are approved, LBHI will be able to distribute at least an incremental $560 million in

the upcoming sixth Plan Distribution scheduled to commence on October 2, 2014 and additional

amounts that would otherwise be reserved in future Distributions. In addition, as a return on

their Investments, LBSF and LBCC will earn an enhanced rate of interest compared to the

current return on their investments in Cash and Cash-equivalents.

     7.     JPMCB filed (a) the LBSF Claim in the net unsecured amount of approximately

$1.7 billion, and (b) the LBCC Claim in the net unsecured amount of $125 million, for a total

unsecured claim amount of approximately $1.825 billion. These amounts are net of JPMCB's

setoff of approximately $410 million in funds belonging to LBSF with respect to the LBSF

Claim and further reductions of approximately $220 million of the LBSF Claim and the LBCC

Claim based upon JPMCB's setoff of amounts due to LBSF or LBCC from JPMCB's affiliates, which setoffs are contested by LBSF and LBCC.

8.      JPMCB also filed claim number 66462 against LBHI asserting that LBHI is a guarantor of, among other claims, the LBSF Claim and the LBCC Claim, and that such guarantee obligations are secured by collateral pursuant to a Security Agreement dated September 9, 2008. On or about October 29, 2008, JPMCB applied certain LBHI cash purportedly pledged as collateral based on a purported guaranty by LBHI against, among other claims, the LBSF Claim and the LBCC Claim.  Additional LBHI cash was later provisionally applied against the LBSF Claim and the LBCC Claim pursuant to the CDA.  As of today, a total of approximately $1.745 billion of LBHI's cash purportedly pledged as collateral has been applied against the LBSF Claim and the LBCC Claim.[2]  As a result, LBHI is subrogated with respect to $1.745 billion in the aggregate of the LBSF Claim and the LBCC Claim.

9.      The Chapter 11 Estates have filed various objections to the JPMCB Claims, including challenges to the validity and amount of those claims (Adv.  Pro. No. 12-01874) and challenges to the assertion that the JPMCB Claims were secured by LBHI funds applied to the JPMCB Claims (Adv.  Pro. No. 10-03266).  JPMCB has disputed the same.  Until the resolution of the objections to the validity and amount of the LBSF Claim and the LBCC Claim, such claims are disputed.  In accordance with the reserve requirements set forth in the Plan, therefore, LBSF and LBCC have reserved to date an aggregate of over $600 million (including amounts attributable to Plan Adjustment).

---

[2] The difference between the asserted unsecured amount of the JPMCB Claims of approximately $1.825 billion and the $1.745 billion is due to the application of LBHI collateral against an approximately $80 million claim against LBSF asserted by Washington Mutual Bank (f/k/a Washington Mutual Bank, FA), a JPMCB affiliate, which was later agreed to be an unsecured claim pursuant to a settlement.

WEIL:\95073184\7\58399.0011

10.     The reserves maintained by LBSF and LBCC on account of the LBSF Claim and the LBCC Claim are duplicative of LBHI cash collateral that has already been applied by JPMCB against the LBSF Claim and the LBCC Claim.  The amounts reserved by LBSF and LBCC will either ultimately be paid to LBHI as subrogee of JPMCB or, to the extent JPMCB's application of collateral against or the amount of the JPMCB Claims is successfully challenged by the Plan Administrator, JPMCB will return cash to LBHI that can be utilized to make Distributions or to reestablish any required reserves.  As stated, pursuant to the Letter Agreement, JPMCB has agreed to promptly repay to LBHI certain amounts required to repay the Notes upon resolution of the objections to the LBSF Claim or the LBCC Claim.

11.     As a result, following the final resolution of the objections to the LBSF Claim and the LBCC Claim, LBHI will receive, in connection with the LBSF Claim and the LBCC Claim, a minimum of $560 million plus any additional amounts that will be reserved for the LBSF Claim and the LBCC Claim for future Distributions, based on:  (i) Distributions from LBSF and LBCC of the amounts held in reserve for these claims to LBHI as subrogee of JPMCB; (ii) return of cash from JPMCB; or (iii) a combination of these two payment sources.  The Investments will simply accelerate the distribution of such amounts to creditors of LBHI, including creditors of LBSF and LBCC that hold corresponding Guarantee Claims against LBHI, without prejudice to any stakeholder.

12.     I and my colleagues involved in the management of the Chapter 11 Estates have concluded, in our considered business judgment and after extensive consultation with our legal advisors, that the Investments are appropriate and will serve the best interests of creditors of LBHI, LBSF and LBCC.  The boards of directors of LBHI, LBSF (including its independent

director) and LBCC have also thoroughly considered the circumstances and have approved the

Investments (including LBSF's independent director).

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct to the best of my knowledge.

Executed on this 4th day of September 2014.


/s/ William A. Olshan
William A. Olshan

## Exhibit A

**Letter Agreement**

Execution Version

## LETTER AGREEMENT

September 4, 2014

This letter evidences the agreement among Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commercial Corporation ("LBCC"), JPMorgan Chase Bank, N.A. ("JPMCB") and J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd. and, together with JPMCB, the "JPMorgan Entities") referenced in Section 2 of the Motion (as defined below) to modify the CDA (as defined below).

Reference is made to the Collateral Disposition Agreement dated March 16, 2010 to which the undersigned are parties (as amended, the "CDA"). Further reference is made to (i) the *Motion for Authorization for LBSF and LBCC to Invest Disputed Claims Reserves for Claim Numbers 66455 and 66476 Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* filed with the United States Bankruptcy Court for the Southern District of New York on August 22, 2014 (the "Motion"); (ii) the LBSF Intercompany Note and Security Agreement to be issued in a form authorized by the Motion (the "LBSF Note") and payable by LBHI to LBSF; and (iii) the LBCC Intercompany Note and Security Agreement to be issued in a form authorized by the Motion (the "LBCC Note") and payable by LBHI to LBCC. Capitalized terms used but not defined herein shall have the meanings given to such terms in the CDA.

## I.    Modifications To The CDA

Pursuant to the Motion, LBHI, as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), sought authorization to enter into an inter-debtor arrangement whereby LBSF and LBCC would invest excess cash reserves for claim numbers 66455 and 66476 that are currently held by their estates (as the same may be supplemented in connection with future Distributions (as defined in the Plan) pursuant to the Plan or otherwise, the "LBSF Reserve" and the "LBCC Reserve," respectively) in the LBSF Note and the LBCC Note. The parties hereto hereby agree as follows:

### A.  JPMCB LBSF Claim.

i.    If the objection to claim number 66455 asserted by JPMCB against LBSF (the "LBSF Claim") is decided by a Binding Determination (the "LBSF Claim Decision") and the LBSF Claim Decision finds that all or a portion of the LBSF Claim is disallowed, then, within five (5) business days following the LBSF Claim Decision, JPMCB shall pay to LBHI an amount equal to the portion of the LBSF Reserve invested in the LBSF Note that is attributable to the disallowed portion of the LBSF Claim, plus interest earned on such amount pursuant to the LBSF Note (the "Disallowed LBSF Reserve Amount"). The Disallowed LBSF Reserve Amount shall be payable by JPMCB to LBHI whether or not LBHI has prepaid the principal and interest under the LBSF Note in a corresponding amount. To the extent LBHI has not previously

prepaid the corresponding principal and interest under the LBSF Note, upon receipt of the Disallowed LBSF Reserve Amount, LBHI shall be required to repay any remaining unpaid principal and interest on the LBSF Note (any cash payment to be net of any amounts credited to repayment of the LBSF Note that day pursuant to I.A(iii) below or the terms of the LBSF Note). The amount paid by JPMCB pursuant to this clause I.A(i) shall be a credit against the obligation of JPMCB to pay LBHI in respect of such disallowance as and when otherwise required pursuant to the CDA.

