**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
John Kibler
Jonathan Cho

*Counsel to KBC Bank NV*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| LEHMAN BROTHERS HOLDINGS INC. *et al.* | : | Case No. 08-13555 (SCC) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
------------------------------------------------------------------X

**RESPONSE OF KBC BANK NV TO DEBTORS' FOUR HUNDRED SEVENTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

TO THE HON. SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

       KBC Bank NV ("**KBC**"), by and through its undersigned counsel, hereby submits this response (the "**Response**") to the Debtors' Four Hundred Seventy-Seventh Omnibus Objection to Claims (No Liability Claims) dated July 30, 2014 (the "**Objection**"). In support of this Response, KBC respectfully states as follows:

### BACKGROUND

**A.**    **KBC's Claims**

       1.    Beginning on September 15, 2008 (the "**Petition Date**") and periodically thereafter, Lehman Brothers Holdings Inc. ("**LBHI**") and certain of its affiliates (collectively, the "**Debtors**") commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). At the time, KBC was party to derivative transactions with Lehman Brothers Finance S.A. ("**LBF**"), a Swiss affiliate of the Debtors, arising under a 1992 ISDA Master Agreement dated as of October 24, 1997 (as amended, supplemented or otherwise modified from time to time, and including all schedules, annexes and exhibits thereto, and

all confirmations exchanged pursuant to transactions entered into in connection therewith, the "**Master Agreement**").[1]

2.      LBHI was LBF's Credit Support Provider under the Master Agreement and, in such capacity, guaranteed all obligations of LBF arising thereunder (the "**ISDA Guarantee**").  In addition, LBHI fully guaranteed the payment of all liabilities, obligations and commitments of LBF to KBC pursuant to board resolutions adopted by the Executive Committee of the Debtor's Board of Directors, including but not limited to those certain resolutions adopted by unanimous written consent on June 9, 2005, and certain other guarantees extended to affiliates of the Debtors and/or Lehman related entities (together with the ISDA Guarantee, the "**Guarantee**").

3.      LBHI's bankruptcy filing constituted an Event of Default under the Master Agreement, and by notice dated September 15, 2008, KBC served notice of such default on LBF pursuant to section 6(a) of the Master Agreement.  September 17, 2008 was designated as the Early Termination Date with respect to all outstanding transactions under the Master Agreement. Subsequently, on December 4, 2008, KBC notified LBF that a net amount of USD 22,305,224, plus interest on such amount at the rate provided in the Master Agreement, was payable by LBF to KBC under the Master Agreement.

4.      On October 29, 2008, the Swiss Federal Banking Commission ordered that LBF be liquidated and PricewaterhouseCoopers AG, Zurich, was appointed to act as LBF's liquidators (the "**Swiss Liquidators**").  Subsequently, on December 22, 2008, bankruptcy proceedings were commenced in respect of LBF (the "**Swiss Proceedings**").  At the time, KBC Investments Cayman Islands V Ltd., an affiliate of KBC ("**KBC Cayman**"), was party to a derivatives transaction with LBF (the "**Affiliate Transaction**").  The trade confirmation relating to the Affiliate Transaction referred to the standard form 1992 ISDA Master Agreement and, in addition, included a cross-affiliate set-off provision (the "**Set-Off Provision**").  Following the commencement of the Swiss Proceedings, KBC Cayman terminated the Affiliate Transaction and determined that it owed a net amount to LBF. Rather than pay this amount to LBF, KBC Cayman declared to set off its net debt to LBF under the

---

[1] Terms used but not defined herein have the respective meanings ascribed to such terms in the Master Agreement.

Affiliate Transaction against KBC's net claim against LBF under the Master Agreement (the "**Set-Off**").

5. By letter dated February 17, 2009, KBC filed a direct claim against LBF in the Swiss Proceedings in the amount of USD 22,400,668 in respect of the Master Agreement. This claim was reduced by KBC in a revised notice dated 27 December 2010 to USD 17,975,379 (payable to KBC) together with interest and other expenses of USD 234,397 (the "**Direct Claim**"). The Direct Claim was filed on a contingent basis to preserve KBC's rights to the extent the Set-Off was invalidated or reversed. Likewise, on September 16, 2009, KBC timely filed a proof of claim against LBHI, asserting a guarantee claim in the amount of USD 22,400,668 in respect of the Master Agreement (the "**Guarantee Claim**"). The Guarantee Claim was assigned claim number 13872 on the Debtors' claims register and such claim was similarly contingent on whether or not the Set-Off was valid.[2]

B. The Swiss Liquidators' Challenges to the Direct Claim

6. On April 3, 2013, the Swiss Liquidators rejected the Direct Claim based on the argument that KBC's valuation of the settlement amount was erroneous and that, according to its own calculations, it was KBC that owed money under the Master Agreement to LBF. KBC timely commenced an action on April 22, 2013 (the "**Swiss Litigation**") challenging such rejection in the competent Zurich District Court (the "**Swiss Court**"). On September 24, 2013, the Swiss Court ruled that because KBC had purported to extinguish the Direct Claim by way of the Set-Off, and because, therefore, the Direct Claim could not be included in LBF's schedule of claims, KBC had no legal interest in its action. Thus, the Swiss Court decided to close the Swiss Litigation.[3]

7. However, the Swiss Court did not decide the merits of the Set-Off and ruled on the basis that the Swiss Liquidators did not have the authority to decide the validity of the Set-Off. The Swiss Court indicated that if a competent court should subsequently reject the Set-Off, and if the Swiss Liquidators would reject a delayed submission of the Direct Claim in the Swiss Proceedings, the Swiss Financial Market Supervisory Authority would be competent to decide the admissibility of

---

[2] The Guarantee Claim is attached hereto as Exhibit A.
[3] An original copy of the Swiss Court ruling is attached hereto as Exhibit B. A translated version of the Swiss Court ruling will be filed as a supplement to this Response. At present, the facts and circumstances of the Swiss Proceedings, the Swiss Litigation, and the Swiss Court ruling are supported by the Declaration of Markus Schott filed contemporaneously herewith.

such delayed submission. In the Swiss Court's non-binding view, KBC would be entitled to make a delayed submission of the Direct Claim in the Swiss Proceedings.

8.   On April 2, 2013, LBF commenced an action (the "**English Litigation**") against KBC in the High Court of Justice, Queen's Bench Division (the "**English Court**"), challenging KBC's valuation of the net amount due and owing under the Master Agreement and asserting that KBC in fact owes money to LBF under the Master Agreement in the aggregate amount of USD 115,790,415. KBC is actively defending such claims and, further, has filed a cross-claim in the English Litigation in the amount of the Direct Claim. The English Court has jurisdiction to decide these issues because the Master Agreement is governed by English law. KBC and LBF are currently taking discovery in the English Litigation, and the dispute is listed for trial in July 2015. The validity of the Set-Off is not being contested by LBF in the English Litigation.

C.   **LBHI's Objection to the Guarantee Claim**

9.   On July 30, 2014, LBHI filed the Objection, in which it states that the amount asserted in the Guarantee Claim should be disallowed and expunged because, after reviewing the Guarantee Claim, "the documentation provided in support thereof, LBHI's books and records, and other available information," LBHI has "no liability" because "there is no primary obligation owed by LBF." Objection ¶ 10. Specifically, LBHI asserts that "based on the fair, accurate, and reasonable values" of the underlying derivatives contracts and netting provisions, it believes that LBF—and, therefore, LBHI as guarantor—does not owe any amounts to KBC. *Id*. Further, LBHI states that, "upon information and belief," the Guarantee Claim should be disallowed and expunged because the Swiss Liquidators determined that LBF had no liability to KBC, that KBC did not challenge such determination, and that the Direct Claim was expunged against LBF. Objection ¶ 11.

**ARGUMENT**

10.   LBHI has failed its burden of proof to rebut the validity of the Guarantee Claim. It is well settled that a properly filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Further, "because a properly filed proof of claim is deemed allowed until objected to, 'such allowance compels the objecting party to go forward and

produce sufficient evidence to rebut the claimant's prima facie case.'" *See In re Adelphia Communs. Corp.*, 2007 Bankr. LEXIS 660 at *16 (Bankr. S.D.N.Y. Feb. 20, 2007) (quoting *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987). A claimant only bears the burden of establishing the validity of its claim "'once an objectant offers sufficient evidence to overcome the prima facie validity of the claim.'" *Id.* (quoting *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)). Such evidence must be "in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

11. First, LBHI's information regarding the status of the Direct Claim is not accurate. Not only did KBC challenge LBF's rejection of the Direct Claim in the Swiss Proceedings, but the Swiss Court's decision to uphold such rejection was based on the effect of the Set-Off, rather than any consideration or determination of the merits or valuations of the Direct Claim (absent the Set-Off), and left open the possibility that KBC may reassert the Direct Claim if the Set-Off is ultimately invalidated by a court of competent jurisdiction. The Swiss Court did not base such decision on any consideration of the merits of the Direct Claim or of KBC's calculation of amounts due and owing under the Master Agreement, and both those issues are currently being litigated before the English Court. Thus, contrary to what LBHI suggests in the Objection, the final determination of the Direct Claim remains an open issue in the Swiss Proceedings as well.

12. Second, the Objection contains no evidence to support LBHI's proposal to disallow and expunge the Guarantee Claim. LBHI does nothing more than state that it has undertaken a review and that, following such review, has determined that it does not believe LBF owes anything to KBC under the Master Agreement. These bare conclusory statements are unsupported by any evidence or analysis whatsoever and fall well short of the evidentiary burden necessary to support an objection to a claim. Further, even though LBHI purports to have undertaken an independent analysis of the underlying derivatives transactions, that very issue—the valuation of amounts due and owing under the Master Agreement—is actively being litigated between KBC and LBF in the English Litigation. Especially as the Master Agreement is governed by English law, there is simply no basis or reason at this juncture to substitute LBHI's judgment for that of the English Court.

13. Finally, under the express terms of the ISDA Guarantee, LBHI has effectively waived its right to assert an independent valuation of the settlement amount. It is well settled under New York law that absolute and unconditional guaranties operate to prevent guarantors from asserting defenses. *See HSH Nordbank AG N.Y. Branch v. Street*, 421 Fed. Appx. 70, 73 (2d Cir. N.Y. 2011); *Banco Do Estado De Sao Paulo, S.A. v. Mendes Junior Int'l Co.*, 672 N.Y.S.2d 28, 29 (1st Dep't 1998); *First New York Bank for Business v. DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991); *Preferred Equities Corp. v. Ziegelman*, 593 N.Y.S.2d 548, 549 (2d Dep't 1993); *Citibank, N. A. v. Plapinger,* 66 N.Y.2d 90, 95 (N.Y. 1985). The ISDA Guarantee, which is governed by New York law, provides in pertinent part:

> Guarantor hereby agrees that its obligations under the Guarantee shall be <u>unconditional, irrespective of the validity, regularity or enforceability of the [ISDA Master Agreement]</u> . . . the absence of any action to enforce [LBF's] obligations under the [ISDA Master Agreement], any waiver or consent by [KBC] with respect to any provisions thereof, the entry by [LBF] and [KBC] into additional Transactions under the [ISDA Master Agreement] or <u>any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor</u> . . . .

ISDA Guarantee §(c) (emphasis added). Thus, by virtue of its broad unconditional guarantee, LBHI is precluded from asserting its own valuation of the Direct Claim in order to minimize its liability under the Guarantee Claim. Even if LBHI disagrees with the calculation the Direct Claim amount, any alternative calculation would not be relevant to the amount of the Guarantee Claim.

14. Accordingly, the Objection should be denied with respect to the Guarantee Claim based on LBHI's failure to present any basis for the Objection sufficient to negate the prima facie validity of the Guarantee Claim.

**RESERVATION OF RIGHTS**

15. To the extent that this Court does not overrule the Objection, KBC reserves the right to (a) seek discovery from the Debtors as to their valuation of the Guarantee Claim; (b) supplement or otherwise amend this Response to the Objection; and (c) request, if necessary, a full evidentiary hearing pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amounts of the Guarantee Claim.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, KBC respectfully requests that this Court (i) deny the Debtors' Objection, (ii) allow the Guarantee Claim in the amount originally asserted therein, and (iii) grant such further relief as this Court deems just and proper.

Dated:  September 5, 2014
        New York, NY

ALLEN & OVERY LLP

By: /s/ John Kibler
John Kibler
Jonathan Cho
1221 Avenue of the Americas
New York, New York  10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
john.kibler@allenovery.com
jonathan.cho@allenovery.com

*Counsel to KBC Bank NV*

# EXHIBIT A

*The Guarantee Claim*

# **EXHIBIT B**

*Original Copy of Swiss Court Ruling*