# Bezirksgericht Zürich

Einzelgericht für SchKG-Klagen



Geschäfts-Nr.: FO130017-L / U

Bezirksrichter lic. iur. F. Ziltener

Leitender Gerichtsschreiber lic. iur. Ph. Talbot

EINGEGANGEN
2 5. Sep. 2013
am ..............

## Verfügung vom 24. September 2013

in Sachen

**KBC Bank N.V.**,

Havenlaan 2, 1080 Brüssel, Belgien,

Klägerin

vertreten durch Rechtsanwalt PD Dr. iur. Markus Schott und Rechtsanwalt lic. iur. Eric Stupp, Bär & Karrer AG, Brandschenkestr. 90, Postfach 1548, 8027 Zürich

gegen

**Konkursmasse der Lehman Brothers Finance AG in Liquidation**,

Stampfenbachstrasse 48, 8006 Zürich,

Beklagte

vertreten durch die Liquidatorin PricewaterhouseCoopers AG,

Birchstrasse 160, 8050 Zürich

diese vertreten durch Rechtsanwalt Dr. iur. Markus Guggenbühl und/oder Rechtsanwalt Dr. iur. Christian Oetiker, und/oder Rechtsanwältin Dr. iur. Jana Essebier,

VISCHER AG, Schützengasse 1, Postfach 1230, 8021 Zürich

betreffend **Kollokation (ungesicherte Forderung im Konkurs der Lehman Brothers Finance AG in Liquidation)**

### Rechtsbegehren:
(act. 1 S. 2)

" 1. Der Kollokationsentscheid Nr. 110 im Konkurs der Lehman Brothers Finance AG in Liquidation vom 3. April 2013 betreffend KBC Bank N.V. sei aufzuheben.

2. Es sei eine Forderung von KBC Bank N.V. gegen Lehman Brothers Finance AG im Betrag von CHF 19'872'328.55 in der dritten Klasse anzuerkennen.

3. Es sei im Kollokationsplan davon Vormerk zu nehmen, dass die Forderung von KBC Bank N.V. gegen die Lehman Brothers Finance AG in Liquidation im Umfang von CHF 19'872'328.55 vollständig verrechnet wird mit einer Forderung von Lehman Brothers Finance AG in Liquidation gegen KBC Investments Cayman Islands V Ltd.

4. Es sei festzustellen, dass im Falle einer rechtskräftigen Ablehnung des Verrechnungsrechts und einer neuen Eingabe der Forderung von CHF 19'872'328.55 durch KBC Bank N.V. gemäss Art. 251 SchKG diese Forderung in vollem Umfang zu kollozieren sei.

5. Unter Kosten- und Entschädigungsfolge zu Lasten der Beklagten."

### Das Gericht zieht in Erwägung:

I.

(Parteien)

Die klagende Partei (eine Bank) und die Lehman Brothers Finance AG (nachfolgen LBF) schlossen 1997 einen Rahmenvertrag und gestützt auf diesen in der Folge zahlreiche Derivatgeschäfte. Der Konkurs von Lehman Brothers Holdings

Inc. im Jahre 2008 in den Vereinigten Staaten führte gemäss Klägerin noch vor dem Konkurs der Beklagten zur vorzeitigen Vertragsbeendigung zwischen den Parteien. Die Vertragsbeendigung hat gemäss Klägerin zur Folge, dass die einzelnen Transaktionen durch eine einzige Verpflichtung ersetzt werden (dem sog. Early Termination Amount; act. 1 S. 4 f.). Diese Verpflichtung will die Klägerin mit CHF 19'872'328.55 kolloziert haben. Gleichzeitig erklärt sie aber in der Klagebegründung vollständige Verrechnung mit einer Forderung von LBF gegen KBC Investments Cayman Island V Ltd. (nachfolgend Cayman V; act. 1 S. 5).

II.

(Prozessgeschichte)

Am 25. April 2013 (Datum des Poststempels: 22. April 2013) ging hierorts Klage mit dem oben wiedergegebenen Rechtsbegehren ein (act. 1). Mit Verfügung vom 16. Mai 2013 wurde der klagenden Partei Frist angesetzt, um sich zur Höhe des Streitwertes zu äussern und ein Beilagenverzeichnis für die noch nicht verzeichneten Klagebeilagen (nunmehr act. 3/13/1-92) einzureichen (act. 5). Die klagende Partei reichte innert Frist ihre Stellungnahme vom 3. Juni 2013, das Beilagenverzeichnis für die fraglichen Klagebeilagen und der Klageschrift versehentlich nicht beigelegte Unterlagen ein (act. 9). Das Gericht forderte mit Verfügung vom 7. Juni 2013 die beklagte Partei auf, zur Höhe des Streitwertes Stellung zu nehmen und sich zur Berechnung der Konkursdividende und zum Zwischenstand des Vergleichs zwischen ihr und der Lehman Brothers Holdings Inc. zu äussern (act. 10). Dieser Aufforderung kam die Beklagte fristgerecht mit Eingabe vom 24. Juni 2013 nach (act. 13). Der klagenden Partei wurde darauf in Anwendung von Art. 98 ZPO mit Verfügung vom 27. Juni 2013 (act. 15) ein Vorschuss im Umfang der mutmasslichen Gerichtskosten von CHF 130'370.– auferlegt. Innert erstreckter Frist (act. 19) wurde dieser Kostenvorschuss geleistet (act. 20). Mit Verfügung vom 9. Juli 2013 wurde der klagenden Partei Frist angesetzt, um sich zu ihrem Rechtsschutzinteresse an der vorliegenden Klage zu äussern (act. 21). Diese Stellungnahme ging fristgerecht am 28. August 2013 beim Gericht ein (act. 26).

### III.

#### (Parteistandpunkte)

**1.** Die beklagte Partei macht in ihrer Eingabe vom 24. Juni 2013 geltend, dass die klagende Partei im Gegensatz zur Forderungsanmeldung in der Klagebegründung die Verrechnung der gesamten Forderung erkläre. Aus diesem Grund richte sich ihr gegenwärtiges Interesse nicht auf die Teilnahme an der Verteilung im Konkursverfahren der Beklagten, so dass kein Forderungsbetrag zu kollozieren sei. Die klagende Partei habe selbst geltend gemacht, dass über die Gültigkeit der Verrechnung nicht im vorliegenden Kollokationsverfahren zu entscheiden sei, sondern in einem separaten Forderungsprozess. Nur bei rechtskräftiger Verneinung der Gültigkeit der Verrechnung könne die Klägerin die Forderung nach Art. 251 SchKG nachträglich (nochmals) eingeben. Somit habe die klagende Partei kein schutzwürdiges Interesse an der Beurteilung der Klage (act. 13 S. 8 f.).

**2.** Dem widersetzt sich die Klägerin in ihrer Stellungnahme vom 27. August 2013 mit den Anträgen, es sei über die Frage des Rechtsschutzinteresses in einem selbständigen Zwischenentscheid zu entscheiden und ein zweiter Schriftenwechsel zur Frage des Rechtsschutzinteresses anzuordnen (act. 26 S. 2). Sie macht geltend, die Konkursliquidatorin habe in ihrem Entscheid vom 3. April 2013 festgehalten, der Klägerin stehe gestützt auf das ISDA Master Agreement keine Forderung gegenüber der Beklagten zu. Im Gegenteil resultiere gemäss ihren eigenen Berechnungen eine Forderung zugunsten der Beklagten. Sodann halte die Liquidatorin zusätzlich fest, auch wenn die von der Klägerin geltend gemachte Forderung bestünde, wäre eine Verrechnung dieser Forderung mit der Forderung der Beklagten gegen Cayman V unzulässig und unwirksam. Für den Fall, dass ein zuständiges Zivilgericht das Verrechnungsrecht der Klägerin wider Erwarten verneinen sollte, müsse die Klägerin als Gläubigerin im Konkursverfahren von LBF partizipieren können. Dies sei nur möglich, wenn die Forderung der Klägerin im Kollokationsplan der Beklagten aufgenommen sei. Die Möglichkeit der nachträglichen Forderungseingabe nach einem solchen Zivilprozess sei nicht gegeben, weil das Bundesgericht Art. 251 SchKG einschränkend dahingehend ausgelegt habe, dass es sich bei der nachträglich angemeldeten Forderung um eine erstmals gel-

tend gemachte Forderung handle und nicht etwa der rechtskräftig gewordene Kollokationsplan abgeändert werden wolle. Dazu komme, dass selbst bei nachträglicher Anmeldemöglichkeit durch die Nichtteilnahme an Abschlagszahlungen der Klägerin ein irreversibler Schaden entstehen könne. Die Zulässigkeit einer erneuten Forderungseingabe sei nach der bundesgerichtlichen Rechtsprechung ungewiss und daher zumindest bezüglich Rechtsbegehren Ziffer 4 das Rechtsschutzinteresse gegeben.

**3.** Die Sache erweist sich als spruchreif, weshalb von einem zweiten Schriftenwechsel abgesehen wurde und lediglich die Stellungnahmen der Parteien zu den Kosten- und Entschädigungsfolgen eingeholt wurden (act. 30 und act. 32).

## IV.
### (Gerichtliche Beurteilung)

**1.** Das Gericht überprüft seine Zuständigkeit als Prozessvoraussetzung von Amtes wegen (Art. 59 Abs. 2 i.V.m. Art. 60 ZPO). Mit dem Rechtsbegehren Ziffer 4 beantragt die klagende Partei die Feststellung, dass – im Falle einer rechtskräftigen Ablehnung des Verrechnungsrechts und einer neuen Eingabe der Forderung gegen die beklagte Partei gemäss Art. 251 SchKG – die Forderung im vollen Umfang zu kollozieren sei.

Ob eine verspätete Konkurseingabe noch zugelassen werden kann, ist im Beschwerdeverfahren und nicht im Rahmen einer Kollokationsklage zu prüfen (BGE 108 III 80, 81 ff.). Für die Bankenliquidation gilt diesbezüglich die Spezialgesetzliche Regelung des Bundesgesetzes über die Banken und Sparkassen bzw. der Bankeninsolvenzverordnung der Eidgenössischen Finanzmarktaufsicht (Bankengesetz und BIV-FINMA; siehe zur zeitlichen Geltung unten). Gemäss dieser Verordnung kann, wer durch einen Entscheid der Liquidatorin in seinen Interessen verletzt wird, diesen Sachverhalt bei der FINMA anzeigen (Art. 6 Abs. 1 BIV-FINMA). Die FINMA beurteilt den Sachverhalt, trifft die notwendigen Massnahmen und erlässt, falls erforderlich, eine Verfügung (Ebenda Abs. 3). Das angerufene Gericht ist daher auch im Bereich des Bankenkonkurses bezüglich

Rechtsbegehren Ziffer 4 sachlich und funktional unzuständig, weshalb auf das Begehren nicht einzutreten ist (Art. 59 Abs. 2 lit. b ZPO). Dies schliesst allerdings nicht aus, dass das Thema vorfrageweise eine Rolle spielt.

**2.** Die örtliche, sachliche und funktionale Zuständigkeit ist im Übrigen im vorliegenden Prozess gegeben (Art. 34 Abs. 2 Bankengesetz, Art. 30 Abs. 1 BIV-FINMA, Art. 250 Abs. 1 SchKG, Art. 198 lit. e Ziff. 6 ZPO i.V.m. § 24 lit. b GOG).

**3.** Gemäss Art. 59 ZPO ist auf eine Klage nur einzutreten, soweit ein rechtliches Interesse an ihrer Beurteilung besteht. Ein Rechtsschutzinteresse ist vorhanden, wenn die Durchsetzung des materiellen Rechts gerichtlichen Rechtsschutz nötig macht. Bei Leistungs- und Gestaltungsklagen ergibt sich das Rechtsschutzinteresse aus dem geltend gemachten Anspruch. Das Rechtsschutzinteresse ist Prozessvoraussetzung und als solche von Amtes wegen zu prüfen (Art. 60 ZPO; Spühler/Dolge/Gehri, Schweizerisches Zivilprozessrecht, 9. Aufl., Bern 2010, § 33 N 71 ff.).

**4.** Der Gläubiger, der die gegen ihn bestehende Forderung des Gemeinschuldners mit seiner Konkursforderung verrechnen will, hat dies bereits mit der Forderungsanmeldung bei der Konkursverwaltung zu erklären. Die Erklärung der Verrechnung erfolgt, indem der Gläubiger nur den über die Verrechnungssumme hinausgehenden Verrechnungsbetrag kolloziert bzw. bei gleicher Höhe von Konkurs- und Verrechnungsforderung auf eine Kollokation gänzlich verzichtet. Auch wenn die Konkursverwaltung die Verrechnung nicht akzeptieren will, hat sie die Forderung in angemeldeter Höhe in den Kollokationsplan aufzunehmen. Ihr ist es nicht erlaubt, den vollen Forderungsbetrag zu kollozieren, um sich gegen die Verrechnung auszusprechen. Die Zulässigkeit der Verrechnung kann auch nicht in einem folgenden positiven Kollokationsprozess geklärt werden, da dieser ausschliesslich der Bereinigung der Passiven dient. Da die Forderung der Gläubigerin so in den Kollokationsplan aufgenommen wird, wie sie angemeldet wurde, ist diese nicht beschwert, und es fehlt ihr daher das notwendige Interesse zur Führung eines positiven Kollokationsprozesses (Brunner/Reutter, Kollokations- und Widerspruchsklagen nach SchKG, 2. Auflage, Bern, 2002, S. 67 unter Verweis auf BGE 71 III 185, ebenso Ammon/Walther, Grundriss des Schuldbetreibungs- und

Konkursrechts, 8. Aufl., Bern 2008, § 40 N 58 sowie Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, N 64 zu Art. 250).

**5.** Die klagende Partei macht in ihrer Klageschrift die Verrechnung im Umfang ihrer gesamten Forderung, nämlich CHF 19'872'328.55, gegen die beklagte Partei geltend (act. 1 S. 2) und wurde im Kollokationsplan mit CHF 0.– aufgenommen. Nach dem oben Erwähnten muss eine voll verrechnete Forderungseingabe mit CHF 0.– kolloziert werden, womit die Liquidatorin richtig gehandelt hat. Wie die klagende Partei in ihrer Klageschrift selbst bemerkt (act. 1 N 13) und oben ausgeführt wurde, ist die Gültigkeit und Wirksamkeit der Verrechnung nicht Thema des Kollokationsprozesses, der alleine die Bereinigung der Passiven bezweckt. Vielmehr wäre dies – wie die Klägerin selbst einräumt – Gegenstand eines allfälligen Forderungsprozesses der beklagten gegen die klagende Partei.

**6.** Unzutreffend ist, wenn die Klägerin anführt, die vom Bundesgericht bisher entschiedenen Fälle seien alle anders gelagert gewesen, als der vorliegende. Das Bundesgericht erklärte schon früh unmissverständlich:

"Hat ein Konkursgläubiger deswegen nur eine reduzierte Forderung angemeldet, weil er mit dem Mehrbetrag eine Schuld gegenüber dem Gemeinschuldner durch Verrechnung zu tilgen gedenkt, so hat sich die Konkursverwaltung um den angeblich durch Verrechnung getilgten und daher nicht angemeldeten Teil der Forderung nicht zu kümmern, sondern sich darauf zu beschränken, die Forderung im angemeldeten reduzierten Betrage zuzulassen. Will sie die Verrechnung nicht gelten lassen, so bleibt ihr nichts anders übrig, als die Gegenforderung des Gemeinschuldners einzutreiben und zu diesem Zwecke gegen den Konkursgläubiger Klage zu erheben, welcher dieser durch die Einrede der Verrechnung entgegen treten kann. Wird die Verrechnungseinrede gutgeheissen und also die Klage abgewiesen, so hat es einfach bei der erfolgten Zulassung der reduzierten Konkursforderung sein Bewenden. **Wird dagegen die Verrechnungseinrede abgewiesen und also die Klage zugesprochen, so ist es dem beklagten Konkursgläubiger anheimgestellt, mit einer nachträglichen Konkurseingabe auch noch den Mehrbetrag seiner Konkursforderung anzumelden, der sich nun nicht als getilgt erweist, weil sein Vorhaben, ihn zur Tilgung seiner Schuld gegenüber dem Gemeinschuldner zu benützen, vereitelt worden ist**" (**BGE 56 III 248**).

Diese Aussage ist durch die von der Klägerin angeführte spätere Rechtsprechung des Bundesgerichts nicht in Frage gestellt, denn die in einem Prozess der Konkursmasse gegen den Konkursgläubiger erzielte materielle Rechtskraft über die

fehlende Verrechenbarkeit ist ohne weiteres als neue Tatsache im Sinne der bundesgerichtlichen Rechtsprechung zu Art. 251 SchKG zu sehen.

**7.** Die Klägerin führt sodann an, ihr könne durch die Nichtteilnahme an den Abschlagszahlungen ein irreversibler Schaden entstehen (act. 26 S. 5). Dazu ist zunächst zu sagen, dass die Klägerin durch die Verrechnung – sollte sie denn Bestand haben – gewinnt, indem sie ihre volle Forderung gegenüber der Konkursmasse zur Befriedigung bringen kann, statt nur einen Teil davon im Umfang der in Aussicht stehenden Konkursdividende. Zutreffend ist allerdings, dass das Bundesgericht in einem noch älteren Entscheid festhielt, "auf Abschlagszahlungen, die vor seiner Anmeldung stattgefunden haben, hat ein Gläubiger auch dann keinen Anspruch, wenn er die Verspätung der Konkurseingabe nicht verschuldet hat" (BGE 38 I 643).

**8.** Der angeführte Bundesgerichtsentscheid zeigt nun aber gerade auf, wie das Problem der Klägerschaft – auf anderem Weg als von dieser mit dem vorliegenden Prozess beabsichtigt – zu lösen ist. Zunächst ist darin festgehalten, dass die Lösung, auch den unverschuldet verspätet anmeldenden Gläubiger nicht mehr an Abschlagszahlungen teilhaben zu lassen, auf zwingenden praktischen Erwägungen beruht. Weil nämlich die Rückforderung aus bereits getätigten Abschlagszahlungen sich "aus praktischen und juristischen Gründen verbietet". Entsprechend ist denn auch unbestritten, dass ein allfälliger Überschuss nach Verteilung des Massavermögens dem verspätet anmeldenden Gläubiger noch vor dem Gemeinschuldner zukommen muss (Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, N 18 zu Art. 251).

**9.** Das Bundesgericht verweist sodann auf Art. 82 KV, wonach vor der Vornahme einer Abschlagszahlung eine provisorische Verteilungsliste aufzustellen und unter Mitteilung an die Gläubiger während 10 Tagen beim Konkursamt aufzulegen ist "in der Meinung, dass wenn dagegen nicht innert Frist Beschwerde erhoben werde, die Liste in Rechtskraft erwachse" (Ebenda, S. 647).

Art. 82 Abs. 2 der heutigen Verordnung des Bundesgerichts über die Geschäftsführung der Konkursämter von 1911 (seit 1997 KOV) lautet: "Teilbeträge, die auf

streitige Forderungen, auf Forderungen unter aufschiebender Bedingung oder mit ungewisser Verfallzeit (Art. 264 Abs. 3 SchKG), auf Sicherheitsansprüche sowie auf solche Forderungen entfallen, welche verspätet, jedoch noch vor der Abschlagsverteilung angemeldet wurden (Art. 251 Abs. 3 SchKG), sind zurückzubehalten".

Von dieser Bestimmung wäre wohl die vorliegende Situation erfasst, denn im Gegensatz zu jenem Fall ist hier der Konkursliquidatorin die Forderung der Klägerin bereits bekannt. Sollte die Liquidatorin die Verrechnung nicht anerkennen wollen und die Gegenforderung entsprechend wie oben geschildert prozessual geltend machen wollen, so würde die (unverrechnete) Forderung der Klägerin zu einer bedingten. Damit wären aber von der Liquidatorin auch Rückstellungen für die Forderung der Klägerin zu machen.

**10.** Da es sich vorliegend um einen Bankenkonkurs handelt, kann aber nicht unbesehen auf die angeführte Bestimmung der KOV verwiesen werden. Zwar gelten für Wirkungen und Ablauf des Bankenkonkurses grundsätzlich die Bestimmungen von Art. 197 bis 270 SchKG (Bankengesetz Art. 34 Abs. 1 und 2). Doch gilt dies bei der Liquidation lediglich unter "Vorbehalt der nachfolgenden Bestimmungen" (Ebenda Abs. 2). Im Sinne einer solche Ausnahme bestimmt Art. 37e Bankengesetz bezüglich der Verteilung, dass die Verteilungsliste nicht aufgelegt wird. Ausserdem kann die FINMA abweichende Verfügungen und Anordnungen treffen (Art. 34 Abs. 3 Bankengesetz).

**11.** Von dieser Ermächtigung hat die FINMA mit der Verordnung über die Insolvenz von Banken und Effektenhändlern Gebrauch gemacht (BIV-FINMA). Sie gilt gemäss der Übergangsbestimmung Art. 61 auch für Verfahren, die bei Inkrafttreten am 1. November 2012 – wie der Konkurs der Lehman Brothers Finance AG im Dezember 2008 – rechtshängig sind.

Bezüglich Verteilung ist die Möglichkeit von Abschlagszahlungen vorgesehen (Art. 36 Abs. 1, 1. Satz BIV-FINMA). Die Konkursliquidatorin erstellt hierfür eine provisorische Verteilungsliste und unterbreitet diese der FINMA zur Genehmigung

(Ebenda, 2. Satz). Keine Auszahlung erfolgt für Forderungen, "deren Bestand und Höhe nicht abschliessend feststeht" (Ebenda, 4. Abs. Bst. a).

Es kann keinem vernünftigen Zweifel unterliegen, dass die Forderung der Klägerin, so die Konkursliquidatorin die Verrechnung nicht anerkennen will, dieser Bestimmung unterliegt. Es hat damit zwar keine Auszahlung, aber sehr wohl eine Rückstellung zu erfolgen, womit sich diesbezüglich die genau gleiche Situation wie bei Art. 82 KOV ergibt. Denn Art. 38 BIV-FINMA hält zusätzlich fest, dass die FINMA Anordnungen über "die Hinterlegung der nicht ausbezahlten Anteile" zu treffen hat.

**12.** Nach der – allerdings wie aufgezeigt aus Zuständigkeitsgründen unverbindlichen – Meinung des verfügenden Gerichts hätte die Konkursverwaltung somit, so sie die Verrechnung der Klägerin nicht akzeptieren will, einen entsprechenden Teilbetrag (konkret: die Dividende für eine Forderung von CHF 19'872'328.55) unter dem Titel bedingte bzw. nicht abschliessend feststehende Forderung zurückzubehalten. Selbst wenn eine fälschliche Genehmigung einer Verteilungsliste ohne die Berücksichtigung der dannzumal strittigen Forderung der Klägerin durch die FINMA wider Erwarten nicht angefochten werden könnte, dürfte der Klägerin kein "irreversibler Schaden" erwachsen, weil in diesem Fall wohl die Konkursliquidatorin oder die FINMA zur Verantwortung gezogen werden könnte.

**13.** Die klagende Partei hat somit kein schützenswertes Interesse an der Beurteilung ihrer Rechtsbegehren, weshalb darauf gemäss Art. 59 Abs. 2 lit. a ZPO nicht einzutreten ist.

**V.**

(Kosten- und Entschädigungsfolgen)

**1.** Der Streitwert bei Kollokationsklagen entspricht grundsätzlich dem mit der Klage höchstens erzielbaren Prozessgewinn, also dem Betrag der mutmasslichen Konkursdividende (Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, Art. 250 N 49).

Vorliegend ist für die Streitwertberechnung (zur Zeit) von einer Konkursdividende von 60% auszugehen, wobei diesbezüglich auf die Verfügung vom 27. Juni 2013 verwiesen werden kann (act. 15). Demzufolge beträgt der Streitwert in diesem Prozess CHF 11'923'397.13 (CHF 19'872'328.55 x 60%) und die volle Gerichtsgebühr dementsprechend CHF 130'370.–.

**2.** In Anwendung von § 4 Abs. 1 und Abs. 2 in Verbindung mit § 10 Abs. 1 der Gebührenverordnung des Obergerichtes vom 8. September 2010 ist die zunächst um einen Drittel und dann nochmals um die Hälfte reduzierte Entscheidgebühr auf CHF 43'450.– festzusetzen.

Diese Gerichtsgebühr erweist sich angesichts der von den Parteivertretern geforderten Entschädigungen von CHF 98'982.– (Klägerin, act. 31) bzw. CHF 77'344.65 (Beklagte, act. 33) auch als dem Äquivalenzprinzip entsprechend.

**3.** Ausgangsgemäss wären die Kosten dieses Verfahrens der klagenden Partei als unterliegende aufzuerlegen (Art. 106 Abs. 1 ZPO).

Die Klägerin macht aber geltend, es rechtfertige sich gestützt auf Art. 107 Abs. 1 Bst. b und f ZPO eine vom Grundsatz der Auflage an die unterliegende Partei des Art. 106 ZPO abweichende Verteilung nach Ermessen (act. 30 S. 2). Denn die Klägerin habe sich in guten Treuen zur Prozessführung veranlasst gesehen und es lägen andere besondere Umstände vor, die eine Verteilung nach dem Ausgang des Verfahrens als unbillig erscheinen liessen.

Nach dem weiter oben Gesagten kann der Klägerin in diesem Punkt nicht gefolgt werden, konnte doch wie dargetan die Lösung für ihr Problem der bundesgerichtlichen Praxis entnommen werden und bringt sie ausserdem der vorliegende Entscheid nicht weiter, weil die Zuständigkeit für die angesprochene Frage eben nicht beim verfügenden Gericht, sondern bei den Aufsichtsbehörden gegeben ist.

Entsprechend ist die Klägerin zur Bezahlung der massgeblich reduzierten Gerichtsgebühr und zur Bezahlung einer Entschädigung an die Beklagte zu verpflichten.

**4.** Zur Bemessung der Prozessentschädigung an die Beklagte hat sich die Klägerin nicht geäussert, so dass androhungsgemäss auf Grund der Akten zu entscheiden ist. Der Anspruch auf die Anwaltsgebühr entsteht gemäss § 11 der obergerichtlichen Verordnung über die Anwaltsgebühren "mit der Beantwortung der Klage". Insofern beruft sich die Beklagte zu Unrecht auf deren § 4 Abs. 2, wenn sie von der Grundgebühr ausgehend diese um einen Drittel reduziert. Denn sie hatte sich gemäss Verfügung vom 7. Juni 2013 (act. 10) zunächst lediglich zum Streitwert zu äussern und benutzte diese Gelegenheit (was ihr natürlich nur schon aus prozessökonomischen Gründen zumindest freistand), das Rechtsschutzinteresse der Klägerin – erfolgreich – in Frage zu stellen. Angesichts der Verantwortung und der Schwierigkeit des Falles (der Zeitaufwand ist nicht bekannt) rechtfertigt sich vorliegend eine pauschale Entschädigung der Beklagten mit CHF 50'000.–, zu deren Bezahlung die Klägerin zu verpflichten ist. Mangels Antrag enthält dieser Betrag keine MWST.

### Das Gericht verfügt:

1. Auf die Klage wird nicht eingetreten und das Verfahren als dadurch erledigt abgeschrieben.

2. Die Entscheidgebühr wird festgesetzt auf CHF 43'450.–.

3. Die Entscheidgebühr wird der klagenden Partei auferlegt und aus dem von ihr geleisteten Vorschuss bezogen.

4. Die Klägerin wird verpflichtet, der beklagten Partei eine Parteientschädigung von CHF 50'000.– zu bezahlen.

5. Schriftliche Mitteilung an die Parteien.

6. Eine Berufung gegen diesen Entscheid kann innert <u>30 Tagen</u> von der Zustellung an im Doppel und unter Beilage dieses Entscheids beim Obergericht des Kantons Zürich, Zivilkammer, Postfach 2401, 8021 Zürich, erklärt wer-

den. In der Berufungsschrift sind die Anträge zu stellen und zu begründen. Allfällige Urkunden sind mit zweifachem Verzeichnis beizulegen.

Zürich, 24. September 2013

BEZIRKSGERICHT ZÜRICH
Einzelgericht für SchKG-Klagen

Der Leitende Gerichtsschreiber:

lic. iur. Ph. Talbot