UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                              :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC. *et al.*              :        Case No. 08-13555 (SCC)
                                                    :
                                                    :        (Jointly Administered)
Debtors.                                            :
-------------------------------------------------------------------X

## DECLARATION OF MARKUS SCHOTT IN SUPPORT OF RESPONSE OF KBC BANK NV TO DEBTORS' FOUR HUNDRED SEVENTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

MARKUS SCHOTT, pursuant to 28 U.S.C. §1746, hereby declares as follows:

1.       I am a partner of the law firm of Baer & Karrer AG, counsel to KBC Bank NV ("**KBC**"), and I respectfully submit this declaration in support of the *Response of KBC Bank NV to Debtors' Four Hundred Seventy-Seventh Omnibus Objection to Claims (No Liability Claims)* dated September 5, 2014.

2.       KBC was party to derivative transactions with Lehman Brothers Finance S.A. ("**LBF**"), a Swiss affiliate of the Debtors, arising under a 1992 ISDA Master Agreement dated as of October 24, 1997 (as amended, supplemented or otherwise modified from time to time, and including all schedules, annexes and exhibits thereto, and all confirmations exchanged pursuant to transactions entered into in connection therewith, the "**Master Agreement**").

3.       On October 29, 2008, the Swiss Federal Banking Commission ordered that LBF be liquidated and PricewaterhouseCoopers AG, Zurich, was appointed to act as LBF's liquidators (the "**Swiss Liquidators**").

4.       On December 22, 2008, bankruptcy proceedings were commenced in respect of LBF (the "**Swiss Proceedings**").

5.       KBC Investments Cayman Islands V Ltd., an affiliate of KBC ("**KBC Cayman**"), was party to a derivatives transaction with LBF (the "**Affiliate Transaction**"). The trade confirmation relating to the Affiliate Transaction referred to the standard form 1992 ISDA Master Agreement and, in addition, included a cross-affiliate set-off provision (the "**Set-Off Provision**").

Following the commencement of the Swiss Proceedings, KBC Cayman terminated the Affiliate Transaction and determined that it owed a net amount to LBF. Rather than pay this amount to LBF, KBC Cayman declared to set off its net debt to LBF under the Affiliate Transaction against KBC's net claim against LBF under the Master Agreement (the "**Set-Off**").

6.      By letter dated February 17, 2009, KBC filed a direct claim against LBF in the Swiss Proceedings in the amount of USD 22,400,668 in respect of the Master Agreement. This claim was reduced by KBC in a revised notice dated December 27, 2010 to USD 17,975,379 (payable to KBC) together with interest and other expenses of USD 234,397 (the "**Direct Claim**"). The Direct Claim was filed on a contingent basis to preserve KBC's rights to the extent the Set-Off was invalidated or reversed.

7.      On April 3, 2013, the Swiss Liquidators rejected the Direct Claim based on the argument that KBC's valuation of the settlement amount was erroneous and that, according to its own calculations, it was KBC that owed money under the Master Agreement to LBF.

8.      KBC commenced an action on April 22, 2013 (the "**Swiss Litigation**") challenging such rejection in the competent Zurich District Court (the "**Swiss Court**").

9.      On September 24, 2013, the Swiss Court ruled that because KBC had purported to extinguish the Direct Claim by way of the Set-Off, and because, therefore, the Direct Claim could not be included in LBF's schedule of claims, KBC had no legal interest in its action. Thus, the Swiss Court decided to close the Swiss Litigation. A copy of the Swiss Court ruling is attached hereto as Exhibit A.

10.      The Swiss Court did not determine the merits of the Set-Off and ruled on the basis that the Swiss Liquidators did not have the authority to decide the validity of the Set-Off.

11.      The Swiss Court indicated that if a competent court should subsequently reject the Set-Off, and if the Swiss Liquidators would reject a delayed submission of the Direct Claim in the Swiss Proceedings, the Swiss Financial Market Supervisory Authority would be competent to decide the admissibility of such delayed submission. In the Swiss Court's non-binding view, KBC would be entitled to make a delayed submission of the Direct Claim in the Swiss Proceedings.

12.     I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

Dated: September 4, 2014
Zurich, Switzerland

_____
**Markus Schott**

## EXHIBIT A

*Copy of Swiss Court Ruling*



# Bezirksgericht Zürich

Einzelgericht für SchKG-Klagen



---

Geschäfts-Nr.: FO130017-L / U

Bezirksrichter lic. iur. F. Ziltener

Leitender Gerichtsschreiber lic. iur. Ph. Talbot

EINGEGANGEN

2 5. Sep. 2013

am ..............

## Verfügung vom 24. September 2013

in Sachen

**KBC Bank N.V.**,

Havenlaan 2, 1080 Brüssel, Belgien,

Klägerin

vertreten durch Rechtsanwalt PD Dr. iur. Markus Schott und Rechtsanwalt lic. iur.
Eric Stupp, Bär & Karrer AG, Brandschenkestr. 90, Postfach 1548, 8027 Zürich

gegen

**Konkursmasse der Lehman Brothers Finance AG in Liquidation**,

Stampfenbachstrasse 48, 8006 Zürich,

Beklagte

vertreten durch die Liquidatorin PricewaterhouseCoopers AG,
Birchstrasse 160, 8050 Zürich

diese vertreten durch Rechtsanwalt Dr. iur. Markus Guggenbühl und/oder
Rechtsanwalt Dr. iur. Christian Oetiker, und/oder Rechtsanwältin Dr. iur. Jana
Essebier,
VISCHER AG, Schützengasse 1, Postfach 1230, 8021 Zürich

betreffend **Kollokation (ungesicherte Forderung im Konkurs der Lehman
Brothers Finance AG in Liquidation)**

- 2 -

### Rechtsbegehren:
(act. 1 S. 2)

" 1.  Der Kollokationsentscheid Nr. 110 im Konkurs der Lehman
     Brothers Finance AG in Liquidation vom 3. April 2013 betreffend
     KBC Bank N.V. sei aufzuheben.

2.  Es sei eine Forderung von KBC Bank N.V. gegen Lehman
    Brothers Finance AG im Betrag von CHF 19'872'328.55 in der
    dritten Klasse anzuerkennen.

3.  Es sei im Kollokationsplan davon Vormerk zu nehmen, dass die
    Forderung von KBC Bank N.V. gegen die Lehman Brothers Fi-
    nance AG in Liquidation im Umfang von CHF 19'872'328.55 voll-
    ständig verrechnet wird mit einer Forderung von Lehman Brothers
    Finance AG in Liquidation gegen KBC Investments Cayman Is-
    lands V Ltd.

4.  Es sei festzustellen, dass im Falle einer rechtskräftigen Ableh-
    nung des Verrechnungsrechts und einer neuen Eingabe der For-
    derung von CHF 19'872'328.55 durch KBC Bank N.V. gemäss
    Art. 251 SchKG diese Forderung in vollem Umfang zu kollozieren
    sei.

5.  Unter Kosten- und Entschädigungsfolge zu Lasten der Beklag-
    ten."

### Das Gericht zieht in Erwägung:

I.

(Parteien)

Die klagende Partei (eine Bank) und die Lehman Brothers Finance AG (nachfol-
gen LBF) schlossen 1997 einen Rahmenvertrag und gestützt auf diesen in der
Folge zahlreiche Derivatgeschäfte. Der Konkurs von Lehman Brothers Holdings

- 3 -

Inc. im Jahre 2008 in den Vereinigten Staaten führte gemäss Klägerin noch vor dem Konkurs der Beklagten zur vorzeitigen Vertragsbeendigung zwischen den Parteien. Die Vertragsbeendigung hat gemäss Klägerin zur Folge, dass die einzelnen Transaktionen durch eine einzige Verpflichtung ersetzt werden (dem sog. Early Termination Amount; act. 1 S. 4 f.). Diese Verpflichtung will die Klägerin mit CHF 19'872'328.55 kolloziert haben. Gleichzeitig erklärt sie aber in der Klagebegründung vollständige Verrechnung mit einer Forderung von LBF gegen KBC Investments Cayman Island V Ltd. (nachfolgend Cayman V; act. 1 S. 5).

## II.

### (Prozessgeschichte)

Am 25. April 2013 (Datum des Poststempels: 22. April 2013) ging hierorts Klage mit dem oben wiedergegebenen Rechtsbegehren ein (act. 1). Mit Verfügung vom 16. Mai 2013 wurde der klagenden Partei Frist angesetzt, um sich zur Höhe des Streitwertes zu äussern und ein Beilagenverzeichnis für die noch nicht verzeichneten Klagebeilagen (nunmehr act. 3/13/1-92) einzureichen (act. 5). Die klagende Partei reichte innert Frist ihre Stellungnahme vom 3. Juni 2013, das Beilagenverzeichnis für die fraglichen Klagebeilagen und der Klageschrift versehentlich nicht beigelegte Unterlagen ein (act. 9). Das Gericht forderte mit Verfügung vom 7. Juni 2013 die beklagte Partei auf, zur Höhe des Streitwertes Stellung zu nehmen und sich zur Berechnung der Konkursdividende und zum Zwischenstand des Vergleichs zwischen ihr und der Lehman Brothers Holdings Inc. zu äussern (act. 10). Dieser Aufforderung kam die Beklagte fristgerecht mit Eingabe vom 24. Juni 2013 nach (act. 13). Der klagenden Partei wurde darauf in Anwendung von Art. 98 ZPO mit Verfügung vom 27. Juni 2013 (act. 15) ein Vorschuss im Umfang der mutmasslichen Gerichtskosten von CHF 130'370.– auferlegt. Innert erstreckter Frist (act. 19) wurde dieser Kostenvorschuss geleistet (act. 20). Mit Verfügung vom 9. Juli 2013 wurde der klagenden Partei Frist angesetzt, um sich zu ihrem Rechtsschutzinteresse an der vorliegenden Klage zu äussern (act. 21). Diese Stellungnahme ging fristgerecht am 28. August 2013 beim Gericht ein (act. 26).

- 4 -

### III.

(Parteistandpunkte)

**1.** Die beklagte Partei macht in ihrer Eingabe vom 24. Juni 2013 geltend, dass die klagende Partei im Gegensatz zur Forderungsanmeldung in der Klagebegründung die Verrechnung der gesamten Forderung erkläre. Aus diesem Grund richte sich ihr gegenwärtiges Interesse nicht auf die Teilnahme an der Verteilung im Konkursverfahren der Beklagten, so dass kein Forderungsbetrag zu kollozieren sei. Die klagende Partei habe selbst geltend gemacht, dass über die Gültigkeit der Verrechnung nicht im vorliegenden Kollokationsverfahren zu entscheiden sei, sondern in einem separaten Forderungsprozess. Nur bei rechtskräftiger Verneinung der Gültigkeit der Verrechnung könne die Klägerin die Forderung nach Art. 251 SchKG nachträglich (nochmals) eingeben. Somit habe die klagende Partei kein schutzwürdiges Interesse an der Beurteilung der Klage (act. 13 S. 8 f.).

**2.** Dem widersetzt sich die Klägerin in ihrer Stellungnahme vom 27. August 2013 mit den Anträgen, es sei über die Frage des Rechtsschutzinteresses in einem selbständigen Zwischenentscheid zu entscheiden und ein zweiter Schriftenwechsel zur Frage des Rechtsschutzinteresses anzuordnen (act. 26 S. 2). Sie macht geltend, die Konkursliquidatorin habe in ihrem Entscheid vom 3. April 2013 festgehalten, der Klägerin stehe gestützt auf das ISDA Master Agreement keine Forderung gegenüber der Beklagten zu. Im Gegenteil resultiere gemäss ihren eigenen Berechnungen eine Forderung zugunsten der Beklagten. Sodann halte die Liquidatorin zusätzlich fest, auch wenn die von der Klägerin geltend gemachte Forderung bestünde, wäre eine Verrechnung dieser Forderung mit der Forderung der Beklagten gegen Cayman V unzulässig und unwirksam. Für den Fall, dass ein zuständiges Zivilgericht das Verrechnungsrecht der Klägerin wider Erwarten verneinen sollte, müsse die Klägerin als Gläubigerin im Konkursverfahren von LBF partizipieren können. Dies sei nur möglich, wenn die Forderung der Klägerin im Kollokationsplan der Beklagten aufgenommen sei. Die Möglichkeit der nachträglichen Forderungseingabe nach einem solchen Zivilprozess sei nicht gegeben, weil das Bundesgericht Art. 251 SchKG einschränkend dahingehend ausgelegt habe, dass es sich bei der nachträglich angemeldeten Forderung um eine erstmals gel-

- 5 -

tend gemachte Forderung handle und nicht etwa der rechtskräftig gewordene Kol-
lokationsplan abgeändert werden wolle. Dazu komme, dass selbst bei nachträgli-
cher Anmeldemöglichkeit durch die Nichtteilnahme an Abschlagszahlungen der
Klägerin ein irreversibler Schaden entstehen könne. Die Zulässigkeit einer erneu-
ten Forderungseingabe sei nach der bundesgerichtlichen Rechtsprechung unge-
wiss und daher zumindest bezüglich Rechtsbegehren Ziffer 4 das Rechtsschutzin-
teresse gegeben.

**3.** Die Sache erweist sich als spruchreif, weshalb von einem zweiten Schriften-
wechsel abgesehen wurde und lediglich die Stellungnahmen der Parteien zu den
Kosten- und Entschädigungsfolgen eingeholt wurden (act. 30 und act. 32).

### IV.

(Gerichtliche Beurteilung)

**1.** Das Gericht überprüft seine Zuständigkeit als Prozessvoraussetzung von Am-
tes wegen (Art. 59 Abs. 2 i.V.m. Art. 60 ZPO). Mit dem Rechtsbegehren Ziffer 4
beantragt die klagende Partei die Feststellung, dass – im Falle einer rechtskräfti-
gen Ablehnung des Verrechnungsrechts und einer neuen Eingabe der Forderung
gegen die beklagte Partei gemäss Art. 251 SchKG – die Forderung im vollen Um-
fang zu kollozieren sei.

Ob eine verspätete Konkurseingabe noch zugelassen werden kann, ist im Be-
schwerdeverfahren und nicht im Rahmen einer Kollokationsklage zu prüfen
(BGE 108 III 80, 81 ff.). Für die Bankenliquidation gilt diesbezüglich die Spezial-
gesetzliche Regelung des Bundesgesetzes über die Banken und Sparkassen
bzw. der Bankeninsolvenzverordnung der Eidgenössischen Finanzmarktaufsicht
(Bankengesetz und BIV-FINMA; siehe zur zeitlichen Geltung unten). Gemäss die-
ser Verordnung kann, wer durch einen Entscheid der Liquidatorin in seinen Inte-
ressen verletzt wird, diesen Sachverhalt bei der FINMA anzeigen (Art. 6 Abs. 1
BIV-FINMA). Die FINMA beurteilt den Sachverhalt, trifft die notwendigen Mass-
nahmen und erlässt, falls erforderlich, eine Verfügung (Ebenda Abs. 3). Das an-
gerufene Gericht ist daher auch im Bereich des Bankenkonkurses bezüglich

- 6 -

Rechtsbegehren Ziffer 4 sachlich und funktional unzuständig, weshalb auf das
Begehren nicht einzutreten ist (Art. 59 Abs. 2 lit. b ZPO). Dies schliesst allerdings
nicht aus, dass das Thema vorfrageweise eine Rolle spielt.

**2.** Die örtliche, sachliche und funktionale Zuständigkeit ist im Übrigen im vorlie-
genden Prozess gegeben (Art. 34 Abs. 2 Bankengesetz, Art. 30 Abs. 1 BIV-
FINMA, Art. 250 Abs. 1 SchKG, Art. 198 lit. e Ziff. 6 ZPO i.V.m. § 24 lit. b GOG).

**3.** Gemäss Art. 59 ZPO ist auf eine Klage nur einzutreten, soweit ein rechtliches
Interesse an ihrer Beurteilung besteht. Ein Rechtsschutzinteresse ist vorhanden,
wenn die Durchsetzung des materiellen Rechts gerichtlichen Rechtsschutz nötig
macht. Bei Leistungs- und Gestaltungsklagen ergibt sich das Rechtsschutzinte-
resse aus dem geltend gemachten Anspruch. Das Rechtsschutzinteresse ist Pro-
zessvoraussetzung und als solche von Amtes wegen zu prüfen (Art. 60 ZPO;
Spühler/Dolge/Gehri, Schweizerisches Zivilprozessrecht, 9. Aufl., Bern 2010, § 33
N 71 ff.).

**4.** Der Gläubiger, der die gegen ihn bestehende Forderung des Gemeinschuld-
ners mit seiner Konkursforderung verrechnen will, hat dies bereits mit der Forde-
rungsanmeldung bei der Konkursverwaltung zu erklären. Die Erklärung der Ver-
rechnung erfolgt, indem der Gläubiger nur den über die Verrechnungssumme hin-
ausgehenden Verrechnungsbetrag kolloziert bzw. bei gleicher Höhe von Konkurs-
und Verrechnungsforderung auf eine Kollokation gänzlich verzichtet. Auch wenn
die Konkursverwaltung die Verrechnung nicht akzeptieren will, hat sie die Forde-
rung in angemeldeter Höhe in den Kollokationsplan aufzunehmen. Ihr ist es nicht
erlaubt, den vollen Forderungsbetrag zu kollozieren, um sich gegen die Verrech-
nung auszusprechen. Die Zulässigkeit der Verrechnung kann auch nicht in einem
folgenden positiven Kollokationsprozess geklärt werden, da dieser ausschliesslich
der Bereinigung der Passiven dient. Da die Forderung der Gläubigerin so in den
Kollokationsplan aufgenommen wird, wie sie angemeldet wurde, ist diese nicht
beschwert, und es fehlt ihr daher das notwendige Interesse zur Führung eines
positiven Kollokationsprozesses (Brunner/Reutter, Kollokations- und Wider-
spruchsklagen nach SchKG, 2. Auflage, Bern, 2002, S. 67 unter Verweis auf
BGE 71 III 185, ebenso Ammon/Walther, Grundriss des Schuldbetreibungs- und

- 7 -

Konkursrechts, 8. Aufl., Bern 2008, § 40 N 58 sowie Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, N 64 zu Art. 250).

**5.** Die klagende Partei macht in ihrer Klageschrift die Verrechnung im Umfang ihrer gesamten Forderung, nämlich CHF 19'872'328.55, gegen die beklagte Partei geltend (act. 1 S. 2) und wurde im Kollokationsplan mit CHF 0.– aufgenommen. Nach dem oben Erwähnten muss eine voll verrechnete Forderungseingabe mit CHF 0.– kolloziert werden, womit die Liquidatorin richtig gehandelt hat. Wie die klagende Partei in ihrer Klageschrift selbst bemerkt (act. 1 N 13) und oben ausgeführt wurde, ist die Gültigkeit und Wirksamkeit der Verrechnung nicht Thema des Kollokationsprozesses, der alleine die Bereinigung der Passiven bezweckt. Vielmehr wäre dies – wie die Klägerin selbst einräumt – Gegenstand eines allfälligen Forderungsprozesses der beklagten gegen die klagende Partei.

**6.** Unzutreffend ist, wenn die Klägerin anführt, die vom Bundesgericht bisher entschiedenen Fälle seien alle anders gelagert gewesen, als der vorliegende. Das Bundesgericht erklärte schon früh unmissverständlich:

"Hat ein Konkursgläubiger deswegen nur eine reduzierte Forderung angemeldet, weil er mit dem Mehrbetrag eine Schuld gegenüber dem Gemeinschuldner durch Verrechnung zu tilgen gedenkt, so hat sich die Konkursverwaltung um den angeblich durch Verrechnung getilgten und daher nicht angemeldeten Teil der Forderung nicht zu kümmern, sondern sich darauf zu beschränken, die Forderung im angemeldeten reduzierten Betrage zuzulassen. Will sie die Verrechnung nicht gelten lassen, so bleibt ihr nichts anders übrig, als die Gegenforderung des Gemeinschuldners einzutreiben und zu diesem Zwecke gegen den Konkursgläubiger Klage zu erheben, welcher dieser durch die Einrede der Verrechnung entgegen treten kann. Wird die Verrechnungseinrede gutgeheissen und also die Klage abgewiesen, so hat es einfach bei der erfolgten Zulassung der reduzierten Konkursforderung sein Bewenden. **Wird dagegen die Verrechnungseinrede abgewiesen und also die Klage zugesprochen, so ist es dem beklagten Konkursgläubiger anheimgestellt, mit einer nachträglichen Konkurseingabe auch noch den Mehrbetrag seiner Konkursforderung anzumelden, der sich nun nicht als getilgt erweist, weil sein Vorhaben, ihn zur Tilgung seiner Schuld gegenüber dem Gemeinschuldner zu benützen, vereitelt worden ist"** (BGE 56 III 248).

Diese Aussage ist durch die von der Klägerin angeführte spätere Rechtsprechung des Bundesgerichts nicht in Frage gestellt, denn die in einem Prozess der Konkursmasse gegen den Konkursgläubiger erzielte materielle Rechtskraft über die

- 8 -

fehlende Verrechenbarkeit ist ohne weiteres als neue Tatsache im Sinne der bundesgerichtlichen Rechtsprechung zu Art. 251 SchKG zu sehen.

**7.** Die Klägerin führt sodann an, ihr könne durch die Nichtteilnahme an den Abschlagszahlungen ein irreversibler Schaden entstehen (act. 26 S. 5). Dazu ist zunächst zu sagen, dass die Klägerin durch die Verrechnung – sollte sie denn Bestand haben – gewinnt, indem sie ihre volle Forderung gegenüber der Konkursmasse zur Befriedigung bringen kann, statt nur einen Teil davon im Umfang der in Aussicht stehenden Konkursdividende. Zutreffend ist allerdings, dass das Bundesgericht in einem noch älteren Entscheid festhielt, "auf Abschlagszahlungen, die vor seiner Anmeldung stattgefunden haben, hat ein Gläubiger auch dann keinen Anspruch, wenn er die Verspätung der Konkurseingabe nicht verschuldet hat" (BGE 38 I 643).

**8.** Der angeführte Bundesgerichtsentscheid zeigt nun aber gerade auf, wie das Problem der Klägerschaft – auf anderem Weg als von dieser mit dem vorliegenden Prozess beabsichtigt – zu lösen ist. Zunächst ist darin festgehalten, dass die Lösung, auch den unverschuldet verspätet anmeldenden Gläubiger nicht mehr an Abschlagszahlungen teilhaben zu lassen, auf zwingenden praktischen Erwägungen beruht. Weil nämlich die Rückforderung aus bereits getätigten Abschlagszahlungen sich "aus praktischen und juristischen Gründen verbietet". Entsprechend ist denn auch unbestritten, dass ein allfälliger Überschuss nach Verteilung des Massavermögens dem verspätet anmeldenden Gläubiger noch vor dem Gemeinschuldner zukommen muss (Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, N 18 zu Art. 251).

**9.** Das Bundesgericht verweist sodann auf Art. 82 KV, wonach vor der Vornahme einer Abschlagszahlung eine provisorische Verteilungsliste aufzustellen und unter Mitteilung an die Gläubiger während 10 Tagen beim Konkursamt aufzulegen ist "in der Meinung, dass wenn dagegen nicht innert Frist Beschwerde erhoben werde, die Liste in Rechtskraft erwachse" (Ebenda, S. 647).

Art. 82 Abs. 2 der heutigen Verordnung des Bundesgerichts über die Geschäftsführung der Konkursämter von 1911 (seit 1997 KOV) lautet: "Teilbeträge, die auf

- 9 -

streitige Forderungen, auf Forderungen unter aufschiebender Bedingung oder mit
ungewisser Verfallzeit (Art. 264 Abs. 3 SchKG), auf Sicherheitsansprüche sowie
auf solche Forderungen entfallen, welche verspätet, jedoch noch vor der Ab-
schlagsverteilung angemeldet wurden (Art. 251 Abs. 3 SchKG), sind zurückzube-
halten".

Von dieser Bestimmung wäre wohl die vorliegende Situation erfasst, denn im Ge-
gensatz zu jenem Fall ist hier der Konkursliquidatorin die Forderung der Klägerin
bereits bekannt. Sollte die Liquidatorin die Verrechnung nicht anerkennen wollen
und die Gegenforderung entsprechend wie oben geschildert prozessual geltend
machen wollen, so würde die (unverrechnete) Forderung der Klägerin zu einer
bedingten. Damit wären aber von der Liquidatorin auch Rückstellungen für die
Forderung der Klägerin zu machen.

**10.** Da es sich vorliegend um einen Bankenkonkurs handelt, kann aber nicht un-
besehen auf die angeführte Bestimmung der KOV verwiesen werden. Zwar gelten
für Wirkungen und Ablauf des Bankenkonkurses grundsätzlich die Bestimmungen
von Art. 197 bis 270 SchKG (Bankengesetz Art. 34 Abs. 1 und 2). Doch gilt dies
bei der Liquidation lediglich unter "Vorbehalt der nachfolgenden Bestimmungen"
(Ebenda Abs. 2). Im Sinne einer solche Ausnahme bestimmt Art. 37e Bankenge-
setz bezüglich der Verteilung, dass die Verteilungsliste nicht aufgelegt wird. Aus-
serdem kann die FINMA abweichende Verfügungen und Anordnungen treffen
(Art. 34 Abs. 3 Bankengesetz).

**11.** Von dieser Ermächtigung hat die FINMA mit der Verordnung über die Insol-
venz von Banken und Effektenhändlern Gebrauch gemacht (BIV-FINMA). Sie gilt
gemäss der Übergangsbestimmung Art. 61 auch für Verfahren, die bei Inkrafttre-
ten am 1. November 2012 – wie der Konkurs der Lehman Brothers Finance AG
im Dezember 2008 – rechtshängig sind.

Bezüglich Verteilung ist die Möglichkeit von Abschlagszahlungen vorgesehen
(Art. 36 Abs. 1, 1. Satz BIV-FINMA). Die Konkursliquidatorin erstellt hierfür eine
provisorische Verteilungsliste und unterbreitet diese der FINMA zur Genehmigung

- 10 -

(Ebenda, 2. Satz). Keine Auszahlung erfolgt für Forderungen, "deren Bestand und Höhe nicht abschliessend feststeht" (Ebenda, 4. Abs. Bst. a).

Es kann keinem vernünftigen Zweifel unterliegen, dass die Forderung der Klägerin, so die Konkursliquidatorin die Verrechnung nicht anerkennen will, dieser Bestimmung unterliegt. Es hat damit zwar keine Auszahlung, aber sehr wohl eine Rückstellung zu erfolgen, womit sich diesbezüglich die genau gleiche Situation wie bei Art. 82 KOV ergibt. Denn Art. 38 BIV-FINMA hält zusätzlich fest, dass die FINMA Anordnungen über "die Hinterlegung der nicht ausbezahlten Anteile" zu treffen hat.

**12.** Nach der – allerdings wie aufgezeigt aus Zuständigkeitsgründen unverbindlichen – Meinung des verfügenden Gerichts hätte die Konkursverwaltung somit, so sie die Verrechnung der Klägerin nicht akzeptieren will, einen entsprechenden Teilbetrag (konkret: die Dividende für eine Forderung von CHF 19'872'328.55) unter dem Titel bedingte bzw. nicht abschliessend feststehende Forderung zurückzuhalten. Selbst wenn eine fälschliche Genehmigung einer Verteilungsliste ohne die Berücksichtigung der dannzumal strittigen Forderung der Klägerin durch die FINMA wider Erwarten nicht angefochten werden könnte, dürfte der Klägerin kein "irreversibler Schaden" erwachsen, weil in diesem Fall wohl die Konkursliquidatorin oder die FINMA zur Verantwortung gezogen werden könnte.

**13.** Die klagende Partei hat somit kein schützenswertes Interesse an der Beurteilung ihrer Rechtsbegehren, weshalb darauf gemäss Art. 59 Abs. 2 lit. a ZPO nicht einzutreten ist.

**V.**

(Kosten- und Entschädigungsfolgen)

**1.** Der Streitwert bei Kollokationsklagen entspricht grundsätzlich dem mit der Klage höchstens erzielbaren Prozessgewinn, also dem Betrag der mutmasslichen Konkursdividende (Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, Art. 250 N 49).

- 11 -

Vorliegend ist für die Streitwertberechnung (zur Zeit) von einer Konkursdividende von 60% auszugehen, wobei diesbezüglich auf die Verfügung vom 27. Juni 2013 verwiesen werden kann (act. 15). Demzufolge beträgt der Streitwert in diesem Prozess CHF 11'923'397.13 (CHF 19'872'328.55 x 60%) und die volle Gerichtsgebühr dementsprechend CHF 130'370.–.

**2.** In Anwendung von § 4 Abs. 1 und Abs. 2 in Verbindung mit § 10 Abs. 1 der Gebührenverordnung des Obergerichtes vom 8. September 2010 ist die zunächst um einen Drittel und dann nochmals um die Hälfte reduzierte Entscheidgebühr auf CHF 43'450.– festzusetzen.

Diese Gerichtsgebühr erweist sich angesichts der von den Parteivertretern geforderten Entschädigungen von CHF 98'982.– (Klägerin, act. 31) bzw. CHF 77'344.65 (Beklagte, act. 33) auch als dem Äquivalenzprinzip entsprechend.

**3.** Ausgangsgemäss wären die Kosten dieses Verfahrens der klagenden Partei als unterliegende aufzuerlegen (Art. 106 Abs. 1 ZPO).

Die Klägerin macht aber geltend, es rechtfertige sich gestützt auf Art. 107 Abs. 1 Bst. b und f ZPO eine vom Grundsatz der Auflage an die unterliegende Partei des Art. 106 ZPO abweichende Verteilung nach Ermessen (act. 30 S. 2). Denn die Klägerin habe sich in guten Treuen zur Prozessführung veranlasst gesehen und es lägen andere besondere Umstände vor, die eine Verteilung nach dem Ausgang des Verfahrens als unbillig erscheinen liessen.

Nach dem weiter oben Gesagten kann der Klägerin in diesem Punkt nicht gefolgt werden, konnte doch wie dargetan die Lösung für ihr Problem der bundesgerichtlichen Praxis entnommen werden und bringt sie ausserdem der vorliegende Entscheid nicht weiter, weil die Zuständigkeit für die angesprochene Frage eben nicht beim verfügenden Gericht, sondern bei den Aufsichtsbehörden gegeben ist.

Entsprechend ist die Klägerin zur Bezahlung der massgeblich reduzierten Gerichtsgebühr und zur Bezahlung einer Entschädigung an die Beklagte zu verpflichten.

- 12 -

**4.** Zur Bemessung der Prozessentschädigung an die Beklagte hat sich die Kläge-rin nicht geäussert, so dass androhungsgemäss auf Grund der Akten zu ent-scheiden ist. Der Anspruch auf die Anwaltsgebühr entsteht gemäss § 11 der obergerichtlichen Verordnung über die Anwaltsgebühren "mit der Beantwortung der Klage". Insofern beruft sich die Beklagte zu Unrecht auf deren § 4 Abs. 2, wenn sie von der Grundgebühr ausgehend diese um einen Drittel reduziert. Denn sie hatte sich gemäss Verfügung vom 7. Juni 2013 (act. 10) zunächst lediglich zum Streitwert zu äussern und benutzte diese Gelegenheit (was ihr natürlich nur schon aus prozessökonomischen Gründen zumindest freistand), das Rechts-schutzinteresse der Klägerin – erfolgreich – in Frage zu stellen. Angesichts der Verantwortung und der Schwierigkeit des Falles (der Zeitaufwand ist nicht be-kannt) rechtfertigt sich vorliegend eine pauschale Entschädigung der Beklagten mit CHF 50'000.–, zu deren Bezahlung die Klägerin zu verpflichten ist. Mangels Antrag enthält dieser Betrag keine MWST.

### Das Gericht verfügt:

1.   Auf die Klage wird nicht eingetreten und das Verfahren als dadurch erledigt abgeschrieben.

2.   Die Entscheidgebühr wird festgesetzt auf CHF 43'450.–.

3.   Die Entscheidgebühr wird der klagenden Partei auferlegt und aus dem von ihr geleisteten Vorschuss bezogen.

4.   Die Klägerin wird verpflichtet, der beklagten Partei eine Parteientschädigung von CHF 50'000.– zu bezahlen.

5.   Schriftliche Mitteilung an die Parteien.

6.   Eine Berufung gegen diesen Entscheid kann innert 30 Tagen von der Zustel-lung an im Doppel und unter Beilage dieses Entscheids beim Obergericht des Kantons Zürich, Zivilkammer, Postfach 2401, 8021 Zürich, erklärt wer-

- 13 -

den. In der Berufungsschrift sind die Anträge zu stellen und zu begründen.
Allfällige Urkunden sind mit zweifachem Verzeichnis beizulegen.


Zürich, 24. September 2013


BEZIRKSGERICHT ZÜRICH
Einzelgericht für SchKG-Klagen

Der Leitende Gerichtsschreiber:

lic. iur. Ph. Talbot