WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
**In re**                                                  :          **Chapter 11 Case No.**
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :          **08-13555 (SCC)**
                                                           :
                        **Debtors.**                       :          **(Jointly Administered)**
                                                           :
                                                           :
---------------------------------------------------------------x

**DECLARATION OF ABHISHEK KALRA**
**IN SUPPORT OF MOTION PURSUANT TO RULE 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AND SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL**
**OF SETTLEMENT AGREEMENT BETWEEN LEHMAN BROTHERS**
**SPECIAL FINANCING INC. AND THE BANK OF NEW YORK MELLON**
**TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE, RELATING**
**TO MKP VELA CBO CREDIT DEFAULT SWAP AGREEMENT**

Pursuant to 28 U.S.C. § 1746, I, Abhishek Kalra, declare:

1.      I am over the age of 18 years and make these statements of my own personal

knowledge, my review of relevant business records of Lehman Brothers Holdings Inc. ("LBHI"

or the "Plan Administrator"), Lehman Brothers Special Financing Inc. ("LBSF"), and/or certain

of their affiliates (collectively, the "Chapter 11 Estates"), and/or my consultation with other

employees of the Chapter 11 Estates and the Plan Administrator's attorneys, and/or my review of

reports issued by the Trustee.[1]  If called to testify, I could testify to the truth of the matters set forth herein.

2.      I submit this declaration in support of the Plan Administrator's *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Settlement Agreement Between Lehman Brothers Special Financing Inc. And The Bank of New York Mellon Trust Company, National Association, As Trustee, Relating to MKP Vela CBO Credit Default Swap Agreement*, dated July 18, 2014 [ECF No. 45296] (the "Motion").

3.      I am a managing director with LBHI.  I have worked for the Chapter 11 Estates since November 24, 2008.  My areas of responsibility include managing, unwinding, and monetizing a portfolio of the Chapter 11 Estates' derivatives transactions, including with counterparties that are special purpose entities.  In those roles I have independently reviewed, have become familiar with, and have personal knowledge regarding many derivatives transactions that the Chapter 11 Estates entered into before their bankruptcies, including the transactions that are the subject of the Motion.  I participated on behalf of the Chapter 11 Estates in the negotiations that resulted in the entry of the Settlement Agreement and the related Indemnity Agreement.

4.      I adopt the representations contained in the Motion, as if set forth in full and at length in this Declaration.

5.      I am familiar with the portfolio of credit default swap transactions (collectively, the "Transactions") that were governed by a 1992 ISDA Master Agreement, dated as of November 16, 2006, as well as an Amended and Restated Schedule, Credit Support Annex, and

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion (as defined below).

WEIL:\95071286\6\58399.0011

Amended and Restated Confirmations, each dated April 23, 2008 (the "Credit Default Swap Agreement"), as well as the CDS Payment Dispute and the Litigation.

6.    The Controlling Class (or a majority thereof under certain circumstances) under the Indenture, has the right, among others, to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee, pursuant to Section 5.13 of the Indenture, provided that such direction not conflict with any rule of law or with the Indenture.  This right to direct the Trustee is subject to certain conditions, including the Trustee's right to request reasonable indemnification.

7.    LBSF, in its capacity as holder of more than two-thirds of the Class A Notes, and the Senior Swap Counterparty - pursuant to LBSF's direction, have instructed the Trustee, pursuant to a letter dated July 18, 2014, to enter into the Settlement Agreement and to perform its obligations thereunder in order to resolve the CDS Payment Dispute.

8.    I have reviewed the Motion, the Settlement Agreement and the Indemnity Agreement.  Other than the modification of the Settlement Agreement, as described hereinafter, the Motion accurately summarizes the terms of the Settlement Agreement and the Indemnity Agreement.

9.    After the filing of the Motion, MKP Capital Management LLC (the "Collateral Manager"), solely in its capacity as Collateral Manager to the Issuer, requested an amendment of the Settlement Agreement to ensure that it would have a sufficient source of payment for fees allegedly owed by the Issuer to the Collateral Manager.  After further discussions, the Trustee, the Collateral Manager and LBSF have agreed to a modification of the Settlement Agreement that provides for $525,000 to be included in the escrow account created pursuant to the Escrow Agreement for fees and expenses that are reimbursable under the Collateral Management

3

Agreement, dated as of November 16, 2006, entered into by the Issuer and the Collateral

Manager, and/or the Indenture.  In furtherance thereof, LBSF and the Trustee have executed an

Amendment to Settlement Agreement, dated September 5, 2014 (the "Amendment").  In

addition, LBSF and the Collateral Manager have entered into a letter agreement dated September

5, 2014 that reflects their agreement and that, among things, provides that LBSF shall direct the

Trustee to make a payment to the Collateral Manager in the amount of $540,000 for

reimbursement of expenses incurred prior to August 1, 2014.

       10.     After consultation with various employees of the Chapter 11 Estates and with the

Plan Administrator's attorneys, I believe that the Settlement Agreement, as amended, and the

corresponding Indemnity Agreement will benefit LBSF and its creditors.  First, the settlement

will result in a substantial payment to LBSF's estate.  LBSF has determined, in the exercise of its

business judgment, that such payment will adequately compensate the estate for the value of its

rights against the Issuer and its economic position in the Collateral.  Second, the Settlement

Agreement will avoid future litigation concerning the CDS Payment Dispute because the Parties

have agreed to release one another from claims thereunder.  Thus, the Settlement Agreement,

and by necessity the Indemnity Agreement, will allow LBSF to capture a substantial amount of

the value of the Transactions for its estate, while avoiding the costs associated with continuation

of the pending litigation.

       11.     Additionally, after consultation with various employees of the Chapter 11 Estates

and with the Plan Administrator's attorneys, I believe that the use of the Court's equitable

authority is justified and appropriate.  Affirmative direction is being provided by the Senior

Swap Counterparty, the Credit Default Swap Counterparty and more than two thirds of the

holders of the Class A Notes.  Whether or not the Settlement Agreement, as amended, is

WEIL:\95071286\6\58399.0011

approved by the Court and becomes effective, the remaining Collateral, which consists of approximately $144 million held by the Trustee under the Indenture, will not be sufficient to make any payments to the holders of classes of notes junior to the Class A Notes because the outstanding principal amount due on the Class A Notes is collectively $150,000,000. In other words, the holders of all other classes of Notes, other than Class A, will not receive a payment under the waterfall, irrespective of whether the remaining collateral is distributed today or at any future date. In addition, the Settlement Agreement has been approved by more than two-thirds of the holders of Class A Notes.

12.     For the reasons set forth above, I and my colleagues involved in the management of the Chapter 11 Estates, as well as counsel to the Chapter 11 Estates, have concluded, in our considered business judgment, that the compromises set forth in the Settlement Agreement are "fair and equitable," are well within the "range of reasonableness," and are in the best interests of LBSF's estate and its creditors. We believe the Settlement Agreement, the Amendment, and the corresponding Indemnity Agreement were entered into in good faith and negotiated at arm's length. Therefore, the Motion, which seeks approval of the Settlement Agreement, as amended, should be granted.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of September 2014.

_____
Abhishek Kalra

WEIL:\95071286\6\58399.0011