WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.,
in its capacity as Plan Administrator on behalf
of Lehman Brothers Special Financing Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br><br>Debtor. | Chapter 11 Case<br>No. 08-13555 (SCC)<br><br>(Jointly Administered) |
| Lehman Brothers Holdings Inc., in its capacity as Plan Administrator on behalf of Lehman Brothers Special Financing Inc.,<br><br>     Plaintiff,<br><br>  v.<br><br>Granite Finance Limited and HSBC Trustee (C.I.) Limited,<br><br>     Defendants. | Adv. Proc. No. 14-_____<br><br>**ADVERSARY**<br>**PROCEEDING**<br>**COMPLAINT** |

Lehman Brothers Holdings Inc. ("LBHI"), in its capacity as Plan Administrator (in this capacity, the "Plan Administrator" or "Plaintiff") on behalf of Lehman Brothers Special Financing Inc. ("LBSF"), under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), alleges the following on knowledge as to LBSF's and LBHI's own acts and upon information and belief as to all other matters against Granite Finance Limited ("Granite") and HSBC Trustee (C.I.) Limited ("the "Trustee", and together with Granite, the "Defendants"):

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action seeking to recover approximately $8.5 million that Granite owes to LBSF as a result of the termination of a swap transaction between the parties (the "Transaction") on October 28, 2008 (the "Early Redemption Date").  The parties had entered into the Transaction pursuant to the terms of a 1992 Local Currency-Single Jurisdiction ISDA Master Agreement (together with the associated schedule and exhibits thereto, the "Master Agreement").  At the time the Transaction terminated, LBSF was "in-the-money" on the Transaction.  LBSF then properly calculated the termination amount in respect of the Transaction and sent a calculation statement, dated June 13, 2010 (the "Calculation Statement"), to Granite and its Trustee, setting forth a termination amount of $8,520,758.49, less Unpaid Amounts, for a total principal payment of $8,471,408.49 owed by Granite to LBSF (the "Swap Termination Amount"), plus accrued interest.[1]

2.      Granite has refused to acknowledge or pay the Swap Termination Amount to LBSF.   Its failure to pay the Swap Termination Amount constitutes (i) a violation of multiple

---

[1] Capitalized terms used but not defined herein shall have the meaning given them in the Master Agreement.

provisions of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and (ii) a breach of the Master Agreement.

## THE PARTIES

3.      LBHI is a corporation organized and incorporated under the laws of the state of Delaware, with its current principal business address at 1271 Sixth Avenue, New York, New York 10020.  On December 6, 2011, the Court approved and entered an order confirming the Plan.  The Plan became effective on March 6, 2012.  Pursuant to the Plan, LBHI, as Plan Administrator, is authorized to prosecute actions on behalf of the estate of LBSF.

4.      LBSF is a corporation organized and incorporated under the laws of the state of Delaware, with its current principal business address at 1271 Sixth Avenue, New York, New York 10020.

5.      Upon information and belief, Granite is a special purpose vehicle based in the Cayman Islands.

6.      Upon information and belief, the Trustee is a registered private company with a principal place of business in St. Helier, Jersey.

## JURISDICTION AND VENUE

7.      On September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries, including LBSF, commenced in this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

8.      This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as well as sections 105(a), 362(a)(3), 541(a), and 542(b) of the Bankruptcy Code.  The Transaction is governed by English law, pursuant to Part 4.8 of the Schedule to the Master Agreement.

9.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2

10.     This Court has personal jurisdiction over Granite and the Trustee.  Granite has filed dozens of proofs of claims in this Court against LBHI and LBSF.  Moreover, the Transaction at issue in this litigation has a substantial nexus to the United States given, among other things, that LBSF, a party to the Transaction, is based in the United States, and the Transaction was negotiated and performance thereto took place in part in the United States.

11.     This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

12.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Procedure, Plaintiff states that it consents to the entry of a final judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

13.     Venue is proper in this Court under 28 U.S.C. § 1409(a) because the Chapter 11 Cases of LBHI and LBSF are pending in this district.

## BACKGROUND FACTS

### A.     The Transaction and The Governing Documents

14.     Given its nature as a special purpose vehicle, Granite acts through its trustee, the Trustee.

15.     Granite and LBSF entered into the Master Agreement as of June 13, 2006.  *See* Master Agreement.  The Master Agreement provides the basic terms of the parties' contractual relationship.   As contemplated by the Master Agreement, the Transaction itself was documented by a confirmation dated as of June 13, 2006 (the "Confirmation"), which supplements the Master Agreement and provides the economic terms of the specific swap Transaction.

16.     The Confirmation provides that in the event that an Early Redemption Date occurs, the Transaction shall terminate on that date.  *See* Confirmation Part 3.

3

17.     On July 14, 2009, LBSF sent a notice to Granite and the Trustee, stating that (i) an Early Redemption Date in respect of the Notes had occurred and that, in accordance with the terms of the Swap Agreement, the Transaction had terminated on October 28, 2008, the Early Redemption Date, and (ii) LBSF would determine the termination amount payable by Granite or LBSF to the other party, as the case may be.

## B.     LBSF Properly Calculated the Swap Termination Amount

18.     In the event that an Early Redemption Date occurs, the Confirmation for the Transaction provides that the "Calculation Agent shall calculate the Swap Termination Amount," which is defined as "the value of the Settlement Amount[.]"  Confirmation Part 3.   The Confirmation defines LBSF as the "Calculation Agent."  *Id.* at Part 7; *see also* Schedule at Section 4.5.

19.     The Schedule to the Master Agreement provides that the "Settlement Amount," or termination payment, shall be calculated based upon "Market Quotation" and "Second Method." *See* Schedule to the Master Agreement at Part 1.6.  Pursuant to the Master Agreement, where Second Method and Market Quotation applies, the Settlement Amount means "the Termination Currency Equivalent of the Market Quotations (whether positive or negative) for each Terminated Transaction . . . for which a Market Quotation is determined."  Master Agreement at Section 12.  Under the Master Agreement, even if the parties have selected the Market Quotation measure, the value of the Settlement Amount must be determined using the "Loss" measure if Market Quotation renders a commercially unreasonable result.  *See* Master Agreement at § 12 (definition of "Settlement Amount").

20.     "Loss" is defined in the Master Agreement, in relevant part, as "an amount that party reasonably determines in good faith to be its total losses and costs (or gain, . . .) in connection with this Agreement or that Terminated Transaction . . . including any loss of

4

bargain, cost of funding or, at the election of such party but without duplication, loss or cost

incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or

related trading position (or any gain resulting from any of them)[.]"  Master Agreement at § 12.

Loss thus attempts to put the parties in the same economic position that they would have been in

but for the termination of the Transaction.  Like the Market Quotation measure, Loss must be

determined "reasonably" and "in good faith."  *Id.*

21.    LBSF properly determined that Loss should apply in connection with the

determination of the Settlement Amount. In accordance with Loss, LBSF determined that the

Settlement Amount was $8,520,758.49, less Unpaid Amounts of $49,350.00, for a total principal

of $8,471,408.49 – the Swap Termination Amount – owed by Granite to LBSF, plus accrued

interest.  *See* LBSF Calculation Statement, dated as of June 13, 2010.

22.    LBSF's Loss calculation is based on the present value of future payments

expected under the Transaction – in other words – the total mark-to-market value of the

Transaction as of the Early Redemption Date, net of any unpaid amounts.  This Loss calculation

method is standard in the derivatives industry and represents the net present value of a party's

expected future payment obligations and receipts over the life of a derivatives transaction.

23.    The Confirmation provides "that absent manifest error, the Calculation Agent's

[here, LBSF's] computations hereunder ***shall be binding for all purposes***."  Confirmation at Part

7 (emphasis added).

24.    Notwithstanding the fact that LBSF performed its obligations under the

Transaction and delivered the proper Calculation Statement to Granite setting forth the Swap

Termination Amount of approximately $8.5 million payable to LBSF by Granite, which

calculation was "binding for all purposes," Granite has not acknowledged that LBSF is owed

money and LBSF has not been paid anything on the Transaction.

25.     Pursuant to the Master Agreement, Default Rate interest has accrued and

continues to accrue on the Swap Termination Amount until Granite makes full payment to

LBSF.

26.     Section 12 of the Master Agreement defines the "Default Rate" as equal to "a rate

per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee

(as certified by it) if it were to fund or of funding the relevant amounts plus 1% per annum."  *Id.*

27.     LBSF has certified that its cost of funds on each date from and after September

15, 2008, was greater than or equal to overnight LIBOR plus 12.5%, compounded daily.

28.     Given its delay in paying the Swap Termination Amount to LBSF, Granite owes

LBSF interest on the Swap Termination Amount, which will continue to accrue until LBSF is

paid in full.

## <u>COUNT I</u>

### (Declaratory Judgment Against Defendants That Granite Breached The Master Agreement)

29.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained

in paragraphs 1-28 of this Complaint as though fully set forth in this cause of action.

30.     The Transaction was entered into pursuant to a valid and enforceable contract –

the Master Agreement – with adequate consideration, and LBSF fully performed its obligations

thereunder.

31.     Following the occurrence of an Early Redemption Date, the Transaction

terminated on October 28, 2008.  Subsequently, given its role as Calculation Agent, LBSF

properly determined the Settlement Amount.  Granite therefore owes a Swap Termination

Amount to LBSF of approximately $8.5 million, plus interest.

32.     The Confirmation provides that LBSF's "computations hereunder shall be binding

for all purposes."  Confirmation at Part 7.

33.     Notwithstanding the fact that LBSF performed its obligations under the

Transaction and delivered the proper Calculation Statement to Granite setting forth the

calculation of the Swap Termination Amount that Granite owed approximately $8.5 million to

LBSF, which calculation was "binding for all purposes," Granite has not acknowledged its

obligation to pay LBSF, and LBSF has not been paid anything on the Transaction.

34.     Accordingly, LBSF is entitled to a declaration from this Court that (i) Granite

owes LBSF $8.5 million plus interest under the Transaction; (ii) Granite breached the Master

Agreement by failing to pay the Swap Termination Amount to LBSF; and (iii) LBSF is entitled

to damages of approximately $8.5 million, an amount representing the proper calculation of the

Swap Termination Amount, plus Default Interest, which continues to accrue until payment in

full.

## COUNT II

### (Declaratory Judgment Against Defendants That
### Granite Is Violating the Automatic Stay)

35.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained

in paragraphs 1-34 of this Complaint as though fully set forth in this cause of action.

36.     Pursuant to section 362(a)(3) of the Bankruptcy Code, the filing of a voluntary

case under chapter 11 of the Bankruptcy Code operates to stay "any act to obtain possession of

property of the estate or of property from the estate or to exercise control over property of the

estate" absent an order of the Bankruptcy Court granting relief from the stay.  11 U.S.C.

§ 362(a)(3).

37.     As fully alleged above, Granite owes approximately $8.5 million, the Swap

Termination Amount, plus interest to LBSF in relation to the terminated Transaction.  The Swap

Termination Amount constitutes property of LBSF's estate.  Granite has not paid the Swap

Termination Amount, which constitutes an "act to obtain possession of property of the estate or

of property from the estate or to exercise control over property of the estate."  11 U.S.C. §

362(a)(3).

38.     Under section 105(a) of the Bankruptcy Code, this Court may "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105(a).  This Court also may award damages for a violation of the automatic stay.

39.     There is an actual controversy between the parties on this issue because Granite

has not paid LBSF and fails to acknowledge that LBSF  is owed the Swap Termination Amount.

40.     Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, LBSF is

entitled to (1) a declaratory judgment that Granite is in violation of section 362 of the

Bankruptcy Code; and (2) pursuant to section 105(a) of the Bankruptcy Code, an award of

monetary damages, in an amount to be determined at trial and including (but not limited to)

LBSF's actual damages, costs, and attorneys' fees and expenses, on account of Granite's

violation of the automatic stay.

## **COUNT III**

### **(Turnover by Defendants of the Properly-Calculated Swap Termination Amount Plus Interest Pursuant to Section 542(b) of the Bankruptcy Code)**

41.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained

in paragraphs 1-40 of this Complaint as though fully set forth in this cause of action.

42.    Section 542(b) of the Bankruptcy Code expressly provides that ". . . an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."  11 U.S.C. § 542(b).

43.    As fully alleged above, following the termination of the Transaction, given its role as Calculation Agent, LBSF determined the Settlement Amount.  That calculation revealed that Granite owed a Swap Termination Amount to LBSF of approximately $8.5 million, plus interest. Granite was obligated to pay that amount.  Indeed, the Confirmation provides that LBSF's "computations hereunder shall be binding for all purposes."  Confirmation at Part 7.

44.    Therefore, the Swap Termination Amount is a matured debt that is due and owing that constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code.

45.    Accordingly, pursuant to sections 542(b) (and 105(a) of the Bankruptcy Code), LBSF is entitled to an order compelling and directing the Trustee to cause Granite to turn over the properly-calculated Swap Termination Amount to LBSF, plus interest, which continues to accrue until payment in full.

## COUNT IV

### (Default Interest Against Defendants)

46.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-45 of this Complaint as though fully set forth in this cause of action.

47.    Granite not only owes LBSF the Swap Termination Amount, in the amount of approximately $8.5 million, but also owes interest thereon pursuant to the Master Agreement.

48.     As fully alleged above, by failing to pay the Swap Termination Amount due to LBSF, Granite must pay accrued interest at the Default Rate on the Swap Termination Amount, which will continue to accrue until payment to LBSF is made in full.

49.     The Master Agreement explicitly provides that the Default Rate is the receiving party's cost of funds "without proof or evidence of any actual cost" and "as certified by it" plus 1%. Master Agreement at § 12. The Master Agreement executed by Granite precludes any challenge to the Default Rate, because LBSF has certified its cost of funds.

50.     LBSF has certified that its cost of funds on each date from and after September 15, 2008, was greater than or equal to overnight LIBOR plus 12.5%, compounded daily. *See* Lehman Cost of Funding Certificates from 2009 & 2010.

51.     Consequently, Granite owes LBSF Default Rate interest on the properly calculated Swap Termination Amount until Granite makes full payment to LBSF.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows:

A.     As to Count I, a declaratory judgment that that (i) Granite owes LBSF $8.5 million plus interest under the Transaction; (ii) Granite breached the Master Agreement by failing to pay the Swap Termination Amount to LBSF; and (iii) LBSF is entitled to damages of approximately $8.5 million, an amount representing the proper calculation of the Swap Termination Amount, plus Default Interest, which continues to accrue until payment in full;

B.     As to Count II, a declaratory judgment that, in withholding the properly calculated Swap Termination Amount payable by Granite to LBSF under the Master Agreement plus interest, Granite has violated the automatic stay pursuant to section 362 of the Bankruptcy Code and that, pursuant to section 105(a) of the Bankruptcy Code, LBSF is entitled to an award of damages in an amount to be determined at trial and including (but not limited to) LBSF's actual

damages, contractual interest, costs, and attorneys' fees and expenses incurred on account of

Granite's violation of the automatic stay;

        C.      As to Count III, pursuant to sections 542(b) (and 105(a) of the Bankruptcy Code),

an order compelling and directing the Trustee to cause Granite to turn over the properly-

calculated Swap Termination Amount to LBSF, plus interest, which continues to accrue until

payment in full;

        D.      Pre-judgment and post-judgment interest; and

        E.      Such other and further relief as the Court deems just and proper.


Dated: New York, New York
       September 15, 2014

                               By: /s/ Richard W. Slack
                                    Richard W. Slack
                                    Jacqueline Marcus
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    *Attorneys for Lehman Brothers Holdings Inc.,*
                                    *in its capacity as Plan Administrator on behalf*
                                    *of Lehman Brothers Special Financing Inc.*