**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
In re:                                              :        Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC. *et al.*    :        Case No. 08-13555 (SCC)
                                                    :
                                                    :        (Jointly Administered)
Debtors.                                            :
--------------------------------------------------------------------X

### DECLARATION OF JOHN KIBLER IN SUPPORT OF RESPONSE OF KBC BANK NV TO DEBTORS' FOUR HUNDRED SEVENTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

JOHN KIBLER, pursuant to 28 U.S.C. §1746, hereby declares as follows:

1.    I am a member of the law firm of Allen & Overy LLP, counsel to KBC Bank NV ("**KBC**"), and I respectfully submit this declaration in support of the *Response of KBC Bank NV to Debtors' Four Hundred Seventy-Seventh Omnibus Objection to Claims (No Liability Claims)* [D.I. 46238] (the "**Response**") dated September 5, 2014.

2.    Attached hereto as <u>Exhibit A</u> is a true and correct copy of a certified English translation of the ruling by the Zurich District Court on September 24, 2013 as referenced in footnote 3 of the Response.

3.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 16, 2014
New York, NY

*/s/*_____
John Kibler

## EXHIBIT A

*English Translation of Swiss Court Ruling*



# CERTIFICATION

The undersigned, Tina Evelyn Dössegger, Certified Translator, B.A., hereby certifies to have produced the English translation of the Court Order attached hereto to the best of her ability, knowledge and belief and confirms that it is a true, complete and correct rendering of the German document also attached.

Zurich, 12 September 2014

Tina Evelyn Dössegger
Certified Translator, B.A.

## Official Certification

Seen for authentication of the foregoing signature, affixed in our presence by

Ms. **Tina Evelyn DÖSSEGGER**, born 16th January 1982, Swiss citizen of Seon AG, according to her information residing at Adolf Frey-Strasse 3, 5000 Aarau, identified by passport.

Zürich, 12th September 2014
BK no. 3183
Fee CHF 20.00

NOTARIAT ENGE-ZÜRICH

Gregor Nigg, Notariatssekretär mbA

# Zurich District Court

Single Judge Court for Debt Collection and Bankruptcy

File-no.: FO130017-L/U

District Court Judge lic. iur. F. Ziltener

Leading Court Clerk lic. iur. Ph. Talbot

## Court Order dated 24 September 2013

in the case

**KBC Bank N.V.,**

Havenlaan 2, 1080 Brussels, Belgium

Plaintiff

represented by Attorney-at-Law PD Dr. iur. Markus Schott and Attorney-at-Law lic. iur. Eric Stupp, Bär & Karrer AG, Brandschenkestr. 90, PO Box 1548, 8027 Zurich

against

**Bankruptcy estate of Lehman Brothers Finance AG in liquidation,**

Stampfenbachstrasse 48, 8006 Zurich

Defendant

represented by liquidator PricewaterhouseCoopers AG, Birchstrasse 160, 8050 Zurich

who is represented by Attorney-at-Law Dr. iur. Markus Guggenbühl and/or Attorney-at-Law Dr. iur. Christian Oetiker, and/or Attorney-at-Law Dr. iur. Jana Essebier,

VISCHER AG, Schützengasse 1, Postfach 1230, 8021 Zurich

regarding **the order of priority of creditors (unsecured claim in the bankruptcy of Lehman Brothers Finance AG in liquidation)**

**Prayers for Relief:**

(act. 1 page 2)

"1.  The collocation decision no. 110 in the bankruptcy of Lehman Brothers Finance AG in liquidation dated 3 April 2013 regarding KBC bank N.V. shall be abolished.

2.  A claim of KBC Bank N.V. against Lehman Brothers Finance AG amounting to CHF 19,872,328.55 shall be recognized in third ranking.

3.  It shall be stated in the schedule of claims that the claim of KBC Bank N.V. against Lehman Brothers Finance AG in liquidation amounting to CHF 19,872,328.55 will be set off completely against a claim of Lehman Brothers Finance AG in liquidation against KBC Investments Cayman Islands V Ltd.

4.  It shall be declared that in the case of a legally binding rejection of the offsetting right and of a new submission of the claim amounting to CHF 19,872,328.55 by KBC Bank N.V. according to art. 251 of the Swiss Law on Debt Collection and Bankruptcy this claim shall be ranked in its full amount in the schedule of claims.

5.  Costs and damages shall be borne by Defendant."

**The court considers:**

**I.**

(Parties)

Plaintiff (a bank) and Lehman Brothers Finance AG (in the following LBF) concluded a framework agreement in 1997, and in the following numerous derivatives transactions resulted from this agreement. According to Plaintiff the bankruptcy of Lehman Brothers Holdings Inc. in the United States in 2008 led to an early termination of the contract between the parties even before Defendant's bankruptcy. According to Plaintiff the termination of the contract leads to the fact that single transactions are replaced by a single obligation (the so-called Early Termination Amount; act. 1 page 4 f.). Plaintiff states having ranked this obligation in the schedule of claims in the amount of CHF 19,872,328.55 . At the same time Plaintiff declares in the statement of claim complete offsetting against a claim of LBF against KBC Investments Cayman Islands V Ltd. (in the following Cayman V; act. 1 page 5).

## II.

### (History of legal proceedings)

On 25 April 2013 (date of the postmark: 22 April 2013) the Zurich District court received a lawsuit containing the prayers for relief (act. 1) cited above. In the court order dated 16 May 2013 a deadline was set to Plaintiff to comment on the amount in dispute and to submit a list of exhibits for the exhibits of the lawsuit not yet listed (now act. 3/13/1-92) (act. 5). Plaintiff filed the submissions dated 3 June 2013 within the deadline as well as the list of exhibits for the requested exhibits of the lawsuit which had inadvertently not been sent together with the documents (act. 9). In the court order dated 7 June 2013 the court requested Defendant to comment on the amount in dispute and on the calculation of the bankruptcy dividend as well as on the status of the settlement between Defendant and Lehman Brothers Holdings Inc. (act 10). Defendant complied with this request within the deadline with the submission dated 24 June 2013 (act. 13). Furthermore, Plaintiff had to pay a deposit in the amount of the anticipated court fees of CHF 130,370 according to court order dated 27 June 2013 (act. 15) referring to art. 98 ZPO [code of civil procedure]. This advance of costs was paid (act. 20) within the extended deadline (act. 19). According to court order dated 9 July 2013 a deadline was set for Plaintiff in order to comment on the legitimate legal interest in the proceedings concerning the presented lawsuit (act. 21). These submissions reached the court within the deadline on 28 August 2013 (act. 26).

## III.

### (Positions of the parties)

1. Defendant states in the submission dated 24 June 2013 that Plaintiff declared the offsetting of all claims in the statement of claim contrary to the submission of the claim. Therefore, the actual interest is not the participation in the distribution in the bankruptcy proceedings of Defendant, and consequently there is no claim amount is to be ranked in the schedule of claims. Plaintiff stated that there was not to be decided about the validity of the offsetting in the actual proceedings regarding the order of priority of creditors but in separate claim proceedings. Only if the denial of the validity of the offsetting is legally binding, Plaintiff could subsequently (once more) file the claim according to art. 251 of the Swiss Law on Debt Collection and Bankruptcy. Therefore, Plaintiff does not have a valid legal interest in judging the lawsuit (act. 13 page 8 f.).

2. Plaintiff opposes Defendant's explanations in the submission dated 27 August 2013 with the argument that there should be a separate interim decision in order to decide about the question of a valid legal interest and there should be ordered a second round of written arguments concerning the question of valid legal interest (act. 26 page 2). Plaintiff points out that the bankruptcy liquidator stated in the decision dated 3 April 2013 that Plaintiff was not entitled to any claims against Defendant based on

the ISDA Master Agreement. On the contrary, according to Defendant's calculations there should be, as a consequence, a claim in favor of Defendant. Subsequently, the liquidator additionally adds that even if there was a claim submitted by Plaintiff an offsetting of this claim with Defendant's claim against Cayman V would be inadmissible and invalid. In case a competent civil court would reject the offsetting right of Plaintiff contrary to its expectations, Plaintiff must be able to participate in the bankruptcy proceedings of LBF as a creditor. Plaintiff added that this would only be possible if Plaintiff's claim was included in Defendant's schedule of claims. There was no possibility for a later submission of further claims after such a civil process as the Federal Court interpreted art. 251 of the Swiss Law on Debt Collection and Bankruptcy restrictively insofar that the subsequently filed claim was a claim submitted for the first time and that the schedule of claims that became legally valid was not to be changed. In addition, even the subsequent possibility of submission could cause irreversible damage of Plaintiff due to the non-participation in partial payments. According to the case law of the Federal Supreme Court the admissibility of a repeated submission of claims is uncertain and therefore legal interest is given at least concerning the prayer for relief 4.

3. The matter proves to be definite and, therefore, no second round of written arguments was ordered and only the statements of the parties concerning the consequences of court fees and attorney's fees were obtained (act. 30 and act. 32).

## IV.

### (Assessment of the court)

1. The court verifies its competence as precondition for proceedings *ex officio* (art. 59 section 2 in conjunction with art. 60 Swiss Civil Code). In the prayer for relief 4, Plaintiff requests the declaration that – in case of a legally valid rejection of the offsetting right and new submissions of the claim against Defendant according to art. 251 of the Swiss Law on Debt Collection and Bankruptcy – the claim has to be included in the schedule of claims in its entirety.

The question whether a subsequent bankruptcy submission can still be accepted, has to be decided by way of appeal proceedings and not within the framework of an action regarding the order of priority of creditors (Decision of the Swiss Federal Supreme Court 108 III 80, 81 et seq.). In this context, there is a special legal regime applicable  in case of the liquidation of banks according to the Swiss Federal Law about Banks and Savings Banks or the Ordinance on Banks' Insolvency of the Swiss Financial Market Supervisory Authority [FINMA] (Bank Law and BIV-FINMA; see below for temporal applicability). According to this regulation, a person whose interests have been damaged by a decision of the liquidator can reporte such occurrence to the FINMA (art. 6 section 1 BIV-

FINMA). FINMA assesses the case, takes the necessary steps and issues, if required, an order (ibidem section 3). Therefore, the court seized is not competent as to the object of the case and functionally in the field of bankruptcy of a bank regarding prayer for relief 4 and therefore, the requested relief does cannot be granted (art. 59 section 2 lit. b Swiss Civil Code). However, this does not exclude that the subject matter plays a preliminary role.

2. Apart from the above, the court has jurisdiction in the present proceedings (art. 34 section 2 bank law, art. 30 section 1 BIV-FINMA, art. 250 section 1 of the Swiss Law on Debt Collection and Bankruptcy, art. 198 lit. e clause 6 Swiss Civil Code in conjunction with §24 lit. b of the Zurich law about the Organization of Courts and Authorities in Civil and Criminal Proceedings).

3. According to art. 59 Swiss Civil Code a lawsuit can only be accepted if there is a legitimate legal interest concerning its judgment. Legitimate interest is given if the enforcement of material right requires protection of rights by the court. Legitimate interest concerning actions for performance and actions for modifications of rights results from the claim submitted. Legitimate interest is a precondition for proceedings and, as such, to be examined ex officio (art. 60 Swiss Civil Code; Spühler/Dolge/Gehri, Swiss Civil Procedural Law, 9th edition Bern, 2010 § 33 N 71 et seq.).

4. The Creditor who wants to set off the existing claim of the common debtor against him with his bankruptcy claim has to declare this already when submitting the claim with the trusteeship in bankruptcy. The declaration of the offsetting takes place if the creditor submits only the offset sum exceeding the offset amount or, if bankruptcy claim and offsetting claims are of equal amounts, if he entirely renounces a submission. Even if the trusteeship in bankruptcy does not want to accept the offsetting it has to include the claim in the submitted amount in the schedule of claims. The trusteeship in bankruptcy does not have the right to rank in the schedule of claims the full amount of the claim in order to express its non-acceptance of the offsetting. Moreover, the admissibility of the offsetting can also not be clarified in a ranking procedure regarding the order of priority of creditors as this process is only for adjustment of passives. As the claim of the creditor is included in the schedule of claims as submitted, it is not affected and the necessary interest for litigation of a positive ranking procedure regarding the order of priority of creditors is missing (Brunner/Reutter, Kollokations- und Widerspruchsklagen nach SchKG, 2nd edition, Bern, 2002, page 67 referring to BGE 71 III 185, as well as Ammon Walther, Grundriss des Schuldbetreibungs- und Konkursrechts, 8th edition, Bern 2008 § 40 N 58 as well as Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2nd edition, Basel 2010, N 64 to art. 250).

5. In the statement of claim Plaintiff puts forward the offsetting of all claims amounting to CHF 19,872,328.55 against Defendant (act. 1 page 2), and it was included in the schedule of claims with CHF 0 . According to the above, a fully set-off claim submission has to be ranked with CHF 0 in the

schedule of claims which was done correctly by the liquidator. As Plaintiff mentioned in the statement of claim (act. 1 N 13) and as mentioned above, the validity and the effectiveness of the offsetting is not the subject of the ranking procedure regarding the order of priority of creditors which aims only to adjusting passives. Moreover, this would be – as Plaintiff admits – the subject matter of a possible claims procedure of Defendant against Plaintiff.

6. Plaintiff's statement that the cases already decided by the Swiss Federal Supreme Court were all different from the current case is not true. The Swiss Federal Supreme Court already declared at an early state and unequivocally the following:

   "If a bankruptcy creditor only submitted a reduced claim because the bankruptcy creditor wants to pay off a debt against the common debtor with the surplus by offsetting, the trusteeship in bankruptcy does not need to care for the asserted part of the claim but only to grant the claim in the submitted reduced amount. If the trusteeship in bankruptcy does not want to grant the offsetting, the only possibility is to recover the counterclaim of the common debtor and to take legal action against the bankruptcy creditor who can oppose the lawsuit by a set-off defence. If the set-off defence is granted and, as a consequence, the action is dismissed this simply results in a reduced bankruptcy claim. **If, however, the set-off defence is dismissed and, as a consequence, the lawsuit is granted, the bankruptcy creditor can, with a belated bankruptcy petition, also still file the surplus of the bankruptcy claim which proves now not to be paid off as bankruptcy creditor's intention to use the surplus for paying-off the debt towards the common debtor was blocked" (BGE 56 III 248).**

   This statement is not questioned by the later jurisdiction of the Swiss Federal Court mentioned by Plaintiff as the material legal force concerning the missing possibility of offsetting achieved in a process of bankruptcy estate against the bankruptcy creditor can easily be regarded as a new fact in the sense of the case law of the Swiss Federal Supreme Court concerning art. 251 of the Swiss Law on Debt Collection and Bankruptcy.

7. Plaintiff argues that non-participation in the provisional distributions would cause them irreversible damage (act. 26 page 5). In this respect, it must be said that Plaintiff wins through the offsetting – should it be confirmed – as their full claim against the bankruptcy estate can be satisfied instead of only a part of it in the amount of the anticipated bankruptcy dividend. It is, however, correct that the Federal Supreme Court held in an even older decision that "on provisional distributions that were made before the filing of his claim, the creditor has no entitlement, even if he is not responsible for the delayed filing" (BGE 38 I 643).

8. The cited decision of the Federal Supreme Court shows, however, how the problem of the complaining party is to be solved – in a different way than intended by the complaining party in the present proceedings. At first, the

decision states that the solution not to have the creditor who filed his claim late participate in the provisional distribution, even though it was not his fault, is based on mandatory practical considerations. This is because the reimbursement of already paid provisional distributions "is prohibited for practical and legal reasons". Accordingly, it is then also indisputable that a possible surplus after the distribution of the assets shall be distributed to the creditor who filed his claim late, before it is distributed to the common debtor (Hierholzer, in: Basel Commentary on the Federal Act on Debt Enforcement and Bankruptcy II, 2nd edition, Basel 2010, N 18 on article 251).

9.  The Swiss Federal Supreme Court refers to article 82 KV according to which, before a provisional distribution is made, a provisional distribution list shall be drawn up and made available at the bankruptcy office for 10 days, notifying the creditors, "with the intention that if no objection is raised within a certain time period, the list enters into legal force" (ibidem, page 647).

Article 82 paragraph 2 of the current Ordinance of the Federal Supreme Court on the Administration of Bankruptcy Offices of 1911 (since 1997 KOV) says: "Partial amounts to be applied to litigious claims or claims with suspensive conditions or uncertain maturity (article 264 paragraph 3 Swiss Debt Enforcement and Bankruptcy Law), to security claims as well as to claims filed late but still before the provisional distribution (article 251 paragraph 3 Swiss Debt Enforcement and Bankruptcy Law), shall be deposited".

This provision would surely apply to the present situation as in contrary to that case, in the present case, the liquidator is already aware of Plaintiff's claim. Should the liquidator not want to acknowledge the offsetting and correspondingly assert the counterclaim by judicial process as described above, the (not set off) claim of Plaintiff would become a conditional claim. However, the liquidator would have to make a deposit for Plaintiff's claim.

10. However, as the present case concerns the bankruptcy of a bank, one cannot blindly refer to the above-mentioned provision of the KOV. Although the provisions of article 197 to 270 Swiss Debt Enforcement and Bankruptcy Law (Swiss Banking Act article 34 paragraphs 1 and 2) generally apply to the effects and proceedings of a bank's bankruptcy, this applies to the liquidation only "subject to the following provisions" (ibidem, paragraph 2). In the sense of such exemption, article 37e Swiss Banking Act provides that, with regard to distribution, the schedule of claims shall not be published. Moreover, FINMA is entitled to issue deviating decrees and orders (article 34 paragraph 3 Swiss Banking Act).

11. FINMA has made use of this entitlement with the Ordinance on the Insolvency of Banks and Securities Dealers (BIO-FINMA). According to the transitional provisions in article 61, the latter also applies to proceedings which are pending before court at the date of entry into force on 1 November 2012, as is the case in the bankruptcy of Lehman Brothers Finance AG in December 2008.

Regarding the distribution, the possibility of provisional distributions is provided for (article 36 paragraph 1, 1st sentence BIO-FINMA). The bankruptcy liquidator shall draw up a provisional distribution list for this purpose and forward it to FINMA for approval (ibidem, 2nd sentence). No payout is made for claims "whose existence or amount has not been definitively established" (ibidem, 4th sentence, letter a).

It cannot reasonably be doubted, that the claim of Plaintiff is subject to this provision, should the bankruptcy liquidator not agree to acknowledge the offsetting. Even though no payout would have to be made in such case, surely a deposit would have to be made, wherewith the situation would equal exactly the one as in article 82 KOV. Article 38 BIO-FINMA additionally states that FINMA shall issue the necessary instructions "for depositing the shares not yet paid out".

12. According to the view of the decreeing court that is nonbinding for reasons of competence, in case the liquidator is not willing to accept the offsetting by Defendant, the liquidator would be considered having retained a respective partial amount (namely: the dividend for a claim of CHF 19,872,328.55) under the title contingent or not definitively established claim. Even if a wrongful approval of the distribution list through FINMA, not taking into account the then litigious claim of Defendant, could, against expectation, not be contested, Plaintiff should not face "irreversible damage", as in such case the bankruptcy liquidator or FINMA could be held liable.

13. The complaining party has thus no interest worthy of protection in the adjudication of their legal requests, wherefore these are not dealt with according to article 59 paragraph 2 lit. a Code of Civil Procedure.


## V.

### (Costs and Compensation)

1. The dispute amount in case of claims regarding the order of priority of creditors generally corresponds to the highest possible attainable profit of a lawsuit, in this case, the amount of the presumed bankruptcy dividend (Hierholzer, in: Basel Commentary on the Federal Act on Debt Enforcement and Bankruptcy II, 2nd edition, Basel 2010, article 250 N 49).

   In the present case, for the calculation of the dispute amount (at the moment) a bankruptcy dividend of 60 percent can be assumed, referring in this respect to the decree of 27 June 2013 (act. 15). Therefore, the dispute amount in this process amounts to CHF 11,923,397.13 (CHF 19,872,328.55 x 60 percent) and the full court fee correspondingly to CHF 130,370.-.

2. In application of § 4 section 1 and section 2 in connection with § 10 section 1 of the fee regulation of the Zurich District Court of 8 September

2010, the fee for the decree is first reduced by one third, then by half, fixed at CHF 43'450.-.

This court fee also appears to comply with the equivalence principle given the compensations of CHF 98,982.- (Plaintiff, act. 31) and CHF 77,344.65 (Defendant, act. 33) claimed by the party representatives.

3. According to the outcome, the costs of these proceedings shall be imposed on Plaintiff as unsuccessful party (article 106 paragraph 1 Code of Civil Procedure).

However, Plaintiff claims that based on article 107 paragraph 1 letter b and f Code of Civil Procedure, a discretionary distribution deviating from the principle of imposing the costs on the unsuccessful party according to article 106 Code of Civil Procedure is justifiable (act. 30 page 2). Since Plaintiff saw itself prompted in good faith to initiate proceedings and other special circumstances exist that make a distribution after the proceedings appear unfair.

After what was said above, Plaintiff cannot be followed in this point, since, as explained, the solution for their problem can be found in the Federal Court's practice and, moreover, the present decision does not take Plaintiff any step further as the competence for the issue in question does not lie with the decreeing court but with the supervisory authorities.

Accordingly, Plaintiff is obliged to pay the significantly reduced court fee and a compensation to Defendant.

4. Plaintiff has not commented on the calculation of the compensation payment to Defendant, so that the decision is to be made based on the files, as warned. The entitlement to attorneys' fees arises "as the claim is answered" according to § 11 of the District Court Ordinance on Attorneys' Fees. Insofar, Defendant's referral to its § 4 section 2 is wrongful if they proceed from the basic fee reducing that by one third. In fact, Defendant was first only asked to comment on the dispute amount according to the decree of 7 June 2013 (act. 10) and used the opportunity to – successfully – question the Plaintiff's legitimate interest in the proceedings (which of course was at Defendant's discretion to do for reasons of procedural economy). Given the responsibility and the complexity of the case (the time investment is not known) justifies a flat compensation of Defendant of CHF 50,000.- to the payment of which Plaintiff is obliged. Lacking a respective request, this amount does not contain any VAT.

### The court decrees:

1. The complaint is not supported and the proceedings are therefore considered as settled.

2. The fee for the decree is fixed at CHF 45,450.-

3. The fee for the decree is imposed on the complaining party and is drawn from their advance payment.

4. Plaintiff is obliged to pay to Defendant a party compensation of CHF 50,000.-.

5. Written notice to the parties.

6. An appeal to this decree may be submitted to the District Court of the Canton of Zurich, Zivilkammer, Postfach 2401, 8021 Zurich, within days of delivery in duplicate and attaching this decree. The appeal shall contain the requests as well as the reasoning therefore. Possible documents shall be attached in duplicate.

Zurich, 24 September 2013

ZURICH DISTRICT COURT

Single Judge Court for Debt Collection and Bankruptcy

The Leading Court Clerk:

[Signature]

lic. iur. Ph. Talbot

# Bezirksgericht Zürich

Einzelgericht für SchKG-Klagen



---

Geschäfts-Nr.: FO130017-L / U

Bezirksrichter lic. iur. F. Ziltener

Leitender Gerichtsschreiber lic. iur. Ph. Talbot

**EINGEGANGEN**

2 5. Sep. 2013

am ...............

## <u>Verfügung vom 24. September 2013</u>

in Sachen

**<u>KBC Bank N.V.</u>**,

Havenlaan 2, 1080 Brüssel, Belgien,

Klägerin

vertreten durch Rechtsanwalt PD Dr. iur. Markus Schott und Rechtsanwalt lic. iur.
Eric Stupp, Bär & Karrer AG, Brandschenkestr. 90, Postfach 1548, 8027 Zürich

gegen

**<u>Konkursmasse der Lehman Brothers Finance AG in Liquidation</u>**,

Stampfenbachstrasse 48, 8006 Zürich,

Beklagte

vertreten durch die Liquidatorin PricewaterhouseCoopers AG,

Birchstrasse 160, 8050 Zürich

diese vertreten durch Rechtsanwalt Dr. iur. Markus Guggenbühl und/oder
Rechtsanwalt Dr. iur. Christian Oetiker, und/oder Rechtsanwältin Dr. iur. Jana
Essebier,

VISCHER AG, Schützengasse 1, Postfach 1230, 8021 Zürich

betreffend **Kollokation (ungesicherte Forderung im Konkurs der Lehman
        Brothers Finance AG in Liquidation)**

- 2 -

## Rechtsbegehren:
(act. 1 S. 2)

" 1.   Der Kollokationsentscheid Nr. 110 im Konkurs der Lehman
Brothers Finance AG in Liquidation vom 3. April 2013 betreffend
KBC Bank N.V. sei aufzuheben.

2.   Es sei eine Forderung von KBC Bank N.V. gegen Lehman
Brothers Finance AG im Betrag von CHF 19'872'328.55 in der
dritten Klasse anzuerkennen.

3.   Es sei im Kollokationsplan davon Vormerk zu nehmen, dass die
Forderung von KBC Bank N.V. gegen die Lehman Brothers Fi-
nance AG in Liquidation im Umfang von CHF 19'872'328.55 voll-
ständig verrechnet wird mit einer Forderung von Lehman Brothers
Finance AG in Liquidation gegen KBC Investments Cayman Is-
lands V Ltd.

4.   Es sei festzustellen, dass im Falle einer rechtskräftigen Ableh-
nung des Verrechnungsrechts und einer neuen Eingabe der For-
derung von CHF 19'872'328.55 durch KBC Bank N.V. gemäss
Art. 251 SchKG diese Forderung in vollem Umfang zu kollozieren
sei.

5.   Unter Kosten- und Entschädigungsfolge zu Lasten der Beklag-
ten."

## Das Gericht zieht in Erwägung:

### I.

(Parteien)

Die klagende Partei (eine Bank) und die Lehman Brothers Finance AG (nachfol-
gen LBF) schlossen 1997 einen Rahmenvertrag und gestützt auf diesen in der
Folge zahlreiche Derivatgeschäfte. Der Konkurs von Lehman Brothers Holdings

- 3 -

Inc. im Jahre 2008 in den Vereinigten Staaten führte gemäss Klägerin noch vor dem Konkurs der Beklagten zur vorzeitigen Vertragsbeendigung zwischen den Parteien. Die Vertragsbeendigung hat gemäss Klägerin zur Folge, dass die einzelnen Transaktionen durch eine einzige Verpflichtung ersetzt werden (dem sog. Early Termination Amount; act. 1 S. 4 f.). Diese Verpflichtung will die Klägerin mit CHF 19'872'328.55 kolloziert haben. Gleichzeitig erklärt sie aber in der Klagebegründung vollständige Verrechnung mit einer Forderung von LBF gegen KBC Investments Cayman Island V Ltd. (nachfolgend Cayman V; act. 1 S. 5).

## II.

### (Prozessgeschichte)

Am 25. April 2013 (Datum des Poststempels: 22. April 2013) ging hierorts Klage mit dem oben wiedergegebenen Rechtsbegehren ein (act. 1). Mit Verfügung vom 16. Mai 2013 wurde der klagenden Partei Frist angesetzt, um sich zur Höhe des Streitwertes zu äussern und ein Beilagenverzeichnis für die noch nicht verzeichneten Klagebeilagen (nunmehr act. 3/13/1-92) einzureichen (act. 5). Die klagende Partei reichte innert Frist ihre Stellungnahme vom 3. Juni 2013, das Beilagenverzeichnis für die fraglichen Klagebeilagen und der Klageschrift versehentlich nicht beigelegte Unterlagen ein (act. 9). Das Gericht forderte mit Verfügung vom 7. Juni 2013 die beklagte Partei auf, zur Höhe des Streitwertes Stellung zu nehmen und sich zur Berechnung der Konkursdividende und zum Zwischenstand des Vergleichs zwischen ihr und der Lehman Brothers Holdings Inc. zu äussern (act. 10). Dieser Aufforderung kam die Beklagte fristgerecht mit Eingabe vom 24. Juni 2013 nach (act. 13). Der klagenden Partei wurde darauf in Anwendung von Art. 98 ZPO mit Verfügung vom 27. Juni 2013 (act. 15) ein Vorschuss im Umfang der mutmasslichen Gerichtskosten von CHF 130'370.– auferlegt. Innert erstreckter Frist (act. 19) wurde dieser Kostenvorschuss geleistet (act. 20). Mit Verfügung vom 9. Juli 2013 wurde der klagenden Partei Frist angesetzt, um sich zu ihrem Rechtsschutzinteresse an der vorliegenden Klage zu äussern (act. 21). Diese Stellungnahme ging fristgerecht am 28. August 2013 beim Gericht ein (act. 26).

- 4 -

### III.

### (Parteistandpunkte)

**1.** Die beklagte Partei macht in ihrer Eingabe vom 24. Juni 2013 geltend, dass die klagende Partei im Gegensatz zur Forderungsanmeldung in der Klagebegründung die Verrechnung der gesamten Forderung erkläre. Aus diesem Grund richte sich ihr gegenwärtiges Interesse nicht auf die Teilnahme an der Verteilung im Konkursverfahren der Beklagten, so dass kein Forderungsbetrag zu kollozieren sei. Die klagende Partei habe selbst geltend gemacht, dass über die Gültigkeit der Verrechnung nicht im vorliegenden Kollokationsverfahren zu entscheiden sei, sondern in einem separaten Forderungsprozess. Nur bei rechtskräftiger Verneinung der Gültigkeit der Verrechnung könne die Klägerin die Forderung nach Art. 251 SchKG nachträglich (nochmals) eingeben. Somit habe die klagende Partei kein schutzwürdiges Interesse an der Beurteilung der Klage (act. 13 S. 8 f.).

**2.** Dem widersetzt sich die Klägerin in ihrer Stellungnahme vom 27. August 2013 mit den Anträgen, es sei über die Frage des Rechtsschutzinteresses in einem selbständigen Zwischenentscheid zu entscheiden und ein zweiter Schriftenwechsel zur Frage des Rechtsschutzinteresses anzuordnen (act. 26 S. 2). Sie macht geltend, die Konkursliquidatorin habe in ihrem Entscheid vom 3. April 2013 festgehalten, der Klägerin stehe gestützt auf das ISDA Master Agreement keine Forderung gegenüber der Beklagten zu. Im Gegenteil resultiere gemäss ihren eigenen Berechnungen eine Forderung zugunsten der Beklagten. Sodann halte die Liquidatorin zusätzlich fest, auch wenn die von der Klägerin geltend gemachte Forderung bestünde, wäre eine Verrechnung dieser Forderung mit der Forderung der Beklagten gegen Cayman V unzulässig und unwirksam. Für den Fall, dass ein zuständiges Zivilgericht das Verrechnungsrecht der Klägerin wider Erwarten verneinen sollte, müsse die Klägerin als Gläubigerin im Konkursverfahren von LBF partizipieren können. Dies sei nur möglich, wenn die Forderung der Klägerin im Kollokationsplan der Beklagten aufgenommen sei. Die Möglichkeit der nachträglichen Forderungseingabe nach einem solchen Zivilprozess sei nicht gegeben, weil das Bundesgericht Art. 251 SchKG einschränkend dahingehend ausgelegt habe, dass es sich bei der nachträglich angemeldeten Forderung um eine erstmals gel-

- 5 -

tend gemachte Forderung handle und nicht etwa der rechtskräftig gewordene Kol-
lokationsplan abgeändert werden wolle. Dazu komme, dass selbst bei nachträgli-
cher Anmeldemöglichkeit durch die Nichtteilnahme an Abschlagszahlungen der
Klägerin ein irreversibler Schaden entstehen könne. Die Zulässigkeit einer erneu-
ten Forderungseingabe sei nach der bundesgerichtlichen Rechtsprechung unge-
wiss und daher zumindest bezüglich Rechtsbegehren Ziffer 4 das Rechtsschutzin-
teresse gegeben.

**3.** Die Sache erweist sich als spruchreif, weshalb von einem zweiten Schriften-
wechsel abgesehen wurde und lediglich die Stellungnahmen der Parteien zu den
Kosten- und Entschädigungsfolgen eingeholt wurden (act. 30 und act. 32).

IV.

(Gerichtliche Beurteilung)

**1.** Das Gericht überprüft seine Zuständigkeit als Prozessvoraussetzung von Am-
tes wegen (Art. 59 Abs. 2 i.V.m. Art. 60 ZPO). Mit dem Rechtsbegehren Ziffer 4
beantragt die klagende Partei die Feststellung, dass – im Falle einer rechtskräfti-
gen Ablehnung des Verrechnungsrechts und einer neuen Eingabe der Forderung
gegen die beklagte Partei gemäss Art. 251 SchKG – die Forderung im vollen Um-
fang zu kollozieren sei.

Ob eine verspätete Konkurseingabe noch zugelassen werden kann, ist im Be-
schwerdeverfahren und nicht im Rahmen einer Kollokationsklage zu prüfen
(BGE 108 III 80, 81 ff.). Für die Bankenliquidation gilt diesbezüglich die Spezial-
gesetzliche Regelung des Bundesgesetzes über die Banken und Sparkassen
bzw. der Bankeninsolvenzverordnung der Eidgenössischen Finanzmarktaufsicht
(Bankengesetz und BIV-FINMA; siehe zur zeitlichen Geltung unten). Gemäss die-
ser Verordnung kann, wer durch einen Entscheid der Liquidatorin in seinen Inte-
ressen verletzt wird, diesen Sachverhalt bei der FINMA anzeigen (Art. 6 Abs. 1
BIV-FINMA). Die FINMA beurteilt den Sachverhalt, trifft die notwendigen Mass-
nahmen und erlässt, falls erforderlich, eine Verfügung (Ebenda Abs. 3). Das an-
gerufene Gericht ist daher auch im Bereich des Bankenkonkurses bezüglich

- 6 -

Rechtsbegehren Ziffer 4 sachlich und funktional unzuständig, weshalb auf das Begehren nicht einzutreten ist (Art. 59 Abs. 2 lit. b ZPO). Dies schliesst allerdings nicht aus, dass das Thema vorfrageweise eine Rolle spielt.

**2.** Die örtliche, sachliche und funktionale Zuständigkeit ist im Übrigen im vorliegenden Prozess gegeben (Art. 34 Abs. 2 Bankengesetz, Art. 30 Abs. 1 BIV-FINMA, Art. 250 Abs. 1 SchKG, Art. 198 lit. e Ziff. 6 ZPO i.V.m. § 24 lit. b GOG).

**3.** Gemäss Art. 59 ZPO ist auf eine Klage nur einzutreten, soweit ein rechtliches Interesse an ihrer Beurteilung besteht. Ein Rechtsschutzinteresse ist vorhanden, wenn die Durchsetzung des materiellen Rechts gerichtlichen Rechtsschutz nötig macht. Bei Leistungs- und Gestaltungsklagen ergibt sich das Rechtsschutzinteresse aus dem geltend gemachten Anspruch. Das Rechtsschutzinteresse ist Prozessvoraussetzung und als solche von Amtes wegen zu prüfen (Art. 60 ZPO; Spühler/Dolge/Gehri, Schweizerisches Zivilprozessrecht, 9. Aufl., Bern 2010, § 33 N 71 ff.).

**4.** Der Gläubiger, der die gegen ihn bestehende Forderung des Gemeinschuldners mit seiner Konkursforderung verrechnen will, hat dies bereits mit der Forderungsanmeldung bei der Konkursverwaltung zu erklären. Die Erklärung der Verrechnung erfolgt, indem der Gläubiger nur den über die Verrechnungssumme hinausgehenden Verrechnungsbetrag kolloziert bzw. bei gleicher Höhe von Konkurs- und Verrechnungsforderung auf eine Kollokation gänzlich verzichtet. Auch wenn die Konkursverwaltung die Verrechnung nicht akzeptieren will, hat sie die Forderung in angemeldeter Höhe in den Kollokationsplan aufzunehmen. Ihr ist es nicht erlaubt, den vollen Forderungsbetrag zu kollozieren, um sich gegen die Verrechnung auszusprechen. Die Zulässigkeit der Verrechnung kann auch nicht in einem folgenden positiven Kollokationsprozess geklärt werden, da dieser ausschliesslich der Bereinigung der Passiven dient. Da die Forderung der Gläubigerin so in den Kollokationsplan aufgenommen wird, wie sie angemeldet wurde, ist diese nicht beschwert, und es fehlt ihr daher das notwendige Interesse zur Führung eines positiven Kollokationsprozesses (Brunner/Reutter, Kollokations- und Widerspruchsklagen nach SchKG, 2. Auflage, Bern, 2002, S. 67 unter Verweis auf BGE 71 III 185, ebenso Ammon/Walther, Grundriss des Schuldbetreibungs- und

- 7 -

Konkursrechts, 8. Aufl., Bern 2008, § 40 N 58 sowie Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, N 64 zu Art. 250).

**5.** Die klagende Partei macht in ihrer Klageschrift die Verrechnung im Umfang ihrer gesamten Forderung, nämlich CHF 19'872'328.55, gegen die beklagte Partei geltend (act. 1 S. 2) und wurde im Kollokationsplan mit CHF 0.– aufgenommen. Nach dem oben Erwähnten muss eine voll verrechnete Forderungseingabe mit CHF 0.– kolloziert werden, womit die Liquidatorin richtig gehandelt hat. Wie die klagende Partei in ihrer Klageschrift selbst bemerkt (act. 1 N 13) und oben ausgeführt wurde, ist die Gültigkeit und Wirksamkeit der Verrechnung nicht Thema des Kollokationsprozesses, der alleine die Bereinigung der Passiven bezweckt. Vielmehr wäre dies – wie die Klägerin selbst einräumt – Gegenstand eines allfälligen Forderungsprozesses der beklagten gegen die klagende Partei.

**6.** Unzutreffend ist, wenn die Klägerin anführt, die vom Bundesgericht bisher entschiedenen Fälle seien alle anders gelagert gewesen, als der vorliegende. Das Bundesgericht erklärte schon früh unmissverständlich:

"Hat ein Konkursgläubiger deswegen nur eine reduzierte Forderung angemeldet, weil er mit dem Mehrbetrag eine Schuld gegenüber dem Gemeinschuldner durch Verrechnung zu tilgen gedenkt, so hat sich die Konkursverwaltung um den angeblich durch Verrechnung getilgten und daher nicht angemeldeten Teil der Forderung nicht zu kümmern, sondern darauf zu beschränken, die Forderung im angemeldeten reduzierten Betrage zuzulassen. Will sie die Verrechnung nicht gelten lassen, so bleibt ihr nichts anders übrig, als die Gegenforderung des Gemeinschuldners einzutreiben und zu diesem Zwecke gegen den Konkursgläubiger Klage zu erheben, welcher dieser durch die Einrede der Verrechnung entgegen treten kann. Wird die Verrechnungseinrede gutgeheissen und also die Klage abgewiesen, so hat es einfach bei der erfolgten Zulassung der reduzierten Konkursforderung sein Bewenden. **Wird dagegen die Verrechnungseinrede abgewiesen und also die Klage zugesprochen, so ist es dem beklagten Konkursgläubiger anheimgestellt, mit einer nachträglichen Konkurseingabe auch noch den Mehrbetrag seiner Konkursforderung anzumelden, der sich nun nicht als getilgt erweist, weil sein Vorhaben, ihn zur Tilgung seiner Schuld gegenüber dem Gemeinschuldner zu benützen, vereitelt worden ist"** (BGE 56 III 248).

Diese Aussage ist durch die von der Klägerin angeführte spätere Rechtsprechung des Bundesgerichts nicht in Frage gestellt, denn die in einem Prozess der Konkursmasse gegen den Konkursgläubiger erzielte materielle Rechtskraft über die

- 8 -

fehlende Verrechenbarkeit ist ohne weiteres als neue Tatsache im Sinne der bundesgerichtlichen Rechtsprechung zu Art. 251 SchKG zu sehen.

**7.** Die Klägerin führt sodann an, ihr könne durch die Nichtteilnahme an den Abschlagszahlungen ein irreversibler Schaden entstehen (act. 26 S. 5). Dazu ist zunächst zu sagen, dass die Klägerin durch die Verrechnung – sollte sie denn Bestand haben – gewinnt, indem sie ihre volle Forderung gegenüber der Konkursmasse zur Befriedigung bringen kann, statt nur einen Teil davon im Umfang der in Aussicht stehenden Konkursdividende. Zutreffend ist allerdings, dass das Bundesgericht in einem noch älteren Entscheid festhielt, "auf Abschlagszahlungen, die vor seiner Anmeldung stattgefunden haben, hat ein Gläubiger auch dann keinen Anspruch, wenn er die Verspätung der Konkurseingabe nicht verschuldet hat" (BGE 38 I 643).

**8.** Der angeführte Bundesgerichtsentscheid zeigt nun aber gerade auf, wie das Problem der Klägerschaft – auf anderem Weg als von dieser mit dem vorliegenden Prozess beabsichtigt – zu lösen ist. Zunächst ist darin festgehalten, dass die Lösung, auch den unverschuldet verspätet anmeldenden Gläubiger nicht mehr an Abschlagszahlungen teilhaben zu lassen, auf zwingenden praktischen Erwägungen beruht. Weil nämlich die Rückforderung aus bereits getätigten Abschlagszahlungen sich "aus praktischen und juristischen Gründen verbietet". Entsprechend ist denn auch unbestritten, dass ein allfälliger Überschuss nach Verteilung des Massavermögens dem verspätet anmeldenden Gläubiger noch vor dem Gemeinschuldner zukommen muss (Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, N 18 zu Art. 251).

**9.** Das Bundesgericht verweist sodann auf Art. 82 KV, wonach vor der Vornahme einer Abschlagszahlung eine provisorische Verteilungsliste aufzustellen und unter Mitteilung an die Gläubiger während 10 Tagen beim Konkursamt aufzulegen ist "in der Meinung, dass wenn dagegen nicht innert Frist Beschwerde erhoben werde, die Liste in Rechtskraft erwachse" (Ebenda, S. 647).

Art. 82 Abs. 2 der heutigen Verordnung des Bundesgerichts über die Geschäftsführung der Konkursämter von 1911 (seit 1997 KOV) lautet: "Teilbeträge, die auf

- 9 -

streitige Forderungen, auf Forderungen unter aufschiebender Bedingung oder mit ungewisser Verfallzeit (Art. 264 Abs. 3 SchKG), auf Sicherheitsansprüche sowie auf solche Forderungen entfallen, welche verspätet, jedoch noch vor der Ab- schlagsverteilung angemeldet wurden (Art. 251 Abs. 3 SchKG), sind zurückzube- halten".

Von dieser Bestimmung wäre wohl die vorliegende Situation erfasst, denn im Ge- gensatz zu jenem Fall ist hier der Konkursliquidatorin die Forderung der Klägerin bereits bekannt. Sollte die Liquidatorin die Verrechnung nicht anerkennen wollen und die Gegenforderung entsprechend wie oben geschildert prozessual geltend machen wollen, so würde die (unverrechnete) Forderung der Klägerin zu einer bedingten. Damit wären aber von der Liquidatorin auch Rückstellungen für die Forderung der Klägerin zu machen.

**10.** Da es sich vorliegend um einen Bankenkonkurs handelt, kann aber nicht un- besehen auf die angeführte Bestimmung der KOV verwiesen werden. Zwar gelten für Wirkungen und Ablauf des Bankenkonkurses grundsätzlich die Bestimmungen von Art. 197 bis 270 SchKG (Bankengesetz Art. 34 Abs. 1 und 2). Doch gilt dies bei der Liquidation lediglich unter "Vorbehalt der nachfolgenden Bestimmungen" (Ebenda Abs. 2). Im Sinne einer solche Ausnahme bestimmt Art. 37e Bankenge- setz bezüglich der Verteilung, dass die Verteilungsliste nicht aufgelegt wird. Aus- serdem kann die FINMA abweichende Verfügungen und Anordnungen treffen (Art. 34 Abs. 3 Bankengesetz).

**11.** Von dieser Ermächtigung hat die FINMA mit der Verordnung über die Insol- venz von Banken und Effektenhändlern Gebrauch gemacht (BIV-FINMA). Sie gilt gemäss der Übergangsbestimmung Art. 61 auch für Verfahren, die bei Inkrafttre- ten am 1. November 2012 – wie der Konkurs der Lehman Brothers Finance AG im Dezember 2008 – rechtshängig sind.

Bezüglich Verteilung ist die Möglichkeit von Abschlagszahlungen vorgesehen (Art. 36 Abs. 1, 1. Satz BIV-FINMA). Die Konkursliquidatorin erstellt hierfür eine provisorische Verteilungsliste und unterbreitet diese der FINMA zur Genehmigung

- 10 -

(Ebenda, 2. Satz). Keine Auszahlung erfolgt für Forderungen, "deren Bestand und Höhe nicht abschliessend feststeht" (Ebenda, 4. Abs. Bst. a).

Es kann keinem vernünftigen Zweifel unterliegen, dass die Forderung der Klägerin, so die Konkursliquidatorin die Verrechnung nicht anerkennen will, dieser Bestimmung unterliegt. Es hat damit zwar keine Auszahlung, aber sehr wohl eine Rückstellung zu erfolgen, womit sich diesbezüglich die genau gleiche Situation wie bei Art. 82 KOV ergibt. Denn Art. 38 BIV-FINMA hält zusätzlich fest, dass die FINMA Anordnungen über "die Hinterlegung der nicht ausbezahlten Anteile" zu treffen hat.

**12.** Nach der – allerdings wie aufgezeigt aus Zuständigkeitsgründen unverbindlichen – Meinung des verfügenden Gerichts hätte die Konkursverwaltung somit, so sie die Verrechnung der Klägerin nicht akzeptieren will, einen entsprechenden Teilbetrag (konkret: die Dividende für eine Forderung von CHF 19'872'328.55) unter dem Titel bedingte bzw. nicht abschliessend feststehende Forderung zurückzubehalten. Selbst wenn eine fälschliche Genehmigung einer Verteilungsliste ohne die Berücksichtigung der dannzumal strittigen Forderung der Klägerin durch die FINMA wider Erwarten nicht angefochten werden könnte, dürfte der Klägerin kein "irreversibler Schaden" erwachsen, weil in diesem Fall wohl die Konkursliquidatorin oder die FINMA zur Verantwortung gezogen werden könnte.

**13.** Die klagende Partei hat somit kein schützenswertes Interesse an der Beurteilung ihrer Rechtsbegehren, weshalb darauf gemäss Art. 59 Abs. 2 lit. a ZPO nicht einzutreten ist.

## V.

### (Kosten- und Entschädigungsfolgen)

**1.** Der Streitwert bei Kollokationsklagen entspricht grundsätzlich dem mit der Klage höchstens erzielbaren Prozessgewinn, also dem Betrag der mutmasslichen Konkursdividende (Hierholzer, in: Basler Kommentar, Bundesgesetz über Schuldbetreibung und Konkurs II, 2. Aufl., Basel 2010, Art. 250 N 49).

- 11 -

Vorliegend ist für die Streitwertberechnung (zur Zeit) von einer Konkursdividende von 60% auszugehen, wobei diesbezüglich auf die Verfügung vom 27. Juni 2013 verwiesen werden kann (act. 15). Demzufolge beträgt der Streitwert in diesem Prozess CHF 11'923'397.13 (CHF 19'872'328.55 x 60%) und die volle Gerichtsgebühr dementsprechend CHF 130'370.–.

**2.** In Anwendung von § 4 Abs. 1 und Abs. 2 in Verbindung mit § 10 Abs. 1 der Gebührenverordnung des Obergerichtes vom 8. September 2010 ist die zunächst um einen Drittel und dann nochmals um die Hälfte reduzierte Entscheidgebühr auf CHF 43'450.– festzusetzen.

Diese Gerichtsgebühr erweist sich angesichts der von den Parteivertretern geforderten Entschädigungen von CHF 98'982.– (Klägerin, act. 31) bzw. CHF 77'344.65 (Beklagte, act. 33) auch als dem Äquivalenzprinzip entsprechend.

**3.** Ausgangsgemäss wären die Kosten dieses Verfahrens der klagenden Partei als unterliegende aufzuerlegen (Art. 106 Abs. 1 ZPO).

Die Klägerin macht aber geltend, es rechtfertige sich gestützt auf Art. 107 Abs. 1 Bst. b und f ZPO eine vom Grundsatz der Auflage an die unterliegende Partei des Art. 106 ZPO abweichende Verteilung nach Ermessen (act. 30 S. 2). Denn die Klägerin habe sich in guten Treuen zur Prozessführung veranlasst gesehen und es lägen andere besondere Umstände vor, die eine Verteilung nach dem Ausgang des Verfahrens als unbillig erscheinen liessen.

Nach dem weiter oben Gesagten kann der Klägerin in diesem Punkt nicht gefolgt werden, konnte doch wie dargetan die Lösung für ihr Problem der bundesgerichtlichen Praxis entnommen werden und bringt sie ausserdem der vorliegende Entscheid nicht weiter, weil die Zuständigkeit für die angesprochene Frage eben nicht beim verfügenden Gericht, sondern bei den Aufsichtsbehörden gegeben ist.

Entsprechend ist die Klägerin zur Bezahlung der massgeblich reduzierten Gerichtsgebühr und zur Bezahlung einer Entschädigung an die Beklagte zu verpflichten.

- 12 -

**4.** Zur Bemessung der Prozessentschädigung an die Beklagte hat sich die Kläge-
rin nicht geäussert, so dass androhungsgemäss auf Grund der Akten zu ent-
scheiden ist. Der Anspruch auf die Anwaltsgebühr entsteht gemäss § 11 der
obergerichtlichen Verordnung über die Anwaltsgebühren "mit der Beantwortung
der Klage". Insofern beruft sich die Beklagte zu Unrecht auf deren § 4 Abs. 2,
wenn sie von der Grundgebühr ausgehend diese um einen Drittel reduziert. Denn
sie hatte sich gemäss Verfügung vom 7. Juni 2013 (act. 10) zunächst lediglich
zum Streitwert zu äussern und benutzte diese Gelegenheit (was ihr natürlich nur
schon aus prozessökonomischen Gründen zumindest freistand), das Rechts-
schutzinteresse der Klägerin – erfolgreich – in Frage zu stellen. Angesichts der
Verantwortung und der Schwierigkeit des Falles (der Zeitaufwand ist nicht be-
kannt) rechtfertigt sich vorliegend eine pauschale Entschädigung der Beklagten
mit CHF 50'000.–, zu deren Bezahlung die Klägerin zu verpflichten ist. Mangels
Antrag enthält dieser Betrag keine MWST.

### Das Gericht verfügt:

1.    Auf die Klage wird nicht eingetreten und das Verfahren als dadurch erledigt
   abgeschrieben.

2.    Die Entscheidgebühr wird festgesetzt auf CHF 43'450.–.

3.    Die Entscheidgebühr wird der klagenden Partei auferlegt und aus dem von
   ihr geleisteten Vorschuss bezogen.

4.    Die Klägerin wird verpflichtet, der beklagten Partei eine Parteientschädigung
   von CHF 50'000.– zu bezahlen.

5.    Schriftliche Mitteilung an die Parteien.

6.    Eine Berufung gegen diesen Entscheid kann innert 30 Tagen von der Zustel-
   lung an im Doppel und unter Beilage dieses Entscheids beim Obergericht
   des Kantons Zürich, Zivilkammer, Postfach 2401, 8021 Zürich, erklärt wer-

- 13 -

den. In der Berufungsschrift sind die Anträge zu stellen und zu begründen. Allfällige Urkunden sind mit zweifachem Verzeichnis beizulegen.

Zürich, 24. September 2013

BEZIRKSGERICHT ZÜRICH
Einzelgericht für SchKG-Klagen

Der Leitende Gerichtsschreiber:

lic. iur. Ph. Talbot