WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David J. Lender
Peter D. Isakoff
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------x

## NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR APPROVAL OF A SETTLEMENT AGREEMENT REGARDING CLAIMS OF CANARY WHARF

**PLEASE TAKE NOTICE** that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the

Modified Third Amended Join (the "Plan"), for approval of a settlement agreement (the

"Settlement Agreement") among the Plan Administrator, on behalf of LBHI, and (i) Heron

Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited, (ii) Canary Wharf Management

Ltd., and (iii) Canary Wharf Contractors Ltd., all as more fully described in the Motion, will be

held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom

621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, New York, New York 10004, on **October 7, 2014 at 10:00 a.m. (Eastern Time)**, (the

"Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and the Local Rules of the Bankruptcy Court, shall set forth the name of

the objecting party, the basis for the objection and the specific grounds thereof, shall be filed

with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which

can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing

system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with a hard copy delivered directly to Chambers), in accordance with General Order M-

182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with

General Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One

Bowling Green, New York, New York 10004, Courtroom 621; (ii) attorneys for LBHI, Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: David J. Lender,

Esq., Peter D. Isakoff, Esq. and Robert J. Lemons, Esq.); (iii) the Office of the United States

Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York,

New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B.

Schwartz, Esq.); and (iv) attorneys for Canary Wharf, Sullivan & Cromwell LLP, 125 Broad

Street, New York, New York 10004 (Attn: David B. Tulchin, Esq., Marc De Leeuw, Esq., and

John J. Jerome, Esq.), so as to be so filed and received by no later than **September 30, 2014 at

4:00 p.m. (Eastern Time)** (the "Objection Deadline").

WEIL:\95097903\3\58399.0011

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the Plan Administrator may, on or after the Objection Deadline, submit to the Bankruptcy Court the Settlement Agreement, which may be approved with no further notice or opportunity to be heard offered to any party.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: September 22, 2014
   New York, New York

        /s/ Robert J. Lemons
        David J. Lender
        Peter D. Isakoff
        Robert J. Lemons
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Lehman Brothers Holdings Inc.
        and Certain of Its Affiliates, as Plan Administrator

WEIL:\95097903\3\58399.0011

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David J. Lender
Peter D. Isakoff
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | **:** | **Chapter 11 Case No.** |
|  | **:** |  |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | **:** | **08-13555 (SCC)** |
|  | **:** |  |
| **Debtors.** | **:** | **(Jointly Administered)** |

-------------------------------------------------------------------x

## MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR APPROVAL OF SETTLEMENT AGREEMENT REGARDING CLAIMS OF CANARY WHARF

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced

chapter 11 cases (collectively, the "Chapter 11 Entities"), files this Motion and respectfully

represents:

### Relief Requested

1.      By this Motion, the Plan Administrator seeks approval of a settlement

agreement (the "Settlement Agreement")  on behalf of LBHI with (i) Heron Quays (HQ2) T1

Limited and Heron Quays (HQ2) T2 Limited (collectively, the "Landlord"), (ii) Canary Wharf

Management, Ltd. (the "Management Company"), and (iii) Canary Wharf Contractors Ltd. (the

1

"Contractor") (parties (i) through (iii) collectively with LBHI, the "Parties").[1]  As set forth more

fully below, the Plan Administrator's entry into the Settlement Agreement constitutes a sound

exercise of business judgment, is in the best interests of LBHI and its creditors and easily meets

the standards that courts apply to settlement approvals under Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  Accordingly, the Settlement Agreement

should be approved.

## Jurisdiction

2.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

A.        **General Background**

3.        Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule

1015(b).

4.        On December 6, 2011, the Court entered an order confirming the Plan

(ECF No. 23023).  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan

Administrator is authorized to, among other things, implement the provisions of the Plan on

behalf of LBHI and its controlled affiliates and control the claims reconciliation process.

---

[1] A copy of the Settlement Agreement is attached hereto as Exhibit A.

5.      On March 31, 2010, the Court entered an order establishing certain claims settlement procedures (the "First Settlement Procedures Order") (ECF No. 7936).  On July 18, 2012, the Court entered an order modifying the First Settlement Procedures Order and authorizing the Plan Administrator to, among other things, settle certain claims without court approval if the allowed amount of the settled claim is less than or equal to $200 million (ECF No. 29505) (the "Second Settlement Procedures Order").  The Settlement Agreement provides for the allowance of Canary Wharf's claims in excess of $200 million.  Accordingly, the Plan Administrator must obtain the Court's approval of the Settlement Agreement.

**B.      The Canary Wharf Claims**

6.      On September 14, 2009, the Landlord and the Management Company (together "Canary Wharf") filed claim numbers 14826 and 14824 (the "Canary Wharf Claims"), respectively, against LBHI for LBHI's alleged obligations under a lease (the "Lease") between Lehman Brothers Limited ("LBL"), as tenant, the Landlord, as landlord, and LBHI, as surety, for a building located at 25 Bank Street, London, England (the "Premises").  The Lease was governed by English law.  The total asserted amounts of the Landlord's and Management Company's claims were $4,280,970,000 and $195,550,000, respectively (the "Canary Wharf Claims").

7.      LBL is a foreign affiliate of LBHI that commenced an administration proceeding in the UK on September 15, 2008.  In March 2010, LBL vacated the Premises and stopped paying rent and other amounts due under the Lease.  On December 10, 2010, the Landlord forfeited, *i.e.*, terminated, the Lease and thereafter re-let the Premises to J.P. Morgan Chase Bank, National Association ("J.P. Morgan") on December 20, 2010.  The rent that J.P.

3

Morgan agreed to pay under the new lease is substantially less than the rent LBL agreed to pay under the Lease.

8. On September 14, 2009, the Contractor filed claim number 14825 against LBHI for $832,995 (together with the Canary Wharf Claims, the "Claims"). The Contractor's claim is based on separate agreements pursuant to which the Contractor agreed to procure the performance of trade contractors for various construction projects for the Premises.

9. On August 22, 2011, the Parties entered into a stipulation (so ordered by the Bankruptcy Court on September 1, 2011) (the "2011 Stipulation") pursuant to which the Claims were reduced to the total maximum amount of $780,000,000, which represented all amounts that would have become due under the Lease less amounts to be paid by J.P. Morgan. In the 2011 Stipulation, LBHI agreed that it would reserve against payment of such maximum allowable amounts, until such time as the Claims were settled or finally adjudicated, an amount equal to the sum that would have been distributed in respect of such maximum allowed amount had the same been allowed as Class 3 claims under the Plan. Pursuant to that obligation, LBHI has to date reserved a total of $210,010,179.60 on account of the Claims (the "Existing Reserve").

## C.    The Litigation

10. On August 15, 2012, the Plan Administrator filed an objection to disallow and expunge the Canary Wharf Claims (the "Objection"). On October 12, 2012, Canary Wharf filed a response to the Objection (the "Response"). On January 10, 2013, the Plan Administrator filed a reply to the Response. Both LBHI and Canary Wharf submitted opinions by English law experts in support of their positions.

4

11. By agreement, the Court ordered a bifurcation of the proceedings, with liability issues to be resolved before commencing proceedings on damages. In September 2013, LBHI and Canary Wharf completed fact and expert discovery on issues of liability with respect to the Canary Wharf Claims. Per the Court's order, no discovery has been taken on damages.

12. On March 14, 2014, Canary Wharf moved for summary judgment on the issue of whether LBHI is liable to Canary Wharf under Paragraph 1 of the surety agreement contained in Schedule 4 to the Lease. (ECF No. 43540). On May 22, 2014, LBHI cross-moved for summary judgment on the same issue. (ECF No. 44406). In connection with the summary judgment briefing, the Canary Wharf Claimants submitted two new reports from its English law expert and LBHI submitted three new reports from its English law expert. The cross-motions are pending before the Court and have not been ruled upon.

13. As described in further detail in the pleadings filed with the Court, the disputes between the Parties are highly complex and involve matters of English law, which has necessitated voluminous expert reports. The disputed issues include, but are not limited to, the effect of the forfeiture of the Lease under English law, the extent of LBHI's contractual obligations under the Schedule 4 of the Lease, the applicability of section 502(b)(6) of the Bankruptcy Code to Canary Wharf's claims, and the calculation of Canary Wharf's damages under that cap. If the Court is forced to adjudicate the Plan Administrator's objections to the Claims, the Court would have to rule on the complex English law issues.

14. The Parties have participated in two mediations to try to consensually resolve their disputes. The first mediation session was held on January 9, 2014, which concluded without a settlement. The Parties then participated in a two-day mediation session on September

5

11th and 12th, 2014.  This time, with the assistance of the mediator, the Parties were able to

reach a settlement, which is embodied in the Settlement Agreement.

## D.    The Settlement Agreement

15.    The Settlement Agreement resolves all disputes between the Parties

relating to the Claims.  Specifically, the Settlement Agreement provides:[2]

- The claims of the Management Company and the Landlord will be allowed as Third-Party Guarantee Claims against LBHI in LBHI Class 9A of the Plan in the amounts of $5,000,000 and $345,000,000, respectively (the "Allowed Claims").

- The claim of the Contractor will be disallowed and expunged.

- On or before five business days after Court approval of the Settlement Agreement, LBHI will remit to Canary Wharf all catch-up distributions payable on account of the Allowed Claims pursuant to section 8.4 of the Plan.  Thereafter, LBHI will continue to make distributions in respect of the Allowed Claims in accordance with the Plan.

- LBHI's reserve obligations under the 2011 Stipulation were immediately terminated, and LBHI may release the Existing Reserve.  If, however, the Settlement Agreement is not approved by the Court within 30 days of execution, then LBHI will (i) restore the Existing Reserve before making any further distributions under the Plan, and (ii) after restoring the Existing Reserve, continue to reserve for the Claims as set forth in the 2011 Stipulation.

- The Parties will exchange mutual releases of all claims and causes of action arising under or relating to the Claims.

- Other than section 2 of the Settlement Agreement, which provides for the immediate termination of the 2011 Reserve Agreement, the effectiveness of the Settlement Agreement is subject to the Court's approval.

### Basis for the Relief Requested

16.    Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after

notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR. P.

---

[2]  To the extent there is an inconsistency between this summary and the Settlement Agreement, the Settlement Agreement shall control.

6

9019(a).  This rule empowers bankruptcy courts "to approve settlements if they are in the best

interests of the estate."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham*

*Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result

in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the

range of reasonableness."  *Id.*; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599,

608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

      17.    "Compromises are a normal part of the process of reorganization."  *Prof.*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson* ("TMT Trailer Ferry"),

390 U.S. 414, 424 (1968) (*quoting Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

The decision to approve a particular compromise lies within the sound discretion of the

bankruptcy court.  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The court's

discretion must be exercised "in light of the general public policy favoring settlements."  *In re*

*Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  A proposed compromise and

settlement implicates the issue of whether it is "fair and equitable, and . . . in the best interest of

the [debtor's] estate."  *In re Best Products Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal

citations omitted).  The court must apprise itself "of all [relevant] facts necessary for an

intelligent and objective opinion of the probabilities of ultimate success should the claim be

litigated."  *TMT Trailer Ferry*, 390 U.S. at 424.

      18.    While a court must evaluate "all . . . factors relevant to a full and fair

assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424,

there is no requirement for the conduct of a "mini-trial" of the claims being settled or a full

independent investigation.  *See In re W.T. Grant Co.*, 699 F.2d at 608; *In re Drexel Burnham*

*Lambert Grp., Inc.*, 134 B.R. at 505.  "The bankruptcy judge does not have to decide the

7

numerous questions of law and fact. . . . The court need only canvass the settlement to determine

whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal

citations omitted).  Last, in assessing a global settlement of claims, "[t]he appropriate inquiry is

whether the Settlement Agreement in its entirety is appropriate for the . . . estate." *Air Line

Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R.

414, 430 (S.D.N.Y. 1993) (emphasis added), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

19.    Bankruptcy courts have applied the following factors in determining

whether a settlement should be approved: (i) the probability of success in litigation, with due

consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the

litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors

who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent

to which the settlement is truly the product of arm's-length bargaining and not the product of

fraud or collusion. *TMT Trailer Ferry*, 390 U.S. at 424.

### The Settlement Agreement Satisfies the Legal Standard and Should Be Approved

20.    The Settlement Agreement offers substantial value to LBHI, significantly

advances the claims resolution process, and is manifestly in the best interests of LBHI and

LBHI's creditors.  The Settlement Agreement provides for the resolution of one of the largest

outstanding claims against LBHI at an amount that is substantially less than the asserted amount

of that claim and on terms that the Plan Administrator believes are favorable.

21.    The Settlement Agreement also is in accord with the Plan Administrator's

reasonable probability estimates that LBHI will succeed in the litigation and permits LBHI to

avoid the risks, costs and delay associated with continued litigation, which likely will require at

least two trials—one for liability and one for damages.  Although the Parties have filed summary

8

judgment motions on certain issues of liability, a final judicial resolution of all of their disputes likely would take years.  Even if LBHI succeeds on the pending summary judgment motions, Canary Wharf has asserted anticipatory repudiation as another basis for liability, which is not the subject of the summary judgment motions and likely would require a trial to resolve.  Moreover, no discovery on damages has been conducted to date, and if this matter were to proceed, LBHI would need to spend considerable time and money to complete discovery and potentially a trial on damages.  In addition, given the amount at stake, the losing party is likely to appeal any decision by the Court.  Although LBHI believes its legal position is sound, the outcome of litigation is never certain and this litigation is especially difficult to predict given the complicated English law issues involved.  In sum, continued litigation with Canary Wharf would be expensive and require the dedication of substantial time and resources on the part of the Plan Administrator, the Plan Administrator's professionals, and the Court—resources that could more efficiently be spent on other aspects of the Chapter 11 Cases—with no certainty of the outcome.

22.    The Settlement Agreement is the result of arms'-length negotiations between the Parties and is well-informed.  As a result of their negotiations, the mediation sessions and summary judgment proceedings, the Parties have exchanged substantial amounts of information and have submitted each competing legal claim to rigorous analysis.  Both sides have been represented by capable legal professionals, and the Plan Administrator has concluded, based on its considered business judgment and extensive analysis of all of the legal and factual issues, that the settlement is fair and reasonable.  As such, the settlements and compromises set forth in the Settlement Agreement are well within the range of reasonableness.

23.    For all the foregoing reasons, the Settlement Agreement results in a highly desirable outcome for LBHI, is in the best interests of LBHI and its creditors, and should be

approved.  Accordingly, the Plan Administrator respectfully requests that the Settlement

Agreement be "so ordered" by the Court.

## Notice

24.     No trustee has been appointed in these chapter 11 cases.   The Plan

Administrator, in accordance with the procedures set forth in the second amended order entered

on June 17, 2010, governing case management and administrative procedures for these cases

(ECF No. 9635), and in the Second Settlement Procedures Order, has served notice of this

Motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal

Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v)

Canary Wharf and the Contractor; and (vi) all parties who have requested notice in these chapter

11 cases.  The Plan Administrator submits that no other or further notice need be provided.

25.     No previous request for the relief sought herein has been made by the Plan

Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests that the Court

approve, sign and enter the Settlement Agreement and grant such other and further relief as is

just.

Dated: September 22, 2014
  New York, New York

        /s/ Robert J. Lemons
        David J. Lender
        Peter D. Isakoff
        Robert J. Lemons

        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Lehman Brothers Holdings Inc.
        and Certain of Its Affiliates

10

## Exhibit A

**(Settlement Agreement)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x
                                                           :
In re                                                      :        Chapter 11
                                                           :
LEHMAN BROTHERS HOLDINGS INC. *et al.*,                    :        Case No. 08-13555 (SCC)
                                                           :
                                    Debtors.               :        Jointly Administered
                                                           :
-------------------------------------------------------------------- x

**SETTLEMENT AND COMPROMISE OF ALL**
**CLAIMS FILED BY THE CANARY WHARF CLAIMANTS**

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors (the

"Plan")[1], and (i) Heron Quays (HQ2) T1 Limited and Heron Quays (HQ2) T2 Limited

(collectively, the "Landlord"), (ii) Canary Wharf Management Ltd. (the "Management

Company"), and (iii) Canary Wharf Contractors Ltd. (the "Contractor") (parties (i) through (iii),

collectively, "Canary Wharf" and, together with LBHI, the "Parties"), hereby stipulate and agree

as follows:

**RECITALS**

      A.      A lease for property at 25 Bank Street in London, England, dated March

16, 2005 (the "Lease") was executed by, *inter alia*, LBHI as Surety, Lehman Brothers Limited

("LBL") as Tenant, the Landlord, and the Management Company.

      B.      A Letter of Appointment for Fitting Out Works, dated March 30, 2001,

was executed by the Contractor, LBL, and LBHI, and subsequently modified by a Novation

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

Agreement dated as of November 29, 2002, executed by the Contractor, LBL, Lehman Brothers Lease & Finance No. 1 Limited ("Lehman Finance"), and LBHI. Pursuant to those documents (collectively, the "Management Agreement"), the Contractor agreed to procure the performance of trade contractors with respect to various construction projects and fitting out works at the 25 Bank Street property in exchange for payment by Lehman Finance or LBHI.

C. On September 15, 2008, LBHI filed for bankruptcy under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

D. Also on September 15, 2008, LBL entered administration proceedings in the United Kingdom.

E. On October 24, 2008, Lehman Finance entered administration proceedings in the United Kingdom.

F. On July 2, 2009, the Bankruptcy Court entered an order establishing September 22, 2009 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for the filing of proofs of claim against LBHI based upon prepetition claims.

G. On September 14, 2009, Canary Wharf timely filed three proofs of claim against LBHI indicated below for the amounts allegedly owed by LBHI in respect of certain obligations under the Lease and the Management Agreement (collectively, the "Canary Wharf Claims"):

| Claimant | Claim Number | Filed Amount |
|---|---|---|
| Management Company | 14824 | $195,550,000 |
| Contractor | 14825 | $832,995 |
| Landlord | 14826 | $4,280,970,000 |
| **TOTAL** | | **$4,477,352,995** |

H.    On August 22, 2011, the Parties entered into a stipulation (so ordered by the Bankruptcy Court on September 1, 2011) ("2011 Stipulation") pursuant to which the Canary Wharf Claims were reduced to the following maximum amounts:

| Claimant | Claim Number | Filed Amount |
|---|---|---|
| Management Company | 14824 | $9,150,000 |
| Contractor | 14825 | $850,000 |
| Landlord | 14826 | $770,000,000 |
| **TOTAL** | | **$780,000,000** |

I.    In the 2011 Stipulation, LBHI agreed that it would reserve against payment of such maximum allowable amounts, until such time as the Canary Wharf Claims were settled or finally adjudicated, an amount equal to the sum which would have been distributed in respect of such maximum allowed amount had the same been allowed as Class 3 claims under the Plan.  Pursuant to that obligation, LBHI has to date reserved a total of $210,010,179.60 on account of the Canary Wharf Claims ("Existing Reserve").

J.    On August 15, 2012, LBHI filed an objection to Claim Nos. 14824 and 14826.  On October 12, 2012, the Landlord and Management Company filed a response to the objection.  LBHI filed a reply on January 10, 2013.

K.    Discovery on issues of liability with respect to Claim Nos. 14824 and 14826 was completed in September 2013.  In 2014, the Parties cross-moved for summary judgment on certain liability issues for Claim Nos. 14824 and 14826.

L.    After good-faith arm's-length negotiations and with the assistance of a mediator, the Parties have agreed to resolve the disputes concerning the Canary Wharf Claims pursuant to the terms and conditions set forth in this stipulation (the "Stipulation").

**<u>AGREEMENT</u>**

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed by the Parties that:

1.      Upon execution of this Stipulation by all Parties, LBHI's reserve obligations under the 2011 Stipulation are terminated, and LBHI may release the Existing Reserve subject to restoration pursuant to Paragraph 9 below.

2.      Upon the date of approval of this Stipulation by the Bankruptcy Court (the "Effective Date"), the Contractor's claim, Claim No. 14825, shall be disallowed and expunged, and the claims of the Management Company and the Landlord shall be allowed as Third-Party Guarantee Claims against LBHI in LBHI Class 9A of the Plan in the amounts set forth below (the "Allowed Claims"):

| <u>Claimant</u> | <u>Claim Number</u> | <u>Allowed Amount</u> |
|---|---|---|
| Management Company | 14824 | $5,000,000 |
| Landlord | 14826 | <u>$345,000,000</u> |
| **TOTAL** | | **$350,000,000** |

3.      On or before five (5) business days after the Effective Date, LBHI shall remit to Canary Wharf all amounts payable on account of the Allowed Claims pursuant to section 8.4 of the Plan, including interest earned on the amount retained with respect to the Canary Wharf Claims, through the date of such payment.  Thereafter, LBHI shall continue to make distributions in respect of the Allowed Claims in accordance with section 8.4 of the Plan.

4.      As used herein, the term "Claimant Parties" means Canary Wharf and its parents, subsidiaries, affiliates, successors and assigns, and its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys.

5.      As used herein, the term "Debtor Parties" means LBHI, its estate, its controlled subsidiaries or affiliates, successors and assigns, and its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys, but does not include LBL.

6.      Upon the Effective Date, except with respect to the Allowed Claims and Canary Wharf's entitlement to receive distributions in respect thereof, the Claimant Parties hereby irrevocably waive and release any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action arising under or relating to the matters set forth or described in Claim Nos. 14824, 14825 and 14826 (collectively, the "Claimant Released Claims") against any of the Debtor Parties, and are hereby barred from asserting any and all Claimant Released Claims against any of the Debtor Parties whatsoever, whether known or unknown, presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Stipulation by the Parties.  For the avoidance of doubt, nothing in this agreement in any way releases LBL from any claims that have been or might be made by the Claimant Parties.

7.      Upon the Effective Date, the Debtor Parties hereby irrevocably waive and release any and all claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action arising under or relating to the matters set forth or described in Claim Nos. 14824, 14825 and 14826 (collectively, the "Debtor Released Claims") against any of the Claimant Parties, and are hereby barred from asserting any and all Debtor Released Claims against any of the Claimant Parties whatsoever, whether known or unknown, presently existing,

whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Stipulation by the Parties.

8.    LBHI shall submit this Stipulation to the Bankruptcy Court for its approval within five (5) days of execution by all Parties, and shall use its reasonable best efforts to obtain such approval as promptly as possible.

9.    If this Stipulation is disapproved by the Bankruptcy Court, it shall be void *ab initio* subject, however, to the remainder of this Paragraph 9.  If the Stipulation has not been approved by the Bankruptcy Court within thirty (30) days of the execution of this Stipulation by all Parties, then LBHI will (a) restore the Existing Reserve before making any further Distributions under the Plan, and, (b) after restoring the Existing Reserve, continue to reserve for the Canary Wharf Claims as set forth in the 2011 Stipulation as if LBHI's obligations under the 2011 Stipulation had never been terminated hereunder.

10.    This Stipulation contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements, representations, and understandings among the Parties relating thereto.

11.    This Stipulation may not be amended or modified in any way other than by signed writing executed by all Parties.

12.    Each person who executes this Stipulation represents and warrants that: (a) he or she has the full right, power and authority to do so on behalf of the applicable Party and that each such Party has full knowledge of, and has consented to, this Stipulation and to perform its obligations hereunder; and (b) the execution of this Stipulation and the performance of each such Party's obligations hereunder does not and will not conflict with or result in a breach (including with the passage of time) of any other agreement to which it is a party.

- 6 -

13.     This Stipulation shall inure to the benefit of, and shall be binding upon, the Parties and their respective successors and assigns.

14.     This Stipulation shall be deemed to have been jointly written by the Parties, and ambiguities shall not be construed against any Party by reason of that Party having drafted all or any part of this Stipulation.

15.     No waiver of any of the provisions of this Stipulation shall be deemed to constitute a waiver of any of the other provisions hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

16.     This Stipulation shall not constitute an admission of legal responsibility, liability, or fault on the part of any Party.

17.     This Stipulation shall not be admissible or used by the Claimant Parties in any way to prove LBL's non-liability or liability arising under or relating to the Lease or the Management Agreement in any matter or proceeding.

18.     Each party shall bear its own costs and attorneys' fees incurred in this matter.

19.     This Stipulation shall be exclusively governed by and construed and enforced in accordance with the laws of the state of New York, without regard to the conflicts of law principles thereof.

20.     The Bankruptcy Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Stipulation.  Should the Bankruptcy Court abstain from exercising its jurisdiction or be found not to have jurisdiction over a matter relating to this Stipulation, such matter shall be adjudicated in either a federal district court or a state court in the County of New York in the State of New York.

21.    This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copy, copies or facsimiles signed by the Parties.

Dated:    September 17, 2014

By: _____
David J. Lender
Peter D. Isakoff
Robert J. Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Lehman Brothers
Holdings Inc.*, as Plan Administrator

By: _____
David B. Tulchin
Marc De Leeuw
John J. Jerome
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Heron Quays (HQ2) T1 Limited,
Heron Quays (HQ2) T2 Limited, Canary Wharf
Management Ltd., and Canary Wharf
Contractors Ltd.*

IT IS SO ORDERED.

Signed: September__, 2014

_____
HON. SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE