Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - - - - x

    In the Matter of:              x      Chapter 11

5                                  x

    LEHMAN BROTHERS HOLDINGS INC., x      Case No. 08-13555(SCC)

6                                  x

                Debtor.            x

7   - - - - - - - - - - - - - - - - x

    In the Matter of:              x

8                                  x

    LEHMAN BROTHERS INC.,          x      Adv. Case No.

9                                  x      08-01420(SCC)

                                   x

10               Debtor.           x

    - - - - - - - - - - - - - - - - x

11

12

13

                         U.S. Bankruptcy Court

14

                         One Bowling Green

15

                         New York, New York

16

17

                         September 9, 2014

18

                         10:08 AM

19

20

21

    B E F O R E :

22

    HON. SHELLY C. CHAPMAN

23

    U.S. BANKRUPTCY JUDGE

24

25

Page 2

1    HEARING re Adversary proceeding: 08-01420-scc Lehman

2    Brothers Inc.  Doc# 9529 Motion for Omnibus Objection to

3    Claim(s)/Trustees Two Hundred Fifty-Fifth Omnibus Objection

4    to General Creditor Claims (No Liability Claims)

5

6    HEARING re Doc# 45296 Motion to Approve Compromise:  Motion

7    Pursuant to Rule 9010 of the Federal Rules of Bankruptcy

8    Procedure and Section 105(a) of the Bankruptcy Code for

9    Approval of Settlement Agreement Between Lehman Brothers

10   Special Financing Inc. and the Bank of New York Mellon Trust

11   Company, National Association, as Trustee, Relating to MKP

12   Vela CBO Credit Default Swap Agreement

13

14   HEARING re Doc# 45447 Motion for Omnibus Objection to

15   Claim(s):  The Plan Administrators Four Hundred Seventy-

16   Eighth Omnibus Objection to Claims (No Liability Claims)

17

18   HEARING re Doc# 45448 Motion for Omnibus Objection to

19   Claim(s)/ Four Hundred Seventy-Ninth Omnibus Objection to

20   Claims (No Liability Claims)

21

22   HEARING re Doc# 46073 Motion for Authorization for Lehman

23   Brothers Special Financing Inc. and Lehman Brothers

24   Commercial Corporation to Invest Disputed Claims Reserves

25   for Claim Numbers 66455 and 66476 Pursuant to Section 8.4 of

Page 3

1   the Modified Third Amended Joint Chapter 11 Plan of Lehman

2   Brothers Holdings Inc. and its Affiliated Debtors filed by

3   Jacqueline Marcus on behalf of Lehman Brothers Holdings Inc.

4

5   HEARING re Doc# 11306 Debtors' Forty-First Omnibus Objection

6   to Claims (Late-Filed Claims) filed by Shai Waisman on

7   behalf of Lehman Brothers Holdings Inc.

8

9   HEARING re Doc# 15363 Debtors' One Hundred Seventeenth

10  Omnibus Objection to Claims (No Liability Non-Debtor

11  Employee Claims) filed by Shai Waisman on behalf of Lehman

12  Brothers Holdings Inc.

13

14  HEARING re Doc# 19393 Debtors' One Hundred Seventy-Seventh

15  Omnibus Objection to Claims (No Liability Non-Debtor

16  Employee Claims) filed by Robert J. Lemons on behalf of

17  Lehman Brothers Holdings Inc.

18

19  HEARING re Doc# 31989 Three Hundred Sixty-Sixth Omnibus

20  Objection to Claims (employment-Related Claims)

21

22  HEARING re Doc# 39348 Objection to Proof of Claim No. 22605

23  Filed by Sanford A. and Tina A. Mohr filed by Michael A.

24  Rollin on behalf of Lehman Brothers Holdings Inc.

25

1   HEARING re Doc# 40292 Objection to Proof of Claim No. 33325

2   Filed by Arthur A. Boor and Joan Boor filed by Michael A.

3   Rollins on behalf Lehman Brothers Holdings Inc.

4

5   HEARING re Doc# 45446 Plan Administrator's Four Hundred

6   Seventy-Seventh Omnibus Objection to Claims (No Liability

7   Claims) filed by Garrett A. Fail on behalf of Lehman

8   Brothers Holdings Inc.

9

10   HEARING re Doc# 45481 The Plan Administrator's Four Hundred

11   Eightieth Omnibus Objection to Claims (No Liability Claims)

12   filed by Garrett A. Fail on behalf of Lehman Brothers

13   Holdings Inc.

14

15   HEARING re Adversary proceeding: 08-01420-scc Lehman

16   Brothers Inc.  Doc# 6130 Trustee's Sixty-First Omnibus

17   Objection to General Creditor Claims (No Liability Claims)

18   filed by Christopher K. Kiplok on behalf of James W.

19   Giddens, as Trustee for the SIPA Liquidation of Lehman

20   Brothers Inc.

21

22   HEARING re:  Adversary proceeding: 08-01420-scc Lehman

23   Brothers Inc.  Doc# 7185 Trustee's One Hundred Thirty-Fifth

24   Omnibus Objection to General Creditor Claims (No Liability

25   Claims) filed by Christopher K. Kiplok on behalf of James W.

Page 5

1   Giddens, as Trustee for the SIPA Liquidation of Lehman

2   Brothers Inc.

3

4   HEARING re Adversary proceeding: 08-01420-scc Lehman

5   Brothers Inc.  Doc# 8467 Trustee's Two Hundred Seventeenth

6   Omnibus Objection to General Creditor Claims (No Liability

7   Claims) filed by Christopher K. Kiplok on behalf of James W.

8   Giddens, as Trustee for the SIPA Liquidation of Lehman

9   Brothers Inc.

10

11  HEARING re Adversary proceeding: 08-01420-scc Lehman

12  Brothers Inc.  Doc# 9777 Response to Motion Response to

13  Trustees Two Hundred Forty-Seventh Omnibus Objection to

14  General Creditor Claims (Employee Claims) Solely as to a

15  Certain Claim (related document(s)9394)

16

17  HEARING re Adversary proceeding: 08-01420-scc Lehman

18  Brothers Inc.  Doc# 9799 Statement/Trustees Omnibus Reply to

19  Certain Responses to the Trustees Sixty-First, One Hundred

20  Thirty-Fifth, and Two Hundred Seventeenth Omnibus Objections

21  to General Creditor Claims (No Liability Claims)

22

23  HEARING RE Adversary proceeding: 08-01420-scc Lehman

24  Brothers Inc.  Doc# 9834 Notice of Hearing/Notice of Agenda

25  of Matters Scheduled for the Seventh-Seventh Omnibus and

Page 6

1    Claims Hearing on September 9, 2014 at 10:00 a.m.

2

3    HEARING re Doc# 46232 Response to Motion

4

5    HEARING re Doc# 46251 Notice of Agenda of Matters Scheduled

6    for Seventy-Seventh Omnibus and Claims Hearing on September

7    9, 2014 at 10:00 a.m.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

Page 7

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorneys for LBHI and its Affiliates

4         767 Fifth Avenue

5         New York, NY 10153-0119

6

7    BY:  JACQUELINE MARCUS, ESQ.

8         SUNNY SINGH, ESQ.

9         CANDACE M. ARTHUR, ESQ.

10

11   JONES & KELLER

12        Attorneys for the Mohrs

13        1999 Broadway

14        Suite 3150

15        Denver, CO 80202

16

17   BY:  MARTIZA D. BRASWELL, ESQ.

18        MICHAL A. ROLLIN, ESQ.

19

20

21

22

23

24

25

```
 1    LAW OFFICES OF ANTHONY BALSAMO

 2          Attorney for the Boor Estate

 3          111 John Street

 4          Suite 800

 5          New York, NY 10338-3180

 6

 7    BY:  ANTHONY BALSAMO, ESQ.

 8

 9    HUGHES HUBBARD & REED LLP

10          Attorneys for the SIPA Trustee

11          One Battery Park Plaza

12          New York, NY 1004-1482

13

14    BY:  MEAGHAN C. GRAGG, ESQ.

15          STUART N. MITCHELL, ESQ.

16

17    ALSO PRESENT:

18    JANICE BOBB

19    NIRAJ SHAH

20

21

22

23

24

25
```

1                  P R O C E E D I N G S

2              THE COURT:  How is everyone today?  Hello,

3      Ms. Marcus.

4              MS. MARCUS:  Hi.  Good morning, Your Honor,

5      Jacqueline Marcus, Weil, Gotshal & Manges LLP on behalf of

6      Lehman Brothers Holdings Inc. and its affiliates.

7              We're here, Your Honor, this morning for the

8      seventy-seventh omnibus and claims hearing, and this morning

9      my colleagues will be handling the matters on the calendar.

10             THE COURT:  Okay.

11             MS. MARCUS:  First Candace Arthur and then Sunny

12     Singh.

13             THE COURT:  Very good.  Thank you.  Good morning.

14             MS. ARTHUR:  Good morning, Your Honor.  For the

15     record Candace Arthur of Weil, Gotshal & Manges on behalf of

16     Lehman Brothers Holdings Inc., as plan administrator.

17             Your Honor, we are going forward first with the

18     uncontested motion of the plan administrator pursuant to

19     Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy

20     Code seeking approval of a settlement agreement between

21     Lehman Brothers Special Financing Inc. and the Bank of New

22     York Mellon Trust, in its capacity as trustee, with respect

23     to the MKP Vela CBO credit default swap agreement.

24             Your Honor, we filed a motion on July 18th and

25     provided you with a confidential copy of the agreement on

1    July 30th.  Additionally, the trustee served notice to the

2    noteholders.

3              Your Honor, as you are familiar with these types

4    of settlement agreements, it resolves the SPV flip clause

5    disputes, specifically with respect to the MKP Vela swap

6    agreement.

7              The salient terms of the settlement agreement are

8    that the trustee will liquidate the collateral that it

9    currently holds in the amount of approximately $144 million

10   and make subsequent payments.  First the trustee will be

11   paid all qualified amounts under the indenture will be paid,

12   an escrow account will be created, and $775,000 will be

13   placed into it in order to cover any expenses and fees that

14   may become due and owing.  Finally, LBSF will receive all

15   remaining cash.

16             At the conclusion of this, Your Honor, LBSF will

17   dismiss the trustee, the issuer, and the co-issuer from any

18   applicable adversary proceedings.

19             Additionally, Your Honor, after we filed the

20   motion, and as we noted in the correspondence that we sent

21   to your chambers yesterday, as well as in the Colara (ph)

22   declaration -- and I'd like to note for Your Honor that the

23   declarant is in the court today -- we subsequently amended

24   the settlement agreement.

25             Specifically the collateral manager for MKP Vela,

Page 11

1    MKP Capital Management LLC requested an amendment in order

2    to insure that there was a source of payment for its fees

3    and expenses under the collateral management agreement.

4    Accordingly, LBSF, the trustee, and the collateral manager

5    agreed to amend the settlement agreement in order to provide

6    for $525,000 to be placed into the escrow account in order

7    to cover any fees and expenses that may become due and owing

8    under the collateral management agreement.

9             Additionally, LBSF and the collateral manager

10   entered into a letter agreement wherein LBSF agreed to

11   direct the trustee to make a payment to the collateral

12   manager in the amount of $540,000 in order to cover the

13   existing fees and expenses that were incurred as of

14   August 1st, 2014.

15            Your Honor, I do apologize that we were unable to

16   provide you with a copy of the settlement agreement as

17   amended and the letter agreement at an earlier date;

18   however, we weren't able to finalize the agreement until --

19            THE COURT:  That's okay, I have it.

20            MS. ARTHUR:  -- late Friday afternoon, so my

21   apologies.

22            THE COURT:  I have it.  No problem.

23            MS. ARTHUR:  Nevertheless, the motion is

24   uncontested, there were no objections, and as we note in the

25   motion through a series of purchases, LBSF was able to

Page 12

```
 1    acquire more than two-thirds of the Class A notes, and
 2    they're the only class that would in fact have any possible
 3    economic interest in the collateral the trustee holds.
 4              The plan administrator believes that the
 5    settlement is fair and reasonable and in the best interest
 6    of LBSF and its estates.  To the extent that the Court has
 7    any questions I'd be happy to answer, otherwise --
 8              THE COURT:  All right.  Thank you.
 9              MS. ARTHUR:  -- the plan administrator does
10    respectfully request that you grant the motion.
11              THE COURT:  All right.  Let me ask if anyone
12    wishes to be heard with respect to the proposed settlement
13    relating to the MKP Vela CBO credit default swap agreement?
14              MS. ARTHUR:  The order actually has been revised,
15    Your Honor, and it was circulated and approved by counsel
16    for the trustee as well as the collateral manager in
17    advance.
18              THE COURT:  Okay.  Does the revision reflect to
19    the recent amendment to the settlement agreement?
20              MS. ARTHUR:  Yes, it does, Your Honor.
21              THE COURT:  Okay.
22              MS. ARTHUR:  I'd be happy to hand it up at the end
23    of the hearing.
24              THE COURT:  All right.  Well, I'll be happy to
25    review it and the motion will be granted.
```

Page 13

1              MS. ARTHUR:  Thank you very much.

2              THE COURT:  Thank you.

3              MS. ARTHUR:  Your Honor, I'll turn the podium over

4    now to my colleague, Sunny Singh.

5              THE COURT:  All right.  Good morning.

6              MR. SINGH:  Good morning, Your Honor.  Sunny

7    Singh, Weil, Gotshal & Manges on behalf of the plan

8    administrator.

9              Your Honor, the next item on the agenda for this

10   morning is the plan administrator's motion for authorization

11   for Lehman Brothers Special Financing Inc. and Lehman

12   Brothers Commercial Corporation to invest the disputed

13   claims reserves for claim numbers 66455 and 66476 pursuant

14   to Section 8.4 of the plan.

15             Your Honor, the motion was filed on August 22nd

16   with an objection deadline of September 2nd in accordance

17   with the case management order, and no responses have been

18   received by the debtors and -- or filed on the docket, so

19   we're proceeding today on an uncontested basis.

20             THE COURT:  Okay.

21             MR. SINGH:  Your Honor, also on September 4th the

22   plan administrator filed a declaration of Mr. Bill Olshan

23   (ph) in support of the motion, and that declaration attached

24   forms of the LBSF note and the LBCC note as well as a letter

25   agreement with J.P. Morgan that are referred to in the

Page 14

1    motion.  And, Your Honor, Mr. Olshan is here in court today

2    to the extent you have any questions for him.

3              Your Honor, as explained in the motion and

4    Mr. Olshan's declaration, the purpose of the motion is

5    really to accelerate distributions to LBHI's creditors,

6    including creditors of LBSF and LBCC that have corresponding

7    guarantee claims, and it's by investing the duplicative cash

8    reserves that are being maintained on account of these

9    claims by LBSF and LBCC that were filed by J.P. Morgan.

10             And just to be clear, Your Honor, J.P. Morgan has

11   asserted a number of other claims against LBHI and its

12   affiliates and has applied collateral towards those claims,

13   and none of those claims are the subject of the motion or

14   directly related thereto.  We're just talking at these two

15   claims.

16             And the claims are one against LBSF for

17   approximately $1.7 billion and another against LBCC for

18   approximately $125 million, and the claims relate to

19   prepetition derivatives contracts between the parties that

20   were allegedly guaranteed by LBHI.

21             Your Honor, just to describe the circumstances a

22   little bit for you, after the commencement of the cases J.P.

23   Morgan applied LBHI's collateral towards these claims,

24   including collateral that was provisionally applied pursuant

25   to the collateral disposition agreement that was approved by

Page 15

1    Judge Peck in March of 2010, and as a result LBHI became

2    subrogated to the claims.  But as Your Honor is aware LBHI's

3    alleged guarantee and the application of collateral by J.P.

4    Morgan are subject to litigation between the parties.

5           In addition the LBSF claim and the LBCC claim are

6    subject to litigation between the parties with respect to

7    the validity and amount of those claims.

8           And so, Your Honor, under Section 8.4 of the plan

9    these claims are treated as disputed claims, meaning that

10   every time there's a plan distribution and LBSF and LBCC

11   make distributions to their creditors they calculate a

12   reserve and reserve a cash amount on account of these

13   claims.  And so if the disputed claim later becomes allowed

14   that reserve can be used to pay the catch up distributions.

15   And if the claim is later disallowed then any amounts

16   attributable to the disallowed portion of the claim become

17   available for distribution to creditors generally.

18          And so to date, Your Honor, LBSF has reserved

19   approximately 4450 million for the J.P. Morgan claim against

20   its estate, and LBCC has reserved approximately $121

21   million, and these amounts are excluding any amounts that

22   could potentially be attributable to a plan adjustment under

23   the plan, which are not being invested, and the amounts will

24   continue to grow with each distribution so long as their

25   claims remain disputed.

Page 16

```
 1              And so, Your Honor, the reserves are really

 2    duplicative of the cash that J.P. Morgan has already applied

 3    towards its claims, and because -- and I say that because

 4    either LBHI, to the extent it remains subrogated at the time

 5    the claims are allowed, will receive these amounts as

 6    distributions, or if the plan administrator is successful in

 7    challenging either the amount of the claims or the

 8    collateral litigation then any amounts that would be

 9    returned from J.P. Morgan could then be used to fill the

10    hole for the distributions.

11              And so in light of this duplication, Your Honor,

12    the plan administrator has come up with an arrangement to

13    free up the reserves now as opposed to having to wait for

14    the J.P. Morgan litigation to be concluded while protecting

15    the interest of stakeholders.  And Section 8.4 of the plan

16    authorizes the plan administrator to invest disputed claims

17    reserves subject to Your Honor's approval, and the motion

18    seeks authority to do exactly that.

19              Specifically LBSF and LBCC will use -- will invest

20    these reserves with LBHI in a secured note, LBHI will then

21    be able to use the proceeds, make distributions to its

22    creditors in accordance with the plan, and in exchange LBSF

23    and LBCC will earn an enhanced rate of interest, and also

24    the repayment of the notes will be secured by two things.

25    One, it'll be secured by any repayment by J.P. Morgan in
```

Page 17

1    connection with the litigations, and two, to the extent that

2    LBHI remains subrogated to the claims, it'll be secured by

3    the distributions that would otherwise have to be made.

4           And I should note, Your Honor, that although I'm

5    referring to the notes generally as we stated in the motion

6    these are going to be two separate notes.  One between SF

7    and LBHI and another between LBCC.  So there's no overlap

8    except that with respect to their secured liens against the

9    J.P. Morgan collateral LBSF and LBCC have a first priority

10   pari passu basis on that lien.

11          And, Your Honor, the maturity date for the notes

12   is the final resolution of the LBSF claim and the LBCC

13   claim, whenever that may be, and at that time, and it's

14   really consistent with the plan, because at that time the

15   plan administrator would otherwise know what distributions

16   to make, because it'll know what's been allowed and what's

17   been disallowed.  And so in order to not prejudice any

18   stakeholders the repayment is tied exactly to that date.

19   And the repayment of the loan will be satisfied from one of

20   the following -- one or a combination of the following

21   sources.

22          So for any portion of the claim that's allowed, to

23   the extent that LBHI is still subrogated and would have been

24   entitled to those distributions, then we'll just offset the

25   amount of a note repayment that's being due there.  And to

Page 18

```
 1    the extent that the collateral litigation is resolved first

 2    and J.P. Morgan is entitled to those unsecured claims as a

 3    result of that litigation, then the plan administrator has

 4    agreed with J.P. Morgan that J.P. Morgan can simply just

 5    deduct or what we've called as a -- in the letter agreement

 6    a -- sort of a -- I forget the term that we used -- but a

 7    deduction that it can apply later to pay back in that amount

 8    to the estate, and that'll be treated as a distribution that

 9    would have been otherwise made to J.M. Morgan and a

10    repayment of the notes.  And then for any portion of the

11    notes that are attributable to any disallowed portion of the

12    claim, which as I mentioned earlier, Your Honor, under the

13    plan would have to be paid out to other creditors of LBSF

14    and LBCC, J.P. Morgan has agreed that upon the resolution of

15    the claims it will pay back the amounts under the notes that

16    are allocable to the disallowed portion, including interest

17    thereon, so that LBHI will make that payment over to SF or

18    CC and LBCC will then be able to use those funds to make

19    distributions to its creditors.

20              And, Your Honor, J.P. Morgan's agreement in

21    connection with the motion is reflected in the letter

22    agreement that was attached to Mr. Olshan's declaration, and

23    except as reflected in the letter agreement of course the

24    plan administrator's and J.M. Morgan's rights with respect

25    to the litigation and the CDA are not affected by the
```

Page 19

1    motion, they're fully preserved.

2           Your Honor, the plan administrator submits that

3    this is another prudent exercise of its business judgment of

4    the management of the plan administrator and its board of

5    directors in order to accelerate distributions and not cause

6    harm to any stakeholders.

7           Your Honor, as we stated in the motion and

8    Mr. Olshan's declaration, if the motion is approved and the

9    investments are made the plan administrator will be able to

10   distribute in incremental $560 million in the upcoming sixth

11   plan distribution on October 2nd, plus additional amounts

12   that would otherwise be reserved in connection with future

13   distributions.

14          In all this, Your Honor, in light of the

15   agreements with J.P. Morgan with the surety that LBHI will

16   have the founds repay the notes, if and when it's needed.

17          Your Honor, there are no objections to the motion

18   as I stated, and J.P. Morgan, who's the other only party

19   other than LBHI that could have an interest in these claim

20   reserves, has consented to the relief being requested.

21          And with that, Your Honor, unless you have any

22   questions for me we request that the motion be approved.

23          THE COURT:  All right.  Does anyone else wish to

24   be heard with respect to this motion?  Sir?  Come up to a

25   microphone, please.

 1            UNIDENTIFIED SPEAKER:  Sure.  I'll be very brief.

 2            THE COURT:  Okay.

 3            UNIDENTIFIED SPEAKER:  Ian (indiscernible) on

 4    behalf of J.P. Morgan.  We obviously support the motion --

 5            THE COURT:  Okay.

 6            UNIDENTIFIED SPEAKER:  -- as was filed and

 7    Mr. Singh's articulation of the agreement that was reached.

 8            THE COURT:  Okay.  All right.  Thank you so much.

 9            UNIDENTIFIED SPEAKER:  Thanks very much.  I again

10    apologize.

11            THE COURT:  No problem.

12            All right.  This is an ingenuous motion, very well

13    explained.  I found it complicated, I have ultimately

14    figured it out, and your explanation here today was also

15    very helpful.  The motion will be approved.

16            MR. SINGH:  Thank you very much, Your Honor.

17            THE COURT:  Thank you.

18            MR. SINGH:  Your Honor, the next items on the

19    agenda, if I could just have a moment --

20            THE COURT:  Sure.

21            MR. SINGH:  -- to --

22        (Pause)

23            THE COURT:  All right.

24            MR. SINGH:  Your Honor, the next two items on the

25    agenda, which is the forty-first omnibus objection to claims

1   and the one hundred seventeenth omnibus objection to claims

2   I think can be taken together if it's okay with Your Honor.

3            THE COURT:  That's fine.

4            MR. SINGH:  Because the basis for the plan

5   administrator's objection are really the same.

6            THE COURT:  The same.

7            MR. SINGH:  And I'm not sure if any of the -- I

8   know that one of the individuals here in court today --

9            THE COURT:  All right.  Well, let's find out.

10  Where -- with respect to the forty-first omnibus objection

11  is Ms. Lori Chan (ph) here or anyone representing her?

12           All right.  With respect to the one hundred and

13  seventeenth omnibus objection, Ms. Janice Bobb or anyone

14  representing her?  Please come up, ma'am.

15           Mr. Eric Scott or anyone representing Mr. Scott?

16  All right, let the record reflect no response with respect

17  to Mr. Scott.

18           Mr. or Ms. Niraj Shah?  Please come up, sir.

19           Mr. Darrell Twitchel (ph) or anyone representing

20  Mr. Twitchel?  All right, let the record reflect no

21  response.  And --

22           MR. SINGH:  That's it, Your Honor, Mr. Wardwell

23  (ph) has been adjourned.

24           THE COURT:  -- that's it, Mr. Wardwell has been

25  adjourned.

1        MR. SINGH:  That's right.

2        THE COURT:  Mr. Wardell (ph) has been adjourned.

3        MR. SINGH:  Oh, I'm sorry, Mr. Wardell.

4        THE COURT:  Wardell.

5        MR. SINGH:  Excuse me.

6        THE COURT:  Right.

7        MR. SINGH:  And just so Your Honor is aware we had

8   filed a similar objection with respect to Ms. Rebecca Kramer

9   (ph) --

10        THE COURT:  Yes.

11        MR. SINGH:  -- which is number 5, and that's been

12   resolved so been removed from the agenda.

13        THE COURT:  Withdrawn.  Okay.

14        MR. SINGH:  Yes, exactly.  The claims have been

15   withdrawn and as has the objection to that claim.

16        THE COURT:  All right.  So we have here with us

17   today Ms. Bobb and Mr. Shah.  Okay.

18        MR. SINGH:  And --

19        THE COURT:  All right, go ahead.

20        MR. SINGH:  -- Your Honor, just to -- you know,

21   the reason, Your Honor, that these claims are being brought

22   before you today is because the plan administrator has

23   learned that the individuals filled and received allowed

24   claims against the estate of Lehman Brothers Inc.

25        THE COURT:  Right.

Page 23

1          MR. SINGH:  And so that's consistent with the plan

2    administrator's objection that LBHI does not have liability

3    for these claims.

4          And, Your Honor, we've been successful in our

5    discussions with other individuals that have had their

6    claims against -- allowed against LBI, unfortunately we've

7    either been unable to connect with or reach a resolution

8    with the five claimants that are going forward today.

9          And, Your Honor, just very briefly I'll summarize

10   the plan administrator's position and let the --

11         THE COURT:  Folks, why don't you have a seat at

12   the table here, all right?

13         MR. SINGH:  Just very briefly, Your Honor, I'll

14   just summarize the plan administrator's position and turn

15   the podium over to the claimants.

16         Your Honor, we don't believe that there's any

17   asserted basis for liability against LBHI.  Each of the

18   severance and employee-related claims that have been allowed

19   against the LBI estate relate to liability against LBI.

20   They cannot recover for the same injury against LBHI and LBI

21   without a legal basis for doing so, and that's Judge Peck's

22   ruling earlier in the case with respect to another employee

23   matter.

24         And, Your Honor, the documents that are attached

25   to the claim are severance agreements or separation letters

Page 24

1    with LBI, not LBHI, and in some cases there are pay stubs

2    that are attached that reflect LBI liability.

3             And as I mentioned earlier, Your Honor, the claims

4    have actually now been allowed against LBI, and in light of

5    the most recent notice by the LBI trustee, our understanding

6    is that distribution should be commencing soon from the LBI

7    estate on account of these claims.

8             And so, Your Honor, with that we don't believe

9    that there's any liability against the estate for these

10   claims, and I'll turn it over to the claimants that are

11   here, unless Your Honor has any questions for me.

12            THE COURT:  That's fine.  All right.  Thank you

13   very much.

14            All right.  Ms. Bobb, would you like to be heard?

15   Would you like to come up or you can stay there, whichever

16   you're most comfortable with.

17            MS. BOBB:  It's very simple, Judge.  I came

18   today --

19            THE COURT:  Yes, pull the microphone towards you.

20            MS. BOBB:  I came today to actually hear the

21   settlement agreement, because I mean from since 2008 to

22   today it has been a back and forth with misunderstanding of

23   two different claim numbers.

24            In -- for the past couple of weeks I have actually

25   reached out to the bankruptcy department in Lehman Brothers

Page 25

1    to actually clarify to me which claim I was actually dealing

2    with, because each time I speak to a different attorney --

3              THE COURT:  Okay.

4              MS. BOBB:  -- I get a different claim number with

5    a different story.

6              I was able to settle that matter today and have a

7    discussion with the attorneys --

8              THE COURT:  Okay.

9              MS. BOBB:  -- and I have agreed with what the

10   figure that they have shown me, I have agreed to that,

11   because --

12             THE COURT:  Okay.  Do you have -- do you -- can

13   you tell me who it was that you spoke to?

14             MS. BOBB:  Ms. -- I forgot her name.

15             THE COURT:  Is she here today?

16             MR. SINGH:  Your Honor, that's Ms. Alda (ph) of

17   Lehman Brothers Holdings Inc. general counsel's office.

18             THE COURT:  All right.  So the --

19             MR. SINGH:  Although if I could have a minute to

20   consult --

21             THE COURT:  Yes.  Let's just get --

22             MR. SINGH:  -- I think there may be a little bit

23   of confusion.

24             THE COURT:  -- let's get this clarified beyond

25   question for Ms. Bobb.

Page 26

```
 1              MR. SINGH:  Yes.

 2              THE COURT:  All right?

 3         (Pause)

 4              MR. SINGH:  Yeah.  Your Honor, we did make a

 5    settlement proposal to Ms. Bobb with respect to the LBHI

 6    claim, but our understanding was that she had rejected, but

 7    we're happy to talk to her to clarify anything further.

 8              THE COURT:  Okay.  Let's --

 9              MR. SINGH:  And I think what she may be referring

10    to, the LBI claim --

11              THE COURT:  Yes.

12              MR. SINGH:  -- has been allowed, but the --

13              THE COURT:  Okay.  So --

14              MS. BOBB:  So see that's the confusing thing.

15              THE COURT:  Okay.  So let me try to -- let me try

16    to explain it to you, maybe with the costume it'll make a

17    little -- it'll make a little more sense, right?

18              So there were -- everybody talks about Lehman

19    Brothers as if it's one big thing, but it's actually two

20    really big things and lots of smaller things underneath

21    them.  But for our purposes there's LBHI, Lehman Brothers

22    Holdings Inc. --

23              MS. BOBB:  Uh-huh.

24              THE COURT:  -- and there's Lehman Brothers Inc.

25    You were employed by Lehman Brothers Inc., and you have a
```

Page 27

1    valid claim against Lehman Brothers Inc.  Period, full stop.

2    They agree with you that you have a valid claim.

3            In the Lehman Brothers Inc. case, that was the

4    broker dealer, the law requires that first all the customers

5    get paid back their money, and they have been.  The law next

6    requires that creditors who are entitled to priority,

7    administrative creditors, other fancy named creditors under

8    the law, they get paid first.

9            But the good news is now in the Lehman Brothers

10   Inc. case regular unsecured creditors such as yourself are

11   going to begin to get distributions.  That doesn't mean that

12   the amount of your allowed claim is going to be paid in

13   full, you're going to get distributions with respect to that

14   on a pro rata basis with all the other creditors who are

15   similarly situated to you.

16           That being said, because you have an allowed claim

17   at LBI, Lehman Brothers Inc., and were employed by them, you

18   do not have a claim at Lehman Brothers Holdings Inc.

19           That notwithstanding, if there is some other sort

20   of a settlement discussion that's being had I'm not going

21   stand in the way of that, but that's my view of what the

22   situation is.  Does that make sense to you?

23           MS. BOBB:  Now it does, before it didn't.

24           THE COURT:  So maybe -- maybe it is the robe?

25           MS. BOBB:  Because --

Page 28

```
 1               MR. SINGH:  Thank you, Your Honor.

 2               MS. BOBB:  -- each time I speak to someone I get a

 3    different story and I really was confused.

 4               THE COURT:  I apologize for that.  It's very

 5    complicated and you're not alone in being confused by the

 6    difference between LBHI and LBI and who owes what to whom,

 7    but these folks all are doing a pretty good job, in fact a

 8    very good job of making sure that everything is sorted into

 9    the right -- into the right bucket.

10               So if you'd like to continue the discussion here

11    that's fine, but based on the record that I have before me

12    today I am going to disallow your claim against Lehman

13    Brothers Holdings Inc., the Lehman entity that was not your

14    employer and that is not responsible.  It's two separate

15    pots of money --

16               MS. BOBB:  Okay.

17               THE COURT:  -- and one is not liable for the

18    other.

19               MS. BOBB:  So LBHI --

20               THE COURT:  No.

21               MS. BOBB:  Okay.

22               THE COURT:  LBI, yes.

23               MS. BOBB:  That's what I needed to clarify so that

24    I could know exactly where I stand to deal with whoever.

25               THE COURT:  Okay.
```

1              MS. BOBB:  Okay.

2              THE COURT:  Very good.  Thank you so much for

3     coming in.

4              MS. BOBB:  Thank you.

5              THE COURT:  Okay.  Mr. Shah?

6              MR. SHAH:  I'll just say that, you know, from

7     doing just research or a little bit of goggling on LBHI

8     versus LBI --

9              THE COURT:  Uh-huh.

10             MR. SHAH:  -- I found LBHI was a parent company

11    and LBI was a subsidiary.  Correct me if I'm wrong.

12             MR. SINGH:  That's correct, Your Honor.

13             THE COURT:  That's correct, right.

14             MR. SHAH:  Okay.

15             THE COURT:  Right.

16             MR. SHAH:  So, you know, will LBHI take any

17    responsibilities for the -- for the amount of, you know,

18    settlement of cash that's not going to be (indiscernible -

19    00:23:00)?

20             THE COURT:  They won't.

21             MR. SHAH:  Like parents should take the

22    responsibility of their kid if they done --

23             THE COURT:  Well, I understand as a common sense

24    matter why --

25             MR. SHAH:  Okay.

```
 1              THE COURT:  -- you could think that, and lots of

 2     folks do think that, and in certain circumstances, although

 3     not here, that is possible, but the law is that there can be

 4     a very large corporate structure with a parent entity and

 5     lots of subsidiaries, and as long as those entities follow

 6     corporate formalities and conduct their business separately

 7     one is not responsible for the liabilities of the other.

 8     And on many occasions in this case, both Judge Peck in the

 9     first five years of the case and myself more recently, have

10     confirmed that LBHI is not responsible for the liabilities

11     of LBI.

12              So googling can only get you so far --

13              MR. SHAH:  Well, that's why I'm here, you know, I

14     just want to make sure before I sign off on something that,

15     you know, LBI is going take full responsibility for the

16     claims.

17              THE COURT:  Right, I understand.  And --

18              MR. SHAH:  Because there was a little bit of

19     confusion this morning --

20              THE COURT:  Right.

21              MR. SHAH:  -- with the amounts as well.  Right.

22              THE COURT:  Right.

23              MR. SHAH:  What's priority, what's, you know,

24     unsecured, what's a priority, and the full amount.

25              THE COURT:  Well, my understanding is that you
```

1    have an allowed claim at LBI.

2              MR. SINGH:  That's right, Your Honor.  The order

3    reflects that there's an allowed claim against LBI for a

4    general unsecured claim.

5              My understanding is Mr. Shah has also asserted a

6    priority claim against LBI that is either pending or may

7    have been allowed, but the LBI estate, and I'm happy to

8    provide him contact information for the attorneys there --

9              THE COURT:  But --

10             MR. SINGH:  -- that some of who may be in court,

11   you know, can tell him the status of those claims --

12             THE COURT:  Okay.  So --

13             MR. SINGH:  -- which we're happy to help and

14   facilitate.

15             THE COURT:  Okay.

16             MR. SHAH:  Okay.

17             THE COURT:  So there is no responsibility for

18   LBHI, so your claim --

19             MR. SHAH:  Okay.  That's fine.

20             THE COURT:  -- by LBHI for your claim, so your

21   claim against LBHI is going to be disallowed and expunged.

22             MR. SHAH:  That's fine.  That's fine.  Okay.

23             THE COURT:  You have an allowed claim against LBI,

24   it's clear -- unclear as we're sitting here today to what

25   extent it's unsecured, to what extent it's entitled to

Page 32

```
 1    priority, but as I said to Ms. Bobb, distributions on

 2    account of those claims have begun, so that's -- that's the

 3    good news, it's not -- it's not going to be 100 cents on the

 4    dollar --

 5              MR. SHAH:  Yeah.

 6              THE COURT:  -- but it's going to be a good bit

 7    more than zero.  So that's about the best we can do.  And

 8    counsel will give you some contact information for somebody

 9    to clarify which bucket your claim falls into at LBI.  All

10    right?

11              MR. SHAH:  Right, right.  Okay.

12              THE COURT:  Okay.

13              MR. SHAH:  That's fine.  Any approximation date

14    wise?  Is it going to, you know --

15              THE COURT:  They're going to be --

16              MR. SHAH:  -- is it going go priority and -- I

17    mean, you know, obviously right --

18              THE COURT:  Priority comes first.

19              MR. SHAH:  Right.

20              THE COURT:  Although to the extent that you have a

21    disputed priority claim that would need to be resolved

22    first, and then there are going to be a series of rolling

23    distributions probably for many years to come as the

24    disputed claims gets resolved and monies become available to

25    pay to the creditors.
```

1           MR. SHAH:  Okay.  So it's going to be little by

2    little.  Is that -- is that is way, you know, income --

3           THE COURT:  Yeah, that's the way -- that's the way

4    it works, because the estate can't give out -- it has to

5    reserve money for all the disputed claims, so it gives out

6    money that's in the clear on a pro rata basis to everybody

7    who has an allowed claim, and then as the disputes continue

8    to be resolved more money is available, and it's difficult

9    to predict how much, how quickly.  I think the only safe

10   prediction is that it's going to take quite a while.

11          So you should -- you should make sure if you move

12   to make sure that the distribution agent has your current

13   address, because it literally could be years.  All right?

14   So counsel will give you contact information if you'd like

15   to follow up.

16          MR. SHAH:  Okay.

17          THE COURT:  But thank you for coming in today.

18          MR. SHAH:  Okay.  All right.

19          THE COURT:  Okay?

20          MR. SHAH:  Thank you.  And just one last comment,

21   I mean the priority claim amount --

22          THE COURT:  Yes.

23          MR. SHAH:  -- is that something under review like

24   for future?  Because it's a very small amount.  I mean it

25   might be okay -- you know, might have been set like years

Page 34

1   back and now the wages because of inflation itself is going

2   up, so I'm just wondering like what -- how did somebody come

3   up with that amount?  Was it --

4          THE COURT:  That's a -- that's not before me

5   today --

6          MR. SHAH:  Okay.

7          THE COURT:  -- so I don't have the facts --

8          MR. SHAH:  Okay.

9          THE COURT:  -- but the contact person that you're

10  going to speak to --

11         MR. SHAH:  Okay.

12         THE COURT:  -- is going to be able to help you in

13  that regard, and to the extent that you don't agree with

14  what they're telling you you have the right to come back in

15  with respect to the allowance of your claim against LBI.

16         MR. SHAH:  Okay.

17         THE COURT:  All right?

18         MR. SHAH:  All right.  Thank you.

19         THE COURT:  All right, thank you for coming in

20  today.

21         MR. SINGH:  Thank you, Your Honor.

22         THE COURT:  Okay.  So with respect to the claims

23  of Ms. Chan, pursuant to the forty-first omnibus, the claims

24  of Mr. Scott, Mr. Twitchel, and -- Mr. Scott and

25  Mr. Twitchel pursuant to the one hundred and seventeenth

Page 35

1    omnibus objection the objections will be sustained and those

2    claims will be expunged and allowed as those are not claims

3    for which LBHI has responsibility.

4              MR. SINGH:  Expunged and disallowed, right, Your

5    Honor?

6              THE COURT:  Yes.

7              MR. SINGH:  I thought you said allowed.

8              THE COURT:  Did I say allowed?  No, disallowed.  I

9    swallowed the dis.

10             MR. SINGH:  Your Honor, we will submit orders.  We

11   have orders with respect to the first two uncontested motion

12   today for Your Honor, and we will submit the orders on the

13   claim after --

14             THE COURT:  Okay.

15             MR. SINGH:  -- we were pending your ruling.

16             THE COURT:  All right.

17             MR. SINGH:  So, Your Honor, I think that takes us

18   now to item number 6 on the agenda.

19             THE COURT:  Yes.

20             MR. SINGH:  And I will turn it over to -- Weil is

21   not representing the estate on this matter -- I'll turn it

22   over to conflicts counsel, Your Honor.

23             THE COURT:  Thank you.

24             MR. SINGH:  Thank you very much.

25             THE COURT:  Thank you.

```
 1              (Pause)

 2              THE COURT:  All right.  I'm about to hear from the

 3    Reilly Pozner firm?  Yes?

 4              MS. BRASWELL:  Actually Jones & Keller.

 5              THE COURT:  Oh, okay.

 6              MS. BRASWELL:  And, Your Honor, if it's the Mohr'

 7    matter that's in front of you now --

 8              THE COURT:  Yes.

 9              MS. BRASWELL:  -- that matter has been adjourned

10    until the next hearing, and notice was provided --

11              THE COURT:  I'm sorry, I --

12              MS. BRASWELL:  -- to the parties on those.

13              THE COURT:  -- let's get on the same page.  I

14    thought I was hearing the objection with respect to Arthur

15    and Joan Boor.

16              MS. BRASWELL:  Yes, that's right.

17              MR. SINGH:  Oh, I'm sorry, did I misspeak earlier?

18              MS. BRASWELL:  I thought you said Mohr, but okay,

19    yes.

20              MR. SINGH:  It's Mohr and Boor, Your Honor, so

21    there's two separate claims.

22              MS. BRASWELL:  Right, there are two separate

23    claims.  Mohr is the next hearing and you are hearing the

24    Boor's today.

25              THE COURT:  I am hearing the Boor's today.
```

Page 37

```
 1              MS. BRASWELL:  Yes.

 2              THE COURT:  Okay.

 3              MR. SINGH:  Yes.

 4              THE COURT:  Okay.

 5              MR. SINGH:  Apologies, Your Honor.

 6              THE COURT:  Okay.  All right.  Is anyone here

 7    representing the Boors -- the estate of the Boors?

 8              MR. BALSAMO:  Boors?  Yes, Your Honor.

 9              THE COURT:  Come on up.  So this is quite a sad

10    story, quite a sad story, and really eye opening in a way.

11    And let me -- let me just give you what my observations are,

12    because I believe that the relief that is being requested on

13    behalf of the estate of the Boors is rescission.

14              MR. BALSAMO:  That's correct.

15              THE COURT:  Okay.  It's a claim for rescission.

16    So there are a couple of problems with that.

17              First is rescission is we undo the contract,

18    everything gets -- everybody gets put in the place that they

19    were before, you paid me money, I give it back to you,

20    everything goes back to the way it was.  So rescission

21    unfortunately literally is not possible here because BCN at

22    the outset was a victim of these impostures, maybe not quite

23    as much as the Boors, but right up there, right?

24              MR. BALSAMO:  They were, yes.

25              THE COURT:  They were, because BCN put out
```

Page 38

1    $245,000 and then the money got paid over to Chase.  So

2    they're out the money, so no one is going to pay them back

3    the money pursuant to this motion.  So rescission just

4    really doesn't work.

5            The second thing that's been brought to our

6    attention is that the paper has since traded.  So BCN is no

7    longer the holder of the note and the mortgage and is not

8    enforcing the note and the mortgage, Carrington is -- not

9    BNC, I misspoke, not BCN, BNC, right?

10           So -- so your state court action, right, has to go

11   forward against with respect to Carrington for whatever

12   relief you can get there to save the home, undue this mess,

13   right?

14           MR. BALSAMO:  That's correct, Your Honor.

15           THE COURT:  Okay.  So the debtor says expunge the

16   claim because rescission is not possible, and then you, sir,

17   say, well don't expunge the claim because then that's going

18   to impede your ability to proceed against Carrington.

19           MR. BALSAMO:  That's our concern, Your Honor.

20           THE COURT:  Okay.

21           MR. BALSAMO:  So, if I may --

22           THE COURT:  So -- yeah.  So it seems to me that we

23   don't -- we don't -- you're not asking for money from the

24   estate.

25           MR. BALSAMO:  That's correct.

1          THE COURT:  Okay.  And I'm not sure if you're --

2   I'm not sure if you're right or wrong with respect to the

3   expungement of the claim.

4          For example, I know in other contexts that when

5   relief from the automatic stay is requested to go after

6   insurance proceeds from time to time I'm told I can't

7   expunge the claim because then the insurance carrier won't

8   defend.

9          So if what's needed here is there simply to be

10  what I would call a place holder claim in order to support

11  the relief that you're seeking against Carrington, I guess

12  my question for the debtor is, why can't we just do that?

13  In other words, what's the urgency other than the desire to

14  clean up the claims register in depriving -- in possibly

15  depriving the estate of the Boors their ability to go after

16  -- to get this undone, vis-à-vis, Carrington, and to

17  continue -- for everybody to continue to sue to find -- to

18  pursue these imposters?  I mean if this were maybe ten years

19  from now and this were the last claim on the claims register

20  I might look at it differently, but I think -- I think we

21  have a ways to go.

22          MS. BRASWELL:  Right.  And the to be clear, Your

23  Honor, you know the plan administrator's position is not

24  that we would want to impede the estate's --

25          THE COURT:  Right.

Page 40

1            MS. BRASWELL:  -- claim as against Carrington, we

2       just want to clear this claim off our books when there's no

3       basis for liability as against BNC.

4            And if it is helpful I can hand up Your Honor a

5       recent order -- and it's not too recent, it's 2013, Judge

6       Glenn entered an order under similar circumstances expunging

7       and disallowing a claim for rescission when there was no

8       basis for it and stating in the order that there was a basis

9       as against the current noteholder --

10           THE COURT:  Right.

11           MS. BRASWELL:  -- but not as against the debtor.

12           THE COURT:  Well, we're -- I agree.  I mean, I

13      agree with that that there is no claim for negligent

14      enabling of an imposter or -- there is no claim, but we just

15      have this little procedural thing going on here where I

16      can't really find a good reason at this point to expunge a

17      claim when I'm being told by an aggrieved party that it may

18      impair their ability to be made whole.

19           MS. BRASWELL:  Well, would Your Honor consider --

20      and I'm not sure if this resolves the issue that Your Honor

21      is thinking of-   but would Your Honor consider lifting the

22      stay in the state court action, giving Mr. Balsamo say 30

23      days to bring in the appropriate parties, and then at that

24      point expunging the claim as against BNC?

25           THE COURT:  Would -- does that work for you?

1              MR. BALSAMO:  The appropriate -- from what I

2    understand, Judge, when the loan was sold --

3              THE COURT:  Right.

4              MR. BALSAMO:  -- all right, the new owner of the

5    loan would move right into the state court action, because

6    there are orders in the state court action --

7              THE COURT:  Right.

8              MR. BALSAMO:  -- there's an equitable lien that's

9    already in favor of the new loan holder.

10             THE COURT:  Right.

11             MR. BALSAMO:  So basically what would satisfy me

12   is simply an order of the Court saying that the rescission

13   claim may be -- you may want to expunge it against Lehman,

14   but it's without prejudice to pursuing it in the state

15   court.

16             As long as we have language that says that it's

17   without prejudice I don't have the concern of having a

18   bankruptcy defense thrown up at me in the state court and we

19   can go forward.

20             MS. BRASWELL:  That's fine, Your Honor, although I

21   would want to be sure that the without prejudice language

22   would only apply as against the new noteholder --

23             THE COURT:  Yes.

24             MS. BRASWELL:  -- but that BNC is not --

25             THE COURT:  Yes.

Page 42

1            MS. BRASWELL:  -- having to seek --

2            MR. BALSAMO:  Right.

3            MS. BRASWELL:  -- additional dismissal --

4            THE COURT:  Absolutely.

5            MS. BRASWELL:  -- in the state court action.

6            MR. BALSAMO:  Right.  Sure, that would work.

7            THE COURT:  Okay.  Well that I would put in the

8    category of chicken soup.  So it truly is chicken soup, it's

9    not something that in any way can harm these estates, and to

10   the extent that it helps you that's fine.

11           So why don't you work together to draft

12   appropriate language and then everybody can be happy, or at

13   least not unhappy.

14           MS. BRASWELL:  And if I may, I think part of the

15   issue, we had been working together towards a stipulation

16   that would withdraw -- you know, that would withdraw the

17   proof of claim pending before Your Honor, I think part of

18   the issue is that Mr. Balsamo was having a hard time -- and

19   please correct me if I'm wrong -- but I think you were

20   having a hard time connecting with the Boor's daughter, who

21   I think is now responsible for the estate's matters.

22           MR. BALSAMO:  She's been appointed a temporary

23   administrator a number of years ago.

24           THE COURT:  Okay.

25           MR. BALSAMO:  I did speak with her in October, she

Page 43

1    said yes, you can withdraw all the claims except for the

2    rescission, we just want to get the mortgage voided.  And

3    communication is tough, it's just the nature of the beast.

4    But I believe that I'm acting in the interest of the estate,

5    because she's already told me specifically it's the mortgage

6    that's the issue, we can take out the mortgage, we just want

7    that rescinded, we're not arguing about the equitability

8    (indiscernible - 00:37:27).  So I think we can work that

9    out.

10              THE COURT:  Have these -- just by way of curiosity

11   have these individuals been located, who perpetrated this?

12              MR. BALSAMO:  Yes.  In fact --

13              THE COURT:  Have they been charged?

14              MR. BALSAMO:  -- there's been a default judgment

15   obtained by BNC against two of the three parties.

16              THE COURT:  Yes, I understand, but have they been

17   charged criminally?

18              MR. BALSAMO:  That I don't know.

19              MS. BRASWELL:  I'm not sure if there was a

20   criminal action pending.  As far as I know it was just a

21   civil action.  I don't think there was a criminal case.

22              MR. BALSAMO:  Right, that's my understanding, but

23   I came in very late so I don't -- you know.

24              THE COURT:  Okay.

25              All right.  Well, subject to be able to be in

Page 44

1    touch with Ms. Boor, it sounds like based on this record we

2    have a resolution of the pending matter, and if for some

3    reason that doesn't come together just reach out to chambers

4    and we are available to assist.

5                    MR. BALSAMO:  That's fine, Judge.

6                    THE COURT:  All right?

7                    MR. BALSAMO:  We'll talk when we get back home.

8                    MS. BRASWELL:  Sounds good.

9                    THE COURT:  Okay.

10                   MR. BALSAMO:  Thank you, Judge.

11                   MS. BRASWELL:  Thank you.

12                   THE COURT:  All right.  Thank you very much.

13                   MR. BALSAMO:  Bye bye now.

14                   MS. MARCUS:  Your Honor, that includes the LBHI

15   portion of the agenda.

16                   THE COURT:  Okay.  Thank you, Ms. Marcus.

17                   MS. MARCUS:  There are some LBI matters on.

18                   THE COURT:  Yes.

19                   MS. MARCUS:  May we be excused?

20                   THE COURT:  Yes, please, thank you.

21                   MS. MARCUS:  Thank you.

22        (Pause)

23                   THE COURT:  I'm ready when you are.  I'm sorry.

24                   MS. GRAGG:  Good morning, Your Honor.

25                   THE COURT:  Good morning.

Page 45

1               MS. GRAGG:  Meaghan Gragg of Hughes Hubbard &

2       Reed, counsel for Mr. Giddens, the SIPA Trustee.

3               We have three contested matters before the Court

4       today, which will be handled together by my colleague,

5       Stuart Mitchell.

6               We also wanted to inform the Court that we're

7       delighted to begin making distributions to unsecured

8       creditors in accordance with the Court's order, and in fact

9       tomorrow alone 2.6 billion will be distributed to unsecured

10      creditors with distributions continuing on a rolling basis.

11              THE COURT:  Terrific.  Thank you.

12              Good morning.

13              MR. MITCHELL:  Good morning, Your Honor.  Stuart

14      Mitchell of Hughes Hubbard & Reed on behalf of the LBI

15      Trustee.

16              As Ms. Gragg mentioned we have three omnibus

17      objections that we believe we can handle all at once based

18      on the responses received by the -- by the claimants.  I'm

19      not aware of whether or not the claimants are here or

20      appearing on the phone.  I didn't know if you wanted to

21      check that before we proceed, but happy to --

22              THE COURT:  Let's see.  I'm just looking to see

23      who's on the phone.  If you would give me a moment.

24         (Pause)

25              THE COURT:  Okay.  I don't see anyone on the phone

Page 46

1    register.

2              MR. MITCHELL:  Understood.  Well, I'm happy to

3    proceed with the summary of the trustee's position.

4              THE COURT:  Okay.  Please go ahead.

5              MR. MITCHELL:  Excellent.

6              So the three objections before the Court today are

7    the trustee's sixty-first omnibus objection to third-party

8    401(k) accounts -- or claims based on third-party 401(k)

9    accounts, the one hundred and thirty-fifth omnibus objection

10   to claims based on LBI brokerage accounts that held no

11   securities or cash as of the filing date, and the two

12   hundred and seventeenth omnibus objection to claims based on

13   the ownership of structured securities issued by LBHI and

14   LBI, known as pairs.

15             THE COURT:  Right.

16             MR. MITCHELL:  By these three objections the

17   trustee addressed 66 claims.  The trustee did not receive

18   any responses with respect to 62.  Those 62 claims have been

19   expunged.  The remaining four are before the Court today.  A

20   claim filed by Mr. Kahn (ph), a claim filed by Ms. Brodsky

21   (ph), and two claims filed by Mr. and Mrs. McCulla (ph),

22   those are the claims for the pairs.

23             THE COURT:  Right.

24             MR. MITCHELL:  So two of the responses that we

25   received, even though these omnibus objections were for the

1    401(k) accounts and the LBI brokerage accounts, in the

2    responses and in conversations with the claimants they

3    stress that they're -- what they're seeking is a recovery

4    for LBHI common stock.

5              THE COURT:  Right.

6              MR. MITCHELL:  So as a result three of the claims

7    before the Court are for securities issued by LBHI, and the

8    fourth, the one claim by the McCullas, is for the structured

9    securities issued by LBI.

10             THE COURT:  Okay.  So let's -- let's slow down a

11   bit and let me ask is anyone -- is Zamir Kahn (ph) present

12   or anyone representing Zamir Kahn?  All right.  How about

13   Louise Brodsky or anyone representing Louise Browski?  And

14   anyone here on behalf of John and Ann McCulla?

15             Okay.  Let the record reflect it's 10:50, no

16   response.  Okay.

17             So with respect to the Zamir Kahn claim and the

18   Louise Brodsky, you're quite right, these appear to be

19   claims related to LBHI security -- well, let me take them

20   one at a time because they are different.

21             Zamir Kahn, yes, these were LBHI securities that

22   were in an LBI held 401(k) account, there's no liability of

23   LBI for the decline in the value of LBHI's securities.

24   So --

25             MR. MITCHELL:  Yes, Your Honor.  I just -- just to

1     clarify, it was not an LBI 401(k), it was a third party.

2               THE COURT:  Third-party 401(k), yes.

3               MR. MITCHELL:  Thank you.

4               THE COURT:  So accordingly, moreover, to the

5     extent that there appears to be some notion that there

6     should be veil piercing or there should be some liability

7     across LBHI LBI lines, as I've previously said, that's not

8     the law of the case and cannot be allowed.

9               So accordingly claim number 774 of Zamir Kahn will

10    be disallowed and expunged.

11              All right.  So next with respect to the Louise

12    Brodsky claim.  That in fact shows a zero balance on LBI's

13    books, correct?

14              MR. MITCHELL:  Yes.  for the account that her

15    general creditor claim was filed it was duplicative of, yes,

16    that was the case.

17              THE COURT:  Yes.

18              MR. MITCHELL:  In her response she submitted a

19    broker statement for -- again, a third party account

20    holding --

21              THE COURT:  Right.

22              MR. MITCHELL:  -- LBHI common, so.

23              THE COURT:  Right.  So I understand that there

24    were some correspondence and a statement for Ms. Brodsky

25    from SG Cowan (ph) Securities dating to a period back in

Page 49

```
 1    1998, and it reflects ownership of 100 shares of LBHI stock.

 2    Again, not an appropriate valid basis for a claim against

 3    LBI.

 4              So claim number 3312 of Ms. Brodski will be

 5    disallowed and expunged.

 6              MR. MITCHELL:  Thank you, Your Honor.

 7              THE COURT:  Okay?

 8              All right.  With respect to the McCullas pairs

 9    claim, one of these securities was issued by LBHI, correct?

10              MR. MITCHELL:  Yes.

11              THE COURT:  So that one will be disallowed as

12    against LBI.  There's no liability for that claim.

13              I had a question though, and unfortunately they're

14    not here, which makes it a little difficult, but I had a

15    question with respect to the LBI pairs certificate, and

16    maybe you can answer it.

17              This brokerage statement that they give for the

18    period of time in which the filing occurred, for the pairs,

19    the LBI pairs -- and I'm looking at page 10 of 15, which is

20    filed as page 5 of 11 at docket 8623 -- indicates a market

21    value of $5,450.

22              MR. MITCHELL:  I see that, Your Honor.

23              THE COURT:  You see that?

24              So I guess my question is, and I understand that

25    under the terms of the security there had to be a comparison
```

Page 50

1    between the value on two different dates, and if the

2    maturity date value was higher or lower, I can't remember

3    which, there would be no recovery.  But what I'm struggling

4    with is what the market value means on this date and how

5    that all fits in together with their claim.

6              MR. MITCHELL:  Understood, Your Honor.  I'm happy

7    to address, Your Honor --

8              THE COURT:  Okay.

9              MR. MITCHELL:  -- and, you know, go forward with

10   that.

11             You're correct, the value of the pairs is

12   determined solely by the performance of the S&P on two

13   specific dates --

14             THE COURT:  Right.

15             MR. MITCHELL:  -- and with respect to LBI the

16   performance of the S&P had to be lower in order for the

17   holder to have a recovery.

18             Now with respect to the market value the reporting

19   of that --

20             THE COURT:  So what's the -- so given that the

21   filing occurred did that have an effect on the maturity

22   date?

23             MR. MITCHELL:  Yes.  Yes.

24             THE COURT:  So it accelerated the maturity date to

25   the filing date?

Page 51

1            MR. MITCHELL:  Yes, in accordance with the

2       Bankruptcy Code, yeah.

3            THE COURT:  But --

4            MR. MITCHELL:  And that was made known to the

5       potential purchasers that that could happen.

6            THE COURT:  Okay.

7            MR. MITCHELL:  Called a bankruptcy event to

8       default that it would shift everything back.

9            THE COURT:  Okay.

10           MR. MITCHELL:  With respect to the market value, I

11      mean the --

12           THE COURT:  So that's the -- so that's the first

13      answer --

14           MR. MITCHELL:  Yes.

15           THE COURT:  -- is that the maturity date was the

16      -- becomes the filing date and therefore the -- because the

17      value was not higher?

18           MR. MITCHELL:  Yes -- yeah -- no, no, the other

19      way around, because --

20           THE COURT:  Because the value -- because the value

21      was not lower --

22           MR. MITCHELL:  Right.

23           THE COURT:  -- there's no return on the security.

24           MR. MITCHELL:  Right.  Exactly.

25           THE COURT:  Okay.

Page 52

1              MR. MITCHELL:  And that's in accordance with the

2      way the maturity and maturity evaluation dates is all set in

3      the offering terms, so --

4              THE COURT:  Okay.  So that was a first set of

5      questions confirming that the maturity date became the

6      filing date of LBI.

7              MR. MITCHELL:  LBI, September 19th, yes, it was

8      pegged to that.

9              THE COURT:  Okay.  Of LBI.

10             MR. MITCHELL:  Yes.

11             THE COURT:  So not triggered by the filing of

12     LBHI.

13             MR. MITCHELL:  Yeah, they were separate.  These

14     securities really were --

15             THE COURT:  Right, but they weren't -- they

16     weren't cross defaulted or --

17             MR. MITCHELL:  Exactly.

18             THE COURT:  Okay.  So the market value -- so the

19     market -- so explain the market value point to me.

20             MR. MITCHELL:  The only -- the only way I can

21     explain the market value is that, you know, this is

22     something that maybe some temperature taking of what's out

23     there.  The holders of the pairs were not ironclad

24     restricted, I mean they weren't told you are forbidden to

25     sell these things, but there were some pretty severe

Page 53

1    restrictions.  They could go out and sell on the open

2    market, though they were cautioned in the offering materials

3    that to do so could result in losses and it's all going to

4    be keyed to, you know, what somebody is going to pay for it.

5    This doesn't create any obligation, in fact the materials

6    are very clear that the only obligation with respect to

7    payout is at maturity and that only on the conditions based

8    on the performance of the S&P.

9              So, you know, the reporting of this market value

10   doesn't generate -- I think to the point doesn't generate an

11   obligation on the part of LBI with respect to these

12   securities.  It's tied solely -- again, it's very clear,

13   there's no interest payments, there's no other payments

14   coming from LBI except on maturity.

15             THE COURT:  So the market value here is just kind

16   of a guess as to what these folks might have gotten for the

17   securities had they gone out into the secondary market as of

18   some date in September.

19             MR. MITCHELL:  If they would have.  If they would

20   have, yeah.  And of course it's everybody kind of guessing

21   as to based on how the performance of the S&P, what it's

22   going to look like, and at that point it would have been I

23   guess a little over a year and a half to the -- to the

24   stated maturity date on the -- in the documents.  September

25   2010 I think.

1          THE COURT:  I just noticed that --

2          MR. MITCHELL:  July of 2010?  Yeah.  So it

3     wouldn't be a year and a half, it would be shorter.

4          THE COURT:  Has anybody tried to explain all this

5     to the McCullas?

6          MR. MITCHELL:  I have, Your Honor.  I've spoken

7     with the McCullas on a couple different occasions and walked

8     them through the process.

9          THE COURT:  So they were aware that there was a

10    hearing today?

11         MR. MITCHELL:  They were aware, yes.  Again, like

12    said, I've spoken with them on a couple of occasions.

13         THE COURT:  Well, based on your explanation today

14    it does not appear that LBI would be liable for the market

15    value that's reflected on the statements or any market value

16    that would be determined, and based on your explanation of

17    how the maturity worked on this instrument it doesn't appear

18    that the MuCullas are entitled to any pay out by LBI with

19    respect to the security.

20         So therefore the claim will be disallowed and

21    expunged.

22         MR. MITCHELL:  Thank you, Your Honor.

23         THE COURT:  All right?

24         MR. MITCHELL:  We have orders that we'll hand to

25    your clerk after this --

1              THE COURT:  Very good.

2              MR. MITCHELL:  -- in accordance with those

3     decisions.

4              THE COURT:  Okay.  Thank you so much.

5              MR. MITCHELL:  Thank you very much.

6              Anyone else here to be heard on a Lehman Brothers

7     matter?  Thank you.

8         (Whereupon these proceedings were concluded at 10:59

9     AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 56

1                              I N D E X

2

3                                RULINGS

4                                        Page        Line

5    Doc# 45296 Motion to Approve Compromise:

6    Motion Pursuant to Rule 9010 of the Federal

7    Rules of Bankruptcy Procedure and Section

8    105(a) of the Bankruptcy Code for Approval

9    of Settlement Agreement Between Lehman

10   Brothers Special Financing Inc. and the Bank

11   of New York Mellon Trust Company, National

12   Association, as Trustee, Relating to MKP Vela

13   CBO Credit Default Swap Agreement           12        25

14

15   Doc# 46073 Motion for Authorization for Lehman

16   Brothers Special Financing Inc. and Lehman

17   Brothers Commercial Corporation to Invest

18   Disputed Claims Reserves for Claim Numbers

19   66455 and 66476 Pursuant to Section 8.4 of the

20   Modified Third Amended Joint Chapter 11 Plan

21   of Lehman Brothers Holdings Inc. and its

22   Affiliated Debtors filed by Jacqueline Marcus

23   on behalf of Lehman Brothers Holdings Inc.    20        15

24

25

Page 57

1    Doc# 11306 Debtors' Forty-First Omnibus

2    Objection to Claims (Late-Filed Claims) filed

3    by Shai Waisman on behalf of Lehman Brothers

4    Holdings Inc.                                    35         9

5

6    Doc# 15363 Debtors' One Hundred Seventeenth

7    Omnibus Objection to Claims (No Liability

8    Non-Debtor Employee Claims) filed by Shai

9    Waisman on behalf of Lehman Brothers Holdings

10   Inc.                                             35         9

11

12   Doc# 40292 Objection to Proof of Claim No.

13   33325 Filed by Arthur A. Boor and Joan Boor

14   filed by Michael A. Rollins on behalf Lehman

15   Brothers Holdings Inc.                           44         1

16

17   Adversary proceeding: 08-01420-scc Lehman

18   Brothers Inc.  Doc# 6130 Trustee's Sixty-First

19   Omnibus Objection to General Creditor Claims

20   (No Liability Claims) filed by Christopher K.

21   Kiplok on behalf of James W. Giddens, as

22   Trustee for the SIPA Liquidation of Lehman

23   Brothers Inc.                                    48        10

24

25

Page 58

1    Adversary proceeding: 08-01420-scc Lehman

2    Brothers Inc.  Doc# 7185 Trustee's One Hundred

3    Thirty-Fifth Omnibus Objection to General

4    Creditor Claims (No Liability Claims) filed

5    by Christopher K. Kiplok on behalf of James W.

6    Giddens, as Trustee for the SIPA Liquidation

7    of Lehman Brothers Inc.                    49        5

8

9    Adversary proceeding: 08-01420-scc Lehman

10   Brothers Inc.  Doc# 8467 Trustee's Two Hundred

11   Seventeenth Omnibus Objection to General

12   Creditor Claims (No Liability Claims) filed

13   by Christopher K. Kiplok on behalf of James W.

14   Giddens, as Trustee for the SIPA Liquidation  49      12

15   of Lehman Brothers Inc.                    54        14

16

17

18

19

20

21

22

23

24

25

Page 59

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn South
                          Digitally signed by Dawn South
                          DN: cn=Dawn South, o, ou,
                          email=digital1@veritext.com,
                          c=US
                          Date: 2014.09.10 11:42:01 -04'00'
     _____

7    Dawn South

     AAERT Certified Electronic Transcriber CET**D-408

8

9    Veritext

10   330 Old Country Road

11   Suite 300

12   Mineola, NY 11501

13

14   Date:  September 10, 2014

15

16

17

18

19

20

21

22

23

24

25