Hearing Date: October 7, 2014 at 10:00 a.m (EST)

Gary Gwilliam (Bar No. 33430)
Randall E. Strauss (Bar No. 168363)
**GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER**
1999 Harrison Street, Suite 1600
Oakland, California 94612-3528
Telephone: (510) 832-5411
Fax: (510) 832-1918
Email: GGwilliam@giccb.com, rstrauss@giccb.com

Mark S. Bostick (Bar No. 111241)
Elizabeth Berke-Dreyfuss (Bar No. 114651)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mbostick@wendel.com
       edreyfuss@wendel.com

Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |

**CLAIMANTS' SYLVIA VEGA-SUTFIN, MICHELLE SEYMOUR, CHERYL MCNEIL, LINDA HOWARD-JAMES, ISABEL GUAJARDO AND DENISE COLOMBO REPLY BRIEF IN SUPPORT OF MOTION <u>FOR RELIEF FROM STAY AND INJUNCTION PROVIDED UNDER PLAN</u>**

003336.0013\3695310.1

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

    Claimants Have Not Circumvented The Courts Rules, Nor Violated The Automatic Stay, And Have Established Their Burden For Granting Relief From Stay ...................................4

    Based On The Relevant *Sonnax* Factors, Relief From Stay Is Warranted ........................................5

        (i)      Whether Relief Would Result in Partial or Complete Relief.....................................5

        (ii)     Lack of Connection or Interference with the Bankruptcy Case.............................7

        (iv)    Whether a Specialized Tribunal Has Been Established to Hear the Cause of Action..................................................................................................................8

        (v)     Whether the Debtor's Insurer Has Assumed Full Responsibility...........................10

        (vi)    Whether the Action Primarily Involves Third Parties ...........................................11

        (vii)   Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors ..........................................................................................................11

        (viii)  Interests Of Judicial Economy And Expeditious And Economical Resolution Of Litigation And Whether The Parties Are Ready For Trial In The Other Proceeding ........................................................................................12

        (xi)    Impact of the Stay on the Balance of the Harms ..................................................14

CONCLUSION................................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Bally Total Fitness of Greater N.Y., Inc.*,
   411 B.R. 142 (Bankr. S.D.N.Y. 2009) .................................................................... 7, 8, 9

*Barber v. Arnott (In re Arnott)*,
   512 B.R. 744 (SDNY July 11, 2014) ............................................................................ 4, 9

*Goldschmidt v. Erickson (In re Erickson)*,
   330 B.R. 346 (Bankr. D. Conn. 2005) ............................................................................. 8

*In re Bally Total Fitness of Greater N.Y. Inc.*,
   402 B.R. 616 (Bankr. S.D.N.Y. 2009) ............................................................................ 7

*In re Chatequgay Corp*,
   111 B.R. 67 (Bankr. S.D.N.Y. 1990) ............................................................................. 9

*In re International Total Services, Inc.*,
   2006 U.S. Dist. LEXIS 60989 (S.D.N.Y. 2006) ............................................................ 7

*In re Northwest Airlines Corp.*,
   2006 WL 687163 (Bankr. S.D.N.Y. 2006) .................................................................... 8

*In re Residential Capital, LLC*,
   2012 WL 3556912 (Bankr. S.D.N.Y. 2012) ........................................................... 11, 13

*In re Sonnax Indus.*,
   907 F.2d 1208 (2nd 1990) ..................................................................................... passim

*Kadlecek v. Schwank USA, Inc.*,
   486 B.R. 336 (Bankr. M.D.N.C. 2013) ...................................................................... 8, 9

**STATUTES**

28 U.S.C.
   §§ 157(b)(2)(B) .............................................................................................................. 1, 8
   § 157(b)(5) ................................................................................................................ 1, 8, 10

11 U.S.C.
   §§ 362(a)(1), (3) and (6) ..................................................................................................... 4

Hearing Date: October 7, 2014 at 10:00 a.m (EST)

TO:   THE HONORABLE SHELLY C. CHAPMAN, UNITED STATES BANKRUPTCY JUDGE:

Claimants[1] hereby submit the following Reply Brief to the Plan Administrator's Objection to Motion of Claimants Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guadjardo and Coleen Denise Colombo for Relief from Stay and Injunction Provided Under Plan ("Reply").

## PRELIMINARY STATEMENT

1.   Claimants filed their Motion premised on critical *Sonnax* factors that warranted relief to permit them liquidate their Claims in the Sacramento Superior Court Action. Contrary to the Plan Administrator's unwarranted assertions that allowing the Claimants to proceed free of the stay and Plan Injunction will be the death knell of the otherwise successful liquidation of 23 Debtors' bankruptcy estates, granting relief to the Claimants will allow Claimants to resolve their Claims against BNC and non-debtor defendants in one forum; will not interfere with the administration of the BNC bankruptcy case; will not prejudice the interests of other creditors; promotes judicial economy and is warranted based on a balance of the harms. On the other hand, if relief is **not** granted, Claimants will be forced to try their case *twice*, once in California, and once in the Bankruptcy Court, and waste judicial resources, to the detriment to the financially limited individual Claimants, who can ill afford the expense of both the bankruptcy process and state court litigation. As to the Plan Administrator's claim that BNC's estate cannot bear the administrative costs of a long trial in the Sacramento Superior Court, BNC's estate will be incurring the same administrative costs in liquidating Claimants' Claims in the Bankruptcy Court. Claimants' Claims are personal injury tort claims and this Court cannot liquidate the Claims under 28 U.S.C. §§ 157(b)(2)(B), (b)(5), and Claimants have a right to a jury trial. Claimants' Claims must be liquidated in a court, and based on the relevant *Sonnax* factors, relief from stay should be granted to allow the Claimants to proceed to liquidate their Claims to judgment in the Sacramento Superior Court Action, and bring their judgment back to the Bankruptcy Court for distribution pursuant to the Plan and Bankruptcy Code.

---

[1]  Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion for Relief from Stay and Injunction Provided Under Plan (ECF Docket No. 44848).

003336.0013\3695310.1

2. Overarching the entire Motion is the Plan Administrator's representations regarding the availability of insurance coverage under BNC's Employment Practices Liability Insurance Policy issued by XL Insurance (Bermuda) Ltd. ("Insurance Company") Policy No. BM00020483EP05A ("Policy").[2] [3] Objection, ¶¶ 15, 40, ECF Doc. No. 46398. The Plan Administrator would lead the Court to believe there is no available insurance coverage for the Claims at this time because the Retention has not been exhausted and no Insurance Company has assumed defense of the Claims. But the Plan Administrator is not disclosing to the Court that the Insurance Company specifically requested the Plan Administrator oppose the Motion. See, Declaration of Elizabeth Berke-Dreyfuss filed concurrently wherewith. The Plan Administrator has not stated there is no coverage available for the Claims, nor has the Plan Administrator stated that the Insurance Company declined coverage. Moreover, the Plan Administrator has not disclosed how much money BNC has already expended toward the $5 million Retention.[4] BNC has already incurred in defense costs from representation by Orrick Herrington & Sutcliff LLP from 2005 to approximately 2009 when the Sacramento Superior Court Action was stayed, and the Kessel Law Firm that represented BNC in the first Mediation. See, Declaration of Robert S. Shwarts, ¶ 5-6. ECF Doc. No. 46399. Moreover, there is no reason that all of the services rendered by Weil Gotshal & Manges LLP in connection with objecting to Claimants' Claims, in attending the two Mediations, and in opposing the Motion, should not be considered as part of the defense costs in defending against the Claims and should not be counted toward the Retention. For all that is known, as of the date of the hearing, BNC could have expended $4,999,999, almost the entire Retention, since the Plan Administrator failed to disclose how much of the Retention has been satisfied. Nor did the Plan Administrator submit *any* evidence in support

---

[2] The Plan Administrator raises an issue that allowing the Claimants to proceed with the Sacramento Superior Court Action is an attempt to obtain possession and control over property of the estate in violation of Bankruptcy Code § 362(a)(3), presumably because Claimants seek to recover against BNC's Policy. The entire point of the Motion is that Claimants not violate the stay by seeking relief. Equally important, liability insurance policies such as the one at issue here, are typically not property of the estate. See, *Landry v. Exxon Pipeline co.,* 260 B.R. 769 (Bankr. M.D. La. 2001).

[3] A true and correct copy of the Policy will be presented at the hearing by *in camera* inspection.

[4] See, Declaration of Scott Allen, ¶ 7 ECF Doc. No. 46400 ("[T]he Plan Administrator . . .provided XL Insurance with an update on defense costs incurred in connection with the California Action and the claims objection process. To date, BNC has not exceeded the Retention . . . ").

of its bare statement that "BNC's estate will bear the financial burden if the Claimants prevail in the California Action, through BNC's liability for the Retention," because that liability may have already been satisfied. Moreover, that statement is misleading, because BNC is liable for the Retention to obtain coverage under the Policy whether or not the Claims are prosecuted in the Sacramento Superior Court, or in this Court. Claimants anticipate that BNC will seek coverage under the Policy no matter in which court the Claims are liquidated. BNC originally estimated in its Plan that its Chapter 11 Case was a 100% full payout case, and now it is estimating a payout that is substantially less. Thus, the proceeds of the Policy are crucial in resolving these Claims, and rather than providing a basis to deny relief, the Policy provides a basis to grant relief.

3.  The Plan Administrator claims that "[i]f the California Action is permitted to proceed, due to the Retention, BNC will not have the benefit of any insurance coverage until the amount of any judgment exceeds $5 million." Objection, ¶ 22, ECF Doc. No. 46398. Similarly, the Plan Administrator claims "[a]ny amounts awarded to the Claimants and legal defense costs incurred by their counsel, up to $5 million, will be born directly by BNC's estates." Objection, ¶ 41, ECF Doc. No. 46398. Again "[l]ifting the automatic stay and the Plan Injunction in order to allow the California Action to proceed would . . . directly impact BNC's Chapter 11 Case because BNC would be required to incur the expenses of litigation and contribute towards any recovery on Claimants behalf up to the amount of the Retention." Objection, ¶ 43, ECF Doc. No. 46398. Each of those statements are somewhat misleading. BNC does not have the benefit of the Policy until the Retention[5] is satisfied. The Retention can be satisfied by a number of elements, such as fees, defense costs, damages, opposing counsels' fees, all of which are an insured's obligation to pay.[6] Therefore it would have been crucial for the Plan Administrator to disclose the defense costs and any other sums paid to date by BNC in connection with the Claimants' Claims that counted towards satisfaction of the Retention. Absent evidence of the defense costs already expended on the Retention, there is simply no evidence before the Court to conclude that granting relief from stay to

---

[5]  See, Declaration of Scott Allen, ¶ 7, ECF Doc. No.46400.

[6]  See, **Exhibit A**, Policy, pp. 5 (Defense Costs), 6 (Loss Amounts), 8 (Retention).

003336.0013\3695310.1                                   3

liquidate Claimants' Claims in the Sacramento Superior Court will deplete the BNC's cash reserves any more than liquidation of Claimants' Claims before this Court.

### Claimants Have Not Circumvented The Courts Rules, Nor Violated The Automatic Stay, And Have Established Their Burden For Granting Relief From Stay

4.     The Plan Administrator accuses the Claimants of attempting to evade the claims procedures established by this Court and "the rulings of courts in this district that hold the automatic stay applies in similar circumstances." The Plan Administrator claims that Bankruptcy Code §§ 362(a)(1), (3) and (6), and the Plan Injunction prohibit the Claimants from proceeding with the Sacramento Superior Court Action. Objection, ¶¶ 18-22, ECF Doc. No. 46398.[7] The entire reason Claimants brought the Motion was to seek modification of the automatic stay and the Plan Injunction to allow Claimants to liquidate their Claims in the Sacramento Superior Court Action.

5.     In this Circuit, "[t]burden of proof on a motion to lift or modify the automatic stay is a shifting one." *Barber v. Arnott (In re Arnott),* 512 B.R. 744, 753 (SDNY July 11, 2014)(C.J. Morris) *citing In re Sonnax Indus.,* 907 F.2d 1208, 1285 (2nd 1990). The Plan Administrator asserts that Claimants failed to meet their burden, and relief should be denied, but again, that is not the case. Based on the *Sonnax* factors as set forth in the Motion and below, Claimants have more than met their burden

---

[7] The Plan Administrator claims that in filing the Motion, Claimants violated the ADR Procedures Order (ECF Doc. No. 40923, pp 16-23). Nothing is further from the truth. Claimants requested that the Plan Administrator specify the precise provision of the Order that precluded the filing of the Motion. The provision of the Order that the Plan Administrator claim the Claimants violated in the filing of the Motion is:

> (f) Length of Mediation. The Mediation shall conclude upon request of either party and concurrence by the Mediator; provided, however, that unless otherwise agreed to by the parties and the Mediator, the Mediation shall last no longer than 120 calendar days. (ECF Doc. No. 40923, p.23).

It is Claimants' position that nothing in the ADR Procedures Order prevented Claimants from filing their Motion when they filed it, and they violated no order or rule in doing so. In any event, the Motion was originally filed on June 24, 2014, and since that time, Claimants proceeded to a second mediation in August 2014, continued the hearing on the Motion to September 9, 2014, and the Plan Administrator obtained an adjournment of an additional 30 days to the hearing date of October 7, 2014. See, ECF Doc. No. 46163. Thus, the Plan Administrator had approximately 3 1/2 months to respond to the Motion, so there was no prejudice at all to the Plan Administrator in the filing of the Motion.

and relief should be granted. As set forth in the initial Motion, the crucial *Sonnax* factors[8] are 1, 2, 4, 5, 6, 7, 10, 11 and 12.

## Based On The Relevant *Sonnax* Factors, Relief From Stay Is Warranted

### *(i)    Whether Relief Would Result in Partial or Complete Relief*

6.    Claimants sought relief under the first *Sonnax* factor, because trial in the Sacramento Superior Court Action will result in complete relief against BNC and non-debtor parties. The Plan Administrator opposes relief on the grounds that BNC could potentially be exposed to punitive damages. See, Objection, ¶ 28, ECF Doc. No. 46398. The cases cited by the Plan Administrator are inapplicable to the situation before the Court. Both the *Johns-Manville Corp.*[9] and *A. H. Robbins Co.*[10] cases dealt with whether the bankruptcy court could confirm a plan of reorganization containing an injunction enjoining the recovery of punitive damages by victims of mass torts. Here BNC (as well as all the 23 Debtors) have already confirmed their Plan on December 6, 2011, and punitive damages were not prohibited under the Plan.

---

[8]  The *Sonnax* factors are:

(i)     Whether relief would result in partial or complete resolution of issues;
(ii)    Lack of connection or interference with the bankruptcy case;
(iii)   Whether the other proceeding involves the debtor as a fiduciary;
(iv)    Whether a specialized tribunal (with necessary expertise) has been established to hear the cause of action;
(v)     Whether the debtor's insurer has assumed full responsibility for defending it;
(vi)    Whether the action primarily involves third parties;
(vii)   Whether litigation in another forum would prejudice the interests of other creditors;
(viii)  Whether the judgment claim arising from the other action is subject to equitable subordination;
(ix)    Whether movant's success in the proceeding would result in a judicial lien avoidable by the debtor;
(x)     The interests of judicial economy and expeditious and economical resolution of litigation;
(xi)    Whether the parties are ready for trial in the other proceeding; and
(xii)   Impact of the stay on the parties and the balance of the harms.
See, *In re Ice Cream Liquidation*, Inc., 281 B.R. 154, 165 (Bankr. D. Conn. 2002), *citing*, *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285-1286 (2d Cir. 1990).

[9]  68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986), *afff'd* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub. nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

[10]  89 B.R. 555, 562 (E.D. Va. 1988).

7.      Nor does *Beck Industries, Inc.*[11] bear any similarity to the case at bar.  In *Beck,* a creditor sought to sue a trustee and obtained permission of the bankruptcy court to do so, but failed to disclose to the bankruptcy court that the creditor intended to sue the trustee for substantial punitive damages.  The Court of Appeal reversed, stating that the entry of the order allowing the creditor to sue the trustee where the trustee was exposed to punitive damages was an abuse of discretion.  The situation presented here is not similar at all to *Beck* because, as described in the following paragraph, there are already mechanisms in place to deal with a potential exposure of punitive damages.

8.      The request for punitive damages is just one element of Claimants' Claims in the Sacramento Superior Court Action.  First, BNC, or any of the other non-debtor defendants, could prevail in striking the request.  Second, a jury could decline to award punitive damages.  Third, and more importantly, even if such damages were awarded as part of Claimants' judgment, at all times Claimants have stated that they must return their judgment to this Court for distribution in accordance with the Debtors' Plan and the Bankruptcy Code.  If BNC has a basis to disallow or subordinate any award of punitive damages as part of the claims distribution process, that should be the manner with which to deal with the punitive damages claim, not denial of relief from stay where the logical place to liquidate the Claims is in the Sacramento Superior Court Action.

9.      With respect to the other non-debtor defendants, since BNC retained counsel for Messrs. Pennington and Murphy,[12] the Plan Administrator knows that those parties are represented in the Sacramento Superior Court Action, and that full relief can be accorded to the Claimants.  The last non-debtor defendant, Daniel Keenan is missing, and his default would have been entered long ago but for the fact that the Sacrament Superior Court stayed the entire Action upon the commencement of the BNC bankruptcy case.  Notwithstanding the absence of Daniel Keegan, complete relief can be accorded to the Claimants, and trial in the Sacramento Superior Court will alleviate the problem of Claimants trying their case twice – once in the Bankruptcy Court against BNC and once in the Sacramento Superior Court against Messrs. Pennington and Murphy.  Thus the first *Sonnax* factor supports granting relief.

---

[11]  725 F.2d 880, 892 (2d Cir. 1984).

[12]  See, Declaration of Robert S. Shwarts, ¶ 5, ECF Doc. No. 46399.  Answers were filed on behalf of Messrs. Pennington and Murphy on December 12, 2007, in the Sacramento Superior Court Action.

### *(ii)   Lack of Connection or Interference with the Bankruptcy Case*

10.   The Plan Administrator's argument that relief should be denied because it will interfere with the Debtors' Chapter 11 cases is hyperbole at best.  First of all, while there may have been "69,000 proofs of claims filed asserting $1.3 trillion in liabilities against twenty-three Chapter 11 Entities"[13] the issue before this Court is whether granting relief to these six Claimants will interfere with BNC's Chapter 11 Case.  Claimants believe that while the Lehman Debtors confirmed a joint Plan, the 23 estates were never consolidated.[14]  The Plan Administrator asserts that there are approximately "3,300 claims, less than 5% of the claims remaining," but again, the Plan Administrator does not identify whether any of those claims – other than the Claimants' Claims – are against BNC.  The six Claimants should not be denied relief because the Plan Administrator is overburdened with administering 23 separate cases when their Claims are against only one of the Debtors, BNC and will be satisfied from the assets of only one Debtor, BNC.  This is not the situation where BNC is working to confirm a plan – the Debtors have already done so.  The Debtors confirmed their liquidation Plan on December 6, 2011.  This is not the situation where BNC is attempting to reorganize and emerge as an ongoing business.  The Claimants' Claims must be liquidated and the liquidation of the Claims in the Sacramento Superior Court will not interfere with BNC's Chapter 11 case where BNC has already confirmed a liquidating Plan.  See, *In re International Total Services, Inc.*, 2006 U.S. Dist. LEXIS 60989 (S.D.N.Y. 2006) (relief from stay appropriate post confirmation because no appreciable effect on debtor's estate).

11.   Nor do any of the cases cited by the Plan Administrator support denial of relief.  In *In re Bally Total Fitness of Greater N.Y. Inc.*[15] relief from stay was denied to prevent the debtor from

---

[13]   Objection, ¶ 30, ECF Doc. No. 46398.

[14]   See, Debtor's Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc., filed on September 1, 2011, p. 3, ECF Doc. No. 19629 ("The Plan does not substantially consolidate the 23 Debtors and Allowed Claims against a Debtor will be satisfied primarily from assets of that Debtor.")

[15]   402 B.R. 616 (Bankr. S.D.N.Y. 2009).

expending limited resources to defend class certification of wage and hour claims[16] where the debtor did not have insurance coverage and had not yet confirmed a plan.  Similarly, in *In re Northwest Airlines Corp.*[17] relief from stay to continue to prosecute prepetition antitrust claims was denied out of concern that similar motions would be made where similar claims were pending that would distract the debtor in circumstances when a plan had not yet been confirmed.  Here, the Plan Administrator has not pointed to any other claimants asserting claims of a similar nature that would suggest that granting relief would lead to any other motions for relief from stay to continue state court litigation, and again, the Debtors have long since confirmed their Plan.

12. The Plan Administrator contends there is no reason for Claimants to be treated any differently than other.  For purposes of the second *Sonnax* factor, the Plan Administrator "ignores" that Claimants' Claims are personal injury tort claims and that this Court is precluded from liquidating those Claims under 28 U.S.C. §§ 157(b)(2)(B), (b)(5), and Claimants have a right to a jury trial.  The bankruptcy court may grant relief from stay to continue state court litigation in the state court.  See, *Goldschmidt v. Erickson (In re Erickson)*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005).  Thus, the second *Sonnax* factor warrants granting relief.

### (iv) Whether a Specialized Tribunal Has Been Established to Hear the Cause of Action

13. There is no question that the Sacramento Superior Court is best suited to apply California law.  Where state law controls the issues to be decided in pending litigation in an alternative forum, relief from stay is warranted, because the specialized knowledge of the bankruptcy court is unnecessary. *Kadlecek v. Schwank USA, Inc.*, 486 B.R. 336, 341-342 (Bankr. M.D.N.C. 2013).

14. The Plan Administrator contends that this Court is the best court to apply the applicable law, most expeditiously, citing *Bally Total Fitness of Greater N.Y., Inc.*[18]  While the bankruptcy court in

---

[16]  As part of the wage and hour class certification, the notice sent to claimants would have provided for an opt out provision, and the court was concerned that the opt out provision would trigger the "floodgates of litigation." Id.

[17]  2006 WL 687163 (Bankr. S.D.N.Y. 2006).

[18]  411 B.R. 142, 147 (Bankr. S.D.N.Y. 2009).

*Bally Total Fitness* [19] did hold that the bankruptcy court was as well-equipped as the California state court to resolve the claimants' claims, it did so in the context of class certification to determine whether to allow a class claim. In *Bally Total Fitness,* the debtors filed their chapter 11 cases in December 2008, and in February and March 2009, the purported class claimants, between 3,000 and 5,000 present and former employees, sought class certification to file a class proof of claim and relief from stay. That is not at all similar to the facts the case before this Court. There is a world of difference between six Claimants pursuing their Claims in the state court of origin post confirmation and 5,000 claimants seeking relief from stay for claim certification three months after the debtor filed a chapter 11 case. While some bankruptcy courts have held that bankruptcy courts are well suited to applying state law,[20] the fact remains that Sacramento Superior Court can and should liquidate Claimants' claims because of the presence of non-debtor defendants. Here, the specialized knowledge of the bankruptcy court is unnecessary.[21]

15. The Sacramento Superior Court is the best tribunal to liquidate the Claimants' Claims because the Claims are personal injury tort claims. *Barber v. Arnott (In re Arnott),* 512 B.R. 744, 753-754 (Bankr. S.D.N.Y. 2014) (claims alleging discrimination in employment based on race and sex are personal injury torts and the bankruptcy courts have no power to make factual determinations regarding those claims). The Plan Administrator claims that this Court has the jurisdiction to determine whether a personal injury tort claim has been stated as a matter of law. Objection, ¶ 37, ECF Doc. No. 46398. Claimants do not dispute that statement of the law. However, Claimants do dispute, and the Plan Administrator cites absolutely no authority for its bold statement that the Claimants must establish the *validity*[22] of their Claims before they are permitted to proceed to liquidate their Claims in the Sacramento Superior Court Action. At most, this Court has the jurisdiction to determine whether a legal basis for the claim exists. See, *In re Chatequgay Corp,* 111 B.R. 67, 76-77 (Bankr. S.D.N.Y. 1990) ("[l]ogic dictates that a bankruptcy court would not be deprived of jurisdiction to determine, whether, as a threshold matter, any claim, including a personal injury tort . . . . is barred by (i) an applicable bar date for filing claims in

---

[19] Id.

[20] *Bally Total Fitness of Greater N.Y., Inc*., 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009).

[21] *Kadlecek v. Schwank USA, Inc.*, 486 B.R. 336, 341-342 (Bankr. M.D.N.C. 2013).

[22] Objection, ¶ 38, ECF Doc. No. 46398.

the proceeding; (ii) res judicata; (iii) payment; (iv) release; (v) discharge in bankruptcy; or (vi) some other basis which tends, if established, to negate the existence of a claim . . . .[¶] A bankruptcy court has the right and duty to disallow claims as a threshold matter, if no legal basis for the claim exists against the debtor . . . ."). While it is true that jurisdiction to liquidate the personal injury tort claim under 28 U.S.C. § 157(b)(5) is vested in the district court, Claimants specifically sought relief to liquidate their Claims in the Sacramento Superior Court, since that is the single location with jurisdiction over the Claimants, BNC and the majority of the non-debtor defendants, and is well-versed in the State law. Thus, the fourth *Sonnax* factor supports granting relief.

*(v)    Whether the Debtor's Insurer Has
Assumed Full Responsibility*

16.    The Plan Administrator claims that the Insurance Company has not assumed full responsibility for BNC's defense of the Claims. Claimants addressed this issue above in Paragraphs 2-3, and will not repeat that argument here, except as to state that absent full disclosure by the Plan Administrator as to the full amount that BNC had paid to date in defense costs in connection with the Sacramento Superior Court Action in connection with objecting to Claimants' Claims, in participating in the Mediation process, and in Objecting to Claimants' Motion at the specific request of the Insurance Company, the Court cannot determine whether BNC has exhausted the Retention and whether or not the Insurance Company has assumed responsibility for the defense of the Claims. More importantly, the Plan Administrator's position would lead the Court to believe that the insurance coverage is only an issue if relief is granted and Claimants liquidate their Claims in the Sacramento Superior Court Action. That is simply not the case. Irrespective of which court the Claims are liquidated in, BNC will proceed against the Policy to reap the benefit of the Policy to pay Claimants' Claims. Therefore, the existence of the Policy supports granting relief whether or not the Insurance Company has assumed full responsibility at this time. The Insurance Company did not participate in the Mediations. However, if relief from stay is granted, the Insurance Company may be compelled by the state court to participate in the Sacramento Superior Court Action. The Plan Administrator has estimated that two unliquidated unresolved general unsecured claims may adversely impact distribution to the holders of claims in the BNC estate, meaning the existence of the Policy is of crucial importance to both BNC and Claimants for the payment of

Claimants' Claims.  Thus, rather than opposing relief, BNC should be supporting relief from stay to have the Insurance Company provide coverage to pay the Claims.  Until the Plan Administrator discloses the crucial information as to the full amount of the defense costs incurred and applied to the Retention, the fifth *Sonnax* factor should be weighted in Claimants' favor, especially in light of the fact that the Insurance Company specifically requested that BNC oppose Claimants' Motion.

*(vi)    Whether the Action Primarily Involves Third Parties*

17.    The Plan Administrator asserts that relief from stay should be denied because BNC is the main target of the Sacramento Superior Court Action, citing *In re Residential Capital, LLC*.[23]  The situation presented by Claimants is nothing similar to the situation presented by *Residential Capital.*  In *Residential Capital,* 51 GMAC Mortgage and Residential Capital entitles filed Chapter 11 on May 14, 2012.  Less than one month later, on June 8, 2012, Corla Jackson, the claimant, filed a motion for relief from stay to continue her prepetition wrongful foreclosure action against GMAC Mortgage.  GMAC Mortgage was the only defendant.  Not surprisingly, the bankruptcy court found that lifting the stay was not warranted given many creditors would assert similar claims for wrongful foreclosure throughout the United States, which would hamper the debtors' ability to reorganize in a case that was just a month old.  The bankruptcy court found that the claimant, who was still in possession of the real property, could still assert all of her defenses, in the bankruptcy court.  That is not the situation here, where as far as Claimants are aware, they are the only personal injury tort claimants in the BNC estate, and unlike the debtor in *Residential Capital*, BNC is not the only defendant in the Sacramento Superior Court Action, and the Debtors confirmed a liquidating Plan almost three years ago.  Thus, the sixth *Sonnax* factor supports granting relief.

*(vii)   Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors*

18.    The Plan Administrator claims that lifting the stay and allowing the Claimants to liquidate their Claims in the Sacramento Superior Court Action will prejudice the interests of the other creditors because it would force the creditors to bear the cost of defending the litigation Claims in California.  In

---

[23] 2012 WL 3556912 (Bankr. S.D.N.Y. 2012).

addition, the Plan Administrator contends that lifting the stay would force the it to defend the Claims before it could determine whether it was worth it to prepare a defense, suggesting that two yet unresolved unliquidated general unsecured claims that may materially affect the distribution to the holders of general unsecured claims in BNC, warrant deferring lifting the stay to some unknown time in the future. Objection, ¶ 45-46, ECF Doc. No. 46398.  As to the creditors bearing the costs of liquidating Claimants' Claims in California, the Plan Administrator deliberately ignores that at some point the BNC will have satisfied the Retention and defense costs will be paid by the Insurance Company and not born by BNC or the creditors of the estate.  Unfortunately, the Plan Administrator has not taken the opportunity to disclose how much of the Retention has been satisfied at this point.  More importantly, if the Court is concerned that the two undisclosed, unliquidated and unresolved general unsecured claims *may* or *could* materially affect the distribution to unsecured creditors in the BNC estate would warrant deferring relief to the Claimants – who have already waiting **nine years** to resolve their Claims – the Court should require the Plan Administrator to be forthright and disclose the holders of the claims and explain in precise terms why those claims may materially affect the distribution to the holders of general unsecured claims in BNC's estate such that the Claimants should be denied relief from stay.  But even if those two undisclosed claims do adversely affect the distribution to creditors of BNC, relief should still be granted to Claimants so that Claimants can liquidate their claims in the Sacramento Superior Court Action and proceed against the Policy, since the Policy may be the only possible form of payment or distribution they receive from the BNC estate.  Absent those forthright disclosures, the seventh *Sonnax* factor should be weighted in favor of granting relief to Claimants.

      ***(viii) Interests Of Judicial Economy And Expeditious***
         ***And Economical Resolution Of Litigation***
          ***And Whether The Parties Are Ready***
          ***For Trial In The Other Proceeding***

   19. The Plan Administrator contends that the Sacramento Superior Court Action was in its early stages, and that very little had transpired in the action prior to the filing of BNC's Chapter 11, claiming that few documents had been produced and the case is far from ready for trial, warranting denial of relief.  Objection, ¶ 50, ECF Doc. No. 46398.  As the Declaration of J. Gary Gwilliam attests, in the interim period between the filing of the Action in November 2005 and the filing of BNC Chapter 11, BNC

filed a motion to compel arbitration, which the Sacramento Superior Court denied, and which BNC appealed. While the denial of the motion to compel arbitration was on appeal, the Superior Court stayed all discovery. The California Court of Appeal affirmed the denial of the motion to compel arbitration, and issued the Remittitur on November 27, 2007, at which time the Sacramento Superior Court lifted the stay on discovery. The Action was unstayed and active in the Sacramento Superior Court from November 2007 to January 2009, while substantial discovery was conducted. See, Declaration of J. Gary Gwilliam, ¶ 5, ECF Doc. No. 44848-3 ("parties engaged in extensive discovery, exchanged multiple sets of interrogatories and requests for production of documents, producing over 10,000 documents"). BNC actively litigated this Action from the very inception. And, given the fact that BNC prosecuted its motion to compel, which was denied, and appealed the denial, and the denial was affirmed on appeal, the California Courts have already expended substantial judicial resources in the connection with Claimants' Claims.

20. This case is not at all similar to *In re Residential Capital LLC*.[24] In *Residential Capital*, bankruptcy court denied relief from stay because no activity had occurred in the claimants' prepetition state court action other than a motion to dismiss, and the motion for relief from stay was filed within a month of the filing of debtors' 51 cases, and the court was concerned that the litigation would distract the debtors from reorganization. Here, on the other hand, BNC and the other Lehman debtors already confirmed a liquidating Plan in 2011 and the same concerns of disruption or distance from trial are not germane.

21. The Plan Administrator contends that the Claims will be more expeditiously resolved in this Court based on the uniform bankruptcy claims process for no other reason than the Plan Administrator believes the Claims are inflated and requests punitive damages. Objection, ¶ 54, ECF Doc. No. 46398. It is for the ultimate trier of fact to decide the monetary value of the Claims, not the Plan Administrator. Whether Claimants' Claims are liquidated in the Sacramento Superior Court or in this Court, BNC will be drafting the same motions for summary judgment, be preparing the same oral arguments, preparing the same written discovery, and taking the same depositions, and engaging the same expert witnesses and

---

[24] 2012 WL 3556912 (Bankr. SDNY 2012)

preparing for and conducting a trial. Thus, the seventh *Sonnax* factor supports granting relief to Claimants.

### (xi) Impact of the Stay on the Balance of the Harms

22. The Plan Administrator seeks to deny Claimants relief from stay in the BNC cases, not based on the impact on that estate but on the alleged impact of all twenty-three Lehman debtors, claiming that granting relief will "serve only to hinder and delay the ultimate conclusion of the Chapter 11 Cases." Objection, ¶ 56, ECF Doc. No. 46398. Such broad unsupported statements cannot be sufficient to deny relief without any specific identification of what the impact or harm of granting relief will be to the BNC estate. The Plan Administrator claims that the additional costs attendant of a trial in the Sacramento Superior Court will needlessly increase the administrative costs, to the detriment of general unsecured creditors. But again, the Plan Administrator again ignores the impact of the Policy; although the Plan Administrator has not disclosed how much of the Retention has been met, BNC will satisfy the Retention, and at that point any costs of litigation will not be born by the Debtors, or their estate.

23. The Plan administrator dismisses out of hand the impact of the Claimants poor financial situation. The Claimants are middle class, middle-aged women who cannot afford the financial burden of attending a trial in New York City. Some of the Claimants are on disability, and some are unemployed. Others, while employed, do not have sufficient time offer to travel to New York City for a long trial. See, Declaration of J. Gary Gwilliam, ¶¶ 10-15, ECF Doc. No. 44848-3. The balance of the harm tips in favor of granting relief to the Claimants since they are ones that can ill-afford a trial in New York City and BNC and its affiliates have the potential for insurance coverage to cover their costs when the Retention is met. Thus, the ninth *Sonnax* factor tips in favor of granting relief.

## **CONCLUSION**

For all the foregoing reasons, based on a balancing of the *Sonnax* factors, cause exists to lift the automatic stay and the Plan Injunction to permit the Claimants to liquidate their Claims in the Sacramento Superior Court Action to judgment and return to the Bankruptcy Court for distribution in accordance with the Debtors' Plan and Bankruptcy Code.

DATED October 3, 2014	GWILLIAM, IVARY, CHIOSSO,
CAVALLI & BREWER

By: /s/ *Gary Gwilliam*
Gary Gwilliam
Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo

DATED: October 3, 2014	WENDEL, ROSEN, BLACK & DEAN LLP

By: /s/ *Mark S. Bostick*
Mark S. Bostick
Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo