UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SMITH ROCKE LTD.                                :
                          Plaintiff,   :
                                          :
        -against-                :   12 Cv. 7316 (LGS)
                                          :
REPUBLICA BLIVIARIANA DE VENEZUELA, :   ORDER & OPINION
*et al.*                                          :
                        Defendants.  :
                                          :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Smith Rocke Ltd. ("Smith Rocke") brings this action for damages arising out of the Republic of Venezuela's expropriation of a Venezuelan company and certain of its assets comprising the so-called "Lehman Notes" allegedly worth more than $410 million. The payment of the Lehman Notes is being administered by the U.S. Bankruptcy Court in the Southern District of New York. Plaintiff is the alleged successor in interest to the previous owner of the Lehman Notes and asserts claims of conversion and expropriation against the Republic of Venezuela ("Venezuela") and related defendants. Defendants move to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. Defendants' motions to dismiss are granted.

**I. Facts and Allegations**

      While typically a Court does not wade into the facts or merits on a motion to dismiss and accepts well-pleaded allegations as true, the inquiry is different in a challenge to subject matter jurisdiction and personal jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). "In the context of a Rule 12(b)(1) challenge to jurisdiction under the FSIA . . . the district court 'must look at the substance of the allegations' to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies." *Robinson v. Gov't of*

*Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993)). In doing so, the court "must review the pleadings and any evidence before it." *Cargill Int'l*, 991 F.2d at 1019. In evaluating the applicability of the FSIA, "a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—resolve disputed issues of fact, with the defendant foreign sovereign shouldering the burden of persuasion." *Robinson*, 269 F.3d at 141. "Sovereign immunity under the FSIA is immunity from suit, not just from liability." *Id*. (internal quotation marks omitted).

The following facts are taken from the Complaint and the parties' submissions on this motion. They are undisputed unless otherwise noted. Plaintiff Smith Rocke is a British Virgin Islands corporation whose shareholders are Venezuelan nationals. Defendant Venezuela is a foreign sovereign nation. Defendant Fondo de Garantia de Depositos y Proteccion Bancaria ("FOGADE") is the Venezuelan equivalent to the Federal Deposit Insurance Corporation. *See FOGADE v. ENB Revocable Trust*, 263 F.3d 1274 (11th Cir. 2001). Defendant Superintendencia de las Instituciones del Sector Bancario ("SUDEBAN") is a governmental regulatory body that supervises Venezuelan banks and other financial institutions. Defendants Rafael Jose Moreno Franco and Rosa Maria Jimenez Urrutia (the "Individual Defendants") are Venezuelan citizens appointed by SUDEBAN to act as administrators of Credican, C.A. ("Credican"), the Venezuelan company that Plaintiff alleges was wrongfully expropriated by Defendants.

Smith Rocke's claims arise out of FOGADGE's intervention of Banco Canarias and Credican, both financial institutions. In November 2009, FOGADE intervened Banco

Canarias—that is, placed it into receivership—then ordered its liquidation.[1] On August 30, 2010, SUDEBAN published Resolution No. 468-10, which led to the intervention of Credican, on the basis that it was a related institution to Banco Canarias because Credican's shares allegedly were owned by the shareholders of Banco Canarias. On February 15, 2011, SUDEBAN published Resolution No. 058-11, which appointed administrators to exercise all of the powers and authority of Credican's shareholders, and to take all of Credican's property, allegedly without actually taking ownership or control of the shares.

Plaintiff claims that the intervention of Credican was without justification and authority because the basis for the intervention was factually incorrect. Plaintiff alleges that in October 2009, before the intervention of Banco Canarias or Credican, the Credican shareholders sold their interest in Banco Canarias to a commercial bank named Banpro. Therefore, Plaintiff alleges, Credican and Banco Canarias were not related at the time of the intervention of Credican, and Venezuela had no basis to expropriate Credican's assets without compensation.[2]

Smith Rocke was incorporated on March 2, 2012. Smith Rocke's shareholders are Venezuelan nationals who sold their Credican shares to Smith Rocke in exchange for Smith Rocke shares. The Complaint alleges that "Smith Rocke's shareholders also owned by assignment the beneficial interest in the Lehman Notes corresponding to the shares acquired by Smith Rocke." This is interpreted to mean that former Credican shareholders who became Smith Rocke shareholders assigned to Smith Rocke whatever interest they had in the Lehman Notes. Although Plaintiff does not say in the Complaint or elsewhere when these transfers occurred,

---

1 The Complaint alleges that Venezuela intervened Banco Canarias and Credican. It appears that, more specifically, SUDEBAN decreed the intervention. While in some instances this distinction may matter, as explained in Section II, *infra*, it is ultimately not at issue here.

2 Defendants assert that SUDEBAN decreed the intervention and liquidation of Banpro on the same dates as for Banco Canarias. Thus, although the Credican intervention decree may have named the wrong related entity, the decree may not have been mistaken that Credican was related to an intervened entity.

3

presumably they could not have occurred, and Plaintiff does not allege they occurred, until after March 1, 2012, when Smith Rocke was created. Although it is unclear when Plaintiff acquired its alleged interest in the Lehman Notes, it is undisputed that Venezuela acquired its interest in the Notes before Plaintiff did, when it intervened either Banco Canarias or Credican in 2009 and 2010 respectively.

The Lehman Notes represent amounts owed by various Lehman Brothers entities. Notes 1, 2, and 3 are promissory notes issued by Lehman Brothers Treasury Co. B.V., a Dutch entity. Note 4 relates to amounts due from Lehman Brothers International (Europe), a U.K. entity, under an Agreement and Credit Support Annex. Note 5 relates to monies located in an account at Lehman Brothers Inc, the insolvent broker-dealer that was placed in a SIPA liquidation in September 2008. LBHI, the holding company that filed for bankruptcy in September 2008 in the Southern District of New York, guaranteed payment of the first four Lehman Notes. The claim for Note 5 is part of the parallel SIPA liquidation of Lehman Brothers Inc.

Smith Rocke alleges that before the intervention, the Credican shareholders were the beneficial owners of Credican's rights and property. It seems to be undisputed that before it was intervened, Credican owned the right to payment on Notes 1 and 2. However, it is unclear from the record whether Credican ever had any interest in Notes 3, 4 and 5. Defendants assert that the original holder of all five Lehman Notes was Banco Canarias. In November 2009, Banco Canarias filed proofs of claim regarding Notes 1 and 2 in the LBHI Bankruptcy. In December 2008, SUDEBAN approved the assignment of Notes 1 and 2 by Banco Canarias to Credican. In January, September and November 2009, Banco Canarias filed proofs of claim on account of the Lehman Notes 3, 4 and 5. On November 19, 2009, SUDEBAN intervened Banco Canarias and Banpro. On August 27, 2010, SUDEBAN intervened Credican. On May 14, 2012, two months after Plaintiff was incorporated, someone purporting to act on behalf of Credican sought to

4

transfer Notes 3, 4 and 5 from Banco Canarias, then in liquidation, to Credican, then in intervention. Based on this chronology, it appears that the successor to Credican has an undisputed interest in Notes 1 and 2. Plaintiff is not alleged to have any interest in Banco Canarias, even though some of the Smith Rocke shareholders apparently were Banco Canarias shareholders. Thus it is unclear what entity is entitled to payment on Notes 3, 4 and 5, and whether Plaintiff has any interest in that entity.

Smith Rocke asserts that, by purchasing Credican shares, Smith Rocke became a beneficial owner of Credican's property, including the Lehman Notes. In June 2012, Credican's administrators issued instructions in the LBHI Bankruptcy that all acts performed by Credican's shareholders should be disregarded on account of the intervention of Credican, in effect preventing Smith Rocke from obtaining payment on the Lehman notes. Smith Rocke seeks damages for the expropriation of the Lehman Notes.

## II. Discussion

### A. The FSIA

Congress passed the FSIA in 1976 to regulate suits against foreign states in U.S. courts "in order to free the Government from [] case-by-case diplomatic pressures, to clarify the governing standards," and to ensure that "decisions are made on purely legal grounds and under procedures that insure due process." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). "To accomplish these objectives, the [FSIA] contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities." *Id.* The FSIA "codifies, as a matter of federal law, the restrictive theory of sovereign immunity." *Id.* "A foreign state is normally immune from the jurisdiction of federal and state courts," subject to the exceptions of §§ 1605 and 1607. *Id.* Only when an exception applies will the foreign state "be liable in the same

manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Otherwise, "a foreign state is presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, (1993).

## B. Only the Expropriation Exception Applies

In this case, Plaintiff relies on two of the exceptions to immunity specified in the FSIA: the commercial activity exception in § 1605(a)(2), and the expropriation exception in § 1605(a)(3). The commercial activity exception does not apply because Venezuela's act that gives rise to the claim is the taking of the Lehman Notes through the intervention of Credican. This was a sovereign act not a commercial act, and must be analyzed under the expropriation and not the commercial exception to the FSIA.

In order to determine which, if any, exception applies, the court must look to "the act of the foreign sovereign State that serves as the basis for plaintiffs' claims." *Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006) (citing *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1109 (5th Cir.1985) (explaining that to determine the basis of a claim, a court should focus on the "gravamen of the complaint")). Plaintiff's claims are for expropriation and conversion. The gravamen here is that Defendants engaged in the unlawful taking of the Lehman Notes allegedly without authority and without compensation, in violation of international law. The taking occurred when Defendants intervened Credican.

The expropriation alleged by Smith Rocke is the predicate to any subsequent commercial activity by Defendants with regard to the Lehman Notes. "Had there been no expropriation, there would have been no properties to treat in a commercial manner." *Id.* at 587. "[S]ubsequent commercial transactions involving expropriated property do not give rise to subject matter jurisdiction over claims arising from the original expropriation," and "Federal courts have repeatedly rejected litigants' attempts to establish subject matter jurisdiction pursuant to other

6

FSIA exceptions when their claims are in essence based on disputed takings of property." *Id.*

The Court therefore analyzes the Complaint under the expropriation exception to FSIA.

**C.  The Commercial Exception Is Inapplicable**

Plaintiff argues that the Court should apply the commercial activity exception to the FSIA, because the subsequent act of pursuing litigation in the Bankruptcy Court is a commercial act. This argument is unavailing. Under 28 U.S.C. § 1605(a)(2), a foreign state shall not be immune in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Commercial conduct is determined by reference to the nature of the conduct, transaction, or act, rather than by reference to its purpose. 28 U.S.C. § 1603(d). To determine the nature of a sovereign's act, the question is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *Weltover, Inc. v Republic of Argentina*, 504 U.S. 607, 614 (1992) (internal quotation marks omitted).

As the Supreme Court stated in *Nelson v. Saudi Arabia*, the Court must begin its analysis of the application of the commercial activity exception "by identifying the particular conduct on which the [] action is 'based' for purposes of the [FSIA]." *Nelson*, 507 U.S. at 356. A claim is "based upon" the conduct, which, "if proven, would entitle a plaintiff to relief under his theory of the case." *Id.* at 357. That is, when analyzing the "nature" of the conduct at issue, the Court must look at which conduct could entitle the Plaintiff to relief.

7

None of the post-intervention commercial activity of Credican, if proven, could entitle Plaintiff to relief, and therefore the claim is not based upon commercial activity. While Plaintiff is correct that the subsequent commercial activity of an expropriated bank could be subject to the commercial activity exception, this claim is not "based" on the subsequent commercial activity. There is no claim to be made against Venezuela for pursuing rights in the bankruptcy court in and of itself. Plaintiff cites to *Baglab Ltd. v. Johnson Matthey Bankers Ltd.*, 665 F. Supp. 289, 294 (S.D.N.Y. 1987), in support of its argument, but ultimately *Baglab* leads to the opposite conclusion. If an expropriated bank, operated by a sovereign, repudiated loans in its function as an operating bank, and the creditor sought to recover for a breach of contract, the commercial activity exception would apply, as the claim would be based on the commercial activity, and relief could be granted solely upon the breach of contract. Here, by contrast, the suit arises out of the expropriation of Credican, and with it the Lehman Notes, and Plaintiff needs to prove the expropriation to entitle it to relief.

**D. Sovereign Immunity Is Not Removed Under the Expropriation Exception**

The applicable exception to sovereign immunity under the FSIA in this case is the expropriation exception. To establish this Court's jurisdiction under this exception, a plaintiff must demonstrate:

(1) that rights in property are at issue;

(2) that the property was taken;

(3) that the taking was in violation of international law; *and either*

(4)(a) that property . . . "is present in the United States in connection with a commercial activity carried on in the United States by the foreign state", *or*

8

(4)(b) that property . . . "is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."

28 U.S.C. § 1605(a)(3); *see also Garb*, 440 F.3d at 588.

### i. Rights in Property

The rights to payment under the Lehman Notes are "rights to property" under the FSIA, even though they are intangible rights. In general under international law, intangible property, including the right to payment, is considered to be "property." *Banco Nacional de Cuba v. Chemical Bank N.Y. Trust Co.*, 822 F.2d 230, 238 (2d Cir. 1987) ("[A] creditor's right to repayment is property. As defined in international law, property commonly includes intangible assets and 'any interest in property if such interest has a reasonably ascertainable value.'") (quoting Restatement of the Foreign Relations Law of the United States § 191 (1965)). Nothing in the language of the expropriation exception of the FSIA or its legislative history makes any distinction between tangible and intangible property. Both refer simply to "property." 28 U.S.C. § 1605(a)(3); H.R. Rep. No. 94-1487, at 19-20, *reprinted in* 1976 U.S.C.C.A.N. 6604.

The Second Circuit expressly declined to address this issue. *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) ("We need not determine whether intangible contract rights are property under the statute, however, because defendants-appellees' actions did not constitute a taking within the meaning of the FSIA"). In the absence of binding precedent, this Court finds persuasive and follows the D.C. Circuit and the 7th Circuit, which held that the exception to sovereign immunity for the taking of property in violation of international law applies to intangible, as well as tangible, property. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 673 (7th Cir. 2012) ("'rights in property' element of the FSIA's expropriation exception applies to both tangible and intangible property"); *Nemariam v. Federal*

9

*Democratic Republic of Ethiopia*, 491 F.3d 470, 480 (D.C. Cir. 2007) (expropriation exception applies to appellants' bank accounts).

Defendants cite older cases in this Court holding that the FSIA expropriation exception applies only to tangible property. *See Daventree Ltd*. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 749 (S.D.N.Y. 2004); *Hirsh v. State of Israel*, 962 F.Supp. 377, 383 (S.D.N.Y. 1997); *Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico, S.A.*, 528 F. Supp. 1337, 1346-47 (S.D.N.Y. 1982). The reasoning in *Canadian Overseas*, which seems to underlie these holdings, rests on a misinterpretation of the legislative history in concluding that the reach of the expropriation exception to sovereign immunity under § 1605(a)(3) should not exceed the similar exception to the act of state doctrine. 528 F. Supp. at 1346-47. However, the legislative history to § 1605(a)(3) suggests the opposite, that the doctrines are to be applied and interpreted independently. *See* H.R. Rep. No. 94-1487, at 20, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6618 ("[S]ince . . . section [1605(a)(3)] deals solely with issues of immunity, it in no way affects existing law on the extent to which, if at all, the 'act of state' doctrine may be applicable"). That interpretation of the legislative history was the basis for the D.C. Circuit's and the 7th Circuit's holding that § 1605(a)(3) applies to intangible property. *See Nemariam*, 491 F.3d at 479 ("[T]he House Report indicates that the Congress intended that the expropriation exception to foreign sovereign immunity operate independently from the Hickenlooper Amendment's exception to the act of state doctrine."); *Abelesz*, 692 F.3d at 672 (following *Nemariam*).

This Court does not adopt the distinction between tangible and intangible property for purposes of the expropriation exception. At issue in this case is the right to payment under the Lehman Notes. These are "rights in property" for purposes of § 1605(a)(3). Consequently, in this case, the first element to qualify for the expropriation exception to sovereign immunity is satisfied.

### ii. Rights in Property Were Taken

The second element under the expropriation exception also is satisfied because the property at issue was "taken." The FSIA does not define the term "taken." Legislative history makes clear that the phrase refers to "'the nationalization or expropriation of property.'" *Zappia*, 215 F.3d at 251 (2d Cir. 2000) (quoting H.R. Rep. No. 94-1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6618). Here, any property that is at issue was nationalized by Venezuela or its instrumentalities, and thus was "taken" for purposes of the FSIA.

### iii. "In Violation of International Law" -- No Violation When the Property Was Taken From a Venezuelan National

The third element of the expropriation exception, that the property was taken "in violation of international law," is not satisfied in this case.[3] A violation of international law first requires that the state take the property of a national of *another* state, and second that the taking not be for a public purpose, or that the taking be discriminatory, or not accompanied by provision for just compensation. *See* Restatement (Third) of Foreign Relations Law § 712 (1987). It is widely accepted that the taking of property by a state from its own nationals does not violate international law. *See Konowaloff v. Metro. Museum of Art*, 10 CIV. 9126, 2011 WL 4430856, at *8 (S.D.N.Y. Sept. 22, 2011) ("[I]t is not contrary to international law for a sovereign to take the property of its own nationals."), *aff'd*, 702 F.3d 140 (2d Cir. 2012); *F. Palicio y Compania, S.A. v. Brush*, 256 F. Supp. 481, 487 (S.D.N.Y. 1966) ("confiscations by a state of the property of its own nationals, no matter how flagrant and regardless of whether compensation has been provided, do not constitute violations of international law"); *de Sanchez v. Banco Central de*

---

3 Because the Court holds that there was no violation of international law and therefore no U.S. court jurisdiction exists over this dispute, it need not resolve inessential factual issues – for example, what interest Plaintiff has in the Lehman Notes, particularly notes 3, 4 and 5; and when Plaintiff acquired whatever interest it may have in the Notes. For purposes of this motion, the Court assumes that Plaintiff has some interest in the Lehman Notes, which it obtained as successor in interest to Credican, and after Credican was intervened by the Venezuelan government.

*Nicaragua*, 770 F.2d 1385, 1397 (5th Cir. 1985) ("At present, the taking by a state of its national's property does not contravene the international law of minimum human rights."); *Abelesz*, 692 F.3d at 674 (collecting cases and holding that, if only issue at stake were taking of domestic property, then the court would find no violation of international law); *FOGADE*, 263 F.3d at 1294; *see also Dreyfus v. Von Finck,* 534 F.2d 24, 31("[V]iolations of international law do not occur when the aggrieved parties are nationals of the acting state").[4]

Here, the property at issue consists of the Lehman Notes. They were "taken" by the Venezuelan government when it intervened Credican, which owned the Notes at the time of Venezuela's intervention. Credican is a Venezuelan corporation owned entirely by Venezuelan shareholders. The taking did not violate international law because Venezuela was taking only from its own citizens. In a factually similar case, the 11th Circuit held that "Venezuela's act of intervening Corpofin, a Venezuelan corporation owned entirely by Venezuelan nationals, does not violate international law." *FOGADE*, 263 F.3d at 1294 (applying the act of state doctrine to affirmative defenses and not construing the FSIA). Without a violation of international law, the expropriation exception to sovereign immunity under the FSIA does not apply, and this court lacks subject matter jurisdiction over Plaintiff's claims. Smith Rocke argues that Defendants violated international law by taking property that belongs to a foreign national, Smith Rocke, a British Virgin Islands company. (Pl. Resp. at 19-20). This argument is incorrect. Even though Smith Rocke alleges that it is now the rightful owner of the Lehman Notes or their proceeds, it is undisputed that Credican owned the Notes at the time they were seized by the Venezuelan

---

[4] The Second Circuit limited this broad statement in *Dreyfus* when it held that international law prohibits the torture of a sovereign state's own citizens. *Filartiga v. Pena-Irala,* 630 F.2d 876, 884 (2d Cir. 1980). It also seemed to confirm and clarify the vitality of *Dreyfus* as applied to actions that do not contravene the international law of human rights in *Verlinden B.V. v. Central Bank of Nigeria,* 647 F.2d 320, 325 n.16 (2d Cir. 1981) ("commercial violations, such as those here alleged, do not constitute breaches of international law"), *rev'd on other grounds,* 461 U.S. 480 (1983). *See generally de Sanchez,* 770 F.2d at 1396 n.14.

12

government.  Because the taking at issue was by the government of Venezuela from a Venezuelan corporation and indirectly its Venezuelan shareholders, there was no violation of international law even if the property subsequently made its way into the hands of a non-Venezuelan entity.[5]

### iii.  "In Violation of International Law"  -- Situs of the Property is Not Determinative

As an alternative argument, Smith Rocke implies that Defendants violated international law by taking property located in the United States, even though the property belonged to Venezuelan nationals, citing *de Sanchez .v Banco Central de Nicaragua*, 770 F.2d 1385, 1400 (5th Cir. 1985) (Rubin, J. concurring) ("International law forbids, and certainly does not condone, a nation's taking of private property situated in another nation simply because the owner of the property is a citizen of the rapacious nation.").  This proposition also is incorrect, contrary to the overwhelming weight of authority in this District and elsewhere cited above, and even contrary to the majority opinion in the case Plaintiff relies upon.  *See de Sanchez*, 770 F.2d at 1397.

In *de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385 (5th Cir. 1985), the Court held that the sovereign defendant was immune under the FSIA and that the expropriation exception did not apply, because there was no violation of international law where the suit arose from a sovereign state's taking of property from its own citizen.  *Id*. at 1395.  At issue was a check drawn on the account of Nicaragua's Central Bank at a bank in New Orleans, Louisiana, and payable to Mrs. Sanchez, a Nicaraguan national.  *Id.* at 1388.  The U.S. Bank refused to cash the check on orders of representatives of the new Sandinista government allegedly to preserve foreign exchange reserves.  *Id*. at 1388, 1391.  Mrs. Sanchez sought to recover the proceeds of

---

5  Because the identity of the current holder of the expropriated property is legally irrelevant, there is no need to address the fact that Smith Rocke is owned entirely by Venezuelan nationals, many or all of whom were shareholders in Credican, the expropriated corporation, and who formed Smith Rocke, a British Virgin Islands company, in order to hide their identities from the government of Venezuela.

13

the check in the U.S. District Court. *Id.* The Fifth Circuit affirmed the District Court's dismissal of the case, and the majority expressly rejected Mrs. Sanchez's argument that Nicaragua had violated international law, notwithstanding her Nicaraguan nationality, because her injury allegedly occurred in the U.S. where the check was made payable. *Id.* at 1396 n.14 ("We decide here . . . that takings of intangible property rights . . . do not violate international law where the injured party is a national of the acting state, regardless of the property's location"); *see also Konowaloff*, 2011 WL 4430856 at *8 (holding no violation of international law even where tangible property was now located in the United States).

Smith Rocke cites a 1966 case from this District and the dissent from the *Sabbatino* case for the proposition that the critical distinction is that the property at issue here is located in the United States rather than in Venezuela. *See F. Palicio y Compania, S.A.*, 256 F. Supp. at 487-88 ([O]ur courts will not give 'extraterritorial effect' to a confiscatory decree of a foreign state, even where directed against its own nationals"); *Sabbatino*, 376 U.S. at 447 (White, J. dissenting). This argument, however, is inapposite. Although the situs of the property may be a determinative fact under the act of state doctrine, which these cases were applying, it does not have the same central role for analysis under the FSIA.

First, the *Palicio* case, upon which Smith Rocke relies, restates the proposition discussed above that "confiscations by a state of the property of its own nationals, no matter how flagrant and regardless of whether compensation has been provided, do not constitute violations of international law." 256 F. Supp. at 487. Thus it supports, rather than undermines, the conclusion that there was no violation of international law here and therefore no exception to sovereign immunity under § 1605(a)(3).

Second, *Palicio* does not address sovereign immunity, the Court's subject matter and personal jurisdiction, or the FSIA, which was enacted a decade after the decision, all of which

are at issue here. *Palicio* concerns the act of state doctrine, an affirmative defense that prevents U.S. courts from examining the validity of a sovereign's taking of property *within its own territory*. *Id.* at 487-88. For the act of state doctrine, a fundamental question is the situs of the property taken. However, that is not the question posed by the FSIA.

The legislative history to § 1605(3) of the FSIA makes clear, as discussed above, that its jurisprudence is distinct from that of the act of state doctrine. Although there are similarities, the two concepts are distinct. The critical and decisive factor for the act of state doctrine as originally conceived was the situs of the property. The Supreme Court held in 1964 that, under the act of state doctrine, U.S. courts shall not examine the validity of a sovereign's taking of property within its own territory, even if the complaint alleges a violation of international law. *Sabbatino*, 276 U.S. at 427. That holding was soon limited by Congress in the Second Hickenlooper Amendment, which created an exception for takings in violation of international law—even takings within the sovereign's own territory. 22 U.S.C. § 2370(e)(2). The act of state doctrine assumes, as a matter of law in U.S. courts, the validity of a sovereign expropriation unless (1) the taking is outside the sovereign's own territory, *or* (2) is in violation of international law. If either of these conditions applies, there is no presumption of validity. *See generally FOGADE*, 263 F.3d at 1293-1296. Because the act of state doctrine is an affirmative defense, it applies and is relevant only after the court's jurisdiction over the sovereign defendant has been established under the FSIA. *See Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004).

In contrast, the FSIA by its terms prohibits U.S. courts from exercising both subject matter and personal jurisdiction over a foreign state regarding the state's expropriation of property, unless the taking (1) has a certain prescribed nexus to commercial activity in the United States, *and* (2) is in violation of international law. 28 U.S.C. § 1605(a)(3). Without a violation

15

of international law—i.e., unless the expropriation is from a national of a foreign state as discussed above—there is no jurisdiction.

In a footnote, *de Sanchez* made this distinction explicit. It explained that the act of state doctrine , unlike the FSIA, contains a "territorial limitation," in that the act of state doctrine assumes the validity of takings *only within* the sovereign's own territory (and after the Hickenlooper Amendment only those that are consistent with international law). The expropriation exception to the FSIA contains no similar territorial limitation, but instead requires a violation of international law.

> The FSIA does not contain such a territorial limitation. . . . Section 1605(a)(3) is analogous not to the territorial limitation to the act of state doctrine, but rather to the Hickenlooper Exception [which removes takings in violation of international law from the protections of the act of state doctrine]. Under § 1605(a)(3), we are concerned with the validity of an act under international law, not with its consistency with United States public policy. While takings of property without compensation violate American public policy regardless of the nationality of the property owner, they violate international law only where the property owner is an alien.

*de Sanchez*, 770 F.2d at 1397 n.17.

Put simply, cases defining the territorial scope of the act of state doctrine are inapposite to the FSIA analysis here except to the extent that they enunciate what is or is not a violation of international law, a concept common to two distinct bodies of law: the act of state doctrine and sovereign immunity. Because the taking at issue here was by the government of Venezuela from a Venezuelan corporation and indirectly its Venezuelan shareholders, there was no violation of international law. Without a violation of international law, the expropriation exception to sovereign immunity under the FSIA by its terms does not apply, and this court lacks subject

16

matter jurisdiction over Plaintiff's claims and personal jurisdiction over the sovereign defendants.[6]

### iv. Because There Is No Violation of International Law, A Claim Cannot Be Maintained Against Any Defendant

While the parties argued extensively about the status of SUDEBAN and FOGADE under the FSIA as agencies or instrumentalities of a foreign state, ultimately their status is irrelevant. The FSIA's presumptive immunity, by definition, applies to foreign states and their agencies or instrumentalities, and no exception applies to remove that presumptive immunity. Under the FSIA a foreign state "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a); *accord Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004).

Many cases in this area of law are almost entirely concerned with determining whether a particular body is an agency or instrumentality of a foreign state or a foreign state itself, because some rules of the FSIA apply differently to each. A state owned bank acting in its commercial role as a lender is an agency or instrumentality of a foreign state, whereas an air force is the foreign state itself. *See, e.g.*, *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 414 (2d Cir. 1983) (holding that a state owned bank is "indisputably" an agency or instrumentality as defined under the FSIA); *Garb*, 440 F.3d at 590 (discussing whether the Polish Ministry of Treasury was a foreign state or an agency or instrumentality of the foreign state); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994) (determining that the Bolivian Air Force was the foreign state of Bolivia and not an agency or instrumentality).

---

[6] It is unnecessary to reach the Defendants' invocation of the act of state doctrine affirmative defense. Without jurisdiction, this court has no need to address the difficult question of the situs of the taking where a Venezuelan corporation, owned by Venezuelan shareholders, was expropriated in Venezuela by the Venezuelan government, but the asset at issue was a claim against a U.S. corporation. *Compare generally*, *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666 (2d Cir. 1988); *and Republic of Iraq v. First Nat'l City Bank*, 353 F. 2d 47 (2d Cir. 1965), *with FOGADE*, 263 F.3d at 1295; *and F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 286 (7th Cir. 1989).

17

This is not a case in which the distinction matters. The requirement that there be a violation of international law under the expropriation exception applies equally to foreign states and agencies or instrumentalities of the foreign state. *See* 28 U.S.C. § 1605(a)(3); *see also* Section II.D *supra*. Without a violation of international law, the expropriation exception does not apply to the foreign state or its agencies and instrumentalities. It does not matter whether FOGADE or SUDEBAN are considered the sovereign nation of Venezuela, like the air force in *Transaereo,* or as agencies or instrumentalities of Venezuela, like the State bank in *Mach Co.*, because all are immune from suit as discussed in Section II.D.iii, *supra*. The expropriation exception cannot apply to foreign states or their agencies or instrumentalities where there is no violation of international law.

The Individual Defendants were sued in their official capacity and not in their personal capacity, and the real party in interest is Venezuela. Plaintiff admits this in its Memorandum in Opposition, "This suit is plainly against the foreign sovereign, including its organs, subdivisions and agents, and the Court should treat it as such." (Mem. Opp. at 15). In *Samantar v. Yousef*, 560 U.S. 305 (2010) the Supreme Court addressed individual liability under the FSIA. While holding that Congress did not intend to include individual officials in the definition of foreign state under the FSIA, the Court was careful to ensure that litigants could not avoid the FSIA through "artful pleading." *Samantar v. Yousef*, 560 U.S. 305, 324 (2010). In *Samantar*, the plaintiff sued defendant in "his personal capacity" and sought damages "from his [] pockets." *Id.* The Supreme Court noted that where an official is sued in his official capacity, and where the action is clearly against the foreign state itself as the real party in interest, the case may be treated as an action "against the foreign state itself, as the state is the real party in interest." *Id.* at 325. This is precisely the situation, as Plaintiff admits, that the Court contemplated in *Samantar*. As such, the case is dismissed as to the Individual Defendants as well.

## III. Conclusion

There is no jurisdiction under FSIA. Accordingly, the Complaint is DISMISSED with prejudice as to all parties.

Dated: January 27, 2014
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE