

LA REPUBLICA BOLIVARIANA DE VENEZUELA
EN SU NOMBRE
**EL TRIBUNAL SUPREMO DE JUSTICIA**

JUEZ PONENTE: MARISOL MARÍN R.
EXPEDIENTE Nº AP42-N-2010-000648

En fecha 2 de diciembre de 2010, se recibió en la Unidad de Recepción y Distribución de Documentos (U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, el escrito contentivo de la demanda de nulidad interpuesta por el Abogado Luis Jaramillo, inscrito en el Instituto de Previsión Social del Abogado (INPREABOGADO) bajo el Nº 5.001, actuando con el carácter de Apoderado Judicial de la Sociedad Mercantil CREDICAN, C.A., inscrita ante el Registro Mercantil Quinto de la Circunscripción Judicial del Distrito Capital y estado Miranda, en fecha 12 de enero de 2002, bajo el Nº 23, Tomo 662-A 5to, contra el acto administrativo contenido en la Resolución Nº 503-10, de fecha 22 de octubre de 2010, dictada por la SUPERINTENDENCIA DE BANCOS Y OTRAS INSTITUCIONES FINANCIERAS (SUDEBAN), hoy SUPERINTENDENCIA DE LAS INSTITUCIONES DEL SECTOR BANCARIO, mediante la cual declaró Sin Lugar el recurso de reconsideración interpuesto por la parte actora, contra la Resolución Nº 468-10, en la que se ordenó la intervención de la empresa recurrente.

En esa misma fecha, se ordenó pasar el presente expediente al Juzgado de Sustanciación de esta Corte, a los fines legales consiguientes.

En esa misma oportunidad, se pasó el expediente al referido Juzgado de Sustanciación.

En fecha 13 de diciembre de 2010, el Juzgado de Sustanciación de esta Instancia Jurisdiccional admitió la presente demanda de nulidad, en consecuencia, ordenó notificar a las ciudadanas Fiscal General de la República y Procuradora General de la República y al ciudadano Superintendente de Bancos y Otras Instituciones Financieras, según lo previsto en el artículo 233 del Código de Procedimiento Civil, aplicable supletoriamente por remisión del artículo 31 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa, concediéndole el término de diez (10) días continuos conforme a la norma antes mencionada, remitiéndole a dichos funcionarios copia certificada de la demanda y de las actuaciones del presente expediente. Asimismo, ordenó oficiar al ciudadano Superintendente de Bancos y Otras Instituciones Financieras, a los fines que remitiera a ese Juzgado

constaran en autos su recibo. Igualmente, se dejó establecido que una vez constara en autos las
notificaciones ordenadas, se remitiera a esta Corte el expediente a objeto que fijara la oportunidad
para la celebración de la Audiencia de Juicio correspondiente.

En fecha 15 de diciembre de 2010, se libraron los oficios Nros. 1446-10, 1447-10, 1448-10, dirigidos
a los ciudadanos Procurador General de la República, Fiscal General de la República y al ciudadano
Superintendente de Bancos y Otras Instituciones Financieras, respectivamente.

En fecha 17 de enero de 2011, el Alguacil del Juzgado de Sustanciación de este Órgano Jurisdiccional
dejó constancia de la notificación realizada al ciudadano Superintendente de Bancos y Otras
Instituciones Financieras, la cual fue recibida en fecha 12 de ese mismo mes y año.

En fecha 1º de febrero de 2011, el Alguacil del referido Juzgado dejó constancia de la notificación
realizada a la ciudadana Fiscal General de la República, la cual fue recibida en fecha 18 de enero de
ese mismo año.

En fecha 2 de febrero de 2011, se recibió en la Unidad de Recepción y Distribución de Documentos
(U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, el oficio Nº SIB-DSB-
CJ-OD-01127, de fecha 26 de enero de ese mismo año, emanado de la Superintendencia de Bancos y
Otras Instituciones Financieras, hoy Superintendencia de las Instituciones del Sector Bancario
(SUDEBAN), mediante el cual remitió a esta Corte, copia certificada de los antecedentes
administrativos relacionados con el presente caso.

En fecha 3 de febrero de 2011, se acordó agregar los antecedentes administrativos al presente
expediente y abrir las piezas separadas con los anexos acompañados.

En esa misma fecha, el Alguacil del Juzgado de Sustanciación de este Órgano Colegiado dejó
constancia de la notificación realizada a la ciudadana Procuradora General de la República, la cual fue
recibida en fecha 31 de enero de ese mismo año.

En esa misma oportunidad, el Juzgado de Sustanciación de esta Corte, en cumplimiento con lo
establecido mediante sentencia Nro. 2010-1394 dictada por esta Instancia Sentenciadora en fecha 15
de diciembre de 2010, una vez que constara en autos la notificación de la ciudadana Procuradora
General de la República, y transcurrido el lapso a que se contrae el artículo 97 del Decreto con Rango
y Fuerza de Ley Orgánica que rige sus funciones, ordenó librar el cartel al cual alude los artículos 80
y 81 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa, que debería ser publicado en
uno de los diarios de mayor circulación nacional. Asimismo, el precitado cartel debería ser retirado
por el recurrente dentro de los tres (3) días de despacho siguientes a su expedición, lo publicaría y
consignaría la publicación, dentro de los ocho (8) de despacho siguientes a su retiro, el
incumplimiento de esta obligación se entendería como desistimiento del recurso, y se pasaría el
expediente a esta Instancia Jurisdiccional, a los fines de la decisión correspondiente.

En fecha 10 de marzo de 2011, el Alguacil del Juzgado de Sustanciación de esta Corte dejó constancia
de la notificación realizada a la ciudadana Procuradora General de la República, la cual fue recibida

En fecha 28 de marzo de 2011, visto que la Sociedad Mercantil demandante fue intervenida según consta en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.498, de fecha 30 de agosto de 2010, EL Juzgado de Sustanciación de esta Corte ordenó la notificación mediante oficio, del ciudadano Presidente del Fondo de Protección Social de los Depósitos Bancarios, de conformidad con el numeral 2° del artículo 106 y 261 de la Ley de Instituciones del Sector Bancario remitiéndole a dicho funcionario copia certificada de la demanda y su reforma, así como de los autos cursantes en el expediente.

En esa misma fecha, se libró el oficio Nro. 405-11 dirigido al ciudadano Presidente del Fondo de Protección Social de los Depósitos Bancarios.

En fecha 7 de abril de 2011, el Alguacil del Juzgado de Sustanciación de este Órgano Jurisdiccional dejó constancia de la notificación realizada al ciudadano Presidente del Fondo de Protección Social de los Depósitos Bancarios, la cual fue recibida en fecha 6 de ese mismo mes y año.
En fecha 12 de abril de 2011, se libró el cartel de emplazamiento a los interesados, previsto en el artículo 80 y siguientes de la Ley Orgánica de la Jurisdicción Contencioso Administrativa.

En fecha 13 de abril de 2011, se recibió en la Unidad de Recepción y Distribución de Documentos (U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, la diligencia presentada por la Representación Judicial de la parte actora, mediante la cual retiró el cartel de emplazamiento.

En fecha 25 de abril de 2011, se recibió en la Unidad de Recepción y Distribución de Documentos (U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, la diligencia presentada por la Representación Judicial de la Sociedad Mercantil Credican, C.A., a través de la cual consignó el cartel de emplazamiento que fue publicado en el diario "El Nacional" de fecha 15 de abril de 2011.

En fecha 12 de mayo de 2011, notificadas como se encontraban las partes y en cumplimiento a lo indicado en el auto dictado por el Juzgado de Sustanciación de esta Corte en fecha 13 de diciembre de 2010, se ordenó remitir el presente expediente a esta Instancia Jurisdiccional, a fin que se fijara la oportunidad en que tendría lugar la Audiencia de Juicio de conformidad con lo establecido en el artículo 82 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa.

En esa misma fecha, se remitió a esta Corte el presente expediente.

En fechas 25 de mayo, 21 de junio y 20 de julio de 2011, este Órgano Sentenciador difirió la oportunidad para la fijación del día y la hora en que tendría lugar la Audiencia de Juicio, lo cual se haría posteriormente mediante auto expreso y separado.

En fecha 11 de agosto de 2011, se recibió en la Unidad de Recepción y Distribución de Documentos (U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, la diligencia presentada por la Representación Judicial de la parte actora, mediante la cual consignó original del

poder que se le asigno a su ... Víctor Jaramillo, inscritos en el Instituto de Previsión Social del Abogado (INPREABOGADO) bajo
los Nros. 29.297 y 91.583, respectivamente.

En fecha 19 de septiembre de 2011, esta Corte difirió nuevamente la oportunidad para la fijación del
día y la hora en que tendría lugar la Audiencia de Juicio, lo cual se haría posteriormente mediante auto
expreso y separado.

En fecha 21 de septiembre de 2011, se designó Ponente al Juez Enrique Sánchez y estando dentro del
lapso previsto en el artículo 82 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa y se
fijó para el día 18 de octubre de ese mismo año, la oportunidad para que tuviera lugar la celebración
de la Audiencia de Juicio en la presente causa.

En fecha 6 de octubre de 2011, se recibió del Abogado Víctor Jaramillo, actuando con el carácter de
Apoderado Judicial de la parte actora, documento mediante el cual sustituyó poder en el Abogado
Andrés Ramírez, inscrito en el Instituto de Previsión Social del Abogado (INPREABOGADO) bajo el
N° 8.442.

En fecha 18 de octubre de 2011, se celebró la Audiencia de Juicio, dejándose constancia de la
comparecencia de la Representación Judicial de la parte actora y del Abogado Alí Daniels Pinto,
inscrito en el Instituto de Previsión Social del Abogado (INPREABOGADO) bajo el N° 46.143,
actuando con el carácter de Apoderado Judicial de la parte recurrida, así como la comparecencia del
Abogado Juan Betancourt, inscrito en el Instituto de Previsión Social del Abogado
(INPREABOGADO) bajo el N° 44.157, actuando con el carácter de Fiscal Segundo del Ministerio
Público. Asimismo, se dejó constancia que la parte demandante consignó escrito de promoción de
pruebas y la demandada escrito de consideraciones, los cuales se ordenaron agregar a los autos del
presente expediente.

En esa misma fecha, esta Corte ordenó pasar el presente expediente al Juzgado de Sustanciación, a los
fines que se pronunciara sobre la admisión de las pruebas promovidas en la referida Audiencia.

En esa misma oportunidad, se pasó el expediente al Juzgado de Sustanciación.

En fecha 27 de octubre de 2011, comenzó el lapso de tres (3) días de despacho para oponerse a las
pruebas presentadas, ello de conformidad con el artículo 84 de la Ley Orgánica de la Jurisdicción
Contencioso Administrativo.

En fecha 1° de noviembre de 2011, venció el lapso de tres (3) días de despacho para la oposición a las
pruebas presentadas.

En fecha 2 de noviembre de 2011, en relación al escrito de promoción de pruebas presentado por la
parte actora, el Juzgado de Sustanciación en cuanto al Capítulo I denominado "La materia objeto del
recurso", en razón de no haberse promovido medio de prueba alguno, señaló no tener materia sobre la
cual pronunciarse y en consecuencia correspondería a esta Corte la valoración de los autos que
conforman el proceso en la oportunidad de decidir acerca del fondo del asunto, asimismo, en cuanto

las documentales producidas con el escrito, ese Tribunal las admitió cuanto ha lugar en derecho, igualmente, respecto a la prueba de informes promovida, la misma fue admitida y para su evacuación se acordó oficiar al ciudadano Presidente de la Bolsa de Valores de Caracas, C.A., a los fines que remitiera la información solicitada en el plazo de cinco (5) días contados a partir del aludido oficio. Igualmente, se ordenó notificar al ciudadano Procurador General de la República, indicando que una vez que contara la prenombrada notificación, se procedería a la evacuación de la prueba de informes promovida.

En esa misma fecha, se libró el oficio N° 1404-11 dirigido al ciudadano Procurador General de la República.

En esa misma oportunidad, visto el escrito de consideraciones presentado por la parte demandada, el Juzgado de Sustanciación de esta Corte en relación al Capítulo I y II, en razón de no haberse promovido medio de prueba alguno, señaló no tener materia sobre la cual pronunciarse, asimismo, respecto a las documentales producidas junto con el escrito, ese Tribunal la admite cuanto ha lugar en derecho, salvo su apreciación en la sentencia definitiva, por no ser manifiestamente ilegal ni impertinente, de conformidad a lo previsto en los artículos 4 de la Ley sobre Mensajes de Datos y Firmas Electrónicas y 395 del Código de Procedimiento Civil, aplicables supletoriamente por remisión del artículo 31 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa. Igualmente, se ordenó oficiar al ciudadano Procurador General de la República, a tenor de lo dispuesto en el artículo 97 del Decreto con Fuerza de Ley Orgánica de la Procuraduría General de la República.

En fecha 8 de noviembre de 2011, se libró el oficio N° 1404-11 dirigido al ciudadano Procurador General de la República.

En fecha 24 de noviembre de 2011, en la Unidad de de Recepción y Distribución de Documentos (U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, el escrito presentado por los Abogados Luis Obregón y María Moros, inscritos en el Instituto de Previsión Social del Abogado (INPREABOGADO) bajo los Nros. 69.014 y 106.977, respectivamente, actuando con el carácter de Representantes Judiciales de la Junta de Administradores de la Sociedad Mercantil Credican, C.A., designada por la Superintendencia de Bancos y Otras Instituciones Financieras (SUDEBAN), mediante el cual solicitaron la nulidad absoluta del presente procedimiento por las razones expuestas en el referido escrito.

En fecha 30 de noviembre de 2011, visto el escrito presentado en fecha 24 de ese mismo mes y año, por la Representación Judicial de la parte actora, el Juzgado de Sustanciación de esta Instancia Jurisdiccional estimó que la referida solicitud es una cuestión de fondo, en consecuencia, le correspondería a esta Corte Primera de lo Contencioso Administrativo pronunciarse al respecto, al dictar sentencia definitiva en el presente caso.

En fecha 17 de enero de 2012, el Alguacil del Juzgado de Sustanciación de este Órgano Sentenciador dejó constancia de la notificación realizada al ciudadano Procurador General de la República, la cual fue recibida en fecha 2 de ese mismo mes y año.

En fecha 23 de enero de 2012, en virtud de lo ordenado en el Organo Jurisdiccional de la Juez Marisol Marín R., esta Corte quedó reconstituída de la siguiente manera: EFRÉN NAVARRO, Juez Presidente; MARÍA EUGENIA MATA, Juez Vicepresidente y MARISOL MARÍN R., Juez.

En fecha 12 de marzo de 2012, se libró el oficio N° 0232-12 dirigido al ciudadano Presidente de la Bolsa de Valores de Caracas, C.A.

En fecha 20 de marzo de 2012, se recibió en la Unidad de Recepción y Distribución de Documentos (U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, el oficio S/N de fecha 20 de marzo de 2012, emanado de la Bolsa de Valores de Caracas, C.A., ello en virtud de lo ordenado mediante auto dictado por el Juzgado de Sustanciación de esta Instancia Jurisdiccional en fecha 2 de noviembre de 2011.

En fecha 9 de abril de 2012, el Alguacil del Juzgado de Sustanciación de esta Corte dejó constancia de la notificación realizada al ciudadano Presidente de la Bolsa de Valores de Caracas, C.A., la cual fue recibida en fecha 16 de marzo de ese mismo año.

En fecha 11 de abril de 2012, en virtud de la designación del ciudadano Ricardo Cordido Martínez como Juez Temporal del Juzgado de Sustanciación de esta Instancia Sentenciadora, el referido Juez se abocó al conocimiento de la presente causa en el estado en que se encontraba, de conformidad con el artículo 48 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa, a los fines de la oportunidad para la recusación del mencionado ciudadano, y tales efectos se computarían cinco (5) días de despacho, contados a partir de la precitada fecha, transcurridos los cuales se reanudaría la causa para todas las actuaciones a que haya lugar.

En fecha 18 de abril de 2012, se recibió en la Unidad de Recepción y Distribución de Documentos (U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, el escrito de Informes presentado por el Abogado Juan Betancourt, anteriormente identificado.

En fecha 24 de abril de 2012, vencido como se encontraba el término establecido por auto de fecha 11 de ese mismo mes y año, el Juzgado de Sustanciación de esta Corte acordó remitir el expediente a esta Instancia Jurisdiccional.

En esa misma fecha, se remitió el presente expediente a esta Corte.

En esa misma oportunidad, este Órgano Colegiado se abocó al conocimiento de la presente causa en el estado en que se encontraba, reanudándose la misma una vez transcurrido el lapso previsto en el artículo 90 del Código de Procedimiento Civil.

En fecha 2 de mayo de 2012, transcurrido el lapso fijado en el auto dictado por esta Corte en fecha 24 de abril de ese mismo año, se abrió el lapso de cinco (5) días de despacho (inclusive), para que las partes presentaran los Informes relacionados con la presente causa, de conformidad con lo previsto en el artículo 85 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa.

En fecha 8 de mayo de 2012, se recibió en la Unidad de Recepción y Distribución de Documentos

(U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, el escrito de Informes
presentado por la Representación Judicial de la Superintendencia de las Instituciones del Sector
Bancario y copia simple del poder que le acredita su representación.

En fecha 9 de mayo de 2012, se recibió en la Unidad de Recepción y Distribución de Documentos
(U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, el escrito de Informes
presentado por la Representación Judicial de la Sociedad Mercantil Credican, C.A.

En esa misma fecha, de conformidad con lo previsto en el artículo 86 de la Ley Orgánica de la
Jurisdicción Contencioso Administrativa, se difirió el lapso para decidir la presente causa.

En fecha 10 de mayo de 2012, vencido como se encontraba el lapso fijado en el auto dictado por esta
Instancia Sentenciadora en fecha 2 de ese mismo mes y año, se ordenó pasar el presente expediente a
la Juez MARISOL MARÍN R., a los fines que esta Corte dictara la decisión correspondiente, de
conformidad con lo establecido en el artículo 86 de la Ley Orgánica de la Jurisdicción Contencioso
Administrativa.

En esa misma fecha, se pasó el presente expediente a la Juez Ponente.

En fecha 2 de octubre de 2012, se recibió en la Unidad de Recepción y Distribución de Documentos
(U.R.D.D.) de las Cortes Primera y Segunda de lo Contencioso Administrativo, la diligencia
presentada por la Representación Judicial de la Superintendencia de las Instituciones del Sector
Bancario, mediante la cual solicitó que se dictara sentencia en la presente causa, asimismo, consignó
copia simple del poder que acredita su representación.

En fecha 3 de octubre de 2012, se dejó constancia que en fecha 2 de ese mismo mes y año, venció el
lapso de Ley otorgado, de conformidad con lo previsto en el artículo 86 de la Ley Orgánica de la
Jurisdicción Contencioso Administrativa, a los fines de la decisión correspondiente.

Realizado el estudio individual de las actas que conforman el expediente, esta Corte pasa a decidir,
previa las consideraciones siguientes:

-I-
DE LA DEMANDA DE NULIDAD INTERPUESTA

En fecha 2 de diciembre de 2010, el Abogado Luis Jaramillo, actuando con el carácter de Apoderado
Judicial de la Sociedad Mercantil Credican, C.A, interpuso demanda de nulidad con base en las
siguientes consideraciones de hecho y de derecho:

Manifestó, que su representada "...mediante suscripciones de acciones emitidas con ocasión de
sucesivos aumentos de capital aprobados en otras tantas asambleas de socios del BANCO
CANARIAS DE VENEZUELA, C.A., (BANCO CANARIAS), ostentó durante varios años la
condición de accionista de dicha institución bancaria, hasta alcanzar, dentro de esta última, una
participación equivalente a diecisiete enteros con noventa y cinco mil cuatrocientas cincuenta y cuatro
cienmilésimas (sic) por ciento (17,95454%) de la totalidad de su capital suscrito y pagado"

(Mayúsculas del original)

Advirtió, que "...tanto las distintas suscripciones con sus respectivos montos, como el antes mencionado rango proporcional de la participación accionaria correspondiente a CREDICAN, C.A., fueron del pleno y oportuno conocimiento de la Superintendencia de Bancos y Otras Instituciones Financieras mediante las copias certificadas de las actas de asambleas respectivas que, en cumplimiento de las disposiciones legales vigentes para los momentos de su celebración, fueron remitidas por el BANCO CANARIAS a dicho organismo supervisor" (Mayúsculas del original).

Que, en "...fecha tres (...) de agosto del año 2009, (...) un grupo, que comprendió a la casi totalidad de accionistas del BANCO CANARIAS, entre ellos (...) CREDICAN, C.A., dio en venta la totalidad de las acciones que ellos poseían del capital de dicho banco, a la empresa BANCO PROVIVIENDA, C.A., BANCO UNIVERSAL (BANPRO), persona jurídica constituida originalmente como ARRENDADORA INDUSTRIAL VENEZOLANA COMPAÑÍA ANÓNIMA DE ARRENDAMIENTO FINANCIERO (ARRENDAVEN ARRENDAMIENTO FINANCIERO) (...) y después de sucesivas transformaciones devenida finalmente en la antes mencionada empresa BANCO PROVIVIENDA, C.A., previa la autorización de la Superintendencia de Bancos y Otras Instituciones Financieras(SUDEBAN) contenida en la Resolución N° 3.337 del día 9 de diciembre de 2003..." (Mayúsculas del original).

Sostuvo, que el total de las acciones objeto de esa venta "...ascendió a la cantidad de un mil trescientos veinticinco millones ochenta y siete mil seiscientas setenta y tres (1.325.087.673) acciones nominativas, equivalente al noventa y nueve enteros ochenta y seis mil cincuenta cienmilésimas (sic) por ciento (99,86050 %) del total del capital suscrito y pagado del Banco. Mediante esa operación (...) CREDICAN, C.A. dio en venta a la compradora todas y cada una de las acciones que poseía del capital social del Banco Canarias de Venezuela Banco Universal, C.A., las cuales, como queda dicho, constituían una participación accionaria equivalente al diecisiete enteros (sic) noventa y cinco mil cuatrocientas cincuenta y cuatro cienmilésimas (sic) por ciento (17,95454 %) de la totalidad del capital de dicha institución financiera" (Mayúsculas del original).

Indicó, que "...de acuerdo con lo convenido por las partes en el mismo documento, la operación descrita fue perfeccionada mediante Sesión Especial de Mercado en la cual, previa autorización de la Junta Directiva de la Bolsa de Valores de Caracas, C.A. en su Sesión N° 1.398, (...) se autorizó el cruce de los mil trescientos veinticinco millones ochenta y siete mil seiscientas setenta y tres (1.325.087.673) acciones, que representaban el 99.86050 % de la totalidad del capital suscrito y pagado del BANCO CANARIAS. La subsiguiente liquidación del cruce en referencia se llevó a cabo por el Agente de Traspaso de las acciones del Banco Canarias de Venezuela, C.A., es decir la CVV Caja Venezolana de Valores, S.A., en fecha 01 (sic) de octubre de 2009, de todo lo cual se da fe en la respectiva Constancia emitida por esta última institución. De ese modo, por efecto del mandato legal expreso, se materializó la figura del Traspaso de Acciones en Bolsa, que constituye el supuesto de hecho de las normas contenidas en el artículo 21 de la Ley de Bancos vigente para el momento de las descritas operaciones" (Mayúsculas del original).

Precisó, que "El día 19 de noviembre de 2009, mediante Resolución N° 598.09 publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.310, la Superintendencia de Bancos y Otras

Instituciones Financieras Doc 46444-3 intervención del Banco Canarias de Venezuela, Banco Universal, C.A. Posteriormente, mediante Resolución N° 627.09 del día 27 de noviembre de 2009, publica en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.316, se decretó la liquidación de dicha institución financiera".

Adujo, que "El día 27 de agosto de 2010 la SUDEBAN (sic), mediante Resolución distinguida con el N° 468-10 y publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.498 de fecha 30 del mismo mes y año, ordenó la intervención de [su] representada, la empresa CREDICAN, C.A., por considerar que la situación surgida se encuadraba, según reza el texto de la citada Resolución, 'con los numerales 5 y 15 del artículo 235 en concordancia con los artículos 333 y 338 de la Ley General de Bancos y Otras instituciones (sic) Financieras'" (Corchetes de esta Corte y mayúsculas del original).

Que, en fecha "…27 de septiembre de 2010 y encontrándose dentro del plazo legal, [su] representada CREDICAN, C.A. intentó por ante la Superintendencia de Bancos y Otras instituciones (sic) Financieras el correspondiente Recurso de Reconsideración contra la mencionada Resolución N° 468-10. Dicho recurso fue declarado sin lugar por el mismo Organismo, mediante Resolución N° 530.10 de fecha 22 de octubre de 2010 y notificado a Credican, C.A. el día 25 del mismo mes y año" (Corchetes de esta Corte y mayúsculas del original).

Señaló, que el supuesto "…que constituye la parte cardinal de la motivación de la mencionada Resolución 468-10 del 27 de agosto de 2010, es la existencia de una pretendida 'participación accionaria' de [su] representada en el Banco Canarias de Venezuela, Banco Universal, C.A., para el momento en que se decidió su intervención y, que, según sustenta, coinciden con los requisitos exigidas (sic) por la normativa legal que rige la materia para calificarla 'como una empresa relacionada'" (Corchetes de esta Corte).

Destacó, que "…es un hecho cierto y comprobado que ya desde el mes de octubre de 2009 [su] representada CREDICAN, C.A. había procedido a enajenar todas y cada una de las acciones que integraban su participación en el capital social del Banco Canarias de Venezuela Banco Universal, C.A., equivalente a casi el dieciocho por ciento (18%) de la totalidad de dicho capital. De manera que, en virtud de la enajenación de las acciones en cuestión, adquiridas por la empresa BANCON PROVIVIENDA, C.A., BANCO UNIVERSAL (BANPRO), conforme consta en el (…) documento auténtico de fecha 03 (sic) de agosto de 2009 y mediante el cruce efectuado por ante la Bolsa de Valores de Caracas en Sesión del día 30 de septiembre del mismo año, como obligada consecuencia dentro de la más elemental lógica jurídica y material, para la fecha de la citada Resolución que ordena intervenirla –casi once meses más tarde– [su] representada CREDICAN, C.A. no tenía la condición de propietaria de acciones del Banco Canarias" (Corchetes de esta Corte y mayúsculas del original).

Arguyó, que la demandada "…sustenta la calificación que atribuye a [su] representada, como 'empresa relacionada', con la pura y simple declaración que hace de que el traspaso de las acciones efectuadas por ésta 'no tiene efecto alguno' por no haberse dado cumplimiento a las formalidades de inscripción del mismo en el Libro de Acciones respectivo y por la falta de autorización previa por parte de la SUDEBAN (sic)" (Corchetes de esta Corte y mayúsculas del original).

Accionistas respectivo– sin haber efectuado ningún tipo de comprobación sobre la certeza del mismo.
Efectivamente, la Resolución impugnada, con relación a este aspecto, expresa textualmente: 'del
análisis de las pruebas aportadas por el Recurrente y de la documentación que reposa en este
Organismo al efecto, se observa que para el momento en que fue intervenida la sociedad (sic)
mercantil (sic) Credican, C.A., las mencionadas formalidades no se habían cumplido'. De manera que
el Órgano de la Administración decreta la intervención sin haber comprobado, en modo alguno, si
efectivamente se había dejado de cumplir o no la formalidad de inscribir el traspaso de las acciones en
el Libro de Accionistas respectivo, desconociendo, de esta manera, que, en materia de procedimiento
sancionatorio (…) la carga de la prueba íntegramente corre a cargo de la Administración Pública".

Afirmó, que la demandada "…hace recaer en el recurrente la carga de la prueba, como si la omisión
de éste de producirla operase como demostración de la veracidad del presupuesto de hecho invocado
como causa de la resolución, no sólo porque dicha carga probatoria corre de su cargo, íntegramente,
sino también porque el procedimiento dentro del cual se produjo el acto impugnado fue de carácter
sumario, iniciado de oficio y se cumplió inaudita parte, sin que [su] mandante hubiere tenido
posibilidad de intervenir más que con el ejercicio del recurso de reconsideración que interpuso"
(Corchetes de esta Corte).

Señaló, que "Si la SUDEBAN (sic) hubiese cumplido con la obligación de comprobar los hechos en
los cuales fundamentó la sanción de decretar la intervención de [su] representada, habría podido
determinar que la formalidad de inscribir el traspaso de dichas acciones en el Libro de Accionistas del
Banco Canarias de Venezuela, Banco Universal, C.A. sí fue cumplida y en consecuencia otro hubiera
sido el contenido de su resolución" (Corchetes de esta Corte y mayúsculas del original).

Resaltó, que "En cuanto al incumplimiento de la segunda formalidad, invocada como causa de la
resolución recurrida, surge, en primer lugar, la necesidad de considerar cuál fue el texto legal que la
Superintendencia utilizó como base de su análisis. A tal efecto se debe precisar que, para la fecha de
la operación del traspaso de las acciones en bolsa celebrado por CREDICAN -30 de septiembre de
2009- el texto legal vigente en esa materia, sin discusión alguna, era el contenido en el Decreto No.
6.287 con Rango, Valor y Fuerza de Ley de Reforma Parcial de la Ley de Bancos y Otras
Instituciones Financieras, publicado en la Gaceta Oficial No. 5.892 Extraordinaria del 31 de julio de
2008, derogado por la Ley General de Bancos y Otras Instituciones Financieras de fecha 23 de
diciembre de 2009, publicada en la Gaceta Oficial No. 5.947 Extraordinaria del 23 de Diciembre (sic)
de 2009. Ahora bien, siendo que, como se señaló antes, la operación de venta en cuestión se
perfeccionó mediante el cruce de acciones en bolsa debidamente autorizada por la Bolsa de Valores
de Caracas, C.A., la referencia legal específica al artículo 19 de la 'Ley que rige la materia', que hace
la recurrida, no puede ser considerada sin relacionarla con la norma contenida en el Art. 21 ejusdem, a
la cual la misma hace remisión, desde luego, del texto legal vigente para el momento en que se
efectuó dicha operación" (Mayúsculas y negrillas del original).

Que, el nuevo régimen legal "…en vigor a partir de le (sic) entrada en vigencia de dicha Ley de
Reforma del mencionado Decreto con Rango, Valor y Fuerza de Ley, esto es, a partir del 23 de
diciembre de 2009, hizo imperativa la autorización de la Superintendencia de Bancos y Otras
Instituciones Financieras para la adquisición en bolsa de acciones de Bancos, entidades de ahorro y

préstamo, instrucciones financieras y ofrecer el producto" que ello –a su juicio– significa que la Resolución recurrida aplicó retroactivamente la Ley vigente para el monto en que fue decretada la intervención de [su] representada (27 de agosto de 2.010 (sic)) y no el texto legal que regía para la fecha en que se efectuó el traspaso de dichas acciones" (Corchetes de esta Corte).

Indicó, que para el momento de la intervención del Banco Canarias de Venezuela Banco Universal, C.A., "...no existía ni la 'participación accionaria' ni la 'unidad de decisión y gestión' que la Superintendencia de Bancos y Otras Instituciones Financieras invoca como fundamentos de la Resolución N° 468-10., y no podían existir, en buen derecho, toda vez que, para esa fecha, CREDICAN, C.A. no conservaba ni siquiera una de las acciones que habían sido objeto de una operación de traspaso que surtió el natural efecto traslativo de propiedad que le atribuía la normativa legal aplicable" (Mayúsculas del original).

Precisó, que aún prescindiendo del hecho que "...para el día 27 de agosto de 2010, fecha de la intervención de CREDICAN, C.A., dicha empresa se había desprendido de absolutamente todas las acciones que integraban su participación en el capital del Banco Canarias de Venezuela Banco Universal, C.A., tampoco le serían aplicables las normas contenidas en los artículos 161, 162 y 168 de la Ley de Bancos (sic)" (Mayúsculas del original).

Que, la Resolución N° 530-10 de fecha 22 de octubre de 2010, "...afirma lisa y llanamente que por resultar CREDICAN –a su juicio– propietaria de acciones del Banco Canarias de Venezuela, se cumplían así '...los requisitos establecidos en los artículos 161, 162 y 168 de la Ley General de Bancos y Otras Instituciones Financieras para calificarla como empresa relacionada'. No explica ni aclara la Superintendencia cuál es el razonamiento exegético que la ha inducido a esa conclusión, tal como si diese por sentado que la mera condición de accionista de un Banco llevara consigo, sin más, la de empresa relacionada de esa institución financiera. Para poner de manifiesto la falta de fundamento jurídico de esa desacertada expresión, basta hacer una somera revisión del texto de esos artículos y precisar el alcance de la aplicación de las normas que ellos contienen para servir como fundamento legal de la condición de empresa relacionada de las instituciones financieras" (Mayúsculas del original).

Apuntó, que en el supuesto del traspaso de acciones en Bolsa, "...el legislador, como norma general, no exigía, para el monto (sic) en que se produjo la operación en cuestión, la autorización de la Superintendencia de Bancos para la venta de acciones, y en el caso de excepción previsto en el primer aparte del citado artículo 21, en que la requería, no ha querido despojar con ello a la operación de compraventa de su natural efecto traslativo de propiedad que le es propio conforme el principio general consagrado expresamente por nuestro ordenamiento jurídico".

Destacó, que la "...ley atribuye al adquirente, por una parte, la condición de accionista, y por la otra, el derecho de enajenar las acciones y de percibir los dividendos, atributos ambos exclusivos del propietario. No se requiere mayor esfuerzo racional para concluir que esa condición de propietario es producida en cabeza del adquirente como directa consecuencia, y sin que medie otro factor, del efecto traslativo de propiedad de la operación objetada, lo que deja su validez fuera de toda discusión. De manera que [su] representada no pudo continuar siendo propietaria de dichas acciones, si ya no ostentaba el 'derecho de enajenarlas' ni el de 'percibir los dividendos'. Por tanto, queda fuera de toda

duda que es absolutamente improbable, lanzando de lo estratégico jurídico y, dentro de la lógica material, que [su] representada, (…) pudiera continuar siendo propietaria de dichas acciones no obstante la evidente y absoluta validez de la operación traspaso de las mismas que se perfeccionó con el Cruce de Bolsa del 30 de septiembre de 2009" (Corchetes de esta Corte y negrillas del original).

Advirtió, que aún en el supuesto que su representada hubiese ostentado la condición de accionista del Banco Canarias para la fecha en la que fue decretada su intervención, no habría lugar para que la demandada declarase como "empresa relacionada" a su mandante, porque la "…proporción de su participación accionaria en el capital social de dicho Banco, que no alcanzaba ni siquiera al dieciocho (18%), era inferior al veinte por ciento (20%) exigido (…) [y porque] no comprobó, (…) que se dieran, (…) ninguno de los requisitos exigidos en el citado artículo 161 [de la Ley General de Bancos y Otras Instituciones Financieras], para que se pudiera considerar la existencia de 'unidad de decisión o gestión' entre [su] representada y el Banco Canarias de Venezuela, Banco Universal, C.A." (Corchetes de esta Corte).

Que, la parte demandada "…confirma la Resolución 468-10, expresando como única causa o motivo de su decisión que [su] representada 'si era propietaria de acciones del Banco Canarias de Venezuela, Banco Universal, C.A. para el momento en que se decidió su intervención', hecho con el cual da por cumplidos los requisitos establecidos en el (sic) artículo (sic) 161, 162 y 168 de la Ley General de Bancos y Otras Instituciones Financieras" (Corchetes de esta Corte).

Expresó, que "No obstante lo extremadamente exiguo de la motivación, la misma alcanza a expresar, aunque erróneamente, el fundamento de la Resolución recurrida, el cual consiste en la aseveración de que el traspaso de las acciones, invocado por [su] representada, 'no tenía efecto alguno' por no haberse dado cumplimiento con las formalidades de su inscripción en 'el Libro de Accionistas respectivo' y 'la autorización previa de la Superintendencia de Bancos', por lo que, habría continuado siendo accionista del Banco Canarias de Venezuela, Banco Universal, C.A., para el momento de su intervención, circunstancia que la calificaría como una empresa relacionada de dicha institución bancaria" (Corchetes de esta Corte).

Manifestó, que la demandada no cumplió con la "…obligación de probar su aserto de que el traspaso de dichas acciones no fue inscrito en el respectivo Libro de Accionistas, con lo cual incurrió en el vicio en la causa, que la jurisprudencia denomina 'abuso o exceso de poder', al dar por supuesto un hecho que no comprueba, sustentándolo en la sola apreciación del funcionario".

Que, la Superintendencia de las Instituciones del Sector Bancario (SUDEBAN) "…distorsionó el régimen al cual estaba sometido el traspaso en bolsa de dichas acciones, según el cual la falta de autorización de SUDEBAN (sic) no acarreaba la nulidad del mismo, por lo que [su] representada, cuando efectuó dicha operación no era accionista del Banco Canarias de Venezuela, Banco Universal, C.A. y, en consecuencia, tampoco una empresa relacionada con éste, como falsamente sostiene la recurrida, al incurrir en la aplicación retroactiva del artículo 19 de la Ley de Reforma Parcial Decreto No. 6287 con Rango, Valor y Fuerza de Ley de Reforma Parcial de la Ley de Bancos y Otras Instituciones Financieras, publicado en la Gaceta Oficial No. 5.947 Extraordinaria del 23 de Diciembre (sic) de 2009" (Corchetes de esta Corte y mayúsculas del original).

Arguyó, que "…es evidente (…) que la Resolución impugnada, adolezca también de vicio en la causa o motivo, por ser el producto de un falso supuesto de derecho que consistió en la extemporánea aplicación de un dispositivo legal que no estaba vigente y por haber incurrido, con su decisión, en distorsión en la interpretación y aplicación del texto legal vigente para el momento en que se efectuó dicha operación. Asimismo, la recurrida incurre en falso supuesto de hecho al atribuir a [su] representada la calificación de empresa relacionada del Banco Canarias de Venezuela, Banco Universal, C.A., sin que poseyese el veinte por ciento (20%) de sus acciones y en el vicio de abuso o exceso de poder al dar por supuesto la existencia de 'unidad de decisión o gestión' entre [su] representada y el Banco Canarias de Venezuela, Banco Universal, C.A., sin que lo hubiese comprobado, todo lo cual dejó dicha Resolución sin ningún fundamento legal" (Corchetes de esta Corte).

En último lugar, solicitó que "…se declare CON LUGAR (…) [la presente demanda] y, en consecuencia, se decrete la NULIDAD de la Resolución impugnada" (Corchetes de esta Corte y mayúsculas del original).

-II-
DEL ESCRITO DE CONSIDERACIONES PRESENTADO POR LA REPRESENTACIÓN JUDICIAL DE LA SUPERINTENDENCIA DE LAS INSTITUCIONES DEL SECTOR BANCARIO (SUDEBAN)

En fecha 18 de octubre de 2011, el Abogado Alí Daniels Pinto, actuando con el carácter de Apoderado Judicial de la Superintendencia de las Instituciones del Sector Bancario (SUDEBAN), presentó escrito de consideraciones, con base a los siguientes fundamentos de hecho y de derecho:

Expresó, que "…nos encontramos con una situación típica respecto a los turbios manejos a que pueden someterse las empresas relacionadas de las instituciones financieras con el objeto de evadir responsabilidades, o más aún, salir de la esfera de regulación de los órganos naturales de supervisión de las instituciones financieras".

Indicó, que vistas "…las medidas administrativas impuestas al Banco Canarias así como la deplorable situación patrimonial que presentaba, los accionistas de la contraparte, todos ellos a su vez accionistas del Banco Canarias, tratando de evadir las inspección (sic) de la Superintendencia, optaron por utilizar la vía dada por el entonces vigente artículo 20 de la Ley General de Bancos de la época, el cual permitía la enajenación de acciones a través de la Bolsa de Valores. Debemos enfatizar que toda esa supuesta operación se ejecutó sin informar previamente a [su] representada, la cual es, como es sabido, la única institución de regulación de la actividad financiera del país. El caso es que valiéndose de ese subterfugio se pretendió hacer valer tal enajenación ante la Superintendencia con motivo de la posterior intervención de la impugnante por considerársele empresa relacionada vista la detentación de acciones que tenía y que pretendía hacer ver como vendidas para evitar la intervención por parte de [su] representada" (Corchetes de esta Corte).

Que, con "…independencia de que la realización de la venta que se efectuara mediante la Bolsa de Valores fuese legal, la misma, aunque fuera aprobada por la Comisión Nacional de Valores, al no

tener ese órgano las competencias dejando entrever que la Superintendencia no puede asimilarse tal autorización a la de [su] representada, en razón a que los extremos que debía verificar la Comisión para la realización de la transacción eran completamente a (sic) los (sic) revisaría la Superintendencia. Adicionalmente tenemos que existe jurisprudencia reiterada respecto a que si bien la venta de la acciones (sic) pudo efectuarse en la Bolsa, la misma no sustituye la obligación de registrar la venta en el libro de accionistas, requisito que es el que permite que tal enajenación tenga efectos respecto de terceros, terceros entre los cuales, no sobra mencionar, debe contarse a la Superintendencia" (Corchetes de esta Corte).

Manifestó, que "En relación con lo alegado respecto a la inscripción en el Libro de Accionistas, (…) [indicó que] con el solo agregado de que las normas que tanto invoca la contraparte en su escrito de demanda no señalan nada respecto a tal obligación, es decir, el alegado artículo 20 de la entonces vigente (…) Ley General de Bancos no tenía disposición alguna que pueda entenderse como derogatoria del pacífico y reiterado criterio según el cual las ventas de acciones no tiene efectos respecto de terceros si no se cumple con el requisito antes indicado. En consecuencia, la norma invocada debe interpretarse en el sentido en que tal transacción podía realizarse, pero sólo a efectos inter partes, quedando vigentes y plenamente aplicables los requerimientos de derecho común exigidos para que tal negocio jurídico surtiese efectos respecto de terceros" (Corchetes de esta Corte).

Adujo, que en cuanto a que "…la Superintendencia no aportó pruebas respecto a la aludida no inscripción, (…) [reiteró que] en materia de pruebas es un aforismo reconocido y pacífico el que los denominados hechos negativos no se prueban por lo que mal puede exigírsele a la Superintendencia lo que a nadie se le puede pedir visto que los asertos de [su] representada se fundamental (sic) en tal tipo de hechos. En consecuencia no tiene asidero alguno tanto lo alegado respecto a la obligatoriedad de la inscripción en el libro de accionistas como lo relativo a la supuesta obligación de probar hechos negativos…" (Corchetes de esta Corte).

Que, "…aún cuando las ventas de acciones se efectuasen en la Bolsa de Valores, debía ser aprobadas por la entonces Superintendencia de Bancos y otras (sic) Instituciones Financieras…".

Sostuvo, que "…tanto la denuncia de exceso de poder, como la supuesta falta de juridicidad de la exigencia de la aprobación de la Superintendencia no sólo tiene fundamento normativo, sino que además tiene como única intención la protección del interés general…".

Aclaró, que "…la aplicación retroactiva de una norma implica extender los efectos de la misma a hechos pasados. Lo señalado por la contraparte no es tal situación, ya que indica que supuestamente se hizo una 'distorsión en la interpretación y aplicación del texto legal vigente para el momento', por lo que resulta a todas luces contradictorio lo expuesto ya que se hizo o una cosa o la otra, o se aplicó una norma posterior o se interpretó la norma vigente para el momento en que verificaron los hechos, la situación no pueden lógicamente ser coetáneas. Siendo así la falta de fundamento de las afirmaciones expuesta (sic)…".

Insistió, en que "…no hubo distorsión alguna de la norma vigente, porque (…) tal norma nada señala respecto de la obligación de hacer la inscripción de la venta en el libro de accionistas y por tal motivo la decisión de [su] representada resulta del todo apegada a derecho" (Corchetes de esta Corte).

Finalmente, solicitó que se "...declare SIN LUGAR la demanda de nulidad interpuesta en virtud de ser manifiestamente infundada y absolutamente temeraria" (Mayúsculas y negrillas del original).

-III-
## DEL ESCRITO DE INFORMES DE LA PARTE ACTORA

En fecha 9 de mayo de 2012, la Representación Judicial de la Sociedad Mercantil Credican, C.A., consignó escrito de informes en la presente causa, en el cual reprodujo los mismos argumentos de hecho y de derecho sentados en el recurso contencioso administrativo de nulidad interpuesto.

-IV-
## DEL ESCRITO DE INFORMES DE LA SUPERINTENDENCIA DE LAS INSTITUCIONES DEL SECTOR BANCARIO (SUDEBAN)

En fecha 8 de mayo de 2012, la Representación Judicial de la Superintendencia de las Instituciones del Sector Bancario, consignó escrito de informes en la presente causa, en el cual reprodujo los mismos argumentos de hecho y de derecho sentados en el escrito de consideraciones presentado.

-V-
## DEL ESCRITO DE OPINIÓN FISCAL

En fecha 18 de abril de 2012, el Abogado Juan Betancourt, actuando en su condición de Fiscal Segundo del Ministerio Público ante las Cortes de lo Contencioso Administrativo, consignó escrito de opinión fiscal del referido ente en el cual expuso lo siguiente:

Manifestó, que "...la intervención de bancos consiste en una actuación del Estado en protección del orden económico nacional, en esos casos, el ente pasa a ejercer provisoriamente el control de la entidad intervenida, en aras de evitar los riesgos y efectos perjudiciales que son consecuencia del debacle bancario, y se presenta cuando a pesar de haberse tomado una serie de medidas operacionales previas, dictadas por la autoridad supervisora tendentes a rescatar a la entidad bancaria de una posición de riesgo económico significativo, tal seguimiento administrativo, sin embargo, no resulta suficiente para solventar el grave estado patrimonial presentado, persistiendo, por tanto, una situación de riesgo considerable dentro del patrimonio financiero implicado, que amenaza con distorsionar el orden público económico".

Indicó, que "El órgano estadal de control cambiario, interviene en aras de proteger los intereses de los depositantes y el público en general que de algún modo se encuentra jurídicamente relacionado con la entidad –o entidades– financiera (s) afectada por la medida, quienes, confiando en la apariencia del banco y la actividad de captación y aprovisionamiento que acostumbradamente recibe del público y sus operaciones comerciales cotidianas, no conocen el déficit económico en que se encuentra, y que, por razones que interesan a su propia recuperación y al orden público, no pueden ser comunicadas al colectivo en general, so pena de perpetrar actos delictivos y originar serias desconfianzas en el desenvolvimiento del sistema bancario nacional".

Señaló, que la Superintendencia en el ejercicio del control de las actividades desarrolladas por los entes sujetos a su control, observó que dicha empresa había incumplido con el mencionado requisito, siendo este uno de los hechos generadores de la intervención contenida en el acto recurrido, sin que la parte recurrente haya promovido alegato alguno en su descargo, que permita desvirtuar la condición de empresa relacionada que se le atribuye, más aún ante el incumplimiento de un requisito exigido por el ente recurrido como lo es la formalidad de la inscripción del traspaso de las aludidas acciones en el Libro de Accionistas respectivo, establecido en el artículo 296 del Código de Comercio, siendo éste el requisito fundamental que sirvió de base a la Superintendencia (…) para considerarla como empresa relacionada y emanar su decisión, ello en atención a la necesidad de cumplir con el requisito de publicidad para que dicha transacción contenida en el aludido traspaso de acciones pudiera surtir efectos frente a terceros…".

Precisó, que "…si bien es cierto la carga de la prueba lo tiene en este caso la administración (sic), no es menos cierto que la recurrente debió aportar en los posteriores recursos que ejerció los recaudos necesarios para su defensa, en este caso la inscripción en el Libro de Accionistas…".

En cuanto a la irretroactividad alegada por la parte actora, adujo que "…el acto administrativo contenido en la Resolución Nº 530-10, de fecha 27 (sic) de octubre de 2010, emanó con fundamento a hechos ocurridos con vigencia del Decreto No. 6.287 con Rango, Valor y Fuerza de ley de Reforma Parcial de la Ley de Bancos y Otras Instituciones Financieras, publicado en Gaceta Oficial No. 5892 Extraordinaria del 31 de julio de 2008, y no como pretender invocar la parte recurrente con la Ley General de Bancos y Otras Instituciones Financieras de fecha 23 de diciembre de 2009, publicada en la Gaceta Oficial No. 5.947 Extraordinaria del 23 de diciembre de 2009…".

Que, en aras de resguardar el equilibrio económico "…del sector financiero nacional, establecer cautelarmente que previa a la autorización otorgada por la Comisión Nacional de Valores, dicha Comisión deberá remitir en un plazo no mayor de tres días hábiles la información sobre la adquisición de dichas operaciones mercantiles a la Superintendencia de Bancos, para que ésta provisionalmente hasta que se decida el fondo de esa causa, verifique los presupuestos procesales establecidos en los artículos 12 y 20 de la mencionada Ley, en aras de salvaguardar los derechos que se pudiesen ver afectados por operaciones fraudulentas posteriormente viciadas de nulidad".

En último lugar, solicitó que se declare "…'SIN LUGAR'…" el recurso contencioso administrativo de nulidad interpuesto" (Mayúsculas y negrillas del original).

-VI-
DE LAS PRUEBAS INCORPORADAS EN EL PROCESO

I.- Pruebas de la parte Recurrente:
1. Pruebas acompañadas con la presente demanda:

-Copia simple del oficio S/N de fecha 30 de septiembre de 2009, emanada del ciudadano Victor Julio Flores, actuando con el carácter de Presidente de la Bolsa de Valores de Caracas, C.A., a través de la cual certificó que se negoció un total de un mil trescientos veinticinco millones ochenta y siete mil seiscientos setenta y tres (1.325.087.673) acciones de la Sociedad Mercantil Banco Canarias Banco

Universal, C.A., por un Doc 46446-3 ... cuarenta cien, cincuenta mil novecientos seis con dieciocho céntimos (Bsf. 9.650.050.906,18), lo que representa el 99,86050% del capital social de la compañía (Folio 63 del expediente judicial).

-Copia simple de la Resolución N° 530.10 de fecha 22 de octubre de 2010, dictada por la Superintendencia de Bancos y Otras Instituciones Financieras, hoy, Superintendencia de las Instituciones del Sector Bancario (SUDEBAN), mediante la cual declaró Sin Lugar el recurso de reconsideración interpuesto pos la Sociedad Mercantil Credican C.A., en contra del acto administrativo contenido en la Resolución N° 468.10 de fecha 27 de agosto de 2010, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.498 de fecha 30 de ese mismo mes y año, mediante la cual ordenó la intervención de la referida Sociedad Mercantil (Folios 15 al 21 del expediente judicial).

-Copia simple de la boleta de notificación signada bajo la nomenclatura SBIF-DSB-CJ-PA-21405 de fecha 22 de octubre de 2010, emanada de la aludida Superintendencia, a través de la cual se le notificó a la parte demandante el contenido de la Resolución N° 530.10 de esa misma fecha, advirtiéndole que contra la misma podía interponer el recurso contencioso administrativo de nulidad dentro del lapso de cuarenta y cinco (45) días continuos siguientes a la notificación de dicho acto, ello de conformidad con lo establecido en los artículos 399 y 404 de la Ley General de Bancos y Otras Instituciones Financieras (Folio 14 del expediente judicial).

-Copia certificada de las sucesivas transformaciones devenidas por la fusión entre el Banco Canarias de Venezuela, Banco Universal C.A., y el Banco Provivienda, C.A., debidamente notariadas ante la Notaría Pública Cuarta del Municipio Chacao del estado Miranda, las cuales fueron registradas ante el Registro Mercantil Primero de la Circunscripción Judicial del Distrito Capital y del estado Miranda en fecha 3 de febrero de 2004, bajo el N° 65, Tomo 13-A Pro (Folios 22 al 62 del expediente judicial).

-VII-
DE LA COMPETENCIA

Corresponde a esta Corte Primera de lo Contencioso Administrativo establecer previamente su competencia y en tal sentido observa, lo siguiente:

El artículo 452 de la Ley General de Bancos y Otras Instituciones Financieras, publicada en la Gaceta Oficial N° 5.892 en fecha 31 de julio de 2008, aplicable rationae temporis, dispone que "Las decisiones del Superintendente serán recurribles por ante la Corte Primera de lo Contencioso Administrativo dentro de los cuarenta y cinco (45) días continuos siguientes a la notificación de la decisión..." (Negrillas de esta Corte).

De la disposición transcrita ut supra, se desprende expresamente que esta Corte es el Órgano Jurisdiccional competente para conocer, en primera instancia, de los recursos que se ejerzan contra los actos administrativos dictados por la Superintendencia de Bancos y Otras Instituciones Financieras, actualmente Superintendencia de las Instituciones del Sector Bancario. En consecuencia, respecto del

caso sub examine, esta Corte ANULA PARCIALMENTE el acto administrativo de nulidad interpuesto contra el acto administrativo contenido en la Resolución N° 503-10 de fecha 22 de octubre de 2010, dictado por la referida Superintendencia. Así se declara.

-VIII-
CONSIDERACIONES PARA DECIDIR

Determinada como ha sido la competencia para conocer de la presente demanda, y previo al examen de fondo correspondiente a la pretensión deducida en la presente demanda, debe esta Corte Primera de lo Contencioso Administrativo pronunciarse sobre los alegatos que esgrimieran los Abogados Luis Ramón Obregón y María Carolina Moros, actuando con el carácter de Apoderados Judiciales de la "Junta de Administradores de la Sociedad Mercantil Credican, C.A.", designados por la Superintendencia de las Instituciones del Sector Bancario (SUDEBAN), los cuales presentaron escrito en fecha 24 de noviembre de 2011, mediante el cual solicitaron la "...NULIDAD DEL PRESENTE PROCEDIMIENTO que se sustancia (…) ya que claramente la presente acción ha sido interpuesta en forma ilegal, por medio de unos profesionales del derecho que no representan en modo alguno a [su] representada y que se han arrogado una representación (sic) judicial (sic) que no tienen, en detrimento de esta Corte y pretendiendo desconocer la existencia de unos administradores designados en el acto de intervención que se mantiene vigente por claro mandato legal, y que son los únicos capacitados para representar a la empresa CREDICAN, C.A. desde la fecha en que su intervención fue publicada en Gaceta Oficial, en fecha 30 de agosto de 2010…" (Corchetes de esta Corte, mayúsculas, negrillas y subrayado del original).

Resaltaron, que los poderes otorgados al Abogado que interpone la presente demanda de nulidad, fueron concedidos "...CON POSTERIORIDAD AL DECRETO DE INTERVENCIÓN, Y POR PARTE DE UN DIRECTIVO SALIENTE DE LA EMPRESA INTERVENIDA, lo cual vicia de la más clara nulidad dichos instrumentos poderes y devela la FALTA DE REPRESENTACIÓN PROCESAL de los ciudadanos abogados (sic) actuantes en el presente proceso" (Mayúsculas, negrillas y subrayado del original).

Visto lo anterior, se observa que la denuncia esgrimida por la Representación Judicial de la "Junta de Administradores de la Sociedad Mercantil Credican, C.A.", se circunscribe a señalar que el ciudadano Luis Jaramillo, actuando con el carácter de "Apoderado Judicial" de la referida Sociedad Mercantil no se encontraba facultado para interponer la presente demanda de nulidad, debido a que el poder que le fue conferido, presuntamente lo otorgó un ex director de la precitada empresa, en consecuencia, éste último mal podía dar un poder en nombre de la compañía, de la cual ya no formaba parte.

Siendo ello así y a los fines de determinar quién tiene la cualidad jurídica para interponer la mencionada demanda de nulidad, resulta pertinente para esta Corte Primera de lo Contencioso Administrativo señalar que la cualidad se define como la identidad lógica entre quien se afirma titular de un derecho y aquél a quien la Ley, en forma abstracta, faculta para hacerlo valer en juicio (legitimación activa); y, en segundo lugar, entre la persona contra quien se ejerce tal derecho y aquélla a quien la Ley determina para sostener el juicio (legitimación pasiva). Así, la ausencia de esta correspondencia configura la falta de cualidad activa o pasiva, según sea el caso.

Al respecto, se indica que a quien se le atribuye la tendrá cualidad activa para mantener un juicio "toda persona que se afirme titular de un interés jurídico propio" y tendrá cualidad pasiva, "toda persona contra quien se afirme la existencia de ese interés". De manera que, la cualidad es "la relación de identidad lógica entre la persona del actor, concretamente considerada, y la persona abstracta a quien la ley concede la acción o la persona contra quien se concede y contra quien se ejercita de tal manera" (Ver Loreto, Luis, Ensayos Jurídicos, "Contribución al Estudio de la Excepción de Inadmisibilidad por falta de cualidad", Fundación Roberto Goldschmidt, Editorial Jurídica Venezolana, Caracas 1987).

Igualmente, con relación a la cualidad se pronunció la Sala Político Administrativa del Tribunal Supremo de Justicia en sentencia N° 6.142, de fecha 9 de noviembre de 2005, caso: "Chazali Abodon Fandy vs Compañía Anónima de Venezuela (C.A.N.T.V.)", al expresar que "la cualidad debe entenderse como la idoneidad activa o pasiva de la persona para actuar válidamente en juicio, idoneidad que debe ser suficiente para que el órgano jurisdiccional pueda emitir un pronunciamiento de mérito a favor o en contra".

En ese mismo sentido, el artículo 136 del Código de Procedimiento Civil, aplicable por remisión expresa del artículo 31 de la Ley Orgánica de la Jurisdicción Contencioso Administrativa, dispone lo siguiente:

"Artículo 136.- Son capaces para obrar en juicio, las personas que tengan el libre ejercicio de sus derechos, las cuales pueden gestionar por sí mismas o por medio de apoderados, salvo las limitaciones establecidas en la ley" (Resaltado de esta Corte).

Atendiendo al mencionado supuesto, es preciso destacar lo establecido en el artículo 4 de la Ley de Abogados, el cual dispone lo siguiente:

"Artículo 4.- Toda persona puede utilizar los órganos de la administración de justicia para la defensa de sus derechos e intereses. Sin embargo, quien sin ser abogado deba estar en juicio como actor, como demandado o cuando se trate de quien ejerza la representación por disposición de la Ley o en virtud de contrato, deberá nombrar abogado, para que lo represente o asista en todo proceso" (Resaltado de esta Corte).

De conformidad con lo expuesto, se evidencia que nuestro derecho positivo consagra que cualquier persona que tenga el libre ejercicio de sus derechos, es capaz para obrar en juicio, es decir, posee plena capacidad procesal, no obstante, si bien toda persona con el libre ejercicio de sus derechos tiene capacidad procesal para intervenir en juicio, no toda persona tiene la facultad de gestionar por sí misma las actuaciones procesales en un determinado juicio, es por ello que, legalmente se exige a estas personas para intervenir en dichos procesos, ser representadas o estar debidamente asistidas por un profesional del derecho.

En virtud de lo anterior, se estima que la actuación de las partes en todo proceso, puede ser efectuada a través de Apoderados debidamente facultados por mandato o poder, o en su defecto, pueden simplemente hacerse asistir por un profesional del derecho para la realización de los actos procesales, en cuyo caso, se exige que la parte realice personalmente cada acto con la asistencia de Abogado, y son ambos, tanto parte, como el Abogado, quienes deben suscribir los actos. En definitiva, cualquier

persona que pretenda hacer el recurso de que se trate, deberá concurrir personalmente al Órgano Jurisdiccional en cuestión, acompañado del profesional que lo asiste y suscribir conjuntamente con aquél, cualquier solicitud que pretenda hacer valer en determinado proceso.

Ahora bien, en el caso bajo estudio, observa esta Corte Primera de lo Contencioso Administrativo que en fecha 27 de agosto de 2010, mediante Resolución signada bajo el N° 468-10, dictada por la Superintendencia de Bancos y Otras Instituciones Financieras, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.498 de fecha 30 de ese mismo mes y año, fue intervenida la Sociedad Mercantil Credican, C.A., debido a que se constató que la composición accionaria de la precitada empresa estaba conformada por "CIENTO QUINCE MILLONES TREINTA Y SEIS MIL (115.036.000) acciones, las cuales pertenecen íntegramente a socios del Banco Canarias de Venezuela, Banco Universal, C.A…", en consecuencia, vista la vinculación existente con la mencionada institución financiera, la cual fue acordada su liquidación mediante Resolución N° 627.09 de fecha 27 de noviembre de 2009, por la referida Superintendencia, la cual fue publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 37.316 de fecha 27 de noviembre de 2009, fue intervenida la empresa objeto del caso de marras (Mayúsculas del original).

Al respecto, resulta pertinente indicar que en la Resolución N° 468-10 de fecha 27 de agosto de 2010, mediante la cual se intervino a la demandante fueron designados como integrantes de la Junta Interventora a los ciudadanos Kimien María Chang de Negrón y Edgar Martínez Olmedillo.

En este sentido, estima esta Corte traer a colación lo establecido en el artículo 392 de la Ley General de Bancos y Otras Instituciones Financieras publicada en Gaceta Oficial de la República Bolivariana de Venezuela N° 5.947 en fecha 23 de diciembre de 2009, aplicable rationae temporis, el cual dispone: "Artículo 392. El Superintendente de Bancos y Otras Instituciones Financieras, en el mismo acto administrativo donde acuerde la intervención, designará uno o varios interventores, a quienes se conferirán las más amplias facultades de administración, disposición, control y vigilancia, incluyendo todas las atribuciones que la Ley o los estatutos confieren a la asamblea, a la junta administradora, al presidente y a los demás órganos del ente intervenido. La intervención puede acordarse con o sin cese de la intermediación financiera de la institución que se trate".

Del artículo transcrito, se desprende que, al designarse a los interventores, pasan los mismos a adquirir no sólo las facultades necesarias para el control, disposición, administración y vigilancia de la Sociedad Mercantil intervenida, sino además, las atribuciones que poseían la Asamblea, Junta Administradora, Presidente y demás cargos de la sociedad intervenida antes de dicha designación.

Ello así, se aprecia que al momento de la intervención todas las facultades que detentaban los Presidentes, Vice-Presidentes y Directivos de las Sociedades Mercantiles intervenidas pasan a los integrantes de la Junta Interventora designada mediante dicho acto administrativo, son éstos, y no los anteriores Directivos, quienes podrán actuar en Representación de la Sociedad Mercantil intervenida, estando facultados estos últimos para recurrir contra dicho acto administrativo en nombre propio y dentro del lapso establecido legalmente a tales fines (Vid. sentencia de fecha 5 de noviembre de 2012, dictada por la Corte Segunda de lo Contencioso Administrativo, caso: Inversiones MM 500 S.A. vs Superintendencia de las Instituciones del Sector Bancario).

Ahora bien, en el caso concreto, observa esta Corte que en fecha 9 de septiembre de 2010, el ciudadano Juan Fernando Meneses Nóbrega, actuando como "Director Ejecutivo de la Sociedad Mercantil Credican, C.A.", le otorgó un poder especial debidamente notariado ante la Notaría Pública Décima Secta del Municipio Libertador del Distrito Capital e inscrito bajo el Nº 56, Tomo 124 de los libros de autenticaciones de esa oficina pública, al Abogado Luis Jaramillo, a los fines que represente a la referida Sociedad Mercantil, entre otras cosas "ante cualquier Institución, Organismo o Autoridad Administrativa o Jurisdiccional de la República Bolivariana de Venezuela, interponer toda clase de recursos sea en sede administrativa o judicial, seguir los procesos en todos sus estados, instancias e incidencias; presentar peticiones, solicitudes y reclamaciones de cualquier naturaleza; darse por citado y por notificado en nombre de la compañía, interponiendo cualquier tipo de escritos y peticiones que fueren menester y necesarios…" (Folios 11, 12 y 13 del expediente judicial).

Asimismo, en fecha 22 de octubre de 2010, mediante Resolución Nº 530.10, emanada de la Superintendencia de Bancos y Otras Instituciones Financieras, hoy, Superintendencia de las Instituciones del Sector Bancario (SUDEBAN), el aludido órgano declaró Sin Lugar el recurso de reconsideración interpuesto por la Sociedad Mercantil Credican, C.A., en contra del acto administrativo contenido en la Resolución Nº 468.10 de fecha 27 de agosto de 2010.

En consecuencia, en fecha 2 de diciembre de 2010, el precitado ciudadano Luis Jaramillo, actuando con la SUPUESTA "…condición de apoderado (sic) de CREDICAN, C.A.), interpuso la presente demanda de nulidad contra el acto administrativo contenido en la Resolución Nº 530-10, de fecha 22 de octubre de ese mismo año, emanada por la referida Superintendencia.

Igualmente, se evidencia que en fecha 11 de agosto de 2011, el aludido Abogado, consignó un nuevo poder notariado otra vez ante la Notaría Décima Sexta del Municipio Libertador del Distrito Capital, anotado bajo el Nº 47, Tomo 227 de los Libros de Autenticaciones llevados por esa oficina pública, el cual fue otorgado por el ciudadano Juan Fernando Meneses, actuando en su condición de "Director Ejecutivo de la Sociedad Mercantil Credican, C.A.", a través del cual le permitía al profesional del derecho sustituir las atribuciones conferidas mediante el mencionado poder especial, es por ello que, el ciudadano Luis Jaramillo, sustituyó dicho poder con su referida ampliación en los Abogados Zoraida Pinto y Victor Luis Jaramillo.
Como corolario de lo anterior, se aprecia que en fecha 15 de febrero de 2011, mediante Resolución Nº 058.11 dictada por la Superintendencia de las Instituciones del Sector Bancario, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela Nº 39.714 de fecha 15 de julio de ese mismo año, se designó a los ciudadanos Rafael José Moreno y Rosa María Jiménez, respectivamente, administradores de todas aquellas Sociedades Mercantiles relacionadas al Grupo Financiero Banco Canarias de Venezuela.

Al respecto, es de resaltar que se dejó sentado en la citada Resolución que los administradores designados tendrían "las más amplias facultades de administración, control y vigilancia, incluyendo todas las atribuciones que tanto la Ley como los Estatutos Sociales confieren a las Asambleas de Accionistas, a los Administradores y a los demás órganos de las empresas [intervenidas]" (Corchetes de esta Corte).

Ello así, (…) dejó sin efecto (…) quedaren "expresamente" revocadas todas las designaciones de interventores efectuadas para las empresas relacionadas intervenidas del Grupo Financiero Banco Canarias de Venezuela (…) no rehabilitadas ni sometidas a liquidación administrativa, con anterioridad de la presente Resolución en la Gaceta Oficial de la República Bolivariana de Venezuela".

Es por ello que, en fecha 23 de noviembre de 2011, los precitados ciudadanos le otorgaron un poder a los Abogados Luis Ramón Obregón y María Carolina Moros, ante la Notaría Pública Tercera del Municipio Chacao del estado Miranda, e inscrito bajo el Nº 6, Tomo 235 de los Libros de Autenticaciones llevados por esa oficina pública, a los fines que dichos profesionales representaran a la Sociedad Mercanti.l edican, C.A., de fecha 27 de agosto de 2010, la cual se encuentra intervenida mediante Resolución Nº de octubre de 2010, ante "todas y cualesquiera autoridades civiles, políticas y administrativas de la República Bolivariana de Venezuela, sean nacionales, estadales o municipales, o frente a cualesquiera personas naturales o jurídicas y también por ante todos y cualesquiera tribunales de la República en todos los actos, hechos y negocios jurídicos, así como asuntos administrativos, civiles, mercantiles, judiciales y extrajudiciales sean cuales fueren sus respectivas materias, orígenes, naturalezas y los procedimientos que puedan dar lugar en los cuales puede tener interés o ser parte la prenombrada sociedad (sic) mercantil (sic), con ocasión del Recurso Contencioso Administrativo de Nulidad que cursa en el expediente Nº AP42-N-2010-000648, sustanciado por la Corte Primera de lo Contencioso Administrativo" (Folios 242 al 244 del expediente judicial) (Negrillas del original).

Ahora bien, expuesto lo precedente, observa esta Corte Primera de lo Contencioso Administrativo que la Superintendencia de Bancos y Otras Instituciones Financieras, hoy, Superintendencia de las Instituciones del Sector Bancario (SUDEBAN), mediante Resolución Nº 486.10 de fecha 27 de agosto de 2010, acordó intervenir todas aquellas empresas que tuvieran algún tipo de vinculación con el grupo financiero Banco Canarias de Venezuela, en consecuencia, fue intervenida la Sociedad Mercantil Credican, C.A. debido a que se constató que la composición accionaria de la precitada empresa estaba conformada por "CIENTO QUINCE MILLONES TREINTA Y SEIS MIL (115.036.000) acciones, las cuales pertenecen íntegramente a socios del Banco Canarias de Venezuela, Banco Universal, C.A…".

En consecuencia, el ciudadano Juan Meneses, actuando con el carácter de "Director Ejecutivo de la Sociedad Mercantil Credican, C.A.", le otorgó al Abogado Luis Jaramillo un poder especial a través del cual le confería la facultad de presentar ante cualquier órgano administrativo o jurisdiccional cualquier recurso en dichas sedes, seguir los procesos en todos sus estados, instancias e incidencias, presentar peticiones, solicitudes y reclamaciones de cualquier clase, es por ello que, interpuso la presente de nulidad en fecha 2 de diciembre de 2010.

No obstante lo anterior, se evidencia que se designó a una Junta Interventora, la cual mediante Resolución Nº 058.11 de fecha 15 de febrero de 2011, fue revocada por una Junta de Administradores, conformada por los ciudadanos Rafael Moreno y Rosa María Jiménez, que tenían como fin administrar, controlar y vigilar las actividades realizadas por todas aquellas Sociedades relacionadas al Grupo Financiero Banco Canarias de Venezuela.

En atención a ello, resulta pertinente acotar que cuando la Superintendencia de las Instituciones del

Sector Bancario (SUDEBAN) de intervenir a un grupo financiero o bancos con empresas relacionadas, lo hace a los fines de salvaguardar el aporte o los intereses económicos que la entidad bancaria o una importante cantidad de sus directivos mantienen comprometidos con la empresa o empresas en cuestión.

Asimismo, es de indicar que, tal como se señaló precedentemente, una vez que la institución financiera o la empresa vinculada a un grupo financiero es intervenida, cesa toda representación de los directivos y de los administradores anteriores a la empresa intervenida, es decir, cesan los cargos directivos previos a la intervención, tanto en sus funciones como administradores y como representantes legales de la empresa sometida a intervención por el órgano correspondiente.

Siendo ello así, y visto que la Superintendencia de las Instituciones del Sector Bancario (SUDEBAN) acordó, tal como se señaló precedentemente, la intervención de la Sociedad Mercantil Credican C.A., mediante Resolución N° 486.10 de fecha 27 de agosto de 2010, estima esta Corte que todas las actuaciones emanadas de la antigua Junta Directiva de dicha empresa, posterior a la citada intervención, resultan nulas, ello en virtud de que según la prenombrada Resolución, así como la Resolución 058.11 de fecha 15 de febrero de 2011, publicada en la Gaceta Oficial de la República Bolivariana de Venezuela N° 39.714 de fecha 15 de julio de ese mismo año, serían los ciudadanos Rafael Moreno y Rosa Jiménez, en su condición de integrantes de la Junta Administrativa de la compañía intervenida, quienes tendrían las "amplias facultades de administración, control y vigilancia" de las Sociedades Mercantiles intervenidas, dentro de la cual se encuentra la empresa in commento.

En tal sentido, entiende esta Instancia Jurisdiccional que el ciudadano Juan Fernando Meneses Nóbrega, actuando en su condición de Ex Director de la Sociedad Mercantil Credican, C.A., podía en su propio nombre, como accionista otorgar un poder, a los fines que defendiera sus intereses en juicio, y no en calidad de "Director Ejecutivo de la Sociedad Mercantil Credican, C.A.", dado que, una vez intervenida la aludida empresa, cesan todas las atribuciones conferidas a los cargos previos a dicha intervención, por lo tanto, los únicos que podían otorgar un poder en nombre de la referida empresa son los ciudadanos Rafael José Moreno y Rosa María Jiménez, actuando en su calidad de Administradores de la misma, de conformidad a las potestades otorgadas por la aludida Resolución.

En consecuencia, esta Corte Primera de lo Contencioso Administrativo declara INADMISIBLE la demanda de nulidad interpuesta por el ciudadano Luis Jaramillo, actuando con el carácter de "Apoderado Judicial de la Sociedad Mercantil Credican, C.A.". Así se decide.

En virtud del pronunciamiento anterior, este Órgano Jurisdiccional considera inoficioso pronunciarse sobre el resto de los alegatos y defensas expuestas por los Abogados Luis Ramón Obregón y María Carolina Moros, actuando con el carácter de Apoderados Judiciales de la "Junta de Administradores de la Sociedad Mercantil Credican, C.A.". Así se decide.

DECISIÓN

Por las razones antes expuestas esta Corte Primera de lo Contencioso Administrativo, administrando justicia en nombre de la República Bolivariana de Venezuela y por autoridad de la Ley, declara:

1. Su COMPETENCIA para conocer de la demanda de nulidad interpuesta por el Abogado Luis Jaramillo, inscrito en el Instituto de Previsión Social del Abogado (INPREABOGADO) bajo el N° 5.001, actuando con el carácter de Apoderado Judicial de la Sociedad Mercantil CREDICAN, C.A., contra el acto administrativo contenido en la Resolución N° 503-10 de fecha 27 de octubre de 2010, dictada por la SUPERINTENDENCIA DE BANCOS Y OTRAS INSTITUCIONES FINANCIERAS (SUDEBAN), hoy, SUPERINTENDENCIA DE LAS INSTITUCIONES DEL SECTOR BANCARIO, mediante la cual declaró Sin Lugar el recurso de reconsideración interpuesto por la parte actora, contra la Resolución N° 468-10 de fecha 27 de agosto de 2010, por la cual se ordenó la intervención de la empresa recurrente.

2. INADMISIBLE la demanda de nulidad interpuesta.

Publíquese, regístrese y notifíquese. Cúmplase lo ordenado.

Dada, sellada y firmada en la Sala de Sesiones de la Corte Primera de lo Contencioso Administrativo, en Caracas a los veintidós (22) días del mes de noviembre de dos mil doce (2012). Años 202° de la Independencia y 153° de la Federación.

El Juez Presidente,

EFRÉN NAVARRO
La Juez Vicepresidente,

MARÍA EUGENIA MATA

La Juez,

MARISOL MARÍN R.
PONENTE

El Secretario,

IVÁN HIDALGO

Exp. N° AP42-N-2010-000648
MMR/20

En          fecha          _____    (          )          de
_____ de dos mil doce (2012), siendo la (s) _____
de   la   _____,   se   publicó   y   registró   la   anterior   decisión   bajo   el   N°
_____.

El Secretario.