## ARTICLE VI

## RESIDUAL CERTIFICATE

SECTION 601. <u>Sources of Payment</u>.   Payments under or in respect of the Residual Certificate shall be payable only from the sources provided therefor under this Indenture and only upon the terms of this Indenture.  Notwithstanding anything to the contrary in this Indenture or the Residual Certificate, no amounts shall be due and payable through or in respect of the Residual Certificate, and the registered owner of the Residual Certificate shall have no right to, or interest of any kind in, the payment of any such amount, unless and until the Indenture Trustee shall determine that funds are available therefor in accordance with Article IV of this Indenture and the Indenture Trustee shall in fact withdraw funds from the Accounts for such payment and transfer the same to the registered owner of the Residual Certificate.

SECTION 602. <u>Delivery to Indenture Trustee</u>.   At delivery of the Bonds, the Residual Certificate shall be delivered to the State, for deposit to the credit of the Tobacco Securitization Trust Account, in furtherance of the Sales Agreement,  and registered on the books of the Issuer kept by the Indenture Trustee.

## ARTICLE VII

## THE FIDUCIARIES

SECTION 701. <u>Indenture Trustee's Organization, Authorization, Capacity and Responsibility</u>.

(a)     The Indenture Trustee represents and warrants that it is duly organized and validly existing under the laws of the jurisdiction of its organization, having the authority to engage in the trust business within the State, including the capacity to exercise the powers and duties of the Indenture Trustee hereunder, and that by proper corporate action it has duly authorized the execution and delivery of this Indenture. The Indenture Trustee shall maintain on file with the Issuer a written certificate specifying the name, address, telephone number, email address and telefacsimile number of every Authorized Officer of the Indenture Trustee (x) having direct responsibility for the administration of this Indenture or (y) to whom a particular matter is referred because of such officer's knowledge of and familiarity with the particular subject.

(b)     The duties and responsibilities of the Indenture Trustee shall be as set forth herein.  Notwithstanding the foregoing, no provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, unless it receives indemnity reasonably satisfactory to it against any loss, liability or expense; provided, that the Indenture Trustee shall make the payments and distributions required by this Indenture without requiring that any indemnity be provided to it.   Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Article.

(c)     As Indenture Trustee hereunder:

(1)     the Indenture Trustee may conclusively rely and shall be fully protected in acting or refraining from acting upon any Officer's Certificate, opinion of Counsel (or both), resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper person or persons. The Indenture Trustee need not investigate any fact or matter stated in the document, but the Indenture Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit;

(2)     before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate and/or an opinion of Counsel. The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on such certificate or opinion. Whenever in the administration of the trusts of this Indenture the Indenture Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering or omitting to take any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may, in the absence of negligence or bad faith on the part of the Indenture Trustee, be deemed to be conclusively proved and established by an Officer's Certificate delivered to the Indenture Trustee, and such certificate, in the absence of negligence or bad faith on the part of the Indenture Trustee, shall be full warrant to the Indenture Trustee for any action taken, suffered or omitted to be taken by it under the provisions of this Indenture upon the faith thereof;

(3)     any request, direction, order or demand of the Issuer mentioned herein shall be sufficiently evidenced by an Officer's Certificate (unless other evidence in respect thereof be herein specifically prescribed); and any Issuer resolution may be evidenced to the Indenture Trustee by a copy thereof certified by the secretary or an assistant secretary of the Issuer;

(4)     prior to the occurrence of an Event of Default hereunder and after the curing or waiving of all Events of Default, the Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, Officer's Certificate, opinion of Counsel, Issuer resolution, statement, instrument, opinion, report, notice, request, consent, order, approval, appraisal, bond, debenture, note, coupon, security, or other paper or document unless requested in writing so to do by the Holders of a majority of the principal amount of the Bonds affected and then Outstanding; and if the payment within a reasonable time to the Indenture Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee, not reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture, the Indenture Trustee may require indemnity reasonably satisfactory to it against such expenses or liabilities as a condition to proceeding;

(5)     the Indenture Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of the Issuer or Holders, unless the Issuer or Holders shall have offered to the Indenture Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction; provided, that the Indenture Trustee shall make the payments and distributions required by this Indenture without requiring any indemnity be provided to it;

(6)     the Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys;

(7)     the recitals contained herein and in the Bonds, except any such recitals relating to the Indenture Trustee, shall be taken as the statements of the Issuer, and the Indenture Trustee assumes no responsibility for their correctness. The Indenture Trustee makes no representation as to the validity or sufficiency of this Indenture or of the Bonds. The Indenture Trustee shall not be accountable for the use or application by the Issuer of the Bonds or the proceeds thereof or of any moneys paid to the Issuer pursuant to the terms of the Indenture. The Indenture Trustee shall have no responsibility with respect to any information, statement or recital in any offering circular or other disclosure material prepared or distributed with respect to the Bonds. The Indenture Trustee shall be responsible, however, for its representations contained in its certificate of authentication pertaining to each Bond;

(8)     the Indenture Trustee (i) undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee and (ii) in the absence of negligence, bad faith or willful misconduct on its part, may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished pursuant to and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Indenture Trustee, shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture; and

(9)     the Indenture Trustee shall exercise such of the rights and powers vested in it by this Indenture, and, following the occurrence of an Event of Default, or a written allegation to the Indenture Trustee that an Event of Default has occurred, use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

SECTION 702.  Rights and Duties of the Fiduciaries.

(a)     All money and investments received by the Fiduciaries under this Indenture shall be held in trust, in a segregated trust account in the trust department of such Fiduciary, not commingled with any other funds, and applied solely pursuant to the provisions hereof.

(b)     The Fiduciaries shall keep proper accounts of their transactions hereunder (separate from its other accounts), which shall be open to inspection on reasonable notice by the Issuer and its representatives duly authorized in writing.

(c)     The Fiduciaries shall not be required to monitor the financial condition of the Issuer and, unless otherwise expressly provided, shall not have any responsibility with respect to reports, notices, certificates or other documents filed with them hereunder, except to make them promptly available for inspection by Bondholders.

(d)     Each Fiduciary shall be entitled to the advice of counsel (who may be counsel for any party) and shall not be liable for any action taken in good faith in reliance on such advice. Each Fiduciary may rely conclusively on any notice, certificate or other document furnished to it under this Indenture and reasonably believed by it to be genuine. A Fiduciary shall not be liable for any action taken or omitted to be taken by it in good faith and reasonably believed by it to be within the discretion or power conferred upon it, or taken by it pursuant to any direction or instruction by which it is governed under this Indenture or omitted to be taken by it by reason of the lack of direction or instruction required for such action, or be responsible for the consequences of any error of judgment reasonably made by it. When any payment or consent or other action by a Fiduciary is called for by this Indenture, the Fiduciary may defer such action pending receipt of such evidence, if any, as it may reasonably require in support thereof; except that the Indenture Trustee and any Paying Agent shall make the payments and distributions required by this Indenture without requiring that any further evidence be provided to it. A permissive right or power to act shall not be construed as a requirement to act.

(e)     The Fiduciaries shall in no event be liable for the application or misapplication of funds, or for other acts or failures to act, by any person, firm or corporation except by their respective directors, officers, agents, and employees. No recourse shall be had for any claim based on this Indenture or the Bonds against any director, officer, agent or employee of any Fiduciary unless such claim is based upon the bad faith, negligence, willful misconduct, fraud or deceit of such person.

(f)     Nothing in this Indenture shall obligate any Fiduciary to pay any debt or meet any financial obligations to any Person in relation to the Bonds except from money received for such purposes under the provisions hereof or from the exercise of the Indenture Trustee's rights hereunder.

(g)     The Fiduciaries may be or become the owner of or trade in the Bonds with the same rights as if they were not the Fiduciaries.

(h)     Unless otherwise specified by a Supplemental Indenture, the Fiduciaries shall not be required to furnish any bond or surety.

(i)     The Issuer shall, as and only as an Operating Expense, indemnify and save each Fiduciary harmless against any expenses and liabilities (including reasonable legal fees and expenses) that it may reasonably incur in the exercise of its duties hereunder and that are not due to such Fiduciary's negligence, willful misconduct or bad faith. This paragraph (i) shall survive the discharge of this Indenture or the earlier resignation or removal of such Fiduciary.

-43-

(j)     Nothing herein shall relieve any Fiduciary of responsibility for its negligence, bad faith or willful misconduct.

SECTION 703. Paying Agents. The Issuer designates the Indenture Trustee as Paying Agent. The Issuer may appoint additional Paying Agents, generally or for specific purposes, may discharge a Paying Agent from time to time and may appoint a successor, in each case with written notice to each Rating Agency. The Issuer shall designate a successor if the Indenture Trustee ceases to serve as Paying Agent. Each Paying Agent shall be a bank or trust company eligible under the laws of the State, and shall have (together with its corporate parent, if applicable) a capital and surplus of not less than $50,000,000 and be registered as a transfer agent with the Securities and Exchange Commission. The Issuer shall give notice of the appointment of a successor to the Indenture Trustee as Paying Agent in writing to each Bondholder shown on the books of the Indenture Trustee. A Paying Agent may but need not be the same Person as the Indenture Trustee. Unless otherwise provided by the Issuer, the Indenture Trustee as Paying Agent shall act as registrar and transfer agent, in accordance with Section 302.

SECTION 704. Resignation or Removal of the Indenture Trustee. The Indenture Trustee may resign on not less than 30 days' written notice to the Issuer, the Bondholders and each Rating Agency. The Indenture Trustee will promptly certify to the Issuer that it has given written notice to all Bondholders and such certificate will be conclusive evidence that such notice was given as required hereby. The Indenture Trustee shall be removed if rated below investment grade by each Rating Agency and each successor Indenture Trustee shall have an investment grade rating from each Rating Agency. The Indenture Trustee may be removed by written notice from the Issuer (if an Event of Default has not occurred) or the Holders of a majority of the principal amount of the Outstanding Bonds to the Indenture Trustee, the Issuer and each Rating Agency. Such resignation or removal shall not take effect until a successor has been appointed and has accepted the duties of Indenture Trustee.

SECTION 705. Successor Fiduciaries.

In case a Fiduciary resigns or is removed or becomes incapable of acting, or is merged or converted into (or consolidated with) another corporation or association, or sells, assigns or otherwise transfers all or substantially all of its corporate trust business, or becomes bankrupt or insolvent, or if a receiver, liquidator or conservator of a Fiduciary or of its property is appointed, or if a public officer takes charge or control of a Fiduciary, or of its property or affairs, then such Fiduciary shall with due care terminate its activities hereunder and a successor may, or in the case of the Indenture Trustee shall, be appointed by the Issuer. If the Indenture Trustee is merged or converted into (or consolidated with) another corporation or association, or if the Indenture  Trustee sells, assigns or otherwise transfers all or substantially all of its corporate trust business, then such appointed successor trustee may, but need not, be the corporation or association resulting from such merger, conversion or consolidation. The Issuer shall notify the Bondholders and each Rating Agency of the appointment of a successor Indenture Trustee in writing within 20 days after the appointment. The Issuer will promptly certify to the successor Indenture Trustee that it has given such notice to all Bondholders and such certificate will be conclusive evidence that such notice was given as required hereby. If no appointment of a successor Indenture Trustee is made within 45 days after the giving of written notice in accordance with Section 704 or after the occurrence of any other event requiring or

-44-

authorizing such appointment, the outgoing Indenture Trustee or any Bondholder may apply to any court of competent jurisdiction for the appointment of such a successor, and such court may thereupon, after such notice, if any, as such court may deem proper, appoint such successor. Any successor Indenture Trustee appointed under this section shall be a trust company or a bank (i) having trust powers and having a capital and surplus of not less than $50,000,000 and (ii) whose long-term debt obligations have been assigned an investment-grade rating by each Rating Agency or with respect to the appointment of which the Issuer shall have received a Rating Confirmation.    Any such successor Indenture Trustee shall notify the Issuer of its acceptance of the appointment and, upon giving such notice, shall become the Indenture Trustee, vested with all the property, rights, powers and duties of the Indenture Trustee hereunder, without any further act or conveyance.    Such successor Indenture Trustee shall execute, deliver, record and file such instruments as are required to confirm or perfect its succession hereunder and any predecessor Indenture Trustee shall from time to time execute, deliver, record and file such instruments as the incumbent Indenture Trustee may reasonably require to confirm or perfect any succession hereunder.

SECTION 706. Distribution Reports by Indenture Trustee. Paragraph 3.8(a) of the Issuer Tax Certificate requires that within 90 days after the beginning of each Fiscal Year, the State will notify the Issuer and Hawkins, Delafield & Wood and Preston, Gates & Ellis LLP (collectively, "Co-Bond Counsel"), and the Indenture Trustee, of the amount of certain "Available Amounts" (as defined in the Issuer Tax Certificate), the amount thereof that the State has set aside for use for one of the prescribed applications under Paragraph 3.8(b) of the Issuer Tax Certificate, and the particular prescribed applications for which such "Available Amounts" will be used. On the first Business Day of each Fiscal Year that commences after June 30, 2007, the Indenture shall notify the State in writing of that the State is required to so notify Co-Bond Counsel and the Indenture Trustee within 90 days after the beginning of such Fiscal Year. If the Indenture Trustee shall have not received such notice from the State within 90 days after the beginning of any such Fiscal Year, the Indenture Trustee shall promptly notify the State and Co-Bond Counsel of such fact.

The Indenture Trustee shall deliver to the Issuer, each Bondholder, the State and each Rating Agency at least one Business Day prior to each Distribution Date a statement prepared by the Indenture Trustee containing the following information in reasonable detail:

(a)    the aggregate principal amount of each maturity of the Bonds Outstanding on such Distribution Date, prior to any payments of principal on such Distribution Date (and indicating that the Series 2002 Bonds having Maturity Dates in the years 2005 through 2012, and the first $111,998,907.44 of Series 2002 Bonds having a stated maturity of June 1, 2026 that are redeemed or otherwise retired, are allocated to the "Working Capital Portion" of the Series 2002 Bonds,;

(b)    the aggregate amount of interest to be paid on the Bonds Outstanding on such Distribution Date;

(c)    each of the Serial Maturities, Turbo Redemptions, Turbo Term Bond Maturities and Sinking Fund Installments due to be paid to Holders of each maturity of the Bonds on such Distribution Date;

(d)    the amount on deposit in each Account as of such Distribution Date, prior to any payments to Bondholders on such Distribution Date; and

(e)    the aggregate amount of Pledged TSRs received by the Indenture Trustee since the preceding Distribution Date (or, for the statement to be prepared prior to the first Distribution Date, since the Closing Date.

SECTION 707.    Compliance Certificates and Opinions.    Upon any application or request by the Issuer to the Indenture Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee a certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with, except that in the case of any such application or request as to which the furnishing of any documents is specifically required by any provision of this Indenture relating to such particular application or request, no additional certificate need be furnished.

Except as otherwise specifically provided herein, each certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1)    a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(2)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; and

(3)    a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

SECTION 708.    Form of Documents Delivered to the Indenture Trustee.

(a)    In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

(b)    Any certificate of an Authorized Officer of the Indenture Trustee may be based, insofar as it relates to legal matters, upon an opinion of counsel, unless such Authorized Officer knows, or in the exercise of reasonable care should know, that the opinion is erroneous. Any such certificate of an Authorized Officer of the Indenture Trustee or any opinion of counsel may be based, insofar as it relates to factual matters upon a certificate or opinion of, or representations by, one or more Authorized Officers of the Issuer, stating that the information with respect to such factual matters is in the possession of the Issuer, unless such Authorized Officer or counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous. Any opinion of counsel may also be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an Authorized Officer of the Indenture Trustee, stating that the information

-46-

with respect to such matters is in the possession of the Indenture Trustee, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous. Any opinion of counsel may be based on the written opinion of other counsel, in which event such opinion of counsel shall be accompanied by a copy of such other counsel's opinion and shall include a statement to the effect that such counsel believes that such counsel and the Indenture Trustee may reasonably rely upon the opinion of such other counsel. In no event shall any opinion of counsel required by this Indenture be at the expense of the Indenture Trustee.

(c)    Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

## ARTICLE VIII

## THE BONDHOLDERS

SECTION 801. <u>Action by Bondholders</u>. Any request, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Bondholders may be contained in and evidenced by one or more writings of substantially the same tenor signed by the requisite number of Bondholders or their attorneys duly appointed in writing. Proof of the execution of any such instrument, or of an instrument appointing any such attorney, shall be sufficient for any purpose of this Indenture (except as otherwise herein expressly provided) if made in the following manner, but the Issuer or the Indenture Trustee may nevertheless in its discretion require further or other proof in cases where it deems the same desirable. The fact and date of the execution by any Bondholder or its attorney of such instrument may be proved by the certificate or signature guarantee by a guarantor institution participating in a guarantee program acceptable to the Indenture Trustee; or of any notary public or other officer authorized to take acknowledgements of deeds to be recorded in the jurisdiction in which such notary public or other officer purports to act, that the person signing such request or other instrument acknowledged to such notary public or other officer the execution thereof; or by an affidavit of a witness of such execution, duly sworn to before such notary public or other officer. The authority of the person or persons executing any such instrument on behalf of a corporate Bondholder may be established without further proof if such instrument is signed by a person purporting to be the chairperson or an executive officer of such corporation with a corporate seal affixed and attested by a person purporting to be its clerk or secretary or an assistant clerk or secretary. Any action of the Bondholder shall be irrevocable and bind all future record and beneficial owners thereof.

SECTION 802. <u>Registered Holders</u>. The enumeration in Section 303(a) of certain provisions applicable to DTC as Holder of immobilized Bonds shall not be construed in limitation of the rights of the Issuer and each Fiduciary to rely upon the registration books in all circumstances and to treat the registered owners of Bonds as the owners thereof for all purposes not otherwise specifically provided for by law or in this Indenture. Notwithstanding any other provisions hereof, any payment to the registered owner of a Bond shall satisfy the Issuer's obligations thereon to the extent of such payment.

# ARTICLE IX

## DEFAULT AND REMEDIES

SECTION 901. <u>Events of Default</u>. "Event of Default" in this Indenture means any one of the events set forth below.

(a)    failure to pay, when due, interest on any Bond;

(b)    failure to pay, when due, any Serial Maturity, Turbo Term Bond Maturity or Swap Payment;

(c)    failure of the Issuer to observe or perform any other provision of this Indenture which is not remedied within 60 days after written notice thereof is given to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Holders of at least 25% in principal amount of the Bonds then Outstanding. In the case of a default specified in this subsection, if the default be such that it cannot be corrected within the said 60-day period, it shall not constitute an Event of Default if corrective action is instituted by the Issuer within said 60-day period and diligently pursued until the default is corrected.; or

(d)    a material breach by the State of its covenants contained or referred to in Section 501(d), (e) or (f), Section 503(b), (c) or (d) or Section 504 hereof, which breach is not remedied within 60 days after written notice, specifying such default and requiring the same to be remedied, shall have been given to the Issuer and the State by the Indenture Trustee or to the Indenture Trustee, the Issuer and the State by the Holders of at least 25% in principal amount of the Bonds then Outstanding. In the case of a default specified in this subsection, if the default be such that it cannot be corrected within the said 60-day period, it shall not constitute an Event of Default if corrective action is instituted by the State within said 60-day period and diligently pursued until the default is corrected.

Except as specified in subsections (a) and (b) of this Section 901, failure to make any payment or to make provision therefor, including any Turbo Redemption or any Sinking Fund Installment, does not constitute an Event of Default to the extent that such failure results from the insufficiency of available Collateral to make such payment or provision therefor.

SECTION 902. <u>Remedies</u>.

(a)    *Remedies of the Indenture Trustee.* If an Event of Default occurs and is continuing:

(1)    The Indenture Trustee may, and upon written request of the Holders of at least 25% in principal amount of the Bonds Outstanding shall, in its own name by action or proceeding in accordance with law:

(a)    enforce all rights of the Bondholders and require the Issuer and the State to carry out their respective agreements with the Bondholders;

-48-

(b)    sue upon the Bonds;

(c)    require the Issuer to account as if it were the trustee of an express trust for the Bondholders; and

(d)    enjoin any acts or things which may be unlawful or in violation of the rights of the Bondholders.

(2)    The Indenture Trustee shall, in addition to the other provisions of this Section 902, have and possess all of the powers necessary or appropriate for the exercise of any functions incident to the general representation of Bondholders in the enforcement and protection of their rights.

(3)    Upon an Event of Default under Section 901(a) or 901(b), or a failure actually known to an Authorized Officer of the Indenture Trustee to make any other payment required hereby within 7 days after the same becomes due and payable, the Indenture Trustee shall give written notice thereof to the Issuer. The Indenture Trustee shall give default notices under paragraph (c) or (d) of Section 901 when instructed to do so by the written direction of another Fiduciary or the Holders of at least 25% in principal amount of the Outstanding Bonds. The Indenture Trustee shall proceed under Section 902 for the benefit of the Bondholders in accordance with the written direction of the Holders of a majority in principal amount of the Outstanding Bonds. The Indenture Trustee shall not be required to take any remedial action (other than the giving of notice) unless reasonable indemnity is furnished for any expense or liability to be incurred therein. Upon receipt of written notice, direction and indemnity, and after making such investigation, if any, as it deems appropriate to verify the occurrence of any event of which it is notified as aforesaid, the Indenture Trustee shall promptly pursue the remedies provided by this Indenture or any such remedies (not contrary to any such direction) as it deems appropriate for the protection of the Bondholders, and shall act for the protection of the Bondholders with the same promptness and prudence as would be expected of a prudent person in the conduct of such person's own affairs.

(4)    The Holders of a majority in aggregate principal amount of the Outstanding Bonds may direct the time, method and place of conducting any proceeding for any remedy available to the Indenture Trustee with respect to this Indenture, provided that (i) such direction shall not be in conflict with any rule of law or with this Indenture, (ii) the Indenture Trustee shall have been provided with indemnity reasonably satisfactory to it, and (iii) the Indenture Trustee may take any other action deemed proper by it that is not inconsistent with such direction.

(b)    *Payment of Bonds Upon Event of Default.* Upon the occurrence of an Event of Default and on each Distribution Date thereafter, the Bonds and Swap Contracts shall be paid on a Pro Rata basis as described in Section 402(e) of this Indenture.

(c)    *Individual Remedies.* No one or more Bondholders shall by its or their action affect, disturb or prejudice the pledge created by this Indenture, or enforce any right under this Indenture, except in the manner herein provided; and all proceedings at law or in equity to

-49-

enforce any provision of this Indenture shall be instituted, had and maintained in the manner provided herein and for the equal benefit of all Bondholders of the same class; but nothing in this Indenture shall affect or impair the right of any Bondholder to enforce payment of the principal of, premium, if any, or interest on each of such Holder's Bonds at and after the same comes due pursuant to this Indenture, or the obligation of the Issuer to pay the principal, premium, if any, and interest on each of the Bonds to the respective Bondholders thereof at the time, place, from the source and in the manner expressed herein and in the Bonds.

(d)    *Venue*. The venue of every action, suit, or special proceeding against the Issuer shall be laid in the Superior Court for the State of Washington, King County.

(e)    *Waiver*. If the Indenture Trustee determines that a Default has been cured before becoming an Event of Default and before the entry of any final judgment or decree with respect to it, the Indenture Trustee may waive the Default and its consequences, by written notice to the Issuer, and shall do so upon written instruction of the Holders of at least 25% in principal amount of the Outstanding Bonds.

SECTION 903. Remedies Cumulative.    The rights and remedies under this Indenture shall be cumulative and shall not exclude any other rights and remedies allowed by law, provided there is no duplication of recovery. The failure to insist upon a strict performance of any of the obligations of the Issuer or to exercise any remedy for any violation thereof shall not be taken as a waiver for the future of the right to insist upon strict performance by the Issuer or of the right to exercise any remedy for the violation.

SECTION 904. Delay or Omission Not Waiver.

(a)    No delay or omission of the Indenture Trustee or of any Bondholder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given hereby or by law to the Indenture Trustee or to the Bondholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Bondholders, as the case may be.

(b)    Any request, demand, authorization, direction, notice, consent, waiver or other action by the Issuer shall bind any successors or assigns of the Issuer in respect of anything done, omitted or suffered to be done by the Indenture Trustee in reliance thereon.

(c)    Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.

ARTICLE X

MISCELLANEOUS

SECTION 1001. Supplements and Amendments to this Indenture.

(a)    This Indenture may be:

-50-

(1)    supplemented in writing by the Issuer and the Indenture Trustee to (a) provide for earlier or greater deposits into the Debt Service Account, (b) subject any additional property to the lien hereof, (c) add to the covenants and agreements of the Issuer or surrender or limit any right or power of the Issuer, (d) identify particular Bonds for purposes not inconsistent herewith, including remarketing and defeasance, (e) cure any ambiguity or defect, (f) protect the exclusion of interest on Tax-Exempt Bonds from gross income for federal income tax purposes, or the exemption from registration of the Bonds under the Securities Act of 1933, as amended, or of this Indenture under the Trust Indenture Act of 1939, as amended, and (g) to provide any other things relative to the Bonds that are not materially adverse to the Holders of Outstanding Bonds as evidenced by a Rating Confirmation; or

(2)    amended in writing by the Issuer and the Indenture Trustee, (a) to add provisions that are not materially adverse to the Bondholders, (b) to adopt amendments that do not take effect unless and until (i) no Bonds Outstanding prior to the adoption of such amendment remain Outstanding or (ii) such amendment is consented to by such Bondholders in accordance with the further provisions hereof, or (c) pursuant to the following paragraph (b).

(b)    Except as provided in the foregoing paragraph (a), this Indenture may be amended in writing by the Issuer and the Indenture Trustee:

(1)    only with written notice to the Rating Agencies and the written consent of the Holders of a majority of the principal amount of the Bonds to be Outstanding at the effective date thereof and affected thereby; but

(2)    only with the unanimous written consent of the affected Bondholders for any of the following purposes: (a) to extend the stated Maturity Date of any Bond, (b) to reduce the principal amount, applicable premium or interest rate of any Bond, (c) to make any Bond redeemable other than in accordance with its terms, or (d) to reduce the percentage of the Bonds required to be represented by the Bondholders giving their consent to any amendment.

(c)    Any amendment of this Indenture shall be accompanied by an opinion of Counsel to the effect that the amendment is permitted by law and does not, in and of itself, result in the inclusion of interest on Tax-Exempt Bonds in gross income for federal income tax purposes.

(d)    When the Issuer determines that the requisite number of consents have been obtained for an amendment hereto or to the agreement which requires consents, it shall file a certificate to that effect in its records and give notice to the Indenture Trustee and the Bondholders. The Indenture Trustee will promptly certify to the Issuer that it has given such notice to all Bondholders and such certificate will be conclusive evidence that such notice was given in the manner required hereby. It shall not be necessary for the consent of Bondholders pursuant to this Section to approve the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof.

SECTION 1002. <u>Supplements and Amendments to the Sales Agreement</u>.

(a)    Except as otherwise provided in Section 4.01(c) of the Sales Agreement and Section 504 hereof, after issuance of the Sales Agreement may be amended by agreement of the State and the Issuer, with the consent of the Indenture Trustee but without the consent of any of the Bondholders, for any purpose that shall not adversely affect the Bonds in any material respect, as evidenced by (i) a Rating Confirmation and (ii) an opinion of Counsel that the amendment is permitted under the Sales Agreement and will not adversely affect the tax exemption of interest on the Tax-Exempt Bonds.  The Sales Agreement may also be amended for any purpose, other than as provided in Section 4.01(c) of the Sales Agreement and Section 504 hereof, or to reduce the number of Bondholders specified in the Indenture required to consent to an amendment of the Sales Agreement, by satisfying the conditions in the previous sentence and by obtaining the consent of the number of Bondholders specified in the Indenture.

(b)    Except as otherwise provided in the preceding paragraph, the Sales Agreement may also be amended from time to time by the State and the Issuer with the consent of the Holders of a majority in principal amount Outstanding of the Bonds for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sales Agreement or of modifying in any manner the rights of the Holders of the Bonds if accompanied by a Rating Confirmation delivered to the Indenture Trustee, but no such amendment, unless consented to by the Holders of all of the Outstanding Bonds, shall reduce the percentage of the Outstanding amount of Bonds the Holders of which are required to consent to any such amendment.

(c)    It shall not be necessary for the consent of Bondholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

SECTION 1003. <u>Rating Confirmation</u>. The Sales Agreement and this Indenture require delivery to the Indenture Trustee of a Rating Confirmation prior to certain actions being undertaken thereunder and hereunder.  Prior to delivery of a Rating Confirmation by any Rating Agency, the Rating Agencies shall be entitled to request:  (1) an Officer's Certificate to the effect that the proposed action will not adversely affect in any material respect payment of the Bonds and (2) an opinion of nationally recognized bond counsel that such proposed action, in and of itself, will not result in the inclusion of interest on the Tax-Exempt Bonds in gross income for federal income tax purposes.

SECTION 1004. <u>Notices</u>. Unless otherwise expressly provided, all notices to the Issuer, the Indenture Trustee or the State shall be in writing and shall be deemed sufficiently given if sent by registered or certified mail, postage prepaid, return receipt requested, or delivered during business hours as follows: (a) to the Issuer at Tobacco Settlement Authority, 1000 Second Avenue – Suite 2700, Seattle, Washington 98104-1046, Attention: Executive Director; (b) to the Indenture Trustee at 1420 5th Ave. – 7th Floor, Seattle, Washington 98101, attention of the Corporate Trust Services; (c) to the State at Office of Financial Management, Insurance Building–Room 300, Olympia, Washington 98504-3113, Attention: Director, with a copy to Office of the Treasurer, 416 14th Ave S.W., P.O. Box 40200, Olympia, Washington 98504-0200 Attention: Treasurer, and  with a copy to Office of the Attorney General, 1125

Washington Street SE, P.O. Box 40100, Olympia, Washington 98504-0100, Attention: Attorney General; or (d) as to all of the foregoing, to such other address as the addressee shall have indicated by prior written notice to the one giving notice. All notices to a Bondholder shall be in writing and (without limitation) shall be deemed sufficiently given if sent by mail, postage prepaid, to the Bondholder at the address shown on the registration books. A Bondholder may direct the registrar to change such Bondholder's address as shown on the registration books by written notice to the registrar.

Notice hereunder may be waived prospectively or retrospectively by the Person entitled to the notice, but no waiver shall affect any notice requirement as to other Persons.

SECTION 1005. <u>Beneficiaries</u>. This Indenture is not intended for the benefit of and shall not be construed to create rights in parties other than the Issuer, the Fiduciaries and the Bondholders and the beneficial owners of the Bonds and counterparties to Swap Contracts to the extent specified herein.

SECTION 1006. <u>Successors and Assigns</u>. All covenants and agreements in this Indenture and the Bonds by the Issuer shall bind its successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall bind its successors.

SECTION 1007. <u>Severability</u>. In case any provision in this Indenture or in the Bonds shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 1008. <u>Legal Holidays</u>. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Bonds or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

SECTION 1009. <u>Governing Law</u>. This Indenture shall be construed in accordance with the laws of the State, without reference to its conflict of law provisions, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

SECTION 1010. <u>Limitation of Liability</u>. No director, officer or employee of the Issuer shall be individually or personally liable for the payment of the interest on or principal of or the redemption price, if any, on the Bonds, but nothing contained herein shall relieve any director, officer or employee of the Issuer from the performance of any official duty provided by any applicable provisions of law or hereby.

SECTION 1011. <u>No Recourse to Issuer</u>. Notwithstanding any provision of this Indenture or any Supplemental Indenture or Bond to the contrary, Bondholders shall have no recourse against the Issuer, but shall look only to the Collateral, with respect to any amounts due to the Bondholders hereunder.

SECTION 1012. <u>Ability to Issue Bonds Secured by Other Assets</u>.    Nothing herein shall preclude the Issuer from issuing other bonds or other obligations secured by revenues or assets which do not constitute Collateral.

SECTION 1013. <u>Signatures and Counterparts</u>.    This Indenture and each Supplemental Indenture may be executed and delivered in any number of counterparts, each of which shall be deemed to be an original, but such counterparts together shall constitute one and the same instrument.

SECTION 1014. <u>Non-Petition Covenant</u>.    Notwithstanding any prior termination of this Indenture, no Fiduciary or Bondholder shall, prior to the date which is one year and one day after the termination of this Indenture, acquiesce, petition, or otherwise invoke or cause the Issuer to invoke the process of any court or government authority for the purpose of commencing or sustaining a case against the Issuer under any federal or state bankruptcy, insolvency, or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator, or other similar official of the Issuer or any substantial part of its property, or ordering the winding up or liquidation of the affairs of the Issuer.

## SIGNATURES

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed all as of the date first above written.

TOBACCO SETTLEMENT AUTHORITY

By: _____
                           Chairperson

U.S. BANK, N.A., as Indenture Trustee

By: _____
                       Authorized Signatory

EXHIBIT A

SERIES 2002 SUPPLEMENT
AUTHORIZING THE ISSUANCE OF

$517,905,000

TOBACCO SETTLEMENT ASSET-BACKED BONDS,
SERIES 2002

of

TOBACCO SETTLEMENT AUTHORITY

Dated as of October 1, 2002

# TABLE OF CONTENTS

**Page**

## ARTICLE I
## DEFINITIONS AND AUTHORITY

SECTION 1.01. Definitions....................................................................................A-1

SECTION 1.02. Authority for this Series 2002 Supplement.....................................A-1

## ARTICLE II
## THE SERIES 2002 BONDS

SECTION 2.01. Principal Amount and Terms. .........................................................A-1

SECTION 2.02. Application of Proceeds. ................................................................A-1


Exhibit 1 – Serial Bonds ........................................................................................A-3

Exhibit 2 – Turbo Term Bonds and Projected Turbo Schedule...............................A-4

Exhibit 3 – Form of Bond .......................................................................................A-4

Exhibit 4 – Application of Proceeds .......................................................................A-10

## ARTICLE I

### DEFINITIONS AND AUTHORITY

SECTION 1.01. Definitions. Terms used herein and not otherwise defined shall have the respective meanings given or referred to in the Indenture, dated as of October 1, 2002 (as amended and supplemented by all Supplemental Indentures, including this Series 2002 Supplement, the "Indenture") by and between TOBACCO SETTLEMENT AUTHORITY and U.S. BANK, N.A., as Indenture Trustee.

SECTION 1.02. Authority for this Series 2002 Supplement. This 2002 Supplement is executed and delivered pursuant to Section 1001(a) of the Indenture.

## ARTICLE II

### THE SERIES 2002 BONDS

SECTION 2.01. Principal Amount and Terms. Pursuant to the Indenture, a series of Tax-Exempt Bonds is hereby authorized in the aggregate principal amount of $517,905,000. Such Bonds shall be distinguished by the title "Tobacco Settlement Asset-Backed Bonds, Series 2002."

(a)    Details of the Series 2002 Bonds. The Series 2002 Bonds shall be issued in fully registered form and shall be numbered from R-1 upwards. The Series 2002 Bonds shall be in the denomination of $5,000 or any integral multiple thereof. The Series 2002 Bonds shall be dated their date of delivery. Interest on the Series 2002 Bonds shall be payable on June 1 and December 1 of each year, beginning June 1, 2003, at the rates specified on Exhibits 1 and 2 hereto. The Series 2002 Bonds having Maturity Dates in the years 2005, 2006 and 2008 through 2012 are Serial Bonds. The Series 2002 Bonds having Maturity Dates in the years 2026 and 2032 are Turbo Term Bonds and shall have the Sinking Fund Installments and Turbo Term Bond Maturities shown on Exhibit 2 hereto. The Projected Turbo Schedule for Series 2002 Bonds that are Turbo Term Bonds is also shown on Exhibit 2 hereto. The Series 2002 Bonds shall be issued substantially in the form of Exhibit 3 hereto.

(b)    Redemption. The Series 2002 Bonds shall be redeemable prior to maturity in accordance with their terms and the terms of the Indenture. Notwithstanding the provisions of Section 404(b) of the Indenture to the contrary, so long as any Series 2002 Bonds are registered in the name of the DTC, the Indenture Trustee shall issue to DTC a notice of paydown or partial paydown (rather than partial redemption) with respect to Series 2002 Bonds to be paid or redeemed Pro Rata.

SECTION 2.02. Application of Proceeds. Upon receipt of the proceeds of the Series 2002 Bonds of the Issuer, the Indenture Trustee shall apply such proceeds as specified on Exhibit 4 hereto.

A-1

IN WITNESS WHEREOF, the parties have caused this Series 2002 Supplement to be duly executed all as of the date first above written.

TOBACCO SETTLEMENT AUTHORITY


By:_____
Chairperson


U.S. BANK, N.A., as Indenture Trustee


By:_____
Authorized Signatory

A-2

EXHIBIT 1
to Series 2002 Supplement

<u>Serial Bonds</u>

The Series 2002 Bonds shown below are Serial Bonds and shall mature (subject to prior redemption as provided herein) on the Maturity Dates shown below and shall bear interest at the interest rates per annum as follows:

| Maturity Date (June 1) | Principal Amount | Interest Rate |
|---|---|---|
| 2005 | $    550,000 | 3.40% |
| 2006 | 110,000 | 3.80 |
| 2008 | 10,675,000 | 5.00 |
| 2009 | 10,060,000 | 5.25 |
| 2010 | 9,620,000 | 5.25 |
| 2011 | 13,285,000 | 6.25 |
| 2012 | 14,325,000 | 5.50 |

A-3

EXHIBIT 2
to Series 2002 Supplement

### Turbo Term Bonds

    The Series 2002 Bonds shown below are Turbo Term Bonds and shall finally mature (subject to prior redemption as provided herein) on the Maturity Dates shown below, shall have the Sinking Fund Installments shown below and shall bear interest at the interest rates per annum as follows:

$279,775,000  6.50% Turbo Term Bonds
Maturing June 1, 2026

| Sinking Fund Installment Date (June 1) | Principal Amount | Sinking Fund Installment Date (June 1) | Principal Amount |
|---|---|---|---|
| 2013 | $14,605,000 | 2020 | $18,550,000 |
| 2014 | 16,595,000 | 2021 | 19,645,000 |
| 2015 | 17,910,000 | 2022 | 20,980,000 |
| 2016 | 19,125,000 | 2023 | 22,010,000 |
| 2017 | 20,560,000 | 2024 | 23,960,000 |
| 2018 | 16,370,000 | 2025 | 25,560,000 |
| 2019 | 17,285,000 | 2026 | 26,620,000 |

$179,505,000  6.625% Turbo Term Bonds
Maturing June 1, 2032

| Sinking Fund Installment Date (June 1) | Principal Amount | Sinking Fund Installment Date (June 1) | Principal Amount |
|---|---|---|---|
| 2027 | $28,265,000 | 2030 | $35,170,000 |
| 2028 | 30,415,000 | 2031 | 37,810,000 |
| 2029 | 32,700,000 | 2032 | 15,145,000 |

A-4

Projected Turbo Schedule

| Turbo Redemption Date | Series 2002 Turbo Term Bonds Maturing June 1, 2026 | Series 2002 Turbo Term Bonds Maturing June 1, 2032 |
|---|---|---|
| 2004 | $  7,150,000 | |
| 2005 | 7,725,000 | |
| 2006 | 9,365,000 | |
| 2007 | 10,730,000 | |
| 2008 | 16,890,000 | |
| 2009 | 20,060,000 | |
| 2010 | 23,155,000 | |
| 2011 | 22,445,000 | |
| 2012 | 24,545,000 | |
| 2013 | 42,190,000 | |
| 2014 | 45,785,000 | |
| 2015 | 49,605,000 | |
| 2016 | 130,000 | $53,710,000 |
| 2017 | | 58,395,000 |
| 2018 | | 52,365,000 |
| 2019 | | 15,035,000 |

A-5

EXHIBIT 3
to Series 2002 Supplement

## FORM OF SERIES 2002 BOND

As provided in the Indenture referred to herein, until the termination of the system of Book-Entry-Only transfers through The Depository Trust Company (together with any successor securities depository appointed pursuant to the Indenture, "DTC") and notwithstanding any other provision of the Indenture to the contrary, a portion of the principal amount of this Series 2002 Bond may be paid or redeemed without surrender hereof to the Paying Agent. DTC or a nominee, transferee or assignee of DTC as owner of this Series 2002 Bond may not rely upon the principal amount indicated hereon as the principal amount hereof outstanding and unpaid. The principal amount hereof outstanding and unpaid shall for all purposes be the amount determined in the manner provided in the Indenture and indicated on the books of the Indenture Trustee.

UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF DTC TO THE INDENTURE TRUSTEE FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY BOND ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH OTHER NAME AS REQUIRED BY AN AUTHORIZED REPRESENTATIVE OF DTC AND ANY PAYMENT IS MADE TO CEDE & CO., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSONS IS WRONGFUL SINCE THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

REGISTERED                                                      REGISTERED
NUMBER R-__                                                     $_____

## TOBACCO SETTLEMENT AUTHORITY

### TOBACCO SETTLEMENT ASSET-BACKED BOND
### SERIES 2002

| INTEREST RATE | DATED DATE | MATURITY DATE | CUSIP |
|---|---|---|---|
| % | November 5, 2002 | June 1, 20__ | |

REGISTERED OWNER:   CEDE & CO.

PRINCIPAL AMOUNT:   _____ DOLLARS

      THE TOBACCO SETTLEMENT AUTHORITY (the "Issuer"), a public instrumentality and agency of the State of Washington (the "State"), separate and distinct from the State, exercising public and essential governmental functions, for value received promises to pay to the registered owner of this bond, on the payment date determined pursuant to the below-described Indenture, the principal amount hereof and interest thereon at the rate of interest set forth above from the Dated Date set forth above, or from the most recent payment date to which interest has been paid, but if the date of authentication of this bond is after the Record Date

A-6

immediately preceding an interest payment date, interest will be paid from such interest payment date. Interest at such rate will be paid on June 1 and December 1 of each year, beginning June 1, 2003, and at the date of payment of principal, as set forth herein, by wire transfer, at the corporate trust office of U.S. Bank, N.A., as trustee (the "Indenture Trustee") or by check mailed to the address of the registered owner hereof as shown on the registration books of the Indenture Trustee, as of the close of business on the Record Date immediately preceding the applicable interest payment date. Interest shall be calculated on the basis of a year of 360 days and twelve 30-day months.

**PAYMENT OF THE PRINCIPAL OF, INTEREST ON, AND REDEMPTION PREMIUM, IF ANY, ON THIS BOND SHALL BE A VALID CLAIM ONLY AS AGAINST THE SPECIAL FUND OR FUNDS RELATING THERETO. NEITHER THE FAITH AND CREDIT NOR THE TAXING POWER OF THE STATE OR ANY MUNICIPAL CORPORATION, SUBDIVISION, OR AGENCY OF THE STATE, OTHER THAN THE ISSUER AS SET FORTH IN THE LAWS OF 2002, CHAPTER 365, OF THE STATE, CODIFIED AS RCW 43.340.005, *ET SEQ.*, AS AMENDED (THE "ACT"), IS PLEDGED TO THE PAYMENT OF THE PRINCIPAL OF, INTEREST ON, AND REDEMPTION OR PREPAYMENT PREMIUM, IF ANY, ON THIS BOND.**

This bond is a Bond of the Issuer entitled "Tobacco Settlement Authority Tobacco Settlement Asset-Backed Bonds, Series 2002" (the "Series 2002 Bonds"), representing a borrowing of $517,905,000 pursuant to an Indenture dated as of October 1, 2002, between the Issuer and the Indenture Trustee (as amended and supplemented, the "Indenture"). Reference is made to the Indenture for a description of the funds pledged and the rights, limitations of rights, duties, obligations and immunities of the Issuer, the Indenture Trustee and the Bondholders, including restrictions on the rights of the Bondholders to bring suit. Definitions given or referred to in the Indenture are incorporated herein by this reference. The Indenture may be amended to the extent and in the manner provided therein.

Pursuant to Section 11 of the Act, prior to the date that is three hundred sixty-six days after which the Issuer no longer has any bonds outstanding, the Issuer is prohibited from filing a voluntary petition under Chapter 9 of the federal bankruptcy code or such corresponding chapter or section as may, from time to time, be in effect, and a public official or organization, entity, or other person shall not authorize the Issuer to be or become a debtor under Chapter 9 or any successor or corresponding chapter or sections during such periods. Said Section 11 is part of the contractual obligation owed to the holders of this bond.

Principal of this bond and applicable premium, if any, are payable in lawful money of the United States of America, upon presentation and surrender of this bond when due and payable at the office of the Indenture Trustee or of such other paying agent as may hereafter be designated by the Issuer (in either case, the "Paying Agent").

All money paid to the Paying Agent for the payment of the principal of, premium, if any, or interest on any Bond that remains unclaimed at the end of three years after such principal, premium, if any, or interest shall have become due and payable will be paid to the Issuer, and the holder of such Bond shall thereafter look only to the Issuer for payment.

This bond shall not be valid or become obligatory for any purpose until the certificate of authentication hereon has been dated and manually signed by the Indenture Trustee.

It is hereby certified and recited that all conditions, acts and things required by the Constitution and statutes of the State to exist, to have happened and to have been performed precedent to and in the issuance of this bond, exist, have happened and have been performed, and that the series of Bonds of which this is one, together with all other indebtedness of the Issuer, is within every debt and other limit prescribed by the Constitution and laws of the State.

Neither the directors of the Issuer nor any person executing this bond shall be liable personally thereon or be subject to any personal liability or accountability solely by reasons of the issuance hereof.

To the extent of available funds, the Turbo Term Bonds shall be redeemed in whole or in part on specified Distribution Dates prior to their Maturity Date, at a price equal to 100% of the principal amount being redeemed, in accordance with the schedule of Sinking Fund Installments set forth in the Series 2002 Supplement, as adjusted.

The Turbo Term Bonds shall be redeemed in whole or in part on any Distribution Date prior to their Maturity Date, at a price equal to 100% of the principal amount being redeemed, from amounts on deposit in the Turbo Redemption Account (and from amounts on deposit in the Partial Lump Sum Payment Account in accordance with Section 402(b)(4) of the Indenture).

The Bonds maturing on or prior to June 1, 2012 are not subject to optional redemption. The Bonds maturing on June 1, 2026 and June 1, 2032 are subject to redemption (from sources other than Collections or from the proceeds of Refunding Bonds) at the option of the Issuer: (1) with respect to Turbo Term Bonds, in whole or in part at any time, but only in an amount that may not exceed the amount of the Projected Turbo Redemptions that were projected to be paid but, as of the date of such redemption, have not been paid with respect to such Turbo Term Bonds, and (2) with respect to all Bonds, in whole or in part on or after June 1, 2013, from any maturity selected by the Issuer in its discretion and Pro Rata within a maturity, in each case at a redemption price equal to 100% of the principal amount being redeemed.

The Bonds are subject to mandatory redemption in whole only, at a redemption price equal to 100% of the principal amount being redeemed, at any time that the available amounts on deposit in the Accounts (other than the Rebate Account, the Operating Account, the Operating Contingency Account and the Costs of Issuance Account) exceed the aggregate principal amount of, and accrued interest on, all Outstanding Bonds.

The Defeased Turbo Term Bonds shall be subject to mandatory redemption, at a redemption price equal to 100% of the principal amount being redeemed, in accordance with the Pro Rata Defeasance Redemption Schedule provisions contained in Section 202(c) of the Indenture.

Upon the occurrence of an Event of Default, the Bonds and Swap Contracts shall be paid on a Pro Rata basis as described in the Indenture.

A-8

If less than all the Outstanding Bonds of any Maturity Date are to be redeemed, the particular Bonds to be redeemed shall be selected by the Indenture Trustee by such method as it shall deem fair and appropriate and the Indenture Trustee may provide for the selection for redemption of portions (equal to any authorized denominations) of the principal of Bonds of a denomination larger than the minimum authorized denomination.

This bond shall be redeemed upon the giving of notice, if any, as provided in the Indenture.

The Bonds are issuable only in fully registered form in the denomination of $5,000 or any integral multiple thereof. The Issuer, the Indenture Trustee and the Paying Agent may treat the registered owner as the absolute owner of this bond for all purposes, notwithstanding any notice to the contrary. This bond is transferable by the registered owner hereof in accordance with the Indenture.

The respective covenants of the Issuer with respect hereto shall be fully discharged and of no further force and effect at such time as this bond, together with interest thereon, shall have been paid in full at maturity, or shall have otherwise been redeemed, defeased or discharged.

IN WITNESS WHEREOF, the Issuer has caused this bond to be executed in its name by its Chairperson and attested by its Secretary by their manual or facsimile signatures hereon, all as of the 5th day of November, 2002.

TOBACCO SETTLEMENT AUTHORITY

By: _____
Chairperson

ATTEST:

_____
Secretary

CERTIFICATE OF AUTHENTICATION

This bond is one of the Series 2002 Bonds described in and issued in accordance with the Indenture, including the Series 2002 Supplement.

U.S. BANK, N.A., as Indenture Trustee

By: _____

Authorized Signatory

Date of Authentication: _____, 2002

ASSIGNMENT

For value received the undersigned do(es) hereby sell, assign and transfer unto
_____ the within-mentioned registered Bond and hereby irrevocably constitute(s)
and appoint(s) _____ attorney, to transfer the same on the books of the Indenture
Trustee with full power of substitution in the premises.

_____

NOTICE: The signature on this Assignment must
correspond with the name as it appears on the face
of the within Bond in every particular, without
alteration or enlargement or any change whatsoever.

Dated: _____

Signature Guaranteed By:

_____

NOTICE: Signature guarantee should be made by a
guarantor institution participating in the securities
transfer agents medallion program or in such other
guarantee program acceptable to the Indenture
Trustee.

Social Security or Other Taxpayer
Identification Number of Transferee:

_____

Addressee of Transferee:

_____

_____

_____

A-12

EXHIBIT 4
to Series 2002 Supplement

<u>Application of Proceeds</u>

| | |
|---|---|
| Purchase Price paid to the State (for deposit in Tobacco Securitization Trust Account) | $450,000,000.00 |
| Liquidity Reserve Account | 45,534,106.25 |
| Operating Account | 825,000.00 |
| Capitalized Interest Subaccount | 4,907,889.84 |
| Costs of Issuance Account | 2,434,467.10 |
| | |
| Total | $503,701,463.19 |

A-13

EXHIBIT B

## TOBACCO SETTLEMENT AUTHORITY

### RESIDUAL CERTIFICATE

REGISTERED OWNER: STATE OF WASHINGTON

The TOBACCO SETTLEMENT AUTHORITY (the "Issuer"), a public instrumentality and agency of the State of Washington (the "State"), separate and distinct from the State, exercising public and essential governmental functions, for value received, promises to pay to the registered owner of this Residual Certificate amounts available in accordance with Section 402(g) of the Indenture (the "Indenture"), dated as of October 1, 2002, between the Issuer and U.S. Bank, N.A., as Indenture Trustee (the "Indenture Trustee"). Capitalized terms used but not defined in this Residual Certificate shall have the meaning given to them in the Indenture.

Notwithstanding anything to the contrary in the Indenture or this Residual Certificate, no amounts shall be due and payable through or in respect of this Residual Certificate, and the registered owner of the Residual Certificate shall have no right to, or interest of any kind, in the payment of any such amount, unless and until the Indenture Trustee shall determine that funds are available therefor in accordance with Article IV of the Indenture and the Indenture Trustee shall in fact withdraw funds from the Accounts for such payment and transfer the same to the registered owner of the Residual Certificate.

Reference is made to the Indenture for a description of the funds pledged and for the provisions with respect to the incurring of indebtedness and to the rights, limitations of rights, duties, obligations and immunities of the Issuer, the Indenture Trustee, the Bondholders, and the registered owner of this Residual Certificate.

This Residual Certificate is issuable only in fully registered form and may not be converted into bearer form. The Issuer and the Indenture Trustee may treat the registered owner as the absolute owner of this Residual Certificate for all purposes, notwithstanding any notice to the contrary.

This Residual Certificate shall not be valid or become obligatory for any purpose until the certificate of authentication hereon has been dated and manually signed by the Indenture Trustee.

IN WITNESS WHEREOF, the TOBACCO SETTLEMENT AUTHORITY has caused this Residual Certificate to be executed in its name by its Chairperson as of the 5th day of November, 2002.

TOBACCO SETTLEMENT AUTHORITY

By: _____
                                Chairperson

B-1

CERTIFICATE OF AUTHENTICATION


This Residual Certificate is the Residual Certificate described in and issued in accordance with the within mentioned Indenture.


U.S. BANK, N.A.,
as Indenture Trustee


By:_____
Authorized Officer

Date of Authentication: _____

SERIES 2002 SUPPLEMENT
AUTHORIZING THE ISSUANCE OF

$517,905,000

TOBACCO SETTLEMENT ASSET-BACKED BONDS,
SERIES 2002

of

TOBACCO SETTLEMENT AUTHORITY

Dated as of October 1, 2002

**TABLE OF CONTENTS**

Page

ARTICLE I
DEFINITIONS AND AUTHORITY

SECTION 1.01.  Definitions.....................................................................................................A-1

SECTION 1.02.  Authority for this Series 2002 Supplement....................................................A-1

ARTICLE II
THE SERIES 2002 BONDS

SECTION 2.01.  Principal Amount and Terms. ........................................................................A-1

SECTION 2.02.  Application of Proceeds. ...............................................................................A-1

Exhibit 1 – Serial Bonds ..........................................................................................................A-3

Exhibit 2 – Turbo Term Bonds and Projected Turbo Schedule................................................A-4

Exhibit 3 – Form of Bond .........................................................................................................A-4

Exhibit 4 – Application of Proceeds .......................................................................................A-10

i

# ARTICLE I

## DEFINITIONS AND AUTHORITY

SECTION 1.01. Definitions. Terms used herein and not otherwise defined shall have the respective meanings given or referred to in the Indenture, dated as of October 1, 2002 (as amended and supplemented by all Supplemental Indentures, including this Series 2002 Supplement, the "Indenture") by and between TOBACCO SETTLEMENT AUTHORITY and U.S. BANK, N.A., as Indenture Trustee.

SECTION 1.02. Authority for this Series 2002 Supplement. This 2002 Supplement is executed and delivered pursuant to Section 1001(a) of the Indenture.

# ARTICLE II

## THE SERIES 2002 BONDS

SECTION 2.01. Principal Amount and Terms. Pursuant to the Indenture, a series of Tax-Exempt Bonds is hereby authorized in the aggregate principal amount of $517,905,000. Such Bonds shall be distinguished by the title "Tobacco Settlement Asset-Backed Bonds, Series 2002."

(a) Details of the Series 2002 Bonds. The Series 2002 Bonds shall be issued in fully registered form and shall be numbered from R-1 upwards. The Series 2002 Bonds shall be in the denomination of $5,000 or any integral multiple thereof. The Series 2002 Bonds shall be dated their date of delivery. Interest on the Series 2002 Bonds shall be payable on June 1 and December 1 of each year, beginning June 1, 2003, at the rates specified on Exhibits 1 and 2 hereto. The Series 2002 Bonds having Maturity Dates in the years 2005, 2006 and 2008 through 2012 are Serial Bonds. The Series 2002 Bonds having Maturity Dates in the years 2026 and 2032 are Turbo Term Bonds and shall have the Sinking Fund Installments and Turbo Term Bond Maturities shown on Exhibit 2 hereto. The Projected Turbo Schedule for Series 2002 Bonds that are Turbo Term Bonds is also shown on Exhibit 2 hereto. The Series 2002 Bonds shall be issued substantially in the form of Exhibit 3 hereto.

(b) Redemption. The Series 2002 Bonds shall be redeemable prior to maturity in accordance with their terms and the terms of the Indenture. Notwithstanding the provisions of Section 404(b) of the Indenture to the contrary, so long as any Series 2002 Bonds are registered in the name of the DTC, the Indenture Trustee shall issue to DTC a notice of paydown or partial paydown (rather than partial redemption) with respect to Series 2002 Bonds to be paid or redeemed Pro Rata.

SECTION 2.02. Application of Proceeds. Upon receipt of the proceeds of the Series 2002 Bonds of the Issuer, the Indenture Trustee shall apply such proceeds as specified on Exhibit 4 hereto.

1

IN WITNESS WHEREOF, the parties have caused this Series 2002 Supplement to be duly executed all as of the date first above written.

TOBACCO SETTLEMENT AUTHORITY

By: _____
Chairperson

U.S. BANK, N.A., as Indenture Trustee

By: _____
Authorized Signatory

2

EXHIBIT 1
to Series 2002 Supplement

<u>Serial Bonds</u>

The Series 2002 Bonds shown below are Serial Bonds and shall mature (subject to prior redemption as provided herein) on the Maturity Dates shown below and shall bear interest at the interest rates per annum as follows:

| Maturity Date (June 1) | Principal Amount | Interest Rate |
|---|---|---|
| 2005 | $    550,000 | 3.40% |
| 2006 | 110,000 | 3.80 |
| 2008 | 10,675,000 | 5.00 |
| 2009 | 10,060,000 | 5.25 |
| 2010 | 9,620,000 | 5.25 |
| 2011 | 13,285,000 | 6.25 |
| 2012 | 14,325,000 | 5.50 |

3

EXHIBIT 2
to Series 2002 Supplement

Turbo Term Bonds

The Series 2002 Bonds shown below are Turbo Term Bonds and shall finally mature (subject to prior redemption as provided herein) on the Maturity Dates shown below, shall have the Sinking Fund Installments shown below and shall bear interest at the interest rates per annum as follows:

$279,775,000  6.50% Turbo Term Bonds
Maturing June 1, 2026

| Sinking Fund Installment Date (June 1) | Principal Amount | Sinking Fund Installment Date (June 1) | Principal Amount |
|---|---|---|---|
| 2013 | $14,605,000 | 2020 | $18,550,000 |
| 2014 | 16,595,000 | 2021 | 19,645,000 |
| 2015 | 17,910,000 | 2022 | 20,980,000 |
| 2016 | 19,125,000 | 2023 | 22,010,000 |
| 2017 | 20,560,000 | 2024 | 23,960,000 |
| 2018 | 16,370,000 | 2025 | 25,560,000 |
| 2019 | 17,285,000 | 2026 | 26,620,000 |

$179,505,000  6.625% Turbo Term Bonds
Maturing June 1, 2032

| Sinking Fund Installment Date (June 1) | Principal Amount | Sinking Fund Installment Date (June 1) | Principal Amount |
|---|---|---|---|
| 2027 | $28,265,000 | 2030 | $35,170,000 |
| 2028 | 30,415,000 | 2031 | 37,810,000 |
| 2029 | 32,700,000 | 2032 | 15,145,000 |

4

Projected Turbo Schedule

| Turbo Redemption Date | Series 2002 Turbo Term Bonds Maturing June 1, 2026 | Series 2002 Turbo Term Bonds Maturing June 1, 2032 |
|---|---|---|
| 2004 | $  7,150,000 | |
| 2005 | 7,725,000 | |
| 2006 | 9,365,000 | |
| 2007 | 10,730,000 | |
| 2008 | 16,890,000 | |
| 2009 | 20,060,000 | |
| 2010 | 23,155,000 | |
| 2011 | 22,445,000 | |
| 2012 | 24,545,000 | |
| 2013 | 42,190,000 | |
| 2014 | 45,785,000 | |
| 2015 | 49,605,000 | |
| 2016 | 130,000 | $53,710,000 |
| 2017 | | 58,395,000 |
| 2018 | | 52,365,000 |
| 2019 | | 15,035,000 |

5

EXHIBIT 3
to Series 2002 Supplement

### FORM OF SERIES 2002 BOND

**As provided in the Indenture referred to herein, until the termination of the system of Book-Entry-Only transfers through The Depository Trust Company (together with any successor securities depository appointed pursuant to the Indenture, "DTC") and notwithstanding any other provision of the Indenture to the contrary, a portion of the principal amount of this Series 2002 Bond may be paid or redeemed without surrender hereof to the Paying Agent. DTC or a nominee, transferee or assignee of DTC as owner of this Series 2002 Bond may not rely upon the principal amount indicated hereon as the principal amount hereof outstanding and unpaid. The principal amount hereof outstanding and unpaid shall for all purposes be the amount determined in the manner provided in the Indenture and indicated on the books of the Indenture Trustee.**

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF DTC TO THE INDENTURE TRUSTEE FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY BOND ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH OTHER NAME AS REQUIRED BY AN AUTHORIZED REPRESENTATIVE OF DTC AND ANY PAYMENT IS MADE TO CEDE & CO., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSONS IS WRONGFUL SINCE THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

| | |
|---|---|
| **REGISTERED** | **REGISTERED** |
| **NUMBER R-__** | **$_____** |

### TOBACCO SETTLEMENT AUTHORITY

### TOBACCO SETTLEMENT ASSET-BACKED BOND
### SERIES 2002

| **INTEREST RATE** | **DATED DATE** | **MATURITY DATE** | **CUSIP** |
|---|---|---|---|
| % | November 5, 2002 | June 1, 20__ | |

**REGISTERED OWNER:    CEDE & CO.**

**PRINCIPAL AMOUNT:    _____ DOLLARS**

THE TOBACCO SETTLEMENT AUTHORITY (the "Issuer"), a public instrumentality and agency of the State of Washington (the "State"), separate and distinct from the State, exercising public and essential governmental functions, for value received promises to pay to the registered owner of this bond, on the payment date determined pursuant to the below-described Indenture, the principal amount hereof and interest thereon at the rate of interest set forth above from the Dated Date set forth above, or from the most recent payment date to which interest has been paid, but if the date of authentication of this bond is after the Record Date

6

immediately preceding an interest payment date, interest will be paid from such interest payment date. Interest at such rate will be paid on June 1 and December 1 of each year, beginning June 1, 2003, and at the date of payment of principal, as set forth herein, by wire transfer, at the corporate trust office of U.S. Bank, N.A., as trustee (the "Indenture Trustee") or by check mailed to the address of the registered owner hereof as shown on the registration books of the Indenture Trustee, as of the close of business on the Record Date immediately preceding the applicable interest payment date. Interest shall be calculated on the basis of a year of 360 days and twelve 30-day months.

**PAYMENT OF THE PRINCIPAL OF, INTEREST ON, AND REDEMPTION PREMIUM, IF ANY, ON THIS BOND SHALL BE A VALID CLAIM ONLY AS AGAINST THE SPECIAL FUND OR FUNDS RELATING THERETO. NEITHER THE FAITH AND CREDIT NOR THE TAXING POWER OF THE STATE OR ANY MUNICIPAL CORPORATION, SUBDIVISION, OR AGENCY OF THE STATE, OTHER THAN THE ISSUER AS SET FORTH IN THE LAWS OF 2002, CHAPTER 365, OF THE STATE, CODIFIED AS RCW 43.340.005, *ET SEQ.*, AS AMENDED (THE "ACT"), IS PLEDGED TO THE PAYMENT OF THE PRINCIPAL OF, INTEREST ON, AND REDEMPTION OR PREPAYMENT PREMIUM, IF ANY, ON THIS BOND.**

This bond is a Bond of the Issuer entitled "Tobacco Settlement Authority Tobacco Settlement Asset-Backed Bonds, Series 2002" (the "Series 2002 Bonds"), representing a borrowing of $517,905,000 pursuant to an Indenture dated as of October 1, 2002, between the Issuer and the Indenture Trustee (as amended and supplemented, the "Indenture"). Reference is made to the Indenture for a description of the funds pledged and the rights, limitations of rights, duties, obligations and immunities of the Issuer, the Indenture Trustee and the Bondholders, including restrictions on the rights of the Bondholders to bring suit. Definitions given or referred to in the Indenture are incorporated herein by this reference. The Indenture may be amended to the extent and in the manner provided therein.

Pursuant to Section 11 of the Act, prior to the date that is three hundred sixty-six days after which the Issuer no longer has any bonds outstanding, the Issuer is prohibited from filing a voluntary petition under Chapter 9 of the federal bankruptcy code or such corresponding chapter or section as may, from time to time, be in effect, and a public official or organization, entity, or other person shall not authorize the Issuer to be or become a debtor under Chapter 9 or any successor or corresponding chapter or sections during such periods. Said Section 11 is part of the contractual obligation owed to the holders of this bond.

Principal of this bond and applicable premium, if any, are payable in lawful money of the United States of America, upon presentation and surrender of this bond when due and payable at the office of the Indenture Trustee or of such other paying agent as may hereafter be designated by the Issuer (in either case, the "Paying Agent").

All money paid to the Paying Agent for the payment of the principal of, premium, if any, or interest on any Bond that remains unclaimed at the end of three years after such principal, premium, if any, or interest shall have become due and payable will be paid to the Issuer, and the holder of such Bond shall thereafter look only to the Issuer for payment.

This bond shall not be valid or become obligatory for any purpose until the certificate of authentication hereon has been dated and manually signed by the Indenture Trustee.

It is hereby certified and recited that all conditions, acts and things required by the Constitution and statutes of the State to exist, to have happened and to have been performed precedent to and in the issuance of this bond, exist, have happened and have been performed, and that the series of Bonds of which this is one, together with all other indebtedness of the Issuer, is within every debt and other limit prescribed by the Constitution and laws of the State.

Neither the directors of the Issuer nor any person executing this bond shall be liable personally thereon or be subject to any personal liability or accountability solely by reasons of the issuance hereof.

To the extent of available funds, the Turbo Term Bonds shall be redeemed in whole or in part on specified Distribution Dates prior to their Maturity Date, at a price equal to 100% of the principal amount being redeemed, in accordance with the schedule of Sinking Fund Installments set forth in the Series 2002 Supplement, as adjusted.

The Turbo Term Bonds shall be redeemed in whole or in part on any Distribution Date prior to their Maturity Date, at a price equal to 100% of the principal amount being redeemed, from amounts on deposit in the Turbo Redemption Account (and from amounts on deposit in the Partial Lump Sum Payment Account in accordance with Section 402(b)(4) of the Indenture).

The Bonds maturing on or prior to June 1, 2012 are not subject to optional redemption. The Bonds maturing on June 1, 2026 and June 1, 2032 are subject to redemption (from sources other than Collections or from the proceeds of Refunding Bonds) at the option of the Issuer: (1) with respect to Turbo Term Bonds, in whole or in part at any time, but only in an amount that may not exceed the amount of the Projected Turbo Redemptions that were projected to be paid but, as of the date of such redemption, have not been paid with respect to such Turbo Term Bonds, and (2) with respect to all Bonds, in whole or in part on or after June 1, 2013, from any maturity selected by the Issuer in its discretion and Pro Rata within a maturity, in each case at a redemption price equal to 100% of the principal amount being redeemed.

The Bonds are subject to mandatory redemption in whole only, at a redemption price equal to 100% of the principal amount being redeemed, at any time that the available amounts on deposit in the Accounts (other than the Rebate Account, the Operating Account, the Operating Contingency Account and the Costs of Issuance Account) exceed the aggregate principal amount of, and accrued interest on, all Outstanding Bonds.

The Defeased Turbo Term Bonds shall be subject to mandatory redemption, at a redemption price equal to 100% of the principal amount being redeemed, in accordance with the Pro Rata Defeasance Redemption Schedule provisions contained in Section 202(c) of the Indenture.

Upon the occurrence of an Event of Default, the Bonds and Swap Contracts shall be paid on a Pro Rata basis as described in the Indenture.

8

If less than all the Outstanding Bonds of any Maturity Date are to be redeemed, the particular Bonds to be redeemed shall be selected by the Indenture Trustee by such method as it shall deem fair and appropriate and the Indenture Trustee may provide for the selection for redemption of portions (equal to any authorized denominations) of the principal of Bonds of a denomination larger than the minimum authorized denomination.

This bond shall be redeemed upon the giving of notice, if any, as provided in the Indenture.

The Bonds are issuable only in fully registered form in the denomination of $5,000 or any integral multiple thereof. The Issuer, the Indenture Trustee and the Paying Agent may treat the registered owner as the absolute owner of this bond for all purposes, notwithstanding any notice to the contrary. This bond is transferable by the registered owner hereof in accordance with the Indenture.

The respective covenants of the Issuer with respect hereto shall be fully discharged and of no further force and effect at such time as this bond, together with interest thereon, shall have been paid in full at maturity, or shall have otherwise been redeemed, defeased or discharged.

IN WITNESS WHEREOF, the Issuer has caused this bond to be executed in its name by its Chairperson and attested by its Secretary by their manual or facsimile signatures hereon, all as of the 5th day of November, 2002.

TOBACCO SETTLEMENT AUTHORITY

By: _____
Chairperson

ATTEST:

_____
Secretary

10

## CERTIFICATE OF AUTHENTICATION

This bond is one of the Series 2002 Bonds described in and issued in accordance with the Indenture, including the Series 2002 Supplement.

U.S. BANK, N.A., as Indenture Trustee

By: _____
                     Authorized Signatory

Date of Authentication: _____, 2002

11

## ASSIGNMENT

For value received the undersigned do(es) hereby sell, assign and transfer unto _____ the within-mentioned registered Bond and hereby irrevocably constitute(s) and appoint(s) _____ attorney, to transfer the same on the books of the Indenture Trustee with full power of substitution in the premises.

_____

NOTICE: The signature on this Assignment must correspond with the name as it appears on the face of the within Bond in every particular, without alteration or enlargement or any change whatsoever.

Dated: _____

Signature Guaranteed By:

_____

NOTICE: Signature guarantee should be made by a guarantor institution participating in the securities transfer agents medallion program or in such other guarantee program acceptable to the Indenture Trustee.

Social Security or Other Taxpayer
Identification Number of Transferee:

_____

Addressee of Transferee:

_____

_____

_____

12

EXHIBIT 4
to Series 2002 Supplement

### Application of Proceeds

| | |
|---|---|
| Purchase Price paid to the State (for deposit in Tobacco Securitization Trust Account) | $450,000,000.00 |
| Liquidity Reserve Account | 45,534,106.25 |
| Operating Account | 825,000.00 |
| Capitalized Interest Subaccount | 4,907,889.84 |
| Costs of Issuance Account | 2,434,467.10 |
| | |
| Total | $503,701,463.19 |