UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
In re:                                                             :     **Chapter 11**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC., et al.**                          :     **Case No. 08-13555 (SCC)**
                                                                   :
                     Debtors.                                      :     **(Jointly Administered)**
                                                                   :
------------------------------------------------------------------ X

## JOINT STATEMENT OF UNCONTESTED FACTS

Pursuant to the agreed scheduling order between the parties in the above-captioned matter, and in anticipation of the evidentiary hearing regarding Washington State Tobacco Settlement Authority's ("Washington TSA's") Proofs of Claim No. 37355 and 37356, scheduled to be held on November 4 through November 6, 2014, Washington TSA, and Lehman Brothers Special Financing and Lehman Brothers Holdings Inc. (collectively "Lehman") submit the following joint statement of uncontested facts:

1. Washington TSA is an independent public instrumentality of the State of Washington. Joint Ex. 1, Reserve Fund Agreement at 1.

2. Washington TSA was established in 2002 by the State of Washington to monetize future settlement payments due to Washington State from tobacco manufacturers pursuant to Chapter 365 of Laws of 2002 of the State of Washington, codified as RCW 43.340.005, *et seq.* Debtors' Ex. 15, Official Statement at S-6.

3. In 2002, Washington TSA issued $517,905,000 of Tobacco Settlement Authority Tobacco Settlement Asset-Backed Bonds, Series 2002 (the "Bonds") pursuant to an Indenture, dated as of October 1, 2002, between Washington TSA and U.S. Bank N.A., as Indenture Trustee (the "Indenture"). Joint Ex. 3, Indenture.

4. With $450 million dollars from the issuance of the Bonds, TSA purchased 29.2% of the tobacco settlement revenues to which the State of Washington was entitled pursuant to the settlement with the tobacco manufacturers. Herman Tr. 77:4-11.

5. The Bonds were issued to fill a $450 million budget gap that the State of Washington was facing in 2002. Herman Tr. 76:16-77:11.

6. The Bonds were scheduled to mature in 2032. Debtors' Ex. 15, Official Statement, at i.

7. According to the official statement of the Bonds, the "projected final turbo redemption date" was June 1, 2019. Debtors' Ex. 15, Official Statement, at i.

8. The Indenture established a Liquidity Reserve Account with a Liquidity Reserve Requirement in the amount of $45,534,106.25 (the "Reserve Fund"). Joint Ex. 3, Indenture, Sections 102 and 401-402.

9. The Indenture gave Washington TSA the right, upon the satisfaction of certain conditions, to partially or fully redeem the Bonds prior to the scheduled maturity of the Bonds. Joint Ex. 3, Indenture, Section 404(a).

10. The Indenture imposed restrictions on both the term and ratings of Reserve Fund investments. *See* Joint Ex. 3, Indenture, Section 405.

11. After issuing the Bonds, Washington TSA sought to invest the Reserve Fund in accordance with the limitations in the Indenture. *See* Joint Ex. 4, Request for Bids. On October 22, 2002, PFM, Washington TSA's financial advisor, distributed a "Request for Bids" to certain financial institutions, "seeking bids for a fixed rate Guaranteed Yield Forward Purchase and Sale Agreement . . . [that] will provide for the investment of proceeds to be deposited to the Liquidity Reserve Account (the "Liquidity Reserve") established in connection with the

2

Indenture dated as of October 1, 2002. . . ." Joint Ex 4, Request for Bids.  The "Request for Bids" indicated that the "type of investment" involved was a "Guaranteed Yield Forward Purchase and Sale Agreement . . . providing for the semi-annual tender and purchase of Eligible Securities . . . ." Joint Ex. 4, Request for Bids.

12. On November 5, 2002, Lehman Brothers Special Financing Inc. ("LBSF"), Washington TSA as Issuer, and U.S. Bank, N.A. as Trustee, entered into a Reserve Fund Agreement (the "RFA").  Joint Ex. 1, RFA, at 1.

13. Lehman Brothers Holdings Inc. ("LBHI") guaranteed the obligations of LBSF under the RFA.  Joint Ex. 1, RFA, Sections 1 and F-2 to F-3; Guarantee.

14. The RFA provided a Guaranteed Rate[1] of 4.484% on a Scheduled Reserve Amount of $45,534,106.25.  Joint Ex. 1, RFA, Section 1.

15. Under the RFA, Qualified Securities are Eligible Securities that mature on or before the next debt service payment date and have an aggregate purchase price as close as possible to but does not exceed the Scheduled Payment Amount.  Joint Ex. 1, RFA, Section 1.

16. The RFA defines Eligible Securities as:

> [N]on-callable and non-prepayable (a) direct obligations of the United States of America including only notes, bonds, bills or certificates of indebtedness, (b) senior debt and/or guaranteed mortgage pass-through obligations of the Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, any Federal Home Loan Bank, and the Federal Farm Credit System, or (c) commercial paper rated "P-1" by Moody's and "A-1+" by Standard & Poor's; provided that, at the time of delivery, any such commercial paper is not on negative credit watch and the issuer thereof is subject to U.S. law; additionally, if the maturity date of the commercial paper tendered is 100 days or more, the issuer thereof must have long-term debt ratings of at least "A1" by Moody's, "A+" by Standard & Poor's and "A" by Fitch.

Joint Ex. 1, RFA, Section 1.

---

[1] Capitalized terms not otherwise defined shall have their respective meanings under the RFA.

17. Under the RFA, Lehman had the right to select the Qualified Securities to deliver with respect to every delivery date. Joint Ex. 1, RFA, Section 2.1(a).

18. Until LBSF filed for bankruptcy in the fall of 2008, LBSF delivered commercial paper to Washington TSA in connection with the RFA. LBSF never delivered government agencies to Washington TSA in connection with the RFA. Cook Dep. 106:24-107:2.

19. Due to a drafting error, the RFA initially stated that the termination date was May 30, 2042. Joint Ex. 1, RFA, Section 9.7; Exhibit A.

20. The RFA was amended on March 26, 2003 to change its termination date to May 28, 2032. Joint Ex. 2, RFA Amendment Agreement, Exhibit A.

21. The RFA also provided that Washington TSA may terminate the RFA in the event of a "Mandatory Cleanup Call" with 30 days written notice to LBSF, in which case no Termination Amount shall be due. A "Mandatory Cleanup Call" was defined in the RFA to mean:

> a mandatory redemption of the Bonds in whole equal to 100 percent of the principal amount being redeemed at any time that the available amounts on deposit in the Accounts (as defined in the Indenture) (other than the Rebate Account, the Operating Account, the Operating Contingency Account and the Costs of Issuance Account) exceed the aggregate principal amount of, and accrued interest on, the Bonds.

Joint Ex. 1, RFA, Sections 1 and 2.8.

22. On September 15, 2008, LBHI filed a voluntary petition for relief under Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Joint Ex. 8, Washington TSA's Amended Proof of Claim, at ¶ 6.

23. On October 3, 2008, LBSF filed a voluntary petition for relief under Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Joint Ex. 8, Washington TSA's Amended Proof of Claim, at ¶ 7.

4

24. On December 1, 2008, the previously delivered Qualified Securities being held by U.S Bank matured and Washington TSA received the Scheduled Reserve Amount plus the Guaranteed Rate for the period from June 1, 2008 to December 1, 2008. *See* Joint Ex. 1, RFA, Section 1. On December 1, 2008, LBSF failed to deliver any Qualified Securities to U.S. Bank, as trustee for Washington TSA, as required by the RFA. Joint Ex. 8, Washington TSA's Amended Proof of Claim, at ¶ 8. U.S. Bank did not deliver the Scheduled Reserve Amount to LBSF.

25. On December 18, 2008, Washington TSA notified Lehman in writing that as a result of the bankruptcy filings and LBSF's failure to deliver Qualified Securities, Lehman Events of Default had occurred under the RFA. Joint Ex. 6, Notice of Event of Default.

26. On January 14, 2009, Washington TSA filed a Motion to Compel Lehman to Assume or Reject the Reserve Fund Agreement (the "Motion to Compel"). Debtors' Ex. 41, Motion to Compel, LBHI_WTSA_00000455-470.

27. Peter Shapiro, principal of Swap Financial, prepared a declaration in support of the Motion to Compel, dated January 14, 2009, and stated that the Termination Amount due Washington TSA is $27.5 million. Debtors' Ex. 40, Shapiro Decl., LBHI_WTSA_00016384-16389, at 3.

28. On March 25, 2009, the Court authorized the rejection of the RFA. Debtors' Ex. 46, Court Order authorizing rejection, TSA_028653.

29. On September 17, 2009, Washington TSA submitted Proof of Claim No. 15016 against LBSF and Proof of Claim No. 14871 against LBHI, claiming $47,046,214.01. Proofs of Claim Nos. 15016, 14871.

5

30. On October 12, 2009, Washington TSA filed amended Proofs of Claim Nos. 37355 and 37356 against LBSF and LBHI, respectively, claiming $47,063,714.01 (the "Proofs of Claim"). Joint Exs. 8, 9, Washington TSA's Amended Proof of Claims.

31. Washington TSA attached a Calculation of Loss Memorandum dated September 10, 2009 and prepared by Swap Financial (the "September 2009 Calculation of Loss Memorandum") to the Proofs of Claim. Joint Exs. 8, 9, Washington TSA's Amended Proof of Claims.

32. The Proofs of Claim state that the claim amount of $47,063,714.01, which included $46,437,610 in Termination Amount as of March 25, 2009, $553,080.02 in lost earnings associated with LBSF's failure to deliver Qualified Securities on December 1, 2008, and $73,023.99 in costs and expenses incurred in connection with the Termination of the RFA. Proofs of Claim. Joint Exs. 8, 9, Washington TSA's Amended Proof of Claims.

33. Lehman filed an objection to the claim, claiming that Washington TSA's claim should be reduced to $4.3 million. (Dkt. 19888.)

34. After Lehman's bankruptcy, Washington TSA invested the Reserve Fund in two money market accounts. Herman Dep. Tr. 306:25-307:14; Cook 30(b)(6) Dep. Tr. 91:2-4; 98:19-24.

DATED this 20th day of October, 2014.

                      PACIFICA LAW GROUP, LLP

                      By /s/ *Paul J. Lawrence*
                         Paul J. Lawrence, WSBA # 13557
                      Admitted Pro Hac Vice
                         Kymberly K. Evanson, WSBA # 39973
                      Admitted Pro Hac Vice
                      Attorneys for Washington State Tobacco
                      Settlement Authority

Dated: New York, New York
October 20, 2014

                      /s/ Laura W. Sawyer
                      JONES DAY
                      Jayant W. Tambe
                      Laura W. Sawyer
                      222 East 41st Street
                      New York, New York 10017
                      Telephone: (212) 326-3685
                      Facsimile: (212) 755-7306

                      *Attorneys for the Debtors*

# **DECLARATION OF SERVICE**

I, Laura W. Sawyer, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that on October 20, 2014, I caused a true and correct copy of Lehman's Proposed Uncontested Facts to be served by electronic mail upon the following counsel of record:

>Paul J. Lawrence
>Kymberly K. Evanson
>PACIFICA LAW GROUP LLP
>1191 Second Avenue, Suite 2100
>Seattle, WA 98101
>
>Eric T. Moser
>Robert N. Michaelson
>RICH MICHAELSON MAGALIFF MOSER, LLP
>340 Madison Avenue, 19th Floor
>New York, NY 10173

>/s/ Laura W. Sawyer
>Laura W. Sawyer