*EXECUTION VERSION*

# AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
## LEHMAN PROGRAM SECURITY

TO: THE DEBTOR AND THE BANKRUPTCY COURT

1. For value received, the adequacy and sufficiency of which are hereby acknowledged, Lehman Brothers Japan Inc. ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to J.P. Morgan Securities plc (the "Purchaser", and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the amounts specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to the Proof of Claim specified in Schedule 1 attached hereto, filed by or on behalf of Seller or Seller's predecessor in interest (the "Proof of Claim") against Lehman Brothers Holdings, Inc. ("LBHI"), debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim, but only to the extent related to such Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the securities (each, a "Purchased Security" and, collectively the "Purchased Securities") issued by Lehman Brothers Treasury Co. B.V. ("LBT") relating to the Purchased Claim and specified in Schedule 1 attached hereto.

2. Seller hereby represents and warrants to Purchaser that (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors; (g) on or about April 17, 2012 Seller received a distribution from LBHI in respect of the Transferred Claims in the amount indicated on Schedule 1 attached hereto (the "First LBHI Distribution"), on or about October 1, 2012 Seller received a distribution from LBHI in respect of the Transferred Claims in the amount indicated on Schedule 1 attached hereto (the "Second LBHI Distribution"), on or about April 4, 2013 Seller received a distribution from LBHI in respect of the Transferred Claims in the amount indicated on Schedule 1 attached hereto (the "Third LBHI Distribution"), on or about October 3, 2013 Seller received a distribution from LBHI in respect of the Transferred Claims in the amount indicated on Schedule 1 attached hereto (the "Fourth LBHI Distribution"), and on or about April 3, 2014 Seller received a distribution from LBHI in respect of the Transferred Claims in the amount indicated on Schedule 1 attached hereto (the "Fifth LBHI Distribution," and, together with the First LBHI Distribution, Second LBHI Distribution, Third LBHI Distribution, and Fourth LBHI Distribution, the "LBHI Distributions"); (h) on or about May 8, 2013, Seller received a distribution from LBT in respect of the Purchased Securities in the amount indicated on Schedule 1 attached hereto (the "First LBT Distribution"); (i) on or about October 24, 2013, Seller received a distribution from LBT in respect of the Purchased Securities in the amount indicated on Schedule 1 attached hereto (the "Second LBT Distribution"); (j) on or about April 28, 2014, Seller received a distribution from LBT in respect of the Purchased Securities in the amount indicated on Schedule 1 attached hereto (the "Third LBT Distribution," and, together with the First LBT Distribution and Second LBT Distribution, the "LBT Distributions").

NYC:289495.3

and, together with the LBHI Distributions, the "Distributions"); (K) other than the Distributions, neither Seller nor its predecessors in interest have received any payments or distributions, whether directly or indirectly, in respect of the Transferred Claims or Purchased Securities since September 15, 2008 or October 8, 2008, respectively; and (l) there has been no failure to comply with or satisfy in all respects any covenant, condition, or agreement to be complied with or satisfied by Seller or any other Japan Liquidation Companies and Japan Non-Liquidation Companies (as defined in the Settlement Agreement) in order to receive distributions from LBHI in respect of the Transferred Claims without reduction or set-off.

3.  Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.  All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from (i) Seller's breach of its representations and warranties made herein or (ii) Seller's or any of other Japan Liquidation Companies and Japan Non-Liquidation Companies' failure to comply with or satisfy in all respects any covenant, condition, or agreement to be complied with or satisfied under, the Settlement Agreement, in each case only to the extent such breach or failure which adversely affects the Debtor's distributions on the Purchased Claim.

5.  Seller shall remit any payments, distributions or proceeds received by Seller on or after October 1, 2014 (the "Trade Date") in respect of the Transferred Claims to Purchaser promptly (but in any event no later than three (3) business days) after Seller receives such payments, distributions or proceeds. Seller shall retain the payments, distributions or proceeds received by it on account of (i) the distribution made by LBHI on October 2, 2014 (the "October 2014 Distribution") or (ii) any other distribution made by LBHI prior to the Trade Date in respect of the Transferred Claims. Seller shall deliver to Purchaser a copy of the statement addressed to Seller from Epiq Bankruptcy Solutions, LLC detailing the October 2014 Distribution promptly (but in any event no later than three (3) business days) upon Seller's receipt of such statement. Seller has transferred, or shall transfer or cause to be transferred as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. Simultaneously with the transfer of the Purchased Securities, Purchaser will make, or cause to be made, a payment equal to the aggregate consideration payable by Purchaser to Seller in exchange for the Transferred Claims and the Purchased Securities to Seller's account via Euroclear or Clearstream (or similar transfer method), as Seller may designate in writing to Purchaser. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Securities.

6.  Purchaser agrees that the Settlement Agreement as of October 24, 2011 among the US Debtors and the Japan Liquidation Companies and Japan Non-Liquidation Companies (the "Settlement Agreement") shall, to the extent that the provisions of the Settlement Agreement relate to the Transferred Claims, be binding in all respects on Purchaser and goven its acts.

7.  Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out

NYC:289495.3

the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to any Proof of Claim.

8.  Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

[*Signature Page Follows*]

NYC:289495.3

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 1st day of October 2014.

**LEHMAN BROTHERS JAPAN INC.**

By: _____
Name: Hiroyasu Ueda
Title: Representative Liquidator

**J.P. Morgan Securities plc**

By: _____
Name: Andrew C. Faherty
Title: Authorized Signatory
Date: 10/1/14

Address:
J.P. Morgan Securities plc
Mail Code: NY1-M138
383 Madison Avenue – Floor 43
New York, New York 10179
ATTN: Jeffrey L. Panzo

NYC-289495.3

Schedule 1

## Transferred Claims

Purchased Claim

As set forth below.

Lehman Programs Securities to which Transfer Relates

| ISIN | Claim No. | Allowed Claim Amount | First LBHI Distribution | Second LBHI Distribution | Third LBHI Distribution | Fourth LBHI Distribution | Fifth LBHI Distribution | First BV Distribution | Second BV Distribution | Third BV Distribution |
|---|---|---|---|---|---|---|---|---|---|---|
| XS0280508952 | 55723 | $1,137,309.17 | $51,310.12 | $34,626.08 | $43,708.71 | $51,844.97 | $56,311.18 | € 312,456.29 | € 121,697.52 | € 128,904.13 |
| XS0295002231 | 55723 | $186,340.70 | $8,406.83 | $5,673.26 | $7,161.39 | $8,494.46 | $9,226.22 | € 27,015.96 | € 10,522.35 | € 11,145.46 |
| XS0303531700 | 55723 | $1,170,748.84 | $52,818.77 | $35,644.17 | $44,993.86 | $53,369.33 | $57,966.87 | € 404,430.08 | € 157,520.08 | € 166,848.01 |
| XS0307008481 | 55723 | $597,076.15 | $26,937.31 | $18,178.35 | $22,946.65 | $27,218.10 | $29,562.82 | € 161,772.03 | € 63,008.03 | € 66,739.20 |
| XS0309365319 | 55723 | $206,202.32 | $9,302.89 | $6,277.96 | $7,924.70 | $9,399.86 | $10,209.62 | € 43,325.94 | € 16,874.87 | € 17,874.16 |
| XS0311664543 | 55723 | $232,485.22 | $10,488.66 | $7,078.16 | $8,934.80 | $10,597.99 | $11,510.96 | € 80,886.02 | € 31,504.02 | € 33,369.60 |
| XS0313326729 | 55723 | $406,068.04 | $18,319.91 | $12,362.99 | $15,605.88 | $18,510.87 | $20,105.50 | € 121,329.03 | € 47,256.02 | € 50,054.40 |
| XS0315419134 | 55723 | $290,392.82 | $13,101.18 | $8,841.19 | $11,160.29 | $13,237.74 | $14,378.11 | € 90,456.28 | € 35,231.51 | € 37,317.82 |
| XS0339480773 | 55723 | $244,380.90 | $11,025.33 | $7,440.33 | $9,391.97 | $11,140.26 | $12,099.94 | € 94,830.37 | € 36,935.15 | € 39,122.36 |
| XS0358426244 | 55723 | $319,386.84 | $14,409.26 | $9,723.93 | $12,274.58 | $14,559.45 | $15,813.69 | € 111,401.62 | € 43,389.43 | € 45,958.84 |
| XS0316169050 | 62783 | $121,100.62 | $4,370.79 | $2,949.50 | $3,725.43 | $4,416.92 | $4,797.80 | € 10,682.47 | € 4,160.68 | € 4,407.06 |

Schedule 1-1

NYC:289495.3