**PFM**

**Public Financial Management**
Financial and Investment Advisors

One Keystone Plaza        717 232-2723
Suite 300                 717 233-6073 Fax
N. Front & Market         717 232-7837 2nd Fax
Streets
Harrisburg, PA  17101

*October 22, 2002*

Potential Provider:

    Public Financial Management, Inc. ("PFM") and CSG Advisors, Inc. ("CSG"), in their capacity as Investment Advisors and Bidding Agents to the Tobacco Settlement Authority (the "Authority"), are seeking bids from qualified providers for an investment of a portion of the proceeds of the Authority's Tobacco Settlement Asset-Backed Bonds, Series 2002 (the "Bonds"). The Authority is seeking bids for a fixed rate Guaranteed Yield Forward Purchase and Sale Agreement (the "Agreement"). The Agreement will provide for the investment of proceeds to be deposited to the Liquidity Reserve Account (the "Liquidity Reserve") established in connection with the Indenture dated as of October 1, 2002 (the "Indenture") (a draft copy of which is enclosed herewith.) Information regarding the nature of the Liquidity Reserve and the amounts to be invested under the Agreement can be found in the Request for Bids (the "RFB"), and draft copy of the Indenture.

    Determination of the winning bidder will be made on the basis of the selection requirements set forth in the attached RFB. The Provider and proposed form of Agreement and related documentation must be acceptable to the Authority, U.S. Bank, N.A. as Trustee, Moody's Investors Service ("Moody's"), Standard & Poor's Ratings Services ("S&P"), and Preston Gates & Ellis, LLP and Hawkins, Delafield and Wood as Co-Bond Counsel.

    **Final bids will be accepted until 2:30 P.M. Eastern Time on Thursday, October 24, 2002. Bids must be submitted to PFM by telecopy transmission using the form attached as Exhibit A to the Bidding Specifications. Please note, the Authority is requesting bids on two (2) different Agreement structures.** Telecopy transmissions should be sent to the attention of Michael Harris at (717) 233-6073. Mr. Harris's phone number is (717) 232-2723.

    Your bids should be based on the information provided in this package. Any bids modifying or amending any specification or requirement contained herein should be discussed and agreed to in advance of the bid. If you have any questions or would like more information, please call Michael Harris, Jennifer Torretti, or the undersigned at (717) 232-2723. The Authority reserves the right to accept or reject bids in whole or in part without cause. Participation by any provider in this bidding process does not constitute the basis for any Agreement between the Authority and that firm. Agreement for securities purchase and sale services shall only be in force and effect upon the execution of a legally valid and binding agreement.

    We look forward to your response.

                                                                  Sincerely,

                                                                  PUBLIC FINANCIAL MANAGEMENT, INC.

                                                                   [SIGNED]

                                                                   George A. Majors
                                                                   Director – Structured Products Applications

Attachments

CONFIDENTIAL                                                                                                                    LBHI_WTSA_00002861



One Keystone Plaza        717 232-2723
Suite 300                 717 233-6073 fax
N. Front & Market Streets 717-232-7837 2nd Fax
Harrisburg, PA 17101

*October 22*, **2002**

REQUEST FOR BIDS

GUARANTEED YIELD FORWARD PURCHASE AND SALE AGREEMENT
LIQUIDITY RESERVE ACCOUNT

TOBACCO SETTLEMENT AUTHORITY
Tobacco Settlement Asset-Backed Bonds, Series 2002

| | | |
|---|---|---|
| 1. | Bidding Date/Time: | Bids must be faxed to the attention of Michael Harris of Public Financial Management, Inc. at (717) 233-6073 or (717) 232-7837 no later than **2:30 P.M. Eastern Time on Thursday, October 24**, 2002. Bids must be transmitted via telecopy to the above party using the Bid Submission Form attached as Exhibit A hereto. |
| 2. | Type of Investment: | Guaranteed Yield Forward Purchase and Sale Agreement (the "Agreement") with downgrade provisions, providing for the semi-annual tender and purchase of Eligible Securities at prices derived from the Agreement Rate. The Agreement must be in a form acceptable to the Tobacco Settlement Authority (the "Authority"), the Trustee, their respective counsels, Standard & Poor's Ratings Services ("S&P"), and Moody's Investors Service ("Moody's"). |
| 3. | Initial Available Amount: | $46,310,050 (preliminary, subject to change) |
| 4. | Bond Ratings: | S&P: "A" (expected at time of issuance)<br>Moody's: "A1" (expected at time of issuance) |
| 5. | Purchase Dates: | The First Purchase Date and the first Business Day of each succeeding June and December, thereafter, until and including the Final Purchase Date. |
| 6. | First Purchase Date: | November 5, 2002 |
| 7. | Final Purchase Date: | The first Business Day of December 2031. |
| 8. | Maturity Dates: | With respect to Eligible Securities purchased on the First Purchase Date, December 2, 2002. Thereafter, with respect to each Purchase Date, the first Business Day of the next succeeding June or December until the Final Maturity Date. |
| 9. | Final Maturity Date: | The last Business Day of May 2032. |
| 10. | Agreement Execution Date: | November 4, 2002. |
| 11. | Basis of Award: | *The Authority is requesting bids on two Agreement structures:* |
| | | *Bid #1*.  The highest fixed interest rate, including the provision for the Authority. to terminate the agreement at **"par"** in the event of a "Mandatory Clean-up Call" (see Paragraph 19 hereof). |
| | | *Bid #2:*  The highest fixed interest rate, including the provision for the Authority to terminate at **"market"** in the event of a "Mandatory Clean-up Call" (see Paragraph 19 hereof) . |

CONFIDENTIAL                                                                                              LBHI_WTSA_00002862

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
*October 22, 2002*
Page 2

|   |   |
|---|---|
|   | The winning bidder (the "Provider") will be notified as soon as practicable. The Authority reserves the right, in its discretion, to reject any and all bids, to waive any irregularities in any bid, and to select the winning Provider among providers submitting identical bids in a manner it deems appropriate. |
|   | After receiving bids with respect to Structure #1 and Structure #2, the Authority will determine which structure is most advantageous. The Agreement will then be awarded to the provider offering the highest fixed interest rate for that structure ("the Agreement Rate"). |
| 12. Eligible Bidders: | Eligible Bidders are limited to financial institutions with long-term credit ratings (or, in the case of a bidder whose obligations under the Agreement would be guaranteed by a third-party Guarantor, the Guarantor's ratings), rated "A" or higher by S&P and "A2" by Moody's. |
|   | The Provider, the form of Agreement, and all provisions thereof must also otherwise be acceptable to the Authority, the Trustee, Moody's and S&P. |
| 13. Parties to Agreement: | The Authority, the Trustee, and the Provider. |
| 14. Securities Purchases: | On each Purchase Date, the Provider will tender to the Trustee Eligible Securities with an aggregate purchase price equal to, but not exceeding, the Available Purchase Amount. The Trustee will purchase such properly tendered Eligible Securities by paying to the Provider the Available Purchase Amount. Each sale of Eligible Securities to the Trustee shall be on a "delivery versus payment" basis. Eligible Securities so tendered will be part of the Liquidity Reserve irrevocably committed and pledged to the purposes for which the Liquidity Reserve was established. The Provider will have neither security interests nor rights of substitution. (See "No Security Interest" and "No Right of Substitution" provisions hereof.) |
| 15. Eligible Securities: | Securities in Book-Entry form only and satisfying each of the following four (4) criteria: |
|   | (1)(a) direct obligations of the United States of America, |
|   | (b) senior debt and/or guaranteed mortgage pass-through obligations of the Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, any Federal Home Loan Bank, and the Federal Farm Credit System, |
|   | (c) commercial paper rated "P-1" by Moody's and "A-1+" by S&P; provided that, at the time of delivery, any such commercial paper is not on negative credit watch and the issuer thereof is subject to U.S. law. Additionally, if the maturity date of the commercial paper tendered is 100 days or more, the issuer thereof must have a long-term rating of at least "A1" by Moody's, "A+" by S&P, and "A" by Fitch Ratings, or |
|   | (d) cash; |
|   | (2) non-callable; |

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
*October 22, 2002*
Page 3

|   |   |
|---|---|
|   | (3) that, as of each respective Purchase Date, mature on or before the next succeeding scheduled Maturity Date; and |
|   | (4) that generate receipts of maturing principal plus interest (if any) (the "Maturity Value") in an amount not less than (i) the Available Purchase Amount plus (ii) the product obtained by multiplying the Agreement Rate, the Available Purchase Amount, and a fraction equal to the number of days (30/360 basis) from the applicable Purchase Date to the next succeeding *scheduled* Maturity Date (i.e., regardless of the *actual* maturity date of tendered Eligible Securities), divided by 360. |
| 16. Agreement Rate: | Fixed rate assuming semiannual compounding and a year consisting of twelve 30-day months. |
| 17. Early Maturities: | To the extent, if any, that purchased Eligible Securities mature (or have a coupon payment) more than two (2) business days prior to the applicable scheduled Maturity Date, the Provider may sell and tender to the Trustee, on the date of such early maturity (or coupon payment), additional Eligible Securities at a price equal to the Maturity Value (or coupon payment) of previously sold Eligible Securities (i.e., at a yield equal to 0.00%). Such option may be exercised only two (2) times with respect to each Purchase/Scheduled Maturity period. At least two Business Days' notice must be given of the exercise of this option. |
| 18. Reserve Requirement: | Except after an Event of Default, the balance in the Liquidity Reserve must be maintained, to the extent of available funds, at the initial deposit therein. |
| 19. Mandatory Clean-up Call: | The 2002 Series Bonds are subject to mandatory redemption in whole at a redemption price equal to 100 percent of the principal amount being redeemed at any time that the available amounts on deposit in the Accounts (other than the Rebate Account, the Operating Account, the Operating Contingency Account and the Costs of Issuance Account) exceed the aggregate principal amount of, and accrued interest on, all Outstanding Series 2002 Bonds |
|   | In the event of a Mandatory Cleanup Call, the following shall apply for each respective bidding structure: |
|   | **Structure #1:** No Termination Amount will be payable to either party. |
|   | **Structure #2:** A Termination Amount (see paragraph #22 hereof) will be calculated and will be payable to the appropriate party. |
| 20. Par Value Withdrawals: | To the extent that the Trustee is required to withdraw amounts from the Liquidity Reserve to pay regularly scheduled debt service on the Bonds, including Extraordinary Prepayments and Sinking Fund Installments, the Available Purchase Amount with respect to such Purchase Date (and, absent replenishment of the Liquidity Reserve, all future Purchase Dates), will be the remaining Liquidity Reserve balance with no other changes to the Agreement and no penalty or other payments due to the Provider. |

CONFIDENTIAL

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
*October 22, 2002*
Page 4

|   |   |
|---|---|
|  | The Trustee will provide timely notice to the Provider of any alteration to the expected Available Purchase Amounts. |
| 21. Market Value Withdrawals: | The Authority, will be permitted to make withdrawals for any permitted purposes other than those providing for Par Value Withdrawals upon calculation and payment of the applicable Termination Amount (with the Provider being the burdened party for purposes of calculating Termination Amount in this context). Such market price withdrawals must be available upon the Trustee providing ten (10) days advance notice to the Provider. |
| 22. Termination Amount: | An amount determined by the burdened party, or a third party acceptable to both parties, in good faith on the basis of the arithmetic mean of quotations from at least three Dealers of the amount, if any, that each such Dealer would require the burdened party to pay to the Dealer or would pay to the burdened party in consideration of such Dealer entering into an agreement with the burdened party (with such documentation as the original parties to the Agreement and the Dealer may in good faith agree) which would have the effect of preserving for the burdened party the economic equivalent of its rights under the Agreement for the period commencing on the termination date of the Agreement and terminating on the Final Maturity Date. |
|  | With respect to any *partial* reductions in Available Purchase Amounts not allowable at par (i.e., without market price adjustment or other penalty or cost), the Termination Amount due will be pro-rated with the numerator being the reduction and the denominator the expected Available Purchase Amount (as adjusted for any previous reductions) immediately prior to such reduction. |
|  | The Authority will consider alternative methods of determining Termination Amount if such alternative method is described at or prior to the time of bidding. |
|  | The Agreement will provide that a Termination Amount may also be determined pursuant to any other method that, from time to time, is mutually agreeable to the Authority and the Provider. |
| 23. Amounts Available to make Termination Payments: | Any Termination Amount, or other amounts due to the Provider under the Agreement (other than Available Purchase Amounts paid for properly tendered Eligible Securities) will be payable only as an Operating Expense payable solely from the Operating Contingency Account. (Please see, in particular, "<u>SECTION 402 Application of Collections</u>" of the Indenture.) |
| 24. Issuance of Refunding Bonds: | The Authority may issue Refunding Bonds in the future. Upon the occurrence of such an event, the Authority, at its option, may either (a) elect to continue the Agreement with a reduction in Available Purchase Amounts, if any, to reflect the then combined Bonds and Refunding Bonds Liquidity Reserve Requirement or (b) terminate the Agreement. In both cases, the applicable Termination Amount (partial, in the case of Authority Option |

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
*October 22, 2002*
Page 5

|   |   |
|---|---|
|   | "(a)") will be payable to the appropriate party with the Provider being the Burdened Party for purposes of calculating such Termination Amount. |
|   | The issuance of Refunding Bonds or other Bonds which do not have the effect of reducing the 2002 Liquidity Reserve Requirement will have no effect on the Agreement. |
| 25. Notice Period for Reductions: | The Agreement must provide for a notice period of ten (10) days or less for a reduction in Available Purchase Amount. Confirmed facsimile notice followed by written notice must be acceptable. The Trustee will covenant to "best efforts" to provide such notice at the time it first becomes aware of the probability of such a reduction. |
| 26. Replenishment: | The Trustee will resume scheduled purchases of Eligible Securities from Liquidity Reserve replenishments occurring within twelve (12) months of the initial withdrawal to pay scheduled debt service, provided that such replenishment shall be in accordance with the Indenture and any failure to resume scheduled securities purchases caused by a failure to replenish, in whole or in part, will not constitute an event of default under the Agreement and will not cause a Termination Amount to be calculated or payable. |
|   | To the extent the Agreement has not been terminated prior to the date that is 12 months after the initial withdrawal of amounts from the Liquidity Reserve to pay scheduled debt service, any amounts deposited to the Liquidity Reserve thereafter and constituting replenishments may, at the option of the Provider, be considered part of the Available Purchase Amount thereafter. |
| 27. Additional Deposits: | There will be no increase in Available Purchase Amounts except in the case of Liquidity Reserve replenishments as described in the paragraph hereof labeled "Replenishment." |
| 28. Provider Downgrade: | Should the Provider's ratings fall below A- or A3 by S&P or Moody's, respectively, the Provider will be required to notify the Trustee and the Authority as soon as practicable but in no case more than five (5) days after the occurrence of such event. The Provider may, at its option, but in any case within ten (10) days of such notice being given, either (a) assign the Agreement to a financial institution acceptable to the Trustee and the Authority and rated at least A+ by S&P and A1 by Moody's, respectively, (b) (if the Provider continues to have an investment grade rating) obtain a guarantee of its obligations under the Agreement acceptable to the Trustee, Moody's, S&P, and the Authority from a financial institution rated no lower than AA by S&P and Aa2 by Moody's, respectively, (c) cause collateral securities to be delivered to an independent custodian within 15 days of such event. The value of the collateral securities must be equal to at least 104% of the Termination Amount, if any, that would be owed by the Provider upon a termination of the Agreement. The collateral and the Termination Amount must be determined weekly. Eligible collateral must be Eligible Securities (see Paragraph 15 hereof). |

CONFIDENTIAL                                                                                                    LBHI_WTSA_00002866

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
***October 22, 2002***
Page 6

| | |
|---|---|
| | Failure to effectuate one of these remedies on a timely basis will constitute an immediate Provider Event of Default (see Paragraph #29 hereof) for which the Provider will have no additional grace period for notice or remedy beyond the total of fifteen (15) days already afforded to it. |
| 29. Provider Event of Default: | Upon a default by the Provider (which shall include any failure to pay any sums due under the Agreement when due, any failure to abide by any other covenant in the Agreement and the filing of any bankruptcy or similar proceeding by or against the Provider), the Provider will notify the Authority as soon thereafter as practicable and in no case more than five (5) business days after such event. If a Provider Termination Event exists, and while it is continuing, the Authority shall have the right to terminate the Agreement, and the Termination Amount (with the Authority as the burdened party) shall be immediately due and payable. |
| 30. Authority/Trustee Default: | For any failure to purchase Eligible Securities by the Trustee that is the fault of the Trustee, the Failure to Purchase Rate payable by the Trustee to the Provider shall be the applicable Fed Funds Rate plus 1%. The Authority shall not be responsible for any default of the Trustee, and vice versa. If a failure to purchase Eligible Securities is caused by an event beyond the control of the Authority or Trustee (e.g., Fed Wire problem), that failure shall not be a Default. A failure by the Trustee to purchase Eligible Securities tendered by the provider on a Purchase Date shall not constitute an event of default whereby the provider would have the right to terminate the Agreement until at least three instances have occurred. In such a case, the Authority will have the right to replace the Trustee to avoid an event of default. |
| | Other than as described in the foregoing, Trustee and Issuer events of default will be limited to (a) default in the performance of any covenant or obligation not cured within five (5) Business Days of notice thereof and (b) any material representation or warranty proves to be incorrect, misleading, or false in any material respect as of the date on which it was made. Additionally, a failure to replenish the Liquidity Reserve to the Reserve Requirement after an allowed withdrawal, but only to the extent that funds are on deposit and available under the Indenture for such replenishment, will constitute a Trustee Event of Default if not cured within five (5) Business Days of such funds becoming available for such replenishment. |
| | No Default of the Authority or Trustee will give Provider rights against monies in the Liquidity Reserves, nor will a Trustee Event of Default give the Provider the right to terminate the Agreement other than as described above. |
| 31. Covenant Not to File Bankruptcy Petition: | Providers will be required by covenant not to file a bankruptcy petition against the Authority. |

CONFIDENTIAL

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
*October 22, 2002*
Page 7

| | |
|---|---|
| 32. Reasonable Notice Periods and Cure Periods: | The Agreement must provide for reasonable notice and cure periods for all parties before an Event of Default is declared. |
| 33. No Security Interest: | The Provider will have no right, title or interest in or to any securities, cash, or other property held by the Trustee. |
| 34. No Right of Substitution: | The Provider will have no right to substitute for previously tendered Eligible Securities. |
| 35. Provider Pays Transaction Costs on "Excess" Securities: | To the extent, if any, that the Provider tenders more than five (5) distinct securities during any Purchase/Scheduled Maturity period, Provider will pay the Trustee's reasonable transaction costs associated with delivery of such "excess" securities. |
| 36. Legal/Bankruptcy Opinions: | Prior to the execution of the Agreement, the Provider shall furnish to the Authority (i) such statements, certificates or other documents as the Authority may reasonably request evidencing that such Provider meets the qualifications described herein, and (ii) an opinion of counsel acceptable to the Authority to the effect that the Agreement constitutes a legally valid, binding, and enforceable obligation of such Provider and that the funds on deposit in the Liquidity Reserve, and the securities delivered to the Liquidity Reserve under the Agreement, and on payments made from the Liquidity Reserve to the Bondholders or otherwise, would not constitute property of the Provider under bankruptcy or insolvency proceedings, and will not be subject to automatic stay and will not be recoverable as a voidable preference in the event of bankruptcy/insolvency of the Provider. If a guarantor is providing the requisite ratings, a similar opinion of counsel of the guarantor will also be required at closing. |
| | If the Provider or guarantor is an insurance company, such opinion shall also state that in the event of a bankruptcy of the Provider or guarantor, the Provider's or guarantor's obligation under the Agreement is on parity with the Provider's or guarantor's obligations to policyholders under applicable law. |
| 37. Authority Legal Opinion: | An enforceability opinion from Counsel to the Authority may be requested by the Provider. If requested, such opinion will be provided at the expense (not to exceed $5,000) of the Provider. Without in any way limiting its discretion as to final content and phrasing of its opinion, counsel to the Authority indicates that it will express no opinion as to the interpretation of any terms of the Agreement or the enforceability against the Authority of any terms within the Agreement to the extent that the same may be affected by a split in the choice of law, i.e., applicability of New York law to the Provider and/or Trustee and applicability of Washington law to the Authority. Counsel to the Authority also indicates that any requested opinion will call specific attention to the fact that the Authority is a Washington municipal |

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
*October 22, 2002*
Page 8

|   |   |
|---|---|
|   | corporation, whose powers, rights, duties and obligations are governed by Washington law. |
| 38. Trustee Legal Opinion: | An enforceability opinion from Counsel to the Trustee may be requested by the Provider. If requested, such opinion will be provided at the expense (not to exceed $5,000) of the Provider. |
| 39. Governing Law/Jurisdiction: | The Agreement shall be deemed to be a contract made under and shall be construed in accordance with and governed by the laws of the State of New York, except that questions regarding Authority authority shall be governed by the laws of the State of Washington. |
| 40. Immediately Available Funds: | All payments and transfers are to be made in immediately available funds through the "Fed Funds Wire" system. |
| 41. Reports/Sale Notices: | The Provider will be required to provide a Sale Notice in connection with each sale and tender of Eligible Securities, such Sale Notice to include delivery date, purchase price, maturity date and CUSIP. |
| 42. Documentation: | All bidders must be prepared to execute a final Agreement that conforms to the requirements of this Request for Bids and is in a form acceptable to the Authority, the Trustee, and Bond Counsel. The winning bidder will be required to circulate a draft of the Agreement and all other related documents to all persons on the distribution list for receipt no later than two (2) business days following the Bid Date. All documents and other information given by the Provider or any Guarantor are public records and may not contain confidentiality provisions. The name of the Provider and other information concerning the investments may be disclosed in the Official Statement for the Bonds and ongoing disclosure reports. |
| 43. Expenses: | All expenses associated with the Provider's bid submission, establishment and documentation of, and performance under the Agreement, including but not limited to any Provider legal fees, brokers' fees, custodial fees, and electronic funds transfer charges, will be the responsibility of the Provider. |
| 44. Tax Certifications: | Submission of a bid is a representation by a potential provider that it did not consult with any other potential provider about its bid, that the bid was determined without regard to any other formal or informal agreement that the potential provider has with the Authority or any other person (whether or not in connection with the Bonds), and that the bid was not submitted as a coutesy to the Issuer or to any other person for purposes of satisfying the requirements that the Authority receive at least three bids from prospective providers in a bona fide solicitation from prospective providers who do not have a material financial interest in the Bonds and that at least one of these three bidders be a reasonably competitive provider under a safe harbor for establishing fair market value under Treasury Regulation Section 1.148-5(d)(6)(iii). |
|   | A potential provider should indicate on its bid response whether or not it has a material financial interest in the Bonds or whether any related party to it |

CONFIDENTIAL  LBHI_WTSA_00002869

TOBACCO SETTLEMENT AUTHORITY
REQUEST FOR BIDS
Tobacco Settlement Asset-Backed Bonds, Series 2002
Liquidity Reserve Account
*October 22, 2002*
Page 9

| | |
|---|---|
| | has such an interest. For this purpose, among other things, the following persons are treated as having such a material financial interest: (i) the lead underwriter on the Bonds for the period until 15 days after the issue date of the Bonds; or (ii) any entity acting as a financial advisor to the Issuer at the time the bid specifications were forwarded to the bidders. |
| | The winning provider will be required to execute a certificate for Federal tax purposes regarding, among other things, administrative costs that the provider is paying or expects to pay to third parties in connection with the investment that is substantially in the form attached as Exhibit B hereto and that is acceptable in form and substance to Co-Bond Counsel. |
| 45. Annual Report: | the Provider must make available to the Authority annually a copy of its Annual Report. |
| 46. Transferability: | Rights and obligations under the Agreement may be transferred or assigned only with the prior written consent of all parties to the Agreement and of S&P and Moody's. The consent of the Authority will not be arbitrarily withheld. In the event that the Agreement is transferred by the Provider, documentation and opinions similar to those required at settlement shall be required with respect to the successor provider. |
| 47. No-Setoff: | The Agreement must state that it is unconditional and must expressly disclaim any right of set-off or counter-claim. |
| 48. Co-Bond Counsel: | Preston Gates & Ellis, LLP and Hawkins, Delafield and Wood |
| 49. Trustee: | U.S. Bank, N.A. |
| 50. Right to Reject All Bids: | The Authority retains the right to reject any and all bids without cause. |
| 51. Failure to Settle: | The Issuer will proceed in good faith to effect timely settlement of the Agreement, however, neither the Authority, its counsel, Co-Bond Counsel, the Trustee, Public Financial Management, Inc., nor any other party shall have any liability if settlement does not occur, or does not occur as scheduled, for any reason. |
| 52. Bidding Agent Fee: | The Provider will be required to pay to PFM as Bidding Agent, on behalf of the Authority a fee of the present value of annual payments equal to 2.5 basis points (0.025%) times the amount expected to be invested pursuant to the Agreement in each year through the Final Maturity Date. The PFM Fee is due and payable by the Provider upon the first purchase of Eligible Securities. |
| 53. Additional Information: | Providers requesting additional information should contact Michael Harris, George Majors, or Jennifer Torretti at PFM, phone: (717) 232-2723. |
| **EXHIBITS TO RFB:** | Exhibit A: Form of Written (Facsimile) Bid Submission<br>Exhibit B: Form of Provider's Certification<br>Exhibit C: Draft Indenture (Provided Separately in Electronic Format) |

CONFIDENTIAL                                                                                                LBHI_WTSA_00002870

# EXHIBIT A – Form of Provider Facsimile Bid Sheet

GUARANTEED YIELD FORWARD PURCHASE AND SALE AGREEMENT
LIQUIDITY RESERVE ACCOUNT

TOBACCO SETTLEMENT AUTHORITY
Tobacco Settlement Asset-Backed Bonds, Series 2002

We have received and read the Request for Bids for a Forward Purchase and Sale Agreement dated October 22, 2002, concerning the investment of the Liquidity Reserve Account related to the Tobacco Settlement Authority, Asset-Backed Bonds, Series 2002. Our bid is as follows:

**Structure #1**:      Agreement Rate: _____% (semiannual, 30/360 basis)
**(par termination)**

**Structure #2**:      Agreement Rate: _____% (semiannual, 30/360 basis)
**(market termination)**

Provider: _____

Long-Term Ratings:
(Moody's/S&P) _____

Short-Term Ratings:
(Moody's/S&P) _____

Does the potential provider or any related person have any material financial interest in the issuance of the Bonds?

_____ Yes          _____ No

We hereby certify that we are an Eligible Provider under the requirements set forth in the Bidding Specifications:

Signed: _____

Name: _____

Title: _____

Phone/Fax Number: _____

Date: _____

PLEASE FAX YOUR BIDS TO: Michael Harris at PFM, fax: (717) 233-6073 or (717) 232-7837, phone: (717) 232-2723 no later than **2:30 P.M. Eastern Time on Thursday, October 24, 2002**.

---

**Provider Representation:** By submitting a bid, each potential provider represents that it did not consult with any other potential provider about its bid, that it agrees to all specifications in this request for bids, that these bid specifications contain all material terms used by the Provider in formulating its bid, and that the bid was determined without regard to any other formal or informal agreement that the potential provider has with the Authority or any other person (whether or not in connection with the Bonds), and that the bid is not being submitted solely as a courtesy to the Authority or any other person for the purposes of satisfying the requirements of the Treasury Regulations paragraph 1.148-5(d)(6)(iii)(B)(1) or (2) (e.g. the requirement to receive three bids from providers that do not have a material financial interest in the Bonds, at least one of which is from a reasonably competitive provider).

---

A-1

### EXHIBIT B - Form of Investment Provider's Certificate

November 5, 2002

Tobacco Settlement Authority
State of Washington
Hawkins, Delafield & Wood
Preston, Gates & Ellis LLP

    Re:    $518,825,000 Tobacco Settlement Authority Tobacco Settlement Asset-Backed Bonds, Series 2002 (the "Bonds")

[Name of Investment Provider] (the "Provider"), is entering into a certain guaranteed investment contract, dated the date hereof (the "Investment Contract"), involving the investment of certain gross proceeds of the referenced bonds (the "Bonds"), of the referenced issuer (the "Issuer"). The undersigned, acting on behalf of the Provider, hereby certifies with respect to the Investment Contract, as follows:

    1.    As deemed represented in submitting a bid, the Provider represents that it did not consult with any other potential provider about its bid, the bid was determined without regard to any other formal or informal agreement that the Provider has with the Issuer or with any other person (whether or not in connection with the Bonds), and the bid was not submitted as a courtesy to the Issuer or to any other person for purposes of satisfying the requirements that the Issuer receive at least three bids from providers who do not have a material financial interest in the issue and that at least one of these three bidders is a reasonably competitive provider under a safe harbor on investment fair market value under Treasury Regulations Section 1.148-5(d)(6)(iii). The Provider was given no opportunity to review other bids (i.e., no "last look") before providing its bid.

    2.    The Provider believes that it is a reasonably competitive provider in that it has an established industry reputation as a competitive provider of the type of investments being purchased pursuant to the Investment Contract.

    3.    The Provider does not have a material financial interest in the Bonds based on being one of the following specified persons: (i) the lead underwriter on the Bonds for the period until 15 days after the issue date of the Bonds; or (ii) any entity acting as a financial advisor to the Issuer on the Investment Contract at the time the bid specifications were forwarded to the bidders. To the best of the Provider's knowledge, the Provider does not otherwise have a material financial interest in the Bonds and is not a related party to any person with such an interest.

    4.    The Provider certifies that the only administrative costs that it is paying or that it expects to pay to third parties in connection with supplying the Investment Contract are $ _____, payable to Public Financial Management , Inc. as bidding agent, and any other administrative costs in the amounts, to the persons, and for the services described as follows (if none, state "None."):

_____

_____

_____

Exhibit B

For this purpose, administrative costs include all brokerage or selling commissions, legal or accounting fees, investment advisory fees, recordkeeping, safekeeping, custody, or other similar costs or expenses. Any administrative costs paid are comparable to administrative costs that would be charged for the same investment or for a reasonably comparable investment if acquired with a source of funds other than gross proceeds of tax-exempt bonds.

[NAME OF INVESTMENT PROVIDER]

By:_____

NAME AND TITLE:_____

Exhibit B