Paul J. Lawrence
Kymberly K. Evanson
PACIFICA LAW GROUP
1191 2nd Avenue, Suite 2000
Seattle, Washington 98101-3404
Tel: (206) 245-1700
Fax: (206) 245-1750

Robert N. Michaelson
Eric T. Moser
RICH MICHAELSON MAGALIFF MOSER, LLP
340 Madison Avenue, 19th Floor
New York, New York 11073
Tel: (212) 220-9404
Fax: (212) 913-9642

*Attorneys for Washington State Tobacco Settlement Authority*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

**WASHINGTON STATE TOBACCO SETTLEMENT AUTHORITY'S**

**<u>MOTIONS IN LIMINE</u>**

WASHINGTON STATE TOBACCO SETTLEMENT
AUTHORITY'S MOTIONS IN LIMINE

10000 00001 dj233517xv

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................... 1

II. MOTIONS IN LIMINE ............................................................................... 1

    A. Motion in Limine #1: The Court Should Exclude Lehman's Calculation of the Termination Amount and Section 7.7(b) losses by Samuel Gruer. ................................................................. 2

        1. The Court Should Exclude Gruer's Calculation of the Termination Amount. .......................................................... 3

        2. The Court Should Exclude Gruer's Calculation of the Section 7.7(b) Losses. ........................................................ 5

    B. Motion in Limine #2: The Court Should Exclude the Opinion of David Babbel ............................................................................. 7

    C. Motion in Limine #3: The Court Should Exclude Evidence or Argument Pertaining to Proofs of Claim Filed By Other States. ..... 7

    D. Motion in Limine #4: The Court Should Exclude Evidence or Argument Pertaining to Settlement and/or "Crystallization" ........ 11

    E. Motion in Limine #5: The Court Should Exclude Evidence or Argument Pertaining to the 2013 Refunding of the 2002 Bonds... 12

III. CONCLUSION .......................................................................................... 12

## TABLE OF AUTHORITIES

### Cases

*Alpex Computer Corp. v. Nintendo Co., Ltd.*,
  770 F. Supp. 161 (S.D.N.Y. 1991) ............................................................................. 11

*Amatucci v. Delaware and Hudson Ry. Co.*,
  745 F.2d 180 (2d Cir. 1984) ..................................................................................... 10

*Baker v. Urban Outfitter, Inc.*, 254 F. Supp. 2d 346 (S.D.N.Y. 2003) ........................... 5

*Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*,
  910 F. Supp. 2d 629 (S.D.N.Y. 2012) ................................................................ 2, 4, 7

*Dallal v. New York Times Co.*,
  352 Fed. Appx. 508 (2d Cir. 2009) ........................................................................ 5, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ......................................... 2

*E.E.O.C. v. Carolina Freight Carriers Corp.*,
  723 F. Supp. 734 (S.D. Fla. 1989) ............................................................................. 8

*Haddad v. Rav Bahamas, Ltd.*,
  589 F. Supp. 2d 1302 (S.D. Fla. 2008) ................................................................. 2, 7

*In re Gabapentin Patent Litig.*,
  MDL No. 1384, 2011 WL 12516763 (D.N.J. Apr. 8, 2011) ....................................... 4

*Isl. Intellectual Prop. LLC v. Deutsche Bank AG*,
  No. 09 Civ. 2675(KBF), 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ....................... 5

*Luce v. United States*,
  469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) .................................................. 1

*MyService Force, Inc. v. Am. Home Shield*,
  No. 10-6793, 2014 WL 1757161(E.D. Pa. May 2, 2014) .......................................... 4

*Republic Tobacco, L.P. v. N. Atl. Trading Co., Inc.*,
  254 F. Supp. 2d 985 (N.D. Ill. 2002) ......................................................................... 9

*Romanelli v. Long Isl. R. Co.*,
  898 F. Supp. 2d 626 (S.D.N.Y. 2012) ........................................................................ 1

08-13555-mg    Doc 46611    Filed 10/23/14    Entered 10/23/14 20:59:52    Main Document
Pg 4 of 18

*Schoffel v. Velez*,
  118 A.D.2d 492, 500 N.Y.S.2d 106, 107 (N.Y. App. Div. 1986) .............................................. 8

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
  762 F.3d 165 (2d Cir. 2014)............................................................................................... 5, 7

*Sprint/United Mgmt. Co. v. Mendelsohn*,
  552 U.S. 379, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008)........................................................... 2

## **Rules**

Fed. R. Evid. 401 ............................................................................................................... 10

Fed. R. Evid. 401 ................................................................................................................. 2

Fed. R. Evid. 402 ......................................................................................................... passim

Fed. R. Evid. 403 ...................................................................................................... 2, 12, 13

Fed. R. Evid. 408 ...................................................................................................... 2, 12, 13

Fed. R. Evid. 702 ......................................................................................................... passim

Fed.R. Civil Proc. 26.......................................................................................................... 10

WASHINGTON STATE TOBACCO SETTLEMENT
AUTHORITY'S MOTIONS IN LIMINE -  iii

  10000 00001 dj233517xv

# I. INTRODUCTION

The sole issue before the Court is the Termination Amount owed to the Washington Tobacco Settlement Authority ("Washington TSA" or "TSA") by Debtors Lehman Brothers Special Financing and Lehman Brothers Holdings Inc. (collectively "Lehman") for Lehman's default and rejection of the parties' Reserve Fund Agreement (the "RFA"). The RFA sets forth the applicable method of calculation. The Termination Amount is to be determined as of the date of rejection, March 25, 2009.

Lehman's proposed exhibit list, Pre-Hearing Brief and preliminary deposition designations demonstrate that Lehman intends to offer evidence that is inadmissible and/or not relevant to the issues before the Court. In anticipation of the evidentiary hearing and pursuant to the Federal Rules of Evidence, made applicable to this proceeding via Federal Rule of Bankruptcy Procedure 9017, Washington TSA respectfully submits the following motions in limine.[1]

# II. MOTIONS IN LIMINE

The purpose of a motion *in limine* is to obtain a pretrial ruling that excludes anticipated inadmissible evidence from trial before it is actually offered. *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *Romanelli v. Long Isl. R. Co.*, 898 F. Supp. 2d 626, 629 (S.D.N.Y. 2012). Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant only if it has a "tendency to make a fact [of consequence in determining the action] more or less probable". Fed. R. Evid. 401. The district court has wide discretion in determining

---

[1] Washington TSA did not receive Lehman's trial exhibits sufficiently in advance of filing to identify each of the proposed trial exhibits that may potentially be impacted by these motions. Accordingly, Washington TSA reserves the right to supplement and/or amend these motions in limine with specific exhibit numbers referencing Lehman's finalized trial exhibits.

WASHINGTON STATE TOBACCO SETTLEMENT
AUTHORITY'S MOTIONS IN LIMINE - 1

10000 00001 dj233517xv

08-13555-mg    Doc 46611    Filed 10/23/14    Entered 10/23/14 20:59:52    Main Document
                                          Pg 6 of 18

admissibility. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008).

TSA anticipates that Lehman will attempt to offer several categories of evidence that are inadmissible under the Federal Rules. Based on discovery and pretrial filings, Lehman is expected to offer evidence and argument that is not relevant to the determination of TSA's total losses and costs, and is thus inadmissible pursuant to Federal Rule of Evidence 402. TSA likewise anticipates that Lehman will offer evidence barred by Federal Rules of Evidence 403, 408, and 702. Accordingly, the Court should enter an order *in limine* excluding any evidence or argument pertaining to: 1) Samuel Gruer's calculation of the Termination Amount and 7.7(b) losses; 2) David Babbel's expert opinion; 3) Proofs of Claim from other states; 4) the attempted settlement/crystallization of TSA's claim; and 5) the 2013 refunding of the 2002 Bonds.

**A.     Motion in Limine #1: The Court Should Exclude Lehman's Calculation of the Termination Amount and Section 7.7(b) losses by Samuel Gruer.**

Under Fed. R. Evid. 702, expert testimony is not admissible if it will not "help the trier of fact . . . to determine a fact in issue". "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993) (internal quotations omitted). Where an expert's testimony is based on a misinterpretation of a contract, it is irrelevant and not helpful. *See Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 655 (S.D.N.Y. 2012) (expert testimony on termination payment should be excluded if based on misinterpretation of the contract); *Haddad v. Rav Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1306-07 (S.D. Fla. 2008) (expert's valuation testimony was not helpful where it ignored contractual provision establishing how value was to be determined). Here, the opinion of Lehman's expert Samuel Gruer is inadmissible because it does not help determine a fact in issue and it relies on a

WASHINGTON STATE TOBACCO SETTLEMENT
AUTHORITY'S MOTIONS IN LIMINE - 2

faulty interpretation of the RFA.  Gruer's calculation of the Termination Amount and the Section 7.7(b) losses should be excluded.

### 1. The Court Should Exclude Gruer's Calculation of the Termination Amount.

Gruer's calculation of the Termination Amount is inadmissible because it has no basis in the RFA and is therefore irrelevant.  Because neither TSA nor Lehman was able to secure market quotations, the Termination Amount under the RFA is defined as "the amount, as reasonably determined in good faith by the Burdened Party, to be the Burdened Party's total losses and costs . . . including any loss of bargain . . . ."  Joint Ex. 1 at 5.  Despite the plain language of the RFA, Gruer admits that he did not calculate the Termination Amount to reflect TSA's total losses and costs, nor does he offer any opinion on what TSA's losses are:

> Q.   Is it fair, then, that you did not attempt to calculate TSA's loss . . . ?
>
> A.   . . . I attempted to calculate the value of the transaction. . . . [W]hether or not that represents a loss or not, I was not asked to opine on that.

Declaration of Paul Lawrence ("Lawrence decl.") at Ex. 1, Gruer Dep. 61:3-10.  Gruer admits that he did not consider TSA's actual losses, (Gruer Dep. 69:18-70:3), nor the costs TSA would incur even if a hypothetical dealer were willing to replace the RFA (which one was not).  Gruer Dep. at 141: 8-18.

Rather than attempting to calculate TSA's losses and costs, Gruer purports to offer a "commercially reasonable mid-market valuation" of the RFA.  Debtors Ex. 139, ¶ 4.  Gruer however concedes that the RFA does not call for a "mid-market" valuation, and that had TSA been able to obtain market quotations from any willing dealers, numerous additional costs would have been included in those quotes above and beyond the mid-market value.

> Q.   Does the termination amount definition in the RFA use the terminology, "Mid-market value"?

>   A.   It does not.
>
>   Q.   And in terms of the quotation process that is identified in the termination amount, the dealer bid that you would try to get back would include these credit charges and profit charges and other charges that are not taken into account in mid-market value, correct?
>
>   A.   If there was a replacement transaction, then presumably, the dealer who entered into the replacement transaction would charge those costs and that would be factored into where they would ultimately deal with Washington TSA.
>
>   Q.   The dealer quote process would obtain numbers that would include those cost elements, profit, credit, other costs, that are not included in the mid-market value, correct?
>
>   A.   Typically, that's correct.

Gruer Dep. at 141:19- 142:15. Gruer's methodology reaches the absurd result of valuing the RFA at a value more advantageous to Lehman than what the market was in fact willing to pay (the preferred method of valuation under the RFA).

Accordingly, Gruer's calculation of a "commercially reasonable mid-market value" has no basis in the plain language of the RFA which defines the "Termination Amount" as TSA's total *losses and costs*. It therefore must be excluded. *See Bank of NY Mellon*, 910 F. Supp. 2d at 647-48; *MyService Force, Inc. v. Am. Home Shield*, No. 10-6793, 2014 WL 1757161, at *12-13 (E.D. Pa. May 2, 2014) (excluding expert testimony on contract damages that was based on a misinterpretation of underlying contract); *In re Gabapentin Patent Litig.*, MDL No. 1384, 2011 WL 12516763, at *2-3 (D.N.J. Apr. 8, 2011) (excluding expert testimony that was based on a misinterpretation of underlying patent claim).

Moreover, under New York law, expert testimony on damages is irrelevant if it is based on an inappropriate damages measure for the particular case. *Baker v. Urban Outfitter, Inc.*, 254

F. Supp. 2d 346, 354 (S.D.N.Y. 2003) (expert testimony irrelevant if based on wrong "starting point for calculating damages"); *Isl. Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 Civ. 2675(KBF), 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012) (excluding expert testimony on "the amount of lost profits" as irrelevant where damages were to be determined based on "a reasonable royalty").  Here, despite the definition of the Termination Amount, Gruer admits he has not even attempted to calculate TSA's losses and costs.  His mid-market forward-curve valuation conflicts with the language of the RFA and is therefore inadmissible.

Similarly, because the RFA does not dictate the use of an "industry standard" valuation, Gruer's testimony that his mid-market value is the "industry standard" method for valuing forward purchase agreements is irrelevant, not helpful to the trier of fact, and should be excluded.  Fed. R. Evid. 702; 402; *see also Dallal v. New York Times Co.*, 352 Fed. Appx. 508, 512 (2d Cir. 2009) (expert testimony on industry practice irrelevant where claimant "did not rely on its conformity with industry practice"); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 180-81 (2d Cir. 2014) (excluding expert testimony on industry practice where contractual provisions were clear and did not have specialized industry meaning).

In sum, because Gruer's calculation of the Termination Amount is contrary to the RFA, it is not helpful to the Court and should be excluded.  The Court should exclude Gruer's calculation and any argument based on it, including but not limited to Debtors' Exhibits 12 and 139.

**2. The Court Should Exclude Gruer's Calculation of the Section 7.7(b) Losses.**

Gruer's calculation of the Section 7.7(b) losses should also be excluded because it conflicts with the plain terms of the RFA and is therefore irrelevant and not helpful to the Court. Fed. R. Evid. 402, 702.  Section 7.7(b) of the RFA states:

> If there is a Lehman Event of Default as described in Section 7.3(a) hereof, the amount of losses payable by Lehman upon demand therefor pursuant to Section 7.6(a) shall equal the excess, if any, of (i) interest the Trustee would have earned on the related Scheduled Reserve Amount had the Scheduled Reserve Amount been invested in Qualified Securities at the Guaranteed Rate (the "Guaranteed Interest") over (ii) the interest the Trustee actually earned by investing the related Deposit Amount in Permitted Investments in accordance with Section 2.4 hereof (or if the Trustee fails to invest such Scheduled Reserve Amount in Permitted Investments in accordance with Section 2.4, the amount of interest the Trustee would have earned on such Scheduled Reserve Amount had the Trustee complied with the requirements of Section 2.4 (hereof).

In other words, this section of the RFA calculates TSA's loss by comparing what TSA should have earned on the Reserve Fund under the Guaranteed Rate on the RFA, with what TSA <u>actually earned</u>, from the date of Lehman's failure to deliver securities to the date the contract was rejected. (December 1, 2008 to March 25, 2009). Instead of performing this straightforward calculation, Gruer compares the RFA's guaranteed rate with what he projects TSA could have earned by investing in asset-backed commercial paper, which he states was the "highest yielding (on a spot basis) of Eligible Securities." Debtors Ex. 139, ¶ 53. But nothing in the RFA required TSA to purchase the "highest yielding" Eligible Security. Rather, the RFA provides that upon Lehman's failure to deliver, the Reserve Fund should be invested "to the extent directed by [TSA] pursuant to the Indenture," and that TSA's losses are the difference between the guaranteed rate of 4.484% and the rate "*actually* earned" on the substitute investments. Joint Ex. 1 at 7, 20-21 (emphasis added). TSA is not required to invest in the highest yielding securities available, is free to exercise discretion in determining appropriate investments, and is owed its actual losses. Like his mid-market valuation, Gruer's calculation of TSA's Section 7.7(b) losses is in conflict with the terms of the RFA and should be excluded.

WASHINGTON STATE TOBACCO SETTLEMENT
AUTHORITY'S MOTIONS IN LIMINE - 6

B.    **Motion in Limine #2: The Court Should Exclude the Opinion of David Babbel**

The opinion of David Babbel is also irrelevant and should be excluded pursuant to Fed. R. Evid. 402 and 702. Like Gruer, Babbel does not attempt to calculate TSA's total losses and costs caused by Lehman's breach.

> Q.    . . . How do you valuate what [TSA's] total losses will be?
>
> A.    . . . I'm not the damages expert. I don't know the definition of damages. . . . I know something about valuing swaps, fixed pieces, and floating pieces. My testimony is really restricted to methodology and how swaps are . . . valued by forward rates of interest. So I wasn't asked to really do this, what you're asking me now.

Lawrence Decl., Ex. 2, Babbel Dep. 140:6-20.

As Babbel concedes, his testimony does not concern TSA's losses and costs, but rather is restricted to the traditional use of the forward curve in the finance industry. Because the RFA does not call for a forward curve or "industry" based valuation methodology, Babbel's opinion on the general use of the forward curve in finance is irrelevant. *See Dallal v. New York Times Co.*, 352 Fed. Appx. at 512; *Sompo Japan Ins. Co. of Am.*, 762 F.3d at 180-81.

For the same reasons, Babbel's critique of TSA's calculation of the Termination Amount by Curry and Hasterok should be excluded. By ignoring the RFA's definition of the Termination Amount as TSA's total losses and costs, his opinion rests on a misinterpretation of the contract and is therefore "not helpful" to a fact in issue and must be excluded. Fed. R. Evid. 702; *Bank of NY Mellon*, 910 F. Supp. 2d at 647-48; *Haddad*, 589 F. Supp. 2d at 1306-07.

The Court should exclude Babbel's opinion and any argument based on it, including but not limited to Debtors' Exhibits 13 and 138.

C.	**Motion in Limine #3: The Court Should Exclude Evidence or Argument Pertaining to Proofs of Claim Filed By Other States.**

Lehman has identified as potential exhibits proofs of claim filed in Lehman's bankruptcy case by tobacco authorities from New Jersey, New York, and Virginia. *See* Debtors' Ex. 71, 72, 73, 74, 76, 79. But these exhibits, along with any evidence or argument pertaining to other claims or other agencies, should be excluded for multiple reasons. First, Lehman has taken the position throughout this litigation that its treatment of other tobacco reserve fund agreements is irrelevant to TSA's claim. Throughout discovery, Lehman adamantly refused to produce any documents pertaining to its other tobacco RFAs, insisting that such agreements were so different from the RFA with TSA that they were not even "reasonably calculated to lead to the discovery of admissible evidence". Where Lehman has argued that evidence pertaining to other states did not even meet the low standard of F.R.C.P. 26, it certainly cannot meet the higher relevance standard of Fed. R. Evid. 401 ("tendency to make a fact [of consequence in determining the action] more or less probable"). Moreover, it is well-established that a party cannot use at trial evidence which it refused to produce in discovery. *See e.g.*, *Schoffel v. Velez*, 118 A.D.2d 492, 493, 500 N.Y.S.2d 106, 107 (N.Y. App. Div. 1986) (precluding plaintiff from relying at trial on the documentary material unsuccessfully sought by defendant in discovery); *E.E.O.C. v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 747 (S.D. Fla. 1989) (party was estopped from presenting evidence at trial as to terminals other than one at issue because in discovery party had "adamantly argued that any discovery concerning any [other] terminal . . . was 'totally irrelevant and immaterial to and beyond the proper scope of the litigation'"); *Republic Tobacco, L.P. v. N. Atl. Trading Co., Inc.*, 254 F. Supp. 2d 985, 992-93 (N.D. Ill. 2002) (party was precluded from arguing about issue in part because party had "declined to provide discovery" on the issue and had argued "that such discovery was not relevant").

WASHINGTON STATE TOBACCO SETTLEMENT
AUTHORITY'S MOTIONS IN LIMINE - 8

10000 00001 dj233517xv

Lehman should be estopped from introducing evidence pertaining to other tobacco RFA's where it refused to produce such evidence in discovery.

Furthermore, the mere proofs of claim submitted by other tobacco settlement authorities are neither properly authenticated to be admissible nor relevant to any fact before the Court. Lehman will likely argue that the other proofs of claim are relevant because they show that other tobacco settlement agencies were in some cases able to procure market quotations to calculate a termination amount under the various contracts. But the proofs of claim do not show the actual bid documents that went out or the actual response of the providers. The proofs of claim themselves provide limited or no information about the quote process, including the terms, the exact dates of the bids and responses, whether the responses were indicative or actionable bids, and what other limitations, if any were placed on the response to the bids. In sum, there is no basis on which the Court could conduct a comparison between the experience of other tobacco agencies in procuring quotes and TSA's <u>and Lehman's</u> inability to do so. There is no witness testifying based on personal knowledge about the bids and responses. In other words, there is no basis upon which the bids can be admitted as evidence.

Moreover, whether or not other agencies could procure quotes is irrelevant to the fact that neither TSA <u>nor Lehman</u> could procure <u>three</u> market quotations for the RFA on March 25,

2009.[2] Lehman was able to procure only <u>one</u> indicative, non-actionable, "quote", which was "expired, null and void" upon issuance. *See* Debtors Ex. 44. Lehman's insinuation that quotes were widely available is belied by its own experience in trying to obtain them. *See* TSA Ex. R (email from Deutsche bank refusing to provide indicative quote). Accordingly, the claims of other tobacco agencies are inadmissible and irrelevant, particularly since they are based on different contracts, time frames and rejection dates.

The RFA authorizes TSA to determine its total losses and costs reasonably and in good faith, and TSA's determination is binding absent manifest error. Evaluating the myriad details involved in the claims of other tobacco authorities would not help establish whether TSA's own determination is reasonable and in good faith. The claims from other states are based on different agreements with varying rates of return, reserve fund amounts, eligible securities, and durations. Importantly, the claims also involve different rejection dates (a critical factor given the volatility of the market following Lehman's bankruptcy), different methods used to calculate the termination payment, and different tobacco authorities with varying limits on their ability to invest. *See Amatucci v. Delaware and Hudson Ry. Co.*, 745 F.2d 180, 183 (2d Cir. 1984) (evidence of similar health issues befalling other employees "had no probative value" and

---

[2] Lehman argues in its pretrial brief that TSA "deliberately" avoided the market quotation process and is therefore not calculating its losses in good faith. Debtors' Prehearing Br. at 23. Not only is there no evidence in support of this spurious allegation, but Lehman itself could not procure three market quotations. Therefore, TSA's inability to procure three market quotations cannot be evidence of lack of good faith where Lehman was likewise unable to procure them. And Lehman repeatedly ignores the fact that under the express terms of the RFA, the use of the quotations method to determine the termination amount requires <u>three</u> quotations. Even if Lehman's "expired, null and void" indicative quotation from Wachovia could be considered a qualifying quotation under the RFA (a point TSA does not concede), Lehman would still need two additional quotations in order to utilize the quotation method. Accordingly, because Lehman failed to do so, the quotation method is irrelevant to this dispute.

should have been excluded in absence of evidence that "circumstances surrounding" other incidents were similar.) The Proofs, moreover, are unauthenticated hearsay. As such, the proofs of claims from other states are irrelevant and inadmissible under Fed. R. Evid. 402.

Finally, any probative value would be outweighed by the danger of wasting time and delaying these proceedings. Fed. R. Evid. 403. Each separate claim is voluminous and detailed and submitted without appropriate context or foundation. The Court should exclude evidence and argument pertaining to the claims of other tobacco authorities, including whether or not other agencies were able to obtain market quotations, and Debtors Exhibits 71, 72, 73, 74, 76, and 79.

**D.     Motion in Limine #4: The Court Should Exclude Evidence or Argument Pertaining to Settlement and/or "Crystallization".**

TSA's attempts to settle this dispute should be excluded under Fed. R. Evid. 402 and 408. TSA anticipates Lehman will introduce evidence related to TSA's attempts to settle its claim with Lehman, including TSA's efforts to settle the claim for the purpose of selling it to a third party, sometimes referred to as "crystallization." TSA's settlement communications and strategy are irrelevant to the value of its claim and are inadmissible for that reason. *See* Fed. R. Evid. 402. The parties' prior attempts at settlement do not relate to whether TSA's separate determination of the Termination Amount is reasonable and in good faith. Further, the communications are inadmissible as settlement negotiations. Fed. R. Evid. 408 (providing that evidence of "conduct or a statement made during compromise negotiations" is inadmissible); *see, e.g.*, *Alpex Computer Corp. v. Nintendo Co., Ltd.*, 770 F. Supp. 161, 163 (S.D.N.Y. 1991) ("All that is needed for Rule 408 to apply is an actual dispute, or at least an apparent difference of opinion between the parties as to the validity of a claim."). Evidence or argument pertaining to settlement or crystallization should be excluded.

E.  **Motion in Limine #5: The Court Should Exclude Evidence or Argument Pertaining to the 2013 Refunding of the 2002 Bonds.**

Evidence and argument related to the 2013 refunding of TSA's bonds also should be excluded because such evidence is irrelevant and would be a waste of time. *See* Fed. R. Evid. 402, 403. The refunding has no bearing on TSA's losses and costs from Lehman's breach and rejection of the RFA, and is not probative of TSA's good faith. Given that Lehman has argued for the exclusion of all market data that post-dates the termination, it cannot rely on evidence of a wholly separate event four years after termination that has no bearing on TSA's losses and costs. *See* Debtors Prehearing Br. at 20 ("Section 562 requires the Court to determine the value of the RFA independent of anything that may have happened subsequent to March 25, 2009."). Because evidence related to the refunding has no probative value regarding the issue that is before the Court, such evidence should be excluded. *See* Fed. R. Evid. 402.

Moreover, examining the complex details of the refunding would be a waste of time. *See* Fed. R. Evid. 403. The refunding represents a complicated event subsequent to the rejection date that was not foreseeable on the rejection date and that is distinct from TSA's claim against Lehman. Allowing evidence related to the refunding would necessitate delving into tangential facts and circumstances that would not assist the Court in evaluating the reasonableness of TSA's calculation of the Termination Amount. The Court should exclude evidence and argument pertaining to the refunding.

### III.    CONCLUSION

The sole issue before the Court is whether TSA reasonably calculated its total losses and costs in good faith. The Court should exclude Lehman's anticipated evidence and argument unrelated to this question and unhelpful to the Court. TSA's Motions in Limine should be granted.

DATED this 23rd day of October, 2014.

                    PACIFICA LAW GROUP, LLP

                    By /s/ *Paul J. Lawrence*
                      Paul J. Lawrence, WSBA # 13557
                  Admitted Pro Hac Vice
                      Kymberly K. Evanson, WSBA # 39973
                  Admitted Pro Hac Vice
                  Attorneys for Washington State Tobacco
                  Settlement Authority

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2014, I caused the document to which this Certificate is attached to be served upon the following:

| | |
|---|---|
| Jayant W. Tambe | ☐ via facsimile |
| Laura W. Sawyer | ☐ via overnight courier |
| Jennifer L. Del Medico | ☐ via first-class U.S. mail |
| Benjamin Rosenblum | ☐ via email |
| Jones Day | ☒ via electronic court filing |
| 222 East 41st Street | ☐ via hand delivery |
| New York, New York 10017 | |
| Email: jtambe@jonesday.com | |
| Email: lwsawyer@jonesday.com | |
| Email: jdelmedico@jonesday.com | |
| Email: brosenblum@jonesday.com | |
| Telephone: (212) 326-3939 | |
| Facsimile: (212) 755-7306 | |

Attorneys for the Debtors and Debtors in Possession

Signed at Seattle, Washington this 23rd day of October, 2014.

/s/  Kymberly K. Evanson
    Kymberly K. Evanson
    Attorney for Washington State Tobacco
    Settlement Authority