Paul J. Lawrence
Kymberly K. Evanson
PACIFICA LAW GROUP
1191 2nd Avenue, Suite 2000
Seattle, Washington 98101-3404
Tel: (206) 245-1700
Fax: (206) 245-1750

Robert N. Michaelson
Eric T. Moser
RICH MICHAELSON MAGALIFF MOSER, LLP
340 Madison Avenue, 19th Floor
New York, New York 11073
Tel: (212) 220-9404
Fax: (212) 913-9642

*Attorneys for Washington State Tobacco Settlement Authority*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |

**DECLARATION OF PAUL J. LAWRENCE IN SUPPORT OF WASHINGTON STATE TOBACCO SETTLEMENT AUTHORITY'S MOTIONS IN LIMINE**

I, Paul J. Lawrence, declare as follows:

1.   I am a partner at Pacifica Law Group LLP, counsel of record for the Washington State Tobacco Settlement Authority ("TSA"), in the above-captioned matter. I am over the age of 18, am competent to testify, and offer this declaration based on my personal knowledge.

2.   Attached hereto as **Exhibit 1** is a true and correct copy of excerpts from the deposition of Samuel M. Gruer, taken in this litigation on March 6, 2014.

DECLARATION OF PAUL J. LAWRENCE IN
SUPPORT OF WASHINGTON STATE TOBACCO
SETTLEMENT AUTHORITY'S MOTIONS IN
LIMINE - 1

3.  Attached hereto as **Exhibit 2** is a true and correct copy of excerpts from the deposition of David F. Babbel, taken in this litigation on March 7, 2014.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Seattle, Washington this 23rd day of October, 2014.

>By  /s/ Paul J. Lawrence
>Paul J. Lawrence, WSBA # 13557
>Admitted Pro Hac Vice
>Attorney for Washington State Tobacco Settlement Authority

DECLARATION OF PAUL J. LAWRENCE IN
SUPPORT OF WASHINGTON STATE TOBACCO
SETTLEMENT AUTHORITY'S MOTIONS IN
LIMINE - 2

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2014, I caused the document to which this Certificate is attached to be served upon the following:

| | |
|---|---|
| Jayant W. Tambe<br>Laura W. Sawyer<br>Jennifer L. Del Medico<br>Benjamin Rosenblum<br>Jones Day<br>222 East 41st Street<br>New York, New York 10017<br>Email: jtambe@jonesday.com<br>Email: lwsawyer@jonesday.com<br>Email: jdelmedico@jonesday.com<br>Email: brosenblum@jonesday.com<br>Telephone: (212) 326-3939<br>Facsimile: (212) 755-7306 | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via email<br>☒ via electronic court filing<br>☐ via hand delivery |

Attorneys for the Debtors and Debtors in Possession

Signed at Seattle, Washington this 23rd day of October, 2014.

/s/ Kymberly K. Evanson
Kymberly K. Evanson
Attorney for Washington State Tobacco
Settlement Authority

DECLARATION OF PAUL J. LAWRENCE IN
SUPPORT OF WASHINGTON STATE TOBACCO
SETTLEMENT AUTHORITY'S MOTIONS IN
LIMINE - 3

# EXHIBIT 1

```
                                                          1

 1
 2     UNITED STATES BANKRUPTCY COURT
       SOUTHERN DISTRICT OF NEW YORK
 3     ---------------------------x
 4         In re:                       Chapter 11
       LEHMAN BROTHERS HOLDINGS,    Case No. 08-13555
 5         INC., et al,                    (JMP)
 6                     Debtors.    (Jointly Administered)
       ---------------------------x
 7                         March 6, 2014
                           10:01 a.m.
 8
 9          Deposition of SAMUEL M. GRUER,
10     pursuant to Notice, at the offices of Jones
11     Day, 222 East 41st Street, New York, New
12     York, before David Levy, CSR, RPR, CLR, a
13     Notary Public of the State of New York.
14
15
16
17
18
19
20
21
22
23
24
25
```

61

```
 1                     Gruer
 2            You can answer.
 3       A.   I determined -- I estimated -- sorry.
 4   I attempted to calculate the value of the
 5   transaction.  The loss that I calculated
 6   specifically was the 7.7B loss amount which is
 7   included, you know, in the valuation.
 8            As a legal matter, whether or not that
 9   represents a loss or not, I was not asked to opine
10   on that.
11       Q.   So let's put aside the 7.7B.  We'll
12   talk about that specifically.
13       A.   Sure.
14       Q.   But have you read a copy of the
15   Tobacco Settlement Authority RFA?
16       A.   Yes.
17       Q.   And you've seen the definition of the
18   termination amount in that agreement?
19       A.   I have.
20       Q.   And did you review that for purposes
21   of your report?
22       A.   Yes.
23       Q.   And do you understand that the first
24   step in the process to come to a termination
25   amount is to seek bids from dealers for a
```

69

1              Gruer
2    no, I don't.
3        Q.   Do you have any sense of the magnitude
4    of the difference between the interest actually
5    earned by the TSA since the Lehman default
6    compared to the guaranteed rate that Lehman was to
7    provide under the reserve fund agreement?
8        A.   Generically, I -- I'm aware of
9    their -- how they've invested the money. I don't
10   know specifically how they've invested the money
11   during that time period.
12       Q.   Do you -- go ahead.
13       A.   But again, my -- my charge was to
14   value the agreement as of March 25th, 2009 and, as
15   a result, whatever they did after that date played
16   no role, nor should it play a role, in how I
17   valued the agreement as of that date.
18       Q.   So whatever the actual difference is
19   between the amount earned by TSA in its investment
20   of reserve funds since Lehman's default, and the
21   amount that Lehman had agreed to pay in the RFA,
22   that number is irrelevant to your opinion,
23   correct?
24           MR. TAMBE: Objection to the form of
25       the question.

141

```
 1                        Gruer
 2   his or her experience, to your knowledge.
 3        A.    Not to my knowledge.
 4        Q.    So in paragraph 49, you indicate a
 5   calculation of a mid market value, do you see
 6   that?
 7        A.    I do.
 8        Q.    By using the terminology "mid market
 9   value," what does that tell us?
10        A.    That is the value of the agreement and
11   before any adjustments for dealer profit, before
12   any adjustments for credit reserves, and in this
13   case, specifically, it's before adjusting for the
14   7.7B loss amount.
15        Q.    And certainly before any adjusting for
16   other costs associated, third-party costs
17   associated with a trade, for example.
18        A.    Correct.
19        Q.    Does the termination amount definition
20   in the RFA use the terminology, "Mid market
21   value"?
22        A.    It does not.
23        Q.    And in terms of the quotation process
24   that is identified in the termination amount, the
25   dealer bid that you would try to get back would
```

228

```
 1
 2                    C E R T I F I C A T E
 3    STATE OF NEW YORK    )
 4                         : ss.
 5    COUNTY OF NEW YORK   )
 6
 7              I, DAVID LEVY, CSR, a Shorthand
 8    Reporter and Notary Public within and for
 9    the State of New York, do hereby certify:
10              That SAMUEL M. GRUER, the witness
11    whose deposition is hereinbefore set forth,
12    was duly sworn by me and that such
13    deposition is a true record of the testimony
14    given by the witness.
15              I further certify that I am not
16    related to any of the parties to this action
17    by blood or marriage, and that I am in no
18    way interested in the outcome of this
19    matter.
20              IN WITNESS WHEREOF, I have hereunto
21    set my hand this 9th day of March 2014.
22
23                              _____
24                              DAVID LEVY, CSR, RPR, CLR
25
```

# EXHIBIT 2

```
                                                                  1

   1
   2                    UNITED STATES BANKRUPTCY COURT
   3                    SOUTHERN DISTRICT OF NEW YORK
   4
          In Re:   LEHMAN BROTHERS         )  Chapter 11 Case
   5                                       )  No. 08-13555
          HOLDINGS, INC., et al.,          )  (JMP)
   6                                       )  (Jointly
                         Debtors.          )  Administered)
   7     _____  )
   8
   9
  10
  11
  12
  13              DEPOSITION OF DAVID F. BABBEL
  14                   New York, New York
  15                 Friday, March 7, 2014
  16
  17
  18
  19
  20
  21
  22
  23
  24     Reported by:
         PATRICIA A. BIDONDE, RPR
  25
```

140

```
 1                    D. Babbel
 2          Q.   I'm not suggesting you know.  I'm
 3   just asking how do you determine what their
 4   total losses will be.  As you said, there may
 5   not be losses.  You have to go through the
 6   valuation first.  How do you valuate what the
 7   total losses will be?
 8          A.   You look at what they could have
 9   lost in value.  That's how I would do it.  But
10   I'm not the damages expert.  I don't know the
11   definition of damages.
12               They're talking here about a
13   termination amount.  I know something about
14   valuing swaps, fixed pieces, and floating
15   pieces.
16               My testimony is really restricted
17   to methodology and how swaps are -- take
18   advantage of or valued by forward rates of
19   interest.  So I wasn't asked to really do
20   this, what you're asking me now.
21          Q.   Okay. Fair enough.  I do need
22   that back though.
23          A.   Sure.  (Handing.)
24          Q.   Have you ever been asked to give
25   an opinion about a party's total losses?
```

```
                                                                  179

 1                        D. Babbel
 2                      C E R T I F I C A T E
 3
 4        STATE OF NEW YORK      )
 5                               : ss.
 6        COUNTY OF NASSAU       )
 7
 8                I, PATRICIA A. BIDONDE, a Notary
 9        Public within and for the State of New
10        York, do hereby certify:
11                That DAVID F. BABBEL, the witness
12        whose deposition is hereinbefore set
13        forth, was duly sworn by me and that
14        such deposition is a true record of the
15        testimony given by the witness.
16                I further certify that I am not
17        related to any of the parties to this
18        action by blood or marriage, and that I
19        am in no way interested in the outcome
20        of this matter.
21                IN WITNESS WHEREOF, I have
22        hereunto set my hand this day,
23        March 17, 2014.
24                            _____
25                            PATRICIA A. BIDONDE, RPR
```