# Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | Case No. 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.** and | : | |
| **LEHMAN BROTHERS SPECIAL FINANCING INC.** | : | **Adversary Proceeding** |
| | : | |
| Plaintiffs-Counterclaim Defendants | : | No. 13-01554 (SCC) |
| | : | |
| v. | : | |
| | : | |
| **GIANTS STADIUM LLC,** | : | |
| | : | |
| Defendant-Counterclaim Plaintiff. | : | |

## NOTICE OF SUBPOENA *DUCES TECUM*

PLEASE TAKE NOTICE that, pursuant to Rules 7026, 7034, and 9016 of the

Federal Rules of Bankruptcy Procedure and Rules 26, 34, and 45 of the Federal Rules of Civil

Procedure and the attached subpoena, New York Football Giants, Inc. (the "New York Giants")

is required to produce to Lehman Brother Holdings Inc. and Lehman Brothers Special Financing

Inc. documents that are in New York Giants' possession, custody or control, as described in

Exhibit A attached hereto, at the offices of Weil Gotshal & Manges LLP, 767 Fifth Avenue, New

York, New York on or before November 14, 2014 at 5:00 p.m.

Dated: New York, New York
      October 16, 2014

                      WEIL, GOTSHAL & MANGES LLP

                      Richard W. Slack
                      Robert J. Lemons
                      767 Fifth Avenue
                      New York, NY 10153
                      (212) 310-8000

                      *Attorneys for Lehman Brothers Holdings*
                      *Inc. and Lehman Brothers Special*
                      *Financing Inc.*

2

Form 255 – Subpoena in an Adversary Proceeding (12/06)

# UNITED STATES BANKRUPTCY COURT

SOUTHERN    District    NEW YORK

In re   Lehman Brothers Holdings Inc. et al.
                    Debtor

Lehman Brothers Holdings Inc. et al.
                    Plaintiff

                    V.

Giants Stadium LLC          ,
                    Defendant

**SUBPOENA IN
AN ADVERSARY PROCEEDING**

Case No. *  08-13555-scc

Chapter    11

To:  New York Football Giants, Inc.
      1925 Gaints Dr, East Rutherford, NJ 07073

Adv. Proc. No. *  13-01554-scc

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A

| PLACE     Weil, Gotshal & Manges LLP<br>767 Fifth Avenue, New York, NY 10154 | DATE AND TIME<br>November 14, 2014, 5:00pm |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>10/16/14 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
  Richard W. Slack, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

Form 255 – Subpoena in an Adversary Proceeding (12/06)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                DATE                         SIGNATURE OF SERVER

                                           ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena is issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena

or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED BY NEW YORK GIANTS

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    "Bank of America" shall mean Bank of America, N.A. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

2.    "Barclays" shall mean Barclays PLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

3.    "Baupost" shall mean The Baupost Group, L.L.C. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates (including Goal Line Partners, L.L.C.), predecessors, successors, or representatives.

4.    "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

5.    "Calculation Statements" shall mean the letters, and any attachments or schedules thereto, from Giants Stadium to LBSF, dated October 2, 2008.

6.    "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

7.      "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

8.      "Covered Indenture" shall have the meaning ascribed to it in Section 12 of the Master Agreement, as amended by Part 4(b) of the schedule to the Master Agreement.

9.      "Credit Agreement" means the credit agreement dated as of August 16, 2007 between Giants Stadium and the NFL.

10.      "Debtor" or "Debtors" shall mean LBHI and/or LBSF.

11.      "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings including, but not limited to, phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

12.      "Early Termination Date" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

13.      "Financing Transaction" shall mean any transaction(s) entered into by Giants Stadium to replace, refinance, or restructure the Bonds, and/or finance or refinance an open-air NFL stadium, whether or not the terms of such transaction(s) are identical to the transaction(s) relating to the Bonds, including any long term debt private placement.

2

14.    "FGIC" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

15.    "FSA" shall mean Financial Security Assurance, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

16.    "Giants Stadium" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents (such as Wilmington Trust), advisors (such as Goldman Sachs), subsidiaries, affiliates, predecessors, successors, or representatives.

17.    "Goal Line" shall mean Goal Line Partners, L.L.C. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

18.    "Goldman Sachs" shall mean Goldman, Sachs & Co. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

19.    "Insurance and Indemnity Agreement" shall have the meaning ascribed to it in Part 3(l) of the schedule to the Master Agreement.

20.    "LBHI" shall mean Lehman Brothers Holdings, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

WEIL:\44534020\8\58399.0011

21.    "LBSF" shall mean Lehman Brothers Special Financing, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

22.    "LBI" shall mean Lehman Brothers, Inc.

23.    "Lehman Bankruptcy" shall mean the cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (SCC).

24.    "Master Agreement" shall mean any of the following: (i) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FGIC; and/or (ii) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FSA.

25.    "MetLife Stadium" means the home stadium of the New York Giants.

26.    "New York Giants," "You," and "Your" shall mean New York Football Giants, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current owners, officers, agents, predecessors, successors, or representatives.

27.    "NFL" shall mean the National Football League and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, predecessors, successors, or representatives.

28.    "NFL Side Letter Agreement" means the letter agreement dated as of August 16, 2007 between the NFL, Giants Stadium, and the other signatories thereto.

WEIL:\44534020\8\58399.0011

29.     "Non-relocation Agreement" means the Team Non-Relocation Agreement dated as of August 16, 2007, between the New York Giants, The Bank of New York, FGIC, and FSA.

30.     "Offering Circular" means the offering circular dated August 13, 2007 and issued in connection with the Bonds.

31.     "Proofs of Claim" means any proof of claim filed by Giants Stadium in the Lehman Bankruptcy.

32.     "Reference Market-makers" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

33.     "Replacement Transaction" shall mean any transaction entered into by Giants Stadium to replace, or establish a hedge in lieu of, the Transactions, whether or not the terms of such Replacement Transaction are identical to the terms of the Transactions.

34.     "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

35.     "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

36.     "Unpaid Amounts" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

37.     "Wilmington Trust" shall mean Wilmington Trust Corporation and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

WEIL:\44534020\8\58399.0011

38.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

39.    The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

40.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

41.    If any Document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

42.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the

WEIL:\44534020\8\58399.0011

Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

43.     If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

44.     All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request. The method for production of each category is to be identified at the time of production. Documents are to be produced in full and unexpurgated form.

45.     Each page of each Document should be numbered consecutively. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

46.     Documents attached to each other (physically or via electronic mail) should not be separated.

47.     In producing the requested Documents, even though the requests are directed to "You," furnish all Documents that are available to You, including Documents in the possession of any of Your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such Documents in Your possession.

48.     The requests that follow are to be regarded as continuing, and You are requested to provide by the way of supplementary compliance herewith, such additional

WEIL:\44534020\8\58399.0011

Documents as You may hereafter obtain, which will augment the Documents now produced in response to the requests below. Such additional Documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after Your receipt thereof.

49.   At a future date, Lehman Brothers Holdings Inc. ("LBHI") and/or Lehman Brothers Special Financing ("LBSF," and together with LBHI, "Lehman") may request the production of additional Documents not herein requested, including information revealed as a result of information produced pursuant to this request or information revealed by other parties during the 2004 process or discovery in a proceeding.

50.   At a future date, Lehman may request to depose individuals based on information revealed during this request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including August 1, 2007 through October 23, 2013.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents concerning the Transactions.

REQUEST NO. 2

All documents concerning any valuation of the Transactions, both prior to, at the time of, and following their purported termination on September 18, 2008, including, but not limited to, the valuation(s) contained in the Calculation Statements or the Proofs of Claim.

REQUEST NO. 3

All documents containing or reflecting (i) a description, in whole or in part, of the methodology used by, or (ii) a description of the inputs or assumptions employed by, Giants

8

Stadium to determine the value of the Transactions, including, but not limited to, the valuation(s) contained in the Calculation Statements or the Proofs of Claim.

## REQUEST NO. 4

All documents reflecting or constituting communications with Reference Market-makers, or any other persons, with respect to the value of the Transactions, and all responses and other communications from Reference Market-makers and any other persons.

## REQUEST NO. 5

All documents concerning any Unpaid Amounts due with respect to the Transactions.

## REQUEST NO. 6

All documents concerning any Replacement Transaction, including, but not limited to, documents reflecting (i) any consideration paid or received in connection with a Replacement Transaction; (ii) the names of any entity which effectuated a replacement; (iii) when any such transaction was effected; and (iv) any confirmations, master agreements, and all other relevant documentation.

## REQUEST NO. 7

All documents concerning any Financing Transaction, including, but not limited to, documents reflecting (i) any consideration paid or received in connection with a Financing Transaction; (ii) the names of any entity which arranged and/or underwrote a Financing Transaction; (iii) when any such transaction was effected; and (iv) any offering documents, closing documents, indentures, and all other relevant documentation.

## REQUEST NO. 8

WEIL:\44534020\8\58399.0011

All documents concerning any communications between and among, or on behalf of, the New York Giants and any third party, including but not limited to Goldman Sachs, Wilmington Trust, the NFL, Giants Stadium, FSA, FGIC, and any rating agency concerning (i) any quotations from Reference Market-makers, including but not limited to the Reference Market-makers identified in the Calculation Statements, or other persons; (ii) any Replacement Transaction; (iii) any Financing Transaction; (iv) the Transactions; (v) the Calculation Statements; (vi) the terms of the Confirmations; and/or (vii) the Proofs of Claim and any sale, assignment, or participation thereof.

REQUEST NO. 9

All documents concerning the Confirmations, including the meaning and/or interpretation thereof.

REQUEST NO. 10

All documents concerning the negotiation and execution of the Master Agreement and the Confirmations, including all drafts and term sheets.

REQUEST NO. 11

All communications between the New York Giants and Giants Stadium concerning (i) the Transactions; (ii) the Bonds; (iii) the Master Agreement; and/or (iv) the broker-dealer function in respect of the Bonds.

REQUEST NO. 12

All documents concerning any communications between the New York Giants and LBI concerning (i) the Transactions; (ii) the Bonds; (iii) the Master Agreement; or (iv) the broker-dealer function in respect of the Bonds.

REQUEST NO. 13

WEIL:\44534020\8\58399.0011

All documents concerning any communications between and among, or on behalf of, the New York Giants, and any third party, including but not limited to Giants Stadium, Goldman Sachs, Wilmington Trust, the NFL, FSA, FGIC, and any rating agency concerning the broker-dealer function performed by LBI in connection with the Bonds, including but not limited to any termination, replacement, or resignation of LBI in its capacity as broker-dealer.

REQUEST NO. 14

All documents concerning any auctions held in connection with the Bonds, including but not limited to documents concerning successes and failures, auction rate settings, all-held rates, tender, interest rate conversion, redemption, the tax consequences of redemption, and/or alternative financing, if any.

REQUEST NO. 15

All of the New York Giants's financial statements, both audited and non-audited (the "Financial Statements") that cover any period from August 1, 2007 through December 31, 2009.

REQUEST NO. 16

Any New York Giants's financial disclosures provided to third parties including but not limited to (i) its current and prospective investors, (ii) Goldman Sachs, (iii) Wilmington Trust, (iv) FSA, (v) FGIC, (vi) the NFL, and (vii) any rating agency in connection with (a) the issuance of any debt by Giants Stadium or for MetLife Stadium, (b) the Transactions, (c) any Replacement Transaction or (d) any Financing Transaction.

REQUEST NO. 17

All documents that relate to the valuation of the Transactions, whether such documents were prepared by the New York Giants or a third party.

WEIL:\44534020\8\58399.0011

REQUEST NO. 18

All financial projections for Giants Stadium.

REQUEST NO. 19

All financial projections for the New York Giants that cover any period from August 1, 2007 through December 31, 2009.

REQUEST NO. 20

All documents concerning the Offering Circular, including drafts and amendments related to subsequent auction dates, if any, with respect to the Bonds and all executed ancillary documents.

REQUEST NO. 21

All documents concerning (i) any actual, contemplated, or requested consent of, or ratification by, FGIC and/or FSA to the designation of an Early Termination Date or (ii) the effect of the designation of an Early Termination Date on Giants Stadium's compliance with any Covered Indenture or Insurance and Indemnity Agreement.

REQUEST NO. 22

All documents concerning the Termination Letters and the Calculation Statements, including all drafts thereof.

REQUEST NO. 23

All documents concerning the Proofs of Claim, including, but not limited to (i) any back-up or other information underlying the claims, (ii) any sale, transfer, or participation thereof; (iii) documents containing or reflecting a description of the methodology used by Giants Stadium to calculate the amount claimed in the Proofs of Claim; (iv) documents including, but not limited to, spreadsheets, emails and Giants Stadium's books and records that concern the

WEIL:\44534020\8\58399.0011

amount claimed in the Proofs of Claim; (v) documents concerning the Supplemental Statement attached to the Proofs of Claim, including all drafts thereof; (vi) all communications with Goldman Sachs, the NFL, Baupost, Bank of America, or Goal Line concerning any Proofs of Claim; and (vii) all documents concerning Giants Stadium's decision to supplement or amend its proofs of claim previously filed in the Lehman Bankruptcy on or about September 22, 2009.

## REQUEST NO. 24

All documents concerning the proposed, prospective or actual sale or transfer of Giants Stadium's claims or any interest therein in the Lehman Bankruptcy.

## REQUEST NO. 25

All agreements, directly or indirectly, between Baupost and Giants Stadium and any documents concerning any such agreement.

## REQUEST NO. 26

Documents sufficient to show (i) the ownership interest of the New York Giants in Giants Stadium; (ii) the legal structure for any such ownership; and (iii) the value of that interest in 2007, 2008 and as of the date of this request.

## REQUEST NO. 27

Documents sufficient to identify any agent, representative or employee of the New York Giants that has performed or does now perform any work or services for Giants Stadium, and the amount of work in hours for each such employee of the work performed for Giants Stadium.

## REQUEST NO. 28

Any employment (or related) agreement for any employee of the New York Giants that has performed or does now perform any work or services for Giants Stadium.

WEIL:\44534020\8\58399.0011

REQUEST NO. 29

All documents reflecting, discussing, or concerning communications between, or on behalf of, the New York Giants and Bank of America regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the Proofs of Claim.

REQUEST NO. 30

All documents reflecting, discussing, or concerning communications between, or on behalf of, the New York Giants and Bank of America regarding the value of the Transactions both prior to, at the time of, and after, their purported termination on or about September 18, 2008.

REQUEST NO. 31

All documents reflecting, discussing, or concerning communications between, or on behalf of, the New York Giants and Goal Line or Baupost regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the Proofs of Claim.

REQUEST NO. 32

All documents reflecting, discussing, or concerning communications between, or on behalf of, the New York Giants and Goal Line or Baupost regarding the value of the Transactions both prior to, at the time of, and after, their purported termination on or about September 18, 2008.

REQUEST NO. 33

WEIL:\44534020\8\58399.0011

For the time period August 1, 2007 through and including the present, all communications between (i) the New York Giants and/or Giants Stadium and (ii) Robert Taylor and/or Barclays.

REQUEST NO. 34

All documents reflecting, discussing, or concerning communications between, or on behalf of, the New York Giants and/or Giants Stadium and Robert Taylor or any other current or former employee of LBHI, LBSF, LBI, or any related Lehman affiliate concerning the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the Proofs of Claim.

REQUEST NO. 35

All of Giants Stadium's financial statements, both audited and non-audited, that relate to the valuation of the Transactions, and all documents which relate to, support, or are the basis for such valuations, regardless of whether such documents were created by Giants Stadium or a third party.

REQUEST NO. 36

All agreements (including any amendments thereto) with Giants Stadium concerning (i) debt of the Giants Stadium; (ii) MetLife Stadium; (iii) financing or credit for Giants Stadium; or (iv) the Bonds.

REQUEST NO. 37

All agreements with the NFL concerning (i) debt of the Giants Stadium; (ii) MetLife Stadium; (iii) financing or credit for Giants Stadium; or (iv) the Bonds.

WEIL:\44534020\8\58399.0011

REQUEST NO. 38

All documents concerning the Bonds, including but not limited to any document valuing the Bonds and any actual or contemplated refinancing of the Bonds.

REQUEST NO. 39

All documents concerning the terms of the Non-relocation Agreement, including the meaning and/or interpretation thereof.

REQUEST NO. 40

All documents concerning the terms of the NFL Side Letter Agreement, including the meaning and/or interpretation thereof.

REQUEST NO. 41

All documents concerning the terms of the Credit Agreement, including the meaning and/or interpretation thereof.

WEIL:\44534020\8\58399.0011