WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
**In re**                                                    : **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                 : **08-13555 (SCC)**
:
                                           Debtors.          : **(Jointly Administered)**
:
------------------------------------------------------------x

**DECLARATION OF LAWRENCE BRANDMAN IN**
**SUPPORT OF MOTION PURSUANT TO RULE 9019 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a)**
**OF THE BANKRUPTCY CODE FOR APPROVAL OF SETTLEMENT AGREEMENT**
**AMONG PUTNAM STRUCTURED PRODUCT FUNDING 2003-1 LTD., PUTNAM**
**STRUCTURED PRODUCT FUNDING 2003-1, LLC, U.S. BANK NATIONAL**
**ASSOCIATION, AS SUCCESSOR TRUSTEE, LEHMAN BROTHERS SPECIAL**
**FINANCING INC., AND LEHMAN BROTHERS HOLDINGS INC.**

Pursuant to 28 U.S.C. § 1746, I, Lawrence Brandman, declare:

1.  I am over the age of 18 years and make these statements of my own personal knowledge based on my personal experience, my review of business records of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), Lehman Brothers Special Financing Inc. ("LBSF"), and/or certain of their affiliates (collectively, the "Chapter 11 Estates"), and/or my consultation with other employees of and advisors to the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Settlement Agreement Among Putnam Structured Product Funding 2003-1 Ltd., Putnam Structured Product Funding 2003-1 LLC, U.S. Bank National Association, as Successor Trustee, Lehman Brothers Special Financing Inc., and Lehman Brothers Holdings Inc.*, dated September 24, 2014 [ECF No. 46364] (the "Motion").[1]

3. I am Managing Director, Derivatives Legal, and Head of Bankruptcy Strategic Advisory with LBHI. One of my primary areas of responsibility is managing the Chapter 11 Estates' mediations relating to derivatives transactions. I also supervise the management of a portfolio of the Chapter 11 Estates' derivatives transactions, including with counterparties that are special purpose entities. In those roles I have independently reviewed, have become familiar with, and have personal knowledge regarding many derivatives transactions that the Chapter 11 Estates entered into before their bankruptcies, including the transactions that are the subject of the Motion. I have been the primary representative for the Chapter 11 Estates in connection with the matters set forth in the Motion, including for the ADR process and the negotiations that resulted in the entry into of the settlement agreement, dated as of September 24, 2014 (the "Settlement Agreement"), among LBSF, LBHI, Putnam Structured Product Funding 2003-1 Ltd., as Issuer (the "Putnam Issuer"), Putnam Structured Product Funding 2003-1 LLC, as Co-Issuer (the "Putnam Co-Issuer," and together with the Putnam Issuer, "Putnam"), and U.S. Bank National Association ("U.S. Bank" or the "Putnam Trustee"), solely in its capacity as successor trustee under the Indenture, by and between Putnam and

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

2

LaSalle Bank National Association, as original trustee and securities administrator, and the Putnam Preference Shareholders, dated as of October 8, 2003 (the "Putnam Indenture").

4. The Settlement Agreement provides for the resolution of all disputes among the parties thereto relating to: (a) the interest of Putnam in certain notes issued by ALTA CDO SPC (the "Alta Issuer") and ALTA CDO LLC (the "Alta Co-Issuer," and together with the Alta Issuer, "Alta") for the account of the Series 2007-1 Segregated Portfolio, and (b) LBSF's claims against Putnam for amounts owed in connection with the early termination of certain credit derivative swap transactions (the "Swaps") entered into among ALTA, LBSF, and LBHI.

5. I am thus fully familiar with the facts underlying the Motion, which I approved prior to its filing. I adopt the representations contained in the Motion, as if set forth in full and at length in this Declaration.

### The Credit Default Swap Agreement and Indenture

6. It is my understanding that LBSF, LBHI, and the Alta Issuer, a special purpose vehicle and collateralized debt obligation or "CDO", entered into a 1992 form (Multicurrency-Cross Border) ISDA Master Agreement dated as of April 3, 2007 (the "Master Agreement," and along with the annexed "Schedule," the relevant swap "Confirmations," and related documents, the "Credit Default Swap Agreement"). Under the Swaps issued pursuant to the Credit Default Swap Agreement, the Alta Issuer sold "credit protection" to LBSF on a portfolio of diverse entities (collectively, the "Reference Entities") in exchange for periodic premium payments by LBSF to the Alta Issuer.

7. It is also my understanding that on April 3, 2007, the Alta Issuer and the Alta Co-Issuer, along with their trustee, U.S. Bank National Association (in this capacity, the "Alta Trustee"), entered into a series indenture (the "Alta Series Indenture") subject to certain

3

standard terms (the "Alta Standard Terms" and, with the Alta Series Indenture, the "Alta Indenture"). The Alta Indenture, among other things, governs Alta's payment obligations on certain notes (the "Alta Notes") it issued and sold to investors (the "Alta Noteholders"), such as Putnam.[2]

8. It is my further understanding that Alta used the money it received through the sale of the Alta Notes to acquire specific assets (the "Permitted Investments") that served as collateral for, first, Alta's obligations to LBSF under the Credit Default Swap Agreement and, thereafter, for Alta's obligations under the Alta Notes. LBSF was a "secured party" under and "an express third-party beneficiary" of the Alta Indenture.

9. I understand that the Alta Indenture provides that the Alta Noteholders will receive interest payments on the Alta Notes from, *inter alia*, LBSF's premium payments under the Swaps, and that they will be repaid principal from the available proceeds of the Permitted Investments but only *after* payment of any amounts due to LBSF as a result of credit events with respect to the Reference Entities. Indeed, the principal amount of the Alta Notes automatically is reduced by any such amounts paid to LBSF. Therefore, if Alta did not need to pay out on the Swaps (either in the ordinary course or at termination) because the Reference Entities remained healthy, then the Putnam Issuer, as an Alta Noteholder, would benefit. *But*, if credit events occurred with respect to the Reference Entities, then the Alta Noteholders, such as the Putnam Issuer, were at risk of losing their investment in the Alta Notes, given LBSF's senior payment priority position under the Alta Indenture.

---

[2] I understand that, pursuant to the Putnam Indenture, the Putnam Issuer and the Putnam Co-Issuer issued certain notes and a trust was created for administering such notes, which subsequently acquired $5,000,000 in principal amount of Alta's Series B Notes due 2017 (the "Putnam Owned Notes").

4

10. Specifically, I understand that under the "Priority of Payments" — or payment "waterfall"— in section 5(iii) of the Alta Indenture, if LBSF has a claim against the Alta Issuer under the Credit Default Swap Agreement, LBSF's right to payment has priority over any claims of Alta Noteholders. If Alta owed LBSF money under the Credit Default Swap Agreement and Alta lacked sufficient funds to meet its remaining obligations after paying LBSF, therefore, the Alta Noteholders risked a partial or complete loss on their investment. I further understand that this payment arrangement was subject to modification under the terms of the Alta Indenture. Upon a default by LBSF, such as a bankruptcy filing by LBSF or LBHI, the Alta Indenture provides that LBSF must transfer its right to senior payment priority to the Alta Noteholders (the so-called the "<u>Priority Flip</u>"). In that circumstance, the Priority Flip changes LBSF's position to junior payment priority for any early termination payment due under the Swaps.

### Alta's Early Termination of the Swaps and Distribution of Funds to Putnam

11. It is my understanding that LBHI's chapter 11 filing constituted an "Event of Default" under the Credit Default Swap Agreement. The Alta Trustee designated September 18, 2008, as the "Early Termination Date" "in respect of all outstanding Transactions" under the Credit Default Swap Agreement. LBSF asserts that it was owed a very significant early termination payment by Alta as a result of that early termination, given LBSF's "in the money" position in the Swaps at the time. Nevertheless, purportedly in reliance on the Priority Flip, on October 21, 2008, well after LBSF's chapter 11 filing, Alta made distributions of interest and principal totaling $25,062,295.00 to the Alta Noteholders, including $5,000,277.98 to the Putnam Issuer or the Putnam Trustee, and none to LBSF. If the Priority Flip had not been effected, Putnam would not have been entitled any payment, in contrast to the millions actually

5

received. The Alta Trustee, the Putnam Trustee, and Putnam dispute LBSF's and LBHI's contention that LBSF can recover the funds that the Alta Trustee paid to the Alta Noteholders, including Putnam, instead of to LBSF (the "Payment Dispute").

12. On September 14, 2010, LBSF commenced Adversary Proceeding No. 10-03547, captioned *Lehman Bros. Special Fin. Inc. v. Bank of Am. National Ass'n, et al.* (*In re Lehman Bros. Holdings Inc., et al.*), Case No. 08-13555 (SCC) (the "Adversary Proceeding"), challenging, among other things, (a) the enforceability of certain provisions in the contracts governing Alta and the Alta Notes purporting to modify LBSF's right to receive payment upon early termination of the Swaps solely as a result of LBSF's or LBHI's bankruptcy filings, and (b) Alta's distribution of funds to Putnam and others in respect of the Alta Notes. LBSF named Alta as an "SPV Issuer Defendant" and the Putnam Issuer as a "Noteholder Defendant" in the Adversary Proceeding.

13. On October 20, 2010, the Court entered the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [ECF No. 12199], thereby staying, among other things, certain litigation, including the Adversary Proceeding, to allow parties to the Adversary Proceeding and other similar actions time to explore the possibility of resolving their disputes without the need for litigation (the "Stay"). I have also been informed that the Stay has been subsequently extended by orders of the Court. Most recently, on July 14, 2014, the Court entered a scheduling order governing the Distributed Actions, including the Adversary Proceeding. *See* Adv. Proc. No. 10-03547 (SCC) [ECF No. 794] (the "Scheduling Order"). The Scheduling Order sets forth a schedule for litigation of various issues in the Adversary Proceeding. Accordingly, as a result

6

of the Stay and the Scheduling Order, Putnam, Alta, the Putnam Trustee, and the Alta Trustee have not answered or otherwise moved for any relief in the Adversary Proceeding.

14.    In May 2013, while the Adversary Proceeding was stayed, LBSF initiated an ADR proceeding relating to this dispute pursuant to the SPV ADR Procedures Order by serving SPV Derivatives ADR Notice No. 848, dated May 13, 2013 (the "SPV ADR Notice"), on the Putnam Issuer.  On July 29, 2013, the Putnam Trustee responded to the SPV ADR Notice on behalf of the Putnam Issuer.  The Putnam Trustee subsequently has participated in the Court-mandated ADR process.  On December 5, 2013, the Plan Administrator on behalf of LBSF, the Putnam Trustee, and The Putnam Advisory Company, LLC, the collateral manager for Putnam (the "Putnam Collateral Manager"), engaged in mediation pursuant to the SPV ADR Procedures Order, ultimately resulting in entry into the Settlement Agreement.

15.    I understand that throughout the course of its settlement negotiations with LBSF and its participation in the Adversary Proceeding, the Putnam Trustee has made numerous attempts to contact the Putnam Noteholders and the Preference Shareholders of Putnam for direction regarding the Payment Dispute.

### The Settlement Agreement[3]

16.    The Settlement Agreement compromises certain of the legal disputes between the parties.  Entry of an order by this Court, in the form annexed to the Motion, approving the Settlement Agreement pursuant to Bankruptcy Rule 9019, is a condition precedent to the effectiveness of the Settlement Agreement.  Pursuant to the Settlement Agreement, after the payment of the fees and expenses of the Putnam Trustee, the Collateral Manager, the Putnam

---

[3] In keeping with the confidentiality provisions of the Parties' partial settlement, and due to LBHI's and LBSF's desire to keep the economic terms of the settlement confidential, the Settlement Agreement was not included as an exhibit to the Motion.  The descriptions of documents set forth herein are being provided as summaries only.  In the case of an inconsistency between the summary herein and the documents, the terms of the documents shall control.

Issuer and the Putnam Co-Issuer, the Putnam Trustee shall pay all remaining amounts to LBSF, by wire transfer, no later than ten (10) business days after one or more Payment Dates until the Settlement Amount is paid in full.  Until the Settlement Amount is paid in full, the Putnam Trustee shall not pay any amount to any person or entity other than (i) the Settlement Amount, (ii) the Trustee's fees and expenses, (iii) the reasonable fees of the Collateral Manager, and (iv) the reasonable fees of the Issuer and the Co-Issuer.  Upon payment in full of the Settlement Amount, LBSF, LBHI, and the Plan Administrator shall promptly dismiss with prejudice any and all claims against the Putnam Issuer, the Putnam Co-Issuer, the Putnam Collateral Manager, and U.S. Bank, individually and/or as the Putnam Trustee, all prior trustees under the Putnam Indenture, and any and all former, current, or future Putnam Noteholders from any and all claims arising under, related to, or in connection with the Putnam Owned Notes and the Putnam Indenture, including, if applicable, any such claims made in the Adversary Proceeding.

17.     Additionally, it is my understanding that, upon payment in full of the Settlement Amount, LBSF, LBHI, and the Plan Administrator shall release U.S. Bank, individually and as Alta Trustee, the Alta Issuer, the Alta Co-Issuer, and any and all former, current or future Alta Noteholders, from any and all claims, arising from (i) any amounts distributed by, or on behalf of, the Alta Trustee to, or for the benefit of, the Putnam Issuer or the Putnam Trustee, on account of the Putnam Owned Notes or (ii) any amounts claimed under or in connection with the SPV ADR Notice, and shall covenant never to commence a proceeding regarding the same.

### The Settlement Agreement Is in LBSF's Best Interests and Should Be Approved

18.     The use of the Court's equitable authority to approve the Settlement Agreement is justified and appropriate.  First, the Settlement Agreement will result in a

8

substantial payment to LBSF's estate that the Plan Administrator has determined, in the exercise of its business judgment, will adequately compensate LBSF's estate for the early termination value of the Swaps in light of the risks and costs of further litigation. Second, LBSF is entitled to the Settlement Amount under the Swaps given its capacity as swap counterparty to Alta and, as a result, payment of the Settlement Amount to LBSF is appropriate. Third, entry into the Settlement Agreement will avoid future disputes and litigation concerning the Putnam Owned Notes. Fourth, any interested parties that may object to the terms of the Settlement Agreement will have the opportunity to lodge an objection with and be heard by this Court.

19. For the reasons set forth above, I and my colleagues involved in the management of the Chapter 11 Estates, as well as counsel to the Chapter 11 Estates, have concluded, in our considered business judgment, that the compromises set forth in the Settlement Agreement are "fair and equitable," are well within the "range of reasonableness," and are in the best interests of LBSF's estate and its creditors. We believe the Settlement Agreement was entered into in good faith and negotiated at arm's length. Therefore, the Motion, which seeks approval of the Settlement Agreement, should be granted.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 29th day of October 2014.

Lawrence Brandman