WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:    (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek

JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone:    (303) 573-1600
Facsimile:    (303) 573-8133
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Special Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>                Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>                Plaintiff,<br>       - against -<br><br>LHM FINANCIAL CORPORATION,<br><br>                Defendant. | Adversary Proceeding<br><br>No. _____ |

**ADVERSARY COMPLAINT**

        Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan"), for its Complaint against Defendant LHM Financial Corporation ("LHM"), alleges upon knowledge as to itself and its own conduct, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1. In this action, LBHI seeks to enforce its right to contractual indemnification for losses LBHI incurred as a result of LHM's sale of three defective mortgage loans in breach of LHM's representations, warranties and covenants.

2. LBHI sold the loans to the Federal National Home Mortgage Association ("Fannie Mae") under agreements that included representations and warranties about the mortgage loans that were co-extensive with those made by LHM. After Fannie Mae discovered that the mortgage loans breached certain of those representations and warranties, Fannie Mae made a claim upon LBHI for losses suffered on the mortgage loans. LBHI settled Fannie Mae's claim, which settlement this Court approved on January 22, 2014, triggering LBHI's right to indemnification under the agreements with LHM.

3. LHM, however, contends that LBHI's indemnification rights accrued before LBHI's liability was fixed and before LBHI paid Fannie Mae, and, therefore, LBHI's indemnification claim is untimely.

4. By this action, LBHI seeks to recover money damages from LHM for the indemnification claim that accrued when LBHI settled Fannie Mae's allowed claims on or about January 22, 2014.

## PARTIES

5. On September 15, 2008, Plaintiff LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. LBHI is a Delaware corporation with its principal place of business in New York, New York.

6. Defendant LHM is an Arizona corporation with its principal place of business in Scottsdale, Arizona.

## JURISDICTION AND VENUE

7. This adversary proceeding is commenced pursuant to Rule 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8. This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court dated December 6, 2011 (the "Confirmation Order"), and became effective on March 6, 2012. The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

9. Venue is proper under 28 U.S.C. §§ 157(a), 1408 and 1409.

10. This Court has personal jurisdiction over LHM.

## FACTUAL BACKGROUND

11. At all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"), then sold the loans to third parties, including Fannie Mae.

12. LHM engages, and at all relevant times engaged, in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

3

13. LHM entered into a written agreement titled "Loan Purchase Agreement (Servicing Released Transactions)" with LBB on September 8, 2004 (the "LPA"). A true and correct copy of the LPA is attached hereto as Exhibit A.

14. The LPA specifically incorporates the terms and conditions of the Seller's Guide of Lehman's loan administrator, Aurora Loan Services LLC (individually, the "Seller's Guide," and together with the LPA, the "Agreement") which sets forth additional duties and obligations of LHM.

15. The Seller's Guide in its entirety is valid and binding upon LHM. Attached hereto as Exhibit B are the specific Sections most directly pertinent to the claims in this Complaint.

16. The Agreement sets forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties and individual mortgage loans purchased or sold and remedies for breach.

17. LHM sold Loan ****1127 to LBB pursuant to the terms of the Agreement on March 28, 2006.

18. LHM sold Loan ****0060 to LBB pursuant to the terms of the Agreement on September 5, 2006.

19. LHM sold Loan ****2844 to LBB pursuant to the terms of the Agreement on February 15, 2006.

20. The parties agreed that LHM's obligations would extend to any subsequent purchasers of the loans, such as, in this case, LBHI. The Seller's Guide defines the "Purchaser"

as LBB and, among others, its "successors and/or assigns." *See* Seller's Guide § 8. In conjunction with the sale by LBB to LBHI of Loans ****1127, ****0060 and ****2844 (the "Breaching Loans"), LBB assigned to LBHI all of its rights and remedies under the Agreement pertaining to the Breaching Loans.

21. Further, the Seller's Guide provides that LBHI, as a subsequent holder of any Mortgage Loan, "shall be a third party beneficiary" of the Agreement. *See* Seller's Guide § 711. Accordingly, LBHI as a "subsequent holder" (and third-party beneficiary) of the Breaching Loans is entitled to the all of the benefits of the Agreement, including the right to indemnification.

A. **Misrepresentations/Underwriting Defects**

22. With respect to each of the loans sold to Lehman under the Agreement, LHM made a number of representations, warranties and covenants concerning the quality of the mortgage loans.

23. Specifically, LHM represented, warranted and covenanted in Section 703(1) of the Seller's Guide that:

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

24. LHM represented, warranted and covenanted in Section 703(8) of the Seller's Guide that:

> Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan . . . .

5

25. LHM represented, warranted and covenanted in Section 703(12) of the Seller's Guide that:

> The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

26. LHM represented, warranted and covenanted in Section 703(21) of the Seller's Guide that:

> The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Product Profile applicable to such Mortgage Loan . . . .

27. In certain instances, LHM was also the underwriter of loans as permitted under the Seller's Guide. With respect to those loans, LHM additionally represented, warranted and covenanted in Section 717(1) of the Seller's Guide that:

> All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

28. Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and

6

>   warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

29. Finally, LHM represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Agreement.

30. Fannie Mae discovered breaches of representations, warranties and/or covenants in the Breaching Loans, causing LBHI to compensate Fannie Mae pursuant to separate agreements between LBHI and Fannie Mae that had provisions that were co-extensive with the representations, warranties and covenants contained in the Agreement.

31. LBHI confirmed that LHM breached its representations, warranties and/or covenants under the Agreement, causing LBHI's loss. Specifically:

### Breaches Concerning Loan ****1127

32. As to Loan ****1127, the borrower and/or loan documents, including the borrower's loan application, failed to disclose or otherwise include borrower's other mortgage debt obligations, including at least ten mortgage loan obligations for other properties.

33. The misrepresentation on the loan application as to the omission of other mortgage loan obligations was a breach of LHM's representations, warranties and covenants in Sections 703(1) and 703(12) of the Seller's Guide.

34. Loan ****1127 was improperly underwritten by LHM for the following reasons:

    a) LHM failed to verify the required down payment in the borrower's account, as required by the loan program profile. A later verification showed the borrower had received cash back at closing of $1387.54 and that credit for $1036.21 in

7

earnest money was given. This amount was not verified and was required to be documented as received due to the borrower receiving cash back at closing.

b) LHM delivered the loan with a Combined Loan to Value Ratio ("CLTV") in excess of 100 percent, which violated applicable loan program requirements.

c) LHM failed to complete a Verbal Verification of Employment ("VVOE") within five days of closing the loan as required by the loan program profile.

35. LHM's failure to comply with the loan program profile by failing to verify the required down payment in the borrower's account, delivering the loan with a CLTV in excess of 100 percent, failing to conduct a VVOE within five days of closing, and allowing excessive seller contributions was a breach of LHM's representations, warranties and covenants in Sections 703(8), 703(21) and 717(1) of the Seller's Guide.

**Breaches Concerning Loan \*\*\*\*0060**

36. As to Loan \*\*\*\*0060, the borrower and/or loan documents, including the borrower's loan application, failed to disclose or otherwise include borrower's other mortgage debt obligations, including one additional mortgage loan obligation for another property.

37. The misrepresentation on the loan application as to the omission of other mortgage loan obligations was a breach of LHM's representations, warranties and covenants in Sections 703(1) and 703(12) of the Seller's Guide.

**Breaches Concerning Loan \*\*\*\*2844**

38. As to Loan \*\*\*\*2844, the borrower and/or loan documents, including the borrower's loan application, failed to disclose or otherwise include borrower's other mortgage debt obligations, including two mortgage loan obligations for two other properties.

39. Further, the borrower and/or the loan documents, including the borrower's loan application, represented that borrower was the owner of his own business for four years. A re-verification of employment was conducted, revealing that the business had only been in existence for one year at the time of closing.

40. The misrepresentation on the loan documents, including the loan application, as to the absence of other mortgage loan obligations and duration of employment was a breach of LHM's representations, warranties and covenants in Sections 703(1) and (12) of the Seller's Guide.

41. Loan ****2844 was improperly underwritten by LHM because LHM failed to verify an earnest money credit to the borrower in excess of two percent of the sales price, as required by the loan program profile.

42. LHM's failure to comply with the loan program profile by failing to verify the earnest money credit was a breach of LHM's representations, warranties and covenants in Sections 703(8), 703(21) and 717(1) of the Seller's Guide.

**B.    LHM's Failure to Indemnify LBHI**

43. After Fannie Mae discovered the defects in the Breaching Loans, Fannie Mae made a claim upon LBHI for its losses. Fannie Mae filed proofs of claim in LBHI's bankruptcy proceeding to recover for losses on breaching mortgage loans sold to it by LBHI and received an allowed general unsecured claim and distributions under the Plan in settlement. LBHI settled Fannie Mae's claim, which settlement this Court approved on January 22, 2014, triggering LBHI's right to indemnification under the agreements with LHM.

44. LHM agreed to indemnify LBB (and its assignees and third-party beneficiaries, such as LBHI) from claims, losses and expenses it might sustain as a result of the Breaching

Loans. Section 711 of the Seller's Guide, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

45. LBHI notified LHM of LBHI's rights to indemnification with respect to each of the Breaching Loans and demanded that LHM indemnify LBHI in an amount equal to the allowed claim in its bankruptcy in connection with the Breaching Loans in a letter dated August 18, 2014 (the "August 18 Letter"). A true and correct copy of the August 18 Letter, properly redacted pursuant to Fed. R. Civ. P. 5.2, is attached hereto as Exhibit C.

46. There may be additional breaches that LBHI has not yet discovered that also pertain to the respective Breaching Loans.

47. LHM has refused or otherwise failed to comply with its obligations under the Agreement, including its obligation to indemnify LBHI. Specifically, LHM responded to the August 18 Letter and refused to indemnify LBHI, contending that LBHI's claim is barred in its entirety by the applicable statute of limitations. LHM conflates claim accrual for repurchase claims (which arise under Section 710 of the Seller's Guide), with claim accrual for indemnification claims (which arise under Section 711 of the Seller's Guide). Contrary to statements made by LHM, indemnification claims do not accrue at the date of the sale of the loan to Lehman, but rather on the date that liability to a third party becomes settled.

48. LHM's failure and refusal to indemnify LBHI for LBHI's liability to Fannie Mae constitutes a breach of LHM's contractual indemnification obligations.

49. Pursuant to Section 8 of the LPA and Section 713 of the Seller's Guide, the laws of the State of New York govern this contract action.

50. All conditions precedent to bringing this action have been met, occurred or have been waived.

### FIRST CLAIM FOR RELIEF

### (Contractual Indemnification)

51. LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

52. The Agreement is a valid and enforceable contract that is binding upon LHM.

53. LBHI has substantially performed all of its obligations under the Agreement.

54. LHM breached the Agreement by failing to indemnify LBHI for its losses as to the Breaching Loans.

55. LHM's breaches of the Agreement as to the Breaching Loans resulted in actual and consequential damages to LBHI in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs and all other fees and costs provided by the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant LHM as follows:

    a)    For all damages arising from or relating to LHM's breaches of contract, in an amount to be determined at trial;

    b)    For recoverable interest;

    c)    For the costs and expenses incurred by LBHI in enforcing LHM's obligations under the Agreement, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

    d)    Providing for such other relief as the Court deems just and proper.

Dated: New York, New York
October 31, 2014

/s/    William A. Maher
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

-and-

Michael A. Rollin
Maritza Dominguez Braswell
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133

*Special Counsel for Lehman Brothers Holdings Inc.*