# EXHIBIT 2

```
                                                                    1

 1                   UNITED STATES BANKRUPTCY COURT
 2                   SOUTHERN DISTRICT OF NEW YORK
 3
 4                                              )
                                                )
 5   In re:                                     ) Chapter 11
                                                )
 6   LEHMAN BROTHERS HOLDINGS INC., et          ) Case No.
                                                ) 08-13555 (JMP)
 7   al.                                        )
                                                ) (Jointly
 8                  Debtor                      ) Administered)
                                                )
 9
10         DEPOSITION OF MICHAEL KIM HERMAN, a 30(b)(6) witness
11                       December 16, 2013
12                       Seattle, Washington
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Elisa Dreier Reporting Corp.   (212) 557-5558
950 Third Avenue, New York, NY 10022

```
 1                  Michael Kim Herman - 12/16/13
 2       take some action immediately or whether we had to
 3       wait and see what was going on, what would-- what
 4       else would occur, and as I said, what choices we
 5       might have to make in the near future with regard
 6       to the different things that might happen.
 7   Q   What were the immediate negative ramifications
 8       that TSA might face?
 9   A   As I recall, the immediate ramifications were
10       loss of payments on the RFA.
11            I believe at this point we knew that the
12       corpus was-- we had collateral for the reserve
13       fund at this point, so we were worried about
14       future payments.
15            I think we were-- if I recall correctly, it
16       was the question of valuation of where we were,
17       if there was a termination, and then what would
18       happen in a-- that it might take-- if it went to
19       court, it might take us five to eight years to
20       get any kind of a settlement or something like
21       that.
22            I think those were the kinds of general
23       issues we discussed.
24   Q   During this initial conference call, did you
25       learn what the valuation of the reserve fund
```

```
 1                     Michael Kim Herman - 12/16/13
 2        agreement was?
 3    A   I don't remember if it was during this initial
 4        conference call or not.
 5            It may have been, but I know that the first
 6        valuation we did, that we had PFM do, was that
 7        the TSA would have owed Lehman $1.2 million.
 8    Q   Did that come as a surprise to you?
 9    A   Yes.
10    Q   Why?
11    A   Because Lehman was the one that defaulted, and it
12        seemed-- although I understand the agreement and
13        the potential consequences of the agreement, from
14        a layman's viewpoint, the idea that the burdened
15        party would owe money to the other side because
16        they failed to perform was a little bit
17        astounding.
18    Q   Do you recall-- whether it's on this call or a
19        subsequent call, do you recall any further
20        discussion about the fact that PFM's initial
21        calculation would have Washington TSA owing over
22        a million dollars to Lehman?
23    A   Well, yes, we had some conversations about that.
24            I think the determination was that there was
25        not a termination event yet.  There was not a
```

                                                                         324

1       STATE OF WASHINGTON  )     I, Terilynn Pritchard, RMR, CRR,
                             ) ss  CLR, a certified court reporter
2       County of Pierce     )     in the State of Washington, do
                                   hereby certify:
3

4
                That the foregoing deposition of MICHAEL KIM
5       HERMAN was taken before me and completed on
        December 16, 2013, and thereafter was transcribed under my
6       direction; that the deposition is a full, true and complete
        transcript of the testimony of said witness, including all
7       questions, answers, objections, motions and exceptions;

8               That the witness, before examination, was by me
        duly sworn to testify the truth, the whole truth, and
9       nothing but the truth, and that the witness waived the right
        of signature;
10
                That I am not a relative, employee, attorney or
11      counsel of any party to this action or relative or employee
        of any such attorney or counsel and that I am not
12      financially interested in the said action or the outcome
        thereof.
13

14

15
                IN WITNESS WHEREOF, I have hereunto set my
16      signature on the 20th day of December, 2013.

17

18

19

20

21

22                                 _____
                                   Terilynn Pritchard, CCR, RMR, CRR, CLR
23                                 Certified Court Reporter No. 2047.

24

25


             Elisa Dreier Reporting Corp.   (212) 557-5558
                950 Third Avenue, New York, NY 10022