# EXHIBIT 20



T 206.245.1700
1191 2nd Avenue, Suite 2100
Seattle, WA 98101-2945
pacificalawgroup.com

Paul J. Lawrence
paul.lawrence@pacificalawgroup.com

**VIA EMAIL**

April 14, 2014

The Honorable Shelley C. Chapman
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

**Re:**  *In re Lehman Bros. Holdings, Inc., et al.*, Case No. 08-13555 (SCC)
**Request for Pre-Motion Conference Pursuant to Local Rule 7056-1**

Dear Judge Chapman:

Pursuant to Local Rule 7056-1, Washington State Tobacco Settlement Authority ("TSA") respectfully requests a pre-motion conference ahead of its filing a motion for summary judgment concerning debtor-in-possession Lehman Brothers Special Financing, Inc.'s ("LBSF") objection to TSA's proofs of claim 37355 and 37356 ("TSA Claim") in the above-referenced proceeding. The Claims Litigation Schedule applicable to the TSA Claim sets the last date to file dispositive motions at April 17, 2014 (Dkt. 37558).

**A. Background**

TSA and LBSF are parties to a Reserve Fund Agreement dated November 5, 2002 ("RFA"). The RFA was a vehicle through which TSA invested certain reserve funds ("the Scheduled Reserve Amount") that served as a source of backup payment for debt service owed on tobacco settlement bonds TSA issued in 2002. The reserve funds had to be available on each bond payment date, which occurred at six month intervals. Under the terms of the RFA, the TSA delivered the Scheduled Reserve Amount of $45,534,106.25 to LBSF, with which LBSF purchased and delivered Qualified Securities. The Qualified Securities had to have a maturity date on or prior to the next bond payment date, i.e. the securities had to have a maturity of six months or less. When the securities matured, TSA would deliver the Scheduled Reserve Amount to LBSF to purchase new securities. In exchange for the periodic purchase of securities, LBSF guaranteed a rate of return on the Scheduled Reserve Amount equal to a rate per annum of 4.484%. Lehman Brothers Holdings, Inc. ("LBHI") served as the credit support provider to LBSF and guaranteed the payment of all amounts payable to TSA under the RFA.

LBHI and LBSF filed their chapter 11 petitions on September 15 and October 3, 2008. LBSF's bankruptcy and failure to deliver Qualified Securities under the terms of the agreement constituted a default under the RFA. On March 25, 2009, the Court authorized LBSF's rejection of the RFA.

The Honorable Shelley C. Chapman
April 14, 2014
Page 2

TSA's Claim seeks to recover the value of the RFA. The parties disagree as to both the method of valuation and the amount. Both parties have engaged experts to opine on valuation, and have exchanged reports and conducted depositions. At this point, TSA contends its Claim is valued at approximately $38 million, while LBSF contends TSA owes it over $1 million.

### B. TSA Is Entitled to Summary Judgment on Its Claim.

#### 1. TSA Has the Right to Determine the Termination Amount.

The RFA sets out how damages (called the "Termination Amount") should be calculated in the event of a default by LBSF. Specifically, it unambiguously gives the "Burdened Party" the right to determine the Termination Amount reasonably and in good faith. It is undisputed TSA is the Burdened Party. But TSA expects LBSF will dispute TSA's right to determine the Termination Amount under the terms of the RFA. This issue—how the Termination Amount is to be calculated—is one of contract interpretation, for the Court's determination as a matter of law.

#### 2. TSA Has Determined the Termination Amount in Good Faith.

Because TSA has the right to determine the Termination Amount reasonably and in good faith under the RFA, the Court's only remaining task is to evaluate whether TSA has done so. TSA's good faith is presumed, and it is LBSF's burden to prove otherwise. LBSF cannot meet that burden here. Among other things, TSA pursued market quotations, as required by the RFA, from 14 sources, none of whom provided a quote. LBSF also failed to obtain quotes. TSA then chose well qualified experts to calculate the Termination Amount, both of whom—using different methods—honestly and accurately calculated TSA's loss at around the same figure. While LBSF promotes a different calculation method, with a much different end result, it can present no evidence that TSA's calculation is unreasonable or in bad faith. As a result, TSA is entitled to summary judgment on its Claim.

Sincerely,

PACIFICA LAW GROUP LLP

/s/ Paul J. Lawrence

Paul J. Lawrence

cc:   Jayant Tambe, Lauri Sawyer, Jennifer DelMedico