HEARING DATE AND TIME: January 15, 2014 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: December 1, 2014 at 4:00 p.m. (Eastern Time)

---

**THE FOUR HUNDRED EIGHTY-THIRD OMNIBUS OBJECTION TO CLAIMS SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.**

**PARTIES RECEIVING THIS NOTICE SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).**

---

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (SCC)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**NOTICE OF HEARING ON THE PLAN ADMINISTRATOR'S FOUR HUNDRED EIGHTY-THIRD OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

    **PLEASE TAKE NOTICE** that on October 31, 2014 Lehman Brothers Holdings

Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan

of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above-

referenced chapter 11 cases, filed the four hundred eighty-third omnibus objection to claims (the

"Four Hundred Eighty-Third Omnibus Objection to Claims"), and that a hearing (the "Hearing")

to consider the Four Hundred Eighty-Third Omnibus Objection to Claims will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **January 15, 2014 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

       **PLEASE TAKE FURTHER NOTICE** that any responses to the Four Hundred Eighty-Third Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ralph I. Miller, Esq. and Garrett A. Fail, Esq.) and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **December 1, 2014 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

       **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

WEIL:\95126477\3\58399.0011

served with respect to the Four Hundred Eighty-Third Omnibus Objection to Claims or any

claim set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Four Hundred Eighty-Third Omnibus Objection to Claims, which order may be entered with no

further notice or opportunity to be heard offered to any party.

Dated:  October 31, 2014
      New York, New York

                     /s/ Garrett A. Fail
                     Ralph I. Miller
                     Garrett A. Fail
                     WEIL, GOTSHAL & MANGES LLP
                     767 Fifth Avenue
                     New York, New York 10153
                     Telephone: (212) 310-8000
                     Facsimile: (212) 310-8007

                     Attorneys for Lehman Brothers Holdings Inc.
                     and Certain of Its Affiliates

WEIL:\95126477\3\58399.0011

HEARING DATE AND TIME: January 15, 2014 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: December 1, 2014 at 4:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
**In re**                                                         :    **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (SCC)**
                                                                  :
                                    **Debtors.**      :    **(Jointly Administered)**
--------------------------------------------------------------------x

**FOUR HUNDRED EIGHTY-THIRD**
**OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

---

**THIS FOUR HUNDRED EIGHTY-THIRD OMNIBUS OBJECTION TO CLAIMS
SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.**

**PARTIES RECEIVING THIS OBJECTION SHOULD REVIEW THE
OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED
IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO
TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

---

# TABLE OF CONTENTS

Page

RELIEF REQUESTED ................................................................................................1

JURISDICTION .........................................................................................................2

BACKGROUND ........................................................................................................2

I.    General Background .........................................................................................2

II.   The Claims ....................................................................................................3

OBJECTION .............................................................................................................4

I.    Stonehill released the Chapter 11 Estates from all liability asserted in the Claims............5

II.   The Chapter 11 Estates have no liability for the Contract Claims.......................................8

      A.    The Chapter 11 Estates are not jointly and severally liable for LBI's
            obligations..........................................................................................8

      B.    The Claims fail to state a prima facie claim for a Contract Claim ........................12

      C.    Stonehill released the Contract Claims under paragraph 30 of the PB
            Agreements ..........................................................................................13

      D.    Stonehill's additional bases for the Contract Claims are meritless and fail
            as a matter of law ..............................................................................14

III.  The Tort Claims Should Be Disallowed and Expunged ...................................................15

      A.    The Claims failed to state a prima facie claim for the Tort Claims......................16

            i.    Stonehill failed to allege that any "misrepresentation" was false..............18

            ii.   Stonehill failed to plead reasonable reliance .................................19

      B.    The Tort Claims are barred because they are duplicative of the Contract
            Claims ..............................................................................................21

            i.    The Chapter 11 Estates did not owe Stonehill any separate duty ..............23

            ii.   The alleged misrepresentations are neither collateral nor
                  extraneous to the PB Agreement................................................24

            iii.  The Tort Claims do not seek special damages..................................25

RESERVATION OF RIGHTS ........................................................................................25

NOTICE ................................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abundance Partners LP v. Quamtel, Inc.*,
  840 F. Supp. 2d 758 (S.D.N.Y. 2012) ............................................................8, 9, 10

*In re Adelphia Commc'ns Corp.*,
  No. 02-41729, 2007 WL 601452 (Bankr. S.D.N.Y. Feb. 20, 2007) ..........................................4

*Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*,
  580 F. Supp. 2d 285 (S.D.N.Y. 2008) ....................................................................13

*In re Allegheny Int'l. Inc.*,
  954 F.2d 167 (3d Cir. 1992) ..........................................................................4, 17

*In re Allegiance Telecom, Inc.*,
  356 B.R. 93 (Bankr. S.D.N.Y. 2006) .....................................................................12

*Asian Vegetable Research & Dev. Center v. Inst. Of Int'l Educ.*,
  944 F. Supp. 1169 (S.D.N.Y. 1996) ......................................................................14

*Bayerische Hypo-Und Vereinsbank AG v. Banca Nazionale Del Lavoro, S.p.A. (In re Enron Corp.)*,
  292 B.R. 752 (Bankr. S.D.N.Y. 2003) ...............................................................13, 14

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
  949 F. Supp. 2d 486 (S.D.N.Y. 2013) ...............................................................16, 23

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*,
  98 F.3d 13 (2d Cir. 1996) .........................................................................21, 22

*Chase Invs. Ltd. v. Kent*,
  681 N.Y.S.2d 319 (N.Y. App. Div. 1998) .........................................................19, 20, 21

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  603 N.Y.S.2d 526 (App. Div. 1993) ......................................................................22

*Crabtree v. Tristar Auto. Group, Inc.*,
  776 F. Supp. 155 (S.D.N.Y. 1991) .......................................................................24

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*,
  375 F.3d 168 (2d Cir. 2004) ..............................................................................9

*Federated Retail Holdings, Inc. v. Sanidown, Inc.*,
  No. 06 Civ. 6119 (LTS) (THK), 2010 WL 5298113 (S.D.N.Y. Dec. 23, 2010) ....................18

ii

*FMC Corp. v. Fleet Bank*,
    641 N.Y.S.2d 25 (App. Div. 1996) ...............................................................................20, 21

*G.L.M. Sec. & Sound v. LoJack Corp.*,
    No. 10-CV-04701 (JS) (ARL), 2011 WL 4594825 (E.D.N.Y. Sept. 30, 2011) .....................22

*Gladstone Bus. Loan, LLC v. Randa Corp.*,
    No. 09 Civ. 4225 (LMM), 2009 WL 2524608 (S.D.N.Y. Aug. 17, 2009) .............................19

*Gutterman v. RGA Accessories, Inc.*,
    602 N.Y.S.2d 116 (App. Div. 2008) ....................................................................................25

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    277 F.3d 8 (2d Cir. 2000)...............................................................................................16, 23

*Int'l Oil Field Supply Servs. Corp. v. Fadeyi*,
    825 N.Y.S.2d 730 (App. Div. 2006) ....................................................................................20

*Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
    655 F.3d 136 (2d Cir. 2011)..................................................................................................5

*John Paul Mitchell Sys. v. Quality King Distribs., Inc.*,
    99 Civ. 9905 (SHS), 2001 WL 910405 (S.D.N.Y. Aug. 13, 2001) .......................................24

*Kranze v. Cinecolor Corp.*,
    96 F. Supp. 728 (S.D.N.Y. 1951) ..........................................................................................8

*Lama Holding Co. v. Smith Barney, Inc.*,
    668 N.E.2d 1370 (N.Y. 1996).............................................................................................16

*In re Lomas Fin. Corp.*,
    212 B.R. 46 (Bankr. D. Del. 1997) ......................................................................................17

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) ............................................................12, 16, 17, 18, 19

*In re MF Global Inc.*,
    Case No. 11-2790 (MG), 2014 WL 4361552 (Bankr. S.D.N.Y. Sept. 4, 2014)...............5, 6, 7

*In re Nortel Networks*,
    469 B.R. 478 (Bankr. D. Del. 2012) ....................................................................................17

*NYKCool A.B. v. Pacific Fruit Inc.*,
    No. 10-3867, 2011 WL 3666579 (S.D.N.Y. Aug. 9, 2011)..................................................8, 9

*O'Connor v. Readers Digest Ass'n, Inc.*,
    No. 92 Civ. 7414 (CLB), 1993 WL 291372 (S.D.N.Y. Mar. 10, 1993) .................................19

WEIL:\95126477\3\58399.0011

*In re Oneida Ltd.*,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009) ...................................................................4

*OP Solutions, Inc. v. Crowell & Moring, LLP*,
    900 N.Y.S.2d 48 (App. Div. 2010) .....................................................................22

*Papa-June's Music, Inc. v. McLean*,
    921 F. Supp. 1154 (S.D.N.Y. 1996) ..............................................................22, 25

*In re Rockefeller Ctr. Props.*,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000) ..................................................................4

*Rozsa v. May Davis Grp., Inc.*,
    152 F. Supp 2d 526 (S.D.N.Y. 2001) ..................................................................15

*Schlaifer Nance & Co. v. Estate of Warhol*,
    119 F.3d 91 (2d Cir. 1997) ............................................................................16, 18

*Scott v. Keycorp*,
    669 N.Y.S.2d 76 (App. Div. 1998) .....................................................................22

*Tahoe DBS, LLC v. Loral Space & Commc'ns Ltd (In re Loral Space & Commc'ns Ltd.)*,
    412 B.R. 64 (S.D.N.Y. 2009) ...............................................................................8

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000) ...............................................................................12

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
    807 N.E.2d 876 (N.Y. 2004) ..............................................................................12

*Wolff v. Rare Medium, Inc.*,
    171 F. Supp. 2d 354 (S.D.N.Y. 2001) ................................................................12

*Wright v. Holm (In re Holm)*,
    931 F.2d 620 (9th Cir. 1991) ................................................................................4

**Statutes**

11 U.S.C. § 502 ..................................................................................................2, 4, 7

28 U.S.C. § 157 ........................................................................................................2

28 U.S.C. § 1334 ......................................................................................................2

Article 8 of the Uniform Commercial Code .....................................................14, 15

**Other Authorities**

Bankruptcy Rule 1015(b)...........................................................................................................2

Bankruptcy Rule 3001(f) ..........................................................................................................4

Bankruptcy Rule 3007(d)..........................................................................................................2

Bankruptcy Rule 7009 .............................................................................................................17

Bankruptcy Rule 9014(c)..........................................................................................................17

Rule 9(b) of the Federal Rules of Civil Procedure ..............................................................16, 17

WEIL:\95126477\3\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases (the

"Chapter 11 Estates"), respectfully represents as follows:

### RELIEF REQUESTED

1.　　The Chapter 11 Estates were expressly released from all liability, whether

based on theories of contract or tort, asserted in the proofs of claim filed by Stonehill Offshore

Partners Limited and Stonehill Institutional Partners, L.P. (together, "Stonehill").[1]  Nonetheless,

Stonehill seeks alleged damages arising from the failure of Lehman Brothers Inc. ("LBI") to

properly return Stonehill's cash and securities following the commencement of LBI's liquidation

proceeding.

2.　　Even absent the clear exculpation, the Chapter 11 Estates have no liability

for the Claims based on theories of contract.  The Chapter 11 Estates cannot be liable for

obligations that the Chapter 11 Estates never agreed to perform.  No contractual provision

obligated the Chapter 11 Estates to return cash and securities held by LBI in the event that LBI

failed to do so.  Stonehill therefore fails to state a *prima facie* claim for breach of contract.

3.　　Further, even absent the clear exculpation, the Chapter 11 Estates have no

liability for the Claims based on tort.  Stonehill failed to state a *prima facie* claim for

misrepresentation: it did not allege any statement was false when made and its alleged reliance is

---

[1] The proofs of claim are listed on Exhibit A attached hereto (each a "Claim" and together the "Claims"), and a
sample proof of claim is attached hereto as Exhibit B.

not reasonable as a matter of law. Any properly stated tort claim would nonetheless be barred as a matter of law.

4.     Accordingly, the Plan Administrator seeks an order disallowing and expunging the Claims pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's order approving procedures for the filing of objections to proofs of claim [ECF No. 6664].

## JURISDICTION

5.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### I.     General Background

6.     Commencing on September 15, 2008, and periodically thereafter, the Chapter 11 Estates commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.     On September 19, 2008 (the "SIPA Commencement Date"), the District Court for the Southern District of New York entered an order adjudicating that customers of LBI, a subsidiary of LBHI that is not a debtor in the Chapter 11 Cases, are in need of protection under the Securities Investor Protection Act of 1970, as amended ("SIPA"), and appointing James W. Giddens as trustee to oversee LBI's liquidation. LBI remains the subject of a liquidation proceeding (the "SIPA Proceeding") administered by the Court under SIPA: *Securities Investor Protection Corporation v. Lehman Brothers Inc.* (Case No. 08-01420) (SCC) (SIPA).

2

8.      On December 6, 2011, the Court entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed in the Chapter 11 Cases.

## II.  The Claims

9.      Stonehill admits that LBI – and not any of the Chapter 11 Estates – was Stonehill's "sole prime broker" and "had custody" of, "held" and then "returned" to Stonehill the securities and cash that are the subject of the Claims.  (Claims ¶¶ 6-8.)  Stonehill further admits that LBI was the "only Lehman entity directly involved [in] foreign currency hedges" placed under the prime brokerage agreements executed by Stonehill and LBI (together the "PB Agreements").[2]  (*Id.* ¶ 8 n. 2.)

10.      Nonetheless, Stonehill seeks to impose liability on the Chapter 11 Estates for the "failure of LBI to return [Stonehill's] cash and securities"  (Claims ¶ 6): $152,985,727 in aggregate for "damages, interest, costs, attorneys' fees, including, but not limited to the amount representing the diminution in value of *securities held by LBI under the PB Agreement from the date in which LBI's SIPA Proceeding was commenced* through the date that such securities were returned to [Stonehill]" (*id.* ¶¶ 9, 11 (emphasis added)); and $11,055,074.48 in aggregate for amounts owed by LBI under foreign currency hedges placed by Stonehill with LBI (*id.* ¶ 8).

11.      Stonehill alleges two theories for a single recovery of the alleged damages from LBI's failure to promptly return cash and securities following the SIPA Commencement Date: contract and tort.  (Claims ¶¶ 9-10.)  Specifically, Stonehill alleges the Chapter 11 Estates are liable because they were party to the PB Agreements and, therefore, "were responsible,

---

[2] The PB Agreements are attached to the Claims as Exhibit A thereto.  Each of the PB Agreements contains a New York choice of law provision.  PB Agreements ¶ 24.

separate and apart from LBI's obligation as a broker-dealer subject to SIPA regulation (and

notwithstanding any limitation under SIPA with respect to such diminution in value claim), for

the prompt return of the securities to [Stonehill] upon request when LBI commenced its SIPA

Proceeding" (the "Contract Claims").  (Claims ¶ 9).  Stonehill also alleges "the amounts owed

under the PB Agreement . . .  are also recoverable by [Stonehill] as a result of willful and

material misrepresentations made by and/or on behalf of the Lehman Entities" that "induced

[Stonehill] . . . to refrain from terminating [its] prime brokerage (and other counterparty)

relationships with the Lehman Entities" prior to the SIPA Commencement Date (the "Tort

Claims").  (Claims ¶ 12).

## OBJECTION

12.    Bankruptcy Code section 502(b)(1) provides, in relevant part, that a claim

may not be allowed to the extent that it "is unenforceable against the debtor and property of the

debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).

13.    To be entitled to *prima facie* validity under Bankruptcy Rule 3001(f), a

proof of claim must allege "facts sufficient to support a legal liability to the claimant." *In re

Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *Wright v. Holm (In re Holm)*, 931 F.2d

620, 623 (9th Cir. 1991).  As set forth below, the Claims are unenforceable against the Chapter

11 Estates.  Stonehill explicitly released the Chapter 11 Estates from all liability asserted in the

Claims and, therefore, cannot plead facts sufficient to support the Claims as a matter of law.

14.    An objection refuting – on either a factual or a legal basis – one of a

claim's essential allegations shifts to the claimant the burden of proof of demonstrating the

validity of its claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re

Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20,

2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  As set forth

4

below, even absent the clear exculpation, neither the Contract Claims nor the Tort Claims

withstand scrutiny.

> 15.    Accordingly, the Court should disallow and expunge the Claims in their

entirety.

## I.    Stonehill released the Chapter 11 Estates from all liability asserted in the Claims

> 16.    The PB Agreements contain two broad exculpatory provisions.  Paragraph

29 releases the Chapter 11 Estates from all liability arising from the occurrence of certain events,

including "any loss caused, directly or indirectly, by government restrictions . . . suspension of

trading . . . or other conditions beyond Lehman Brothers' control."  (PB Agreements ¶ 29.)

Paragraph 30 further releases the Chapter 11 Estates from all liability "in connection with the

execution, clearing, handling, purchasing, or selling of securities, commodities or other property,

or other action."  (*Id.* ¶ 30.)  Although the exculpation in paragraph 30 of the PB Agreement

contains an exception for "gross negligence or willful misconduct on Lehman Brothers' part,"

the exculpation in paragraph 29 does not.  (*Id.* ¶¶ 29, 30.)

> 17.    New York law is clear that a valid release "constitutes a complete bar to

an action on a claim which is the subject of the release."  *Interpharm, Inc. v. Wells Fargo Bank,*

*Nat Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (affirming dismissal of complaint under Fed. R. Civ.

P. 12(b)(6) based on a valid release) (quoting *Centro Empresarial S.A. v. Am. Movil, S.A.B. de*

*C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011)).

> 18.    In *In re MF Global Inc.*, the Court recently applied this hornbook rule to

facts nearly identical to the facts presented by Stonehill and recognized that a contractual

provision that exculpates a party from all liability arising from certain specifically identified

events operates as a bar to claims seeking to impose liability for such losses.  *In re MF Global*

*Inc.*, Case No. 11-2790 (MG), 2014 WL 4361552, at *5 (Bankr. S.D.N.Y. Sept. 4, 2014).

5

19.     In *MF Global*, as in the present case, customers of the failed broker-dealer asserted claims for contractual damages, separate and apart from their customer claims, for losses they incurred as a result of the inability to affect their accounts and exit certain trades between the commencement of the broker-dealer's SIPA proceeding and the date on which their accounts were liquidated or transferred by the SIPA trustee (the "Diminution Claims").  *Id.* at *4; Trustee's Reply ¶ 6, *In re MF Global Inc.*, SIPA Case No. 11-2790 (Bankr. S.D.N.Y. Aug. 14, 2014) [ECF No. 8175].  And, just as in the present case, the customers in *MF Global* also argued that they were entitled to Diminution Claims because "[the debtor] and its officers and directors engaged in gross negligence and willful misconduct leading up to the commencement of [the debtor's] SIPA proceeding—behavior for which [the debtor] expressly assumed liability in the Customer Agreement."  *Id.* at *4.

20.     The Court in *MF Global* held that the customers were barred from asserting Diminution Claims as a result of an exculpatory provision in their customer agreements that "clearly and unambiguously limit[ed] [the debtor's] liability to its customers and [did] not create a cause of action based on the [losses] like those sought" by the customers.  *Id.*  Like the exculpation in paragraph 29 of the PB Agreements, MF Global's customer agreement provided that the customers have "no claim against [the debtor] for any loss . . . caused directly or indirectly by, *inter alia*, (1) any Applicable Law, or order of any court, (2) suspension or termination of trading, and (3) any other causes beyond [the debtor's] control."  *Id.* (internal quotations omitted).  There was no exception from this exculpation for claims of gross negligence or willful misconduct.  The Court reasoned that it was the commencement of the SIPA proceeding that "led to the freezing of [the] customer accounts; an automatic result from the commencement of the case and a cause beyond [the debtor's] control."  *Id.*  Because the

6

customer agreement expressly exculpated the debtor from liability for losses incurred as a result of such a "suspension in trading," the Court concluded that the customers were barred from asserting contract claims to recover the Diminution Claims. *Id.* at *5.

21. The Court also rejected claimants' attempt to recover Diminution Claims based on theories of tort. Like the exculpation in paragraph 30 of the PB Agreements, a separate exculpatory provision in MF Global's customer agreement contained a carve-out for gross negligence and willful misconduct. But the Court refused to read a carve-out for such liability from one section of the customer agreement into another that "explicitly exculpates [the debtor] from liability resulting from the required termination or suspension of trading upon the commencement of a SIPA proceeding. The plain language of the contract bars that result." *Id.* at *5. The Court disallowed and expunged the customers' Diminution Claims in their entirety.

22. Like the brokerage creditors in *MF Global*, Stonehill is barred from asserting its Claims against the Chapter 11 Estates by the express language of paragraph 29 of the PB Agreements. Stonehill's alleged damages arose from governmental restrictions and a suspension of trading that "was the result of the proper, statutory, mechanical operation of bankruptcy procedure . . . and SIPA." *Id.* at *5 n. 2. Stonehill, a sophisticated party entering into arm's-length transactions, expressly agreed to exculpate the Chapter 11 Estates from all liability arising therefrom. Stonehill is barred as a matter of law from stating a plausible claim for relief for the Claims. The Court should disallow and expunge the Claims pursuant to section 502(b)(1) of the Bankruptcy Code because the Claims are unenforceable against the Chapter 11 Estates.

7

## II. The Chapter 11 Estates have no liability for the Contract Claims

23.    Additionally, and even if Stonehill had not released the Chapter 11 Estates from all liabilities asserted in the Claims, for the reasons set forth below, the Chapter 11 Estates have no liability for the Contract Claims.

### A. The Chapter 11 Estates are not jointly and severally liable for LBI's obligations

24.    It is a well-established principle of New York contract law that, "[w]here the plain language of a contract signed by multiple parties indicates that only one party has assumed an obligation, only that party will be held liable for a failure to perform." *Abundance Partners LP v. Quamtel, Inc.*, 840 F. Supp. 2d 758, 767 (S.D.N.Y. 2012) (refusing to hold a defendant liable for its affiliate's obligation to repay a loan where the defendant was a party to the agreement but had only undertaken the obligation to return certain collateral); *Kranze v. Cinecolor Corp.*, 96 F. Supp. 728 (S.D.N.Y. 1951) (holding that because two of the parties to a multi-party contract assumed separate obligations, each party was only liable for the obligation it assumed, and a parent corporation that promised stock options was not liable for a subsidiary's salary obligations under the same agreement).  In other words, joint and several liability is only applicable where two or more parties to a contract have promised the same performance or undertaken the same obligation.  *See Abundance*, 840 F. Supp. 2d at 767; *Kranze*, 96 F.Supp. at 728; *see also Tahoe DBS, LLC v. Loral Space & Commc'ns Ltd (In re Loral Space & Commc'ns Ltd.)*, 412 B.R. 64, 67-71 (S.D.N.Y. 2009).  Thus, whether the Chapter 11 Estates are liable with LBI for the Contract Claims depends on whether both LBI and the Chapter 11 Estates assumed the obligation to perform the prime brokerage functions that give rise to such claims.  They clearly did not, as the express provisions of the PB Agreements confirm.

25.    Courts determine whether parties have promised the same performance or separate performances by looking at the parties' intent.  *See NYKCool A.B. v. Pacific Fruit*

WEIL:\95126477\3\58399.0011

*Inc.,* No. 10-3867, 2011 WL 3666579, at *3 (S.D.N.Y. Aug. 9, 2011) ("Where two or more

parties to a contract make a promise or promises to the same promisee, the manifested intention

of the parties determines whether they promise that the same performance or separate

performances shall be given.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 288). The best

evidence of the parties' intent is the contract itself. *See Eternity Global Master Fund Ltd. v.

Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004). Therefore, "[w]here

the terms of an agreement are clear and unambiguous, courts do not look beyond the four corners

of the agreement, and parol evidence of the parties' intentions is inadmissible." *Abundance*, 840

F. Supp. 2d at 767. The interpretation of an unambiguous contract is a question of law for the

Court, which should be decided without an evidentiary hearing. *See id.*

26.    Without any authority or explanation, Stonehill asserts that the Chapter 11

Estates are liable for the Claims simply because the Chapter 11 Estates are parties to the PB

Agreements. (Claims ¶¶ 4-5.) But the PB Agreements are clear and unambiguous, and they

distinguish between the obligations undertaken by "LBI" and the obligations undertaken by (and

benefits bestowed upon) "Lehman Brothers" – a term defined to include LBI, the Chapter 11

Estates, and any of their subsidiaries, parents, affiliates, divisions, as well as any of their officers,

directors, agents and employees. (PB Agreements ¶ 1.)

27.    The Contract Claims allege losses incurred as a result of "the failure of

LBI to return [Stonehill's] cash and securities" under the PB Agreements following the

commencement of LBI's SIPA Proceeding. (Claims ¶ 6.) More particularly, the Contract

Claims assert that the Chapter 11 Estates are liable for LBI's failure to perform obligations set

forth in the "Prime Brokerage Services" section of the PB Agreements following the

commencement of LBI's SIPA Proceeding. *Id.*

9

28.    Under the express terms of the PB Agreements, "LBI," and only "LBI,"
promised to perform the obligations of prime broker.  Specifically, in the section titled "Prime
Brokerage Services," "LBI" promised, among other things, to (i) "act as a prime broker for
[Stonehill]," (ii) "accept for clearance and settlement trades executed on [Stonehill's] behalf,"
(iii) "be responsible for settling trades executed on [Stonehill's] behalf," and (iv) "send
[Stonehill] a confirmation of each trade placed."  (PB Agreements ¶ 21.)  "Lehman Brothers" did
not.[3]

29.    The only promises made by "Lehman Brothers," as opposed to "LBI," in
the PB Agreements were to perform certain ministerial tasks.  (*See, e.g.*, PB Agreements ¶¶ 10-
11.)  The Claims do not allege that the Chapter 11 Estates are liable for damages arising from the
Chapter 11 Estates' failure to perform such tasks.[4]

30.    Accordingly, under controlling precedent, the Chapter 11 Estates have no
liability for the Contract Claims.  The fact that the Chapter 11 Estates may be among the parties
to the PB Agreements could not, by itself, result in the Chapter 11 Estates' joint and several
liability for obligations of other parties.  *See Abundance*, 840 F. Supp. 2d at 767; *see also
Kranze*, 96 F.Supp. at 728.  If the parties wanted to expand the definition of "LBI" to include the
Chapter 11 Estates, and thereby render the Chapter 11 Estates liable under the literal language of
the PB Agreements, they could have done so.  *See Abundance*, 840 F. Supp. 2d at 768.  No

---

[3]   And none of the Chapter 11 Estates was a registered U.S. broker dealer that could have performed such
obligations.

[4]   As noted by Stonehill, the term "Lehman Brothers" was used selectively *to give and ensure benefits and
protections to Lehman affiliates*.  *See* Claims ¶ 4 (citing page 46 of the LBI Trustee's Preliminary Investigation
Report and Recommendations, dated August 25, 2010, for the proposition that the PB Agreements "included all
Lehman entities as parties for *certain purposes* such as subjecting [customer] property in the account to claims and
liens") (emphasis added); *id.* (referring to one-sided "master netting agreement" that permitted netting by "Lehman
Brothers," but not Stonehill).

WEIL:\95126477\3\58399.0011

person or entity other than LBI promised to perform the prime brokerage functions that give rise to the Contract Claims, and no such claims may be asserted against other person or entity.[5]

      31.    Stonehill's reference to the fact that LBI signed the PB Agreements "as agent" for the Chapter 11 Estates does not alter the foregoing analysis.  (*See* Claims ¶ 4.)  It is clear that LBI signed the PB Agreements not only "as agent" for the Chapter 11 Estates *but both* "as signatory for *itself* and as agent for the affiliates named therein."  (PB Agreements at p. 11 (emphasis added)).  There is no authority or basis to disregard the parties' well-defined distinction between "LBI" and "Lehman Brothers" and to render the Chapter 11 Estates liable for performance promised solely by LBI on LBI's own behalf.

      32.    Based on the foregoing, the Contract Claims should be disallowed and expunged.

---

[5] The Court need not look beyond the four corners of the PB Agreements for a basis to disallow and expunge the Claims, but the Court may consider the four corners of the Claims themselves, which include Stonehill's unequivocal admission that *only LBI* is liable for the return of cash and securities to Stonehill:

**PLEASE CIRCLE THE APPROPRIATE ANSWER FOR ITEMS 4 THROUGH 11.**

**NOTE:**   IF "Y" IS CIRCLED FOR ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  | YES | NO |
|---|---|---|
|  | | (Circle Y or N) |
| 4.  Does your claim in any way relate to an entity other than Lehman Brothers Inc. (for example, Lehman Brothers Holdings Inc., or another Lehman subsidiary)? | Y | (N) |

Claims at Ex. B.

WEIL:\95126477\3\58399.0011

B. *The Claims fail to state a prima facie claim for a Contract Claim*

33.    Stonehill fails to state a *prima facie* claim for breach of contract.

34.    Under New York law, to establish a *prima facie* claim for breach of

contract, a plaintiff must plead: (i) the existence of a contract; (ii) breach by the other party; and

(iii) damages suffered as a result of the breach. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46

(2d Cir. 2000).  "In pleading these elements, a plaintiff must identify what provisions of the

contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 171 F. Supp.

2d 354, 358 (S.D.N.Y. 2001).  In determining whether a party has identified contractual language

specifying the relevant obligation, "it is not for the court to 'supply a specific obligation the

parties themselves did not spell out.'" *Manhattan Motorcars, Inc. v. Automobili Lamborghini,*

*S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (quoting *Tonking v. Port Auth. of New York and*

*New Jersey*, 821 N.E.2d 133 (2004)).  "[W]hen parties set down their agreement in a clear,

complete document, their writing should be enforced according to its terms." *Vermont Teddy*

*Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (internal quotation

marks omitted). "This is particularly appropriate if the contract 'was negotiated between

sophisticated, counseled business people negotiating at arm's length." *In re Allegiance Telecom,*

*Inc.*, 356 B.R. 93, 98 (Bankr. S.D.N.Y. 2006) (quoting *Vermont Teddy Bear*, 807 N.E.2d at 879).

35.    As set forth above, even if the Chapter 11 Estates were parties to the PB

Agreements, they are not liable for obligations to which they never agreed, and Stonehill failed

to and cannot identify any contractual provision obligating *the Chapter 11 Estates* to perform

prime brokerage services or to return cash and securities in the event LBI failed to do so.

Accordingly, Stonehill failed to state a *prima facie* claim for a breach of contract and the

Contract Claims and should be disallowed and expunged.

12

C. *Stonehill released the Contract Claims under paragraph 30 of the PB Agreements*

36.      As discussed above, Stonehill released the Chapter 11 Estates from all liability asserted in the Claims under paragraph 29 of the PB Agreements.  But the Chapter 11 Estates need not rely on that provision to avoid liability for the Contract Claims, because in paragraph 30 of the PB Agreements, Stonehill also agreed that the Chapter 11 Estates "shall not be liable in connection with [any act] except gross negligence or willful misconduct on Lehman Brothers' part."  (PB Agreements ¶ 30.)

37.      "In a contract between sophisticated parties, not implicating public health or safety, New York applies a more exacting standard of gross negligence than it would in other contexts." *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*, 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008).  "[T]o avoid the enforcement of a limitation of liability provision, the evidence must approach reckless indifference or intentional wrongdoing: Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional wrongdoing . . . it is conduct that evinces a reckless indifference to the rights of others." *Id.* (internal quotations and citations omitted).  "In order to establish a *prima facie* case in gross negligence, it must be proven by a fair preponderance of the evidence that the party not only acted carelessly in making a mistake, but that it was so extremely careless that it was equivalent to recklessness." *Bayerische Hypo-Und Vereinsbank AG v. Banca Nazionale Del Lavoro, S.p.A. (In re Enron Corp.)*, 292 B.R. 752, 767 (Bankr. S.D.N.Y. 2003) (internal quotations omitted).

38.      "Willful misconduct" is "the intentional performance of an act with the knowledge that the performance of the act will probably result in injury or damage, or . . . the intentional omission of some act, with knowledge that such omission will probably result in

13

damage or injury, or the intentional omission of some act in a manner from which could be implied reckless disregard of the probable consequences of the omission . . ." *Id.*

39.    Other than a conclusory footnote stating that the Chapter 11 Estates' purported breach of the PB Agreements "rose to the level of gross negligence and/or willful misconduct," Stonehill alleges no factual basis to support a claim for gross negligence or willful misconduct.  (Claims ¶ 9 n. 3.)  The Claims allege no facts from which the Court can conclude that the Chapter 11 Estates' failure to return cash and securities – that Stonehill admits were held by LBI, a debtor in a separately-administered SIPA Proceeding – following the commencement of the SIPA Proceeding was or "smacked of intentional wrongdoing."  The Contract Claims are ordinary breach of contract claims, and therefore fall within the scope of the limitation of liability contained in Paragraph 30 of the PB Agreements.  *Asian Vegetable Research & Dev. Center v. Inst. Of Int'l Educ.*, 944 F. Supp. 1169, 1181-82 (S.D.N.Y. 1996) (dismissing claims for gross negligence that arose solely from breaches of contractual obligations); *Enron*, 292 B.R. at 781-82 (concluding that allegations did not rise to the level of conduct that satisfies gross negligence or willful misconduct standard where the complaint failed to allege that the party (i) was reckless, (ii) knew that its actions or omissions would result in damage or injury, or (iii) acted in a manner that implied a reckless disregard of the probable consequences).  Accordingly, the Contract Claims should be disallowed and expunged.

D.    *Stonehill's additional bases for the Contract Claims are meritless and fail as a matter of law*

40.    Stonehill alleges two further bases for the Contract Claims.  First, Stonehill alleges that the Chapter 11 Estates are liable for the Contract Claims as bailee of Stonehill's cash and securities.  (Claims ¶ 10.)  Second, Stonehill alleges that "LBI was further

14

obligated to hold the securities as financial assets under Article 8 of the Uniform Commercial Code." *Id.* Both grounds fail as a matter of law.

41.     It is a "longstanding" rule that "a bailment is contingent on the existence of an express or implied contract" and the "relation between a bailor and a bailee is fixed by contract . . . [such that] the rights and liabilities of the parties must be determined from the terms of the contract." *Rozsa v. May Davis Grp., Inc.*, 152 F. Supp 2d 526, 533 (S.D.N.Y. 2001) (citing *Coons v. First Nat. Bank of Philmont*, 218 A.D. 283 (N.Y. App. Div. 1926)). Accordingly, the terms of any bailor-bailee relationship that may have existed between Stonehill and the Chapter 11 Estates is governed by the express terms of the PB Agreements. Thus, the concept of the Chapter 11 Estates as bailees does not add a "further basis for the diminution in value claim," and for the reasons set forth above, the Chapter 11 Estates have no contractual liability for the Contract Claims. (Claims ¶ 10.)

42.     Likewise, the assertion that LBI was obligated to hold the securities as financial assets under Article 8 of the Uniform Commercial Code is not an additional ground for recovery against the Chapter 11 Estates. The Claims do not allege that the Chapter 11 Estates were in possession of Stonehill's cash or securities, and they concede that Stonehill's cash and securities were held at and returned by LBI. (Claims ¶ 4.) For the reasons set forth above, the Chapter 11 Estates are not jointly and severally liable for obligations LBI may have had under the PB Agreements. Accordingly, the Contract Claims should be disallowed and expunged.

## III. <u>The Tort Claims Should Be Disallowed and Expunged</u>

43.     Likewise, additionally, and even if Stonehill had not released the Chapter 11 Estates from all liabilities asserted in the Claims, for the reasons set forth below, the Chapter 11 Estates have no liability for the Tort Claims.

WEIL:\95126477\3\58399.0011

A. *The Claims failed to state a prima facie claim for the Tort Claims*

44.     The Claims fail to identify a particular tort or cause of action underlying the Tort Claims but suggest that Stonehill seeks to assert claims of fraudulent or negligent misrepresentation against the Chapter 11 Estates.  The Tort Claims should be disallowed and expunged because Stonehill failed to state a *prima facie* claim for either fraudulent or negligent misrepresentation under New York law.

45.     To state a claim for fraudulent misrepresentation under New York law, the claimant must allege (i) a material misrepresentation of fact; (ii) that was known to be false by the defendant; (iii) that was made with the intent to deceive the plaintiff; (iv) on which the plaintiff reasonably relied; and (v) which resulted in injury to the plaintiff.  *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997); *see also Lama Holding Co. v. Smith Barney, Inc.* 668 N.E.2d 1370 (N.Y. 1996).

46.      To state a claim for negligent misrepresentation under New York law, the claimant must allege that "(i) the defendant had a duty, as a result of a special relationship, to give correct information; (ii) the defendant made a false representation that it should have known was incorrect; (iii) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (iv) the plaintiff intended to rely and act upon it; and (v) the plaintiff reasonably relied on it to his or her detriment." *Manhattan Motorcars*, 244 F.R.D. at 215 (citing *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 277 F.3d 8, 20 (2d Cir. 2000)).

47.     A claim for fraudulent or negligent misrepresentation under New York law must also satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires all "averments of fraud" to be "stated with particularity." *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 949 F. Supp. 2d 486, 509 (S.D.N.Y. 2013);

16

*Manhattan Motorcars,* 244 F.R.D. at 213. "For fraudulent misrepresentation, the Second Circuit has held that Rule 9(b) requires allegations that (i) specify the statements that the plaintiff contends were fraudulent, (ii) identify the speaker, (iii) state where and when the statements were made, and (iv) explain why the statements were fraudulent." *Manhattan Motorcars*, 244 F.R.D. at 213 (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). Rule 9(b) is made applicable to adversary proceedings by Bankruptcy Rule 7009 and is also directly applicable to contested matters pursuant to Bankruptcy Rule 9014(c). *In re Nortel Networks*, 469 B.R. 478, 497 (Bankr. D. Del. 2012); *see also In re Lomas Fin. Corp.*, 212 B.R. 46, 52 (Bankr. D. Del. 1997) ("Most authorities agree that claim objections are contested matters").

48.    A claimant must "allege facts sufficient to support the claim," and a claim is only entitled to *prima facie* validity if it "alleges facts sufficient to support a legal liability to the claimant." *Allegheny Int'l*, 954 F.2d at 173.

49.    Here, Stonehill attempts to impose liability for certain alleged "material misrepresentations" made by or on behalf of the Chapter 11 Estates "regarding their financial position," specifically "in connection with the Lehman Entities' prime brokerage and other commercial relationships with [Stonehill] and its affiliates." (Claims ¶¶ 12, 13.) Stonehill alternatively alleges these misrepresentations were either willful or negligent, alleging "Lehman Brothers' officers knew or should have known" of certain risks to Lehman Brothers' financial condition. (*Id.* ¶¶ 12, 17.) Stonehill alleges that misrepresentations were made on two occasions. The first occasion was a September 10, 2008 earnings call, and the alleged misrepresentation was that "Lehman Brothers' . . . 'liquidity position . . . remains very strong.'" (*Id.* ¶ 12 n. 5.) The second was a prior or subsequent phone call in "early September 2008" with a representative of Stonehill. (*Id.* ¶¶ 13-15.) "In response to questions and concerns expressed

17

by [Stonehill] regarding the Lehman Entities' financial strength and viability, specifically in connection with the Lehman Entities' prime brokerage and other commercial relationships with [Stonehill]," Mr. John Wickham, alleged to be acting as a representative of the "Lehman Entities," allegedly made the following misrepresentations to "reassure [Stonehill] . . . regarding the Lehman Entities' financial condition and the stability of its prime brokerage operation": "Lehman had adequate liquidity because . . . it prudently financed it customers . . . and had sufficient liquidity from sources it believed to be reliable"; "Lehman had . . . $12 billion of surplus cash"; and "Lehman's unrealized appreciation in various assets (one of which . . . might soon be sold at a profit . . .) were more than sufficient to cover possible unrealized losses." (*Id.* ¶¶ 12, 14-15.) These statements allegedly "conveyed a message that Lehman Brothers' prime brokerage operation would continue operating in the normal course, and that [Stonehill] should be comfortable continuing its customer and counterparty relationship with Lehman Brothers." (*Id.* ¶ 15.) According to Stonehill, as result of these alleged misrepresentations, Stonehill refrained from demanding the return of its assets held by LBI and otherwise reducing its commercial exposure to Lehman prior to the SIPA Commencement Date. (*Id.* ¶ 12.)

50.    For the reasons stated below, none of the alleged "misrepresentations" gives rise to an actionable claim.

### i.    Stonehill failed to allege that any "misrepresentation" was false

51.    As set forth above, in an action to recover damages for either fraudulent or negligent misrepresentation, a claimant must assert a representation of fact was false when made. *Schlaifer Nance & Co.*, 119 F.3d at 98; *Manhattan Motorcars*, 244 F.R.D. at 213, 215. An action or claim will be dismissed where the claimant fails to do so. *Federated Retail Holdings, Inc. v. Sanidown, Inc.*, No. 06 Civ. 6119 (LTS) (THK), 2010 WL 5298113, at *6 (S.D.N.Y. Dec. 23, 2010).

52.   Stonehill does not allege that any of the statements it attributes to the Chapter 11 Estates was false when made.  Clearly, therefore, the Claims fail to "explain why the statements were fraudulent" as required to state a valid claim for relief for fraud.  *Manhattan Motorcars,* 244 F.R.D. 204 at 213.  Stonehill simply states that at some period of time after statements regarding liquidity were made, the Chapter 11 Cases and the SIPA Proceeding were commenced.[6]  (Claims ¶ 15.)  Stonehill failed to satisfy the requisite pleading standard for negligent misrepresentation and the heightened standard for fraudulent misrepresentation. Accordingly, the Tort Claims should be disallowed and expunged.

### ii.   Stonehill failed to plead reasonable reliance

53.   Under New York law, "a required element of fraud is that a party must show that it relied on a misrepresentation and that the reliance is reasonable."  *Gladstone Bus. Loan, LLC v. Randa Corp.*, No. 09 Civ. 4225 (LMM), 2009 WL 2524608 (S.D.N.Y. Aug. 17, 2009).  Similarly, a required element of a negligent misrepresentation claim is that the plaintiff "reasonably relied" on the false representation.  *See Manhattan Motorcars*, 244 F.R.D. at 215.

54.   A "fraud claim cannot be based upon a statement of future intention, promises or expectations which are speculative, or mere expression of opinion or hope at the time when made."  *O'Connor v. Readers Digest Ass'n, Inc.*, No. 92 Civ. 7414 (CLB), 1993 WL 291372, at *3 (S.D.N.Y. Mar. 10, 1993) (dismissing fraud claim where plaintiff's claim was based on the assertion that defendant never intended to perform under the contract); *Chase Invs., Ltd. v. Kent*, 681 N.Y.S.2d 319, 320 (App. Div. 1998) (stating that "a representation of opinion or prediction of something which is hoped or expected to occur in the future will not sustain an

---

[6] In the weeks and days leading up to the commencement of the Chapter 11 Cases and the SIPA Proceeding, at the height of the financial crisis, any number of events did or may have occurred to affect the liquidity of LBI, the Chapter 11 Estates and their affiliates worldwide.

WEIL:\95126477\3\58399.0011

action for fraud"). "Vague expressions of . . . future expectation provide an insufficient basis upon which to predicate a claim of fraud." *Int'l Oil Field Supply Servs. Corp. v. Fadeyi*, 825 N.Y.S.2d 730, 734 (App. Div. 2006).

55.    Stonehill's alleged reliance on a statement made during the September 10, 2008 earnings call is unreasonable as a matter of law.  The call began with a disclaimer advising listeners that statements made "contain forward-looking statements [that] are not guarantees of future performance" but rather "only represent the firm's current expectations, estimates, and projections regarding future events."  Lehman Bros. Preliminary Earnings Call Tr., at *1 (Sept. 10, 2008), attached hereto as Exhibit C.  A subsequent statement that "Lehman Brothers' . . . 'liquidity position . . . remains very strong'" therefore amounts, at most, to a mere representation of opinion that cannot support an action for fraud.  *See Chase Invs.*, 681 N.Y.S.2d at 320; *FMC Corp. v. Fleet Bank*, 641 N.Y.S.2d 25, 26 (App. Div. 1996) (holding that statements that a customer's account was "satisfactory" and that defendant was "comfortable" with the account did not support a fraud claim because such statements were "at most, nonactionable opinion" and the complaint lacked "factual allegations to support the theory that these opinions were not honestly held at the time they were expressed.").

56.    For the same reasons, Stonehill's alleged reliance on Mr. Wickham's alleged statements is unreasonable as a matter of law.  Statements that liquidity was "adequate," Lehman Brothers "prudently" financed its customer's accounts, and Lehman Brothers "believed" it had adequate sources of liquidity are nonactionable statements of opinion that cannot support a fraud claim.  *See FMC Corp.*, 641 N.Y.S.2d at 26.  Similarly, statements that Lehman possessed assets with sufficient "unrealized appreciation" to cover "unrealized losses" and that such assets "might" be sold to realize a profit are merely speculative statements about future intentions and

WEIL:\95126477\3\58399.0011

expectations that also fail to support a fraud claim. *See Chase Invs.* 681 N.Y.S.2d at 320

(dismissing a fraud claim on the grounds that "the alleged representations of the defendants to

the effect that the plaintiff would successfully obtain a zoning variance, upon which the contract

was conditioned, constituted nothing more than opinions or predictions of something which is

expected to occur in the future, and therefore cannot sustain a claim for fraud") (internal

quotations omitted).  Even if Mr. Wickham had "conveyed a message that Lehman Brothers'

prime brokerage operation would continue operating in the normal course, and that [Stonehill]

should be comfortable continuing its customer and counterparty relationships with Lehman

Brothers," (Claims ¶ 15) such a message would be nothing more than a statement of "future

intention, promises or expectations which are speculative, or mere expression of opinion or hope

at the time when made" and does not give rise to a valid fraud claim.  *See Chase Invs.*, 681

N.Y.S.2d at 320; *FMC Corp.* 641 N.Y.S.2d at 26.

57.    Because Stonehill's alleged reliance is unreasonable as a matter of law, the

Claims fail to state a claim for negligent and fraudulent misrepresentation and the Tort Claims

should be disallowed and expunged.

*B.    The Tort Claims are barred because they are duplicative of the Contract Claims*

58.    Even if the Claims did sufficiently plead a *prima facie* Tort Claim, such

claim would be barred under New York law as duplicative of the Contract Claims.  Stonehill

alleges that statements made on behalf of the Chapter 11 Estates were "intended . . . to convince

Lehman Brothers' customers and counterparties" that "Lehman Brothers' prime brokerage

operation would continue operating in the normal course." Claims ¶ 15, 17.  If fraudulent, such

statements would "amount to little more than intentionally false statements … indicating [an]

intent to perform under the [PB Agreements]" by LBI.  *Bridgestone/Firestone, Inc. v. Recovery*

21

*Credit Servs. Inc.*, 98 F.3d 13, 19 (2d Cir. 1996). "That is not sufficient to support a claim for fraud under New York law." *Id.* at 20.

59.    Under New York law, "a breach of contract claim cannot be converted into a tort action absent the violation of a legal duty independent of that created by contract." *Scott v. Keycorp*, 669 N.Y.S.2d 76, 79 (App. Div. 1998). "A cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract." *G.L.M. Sec. & Sound v. LoJack Corp.*, No. 10-CV-04701 (JS) (ARL), 2011 WL 4594825, at *12 (E.D.N.Y. Sept. 30, 2011); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 603 N.Y.S.2d 526, 528 (App. Div. 1993) ("[t]he remedy for delays resulting from willful or grossly negligent acts of a contracting party remains exclusively in contract rather than tort.")). Stonehill cannot "morph its breach of contract allegations into a tort" where "the only interest involved . . . is holding a party to a promise." *Id.* (citing *Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 85 (2d Cir. 1982); *see also Papa-June's Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996) ("a contract claim cannot be converted into a fraud claim by the addition of an allegation that the promisor intended not to perform when he made the promise.").

60.    Courts in New York routinely dismiss fraud and negligent misrepresentation claims that relate to a breach of contract claim unless the plaintiff either (i) demonstrates a legal duty separate and apart from the duty to perform under the contract; (ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seeks special damages that are caused by the misrepresentation and are unrecoverable as contract damages. *Bridgestone*, 98 F.3d at 20. (internal citations omitted); *OP Solutions, Inc. v. Crowell & Moring, LLP*, 900 N.Y.S.2d 48 (App. Div. 2010) (dismissing negligent

WEIL:\95126477\3\58399.0011

misrepresentation claim as duplicative of breach of contract claim).[7]  As explained below,

Stonehill fails to meet any of these requirements and the Tort Claims should be disallowed and

expunged.

> i.    **The Chapter 11 Estates did not owe Stonehill any separate duty**

61.    Stonehill does not allege that the Chapter 11 Estates owed Stonehill any

special duty outside the contract and is precluded from doing so by the plain language of the PB

Agreements.

62.    "Courts regularly hold as a matter of law that an arm's length business

transaction between sophisticated parties cannot give rise to a 'special relationship.'" *BNP*

*Paribas*, 949 F. Supp. 2d at 511 (citing *Fed. Hous. Agency v. UBS Americas, Inc.*, 858 F. Supp.

2d 306, 334 (S.D.N.Y. 2012)).  This is true even where one party may be in a position of

superior knowledge concerning the subject matter of the contract.  *Id.*  (citing *MBIA Ins. Corp. v.*

*Countrywide Home Loans, Inc.*, 87 A.D.3d 287 (N.Y. App. Div. 2013) ("[T]he fact that, with

regard to the securities at issue in this case, the defendants had greater knowledge of the

underlying loan files and the practices of third-party due diligence provides is not sufficient to

establish a 'special relationship' where parties are 'highly sophisticated players in the mortgage-

backed securities business.")).  Language in a contract indicating that the parties are dealing with

one another at arm's length precludes the existence of a "special relationship" under New York

law. *Id.* (citing *HSH Nordbank AG v. UBS AG*, 95 A.D.2d 185 (N.Y. App. Div. 2012)).

63.    The PB Agreements provide that "[Stonehill] understand[s] that Lehman

Brothers *does not act as investment adviser* or solicit orders, that Lehman Brothers *does not*

---

[7]  As noted above, under New York law, a required element of a negligent misrepresentation claim is that "the
defendant had a duty, as a result of a special relationship, to give correct information."  *Hydro Investors*, 277 F.3d at
20.  Stonehill's failure to allege any special duty owed by the Chapter 11 Estates outside of its obligations under the
PB Agreement is an additional ground to disallow and expunge Stonehill's negligent misrepresentation claim.

WEIL:\95126477\3\58399.0011

*advise prime brokerage customers*, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment." (PB Agreements ¶ 21(i) (emphasis added)).  Stonehill's express acknowledgement of its understanding that "Lehman Brothers" was not acting in an advisory capacity under the PB Agreements preclude it from arguing the existence of any "special relationship" between the parties.  Accordingly, the Tort Claims should be disallowed and expunged.

> **ii.    The alleged misrepresentations are neither collateral nor extraneous to the PB Agreement**

64.    As a matter of law, "[a] representation that performance will be made is not distinct from the contract."  *Crabtree v. Tristar Auto. Group, Inc.*, 776 F. Supp. 155, 162–62 (S.D.N.Y. 1991).  "Moreover, promises serving as inducement for the execution of the contract, such as representations of expertise and resources, are not considered collateral to the contract because they simply underscore the defendant's purported intention and ability to perform the contract and are thus simply part and parcel of the intention to perform."  *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 99 Civ. 9905 (SHS), 2001 WL 910405 (S.D.N.Y. Aug. 13, 2001) (internal quotations omitted).

65.    All of the alleged misrepresentations upon which the Tort Claims rely concern the future performance of the Chapter 11 Estates, LBI, and their affiliates.  Stonehill alleges the representations were made "[i]n response to questions and concerns expressed by [Stonehill] regarding the Lehman Entities' financial strength  and viability" that specifically related to "the Lehman Entities' prime brokerage and other commercial relationships with Stonehill."  (Claims ¶¶ 13, 14.)  Stonehill alleges they were intended to "reassure [Stonehill] . . . regarding the Lehman Entities' financial condition and the stability of its prime brokerage

24

operation." (*Id.* ¶ 14.) And Stonehill alleges that they "conveyed a message that Lehman

Brothers' prime brokerage operation would continue operating in the normal course, and that

[Stonehill] should be comfortable continuing its customer and counterparty relationship with

Lehman Brothers." (Claims ¶ 15.) Stonehill cannot now argue credibly that they were

"collateral or extraneous" to the PB Agreements. Stonehill cannot assert Tort Claims duplicative

of Contract Claims against the Chapter 11 Estates, and the Tort Claims should be disallowed and

expunged.

### iii.   The Tort Claims do not seek special damages

66.   Stonehill admits that it is merely seeking "the amounts owed under the PB

Agreement discussed above [in the Contract Claims]" in connection with the Tort Claims.

(Claims ¶ 12.) Stonehill therefore failed to plead any "special damages" that would justify the

duplicative Tort Claims. The fact that the Contract Claims are barred by the exculpation in the

PB Agreements and are otherwise unrecoverable from the Chapter 11 Estates does not affect this

conclusion. *See Papa's-June*, 921 F. Supp.at 1162 (dismissing fraud claims even though party's

other grounds for recovery were barred under applicable law); *Gutterman v. RGA Accessories,

Inc.*, 602 N.Y.S.2d 116, 117–18 (App. Div. 2008) (dismissing fraud claim even though breach of

contract claim was barred by the applicable Statute of Limitations). Accordingly, the Court

should disallow and expunge the Tort Claims.

## <u>RESERVATION OF RIGHTS</u>

67.   For the reasons set forth above, the Claims can be disallowed and

expunged in their entirety accepting, arguendo, each of Stonehill's factual allegations and

without discovery. The Plan Administrator does dispute and reserves all rights to dispute any

allegations of fact or conclusion of law in the Claims and to object on any and all bases to any

Claim as to which the Court does not grant the relief requested herein. Specifically, and without

WEIL:\95126477\3\58399.0011

limitation, the Plan Administrator reserves all rights to dispute liability for and the amount of any Claim as to which the Court does not grant the relief requested herein.[8]  The Plan Administrator reserves all right to conduct discovery and to supplement this and other filings with respect to any Claim as to which the Court does not grant the relief requested herein.

### NOTICE

68.    No trustee has been appointed in these Chapter 11 Cases.  The Plan Administrator has served notice of this objection on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Stonehill; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

---

[8] The Plan Administrator notes that Stonehill's general unsecured claims against LBI have already been capped by order of this Court in the SIPA Proceeding [ECF. No. 9520]; Stonehill has been precluded from asserting its $155 million diminution claim against LBI; and, according to the publicly-available claims registry in the SIPA Proceeding, Stonehill's $11 million foreign currency claim remains disputed.  Any amounts recovered from LBI on account of such claims would reduce amounts recoverable from the Chapter 11 Estates.

WEIL:\95126477\3\58399.0011

69.     No previous request for the relief sought herein has been made by the Plan

Administrator or the Chapter 11 Estates to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant

the relief requested herein and such other and further relief as is just.


Dated: October 31, 2014
New York, New York

/s/ Garrett A. Fail_____
Ralph I. Miller
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

WEIL:\95126477\3\58399.0011

**Exhibit A**

WEIL:\95126477\3\58399.0011

**IN RE: LEHMAN BROTHERS HOLDINGS, INC., ET AL., CASE NO. 08-13555 (SCC)**

**OMNIBUS OBJECTION 483: EXHIBIT A - NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|---|
| 1 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 08/05/2014 | 68189 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 2 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-12516 (SCC) | LB 2080 Kalakaua Owners LLC | 08/05/2014 | 68190 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 3 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13901 (SCC) | Lehman Brothers Commercial Corporation | 08/05/2014 | 68191 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 4 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13900 (SCC) | Lehman Commercial Paper Inc. | 08/05/2014 | 68192 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 5 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13904 (SCC) | Lehman Scottish Finance L.P. | 08/05/2014 | 68193 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 6 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13600 (SCC) | LB 745 LLC | 08/05/2014 | 68194 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 7 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13906 (SCC) | CES Aviation V LLC | 08/05/2014 | 68195 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 8 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13907 (SCC) | CES Aviation IX LLC | 08/05/2014 | 68196 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 9 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13908 (SCC) | East Dover Limited | 08/05/2014 | 68197 | $77,380,909.22 | $77,380,909.22 | No Liability |

\* - Indicates claim contains unliquidated and/or undetermined amounts

**IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)**

**OMNIBUS OBJECTION 483: EXHIBIT A - NO LIABILITY CLAIMS**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 10 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13899 (SCC) | Lehman Brothers Derivative Products Inc. | 08/05/2014 | 68198 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 11 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13885 (SCC) | Lehman Brothers Commodity Services Inc. | 08/05/2014 | 68199 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 12 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13893 (SCC) | Lehman Brothers OTC Derivatives Inc. | 08/05/2014 | 68200 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 13 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13902 (SCC) | Lehman Brothers Financial Products Inc. | 08/05/2014 | 68201 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 14 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 08/05/2014 | 68202 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 15 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13905 (SCC) | CES Aviation LLC | 08/05/2014 | 68203 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 16 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10137 (SCC) | BNC Mortgage LLC | 08/05/2014 | 68204 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 17 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10108 (SCC) | Luxembourg Residential Properties Loan Finance S.a.r.l. | 08/05/2014 | 68205 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 18 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13664 (SCC) | PAMI Statler Arms LLC | 08/05/2014 | 68206 | $77,380,909.22 | $77,380,909.22 | No Liability |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

OMNIBUS OBJECTION 483: EXHIBIT A - NO LIABILITY CLAIMS

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 19 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10560 (SCC) | LB Rose Ranch LLC | 08/05/2014 | 68207 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 20 STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10558 (SCC) | Structured Asset Securities Corporation | 08/05/2014 | 68208 | $77,380,909.22 | $77,380,909.22 | No Liability |
| 21 STONEHILL OFFSHORE PARTNERS LIMITED | 09-10560 (SCC) | LB Rose Ranch LLC | 08/05/2014 | 68169 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 22 STONEHILL OFFSHORE PARTNERS LIMITED | 09-10558 (SCC) | Structured Asset Securities Corporation | 08/05/2014 | 68170 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 23 STONEHILL OFFSHORE PARTNERS LIMITED | 09-10137 (SCC) | BNC Mortgage LLC | 08/05/2014 | 68171 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 24 STONEHILL OFFSHORE PARTNERS LIMITED | 09-10108 (SCC) | Luxembourg Residential Properties Loan Finance S.a.r.l. | 08/05/2014 | 68172 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 25 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13907 (SCC) | CES Aviation IX LLC | 08/05/2014 | 68173 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 26 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13664 (SCC) | PAMI Statler Arms LLC | 08/05/2014 | 68174 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 27 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13908 (SCC) | East Dover Limited | 08/05/2014 | 68175 | $86,659,892.26 | $86,659,892.26 | No Liability |

* - Indicates claim contains unliquidated and/or undetermined amounts

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

## OMNIBUS OBJECTION 483: EXHIBIT A - NO LIABILITY CLAIMS

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 28 STONEHILL OFFSHORE PARTNERS LIMITED | 09-12516 (SCC) | LB 2080 Kalakaua Owners LLC | 08/05/2014 | 68176 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 29 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13901 (SCC) | Lehman Brothers Commercial Corporation | 08/05/2014 | 68177 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 30 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13885 (SCC) | Lehman Brothers Commodity Services Inc. | 08/05/2014 | 68178 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 31 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13600 (SCC) | LB 745 LLC | 08/05/2014 | 68179 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 32 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13900 (SCC) | Lehman Commercial Paper Inc. | 08/05/2014 | 68180 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 33 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 08/05/2014 | 68181 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 34 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13902 (SCC) | Lehman Brothers Financial Products Inc. | 08/05/2014 | 68182 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 35 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13904 (SCC) | Lehman Scottish Finance L.P. | 08/05/2014 | 68183 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 36 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13905 (SCC) | CES Aviation LLC | 08/05/2014 | 68184 | $86,659,892.26 | $86,659,892.26 | No Liability |

**IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)**

**OMNIBUS OBJECTION 483: EXHIBIT A - NO LIABILITY CLAIMS**

| NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|
| 37 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13906 (SCC) | CES Aviation V LLC | 08/05/2014 | 68185 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 38 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13893 (SCC) | Lehman Brothers OTC Derivatives Inc. | 08/05/2014 | 68186 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 39 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13899 (SCC) | Lehman Brothers Derivative Products Inc. | 08/05/2014 | 68187 | $86,659,892.26 | $86,659,892.26 | No Liability |
| 40 STONEHILL OFFSHORE PARTNERS LIMITED | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 08/05/2014 | 68188 | $86,659,892.26 | $86,659,892.26 | No Liability |

* - Indicates claim contains unliquidated and/or undetermined amounts

**<u>Exhibit B</u>**

WEIL:\95126477\3\58399.0011

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc.. Et Al.<br>08-13555 (JMP)        0000068189 |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>Stonehill Institutional Partners, L.P.<br>c/o Stonehill Capital Management LLC<br>885 Third Avenue, 30th Floor<br>New York, NY 10022<br>Attn: Paul D. Malek, Esq.<br><br>Telephone number: 212-739-7474    Email Address: pmalek@stonehillcap.com | ☑ Check this box to indicate that this claim supersedes a previously filed claim.<br><br>Court Claim Number: 19890<br>(If known)<br><br>Filed on: 09/21/2009 | **THIS SPACE IS FOR COURT USE ONLY**<br><br>**FILED / RECEIVED**<br><br>AUG 05 2014<br><br>EPIQ BANKRUPTCY SOLUTIONS, LLC |
|---|---|---|
| Name and address where payment should be sent (if different from above)<br><br>Telephone number:        Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. | |

**1.  Amount of Claim as of Date Case Filed: $ 77,380,909.22**

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a Derivative Contract or Guarantee.

**2.  Basis for Claim:** Prime brokerage agreement (see attachment)
(See Instruction #2 on reverse side.)

**3.  Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.  Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
**Amount of Secured Claim: $**_____ **Amount Unsecured: $**_____

**5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

**6.  Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $**_____
(See instruction #6 on reverse side.)

**7.  Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.  Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date:<br>7/27/14 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Paul Malek, General Counsel, Stonehill Capital Management LLC |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9).**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
**Lehman Brothers Holdings Claims Processing**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, PO Box 5076**
**New York, NY 10150- 5076**

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is one of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

## ATTACHMENT TO PROOF OF CLAIM OF
## STONEHILL INSTITUTIONAL PARTNERS, L.P.

Stonehill Institutional Partners, L.P. ("Claimant") hereby files this claim (the Proof of

Claim Form together with this Attachment are referred to herein as the "Claim") in the chapter

11 case of Lehman Brothers Holdings Inc. (the "Debtor") and, in support of the Claim,

represents as follows:

### Background

1.    Claimant is a private investment fund organized as an exempted company

under the laws of the Cayman Islands. Stonehill Capital Management LLC ("SCM") is

Claimant's investment adviser and an authorized signatory for Claimant.

2.    Prior to the commencement of these chapter 11 cases, Claimant had

various business relationships with and was party to a number of agreements with the Debtor

and its affiliates. A description of certain of these business relationships and agreements and the

claims of Claimant against the Debtor arising thereunder is set forth below.[1]

### Prime Brokerage

3.    Lehman Brothers Inc. ("LBI"), an affiliate of the  Debtor currently in a

liquidation proceeding (the "SIPA Proceeding") under the Securities Investment Protection Act

of 1970, as amended ("SIPA"), was Claimant's sole prime broker until September 17, 2008, two

days before commencement of the SIPA Proceeding. Claimant was party to a Customer

Account Prime Brokerage Agreement (Account No.: 732-40125) (the "PB Agreement")

between Claimant and LBI "as signatory for itself and as agent for the affiliates named

---

[1]    Stonehill Offshore Partners Limited, an affiliate of Claimant, was also a party to a number of agreements
with the Debtor and its affiliates and has filed separate proofs of claim in these cases.  SCM was a signatory
for Claimant for various agreements in its capacity as investment adviser and authorized signatory of
Claimant.

herein." The PB Agreement (Paragraph 1) provides that the parties to the PB Agreement consist of Claimant and "Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. ("LBHI") and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created." Such entities are defined as and referred to throughout the PB Agreement collectively and interchangeably as "Lehman Entities" and "Lehman Brothers" and are referred to interchangeably in this Claim as "Lehman Entities" or "Lehman Brothers" (which terms include the Debtor).

4.     Although paragraph 21 of the PB agreement refers specifically to "LBI" in connection with prime brokerage services, LBI acted as agent for and signed on behalf of the other Lehman Entities in that capacity. Paragraph 4 of the PB Agreement states that the Claimant "and Lehman Brothers intend this agreement to be a master netting agreement," which is an additional indication that the parties intended all Lehman Entities to share in the benefits and burdens of the PB Agreement. In the LBI Trustee's Preliminary Investigation Report and Recommendations, dated August 25, 2010 (the "Trustee's Report"), the Trustee noted that prime brokerage customer account agreements "included all Lehman entities as parties for certain purposes such as subjecting property in the account to claims and liens." (Trustee's Report at p. 46). By becoming parties to the PB Agreement and availing themselves of the benefits of the PB Agreements, including by imposing claims and liens on customer property, the Debtors and other Lehman Entities also obligated themselves under such agreement on a joint and several basis with LBI.

5.     Thus, the Debtor and its affiliated debtors and debtors-in-possession were parties to the PB Agreement. LBHI had the ability to influence and control LBI, its wholly-

2

owned subsidiary, as well as the other Lehman Entities including with respect to the Lehman
Entities' obligations under the Prime Brokerage Agreement. Having reaped the benefits of
the PB Agreement, LBHI, the Debtor and its affiliated debtors-in-possession must remain
bound by their obligations and liabilities thereunder. As a party to the PB Agreement, the
Debtor is fully liable for all amounts owed to Claimant in connection with the PB Agreement.
A copy of the PB Agreement is attached to this Claim as Exhibit A.

6.    As Claimant's sole prime broker and pursuant to the PB Agreement, LBI had
custody of a substantial portion of Claimant's assets, including both cash and securities, and
was "responsible for settling trades executed on [Claimant's] behalf by [Claimant's] executing
broker(s)." (PB Agreement, Paragraph 21(b)). In addition, the PB Agreement authorized
"Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers
in any of [Claimant's] accounts" but provided that Claimant "will be entitled to receive all
distributions, including, but not limited to, cash . . . made on or in respect of any loaned,
pledged, repledged, hypothecated or rehypothecated securities." (PB Agreement Paragraph
19). As a regulated broker dealer and by virtue of course of conduct among the parties,
industry practice and custom, and an implied duty of good faith and fair dealing, LBI (as well
as the other Lehman Entities) also had obligations implied by law to Claimant not
specifically enumerated in the PB Agreement. The failure of LBI to return Claimant's cash
and securities therefore constituted a breach of the PB Agreement by the Debtor and the other
Lehman Entities.

7.    On January 26, 2009, Claimant filed a proof of claim in the SIPA Proceeding
asserting various claims – categorized as "components" of the claim against LBI under SIPA
(the "SIPA Claim"). A copy of the SIPA Claim is attached to this Claim as Exhibit B.

3

Between the commencement of the SIPA Proceeding and the date of this Amendment,
virtually all of Claimant's securities and cash held at LBI have been returned to Claimant
pursuant to a Notice of SIPA Trustee's Determination of Claim (SIPA Claim No.
900002114) dated March 23, 2010 (as corrected on June 4, 2010), Schedule A to the SIPA
Trustee's Distribution Notice dated June 27, 2013 (as corrected on August 22, 2013), and a
Declaration, Release and Assignment entered into by Claimant on September 5, 2013
(collectively, the "SIPA Claim Determination").

8.      Pursuant to the SIPA Claim Determination, all of the components of the SIPA
Claim have been resolved other than Component 8, which represents an aggregate of
$4,919,145.22 in losses as of September 19, 2008, on foreign currency hedges entered into
under the PB Agreement,[2] and component 10, pursuant to which Claimant fully reserved the
right to seek interest that may be payable or claimable on cash balanced, additional
misdirected wires, and/or other amounts that may have been received by LBI or other
Lehman Entities.  Component 8 of Claimant's SIPA claim arising from foreign currency
hedges has not yet been admitted as a general unsecured claim in LBI's SIPA proceeding
although it may be so admitted in the future.

9.      In addition, the Debtor and the Lehman Entities are obligated to Claimant for
damages, interest, costs, attorneys' fees, including, but not limited to the amount
representing the diminution in value of the securities held by LBI under the PB Agreement
from the date in which LBI's SIPA Proceeding was commenced through the date that such
securities were returned to Claimant. The PB Agreement obligated the Debtor and the
Lehman Entities to provide services consistent with the SEC's guidelines on prime brokerage

---

[2]     Although Claimant believes that LBI may have been the only Lehman entity directly involved with the
foreign currency hedges, such hedges were entered into under the PB Agreement and are therefore
obligations of all of the "Lehman Entities", as noted above.

4

relationships (PB Agreement Paragraph 21(l)). It is an established element of the brokerage

relationship that a broker-dealer must promptly return the securities upon request and,

pursuant to the terms of the PB Agreement, the Debtor and all the Lehman Entities were

made jointly and severally liable for any breach of the obligation to return securities.[3]

Therefore, the Debtor and the Lehman Entities were responsible, separate and apart from

LBI's obligations as a broker-dealer subject to SIPA regulation (and notwithstanding any

limitation under SIPA with respect to such a diminution in value claim), for the prompt

return of the securities to Claimant upon request when LBI commenced its SIPA Proceeding,

and must repay Claimant for Claimant's losses due to the failure to return the securities or

cause the securities to be returned.

    10.    A further basis for the diminution in value claim is that LBI and the Lehman

Entities were required under state law to act in accordance with their respective obligations

as a bailees of the securities, and therefore to return the securities to Claimant (PB

Agreement Paragraph 3). Under New York law, which governs the PB Agreement, a bailee

has a duty to return goods to a bailor and is liable for loss or damage to the goods. LBI was

further obligated to hold the securities as financial assets under Article 8 of the Uniform

Commercial Code (PB Agreement Paragraph 3), which entitles the owners of securities to

have property that is held in a security account protected from the intermediary's other

creditors.

    11.    The current amount owed for diminution in value of returned securities has

been calculated by Claimant to be at least $72,461,764. The calculation of this amount is

---

[3]    Such breach rose to the level of gross negligence and/or willful misconduct and therefore was not subject to
the limitation on liability set forth in Paragraph 30 of the PB Agreement.

shown on the spreadsheet attached to this Claim as <u>Exhibit C</u>.[4]  This amount, plus the amount

owing on component 8 of the SIPA Claim, gives an aggregate Claim amount equal to

approximately $77,380,909.22.

12.     In addition to the bases for asserting the Claim against the Debtors described

above, the amounts owed under the PB Agreement discussed above are also recoverable by

Claimant as a result of willful and material misrepresentations made by and/or on behalf of

the Lehman Entities regarding their financial position and related matters, both publicly[5] and

by a senior representative of the Lehman Entities directly to SCM, Claimant's investment

adviser. Such misrepresentations induced Claimant (and likely induced similarly situated

customers and counterparties of the Lehman Entities) to refrain from terminating Claimant's

prime brokerage (and other counterparty) relationships with the Lehman Entities.

13.     During a phone call held in early September 2008, shortly before the Lehman

chapter 11 filing and the commencement of the SIPA Proceeding, Mr. John Wickham,

believed to be head of Lehman Brothers Global Client Services and acting as a representative

of the Lehman Entities, called John Motulsky of SCM in response to Mr. Motulsky's

voicemail message to Alex Kirk, believed to then be a senior officer of LBHI, asking about

the Lehman Entities' financial stability, specifically in connection with the Lehman Entities'

prime brokerage and other commercial relationships with Claimant and its affiliates.

---

[4]     The diminution in value claim is based on the difference in value of securities held at LBI as of the close of
business on September 12, 2008, the last business day before the commencement of these cases and the last
date on which Claimant was able to obtain its securities from LBI, and the date such securities were
returned.  Claimant does not mark its portfolio on a daily basis and prices for the securities in Claimant's
portfolio, other than those that trade on public markets, are not available on a daily basis.  Therefore, other
than with respect to publicly traded securities, Claimant used the value of the securities as of the last
valuation date prior to September 12, 2008 and the date of return, as applicable.

[5]     For example, on an earnings call on September 10, 2008, five days prior to LBHI's chapter 11 filing,
Lehman Brothers' CFO at the time, Ian Lowitt, stated regarding Lehman Brothers' liquidity position that
"our liquidity position… remains very strong."

6

14. In response to questions and concerns expressed by Mr. Motulsky regarding the Lehman Entities' financial strength and viability, Mr. Wickham sought to reassure Claimant (through SCM and Mr. Motulsky) regarding the Lehman Entities' financial condition and the stability of its prime brokerage operation. Mr. Motulsky recalls that Mr. Wickham stated that Lehman had adequate liquidity because unlike Bear Stearns it prudently financed its customers with matched funding and had sufficient liquidity from sources it believed to be reliable to meet all of its obligations for a year even if no new financing was available, that it had $12 billion of surplus cash, and also cited the availability of secured financing from the federal reserve, none of which was used.

15. Mr. Motulsky also recalls that Mr. Wickham stated that Lehman's unrealized appreciation in various assets (one of which was Neuberger Berman, half of which Mr. Wickham stated might soon be sold at a profit to realize value and add to tangible equity) were more than sufficient to cover possible unrealized losses in its portfolio and provide incremental equity that would be required for a planned spinout of most of Lehman's commercial real estate portfolio, and conveyed a message that Lehman Brothers' prime brokerage operation would continue operating in the normal course, and that Claimant should be comfortable continuing its customer and counterparty relationship with Lehman Brothers.[6] A few days after this conversation the Debtor commenced this chapter 11 case and LBI commenced its SIPA Proceeding.

16. As a result of the material misrepresentations by Lehman Brothers and its representatives to the public, and by Mr. Wickham, who acted with apparent authority on behalf

---

[6] Many of Mr. Wickham's comments appeared to be taken from talking points Mr. Wickham received from the Lehman Entities for communications with customers, rather than being "off the cuff" remarks of Mr. Wickham's personal views regarding Lehman's financial condition.

7

of LBHI and its affiliates, to SCM, Lehman Brothers and their representatives succeeded in persuading the Claimant to refrain from demanding the return of its assets held by LBI and other Lehman Entities and otherwise taking actions to promptly reduce its commercial exposure to Lehman Brothers prior to the effective curtailment of LBI' s normal operations and the subsequent commencement of the SIPA Proceeding.

17.     Thus, by virtue of the public misrepresentations of Lehman Brothers and private misrepresentations by Mr. Wickham, Lehman Brothers' agent, directly to SCM, which misrepresentations were intended for the benefit of the Lehman Entities to convince Lehman Brothers' customers and counterparties in general and SCM in particular of the financial stability and health of Lehman Brothers despite the fact that Lehman Brothers' officers knew or should have known that there were substantial risks that Lehman Brothers' liquidity and capital may not continue to support its operations, the Lehman Entities, including the Debtor, are fully liable for any and all direct, indirect, nominal or consequential damages incurred by Claimant in connection with the PB Agreement or otherwise arising in connection with Claimant's prime brokerage and counterparty relationship with Lehman Brothers, including the claim arising from diminution in value of securities that were not timely returned to Claimant.

18.     Claimant is entitled to assert and is asserting against the Lehman Entities, including the Debtor, the full amount of claims arising under or relating to the PB Agreement, provided that Claimant may not recover more than 100% of the amount of such claims.

<u>Reservation of Rights</u>

19.     No payments have been made to Claimant on account of the claims asserted herein.

8

20.    Claimant reserves all of its rights to supplement or amend this Claim in any and all respects, including to liquidate amounts which are presently unliquidated or estimated.

21.    In the event that the Debtor or any of the other debtors assert or Claimant shall determine that another debtor or other party is obligated or liable for any of the categories of claims and amounts set forth herein, this Claim shall be deemed to have been asserted against such other debtor or other party for such category and amount.

22.    To the extent not set forth in this Claim, Claimant also makes claim for all direct, indirect, nominal or consequential damages, interest, costs, attorneys' fees, and other amounts owed or owing to it, to the extent recoverable under the applicable agreement and/or applicable law, whether or not liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, in law or equity, secured or unsecured, directly or indirectly related to the matters discussed in this Claim. Claims for amounts asserted herein which are or could be deemed to be postpetition interest under the Bankruptcy code are asserted to the extent allowed under the Bankruptcy Code and applicable non-bankruptcy law.

23.    The filing of the Claim is not and shall not be deemed or construed as consent by Claimant to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Claimant.

24.    Neither the substance nor the act of filing this claim, nor any later appearance, pleading, claim, or action in these cases, is intended or shall be deemed to be a waiver, release, or modification by Claimant of its (a) right to have final orders in non-core matters entered after de novo review by a District Judge; (b) right to trial by jury in any proceeding so triable in this case or any case, controversy or proceeding related to these cases; (c) rights under the applicable

9

safe harbor provisions of the Bankruptcy Code; (d) right to seek to have the District Court

withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (e)

other rights, remedies, claims, actions, defenses, setoffs or recoupments to which Claimant is or

may be entitled, all of which are hereby expressly reserved.

10

## EXHIBIT A

# Customer Account Agreement Prime Brokerage

## LEHMAN BROTHERS INC.

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
(212) 526-7000

| Stonehill Institutional Partners LP | Account No.: 732-40126 |
|---|---|

**Please Read Carefully, Sign and Return**

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent and warrant to Lehman Brothers that you are either (i) not (A) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (B) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code") or (ii) (A) an ERISA Plan or subject to ERISA or Section 4975 of the Code and (B) whose Investment Manager or General Partner is (and you covenant and agree that any successor Investment Manager or General Partner appointed by you will be) a Qualified Professional Asset Manager ("QPAM") as defined by the relevant prohibited transaction class exemption(s) issued pursuant to ERISA and you will provide Lehman Brothers with a QPAM Representation Letter .

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for differences or any other agreement, without regard to the form of such agreement which may include oral

agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

**4.   BREACH, BANKRUPTCY OR DEFAULT.** If you shall:

(i)  breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

(ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

(iii) state that you will not perform any obligation to any Lehman Brothers Entity;

(iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

(v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death; mental incompetence; dissolution; the appointment of a receiver for or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

2

(vi) make a general assignment for the benefit of your creditors; or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk; and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine. At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5. ADEQUATE ASSURANCES.** Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees"). You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby.

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

3

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers). In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

9. IMPARTIAL LOTTERY ALLOCATION. You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

10. SECURITIES EVENTS. Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes. You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

11. VOTING RIGHTS. If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

12. WAIVER, ASSIGNMENT AND NOTICES. Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder. Any purported assignment of your rights and/or obligations hereunder without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void. Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

13. FREE CREDIT BALANCES. You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used.

14. RESTRICTIONS ON ACCOUNT. You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

4

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15.   CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16.   SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17.   MARGIN ACCOUNTS.** All Loans made hereunder are demand loans. You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity. Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future.

**18.   SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19.   CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities which are not otherwise received by you, to the full

5

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

20. **OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

21. **PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a)    LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b)    LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c)    On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2:00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d)    In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

6

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e)    You shall maintain in your account with LBI such minimum net equity in cash or securities as LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event : (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions, or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f)    If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g)    If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction. In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h)    You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i)    Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j)    You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder.

(k)    You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker.

7

(l)    The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22. LEGALLY BINDING.** You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any oral instruction was not in writing as may be required by any applicable law, rule or regulation. With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time. In addition, you hereby authorize Lehman Brothers to act and rely on any instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf.

**23. AMENDMENT.** You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Lehman Brothers in writing; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers.

**24. GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25. JURISDICTION; WAIVER OF JURY TRIAL.** The parties shall attempt in good faith to promptly resolve any dispute arising out of, relating to or in connection with this Agreement or any transactions hereunder by negotiations by executives of the parties who have the authority to settle the controversy. With respect to any suit, action or proceedings relating to this Agreement ("Proceedings"), each party irrevocably submits to the exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City and waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party. ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION IS HEREBY WAIVED BY ALL THE PARTIES TO THIS AGREEMENT.

**26. WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27. TRANSFERS.** Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28. PROVISION OF DATA.** With respect to any market data or other information that Lehman Brothers or any third party service provider provide to you, (i) Lehman Brothers and any such provider are not responsible or liable if any such data or information is inaccurate or incomplete in any respect; (ii) Lehman Brothers and any such provider are not responsible or liable for any actions that you take or do not take based on such data or information;

(iii) you will use such data or information solely for the purposes set forth in this Agreement and any other agreement between us; (iv) such data or information is proprietary to Lehman Brothers and any such provider and you will not retransmit or disclose such data or information to third parties except as required by applicable law or regulation; and (v) you will use such data or information solely in compliance with applicable laws, rules and regulations.

**29. EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting either directly or indirectly, therefrom.

**30. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**31. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**32. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**33. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**34. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to

9

provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the persons(s) or entity(ies) on whose behalf you are signing is/are authorized to enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies). You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

10

*PLEASE COMPLETE THIS INFORMATION AND SIGN THE APPROPRIATE SPACE BELOW:*

THIS AGREEMENT IS DATED AS OF _____, 2007

|  |  |
|---|---|
| Stonehill Institutional Partners LP | |
| *Name of Customer* | |
| 885 Third Avenue – 30th Floor | USA |
| *Address* | *Country* |
| New York, NY | 10022-4834 |
| *City, State* | *Zip Code + 4* |

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:

YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.

CUSTOMER NAME:     Stonehill Institutional Partners LP

                 *Individual or Printed Name of Company*

SIGNATURE: _____

                 *Signature of Authorized Person*

PRINT NAME:     John Motulsky, General Partner

                 *Printed Name and Title of Signatory or Name of General Partner if Signer is a Partnership*

BY: _____

                 *Authorized Signatory and Title of General Partner if Above Signer is a Partnership Otherwise Blank*

ACCEPTED AND AGREED TO:

_____

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates named herein     9 - 10 - 07

11

## EXHIBIT B

**CUSTOMER CLAIM FORM**
**LEHMAN BROTHERS INC.**

SECURITIES INVESTOR PROTECTION CORPORATION

STONEHILL INSTITUTIONAL
ACCOUNT #: 73240126
PARTNERS LP
885 THIRD AVE 30TH FL
NEW YORK NY 10022-4834

Email: _C Wilson @ Stonehillcap.com_

Daytime Phone: _212 739 7474_    Taxpayer I.D. Number

Contact Person: _Chris Wilson_    (Social Security No.): _13 - 398 2121_

# PLEASE NOTE

- A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT.

- TO BE ELIGIBLE FOR THE MAXIMUM PROTECTION AFFORDED UNDER THE SECURITIES INVESTOR PROTECTION ACT ("SIPA"), ALL CUSTOMER CLAIMS SHOULD BE RECEIVED BY THE TRUSTEE ON OR BEFORE JANUARY 30, 2009; THE TRUSTEE WILL DETERMINE WHETHER CLAIMS MEET THE STATUTORY REQUIREMENTS FOR "CUSTOMER" CLAIMS UNDER SIPA; INCLUSION OF A CLAIM OR CLAIM TYPE ON THIS CLAIM FORM IS NOT DETERMINATIVE OF CUSTOMER STATUS UNDER SIPA.

- THE DEADLINE FOR FILING ALL CLAIMS IS JUNE 1, 2009. NO CLAIM WILL BE ALLOWED IF IT IS RECEIVED AFTER THAT DATE.

- ALL CLAIMS ARE DATED AS OF THE DATE RECEIVED BY THE TRUSTEE.

- YOU MAY FILE YOUR CLAIM ELECTRONICALLY ONLINE AT WWW.LEHMANTRUSTEE.COM OR SEND YOUR COMPLETED AND SIGNED CLAIM FORM TO THE TRUSTEE VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED.

- IF YOUR ACCOUNT HAS BEEN TRANSFERRED TO ANOTHER BROKERAGE FIRM, BUT YOU BELIEVE YOU HAVE A CLAIM FOR PROPERTY OWED TO YOU BY LEHMAN BROTHERS INC., YOU MUST FILE A CLAIM TO PROTECT YOUR RIGHTS.

- LEHMAN BROTHERS INC. IS THE ONLY LEHMAN ENTITY THAT IS A DEBTOR IN THIS SIPA LIQUIDATION PROCEEDING. THIS CUSTOMER CLAIM FORM APPLIES ONLY TO LEHMAN BROTHERS INC. AND DOES NOT APPLY TO ANY OTHER LEHMAN ENTITY, INCLUDING ANY ENTITY IN A PROCEEDING UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE.

This claim form must be completed electronically online at www.lehmantrustee.com or mailed promptly, together with supporting documentation, to the following:

If by first class mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 6389
Portland, OR 97228-6389

If by overnight mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

1. **CLAIM FOR MONEY BALANCES OR CASH AS OF SEPTEMBER 19, 2008:**

   a.   LBI owes me a credit or cash in the amount of:                    $ *See Attached*

   b.   I owe LBI a debit or cash in the amount of:                        $ _____

   c.   If you wish to repay the debit balance listed in point b. above please
        insert the amount you wish to repay and attach a check payable to
        "James W. Giddens, Trustee for the SIPA Liquidation of Lehman
        Brothers Inc." If you wish to make a payment, **it must be enclosed**
        with this claim form.

                                                                            $ _____

2. **CLAIM FOR SECURITIES AS OF SEPTEMBER 19, 2008:**

   **Please Do Not Claim Any Securities You Have In Your Possession**

                                                          YES              NO
                                                       (Circle Y or N)

   a.   LBI owes me securities:                          (Y)               N

   b.   I owe LBI securities:                             Y                N

   c.   If yes to either, please list below (or in
        additional pages as necessary):

| Trade Date of Transaction (mm/dd/yyyy) | Name of Security | CUSIP | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|---|
| | | | LBI Owes Me (Long) | I Owe LBI (Short) |
| | *See attached* | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

If additional space is needed, attach additional pages providing the information in the exact
format above.

2

### 3. COMMODITY FUTURES CLAIMS

|  | YES | NO |
|---|---|---|
|  | (Circle Y or N) |  |
| Do you have a claim based on a commodity futures account? | Y | (N) |

If the answer to the above question is "yes," please state the amount, and explain the basis for your claim below, attaching additional pages and supporting documents as necessary:

Amount of Claim: _____

Basis for Claim: _____

_____

_____

_____

_____

### WHEN COMPLETING SECTIONS 1 THROUGH 3 PLEASE KEEP IN MIND:

- If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate that your claim is an estimated claim.
- Proper documentation can speed the review, allowance, and satisfaction of your claim.
- Please enclose: copies of your last LBI account statement; purchase or sale confirmation slips; copies of checks that relate to the securities or cash you claim; and any other documentation or correspondence you believe will be of assistance in processing your claim.
- Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.
- If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

### PLEASE CIRCLE THE APPROPRIATE ANSWER FOR ITEMS 4 THROUGH 11.

**NOTE:   IF "Y" IS CIRCLED FOR ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  | YES | NO |
|---|---|---|
|  | (Circle Y or N) |  |
| 4. Does your claim in any way relate to an entity other than Lehman Brothers Inc. (for example, Lehman Brothers Holdings Inc., or another Lehman subsidiary)? | Y | (N) |
| 5. Has there been any change in your account since September 19, 2008? | (Y) | N |

3

6.  Are you or were you a party to a repurchase or reverse repurchase agreement, director, officer, partner, shareholder, lender to, or capital contributor of LBI?          Y          N

7.  Are you related to, or do you have any business venture with, any of the persons specified in "6" above, or any employee or other person associated in any way with LBI? If so, give name(s).          Y          N

8.  Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of LBI?          Y          N

9.  Is this claim being filed on behalf of a customer of a broker or dealer or bank? If so, provide documentation with respect to each customer on whose behalf you are claiming.          Y          N

10. Have you ever given any discretionary authority to any person to execute securities transactions with or through LBI on your behalf? Give names, addresses and phone numbers.          Y          N

11. Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker.          Y          N

Please list the full name, address, phone number, and email address of anyone assisting you in the preparation of this claim form:

Full name: _____

Address: _____

_____

Phone number: _____

Email address: _____

If more than one person is assisting you, attach additional pages providing the information in the exact format above.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF UP TO $50,000 OR IMPRISONMENT OF UP TO FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date __January 26, 2009__          Signature _____

Date _____          Signature _____
                                     *Managing member*
                                     *Stonehill General Partner LLC,*
                                     *its General Partner*

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

4

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Lehman Brothers, Inc. | Case Number:<br>08-01420 (JMP) SIPA |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Name and address where notices should be sent:<br>1000073010 LBI 12/1/2008 *78000040141*<br>STONEHILL INSTITUTIONAL<br>PARTNERS LP 885 THIRD AVE 30TH FL<br>Telephone number: NEW YORK NY 10022-4834<br>(212) 739 -7474 | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(*If known*)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |
| **1. Amount of Claim as of Date Case Filed:**    $    See attached<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim. |
| **2. Basis for Claim:**    Customer Property<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>   3a. Debtor may have scheduled account as: _____<br>   (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:   ☐ Real Estate    ☐ Motor Vehicle    ☐ Other<br>Describe:<br><br>Value of Property:$_____    Annual Interest Rate___%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____    Basis for perfection: _____<br><br>Amount of Secured Claim: $_____    Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>**Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>Jan 26, 2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*Christopher Wilen* , managing member, Stonehill General Partner LLC<br>its General Partner | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/07) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien

documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

**_____DEFINITIONS_____**

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**_____INFORMATION_____**

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

If you would like to file a claim online please go to www.lehmantrustee.com and select the link for the online claim form. You will need the tracking number and mail id listed below to complete your claim online.

Tracking No: 50765; Mail ID: 40141



STONEHILL INSTITUTIONAL
PARTNERS LP
885 THIRD AVE 30TH FL
NEW YORK NY 10022-4834

Stonehill Capital Management LLC
885 Third Avenue, 30th Floor
New York, NY 10022
(212) 739-7474

Contacts:     Chris Wilson, Managing Member, cwilson@stonehillcap.com
              Steve Nelson, Chief Financial Officer, snelson@stonehillcap.com
              Ann Kalter, Accounting Manager, akalter@stonehillcap.com

Date: January 26, 2009

RE:     STONEHILL INSTITUTIONAL PARTNERS, L.P.
        Primary LBI account number: 732-40126

## Customer Claims in Lehman Brothers Inc. (LBI)

Stonehill Institutional Partners, L.P. (SI) was one of the largest prime brokerage clients of LBI and LBI was SI's sole prime broker. The professionals representing the LBI estate have invested long hours and have been extremely accommodating in returning the vast majority of SI's securities, and Stonehill is very appreciative of those efforts to date. However a substantial list of securities has not yet been delivered, and substantial cash has accumulated at LBI as well, which elements comprise SI's customer claim. This customer claim is supported by voluminous information; the attachments evidencing this claim are intended to provide ample support, but SI has substantial additional information that can be provided upon request.

### Securities

SI received extensive deliveries of its securities in late October and in late December/early January; however, additional securities remain at LBI. A list of securities still carried at LBI is attached as SI Exhibit A.

### Cash

SI's cash claim is presented in several components for ease of understanding:

#### Component 1 – Error in Calculation at "True-Up" Date:

In late October, 2008, at the time of the initial delivery of securities from LBI to SI, LBI's representatives performed a comprehensive analysis of SI's account and calculated

SI's cash balance to be, as of September 19, 2008, a debit amount (owed to LBI) of $1,954,955.01. SI Exhibit B includes the Summary, and Brokerage Account Statement generated by LBI and delivered to SI at that time. On October 21, 2008, SI paid that amount to the SIPC trustee, effectively zeroing out its cash balance as of September 19. However, LBI's calculation excluded "type 5" cash, and also excluded the market value of SI's short positions, but the two items do not offset equally. Closing out SI's short positions as of September 19, 2008, per the estate's October 14 protocol, results in the cost to close out shorts being less than the type 5 cash by $496,911.15 (see SI Exhibit C.) LBI thus owes SI this value difference.

Component 1 totals $496, 911.15

### Component 2 – "P&I" post September 19:

From September 19, 2008, through the date of this claim, Stonehill is aware of principal, interest and other payments on securities custodied at LBI that have flowed to LBI, as presented on SI Exhibit D.

Component 2 is comprised of the following currencies:

USD   6,291,314.60
GBP   4,308,677.21
EUR   18,681.13
CAD   177,404.17

### Component 3 – Misdirected Wires on Private Investments:

After September 19, 2008, misdirected wires flowed to LBI with respect to non-custodied instruments (private investments.) In addition, certain foreign wires were sent to LBI just before LBI's proceeding, which were never posted to Stonehill's account (it was common for foreign wires to take several days to be posted, and the LBI proceeding interrupted the finalization.) Stonehill is aware of certain of these items which are listed on SI Exhibit E.

Component 3 is comprised of the following currencies:

USD   219,087.36
EUR   51,025.28

### Component 4 – Cash Transfer in mid-September:

On September 17, 2008, two days before the SIPA proceeding, SI issued direction to LBI to transfer its securities and cash balance from LBI to an alternate prime broker. LBI demanded that SI post cash collateral in order to effect the transfer, and SI delivered

$4,500,000, which was transferred by LBI to SI account number 732-41223-1. (SI's account statement as of September 19, 2008 depicts this cash as an investment in a money market fund, however, that Lehman fund on or about that date closed itself to new investment, and the funds remained in cash as depicted on the September 30, 2008 statement.) This cash was excluded from the "true-up" described under Component 1 above, and still resides at LBI. SI Exhibit F provides supporting documentation.

Component 4 totals $4,500,000.00

## Component 5 – Incomplete Transaction re MAC Capital Purchase:

On trade date August 7, 2008 SI agreed to purchase from JP Morgan 4,000,000 MAC Capital LLC Combination SECS Membership (cusip 55291M202) for consideration of $1,310,000, by physical settlement. LBI debited cash in that amount from SI's account on August 12, 2008. Subsequent to the September 19 date of proceeding, we learned from JP Morgan that the trade had never settled: JP Morgan had not delivered the security to LBI and LBI had not paid the cash to JP Morgan. LBI must return that improperly debited cash to SI. (In late September, SI settled the trade with JP Morgan through a new prime brokerage account at Goldman Sachs, and paid the purchase price again.) Reference SI Exhibit G.

Component 5 totals $1,310,000

## Component 6 – Incomplete Transaction re US Power Generating Company:

On trade date March 27, 2008, Stonehill's two funds executed with LBI as the counterparty a negotiated sale of a private instrument: 15,130 shares of US Power Generating Company at a price of $28 per share, for total consideration of $423,640.00. Both SI and related account Stonehill Offshore Partners, Ltd (SO) were the sellers; LBI was the buyer. The trade confirmations executed at the time are attached as Exhibit H (a). It was a private transaction subject to documentation, and had not closed by the September 19, 2008 date of the LBI proceeding.

At the time of the true-up described in Component 1, LBI personnel demanded that SI pay $118,619.20 to the SIPC trustee in relation to this outstanding trade, which amount was paid on September 21, 2008. Documents prepared by LBI and presented to SI at the time of the true-up are presented as SI Exhibit H (b). LBI misunderstood the nature of this transaction - LBI incorrectly treated this private, negotiated, unclosed trade as if it were a short sale by SI in which SI had failed to deliver the security, demanding collateral in the amount paid. This payment was improper and must be returned to SI. Please note that even though this trade was by both Stonehill funds (Institutional and Offshore, as evidenced by the trade confirmations), the payment demanded at time of true up was only demanded from SI, therefore this portion of this Component 6 claim is only claimed on behalf of SI, not SO.

A second element of the claim arises from LBI's failure to close this negotiated trade.
The current market value of US Power Gen stock is $6 per share (see Exhibit H (c));
LBI's failure to close has cost Stonehill $22 per share, times 6,400 shares (SI's portion of
the trade), equals $140,800.00.

Component 6 totals $259,419.20

## Component 7 – Incomplete Transaction re Zarlink Semiconductor common:

On August 15 and August 20, 2008, SI purchased shares in Zarlink Semiconductor with
purchase prices of CAD 6,044.22 and CAD 19,882.04, for a total of CAD 25,926.26. JP
Morgan, the clearing broker on the other side of the trade, was unable to settle prior to
September 19, 2008. However, LBI debited SI's cash in these amounts at the time of
trade and never returned the funds to SI. Exhibit I provides further detail.

Component 7 totals CAD 25,926.26

## Component 8 – Forward Sales of Foreign Currencies:

Stonehill's portfolio included investments denominated in foreign currencies. To hedge
such exposure, Stonehill routinely executed under its prime brokerage agreement with
LBI forward sales of foreign currencies. Stonehill believes that no other Lehman entity
other than LBI was involved in these transactions. SI had numerous foreign currency
transactions open as of September 19, which were in a gain position because the dollar
had strengthened against the foreign currencies during the term of the contracts. A
brokerage statement listing the transactions, and their market values, and Stonehill's
summary of that brokerage statement for ease of understanding, is SI Exhibit J.

Component 8 totals $4,919,145.22

## Component 9 – Interest on Accumulated Cash Balances:

If the court determines it appropriate, interest may be payable to SI on the accumulated
cash balances which have resided at LBI. Stonehill cannot estimate the amount absent
direction regarding the appropriate interest rates and a determination of the dates and
amounts of funds received by LBI on SI's behalf.

The amount of this Component 9 claim cannot be quantified without direction from LBI
and is therefore estimated.

**Component 10 – Other Post Date of Claim and Unknown Activity:**

Other amounts may have flowed into LBI with respect to SI's custodied securities of which we are not currently aware, and it is certain that amounts will continue to flow to LBI on securities which continue to be carried at LBI after the date of this claim. SI includes these presently unquantifiable amounts in its claim. As part of this claim, SI requests that LBI provide an accounting from September 19, 2008 forward of any cash items received or due with respect to custodied securities or other customer property of SI.

With regard to private investments, SI has no comprehensive way of determining what payments have flowed into LBI referencing Stonehill's account number or name. Considering Stonehill's distressed investing strategy, Stonehill's portfolio includes many private instruments which have irregular and unpredictable distribution dates, often without notice to us other than information conveyed by the wire transfer itself. As part of this claim, SI requests that LBI provide an accounting from September 19, 2008 forward of any cash items referencing any of the Stonehill accounts, and any Stonehill entity name, and SI includes all such presently unquantifiable amounts in its claim.

The amount of this Component 10 claim cannot be quantified and is therefore estimated.

**End of Document**

Stonehill Institutional Partners, L.P. - Exhibit A

| Fund | LEHM A/C # | Internal ID | LEHM ID | CUSIP/CINS | ISIN | SEDOL | Description | Expected Quantity | Notes |
|---|---|---|---|---|---|---|---|---|---|
| Institutional | 732-40126 | BTDPF | 0081180 | G08288I105 | GB0000811801 | 0081180 | BARRATT DEVELOPMENTS PLC | 2,569,067.00 | |
| Institutional | 732-40126 | 5666251 | US125568AB14 | 125568AB1 | US1255568AB14 | B0WMZ86 | CIT GROUP FUNDING CO CDA SR NT R/MD 4.65 07/01/2010 | 450,000.00 | |
| Institutional | 732-40126 | CORE | CORE | 218681004 | US2186811046 | B067TB2 | CORE MARK HOLDING CO INC | 9,357.00 | ✓ |
| Institutional | 732-40126 | 5197153 | 247361VK1 | 247361VK1 | US247361VK19 | | DELTA AIR LINES INC DEL 144A R/MD 10.33 03/26/2006 | 1,601,000.00 | |
| Institutional | 732-40126 | 5204979 | 247361VM7 | 247361VM7 | US247361VM74 | | DELTA AIR LINES INC DEL 90E 144A10.33%06 R/MD 10.33 03/26/2006 | 1,801,000.00 | |
| Institutional | 732-40126 | 5648314 | 247361VX3 | 247361VX3 | US247361VX30 | | DELTA AIR LINES INC DEL 90E 144A10.79%14 R/MD 10.79 03/26/2014 | 5,000,000.00 | |
| Institutional | 732-40126 | DAL | DAL | 247361702 | US2473617023 | B1W9D46 | DELTA AIR LINES INC DEL COM NEW | 262,805.00 | ✓ |
| Institutional | 732-40126 | 5649514 | 247361VL9 | 247361VL9 | US247361VL91 | | DELTA AIR LINES INC DEL EQUIP TR CTF SER 1990 D R/MD 10.33 03/26/2049 | 801,000.00 | |
| Institutional | 732-40126 | 5239485 | 247367AE5 | 247367AE5 | US247367AE57 | | DELTA AIR LINES INC PASS THRU CTF SER 1993-A CL A1R/MD 9.875 04/30/2008 | 12,000,000.00 | ✓ |
| Institutional | 732-40126 | 5446359 | U29302AGB | U29302AGB | XS0130764649 | 2769257 | DRESDNER FUNDING TR I R/MD .678 06/15/2024 | 200,000,000.00 | |
| Institutional | 732-40126 | F006921 | 301990719 | 301990719 | US3019907191 | | FCLT LOANS ACCESS (REST) DTC CUSIP | 109,941.00 | |
| Institutional | 732-40126 | FRCPF | B04QZ20 | 359043106 | CA3590431068 | B04QZ20 | FRONTERA COPPER CORPORATION | 93,305.00 | |
| Institutional | 732-40126 | 5BBGFL9 | CA37047ZBM01 | 37047ZBM0 | CA37047ZBM01 | B3CZYW3 | GENERAL MOTORS ACCEPTANCE CORP OF CANADA LTD R/MD 4.72143 05/22/2009 | 14,590,000.00 | |
| Institutional | 732-40126 | HOV | HOV | 442487203 | US4424872038 | 2437167 | HOVNANIAN ENTERPRISES INC-CL A | 472,500.00 | ✓ |
| Institutional | 732-40126 | 5082870 | U48787AA0 | U48787AA0 | USU48787AA09 | | KELLSTROM INDUSTRIES INC CONV SUB NOTES REG S R/MD 5.25 10/15/2049 | 500,000.00 | |
| Institutional | 732-40126 | LEHJO | LEHJO | 52520W317 | US52520W3170 | B2PJYC5 | LEHMAN BROS HLDGS INC DEP SH REPSTG 1/100TH 7.95% PERP PFD SER J | 52,218.00 | ✗ partial |
| Institutional | 732-40126 | 5BBNND6 | 55265AAN1 | 55265AAN1 | US55265AAN19 | | MAC CAPITAL LTD SER 2007-1 CL B-2L 144A/2C7 R/MD 7.045 07/26/2023 | 4,950,000.00 | ✗ |
| Institutional | 732-40126 | 5BBRZC1 | 575379AE2 | 575379AE2 | US575379AE24 | B246YN8 | MASONITE CORP SR SUB NT R/MD 11.00 04/06/2015 | 7,830,000.00 | |
| Institutional | 732-40126 | 5936439 | H59118AB7 | H59118AB7 | CH0001168647 | 4660994 | OMNI HOLDINGS AG R/MD 6.00 12/31/2049 | 1,517,420.00 | |
| Institutional | 732-40126 | 5277207 | XS0108329771 | XS0108329771 | XS0108329771 | 5963045 | PSINET INC EURO SERIES R/MD 10.50 12/01/2006 | 10,725,000.00 | ✗ |
| Institutional | 732-40126 | 5253609 | 69363VAD9 | 69363VAD9 | XS0101939940 | 5820753 | PSINET INC SER EUR SR NOTES EURO SER R/MD 11.00 08/01/2009 | 9,529,000.00 | |
| Institutional | 732-40126 | PDCEF | B0391F5 | Y7144Y134 | ID1000099401 | B0391F5 | PT SIERAD PRODUCE TBK SHS SERIES A | 36,557,577.00 | |
| Institutional | 732-40126 | 5239929 | 76113BAF6 | 76113BAF6 | US76113BAF67 | B0NKNH4 | RESIDENTIAL CAP CORP NT 7.375%ON 08/18/2007 R/MD 8.375 06/30/2010 | 2,337,000.00 | ✗ |
| Institutional | 732-40126 | RMDGF | RMDGF | N74108106 | ANN74108I064 | 2967879 | RETAIL HOLDINGS N V | 386,878.00 | |
| Institutional | 732-40126 | 5263095 | XS0108136465 | 74972EAP3 | XS0108136465 | | RSL COMMUNICATION LTD R/MD 12.875 03/01/2049 | 2,000,000.00 | ✗ |
| Institutional | 732-40126 | 5332712 | XS0118391936 | N5639BAC2 | XS0118391936 | 4471776 | SAIRGROUP FINANCE R/MD 6.625 10/06/2010 | 35,543,000.00 | ✗ |
| Institutional | 732-40126 | 5449494 | CH0001207635 | H83970AJ4 | CH0001207635 | 4851970 | SAIRGROUP R/MD 09/10/2049 | 1,750,000.00 | ✗ |
| Institutional | 732-40126 | SGLP | SGLP | 81662W108 | US81662W1080 | B1YWTJ0 | SEMGROUP ENERGY PARTNERS L P COM UNIT REPSTG LTD PARTNERSHIP | 77,800.00 | ✓ |
| Institutional | 732-40126 | 5093597 | XX5093597000 | | | | SOUTHEAST BANKING CORP STAMPED CERTIFICATES R/MD 5.25 11/12/1997 | 1,260,000.00 | |
| Institutional | 732-40126 | 5596001 | 841338AF3 | 841338AF3 | US841338AF37 | | SOUTHEAST BANKING CORP-FRN CPN LIBOR +12.5 R/MD 5.25 11/12/1997 | 1,088,000.00 | |
| Institutional | 732-40126 | 5551644 | 841338AD8 | 841338AD8 | US841338AD88 | | SOUTHEAST BKG CORP SUB NT REG R/MD 10.50 04/11/2001 | 4,132,000.00 | |
| Institutional | 732-40126 | T104832 | CA87941T9720 | 87941T972 | CA87941T9720 | | TELEGLOBE CANADA INC TEMP 8% 10/23/2026 | 12,000,000.00 | |
| Institutional | 732-40126 | 9N44093 | XX9N44093000 | | | | TELEGLOBE INC UNSECURED DEBENTURE IN DEFAULT R/MD 8.35 06/20/2003 | 2,000,000.00 | |
| Institutional | 732-40126 | LCC | LCC | 90341W108 | US90341W1080 | B0LGKM8 | US AIRWAYS GROUP INC | 809,010.00 | |
| Institutional | 732-40126 | 5262134 | 98141AAD3 | 98141AAD3 | US98141AAD3 | | WORLD ACCESS INCDTD 12/08/199913.230% 01/15/2008CALLABLEIN DEFAULT | 58,995.00 | adjust all then too much |
| Institutional | 732-40126 | 5337735 | 92923CAP9 | 92923CAP9 | US92923CAP95 | B0CNGL7 | WCI CMNTYS INC SR SUB NT R/MD 6.625 03/15/2015 | 11,220,000.00 | |
| Institutional | 732-40126 | 5489304 | 92923CAG9 | 92923CAG9 | US92923CAG96 | 2959951 | WCI COMMUNITIES INC GTD SENIOR SUB NOTE 9.12500% 5/1/2012 92923CAG9 | 14,355,000.00 | |
| Institutional | 732-40126 | WAMPQ | WAMPQ | 939322814 | US9393228146 | B29ZSY8 | WASHINGTON MUTUAL INC 7.75% SERIES R NON CUMULATIVE PERPETUAL CONV | 6,480.00 | ✓ |
| Institutional | 732-40126 | 2EARL7 | 2597102 | 989139100 | CA9891391000 | 2597102 | ZARLINK SEMICONDUCTOR INC | 2,132,354.00 | pos free Lehman knows qty of 2,164,484 - difference is unsettled trades. Return cash of CAD 25,92.. |
| Institutional | 732-40126 | U36240AF3 | U36240AF3 | U36240AF3 | | | GMAC LLC 7.5% 12/31/2013 PVT | 829,000.00 | Received from reorg on CUSIP # 76113BAF6 |
| Institutional | 732-40126 | U36240AC0 | U36240AC0 | U36240AC0 | | | GMAC LLC 8.0% 12/31/2013 PVT REGS | 945,000.00 | cover Received from reorg on CUSIP # 76113BAF6 |
| Institutional | 732-40126 | 5BDNVY1 | 98951UAJ5 | 98951UAJ5 | US9895IUAJ51 | | ZIFF DAVIS MEDIA INC SR SECD NT FLTG RATE NEW | 86,954.00 | 2 PIK Payments post Lehman bankruptcy |
| Institutional | 732-40126 | M017061 | US55291M2026 | 55291M202 | US55291M2026 | | MAC CAPITAL LLC COMBINATION SECS MEMBERSHIP INT | 9,656,000.00 | Lehman knows qty of 13,656,000 - difference is unsettled trade. Return cash of USD 1,310,000... |
| Institutional | 732-40126 | 5446109 | U29302AH6 | U29302AH6 | XS0130765026 | 2766009 | ENRON CORP R/MD .77 06/18/2008 | 1,080,000,000.00 | Removed by Lehman, but there will be future distributions |
| Institutional | 732-40126 | 5142821 | 74437CAB7 | 74437CAB7 | | | PSINET INC SENIOR NOTES SER B- IN DEFAULT 10.00000% 02/15/2005 74437CAB7 | 66,962,000.00 | Removed by Lehman, but there will be future distributions |
| Institutional | 732-40126 | 5273979 | 74437CAG6 | 74437CAG6 | | | PSINET INC SR NOTE - IN DEFAULT 10.50000% 12/01/2006 74437CAG6 | 139,215,000.00 | Removed by Lehman, but there will be future distributions |
| Institutional | 732-40126 | 5200900 | 74437CAD3 | 74437CAD3 | | | PSINET INC SR NTS *IN DEFAULT* 11.50000% 11/01/2008 74437CAD3 | 120,505,000.00 | Removed by Lehman, but there will be future distributions |
| Institutional | 732-40126 | 5253156 | 69363VAB3 | 69363VAB3 | | | PSINET INCORPORATED SR NTE- IN DEFAULT 11.00000% 08/01/2009 69363VAB3 | 163,598,000.00 | Removed by Lehman, but there will be future distributions |

Page 1 of 1

S I Exhibit B

Margin Summary COB 9-19-08

### TOTAL COLLATERAL

| | |
|---|---:|
| TOTAL LMV TYPE 1 LONG POSITIONS (US$) | 247,628,399.86 |
| TOTAL LMV TYPE 1 LONG POSITIONS (C$ value converted to US$) | 12,665,241.29 |
| TOTAL LMV TYPE 1 LONG POSITIONS (BP value converted to US$) | 1,391,562.39 |
| TOTAL LMV TYPE 1 LONG POSITIONS (EM value converted to US$) | 2,882,116.28 |
| TOTAL LMV TYPE 1 LONG POSITIONS (JY value converted to US$) | 0.00 |
| | |
| TOTAL LMV TYPE 2 LONG POSITIONS (US$) | 35,882,711.62 |
| TOTAL LMV TYPE 2 LONG POSITIONS (C$ value converted to US$) | 366,954.14 |
| TOTAL LMV TYPE 2 LONG POSITIONS (BP value converted to US$) | 0.00 |
| TOTAL LMV TYPE 2 LONG POSITIONS (EM value converted to US$) | 0.00 |
| TOTAL LMV TYPE 2 LONG POSITIONS (JY value converted to US$) | 0.00 |
| | |
| **TOTAL USD DELIVERABLE COLLATERAL** | **283,511,111.48** |

| | |
|---|---:|
| TYPE 1 CASH (US$) | 44,841.22 |
| TYPE 1 CASH C$ (value converted to US$) | 0.00 |
| TYPE 1 CASH BP (value converted to US$) | 0.00 |
| TYPE 1 CASH JY (value converted to US$) | 0.01 |
| TYPE 1 CASH EM (value converted to US$) | 0.00 |
| | |
| TYPE 2 CASH JY (value converted to US$) | 0.00 |
| TYPE 2 CASH EM (value converted to US$) | 604,087.35 |
| | |
| **TOTAL USD CASH COLLATERAL** | **44,841.22** |

### TOTAL EXPOSURES

| | |
|---|---:|
| TYPE 2 DEBIT BALANCE (USD) | 1,871,130.80 |
| TYPE 2 DEBIT BALANCE (C$ converted to US$) | 723,727.32 |
| TYPE 2 DEBIT BALANCE (BP converted to US$) | 9,025.47 |
| | |
| **TOTAL EXPOSURE** | **2,603,883.59** |

| | |
|---|---:|
| **TOTAL COLLATERAL NEEDED TO COVER EXPOSURE** | **1,954,955.01** |

| | |
|---|---:|
| **TOTAL VALUE OF COLLATERAL AVAILABLE FOR DELIVERY** | **298,862,030.57** |
| **TOTAL CASH AVAILABLE FOR PAYMENT** | **0.00** |

\*\*Note: Proceeds generated from the close out of shorts will result in a cash in lieu claim

08-13555-scc    Doc 45573-39 (A-39 - Institutional LBHI)    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit

```
BMR56    CLIENT 012                        MARGIN ACTIVITY STATEMENTS              09/19/08         PAGE 93785
732-40126   RR: H81 STONEHILL INSTITUTIO          CURR-CODE: 000
- - - - - -BALANCES - - - - - - - -
TC        OPEN T/D BAL        CLOSE T/D BAL      OPEN S/D BAL       CLOSE S/D BAL     MARKET VALUE     DLA
11        31,325.32-          44,841.22-          31,325.32-        44,841.22-       247,628,399      09/19/08
29        318,177.27-        1,871,130.80        1,820,428.08-      4,009,736.15      35,882,711      09/19/08
37        462.00             462.00              462.00            462.00            00              09/19/08
52        59,577,263.33-     61,766,571.40-      59,577,263.33-    61,766,571.40-    61,248,498-      09/19/08
T         59,926,303.92-     59,939,819.82-      57,787,698.57-    57,801,214.47-    222,262,611

- - - - - -ACTIVITY - - - - - - - -
TC S/DTE      LONG/SHORT(-)     DESCRIPTION            CUSIP/SEC     PRICE/ENT   T/D  TRD #   DEBIT/CREDIT(-)
11 09/19                        xxxSAIR GROUP FINANCE B V      INT         09/19            1,637,953.46
                                DUE 06/08/2006    4.375    5196207
                                REV ENTRY OF 5-30 DUE TO
                                INCORRECT FX
11 09/19                        xxxSAIR GROUP FINANCE B V      INT         09/19            1,651,469.36-
                                DUE 06/08/2006    4.375    5196207
                                REC 5/16/08 PAY 5/28/08
                                ON 19357000 BDS
29 09/19                        MARK TO MARKET                 MKT MS      09/19            2,189,308.07
52 09/19                        MARK TO MARKET SHORT POS       MKT MS      09/19            2,189,308.07-
- - - - - -POSITIONS - - - - - - - -
TC  LDA       LONG/SHORT(-)  SECURITY DESCRIPTION       CUSIP/SEC     PRICE       MARKET VALUE    MARGIN REQUIREMENT
11 091908            1.0000  ACAT DELIVERY IN PROGRESS  XXA0009280    0.00000           0                   0
                             DO NOT TRANSFER SECURITIES A000928
11 091708       563,825.0000 ACACIA RESEARCH - ACACIA   0038813070    4.38000       2,469,553           1,691,475
                             TECHNOLOGIES               A013707  SB   563,825.0000
11 122107       372,301.0000 ABOVENET INC               00374N1070   54.03000H      20,115,423          20,115,423
                                                        A014448  SB   372,301.0000
11 031808        61,288.0000 AMERICAN RICE INC          0293209910    0.00000H           0                   0
                             ESCROW CUSIP               A015124  SB    61,288.0000
11 031808        40,000.0000 WTS ABOVENET INC           00374N1230   31.00000H       1,240,000            372,000
                                                        A014448  SB    40,000.0000
11 031808     5,301,739.0000 ADELPHIA RECOVERY TRUST SERIES 00685R1020 0.40000H      2,120,695           2,120,695
                             ARAHOVA INT                A020354  SB   5,301,739.0000
11 092707         2,275.0000 ARVIDA/JMB PARTNERS LP     0432871010    0.00000              0                   0
                             UNITS LTD PARTNERSHIP INT  A753090  SK    2,275.0000
11 091708     2,569,067.0000 xxxBARRATT DEVELOPMENTS PLC G082881050   2.71700H       6,980,155           6,980,155
                                                        B137756  SB   2,569,067.0000
11 092507       260,300.0000 COMFORCE CORP              20038K1090    1.99000         517,997             517,997
                                                        C000344  SB    260,300.0000
11 091208         4,837.0000 COMDISCO HOLDING COMPANY INC 2003341000  9.80000H        47,402              47,402
                                                        C012108  SB    4,837.0000
11 031808         9,810.0000 CATTLESALE COMPANY         1494791070    0.00000H            0                   0
                                                        C012394  SB    9,810.0000
```

08-13555-scc    Doc 45573-39   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
(A-39 - Institutional LBHI)   Pg 42 of 89

| BMR56   CLIENT 012 | | MARGIN ACTIVITY STATEMENTS | | | 09/19/08 | PAGE 93786 |
| 732-40126   RR: H81 STONEHILL INSTITUTIO | | CURR-CODE: 000 | | | | |
| TC  LDA | LONG/SHORT(-) | SECURITY DESCRIPTION | CUSIP/SEC | PRICE | MARKET VALUE | MARGIN REQUIREMENT |
|---|---|---|---|---|---|---|
| 11  043008 | 107,382.0000 | xxxCAPEX SA-ORD | P2006N1020 | 1.47292H | 158,165 | 158,165 |
| | | AF 1 PAR | C080316   SB | 107,382.0000 | | |
| 11  031808 | 58.0000 | DECISIONONE CORP NEW | 2434671080 | 0.00000H | 0 | 0 |
| | | | D004752   SB | 58.0000 | | |
| 11  111607 | 109,941.0000 | FCLT LOANS ASSET (REST) | 3019907190 | 0.00000H | 0 | 0 |
| | | DTC CUSIP | F006921   SB | 109,941.0000 | | |
| 11  031808 | 93,305.0000 | xxxFRONTERA COPPER CORPORATION | 3590431060 | 1.53675 | 143,386 | 143,386 |
| | | | F104640   SB | 93,305.0000 | | |
| 11  111607 | 109,941.0000 | FIRSTCITY LIQUIDATING TRUST | 33762E1080 | 0.00000 | 0 | 0 |
| | | CL B CBI | F393773   SB | 109,941.0000 | | |
| 11  092707 | 27,548.0000 | xxxGUANGDONG ALLIANCE | G418151040 | 0.00000H | 0 | 0 |
| | | SHS | G005001   SK | 27,548.0000 | | |
| 11  092707 | 10,468.0000 | xxxGH WATER SUPPLY HL | G3B5411010 | 0.00000H | 0 | 0 |
| | | SHS | G005020   SK | 10,468.0000 | | |
| 11  092707 | 318,047.0000 | xxxGUANGDONG INVESTMENT LTD | Y2929L1000 | 0.29500H | 93,823 | 0 |
| | | H60.50 PAR | G609050   SK | 318,047.0000 | | |
| 11  111607 | 7,054.0000 | WTS ICG COMMUNICATIONS INC | 4492461150 | 0.00000H | 0 | 0 |
| | | | H011304   SB | 7,054.0000 | | |
| 11  091608 | 426,211.0000 | HOVNANIAN ENTERPRISES INC-CL A | 4424872030 | 9.05000 | 3,857,209 | 1,928,604 |
| | | | H394718   SB | 426,211.0000 | | |
| 11  091608 | 1,866,236.0000 | KGEN PWR CORP | 49373X1030 | 0.00000H | 0 | 0 |
| | | COM 144A | K003938   SB | 1,866,236.0000 | | |
| 11  121307 | 76.0000 | KAANAPALI LAND LLC | 48282H3080 | 30.51000H | 2,318 | 2,318 |
| | | | K004397   SB | 76.0000 | | |
| 11  091608 | 52,218.0000 | LEHMAN BROS HLDGS INC | 52520W5170 | 0.11000H | 5,743 | 5,743 |
| | | DEP SH REPSTG 1/100TH 7.95% | L008500   SB | 52,218.0000 | | |
| 11  081308 | 13,656,000.0000 | xxxMAC CAPITAL LLC | 55291M2020 | 0.00000H | 0 | 0 |
| | | COMBINATION SECS MEMBERSHIP | M017061   SB | 13,656,000.0000 | | |
| 11  060608 | 314,578.0000 | NEENAH ENTERPRISES INC | 64007P1030 | 1.55000H | 487,595 | 487,595 |
| | | | N009197   SB | 314,578.0000 | | |
| 11  112107 | 57,444.0000 | WTS NEENAH ENTERPRISES INC | 64007P1110 | 0.00000 | 0 | 0 |
| | | | N009546   SB | 57,444.0000 | | |
| 11  031808 | 20,069.0000 | PATENT LITIGATION TR | 7030441070 | 0.00050H | 10 | 10 |
| | | BENEFICIAL TRUST INTERESTS | P011578   SB | 20,069.0000 | | |
| 11  092507 | 36,557,577.0000 | xxxPT SIERAD PRODUCE TBK | Y7144Y1340 | 0.00532H | 194,486 | 194,486 |
| | | SHS SERIES A | P017046   SB | 36,557,577.0000 | | |

08-13555-scc   Doc 45573-39   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
(A-39 - Institutional   LBHI)   Pg 43 of 89

```
BMR56    CLIENT 012                  MARGIN ACTIVITY STATEMENTS            09/19/08      PAGE 93787
732-40126    RR: H81 STONEHILL INSTITUTIO      CURR-CODE: 000
TC  LDA        LONG/SHORT(-) SECURITY DESCRIPTION      CUSIP/SEC      PRICE      MARKET VALUE      MARGIN REQUIREMENT
11  091508      386,878.0000  xxxRETAIL HOLDINGS N V         N741081060    8.00000H       3,095,024          3,095,024
                                                            R005483   SB      386,878.0000
11  092507    5,999,544.0000  SUNSHINE MNG & REFNG COMPANY   8678336000    0.00000H            0                  0
                              PAR X0.01                      S011728   SB    5,999,544.0000
11  082908       77,800.0000  SEMGROUP ENERGY PARTNERS L P   81662W1080    8.39000        652,742            195,822
                              COM UNIT REPSTG LTD PARTNERSHP S019821   SB       77,800.0000
11  031808       99,500.0000  3DFX INTERACTIVE INC           88553X1030    0.01700H        1,691              1,691
                                                            T001118   SB       99,500.0000
11  091708       10,800.0000  xxxTRANSOCEAN INC              G900751000  125.40000H     1,354,320            406,296
                              NEW                            T010389   SB       10,800.0000
11  031808      200,000.0000  xxxTHUNDERBIRD RESORTS INC     88605P1080    0.00000H            0                  0
                              COM 144A                       T010488   SB      200,000.0000
11  031808   12,000,000.0000  xxxTELEGLOBE CANADA INC        87941T9720    0.00000             0                  0
                              TEMP 8X 10/23/2026             T104832   SB   12,000,000.0000
11  090908       37,204.0000  xxxTHUNDERBIRD RESORTS INC     G8857610 60   5.50000H        204,622            204,622
                              NEW                            T106117   SB       37,204.0000
11  091108      108,000.0000  US AIRWAYS GROUP INC           90341W1080    7.91000        854,280            256,284
                                                            U003620   SB      108,000.0000
11  051508          164.0000  xxxVIATEL HOLDING BERMUDA      G934471110    1.00000H          164                164
                              LIMITED NEW                    V004215   SB          164.0000
11  031808      134,303.0000  WTS WEBLINK WIRELESS           94769A1190    0.00000             0                  0
                                                            W003885   SB      134,303.0000
11  091008        6,480.0000  WASHINGTON MUTUAL INC          9393228140  335.00000H     2,170,800            651,240
                              7.75% SERIES R NON CUMULATIVE  W005336   SB        6,480.0000
11  091708      356,875.0000  xxxZARLINK SEMICONDUCTOR INC   9891391000    0.49000        174,868            174,868
                                                            Y001713   SB      356,875.0000
11  092507      120,000.0000  FULTON CNTY GA DEV AUTH SPL    36099ACJ00    0.00000             0                  0
                              FACS REV DELTA AIRLINES INC    3BBWTX8   SB      120,000.0000
                              DUE 05/01/2013      5.300%
11  092507      500,000.0000  NEW YORK N Y CITY INDL DEV AGY 64999BJL90    0.00000             0                  0
                              SPL FAC REV NORTHWEST AIRLINES 3BBZCT2   SB      500,000.0000
                              DUE 06/01/2027      6.000%
11  031808    1,295,000.0000  DAUPHIN CNTY PA GEN AUTH REV   2382592650    0.00000H            0                  0
                              OFFICE & PKG-FORUM PL-SER A    3450402   SB    1,295,000.0000
                              DUE 01/15/2025      6.000%
11  092507    1,000,000.0000  MEMPHIS TN HLTH EDL&HSG FAC    586169AN40    0.00000H            0                  0
                              BRD MFHR SECTZED-A-INVT AGHT   3502020   SB    1,000,000.0000
                              DUE 12/15/2049
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional LBHI)    Pg 44 of 89

```
BMR56     CLIENT 012                    MARGIN ACTIVITY STATEMENTS              09/19/08         PAGE  93788
732-40126   RR: HB1 STONEHILL INSTITUTIO       CURR-CODE: 000
TC  LDA        LONG/SHORT(-) SECURITY DESCRIPTION      CUSIP/SEC      PRICE      MARKET VALUE      MARGIN REQUIREMENT
11  031808        9,294.0000 MOBILE ALA INDL DEV BRD SOLID 607168AY70  0.00000H          0                   0
                             WSTE DISP RV REF-MOBILE ENERGY 3681870   SB      9,294.0000
                             DUE 01/01/2020    6.950%
11  080108      250,000.0000 WWWFCE BANK PLC           G33365SS00 107.62042H    269,051              121,072
                             EURO MEDIUM TERM NOTE      5BBDQY5  SB      250,000.0000
                             DUE 01/15/2013    7.125%
11  041008    4,500,000.0000 CIT GROUP INC             12560PEA50  99.31400H  4,469,130            1,340,739
                             MEDIUM TERM SR NTS        5BBDTK4  SB    4,500,000.0000
                             DUE 10/27/2008    2.905%
11  031808      450,000.0000 STANFIELD VICTORIA FIN LTD MTN 85431AFH50  0.00000H          0                   0
                             VR 032406-032509          5BBFSB4  SB      450,000.0000
                             DUE 03/25/2009
11  092507   25,937,000.0000 CROWN PAPER CO            2284499A40  0.00000          0                   0
                             SR SUB NOTES -ESCROW CUSIP- 5B8KJQ7  SB   25,937,000.0000
                             DUE 09/01/2005   11.000%
11  060608      540,000.0000 NEENAH CORP               640071AR70  76.62500      413,775              186,198
                             SR SECD NT                5BBKVC2  SB      540,000.0000
                             DUE 01/01/2017    9.500%
11  071008    4,050,000.0000 GMACM HOME EQUITY LOAN TRUST 36186KAD70  37.97255H  1,537,888            1,537,888
                             MTGPC/SERIES 2007-HE1 A-4-VAR 5BBKVN8  SB    4,050,000.0000
                             DUE 08/25/2037    5.952%
11  122007    4,950,000.0000 MAC CAPITAL LTD           55265AAN10  0.00000          0                   0
                             SER 2007-1 CL B-2L 144A/3C7 5BBNND6  SB    4,950,000.0000
                             DUE 07/26/2023    7.045%
11  080108    4,050,000.0000 GMACM HOME EQUITY LN TR    36186LAG80  46.66422H  1,889,900            1,889,900
                             SERIES 2007-HE2 CLASS A6   5BBQTY6  SB    4,050,000.0000
                             DUE 12/25/2037    6.249%
11  090808    4,429,080.0000 GMACM HOME EQUITY LN TR    36186LAB90  48.83500H  2,162,941            2,162,941
                             SERIES 2007-HE2 CLASS A2   5BBQTZ6  SB    4,429,080.0000
                             DUE 12/25/2037    6.054%
11  073008   21,330,000.0000 GMACM HOME EQUITY LN TR    36186LAD50  32.07718H  6,842,062            6,842,062
                             SERIES 2007-HE2 CLASS A4   5BBQTZ9  SB   21,330,000.0000
                             DUE 12/25/2037    6.424%
11  080108   18,090,000.0000 GMACM HOME EQUITY LN TR    36186LAC70  48.54300H  8,781,428            8,781,428
                             SERIES 2007-HE2 CLASS A3   5BBQVB1  SB   18,090,000.0000
                             DUE 12/25/2037    6.193%
11  091708    7,830,000.0000 MASONITE CORP             575379AE20  23.00000H  1,800,900            1,800,900
                             SR SUB NT                 5BBRZC1  SB    7,830,000.0000
                             DUE 04/06/2015   11.000%
11  060908    1,188,000.0000 STANDARD PACIFIC CORP      853763AA80  93.37500  1,109,295              332,788
                             CVT SENIOR SUB NOTES       5BCCLN9  SB    1,188,000.0000
                             DUE 10/01/2012    6.000%
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 45 of 89

```
BMR56    CLIENT 012                        MARGIN ACTIVITY STATEMENTS        09/19/08        PAGE 93789
732-40126    RR: H&1 STONEHILL INSTITUTIO      CURR-CODE: 000
TC LDA       LONG/SHORT(-)  SECURITY DESCRIPTION    CUSIP/SEC     PRICE       MARKET VALUE      MARGIN REQUIREMENT
11 090308    20,233,000.0000  PHH MORTGAGE TRUST         69337YAE40   80.37500H      13,277,711          13,277,711
                              SER 2007-SL1 CLASS TAGS 144A  5BCLLC0  SB   20,233,000.0000  AMORTIZED AMOUNT 16519,702.66
                              DUE 12/25/2027    6.600%
11 031808      850,000.0000  XXNSTANFIELD VICTORIA      G8439CAN00   0.00000H             0                   0
                              EURO MEDIUM TERM NOTE       5BCSLJ0  SB     850,000.0000
                              DUE 03/28/2008
11 080408    26,475,000.0000  RESIDENTIAL CAP LLC        76114EAE20   62.00000H     16,414,500          16,414,500
                              SR SECD NT                  5BDGWP4  SB   26,475,000.0000
                              DUE 05/15/2010    8.500%
11 061608     5,400,000.0000  STANFIELD VICTORIA FIN LTD 85431AJH00   0.00000              0                   0
                              MEDIUM TERM NTS144A 3C7     5BDHSQ5  SB    5,400,000.0000
                              DUE 01/25/2008
11 082808     8,255,000.0000  CAPMARK FINL GROUP INC SR NT 140661AD10 76.93300      6,350,819           1,905,245
                              FLT 10                      5BDKMR1  SB    8,255,000.0000
                              DUE 05/10/2010    3.452%
11 081108     2,150,000.0000  ZIFF DAVIS MEDIA INC       98951UAJ50   0.00000H             0                   0
                              SR SECD NT FLTG RATE NEW    5BDNVY1  SB    2,150,000.0000
                              DUE 05/01/2012
11 071808     8,515,000.0000  ZIFF DAVIS MEDIA INC       989ESC9910   0.00000H             0                   0
                              SR SECD NT - ESCROW CUSIP - 5BDNVZ6  SB    8,515,000.0000
                              DUE 05/01/2012
11 081208      167,000.0000  MONTANA POWER CO            612MMI8A90   0.00000               0                   0
                              - TENDER OFFER -            5BDQMJ0  SB      167,000.0000
                              DUE 12/21/2026    7.960%
11 080808      278,000.0000  MMMONTANA POWER CO          612MMI9C40   0.00000               0                   0
                              - CONTRA CUSIP -            5BDQNT2  SB      278,000.0000
                              DUE 12/23/2026
11 082008      162,000.0000  MONTANA POWER CO            612MMI9B60   0.00000               0                   0
                              - TENDER OFFER -            5BDQPD8  SB      162,000.0000
                              DUE 12/20/2006    7.070%
11 081108     8,807,000.0000  CB NORTHWESTERN CORP       66899ABG60   0.00000               0                   0
                              -CONTRA CUSIP-              5BDQSC5  SB    8,807,000.0000
                              DUE 03/15/2007    7.875%
11 082008    11,654,000.0000  NORTHWESTERN CORPORATION   66899ABF80   0.00000               0                   0
                              SENIOR DEBENTURE           5BDRLG4  SB   11,654,000.0000
                              DUE 11/15/2028    6.950%
11 081108     5,937,000.0000  NORTHWESTERN CORP          66899ABH40   0.00000               0                   0
                              -CONTRA CUSIP-             5BDXBS2  SB    5,937,000.0000
                              DUE 03/15/2012    8.750%
11 091208     4,050,000.0000  VICTORIA FIN LTD 144A VR   9262G0AL30   0.00000               0                   0
                              090908-121208             5BFBPV0  SB    4,050,000.0000
                              DUE 12/12/2008
```

08-13555-scc   Doc 45573-39   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
(A-39 - Institutional   LBHI)   Pg 46 of 89

```
BHR56    CLIENT 012                          MARGIN ACTIVITY STATEMENTS              09/19/08          PAGE 93790
732-40126     RR: H81 STONEHILL INSTITUTIO         CURR-CODE: 000
TC LDA       LONG/SHORT(-) SECURITY DESCRIPTION       CUSIP/SEC      PRICE      MARKET VALUE        MARGIN REQUIREMENT
11 091208      900,000.0000 VICTORIA FIN LTD 144A VR    9262G0AF60  0.00000              0                    0
                            090908-021709              5DFBRQ5  SB    900,000.0000
                            DUE 02/17/2009
11 031808    3,956,000.0000 GREEN TREE FINL CORP        39350SUY60  0.00000H             0                    0
                            SER 1997-4 MFD HSG SR/SUB   5C48250  SB  3,956,000.0000 AMORTIZED AMOUNT   2226,558.17
                            DUE 02/15/2029     7.730%
11 031808      680,000.0000 GREENTREE FINANCIAL         39350SYC00  0.00000H             0                    0
                            CORPORATION MTGPC/SERIES    5C58202  SB   680,000.0000 AMORTIZED AMOUNT    381,783.31
                            DUE 10/15/2029     7.750%
11 060308    7,000,000.0000 NPV VI INC 1998-2 HEALTH    62936EAF50  0.00000H             0                    0
                            CARE RCVBLES NT             5C98570  SB  7,000,000.0000
                            DUE 05/01/2004     6.100%
11 090908    4,725,000.0000 GMACH HOME EQUITY LOAN TRUST 361856CV70 52.93800H     2,231,508            2,231,508
                            MTGPC/SERIES 2004-HE1 A-3-VAR 5F23941 SB  4,725,000.0000 AMORTIZED AMOUNT  4215,324.69
                            DUE 06/25/2034     2.681%
11 082508   10,503,000.0000 RESIDENTIAL FDG MTG SECS II  76110VSQ20 99.65760H     1,671,287            1,671,287
                            SERIES 2005-HS2 CLASS A-I-1  5F99267  SB 10,503,000.0000 AMORTIZED AMOUNT  1677,029.44
                            DUE 09/25/2020     2.571%
11 052708    3,510,000.0000 RESIDENTIAL FDG MTG SECS II IN 76110VTD00 70.04400H   2,458,544            2,458,544
                            SERIES 2006-HSA1 CLASS A-2   5I06641  SB  3,510,000.0000
                            DUE 11/25/2020     5.190%
11 063008    2,525,000.0000 CWHEQ HOME EQUITY LOAN TRUST 126685DW30 78.56092H     1,983,663            1,983,663
                            MTGPC/SERIES 2006-S2 A-2-VAR 5I19024  SB  2,525,000.0000
                            DUE 07/25/2027     5.627%
11 060908   10,800,000.0000 CWHEQ HOME EQUITY LOAN TRUST 126685DX10 41.12617H     4,441,626            4,441,626
                            MTGPC/SERIES 2006-S2 A-3-VAR 5I19025  SB 10,800,000.0000
                            DUE 07/25/2027     5.841%
11 090808    8,025,750.0000 GMACH HOME EQUITY LN TR      38012TAB80 57.55283H     4,619,046            4,619,046
                            SERIES 2006-HE3 CLASS A2     5I39489  SB  8,025,750.0000
                            DUE 10/25/2036     5.750%
11 073008    2,025,000.0000 GMACH HOME EQUITY LOAN TRUST 38012TAD40 83.11753H     1,683,129            1,683,129
                            MTGPC/SERIES 2006-HE3 A-4-VAR 5I41557 SB  2,025,000.0000
                            DUE 10/25/2036     6.088%
11 070708    4,780,000.0000 COUNTRYWIDE ASSET BK CERT    126684AC30 87.26355H     4,171,197            4,171,197
                            SERIES 2006-2N CLASS A3      5I43662  SB  4,780,000.0000
                            DUE 03/25/2034     5.658%
11 031808    1,000,000.0000 PHP HEALTHCARE CORPORATION   693344AA10 0.00000H             0                    0
                            SUB DEB CONV 144A            5002297  SB  1,000,000.0000
                            DUE 12/15/2002     6.500%
11 031808    1,500,000.0000 PHP HEALTHCARE CORPORATION   693344AC70 0.00000H             0                    0
                            SUB DEB CV                   5002347  SB  1,500,000.0000
                            DUE 12/15/2002     6.500%
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 47 of 89

```
BMR56    CLIENT 012                    MARGIN ACTIVITY STATEMENTS           09/19/08        PAGE  93791
732-40126   RR: HB1 STONEHILL INSTITUTIO      CURR-CODE: 000
TC  LOA    LONG/SHORT(-) SECURITY DESCRIPTION    CUSIP/SEC      PRICE       MARKET VALUE      MARGIN REQUIREMENT
11  031808    1,000.0000 WESTFED HOLDINGS INC MNT SER  960080AB50   0.00000            0               0
                         DEB SPLT CPN           5002385  SB     1,000.0000
                         DUE 09/15/1999   15.500%
11  092507   10,000.0000 xxxPOLLY PECK INTERNATIONAL  G71536AH20   0.00000H            0               0
                         DUE 01/03/1997   8.750%   5018341  SB    10,000.0000
11  082208  1,050,000.0000 ESC COMDISCO INC          2003368R90   0.00000H            0               0
                         NOTE - ESCROW -        5030910  SB   1,050,000.0000
                         DUE 01/15/2003   6.125%
11  031808  1,500,000.0000 IONICA PLC               462213AJ80   0.00000H            0               0
                         SR NOTE                5033225  SB   1,500,000.0000
                         DUE 08/15/2006   13.500%
11  031808 22,523,800.0000 ESC KITTY HAWK INC       4983269C30   0.00000H            0               0
                         SR SECD NTS            5037926  SB  22,523,800.0000
                         DUE 11/15/2004   9.950%
11  031808   241,000.0000 WOLVERINE TUBE INC        978093AE20   92.00000        221,720          221,720
                         SENIOR NOTE SER B      5042652  SB    241,000.0000
                         DUE 04/01/2009   10.500%
11  031808  9,460,000.0000 CENTRAL TRACTOR FARM & COUNTRY 155560AA30  0.00000            0               0
                         INC SR NOTE            5046016  SB   9,460,000.0000
                         DUE 04/01/2007   10.625%
11  031808  1,500,000.0000 IONICA PLC               462213AK50   0.00000H            0               0
                         SENIOR DISC NOTES      5051503  SB   1,500,000.0000
                         DUE 05/01/2007   15.000%
11  092507 16,459,000.0000 xxxMAXWELL COMMUNICATIONS  G59024AF90   0.00000H            0               0
                         EURO DEBS              5054115  SB  16,459,000.0000
                         DUE 06/15/1993
11  031808  1,350,000.0000 KEY PLASTICS INC          493137AD50   0.00000H            0               0
                         SR SUB NOTE SER B      5065089  SB   1,350,000.0000
                         DUE 03/15/2007   10.250%
11  111907 18,255,000.0000 ENERGY GROUP OVERSEAS BV   292689AC00   32.50000H     5,932,875        1,825,500
                         GTD NOTES 7.375% 10/9/98  5070867  SB  18,255,000.0000
                         DUE 10/15/2017   7.425%
11  111907 21,450,000.0000 ENERGY GROUP OVERSEAS BV   292689AD80   32.50000H     6,971,250        2,145,000
                         GTD NT                 5071495  SB  21,450,000.0000
                         DUE 10/15/2027   7.550%
11  031808 30,550,000.0000 NRG ENERGY INC           629577AD40   0.00000            0               0
                         SR NOTE                5075991  SB  30,550,000.0000
                         DUE 06/15/2017   7.500%
11  031808   500,000.0000 xxxKELLSTROM INDUSTRIES INC  U48787AA00   0.00000H            0               0
                         CONV SUB NOTES REG S   5082870  SB    500,000.0000
                         DUE 10/15/2002   5.750%
```

```
BHR56      CLIENT 012                           MARGIN ACTIVITY STATEMENTS              09/19/08              PAGE 93792
732-40126  RR: HB1 STONEHILL INSTITUTIO         CURR-CODE: 000
TC LDA      LONG/SHORT(-) SECURITY DESCRIPTION   CUSIP/SEC      PRICE        MARKET VALUE         MARGIN REQUIREMENT
11 031808   1,250,000.0000 DELTA AIR LINES INC DEL      247361VU90  82.50000H     1,031,250            464,062
                           EQUIPMENT TRUST CTF SER 1990 B 5084588  SB     1,250,000.0000
                           DUE 03/26/2014   10.790%
11 012908   1,260,000.0000 WWWSOUTHEAST BANKING CORP     XX50935970  0.00000          0.               0
                           STAMPED CERTIFICATES          5093597  SB     1,260,000.0000
                           DUE 11/12/1997    5.250%
11 031808   7,125,000.0000 VENTURE HOLDINGS TRUST        92326YAD10  0.00000          0                0
                           SR NOTE SER B                 5102085  SB     7,125,000.0000
                           DUE 07/01/2005    9.500%
11 111907   18,167,000.0000 LIVENT INC                   537902AC20  0.00000          0                0
                           SR NTS                        5109706  SB     18,167,000.0000
                           DUE 10/15/2004    9.375%
11 031808   30,000,000.0000 CELLNET DATA SYS INC         15115MAL50  0.00000H         0                0
                           SENIOR DISC NOTE              5109824  SB     30,000,000.0000
                           DUE 10/01/2007   14.000%
11 031808   15,953,000.0000 DRYPERS CORP SR NTS          262497AG50  0.00000H         0                0
                           SER-B                         5123009  SB     15,953,000.0000
                           DUE 06/15/2007   10.250%
11 092507   3,300,000.0000 WWWSOUTHEAST BANKING CORP     XX51233170  0.00000          0                0
                           EURO O-CPN STAMPED CERT       5123317  SB     3,300,000.0000
                           DUE 12/18/1996
11 031808   15,209,000.0000 KELLSTROM INDS INC           488035AC00  0.00000H         0                0
                           SUB NTS CONV                  5125334  SB     15,209,000.0000
                           DUE 10/15/2002    5.750%
11 092507   7,943,000.0000 WWWMAXWELL COMMUN             G59024AE20  0.00000H         0                0
                           DUE 09/01/1993    8.375%      5127481  SB     7,943,000.0000
11 091708   2,350,000.0000 CALPINE CONSTRUCTION FINANCE  13134YAA50 107.50000H    2,526,250          1,136,812
                           CO L P / CORP 2ND PRIORITY    5128805  SB     2,350,000.0000
                           DUE 08/26/2011   11.602%
11 092807   18,950,000.0000 WWWPOLLY PECK INTL           G71536AF60  0.00000H         0                0
                           FINANCE CHF                   5131393  SB     18,950,000.0000
                           DUE 03/20/2049    6.250%
11 092507   47,149,000.0000 WWWRSL COMMUNICATIONS        G7703AAD70  0.00000H         0                0
                           GLOBAL USD                    5142263  SB     47,149,000.0000
                           DUE 03/15/2008   10.000%
11 031808   23,010,000.0000 KELLSTROM INDS INC           488035AE60  0.00000H         0                0
                           CONV SUB NOTES                5142368  SB     23,010,000.0000
                           DUE 06/15/2003    5.500%
11 031808   66,962,000.0000 PSINET INC                   74437CAB70  0.00000H         0                0
                           SENIOR NOTES SER B            5142821  SB     66,962,000.0000 AMORTIZED AMOUNT 57552,412.70
                           DUE 02/15/2005   10.000%
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional LBHI)    Pg 49 of 89

```
BMR56    CLIENT 012                MARGIN ACTIVITY STATEMENTS           09/19/08        PAGE 93793
732-40126   RR: H81 STONEHILL INSTITUTIO    CURR-CODE: 000
TC  LDA       LONG/SHORT(-)  SECURITY DESCRIPTION       CUSIP/SEC      PRICE      MARKET VALUE      MARGIN REQUIREMENT
11  031808    6,750,000.0000  INSILCO HOLDINGG CO       457661AA40  0.00000H          0                    0
                              SR DISC NT               5143514   SB   6,750,000.0000
                              DUE 08/15/2008   14.000%
11  092507   19,780,000.0000  ***S-AIR GROUP            H7110NAD50  12.17100H      2,407,423            722,227
                              SWSAIR                   5144489   SB  19,780,000.0000
                              DUE 07/07/2005    0.125%
11  031808   26,290,000.0000  ***RSL COMMUNICATION PLC  74972EAC20  0.00000H          0                    0
                              SR NTS                   5145204   SB  26,290,000.0000
                              DUE 03/01/2008    9.125%
11  031808   27,500,000.0000  CHS ELECTRONICS INC       12542AAB30  0.00000H          0                    0
                              SENIOR NOTES             5147251   SB  27,500,000.0000
                              DUE 04/15/2005    9.875%
11  031808   20,070,000.0000  ***CENTAUR MINING & EXPL LTD 15133CAC50 0.00000H        0                    0
                              SENIOR SECD NOTE         5150557   SB  20,070,000.0000 AMORTIZED AMOUNT 17870,781.38
                              DUE 12/01/2007   11.000%
11  031808   25,850,000.0000  EXODUS COMMUNICATIONS INC 302088AB50  0.00000H          0                    0
                              SR NTS                   5158280   SB  25,850,000.0000
                              DUE 07/01/2008   11.250%
11  072208    2,274,859.0000  WHEELING PITTSBURGH STL CORP 963150AA50 53.75000H  1,222,736            366,821
                              SR SECD NT               5169833   SB   2,274,859.0000
                              DUE 08/01/2010    6.000%
11  031808   30,820,000.0000  SAFETY KLEEN SERVICES INC 78649QAA30  0.00000H          0                    0
                              SR SUB NOTE              5173374   SB  30,820,000.0000
                              DUE 06/01/2008    9.250%
11  031808   22,005,250.0000  NRG ENERGY INC            629577AN20  0.00000           0                    0
                              SENIOR DEB               5174451   SB  22,005,250.0000
                              DUE 05/15/2006    6.500%
11  070808   19,144,000.0000  DELTA AIR LINES INC       247367AC90  94.75000H     1,693,068          1,693,068
                              DEL PASS THRU TRS CTF 1992 B-1 5183591 SB 19,144,000.0000 AMORTIZED AMOUNT 1786,879.51
                              DUE 09/11/2017    9.375%
11  092507   19,357,000.0000  ***SAIR GROUP FINANCE B V N5639BAA60  0.00000H          0                    0
                              DUE 06/08/2006    4.375%   5196207   SB  19,357,000.0000
11  071408    1,601,000.0000  DELTA AIR LINES INC DEL   247361VK10  0.00000H          0                    0
                              144A                     5197153   SB   1,601,000.0000
                              DUE 03/26/2006   10.330%
11  052908  120,505,000.0000  PSINET INC                74437CAD30  0.00000H          0                    0
                              SR NTS                   5200900   SB 120,505,000.0000 AMORTIZED AMOUNT 102937,961.85
                              DUE 11/01/2008   11.500%
11  070808   11,487,000.0000  DELTA AIRLINES INC DEL PASS 247367AF20 46.50000H    2,033,137          2,033,137
                              SER 93-A CLASS A2        5202379   SB  11,487,000.0000 AMORTIZED AMOUNT 4372,338.39
                              DUE 04/30/2016   10.500%
```

```
BMR56   CLIENT 012                         MARGIN ACTIVITY STATEMENTS           09/19/08        PAGE 93794
732-40126  RR: H&l STONEHILL INSTITUTIO       CURR-CODE: 000
TC  LDA       LONG/SHORT(-)  SECURITY DESCRIPTION        CUSIP/SEC     PRICE       MARKET VALUE    MARGIN REQUIREMENT
11  031808     1,801,000.0000  DELTA AIR LINES INC DEL 90E 14  247361VM70  0.00000H         0                  0
                               4A10.33%06                5204979   SB    1,801,000.0000
                               DUE 03/26/2006   10.330%
11  031808    20,158,000.0000  HECHINGER CO SR DEBS        422660AC40   0.00000         0                  0
                               DUE 11/15/2012    9.450%   5205553   SB   20,158,000.0000
11  031808    15,978,000.0000  WCI COMMUNITIES INC         92923CAM60  39.00000H    6,231,420          6,231,420
                               CONV SENIOR SUB NOTE        5214313   SB   15,978,000.0000
                               DUE 10/01/2013    7.875%
11  031808    30,550,000.0000  NRG ENERGY INC              629377AE20   0.00000         0                  0
                               SR NOTE                     5219666   SB   30,550,000.0000
                               DUE 06/01/2009    7.500%
11  031808    23,854,000.0000  CONSUMER PACKAGING INC      21061PAD80   0.00000H        0                  0
                               SR NOTE                     5220319   SB   23,854,000.0000
                               DUE 02/01/2007    9.750%
11  031808    20,185,000.0000  INSILCO CORP                457659AM20   0.00000H        0                  0
                               SR SUB NOTE SER-B           5223763   SB   20,185,000.0000
                               DUE 08/15/2007   12.000%
11  092507       995,000.0000  ***POLLY PECK INTL FINANCE LTD G71536AB50  0.00000H       0                  0
                               DUE 11/19/1990    6.250%   5225032   SB      995,000.0000
11  081308     6,410,000.0000  WCI COMMUNITIES INC         92923CAK00  33.00000     2,115,300          634,590
                               CONV                        5225200   SB    6,410,000.0000
                               DUE 08/05/2023    4.000%
11  111907    12,980,000.0000  BUDGET GROUP INC            11900SAF80   0.00000         0                  0
                               SR NTS                      5230760   SB   12,980,000.0000
                               DUE 04/01/2006    9.125%
11  031808    16,619,000.0000  TELEGLOBE INC               87941TAD70   0.00000         0                  0
                               GTD DEB                     5231755   SB   16,619,000.0000
                               DUE 07/20/2009    7.200%
11  031808    57,801,000.0000  TELEGLOBE INC               87941TAE50   0.00000H        0                  0
                               DEB                         5231763   SB   57,801,000.0000
                               DUE 07/20/2029    7.700%
11  111907    17,530,050.0000  SFC NEW HLDGS INC           784123AF80   0.00000H        0                  0
                               SR SUB NT                   5237126   SB   17,530,050.0000
                               DUE 08/15/2003   13.250%
11  070908    12,000,000.0000  DELTA AIR LINES INC         247367AE50   0.00000H        0                  0
                               PASS THRU CTF SER 1993-A CL A1 5239485  SB  12,000,000.0000 AMORTIZED AMOUNT  1637,088.60
                               DUE 04/30/2006    9.875%
11  031808     3,088,000.0000  CARRIER INTL S A            144500AC90   0.00000H        0                  0
                               SR NOTE SER B               5247881   SB    3,088,000.0000
                               DUE 02/15/2009   13.250%
```

```
BMR56    CLIENT 012                          MARGIN ACTIVITY STATEMENTS           09/19/08              PAGE 93795
732-40126   RR: H&1 STONEHILL INSTITUTIO     CURR-CODE: 000
TC  LDA        LONG/SHORT(-)  SECURITY DESCRIPTION        CUSIP/SEC      PRICE          MARKET VALUE           MARGIN REQUIREMENT
```

| TC | LDA | LONG/SHORT(-) | SECURITY DESCRIPTION | CUSIP/SEC | PRICE | MARKET VALUE | MARGIN REQUIREMENT |
|----|-----|---------------|----------------------|-----------|-------|--------------|---------------------|
| 11 | 031808 | 36,949,500.0000 | IT GROUP INC SENIOR SUB NOTE SER B DUE 04/01/2009  11.250% | 465266AC80 5249169  SB | 0.00000H 36,949,500.0000 | 0 | 0 |
| 11 | 092507 | 1,730,000.0000 | xxxS-AIR GROUP FIN DUE 11/15/2004  7.500% | XX52526290 5252629  SB | 0.00000H 1,730,000.0000 | 0 | 0 |
| 11 | 031808 | 5,892,000.0000 | HECHINGER CO DUE 10/15/2003  6.950% | 422660AD20 5252671  SB | 0.00000 5,892,000.0000 | 0 | 0 |
| 11 | 031808 | 163,598,000.0000 | PSINET INCORPORATED SR NT DUE 08/01/2009  11.000% | 69363VAB30 5253156  SB | 0.00000 163,598,000.0000 AMORTIZED AMOUNT 140542,624.65 | 0 | |
| 11 | 061808 | 450,000.0000 | YOSEMITE SECURITIES TRUST I 99-A LINKED ENRON OBLIG LEDS DUE 11/15/2004  8.250% | 987406AA30 5253212  SB | 0.00000H 450,000.0000 AMORTIZED AMOUNT | 0 | 0 352,385.50 |
| 11 | 071008 | 15,677,000.0000 | FRIEDE GOLDMAN INTL INC SUB NT CV DUE 09/15/2004  4.500% | 358430AA40 5253291  SB | 0.00000H 15,677,000.0000 | 0 | 0 |
| 11 | 092507 | 9,529,000.0000 | xxxPSINET INC SER EUR SR NOTES EURO SER DUE 08/01/2009  11.000% | XX52536090 5253609  SB | 0.00000 9,529,000.0000 | 0 | 0 |
| 11 | 092507 | 1,897,324.0000 | xxxMAXWELL COMMUNICATIONS VAR RATE LIQUID DUE 06/16/1995  5.000% | XX52586460 5258646  SB | 0.00000H 1,897,324.0000 | 0 | 0 |
| 11 | 071008 | 10,280,000.0000 | RESIDENTIAL CAP CORP NT 7.375% ON 08/18/2007 DUE 06/30/2010  8.375% | 76113BAF60 5259929  SB | 21.00000H 10,280,000.0000 | 2,158,800 | 2,158,800 |
| 11 | 031808 | 53,180,000.0000 | EXODUS COMMUNICATIONS INC SR NT DUE 12/15/2009  10.750% | 302088AH20 5261713  SB | 0.00000H 53,180,000.0000 AMORTIZED AMOUNT 39908,538.53 | 0 | 0 |
| 11 | 031808 | 10,575,000.0000 | VENTURE HOLDINGS TRUST DUE 06/01/2007  11.000% | 92326YAF60 5261756  SB | 0.00000H 10,575,000.0000 | 0 | 0 |
| 11 | 040708 | 58,995,000.0000 | WORLD ACCESS INC SENIOR NOTES DUE 01/15/2008  13.250% | 98141AAD30 5262134  SB | 0.00000H 58,995,000.0000 AMORTIZED AMOUNT 57251,657.63 | 0 | 0 |
| 11 | 041608 | 2,160,000.0000 | SLM CORP MEDIUM TERM NTS DUE 07/27/2009  2.940% | 78442FDQ80 5262964  SB | 94.85714H 2,160,000.0000 | 2,048,914 | 614,674 |
| 11 | 092507 | 2,000,000.0000 | xxxRSL COMMUNCIATION LTD DUE 03/01/2010  12.875% | 74972EAP30 5263095  SB | 0.00000H 2,000,000.0000 | 0 | 0 |
| 11 | 031808 | 815,000.0000 | TXU EASTERN FUNDING CO GTD SR NT ORG CPN 6.45000 DUE 05/15/2005  6.450% | 873169AF30 5264215  SB | 0.00000H 815,000.0000 | 0 | 0 |

13.F26

08-13555-scc   Doc 45573-39   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
(A-39 - Institutional LBHI)   Pg 52 of 89

```
BMR56    CLIENT 012                          MARGIN ACTIVITY STATEMENTS           09/19/08           PAGE 93796
732-40126   RR: H81 STONEHILL INSTITUTIO        CURR-CODE: 000
TC  LDA      LONG/SHORT(-)  SECURITY DESCRIPTION     CUSIP/SEC     PRICE        MARKET VALUE       MARGIN REQUIREMENT
11  111907  10,167,000.0000  TXU EASTERN FUNDING CO   873169AJ50   0.00000H          0                    0
                             GTD SR NOTE              5264525   SB  10,167,000.0000
                             DUE 05/15/2009    6.750%
11  092507     750,000.0000  xxxSWISSAIR              H83970BB00   0.00000H          0                    0
                             DUE 07/23/2003    5.500%  5271493   SB    750,000.0000
11  031808  13,600,000.0000  CONTINENTAL AIRLINES INC SR  2107959D40  0.00000H       0                    0
                             NOTES GTD-REG-ESCROW     5272505   SB  13,600,000.0000
                             DUE 03/15/1997   11.500%
11  031808   4,293,000.0000  COLO.COM                 195204AA00   0.00000H          0                    0
                             SR NOTE 144A             5273066   SB   4,293,000.0000  AMORTIZED AMOUNT   3540,718.80
                             DUE 03/15/2010   13.875%
11  031808 139,215,000.0000  PSINET INC               74437CAG60   0.00000H          0                    0
                             SR NOTE                  5273979   SB 139,215,000.0000  AMORTIZED AMOUNT 121713,474.90
                             DUE 12/01/2006   10.500%
11  092507   1,000,000.0000  xxxRSL COMMUNICATIONS PLC  G7703AAK10  0.00000H         0                    0
                             DUE 03/01/2010   12.875%  5274711   SB   1,000,000.0000
11  092507     200,000.0000  xxxTXU EASTERN FUNDING   G9143JAE00   0.00000H          0                    0
                             DUE 03/08/2030    7.250%  5275991   SB     200,000.0000
11  010908  10,725,000.0000  xxxPSINET INC            XX52772070   0.00000          0                    0
                             EURO SERIES              5277207   SB  10,725,000.0000
                             DUE 12/01/2006   10.500%
11  031808   4,000,000.0000  ETOYS IND                297862AB00   0.00000          0                    0
                             CONV SUB NOTE            5294718   SB   4,000,000.0000
                             DUE 12/01/2004    6.250%
11  092507   1,715,000.0000  xxxS-AIR GROUP           XX52964570   0.00000H          0                    0
                             DUE 11/04/2004    2.125%  5296457   SB   1,715,000.0000
11  031808   1,700,000.0000  COLOR TILE INC SR NT     196267AD00   0.00000H          0                    0
                             DUE 12/15/2001   10.750%  5307531   SB   1,700,000.0000
11  031808     105,000.0000  EXODUS COMMUNICATIONS INC  30208BAK50  0.00000          0                    0
                             SR NT 144A               5308012   SB     105,000.0000
                             DUE 07/15/2010   11.625%
11  031808  21,150,000.0000  NRG ENERGY INC           629377AG70   0.00000          0                    0
                             DUE 09/15/2010    8.250%  5310622   SB  21,150,000.0000
11  031808  11,000,000.0000  EAGLE GEOPHYSICAL INC    2695249C00   0.00000H          0                    0
                             SR NT SER B -ESCROWED-   5310628   SB  11,000,000.0000
                             DUE 07/15/2008   10.750%
11  031808   2,610,135.0000  MTS INC                  55376WAD10   0.00000          0                    0
                             SR SUB NOTE              5322253   SB   2,610,135.0000
                             DUE 03/19/2009   10.000%
```

08-13555-scc   Doc 45573-39   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
(A-39 - Institutional   LBHI)   Pg 53 of 89

```
BMR56    CLIENT 012                        MARGIN ACTIVITY STATEMENTS              09/19/08          PAGE 93797
732-40126   RR: HB1 STONEHILL INSTITUTIO      CURR-CODE: 000
TC LDA      LONG/SHORT(-) SECURITY DESCRIPTION       CUSIP/SEC      PRICE      MARKET VALUE       MARGIN REQUIREMENT
11 061308    4,187,000.0000 ENRON CORP              29357YAA10    0.00000H           0                    0
                            PRIVATE PLACEMENT         3326524   SB  4,187,000.0000 AMORTIZED AMOUNT    3014,398.41
                            DUE 08/15/2005   8.000%
11 031808   24,550,000.0000 RSL COMMUNICATIONS PLC   74972EAN80    0.00000            0                    0
                            GRD US$ SR NT             5325546   SB  24,550,000.0000
                            DUE 03/01/2010   12.875%
11 092507   18,047,000.0000 xxxRSL COMMUNICATIONS PLC G7702XAC00   0.00000H           0                    0
                            DUE 03/01/2010   12.875%  5326574   SB  18,047,000.0000
11 031808   14,000,000.0000 GT GROUP TELECOM INC     362359AC50    0.00000H           0                    0
                            SENIOR DISC EXCH NOTES    5329921   SB  14,000,000.0000
                            DUE 02/01/2010   13.250%
11 092507   35,743,000.0000 xxxSAIRGROUP FINANCE     N5639BAC20    0.00000H           0                    0
                            DUE 10/06/2010   6.625%   5332712   SB  35,743,000.0000 AMORTIZED AMOUNT   33062,275.00
11 092507    1,250,000.0000 xxxPASMINCO FINANCE LTD  Q73665AA10    0.00000            0                    0
                            EURO MEDIUM TERM NOTE     5334867   SB   1,250,000.0000
                            DUE 02/10/2003
11 080508   11,220,000.0000 VCI CMNTYS INC           92923CAP90   40.00000H       4,488,000              4,488,000
                            SR SUB NT                 5337735   SB  11,220,000.0000
                            DUE 03/15/2015   6.625%
11 072208    2,525,000.0000 BRODER BROS CO           112013AB30   67.50000H       1,704,375              1,704,375
                            SR NOTE                   5341743   SB   2,525,000.0000
                            DUE 10/15/2010   11.250%
11 092507      680,000.0000 xxxMULIAKERAMIK FINANCE LTD V65509AB30 0.00000H           0                    0
                            SENIOR B VAR RT           5341886   SB    680,000.0000 AMORTIZED AMOUNT     666,644.93
                            DUE 10/31/2007
11 092507    7,540,000.0000 xxxEXODUS COMMUNICATIONS  XX53426960    0.00000H           0                    0
                            SENIOR NOTES              5342696   SB   7,540,000.0000 AMORTIZED AMOUNT    6382,989.11
                            DUE 12/15/2009   10.750%
11 031808    4,260,000.0000 xxxEXODUS COMMUNICATIONS  302088AN90    0.00000            0                    0
                            SENIOR NOTES              5343324   SB   4,260,000.0000
                            DUE 07/15/2008   11.375%
11 010708    7,429,000.0000 xxxTXU EUROPE FUNDING LTD C9143RAA00    0.00000H           0                    0
                            EURO ISSUE                5346617   SB   7,429,000.0000
                            DUE 11/30/2005   7.000%
11 031808  191,285,000.0000 EXODUS COMMUNICATIONS INC 302088AL30    0.00000H           0                    0
                            US$ SR NT                 5355200   SB 191,285,000.0000 AMORTIZED AMOUNT 143884,106.43
                            DUE 07/15/2010   11.625%
11 092507    3,114,291.0000 xxxMULIALERAMIK FINANCE LTD V65509AA50 0.00000H           0                    0
                            SENIOR A VAR RATE         5355724   SB   3,114,291.0000
                            DUE 10/31/2007   7.187%
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 54 of 89

```
BMR56    CLIENT 012                        MARGIN ACTIVITY STATEMENTS              09/19/08        PAGE 93798
732-40126  RR: H81 STONEHILL INSTITUTIO         CURR-CODE: 000
TC  LDA        LONG/SHORT(-) SECURITY DESCRIPTION      CUSIP/SEC      PRICE     MARKET VALUE      MARGIN REQUIREMENT
11  073008     4,050,000.0000 GENERAL MOTORS ACCEPTANCE CORP 370425RU60  62.78500      2,542,792         1,144,256
                              GLOBAL NOTES              5356646  SB   4,050,000.0000
                              DUE 05/02/2011  7.250%
11  031808     1,575,000.0000 ESCROW GUANGDONG INTL TR &  40065L9A10   0.00000H            0                 0
                              INVT 144A               5358558  SB   1,575,000.0000
                              DUE 11/15/2020  6.750%
11  031808     1,700,000.0000 ESCROW GUANGDONG INTL TR & INV 40065L9B90  0.00000H           0                 0
                              144A                    5359457  SB   1,700,000.0000
                              DUE 10/24/2016  8.750%
11  031808    34,794,000.0000 ***ASIA GLOBAL CROSSING LTD 04518GAB70   0.00000H            0                 0
                              SR NT                   5362572  SB  34,794,000.0000 AMORTIZED AMOUNT 28609,022.38
                              DUE 10/25/2010  13.375%
11  031808    56,400,000.0000 NRG ENERGY INC           629377AL60   0.00000             0                 0
                              BONDS                   5368394  SB  56,400,000.0000
                              DUE 04/01/2031  8.625%
11  031808    21,150,000.0000 NRG ENERGY INC           629377AK80   0.00000H            0                 0
                              NOTES                   5368395  SB  21,150,000.0000
                              DUE 04/01/2011  7.750%
11  121007     5,000,000.0000 FLEMING COS INC          339130AP10   0.00000H            0                 0
                              NTS                     5370856  SB   5,000,000.0000 AMORTIZED AMOUNT  4681,205.45
                              DUE 04/01/2008  10.125%
11  041008     1,350,000.0000 CIT GROUP INC NEW        125581AV00  91.57100      1,236,208           370,862
                              SR NT                   5381485  SB   1,350,000.0000
                              DUE 01/30/2009  2.946%
11  031808     1,040,000.0000 ***PIV INVESTMENT FINANCE CV G7111WAA10   0.00000H            0                 0
                              REG S                   5395354  SB   1,040,000.0000
                              DUE 12/01/2000  4.500%
11  092507       760,000.0000 ***HIH WINTERTHUR UNDER&AGY Q36895AB80   0.00000            0                 0
                              SVC LTD EURO MEDIUM TERM NOTE 5404497  SB    760,000.0000
                              DUE 05/14/2003  5.987%
11  031808       584,000.0000 DAIRY MART CONVENIENCE STORES 2338609B30  0.00000             0                 0
                              INC - ESCROW -          5430398  SB    584,000.0000
                              DUE 03/15/2004  10.250%
11  070908    87,000,000.0000 ***ENRON CORP            U29302AJ20   0.00000H            0                 0
                              EURO DEB                5445610  SB  87,000,000.0000
                              DUE 06/18/2004  0.970%
11  071008   200,000,000.0000 ***ENRON CORP            U29302AG80   0.00000H            0                 0
                              DUE 06/15/2003  0.678%  5446359  SB 200,000,000.0000
11  092507    12,000,000.0000 ***SAIR GROUP            H8397SAC80   0.00000H            0                 0
                              DUE 02/02/2007  4.250%  5449492  SB  12,000,000.0000
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 55 of 89

```
BMR56    CLIENT 012                  MARGIN ACTIVITY STATEMENTS           09/19/08      PAGE  93799
732-40126   RR: H&L STONEHILL INSTITUTIO    CURR-CODE: 000
TC  LDA       LONG/SHORT(-) SECURITY DESCRIPTION      CUSIP/SEC      PRICE    MARKET VALUE    MARGIN REQUIREMENT
11  092507    1,750,000.0000  ***SAIRGROUP           H83970AJ40  10.36800H       181,440           81,648
                              DUE 09/10/2005          5449494   SB    1,750,000.0000
11  031808    1,500,000.0000  DELTA AIRLINES INC DEL  247361VW50  82.50000H     1,237,500          556,875
                              EQUIP TR CTF SER 1990 D  5451783   SB    1,500,000.0000
                              DUE 03/26/2014  10.790%
11  092507    2,815,000.0000  ***SAIRGROUP           H8397SAB00   0.00000H            0                0
                              DUE 07/30/2004   2.750%  5454713   SB    2,815,000.0000
11  092507    2,035,000.0000  ***SAIRGROUP ZUERICH   H83970AU90  11.29200H       229,792          103,406
                              VARIABLE RATE          5461232   SB    2,035,000.0000
                              DUE 02/15/2013   4.125%
11  092507      115,000.0000  ***SAIRGROUP           H83970AX30  10.36800H        11,923            5,365
                              DUE 03/01/2003   5.125%  5463379   SB      115,000.0000
11  092507   27,855,000.0000  *** POLLYPECK          G71536AE90   0.00000H            0                0
                              DUE 09/20/1994   5.625%  5478585   SB   27,855,000.0000
11  092507   21,145,000.0000  *** POLLYPECK          G71536AC30   0.00000            0                0
                              DUE 04/07/1993   5.750%  5478587   SB   21,145,000.0000
11  073008   14,355,000.0000  WCI COMMUNITIES INC    92923CAG90  39.00000H     5,598,450        5,598,450
                              GTD SENIOR SUB NOTE     5489304   SB   14,355,000.0000
                              DUE 05/01/2012   9.125%
11  092507    7,000,000.0000  *** POLLY PECK INTL FINANCE-DM G7154NAA90   0.00000H       0                0
                              CPN                    5494069   SB    7,000,000.0000
                              DUE 04/20/1993   6.000%
11  121007    7,882,000.0000  FLEMING COMPANIES INC   339130AX40   0.00000H            0                0
                              SENIOR NOTES           5497868   SB    7,882,000.0000
                              DUE 06/15/2010   9.250%
11  092507    3,150,000.0000  ***GMAC INTL FINANCE BV N3592XVA50 180.05463H     5,671,720        2,552,274
                              EURO MEDIUM TERM NOTE   5515750   SB    3,150,000.0000
                              DUE 12/15/2008   6.250%
11  111907    4,132,000.0000  SOUTHEAST BKG CORP SUB NTS REG 841338AD80   0.00000H       0                0
                              DUE 04/11/2001  10.500%  5551644   SB    4,132,000.0000
11  100407      230,000.0000  AMERICAN RICE INC       029318AA00   0.00000H            0                0
                              MTG NOTES W/CONTINGENT INT 5552686  SB      230,000.0000
                              DUE 07/31/2002  13.000%
11  031808    5,258,000.0000  DELTA AIR LINES INC DEL  247361VV70  82.50000H     4,337,850        1,952,032
                              EQUIP TR CTF SER 1990 C  5555517   SB    5,258,000.0000
                              DUE 03/26/2014  10.790%
11  031808    5,000,000.0000  SOURCE MEDIA INC        836153AC00   0.00000            0                0
                              SR SECD NTS            5563864   SB    5,000,000.0000
                              DUE 11/01/2004  12.000%
```

17.826

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional LBHI)    Pg 56 of 89

```
BMRS6    CLIENT 012                        MARGIN ACTIVITY STATEMENTS            09/19/08      PAGE  93800
732-40126    RR: H81 STONEHILL INSTITUTIO    CURR-CODE: 000
TC  LDA        LONG/SHORT(-)  SECURITY DESCRIPTION        CUSIP/SEC     PRICE        MARKET VALUE      MARGIN REQUIREMENT
11  092507      1,884,000.0000  PHAR-MOR INC                717113AA20   0.00000H           0                    0
                                SR NOTE                     5573732   SB   1,884,000.0000  AMORTIZED AMOUNT     1402,853.45
                                DUE 09/11/2002    11.720%
11  031808      5,200,000.0000  CALPINE GENERATING CO       13135BAE60   0.00000H           0                    0
                                                            5574272   SB   5,200,000.0000
                                DUE 04/01/2009
11  031808      2,860,000.0000  JET EQUIPMENT TR MEZZANINE  477122AV70   0.00000           0                    0
                                NOTE CL B 95-B              5574462   SB   2,860,000.0000  AMORTIZED AMOUNT     2304,087.29
                                DUE 02/15/2015    7.830%
11  031808      5,718,000.0000  ESCROW CONTINENTAL AIRLINES 2107959L60   0.00000H           0                    0
                                INC                         5578456   SB   5,718,000.0000
                                DUE 11/15/2001    10.000%
11  102407      1,088,000.0000  SOUTHEAST BANKING CORP-FRN  841338AF30   0.00000H           0                    0
                                CPN                         5596001   SB   1,088,000.0000
                                DUE 11/12/1997    5.260%
11  041008      2,700,000.0000  CIT GROUP INC               125577AV80   99.33600     2,682,072              804,621
                                DUE 12/19/2008    3.212%    5634664   SB   2,700,000.0000
11  031808      5,000,000.0000  DELTA AIR LINES INC DEL 90E 14 247361VX30   0.00000H           0                    0
                                4A10.79%14                  5648314   SB   5,000,000.0000
                                DUE 03/26/2014    10.790%
11  041008        450,000.0000  CIT GROUP FUNDING CO CDA    125568AB10   78.61900       353,785              106,135
                                SR NT                       5666251   SB     450,000.0000
                                DUE 07/01/2010    4.650%
11  081208     11,694,343.0000  NORTHERNSTAR NAT GAS INC    666107AA50   92.00000H    10,758,795            3,227,638
                                SR NTS 144A                 5713396   SB  11,694,343.0000
                                DUE 05/15/2013    5.000%
11  091608      7,020,000.0000  WASHINGTON MUT PFD FDG TR I 93934WAA30   12.05300H       846,120              253,836
                                PERPETUAL 144A              5726350   SB   7,020,000.0000
                                DUE 03/07/2049    6.534%
11  031808     10,772,000.0000  DELTA AIR LINES INC DEL 90G 14 247361VR60   84.50000H     9,102,340            4,096,053
                                4A10.79%13                  5741989   SB  10,772,000.0000
                                DUE 09/26/2013    10.790%
11  041008      3,935,000.0000  ***CIT GROUP FDG CO CDA     125568AE50   66.22330H     2,605,886            1,172,649
                                SR NT                       5778017   SB   3,935,000.0000
                                DUE 11/02/2011    5.600%
11  060908      2,700,000.0000  COUNTRYWIDE ASSET-BCK CERTIF 12668VAF60   48.30830H     1,304,324            1,304,324
                                SERIES 2006-S7 CLASS A6     5801730   SB   2,700,000.0000
                                DUE 11/25/2035    5.693%
11  090208      5,400,000.0000  CWHEQ HOME EQUITY LOAN TRUST 12668VAA70   85.41443H     1,815,524            1,815,524
                                MTGPC/SERIES 2006-S7 A-1-VAR 5850819   SB   5,400,000.0000  AMORTIZED AMOUNT  2125,548.16
                                DUE 11/25/2035    2.561%
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 57 of 89

| BMR66 | CLIENT 012 | | MARGIN ACTIVITY STATEMENTS | | | 09/19/08 | | PAGE 93001 |
|---|---|---|---|---|---|---|---|---|
| 732-40126 | RR: H&I STONEHILL | INSTITUTIO | | CURR-CODE: 000 | | | | |
| TC LOA | LONG/SHORT(-) | SECURITY DESCRIPTION | CUSIP/SEC | PRICE | | MARKET VALUE | | MARGIN REQUIREMENT |
| 11 092507 | 500,000.0000 | ***FCE BANK PLC EURO MEDIUM TERM NOTE DUE 01/16/2012    7.125% | G33365SQ40 5856171    SB | 111.25937H 500,000.0000 | | 556,296 | | 250,333 |
| 11 050608 | 7,472,000.0000 | UNIFI INC SR SC NT 11.5% DUE 05/15/2014    11.500% | 904677AD60 5856846    SB | 90.00000H 7,472,000.0000 | | 6,724,800 | | 6,724,800 |
| 11 073008 | 6,750,000.0000 | CWHEQ HOME EQUITY LN TR SER 2006-S5 CLASS A2 DUE 06/25/2035    5.681% | 126683AB70 5905694    SB | 59.50563H 6,750,000.0000 | | 4,016,630 | | 4,016,630 |
| 11 082508 | 7,804,080.0000 | COUNTRYWIDE ASSET-BACKED CTFS SERIES 2006-S8 CLASS A3 DUE 04/25/2036    5.555% | 12668XAC90 5943647    SB | 47.92761H | | 3,727,509 7,804,080.0000 AMORTIZED AMOUNT | | 3,727,509 7777,374.36 |
| 11 092507 | 17,100.0000 | ***SASEA HOLDINGS DUE 10/01/2042    3.250% | XX59657740 5955774    SB | 0.00000H 17,100.0000 | | 0 | | 0 |
| 11 092507 | 16,000,000.0000 | ***BANQUE PALLAS IN DEFAULT DUE 02/08/1996    10.125% | F07959AG80 5956314    SB | 0.00000H 16,000,000.0000 | | 0 | | 0 |
| 11 092507 | 1,517,420.0000 | ***OMNI HOLDINGS AG DUE 12/31/2049    6.000% | H59118AB70 5956439    SB | 0.00000H 1,517,420.0000 | | 0 | | 0 |
| 11 082908 | 2,700,000.0000 | CWHEQ HOME EQUITY LOAN TRUST SERIES 2006-S10 CLASS A-2 DUE 10/25/2036    2.691% | 12668YAB90 5961848    SB | 90.53437H 2,700,000.0000 | | 2,444,427 | | 2,444,427 |
| 11 032508 | 2,025,000.0000 | STALLION OILFIELD SVCS LTD / CORP SR NT 144A DUE 02/01/2015    9.750% | 852591AA40 5975781    SB | 70.50000H 2,025,000.0000 | | 1,427,625 | | 642,431 |
| 11 092507 | 1,434,989.0000 | ***LUXFER HOLDINGS PLC DUE 02/06/2012    11.330% | GS698WAD00 5986867    SB | 0.00000H 1,434,989.0000 | | 0 | | 0 |
| 11 092807 | 1,239,362.8700 | VIATEL HOLDING (BERMUDA) LTD CONV SR SECURED NOTE DUE 12/31/2014    8.000% | XX9N418400 9N41840    SK | 0.00000 1,239,362.8700 | | 0 | | 0 |
| 11 092807 | 60,634,128.3800 | SNTL CORP LITIGATION TRUST SERIES C-1 CERTIFICATE DUE 12/31/2026    10.000% | XX9N433410 9N43341    SK | 0.00000 60,634,128.3800 | | 0 | | 0 |
| 11 092707 | 287,446.0000 | ME ZUCKERMAN INVESTMENTS | XX9N437650 9N43765    SK | 0.00000 287,446.0000 | | 0 | | 0 |
| 11 092707 | 10,000.0000 | CCFC REDEEMABLE PREFERRED | XX9N440770 9N44077    SK | 0.00000 10,000.0000 | | 0 | | 0 |
| 11 092507 | 2,000,000.0000 | ***TELEGLOBE INC UNSECURED DEBENTURE IN DEFAULT DUE 06/20/2003    8.350% | XX9N440930 9N44093    SB | 0.00000 2,000,000.0000 | | 0 | | 0 |

19 of 26

```
BMR56   CLIENT 012                    MARGIN ACTIVITY STATEMENTS            09/19/08        PAGE 93802
732-40126  RR: H81 STONEHILL INSTITUTIO     CURR-CODE: 000
TC LDA       LONG/SHORT(-) SECURITY DESCRIPTION       CUSIP/SEC       PRICE    MARKET VALUE      MARGIN REQUIREMENT
11 100907    494,595.3100  VIATEL HOLDING (BERMUDA) LTD  XX9N447160    0.00000         0                  0
                           SENIOR SECURED INCREASING RATE 9N44716   SK      494,595.3100
                           DUE 07/01/2007   12.500%
11 010708    17,545.6300   VIATEL HOLDING (BERMUDA) LTD S XX9N457120   0.00000         0                  0
                           SR SECURED INCREASING RATE    9N45712   SK       17,545.6300
                           DUE 07/01/2007   13.000%
11 100907    23,038.8900   VIATEL HOLDING (BERMUDA) LTD S XX9N457130   0.00000         0                  0
                           SR SECURED INCREASING RATE    9N45713   SK       23,038.8900
                           DUE 07/01/2007   13.500%
11 101607    249,016.6500  VIATEL HOLDING (BERMUDA) LTD   XX9N458690   0.00000         0                  0
                           SENIOR SECURED                9N45869   SK      249,016.6500
                           DUE 07/01/2007   12.750%
11 071508    249,016.6500  VIATEL HOLDING (BERMUDA) LIMIT XX9P065630   0.00000         0                  0
                           SENIOR SECURED INCREASING RATE 9P06563   SK      249,016.6500
                           DUE 07/01/2008   14.250%
11 092707    22,397.0000   OPEN CONNECT SYSTEMS INC       XX90574370   0.00000         0                  0
                           RESTRICTED                    9057437   SK       22,397.0000
11 100107    33,194.0000   DELTA FDG RESIDUAL EXCHANGE CO XX90676500   0.00000         0                  0
                           RESTRICTED CL A               9067850   SK       33,194.0000
11 092707    175,438.6000  CHANGING WORLD TECHNOLOGIES    XX91118260   0.00000         0                  0
                           INC RESTRICTED                9111826   SK      175,438.6000
11 091908    30,110.0000   TOA TO    A/C 8     (xx)       XX99993400   0.00000         0                  0
                                                         9999340
29 070708    48,600.0000   ACACIA RESEARCH - ACACIA       0036813070   4.38000    212,868            145,800
                           TECHNOLOGIES                  A013707   SB       48,600.0000
29 070208    166,257.0000  ADVANTA CORP-CL A              0079421050   6.74000  1,120,572            498,771
                                                         A080425   SB      166,257.0000
29 091708    689,393.0000  ADVANTA CORP-CL B NON-VTG      0079422040   9.52000H 6,563,021          1,968,906
                                                         A109735   SB      689,393.0000
29 091108    0.0000        CIT GROUP INC NEW              1255811080  11.16000         0            191,150
                                                         C011859
29 070708    9,357.0000    CORE MARK HOLDING CO INC       2186811040  27.92000    261,247             78,374
                                                         C014818   SB        9,357.0000
29 092208    343,356.0000  CONTINENTAL AIRLINES INC-CL B  2107953080  18.40000  6,317,750          1,895,325
                                                         C562466   SB      343,356.0000 F  11,265.0000
29 092707    33,194.0000   DELTA FUNDING RESIDUAL         2479261080   0.00000H        0                  0
                           MANAGEMENT INC                D007053   SK       33,194.0000
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 59 of 89

```
 BMR56    CLIENT 012                    MARGIN ACTIVITY STATEMENTS           09/19/08     PAGE 93803
 732-40126   RR: HB1 STONEHILL INSTITUTIO    CURR-CODE: 000
 TC  LDA       LONG/SHORT(-)  SECURITY DESCRIPTION       CUSIP/SEC      PRICE     MARKET VALUE      MARGIN REQUIREMENT
 29  091908    262,497.0000   DELTA AIR LINES INC DEL    2473617020    9.67000H    2,538,345           761,503
                              COM NEW                    D010768
 29  040908     51,850.0000   EXX INC-CL A               2692821090    2.60000       134,810           134,810
                                                         E029150   SB         51,850.0000
 29  070708     67,540.0000   ICO GLOBAL COMMUNICATIONS  44930K1080    2.25000H      151,965           151,965
                              HLDGS LTD DEL CL A         H010818   SB         67,540.0000
 29  091908     46,289.0000   HOVNANIAN ENTERPRISES INC-CL A  4424872030  9.05000    418,915           209,457
                                                         H394718
 29  082108          0.0000   MBIA INC                   55262C1000   12.88000             0         1,080,000
                                                         M000545
 29  063008          0.0000   NORTHWESTERN CORPORATION   6680743050   26.22000H            0           489,225
                              NEW                        N007436
 29  092208    445,643.0000   NORTHWEST AIRLS CORP       6672804080   11.53000     5,138,263         1,541,479
                                                         N009281   SB        445,643.0000  F  51,694.0000
 29  081908          0.0000   ***NORBORD INC             65548P1060    4.18115H            0            79,701
                                                         N101684
 29  060308    233,431.0000   PORTLAND GENERAL ELECTRIC CO  7365088470  25.00000H  5,835,775         1,750,732
                              NEW                        P019060   SB        233,431.0000
 29  081208          0.0000   RAIT FINANCIAL TRUST       7492271040    7.35000             0           235,000
                                                         R003584
 29  091908    701,010.0000   US AIRWAYS GROUP INC       90341W1080    7.91000     5,544,989         1,663,496
                                                         U003620   SB        540,899.0000
 29  090208          0.0000   WELLS FARGO & CO           9497461010   39.80000             0         1,235,790
                                                         W001549
 29  091508          0.0000   WACHOVIA CORPORATION       9299031020   18.75000             0           455,625
                              COM                        W002990
 29  091108          0.0000   WASHINGTON MUTUAL INC      9393221030    4.25000             0         2,174,652
                                                         W028516
 29  091608    276,659.0000   ***ZARLINK SEMICONDUCTOR INC  9891391000  0.49000     135,562           135,562
                                                         Y001713   SB        276,659.0000
 29  050508 27,250,000.0000   NWA A SEN                  629ESC9B20    0.00000             0                 0
                              - ESCROW CUSIP -           5BDDDY9   SB  27,250,000.0000
                              DUE 03/01/2005   6.360%
 29  050508 20,000,000.0000   NWA A SEN                  629ESC9Q90    0.00000             0                 0
                              - ESCROW CUSIP -           5BDDFC1   SB  20,000,000.0000
                              DUE 06/01/2004   2.300%
```

08-13555-scc    Doc 45573-39   (A-39 - Institutional  LBHI)   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit

```
 BMR56    CLIENT 012                        MARGIN ACTIVITY STATEMENTS           09/19/08       PAGE 93804
 732-40126    RR: H81 STONEHILL INSTITUTIO      CURR-CODE: 000
 TC  LOA      LONG/SHORT(-) SECURITY DESCRIPTION    CUSIP/SEC      PRICE      MARKET VALUE       MARGIN REQUIREMENT
 29  050508   40,275,000.0000  NWA A SEN            629ESC9S50     0.00000            0                  0
                               - ESCROW CUSIP -     5BDDFC2   SB    40,275,000.0000
                               DUE 10/01/2007   5.520%
 29  050508   6,500,000.0000   NWA A SEN            629ESC9U00     0.00000            0                  0
                               - ESCROW CUSIP -     5BDDFC3   SB     6,500,000.0000
                               DUE 11/01/2004   2.520%
 29  050508   2,000,000.0000   NWA A SEN            629ESC9W60     0.00000            0                  0
                               - ESCROW CUSIP -     5BDDFC4   SB     2,000,000.0000
                               DUE 05/01/2005   2.390%
 29  071608   801,000.0000     DELTA AIR LINES INC DEL  247361VL90  0.00000H          0                  0
                               EQUIP TR CTF SER 1990 D  5649514   SK   801,000.0000
                               DUE 03/26/2006  10.330%
 29  061708   2,700,000.0000   UAL CORP             902549AE40    55.87500      1,508,625            452,587
                               ORD SETTLEMENT BD    5725709   SB     2,700,000.0000
                               DUE 02/01/2021   5.000%
 29  082208          0.0000    UNITED STATES TREASURY BOND  912810PW20  100.03100    0              2,700,837
                               DUE 02/15/2038   4.375%   7001110
 29  072508          0.0000    UNITED STATES TREASURY NOTE  912828HZ60  100.93000    0                545,022
                               DUE 05/15/2018   3.875%   7001113
 29  081508          0.0000    UNITED STATES TREASURY NOTE  912828CA60  104.75049H   0              1,571,257
                               DUE 02/15/2014   4.000%   7004960
 52  091108   38,230.0000-     CIT GROUP INC NEW    1255811080    11.16000       426,646-                0
                                                    C011859
 52  082108   216,000.0000-    MBIA INC             55262C1000    12.88000     2,782,080-               0
                                                    M000545
 52  063008   62,195.0000-     NORTHWESTERN CORPORATION  6680743050  26.22000H  1,630,752-             0
                               NEW                  N007436
 52  081908   19,062.0000-     xxxNORBORD INC       65540P1060     4.18115H       79,701-               0
                                                    N101684
 52  081208   47,000.0000-     RAIT FINANCIAL TRUST 7492271040     7.35000       345,450-               0
                                                    R003584
 52  090208   103,500.0000-    WELLS FARGO & CO     9497461010    39.80000     4,119,300-               0
                                                    W001549
 52  091508   81,000.0000-     WACHOVIA CORPORATION 9299031020    18.75000     1,518,750-               0
                               COM                  W002990
 52  091108   511,683.0000-    WASHINGTON MUTUAL INC  9393221030   4.25000     2,174,652-               0
                                                    W028516
```

22 of 26

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 61 of 89

| BMR56 | CLIENT 012 | | MARGIN ACTIVITY STATEMENTS | | | 09/19/08 | PAGE 93805 |
|---|---|---|---|---|---|---|---|
| 732-40126 | RR: H81 STONEHILL INSTITUTIO | | CURR-CODE: 000 | | | | |
| TC LDA | LONG/SHORT(-) | SECURITY DESCRIPTION | CUSIP/SEC | PRICE | MARKET VALUE | MARGIN REQUIREMENT | |
| 52 082108 | 27,000,000.0000- | UNITED STATES TREASURY BOND | 912810PW20 | 100.03100 | 27,008,370- | 0 | |
| | | DUE 02/15/2038    4.375% | 7001110 | | | | |
| 52 072508 | 5,400,000.0000- | UNITED STATES TREASURY NOTE | 912828HZ60 | 100.93000 | 5,450,220- | 0 | |
| | | DUE 05/15/2018    3.875% | 7001113 | | | | |
| 52 081508 | 15,000,000.0000- | UNITED STATES TREASURY NOTE | 912828CA60 | 104.75049H | 15,712,574- | 0 | |
| | | DUE 02/15/2014    4.000% | 7004940 | | | | |

- - - - - -T O T A L S - - - - - -

| | | | | | |
|---|---|---|---|---|---|
| TOT MV | 222,262,611 | OLD SMA | 8,270,176- | SMA | 8,270,176- SMA CHANGE | 0 |
| EQUITY | 282,202,431 | LIQ EQT | 282,202,431 EQY % 100 | HOUSE EXCESS | 71,058,711 NEW HSE CALL | 0 |
| CSH AV | 8,270,176 | BUYING P | 16,540,353 | OTHER EXCESS | 217,505,394 NYSE OPT REQ | 0 |

08-13555-scc

Doc 45573-39   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
(A-39 - Institutional LBHI)   Pg 62 of 89

```
BMR56    CLIENT 012                          MARGIN ACTIVITY STATEMENTS           09/19/08       PAGE  93806
732-40126    RR: H81 STONEHILL INSTITUTIO    CURR-CODE: 002 C$
- - - - - - -BALANCES - - - - - - - - -
TC      OPEN T/D BAL        CLOSE T/D BAL        OPEN S/D BAL        CLOSE S/D BAL        MARKET VALUE        DLA
11           00.00               00.00               00.00               00.00           13,282,551        09/17/08
FOREIGN CURRENCY C$ RATE    .95352472 T/D BAL          00.00
29         702,486.53          759,002.16          702,486.53          759,002.16           384,839        09/19/08
FOREIGN CURRENCY C$ RATE    .95352472 T/D BAL       723,727.32
52       1,312,615.42-       1,369,131.05-       1,312,615.42-       1,369,131.05-         1,391,326-       09/19/08
FOREIGN CURRENCY C$ RATE    .95352472 T/D BAL     1,305,500.30-
T          610,128.89-         610,128.89-         610,128.89-         610,128.89-        12,276,063
- - - - - - - - -ACTIVITY - - - - - - - - -
TC S/DTE      LONG/SHORT(-)  DESCRIPTION            CUSIP/SEC     PRICE/ENT  T/D  TRD #    DEBIT/CREDIT(-)
29 09/19                     MARK TO MARKET                       MKT MS       09/19            56,515.63
52 09/19                     MARK TO MARKET SHORT POS             MKT MS       09/19            56,515.63-
- - - - - - -POSITIONS - - - - - - - -
TC  LDA       LONG/SHORT(-)  SECURITY DESCRIPTION   CUSIP/SEC       PRICE       MARKET VALUE       MARGIN REQUIREMENT
11  091708    782,064.0000   xxxZARLINK SEMICONDUCTOR INC   9891391000   0.51388        401,889              401,889
                                                            Y001713   SB        782,064.0000
11  041408  14,590,000.0000  xxxGENERAL MOTORS ACCEPTANCE   370472BMD0  88.28416H      12,880,662            5,796,298
                             CORP OF CANADA LTD             5BBGFL9   SB     14,590,000.0000
                             DUE 05/22/2009    4.721%
29  082908         0.0000    xxxCANADIAN IMPERIAL BANK OF   1360691010  62.50493             0              195,390
                             COMMERCE                       C146504
29  082808         0.0000    xxxNORBORD INC                 65548P1060   4.38494H            0              740,024
                                                            N101684
29  091508    748,886.0000   xxxZARLINK SEMICONDUCTOR INC   9891391000   0.51388        384,839              384,839
                                                            Y001713
52  082908   10,420.0000-    xxxCANADIAN IMPERIAL BANK OF   1360691010  62.50493        651,301-                  0
                             COMMERCE                       C146504
52  082808  168,765.0000-    xxxNORBORD INC.                65548P1060   4.38494H        740,024-                  0
                                                            N101684
- - - - - - -T O T A L S  - - - - - - -
TOT MV   12,276,063  OLD FED CALL       877,119          FED CALL          877,119  NEW FED CALL           0
EQUITY   12,886,193  LIQ EQT      12,886,193 EQY %    0 HOUSE EXCESS     5,367,751  NEW HSE CALL           0
CSH AV            0  BUYING P              0           OTHER EXCESS     8,889,334  NYSE OPT REQ            0
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 63 of 89

```
BMR56    CLIENT 012                    MARGIN ACTIVITY STATEMENTS        09/19/08      PAGE 93807
732-40126   RR: H01 STONEHILL INSTITUTIO     CURR-CODE: 003 BP
- - - - - -BALANCES - - - - - - - -
TC       OPEN T/D BAL          CLOSE T/D BAL        OPEN S/D BAL       CLOSE S/D BAL      MARKET VALUE      DLA
11          00.00                    00.00             00.00              00.00            760,375      09/08/08
FOREIGN CURRENCY BP  RATE  1.83010002 T/D BAL         00.00
29         4,931.68                4,931.68          4,931.68           4,931.68               00      09/16/08
FOREIGN CURRENCY BP  RATE  1.83010002 T/D BAL       9,025.46
T          4,931.68                4,931.68          4,931.68           4,931.68           760,375
- - - - - -ACTIVITY - - - - - - - -
NO ACTIVITY FOR THIS ACCOUNT
- - - - - -POSITIONS - - - - - -
TC  LDA      LONG/SHORT(-)  SECURITY DESCRIPTION       CUSIP/SEC      PRICE       MARKET VALUE     MARGIN REQUIREMENT
11  040108    807,000.0000  xxxCIT GROUP INC           U12605A840   94.22243H        760,375         342,168
                            EURO MEDIUM TERM NOTE       5214345  SB   807,000.0000
                            DUE 12/15/2008   5.500%
11  070108    873,632.0000  xxxLUXFER HOLDINGS PLC      G5698WAD00   0.00000H           0                0
                            DUE 02/06/2012  11.330%     5986867  SB   873,632.0000
- - - - - -T O T A L S - - - - - -
TOT MV      760,375  OLD SMA          1,350-  SMA                     1,350- SMA CHANGE              0
EQUITY      755,443  LIQ EQT        755,443 EQY %   0 HOUSE EXCESS    -413,274  NEW HSE CALL          0
CSH AV            0  BUYING P         2,700  OTHER EXCESS            679,405  NYSE OPT REQ           0
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 64 of 89

```
BMR56     CLIENT 012                           MARGIN ACTIVITY STATEMENTS              09/19/08        PAGE  93808
732-40126   RR: H&1 STONEHILL INSTITUTIO        CURR-CODE: 016 JY
- - - - - -BALANCES - - - - - - - -
TC      OPEN T/D BAL            CLOSE T/D BAL        OPEN S/D BAL      CLOSE S/D BAL       MARKET VALUE        DLA
11           01.00-                    01.00-            01.00-            01.00-                 00         05/13/08
FOREIGN CURRENCY JY  RATE      .00935201 T/D BAL         00.00
- - - - - -ACTIVITY - - - - - - - -
NO ACTIVITY FOR THIS ACCOUNT
- - - - - -POSITIONS - - - - - - - -
TC  LDA          LONG/SHORT(-)  SECURITY DESCRIPTION    CUSIP/SEC       PRICE       MARKET VALUE        MARGIN REQUIREMENT
11  050908  1080,000,000.0000  xxxENRON CORP            U29302AH60      0.00000H           0                   0
                               DUE 06/18/2003  0.770%   5446109    SB  1080,000,000.0000
11  051308   540,000,000.0000  xxxENRON CORP            U29302AG80      0.00000H           0                   0
                               DUE 06/15/2003  0.670%   5446359    SB  540,000,000.0000
- - - - - -T O T A L S - - - - - -
TOT MV         0  OLD SMA          0            SMA                0  SMA CHANGE                0
EQUITY         1  LIQ EQT          1 EQY %      0 HOUSE EXCESS     0  NEW HSE CALL             0
CSH AV         0  BUYING P         0            OTHER EXCESS       0  NYSE OPT REQ             0
```

08-13555-scc   Doc 45573-39   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
(A-39 - Institutional   LBHI)   Pg 65 of 89

```
BMR56    CLIENT 012                    MARGIN ACTIVITY STATEMENTS           09/19/08      PAGE  93809
732-40126   RR: HB1 STONEHILL INSTITUTIO     CURR-CODE: 246 EM
- - - - - - -BALANCES - - - - - - - -
TC       OPEN T/D BAL        CLOSE T/D BAL         OPEN S/D BAL        CLOSE S/D BAL      MARKET VALUE      DLA
11            00.00              00.00                00.00                00.00           2,003,276     09/18/08
FOREIGN CURRENCY EM  RATE    1.43870132 T/D BAL      00.00
29           419,883.78-         419,883.78-         419,883.78-          419,883.78-          00        09/18/08
FOREIGN CURRENCY EM  RATE    1.43870132 T/D BAL     604,087.34-
T            419,883.78-         419,883.78-         419,883.78-          419,883.78-       2,003,276
- - - - - - -ACTIVITY - - - - - - - -
   NO ACTIVITY FOR THIS ACCOUNT
- - - - - - -POSITIONS - - - - - -
TC  LDA       LONG/SHORT(-)  SECURITY DESCRIPTION    CUSIP/SEC      PRICE      MARKET VALUE    MARGIN REQUIREMENT
11  071608   1,080,000.0000  xxxGMAC BANK GMBH       N3592XB660  78.94734H       852,631          383,684
                             EURO MEDIUM TERM NOTE    5BBPVH5   SB   1,080,000.0000
                             DUE 05/21/2010   5.750%
11  041608   1,350,000.0000  xxxCIR GROUP INC        U12605AD00  85.23296H     1,150,644          517,790
                             EURO MEDIUM TERM NOTE    5341424   SB   1,350,000.0000
                             DUE 05/13/2009   5.415%
- - - - - -T O T A L S - - - - - -
TOT MV     2,003,276  OLD SMA       419,883-    SMA                419,883- SMA CHANGE                0
EQUITY     2,423,159  LIQ EQT     2,423,159 EQY %  100 HOUSE EXCESS  1,521,685 NEW HSE CALL           0
CSH AV       417,883  BUYING P      839,767         OTHER EXCESS   2,137,569 NYSE OPT REQ             0
```

| Symbol | CCY | Qty | Price | LBPI Calc | FX | MV ($) |
|--------|-----|-----|-------|-----------|-----|--------|
| CIT | USD | (38,250) | 11.16 | (426,646.80) | 1 | (426,646.80) |
| MBI | USD | (216,000) | 12.88 | (2,782,080.00) | 1 | (2,782,080.00) |
| NEW | USD | (62,195) | 26.22 | (1,630,752.90) | 1 | (1,630,752.90) |
| NBDFF | USD | (19,062) | 4.18115 | (79,701.08) | 1 | (79,701.08) |
| RAS | USD | (47,000) | 7.35 | (345,450.00) | 1 | (345,450.00) |
| WFC | USD | (103,500) | 39.8 | (4,119,300.00) | 1 | (4,119,300.00) |
| WB | USD | (81,000) | 18.75 | (1,518,750.00) | 1 | (1,518,750.00) |
| WM | USD | (511,683) | 4.25 | (2,174,652.75) | 1 | (2,174,652.75) |
| 912810PW2 | USD | (27,000,000) | 100.031 | (27,008,370.00) | 1 | (27,008,370.00) |
| 912828HZ6 | USD | (5,400,000) | 100.93 | (5,450,220.00) | 1 | (5,450,220.00) |
| 912828CA6 | USD | (15,000,000) | 104.75049 | (15,712,573.50) | 1 | (15,712,573.50) |
| Type 5 | USD | 61,766,571.40 | 1 | 61,766,571.40 | 1 | 61,766,571.40 |
| **Net USD** | | | | | | **518,074.37** |
| | | | | | | |
| | | | | | | |
| CM | CAD | (10,420) | 62.50493 | (651,301.37) | 0.95352472 | (621,031.96) |
| NBDFF | CAD | (168,765) | 4.38494 | (740,024.40) | 0.95352472 | (705,631.56) |
| Type 5 | CAD | 1,369,131.05 | 1 | 1,369,131.05 | 0.95352472 | 1,305,500.30 |
| **Net CAD** | | | | | | **(21,163.22)** |
| | | | | | | |
| | | | | | | |
| **Total USD Due Stonehill** | | | | | | **496,911.15** |

EXHIBIT D FOR STONEHILL INSTITUTIONAL PARTNERS LP

| Fund | LEHM A/C # | Month Expected | Internal ID | LEHM ID | CCY | Amount (lsl) | Notes | Record date | Description |
|---|---|---|---|---|---|---|---|---|---|
| Stonehill Institutional Partners LP | 732-40126 | September-08 | GBP | GBP | GBP | 63.00 | INTEREST | 9/21/2008 | BRITISH POUND STERLING |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | GBP | GBP | GBP | -28.22 | INTEREST | 9/21/2008 | BRITISH POUND STERLING |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | NBDFF | 2641441 | USD | -18,125.30 | DIVIDEND | 9/1/2008 | NORBORD INC |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5252671 | 422860AD2 | USD | 141,500.39 | DISTRIBUTION | 9/22/2008 | HECHINGER CO *IN DEFAULT* 6.95000% 10/15/2003 422860AD2 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5205553 | 422860AC4 | USD | 504,829.81 | DISTRIBUTION | 9/22/2008 | HECHINGER CO SR DEBS 9.45000% 11/15/2012 422860AC4 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | 1,326.39 | INTEREST | 9/15/2008 | INTEREST ON CREDIT BALANCE FROM 09/15 THRU 09/15 @ 3.000% BAL 15916,659 ABAL 15916,659 INTEREST PAID FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | 13.25 | INTEREST | 9/2/2008 | INTEREST ON CREDIT BALANCE FROM 08/29 THRU 09/02 @ 1.58% BAL 293,450 ABAL 293,450 INTEREST PAID FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | 142.87 | INTEREST | 8/28/2008 | INTEREST ON CREDIT BALANCE FROM 08/22 THRU 08/28 @ 1.562% BAL 1032,337 ABAL 348,610 INTEREST PAID FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | 215.48 | INTEREST | 9/16/2008 | INTEREST ON CREDIT BALANCE FROM 09/16 THRU 09/16 @ 3 14% BAL 2386,825 ABAL 2386,825 INTEREST PAID FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | 95.46 | INTEREST | 9/11/2008 | INTEREST ON CREDIT BALANCE FROM 09/03 THRU 09/11 @ 1.562% BAL 971,525 ABAL 366,572 INTEREST PAID FOR 6 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -1,322.47 | INTEREST | 9/2/2008 | FROM 08/29 THRU 09/02 @ 2 7/8% BAL 3301,193-ABAL 4139,916 INTEREST CHARGED FOR 4 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -140.57 | INTEREST | 9/11/2008 | FROM 09/03 THRU 09/11 @ 1.812% BAL 343,749 ABAL 599,762 INTEREST CHARGED FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -161.56 | INTEREST | 9/18/2008 | FROM 09/18 THRU 09/18 @ 3 1/4% BAL 1820,423 ABAL 1789,564 INTEREST CHARGED FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -18.29 | INTEREST | 8/21/2008 | FROM 08/21 THRU 08/21 @ 2 3/4% BAL 6552,938-ABAL 239,417 INTEREST CHARGED FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -543.93 | INTEREST | 9/17/2008 | FROM 09/17 THRU 09/17 @ 3 3/4% BAL 722,211 ABAL 5221,749 INTEREST CHARGED FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -63.65 | INTEREST | 9/14/2008 | FROM 09/12 THRU 09/12 @ 2 7/8% BAL 116009,327-ABAL 265,653 INTEREST CHARGED FOR 3 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -90.36 | INTEREST | 8/28/2008 | FROM 08/28 THRU 08/28 @ 2.812% BAL 4191,256-ABAL 1156,600 INTEREST CHARGED FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -991.34 | INTEREST | 9/21/2008 | FROM 09/19 THRU 09/21 @ 3 % BAL 4009,726 ABAL 3965,356 INTEREST CHARGED FOR 3 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | 50,335.78 | INTEREST | 9/21/2008 | INTEREST ON CREDIT BALANCE INTEREST ON CREDIT BALANCE TY 5 CR INT N21- 9/21/08 LB TRNID=SSTAUTOINT |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | USD | USD | USD | -103.29 | INTEREST | 9/22/2008 | FROM 09/22 THRU 09/22 @ 3 % BAL 1306,054 ABAL 1239,466 INTEREST CHARGED FOR 1 DAY(S) |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | B03TKJ2 | B03TKJ2 | USD | 82,989.03 | DIVIDEND | 9/24/2008 | ***LEHMAN BROTHERS US DOLLAR LIQUIDITY FUND INSTL DIST CL MONTHLY DIVIDENDS |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5143662 | 12668AAC3 | USD | 22,537.70 | INTEREST | 8/29/2008 | COUNTRYWIDE ASSET BK CERT SERIES 2006-2N CLASS A3 5.65800% 03/25/2034 12668AAC3 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5943647 | 12668XAC9 | USD | 41,825.42 | PAYDOWN | 8/29/2008 | COUNTRYWIDE ASSET-BACKED CTFS SERIES 2006-S8 CLASS A3 5.55500% 04/25/2036 12668XAC9 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5943647 | 12668XAC9 | USD | 36,002.80 | INTEREST | 8/29/2008 | COUNTRYWIDE ASSET-BACKED CTFS SERIES 2006-S8 CLASS A3 5.55500% 04/25/2036 12668XAC9 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5801730 | 12668VAF6 | USD | 12,809.26 | INTEREST | 8/29/2008 | COUNTRYWIDE-BCK CERTIF SERIES 2006-S7 CLASS A6 5.69300% 11/25/2035 12668VAF6 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5905694 | 12668IAB7 | USD | 31,955.65 | INTEREST | 8/29/2008 | CWHEQ HOME EQUITY LN TR SER 2006-S5 CLASS A2 5.68100% 06/25/2035 12668IAB7 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5119024 | 12668SDW3 | USD | 11,840.15 | INTEREST | 8/29/2008 | CWHEQ HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-S2 A-2-VAR 5.62700% 07/25/2027 12668SDW3 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5119025 | 12668SDX1 | USD | 52,569.00 | INTEREST | 8/29/2008 | CWHEQ HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-S2 A-3-VAR 5.84100% 07/25/2027 12668SDX1 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5850819 | 12668VAA7 | USD | 73,100.12 | PAYDOWN | 9/24/2008 | CWHEQ HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-S7 A-1-VAR 2.55130% 11/25/2035 12668VAA7 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5850819 | 12668VAA7 | USD | 4,690.72 | INTEREST | 9/24/2008 | CWHEQ HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-S7 A-1-VAR 2.55130% 11/25/2035 12668VAA7 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5961848 | 12668VAB9 | USD | 6,258.42 | INTEREST | 9/24/2008 | COUNTRYWIDE ASSET-BACKED CERTI SERIES 2006-S10 CLASS A2 4.42688%10/25/2036 12668VAB9 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5139489 | 38012TAB8 | USD | 38,456.75 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LN TR SERIES 2006-HE3 CLASS A2 5.75000% 10/25/2036 38012TAB8 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5139431 | 38012TAC6 | USD | 3,265.31 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LN TR SERIES 2006-HE3 CLASS A3 DUE 10/25/2036 5.80S REG INT ON 675000 BND REC 08/29/08 PAY 9/25/08 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5BBQTZ6 | 36186LAB9 | USD | 19,050.32 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A2 6.05400% 12/25/2037 36186LAB9 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5BBQVB1 | 36186LAC7 | USD | 93,359.41 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A3 6.19300% 12/25/2037 36186LAC7 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5BBQTZ9 | 36186LAD5 | USD | 114,186.53 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A4 6.42400% 12/25/2037 36186LAD5 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5BBQTY6 | 36186LAG8 | USD | 21,090.38 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A6 6.24900% 12/25/2037 36186LAG8 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5F23941 | 361856CV7 | USD | 94,160.30 | PAYDOWN | 9/24/2008 | GMACM HOME EQUITY LOAN TRUST MTGPC/SERIES 2004-HE1 A-3-VAR 2.68180% 06/25/2034 361856CV7 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5F23941 | 361856CV7 | USD | 9,734.86 | INTEREST | 9/24/2008 | GMACM HOME EQUITY LOAN TRUST MTGPC/SERIES 2004-HE1 A-3-VAR 2.68180% 06/25/2034 361856CV7 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5BBKVN8 | 36186KAD7 | USD | 20,088.00 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LOAN TRUST MTGPC/SERIES 2007-HE1 A-4-VAR 5.95200% 08/25/2037 36186KAD7 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5J1S137 | 38012TAD4 | USD | 10,273.49 | INTEREST | 8/29/2008 | GMACM HOME EQUITY LN TR SERIES MTGPC/SERIES 2006-HE3 A-4-VAR RATE DUE 10/23/2036 6.088 REG INT ON 2025000 BND REC 08/29/08 PAY 09/25/08 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5BCLLC0 | 69337YAE4 | USD | 236,020.67 | PAYDOWN | 8/31/2008 | PHH MORTGAGE TRUST SER 2007-SL1 CLASS TAGS 144A 6.60000% 12/25/2037 69337YAE4 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5BCLLC0 | 69337YAE4 | USD | 90,858.31 | INTEREST | 8/31/2008 | PHH MORTGAGE TRUST SER 2007-SL1 CLASS TAGS 144A 6.60000% 12/25/2037 69337YAE4 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5J06641 | 76110VTD0 | USD | 13,148.82 | INTEREST | 8/29/2008 | RESIDENTIAL FHG MTG SECS II IN SERIES 2006-HSA1 CLASS A-2 I.1900% 02/25/2036 76110VTD0 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5FP9267 | 76110VSQ2 | USD | 95,690.90 | PAYDOWN | 9/24/2008 | RESIDENTIAL FDG MTG SECS II SERIES 2005-HS2 CLASS A-1-I 3.30688%12/25/2035 76110VSQ2 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | 5FP9267 | 76110VSQ2 | USD | 3,714.07 | INTEREST | 9/24/2008 | RESIDENTIAL FDG MTG SECS II SERIES 2005-HS2 CLASS A-1-I 3.30688%12/25/2035 76110VSQ2 |
| Stonehill Institutional Partners LP | 732-40126 | September-08 | NWEC | NWEC | USD | -20,524.35 | DIVIDEND | 9/15/2008 | NORTHWESTERN CORP NEW |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | SPF12 | 853763AA8 | USD | 35,640.00 | INTEREST | 9/30/2008 | STANDARD PACIFIC CORP CVT SENIOR SUB NOTES 6.00000% 10/01/2012 853763AA8 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5042652 | 97809XAC2 | USD | 12,652.50 | INTEREST | 9/30/2008 | WOLVERINE TUBE INC SENIOR NOTE SER B 10.5000% 04/01/2009 97809XAC2 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5142821 | 74437CAB7 | USD | 67,906.16 | FULL CALL | 10/10/2008 | PSINET INC SENIOR NOTES SER B- IN DEFAULT 10.00000% 02/15/2005 74437CAB7 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5273979 | 74437CAG6 | USD | 144,365.96 | FULL CALL | 10/10/2008 | PSINET INC SR NOTE- IN DEFAULT 10.50000% 12/01/2006 74437CAG6 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5200900 | 74437CAD3 | USD | 126,771.26 | FULL CALL | 10/10/2008 | PSINET INC SR NTS *IN DEFAULT* 11.50000% 11/01/2008 74437CAD3 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5253156 | 69363VAB3 | USD | 167,099.00 | FULL CALL | 10/10/2008 | PSINET INCORPORATED SR NTE- IN DEFAULT 11.00000% 08/01/2009 69363VAB3 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5341743 | 112013AB3 | USD | 142,031.25 | INTEREST | 10/1/2008 | BRODER BROS CO SR NOTE 11.25000% 10/15/2010 112013AB3 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5666251 | 12556BAB1 | USD | 10,462.50 | INTEREST | 9/30/2008 | CIT GROUP FUNDING CO CDA SR NT 4.65000% 07/01/2010 12556BAB1 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | POR | POR | USD | 57,190.60 | DIVIDEND | 9/25/2008 | PORTLAND GENERAL ELECTRIC CO NEW |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5778017 | 12556BAE5 | USD | 110,180.00 | INTEREST | 10/1/2008 | CIT GROUP FDG CO CDA SR NT 5.60000% 11/02/2011 12556BAE5 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5445610 | U29302AJ2 | USD | 11,495.20 | DISTRIBUTION | 10/14/2008 | ENRON CORP EURO DEB 6.97000% 12/31/2049 U29302AJ2 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5446359 | U29302AG8 | USD | 97,632.31 | DISTRIBUTION | 10/14/2008 | ENRON CORP DEFAULT 6.67500% 12/31/2049 U29302AG8 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5446109 | U29302AH6 | USD | 142,530.26 | DISTRIBUTION | 10/14/2008 | ENRON CORP 0.77000% 12/31/2049 U29302AH6 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5359457 | 40065L9B9 | USD | 65,777.00 | DISTRIBUTION | 10/22/2008 | ESCROW GUANGDONG INTL TR & INV 144A 8.7500% 11/23/2003 40065L9B9 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5239485 | 247367AE5 | USD | 6,783.06 | PAYDOWN | 10/23/2008 | DELTA AIR LINES INC PASS THRU CTF SER 1993-A CL A1 9.87500% 4/30/2008 247367AE5 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5239485 | 247367AE5 | USD | 21,380.03 | INTEREST | 10/23/2008 | DELTA AIR LINES INC PASS THRU CTF SER 1993-A CL A1 9.87500% 4/30/2008 247367AE5 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5943647 | 12668XAC9 | USD | 45,062.91 | PAYDOWN | 9/30/2008 | COUNTRYWIDE ASSET-BACKED CTFS SERIES 2006-S8 CLASS A3 5.55500% 04/25/2036 12668XAC9 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5943647 | 12668XAC9 | USD | 35,809.15 | INTEREST | 9/30/2008 | COUNTRYWIDE ASSET-BACKED CTFS SERIES 2006-S8 CLASS A3 5.55500% 04/25/2036 12668XAC9 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5801730 | 12668VAF6 | USD | 12,809.26 | INTEREST | 9/30/2008 | COUNTRYWIDE ASSET-BCK CERTIF SERIES 2006-S7 CLASS A6 5.69300% 11/25/2035 12668VAF6 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5905694 | 12668IAB7 | USD | 31,955.65 | INTEREST | 9/30/2008 | CWHEQ HOME EQUITY LN TR SER 2006-S5 CLASS A2 5.68100% 06/25/2035 12668IAB7 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5119024 | 12668SDW3 | USD | 11,840.15 | INTEREST | 9/30/2008 | CWHEQ HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-S2 A-2-VAR 5.62700% 07/25/2027 12668SDW3 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5119025 | 12668SDX1 | USD | 52,569.00 | INTEREST | 9/30/2008 | CWHEQ HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-S2 A-3-VAR 5.84100% 07/25/2027 12668SDX1 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5J39489 | 38012TAB8 | USD | 38,456.72 | INTEREST | 9/30/2008 | GMACM HOME EQUITY LN TR SERIES 2006-HE3 CLASS A2 5.75000% 10/25/2036 38012TAB8 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BBQTZ6 | 36186LAB9 | USD | 22,344.71 | INTEREST | 9/30/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A2 6.05400% 12/25/2037 36186LAB9 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BBQVB1 | 36186LAC7 | USD | 93,359.47 | INTEREST | 9/30/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A3 6.19300% 12/25/2037 36186LAC7 |

Page 1 of 2

EXIBIT D FOR STONEHILL INSTITUTIONAL PARTNERS LP

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BBQTZ9 | 36186LAD5 | USD | 114,186.59 | INTEREST | 9/30/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A4 6.42400% 12/25/2037 36186LAD5 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BBQTY6 | 36186LAG8 | USD | 21,090.38 | INTEREST | 9/30/2008 | GMACM HOME EQUITY LN TR SERIES 2007-HE2 CLASS A6 6.24900% 12/25/2037 36186LAG8 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BBKVN8 | 36186KAD7 | USD | 20,088.00 | INTEREST | 9/30/2008 | GMACM HOME EQUITY LOAN TRUST MTGPC/SERIES 2007-HE1 A-4-VAR 5.95200% 08/25/2037 36186KAD7 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5141557 | 38012TAD4 | USD | 10,273.50 | INTEREST | 9/30/2008 | GMACM HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-HE3 A-4-VAR RATE DUE 10/25/2036 6.088 REG INT ON 2025000 BND REC 09/30/08 PAY 10/25/08 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BCLLC0 | 69337YAE4 | USD | 342,593.55 | PAYDOWN | 9/30/2008 | PHH MORTGAGE TRUST SER 2007-SL1 CLASS TAQS 144A 6.60000% 12/25/2027 69337YAE4 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BCLLC0 | 69337YAE4 | USD | 89,560.26 | INTEREST | 9/30/2008 | PHH MORTGAGE TRUST SER 2007-SL1 CLASS TAQS 144A 6.60000% 12/25/2027 69337YAE4 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5106641 | 76110VTD0 | USD | 15,172.14 | INTEREST | 9/30/2008 | RESIDENTIAL FDG MTG SECS II IN SERIES 2006-HSA1 CLASS A-2 5.19000% 02/25/2036 76110VTD0 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5BBNND6 | 55265AAN1 | USD | 88,150.56 | INTEREST | 10/27/2008 | MAC CAPITAL LTD SER 2007-1 CL B-2L 144A/3C7 R/MD 7.045 07/26/2023 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5204979 | 24736IVM7 | USD | 35,820.13 | INTEREST | 10/24/2008 | DELTA AIR LINES INC DEL 90E 14 4A10.33%06 10.33000% 03/26/2006 24736IVM7 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5649514 | 24736IVL9 | USD | 15,856.71 | INTEREST | 10/24/2008 | DELTA AIR LINES INC DEL EQUIP TR CTF SER 1990 D 10.33000% 03/26/2049 24736IVL9 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5084588 | 24736IVU9 | USD | 24,533.86 | INTEREST | 10/24/2008 | DELTA AIR LINES INC DEL EQUIPMENT TRUST CTF SER 1990 B 10.79000% 03/26/2014 24736IVU9 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5451783 | 24736IVW5 | USD | 30,102.19 | INTEREST | 10/24/2008 | DELTA AIRLINES INC DEL EQUIP TR CTF SER 1990 D 10.79000% 03/26/2014 24736IVW5 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | M017061 | 55291M202 | USD | 13,180.81 | INTEREST | 10/29/2008 | MAC CAPITAL LLC COMBINATION SECS MEMBERSHIP |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | M017061 | 55291M202 | USD | 241,366.99 | INTEREST | 10/29/2008 | MAC CAPITAL LLC COMBINATION SECS MEMBERSHIP |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | DAL | DAL | USD | 6.63 | CASH IN LIEU | 10/31/2008 | DELTA AIR LINES INC DEL COM NEW |
| Stonehill Institutional Partners LP | 732-40126 | November-08 | 5986867 | XS0282001820 | GBP | 132,574.93 | INTEREST | 10/31/2008 | LUXFER HOLDINGS PLC 11.83100% 02/06/2012 Q5698WAD0 |
| Stonehill Institutional Partners LP | 732-40126 | November-08 | 5341424 | U12605AD0 | EUR | 18,681.13 | INTEREST | 11/14/2008 | CIT GROUP INC EURO MEDIUM TERM NOTE 5.3050% 5/13/2009 U12605AD0 |
| Stonehill Institutional Partners LP | 732-40126 | November-08 | 5446109 | U29302AH6 | USD | 12,200.65 | REDEMPTION | 10/28/2008 | ENRON CORP 0.77000% 12/31/2049 U29302AH6 |
| Stonehill Institutional Partners LP | 732-40126 | November-08 | 5277207 | XS0108329771 | USD | 9,425.83 | PAYDOWN | 10/9/2008 | PSINET INC EURO SERIES 10.50000% 12/01/2006 |
| Stonehill Institutional Partners LP | 732-40126 | November-08 | 5253609 | 69363VAD9 | USD | 8,229.57 | PAYDOWN | 10/9/2008 | PSINET INC SER EUR SR NOTES *IN DEFAULT* 11.00000% 08/01/2009 69363VAD9 |
| Stonehill Institutional Partners LP | 732-40126 | November-08 | 5BBQFL9 | CA37047ZBM0 | CAD | 177,404.17 | INTEREST | 11/21/2008 | GENERAL MOTORS ACCEPTANCE CORP OF CANADA LTD 4.72143% 05/22/2009 37047ZBM0 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5143662 | 12668AAC3 | USD | 22,532.99 | INTEREST | 10/27/2008 | COUNTRYWIDE ASSET BK CERT SERIES 2006-2N CLASS A3 5.65800% 03/25/2034 12668AAC3 |
| Stonehill Institutional Partners LP | 732-40126 | December-08 | 5214345 | U12605AB4 | GBP | 22,192.50 | INTEREST | 12/12/2008 | CIT GROUP INC EURO MEDIUM TERM NOTE R/MD 5.50 12/15/2008 |
| Stonehill Institutional Partners LP | 732-40126 | December-08 | 5515750 | XS0202220264 | GBP | 196,875.00 | INTEREST | 12/12/2008 | GMAC INTL FINANCE BV EURO MEDIUM TERM NOTE R/MD 6.25 12/15/2008 |
| Stonehill Institutional Partners LP | 732-40126 | December-08 | 5259929 | 76113BAF6 | USD | 430,475.00 | INTEREST | 12/29/2008 | RESIDENTIAL CAP CORP NT 6.375% 10 8.375% 06/30/2010 76113BAF6 |
| Stonehill Institutional Partners LP | 732-40126 | December-08 | 5259929 | 76113BAF6 | USD | 835,285.88 | TENDER PAYMENT | 12/31/2008 | RESIDENTIAL CAP CORP NT 6.375% 10 8.375% 06/30/2010 76113BAF6 |
| Stonehill Institutional Partners LP | 732-40126 | December-08 | 5214345 | U12605AB4 | GBP | 807,000.00 | MATURITY | 12/15/2008 | CIT GROUP INC EURO MEDIUM TERM NOTE R/MD 5.50 12/15/2008 |
| Stonehill Institutional Partners LP | 732-40126 | December-08 | 5515750 | XS0202220264 | GBP | 3,150,000.00 | MATURITY | 12/15/2008 | GMAC INTL FINANCE BV EURO MEDIUM TERM NOTE R/MD 6.25 12/15/2008 |
| Stonehill Institutional Partners LP | 732-40126 | December-08 | 5BCSLJ0 | XS0294277396 | USD | 131,570.23 | DISTRIBUTION | 12/22/2008 | VICTORIA STANFIELD EURO MEDIUM TERM NOTE 4.835% 03/28/2008 G8439CAN0 |
| Stonehill Institutional Partners LP | 732-40126 | January-09 | 5BCSLJ0 | XS0294277396 | USD | 7,163.56 | DISTRIBUTION | 1/6/2008 | VICTORIA STANFIELD EURO MEDIUM TERM NOTE 4.835% 03/28/2008 G8439CAN0 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5197153 | 24736IVK1 | USD | 29,272.65 | INTEREST | 10/24/2008 | DELTA AIR LINES INC DEL 144A 10.33% 03/26/2006 24736IVK1 |
| Stonehill Institutional Partners LP | 732-40126 | October-08 | 5358558 | 40065L9A1 | USD | 60,940.09 | DISTRIBUTION | 10/22/2008 | ESCROW OUANGDONG INTL TR & INVT 144A-IN DEFAULT 6.75% 11/15/2020 40065L9A1 |
| Stonehill Institutional Partners LP | 732-40126 | January-09 | 5262134 | 98141AAD3 | USD | 7,661.09 | DISTRIBUTION | 10/22/2008 | WORLD ACCESS INCDTD 12/08/199913.250% 01/15/2008CALLABLEIN DEFAULT |
| Stonehill Institutional Partners LP | 732-40126 | January-09 | 5262134 | 98141AAD3 | USD | 212,399.75 | DISTRIBUTION | 10/22/2008 | WORLD ACCESS INCDTD 12/08/199913.250% 01/15/2008CALLABLEIN DEFAULT |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| Running Total | |
|---|---|
| USD | 6,291,314.60 |
| GBP | 4,308,677.21 |
| EUR | 18,681.13 |
| CAD | 177,404.17 |

Page 2 of 2

## SI EXHIBIT E
## STONEHILL INSTITUTIONAL PARTNERS LP
### WIRES ON PRIVATE INSTRUMENTS THAT WERE MISDIRECTED TO LBI

| ACCOUNT | CURRENCY | AMOUNT | DATE | DESCRIPTION |
|---------|----------|--------|------|-------------|
| 732-40126 | EUR | 51,025.28 | 9/8/2008 | Damovo wire from BNY Mellon |
| 732-40126 | USD | 110,799.31 | 9/11/2008 | Gitic wire from Bank of America |
| 732-40126 | USD | 37,339.32 | 9/19/2008 | WCI Bank Debt wire from Bank of America |
| 732-40126 | USD | 551.62 | 10/1/2008 | Capmark wire from Citibank |
| 732-40126 | USD | 4,216.67 | 11/28/2008 | Murray Energy wire from Goldman Sachs |
| 732-40126 | USD | 46,587.48 | 11/28/2008 | Murray Energy wire from Goldman Sachs |
| 732-40126 | USD | 19,592.96 | 12/31/2008 | Entegra 2nd Lien Wire from Lehman CP |

| | | | CURRENT EXCH RATE | |
|-------|--------------|------------|------|--------------|
| TOTAL | EUR | 51,025.28 | 1.35 | 68,731.05 |
| TOTAL | USD | 219,087.36 | 1.00 | 219,087.36 |
| TOTAL | AS CONVERTED | | | 287,818.41 a) |

a) Note: Currencies are converted to USD only for the purpose of tallying a rough dollar amount due.
Stonehill is not aware of the LBI estate's policies regarding converting foreign wires, the date used for
conversion, or whether foreign wires will be delivered in original currency.

Page 1 of 1

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 70 of 89

```
BMR56   CLIENT 012                         MARGIN ACTIVITY STATEMENTS              09/19/08      PAGE  93831
732-41223    RR: H81 STONEHILL INSTUTIONA       CURR-CODE: 000
- - - - - -BALANCES - - - - - - - -
TC     OPEN T/D BAL          CLOSE T/D BAL          OPEN S/D BAL       CLOSE S/D BAL       MARKET VALUE      DLA
11        00.00                  00.00                 00.00              00.00             4,500,000     09/18/08
- - - - - -ACTIVITY - - - - - - - - -
NO ACTIVITY FOR THIS ACCOUNT
- - - - - -POSITIONS - - - - - - - -
TC  LDA     LONG/SHORT(-)  SECURITY DESCRIPTION         CUSIP/SEC       PRICE       MARKET VALUE      MARGIN REQUIREMENT
11  091808  4,500,000.0000  xxxLEHMAN BROTHERS US DOLLAR  G5460B1260    1.00000H      4,500,000            4,500,000
                            LIQUIDITY FUND INSTL DIST CL  A000351
- - - - - -T O T A L S - - - - - -
TOT MV    4,500,000  OLD SMA           0        SMA                0  SMA CHANGE              0
EQUITY    4,500,000  LIQ EQT   4,500,000 EQY %  0 HOUSE EXCESS     0  NEW HSE CALL            0
CSH AV            0  BUYING P          0        OTHER EXCESS       0  NYSE OPT REQ            0
```

LEHMAN BROTHERS

SI Exhibit F   page 2 of 2

**For the period 08/30/2008 to 09/30/2008**

**STONEHILL INSTITUTIONAL
PARTNERS LP**

Base Currency    : USD
Account Number : 732-40126 H81

## Monthly Activity (1)

| MOVEMENTS OF FUNDS (Continued) | Settlement Date | Transaction | Description | Amount |
|---|---|---|---|---|
| | 09/12/2008 | | TFR TO ACCT 732-40125-1 | ( 166,163.22 ) |
| | 09/12/2008 | | FRM CMDY TO STK | 1,853,105.73 |
| | 09/12/2008 | | INWIRE RF# 021000021 JERSEY CITY NJ | 4,820,000.00 |
| | 09/12/2008 | | INWIRE RF# 021000021 JERSEY CITY NJ | 4,430,000.00 |
| | 09/12/2008 | | REF # 9N41338 | 4,990.67 |
| | 09/15/2008 | | INWIRE RF#0217826 0008 DMAN SACHS CO ATT BANK RECO STONEHILL INSTITUTIONAL PARTN | 8,724.16 |
| | 09/15/2008 | | INWIRE RF# 021000021 HOUSTON TX 77002 1111 SANNIN ST 10TH FLOOR | 17,602.82 |
| | 09/15/2008 | PAID BY WIRE | WIRE PAYMENT TD 09/12/08 SD | ( 103,000,000.00 ) |
| | 09/16/2008 | | INWIRE RF#0311337 0008 (02) NORTHWEST AIRL INES 66727 CITIUS33 | 240,545.45 |
| | 09/16/2008 | | TFR TO ACCT 732-41223-2 | ( 2,178,724.46 ) |
| | 09/16/2008 | PAID BY WIRE | WIRE PAYMENT TD 09/16/08 SD | ( 12,000,000.00 ) |
| | 09/17/2008 | | TFR TO ACCT 732-41223-1 | ( 4,500,000.00 ) • |
| | 09/17/2008 | | REF # 9N44323 | ( 919,994.61 ) |

## LEHMAN BROTHERS

**For the period 08/01/2008 to 08/29/2008**

**STONEHILL INSTITUTIONAL
PARTNERS LP**

**Base Currency   : USD
Account Number : 732-40126 H81**

08-13555-scc   Doc 45573-39
(A-39 - Institutional LBHI)   Filed 08/05/14   Entered 08/05/14 14:51:02   Exhibit
Pg 72 of 89

## Monthly Activity (i)

| PURCHASES & SALES | Settlement Date | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| (Continued) | | | | UNSOLICITED<br>TMS087087087202051 9TMS<br>PLUS  406.62 COMM | | |
| | 08/11/2008 | SOLD SHORT | 270,000 | ***BARRATT DEVELOPMENTS PLC<br>AVERAGE PRICE<br>UNSOLICITED<br>SHORT.<br>TMS-REF200808060073761<br>TMS08708708700 73761TMS<br>305,569.29 GBP TOTAL | 2.2065 | 595,157.31 |
| | 08/11/2008 | SOLD SHORT | 270,000 | ***BARRATT DEVELOPMENTS PLC<br>AVERAGE PRICE<br>UNSOLICITED<br>SHORT.<br>TMS-REF200808110131089<br>TMS0871170870131089TMS<br>305,569.29 GBP TOTAL | 2.2065 | 595,157.31 |
| | 08/12/2008 | SOLD | 1,830 | ALLIANCE DATA SYSTEM CORP<br>UNSOLICITED<br>TMS087087087018 2498TMS<br>LESS  36.60 COMM  0.87 FEE | 64.5610 | 118,109.36 |
| | 08/12/2008 | BOUGHT | 17,550 | ACACIA RESEARCH - ACACIA<br>TECHNOLOGIES<br>UNSOLICITED<br>TMS087087087017 6162TMS<br>PLUS  526.50 COMM | 4.1589 | ( 73,515.20 ) |
| | 08/12/2008 | BOUGHT | 4,000,000 | ***MAC CAPITAL LLC<br>COMBINATION SECS MEMBERSHIP<br>INT<br>UNSOLICITED<br>TMS0871170870044490TMS<br>PLUS   0.00 COMM<br>CHARGED BY CHSE | .3275 | ( 1,310,000.00 ) |

# LEHMAN BROTHERS INC
## TRADE CONFIRMATION

To:   Stonehill Institutional Partners, L.P.
      Contact: Steve Nelson
      Tel No.: 212-739-7470
      Fax No.: 212-838-2291
      Email:   snelson@stonehillcap.com

From:  Lehman Brothers Inc.
       Contact: Denise Rosselli          Trade Confirmations: Jessica Markowitz
       Tel No.:  212-526-1490             Tel. No.:      212-526-1490
       Fax No.:  646-758-4993             Fax No.:       646-758-4993
       Email:    drossell@lehman.com      Email:  Jessica.markowitz@lehman.com

We are pleased to confirm the following transaction (the "Transaction"):

| | |
|---|---|
| Trade Date: | March 27, 2008 |
| Seller: | Stonehill Institutional Partners, L.P., as Principal |
| Buyer: | Lehman Brothers Inc., as Principal |
| Issuer: | US Power Generating Company |
| Quantity | 6,400 Class A Shares issued under Certificate of Incorporation (as amended or amended and restated from time to time, the Certificate of Incorporation") of US Power Generating Company, a Delaware corporation |
| Purchase Price: | $28.00 per Unit |

Other terms:

1.  Buyer and Seller agree that the Transaction shall be subject to the transfer requirements set forth in the Certificate of Incorporation; it being understood and agreed that Buyer shall cooperate in all reasonable respects with Seller to cause the Transaction to satisfy such requirements;

2.  Buyer and Seller agree to execute and deliver any necessary documentation required pursuant the Certificate of Incorporation (the "Certificate") or by counsel to the Issuer (including, without limitation, in the case of Buyer, a Rule 144A Certificate, Regulatory Certificate and if applicable, a Confidentiality Agreement and, in the case of both parties, a NASD Transfer Form and Letter Agreement with respect to Section 1(b)(i) of Article Five of the Certificate), in order to effect the Transaction.

3.  All dividends, payments or any other distributions made on or after the Trade Date are for the Buyer's account.

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the attention of *Jessica Markowitz* at the following e-mail address: Jessica.markowitz@lehman.com.

If you have any questions, please contact *Jessica Markowitz* at *212-526-7598.*

2

**LEHMAN BROTHERS INC.**

By: _____

Name: **MARTHA G. MARTINEZ**

Title: **AUTHORIZED SIGNATORY**

Date: _____

**Stonehill Institutional Partners, L.P.**

By: _____

Name: Steven D. Nelson

Title: CFO

Date: 4/3/08

NYC:147889.2

# LEHMAN BROTHERS INC
## TRADE CONFIRMATION

To:    **Stonehill Offshore Partners Limited**
       Contact: Steve Nelson
       Tel No.: 212-739-7470
       Fax No.: 212-838-2291
       Email:    snelson@stonehillcap.com

From:  Lehman Brothers Inc.
       Contact: Denise Rosselli                    Trade Confirmations: Jessica Markowitz
       Tel No.:    212-526-1490                     Tel. No.:    212-526-1490
       Fax No.:    646-758-4993                     Fax No.:    646-758-4993
       Email:    drossell@lehman.com                Email:    Jessica.markowitz@lehman.com

We are pleased to confirm the following transaction (the "Transaction"):

| | |
|---|---|
| **Trade Date:** | March 27, 2008 |
| **Seller:** | Stonehill Offshore Partners Limited, as Principal |
| **Buyer:** | Lehman Brothers Inc., as Principal |
| **Issuer:** | US Power Generating Company |
| **Quantity** | 8,730 Class A Shares issued under Certificate of Incorporation (as amended or amended and restated from time to time, the Certificate of Incorporation") of US Power Generating Company, a Delaware corporation |
| **Purchase Price:** | $28.00 per Unit |

Other terms:

1. Buyer and Seller agree that the Transaction shall be subject to the transfer requirements set forth in the Certificate of Incorporation; it being understood and agreed that Buyer shall cooperate in all reasonable respects with Seller to cause the Transaction to satisfy such requirements;

2. Buyer and Seller agree to execute and deliver any necessary documentation required pursuant the Certificate of Incorporation (the "Certificate") or by counsel to the Issuer (including, without limitation, in the case of Buyer, a Rule 144A Certificate, Regulatory Certificate and if applicable, a Confidentiality Agreement and, in the case of both parties, a NASD Transfer Form and Letter Agreement with respect to Section 1(b)(l) of Article Five of the Certificate), in order to effect the Transaction.

3. All dividends, payments or any other distributions made on or after the Trade Date are for the Buyer's account.

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the attention of *Jessica Markowitz* at the following e-mail address: Jessica.markowitz@lehman.com.

If you have any questions, please contact *Jessica Markowitz* at *212-526-7598.*

NYC:147889.2

08-13555-mg    Doc 46785    Filed 10/31/14    Entered 10/31/14 16:10:28    Main Document
08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional    LBHI)    Pg 76 of 89

page 4 of 4

2

**LEHMAN BROTHERS INC.**

By: _____

Name: __MARTHA G. MARTINEZ__
        AUTHORIZED SIGNATORY

Title: _____

Date: _____

**Stonehill Offshore Partners Limited**

By: _____

Name: __Steven D. Nelson__

Title: __CFO__

Date: __4/2/08__

NYC:147889.2

20 .

**MARGIN SUMMARY**
**COB**
**9-19-08**

page 1 of 3

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional LBHI)    Pg 77 of 89

**940-86786 STONEHILL INST PARTNERS LP  COB 9-19-08**

*TOTAL COLLATERAL*
**TOTAL LMV TYPE 1 LONG POSITIONS (ELIGIBLE FOR DELIVERY)**          0.00
**TOTAL LMV TYPE 2 LONG POSITIONS (ELIGIBLE FOR DELIVERY)**          0.00
**TYPE 1 CREDIT BALANCE**                                      305,020.80
                                        **TOTAL COLLATERAL**   305,020.80

*TOTAL EXPOSURES*
**TOTAL MKT VALUE TYPE 1 SHORT POSITION**                      423,640.00

                                        **TOTAL EXPOSURES**    423,640.00

**TOTAL COLLATERAL NEEDED TO SATISFY THE MARGIN REQUIRED FOR THIS ACCOUNT**      $118,619.20  ← 118,619.20

if copy is
not legible

                **TOTAL VALUE OF POSITIONS AVAILABLE FOR DELIVERY**    0.00
                        **TOTAL CASH VALUE AVAILABLE FOR PAYMENT**    0.00

**Note: Proceeds generated from the close out of shorts will result in a cash in lieu claim

page 2 of 3

Status
REST

TYPE I
SHORT POSITION

Acct Num  Acct Type  TD Pos    SD Pos    Description
64068785   01        -15,130            0 US POWER GENERATING COMPANY

Symbol  CUSIP        Coupon  Maturity Date  CCY  Mkt. Price  CCY  CCY  Mkt. Value  USD  Mkt. Value  House Req.(USD)
NULL    XX9N3858I1           0                   0 USD                0                0             127,082

```
BMR56    CLIENT 012                        MARGIN ACTIVITY STATEMENTS           09/19/08        PAGE 220574
940-86785    RR: 945 STONEHILL INST PARTN       CURR-CODE: 000
- - - - - -BALANCES - - - - - - - - -
TC       OPEN T/D BAL        CLOSE T/D BAL        OPEN S/D BAL      CLOSE S/D BAL       MARKET VALUE      DLA
15       305,020.80-          305,020.80-          00.00             00.00             423,640-    05/27/08
- - - - - -ACTIVITY - - - - - - - -
NO ACTIVITY FOR THIS ACCOUNT
- - - - - -POSITIONS - - - - - - - -
TC  LDA        LONG/SHORT(-)  SECURITY DESCRIPTION      CUSIP/SEC      PRICE       MARKET VALUE     MARGIN REQUIREMENT
15  020209      15,130.0000-  US POWER GENERATING COMPANY  XX9N38581O   0.00000H        0              127,092 xxx
FROZEN FUNDS    423,640.00-                               9N38581
- - - - - -T O T A L S - - - - - -
TOT MV       423,640-  QLD SMA           0      SMA              0  SMA CHANGE             0
EQUITY       118,619-  LIQ EQT     118,619-EQY %    0 HOUSE EXCESS     0  NEW HSE CALL          0
CSH AV            0  BUYING P           0      OTHER EXCESS     0  NYSE OPT REQ          0
```

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional   LBHI)    Pg 79 of 89

SI   Exhibit H(c)

7                                                                      Equity**MSG**

1<GO>DEL 2<GO>REPLY 3<GO>FWD 11<GO>NEXT 12<GO>PREV 99<GO>OPTIONS
    1/23 8:50:20                                                       Page 1 / 2
    From: ●JAY COYLE (MERRILL LYNCH/NY,WFC)
    Subject: PROJECT ENERGY BANK DEBT -
        No Attachments
FIRST DAY AT BANK OF AMERICA                                          Cell:(917)699-9191
ENERGY PROJECT BANK DEBT

| | | | | | | |
|---|---|---|---|---|---|---|
| ANP TL A | $92 - 94$ | 3x3 | LA PALOMA 1ST | $71 - 73\frac{1}{2}$ | 3x |
| ANP TL B | $89 - 91$ | 3x3 | LA PALOMA 2ND | $59 - 63$ | 2x2 |
| BOSTON GEN 1ST | $62\frac{1}{4} - 64\frac{1}{4}$ | 5x3 | LIBERTY ELEC 1ST | $75 - 80$ | |
| BOSTON GEN 2ND | $26\frac{1}{2} - 31\frac{1}{2}$ | 2x2 | LIBERTY ELEC MEZZ | $50 - 55$ | |
| BOSTON GEN MEZZ | $7 - 12$ | 2x2 | LONGVIEW STRIP | $70 - 72$ | P/B |
| US POWER EQUITY | 6.00 -7.50 | 50kx75k | MACHGEN 2ND | $60 - 62$ | 3x3 |
| BOSQUE TERM | $65 - 70$ | 3x | MACHGEN UNITS | $90 - 130$ | 5kx5k |
| ENTEGRA 2ND LIEN | $71 - 72\frac{1}{2}$ | 3x3 | TENASKA 1ST | $88 - 90$ | |
| ENTEGRA 3RD LIEN | $33 - 35$ | 3x3 | TENASKA 2NDS | $62 - 65$ | 2x2 |
| ENTEGRA EQUITY | 3.00 -4.00 | 75x75 | ASTORIA 1ST | $84\frac{1}{2} - 86$ | |
| KELSON 1ST | $78 - 81$ | 3x2 | ASTORIA 2NDS | $71 - 74$ | P/S |
| KELSON 2ND | $47\frac{1}{2} - 51\frac{1}{2}$ | 5x5 | | | |
| KELSON MEZZ | $27 - 37$ | | | | |

| 8/15/2008 | Total Qty | Off | SI | | Total Cost | Off | SI |
|---|---|---|---|---|---|---|---|
| Original trade | 55,000 | 25,300 | 29,700 | | 41,402.00 | 19,045.00 | 22,357.00 |
| Unsettled | 14,000 | 6,440 | 7,560 | | 10,539 | 4,847.82 | 5,690.87 |
| | 25.45% | | | | 25.45% | | |
| Corrected | 41,000 | 18,860 | 22,140 | | 30,863 | 14,197.18 | 16,666.13 |
| | | | | | | | |
| 8/20/2008 | | | | | | | |
| Original trade | 60,500 | 27,830 | 32,670 | | 46,029 | 21,173.00 | 24,856.00 |
| Unsettled | 45,500 | 20,930 | 24,570 | | 34,617 | 15,923.50 | 18,693.36 |
| | 75.21% | | | | 75.21% | | |
| Corrected | 15,000 | 6,900 | 8,100 | | 11,412 | 5,249.50 | 6,162.64 |
| | | | | | | | |
| | | | | | | | |
| Pre-adj | 7,654,640 | 5,490,156 | 2,164,484 | | 5,663,502.66 | 3,974,221.71 | 1,689,280.95 |
| Adjustments | | (27,370) | (32,130) | | | (20,771.31) | (24,384.23) |
| New | 7,595,140 | 5,462,786 | 2,132,354 | | 5,618,347.12 | 3,953,450.40 | 1,664,896.72 |
| | | | | | | | |
| | | | | | | | |
| Cash Adj on unsettled | CAD | | | Rate | USD | | |
| 8/15/2008 | 11,193.00 | 5,148.78 | 6,044.22 | 0.94154 | | | |
| 8/20/2008 | 36,818.60 | 16,936.56 | 19,882.04 | 0.94020 | | | |
| Claim on Exibit I | 48,011.60 | 22,085.34 | 25,926.26 | | | | |
| CUSIP # 989139100 | | | | | | | |

page 1 of 3

08-13555-scc    Doc 45573-39    Filed 08/05/14    Entered 08/05/14 14:51:02    Exhibit
(A-39 - Institutional LBHI)    Pg 82 of 89

**Stonehill Institutional - Exhibit J**

**FX Forward Adj**

**9/19/2008**

| FX | Due Date | Instituitional Qty | Cost | Price | FMV | Unrealized |
|----|----------|--------------------|------|-------|-----|------------|
| CAD | 5/26/09 | (6,650,000) | (6,443,798.45) | 0.9510046 | (6,324,180.74) | 119,617.71 |
| CAD | 5/26/09 | (6,480,000) | (6,309,332.55) | 0.9510046 | (6,162,509.95) | 146,822.60 |
| CHF | 12/29/08 | (19,000,000) | (18,399,264.03) | 0.9103138 | (17,295,962.04) | 1,103,301.99 |
| Euro | 12/29/08 | (9,000,000) | (13,641,480.00) | 1.4439997 | (12,995,997.30) | 645,482.70 |
| Euro | 6/24/09 | (4,114,500) | (6,321,929.25) | 1.4326946 | (5,894,821.93) | 427,107.32 |
| GBP | 9/22/08 | (3,900,000) | (7,704,450.00) | 1.8357450 | (7,159,405.50) | 545,044.50 |
| GBP | 12/22/08 | (6,000,000) | (11,831,400.00) | 1.8262393 | (10,957,435.80) | 873,964.20 |
| GBP | 3/26/09 | (3,000,000) | (5,787,600.00) | 1.8152082 | (5,445,624.60) | 341,975.40 |
| GBP | 6/24/09 | (6,000,000) | (11,552,700.00) | 1.8061452 | (10,836,871.20) | 715,828.80 |
| | | | (87,991,954.28) | | (83,072,809.06) | 4,919,145.22 |

**TOTAL**                                    **4,919,145.22**

LEHMAN BROTHERS INC
745 7TH AVE
NY  10019

**FUTURES/FOREIGN EXCHANGE CONFIRMATION**

STONEHILL INSTUTIONAL PART LP
885 THIRD AVE, 30TH FLR
NEW YORK, NY  10022-4834

| SEP 22, 2008 | |
| --- | --- |
| IR NUMBER | ACCOUNT |
| 099 | 23040126 |
| Page | 2 |

US NON-SEGREGATED ACCOUNT

- - - - - - - - - - - - F O R E I G N    E X C H A N G E    O P E N    P O S I T I O N S - - - - - - - - - - - - -

| Date | B/S | Base Currency Maturity Currency Pair | Counter Amount | Rate | Net Present Value |
| --- | --- | --- | --- | --- | --- |
| | | | Total FX Long Option value | | 0CR* USD |
| | | | Total FX Short Option Value | | 0CR* USD |
| | | | Net FX Option Value | | 0CR* USD |

- - - - - - - - - - - - - - - Foreign Exchange Position Delta Summary - - - - - - - - - - - - - - - -

| Curr | Notional | USD Equivalent | Delta Notional | Delta USD Equiv |
| --- | --- | --- | --- | --- |
| EUR | 13,114,500.00DB | 18,890,819.23DB | 13,114,500.00DB | 18,890,819.23DB |
| SBP | 15,000,000.00DB | 27,239,931.60DB | 15,000,000.00DB | 27,239,931.60DB |
| CAD | 13,130,000.00DB | 12,486,690.69DB | 13,130,000.00DB | 12,486,690.69DB |
| CHF | 19,000,000.00DB | 17,295,962.04DB | 19,000,000.00DB | 17,295,962.04DB |
| Sum of the Absolute Values: | | 75,913,403.56 | | 75,913,403.56 |

- - - - - - - - - - M A R G I N    R E Q U I R E M E N T    S U M M A R Y - - - - - - - - - - - - - - - - - - - - - - -

| | Margin Requirement Initial | Equity Excess/Deficit | Margin Call/Excess |
| --- | --- | --- | --- |
| SBP | 0CR | 3,900,000.00DB | 3,900,000.00DB |
| PY | CR | CR | CR |
| ISD | 3,738,916.79DB | 7,704,450.00CR | 3,965,533.21CR |

otal Value in Base Currency

| SD | 3,738,916.79DB | 545,044.50CR | 3,193,872.29DB |

- - - - - - - - - - - - - - - A C C O U N T    V A L U E    S U M M A R Y - - - - - - - - - - - - - - - - - - - - - -

| | Account Balance | Unrealized G/L on Futures | Net Present Value on Forwards | Net Option Value | Collateral Market Value | Net Liquidating Value |
| --- | --- | --- | --- | --- | --- | --- |
| BP | 3,900,000.00DB | 0CR | 0CR | 0CR | 0CR | 3,900,000.00DB |
| PY | CR | CR | CR | CR | CR | CR |
| SD | 7,704,450.00CR | 0CR | 4,311,956.94CR | 0CR | 0CR | 12,016,406.94CR |

otal Value in Base Currency

| SD | 545,044.50CR | 0CR | 4,311,956.94CR | 0CR | 0CR | 4,857,001.44CR |

******* CURRENCY  CONVERSION  RATES ********

Base Currency - USD

| POUND STG | GBP | 1.8357450 * |
| --- | --- | --- |
| J YEN | JPY | 107.0700000 * |



Exhibit J
page 8 of 3

LEHMAN BROTHERS INC
745 7TH AVE
NY  10019

### FUTURES/FOREIGN EXCHANGE CONFIRMATION

STONEHILL INSTUTIONAL PART LP
885 THIRD AVE, 30TH FLR
NEW YORK, NY  10022-4834

| SEP 22, 2008 | |
| --- | --- |
| IR NUMBER | ACCOUNT |
| 099 | 23040126 |
| Page | 1 |

US NON-SEGREGATED ACCOUNT

- - - - - OPENING  ACCOUNT  BALANCES - - - -

| POUND STG | 0CR |
| J YEN | CR |
| US DOLLAR | 0CR |

- - - - - - - - - - - - - - - - - F O R E I G N    E X C H A N G E    S E T T L E M E N T S - - - - - - - - - - - - - -

| Date  B/S | Base Currency Maturity Currency Pair | Counter Amount | Rate | Net Present Value |
| --- | --- | --- | --- | --- |

The settlement amounts shown below are reflected in the closing cash balance for each currency.

| 9/19/07 S | 3,900,000.00DB 22SEP08 GBP/USD | 7,704,450.00CR TYPE  1.9755000 | | |

- - -  CLOSING  ACCOUNT  BALANCES - - - - -

| POUND STG | 3,900,000.00DB* |
| YEN | CR* |
| US DOLLAR | 7,704,450.00CR* |

- - - - - - - - - - - ' - - F O R E I G N    E X C H A N G E    O P E N    P O S I T I O N S - - - - - - - - - - - - - - -

| Date  B/S | Base Currency Maturity Currency Pair | Counter Amount | Rate | Net Present Value |
| --- | --- | --- | --- | --- |
| 3/24/08 S | 9,000,000.00DB 29DEC08 EUR/USD | 13,641,480.00CR TYPE  1.5157200 | | 639,862.62CR  USD |
| | | Net Present Value | | 639,862.62CR* USD |
| | | Undiscounted MTM | 1.4439997 645,482.70CR* USD | |
| 6/20/08 S | 4,114,500.00DB 24JUN09 EUR/USD | 6,321,929.25CR TYPE  1.5365000 | | 416,651.54CR  USD |
| | | Net Present Value | | 416,651.54CR* USD |
| | | Undiscounted MTM | 1.4326946 427,107.32CR* USD | |
| 2/19/07 S | 6,000,000.00DB 22DEC08 GBP/USD | 11,831,400.00CR TYPE  1.9719000 | | 866,930.35CR  USD |
| | | Net Present Value | | 866,930.35CR* USD |
| | | Undiscounted MTM | 1.8282393 873,964.20CR* USD | |
| 3/24/08 S | 3,000,000.00DB 26MAR09 GBP/USD | 5,787,600.00CR TYPE  1.9292000 | | 336,014.78CR  USD |
| | | Net Present Value | | 336,014.78CR* USD |
| | | Undiscounted MTM | 1.8152082 341,975.40CR* USD | |
| 5/20/08 S | 6,000,000.00DB 24JUN09 GBP/USD | 11,552,700.00CR TYPE  1.9254500 | | 698,304.99CR  USD |
| | | Net Present Value | | 698,304.99CR* USD |
| | | Undiscounted MTM | 1.8061452 715,828.80CR* USD | |
| /10/08 B | 6,309,332.55CR 26MAY09 USD/CAD | 6,480,000.00DB TYPE  1.0270500 | | 143,547.46CR  USD |
| /31/08 B | 6,443,798.45CR 26MAY09 USD/CAD | 6,650,000.00DB TYPE  1.0320000 | | 116,949.42CR  USD |
| t | 12,753,131.00CR* | 13,130,000.00DB* | | |
| | | Net Present Value | | 260,496.88CR* USD |
| | | Undiscounted MTM | 1.0515196 280,167.21CR* CAD | |
| | | Undiscounted MTM In Base | 266,440.31CR* USD | |
| /20/08 B | 18,399,264.03CR 29DEC08 USD/CHF | 19,000,000.00DB TYPE  1.0326500 | | 1,093,695.78CR  USD |
| | | Net Present Value | | 1,093,695.78CR* USD |
| | | Undiscounted MTM | 1.0985223 1212,001.84CR* CHF | |
| | | Undiscounted MTM In Base | 1103,301.99CR* USD | |
| | | Total FX Forward NPV | | 4,311,956.94CR* USD |
| | | Total FX Undiscounted MTM | | 4,374,100.72CR* USD |

- - - - - C O N T I N U E D    O N    N E X T    P A G E - - - - -

## EXHIBIT C

| THRSF | G88576106 | THUNDERBIRD RESORTS INC NEW | | | | | | | | | (677.50) | 37,204.00 | 223,224.00 | 130,214.00 | (93,010.00) | (206,687.50) |
| N009546 | 640070*111 | WTS NEENAH ENTERPRISES INC NEW | | | | | | | | | 0.00 | 77,444.00 | 91,910.40 | 5,744.40 | (86,166.00) | (199,783.50) |
| CORE | 218681104 | CORE MARK HOLDING CO INC | 0.0000 | 65.000 | 65.000 | 0.0100 | 1.0000 | USD | 1.0000 | 121,192.00 | 7,574.50 | (113,617.50) | 9,357.00 | 251,422.59 | 176,566.59 | (74,856.00) | (181,872.00) |
| 3450402 | 238259Z65 | DAUPHIN CNTY PA GEN AUTH REV OFFICE & PKG-FORUM PL-SER A 6% 01/15/2025 238259Z65 | 0.0000 | 65.000 | 65.000 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 339,439.99 | 252,423.99 | (107,016.00) | 1,295,000.00 | 841,750.00 | 666,018.50 | (175,731.50) | (175,731.50) |
| DAL | 247361702 | DELTA AIR LINES INC DEL COM NEW | 8.1300 | 7.4500 | 8.1300 | 1.0000 | 1.0000 | USD | 1.0000 | 591,804.00 | 4,811,566.52 | 4,693,065.72 | (118,360.80) | 262,805.00 | 2,136,604.65 | 2,084,043.65 | (52,561.00) | (170,921.80) |
| 5253291 | 358430AA4 | FREDIE GOLDMAN INTL INC SUB ICV-IN DEFAULT 4.50% 09/15/2049 358430AA4 | 0.0000 | 4.7500 | 4.7500 | 0.0100 | 1.0000 | USD | 1.0000 | 52,619,000.00 | 2,499,402.50 | 2,367,855.00 | (131,547.50) | 15,677,000.00 | 744,657.50 | 705,465.00 | (39,192.50) | (170,740.00) |
| 5449492 | CH0010348594 | SAIR GROUP-JN DEFAULT 4.25% 02/02/2007 010645182 | 0.0000 | 13.7200 | 13.7200 | 0.0100 | 1.0000 | USD | 1.0000 | 795,000.00 | 109,074.00 | 104,408.30 | (4,665.70) | 12,000,000.00 | 1,646,400.00 | 1,501,044.95 | (145,355.05) | (150,020.75) |
| 5229955 | | PEREGRINE INVEST HOLDINGS LTD | 0.0000 | 0.0145 | 0.0145 | 0.0100 | 1.0000 | USD | 1.0000 | 2,120,000,000.00 | 307,400.00 | 160,696.00 | (146,704.00) | 0.00 | 0.00 | 0.00 | 0.00 | (146,704.00) |
| 5BBPVI55 | XS0301812557 | GMAC BANK GMBH EURO MEDIUM TERM NOTE 5.75% 05/21/2010 N3592XB66 | 109.1440 | 92.3090 | 92.3090 | 0.0100 | 1.0000 | USD | 1.0000 | 920,000.00 | 849,242.80 | 784,410.64 | (64,812.16) | 1,080,000.00 | 996,937.20 | 920,853.36 | (76,083.84) | (140,896.00) |
| 5119024 | 12668S5DW3 | CWHEQ HOME EQUITY LOAN TRUST MTGPC/SERIES 2006-S2 A-2-VAR 5.627% 07/25/2027 12668S5DW3 | 78.1854 | 68.0000 | 68.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 2,150,000.00 | 1,462,000.00 | 1,397,500.00 | (64,500.00) | 2,525,000.00 | 1,717,000.00 | 1,641,250.00 | (75,750.00) | (140,250.00) |
| 5BFBRQ5 | 92625J0AF6 | VICTORIA FIN LTD 144A VR 090908-021709 0% 2/17/2009 92625J0AF6 | 65.0000 | 42.0000 | 42.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 1,100,000.00 | 462,000.00 | 385,000.00 | (77,000.00) | 900,000.00 | 378,000.00 | 315,000.00 | (63,000.00) | (140,000.00) |
| 5497868 | 339130AX4 | FLEMING COMPANIES INC SENIOR NOTES 9.25% 06/15/2010 339130AX4 | 0.0000 | 2.5000 | 2.5000 | 0.0100 | 1.0000 | USD | 1.0000 | 17,368,000.00 | 434,200.00 | 347,360.00 | (86,840.00) | 7,882,000.00 | 197,050.00 | 157,640.00 | (39,410.00) | (126,250.00) |
| 5BBKVC2 | 640071AR7 | NEENAH CORP SR SECD NT 9.50% 01/01/2017 640071AR7 | 76.6250 | 72.0000 | 72.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 460,000.00 | 331,200.00 | 273,700.00 | (57,500.00) | 540,000.00 | 388,800.00 | 321,300.00 | (67,500.00) | (125,000.00) |
| 5204979 | 247361VM7 | DELTA AIR PTC 1990-B16 10.33% 03/26/2006 247361VM7 | 0.0000 | 34.1063 | 34.1063 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 1,801,000.00 | 614,254.46 | 497,537.06 | (116,717.40) | (116,717.40) |
| 5231755 | 87941TAD7 | TELEGLOBE INC GTD DEB 7.2% 07/20/2009 87941TAD7 | 0.0000 | 1.2500 | 1.2500 | 0.0100 | 1.0000 | USD | 1.0000 | 26,335,000.00 | 329,187.50 | 263,350.00 | (65,837.50) | 16,619,000.00 | 207,737.50 | 166,190.00 | (41,547.50) | (107,385.00) |
| 5084588 | 247361VU9 | DELTA AIR PTC 1990-B16 10.79% 03/26/2014 247361VU9 | 81.5000 | 42.3770 | 42.3770 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 1,250,000.00 | 529,712.50 | 425,528.75 | (104,183.75) | (104,183.75) |
| T104832 | 879417972 | TELEGLOBE CANADA INC TEMP 8% 10/23/2026 | 0.0000 | 0.0080 | 0.0080 | 0.0100 | 1.0000 | USD | 1.0000 | 13,000,000.00 | 104,000.00 | 51,275.86 | (52,724.14) | 12,000,000.00 | 96,000.00 | 47,331.56 | (48,668.44) | (101,392.58) |
| 5406872 | 59832WAE9 | MIDWEST GENERATION LLC PASSTHRU CTF SER A 8.30% 07/02/2009 59832WAE9 | 102.5940 | 100.7500 | 100.7500 | 0.0100 | 1.0000 | USD | 1.0000 | 2,625,000.00 | 2,644,687.50 | 2,546,250.00 | (98,437.50) | 0.00 | 0.00 | 0.00 | 0.00 | (98,437.50) |
| 5197153 | 247361VK1 | DELTA AIR PTC 1990-C15 10.33% 03/26/2006 247361VK1 | 0.0000 | 34.1771 | 34.1771 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 1,601,000.00 | 547,175.37 | 451,009.71 | (96,165.66) | (96,165.66) |
| EXEXA | 269282109 | EXX INC-CL A | 2.4500 | 1.4047 | 2.4500 | 1.0000 | 1.0000 | USD | 1.0000 | 51,850.00 | 127,032.50 | 80,367.50 | (46,665.00) | 51,850.00 | 127,032.50 | 80,367.50 | (46,665.00) | (93,330.00) |
| 5255212 | 987406AA5 | YOSEMITE SECURITIES TRUST I 99-A LNKD ENRN OBLG LDS-DFLT 8.25% 11/15/2049 987406AA3 | 0.5000 | 2.0000 | 2.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 4,350,000.00 | 87,000.00 | 2,718.75 | (84,281.25) | 450,000.00 | 9,000.00 | 281.25 | (8,718.75) | (93,000.00) |
| 5451783 | 247361VW5 | DELTA AIR PTC 1990-D16 10.79% 03/26/2014 247361VW5 | 81.5000 | 34.3068 | 34.3068 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 1,500,000.00 | 514,602.00 | 423,966.00 | (90,636.00) | (90,636.00) |
| 5778017 | 12556BAE5 | CIT GROUP FDG CO CDA SR NT 5.6% 11/02/2011 12556BAE5 | 80.0749 | 60.5000 | 60.5000 | 0.0100 | 1.0000 | USD | 1.0000 | 4,815,000.00 | 2,913,075.00 | 2,864,925.00 | (48,150.00) | 3,935,000.00 | 2,380,675.00 | 2,341,325.00 | (39,350.00) | (87,500.00) |
| 5611267 | 70557RAA8 | PEGASUS AVIATION LEASE SECURITIZATION IIASTBK/SERIES 5.81% 05/10/2031 70557RAA8 | 0.0000 | 43.0000 | 43.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 1,000,000.00 | 430,000.00 | 352,500.00 | (77,500.00) | 0.00 | 0.00 | 0.00 | 0.00 | (77,500.00) |
| 5174451 | 629377AN2 | NRG ENERGY INC SENIOR DEB 6.50% 05/16/2006 629377AN2 | 0.0000 | 0.3896 | 0.3896 | 0.0100 | 1.0000 | USD | 1.0000 | 25,097,250.00 | 97,626.75 | 57,631.68 | (39,995.07) | 22,005,250.00 | 85,735.70 | 50,612.08 | (35,123.62) | (75,118.69) |
| 5648314 | 247361VX3 | DELTA AIR PTC 1990-E16 10.79% 03/26/2014 247361VX3 | 0.0000 | 34.1063 | 34.1063 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000,000.00 | 1,705,315.00 | 1,632,090.00 | (73,225.00) | (73,225.00) |
| 5BBFSB4 | 85411AFH5 | VICTORIA STANFIELD FIN LTD MTN VR 032406-032509 3.13% 3/24/2009 85411AFH5 | 0.0000 | 42.0000 | 42.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 550,000.00 | 231,000.00 | 192,500.00 | (38,500.00) | 450,000.00 | 189,000.00 | 157,500.00 | (31,500.00) | (70,000.00) |
| 5BBKJQ7 | 2284499A4 | CROWN PAPER CO SR SUB NOTES -ESCROW CUSIP- 11% 09/01/2005 2284499A4 | 0.0000 | 0.2500 | 0.2500 | 0.0100 | 1.0000 | USD | 1.0000 | 29,260,000.00 | 73,150.00 | 36,575.00 | (36,575.00) | 25,937,000.00 | 64,842.50 | 32,421.25 | (32,421.25) | (68,996.25) |
| 5346617 | XS0120313605 | TXU EUROPE FUNDING LTD EURO ISSUE- IN DEFAULT 7% 11/30/2007 | 0.0000 | 4.0000 | 4.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 8,503,000.00 | 340,120.00 | 307,151.75 | (32,968.25) | 7,429,000.00 | 297,160.00 | 268,355.91 | (28,804.09) | (61,772.34) |
| 5596000 | 84133BAA4 | SOUTHEAST BANKING CORP CV SUD -REG- FLAT 4.75% 10/15/1997 84133BAA4 | 0.0000 | 3.0000 | 3.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 1,839,000.00 | 55,170.00 | 2,298.75 | (52,871.25) | 0.00 | 0.00 | 0.00 | 0.00 | (52,871.25) |
| 5263095 | XS0108136465 | RSL COMMUNICATION LTD -DEFAULTED 12.875% 03/01/2010 | 0.0000 | 4.0000 | 4.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 2,000,000.00 | 80,000.00 | 29,000.00 | (51,000.00) | (51,000.00) |
| 5334867 | XS0107420217 | PASMINCO FINANCE LTD EURO MEDIUM TERM NOTE 0% 02/10/2049 Q73665AA1 | 0.0001 | 7.0000 | 7.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 1,250,000.00 | 87,500.00 | 37,500.00 | (50,000.00) | (50,000.00) |
| 5454713 | CH0004931496 | SAIRGROUP - IN DEFAULT 2.75% 07/30/2004 | 13.7200 | 13.7200 | 13.7200 | 0.0100 | 1.0000 | USD | 1.0000 | 2,265,000.00 | 310,758.00 | 297,465.17 | (13,292.83) | 2,815,000.00 | 386,218.00 | 350,931.64 | (35,286.36) | (48,579.19) |
| 5649514 | 247361VL9 | DELTA AIR PTC 1990-D15 10.33% 03/26/2006 247361VL9 | 0.0000 | 34.3068 | 34.3068 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 801,000.00 | 274,797.47 | 226,397.84 | (48,399.63) | (48,399.63) |
| 5856171 | XS0282593440 | FCE BANK PLC EURO MEDIUM TERM NOTE 7.125% 01/16/2012 G333658SQ4 | 116.8762 | 99.8970 | 99.8970 | 0.0100 | 1.0000 | USD | 1.0000 | 500,000.00 | 499,485.00 | 468,095.50 | (31,389.50) | 500,000.00 | 499,485.00 | 485,561.75 | (13,923.25) | (45,312.75) |
| 5296457 | CH0026828961 | S-AIR GROUP IN DEFAULT 2.125% 11/04/2004 | 0.0000 | 13.7200 | 13.7200 | 0.0100 | 1.0000 | USD | 1.0000 | 1,850,000.00 | 253,820.00 | 242,962.72 | (10,857.28) | 1,715,000.00 | 235,298.00 | 213,800.27 | (21,497.73) | (32,355.01) |
| 5370856 | 339130AP1 | FLEMING COS INC NTS 10.125% 04/01/2008 339130AP1 | 0.0000 | 2.5000 | 2.5000 | 0.0100 | 1.0000 | USD | 1.0000 | 1,185,000.00 | 29,625.00 | 23,700.00 | (5,925.00) | 5,000,000.00 | 125,000.00 | 100,000.00 | (25,000.00) | (30,925.00) |
| 5123317 | | SOUTHEAST BANKING CORP EURO 0-CPN STAMPED CERT 0% 12/18/1996 | 0.0000 | 3.0000 | 3.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 2,410,000.00 | 72,300.00 | 60,250.00 | (12,050.00) | 3,300,000.00 | 99,000.00 | 82,500.00 | (16,500.00) | (28,550.00) |
| 5596002 | 84133BAG1 | SOUTHEAST BANKING CORP SUB CAP CV NOTES-REG-FLAT- *IN DEFAULT 6.5% 03/15/1999 84133BAG1 | 0.0000 | 3.0000 | 3.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 992,000.00 | 29,760.00 | 1,240.00 | (28,520.00) | 0.00 | 0.00 | 0.00 | 0.00 | (28,520.00) |
| 5404497 | XS0097617996 | HIH WINTERTHUR UNDERAG'GY SVC LTD EURO MEDIUM TERM NOTE 5.987% 12/31/2049 Q36895AB8 | 0.0001 | 1.0000 | 1.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 1,740,000.00 | 17,400.00 | 0.00 | (17,400.00) | 760,000.00 | 7,600.00 | 0.00 | (7,600.00) | (25,000.00) |
| 5274711 | XS0108136036 | RSL COMMUNICATIONS PLC 12.875% 03/01/2010 | 0.0000 | 4.0000 | 4.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 1,000,000.00 | 40,000.00 | 16,100.00 | (23,900.00) | (23,900.00) |
| 5275991 | XS0108297044 | TXU EASTERN FUNDING 7.25% 03/08/2030 | 0.0000 | 8.9000 | 8.9000 | 0.0100 | 1.0000 | USD | 1.0000 | 300,000.00 | 26,700.00 | 12,952.80 | (13,747.20) | 200,000.00 | 17,800.00 | 8,700.60 | (9,099.40) | (23,900.00) |
| 5343324 | 30208BAN9 | EXODUS COMMUNICATIONS SENIOR NOTES- *IN DEFAULT* 11.375% 07/15/2008 30208BAN9 | 0.0000 | 0.1100 | 0.1100 | 0.0100 | 1.0000 | USD | 1.0000 | 13,650,000.00 | 15,017.40 | 0.00 | (15,017.40) | 4,260,000.00 | 4,686.75 | 0.00 | (4,686.75) | (19,704.15) |
| 5BBDQY3 | XS0299967413 | FCE BANK PLC EURO MEDIUM TERM NOTE 7.125% 01/15/2013 G333658S0 | 113.2334 | 97.0810 | 97.0810 | 0.0100 | 1.0000 | USD | 1.0000 | 250,000.00 | 242,707.50 | 223,568.00 | (19,139.50) | 250,000.00 | 242,707.50 | 244,527.50 | 1,820.00 | (17,319.50) |
| 5065089 | 493137AC5 | KEY PLASTICS INC SR SUB NOTE SER B 10.25% 03/15/2007 493137AC5 | 0.0000 | 1.0500 | 1.0500 | 0.0100 | 1.0000 | USD | 1.0000 | 1,650,000.00 | 17,325.00 | 8,250.00 | (9,075.00) | 1,350,000.00 | 14,175.00 | 6,750.00 | (7,425.00) | (16,500.00) |
| CDCO | 200334100 | COMDISCO HOLDING COMPANY INC | 9.8000 | 9.5100 | 9.8000 | 1.0000 | 1.0000 | USD | 1.0000 | 6,664.00 | 65,307.20 | 56,644.00 | (8,663.20) | 4,837.00 | 47,402.60 | 41,114.50 | (6,288.10) | (14,951.30) |
| 5BDQM12 | 612MM8PC4 | NORTHWESTERN CORP - MONTANA POWER CO - CONTRA CUSIP - 0% 12/23/2026 612MM8PC4 | 0.0000 | 7.0000 | 7.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 340,000.00 | 23,800.00 | 18,020.00 | (5,780.00) | 275,000.00 | 19,460.00 | 14,734.00 | (4,726.00) | (10,506.00) |
| 5NA4809 | | TELEGLOBE INC UNSECURED DEBENTURE IN DEFAULT 8.35% 06/20/2003 | 3.9844 | 0.8000 | 0.8000 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 3,718,000.00 | 29,744.00 | 22,769.00 | (9,730.40) | (9,730.40) |
| 5BDQM10 | 612MM8PA9 | NORTHWESTERN CORP - MONTANA POWER CO - TENDER OFFER - 7.96% 12/21/2026 612MM8PA9 | 6.8750 | 7.0000 | 7.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 201,000.00 | 14,070.00 | 10,653.00 | (3,417.00) | 167,000.00 | 11,690.00 | 8,851.00 | (2,839.00) | (6,256.00) |
| 5BDQPD8 | 612MM8MA0 | NORTHWESTERN CORP - MONTANA POWER CO - TENDER OFFER - 7.07% 12/20/2006 612MM8PB6 | 6.8750 | 7.0000 | 7.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 197,000.00 | 13,790.00 | 10,441.00 | (3,349.00) | 162,000.00 | 11,340.00 | 8,586.00 | (2,754.00) | (6,103.00) |
| TDFXQ | 88551X103 | 3DFX INTERACTIVE INC | 0.0210 | 0.0300 | 0.0210 | 1.0000 | 1.0000 | USD | 1.0000 | 167,000.00 | 4,493.00 | 3,263.40 | (1,631.70) | 94,000.00 | 2,689.50 | 1,974.00 | (694.50) | (2,328.20) |
| 5132068 | 46269 1AA4 | IRIDIUM OPERATING LLC 11.25% 07/15/2005 | 0.0000 | 0.6250 | 0.6250 | 0.0100 | 1.0000 | USD | 1.0000 | 560,000.00 | 3,500.00 | 4,718.75 | 1,303.13 | 0.00 | 0.00 | 0.00 | 0.00 | (1,415.63) |
| 5342596 | XS0108551366 | EXODUS COMMUNICATIONS SENIOR NOTES 10.75% 12/15/2009 | 0.0000 | 0.0085 | 0.0085 | 0.0100 | 1.0000 | USD | 1.0000 | 3,600,000.00 | 306.76 | 0.00 | (306.76) | 7,540,000.00 | 638.31 | 0.00 | (638.31) | (943.06) |
| KANP | 482820308 | KAANAPALI LAND LLC | 32.5000 | 30.8000 | 32.5000 | 1.0000 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 76.00 | 2,470.00 | 1,941.80 | (528.20) | (528.20) |
| 5272401 | 50714 76 | INDORAYON INTL FINANCE USD-DEFAULTED 10% 03/29/2001 Y3982EAA6 | 0.0000 | 4.0000 | 4.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 0.00 | 400,000.00 | 16,000.00 | 0.00 | (400.00) | (400.00) |
| 5308012 | 30208BAK5 | EXODUS COMMUNICATIONS INC SR NT 144A -IN DEFAULT 11.6250% 07/15/2010 30208BAK5 | 0.0000 | 0.2588 | 0.2588 | 0.0100 | 1.0000 | USD | 1.0000 | 105,000.00 | 271.74 | 0.00 | (271.74) | 0.00 | 0.00 | 0.00 | 0.00 | (271.74) |
| 9057457 | 683990BT3 | OPEN CONNECT SYSTEMS INC RESTRICTED | 0.0100 | 0.0000 | 0.0000 | 1.0000 | 1.0000 | USD | 1.0000 | 22,397.00 | 223.97 | 0.00 | (223.97) | 0.00 | 0.00 | 0.00 | (223.97) | (223.97) |
| 5070317 | 739731AB3 | PRATAMA DATAKOM ASIA ACCREDITED DIV8 12.75% 07/15/2005 739731AB3 | 0.0000 | 0.5000 | 0.5000 | 0.0100 | 1.0000 | USD | 1.0000 | 500,000.00 | 50.00 | 0.00 | (50.00) | 0.00 | 0.00 | 0.00 | (50.00) | (50.00) |
| 5957202 | | SECURITIZED MULTIPLE ASSET A2 97-5 0% 06/29/2005 | 0.0000 | 0.0100 | 0.0100 | 0.0100 | 1.0000 | USD | 1.0000 | 4,798,000.00 | 47.98 | 0.00 | (47.98) | 0.00 | 0.00 | 0.00 | (47.98) | (47.98) |
| DYHCS | 703044107 | PATENT LITIGATION TR BENEFICIAL TRUST INTERESTS | 0.0000 | 0.0005 | 0.0005 | 1.0000 | 1.0000 | USD | 1.0000 | 53,071.00 | 26.54 | 26.54 | 0.01 | 20,069.00 | 10.03 | 10.03 | 0.00 | (0.01) |
| KGPHR | 483058111 | RTX KAISER GOVT INTEREST 5.00% 06/15/2005 | 0.0000 | 0.0000 | 0.0000 | 1.0000 | 1.0000 | USD | 1.0000 | 48.00 | 17.86 | 5.38 | 5.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5579099 | 009451AH8 | AIRPLANES PASS THRU TRUST STF CL D 10.875% 03/15/2019 009451AH8 | 0.0000 | 0.0005 | 0.0005 | 0.0100 | 1.0000 | USD | 1.0000 | 31,789,621.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A013124 | 029320991 | AMERICAN RICE INC ESCROW CUSIP | 0.0000 | 0.0000 | 0.0000 | 1.0000 | 1.0000 | USD | 1.0000 | 315,000.00 | 0.00 | 0.00 | 61,288.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5552686 | 02931BAA0 | AMERICAN RICE INC MTG NOTES WCONTINGENT INT 13% 07/31/2002 02931BAA0 | 0.0000 | 0.0000 | 0.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 315,000.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5956314 | T13070725 | BANQUE PALLAS IN DEFAULT 10.125% 02/08/2026 T13070725 | 0.0000 | 0.0000 | 0.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 6,800,000.00 | 0.00 | 0.00 | 0.00 | 16,000,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5230760 | 119003AF8 | BUDGET GROUP INC SR NTS *IN DEFAULT* 9.125% 04/01/2006 119003AF8 | 0.0000 | 0.0000 | 0.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 6,395,000.00 | 5,179.95 | 0.00 | 0.00 | 12,980,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3006857 | 130777YN6 | CALIFORNIA STATE HSG CMNTY DEV AUTH REV OBLGG-ASE (144A) DEV UTG SER 5.62 AA6 | 0.0000 | 0.0000 | 0.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 0.00 | 10,518.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5530871 | 13135BAF3 | CAPLINE GENERATING CO LLC SR SECD NT *IN DEFAULT* 7.755% 04/01/2010 13135BAF3 | 7.6250 | 7.5000 | 7.5000 | 0.0100 | 1.0000 | USD | 1.0000 | 200,000.00 | 15,250.00 | 0.00 | 0.00 | 300,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5247881 | 144500AC9 | CARRIER INTL S A SR NOTE SER B 13.25% 02/15/2009 144500AC9 | 0.0000 | 0.0000 | 0.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 3,089,000.00 | 7,722.00 | 0.00 | 0.00 | 3,088,000.00 | 7,720.00 | 0.00 | 0.00 | 0.00 |
| CTLEE | 149479107 | CATTLESALE COMPANY | 0.0000 | 0.0000 | 0.0000 | 1.0000 | 1.0000 | USD | 1.0000 | 0.00 | 0.00 | 0.00 | 25,942.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5109824 | 15115MAL5 | CENTAUR DATA SYS INC/SR DISC 14% 09/01/2008 15115MAL5 | 0.0000 | 0.0000 | 0.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 70,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5150557 | 15133CAC5 | CENTAUR MINING & EXPL LTD SENIOR SECD NOTE 11% 12/01/2007 15133CAC5 | 0.0000 | 0.0000 | 0.0000 | 0.0100 | 1.0000 | USD | 1.0000 | 100,930.00 | 0.00 | 0.00 | 0.00 | 20,070,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5046016 | 155560AA3 | CENTRAL TRACTOR FARM & COUNTRY INC SR NOTE 10.625% 04/01/2007 155560AA3 | 0.0000 | 0.3750 | 0.3750 | 0.0100 | 1.0000 | USD | 1.0000 | 2,540,000.00 | 9,525.00 | 0.00 | 0.00 | 9,460,000.00 | 35,475.00 | 0.00 | 0.00 | 0.00 |

**<u>Exhibit C</u>**

WEIL:\95126477\3\58399.0011

| **Lehman Brothers Holdings, Inc.** | | | |
|---|---|---|---|
| Company▲ | LEH<br>Ticker▲ | Q3 2008 Guidance Call<br>Event Type▲ | Sep. 10, 2008<br>Date▲ |

## MANAGEMENT DISCUSSION SECTION

Operator:  Good morning, and welcome to Lehman Brothers investor conference call. At this time all participants are in a listen-only mode. [Operator instructions]. Today's call is being recorded. And if you have any objections, you may disconnect at this time.

I would now like to turn the call over to Ms. Shaun Butler, Director of Investor Relations. Ms. Butler, you may begin.

### Shaun Butler, Director of Investor Relations

Thank you for joining us this morning. Before we begin let me point out that this presentation contains forward-looking statements.  These statements are not guarantees of future performance. They only represent the firm's current expectations estimates and projections regarding future events. The firm's actual results and financial conditions may differ perhaps materially from the anticipated results and financial condition in any such forward-looking statements. These forward-looking statements are inherently subject to significant business, economic and competitive uncertainties and contingencies, many of which are difficult to predict and beyond our control.

For more information concerning the risks and other factors that could affect the firm's future results and financial condition, see risk factors and management's discussion and analysis of financial conditions and results of operation in the firm's most recent annual report on Form 10-K and most quarterly report on Form 10-Q as filed with the SEC. The firm's financial statements for the third fiscal quarter of 2008 are not finalized until they are filed in its quarterly report on Form 10-Q for the third fiscal quarter of 2008.

The firm is required to consider all available information through the finalization of its financial statements and the possible impact on its financial condition and results of operations for the reporting period including the impact of such information on the complex and subjective judgments that will be discussed on today's call as well as estimates the firm made in preparing certain of the preliminary information included in these remarks.

Subsequent information or events may lead to material differences between the preliminary results of operations described in these remarks and the results of operation that will be described be in the firm's subsequent earnings release and between such subsequent earnings release and the results of operations described in the firm's quarterly report on Form 10-Q, for the third fiscal quarter of 2008. Those differences may be adverse; listeners to these remarks should consider this possibility.

This presentation contains certain non-GAAP financial measures relating to these financial - information relating to these financial measures can be found in the morning's preliminary earnings press release which has been posted on the firm's website www.lehman.com and filed with the SEC in a form 8-K available at www.SEC.gov.

At the end of the call we'll open the session to Q&A and Bart McDade will be joining us for that portion of the call. I'll now turn the call over to Dick Fuld.

### Richard S. Fuld, Jr., Chairman and Chief Executive Officer

Shaun, thank you. I want to thank all of you for joining us today on what's clearly short, short notice.

**Lehman Brothers Holdings, Inc.**

| | | | |
|---|---|---|---|
| Company▲ | LEH | Q3 2008 Guidance Call | Sep. 10, 2008 |
| | Ticker▲ | Event Type▲ | Date▲ |

In light of these last two days, this morning we have pre released our quarterly results.

We are also announcing several important financial and operating changes that amount to a significant repositioning of the firm including aggressively reducing our exposure to both commercial real estate and residential real estate assets. These will accomplish a substantial de-risking of our balance sheet, and reinforce the emphasis on our client-focused businesses. They are also meant to mitigate the potential for future write downs and to allow the firm to return to profitability and strengthen our ability to earn appropriate risk adjusted equity returns.

I will discuss the strategic actions we are taking to restructure and reposition the firm and then the rationale for each. After my comments, Ian will discuss the mechanics of the various transactions, our results for the quarter, our remaining asset exposures at the quarter end, and pro forma for today's announcements and our current capital and liquidity positions.

This quarter's loss was mostly due to the sales and write-downs of our residential and commercial real estate assets and the slower business environment. Since the second quarter, there was a significant additional deterioration in the credit markets, and with a disproportionate impact on the legacy asset classes where we had remaining exposures. In addition, part of the move to more quickly exit the real estate positions further added to the losses.

As you know over the past few quarters our plan was to protect our shareholders, our capital and our franchise by maintaining strong liquidity and exiting our real estate exposures in a measured way over time. Losses created by these concentrated legacy assets have clouded the underlying value of our franchise. In addition, there has been intense public scrutiny which causes significant distractions among our clients, our counterparties and also our employees.

When you look at our segment performance, Investment Banking, Fixed Income and Equities and IMD [Investment Management Division], our market share and how we are winning mandates you will see that our client relationships remain strong. I spent a great deal of time this quarter with our clients, our creditors and our employees and while they continue to stand with us, we nevertheless cannot put the strength of our franchise and their continued trust at risk.

The set of decisions announced today will best protect the core client franchise and create a very clean, liquid balance sheet. So today we are taking a number of necessary actions. Here's the summary. We put a concrete plan in place to exit the vast majority of our commercial real estate. We are reducing our residential and leveraged loan exposures down to appropriate operating levels. We are in the final stages of raising capital with sale of a majority stakes in IMD. Strengthening our capital base – excuse me, as we strengthened our capital base in June, tested our liquidity and are cutting our dividends. We reshaped our human capital and product depth, expense base to these changing markets. Lastly, we implemented a series of management changes, some of which you saw in the last couple of days. Taken together, these actions have quickly de-risked and re-sized the firm. Let me just go through each in more detail.

Today we announced the plan to separate a vast majority of our commercial real estate assets from our core business by spinning off those assets to our shareholders, into an independent publicly traded entity that will be adequately capitalized.

The spin-off improves our balance sheet while preserving value for our shareholders. The spin-off entity will be able to manage its assets for economic value maximization over a longer time horizon given the fact that it will not be a mark-to-market entity, but rather use held to maturity accounting. This will preserve economic value for our shareholders.

We also significantly reduced our resi [residential] mortgage and acquisition finance exposures. In addition to the sell down of resis over the course of this quarter, we are finalizing with BlackRock a

**Lehman Brothers Holdings, Inc.**
*Company▲*

LEH
*Ticker▲*

Q3 2008 Guidance Call
*Event Type▲*

Sep. 10, 2008
*Date▲*

bulk sale of our U.K. residential assets the – sale within the next few weeks. This will bring our total residential exposure down by approximately half since the second quarter. These remaining resi assets have been significantly marked down and are now at levels that imply default and cumulative loss rates well above the fundamental expectations. Ian will provide further transparency here, including detail on how we are marking the remaining positions.

Next, let me talk about our Investment Management Division. We -- performed a thorough review of this business and reached out to third parties to validate the value proposition that we have been building. While IMD continues to have a strategic connection to some of our other businesses, and adds diversification value to our earnings, we believe that we can capture the capital benefit of a partial monetization while also continuing to build value through a series of commercial partnering agreements. We are in the final stages of selling a majority stake in our IMD business.

We have been running a process with selected strategic and financial investors, and we expect to reach a definitive agreement on a transaction that appropriately values this attractive asset and maintains a strategic relationship. This will serve two primary purposes. One, raise tangible equity capital for the firm on a cost-efficient basis and, two, maintain strategic ties to the business through commercial arrangements and a large minority stake which will continue to give us a significant amount of IMD's earnings into our income.

Next, we are cutting our annual dividend to 5 cents per share, to preserve capital given the near term operating environment. We ended the quarter with more tangible equity than we started and had a net leverage ratio of 10.6 versus 12.1 at the end of the second quarter. We'll think about future capital by looking at the total equity capital raised from IMD and by ensuring that core Lehman Brothers after the commercial real estate spin-off has proper tangible capital to support our client franchise.

Now taking all this together, the spin-off of our commercial real estate assets, the significant reduction in our residential and acquisition finance exposure, monetization of a majority stake in IMD, and dividend cuts, we will have what we believe to be a strong and clean balance sheet which will allow us to focus on supporting our core client businesses. In addition to all of this, we remain committed to examining all strategic alternatives to maximize shareholder value.

This firm has a history facing adversity and delivering. We have a long track record of pulling together when times are tough and then taking advantage of global opportunities. I believe as a firm we have made good choices, and we have put the changes in place. We are on the right track to put these last two quarters behind us. We'll not be distracted from our goal which is protecting and building our client franchise. Today's strategic actions, each of which is significant in its own right, taken together as a whole, significantly reduces our remaining risk and greatly improves our ability to create value for our shareholders.

So I want to thank our clients, thank our counterparties for their tremendous support during this period. Today we have taken definitive steps and have put in place a credible plan.

Ian, let me turn it over to you now.

**Ian T. Lowitt, Chief Financial Officer and Co-Chief Administrative Officer**

Thanks, Dick. During the past quarter we experienced significant market pressure and scrutiny around our legacy residential and commercial real estate assets and more recently speculation around our various strategic alternatives. In the last two trading days this speculation has intensified such that it became prudent to release our results and clarify our restructuring plan early recognizing the need to move quickly and decisively to resolve the overhang on our business.

corrected transcript

**Lehman Brothers Holdings, Inc.**
*Company▲*

LEH
*Ticker▲*

Q3 2008 Guidance Call
*Event Type▲*

Sep. 10, 2008
*Date▲*

Importantly, as we'll discuss today, we ended the third quarter with a capital position and leverage ratios stronger than the second quarter. Total shareholder equity increased 8% to 28 billion, we reduced net leverage to 10.6 times from 12.1 times and our Tier 1 capital ratio is estimated at approximately 11% versus 10.7 last quarter.

Today, I shall walk you through our restructuring around commercial real estate, residential mortgages, other asset exposures and our investment management division and then I will review our results for the quarter along with our current liquidity and our operating model going forward.

I'll start with our commercial real estate initiative. We face specific concerns with respect to our commercial real estate exposure which, as you know, is comprised of a large diversified portfolio of individually underwritten assets. As of the close of the third quarter, our commercial mortgage and real estate held for sale position totaled 32.6 billion, down 18% from the 39.8 billion at the end of the second quarter. We have successfully sold down a significant amount of these assets over the past few quarters.

In order for us to realize fair value, buyers require lengthy asset specific diligence on each position. Despite our success in reducing assets over the past few quarters, the current strategy does not accomplish the disposition of assets quickly enough. To accomplish the goals of rapidly separating us from the legacy commercial assets and enabling our shareholders to retain the value of this portfolio we will be spinning off the commercial real estate portfolio from our remaining business through the formation of Real Estate Investments Global, or REI global.

We expect to spin REI global to our existing shareholders as an independently managed and traded public company in the first quarter of 2009. This transaction will separate core Lehman Brothers from these legacy assets and importantly, it will enable shareholders to retain upside in this high quality asset portfolio where the assets will be held to maturity or sold over time in a disciplined manner to optimize value.

Moving on to execution, approximately 25 to $30 billion of commercial assets are expected to be transferred into REI Global. The exact amount of assets transferred will be determined after taking into account activity in this portfolio until the spin-off is completed. We expect continued pay down and some additional dispositions over this period. Pro forma for the transaction our remaining commercial mortgage and real estate held for sale positions in core Lehman are expected to be approximately 5 billion.

The portfolio we expect to contribute to REI Global is highly diversified across regions and asset types. By value, approximately 57% are in the Americas, 26% in Europe and 17% in Asia. Approximately 58% are debt positions, 26% are equity positions and 16% are securities. No property type represents more than 22% of the portfolio, with multifamily at 22% and office at 18%. And lastly, we also intend to include our SunCal and Archstone positions in this portfolio. This portfolio is currently marked at a weighted average price of 85. All assets will be transferred to REI Global at our carrying values as of the time of the spin.

Our commercial mortgage positions are current – are carried at mark to market, reflecting all current market pricing information for each asset. The real estate held for sale portfolio consisting of assets across the capital structure is booked at lower of cost or market as we take write-downs on this book but do not reflect market value gains until a sale event occurs.

REI Global will account for its assets on a held to maturity basis and will be able to manage the assets without the pressure of mark to market volatility. REI Global will not be forced to sell assets below what it believes to be their intrinsic value.

**Lehman Brothers Holdings, Inc.**
Company▲

LEH
Ticker▲

Q3 2008 Guidance Call
Event Type▲

Sep. 10, 2008
Date▲

In terms of capitalizing REI global Lehman Brothers will contribute equity equal to 20 to 25% of asset value and provide debt financing for the 75 to 80% of the total so we'll be capitalized at approximately three to four times debt to book equity which is consistent with other publicly traded real estate entities. The firm will spin its entire equity interest in REI Global to Lehman shareholders.

Debt financing provided by Lehman Brothers will be liquidity neutral for Lehman as we currently fund these assets with long-term capital. To the extent we syndicate a portion of the debt, this will have a positive impact on our liquidity. In aggregate this pool of assets generates significant cash flow. When combined with the normal course of asset sale activity, these cash flows will be dedicated to paying down debt, managing the assets and returning cash to REI Global shareholders over time.

Based on the expected assets to be contributed to REI Global, the portfolio is projected to generate cash flow through interest income, pay downs, debt repayment, equity distribution and asset sales. We estimate cash flow for debt pay down of approximately 5 billion per year over the next three years. We expect rapid debt pay down at REI Global with debt to total assets decreasing from 75 to 80% to approximately 50% within four years.

Initially REI Global expects to pay a modest annual dividend but once leverage reaches a certain threshold cash flows may allow for additional distributions to equity. We have conducted extensive stress tests on the portfolio, and are confident that REI Global has sufficient equity even in severely stressed scenarios. For our stress test we identified two year time periods from 1990 to 2006 with the largest decline in property values for each property type in every geographic market where REI Global will own material commercial real estate assets and applied these declines to our current portfolio.

We believe these stress tests are conservative for several reasons. First, we are applying price declines to already marked down positions and applying worst case scenarios for all regions and property types simultaneously. Second we assume we sell our assets at the low point of the stress scenario and finally our sample timeframe includes periods of severe commercial real estate stress when there was significantly greater oversupply than the current environment. We applied the stress test before any de-leveraging of the portfolio, which given the expected cash flows should be de-levering quite rapidly. Even under this extreme stress test REI Global will be adequately capitalized and is not expected to result in impairment to the debt.

Following the spin-off our shareholders will hold shares of both Lehman Brothers and REI Global. Importantly, these actions will enable our shareholders to benefit from the intrinsic value of our commercial real estate portfolio. As part of an independent company, without the need to mark to market, assets may be monetized in an orderly manner over time with more negotiating leverage and at prices which maximize returns. We have resolved all material execution obstacles and are highly confident that we can complete this transaction in the first quarter of 2009.

Moving on to our efforts on the residential front. During the quarter, we moved quickly to bring our residential mortgage exposures down significantly from 24.9 billion in the second quarter, to 13.2 billion, a reduction of 47%. This includes a reduction of approximately 4 billion in U.K. residential assets that we are formally engaged with BlackRock to sell. Please note that since the BlackRock transaction will be completed after the close of the third quarter, it will be reflected in our fourth quarter numbers.

Excluding these sales our residential mortgage position as of the third quarter was 17.2 billion, a 31% reduction versus last quarter. After these dispositions, our residential mortgage inventory will be 13.2 billion, of which approximately 32% of the assets are in less risky asset classes, including 1.6 billion of Alt-A servicing rights and 600 million of Alt-A AAA IO securities most of which have

**Lehman Brothers Holdings, Inc.**

Company▲

LEH
Ticker▲

Q3 2008 Guidance Call
Event Type▲

Sep. 10, 2008
Date▲

negative correlations to deteriorating markets and 600 million of reverse mortgages that have an LTV of approximately 39%, 500 million in Asia, and approximately 900 million of assets across the U.S. portfolio in vintages 2005 and earlier.

The rest of the assets, and this includes the 900 million of the 2005 and earlier vintages are as follows: 3.7 billion of additional Alt-A exposure marked at an average of 39 versus 63 last quarter; 1.6 billion of subprime in second lien exposure marked at an average of 34 versus 55 last quarter; 3.6 billion of European exposure marked at an average of 69 versus 83 last quarter; 500 million of remaining ABS CDO assets marked at an average of 29 versus 35 last quarter; and 500 million of additional other U.S. exposure which is marked at an average of 45 versus 48 last quarter.

Overall the U.S. residential book had a weighted average price of 59 at the beginning of the third quarter and now has a weighted average price of 39, a decline of 20 points.

During the quarter we traded significant U.S. residential assets with sales of 5.5 billion and purchases of 3.2 billion for total trading activity of 8.7 billion. This market activity gives us confidence in the accuracy of our marks as of the third quarter. We would like to note that we believe current market prices reflect an exceptionally conservative valuation outlook for the U.S. residential market. At current prices our U.S. residential portfolio generates a 12% yield or approximately LIBOR plus 800 if approximately 50% of the loans default and average recovery rates are only 40%. This base case assumes national home prices drop 32% peak to trough versus 18% to date with California down 50% versus 27% to date. For a zero percent yield and only principle repayment over 80% of the borrowers would need to default with an average 35% recovery rate.

In our Alt-A portfolio, the assets would generate a yield of LIBOR plus 1,000 with 44% default, LIBOR plus 100 with 63% default and a zero percent yield at 79% of default each with a 40 to 45% recovery rate. The current 60 day delinquency rate including real estate owned is 18% on this portfolio so defaults would need to be 2.5 times the current delinquency rates for the LIBOR plus 1,000 case, 3.6 times for the LIBOR plus 100 case and 4.5 times for the zero percent yield case.

In our non-prime portfolio the assets would generate a yield of LIBOR plus 1,100 with 59% defaults LIBOR plus 100 with 76% defaults and a zero percent yield at 85% defaults each with a 20 to 30% recovery rate assumption. The current 60 plus day delinquency rates including real estate owned is 23% on this portfolio so defaults would need to be 2.5 times the current delinquency rates for the LIBOR plus 1,100 case, 3.2% times for the LIBOR plus 100 case and 3.7 for the zero percent yield case. Current prices imply extremely severe additional deterioration in housing.

Our pro forma remaining 13.2 billion of residential assets are diversified across product type and region. About 32% of the exposure in servicing, AAA IOs, reverse mortgages, Asian exposure and 2005 and earlier vintages. We plan to reduce this position somewhat over the coming quarters, maintaining a balance sheet necessary to support the market making opportunities.

Our spreads continue to be attractive, with multiple distinct business opportunities across secondary and distressed trading, servicing and NPL management as well as client advisory.

Regarding other exposures, our other asset-backed positions were reduced by 29% from 6.5 billion to 4.6 billion during the quarter and we reduced our acquisition finance exposure by 42% from 18 billion to 10.4 billion which includes a 38% decline in our high yield acquisition finance exposure from 11.5 billion to 7.1 billion. Pro forma for the BlackRock sale and commercial real estate spin-off, our aggregate exposure to residential and commercial mortgage assets, other asset-backed and acquisition finance will be reduced from 89 billion at the end of the second quarter to approximately 30 to 35 billion, so very significant progress in moving the legacy assets and creating a clean balance sheet for core Lehman going forward.

**Lehman Brothers Holdings, Inc.**
Company▲

LEH
Ticker▲

Q3 2008 Guidance Call
Event Type▲

Sep. 10, 2008
Date▲

Turning to the Investment Management Division, today we announced our intent to sell a majority stake of a subset of our investment management business. The subset includes our asset management, private equity and wealth management businesses, but excludes our middle market institutional business which will be folded into capital markets and our minority stake in third party hedge fund managers. This transaction has attractive capital and operating characteristics. On the capital front, we'll be receiving significant proceeds at closing.

Additionally goodwill on our books related to the Neuberger business will be eliminated resulting in an estimated increase of over 3 billion in our tangible book value and Tier 1 capital. Following the transaction closing IMD's operating results will not be consolidated. Given that we'll be retaining a meaningful interest in a subset of IMD as well as 100% of the middle market institutional business and our minority investments in hedge fund managers the impact on our pre-tax earnings is estimated to be modest. On a fiscal 2007 basis the pro forma impact would have been less than 5% of the firm's pre-tax earnings.

After closing, IMD will have an autonomous governance structure from our Investment Banking and Capital Markets Division, however, IMD will remain an important strategic platform for the firm. The business will continue to operate under the Lehman Brothers and Neuberger Berman brands. Clients will continue to be able to access all of the capabilities of the firm across operating units. We are in advanced discussions with a number of potential partners for the IMD business and expect to announce the details of the transaction in due course.

We realize that we have given you a lot to absorb with regard to the restructuring but hopefully we have been able to clarify some of the mechanics and rationale between our initiatives. To help put our actions into perspective, taking into account all the transactions we have announced today our balance sheet exposures will be reduced to the following levels: approximately 5 billion of commercial assets; approximately 13 billion of residential assets; less than 5 billion of other asset-backed positions and approximately 10 billion of acquisition finance facilities which include 7 billion of high yield facilities. We believe that the Lehman of early 2009 will be a significantly de-risked financial institution.

To reiterate: these actions represent the major components of the restructuring which once complete, will allow Lehman to emerge as a clean company and be able to thrive away from its legacy assets.

This will allow us to refocus our efforts on growing our client facing franchise additionally core Lehman Brothers can be more fairly valued in the public market and we'll be better able to restore the confidence of key stakeholders including equity investors, debt investors, clients, counterparties and employees. We'll be discussing core Lehman Brothers in greater detail in the section on our operating model.

Turning to our capital position; despite our third quarter loss we ended the quarter with a larger equity base and greater capital ratios versus the prior period driven by our June capital raise and a decrease in risk weighted assets. As of June 31st, total stockholder equity was approximately 28 billion, up 8% from the second quarter. And our long-term capital ended the quarter at 143 billion. During the quarter we reduced our gross assets by approximately 6%, from 639 billion to approximately 600 billion. And we reduced our net assets by approximately 5%, from 328 billion to approximately 311 billion. We ended the quarter with gross leverage of 21.1 times compared to 24.3 times as of the second quarter. And our net leverage was 10.6 times versus 12.1 times last quarter.

We estimate that our Tier 1 capital ratio under the CSC regulatory framework will be approximately 11% and our total capital ratio between approximately 16.5 and 17% as of August 31 compared to

**Lehman Brothers Holdings, Inc.**

Company▲

LEH
Ticker▲

Q3 2008 Guidance Call
Event Type▲

Sep. 10, 2008
Date▲

10.7 and 16.1 at the second quarter respectively. Our third quarter Tier 1 ratio is well above our target level and the total capital ratio is well in excess of the 10% minimum regulatory threshold. Book value per share declined this quarter to 27.29 driven by the June capital raise and our third quarter loss. Additionally the sale of a majority stake in the part of our IMD business and the reduction in our annual common stock dividend from 68 cents a share to 5 cents a share for an annual saving of 450 million are both intended to give us greater capital flexibility going forward.

Turning to the third quarter, we posted our second consecutive quarterly loss with net revenues of negative 2.9 billion and net loss of 3.9 billion and a diluted loss per share of $5.92. The loss was driven primarily by gross mark to market adjustments of 7.8 billion including a 5.3 billion gross write-down on residential mortgage assets, 1.7 billion related to our commercial mortgage and real estate portfolio, 600 million on other asset-backed assets and 200 million on our acquisition finance facilities.

Gross mark to market adjustments were offset by 800 million of hedging gains during the quarter, and 1.4 billion of debt valuation gains resulting in 5.6 billion in net write-downs.

We also experienced approximately 760 million of principal losses during the quarter including approximately 380 million in fixed income, 320 million in equities and 60 million in IMD.

Gross write-downs of 5.3 billion on residential assets in the third quarter were driven by market factors including rising delinquencies and loss expectations, supply overhang concerns, and a continued difficult financing environment as well as our own accelerated selling activity during the period. Net mark to market adjustments on residential assets totaled 4.9 billion as hedges offset only 8% of gross write-down. The majority of our write-downs were in Alt-A driven by an increase in Alt-A delinquencies and loss expectations which were specific to Alt-A prices and did not affect the performance of our hedges.

Unfortunately there is no direct hedge for Alt-A assets as there is in subprime with ABX. Our strategy around hedging is to break the exposures into spread and HPA credit exposure, we use ABX to hedge the HPA exposure and a combination of CDX, CMBX, single name financial CDS and swaps to hedge the spread exposure. Our HPA hedges were ineffective as Alt-A prices dropped 20 to 25 points during the quarter while ABX AAA on average dropped 8 points and ABX subs, double-A through triple-B minus dropped only 4 points. Our spread hedges were also ineffective as residential credit sectors widened significantly by 200 to 600 basis points while other spread sectors were more range bound. Our corporate hedges for example widened only 35 basis points.

This difficulty in hedging and associated basis risk supported our decision to more rapidly decrease our residential assets this quarter as our best hedge is to reduce absolute exposure.

In the commercial market, gross mark to market adjustments totaled 1.7 billion compared to 900 in the second quarter and 1.4 billion in the first quarter of 2008.

Real estate values continue to come under pressure during the third quarter mainly due to the weakening economy and the lack of liquidity in the market. Our write-downs are driven by higher discount rates, changes in our excess capitalization rate assumptions as well as credit events related to certain properties. On a net basis commercial write downs for the quarter totaled 1.6 billion.

Excluding net mark to market adjustments, debt valuation gains and principal losses, our remaining revenues were 3.58 billion implying positive pre-tax results of approximately 600 million under extremely trying circumstances.

**Lehman Brothers Holdings, Inc.**

Company▲

LEH

Ticker▲

Q3 2008 Guidance Call

Event Type▲

Sep. 10, 2008

Date▲

In investment banking revenues of 611 million were in line with the slower overall banking market where estimated global market fees are down 25% on an annualized basis year-over-year.

While underwriting activity was depressed across debt and equity markets M&A activity remains solid. We posted revenues of 634 million in investment management; our AUM was slightly down at 273 billion versus 277 billion in the second quarter as market depreciation more than offset net in-flows, however management fees remain stable quarter over quarter. Total IMD revenues were down sequentially driven by lower transactional activity in private investment management and a smaller contribution from our stakes in alternative asset managers.

During the third quarter we recorded a loss of 60 million associated with our investments in hedge fund managers compared to a gain of approximately 70 million in the second quarter. In capital markets, we reported revenues of negative 4.1 billion. Excluding net mark to market adjustments, debt valuation gains and loss on principal investments, our run rate revenues in capital markets were 2.2 billion, down 15% versus 2.6 billion in the second quarter on comparable basis.

Despite a difficult operating environment in the third quarter our underlying client franchises remain solid. On a year-to-date basis capital market client revenues, the internal operating metric by which we track client activity were up 11% versus the first nine months of last year. While third quarter client revenues were down 19% sequentially this period's results are comparable to our average quarterly client revenue for full year 2007.

In fixed income capital markets run rate revenues were flat versus the second quarter at 1.8 billion. During the quarter we had strong trading revenues in rates, foreign exchange and credit products. Overall activity levels remain robust year-to-date with particular strength in commodities, foreign exchange, securitized product and credit.

In equities, capital markets, run rate revenues were approximately 425 million down 43% versus 750 million last quarter. While client revenues were down approximately 22% run rate revenues were impacted by trading losses and volatility products. Cash equities and flow volatility activity generally remained strong in the U.S. this quarter, with more pronounced declines in Europe and Asia. Structured volatility activity remained repressed across regions given the weakening equity markets worldwide

Prime services revenues in equities were also down from last quarter, mainly reflecting continued de-leveraging among hedge fund clients and diversification of balances across brokers and not a loss of clients. Year-to-date the prime services business is well ahead of 2007 revenues.

With respect to expenses, given the continued difficult overall market environment we remain diligent on cost initiatives with notable developments during the quarter. We have reduced head count by approximately 1,500 positions since the beginning of the third quarter in discretionary corporate areas and those businesses which we believe are in secular decline. We expect small reductions in staffing in our client facing businesses which should bolster our revenue capacity once we reach a more stable part of the cycle.

Non-personnel expenses were 971 million in the third quarter down 11% from the 1.1 billion in the second quarter. We have identified a set of near-term cost reduction opportunities totaling 250 million in annualized cost savings before any additional impact from potential divestitures. Although we expect these savings in future quarters it is important to note that with our third quarter revenue run rate of 3.5 billion and third quarter expenses of 2.9 billion we are pre-tax positive for the quarter excluding the mark downs, debt valuation gains and principal losses.

I'll now provide an update on our liquidity position which remains very strong. We maintained our cash capital surplus at 15 billion at the end of our third quarter. Our liquidity pool also remains

**FACTSET:callstreet**

| **Lehman Brothers Holdings, Inc.** | LEH | Q3 2008 Guidance Call | Sep. 10, 2008 |
|---|---|---|---|
| Company▲ | Ticker▲ | Event Type▲ | Date▲ |

strong at 42 billion versus a record 45 billion at May 31st. The decline in this figure versus the end of the second quarter is strictly attributable to our managing down our commercial paper outstandings which ended the quarter at 4 billion versus 8 billion at the end of the second quarter.

Funding provided by our wholly owned banking entities also remained stable with 47 billion of assets funded in our banks versus 46 billion last quarter and we have a focused effort to increase this amount in the coming quarters. In particular we expect amounts funded in our Utah based industrial bank to increase going forward as our three year de novo period ended at the end of August. As an update, on our secured funding positions, total tri-party repo was approximately 211 billion as of the third quarter of which 115 billion is treasuries and agencies. The remaining 96 billion of tri-party repo compares to the 105 billion last quarter and includes 39 billion of collateral which is central bank eligible.

The 57 billion of non-central bank eligible collateral compares to 65 billion of non-eligible collateral last quarter and includes 25 billion of highly liquid investment grade fixed income securities and major index listed equities. Now the 9 billion of non-central bank eligible collateral is currently funded through repos with our own banking entities versus 8 billion last quarter. The remaining 23 billion of collateral, half of which is client collateral is covered more than 190% by liquidity pools available to the broker dealers. By comparison last quarter our remaining collateral was 32 billion and this amount was covered more than 150% by liquidity pools available to the broker dealers.

The average tenor off our non-central bank eligible tri-party repo remains broadly in line with last few quarters at over 35 days. Nearly half of our total tri-party repo has a tenor greater than one week and nearly 30% is over one month. Additionally we have maintained a significant overfunding position in tri-party repo of approximately 32 billion versus 27 billion last quarter.

Throughout the market volatility of the past six months our liquidity and funding framework has served us extremely well and we remain focused on increasing funding available in our bank entities and mitigating any liquidity risk to our secured and unsecured funding position. Through last night our liquidity pool remains essentially unchanged at 41 billion.

Let me briefly review our operating model going forward as we focus again on core Lehman Brothers and executing our business plan in today's market environment. Despite difficult market conditions, essential client needs have not changed with the need for investment ideas, trading liquidity and restructuring advice increasing, our core business model remains strong. We'll continue to focus on the client franchise looking to increase wallet share with a targeted group of global clients. Our client franchise rests on a foundation of delivering intellectual capital through research and our commitment to idea generation as exemplified by our top ranked research in both fixed income and equities as well as differentiated service.

While the market has undoubtedly changed, Lehman's core competencies and culture remain as relevant as ever to the marketplace. Importantly our operating model going forward incorporates a number of significant attributes. We expect core Lehman Brothers to be well capitalized with anticipated leverage of 10 to 12 times and capital to support a 300 billion net balance sheet, slightly smaller than where we are today. Clearly, a greater proportion of this balance sheet will be dedicated to client activities as our real estate related assets fall from approximately 30% of our total inventory at the end of the third quarter to approximately 5% under the spin-off scenario.

Core Lehman Brothers is intend to have less reliance on wholesale secured funding for our less liquid assets and an increased use of bank deposits from our wholly owned bank subsidiaries. Even under the scenario of limited debt issuing capacity in 2009 we anticipate that core Lehman will have ample cash capital to sustain its business opportunities. Under various revenue scenarios we believe core Lehman Brothers can generate at least 13 billion of revenues using a detailed bottoms up analysis by business and adjusting for the IMD transaction. This is reinforced by our run rate

**Lehman Brothers Holdings, Inc.**

*Company▲*

| LEH | Q3 2008 Guidance Call | Sep. 10, 2008 |
|---|---|---|
| *Ticker▲* | *Event Type▲* | *Date▲* |

revenues of 7.7 billion for the second and third quarters of this year excluding the mark to market adjustments, debt valuation gains and principal losses over the last six months but including IMD for the period. Our objectives in establishing core Lehman Brothers are to refocus our efforts on growing our client facing franchise, while restoring the confidence of our key stakeholders including equity investors, debt investors, clients, counterparties and employees. Additionally we believe core Lehman Brothers can be more fairly valued in the marketplace.

Let me conclude by making the following points. We believe that the comprehensive plan we have outlined today directly addresses the issues the market has been grappling with in recent weeks. We have introduced a solid plan and timetable to deal with our remaining commercial real estate exposure. We have materially reduced our residential mortgage exposure and marked our remaining holdings to levels that make future write-downs unlikely. We have made significant progress in cleansing our balance sheet so that core Lehman can stabilize and ultimately grow and thrive with a strong and clean balance sheet.

We have maintained our strong liquidity ad capital profiles even in this difficult environment and the potential sale of IMD further improves our capital position. Our clients and counterparties have continued to stick with the firm which has been instrumental in supporting our client run rates and we believe that core Lehman has the appropriate foundation to achieve sustainable profitability going forward.

That concludes the prepared remarks and we would like to move on to Q&A.

**Lehman Brothers Holdings, Inc.**

| | | |
|---|---|---|
| Company▲ | LEH<br>Ticker▲ | Q3 2008 Guidance Call<br>Event Type▲ |

Sep. 10, 2008
*Date*▲

## ▬ QUESTION AND ANSWER SECTION

Operator:  [Operator Instructions].  Our first question comes from Glenn Schorr; please state your company name.

**<Q – Glenn Schorr>:** UBS, thanks. Okay. So a lot of moving parts but I'll try to stay focused on the key issues of the commercial real estate spin, the current marks and Lehman's capital position after so let me just check a couple of things. Tier 1 of 11% is as of the end of August. Is that pro forma with the Neuberger gain or not?

**<A – Ian Lowitt>:** No, that's not pro forma. That's our actual levels at the end of August.

**<Q – Glenn Schorr>:** Okay. And then the 3 billion, it is worded interesting so I've got to ask the question. The 3 billion tangible book value benefit, what does it do for total capital and Tier 1? What's the Tier 1 pro forma Neuberger sale or IMD sale?

**<A – Ian Lowitt>:** Well, the -- I mean, with the sale, clearly we remove the goodwill and that improves our Tier 1 capital by over $3 billion. You know, we don't want to speculate on exactly what the proceeds are going to be, but the...

**<Q – Glenn Schorr>:** Okay. I don't need the proceeds. . I just want to make sure that theoretically if tangible book value benefit is 3 billion, all else equal, your Tier 1 benefits by 3 billion?

**<A – Ian Lowitt>:** Yes, to the extent that there is, you know, gains relative to you know, the book value on an after-tax basis that would increase it. But clearly, you know, all of the indications are that, you know, we'll be materially – the business will be materially above the book value of – I'm sorry the goodwill value and as a consequence minimally what will happen is that you gain over $3 billion as a result of the goodwill and there may be additional gains in Tier 1 based on whatever the actual price itself is.

**<Q – Glenn Schorr>:** Okay. So it is not a clear one to one. That's for sure.

**<A – Ian Lowitt>:** Minimally it clears out the goodwill.

**<Q – Glenn Schorr>:** Okay, and have – I know what the tax basis of, what – at the time of the Neuberger transaction. But can you help us with the tax basis of IMD?

**<A – Ian Lowitt>:** We would rather not go into that.

**<Q – Glenn Schorr>:** You will wait until after the sale. Okay.

So then the REI spin, the marks are – I'm assuming that they are – you know, there was thoughts about selling all of the commercial real estate assets and you were exploring all options and you viewed this one better than selling them at whatever the bids came in. But my gut is the bids came in well below the 85 cent average mark. Reconcile that difference as, the difference is the equity that you are putting into the spin. So Lehman's putting in somewhere between 5 and 7.5 billion of equity into the REI spin. If the percentage -- you know, the 25 to 30 billion times the 20 to 25% equity that you gave us. So is that all equity from Lehman or is any of that third party raised?

**<A – Ian Lowitt>:** Yes, I think that the way we would think about the alternatives with regard to the real estate is maybe a little different than you described it. I mean, if we did try to sell the whole portfolio in a very rapid timeframe, you know, you would clearly pay very substantial bid offer spread on that. And, you know, the capturing of that value would essentially – the value that was retained by the shareholders of whichever the acquiring entity was. By creating the spin – by

**Lehman Brothers Holdings, Inc.**
Company▲

LEH
Ticker▲

Q3 2008 Guidance Call
Event Type▲

Sep. 10, 2008
Date▲

creating the spin, we are obviously shifting, you know, the assets off our balance sheet. Still to our shareholders but it is our shareholders that capture that value associated with, you know, the disposition of the assets over a period of time rather than locking in, you know, a known loss at this point.

**<Q – Glenn Schorr>:** I understand. But the way the math looked is if you are going to inject equity to protect REI and make people feel okay about it, it's the equivalent of a 20, 25%...

**<A – Ian Lowitt>:** And so we would in fact be, you know, contributing equity in exactly as you are describing. You know, that's in part to – the level of equity is determined based on, you know, what you need to do to support, you know, the seller financing and the amount of equity that we put in is, as you described, in that sort of range. Obviously it is hard to know exactly what the asset levels, you know, are likely to be because we'll continue to have dispositions and pay downs over the remaining time. But that's sort of the range of it. Clearly we are holding a chunk of equity, you know, in our existing Lehman against those exposures. So it is not as though, you know, there is a complete – that obviously needs to get factored into how does that play through in terms of the capitalization of, you know, of core Lehman.

**<Q – Glenn Schorr>:** I'm with you.

And then are you able to tell us ex- Archstone and SunCal what the average mark is on the rest of the portfolio?

**<A – Ian Lowitt>:** Well, the portfolio is at about 85 and the -- you know, SunCal and Archstone which were 75 last quarter have been marked down some amount this quarter.

**<Q – Glenn Schorr>:** Got it. Is the Archstone debt included in this or is that part of the leveraged lending?

**<A – Ian Lowitt>:** Archstone debt and SunCal debt would be included in the new company.

**<Q – Glenn Schorr>:** Okay. And then does it need shareholder approval, REI spin?

**<A – Ian Lowitt>:** No.

**<Q – Glenn Schorr>:** Okay. And then I guess the biggie after all of this, if that equity contribution is being made across to REI and some of it might have been already directly in there against that, those assets, what do you anticipate the capital needs of "good Lehman" or the more de-risked Lehman post spin? Because obviously you can't fund the 5 to $7 billion equity injection into REI and maintain a Tier 1 around where it is now.

**<A – Ian Lowitt>:** No, I think that – we think that clearly with our capital position at the moment is, it's strong. We recognize that with the REI spin we are going to need to put equity into that. But with the, you know, IMD sale and the proceeds associated with that and the de-risking that goes on, in order to, you know, maintain our ratios which is 10 to 12 on the $300 billion balance sheet, you know, Tier 1 of sort of 11%, you know, we are confident that, you know, we can maintain that.

So we would in fact being going down some amount of equity as a result of the spin. We'll be increasing our equity as a result of IMD. We'll have much less risk on our balance sheet which would allow us to, you know, let our leverage drift up from say 10.5 times to say 12 times which would then leave you with a requirement for leveragable equity around $25 billion. And in order to maintain the 11% Tier 1 ratio, you know, we'll be as a result of the de-risking bringing down our risk weighted assets. So we feel that, you know, in combination, these things allow us to maintain our,

**Lehman Brothers Holdings, Inc.**

Company▲

LEH

Ticker▲

Q3 2008 Guidance Call

Event Type▲

Sep. 10, 2008

Date▲

you know, strong capital ratios, you know, within the construct of the set of things that we are doing now.

**<Q – Glenn Schorr>:** Okay. I should end there and let others have a chance. Thank you.

**<A – Ian Lowitt>:** Thanks Glenn.

Operator: Our next question comes from Michael Hecht. Please state your company name.

**<Q – Michael Hecht>:** Hi, Banc of America.

**<A – Ian Lowitt>:** Hi Michael.

**<Q – Michael Hecht>:** How are you doing? Can you guys, can you guys help us follow up on Glenn's question, book value ended the quarter at 27 and change. Do you guys kind of round the numbers on what you think pro forma book value per share will be post the REI transaction and IMD transaction?

**<A – Ian Lowitt>:** I mean, I think that – lots of things moving around with regard to that. You know, I think that you could – you can compute it in part based on, you know, how much equity we are going to, you know, shift over to REI and what that is as a share of, you know, the total, you know, common. And I think, you know, on the basis of that you will get pretty close to the number. And then the remainder is obviously in core Lehman.

**<Q – Michael Hecht>:** Okay. And then I guess, you know, you talked a little bit about, I think, well, I guess – how should we think about the impact you guys are seeing on the client facing franchise? How much of the 20% or so is sequential decline that you mentioned some of the run rate revenues is from the client facing side versus just some of the cyclical pressures? And then can you touch on the impact you think you are seeing so far in September especially given the pressure the stock has been under?

**<A – Ian Lowitt>:** I think that we think that the marketplace itself was seasonally slow in the third quarter and our estimates of that are you know in the 10 to 20% range. So we think that, you know, we -- and the other indications we have don't suggest real, you know, share erosion. So we think that broadly, you know, our activity is in line with what we think the marketplace has been.

And I think what we are seeing into, you know, September is broadly similar. I think over the last two days obviously, you know, there's been more impact in terms of what has happened with the stock, that's what happened with our debt spreads but we are obviously hopeful that in the description of what our plan is and being clear about what our quarter is and what we are doing going forward and the, what we are planning with regard to IMD that those stabilize and, as a consequence you know the impact on the client business is more limited and, as a consequence of people getting excited about clean Lehman and the fact that the plan actually, you know, separates us from our legacy assets that we actually do have the platform to really succeed and grow.

**<Q – Michael Hecht>:** Okay. And then, you know, I guess with the various kind of issues thrown around the firm can you talk about the impact you are seeing on morale, turnover and then also senior management's relationship with the board and how management and the board is currently weighing the cost of staying independent versus maybe selling out to a larger player to help diversify the firm's funding mix and maybe restore confidence?

**<A – Richard Fuld, Jr.>:** Let me talk about that. This is Dick.

**<Q – Michael Hecht>:** Hi, Dick.

**Lehman Brothers Holdings, Inc.**
Company▲

LEH
Ticker▲

Q3 2008 Guidance Call
Event Type▲

Sep. 10, 2008
Date▲

**<A – Richard Fuld, Jr.>:** The first on employee morale. Clearly we spent a ton of time over these last number of years building a strong, very cohesive culture. As I said in my comments we have been through adversity before and we always come out a lot stronger. It would be foolish for me to say that all of our employees have gone through this period unaffected because that clearly is not the case. They have been distracted by rumors; they have been distracted a little bit by comments in the press, which I mentioned in my comments. But I will tell you, the employees of this firm are holding wonderfully and continuing to do their business day-to-day in a very strong way. And that culture is holding them in. As far as turnover, I see no indication of anything that would be abnormal at all. As far as the Board, I'm not sure what you are asking me there. Were you asking me what is the relationship?

**<Q – Michael Hecht>:** Just a little perspective on how they are kind of viewing the various things going on and the different strategic alternatives you guys are weighing including staying independent versus a potential outright sale.

**<A – Richard Fuld, Jr.>:** We have had a number of board meetings – some in person, some telephonic over the last number of weeks and months. And clear goal was to discuss all of these which we have taken you through today and all of the strategic options. And I must say the Board has been wonderfully supportive. Clearly understand, and understood, each of those options and the implications of each to the firm. And as far as the last question about a sale of part or all of the firm, I have always said that if anybody came with an attractive proposition that made it compelling for shareholder value, that would be brought to the Board, discussed with the Board and evaluated and that has not changed.

**<Q – Michael Hecht>:** Okay. And I just had a follow-up on that, on the investment management business. I mean, one, just thinking about the sale structure. It seems pretty unique. Can you give us a little more color on how you kind of sell 55% of something yet retain the majority of the earnings contribution and then also just looking at the flow trends in the Asset Management business in the quarter overall pretty strong but it looked like you had another 10 million of outflows from money funds after seeing 11 billion or so last quarter. Obviously not a big revenue deal but I just wanted to get some color on what's going on there. And then if you had 11 billion inflows overall, that implies some pretty strong in-flows in some of the long-term products. So maybe just some color there too.

**<A – Ian Lowitt>:** Sure. I think as you point out the investment management business is doing well. You know, through this period. And that, you know, on a net basis we are seeing inflows. There are outflows in the money market product but, to your point, that doesn't have a lot of impact on revenues.

With regard to how this plays through, clearly when you think about the IMD segment it includes the middle market institutional business which we are retaining, the minority stakes and it also, if we were going to move forward with this in this form, we would obviously retain our share of whatever the earnings are of the portions of IMD that we are selling off in this form. So the combination of those things, retaining two of the revenue streams and earnings streams at 100% and then a little bit less than 50% of the earnings streams that we sell, it's how the pre-tax impact of this is, the levels that we indicated in the remarks.

The way in which one would, you know, essentially establish this is we'll have to create a separate entity which is our IMD business and then that will have separate governance associated with it but I think a lot of the value is how it integrates into the rest of Lehman Brothers. While that will now be done on a probably more formalized basis, with service level agreements and things of that kind, you know, we are confident that that's the best way to get the most value out of it both for sort of core Lehman as well as for the investor.

**Lehman Brothers Holdings, Inc.**
Company▲

LEH
Ticker▲

Q3 2008 Guidance Call
Event Type▲

Sep. 10, 2008
Date▲

**<Q – Michael Hecht>:** Okay. Thanks a lot, guys.

**<A – Ian Lowitt>:** Thank you.

Operator:  And our next question comes from Mike Mayo. Please state your company name.

**<Q – Michael Mayo>:** Deutsche Bank.

**<A – Ian Lowitt>:** Hi.

**<Q – Michael Mayo>:** One general question. But with some specifics so the real issue I'm trying to get my arms around is what are the remaining marks that you have on your real estate exposure? So I guess I'll start with the residential real estate. It is down to 17 billion and you said it will decline by another 4 billion with the pending sale to BlackRock. Are the marks for that pending sale in the third quarter results and, if not, what kind of marks might we expect in the fourth quarter?

**<A – Herbert McDade III>:** Mike, it is Bart. The significant amount of the marks for the pending sale have been taken in the third quarter.

**<Q – Michael Mayo>:** But there is still some in the fourth quarter?

**<A – Ian Lowitt>:** There is probably some in the fourth quarter based on where the final pricing comes out.

**<Q – Michael Mayo>:** Okay. And to what degree have you provided seller financing?

**<A – Ian Lowitt>:** The BlackRock transaction, you know, we'll be providing seller financing probably, you know, at the 75% level. There is cash sweep features that create additional protection for us. But we'll be providing seller financing on that transaction.

**<Q – Michael Mayo>:** And of the remaining 13 billion, how aggressive might you be in offloading that?

**<A – Ian Lowitt>:** We think that, you know, there are a couple of additional trades in Europe that are currently being contemplated which would reduce that exposure to some amount beyond that but I think we feel that our objective is to run this business in and around $10 billion over a period of time. So we are not anticipating aggressive additional dispositions. Obviously we'll continue to buy and sell assets but that's broadly the level that we are hoping to operate at.

**<Q – Michael Mayo>:** Okay, so residential real estate is mostly where you want it to be with these pending transactions?

**<A – Herbert McDade III>:** That's correct, Mike. I think if you looked at it, Ian gave a flavor for the diversification now in the book, it really feels like a set of trading books that are an appropriate size to operate in these markets. Clearly we are going to continue to trade out of assets that we see having less value and try to acquire in the trading activity assets and the flow assets that have more value. But across the board U.S. and Europe it now really looks and feels and is operating as an active trading book.

**<Q – Michael Mayo>:** Let's just accept what you are saying as, you know, absolutely correct. That implies the main issue is the lingering commercial real estate exposure. And I appreciate the breakdown, how much has been marked down in each of the subcategories of residential. But you didn't give us that same break down for the commercial real estate exposure. At a minimum, you

corrected transcript

know, whole loans are 2/3 of the commercial mortgages. How much have those whole loans been written down?

**<A – Ian Lowitt>:** Well, I think that, you know, last quarter we said that the, you know, within the whole loans, the seniors were in the mid 90s. You know, now they are sort of in the very low 90s and the mezzanine piece which was in the very high 80s is now in the very low 80s.

**<Q – Michael Mayo>:** Okay. And then more conceptually, you know, why do you need more capital? I can answer this question, but you said your capital ratios, Tier 1 and total are well above the minimums yet at the same time you are raising tangible equity by $3 billion. So that implies you need some additional capital. Is one way to think about this, is that the remaining marks on the commercial real estate are maybe $7 billion because that's what you need to capitalize REI with?

**<A – Ian Lowitt>:** No, I think that would be absolutely the wrong way to think about it. The way I think you should think about it is we are basically going to be spinning off a series of assets at, you know, at much, much lower leverage ratios than the leverage ratios we want to operate with in aggregate. So if we want to operate in aggregate with a leverage ratio of 10 to 12 and then you spin off a chunk of your assets and you are leveraging that at three to four times. Then a consequence of that is that you need to, or you want to have more Tier 1 capital in order to maintain your leverage ratio in that sort of 10 to 12 range rather than have it increase more than that. So I think that's the predominant way to think about that.

**<Q – Michael Mayo>:** And then as a follow-up, to the extent you might need $7 billion to capitalize that entity and you will get 3 billion with the spin of part of IMD. How will you get the other 4 billion?

**<A – Ian Lowitt>:** But we don't feel we need to, you know, raise that extra amount to cover the 7 because you will have less sort of leverageable equity in core Lehman than where you are at the end of this quarter. So at the end of this quarter we are at 29.5 basically of leverageable capital. The amount you need in the remaining core Lehman given that it has $300 billion of assets and you are going to lever 12 to 1 is only 25 times. You could actually have your leverageable equity come down some amount and have, you know, the 5 to $7 billion sitting in the real estate entity and still be well capitalized within sort of the remaining core Lehman.

**<Q – Michael Mayo>:** And last question. It will be debated on probably, you know, many phone calls today. But what last statement can you say to give comfort that there are not major additional marks in the commercial real estate before the transfer, before the REI spin? And, Dick, maybe you can respond to that because this is, I think that is the issue right now.

**<A – Richard Fuld, Jr.>:** You are talking about strictly the commercial real estate?

**<Q – Michael Mayo>:** Yes, just commercial real estate.

**<A – Richard Fuld, Jr.>:** We had a number of sales this last quarter and did a very hard – and I think actually Ian spoke about it – did a very hard stress analysis. At the losses though that we did incur, we're more limited and driven in part, to the increase in yield expectations among investors. We do not envision large write-downs in the commercial real estate portfolio given the present market.

**<Q – Michael Mayo>:** Well the CMBX declined a lot this quarter. Can you help reconcile the two thoughts?

**<A – Ian Lowitt>:** I think, you know, CMBX tightened a lot last quarter and there were no gains associated with it because you know our portfolio's almost exclusively floating rate. So there is really, you know, no real impact on our real estate position as a result of the CMBX. And I think

**Lehman Brothers Holdings, Inc.**
*Company*▲

LEH
*Ticker*▲

Q3 2008 Guidance Call
*Event Type*▲

Sep. 10, 2008
*Date*▲

clearly there is a enormous amount of attention from our auditors and others around our marks with regard to the real estate. As we spin it off we are going to be filing Form, a Form 10, you know we are going to have audited balance sheet associated with that. You know, we, you know, to Dick's point we sold a lot of real estate last quarter and this quarter and our sales are in and around our marks which again gives us comfort that even in a difficult environment where people are looking to gain, take advantage of the fact we are obviously looking to reduce our exposure quite quickly, the fact we are selling in and around our marks over, you know, many, many billions of dollars of transactions and many, many different accounts and many, many different positions, you know, that again gives us comfort that the marks that we maintain and the levels at which we'll be transferring these assets into the new entity are essentially the right level.

**<Q – Michael Mayo>:** Okay. That's helpful. Thank you.

**<A – Richard Fuld, Jr.>:** Thanks Mike.

Operator:  Our next question comes from Douglas Sipkin. Please state your company name.

**<Q – Douglas Sipkin>:** Yes, hi. Wachovia.

Just one follow-up on some of the discussion and then just a general comment about the recent government activity; I'm just trying to understand, you know, the book value implications for the spin you know into the commercial business. I know a couple of other analysts have highlighted about the 6 to 7 billion in equity basically transferring over in. I mean are there – is there going to be a significant book value implication from this transfer? I'm just not clear on that.

**<A – Ian Lowitt>:** I think that we would say that, you know, if it was the 6 to 7, it would be 6 to 7 out of, you know, the over $19 billion of tangible book that we actually operate with and that would give you a way to split the book value that we think goes into the new entity and the book value that remains.

**<Q – Douglas Sipkin>:** And so you have, you have identified 3 billion of, I guess essentially goodwill copying coming back because you are selling a majority stake in Neuberger Berman. But that doesn't account for any potential gain that might exist. Is that correct?

**<A – Ian Lowitt>:** That is correct.

**<Q – Douglas Sipkin>:** So arguably that 3 billion could be, you know, depending upon the pricing, I mean, a considerable amount higher, I would imagine, even though it is probably a challenging environment to sell, you know, piece of an Asset Management business. The AUM level is substantially higher from when you first bought it. Isn't that correct?

**<A – Ian Lowitt>:** Exactly right. So I think you are thinking about it exactly the right way.

**<Q – Douglas Sipkin>:** And then just a general question, you know, and I know it is kind of early into the government action over the weekend. What are your views on the impact that's going to have on your business? Have you seen any tangible impact of that already? I know, you know, agency spreads have rallied. Just generally speaking what do you think that can potentially do over the next, you know, three to six months to the mortgage markets?

**<A – Herbert McDade III>:** Doug, it is Bart. I think we would argue the event itself was extremely constructive from a point of view of both the specific actions around the capital markets effect on the capital structure of Fannie and Freddie. But as significantly, the notion of and actions of the treasury to move into using the balance sheet and actually acquire mortgage assets we thought was equally impactful. So we were very constructive. We have held a number of research calls and

corrected transcript

**Lehman Brothers Holdings, Inc.**
*Company▲*

LEH
*Ticker▲*

Q3 2008 Guidance Call
*Event Type▲*

Sep. 10, 2008
*Date▲*

from the risk side were very constructive. That was a very significant event, not only for the companies but for the markets as a whole. To answer your question, what has happened, a lot of market experts see in it, we have seen a change in positive psychology, a slight improvement. We were not expecting that it would be an overnight effect but over time, the impact, the positive impact of both the events, we think, does lead to more constructive and more liquid markets which is what we all need.

**<Q – Douglas Sipkin>:** And then just a follow-up. I mean obviously there is a pretty substantial backlog of debt that needs to get refinanced. You know, any view as to when maybe that business can start to open up again? I mean it is possible this action helps or any viewpoint as to when it may come or does it just require a little bit better tone around the economy?

**<A – Herbert McDade III>:** I think if you are speaking to -- you are speaking to the securitized markets?

**<Q – Douglas Sipkin>:** No, no. Just, debt financing. You guys always talk about there is a huge backlog of refinancing. And there is a lot of money on the sidelines. I'm just talking sort of corporate debt.

**<A – Ian Lowitt>:** I mean, we think it is obviously helpful at some level. But I think that, you know, more stabilization is probably necessary to be able to address what's already, you know, a lot of build-up.

**<Q – Douglas Sipkin>:** Great. Thanks.

**<A>:** Thanks Doug.

Operator:  And the next question comes from Bill Tanona. Please state your company name.

**<Q – William Tanona>:** Goldman Sachs. Good morning. I guess the first question is, are you guys providing financing for the investment management sale?

**<A – Ian Lowitt>:** You know we are expecting bids back, you know, very, very soon. And we will see as a result of what comes back whether that's necessary. But it is not currently anticipated.

**<Q – William Tanona>:** Okay. And then I guess in terms of understanding, I know somebody else had already asked the question but I guess I don't understand the financial impact of the sale. Will this still be consolidated considering that you are retaining the majority of the pre-tax income or how should we think about the revenue impact as a result of this sale? Because I just don't understand how you guys can sell 55% yet retain the vast majority of the pre-tax income.

**<A – Ian Lowitt>:** No, I think -- you are right that we would not be consolidating, and I think that -- maybe I can clarify on this question sort of what's happening there. It is actually, you take, the whole segment and divide it into a piece that's being sold and a piece that is not. The piece that is not being sold obviously just stays inside Lehman Brothers and gets incorporated in predominantly into our capital market segment. For the piece that, you know, we are selling we won't be consolidating that and that represents a small piece of the earnings but actually a larger fraction of the revenues. And so, you know, we think that the revenue impact, you know, might be quite a bit larger in that sense. But that the pre-tax, you know, effect is more muted in part because the margins on the pieces that we are selling are lower than the margins on the pieces that we are keeping. And then of the pieces that we are selling, you know, we are still going to retain 45 to 49% of those earnings.

**Lehman Brothers Holdings, Inc.**

| Company▲ | Ticker▲ | Event Type▲ | Date▲ |
|---|---|---|---|
| | LEH | Q3 2008 Guidance Call | Sep. 10, 2008 |

**<Q – William Tanona>:** Okay and I guess taking that a step further in terms of, you know, thinking about the run rate that you guys provided ex- these write downs this quarter at 3.5 billion. What would be the run rain pro forma for this sale of the Investment Management Division as well as the transfer of the assets to the New Co considering that that was, I guess, 5 billion of cash flow a year that you guys had indicated?

**<A – Ian Lowitt>:** Yes, we think that, you know, 2008, excluding the marks and excluding sort of IMD, you know, the run rates, you know, pre the debt valuation is 14.6. So that includes the earlier time period. But essentially what we are forecasting for next year is a little bit lower than what we have had for the full year but it is obviously, you know, in line with what we have for the last two quarters.

**<Q – William Tanona>:** But does that exclude the cash flows from the spin-off of the New Co? I'm trying to understand that 5 billion in cash flow and the pay down in debt being reduced to 50/50 over the course of four years and the impact that that might have on the revenues as well.

**<A – Ian Lowitt>:** Actually what we are doing with a lot of the cash flow that comes in is using it to just mark down the basis so the impact on our revenues of that is, is not significant. And a lot of the reduction in our commercial position is coming down as a result of sort of pay downs. So part of the reduction this quarter is the result of pay downs. They don't go into, you know, revenue. They just enable you to reduce your balances within commercial. So that was, you know, between 1.5 and $2 billion this quarter. So the run rate that we are seeing of sort of pay downs is actually consistent with what's forecast from a cash flow perspective going forward.

**<Q – William Tanona>:** Okay. And then in terms of you know, there is a lot of questions on the marks of the portfolio. Will there be an independent firm that actually verifies the value at which these commercial real estate assets are actually being put into this new Hold Co?

**<A – Ian Lowitt>:** There will be audited financials as part of the Form 10 filing.

**<Q – William Tanona>:** Okay and then just lastly, in terms of, you know, buying shares, you look at the stock trading right now at about 1/3 of book value, has been for a while. We really haven't seen much in the way of senior executives buying the stock. I assume part of that is because of your involvement around some of these transactions. But I guess going ahead, what is it going to take to kind of see some of the senior executives purchasing stock down here as a sign of confidence?

**<A – Ian Lowitt>:** I think that – the reason is obviously, there's been a great deal of non-public and material information which has, you know, precluded any of our senior executives from buying any stock. We also, you know, haven't been using the firm's capital to go into the marketplace and buy stock because we feel that preserving capital in this environment is the most important thing that we can actually do. So I think that's really, you know, that's really all the dynamics around the stock.

**<Q – William Tanona>:** And I guess going forward what would it take to get senior executives to be purchasing stock?

**<A – Ian Lowitt>:** I think we need to be in a circumstance where there is not any non-material public information that, you know, is precluding us from doing that.

**<Q – William Tanona>:** Okay. Thanks.

**<A – Ian Lowitt>:** I think we have time for just one more question because we wanted to conclude this before the markets actually open.

Operator:  Our last question comes from Guy Moszkowski. Please state your company name.

**<Q – Guy Moszkowski>:** I'm with Merrill Lynch. Good morning. Is it correct to assume that REI will be structured as a REIT and is that why it won't be subject to mark to market?

**<A – Ian Lowitt>:** It is not going to be structured as a REIT and it won't be subject to mark to market because it's – you know, it is going to be just on a held to maturity basis and the discussions that we have had have confirmed that that's the way in which it will be treated.

**<Q – Guy Moszkowski>:** Okay. And just switching to IMD, is there something contemplated in the way this will be structured which will enhance the retention of IMD personnel?

**<A – Ian Lowitt>:** I think the retention of IMD folks is a critical element of the structuring so that's something that both we and whoever the acquirer is would be, you know, very, very attentive to.

**<Q – Guy Moszkowski>:** So presumably that will be included in the economics and would probably affect the price to some extent?

**<A – Ian Lowitt>:** Yes.

**<Q – Guy Moszkowski>:** Has there been any change in how you calculate your debt valuation gains in the quarter? Because, you know, for the period up to the end of August we couldn't see a degree of spread widening in your debt that was commensurate with the scale of the gain.

**<A – Ian Lowitt>:** Yes I think we mark off the cash curves in the U.S. and also in Europe for the European debt. And, you know, we are – no we could certainly, you know, show you those numbers.

**<Q – Guy Moszkowski>:** Okay. That might be helpful. Maybe I'll follow up later. And then finally, you know, with the big spin-off of the CRE assets, and you did talk about generally right-sizing businesses internally. Can you give us a sense of the, how you are sizing personnel and capital commitment of that business going forward relative to kind of the run rates of commercial real estate over the last couple of years?

**<A – Ian Lowitt>:** Sure, I mean, I think we are looking to migrate that business from, to one which is much, much more focused on advice and restructuring advice. And to the extent that there is sort of investment within the business, that would be done, you know, really through the private equity investment funds not on balance sheet. I think that's the principle ways in which we are thinking of restructuring that business.

**<Q – Guy Moszkowski>:** Okay. That's helpful. Thank you very much. Thanks for doing the call this morning.

**Ian T. Lowitt, Chief Financial Officer and Co-Chief Administrative Officer**

Okay. Well, thank you all for joining us, you know, on short notice. Obviously there are a lot of questions. We got through a lot of important stuff. I'm sure there will be, you know, follow-up questions that you and others have and we are obviously, you know, ready to deal with those questions and at your disposal. And we would like to, you know, close by thanking, again our clients, our employees, our investors and our counterparties for standing with us.

| **Lehman Brothers Holdings, Inc.** | **LEH** | **Q3 2008 Guidance Call** | **Sep. 10, 2008** |
|---|---|---|---|
| *Company*▲ | *Ticker*▲ | *Event Type*▲ | *Date*▲ |

**Operator:** And that concludes today's call. Thank you for participating. You may now disconnect your line.

**Disclaimer**
The information herein is based on sources we believe to be reliable but is not guaranteed by us and does not purport to be a complete or error-free statement or summary of the available data. As such, we do not warrant, endorse or guarantee the completeness, accuracy, integrity, or timeliness of the information. You must evaluate, and bear all risks associated with, the use of any information provided hereunder, including any reliance on the accuracy, completeness, safety or usefulness of such information. This information is not intended to be used as the primary basis of investment decisions. It should not be construed as advice designed to meet the particular investment needs of any investor. This report is published solely for information purposes, and is not to be construed as financial or other advice or as an offer to sell or the solicitation of an offer to buy any security in any state where such an offer or solicitation would be illegal. Any information expressed herein on this date is subject to change without notice. Any opinions or assertions contained in this information do not represent the opinions or beliefs of FactSet CallStreet, LLC. FactSet CallStreet, LLC, or one or more of its employees, including the writer of this report, may have a position in any of the securities discussed herein.

THE INFORMATION PROVIDED TO YOU HEREUNDER IS PROVIDED "AS IS," AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, FactSet CallStreet, LLC AND ITS LICENSORS, BUSINESS ASSOCIATES AND SUPPLIERS DISCLAIM ALL WARRANTIES WITH RESPECT TO THE SAME, EXPRESS, IMPLIED AND STATUTORY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, COMPLETENESS, AND NON-INFRINGEMENT. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER FACTSET CALLSTREET, LLC NOR ITS OFFICERS, MEMBERS, DIRECTORS, PARTNERS, AFFILIATES, BUSINESS ASSOCIATES, LICENSORS OR SUPPLIERS WILL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGES FOR LOST PROFITS OR REVENUES, GOODWILL, WORK STOPPAGE, SECURITY BREACHES, VIRUSES, COMPUTER FAILURE OR MALFUNCTION, USE, DATA OR OTHER INTANGIBLE LOSSES OR COMMERCIAL DAMAGES, EVEN IF ANY OF SUCH PARTIES IS ADVISED OF THE POSSIBILITY OF SUCH LOSSES, ARISING UNDER OR IN CONNECTION WITH THE INFORMATION PROVIDED HEREIN OR ANY OTHER SUBJECT MATTER HEREOF.

*The contents and appearance of this report are Copyrighted FactSet CallStreet, LLC 2008. CallStreet and FactSet CallStreet, LLC are trademarks and service marks of FactSet CallStreet, LLC. All other trademarks mentioned are trademarks of their respective companies. All rights reserved.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
In re                                              :        **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :        **08-13555 (SCC)**
                                                   :
                        Debtors.                   :        **(Jointly Administered)**
--------------------------------------------------------------------x

### ORDER GRANTING FOUR HUNDRED EIGHTY-THIRD OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

Upon the four hundred eighty-third omnibus objection to claims, dated October 31, 2014 (the "Four Hundred Eighty-Third Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, seeking to disallow and expunge the No Liability Claims pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF No. 6664], all as more fully described in the Four Hundred Eighty-Third Omnibus Objection to Claims; and due and proper notice of the Four Hundred Eighty-Third Omnibus Objection to Claims having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Four Hundred Eighty-Third Omnibus Objection to Claims is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Four Hundred Seventy-Eighth Omnibus Objection to Claims establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Four Hundred Seventy-Eighth Omnibus Objection to Claims.

ORDERED that the relief requested in the Eighty-Third Omnibus Objection to Claims is granted; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Claims listed on Exhibit 1 annexed hereto are disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2014
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\95126477\3\58399.0011

**Exhibit 1**