**EXHIBIT  A**

**Hearing Date and Time: October 10, 2012, at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: October 3, 2012, at 4:00 p.m. (Prevailing Eastern Time)**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

**NOTICE OF AMENDED MOTION OF GIANTS STADIUM LLC FOR LEAVE
TO CONDUCT DISCOVERY OF THE DEBTORS PURSUANT TO
<u>FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004</u>**

      **PLEASE TAKE NOTICE** that, on October 10, 2012, at 10:00 a.m.

(prevailing Eastern Time), or as soon thereafter as the matter may be heard, before the

Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601 of the

United States Bankruptcy Court, Southern District of New York, One Bowling Green,

New York, New York, 10004, Giants Stadium LLC ("Giants Stadium") will move for

entry of an order granting leave to conduct discovery of Lehman Brothers Holding Inc.

("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF") (jointly, the "Debtors")

and Lehman Brothers, Inc. ("LBI") pursuant to Federal Rule of Bankruptcy Procedure

2004 (the "Amended Motion").

**PLEASE TAKE FURTHER NOTICE** that any objection or response to the Amended Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York, and (i) shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format ("PDF"), WordPerfect, or any other Windows-based word processing format; and (ii) a hardcopy of such objection or response shall be served in accordance with General Order M-242, upon (A) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (B) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard W. Slack, Esq., Michael J. Firestone, Esq., Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.), attorneys for the Debtors; (C) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.); (D) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan R. Fleck, Esq.), attorneys for the official committee of unsecured creditors appointed in these cases; (E) the attorneys for any other official committee(s) appointed in these cases; and (F) Sullivan & Cromwell LLP, 125

-2-

Broad Street, New York, New York (Attn: Bruce E. Clark, Esq.), attorneys for Giants

Stadium, so as to be actually filed and received no later than October 3, 2012 at 4:00 p.m.

(prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the

Amended Motion is not received by the Objection Deadline, the relief requested shall be

deemed unopposed, and the Bankruptcy Court may enter an order granting the relief

sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required

to attend the Hearing, and failure to appear may result in relief being granted or denied

upon default.

Dated: New York, New York
      September 26, 2012

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:   /s/                    
      Bruce E. Clark
      Matthew A. Schwartz
      SULLIVAN & CROMWELL LLP
      125 Broad Street
      New York, New York 10004
      Telephone: (212) 558-4000
      Facsimile: (212) 558-3588

      *Attorneys for Giants Stadium LLC*

**Hearing Date and Time: October 10, 2012, at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: October 3, 2012, at 4:00 p.m. (Prevailing Eastern Time)**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Bruce E. Clark
Matthew A. Schwartz

*Attorneys for Giants Stadium LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**AMENDED MOTION OF GIANTS STADIUM LLC FOR LEAVE**
**TO CONDUCT DISCOVERY OF THE DEBTORS**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

Giants Stadium LLC ("Giants Stadium") hereby moves this Court for an order pursuant to Federal Rule of Bankruptcy Procedure 2004 directing that Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF") (jointly, the "Debtors") and Lehman Brothers, Inc. ("LBI") respond to the document requests contained in Schedule 1 attached hereto, and provide for examination of the Debtors' representative who is most knowledgeable about the matters set forth herein (the "Amended Motion").

## INTRODUCTION

1.      Debtors have been hiding behind Rule 2004 for more than three and a half years in order to avoid directly addressing Giants Stadium's Claims.   In that time, Debtors have demanded and received extensive discovery from Giants Stadium, including nearly 64,000 pages of documents and the deposition of Giants Stadium's authorized representative.   Throughout this entire time, Debtors have avoided producing a single document or deponent themselves.

2.      It is clear that Debtors will object to Giants Stadium's Claims and possibly seek a receivable to the Estate.   And it is clear that Debtors' even more recent Rule 2004 discovery has been directed at bolstering this planned objection with new arguments, rather than resolving any outstanding indecision regarding the Claims.

3.      Debtors served their most recent Rule 2004 subpoena against Giants Stadium in April of this year, more than three years after GSLLC's Claims were filed. Giants Stadium has objected to the subpoena on the grounds that it is an abuse of the Debtors' Rule 2004 subpoena powers, brought solely to annoy, harass, and oppress Giants Stadium.   The continued resort to Rule 2004 discovery—this is the third subpoena issued against Giants Stadium—is only possible because Debtors have delayed filing their objection to the Claims.   The resulting discovery imbalance, where GSLLC has produced almost 64,000 pages and Debtors have produced none, is the primary reason for such delay.

4.      In this situation, Debtors cannot continue to use the Rule 2004 process to hamstring Giants Stadium's ability to pursue its Claims:   Debtors should either (i) object to the Claims and allow Giants Stadium to take discovery under the adversary proceeding

process or (ii) consent to provide Giants Stadium with discovery under the Rule 2004 process. Without reciprocal discovery, it is unlikely that any progress can be made toward resolution of the Claims, whether inside or outside of court.

FACTUAL BACKGROUND

5.     In mid-2007—just prior to the dislocations of the capital markets—Giants Stadium financed its portion of the New Meadowlands Stadium ("Stadium") by issuing over $700 million in auction-rate bonds ("Bonds"). As a family-owned entity with a highly risk-averse nature, Giants Stadium sought to reduce its risk on the Bonds. LBSF proposed an attractive solution: an actual bond-rate swap, under which Giants Stadium would pay LBSF a fixed-rate of 6.1885%, and LBSF would pay to Giants Stadium the actual rate on the Bonds, as determined at each auction. Giants Stadium and LBSF consummated this proposal on July 27, 2007 by entering into two Actual Rate Swaps as described in two ISDA Master Agreements (the "ISDA Masters").

6.     On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LBHI's bankruptcy filing was an Event of Default under the ISDA Masters. On September 18, 2008, Giants Stadium sent two letters to LBSF (collectively, the "Termination Letters") (i) notifying LBSF that an Event of Default pursuant to Section 5(a)(vii) of the ISDA Masters had occurred; and (ii) designating September 18, 2008, as the Early Termination Date with respect to the Actual Rate Swaps.

7.     Giants Stadium then determined its loss due to the terminations, and then filed the Claims.[1]

---

[1]     Giants Stadium has subsequently filed amended Claims, most recently on December 6, 2011.

-3-

8.      On May 19, 2010, Debtors served Giants Stadium with a subpoena requesting 25 categories of documents loosely relating to the Claims.  Giants Stadium ultimately produced to Debtors nearly 64,000 pages of documents and Debtors completed a seven-hour deposition of Giants Stadium's authorized representative, Christine Procops.  On April 6, 2011, Giants Stadium reached out to Debtors to initiate reciprocal discovery.  McCombs Decl. ¶ 2.  At that time Debtors advised Giants Stadium that its request was unnecessary because the Debtors were "still engaged in [their] investigative process."  *Id.* ¶ 3.

9.      On April 14, 2011, Giants Stadium filed the Motion of Giants Stadium LLC for Leave to Conduct Discovery of Debtors Pursuant to Rule 2004, [Dkt. No. 16016], which Debtors opposed.

10.      Despite their refusal to provide Giants Stadium with any discovery, and despite the extensive, one-way discovery provided by Giants Stadium to them, Debtors sought to compound the imbalance by seeking an order from this Court to compel Giants Stadium to turn over a handful of documents that Giants Stadium had withheld or redacted under the attorney-client privilege.

11.      On September 7, 2011, in its Opposition to Debtors' Motion to Compel Production of Documents "Improperly" Withheld as Privileged, Giants Stadium asked this Court to encourage Debtors to engage on the merits of the Claims with Giants Stadium, rather than delay their resolution any further.  At oral argument, this Court urged the parties to do just that, after which Debtors finally consented to begin substantive discussion of the merits of the Claims and to begin a voluntary mediation process.  In an effort to demonstrate good faith, Giants Stadium agreed to allow Debtors'

counsel to view the documents at issue in the motion to compel, on the condition that privilege would not thereby be waived.

12.     Substantive discussions have been ongoing for several months, both inside and outside the formal mediation process, but the parties have been unable as yet to settle this matter.

13.     On February 14, 2012, the parties held a mediation.  The mediator released the parties at the end of the day because no resolution seemed possible.  Over the course of June through mid-September 2012, the parties attempted to negotiate a settlement outside of mediation; that process too has failed.

14.     To date, Debtors have not produced a single document or deponent to Giants Stadium, and have failed to formally object to the Claims.  As Giants Stadium is unable to force Debtors to object to the Claims and open up discovery during an adversary proceeding, Giants Stadium seeks Rule 2004 discovery.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction to consider this Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in this Amended Motion is Rule 2004 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

16.     Giants Stadium requests the entry of an order pursuant to Rule 2004 authorizing and directing (i) the production of documents by the Debtors in response to the document requests attached hereto as Schedule 1; (ii) the deposition of a representative of the Debtors who is most knowledgeable about the subject matters set

forth in this Motion; (iii) the issuance of one or more subpoenas compelling such

document production and attendance at such deposition in the manner provided in

Federal Rule of Bankruptcy Procedure 9016; and (iv) such other and further relief as the

Court deems just and proper. In the alternative, Giants Stadium requests the Court to

order Debtors to cease their Rule 2004 discovery attempts against Giants Stadium and

third-parties and simply state their objections to the Claims. That way, reciprocal

discovery can proceed.

<u>ARGUMENT</u>

17. Thus far, Debtors are the only ones who have had any access to discovery.

Debtors have abused this advantage, using Rule 2004 discovery to develop and hone their

arguments for an objection rather than investigating any genuine question. The discovery

Giants Stadium seeks will serve to correct this imbalance, and assist the parties to clarify

and narrow the issues on which there is disagreement, in order to properly resolve the

Claims.

18. Rule 2004 provides that "[o]n motion of any party in interest, the court

may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of

discovery under Rule 2004 relates to "the acts, conduct, or property or to the liabilities

and financial condition of the debtor, or to any matter which may affect the

administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R.

Bankr. P. 2004(b). Under Rule 2004, a moving party is entitled to both the examination

of a witness and the production of requested documents. Fed. R. Bankr. P. 2004(c).

19. Under Rule 2004, "good cause" for an examination is shown "if the

examination is necessary to establish the claim of the party seeking the examination, or if

denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (finding creditor had good cause to participate in debtors' Rule 2004 discovery process and noting that "It is not the debtors' ... function to prevent discovery of a claim, but rather one of their functions as fiduciaries is to see that substantial justice is provided to all estate claimants.").

20.      Giants Stadium has good cause for seeking discovery under Rule 2004. Absent action by the Debtors, Giants Stadium's claims continue to represent *prima facie* allowable claims. Because Debtors have unreasonably delayed objecting to or otherwise resolving the claims, and the information sought therefore cannot be obtained via the normal discovery process, Rule 2004 discovery is the only procedural recourse currently available to Giants Stadium. The delineation between Rule 2004 and a contested matter or an adversary proceeding is critical—once a contested matter or an adversary proceeding is commenced, Giants Stadium would have access to discovery under the Federal Rules of Civil Procedure.

21.      It has been more than a year since Giants Stadium reached out to Debtors to initiate reciprocal discovery, at which time Debtors stated that discovery was "unnecessary and premature" because they are still determining whether to agree to the Claims. McCombs Decl. ¶ 3. It is now clear that Debtors have determined to object to Giants Stadium's Claims, and so Giants Stadium should be allowed to take discovery, as Debtors promised. *Id.*

22.      As to the scope of discovery that Giants Stadium currently seeks, as Debtors themselves point out to Giants Stadium, McCombs Decl. ¶ 4, Rule 2004 "allows

considerable leeway for all manner of so-called fishing expeditions provided that there is

a reasonable nexus to the debtor and the administration of the debtor's case." *In re

Hilsen*, 2008 WL 2945996, at *1 (Bankr. S.D.N.Y., July 25, 2008).  Nonetheless, Giants

Stadium, unlike debtors, is not interested in conducting a "fishing expedition."  Rather,

Giants Stadium seeks narrowly tailored discovery addressing only those issues on which

the parties have stated their disagreement during the course of negotiations or the

mediation.  Giants Stadium's requests are not overly burdensome, costly or disruptive

requests.

23.     In particular, Giants Stadium seeks discovery relating to the negotiation,

drafting, and execution of the contracts.  This discovery is targeted at certain provisions

of the contracts that Debtors have cited in support of their contentions that their default

on the swaps resulted in a receivable to the estate.  Without reciprocal discovery on these

points, the parties seem unlikely to come to agreement.  Relatedly, the conduct of

Debtors' affiliate, Lehman Brothers Inc., as broker-dealer, including its decision to hold

the Bonds on its books and to resign on September 19, 2008, are pivotal to the parties'

current disagreements regarding the contracts and the value of the Claims.  Giants

Stadium is clearly entitled to discovery on these topics.

24.     Additionally, because Debtors refuse to concede several basic preliminary

factual issues, Giants Stadium is forced to seek discovery relating to those matters.  First,

Giants Stadium presented Debtors with ample evidence of swap termination on

September 18, 2008.  However, perhaps because this termination is inconsistent with

Debtors' "receivables" theory, Debtors continue to press the argument that the swaps

were not *properly* terminated.  Giants Stadium must therefore inquire into Debtors'

receipt of the termination notices and actual knowledge of the termination. Debtors have already taken discovery on this issue against Giants Stadium, but have not provided any information on this issue to Giants Stadium. Similarly, because Debtors refuse to concede that Giants Stadium fulfilled its Market Quotation obligations, Giants Stadium seeks discovery on this topic. Debtors have not provided Giants Stadium with information regarding any efforts LBSF may in fact have undertaken in an attempt to fulfill its obligations under the contracts. To the extent that Debtors have additional information on these topics within their custody and control, Giants Stadium is entitled to that information.

25.     Finally, to the extent that Debtors also have information regarding their own assessments of the value of the Auction Rate Swaps and the reasonableness of Giants Stadium's calculations, Giants Stadium is entitled to that information as well. The Parties are unlikely to come to agreement on the good-faith, reasonable basis upon which Giants Stadium valued its Claims without full disclosure of how Debtors themselves have approached this most central of topics.

26.     The equities favor Giants Stadium's requested relief and, pursuant to Rule 2004, Giants Stadium requests that the Court enter an order granting Giants Stadium leave to take discovery of the Debtors concerning the matters described herein and in the attached request.

<u>NO PRIOR REQUEST</u>

27.     This Amended Motion fully amends and replaces the Motion of Giants Stadium LLC for Leave to Conduct Discovery of the Debtors Pursuant to Federal Rule of

08-13555-jmp Doc 41081-1 Filed 09/21/12/14 Entered 11/12/14 23:13:21 Main Document
Pg 14 of 27 29

Bankruptcy Procedure 2004, as originally filed on April 14, 2011 and not yet adjudicated. No prior Motion for the relief requested herein has been made to this or any other court.

WAIVER OF MEMORANDUM OF LAW

28.     As there are no novel issues of law relating to the Amended Motion, Giants Stadium requests that the Court waive the requirement that Giants Stadium file a separate memorandum of law in support of the Amended Motion.

CONCLUSION

29.     By this Amended Motion, Giants Stadium is seeking information from the Debtors relating to matters central to resolution of the Claims.

30.     The information sought thus relates to the property, liabilities, financial condition, and administration of the Debtors' estate, and this request is therefore well within the scope of Rule 2004.

**WHEREFORE**, for the reasons stated herein, Giants Stadium respectfully requests that the Court enter an Order, pursuant to Rule 2004, in the form attached hereto as Exhibit A: (i) requiring the production of documents from the Debtors responsive to the document requests; (ii) requiring the Debtors to produce their representative for examination who is most knowledgeable about the subject matters set forth in this Motion; (iii) authorizing the issuance of one or more subpoenas compelling such document production and appearance for examination; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 26, 2012

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**

By:     /s/ _____
         Bruce E. Clark
         Matthew A. Schwartz
         SULLIVAN & CROMWELL LLP
         125 Broad Street
         New York, New York 10004
         Telephone: (212) 558-4000
         Facsimile: (212) 558-3588

         *Attorneys for Giants Stadium LLC*

08-13555-jmp   Doc 31408   Filed 09/26/12   Entered 09/26/12 15:13:06   Main Document
Pg 9 of 29

# SCHEDULE 1

08-01389-jmp   Doc 31408-1   Filed 09/26/12   Entered 09/26/12 15:48:06   Main Document
Pg 17 of 29

## REQUEST FOR PRODUCTION OF DOCUMENTS

## DEFINITIONS

1.      The term "AUCTIONS" as used herein shall mean that process by which an auction rate on the BONDS was determined which was then subject to an interest rate swap as governed by the ISDA MASTER AGREEMENTS.

2.      The term "BONDS" as used herein shall mean those auction-rate securities issued by GIANTS STADIUM which are the subject of the TERMINATED TRANSACTIONS and whose auction rate was subject to an interest rate swap as governed by the ISDA MASTER AGREEMENTS.

3.      The term "BROKER-DEALER" as used herein shall mean the entity responsible for acting as auction broker for AUCTIONS on the BONDS.

4.      The term "COMPUTER" as used herein includes, but is not limited to, all mainframe computers, personal computers, microcomputers, desktop and portable, laptop or notebook computers, and personal digital assistants ("PDAs").

5.      The term "DEBTORS" as used herein shall mean and refer to Lehman Brothers Holdings Inc. and/or Lehman Brothers Special Financing Inc. and any of their respective affiliates, officers, directors, employees, associates, consultants, attorneys, representatives, agents, or any other person working on their behalf, including their predecessors and successors in interest, and bankruptcy estates.

6.      The term "DOCUMENT" or "DOCUMENTS" as used herein shall have the meaning given to "document" in Local Civil Rule 26.3(c)(2) of the United States District Court for the Southern District of New York.

7.     The term "ELECTRONIC DATA" as used herein shall mean and refer to the original and any non-identical copies of any COMPUTER program, software, database, file, email, source code, or operating system, including ASCII files, word processing documents, spreadsheets, charts, and graphs, whether active, deleted, or fragmented.

8.     The term "ELECTRONIC MEDIA" as used herein shall mean and refer to any magnetic or other storage device used to record, store, or maintain ELECTRONIC DATA, including, but not limited to, any disk, minidisk, floppy disk, hard drive, disk drive, CD ROM, optical disk, memory card, personal computer, network, magnetic tape, microfiche, punch card, computer chip, back up, or any other means of storing, recording or retaining information generated by or input to or on a COMPUTER.

9.     The term "GIANTS STADIUM" as used herein shall mean and refer to Giants Stadium LLC and any of the respective officers, directors, employees, associates, consultants, attorneys, representatives, agents, or other any person working on its behalf, including its predecessors and successors in interest.

10.     The term "HEDGING TRANSACTION(S)" as used herein shall mean and refer to any and all transactions and positions, including, but not limited to, short positions and credit default swaps, entered into by DEBTORS at any time prior to, simultaneous with, or after entering into the TERMINATED TRANSACTIONS with GIANTS STADIUM, the purpose of which was to hedge DEBTORS' risk under the TERMINATED TRANSACTIONS, in whole or in part, including any transactions and positions under which DEBTORS would benefit from a decline in value, decline in

08-13555-jmp   Doc 1408   Filed 09/26/12   Entered 09/26/12 15:13:06   Main Document
Pg 19 of 27

rating, or any increase in the cost of insuring against such decline of either Financial Security Assurance Inc. ("FSA") or Financial Guaranty Insurance Company ("FGIC").

11.     The term "ISDA MASTER AGREEMENTS" as used herein shall mean and refer to the two ISDA Master Agreements, together with the schedules and exhibits thereto and each confirmation exchanged with regard to transactions thereunder, entered into by and between Giants Stadium and LBSF as of July 27, 2007 and insured by FSA and FGIC, respectively, and guaranteed by LBHI.

12.     The term "LBHI" as used herein shall mean and refer to Lehman Brothers Holdings Inc., and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents, or any other person working on its behalf, including its predecessors and successors in interest.

13.     The term "LBI" as used herein shall mean and refer to Lehman Brothers, Inc., and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents, or any other person working on its behalf, including its predecessors and successors in interest.

14.     The term "LBSF" as used herein shall mean and refer to Lehman Brothers Special Financing Inc. and any of its respective officers, directors, employees, associates, consultants, attorneys, representatives, agents, or other any person working on its behalf, including its predecessors and successors in interest.

15.     The term "RELATE TO" or "REFER TO" or the like as used herein shall mean and refer to all documents that in any manner or form are relevant in any way to the subject matter in question.

16.     The term "TERMINATED TRANSACTIONS" as used herein shall mean and refer to transactions entered into pursuant to the ISDA MASTER AGREEMENTS and terminated by GIANTS STADIUM in the TERMINATION LETTERS.

17.     The term "TERMINATION LETTERS" as used herein shall mean and refer to the letters from GIANTS STADIUM to LBSF dated September 18, 2008.

18.     The terms "YOU" and "YOUR" as used herein shall mean the DEBTORS, as defined herein.

19.     For the purposes hereof, the reference to any entity shall include any and all officers, directors, employees, associates, consultants, attorneys, representatives, and agents or any other person or entity representing such entity or acting on its behalf as well as any and all affiliate entities, predecessors and successors in interest, and their respective officers, directors, employees, associates, consultants, attorneys, representatives, and agents.

<u>INSTRUCTIONS</u>

1.     In responding to these requests for production, YOU are requested to furnish all DOCUMENTS that are in YOUR actual or constructive possession, custody, or control or in the possession, custody, or control of any of YOUR representatives, agents, or attorneys. In responding to these requests for production, YOU may elect to produce the original or, if the original is not available, a legible copy, of each requested document.

2.     In responding to these requests for production, YOU are requested to produce all DOCUMENTS either as they are kept in the usual course of YOUR business affairs or they shall be organized and labeled to correspond with the requests herein.  If a

DOCUMENT is responsive to more than one request, only one exemplar of the DOCUMENT needs to be produced. Similarly, if YOU have more than one copy of the same DOCUMENT, the additional copies need not be produced. A version of a DOCUMENT that differs in any way from the original of such DOCUMENT because it constitutes a prior draft or subsequent version, because it contains any interlineations or marginalia, or because it differed in any other respect from the original, is not an exact duplicate of such DOCUMENT. Each different version of such DOCUMENT is required to be produced.

3.     If YOU cannot respond to any of the following requests in full after exercising reasonable diligence to secure the information requested therein, please so state and respond to the extent possible, specifying the reasons for any inability to respond and stating whatever information YOU do have concerning such request.

4.     If a responsive DOCUMENT consists of ELECTRONIC DATA, is stored on ELECTRONIC MEDIA or a COMPUTER, or is otherwise unreadable in its ordinary state, the responding party shall take reasonable steps to produce and translate all such responsive items into a useable or readable form.

5.     If any privilege is claimed or if any objection is made regarding the production of any DOCUMENTS, with respect to each such DOCUMENT: (1) identify the privilege or objection involved; (2) state the basis for claiming the privilege or making the objection; (3) describe the type of DOCUMENT and the date of its creation; (4) identify each person who (a) has knowledge of the DOCUMENT or the information that the DOCUMENT contains, (b) prepared or made the DOCUMENT, (c) signed the DOCUMENT, and/or (d) now possesses the DOCUMENT or a copy, summary, or digest

thereof; and (5) identify each person to whom the DOCUMENT or a copy, summary, or

digest thereof was directed, circulated, distributed, or shown.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

   All DOCUMENTS that RELATE TO the negotiation, drafting, and

execution of the ISDA MASTER AGREEMENTS or any other contracts that RELATE

TO the TERMINATED TRANSACTIONS.

### REQUEST FOR PRODUCTION NO. 2:

   All DOCUMENTS that RELATE TO the economic, business, or

contractual intent of the parties in entering into the TERMINATED TRANSACTIONS.

### REQUEST FOR PRODUCTION NO. 3:

   All DOCUMENTS that RELATE TO the meaning, interpretation,

economics, business purpose, or other intent behind any contractual provision within the

ISDA MASTER AGREEMENTS or any other contracts that RELATE TO the

TERMINATED TRANSACTIONS.

### REQUEST FOR PRODUCTION NO. 4:

   All DOCUMENTS that RELATE TO LBI's appointment or anticipated or

actual role as BROKER-DEALER for the BONDS.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS that RELATE TO allowing GIANTS STADIUM to terminate or
replace LBI as BROKER-DEALER for the BONDS.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS that RELATE TO any contemplated conversion of the
TERMINATED TRANSACTIONS to LIBOR-rate swaps.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS that RELATE TO the conduct of LBI as BROKER-
DEALER for the BONDS, including but not limited to its conduct of the AUCTIONS
and any decision made to hold, auction, or sell the BONDS, including any economic,
business or other purpose behind each such decision.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS that RELATE TO discussions between LBI as
BROKER-DEALER for the BONDS and DEBTORS as parties to the TERMINATED
TRANSACTIONS, including any discussions regarding the economic, business, or other
purposes behind decisions to have LBI hold the BONDS at the "All-Hold Rate."

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS that RELATE TO the resignation of LBI as BROKER-
DEALER for the BONDS.

REQUEST FOR PRODUCTION NO. 10:

> All DOCUMENTS that RELATE TO the valuation of the TERMINATED
TRANSACTIONS.


REQUEST FOR PRODUCTION NO. 11:

> All DOCUMENTS that RELATE TO the TERMINATION of the
TERMINATED TRANSACTIONS, including all DOCUMENTS that RELATE TO
receipt of the TERMINATION NOTICES or whether the TERMINATED
TRANSACTIONS were actually TERMINATED.


REQUEST FOR PRODUCTION NO. 12:

> All DOCUMENTS that RELATE TO the Expert Report of John J. Olvany
as it RELATES TO valuation of the TERMINATED TRANSACTIONS, including all
DOCUMENTS, calculations, and other information which formed the basis of the report,
as they RELATE TO valuation of the TERMINATED TRANSACTIONS.


REQUEST FOR PRODUCTION NO. 13:

> All DOCUMENTS that RELATE TO the BONDS or the TERMINATED
TRANSACTIONS as used as collateral for a loan made to LBSF by 7th Avenue, Inc. on
or around August 28, 2008, including any DOCUMENTS that RELATE TO
requirements in the 7th Avenue collateral agreement that LBHI would send notices to all

counterparties to the collateral swaps stating that all future payments under the swaps should be paid to 7th Avenue if LBHI entered into bankruptcy.

REQUEST FOR PRODUCTION NO. 14:

        All DOCUMENTS that RELATE TO any analysis done by LBSF of its records to determine whether GIANTS STADIUM should receive a letter demanding periodic payments as was sent by LBSF to other parties with whom there were still thought to be live swaps.

REQUEST FOR PRODUCTION NO. 15:

        All DOCUMENTS that RELATE TO any efforts by DEBTORS to fulfill any of its obligations under Section 6(e) of the ISDA MASTER AGREEMENTS.

REQUEST FOR PRODUCTION NO. 16:

        All DOCUMENTS that RELATE TO any discussions between DEBTORS and GIANTS STADIUM regarding the Market Quotation payment measure.

REQUEST FOR PRODUCTION NO. 17:

        All DOCUMENTS that RELATE TO (i) any valuation methodologies that the DEBTORS have employed to value "Loss," as defined in the ISDA MASTER AGREEMENTS and covering the TERMINATED TRANSACTIONS, and (ii) any valuation methodologies that the DEBTORS have employed to value "Loss," as defined

in an ISDA master agreement and covering any other bond-rate swap to which

DEBTORS are or were a party.

REQUEST FOR PRODUCTION NO. 18:

      All DOCUMENTS that RELATE TO any and all HEDGING

TRANSACTION(S), including, without limitation, DOCUMENTS sufficient to show the

relationship(s) between any and all HEDGING TRANSACTIONS and the

TERMINATED TRANSACTIONS.

REQUEST FOR PRODUCTION NO. 19:

      All DOCUMENTS generated, sent, or received by DEBTORS' Credit

Valuation Adjustment desk that RELATE TO (i) the TERMINATED TRANSACTIONS,

and (ii) any and all HEDGING TRANSACTIONS.

REQUEST FOR PRODUCTION NO. 20:

      All DOCUMENTS that RELATE TO any capital allocated by DEBTORS

to satisfy any requirements to maintain capital in relation to the TERMINATED

TRANSACTIONS before they were terminated, including, but not limited to,

DOCUMENTS sufficient to show the rate charged by DEBTORS on capital lent

internally within DEBTORS.

REQUEST FOR PRODUCTION NO. 21:

       All DOCUMENTS that RELATE TO the preservation or destruction of documents relating to the ISDA MASTER AGREEMENTS or the TERMINATED TRANSACTIONS.