**EXHIBIT D**

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1 212 558 4000
FACSIMILE: 1 212 558 3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 23, 2014

Via E-mail

Lauren Hoelzer Helenek,
   Weil, Gotshal & Manges LLP,
      767 Fifth Avenue,
         New York, New York 10153-0119.

      Re:   *In re Lehman Brothers Holdings Inc., et al.* 08-13555 (Bankr. S.D.N.Y.); *Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing, Inc. v. Giants Stadium LLC* 13-01554 (Bankr. S.D.N.Y.)

Dear Lauren:

      I write on behalf of Giants Stadium LLC ("Giants Stadium") regarding Debtors' compliance with Giants Stadium's Request for Production of Documents ("Document Requests") in the above-captioned matter.

Debtors' Failure to Produce Documents In Response to Giants' Stadium's Subpoena

      For years, Debtors improperly engaged in a one-sided Rule 2004 "investigation" despite the fact that they knew that they would ultimately be objecting to Giants Stadium's claims. When Giants Stadium asked for reciprocal discovery, Debtors refused and forced Giants Stadium to seek an order from Judge Peck, who granted Giants Stadium's motion on the grounds that the Rule 2004 investigation was obviously going to lead to an objection. *See* Transcript of Omnibus Hearing, September 14, 2012 at 58:05-58:07 (Judge Peck: "[T]here is no foreseeable outcome here in which Lehman is not objecting, or bringing affirmative claims relief."). Debtors had long expressed their unqualified opposition to providing documents to Giants Stadium, and although some documents have now been produced by Debtors in response to the Document Requests, insufficiencies in those productions make clear that Debtors still view discovery as a one-way street. Particularly given that Debtors have now filed both an Adversary Complaint and an Objection to Giants Stadium's claims, Debtors have no excuse to continue to withhold responsive documents from Giants Stadium.

      *First*, although the Adversary Proceeding Complaint of Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc., dated October 23, 2013 (the "Complaint") challenges Giants Stadium's method for calculating the "Loss" that Giants Stadium suffered on their auction rate swaps due to Debtors' default, Debtors have

Lauren Hoelzer Helenek, Esq.                                                                 -2-

failed continually to produce all documents responsive to Requests Nos. 10 and 17, which seek, *inter alia*, documents relating to Debtors' valuation of the swaps at issue here and Debtors' method of calculation of "Loss" in relation to the swaps. Giants Stadium has made plain on multiple occasions that it does not accept Debtors' assertion in its Responses and Objections to Giants Stadium's Document Requests that it will only produce responsive documents created on or before October 15, 2008. Nonetheless, as noted in our December 12, 2013 letter to you, Debtors have produced only a handful of documents dated after October 15, 2008, despite the fact that documents responsive to many Requests, including Requests Nos. 10 and 17, likely were created after that date. Debtors have no legal basis for challenging Giants Stadium's method of valuing the swaps but at the same time withholding documents shedding light on their own valuation process. Indeed, Lehman employee Robert Taylor stated in an internal May 2008 e-mail that the swaps were saving Giants Stadium "mark to market probably close to 180 million." (LBSF00000198).

*Second*, Debtors also have not produced a single document in response to Request No. 17(ii), which, as we explained during the parties' meet and confer of April 30, 2013, and again in our letter to you of December 12, 2013, seeks information on Lehman's approach to valuing "Loss" on other actual bond rate swaps. We asked at our April 30, 2013 meet and confer whether Debtors could, as an initial matter, advise how many actual bond rate swaps existed, how many were terminated pre-bankruptcy, and how many were terminated post-bankruptcy, so that the parties could assess Debtors' assumption that responding to Request No. 17(ii) would involve excessive burden. As requested in our e-mail to you of June 26, 2013, please let us have the answers to these questions.

It may be that Debtors are withholding certain documents in response to Request Nos. 10 and 17 on grounds of privilege or work product. Transcript of Omnibus Hearing, October 23, 2013 at 13:25-14:01 (Mr. Slack: "There are certain valuations that [Debtors] have that are privileged that were done in connection with the bankruptcy.") To the extent that Debtors are doing so, Giants Stadium requests that Debtors (1) articulate all grounds on which Debtors believe that such internal valuation analyses are privileged and/or work-product protected; and (2) explain why the grounds on which Debtors intends to withhold its valuation analyses are not, in Debtors' view, applicable to Baupost's valuation analyses. As Judge Peck noted at the October 23, 2013 hearing, "there may be some other issues here ... including what's sauce for the goose being sauce for the gander in terms of issues of discovery and relative privilege." Transcript of Omnibus Hearing, October 23, 2013 at 12:09-12:12. Of course, Debtors are obligated to produce all documents responsive to Request Nos. 10 and 17 that are not privileged or otherwise protected. *See* Order, Dkt. No. 41285.

*Third*, as noted in our letter to you of December 30, 2013, during our December 19, 2013 telephonic meet and confer, the parties agreed to negotiate a non-

Lauren Hoelzer Helenek, Esq.                                                                              -3-

waiver agreement in relation to the Lehman Brothers, Inc. ("LBI") document production ("LBI Production"). We look forward to receiving your initial proposed draft of this agreement. During that call, you also noted your understanding of a long-standing agreement between LBI and Debtors under which LBI would not produce documents without first allowing Debtors an opportunity to review those documents for privilege. Please provide us with a copy of that agreement.

*Fourth*, as requested in our e-mail to you of June 26, 2013, please advise if you have conducted searches for responsive information in sources other than custodian files, such as in centralized files or informational databases. Specifically, we request that Debtors produce full records of Lehman's profit and loss ("PNL") and internal valuation history ("mark history") of the bonds, even if that information is stored in centralized files or accessible only through search of a database. Debtors have thus far failed to provide this information, despite the fact that it is plainly responsive to Request No. 10.

*Fifth*, many documents in Debtors' prior productions are heavily redacted without any stated basis. Please confirm that all redactions in your prior productions that do not bear the text "Attorney-Client Privilege" were not redacted to protect privilege, but rather to protect confidential information that is, in Debtors' view, not relevant to the claims at issue. As noted in our June 10, 2013 e-mail to you, more than a thousand documents in Debtors' production contain redactions, and only a few dozen of those redactions are marked "Attorney-Client Privilege." Redaction for responsiveness or confidentiality is generally inappropriate, particularly where, as here, redactions are applied in a sweeping manner obscuring contextual information and comparable data points which render many of these documents "illegible, unintelligible, incoherent and therefore useless." *United States v. Davis*, No. 85 CIV. 6090 (KC), 1988 WL 96843, at *3 (S.D.N.Y. 1988) (upholding a magistrate judge's order requiring documents heavily redacted for responsiveness to be produced again in un-redacted form); *see also In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, No. 08 Civ. 0333(RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) ("[S]uch redactions are generally unwise. They breed suspicions, and they may deprive the reader of context."). We request that you reproduce all responsive, non-privileged documents without redactions. We remain amenable to discussing this issue further.

*Sixth*, in our December 12, 2013 letter to you, Giants Stadium requested that Debtors search for and produce any responsive, nonprivileged documents from the files of the following custodians, whom Giants Stadium named in its August 13, 2013 letter as potential deponents. Please promptly produce these documents or confirm that such files were searched and yielded no unique responsive, non-privileged documents: Kyle Ingram; Jeffrey Kirshenbaum; Julia Nand; Sean Teague; and Jacopo Visentini.

Lauren Hoelzer Helenek, Esq. -4-

*Finally*, please confirm that Debtors have produced all nonprivileged, responsive documents from the files of the custodians that Debtors have already agreed to search. Specifically, Giants Stadium is aware of an e-mail dated September 18, 2008 from Robert Taylor to Christine Procops which has not yet been produced by Debtors (compare GSAMP_LB_23298 with LBSF00000187). Giants Stadium is also aware that hard copies of the swap termination notices were hand delivered to Lehman on September 18, 2008, and yet Debtors have not produced copies of those notices or any records of their receipt on that date by Lehman.

We are available to meet and confer regarding these issues.

Sincerely,

*Matthew A. Schwartz*

Matthew A. Schwartz