Motion and Cross-Motion
Hearing Date: December 10, 2014 at 10:00 a.m. (Eastern)
Objection Deadline On Cross-Motion: November 14, 2014
by 4:00 p.m. (Eastern)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                    :   Chapter 11
                                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :   Case No. 08-13555 (SCC)
                                                          :
                                    Debtors.         :   (Jointly Administered)
------------------------------------------------------------x

### DECLARATION OF FRANKLIN H. TOP III REGARDING THE RMBS TRUSTEES' (1) REPLY IN SUPPORT OF THEIR MOTION TO ESTIMATE THE RMBS CLAIMS USING STATISTICAL SAMPLING, AND (2) OPPOSITION TO LEHMAN'S CROSS-MOTION FOR A FULL LOAN-BY-LOAN REVIEW

Pursuant to 28 U.S.C. § 1746, I, Franklin H. Top III, hereby declare as follows:

1. I am a managing partner in the law firm Chapman and Cutler LLP, and counsel to U.S. Bank National Association, as Trustee, in the above referenced action, with primary day-to-day responsibility therefor since 2008. I submit this Declaration regarding the *RMBS Trustees' (1) Reply in Support of Their Motion to Estimate the RMBS Claims Using Statistical Sampling, and (2) Opposition to Lehman's Cross-Motion for a Full Loan-By-Loan Review* (the "Reply").[1] I have personal knowledge of the facts set forth herein, unless otherwise indicated.

2. The RMBS Trustees serve as trustee, separate trustee or indenture trustee for certain trusts that issued residential mortgage-backed securities sponsored by Lehman Brothers Holding, Inc. ("LBHI") or one of its affiliates (the "RMBS Trusts").

---

[1] Terms not defined herein shall have the meaning ascribed in the Reply.

3701437.01.02.docx

3. Commencing on September 15, 2008, LBHI and certain of the Debtors filed with this Court voluntary cases under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

4. On July 2, 2009, the Court entered an order establishing a bar date of September 22, 2009 for filing proofs of claims in the Chapter 11 Cases. ECF 4251.

5. On information and belief, each of the RMBS Trustees filed their RMBS Claims for unliquidated claims with respect to breaches of representations and warranties on or prior to September 22, 2009.

6. In September 2010, the Debtors contacted the RMBS Trustees with respect to the RMBS Claims and expressed their view that breaches should be presented on a loan-by-loan basis.

7. In the Spring of 2011, LBHI filed objections to the RMBS Claims on the grounds of insufficient documentation. LBHI proceeded with its objections against only certain of the RMBS Trustees.

8. On June 30, 2011, the Court heard the objections, reserved judgment, and indicated that the parties should continue efforts to come up with a commercially practicable approach to resolving the RMBS Claims. *See June 30, 2011 Hearing Tr.* at 70:19-20, 71:8-11. ECF 18251. Judge Peck stated that "the presentations by all parties highlight the complexity of the process of proving the existence and the amount of any claim for these representation and warranty breaches in residential loans." *See id.* at 70:21-24. The Court also stated that a loan-by-loan review "doesn't seem like a reasonable exercise" (*id.* at 34:24-25) and that "there seems to be little dispute that the exercise of going through a loan-by-loan review is both burdensome

and commercially impracticable." *Id.* at 66:4-7. Thereafter the parties met and exchanged ideas as to how to resolve the claims asserted by the RMBS Trustees.

9. On December 6, 2011, the Court entered an order confirming the Modified Third Amended Joint Plan. ECF 23023.

10. On January 12, 2012, the Debtors filed their *Motion Pursuant To Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors and Sections 105(A), 502(C) And 1142(B) of the Bankruptcy Code to Estimate the Amounts of Claims Filed by Indenture Trustees on Behalf of Issuers of Residential Mortgage-Backed Securities for Purposes of Establishing Reserves* (the "Reserve Motion"), in which the Debtors stated that the parties were "continuing to negotiate the terms of a settlement protocol that would facilitate the final resolution and allowance of the Claims." Reserve Motion, at ¶ 11. ECF 24254. Several of the RMBS Trustees objected to the Reserve Motion.

11. In January 2012, the RMBS Trustees engaged Cowen and Company, LLC ("Cowen"), a firm with significant experience in the RMBS markets, to assist in responding to the Reserve Motion and to assist the RMBS Trustees in their efforts to resolve the RMBS Claims.

12. On January 26, 2012, the Court reserved judgment on the Reserve Motion and urged the parties to reach agreement on the amount of the reserve for the RMBS Claims. *See January 26, 2012 Hearing Tr.* at 84:20-23. ECF 24756.

13. On February 22, 2012, the parties informed the Court that they had agreed to a $5 billion reserve and to mediate the allowed amounts of the RMBS Claims in an attempt to resolve the matter. *See February 22, 2012 Hearing Tr.* at 27:23-25, 28:1. ECF 25803. The

3

Court entered a conforming order. ECF 25643. As the Order made clear, the amount for a reserve was without prejudice to either the rights of the RMBS Trustees to assert that a greater claim amount was due and owing on account of breaches of representations and warranties, or the rights of the Debtors to assert that any such claim should be less.

14.     In June 2012, the RMBS Trustees proposed having one of the servicers, Aurora, draw a statistical sample, but was told by LBHI (Zachary Trumpp) that it was not prepared to discuss the matter. *See* Email chain between Jim Burke of Cowen to Zachary Trumpp on behalf of Lehman dated June 8, 2012, which is attached as Exhibit A hereto.

15.     The RMBS Trustees' proposal to have the RMBS Claims resolved by statistical sampling was also the subject of discussion at the parties' RMBS Claims meeting in June 2012. *See* Agenda, RMBS Claims Meeting dated June 18, 2012, attached as Exhibit B.

16.     On July 31, 2012, the parties participated in mediation before the Honorable Gary McGowan but were unable to reach agreement. Thereafter, the parties continued to discuss a methodology to resolve the RMBS Claims, and attempted to develop a framework for the resolution of those claims for which the Debtors admitted they had potential liability (*i.e*, with respect to Covered Loans). As part of this discussion, the Debtors requested that the RMBS Trustees make a proposal to the Debtors of a framework for resolving the RMBS Claims, aside from statistical sampling. On October 9, 2012, the RMBS Trustees delivered a proposal for a framework to the Debtors and were advised by the Debtors that the framework would be discussed with the Board of the Plan Administrator (the "Board"). The Debtors never responded.

17.     Faced with Lehman's refusal to respond, and realizing that they might be required to try this contested matter, the RMBS Trustees undertook the task of proving these claims using

statistical sampling. The RMBS Trustees directed Cowen to create a random sample of 5,000 of the Covered Loans (the "Sample") that would be "re-underwritten" to produce a statistically significant estimate of the overall breach rates for all Covered Loans in the Covered Trusts that (a) either suffered an actual loss, or (b) were projected to suffer a loss.

18.     In September 2012, the RMBS Trustees retained Digital Risk, LLC ("Digital Risk") to re-underwrite the Sample constructed by Cowen. The loan files for the selected loans were not in the possession of the RMBS Trustees, but rather (as is typical in an RMBS transaction) in the possession or under the control of the servicer and/or custodian for the relevant loans. Obtaining the mortgage origination and servicing files proved to be time intensive as various loan servicers or master servicers were out of business, in bankruptcy, or otherwise not very responsive. Digital Risk informed the RMBS Trustees that its review of the Sample was suspended from time-to-time while awaiting the receipt of additional loan files from servicers. Some loan files could not be obtained. The RMBS Trustees and Digital Risk ultimately obtained, and Digital Risk reviewed, the mortgage origination and servicing files for 4,579 of the 5,000 Covered Loans in the Sample to determine if a loan materially breached a representation and warranty made by LBHI. The loan retrieval and review process took 18 months, from September 2012 through March 2014.

19.     During the period in which Digital Risk was obtaining and reviewing the Sample, the RMBS Trustees continually asked the Debtors for feedback on the framework for resolving the RMBS Claims that they proposed on October 9, 2012. On one occasion, one or more of the RMBS Trustees were told that the Board deferred it to another meeting. On another, the RMBS Trustees were advised that the Plan Administrator retained new General Counsel and that the new General Counsel would have to "get up to speed" on the issues. It was not until April 2014

that the RMBS Trustees received a response from the Debtors – that the Debtors were busy with other matters and because the RMBS Trustees demands were so "high" the Debtors were unwilling to even meet.

20.  In May 2013, the RMBS Trustees retained Duff and Phelps, LLC ("Duff and Phelps") to (i) review the sampling and selection work performed by Cowen, (ii) review and analyze the procedures followed and findings made by Digital Risk, and (iii) opine on the amount of the RMBS Trusts' claims, based on its review and analysis.

21.  In August 2014, Duff and Phelps completed its analysis of the data produced by Digital Risk and opined that the amount of the RMBS Claims for Covered Loans was $12.143 billion. *See* Aronoff Decl., ¶ 11.

22.  After receiving Duff and Phelps' analysis, on August 22, 2014, the RMBS Trustees filed their Motion to (i) Increase the Reserve to $12.143 Billion and (ii) Estimate and Allow their Claims for Covered Loans at $12.143 Billion Pursuant to Section 502(c) of the Bankruptcy Code (the "Trustees' Motion").

*(The Remainder of This Page Intentionally Left Blank)*

23.     Thereafter, LBHI requested and the RMBS Trustees agreed to produce to LBHI (a) a hard drive containing the 4,579 loan files that Digital Risk reviewed and their back-up documents, and (b) seven categories of documents underlying the expert reports of Dr. Charles A. Parekh and James H. Aronoff, both of Duff & Phelps. The RMBS Trustees told LBHI, through counsel, that they remained receptive to discussing the RMBS Claims and the relief requested in their Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 14, 2014

_____
Franklin H. Top III (admitted pro hac vice)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000
*Counsel for U.S. Bank National Association,
solely in its capacity as Indenture Trustee for
Certain Mortgage-Backed Securities Trusts*