Hearing Date and Time: December 10, 2014 at 10:00 a.m. (Prevailing Eastern Time)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
: 
In re: : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC., et al.,** : 08-13555 (JMP)
:
Reorganized Debtors. : Confirmed
:
---------------------------------------------------------------- x

**STATEMENT OF THE LITIGATION SUBCOMMITTEE OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN**
**SUPPORT OF PLAN ADMINISTRATOR'S (I) OBJECTION TO**
**MOTION OF CERTAIN RMBS TRUSTEES TO INCREASE**
**RESERVES AND ESTIMATE CLAIMS FOR ALLOWANCE AND (II)**
**CROSS-MOTION TO ESTABLISH PROTOCOL TO RESOLVE CLAIMS**

The litigation and derivatives subcommittee (the "Litigation Subcommittee")[1] of

the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11

cases of the above-captioned reorganized debtors' predecessors in interest (the "Debtors")

hereby files this statement in support of the Plan Administrator's (i) objection to the motion of

the RMBS Trustees to (a) increase the applicable reserve to $12.143 billion and (b) estimate and

---

[1] Pursuant to Section 15.1 of the Debtors' chapter 11 plan (the "Plan"), the Litigation Subcommittee was authorized to continue to represent the interests of the Debtors' unsecured creditors for "the limited purposes of (i) resolving pending litigation and (ii) subject to approval of the post-Effective Date board of directors of LBHI, other litigation and derivatives matters as to which, currently, the subcommittees are involved, and shall be recommended by the applicable subcommittee and the Plan Administrator." (Plan § 15.1.)

allow their claims at the same amount (the "Objection"); and (ii) cross-motion to establish a protocol to resolve the RMBS Trustees' claims (the "Cross-Motion").[2]

## STATEMENT

1. The Litigation Subcommittee fully supports both the Objection and the relief requested in the Cross-Motion.

2. The Debtors first sought to disallow the $37 billion in repurchase claims asserted by the RMBS Trustees (the "Claims") in June 2011 on the grounds that the Claims were grossly inflated and lacked any support. The Court encouraged the Debtors and the RMBS Trustees to explore adopting a protocol that would facilitate the consensual resolution of the Claims. However, while the Debtors and the RMBS Trustees engaged in discussions regarding such protocol, in which the Committee was actively involved, they failed to reach consensus regarding the specifics of such protocol.

3. The Court confirmed the Plan on December 6, 2011, and thereafter, in anticipation of the Plan going effective, the Debtors, with the support of the Committee, filed a motion to estimate the Claims (the "Reserve Motion") for purposes of establishing an appropriate reserve (the "Reserve"). The Debtors did so in order to expedite the distributions to unsecured creditors under the confirmed Plan and to make the amount of the initial distribution meaningful.

4. In connection with establishing the Reserve, the Committee's financial advisors reviewed the calculations used by the Debtors to arrive at the $1.1 billion to $2.4 billion estimate of the potentially allowable amount of the Claims, and determined that the $2.4 billion amount the Debtors proposed for the Reserve was more than adequate and provided a substantial

---

[2]   Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Objection and/or the Cross-Motion.

2

margin for error.  The Court initially declined to approve the Reserve in that amount and, instead, encouraged the Debtors and the RMBS Trustee to discuss consensual resolution of the Reserve Motion.  As a result of these discussions, the Debtors and the RMBS Trustees agreed, and the Court ordered, that the Reserve should be established in the amount of $5 billion.

5. In the ensuing three years, the RMBS Trustees made no attempt to engage in the reconciliation process with respect to the Claims on a loan-by-loan basis, as required by the Governing Documents, and as other similarly situated unsecured creditors did.  Instead, in an entirely unjustifiable attempt at an end-run-around the proper processes, the RMBS Trustees now seek not only a do-over with respect to the Reserve, but also go further and seek to have the Claims estimated for the purpose of *allowance* at $12.143 billion—an amount that is more than double the amount to which they had previously agreed.

6. Allowing the RMBS Trustees the relief they are seeking would be patently unfair to the Debtors' other unsecured creditors, all of which participated in good faith in the claims reconciliation process—including the other GSEs who went through a full loan-level reconciliation, which resulted in a fair settlement of their claims.  The RMBS Trustees utterly failed to demonstrate why it may be appropriate for the Court to summarily relieve them of the burden of proof that all other unsecured creditors had to bear.

7. To add insult to injury, not only do the RMBS Trustees seek to shirk the responsibilities imposed on them by their express contractual obligations and the Bankruptcy Code and with which all other unsecured creditors complied in good faith, but, if granted, the relief they are seeking will further harm the Debtors' creditors by tying up the Reorganized Debtors' distributable cash and imperiling the orderly distribution of the proceeds of the Debtors' estates.  The Debtors' creditors will be further harmed by the fact that the Plan

3

Administrator's ability to mitigate the estate's losses by pursuing claims against the downstream originators of the loans underlying the Claims would be severely compromised.

8. Thus, the RMBS Trustees, who failed for six years to comply with their contractual obligations and chose to ignore their responsibility to be "put to the proof" with respect to the Claims on a loan-to-loan basis, are seeking, in essence, to be rewarded for such recalcitrant conduct at the expense of those creditors that complied with these same responsibilities. Such result cannot be countenanced by the Court.

9. As to the Cross-Motion, the time has definitely come to finally resolve the Claims. The RMBS Trustees have steadfastly resisted involvement in any good-faith claims reconciliation process for more than six years, while other RMBS sponsors (including JPMorgan and Citibank) have agreed to settlements based upon more reasonable assumptions and reconciliation methodologies. Most recently, Lehman itself agreed to the establishment of an alternative dispute resolution process to facilitate the resolution of Lehman's claims against thousands of counter-parties that sold deficient mortgage loans to Lehman. The loan-by-loan reconciliation protocol proposed by the Plan Administrator is in the same mold, is fair and reasonable, and will facilitate an efficient claims resolution process to which the Reorganized Debtors are contractually entitled and which will benefit the Debtors' estates and their creditors.

## CONCLUSION

For all the reasons set forth herein and in the Objection and/or the Cross-Motion, the Litigation Subcommittee respectfully requests that the Court (i) sustain the Objection and

deny the relief sought by the RMBS Trustees; (ii) grant the relief requested in the Cross-Motion; and (iii) grant the Litigation Subcommittee such other relief as is just.

Dated:   New York, New York
         November 14, 2014

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Litigation Subcommittee