# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Richard W. Slack**
+1 (212) 310-8017
richard.slack@weil.com

BY EMAIL AND ECF

November 17, 2014

Honorable Shelley C. Chapman
United States Bankruptcy Judge
Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:     *In re Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing, Inc. v.
Giants Stadium LLC*, Adversary Proc. No. 13-01554 (SCC)

Dear Judge Chapman:

We write on behalf of Lehman Brother Holdings Inc. and Lehman Brothers Special Financing Inc.
(collectively, "Lehman") to request permission to file a motion to compel Giants Stadium LLC ("Giants
Stadium") to produce documents responsive to Lehman's Subpoenas to Giants Stadium dated May 19,
2010 (Ex. A) and April 9, 2012 (Ex. B) (the "Subpoenas"). Lehman seeks the Court's intervention
because the parties have met and conferred, exchanged numerous letters (Exs. C-F), and are at an
impasse over Giants Stadium's failure to produce (i) documents concerning its amended proofs of claim
in the Lehman bankruptcy and (ii) Giants Stadium's financial statements, each as required by the
Subpoenas.

**Background.** This action arises out of two interest rate swaps (the "Swaps") entered into in 2007.
Giants Stadium terminated the Swaps on September 18, 2008 and subsequently filed proofs of claim
Nos. 64070 and 64071 (the "Proofs of Claim") in the amount of $301,804,617.14 each. On or around
April 27, 2009, the Proofs of Claim were transferred to an SPV created by Baupost Group LLC
("Baupost"). In late 2011—more than two years after the bar date for proofs of claim—Giants Stadium
filed (but has now withdrawn) amended proofs of claim (Claim Nos. 67782 and 68103, the "Amended
Claims") that nearly doubled the amount of its original Claims, to almost $600 million.

**Documents Concerning the Amended Claims.** Lehman's April 9, 2012 Subpoena seeks all documents
concerning the Amended Claims. *See* Ex B, Request No. 2. Notwithstanding Giant Stadium's
withdrawal of the Amended Claims, these documents are relevant insofar as they will bear on the
reasonableness of the valuation underlying the operative Proofs of Claim. They are also relevant to
Lehman's claim for equitable subordination based on Giants Stadium's bad-faith conduct in filing the
Amended Claims on the eve of mediation and for the apparent purpose of forcing Lehman to increase
reserves. But despite repeated requests from Lehman in a lengthy meet-and-confer process, Giants
Stadium has failed to produce even *one* document related to the Amended Claims.[1] Instead, Giants

---

[1] The parties have conferred at length on this issue. On May 6, 2014, Lehman sent a letter to Giants Stadium requesting that
Giants Stadium produce documents related to the amendment and offering to meet-and-confer. *See* Ex. B. On May 23, 2014,

Honorable Shelley C. Chapman
November 17, 2014
Page 2

**Weil, Gotshal & Manges LLP**

Stadium has asserted that *all* documents on this subject are privileged or protected as work product. Exs. D & F. That position is untenable for at least three reasons.

*First*, Giants Stadium's privilege claim flies in the face of Judge Peck's ruling on this very issue in connection with a subpoena to Baupost. In denying Baupost's motion to quash, Judge Peck "reject[ed] the notion that every single scrap of paper associated with the subpoena necessarily is privileged" and directed Baupost's counsel Sullivan & Cromwell LLP—also counsel to Giants Stadium—that "to the extent that your client has knowledge concerning that valuation shift I think you should be turning over whatever you have that is non-privileged." Ex. G, Excerpt of Oct. 23, 2013 Hearing Tr., at 11:24-12:8.[2] Giants Stadium claims to have done a document-by-document privilege review yet arrived at the result that the Court refused to accept: a blanket privilege claim over all documents concerning the amendment. *Second*, as a matter of law the party filing a proof of claim must produce the documents establishing the basis and assumptions for that claim; it is not privileged or work product. *See In re Rodriguez*, 2013 WL 2450925, at *6 (Bankr. S.D. Tex. June 5, 2013) (ordering attorney who signed proof of claim to answer questions about the factual assertions contained therein). *Third*, Giants Stadium, as calculation agent under the Swap agreements, had a contractual obligation to calculate termination payments, which means that Giants Stadium's documents concerning such payments were prepared for ordinary business purposes and thus cannot be privileged. Indeed, Giants Stadium's position that all documents created in connection with its amended claims are privileged is belied by its production of hundreds of documents, including calculations, assumptions, emails and spreadsheets, concerning its original proofs of claim. To date, Lehman has not been provided with <u>any</u> similar information concerning the amended claims.

**Giants Stadium's Financial Statements.** For over four years, Giants Stadium has engaged in dilatory tactics to avoid producing its financial statements, which are responsive to Lehman's May 19, 2010 subpoena. *See* Ex. A, Request No. 17. Giants Stadium claims to be concerned about the fact that Lehman's counsel, Weil, Gotshal & Manges LLP's ("<u>Weil</u>") also represents the NFL Players' Association (the "<u>NFLPA</u>") in unrelated matters. Although unnecessary, Weil agreed *years* ago that attorneys given access to these documents would not work on NFLPA matters. *See* Ex. E. Giants Stadium still refuses to produce responsive financials. Given that Giants Stadium has no substantive objection to producing its financial statements, Lehman requests that the Court compel production.

Respectfully submitted,

---

Giants Stadium asserted privilege over all documents related to the Amended Claims. *See* Ex. D. On September 9, 2014, Lehman questioned Giants Stadium's blanket assertion of privilege and again asked that Giants Stadium produce documents related to the amendment. *See* Ex. E. On October 2, 2014, Giants Stadium confirmed that it is asserting privilege or work product over documents related to the amendment and made no offer to further meet-and-confer on the subject. *See* Ex. F.

[2] Lehman also intends to seek relief regarding Baupost's failure to produce documents related to the Amended Claims despite being expressly ordered by the Court to do so.

Honorable Shelley C. Chapman
November 17, 2014
Page 3

**Weil, Gotshal & Manges LLP**

/s/ Richard W. Slack

Richard W. Slack

# EXHIBIT A

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

Southern _____ DISTRICT OF _____ New York

In re Lehman Brothers Holdings Inc., et al.,

**SUBPOENA FOR RULE 2004 EXAMINATION**

Debtor

Case No. <u>08-13555(JMP)</u> _____

To:
Giants Stadium LLC
Meadowlands Sports Complex
50 State Route 120
East Rutherford, New Jersey 07073

Chapter <u>11</u> _____

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below, by an individual or individual(s) with knowledge of the matters and documents set forth in Exhibit A To The Order Attached Hereto.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

## Documents Requested By Exhibit A Attached Hereto

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 | June 25, 2010 at 10:00 A.M. (EST) |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| | 5/19/10 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Richard W. Slack; Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

FORM 254  Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | Date | Place |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## SCHEDULE OF DOCUMENTS TO BE PRODUCED

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

2.    "Calculation Statements" shall mean the letters, and any attachments or schedules thereto, from Giants Stadium to LBSF, dated October 2, 2008.

3.    "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

4.    "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

5.    "Covered Indenture" shall have the meaning ascribed to it in Section 12 of the Master Agreement, as amended by Part 4(b) of the schedule to the Master Agreement.

6.    "Debtor" or "Debtors" shall mean LBHI and/or LBSF

7.    "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts, photographs, sound recordings including, but not limited to, phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained

and/or translated, if necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

8.    "Early Termination Date" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

9.    "Financing Transaction" shall mean shall mean any transaction(s) entered into by Giants Stadium to replace, refinance, or restructure the Bonds, and/or finance or refinance an open-air NFL stadium, whether or not the terms of such transaction(s) are identical to the transaction(s) relating to the Bonds.

10.    "FGIC" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

11.    "FSA" shall mean Financial Security Assurance, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

12.    "Giants Stadium" "You," and "Your" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents (such as Wilmington Trust), advisors (such as Goldman Sachs), subsidiaries, affiliates, predecessors, successors, or representatives.

13.    "Goldman Sachs" shall mean Goldman, Sachs & Co. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

14.    "Insurance and Indemnity Agreement" shall have the meaning ascribed to it in Part 3(l) of the schedule to the Master Agreement.

15.    "LBHI" shall mean Lehman Brothers Holdings, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

16.    "LBSF" shall mean Lehman Brothers Special Financing, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

17.    "LBI" shall mean Lehman Brothers, Inc.

18.    "Lehman Bankruptcy" shall mean the voluntary cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP).

19.    "Market Quotation" shall have the meaning ascribed to it in Section 12 of the Master Agreement, as amended in the relevant Confirmation.

20.    "Master Agreement" shall mean any of the following: (i) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FGIC; and/or (ii) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FSA.

21.    "NFL" shall mean the National Football League and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, predecessors, successors, or representatives.

22.    "Offering Circular" means the offering circular dated August 13, 2007 and issued in connection with the Bonds.

23.    "Proofs of Claim" means any proof of claim filed by Giants Stadium in the Lehman Bankruptcy.

24.    "Reference Market-makers" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

25.    "Replacement Transaction" shall mean any transaction entered into by Giants Stadium to replace, or establish a hedge in lieu of, the Terminated Transactions, whether or not the terms of such Replacement Transaction are identical to the terms of the Terminated Transactions.

26.    "Terminated Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

27.    "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

28.    "Unpaid Amounts" shall have the meaning ascribed to it in Section 12 of the Master Agreement.

29.    "Wilmington Trust" shall mean Wilmington Trust Corporation and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

30.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

31.    The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

32.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

33.    If any Document requested herein was formerly in your possession, custody or control (or that of your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

34.    If any Document requested herein is withheld on the basis of any claim of privilege, you are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

35.     If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

36.     All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request. The method for production of each category is to be identified at the time of production. Documents are to be produced in full and unexpurgated form.

37.     Each page of each document should be numbered consecutively. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

38.     Documents attached to each other (physically or via electronic mail) should not be separated.

39.     In producing the requested documents, even though the requests are directed to "you," furnish all documents which are available to you, including documents in the possession of any of your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such documents in your possession.

40.     The requests which follow are to be regarded as continuing, and Giants Stadium is requested to provide by the way of supplementary compliance herewith, such additional documents as Giants Stadium may hereafter obtain, which will augment the documents now produced in response to the requests below. Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after receipt thereof.

41.    At a future date, the Debtor may request the production of additional documents based on information revealed during this document request.

42.    At a future date, the Debtor may request to depose additional individuals based on information revealed during this document request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including January 1, 2006 through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents concerning any valuation of the Terminated Transactions, both prior to and following their purported termination on September 18, 2008, including, but not limited to, the valuation(s) contained in the Calculation Statements.

REQUEST NO. 2

All documents containing or reflecting a description, in whole or in part, of the methodology used by Giants Stadium to determine the value of the Terminated Transactions, including, but not limited to, the valuation(s) contained in the Calculation Statements.

REQUEST NO. 3

All documents reflecting or constituting communications by or on behalf of Giants Stadium with Reference Market-makers, or any other persons, with respect to the value of the Terminated Transactions, and all responses and other communications from Reference Market-makers and any other persons.

REQUEST NO. 4

All documents concerning any Unpaid Amounts due with respect to the

Terminated Transactions.

REQUEST NO. 5

All documents concerning any Replacement Transaction, including, but not

limited to, documents reflecting (i) any consideration paid or received in connection with a

Replacement Transaction, (ii) the names of any entity which effectuated a replacement, (iii)

when any such transaction was effected, and (iv) confirmations, master agreements, and all other

relevant documentation.

REQUEST NO. 6

All documents concerning any Financing Transaction, including, but not limited

to, documents reflecting (i) any consideration paid or received in connection with a Financing

Transaction, (ii) the names of any entity which arranged and/or underwrote a Financing

Transaction, (iii) when any such transaction was effected, and (iv) offering documents, closing

documents, indentures, and all other relevant documentation.

REQUEST NO. 7

All documents concerning any communications between and among, or on behalf

of, Giants Stadium and any third party, including but not limited to Goldman Sachs, Wilmington

Trust, and any of Giants Stadium's representatives, advisors, agents, accountants, and counsel

related to (i) any quotations from Reference Market-makers, including but not limited to the

Reference Market-makers identified in the Calculation Statements, or other persons; (ii) any

Replacement Transaction; (iii) any Financing Transaction (iv) the Terminated Transactions; (v)

the Calculation Statements; (vi) the terms of the Confirmations; and/or (vii) the Proofs of Claim

and any sale, assignment, or participation thereof.

REQUEST NO. 8

     Documents sufficient to identify all persons who were involved in the valuation of

the Terminated Transactions or in the replacement of the Terminated Transactions, and

descriptions of their roles in connection therewith.

REQUEST NO. 9

     Any and all documents, including but not limited to delivery confirmations,

demonstrating that the Terminated Transactions were effectively terminated under the terms of

the Master Agreement.

REQUEST NO. 10

     Documents sufficient to identify all master agreements, confirmations and other

documents constituting the agreement between the parties in connection with the Terminated

Transactions.

REQUEST NO. 11

     All documents concerning the terms of the Confirmations, including the meaning

and/or interpretation thereof.

REQUEST NO. 12

     All documents concerning the negotiation, execution, and Giants Stadium's

understanding of the Master Agreement and the Confirmations, including all drafts and term

sheets.

REQUEST NO. 13

For the period from August 1, 2008 through the present, all documents concerning any communications between Giants Stadium and Debtors relating to (i) the Terminated Transactions, (ii) the Bonds, (iii) the Master Agreement, and/or (iv) the broker-dealer function in respect of the Bonds.

REQUEST NO. 14

For the period from August 1, 2008 through the present, all documents concerning any communications between Giants Stadium and LBI relating to (i) the Terminated Transactions, (ii) the Bonds, (iii) the Master Agreement, and/or (iv) the broker-dealer function in respect of the Bonds.

REQUEST NO. 15

All documents concerning any communications between and among, or on behalf of, Giants Stadium and any third party, including but not limited to Goldman Sachs, Wilmington Trust, FSA, FGIC, any rating agency, and any of Giants Stadium's representatives, advisors, agents, accountants, and counsel, related to related to the broker-dealer function performed by LBI in connection with the Bonds, including but not limited to any termination or replacement of LBI in its capacity as broker-dealer.

REQUEST NO. 16

All documents concerning any auctions held in connection with the Bonds, including but not limited to documents concerning successes and failures, auction rate settings, all-held rates, tender, interest rate conversion, redemption, the tax consequences of redemption, and/or alternative financing, if any.

REQUEST NO. 17

For the period from and including January 1, 2007 through the present, (i) all of Giants Stadium's financial statements, both audited and non-audited, (the "Financial Statements") (ii) any of Giants Stadium's financial disclosures provided to parties including but not limited to its current and prospective investors, Goldman Sachs, Wilmington Trust, FSA, FGIC, the NFL, and any rating agency, and (iii) documents including without limitation spreadsheets, emails, and Giants Stadium's books and records which relate to the valuation of the Terminated Transactions recorded in each Financial Statement whether such documents were prepared by Giants Stadium or a third party.

REQUEST NO. 18

All financial projections, prepared for internal or external use, for Giants Stadium concerning the period from January 1, 2007 through the present, or any portion thereof.

REQUEST NO. 19

Documents sufficient to identify the terms of any outstanding Giants Stadium financing arrangements which have been in effect at any time from January 1, 2006 through the present.

REQUEST NO. 20

Documents sufficient to identify the complete ownership history of the Bonds.

REQUEST NO. 21

All documents concerning the Offering Circular, including drafts and amendments related to subsequent auction dates, if any, with respect to the Bonds and all executed ancillary documents.

REQUEST NO. 22

Documents sufficient to show the status of the obligations with respect to FSA and FGIC in connection with the Bonds and/or the Terminated Transactions.

REQUEST NO. 23

All documents concerning the Proofs of Claim including (i) any back-up or other information underlying the claims, and (ii) any sale, transfer, or participation thereof.

REQUEST NO. 24

All documents concerning (i) any consent of, or ratification by, FGIC and/or FSA to the designation of an Early Termination Date, or (ii) the effect of the designation of an Early Termination Date on Giants Stadium's compliance with any Covered Indenture or Insurance and Indemnity Agreement.

REQUEST NO. 25

All documents concerning the Termination Letters and the Calculation Statements, including all drafts thereof, to the extent not requested above.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                              :
In re                                         :      Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :      08-13555 (JMP)
                                              :
                    Debtors.                  :      (Jointly Administered)
                                              :
------------------------------------------------------------------x

## ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the

Debtors to issue subpoenas for the production of documents and the examination of

persons and entities that have information relevant to the administration of the Debtors'

estates, including without limitation, the Debtors' former employees, lenders, investors,

creditors and counterparties to transactions with Debtors, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New

York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due

and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

2

produce responsive documents in accordance with this Order or (ii) file the objection with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a witness withholds any documents from the production based upon a claim of privilege, such witness is directed to provide counsel for the Debtor with a privilege log, containing the information required under Bankruptcy Rule 7026, within ten (10) days following the completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination upon reasonable notice and, absent other agreement with the Debtor, within thirty (30) days of the date of the service of a deposition subpoena upon such witness (unless such subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any other party under applicable law to object to or oppose any subpoena the Debtors may serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the Southern District of New York and (iv) counsel for the party subject to such subpoena that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

ORDERED that, this Order is without prejudice to the Debtors' right to

file further motions seeking additional documents and testimony pursuant to Bankruptcy

Rule 2004(a) or any other applicable law.

Dated: New York, New York
      November 23, 2009

                                    *s/ James M. Peck*
                                HONORABLE JAMES M. PECK
                                UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

FORM 254-Subpoena in for Rule 2004 Examination (12/06)

# United States Bankruptcy Court

Southern _____ DISTRICT OF_____ New York

| In re Lehman Brothers Holdings Inc., et al., | **SUBPOENA FOR RULE 2004 EXAMINATION** |
|---|---|

Debtor

Case No. <u>08-13555(JMP)</u> _____

Chapter <u>11</u> _____

To:
Giants Stadium LLC
Meadowlands Sports Complex
50 State Route 120
East Rutherford, New Jersey 07073

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Fed. R. Bankr. P., at the place, date, and time specified below, by an individual or individual(s) with knowledge of the matters and documents set forth in Exhibit A To The Order Attached Hereto.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below.

## Documents Requested By Exhibit A Attached Hereto

| PLACE<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 | DATE AND TIME<br>May 11, 2012 at 10:00 A.M. (EST) |
|---|---|
| ISSUING OFFICER SIGNATURE AND TITLE<br><br>*[signature]* | DATE<br><br>4/9/12 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Peter Gruenberger; Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153; (212) 310-8000

FORM 254  Subpoena in for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | Date | Place |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or

tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause

(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause,

considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

# SCHEDULE OF DOCUMENTS TO BE PRODUCED
# BY GIANTS STADIUM

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      "Bank of America" shall mean Bank of America, N.A. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

2.      "Baupost" shall mean Baupost Group LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

3.      "Bonds" shall mean the $650,000,000 Project Revenue Bonds, Series 2007A (Auction Rate Securities), Subseries 2007A-1, 2007A-2, 2007A-3, 2007A-4, 2007A-5, 2007A-6, and 2007A-7, originally issued by Giants Stadium as of August 1, 2007.

4.      "Concerning" shall have the meaning set forth in Southern District of New York Local Civil Rule 26.3(c)(7).

5.      "Confirmations" shall mean the two amended and restated confirmations executed by Giants Stadium and LBSF, dated August 16, 2007.

6.      "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, reports, correspondence, minutes, emails, instant messages, spreadsheets, memoranda, notes and all other writings, Bloomberg screenshots, drawings, graphs, charts,

photographs, sound recordings including, but not limited to, phone messages and taped phone calls, and electronic or computerized data compilations from which information can be obtained and/or translated, if necessary, through electronic detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. The word "including" means including, but not limited to.

7.    "FGIC" shall mean Financial Guaranty Insurance Company and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

8.    "First Set of Document Requests" shall mean the document requests attached as Exhibit A to the subpoena served by LBHI on Giants Stadium on or about May 19, 2010.

9.    "FSA" shall mean Financial Security Assurance, Inc. and its successor entity and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

10.    "Giants Stadium," "You," and "Your" shall mean Giants Stadium LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

11.    "Goal Line" shall mean Goal Line Partners LLC and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, advisors, subsidiaries, affiliates, predecessors, successors, or representatives.

12.    "Goldman Sachs" shall mean Goldman, Sachs & Co. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

13.    "Indenture" shall mean the Indenture of Trust dated as of August 1, 2007, entered into by Giants Stadium and The Bank of New York, as trustee.

14.    "Insurance and Indemnity Agreement" shall mean the Insurance and Indemnity Agreement dated as of August 16, 2007, entered into by Giants Stadium and FGIC.

15.    "LBHI" shall mean Lehman Brothers Holdings, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

16.    "LBSF" shall mean Lehman Brothers Special Financing, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, subsidiaries, affiliates, predecessors, successors, or representatives.

17.    "LBI" shall mean Lehman Brothers, Inc.

18.    "Lehman Bankruptcy" shall mean the voluntary cases commenced under chapter 11 of title 11 of the United State Code, which are being jointly administered and are currently pending before the United States Bankruptcy Court for the Southern District of New York., styled *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (JMP).

19.    "Master Agreement" shall mean any of the following: (i) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FGIC; and/or (ii) the standard form 1992 ISDA Master Agreement and the schedule thereto, entered into by Giants Stadium and LBSF as of July 27, 2007, and insured by FSA.

20.    "NFL" shall mean the National Football League, Inc. and any person or entity acting on its behalf or under its control, including any of its former or current officers, agents, predecessors, successors, or representatives.

21.    "Supplemental Indenture" shall mean any supplement to the Indenture, including, but not limited to the Third Supplemental Indenture of Trust to the Indenture, dated and effective as of September 18, 2008, between Giants Stadium and The Bank of New York Mellon, as trustee.

22.    "Termination Letters" shall mean the letters from Giants Stadium to LBSF dated September 18, 2008.

23.    "Third Supplemental Indenture" shall mean the Third Supplemental Indenture of Trust to the Indenture dated and effective as of September 18, 2008, entered into by Giants Stadium and The Bank of New York Mellon, as trustee.

24.    "Transactions" shall mean any of the transactions, entered into pursuant to the Master Agreement, purportedly terminated by Giants Stadium in the Termination Letters.

25.    The terms "and" and "or" shall be construed both disjunctively and conjunctively so as to bring within the scope of this request all documents which might otherwise be considered to be outside of that scope.

26.    The word "each" shall mean both "each" and "every", and the word "every" shall mean both "each" and "every," as appropriate in order to bring within the scope of this Request documents which might otherwise be beyond its scope.

## GENERAL INSTRUCTIONS

The following general instructions apply to each request set forth herein.

27.    Each request seeks production of each Document, in its entirety, without abbreviation or expurgation, and all drafts and non-identical copies of each Document.

28.    If any Document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document a written statement (a) describing in detail the nature of the Document and its contents, (b) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the Document was sent, (c) specifying the date on which the Document was prepared or transmitted and (d) specifying the date on which the Document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

29.    If any Document requested herein is withheld on the basis of any claim of privilege, You are requested to submit, in lieu of any such Document, a written statement (a) identifying the person(s) who prepared or authored the Document, and, if applicable, the person(s) to whom the Document was sent or shown, (b) specifying the date on which the Document was prepared or transmitted, (c) describing the nature of the Document (e.g., letter, telegram, etc.), (d) stating briefly why the Document is claimed to be privileged or to constitute work product, and (e) identifying the paragraph of this request to which the Document relates.

30.    If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege

shall be deleted or redacted from the Document, the instructions in the preceding paragraph shall be applicable, and the rest of the Document shall be produced.

31.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in this request. The method for production of each category is to be identified at the time of production. Documents are to be produced in full and unexpurgated form.

32.    Each page of each document should be numbered consecutively. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

33.    Documents attached to each other (physically or via electronic mail) should not be separated.

34.    In producing the requested documents, even though the requests are directed to "You," furnish all documents that are available to You, including documents in the possession of any of Your officers, directors, employees, agents, attorneys, advisors, investigators, accountants or consultants and not merely such documents in Your possession.

35.    The requests that follow are to be regarded as continuing, and You are requested to provide by the way of supplementary compliance herewith, such additional documents as You may hereafter obtain, which will augment the documents now produced in response to the requests below. Such additional documents are to be produced at the offices of Weil, Gotshal & Manges LLP promptly after Your receipt thereof.

36.    At a future date, LBHI may request the production of additional documents based on information revealed during this document request.

37.    At a future date, LBHI may request to depose additional individuals based on information revealed during this document request.

## RELEVANT TIME PERIOD

Unless otherwise stated, the relevant time period for each of the following requests is from and including January 1, 2007 through the present, unless otherwise indicated within the requests below.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents responsive to the First Set of Document Requests that were not yet in existence at the time that Giants Stadium produced documents in response to the First Set of Document Requests.

REQUEST NO. 2

All documents concerning Giants Stadium's proofs of claim filed in the Lehman Bankruptcy on or about December 6, 2012, including, but not limited to, (i) documents containing or reflecting a description of the methodology used by Giants Stadium to calculate the amount claimed in the proofs of claim, (ii) documents including, but not limited to, spreadsheets, emails and Giants Stadium's books and records that concern the amount claimed in the proofs of claim, (iii) documents concerning the Supplemental Statement attached to the proofs of claim, including all drafts thereof, (iv) all communications with Goldman Sachs, the NFL, Baupost, Bank of America, or Goal Line concerning any proofs of claim filed in the Lehman Bankruptcy, and (iv) all documents concerning Giants Stadium's decision to supplement or amend its proofs of claim previously filed in the Lehman Bankruptcy on or about September 22, 2009.

REQUEST NO. 3

All documents concerning the sale of Giants Stadium's claims in the Lehman Bankruptcy.

REQUEST NO. 4

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Bank of America regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 5

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Bank of America regarding the value of the Transactions both prior to, and after, their purported termination on or about September 18, 2008.

REQUEST NO. 6

All documents concerning the sale of Giants Stadium's claims in the Lehman Bankruptcy to Goal Line.

REQUEST NO. 7

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 8

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Goal Line or Baupost regarding the value of the Transactions both prior to, and after, their purported termination on or about September 18, 2008.

REQUEST NO. 9

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and Robert Taylor concerning the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 10

All documents reflecting, discussing, or concerning communications between, or on behalf of, Giants Stadium and any current or former employee, agent, advisor, representative, or counsel of LBHI, LBSF, LBI, or any related Lehman affiliate, concerning the Lehman Bankruptcy, the Rule 2004 discovery undertaken by LBHI and LBSF in the Lehman Bankruptcy, the Indenture, any Supplemental Indenture, the Master Agreements, the Confirmations, the Bonds, the Insurance and Indemnity Agreement, the Transactions, or the proofs of claim filed in the Lehman Bankruptcy by Giant Stadium.

REQUEST NO. 11

All of Giants Stadium's financial statements, both audited and non-audited, that relate to the valuation of the Transactions, and all documents which relate to, support, or are the

basis for such valuations, regardless of whether such documents were created by Giants Stadium

or a third party.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                     :

In re                                :       **Chapter 11 Case No.**
                                       :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :       **08-13555 (JMP)**
                                       :

                     **Debtors.**       :       **(Jointly Administered)**
                                       :

----------------------------------------------------------------x

## ORDER GRANTING THE DEBTORS AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS AND ENTITIES

Upon the motion, dated November 4, 2009 (the "Motion"), of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for an order authorizing the Debtors to issue subpoenas for the production of documents and the examination of persons and entities that have information relevant to the administration of the Debtors' estates, including without limitation, the Debtors' former employees, lenders, investors, creditors and counterparties to transactions with Debtors, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and approval

of the relief requested in the Motion being within the sound discretion of the Court; and

the Court having determined that the relief sought in the Motion is in the best interests of

the Debtors, their creditors and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, pursuant to Bankruptcy Rule

2004, to issue such subpoenas as may be necessary to compel the production of

documents and the testimony of witnesses in connection with the administration of these

cases; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor,

witnesses shall have thirty (30) days from the service of a subpoena to either (1) begin

production on a rolling basis, which production shall be completed prior to the later of

seventy-five (75) days from the service of a subpoena or such other date agreed to by the

Debtor and the witness, to the Debtor of responsive documents requested in the Debtor's

subpoena, other than those documents withheld under a claim of privilege or (2) serve on

the Debtor any objections to the subpoena; and it is further

ORDERED that, if the Debtor and an objecting witness cannot resolve the

objection within ten (10) days following the date such objection is served on the Debtor

(or such later date agreed to by the Debtor and the witness), the witness shall either (i)

produce responsive documents in accordance with this Order or (ii) file the objection

with the Court and promptly schedule a hearing; and it is further

ORDERED that, unless otherwise agreed to by the applicable Debtor, if a

witness withholds any documents from the production based upon a claim of privilege,

such witness is directed to provide counsel for the Debtor with a privilege log, containing

the information required under Bankruptcy Rule 7026, within ten (10) days following the

completion of the production of documents; and it is further

ORDERED that, the witness is directed to submit to oral examination

upon reasonable notice and, absent other agreement with the Debtor, within thirty (30)

days of the date of the service of a deposition subpoena upon such witness (unless such

subpoena is the subject of an objection); and it is further

ORDERED that, nothing herein shall limit the rights of any witness or any

other party under applicable law to object to or oppose any subpoena the Debtors may

serve upon such witness; and it is further

ORDERED that, in accordance with Bankruptcy Rules 2004 and 9016, the

Clerk of this Court shall issue subpoenas, signed, but otherwise in blank, as requested by

the Debtors; and it is further

ORDERED that the Debtors shall serve each subpoena and a copy of this

Order on the party subject to the subpoena, with a copy to (i) the Securities and Exchange

Commission; (ii) the Internal Revenue Service; (iii) the United States Attorney for the

Southern District of New York and (iv) counsel for the party subject to such subpoena

that has appeared in these cases; and it is further

3

ORDERED that within three (3) days following the service of a subpoena, the Debtors shall file with the Court notice of each subpoena, naming the witness and setting forth the date, time and place of any examination; and it is further

ORDERED that, notwithstanding the request for certain documents or information in a subpoena, witnesses shall not be required to produce to the Debtors any documents or information that have been previously provided to the Debtors by a witness either in connection with the claims filing process or otherwise; and it is further

ORDERED that, the Debtors shall not serve a subpoena pursuant this Order on any party for any documents or information or for an oral examination related to a derivative contract for which such party has received a Derivatives ADR Package pursuant to the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [Docket No. 5207] and such mediation has not yet been terminated by the mediator; and it is further

ORDERED that the Debtors shall file with the Court an affidavit or declaration of service for each subpoena it serves; and it is further

ORDERED that, this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order; and it is further

ORDERED that, this Order is without prejudice to the Debtors' right to file further motions seeking additional documents and testimony pursuant to Bankruptcy Rule 2004(a) or any other applicable law.

Dated: New York, New York
      November 23, 2009

                        _____*s/ James M. Peck*_____
                        HONORABLE JAMES M. PECK
                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Lauren Hoelzer Helenek**
+1 (212) 310-8581
lauren.hoelzer@weil.com

May 6, 2014

Bruce E. Clarke, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Re: *Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (SCC);
   *In re Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing, Inc. v.*
   *Giants Stadium LLC*, Adversary Proc. No. 13-01554 (SCC)

Dear Bruce:

We write with respect to deficiencies in Giants Stadium LLC's ("Giants Stadium's") production of documents in response to the Subpoena for Rule 2004 Examination (the "Subpoena") to Giants Stadium dated April 9, 2012 propounded by Lehman Brothers Special Finance ("LBSF") and Lehman Brothers Holding, Inc. ("LBHI," collectively "Lehman").

The Subpoena seeks documents, unless otherwise specified, from January 1, 2007 through the present. Giants Stadium, however, admittedly has produced only a handful of documents from 2010 or after. Giants Stadium cannot claim that it has produced all relevant documents from that time period: actions that Giants Stadium took during 2010 through 2012 are central to this action, and Giants Stadium has no reasonable ground to withhold documents concerning those actions from that time period.

*First*, in December 2011, Giants Stadium filed amended proofs of claim with revised valuations of the Transactions,[1] nearly doubling the amounts sought in previous proofs of claim. The Subpoena makes several detailed requests for <u>all</u> documents related to the amended proofs of claim, including any valuations or calculations that were undertaken in connection with the amendment and communications with various third parties regarding the same.[2] In addition, the Subpoena seeks all documents

---

[1] All capitalized terms have the same meaning as defined in the Subpoena.

[2] For example, Request No. 2 seeks "[a]ll documents concerning Giants Stadium's proofs of claim filed in the Lehman Bankruptcy on or about December 6, 2012, including, but not limited to, (i) documents containing or reflecting a description of the methodology used by Giants Stadium to calculate the amount claimed in the proofs of claim, (ii) documents including, but not limited to, spreadsheets, emails and Giants Stadium's books and records that concern the amount claimed in the proofs of claim, (iii) documents concerning the Supplemental Statement attached to the proofs of claim, including all drafts thereof, (iv) all communications with Goldman Sachs, the NFL, Baupost, Bank of America, or Goal Line concerning any

Bruce E. Clarke, Esq.                                **Weil, Gotshal & Manges LLP**
May 6, 2014
Page 2

responsive to Lehman's subpoena to Giants Stadium dated May 10, 2010 (the "First Set of Document Requests") that were not yet in existence at the time that Giants Stadium produced documents in response to the First Set of Document Requests. At least four of the requests in the First Set of Document Requests seek documents related to the amendment.[3]

Despite myriad requests, Giants Stadium has yet to produce even a single document related the amendment or any valuation of the Transactions in the connection with the amendment. This failure cannot be reconciled with Judge Peck's ruling on Baupost Group, LLC's ("Baupost's") motion to quash a subpoena seeking documents concerning the amendment of the proofs of claim. Judge Peck rejected the assertion that all documents created in connection with the amendment are work product or otherwise privileged and further stated that "I don't know that there is a classic definition of a harassing subpoena in the context of a valuation dispute in which a claim jumps from approximately 300 million to approximately 600 million. And to the extent that your client has knowledge concerning the valuation shift I think you should be turning over whatever you have that's non-privileged with respect to that." Transcript of Omnibus Hearing, October 23, 2013 at 10:13-17; 11:20-12:2. The relevance of such documents was made plain by Judge Peck at the hearing.

In addition, Giants Stadium cannot—consistent with Judge Peck's order to Baupost—claim privilege or work product protection over all documents related to the amendment. Indeed, courts routinely have held that documents in connection with the filing of proofs of claim are not privileged. Accordingly, Lehman requests that Giants Stadium produce documents responsive to Requests No. 1, 2, 5 and 8 by May 30, 2014.

*Second*, the Subpoena contained several requests for documents related to any sale of Giants Stadium's Claims in the Lehman bankruptcy. In addition to requesting "[a]ll documents concerning the sale," the Subpoena also seeks documents reflecting communications with Bank of America—the initial purchaser of the claims—and Goal Line or Baupost—the current holder of the claims—regarding, among other things, the Transactions or the proofs of claim. *See* Requests No. 3, 4, 6, and 7. Giants Stadium has produced only a very limited number of communications with Bank of America concerning the sale and has produced no documents regarding communications with Goal Line or Baupost. Please confirm that Giants Stadium has produced all documents concerning any sale or transfer of the proofs of claim, including but not limited to documents negotiating the sale and any valuation work performed or received by Giants Stadium in connection with any sale.

---

proofs of claim filed in the Lehman Bankruptcy, and (iv) all documents concerning Giants Stadium's decision to supplement or amend its proofs of claim previously filed in the Lehman Bankruptcy on or about September 22, 2009."
[3] Request No. 1 from the First Set of Document Requests seeks "[a]ll documents concerning any valuation of the Terminated Transactions;" (ii) Request No. 2 seeks [a]ll documents containing or reflecting a description, in whole or in part, of the methodology used by Giants Stadium to determine the value of the Terminated Transactions;" (iii) Request No. 8 seeks "[d]ocuments sufficient to identify all persons who were involved in the valuation of the Terminated Transactions;" and (iv) No. 23 "all documents concerning the Proofs of Claim, including (i) any backup or other information underlying the claims."

Bruce E. Clarke, Esq.                                      **Weil, Gotshal & Manges LLP**
May 6, 2014
Page 3

*Third*, Lehman is aware that Giants Stadium refinanced the Bonds in 2010. Request No. 6 of the First Set of Document Requests, incorporated through Request No. 1 of the Subpoena, seeks all documents "concerning any Financing Transaction." Giants Stadium, again, has not produced a single document in connection with the 2010 refinancing of the Bonds.

In addition to the documents that Giants Stadium has failed to produce from 2010 and after, Giants Stadium has inappropriately refused to produce any documents responsive to Request No. 11, which seeks "[a]ll of Giants Stadium's financial statements, both audited and non-audited, that relate to the valuation of the Transactions, and all documents which relate to, support, or are the basis for such valuations, regardless of whether such documents were created by Giants Stadium or a third party." Giants Stadium objected on the grounds the Request was "overbroad and unduly burdensome and/or seeks information that are neither relevant to any party's claim or defense, or whose relevance is outweighed by the burden GSLCC would bear in attempting to collect, review, and produce such material." *See* Giants Stadium's Response to Request No. 11. These objections are meritless—the request seeks financial documents that Giants Stadium presumably created in the ordinary course of business and certainly can access without undue burden or expense. Moreover, the requested financial statements, including those previously made available for inspection by Lehman (but not its counsel), are directly relevant in the adversary proceeding to valuing the Terminated Transactions and must be provided.

Finally, in response to a Motion to Compel, Giants Stadium previously agreed to produce communications and documents sent among itself, Sullivan & Cromwell LLP ("Sullivan & Cromwell"), and Goldman Sachs & Co. that Lehman argued were not protected by attorney-client privilege. Please confirm that that Giants Stadium has produced all communications with Sullivan & Cromwell when Goldman Sachs was also included. In addition, please explain the basis for redaction of communications among Giants Stadium, Goldman Sachs, and Nixon Peabody LLP.

We are available to meet-and-confer on the issues raised in the letter.

Sincerely,

Lauren Hoelzer Helenek

# EXHIBIT D

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 23, 2014

Via E-mail

Lauren Hoelzer Helenek,
    Weil, Gotshal & Manges LLP,
        767 Fifth Avenue,
            New York, New York  10153-0119.

Re:    *In re Lehman Brothers Holdings Inc., et al.* 08-13555 (Bankr. S.D.N.Y.);
       *Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing,
       Inc.* v. *Giants Stadium LLC* 13-01554 (Bankr. S.D.N.Y.)

Dear Lauren:

I write on behalf of Giants Stadium LLC ("Giants Stadium") in response to your letter of May 6, 2014 regarding Giants Stadium's production of documents in the above-captioned matter ("May 6, 2014 Letter").

*Initially*, we note that your May 6, 2014 Letter purports to raise certain "deficiencies" in productions made by Giants Stadium over the course of many years, in the context of a Rule 2004 investigation of such breadth that Debtors themselves referred to it as a "fishing expedition." (November 11, 2010 Letter from R. Slack to B. Clark; December 17, 2010 Letter from M. Firestone to B. Clark.) Moreover, from January 17, 2014 to April 30, 2014, the parties agreed to stay active litigation while they attempted to negotiate a settlement of that claim, and so any suggestion in your letter that Giants have somehow delayed responding to Debtors' document requests is inappropriate. We address below the concerns raised in your May 6, 2014 Letter.

*First*, at our meet and confer on April 30, 2013, we advised Debtors that documents in Giants Stadium's files relating to the amendment of its claims in December 2011 (the "December 2011 Amendment") were likely all privileged. Nonetheless, at our May 21, 2013 meet and confer, Giants Stadium agreed to conduct a burdensome document-by-document review of thousands of documents to identify any relating to the December 2011 Amendment, and to assess them *individually* for privilege. As expected, that review yielded no non-privileged documents on this topic. Pursuant to paragraph 1 of the April 1, 2013 protocol agreement between Giants Stadium and Debtors (the

Lauren Hoelzer Helenek, Esq.                                                                    -2-

"Protocol Agreement"), Giants Stadium did not undertake to create a privilege log at that time.

       *Second*, as discussed at our meet and confer on April 30, 2013, Giants Stadium had already produced the vast majority of its non-privileged documents three years prior, in response to Debtors' first Rule 2004 subpoena. Those original productions contained responsive documents created through October 29, 2009, including documents relating to the 2009 sale of Giants Stadium's proofs of claim. Nonetheless, at our May 21, 2013 meet and confer, Giants Stadium agreed to conduct a burdensome re-review of its documents to identify and produce anything additional that might be related to the sale of the claims. As expected, that review yielded very few responsive, non-privileged results, which were produced to Debtors on May 29, 2013, bearing production numbers GStad_LB_0065302 through GStad_LB_0065338. Again, pursuant to paragraph 1 of the Protocol Agreement, Giants Stadium did not undertake to create a privilege log at that time. As you are aware, Giants Stadium sold its claims to Bank of America, and there were no communications directly between Baupost and Giants Stadium regarding that sale.

       *Third*, it is not true that "Giants Stadium ... has not produced a single document in connection with the 2010 refinancing of the Bonds." Although Giants Stadium made clear in its July 26, 2010 Responses and Objections to Debtors' First Document Subpoena that it believed documents concerning any financings in 2010 were "neither relevant to the claims, rights or interests of Debtors in the Chapter 11 case nor reasonably calculated to assist in the administration of Debtors' bankruptcy estate," Giants Stadium nonetheless compromised with Debtors during the parties' first meet and confer and agreed to produce the deal documents for the 2010 refinancing. Those deal documents were provided to Debtors on August 3, 2010. In the nearly four years since that production was made, Debtors had never—until their May 6, 2014 Letter—disagreed with Giants Stadium's relevance objection nor demanded any additional documents relating to the 2010 refinancing. Indeed, Debtors had never before shown an interest in documents dated in 2010 and have never explained the relevance of a refinancing well over a year after LBSF's default on the swaps. At the parties' April 30, 2013 meet and confer, Giants Stadium reminded Debtors that its prior productions had included documents dated through October 29, 2009, and that it intended to re-review and produce responsive, non-privileged documents only through October 15, 2008. At our May 21, 2013 meet and confer, Debtors asked Giants Stadium to produce responsive, non-privileged documents dated after October 15, 2008, but *only as to two issues*: (1) the December 2011 Amendment; and (2) the 2009 sale of Giants Stadium's proofs of claim. Giants Stadium agreed and produced the requested documents on May 29, 2013.

       *In addition*, Debtors' characterization of Giants Stadium's position regarding financial statements is completely wrong. We made clear at our meet and confer on April 30, 2013 that Giants Stadium's concern was the same as it had been two

Lauren Hoelzer Helenek, Esq.                                                              -3-

and a half years before.  Giants Stadium was—and remains—understandably reluctant to
provide its private financial records to a firm that also represents the NFL players' union,
especially without assurance that adequate safeguards are in place to ensure
confidentiality.  Giants Stadium never "refused to produce" such documents, but rather
agreed to allow Debtors to view the financial statements at Sullivan & Cromwell's
offices and then advise which—if any—Debtors believed were relevant enough to be
produced.  It is also completely incorrect that the financial statements were only "made
available for inspection by Lehman (but not its counsel)."  Michael Firestone, your
former colleague, was among those given access to the documents on March 24, 2011,
and he confirmed in a letter of March 30, 2011 that the financial statements did not
contain "entries valuing the interest rate swap transactions at issue here, either prior to or
following their termination."

       *Finally*, Debtors' statement that Giants Stadium "previously agreed to
produce communications and documents sent among itself, Sullivan & Cromwell LLP
('Sullivan & Cromwell'), and Goldman Sachs & Co." is incorrect.  What actually
happened was that at the September 14, 2011 hearing on Debtors' Motion to Compel
Production of Documents "Improperly" Withheld as Privileged, Judge Peck ordered *in
camera* review of the contested documents.  On September 15, 2011, Debtors asked if
Giants Stadium would produce the contested documents to Debtors instead of to the
court—without waiver of privilege–so that Debtors could assess which, if any, they
wished to pursue further.  Rather than burden the court further, Giants Stadium agreed
and, on September 28, 2011, produced the contested documents to Debtors pursuant to a
non-waiver agreement between the Parties.  In the two and a half years since, Debtors
have not identified any of those documents as being of further concern.  However, Giants
Stadium can confirm that it did not withhold for privilege any additional communications
with Sullivan & Cromwell "when Goldman Sachs was also included," beyond those
itemized on its previous privilege logs.

       *In addition,* you ask for an explanation for "the basis for redaction of
communications among Giants Stadium, Goldman Sachs, and Nixon Peabody LLP."  As
noted on Rows 198 through 211 of Giants Stadium's Log of Redacted Documents, dated
November 22, 2010, Giants Stadium redacted portions of a chain of September 14-15 e-
mails among Stacy Sonnenberg, Gregory Carey, Zach Effron, and Keith Shultis of
Goldman Sachs; Peter White, Elizabeth Columbo, and Barry Rothchild of Nixon
Peabody; Christine Procops of Giants Stadium; and Joseph Shenker, Andrew Dietderich,
and Ivan Deutsch of Sullivan & Cromwell LLP.  Goldman Sachs and its counsel, Nixon
Peabody, were assisting Sullivan & Cromwell in providing legal advice to Giants
Stadium.  These emails were among the contested documents that were the subject of
Debtors' Motion to Compel Document "Improperly" Withheld as Privileged; unredacted
versions of these emails were among those provided by Giants Stadium on a non-waiver
basis on September 28, 2011.

Lauren Hoelzer Helenek, Esq.                                              -4-

We area available to meet and confer regarding these issues.

Sincerely,

Matthew A. Schwartz

# EXHIBIT E

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Eric C. Hawkins**
+1 (212) 310-8659
eric.hawkins@weil.com

September 9, 2014

Bruce E. Clarke, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Re: *Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (SCC);
*In re Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing, Inc. v.*
*Giants Stadium LLC*, Adversary Proc. No. 13-01554 (SCC)

Dear Bruce:

We write in reply to your letter, sent in response to our letter of May 6, 2014, which noted multiple deficiencies in Giants Stadium's production of documents in response to Lehman's April 9, 2012 Subpoena.[1]

*First*, Giants Stadium's production of documents concerning its 2010 refinancing of the Bonds is deficient. Subpoena Request Number 6 calls for "[a]ll documents concerning any Financing Transaction," not just the "deal documents" referenced in your May 23 letter, and Lehman has never agreed to such limitation or otherwise abandoned that request. Moreover, your relevance objection to Request Number 6 is without merit: Lehman contends that Giants Stadium's Loss calculation is commercially unreasonable because, among many other things, it fails to account for LBSF's right to cause a refinancing of the Bonds. That right limited LBSF's potential exposure under the Swaps to an amount far less than Giants Stadiums' Loss calculation. *See* Objection to Proof of Claim Numbers 67782, 68103 and 64071, Case No. 08-13555, Dk. No. 44269, Part G(1)(a) (the "Claims Objection"); *see also Adversary Proceeding Complaint*, Case No. 13-01554, Dk. No. 1, and ¶ 3(d); LBSF's Confidential Mediation Statement dated February 7, 2012 (same). Documents concerning the 2010 refinancing are discoverable because they reasonably may shed light on the value of the refinancing right and, thus, the reasonableness of Giants Stadium's Loss calculation. Accordingly, Lehman reiterates its request that Giants Stadium produce all documents concerning the 2010 refinancing of the

---

[1] Capitalized terms that are not defined herein bear the meanings ascribed to them in our May 6 letter and/or the Subpoena.

Bruce E. Clarke, Esq.                                                **Weil, Gotshal & Manges LLP**
September 9, 2014
Page 2

Bonds including, without limitation, all documents concerning the marketing for or negotiation of the refinancing.

*Second*, in purporting to explain the paucity of documents that Giants Stadium has produced concerning the sale of its Claims in the Lehman Bankruptcy, your May 23 letter states that "there were no communications directly between Baupost and Giants Stadium" regarding that sale. The Subpoena is not limited to "direct" communications, however. Please produce all communications, direct or indirect (through Bank of America or its counsel), among Giants Stadium, Baupost, and/or Goal Line concerning Giants Stadium's sale of its Claims, or confirm that no such documents exist within Giants Stadium's possession, custody, or control.

*Third*, Giants Stadium's blanket assertion of privilege over all documents concerning the amended proofs of claim is untenable. The factual basis for a proof of claim (if any) is not privileged information or work product. *See, e.g.*, *In re Rodriguez*, 2013 WL 2450925, at *6 (Bankr. S.D. Tex. June 5, 2013).

*Fourth*, your letter mischaracterizes the history of Lehman's requests for certain of Giants Stadium's financial statements. Your letter admits that Giants Stadium "agreed to allow Debtors to view the financial statements at Sullivan & Cromwell's offices and then advise which—if any—Debtor's believed were relevant enough to be produced." But you fail to note that Lehman did exactly that, and Giants Stadium never produced the requested documents. By letter of March 30, 2011 from Michael Firestone to you, Lehman provided a "list of those documents which we have reviewed and now request be formally produced to LBSF pursuant to Rule 2004 Subpoena served on May 19, 2010." In addition, Mr. Firestone noted that Giants Stadium had not made available for review the audited financial statements from 2008 and 2009 or "any accounting document or entries valuing the interest rate swap transactions at issue" and requested that Giants Stadium produce such documents or confirm they do not exist. To date, Giants Stadium has done neither.

Instead of honoring the parties' agreement, Giants Stadium raised purported confidentiality concerns based on this law firm's representation of the NFL Players' Association in unrelated matters. The continued reference in your May 23 letter to that supposed issue is baffling: As memorialized in Mr. Firestone's April 11, 2011 letter to you, the parties "resolved this issue in February [2011]. We agreed that Weil attorneys working on NFL Players Association matters would not have access to Giants Stadium document produced pursuant to the 2004 Subpoena. We also agreed that information produced by Giants Stadium will be subject to the confidentiality agreement entered into by the parties. Your February 23, 2011 e-mail agreed to the above." Given that Weil agreed years ago to screen attorneys working on matters related to the NFL Players' Association from this matter, Giants Stadium's position that it needs "assurance that adequate safeguards are in place" can only be viewed as an attempt to further delay production of documents that Lehman first requested more than four years ago. *See* Request No. 17, First Set of Document Requests, dated May 19, 2010.

Bruce E. Clarke, Esq.
September 9, 2014
Page 3

**Weil, Gotshal & Manges LLP**

*Finally,* Giants Stadium's August 3, 2010 production (GStad_LB_0000001-GStad_LB_0018415) does not include metadata.  Please provide the metadata specified in Exhibit A to this letter for that production and all future productions.

Lehman demands that Giants Stadium produce all documents identified above by September 22, 2014

Sincerely,

Eric C. Hawkins

Bruce E. Clarke, Esq.                                    **Weil, Gotshal & Manges LLP**
September 9, 2014
Page 4


## Exhibit A: Requested Metadata

- BEGDOC: Starting Bates number of document (including prefix)
- ENDDOC: End Bates number of document (including prefix)
- BEGATTACH: Beginning bates number of attachment family.
- ENDATTACH: End bates number of attachment family.
- CUSTODIAN: Custodian(s) / source(s) listed in the following format: Last, First
- FILEPATH" File path to native file as it existed in original source
- EMAIL_FROM: Author of the Email or Calendar item (as formatted on the original)
- EMAIL_TO: Recipients of the Email (as formatted on the original)
- EMAIL_CC: Names of the individuals who were copied on the Email (as formatted on the original)
- EMAIL_SUBJECT: Subject field value extracted from metadata of email
- EMAIL_BCC: Names of the individuals who were blind-copied on the Email (as formatted on the original)
- CONVERSATIONINDEX: Email Thread Identification
- DATESENT: Date the Email was sent. Format: MM/DD/YYYY.
- TIMESENT: Time Email was sent -- Format: HH:MM:SS
- DATERECEIVED: Date Email was received. Format: MM/DD/YYYY.
- TIMERECEIVED: Time Email was received. Format: HH:MM:SS
- FILENAME: File name of native file (E-Docs or attachments to Email)
- AUTHOR: Author field value extracted from the metadata of a native file
- DATECREATED: Date electronic file was created. Format: MM/DD/YYYY.
- DATEMODIFIED: Date electronic file was created. Format: MM/DD/YYYY.
- MD5HASH: Document MD5 hash value (used for deduplication purposes)
- FILESIZE: File size in bytes of native file
- FILEEXTENSION: File extension of native file
- PAGES: Page count of document
- FILETYPE: File type  of native file (e.g., Microsoft Excel, Outlook Email, Microsoft Powerpoint)
- DOCLINK: File path location to the  native file location on the production medium
- FULLTEXT: File path location to the extracted text file location on the production medium

# EXHIBIT F

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 2, 2014

Via E-mail

Eric C. Hawkins, Esq.,
    Weil, Gotshal & Manges LLP,
        767 Fifth Avenue,
            New York, New York 10153-0019.

Re:    *In re Lehman Brothers Holdings, Inc., et al.*, 08-13555 (Bankr.
       S.D.N.Y.); *Lehman Brothers Holdings Inc. and Lehman Brothers
       Special Financing, Inc.* v. *Giants Stadium LLC*, 13-01554 (Bankr.
       S.D.N.Y.)

Dear Eric:

I write on behalf of Giants Stadium LLC ("Giants Stadium") concerning Debtors' continued non-compliance with Giants Stadium's Request for Production of Documents ("Requests") in the above-referenced matter. Your September 9, 2014 letter purports to identify a handful of "deficiencies" in Giants Stadium's production in response to Debtors' April 9, 2012 Subpoena for Rule 2004 Examination ("Subpoena Requests")—a contention I address below—but ignores entirely the categories of documents Debtors have withheld from production described in detail in Mr. Schwartz's letter dated May 23, 2014:

- **Redacted documents**. Debtors have redacted over one thousand documents without invoking privilege, suggesting that the redactions were of material Debtors deemed to be non-responsive or "confidential." For each redacted document produced by Debtors, to the extent not already specified within the redaction box itself, please state the basis for each redaction.

Eric C. Hawkins, Esq.                                                                      -2-

- **Requests 10 and 17**.  These Requests seek documents relating to Debtors'
  valuation of the swaps and Debtors' method of calculating Loss.[1]  Given that
  Debtors have produced only a handful of documents dated after October 15,
  2008, Debtors are obviously withholding documents responsive to these
  Requests under some form of relevance or work product theory.  Please advise
  whether Debtors continue to withhold responsive documents on this ground,
  particularly in light of their requesting valuation documents that post-date
  October 2008 from Baupost Group, L.L.C. ("Baupost").  To the extent that
  Debtors are withholding internal valuation analyses on privilege or work
  product grounds, we ask that Debtors articulate why they believe their internal
  valuations are protected while Baupost's are not.

- **Request No. 17(ii)**.  Debtors have yet to produce a single document in
  response to this Request—which calls for the production of "any valuation
  methodologies that the [Debtors] have employed to value 'Loss,' as defined in
  an ISDA master agreement and covering any other bond-rate swap to which
  [Debtors] are or were a party"—despite its obvious relevance to these
  proceedings.  Moreover, the fact that Debtors have yet to even provide some
  basic information pertaining to this Request despite repeated demands by
  Giants Stadium over the last year and a half—the number of actual bond rate
  swaps that existed, how many were terminated pre-bankruptcy, and how many
  were terminated post-bankruptcy—calls Debtors' previous assertions of
  "burden" into serious question.

- **Other custodians and sources of data**.  Please confirm that Debtors have
  searched for responsive documents in (i) centralized files or informational
  databases (note that we have requested that Debtors produce full records of
  Lehman's profit and loss "PNL") and internal valuation history ("mark
  history" of the Bonds); and (ii) the custodial files of Kyle Ingram, Jeffrey
  Kirshenbaum, Julia Nand, Sean Teague, and Jacopo Visentini.  If Debtors
  have searched for such documents and such searches yielded no non-
  privileged documents, then please confirm.

- **Termination notices**.  Hard copies of the swap termination notices were hand
  delivered to Lehman Brothers Special Financing on September 18, 2008, and
  yet Debtors have not produced copies of those notices or any records of their
  receipt on that date by Lehman.  Please confirm whether you have searched
  hard copy files for responsive documents in relation to this matter.

---

[1]     Capitalized terms not otherwise defined herein shall be ascribed the same
meaning as in Mr. Schwartz's letters dated May 23, 2014 or the Subpoena, Case No. 08-
1555, ECF No. 31105.

Eric C. Hawkins, Esq.                                                                    -3-

In addition to those above deficiencies, a further review of Debtors' production to Giants Stadium shows that it is manifestly deficient in fundamental respects:

- **LBI documents**. Debtors have failed to produce numerous responsive documents that were produced voluntarily by Lehman Brothers Inc. ("LBI")—including document HHR_LBI_00001309. Furthermore, the lowest email in this document references an attachment, "killian.xls," which neither Debtors nor LBI has produced. This omission suggests that Debtors have failed to produce all responsive documents in the custodial files of agreed-upon custodians, including Gia Rys, Anatoly Zelikoff, Robert Taylor, and Gary Killian. Please (i) explain why this document, among others, have not been produced and address whether Debtors have failed to collect and maintain all responsive documents (as a result of document retention policies or otherwise, and about which Giants Stadium has not yet been informed), and (ii) produce the attachment referenced in HHR_LBI_00001309 and confirm that all responsive documents from the custodians mentioned in this paragraph have been produced.

- **Failure to produce attachments**. Debtors have failed to produce dozens of attachments corresponding to documents in their production. Set forth in Appendix A is a list of parent e-mails without corresponding attachments that Giants Stadium has identified in its review thus far. LBSF00357195, for example, is missing over ten attachments. Giants Stadium, of course, does not represent that this is a comprehensive list, nor should Giants Stadium be forced to identify such basic failures in Debtors' document collection and production efforts. Accordingly, Giants Stadium demands that Debtors (i) explain why these concededly responsive documents were not produced, and (ii) identify any additional responsive attachments that Debtors failed to produce. Given the imminent commencement of deposition discovery, Giants Stadium requests that Debtors provide this response and the additional responsive documents immediately, and in no event later than October 15, 2014.

- **Failure to produce documents indicating tracked changes**. In instances where Debtors have produced attachments, Giants Stadium has identified a number of documents—including LBSF00026952 and LBSF00027027—where the attachment does not reflect the tracked changes indicated in the underlying native file. That the document contains tracked changes is indicated, in these examples, from the content of the parent e-mail. Because Giants Stadium has only identified this deficiency in these limited circumstances, it is unable to identify the full scope of this additional defect in Debtors' production. Accordingly, Giants Stadium demands that Debtors

Eric C. Hawkins, Esq.                                                                           -4-

(i) confirm these documents originally lacked tracked changes, or (ii) re-produce any documents where tracked changes should have been shown.

- **Time stamps**.  In addition, we have observed that the time-stamps on the e-mails Debtors produced appear to have been processed incorrectly.  *See*, *e.g.*, LBSF00006065, a document that appears to be sent at 9:09 a.m., after the markets opened, but that purports on its face to have been sent at 8:09 a.m. Please advise precisely what time zone protocols have been imposed on this case, and confirm that they have been imposed consistently and correctly. Please provide an overlay to correct images and metadata for all affected documents.

                              *        *        *

With respect to the issues concerning Giants Stadium's production raised in your September 9 letter:

*First*, you continue to seek documents relating to the 2010 refinancing of the Bonds, despite the fact that the Swap Agreements define Loss to mean "an amount that party reasonably determines in good faith to be its total losses and costs . . . *as of the relevant Early Termination Date*," which was September 18, 2008.  Debtors previously justified this far-reaching request as part of an admitted "fishing expedition" into Giants Stadium's claims.  (*See*, *e.g.*, November 11, 2010 Letter from R. Slack to B. Clark; December 17, 2010 Letter from M. Firestone to B. Clark.)  That discoverability standard was wrong at the time Debtors invoked it but is certainly no longer applicable in light of Debtors' initiation of the Adversary Proceeding and the filing of their Objection to Giants Stadium's claims.  It is also well-settled that swaps are valued as close to the termination date as possible.  *See In re Enron Corp.*, 306 B.R. 465, 472 (Bankr. S.D.N.Y. 2004) (stating that the net amount due after a swap is terminated is calculated "at the time of termination").   Nevertheless, Giants Stadium produced the closing set of deal documents for the 2010 refinancing of the Bonds on August 3, 2010.

*Second*, subject to the terms of its objections and responses, Giants Stadium has searched for and produced all non-privileged communications responsive to Subpoena Request Nos. 3, 4, 6, and 7 relating to the purchase of the Claims.

*Third*, Giants Stadium has asserted privilege or work product as appropriate with respect to Subpoena Request Nos. 1, 2, 5, and 8 and has otherwise produced responsive documents (notwithstanding the fact that these Requests are no longer relevant in light of the Stipulation and Order dated August 22, 2014).

*Finally*, Debtors' assertion that Giants Stadium's August 3, 2010 production "does not include metadata" is simply untrue.  Giants Stadium has provided

Eric C. Hawkins, Esq.                                                                -5-

nearly all of the metadata fields in our August 3, 2010 production that Debtors are
currently requesting.[2]  By contrast, Debtors themselves have failed to provide several of
these metadata fields listed in Appendix A to your letter.  Giants Stadium is willing to
meet and confer regarding the production of additional metadata, provided that Debtors
are willing to produce additional fields of metadata not previously provided.[3]

Sincerely,

Bruce E. Clark / TCW

---

[2]      Specifically, Giants Stadium produced the following metadata fields:
BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, FROM, TO,
CC, BCC, DATESENT, TIMESENT, FILENAME, DATECREATED,
DATELASTMOD, TEXT.

[3]      Specifically, Debtors have not provided the following fields:  FILEPATH,
CONVERSATIONINDEX, DATERECEIVED, TIMERECEIVED, FILEEXTENSION.

## Appendix A: Parent E-mails with Missing Attachments

- LBSF00067603
- LBSF00112087
- LBSF00154944
- LBSF00154945
- LBSF00154947
- LBSF00154951
- LBSF00154952
- LBSF00154953
- LBSF00154954
- LBSF00311747
- LBSF00338971
- LBSF00339335
- LBSF00340795
- LBSF00342785
- LBSF00343167
- LBSF00343190
- LBSF00343216
- LBSF00357195
- LBSF00458788

# EXHIBIT G

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - x

4   In re:

5                                  08-13555(JMP)

6   LEHMAN BROTHERS HOLDINGS INC.,    (Jointly Administered)

7   et al.,

8              Debtors.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - x

10  In re:

11                                 08-01420(JMP)(SIPA)

12  LEHMAN BROTHERS INC.,

13             Debtor.

14  - - - - - - - - - - - - - - - - - - - - - - - - - - x

15  In re:

16                                 12-10063(JMP)

17  LEHMAN BROTHERS AUSTRALIA

18  LIMITED,

19             Debtor.

20  - - - - - - - - - - - - - - - - - - - - - - - - - - x

21

22

23

24

25

Page 2

1  LEHMAN BROTHERS HOLDINGS

2  INC., et al.,

3                    Plaintiffs,

4        v.                        12-01044(JMP)

5  CITIBANK, N.A., et al.,

6                    Defendants.

7  - - - - - - - - - - - - - - - - - - - - - - - - - x

8  LEHMAN BROTHERS HOLDINGS

9  INC., et al.,

10                    Plaintiffs,

11        v.                        13-01431(JMP)

12  DR HC TSCHIRA BETEILIGUNGS

13  GmbH & Co. KG,

14                    Defendants.

15  - - - - - - - - - - - - - - - - - - - - - - - - - x

16  FIRST BANK PUERTO RICO,

17                    Plaintiff,

18        v.                        10-04103(JMP)

19  BARCLAYS CAPITAL, INC.,

20                    Defendant.

21  - - - - - - - - - - - - - - - - - - - - - - - - - x

22                    U.S. Bankruptcy Court

23                    One Bowling Green

24                    New York, New York

25

1                    October 23, 2013

2                    10:04 AM

3

4    B E F O R E :

5    HON JAMES M. PECK

6    U.S. BANKRUPTCY JUDGE

7

8    Hearing re:  Motion of Baupost Group, LLC to Quash Debtors'

9    Subpoena Issued Under Federal Rule of Bankruptcy Procedure

10   2004 [ECF No. 38941]

11

12   Hearing re:  In re Lehman Brothers Australia Limited Status

13   Conference [Case No. 12-10063] – Status Conference

14

15   Hearing re:  Lehman Brothers Holdings Inc., et al. v.

16   Citibank, N.A., et al. [Adversary Case No. 12-01044] –

17   Motion Provisionally Allowing Claims

18

19   Hearing re:  Lehman Brothers Holdings Inc., et al. v. Dr. HC

20   Tschira Beteiligungs GmbH & Co KG [Adversary Case No. 13-

21   01431] – Pre-Trial Conference and Informal Rule 7007.1

22   Conference on Tschira's Motion for Protective Order

23

24   Hearing re:  FirstBank Puerto Rico v. Barclays Capital, Inc.

25   [Adversary Case No. 10-04103] – Motion for Civil Contempt

Page 4

1    Sanctions

2

3    Hearing re:  Motion of Fidelity National Title Insurance

4    Company to Compel Compliance with Requirements of Title

5    Insurance Policies [ECF No. 11513]

6

7    Hearing re:  Motion of Giants Stadium LLC for Leave to

8    Conduct Discovery of LBI Pursuant to Federal Rule of

9    Bankruptcy Procedure 2004 [ECF NO. 36874]

10

11   Hearing re:  Motion of Giants Stadium LLC for Authorization

12   to Issue Third-party Deposition Subpoenas Under Federal

13   Rules of Bankruptcy Procedure 2004 and 9016 [ECF No. 39898]

14

15   Hearing re:  Motion of FirstBank Puerto Rico for (1)

16   Reconsideration, Pursuant to Section 502(j) of the

17   Bankruptcy Code and Bankruptcy Rule 9024, of the SIPA

18   Trustee's Denial of FirstBank's Customer Claim, and (2)

19   Limited Intervention, Pursuant to Bankruptcy Rule 7024 and

20   Local Bankruptcy Rule 9014-1, in the Contested Matter

21   Concerning the Trustee's Determination of Certain Claims of

22   Lehman Brothers Holdings Inc. and Certain of its Affiliates

23   [LBI ECF No. 5197]

24

25   Transcribed by:  Dawn South & William J. Garling

Page 5

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorneys for the Debtors

4         767 Fifth Avenue

5         New York, NY 10153-0119

6

7    BY:  RICHARD W. SLACK, ESQ.

8         ALFREDO R. PEREZ, ESQ.

9

10   CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

11        Attorney for the Debtors

12        101 Park Avenue

13        New York, NY 10178-0061

14

15   BY:  TURNER P. SMITH, ESQ.

16

17   SULLIVAN & CROMWELL LLP

18        Attorney for Baupost

19        125 Broad Street

20        New York, NY 10004-2498

21

22   BY:  MATTHEW A. SCHWARTZ, ESQ.

23

24

25

Page 6

1    KIRKLAND & ELLIS LLP

2         Attorney for the Liquidators

3         300 North LaSalle Street

4         Chicago, IL 60654

5

6    BY:  JEFFREY W. GETTLEMAN, ESQ.

7

8    QUINN EMANUEL URQUHART & SULLIVAN, LLP

9         Attorneys for the Official Committee of Unsecured

10        Creditors

11        51 Madison Avenue, 22nd Floor

12        New York, NY 10010

13

14   BY:  SUSHELL KIRPALANI, ESQ.

15        JAMES C. TECCE, ESQ.

16

17   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

18        Attorneys for Citibank

19        1285 Avenue of the Americas

20        New York, NY 10019-6064

21

22   BY:  STEPHEN J. SHIMSHAK, ESQ.

23        CLAUDIA HAMMERMAN, ESQ.

24        REBECCA R. COHEN, ESQ.

25

Page 7

1    JONES DAY

2         Attorney for the Debtor in No. 4

3         222 East 41st Street

4         New York, NY 10017-6702

5

6    BY:  JAYANT W. TAMBE, ESQ.

7

8    DECHERT LLP

9         Attorneys for Defendants

10        1095 Avenue of the Americas

11        New York, NY 10036-6797

12

13   BY:  ALLAN BRILLIANT, ESQ.

14        DAVID A. KOTLER, ESQ.

15

16   CLEARY GOTTLIEB STEEN & HAMILTON LLP

17        Attorneys for Barclays

18        One Liberty Plaza

19        New York, NY 10006-1470

20

21   BY:  BOAZ S. MORAG, ESQ.

22        MARK E. MCDONALD, ESQ.

23        MATTHEW VANEK, ESQ.

24

25

**Page 8**

1    DICKSTEIN SHAPIRO LLP

2          1633 Broadway

3          New York, NY 10019-6708

4

5    BY:   JEFFREY A. MITCHELL, ESQ.

6          JUDITH R. COHEN, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S

 2              THE COURT:  Good morning, be seated, please.

 3              Mr. Slack, how are you?

 4              MR. SLACK:  Good morning, Your Honor.  The first

 5    matter on for the omnibus hearing is the motion by Baupost

 6    to quash the subpoena issued under 2004 by the debtors.  It

 7    is Baupost's motion so I'm going to let Mr. Schwartz take

 8    the lead here.

 9              THE COURT:  Okay.  I'm wondering if I should say

10    your motion to quash is denied now or after you make your

11    opening remarks.  I'm not inclined to grant your motion.

12              And I think we can accelerate this process greatly

13    by my noting that I see no substantial grounds for the

14    position you've taken.

15              MR. SCHWARTZ:  Your Honor, if I could have a

16    minute or two of your time.

17              THE COURT:  Yes, I'm letting you know right now

18    that you're climbing a cliff and you don't have the proper

19    equipment.

20              MR. SCHWARTZ:  That's fine, Your Honor, I'll find

21    a rock booster if I can.

22              The subpoena has been narrowed greatly.  First of

23    all it shouldn't be under Rule 2004 anymore, it should be

24    under 26.  The debtors have just yesterday filed their

25    motion to be allowed to file their adversary proceeding
```

1    under seal.

2           THE COURT:  I know that's about to be filed.

3           MR. SCHWARTZ:  Your Honor, what this motion has

4    been narrowed down to is their request for Baupost to

5    collect all of its documents post acquisition of rights in

6    the claims, go through those documents, find which documents

7    relate to the amended claim that the Giants put in in

8    December, and then go through those documents, categorize

9    them, all in a privilege log, because nowhere in their

10    motion do they contest that all of these documents are

11    covered by work product and privilege.

12           THE COURT:  How on earth do we know that really?

13    Why should I accept your bald assertion that all the

14    documents are in fact work product or otherwise privileged

15    unless and until you've actually done the work to search it

16    out?  I refuse to accept that bald assertion and so you

17    can't make that as part of your argument.

18           MR. SCHWARTZ:  Your Honor, I would just say two

19    things.

20           First of all this is the exact same assertion and

21    position that the debtors have taken with regards to all of

22    their post bankruptcy valuation documents.

23           THE COURT:  In that case it may come back to bite

24    them.

25           MR. SCHWARTZ:  Okay, Your Honor, as long as

Page 11

1    there's -- as long as there's sort of an even hand in this

2    across the parties I would understand the Court's position

3    on it.

4            They haven't contested at all that these documents

5    are all done in the midst of a litigation.  They're all

6    under the supervision of attorneys and they're all for

7    purposes of valuation, which is classic attorney work

8    product, Your Honor.  The cases are fairly clear on that.

9            We've heard absolutely no objection from the

10   debtors to that analysis of the law.  All they've said is we

11   want that massive privilege log, but these documents should

12   be prima facie protected by the attorney work product, and

13   it shouldn't be -- it shouldn't be the situation where

14   parties in the midst of litigation have a continuing

15   obligation to just put on a privilege log every single time

16   a new email is generated or a new document is generated for

17   the purposes of valuing their claims, you know, and turn

18   that over to the other side.  I mean it seems sort of the

19   classic definition of a harassing subpoena to us.

20           THE COURT:  Well, I don't know that there is a

21   classic definition of a harassing subpoena in the context of

22   a valuation dispute in which a claim jumps from

23   approximately 300 million to approximately 600 million.

24           And to the extent that your client has knowledge

25   concerning that valuation shift I think you should be

Page 12

1   turning over whatever you have that's non-privileged with

2   respect to that.

3          And since I reject the notion that every single

4   scrap of paper associated with the subpoena necessarily is

5   privileged and that all this exercise would include would be

6   creation of a voluminous and burdensome privilege log, I

7   reject the notion that you can come in and prevail with

8   respect to a motion to quash the subpoena.

9          Now there may be some other issues here unrelated

10  to your motion to quash, including what's sauce for the

11  goose being sauce for the gander in terms of issues of

12  discovery and relative privilege, but that's to be discussed

13  during compliance, not at a time when you're seeking what

14  amounts to a preemptive bar to 2004 discovery.

15         There's another related question, which is whether

16  2004 discovery will continue after the commencement of the

17  Giant Stadium litigation.

18         My recollection of the discovery protocol is that

19  discovery which has been initiated before the commencement

20  of litigation continues unabated.  I can be corrected, but

21  that's my recollection of it.

22         MR. SCHWARTZ:  I think that's correct, Your Honor,

23  and I think with moving into the adversary proceedings if

24  Your Honor recalls the reason you allowed Giant Stadium to

25  take rule 2004 discovery of the debtors, as Your Honor was

1   highly skeptical that this claim would not be objected to or

2   that debtors would not be filing an adversary proceeding.

3          THE COURT:  I remember, it was about a year ago.

4   I also remember that the Giant Stadium litigation is

5   particularly notable in the portfolio of Lehman-related

6   litigation for being the most facetious in terms of

7   discovery, and so you walk into that particular buzz saw.

8   You are simply adding fuel to that fire, and that's why

9   you're losing.

10          MR. SCHWARTZ:  Understood, Your Honor.  We will

11   probably be making a motion to compel the debtors to produce

12   the similar privilege log that we will be producing to them.

13          THE COURT:  You can predict whatever motion

14   practice you wish to predict and you can either do it or not

15   do it, I don't care.

16          MR. SCHWARTZ:  Thank you, Your Honor.  Thank you

17   for your time.

18          THE COURT:  Mr. Slack, what do you have to say for

19      yourself?

20          MR. SLACK:  Not a lot, Your Honor.

21          What I would like to say is that I think when the

22   issue comes up the position of the debtors here is that we

23   have produced valuations and -- that are not privileged.  So

24   they have valuations from the debtors.

25          There are certain valuations that we have that are

Page 14

1    privileged that were done in connection with the bankruptcy,

2    and I think that at the time what you will see, Your Honor,

3    is that our point on work product is that work product has

4    to be done solely for the litigation.

5           What Giant Stadium did was they did calculations

6    that were required, as Your Honor knows, under the swap

7    agreements and those -- you can't cloak those with privilege

8    just because they then become part of a proof of claim,

9    which is what they want to do.

10          And so what I think you're going to see, Your

11   Honor, is there are some stark differences between the way

12   Baupost and Giant Stadium has acted and the debtors have

13   acted here when the appropriate time comes.

14          THE COURT:  Okay.  Mr. Slack, before you sit down,

15   what happens to this discovery after commencement of the

16   adversary, which is I guess we're within hours or days of

17   the commencement of your adversary?  How does this current

18   motion practice play into a reasonable discovery protocol

19   for that litigation?

20          MR. SLACK:  Your Honor, I think what the parties

21   have essentially intended with the protocol is that we've

22   collected I think the vast majority of the documents on both

23   sides.  As Your Honor knows you gave Giant Stadium the

24   opportunity to take 2004 discovery and the debtors have

25   produced more than 400,000 pages of documents.  So there's

Page 15

1    been an exchange of most of the information.

2            I think that the 2004 discovery that's outstanding

3    is simply documents at this point, which are going to have

4    to be collected anyhow in connection with the litigation.

5            So I think what our position is, is that the

6    subpoenas out there should continue rather than issuing new

7    subpoenas and starting anew.

8            And as for the depositions I think both sides have

9    agreed to meet and confer once the adversary is filed in the

10   next hours or days and work out a discovery schedule for

11   depositions in the remainder of the case, and I'm optimistic

12   that we'll be able to do that.

13           THE COURT:  Okay.  I know that there was a failed

14   mediation.  Does the exchange of documents that you've

15   referred to make it anymore likely that if the parties were

16   to renew their efforts to work this out consensually before

17   incurring significant additional expense, is there any

18   prospect that that might be productive?

19           MR. SLACK:  I'm not sure I know how to answer that

20   other than to say that unlike, you know, some counterparties

21   there, because Baupost is well known to the estate and has a

22   number of connections so to speak because of their holdings

23   as a creditor, I think there are lines of communications

24   that are open.

25           So what I can tell you is, is that we are happy to

Page 16

```
 1   reach out and see if there is any -- after we file the

 2   complaint -- any renewed interest in resolving it.  And if

 3   there is on the other side, you know, we will be willing to

 4   do that as well.

 5              THE COURT:  Okay.  Fine.  You can submit an

 6   appropriate order.

 7              MR. SLACK:  Thank you, Your Honor.  Can I be

 8   excused, Your Honor?

 9              THE COURT:  Yes, everybody who's associated with

10   this matter can be excused.

11              MR. PEREZ:  Good morning, Your Honor, Alfredo

12   Perez.

13              I believe the next matter is the status conference

14   on Lehman Brothers Australia.

15              THE COURT:  Good morning.

16              MR. GETTLEMAN:  Good morning, Your Honor, Jeffrey

17   Gettleman representing the liquidators of Lehman Brothers

18   Australia.

19              Your Honor, before I present the status report one

20   of the liquidators happens to be in the courtroom today, I'd

21   like your permission to introduce him to you.

22              THE COURT:  I'd be very pleased to have him come

23   forward.

24              MR. GETTLEMAN:  Mr. Marcus Ayres.

25              MR. AYRES:  Good morning, Your Honor.
```