Form 210A (10/06)

# United States Bankruptcy Court
## Southern District Of New York

In re Lehman Brothers Holdings Inc., et al.,

Case No. 08-13555 (JMP)
(Jointly Administered)

### TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| Name of Transferee | Name of Transferor |
|---|---|
| Deutsche Bank AG, London Branch | Gruss Global Investors Master Fund, Ltd |

Name and Address where notices to transferee should be sent:

Deutsche Bank AG, London Branch
Winchester House, 1 Great Winchester Street
London EC2N 2DB
Tel: +44 20 7547 3330
Fax: +44 113 336 2010
Attention: Simon Glennie
E-mail: simon.glennie@db.com

Court Claim # (if known): 62824

Amount of Claim (transferred):

USD 13,440,500.00 in principal amount of ISIN XS0265524438 (plus all interest, costs and fees relating to this claim)
Allowed Claim Amount being transferred: USD 13,474,179.65

Date Claim Filed: November 2, 2009

Tel: N/A

Last Four Digits of Acct. #: N/A

Last Four Digits of Acct. #: N/A

Name and Address where transferee payments should be sent (if different from above):

Tel: +44 20 7547 2400
Last Four Digits of Acct #: N/A

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____   Date: _17 NOVEMBER 2014_

Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

Confidential

| Simon Glennie | Jamie Foote |
|---|---|
| Vice President | Vice President |

*PARTIAL Transfer of LBHI Claim # 62824*
*PROGRAM SECURITY*

### AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
### LEHMAN PROGRAM SECURITY

TO:   THE DEBTOR AND THE BANKRUPTCY COURT

1.   For value received, the adequacy and sufficiency of which are hereby acknowledged, **Gruss Global Investors Master Fund, Ltd** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **Deutsche Bank AG, London Branch** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the applicable percentage specified in Schedule 1 hereto, in Seller's right, title and interest in and to Proof of Claim Number 62824 filed by or on behalf of **Seller's predecessor-in-title** (a copy of which is attached at Schedule 2 hereto) (the "Proof of Claim") as is specified in Schedule 1 hereto (the "Purchased Portion") against Lehman Brothers Holdings, Inc., as guarantor of the Purchased Security (as defined below) and debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Portion, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Portion or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Portion, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Portion, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Portion, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Portion, but only to the extent related to the Purchased Portion, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Portion and specified in Schedule 1 attached hereto.

2.   Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Portion specified in Schedule 1 attached hereto; (f) the Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors; ; (g) the Transferred Claims are Class 5 Senior Third Party Guarantee Claims; and (h) on April 17, 2012 Seller or Seller's predecessor-in-title received  the first distribution relating to the Transferred Claims totaling the amount of $ 486,313.99 (the "**First LBHI Distribution**"), on October 1, 2012 Seller or Seller's predecessor-in-title received the second distribution relating to the Transferred Claims totaling the amount of $328,174.28 (the "**Second LBHI Distribution**"), on April 4, 2013 Seller or Seller's predecessor-in-title received the third distribution relating to the Transferred Claims totaling the amount of $414,508.20 (the "**Third LBHI Distribution**"), on October 3, 2013 Seller or Seller's predecessor-in-title received the fourth distribution relating to the Transferred Claims totaling the amount of $491,446.04 (the "**Fourth LBHI Distribution**"), on April 3, 2014 Seller or Seller's predecessor-in-title received the fifth distribution relating to the Transferred Claims totaling the amount of $533,824.90 (the "**Fifth LBHI Distribution**"), on October 2, 2014 Seller or Seller's predecessor-in-title received the sixth distribution relating to the Transferred Claims totaling the amount of $400,635.19 (the "**Sixth LBHI Distribution**") and Seller or Seller's predecessor-in-title has received a distribution paid on or about May 8, 2013 in the amount of $1,602,939.86 (the "**First Treasury BV Distribution**"), a distribution paid on or about October 28, 2013 in the amount of $652,334.67 (the "**Second Treasury BV Distribution**") a distribution paid on or about April 28, 2014 in the amount of $706,298.28 (the "**Third Treasury BV Distribution**") and a distribution paid

on or about October 28, 2014 in the amount of $540,939.80 (the "**Fourth Treasury BV Distribution**") by Lehman Brothers Treasury Co. B.V., with respect to the securities relating to the Transferred Claims.

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims.  Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim.  Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller.  Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.      Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser.  Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.      Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.      Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).  Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

Confidential

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this _17_ day of November 2014.

**GRUSS GLOBAL INVESTORS MASTER FUND, LTD**
By: Gruss Capital Management LP
Its Investment Manager
By: Gruss Capital Management LLC
Its General Partner

By: _____

Name: MICHAEL JULIANO

Title: AUTHORIZED SIGNATURE

c/o Gruss Capital Management LP
510 Madison Ave
New York NY 10022

**DEUTSCHE BANK AG, LONDON BRANCH**

By: _____
Name:
Title:

Winchester House
1, Great Winchester Street
London EC2N 2DB
ENGLAND
Attn: Michael Sutton

Simon Glennie
Vice President

Jamie Foote
Vice President

Schedule 1

Transferred Claims

Purchased Portion

53.76200 % of the claim that is referenced in the Proof of Claim (a copy of which is attached at Schedule 2) and relating to the Purchased Security described below (plus all interest, costs and fees relating to this claim).

Lehman Programs Securities to which Transfer Relates

| Description of Security | ISIN/CUSIP | Blocking Number | Issuer | Guarantor | Principal/Notional Amount | Maturity | Allowed Amount (in USD) |
|---|---|---|---|---|---|---|---|
| MTN4896 | XS0265524438 | 6055347 | Lehman Brothers Treasury Co. BV | Lehman Brothers Holdings, Inc. | USD 13,440,500.00 | 8/15/2009 | USD 13,474,179.65 |

ConfidentialSchedule 1–1

Schedule 2

Copy of Proof of Claim 62824

ConfidentialSchedule 1-1

**United States Bankruptcy Court/Southern District of New York**

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# LEHMAN SECURITIES PROGRAMS
## PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)      0000062824

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

---

| Name and address of Creditor (and name and address where notices should be sent if different from Creditor) | |
|---|---|
| Venor Capital Master Fund Ltd. c/o Venor Capital Management LP Times Square Tower 7 Times Square, Suite 3505 New York, NY 10036 Attn: David S. Zemel, Benjamin Hockenberg and Harlan Cherniak | ☐ Check this box to indicate that this claim amends a previously filed claim. **Court Claim Number:** _____ (If known) Filed on: _____ |

| Telephone number: | David S. Zemel: | (212) 703-2132 | Email Address: | dzemel@venorcapital.com |
|---|---|---|---|---|
| | Benjamin Hockenberg: | (212) 703-2125 | | bhockenberg@venorcapital.com |
| | Harlan Cherniak: | (212) 703-2136 | | Harlan.Cherniak@venorcapital.com |

| Name and address where payment should be sent (if different from above) | |
|---|---|
| Telephone number: _____  Email Address: _____ | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

**Amount of Claim: $_____ See Exhibit A, attached _____ (Required)**

☒ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN): _____ XS0265524438 _____ (Required)**

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:**

**Euroclear Blocking Number: 6055347 _____ (Required)**

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:**

**Euroclear Account Number: 92892 _____ (Required)**

| 5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions. | FOR COURT USE ONLY |
|---|---|
| **Date.** 10/29/09  **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  Michael Wartell, Authorized Signatory | **FILED / RECEIVED** NOV 0 2 2009 EPIQ BANKRUPTCY SOLUTIONS, LLC 3571 |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

## EXHIBIT A

## ADDENDUM TO
## PROOF OF CLAIM OF VENOR CAPITAL MASTER FUND LTD.

1.     This Proof of Claim is, and shall be deemed to be, filed, submitted and asserted by Venor Capital Master Fund Ltd. ("Venor") against Lehman Brothers Holdings Inc. ("LBHI") and its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in each of their respective chapter 11 cases. Venor is filing this Proof of Claim in order to set forth the aggregate claims of Venor relating to Lehman Programs Securities against LBHI and the Debtors, as more fully described below.

2.     Venor is a holder of $25,000,000.00 principal amount of certain notes (the "Notes") issued by Lehman Brothers Treasury Co. B.V. ("LBT"), as identified on the "Lehman Programs Securities" list. The Notes have a maturity date in August 2009.[1] A copy of the Final Terms of the Notes, dated as of August 24, 2006, is attached hereto as Exhibit B.

3.     Venor asserts this claim against the Debtors for any and all prepetition and postpetition amounts and liabilities in respect of the Notes and any other documents related thereto, including, without limitation, any and all principal, premiums, interest, additional interest, periodic payments, coupon payments, fees, costs, expenses, attorneys' and professionals' fees and disbursements, any final redemption amounts, early redemption amounts, any other amounts owed, and any and all indemnification obligations owed under the Notes (as applicable), and to the extent allowed by law.

4.     Pursuant to that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005 (the "2005 Guarantee"), a copy of which

---

[1] The "Maturity Date" of the Notes is the Interest Payment Date falling in or nearest to August 2009. Pursuant to the Notes, the "Interest Payment Date(s)" are February 15, May 15, August 15 and November 15 in each year from and including November 15, 2006 and including the Maturity Date.

1

is attached hereto as Exhibit C, LBHI has guaranteed the payment of all liabilities, obligations and commitments of certain subsidiaries, including LBT.  Pursuant to that certain Guarantee Agreement in respect of LBT, dated July 24, 2008 (the "2008 Guarantee"), a copy of which is attached hereto as Exhibit D, LBHI unconditionally and irrevocably guaranteed the performance of all of LBT's obligations in the Notes, including, without limitation, the payment of principal and interest, together with all other sums payable by LBT under the Notes. The 2008 Guarantee extends to the ultimate balance of the Notes notwithstanding any settlement of account or other matter or other thing whatsoever and remains in full force and effect until all obligations have been irrevocably paid and satisfied in full.  Venor thus asserts its claim with respect to the Notes against LBHI on the basis of the 2005 Guarantee, the 2008 Guarantee, and any other guarantees, contractual or otherwise, by LBHI for the benefit of LBT.

5.      As certain of the damages described above are contingent, unliquidated and likely to continue, the exact amount of Venor's total claim as set forth herein is unknown at this time. Venor reserves the right to amend or supplement this claim from time to time hereafter as it may deem necessary and proper.

6.      Venor reserves all of its rights and defenses, whether under title 11 of the United States Code or other applicable law, as to any claims that may be asserted against Venor by LBHI and the Debtors, including, without limitation, any rights of setoff and/or recoupment not expressly observed above.  Venor reserves the right to file additional proofs of claim for additional claims which may be based on the same or additional documents.  Venor reserves the right to file additional proofs of claim for administrative expenses or other claims entitled to priority. Venor reserves the right to file claims for the payment of interest (subject to applicable law) and for the reimbursement of all reasonable expenses (including attorneys' fees and

collection fees) incurred by Venor in connection with the claims described herein. Venor further reserves all of its rights as against the other debtors in these Chapter 11 proceedings and against other Lehman entities in any other Lehman proceeding in the United States or overseas.

     7.     This Proof of Claim is filed under the compulsion of the bar date set in this case and is filed to protect Venor from forfeiture of its claim by reason of said bar date. The filing of this Proof of Claim shall not constitute: (a) a waiver, release, or limitation of Venor's rights against any person, entity or property (including, without limitation, LBHI, the Debtors, or any other person or entity that is or may become a debtor in a case pending in this Court) in which Venor has a security interest or lien, (b) a consent by Venor to the jurisdiction or venue of this Court or any other court with respect to the proceedings, if any, commenced in any case against or otherwise involving Venor with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving Venor, (c) a waiver, release, or limitation of the right of Venor to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the U.S. Constitution, (d) a consent by Venor to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise, (e) a waiver, release, or limitation of Venor's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a U.S. District Court Judge, (f) a waiver of the right to move to withdraw the reference with

respect to the subject matter of this claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Venor, (g) a consent to the termination of LBHI or the Debtors' liability to Venor by any particular court, including, without limitation, this Court, (h) a consent to the final determination or adjudication of any claim or right pursuant to 28 U.S.C. § 157(c), or (i) an election of remedies. No judgment has been rendered on this claim. This claim is not subject to any setoff or counterclaim rights by LBHI or the Debtors.

8.   Copies of any documents that underlie or evidence the obligations of the Debtors to Venor that are not attached hereto are available upon written request to Venor.

9.   All notices and distributions in respect of this claim should be forwarded to: Venor Capital Master Fund Ltd., c/o Venor Capital Management LP, Times Square Tower, 7 Times Square, Suite 3505, New York, NY 10036, Attn: David S. Zemel, Benjamin Hockenberg and Harlan Cherniak.

## EXHIBIT B

### FINAL TERMS OF THE NOTES

*EXECUTION COPY*

Final Terms dated 24 August 2006

## LEHMAN BROTHERS TREASURY CO. B.V.
### Issue of U.S.$55,000,000 Floating Rate Notes due August 2009

**Guaranteed by Lehman Brothers Holdings Inc.**
under the U.S.$60,000,000,000
Euro Medium-Term Note Program

### PART A – CONTRACTUAL TERMS

Terms used herein shall be deemed to be defined as such for the purposes of the Terms and Conditions of the Notes (the "**Conditions**") set forth in the Base Prospectus dated August 9, 2006 which constitutes a base prospectus for the purposes of the Prospectus Directive (*Directive 2003/71/EC*) (the "**Prospectus Directive**"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus.

Full information on the Issuer and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus. The Base Prospectus is available for viewing, and copies may be obtained from, the offices of the Irish Listing Agent.

| | | | |
|---|---|---|---|
| 1. | (i) | Issuer: | Lehman Brothers Treasury Co. BV. |
| | (ii) | Guarantor: | Lehman Brothers Holdings Inc. |
| 2. | (i) | Series Number: | 4896 |
| | (ii) | Tranche Number: | 1 |
| 3. | | Specified Currency or Currencies: | U.S.$ |
| 4. | | Aggregate Nominal Amount: | |
| | (i) | Series | U.S.$55,000,000 |
| | (ii) | Tranche: | U.S.$55,000,000 |
| 5. | | Issue Price: | 100.00 per cent. of the Aggregate Nominal Amount |
| 6. | | Specified Denominations and Units: | |
| | (i) | Specified Denominations: | U.S.$100,000 |
| | (ii) | Trading in Units: | Not Applicable |
| 7. | (i) | Issue Date: | 24 August, 2006 |
| | (ii) | Interest Commencement Date: | 24 August, 2006 |

- 1 -

| 8. | Maturity Date: | | Interest Payment Date falling in or nearest to August 2009 |
|---|---|---|---|
| 9. | Interest Basis: | | USD LIBOR +0.10 per cent. Floating Rate (further particulars specified below) |
| 10. | Redemption/Payment Basis | | Redemption at par |
| 11. | Change of Interest or Redemption/ Payment Basis: | | Not Applicable |
| 12. | Put/Call Options: | | Not Applicable |
| 13. | (i) | Status of the Notes: | Senior Notes |
| | (ii) | Status of the Guarantee: | Senior Guarantee |
| 14. | Method of distribution: | | Non-syndicated |

## PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE

| 15. | Fixed Rate Note Provisions | | Not Applicable |
|---|---|---|---|
| 16. | **Floating Rate Note Provisions** | | Applicable |
| | (i) | Interest Period(s)/Interest Payment Date(s): | 15 February, 15 May, 15 August and 15 November in each year from and including 15 November 2006 to and including the Maturity Date. |
| | (ii) | Business Day Convention: | Modified Following Business Day Convention |
| | (iii) | Additional Business Centre(s) for interest accrual only (Condition 3(b)(B)): | Not applicable |
| | (iv) | Manner in which the Rate(s) of Interest is/are to be determined: | Screen Rate Determination |
| | (v) | Party responsible for calculating the Rate(s) of Interest and Interest Amount(s) (if not the Fiscal Agent): | Not Applicable |
| | (vi) | Screen Rate Determination: | |
| | | – Reference Rate: | *LIBOR* |
| | | – Interest Determination Date(s): | Second London business day prior to the start of each Interest Period |

|          |        | – Relevant Screen Page: | Telerate page 3750 |
|----------|--------|-------------------------|--------------------|
|          |        | – Relevant Time: | 11.00 a.m. London time |
|          |        | – Relevant Financial Centre: | London |
|          | (vii)  | ISDA Determination: | Not Applicable |
|          | (i)    | Margin(s): | +0.10 per cent. per annum |
|          | (ii)   | Multiplier: | Not Applicable |
|          | (iii)  | Minimum Interest Rate: | Not Applicable |
|          | (iv)   | Maximum Interest Rate: | Not Applicable |
|          | (v)    | Day Count Fraction: | Actual/360 |
|          | (vi)   | Fall back provisions, rounding provisions, denominator and any other terms relating to the method of calculating interest on Floating Rate Notes, if different from those set out in the Conditions: | Not Applicable |
| 17.      | **Zero Coupon Note Provisions** | | Not Applicable |
| 18.      | **Index-Linked Interest Note/Other Variable-Linked Interest Note Provisions** | | Not Applicable |
| 19.      | **Dual Currency Note Provisions** | | Not Applicable |

**PROVISIONS RELATING TO REDEMPTION**

| 20. | **Call Option** | Not Applicable |
|-----|-----------------|----------------|
| 21. | **Put Option** | Not Applicable |
| 22. | Final Redemption Amount of each Note: | U.S.$100,000 per Note of U.S.$100,000 Specified Denomination |
| 23. | **Early Redemption Amount of each Note** | |
|     | Early Redemption Amount(s) of each Note payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in the Conditions): | Not Applicable |

**GENERAL PROVISIONS APPLICABLE TO THE NOTES**

- 3 -

24. Form of Notes:

Bearer form. Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form. Interests in a permanent global Note will be exchangeable for definitive Notes in bearer form in the limited circumstances described in the permanent global Note.

New Global Note Form:

Not Applicable

25. Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature):

Not Applicable

26. Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment:

Not Applicable

27. Details relating to Instalment Notes: Instalment Amounts and Instalment Dates:

Not Applicable

28. Details relating to Extendible Notes:

Not Applicable

29. Details relating to Renewable Notes:

Not Applicable

30. Redenomination, renominalisation and reconventioning provisions:

Not Applicable

31. Consolidation provisions:

Not Applicable

32. Other final terms:

Not Applicable

## DISTRIBUTION

33. (i) If syndicated, names and addresses of Managers and underwriting commitments:

Not Applicable

(ii) Date of Subscription Agreement:

Not Applicable

(iii) Stabilizing Manager (if any):

Not Applicable

34. If non-syndicated, name and address of Dealer:

Lehman Brothers International (Europe)

35. Total commission and concession:

Not Applicable

36.    Selling restrictions:

    (i)    Netherlands Selling Restrictions:    Not Applicable

    (ii)    Additional Selling Restrictions:    Not Applicable

## LISTING AND ADMISSION TO TRADING APPLICATION

These Final Terms comprise the final terms required to list and have admitted to trading the issue of Notes described herein pursuant to the U.S.$60,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.

## RESPONSIBILITY

The Issuer accepts responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer:

By: ...................................................

    *Duly authorised*

4896

- 5 -

## PART B – OTHER INFORMATION

1. **LISTING**

   (i)    Listing:                              The Irish Stock Exchange

   (ii)   Admission to Trading:                 Application has been made for the Notes
                                                to be admitted to listing and trading on the
                                                Official List and the regulated market of
                                                the Irish Stock Exchange

   (iii) Cost of admission to trading           €500

2. **RATINGS**

   Ratings:                                     Issuance of senior long term debt under the
                                                programme has been rated as follows:

                                                Standard & Poor's      A+
                                                Moodys                 A1
                                                Fitch                  A+

3. **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

   Save as discussed in "Subscription and Sale", so far as the Issuer is aware, no person
   involved in the offer of the Notes has an interest material to the offer.

4. **OPERATIONAL INFORMATION**

   ISIN Code:                                   XS0265524438

   Common Code:                                 026552443

   New Global Note intended to be held in a     Not Applicable
   manner which would allow Eurosystem
   eligibility:

   Any clearing system(s) other than            Not Applicable
   Euroclear and Clearstream, Luxembourg
   and the relevant identification number(s):

   Delivery:                                    Delivery against payment

   Names and addresses of Additional Paying     Not Applicable
   Agent(s) (if any):



## EXHIBIT C

**2005 GUARANTEE**

# UNANIMOUS WRITTEN CONSENT OF THE

## EXECUTIVE COMMITTEE OF THE

## BOARD OF DIRECTORS OF

## LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

WHEREAS, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

WHEREAS, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

WHEREAS, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

WHEREAS, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

WHEREAS, Management wishes to establish additional Guaranteed Subsidiaries,

WHEREAS, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

WHEREAS, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

NOW THEREFORE BE IT,

06-09-95   11:31   JDM INVESTMENTS                    ID=2023380294           P.02

        RESOLVED, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

        RESOLVED, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

        RESOLVED, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

        RESOLVED, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof, and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

        FURTHER RESOLVED, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 9, 2005

_____            _____
Richard S. Fuld, Jr.                John D. Macomber

                                2

06-09-85   09:40          RECEIVED FROM:212 526 0339          P.04

06/08/2005    15:41    LEHMAN → 916467582653                                    NO.504    003

Schedule A
to LBHI Unanimous Written Consent
dated June 9 , 2005

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

3

## EXHIBIT D

**2008 GUARANTEE**

**C L I F F O R D**
**C H A N C E**

CLIFFORD CHANCE LLP

**EXECUTION COPY**

**LEHMAN BROTHERS HOLDINGS INC.**
**LEHMAN BROTHERS TREASURY CO. B.V.**
**LEHMAN BROTHERS BANKHAUS AG**

**U.S.$100,000,000,000**
**EURO MEDIUM-TERM NOTE PROGRAM**

*Unconditionally and irrevocably guaranteed, as to Notes to be issued by
Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, by*

**LEHMAN BROTHERS HOLDINGS INC.**

---

**GUARANTEE AGREEMENT**

*in respect of*

**LEHMAN BROTHERS TREASURY CO. B.V.**

---

24 July 2008

# CONTENTS

| Clause | | Page |
|---|---|---|
| 1. | Definitions | 2 |
| 2. | Guarantee | 3 |
| 3. | Status | 4 |
| 4. | Continuing Guarantee | 5 |
| 5. | Reinstatement | 5 |
| 6. | Immediate Recourse | 5 |
| 7. | Covenants | 5 |
| 8. | Deposit Of Guarantee | 5 |
| 9. | Stamp Duties | 5 |
| 10. | Partial Invalidity | 6 |
| 11. | Notices | 6 |
| 12. | Governing Law | 6 |

**THIS GUARANTEE AGREEMENT** is made as of 24 July 2008

BY

(1)    **LEHMAN BROTHERS HOLDINGS INC.** (the "**Guarantor**")

**IN FAVOUR OF**

(2)    **HOLDERS** (as defined below); and

(3)    **THE ACCOUNTHOLDERS** (as defined below);

**WHEREAS**

(A)    **LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS TREASURY CO. B.V.** and **LEHMAN BROTHERS BANKHAUS AG** (each an "**Issuer**" and together the "**Issuers**") have established a Program (the "**Program**") for the issuance of medium-term notes (the "**Notes**"). In connection with the Program the Issuers have entered into an Amended and Restated Fiscal Agency Agreement dated 24 July 2008 (as supplemented and amended from time to time, the "**Fiscal Agency Agreement**") with the Bank of New York Mellon, acting through its London Branch, as Fiscal Agent, the Bank of New York Mellon, acting through its New York Branch, as Registrar and the other parties referred to therein. Notes in bearer form may be represented by (in the case of Issuers other than Lehman Brothers Holdings Inc.) a permanent global Note (the "**Permanent Global Note**") or by a temporary global Note (the "**Temporary Global Note**") exchangeable in accordance with its terms for a Permanent Global Note or, as the case may be, definitive notes in bearer form ("**Definitive Notes**") and/or registered Notes ("**Registered Notes**") represented by definitive Notes in registered form ("**Definitive Registered Notes**"), global Notes in registered form ("**Global Registered Notes**") or Notes in registered uncertified form. Permanent Global Notes are, in accordance with their respective terms, exchangeable for Definitive Notes. Registered Notes may be represented initially by Definitive Registered Notes and/or Global Registered Notes. Global Registered Notes, are themselves exchangeable, in accordance with their terms, for Definitive Registered Notes. References herein to "**Global Notes**" shall be to Permanent Global Notes, Temporary Global Notes and Global Registered Notes. A Global Note will be delivered to a depositary or a common depositary or a common safekeeper or a custodian, as the case may be, for any one or more of the Clearing Systems (as defined below) for credit to such securities clearing (or any other) account or accounts with any Clearing System as may be determined by the terms and conditions and operating procedures or management regulations of the relevant Clearing System with its respective participants and/or accountholders. Notes denominated in Australian dollars may be issued in the domestic Australian capital markets ("**Australian Domestic Notes**") and Notes denominated in New Zealand dollars that may be cleared through the Austraclear New Zealand System ("**New Zealand Domestic Notes**") may be issued by Lehman Brothers Treasury Co. B.V. ("**LBTCBV**"), in each case pursuant to a deed poll to be executed by LBTCBV (the "**Deed Poll**"), and such Australian Domestic Notes and New Zealand Domestic Notes will be issued in registered, uncertificated and dematerialised book-entry form and take the form of entries on a register to be

maintained by an Australian or New Zealand registrar, as applicable, to be appointed by LBTCBV.

(B)    The Guarantor has agreed to guarantee irrevocably the payment of principal and interest together with all other sums payable by LBTCBV under the Notes issued by LBTCBV (the "**Guaranteed Issuer**") and to guarantee irrevocably the performance by the Guaranteed Issuer of its obligations under the Deed of Covenant, dated 24 July 2008, by the Guaranteed Issuer in favour of the parties identified therein (as supplemented, amended or replaced from time to time, the "**Deed of Covenant**") and the performance by the Guaranteed Issuer of its obligations under the Deed Poll.

**NOW THIS GUARANTEE WITNESSES** as follows:

1.    **DEFINITIONS**

1.1    In this Guarantee the following words and expressions shall have the following meanings:

"**Accountholder**" shall bear the meaning ascribed thereto in the Deed of Covenant in respect of Guaranteed Notes;

"**Clearing System**" means each of Euroclear, Clearstream, Luxembourg, DTC and any other clearing system specified in the relevant Final Terms;

"**Conditions**" means the terms and conditions of the relevant Notes, as the same may be modified or supplemented in accordance with the terms thereof, and any reference to a numbered "**Condition**" is to the correspondingly numbered provision thereof;

"**DTC**" means The Depositary Trust Company;

"**Guaranteed Note**" shall mean a Note issued by the Guaranteed Issuer (including an Australian Domestic Note and a New Zealand Domestic Note) and shall include any related Coupon, Talon or Receipt;

"**Holder**" shall bear the meaning ascribed thereto in the Conditions, in respect of any Guaranteed Note;

"**Relevant Date**" means either (i) the date on which payment of the relevant Note first becomes due or (ii) if the full amount of the moneys payable has not been received by the Fiscal Agent (or any other paying agent in respect of the relevant Note) on or prior to such due date, the date on which all moneys then due for payment shall have been so received and notice to that effect shall have been duly given to the Holders or Accountholders; and

"**this Guarantee**" shall mean this Guarantee Agreement as amended or supplemented from time to time.

1.2    Headings used in this Guarantee are for each of reference only and shall not affect its construction.

1.3    Unless otherwise defined herein, terms defined in the Conditions have the same respective meanings when used in this Guarantee.

2.    **GUARANTEE**

2.1   The Guarantor hereby irrevocably and unconditionally guarantees to the Holders and the Accountholders the performance by the Guaranteed Issuer of all its obligations pursuant to the Conditions of the Notes including without limitation:

   (a)   the due and punctual payment of each amount payable in respect of any Guaranteed Note, the Deed of Covenant and the Deed Poll as and when the same become due and payable; and

   (b)   any obligation to deliver or procure the delivery of any securities pursuant to such Conditions,

   so that the Guarantor shall, if the Guaranteed Issuer shall fail punctually to perform any such obligation forthwith perform or procure the performance of the obligation in accordance with the applicable Conditions upon written demand by such Holder or Accountholder including (without limitation) the due and punctual payment of any such amount in the manner and currency prescribed by such Guaranteed Note which the Guaranteed Issuer shall be liable to pay under and pursuant to such Guaranteed Note, the Deed of Covenant or the Deed Poll or the delivery of any securities pursuant to such Conditions and which the Guaranteed Issuer shall have failed to pay or deliver (as the case may be) at the time such demand is made.

2.2   This Guarantee is one of payment and not collection. The Guarantor acknowledges that its obligations hereunder are several and independent obligations of the Guaranteed Issuer and that the Guarantor shall be liable as sole principal debtor, with the consequence that such liability will not be discharged, impaired or otherwise affected by anything which would not so discharge, impair or otherwise affect its liability if it were a sole principal debtor, including without limitation:

   (a)   any time, indulgence, waiver or consent at any time given to the Guaranteed Issuer or any other person;

   (b)   any amendment to the Conditions in respect of the Guaranteed Notes, the Deed of Covenant or the Deed Poll or to any security or other guarantee or indemnity;

   (c)   the making or absence of any demand on the Guaranteed Issuer or any other person;

   (d)   the enforcement or absence of enforcement of any Guaranteed Notes, the Deed of Covenant or the Deed Poll or of any security or other guarantee or indemnity;

   (e)   the release of any such security, guarantee or indemnity;

   (f)   the dissolution, amalgamation, reconstruction or reorganisation of the Guaranteed Issuer or any other person;

   (g)   the winding up of the Guaranteed Issuer or the bringing of any analogous proceeding in any jurisdiction or any change in its status, function, control or ownership; and

(h) the illegality, invalidity, irregularity or unenforceability of, or any defect in, any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll or any of the Guaranteed Issuer's obligations in respect thereof.

2.3 As a separate and alternative stipulation, the Guarantor irrevocably agrees that any sum expressed to be payable by the Guaranteed Issuer under any Guaranteed Note, the Deed of Covenant or the Deed Poll which is for any reason (including, without limitation, by reason of any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll being or becoming void, unenforceable or otherwise invalid under any applicable law) (whether or not now known or becoming known to the Guaranteed Issuer, the Guarantor, the Holder(s), the Accountholder(s) or any other person) not recoverable from it on the basis of a guarantee, will nevertheless be recoverable from it as if it were the sole principal debtor and will be paid by it to the Holder(s) or the Accountholder(s) on written demand. This indemnity constitutes a separate and independent obligation from the other obligations in this Guarantee, gives rise to a separate and independent cause of action and will apply irrespective of any indulgence granted by the Holder(s), the Accountholder(s) or any other person.

3. **STATUS**

3.1 The claims of the Holders and Accountholders against the Guarantor in respect of senior Guaranteed Notes will constitute direct, unconditional and (subject to the provisions of Condition 11 (*Negative Pledge with respect to Senior Notes*) and the provisions of the Fiscal Agency Agreement) unsecured obligations of the Guarantor and rank *pari passu* in right of payment among the Guarantee, prior to the equity securities of the Guarantor and equally with all other unsecured and unsubordinated debt obligations of the Guarantor (subject, in the event of insolvency, to laws affecting creditors' rights generally).

3.2 The claims of the Holders and the Accountholders against the Guarantor in respect of subordinated Guaranteed Notes constitute direct, unsecured and subordinated obligations of the Guarantor and rank *pari passu* among themselves and *pari passu* will all other present and future unsecured, unconditional and subordinated indebtedness of the Guarantor and will be subordinated, in the event of the winding-up of the Guarantor, to the claims of its Senior Creditors. Amounts payable under the Guarantee shall be due and payable by the Guarantor in such winding-up only if and to the extent that all claims against the Guarantor by its Senior Creditors have been paid in full.

3.3 Subject to applicable law, no Holder or Accountholder may be granted any security by the Guarantor or any third party or claim any right of set-off in respect of any amount owed to it by the Guarantor under this Guarantee in connection with subordinated Guaranteed Notes and each Holder or relevant Accountholder shall be deemed to have waived all such rights.

3.4 Subsequent agreements which limit the subordination effected pursuant to Clause 3.2 or which accelerate payments under this Guarantee in respect of subordinated Guaranteed Notes are not permitted by law. Should payments be effected in respect of subordinated Guaranteed Notes by the Guarantor before the maturity date without legal preconditions

being fulfilled, the amount paid shall be refunded to the Guarantor notwithstanding any agreement to the contrary.

4.    **CONTINUING GUARANTEE**

This Guarantee is a continuing guarantee and shall extend to the ultimate balance of all the obligations of the Guaranteed Issuer under any Guaranteed Note notwithstanding any settlement of account or other matter or thing whatsoever. It shall remain in full force and effect until all such obligations have been irrevocably paid and satisfied in full. Furthermore, such obligations are additional to, and not in substitution for, any security or other guarantee or indemnity at any time existing in favour of any person.

5.    **REINSTATEMENT**

If any payment received by a Holder or Accountholder shall, on the subsequent bankruptcy, insolvency, corporate reorganisation or other similar event of the Guaranteed Issuer, be avoided or set aside under any laws relating to such events, such payment shall not be considered as discharging or diminishing the liability of the Guarantor and this Guarantee shall continue to apply as if such payment had at all times remained owing by the Guaranteed Issuer, provided that the obligations of the Guaranteed Issuer and/or the Guarantor under this Clause 5 shall, as regards each payment made to the Holder or Accountholder which is avoided or set aside, be contingent upon such payment being reimbursed to the Guaranteed Issuer or other persons entitled through the Guaranteed Issuer.

6.    **IMMEDIATE RECOURSE**

The Guarantor waives any right it may have of first requiring a Holder or Accountholder to proceed against or enforce any other rights or security against the Guaranteed Issuer or any other person before claiming from the Guarantor hereunder.

7.    **COVENANTS**

The Guarantor covenants in favour of the Holders and the Accountholders that it will duly perform and comply with the obligations expressed to be undertaken by it in the Conditions.

8.    **DEPOSIT OF GUARANTEE**

This Guarantee shall be deposited with and held by the Fiscal Agent until all obligations of the Guaranteed Issuer and/or in respect of the Guaranteed Notes have been discharged in full.    The Guarantor hereby acknowledges the right of every Holder and Accountholder to the production of this Guarantee.

9.    **STAMP DUTIES**

The Guarantor shall pay all stamp, registration and other taxes and duties (including any interest and penalties thereon or in connection therewith) which may be payable upon or in connection with the execution and delivery of this Guarantee, and shall indemnify each Holder and Accountholder against any claim, demand, action, liability, damages, cost, loss or expense (including, without limitation, reasonably legal fees and any

applicable value added tax) which it incurs as a result of or arising out of or in relation to any failure of the Guarantor to pay or delay in paying any of the same.

10. **PARTIAL INVALIDITY**

If at any time any provisions hereof is or becomes illegal, invalid or unenforceable in any respect under the laws of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions hereof nor the legality, validity or enforceability of such provision under the laws of any other jurisdiction shall in any way be affected or impaired thereby.

11. **NOTICES**

All notices, demands or other communications by any Holder or Accountholder upon the Guarantor shall be duly served upon the Guarantor if served on the Guarantor by letter at 745 Seventh Avenue, New York, New York 10019.

12. **GOVERNING LAW**

This Guarantee shall be governed by, and construed in accordance with, the law of the State of New York.

IN WITNESS whereof the Guarantor has executed this Guarantee the day and year first above written.


**EXECUTED**                                        )
by **LEHMAN BROTHERS HOLDINGS INC.**    )
acting by                                             )
                                                PAOLO TONUCCI

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

NOV 0 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

RECEIVED BY:

DATE

3:01

TIME