WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Robert J. Lemons

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-----------------------------------------------------------------x

## PLAN ADMINISTRATOR'S REPLY IN FURTHER SUPPORT OF OBJECTION TO CLAIM 17889 FILED BY UBS FINANCIAL SERVICES INC.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT……………………………………………………………1

JURISDICTION…………………………………………………………………………..2

BACKGROUND…………………………………………………………………………2

    A.    General Background……………………………………………………2

    B.    The Claims…………………………………………………………...3

    C.    The Plan Administrator's Objection to the UBS Claim…………………………..4

ARGUMENT……………………………………………………………………...5

    I.    The UBS Claim Must Be Subordinated Under Section 510(b)…………………..5

        A.    The Plain Language of Section 510(b) Mandates Subordination…………6

        B.    The Legislative Intent of Section 510(b)
            Further Supports Subordination…………………………………………10

    II.    UBS Should Be Estopped from Arguing Against Subordination………………..12

        A.    UBS's Prior Statements……………………………………………13

        B.    UBS Should Be Collaterally Estopped…………………………………..14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Chemtura*,
   443 B.R. 601 (Bankr. S.D.N.Y. 2011) ....................................................................................6

*Chevron Corp. v. Donziger*,
   886 F. Supp. 2d 235 (S.D.N.Y. 2012) ...........................................................................16-17

*DiSorbo v. Hoy*,
   343 F.3d 172 (2d Cir. 2003) ..............................................................................................16

*In re Drexel Burnham Lambert*,
   148 B.R. 982 (Bankr. S.D.N.Y. 1992) .................................................................................6

*Epperson v. Entertainment Express, Inc.*,
   242 F.3d 100 (2d Cir. 2001) ..............................................................................................15

*Evans v. Ottimo*,
   469 F.3d 278 (2d Cir. 2006) ..............................................................................................14

*Indu Craft, Inc. v. Bank of Baroda (In re Indu Craft, Inc.)*,
   2012 U.S. Dist. Lexis 105291 (S.D.N.Y. Jul. 21, 2012) ....................................................14

*In re Jacom Computer Servs., Inc.*,
   280 B.R. 570 (Bankr. S.D.N.Y. 2002) .......................................................................6-9, 12

*In re Lehman Bros. Inc.*,
   503 B.R. 778 (Bankr. S.D.N.Y. 2014) .........................................................................*passim*

*In re Lehman Bros. Inc.*,
   2014 U.S. Dist. Lexis 124590 (S.D.N.Y. Sept. 5, 2014) .............................................*passim*

*In re Mid-Am. Waste Sys.*,
   228 B.R. 816 (Bankr. D. Del. 1999) .......................................................................5, 8-9, 11

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*,
   461 F.3d 251 (2d Cir. 2006) ..............................................................................................10

*Sanhammer v. Home Mut. Ins. Co.*,
   120 A.D.2d 59 (N.Y. App. Div. 3rd Dep't 1986) ...............................................................17

i

*In re Touch Am. Holdings Inc.*,
   381 B.R. 95 (Bankr. D. Del. 2008) ...................................................................................6, 9

*In re Walnut Equip. Leasing Co.*,
   1999 Bankr. LEXIS 1626 (Bankr. E.D. Pa. Dec. 28, 1999)......................................8-9, 11-12

*In re WorldCom, Inc.*,
   329 B.R. 10 (Bankr. S.D.N.Y. 2005) ..................................................................................7

**Statutes**

28 U.S.C. § 1334...................................................................................................................2

28 U.S.C. § 157.....................................................................................................................2

11 U.S.C. § 101(49) ..............................................................................................................6

11 U.S.C. § 510(b) ........................................................................................................*passim*

**Other Authorities**

Bankruptcy Rule 1015(b) ......................................................................................................2

WEIL:\95108945\11\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

      Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced

chapter 11 cases (collectively, the "Chapter 11 Estates"), respectfully submits this reply in

further support of its objection to claim 17889 against LBHI (the "UBS Claim") filed by UBS

Financial Services, Inc. ("UBS"), and represents as follows:

## PRELIMINARY STATEMENT

      1.     The UBS Claim must be subordinated because it falls squarely within the

plain language of section 510(b) of the Bankruptcy Code.  UBS was an underwriter of securities

issued by LBHI, and the UBS Claim seeks damages from LBHI for reimbursement, contribution

and indemnification of losses allegedly incurred by UBS in connection with lawsuits and other

proceedings brought against UBS in its capacity as LBHI's underwriter.

      2.     Indeed, Judge Peck reached the same conclusion in a decision, which was

recently affirmed on appeal, applying section 510(b) of the Bankruptcy Code to a virtually

identical UBS claim for reimbursement and contribution arising from its role as underwriter of

LBHI securities.  The only difference is that claim was filed by UBS against LBHI's affiliate,

Lehman Brothers Inc. ("LBI"), in LBI's SIPA proceeding.  *See In re Lehman Bros. Inc.*, 503

B.R. 778, 786 (Bankr. S.D.N.Y. 2014) (the "Bankruptcy Court LBI Decision")[1] ("*A review of the*

*plain language of 510(b) makes clear that* [a claim of co-underwriters, including UBS, for

reimbursement or contribution on account of claims arising from the offering of LBHI securities]

---

[1] Contemporaneously herewith, the Plan Administrator has filed the Declaration of Ralph I. Miller in
support of this Reply (the "Miller Declaration").  A copy of the Bankruptcy Court LBI Decision is
attached to the Miller Declaration as Exhibit B.

*are expressly subordinated under the statute as it is a 'claim . . . for reimbursement or*

*contribution . . . on account of a claim' arising from the purchase or sale of a security of the*

*debtor or an affiliate of the debtor.*" (citing 11 U.S.C. §510(b)) (emphasis added), *aff'd on*

*appeal*, Case No. 14-cv-1742(SAS), 2014 U.S. Dist. LEXIS 124590 (S.D.N.Y. Sept. 5, 2014)

(the "District Court LBI Decision").[2]  Under well-settled principles of issue preclusion, UBS is

precluded from arguing that the UBS Claim is not subordinated pursuant to section 510(b) of the

Bankruptcy Code in this proceeding.

    3.    The UBS Claim must be subordinated under the plain language of section

510(b), Judge Peck's decision in LBI's SIPA proceeding, the District Court's affirmation of that

decision, and the abundance of case law uniformly subordinating claims pursuant to section

510(b) of the Bankruptcy Code of underwriters for reimbursement or contribution in virtually

identical circumstances.  Accordingly, as explained more fully below, the objection should be

sustained, and the UBS Claim should be subordinated and classified in LBHI Class 11 (Section

510(b) Claims) of the Plan.

## JURISDICTION

    4.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### A.    General Background

    5.    Commencing on September 15, 2008 and periodically thereafter, LBHI

and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the

---

[2] A copy of the District Court LBI Decision is attached to the Miller Declaration as Exhibit C.  UBS filed
a notice of appeal of the District Court LBI Decision on October 6, 2014.

2

Bankruptcy Code. The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      On September 19, 2008, a liquidation proceeding for LBI was commenced pursuant to the Securities Investor Protection Act of 1970 (the "SIPA Proceeding"). James W. Giddens has been appointed Trustee for the SIPA liquidation (the "SIPA Trustee").

7.      On December 6, 2011, the Court entered an order confirming the Plan. The Plan became effective on March 6, 2012. Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

**B.      The Claims**

8.      On September 18, 2009, UBS filed the UBS Claim against LBHI.[3] UBS asserts that LBHI is liable for indemnification, reimbursement, and contribution in connection with lawsuits and other proceedings brought against UBS by purchasers of LBHI securities. *See* UBS Claim, at *2. The purchasers allege that UBS, as an underwriter or seller of securities issued by LBHI, made misrepresentations in registration statements, prospectuses, and other offering materials relating to the sale of LBHI securities. *Id*.

9.      In addition to its claim against LBHI, UBS filed a virtually identical claim against LBI, as co-underwriter, in LBI's SIPA Proceeding for reimbursement, indemnification or contribution in connection with the same claims and proceedings brought against UBS by purchasers of LBHI securities. *See* Bankruptcy Court LBI Decision, at 781-82. On July 12, 2013, the SIPA Trustee objected to various underwriter claims against LBI, including UBS's claim, and sought to subordinate such claims pursuant to section 510(b) of the Bankruptcy Code. *Id*. The objection was opposed by various co-underwriters of LBI, including UBS. *Id*. at 782.

---

[3] A copy of the UBS Claim is attached to the Miller Declaration as Exhibit A.

3

UBS and the other co-underwriters primarily argued that section 510(b) did not apply to their claims against LBI because the securities were issued by LBHI and, as a result, there were no claims *against LBI* "represented by" such security to which the claims of the underwriters could be subordinated. *Id.* at 787. Obviously, that issue does not exist with respect to LBHI.

10. A hearing was held before Judge Peck on the SIPA Trustee's objection on January 8, 2014. On January 27, 2014, Judge Peck issued a memorandum opinion, *inter alia*, sustaining the SIPA Trustee's objection and subordinating the co-underwriter's claims, including UBS's claim against LBI, pursuant to section 510(b) of the Bankruptcy Code. *See* Bankruptcy Court LBI Decision. On September 5, 2014, the District Court affirmed Judge Peck's decision. *See* District Court LBI Decision. On October 6, 2014, UBS appealed the District Court LBI Decision to the Second Circuit. Notice of Appeal, No. 14-cv-02305 (SAS) (Docket No. 19).[4] That appeal is pending before the Second Circuit.

**C.    The Plan Administrator's Objection to the UBS Claim**

11. On December 20, 2013, the Plan Administrator filed the Four Hundred Forty-Ninth Omnibus Objection to Claims (ECF No. 41664). The Plan Administrator's omnibus objection sought to reclassify 45 proofs of claim for reimbursement or contribution from LBHI filed by underwriters or brokers of securities issued by LBHI as subordinated claims pursuant to section 510(b) of the Bankruptcy Code.

12. Other than UBS, no claimants filed a response to the Plan Administrator's Four Hundred Forty-Ninth Omnibus Objection. That objection has been granted with respect to the remaining claims subject thereto. *See* Order Granting the Four Hundred Forty-Ninth Omnibus Objection to Claims (510(b) Claims) (ECF No. 42414).

---

[4] The other co-underwriters, with whom UBS joined on many of the disputed issues, also appealed the District Court LBI Decision.

WEIL:\95108945\11\58399.0011

13.     On January 22, 2014, UBS filed a response to the omnibus objection (the "UBS Response") (ECF No. 42124).  In its response, UBS argues that section 510(b) is somehow ambiguous in this familiar context and suggests that the statute should not apply because UBS's claim against LBHI allegedly is "on account of" LBHI's contractual indemnification obligations and not "on account of" the securities law claims asserted by the claimants in the proceedings against UBS.  As explained further below, UBS's position is not supported by any case law and is inconsistent with the plain meaning of section 510(b) of the Bankruptcy Code and existing case law.

## ARGUMENT

### I.     The UBS Claim Must Be Subordinated Under Section 510(b)

14.     Contrary to UBS's unsupported assertions, the language of section 510(b) of the Bankruptcy Code is clear and unambiguous, and mandates the subordination of the UBS Claim.  In fact, when faced with identical facts and circumstances, Courts have found section 510(b) to be unambiguous and have applied the statute to subordinate reimbursement claims of underwriters.  *See, e.g.*, *In re Mid-Am. Waste Sys.*, 228 B.R. 816, 829 (Bankr. D. Del. 1999) ("I conclude that §510(b) is unambiguous in requiring the subordination of Claimants' reimbursement claims, both for liability and expenses, resulting from securities law claims by purchasers or sellers of a debtor's securities.").

15.     UBS also argues, incorrectly, that the statutory intent of section 510(b) does not support subordinating the UBS Claim.  Not only is legislative intent irrelevant here because the plain meaning of section 510(b) is clear and unambiguous, but, as explained below, UBS has focused only on one purpose of the statute.  When properly viewed in its entirety, the statutory intent clearly supports subordinating the UBS Claim.

5

A.    The Plain Language of Section 510(b) Mandates Subordination

16.    The UBS Claim should be subordinated pursuant to section 510(b) of the

Bankruptcy Code.  Section 510(b) of the Bankruptcy Code states:

> [A] claim . . . for damages arising from the purchase or sale of [a
> security of the debtor] or for reimbursement or contribution
> allowed under section 502 on account of such a claim . . . shall be
> subordinated to all claims or interests that are senior to or equal the
> claim or interest represented by such security . . . .

11 U.S.C. § 510(b).

17.    All of the elements of section 510(b) are satisfied with respect to the UBS

Claim.  First, by its own terms, the UBS Claim is a claim for "reimbursement or contribution."

Although UBS also seeks "indemnification" — a term not expressly used in section 510(b) —

numerous Courts have stated that "reimbursement by definition includes indemnification."  *In re

Jacom Computer Servs., Inc.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002).[5]  Second, the securities

in question are "securities of the debtor" within the meaning of the Bankruptcy Code.  Section

101(49) of the Bankruptcy Code defines "security" to include notes, stocks, bonds, debentures,

and any other claim or interest commonly referred to as a security.  11 U.S.C. § 101(49).  The

UBS Claim and UBS Response both refer to the stock and/or notes in question as "securities."

*See* UBS Claim, at *2; UBS Response at ¶ 2.  There can also be no dispute that these securities

are securities "of the debtor," because UBS underwrote the issuance of securities by LBHI.

---

[5] Numerous courts have also found that claims for indemnification are claims for "reimbursement or
contribution" for the purposes of other provisions of the Bankruptcy Code such as section 502(e)(1)(B).
*See, e.g.*, *In re Drexel Burnham Lambert*, 148 B.R. 982 (Bankr. S.D.N.Y. 1992) ("Courts have always
recognized the application of section 502(e)(1)(B) to contractual claims for reimbursement which remain
contingent. . . . Thus, the section . . . clearly applies to contractual claims for indemnification."); *In re
Touch Am. Holdings Inc.*, 381 B.R. 95 (Bankr. D. Del. 2008) ("Courts have consistently held that 'the
concept of reimbursement includes indemnity.'"); *In re Chemtura*, 443 B.R. 601 (Bankr. S.D.N.Y. 2011)
("Section 502(e)(1)(B)'s requirements have been interpreted in a fair body of relevant case law, most of
which has disallowed claims for contribution and indemnification by those who are liable, along with a
debtor . . .").

6

18.     Third, the UBS Claim is "on account of" a claim for "damages arising from the purchase or sale" of securities issued by LBHI.  As stated in the UBS Claim, in the underlying securities litigations, the complainants asserted claims under state and federal securities laws against UBS based upon alleged false and misleading statements contained in the offering documents for the purchase or sale of LBHI securities.  *See* UBS Claim, at *2.  Claims alleging that the debtor's fraud led claimants to purchase or retain securities to their detriment are regularly subordinated pursuant to section 510(b) of the Bankruptcy Code as "damages arising from the purchase or sale of securities."  *See, e.g.*, *In re WorldCom, Inc.*, 329 B.R. 10, 15 (Bankr. S.D.N.Y. 2005) ("The damages and harm sustained by [claimant], whether proximately caused by fraud in the inducement of its purchase, or the retention of its ownership . . . arises from and is based upon [claimant's] purchase and ownership of WorldCom stock and as such is squarely within the scope of section 510(b).").

19.     Numerous Courts, including Judge Peck and the District Court in LBI's SIPA Proceeding, have found that reimbursement claims of underwriters in similar circumstances are "on account of" damages arising from the purchase or sale of securities of a debtor, and, therefore, are properly subordinated pursuant to section 510(b).  *See, e.g.*, Bankruptcy Court LBI Decision, at 786 (subordinating claims of underwriters pursuant to section 510(b) and stating that "[i]t has been held that comparable claims for contribution made by underwriters are subordinated under section 510(b)"); District Court LBI Decision, at *42 ("there is no question that [the co-underwriter's claims] would be subordinated to the claims of general unsecured creditors if they were based on . . . LBHI securities in LBHI's bankruptcy case"); *Jacom*, 280 B.R. at 572 ("Section 510(b) intends to subordinate the indemnification claims of . . . underwriters for both liability and expenses incurred in connection with the pursuit of claims for

7

rescission or damages by purchasers or sellers of the debtor's securities"); *Mid-American Waste Sys.*, 228 B.R. at 824 ("I find that the plain language of section 510(b), its legislative history, and applicable case law clearly show that section 510(b) intends to subordinate the indemnification claims of . . . underwriters for both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by purchasers or sellers of the debtor's securities.").

20.    The only argument raised by UBS against the application of section 510(b) is that the UBS Claim is not "on account of" the purchase or sale of securities but instead UBS's claim is on account of LBHI's contractual indemnification obligations.  But this exact same argument was raised before and rejected by the Bankruptcy Court for the Eastern District of Pennsylvania.  *See In re Walnut Equip. Leasing Co.*, Case No. 97-19699(DWS), 1999 Bankr. LEXIS 1626, *18 (Bankr. E.D. Pa. Dec. 28, 1999):

> [Underwriter] contends that these cases are distinguishable because its claim arises from the Agreement and not 'from the purchase or sale of a security.' . . . These arguments are not persuasive.
>
> . . .
>
> Section 510(b) specifically states that it applies to 'a claim for damages arising from the purchase or sale of . . . a security, or for reimbursement or contribution allowed under section 502 on account of such claim.'  11 U.S.C. §510(b).  This language is sufficiently broad to include any claim for indemnification of defense costs incurred in connection with a lawsuit seeking damages arising from the purchase or sale of securities regardless *of whether the indemnification is based on a statute, a contractual agreement or otherwise*.

(emphasis added).

21.    Moreover, indemnification claims of underwriters against a debtor are almost always contract-based, but that does not preclude their subordination pursuant to section 510(b).  *See, e.g., Jacom*, 280 B.R. at 572 (noting that "[t]he Underwriters contend that claim

8

*arises from its contract with the debtor*" and subordinating same) (emphasis added); *Mid-Am.*

*Waste Sys.*, 228 B.R. at 829 (reciting *indemnification clause in underwriting agreement* and

holding that underwriter claims for reimbursement and indemnification were subordinated

pursuant to section 510(b)); *In re Walnut Equip Leasing Co.*, 1999 Bankr. LEXIS 1626, at *1

(stating that "[t]he Claim, for attorney's fees incurred in defense of certain securities actions

described below, is *based on a contractual indemnification provision*" and subordinating claim

pursuant to section 510(b)) (emphasis added). If UBS's artificial distinction is accepted, section

510(b) could never apply to reimbursement claims of underwriters, which are almost always

contract-based. Not surprisingly, UBS has not cited to any authority on point in support of its

argument that contractual indemnification claims of underwriters are somehow outside the scope

of section 510(b) of the Bankruptcy Code.

22.     UBS also overstates the nexus required by the statute. Section 510(b)

does not require that UBS's alleged losses result directly from the purchase of the debtor's

security. All that is required is some nexus or causal relationship between the claim and sale of

the security. *See In re Touch Am. Hold., Inc.*, 381 B.R. 95, 104-05 (Bankr. D. Del. 2008) ("the

phrase 'arising from' in §510(b) suggests that the injury need not directly result from the

purchase of the security, but clearly requires some nexus or causal relationship between the

claim and a sale of security."). That causal connection is easily satisfied here. But for the

purchase of LBHI securities by the claimants, there would have been no claims against UBS and

no losses for which UBS now seeks indemnification from LBHI. *See* Bankruptcy Court LBI

Decision, at 780 ("The underwriters have made claims against LBI for reimbursement that *tie

directly* to their having participated in the public offering of LBHI bonds.") (emphasis added).

9

23.     Finally, nothing in the Second Circuit's decision in *In re Med Diversified, Inc.* or the Bankruptcy Court's decision in *In re KIT digital, Inc.*, supports UBS's argument that the statute is ambiguous as applied to reimbursement claims of underwriters.  Nor do those cases undermine the well-settled authority on this issue.  The facts of *Med Diversified* and *KIT digital* could not be further removed from the facts at bar.  Neither case involved claims for reimbursement by an underwriter that fall squarely within the four corners of the statute and have repeatedly been found to be subject to mandatory subordination pursuant to section 510(b).  In *Med Diversified, Inc.*, the Second Circuit considered whether section 510(b) required the subordination of a claim of a former executive employee when the claim was based on the debtor's failure to issue its common stock to the individual in exchange for his stock in another company as provided by a termination agreement.  *See Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 253 (2d Cir. 2006).  Under those unique circumstances, the Court stated that "the phrase 'arising from' is ambiguous *as applied to the claims in this case*." *See id.* at 255 (emphasis added).  In any event, the Second Circuit affirmed the decisions of the lower courts applying section 510(b) even in that circumstance.  *See id.* at 259.

24.     Accordingly, because the UBS Claim is a claim for reimbursement for liabilities and expenses arising from claims for damages by purchasers of LBHI's securities, the UBS Claim should be subordinated under the plain language of section 510(b) of the Bankruptcy Code.

B.     The Legislative Intent of Section 510(b) Further Supports Subordination

25.     After trying to manufacture an ambiguity in the statute that does not exist, UBS then argues that the statutory intent of section 510(b) does not support subordination of the UBS Claim.  *See* UBS Response, ¶¶ 17-20.  As an initial and dispositive matter, UBS's policy-

10

based arguments are irrelevant because the statute is not ambiguous in this context. "Where there is no ambiguity, the Court must apply the plain language of the statute even if the holding is beyond the Congressional intent set for the in the legislative history." Bankruptcy Court LBI Decision, at 786 (*citing RadLAX Gateway Hotel, LLC v. Amalgamated* Bank, 132 S.Ct. 2065, 2073 (2012)). As has been repeatedly held in the numerous decisions cited above, including the Bankruptcy Court LBI Decision and the District Court LBI Decision, by its plain terms, section 510(b) mandates the subordination of the reimbursement claims of underwriters arising from the purchase or sale of the debtor's securities.

26.     To the extent statutory intent is relevant, UBS offers only part of the legislative intent behind section 510(b)—that the statute requires subordination if the claimant took on the risk and return expectations of a shareholder, rather than a creditor. UBS ignores another important policy consideration underlying section 510(b): subordinating claims based on risk allocation. *See Mid-American Waste*, 228 B.R. at 825-26 ("[I]t is readily apparent that the rationale for section 510(b) is not limited to preventing shareholder claimants from improving their position vis-à-vis general creditors; Congress also made the decision to subordinate based on risk allocation."). As the Court stated in *In re Walnut Equip. Leasing Inc.*:

> [W]hen Congress amended §510(b) to add reimbursement and contribution claims, it was not radically departing from an equityholder claimant treatment provision . . . it simply added to the subordination treatment new classes of persons and entities involved with the securities transactions giving rise to the rescission and damage claims. The 1984 amendment to §510(b) is a logical extension of one of the rationales for the original section—because Congress intended the holders of securities law claims to be subordinated, why not also subordinate claims of other parties (e.g., officers and directors and **underwriters**) who play a role in the purchase and sale transactions which give rise to the securities law claims? As I view it, in 1984 Congress made a legislative judgment that claims emanating from tainted securities

11

> law transactions should not have the same priority as the claims of
> general creditors of the estate.

1999 Bankr. LEXIS 1626, at *35-36 (emphasis in original).

27.     "[U]nderwriters are in a better position to allocate risks associated with the issuance of securities and . . . it is inconsistent with the policies articulated in the legislative history of section 510(b) to force unsecured creditors to subsidize the underwriters' litigation costs." *Jacom*, 280 B.R. at 572. *See also* District Court LBI Decision, *44 ("Congress has already made the judgment that claims for contribution based on [a debtor's or its affiliate's] securities must be subordinated."); *Walnut Equip.*, 1999 Bankr. Lexis 1626 at *29 ("As with a traditional underwriter, a qualified independent underwriter . . . would be in a better position than general unsecured creditors to evaluate the risks associated with the issuance of securities and take appropriate steps to protect itself."). Accordingly, the policy rationale of section 510(b) reinforces subordination of the UBS Claim.

## II.     UBS Should Be Estopped from Arguing Against Subordination

28.     UBS should be collaterally estopped from arguing that the UBS Claim should not be subordinated pursuant to section 510(b) of the Bankruptcy Code. During its litigation with LBI, not only did UBS admit that section 510(b) covered reimbursement claims of underwriters in this context, but it expressly conceded that UBS's claim in the SIPA Proceedings against LBI would be properly subordinated under section 510(b) if it was a claim against LBHI in LBHI's bankruptcy proceeding. The Bankruptcy Court and the District Court both agreed. UBS should not now be permitted to assert that the UBS Claim is outside the four corners of section 510(b) of the Bankruptcy Code.

12

A.    UBS's Prior Statements

29.    UBS conceded in the SIPA Proceeding that its reimbursement claims were on account of claims for damages arising from the purchase or sale of LBHI securities and that such clams would be subordinated pursuant to section 510(b) in the LBHI case against LBHI:

- "[T]he claims are for contribution 'on account' of claims for damages made by the Plaintiffs in these Actions, and these damages claims arose from the purchase or sale of LBHI Securities."[6]

- "As the Trustee points out, indemnification claims of underwriters against bankrupt issuers have been *properly* subordinated under [section 510(b)]."[7]

30.    In addition, in its appeal to the District Court, UBS acknowledged that there was no dispute that the UBS claim in the SIPA Proceeding was a claim "arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or

---

[6] Response of Underwriter Claimants to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims) [ECF No. 7205] at ¶ 30. A copy of the Response of Underwriter Claimants is attached to the Miller Declaration as Exhibit F. UBS "join[ed] in and incorporate[d]" the points made by the Underwriter Claimants regarding the SIPA Trustee's objection based on section 510(b). *See* Response of UBS Financial Services Inc. to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims) [ECF No. 7206] at ¶ 27. A copy of the Response of UBS Financial Services is attached to the Miller Declaration as Exhibit G.

[7] Response of Underwriter Claimants at ¶ 34 (emphasis added). This statement was also adopted by UBS. *See* Response of UBS Financial Services Inc. to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims) [ECF No. 7206] at ¶ 27.

During oral argument before Judge Peck, counsel for the junior underwriters stated: "The only final point I would make is that there is a distinction between LBI as co-underwriter and LBHI as issuer. If we were in the LBHI case there's no question that our claims would be subordinated and 510(b) makes very clear where they would be subordinated." Tr. of 2/18/14 Hr'g, at 56:14-20. Counsel for UBS joined in that statement: "[t]he only thing I can say in this case is that I support the arguments made on this side of the room on the 510(b) issue to this point." *Id.* at 57:4, 16-18. A copy of the transcript is attached to the Miller Declaration as Exhibit D.

13

contribution allowed under section 502 on account of such claim."[8]  UBS further stated that

"[t]here was no dispute below that the Claim is [a claim for reimbursement or contribution]

because it *indirectly arises from* transactions in a security issued by [LBHI]."[9]

31.    The Bankruptcy Court and the District Court came to the same

conclusions in their decisions.  *See* Bankruptcy Court LBI Decision, at 786 ("A review of the

plain language of 510(b) makes clear that [claims of co-underwriters, including UBS, for

reimbursement or contribution on account of claims arising from the offering of LBHI securities]

are expressly subordinated under the statute as it is a 'claim . . . for reimbursement or

contribution . . . on account of a claim' arising from the purchase or sale of a security of the

debtor or an affiliate of the debtor."); District Court LBI Decision at *42 ("The co-underwriters

concede that their claims are for contribution within the meaning of the first portion of section

510(b).").

B.    <u>UBS Should Be Collaterally Estopped</u>

32.    UBS is barred by principles of issue preclusion from arguing against

subordination of the UBS Claim pursuant to section 510(b) of the Bankruptcy Code.  It is well

settled that issue preclusion principles apply in bankruptcy proceedings.  *Evans v. Ottimo*, 469

F.3d 278, 281 (2d Cir. 2006).  Under the doctrine of collateral estoppel, a party and its privies are

barred from relitigating in a subsequent action an issue of fact or law that was fully and fairly

litigated in a prior proceeding, regardless of whether it is the same cause of action.  *Indu Craft,*

*Inc. v. Bank of Baroda, (In re Indu Craft, Inc.)*, 2012 U.S. Dist. Lexis 105291, at *31 (S.D.N.Y.

Jul. 21, 2012).  Issue preclusion applies when "(i) the issues in both proceeding are identical, (ii)

---

[8] Brief of Appellant UBS Financial Services Inc., 14-cv-02305-SAS (Docket No. 11) at 7.  A copy of the Brief is attached to the Miller Declaration as <u>Exhibit H</u>.

[9] *Id*. at 7-8 (emphasis added).

the issue in the prior proceeding was actually litigated and actually decided, (iii) there was [a] full and fair opportunity to litigate in the prior proceeding, and (iv) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001).

33.     All of the elements of issue preclusion are satisfied.  First, the underlying issue here and in the litigation between the SIPA Trustee and UBS in the SIPA Proceeding is identical: whether the claims of UBS for reimbursement of losses incurred in litigations or proceedings arising from the purchase of LBHI securities are subordinated pursuant to section 510(b) of the Bankruptcy Code.

34.     Second, the issue was actually litigated and decided in the SIPA Proceeding and on appeal by the District Court.  As stated by the Bankruptcy Court, the SIPA Trustee argued that the co-underwriter claims, including UBS's claim, "should be subordinated under section 510(b) of the Bankruptcy Code . . . . [T]he SIPA Trustee asserts that the Co-Underwriters' Claims are covered by the plain language of section 510(b) because they are contribution claims arising from the sale of [LBHI] securities."  Bankruptcy Court LBI Decision at 781-82.  The co-underwriters, including UBS, opposed the SIPA Trustee's objection.  *Id.* Although UBS's opposition to the application of section 510(b) in the LBI litigation focused on one element of section 510(b)—specifically, whether there was "a claim or interest represented by such security"—the overall disputed issue was whether section 510(b) required the subordination of UBS's claim against LBI, which is identical to the UBS Claim against LBHI.

35.     The issue was also decided in the prior litigation.  As stated above, one of Judge Peck's holdings was that "[a] review of the plain language of section 510(b) makes clear that claims [of underwriters for reimbursement and contribution on account of claims arising

15

from the offering of LBHI securities] are expressly subordinated under the statute . . . ." Bankruptcy Court LBI Decision, at 786.  After considering and rejecting UBS's arguments against the application of section 510(b), Judge Peck stated that "[t]he meaning of the statute is clear in this instance: the Co-Underwriters' Claims against LBI arise out of their sale of affiliate securities and those claims, consistent with the hierarchy established by section 510(b), should be subordinated to other unsecured claims." *Id*. at 787.  The District Court affirmed that decision and held that "section 510(b) mandates the subordination of arising from and contribution claims, provided such claims are based on securities of a debtor or an affiliate of the debtor." District Court LBI Decision at *46.  Accordingly, the second element of issue preclusion is satisfied.

36.    Third, UBS had a full and fair opportunity to litigate the issue in the SIPA Proceeding and on appeal before the District Court.  UBS filed briefs in support of its arguments in the Bankruptcy Court and the District Court.  UBS also had the opportunity to present its case at oral argument.  Accordingly, UBS was afforded a full and fair opportunity to litigate the application of section 510(b) to its claim as an underwriter arising from the purchase or sale of LBHI securities.

37.    UBS's appeal of the District Court LBI Decision does not strip the Bankruptcy Court LBI Decision or the District Court LBI Decision of their preclusive effects. "[C]ollateral estoppel is not foreclosed because the . . . decision [is] being appealed . . . ." *DiSorbo v. Hoy*, 343 F.3d 172 (2d Cir. 2003) ("Under New York law, 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'").  *See also Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235 (S.D.N.Y. 2012) ("Nor did the pendency of the appeal in Ecuador preclude the use

16

of res judicata or collateral estoppel. The better view, and that applied in New York and in the federal courts, 'is that a judgment otherwise final remains so despite the taking of an appeal.'"); *Sanhammer v. Home Mut. Ins. Co.*, 120 A.D.2d 59 (N.Y. App. Div. 3rd Dep't 1986) ("[I]t is well established that the fact that the time in which to appeal a judgment is still open or that an appeal from the judgment has actually been taken does not divest the judgment of finality for the purposes of collateral estoppel.").

38.     Finally, the issue of whether the UBS claim should be subordinated under section 510(b) of the Bankruptcy Code was necessary to resolve the SIPA Trustee's objection. Generally, section 510(b) contains two parts. The first part identifies the types of claims that are subject to subordination. That includes claims for reimbursement or contribution on account of a claim arising from rescission of a purchase or sale of a security of the debtor, such as LBHI. Part two provides for the level of subordination applicable to such claims. Both parts must be satisfied for section 510(b) to apply. Although UBS's litigation with LBI has focused primarily on part two of section 510(b)—the level of subordination—in order to subordinate UBS's claim against LBI, Judge Peck and the District Court necessarily had to find that the first part of section 510(b)—the types of claims subject to subordination—was also satisfied.

39.     Accordingly, all of the elements of collateral estoppel are satisfied and UBS should be precluded from arguing that the UBC Claim is not subject to subordination pursuant to section 510(b) of the Bankruptcy Code.

17

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the Four Hundred Forty-Ninth Omnibus Objection to Claims as to UBS and classifying the UBS Claim in LBHI Class 11 of the Plan.

Dated: November 17, 2014
　　　　New York, New York

　　　　　　　　　　　　　　/s/ Ralph I. Miller
　　　　　　　　　　　　　　Ralph I. Miller
　　　　　　　　　　　　　　Robert J. Lemons

　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　　　Telephone: (212) 310-8000
　　　　　　　　　　　　　　Facsimile: (212) 310-8007

　　　　　　　　　　　　　　Attorneys for Lehman Brothers Holdings Inc.
　　　　　　　　　　　　　　and Certain of Its Affiliates

18