**<u>Exhibit B</u>**

WEIL:\95154813\3\58399.0011

◆ Positive

As of: November 17, 2014 1:35 PM EST

# *In re Lehman Bros.*

United States Bankruptcy Court for the Southern District of New York

January 27, 2014, Decided

Case No. 08-01420 (JMP) (SIPA)

**Reporter**
503 B.R. 778; 2014 Bankr. LEXIS 337; 71 Collier Bankr. Cas. 2d (MB) 218; 59 Bankr. Ct. Dec. 8; 2014 WL 288571

In re: LEHMAN BROTHERS INC., Debtor.

**Subsequent History:** Affirmed by *In re Lehman Bros. Inc., 2014 U.S. Dist. LEXIS 124590 (S.D.N.Y., Sept. 5, 2014)*

**Prior History:** *In re Lehman Bros., 493 B.R. 437, 2013 Bankr. LEXIS 2789 (Bankr. S.D.N.Y., 2013)*

## Core Terms

subordination, securities, affiliate, Co-Underwriters, Bonds, ambiguous, underwriters, unsecured creditor, claimant, reimbursement, damages, unsecured claim, offering, sale of securities, claim arising, Customer, stock, language of section, capital structure, bankruptcy court, shareholder, legislative history, statutory language, plain language, Commencement, entities, notice

## Case Summary

### Overview

HOLDINGS: [1]-Claim by prime brokerage customer of debtor, which was in SIPA liquidation, for breach of contract damages due to failure of the debtor to execute an order for the sale of its affiliate's bonds had to be subordinated under the plain language of *11 U.S.C.S. § 510(b)* to the claims of other general unsecured creditors because it was a claim for damages arising from the purchase or sale of a security of the debtor or of an affiliate; [2]-Co-underwriters' claims for reimbursement and contribution on account of claims arising from the offering of the debtor's affiliate's securities were expressly subordinated under *§ 510(b)*.

### Outcome

The court held that the claims were subordinated to the claims of general unsecured creditors.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN1** See *11 U.S.C.S. § 510(b)*.

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

Governments > Legislation > Interpretation

**HN2** The United States Court of Appeals for the Second Circuit along with the bankruptcy courts within the Second Circuit have uniformly applied a broad interpretation of *11 U.S.C.S. § 510(b)*. The inclusion of the word "shall" in the statute mandates subordination for claims meeting the criteria set forth in the statute.

Governments > Legislation > Interpretation

**HN3** When a statute's language is plain, the sole function of the courts is to enforce it according to its terms. If possible, a court reviewing a statute must give effect to every clause and word of a statute.

Bankruptcy Law > Claims > Types of Claims > Definitions

**HN4** The definition of "securities" in *11 U.S.C.S. § 101(49)* expressly includes a "bond."

Bankruptcy Law > Claims > Types of Claims > Definitions

**HN5** An affiliate of a debtor, as defined in *11 U.S.C.S. § 101(2)(A)*, is an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor.

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN6** *11 U.S.C.S. § 510(b)* mandates subordination of a claim for damages arising from the purchase or sale of a security of a debtor or of an affiliate.

503 B.R. 778, *778; 2014 Bankr. LEXIS 337, **337

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN7** After the portion of *11 U.S.C.S. § 510(b)* that identifies the types of claims that qualify to be subordinated, *§ 510(b)* goes on to explain how subordination is to occur. Specifically, the section states that the claim shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security.

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN8** With respect to *11 U.S.C.S. § 510(b)*, if a claim "represented by such security" were to be restricted to a recovery from the issuer for amounts outstanding under the security, then no claim arising from the purchase or sale of affiliate securities would ever fit within the regime for subordination. Such a result would contradict express provisions of the statute which direct that such claims shall be subordinated.

Bankruptcy Law > Claims > Types of Claims > Unsecured Nonpriority Claims

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN9** It is generally true that shareholders of a subsidiary have no claim against the parent and thus are not part of any priority scheme of claims against the parent. However, when a shareholder of a subsidiary files a claim for breach of contract against the parent, such claim would participate in distribution pari passu with general unsecured creditors absent *11 U.S.C.S. § 510(b)*. Applying *§ 510(b)* requires that a claimant's claim that is based on damages from the purchase of stock of an affiliate of the debtor must be subordinated to the claims of the general unsecured creditors of the debtor which in the absence of that section would be equal in priority to its claim.

Governments > Legislation > Interpretation

**HN10** Legislative history is not needed when language of a statute is clear.

Governments > Legislation > Interpretation

**HN11** Where there is no ambiguity, a court must apply the plain language of a statute even if the holding is beyond the Congressional intent set forth in legislative history.

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN12** A strict application of *11 U.S.C.S. § 510(b)* requires a differentiation between those claims arising from the purchase or sale of debtor affiliated securities and those that arise from the purchase or sale of securities issued by unaffiliated third parties.

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN13** A review of the plain language of *11 U.S.C.S. § 510(b)* makes clear that underwriter's claims for reimbursement and contribution on account of claims arising from the offering of an affiliate of a debtor are expressly subordinated under the statute as it is a a claim for reimbursement or contribution on account of a claim arising from the purchase or sale of a security of the debtor or an affiliate of the debtor. It has been held that comparable claims for contribution made by underwriters are subordinated under *§ 510(b)*.

Bankruptcy Law > ... > Types of Claims > Unsecured Priority Claims > Subordination

**HN14** The phrase "a claim represented by a security" is subject to interpretation within the text of *11 U.S.C.S. § 510(b)*. The words may have different meanings depending on whether a claim relates to a security of the debtor or a security issued by an affiliate of the debtor. When the claims being made against the debtor arise out of the purchase or sale of the debtor's own securities, the relative priority of such claims may be subordinated to claims that are within that same capital structure. In contrast with this example, affiliate securities ordinarily will be the source of claims that are external to the debtor's capital structure and that become the basis for making a claim against the debtor for damages associated with the purchase or sale of securities of its affiliate. Accordingly, claims represented by affiliate securities rarely would seek to recover amounts claimed by investors (exceptions would be when the debtor has guaranteed payment or the estates are consolidated). Instead, the claim represented by the securities of an affiliate is an unsecured claim for damages or for reimbursement relating to the purchase or sale of such securities. Claims such as this fit within the statutory framework and are properly subject to subordination under *§ 510(b)*.

**Counsel:** [**1] For James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc.: Michael E. Salzman, Esq., Robert B. Funkhouser, Esq., HUGHES HUBBARD & REED LLP, New York, New York.

08-13555-mg    Doc 46973-2    Filed 11/17/14    Entered 11/17/14 18:05:00    Exhibit B
Pg 4 of 11

Page 3 of 10

503 B.R. 778, *778; 2014 Bankr. LEXIS 337, **1

For Claren Road Credit Master Fund Ltd.: Marshall R. King, Esq., GIBSON, DUNN & CRUTCHER LLP, New York, New York.

For Certain Junior Underwriters: Luke A. Barefoot, Esq., CLEARY GOTTLIEB STEEN & HAMILTON LLP, New York, New York.

For UBS Financial Services Inc.: Joshua Dorchak, Esq., BINGHAM MCCUTCHEN LLP, New York, New York.

**Judges:** Honorable James M. Peck, United States Bankruptcy Judge.

**Opinion by:** James M. Peck

## Opinion

[*779] **MEMORANDUM OPINION AUTHORIZING AND DIRECTING THE SUBORDINATION OF CLAIMS OF CLAREN ROAD CREDIT MASTER FUND LTD. AND CERTAIN UNDERWRITERS**

JAMES M. PECK

UNITED STATES BANKRUPTCY JUDGE

*Introduction*

The two contested matters before the Court call for a determination of whether the language of *section 510(b) of the Bankruptcy Code* mandates the subordination of certain claims that have been made against Lehman Brothers Inc. ("LBI") in this SIPA liquidation. The claims in question arise from and are represented by securities that were issued by an affiliate of LBI, its parent Lehman Brothers Holdings Inc. ("LBHI"). James Giddens, [**2] as LBI's trustee (the "SIPA Trustee"), urges that two categories of claims involving certain bonds issued by LBHI should be subordinated to other unsecured claims. These are: (i) a claim by Claren Road Credit Master Fund, Ltd. ("Claren Road"), a prime brokerage customer of LBI, that seeks breach of contract damages due to the failure of LBI to execute an order for the sale of LBHI bonds placed only days before the Lehman collapse, and (ii) reimbursement and contribution claims by a number of junior underwriters in connection with their having to defend and settle claims brought against them by investors in relation to the public offering of LBHI bonds.

While the facts are undisputed, the questions presented nonetheless demonstrate that *510(b)* subordination questions can be more difficult to resolve when dealing with the priority of claims represented [*780] by securities of an affiliate of the debtor. Each of the claimants argues that the language of *section 510(b)* is ambiguous on its face when applied to claims represented by securities of an affiliate and that the underlying policy objectives of claim subordination are not applicable to their claims. One reason for potential confusion is [**3] that the interpretation of the statute is taking place here within an atypical setting for addressing 510(b) issues because LBI is not a corporate debtor in a conventional chapter 11 case but a dealer in securities in the largest SIPA case in history. Accordingly, LBI's ordinary course pre-liquidation business activities as a broker-dealer necessarily involved the execution of a multitude of securities trades and the raising of capital through its affiliates to fund its operations.

Although claimants have been creative in their attempts to portray the language of *section 510(b)* as unclear and inapplicable to their claims, the statute is clear in requiring subordination. Claren Road has made a claim for damages due to the failure of LBI to complete the purchase of its LBHI bonds. The underwriters have made claims against LBI for reimbursement that tie directly to their having participated in the public offering of LBHI bonds. In both of these circumstances, the bonds were issued by an affiliate of LBI and the claims made against LBI arise out of and are based upon transactions that relate to these bonds. Plainly, these are claims made against LBI that are represented by securities of [**4] its affiliate, LBHI.

Thus, the claimants are not seeking recovery of amounts based upon the securities in respect of their relative rank in the capital structure of LBI and LBHI but are pressing other claims represented by the securities (for damages or for reimbursement). Applying the common meaning of the statutory language, *section 510(b)* directs subordination of the claims in question, and the Court so finds for the reasons stated in greater detail in this decision.

*Background*

The facts giving rise to the respective claims of Claren Road and the underwriters against LBI are described below.

*Claren Road*

Prior to commencement of this case on September 19, 2008 (the "Commencement Date"), LBI was a registered broker-dealer and a wholly-owned subsidiary of LBHI. Claren Road opened a prime brokerage account with LBI in December 2005.

503 B.R. 778, *780; 2014 Bankr. LEXIS 337, **4

On September 12, 2008, Claren Road and LBI entered into a transaction in which LBI was to purchase two sets of LBHI bonds from Claren Road as follows: (i) 4,506,000 Euro Medium Term Notes issued by LBHI with a maturity date of October 2011 at an individual bond price equal to 75% of par, and (ii) 4,800,000 Euro Medium Term Notes issued by LBHI with a maturity [**5] date of June 2013 at an individual bond price equal to 77% of par (collectively, the "LBHI Bonds"). LBI did not perform its obligation to acquire the LBHI Bonds, and the transactions failed on September 17, 2008 (two days after the filing of LBHI's chapter 11 case). Claren Road filed timely claims for this breach by LBI of its contractual obligation, including a claim seeking compensation for the decrease in value of the LBHI Bonds during the period from September 12, 2008 to the Commencement Date in the amount of $8,522,201.09 (the "Claren Road Claim").[1]

[*781] On October 25, 2013, the SIPA Trustee filed a motion for, among other things, subordination of the Claren Road Claim pursuant to section 510(b) of the Bankruptcy Code.[2] According to the SIPA Trustee, the Claren Road Claim fits squarely within the ambit of mandatory subordination as outlined in section 510(b) because it is a claim arising from the failure by LBI to purchase securities issued by its affiliate — LBHI.

Claren Road objected to this motion, arguing that the language of section 510(b) is ambiguous when applied to a debtor that did not issue the underlying securities as is the case here.[3] In its objection, Claren Road points to the legislative history of section 510(b) and asserts that subordination of the Claren Road Claim does not further the policy objectives underlying the statute.

*Underwriters*

Prior to the Commencement Date, LBI served as underwriter along with a number of other co-underwriters (the "Co-Underwriters") in connection with certain LBHI securities offerings. LBI and the Co-underwriters entered into a Master Agreement Among Underwriters, dated December 1, 2005, which governed the relationship among all underwriters.[4] The agreement required each underwriter to contribute, based on its agreed percentage participation [**7] in an offering, toward losses or liabilities incurred by another underwriter arising from allegations that the offering materials contained untrue statements or omissions.

After the collapse of Lehman Brothers, numerous investors brought lawsuits against the Co-Underwriters in connection with LBHI securities offerings.[5] LBI is not named as a defendant in these suits presumably because such litigation as to LBI is barred by the automatic stay. *See* 11 U.S.C. § 362. These actions alleged that LBHI's offering documents contained material misstatements and omissions. As a result of these actions, the Co-Underwriters have incurred millions of dollars in defense costs and settlement payments and have filed claims in this case on account of alleged contribution and indemnity obligations of LBI (the "Co-Underwriters Claims").

On July 12, 2013, the SIPA Trustee filed an objection[6] to the Co-Underwriters Claims arguing that such claims should be

---

[1]   Claren Road also filed claims in the LBHI chapter 11 case on account of the LBHI Bonds.

[2]   *See* Trustee's Mot. for an Order (1) Confirming the Trustee's Denial of SIPA Customer Status to Claren Road Customer Claim No. 900005056, [**6] and (2) Subordinating the Claim Pursuant to Bankruptcy Code Section 510(b), Oct. 25, 2013, ECF No. 7539.

[3]   *See* Objection to Trustee's Motion for an Order (1) Confirming the Trustee's Denial of SIPA Customer Status to Claren Road Customer Claim No. 900005056, and (2) Subordinating the Claim Pursuant to Bankruptcy Code Section 510(b), Nov. 8, 2013, ECF No. 7625.

[4]   Ex. 1 to Decl. of Peter Fox in Supp. of the Junior Underwriters' Resp. to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims), Sept. 9, 2013, ECF No. 7204.

[5]   These suits have been consolidated as a securities class action in the United States District Court for the Southern District of New York, captioned *In re Lehman Brother* [**8] *Equity/Debt Securities Litigation*, Case No. 08-Civ-5523 (LAK).

[6]   *See* The Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims), July 12, 2013, ECF No. 6768.

08-13555-mg     Doc 46973-2     Filed 11/17/14     Entered 11/17/14 18:05:00     Exhibit B
Pg 6 of 11

Page 5 of 10

503 B.R. 778, *781; 2014 Bankr. LEXIS 337, **7

subordinated under *section 510(b) of the Bankruptcy Code*.[7] Similar to the argument [*782] for subordination of the Claren Road Claim, the SIPA Trustee asserts that the Co-Underwriters Claims are covered by the plain language of *section 510(b)* because they are contribution claims arising from the sale of affiliate securities.

Certain of [**9] the Co-Underwriters[8] jointly opposed the SIPA Trustee's claim objection on September 9, 2013[9] contending, among other things, that the Co-Underwriters Claims fall outside of the reach of *section 510(b)* subordination because the securities of LBHI are not represented in the SIPA proceeding. The essence of their argument is that there is no applicable class of securities to which the Co-Underwriters Claims (represented by LBHI securities) can be subordinated.[10]

*Joint Hearing Regarding 510(b) Issues*

Although the underlying facts differ, the legal issue raised by the parties is the same. The SIPA Trustee and the claimants presented oral argument on January 8, 2014 with respect to subordination of the Claren Road Claim and the Co-Underwriters Claims. The Court took both matters under advisement and considers them together in this decision.

*Discussion*

Although the Claren Road Claim and the Co-Underwriters Claims arise from differing fact patterns, the SIPA Trustee seeks subordination of both claims under *section 510(b) of the Bankruptcy Code*. Analysis necessarily starts with the language of the statute. **HN1** *Section 510(b)* states as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor *or of an affiliate* of the debtor, *for damages arising from the purchase or sale of such a security, or for reimbursement or contribution* allowed under *section 502* on [**11] account of such a claim, *shall be subordinated to all claims* or interests that are *senior to or equal the claim or interest represented by such security* except that if such security is common stock, such claim has the same priority as common stock.

*11 U.S.C. § 510(b)* (emphasis added). **HN2** The Court of Appeals for the Second Circuit along with the bankruptcy courts within the Second Circuit have uniformly applied a "broad interpretation of *section 510(b)*." *Rombro v. Dufrayne (In re Med Diversified, Inc.), 461 F.3d 251, 255 (2d Cir. 2006)* (citing *In re Enron Corp., 341 B.R. 141, 162-63 (Bankr. S.D.N.Y. 2006)* and *In re PT-1 Commc'ns, Inc., 304 B.R. 601, 610 (Bankr. E.D.N.Y. 2004))*; *KIT Digital, Inc. v. Invigor Group Ltd. (In re KIT Digital, Inc.), 497 B.R. 170, 181 (Bankr. S.D.N.Y.* [*783] *2013)* ("While I certainly agree that other Circuits have construed *section 510(b)* broadly, so has the Second Circuit, along with bankruptcy and district court judges in the Second Circuit."). The inclusion of the word "shall" in the statute mandates subordination for claims meeting the criteria set forth in the statute.

"It is well established that **HN3** when the statute's language is plain, the sole function of the courts [**12] . . . is to enforce it according to its terms." *Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004)* (internal citations and quotation marks omitted). If possible, a Court reviewing a statute must give effect to every clause and word of a statute. *Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)* (citations omitted).

---

[7] The SIPA Trustee also argued in its claim objection that the Co-Underwriters Claims should be disallowed under *section 502(e)(1)(B) of the Bankruptcy Code*. The Court need not address this issue because it finds that the Co-Underwriters Claims are subordinated under *section 510(b) of the Bankruptcy Code* to the claims of general unsecured creditors. Although subordination and disallowance are different concepts, both have the same practical result in this case as general unsecured creditors will receive less than par on account of their claims.

[8] The objecting Co-Underwriters include: ANZ Securities, Inc.; BMO Capital Markets Corp. (f/k/a Harris Nesbitt Corp.); BNY Mellon Capital Markets, LLC; Cabrera Capital Markets, LLC; DnB Nor Markets, Inc.; BNP Paribas FS, LLC (as successor in interest to Fortis Securities, LLC, f/k/a Fortis Investment Services, LLC); nabSecurities, LLC (f/k/a nabCapital Securities, LLC); National Australia Bank Ltd.; National Financial Services, LLC; SunTrust Robinson Humphrey, Inc.; and The Williams Capital Group, L.P..

[9] *See* Resp. of Underwriter Claimants to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims), Sept. 9, 2013, ECF No. 7205.

[10] UBS Financial Services Inc., another Co-Underwriter, separately [**10] objected to the SIPA Trustee's claim objection. *See* Resp. of UBS Financial Services Inc. to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims), Sept. 9, 2013, ECF No. 7206.

08-13555-mg    Doc 46973-2    Filed 11/17/14    Entered 11/17/14 18:05:00    Exhibit B
Pg 7 of 11

Page 6 of 10

503 B.R. 778, *783; 2014 Bankr. LEXIS 337, **12

In the sections that follow, the Court separately discusses whether the Claren Road Claim and the Co-Underwriters Claims should be subordinated to the claims of general unsecured creditors.

*Claren Road*

Claren Road characterizes the Claren Road Claim as a breach of contract claim based on LBI's failure to acquire the LBHI Bonds. The SIPA Trustee argues that the Claren Road Claim must be subordinated under *section 510(b)* because it is a claim "for damages arising from the purchase or sale of" "a security of the debtor or of an affiliate." *11 U.S.C. § 510(b)*.

The LBHI Bonds are securities as defined in *section 101(49) of the Bankruptcy Code*. **HN4** This definition expressly includes a "bond." *11 U.S.C. § 101(49)*.[11] Moreover, LBHI is **HN5** an affiliate of LBI as defined in *section 101(2)(A) of the Bankruptcy Code* because it is "entity that directly or indirectly owns, controls, or holds with power to [**13] vote, 20 percent or more of the outstanding voting securities of the debtor. . . ." *11 U.S.C. § 101(2)(A)*. Thus, the LBHI Bonds are securities of a debtor affiliate.

Also, the Claren Road Claim unmistakably is a claim "for damages arising from the purchase or sale" of the LBHI Bonds. Indeed, Claren Road points directly to LBI's failure to purchase LBHI Bonds from Claren Road. *See, e.g., KIT Digital, 497 B.R. at 178* ("In particular, the extent to which "arising from the purchase or sale" is ambiguous depends on how divorced from the underlying sale the underlying claim is. The clause "arising from the purchase or sale" is not ambiguous at all when it's applied to an alleged breach of the agreement of purchase or sale itself, or to a fraud that induced such an agreement.").

The SIPA Trustee submits that this is where the analysis should end, contending that *section 510(b)* provides for subordination of the Claren Road Claim to the claims of other general unsecured creditors. Claren Road disagrees and finds ambiguity within *section 510(b)* that should lead to further inquiry as to whether subordination [**14] is appropriate for its claim. Claren Road's arguments are addressed below.

*Section 510(b)* is Not Ambiguous When Applied to the Claren Road Claim

Claren Road asserts that *section 510(b)* is ambiguous when applied to a claim arising from the purchase or sale of a security of a debtor affiliate and identifies a number of cases that have found *section 510(b)* to be ambiguous in different contexts. [*784] *See, e.g., Med Diversified, 461 F.3d at 254-56* (internal quotation marks and citation omitted) (finding the phrase "arising from" in *section 510(b)* to be ambiguous when determining whether a claim of a former debtor executive based on debtor's failure to issue common stock pursuant to a termination agreement should be subordinated — "Because the phrase "arising from" is ambiguous as applied to the claims in this case, we must look outside the text of the statute to determine its intended meaning.").

However, interpreting *section 510(b)* is "ambiguous or unambiguous when juxtaposed against particular factual situations" and "is not ambiguous at all when . . . applied to an alleged breach of the agreement of purchase or sale itself . . . ." *KIT Digital, 497 B.R. at 178*. Here, it is undisputed that the [**15] Claren Road Claim is based on a breach by LBI of the agreement to purchase LBHI securities. In the absence of ambiguity, the Court looks to the plain language of *section 510(b)* in order to determine the priority of the Claren Road Claim.

Here, the Claren Road Claim fits comfortably within that portion of **HN6** *section 510(b)* which mandates subordination because it is a claim "for damages arising from the purchase or sale" "of a security of the debtor or of an affiliate. . . ." *11 U.S.C. § 510(b)*. The Claren Road Claim satisfies the first part of the test for subordination. The question that remains is whether the statutory mechanism for subordination is stated with sufficient clarity to direct subordination without reference to legislative history.

*The Claren Road Claim Should be Subordinated to General Unsecured Claims of LBI*

Claren Road argues that the subordination of claims based on the securities "of an affiliate of the debtor" is ambiguous and impractical. *11 U.S.C. § 510(b)*. According to Claren Road, claims represented by the LBHI Bonds may not be subordinated because the LBHI Bonds have no claim against the LBI estate. This argument calls for a closer examination of *section 510(b)*.

**HN7** After [**16] the portion of the statute that identifies the types of claims that qualify to be subordinated, *section 510(b)* goes on to explain how subordination is to occur. Specifically, the section states that the claim "shall be subordinated to all claims or interests that are senior to or

---

[11] The term "security" is also defined within SIPA and similarly includes bonds. SIPA § 78lll(14).

08-13555-mg    Doc 46973-2    Filed 11/17/14    Entered 11/17/14 18:05:00    Exhibit B
Pg 8 of 11

Page 7 of 10

503 B.R. 778, *784; 2014 Bankr. LEXIS 337, **16

equal the claim or interest *represented by* such security . . . ." 11 U.S.C. § 510(b) (emphasis added). The crux of Claren Road's argument is that the claim "represented by such security" must mean a claim based on the LBHI Bonds themselves. In effect, Claren Road submits that the subordination must relate to a capital structure that includes the LBHI Bonds.

Claren Road's approach is too narrow and fails to recognize the common meaning of the words used in the statute. A more reasonable interpretation of the statutory language is that the "claim . . . represented by [the LBHI Bonds]" is not directed to a recovery from LBI on account of the LBHI Bonds but extends to the breach of contract claim asserted by Claren Road against LBI with respect to these bonds. Such a claim is a general unsecured claim that is connected to the subject matter of the securities in question. The essence of the claim is the failure [**17] to purchase the LBHI Bonds. This reading of the plain language of the statute leads to the conclusion that the Claren Road Claim "shall be subordinated to all claims . . . that are senior to or equal" the general unsecured claims against LBI.

Interpreting the phrase "claim or interest *represented by such security*" in this fashion is a common sense interpretation [*785] of section 510(b) that infuses the words of section 510(b) with meaning. **HN8** If a claim "represented by such security" were to be restricted to a recovery from the issuer for amounts outstanding under the security, then no claim arising from the purchase or sale of *affiliate* securities would ever fit within the regime for subordination. Such a result would contradict express provisions of the statute which direct that such claims shall be subordinated. See Williams, 529 U.S. at 404 (citation omitted) (explaining that courts should give effect to every word in a statute).

The Bankruptcy Court for the District of Delaware faced a similar argument in In re VF Brands, Inc., 275 B.R. 725 (Bankr. D. Del. 2002). In *VF Brands*, the claim in question arose from an alleged breach of a stock purchase agreement pursuant to which the claimant [**18] purchased from the debtor the stock of a non-debtor affiliate, Vlasic Farms. Id. at 726. The claimant argued that, as a shareholder of Vlasic Farms, its claim would properly be subordinated to the unsecured creditors of Vlasic Farms but not the unsecured creditors of the debtor. Id. at 727. Judge Walrath disagreed. She noted that **HN9** it "is generally true that shareholders of a subsidiary have no claim against the parent and thus are not part of any priority scheme of claims against the parent." Id. However, when a shareholder of a subsidiary files a claim for breach of contract against the parent, such claim would participate in distribution *pari passu* with general unsecured creditors absent section 510(b). Id. Ultimately, she concluded that "[a]pplying section 510(b) requires that the [claimant's claim] (which is based on damages from the purchase of stock of an affiliate of the [debtors]) must be subordinated to the claims of the general unsecured creditors of the [debtors] which in the absence of that section would be equal in priority to its claim." Id.

Recently, in Liquidating Trust Comm. of the Del Biaggio Liquidating Trust v. Freeman (In re Del Biaggio), No. 12-CV-6447, 2013 U.S. Dist. LEXIS 163953, 2013 WL 6073367 (N.D. Cal. Nov. 18, 2013) [**19] the district court in the Northern District of California affirmed a decision of the bankruptcy court in San Francisco that subordinated claims brought in relation to securities of an affiliate of the debtor. There, a creditor alleged that the debtor fraudulently induced him to invest in a National Hockey League franchise, the Predators. 2013 U.S. Dist. LEXIS 163953, [WL] at *2-3. The debtor and the Predators were affiliates as defined in the Bankruptcy Code. 2013 U.S. Dist. LEXIS 163953, [WL] at *4. In *Del Biaggio* the claimant argued that his fraud claim against the debtor and his interest in the Predators "are not senior or junior to each other because they simply do not compete for the same assets and distributions." 2013 U.S. Dist. LEXIS 163953, [WL] at *7. Citing *VF Brands* with approval, the district court disagreed with the claimant and subordinated the fraud claim to those of debtor's unsecured creditors.

Here, as in *VF Brands* and *Del Biaggio*, Claren Road asserts the right to receive distributions *pari passu* with a debtor's unsecured creditors in relation to a claim arising from the purchase or sale of affiliate securities. Such claims are represented by the LBHI securities and properly are subordinated to general unsecured claims against LBI.

*Claren Road's Other Arguments* [**20] *Do Nothing to Change the Outcome*

Claren Road urges the Court to pay attention to the congressional intent reflected in section 510(b) and relies heavily on the Second Circuit's decision in *In re Med Diversified* where the Court of Appeals noted that the two rationales supporting subordination were "1) the dissimilar risk and return expectations of [*786] shareholders and creditors; and 2) the reliance of creditors on the equity cushion provided by shareholder investment." Med Diversified, 461 F.3d at 256 (citations omitted).

But **HN10** legislative history is not needed when language of the statute is clear. Importantly, in *Med Diversified*, the

08-13555-mg    Doc 46973-2    Filed 11/17/14    Entered 11/17/14 18:05:00    Exhibit B
Pg 9 of 11

Page 8 of 10

503 B.R. 778, *786; 2014 Bankr. LEXIS 337, **20

Second Circuit looked to legislative history because of ambiguity as to the application of section 510(b) to the particular facts. Id. at 255-56 (internal quotation marks and citation omitted) ("Because the phrase "arising from" is ambiguous as applied to the claims in this case, we must look outside the text of the statute to determine its intended meaning. . . . Because there are only two rationales for mandatory subordination expressly or implicitly adopted by the Congress that enacted section 510(b), we conform our interpretation of the statute to require [**21] subordination here only if [claimant] (1) took on the risk and return expectations of a shareholder, rather than a creditor, or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding whether to extend credit to the debtor.").

These references to congressional policy are unpersuasive in the current setting where the statute can be understood without resorting to background sources. Section 510(b) is unambiguous when applied to the Claren Road Claim. **HN11** Where there is no ambiguity, the Court must apply the plain language of the statute even if the holding is beyond the Congressional intent set forth in legislative history. See RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S.Ct. 2065, 2073, 182 L. Ed. 2d 967 (2012).

The Court does recognize that there is a level of added difficulty in applying subordination under section 510(b) when the debtor is a broker-dealer, especially one as large and active as LBI was prior to the Commencement Date. LBI undoubtedly was involved in countless transactions involving securities of all sorts of entities,[12] including affiliated entities within its integrated corporate structure. **HN12** A strict application of section 510(b) requires [**22] a differentiation between those claims arising from the purchase or sale of LBI affiliated securities and those that arise from the purchase or sale of securities issued by unaffiliated third parties. The Claren Road Claim relates to LBHI Bonds and as a consequence should be subordinated under section 510(b).

*Co-Underwriters*

The Co-Underwriters Claims are for reimbursement and contribution on account of claims arising from the offering of LBHI securities. **HN13** A review of the plain language of 510(b) makes clear that claims of this type are expressly subordinated under the statute as it is a "a claim . . . for reimbursement or contribution . . . on account of a claim" arising from the purchase or sale of a security of the debtor or an affiliate of the debtor. 11 U.S.C. § 510(b). It has been held that comparable claims for contribution made by underwriters are subordinated under section 510(b). [**23] See In re Jacom Computer Servs., Inc., 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002) (citing In re Mid-Am. Waste Sys., Inc., 228 B.R. 816, 824-26 (Bankr. D. Del. 1999)).

Like Claren Road, the Co-Underwriters argue that their claims cannot be subordinated because the LBHI securities do not represent a claim that can be made in the [*787] LBI case. This is a hyper-technical and improper reading of the language of section 510(b). The "claims . . . represented by such security" are the claims of the Co-Underwriters for reimbursement and contribution (and not for recovery on account of LBHI securities themselves). The resulting claim would be a general unsecured claim against LBI were it not for the subordination mandate of section 510(b).

The Co-Underwriters make a strained argument that focuses myopically on what it means for claims to be represented by the securities of an affiliate of the debtor. The approach taken assumes that the claims must be based on securities within the capital structure of an enterprise that includes a debtor and affiliated entities. The false premise is that the claims represented by the securities of an affiliate of the debtor must be the same kinds of claims that could [**24] be made by a holder of those securities against that affiliate. Such a reading of section 510(b) does not make logical sense nor does it fit the language of the section.

Consistent with comments made earlier in this decision with respect to the Claren Road Claim, a claim made by the Co-Underwriters for reimbursement or contribution is a claim represented by LBHI securities and not necessarily a claim to recover amounts invested in these securities. The meaning of the statute is quite clear in this instance: the Co-Underwriters Claims against LBI arise out of their sale of affiliate securities and those claims, consistent with the hierarchy established by section 510(b), should be subordinated to other unsecured claims. There is no need for contorted reasoning that assumes the existence of a hypothetically consolidated capital structure. The claims are simply claims for reimbursement and contribution based on the sale of securities of LBHI, an affiliate of the debtor, and such claims do not rank equally with other unsecured claims against LBI.

---

[12] The argument made by Claren Road regarding Apple stock is a red herring. See Objection of Claren Road, Nov. 8 2013, ECF No. 7625, at ¶ 20. If Claren Road had a breach of contract claim against LBI for failing to close a trade relating to securities of any unaffiliated issuer, 510(b) would not apply.

08-13555-mg    Doc 46973-2    Filed 11/17/14    Entered 11/17/14 18:05:00    Exhibit B
Pg 10 of 11

Page 9 of 10

503 B.R. 778, *787; 2014 Bankr. LEXIS 337, **24

*Conclusion*

**HN14** The phrase "a claim represented by a security" is subject to interpretation within the text of section 510(b). The words may have different [**25] meanings depending on whether a claim relates to a security of the debtor or a security issued by an affiliate of the debtor. When the claims being made against the debtor arise out of the purchase or sale of the debtor's own securities, the relative priority of such claims may be subordinated to claims that are within that same capital structure. In contrast with this example, affiliate securities ordinarily will be the source of claims that are external to the debtor's capital structure and that become the basis for making a claim against the debtor for damages associated with the purchase or sale of securities of its affiliate.

Accordingly, claims represented by affiliate securities rarely would seek to recover amounts claimed by investors (exceptions would be when the debtor has guaranteed payment or the estates are consolidated). Instead, as in the situations described in this decision, the claim represented by the securities of LBHI is an unsecured claim for damages or for reimbursement relating to the purchase or sale of such securities. Claims such as this fit within the statutory framework and are properly subject to subordination under 510(b).

For the reasons stated, the Court [**26] agrees with the interpretation of section 510(b) that has been advanced by the SIPA Trustee. The Claren Road Claim and the Co-Underwriters Claims should be subordinated to the claims of general unsecured creditors of LBI pursuant to section 510(b) of the Bankruptcy Code. There is no need to refer to the theory of claim subordination or the public policy that may have led to enactment of this provision of the Bankruptcy [*788] Code. The language is clear on its face and applies to these claims. The parties are directed to settle an order consistent with this decision.

SO ORDERED:

Dated: New York, New York

January 27, 2014

/s/ James M. Peck

Honorable James M. Peck

United States Bankruptcy Judge

[EDITOR'S NOTE: The following court-provided text does not appear at this cite in 503 B.R. 778.]

[*none] **ORDER TO SHOW CAUSE AND NOTICE FIXING HEARING DATE TO CONSIDER MOTION PURSUANT TO** *FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019* **FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT**

Upon the motion the ("Motion"),[1] dated January 24, 2014, of James W. Giddens ("Trustee"), trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI"), by and through his undersigned attorneys, for entry of an order, pursuant to *Rule 9019 of the Federal Rules of Bankruptcy Procedure*, approving a settlement and compromise entered into by the Trustee and the Japanese Entities; and upon the Declaration of Christopher K. Kiplok, pursuant to Local Bankruptcy *Rule 9077-1(a)* attesting to the necessity [**27] for relief by Order to Show Cause; and it appearing that no notice of this Order to Show Cause need be given, except as provided herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

ORDERED that a hearing (the "Hearing") to consider the Motion shall be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 621, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004 on February 7, 2014, at 1:00 p.m. (Prevailing Eastern Time), or as soon thereafter as counsel may be heard; and it is further

ORDERED that notice of the Hearing shall be given by sending a copy of this Order to Show Cause, the Motion and all exhibits thereto, and all declarations in support thereof, and the proposed order on the Motion, in accordance with Court's Amended Order Pursuant to *Section 105(a) of the Bankruptcy Code* and *Bankruptcy Rules 1015(c)* and *9007* Implementing Certain Notice and Case Management Procedures and Related Relief (ECF No. 3466), on or before January 28, 2014, [**28] and it appearing that no other or further notice need be provided; and it is further

ORDERED that objections, if any, to entry of an order approving the Motion must (i) be in writing; (ii) state the name and address of the objecting party and nature of the claim or interest of such party; (iii) state with particularity

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement attached to the Motion as Exhibit A.

503 B.R. 778, *none; 2014 Bankr. LEXIS 337, **28

the legal and factual bases of such objection; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399 (available at the Court's website, www.nysb.uscourts.gov) by registered users of the Court's Electronic Case Filing System, and by all other parties in interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format no later than February 5, 2014 at 4:00 p.m. (Prevailing Eastern Time) (the "Objection Deadline"); and (vi) served on (a) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York, 10004, Attn: James B. Kobak, Jr., Esq. and Jeffrey M. Greilsheimer, Esq.; (b) Securities Investor Protection Corporation, 805 Fifteenth [**29] Street, N.W., Suite 800, Washington, D.C. 20005, Attn: Kenneth J. Caputo, Esq.; (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq. and Maurice Horwitz, Esq.; and (d) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attn: Lorenzo Marinuzzi, Esq., with a courtesy copy to the chambers of the Honorable Shelley C. Chapman, United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 621, One Bowling Green, New York, New York 10004, so as to actually be received prior to the Objection Deadline.

Dated: New York, New York

January 27, 2014

/s/ James M. Peck

Honorable James M. Peck

United States Bankruptcy Judge