**Exhibit E**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN PROOFS OF CLAIM. PARTIES RECEIVING THIS ONE HUNDRED FOURTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE TRUSTEE'S COUNSEL, STUART MITCHELL, ESQ., AT (212) 837-6809.**

---

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | Case No. 08-01420 (JMP) SIPA |

**NOTICE OF HEARING ON THE TRUSTEE'S ONE HUNDRED FOURTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS (NO LIABILITY CLAIMS)**

   **PLEASE TAKE NOTICE** that on July 12, 2013, James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. (the "Debtor" or "LBI"), under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), by and through his undersigned counsel, filed his One Hundred Fourth omnibus objection to general creditor claims (the "One Hundred Fourth Omnibus Objection to General Creditor Claims"), and that a hearing to consider the Trustee's One Hundred Fourth

Omnibus Objection to General Creditor Claims will be held before the Honorable James M.

Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court"), on **August 29, 2013 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

      **PLEASE TAKE FURTHER NOTICE** that responses, if any, to entry of the

order must (i) be in writing; (ii) state the name and address of the responding party and nature of

the claim or interest of such party; (iii) state with particularity the legal and factual bases of such

response; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy

Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in

accordance with General Order M-399 by registered users of the Court's Electronic Case Filing

system, and by all other parties in interest, on a 3.5 inch disk, compact disk, or flash drive,

preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word

processing format no later than **August 2, 2013 at 4:00 p.m. (Prevailing Eastern Time)** (the

"Response Deadline"); and (vi) be served on (a) Hughes Hubbard & Reed LLP, One Battery

Park Plaza, New York, New York, 10004, Attn: Meaghan C. Gragg, Esq.; (b) Securities Investor

Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, DC 20005, Attn:

Kenneth J. Caputo, Esq.; and (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York,

New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Robert J. Lemons, Esq.,

and Jacqueline Marcus, Esq., with a courtesy copy to the chambers of the Honorable James M.

Peck, One Bowling Green, New York, New York 10004, Courtroom 601.

      **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served

with respect to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor

Claims or any claim set forth thereon, the Trustee may, on or after the Response Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims, which may

be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
       July 12, 2013

                HUGHES HUBBARD & REED LLP

                By: /s/ James B. Kobak, Jr.
                James B. Kobak, Jr.
                Christopher K. Kiplok
                Robert B. Funkhouser
                Meaghan C. Gragg
                One Battery Park Plaza
                New York, New York 10004
                Telephone: (212) 837-6000
                Facsimile: (212) 422-4726
                Email: kobak@hugheshubbard.com

                Attorneys for James W. Giddens,
                Trustee for the SIPA Liquidation of
                Lehman Brothers Inc.

**Hearing Date and Time:  August 29, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time:  August 2, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>      LEHMAN BROTHERS INC.,<br><br>               Debtor. | Case No.  08-01420 (JMP) |

**THE TRUSTEE'S ONE HUNDRED FOURTH OMNIBUS OBJECTION**
**TO GENERAL CREDITOR CLAIMS (NO LIABILITY CLAIMS)**

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN PROOFS OF CLAIM.  PARTIES RECEIVING THIS ONE HUNDRED FOURTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE TRUSTEE'S COUNSEL, STUART MITCHELL, ESQ., AT (212) 837-6809.**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business of

Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970 as amended,

15 U.S.C. §§ 78aaa *et seq*. ("SIPA"),[1] by and through his undersigned counsel, respectfully

represents as follows:

### RELIEF REQUESTED

1.      The Trustee files this One Hundred Fourth omnibus objection to general

creditor claims (the "One Hundred Fourth Omnibus Objection to General Creditor Claims")

pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), as

made applicable to this proceeding pursuant to sections 78fff(b) and 78fff-1(a) of SIPA, Rule

3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this

Court's order approving procedures for the filing of omnibus objections to proofs of claim filed

in this SIPA proceeding (the "General Creditor Claim Procedures Order," ECF No. 5441),

seeking disallowance and expungement of the claims listed on Exhibit A annexed hereto.  The

Trustee's proposed order (the "Proposed Order") is annexed hereto as Exhibit C.

2.      The proofs of claim listed on Exhibit A (collectively, the "No Liability

Claims") are claims seeking reimbursement for liability and costs allegedly incurred or which

potentially may be incurred in the future in litigation brought by purchasers of securities issued

by LBI's parent, Lehman Brothers Holdings Inc. ("LBHI").  As set forth in more detail below,

---

1.   For convenience, subsequent references to SIPA will omit "15 U.S.C."

the No Liability Claims are brought by underwriters of securities issued by LBHI, alleging that

they are entitled to indemnification, contribution, or reimbursement from LBI as co-underwriter

for such securities.

3.      First, the Trustee has determined that there is no legal or factual

justification for the No Liability Claims.  Based on an analysis by the Trustee's counsel of the

proofs of claim and supporting documents filed therewith, as detailed below, the No Liability

Claims fail to establish the predicate for LBI liability as an underwriter of LBHI securities, and

the No Liability Claimants have not demonstrated that any payments or potential payments

exceed their share of the liability.  Therefore, the Trustee requests that the No Liability Claims be

disallowed and expunged in their entirety as No Liability Claims.

4.      Second, in the alternative, the No Liability Claims also are wholly or in

substantial part contingent reimbursement claims arising from alleged shared liability, and to the

extent they are contingent, should be disallowed under Bankruptcy Code section 502(e)(1)(B).

5.      Third, in the alternative, to the extent any No Liability Claim or portion

thereof is not disallowed, it should be subordinated pursuant to Bankruptcy Code section 510(b)

because the No Liability Claims arise from the purchase or sale of securities of an affiliate of

LBI and are reimbursement or contribution claims on account of such claims.

## JURISDICTION

6.      Following removal to this Court for all purposes as required for SIPA

cases by section 78eee(b)(4) of SIPA, this Court has "all of the jurisdiction, powers, and duties

conferred by [SIPA] upon the court to which the application for the issuances of the protective

decree was made."  15 U.S.C. § 78eee(b)(4).

7.      Venue is proper in this Court pursuant to SIPA sections 78eee(a)(3) and

78aa.

## **BACKGROUND**

8.      On September 19, 2008 (the "Filing Date"), the Honorable Gerard E.

Lynch, United States District Court, Southern District of New York, entered the Order

Commencing Liquidation of LBI (the "LBI Liquidation Order," ECF. No. 1) pursuant to the

provisions of SIPA in the case captioned *Securities Investor Protection Corporation v. Lehman*

*Brothers Inc.*, Case No. 08-CIV-8119 (GEL).  The LBI Liquidation Order, *inter alia*, (i)

appointed the Trustee for the liquidation of the business of LBI pursuant to section 78eee(b)(3)

of SIPA; and (ii) removed the case to this Court for all purposes as required for SIPA cases by

section 78eee(b)(4) of SIPA, in the case captioned *In re Lehman Brothers Inc.*, Case No. 08-

01420 (JMP) (the "SIPA Proceeding").

9.      On November 7, 2008, the Court entered the Order Approving Form and

Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and

Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers

and Other Creditors; and Fixing Interim Reporting Pursuant to SIPA (the "Customer Claims

Process Order," ECF No. 241).  Beginning on December 1, 2008, consistent with SIPA section

78fff-2(a)(1), the Trustee mailed more than 905,000 claims packages with filing information to

former LBI customers and other potential claimants (the "Claims Process Notice") and posted

claims filing information on the Trustee's website (www.lehmantrustee.com) and SIPC's website

(www.sipc.org).  The Trustee also published notice of the claims process in The New York

Times, The Wall Street Journal and The Financial Times.

10. Pursuant to SIPA section 78fff-2(a)(3) and the Customer Claims Process Order, customer claims seeking maximum protection under SIPA must have been received by the Trustee on or before January 30, 2009. All customer claims and general creditor claims must have been received by the Trustee by June 1, 2009 and no claims of any kind will be allowed unless received by the Trustee on or before June 1, 2009. A copy of the LBI Customer Claims Process Order was made publically available at www.lehmantrustee.com. The Trustee's website allowed claimants filing electronically to upload documents as part of their claim submission and thereby comply with the instructions to include supporting documentation set forth in the Proof of Claim.

11. On November 15, 2012, the Court entered the General Creditor Claim Procedures Order, which authorizes the Trustee, among other things, to file omnibus objections to no more than 200 claims against the general estate at a time, on various grounds, including the grounds that the claims subject to the omnibus objection seek recovery of amounts for which LBI is not liable or that the claims were incorrectly classified.

## THE NO LIABILITY CLAIMS

12. The No Liability Claims arise from various lawsuits against the Claimants, "which seek damages based upon alleged false statements and/or omissions in the offering materials of various LBHI securities allegedly underwritten by [the Claimants] and certain other alleged underwriters, including LBI." (The Williams Capital Group, L.P., Attachment to Proof of Claim ("Williams Attachment"), at 1, attached as Exhibit 1 to the Declaration of Jason E.

Zakai, annexed hereto as <u>Exhibit B</u> ("the <u>Zakai Decl.</u>").)[2]  (*See also* National Australia Bank Limited, Addendum to Proof of Claim ("<u>National Australia Addendum</u>"), at 1, attached as <u>Exhibit 2</u> to the Zakai Decl.;[3] SunTrust Robinson Humphrey, Inc., Attachment A to Proof of Claim ("<u>STRH Attachment</u>"), at 1, attached as <u>Exhibit 3</u> to the Zakai Decl; Fortis Securities LLC, Annex to Claim ("<u>Fortis Annex</u>"), at 1, attached as <u>Exhibit 4</u> to the Zakai Decl.).  As referenced in the proofs of claim, the lawsuits have been consolidated as a securities class action in the United States District Court for the Southern District of New York captioned *In re Lehman Brothers Equity/Debt Securities Litigation*, Case No. 08-Civ-5523 (LAK) (the "<u>Lehman Securities Litigation</u>").  (*See* Second Amended Consolidated Class Action Complaint For Violations of the Federal Securities Laws, 1:08-cv-5523, ECF No. 89, excerpts attached as <u>Exhibit 5</u> to the Zakai Decl.)  (*See, e.g.,* Williams Attachment, at 1.)  The Lehman Securities Litigation has been consolidated with a number of other federal actions in Multidistrict Litigation under the caption *In re Lehman Brothers Securities and ERISA Litigation*, Master Case No. 09-MD-2017 (LAK).

13.  The No Liability Claimants assert contingent claims against LBI for indemnity and contribution for their potential liability and legal costs.  (*E.g.,* National Australia Addendum, ¶ 1 ("[Claimant] files this proof of claim in a contingent and unliquidated amount…"); Williams Attachment, at 1 ("Claimant…ha[s] certain indemnification and/or

---

[2]  Several of the other No Liability Claimants are represented by the same counsel as The Williams Capital Group, LP, and have filed virtually identical general creditor proofs of claim.  These claimants are ANZ Securities, Inc, BNY Mellon Capital Markets, LLC, Cabrera Capital Markets, LLC, Edward D. Jones & Co. L.P., National Financial Services LLC, Scott & Stringfellow, LLC, TD Ameritrade Holding Corp., and DnB NOR Markets, Inc.

[3]  BMO Capital Markets Corp. and nabCapital Securities, LLC are represented by the same counsel as National Australia Bank Limited, and have asserted virtually identical general creditor proofs of claim.

contribution rights against LBI for certain losses arising out of certain alleged false statements and/or omissions in the offering materials and for any legal or other expenses reasonably incurred by the [Claimants] in investigating, defending, and/or preparing to defend against such losses."); Fortis Annex, at 1 (same); STRH Attachment, at 3 ("the debtor is obligated…to contribute to the losses, claims, damages or liabilities to which STRH may be subject").)

## OBJECTION

## I.    THE NO LIABILITY CLAIMS SHOULD BE DISALLOWED AND EXPUNGED.

14.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

15.    Based on an analysis by the Trustee's counsel of the Claims listed on Exhibit A and other relevant documents and materials,[4] the Trustee has identified the No Liability Claims as claims for which LBI is not liable. The proofs of claim state that the underwriting agreement obligation of LBI to indemnify and reimburse the No Liability Claimants is predicated on "alleged false statements and/or omissions in the offering materials."

---

[4]    Documents reviewed by the Trustee's counsel include the docket sheets, pleadings, dispositive motions and related decisions and orders in the Lehman Securities Litigation.

(*See supra*, ¶¶ 13-14; *see also* STRH Attachment, at 3 (LBI "agreed…to pay its proportionate share (based on its underwriting obligation) of all expenses incurred by STRH in investigating and defending claims brought or threatened arising out of any untrue statement or omission in the [offering materials]".)  However, the alleged false statements and omissions have not been established, and therefore there is no predicate for LBI liability.

16.     Moreover, the underwriters' liabilities are several in proportion to their respective underwriting obligations.  (*See infra*, ¶ 24.)  Meaning that, under the underwriting agreements, LBI does not incur liability to its co-underwriters for contribution claims unless and until the No Liability Claimants establish that they have paid more than their proportionate share of liability.  The No Liability Claimants have not met this burden.  Indeed, although LBI no longer is a defendant in the Lehman Securities Litigation, the LBI estate has incurred costs with respect to multiple claims in this proceeding brought by plaintiffs in the Lehman Securities Litigation.  (*See* The Trustee's Seventy-Ninth Omnibus Objection to General Creditor Claims (No Liability Claims), ECF No.6340.)

17.     Because the predicate for seeking reimbursement under the underwriting agreement is not established by the proofs of claim, and because the No Liability Claimants have not established that they have paid more than their share of respective liability, there is no basis for LBI to be held liable.  Thus, the Trustee requests that the Court enter an order disallowing and expunging in their entirety the No Liability Claims listed on Exhibit A.

## II.     THE NO LIABILITY CLAIMANTS' CONTINGENT CLAIMS FOR CONTRIBUTION OR REIMBURSEMENT ALSO SHOULD BE DISALLOWED UNDER SECTION 502(E)(1)(B).

18.     Section 502(e)(1)(B) of the Bankruptcy Code provides that "the court shall disallow any claim for reimbursement or contribution of any entity that is liable with the debtor…to the extent that…such claim for reimbursement or contribution is contingent as of the

time of allowance or disallowance of such claim." 11 U.S.C. § 502(e)(1)(B).  Thus, for a claim

to be disallowed under section 502(e)(1)(B), three elements must be satisfied: (1) the claim must

be for reimbursement or contribution; (2) the party asserting the claim must be liable with the

debtor on the claim of a third party; and (3) the claim must be contingent at the time of its

allowance or disallowance.  *In re GCO Svs., LLC,* 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005)

(citations omitted).  Applying this analysis, this Court has disallowed underwriters' claims for

potential future indemnity and defense costs against the debtor as lead underwriter that were very

similar to the No Liability Claims.  *See In re Drexel Burnham Lambert Grp. Inc.* ("*Drexel II*"),

148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992); *see also Matter of Provincetown-Boston Airlines,*

*Inc.,* 72 B.R. 307, 310 (Bankr. M.D. Fla. 1987) (disallowing underwriter claims for

indemnification and contribution against debtor as issuer).  Each of these three elements is

satisfied with respect to the No Liability Claims.

19.      First, the proofs of claim make clear that the No Liability Claims seek

reimbursement or contribution.  (*See, e.g.*, STRH Attachment, at 3 ("STRH has a contingent,

unsecured claim for contribution…"); Williams Attachment, at 1 (seeking "indemnification

and/or contribution rights against LBI…"); National Australia Addendum, ¶ 2 (filing claim

"[p]ursuant to the indemnification and/or contribution provisions in the Agreements").)  Thus,

the first element of section 502(e)(1)(B) is established.

20.      Second, the No Liability Claimants allege that LBI is liable as a co-

underwriter of the LBHI securities. (*See, e.g.*, *id.*, at 1 ("[t]his claim is made…for obligations

under the indemnification and/or contribution provisions of agreements among underwriters…in

connection with certain securities offerings issued by [LBHI] for which LBI served as the lead

underwriter").  The litigation against the No Liability Claimants and others is based on their roles

9

as underwriters of the LBHI securities; such allegations, if proven, also would extend to claims

for which LBI could be liable but for the automatic stay.  *See In re Drexel Burnham Lambert*

*Grp. Inc.,* 146 B.R. 98, 102 (Bankr. S.D.N.Y. 1992) ("*Drexel I*") (if the underlying third party

action asserts claims which would render the debtor liable to the plaintiffs in those underlying

actions, the debtor is considered co-liable for the purposes of determining if 502(e)(1)(B)

applies).  Thus, the second element of section 502(e)(1)(B) is also satisfied.

21.     Third, the No Liability Claims are contingent because they are based on

unresolved litigation in which potential liability is still undetermined.  The No Liability

Claimants acknowledge their claims are contingent and unresolved.  (*See, e.g.*, Williams

Attachment, at 2 ("these lawsuits are still pending…Claimant therefore makes a claim for its

Indemnified Losses in *contingent*, unliquidated amounts" (emphasis added)); *see supra*, ¶ 14.)  A

contingent claim is a claim which "has not yet accrued and … is dependent upon a future event

that may never happen."  *In re GCO,* 324 B.R. at 466 (citation omitted).  *See also Matter of*

*Provincetown-Boston Airlines*, 72 B.R. at 310 (the future event on which the contingent claim is

dependent is the establishment of claimant and debtor's liability in the class action litigation).

22.     To date, the Court in the Lehman Securities Litigation has not determined

the No Liability Claimants' liability, if any.[5]  *See Drexel I* at 103 (joint tortfeasor contribution

claims for partial settlement remain contingent and require a hearing before becoming fixed).

While some No Liability Claimants have settled the underlying securities claims, those settling

defendants maintain they have no liability. (*See, e.g.,* Judgment and Order Approving Settlement

---

[5]     In fact, certain actions against some of the No Liability Claimants have been dismissed in their entirety.  (*See,
e.g., Deathrow v. Fuld et al.*, 09 Civ. 1230, Pretrial Order No. 47, ECF No. 118, attached as <u>Exhibit 6</u> to the
Zakai Decl.)

Between Lead Plaintiffs and the Settling Underwriter Defendants, ¶ 14(a), 1:08-cv-5523, ECF No. 397, attached as <u>Exhibit 7</u> to the Zakai Decl. (the settlement cannot be construed as "any presumption, concession or admission by any of the [settling defendants] with respect to the truth of any fact alleged by Named Plaintiffs…*or of any liability, negligence, fault or wrongdoing* of any of the [settling defendants]") (emphasis added).)  Claims for contribution are based on the assertion that claimants have "paid more than its fair share."  *See Drexel I,* 146 B.R. at 103. Such claims for reimbursement and contribution remain contingent where that determination has not been made and the exact amount for which the debtor is co-liable is not "fixed." *See id*. at 102-03.  Without any determination of the relative fault of the No Liability Claimants vis-a-vis LBI, any settlement payment represents only "the maximum amount" for which LBI could be liable, and "leaves open the possibility that" LBI "could be liable to contribute less than this amount." *See id*. at 102.

23.     To the extent the No Liability Claims are based on contractual indemnification, the agreements demonstrate that any LBI liability is doubly contingent.  First, the underwriters' obligations to indemnify each other becomes applicable only if indemnification by LBHI is unavailable or insufficient.  (*See* SMH Capital Inc., Attachment to Proof of Claim, Underwriting Agreement for 7.95% Non-Cumulative Perpetual Preferred Stock, Series J ("Underwriting Agreement"), §§ 8(a),(d), excerpts attached as <u>Exhibit 8</u> to the Zakai Decl.; *see also* STRH Attachment, at 3 ("[LBI] is obligated…to contribute…in the event the indemnity provided by LBHI, as the issuer of the securities is unavailable or insufficient").)  Several of the No Liability Claimants have asserted claims in the LBHI proceeding for indemnification.  Only if those claims prove insufficient will they have potential claims against LBI.  Second, the obligations of underwriters only apply where No Liability Claimants have paid more than their

11

proportionate shares. (*See* Underwriting Agreement, § 8(d) ("[t]he Underwriters' obligations to contribute as provided in this Section 8(d) are several in proportion and to their underwriting obligations and not joint").) Plaintiffs in the LBHI Securities Litigation also have asserted general creditor claims in the LBI SIPA Proceeding, and therefore LBI has incurred costs within the scope of the agreement. Thus, the No Liability Claimants do not show that they have paid more than their respective shares, and the amount for which LBI is co-liable is not fixed. *See Drexel I,* 146 B.R. at 102-03.

24.  Similarly, to the extent the No Liability Claims seek defense costs reimbursement, the claims also are contingent within the meaning of section 502(e)(1)(B). (*See* STRH Attachment, at 3 ("STRH has a contingent, unsecured claim for contribution for defense costs that may be incurred"). *See Drexel II*, 148 B.R. at 990-91 (considering defense costs among co-underwriters as contingent and disallowing claim under 502(e)(1)(B)). Further, the proofs of claim do not establish that the indemnification by LBHI is unavailable or insufficient. (*See* Underwriting Agreement, § 8(d).)

## III.  ALTERNATIVELY, BECAUSE THE NO LIABILITY CLAIMS SEEK REIMBURSEMENT OR CONTRIBUTION ON ACCOUNT OF CLAIMS ARISING FROM THE PURCHASE OR SALE OF LBHI SECURITIES, THEY MUST BE SUBORDINATED UNDER SECTION 510(B) OF THE BANKRUPTCY CODE.

25.  Section 510(b) of the Bankruptcy Code provides that claims "arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . .". 11 U.S.C. § 510(b). The policy behind enacting section 510(b) was "to prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to

bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding." *In re Enron Corp.*, 341 B.R. 141, 158 (S.D.N.Y. 2006) (citing *In re Telegroup*, 281 F.3d 133, 142 (3d Cir. 2002)). This mandatory subordination is designed to prevent holders of securities from violating the absolute priority rule by improperly elevating their claims to the level of general unsecured creditors. *See In re SeaQuest Diving, LP*, 579 F.3d 411, 418 (5th Cir. 2009); *In re Med Diversified, Inc.*, 461 F.3d 251, 256 (2d Cir. 2006) (claims should be subordinated if the claimant "took on the risk and return expectations of a shareholder, rather than a creditor"). This rationale behind subordination applies not only to direct claims asserted by shareholders, but also by those who evaluate risks associated with the securities. *See In re De Laurentiis Entm't. Grp., Inc.*, 124 B.R. 305, 310 (C.D. Cal. 1991).

26.     Section 510(b) thus subordinates claims for reimbursement or contribution on account of a securities claim. 11 U.S.C. § 510(b). This Court has applied section 510(b) to subordinate underwriter indemnification claims arising from litigation involving the debtor's securities. *See In re Jacom Computer Servs., Inc.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002). The same authority requires subordination of underwriter indemnification claims arising from litigation involving LBI's affiliate's securities.

A.     The No Liability Claims Arise From the Purchase or Sale of LBHI Securities.

27.     First, there is no dispute that the securities at issue in the underlying litigation are "securities" within the meaning of section 510(b). *See* 11 U.S.C. § 101(49)(A)(i),(ii),(iv) (defining "security" to include, among other things, a "note," a "stock," and a "bond"). Indeed, the No Liability Claimants repeatedly refer to the LBHI securities as "securities" in the proofs of claims, including stock, notes, and bonds. (*See, e.g.*, Williams Attachment, at 1; STRH Attachment, at 1.)

13

28.    "[A]rising from" a securities transaction means only that the transaction is part of the causal link leading to the injury.  *In re Granite Partners, L.P.*, 208 B.R. 332, 339 (Bankr. S.D.N.Y. 1997).  For example, "breach of contract claims may be subordinated under section 510(b) where there exists 'some nexus or causal relationship between the claims and the purchase of the securities . . .'".  *In re Enron Corp.*, 341 B.R. at 161 (citing *In re Telegroup*, 281 F.3d at 138).

29.    The claims asserted by the No Liability Claimants for indemnity, contribution, or reimbursement arise from the purchase and sale of securities issued by LBHI, which is an affiliate of LBI.  The proofs of claim make clear that the Lehman Securities Litigation and other actions, as well as the No Liability Claims, arise from the purchase and sale of securities issued by LBHI.  (*See, e.g.*, Williams Attachment, at 1 (asserting indemnification and/or contribution claims for "damages based upon alleged false statements and/or omissions in the offering materials of various LBHI securities"); STRH Attachment, at 1 (actions against STRH "aris[e] out of STRH's involvement as an Underwriter of certain public offerings of equity/debt securities of LBHI"); National Australia Addendum, ¶ 2 ("[t]his claim arises from those certain Agreements to those certain security offerings issued by LBHI").)  Thus, these affiliate securities transactions are the causal link leading to the No Liability Claims.

B.  The No Liability Claims Must Be Subordinated Pursuant to Section 510(b).

30.    Under Section 510(b), the No Liability Claims for indemnification, contribution and reimbursement must be subordinated.  Section 510(b) applies when the claim arises out of a securities transaction involving the debtor or an affiliate of the debtor, even if the creditor is not a security holder.  As the Second Circuit has stated, "a claimant need not be an

14

actual shareholder for his claim to be covered by [section 510(b)]." *In re Med Diversified*, 461 F.3d at 258 (affirming subordination of claim by former executive employee of debtor based on debtor's failure to issue common stock according to termination agreement).

31.     In *In re Jacom*, this Court squarely held that indemnification claims for legal expenses incurred by a debtor's underwriters in defending securities fraud claims by the debtor's shareholders should be subordinated. 280 B.R. at 572. Subordination of claims for indemnification is part of the "risk allocation" inherent in section 510(b); reimbursement and contribution claims are just the addition of "new classes of persons and entities" subject to 510(b) subordination. *Id*. (citing *In re Mid-Am. Waste Sys., Inc.* 228 B.R. 816, 826 (Bankr. D. Del. 1999)). *See also In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 103 (Bankr. D. Del. 2008) ("The plain language of [section 510(b)] is broad enough to include indemnification claims for both liabilities and expenses incurred on account of a claim for 'damages arising from the purchase or sale' of the debtor's or its affiliate's securities."); *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 829 (9th Cir. 2001) ("Nothing in § 510(b)'s text requires a subordinated claimant to be a shareholder").

32.     As this Court explained in *In re Jacom*, "underwriters are in a better position to allocate risks associated with the issuance of securities" and "it is inconsistent with the policies articulated in the legislative history of section 510(b) to force unsecured creditors to subsidize the underwriters' litigation costs." 280 B.R. at 572. *See also In re Mid-Am.*, 228 B.R. at 824 (subordinating claims for defense costs asserted by underwriters under indemnification agreement); *In re De Laurentiis*, 124 B.R. at 310 (subordinating claim for reimbursement of attorney fees pursuant to underwriting agreement with debtor in connection with securities offerings).

15

## **RESERVATION OF RIGHTS**

33.     There may be additional grounds for objections to the No Liability Claims.
The Trustee reserves all rights to object on any other basis to any No Liability Claim or any
portion of any No Liability Claim for which the Court does not grant the relief requested herein.

## **NOTICE**

34.     Notice of this One Hundred Fourth Omnibus Objection to General
Creditor Claims has been provided to (i) each claimant listed on Exhibit A via overnight mail;
and (ii) the list of parties requesting notice of pleadings in accordance with the Court's Amended
Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and
9007 Implementing Certain Notice and Case Management Procedures and Related Relief entered
by the Court on July 13, 2010 (ECF No. 3466), and will be immediately available for inspection
upon filing with the Court at the Trustee's website, www.lehmantrustee.com.  The Trustee
submits that no other or further notice need be provided.

## **NO PRIOR RELIEF REQUESTED**

35.     No previous request for the relief requested herein has been made by the
Trustee to this or any other Court.

## CONCLUSION

For the reasons stated herein, the Trustee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:   New York, New York
         July 12, 2013

HUGHES HUBBARD & REED LLP

By: /s/ James B. Kobak, Jr.
James B. Kobak, Jr.
Christopher K. Kiplok
Robert B. Funkhouser
Meaghan C. Gragg
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  kobak@hugheshubbard.com

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.

**EXHIBIT A**

## IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (JMP) SIPA
## ONE HUNDRED FOURTH OMNIBUS OBJECTION: EXHIBIT A – NO LIABILITY CLAIMS

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 1 | ANZ SECURITIES, INC. ANN VARRALLI MCCLELLAND 1177 AVENUE OF THE AMERICAS 6TH FLOOR NEW YORK, NY 10036 | 5678 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 2 | BMO CAPITAL MARKETS CORP. FORMERLY KNOWN AS HARRIS NESBITT CORP. JAMES E. SPIOTTO CHAPMAN AND CUTLER LLP 111 WEST MONROE STREET CHICAGO, IL 60603-4080 | 5133 | 5/29/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 3 | BNY MELLON CAPITAL MARKETS, LLC ATTN: JONATHAN R. GOLDBLATT THE BANK OF NEW YORK MELLON ONE WALL STREET, 11TH FLOOR NEW YORK, NY 10286 | 5682 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 4 | CABRERA CAPITAL MARKETS, LLC ROBERT AGUILAR 10 SOUTH LASALLE STREET SUITE 1050 CHICAGO, IL 60603 | 5683 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 5 | DNB NOR MARKETS, INC. MARCUS WENDEHOG VICE PRESIDENT & ASSISTANT COUNSEL 200 PARK AVENUE NEW YORK, NY 10166 | 4360 | 4/23/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 6 | EDWARD D. JONES & CO., L.P. PHILIP R. SCHWAB 12555 MANCHESTER ROAD ST LOUIS, MO 63131-3729 | 5686 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 7 | FORTIS SECURITIES LLC F/K/A FORTIS INVESTMENT SERVICES LLC ATTN: MARK C. ELLENBERG CADWALADER, WICKERSHAM & TAFT LLC 1201 F. ST. NW SUITE 1100 WASHINGTON, DC 20004 | 4944 | 5/29/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 8 | NABCAPITAL SECURITIES, LLC JAMES E. SPIOTTO CHAPMAN AND CUTLER LLP 111 WEST MONROE STREET CHICAGO, IL 60603-4080 | 5127 | 5/29/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 9 | NATIONAL AUSTRALIA BANK LIMITED JAMES E. SPIOTTO CHAPMAN AND CUTLER LLP 111 WEST MONROE STREET CHICAGO, IL 60603-4080 | 5738 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

3

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 10 | NATIONAL FINANCIAL SERVICES LLC ATTN: MARTHA A. MAZZONE, ESQ. FIDELITY INVESTMENTS 82 DEVONSHIRE STREET F6C BOSTON, MA  02109-3614 | 5673 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 11 | SCOTT & STRINGFELLOW, LLC F/K/A SCOTT & STRINGFELLOW, INC. ALEX W. C. CECIL BB&T CAPITAL MARKETS 909 EAST MAIN STREET RICHMOND, VA  23219 | 5671 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 12 | SMH CAPITAL INC. JOHN T UNGER 600 TRAVIS, SUITE 5800 HOUSTON, TX  77002 | 7002006 | 5/26/2009 | $3,436,590.00 | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 13 | SUNTRUST ROBINSON HUMPHREY, INC. ATTN: WILLIAM MAYFIELD, ESQ. 3333 PEACHTREE ROAD, 11TH FL ATLANTA, GA 30326 | 5841 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 14 | TD AMERITRADE HOLDING CORPORATION ELLEN L.S. KOPLOW 6940 COLUMBIA GATEWAY DRIVE SUITE 200 COLUMBIA, MD 21046 | 5669 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 15 | THE WILLIAMS CAPITAL GROUP, L.P. DIANNE CALABRISOTTO 650 FIFTH AVENUE, 11TH FLOOR NEW YORK, NY 10019 | 5667 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

5

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 16 | UBS FINANCIAL SERVICES INC.<br>DAVID L. GOLDBERG, ESQ.<br>1200 HARBOR BOULEVARD<br>WEEHAWKEN, NJ 07086-6791 | 5275 | 5/29/2009 | $75,818,358.91 | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| | Total | | | $79,254,948.91 | |

6

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (JMP) SIPA |
| Debtor. | |

### DECLARATION OF JASON E. ZAKAI IN SUPPORT OF
### THE TRUSTEE'S ONE HUNDRED FOURTH OMNIBUS OBJECTION TO
### GENERAL CREDITOR CLAIMS (NO LIABILITY CLAIMS)

Pursuant to 28 U.S.C. § 1746, I, Jason E. Zakai, hereby declare as follows:

1.      I am an attorney duly admitted to practice in this Court and an associate at the law firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc.  I submit this declaration in support of the Trustee's Seventy-Ninth omnibus objection to general creditor claims.

2.      Attached as Exhibit 1 is a true and correct copy of proof of claim number 5667 and supporting documentation filed by The Williams Capital Group, L.P. in this matter.

3.      Attached as Exhibit 2 is a true and correct copy of proof of claim number 5738 and supporting documentation filed by National Australia Bank Limited in this matter.

4.      Attached as Exhibit 3 is a true and correct copy of proof of claim number 5841 and excerpts of the supporting documentation filed by SunTrust Robinson Humphrey, Inc. in this matter.

5.      Attached as Exhibit 4 is a true and correct copy of proof of claim number 4944 and supporting documentation filed by Fortis Securities LLC in this matter.

6.      Attached as Exhibit 5 is a true and correct copy of excerpts of the Second Amended Consolidated Class Action Complaint For Violations of the Federal Securities Laws,

Docket Item 89 in *In re Lehman Brothers Equity/Debt Securities Litigation*, Case No. 08-Civ-5523 (LAK).

7.      Attached as Exhibit 6 is a true and correct copy of Pretrial Order No. 47, Docket Item 118 in *Deathrow v. Fuld et al.,* 09 Civ. 1230.

8.      Attached as Exhibit 7 is a true and correct copy of Judgment and Order Approving Settlement Between Lead Plaintiffs and the Settling Underwriter Defendants, Docket Item 397 in *In re Lehman Brothers Equity/Debt Securities Litigation*, Case No. 08-Civ-5523 (LAK).

9.      Attached as Exhibit 8 is a true and correct copy of proof of claim number 7002006 and excerpts of the supporting documentation filed by SMH Capital Inc. in this matter.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on July 12, 2013

By: /s/ Jason E. Zakai
Jason E. Zakai
Associate, Hughes Hubbard & Reed LLP

**EXHIBIT 1**

**Filed: USBC - Southern District of New York**
**SIPC v. Lehman Brothers Inc.**
**08-01420 (JMP)**

RECEIVED

JUN 0 1 2009

LEGAL SERVICES

**Bankruptcy Claim #**

000005667

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Lehman Brothers Inc. | Case Number:<br>08-01420 (JMP) SIPA |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>The Williams Capital Group, L.P. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>DiAnne Calabrisotto<br>The Williams Capital Group, L.P.<br>650 Fifth Avenue, 11th Floor<br>New York, NY 10019<br>Telephone number: (212) 830-4559 | with a copy to<br>Mitchell A. Lowenthal<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>(212) 225-2000 | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |

| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ☑ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>SEE ATTACHED<br>☐ Check this box if you are the debtor or trustee in this case. |
|---|---|

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**    $ SEE ATTACHED<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim. |
| **2. Basis for Claim:**    Indemnification and/or contribution for underwriting of Lehman securities<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>    **3a. Debtor may have scheduled account as:** _____<br>    (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other<br>Describe:<br><br>Value of Property:$_____  Annual Interest Rate____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____  Basis for perfection: _____<br><br>Amount of Secured Claim: $_____  Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>Amount entitled to priority:<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br><br>5/29/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*[signature]* DiAnne Calabrisotto, COO<br>The Williams Capital Group, L.P. | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## ATTACHMENT TO CLAIM OF THE WILLIAMS CAPITAL GROUP, L.P.

The claimant, The Williams Capital Group, L.P. ("Claimant"), a limited partnership organized under the laws of Delaware, which maintains an office at 650 Fifth Avenue, 11th Floor, New York, NY 10019, is duly authorized and empowered to make this claim.

This attachment is intended to provide background information relating to a claim by Claimant against Lehman Brothers Inc. ("LBI") for contingent, unliquidated amounts of losses that have been and/or will be incurred as a result of various lawsuits brought against Claimant related to its alleged underwriting of Lehman Brothers Holdings Inc. ("LBHI") securities.

Claimant has been named as a defendant in connection with the lawsuits described below, all of which seek damages based upon alleged false statements and/or omissions in the offering materials of various LBHI securities allegedly underwritten by Claimant and certain other alleged underwriters, including LBI. Pursuant to indemnification and/or contribution provisions in the underwriting agreements, purchase agreements, distribution agreements, agreements among underwriters or similar agreements, as amended or supplemented, executed in connection with these offerings (all collectively, the "Agreements"),[1] and/or rights at common law, Claimant and other participants in the offerings (the "Offering Participants") have certain indemnification and/or contribution rights against LBI for certain losses arising out of certain alleged false statements and/or omissions in the offering materials and for any legal or other expenses reasonably incurred by the Offering Participants in investigating, defending, and/or preparing to defend against such losses (all collectively, the "Indemnified Losses").

In particular, Claimant is named as a defendant in the following lawsuits and is alleged to have underwritten, along with other alleged underwriters, the LBHI securities offerings described herein, resulting in Indemnified Losses:

1. In Re: Lehman Equity / Debt Securities Litigation, No. 08 CV 5523 (pending in the United States District Court for the Southern District of New York) (the "Lehman Securities Litigation").[2] We refer to the Lehman Securities Litigation Consolidated Amended Complaint filed February 23, 2009 for its contents,[3] but in general it alleges misrepresentations and/or omissions with respect to the following LBHI offerings allegedly underwritten by Claimant and certain other alleged underwriters:

- May 25, 2007 offering of Medium Term Notes, Series I (52517P2K6)
- July 19, 2007 offering of 6% Notes Due 2012 (52517P4C2)

---

[1]     The Agreements are voluminous and, upon information and belief, are in the possession of LBHI and/or LBI. Accordingly, they have not been filed with this Proof of Claim.

[2]     By order dated January 9, 2009, Judge Lewis A. Kaplan consolidated for all pre-trial purposes several previously filed class actions into No. 08 CV 5523, previously captioned Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund v. Richard S. Fuld, Jr., et al., and also provided for pre-trial consolidation of all actions involving claims relating to LBHI securities that were later instituted in or removed or transferred to that Court.

[3]     The complaints referenced in this Proof of Claim are voluminous and accordingly have not been filed with this Proof of Claim. However, they are available upon request from Claimant or via the Electronic Case Filing system for the federal district in which the relevant action is pending.

- July 23, 2007 offering of Medium Term Notes, Series I – Cooper and Zinc Enhanced Participation Notes (52517P4F5)
- April 24, 2008 offering of 6.875% Notes Due 2018 (5252M0FD4)
- May 9, 2008 offering of 7.50% Subordinated Notes Due 2038 (5249087N4)

    2.    <u>Michael Shipley v. Richard S. Fuld, Jr., et al.</u>, No. 09 CV 01235 (pending in the United States District Court for the Southern District of New York and now consolidated for all pre-trial purposes with the <u>Lehman Securities Litigation</u>) ("<u>Shipley</u>"). We refer to the <u>Shipley</u> Complaint filed November 4, 2008 for its contents, but in general it alleges misrepresentations and/or omissions with respect to the December 21, 2005 offering of 5% Bonds Due January 14, 2011 allegedly underwritten by Claimant and certain other alleged underwriters.

    3.    <u>American National Insurance Co. et al. v. Richard S. Fuld, Jr. et al.</u>, No. 09 CV 02363 (pending in the United States District Court for the Southern District of New York and now consolidated for certain pre-trial purposes with the <u>Lehman Securities Litigation</u>) ("<u>American National</u>"). We refer to the <u>American National</u> Amended Complaint filed February 20, 2009 for its contents, but in general it alleges misrepresentations and/or omissions with respect to the offering of Medium Term Notes, Series H (CUSIP 52517PG96) pursuant to a May 18, 2005 prospectus and April 18, 2006 pricing supplement allegedly underwritten by Claimant and certain other alleged underwriters:

* * *

    Because these lawsuits are still pending, the amount of Claimant's Indemnified Losses cannot be determined at this time. Claimant therefore makes a claim for its Indemnified Losses in contingent, unliquidated amounts.[4]

    Claimant hereby reserves the right to amend, clarify, modify or supplement this claim to assert additional claims or additional grounds for its claims. Claimant also reserves all rights accruing to it against LBI, LBHI or any other affiliate of either of them, and the filing of this claim is not intended to be and shall not be construed as (a) an election of remedy or (b) a waiver or limitation of any rights of Claimant. Claimant reserves the right to supplement this claim with relevant documents to the extent necessary. Furthermore, Claimant reserves the right to withdraw this claim for any reason whatsoever.

    This claim shall not be deemed to be a waiver of Claimant's right (i) to have final orders in non-core matters entered only after de novo review by a District Court Judge, (ii) to trial by jury in any proceeding so triable in these cases or any case, controversy or proceeding related to these cases, (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, setoffs or recoupments to which Claimant is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses and recoupments Claimant expressly reserves.

---

[4]    Claimant may also file a claim related to its Indemnified Losses in the Chapter 11 proceedings of LBHI (No. 08-13555 (JMP)). Upon information and belief, other Offering Participants may also be filing claims against LBI and/or LBHI for indemnification and/or contribution for losses related to the above-referenced lawsuits.

2

Claimant, by filing this claim, does not submit to the jurisdiction of the Bankruptcy Court for any purposes other than with respect to this proof of claim.

This claim is in addition to, and does not supersede, any other claim filed or to be filed by Claimant against LBI, LBHI, or any other affiliate of either.

Any notices in connection with this claim should be addressed to Claimant at the address below:

DiAnne Calabrisotto, COO
The Williams Capital Group, L.P.
650 Fifth Avenue, 11th Floor
New York, NY 10019
(212) 830-4559
Fax (212) 830-4545
calabisotto@willcap.com

-and-

Mitchell A. Lowenthal
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000
Fax (212) 225-3999
mlowenthal@cgsh.com

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| WASHINGTON, DC | ONE LIBERTY PLAZA | FRANKFURT |
| PARIS | NEW YORK, NY 10006-1470 | COLOGNE |
| | (212) 225-2000 | ROME |
| BRUSSELS | FACSIMILE (212) 225-3999 | MILAN |
| LONDON | WWW.CLEARYGOTTLIEB.COM | HONG KONG |
| MOSCOW | Writer's Direct Dial: (212) 225-2538<br>E-Mail: bgibbon@cgsh.com | BEIJING |

May 29, 2009

<u>VIA FEDERAL EXPRESS</u>

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

Re:  <u>Claims to be filed in Lehman Brothers Inc.</u>

Dear Sir or Madam:

Enclosed please find twenty-one (21) separate proofs of claim, along with one copy of each, to be filed in the proceedings of Lehman Brothers Inc. (Case No. Bankr. S.D.N.Y. 08-01420 (JMP) (SIPA)) on behalf of the following claimants:

1. A.G. Edwards & Sons, Inc.

2. ANZ Securities, Inc.

3. Banc of America Investment Services, Inc.

4. Banc of America Securities LLC

5. BBVA Securities, Inc.

6. BNY Mellon Capital Markets, LLC

7. Cabrera Capital Markets, LLC

8. Citigroup Global Markets Inc.

9.  Countrywide Securities Corporation

10. Edward D. Jones & Co. L.P.

11. ING Financial Markets LLC

12. Merrill Lynch, Pierce, Fenner & Smith Incorporated

13. Morgan Stanley & Co. Inc.

14. National Financial Services LLC

15. Santander Investment Securities Inc.

16. Scott & Stringfellow, LLC

17. Standard Chartered Bank

18. TD Ameritrade Holding Corporation

19. Wachovia Capital Markets, LLC

20. Wells Fargo Securities, LLC

21. The Williams Capital Group, L.P.

Please file the claims, stamp each of the copies as received and return the stamped copies in the enclosed stamped envelopes. Thank you.

Sincerely,

Brendan Gibbon



USA
44

Purple
Heart

Attn: Managing Attorneys Office

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470



Align top of FedEx Express Shipping Label here.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

**VIA FEDERAL EXPRESS:**

TO:
Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

The

SE BNOA

MON – 01 JUN A2
PRIORITY OVERNIGHT
97005
PDX
OR-US

For FedEx Express® Shipments Only

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT     Southern District of New York | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Lehman Brothers Inc. | Case Number:<br>08-01420 (JMP) SIPA |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Wells Fargo Securities, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>David Rice<br>Wells Fargo Law Department<br>NC0630<br>301 South College Street<br>Charlotte, NC 28288-0630<br>Telephone number: (704) 383-4448     with a copy to<br>Mitchell A. Lowenthal<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>(212) 225-2000 | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ✓ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>**SEE ATTACHED**<br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:  $ SEE ATTACHED | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**2. Basis for Claim:** __Indemnification and/or contribution for underwriting of Lehman securities__
(See instruction #2 on reverse side.)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

**3. Last four digits of any number by which creditor identifies debtor:** _____

     **3a. Debtor may have scheduled account as:** _____
     (See instruction #3a on reverse side.)

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property:$_____   Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

    **Amount entitled to priority:**

    $_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>05/28/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>David J. Rice, Vice President / Assistant General Counsel<br>Wells Fargo Law Department | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ATTACHMENT TO CLAIM OF WELLS FARGO SECURITIES, LLC

The claimant, Wells Fargo Securities, LLC ("Claimant"),[1] a limited liability company organized under the laws of Delaware, which maintains an office at 301 South College Street, Charlotte, North Carolina 28288-0630, is duly authorized and empowered to make this claim.

This attachment is intended to provide background information relating to a claim by Claimant against Lehman Brothers Inc. ("LBI") for contingent, unliquidated amounts of losses that have been and/or will be incurred as a result of various lawsuits brought against Claimant related to its alleged underwriting of Lehman Brothers Holdings Inc. ("LBHI") securities.

Claimant has been named as a defendant in connection with the lawsuits described below, all of which seek damages based upon alleged false statements and/or omissions in the offering materials of various LBHI securities allegedly underwritten by Claimant and certain other alleged underwriters, including LBI. Pursuant to indemnification and/or contribution provisions in the underwriting agreements, purchase agreements, distribution agreements, agreements among underwriters or similar agreements, as amended or supplemented, executed in connection with these offerings (all collectively, the "Agreements"),[2] and/or rights at common law, Claimant and other participants in the offerings (the "Offering Participants") have certain indemnification and/or contribution rights against LBI for certain losses arising out of certain alleged false statements and/or omissions in the offering materials and for any legal or other expenses reasonably incurred by the Offering Participants in investigating, defending, and/or preparing to defend against such losses (all collectively, the "Indemnified Losses").

In particular, Claimant is named as a defendant in the following lawsuit(s) and is alleged to have underwritten, along with other alleged underwriters, the LBHI securities offerings described herein, resulting in Indemnified Losses:

1. In Re: Lehman Equity / Debt Securities Litigation, No. 08 CV 5523 (pending in the United States District Court for the Southern District of New York) (the "Lehman Securities Litigation").[3] We refer to the Lehman Securities Litigation Consolidated Amended Complaint filed February 23, 2009 for its contents,[4] but in general it alleges misrepresentations and/or omissions with respect to the following LBHI offerings allegedly underwritten by Claimant and certain other alleged underwriters:

---

[1]    It is anticipated that effective with the opening of business on July 1, 2009, Wells Fargo Securities, LLC will be merged with and into Wachovia Capital Markets, LLC. Thereafter, on July 3, 2009, Wachovia Capital Markets, LLC will change it legal name to Wells Fargo Securities, LLC and begin to use the brand name "Wells Fargo Securities."

[2]    The Agreements are voluminous and, upon information and belief, are in the possession of LBHI and/or LBI. Accordingly, they have not been filed with this Proof of Claim.

[3]    By order dated January 9, 2009, Judge Lewis A. Kaplan consolidated for all pre-trial purposes several previously filed class actions into No. 08 CV 5523, previously captioned Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund v. Richard S. Fuld, Jr., et al., and also provided for pre-trial consolidation of all actions involving claims relating to LBHI securities that were later instituted in or removed or transferred to that Court.

[4]    The complaints referenced in this Proof of Claim are voluminous and accordingly have not been filed with this Proof of Claim. However, they are available upon request from Claimant or via the Electronic Case Filing system for the federal district in which the relevant action is pending.

- September 26, 2007 offering of 6.2% Notes Due 2014 (52517P5X5)
- September 26, 2007 offering of 7% Notes Due 2027 (52517P5Y3)
- December 21, 2007 offering of 6.75% Subordinated Notes Due 2017 (5249087M6)
- January 22, 2008 offering of 5.625% Notes Due January 24, 2013 (5252M0BZ9)
- February 5, 2008 offering of 7.95% Non-Cumulative Perpetual Preferred Stock, Series J (52520W317)
- April 24, 2008 offering of 6.875% Notes Due 2018 (5252M0FD4)

2.    Brooks Family Partnership, LLC and KGT Inc. Pension Plan and Trust v. Richard S. Fuld, Jr., et al., No. 08 CV 10206 (pending in the United States District Court for the Southern District of New York and now consolidated for all pre-trial purposes with the Lehman Securities Litigation) ("Brooks"). We refer to the Brooks Complaint filed November 24, 2008 for its contents, but in general it alleges misrepresentations and/or omissions with respect to the February 5, 2008 offering of 7.95% Non-Cumulative Perpetual Preferred Stock, Series J allegedly underwritten by Claimant and certain other alleged underwriters (which is also at issue in the Lehman Securities Litigation).

3.    Jeffrey Stark and Kathy Rooney v. Erin Callan, et al., No. 08 CV 9793 (pending in the United States District Court for the Southern District of New York and now consolidated for all pre-trial purposes with the Lehman Securities Litigation) ("Stark"). We refer to the Stark Amended Complaint filed December 2, 2008 for its contents, but in general it alleges misrepresentations and/or omissions with respect to the February 5, 2008 offering of 7.95% Non-Cumulative Perpetual Preferred Stock, Series J (which is also at issue in the Lehman Securities Litigation) and various unspecified public offerings of securities by LBHI between July 31, 2007 and September 14, 2008 allegedly underwritten by Claimant and certain other alleged underwriters.

4.    Cecil Mease v. Richard S. Fuld, Jr., et al., No. 09 CV 01232 (pending in the United States District Court for the Southern District of New York and now consolidated for all pre-trial purposes with the Lehman Securities Litigation) ("Mease"). We refer to the Mease Complaint filed October 21, 2008 for its contents, but in general it alleges misrepresentations and/or omissions with respect to the October 24, 2006 offering of 5.75% Subordinated Notes Due 2017 allegedly underwritten by Claimant and certain other alleged underwriters.

5.    Cecil Mease and Rena Caldwell v. Richard S. Fuld, Jr., et al., No. 09 CV 01231 (pending in the United States District Court for Southern District of New York and now consolidated for all pre-trial purposes with the Lehman Securities Litigation) ("Mease & Caldwell"). We refer to the Mease & Caldwell Complaint filed October 22, 2008 for its contents, but in general it alleges misrepresentations and/or omissions with respect to the March 29, 2006 offering of 5.50% Subordinated Notes Due 2016 allegedly underwritten by Claimant and certain other alleged underwriters.

6.    City of South San Francisco v. Citigroup Global Markets Inc., et al., No. 09 CV 01946 (pending in the United States District Court for the Southern District of New York and now consolidated for certain pre-trial purposes with the Lehman Securities Litigation) ("City of South San Francisco"). We refer to the City of South San Francisco Complaint filed December 16, 2008 for its contents, but in general it alleges

misrepresentations and/or omissions with respect to following LBHI offerings allegedly underwritten by Claimant and certain other alleged underwriters:[5]

- An October 24, 2005 offering of Medium Term Notes of LBHI (CUSIP 52517PC58).
- A January 22, 2008 offering of Medium Term Notes of LBHI (CUSIP 5252M0BZ9) (which is also at issue in the <u>Lehman Securities Litigation</u>).

7. <u>American National Insurance Co. et al. v. Richard S. Fuld, Jr. et al.</u>, No. 09 CV 02363 (pending in the United States District Court for the Southern District of New York and now consolidated for certain pre-trial purposes with the <u>Lehman Securities Litigation</u>) ("<u>American National</u>"). We refer to the <u>American National</u> Amended Complaint filed February 20, 2009 for its contents, but in general it alleges misrepresentations and/or omissions with respect to following LBHI offering allegedly underwritten by Claimant and certain other alleged underwriters: an offering of Preferred J stock (CUSIP 52520W317) pursuant to a February 5, 2008 prospectus and previously filed registration statement (which is also at issue in the <u>Lehman Securities Litigation</u>).

8. <u>Washington State Investment Board v. Richard S. Fuld, Jr., et al.</u>, No. 09-2-01232-3 (pending in the Superior Court of the State of Washington, County of Thurston) ("<u>WSIB</u>"). We refer to the <u>WSIB</u> Complaint dated May 20, 2009 for its contents, but in general it alleges misrepresentations and/or omissions with respect to following offerings allegedly underwritten by Claimant and certain other alleged underwriters:

- The January 12, 2007 offering of Medium Term Notes due 2012 (which is also at issue in the <u>Fremont</u> Complaint).
- The October 24, 2006 offering of 5.75% Subordinated Notes Due 2017 (which is also at issue in the <u>Mease</u> Complaint).

\* \* \*

Because these lawsuits are still pending, the amount of Claimant's Indemnified Losses cannot be determined at this time. Claimant therefore makes a claim for its Indemnified Losses in contingent, unliquidated amounts.[6]

Claimant hereby reserves the right to amend, clarify, modify or supplement this claim to assert additional claims or additional grounds for its claims. Claimant also reserves all rights accruing to it against LBI, LBHI or any other affiliate of either of them, and the filing of this claim is not intended to be and shall not be construed as (a) an election of remedy or (b) a waiver or limitation of any rights of Claimant. Claimant reserves the right to supplement this claim with relevant documents to the extent necessary. Furthermore, Claimant reserves the right to withdraw this claim for any reason whatsoever.

---

[5] The relevant CUSIPs for offerings at issue in <u>City of South San Francisco</u> are taken from entries in Proof of Claim No. 1242 filed December 8, 2008 by the County of San Mateo in these Chapter 11 proceedings of LBHI (No. 08-13555 (JMP)), which, upon information and belief, correspond to the securities identified in the <u>City of South San Francisco</u> Complaint. According to the Complaint, the County of San Mateo organized and managed the investment pool in which plaintiff City of South Francisco invested.

[6] Claimant may also file a claim related to its Indemnified Losses in the Chapter 11 proceedings of LBHI (No. 08-13555 (JMP)). Upon information and belief, other Offering Participants may also be filing claims against LBI and/or LBHI for indemnification and/or contribution for losses related to the above-referenced lawsuits.

This claim shall not be deemed to be a waiver of Claimant's right (i) to have final orders in non-core matters entered only after de novo review by a District Court Judge, (ii) to trial by jury in any proceeding so triable in these cases or any case, controversy or proceeding related to these cases, (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, setoffs or recoupments to which Claimant is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses and recoupments Claimant expressly reserves.

Claimant, by filing this claim, does not submit to the jurisdiction of the Bankruptcy Court for any purposes other than with respect to this proof of claim.

This claim is in addition to, and does not supersede, any other claim filed or to be filed by Claimant against LBI, LBHI, or any other affiliate of either.

Any notices in connection with this claim should be addressed to Claimant at the address below:

David J. Rice
Wells Fargo Law Department
NC0630
301 South College Street
Charlotte, North Carolina 28288-0630
(704) 383-4448
(704) 383-0649 (facsimile)
david.j.rice@wachovia.com

-and-

Mitchell A. Lowenthal
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000
Fax (212) 225-3999
mlowenthal@cgsh.com

4

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| WASHINGTON, DC | ONE LIBERTY PLAZA | FRANKFURT |
| PARIS | NEW YORK, NY 10006-1470 | COLOGNE |
| BRUSSELS | (212) 225-2000 | ROME |
| | FACSIMILE (212) 225-3999 | MILAN |
| LONDON | WWW.CLEARYGOTTLIEB.COM | HONG KONG |
| MOSCOW | Writer's Direct Dial: (212) 225-2538<br>E-Mail: bgibbon@cgsh.com | BEIJING |

May 29, 2009

<u>VIA FEDERAL EXPRESS</u>

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

Re: Claims to be filed in Lehman Brothers Inc.

Dear Sir or Madam:

Enclosed please find twenty-one (21) separate proofs of claim, along with one copy of each, to be filed in the proceedings of Lehman Brothers Inc. (Case No. Bankr. S.D.N.Y. 08-01420 (JMP) (SIPA)) on behalf of the following claimants:

1. A.G. Edwards & Sons, Inc.

2. ANZ Securities, Inc.

3. Banc of America Investment Services, Inc.

4. Banc of America Securities LLC

5. BBVA Securities, Inc.

6. BNY Mellon Capital Markets, LLC

7. Cabrera Capital Markets, LLC

8. Citigroup Global Markets Inc.

9. Countrywide Securities Corporation

10. Edward D. Jones & Co. L.P.

11. ING Financial Markets LLC

12. Merrill Lynch, Pierce, Fenner & Smith Incorporated

13. Morgan Stanley & Co. Inc.

14. National Financial Services LLC

15. Santander Investment Securities Inc.

16. Scott & Stringfellow, LLC

17. Standard Chartered Bank

18. TD Ameritrade Holding Corporation

19. Wachovia Capital Markets, LLC

20. Wells Fargo Securities, LLC

21. The Williams Capital Group, L.P.

Please file the claims, stamp each of the copies as received and return the stamped copies in the enclosed stamped envelopes. Thank you.

Sincerely,

Brendan Gibbon



Attn: Managing Attorney's Office
CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

The Pak

For FedEx Express® Shipments Only

MON - 01 JUN A2
PRIORITY OVERNIGHT
97005
OR-US
PDX

SE BNOA

FedEx 8663 7762 0941

Align top of FedEx Express Shipping Label here.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

**VIA FEDERAL EXPRESS:**

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

TO:

---

**FedEx** Express  **US Airbill**  8663 7762 0941

Recipient's Copy

1 Date 5/29/09  FedEx Tracking Number 8663 7762 0941

Sender's Name  Mitchell A. Lowenthal  Phone 212 225-3575

Company  CLEARY GOTTLIEB

Address  1 LIBERTY PLZ FL 42

NEW YORK  State NY  ZIP 10006-1415

2 Your Internal Billing Reference  22795  27008-120

3 To
Recipient's Name  Lehman Bros. Inc. Claims Processing

Company  c/o Epiq Bankruptcy Solutions, LLC

Address  10300 SW Allen Blvd

City  Beaverton  State OR  ZIP 97005

0382762509

519

**EXHIBIT 2**

RECEIVED

JUN 0 1 2009

LEGAL SERVICES

**Filed: USBC - Southern District of New York**
**SIPC v. Lehman Brothers Inc.**
**08-01420 (JMP)**

**Bankruptcy Claim #**                    **000005738**

B 10 (Official Form 10) (12/07

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor: **LEHMAN BROS., INC.** | Case Number: **08-01420 (JMP) SIPA** |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**National Australia Bank Limited**

Name and address where notices should be sent:
James E. Spiotto
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603-4080
Telephone number: 312-845-3763

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):   National Australia Bank Limited
Floor 28
245 Park Avenue
New York, NY 10167
Attn: Shereen Tan

Telephone number: (212) 916-9626

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**   $ See Attached Statement of Claim

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Attached Statement of Claim
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: Substantially all assets of the Debtor and related debtors.

Value of Property:$ _____   Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ _____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:  Documents are voluminous and, therefore, are available upon request to Chapman and Cutler LLP, Attn: James E. Spiotto, Esq., 111 W. Monroe Street, Chicago, Illinois  60603-4080.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier- 11 U.S.C §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11  U.S.C §507(a)(7).

☐ Taxes or penalties owed to governmental units– 11  U.S.C §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(2).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | **FOR COURT USE ONLY** |
|---|---|

National Australia Bank Limited
By: _____
Bruce Rose, Managing Director

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

**STATEMENT OF CLAIM**
(Lehman Bros., Inc., Case No. 08-01420 (JMP) SIPA)

**ADDENDUM TO PROOF OF CLAIM OF NATIONAL AUSTRALIA BANK LIMITED, IN CASE NO. 08-01420 (JMP) SIPA, *IN RE LEHMAN BROTHERS, INC.*, PENDING IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*Name of Claimant.* This claim is made on behalf of National Australia Bank Limited against Lehman Brothers, Inc. (*"LBI"*), for obligations under the indemnification and/or contribution provisions of agreements among underwriters, underwriting agreements, purchase agreements and/or distribution agreements (the *"Agreements"*) in connection with certain securities offerings issued by Lehman Brothers Holding Inc. (*"LBHI"*) for which LBI served as lead underwriter as more fully set forth in that certain lawsuit related to those offerings, *Mease and Caldwell v. Fuld, et al.*, Case No. 2:08-cv-02123 (W.D. Ark. Nov. 13, 2008), in which National Australia Bank Limited, as underwriter, has been named as a defendant. *Mease and Caldwell v. Fuld* was consolidated with similar cases for pre-trial proceedings under the caption *In re Lehman Brothers Equity/Debt Securities Litigation. See* Second Consolidated Class Action Amended Complaint, 08-5523 (S.D.N.Y. Feb. 23, 2009) (LAK). This claim is in no way an admission of liability by National Australia Bank Limited.

The undersigned, Bruce Rose who maintains an office at 88 Wood Street, London, EC2V 7QQ, United Kingdom, is Managing Director of National Australia Bank Limited. The undersigned is duly authorized and empowered to make this Proof of Claim on behalf of National Australia Bank Limited. The undersigned is unaware of anyone else filing a proof of claim relating to this transaction. This Proof of Claim is filed in the SIPA proceeding of LBI.

*Name and Address Where Notices Should be Sent.*

Send all Court Orders, Notices and Payment To:

> Shereen Tan
> National Australia Bank Limited
> Floor 28
> 245 Park Avenue

2625847.01.02.doc

New York, NY 10167

Phone: (212) 916-9626

**With copies of all Court Orders and Notices to:**

        James E. Spiotto, Esq.
        Ann E. Acker, Esq.
        Franklin H. Top, III, Esq.
        Chapman and Cutler LLP
        111 West Monroe Street, 18th Floor
        Chicago, Illinois 60603

Phone: (312) 845-3000

    1.    *Amount of Claim as of Date Case Filed.* National Australia Bank Limited files this proof of claim in a contingent and unliquidated amount and reserves the rights to supplement this claim to specify the amount or to request estimation under Section 502(c) of the Bankruptcy Code. Further, National Australia Bank Limited reserves the right to include attorneys' fees and other fees and expenses at any time hereafter related to the claim to the extent available.

    2.    *Basis for Claim.* This claim arises from those certain Agreements to those certain security offerings issued by LBHI for which LBI served as lead underwriter including the March 29, 2006 offering of 5.50% subordinated notes due 2016. The *Mease and Caldwell v. Fuld* action was commenced on October 22, 2008 in the Circuit Court of Washington County, Arkansas and removed to the Western District of Arkansas on November 13, 2008. The Lawsuit was consolidated with other similar actions pending in the District Courts for pretrial purposes under the caption *In re Lehman Brothers Equity/Debt Securities Litigation*, 08-5523 (S.D.N.Y. Feb. 23, 2009) (LAK). Pursuant to the indemnification and/or contribution provisions in the Agreements or, to the extent available, under common law, National Australia Bank Limited files this claim. The filing of this claim is in no way an admission of liability on the part of National Australia Bank Limited.

    3.    *Classification of Claim.* This claim is a general unsecured claim and therefore is not secured by a lien on any property of the Debtors.

4. *Priority Status of Claim.* This claim is not entitled to priority under 11 U.S.C. § 507(a).

5. *Credits.* No funds have been paid from LBI or related Debtor to National Australia Bank Limited under the Agreements from the Petition Date to the date this claim was signed.

6. *Supporting Documents.* Writings on which the claim is founded include, without limitation, the documents listed as Exhibit A. Copies of any documents or portions of any documents are available from LBI. National Australia Bank Limited reserves the right to supplement the supporting documentation as appropriate.

*Reservation of Rights.* National Australia Bank Limited expressly reserves any rights, remedies, liens, interests, priorities, protections and claims which it may have against LBI or the Debtors and other parties under the Bankruptcy Code or SIPA. National Australia Bank Limited reserves the right to amend, restate and supplement this Proof of Claim or to file additional Proofs of Claim for additional claims against LBI and its related entities should National Australia Bank Limited deem it appropriate. National Australia Bank Limited reserves all rights accruing to it, including, but not limited to, its rights against all other creditors.

This Proof of Claim is filed under the compulsion of the bar date established in this case and is filed to protect National Australia Bank Limited from forfeiture of claims by reason of said bar date. The filing of this Claim is not intended to be and should not be deemed or construed as (a) an election of a remedy, (b) a consent by National Australia Bank Limited to the jurisdiction of the Bankruptcy Court or any other court with respect to the proceedings, if any, commenced, in any case against or otherwise involving National Australia Bank Limited, (c) a consent by National Australia Bank Limited to trial by jury as to any and all matters so triable herein or in any case, controversy or proceedings related hereto, pursuant to 28 U.S.C. § 157(e)

or otherwise, (d) a waiver of the right of National Australia Bank Limited to a trial by jury in any matter herein or in any case, controversy or proceeding related hereto, (e) a waiver of the right of National Australia Bank Limited to have final orders in non-core matters entered only after de novo review by the United States District Court, (f) a waiver of any right of National Australia Bank Limited to have the reference withdrawn by the United States District Court in any matter subject to mandatory or discretionary withdrawal, (g) a waiver of any past, present or future event of default in regard to the relevant documents or otherwise, (h) a waiver or limitation of any rights of National Australia Bank Limited including, without limitation, a waiver of obligations owing to National Australia Bank Limited, rights, claims, actions, defenses, set-offs or recoupments to which National Australia Bank Limited is or may be entitled under the relevant documents or otherwise, in law or equity, against LBI and/or any subsidiary or affiliate thereof, or any other person, including without limitation, rights against guarantors, officers or directors, or the right to contest the validity or extent of any liens or security interests purported to be equal, senior or inferior to any right, lien or security interest of National Australia Bank Limited, all of which rights, claims, actions, defenses, set-offs or recoupments are expressly reserved by National Australia Bank Limited or (i) an admission by National Australia Bank Limited that any property held by LBI (or any subsidiary or affiliate thereof) is property of the estate.

[Remainder of Page Intentionally Left Blank]

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY

INFORMATION AND BELIEF.

Dated: May __, 2009

National Australia Bank Limited

By:

Name: Bruce Rose
Title:   Managing Director

This Claim was also prepared by Ann E. Acker, Chapman and Cutler LLP, 111 West Monroe

Street, Chicago, Illinois 60603, (312) 845-3000.

**Exhibit A**

**Relevant Documents**

LIST OF RELEVANT DOCUMENTS

| 1 | Second Consolidated Class Action Amended Complaint, *In re Lehman Bros. Equity/Debt Sec. Litig.*, 08-5523 (S.D.N.Y. February 23, 2009) (LAK) |
|---|---|
| 2 | Agreement related to March 29, 2006 offering of 5.50% subordinated notes due 2016 |

# CHAPMAN AND CUTLER LLP

Theodore S. Chapman
1877-1943
Henry E. Cutler
1879-1959

111 West Monroe Street, Chicago, Illinois 60603-4080
Telephone (312) 845-3000
Facsimile (312) 701-2361
chapman.com

San Francisco

595 Market Street
San Francisco, CA 94105
(415) 541-0500

**Laura E. Appleby**
(312) 845-3819
(312) 516-1819 (Fax)
appleby@chapman.com

Salt Lake City

201 South Main Street
Salt Lake City, UT 84111
(801) 533-0066

May 29, 2009

**VIA OVERNIGHT DELIVERY (UPS)**

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

> Re: General Creditor Claim of National Australia Bank Limited
> Case No. 08-01420 (JMP) SIPA

Dear Trustee:

Enclosed are an original and two copies of a General Creditor Claim in the above-referenced matter to be filed in the SIPA Proceeding. Please return the two copies of the filed Proof of Claim to us in the enclosed self-addressed overnight envelope.

Very truly yours,

CHAPMAN AND CUTLER LLP

By: Laura E. Appleby

LEA/mm
Enclosures

2630567.01.01.doc
1697069

100% Recycled fiber
80% Post-Consumer

Call **1-800-PICK-UPS®** (1-800-742-5877) or visit **UPS.com®**.

- For UPS Next Day Air services, there is no weight limit for envelopes containing correspondence, urgent documents, and electronic media. When a UPS Next Day Air service is selected, UPS ... than those listed rates for the a ...

- For UPS Worl... be used only ... is no limit on ...

- Do not use U... over 13 ounc... UPS Express E... to the corres...

- Do not send ...

196 of 500
18418809
012861_P1
03217

## UPS Next Day Air™
## UPS Worldwide Express™

**Shipping Document**

TRACKING NUMBER **1Z 3E4 6W8 22 1018 4252**

**3 E 4 6 W 8**

REFERENCE NUMBER **#1697069**

SHIPMENT FROM
SHIPPER'S ACCOUNT **3 E 4 6 W 8**

NAME Lehman Brothers Inc. Claims Processing
LEA    EXT. 3819

COMPANY c/o Epiq Bankruptcy Solutions, LLC

STREET ADDRESS 10300 SW Allen Blvd

CITY AND STATE Beaverton    Oregon    ZIP CODE 97005

EXTREMELY URGENT DELIVERY TO

NAME Laura E. Appleby    TELEPHONE (312) 845-3819

COMPANY Chapman and Cutler LLP    DEPT/FLR.

STREET ADDRESS 111 W. Monroe Street

CITY AND STATE (INCLUDE COUNTRY IF INTERNATIONAL)
Chicago    Illinois    ZIP CODE 60603-4080

WEIGHT — Enter "LTR" if Letter    LTR

TYPE OF SERVICE    NEXT DAY AIR    EXPRESS (INT'L)    DOCUMENTS ONLY

For WORLDWIDE EXPRESS SHIPMENTS ...

OPTIONAL SERVICES    SATURDAY PICKUP    SATURDAY DELIVERY

DECLARED VALUE FOR CARRIAGE

ADDITIONAL HANDLING CHARGE

C.O.D.

METHOD OF PAYMENT    Bill Shipper's Account    Bill Receiver    Bill Third Party    CREDIT CARD    American Express    Visa    MasterCard

RECEIVER'S/THIRD PARTY'S UPS ACCT. NO. OR MAJOR CREDIT CARD NO.

THIRD PARTY'S COMPANY NAME

STREET ADDRESS

CITY AND STATE    ZIP CODE

SHIPPER'S SIGNATURE    X

TOTAL CHARGES

CHECK    EXPIRATION DATE    DATE OF SHIPMENT

SHIPPER RELEASE

All shipments are subject to the terms contained in the UPS Tariff/Terms and Conditions of Service, which are available at ups.com and local UPS offices.

UPS COPY

This form not needed with UPS Internet Shipping at UPS.com

Apply shipping documents ...

Do not use this envelope f...

**UPS Ground**

01019112026Q9 107 S

08-13555-mg Doc 46973-5 Filed 11/17/14 Entered 11/17/14 18:05:00 Exhibit E
Pg 63 of 161

(800-742-5877) or visit UPS.

BILLING: P/P
PKGID:268798

UPS NEXT DAY AIR

TRACKING #: 1Z 3E4 6W8 44 6043 3544

OR 970 9-10

1 S

SHIP C/O EPIQ BANKRUPTCY SOLUTIONS LLC
TO: LEHMAN BROTHERS INC. CLAIMS PROCESSING
10300 SW ALLEN BLVD
BEAVERTON OR 97005

LAURA E. APPLEBY
CHAPMAN AND CUTLER LLP
(312) 845-3819
111 W MONROE ST
CHICAGO IL 60603

(866) 841-7868

1 LBS        1 OF 1

2B

ASC 07-i-0 DMX/J/863 90.5V 04/2009

LEHMAN BROTHERS CLAIMS PROCESS
10300 SW ALLEN BLVD
BEAVERTON OR 97005-4833
P: YELLOW S:300      T:5D

323 - 1465     X
1Z3E46W8446043 3544

Do not use this Express Pak for:

with the following services:

UPS Next Day Air™
UPS Worldwide Express℠
UPS 2nd Day Air®
UPS Worldwide Expedited℠

Apply shipping documents

UPS Ground
UPS Standard
UPS 3 Day Select™

**EXHIBIT 3**

**Filed: USBC - Southern District of New York**
**SIPC v. Lehman Brothers Inc.**
**08-01420 (JMP)**

RECEIVED

JUN 0 1 2009

LEGAL SERVICES

**Bankruptcy Claim #**                    **000005841**

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Lehman Brothers, Inc. | Case Number:<br>08-01420 (JMP) SIPA |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): SunTrust Robinson Humphrey, Inc.

Name and address where notices should be sent:
SunTrust Robinson Humphrey, Inc.
3333 Peachtree Road, 11th Floor
Atlanta, GA 30326
Attention: William Mayfield, Esq.
Telephone number: (404) 230-5159

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):
Same

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ See Attachment A

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Expenses in connection with issuances by Lehman Brothers Holdings, Inc. (See Attachment A)
*(See instruction #2 on reverse side.)*

**3. Last four digits of any number by which creditor identifies debtor:** 0849

**3a. Debtor may have scheduled account as:** _____
*(See instruction #3a on reverse side.)*

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property:** $_____ **Annual Interest Rate** _____ %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____ **Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>08/29/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>William Mayfield, Esq., Secretary  *Wm Mayfield* | FOR COURT USE ONLY |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

American LegalNet, Inc.
www.FormsWorkflow.com

B 10 (Official Form 10) (12/08) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

LEHMAN BROTHERS, INC.,

Debtor.

Case No. 08-1420 (JMP) SIPA

## ATTATCHMENT A TO PROOF OF CLAIM OF
## SUNTRUST ROBINSON HUMPHREY INC.

SunTrust Robinson Humphrey, Inc. ("STRH") submits this proof of claim ("Proof of Claim"), in its capacity as an underwriter ("Underwriter") of securities issued by Lehman Brothers Holdings, Inc. ("LBHI"), and against Lehman Brothers, Inc. (the "Debtor").

## Background

On September 19, 2008 (the "Commencement Date"), a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to the Debtor, a securities broker dealer. James W. Giddens was appointed as trustee (the "Trustee") under SIPA to liquidate the Debtor's business.

## Claims

STRH is a named defendant in several class actions arising out of STRH's involvement as an Underwriter of certain public offerings of equity/debt securities of LBHI. Copies of the registration statements and prospectuses for each offering are publicly available at www.sec.gov.[1] Specifically, STRH is a defendant in each of the following class actions:

| Case Name and Number | Jurisdiction | Securities Underwritten |
|---|---|---|
| **In re Lehman Brothers Equity/Debt Securities Litigation**, No. 09 MD 2017 (S.D.N.Y.)<br><br>Including the following consolidated cases:<br><br>**Stark and Rooney v. Callan, et al.**, No. 08 Civ. 9793 (LAK) | United States District Court for the Southern District of New York | **For Stark and Rooney v. Callan et al:**<br><br>February 5, 2008 - Series J Preferred (52520WW317)<br><br>**For Operative Plasters and Cement Masons International Assoc. Local 262 Annuity Fund, et al. v. Fuld, et al:** |

---

[1] The Debtor should have copies of all the supporting documents for the offerings in which it participated.

| | | |
|---|---|---|
| **Operative Plasters and Cement Masons International Assoc. Local 262 Annuity Fund, et al. v. Fuld, et al.**, No. 08 Civ. 5523 (LAK)<br><br>**Brooks Family Partnership v. Fuld, et al.**, No. 08 Civ. 10206 (LAK) | | February 5, 2008 - Series J Preferred (52520WW317)<br><br>April 24, 2008 - 6.875% Notes due 2018 (5252M0FD4)<br><br>January 22, 2008 - 5.625% Notes due 2013 (5252M0BZ9)<br><br>December 21, 2007 - 6.75% Notes due 2017 (5249087M6)<br><br>July 19, 2007 - 6.875% Notes due 2037 (524908R44)<br><br>Sept 26, 2007 - 6.2% Notes due 2014 (52517P5X5)<br><br>Sept 26, 2007 - 7% Notes due 2027 (52517P5Y3)<br><br>**For Brooks Family Partnership v. Fuld, et al:**<br><br>February 5, 2008 - Series J Preferred (52520WW317) |
| **Mease and Caldwell v. Fuld, et al.**, No. 2:08-cv-02123 (JLH)[2] | United States District Court for the Southern District of New York | October 24, 2006 - 5.75% Subordinated Notes due 2017 |
| **Shipley v. Fuld, et al.**, No. 2:08-cv-02125 (JLH)[2] | United States District Court for the Southern District of New York | December 21, 2005 - 5% Senior Unsecured Notes due 2001 |
| **City of South San Francisco v. Citigroup Global Markets Inc., et al.**, No. 479412 | Superior Court of California, County of San Mateo | January 22, 2008 - 5.625% Notes due 2013 (5252M0BZ9) |

Under the applicable underwriting agreement for each of the security issuances listed above, and the Master Agreement Among Underwriters dated as of December 1, 2005 between STRH and the Debtor attached hereto as Exhibit 1 (the "Underwriters Agreement" and collectively with the applicable underwriting agreements, the "Underwriting Agreements"), the

---

[2] SunTrust Capital Markets, Inc. ("SCMI"), not STRH, is a named defendant in this action. SCMI became STRH on August 1, 2007.

Debtor is obligated, among other things, to contribute to the losses, claims, damages or liabilities to which STRH may be subject in such proportion as is appropriate to reflect the relative benefits received by STRH and by the underwriters from the offering of the securities in the event the indemnity provided by LBHI, as the issuer of the securities is unavailable or insufficient.

In addition, the Debtor, agreed, among other things, to pay its proportionate share (based upon its underwriting obligation) of all expenses incurred by STRH in investigating and defending claims brought or threatened arising out of any untrue statement or omission in the registration statement, prospectus or offering circular (preliminary, amended, supplemental or final) relating to the sale of securities offered and its proportionate share of the aggregate liability incurred by the underwriters with respect to such claims (after deducting any contribution or indemnification obtained from persons other than the underwriters) whether such liability was the result of a judgment against one or more of the underwriters or the result of a settlement.

STRH has a contingent, unsecured claim for contribution for defense costs that may be incurred in connection with the public offerings of equity/debt securities in the Underwriting Agreements. In connection with these actions, STRH has incurred defense costs for which the Debtor has provided indemnification pursuant to the Underwriting Agreements. STRH is seeking contribution for the defense costs from the Debtor. STRH will file supplemental proofs of claim reflecting any defense costs for which it seeks contribution.

In addition to defense costs, STRH has a contingent, unsecured claim for contribution for the amount of any judgment or settlement of the claims asserted in the public offerings of equity/debt securities pursuant to the Underwriting Agreements. STRH will file a supplemental proof of claim reflecting the amount of any judgment or settlement when it is liquidated.

STRH, named as a defendant in the class actions listed in the chart above, also has a contingent, unsecured claim for contribution under Section 11(f) of the Securities Act of 1933 for the amount of any judgment in the public offerings of equity/debt securities in the Underwriting Agreements. STRH will file a supplemental proof of claim reflecting the amount of any judgment when it is liquidated.

**Setoff**

This claim may be secured by a right of setoff against certain amounts owing by STRH and/or its affiliates to the Debtor. The setoff rights may be pursuant to common law, contract or otherwise. Such setoff amounts, if any, are not known at this time and the right to assert setoff rights with respect to such amounts and, upon bankruptcy court approval, if applicable, effect such setoff(s) is expressly reserved.

**Reservation of Rights**

STRH reserves the right to (a) amend, update, or supplement this Proof of Claim (including, without limitation, to add additional amounts due and owing) at any time and in any respect; (b) file additional proofs of claim; and (c) file a request for payment of administrative or

priority expenses in accordance with sections 503 and 507 of title 11 of the United States Code, as amended.

By filing this Proof of Claim, STRH (a) does not submit to the jurisdiction of this Court for any purpose other than with respect to this Proof of Claim, (b) does not waive (and expressly reserve) all of their procedural and substantive defenses to any claim that may be asserted against it (or any portion thereof) by the Debtor, its estate, the Trustee (or any other successor to the Debtor), or any other person, including, without limitation, any defense based upon the lack of jurisdiction of this Court to entertain any such claim, (c) does not waive (and expressly reserve) any right to any security held by or on behalf of STRH to claim specific assets or any other claim, right, or right of action that STRH has or might have against the Debtor, its estate, the Trustee (or any other successor to the Debtor), or any other person, whether such claim, right, or action arises prior to, upon, or after the Commencement Date, and (d) does not waive (and expressly reserve) any and all other rights that STRH may have pursuant to applicable law or agreement.

This Proof of Claim is in addition to any other claims filed by STRH and/or its affiliates. Accordingly, this Proof of Claim is not intended to supersede, invalidate or otherwise affect any other proof of claim submitted by STRH or any affiliate of STRH.

### Notices

All notices concerning this Proof of Claim should be sent to:

> SUNTRUST ROBINSON HUMPHREY, INC.
> 3333 Peachtree Road N.E., 11th Floor
> Atlanta, GA 30326
> Attn: William Mayfield, Esq.
>     Secretary

with a copy to:

> SUNTRUST BANKS, INC.
> 303 Peachtree Street
> 36th Floor
> Atlanta, GA 30308
> Attn: Woodruff Polk, Esq.

**EXHIBIT 1 TO ATTACHMENT A OF PROOF OF CLAIM OF SUNTRUST ROBINSON HUMPHREY, INC. AGAINST LEHMAN BROTHERS, INC.**

LEHMAN BROTHERS INC.


MASTER AGREEMENT AMONG UNDERWRITERS


REGISTERED SEC OFFERINGS

(INCLUDING MULTIPLE SYNDICATE OFFERINGS),

STANDBY UNDERWRITINGS

AND

EXEMPT OFFERINGS

(OTHER THAN OFFERINGS OF MUNICIPAL SECURITIES)


December 1, 2005

**8.3.    Delivery and Redelivery of Securities for Carrying Purposes.** The Manager may deliver to you from time to time prior to the termination of the applicable AAU against payment, for carrying purposes only, any Securities or Other Securities purchased by you or for your account under the applicable AAU or any Intersyndicate Agreement that the Manager is holding for sale for your account but that are not sold and paid for. You shall redeliver to the Manager against payment any Securities or Other Securities delivered to you for carrying purposes at such times as the Manager may demand.

# IX.

# TERMINATION; INDEMNIFICATION

**9.1.    Termination.** Each AAU shall terminate at the close of business on the later of the date on which the Underwriters pay the Issuer or Seller for the Securities and 45 full days after the applicable Offering Date, unless extended or sooner terminated by the Manager. The Manager may at its discretion by notice to you prior to the termination of such AAU alter any of the terms or conditions of the Offering to the extent permitted by Article III or IV hereof, or terminate or suspend the effectiveness of Article V hereof, or any part thereof. No termination or suspension pursuant to this paragraph shall affect the Manager's authority under Section 3.1 hereof to take actions in respect of the Offering or under Article V hereof to cover any short position or close any long position incurred under such AAU or in connection with covering any such short position to require you to repurchase Securities as specified in Section 5.2 hereof.

**9.2.    Delivery or Sale of Securities; Settlement of Accounts.** Upon termination of each AAU or prior thereto at the Manager's discretion, the Manager shall deliver to you any Securities paid for by you pursuant to Section 6.1 hereof and held by the Manager for sale pursuant to Section 3.4 or 3.5 hereof but not sold and paid for and any Securities or Other Securities that are held by the Manager for your account pursuant to the provisions of Article V hereof or any Intersyndicate Agreement. Notwithstanding the foregoing, at the termination of such AAU, if the aggregate initial Offering Price of any such Securities and the aggregate purchase price of any Other Securities so held and not sold and paid for does not exceed an amount equal to 20% of the aggregate initial Offering Price of the Securities, the Manager may, in its discretion, sell such Securities and Other Securities for the accounts of the several Underwriters, at such prices, on such terms, at such times and in such manner as it may determine. Within the period specified by applicable rules of the NASD or, if no period is so specified, as soon as practicable after termination of such AAU, your account shall be settled and paid. The Manager may reserve from distribution such amount as the Manager deems advisable to cover possible additional expenses. The determination by the Manager of the amount so to be paid to or by you shall be final and conclusive absent manifest error.  Any of your funds in the Manager's hands may be held with the Manager's general funds without accountability for interest.

Notwithstanding any provision of this Master AAU other than Section 10.12, upon termination of each AAU or prior thereto at the Manager's discretion, the Manager (i) may allocate to the accounts of the Underwriters the expenses described in Section 7.2 hereof and any losses incurred upon the sale of Securities or Other Securities pursuant to the applicable AAU or any Intersyndicate Agreement (including any losses incurred upon the sale of securities referred

to in Section 5.4(ii) hereof), (ii) may deliver to the Underwriters any unsold Securities or Other Securities purchased pursuant to Section 5.1 hereof or any Intersyndicate Agreement and (iii) may deliver to the Underwriters any unsold Securities purchased pursuant to the applicable Underwriting Agreement, in each case in the Manager's discretion. The Manager shall have full discretion to allocate expenses and Securities or Other Securities to the accounts of any Underwriter as the Manager decides, except that (a) no Underwriter (other than the Manager or a Co-Manager) shall bear more than its share of such expenses, losses or Securities or Other Securities (such share shall not exceed such Underwriter's Underwriting Percentage and shall be determined pro rata among all such Underwriters based on their Underwriting Percentages), (b) no such Underwriter shall receive Securities that, together with any Securities purchased by such Underwriter pursuant to Section 6.1 (but excluding any Securities that such Underwriter is required to repurchase pursuant to Section 5.2) exceed such Underwriter's Original Purchase Obligation and (c) no Co-Manager shall bear more than its share, as among the Manager and the other Co-Managers, of such expenses, losses or Securities or Other Securities (such share to be determined pro rata among the Manager and all Co-Managers based on their Underwriting Percentages. If any Securities or Other Securities returned to you pursuant to clause (ii) or (iii) above were not paid for by you pursuant to Section 6.1 hereof, you shall pay to the Manager an amount per security equal to the amount set forth in Section 6.1(i), in the case of Securities returned to you pursuant to clause (iii) above, or the purchase price of such securities, in the case of Securities or Other Securities returned to you pursuant to clause (ii) above.

**9.3.    Post Settlement Expenses.** Notwithstanding any settlement on the termination of the applicable AAU, you agree to pay (x) any transfer taxes that may be assessed and paid after such settlement on account of any sales or transfers under such AAU or any Intersyndicate Agreement for your account and (y) your Underwriting Percentage of (i) all expenses incurred by the Manager in investigating, preparing to defend or defending against any action, claim or proceeding (each, an **"Action"**) that is asserted or instituted by any person (including any governmental or regulatory body) relating to (a) the Registration Statement, any Preliminary Prospectus or Prospectus (or any amendment or supplement thereto), any Preliminary Offering Circular or Offering Circular (or any amendment or supplement thereto) or any Supplemental Offering Materials, (b) the violation of any applicable restrictions on the offer, sale, resale or purchase of Securities or Other Securities imposed by United States Federal or state laws or the laws of any non-U.S. jurisdiction and the rules and regulations of any regulatory body promulgated thereunder or pursuant to the terms of such AAU, the Underwriting Agreement or any Intersyndicate Agreement, (c) any duties or obligations that the Manager or any of the other Underwriters may have or may be alleged to have to the Issuer, Guarantor or Seller or any other person in connection with the Offering or (d) any claim that the Underwriters constitute a partnership, an association or an unincorporated business or other separate entity and (ii) any liability, including attorneys' fees, incurred by the Manager in respect of any such Action whether such liability shall be the result of a judgment or arbitrator's determination or as a result of any settlement agreed to by the Manager. Notwithstanding the foregoing, you shall not be required to pay your Underwriting Percentage of any such expense or liability (A) as to which the Manager actually receives indemnity pursuant to Section 9.4, contribution pursuant to Section 9.5, indemnity or contribution pursuant to the Underwriting Agreement or damages from an Underwriter for breach of its representations, warranties, agreements, or covenants contained in the applicable AAU, the Underwriting Agreement or any Intersyndicate Agreement or (B) of the Manager (other than fees of Syndicate Counsel (defined below)) that relates to a settlement

agreed to by the Manager that results in a settlement of such Action against it and less than all the Underwriters; *provided* that any such expense or liability shall be paid by the Underwriters with respect to which such Action is settled (the **"Settling Underwriters"**) and the amount to be paid by each Settling Underwriter shall be determined pro rata among the Settling Underwriters based on their Underwriting Percentages (the **"Settlement Obligation"**). None of the foregoing provisions of this Section 9.3 shall relieve any defaulting or breaching Underwriter from liability for its default or breach.

        **9.4.**   **Indemnification.** Each Underwriter agrees to indemnify and hold harmless each other Underwriter, its respective directors, officers and employees, each affiliate of such Underwriter and each person, if any, who controls such Underwriter within the meaning of either Section 15 of the 1933 Act or Section 20 of the 1934 Act, to the extent and upon the terms that such Underwriter agrees to indemnify and hold harmless any of the Issuer, the Guarantor, the Seller, any person controlling the Issuer, the Guarantor, the Seller, its directors and its officers, in each case as set forth in the Underwriting Agreement.

        Each Underwriter further agrees to indemnify and hold harmless any investment banking firm identified in a Wire as the qualified independent underwriter as defined in Rule 2720 of the NASD's Conduct Rules ("QIU") for an Offering, its directors, officers and employees, each affiliate of such QIU and each person, if any, who controls such QIU within the meaning of either Section 15 of the 1933 Act or Section 20 of the 1934 Act, from and against any and all losses, claims, damages and liabilities related to, arising out of or in connection with such investment banking firm's activities as QIU for the Offering. Each Underwriter agrees with the other Underwriters to reimburse such QIU for all expenses, including fees and expenses of counsel as they are incurred, in connection with investigating, preparing for, or defending any action, claim or proceeding related to, arising out of, or in connection with such QIU's activities as a QIU for the Offering. Each Underwriter shall be responsible for its Underwriting Percentage of any amount due to such QIU on account of the foregoing indemnity. Each Underwriter agrees that such QIU shall have no additional liability to any Underwriter or otherwise as a result of its serving as QIU in connection with the Offering. Each Underwriter further agrees that to the extent the indemnification provided to a QIU under this Section 9.4 is unavailable to such QIU or insufficient in respect of any losses, claims, damages or liabilities (and expenses relating thereto), whether as a matter of law or public policy or as a result of the default of any Underwriter in performing its obligations under this Section 9.4, the Underwriters shall contribute to the amount paid or payable by such QIU as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in proportion to their respective Underwriting Percentages.

        Any Underwriter that uses any Supplemental Offering Material in connection with the Offering without the consent of the Manager or that otherwise breaches Section 3.3 further agrees to indemnify and hold harmless each other Underwriter, its respective directors, officers and employees, each affiliate of such Underwriter and each person, if any who controls any such Underwriter within the meaning of either Section 15 of the 1933 Act or Section 20 of the 1934 Act, from and against any and all losses, claims, damages or liabilities related to, arising out of or in connection with the use of such Supplemental Offering Material.

9.5. **Contribution.** Notwithstanding any settlement on the termination of the applicable AAU, each Underwriter agrees to pay upon request of the Manager, as contribution, its Underwriting Percentage of any losses, claims, damages or liabilities, joint or several, paid or incurred by any Underwriter to any person other than an Underwriter, arising out of or based upon any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement, any Preliminary Prospectus or Prospectus (or any amendment or supplement thereto), any Preliminary Offering Circular or Offering Circular (or any amendment or supplement thereto) or any Supplemental Offering Material or the omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading (other than an untrue statement or alleged untrue statement or omission or alleged omission made in reliance upon and in conformity with information furnished to the Company in writing expressly for use therein by the Underwriter on whose behalf the request for contribution is being made); *provided* that no request shall be made on behalf of any Underwriter guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the 1933 Act) from any Underwriter who was not guilty of such fraudulent misrepresentation; *provided further,* that any losses, claims, damages or liabilities, joint or several, paid or incurred by any Underwriter, arising out of or based upon an Underwriter Free Writing Prospectus that was permitted by the Manager and that does not breach Section 3.3, shall be paid by the Underwriters that used such Underwriter Free Writing Prospectus (the **"Contributing Underwriters"**) and the amount to be paid by each Contributing Underwriter shall be determined pro rata among the Contributing Underwriters based on their Underwriting Percentages. None of the foregoing provisions of this Section 9.5 shall relieve any defaulting or breaching Underwriter from liability for its defaults or breach.

9.6. **Procedure.** If any Action is asserted or commenced pursuant to which the provisions of Section 9.3, 9.4 or 9.5 may apply, the Manager may take such action in connection therewith as it deems necessary or desirable, including retention of counsel for the Underwriters (**"Syndicate Counsel"**), and in its discretion separate counsel for any particular Underwriter or group of Underwriters, and the fees and disbursements of any counsel so retained shall be allocated among the several Underwriters as determined by the Manager. It is acknowledged and agreed that any such Syndicate Counsel retained by the Manager shall be counsel to the Underwriters as a group, and that Syndicate Counsel shall remain counsel to the Underwriters and shall withdraw as counsel to the Manager in the event that either (a) the Manager settles any Action on a basis that results in the settlement of such Action against it and less than all the Underwriters or (b)(i) a conflict develops between the Manager and the other Underwriters, or (ii) differing defenses are available to the other Underwriters and not available to the Manager, that in the case of either clause (i) or (ii) causes such counsel to conclude that it is unable to continue to represent the Manager and the other Underwriters collectively. The Manager hereby consents to such arrangement and shall take steps to ensure that any engagement letters with Syndicate Counsel are consistent with such arrangement. Any Underwriter may elect to retain at its own expense its own counsel and, on advice of such counsel but only with the consent of the Manager, may settle or consent to the settlement of any such Action but only in compliance with Section 9.7. The Manager may settle or consent to the settlement of any such Action but only in compliance with Section 9.7. Whenever the Manager receives notice of the assertion of any Action to which the provisions of Section 9.3, 9.4 or 9.5 would apply, it shall give prompt notice thereof to each Underwriter, and whenever an Underwriter receives notice of the assertion of any claim or commencement of any Action to which the provisions of Section 9.3, 9.4 or 9.5 would

apply, such Underwriter shall give prompt notice thereof to the Manager. The Manager also shall furnish each Underwriter with periodic reports, at such times as it deems appropriate, as to the status of such claim, action or proceeding, and the action taken by it in connection therewith. The Underwriters shall be entitled to presume that all discussions involving the Manager concerning the settlement of Actions involve and contemplate the settlement of all Actions against all Underwriters on an equal basis according to their Underwriting Percentages, and the Manager shall promptly, and in any event within two business days after the occurrence thereof, report to each Underwriter whenever any settlement discussion involves or contemplates settlement on any other basis and provide reasonable details about such discussions.

    **9.7.**  **Settlement of Claims.** Neither the Manager nor any other Underwriter may settle or agree to settle, nor shall the Manager consent to any settlement agreement nor any other Underwriter seek the Manager's consent to an agreement to settle, any Action unless such settlement agreement (i) results in the settlement of all Actions against all Underwriters raised by the plaintiffs party to such Action; or (ii) expressly provides that the non-settling Underwriters shall be given a judgment credit (or credit in settlement) with respect to all Actions for which the non-settling Underwriters may be found liable (or shall pay in subsequent settlement), in an amount that is the greatest of (x) the dollar amount allocated in such initial settlement to be paid to settle such Action, (y) the proportionate share of the settling Underwriter's fault as proven at trial, if applicable, and (z) the amount by which the settling Underwriter would be required to make contribution under Sections 9.5 and 11.2 of this Master AAU in respect of the judgment (or settlement) subsequently entered into by the non-settling Underwriters.

    **9.8.**  **Survival of Agreements.** Regardless of any termination of an AAU, your agreements contained in Article V and Sections 3.1, 9.3, 9.4, 9.5, 9.6, 9.7, 10.14, 11.2, 12.4, 12.9 and this Section 9.8 shall remain operative and in full force and effect regardless of (i) any termination of the Underwriting Agreement, (ii) any investigation made by or on behalf of any Underwriter or any person controlling any Underwriter or by or on behalf of the Issuer, the Guarantor, the Seller, the Issuer's directors or officers or any person controlling the Issuer, the Guarantor or the Seller and (iii) acceptance of any payment for any Securities.

    **9.9.**  **Replacement of Manager.** If at any time after any Action is brought, the Manager settles any Action on a basis that results in the settlement of such Action against it and less than all the Underwriters (whether or not such settlement complies with Section 9.7), the Manager shall, at such time, for purposes of Sections 9.3, 9.4, 9.5, 9.6 and 9.7, cease to be the Manager. The non-settling Underwriters shall, by vote of holders of a majority of the Underwriting Percentage of such non-settling Underwriters, select a new Manager, which shall become the new "Manager" for all purposes of Sections 9.3, 9.4., 9.5, 9.6, and 9.7 as well as this section; provided that the non-settling Underwriter(s) with the largest Underwriting Percentage shall act as Manager until such vote occurs and a new Manager is selected.

    Notwithstanding such a settlement, the Manager shall remain obligated to the non-settling Underwriters fully to assist and cooperate, in good faith, and at the Manager's own expense, in the defense of any Actions, including, without limitation, by providing, upon reasonable request of any non-settling Underwriter, and without the necessity of court process, access to or copies of all relevant records and reasonable access to all witnesses for purposes of interviews, depositions, and testimony at trial.

Please confirm your acceptance of this Master AAU by signing and returning to us the enclosed duplicate copy hereof.

Very truly yours,

LEHMAN BROTHERS INC.

Confirmed and accepted as of December 1, 2005

(Name of Underwriter)

By _____

Name:

Title:

(If person signing is not an officer
or a partner, please attach instrument
of authorization)

Address: _____

_____

_____

Telephone: _____

Fax: _____

Advertising Name: _____



## SUNTRUST℠

Sheila J. Jobe
Assistant Vice President
Paralegal

SunTrust Banks, Inc.
SunTrust Robinson Humphrey, Inc.
303 Peachtree Street, NE
Suite 3600
MC: Atlanta-GA 0662
Atlanta, Georgia 30308
Tel 404.813-5005
Fax 404.581-1637
sheila.jobe@suntrust.com

May 29, 2009

**Via Federal Express**

Lehman Brothers, Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd.
Beaverton, Oregon 97005

> Re: *SunTrust Robinson Humphrey, Inc. Proof of Claims for*
> *LBHI & LBI Indemnification and Citigroup & LBI Indemnification*
> *Lehman Brothers, Inc. (SIPA Proceeding)*
> *Case No.: 08-01420 (JMP) SIPA*

To Whom It May Concern:

We have enclosed two Indemnification Proofs of Claim, including supporting documentation, made by SunTrust Robinson Humphrey, Inc. as referenced above.

We request that you return the enclosed "copy of the claim" by stamping "Received" for our files. We have also enclosed a self-addressed Federal Express label and envelope for your convenience.

Please let me know if you need additional information.

Sincerely,

Sheila J. Jobe

Enclosures



Align top of FedEx Express Shipping Label here.



08-13555-mg Doc 48973-5 Filed 11/17/14 Entered 11/17/14 18:05:00 Exhibit E
Pg 84 of 161

# EXHIBIT 4

RECEIVED

MAY 2 9 2009

LEGAL SERVICES

**Filed: USBC - Southern District of New York**
**SIPC v. Lehman Brothers Inc.**
**08-01420 (JMP)**

**Bankruptcy Claim #**                              **000004944**

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Lehman Brothers Inc. | Case Number:<br>08-01420 (JMP) SIPA |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>**Fortis Securities LLC (F/K/A "Fortis Investment Services LLC")**<br><br>Name and address where notices should be sent:<br><br>Cadwalader, Wickersham<br>& Taft LLP<br>Attn: Mark C. Ellenberg<br>1201 F. St.NW Suite1100<br>Washington, D.C. 20004<br>Telephone number:<br>(202) 862-2200 | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>(See attached annex)<br><br>Telephone number: | ✓ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>**SEE ATTACHED AT N. [ ]**<br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**      $ SEE ATTACHED<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**    Indemnification and/or contribution for underwriting of Lehman securities<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>     **3a. Debtor may have scheduled account as:** _____<br>     (See instruction #3a on reverse side.) | petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507 (a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br><br>**Value of Property:**$_____   **Annual Interest Rate**___%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**if any:** $_____   **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___). |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>5-28-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Antonio X. Molestina, General Counsel | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/07) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien

documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

ANNEX TO CLAIM OF Fortis Securities LLC

The claimant, Fortis Securities LLC (F/K/A "Fortis Investment Services LLC") ("Claimant"), which maintains an office at 520 Madison Avenue, New York, New York 10022, is duly authorized and empowered to make this claim.

This attachment is intended to provide background information relating to a claim by Claimant against Lehman Brothers Inc. ("LBI") for contingent, unliquidated amounts of losses that have been and/or will be incurred as a result of various lawsuits brought against Claimant related to its underwriting of Lehman Brothers Holdings Inc. ("LBHI") securities.

Claimant has been named as a defendant in connection with the lawsuits described below, all of which seek damages based upon alleged false statements and/or omissions in the offering materials of various LBHI securities allegedly underwritten by Claimant and certain other alleged underwriters, including LBI. Pursuant to indemnification and/or contribution provisions in the underwriting agreements, purchase agreements, distribution agreements, agreements among underwriters or similar agreements, as amended or supplemented, executed in connection with these offerings (all collectively, the "Agreements"),[1] LBI agreed to indemnify and hold harmless Claimant and other participants in the offerings (the "Offering Participants") from certain losses arising out of false statements and/or omissions in the offering materials and to reimburse the Offering Participants for any legal or other expenses reasonably incurred by them in investigating, defending, and/or preparing to defend against such losses, and/or agreed to pay, as contribution, its underwriting percentage of any losses paid by the Offering Participants arising out of false statements and/or omissions in the offering materials (all collectively, the "Indemnified Losses").

In particular, Claimant is named as a defendant in the following lawsuit(s) and is alleged to have underwritten, along with other alleged underwriters, the LBHI securities offerings described herein, resulting in Indemnified Losses:[2]

1.      Cecil Mease v. Richard S. Fuld, Jr., et al., No. 09 CV 01232 (pending in the United States District Court for the Southern District of New York and now consolidated for all pre-trial purposes with the Lehman Securities Litigation) ("Mease"). We refer to the Mease Complaint filed October 21, 2008 for its contents, but in general it alleges misrepresentations and/or omissions with respect to the October 24, 2006 offering of 5.75% Subordinated Notes Due 2017 allegedly underwritten by Claimant and certain other alleged underwriters.

---

[1]      The Agreements are voluminous and, upon information and belief, are in the possession of LBHI and/or LBI. Accordingly, they have not been filed with this Proof of Claim. However, they are available upon request from Claimant.

[2]      The complaints referenced in this Proof of Claim are voluminous and accordingly have not been filed with this Proof of Claim. However, they are available upon request from Claimant or via the Electronic Case Filing system for the federal district in which the relevant action is pending.

2.     <u>Washington State Investment Board v. Richard S. Fuld, Jr., et al.</u>,
No. 09-2-01222-3 (pending in the Superior Court of the State of Washington, County of
Thurston) ("WSIB"). We refer to <u>WSIB</u> Complaint dated May 20, 2009 for its contents,
but in general it alleges misrepresentations and/or omissions with respect to the October
24, 2006 offering of 5.75% Subordinated Notes Due 2017 (which is also at issue in the
<u>Mease</u> Complaint) allegedly underwritten by Claimant and certain other alleged
underwriters.

* * *

Because these lawsuits are still pending, the amount of Claimant's
Indemnified Losses cannot be determined at this time.  Claimant therefore makes a claim
for its Indemnified Losses in contingent, unliquidated amounts.[3]

Claimant hereby reserves the right to amend, clarify, modify or
supplement this claim to assert additional claims or additional grounds for its claims.
Claimant also reserves all rights accruing to it against LBI, LBHI or any other affiliate of
either of them, and the filing of this claim is not intended to be and shall not be construed
as (a) an election of remedy or (b) a waiver or limitation of any rights of Claimant.
Claimant reserves the right to supplement this claim with relevant documents to the
extent necessary.  Furthermore, Claimant reserves the right to withdraw this claim for any
reason whatsoever.

This claim shall not be deemed to be a waiver of Claimant's right (i) to
have final orders in non-core matters entered only after de novo review by a District
Court Judge, (ii) to trial by jury in any proceeding so triable in these cases or any case,
controversy or proceeding related to these cases, (iii) to have the District Court withdraw
the reference in any matter subject to mandatory or discretionary withdrawal, or (iv) to
any other rights, claims, actions, setoffs or recoupments to which Claimant is or may be
entitled, in law or in equity, all of which rights, claims, actions, defenses and
recoupments Claimant expressly reserves.

This claim is in addition to, and does not supersede, any other claim filed
or to be filed by Claimant against LBI, LBHI, or any other affiliate of either.

---

[3]     Claimant is also filing a related contingent, unliquidated claim for indemnification for losses
related to the above-referenced lawsuits in the Chapter 11 proceedings of LBHI (No. 08-13555 (JMP)).
Upon information and belief, other Offering Participants may also be filing claims against LBI and/or
LBHI for indemnification and/or contribution for losses related to the above-referenced lawsuits.

Payments should be made with the following wire transfer information:

Fortis Securities LLC
BK OF NYC
ABA #021000018
A/C #IOC569
FFC: GSCSPDS

Any notices in connection with this claim should be addressed to Claimant at the address below:

Fortis Securities LLC
520 Madison Avenue, Level 2
New York, NY 10022
Attention: Antonio Molestina, Esq., General Counsel
Phone: 212-340-6166
Facsimile: 212-340-6170

with copies to:

Cadwalader, Wickersham & Taft LLP
1201 F. St. N.W.
Suite 1100
Washington, D.C. 20004
Attention: Mark C. Ellenberg, Esq.
Phone: 202-862-2200
Facsimilie: 202-862-2400

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000 Fax 212 504 6666
www.cadwalader.com

May 28, 2009

**VIA FEDEX**

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd.
Beaverton, OR 97005

Re:     Lehman Brothers, Inc. - Case No. 08-01420 (JMP) SIPA

Dear Sir/Madam:
Enclosed for filing in the above-referenced case are the original and office copy of two proofs of claim by Fortis Securities LLC.  Please date-stamp the office copy and return in the enclosed self-addressed Federal Express envelope.

If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Wendy Kane

WK
Enclosures

**FedEx Express**

Express

fedex.com 1.800.GoFedEx 1.800.463.3339

**FedEx. US Airbill**

Express

RECIPIENT: PEEL HERE

1 From
Sender's Name

Date

Sender's Company    CADWALADER WICKERSHAM & TAFT

Phone   212 993-3700

Address   1 WORLD FINANCIAL CTR

City   NEW YORK    State NY    ZIP 10281-1003

2 Your Internal Billing Reference

3 To
Recipient's Name

Company   Lehman Brothers — Claims Processing

Address   c/o Epiq Bankruptcy Solutions

Phone

Address   10300 SW Allen Blvd.

City   Beaverton    State OR    ZIP 97005

0405829936

FedEx Tracking Number   8690 8744 2714

**Recipient's Copy**

**XH BNOA**

PRIORITY OVERNIGHT

97005
OR-US
PDX

4a Express Package Service
4b Express Freight Service
5 Packaging
6 Special Handling
7 Payment
8 Residential Delivery Signature Options

This pouch is reusable

# Expre

FedEx. US Airbill
Express

fedex.com 1.800.GoFedEx 1.800.463.3339

8143 1525 5367

0100-1603-7

CADWALADER WICKERSHAM & TAFT LLP

WORLD FINANCIAL CTR
8TH FLOOR
NEW YORK NY 10281-1003

Phone (212) 993-3700

Sender's Copy

PULL AND RETAIN THIS COPY BEFORE APPLYING TO THE PACKAGE. NO POWER NEEDED

Align bottom of Peel and Stick Airbill or P

**EXHIBIT 5**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS SECURITIES AND
ERISA LITIGATION

This Document Applies to:

*In re Lehman Brothers Equity/Debt Securities
Litigation*, 08 Civ. 5523 (LAK)

Civil Action 09 MD 2017

ECF CASE

JURY TRIAL DEMANDED

---

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiffs, as defined below, bring claims arising under the Securities Act of 1933 (the "Securities Act") individually and on behalf of all persons and entities, except Defendants and their affiliates, who purchased or otherwise acquired Lehman Brothers Holdings Inc. ("Lehman" or the "Company") securities identified on Appendix A attached hereto (collectively, the "Offerings"), between February 13, 2007 and September 15, 2008, inclusive (the "Relevant Period") pursuant or traceable to materially false and misleading registration statement and prospectuses and certain documents incorporated therein by reference, and who were damaged thereby.[1] The Securities Act claims allege solely **strict liability** and **negligence** causes of action.

Separately, Plaintiffs bring claims arising under the Securities and Exchange Act of 1934 (the "Exchange Act") individually and on behalf of all persons and entities, except Defendants and their affiliates, who purchased or otherwise acquired Lehman common stock, call options, and/or who sold put options between June 12, 2007 and September 15, 2008 (the "Exchange Act Period"), inclusive, and who were damaged thereby.

Plaintiffs allege the following upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters. Plaintiffs' information and belief are based on the investigation of their undersigned counsel, Bernstein Litowitz Berger & Grossmann LLP and Barroway Topaz Kessler Meltzer & Check, LLP, which investigation continues. Many of the facts related to Plaintiffs' allegations are known only by Lehman and the Defendants named herein, or are exclusively within their custody or control. Plaintiffs believe that

---

[1] "Offerings" means the offerings that occurred pursuant to a shelf registration statement dated May 30, 2006, filed with the SEC on Form S-3 (the "Shelf Registration Statement"). The Shelf Registration Statement, together with the prospectuses, prospectus supplements, product supplements and pricing supplements, as well as all SEC filings incorporated therein, are collectively referred to herein as the "Offering Materials."

1

substantial additional evidentiary support for the allegations set forth below will be developed
after a reasonable opportunity for discovery.

## I.    <u>SUMMARY OF THE ACTION</u>

1.    This case arises from Lehman's issuance of hundreds of public offerings of debt
and equity securities, for collective proceeds of more than $47 billion, pursuant to Offering
Materials that contained untrue statements and omitted material information regarding
Lehman's: (1) significant, and increasing, concentration of mortgage related risks; (2) failure to
timely or adequately record write downs of its mortgage related assets and real estate related
investments; (3) high-risk residential mortgage lending practices; (4) risk mitigation and inability
to effectively hedge against losses in its mortgage-related portfolio; and (5) capitalization,
liquidity and risks of bankruptcy. Ultimately, Lehman petitioned for bankruptcy on
September 15, 2008 – the largest corporate bankruptcy in the history of the United States.

2.    Lehman was a major participant in all aspects of the mortgage and real estate
markets, including originating residential and commercial mortgages, securitizing loans,
marketing various asset-backed instruments, and investing directly in real estate. Prior to and
throughout the Relevant Period, the real estate and mortgage markets were in the midst of an
unprecedented meltdown that adversely affected the market value of mortgage related assets and
real estate related investments. Dozens of companies with mortgage exposure had taken massive
mortgage related write downs, ceased operations or petitioned for bankruptcy, and firms like
Citigroup, Merrill Lynch, Morgan Stanley, Bear Stearns and UBS booked enormous gross losses
related to their mortgage related assets and the credit squeeze in 2007.

3.    While others booked massive mortgage and real estate related losses in 2007,
Lehman recorded only modest write downs, despite having enormous exposure to mortgage
related assets and real estate related investments and having rapidly expanded its portfolio.

2

Lehman's mortgage and asset-backed securities, including its mortgage related assets, grew from $57.7 billion as of its fiscal 2006 year-end to over $89.1 billion as of its fiscal 2007 year-end, reaching an unprecedented and dangerous ratio of over thirty times shareholder equity by the end of the first quarter of 2008. Further, Lehman's portfolio of real estate held for sale, including its real estate related investments, grew from $9.4 billion as of its 2006 year-end to over $21.9 billion as of its 2007 year-end.[2]

4.     Lehman was exposed to massive write downs and losses when the housing and mortgage markets declined and the value of Lehman's mortgage related assets and real estate related investments deteriorated. Lehman failed to timely and adequately write down these assets, however, and continued to overvalue them, in violation of Generally Accepted Accounting Principles ("GAAP"). As a consequence, Lehman's financial results were not prepared in accordance with GAAP, making the Offering Materials false and misleading.

5.     Lehman's situation was aggravated by its very high leverage and strong reliance on short-term debt financing. Even though commercial banks may not leverage their assets-to-equity ratio by more than fifteen to one, Lehman's leverage ratio was more than double that amount. With such a high leverage, "a mere 3.3% drop in the value of assets wipes out the entire value of equity and makes the company insolvent," according to Luigi Zingales, Professor of Finance at the University of Chicago. Lehman's failure to properly write down its real estate

---

[2]  Lehman's quarterly periods did not conform to the calendar year. Its fourth quarter ("4Q06") and its fiscal year 2006 ("FY06") ended on November 30, 2006; first quarter 2007 ("1Q07") ended on February 28, 2007; second quarter ("2Q07") ended on May 31, 2007; third quarter 2007 ("3Q07") ended on August 31, 2007; fourth quarter ("4Q07") and fiscal year 2007 ("FY07") ended on November 30, 2007; first quarter 2008 ("1Q08") ended on February 29, 2008; second quarter 2008 ("2Q08") ended on May 31, 2008; and third quarter 2008 ("3Q08") ended on August 31, 2008.

related assets to market value concealed how close it was to insolvency, or that it was in fact effectively insolvent long before it ultimately filed for bankruptcy on September 15, 2008.

6.     Ultimately, the truth about Lehman's financial condition and illiquid assets materialized in a series of announcements and events.  Before the markets opened on June 9, 2008, Lehman announced its first ever quarterly loss as a public company – a net loss of $2.8 billion, or approximately $5.14 per share, for the second quarter of its 2008 fiscal year, and disclosed that it incurred losses on hedges in the quarter.  The loss was due in part to Lehman's $4 billion in mark-to-market write downs, including $2.4 billion for residential mortgage related holdings, $700 million for commercial mortgage related positions and $300 million for real estate held for sale.  Lehman continued to reassure investors that the Company was financially strong, however, by stating on June 9 that, among other things, it grew its liquidity pool to $45 billion, decreased gross assets by $130 billion, reduced its leverage, and increased long-term capital.  Additionally, in the conference call with analysts following the June 9 earnings announcement, Lehman's Chief Financial Officer ("CFO") (and a defendant herein) Erin Callan characterized the deleveraging as over, stating:  "Our deleveraging was as aggressive, as you can see, and is complete."  Because Lehman's June 9 announcement only partially revealed the truth about Lehman's true exposure and its ability (or lack thereof) to hedge, and because misrepresentations about Lehman's true financial condition and results of operations continued, Lehman was able to raise an additional $6 billion through the offering of common and preferred shares immediately following the announcement.  Three days later, on June 12, Lehman announced that Callan was demoted and that Joseph Gregory, Lehman's president (and a defendant herein), were replaced.

7.     By September 9, 2008, Lehman executives internally calculated that the Company required at least $3 billion in additional capital.  Lehman also received demands from JPMorgan for $10 billion to cover lending positions.

8.     Nonetheless, the following day, on September 10, 2008, Lehman Chief Executive Officer ("CEO") Richard Fuld and new Lehman CFO Ian Lowitt held a conference call to assure investors that the Company did not need additional capital.  In an earnings pre-release, Lehman reported a $3.9 billion loss for the third quarter of 2008 and $7.8 billion in gross write downs, including $5.3 billion on residential mortgage related positions and $1.7 billion on commercial mortgage and real estate related investments.  Lehman also announced that it planned to spin off approximately $25 to $30 billion, or almost all, of its commercial real estate portfolio into a separate publicly traded company in order to remove these bad assets from Lehman's balance sheet.

9.     In a conference call with analysts following the September 10, 2008 announcement, Defendant Fuld stated that "the decisions announced today will best protect the core client franchise, and create a very clean, liquid balance sheet."  Defendant Ian Lowitt, who replaced Callan as Lehman's CFO on June 12, 2008, stated:  "our liquidity position . . . remains very strong," "we have maintained our strong liquidity and capital profiles even in this difficult environment," and "we think that clearly with our capital position at the moment is, it's strong."

10.     Around the same time, however, Lehman was privately trying to sell its commercial real estate assets to various banks.  But the mortgage securities experts from Citigroup, Credit Suisse, Deutsche Bank and Goldman Sachs who analyzed Lehman's portfolio found that the portfolio was overvalued by billions of dollars, with Lehman's $32.6 billion in commercial real estate holdings overvalued by as much as 35%.  Additionally, the federal government refused to

5

provide Lehman with a bailout because its toxic assets created a "huge hole" in its balance sheet. As then Treasury Secretary Paulson later explained, "'[w]e didn't have the powers,' because by law the Federal Reserve could bailout Lehman with a loan only if the bank had enough good assets to serve as collateral, which it did not."

11.     On September 15, 2008, Lehman filed for bankruptcy.  In stark contrast to Defendant Lowitt's affirmative representations made just days before regarding Lehman's purportedly strong liquidity position and capital, Lehman sought bankruptcy protection because it had "significant liquidity problems."

## II.     OVERVIEW OF THE SEPARATE CLAIMS

12.     In Counts I through III, Plaintiffs assert claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o, against the Securities Act Defendants, defined below in ¶244, who are statutorily liable for the materially false and misleading statements set forth in the Offering Materials.  Plaintiffs specifically disclaim any allegations of fraud in connection with the Securities Act claims, which sound in strict liability and negligence and are not based on any allegations of knowing or reckless misconduct on the part of any Defendant.

13.     In Counts IV through VI, Plaintiffs assert claims for violations of Sections 10(b), 20(a), and 20A of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), 78t-1(a), and the rules and regulations promulgated thereunder, including Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), against the Insider Defendants identified below in ¶30.

## III.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v; Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and 28 U.S.C. § 1331.

15.     Venue is proper in this District pursuant to Section 22 of the Securities Act,
15 U.S.C. § 77v; Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and 28 U.S.C. § 1391(b),
(c), and (d).  Many of the acts and transactions described herein, including the preparation and
dissemination of materially false and misleading public filings, occurred in this District.  At all
times relevant herein, Lehman's headquarters and principal offices were located in this District at
745 Seventh Avenue, New York, New York.

16.     In connection with the acts alleged herein, Defendants directly or indirectly used
the means and instrumentalities of interstate commerce, including, but not limited to, the United
States mails, interstate telephone communications, and the facilities of national securities
exchanges.

## IV.   PARTIES AND RELEVANT NON-PARTIES

### A.   Plaintiffs

17.     Court-appointed Lead Plaintiff Alameda County Employees' Retirement
Association ("ACERA") is located in Oakland, California, and provides retirement, disability,
and death benefits to the employees, retirees, and former employees of the County of Alameda.
ACERA manages $5.6 billion in assets for over 10,000 members.  ACERA's purchases of
Lehman securities include Lehman common stock, Lehman 7.95% Non-Cumulative Perpetual
Convertible Preferred Stock, Series J, and Lehman 6.875% Subordinated Notes Due 2037.

18.     Court-appointed Lead Plaintiff Government of Guam Retirement Fund ("GGRF")
is located in Maite, Guam, and provides annuities and other benefits to its members who
complete a prescribed number of years in government service.  Guam maintains over $1.6 billion
in net assets held in trust for pension benefits.  Guam's purchases of Lehman securities include
Lehman common stock, as well as Lehman 6.875% Subordinated Notes Due 2037.

19. Court-appointed Lead Plaintiff Northern Ireland Local Government Officers' Superannuation Committee ("NILGOSC") is located in Belfast, Northern Ireland, and administers the Local Government Pension Scheme for Northern Ireland. NILGOSC maintains a pension fund with net assets of over £3.1 billion. NILGOSC's purchases of Lehman securities include Lehman common stock.

20. Court-appointed Lead Plaintiff City of Edinburgh Council as Administering Authority of the Lothian Pension Fund ("Lothian") is located in Scotland, and pays pensions to former employees of the City Council, East, Mid and West Lothian Councils, the former Regional and District Councils, and the Lothian and Borders Fire and Rescue Service, as well as a number of public sector organizations. The Lothian Pension Fund is valued at over £2.976 billion. Lothian's purchases of Lehman securities include Lehman common stock.

21. Court-appointed Lead Plaintiff Operating Engineers Local 3 Trust Fund ("Operating Engineers") is located in Alameda, California, and provides pension plans for working and retired members throughout its four-state jurisdiction. Operating Engineers' purchases of Lehman securities include Lehman common stock.

22. Additional Plaintiffs are identified in Appendix B, attached hereto.

**B.  Relevant Non-Parties**

23. Lehman is a corporation organized under the laws of the state of Delaware with its headquarters located at 745 Seventh Avenue, New York, New York. Lehman operated as a global investment bank and purported to be "an innovator in global finance" with a "leadership position in equity and fixed income sales, trading and research." Lehman's common stock traded on the New York Stock Exchange. On September 15, 2008, in this District, Lehman filed a voluntary petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code. For this reason, Lehman is not named as a defendant in this action.

8

24.     Lehman Brothers Inc. ("LBI"), based in New York, New York, is a wholly-owned subsidiary of Lehman and operated as a registered broker-dealer under the Exchange Act.  LBI's services included brokerage, mergers and acquisitions and restructuring advice, debt and equity underwriting, market making, debt and equity research, and real estate and private equity investments.  On September 17, 2008, the Securities Investor Protection Corporation ("SIPC") moved for an order commencing liquidation and protection under the automatic stay provisions of the Bankruptcy Code.  The Bankruptcy Court granted the request on September 19, 2008.  For this reason, LBI is not named as a defendant in this action.

### C.     Defendants

#### 1.     Insider Defendants

25.     Defendant Richard S. Fuld, Jr. ("Fuld") joined Lehman in 1969, was elected Chairman of the Board of Directors of the Company in April 1994 and named Chief Executive Officer ("CEO") of the Company in November 1993, and remained as Chairman and CEO throughout the Relevant Period.  Throughout the Relevant Period, Fuld also served as chair of Lehman's Executive Committee, which had the authority, in the intervals between meetings of the Board of Directors, to exercise all the authority of the Board of Directors, except for those matters that the Delaware General Corporation Law or the Company's Restated Articles of Incorporation reserved to the full Board of Directors.  Fuld was also Chairman and CEO of LBI throughout the Relevant Period.  Fuld signed the Shelf Registration Statement in his capacity as Lehman Chairman and CEO.

26.     Defendant Christopher M. O'Meara ("O'Meara") served as the Company's CFO, Controller, and Executive Vice President from 2004 until December 1, 2007, when he became Lehman's head of Worldwide Risk Management.  O'Meara signed the Shelf Registration Statement in his capacity as CFO, Controller and Executive Vice President of Lehman.

9

### 3.      Underwriter Defendants

40.      Defendant ABN Amro Holding N.V. ("ABN"), based in Amsterdam, The Netherlands, is an international bank that provides investment services.

41.      Defendant ANZ Securities, Inc. ("ANZ") is an affiliated company of ANZ Bank, based in Melbourne, Australia, that provides a full range of financial products and services to business, corporate, and institutional clients.

42.      Defendant Banc of America Securities LLC ("BOA"), based in New York City, is the investment banking arm of its parent corporation, Bank of America, and provides commercial and investment banking services and commercial loans to corporate entities.

43.      Defendant BBVA Securities Inc. ("BBVA"), based in New York City, provides securities brokerage and research services.

44.      Defendant M.R. Beal & Company ("Beal"), based in New York City, is an investment bank that provides investment, underwriting, and corporate banking services.

45.      Defendant BNP Paribas S.A. ("BNP"), based in Paris, France, is a financial services institution that, through its subsidiaries and divisions, provides full range of financial products and services business, corporate, institutional and consumer clients.

46.      Defendant BNY Mellon Capital Markets, LLC ("BNY"), based in New York City, is a boutique investment banking firm that offers corporate finance advisory services.  BNY also provides fixed-income securities.  BNY is a subsidiary of The Bank of New York Mellon Corporation.

47.      Defendant Cabrera Capital Markets, LLC ("Cabrera"), based in Chicago, Illinois, is an institutional brokerage firm that offers municipal and corporate financial advisory services, securities clearance, public agency financings, and brokerage services.

12

48.     Defendant Caja de Ahorros y Monte de Piedad de Madrid ("Caja Madrid") operates as a savings bank in Spain.

49.     Defendant Calyon Securities (USA) Inc. ("Calyon"), based in New York City, provides securities brokerage, investment banking and underwriting services.   Calyon is a subsidiary of Credit Agricole S.A.

50.     Defendant Charles Schwab & Co., Inc., ("Charles Schwab"), based in San Francisco, California, is a securities broker dealer.   Charles Schwab is a subsidiary of The Schwab Corporation.

51.     Defendant CIBC World Markets Corp. ("CIBC"), based in New York City, provides a range of credit and capital market products, investment banking, and merchant banking services in North America and worldwide.   CIBC is a subsidiary of the Canadian Imperial Bank of Commerce.

52.     Defendant Citigroup Global Markets Inc. ("CGMI"), based in New York City, is a subsidiary of Citigroup Inc., a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities.

53.     Defendant Commerzbank Capital Markets Corp. ("Commerzbank"), based in New York City, provides securities brokerage and underwriting services.   Commerzbank is a subsidiary of Commerzbank Aktiengesellschaft.

54.     Defendant Daiwa Securities SMBC Europe Limited ("Daiwa"), based in London, England, is an investment banking firm that provides equity, fixed income, investment banking, underwriting derivatives, and strategic advisory services.   Daiwa is a subsidiary of Daiwa Securities SMBC Co. Ltd.

55.     Defendant DnB NOR Markets ("DnB NOR"), based in Oslo, Norway, provides capital markets services.  DnB NOR is a subsidiary of DnB NOR ASA.

56.     Defendant DZ Financial Markets LLC ("DZ Financial"), based in New York City, provides securities brokerage and underwriting services.

57.     Defendant Edward D. Jones & Co., L.P. ("E.D. Jones"), based in St. Louis, Missouri, is a provider of financial services.

58.     Defendant Fidelity Capital Markets Services ("Fidelity Capital"), based in Boston, Massachusetts, is the institutional trading arm of Fidelity Investments providing trading, products, and services.

59.     Defendant RBS Greenwich Capital ("Greenwich"), based in Greenwich, Connecticut, is a securities brokerage firm.  Greenwich operates as a subsidiary of Greenwich Capital Holdings, Inc.

60.     Defendant Harris Nesbitt Corp. ("Harris Nesbitt"), based in New York City, is an investment bank that provides investment, underwriting, and corporate banking services.

61.     Defendant HSBC Securities (USA) Inc. ("HSBC"), based in New York City, is an investment banking firm.  HSBC is a subsidiary of HSBC Holdings plc.

62.     Defendant HVB Capital Markets, Inc. ("HVB"), based in New York City, is a securities broker/dealer.

63.     Defendant Incapital LLC ("Incapital"), with offices in Chicago, Boca Raton and London, is a securities and investment banking firm.

64.     Defendant ING Financial Markets LLC ("ING"), based in New York City, provides investment banking and corporate financial services.  ING is a subsidiary of ING Groep NV.

14

65.     Defendant Loop Capital Markets, LLC ("Loop Capital"), based in Chicago, Illinois, is a boutique investment banking and brokerage firm.

66.     Defendant Mellon Financial Markets, LLC ("Mellon"), based in Pittsburgh, Pennsylvania, is an underwriting subsidiary of Mellon Financial Corporation and provides underwriting, trading, and sales services to investors.

67.     Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), based in New York City, is a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities.

68.     Defendant Mizuho Securities USA, Inc. ("Mizuho"), based in New York City, is a securities brokerage firm that provides underwriting services.  Mizuho operates as a subsidiary of Mizuho Securities Co., Ltd.

69.     Defendant Morgan Stanley & Co. Inc. ("Morgan Stanley"), based in New York City, is a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities.

70.     Defendant Muriel Siebert & Co., Inc., ("Muriel Siebert"), based in New York City, is a stock discount brokerage firm engaged in stock and bond trading.  Muriel Siebert is a wholly owned subsidiary of Siebert Financial.

71.     Defendant nabCapital Securities, LLC ("nabCapital"), based in New York City, is a division of National Australia Bank Limited ("National") based in Melbourne, Australia, a financial services firm that operates as an international financial services organization that provides a comprehensive and integrated range of financial products and services.

72.     Defendant Natixis Bleichroeder Inc. ("Natixis"), based in New York City, provides investment, banking, underwriting and brokerage services.  Natixis is a subsidiary of Natixis bank based in Paris, France.

73.     Defendant Raymond James & Associates, Inc. ("Raymond James"), based in St. Petersburg, Florida, is a retail brokerage firm.  It is a subsidiary of Raymond James Financial.

74.     Defendant RBC Dain Rauscher Inc. ("RBC"), based in Minneapolis, Minnesota, is a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities.

75.     Defendant Santander Investment Securities Inc. ("Santander"), based in New York City, is a wholly-owned subsidiary of Banco Santander, S.A.  Santander provides various financial services including asset management, brokerage, and corporate finance.

76.     Defendant Scotia Capital (USA) Inc. ("Scotia"), based in New York City, is an investment bank that provides securities underwriting and brokerage services.  Scotia is a subsidiary of The Bank of Nova Scotia.

77.     Defendant Siebert Capital Markets ("Siebert"), based in New York City, is a brokerage firm.  Siebert is a division of Muriel Siebert & Co., a wholly owned subsidiary of Siebert Financial Corp.

78.     Defendant SG Americas Securities LLC ("SG Americas"), based in New York City, is a provider of investment banking services.  SG Americas is the subsidiary of Societé Generale.

79.     Defendant SG Corporate & Investment Banking ("Societe Generale"), based in Paris, France, is an investment bank that focuses on corporate finance, structured finance, mergers and acquisitions.  Societe Generale operates as a subsidiary of Societe Generale Group.

80.     Defendant Sovereign Securities Corporation, LLC ("Sovereign"), based in Philadelphia, Pennsylvania, is a securities brokerage firm that provides underwriting services. Sovereign operates as a subsidiary of Sovereign Bank.

81.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust"), based in Atlanta, Georgia, is a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities. SunTrust is a division of SunTrust Banks.

82.     Defendant TD Securities (USA) LLC ("TD Securities"), based in New York City, is an investment banking and securities brokerage firm.  TD Securities is a subsidiary of TD Holdings II Inc.

83.     Defendant UBS Securities LLC ("UBSS"), based in New York City, is a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities.

84.     Defendant UBS Financial Services Inc. ("UBSF"), based in New York City, is a financial services institution that offers investment advisory and brokerage services to its Wealth Management clients.  Defendants UBSS and USBF are referred to collectively herein as "UBS," unless otherwise denoted.

85.     Defendant Utendahl Capital Partners, L.P. ("Utendahl"), based in New York City, is an investment bank.

86.     Defendant Wachovia Capital Markets, LLC ("Wachovia"), based in Charlotte, North Carolina, is a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities.  Wachovia is a subsidiary of Wells Fargo.

17

87.     Defendant Wachovia Securities, LLC, ("Wachovia Securities"), based in St. Louis, Missouri, is a provider of financial services.

88.     Defendant Wells Fargo Securities, LLC ("Wells Fargo"), based in San Francisco, California, is a financial services institution that, through its subsidiaries and divisions, provides commercial and investment banking services and commercial loans to corporate entities.

89.     Defendant Williams Capital Group, L.P. ("Williams Capital"), based in New York City, is an investment banking firm providing debt and equity underwriting and corporate finance advisory services.

90.     The Defendants described in ¶¶40-89 are referred to collectively as the "Underwriter Defendants."   Each Underwriter Defendant was responsible for ensuring the truthfulness and accuracy of statements contained in or incorporated by reference into the Offering Materials with respect to the Offerings that it underwrote, and each Underwriter Defendant is liable under the Securities Act to Plaintiffs and members of the Class for the materially false and misleading statements contained therein.

91.     The Underwriter Defendants' respective liabilities for the Offerings are set forth in Appendix A attached hereto.

## V.     VIOLATIONS OF THE SECURITIES ACT

92.     Allegations set forth in this section of the Complaint assert strict liability and negligence claims pursuant to the Securities Act.  As noted above, the Securities Act claims are not based on any allegation that any Defendant engaged in fraud or any other deliberate and intentional misconduct, and Plaintiffs specifically disclaim any reference to or reliance upon allegations of fraud in connection with the Securities Act claims.

18

**EXHIBIT 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:

LEHMAN BROTHERS SECURITIES AND
ERISA LITIGATION                                              09 MD 2017 (LAK)

This document applies to:

*Deathrow v. Fuld,* 09 Civ. 1230 (LAK)

*Meese & Caldwell v. Fuld,* 09 Civ. 1231 (LAK)

*Mease v. Fuld,* 09 Civ. 1232 (LAK)

*Shipley v. Fuld,* 09 Civ. 1235 (LAK)

*Napierala v. Fuld,* 09 Civ. 1237 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/11/12_

## PRETRIAL ORDER NO. 47
(Arkansas Cases – Motions to Dismiss)

LEWIS A. KAPLAN, *District Judge.*

These five actions were filed in various Arkansas state courts, removed to federal court, and transferred here pursuant to 28 U.S.C. § 1407. They now are proceeding on a consolidated and amended class action complaint ("CAC"). The matter is before the Court on motions by several defendants to strike plaintiffs' class action allegations and to dismiss all or parts of the CAC, which asserts claims under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Act"), 15 U.S.C. §§ 77k, 77l(a)(2). As the background of this case is common to many others as to which the Court has written extensively, it is largely unnecessary to explicate the facts, and the issues presented by the motions may be resolved by reference to established principles without lengthy discussion.

I.       *Class Allegations*

Although the CAC purports to sue on behalf of an alleged class, plaintiffs never have

2

sought class certification.  The Bank and Individual Defendants[1] seek an order striking plaintiffs' class allegations, essentially on the ground that plaintiffs in these cases have not been appointed lead plaintiffs nor satisfied requirements of the Private Securities Litigation Reform Act.  The Court repeatedly has declined to pass on this issue. Pretrial Orders ("PTO") Nos. 9, 24.  As defendants' motions to dismiss these cases are granted for other reasons, the Court need not address it here.

II.    *Securities Act Claims*

   A.    *Timeliness*

      1.    *Claims First Asserted in the CAC*

            All of the alleged offerings and sales at issue in this case occurred by February 2008.  Plaintiffs' original complaints, all filed in 2008, focused on alleged omissions relating to the exposure to collateralized debt obligations ("CDOs") of Lehman Brothers Holdings Inc. ("LBHI").  On November 29, 2011, almost four years later, however, they filed the CAC, which added entirely new allegations relating to allegedly material false statements and omissions related to Repo 105s and risk management practices.[2]

            Section 13 of the Act provides that claims under Sections 11 and 12 must be asserted (1) "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," and (2) "[i]n no event . . . more than three years after the security was bona fide offered to the public."  15 U.S.C. § 77m; *see also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 (1976).

            In this case, plaintiffs obviously were on notice of potential claims based on alleged misstatements regarding Repo 105 transactions and risk management practices shortly after the bankruptcy Examiner's Report was issued March 11, 2010, and in any case no later than April 23, 2010 when the lead plaintiffs in *Equity/Debt* filed their third amended complaint, which made all of the claims of false and misleading statements that plaintiffs now rely upon here.  Yet these plaintiffs did not amend their original complaints until November 29, 2011 – well over a year after the issuance of the Examiner's Report and the class plaintiffs in *Equity/Debt* filed their complaint and more than three years after the offerings and purchases upon which their Section 11 and 12 claims, respectively, rest.  Thus, their claims appear to be barred by both the one-year statute of limitations and the three-year statute of repose of Section 13 of the Act.

            Plaintiffs nonetheless contend their claims under the Securities Act are timely,

---

[1]    The identities of the "Bank Defendants" are listed in MDL [09 MD 2017 (LAK) Dkt. 594 at 1 n.1.]  Those of the "Individual Defendants" are listed in MDL Dkt.626, at 1.

[2]    *See generally Equity/Debt,* 799 F. Supp.2d at 275-87.

arguing first that the statute of limitations was tolled under *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974), by the pendency of other putative class actions and, in any case, that their claims relate back to the filing of their original complaints under Fed. R. Civ. P. 15(c).

The *American Pipe* argument is without merit for two independent reasons.

First, *American Pipe* tolling, where it applies in the first place, stops the running of the statute of limitations against putative and passive class members until class certification is denied or, if it is granted, until putative class members opt out in order to pursue individual claims. Its purposes include, importantly, avoiding the need for putative class members to intervene prior to the class certification decision or otherwise to take affirmative action to protect their ability to proceed individually if class certification is denied. *See American Pipe,* 414 U.S. at 552-54. In this case, however, *American Pipe* tolling is not necessary to avoid needless and possibly burdensome intervention or other action that otherwise would be taken, purely to protect putative class members' ability to proceed individually in the event class certification were denied, as these plaintiffs sued years ago, both individually and, allegedly, on behalf of classes of persons said to have been similarly situated. Allowing *American Pipe* tolling in these circumstances would not serve the interests of "efficiency and economy of litigation which is a principal purpose of the [class action] procedure," *id.* at 553, and that underlie the tolling rule.

Second, and independently sufficient to reject plaintiffs' *American Pipe* argument, are this Court's holdings that *American Pipe* tolling, even if it otherwise were applicable in a case like this, does not toll the running of the three-year period of repose that applies to actions under Sections 11 and 12. *E.g., Equity/Debt,* 799 F. Supp. 2d 258, 308-10 (S.D.N.Y. 2012) (*American Pipe* does not toll statutes of repose).

The Rule 15(c) argument also is without merit. As this Court previously has held, the relation back provision of the rule does not apply to statutes of repose and would violate the Rules Enabling Act if it were construed to do so by abridging or modifying the right of repose that is conferred by Section 13 of the Securities Act. *Equity/Debt,* 799 F. Supp.2d at 310; *In re IndyMac Mortgage-Backed Sec. Litig.,* 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011); *see In re Lehman Brothers Sec. & ERISA Litig.,* 800. F. Supp. 2d 477, 483 (S.D.N.Y. 2011). It view of this conclusion, it is unnecessary to consider the further argument that the requirements of Rule 15(c), even if its application here is not foreclosed for the foregoing reasons, have not been satisfied.

Accordingly, all of plaintiffs' Securities Act claims save those asserted in their original complaints are dismissed as untimely. So too are all of the claims of plaintiff Dimodica against defendant RBC Capital Markets Corp. ("RBC"), as RBC was not a defendant named in the original complaints. It first was brought into the case in November 2011, four years after this plaintiff purchased her shares.

4

B.    *Sufficiency of Remaining Securities Act Claims*

Defendants seek the dismissal also of plaintiffs' remaining original Section 11 and 12 claims based upon LBHI's exposure to CDOs, which now appear at paragraphs 143 to 145 of the CAC. They argue that the claims are insufficient as a matter of law and, in any case, that the Section 12 claims fail because plaintiff has not sufficiently alleged that any of the defendants is a statutory seller as required by the Act.

To say that the three paragraphs of the CAC that set out plaintiffs' claim with respect to CDOs are barebones perhaps understates the matter. Paragraph 143 briefly describes what CDOs are and states in conclusory terms that "[t]he Offering Documents did not reveal that Lehman owned billions of dollars of" CDOs. Paragraph 144 says that Lehman first revealed "its CDO vulnerability" on March 18, 2008, when it disclosed that LBHI owned $626.8 million and $581.2 million of equity securities in CDOs at February 29, 2008 and November 30, 2007, respectively, but added that its investments did not represent a majority of the CDOs' equity and that it therefore was not exposed to the majority of the CDOs expected losses. Paragraph 145 then concludes by alleging that Lehman knew of its CDO exposure at the time of each offering complained of but did not disclose it until later, thus concealing the allegedly "tremendous risks" purchasers of the offered securities would be taking.

These allegations are not sufficient. Plaintiffs nowhere allege what LBHI's CDO holdings were at any time prior to November 30, 2007 beyond the once-over-lightly assertion in paragraph 143 that it was in the billions of dollars – which of course was not approached even at November 30, 2007 or February 29, 2008. They do not allege facts in the CAC nor argue any legal basis for supposing that LBHI had any obligation to disclose its CDO holdings, whether they were "billions of dollars" or something else, prior to March 2008. And they do not allege that LBHI believed at the time of the offerings in question that its CDO holdings were sufficiently large or risky to warrant disclosure at any earlier point. Thus, the Court is left to speculate as to the nature of the claim and the facts.

Giving plaintiffs the benefit of the doubt, the Court assumes in their favor that their theory must be analogous to the claim made in *Equity/Debt* with respect to the alleged non-disclosure in the offering materials of concentrations of credit risk – i.e., that the financial statements were false and misleading because they did not disclose significant risks and uncertainties arising from CDO holdings. *See Equity/Debt,* 799 F. Supp.2d at 290 *et seq.* As explained there, LBHI was required by SFAS 107 to "disclose all significant concentrations of credit risk arising from *all* financial instruments, whether from an individual counterparty or groups of counterparties." SFAS 107, at 197. The question whether a particular concentration of credit risk was "significant" within the meaning of SFAS 107," however, was "a matter of judgment. *See, e.g.,* FSP 94–6–1 ("Judgment is required to determine whether loan products have terms that give rise to a concentration of credit risk."). "Consequently, in order to state a claim that an entity's failure to disclose a concentration of credit risk violated SFAS 107, a plaintiff must plead facts that would permit findings that the entity in fact had 'significant concentrations of credit risk' *and* that the entity believed that to be so." *Equity/Debt,* 799 F. Supp.2d at 291 (emphasis added).

5

This complaint, even crediting the probably implausible and conclusory claim that LBHI held billions of dollars of CDOs at the times of the offerings in question, alleges nothing to support an inference that the terms of those CDOs gave rise to concentrations of credit risk at the times of the offerings or that LBHI so believed.  Indeed, plaintiffs have not even responded to defendants' argument on this point and effectively have conceded its validity.[3]  Accordingly, plaintiffs' allegations of misstatements and omissions that are predicated on the failure prior to March 2008 to disclose LBHI's CDO holdings fail to state a claim upon which relief may be granted.

In view of this conclusion, it is unnecessary to address defendants' other arguments.

*Conclusion*

For the foregoing reasons, the motions of the Bank Defendants (MDL Dkt. 594), joined in by defendant The Williams Capital Group LLP (MDL Dkt. 612), and the Individual Defendants (MDL Dkt. 625) to dismiss the consolidated amended complaint are granted in all respects.  The motion of Charles Schwab & Co., Inc. (MDL Dkt. 600) is granted to the extent it seeks dismissal of the cases included in the consolidated amended complaint in this action.  That motion, however, remains pending to the extent that it is directed also at other cases.

As this order disposes of all claims against all defendants, the Clerk shall enter judgment and close the case.

Dated:  December 11, 2012

_____
Lewis A. Kaplan
United States District Judge

---

[3]

Instead of explaining in their opposition brief how their CDO-related allegations state a claim, plaintiffs attempt to recast their risk management allegations as allegations relating to "Lehman's Actual Liquidity," arguing that the CAC "sufficiently allege[s] that the offering documents misrepresented Lehman's actual liquidity."  Pls.' Opp. Br. at 33.  Plaintiffs' risk management claims are, of course, time-barred, and the complaint cannot be amended in an opposition brief.  Moreover, even if properly and timely asserted, plaintiffs' risk management allegations would fail for the same reasons as those plaintiffs made in *Equity/Debt*.

08-13555-mg   Doc 46973-5   Filed 11/17/14   Entered 11/17/14 18:05:00   Exhibit E
Pg 119 of 162

**EXHIBIT 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re LEHMAN BROTHERS SECURITIES
AND ERISA LITIGATION

This Document Applies To:

*In re Lehman Brothers Equity/Debt
Securities Litigation*, 08-CV-5523-LAK

Case No. 09-MD-2017 (LAK)

ECF CASE

USDS SDNY
DOCUMENT
ELECTRONICALLY FI
DOC #:
DATE FILED:

RECEIVED
APR 19 2012
JUDGE KAPLAN'S CHAMBERS

## JUDGMENT AND ORDER APPROVING SETTLEMENT BETWEEN
## LEAD PLAINTIFFS AND THE SETTLING UNDERWRITER DEFENDANTS

This matter came for hearing on April 12, 2012 (the "Settlement Hearing"), on the
application of the Settling Parties to determine (i) whether the terms and conditions of the
Stipulation of Settlement and Release dated December 2, 2011 (the "First Underwriter
Stipulation") between Lead Plaintiffs, on behalf of the UW Settlement Class, and A.G. Edwards
& Sons, Inc.; ABN AMRO Inc.; ANZ Securities, Inc.; Banc of America Securities LLC; BBVA
Securities Inc.; BNP Paribas; BNY Mellon Capital Markets, LLC; Caja de Ahorros y Monte de
Piedad de Madrid; Calyon Securities (USA) Inc. (n/k/a Crédit Agricole Corporate and
Investment Bank); CIBC World Markets Corp.; Citigroup Global Markets Inc.; Commerzbank
Capital Markets Corp.; Daiwa Capital Markets Europe Limited (f/k/a Daiwa Securities SMBC
Europe Limited); DnB NOR Markets Inc. (the trade name of which is DnB NOR Markets); DZ
Financial Markets LLC; Edward D. Jones & Co., L.P.; Fidelity Capital Markets Services (a
division of National Financial Services LLC); Fortis Securities LLC; BMO Capital Markets
Corp. (f/k/a Harris Nesbitt Corp.); HSBC Securities (USA) Inc.; ING Financial Markets LLC;
Loop Capital Markets, LLC; Mellon Financial Markets, LLC (n/k/a BNY Mellon Capital

1

Markets, LLC); Merrill Lynch, Pierce, Fenner & Smith Inc.; Mizuho Securities USA Inc.;

Morgan Stanley & Co. Inc.; nabCapital Securities, LLC (n/k/a nabSecurities, LLC); National

Australia Bank Ltd.; Natixis Bleichroeder Inc. (n/k/a Natixis Securities Americas LLC);

Raymond James & Associates, Inc.; RBC Capital Markets, LLC (f/k/a RBC Dain Rauscher Inc.);

RBS Greenwich Capital (n/k/a RBS Securities Inc.); Santander Investment Securities Inc.; Scotia

Capital (USA) Inc.; SG Americas Securities LLC; Sovereign Securities Corporation LLC;

SunTrust Robinson Humphrey, Inc.; TD Securities (USA) LLC; UBS Securities LLC; Utendahl

Capital Partners, L.P.; Wachovia Capital Finance; Wachovia Securities, LLC (n/k/a Wells Fargo

Securities, LLC); and Wells Fargo Securities, LLC (collectively, the "First Group of Settling

Underwriter Defendants") are fair, reasonable, and adequate for the settlement of all Settled

Claims, including all claims asserted by Lead Plaintiffs against the Settling Underwriter

Defendants in the Third Amended Class Action Complaint for Violations of the Federal

Securities Laws (the "Complaint") now pending in this Court in the above-captioned

consolidated class action (the "Action"), and should be approved; (ii) whether the terms and

conditions of the Stipulation of Settlement and Release dated December 9, 2011 (the "Second

Underwriter Stipulation"), largely adopting the First Underwriter Stipulation, between Lead

Plaintiffs, on behalf of the UW Settlement Class, and Cabrera Capital Markets LLC; Charles

Schwab & Co., Inc.; HVB Capital Markets, Inc.; Incapital LLC; MRB Securities Corp., as

general partner of M.R. Beal & Company (M.R. Beal & Company, together with its owners and

partners); Muriel Siebert & Co., Inc. and Siebert Capital Markets; and Williams Capital Group

L.P. (collectively, the "Second Group of Settling Underwriter Defendants" and, together with the

First Group of Settling Underwriter Defendants, the "Settling Underwriter Defendants") are fair,

reasonable, and adequate for the settlement of all Settled Claims, including all claims asserted by

2

Lead Plaintiffs against the Settling Underwriter Defendants in the Complaint now pending in this Court in the Action, and should be approved; and (iii) whether judgment should be entered (a) dismissing the Complaint on the merits, with prejudice and without costs, in favor only of the Settling Underwriter Defendants and the other Released Underwriter Parties and as against all persons or entities who are members of the UW Settlement Class herein who have not requested exclusion therefrom, (b) releasing the Settled Claims as against the Settling Underwriter Defendants and all other Released Underwriter Parties, and (c) entering a Bar Order and judgment reduction provision, as set forth in paragraphs 12 and 13 herein, in connection with this Action. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that a notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all persons and entities reasonably identifiable as members of the UW Settlement Class, and that a summary notice of the Settlement Hearing substantially in the form approved by the Court was published in the national edition of *The Wall Street Journal* and *Investor's Business Daily* pursuant to the specifications of the Court.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Judgment hereby incorporates by reference the definitions in the First Underwriter Stipulation and the Second Underwriter Stipulation (together, the "Stipulations"), and all capitalized terms used herein shall have the same meaning as set forth in the First Underwriter Stipulation for purposes of the settlement with the First Group of Settling Underwriter Defendants and the same meaning as set forth in the Second Underwriter Stipulation for purposes of the settlement with the Second Group of Settling Underwriter Defendants including, but not limited to:

    a. "Released Underwriter Parties" shall mean any and all of the Settling Underwriter Defendants and their respective current and former trustees, officers,

3

directors, principals, predecessors, successors, assigns, attorneys, parents, affiliates, employers, employees, agents, and subsidiaries, but specifically does not include any Non-Settling Defendant.

b. "Released Underwriter Parties' Claims" shall mean any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Settling Underwriter Defendants, except for claims relating to the enforcement of the Settlement.

c. "Settled Claims" shall mean any and all claims, rights, demands, liabilities and causes of action of every nature and description, to the fullest extent that the law permits their release in this Action, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, whether class or individual in nature, that Lead Plaintiffs or any other members of the Settlement Class: (a) alleged in the Complaint, or (b) could have asserted in any forum that arise out of or are based upon or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that arise out of the Settlement Class Member's purchase or acquisition of the Lehman Securities pursuant or traceable to the Shelf Registration Statement and Offering Materials incorporated by reference in the Shelf Registration Statement. Notwithstanding the foregoing, the Settlement Class, through the release in this Settlement, will not release (i) any claims against the Non-Settling Defendants; (ii) the claims asserted in any ERISA action or mortgage-backed securities action, including such claims submitted against any of the debtors in the Lehman Bankruptcy Proceedings or the LBI SIPA Proceeding; (iii) any claims or interests in the Lehman Bankruptcy Proceeding or the LBI SIPA Proceeding asserted by an individual Settlement Class Member based solely upon the ownership of any Lehman security which is entitled to a distribution under any confirmed plan of reorganization in the Lehman Bankruptcy Proceeding because of such ownership; or (iv) claims relating to the enforcement of the Settlement.

2.      This Court has jurisdiction to enter this Judgment. The Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all UW Settlement Class Members.

3.      The Court hereby affirms its findings in its Order Concerning Proposed Settlement with the Settling Underwriter Defendants dated December 15, 2011 (the "Preliminary Order"), that for purposes of the UW Settlement only, the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the

4

number of UW Settlement Class Members is so numerous that joinder thereof is impracticable; (b) there are questions of law and fact common to the UW Settlement Class; (c) the claims of the UW Settlement Class Representatives are typical of the claims of the UW Settlement Class; (d) the UW Settlement Class Representatives and Lead Counsel have and will fairly and adequately represent the interests of the UW Settlement Class; (e) the questions of law and fact common to the members of the UW Settlement Class predominate over any questions affecting only individual members of the UW Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4.     The Court further affirms its determinations in the Preliminary Order and finally certifies, for purposes of the UW Settlement only, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Action to proceed as a class action on behalf of all persons or entities who purchased or otherwise acquired Lehman securities identified in Appendix A to the First Underwriter Stipulation ("Lehman Securities") pursuant or traceable to the Shelf Registration Statement and Offering Materials incorporated by reference in the Shelf Registration Statement and who were damaged thereby. The UW Settlement Class includes registered mutual funds, managed accounts, or entities with nonproprietary assets managed by any of the Released Underwriter Parties including, but not limited to, the entities listed on Exhibit C attached to the First Underwriter Stipulation, who purchased or otherwise acquired Lehman Securities (each, a "Managed Entity"). Excluded from the UW Settlement Class are (i) Defendants, (ii) the officers and directors of each Defendant, (iii) any entity (other than a Managed Entity) in which a Defendant owns, or during the period July 19, 2007 to September 15, 2008 (the "Underwriter Settlement Class Period") owned, a majority interest, (iv) members of Defendants' immediate families and the legal representatives, heirs, successors or assigns of

5

any such excluded party, and (v) Lehman. Also excluded from the UW Settlement Class are the persons and entities who timely and validly requested exclusion from the UW Settlement Class as listed on Exhibit 1 annexed hereto.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the UW Settlement only, this Court affirms its findings in the Preliminary Order that the UW Settlement Class Representatives are adequate class representatives and finally certifies them as UW Settlement Class Representatives, and finally certifies the law firms of Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

6.      Notice of the pendency of this Action as a class action and of the proposed UW Settlement was given to all UW Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the UW Settlement Class of the pendency of the Action as a class action and of the terms and conditions of the proposed UW Settlement met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, and constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

7.      Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that due and adequate notice of these proceedings was directed to all persons and entities who are UW Settlement Class Members, advising them of the UW Settlement, of Lead Counsel's intent to apply for attorneys' fees and reimbursement of Litigation Expenses associated with the Action, and of their right to object thereto, and a full and fair

opportunity was accorded to all persons and entities who are UW Settlement Class Members to be heard with respect to the foregoing matters. Thus, it is hereby determined that all UW Settlement Class Members who did not timely and validly elect to exclude themselves by written communication received by the claims administrator no later than the date set forth in the Notice and the Preliminary Order, are bound by this Judgment.

8.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the UW Settlement as set forth in the Stipulations, and finds that the UW Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of the UW Settlement Class Members, including Lead Plaintiffs. This Court further finds that the UW Settlement set forth in the Stipulations is the result of arm's-length negotiations between experienced counsel representing the interests of the Settling Parties. Accordingly, the UW Settlement embodied in the Stipulations is hereby approved in all respects and shall be consummated in accordance with the terms and provisions of the Stipulations.

9.     The Action, the Complaint, and the claims asserted therein by the UW Settlement Class Members are hereby dismissed with prejudice as against only the Settling Underwriter Defendants and without costs except for the payments expressly provided for in the Stipulations.

10.     Upon the Effective Date, each of the Named Plaintiffs and all other UW Settlement Class Members, release and shall be deemed by operation of law to have irrevocably, absolutely and unconditionally, fully, finally and forever released, waived, discharged and dismissed each and every Settled Claim against each and all of the Released Underwriter Parties with prejudice, and shall forever be enjoined from prosecuting any or all Settled Claims against any Released Underwriter Party.

7

11.     Upon the Effective Date, each of the Settling Underwriter Defendants, on behalf
of themselves and their respective heirs, joint tenants, tenants in common, beneficiaries,
executors, administrators, predecessors, successors, affiliates, assigns and agents, release and
shall be deemed by operation of law to have released, waived, discharged and dismissed each
and every Released Underwriter Parties' Claims against each and all of the Named Plaintiffs, and
their respective counsel, and any other UW Settlement Class Member, and shall forever be
enjoined from prosecuting any or all of the Released Underwriter Parties' Claims against Named
Plaintiffs, their respective counsel, or any other UW Settlement Class Member.

12.     Upon the Effective Date, any and all claims for contribution and indemnification
(or any other claim where the injury is the person's or entity's liability to one or more members
of the UW Settlement Class), arising from, relating to, or in connection with the Settled Claims
(a) by any person or entity against any or all of the Released Underwriter Parties, their insurers,
subrogees or assigns, or anyone acting on behalf of the Released Underwriter Parties, their
insurers, subrogees or assigns or (b) by any or all of the Released Underwriter Parties, their
insurers, subrogees or assigns, or anyone acting on behalf of the Released Underwriter Parties,
their insurers, subrogees or assigns against any Non-Settling Defendant, its insurers, subrogees
or assigns, or anyone acting on behalf of a Non-Settling Defendant, its insurers, subrogees or
assigns, other than a person or entity whose liability has been extinguished pursuant to the UW
Settlement, are, to the fullest extent provided by law, permanently barred and fully discharged.
The discharging of such claims shall not affect any Defendant's claims filed against Lehman
Brothers Holdings Inc. in its bankruptcy proceeding or against Lehman Brothers Inc. in its
proceeding under the Securities Investor Protection Act in the United States Bankruptcy Court
for the Southern District of New York.

8

13. Any final verdict or judgment that may be obtained by or on behalf of the UW Settlement Class or a UW Settlement Class Member against any person or entity subject to the Bar Order in paragraph 12 above shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of any Settling Underwriter Defendant (or Settling Underwriter Defendants, as applicable) for common damages; or (b) the amount paid by or on behalf of any Settling Underwriter Defendant (or Settling Underwriter Defendants, as applicable) to the UW Settlement Class or UW Settlement Class Member, as applicable, for common damages.

14. This Judgment and the Stipulations, whether or not the Judgment becomes Final, and any proceedings taken pursuant to the Stipulations, including exhibits, all negotiations, discussions, drafts and proceedings in connection with the UW Settlement, and any act performed or document signed in connection with the UW Settlement:

a. shall not be offered or received against any of the Released Underwriter Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of the Released Underwriter Parties with respect to the truth of any fact alleged by Named Plaintiffs or the validity of any claim that was or could have been asserted against any of the Released Underwriter Parties in this Action or in any litigation, or of any liability, negligence, fault or wrongdoing of any of the Released Underwriter Parties;

b. shall not be offered or received against any of the Released Underwriter Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Released Underwriter Parties, or against any of the Named Plaintiffs or any other UW Settlement

9

Class Members as evidence of any infirmity in the claims of the Named Plaintiffs or the other UW Settlement Class Members;

      c.    shall not be offered or received against any of the Released Underwriter Parties or against any of the Named Plaintiffs or any other UW Settlement Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Released Underwriter Parties, or against any of the Named Plaintiffs or any other UW Settlement Class Members, in any other civil, criminal or administrative action, arbitration or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that if the Stipulations are approved by the District Court, the Settling Underwriter Defendants, any Released Underwriter Party, Named Plaintiffs and any other UW Settlement Class Member may file the Stipulations and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

      d.    shall not be construed against any Released Underwriter Parties, any Named Plaintiff or any other UW Settlement Class Member as an admission, concession or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

      e.    shall not be construed as or received in evidence as an admission, concession or presumption against any Named Plaintiff or any other UW Settlement Class

10

Member that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

15.      The Court reserves jurisdiction over, without affecting in any way the finality of this Judgment, (a) implementation and enforcement of the UW Settlement; (b) approving a plan of allocation; (c) the allowance, disallowance or adjustment of any UW Settlement Class Member's claim on equitable grounds and any award or distribution of the Settlement Funds; (d) disposition of the Settlement Funds; (e) hearing and determining Lead Counsel's application for attorneys' fees, costs, interest and expenses, including fees and costs of experts and/or consultants; (f) enforcing and administering this Judgment; (g) enforcing and administering the Stipulations including any releases executed in connection therewith; and (h) any other matter related or ancillary to the foregoing.

16.      Separate Orders shall be entered regarding Lead Plaintiffs' motion for approval of the proposed Plan of Allocation and Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses. Such Orders shall not disturb or affect any of the terms of this Judgment.

17.      In the event that the UW Settlement does not become effective in accordance with the terms of the Stipulations or in the event that the Settlement Funds, or any portion thereof, are returned to the Settling Underwriter Defendants (or such persons or entities responsible for funding the Settlement Amount), and such amount is not replaced by others, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulations, and shall be vacated to the extent provided by the Stipulations and, in such event: (a) all Orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulations; (b) the fact of the UW Settlement shall not

11

be admissible for any purpose and the Settling Parties shall be deemed to have reverted *nunc pro tunc* to their respective status in this Action as of October 3, 2011; and (c) the Settlement Amount plus accrued interest, less any Taxes paid or due with respect to such income, and less Notice and Administration Costs actually incurred and paid or payable, shall be returned in full as provided in paragraph 36 of the First Underwriter Stipulation and in paragraph 36 of Exhibit A to the Second Underwriter Stipulation as modified by paragraph 4 of the Second Underwriter Stipulation.

18.    Without further Order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulations.

19.    There is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed.

Dated: _April 21, 2012_

_____
The Honorable Lewis A. Kaplan
United States District Judge

#636143

12

## Exhibit 1

### Persons and Entities Excluded from the UW Settlement Class

1. Carol Ahlf
   Kinnelon, NJ

2. Alternative Benefit Management
   c/o Greer, Herz & Adams, L.L.P.
   League City, TX

3. California Public Employees'
   Retirement System
   c/o Robbins Geller Rudman & Dowd
   LLP
   San Diego, CA

4. Caveman Associates, LLC
   c/o Phillip Lo Bianco Jr
   Pompano Beach, FL

5. Carol Ciarco
   c/o Dan A. Druz
   Lindenhurst, NJ

6. City of Burbank
   c/o Cotchett, Pitre & McCarthy, LLP
   Burlingame, CA

7. City of San Buenaventura
   c/o Cotchett, Pitre & McCarthy, LLP
   Burlingame, CA

8. Comprehensive Investment Services,
   Inc.
   c/o Greer, Herz & Adams, L.L.P.
   League City, TX

9. Ernie Hoechner (Trust & IRA)
   c/o Dan A. Druz
   S. Burlington, VT

10. Priscilla Hoechner (IRA)
    c/o Dan A. Druz
    S. Burlington, VT

11. Jamiscott LLC
    c/o Harris & Houghteling LLP
    New York, NY

12. Donald P. Lenio (IRA)
    Ocala, FL

13. The Moody Foundation
    c/o Greer, Herz & Adams, L.L.P.
    Galveston, TX

14. Edward Muchmore
    Iselin, NJ

15. Susanne Robbins
    Boca Raton, FL

16. Fred G. Rucker
    Sarasota, FL

17. Russell T. Rupp
    Linda M. Rupp (JTWROS)
    Bonita Springs, FL

18. Michael J. Ryan
    Bradenton, FL

19. San Mateo County Investment Pool
    c/o Cotchett, Pitre & McCarthy, LLP
    Burlingame, CA

20. Lorraine Senkowsky (IRA)
    c/o Dan A. Druz
    Lakewood, NJ

21. Sidney Steinberg
    Boca Raton, FL

22. Vallejo Sanitation and Flood Control
    District
    c/o Cotchett, Pitre & McCarthy, LLP
    Burlingame, CA

13

23. Donald Vives & Katherine C. Vives
    Auburn, AL

24. David Volpe (IRA)
    c/o Dan A. Druz
    St. Petersburg, FL

25. John & Kim Volpe
     c/o Dan A. Druz
    Sea Girt, NJ

26. Richard Winslow
    Flourtown, PA

27. Leonard Schneider and Lillian Schneider
    c/o Harris & Houghteling LLP
    New York, NY

28. Lillian Schneider
    c/o Harris & Houghteling LLP
    New York, NY

29. Susan Schneider
    c/o Harris & Houghteling LLP
    New York, NY

**EXHIBIT 8**

**PROOF OF CLAIM**

**UNITED STATES BANKRUPTCY COURT**

Claim Number: 7002006

| Name Of Debtor: | Case Number: |
|---|---|
| Lehman Brothers, Inc. | 08-01420 (JMP) SIPA |

| **Name Of Creditor:** | |
|---|---|
| SMH Capital Inc. | |

| **Name and address where notices should be sent:** | ☑ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| John T Unger<br>600 Travis, Suite 5800<br>Houston, TX 77002<br>UNITED STATES<br>john.unger@smhgroup.com | |
| **Telephone number:**<br>713-993-4645 | |

| **Name and address where payment should be sent (if different from above):** | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| | ☐ Check this box if you are the debtor or trustee in this case. |
| **Telephone number:** | |

| **1. Amount of Claim as of Date Case Filed:** |
|---|
| $ 3,436,590.00 |
| ☐ Unknown   ☐ Undetermined   ☐ Estimated |
| ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. |

| **2. Basis for Claim:** |
|---|
| Indemnification Claims |

| **3. Last four digits of any number by which creditor identifies debtor:** |
|---|
| |

## 4. Secured Claim

Nature of property or right of setoff:

☐ Real Estate    ☐ Motor Vehicle    ☐ Other

Value of Property:

$ 0.00

Annual Interest Rate:

Amount of arrearage and other charges as of time case filed included in secured claim, if any:

$ 0.00

Basis for perfection:

Amount if Secured Claim:

$ 0.00

Amount if Unsecured Claim:

$ 0.00

**Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.

If the documents are not available, please explain:

## 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4)

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7)

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8)

☐Other - Specify applicable paragraph of 11 U.S.C. §507 (a)()

**Amount entitled to priority:**
$0.00

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Name:  Jon T Unger

Title, if any:  Senior Vice Pres. & General Counsel

Date:  May 26, 2009

**Creditor or Authorized person address:**

**Telephone number:**

☑  By checking this box, I am electronically signing this document. I intend this electronic signature to carry the same force and effect as my physical signature.

☑  I acknowledge that the Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**EXECUTION COPY**

66,000,000 Shares

LEHMAN BROTHERS HOLDINGS INC.

Depositary Shares
Each Representing 1/100th of a Share of
7.95% Non-Cumulative Perpetual Preferred Stock, Series J

UNDERWRITING AGREEMENT

New York, New York
Dated the date set forth
In Schedule I hereto

To the Representative(s)
    named in Schedule I
    hereto, of the Underwriters
    named in Schedule II hereto

Ladies and Gentlemen:

Lehman Brothers Holdings Inc., a Delaware corporation (the "Company"), proposes to issue and sell to you and the other underwriters named in Schedule II hereto (the "Underwriters"), for whom you are acting as representative(s) (the "Representative(s)"), the number of shares identified in Schedule I hereto (the "Firm Shares") of the Company's preferred stock, par value $1.00 per share (the "Preferred Stock") identified in Schedule I hereto.  In addition, if so indicated in Schedule I the Company proposes to grant to the Underwriters an option to purchase up to an additional number of shares of the Preferred Stock identified in Schedule I hereto on the terms and for the purposes set forth in Section 2 (the "Option Shares"). The Firm Shares and the Option Shares, if purchased, are hereinafter collectively called the "Shares".  The Shares are to be deposited by you or on your behalf against delivery of Depositary Receipts (the "Depositary Receipts") to be issued by the depositary identified in Schedule I hereto (the "Depositary"), under a Deposit Agreement (the "Deposit Agreement"), among the Company, the Depositary and holders from time to time of the Depositary Receipts issued thereunder. The Depositary Receipts will evidence Depositary Shares (the "Depositary Shares"), and each Depositary Share will represent the fraction of a share of Preferred Stock identified in Schedule I.  The number of Depositary Shares in respect of Firm Shares to be purchased by each Underwriter is identified in Schedule II.  If the firm or firms listed in Schedule II hereto include only the firm or firms listed in Schedule I hereto, then the terms "Underwriters" and "Representative(s)" shall each be deemed to refer to such firm or firms.  This is to confirm the agreement concerning the purchase of the Shares from the Company by the Underwriters named in Schedule II hereto.

Shares being delivered on such Delivery Date on the terms and in the manner contemplated in the Preliminary Prospectus or the Prospectus;

(i)     Prior to each Delivery Date, the Company shall have furnished to the Representative(s) such further information, certificates and documents as the Representative(s) or Underwriters' Counsel may reasonably request.

If any of the conditions specified in this Section 6 shall not have been fulfilled when and as required by this Agreement, or if any of the certificates or opinions furnished to the Representative(s) or Underwriters' Counsel pursuant to this Section 6 shall not be in all material respects reasonably satisfactory in form and substance to the Representative(s) and to Underwriters' Counsel, this Agreement and all obligations of the Underwriters hereunder may be cancelled at, or at any time prior to, each Delivery Date by the Representative(s).  Notice of such cancellation shall be given to the Company in writing, or by telegraph confirmed in writing.

7.     Expenses.  The Company agrees to pay (a) the costs incident to the authorization, issuance, sale and delivery of the Depositary Shares and any taxes payable in that connection; (b) the costs incident to the preparation, printing and filing under the Securities Act of the Registration Statement and any amendments and exhibits thereto; (c) the costs of distributing the Registration Statement as originally filed and each amendment thereto and any post-effective amendments thereof (including, in each case, exhibits), any Preliminary Prospectus, the Prospectus, any Issuer Free Writing Prospectus and any amendments thereof or supplements thereto, all as provided in this Agreement; (d) the costs of producing and distributing this Agreement, the Deposit Agreement, any other document identified in Schedule I hereto and any other related documents in connection with the offering, purchase, sale and delivery of Depositary Shares; (e) the filing fees incident to securing any applicable review by the Financial Industry Regulatory Authority, Inc. of the terms of sale of the Depositary Shares; (f) any applicable listing or other fees; (g) all costs and expenses incident to the rating of the Depositary Shares by one or more rating agencies, (h) the fees and expenses of qualifying the Depositary Shares under the securities laws of the several jurisdictions as provided in Section 5(h) and of preparing, printing and distributing any Blue Sky Memorandum (including related fees and expenses of counsel to the Underwriters); and (i) all other costs and expenses incident to the performance of the obligations of the Company under this Agreement; provided that, except as provided in this Section 7 and in Section 12, the Underwriters shall pay their own costs and expenses, including the costs and expenses of their counsel, any transfer taxes on the Depositary Shares which they may sell and the expenses of advertising any offering of the Depositary Shares made by the Underwriters.

8.     Indemnification.  (a)  The Company shall indemnify and hold harmless each Underwriter, its officers and employees and each person, if any, who controls any Underwriter within the meaning of the Securities Act, from and against any loss, claim, damage or liability, joint or several, or any action or pending action in respect thereof (including, but not limited to, any loss, claim, damage, liability, action or pending action relating to purchases and sales of Securities), to which that Underwriter, officer, employee or controlling person may become subject, under the Securities Act or otherwise, insofar as such loss, claim, damage, liability, action or pending action arises out of, or is based upon, (i) any untrue statement or alleged untrue statement of a material fact contained in (A) the Registration Statement, as originally filed or in

any amendment thereof, or in any Preliminary Prospectus or the Prospectus or in any amendment or supplement thereto, (B) any Issuer Free Writing Prospectus or in any amendment or supplement thereto or (C) any "issuer information" filed or required to be filed pursuant to Rule 433(d) used or referred to in any "free writing prospectus" (as defined in Rule 405) with the consent of the Company and used or referred to by any Underwriter,  (ii) the omission or alleged omission to state therein any material fact required to be stated therein or necessary to make the statements therein not misleading, and shall reimburse each Underwriter and each such officer, employee or controlling person promptly upon demand for any legal or other expenses reasonably incurred by that Underwriter, officer, employee or controlling person in connection with investigating or defending or preparing to defend against any such loss, claim, damage, liability, action or pending action as such expenses are incurred; provided, however, that (i) the Company shall not be liable in any such case to the extent that any such loss, claim, damage, liability, action or pending action arises out of, or is based upon, any untrue statement or alleged untrue statement or omission or alleged omission made therein in reliance upon and in conformity with written information concerning any Underwriter furnished to the Company through the Representative(s) by or on behalf of such Underwriters specifically for use in connection with the preparation thereof (which information is specified in Section 8(e) hereof). The foregoing indemnity agreement is in addition to any liability that the Company may otherwise have to any Underwriter or to any officer, employee or controlling person of that Underwriter.

      (b)     Each Underwriter, severally and not jointly, shall indemnify and hold harmless the Company, its officers, employees and each of its directors, and each person, if any, who controls the Company within the meaning of the Securities Act, from and against any loss, claim, damage or liability, joint or several, or any action or pending action in respect thereof, to which the Company or any such director, officer or controlling person may become subject, under the Securities Act or otherwise, insofar as such loss, claim, damage, liability, action or pending action arises out of, or is based upon, (i) any untrue statement or alleged untrue statement of a material fact contained in (A) the Registration Statement, as originally filed or any amendment thereof, or in any Preliminary Prospectus, Prospectus or in any amendment or supplement thereto or (B) any Issuer Free Writing Prospectus or in any amendment or supplement thereto, or (ii) the omission or alleged omission to state therein any material fact required to be stated therein or necessary to make the statements therein not misleading, but in each case only to the extent that the untrue statement or alleged untrue statement or omission or alleged omission was made in reliance upon and in conformity with written information concerning such Underwriter furnished to the Company through the Representative(s) by or on  behalf of that Underwriter specifically for inclusion therein (which information is specified in Section 8(e) hereof), and shall reimburse the Company and any such director, officer or controlling person for any legal or other expenses reasonably incurred by the Company or any such director, officer or controlling person in connection with investigating or defending or preparing to defend against any such loss, claim, damage, liability, action or pending action as such expenses are incurred.  The foregoing indemnity agreement is in addition to any liability that any Underwriter may otherwise have to the Company or any such director, officer, employee or controlling person.

08-01420-scc Doc 6768-3 Filed 07/22/13 Entered 07/23/13 15:18:05 Main Document
08-13555-mg Doc 48973-5 Filed 02/18/14 Entered 02/18/14 18:05:00 Exhibit Ent
Pg 430 of 161
Pg 140 of 162

22

(c)     Promptly after receipt by an indemnified party under this Section 8 of notice of any claim or the commencement of any action, the indemnified party shall, if a claim in respect thereof is to be made against the indemnifying party under this Section 8, notify the indemnifying party in writing of the claim or the commencement of that action; provided, however, that the failure to notify the indemnifying party shall not relieve it from any liability which it may have under this Section 8 except to the extent it has been materially prejudiced by such failure and, provided further, that the failure to notify the indemnifying party shall not relieve it from any liability which it may have to an indemnified party otherwise than under this Section 8.  If any such claim or action shall be brought against an indemnified party, and it shall notify the indemnifying party thereof, the indemnifying party shall be entitled to participate therein and, to the extent that it wishes, jointly with any other similarly notified indemnifying party, to assume the defense thereof with counsel satisfactory to such indemnified party; provided, however, if the defendants in any such action include both the indemnified party and the indemnifying party and either (i) the indemnifying party or parties and the indemnified party or parties mutually agree or (ii) representation of both the indemnifying party or parties and the indemnified party or parties by the same counsel is inappropriate under applicable standards of professional conduct due to actual or potential differing interests between them, the indemnified party or parties shall have the right to select separate counsel to assume such legal defenses and to otherwise participate in the defense of such action on behalf of such indemnified party or parties.  After notice from the indemnifying party to the indemnified party of its election to assume the defense of such claim or action, the indemnifying party shall not be liable to the indemnified party under this Section 8 for any legal or other expenses subsequently incurred by the indemnified party in connection with the defense thereof unless (i) the indemnified party shall have employed counsel in connection with the assumption of legal defenses in accordance with the proviso to the next preceding sentence (it being understood, however, that the indemnifying party shall not be liable for the expenses of more than one separate counsel, approved by the Representative(s) in the case of subparagraph (a) representing the indemnified parties under subparagraph (a), as the case may be, who are parties to such action), (ii) the indemnifying party shall not have employed counsel satisfactory to the indemnified party to represent the indemnified party within a reasonable time after notice of commencement of the action or (iii) the indemnifying party has authorized the employment of counsel for the indemnified party at the expense of the indemnifying party.  No indemnifying party shall (i) without the prior written consent of the indemnified parties (which consent shall not be unreasonably withheld), settle or compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the indemnified parties are actual or potential parties to such claim or action) unless such settlement, compromise or consent includes an unconditional release of each indemnified party from all liability arising out of such claim, action, suit or proceeding and does not include a statement as to or an admission of fault, culpability or a failure to act, by or on behalf of any indemnified party, or (ii) be liable for any settlement of any such action effected without its written consent (which consent shall not be unreasonably withheld), but if settled with the consent of the indemnifying party or if there be a final judgment of the plaintiff in any

such action, the indemnifying party agrees to indemnify and hold harmless any indemnified party from and against any loss or liability by reason of such settlement or judgment.

(d)     If the indemnification provided for in this Section 8 shall for any reason be unavailable to or insufficient to hold harmless an indemnified party under Section 8(a) or 8(b) in respect of any loss, claim, damage or liability, or any action or pending action in respect thereof, referred to therein, then each indemnifying party shall, in lieu of indemnifying such indemnified party, contribute to the amount paid or payable by such indemnified party as a result of such loss, claim, damage or liability, or action in respect thereof, (i) in such proportion as shall be appropriate to reflect the relative benefits received by the Company on the one hand and the Underwriters on the other from the offering of the Depositary Shares or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company on the one hand and the Underwriters on the other with respect to the statements or omissions that resulted in such loss, claim, damage or liability, action or pending action in respect thereof, as well as any other relevant equitable considerations. The relative benefits received by the Company on the one hand and the Underwriters on the other with respect to such offering shall be deemed to be in the same proportion as the total net proceeds from the offering of the Depositary Shares purchased under this Agreement (before deducting expenses) received by the Company, on the one hand, and the total underwriting discounts and commissions received by the Underwriters with respect to the Depositary Shares purchased under this Agreement, on the other hand, bear to the total gross proceeds from the offering of the Depositary Shares under this Agreement, in each case as set forth in the table on the cover page of the Prospectus.  The relative fault shall be determined by reference to whether the untrue or alleged untrue statement of a material fact or omission or alleged omission to state a material fact relates to information supplied by the Company or the Underwriters, the intent of the parties and their relative knowledge, access to information and opportunity to correct or prevent such statement or omission.  The Company and the Underwriters agree that it would not be just and equitable if contributions pursuant to this Section were to be determined by pro rata allocation (even if the Underwriters were treated as one entity for such purpose) or by any other method of allocation that does not take into account the equitable considerations referred to herein.  The amount paid or payable by an indemnified party as a result of the loss, claim, damage or liability, action or pending action in respect thereof, referred to above in this Section shall be deemed to include, for purposes of this Section 8(d), any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim.  Notwithstanding the provisions of this Section 8(d), no Underwriter shall be required to contribute any amount in excess of the amount by which the total price at which the Depositary Shares purchased by it exceeds the amount of any damages which such Underwriter has otherwise paid or become liable to pay by reason of any untrue or alleged untrue statement or omission or alleged omission.  No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.  The Underwriters' obligations to contribute as provided in this

Section 8(d) are several in proportion to their respective underwriting obligations and not joint.

(e)    The Underwriters severally confirm and the Company acknowledges and agrees that the concession and reallowance figures in the Prospectus or the most recent Preliminary Prospectus for the Depositary Shares and the paragraphs appearing under the captions "Stabilization, Short Positions and Penalty Bids" and "Electronic Distribution" in the sections entitled "Plan of Distribution" in the Base Prospectus and "Underwriting" in the most recent Preliminary Prospectus are correct and constitute the only information concerning the Underwriters furnished in writing to the Company specifically for inclusion therein.

9.    Default by an Underwriter.  If, on either Delivery Date, any one or more Underwriters shall fail to purchase and pay for all of the Shares agreed to be purchased by such Underwriter or Underwriters hereunder and such failure to purchase shall constitute a default in the performance of its or their obligations under this Agreement, the remaining Underwriters shall be obligated severally to take up and pay for (in the respective proportions which the number of Depositary Shares in respect of Firm Shares set forth opposite their names in Schedule II hereto bear to the aggregate number of Depositary Shares in respect of Firm Shares set opposite the names of the remaining Underwriters) the Shares which the defaulting Underwriter or Underwriters agreed but failed to purchase on such Delivery Date; provided, however, that in the event that the aggregate number of Shares which the defaulting Underwriter or Underwriters agreed but failed to purchase on such Delivery Date shall exceed 9.09% of the aggregate number of the Shares, the remaining Underwriters shall have the right to purchase all, but shall not be under any obligation to purchase any, of the Shares, and if such non-defaulting Underwriters do not purchase all the Shares, this Agreement (or, with respect to the Second Delivery Date, the obligation of the Underwriters to purchase, and of the Company to sell, the Option Shares) will terminate without liability to any non-defaulting Underwriters or the Company.  In the event of a default by any Underwriter as set forth in this Section 9, the particular Delivery Date shall be postponed for such period, not exceeding seven days, as the Representative(s) shall determine in order that the required changes in the Registration Statement and the Prospectus or in any other documents or arrangements may be effected.  Nothing herein contained shall relieve any defaulting Underwriter of its liability, if any, to the Company and any non-defaulting Underwriter for damages occasioned by its default hereunder.

10.    Termination.  This Agreement shall be subject to termination in the absolute discretion of the Representative(s), by notice given to the Company at or prior to delivery of and payment for all the Shares and the Depositary Shares, if, prior to that time (i) trading in securities generally on the New York Stock Exchange or the American Stock Exchange or in the over-the-counter market, or trading in any securities of the Company on any exchange or in the over-the-counter market, shall have been suspended or the settlement of such trading generally shall have been materially disrupted or minimum prices shall have been established on any such exchange or such market by the Commission, by such exchange or by any other regulatory body or governmental authority having jurisdiction, (ii) a banking moratorium shall have been declared by Federal or state authorities, (iii) the United States shall have become engaged in hostilities, there shall have been an escalation in hostilities involving the United States or there shall have been a declaration of a national emergency or war by the United States or (iv) there shall have

occurred such a material adverse change in general economic, political or financial conditions, including without limitation as a result of terrorist activities after the date hereof, or the effect of international conditions on the financial markets in the United States shall be such as to make it, in the judgment of the Representative(s), impracticable or inadvisable to proceed with the public offering or delivery of the Depositary Shares being delivered on such Delivery Date on the terms and in the manner contemplated in the Prospectus.

11.     Reimbursement of Underwriters' Expenses.  If the Company shall fail to tender the Depositary Shares for delivery to the Underwriters by reason of any failure, refusal or inability on the part of the Company to perform any agreement on its part to be performed, or because any other condition of the Underwriters' obligations hereunder required to be fulfilled by the Company (including, without limitation, with respect to the transactions) is not fulfilled, the Company will reimburse the Underwriters for all out-of-pocket expenses (including fees and disbursements of counsel) incurred by the Underwriters in connection with this Agreement and the proposed purchase of the Depositary Shares, and upon demand the Company shall pay the full amount thereof to the Representative(s).  If this Agreement is terminated pursuant to Section 10 by reason of the default of one or more Underwriters, the Company shall not be obligated to reimburse any defaulting Underwriter on account of those expenses.

12.     Representations and Indemnities to Survive Delivery.  The respective agreements, representations, warranties, indemnities and other statements of the Company or its officers (as such officers) and of the Underwriters set forth in or made pursuant to this Agreement will remain in full force and effect regardless of any investigation made by or on behalf of any Underwriter or the Company or any of its officers or directors or any controlling person within the meaning of the Securities Act, and will survive delivery of the payment for the Shares.

13.     Notices.  All communications hereunder will be in writing, and, if sent to the Representative(s) will be mailed or delivered and confirmed to them, at the address specified in Schedule I hereto; or, if sent to the Company will be mailed, delivered, telegraphed or telexed and confirmed to it at 745 Seventh Avenue, New York, New York 10019, Attention: Treasurer.

14.     Research Analyst Independence.  The Company acknowledges that the Underwriters' research analysts and research departments are required to be independent from their respective investment banking divisions and are subject to certain regulations and internal policies, and that such Underwriters' research analysts may hold views and make statements or investment recommendations and/or publish research reports with respect to the Company and/or the offering that differ from the views of their respective investment banking divisions.  The Company hereby waives and releases, to the fullest extent permitted by law, any claims that the Company may have against the Underwriters with respect to any conflict of interest that may arise from the fact that the views expressed by their independent research analysts and research departments may be different from or inconsistent with the views or advice communicated to the Company by such Underwriters' investment banking divisions.  The Company acknowledges that each of the Underwriters is a full service securities firm and as such from time to time, subject to applicable securities laws, may effect transactions for its own account or the account of its customers and hold long or short positions in debt or equity securities of the companies that may be the subject of the transactions contemplated by this Agreement.

15.     No Fiduciary Duty.  The Company acknowledges and agrees that in connection with this offering and sale of the Shares and the Depositary Shares or any other services the Underwriters may be deemed to be providing hereunder, notwithstanding any preexisting relationship, advisory or otherwise, between the parties or any oral representations or assurances previously or subsequently made by the Underwriters:  (i) no fiduciary or agency relationship between the Company and any other person, on the one hand, and the Underwriters, on the other, exists; (ii) the Underwriters are not acting as advisors, expert or otherwise, to the Company, including, without limitation, with respect to the determination of the public offering price of the Shares and the Depositary Shares, and such relationship between the Company, on the one hand, and the Underwriters, on the other, is entirely and solely commercial, based on arms-length negotiations; (iii) any duties and obligations that the Underwriters may have to the Company shall be limited to those duties and obligations specifically stated herein; and (iv) the Underwriters and their respective affiliates may have interests that differ from those of the Company.  The Company hereby waives any claims that the Company may have against the Underwriters with respect to any breach of fiduciary duty in connection with this offering.

16.     Successors.  This Agreement will inure to the benefit of and be binding upon the parties hereto and their successors and, to the extent and only to the extent stated in Section 8 hereof, the officers and directors and controlling persons referred to in Section 8 hereof, and except as provided in Section 8 hereof, no person other than the parties hereto and their respective successors will have any right or obligation hereunder.

17.     Applicable Law.  This Agreement will be governed by and construed in accordance with the laws of the State of New York.

27

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us the enclosed duplicate hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company and the several Underwriters.

Very truly yours,

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Title: ANDREW M. W. YEUNG

The foregoing Agreement is hereby confirmed and accepted as of the date first above written.

LEHMAN BROTHERS INC.

By: _____

Title:

Acting on behalf of any other
Representative named in
Schedule I annexed hereto and
the several Underwriters named
in Schedule II annexed hereto.

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us the enclosed duplicate hereof, whereupon this letter and your acceptance shall represent a binding agreement among the Company and the several Underwriters.

Very truly yours,

LEHMAN BROTHERS HOLDINGS INC.

By:_____
    Title:

The foregoing Agreement is hereby confirmed and accepted as of the date first above written.

LEHMAN BROTHERS INC.

By: _____
   Title:

Acting on behalf of any other
Representative named in
Schedule I annexed hereto and
the several Underwriters named
in Schedule II annexed hereto.

SCHEDULE I

Date of Underwriting Agreement: February 5, 2008

Registration Statement No. 333-134553

| | |
|---|---|
| Representative and Address: | Lehman Brothers Inc.<br>745 Seventh Avenue<br>New York, New York 10019<br>Attention: Fixed Income Syndicate |
| | With a copy to: |
| | Lehman Brothers Inc.<br>745 Seventh Avenue<br>New York, New York 10019<br>Attention: General Counsel |

Description of Depositary Shares and Shares:

| | |
|---|---|
| Title of Preferred Stock: | 7.95% Non-Cumulative Perpetual Preferred Stock, Series J |
| Number of Firm Shares: | 66,000,000 |
| Maximum number of Option Shares: | 9,900,000 |
| Price per Share: | $2,421.25; provided that such amount will be $2,450.00 per Share in respect of Shares sold to institutional investors |
| Price to Public per Share: | $2,500.00 |
| Price to Public per Depositary Share: | $25.00 |
| Time of payment of dividends on Shares: | February 15, May 15, August 15, November 15 |
| Sinking fund provisions: | None |
| Redemption provisions: | From and after February 15, 2013, redeemable at Lehman's option in whole or in part at a redemption price equal to 100% of liquidation preference, plus any declared and unpaid dividends (subject to certain limitations described in the prospectus supplement). |
| Repayment provisions: | None |
| Listing: | NYSE |
| Depositary: | Computershare Trust Company N.A. |
| Deposit Agreement: | Deposit Agreement among the Company, Computershare Trust Company N.A. and |

holders from time to time of the Depositary Receipts to be dated February 12, 2008

Applicable Time: 1:00 p.m. (New York City time)

Underwriters' Counsel:      Simpson Thacher & Bartlett LLP

First Delivery Date, Time and Location:

|  |  |
|---|---|
| Date: | February 12, 2008 |
| Time: | 10:00 a.m. (New York City time) |
| Location: | Lehman Brothers Holdings Inc. |
|  | 745 Seventh Avenue |
|  | New York, New York 10019 |

SCHEDULE II

| UNDERWRITERS | NUMBER OF DEPOSITARY SHARES IN RESPECT OF FIRM SHARES PURCHASED | NUMBER OF DEPOSITARY SHARES IN RESPECT OF OPTION SHARES PURCHASED |
|---|---|---|
| Lehman Brothers Inc. | 8,118,528 | 1,218,000 |
| Citigroup Global Markets Inc. | 8,112,456 | 1,217,000 |
| Banc of America Securities LLC | 8,039,988 | 1,206,000 |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | 8,040,120 | 1,206,000 |
| Morgan Stanley & Co. Incorporated | 8,039,988 | 1,206,000 |
| UBS Securities LLC | 8,039,988 | 1,206,000 |
| Wachovia Capital Markets, LLC | 8,039,988 | 1,206,000 |
| RBC Dain Rauscher Inc. | 990,000 | 148,000 |
| SunTrust Robinson Humphrey, Inc. | 990,000 | 148,000 |
| Wells Fargo Securities, LLC | 990,000 | 148,000 |
| ABN AMRO Incorporated | 274,956 | 41,000 |
| BNY Capital Markets, Inc. | 274,956 | 41,000 |
| Charles Schwab & Co. Inc. | 274,956 | 41,000 |
| Credit Suisse Securities (USA) LLC | 274,956 | 41,000 |
| Fidelity Capital Markets Services, a division of National Financial Services LLC | 274,956 | 41,000 |
| H&R Block Financial Advisors, Inc. | 274,956 | 41,000 |
| HSBC Securities (USA) Inc. | 274,956 | 41,000 |
| Jackson Securities, LLC | 274,956 | 41,000 |
| Janney Montgomery Scott LLC | 274,956 | 41,000 |
| KeyBanc Capital Markets Inc. | 274,956 | 41,000 |
| Morgan Keegan & Company, Inc. | 274,956 | 41,000 |
| Oppenheimer & Co. Inc. | 274,956 | 41,000 |
| Piper Jaffray & Co. | 274,956 | 41,000 |
| Raymond James & Associates, Inc. | 274,956 | 41,000 |
| Robert W. Baird & Co. Incorporated | 274,956 | 41,000 |
| Stifel, Nicolaus & Company, Incorporated | 274,956 | 41,000 |
| Zions Direct, Inc. | 274,956 | 41,000 |
| B.C. Ziegler and Company | 137,478 | 21,000 |
| BB&T Capital Markets, a Division of Scott & Stringfellow | 137,478 | 21,000 |
| D. A. Davidson & Co. | 137,478 | 21,000 |
| Davenport & Company LLC | 137,478 | 21,000 |
| Ferris, Baker Watts, Incorporated | 137,478 | 21,000 |
| Fifth Third Securities, Inc. | 137,478 | 21,000 |
| Fixed Income Securities, Inc. | 137,478 | 21,000 |
| Keefe, Bruyette & Woods, Inc. | 137,478 | 21,000 |
| Maxim Group LLC | 137,478 | 21,000 |
| Mesirow Financial, Inc. | 137,478 | 21,000 |
| SMH Capital Inc. | 137,478 | 21,000 |
| Stone & Youngberg LLC | 137,478 | 21,000 |
| TD Ameritrade Holding Corporation | 137,478 | 21,000 |
| Vining-Sparks IBG, Limited Partnership | 137,478 | 21,000 |
| **TOTAL** | **66,000,000** | **9,900,000** |

SCHEDULE V

**Filed Pursuant to Rule 433**
**File No. 333-134553**

## Lehman Brothers Holdings Inc.

**66,000,000 Depositary Shares**
**Each Representing 1/100th of a Share of**
**7.95% Non-Cumulative Perpetual Preferred Stock, Series J**
**$25 Liquidation Preference per Depositary Share**

**Terms and Conditions:**

| | |
|---|---|
| Issuer: | Lehman Brothers Holdings Inc. ("Lehman"), a Delaware corporation |
| Securities: | 66,000,000 depositary shares, each representing 1/100th of a share of Lehman's 7.95% Non-Cumulative Perpetual Preferred Stock, Series J (the "Preferred Stock") |
| Underwriters' Option: | Option to purchase by 30 days from the date of pricing up to 9,900,000 depositary shares |
| Ratings:[1] | A3 / A- / A+ (Moody's / S&P / Fitch) |
| Trade Date: | February 5, 2008 |
| Settlement Date: | February 12, 2008 (T+5 days) |
| Maturity: | Perpetual |
| Liquidation Preference: | $2,500 per share of Preferred Stock (equivalent to $25 per depositary share) or $1,650 million aggregate liquidation preference (or $1,897.50 million aggregate liquidation preference if the Underwriters' Option is exercised in full) |
| Initial Public Offering Price: | $25 per depositary share |
| Proceeds to Lehman Brothers Holdings: | Approximately $1,606 million (or at least approximately $1,846 million if Underwriters' Option is exercised in full) before expenses |
| Dividend Rate: | 7.95% per annum on a non-cumulative basis |
| Dividend Payment Dates: | Quarterly in arrears, if declared by Lehman's board of directors, on each February 15, May 15, August 15 and November 15. Business days are New York. Following business day convention. |

---

[1] A credit rating reflects the creditworthiness of Lehman Brothers Holdings Inc. and is not a recommendation to buy, sell or hold securities, and it may be subject to revision or withdrawal at any time by the assigning rating organization. Each rating should be evaluated independently of any other rating.

| | |
|---|---|
| First Dividend Payment: | May 15, 2008 |
| Day Count: | 30/360 |
| Redemption at Lehman's Option: | Subject to prior approval of the Securities and Exchange Commission and the Replacement Capital Covenant, from and after February 15, 2013, the Preferred Stock is redeemable at Lehman's option in whole or in part at a redemption price equal to 100% of liquidation preference, plus any declared and unpaid dividends. |
| Replacement Capital Covenant: | Lehman has agreed not to redeem or purchase the depositary shares or shares of the Preferred Stock during the term of the Replacement Capital Covenant except with net proceeds from the sale of, or in exchange for, equity-like capital securities as described in the Prospectus Supplement dated February 5, 2008 (the "Prospectus Supplement"). The Replacement Capital Covenant will terminate no later than February 15, 2023. |
| | If the Replacement Capital Covenant terminates at any time when any depositary shares of Preferred Stock remains outstanding, we intend, to the extent that the Preferred Stock provides us with rating agency equity credit at the time of any redemption or purchase of the depositary shares of Preferred Stock, to redeem or purchase the depositary shares of Preferred Stock with net proceeds received by us from the exchange, sale or issuance of securities, during the 6 months prior to the date of notice of such action, only to the extent that such securities would provide at least as much equity credit to us as the Preferred Stock at that time. |
| Sinking Fund: | Not applicable. |
| Listing: | Application will be made to list the depositary shares on the New York Stock Exchange. |
| Voting Rights: | The holders of the Preferred Stock do not have voting rights, except (i) upon the failure of Lehman to declare and pay dividends on the Preferred Stock for six or more quarterly dividend periods, whether or not consecutive, in which case the holders of the Preferred Stock may, together with all other holders of any other equally ranked series of preferred stock that have similar voting rights, elect two additional directors to Lehman's board of directors; and (ii) as otherwise described in the Prospectus Supplement. Each share of Preferred Stock will have ten votes (equivalent to $1/10^{th}$ of a vote per depositary share) whenever it is entitled to voting rights. |
| Sole Structuring Coordinator and Sole Bookrunner: | Lehman Brothers Inc. |
| Joint Lead Manager: | Citigroup Global Markets Inc. |
| Senior Co-Managers: | Banc of America Securities LLC<br>Merrill Lynch, Pierce, Fenner & Smith Incorporated |

|                              | Morgan Stanley & Co. Incorporated |
|                              | UBS Securities LLC |
|                              | Wachovia Capital Markets, LLC |
| Junior Co-Managers:          | RBC Dain Rauscher Inc. |
|                              | SunTrust Robinson Humphrey, Inc. |
|                              | Wells Fargo Securities, LLC |
| Depositary Shares CUSIP/ISIN: | 52520W317 / US52520W3170 |

**The issuer has filed a registration statement (including a prospectus) with the U.S. Securities and Exchange Commission for this offering. Before you invest, you should read the prospectus for this offering in that registration statement, and other documents the issuer has filed with the SEC for more complete information about the issuer and this offering. You may get these documents for free by searching the SEC online database (EDGAR®) at** *www.sec.gov*. **Alternatively, you may obtain a copy of the prospectus from Lehman Brothers Inc. by calling 1-888-603-5847.**

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,

Case No. 08-01420 (JMP) SIPA

Debtor.

### [PROPOSED] ORDER GRANTING THE TRUSTEE'S ONE HUNDRED FOURTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS (NO LIABILITY CLAIMS)

Upon the One Hundred Fourth omnibus objection to claims, dated July 12, 2013 (the "One Hundred Fourth Omnibus Objection to General Creditor Claims"),[1] of James W. Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. (the "Debtor" or "LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), seeking entry of an order, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), as made applicable to this proceeding pursuant to sections 78fff(b) and 78fff-1(a) of SIPA, and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), disallowing and expunging the No Liability Claims on the grounds that LBI does not have any liability, in whole or in part, for the Claims, that the No Liability Claims for contribution or retribution must be disallowed as contingent pursuant to Section 502(e)(1)(B) of the Bankruptcy Code, and that the No Liability Claims must be subordinated pursuant to section 510(b) of the Bankruptcy Code, as more fully described in the One Hundred Fourth Omnibus Objection to General Creditor Claims; and due and proper notice of the One

---

1. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Hundred Fourth Omnibus Objection to General Creditor Claims having been provided, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the One Hundred Fourth Omnibus Objection to General

Creditor Claims is in the best interests of LBI, its estate, its customers and creditors, and all

parties in interest and that the legal and factual bases set forth in the One Hundred Fourth

Omnibus Objection to General Creditor Claims establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that the relief requested in the One Hundred Fourth Omnibus

Objection to General Creditor Claims is granted; and it is further

**ORDERED** that, pursuant to section 502(b) and 502(e)(1)(B) of the Bankruptcy

Code, the claims listed on Exhibit 1 (collectively, the "No Liability Claims") are disallowed and

expunged in their entirety with prejudice; and it is further

**ORDERED** that, to the extent that the No Liability Claims are not disallowed and

expunged in their entirety, pursuant to section 510(b) of the Bankruptcy Code, such No Liability

Claims are hereby subordinated to all other LBI claims and interests, and shall have the same

priority as claims for LBI common stock; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: New York, New York
August __, 2013

_____
HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

# IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (JMP) SIPA
## ONE HUNDRED FOURTH OMNIBUS OBJECTION: EXHIBIT 1 – NO LIABILITY CLAIMS

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 1 | ANZ SECURITIES, INC.<br>ANN VARRALLI MCCLELLAND<br>1177 AVENUE OF THE AMERICAS<br>6TH FLOOR<br>NEW YORK, NY 10036 | 5678 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 2 | BMO CAPITAL MARKETS CORP.<br>FORMERLY KNOWN AS HARRIS NESBITT CORP.<br>JAMES E. SPIOTTO<br>CHAPMAN AND CUTLER LLP<br>111 WEST MONROE STREET<br>CHICAGO, IL 60603-4080 | 5133 | 5/29/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 3 | BNY MELLON CAPITAL MARKETS, LLC<br>ATTN: JONATHAN R. GOLDBLATT<br>THE BANK OF NEW YORK MELLON<br>ONE WALL STREET, 11TH FLOOR<br>NEW YORK, NY 10286 | 5682 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

*Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 4 | CABRERA CAPITAL MARKETS, LLC ROBERT AGUILAR 10 SOUTH LASALLE STREET SUITE 1050 CHICAGO, IL 60603 | 5683 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 5 | DNB NOR MARKETS, INC. MARCUS WENDEHOG VICE PRESIDENT & ASSISTANT COUNSEL 200 PARK AVENUE NEW YORK, NY 10166 | 4360 | 4/23/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 6 | EDWARD D. JONES & CO., L.P. PHILIP R. SCHWAB 12555 MANCHESTER ROAD ST LOUIS, MO 63131-3729 | 5686 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

---

*Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).

2

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 7 | FORTIS SECURITIES LLC<br>F/K/A FORTIS INVESTMENT SERVICES LLC<br>ATTN: MARK C. ELLENBERG<br>CADWALADER, WICKERSHAM & TAFT LLC<br>1201 F. ST. NW SUITE 1100<br>WASHINGTON, DC  20004 | 4944 | 5/29/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 8 | NABCAPITAL SECURITIES, LLC<br>JAMES E. SPIOTTO<br>CHAPMAN AND CUTLER LLP<br>111 WEST MONROE STREET<br>CHICAGO, IL  60603-4080 | 5127 | 5/29/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 9 | NATIONAL AUSTRALIA BANK LIMITED<br>JAMES E. SPIOTTO<br>CHAPMAN AND CUTLER LLP<br>111 WEST MONROE STREET<br>CHICAGO, IL  60603-4080 | 5738 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

*Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 10 | NATIONAL FINANCIAL SERVICES LLC ATTN: MARTHA A. MAZZONE, ESQ. FIDELITY INVESTMENTS 82 DEVONSHIRE STREET F6C BOSTON, MA 02109-3614 | 5673 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 11 | SCOTT & STRINGFELLOW, LLC F/K/A SCOTT & STRINGFELLOW, INC. ALEX W. C. CECIL BB&T CAPITAL MARKETS 909 EAST MAIN STREET RICHMOND, VA 23219 | 5671 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 12 | SMH CAPITAL INC. JOHN T UNGER 600 TRAVIS, SUITE 5800 HOUSTON, TX 77002 | 7002006 | 5/26/2009 | $3,436,590.00 | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY. THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).

4

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 13 | SUNTRUST ROBINSON HUMPHREY, INC. ATTN: WILLIAM MAYFIELD, ESQ. 3333 PEACHTREE ROAD, 11TH FL ATLANTA, GA 30326 | 5841 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 14 | TD AMERITRADE HOLDING CORPORATION ELLEN L.S. KOPLOW 6940 COLUMBIA GATEWAY DRIVE SUITE 200 COLUMBIA, MD 21046 | 5669 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| 15 | THE WILLIAMS CAPITAL GROUP, L.P. DIANNE CALABRISOTTO 650 FIFTH AVENUE, 11TH FLOOR NEW YORK, NY 10019 | 5667 | 6/1/2009 | UNSPECIFIED* | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |

*Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 16 | UBS FINANCIAL SERVICES INC. DAVID L. GOLDBERG, ESQ. 1200 HARBOR BOULEVARD WEEHAWKEN, NJ  07086-6791 | 5275 | 5/29/2009 | $75,818,358.91 | NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE CLAIM DOES NOT ESTABLISH A PREDICATE FOR LBI LIABILITY, AND THE CLAIMANTS HAVE NOT SHOWN THEY HAVE PAID MORE THAN THEIR SHARE OF RESPECTIVE LIABILITY.  THE CLAIM IS FOR REIMBURSEMENT OR CONTRIBUTION AND IS CONTINGENT AS OF THIS TIME. |
| | Total | | | $79,254,948.91 | |

_____

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).

6