**<u>Exhibit I</u>**

WEIL:\95154813\3\58399.0011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | |
| UBS FINANCIAL SERVICES INC.,<br><br>Appellant,<br><br>- v. -<br><br>JAMES W. GIDDENS, as Trustee for the SIPA Liquidation of Lehman Brothers, Inc.<br><br>Appellee. | ORAL ARGUMENT REQUESTED<br><br>Case No. 1:14-cv-02305-SAS<br><br>Appeal arising from SIPA Liquidation Proceeding,<br>Case No. 08-1420 (JMP) |

**OPENING BRIEF OF APPELLANT**
<u>**UBS FINANCIAL SERVICES INC.**</u>

Joshua Dorchak
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
212.705.7000

Attorneys for Appellant
UBS Financial Services Inc.

A/76002890.1

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

JURISDICTIONAL STATEMENT ........................................................................................... 1

STATEMENT OF THE ISSUES................................................................................................ 1

STANDARD OF REVIEW ........................................................................................................ 1

STATEMENT OF THE CASE................................................................................................... 2

      A.  Background to the Claim ............................................................................................. 3

      B.  Proceedings Below ...................................................................................................... 5

ARGUMENT ............................................................................................................................... 6

      A.  The Decision Contradicts the Text of Section 510(b).................................................. 7

      B.  The Decision Contradicts the Purpose of Section 510(b) ......................................... 11

CONCLUSION......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Enron Corp.*,
    341 B.R. 141 (Bankr. S.D.N.Y. 2006) ..................................................................................7, 8

*Hirt v. Equitable Ret. Plan*,
    533 F.3d 102 (2d Cir. 2008) ..................................................................................................10

*In re Jackson*,
    593 F.3d 171 (2d. Cir. 2010) ...................................................................................................2

*In re Jacom Comp. Services*,
    280 B.R. 570 (Bankr. S.D.N.Y. 2002) .....................................................................................8

*KIT digital, Inc. v. Invigor Group Limited (In re KIT digital, Inc.)*,
    497 B.R. 170 (Bankr. S.D.N.Y. 2013) ...................................................................................12

*In re Lehman Bros. Inc.*,
    503 B.R. 778 (Bankr. S.D.N.Y. 2014) ............................................................................ *passim*

*In re Lernout & Hauspie Speech Prods., N.V.*,
    264 B.R. 336 (Bankr. D. Del. 2001) ..................................................................................9, 12

*Levin v. United States*,
    -- U.S. --, 133 S.Ct. 1224 (2013) ...........................................................................................10

*Rombro v. Defrayne (In re Med Diversified, Inc.)*,
    461 F.3d 251 (2d Cir. 2006) .......................................................................................... *passim*

*Russello v. United States*,
    464 U.S. 16 (1983) .................................................................................................................10

*In re VF Brands, Inc.*,
    275 B.R. 725, 727 (Bankr. D. Del. 2002) ..............................................................................11

*In re William James Del Biaggio III*,
    2013 WL 6073367 (N.D. Cal. Nov. 18, 2013) (appeal pending) ............................................9

**Federal Statutes**

11 U.S.C. § 510(b) ............................................................................................................. *passim*

15 U.S.C. § 77k(f) ......................................................................................................................2

28 U.S.C. § 158(a)(1) .................................................................................................................1

Appellant UBS Financial Services Inc. ("UBSFS") respectfully submits this opening brief in support of its appeal from the Opinion [Bankr. Dkt. No. 8127], *In re Lehman Bros. Inc.*, 503 B.R. 778 (Bankr. S.D.N.Y. 2014) (the "Decision"), and Order Granting the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims), Jan. 31, 2014 [Bankr. Dkt. No. 8177] entered by the Honorable James M. Peck of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which subordinated a claim filed by UBSFS against Lehman Brothers Inc. ("LBI") to all allowed general unsecured claims in LBI's liquidation proceeding pursuant to the Securities Investor Protection Act (the "SIPA Case").

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

## STATEMENT OF THE ISSUES

1. Whether the Bankruptcy Court erred in ordering Appellant's claim to be subordinated pursuant to 11 U.S.C. § 510(b), where such claim is for contribution on account of a damages claim arising from the purchase of securities that were not issued by the debtor, but rather by its parent corporation, which was not a party to the debtor's liquidation proceeding under the Securities Investor Protection Act ("SIPA") and, consequently, whose securities did not represent any claims or interests in that proceeding.

2. Whether the Bankruptcy Court erred in finding that Appellant's claim for contribution itself constituted the "claim[] . . . represented by such security" for purposes of 11 U.S.C. § 510(b).

3. Whether the Bankruptcy Court erred in holding that Appellant's claim was subordinated to all of the debtor's general unsecured creditors pursuant to 11 U.S.C. § 510(b) without reference to the securities on which Appellant's claim is based.

## STANDARD OF REVIEW

The Bankruptcy Court's legal conclusions are subject to a de novo review. *See, e.g., In re Jackson*, 593 F.3d 171, 176 (2d. Cir. 2010). The Bankruptcy Court found that, in relevant

A/76002890.1

part, "the facts are undisputed," 503 B.R. at 778, and based its decision solely on its interpretation of the relevant statute, 11 U.S.C. § 510(b), "without resorting to background sources," *id*. at 786.  Accordingly, the Decision is subject to de novo review.

## STATEMENT OF THE CASE

UBSFS duly filed a claim against LBI (the "Claim") based on UBSFS's statutory right to contribution from LBI in connection with claims brought against UBSFS for alleged fraud in the sale of registered securities that were issued by Lehman Brothers Holdings Inc. ("LBHI"), underwritten by LBI, and purchased and sold to clients by UBSFS.  Under Section 11(f) of the Securities Act of 1933, LBI, in its capacity as underwriter of LBHI securities, is liable to UBSFS for such contribution.  The language of that statute provides, in relevant part:

> … [A]ll or any one or more of the persons specified in subsection (a) of this section [providing for underwriter liability] shall be jointly and severally liable, <u>and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment</u> ….

15 U.S.C. § 77k(f) ("Section 11(f)") (emphasis added).  As the underwriter of LBHI securities, LBI, would have been potentially liable to the same claimants as those whose claims gave rise to claims against UBSFS, if LBI had been sued alongside UBSFS.[1]  But LBI, unlike UBSFS, was immune from suit, due to the automatic stay.

Notwithstanding its unique position, LBI has never paid contribution to UBSFS for any portion of the damages that UBSFS suffered as a result of LBI's underwriting of LBHI securities.  The Claim seeks to rectify that failure.  In the Decision, however, the Bankruptcy Court subordinated the Claim to all allowed unsecured claims against LBI, thereby effectively

---

[1] Indeed, LBI was 100%-owned by LBHI, the issuer of the securities that gave rise to the losses.  As the affiliated underwriter of LBHI's securities, LBI was uniquely positioned (far more so than UBSFS) to assess any alleged misrepresentations and/or omissions associated with the issuance of the LBHI securities.

destroying any possibility that UBSFS will ever recover any amount from LBI. The Decision is based on an illogical and insupportable interpretation of the relevant statute, and moreover is contrary to the purpose of the statute as definitively expressed by the Second Circuit. Accordingly, the Decision should be reversed.

### A. Background to the Claim

In 2007 and 2008, UBSFS purchased from LBI, in LBI's capacity as underwriter, certain notes, including certain Medium Term Notes, Series I, U.S. Structured Notes issued by LBHI (the "LBHI Notes"), expressly earmarked for sale to UBSFS clients. Declaration of Kenneth G. Crowley in Support of Response of UBS Financial Services Inc. to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims) [Bankr. Dkt. No. 7207] (the "Crowley Declaration") ¶ 4. The relationship between LBHI, LBI and UBSFS in these transactions was governed by, among other things, a certain Purchase Agreement dated March 9, 2007 and a certain U.S. Structured Notes Purchase Agreement Amendment 1, dated November 5, 2007, with subsequent amendments, including a certain sideletter dated March 9, 2007 by and between LBI and UBSFS (collectively, the "Purchase Agreement"). *Id.* ¶ 5, Ex. A. The Purchase Agreement provides that LBI shall be the "Primary Agent," and that UBSFS shall have the same rights and obligations as LBI as Primary Agent, under a certain Distribution Agreement dated May 30, 2006 (the "Distribution Agreement"). *Id*. ¶ 5, Ex. B. The Purchase Agreement further provides that UBSFS shall purchase the LBHI Notes from LBI pursuant to a separate "Terms Agreement" relating to each subject issuance of such securities. *Id*. ¶ 5, Ex. A.

There were approximately 84 issuances of LBHI Notes purchased, at least in part, by UBSFS, pursuant to these agreements. *Id*. ¶ 5, Ex. C. As expressly contemplated in the Purchase Agreement, UBSFS sold the LBHI Notes to its clients. UBSFS did not purchase or hold any of the LBHI Notes for its own account. *Id*. ¶ 6.

3

After the commencement of LBHI's chapter 11 case and LBI's SIPA Case, a number of UBSFS's clients (the "Claimants") filed class action lawsuits or commenced arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA") or other arbitral forums against UBSFS in connection with the LBHI Notes (collectively, the "Proceedings").  *Id*. ¶ 7.  In the Proceedings, the Claimants asserted (among other things) securities fraud and related claims against UBSFS, including claims under Section 11(a) of the Securities Act, and in support of those claims alleged that the offering materials concerning the LBHI Notes contained material misstatements and omissions.  *Id*.

The Proceedings include several putative class actions filed in the Fall of 2008 against UBSFS and others relating to the LBHI Notes, which were consolidated with certain other actions relating to Lehman-issued securities in January 2009 before Judge Lewis A. Kaplan of this Court under the caption *In re Lehman Brothers Equity/Debt Securities Litigation,* Case No. 08 Civ. 5523 (LAK) (S.D.N.Y.) (the "Class Action").  *Id*. ¶ 9.  The Third Amended Complaint in the Class Action [Dkt. No. 212], filed on April 23, 2010, alleged that UBSFS, as an underwriter and seller of the LBHI Notes, was liable under Sections 11 and 12(a)(2) of the Securities Act for allegedly false and misleading statements and omissions in the offering materials for the LBHI Notes relating to Lehman's financial condition and creditworthiness, among other claims.  *Id*.  The Proceedings also include numerous FINRA arbitrations filed from December 1, 2008 through the present.  *Id*. ¶ 10, Ex. D.

Since late 2008, UBSFS, with the assistance of outside counsel, has been engaged in investigating and defending the Claimants' allegations and claims in the Proceedings.  *Id.* ¶ 11.  The Proceedings have been numerous, complex, and in some cases protracted.  *Id.*

4

A/76002890.1

LBI is not a defendant in any of the Proceedings, as a result of the automatic stay in LBI's SIPA Case. *Id*. ¶ 8.

### B.   Proceedings Below

On May 29, 2009, UBSFS duly filed the Claim. *Id*. ¶ 11, Ex. E.  On July 12, 2013, LBI's SIPA Trustee (the "Trustee") filed his One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims) [Bankr. Dkt. No. 6768] (the "Objection").  In the objection, the Trustee alleged that:  (a) UBSFS failed to establish LBI's liability; (b) the Claim was contingent; and (c) the Claim should be subordinated pursuant to Bankruptcy Code Section 510(b).  On September 9, 2013, UBSFS filed a Response to the Objection, with a supporting Declaration and documentation of $256.5 million in actual losses, rebutting each of the Trustee's allegations on the facts and the law [Bankr. Dkt. Nos. 7206 & 7207].  On December 18, 2013, the Trustee filed a Reply to the Response [Bankr. Dkt. No. 7920].  On January 8, 2014, the Bankruptcy Court heard oral argument [Bankr. Dkt. No. 8252 (transcript)].[2]

On January 27, 2014, the Bankruptcy Court issued the Decision [Bankr. Dkt. 8127]. *See generally* 503 B.R. 778.  Although the Trustee's liability and contingency objections had been fully briefed, the Decision was based solely on the Trustee's objection under Section 510(b): i.e., whether the Claim (which indisputably related to LBHI securities) should or even could be subordinated to the level of a "claim or interest represented by such security," given that no "such security" is even represented in this SIPA proceeding.  *Id.* at 784-85.  The Bankruptcy Court acknowledged that the key phrase, "represented by such security," "is subject to interpretation" and "may have different meanings" depending on whether the security was issued

---

[2]   The Objection also sought to subordinate claims filed by several co-underwriters (the "Junior Underwriters") that were similar to the Claim.  At the hearing on the Objection, the Bankruptcy Court also heard the Trustee's objection to a claim filed by Claren Road Credit Master Fund Ltd. ("Claren Road") for damages arising from LBI's failure to honor a contract to purchase LBHI securities.  The Decision disposed of all of the foregoing claims.

5

by the debtor or its affiliate. *Id.* at 787. And yet the Bankruptcy Court went on to hold that the same phrase is unambiguous, and in this context means the Claim itself. *Id.* at 786-87. The Bankruptcy Court reasoned that because the Claim must be subordinated to itself (a general unsecured claim), the Claim must be subordinated to all general unsecured claims. *Id.* at 787.

On January 31, 2014, the Bankruptcy Court entered the Order [Bankr. Dkt. No. 8177]. On February 14, 2014, UBSFS timely filed a notice of appeal [Dkt. No. 1].[3]

## ARGUMENT

The Bankruptcy Court misread the text, and ignored the purpose, of Section 510(b). Properly interpreted, Section 510(b) simply does not authorize the subordination of the Claim. Because there are no claims or interests in LBI's SIPA Case "represented by" LBHI securities, there are no claims or interests to which this court <u>could</u> subordinate the Claim, pursuant to the plain terms of Section 510(b). Moreover, the Claim is fully consonant with the purpose of Section 510(b), which subordinates those claimants with the upside expectations of equity investors (not contractual counterparties or statutory claimants), so that such investors may not improve their recoveries from an investment gone awry by cloaking their claims in the garb of those higher in the debtor's capital structure. The Decision effected the opposite of the statute's purpose, by blessing an "attempt[] by a bankruptcy debtor to clothe a general creditor in the garb of a shareholder" -- an inequitable result that the Second Circuit has explicitly cautioned against in the context of Section 510(b). *See Rombro v. Defrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 258 (2d Cir. 2006). For all of these reasons, the Decision is erroneous and should be reversed.

---

[3] The Junior Underwriters' appeal of the Decision and Order, Case No. 14 Civ. 1987 (SAS), and Claren Road's appeal of the Decision and a separate order, Case No. 14 Civ. 1742 (SAS), are related cases and are being briefed concurrently before this Court. In the interest of efficiency, certain points made in the Opening Briefs filed by the Junior Underwriters ("JU Brief") [Dkt. No 11] and Claren Road ("CR Brief") [Dkt. No. 8] in their respective appeals are referenced, rather than being repeated, in this brief.

6

A.      **The Decision Contradicts the Text of Section 510(b).**

As the Trustee acknowledges, "[t]he policy behind Section 510(b) was 'to prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding.'" Objection ¶ 25 (quoting *In re Enron Corp.*, 341 B.R. 141, 158 (Bankr. S.D.N.Y. 2006)). To this end, Section 510(b) provides as follows:

> For the purpose of distribution under this title, a claim <u>arising from</u> rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages <u>arising from</u> the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of <u>such a claim</u>, shall be subordinated to all claims or interests that are senior to or equal the claim or interest <u>represented by such security</u>, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis added). The first half of the statute lists certain types of claim that are covered by the statute: namely, claims directly or indirectly "arising from" transactions in a security issued by the debtor or its affiliates (any such claim is referred to generically herein as an "Asserted Claim"). The second half of the statute describes the type of claim or interest to which the Asserted Claims shall be subordinated: namely, the claim or interest "represented by such security" (such claim or interest is referred to generically herein as the "Referenced Claim"). In short, Section 510(b) provides that an Asserted Claim shall be subordinated to claims equal in priority to the Referenced Claim.[4]

There was no dispute below that the Claim is an Asserted Claim because it indirectly arises from transactions in a security issued by LBI's affiliate. Rather, the dispute before the

---

[4]     If the underlying security is common stock, the Asserted Claim is subordinated to the same level of priority as the common stock, because there is no lower level.

7

Bankruptcy Court, and now before this Court, is over what Referenced Claim, <u>if any</u>, exists to which this Asserted Claim should be subordinated.

A Referenced Claim is a claim or interest "represented by" the security at issue. The natural and typical interpretation of a claim or interest "represented by" a given security is the claim (in the case of debt securities) or the interest (in the case of equity securities) that is embodied by that security in and of itself: in other words, the claim or interest held solely by virtue of the ownership of such security. *See, e.g., In re Med Diversified,* 461 F.3d 251, 254, 259 (2d Cir. 2006) (claim arising from transaction in debtor's common stock subordinated to level of equity interest in debtors' common stock); *In re Enron Corp.,* 341 B.R. 141, 149 (Bankr. S.D.N.Y. 2006) (same); *In re Jacom Comp. Services,* 280 B.R. 570, 571, 573 (Bankr. S.D.N.Y. 2002) (same); Robert J. Stark, Reexamining the Subordination of Investor Fraud Claims in Bankruptcy: A Critical Study of *In re Granite Partners, L.P.*, 72 Am. Bankr. L.J. 497 (1998) (Section 510(b) appears to treat securities fraud claims "as below or equivalent to the rights afforded by the underlying security").

The security at issue here, however, is the LBHI Notes, and not any LBI security. There was no dispute below that there is no claim "represented by" any security issued by LBHI in LBI's SIPA Case, as that term is typically understood. That is, a security issued by <u>LBHI</u>, in and of itself, gives rise to no claim whatsoever in <u>LBI's</u> SIPA Case -- indeed, the Trustee has disallowed numerous claims in the SIPA Case on precisely this basis. *See, e.g.,* Trustee's One Hundred Thirty-First Omnibus Objection to General Creditor Claims (Employee Equity Claims) ¶4 (Aug. 29, 2013) [Bankr. Dkt. No. 7158] (seeking to disallow claim based on LBHI stock because the latter "<u>represents</u> an equity interest in LBHI, not LBI, the debtor in this separate and distinct proceeding") (emphasis added); Order Granting Trustee's One Hundred Thirty-First

8

Omnibus Objection to General Creditor Claims (Employee Equity Claims) [Bankr. Dkt. No. 7464].

Subordination is a relative concept: a given interest must be subordinated to another interest; it cannot be subordinated to nothing.[5] Accordingly, because there simply is no Referenced Claim in the SIPA Case to which the Claim <u>could</u> be subordinated, the natural and typical reading of Section 510(b) compels the conclusion that the Claim cannot be subordinated.

Importantly, this conclusion does not equate to a conclusion that an Asserted Claim concerning a security issued by the debtor's affiliate will <u>never</u> have a Referenced Claim. The Bankruptcy Court expressly acknowledged that there are at least two such situations: "when the debtor has guaranteed payment or the estates are consolidated." 503 B.R. at 787 (parentheses omitted). Unquestionably, in these circumstances, there will be a Referenced Claim in the debtor's proceedings, and thus the Asserted Claim would be subordinated to the priority level of the underlying security in the debtor's case. *See id.*

In the Decision, the Bankruptcy Court accepted the typical interpretation of Referenced Claim in the two situations just described and in the common situation where the security underlying the claim was issued by the debtor itself. *See id.* at 784-85. And yet, the Bankruptcy Court applied a "different meaning[]" here, holding that the claim or interest "represented by" the LBHI Notes, to which the Claim must be subordinated, is the Claim itself. *Id.* at 787 ("The 'claims represented by such security' are the claims of the Underwriters for reimbursement and contribution (and not for recovery on account of the LBHI securities themselves).") *Id* That is,

---

[5] The Junior Underwriters point out the fallacy of an argument that claims may be subordinated to nonexistent claims under Section 510(b) and thereby effectively disallowed. JU Br. at 19-20 (contrasting *In re William James Del Biaggio III,* 2013 WL 6073367, *7 (N.D. Cal. Nov. 18, 2013) (appeal pending) with *In re Lernout & Hauspie Speech Prods., N.V.,* 264 B.R. 336, 343 (Bankr. D. Del. 2001)).

9

the Bankruptcy Court held that, where the underlying securities are issued by a debtor's affiliate, the Referenced Claim is the same as the Asserted Claim. This was error, for several reasons.

First, the Bankruptcy Court's interpretation of the phrase "claim or interest represented by such security" is contrary to the ordinary meaning of those words. *See, e.g., Levin v. United States,* -- U.S. --, 133 S.Ct. 1224, 1231 (2013) ("In determining the meaning of a statute, we look first to its language, giving the words their ordinary meaning.") (internal quotation marks omitted). As noted above, the natural interpretation of a claim or interest "represented by" a given security, reflected in the case law, is the claim or interest embodied by that security in and of itself. *See, e.g., In re Med Diversified,* 461 F.3d 251, 254, 259 (2d Cir. 2006).[6] According to the Bankruptcy Court, by contrast, UBSFS's contribution claim against underwriter LBI pursuant to Section 11(f) of the Securities Act is "represented by" a debt security (the LBHI Notes) which UBSFS does not own and whose owners could not bring such a claim as a matter of law. This is not an ordinary use of the phrase "represented by."

Second, the Bankruptcy Court's interpretation of the phrase "claim or interest represented by such security," by equating the Referenced Claim with the Asserted Claim, ignores the fact that Congress used different terms for those different concepts. *See Hirt v. Equitable Ret. Plan,* 533 F.3d 102, 108 (2d Cir. 2008) ("[W]e refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.") (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)). In Section 510(b), the Asserted Claim is called a claim "arising from" rescission, a claim "arising from" a purchase or sale, or a contribution claim on account of "such a claim": that is, the Asserted Claim seeks damages or other remedies "arising from" a transaction. But

---

[6] As the Junior Underwriters demonstrate, the dictionary meaning of "represented by" is consistent with the ordinary meaning described above. JU Brief at 10-11.

the Referenced Claim is described in different language, "represented by," because it is something different. *See id.* Conversely, if the Bankruptcy Court's interpretation is correct, the phrases "arising from" and "represented by" should be interchangeable; but it makes no sense to speak of a damages claim being "represented by" a transaction.[7]

Third, the Bankruptcy Court's interpretation of the phrase "claim or interest represented by such security" is illogical, in that it requires a claim to be subordinated to itself. Again, subordination by definition gives one interest priority over another. UBSFS is aware of no parallel in the Bankruptcy Code, despite its focus on relative priority and classification of claims, for a claim or interest being subordinated to itself (or, for that matter, being prioritized over itself). Congress could not have intended such an incongruous result in Section 510(b).[8]

For all of the foregoing reasons, the Bankruptcy Court's interpretation of the essential language of Section 510(b) was erroneous as a matter of law. The statute should be enforced according to the ordinary meaning of its terms. The Decision should be reversed.

### B. The Decision Contradicts the Purpose of Section 510(b).

For the reasons given above, the natural and typical reading of the phrase, "claim or interest represented by such security," to mean a debt claim or equity interest arising solely and directly from ownership of the security, is the only reasonable reading of that phrase. Certainly, this natural and typical reading cannot be considered <u>un</u>reasonable. In the event that this Court should also consider the Bankruptcy Court's reading of this key phrase to be reasonable, then Section 510(b) would be ambiguous in this respect. The Second Circuit has held that, when a

---

[7] As the Junior Underwriters point out, in the only arguable precedent for the Bankruptcy Court's decision, the court not only failed to acknowledge the difference between the language describing the Asserted Claim and the Referenced Claim in Section 510(b), it ignored the phrase "represented by such security" entirely. JU Br. at 22-23 (discussing *In re VF Brands, Inc.,* 275 B.R. 725, 727 (Bankr. D. Del. 2002)).

[8] As the Junior Underwriters demonstrate, if reference to the legislative history were called for, it would confirm that Congress intended for an Asserted Claim to be subordinated to the different claim or interest held by those who own the security at issue. JU Br. at 15-16.

11

phrase in section 510(b) "is reasonably susceptible to both [the claimant's] narrow construction and the trustee's broader reading, . . . the phrase is ambiguous." *Med Diversified*, 461 F.3d at 255 (concerning the phrase "arising from"); *see KIT digital, Inc. v. Invigor Group Limited (In re KIT digital, Inc.)*, 497 B.R. 170, 178 (Bankr. S.D.N.Y. 2013) (holding that this same phrase "may be ambiguous or unambiguous when juxtaposed against particular factual situations"); *see also Lernout & Hauspie*, 264 B.R. at 341 (holding second part of Section 510(b) to be ambiguous in context of Asserted Claim based on debtor's affiliate's securities).[9]

The Second Circuit has instructed that when a phrase in section 510(b) is ambiguous in context, the court must look to the statute's intent. *Med Diversified*, 461 F.3d at 255-56; *see KIT digital*, 497 B.R. at 185.  The Second Circuit has expressly determined the statute's intent to be as follows:  "Because there are <u>only two rationales</u> for mandatory subordination expressly or implicitly adopted by the Congress that enacted section 510(b), we conform our interpretation of the statute to require subordination here <u>only if</u> [the claimant] (1) took on the risk and return expectations of a shareholder, rather than a creditor, or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding to extend credit to the debtor." *Med Diversified*, 461 F.3d at 256 (emphasis added).  The Second Circuit noted that the precedent decisions, like Congress, consistently focus on whether a claimant bargained to become (a) an investor or shareholder, or (b) a creditor.  *Id.* at 257-58 (citing, e.g., *In re Enron Corp.*, 341 B.R. 141, 167-68 (Bankr. S.D.N.Y. 2006)).[10]

UBSFS undeniably stands outside the two exclusive categories of claimant that are subject to subordination under Section 510(b) as definitively interpreted by the Second Circuit.  *See id.* at 256-58.  UBSFS did not take on the risks of a shareholder of LBHI, much less LBI, or

---

[9]  Claren Road cites five Circuit Courts decisions on this point.  CR Br. at 7-8.

[10]  The Joint Underwriters discuss the legislative history in detail.  JU Br. at 20-22.

12

seek a recovery from LBHI's, much less LBI's, equity pool by any stretch of the imagination, since the LBHI Notes that UBSFS resold were debt instruments. *See id.* UBSFS did not even take on the risks of an investor in LBHI's debt, much less LBI's, since UBSFS purchased the LBHI Notes solely for immediate resale to its customers, as the Purchase Agreement contemplated, keeping none of the LBHI Notes for its own account. *See* Crowley Decl. ¶ 6. In short, the Claim passes the Second Circuit's test: there are no grounds to subordinate the Claim.

This outcome is fair not only because UBSFS was not an investor but also because the Claim is based on a statutory right arising from transactions in securities that merely happen to have been issued by LBHI. There is no question that if UBSFS was claiming its statutory recovery under Section 11(f) due to LBI's underwriting of securities issued by, e.g., General Motors, Section 510(b) would be absolutely irrelevant to the claim. And even if a hypothetical Section 11(f) contribution claim related to LBI's hypothetical underwriting of General Motors were somehow deemed an Asserted Claim, then the Referenced Claim -- i.e., the claim or interest "represented by" the General Motors securities -- would be as nonexistent in LBI's SIPA Case as any claim or interest "represented by" the LBHI Notes is today. In other words, the fact that LBI's affiliate issued the securities from which the Claim indirectly arises is a coincidence: it should not make the difference between recovery and none.

Indeed, by permitting the Trustee to use LBI's status as an affiliate of LBHI as a sword to subordinate the Claim, the Bankruptcy Court has made it easier for a bankrupt underwriter to avoid contribution under Section 11(f) where the issuer was <u>its affiliate or parent</u> than where the debtor lacked such a unique relationship with the issuer. There is nothing in Section 510(b) that remotely suggests such a perverse result.

13

In summary, the Second Circuit has dictated the inquiry that must be conducted if Section 510(b) is held to be ambiguous, and that inquiry reveals that the Claim is neither of the two exclusive types of claim that require subordination under Section 510(b). *See Med Diversified,* 461 F.3d at 256. Accordingly, if this Court should find that the plain language of Section 510(b) does not unambiguously prohibit the subordination of the Claim, then this Court should hold that the purpose of Section 510(b) does so. To hold otherwise would be to fail to heed the Second Circuit's "concern for guarding against attempts by a bankruptcy debtor to clothe a general creditor in the garb of a shareholder." *See id.* at 258.

## CONCLUSION

For the foregoing reasons, UBSFS respectfully requests that this Court reverse the Decision and Order of the Bankruptcy Court and remand the case for further proceedings.

Dated:  April 25, 2014
    New York, New York

                                            **BINGHAM MCCUTCHEN LLP**

                                            */s/ Joshua Dorchak*
                                            Joshua Dorchak
                                            399 Park Avenue
                                            New York, New York  10022
                                            212.705.7000
                                            joshua.dorchak@bingham.com

                                            Attorneys for Appellant
                                            UBS Financial Services Inc.