**Exhibit J**

WEIL:\95154813\3\58399.0011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>    LEHMAN BROTHERS INC.,<br><br>                                    Debtor. | **ORAL ARGUMENT REQUESTED**<br><br>Case No. 14-CV-2305 (SAS)<br><br>Appeal arising from SIPA Liquidation Proceeding, Case No. 08-01420 (SCC) |
| UBS FINANCIAL SERVICES INC.<br><br>                                  Appellant,<br><br>           - against -<br><br>JAMES W. GIDDENS, as Trustee for the SIPA Liquidation of Lehman Brothers Inc.,<br><br>                                  Appellee. | |

## BRIEF FOR THE APPELLEE TRUSTEE

HUGHES HUBBARD & REED LLP
   James B. Kobak, Jr.
   Michael E. Salzman
   Robert B. Funkhouser
   Jason E. Zakai
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for Appellee James W. Giddens,*
*Trustee for the SIPA Liquidation of*
*Lehman Brothers Inc.*

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| COUNTER-STATEMENT OF THE ISSUES PRESENTED | 2 |
| STANDARD OF REVIEW | 2 |
| COUNTER-STATEMENT OF THE CASE | 2 |
| ARGUMENT: SECTION 510(b) OF THE BANKRUPTCY CODE REQUIRES SUBORDINATION OF THE UBSFS CLAIM | 5 |
| A. SECTION 510(b) UNAMBIGUOUSLY APPLIES TO UBSFS'S CONTRIBUTION CLAIMS AGAINST LBI ARISING FROM THE PURCHASE OR SALE OF LBHI SECURITIES. | 5 |
| B. THE PURPOSE OF SECTION 510(b) FULLY SUPPORTS SUBORDINATION OF THE UBSFS CLAIM. | 7 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Jacom Computer Servs., Inc.*, 280 B.R. 570 (Bankr. S.D.N.Y. 2002) ................................ 8, 9

*In re Lehman Bros. Inc.*, 503 B.R. 778 (Bankr. S.D.N.Y. 2014) .............................................. 2, 4, 5

*Lernout & Hauspie Speech Prods., N.V. v. Baker (In re Lernout & Hauspie Speech Prods., N.V.)*, 264 B.R. 336 (Bankr. D. Del. 2001) .................................................................. 6

*Liquidating Trust Committee of the Del Biaggio Liquidating Trust v. Freeman (In re Del Biaggio)*, No. 08-30991 (TEC), 2012 WL 5467754 (Bankr. N.D. Cal. Nov. 8, 2012) ............. 6

*Liquidating Trust Committee of the Del Biaggio Liquidating Trust v. Freeman (In re Del Biaggio)*, No. 12-CV-6447 (YGR), 2013 WL 6073367 (N.D. Cal. Nov. 18, 2013) ................. 6

*In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816 (Bankr. D. Del. 1999) ............................................ 9

*Moskal v. United States*, 498 U.S. 103 (1990) ................................................................................ 7

*Official Comm. of Creditors Holding Unsecured Claims v. PaineWebber Inc. (In re De Laurentiis Entm't Grp., Inc.)*, 124 B.R. 305 (C.D. Cal. 1991) ................................................ 9

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251 (2d Cir. 2006) .......................... 7

*In re VF Brands, Inc.*, 275 B.R. 725 (Bankr. D. Del. 2002) ........................................................... 6

*In re Walnut Equip. Leasing Co.*, No. 97-19699 DWS, 1999 WL 1271762 (Bankr. E.D. Pa. Dec. 28, 1999) ..................................................................................................................... 9

**STATUTES AND RULES**

11 U.S.C. § 510(b) ................................................................................................................ *passim*

Appellee James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI" or the "Debtor") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), submits this brief in opposition to the appeal filed by UBS Financial Services Inc. ("UBSFS").

## PRELIMINARY STATEMENT

Section 510(b) of the Bankruptcy Code mandates the subordination of claims arising from the purchase or sale of the securities of the debtor or its affiliates. UBSFS concedes that its contribution claim against LBI arises from the purchase or sale of Lehman Brothers Holdings Inc. ("LBHI") securities and that LBHI is an affiliate of LBI as that term is used in section 510(b). Like the other appellants from the Bankruptcy Court's subordination decision,[1] UBSFS argues that because there are no claims or interests "represented by" LBHI securities in LBI's proceeding, there are no claims or interests to which its claim can be subordinated.

The plain text of the statute, each of the decisions by other courts that have addressed similar arguments, and the legislative policy underlying section 510(b) demonstrate that UBSFS's argument should be rejected and the Bankruptcy Court's decision should be affirmed. Section 510(b) does not require affiliate securities to be part of the debtor's capital structure in order to subordinate claims arising from the purchase or sale of those securities to general creditor claims. Accepting UBSFS's strained interpretation would effectively read the phrase "securities…of an affiliate of the debtor" out of the statute. It would also contradict the well-

---

1. The Bankruptcy Court's decision also addressed a separate group of contribution claims by underwriters of LBHI securities (the "Underwriters"), and a separate claim by Claren Road Credit Master Fund Ltd. ("Claren Road"), all of which involved common legal issues together with the UBSFS Claim. Separate orders were entered for Claren Road and the Underwriters/UBSFS and separate appeals filed. *See ANZ Securities, Inc., v. Giddens*, 14-CV-01987 (SAS); *Claren Road v. Giddens*, 14-CV-01742 (SAS). The briefing of the related appeals has been set on the same briefing schedule. *Claren Road v. Giddens*, 14-CV-01742 (SAS) (Endorsed Letter, Apr. 4, 2014, ECF No. 11).

established policy underlying section 510(b) that subordinates securities fraud claims—whether asserted by the debtor's securities holders or those, like UBSFS, whose claims for reimbursement arise from their involvement in the sales and distribution of such securities—to general creditor claims.

The Bankruptcy Court correctly held that the plain language of section 510(b) mandates subordination of UBSFS's claim to all general unsecured creditor claims. This Court should affirm the Bankruptcy Court's determination.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED

1. Whether UBSFS's Claim against LBI for contribution arising from UBSFS's role in marketing and selling LBHI securities is subject to mandatory subordination under section 510(b) of the Bankruptcy Code?

2. Whether the Bankruptcy Court correctly ordered that UBSFS's Claim shall be subordinated to the claims of general unsecured creditors of LBI?

## STANDARD OF REVIEW

The Trustee agrees that this appeal presents questions of law that are subject to de novo review.

## COUNTER-STATEMENT OF THE CASE

This is an appeal from the Bankruptcy Court's Memorandum Opinion Authorizing and Directing the Subordination of Claims of Claren Road Credit Master Fund Ltd. and Certain Underwriters ("Memorandum Opinion") (Bankr. Dkt. ECF No. 8127), *In re Lehman Bros. Inc.*, 503 B.R. 778 (Bankr. S.D.N.Y. 2014), as implemented by its subsequent Order Granting the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (Bankr. Dkt. ECF No. 8177) entered on January 31, 2014.

**UBSFS's General Unsecured Creditor Claim For Contribution**

Prior to commencement of this SIPA proceeding, LBI was a registered securities broker-dealer, wholly owned by Lehman Brothers Holdings Inc. ("LBHI"). UBSFS is a registered securities broker-dealer and investment advisor, indirectly owned by UBS AG.

During 2007 and 2008, UBSFS purchased from LBI certain structured securities issued by LBHI, pursuant to a Purchase Agreement among LBHI, LBI, and UBSFS. *See* Declaration of Kenneth G. Crowley in Support of Response of UBS Financial Services Inc. to the Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims) ("Crowley Decl.") (Bankr. Dkt. ECF No. 7207), ¶¶ 4-6 & Ex. A (U.S. Structured Notes Purchase Agreement) (the "Purchase Agreement"). Structured securities are "a kind of security that consists of a fixed income security and a type of derivative, such as a basket of securities, options, commodities, or foreign currencies." Crowley Decl., Ex. B-2 (Notice of Pendency of Class Action and Proposed Settlement). Certain of these securities also had a "principal protection" feature. *Id.* The Purchase Agreement provided that UBSFS purchased the securities "as principal for resale to [i]nvestors." Purchase Agreement § 1(iii). The Purchase Agreement included express provisions that UBSFS was a "sophisticated institutional client" and was solely responsible for evaluating the materials related to the securities and for determining whether any securities were suitable investments for the investors to whom UBSFS sold the securities. *Id.* § 3.

Beginning in early 2008, certain of the investors who had purchased the LBHI structured securities from UBSFS asserted securities fraud claims in FINRA arbitrations against UBSFS. After LBI and LBHI went into bankruptcy, federal class actions for securities fraud were commenced against UBSFS. Investors alleged, inter alia, that UBSFS was liable under sections 11 and 12(a)(2) of the Securities Act of 1933 for damages arising from materially false and misleading statements and omissions in securities offering materials, as well as the "principal

3

protection" feature of some of the securities. *See* Crowley Decl., Ex. F (The Structured Products Class Representatives' Notice of Motion and Motion for Entry of Preliminary Order Pursuant to Rule 23), Ex. 1 thereto (Stipulation of Settlement and Release), at 4 (describing allegations of putative class action against UBSFS).

UBSFS timely filed a general creditor claim against LBI, seeking, in relevant part, reimbursement or contribution from LBI for its litigation costs defending and resolving these investors' claims (the "UBSFS Claim"). Crowley Decl., Ex. E (Proof of Claim No. 5275). As clarified in its briefing, the UBSFS Claim relies entirely on statutory contribution under 15 U.S.C. § 77k(f). Opening Brief of Appellant UBS Financial Services Inc., *UBS Fin. Servs. Inc. v. Giddens*, No. 14-CV-02305 (SAS) (ECF No. 11) ("UBSFS Brief") at 2. UBSFS now claims that it has incurred, in aggregate, more than $256 million in defense costs and settlement payments or awards, and asserts that LBI should reimburse some unspecified portion of this amount. *Id.* at 5.

**The Trustee's Objection and the Bankruptcy Court's Decision**

The Trustee filed an objection to the UBSFS Claim and others seeking, among other things, to subordinate the claims to all unsecured general creditor claims pursuant to section 510(b) of the Bankruptcy Code. *See* The Trustee's One Hundred Fourth Omnibus Objection to General Creditor Claims (No Liability Claims) (Bankr. Dkt. ECF No. 6768). After briefing and a hearing, the Bankruptcy Court issued the Memorandum Opinion.

The Bankruptcy Court (Peck, J.) held that the plain language of the statute required the subordination of the UBSFS Claim.[2] *In re Lehman Brothers Inc.*, 503 B.R. 778, 786 (Bankr.

---

2. The Bankruptcy Court addressed the UBSFS Claim along with the claims of the Underwriters. *In re Lehman Brothers Inc.*, 503 B.R. at 782 n.10.

S.D.N.Y. 2014). The Bankruptcy Court found that the UBSFS Claim was a claim "for reimbursement and contribution on account of claims arising from the offering of LBHI securities," i.e., securities of an affiliate of the debtor. *Id.* at 786. The Bankruptcy Court determined that section 510(b) was unambiguous when applied to the UBSFS Claim and, applying the ordinary meaning of the statutory language, further determined that section 510(b) directed subordination of the UBSFS Claim to other general unsecured claims against LBI. *Id.* at 787. The Bankruptcy Court rejected UBSFS's and Underwriters' assertions that the statute could not apply when the affiliate securities were not part of the capital structure of the debtor as "a hyper-technical and improper reading of the language of section 510(b)." *Id.*

On April 2, 2014, UBSFS filed a Notice of Appeal. *In re Lehman Bros., Inc.*, 08-1420 (SCC) (Bankr. Dkt. ECF No. 8239).

## ARGUMENT

### SECTION 510(B) OF THE BANKRUPTCY CODE REQUIRES SUBORDINATION OF THE UBSFS CLAIM.

A. **SECTION 510(b) UNAMBIGUOUSLY APPLIES TO UBSFS'S CONTRIBUTION CLAIMS AGAINST LBI ARISING FROM THE PURCHASE OR SALE OF LBHI SECURITIES.**

Section 510(b) provides: "a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or *for reimbursement or contribution* allowed under section 502 on account of such a claim, *shall be subordinated* . . . ." 11 U.S.C. § 510(b) (emphasis added). UBSFS concedes that its Claim is covered by this provision of the statute. UBSFS Brief at 7 ("There was no dispute below that the Claim is an Asserted Claim because it indirectly arises from transactions in a security issued by LBI's affiliate.").

5

Like the Underwriters, UBSFS nevertheless argues that section 510(b) cannot be applied because the statute goes on to state that the claims "shall be subordinated to all claims that are senior to or equal the claim or interests represented by such security." *Id.* at 7 (citing 11 U.S.C. § 510(b)). UBSFS contends that because there are no claims "represented by" any LBHI security in LBI's SIPA case, its contribution claims against LBI arising from LBHI securities cannot be subordinated. UBSFS Brief at 9. *See also id.* ("[A] given interest must be subordinated to another interest; it cannot be subordinated to nothing.").

UBSFS's argument overlooks that section 510(b) mandatory subordination applies to claims that "are *senior to or equal* the claim or interest represented by such security." 11 U.S.C. § 510(b) (emphasis added). The Bankruptcy Court did not subordinate the UBSFS Claim to nothing. Instead, the Bankruptcy Court properly identified general unsecured creditor claims as necessarily being "senior to" or "equal" the contribution claims by UBSFS and the Underwriters and directed subordination accordingly. Each of the other cases to address UBSFS's argument similarly has rejected it and directed subordination. *See Liquidating Trust Committee of the Del Biaggio Liquidating Trust v. Freeman (In re Del Biaggio)*, No. 08-30991 (TEC), 2012 WL 5467754 (Bankr. N.D. Cal. Nov. 8, 2012) *aff'd*, No. 12-CV-6447 (YGR), 2013 WL 6073367 (N.D. Cal. Nov. 18, 2013), *appeal docketed*, No. 13-17500 (9th Cir. Dec. 9, 2013); *In re VF Brands, Inc.*, 275 B.R. 725 (Bankr. D. Del. 2002); *Lernout & Hauspie Speech Prods., N.V. v. Baker (In re Lernout & Hauspie Speech Prods., N.V.)*, 264 B.R. 336 (Bankr. D. Del. 2001).[3]

---

3. UBSFS relies on the arguments of Underwriters regarding these decisions (UBSFS Brief at 9 n.5), and we accordingly respectfully refer the Court to the discussion at pages 11-12 of the Trustee's Appellee Brief in response to Claren Road's appeal. *Claren Road v. Giddens*, 14-CV-01742 (SAS).

Recognizing that its interpretation of section 510(b) violates the statutory construction principle to avoid rendering statutory language meaningless,[4] UBSFS points to the two potential instances of affiliate securities in the capital structure of the debtor identified by the Bankruptcy Court—when the debtor has guaranteed payment or the estates are consolidated. UBSFS Brief at 9. But UBSFS provides neither any potential reason nor any legislative history to support why Congress would so limit the reach of section 510(b). Indeed, UBSFS does not address legislative history at all, presumably because UBSFS recognizes that the legislative history of the 1984 amendment, which specifically extended mandatory subordination to contribution claims, strongly supports subordination.[5]

### B. THE PURPOSE OF SECTION 510(b) FULLY SUPPORTS SUBORDINATION OF THE UBSFS CLAIM.

UBSFS argues that other courts have found section 510(b) ambiguous and that, where such ambiguity exists, the statute must be interpreted in accordance with the two rationales for section 510(b) identified by the Second Circuit in *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251 (2d Cir. 2006). *See* UBSFS Brief at 11-12. But *Med Diversified* was addressing the "arising under" portion of section 510(b)—which UBSFS concedes unambiguously applies to its claim. With no ambiguity as to the application of the statute, there is no occasion for resort to legislative purpose.

In any event, the *Med Diversified* court discussed the "investor versus general creditor" and "equity cushion" rationales for section 510(b) because they were implicated in the case

---

4. *E.g., Moskal v. United States*, 498 U.S. 103, 109-10 (1990).

5. To the extent that UBSFS refers generally to the arguments of Underwriters regarding legislative history (UBSFS Brief at 11 n.8), we respectfully refer the Court to the discussion at pages 11-13 of the Trustee's Appellee Brief in response to the Underwriters' appeal. *ANZ Securities, Inc., v. Giddens*, 14-CV-01987 (SAS).

7

before it. Congress amended section 510(b) to include reimbursement and contribution claims by underwriters and others involved in the sale and distribution of securities of the debtor and its affiliates, not just claims by purchasers. The relevant fairness concerns are between UBSFS, as an underwriter of affiliate securities seeking contribution, versus the general creditors of LBI, and these fairness concerns apply regardless of whether there are also claims against LBI by holders of affiliate securities. *See, e.g., In re Jacom Computer Servs., Inc.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002) ("it is inconsistent with the policies articulated in the legislative history of section 510(b) to force unsecured creditors to subsidize the underwriters' litigation costs") (citations omitted).

UBSFS notes that the LBHI Notes that it resold were debt instruments and argues that it "did not take on the risks of a shareholder of LBHI, much less LBI." UBSFS Brief at 12-13. But the LBHI Notes unquestionably were securities of an affiliate of the debtor within the meaning of section 510(b). *See* Brief for the Appellee Trustee, *Claren Road v. Giddens*, 14-CV-01742 (SAS) at 8-9 (discussing authority that debt instruments are "securities" within section 510(b)). Indeed, UBSFS concedes that its claims against LBI fall within the first half of the statute. UBSFS Brief at 7.

Moreover, section 510(b) is not limited to shareholders. As subsequent court decisions have explained, the 1984 amendment that expressly provided for the subordination of contribution claims was intended by Congress to add underwriters and others involved in the sales and distribution of securities of the debtor or its affiliate to the claims subordinated to general creditors:

> Thus, it is readily apparent that the rationale for § 510(b) is not limited to preventing shareholder claimants from improving their position vis-a-vis general creditors; Congress also made the decision to subordinate based on risk allocation. Consequently, when Congress amended § 510(b) to add

> reimbursement and contribution claims ... it simply added to the subordination treatment new classes of persons and entities involved with the securities transactions giving rise to the rescission and damage claims. The 1984 amendment to § 510(b) is a logical extension of one of the rationales for the original section—because Congress intended the holders of securities law claims to be subordinated, why not also subordinate claims of other parties (e.g., officers and directors and underwriters) who play a role in the purchase and sale transactions which give rise to the securities law claims?

*In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 825-26 (Bankr. D. Del. 1999). Congress recognized that sophisticated securities brokers such as UBSFS are "in a better position than the general unsecured creditors to evaluate the risks associated with the issuance of stock and take appropriate steps to protect themselves." *Official Comm. of Creditors Holding Unsecured Claims v. PaineWebber Inc. (In re De Laurentiis Entm't Grp., Inc.)*, 124 B.R. 305, 310 (C.D. Cal. 1991); *see also In re Walnut Equip. Leasing Co.*, No. 97-19699 DWS, 1999 WL 1271762, at *9-11 (Bankr. E.D. Pa. Dec. 28, 1999) (subordinating an underwriter's claim based, in part, on the risk allocation rationale described in *De Laurentiis*); *In re Mid-Am. Waste*, 228 B.R. at 825-26.

Other courts have agreed that the subordination of contribution claims such as UBSFS's to general creditor claims accords with congressional intent. The *Jacom* court found that "underwriters are in a better position to allocate risks associated with the issuance of securities and that it is inconsistent with the policies articulated in the legislative history of section 510(b) to force unsecured creditors to subsidize the underwriters' litigation costs." 280 B.R. at 572 (citing *In re Walnut Equip.*, 1999 WL 1271762, at *11 (Bankr. E.D. Pa. Dec. 28, 1999) & *In re De Laurentiis*, 124 B.R. at 310); *see also In re Walnut Equip.*, 1999 WL 1271762, at *9, *11 ("[I]n 1984 Congress made a legislative judgment that claims emanating from tainted securities law transactions should not have the same priority as the claims of general creditors of the estate.") (citations omitted). These rationales for subordinating underwriter contribution claims

to general creditor claims apply equally to contribution claims arising from marketing and selling the securities of affiliates.

## CONCLUSION

For the reasons set forth herein and in the Trustee's Appellee briefs in the related appeals by Claren Road and the Underwriters, the Trustee respectfully requests that the Court affirm the Bankruptcy Court's order granting the Trustee's One Hundred Fourth Omnibus Objection and subordinating the UBSFS Claim to all general unsecured creditor claims against LBI pursuant to section 510(b) of the Bankruptcy Code.

Dated:   May 23, 2014
         New York, New York

> Respectfully submitted,
>
> HUGHES HUBBARD & REED LLP
>
> By: /s/ Robert B. Funkhouser
>     James B. Kobak, Jr.
>     Michael E. Salzman
>     Robert B. Funkhouser
>     Jason E. Zakai
> One Battery Park Plaza
> New York, New York 10004
> Telephone: (212) 837-6000
> Facsimile: (212) 422-4726
> Email: kobak@hugheshubbard.com
>
> Attorneys for James W. Giddens,
> Trustee for the SIPA Liquidation of
> Lehman Brothers Inc.