**Exhibit K**

WEIL:\95154813\3\58399.0011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

LEHMAN BROTHERS INC.,

    Debtor.

---

| | |
|---|---|
| UBS FINANCIAL SERVICES INC., | ORAL ARGUMENT REQUESTED |
|     Appellant, | Case No. 1:14-cv-02305-SAS |
| - v. - | Appeal arising from SIPA Liquidation Proceeding, |
| JAMES W. GIDDENS, as Trustee for the SIPA Liquidation of Lehman Brothers, Inc. | Case No. 08-1420 (JMP) |
|     Appellee. | |

---

**REPLY BRIEF OF APPELLANT**
<u>**UBS FINANCIAL SERVICES INC.**</u>

Joshua Dorchak
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
212.705.7000

Attorneys for Appellant
UBS Financial Services Inc.

A/76209804.1

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

      A. The Decision Contradicts the Text of Section 510(b) ................................................... 3

      B. The Decision Contradicts the Purpose of Section 510(b) ............................................. 6

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Enron Corp.*,
   341 B.R. 141 (Bankr. S.D.N.Y. 2006) ................................................................................1

*In re Lehman Bros. Inc.*,
   503 B.R. 778 (Bankr. S.D.N.Y. 2014) ........................................................................ *passim*

*Lamie v. U.S. Trustee*,
   540 U.S. 526, 534 (2004) ....................................................................................................5

*Rombro v. Defrayne (In re Med Diversified, Inc.)*,
   461 F.3d 251 (2d Cir. 2006) ......................................................................................... *passim*

*United States v. Ron Pair Enters., Inc.*,
   489 U.S. 235, 242 (1989) ....................................................................................................8

*In re VF Brands, Inc.*,
   275 B.R. 725, 727 (Bankr. D. Del. 2002) ...........................................................................5

**Federal Statutes**

11 U.S.C. § 510(b) ................................................................................................... *passim*

15 U.S.C. § 77k(f) ..............................................................................................................8

Appellant UBSFS respectfully submits this brief in response to the Brief for the Appellee Trustee (the "Trustee Brief") and in further support of its appeal from the Decision and Order of the Bankruptcy Court that subordinated the Claim against LBI in the SIPA Case.[1]

## PRELIMINARY STATEMENT

In the objection to the Claim that gave rise to the Decision and thus to this appeal, the Trustee stated: "The policy behind Section 510(b) was 'to prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding.'" Objection ¶ 25 (quoting *In re Enron Corp.*, 341 B.R. 141, 158 (Bankr. S.D.N.Y. 2006)). This statement is correct, and it is entirely consistent with the Second Circuit's definitive instruction on the Congressional intent behind Section 510(b). *See Rombro v. Defrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 255-56 (2d Cir. 2006). Section 510(b) fulfills its purpose by mandating the subordination of certain types of claims to certain other types of claims, as follows:

> For the purpose of distribution under this title, a claim <u>arising from</u> rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages <u>arising from</u> the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of <u>such a claim</u>, shall be subordinated to all claims or interests that are senior to or equal the claim or interest <u>represented by such security</u>, except that if such security is common stock, such claim has the same priority as common stock . . . .

11 U.S.C. § 510(b) (emphasis added).

The Objection and the Decision do not enforce the plain language of Section 510(b), because there are no "claims … represented by" the LBHI Notes in LBI's proceeding to which

---

[1] Capitalized terms not defined herein are used as they were defined in UBSFS's Opening Brief. As in the Opening Brief, in the interest of efficiency, UBSFS occasionally includes crossreferences herein to the appellants' briefs in the related appeals of the Junior Underwriters (Case No. 14 Civ. 1987 (SAS)) and Claren Road (Case No. 14 Civ. 1742 (SAS)).

A/76209804.1

the Claim could be subordinated.  The Bankruptcy Court's theory to the contrary -- that the Claim must be subordinated to itself -- distorts the statute's scope by sacrificing the plain and typical meaning of the key phrase in the statute's second half.  The Decision was erroneous as a matter of statutory interpretation.  Indeed, the Trustee himself seems to have rejected the Bankruptcy Court's theory in favor of the even more misguided theory that the Claim must be subordinated to nonexistent claims and thus effectively disallowed.  The Objection and the Decision do not fulfill the purpose of Section 510(b), because UBSFS was not a shareholder, and did not suffer an investment loss; and the Claim is not a fraud claim, but rather a claim for statutory contribution among co-underwriters, which does not depend on the type or the issuer of the LBHI Notes from which it happens to arise.  The Decision was also erroneous as a matter of policy, because it blessed what the Second Circuit has expressly condemned:  "attempts by a bankruptcy debtor to clothe a general creditor in the garb of a shareholder."  *See Med Diversified,* 461 F.3d at 258.  The Decision should be reversed.

## ARGUMENT

The Trustee Brief opens with the statement that "Section 510(b) of the Bankruptcy Code mandates the subordination of claims arising from the purchase or sale of the securities of the debtor or its affiliates."  Trustee Br. at 1.  This statement is misleading, because it is incomplete.  To complete the statement, one must answer the question, "Subordination <u>to what</u>?"  The second half of Section 510(b) answers that question:  subordination to claims that are senior or equal to claims "represented by such securities."  Here, because there are <u>no</u> claims "represented by such securities" (i.e., the LBHI Notes) in LBI's proceeding, the Claim cannot be subordinated in LBI's proceeding.  The Trustee attempts to avoid this conclusion by sidestepping both the plain language of Section 510(b) and the Second Circuit's explicit instruction on the limited

2

Congressional intent behind Section 510(b). That attempt should fail. The Decision should be reversed.

### A. The Decision Contradicts the Text of Section 510(b).

Section 510(b) calls for the subordination of certain claims "arising from" securities transactions "to all claims or interests that are senior to or equal the claim or interest represented by such security." As demonstrated in UBSFS's opening brief -- and as the Bankruptcy Court and the Trustee essentially admit -- the plain and typical meaning of a "claim … represented by" a debt security like the LBHI Notes is a claim for the debt embodied by those securities. Opening Br. at 8. The Trustee does not dispute that the claims for the debt embodied by the LBHI Notes are currently held by UBSFS's customers that bought the Notes (or subsequent transferees). Nor does the Trustee dispute that these claims, while cognizable in LBHI's chapter 11 case, cannot be validly asserted in LBI's SIPA case.

Thus, it is undisputed that there is no claim or interest "represented by" the LBHI Notes, as that term is plainly and typically understood, in the SIPA Case. Accordingly, there are no claims or interests "that are senior to or equal" such nonexistent represented-by claims in the SIPA Case. Because a claim cannot be subordinated to something that does not exist, the Claim cannot be subordinated at all based on the plain language of Section 510(b).

The Bankruptcy Court and the Trustee prefer a different outcome, because they begin with the faulty and incomplete premise that claims like the Claim must be subordinated -- somehow, anyhow. *See In re Lehman Bros. Inc.,* 503 B.R. 778, 787 (Bankr. S.D.N.Y. 2014); Trustee Br. at 1. Confronted with (a) the logic that the Claim must be subordinated <u>to</u> something and (b) the fact that claims actually "represented by" the LBHI Notes do not exist in the SIPA Case, the Bankruptcy Court and the Trustee are forced to find some other claim to which to subordinate the Claim.

3

Since the Claim is not related to <u>any</u> other claim in the SIPA Case, the Bankruptcy Court was forced to opine that the Claim should be subordinated to itself. *See* 503 B.R. at 787. Working backward, the Bankruptcy Court declared that Section 510(b) means that the claim "represented by" the LBHI Notes (which are held by UBSFS's customers) is UBSFS's "claim … for reimbursement or contribution" -- i.e., the Claim itself. *See id*.

As demonstrated in the Opening Brief, the notion that the Claim is "represented by" the LBHI Notes is contrary to (i) the plain and typical usage of the phrase "represented by," (ii) the notably different terms used in the first and second halves of Section 510(b) ("claim … arising from [securities transactions]" versus "claims … represented by such securities"), and (iii) simple logic. Opening Br. at 10-11.[2] The Trustee cannot rebut these points, which is why the Trustee does not address -- indeed, he seems to reject -- the essential reasoning underlying the Decision. *See* Trustee's Br. at 6.[3]

Instead, the Trustee simply asserts that general unsecured claims are "'senior to' or 'equal'" the Claim, and so the Claim is "properly" subordinated to general unsecured claims. *Id*. This is a complete non sequitur. The Claim's status as a general unsecured claim -- even one "arising from" transactions in the LBHI Notes -- does not somehow transform the Claim into a claim "represented by" the LBHI Notes, which is what Section 510(b) requires.

The Trustee cites three decisions in which claims arising from transactions in securities issued by the debtor's affiliate were subordinated to other general unsecured claims. Trustee Br. at 6. In only one of those decisions did the court hold that the disputed claims must be

---

[2] The JUs made the same point in the JU Brief at 10-14 [Dkt. No. 11] in Case No. 14 Civ. 1987 (SAS).

[3] In his briefs in the related appeals, the Trustee exclusively promotes a theory rejected by the Bankruptcy Court, namely, that the phrase "claims … represented by such security" means nonexistent claims against LBI based on the LBHI Notes. The fundamental flaws of this theory, the effect of which is disallowance, not subordination, are demonstrated in detail in the JU Reply Brief, *passim* [Dkt. No. 13] in Case No. 14 Civ. 1987 (SAS).

4

subordinated to themselves, but the court failed to explain how those claims could be "represented by" the relevant securities. *See In re VF Brands, Inc.,* 275 B.R. 725, 727 (Bankr. D. Del. 2002). All of these decisions, like the decision below, essentially sidestep the plain meaning of "claim … represented by such securities" in order to achieve the result of subordinating the disputed claim to all general unsecured claims.[4]

The Trustee also asserts that Section 510(b) "does not require that the relevant security have a place in the debtor's capital structure." Trustee Br. at 1. This merely begs the question. If the phrase "claims and interests represented by such security" means what it is plainly and typically understood to mean, then Section 510(b) <u>does</u> so require. Nor does this requirement render the statute "meaningless." *See id.* at 7. As the Bankruptcy Court and the Trustee recognize, there are at least two circumstances in which a debtor will be subject to claims for securities "represented by" its affiliate's securities: where the debtor guaranteed the securities and where the debtor and the issuer are substantively consolidated. *See id.*; 503 B.R. at 784-85. Although the Trustee protests an alleged lack of legislative history supporting UBSFS's allegedly "limit[ed]" interpretation of the statute, it is the plain language of the statute that is limited. The plain language of a statute requires no resort to legislative history. *See, e.g., Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).[5]

For the foregoing reasons, the Bankruptcy Court's results-oriented interpretation of the essential language of Section 510(b) was erroneous as a matter of law. Because the entire statute -- and not just the first half -- should be enforced according to the plain meaning of its terms, the Decision should be reversed.

---

[4] These decisions are discussed in detail in the JU Brief at 18-23 [Dkt. No. 11] and in the JU Reply Brief at 8-9 [Dkt. No. 13] in Case No. 14 Civ. 1987 (SAS).

[5] In any event, UBSFS's plain reading of the statute is completely consistent with the Second Circuit's view of the legislative history, as is shown in section (B) below.

**B.     The Decision Contradicts the Purpose of Section 510(b).**

UBSFS interprets the phrase "claims … represented by" the LBHI Notes to mean what it would typically mean in any context: claims for the debt embodied by the LBHI Notes. Importantly, the Bankruptcy Court (and the Trustee) would <u>agree</u> one hundred percent with UBSFS's interpretation, if the Claim were being asserted in LBHI's case, or if LBI had guaranteed the LBHI Notes, or if LBI and LBHI had been substantively consolidated. *See* 503 B.R. at 787; Trustee Br. at 7. Because UBSFS's interpretation of "claims … represented by" the LBHI Notes is undeniably plain and typical, and is also undisputedly correct in some circumstances, UBSFS's interpretation should be applied here. At a minimum, it cannot be unreasonable.

The Bankruptcy Court held, however, that here the same interpretation of the same phrase is "hyper-technical" and "myopic[]" and "does not make logical sense nor does it fit the language of the section." 503 B.R. at 787. The Bankruptcy Court employed an unusual principle of statutory interpretation: the key phrase here "may have different meanings" -- each supposedly unambiguous -- based on the different results produced. *See id*.

If this Court should find that the Bankruptcy Court's circular interpretation of "claims … represented by" the LBHI Notes, as meaning the Claim itself, is also reasonable, then the phrase is ambiguous and this Court must examine the statute's intent. *See Med Diversified*, 461 F.3d at 255 (where a phrase "is reasonably susceptible to both [the claimant's] narrow construction and the trustee's broader reading, . . . the phrase is ambiguous"). The Second Circuit has explicitly so held, in a case concerning the phrase "arising from" in the first half of Section 510(b); and there is no reason to believe that the Second Circuit would apply a different rule to the second half of Section 510(b). *See id.*

6

As demonstrated in the Opening Brief, the Second Circuit has expressly interpreted the intent of Section 510(b) as requiring subordination only in two circumstances, neither of which applies to the Claim. *See id.* at 256 ("…we conform our interpretation of the statute to require subordination here only if [the claimant] (1) took on the risk and return expectations of a shareholder, rather than a creditor, or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding to extend credit to the debtor"); Opening Br. at 12-13. Applying the Second Circuit's test, the Claim cannot be subordinated. *See id.* The Trustee does not deny this. *See* Trustee Br. at 7.

Instead, the Trustee argues that the Second Circuit's test is irrelevant here because the Second Circuit formulated the test while addressing the first half of Section 510(b). *See id.* But there is no reason to believe that the Second Circuit would apply a different test to ambiguities in the second half of Section 510(b), or that the Second Circuit would consider the intent of the second half of Section 510(b) to be somehow different from the intent of its first half. *See Med Diversified*, 461 F.3d at 255-56. Accordingly, the Trustee's attempt to sidestep the Second Circuit's instruction fails. The analysis should end there: the Claim cannot be subordinated, even if the phrase "claim … represented by such security" is ambiguous. *See id.*

The Trustee goes on to argue at length, contrary to the Second Circuit's conclusions, that debt underwriters such as UBSFS should be treated like equity holders, even if they do not invest in the securities, as a matter of risk allocation. Each of the decisions cited by the Trustee on this point concerns an underwriter's claim against a debtor based on the issuance of the debtor's securities, not an underwriter's claim against another underwriter, like the Claim. *See* Trustee Br. at 8-9. Here, the co-underwriters allocated risk among themselves by contract and statute, and it is UBSFS's right "to recover contribution as if in contract" from LBI under Section 11(f) of the

7

A/76209804.1

Securities Act that the Claim seeks to enforce. *See* 15 U.S.C. §77k(f) (quoted in full in Opening Brief at 2). These risks among co-underwriters cannot reasonably be identified with the risk that the issuer will engage in fraud or become insolvent. That risk was taken on by those who hold the LBHI Notes. Contrary to the Trustee's conclusory assertion, risk allocation rationales do not "apply equally" to fraud claims against an issuer debtor and contribution claims against a co-underwriter debtor, empirically or legally. Thus, the Trustee's risk allocation analysis is off-point and unsupported, as well as trumped by the Second Circuit's instruction.

As a final matter on the subject of "relative fairness," to use the Trustee's term (Trustee Br. at 8): the Trustee's attempt to immunize LBI completely from liability to its co-underwriters rings hollow indeed in the very situation where LBI should have known best whether the issuance of securities (by its parent) would create joint liability among the underwriters -- especially when the Trustee concedes that LBI would not be immunized from co-underwriters' claims if the subject securities happened to have been issued by entities (e.g., General Motors) unaffiliated with LBI. This result would be absurd, and Section 510(b) should not be construed so as to effect an absurd result. *See, e.g., United States v. Ron Pair Enters.,* 489 U.S. 235, 242 (1989).

For all of these reasons, if this Court should find that the plain language of Section 510(b) does not unambiguously prohibit the subordination of the Claim, then this Court should hold that the purpose of Section 510(b) does so.

8

## CONCLUSION

For the foregoing reasons and the reasons set forth in its Opening Brief, UBSFS respectfully requests that this Court reverse the Decision and Order of the Bankruptcy Court and remand the case for further proceedings.

Dated: June 13, 2014
      New York, New York

                         **BINGHAM MCCUTCHEN LLP**

                        */s/ Joshua Dorchak*
                        Joshua Dorchak
                        399 Park Avenue
                        New York, New York  10022
                        212.705.7000
                        joshua.dorchak@bingham.com

                        Attorneys for Appellant
                        UBS Financial Services Inc.