HEARING DATE AND TIME: January 15, 2015 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: December 31, 2014 at 4:00 p.m. (Eastern Time)

---

**THE FOUR HUNDRED EIGHTY-NINTH OMNIBUS OBJECTION TO CLAIMS SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.**

**PARTIES RECEIVING THIS NOTICE SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).**

---

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
In re                                    :   Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :   08-13555 (SCC)
                                         :
                 Debtors.                :   (Jointly Administered)
------------------------------------------------------------------x
```

**NOTICE OF HEARING ON THE PLAN ADMINISTRATOR'S FOUR HUNDRED EIGHTY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

PLEASE TAKE NOTICE that on December 1, 2014 Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above-referenced chapter 11 cases, filed the four hundred eighty-ninth omnibus objection to claims (the "Four Hundred Eighty-Ninth Omnibus Objection to Claims"), and that a hearing (the "Hearing")

to consider the Four Hundred Eighty-Ninth Omnibus Objection to Claims will be held before the

Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **January 15, 2015 at 10:00 a.m. (Eastern Time)**, or as soon

thereafter as counsel may be heard.

   **PLEASE TAKE FURTHER NOTICE** that any responses to the Four Hundred

Eighty-Ninth Omnibus Objection to Claims shall be in writing, shall conform to the Federal

Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with

the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be

found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system,

and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in Portable

Document Format (PDF), WordPerfect, or any other Windows-based word processing format

(with a hard copy delivered directly to Chambers), in accordance with General Order M-182

(which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General

Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green,

New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI, Weil, Gotshal & Manges

LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ralph I. Miller, Esq. and Garrett A.

Fail, Esq.), and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office

Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K.

Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and

received by no later than **December 31, 2014 at 4:00 p.m. (Eastern Time)** (the "Response

Deadline").

   **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Four Hundred Eighty-Ninth Omnibus Objection to Claims or any

claim set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Four Hundred Eighty-Ninth Omnibus Objection to Claims, which order may be entered with no

further notice or opportunity to be heard offered to any party.

Dated: December 1, 2014
      New York, New York

          /s/ Garrett A. Fail
          Ralph I. Miller
          Garrett A. Fail
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Lehman Brothers Holdings Inc.
          and Certain of Its Affiliates

WEIL:\95166576\8\58399.0011

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (SCC)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

## PLAN ADMINISTRATOR'S FOUR HUNDRED
## EIGHTY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

---

**THIS FOUR HUNDRED EIGHTY-NINTH OMNIBUS OBJECTION TO CLAIMS
SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.**

**PARTIES RECEIVING THIS OBJECTION SHOULD REVIEW THE
OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED
IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO
TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

---

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases (the

"Chapter 11 Estates"), respectfully represents as follows:

## RELIEF REQUESTED

1.      All of the proofs of claim listed on Exhibit A attached hereto (together, the

"Claims") should be disallowed and expunged because each one fails to state a claim upon which

relief can be granted.  The Claims were filed by Quintessence Fund LP or QVT Fund LP

(together, the "Claimants") against one of Lehman Brothers Commodity Services Inc. ("LBCS"),

Lehman Brothers Special Financing Inc. ("LBSF"), or Lehman Brothers OTC Derivatives Inc.

("LOTC")  (collectively the "Named Lehman Entities").  The Plan Administrator has examined

each of the Claims and has determined that, in each case, the applicable Chapter 11 Estate

against which the Claim is asserted has no liability for the Claim.  As explained below, the

Claims and the four contracts they purport to rely upon cannot be the basis for relief against the

Named Lehman Entities because they are not parties to three of those agreements, and the one

contract to which they might arguably be a party does not impose any obligations upon them

and, further, expressly exculpates them from the kinds of liabilities asserted in the Claims, which

are all based on the SIPA proceeding or cessation of trading.  The Plan Administrator therefore

files this omnibus objection, pursuant to section 502(b) of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus

WEIL:\95166576\8\58399.0011

objections to proofs of claim [ECF No. 6664] (the "Procedures Order"), seeking the

disallowance and expungement of the Claims.

## JURISDICTION

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### I.      General Background

3.      Commencing on September 15, 2008, and periodically thereafter, the

Chapter 11 Estates commenced with this Court voluntary cases under chapter 11 of the

Bankruptcy Code (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule

1015(b).

4.      Lehman Brothers International (Europe) ("LBIE") and Lehman Brothers

Inc. ("LBI") are affiliates of the Named Lehman entities but are not debtors in the Chapter 11

Cases.  On September 15, 2008, LBIE entered administration under English insolvency law (the

"UK Proceeding").  On September 19, 2008, the District Court for the Southern District of New

York appointed James W. Giddens as trustee to oversee LBI's liquidation in a proceeding (the

"SIPA Proceeding") administered by the Court under the Securities Investor Protection Act, 15

U.S.C. §§ 78aaa *et seq.* ("SIPA").

5.      On December 6, 2011, the Court entered an order confirming the Plan

[ECF No. 23023].  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan

Administrator is authorized to interpose and prosecute objections to claims filed in the Chapter

11 Cases.

## II.   The Claims

6.   The Claims assert that the Named Lehman Entities are jointly and severally liable with LBIE or LBI for amounts owing under one or more of the following four prime brokerage agreements: a Global Master Securities Lending Agreement (the "GMSLA"); a Margin Lending Agreement (the "MLA"); a Fixed Income Prime Brokerage Agreement ("FIPBA"); and a Customer Account Agreement Prime Brokerage (the "Customer Account Agreement" and together with the GMSLA, MLA, and FIPBA, the "PB Agreements").[1]

7.   Claimants admit that, pursuant to the PB Agreements, their "prime brokerage accounts were opened and maintained *by LBIE* [or *by LBI*]" – and not by LBCS, LBSF, or LOTC.  Ex. B (Claims ¶ 1 (emphasis added)).  In addition, pursuant to an agreement approved by the Court, Claimants were channeled to LBIE's UK Proceeding to collect on account of their customer claims for the return of their cash and/or securities.  *See infra* ¶¶ 9-10.  Upon information and belief, each Claimant has received a distribution from LBIE by participating in the UK Proceeding.

8.   Nonetheless, Claimants seek a multiple recovery by arguing that the three Named Lehman Entities are jointly and severally liable with LBIE or LBI for purported damages arising from the PB Agreements.  Specifically, each Claimant seeks from the Named Lehman Entities "all amounts owing to [Claimant] pursuant to the terms of the [PB Agreements]."  Ex. B (Claims ¶ 5).

## III.   Claimants' Customer Claims Against LBI Have Been Disallowed

9.   Earlier in the SIPA Proceeding, each Claimant held a claim (each, a "Customer Claim") against LBI defined as a "Duplicative Claim" in a settlement agreement

---

[1]  A sample Claim, which is substantially representative of all Claims, is attached hereto as Exhibit B.  A substantially representative copy of the Customer Account Agreement is attached hereto as Exhibit C.

between LBI and LBIE, dated February 21, 2013 (the "<u>LBI-LBIE Settlement</u>").  This Court

approved the LBI-LBIE Settlement on April 16, 2013 and subsequently disallowed the

Duplicative Claims held by Claimants.  *See* Order Approving Settlement Agreement Among the

Trustee, Lehman Brothers International (Europe) (In Administration) and the LBIE

Administrators, *SIPC v. Lehman Bros. Inc.*, SIPA Case No. 08-01420 (Bankr. S.D.N.Y. Apr. 16,

2013) [ECF No. 6021]; Order Confirming the Trustee's Determination of Duplicative Claims

¶ 4, *SIPC v. Lehman Bros. Inc.*, SIPA Case No. 08-01420, (Bankr. S.D.N.Y. Apr. 16, 2013)

[ECF No. 6022].

       10.     As indicated in filings with this Court, the purpose of disallowing

Claimants' Duplicative Claims was to channel Claimants to the UK Proceeding and prevent the

double recovery Claimants now seek to accomplish.  *See* Declaration of Christopher K. Kiplok in

Support of LBI-LBIE Settlement Agreement ¶¶ 24-26, 34, 61-63, *SIPC v. Lehman Bros. Inc.*,

SIPA Case No. 08-01420 (Bankr. S.D.N.Y. Feb. 26, 2013) [ECF No. 5788] ("A fundamental

premise of the settlement was that the Duplicative Claimants should not recover twice for the

same property.").

<u>**OBJECTION**</u>

       11.     Bankruptcy Code section 502(b)(1) provides, in relevant part, that a claim

may not be allowed to the extent that it "is unenforceable against the debtor and property of the

debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  To be entitled to *prima*

*facie* validity under Bankruptcy Rule 3001(f), a proof of claim must allege "facts sufficient to

support a legal liability to the claimant."  *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir.

1992); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).  An objection refuting –

on either a factual or a legal basis – one of a claim's essential allegations shifts to the claimant

the burden of proof of demonstrating the validity of its claim.  *See In re Oneida Ltd.*, 400 B.R.

5

384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL

601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539

(Bankr. S.D.N.Y. 2000).

        12.    As set forth below, the Claims are unenforceable against the Named

Lehman Entities because: (I) LBCS, LBSF, and LOTC are not parties to the GMSLA, MLA, or

FIBPA; and (II), even assuming that the Named Lehman Entities were found to be parties to the

Customer Account Agreements, the Claims fail to state a contract claim under the Customer

Account Agreements and, further, would be prohibited from doing so under the broad

exculpatory provisions contained therein.

        13.    Accordingly, the Court should disallow and expunge the Claims in their

entirety.

## I.     LBSC, LBSF, and LOTC Have No Liability Under the GMSLA, MLA, and FIPBA

        14.    None of the Named Lehman Entities is a party to the GMSLA, MLA, or

FIPBA.  Claimants entered into these agreements with either or both of LBIE or LBI, not any of

the Chapter 11 Estates.  Accordingly, LBCS, LBSF, and LOTC can have no liability arising

under these agreements.

        15.    The GMSLA, MLA, and FIPBA are governed by New York law.  Under

New York law, it is axiomatic that separate legal entities are not liable for each other's distinct

contractual obligations.  *See Am. Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2d

Cir. 1974) ("Absent findings of fraud or bad faith, a corporation . . . is entitled to a presumption

of separateness from a sister corporation . . . even if both are owned and controlled by the same

individuals."); *see also Gulf & Western Corp. v. New York Times Co.*, 439 N.Y.S.2d 13, 15

(App. Div. 1981) (dismissing case against the affiliates of two defendants on the grounds that

such affiliates were not parties to the relevant agreement).

WEIL:\95166576\8\58399.0011

## II.    The Named Lehman Entities  Have No Liability
## Under the Customer Account Agreements

16.    Assuming, *arguendo*, that the Named Lehman Entities were among the parties to the Customer Account Agreements, they would have no liability to Claimants for the reasons set forth below. [2]

### A.    *Claimants have not and cannot state a claim under contract*

17.    Claimants contend that the Named Lehman Entities are jointly and severally liable for all obligations owing to Claimants under the Customer Account Agreements merely because these Chapter 11 Estates are nominally listed as parties to the Customer Account Agreements.  *See* Ex. B (Claims ¶ 2).  However, it is a well-established principle of New York contract law that, when there are multiple parties to a contract, each party is liable only for the performance it promised.[3]  *See Abundance Partners LP v. Quamtel, Inc.*, 840 F. Supp. 2d 758, 767 (S.D.N.Y. 2012) ("Where the plain language of a contract signed by multiple parties indicates that only one party has assumed an obligation, only that party will be held liable for a failure to perform.");  *Kranze v. Cinecolor Corp.*, 96 F.Supp. 728 (S.D.N.Y. 1951) (holding that because two of the parties to a multi-party contract assumed separate obligations, each party was only liable for the obligation it assumed); *see also Tahoe DBS, LLC v. Loral Space & Commc'ns Ltd (In re Loral Space & Commc'ns Ltd.)*, 412 B.R. 64, 67-71 (S.D.N.Y. 2009) (holding that the debtors were not jointly and severally liable under a contract governed by California law, notwithstanding that numerous debtors were made a party to the agreement).

---

[2] As a threshold matter, LBCS, LBSF, and LOTC can only be liable for damages arising from the Customer Account Agreements if they are parties to such agreements.  The Plan Administrator expressly reserves its rights to dispute that LBCS, LBSF, and LOTC are parties to the Customer Account Agreements.

[3] The Customer Account Agreements are governed by New York law.  *See* Ex. C (Customer Account Agreement ¶ 24).

WEIL:\95166576\8\58399.0011

18.     Here, Claimants dot not identify any particular obligations undertaken by LBCS, LBSF, or LOTC.  Indeed, there are no such obligations.  Therefore, the mere fact that LBCS, LBSF, and LOTC were listed as parties to the Customer Account Agreements does not result in their joint and severally liability for damages purportedly arising thereunder.

19.     Further, to plead a claim under contract, "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue."  *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001).  In determining whether a party has identified contractual language specifying the relevant obligation, "it is not for the court to 'supply a specific obligation the parties themselves did not spell out.'"  *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (quoting *Tonking v. Port Auth. of New York and New Jersey*, 821 N.E.2d 133 (2004)).  "[W]hen parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms."  *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (internal quotation marks omitted).  "This is particularly appropriate if the contract was negotiated between sophisticated, counseled business people negotiating at arm's length."  *In re Allegiance Telecom, Inc.*, 356 B.R. 93, 98 (Bankr. S.D.N.Y. 2006) (quoting *Vermont Teddy Bear*, 807 N.E.2d at 879).

20.     The Claims do not refer to any obligations breached or even undertaken by any of the Named Lehman Entities in the Customer Account Agreements and, therefore, fail to state a claim for liability against these Chapter 11 Estates.  *See Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (dismissing breach of contract claim because plaintiffs failed to identify the contractual provisions that defendant breached); *see also Berman v. Sugo*

*L.L.C.*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("[s]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract").

21.     Based on the foregoing, the Claims should be disallowed and expunged because Claimants have not and cannot state a claim under contract against LBCS, LBSF, or LOTC.

B.     *Claimants Released LBCS, LBSF, and LOTC from all liability asserted in the Claims*

22.     Alternatively, even assuming, *arguendo*, that LBCS, LBSF, and LOTC had certain obligations under the Customer Account Agreements and had breached those obligations, Claimants expressly released LBCS, LBSF, and LOTC from all liability arising from such breaches.

23.     The Customer Account Agreements contain two broad exculpatory provisions.  Paragraph 28 releases entities including LBCS, LBSF, and LOTC from all liability arising from the occurrence of certain events, including "any loss caused, directly or indirectly, by government restrictions . . . suspension of trading . . . or other conditions beyond Lehman Brothers' reasonable control."  Ex. C (Customer Account Agreements ¶ 28).[4]  Paragraph 29 further releases the entities from all liability "in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action. . . ." Ex. C (Customer Account Agreements ¶ 29).

24.     New York law is clear that a valid release "constitutes a complete bar to an action on a claim which is the subject of the release." *Interpharm, Inc. v. Wells Fargo Bank, Nat Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (affirming dismissal of complaint under Fed. R. Civ.

---

[4] The Customer Account Agreements release "Lehman Brothers," a defined term that includes LBCS, LBSF, and LOTC.  Ex. C (Customer Account Agreements ¶ 1).

WEIL:\95166576\8\58399.0011

P. 12(b)(6) based on a valid release) (quoting *Centro Empresarial S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011)); *accord In re MF Global Inc.*, 515 B.R. 434, 440-42 (Bankr. S.D.N.Y. 2014).

25.    To the extent the Claims are based on damages arising from the commencement of the UK Proceeding or the SIPA Proceeding, such Claims are barred by the express terms of paragraph 28 of the Customer Account Agreements.  The commencement of these proceedings constitute "government restrictions . . . suspension of trading . . . or other condition beyond Lehman Brothers' control."  Ex. C (Customer Account Agreements ¶ 28).  Indeed, in *MF Global*, this Court held that damage claims asserted by customers of a failed broker-dealer were released pursuant to an exculpatory provision that is markedly similar to the one contained in paragraph 28 of the Customer Account Agreements.[5]  *See MF Global*, 515 B.R. at 440-42.  Accordingly, like the damage claims asserted in *MF Global*, the Claims should be disallowed and expunged.

26.    Even assuming, *arguendo*, that the release in paragraph 28 does not apply, the Claims are barred by paragraph 29 of the Customer Account Agreements.  In paragraph 29, Claimants agreed that LBCS, LBSF, and LOTC "shall not be liable in connection with . . . [any] action, except for gross negligence, fraud or willful misconduct on Lehman Brothers' part."  Ex. C (Customer Account Agreements ¶ 29).  Because the Claimants have not made a *prima facie* showing, or even alleged, that LBCS, LBSF, or LOTC acted with gross negligence or engaged in fraud or willful misconduct, the Claims are barred by the express terms of paragraph

---

[5] The applicable contractual provision in *MF Global* stated that customers have "no claim against [the debtor] for any loss . . . caused directly or indirectly by, *inter alia*, (1) any Applicable Law, or order of any court, (2) suspension or termination of trading, and (3) any other causes beyond [the debtor's] control."  *MF Global*, 515 B.R. at 440-41 (internal quotation marks omitted).

10

29 of the Customer Account Agreements.  Accordingly, the Claims should be disallowed and expunged.

## RESERVATION OF RIGHTS

27.    For the reasons set forth above, the Claims can be disallowed and expunged in their entirety accepting, *arguendo*, each Claimant's factual allegations and without discovery.  The Plan Administrator does dispute and reserves all rights to dispute any allegations of fact or conclusion of law in the Claims and to object on any and all bases to any Claim as to which the Court does not grant the relief requested herein.  Specifically, and without limitation, the Plan Administrator reserves all rights to dispute liability for and the amount of any Claim as to which the Court does not grant the relief requested herein, including on the basis that such Claim has been satisfied in full by LBIE or LBI.  The Plan Administrator reserves all rights to conduct discovery and to supplement this and other filings with respect to any Claim as to which the Court does not grant the relief requested herein.

## NOTICE

28.    No trustee has been appointed in these Chapter 11 Cases.  The Plan Administrator has served notice of this objection on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Claimants; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

29.    No previous request for the relief sought herein has been made by the Plan Administrator or the Chapter 11 Estates to this or any other Court.

WEIL:\95166576\8\58399.0011

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated: December 1, 2014
New York, New York

/s/ Garrett A. Fail
Ralph I. Miller
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

12

**Exhibit A**

WEIL:\95166576\8\58399.0011

**IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO. 08-13555 (SCC)**

**OMNIBUS OBJECTION 489: EXHIBIT A - NO LIABILITY**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED TOTAL CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|---|
| 1 | QUINTESSENCE FUND LP | 08-13885 (SCC) | Lehman Brothers Commodity Services Inc. | 09/21/2009 | 21215 | $1,347,268.00 * | $1,347,268.00* | No Liability |
| 2 | QUINTESSENCE FUND LP | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 09/21/2009 | 21220 | $2,620,641.20 * | $2,620,641.20* | No Liability |
| 3 | QUINTESSENCE FUND LP | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 09/21/2009 | 21221 | $1,347,268.00 * | $1,347,268.00* | No Liability |
| 4 | QUINTESSENCE FUND LP | 08-13893 (SCC) | Lehman Brothers OTC Derivatives Inc. | 09/21/2009 | 21227 | $1,347,268.00 * | $1,347,268.00* | No Liability |
| 5 | QVT FUND LP | 08-13885 (SCC) | Lehman Brothers Commodity Services Inc. | 09/21/2009 | 21204 | $1,766,407.00 * | $1,766,407.00* | No Liability |
| 6 | QVT FUND LP | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 09/21/2009 | 21218 | $1,404,878.13 * | $1,404,878.13* | No Liability |
| 7 | QVT FUND LP | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 09/21/2009 | 21219 | $1,766,407.00 * | $1,766,407.00* | No Liability |
| 8 | QVT FUND LP | 08-13893 (SCC) | Lehman Brothers OTC Derivatives Inc. | 09/21/2009 | 21224 | $1,766,407.00 * | $1,766,407.00* | No Liability |

\* - Indicates claim contains unliquidated and/or undetermined amounts

**Exhibit B**

WEIL:\95166576\8\58399.0011

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: **Lehman Brothers Holdings Inc., et al.** | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held **Lehman Brothers Commodity Services Inc.** | Case No. of Debtor Case No. 08-13885 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000021215

**THIS SPACE IS FOR COURT USE ONLY**

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>Quintessence Fund LP<br>c/o QVT Financial LP<br>1177 Avenue of the Americas, 9th Floor<br>New York, NY 10036<br>Telephone number: (212) 705-8800      E-mail Address: julian.sale@qvt.com<br><br>With Copy to:<br><br>Robin E. Keller, Esq.<br>Lovells LLP<br>590 Madison Avenue, 7th Floor<br>New York, NY 10022<br>Telephone number: (212) 909-0600      E-mail Address: robin.keller@lovells.com | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(If known)<br><br>Filed on: _____ |
|---|---|

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

**FILED / RECEIVED**

**SEP 2 1 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

| Name and address where payment should be sent (if different from above)<br><br>Telephone number:                Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |
|---|---|

**1.    Amount of Claim as of Date Case Filed:** $1,347,268.00, plus any other amounts due under or in relation to the Prime Brokerage Agreement, including but not limited to interest, fees, costs and expenses.

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐    Check this box if all or part of your claim is based on a Derivative Contract.*
☐    Check this box if all or part of your claim is based on a Guarantee.*
* IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD ALL SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☒    Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

**2.    Basis for Claim:** Customer Account Agreement -- Prime Brokerage dated as of June 18, 2007. See attached rider.
(See instruction #2 on reverse side.)

**3.    Last four digits of any number by which creditor identifies debtor:** _____
**3a.    Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4.    Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
**Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____

**6.    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

**5.    Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐    Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐    Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐    Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐    Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐    Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐    Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

| | FOR COURT USE ONLY |
|---|---|
| 7.    **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br>8.    **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)<br>**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**<br>If the documents are not available, please explain: | |
| **Date:**<br>September **21**, 2009 | **Signature:**    Quintessence Fund LP, by its general partner QVT Associates GP LLC<br><br>Julian Sale<br>Authorized Signatory          Daniel Collins<br>          Authorized Signatory | |
| *Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571. | |

**RIDER TO PROOF OF CLAIM**
**FILED BY QUINTESSENCE FUND LP**
**AGAINST LEHMAN BROTHERS COMMODITY SERVICES INC.**
<u>**REGARDING PRIME BROKERAGE DOCUMENTS**</u>

### A.    <u>INTRODUCTION</u>

1.    This rider to the attached Proof of Claim of Quintessence Fund LP ("**Quintessence**") is incorporated into the Proof of Claim in its entirety as if fully set forth therein.

2.    This claim arises out of the Customer Account Agreement — Prime Brokerage among Quintessence, Lehman Brothers Inc. ("**LBI**"), Lehman Brothers International (Europe) ("**LBIE**"), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. ("**LBHI**")and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees (the "**Prime Brokerage Agreement**" and all other documents, instruments and agreements entered into in connection therewith (as same may from time have been modified, amended, restated and/or supplemented, collectively, the "**Prime Brokerage Documents**")), pursuant to which prime brokerage accounts were opened and maintained by LBIE in Quintessence's name (the "**Quintessence Prime Brokerage Account at LBIE**").[1]    As described in more detail below, LBIE is liable to Quintessence for amounts owing under the Prime Brokerage Agreement, namely assets held in the Quintessence Prime Brokerage Account at LBIE.  As a subsidiary of LBHI, Lehman Brothers Commodity Services Inc.  ("**LBCS**") is a party to the Prime Brokerage Agreement.  Consequently, LBCS is jointly and severally liable for all amounts owing to Quintessence under the Prime Brokerage Agreement.

---

[1] Because of the voluminous nature of the Prime Brokerage Documents and other writings executed or delivered in connection with the Prime Brokerage Documents that support this Proof of Claim, which include, but are not limited to, the documents identified herein, and because all of these documents are or should be in Lehman's possession, none of the documents identified herein are annexed hereto; however, all such documents are expressly incorporated herein by reference and, subject to any confidentiality restrictions, will be made available upon reasonable request by contacting counsel to Quintessence: Lovells LLP, 590 Madison Avenue, New York, NY 10022, Attn: Robin Keller, Esq., Tel: (212) 909-0600; Fax: (212) 909-0660, e-mail: robin.keller@lovells.com.

**B.**     **BASIS FOR CLAIM**

3.      On September 15, 2008, LBHI filed a voluntary Chapter 11 petition with the U.S.

Bankruptcy Court for the Southern District of New York and LBIE was placed in administration with the

U.K. Companies Court, Chancery Division of the High Court of Justice under the management of certain

partners in PricewaterhouseCoopers who were appointed as Administrators to LBIE (the "**LBIE**

**Administrators**").

4.      On October 16, 2008, Quintessence delivered a Notice of Setoff and Customer Account

Closeout Demand (the "**Closeout Demand**"), in which Quintessence, *inter alia*, (i) notified the LBIE

Administrators of Quintessence's exercise of its rights of setoff under the Prime Brokerage Documents;

(ii) authorized and directed the LBIE Administrators to close out the Quintessence Prime Brokerage

Account at LBIE; and (iii) demanded the payment of the net amounts owed by LBIE to Quintessence

after application of the value of the securities that were in the Quintessence Prime Brokerage Account at

LBIE -- US$1,347,268.00.

5.      LBIE has not responded to Quintessence's demand for payment (other than to

acknowledge receipt).  Consequently, Quintessence hereby asserts the claims herein against LBCS under

the Prime Brokerage Documents for all amounts owing to Quintessence pursuant to the terms of the

Prime Brokerage Documents, including legal fees and any additional costs incurred by Quintessence in

connection with the enforcement and protection of its rights under the Prime Brokerage Documents.

**C.**     **RESERVATION OF RIGHTS**

6.      Quintessence expressly reserves any and all defenses, counterclaims or objections,

including without limitation, the right of setoff, recoupment or similar right, remedy or defense against

any claims or counterclaims asserted by LBCS or any of the other parties to the Prime Brokerage

Documents in relation to this claim, or any other claim arising under the Prime Brokerage Documents or

otherwise described above.

7.      The filing of this Proof of Claim is not an election of remedies and is without prejudice to

Quintessence's rights to assert claims against LBIE, LBI or any other third parties, whether arising out of

or relating to the facts and circumstances underlying the claim, or otherwise. Quintessence hereby expressly reserves any and all rights, claims, causes of action, defenses, counterclaims or objections, or any similar rights, remedies or defenses against all persons or entities, whether in this court or elsewhere, whether currently existing or arising in the future, against whom it determines it may have claims.

### D.    AMENDMENT OF CLAIMS

8.    Quintessence reserves all rights to adjust, amend or withdraw this Proof of Claim or to set forth its claim with more particularity, including (without limitation, as a result of future events) to reflect the discovery and analysis of additional information, the correction of any errors, the resolution of disputes, the calculation of legal fees and/or other costs incurred by Quintessence in connection with the enforcement and protection of its rights under the Prime Brokerage Documents.

### E.    OTHER

9.    No judgment has been rendered on this claim.

10.    The execution and filing of this Proof of Claim is not: (i) a waiver or release of the rights of Quintessence against any other entity or person that may be liable for all or any part of the claim asserted herein; (ii) a waiver of the right to withdraw the reference with respect to the subject matter of the claim, any objection or other proceeding commenced with respect thereto or any other proceedings commenced against or otherwise involving any of the Lehman Prime Brokerage Parties or Quintessence; or (iii) an election of remedies that waives or otherwise affects any other remedy.

11.    All notices governing this Proof of Claim should be sent to Quintessence Fund LP, c/o QVT Financial LP, 1177 Avenue of the Americas, 9th Floor, New York, NY 10036, Attn: Julian Sale, as well as to Lovells LLP, 590 Madison Avenue, New York, NY 10022, Attn: Robin Keller, Esq.

Dated:  September 21, 2009
        New York, New York

Quintessence Fund LP, by its general partner, QVT
Associates GP LLC

By:  _____

     Name:  Julian Sale
     Title:  Authorized Signatory

By:  _____

     Name:  Daniel Collins
     Title:   Authorized Signatory

H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP 2 1 2009

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

_____         _____         4:32
**RECEIVED BY:**                          **DATE**                          **TIME**

**Exhibit C**

WEIL:\95166576\8\58399.0011

# Customer Account Agreement Prime Brokerage

**LEHMAN BROTHERS INC.**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
(212) 526-7000

| Title: QUINTESSENCE FUND LP | Account (and Group) No.: |
|---|---|
| | |

### Please Read Carefully, Sign and Return

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe) ("LBIE"), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law"). If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as is necessary to comply with ERISA, the Code or Similar Law.

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for differences or any other agreement, without regard to the form of such agreement which may include oral agreements) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments

and distributions with respect thereto and all proceeds from any of the foregoing). The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its good faith and commercially reasonable discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that LBI (or a successor under paragraph 12 hereof) and LBIE (each, a "Custodial Entity") in the normal course of the services outlined herein, may register and hold the securities and other property or Assets in your accounts in the name of any Lehman Brothers Entity which is a duly formed Lehman Brothers Entity for purposes of paragraph 19 hereof or the utilization of custodians or subcustodians; provided, however, in such event, the Custodial Entity which last had custody of such security, property or Asset, shall remain obligated to you with respect to the return of such security, property or Asset. For the avoidance of doubt, nothing contained in the preceding sentence shall be construed to (a) limit the rights granted by you to Lehman Brothers in paragraph 19 hereof, and (b) limit the ability and right of any Lehman Brothers Entity to use third-party custodians or subcustodians in the normal course of its business. You understand that certain securities may be held outside the United States and in connection therewith each Lehman Brothers Entity agrees to utilize due care in the selection of any such unaffiliated, foreign agent banks and depositories. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

### 4.  BREACH, BANKRUPTCY OR DEFAULT.  Upon:

(i) repudiation or default by the undersigned  under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into, following the expiration of any applicable notice or grace period following notice of such event (and if none, there shall be a one business day grace period until such event shall be considered an event of default under this Agreement); provided however, that  a default does not result from (1) a failure to deliver securities on (A) the repurchase date under a repurchase or reverse repurchase agreement or (B) the termination date under a securities lending agreement, in both cases where the undersigned continues to meet all applicable margin calls as required under the applicable agreement or (2) a buy-in or similar action where the undersigned pays amounts owed when due; (3) an event that, as demonstrated to the reasonable satisfaction of Lehman Brothers is (a) caused exclusively by an error or omission of an administrative or operational nature, (b) cash was available to the undersigned to enable it to make the relevant payment or delivery due, and such cash was beneficially owned by the undersigned and not otherwise pledged or encumbered and (c) such payment is actually made on the business day following the date such payment was due or has occurred;

(ii) any material misrepresentations by the undersigned set forth in  this Agreement or evidenced by any other writing with respect to any other Contract with any Lehman Brothers Entity;

2

(iii) a statement in writing that the undersigned will not perform any material obligation to any Lehman Brothers Entity;

(iv) subject to the proviso in (i) above, the failure of the undersigned to fulfill or discharge any obligation under this Agreement or any Contract with any Lehman Brothers Entity, including the failure to make a payment on demand or to satisfy margin requirements in accordance with Section 17 of this Agreement, following the expiration of any applicable notice or grace period that may apply under this Agreement or any other Contract with any Lehman Brothers Entity (and if none, there shall be a one business day grace period until such event shall be considered an event of default under this Agreement);

(iv) the undersigned's application, consent to, or being subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of the undersigned or of all of or a substantial part of its property;

(v) the undersigned's admission in writing of its inability, or become generally unable, to pay its debts as such debts become due;

(vi) the undersigned's making a general assignment for the benefit of its creditors; or

(vii) the filing by or against the undersigned of a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition (A) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (B) is not dismissed, discharged, stayed or restrained in each case within 30 days of the institution or presentation thereof;

then, any such event shall constitute, at Lehman Brothers' election and upon prior written notice to you, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, with prior written notice to you to the extent reasonably practicable under the circumstances, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly on an exchange or privately without notice or advertisement in such manner as Lehman Brothers may in good faith and a commercially reasonable manner determine, subject to the provisions of applicable law. At any such sale or purchase, any Lehman Brothers Entity may, in good faith and a commercially reasonable manner, purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

You shall have the right upon the filing by Lehman Brothers of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver, to set off Liquidated Obligations owed to Lehman Brothers against the obligations of Lehman Brothers to you incurred on its own behalf and not for the benefit of third parties, for the purpose of satisfying Lehman Brothers obligations to you to the extent not in violation of securities or bankruptcy laws, rules or regulations (such rights, the "Set Off Rights"). Prior to exercising Set Off Rights, you will make a written demand on Lehman Brothers for the return of Collateral, which demand must specify that you are prepared to repay Liquidated Obligations. For the purposes of this paragraph, "Liquidated Obligations" subject to set off shall include: (1) borrowed cash; (2) cash due for securities purchased; (3) accelerated derivative transactions; (4) liquidated repurchase, reverse repurchase, and securities lending transactions following the application of any collateral; and (5) any amount due and payable pursuant to contract. If Lehman Brothers fails to deliver such Collateral (or, at its option in an instance where the relevant portion of Collateral is impossible, including due to open marketplace fails, to deliver the cash equivalent thereof valued on a basis consistent with Lehman Brothers' standard practice (such valuations to be made in a non-discriminatory manner) and the valuations set forth in the most recent statements provided by Lehman Brothers) within the standard settlement cycle(s) for such Collateral following such demand, you may exercise Set Off Rights following the lapsing of such standard settlement cycle(s). You may not exercise Set Off Rights if Lehman Brothers delivers Collateral and you fail to repay the Liquidated Obligations simultaneous with such delivery. For the purposes of this paragraph 4, "Collateral" shall mean your cash, securities, financial assets and other property from time to time delivered under this Agreement or otherwise held by, or under the control of, Lehman Brothers. Lehman Brothers acknowledges that in the event that a LBI failure to repay any of its obligations to you constitutes an event of default under any Contract, then you may exercise Set Off Rights to the extent of the amount of defaulted upon obligations owed under this Agreement, the Margin Lending Agreement or the Global Master Securities Agreement in accordance with the terms and conditions set forth above.

**5. INTENTIONALLY DELETED.**

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees") as provided in the Terms and Condition Rider dated as of_____ ("TCR"). You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you subject to the terms of the Committed Margin Agreement dated as of _____ between the parties (the "Committed Margin Agreement").

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in the Committed Margin Agreement. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of collection, reasonable attorneys' fees, court costs and other out-of-pocket expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system to the extent that you accessed or used the same and were provided with advance notice that there were fees or costs for the same or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers).

**9. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer,

director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

10. **SECURITIES EVENTS**. To the extent possible under the circumstances, Lehman Brothers shall inform you, within a sufficient time for both (A) you to reasonably respond to Lehman Brothers, and (B) Lehman Brothers to act on such response, if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities or any other corporate action. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes. You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

11. **VOTING RIGHTS**. To the extent possible under the circumstances, Lehman Brothers shall inform you, within a sufficient time for both (A) you to reasonably respond to Lehman Brothers, and (B) Lehman Brothers to act on such response, if Lehman Brothers becomes aware of any right to vote arises with respect to securities in your account. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

12. **WAIVER, ASSIGNMENT AND NOTICES.** Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder. Any purported assignment of its rights and/or obligations hereunder by either you or Lehman Brothers may be effected with the consent of the other party, such consent not to be unreasonably withheld or delayed, provided, however, upon written notice to you, LBI may assign this Agreement to any affiliated SEC-regulated broker-dealer ("Affiliated Broker-Dealer") in good standing as part of a general assignment of its prime brokerage business without your consent; provided, however, that in connection with any such assignment, Lehman Brothers Holdings Inc. ("LBHI") shall issue a guaranty of any such Affiliated Broker-Dealer in favor of you with respect to this Agreement and any transactions effected hereunder in form and substance identical to the guaranty issued in respect of LBI, contemporaneously with any such assignment. Any such purported assignment made prior to the issuance of such guaranty shall be void. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you as of the date and time of actual receipt. Margin Calls may also be communicated orally, without subsequent written confirmation. Additionally, Lehman Brothers shall, if requested by you, provide you with a detailed breakdown of such Margin Call.

13. **FREE CREDIT BALANCES.** You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are agreed to in the Committed Margin Agreement

14. **RESTRICTIONS ON ACCOUNT**. Subject to the terms of the Committed Margin Agreement, you understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers determines to impose such restrictions on your account(s) due to legal, regulatory, money laundering, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction but shall do so to the extent legally permissible and reasonably practicable under the circumstances.

**15. CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make (for internal risk management) or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order except in the case where Lehman Brothers has pledged, repledged, hypothecated or rehypothecated the security as provided in paragraph 19, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17. MARGIN ACCOUNTS; LOANS.** All Loans are demand loans, except to the extent covered by the Committed Margin Agreement. Subject to the Committed Margin Agreement, you hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). For purposes of the foregoing, upon a demand for collateral made before 10:00 am New York time on any business day, you shall make delivery thereof no later than the close of business in New York on such business day. If a demand is made after 10:00am New York time on any business day, you shall make delivery no later than 5:00pm New York time on the next succeeding business day.

**18. SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19. CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others up to one hundred forty percent (140%) of the debit balance in your Account, any securities held by Lehman Brothers in any of your accounts (except fully-paid securities), to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum (within the limits of applicable law and regulations), and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. Subject to the provisions of paragraph 11, you agree to waive the right to vote, or to provide any consent or to take any similar action with respect to the loaned or pledged securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation. Subject to the limitations set forth in paragraph 11, you shall retain voting rights for all fully-paid securities. Notwithstanding the foregoing, in the event that you request that Lehman Brothers returns any of your securities that Lehman Brothers has lent out pursuant to this Section 19 (a), subject to any applicable recall procedures, Lehman Brothers shall endeavor to recall such securities and return them to your accounts within the time period that you request.

6

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities which are not otherwise received by you, to the full extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

**20. OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. Except in the case of an automatically-exercised option, you will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

**21. PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a)    LBI will, subject to the terms and conditions of this Agreement and, to the terms and conditions of the Committed Margin Agreement to the extent it applies, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval on a non-discriminatory basis, and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b) LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. Subject to the terms and conditions of the Committed Margin Agreement to the extent it applies, in the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade from an executing broker other than Lehman Brothers. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c) On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders in your account(s) which have been provided or made available to you on the business day immediately following the trade date shall be conclusive if not objected to by 9:00 a.m. (New York time) on the immediately following business day, absent manifest error. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you absent manifest error. LBI may send communications to your address of record or another address provided to LBI in writing or by electronic means agreed from time to time between the parties. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time of actual receipt.

(d) In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's

7

registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, unless LBI either affirmed or did not DK and did not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e) You shall maintain in your account with LBI such minimum net equity in cash or securities which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event your account falls below the SEC Net Equity Requirements then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f) If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g) If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction. In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h) You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i) Prior to such time that Lehman Brothers becomes the Prime Broker for any trade or transaction, Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j) You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or out-of-pocket expense, including reasonable attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any reasonable legal or other out-of-pocket expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder except to the extent such loss, claim or expense arises out of or in connection with Lehman Brothers' breach of this Agreement, the violation of applicable law, gross negligence, fraud or willful misconduct on Lehman Brothers' part.

(k) You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker, where one is provided to you.

(l)    The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22.  LEGALLY BINDING.** Both parties hereby agree that this Agreement and all of the terms hereof shall be binding upon you and Lehman Brothers' estate, heirs, executors, administrators, personal representatives, successors and assigns. You agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. With respect to any of your accounts maintained in connection with this Agreement, on, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time.

**23.  AMENDMENT.** Subject to the terms of the Committed Margin Agreement, you agree that Lehman Brothers may modify the terms of this Agreement at any time upon 15 days prior written notice to you except a) to the extent required by applicable law or b) with respect to Sections 14 and 17, which Lehman Brothers may modify upon prior notice to you; provided however that subsection a) and b) above shall be determined by Lehman Brothers on a non-discriminatory basis. If you do not accept such modification, you must notify Lehman Brothers in writing within 20 business days receipt of such notice; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations. By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of both parties.

**24.  GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.  <u>JURISDICTION; WAIVER OF JURY TRIAL.</u>** The parties shall attempt in good faith to promptly resolve any dispute arising out of, relating to or in connection with this Agreement or any transactions hereunder by negotiations by executives of the parties who have the authority to settle the controversy. With respect to any suit, action or proceedings relating to this Agreement ("Proceedings"), each party irrevocably submits to the exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City and waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party. You hereby appoint as your agent for service of process: QVT Financial LP, 1177 Avenue of the Americas, 9th Floor, New York, NY 10036, Attn: General Counsel. ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION IS HEREBY WAIVED BY ALL THE PARTIES TO THIS AGREEMENT.

**26.  WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) relief by way of injunction, order for specific performance or recovery of property, (iv) attachment of its assets (whether before or after judgment) and (v) execution or enforcement of any judgment and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27.  TRANSFERS.** Lehman Brothers shall, upon prior notice to you, have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers subject to the terms of Section 3 hereof. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers

with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request, except as a result of Lehman Brothers' gross negligence, fraud or willful misconduct.

**28.  EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' reasonable control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom, except as a result of Lehman Brothers' gross negligence, fraud or willful misconduct

**29.  LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence, fraud or willful misconduct on Lehman Brothers' part. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence, fraud or willful misconduct. In no event will Lehman Brothers or you be liable for any consequential damages arising out of this Agreement. Any amounts owed or liabilities incurred by you, in respect of this Agreement, may be satisfied solely from your assets. Without limiting the generality of the foregoing, in no event shall Lehman Brothers have recourse, whether by set-off or otherwise, with respect to any such amounts or liabilities incurred, to or against (a) any assets of any person or entity (including, without limitation, any person or entity whose account is under management of your investment manager) other than you, your successors and assigns, (b) any assets of any your affiliates, or (c) any assets of your investment manager or any affiliate of such investment manager.

**30.  HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31.  TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights. Upon your request, within a reasonable timeframe, Lehman Brothers will make available to you such recordings, or transcripts thereof, to the extent recordings are made by Lehman Brothers.

**32.  CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have as a matter of law. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable with respect the security interest granted herein. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33.  CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You have appointed your administrator, Citco Fund Services (Bermuda) Limited, and its affiliates ("Citco") to do various investor relations work, including the necessary anti-money laundering due diligence and representation letter(s) by Citco will be provided to Lehman Brothers upon execution of this Agreement. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

*PLEASE COMPLETE THIS INFORMATION AND SIGN THE APPROPRIATE SPACE BELOW:*

**THIS AGREEMENT IS DATED AS OF**          **June 18, 2007**

QUINTESSENCE FUND LP
_____
*Name of Customer*

_____     _____
*Address*                           *Country*

_____     _____
*City, State*                       *Zip Code + 4*

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

| | |
|---|---|
| *CUSTOMER NAME:* | Quintessence Fund LP |
| | *Individual or Printed Name of Company* |
| *PRINT NAME:* | QVT Associates GP LLC, its general partner |
| | *Printed Name and Title of Signatory or Name of General Partner if Signer is a Partnership* |
| *BY:* | |
| | Nicholas Brumm <br> Managing Member |
| *BY:* | |
| | Julian Sale <br> Authorized Signatory |

**ACCEPTED AND AGREED TO:**

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates
named herein

6 - 20 - 07

11

EXHIBIT A
AUTHORIZED PERSONS

<u>Name</u>                                                      <u>Specimen Signature</u>

**<u>Proposed Order</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                                  :          Chapter 11 Case No.
                                                       :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,               :          08-13555 (SCC)
                                                       :
                        Debtors.                       :          (Jointly Administered)
------------------------------------------------------------------x

### ORDER GRANTING PLAN ADMINISTRATOR'S FOUR HUNDRED EIGHTY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

Upon the four hundred eighty-ninth omnibus objection to claims, dated December 1, 2014 (the "Four Hundred Eighty-Ninth Omnibus Objection to Claims"),[1] of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, seeking to disallow and expunge the Claims pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF No. 6664], all as more fully described in the Four Hundred Eighty-Ninth Omnibus Objection to Claims; and due and proper notice of the Four Hundred Eighty-Ninth Omnibus Objection to Claims having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Four Hundred Eighty-Ninth Omnibus Objection to Claims is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Four Hundred Eighty-Ninth Omnibus Objection to Claims establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Four Hundred Eighth-Ninth Omnibus Objection to Claims.

ORDERED that the relief requested in the Four Hundred Eighty-Ninth Omnibus Objection to Claims is granted; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Claims listed on <u>Exhibit 1</u> annexed hereto are disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2015
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\95166576\8\58399.0011