UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

In re:

Lehman Brothers Holdings, Inc., et al.,

Debtors

Case No. 1:08-bk-13555 (SCC)

Chapter 11

Jointly Administered

### Declaration of James H. Aronoff
### December 8, 2014

## I. Scope of Work and Structure of Declaration

1. I am a Managing Director at Duff & Phelps, LLC ("Duff & Phelps") and work as a consultant advising clients on issues relating to asset origination, mortgage banking and due diligence, with a particular emphasis on matters relating to the capital markets and residential mortgage-backed securities ("RMBS"). I have more than 30 years of RMBS industry experience, including positions as Chairman and CEO of a residential mortgage company that originated loans and issued RMBS, as Head of the Fixed Income Structured Finance Group at Nomura Securities International, a broker-dealer and RMBS underwriter, and as a structured finance attorney. My resume is attached here to as Exhibit A. A more detailed summary of my Experience & Qualifications is attached hereto as Exhibit B.

2. Duff & Phelps has been retained by Alston & Bird LLP, Seward & Kissel LLP, Chapman and Cutler LLP, and Nixon Peabody LLP ("Law Firms"), counsel to Wilmington Trust, National Association, Wilmington Trust Company, Law Debenture Trust Company of New York, U.S. Bank National Association, and Deutsche Bank National Trust Company ("Trustee Group" or "Trustees") to provide analysis with respect to claims made by the Trustees against Lehman Brothers Holdings, Inc. and certain of its affiliates (collectively, "Lehman") and to provide an estimate of the repurchase price liability of Lehman in connection with breaches of certain representations and warranties (the "RMBS Claim").

3. In connection with our retention, my current assignment is to review and provide analysis of the *Declaration of Craig Pino* (ECF 47187) and the *Declaration of William Alread*, (ECF 47186), both filed December 3, 2014. I have also reviewed the *Declaration of Charles A. Parekh* (ECF 46078), filed November 14, 2014 (the "Parekh Report").

4. In connection with my analysis herein, I have reviewed the information contained in the above-mentioned reports, as well as any information listed in the *Declaration of James H Aronoff* (ECF 46085), dated August 21, 2014. I have received and reviewed the Deposition of Charles A. Parekh, dated December 5, 2014. I have also reviewed

the Lehman Protocol[1] (the "Protocol"). If additional information becomes available to me, I reserve the right to supplement and/or amend the opinions set forth herein.

5.  This Declaration, and its content, is not to be reproduced, distributed, disclosed, or used for any purposes other than in connection with the Motion without the prior written approval of the author.

6.  I am independent of the Trustees, the Law Firms, Lehman, and any other party with an interest in this matter. Duff & Phelps is being compensated for my work on this matter at an hourly rate of $915. This compensation does not depend in any way upon the opinions I express in this matter or upon the outcome of any related litigation.

## II.    Findings and Declaration

7.  Based upon my review of the documents noted above, my experience, background, education and training, I offer the following declarations and findings:

8.  The assumptions regarding cost and timing contained within the Parekh Report are reasonable and are not inconsistent with my industry experience.

9.  Based upon my experience, it is unrealistic to assume that multiple loan servicers will deliver over 209,000 loan files to the RMBS Trustees within the timeframes (i.e. five months)[2] put forth by Pino and Alread, and required under the Protocol.

10. For example, it took 18 to 20 months to deliver the loan files requested by the RMBS Trustees in connection with the initial 5,000 loans reviewed, of which only 4,579 were ultimately delivered.

---

[1] Exhibit C to *Lehman Brothers Holdings Inc.'s (A) Objection to RMBS Trustees' Motion to (I) Increase the Reserve to $12.143 Billion and (II) Estimate and Allow Their Claims for Covered Loans at $12.143 Billion Pursuant to Section 502(c) of the Bankruptcy Code, and (B) Cross-Motion to Establish a Protocol to Resolve Claims Filed by RMBS Trustees*, October 15, 2014 (ECF 46526).
[2] Pino Declaration, p. 3.

11. Based on my experience, the conditions precedent to the submission of a claim under the Protocol, including, but not limited to, the required contents of the mortgage loan file, are impractical and unduly burdensome.

12. The provision of the Protocol permitting the Plan Administrator to unilaterally alter the repurchase price to be paid with respect to an approved claim, in my experience, cannot be reconciled with industry custom and practice.

13. Based on Appendix B of the Pino Declaration, it would take 15.2 months to complete the review of 209,000 loans. Based upon this calculation and the limitation contained in the Protocol that the RMBS Trustees can only submit claims within 180 days (or six months), approximately 60% of the RMBS Trustees' potential claims will be "time-barred" if the Protocol were to be accepted.

14. Pino's assumptions about the number of loans that will be resolved pursuant to the Protocol lack foundation or support and are inconsistent with my experience. For example, on page 4 of his report Pino states that "[o]f the 46,113 claims denied by the Plan Administrator, an estimated 50% of the denials or 23,057 claims denials would be for incontestable reasons, and consequently not subject to further adjudication,"[3] without any meaningful rationale for this adjustment or explanation of what is meant by "incontestable reasons."

15. Based upon my analysis of the Protocol, the single most influential driver of how long it will take to resolve the RMBS Trustees' put-back claims is what has been referred to as Step 5. That is, how many of the RMBS Trustees' claims will have to be adjudicated by the Court because a satisfactory resolution has not been reached by the Plan Administrator and the related RMBS Trustee.

16. The analysis described in the Parekh Report assumes that approximately 96% of the potential RMBS claims will be resolved prior to Step 5, thus subjecting only 4% of such potential claims to be adjudicated by the Court. On the contrary, Pino assumes that 99.96% of all potential claims will be resolved prior to Step 5, leaving only 0.04% of potential claims to be adjudicated by the Court.

---

[3] Pino Declaration, p. 4.

17. Based upon my experience and my understanding of the nature and quality of the breach determinations made by the RMBS Trustees to date, it is my opinion that the Parekh Report describes a more realistic and reasonable projection of the time and expense associated with the administration of claims made under the Protocol.

18. Further, based upon my review and consideration of the Pino and Alread Declarations, it is my conclusion that the administration of the 209,395 loans at issue in this matter cannot be completed within a year.

19. I disagree with Alread's opinion that the Protocol is "a sound, efficient, workable, and cost-effective means of timely resolving [claims in this matter]." [4] On the contrary, in my opinion, the Protocol is commercially unreasonable, cumbersome, and unnecessarily bureaucratic. Further, the Protocol ignores well-established industry custom and practice with respect to the administration of put-back claims.

20. I disagree with Alread's assertion that the exclusive method to resolve large put-back claims is to administer such claims on a loan-by-loan basis. The market has evolved to employ statistical sampling and the extrapolation of the results of sampling to resolve put-back claims in appropriate circumstances, especially where, as here, the claims involve hundreds of thousands of loans across multiple trusts.

_____

James H. Aronoff

December 8, 2014

---

[4] Alread Declaration, p. 4.