Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555(SCC)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS INC.,

8

9           Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13              U.S. Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              November 3, 2014

18              3:35 PM

19

20  B E F O R E :

21  HON SHELLEY C. CHAPMAN

22  U.S. BANKRUPTCY JUDGE

23

24

25

1    Hearing re:  Doc #19888 Status Conference on Motion for

2    Omnibus Objection to Claims Re: Debtors' One Hundred Ninety-

3    First Omnibus Objection to Claims (Valued Derivative Claims)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

1    A P P E A R A N C E S :

2    JONES DAY

3         Attorneys for the Debtor

4         222 East 41st Street

5         New York, NY 10017-6702

6

7    BY:  JAYANT W. TAMBE, ESQ.

8         LAURI W. SWAYER, ESQ.

9         JENNIFER L. DEL MEDICO, ESQ.

10

11   PACIFICA LAW GROUP

12        Attorneys for TSA

13        1191 2nd Avenue

14        Suite 2100

15        Seattle, WA 98101-2945

16

17   BY:  KYMBERLY K. EVANSON, ESQ.

18        PAUL J. LAWRENCE, ESQ.

19        TAKI V. FLEVARIS, ESQ.

20

21

22

23

24

25

Page 4

```
 1                    P R O C E E D I N G S
 2           THE COURT:  Okay.  We have a lot to do today.  Why
 3    don't I start by getting your appearances.
 4           MR. TAMBE:  Good afternoon, Your Honor.  Jay
 5    Tambe, Lauri Sawyer, and Jennifer Del Medico from Jones Day
 6    for the debtors.
 7           THE COURT:  Okay.  Very good.
 8           MS. EVANSON:  Good afternoon, Your Honor.
 9    Kymberly Evanson, Paul Lawrence, and Taki Flevaris here for
10    the Washington State Tobacco Settlement Authority.
11           THE COURT:  Okay.  All right.
12           So first let me start with I understand that we
13    received a stipulation agreement and order regarding the
14    claims and the agreed reduction of the claim amounts, and
15    including an amendment of Lehman's -- or LBHI's objection,
16    right?
17           MR. TAMBE:  That's right, Your Honor.
18           THE COURT:  Okay.  The only question I have about
19    that, and that's driven by the error with respect to the
20    termination date of 2042 as opposed to --
21           MR. TAMBE:  Correct, Your Honor.
22           THE COURT:  -- 2032, right?
23           MR. TAMBE:  Yes.
24           THE COURT:  So the only thing that I had a
25    question about was the reservation of rights for LBSF to
```

Page 5

1    file an adversary complaint.

2              MR. TAMBE:  Correct, Your Honor.

3              THE COURT:  Yeah, I just don't understand what

4    that means.

5              MR. TAMBE:  What that means is what will be

6    decided in this trial is the valuation of the RFA.

7              THE COURT:  Right.

8              MR. TAMBE:  And Your Honor may decide it is some

9    number that is a claim or Your Honor may decide it's zero or

10   Your Honor may decide that the right valuation is

11   Mr. Gruer's (ph) valuation.

12             If the Court concludes that it's Mr. Gruer's

13   valuation --

14             THE COURT:  I see.

15             MR. TAMBE:  -- we will then file an adversary

16   complaint, we're still within time to do it, they've

17   reserved all of their rights to raise objections to

18   defenses.

19             THE COURT:  I understand.  Okay.  So it's not an

20   adversary that seek a do over of what we conclude here.

21             MR. TAMBE:  That would not be our intention, Your

22   Honor.

23             THE COURT:  Okay.

24             MR. TAMBE:  Yes.

25             THE COURT:  Just didn't understand that.  Okay.

Page 6

1    So we'll enter that on the docket today.

2            The second thing that I wanted to clarify was the

3    times that we're spending together.  So tomorrow starting at

4    9:00 and I'm going to have a hard stop somewhere around 3:20

5    to enable we to go up to the District Court.  So I'm going

6    to largely leave it to you folks to tell me when you want to

7    break for lunch, how long you want to break for lunch.  I've

8    got really good staying power much to the dismay of

9    witnesses sometimes, so we have to not, you know, run the

10   witnesses ragged, but I know you have an agreement eight

11   hours each side.  So tomorrow we have a half an hour each

12   for opening argument, right?

13           MR. TAMBE:  That's right.

14           THE COURT:  And then I'm just going to leave it to

15   you to figure out how long -- how many witnesses get put on

16   and to monitor the timing.  I'm not going to be keeping the

17   chess clock, right?

18           MR. TAMBE:  You're not.  We'll have someone do

19   that.  I think it'll be good practice for us at the end of

20   each day just to talk to each other and make sure we don't

21   have a disagreement of something as fundamental as that.

22           THE COURT:  Right.

23           MR. TAMBE:  We shouldn't.  We'll manage it.

24           THE COURT:  I mean it -- but then to that point

25   though just to be clear, I'm starting you at 9:00 tomorrow,

Page 7

1    but I hadn't intended to start at 9:00 on the other two

2    days.

3             MR. LAWRENCE:  Correct.

4             MR. TAMBE:  Yeah, I think --

5             THE COURT:  Is that --

6             MR. TAMBE:  Yeah, one of the issues is we might

7    ask for your indulgence on that point, because I think you

8    had said to us that it may be possible for you to start at

9    9:00, it's hard for you to go past 5:30.

10            THE COURT:  Right.

11            MR. TAMBE:  And if we're having -- if we're

12   stopping tomorrow at 3:20 we think certainly for the next

13   day, for Wednesday, we would like to start at 9:00.  It may

14   be we make enough progress on Wednesday --

15            THE COURT:  So why don't we -- why don't we

16   remember to discuss it at the end of the day tomorrow.

17            MR. TAMBE:  That'll be perfect.

18            THE COURT:  If I do have to start two of the three

19   days early I'd prefer it be the Wednesday rather than the

20   Thursday, and you know, 5:30 is a good place to stop.  If we

21   need another 10, 15 minutes to finish up a witness I'll be

22   able to finesse that.

23            MR. TAMBE:  Thank you.

24            THE COURT:  Okay.  And you have breakout rooms

25   here?  We've given you rooms.

Page 8

1          MR. TAMBE:  We do, Your Honor.

2          THE COURT:  And you know the drill, you'll allowed

3    to bring in food, and during a trial I relax the no drinks

4    rule.  You can have coffee just as long as you don't spill

5    and it clean up after yourselves.  And you laugh, but people

6    actually don't clean up after themselves.  So okay.  So

7    those are all the preliminaries.

8          Why don't I -- why don't we start with the

9    30(b)(6) issue and then go into the motions in limine, which

10   largely I'm prepared to tell you what my rulings are, but as

11   to a few I have -- I have some questions.

12         So I spent a great deal time with your submissions

13   on the 30(b)(6) issue.  Always great to learn about an issue

14   that you didn't know existed and to learn everything there

15   is to learn about it.

16         And what I'm going to do both of the 30(b)(6)

17   issue and all of the motions is I'm going to give you a

18   ruling with as much color around it as I can, but everything

19   will be incorporated into the decision on the merits so that

20   your points for appeal are preserved, so that if any of you

21   thinks on any of the points I've gotten this wrong you'll

22   have my reasoning in the opinion.  That's the way I --

23   that's just the way I do it, so.  I don't have time to write

24   perfect separate opinions on eight preliminary matters on

25   the eve of trial.

Page 9

```
 1              So on the 30(b)(6) witness issue based on a lot of
 2    time that I've spent with the cases, with the rule,
 3    secondary sources, et cetera, I think the right answer is as
 4    far as I'm concerned is that absolutely the gentleman can
 5    testify at trial, but only as to matters within his personal
 6    knowledge.
 7              You can submit the transcript of the 30(b)(6)
 8    deposition that you took, and I believe that the exceptions
 9    to -- I mean the -- let's just step back a moment and
10    pretend we're in law school, right?
11              I mean a 30(b)(6) witness is supposed to be the
12    corporate representative who's supposed to get smart and
13    educated on a bunch of topics.  Then you go and take that
14    deposition, right?
15              The 30(b)(6) concept as far as I'm concerned and
16    based on what I've read, really doesn't have a place at
17    trial, and if you have a 30(b) -- a so-called 30(b)(6)
18    witness at trial that would override or have the effect of
19    overriding the rules that preclude testimony based on other
20    than personal knowledge, and in my mind would introduce
21    potentially hearsay evidence that really shouldn't come in.
22              It comes in as admissions in the 30(b)(6)
23    deposition and you get that, and I don't think, Mr. Tambe or
24    Ms. Sawyer, that you're objecting to the designation of the
25    transcript, nor are you objecting to the testimony, as long
```

Page 10

```
 1    as the topics are within the witness's personal knowledge.

 2              MR. TAMBE:  We're not objecting to that use of a

 3    30(b)(6) transcript, but the only exception that we have

 4    proper objections that were made --

 5              THE COURT:  Sure.

 6              MR. TAMBE:  -- and preserved at the deposition.

 7              THE COURT:  Right.  Okay?  So that's my -- that's

 8    my disposition of the 30(b)(6).  Is that -- I want it to be

 9    clear so that there's no ambiguity.  Okay?

10              MR. TAMBE:  Sure.

11              THE COURT:  Okay.  All right.  So that's that one.

12              Then we have the two -- the five motions in limine

13    that were filed by Washington TSA and we have the motion of

14    Lehman to exclude the testimony of Mr. Kuri (ph) and

15    Mr. Hasteroc (ph).

16              MR. LAWRENCE:  Your Honor?

17              THE COURT:  Yes.

18              MR. LAWRENCE:  As I understood your prior ruling

19    at the prior hearing we had you were going to reserve ruling

20    on the current Hasteroc motion 'til after you heard their

21    testimony.  That -- is that being -- is that different?

22              THE COURT:  Well, I think -- yeah, I'm going to

23    hear their testimony.

24              MR. LAWRENCE:  Oh, okay.

25              THE COURT:  But I think reserving ruling in the
```

1    sense of that I think under any circumstances I could decide

2    after I hear someone's testimony there's a motion --

3              MR. LAWRENCE:  Sure.

4              THE COURT:  -- to exclude it, there's a motion to

5    -- similar motions have been made with respect to the expert

6    testimony that Lehman is offering.

7              MR. LAWRENCE:  There is a difference in the scope

8    of the motion.

9              THE COURT:  Okay.

10             MR. LAWRENCE:  And part of the reason I'm raising

11    the issue --

12             THE COURT:  Okay.

13             MR. LAWRENCE:  -- and Ms. Evanson will argue the

14    motion in limine, is that we did not understand we were

15    going to be arguing --

16             THE COURT:  You're not.

17             MR. LAWRENCE:  -- the motion to exclude.  All

18    right.

19             So you had raised that, so I wasn't sure if you

20    were going to get argument about that.

21             THE COURT:  Okay.

22             MR. LAWRENCE:  But the difference is excluding

23    part of -- excluding a particular opinion rather than the

24    entire --

25             THE COURT:  Understood.  Okay.  I mean I didn't

1    agree to a hearing on the motions separate and apart from

2    the time I had reserved for you for trial.

3              MR. LAWRENCE:  Right.

4              THE COURT:  So, you know, in the curfuffle

5    surrounding the 30(b)(6) it was mentioned somewhere that oh,

6    we're -- you know, we can deal with that when we have that

7    hearing on the motions in limine.  I didn't agree to a

8    hearing on the motions in limine.

9              If you want to be heard beyond the papers, which I

10   think the papers lay out the issues fine and I'm prepared to

11   rule on them, you know, I just thought going into the trial

12   you wanted to know where you stood.

13             Hasteroc and Kuri are testifying.  Okay?  All of

14   the -- let me take the motions one at a time.

15             Okay.  So motions one and two have to do with --

16   two have to do with Gruer and one has to do with Babble

17   (ph), so those motions are denied.

18             The testimony is coming in and, you know, you can

19   argue after I hear the testimony that I should completely

20   disregard it or that I should afford it no weight.  Okay?

21   So that's one and two.

22             Three we need to talk about.  So, I do recall the

23   discovery disputes related to the issue of whether or not

24   other states' RFA's calculations were relevant, and there

25   was an email by folks from Schwab Financial, my recollection

1   is, transmitting a New Jersey proof of claim and we had a

2   lot of argument back and forth about the relevance.

3          They're seeking to introduce it not for a

4   valuation of the termination amount but on the narrower

5   issue of the availability of quotes.  Because that's what --

6   that's what they're papers say.

7          MR. LAWRENCE:  You're talking about -- I'm sorry,

8   I should --

9          THE COURT:  Yes, go ahead.  Either one of you.

10         MR. LAWRENCE:  No, I just want to make sure I

11   understand.  You're talking about now the --

12         THE COURT:  The proofs of claim.

13         MR. LAWRENCE:  -- generally the other -- the other

14   claims or just the -- they're talking about more than just

15   the New Jersey claim.

16         THE COURT:  Your motion says you want to exclude

17   evidence or argument pertaining of proofs of claim filed by

18   other states.

19         MR. LAWRENCE:  Right.

20         THE COURT:  Right.

21         MR. LAWRENCE:  I just want to make clear that it's

22   well beyond New Jersey.

23         THE COURT:  The response that I got from Jones Day

24   says we're not -- in response to your argument that it's not

25   fair now to allow that to come in because we were precluded

Page 14

1   from getting it during discovery on the grounds that it

2   wasn't relevant.

3           Their response is it's not coming in on valuation,

4   it's coming in to test the assertion or push back on the

5   assertion that there were no quotes available, you couldn't

6   get a quote, which is a position that Washington TSA has

7   taken.

8           So now I say, okay, and further Jones Day says, a

9   proof of claim is a publicly filed document.  That's true,

10  but you still have hearsay issues embedded in the proofs of

11  claims.  Simply because somebody writes -- and I haven't

12  looked at them yet -- simply because somebody writes in

13  their loss calculation memo here are the three bids, in my

14  mind you would be offering that for the truth that those

15  three bids existed.  I have no way of knowing that.

16          MR. TAMBE:  I think there's a couple of aspects to

17  it.

18          THE COURT:  Okay.

19          MR. TAMBE:  One is I don't believe we will be

20  asking to admit into evidence --

21          THE COURT:  Okay.

22          MR. TAMBE:  -- the three proofs of claim.

23          THE COURT:  Okay.

24          MR. TAMBE:  The fact that they exist that in the

25  -- the public record, the public docket --

1          THE COURT:  Right.

2          MR. TAMBE:  -- has statements filed under penalty

3     of perjury like every other filing that someone purports to

4     have done the following would be used to impeach

5     Mr. Shapiro.

6          Mr. Shapiro claims to have run a process which is

7     completely undocumented.  We have evidence and we will

8     present evidence from other sources saying there were at

9     least indicative quotes available, in fact Kuri and Hasteroc

10    admit they were.

11         THE COURT:  But what you're -- but let's say --

12    let's say there's a proof of claim from Alaska that nobody

13    has -- that you're offering no first-hand knowledge of.  For

14    all we know, with not casting aspersions at Alaska, someone

15    might have made up the three quotes.

16         So it's indicative of nothing other than somebody,

17    as you said, filed a proof of claim on a public docket under

18    penalty of perjury.

19         So you can -- I think you can ask him about it,

20    but I don't think -- it doesn't come in for the truth of the

21    existence of the quotes reflected in the proof of claim.

22         MR. TAMBE:  I'll agree with that.

23         THE COURT:  Okay.

24         MR. TAMBE:  We wouldn't offer it for that purpose.

25         THE COURT:  Now to the extent that you're going to

Page 16

1    show Mr. Shapiro -- I forget New York or New Jersey -- which

2    he may or may not have personal knowledge of then we might

3    have a different situation.  But part of the problem that

4    I'm having is that I feel like I'm -- everyone has got a

5    different style of trying a case.  Your style obviously is a

6    lot of motions in limine, and that's fine, I just don't -- I

7    never -- you know, we don't know if it's actually going come

8    to that because we don't know how the testimony is going to

9    unfold.

10           So, Mr. Tambe, is agreeing, because I'm ruling,

11   that the -- the indicative quotes in the proofs of claim are

12   not going to come in for the truth of the matter asserted,

13   i.e., that those indicative quotes actually existed, except

14   to the extent that through the mouth of some witness and the

15   witness lists are in we can get around the hearsay problem.

16   Okay?

17           MR. LAWRENCE:  Yeah.

18           THE COURT:  Okay.  Okay in the sense that you hear

19   me, not in that you necessarily agree with me.

20           MR. LAWRENCE:  Probably okay in both sense.

21           THE COURT:  Okay.  Okay in the sense that at least

22   I thought carefully about what you both were saying.

23           Okay.  Let's talk about motion in limine number 4,

24   which is evidence or argument pertaining to settlement

25   and/or crystallization.

Page 17

1            So in my mind, again not having heard or seen your

2    evidence, those are two very different things.

3            Settlement as between you -- as between Washington

4    TSA and Lehman totally precluded under FRE 408 and we've

5    gone through that with respect to the mediation and other

6    things.

7            Washington TSA's communications with other third

8    parties about potentially selling its claim, this, that, or

9    the other thing in connection with an amount of the claim,

10   that's not settlement discussions, that's a non-protected --

11   in the absence of some other reason that that shouldn't be

12   disclosed that comes in in my view.  But I'm happy to hear

13   you on this one.

14           MS. EVANSON:  Your Honor, there are several

15   proposed exhibits that have to do with internal discussions,

16   minutes of board meetings or internal emails within

17   Washington TSA that have to do with identifying a potential

18   -- a potential number as far as a crystallization number

19   would go, and that's not necessarily vis-à-vis a third

20   party, that's a number they're trying to reach with Lehman

21   in order to move forward with the crystallization process.

22           THE COURT:  Well when we get to that point then

23   I'm going to have to look at the exhibit and make a

24   determination as to whether or not I believe that to be the

25   case, because if it's an internal communication that's

                                                                    Page 18

1    unrelated to settlement with Lehman and that's solely

2    related to monotizing the claim I think the latter comes in,

3    I think the former doesn't --

4              MS. EVANSON:  Sure.

5              THE COURT:  -- doesn't come in.

6              MS. EVANSON:  Sure.  Okay.

7              THE COURT:  So that's -- you know, that's another

8    one we'll have to see when we get there.

9              MS. EVANSON:  Fair enough.  Thank you.

10             THE COURT:  All right?

11             Ms. Sawyer, you're knitting your brow.

12             MS. SAWYER:  I just wanted to make sure I

13   understood the ruling.

14             THE COURT:  The -- well what's being said is that

15   there are going -- there may be internal communications that

16   reflect discussions of coming to a number, and the argument

17   is being made that that process was undertaken for the

18   purpose of settlement discussions with Lehman and therefore

19   should be excluded.

20             Based on the description that may be the case or I

21   might conclude that in fact it's not the case, that it's got

22   nothing to do with settling with Lehman, but it's got to do

23   with TSA's internal process for coming to a number for the

24   purpose of monotizing the claim, which isn't settlement

25   protected, and hopefully the document will be clearer than

Page 19

1    I'm being right now.

2            MS. SAWYER:  Thank you.

3            THE COURT:  But I mean we all agree settlement off

4    limits.

5            Okay.  So then that gets us to the fifth one,

6    which is evidence regarding the 2013 refunding of the 2002

7    bonds, and I think this one is difficult as well because the

8    parties seem to agree that the calculation needs to take

9    place as of the termination date, right?

10           So that what Lehman is saying is if everybody

11   agrees with that then anything that happened subsequent to

12   that if it's off limits for us, Lehman, it should be off

13   limits for you, TSA.

14           I can't tell exactly what you're going to say, but

15   I think there is some merit to the argument that if we're

16   opening the door to Monday morning quarterbacking, in other

17   words, looking at what happened a couple of years down the

18   road to shed light on the reasonableness or not or the

19   quality of what was done in the past, then we're opening the

20   door to that.  But I just can't tell enough to know whether

21   or not the refunding of the bonds is going to come into

22   play.  I don't even -- I would guess that they don't even

23   know because they don't know what you're going say.

24           So, I think on that one I have to tell you I'm

25   going to wait and see, but to me it seems right that it's

1  either -- if it's off limits it's off limits and they can't

2  bring it up, but to the extent that you go there and we're

3  introducing the future as a way of evaluating what happened

4  in the past it may well be that the refunding of the bonds

5  is relevant to that.

6          In other words if we're into actual loss land a

7  opposed to a calculation, if that makes sense.

8          So on that one I think I'm going to wait and see

9  as we get closer toward it, and I'll assume that somebody is

10  going to pop up and say we've arrived at the bond refunding

11  point and then I'll be able to see where we are on that to

12  know what the right answer is.  Okay?

13          MR. TAMBE:  Okay.

14          MS. SAWYER:  Okay.  Thank you, Your Honor.

15          THE COURT:  So I think that that's it.  No?  Did I

16  miss one?

17          MR. TAMBE:  It is it.  It is it.  There's just a

18  point of clarification.

19          THE COURT:  Okay.

20          MR. TAMBE:  I heard you loud and clear on Kuri and

21  Hasteroc --

22          THE COURT:  Right.

23          MR. TAMBE:  -- and I don't want to test the

24  Court's patience.

25          THE COURT:  No.

Page 21

```
 1              MR. TAMBE:  I assume at some point Mr. Hasteroc is

 2      going to take the stand and he's going to be -- his

 3      qualifications are going to be read in.

 4              We could just preserve our objection as part of my

 5      cross, I could deal with it, or I could do a voir dire.  But

 6      the only reason to do the voir dire would be to actually cut

 7      off his testimony at that point.

 8              THE COURT:  Yeah, I don't want to cut off his

 9      testimony.  I mean --

10              MR. TAMBE:  That answers the question.

11              THE COURT:  Yeah.  I mean so for the sake of

12      saving everybody's time --

13              MR. TAMBE:  Yeah.

14              THE COURT:  -- I think that from the documents

15      that have been submitted, you know, the argument is being

16      made that this is an ipse dixit type expert opinion and

17      presumably these folks are going to demonstrate why it

18      should be called something less pejorative than an ipse

19      dixit, even though it seems to be agreed that it was created

20      for this unique circumstance, and I'm going to hear what

21      they have to say and then I'll hear from you as to why I

22      should thoroughly disregard it.

23              MR. TAMBE:  That's right, Your Honor.

24              THE COURT:  Okay?

25              MR. TAMBE:  Thank you.
```

Page 22

```
 1                 THE COURT:  Is that --

 2                 MR. LAWRENCE:  Yes.

 3                 THE COURT:  -- okay?

 4                 MR. LAWRENCE:  I think there's one other issue.

 5                 THE COURT:  Okay.

 6                 MR. LAWRENCE:  Lehman has asked -- they like to

 7     pick on Mr. Shapiro -- they've asked that Mr. Shapiro be

 8     sequestered from testimony at trial.  We are agreeable to

 9     having him sequestered with respect to the TSA fact

10     witnesses who are testifying, but we believe it's

11     appropriate as an expert that he be able to sit in on the

12     testimony of Kuri and Hasteroc.

13                 Our order we've given them is that we have all the

14     fact witnesses followed by Mr. Hasteroc, Mr. Kuri, and

15     Mr. Shapiro, and then they have their experts in their case.

16                 THE COURT:  And you have a problem with that?

17                 MR. TAMBE:  I do, Your Honor.

18                 THE COURT:  Okay.

19                 MR. TAMBE:  Part of --

20                 THE COURT:  Because I would have -- I'm sorry, you

21     go first.

22                 MR. TAMBE:  Okay.  Part of the theme that we have

23     shared with the Court is --

24                 THE COURT:  Right.

25                 MR. TAMBE:  -- they have some inconsistencies --
```

```
 1              THE COURT:  Right.

 2              MR. TAMBE:  -- to put it mildly between the two

 3    experts.

 4              THE COURT:  Yes.

 5              MR. TAMBE:  They have Hasteroc followed by Kuri,

 6    if I can just lay out for you what my concern is.

 7              THE COURT:  Okay.

 8              MR. TAMBE:  I might challenge Hasteroc on a few

 9    things.  Mr. Shapiro, hearing that, one is forewarned in

10    terms of where Mr. Hasteroc has left him, but he may also

11    try and improve the lie as it were fore -- a golf term, not

12    a --

13              THE COURT:  Golf term, not a --

14              MR. TAMBE:  A golf term.

15              THE COURT:  -- not a perjury term, right.

16              MR. TAMBE:  -- for Mr. Kuri.  I have concerns

17    about that.  Because --

18              THE COURT:  So wait, do you have concerns about

19    Kuri being in the courtroom while Hasteroc is testifying?

20              MR. TAMBE:  I don't.  I don't.

21              THE COURT:  No.

22              MR. TAMBE:  It's Mr. Shapiro.

23              THE COURT:  Right.

24              MR. TAMBE:  I mean we can be quite open about

25    this, it's Mr. Shapiro.
```

Page 24

1         THE COURT:  Okay.  So Shapiro -- Hasteroc and Kuri

2    are going to testify.  They're the unique approach guys.

3         MR. TAMBE:  Yes.

4         THE COURT:  Okay.

5         MR. TAMBE:  Followed by Mr. Shapiro.

6         THE COURT:  Followed by Mr. Shapiro.  But then I

7    would think that one of the things that you're going to want

8    to do is to ask Mr. Shapiro all the things that you believe

9    are wrong with what Hasteroc and Kuri did.  No?  Or is it --

10   because of the different methodologies you're not mixing it

11   up?

12        MR. TAMBE:  It's really different methodologies,

13   and to the extent I want to ask Mr. Shapiro that I can ask

14   him off of the --

15        THE COURT:  Okay.  So then --

16        MR. TAMBE:  -- documents that were provided.

17        THE COURT:  -- then Hasteroc and Kuri come and go.

18        MR. TAMBE:  Yeah.

19        THE COURT:  And what prejudice is that there to

20   you that Shapiro has listened to it?

21        MR. TAMBE:  He shapes his testimony.  He shapes

22   his testimony to try and avoid the conflict, to try and

23   explain away the conflict.

24        THE COURT:  But the normal rule is that experts

25   get to hear each other testify.  So you have the same issue.

```
 1    You know the fact that Shapiro kind of was shifted kind of

 2    from a fact witness to -- I thought you were going somewhere

 3    else.  I mean the normal rule is that experts can listen to

 4    each other testify, and you will then have the ability to

 5    impeach Mr. Shapiro based on his prior deposition where he

 6    didn't have that opportunity, no?

 7              I'm just trying to follow --

 8              MR. LAWRENCE:  Well they have three depositions.

 9              MR. TAMBE:  A few depositions.  He's been deposed

10    three times, so we'll --

11              THE COURT:  Okay.

12              MR. TAMBE:  Yeah.  So we'll --

13              THE COURT:  Right.  So if he -- so if he hears

14    something and he thinks uh oh, that's, you know, it's not

15    adding up, the judge isn't buying it I'm going to shift a

16    little bit then you're going to -- you're going to impeach

17    him with prior testimony in which he was not so informed,

18    right?

19              MR. TAMBE:  I will do that.  I'll tell you what

20    the other concern is.

21              THE COURT:  Okay.

22              MR. TAMBE:  In the last four to six weeks we've

23    seen a couple of new theories that appeared nowhere in any

24    of the prior filings.  For example, there's a mistake in the

25    RFA.
```

Page 26

1          First off let me -- so it may well be the case

2     that Mr. Kuri and Mr. Hasteroc take the stand having read

3     the Daubert motion, for example --

4          THE COURT:  The mistake in the RFA being as if it

5     was Lehman?

6          MR. TAMBE:  Yeah.  That's in the argument, right.

7     That's an argument that -- at least to me it was.  So that's

8     what raises my concern.  What raises my concern is that

9     there's a shifting of theories and therefore the depositions

10    we've taken before may be useful to us to impeach, but they

11    may not.

12         THE COURT:  Okay.  But --

13         MR. TAMBE:  And the one witness that that raises

14    greater concern for me than anyone else is Mr. Shapiro.

15    That's as nicely as I can say it.

16         THE COURT:  Okay.  Go ahead, Mr. Lawrence.

17         MR. LAWRENCE:  I don't know where to begin.  But

18    normal ruling is as Your Honor said experts.  This new

19    theory that's a bunch of hockie (sic).  We've made that

20    argument that on the --

21         THE COURT:  The --

22         MR. LAWRENCE:  -- negotiation of the RFA since day

23    one, it doesn't -- that argument is irrelevant to

24    Mr. Shapiro's deposition, to Mr. Kuri's deposition, to

25    Mr. Hasteroc's deposition, Mr. Gruer's deposition.  None of

Page 27

```
1    them are arguing that as if it were Lehman it doesn't matter

2    because it was a mistake, they argue as if it -- where

3    Lehman doesn't matter because it doesn't matter in the

4    termination calculation under the definition of the RFA,

5    which their experts admit they did not use the as if it were

6    Lehman language.  So this is totally made up argument.

7              THE COURT:  But if we're going to -- so to the

8    extent that Shapiro is going to be present for Hasteroc and

9    Kuri's testimony the normal rules are going to apply --

10             MR. LAWRENCE:  Right.

11             THE COURT:  -- that he can't talk to anybody,

12   Shapiro.  He can't talk to you, he can't talk to Hasteroc or

13   Kuri.

14             MR. LAWRENCE:  Then I want that rule applied to

15   their experts, that Mr. Gruer and Mr. Babble can't talk to

16   them either.  Because they're going bring Gruer and Babble

17   into the courtroom to listen to the expert testimony.  Why

18   should Mr. Shapiro who is an expert be treated differently

19   than Mr. Gruer or Mr. Babble?  I don't follow the rationale,

20   because I knew that they'd want to bring in Gruer.  If

21   they're going to keep out Gruer and Babble that's a

22   different story.

23             MR. TAMBE:  Let me be clear.  Mr. Gruer and

24   Mr. Babble won't listen -- won't be in the courtroom when

25   Mr. Kuri, Mr. Hasteroc, or Mr. Shapiro testify.  They're not
```

Page 28

1    going to be here.  But I am at the end of the trial date

2    going talk to the experts about what came in and didn't come

3    in.

4            THE COURT:  Right.  No, you can talk to --

5            MR. TAMBE:  I'm allowed to do that.

6            THE COURT:  Of course you're going to talk to your

7    experts, I'm just talking about Hasteroc and Kuri testify --

8            MR. LAWRENCE:  And they can't talk to Shapiro.

9            THE COURT:  -- and they can't talk to Shapiro.

10           MR. LAWRENCE:  Oh, absolutely.  I'm sorry.

11           THE COURT:  Yeah.  No, that's --

12           MR. LAWRENCE:  Then that's --

13           THE COURT:  -- that's all I meant.

14           MR. LAWRENCE:  Of course.

15           THE COURT:  I mean he's going to sit here and he's

16   going to listen --

17           MR. LAWRENCE:  Yeah.

18           THE COURT:  -- but then you don't get to prep

19   Mr. Shapiro on how to handle inconsistencies.

20           MR. LAWRENCE:  Right.  I mean there are no

21   inconsistencies.

22           THE COURT:  Okay.  I'm being --

23           MR. LAWRENCE:  Right.

24           THE COURT:  -- hypothetical.

25           MR. LAWRENCE:  Yes.

Page 29

1                 THE COURT:  I'm being hypothetical.

2                 MR. LAWRENCE:  Yes.

3                 THE COURT:  Right?

4                 MR. LAWRENCE:  Right.

5                 THE COURT:  You don't get to -- whether we end at

6     5:00 or whether it's the middle of the day -- I mean just to

7     be clear --

8                 MR. LAWRENCE:  Sure.

9                 THE COURT:  -- you don't get to sit down with

10    Mr. Shapiro and say that Hasteroc and Kuri messed up you

11    have to do this, that, or the other thing, right?

12                MR. LAWRENCE:  No, that's correct, but again, just

13    to be clear, obviously they had asked a number of questions

14    about the inconsistency of Mr. Shapiro's at deposition and

15    he's talked about them.

16                THE COURT:  Sure.

17                MR. LAWRENCE:  Obviously we can prepare him with

18    respect to stuff they've asked about of him.

19                THE COURT:  Oh, yeah, right, that hasn't --

20                MR. LAWRENCE:  Absolutely.

21                THE COURT:  -- that hasn't happened yet.

22                MR. LAWRENCE:  Correct.

23                THE COURT:  I'm just trying to seize on the risk

24    of prejudice that they've --

25                MR. LAWRENCE:  Sure.

```
 1              THE COURT:  -- identified that the testimony gets

 2    molded.

 3              Now he's a smart gentleman and presumably he's

 4    going to hear it, he's going to pick up on it or he's not

 5    going to pick up on it, then you're going to put him on

 6    and --

 7              MR. LAWRENCE:  That's fine.

 8              THE COURT:  -- the chips will fall where they may,

 9    but without the --

10              MR. LAWRENCE:  Yes.

11              THE COURT:  Yes.  I won't say any --

12              MR. LAWRENCE:  And I won't do that any way, but

13    that's neither here nor there.

14              THE COURT:  I understand.  All right?

15              MR. TAMBE:  That's fine, Your Honor.

16              THE COURT:  Okay.

17              MR. LAWRENCE:  I think we're done.

18              THE COURT:  Anything else housekeeping or

19    otherwise?

20              MS. SAWYER:  I had a couple of housekeeping

21    things.

22              THE COURT:  Okay, sure.

23              MS. SAWYER:  And they're hopefully much less

24    contention than what we've --

25              THE COURT:  So -- okay.  So speaking of
```

Page 31

1    housekeeping I usually like to have -- what are you going to

2    be doing with the tech and with the screen and with the

3    whole -- you know, am I going to have -- I have your volume,

4    it's very thin, well done, and I have your volumes, but them

5    I'm looking at all those boxes and I get very nervous.

6         MR. TAMBE:  Contingency planning, Your Honor.

7         (Laughter)

8         MR. TAMBE:  Here's what we have.  What we envision

9    with each witness is we'll have a witness notebook --

10        THE COURT:  Perfect.

11        MR. TAMBE:  -- which will have the exhibits both

12   on cross for the cross witnesses --

13        THE COURT:  Perfect.

14        MR. TAMBE:  -- and for references that we want to

15   use you'll get two copies of those.

16        THE COURT:  That's absolutely -- that is -- that's

17   perfect.  Then I can leave --

18        MR. TAMBE:  So that's what a lot of that is.

19        THE COURT:  Okay.  Then I have leave my master set

20   in chambers, but the witness notebooks are the key to making

21   me extremely happy during the trial because I rely on them

22   to a tremendous extent.  So that's -- that's great.

23        MR. TAMBE:  And then in terms of technology we'll

24   have some demonstratives from time to time, for the opening

25   tomorrow I'll have some slides that I'll put up there.

Page 32

```
 1              THE COURT:  Okay.  That's you're going to put up

 2   on this?

 3              MR. TAMBE:  Well they'll go up on the -- I think

 4   it's all one screen.  It shows up there as well as there.

 5              THE COURT:  It's going to show up on my screen,

 6   your screens --

 7              MR. TAMBE:  Yeah, I know you're not a big fan of

 8   the big screen.  I --

 9              THE COURT:  I'll do whatever works for you guys

10   I'm happy to do.  That's by rule.

11              Now are we having a real-time court reporter?

12              MR. TAMBE:  I believe we are, yes.

13              THE COURT:  Okay.  Okay.

14              MR. TAMBE:  I think that's it on technology.

15              THE COURT:  I think that's it.

16              MR. TAMBE:  At least from our perspective.

17              THE COURT:  Anything else?

18              MS. SAWYER:  So I had just a couple things.

19              THE COURT:  Yeah, go ahead.

20              MS. SAWYER:  So there's some exhibits that we've

21   agreed in advance that can be admitted into evidence, and

22   I'm just curious like what time do you want us to try to

23   move those in?  Should we --

24              THE COURT:  I'd like to do it all at the end.

25              MS. SAWYER:  At the end.
```

Page 33

```
 1                THE COURT:  Yeah.

 2                MS. SAWYER:  So during the examinations then we

 3     can just use them and --

 4                THE COURT:  You can just use them as long as you

 5     -- we all have an understanding that you're responsible at

 6     the end for telling me what documents come into evidence.

 7                This doesn't sound like a situation in which

 8     sometimes the parties bring in 10,000 potential trial

 9     exhibits and they end up using 300 of them, but then they

10     want to admit into evidence all 10,000, which creates all

11     kinds of issues on appeal and otherwise.

12                It sounds as if you're on the same page in terms

13     of you're going to be affirmatively bringing to my attention

14     those documents that you want admitted into evidence.  Yes?

15                MR. LAWRENCE:  Yes, that's accurate, but I just

16     want to -- I just want to understand in terms of our

17     examination of witnesses to the extent there are objections

18     to documents --

19                THE COURT:  Sure.

20                MR. LAWRENCE:  -- do those need to be addressed

21     with the witness or are you going to reserve those for the

22     end of the case?

23                THE COURT:  I think you -- no, I think you -- make

24     the objection and then I'm going dispose of it before you

25     keep going --
```

1          MR. LAWRENCE:  Okay.  I -- that's --

2          THE COURT:  -- with the document.

3          I simply meant that we don't need to have the

4  hiccup of after the use of every document I move into

5  evidence, you know, plaintiff's 13 or whatever you're naming

6  -- you're numbering convention is.  That's all I meant.

7          MR. LAWRENCE:  Great.  Thank you.

8          THE COURT:  But --

9          MS. SAWYER:  If there's an objection being

10  discussed should we -- can we ask for a ruling at that time

11  or not?

12          THE COURT:  Yeah.

13          MS. SAWYER:  Okay.  All right.

14          THE COURT:  Yeah.

15          MS. SAWYER:  I just --

16          THE COURT:  Yeah.

17          MS. SAWYER:  Okay.

18          THE COURT:  I mean I'm here to try to do this in

19  the way that makes you, you know, the most at ease, the most

20  efficient, the most happy.

21          MS. SAWYER:  Then there's also two exhibits that

22  we believe should be admitted into evidence based upon

23  deposition designations of a witness who's not going to be

24  now testifying at the trial but we intend to use during the

25  examinations.  Is -- is it fine for me to just use those or

1    our request to just use those and we deal with the objection

2    after the fact or is there something we should deal with --

3              THE COURT:  There's going to be an objection to

4    the use of --

5              MS. SAWYER:  -- up in advance?

6              MR. LAWRENCE:  I have no idea what exhibits you're

7    talking about.

8              THE COURT:  I mean this is in the category of --

9              MS. SAWYER:  It's Debtors' Exhibit 25 and 26.

10             THE COURT:  This is in the category of bridges

11   that we cross when we get to them.

12             MS. SAWYER:  Okay.  I just am trying to streamline

13   the presentation.

14             MR. LAWRENCE:  We'll look at -- we'll look at

15   those.

16             MS. SAWYER:  Okay.  All right.

17             THE COURT:  Yeah.

18             MR. LAWRENCE:  Go ahead.

19             MS. SAWYER:  Okay.  Then we also have a video that

20   Lehman may present if there's time of Mr. Bregara's (ph)

21   testimony and there's some objections that have been

22   launched to the deposition designations of that video.  For

23   purposes of, you know, efficient playing --

24             THE COURT:  So you wanted to show -- you want to

25   give me a thumb drive with the video or you actually want to

Page 36

1    play it during the course of the trial?

2              MS. SAWYER:  We actually -- to the extent there's

3    time we might play it during the course of the hearing.

4              THE COURT:  Okay.

5              MS. SAWYER:  And we've shared the video with them

6    and included --

7              THE COURT:  Okay.

8              MS. SAWYER:  -- designations from both sides, but

9    there's some evident their objections and some form

10   objections --

11             THE COURT:  Okay.

12             MS. SAWYER:  -- that we believe the form

13   objections have been waived, but there's a couple

14   evidentiary objections --

15             THE COURT:  Okay.

16             MS. SAWYER:  -- to portions of the video.  And so

17   we thought it might be useful to resolve those --

18             THE COURT:  Well it's portions of the video

19   meaning portions of the testimony.

20             MS. SAWYER:  Yes.

21             THE COURT:  Okay.  So I guess what you'll have to

22   do is in advance of that you're going to have to give me the

23   portions of the transcript and some short indication of, you

24   know, what the objections are --

25             MR. LAWRENCE:  Sure.

Page 37

1              THE COURT:  -- and I'll give you a disposition on

2      that.

3              MS. SAWYER:  Okay.

4              MR. LAWRENCE:  Thank you, Your Honor.

5              THE COURT:  Okay?  Okay.  I mean, you know, if

6      it's --

7              MR. LAWRENCE:  That makes sense.

8              THE COURT:  Okay.  I mean if at any time --

9              MS. SAWYER:  We just wanted to figure out how to

10     deal with it.

11             THE COURT:  Yeah.  No, if at any time I'm doing

12     something that you think is not the way you'd prefer to do

13     it, other than the way I rule, you should -- you should just

14     let me know.  Okay?  I know this is a very tiring and time

15     consuming exercise.

16             So we'll start at 9:00, we'll keep an eye of the

17     witnesses so their comfort is not sacrificed for our time

18     keeping, and I'll find out what the very latest minute is

19     that I can leave tomorrow.

20         (Whereupon these proceedings were concluded at 4:10 PM)

21

22

23

24

25

1                         I N D E X

2

3                        RULINGS

4                                              Page        Line

5    30(b)(6)                                    9           1

6    Motion in Limine No. 1                     12          17

7    Motion in Limine No. 2                     12          17

8    Motion in Limine No. 3                     16          10

9    Motion in Limine No. 4                     19           3

10   Motion in Limine No. 5                     20           8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn South

    Digitally signed by Dawn South
    DN: cn=Dawn South, o, ou,
    email=digital1@veritext.com,
    c=US
    Date: 2014.11.12 16:41:03 -05'00'

    _____

7    Dawn South

     AAERT Certified Electronic Transcriber CET**D-408

8

9    Veritext

10   330 Old Country Road

11   Suite 300

12   Mineola, NY 11501

13

14   Date:  November 12, 2014

15

16

17

18

19

20

21

22

23

24

25

[08-13555 - case]                                                    Page 1

## 0

**08-13555**  1:3

## 1

**1**  38:5,6
**10**  7:21 38:8
**10,000**  33:8,10
**10017-6702**  3:5
**11501**  39:12
**1191**  3:13
**12**  38:6,7 39:14
**13**  34:5
**15**  7:21
**16**  38:8
**17**  38:6,7
**19**  38:9
**19888**  2:1

## 2

**2**  38:7
**20**  38:10
**2002**  19:6
**2013**  19:6
**2014**  1:17 39:14
**2032**  4:22
**2042**  4:20
**2100**  3:14
**222**  3:4
**25**  35:9
**26**  35:9
**2nd**  3:13

## 3

**3**  1:17 38:8,9
**30**  8:9,13,16 9:1,7
   9:11,15,17,17,22
   10:3,8 12:5 38:5
**300**  33:9 39:11
**330**  39:10
**3:35**  1:18

## 4

**4**  16:23 38:9
**408**  17:4 39:7
**41st**  3:4
**4:10**  37:20

## 5

**5**  38:10
**5:00**  29:6
**5:30**  7:9,20

## 6

**6**  8:9,13,16 9:1,7,11
   9:15,17,22 10:3,8
   12:5 38:5

## 8

**8**  38:10

## 9

**9**  38:5
**98101-2945**  3:15
**9:00**  6:4,25 7:1,9,13
   37:16

## a

**aaert**  39:7
**ability**  25:4
**able**  7:22 20:11
   22:11
**absence**  17:11
**absolutely**  9:4
   28:10 29:20 31:16
**accurate**  33:15 39:4
**actual**  20:6
**adding**  25:15
**addressed**  33:20
**admissions**  9:22
**admit**  14:20 15:10
   27:5 33:10
**admitted**  32:21
   33:14 34:22
**advance**  32:21 35:5
   36:22
**adversary**  5:1,15,20
**affirmatively**  33:13
**afford**  12:20
**afternoon**  4:4,8
**agree**  12:1,7 15:22
   16:19 19:3,8
**agreeable**  22:8
**agreed**  4:14 21:19
   32:21
**agreeing**  16:10

**agreement**  4:13
   6:10
**agrees**  19:11
**ahead**  13:9 26:16
   32:19 35:18
**alaska**  15:12,14
**allow**  13:25
**allowed**  8:2 28:5
**ambiguity**  10:9
**amendment**  4:15
**amount**  13:4 17:9
**amounts**  4:14
**answer**  9:3 20:12
**answers**  21:10
**anybody**  27:11
**apart**  12:1
**appeal**  8:20 33:11
**appearances**  4:3
**appeared**  25:23
**applied**  27:14
**apply**  27:9
**approach**  24:2
**appropriate**  22:11
**argue**  11:13 12:19
   27:2
**arguing**  11:15 27:1
**argument**  6:12
   11:20 13:2,17,24
   16:24 18:16 19:15
   21:15 26:6,7,20,23
   27:6
**arrived**  20:10
**asked**  22:6,7 29:13
   29:18
**asking**  14:20
**aspects**  14:16
**aspersions**  15:14
**asserted**  16:12
**assertion**  14:4,5
**assume**  20:9 21:1
**attention**  33:13
**attorneys**  3:3,12
**authority**  4:10
**availability**  13:5
**available**  14:5 15:9
**avenue**  3:13

**avoid**  24:22

## b

**b**  1:20 8:9,13,16 9:1
   9:7,11,15,17,17,22
   10:3,8 12:5 38:5
**babble**  12:16 27:15
   27:16,19,21,24
**back**  9:9 13:2 14:4
**bankruptcy**  1:1,13
   1:22
**based**  9:1,16,19
   18:20 25:5 34:22
**believe**  9:8 14:19
   17:24 22:10 24:8
   32:12 34:22 36:12
**beyond**  12:9 13:22
**bids**  14:13,15
**big**  32:7,8
**bit**  25:16
**board**  17:16
**bond**  20:10
**bonds**  19:7,21 20:4
**bowling**  1:14
**boxes**  31:5
**break**  6:7,7
**breakout**  7:24
**bregara's**  35:20
**bridges**  35:10
**bring**  8:3 20:2
   27:16,20 33:8
**bringing**  33:13
**brothers**  1:7
**brow**  18:11
**bunch**  9:13 26:19
**buying**  25:15

## c

**c**  1:21 3:1 4:1 39:1,1
**calculation**  14:13
   19:8 20:7 27:4
**calculations**  12:24
**called**  9:17 21:18
**carefully**  16:22
**case**  1:3 16:5 17:25
   18:20,21 22:15 26:1
   33:22

cases  9:2
casting  15:14
category  35:8,10
certainly  7:12
certified  39:7
certify  39:3
cet  39:7
cetera  9:3
challenge  23:8
chambers  31:20
chapman  1:21
chess  6:17
chips  30:8
circumstance  21:20
circumstances  11:1
claim  4:14 5:9 13:1
  13:12,15,17 14:9,22
  15:12,17,21 16:11
  17:8,9 18:2,24
claims  2:2,3,3 4:14
  13:14 14:11 15:6
clarification  20:18
clarify  6:2
clean  8:5,6
clear  6:25 10:9
  13:21 20:20 27:23
  29:7,13
clearer  18:25
clock  6:17
closer  20:9
coffee  8:4
color  8:18
come  9:21 13:25
  15:20 16:7,12 18:5
  19:21 24:17 28:2
  33:6
comes  9:22 17:12
  18:2
comfort  37:17
coming  12:18 14:3
  14:4 18:16,23
communication
  17:25
communications
  17:7 18:15
complaint  5:1,16

completely  12:19
  15:7
concept  9:15
concern  23:6 25:20
  26:8,8,14
concerned  9:4,15
concerns  23:16,18
conclude  5:20 18:21
concluded  37:20
concludes  5:12
conference  2:1
conflict  24:22,23
connection  17:9
consuming  37:15
contention  30:24
contingency  31:6
convention  34:6
copies  31:15
corporate  9:12
correct  4:21 5:2 7:3
  29:12,22
country  39:10
couple  14:16 19:17
  25:23 30:20 32:18
  36:13
course  28:6,14 36:1
  36:3
court  1:1,13 4:2,7
  4:11,18,22,24 5:3,7
  5:12,14,19,23,25
  6:5,14,22,24 7:5,10
  7:15,18,24 8:2 10:5
  10:7,11,17,22,25
  11:4,9,12,16,21,25
  12:4 13:9,12,16,20
  13:23 14:18,21,23
  15:1,11,23,25 16:18
  16:21 17:22 18:5,7
  18:10,14 19:3 20:15
  20:19,22,25 21:8,11
  21:14,24 22:1,3,5
  22:16,18,20,23,24
  23:1,4,7,13,15,18
  23:21,23 24:1,4,6
  24:15,17,19,24
  25:11,13,21 26:4,12
  26:16,21 27:7,11

28:4,6,9,11,13,15
28:18,22,24 29:1,3
29:5,9,16,19,21,23
30:1,8,11,14,16,18
30:22,25 31:10,13
31:16,19 32:1,5,9
32:11,13,15,17,19
32:24 33:1,4,19,23
34:2,8,12,14,16,18
35:3,8,10,17,24
36:4,7,11,15,18,21
37:1,5,8,11
court's  20:24
courtroom  23:19
  27:17,24
created  21:19
creates  33:10
cross  21:5 31:12,12
  35:11
crystallization
  16:25 17:18,21
curfuffle  12:4
curious  32:22
current  10:20
cut  21:6,8

d

d  4:1 38:1 39:7
date  4:20 19:9 28:1
  39:14
daubert  26:3
dawn  2:25 39:3,7
day  3:2 4:5 6:20
  7:13,16 13:23 14:8
  26:22 29:6
days  7:2,19
deal  8:12 12:6 21:5
  35:1,2 37:10
debtor  1:9 3:3
debtors  2:2 4:6 35:9
decide  5:8,9,10 11:1
decided  5:6
decision  8:19
defenses  5:18
definition  27:4
del  3:9 4:5
demonstrate  21:17

demonstratives
  31:24
denied  12:17
deposed  25:9
deposition  9:8,14
  9:23 10:6 25:5
  26:24,24,25,25
  29:14 34:23 35:22
depositions  25:8,9
  26:9
derivative  2:3
description  18:20
designation  9:24
designations  34:23
  35:22 36:8
determination
  17:24
difference  11:7,22
different  10:21 16:3
  16:5 17:2 24:10,12
  27:22
differently  27:18
difficult  19:7
dire  21:5,6
disagreement  6:21
disclosed  17:12
discovery  12:23
  14:1
discuss  7:16
discussed  34:10
discussions  17:10
  17:15 18:16,18
dismay  6:8
dispose  33:24
disposition  10:8
  37:1
disputes  12:23
disregard  12:20
  21:22
district  1:2 6:5
dixit  21:16,19
doc  2:1
docket  6:1 14:25
  15:17
document  14:9
  18:25 34:2,4

documents   21:14
  24:16 33:6,14,18
doing   31:2 37:11
door   19:16,20
drill   8:2
drinks   8:3
drive   35:25
driven   4:19

**e**

e   1:20,20 3:1,1 4:1,1
  38:1 39:1
early   7:19
ease   34:19
east   3:4
educated   9:13
effect   9:18
efficient   34:20
  35:23
eight   6:10 8:24
either   13:9 20:1
  27:16
electronic   39:7
email   12:25
emails   17:16
embedded   14:10
enable   6:5
enter   6:1
entire   11:24
envision   31:8
error   4:19
esq   3:7,8,9,17,18,19
et   9:3
evaluating   20:3
evanson   3:17 4:8,9
  11:13 17:14 18:4,6
  18:9
eve   8:25
everybody   19:10
everybody's   21:12
evidence   9:21 13:17
  14:20 15:7,8 16:24
  17:2 19:6 32:21
  33:6,10,14 34:5,22
evident   36:9
evidentiary   36:14
exactly   19:14

examination   33:17
examinations   33:2
  34:25
example   25:24 26:3
exception   10:3
exceptions   9:8
exclude   10:14 11:4
  11:17 13:16
excluded   18:19
excluding   11:22,23
exercise   37:15
exhibit   17:23 35:9
exhibits   17:15
  31:11 32:20 33:9
  34:21 35:6
exist   14:24
existed   8:14 14:15
  16:13
existence   15:21
expert   11:5 21:16
  22:11 27:17,18
experts   22:15 23:3
  24:24 25:3 26:18
  27:5,15 28:2,7
explain   24:23
extent   15:25 16:14
  20:2 24:13 27:8
  31:22 33:17 36:2
extremely   31:21
eye   37:16

**f**

f   1:20 39:1
fact   14:24 15:9
  18:21 22:9,14 25:1
  25:2 35:2
fair   13:25 18:9
fall   30:8
fan   32:7
far   9:4,15 17:18
feel   16:4
fifth   19:5
figure   6:15 37:9
file   5:1,15
filed   10:13 13:17
  14:9 15:2,17
filing   15:3

filings   25:24
financial   12:25
find   37:18
fine   12:10 16:6 30:7
  30:15 34:25
finesse   7:22
finish   7:21
first   2:3 4:12 15:13
  22:21 26:1
five   10:12
flevaris   3:19 4:9
folks   6:6 12:25
  21:17
follow   25:7 27:19
followed   22:14 23:5
  24:5,6
following   15:4
food   8:3
fore   23:11
foregoing   39:3
forewarned   23:9
forget   16:1
form   36:9,12
former   18:3
forth   13:2
forward   17:21
four   25:22
fre   17:4
fundamental   6:21
further   14:8
future   20:3

**g**

g   4:1
generally   13:13
gentleman   9:4 30:3
getting   4:3 14:1
give   8:17 35:25
  36:22 37:1
given   7:25 22:13
go   6:5 7:9 8:9 9:13
  13:9 17:19 20:2
  22:21 24:17 26:16
  32:3,19 35:18
going   6:4,5,14,16
  8:16,17 10:19,22
  11:15,20 12:11
  15:25 16:7,8,12

17:23 18:15 19:14
  19:21,23,25 20:8,10
  21:2,2,3,17,20 24:2
  24:7 25:2,15,16,16
  27:7,8,9,16,21 28:1
  28:2,6,15,16 30:4,4
  30:5,5 31:1,3 32:1,5
  33:13,21,24,25
  34:23 35:3 36:22
golf   23:11,13,14
good   4:4,7,8 6:8,19
  7:20
gotten   8:21
great   8:12,13 31:22
  34:7
greater   26:14
green   1:14
grounds   14:1
group   3:11
gruer   12:16 27:15
  27:16,19,20,21,23
gruer's   5:11,12
  26:25
guess   19:22 36:21
guys   24:2 32:9

**h**

half   6:11
hand   15:13
handle   28:19
happened   19:11,17
  20:3 29:21
happy   17:12 31:21
  32:10 34:20
hard   6:4 7:9
hasteroc   10:15,20
  12:13 15:9 20:21
  21:1 22:12,14 23:5
  23:8,10,19 24:1,9
  24:17 26:2 27:8,12
  27:25 28:7 29:10
hasteroc's   26:25
hear   10:23 11:2
  12:19 16:18 17:12
  21:20,21 24:25 30:4
heard   10:20 12:9
  17:1 20:20

**hearing** 2:1 10:19
  12:1,7,8 23:9 36:3
**hears** 25:13
**hearsay** 9:21 14:10
  16:15
**hiccup** 34:4
**hockie** 26:19
**holdings** 1:7
**hon** 1:21
**honor** 4:4,8,17,21
  5:2,8,9,10,22 8:1
  10:16 17:14 20:14
  21:23 22:17 26:18
  30:15 31:6 37:4
**hopefully** 18:25
  30:23
**hour** 6:11
**hours** 6:11
**housekeeping** 30:18
  30:20 31:1
**hundred** 2:2
**hypothetical** 28:24
  29:1

**i**

**i.e.** 16:13
**idea** 35:6
**identified** 30:1
**identifying** 17:17
**impeach** 15:4 25:5
  25:16 26:10
**improve** 23:11
**included** 36:6
**including** 4:15
**inconsistencies**
  22:25 28:19,21
**inconsistency** 29:14
**incorporated** 8:19
**indication** 36:23
**indicative** 15:9,16
  16:11,13
**indulgence** 7:7
**informed** 25:17
**intend** 34:24
**intended** 7:1
**intention** 5:21
**internal** 17:15,16
  17:25 18:15,23

**introduce** 9:20 13:3
**introducing** 20:3
**ipse** 21:16,18
**irrelevant** 26:23
**issue** 8:9,13,13,17
  9:1 11:11 12:23
  13:5 22:4 24:25
**issues** 7:6 12:10
  14:10 33:11
**it'll** 6:19

**j**

**j** 3:18
**jay** 4:4
**jayant** 3:7
**jennifer** 3:9 4:5
**jersey** 13:1,15,22
  16:1
**jones** 3:2 4:5 13:23
  14:8
**judge** 1:22 25:15

**k**

**k** 3:17
**keep** 27:21 33:25
  37:16
**keeping** 6:16 37:18
**key** 31:20
**kind** 25:1,1
**kinds** 33:11
**knew** 27:20
**knitting** 18:11
**know** 6:9,10 7:20
  8:2,14 12:4,6,11,12
  12:18 15:14 16:7,7
  16:8 18:7 19:20,23
  19:23 20:12 21:15
  25:1,14 26:17 31:3
  32:7 34:5,19 35:23
  36:24 37:5,14,14
**knowing** 14:15
**knowledge** 9:6,20
  10:1 15:13 16:2
**kuri** 10:14 12:13
  15:9 20:20 22:12,14
  23:5,16,19 24:1,9
  24:17 26:2 27:13,25
  28:7 29:10

**kuri's** 26:24 27:9
**kymberly** 3:17 4:9

**l**

**l** 3:9
**land** 20:6
**language** 27:6
**largely** 6:6 8:10
**latest** 37:18
**laugh** 8:5
**laughter** 31:7
**launched** 35:22
**lauri** 3:8 4:5
**law** 3:11 9:10
**lawrence** 3:18 4:9
  7:3 10:16,18,24
  11:3,7,10,13,17,22
  12:3 13:7,10,13,19
  13:21 16:17,20 22:2
  22:4,6 25:8 26:16
  26:17,22 27:10,14
  28:8,10,12,14,17,20
  28:23,25 29:2,4,8
  29:12,17,20,22,25
  30:7,10,12,17 33:15
  33:20 34:1,7 35:6
  35:14,18 36:25 37:4
  37:7
**lay** 12:10 23:6
**lbhi's** 4:15
**lbsf** 4:25
**learn** 8:13,14,15
**leave** 6:6,14 31:17
  31:19 37:19
**left** 23:10
**lehman** 1:7 10:14
  11:6 17:4,20 18:1
  18:18,22 19:10,12
  22:6 26:5 27:1,3,6
  35:20
**lehman's** 4:15
**lie** 23:11
**light** 19:18
**limine** 8:9 10:12
  11:14 12:7,8 16:6
  16:23 38:6,7,8,9,10
**limits** 19:4,12,13
  20:1,1

**line** 38:4
**listen** 25:3 27:17,24
  28:16
**listened** 24:20
**lists** 16:15
**little** 25:16
**long** 6:7,15 8:4 9:25
  33:4
**look** 17:23 35:14,14
**looked** 14:12
**looking** 19:17 31:5
**loss** 14:13 20:6
**lot** 4:2 9:1 13:2 16:6
  31:18
**loud** 20:20
**lunch** 6:7,7

**m**

**making** 31:20
**manage** 6:23
**master** 31:19
**matter** 1:5 16:12
  27:1,3,3
**matters** 8:24 9:5
**mean** 6:24 9:9,11
  11:25 19:3 21:9,11
  23:24 25:3 28:15,20
  29:6 34:18 35:8
  37:5,8
**meaning** 36:19
**means** 5:4,5
**meant** 28:13 34:3,6
**mediation** 17:5
**medico** 3:9 4:5
**meetings** 17:16
**memo** 14:13
**mentioned** 12:5
**merit** 19:15
**merits** 8:19
**messed** 29:10
**methodologies**
  24:10,12
**middle** 29:6
**mildly** 23:2
**mind** 9:20 14:14
  17:1
**mineola** 39:12

**minute** 37:18
**minutes** 7:21 17:16
**mistake** 25:24 26:4
  27:2
**mixing** 24:10
**molded** 30:2
**moment** 9:9
**monday** 19:16
**monitor** 6:16
**monotizing** 18:2,24
**morning** 19:16
**motion** 2:1 10:13,20
  11:2,4,8,14,17
  13:16 16:23 26:3
  38:6,7,8,9,10
**motions** 8:9,17
  10:12 11:5 12:1,7,8
  12:14,15,17 16:6
**mouth** 16:14
**move** 17:21 32:23
  34:4

**n**

**n** 3:1 4:1 38:1 39:1
**naming** 34:5
**narrower** 13:4
**necessarily** 16:19
  17:19
**need** 7:21 12:22
  33:20 34:3
**needs** 19:8
**negotiation** 26:22
**neither** 30:13
**nervous** 31:5
**never** 16:7
**new** 1:2,15,15 3:5
  13:1,15,22 16:1,1
  25:23 26:18
**nicely** 26:15
**ninety** 2:2
**non** 17:10
**normal** 24:24 25:3
  26:18 27:9
**notebook** 31:9
**notebooks** 31:20
**november** 1:17
  39:14

**number** 5:9 16:23
  17:18,18,20 18:16
  18:23 29:13
**numbering** 34:6
**ny** 3:5 39:12

**o**

**o** 1:20 4:1 39:1
**objecting** 9:24,25
  10:2
**objection** 2:2,3 4:15
  21:4 33:24 34:9
  35:1,3
**objections** 5:17
  10:4 33:17 35:21
  36:9,10,13,14,24
**obviously** 16:5
  29:13,17
**offer** 15:24
**offering** 11:6 14:14
  15:13
**oh** 10:24 12:5 25:14
  28:10 29:19
**okay** 4:2,7,11,18
  5:19,23,25 7:24 8:6
  10:7,9,11,24 11:9
  11:12,21,25 12:13
  12:15,20 14:8,18,21
  14:23 15:23 16:16
  16:18,18,20,21,21
  16:23 18:6 19:5
  20:12,13,14,19
  21:24 22:3,5,18,22
  23:7 24:1,4,15
  25:11,21 26:12,16
  28:22 30:16,22,25
  31:19 32:1,13,13
  34:1,13,17 35:12,16
  35:19 36:4,7,11,15
  36:21 37:3,5,5,8,14
**old** 39:10
**omnibus** 2:2,3
**open** 23:24
**opening** 6:12 19:16
  19:19 31:24
**opinion** 8:22 11:23
  21:16

**opinions** 8:24
**opportunity** 25:6
**opposed** 4:20 20:7
**order** 4:13 17:21
  22:13
**override** 9:18
**overriding** 9:19

**p**

**p** 3:1,1 4:1
**pacifica** 3:11
**page** 33:12 38:4
**papers** 12:9,10 13:6
**part** 11:10,23 16:3
  21:4 22:19,22
**particular** 11:23
**parties** 17:8 19:8
  33:8
**party** 17:20
**patience** 20:24
**paul** 3:18 4:9
**pejorative** 21:18
**penalty** 15:2,18
**people** 8:5
**perfect** 7:17 8:24
  31:10,13,17
**perjury** 15:3,18
  23:15
**personal** 9:5,20
  10:1 16:2
**perspective** 32:16
**pertaining** 13:17
  16:24
**ph** 5:11 10:14,15
  12:17 35:20
**pick** 22:7 30:4,5
**place** 7:20 9:16 19:9
**plaintiff's** 34:5
**planning** 31:6
**play** 19:22 36:1,3
**playing** 35:23
**pm** 1:18 37:20
**point** 6:24 7:7 17:22
  20:11,18 21:1,7
**points** 8:20,21
**pop** 20:10
**portions** 36:16,18
  36:19,23

**position** 14:6
**possible** 7:8
**potential** 17:17,18
  33:8
**potentially** 9:21
  17:8
**power** 6:8
**practice** 6:19
**preclude** 9:19
**precluded** 13:25
  17:4
**prefer** 7:19 37:12
**prejudice** 24:19
  29:24
**preliminaries** 8:7
**preliminary** 8:24
**prep** 28:18
**prepare** 29:17
**prepared** 8:10
  12:10
**present** 15:8 27:8
  35:20
**presentation** 35:13
**preserve** 21:4
**preserved** 8:20 10:6
**presumably** 21:17
  30:3
**pretend** 9:10
**prior** 10:18,19 25:5
  25:17,24
**probably** 16:20
**problem** 16:3,15
  22:16
**proceedings** 37:20
  39:4
**process** 15:6 17:21
  18:17,23
**progress** 7:14
**proof** 13:1 14:9
  15:12,17,21
**proofs** 13:12,17
  14:10,22 16:11
**proper** 10:4
**proposed** 17:15
**protected** 17:10
  18:25

[provided - speaking]                                                                                      Page 6

**provided**   24:16
**public**   14:25,25
  15:17
**publicly**   14:9
**purports**   15:3
**purpose**   15:24
  18:18,24
**purposes**   35:23
**push**   14:4
**put**   6:15 23:2 30:5
  31:25 32:1

**q**

**qualifications**   21:3
**quality**   19:19
**quarterbacking**
  19:16
**question**   4:18,25
  21:10
**questions**   8:11
  29:13
**quite**   23:24
**quote**   14:6
**quotes**   13:5 14:5
  15:9,15,21 16:11,13

**r**

**r**   1:20 3:1 4:1 39:1
**ragged**   6:10
**raise**   5:17
**raised**   11:19
**raises**   26:8,8,13
**raising**   11:10
**rationale**   27:19
**reach**   17:20
**read**   9:16 21:3 26:2
**real**   32:11
**really**   6:8 9:16,21
  24:12
**reason**   11:10 17:11
  21:6
**reasonableness**
  19:18
**reasoning**   8:22
**recall**   12:22
**received**   4:13
**recollection**   12:25

**record**   14:25 39:4
**reduction**   4:14
**references**   31:14
**reflect**   18:16
**reflected**   15:21
**refunding**   19:6,21
  20:4,10
**regarding**   4:13 19:6
**related**   12:23 18:2
**relax**   8:3
**relevance**   13:2
**relevant**   12:24 14:2
  20:5
**rely**   31:21
**remember**   7:16
**reporter**   32:11
**representative**   9:12
**request**   35:1
**reservation**   4:25
**reserve**   10:19 33:21
**reserved**   5:17 12:2
**reserving**   10:25
**resolve**   36:17
**respect**   4:19 11:5
  17:5 22:9 29:18
**response**   13:23,24
  14:3
**responsible**   33:5
**rfa**   5:6 25:25 26:4
  26:22 27:4
**rfa's**   12:24
**right**   4:11,16,17,22
  5:7,10 6:12,13,17
  6:22 7:10 9:3,10,14
  10:7,11 11:18 12:3
  13:19,20 15:1 18:10
  19:1,9,25 20:12,22
  21:23 22:24 23:1,15
  23:23 25:13,18 26:6
  27:10 28:4,20,23
  29:3,4,11,19 30:14
  34:13 35:16
**rights**   4:25 5:17
**risk**   29:23
**road**   19:18 39:10
**rooms**   7:24,25

**rule**   8:4 9:2 12:11
  24:24 25:3 27:14
  32:10 37:13
**rules**   9:19 27:9
**ruling**   8:18 10:18
  10:19,25 16:10
  18:13 26:18 34:10
**rulings**   8:10 38:3
**run**   6:9 15:6

**s**

**s**   3:1 4:1
**sacrificed**   37:17
**sake**   21:11
**saving**   21:12
**sawyer**   4:5 9:24
  18:11,12 19:2 20:14
  30:20,23 32:18,20
  32:25 33:2 34:9,13
  34:15,17,21 35:5,9
  35:12,16,19 36:2,5
  36:8,12,16,20 37:3
  37:9
**saying**   15:8 16:22
  19:10
**says**   13:16,24 14:8
**scc**   1:3
**school**   9:10
**schwab**   12:25
**scope**   11:7
**screen**   31:2 32:4,5,8
**screens**   32:6
**seattle**   3:15
**second**   6:2
**secondary**   9:3
**see**   5:14 18:8 19:25
  20:8,11
**seek**   5:20
**seeking**   13:3
**seen**   17:1 25:23
**seize**   29:23
**selling**   17:8
**sense**   11:1 16:18,20
  16:21 20:7 37:7
**separate**   8:24 12:1
**sequestered**   22:8,9
**set**   31:19

**settlement**   4:10
  16:24 17:3,10 18:1
  18:18,24 19:3
**settling**   18:22
**shapes**   24:21,21
**shapiro**   15:5,6 16:1
  22:7,7,15 23:9,22
  23:25 24:1,5,6,8,13
  24:20 25:1,5 26:14
  27:8,12,18,25 28:8
  28:9,19 29:10
**shapiro's**   26:24
  29:14
**shared**   22:23 36:5
**shed**   19:18
**shelley**   1:21
**shift**   25:15
**shifted**   25:1
**shifting**   26:9
**short**   36:23
**show**   16:1 32:5
  35:24
**shows**   32:4
**sic**   26:19
**side**   6:11
**sides**   36:8
**similar**   11:5
**simply**   14:11,12
  34:3
**sit**   22:11 28:15 29:9
**situation**   16:3 33:7
**six**   25:22
**slides**   31:25
**smart**   9:12 30:3
**solely**   18:1
**somebody**   14:11,12
  15:16 20:9
**someone's**   11:2
**sorry**   13:7 22:20
  28:10
**sound**   33:7
**sounds**   33:12
**sources**   9:3 15:8
**south**   2:25 39:3,7
**southern**   1:2
**speaking**   30:25

**spending**  6:3
**spent**  8:12 9:2
**spill**  8:4
**stand**  21:2 26:2
**start**  4:3,12 7:1,8,13
  7:18 8:8 37:16
**starting**  6:3,25
**state**  4:10
**statements**  15:2
**states**  1:1 12:24
  13:18
**status**  2:1
**staying**  6:8
**step**  9:9
**stipulation**  4:13
**stood**  12:12
**stop**  6:4 7:20
**stopping**  7:12
**story**  27:22
**streamline**  35:12
**street**  3:4
**stuff**  29:18
**style**  16:5,5
**submissions**  8:12
**submit**  9:7
**submitted**  21:15
**subsequent**  19:11
**suite**  3:14 39:11
**supposed**  9:11,12
**sure**  6:20 10:5,10
  11:3,19 13:10 18:4
  18:6,12 29:8,16,25
  30:22 33:19 36:25
**surrounding**  12:5
**swayer**  3:8

**t**

**t**  39:1,1
**take**  9:13 12:14
  19:8 21:2 26:2
**taken**  14:7 26:10
**taki**  3:19 4:9
**talk**  6:20 12:22
  16:23 27:11,12,12
  27:15 28:2,4,6,8,9
**talked**  29:15
**talking**  13:7,11,14
  28:7 35:7

**tambe**  3:7 4:4,5,17
  4:21,23 5:2,5,8,15
  5:21,24 6:13,18,23
  7:4,6,11,17,23 8:1
  9:23 10:2,6,10
  14:16,19,22,24 15:2
  15:22,24 16:10
  20:13,17,20,23 21:1
  21:10,13,23,25
  22:17,19,22,25 23:2
  23:5,8,14,16,20,22
  23:24 24:3,5,12,16
  24:18,21 25:9,12,19
  25:22 26:6,13 27:23
  28:5 30:15 31:6,8
  31:11,14,18,23 32:3
  32:7,12,14,16
**tech**  31:2
**technology**  31:23
  32:14
**tell**  6:6 8:10 19:14
  19:20,24 25:19
**telling**  33:6
**term**  23:11,13,14,15
**termination**  4:20
  13:4 19:9 27:4
**terms**  23:10 31:23
  33:12,16
**test**  14:4 20:23
**testify**  9:5 24:2,25
  25:4 27:25 28:7
**testifying**  12:13
  22:10 23:19 34:24
**testimony**  9:19,25
  10:14,21,23 11:2,6
  12:18,19 16:8 21:7
  21:9 22:8,12 24:21
  24:22 25:17 27:9,17
  30:1 35:21 36:19
**thank**  7:23 18:9
  19:2 20:14 21:25
  34:7 37:4
**theme**  22:22
**theories**  25:23 26:9
**theory**  26:19
**thin**  31:4

**thing**  4:24 6:2 17:9
  29:11
**things**  17:2,6 23:9
  24:7,8 30:21 32:18
**think**  6:19 7:4,7,12
  9:3,23 10:22,25
  11:1 12:10 14:16
  15:19,20 18:2,3
  19:7,15,24 20:8,15
  21:14 22:4 24:7
  30:17 32:3,14,15
  33:23,23 37:12
**thinks**  8:21 25:14
**third**  17:7,19
**thoroughly**  21:22
**thought**  12:11
  16:22 25:2 36:17
**three**  7:18 12:22
  14:13,15,22 15:15
  25:8,10
**thumb**  35:25
**thursday**  7:20
**time**  5:16 8:12,23
  9:2 12:2,14 21:12
  31:24,24 32:11,22
  34:10 35:20 36:3
  37:8,11,14,17
**times**  6:3 25:10
**timing**  6:16
**tiring**  37:14
**tobacco**  4:10
**today**  4:2 6:1
**tomorrow**  6:3,11,25
  7:12,16 31:25 37:19
**topics**  9:13 10:1
**totally**  17:4 27:6
**transcribed**  2:25
**transcriber**  39:7
**transcript**  9:7,25
  10:3 36:23 39:3
**transmitting**  13:1
**treated**  27:18
**tremendous**  31:22
**trial**  5:6 8:3,25 9:5
  9:17,18 12:2,11
  22:8 28:1 31:21
  33:8 34:24 36:1

**true**  14:9 39:4
**truth**  14:14 15:20
  16:12
**try**  23:11 24:22,22
  32:22 34:18
**trying**  16:5 17:20
  25:7 29:23 35:12
**tsa**  3:12 10:13 14:6
  17:4,17 19:13 22:9
**tsa's**  17:7 18:23
**two**  7:1,18 10:12
  12:15,16,21 17:2
  23:2 31:15 34:21
**type**  21:16

**u**

**u.s.**  1:13,22
**uh**  25:14
**understand**  4:12
  5:3,19,25 11:14
  13:11 30:14 33:16
**understanding**  33:5
**understood**  10:18
  11:25 18:13
**undertaken**  18:17
**undocumented**
  15:7
**unfold**  16:9
**unique**  21:20 24:2
**united**  1:1
**unrelated**  18:1
**use**  10:2 27:5 31:15
  33:3,4 34:4,24,25
  35:1,4
**useful**  26:10 36:17
**usually**  31:1

**v**

**v**  3:19
**valuation**  5:6,10,11
  5:13 13:4 14:3
**valued**  2:3
**veritext**  39:9
**video**  35:19,22,25
  36:5,16,18
**view**  17:12
**vis**  17:19,19

[voir - à]                                                                    Page 8

| | |
|---|---|
| **voir**  21:5,6 | **x** |
| **volume**  31:3 | **x**  1:4,11 38:1 |
| **volumes**  31:4 | **y** |
| **w** | **yeah**  5:3 7:4,6 10:22 |
| **w**  3:7,8 | 16:17 21:8,11,13 |
| **wa**  3:15 | 24:18 25:12 26:6 |
| **wait**  19:25 20:8 | 28:11,17 29:19 32:7 |
| 23:18 | 32:19 33:1 34:12,14 |
| **waived**  36:13 | 34:16 35:17 37:11 |
| **want**  6:6,7 10:8 | **years**  19:17 |
| 12:9 13:10,16,21 | **york**  1:2,15,15 3:5 |
| 20:23 21:8 24:7,13 | 16:1 |
| 27:14,20 31:14 | **z** |
| 32:22 33:10,14,16 | **zero**  5:9 |
| 33:16 35:24,25 | **à** |
| **wanted**  6:2 12:12 | **à**  17:19 |
| 18:12 35:24 37:9 | |
| **washington**  4:10 | |
| 10:13 14:6 17:3,7 | |
| 17:17 | |
| **way**  8:22,23 14:15 | |
| 20:3 30:12 34:19 | |
| 37:12,13 | |
| **we've**  7:25 17:4 | |
| 20:10 22:13 25:22 | |
| 26:10,19 30:24 | |
| 32:20 36:5 | |
| **wednesday**  7:13,14 | |
| 7:19 | |
| **weeks**  25:22 | |
| **weight**  12:20 | |
| **witness**  7:21 9:1,11 | |
| 9:18 16:14,15 25:2 | |
| 26:13 31:9,9,20 | |
| 33:21 34:23 | |
| **witness's**  10:1 | |
| **witnesses**  6:9,10,15 | |
| 22:10,14 31:12 | |
| 33:17 37:17 | |
| **words**  19:17 20:6 | |
| **works**  32:9 | |
| **write**  8:23 | |
| **writes**  14:11,12 | |
| **wrong**  8:21 24:9 | |