**HEARING DATE AND TIME: January 15, 2015 at 10:00 a.m. (Eastern Time)**

Allan S. Brilliant
Shmuel Vasser
Stephen M. Wolpert
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Stonehill Institutional Partners, L.P.*
*and Stonehill Offshore Partners Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------------- x
In re                                                    :  Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,                   :  08-13555 (SCC)
                                                         :
                              Debtors.                   :  (Jointly Administered)
----------------------------------------------------------------------- x
```

**RESPONSE TO PLAN ADMINISTRATOR'S FOUR HUNDRED EIGHTY-**
**THIRD OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................................II

SUMMARY OF ARGUMENT ................................................................................ 1

BACKGROUND .................................................................................................... 5

ARGUMENT .......................................................................................................... 7

I.      THE OBJECTION SHOULD BE DENIED BECAUSE THE PROOFS OF
CLAIM STATE CLAIMS ON WHICH RELIEF MAY BE GRANTED ....................... 7

      A.      Proofs of Claim Need Not Meet Pleading Standards Under the Civil Rules ......... 8

      B.      Stonehill Has Stated Valid Fraud Claims With Particularity .............................. 12

            i.      Stonehill reasonably relied on Lehman Brothers'
misrepresentations, which involved statements of present fact ............... 14

            ii.      The Proofs of Claim sufficiently allege that Lehman Brothers'
statements were false when made .......................................................... 15

            iii.      Stonehill's negligent misrepresentation Claims are supported by a
special relationship between Stonehill and the Debtors ......................... 17

      C.      The Proofs of Claim State Valid Breach of Contract Claims ............................. 18

            i.      The Debtors are jointly and severally liable for LBI's obligations
under the PB Agreement ....................................................................... 19

            ii.      Stonehill's Proofs of Claim state a prima facie claim for breach of
contract ............................................................................................... 21

II.      THE PB AGREEMENT DOES NOT, AND CANNOT, RELEASE THE
DEBTORS FROM LIABILITY FOR STONEHILL'S CLAIM ................................... 24

III.      THE FRAUD AND MISREPRESENTATION CLAIMS ARE NOT
DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS ................................. 29

            i.      Lehman Brothers' misrepresentations were collateral or extraneous
to the  terms of the PB Agreement ....................................................... 30

            ii.      There was a special relationship between Stonehill and the Debtors ...... 34

CONCLUSION .................................................................................................... 35

# TABLE OF AUTHORITIES

CASES

*Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*,
94 F.3d 772 (2d Cir. 1996) ................................................................................................ 9

*Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*,
775 F.2d 476 (2d Cir. 1985) ............................................................................................ 25

*Am. Tissue, Inc. v. Donaldson*,
351 F. Supp. 2d 79 (S.D.N.Y. 2004) ............................................................................... 27

*Anstalt v. New Generation Biofuels, Inc.*,
Case No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472 (S.D.N.Y. Nov. 18,
2014) ................................................................................................................................ 12

*Apple Records, Inc. v. Capitol Records, Inc.*,
529 N.Y.S.2d 279 (App. Div. 1st Dept. 1988) .......................................................... 18, 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................... 7

*Astroworks, Inc. v. Astroexhibit, Inc.*,
257 F. Supp. 2d 609 (S.D.N.Y. 2003) ............................................................................. 30

*Atmosphere Sciences, LLC v. Schneider Advanced Techs. Inc.*,
Case No. 12 Civ. 3223 (SAS), 2012 U.S. Dist. LEXIS 135099 (S.D.N.Y. Sept. 19,
2014) ................................................................................................................................ 33

*Balaber-Strauss v. N.Y. Tel. (In re Coin Phones)*,
203 B.R. 184 (Bankr. S.D.N.Y. 1996) ............................................................................ 24

*Basis Pac-Rim Opportunity Fund (Master) v. TCW Asset Mgt. Co.*,
2013 N.Y. Misc. LEXIS 4032 (N.Y. Sup. Ct. 2013) ....................................................... 24

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*,
98 F.3d 13 (2d Cir. 1996) ................................................................................................ 29

*Century Pacific, Inc. v. Hilton Hotels Corp.*,
Case No. 03 Civ. 8258, 2004 U.S. Dist. LEXIS 6904 (S.D.N.Y. Apr. 21, 2004) .................. 17

*Champlin Petroleum Co. v. Mingo Oil Producers*,
628 F. Supp. 557 (D. Wyo. 1986) ................................................................................... 26

*Cirillo v. Slomin's Inc.*,
196 Misc. 2d 922 (N.Y. Sup. Ct. 2003) .......................................................................... 27

*Crabtree v. Tristar Auto. Group, Inc.*,
776 F. Supp. 155 (S.D.N.Y. 1991) .........................................................................32

*Dale System, Inc. v. General Teleradio, Inc.*,
105 F. Supp. 745 (S.D.N.Y. 1952) .........................................................................18

*Doehla v. Wathne Ltd., Inc.*,
Case No. 98 Civ. 6087 (CSH), 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. Aug. 3,
1999) .......................................................................................................................15

*Edgewater Growth Capital Partners, L.P. v. Greenstar N. Am. Holdings, Inc.*,
Case No. 108641/08, 2013 N.Y. Misc. LEXIS 6593 (N.Y. Sup. Ct. 2013) ...........19

*Fein v. Chi. Ins. Co.*,
2003 U.S. Dist. LEXIS 12374 (S.D.N.Y. July 16, 2003) .......................................25

*Feinberg v. Bank of New York*,
442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...................................................................11

*G.D. Searle & Co. v. Medicore Commc'ns*,
843 F. Supp. 895 (S.D.N.Y. 1994) .........................................................................20

*Gens v. Resolution Trust Corp.*,
112 F.3d 569 (1st Cir. 1997) .................................................................................9

*Gotham Boxing, Inc. v. Finkel*,
856 N.Y.S.2d 498 (N.Y. Sup. Ct. 2008) ...........................................................29, 30

*Gross v. Sweet*,
49 N.Y.2d 102 (1979) ...........................................................................................27

*Gutterman v. RGA Accessories, Inc.*,
602 N.Y.S.2d 116 (App. Div. 1st Dept. 2008)........................................................29

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
95 F. Supp. 2d 169 (S.D.N.Y. 2000)......................................................................13

*Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*,
676 F. Supp. 2d 100 (E.D.N.Y. 2009) ..........................................................30, 31, 32

*In re BI-LO, LLC*,
Case No. 7:11-cv-00177-JMC, 2011 U.S. Dist. LEXIS 112960 (D.S.C. Sept. 30,
2011) .......................................................................................................................9

*In re DJK Residential LLC*,
416 B.R. 100 (Bankr. S.D.N.Y. 2009) ...................................................................8

*In re Lehman Bros. Holdings Inc.*,
   Case No. 08-13555 (SCC) (Bankr. S.D.N.Y. Jun. 19, 2014) ...................................................6

*In re MF Global Inc.*,
   515 B.R. 434 (Bankr. S.D.N.Y. 2014) ........................................................................27, 28, 29

*In re O'Malley*,
   252 B.R. 451 (N.D. Ill. 1999) ................................................................................................8

*In re Residential Capital, LLC*,
   513 B.R. 856 (Bankr. S.D.N.Y. 2014) ....................................................................................8

*In re Rockefeller Ctr. Props.*,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000) ....................................................................................8

*In re Today's Destiny, Inc.*,
   Case No. 05-90080, 2008 Bankr. LEXIS 3577 (Bankr. S.D. Tex. Nov. 26, 2008).........8, 9, 10

*In re WorldCom, Inc.*,
   2003 U.S. Dist. LEXIS 11160 (S.D.N.Y. June 30, 2003 .......................................................10

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
   309 F.3d 76 (2d Cir. 2002)...................................................................................................25

*John Paul Mitchell Sys. v. Quality King Distributors, Inc.*,
   Case No. 99 Civ. 9905 (SHS), 2001 U.S. Dist. LEXIS 11587 (S.D.N.Y. Aug. 13,
   2001) ...................................................................................................................................32

*Kalisch-Jarcho Inc. v. City of New York*,
   461 N.Y.S.2d 746 (1983) ......................................................................................................27

*Kel Kim Corp. v. Cent. Mkts., Inc.*,
   70 N.Y.2d 900 (1987) ...........................................................................................................26

*Koch v. Greenberg*,
   Case. No. 07 Civ 9600 (JPO), 2014 U.S. Dist. LEXIS 44581 (S.D.N.Y. Mar. 31,
   2014) ...................................................................................................................................15

*MBIA Ins. Corp. v Royal Bank of Can.*,
   958 N.Y.S.2d 62 (N.Y. Sup. Ct. 2010) ..................................................................................14

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007)...................................................................................................32

*Pagliai v. Del Re*,
   Case No. 99 Civ. 9030 (DLC), 2001 U.S. Dist. LEXIS 2195 (S.D.N.Y. Mar. 7, 2001) .........22

*Phillips P.R. Core, Inc. v. Tradax Petroleum, Ltd.*,
    782 F.2d 314 (2d Cir. 1985)................................................................26

*Regent Ins. Co. v. Storm King Contr., Inc.*,
    2008 U.S. Dist. LEXIS 16513 (S.D.N.Y. Feb. 26, 2008).........................25

*Richbell Info Servs., Inc. v. Jupiter Partners, L.P.*,
    765 N.Y.S.2d 575 (App. Div. 1st Dept. 2003)........................................29

*Rozsa v. May Davis Grp. Inc.*,
    152 F. Supp 2d 526 (S.D.N.Y. 2001)....................................................22

*S. Rafael Jewels Corp. v. Nezaj*,
    Case No. 107336/11, 2014 N.Y. Misc. LEXIS 2209 (N.Y. Sup. Ct. 2014) ...........................22

*Securities Investor Protection Corp. v. Lehman Bros. Inc.*,
    Case No. 08-01420 (JMP) SIPA (Bankr. S.D.N.Y. Aug. 25, 2010).....................19

*Talansky v. Schulman*,
    770 N.Y.S.2d 48 (N.Y. App. Div. 1st Dept. 2003)...............................15

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000)...............................................................21

*Varghese v. China Shenghuo Pharm. Holdings*,
    672 F. Supp. 2d 596 (S.D.N.Y. 2009)..............................................7, 16

*Webb v. Hardage Corp.*,
    471 So. 2d 889 (La. Ct. App. 1985).....................................................26

*WPIX, Inc. v. IVI, Inc.*,
    691 F.3d 275 (2d Cir. 2012)...............................................................10

STATUTES

11 U.S.C. § 502.....................................................................................10, 11

Article 8 of the Uniform Commercial Code ...............................................23

OTHER AUTHORITIES

Bankruptcy Rule 1001 .............................................................................11

Bankruptcy Rule 3001 .................................................................2, 8, 9, 10, 11

Bankruptcy Rule 3001(a)............................................................................8

Bankruptcy Rule 3001(c)...........................................................................12

v

Bankruptcy Rule 3001(f) ...................................................................................................11

Bankruptcy Rule 7005 .......................................................................................................9

Bankruptcy Rule 7009 ..............................................................................................9, 10, 11

Bankruptcy Rule 7015 .......................................................................................................9

Bankruptcy Rule 7032 .......................................................................................................9

Bankruptcy Rule 9014 .......................................................................................................10

Bankruptcy Rule 9014(c) ...............................................................................................10, 11

Rule 5 of the Federal Rules of Civil Procedure ..................................................................9

Rule 8(a) of the Federal Rules of Civil Procedure..............................................................8

Rule 9(b) of the Federal Rules of Civil Procedure ............................................... *passim*

Rule 12(b)(6) of the Federal Rules of Civil Procedure............................................1, 7

Rule 15 of the Federal Rules of Civil Procedure ................................................................9

Rule 32 of the Federal Rules of Civil Procedure ................................................................9

Securities and Exchange Commission Rule 15c3-3 .................................................20

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Stonehill Institutional Partners, L.P. ("**Stonehill Institutional**") and Stonehill

Offshore Partners Limited ("**Stonehill Offshore**" and, together with Stonehill Institutional,

"**Stonehill**"),[1] through its undersigned counsel, hereby file this response (the "**Response**") to the

objection [ECF No. 46785] (the "**Objection**") of Lehman Brothers Holdings Inc. ("**LBHI**" and

together with its affiliated chapter 11 debtors the "**Debtors**"), as Plan Administrator (the "**Plan**

**Administrator**" or "**LBHI**"), to Stonehill's proofs of claim (each a "**Proof of Claim**" and

together the "**Proofs of Claim**" or "**Claims**").[2]  In support of this Response, Stonehill

respectfully states as follows:

## SUMMARY OF ARGUMENT

1.      In the latest round of this unnecessarily drawn-out dispute,[3] the Plan

Administrator has finally objected to the Proofs of Claim pursuant to what is essentially a motion

to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "**Civil Rules**").[4]  The

Objection fails, however, because the Proofs of Claim, when viewed in a light most favorable to

---

[1]    Stonehill Capital Management LLC ("**SCM**") is investment advisor to each of Stonehill Institutional and Stonehill Offshore.

[2]    A sample Proof of Claim is attached to the Objection as Exhibit B.  Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Proofs of Claim.

[3]    On numerous occasions LBHI asserted that it deferred dealing with the difficult claims filed in these cases as the justification for the years long delay in dealing with the remaining unresolved claims.  If the Debtors' honestly believe that Stonehill's Claims should be disposed of on a motion to dismiss, it is hard to comprehend what took them so long to do so.

[4]    The Court's Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against the Debtors [ECF No. 8474] provides, in relevant part, that "[f]or a non-evidentiary hearing to address the legal sufficiency of [a] particular [c]ontested [c]laim . . . . [t]he standard of review that will be applied by the Court . . . will be equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim." *Id.* at 5.

Stonehill, state (at the very least) plausible claims for fraudulent and negligent misrepresentation and breach of contract.

2.　　Contrary to the Plan Administrator's argument, the Proofs of Claim sounding in fraud are not subject to the pleading standards of Rule 9(b) of the Civil Rules. Any finding that Rule 9(b) applies to the Proofs of Claim would be inconsistent with the rules governing the form of proofs of claim, including Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Official Form 10, as well as applicable law governing the nature and purpose of proofs of claim. Proofs of claims are designed to provide mere notice of basic facts as to the identity of the claimant, and the amount, nature and basis of the claim. And, Rule 9(b) is not even applicable prior to the filing of an objection.

3.　　In any event, the Proofs of Claim satisfy Rule 9(b) since they clearly state the "who, what, where, when and why" with respect to Stonehill's fraudulent misrepresentation Claims. The Proofs of Claim identify the Debtors' executives who made misrepresentations, and state that those misrepresentations were made to induce Stonehill to continue its relationship with the Debtors and Lehman Brothers, Inc. ("**LBI**," and together with the Debtors, the "**Lehman Entities**" or "**Lehman Brothers**") at a time when the Debtors' executives knew or should have known that Lehman Brothers was on the verge of collapse. Thus, those Claims cannot be dismissed for failure to comply with Rule 9(b) of the Civil Rules. Further, the statements were not mere expressions of opinion regarding future expectations on which a party cannot reasonably rely. Rather, the misrepresentations were of present fact regarding Lehman Brothers' then-existing liquidity and asset coverage. In any event, the nature of the misrepresentations and the reasonableness of Stonehill's reliance thereon are questions of fact that cannot be decided on a motion to dismiss.

4.    The Proofs of Claim allege (at the very least) plausible Claims for breach of contract.  The Proofs of Claim allege that the Debtors are jointly and severally liable with LBI for the return of Stonehill's securities and other breaches of the relevant prime brokerage agreement (the "**PB Agreement**").  The Objection does nothing to rebut the presumption that arises with respect to multi-party contracts that obligations are joint unless the contract contains adequate severing language, which the PB Agreement does not.  Moreover, it is clear that LBI acted as the Debtors' agent, that the Debtors enjoyed the benefits of the PB Agreement, and thus are bound to share in its burdens.  At the very least, to the extent that the Court does not find as a matter of law that all of the Debtors are jointly and severally liable to Stonehill, the resulting ambiguity in the PB Agreement raises triable issues of fact regarding whether the Debtors were intended, under Lehman Brothers' form PB Agreement, to be jointly and severally liable.  Thus, Stonehill is entitled to a trial on its breach of contract Claims.

5.    The Plan Administrator's argument that Stonehill's Claims have been released is nothing but a red-herring.  Neither the breach of contract nor fraud Claims are subject to the releases of sections 29 and 30 of the PB Agreement.  Section 30 is inapplicable for two independent reasons.  *First*, section 30 is simply irrelevant to the claims asserted by Stonehill since it applies to claims in connection with "the execution, clearing, handling, purchasing or selling of securities, commodities or other property or other action."  Stonehill's claims relate to none of these enumerated events (and the "other action" language has to be interpreted to cover similar items).  *Second*, section 30 contains an explicit carve-out for gross negligence and willful misconduct.  The Proofs of Claim allege that the Debtors' breach of contract—the failure to promptly return Stonehill's securities—was at least proximately caused by the Debtors' fraudulent or negligent misrepresentations.  As a matter of law, fraud and negligent

misrepresentation constitute gross negligence or willful misconduct.  Thus, the Claims are not released pursuant to section 30 of the PB Agreement.

6.      Section 29 of the PB Agreement in turn, does not bar the Claims, as that section is a "force majeure" provision that only exculpates Lehman Brothers for conditions beyond Lehman Brothers' control.  Stonehill's injury, however, was proximately caused by the Debtors' own misrepresentations and the imprudent conduct of their businesses, which were certainly within their control.  Nor does a bankruptcy filing constitute "force majeure."  In any event, even though section 29 does not contain an express carve-out for gross negligence or willful misconduct, exculpations for willful or grossly negligent acts are invalid as a matter of New York law.[5]

7.      Finally, the breach of contract and fraudulent and negligent misrepresentation Claims are not duplicative because the misrepresentations were extraneous to the PB Agreement and Stonehill had a "special relationship" with the Debtors.  Fraud claims are not duplicative of contract claims where they are based on representations, omissions or conduct other than the contract itself.  The PB Agreement is silent regarding any obligation of the Lehman Entities to divulge their liquidity, financial condition or asset coverage.  Thus, the Debtors' voluntary offering of false information was a fraud that took place outside of any contractual obligation, and is, therefore, extraneous to the PB Agreement.

8.      Further, the arrangement between Stonehill and Lehman Brothers created a bailor-bailee relationship, which courts have held to constitute a special relationship for purposes of determining whether fraud and contract claims are duplicative.

---

[5]    The PB Agreement is governed by New York law.  *See* PB Agreement § 24.

4

9.      Thus it is clear that the Proofs of Claim assert plausible Claims for breach of contract and fraudulent and negligent misrepresentations that are not barred by any enforceable release or by law.  Thus, the Objection should be overruled.

## BACKGROUND

10.      Commencing on September 15, 2008 and periodically thereafter, the Debtors filed with the Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

11.      On July 2, 2009, the Court entered an order [ECF No. 4271] establishing September 22, 2009 at 5:00 p.m. (ET) as the bar date for filing proofs of claim.

12.      In September 2009, Stonehill Institutional and Stone Offshore timely filed their original proofs of claim (collectively, the "**Original Proofs of Claim**").

13.      On December 6, 2011, the Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [ECF No. 23023] (the "**Plan**").  The Plan became effective on March 6, 2012.

14.      On February 20, 2014, the Plan Administrator filed its Motion to Establish Single Reserve For Duplicative Claims [ECF No. 42959] (the "**Reserve Motion**"), which asked the Court to establish a single reserve in the amount of approximately $44 million for Stonehill's Original Proofs of Claim.  On February 27, 2014, Stonehill filed its objection to the Reserve Motion [ECF No. 43335], arguing, among other things, that the Plan Administrator was effectively attempting to disallow a portion of Stonehill's claims by capping the reserves at a level significantly below the actual claim amounts, and that the relief requested was not authorized by the Plan, the Bankruptcy Code or the Bankruptcy Rules.  In its reply to Stonehill's objection [ECF No. 43386], the Plan Administrator asserted that Stonehill's claims relating to

5

the diminution in value of the returned securities were new claims that were not a component of the Original Proofs of Claim.

15.     After a hearing, the Plan Administrator and Stonehill agreed on a consent order [ECF No. 43571] (the "**Reserve Order**") providing for a temporary reserve of $55,060,304 on account of Stonehill Offshore's Original Proofs of Claim and $48,835,956 on account of Stonehill Institutional's Original Proofs of Claim. The Reserve Order was entered on March 18, 2014. Under the Reserve Order, the reserve would be increased in the event that the Court authorized Stonehill to amend, liquidate or supplement its Original Proofs of Claim.

16.     On April 15, 2014, Stonehill filed its Motion to Re-File Proofs of Claim to Fix Previously Unliquidated Claim Amounts or Alternatively for Leave to File Amended Claims [ECF No. 43988]. On May 7, 2014, the Plan Administrator filed a limited objection to Stonehill's motion to re-file or amend its Original Proofs of Claim [ECF No. 44249]. On May 23, 2014, Stonehill filed a reply to the Plan Administrator's limited objection [ECF No. 44412].

17.     On June 19, 2014, the Court held a hearing to consider Stonehill's motion to re-file or amend its Original Proofs of Claim. In light of the "unique set of facts and circumstances," the Court granted Stonehill permission to re-file its Original Proofs of Claim. Hr'g Tr. at 170:11, 172:23-25, *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (SCC) (Bankr. S.D.N.Y. Jun. 19, 2014).

18.     On August 5, 2014, the Plan Administrator and Stonehill entered into a stipulation and order to supersede the Original Proofs of Claim with the re-filed Proofs of Claim [ECF No. 45573]. Pursuant to the Reserve Order, the reserve on account of Stonehill Offshore's Claims was required to be increased to $77,380,909.22 and the reserve on account of Stonehill Institutional's Claims was required to be increased to $86,659,892.26.

6

19.    On October 31, 2014, the Plan Administrator filed the Objection.

Although styled as an omnibus objection, it objects only to the Stonehill Claims.

## ARGUMENT

### I.    The Objection Should Be Denied Because the Proofs of Claim State Claims on Which Relief May Be Granted

20.    The Objection—which essentially is a motion to dismiss the Proofs of

Claim pursuant to Rule 12(b)(6) of the Civil Rules—fails because the Proofs of Claim contain

more than adequate detail to state claims for fraud, misrepresentation and breach of contract.

21.    In ruling on a motion to dismiss under Rule 12(b)(6) of the Civil Rules, a

"court must accept all well-pleaded factual allegations in the complaint as true, and draw all

reasonable inferences in the plaintiff's favor." *Varghese v. China Shenghuo Pharm. Holdings*,

672 F. Supp. 2d 596, 604 (S.D.N.Y. 2009). Under this standard, a plaintiff merely needs to plead

"'factual content that allows the court to draw the reasonable inference that the defendant is

liable[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). While the allegations must give rise to a "plausible" scenario for

recovery, the court does not, at this early stage, act as a fact-finder and weigh the relative merits

of the allegations. *See Varghese*, 672 F. Supp. 2d at 604. Rather, a complaint is sufficient if the

claim is "facially plausible," a determination that is based upon the court's "judicial experience

and common sense." *Iqbal*, 556 U.S. at 679.

22.    Although the Proofs of Claim are not complaints, their factual content is

more than sufficient to give rise to facially plausible Claims. Thus, the Objection should be

overruled.

**A.      Proofs of Claim Need Not Meet Pleading Standards Under the Civil Rules.**

23.      Proofs of claim, unlike complaints, are mere notice filings, and are not

required to meet the standards governing complaints under the Civil Rules.  *See In re O'Malley*,

252 B.R. 451, 456 (N.D. Ill. 1999) (finding that a proof of claim in a bankruptcy case need not

meet the pleading standards under either Rule 8(a) or 9(b) of the Civil Rules).[6]  Thus, the Plan

Administrator's attempt to dismiss the fraud Claims contained in the Proofs of Claim due to an

alleged failure to comply with Rule 9(b) of the Civil Rules is misplaced.

24.      The pleading requirements for a proof of claim are generally governed by

Bankruptcy Rule 3001 and Official Form 10 (*i.e.,* the standard bankruptcy proof of claim form).

*See, e.g.*, *In re Today's Destiny, Inc.*, Case No. 05-90080, 2008 Bankr. LEXIS 3577, at *23

(Bankr. S.D. Tex. Nov. 26, 2008).  Bankruptcy Rule 3001(a) states, in relevant part, that "a proof

of claim is a written statement setting forth a creditor's claim [and] . . . shall conform

substantially to the appropriate Official Form."  Fed. R. Bankr. P. 3001(a).  Official Form 10

---

[6]      Stonehill expects the Plan Administrator to cite in its response to this Response certain authority
supporting the application of pleading standards such as Rule 9(b) of the Civil Rules to proofs of
claim.  *See, e.g.*, *In re Residential Capital, LLC*, 513 B.R. 856, 865 (Bankr. S.D.N.Y. 2014); *In re
DJK Residential LLC*, 416 B.R. 100, 107 (Bankr. S.D.N.Y. 2009); *In re Rockefeller Ctr. Props.*, 272
B.R. 524, 542, n.17 (Bankr. S.D.N.Y. 2000).  Respectfully, those authorities do not contain any
reasoned analysis of the law or rules applicable to proofs of claim and the holdings of those
authorities are irreconcilable with such applicable law and rules as discussed herein.  In *Rockefeller
Ctr. Props.*, the bankruptcy court only noted that "FRCP 9(b) . . . seems appropriately applied to
proofs of claim . . . ." and declined to affirmatively decide the issue because the procedural posture of
the case was a motion for summary judgment and "it is indisputable that [claimant] was required to
put forth all of its evidence of fraud or mistake in opposition to the motion for partial summary
judgment."  272 B.R. at 542, n.17.  The bankruptcy court in *DJK Residential* relied on this single
footnote of mere <u>dicta</u> from *Rockefeller Ctr. Props.* In turn, the bankruptcy court in *Residential
Capital* cited to *DJK Residential*.  In any event, cases such as *DJK Residential*, considered whether
the claimant's reply to the relevant objection contained factual allegations adequate to satisfy Rule
9(b) of the Civil Rules.  416 B.R. at 107.  Although Stonehill submits that the Proofs of Claim satisfy
the Rule 9(b) requirements, Stonehill has provided additional detail herein to remove any doubt that
Stonehill asserts facially valid fraud claims against the Debtors.

"only requires the creditor to include basic facts as to the identity of the claimant, and the amount, nature, and basis of the claim." *In re BI-LO, LLC*, Case No. 7:11-cv-00177-JMC, 2011 U.S. Dist. LEXIS 112960, at *21 (D.S.C. Sept. 30, 2011).  In light of the foregoing, courts have recognized that a proof of claim "need only 'provide[ ] adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable.'" *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997), cert. denied, 522 U.S. 931 (1997) (quoting *Unioil, Inc. v. H.E. Elledge (In re Unioil, Inc.)*, 962 F.2d 988, 992 (10th Cir. 1992)); *see also Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772, 777 (2d Cir. 1996) (finding that right of setoff was not waived because proof of claim was "sufficiently specific" to provide notice of the claim such that parties in interest would have an opportunity to contest the setoff right).

25.    Notably, there is no indication on the face of Bankruptcy Rule 3001 or instruction in Official Form 10 that the heightened pleading standard under Rule 9(b) of the Civil Rules must be satisfied when filing a proof of claim.[7]  Clearly, the Supreme Court and the Advisory Committee know how to incorporate requirements from the Civil Rules into the Bankruptcy Rules, as many Bankruptcy Rules simply state that a particular Civil Rule is applicable in bankruptcy proceedings.[8]

26.    Thus, if the Supreme Court and the Advisory Committee intended to incorporate the standards of Rule 9(b) of the Civil Rules into the required form of a proof of

---

[7]    In fact, "[Official] Form 10 does not have the space for a claimant to assert a factual predicate in the detail required by [Bankruptcy] Rule 7009." *Today's Destiny*, 2008 Bankr. LEXIS 3577, at *23.

[8]    *See*, *e.g.*, Bankruptcy Rule 7005 (providing that Rule 5 of the Civil Rules applies to the service and filing of pleadings and other papers in adversary proceedings); Bankruptcy Rule 7015 (specifying that Rule 15 of the Civil Rules applies to amended and supplemental pleadings in an adversary proceeding); Bankruptcy Rule 7032 (stating that Rule 32 of the Civil Rules applies to the use of depositions in an adversary proceeding).

9

claim, they would have done so clearly in the text of Bankruptcy Rule 3001 or Official Form 10.

But they did not. *Cf. WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 282 (2d Cir. 2012) (finding that

omission of a disputed category from the relevant statute showed Congress's intent to exclude

that category from the statute's application); *see also In re WorldCom, Inc.*, 2003 U.S. Dist.

LEXIS 11160, at *7 (S.D.N.Y. June 30, 2003) (construing the 1997 amendment to Bankruptcy

Rule 8002(c) and finding that "had the Supreme Court . . . or the Advisory Committee . . .

intended to overrule established precedent that orders approving disclosure statements were

interlocutory, they would have done so much more clearly either through the text of the

Bankruptcy Rules of the Advisory Committee Notes").

      27.    Moreover, the Plan Administrator's reliance on the applicability of Rule

9(b) of the Civil Rules in contested matters (*see* Objection ¶ 47), is misplaced.   The filing of a

proof of claim does not commence a contested matter, and thus Bankruptcy Rules 7009 and

9014(c) are not triggered unless and until a substantive objection to the proof of claim is filed.

*See* 11 U.S.C. § 502(a) ("A claim … is deemed allowed, unless a party in interest … objects.");

Fed. R. Bankr. P. 9014, Advisory Committee Note (1983) ("[T]he filing of an objection to a

proof of claim . . . creates a dispute which is a contested matter."); *Today's Destiny*, 2008 Bankr.

LEXIS 3577, at *23-25 (finding that a contested matter, and therefore the application of

Bankruptcy Rule 7009, is not triggered unless and until a substantive objection to a proof of

claim is made in accordance with section 502(b) of the Bankruptcy Code).  Accordingly, no

contested matter existed at the time Stonehill filed the Proofs of Claim, and the Rule 9(b)

requirements could not have applied to the Proofs of Claim at the time they were filed.

      28.    A finding that the Rule 9(b) standard applies to the Proofs of Claim simply

because the Objection commenced a contested matter would both (i) impose a retroactive

pleading requirement on Stonehill and (ii) hold some proofs of claim (*i.e.,* proofs of claims to which no objection was filed and thus allowed pursuant to section 502(a) of the Bankruptcy Code) to a different standard than Stonehill's Proofs of Claim. Thus, to hold proofs of claim in general, and Stonehill's Proofs of Claim in particular, to a Rule 9(b) standard would be both incompatible with the applicable law and rules and inequitable to claimants such as Stonehill.[9]

29.     The Proofs of Claim are more than adequate to meet the notice requirements under Bankruptcy Rule 3001 and Official Form 10, and thus "constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The Proofs of Claim clearly manifest Stonehill's intention to hold the Debtors liable for (1) losses arising from breaches of the PB Agreement caused by, among other things, LBI's failure to return any and all securities promptly in accordance with its responsibilities as a regulated broker-dealer, (2) breach by the Lehman Entities, including the Debtors, of the duty of good faith and fair dealing as well as other causes of action arising from Lehman Brothers' failure to return Stonehill's property and (3) the fraudulent misrepresentations by the Debtors that induced Stonehill to delay demanding the return of those securities prior to Lehman Brothers' collapse, and for any and all damages directly or indirectly related to such claims. As the Plan Administrator points out (*see* Objection ¶ 14), a *substantive* objection to a proof of claim that meets section 502(b) of the Bankruptcy Code merely shifts the burden to the claimant to prove its case. *See Feinberg v. Bank of New*

---

[9]     To the extent the Court finds that Rule 9(b) of the Civil Rules applies, the Court should exercise its discretion against requiring the Proofs of Claim to meet the heightened pleading standard for fraud claims at this stage of the dispute. *See* Bankr. R. P. 9014(c) (providing, in relevant part, that Bankruptcy Rule 7009 applies in a contested matter "unless the court directs otherwise"). Relevant here, Bankruptcy Rule 1001 directs courts to construe the rules "to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. Requiring a proof of claim to meet Rule 9(b) of the Civil Rules prior to the commencement of a contested matter would add delay and expense to the claims allowance process: it would force the claimant to meet the heightened pleading standard for fraud claims before the *prima facie* validity of the claim is even in doubt.

*York*, 442 B.R. 215, 221-22 (Bankr. S.D.N.Y. 2010) (finding that claimant's failure to attach

documentation required by Bankruptcy Rule 3001(c) when filing proof of claim was not fatal

and merely shifted the burden of persuasion to claimant with respect to the validity and amount

of the claim). To the extent that the Debtors wish to file a substantive objection to the Proofs of

Claim, Stonehill is ready, willing and able to meet its burden after appropriate discovery.

### B.    Stonehill Has Stated Valid Fraud Claims With Particularity.

30.    Even though the pleading standards under the Civil Rules, including Rule

9(b), do not apply, the Proofs of Claim actually meet those standards. Under Rule 9(b) of the

Civil Rules, a complaint that contains allegations of fraud must "state with particularity the

circumstances constituting [the] fraud . . . ." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s

particularity requirement, the complaint must "(1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Anstalt v. New Generation Biofuels,*

*Inc.*, Case No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472, at *19 (S.D.N.Y. Nov. 18,

2014).

31.    Here, the Proofs of Claim state Stonehill's fraud and misrepresentation

claims with sufficient particularity. The Proofs of Claim allege, among other things, that:

- In a September 2008 phone call with John Motulsky of SCM (in response to a message Mr. Motulsky left for Alex Kirk, then the Debtors' Global Head of Principal Investing, Global Head of Credit and a member of the Debtors' Executive Committee), Mr. John Wickham (a representative of the Debtors) misrepresented (*i.e.,* **falsely** represented) the adequacy of Lehman Brothers' then-available liquidity and present finances. *See* Proofs of Claim ¶¶ 14-15.

- "[O]n an earnings call on September 10, 2008, five days prior to LBHI's chapter 11 filing, Lehman Brothers' CFO at the time, Ian Lowitt, stated regarding Lehman Brothers' liquidity position that 'our liquidity position . . . remains very strong.'" *See* Proofs of Claim at 6, fn.5.

12

- That the purpose of these misrepresentations was to induce Stonehill "to refrain from demanding the return of its assets held by LBI and other Lehman Entities and otherwise taking actions to promptly reduce its commercial expose to Lehman Brothers," at a time when the senior executives of Lehman Brothers knew that their enterprise was on the verge of collapse. *See* Proofs of Claim ¶ 16.

32.     In light of the foregoing, it is clear that Stonehill's fraud and misrepresentation Claims allege the "who, what, where, when and why" required by Rule 9(b) of the Civil Rules with abundant clarity. *See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169, 174 (S.D.N.Y. 2000). The Proofs of Claim on their face allege that (i) the Debtors' senior representatives, (ii) made misrepresentations concerning Lehman Brothers' then-available liquidity and present finances, (iii) in a series of telephone calls, (iv) during September of 2008 and (v) the misrepresentations were made to induce Stonehill (and the public) to refrain from altering their prime brokerage relationships with Lehman Brothers at a time when it was clear to Lehman Brothers' insiders that their enterprise was not viable.

33.     The Plan Administrator's arguments, therefore, fail as a factual and legal matter. First, the Proofs of Claim sufficiently allege that Stonehill reasonably relied on Lehman Brothers' misrepresentations, which included statements of then-present fact. *See* Proofs of Claim ¶ 12 ("Such misrepresentations induced Claimant … to refrain from terminating Claimant's prime brokerage (and other counterparty) relationships with the Lehman Entities.") In any event, Stonehill's reasonable reliance is a factual issue that is improper for resolution on a motion to dismiss. Second, the Proofs of Claim allege that Lehman Brothers' statements were false when made as well as why such misrepresentations were false. *See* ¶¶ 31, 39. Third, Stonehill's negligent misrepresentation Claims adequately state that there was a special relationship because the Lehman Entities acted as bailees for Stonehill's securities. *See* Proofs of Claim ¶ 10.

13

       i.     *Stonehill reasonably relied on Lehman Brothers' misrepresentations,*
          *which involved statements of present fact.*

34.    Stonehill sufficiently pled reasonable reliance on Lehman Brothers'

misrepresentations, and thus the Claims are not "merely speculative statements about future

intentions and expectations . . . ." (*see* Objection ¶ 54).  Regardless, the issue of Stonehill's

reasonable reliance is uniquely fact intensive and is inappropriate for resolution on a motion to

dismiss.

35.    Here, contrary to the Plan Administrator's assertions, Stonehill's fraud and

misrepresentation claims are based on numerous misrepresentations of present fact or opinions

that incorporate present fact.  The Claims allege, among other things, that a Debtors' senior

executive, in a September 2008 phone call with John Motulsky of SCM, "stated that Lehman's

unrealized appreciation in various assets . . . were more than sufficient to cover possible

unrealized losses in its portfolio . . . ."  *See* Proofs of Claim ¶¶ 13, 15.  The Proofs of Claim

further allege that, during the same phone call, the Lehman Brothers representative "stated that

Lehman had adequate liquidity because unlike Bear Stearns it prudently financed its customers

with matched funding and had sufficient liquidity from sources it believed to be reliable to meet

all of its obligations for a year even if no new financing was available, that it has $12 billion of

surplus cash, and also cited the availability of secured financing from the federal reserve, none of

which was used."  *See* Proofs of Claim ¶ 14.

36.    Those are not statements of future intentions and expectations, but instead

are misrepresentations regarding Lehman Brothers' then-present finances and available liquidity.

*Cf. MBIA Ins. Corp. v Royal Bank of Can.*, 958 N.Y.S.2d 62, 62 (N.Y. Sup. Ct. 2010) (denying

motion to dismiss fraud claim and rejecting defendants' attempts to re-characterize statement that

14

the "collateral supporting [collateralized debt obligation] would be high grade" as promise of future action and reasoning that "representations concerning the quality of the collateral . . . were both as to the collateral's value at the closing and in the future.").[10]

37.    Moreover, "[w]hether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." *Doehla v. Wathne Ltd., Inc.*, Case No. 98 Civ. 6087 (CSH), 1999 U.S. Dist. LEXIS 11787, at *28 (S.D.N.Y. Aug. 3, 1999); *see also Talansky v. Schulman*, 770 N.Y.S.2d 48, 54 (N.Y. App. Div. 1st Dept. 2003) (finding that motion court erred in finding plaintiff's reliance on statement that "the investment was safe" was unreasonable as a matter of law and reasoning in part that "resolution of a reasonable reliance claim is generally left to a finder of fact"). Thus, at the very least, the record must be further developed before the Court can rule on Stonehill's reliance on the misrepresentations made by Lehman Brothers.

    *ii.*    *The Proofs of Claim sufficiently allege that Lehman Brothers' statements were false when made.*

38.    The Plan Administrator's assertion that "Stonehill does not allege that any of the statements its attributes to the [Debtors] was false when made" (*see* Objection ¶ 52) is wrong. Stonehill characterizes Lehman Brothers' numerous statements regarding its liquidity and financial condition as "misrepresentations" at least six times in the Proofs of Claim. *See*

---

[10]    The Plan Administrator's argument that the statement of Ian Lowitt, Lehman Brothers' then-CFO, that "'[our] liquidity position . . . remains very strong' . . ." amounts, at most, to a mere representation of opinion that cannot support an action for fraud (*see* Objection ¶ 55) is indefensible. The argument misstates the law, as an opinion is actionable where the opinion is not sincerely held. *See Koch v. Greenberg*, Case. No. 07 Civ. 9600 (JPO), 2014 U.S. Dist. LEXIS 44581, at *10 (S.D.N.Y. Mar. 31, 2014). The Proofs of Claim clearly allege that "Lehman Brothers' officers **knew or should have known** that there were substantial risks that Lehman Brothers' liquidity and capital may not continue to support its operations . . . ." (*see* Proofs of Claim ¶ 17) and, to the extent the Court finds that any of Lehman's statements were opinions, the Court should permit discovery on whether such opinions are actionable because they were not sincerely held.

Proofs of Claim ¶¶ 12, 16-17.  The very definition of the word "misrepresentation" necessitates the falsity of the statement.

39.    Further, even if Rule 9(b) of the Civil Rules were to apply, the Proofs of Claim adequately state why Lehman Brothers' misrepresentations were false when made.  The Proofs of Claim allege that Lehman Brothers' "misrepresentations were intended . . . to convince Lehman Brothers' customers and counterparties in general and SCM in particular of the financial stability and health of Lehman Brothers **despite the fact that Lehman Brothers' officers knew or should have known that there were substantial risks that Lehman Brothers liquidity and capital may not continue to support its operations** . . . ."  *See* Proofs of Claim ¶ 17 (emphasis added).  This allegation alone is sufficient to meet the Rule 9(b) pleading standard.  *Cf. Varghese*, 672 F. Supp. 2d at 606-07 (finding complaint sufficiently pled that defendants' statements about improvements in internal corporate controls were false when made for purposes of Rule 9(b) of the Civil Rules where the complaint alleged that "[d]efendants knew or recklessly disregarded that [d]efendants lacked the capacity and commitment to remedy the significant weakness in internal controls").

40.    The Proofs of Claim further allege that only **a few days** after Lehman Brothers' direct misrepresentations to SCM regarding Lehman Brothers' liquidity and financial condition, "the Debtor commenced this chapter 11 case and LBI commenced its SIPA Proceeding."  *See* Proofs of Claim ¶ 15.  Given this chain of events, Lehman Brothers' statements were, in fact, false when made.  Accordingly, the Proofs of Claim more than satisfy the pleading standards under the Civil Rules to survive a motion to dismiss.[11]

---

[11]    The Plan Administrator's assertion in a footnote that "[i]n the weeks and days leading up to the commencement of the [c]hapter 11 [c]ases and the SIPA Proceeding . . . any number of events did or may have occurred to affect the liquidity of [Lehman Brothers]" (*see* Objection at 19, fn.6.)  is a question of fact and should not be resolved on a motion to dismiss.

41.    In any event, to the extent the Court believes that the allegations in the Proofs of Claim are insufficient to state a claim of fraud and misrepresentation, Stonehill hereby asserts that the statements made by representatives of Lehman Brothers in September 2008 regarding Lehman Brothers' liquidity position and ability to continue operating were absolutely false when made.  In fact, Anton R. Valukas, the examiner appointed in these chapter 11 cases, found that, "to buy itself more time, to maintain . . . critical confidence, Lehman painted a misleading picture of its financial condition."  *See* Report of Anton R. Valukas, Examiner [ECF No. 7531], Vol. 1 of 9, at 5.  Additionally, the Debtors' preparation for a bankruptcy filing began on September 10, 2008, around the same time that Stonehill was assured that Lehman Brothers had adequate liquidity and was stable.  *See id.* at 718-19.  Also relevant are the examiner's findings that executives of Lehman Brothers failed to disclose key information during earnings calls.  *See id.* at 989. After appropriate discovery, which to date Stonehill has been denied, Stonehill undoubtedly will be able to further support its allegations that Lehman Brothers statements to Stonehill regarding its liquidity position and ability to continue operating were absolutely false.

    *iii.*    *Stonehill's negligent misrepresentation Claims are supported by a special relationship between Stonehill and the Debtors.*

42.    The Plan Administrator's contention that "Stonehill's failure to allege any special duty owed by the [Debtors] outside of its obligations under the PB Agreement[s] is an additional ground to disallow and expunge Stonehill's negligent misrepresentation claim" (*see* Objection at 23, fn.7) is simply wrong, as one of the Claims' essential allegations is that the Lehman Entities acted as bailees for Stonehill's securities and cash.  *See* Proofs of Claim ¶ 10.

43.    "[A] determination of whether a special relationship exists is highly fact-specific and 'generally not susceptible to resolution at the pleadings stage.'"  *See Century*

17

*Pacific, Inc. v. Hilton Hotels Corp.*, Case No. 03 Civ. 8258, 2004 U.S. Dist. LEXIS 6904, at *24-25 (S.D.N.Y. Apr. 21, 2004).  Notwithstanding that it would be premature for the Court to rule on this issue, the Proofs of Claim clearly allege that there was a special relationship between Stonehill and the Debtors.  Under New York law, a bailor-bailee relationship supports a claim for negligent misrepresentation.  *See Dale System, Inc. v. General Teleradio, Inc.*, 105 F. Supp. 745, 750 (S.D.N.Y. 1952) ("A bailee who negligently informs his bailor where the latter's goods are stored, knowing that inquiry is made for insurance purposes, is liable for the resulting loss." (quoting *International Products Co. v. Erie R. Co.*, 244 N.Y. 331, 337 (N.Y. 1927))).

44.    The Proofs of Claim clearly allege that the Debtors acted as bailees for Stonehill's securities and cash.  *See* Proofs of Claim ¶ 10.  Moreover, the Lehman Entities breached their obligations as bailees by, among other things, misrepresenting their financial condition and the safety of Stonehill's securities.  *See* Proofs of Claim ¶¶ 13-15.  The fact that the bailor-bailee relationship was established under a contract (*i.e.* the PB Agreement)  does not preclude Stonehill's negligent misrepresentation claim.  *See Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 283 (App. Div. 1st Dept. 1988) (finding existence of special relationship for purposes of fraud claim despite fact that bailment was established under contract).

45.    Accordingly, Stonehill's negligent misrepresentation Claims should be allowed because the Proofs of Claim adequately pled the existence of a special relationship.  At the very least, however, the Proofs of Claim are sufficient to survive the Plan Administrator's motion to dismiss.

### C.    The Proofs of Claim State Valid Breach of Contract Claims.

46.    The Proofs of Claim state a *prima facie* claim for breach of contract. Despite the Plan Administrator's assertions to the contrary, the Debtors are jointly and severally

liable for LBI's obligations under the PB Agreement.  Further, the Proofs of Claim identify three

independent breaches of the PB Agreement for which the Debtors are liable.

      i.    *The Debtors are jointly and severally liable for LBI's obligations under the PB Agreement.*

      47.    Under the PB Agreement, each of the Debtors are jointly and severally

liable for LBI's failure to promptly return Stonehill's securities upon request.

      48.    The PB Agreement provides that the parties to the agreement consist of

Stonehill Institutional / Stonehill Offshore and "Lehman Brothers Inc., Lehman Brothers

International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc.,

Lehman Brothers Holdings Inc. ("LBHI") and any of their subsidiaries, parents, affiliates,

divisions, officers, directors, agents and employees now existing or hereinafter created . . . ."  *See*

PB Agreement § 1.  LBI and each of the Debtors are defined as and referred to throughout the

PB Agreement collectively and interchangeably as the "Lehman Entities" and "Lehman

Brothers."  *See generally* PB Agreement.

      49.    In a multi-party contract, "contractual rights and responsibilities are

presumed to be joint unless the contract includes severing language."  *Edgewater Growth

Capital Partners, L.P. v. Greenstar N. Am. Holdings, Inc.*, Case No. 108641/08, 2013 N.Y. Misc.

LEXIS 6593, at *21 (N.Y. Sup. Ct. 2013) (holding parties to stock purchase agreement jointly

and severally liable).  The PB Agreement does not contain severing language.  Moreover, there

are certain indications that the parties intended for LBI and the Debtors to be jointly and

severally liable.

      50.    In the LBI Trustee's Preliminary Investigation Report and

Recommendations, *Securities Investor Protection Corp. v. Lehman Bros. Inc.*, Case No. 08-

01420 (JMP) SIPA (Bankr. S.D.N.Y. Aug. 25, 2010) [ECF No. 3604] (the "**Trustee's Report**"),

the LBI Trustee noted that the prime brokerage customer account agreements "included all Lehman entities as parties for certain purposes such as subjecting property in the account to claims and liens." Trustee's Report at p. 46. Further, the PB Agreement states that "[Stonehill Institutional / Stonehill Offshore] and Lehman Brothers intend this agreement to be a master netting agreement" (PB Agreement § 4), which is an additional indication that the parties intended that all Lehman Brothers entities share in the benefits and burdens of the PB Agreement. As alleged in the Proofs of Claim, "[b]y becoming parties to the PB Agreement and availing themselves of the benefits of the PB Agreement[], including by imposing claims and liens on customer property, the Debtor and other Lehman Entities also obligated themselves under such agreement on a joint and several basis with LBI." *See* Proofs of Claim ¶ 4.

51.    Section 21 of the PB Agreement includes, among other things, the requirement that the prime brokerage services be "provided in a manner consistent with the SEC Letter." PB Agreement § 21(l). The "SEC Letter," in turn, refers to SEC Rule 15c3-3, which sets out the broker-dealer's duty to return securities to customers. Although section 21 refers to "LBI" in connection with prime brokerage services, LBI acted as agent for and signed on behalf of the other Lehman Brothers entities in that capacity. *See* PB Agreement at 11.[12] Nowhere does the Plan Administrator deny that LBI's had the authority to act as an agent for the other Lehman Entities (and even if it did, the denial would give rise to a question of fact that may not be resolved on a motion to dismiss). "It is a well-settled rule in New York that a principal is liable on contracts entered into on [its] behalf by [its] authorized agent." *G.D. Searle & Co. v. Medicore Commc'ns*, 843 F. Supp. 895, 908 (S.D.N.Y. 1994).

---

[12]    The Plan Administrator's argument that the Debtors are not jointly and severally liable because LBI also signed as signatory for itself (*see* Objection ¶ 31) makes little sense. The PB Agreement is clear that LBI signed the PB Agreement both "as signatory for itself **and** as agent for the affiliates named herein." PB Agreement at 11 (emphasis added).

52.     Further, not only are the Debtors parties to the PB Agreement pursuant to its explicit terms and were bound to it through their agent (LBI), the Debtors received the benefits of the PB Agreement.  The PB Agreement authorized "Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of [Stonehill Institutional's / Stonehill Offshore's] accounts" but provided that Stonehill "will be entitled to receive all distributions, including, but not limited to, cash . . . made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities."  *See* PB Agreement § 19.  It is clear that the Debtors reaped the benefits of the PB Agreement (including with respect to LBI's function as broker-dealer) and therefore remain bound by their obligations and liabilities thereunder. Accordingly, the Debtors are jointly and severally liable for LBI's obligation to promptly return securities on demand.[13]

ii.     *Stonehill's Proofs of Claim state a prima facie claim for breach of contract.*

53.     Contrary to the Plan Administrator's assertions, Stonehill's Proofs of Claim identify numerous breaches of the PB Agreement, each of which the Debtors are liable for.[14]

54.     <u>First</u>, the Objection does not dispute that LBI breached its duties under the PB Agreement when it failed to promptly return Stonehill's securities on demand.  Rather, the Plan Administrator argues that "Stonehill failed to and cannot identify any contractual provision obligating [the Debtors] . . . to return cash and securities in the event LBI failed to do so."  *See*

---

[13]   The Plan Administrator attempts to rely on the claim filed by Stonehill in the SIPA case as an indication that the chapter 11 Debtors are not liable.  *See* Objection, fn.5.  The Plan Administrator mixes apples and oranges.  The Diminution Claims were never asserted against LBI.

[14]   There are three elements that must be established as part of a *prima facie* claim for breach of contract: (1) existence of a contract, (2) breach by the other party and (3) damages suffered as a result of the breach.  *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).  The Plan Administrator asserts only that the Claims do not identify a breached contractual provision that the Debtors were obligated for.  *See* Objection ¶¶ 35, 40-42.  This is wrong for the reasons stated herein.

21

Objection ¶ 35.  This is incorrect for the reasons stated above: the Debtors are jointly and severally liable for LBI's failure to promptly return Stonehill's securities upon request.  *See supra* ¶¶ 47-52.

55.    Second, the Debtors each had an independent duty as bailees of Stonehill's securities and the failure to promptly return Stonehill's securities upon request was a breach of these duties.  *See* Proofs of Claim ¶ 10.  The PB Agreement is clear in this respect and provides, in relevant part, that "all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity **as agent and bailee for itself and all other Lehman Brothers Entities** . . . ."  *See* PB Agreement § 3 (emphasis added).

56.    Nonetheless, the Plan Administrator suggests that the Debtors' breach of their bailee duties is not supported by the express terms of the PB Agreement.  *See* Objection ¶ 41.  The Plan Administrator cites *Rozsa v. May Davis Grp. Inc.*, 152 F. Supp 2d 526 (S.D.N.Y. 2001) (cited at Objection ¶ 41) for the proposition that the Debtors' breach of their duties as bailees "must be determined from the terms of the contract."  *Id.* at 533.  However, the Objection selectively quotes *Rozsa* as that case recognized that "[b]ailment is a contractual arrangement, **the terms of which may be either express or implied**."  *Id.* (emphasis added).  To the extent that the PB Agreement is not clear, it is implicit in the bailor-bailee relationship that Stonehill's property must be returned to it on demand:  "It is well-established law in [New York] that the failure on the part of a bailee to return bailed property on demand raises a presumption of negligence in the case of a mutual bailment or bailment for hire."  *S. Rafael Jewels Corp. v. Nezaj*, Case No. 107336/11, 2014 N.Y. Misc. LEXIS 2209, at *3 (N.Y. Sup. Ct. 2014) (citing 9 N.Y. Jur. Bailments and Chattel Leases § 86 (2nd ed. 2014)); *see also Pagliai v. Del Re*, Case No. 99 Civ. 9030 (DLC), 2001 U.S. Dist. LEXIS 2195, at *13-14 (S.D.N.Y. Mar. 7, 2001)

(finding that bailee art dealer had duty to return painting to bailor upon request).   Thus, Stonehill's Claims for the Debtors' breach of their bailee duties should not be disallowed.

57.    <u>Third</u>, as alleged in the Proofs of Claim, "LBI was further obligated to hold the securities as financial assets under Article 8 of the Uniform Commercial Code . . . which entitles the owners of securities to have property that is held in a security account protected from the intermediary's other creditors."  Proofs of Claim ¶ 10; *see also* PB Agreement § 3.[15]  LBI clearly failed to do so as evidenced by the loss suffered by and evidenced by the Stonehill Claims.   The Debtors are liable for LBI's direct violation of Article 8 of the UCC because LBI acted as agent for the Debtors under the PB Agreement.  *See supra* ¶ 51.[16]

58.    Accordingly, the Proofs of Claim state a *prima facie* claim for breach of contract because the Proofs of Claim identify multiple independent breaches of the PB Agreement, including these referenced above, for which the Debtors are directly or indirectly liable, and the Objection does nothing to refute the Claims.   At the very least, the Claims for breach of contract are plausible, and Stonehill is entitled to discovery and a trial to prove their validity.

---

[15]    The PB Agreement states that "[Stonehill Institutional / Stonehill Offshore] and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the 'UCC') and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC."  *See* PB Agreement § 3.

[16]    In addition, the Proofs of Claim assert approximately $11 million in damages relating to losses of foreign currency hedges entered into under the PB Agreement.  *See* Proof of Claim ¶ 8 (approx. $4.9 million claims asserted by Stonehill Institutional and approx. $6.1 million asserted by Stonehill Offshore).

**II.    The PB Agreement Does Not, and Cannot, Release
the Debtors From Liability for Stonehill's Claim**

59.    The Plan Administrator's attempts to exculpate the Debtors from liability

for the Claims are unavailing.  Neither of the exculpatory clauses in the PB Agreement applies

here, nor could they.

60.    Section 30.  It is undisputed that section 30 of the PB Agreement does not

by its terms exculpate the Debtors from Stonehill's fraud and misrepresentation claims because

there is a carve-out for "gross negligence or willful misconduct on Lehman Brothers' part."  *See*

PB Agreement § 30.  Fraud and negligent misrepresentation each constitute gross negligence

and/or willful misconduct under New York law.  *See Balaber-Strauss v. N.Y. Tel. (In re Coin*

*Phones)*, 203 B.R. 184, 212 (Bankr. S.D.N.Y. 1996) (finding that utility company's negligent

misrepresentations constituted both gross negligence and willful misconduct); *Basis Pac-Rim*

*Opportunity Fund (Master) v. TCW Asset Mgt. Co.*, 2013 N.Y. Misc. LEXIS 4032, at *23, *27

(N.Y. Sup. Ct. 2013) (denying motion to dismiss fraud claim and finding that such claim was not

barred by clause in investment advisory agreement purporting to limit liability for gross

negligence, willful misconduct or bad faith).  Further, although the Debtors' breach of the PB

Agreement is based on Lehman Brothers' failure to return Stonehill's securities, Stonehill's

breach of contract Claims were directly and proximately caused by the Lehman Entities'

fraudulent misrepresentations.[17]  Accordingly, section 30 of the PB Agreement does not

exculpate the Debtors for any of Stonehill's Claims.

61.    In addition, section 30 is simply inapplicable to any of the claims asserted

in the Proofs of Claim based on its explicit and unambiguous terms.  Section 30 shields the

---

[17]    Lehman's misrepresentations induced Stonehill to maintain its customer account until the
commencement of LBI's SIPA Proceeding and this was a reasonably foreseeable consequence of
such misrepresentations.  *See* Proofs of Claim ¶ 16.

Debtors only from liability "in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action …."  Stonehill's claims do no relate to the execution or clearing of trades and thus do are not covered by Section 30. Moreover,  the residual term "or other action" does not apply to Stonehill's claims because it has to be interpreted as covering items similar to those listed in front of it, *see Regent Ins. Co. v. Storm King Contr., Inc.*, 2008 U.S. Dist. LEXIS 16513, at *23 (S.D.N.Y. Feb. 26, 2008) (citing *In re Riefberg*, 446 N.E.2d 424, 459 (1983)), (under New York law, a court interpreting contract must apply the rule of construction known as *ejusdem generis* pursuant to which when there is a series of specific defining words following a more general term, the general term takes on the meaning of the more defined items in the descriptive list), as any other interpretation would make the enumerated items superfluous.  *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (contract must interpreted as integrated whole without superfluous provisions; citing Second Circuit and New York authority).   In any event, any ambiguity as to the scope of section 30 has to be interpreted against the Debtors, as it was the Debtors' form agreement that was presented to Stonehill as a "take it or leave it" proposition.[18] *See Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2d Cir. 1985) (contracts of adhesion are to be strictly construed against the drafter); *Fein v. Chi. Ins. Co.*, 2003 U.S. Dist. LEXIS 12374, at *18 (S.D.N.Y. July 16, 2003) (ambiguous contract should be "'construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language'" (citing *Jacobson v. Sassower*, 499 N.Y.S.2d 381, 382 (1985))).

---

[18]   To the extent necessary, Stonehill is willing to submit an affidavit attesting to this fact.

62.    <u>Section 29</u>.  Likewise, section 29 of the PB Agreement does not by its terms exculpate the Debtors from Stonehill's Claims.  Section 29 of the PB Agreement only purports to release Lehman Brothers from "force majeure" events -- "any loss caused, directly or indirectly, by government restrictions . . . suspension of trading . . . **or other conditions beyond Lehman Brothers' control**."  *See* PB Agreement § 29 (emphasis added).  Stonehill's fraud and misrepresentation Claims are based on Lehman Brothers' own actions—affirmative misrepresentations of fact made to Stonehill (and the public)—that occurred **before** the commencement of LBI's SIPA Proceeding.[19]  *See* Proofs of Claim ¶ 16 (emphasis added).  Thus, the Plan Administrator's contention that Stonehill's fraud and misrepresentation Claims "arose from governmental restrictions and a suspension of trading" (*see* Objection ¶ 22) is simply disingenuous.  The Debtors' fraudulent misrepresentations and the imprudent conduct of their businesses, including the use of massive leverage, caused the breach.  Even if the Debtors were to hang their hat on the bankruptcy filing as the root cause for the breach, which it is not, a bankruptcy filing is not a "force majeure."[20]  *See Champlin Petroleum Co. v. Mingo Oil Producers*, 628 F. Supp. 557, 560-61 (D. Wyo. 1986) (institution of bankruptcy proceedings was not "force majeure"); *Webb v. Hardage Corp.*, 471 So. 2d 889, 894 (La. Ct. App. 1985) (voluntary filing for bankruptcy relief did not trigger "force majeure" clause).

---

[19]    The Claims allege, among other things, that "Lehman Brothers and their representatives succeeded in persuading [Stonehill] to refrain from demanding the return of its assets held by LBI and other Lehman Entities and otherwise taking actions to promptly reduce its commercial exposure to Lehman Brother **prior to the effective curtailment of LBI's normal operations and the subsequent commencement of the SIPA proceeding**."  *See* Proofs of Claim ¶ 16 (emphasis added).

[20]    "Force majeure" provisions should be interpreted narrowly.  *See Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902-03 (1987) (catchall clauses providing for events "beyond the control" of a party are "not to be given expansive meaning").  The burden of demonstrating "force majeure" is on the party seeking to have its performance excused.  *Phillips P.R. Core, Inc. v. Tradax Petroleum, Ltd.*, 782 F.2d 314, 319 (2d Cir. 1985).

63.    Stonehill's breach of contract Claims are also not covered by section 29 of the PB Agreement because such Claims were directly and proximately caused by Lehman Brothers' own (imprudent) conduct, rather than by events beyond their control.

64.    Even if sections 29 or 30 of the PB Agreement by their terms purported to release the Debtors from Stonehill's Claims, such exculpation clauses would be invalid.  Under New York law, exemptions from liability "for willful or grossly negligent acts have been viewed as wholly void."  *Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979); *see also Kalisch-Jarcho Inc. v. City of New York*, 461 N.Y.S.2d 746, 750 (1983) ("[A]n exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing.").  Applying this rule, New York courts have denied efforts to dismiss fraud claims based on exculpation clauses.  *See Cirillo v. Slomin's Inc.*, 196 Misc. 2d 922, 935 (N.Y. Sup. Ct. 2003) (denying motion to dismiss fraud claim and finding that, whether or not the exculpatory clause by its terms applied to the fraud claim, an exculpatory clause in a New York contract cannot preclude a fraud claim so long as the underlying misrepresentations are reckless or intentional); *see also Am. Tissue, Inc. v. Donaldson*, 351 F. Supp. 2d 79, 99 (S.D.N.Y. 2004) (noting that an exculpatory clause is void as against public policy if it purports to shield a defendant from claims for fraud or for other claims involving gross negligence or willful misconduct).

65.    The Plan Administrator's heavy reliance on (the non-binding) *In re MF Global Inc.*, 515 B.R. 434 (Bankr. S.D.N.Y. 2014), does not change this result as that case involved entirely different facts and circumstances.   In that case, customers filed their diminution claims **in the SIPA proceeding itself** and in denying these claims the court reasoned that "[c]ustomers of a failed brokerage firm cannot recover **in a SIPA proceeding** for market

27

losses that occur between the date the SIPA proceeding is commenced and the date on which

their securities are returned to them." *Id.* at 437, 440 (emphasis added). Here, unlike in *MF*

*Global* where the claims were brought in the SIPA proceeding, Stonehill filed its Proofs of Claim

in the Debtors' chapter 11 cases and therefore allowing Claims for the Debtors' own fraud,

negligent misrepresentations and breach of contract would not "undermine the purpose and rules

laid out in SIPA . . . ." *See id.* at 442, n.9.

 66. Unlike the customer agreements in *MF Global*, the PB Agreement does

not by its terms exculpate the Debtors from liability for Stonehill's Claims. *See supra* ¶ 60-62.

The *MF Global* customer agreements released MFGI from liability "for any loss . . . caused

directly or indirectly by, *inter alia*, (1) any Applicable Law, or order of any court, (2) suspension

or termination of trading, and (3) any other causes beyond [MFGI's] control." *Id.* at 441

(internal quotations omitted). The customer claimants alleged that "MFGI is liable for the

[p]osition [l]osses because those [l]osses **were caused by operation of the MFGI Liquidation**

**Order**, which in turn was caused by MFGI's gross negligence and willful misconduct." *Id.*

(emphasis added). The court disallowed the customers' claims and reasoned that there was no

exception for gross negligence or willful misconduct under the customer agreements for

"liability resulting from the required termination or suspension of trading upon the

commencement of the SIPA proceeding." *Id.* Stonehill's Claims are inapposite to those of the

customers in *MF Global*. Unlike in *MF Global* where the customers alleged their "[l]osses were

caused by operation of the MFGI Liquidation Order," Stonehill's diminution losses flow from

Lehman Brothers' own misrepresentations that enticed and caused Stonehill to forbear from

exercising its right to demand the return of its securities prior to the commencement of LBI's

SIPA Proceeding.  Thus, the root cause here is the Debtors' fraud, not the commencement of the

SIPA case (or the Debtors' bankruptcy cases).

68.	Finally, the customer agreements in *MF Global* were governed by Illinois

law.  *Id.* at 440, n.8.  Here, the PB Agreement is governed by New York law.  *See* PB Agreement

§ 24.  As discussed above, even if the PB Agreement by its terms claimed to release the Debtors

from Stonehill's Claims, such exculpation would be invalid as a matter of New York public

policy.  *See supra* ¶ 64.  Accordingly, the PB Agreement does not release the Debtors from

liability for Stonehill's Claims.

### III.	The Fraud and Misrepresentation Claims Are Not Duplicative of the Breach of Contract Claims

68.	Stonehill's fraud and misrepresentation Claims are not duplicative of the

breach of contract Claims.  As the Objection acknowledges, a fraud or misrepresentation claim is

not duplicative of a breach of contract claim where either: (1) the fraudulent misrepresentations

are collateral or extraneous to the contract, (2) there is an independent legal duty separate from

the duty to perform under the contract, or (3) there are special damages caused by the

misrepresentations that are unrecoverable as contract damages.  *See Bridgestone/Firestone, Inc.*

*v. Recovery Credit Servs. Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (cited at Objection ¶ 60).

69.	Stonehill's fraud and misrepresentation claims easily fit within the first

two prongs of the *Bridgestone/Firestone* test.[21]  On the first prong, the PB Agreement is silent on

---

[21]	Further, to the extent that the Plan Administrator is correct, and the Debtors had no relevant
obligations under the PB Agreement, Stonehill would be entitled to pursue its fraud and
misrepresentation Claims.  *See Richbell Info Servs., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575,
589 (App. Div. 1st Dept. 2003) ("[A] fraud claim may be dismissed *as duplicative* only as against a
defendant against whom the related contract claim is viable."); *Gotham Boxing, Inc. v. Finkel*, 856
N.Y.S.2d 498, 498 (N.Y. Sup. Ct. 2008) ("Where there is no viable breach of contract claim, the
fraud claim cannot be dismissed as duplicative of it"); *but see Gutterman v. RGA Accessories, Inc.*,
602 N.Y.S.2d 116, 117-18 (App. Div. 1st Dept. 2008) (dismissing fraud claim as duplicative even
though breach of contract claim was barred by the Statute of Frauds).

the subject matter of Lehman Brothers' misrepresentations (*i.e.* its false representations

concerning its liquidity and financial condition) and therefore, the misrepresentations are

collateral or extraneous to the PB Agreement.  As to the second prong, there was a bailor-bailee

relationship between Stonehill and Lehman Brothers, which serves as a special relationship and

independently renders the fraud and misrepresentation claims non-duplicative of the breach of

contract claims.

        i.    *Lehman Brothers' misrepresentations were collateral or extraneous to the terms of the PB Agreement.*

       70.    Stonehill's fraud and misrepresentation Claims are not duplicative because

the underlying misrepresentations were collateral or extraneous to the PB Agreement.

       71.    A fraud or misrepresentation claim is not duplicative where it is "based on

some additional representation, omission, or conduct, other than the contract itself, which was

fraudulent when performed." *Gotham Boxing, Inc.*, 856 N.Y.S.2d  at 498; *see also Astroworks,*

*Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616-617 (S.D.N.Y. 2003) (denying motion to

dismiss fraudulent inducement claim and reasoning that three of the four alleged

misrepresentations did not "duplicate" the essential terms of the oral agreement underlying the

breach of contract claim).

       72.    In *Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100

(E.D.N.Y. 2009), the court applied the above rule to facts that are analogous to the present case

and denied a motion to dismiss the plaintiff's fraud claim as duplicative of the breach of contract

claim. *Id.* at 113.  There, the parties had entered into an exclusive licensing agreement for the

"TINKERBELL (R)" trademark. *Id.* at 104-05.  After execution of the licensing agreement, the

plaintiff expressed concern regarding the defendants' ownership and protection of the trademark,

particularly vis-à-vis the Walt Disney Company. *Id.* at 106.  In response to these concerns, the

defendants sent the plaintiff a letter stating, among other things, that the defendants were "ready to stand by its trademark rights." *Id.* Despite the representation in the letter, the defendants later entered into an agreement to transfer the trademark to Disney and terminated the licensing agreement with the plaintiff. *Id.* at 107.

73.     The plaintiff sued the defendants for, among other things, fraud and breach of contract. *Id.* With regard to the fraud claim, the plaintiff alleged "that defendants committed fraud by misrepresenting their willingness to protect and maintain the mark . . . thereby inducing plaintiff to revive the TINKERBELL(R) mark so that defendants could sell the mark to Disney for a substantial profit." *Id.* at 113. One of the defendants moved to dismiss the plaintiff's post-contract fraud claim as duplicative of the breach of contract claim. The court denied the motion reasoning that "defendants made specific representations after the execution of the [licensing] [a]greement regarding issues on which the [a]greement is silent, and that plaintiff relied on those representations by continuing to design and produce items bearing the trademark, even though it is undisputed that plaintiff had no obligation to comply with the [a]greement." *Id.*

74.     Here, like the misrepresentations in *Icebox-Scoops*, the Proofs of Claim allege numerous misrepresentations on which the PB Agreement is silent. The misrepresentations identified in the Proofs of Claim concern Lehman Brothers' financial condition in the days leading to LBI's SIPA Proceeding and the Debtors' chapter 11 filings. Lehman Brothers, however, had no contractual duty to provide information regarding its financial strength to Stonehill; the PB Agreement did not impose any financial reporting obligations or even any financial covenants on Lehman Brothers. Simply put, the misrepresentations do not fall within the four corners of the PB Agreement. Moreover, like the plaintiff in *Icebox-Scoops* who "relied on th[e] representations by continuing to design and

31

produce items bearing the trademark, even though it is undisputed that plaintiff had no obligation to comply with the [a]greement[,]" Stonehill relied on Lehman Brothers' misrepresentations by continuing to hold securities with Lehman Brothers, despite the fact that Stonehill could reduce its exposure to Lehman Brothers at any time without breaching the PB Agreement. *Id.* at 113. As such, the misrepresentations are collateral or extraneous to the PB Agreement.

75.    The Plan Administrator's citation to *Crabtree v. Tristar Auto. Group, Inc.*, 776 F. Supp. 155 (S.D.N.Y. 1991) (quoted at Objection ¶ 64) for the proposition that "[a] representation that performance will be made is not distinct from the contract" does not change this result. *Id.* at 163. Although it is not mentioned in the Objection, *Crabtree* recognized an exception to that rule where "the promise made was a representation of present fact, not future intent." *Id.*; *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (reversing dismissal of fraudulent inducement claim because the allegations "involve[d] misstatements and omissions of present facts, not contractual promises regarding prospective performance[,]" and noting that the result would be unchanged even if the misrepresentations constituted a breach of contractual warranties).[22]

76.    Here, contrary to the Plan Administrator's assertions, the fraud and misrepresentation Claims are based on numerous misrepresentations of present fact or insincerely held opinions that incorporate present fact. For example, the Claims allege that "Mr. Wickham stated that Lehman's unrealized appreciation in various assets . . . were more than

---

[22]    Although the court in *John Paul Mitchell Sys. v. Quality King Distributors, Inc.,* Case No. 99 Civ. 9905 (SHS), 2001 U.S. Dist. LEXIS 11587 (S.D.N.Y. Aug. 13, 2001), at *10-14 (cited at Objection ¶ 64), found that a fraud claim was duplicative where the misrepresentations consisted of false statements of contractual performance and attempted concealments of contractual breach, *Quality King* was effectively overruled by the Second Circuit in *Allegheny* to the extent that *Quality King* stands for the proposition that misrepresentations of present fact are not collateral or extraneous to a contract.

sufficient to cover possible unrealized losses in its portfolio . . . ."[23]  *See* Proofs of Claim ¶ 15. Further, the Proofs of Claim allege that "Mr. Wickham stated that Lehman had adequate liquidity because unlike Bear Stearns it prudently financed its customers with matched funding and had sufficient liquidity from sources it believed to be reliable to meet all of its obligations for a year even if no new financing was available, that it has $12 billion of surplus cash, and also cited the availability of secured financing from the federal reserve, none of which was used."  *See* Proofs of Claim ¶ 14.

77.    The Plan Administrator's suggestion that the foregoing misrepresentations only concerned future performance because "they were intended to 'reassure [Stonehill] . . . regarding the Lehman Entities' financial condition and the stability of its prime brokerage operation'" (*see* Objection ¶ 65 (quoting Proofs of Claim ¶ 14)) is erroneous.  That certain misrepresentations were **intended** to reassure Stonehill of Lehman Brothers' future stability does not detract from the truth of the matter:  each of the above-mentioned misstatements concerned Lehman Brothers' **present** liquidity position and financial wherewithal.  Accordingly, the fraud and misrepresentation Claims are non-duplicative because the underlying misrepresentations are collateral or extraneous to the PB Agreement.  In any event, a recent decision in this District held that misrepresentations of subsequent assurances of performance are not duplicative of a breach of contract claim where the misrepresentations occurred after the contract was executed.  *See Atmosphere Sciences, LLC v. Schneider Advanced Techs. Inc.*, Case No. 12 Civ. 3223 (SAS), 2012 U.S. Dist. LEXIS 135099, at \*32 (S.D.N.Y. Sept. 19, 2014) (denying motion to dismiss fraud claim as duplicative of contract claim where the plaintiff "allege[d] a sustained course of

---

23    This statement undoubtedly referred to mark-to-market valuations of securities and was understood by Stonehill and the market as such, and therefore serves as an additional acknowledgement of the Debtors' fraudulent misrepresentations – over-marking their positions by hundreds of millions of dollars on their public financial statements.

conduct that continued well after the last contract between the parties" and reasoning that "[a]ny 'subsequent assurances of performance' would ensure that a fraudulent representation claim is not 'virtually identical to the promise contained in the contract'").

        *ii.*    *There was a special relationship between Stonehill and the Debtors.*

      78.    A further independent basis for Stonehill's fraud and misrepresentations Claims being non-duplicative is due to the bailor-bailee relationship between Stonehill and the Debtors.

      79.    New York courts have held that a bailor-bailee relationship serves as a special relationship and precludes any argument that a fraud or misrepresentation claim is duplicative of a breach of contract claim. In *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d at 279, the plaintiffs alleged that a bailor-bailee relationship was established pursuant to a contract provision stating that the plaintiffs retained ownership rights in property transferred to the defendants until the same was paid for. *Id.* at 283. The plaintiffs further alleged that the defendants breached their duty as bailees and this breach was the basis of the fraud claim. *Id.* at 282-83. The appellate court held that the trial court erred in dismissing the plaintiffs' fraud claim as duplicative and reinstated the claim. *Id.* at 283. Although the plaintiffs alleged that the contract created the bailor-bailee relationship, the appellate court reasoned that the defendants' alleged breach of their duty as bailees was "distinct from the defendants' contractual obligations." *Id.*

      80.    Here, each of the Lehman Brothers entities (including the Debtors) acted as bailees for Stonehill's securities and cash. The Proofs of Claim allege that "LBI and the Lehman Entities were required under state law to act in accordance with their respective

obligations as [] bailees of the securities . . . ." *See* Proofs of Claim ¶ 10.[24]  The Lehman

Brothers entities breached their respective obligations as bailees by, among other things,

misrepresenting the financial stability of Lehman Brothers and therefore the safety of Stonehill's

securities.  Accordingly, Stonehill's fraud and misrepresentations Claims are not duplicative of

its breach of contract Claims because there was a special relationship between Stonehill and the

Debtors.[25]

## CONCLUSION

WHEREFORE, Stonehill respectfully requests that the Court deny the Objection

in its entirety and grant it such other relief as the Court deems just and proper.

Dated:  New York, New York
       December 15, 2014

DECHERT LLP

By:  /s/ Allan S. Brilliant

Allan S. Brilliant
Shmuel Vasser
Stephen M. Wolpert
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
Fax. (212) 698-3599

*Attorneys for Stonehill Institutional*
*Partners, LP and Stonehill Offshore*
*Partners Limited*

---

[24]    The PB Agreement states, in relevant part, that "[Stonehill] hereby acknowledge[s] and agree[s] that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities . . . ."  *See* PB Agreement § 3.

[25]    The Objection completely ignores the Debtors' respective obligations as bailees of Stonehill's securities in concluding that there was no special relationship.  As such, the Plan Administrator's argument that "Stonehill's express acknowledgement of its understanding that 'Lehman Brothers' was not acting in an advisory capacity under the PB Agreement preclude it from arguing the existence of any 'special relationship' between the parties" (*see* Objection ¶ 63) is entirely misplaced.  The bailor-bailee relationship is not precluded from serving as a special relationship merely because another type of special relationship was not present.

35