Hearing Date: January 15, 2015, 10:00 a.m. ET
Objection Deadline: December 29, 2014, 4:00 p.m. ET

WINSTON & STRAWN LLP
David Neier
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Nomura Securities Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF NOMURA SECURITIES CO., LTD.,
TO THE FOUR HUNDRED AND EIGHTY-SIXTH
OBJECTION TO CLAIMS OF THE PLAN ADMINISTRATOR**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Nomura Securities Co., Ltd. ("Nomura") responds and opposes (the "Response") the objection dated November 26, 2014 [Docket No. 47078] (the "Objection") by Lehman Brothers Holdings Inc., as Plan Administrator ("LBHI" or the "Plan Administrator"), to Claim No. 14150 and Claim No. 17201 (collectively, the "Guarantee Claims"), and respectfully states as follows:[1]

**Background**

1.      Nomura is the holder of two timely filed Guarantee Claims against LBHI, Claim No. 14150 in the amount of $52,856,150.00, which is annexed hereto as Exhibit A, and Claim

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to those terms in the Objection.

No. 17201 in the amount of $21,210,558.13, which is annexed hereto as <u>Exhibit B</u>. Each Guarantee Claim relates to a Primary Claim against Lehman Brothers Japan Inc. ("<u>LBJ</u>"), which is a foreign non-debtor that was affiliated with LBHI.

2. On September 15, 2008 (the "<u>Petition Date</u>"), LBHI filed a voluntary bankruptcy petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101 *et seq.* (the "<u>Bankruptcy Code</u>").

3. On September 16, 2008, LBJ commended insolvency proceedings in Japan.

4. On December 6, 2011 (the "<u>Confirmation Date</u>"), the Bankruptcy Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors attached thereto [Docket No. 23023] (the "<u>Plan</u>").

5. Both Primary Claims have been Allowed in the LBJ insolvency proceeding, as follows:

|  | **Claim No. 14150** | **Claim No. 17201** |
|---|---|---|
| LBJ Allowed Claim Amount: | ¥ 5,542,192,953 | ¥ 1,511,686,829 |
| Aggregate recovery from LBJ to date: | ¥ 4,104,543,046 | ¥ 1,119,520,917 |
| Recovery Percentage to date: | 74.1% | 74.1% |

6. Although the Plan Administrator states that the Guarantee Claims are "Satisfied Claims," that is plainly not the case. Both of the Guarantee Claims have to date received a recovery of 74.1% and not 100%, a fact that is omitted from the Plan Administrator's Objection.

**Argument**

7. The Plan Administrator contends that "[t]he Relevant Guarantee Claims should be disallowed and expunged in their entirety pursuant to pursuant to Section 502(b) of the

2

Bankruptcy Code." Objection ¶9. But that statement is not correct. In fact, the Plan Administrator is filing Objection based on language in the Plan that is wholly contrary to Bankruptcy Code Section 502(b). Instead, the Plan Administrator relies exclusively on language in the Plan that violates the Bankruptcy Code to overstate the recoveries on the Primary Claims and thereby claim that nothing is owed on the Guarantee Claims.

8. The Plan Administrator contends that:

> The Relevant Guarantee Claims correspond to Primary Claims against LBJ that have been allowed by and against LBJ. *Each Relevant Guarantee Claim would be deemed satisfied in full in accordance with Section 8.13 of the Plan if it was Allowed in an amount equal to the corresponding Primary Claim*. Accordingly, pursuant to the Plan and well-settled principles of suretyship law, LBHI would have no liability on account of the Relevant Guarantee Claims.

Objection ¶11 (emphasis added).

9. The Bankruptcy Code requires that all claims be valued in United States currency as of the Petition Date. Bankruptcy Code Section 502(b), which governs the allowance of contested prepetition claims, provides in pertinent part that

> [T]he court, after notice and a hearing, *shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition*, and shall allow such claim in such amount….

11 U.S.C. §502(b) (emphasis added).

10. The plain language of Bankruptcy Code Section 502(b) thus requires the conversion of allowed claims in foreign currency to U.S. currency based on the exchange rate in effect on the petition date. *See Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 250 (2d Cir. 1999) (bankruptcy law claims in a foreign currency are determined by converting them to U.S. dollars as of the date of filing of the petition); *In re Global Power Equipment Group, Inc.*, 400 B.R. 17, 20 (D. Del. 2009) ("the plain language of Section 502(b) requires the

3

Bankruptcy Court to determine the amount of the allowed claim in U.S. currency, using the exchange rate in effect on the Petition Date."); *see also TransCanada Pipelines Ltd. v. USGen New England, Inc.*, 458 B.R. 195, 225 (D. Md. 2011) ("the plain language of § 502(b) states that any claim must be converted to U.S. currency at the exchange rate in effect on the petition date"); *In re Aaura, Inc.*, No. 06-B-01853, 2006 WL 2568048, at *4 n.5. (Bankr. N.D. Ill. Sept. 1, 2006) (holding that "Petition date valuation is mandatory" and that "Section § 502(b) gives a clear directive as to which date and what currency are to be used in determining the amount of a disputed claim."); 4 *Collier on Bankruptcy* (16th Ed.) (2013) ¶502.03[1][c] f.n.6a ("One consequence of the requirement that claims be determined as of the petition date is that where a claim is denominated in currency other than United States dollars, its allowed amount is determined by converting the foreign currency into dollars at the exchange rate in effect on the petition date.").

11. Lehman has advised Nomura that the exchange rate in effect as of the Petition Date for LBHI is 106.26 Japanese Yen for each dollar. If the Primary Claims were calculated using this exchange rate, the result would be as follows:

|  | **Claim No. 14150** | **Claim No. 17201** |
| --- | --- | --- |
| LBJ Allowed Claim Amount: | $52,156,907.00 | $14,226,301.80 |
| Aggregate recovery from LBJ to date: | $38,627,357.86 | $10,535,675.86 |
| Recovery Percentage to date: | 74.1% | 74.1% |

12. The Bankruptcy Code dictates that Primary Claims and Guarantee Claims should both be valued in the same manner using the same exchange rate in effect as of the Petition Date. However, instead of using the currency exchange rate required by Bankruptcy Code Section

4

502(b), the Plan Administrator has calculated the Primary Claim in a manner decidedly different from that used pursuant to the Bankruptcy Code for Guarantee Claims, namely "*in accordance with Section 8.13 of the Plan.*" Objection ¶11 (emphasis added). According to the Plan Administrator, Section 8.13 of the Plan provides as follows:

> (d) For purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT *on the Confirmation Date*.

Objection ¶11 f.n.2 (emphasis added).

13. Using the calculation method set forth in Section 8.13(d) of the Plan, the Plan Administrator artificially inflates the amount paid by a foreign non-debtor, LBJ, using the exchange rate as of the *Confirmation Date* instead of as of *Petition Date* as required by Bankruptcy Code Section 502(b). Lehman has advised Nomura that the exchange rate as of the Confirmation Date of December 6, 2011 is 77.78. So according to the Plan Administrator, the method to determine a purported "deemed Satisfied" Guarantee Claim is as follows:

|  | **Claim No. 14150** | **Claim No. 17201** |
|---|---|---|
| LBJ Allowed Claim Amount *using 106.26 as of Petition Date (9/15/08)*: | $52,156,907.00 | $14,226,301.80 |
| Aggregate recovery from LBJ to date *using 77.78 as of the Confirmation Date (12/6/11)*: | $52,771,188.56 | $14,393,429.12 |
| Recovery Percentage to date: | >100% | >100% |

14. The statutory language at issue in Bankruptcy Code Section 502(b) —"in lawful currency of the United States as of the date of the filing of the petition"—was added in

5

connection with the enactment of the Bankruptcy Amendments & Federal Judgeship Act of 1984. The legislative history confirms that claims are to be determined in U.S. currency as of the Petition Date. S. REP. NO. 97-150, Cong. 1st Sess., at ¶ 2 (1981). Without such language, parties could seek to "game" the bankruptcy claims resolution system by using different exchange rates and protracting the disposition of claims depending on the perceived fluctuation of the exchange rate.

15.    Here, that is exactly what the Plan Administrator has done by seeking to use different exchange rates from dates over three years apart for the determination of the Primary Claims and Guarantee Claims, valuing the Guarantee Claims as of the Petition Date (9/15/08) and the Primary Claims as of the Confirmation date (12/6/11). Aside from violating the clear directives of the Bankruptcy Code that all claims be valued as of the Petition Date, such gamesmanship should not be countenanced as it discriminates against holders of claims that are valued in foreign currencies as compared to holders of claims valued in U.S. currency. In addition to being in violation of the Bankruptcy Code, using any exchange rate on any date other than the Petition Date to value distributions on foreign currency claims will inevitably lead to unfair results.

16.    The Plan Administrator's attempt to reap a benefit from the significant depreciation of the U.S. dollar against foreign currencies in the time between the Petition Date and the Confirmation Date is precisely the kind of conduct that Congress prohibited when it amended Bankruptcy Code Section 502(b) in 1984.

17.    The Plan Administrator provides precedents that a creditor should not be able to recover more than is owed by a recovery on guarantee (Objection ¶9), but those precedents, most of which deal with joint tortfeasors and not guarantee claims, are completely inapposite to facts

6

here, where the Plan Administrator is attempting to avoid paying on the Guarantee Claims where there has **_not_** been a complete recovery on the Primary Claims.  Indeed*, **all of the precedent cited by the Plan Administrator confirms that a creditor may recover on a guarantee until that creditor is actually paid in full.*** See *Bankers' Trust Co. v. Irving Trust Co. (In re United Cigar Stores*), 73 F.2d 296, 298 (2d Cir. 1934) (holder of guarantee claim against debtor "may prove his claim *for the full amount owing* such creditor.") (emphasis added); Ross v. Worth Elec. Supply Co., Inc., 420 N.Y.S.2d 441, 443 (N.Y. Civ. Ct. 1979) (loan **paid in full** from life insurance upon death of primary obligor discharged both primary obligor and guarantor); *see also Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) ("A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, *at least to the extent of the payment made*") (emphasis added, internal quotation and citation omitted); *United States v. Zan Mach. Co.*, 803 F. Supp. 620, 623 (E.D.N.Y. 1992) ("A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, *at least to the extent of the payment made.*") (emphasis added, internal quotation and citation omitted); *Leighty v. Brunn*, 510 N.Y.S.2d 174, 175 (N.Y. App. Div. 1986) (medical malpractice plaintiff could not recover "separately for injuries arising under each of her theories of liability, i.e., medical malpractice and lack of informed consent" for one damage claim, ***but entitled to full recovery in respect of damages asserted***); RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 19 (1996) ("***To the extent that the underlying obligation is discharged by performance or other satisfaction by the principal obligor***, the secondary obligation is also discharged.") (emphasis added).

       18.      Moreover, contrary to the Plan Administrator's arguments, it is blackletter law

7

that a creditor may assert the full amount of its guarantee claim against a debtor's estate without deduction for any amounts received from the primary obligor until that creditor is actually paid in full. A debtor cannot simply decree otherwise. *See Reconstruction Fin. Corp. v. Denver & Rio Grande Western R.R. Co.*, 328 U.S. 495, 529 (1946) ("in bankruptcy proceedings . . . a creditor secured by the property of others need not deduct the value of that collateral or its proceeds in proving his debt."); *Ivanhoe Bldg. & Loan Ass'n v. Orr*, 295 U.S. 243, 245-47 (1935) (holding that a creditor may recover from non-debtor parties without reducing the value of its claim against a bankruptcy estate) (hereafter, "*Ivanhoe*"); *Nat'l Energy & Gas Transmission, Inc. v. Liberty Elec. Power, LLC (In re Nat'l Energy & Gas Transmission, Inc.)*, 492 F.3d 297, 301 (4th Cir. 2007) (citing *Ivanhoe* and holding that "a creditor need not deduct from his claim in bankruptcy an amount received from a non-debtor third party in partial satisfaction of an obligation."); In *re Gessin*, 668 F.2d 1105, 1107 (9th Cir. 1982) ("It has long been established that a creditor is entitled to pursue his claims against others liable on the same debt to the full extent of the amount owed on that debt."); *Feder v. John Engelhorn & Sons*, 202 F.2d 411, 412 (2d Cir. 1953) (citing *Ivanhoe* and holding that "the creditor . . . may prove his claim in full in the bankruptcy proceeding, although of course he may not retain dividends [from the estate] which, when combined with the amount realized on the security, exceed his claim"); *In re Emergency Beacon Corp.*, 48 B.R. 341, 352 (S.D.N.Y. 1985) ("[I]t is settled law that a creditor, secured by property of a third party, may assert the full amount of its claim against the debtor's estate without deduction for the security."); 6 *Collier Bankruptcy Practice Guide* ¶94.03[3][b][xiii] ("There is virtually no authority to undercut the proposition that a creditor may assert its full claim against both the debtor and guarantor estates….(although recovery is still capped at 100 percent.)"); see also *In Washington Bancorporation v. FDIC (In Washington*

8

*Bancorporation*) Civ. No. 95-1340, 1996 WL 148533, at *18 (D.D.C. Mar. 19, 1996), ("The principle applied by the court in this case is simply that a bankruptcy claim is not reduced or impaired by subsequent payments received from third party obligors until such claim has been satisfied in full."); *In re Sacred Heart Hospital of Norristown*, 182 B.R. 413, 417 (Bankr. E.D. Pa. 1995) ("creditor can seek to prove its entire claim in the bankrupt's case notwithstanding the existence of third party collateral or guarantees of payment so long as the claimant does not seek to recover more than one full payment of its claim from whatever source."); *In re F.W.D.C., Inc.*, 158 B.R. 523, 528 (Bankr. S.D. Fla. 1993), ("the Court is herein allowing a creditor to prove the total amount of an indebtedness against a guarantor-debtor without deducting the amount of collateral received from a third party"); *In re Lloyd McKee Motors, Inc.*, 157 B.R. 484, 486 (Bankr. D. N.M. 1993) (claims allowed in full against guarantors for voting purposes without any deduction for amounts that might be received from principal obligor); *In re Coastland Chrysler Plymouth, Inc.*, 76 B.R. 212, 213 (Bankr. S.D. Fla. 1987) (creditor entitled to assert full claim against debtor notwithstanding receipt of partial payment from surety); *In re Realty Assocs. Sec. Corp.*, 66 F. Supp. 416, 424 (E.D.N.Y. 1946) (citing, inter alia, *Merrill v. National Bank of Jacksonville*, 173 U.S. 131 (1899)) ("holder of a claim upon which several parties are liable may prove its entire claim against the estate of any who become bankrupt and recover dividends calculated on the basis of such entire claim as it existed when the petition was filed, without regard to partial payments made by other obligors until from all sources it has been paid in full.").

19.     The Plan Administrator fails to state any authority that would allow for different exchange rates to be used for Primary Claims and Guarantee Claims in violation of Bankruptcy Code Section 502(b).

9

20. The Plan Administrator may attempt to justify in a reply that the valuation method for Primary Claims set forth in Section 8.13(d) of the Plan is binding on Nomura notwithstanding that it is contrary to the Bankruptcy Code. That justification is without merit.

21. <u>First</u>, the Plan does not support the Plan Administrator's Objection. The Objection omits the last sentence of Section 8.13(d) of the Plan. When read in full (as opposed to the portion quoted in the Objection), Section 8.13(d) states as follows:

> For purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date. ***Nothing contained in this provision shall affect the applicable exchange rate for determining the Allowed amount of any Claim under section 502(b) of the Bankruptcy Code.***

Plan §8.13(d) (emphasis added).

22. The last sentence, highlighted above, of Section 8.13(d) is omitted from the Objection by the Plan Administrator. *See* Objection ¶11 f.n.2. The problem for the Plan Administrator is that the definition of "Claim" includes both Primary Claims and Guarantee Claims. Thus the definitions of "Claim", "Primary Claim", and "Guarantee Claim" in the Plan are as follows:

> 1.22 <u>Claim</u> shall have the meaning assigned to such term in section 101(5) of the Bankruptcy Code.
>
> 1.62 <u>Guarantee Claim</u> means a ***<u>Claim</u>*** asserted against LBHI on the basis of a guarantee, promise, pledge, indemnity or similar agreement by LBHI (a) to satisfy an obligation or liability of another entity or (b) with respect to asset values, collection or net worth of another entity. [emphasis added]
>
> 1.125 <u>Primary Claim</u> means a ***<u>Claim</u>*** against a Primary Obligor for which a corresponding Guarantee Claim has been asserted. [emphasis added]

23. Thus, the last sentence of Section 8.13(d) of the Plan, "[n]othing contained in this

10

provision shall affect the applicable exchange rate for determining the Allowed amount of any ***Claim*** under section 502(b)of the Bankruptcy Code, where the definition "***Claim***" includes both Primary Claims and Guarantee Claims, means that the Section 8.13(d) cannot be used to overrule the plain meaning of Bankruptcy Code 502(b) requiring the use of the exchange in effect as of the Petition Date for all Claims, including both Primary Claims and Guarantee Claims. Enforcement of the Plan eviscerates the Plan Administrator's Objection.

24. <u>Second</u>, a Plan cannot overrule the clear directives of Bankruptcy Code Section 502(b) to use the Petition Date as the date to value all claims. "Petition date valuation is mandatory." *In re Aaura, Inc.*, 2006 WL 2568048, at *4 n.5; 11 U.S.C. §502(b) (court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, ***and shall allow such claim in such amount***") (emphasis added). *See also, e.g., In re Del Biaggio*, 496 B.R. 600 (Bankr. N.D. Cal. 2012), where the court held that a creditor's claim against debtor's estate cannot be reduced by a partial recovery by creditor against a non-debtor until creditor is paid in full. In discussing the history of *Ivanhoe*, the court noted that:

> Congress is presumed to have enacted the Bankruptcy Code of 1978 with an understanding of the holding of *Ivanhoe*, and to have intended to incorporate that holding into the Code, unless the language of the Code or its legislative history clearly provides otherwise. The Committee points to no provision in the Code that adopts a mechanism for accounting for payment by third parties different from that specified in *Ivanhoe*, nor to any statement in the legislative history indicating that Congress intended to overrule *Ivanhoe*.

*Id.* at 603 (citation omitted).

25. <u>Third</u>, the Debtor's use of Section 8.13(d) to overstate recoveries on primary claims denominated in foreign currencies differently from recoveries on primary claims based on U.S. currency would treat similarly situated claims differently and discriminate against creditors

11

holding primary claims denominated in foreign currencies.

26.   <u>Fourth</u>, if a debtor is allowed to impose its own method of valuation of primary claims against a non-debtor to determine the allowed amount of a guarantee claim against that debtor in violation of the Bankruptcy Code, conceivably a debtor could simply decree that a single shekel of a primary claim will be valued at 100 million dollars for the purpose of determining the allowed amount of a guarantee claim. There would be no limit to how a debtor could game the claims administration process for guarantee claims.

27.   <u>Fifth</u>, to the extent that the Plan could somehow be binding with respect to how a holder of a Primary Claim against a non-debtor like LBJ, there was a violation of due process when creditors of non-debtors were so impaired and they were neither entitled to vote on or object to the Plan *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252, 265 (3d Cir. 2000). Due process "requires 'notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *Texaco Capital Inc. v. Bd. of Cmm'rs for the LaFourche Basin Levee Dist.* (*In re Texaco, Inc.*), 254 B.R. 536, 561 (Bankr. S.D.N.Y. 2000).

## Reservation of Rights

28.   Nomura reserves its rights to supplement, amend or otherwise modify this Objection as additional information becomes available.

## Waiver of Memorandum of Law

29.   Nomura respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be waived as there are no novel issues of law presented herein.

**Conclusion**

WHEREFORE, Nomura requests that the Court (i) overrule the Objection, (ii) allow Claim No. 14150 in the amount of $52,156,150.00 and Claim No. 17201 in the amount of $14,226,301.80, and (iii) grant such other and additional relief as may be just and proper.

Dated: December 29, 2014
       New York, New York

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/David Neier
    David Neier
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700 (telephone)
(212) 294-4700 (facsimile)
dneier@winston.com

*Attorneys for Nomura Securities Co., Ltd.*