ii.     If a Binding Determination finds that all or a portion of the allowed amount of the LBSF Claim was not secured by LBHI's collateral (the "LBSF Collateral Decision"), LBHI shall transfer the allowed unsecured LBSF Claim (the "Allowed Unsecured LBSF Claim") to JPMCB in accordance with Paragraph 6 of the CDA and JPMCB shall be entitled to a credit, determined pursuant to this clause I.A(ii), against any payments otherwise owing to LBHI by JPMCB pursuant to the CDA (other than pursuant to clause I.A(i) or I.B(i)) (the "LBSF Credit"). The amount of the LBSF Credit shall be equal to the portion of the LBSF Reserve invested in the LBSF Note that is attributable to the Allowed Unsecured LBSF Claim, plus interest earned on such amount pursuant to the LBSF Note. Following the LBSF Collateral Decision, JPMCB may apply the LBSF Credit against any amount owing by JPMCB to LBHI pursuant to the CDA, other than the Disallowed LBSF Reserve Amount and the Disallowed LBCC Reserve Amount (as defined below), and such application shall be considered a payment by LBHI to JPMCB of the corresponding Distributions (as defined in the Plan).

iii.    If the LBSF Claim Decision occurs after the LBSF Collateral Decision, on the fifth business day after the LBSF Claim Decision, the amount of the LBSF Credit shall be considered both a Distribution (as defined in the Plan) to JPMCB by LBHI (up to the amount of the portion of the LBSF Reserve invested in the LBSF Note that is attributable to the Allowed Unsecured LBSF Claim and interest owing on such amount under the Plan) and a repayment to LBSF by LBHI of the LBSF Note in the amount of the LBSF Credit. To the extent LBHI has previously prepaid all or a portion of the LBSF Note, LBSF shall return to LBHI any excess repayment. The LBSF Credit shall not affect LBSF's obligation to pay any other Distributions owing in respect of the Allowed Unsecured LBSF Claim, including, but not limited to, Distributions for which LBSF established non-cash reserves.

B.   JPMCB LBCC Claim.

i.      If the objection to claim number 66476 asserted by JPMCB against LBCC (the "LBCC Claim") is decided by a Binding Determination (the "LBCC Claim Decision") and the LBCC Claim Decision finds that all or a portion of the LBCC Claim is disallowed, then, within five (5) business days following the LBCC Claim Decision, JPMCB shall pay to LBHI an amount equal to the portion of the LBCC Reserve invested in the LBCC Note that is attributable to the disallowed portion of the LBCC Claim, plus interest earned on such amount pursuant to the LBCC Note (the "Disallowed LBCC Reserve Amount"). The Disallowed LBCC Reserve

Amount shall be payable by JPMCB to LBHI whether or not LBHI has prepaid the principal and interest under the LBCC Note in a corresponding amount. To the extent LBHI has not previously prepaid the corresponding principal and interest under the LBCC Note, upon receipt of the Disallowed LBCC Reserve Amount, LBHI shall be required to repay any remaining unpaid principal and interest on the LBCC Note (any cash payment to be net of any amounts credited to repayment of the LBCC Note that day pursuant to I.B(iii) below or the terms of the LBCC Note). The amount paid by JPMCB pursuant to this clause I.B(i) shall be a credit against the obligation of JPMCB to pay LBHI in respect of such disallowance as and when otherwise required pursuant to the CDA.

ii.    If a Binding Determination finds that all or a portion of the allowed amount of the LBCC Claim was not secured by LBHI's collateral (the "LBCC Collateral Decision"), LBHI shall transfer the allowed unsecured LBCC Claim (the "Allowed Unsecured LBCC Claim") to JPMCB in accordance with Paragraph 6 of the CDA and JPMCB shall be entitled to a credit, determined pursuant to this clause I.B(ii), against any payments otherwise owing to LBHI by JPMCB pursuant to the CDA (other than pursuant to clause I.A(i) or I.B(i)) (the "LBCC Credit"). The amount of the LBCC Credit shall be equal to the portion of the LBCC Reserve invested in the LBCC Note that is attributable to the Allowed Unsecured LBCC Claim, plus interest earned on such amount pursuant to the LBCC Note. Following the LBCC Collateral Decision, JPMCB may apply the LBCC Credit against any amount owing by JPMCB to LBHI pursuant to the CDA, other than the Disallowed LBCC Reserve Amount and Disallowed LBSF Reserve Amount, and such application shall be considered a payment by LBHI to JPMCB of the corresponding Distributions (as defined in the Plan).

iii.    If the LBCC Claim Decision occurs after the LBCC Collateral Decision, on the fifth business day after the LBCC Claim Decision, the amount of the LBCC Credit shall be considered both a Distribution (as defined in the Plan) to JPMCB by LBCC (up to the amount of the portion of the LBCC Reserve invested in the LBCC Note that is attributable to the Allowed Unsecured LBCC Claim and interest owing on such amount under the Plan) and a repayment to LBCC by LBHI of the LBCC Note in the amount of the LBCC Credit. To the extent LBHI has previously prepaid all or a portion of the LBCC Note, LBCC shall return to LBHI any excess repayment. The LBCC Credit shall not affect LBCC's obligation to pay any other Distributions owing in respect of the Allowed Unsecured LBCC Claim, including, but not limited to, Distributions for which LBCC established non-cash reserves.

C.    If any of the amounts paid by JPMCB pursuant to I.A(i) or I.B(i) are attributable to LBHI collateral that was otherwise eligible to be reallocated and applied in accordance with Paragraph 5(b) of the CDA, then an equal amount of any remaining payment owed to LBHI by JPMC that would not otherwise have been so eligible shall be deemed eligible to be so reallocated and applied.

D. It is the intent of the parties that this letter modify the CDA solely as expressly provided herein. Except as expressly modified hereby, the provisions of the CDA shall remain in full force and effect and the parties retain all rights and remedies thereunder, including without limitation all rights to assert or contest the assertion that JPMCB is entitled to defer other payments to LBHI resulting from any Binding Determination beyond the fifth (5th) business day following such Binding Determination.

II.   <u>Agreements Related To SPVs</u>

In addition to the foregoing, the JPMorgan Entities and LBSF hereby agree as follows:

A. LBSF agrees not to seek any recovery from the JPMorgan Entities or their subsidiaries or affiliates with respect to the receipt by a JPMorgan Entity of the following distributions:

   i.   Copper Creek CDO SPC, f/a/o Series 2007-1 Segregated Portfolio, Class B-1 (Distributed Amount $41,489,819, Disputed Amount $31,643,669 plus interest; received by JPMCB as collateral agent for Lehman Brothers International (Europe))

   ii.   Kings River Limited (Distributed Amount, $20,288,044, Disputed Amount $5,400,677 plus interest; received by JPMCB for EuroClear Bank, provided that EuroClear Bank did not receive such distributions on behalf of the JPMorgan Entities or their subsidiaries or affiliates)

   iii.   Any of the following that a JPMorgan Entity can reasonably demonstrate were remitted or made available to unaffiliated customers:

      i.   Penn's Landing CDO SPC, f/a/o the Series 2007-1 Segregated Portfolio, Class B-1 (Distributed Amount $15,150,106, Disputed Amount $9,055,596 plus interest)

      ii.   Stowe CDO SPC, f/a/o the Series 2006-1 Segregated Portfolio, Class B-2 (Distributed Amount $10,121,519, Disputed Amount $6,627,439 plus interest)

      iii.   801 Grand CDO SPC, f/a/o the Series 2006-1 Segregated Portfolio, Class E-1 (Distributed Amount $1,538,214, Disputed Amount same plus interest).

B. The applicable JPMorgan Entity agrees to execute, at LBSF's request, with respect to each disputed distribution described above in II.A(i), (ii) and (iii) (in the case of (iii), to the extent that LBSF agrees not to pursue a recovery against the JPMorgan Entities and their subsidiaries and affiliates), a consent judgment, in substantially the same form as attached hereto, acknowledging that the applicable JPMorgan Entity was an initial transferee or conduit of the distribution and that the distribution was an avoidable transfer (but not an intentional fraudulent transfer involving fraudulent intent on the part of a JPMorgan Entity), all to the extent necessary to enable LBSF to pursue a recovery against a subsequent transferee. Such a consent judgment would have no precedential effect with respect to any JPMorgan Entity or its subsidiaries or affiliates, including without limitation in the pending LBSF lawsuit with respect to all other recoveries. Such consent judgment would be without prejudice to the rights of any subsequent transferee to dispute

whether such transfer was avoidable as to such transferee. LBSF will have no recourse against the JPMorgan Entities and their subsidiaries and affiliates for or in connection with the relevant SPV distribution if it fails to recover from any subsequent transferee.

C. With respect to any SPV distributions paid to a JPMorgan Entity or any subsidiary or affiliate other than the distributions set forth in clause II.A above, LBSF will not pursue the JPMorgan Entities or their subsidiaries or affiliates with respect to such distributions if such recipient can reasonably demonstrate that it received such distributions on behalf of an unaffiliated party and such recipient complies with the conditions set forth in clause II.B above with respect to such distributions.

D. The JPMorgan Entities shall reasonably cooperate with LBSF in any discovery in connection with any litigation relating to all SPV distributions.

The modifications to the CDA and the agreements between LBSF and the JPMorgan Entities set forth in clauses II.A-II.D above shall be effective upon the entry of an order by the Bankruptcy Court approving the Motion.

Any reference to the CDA contained in any notice, request, certificate or other document executed concurrently with or after the execution and delivery of this letter agreement shall be deemed to refer to the CDA, as modified by this letter agreement.

This letter agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. This letter agreement may be executed in counterparts and shall be governed by the laws of the State of New York.

*[Signature page follows]*

IN WITNESS WHEREOF, the undersigned parties hereto have each caused this letter agreement to be executed and delivered on the date first written above.

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name: MATTHEW CANTOR
Title: EVP LEGAL AFFAIRS

LEHMAN BROTHERS SPECIAL
FINANCING INC.

By: _____
Name: MATTHEW / CANTOR
Title: EVP LEGAL AFFAIRS

LEHMAN BROTHERS COMMERCIAL
CORPORATION

By: _____
Name: MATTHEW CANTOR
Title: EVP LEGAL AFFAIRS

JPMORGAN CHASE BANK, N.A.

By: *Lawrence N. Chanen*
Name: LAWRENCE N. CHANEN
Title: SENIOR VICE PRESIDENT and
ASSOCIATE General Counsel

J.P. MORGAN SECURITIES PLC

By: _____
Name:
Title:

[Signature Page to September 2014 Letter Agreement]

JPMORGAN CHASE BANK, N.A.

By: _____
Name:
Title:

J.P. MORGAN SECURITIES PLC

By: _____
Name: REBECCA SMITH
Title: EXECUTIVE DIRECTOR &
ASSISTANT GENERAL COUNSEL

**<u>Form of Consent Judgment</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
––––––––––––––––––––––––––––––––––––––––––X

In re:                                                    :        Chapter 11
                                                                   Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*    :

                              Debtors.                    :
––––––––––––––––––––––––––––––––––––––––––X

LEHMAN BROTHERS SPECIAL FINANCING INC.,   :        Adversary Proceeding
                                                                   No. 10-03547 (SCC)
                              Plaintiff,                  :

– against –                                               :

BANK OF AMERICA NATIONAL ASSOCIATION, *et* :
*al.*,
                                                          :
                              Defendants,                 :

                                                          :
––––––––––––––––––––––––––––––––––––––––––X

## CONSENT JUDGMENT

Lehman Brothers Special Financing Inc. ("LBSF"), and [insert applicable JP Morgan
Entity] ("the JPMorgan Entity") hereby agree as follows:

**WHEREAS,** LBSF alleges that the JP Morgan Entity was an [initial transferee] [or]
[conduit] with respect to the following distributions (the "Disputed Distributions"): [identify
distribution]

**WHEREAS,** on or about September __, 2014, Lehman Brothers Holdings Inc., LBSF,
Lehman Brothers Commercial Corporation and the JPMorgan Entities (as defined in the
Agreement) entered into a Letter Agreement ("Agreement"), in order to settle certain matters in
controversy among them, upon the terms set forth therein; and

**WHEREAS,** pursuant to the terms of the Agreement, the JPMorgan Entity has consented to the entry of judgment against the JPMorgan Entity subject to the terms and conditions set forth in the Agreement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, ORDERED AND ADJUDGED,** that judgment be entered in this action against the JPMorgan Entities as follows:

1.    The JPMorgan Entity was the initial transferee of the Disputed Distributions and the Disputed Distributions are hereby avoided to the extent necessary to enable LBSF to pursue recovery of the Disputed Distributions from any subsequent transferees from the JPMorgan Entity. [or]

The JPMorgan Entity was a conduit and was not the initial transferee of the Disputed Distributions.

2.    LBSF's rights under this Consent Judgment are limited as set forth by the terms of the Agreement. Without limitation of the foregoing, (a) this Consent Judgment shall afford no right to a recovery against the JPMorgan Entity of any of its subsidiaries or affiliates, (b) this Consent Judgment shall have no precedential effect with respect to the JPMorgan Entity or any of its subsidiaries or affiliates, including without limitation in the pending LBSF lawsuit with respect to all other distributions and recoveries other than the Disputed Distributions, (c) this Consent Judgment shall be without prejudice to the rights of any subsequent transferee to dispute whether such transfer was avoidable as to such transferee, and (d) LBSF will have no recourse against the JPMorgan Entity and any of its subsidiaries and affiliates for or in connection with the relevant SPV distribution if it fails to recover from any subsequent transferee. This Consent

Judgment shall not be construed as an admission of an intentional fraudulent transfer involving fraudulent intent on the part of the JPMorgan Entity or any of its subsidiaries or affiliates.

      3.      This Consent Judgment is not assignable.

      4.      The Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Consent Judgment, or any provision thereof, subject in all cases to the terms of the Agreement.

      6.      The signatories to this Consent Judgment represent that they are expressly authorized to bind the respective parties to the terms hereof and hereby represent that the parties have read, understand, agree and consent to the foregoing Consent Judgment and all of the terms and conditions set forth herein.

      7.      The undersigned represent that the respective parties have obtained the advice of counsel and are consenting and agreeing to all of the terms of this Consent Judgment freely and voluntarily.

      8.      The Clerk of Court shall enter judgment as set forth herein.

**AGREED AND CONSENTED TO:**

Lehman Brothers Special Financing Inc.

By:_____

[JPMorgan Entity]

By:_____

SO ORDERED:

/s/ _____

UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**LBSF Note**

WEIL:\95073184\7\58399.0011

**LBSF INTERCOMPANY NOTE AND SECURITY AGREEMENT**

[_____ __], 2014

**FOR VALUE RECEIVED**, LEHMAN BROTHERS HOLDINGS INC., a corporation organized under the laws of Delaware (the "Obligor"), hereby unconditionally promises to pay to LEHMAN BROTHERS SPECIAL FINANCING INC., a corporation organized under the laws of Delaware (the "Payee"), the sum of $452,088,640 (the "Initial Principal Amount") and each additional principal amount recorded on *Exhibit A* hereto (collectively, the "Additional Principal Amounts", and together with the Initial Principal Amount, the "Principal Amount") on the terms and subject to the conditions provided herein. The Obligor and the Payee intend that this LBSF Intercompany Note and Security Agreement (this "Note") constitute indebtedness for all federal, state and local income tax purposes and agree not to take any positions contrary with the foregoing characterization of this Note.

WHEREAS, the Obligor, the Payee, certain of their affiliates, JPMorgan Chase Bank, N.A. ("JPMCB") and certain of its affiliates entered into that certain Collateral Disposition Agreement, dated as of March 16, 2010 (as amended, the "CDA"), pursuant to which, JPMCB provisionally applied a certain amount of the Obligor's cash, purportedly pledged as collateral to JPMCB based on a purported guaranty by the Obligor, towards JPMCB's proof of claim, number 66455, against Payee (the "LBSF Primary Claim"), as a result of which the Obligor has become subrogated with respect to the amount so applied;

WHEREAS, the Payee has agreed to invest (the "LBSF Investment") with the Obligor a portion of the aggregate cash amount that would otherwise be reserved by the Payee with respect to the LBSF Primary Claim pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors (the "Plan") and the Order Authorizing Use of Non-Cash Assets In Lieu Of Available Cash As Reserves For Disputed Claims Pursuant to Section 8.4 of the Debtors' Confirmed Joint Chapter 11 Plan (ECF No. 25641) (such investment amount, excluding any reserve amounts subject to the Plan Adjustment (as defined in the Plan), the "Reserve Amount"); and

WHEREAS, the LBSF Investment and the entry into this Note by the parties hereto have been approved by the United States Bankruptcy Court for the Southern District of New York.

NOW, THEREFORE, in consideration of the premises and the covenants and agreements contained herein, the parties hereto hereby agree as follows:

1.    Additional Advances.  Additional Principal Amounts may be advanced to the Obligor under this Note in connection with additional Distributions pursuant to and as defined in the Plan and recorded on *Exhibit A* hereto; *provided* that the aggregate Principal Amount shall not exceed at any time the aggregate Reserve Amount.

2.    Interest.  Interest shall accrue on the outstanding Principal Amount of this Note from the date of advance of the Initial Principal Amount until the repayment of all amounts outstanding under this Note, at a rate per annum equal to the rate of interest earned by the Payee on the investments of its disputed claim reserves for its Disputed Claims (as defined in the Plan) (other than the LBSF Primary Claim), determined quarterly on the last day of each calendar quarter plus 0.50% per annum.  Interest shall be computed on the basis of a 360-day year consisting of twelve 30-day months but calculated and

paid on the basis of the actual number of days elapsed.  Accrued and unpaid interest shall be payable (a) on the date of any voluntary, mandatory or deemed repayment under this Note, (b) the Maturity Date, or (c) when the unpaid Principal Amount hereof is declared due and payable.

3.    Maturity.  The full outstanding Principal Amount of this Note, together with all accrued and unpaid interest hereunder, shall become due and payable on the date (the "Maturity Date") that is ten days following a Binding Determination (as defined in the CDA) with respect to the objections filed by the Payee and the Obligor to the LBSF Primary Claim (Adv. Pro. No. 12-01874) (the "Maturity Trigger").

4.    Deemed Repayment.  If following the Maturity Trigger all or part of the LBSF Primary Claim remains a subrogated claim of the Obligor, then a Prepayment (as hereinafter defined) of the Principal Amount and accrued interest thereon shall be deemed to be made in the amount of the Distribution then due to the Obligor with respect to such portion of the LBSF Primary Claim that is allowed and to which the Obligor is subrogated (including any interest payable on such Distribution as provided in section 8.4 of the Plan), excluding amounts attributable to any Plan Adjustment (the "Deemed Repayment").  The Deemed Repayment shall be in lieu of Payee's Distribution of such amount to the Obligor.

5.    Payments Generally, Etc.   Subject to Section 4, each payment of all or part of the Principal Amount of this Note, together with all accrued and unpaid interest hereunder, shall be payable by wire transfer of immediately available funds to a bank account specified by Payee.  All monies due hereunder shall be paid U.S. Dollars.  If any payment on this Note shall be due on a Saturday, Sunday or public holiday on which banks in New York City are authorized to be closed, it shall be payable on the next succeeding business day.  Upon final payment of the full outstanding Principal Amount of this Note, together with all accrued and unpaid interest hereunder, this Note shall be surrendered to the Obligor for cancellation.  All payments hereunder shall be applied to accrued and unpaid interest and to outstanding principal in such order as determined by Payee in its sole discretion.

6.    Prepayment.  The Obligor may, at its option, prepay this Note, in whole or in part, at any time or from time to time without penalty or premium (each such prepayment, a "Prepayment").  Subject to Section 4, any Prepayment of any portion of the Principal Amount of this Note shall be accompanied by payment of all accrued and unpaid interest through the date of such Prepayment.

7.    Proceeds as Authorized Distributions under the Plan.  The Obligor shall be authorized but not directed to distribute as Distributions under the Plan the proceeds of the advances under this Note. Notwithstanding the foregoing, the Obligor shall be required to hold back from such Distributions an amount reasonably estimated by the Obligor equal to 36 months of interest on the Principal Amount from the date of advance of the Initial Principal Amount.

8.    Security.

(a)    In order to secure the full and punctual observance and performance when due, whether at stated maturity, by acceleration, demand or otherwise of the obligations under this Note, including, but not limited to, the payment of all principal, interest and other amounts now or hereafter payable by the Obligor pursuant to this Note (collectively, the "Secured Obligations"), the Obligor hereby charges, assigns, pledges and grants to the Payee a continuing security interest in and to, and a lien upon and right of set-off against, and agrees to transfer to the Payee, as and by way of a security interest having priority over all other security interests (other than with respect to the security interest in the JPMC Adjustment Collateral (as defined below) granted pursuant to the LBCC Note (as defined below)), with power of sale, all of the Obligor's right, title and interest in the following collateral, whether now owned

2

or existing or hereafter acquired or arising and wherever located (the "Collateral"; terms in subclauses (i) through (ii) below shall have the meanings applicable to them as used in Article 9 of the Uniform Commercial Code as in effect from time to time in the State of New York (the "UCC")):

(i)        all accounts, general intangibles, instruments, proceeds (including money) and any right to payment, whether or not such right is evidenced by an instrument and whether or not it has been earned by performance, in each case, arising under or in respect of

(1)        any  JPMC Adjustment Amount (as defined in the CDA) to which the Obligor may be entitled; and

(2)        any Distribution (as defined in the Plan) to which the Obligor may be entitled on account of the subrogated LBSF Primary Claim (excluding any Distribution to which JPMCB may be entitled if such LBSF Primary Claim is determined not to be a subrogated LBSF Primary Claim); and

(ii)        all proceeds, products, accessions, rents and profits of or in respect of the collateral specified in either of subclauses (i)(1) or (i)(2), as applicable, and all proceeds of any insurance, indemnity, warranty or guarantee payable to the Obligor from time to time with respect to such collateral (whether such proceeds arise before or after the commencement of any proceeding by or against the Obligor or with respect to the Obligor).

(b)        The Obligor hereby authorizes the Payee to file, in the name of the Obligor, UCC financing and continuation statements that the Payee may deem necessary or appropriate to protect or maintain the perfection of the security interests.  The Obligor will not except with at least 10 calendar days prior written notice to the Payee change its legal name, identity or organizational structure.

(c)        The Obligor agrees to negotiate and act in good faith as the Payee may request from time to time to take such actions as may be necessary to perfect the security interests in Collateral granted hereunder and for the Payee to obtain the full benefits of this Note and the rights and powers herein granted (including, without limitation, in connection with any transfer or assignment of the Collateral or any part thereof by the Payee when an Event of Default has occurred and is continuing), including without limitation by executing and delivering any such documents, agreements, certificates or other instruments or take such further action to enable the Payee to exercise and enforce any of its rights, powers and remedies with respect to the Collateral. The Obligor shall take all actions necessary or advisable to maintain the continuous validity and perfection at the same or higher priority of the Payee's security interest in the Collateral granted or intended to be granted and agree hereby.

(d)        The Obligor hereby irrevocably constitutes and appoints the Payee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Obligor and in the name of the Obligor or in its own name, at any time and from time to time in the Payee's discretion, for the purpose of carrying out the terms of this Note, at the expense of the Obligor, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Note, and, without limiting the generality of the foregoing, the Obligor hereby gives the Payee the power and right, on behalf of the Payee, without notice to or assent by the Obligor. The Obligor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.  This power of attorney is a power coupled with an interest and is irrevocable.

(e)        The security interest granted by the Obligor shall terminate and all rights to the Collateral shall revert to the Obligor when all Secured Obligations shall have been paid or performed in

3

full.  Upon the termination of the security interest and release of Collateral, the Payee will, at the expense of the Obligor, execute and deliver to the Obligor such documents as the Obligor shall reasonably request to evidence the termination of the security interest and the release of the Collateral.

9.     <u>JPMC Adjustment Collateral Allocation; Waterfall</u>.

(a)     All proceeds received by the Payee in respect of any sale, any collection from, or other realization upon all or any part of the Collateral other than the collateral specified in Section 8(a)(i)(2) (or Section 8(a)(ii) in respect thereof) (collectively, the "<u>JPMC Adjustment Collateral</u>") shall be distributed pro rata among the Payee and Lehman Brothers Commercial Corporation as payee under that certain LBCC Intercompany Note and Security Agreement, dated as of the date hereof (the "<u>LBCC Note</u>"), in proportion to the Principal Amount hereunder and the "Principal Amount" under and as defined in the LBCC Note.  Proceeds of the JPMC Adjustment Collateral entitled to be retained by Payee pursuant to this clause (a) shall be applied as set forth in clause (b) below.

(b)     Subject to clause (a) above, all proceeds received by the Payee in respect of any sale, any collection from, or other realization upon all or any part of the Collateral shall be applied in full or in part by the Payee against, the Secured Obligations in the following order of priority:  <u>first</u>, to the payment of all reasonable costs and expenses of such sale, collection or other realization; <u>second</u>, to the extent of any excess of such proceeds, to the payment of all other Secured Obligations; and <u>third</u>, to the extent of any excess of such proceeds, to the Obligor or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.

10.     <u>Event of Default</u>.

(a)     The occurrence of any one or more of the following events shall constitute an Event of Default (an "<u>Event of Default</u>") under this Note: (i) the failure to pay principal of or interest on this Note when due; or (ii) any failure by the Obligor to perform or comply with any term or condition contained in this Note, and any breach or default hereunder or written repudiation or assertion of the invalidity of the liens granted hereunder.  The Obligor agrees that upon an Event of Default under this Note, then all or any part of the unpaid Principal Amount of and accrued and unpaid interest on this Note, after written notice by the Payee to the Obligor, shall immediately become due and payable.

(b)     If an Event of Default occurs, the Obligor agrees to pay to the Payee all reasonable and documented out-of-pocket expenses incurred by Payee, including reasonable attorneys' fees, in enforcing and collecting this Note or in exercising remedies with respect to the Collateral. The Obligor shall reimburse the Payee for any and all costs and expenses, including reasonable attorneys' fees and expenses, incurred by the Payee in taking any action to collect or otherwise enforce this Note against the Obligor or any other Person who is or may become liable thereunder or in exercising remedies with respect to the Collateral.  All such costs and expenses shall be repayable to the Payee on demand.

(c)     If an Event of Default has occurred and is continuing, the Payee may exercise all the rights of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised) with respect to the Collateral and all rights under any other applicable laws and, in addition, the Payee may, without being required to give any notice, except as herein provided or as may be required by mandatory provisions of law, sell or otherwise dispose of the Collateral or any part thereof. Notice of any such sale or other disposition shall be given to the Obligor 10 days prior to such sale or disposition.

11.     <u>No Waiver by Payee</u>.  No delay or omission of Payee or any other holder hereof to exercise any power, right or remedy accruing to Payee or any other holder hereof shall impair any such

4

power, right or remedy or shall be construed to be a waiver of the right to exercise any such power, right or remedy; nor shall any single or partial exercise by the Payee of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. Payee's right to accelerate this Note for any late payment or Obligor's failure to timely fulfill its other obligations hereunder shall not be waived or deemed waived by Payee by Payee's having accepted a late payment or late payments in the past or Payee otherwise not accelerating this Note or exercising other remedies for Obligor's failure to timely perform its obligations hereunder. No waiver by the Payee of any default or Event of Default shall be deemed to be a waiver of any other subsequent default or Event of Default, nor shall any such waiver by the Payee be deemed to be a continuing waiver. The rights and remedies specified herein are cumulative and are not exclusive of any other rights or remedies the Payee would otherwise have. Payee shall not be obligated or be deemed obligated to notify Obligor that it is requiring Obligor to strictly comply with the terms and provisions of this Note before accelerating this Note and exercising its other remedies hereunder because of Obligor's failure to timely perform its obligations under this Note.

12.     _Obligor Waiver; Indemnity_.     The Obligor hereby forever waives presentment, presentment for payment, demand, protest, notice of protest, notice of dishonor of this Note and all other demands and notices in connection with the delivery, acceptance, performance and enforcement of this Note. The Obligor further agrees to indemnify and hold harmless the Payee from any and all damages, losses, costs and expenses (including, without limitation, attorneys' fees and expenses) which the Payee may incur by reason of the Obligor's failure promptly to pay when due the indebtedness evidenced by this Note.

13.     _Sections_. Section headings appearing in this Note are for convenient reference only and shall not be used to interpret or limit the meaning of any provision of this Note. As used herein, "Section" shall refer to sections of this Note unless otherwise specified.

14.     _VENUE; CHOICE OF LAW_. THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK UNLESS THE CONTEXT REQUIRES OTHERWISE, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF. ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST THE OBLIGOR OR THE PAYEE ARISING OUT OF OR RELATING HERETO SHALL BE BROUGHT IN EITHER (i) THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, IF SUCH COURT HAS SUBJECT MATTER JURISDICTION, OR OTHERWISE (ii) THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, BOROUGH OF MANHATTAN OR, IF THAT COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION, IN ANY STATE COURT LOCATED IN THE CITY OF NEW YORK. BY EXECUTING AND DELIVERING THIS AGREEMENT, THE OBLIGOR, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY (A) ACCEPTS GENERALLY AND UNCONDITIONALLY THE JURISDICTION AND VENUE OF SUCH COURTS; (B) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (C) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS PROVIDED NEXT TO ITS NAME ON THE SIGNATURE PAGE ATTACHED HERETO; AND (D) AGREES THAT SERVICE AS PROVIDED IN CLAUSE (C) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE APPLICABLE PARTY IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT.

15.     _WAIVER OF JURY TRIAL_. EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF

WEIL:\44545266\14\58399.0011

ACTION BASED UPON OR ARISING HEREUNDER OR UNDER ANY OF THE OTHER SECURITY DOCUMENTS OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION OR THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  EACH PARTY HERETO ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS. EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS SECTION 15 AND EXECUTED BY EACH OF THE PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO OR ANY OF THE OTHER SECURITY DOCUMENTS OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOANS MADE HEREUNDER.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

16.    Records of Additional Principal Amounts and Payments.  All Additional Principal Amounts lent to the Obligor shall be evidenced and noted by the Payee on *Exhibit A* hereto and the records of Payee shall be *prima facie* evidence of the amounts owing on this Note; *provided*, *however*, that the failure of the Payee to make such a notation or any error in such notation shall not affect the obligations of the Obligor under this Note.

17.    Severability.  If any provision of this Note is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Note shall not be affected thereby, and this Note shall be liberally construed so as to carry out the intent of the parties to it.  Each waiver in this Note is subject to the overriding and controlling rule that it shall be effective only if and to the extent that (a) it is not prohibited by applicable law and (b) applicable law neither provides for nor allows any material sanctions to be imposed against Payee for having bargained for and obtained it.

18.    Notices.  Any notice, request or other communication required or permitted to be given hereunder shall be given in writing by delivering it against receipt for it, by depositing it with an overnight delivery service or by depositing it in a receptacle maintained by the United States Postal Service, postage prepaid, registered or certified mail, return receipt requested, addressed to the respective parties as reflected in the preamble hereto.  Obligor's address for notice may be changed at any time and from time to time, but only after ten (10) calendar days advance written notice to Payee and shall be the most recent such address furnished in writing by Obligor to Payee.  Payee's address for notice may be changed at any time and from time to time, but only after ten (10) calendar days advance written notice to Obligor and shall be the most recent such address furnished in writing by Payee to Obligor.  Actual notice, however and from whomever given or received, shall always be effective when received.

19.    ENTIRE AGREEMENT.  THIS NOTE AND THE LETTER AGREEMENT, DATED SEPTEMBER 4, 2014, TO THE CDA EMBODIES THE ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN PAYEE AND OBLIGOR AND OTHER PARTIES WITH RESPECT

6

TO THEIR SUBJECT MATTER AND SUPERSEDE ALL PRIOR CONFLICTING OR INCONSISTENT AGREEMENTS, CONSENTS AND UNDERSTANDINGS RELATING TO SUCH SUBJECT MATTER.  OBLIGOR ACKNOWLEDGES AND AGREES THAT THERE IS NO ORAL AGREEMENT BETWEEN OBLIGOR AND PAYEE WHICH HAS NOT BEEN INCORPORATED IN THIS NOTE OR THE LETTER AGREEMENT REFERRED TO ABOVE. FOR THE AVOIDANCE OF DOUBT, THE OBLIGOR AND THE PAYEE ACKNOWLEDGE AND AGREE THAT EXCEPT AS EXPRESSLY SET FORTH HEREIN, ANY INTERCOMPANY BALANCES OF ANY KIND BETWEEN THE PARTIES SHALL NOT BE GOVERNED BY THIS NOTE.

[SIGNATURE PAGES FOLLOW]

WEIL:\44545266\14\58399.0011

        **IN WITNESS WHEREOF**, the undersigned has executed this Note as of the date first written above.

LEHMAN BROTHERS HOLDINGS INC.,
as Obligor

By:   Lehman Brothers Holdings Inc., as Plan
       Administrator

    By:_____
       Name:
       Title:

Accepted and Agreed:

LEHMAN BROTHERS SPECIAL
FINANCING INC.,
as Payee

By:   Lehman Brothers Holdings Inc., as Plan
       Administrator

   By:_____
     Name:
     Title:

***Exhibit A***
*to LBSF Intercompany Note and Security Agreement*

Additional Principal Amounts

| Relevant Plan Distribution | Date of Advance of Additional Principal Amount | Additional Principal Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Exhibit C**

**LBCC Note**

## LBCC INTERCOMPANY NOTE AND SECURITY AGREEMENT

[_____ __], 2014

**FOR VALUE RECEIVED**, LEHMAN BROTHERS HOLDINGS INC., a corporation organized under the laws of Delaware (the "Obligor"), hereby unconditionally promises to pay to LEHMAN BROTHERS COMMERCIAL CORPORATION, a corporation organized under the laws of Delaware (the "Payee"), the sum of $109,075,777 (the "Initial Principal Amount") and each additional principal amount recorded on *Exhibit A* hereto (collectively, the "Additional Principal Amounts", and together with the Initial Principal Amount, the "Principal Amount") on the terms and subject to the conditions provided herein. The Obligor and the Payee intend that this LBCC Intercompany Note and Security Agreement (this "Note") constitute indebtedness for all federal, state and local income tax purposes and agree not to take any positions contrary with the foregoing characterization of this Note.

WHEREAS, the Obligor, the Payee, certain of their affiliates, JPMorgan Chase Bank, N.A. ("JPMCB") and certain of its affiliates entered into that certain Collateral Disposition Agreement, dated as of March 16, 2010 (as amended, the "CDA"), pursuant to which, JPMCB provisionally applied a certain amount of the Obligor's cash, purportedly pledged as collateral to JPMCB based on a purported guaranty by the Obligor, towards JPMCB's proof of claim, number 66476, against Payee (the "LBCC Primary Claim"), as a result of which the Obligor has become subrogated with respect to the amount so applied;

WHEREAS, the Payee has agreed to invest (the "LBCC Investment") with the Obligor a portion of the aggregate cash amount that would otherwise be reserved by the Payee with respect to the LBCC Primary Claim pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors (the "Plan") and the Order Authorizing Use of Non-Cash Assets In Lieu Of Available Cash As Reserves For Disputed Claims Pursuant to Section 8.4 of the Debtors' Confirmed Joint Chapter 11 Plan (ECF No. 25641) (such investment amount, excluding any reserve amounts subject to the Plan Adjustment (as defined in the Plan), the "Reserve Amount"); and

WHEREAS, the LBCC Investment and the entry into this Note by the parties hereto have been approved by the United States Bankruptcy Court for the Southern District of New York.

NOW, THEREFORE, in consideration of the premises and the covenants and agreements contained herein, the parties hereto hereby agree as follows:

1.      Additional Advances.  Additional Principal Amounts may be advanced to the Obligor under this Note in connection with additional Distributions pursuant to and as defined in the Plan and recorded on *Exhibit A* hereto; *provided* that the aggregate Principal Amount shall not exceed at any time the aggregate Reserve Amount.

2.      Interest.  Interest shall accrue on the outstanding Principal Amount of this Note from the date of advance of the Initial Principal Amount until the repayment of all amounts outstanding under this Note, at a rate per annum equal to the rate of interest earned by the Payee on the investments of its disputed claim reserves for its Disputed Claims (as defined in the Plan) (other than the LBCC Primary Claim), determined quarterly on the last day of each calendar quarter plus 0.50% per annum.  Interest shall be computed on the basis of a 360-day year consisting of twelve 30-day months but calculated and

paid on the basis of the actual number of days elapsed.  Accrued and unpaid interest shall be payable (a) on the date of any voluntary, mandatory or deemed repayment under this Note, (b) the Maturity Date, or (c) when the unpaid Principal Amount hereof is declared due and payable.

3.      Maturity.  The full outstanding Principal Amount of this Note, together with all accrued and unpaid interest hereunder, shall become due and payable on the date (the "Maturity Date") that is ten days following a Binding Determination (as defined in the CDA) with respect to the objections filed by the Payee and the Obligor to the LBCC Primary Claim (Adv. Pro. No. 12-01874) (the "Maturity Trigger").

4.      Deemed Repayment.  If following the Maturity Trigger all or part of the LBCC Primary Claim remains a subrogated claim of the Obligor, then a Prepayment (as hereinafter defined) of the Principal Amount and accrued interest thereon shall be deemed to be made in the amount of the Distribution then due to the Obligor with respect to such portion of the LBCC Primary Claim that is allowed and to which the Obligor is subrogated (including any interest payable on such Distribution as provided in section 8.4 of the Plan), excluding amounts attributable to any Plan Adjustment (the "Deemed Repayment").  The Deemed Repayment shall be in lieu of Payee's Distribution of such amount to the Obligor.

5.      Payments Generally, Etc.  Subject to Section 4, each payment of all or part of the Principal Amount of this Note, together with all accrued and unpaid interest hereunder, shall be payable by wire transfer of immediately available funds to a bank account specified by Payee.  All monies due hereunder shall be paid U.S. Dollars.  If any payment on this Note shall be due on a Saturday, Sunday or public holiday on which banks in New York City are authorized to be closed, it shall be payable on the next succeeding business day.  Upon final payment of the full outstanding Principal Amount of this Note, together with all accrued and unpaid interest hereunder, this Note shall be surrendered to the Obligor for cancellation.  All payments hereunder shall be applied to accrued and unpaid interest and to outstanding principal in such order as determined by Payee in its sole discretion.

6.      Prepayment.  The Obligor may, at its option, prepay this Note, in whole or in part, at any time or from time to time without penalty or premium (each such prepayment, a "Prepayment").  Subject to Section 4, any Prepayment of any portion of the Principal Amount of this Note shall be accompanied by payment of all accrued and unpaid interest through the date of such Prepayment.

7.      Proceeds as Authorized Distributions under the Plan.  The Obligor shall be authorized but not directed to distribute as Distributions under the Plan the proceeds of the advances under this Note. Notwithstanding the foregoing, the Obligor shall be required to hold back from such Distributions an amount reasonably estimated by the Obligor equal to 36 months of interest on the Principal Amount from the date of advance of the Initial Principal Amount.

8.      Security.

(a)      In order to secure the full and punctual observance and performance when due, whether at stated maturity, by acceleration, demand or otherwise of the obligations under this Note, including, but not limited to, the payment of all principal, interest and other amounts now or hereafter payable by the Obligor pursuant to this Note (collectively, the "Secured Obligations"), the Obligor hereby charges, assigns, pledges and grants to the Payee a continuing security interest in and to, and a lien upon and right of set-off against, and agrees to transfer to the Payee, as and by way of a security interest having priority over all other security interests (other than with respect to the security interest in the JPMC Adjustment Collateral (as defined below) granted pursuant to the LBSF Note (as defined below)), with power of sale, all of the Obligor's right, title and interest in the following collateral, whether now owned

2

or existing or hereafter acquired or arising and wherever located (the "Collateral"; terms in subclauses (i) through (ii) below shall have the meanings applicable to them as used in Article 9 of the Uniform Commercial Code as in effect from time to time in the State of New York (the "UCC")):

(i)    all accounts, general intangibles, instruments, proceeds (including money) and any right to payment, whether or not such right is evidenced by an instrument and whether or not it has been earned by performance, in each case, arising under or in respect of

(1)    any JPMC Adjustment Amount (as defined in the CDA) to which the Obligor may be entitled; and

(2)    any Distribution (as defined in the Plan) to which the Obligor may be entitled on account of the subrogated LBCC Primary Claim (excluding any Distribution to which JPMCB may be entitled if such LBCC Primary Claim is determined not to be a subrogated LBCC Primary Claim); and

(ii)    all proceeds, products, accessions, rents and profits of or in respect of the collateral specified in either of subclauses (i)(1) or (i)(2), as applicable, and all proceeds of any insurance, indemnity, warranty or guarantee payable to the Obligor from time to time with respect to such collateral (whether such proceeds arise before or after the commencement of any proceeding by or against the Obligor or with respect to the Obligor).

(b)    The Obligor hereby authorizes the Payee to file, in the name of the Obligor, UCC financing and continuation statements that the Payee may deem necessary or appropriate to protect or maintain the perfection of the security interests. The Obligor will not except with at least 10 calendar days prior written notice to the Payee change its legal name, identity or organizational structure.

(c)    The Obligor agrees to negotiate and act in good faith as the Payee may request from time to time to take such actions as may be necessary to perfect the security interests in Collateral granted hereunder and for the Payee to obtain the full benefits of this Note and the rights and powers herein granted (including, without limitation, in connection with any transfer or assignment of the Collateral or any part thereof by the Payee when an Event of Default has occurred and is continuing), including without limitation by executing and delivering any such documents, agreements, certificates or other instruments or take such further action to enable the Payee to exercise and enforce any of its rights, powers and remedies with respect to the Collateral. The Obligor shall take all actions necessary or advisable to maintain the continuous validity and perfection at the same or higher priority of the Payee's security interest in the Collateral granted or intended to be granted and agree hereby.

(d)    The Obligor hereby irrevocably constitutes and appoints the Payee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Obligor and in the name of the Obligor or in its own name, at any time and from time to time in the Payee's discretion, for the purpose of carrying out the terms of this Note, at the expense of the Obligor, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Note, and, without limiting the generality of the foregoing, the Obligor hereby gives the Payee the power and right, on behalf of the Payee, without notice to or assent by the Obligor. The Obligor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and is irrevocable.

(e)    The security interest granted by the Obligor shall terminate and all rights to the Collateral shall revert to the Obligor when all Secured Obligations shall have been paid or performed in

3

full.  Upon the termination of the security interest and release of Collateral, the Payee will, at the expense of the Obligor, execute and deliver to the Obligor such documents as the Obligor shall reasonably request to evidence the termination of the security interest and the release of the Collateral.

9.    JPMC Adjustment Collateral Allocation; Waterfall.

(a)    All proceeds received by the Payee in respect of any sale, any collection from, or other realization upon all or any part of the Collateral other than the collateral specified in Section 8(a)(i)(2) (or Section 8(a)(ii) in respect thereof) (collectively, the "JPMC Adjustment Collateral") shall be distributed pro rata among the Payee and Lehman Brothers Special Financing Inc. as payee under that certain LBSF Intercompany Note and Security Agreement, dated as of the date hereof (the "LBSF Note"), in proportion to the Principal Amount hereunder and the "Principal Amount" under and as defined in the LBSF Note.  Proceeds of the JPMC Adjustment Collateral entitled to be retained by Payee pursuant to this clause (a) shall be applied as set forth in clause (b) below.

(b)    Subject to clause (a) above, all proceeds received by the Payee in respect of any sale, any collection from, or other realization upon all or any part of the Collateral shall be applied in full or in part by the Payee against, the Secured Obligations in the following order of priority:  first, to the payment of all reasonable costs and expenses of such sale, collection or other realization; second, to the extent of any excess of such proceeds, to the payment of all other Secured Obligations; and third, to the extent of any excess of such proceeds, to the Obligor or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.

10.    Event of Default.

(a)    The occurrence of any one or more of the following events shall constitute an Event of Default (an "Event of Default") under this Note: (i) the failure to pay principal of or interest on this Note when due; or (ii) any failure by the Obligor to perform or comply with any term or condition contained in this Note, and any breach or default hereunder or written repudiation or assertion of the invalidity of the liens granted hereunder.  The Obligor agrees that upon an Event of Default under this Note, then all or any part of the unpaid Principal Amount of and accrued and unpaid interest on this Note, after written notice by the Payee to the Obligor, shall immediately become due and payable.

(b)    If an Event of Default occurs, the Obligor agrees to pay to the Payee all reasonable and documented out-of-pocket expenses incurred by Payee, including reasonable attorneys' fees, in enforcing and collecting this Note or in exercising remedies with respect to the Collateral. The Obligor shall reimburse the Payee for any and all costs and expenses, including reasonable attorneys' fees and expenses, incurred by the Payee in taking any action to collect or otherwise enforce this Note against the Obligor or any other Person who is or may become liable thereunder or in exercising remedies with respect to the Collateral.  All such costs and expenses shall be repayable to the Payee on demand.

(c)    If an Event of Default has occurred and is continuing, the Payee may exercise all the rights of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised) with respect to the Collateral and all rights under any other applicable laws and, in addition, the Payee may, without being required to give any notice, except as herein provided or as may be required by mandatory provisions of law, sell or otherwise dispose of the Collateral or any part thereof. Notice of any such sale or other disposition shall be given to the Obligor 10 days prior to such sale or disposition.

11.    No Waiver by Payee.  No delay or omission of Payee or any other holder hereof to exercise any power, right or remedy accruing to Payee or any other holder hereof shall impair any such

4

power, right or remedy or shall be construed to be a waiver of the right to exercise any such power, right or remedy; nor shall any single or partial exercise by the Payee of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. Payee's right to accelerate this Note for any late payment or Obligor's failure to timely fulfill its other obligations hereunder shall not be waived or deemed waived by Payee by Payee's having accepted a late payment or late payments in the past or Payee otherwise not accelerating this Note or exercising other remedies for Obligor's failure to timely perform its obligations hereunder. No waiver by the Payee of any default or Event of Default shall be deemed to be a waiver of any other subsequent default or Event of Default, nor shall any such waiver by the Payee be deemed to be a continuing waiver. The rights and remedies specified herein are cumulative and are not exclusive of any other rights or remedies the Payee would otherwise have. Payee shall not be obligated or be deemed obligated to notify Obligor that it is requiring Obligor to strictly comply with the terms and provisions of this Note before accelerating this Note and exercising its other remedies hereunder because of Obligor's failure to timely perform its obligations under this Note.

12. _Obligor Waiver; Indemnity_. The Obligor hereby forever waives presentment, presentment for payment, demand, protest, notice of protest, notice of dishonor of this Note and all other demands and notices in connection with the delivery, acceptance, performance and enforcement of this Note. The Obligor further agrees to indemnify and hold harmless the Payee from any and all damages, losses, costs and expenses (including, without limitation, attorneys' fees and expenses) which the Payee may incur by reason of the Obligor's failure promptly to pay when due the indebtedness evidenced by this Note.

13. _Sections_. Section headings appearing in this Note are for convenient reference only and shall not be used to interpret or limit the meaning of any provision of this Note. As used herein, "Section" shall refer to sections of this Note unless otherwise specified.

14. _VENUE; CHOICE OF LAW_. THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK UNLESS THE CONTEXT REQUIRES OTHERWISE, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF. ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST THE OBLIGOR OR THE PAYEE ARISING OUT OF OR RELATING HERETO SHALL BE BROUGHT IN EITHER (i) THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, IF SUCH COURT HAS SUBJECT MATTER JURISDICTION, OR OTHERWISE (ii) THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, BOROUGH OF MANHATTAN OR, IF THAT COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION, IN ANY STATE COURT LOCATED IN THE CITY OF NEW YORK. BY EXECUTING AND DELIVERING THIS AGREEMENT, THE OBLIGOR, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY (A) ACCEPTS GENERALLY AND UNCONDITIONALLY THE JURISDICTION AND VENUE OF SUCH COURTS; (B) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (C) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS PROVIDED NEXT TO ITS NAME ON THE SIGNATURE PAGE ATTACHED HERETO; AND (D) AGREES THAT SERVICE AS PROVIDED IN CLAUSE (C) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE APPLICABLE PARTY IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT.

15. _WAIVER OF JURY TRIAL_. EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF

WEIL:\95080291\4\58399.0011

ACTION BASED UPON OR ARISING HEREUNDER OR UNDER ANY OF THE OTHER SECURITY DOCUMENTS OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION OR THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. EACH PARTY HERETO ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS. EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS SECTION 15 AND EXECUTED BY EACH OF THE PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO OR ANY OF THE OTHER SECURITY DOCUMENTS OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOANS MADE HEREUNDER. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

16.    Records of Additional Principal Amounts and Payments.    All Additional Principal Amounts lent to the Obligor shall be evidenced and noted by the Payee on *Exhibit A* hereto and the records of Payee shall be *prima facie* evidence of the amounts owing on this Note; *provided*, *however*, that the failure of the Payee to make such a notation or any error in such notation shall not affect the obligations of the Obligor under this Note.

17.    Severability.    If any provision of this Note is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Note shall not be affected thereby, and this Note shall be liberally construed so as to carry out the intent of the parties to it. Each waiver in this Note is subject to the overriding and controlling rule that it shall be effective only if and to the extent that (a) it is not prohibited by applicable law and (b) applicable law neither provides for nor allows any material sanctions to be imposed against Payee for having bargained for and obtained it.

18.    Notices.    Any notice, request or other communication required or permitted to be given hereunder shall be given in writing by delivering it against receipt for it, by depositing it with an overnight delivery service or by depositing it in a receptacle maintained by the United States Postal Service, postage prepaid, registered or certified mail, return receipt requested, addressed to the respective parties as reflected in the preamble hereto. Obligor's address for notice may be changed at any time and from time to time, but only after ten (10) calendar days advance written notice to Payee and shall be the most recent such address furnished in writing by Obligor to Payee. Payee's address for notice may be changed at any time and from time to time, but only after ten (10) calendar days advance written notice to Obligor and shall be the most recent such address furnished in writing by Payee to Obligor. Actual notice, however and from whomever given or received, shall always be effective when received.

19.    ENTIRE AGREEMENT.    THIS NOTE AND THE LETTER AGREEMENT, DATED SEPTEMBER 4, 2014, TO THE CDA EMBODIES THE ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN PAYEE AND OBLIGOR AND OTHER PARTIES WITH RESPECT

WEIL:\95080291\4\58399.0011

TO THEIR SUBJECT MATTER AND SUPERSEDE ALL PRIOR CONFLICTING OR INCONSISTENT AGREEMENTS, CONSENTS AND UNDERSTANDINGS RELATING TO SUCH SUBJECT MATTER.  OBLIGOR ACKNOWLEDGES AND AGREES THAT THERE IS NO ORAL AGREEMENT BETWEEN OBLIGOR AND PAYEE WHICH HAS NOT BEEN INCORPORATED IN THIS NOTE OR THE LETTER AGREEMENT REFERRED TO ABOVE. FOR THE AVOIDANCE OF DOUBT, THE OBLIGOR AND THE PAYEE ACKNOWLEDGE AND AGREE THAT EXCEPT AS EXPRESSLY SET FORTH HEREIN, ANY INTERCOMPANY BALANCES OF ANY KIND BETWEEN THE PARTIES SHALL NOT BE GOVERNED BY THIS NOTE.

[SIGNATURE PAGES FOLLOW]

WEIL:\95080291\4\58399.0011

**IN WITNESS WHEREOF**, the undersigned has executed this Note as of the date first written above.


LEHMAN BROTHERS HOLDINGS INC.,
as Obligor

By:   Lehman Brothers Holdings Inc., as Plan
      Administrator


By:_____
      Name:
      Title:




Accepted and Agreed:


LEHMAN BROTHERS COMMERCIAL
CORPORATION,
as Payee

By:   Lehman Brothers Holdings Inc., as Plan
      Administrator


By:_____
      Name:
      Title:


[SIGNATURE PAGE TO LBCC INTERCOMPANY NOTE AND SECURITY AGREEMENT]

*Exhibit A*
*to LBCC Intercompany Note and Security Agreement*

Additional Principal Amounts

| Relevant Plan Distribution | Date of Advance of Additional Principal Amount | Additional Principal Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |