# *EXHIBIT C*

# LEHMAN BROTHERS

## EXECUTIVE ADVISORY SERVICES AGREEMENT

THIS AGREEMENT is made the 21st day of March 2001

BETWEEN

(1)    LEHMAN BROTHERS EUROPE LIMITED ("Lehman Brothers")

(2)    THOMAS MARSONER of Andreas-Hofer-Strasse 43, A-6020 Innsbruck, Austr
(herein afterwards called the "Advisor").

**RECITALS**

A.    The Advisor is experienced in financial markets in European countries and
particularly in Germany and Austria, and Lehman Brothers wishes to avail itself c
the experience of the Advisor, who has confirmed that he is able to provide advic
on a part-time basis and (without limitation) Lehman Brothers wishes to be able t
use the services of the Advisor and to provide those services to other Group
Companies for the purposes of their businesses.  The Advisor will provide these
services in response to specific requests from (without limitation) Bertil Rydevik,
and /or Benoit d'Angelin, and will keep them fully and regularly apprised of his
activities and of any potential business opportunity he would like to pursue on
behalf of Lehman Brothers.  The services provided will include, but will not be
limited to, providing early advice on Lehman Brothers involvement; maintaining
close and regular contact with relevant desks of Group Companies as appropriate
assisting in developing strategies and tactics to approach corporations and
governments in Europe; participating in team meetings with Lehman Brothers'
relevant investment banking teams.

B.    The Advisor has agreed with Lehman Brothers that the Services shall be provided
on a non-executive basis, and on the terms and conditions hereinafter contained a
in particular (without limitation) the General Terms and Conditions.

**NOW IT IS AGREED as follows:**

**1.    INTERPRETATION**

In this Agreement and the General Terms and Conditions annexed, the following
expressions have the following respective meanings:-

1.1

"Clients" means clients of Lehman Brothers or any other Group Company.

1.2

"Commencement Date" is 1 March 2001.

1.3  "General Terms and Conditions" means the terms and conditions annexed to this Agreement.

1.4  "Group Company" means any legal person or body incorporated or unincorporat presently or in the future directly or indirectly controlling, controlled by, or in common control with Lehman Brothers, and "Group" shall have a corresponding meaning.

1.5  "Lehman Brothers" means the investment banking or related financial services businesses carried on by the Group.

1.6  "Payments" means the amounts (exclusive of Value Added Tax) referred to in Clause 3 of this agreement.

1.7  "Services" means the services set out in the General Terms and Conditions.

1.8  In this Agreement any reference to the singular shall include the plural and vice versa and any reference to the masculine gender shall include a reference to the female and vice versa.

## 2.  SERVICES

In consideration of the Payments the Advisor undertakes to provide the Services a non-exclusive basis to Lehman Brothers or as indicated by Lehman Brothers to any other Group Company throughout the term of this Agreement on and subject to the General Terms and Conditions.

## 3.  PAYMENTS

3.1

The Advisor's fee will be US Dollars One Hundred and Seventy Five Thousand (US$175,000) per annum, exclusive of VAT. The Advisor shall submit an invoic to the Company quarterly in arrears, with the first invoice payment due on 31 Ma 2001. This fee will only be paid as long as the Advisor does not take up permane employment with any other person.

3.2

In addition, Lehman Brothers may, at its sole and unrestricted discretion, determi whether to make an additional payment to the Advisor. Such additional payment, any, will be based upon the Advisor's contribution, measured in terms of the fee income generated to Lehman Brothers resulting from the Advisor's services. If Lehman Brothers decided to make such additional payment, it would be made in the first quarter of 2002 for deals closed before November 30th, 2001.

In the event that this Agreement is terminated as provided in Clause 10, and where Lehman Brothers has decided to make any additional payment, this payment will be made at the time contemplated in this Agreement, or before if

The amount of this additional payment will be determined by Lehman Brothers, based on its sole judgement as to the contribution made in connection with each transaction, and will be decided on a case-by-case basis, provided that such contribution will be substantial. This payment could reflect a percentage range up to a maximum of 10% of the Investment Banking Revenues (as defined below), after deduction of unreimbursed out-of-pocket expenses, if any, actually received by Lehman Brothers in connection with each transaction, provided that in no event shall the amount exceed $200,000 per transaction. The payment will be made after the transaction is completed, and all monies are received by Lehman Brothers. Investment Banking Revenues will be defined as follows: for the purposes of a financing, Investment Banking Revenues will mean the share that Investment Banking receives (this is currently 50% for most, not all, financing products) of the sum of the Lehman Brothers management fees, sales credits, net underwriting, and/or of the amount of any market gains incurred by Lehman Brothers for its own account, less the amount of any market losses incurred by Lehman Brothers for its own account and less the amount of any unreimbursed out-of-pocket expenses, if any. For the purposes of advisory transactions, Investment Banking Revenues will mean the share that Investment Banking receives (this is currently 100%) of any retainer and success fees, less the amount of any unreimbursed out-of-pocket expenses, if any.

4.   **CONFIDENTIALITY**

The Advisor shall not during or at any time after the expiry or termination of this Agreement, divulge or allow to be divulged to any person any confidential information relating to the business or affairs or clients or customers of Lehman Brothers or any Group Company other than to persons who have signed a secrecy undertaking in a form previously approved by Lehman Brothers and the Advisor shall not permit any person to assist in the provision of the Services unless such person has signed such an undertaking.

5.   **DELEGATION**

The Advisor shall not delegate any duties or obligations arising under this Agreement otherwise than as may be expressly agreed in writing by Lehman Brothers or any Group Company to which Lehman Brothers may commit to provide the Services, and which Lehman Brothers has notified to the Advisor.

6.   **WHOLE AGREEMENT**

Each party acknowledges that this Agreement and the General Terms and Conditions attached to it contain the whole agreement between the parties and that it has not relied upon any oral or written representation made to it by the other or its employees or agents and has made its own independent investigations into all matters relevant to it.

### 7.   WAIVER

The failure by either party to enforce at any time or for any period any one or mc of the terms or conditions of this Agreement shall not be a waiver of them or of t right at any time subsequently to enforce all the terms and conditions of this Agreement.

### 8.   STATUS OF THE ADVISOR

During the term of this Agreement the Advisor shall be an independent contracto and this Agreement shall not operate or be interpreted to constitute the Advisor a an employee of Lehman Brothers or of any other Group Company. Lehman Brothers does not object to the Advisor entering into other consultancy arrangements during the term of this Agreement, provided that the Advisor shall provide Lehman Brothers with the name of the entity and position held, and a co of the signed final version of any consultancy agreement. The Advisor shall also obtain Lehman Brothers' written consent to any agreement to provide services of any nature to any other company, organisation, or other entity, prior to the Advis providing any services under such an arrangement (whether as an independent contractor or otherwise).

### 9.   COSTS

Each of the parties shall pay their own costs and expenses incurred by it in connection with the preparation and execution of this Agreement.

### 10.   TERMINATION

10.1   This Agreement shall expire automatically on the first anniversary of the Commencement Date, unless otherwise agreed between the Advisor and Lehman Brothers on or before that first anniversary date or as provided in this clause 10.

10.2   Notwithstanding sections 10.1 of this Agreement, Lehman Brothers may terminat this Agreement at any time if:-

10.2.1   the Advisor dies; or

10.2.2   the Advisor shall wilfully and persistently fail to provide the Services, or commit any material breach of this Agreement, or be guilty of serious neglect or default hereunder; or

10.2.3   the Advisor is either found to have, or Lehman Brothers reasonably believes that the Advisor has, either breached any laws or regulatory rule or duties or has caused Lehman Brothers to have breached any such law duties or rules; or

10.2.4   the Advisor:-

      10.2.4.1   is adjudged bankrupt; or

      10.2.4.2   compounds with his creditors; or

      10.2.4.3   has a Receiver or Manager appointed in respect of all or any part of all or any part of his assets; or

      10.2.4.4   is the subject of an application for an administration order; or

proceedings in the territory in which the Advisor is personal: resident; or

102.4.5    the Advisor and Lehman Brothers agree to terminate it by mutual agreement, and in any event where there is a "conflic situation arising from the Advisor's other advisory arrangements or other duties and employments.

10.2.5    Either party may terminate this Agreement by giving four weeks' notice writing.

10.3    The Advisor shall deliver up to Lehman Brothers on the termination of this Agreement any property of Lehman Brothers or any other Group Company in his possession custody or under his control including (without limitation) any documents (and copies) papers, keys, credit cards, or any other property of any description belonging to Lehman Brothers or any other Group Company.

## 11. WARRANTY

The Advisor warrants and undertakes that he has and shall maintain all necessa consents and authorisations and is and will be in compliance with any and applicable statutes and/or regulations in order for him to be able to fully perfoɪ the Services. The Advisor undertakes to promptly notify Lehman Brothers if any these warranties are or become incorrect or any of these undertakings becoɪ impossible to perform for any reason.

## 12. VARIATION

No variation or amendment to this Agreement or to the General Terms and Conditions shall be made except with the authority of Lehman Brothers and this Agreement and the General Terms and Conditions shall be deemed to take effect unamended and unvaried unless any amendments or variations have been duly initialled by an authorised signatory on behalf of Lehman Brothers.

## 13. GOVERNING LAW

This Agreement and the General Terms and Conditions shall be solely governed b and interpreted according to the laws of the England and Wales.

## 14. SUBMISSION TO JURISDICTION

The parties agree that the courts of England and Wale shall have exclusive jurisdiction to settle any dispute which may arise out of or in connection this Agreement.

## 15. NOTICES

Any notice shall be duly served hereunder if (in the case of Lehman Brothers) it is sent by recorded or first class post to its office address as set out above in this

him at his address specified in this Agreement or (in the case of either Lehman
Brothers or the Advisor) such other address as either may notify in writing to tl
other and any such notice sent by post shall be conclusively deemed for all the
purposes of this agreement to have been received 72 hours after the time of
posting, and any such notice sent by telefax or telex, shall be conclusively deem
to have been received on the date of sending.

SIGNED for and on
behalf of LEHMAN
BROTHERS
EUROPE LIMITED

**Bertil Rydevik**
**Managing Director**

SIGNED by
THOMAS MARSONER

## GENERAL TERMS AND CONDITION

**1.   COMMENCEMENT**

The Agreement and these General Terms and Conditions supersede all previous agreements and arrangements (if any) between Lehman Brothers and the Advisor relating to the provision of the Services and are effective from the Commenceme Date.

**2.   RESPONSIBILITIES OF THE ADVISOR**

2.1   The Advisor shall provide the Services to Lehman Brothers and/or such of the Group Companies as Lehman Brothers may from time to time agree with the Advisor, and in response to specific requests from Lehman Brothers.

2.2   The Advisor shall during the Appointment observe the terms and conditions of th Agreement.

2.3   The Advisor shall use his best endeavours to promote and protect during the operation of the Agreement the interests of Lehman Brothers and to all other Group Companies.

2.4   The Advisor shall comply with any internal compliance rules in force from time to time which may be applicable to the Advisor and so far as required shall have and maintain any required registration by or with the regulatory authorities governing the financial services businesses of Lehman Brothers.

**3.   THE SERVICES**

The Services shall comprise:

3.1   Acting as an Advisor for discussing confidential issues relating to Lehman Brothe

3.2   In response to specific requests, assisting with and advising upon the developmen of the investment banking and corporate finance businesses of Lehman Brothers i the European market (with a focus on Germany and Austria), but excluding the United Kingdom, by all means agreed between the Advisor and Lehman Brothers including the provision of business advice to the board of Lehman Brothers concerning the business opportunities for Lehman Brothers in this market;

3.3   Liaising with and informing the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

3.4   Maintaining regular contacts with the relevant investment banking teams in the European Investment Banking Division of Lehman Brothers, and attending

3.5    Such other activities as may from time to time be agreed between the Advisor and Lehman Brothers or any Group Company to which Lehman Brothers may have agreed to provide the Services, and which Lehman Brothers has specifically notified to the Advisor.

## 4.    EXPENSES

Lehman Brothers shall reimburse (in accordance with the Lehman Brothers Travel and Expenditure Policy as in force from time to time) the Advisor for all travelling, hotel, entertaining and other expenses which he may properly incur in the performance of the Services and the Advisor shall provide to Lehman Brothers full invoices and other documentation relating to such expenses

## 5.    PAYMENTS

The Advisor shall be paid a quarterly retainer in respect of provision of the Services to Lehman Brothers or any other Group Company. In addition the consultant shall submit details of the expenses referred to in Section 4 of the General Terms and Conditions and shall (if relevant) specify all value added or equivalent taxes in addition to the principal amount of such invoices and be in a form satisfying the requirements of any applicable Value Added Tax ("VAT") or equivalent tax rules

## EXECUTIVE ADVISORY SERVICES AGREEMENT

THIS AGREEMENT is made the 24th day of July 2002

BETWEEN

(1)     LEHMAN BROTHERS EUROPE LIMITED ("Lehman Brothers"); an

(2)     THOMAS MARSONER of 55 Avenue Foch, 75016 Paris, France (here
        afterwards called the "Advisor").

## RECITALS

A.  The Advisor is experienced in financial markets in European countrie
    and particularly Germany, Switzerland and Austria, and Lehman Broth
    wishes to avail itself of the experience of the Advisor, who has confirm
    that he is able to provide advice on a part-time basis and (without
    limitation) Lehman Brothers wishes to be able to use the services of the
    Advisor and to provide those services to other Group Companies (as
    defined below) for the purposes of their businesses.  The Advisor will
    provide these services in response to specific requests from Vittorio
    Pignatti, and will keep him fully and regularly apprised of his activitie
    and of any potential business opportunity he would like to pursue on
    behalf of Lehman Brothers.

B.  The Advisor agrees with Lehman Brothers that the Services (as defined
    below) shall be provided on a non-executive basis, and on the terms anc
    conditions hereinafter contained and in particular (without limitation) th
    General Terms and Conditions.

## NOW IT IS AGREED as follows:

## 1.     INTERPRETATION

In this Agreement and the General Terms and Conditions annexed, the

1.1    "BWBG Transaction" means the proposed sale by the Austrian government (the "Government") of five of its housing corporations and/or the assets of such housing corporations.

1.2    "Clients" means clients of Lehman Brothers or any other Group Company.

1.3    "Commencement Date" is 01 March 2002.

1.4    "General Terms and Conditions" means the terms and conditions annexed to this Agreement.

1.5    "Group Company" means any legal person or body incorporated or unincorporated presently or in the future directly or indirectly controlling, controlled by, or in common control with Lehman Brothers, and "Group" shall have a corresponding meaning.

1.6    "Lehman Brothers Investment Banking Business" means the investment banking or related financial services businesses carried on by the Group.

1.7    "Net Investment Banking Fees" means the net transaction fees paid and attributable to Lehman Brothers' investment banking division in its capacity as adviser to any Client in connection with the relevant transaction, provided that "Net Investment Banking Fees" shall:

1.7.1    not include any retainers (except for any retainers paid to Lehman Brothers by the Government in relation to the BWBG Transaction which shall be included in the calculation of the Net Investment Banking Fees for the purposes of paragraph 3.1.3 below) or expenses paid in connection therewith or any fees, commissions or other compensation received by Lehman Brothers in connection with any financing or other services related to such transaction; and

1.7.2    be deemed decreased by the amount of any out-of-pocket expenses incurred by Lehman Brothers but not reimbursed to Lehman Brothers by the relevant Client.

1.8    "Payments" means the amounts (exclusive of Value Added Tax) referred to in Clause 3 of this Agreement.

1.9     "Payment Period" means the period starting on the Commencement Date and ending on the date that is 12 months after the date of expiration or termination of this Agreement unless this Agreement is terminated by Lehman Brothers pursuant to Clause 10.2.2 or 10.2.3 below, in which case the Payment Period shall end on the date of such termination.

1.10    "Services" means the services set out in the General Terms and Conditions.

1.11    "Strategic Transaction" means any strategic corporate transaction (other than any offering of new or existing Telekom Austria securities) which Telekom Austria enters into in the future and which transaction is further described in the general financial advisory agreement entered into by Lehman Brothers and Telekom Austria on 20th March 2002 (the "Strategic Agreement").

1.12    In this Agreement any reference to the singular shall include the plural and vice versa and any reference to the masculine gender shall include a reference to the female and vice versa.

**2.     SERVICES**

In consideration of the Payments, with effect from the Commencement Date the Advisor undertakes to provide the Services on a non-exclusive basis to Lehman Brothers or as indicated by Lehman Brothers to any other Group Company throughout the term of this Agreement on and subject to the General Terms and Conditions.

**3.     PAYMENTS**

3.1     As compensation for the services to be rendered by the Advisor hereunder, Lehman Brothers shall pay the Advisor as follows:

3.1.1   a retainer fee of US Dollars Two Hundred Thousand (US$200,000) per annum (the "Retainer Fee"), exclusive of VAT, which fee shall (a) be paid quarterly in arrears on submission of an appropriate invoice by the Advisor, with the first invoice payment due on 31 May 2002 and (b) be paid in full notwithstanding any termination of this Agreement unless this

Agreement is terminated by Lehman Brothers pursuant to Clause 10.2.2 or 10.2.3, in which case no further payments of the Retainer Fee shall be paid following the date of such termination;

3.1.2     in the event that Lehman Brothers is mandated to provi financial advisory services to Telekom Austria in relation to a Strategic Transaction (other than any direct or indire acquisition of up to 25% of the issued share capital of Mobilkc AG by Telekom Austria) pursuant to the Strategic Agreeme and such transaction completes at any time during the Payme Period, then the Advisor will be paid a fee equal to 10 % of tl Net Investment Banking Fees actually received by Lehm: Brothers in connection with such transaction, which fee shall l paid to the Advisor within 30 business days of the date on whi such transaction completes provided that the Advisor h submitted an appropriate invoice; and

3.1.3     in the event that (a) Lehman Brothers is mandated to provi financial advisory services to the Government in relation to tl BWBG Transaction and (b) such transaction completes at a time during the Payment Period, then the Advisor will be paid fee equal to 10% of the Net Investment Banking Fees actual received by Lehman Brothers in connection with su transaction, which fee shall be paid to the Advisor within : business days of the date on which such transaction complet provided that the Advisor has submitted an appropriate invoice

3.2     In addition to the fees described in Clause 3.1 above:

3.2.1     in the event that Lehman Brothers requires the Advisor to provide the Services pursuant to this Agreement in relation to specific transactions other than those referred to in Clauses 3.1 and 3.1.3 above, then Lehman Brothers and the Advisor shall agree in writing the amount and terms of any payments to be made to the Advisor for such Services, provided that any such additional payment will be based upon the Advisor's contribution, measured in terms of the fee-income generated to

3.2.2   in the event that this Agreement is terminated as provided in Clause 10, and where Lehman Brothers has agreed in writing to make any additional payment pursuant to this Clause 3.2, such payment will be made at the time agreed by both parties.

## 4.   CONFIDENTIALITY

The Advisor shall not during or at any time after the expiry or termination of this Agreement, divulge or allow to be divulged to any person any confidential information relating to the business or affairs of Lehman Brothers, any Group Company or any Client other than to persons who have signed a secrecy undertaking in a form previously approved by Lehman Brothers and the Advisor shall not permit any person to assist in the provision of the Services unless such person has signed such an undertaking.

## 5.   DELEGATION

The Advisor shall not delegate any duties or obligations arising under this Agreement otherwise than as may be expressly agreed in writing by Lehman Brothers or any Group Company to which Lehman Brothers may commit to provide the Services, and which Lehman Brothers has notified to the Advisor.

## 6.   WHOLE AGREEMENT

Each party acknowledges that this Agreement and the General Terms and Conditions attached to it contain the whole agreement between the parties, this Agreement and the General Terms and Conditions supersede all previous agreements and understandings between them in such specific connection and that each party has not relied up on any oral or written representation made to it by the other or its employees or agents and has made its own independent investigations into all matters relevant to it.

## 7   WAIVER

The failure by either party to enforce at any time or for any period any one or more of the terms or conditions of this Agreement shall not be a waiver of them or of the right at any time subsequently to enforce all the terms and conditions of this Agreement.

## 8.   STATUS AND FACILITIES OF THE ADVISOR

8.1   During the term of this Agreement, the Advisor shall be an independent contractor and this Agreement shall not operate or be interpreted to constitute the Advisor as an employee of Lehman Brothers or of any Group Company. The Advisor agrees that during the term of this Agreement he shall not provide services which are the same as or similar to the Services to any other investment bank or financial advisor without Lehman Brothers' prior written consent.

8.2   Lehman Brothers agrees that the Advisor, during the term of this Agreement only, shall have the use of a Lehman Brothers' secretary based in Lehman Brothers' London office and be entitled to to send and receive non-electronic mail (which must not be on Lehman Brothers' headed notepaper) from and at Lehman Brothers' London office.

8.3   For a period of three calendar months from the date hereof only, any electronic mail intended for the Advisor and received at the email address "marsoner@lehman.com", will be forwarded to the Advisor's personal email address "thomas@marsoner.com" by Lehman Brothers. After the end of the period referred to above, any such electronic mail received at "marsoner@lehman.com" will not be so forwarded and for a period starting on the date that is three months after the date hereof and ending on the date that is twelve months after the date hereof only, the sender of any electronic mail to "marsoner@lehman.com" will receive an auto-reply providing the Advisor's personal e-mail address to which such mail can be sent. At no time whatsoever may the Advisor hold himself as being able to receive electronic mail at the e-mail address "marsoner@lehman.com" or encourage or request any person to send e-mail to such address.

## 9.   COSTS

Each of the parties shall pay their own costs and expenses incurred by it in connection with the preparation and execution of this Agreement.

## 10.   TERMINATION

10.1   This Agreement shall expire automatically on the first anniversary of the Commencement Date, unless otherwise agreed between the Advisor and Lehman Brothers on or before that first anniversary date, or as provided in this Clause 10.

10.2   Notwithstanding Clause 10.1 of this Agreement, Lehman Brothers may terminate this Agreement at any time if:-

10.2.1 the Advisor dies; or

10.2.2 the Advisor shall willfully and persistently fail to provide the Services, or commit any material breach of this Agreement, or be guilty of serious neglect or default hereunder; or

10.2.3 the Advisor is either found to have, or Lehman Brothers reasonably believes that the Advisor has, either breached any laws or regulatory rules or duties or has caused Lehman Brothers to have breached any such laws, duties or rules; or

10.2.4 the Advisor:-

　　　　10.2.4.1　is adjudged bankrupt; or

　　　　10.2.4.2　compounds with his creditors; or

　　　　10.2.4.3　is subject to any similar bankruptcy or personal insolvency proceedings in the territory in which the Advisor is personally resident; or

10.2.5 the Advisor and Lehman Brothers agree to terminate it by mutual agreement, and in any event where there is a "conflict" situation arising from the Advisor's other advisory arrangements or duties and employments; or

10.2.6 the Advisor accepts an offer of full-time employment from any person or legal entity.

10.3   Notwithstanding Clause 10.1 of this Agreement, either party may terminate this Agreement by giving four weeks' notice in writing.

10.4   Notwithstanding any termination or expiration of this Agreement, the provisions of Clause 4 above and Clause 10.5 below shall continue in full force and effect.

10.5   The Advisor shall deliver up to Lehman Brothers on the termination or expiration of this Agreement any property of Lehman Brothers, any

Group Company or any Client in his possession custody or under his
control including (without limitation) any documents (and copies) papers,
keys, credit cards, or any other property of any description belonging to
Lehman Brothers or any Group Company.

## 11.   WARRANTY

The Advisor warrants and undertakes that he has and shall maintain all
necessary consents and authorizations and is and will be in compliance
with any and all applicable statutes and/or regulations in order for him to
be able to fully perform the Services. The Advisor undertakes to
promptly notify Lehman Brothers if any of these warranties are or become
incorrect or any of these undertakings become impossible to perform for
any reason.

## 12.   VARIATION

No variation or amendment to this Agreement or to the General Terms
and Conditions shall be made except with the authority of Lehman
Brothers and this Agreement and the General Terms and Conditions shall
be deemed to take effect unamended and unvaried unless any amendments
or variations have been duly initialed by an authorized signatory on behalf
of Lehman Brothers.

## 13.   GOVERNING LAW

This Agreement and the General Terms and Conditions shall be solely
governed by and interpreted according to the laws of England and Wales.

is

78

14.    **SUBMISSION TO JURISDICTION**

The parties agree that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute which may arise out of or in connection to this Agreement.

15.    **NOTICES**

Any notice shall be duly served hereunder if (in the case of Lehman Brothers) it is sent by recorded or first class post to its office address as set out above in this Agreement marked for the attention of Vittorio Pignatti, and (in the case of the Advisor) it is sent by recorded or first class post to him at his address specified in this Agreement or (in the case of either Lehman Brothers or the Advisor) such other address as either may notify in writing to the other and any such notice sent by post shall be conclusively deemed for all the purposes of this Agreement to have been received 48 hours after the time of posting.

SIGNED for and on
behalf of LEHMAN
BROTHERS
EUROPE LIMITED

_____

Vittorio Pignatti
Managing Director

SIGNED by
THOMAS MARSONER _____

## GENERAL TERMS AND CONDITIONS

1.    **COMMENCEMENT**

The Agreement and these General Terms and Conditions supersede all previous agreements and arrangements (if any) between Lehman Brothers and the Advisor relating to the provision of the Services and are effective from the Commencement Date.

2.    **RESPONSIBILITIES OF THE ADVISOR**

2.1    The Advisor shall provide the Services to Lehman Brothers and/or such of the Group Companies as Lehman Brothers may from time to time agree with the Advisor, and in response to specific requests from Lehman Brothers.

2.2    The Advisor shall during the Appointment observe the terms and conditions of this Agreement.

2.3    The Advisor shall use his best endeavours to promote and protect, during the term of the Agreement, the interests of Lehman Brothers and all Group Companies.

2.4    The Advisor shall comply with any internal compliance rules in force from time to time which may be applicable to the Advisor and so far as required shall have and maintain any required registration by or with the regulatory authorities governing the financial services businesses of Lehman Brothers.

2.5    The contact point at Lehman Brothers with whom the Advisor shall co-ordinate shall be Vittorio Pignatti, a managing director of Lehman Brothers, or his designee.  All activities of the Advisor, insofar as they relate to the Services or any transaction, must be co-ordinated with Vittorio Pignatti or such designee.

2.6   The Advisor acknowledges that he has no power or authority
bind or commit Lehman Brothers or any Group Company to a
contract or agreement or to make any representations on behalf
Lehman Brothers or any Group Company, and hereby agrees th
unless he shall receive specific written authorisation from Lehm
Brothers to do so, he shall neither (a) hold himself out as being
Lehman Brothers' employee or as having power or authority
enter into any contract or agreement on Lehman Brothers' or a
Group Company's behalf or to otherwise bind or commit Lehm
Brothers or any Group Company to any contract or agreement, n
(b) take any action, directly or indirectly, which would cau
Lehman Brothers or any Group Company to become a party to a
contract or agreement or otherwise obligate Lehman Brothers
any Group Company in any manner whatsoever.   The Advis
agrees to comply with and conform his conduct to applicable law
rules and regulations.

## 3.   THE SERVICES

The Services shall comprise:

3.1   acting as an advisor on potential transactions which may involve Lehma
Brothers Investment Banking Business;

3.2
in response to specific requests from Vittorio Pignatti or his designee,
assisting with and advising upon the development of the investment
banking and corporate finance businesses of Lehman Brothers in the
European market (with a focus on Germany, Switzerland and Austria), b
excluding the United Kingdom, by all means agreed between the Adviso
and Lehman Brothers including the provision of business advice to the
board of Lehman Brothers concerning the business opportunities for
Lehman Brothers in this market;

3.3   liaising with and informing the management of Lehman Brothers as
necessary or appropriate in relation to the matters set out above;

3.4   subject to section 2.5 of these General Terms and Conditions, maintainin

European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

3.5   assisting in developing strategies and tactics to approach corporations a governments in Europe; and

3.6   such other activities as may from time to time be agreed between the Advisor and Lehman Brothers or any Group Company to which Lehm Brothers may have agreed that the Advisor should provide the Services and which Lehman Brothers has specifically notified to the Advisor.

## 4.   EXPENSES

Lehman Brothers shall reimburse (in accordance with the Lehman Brothers Travel and Expenditure Policy as in force from time to time) tl Advisor for all traveling, hotel, entertaining and other expenses which h may properly incur in the performance of the Services and the Advisor shall provide to Lehman Brothers full invoices and other documentation as reasonably required by Lehman Brothers relating to such expenses.

The Advisor shall also submit details of all value added or equivalent taxes in addition to the principal amount of such invoices and the invoic shall be in a form satisfying the requirements of any applicable Value Added Tax ("VAT") or equivalent tax rules for a valid VAT or tax

# LEHMAN BROTHERS

13th February 2004

Thomas Marsoner
Casa Andreas
16 Triq Sant' Andrija
Lija, BLZ 10
Malta

Dear Thomas,

This letter agreement (the "Agreement") confirms the understanding and agreement between Lehman Brothers Europe Limited ("Lehman Brothers") and Thomas Marsoner (the "Consultant" or the "Senior Advisor") pursuant to which the Consultant will provide advice and assistance to Lehman Brothers and other members of the Lehman Brothers' group (the "Lehman Group") in connection with the identification and execution of certain transactions in the German, Austrian and Swiss markets.

By executing this Agreement the Consultant acknowledges that he will not be entitled to any payments or other rights under the Executive Advisory Services Agreement between the Consultant and Lehman Brothers dated 24 July 2002.

## 1.   Services to be Rendered by the Consultant

Subject to the terms and conditions hereof, including, without limitation, paragraph 5 hereof, Lehman Brothers hereby engages the Consultant to, and the Consultant hereby agrees to, assist Lehman Brothers and the Lehman Group, in such a manner as Lehman Brothers may reasonably direct, for the purposes of identifying and assisting in the execution of certain transactions, outside the UK, particularly in the German, Austrian and Swiss markets. In connection therewith the Consultant will, in particular:

(a)   liaise with and inform the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

(b)   maintain regular contacts with the relevant investment banking teams in the European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

(c)   assist in developing strategies and tactics to approach corporations and governments in Europe; and

(d)   engage in such other activities as may from time to time be agreed between the Consultant and Lehman Brothers or any company in the Lehman Group to which Lehman Brothers may have agreed that the Consultant should provide services, and which Lehman Brothers has notified to the Consultant.

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE +44 (0)20 7102 1000
REGULATED BY THE FINANCIAL SERVICES AUTHORITY.
REGISTERED IN ENGLAND NO 3950078 AT THE ABOVE ADDRESS.

2. **Term**

This Agreement shall be effective as of the date hereof and shall terminate on the earlier of (i) unless renewed, 2 December 2004 (ii) either party, with or without cause, giving the other party 30 calender days prior written notice of termination; (iii) either party, with cause, giving the other party written notice of termination; or (iv) the occurance of one or more of the following events (A) the death of the Consultant; or (B) the Consultant being adjudged bankrupt, compounded with his creditors or subject to any similar bankruptcy or personal insolvency proceedings in the territory in which the Consultant is personally resident; or (C) the Consultant accepting an offer of full-time employment from any person or legal entity that may be deemed by Lehman Brothers at its sole discretion to be incompatible with the Agreement.

Notwithstanding any termination of this Agreement, paragraphs 5 to 16 shall remain in full force and effect.

3. **Compensation Payable to the Consultant**

In consideration of the services to be performed hereunder, the Consultant shall be paid as follows:

(i)     A fee of €150,000, payable within 7 days of the execution of this Agreement; plus

(ii)    A quarterly fee of €50,000, payable in equal instalments every 3 months, with each payment being due on March 1 2004, June 1 2004, September 1 2004 and December 1 2004, respectively. The first fee payable to the Consultant pursuant to sub-paragraphs (iii), (vii), or (ix) below, shall be reduced by €200,000 (being the total annual amount payable to the Consultant pursuant to this sub-paragraph (ii)). Alternatively, the fees payable to the Consultant pursuant to sub-paragraphs (iv),(v), (vi) and (vii) shall be reduced by 50% of the first €400,000 so payable upto the €200,000 retainer being covered; plus

(iii)   In relation to the advisory project involving Hypo Real Estate Holding AG known as Project Olympia, provided that such transaction completes during the Payment Period, Lehman Brothers shall pay the Consultant a fee equal to 10% of the Total Revenues which are both earned and received by Lehman Brothers after the date of this Agreement in connection with such transaction; plus

(iv)    In relation to a strategic transaction involving Telekom Austria pursuant to which there is a change of control of Telekom Austria or of its subsidiary wireless Mobilkom or demerger of the latter, provided that (A) such transaction completes during the Payment Period and (B) the Consultant has provided services in relation to such transaction (which will be determined in good faith and on a reasonable basis), Lehman Brothers shall pay the Consultant a fee equal to 20% of the Net Investment Banking Revenues which are both earned and received by



Lehman Brothers Investment) Banking Division after the date of th
Agreement in connection with such transaction.  For the avoidance (
doubt, the foregoing shall not apply to any transaction involving a mark(
offering of new or existing shares or other securities in or related t
Telekom Austria.

(v)  In relation to a market offering of shares in Telekom Austria by th
company itself or by ÖIAG provided that (A) such transaction complete
during the Payment Period and (B) the Consultant has provided servic(
in relation to such transaction (which will be determined in good faith an
on a reasonable basis), Lehman Brothers shall pay the Consultant a f(
equal to 20% of the Net Investment Banking Revenues which are boi
earned and received by Lehman Brothers Investment Banking Divisic
after the date of this Agreement in connection with such transaction.

(vi)  In relation to the existing transaction involving public housir
corporations owned by the Republic of Austria known as Project BWB(
provided that such transaction completes during the Payment Perio
Lehman Brothers shall pay the Consultant a fee equal to 10% of the N
Investment Banking Revenues upto €8.225 million plus 20% of th
amount by which such Net Investment Banking Revenues exceed €8.22
million, which, in each case, are both earned and received by Lehma
Brothers Investment Banking Division after the date of this Agreement
connection with such transaction.

(vii)  In relation to a future securitisation of the assets of BWBG provided th
(A) such transaction completes during  the Payment Period and (B) tl
Consultant has provided services in relation to such transaction (whic
will be determined in good faith and on a reasonable basis), Lehma
Brothers shall pay the Consultant a fee equal to 20% of the Tot
Revenues which are both earned and received by Lehman Brothers aft
the date of this Agreement in connection with such securitisation.

(viii)  In relation to the advisory assignment relating to the possible sale
certain real estate assets of Donauzentrum AG provided that su(
transaction completes during the Payment Period, Lehman Brothers sh;
pay the Consultant a fee equal to 20% of the Net Investment Bankii
Revenues which are both earned and received by Lehman Brothe
Investment Banking Division after the date of this Agreement
connection with such transaction.

(ix)  In relation to any other Agreed Transaction provided that (A) su
transaction completes during the Payment Period and (B) the Consulta
provides substantial services to Lehman Brothers in relation to su
Agreed Transaction, Lehman Brothers shall pay the Consultant a f
based on a to be agreed upon percentage of the Net Investment Banki
Revenues which are both earned and received by Lehman Brothei
Investment Banking Division after the date of this Agreement

(x)   In addition, upon presentation of an invoice Lehman Brothers will re
imburse the Consultant for its reasonable travel and out-of-pock
expenses incurred in connection with providing services hereunde
provided that (i) such expenses are authorized by Lehman Brothers an
are in accordance with Lehman Brothers' travel and expense policy i
force from time to time and (ii) Lehman Brothers shall not be obligated t
re-imburse any expenses which are not invoiced prior to the date that is
days of the closing of the particular transaction to which such expense
relate. This reimbursement obligation specifically includes €49,951.09
in unreimbursed expenses so incurred by the Consultant from Decembe
2002 through December 2, 2003.

For the avoidance of doubt, the foregoing sets forth the total fees that may t
payable to the Consultant in relation to the transactions referred to above. Th
Consultant shall not be entitled to any other fees or payments pursuant to th
Executive Advisory Services Agreement between the Consultant and Lehma
Brothers dated 24 July 2002 or otherwise.

For purposes of this Agreement:

"Net Investment Banking Revenues" means (i) for financing products, th
share that the Lehman Brothers' Investment Banking Division receive
(this is currently 50% for most financing transactions) of (A) the sum
Lehman Brothers' management fees, sales credits, net underwriting fe
and/or (B) the amount of any market gains made by Lehman Brothers fi
its own account, less the amount of any market losses incurred by Lehma
Brothers for its own account and less the amount of any unre-imburse
out of pocket and other expenses; and (ii) for advisory transactions, th
share that the Lehman Brothers' Investment Banking Division receive
(this is currently 100%) of any retainer and success fees, less the amou
of any unre-imbursed out of pocket or other expenses.

"Total Revenues" means (i) for financing products, (A) the sum
Lehman Brothers' management fees, sales credits, net underwriting fee
and/or (B) the amount of any market gains made by Lehman Brothers f
its own account, less the amount of any market losses incurred by Lehma
Brothers for its own account and less the amount of any unre-imburse
out of pocket and other expenses; and (ii) for advisory transactions a
retainer and success fees, less the amount of any unre-imbursed out
pocket or other expenses.

"Agreed Transaction" means any transaction which Lehman Brothers h
specifically designated in writing to the Consultant as falling within t
ambit of this Agreement.

"Payment Period" shall mean the period commencing on the date of th
Agreement and ending 12 months following the termination of th
Agreement unless the termination of this Agreement was (A) by t
Consultant for any reason; (B) by Lehman Brothers in accordance w
paragraph 2(iii); or (C) by virtue of the operation of paragraph 2(iv);



4.      **Contact Person**

The contact point at Lehman Brothers with whom the Consultant shall co ordinate shall be Vittorio Pignatti, a Managing Director of Lehman Brothers, or his designee. All activities of the Consultant, insofar as they relate to Lehma Brothers or a Proposed Transaction, must be co-ordinated with Vittorio Pignat or such designee.

5.      **Exclusivity**

During the Exclusivity Period, the Consultant agrees it shall not directly or indirectly, assist or advise any third party in connection with the operation of ar transaction referred to in this Agreement or otherwise engage in any activi which may be detrimental to Lehman Brothers involvement in such transactions.

The "Exclusivity Period" shall mean the period commencing the date of th Agreement and ending 6 months following the termination of this Agreement o if longer, the end of the Payment Period.

The Consultant acknowledges that Lehman Brothers will incur expense reliance of the foregoing representations and agreements.

6.      **Independent Contractor**

In its capacity as an independent contractor, the Consultant acknowledges that is not an agent or employee of Lehman Brothers. The Consultant furth acknowledges that it has no power or authority to bind or commit Lehma Brothers to any contract or agreement or to make any representations on behalf Lehman Brothers, and hereby agrees that, unless it shall receive specific writt authorisation from Lehman Brothers to do so, it shall neither (a) hold itself out having power or authority to enter into any contract or agreement on Lehma Brothers' behalf or to otherwise bind or commit Lehman Brothers to any contra or agreement, nor (b) take any actions, directly or indirectly, which would cau Lehman Brothers to become a party to any contract or agreement or otherwi obligate Lehman Brothers in any manner whatsoever.

7       **Compliance with Laws and Policies**

In entering into this Agreement and performing the services hereunder, t Consultant will comply with all applicable laws, rules and regulations of applicable jurisdictions, will obtain and maintain all applicable licences a registrations and will abide by such policies of Lehman Brothers and its affilia as Lehman Brothers may reasonably request in connection with the provision services hereunder.

The Consultant confirms that the entering into of this Agreement and t provision of services hereunder does not conflict with any duties or obligatio owed by the Consultant to any other person or persons. The Consultant al

only in circumstances that do not give conflict with duties or obligations owed to any other person or persons.

The Consultant confirms that it has and agrees that it will maintain any and all licences and approvals necessary to enable it to provide the services required hereunder.

**8.    Confidential Information**

The Consultant and Lehman Brothers agree to keep confidential all non-public information relating to the transactions referred to herein ("Confidential Information"). In particular each party agrees not to disclose to any third party (other than, in the case of Lehman Brothers, its affiliates and each of its and their officers, directors and employees), for a period of two years from the date hereof, any Confidential Information, without the other parties prior written consent. Notwithstanding the above, neither party shall be prohibited from disclosing confidential information which (i) is or becomes generally available to the public other than as a result of disclosure by that party in breach of this agreement, (ii) was within such party's possession prior to its disclosure, (iii) becomes available to such party after the date hereof from any third party which is not known to be bound by a confidentiality agreement with respect to such information or (iv) is required to disclose by law, judicial order, the Panel on Takeovers and Mergers or any self-regulating or similar organisation.

**9.    Liability**

The Consultant shall be liable for and shall indemnify and hold harmless Lehman Brothers and its affiliates for any and all liabilities (including costs and expenses) incurred by any such entity as the result of the provision by the Consultant of services hereunder, PROVIDED THAT, such liabilities is or shall have been caused by the Consultants negligence, bad faith or wilful misconduct.

In no event shall the Consultant or Lehman Brothers be liable, one to the other, for indirect, special, unforeseeable or consequential damages in connection with or otherwise arising out of this Agreement.

**10.    No Assignment**

This Agreement shall be binding upon and shall inure to the benefit of any successor, heir, legal representative or assign of Lehman Brothers. The performance obligations of the Consultant under this Agreement shall not be assignable or assigned by the Consultant without the prior written approval of Lehman Brothers.

**11.    Notices**

Any notice which is required to be given under this Agreement shall (without prejudice to any other effective mode of making the same) be duly served if sent by pre-paid first class letter addressed to the party to whom it shall be sent to its registered office or sent by facsimile.

69



Any such notice shall if sent by first class post be deemed to be served tv
working days after posting exclusive of the day of posting. If such notice is se
by facsimile it shall be deemed served at the time of transmission (or
transmitted outside normal business hours (i.e. 09:0− 18:00 hrs) at the fir
commencement of business thereafter).

In proving service by post it shall only be necessary to prove that the notice w
contained in an envelope which was duly addressed and posted in accordanc
with this paragraph 11 and in proving service by facsimile it shall only l
necessary to produce the sender's copy and transmission slip bearing tl
addressee's facsimile number.

## 12.   Governing law

This Agreement is the entire agreement between the parties with respect to t
subject matter hereof and may not be amended except in writing signed by bc
parties. The interpretation and enforcement of this Agreement will be govern
by the laws of England. The parties submit to the jurisdiction of the Engli
courts, provided that prior to the commencement of any legal proceedings, t
parties will make all reasonable efforts to resolve any dispute with respect to tl
Agreement by referring the matter for mediation by a mediator agreed by t
parties or, failing such agreement, nominated by the President of Centre f
European Dispute Resolution.

Please confirm your agreement with the foregoing by signing and returning one copy
this letter to the undersigned, whereupon this letter agreement shall become a bindi
agreement between Lehman Brothers and the Consultant.

Yours faithfully,

LEHMAN BROTHERS EUROPE LIMITED

By:_                                          By: _____

    Name:                                Name:
    Title: Managing Director             Title: Managing Director

We hereby acknowledge receipt of the above letter
and sign below signifying our full acceptance to the
terms and conditions thereof.

BY: _____

    Title: Senior Advisor

70

# LEHMAN BROTHERS

May 5, 2006

Dr. Thomas Marsoner
Andreas Hofer Strasse 43
6020 Innsbruck
Austria

Dear Thomas,

This letter agreement (the "Agreement") confirms, with effect from 1st February 2006 (the "Effective Date"), the understanding and agreement between Lehman Brothers Europe Limited ("Lehman Brothers") and Thomas Marsoner (the "Consultant") pursuant to which the Consultant will provide advice and assistance to Lehman Brothers and other members of the Lehman Brothers' group (the "Lehman Group") in connection with the identification and execution of certain transactions in the German, Austrian and Swiss markets.

By executing this Agreement the Consultant acknowledges that he will not be entitled to any payments or other rights under the Executive Advisory Services Agreement between the Consultant and Lehman Brothers dated 13 February 2004 (the "Prior Agreement").

1.  **Services to be rendered by the Consultant**

Subject to the terms and conditions hereof, including, without limitation, paragraph 5 hereof, Lehman Brothers hereby engages the Consultant to, and the Consultant hereby agrees to, assist Lehman Brothers and the Lehman Group, in such a manner as Lehman Brothers may reasonably direct, for the purposes of identifying and assisting in the execution of certain transactions, outside the UK, particularly in the German, Austrian and Swiss markets.  In connection therewith the Consultant will, in particular:

(a)   liaise with and inform the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

(b)   maintain regular contacts with the relevant investment banking teams in the European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

(c)   assist in developing strategies and tactics to approach corporations and governments in Europe; and

(d)   engage in such other activities as may from time to time be agreed between the Consultant and Lehman Brothers or any company in the Lehman Group to which Lehman Brothers may have agreed that the Consultant should provide services, and which Lehman Brothers has notified to the Consultant.

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE +44 (0)20 102 1000
AUTHORISED AND REGULATED BY THE FINANCIAL SERVICES AUTHORITY
REGISTERED IN ENGLAND No 3950078 AT THE ABOVE ADDRESS

91

# LEHMAN BROTHERS

2. **Term**

This Agreement shall be effective as of the date hereof and shall terminate on t
earlier of (i) unless renewed, 31st January 2007 (ii) either party, with or without caus
giving the other party 30 calendar days prior written notice of termination; (iii) eith
party, with cause, giving the other party written notice of termination; or (iv) t
occurrence of one or more of the following events (A) the death of the Consultant;
(B) the Consultant being adjudged bankrupt, compounded with his creditors or subje
to any similar bankruptcy or personal insolvency proceedings in the territory in whi
the Consultant is personally resident; or (C) the Consultant accepting an offer of fu
time employment from any person or legal entity that may be deemed by Lehm
Brothers at its sole discretion to be incompatible with the Agreement.

Notwithstanding any termination of this Agreement, paragraphs 5 to 1 shall rema
in full force and effect.

3. **Compensation Payable to the Consultant**

In consideration of the services to be performed hereunder, the Consultant shall
paid as follows:

(i)  An initial retainer of €100,000 payable within 10 business days of receipt
an appropriate invoice by Lehman Brothers.

(ii)  A quarterly fee of €50,000, payable in arrears in equal installments every
months, with each payment being due on the last business day of April 200
July 2006, October 2006 and January 2007, respectively. These quarterly fe
shall be deductible from any success fees payable as defined below.

(iii)  In relation to a strategic transaction involving Telekom Austria pursuant
which there is a change of control of Telekom Austria or of its subsidia
wireless Mobilkom or demerger of the latter, provided that such transacti
completes during the Payment Period, Lehman Brothers shall pay t
Consultant a fee equal to 20% of the Net Investment Banking Revenues whi
are both earned and received by Lehman Brothers after the date of tl
Agreement in connection with such transaction.

(iv)  In relation to a market offering of shares in Telekom Austria by the compa
itself or by ÖIAG provided that such transaction completes during t
Payment Period, Lehman Brothers shall pay the Consultant a fee equal to 20
of the Net Investment Banking Revenues which are both earned and receiv
by Lehman Brothers after the date of this Agreement in connection with su
transaction.

(v)  In relation to a strategic transaction involving Österreichisc
Verbundgesellschaft AG, Lehman Brothers shall pay the Consultant t
following percentages of Total Revenues: 10% of the first EUR 5mn, 15%
the next EUR 5mn, 20% of the next EUR 10mn, provided that the to

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5EL TELEPHONE +44 (0)20 102 1000
AUTHORISED AND REGULATED BY THE FINANCIAL SERVICES AUTHORITI
REGISTERED IN ENGLAND No 3950078 AT THE ABOVE ADDRESS

92

# LEHMAN BROTHERS

(vi) In relation to a strategic transaction involving Magna International Inc. known as Project Mahler and related projects, Lehman Brothers shall pay the Consultant the following percentages of Total Revenues: 10% of the first US$ 5mn, 15% of the next US$ 5mn, 20% of the next US$ 10mn, provided that the total amount payable to the Consultant shall not exceed US$2,500,000.

(vii) In relation to any other Agreed Transaction provided that (A) such transaction completes during the Payment Period and (B) the Consultant provides substantial services to Lehman Brothers in relation to such Agreed Transaction, Lehman Brothers shall pay the Consultant a fee based on a to be agreed upon percentage of the Net Investment Banking Revenues which are both earned and received by Lehman Brothers after the date of this Agreement in connection with such Agreed Transaction. Without prejudice to the requirement that Lehman Brothers and the Consultant agree thereon, it is understood that in any event the amount of such fee shall not exceed US$2,500,000.

(viii) In addition, upon presentation of an invoice Lehman Brothers will reimburse the Consultant for its reasonable travel and out-of-pocket expenses incurred in connection with providing services hereunder provided that (i) such expenses are authorized by Lehman Brothers and are in accordance with Lehman Brothers' travel and expense policy in force from time to time and (ii) Lehman Brothers shall not be obligated to reimburse any expenses which are not invoiced prior to the date that is 7 days of the closing of the particular transaction to which such expenses relate.

For the avoidance of doubt, the foregoing sets forth the total fees that may be payable to the Consultant in relation to the transactions referred to above. The Consultant shall not be entitled to any other fees or payments pursuant to the Executive Advisory Services Agreement between the Consultant and Lehman Brothers dated 13 February 2004 or otherwise.

For purposes of this Agreement:

"Total Revenues" means (i) for financing products, (A) the sum of Lehman Brothers' management fees, sales credits, net underwriting fees, and/or (B) the amount of any market gains made by Lehman Brothers for its own account, less the amount of any market losses incurred by Lehman Brothers for its own account and less the amount of any non reimbursed out of pocket and other expenses; and (ii) for advisory transactions any retainer and success fees, less the amount of any non reimbursed out of pocket or other expenses.

"Net Investment Banking Revenues" means (i) for financing products, 50% of Total Revenues (ii) for advisory transactions any retainer and success fees, less the amount of any non reimbursed out of pocket or other expenses.

"Agreed Transaction" means any transaction which Lehman Brothers has specifically designated in writing to the Consultant as falling within the ambit of this Agreement.

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE 44 (0)20 102 1000
AUTHORISED AND REGULATED BY THE FINANCIAL SERVICES AUTHORITY
REGISTERED IN ENGLAND No.3950078 AT THE ABOVE ADDRESS

93

# LEHMAN BROTHERS

"Payment Period" shall mean the period commencing on the Effective Date this Agreement and ending 12 months following the termination of th Agreement unless the termination of this Agreement was (A) by t Consultant for any reason; (B) by Lehman Brothers in accordance w paragraph 2(iii); or (C) by virtue of the operation of paragraph 2(iv); in whi case the period shall end on the date of such termination.

## 4.    Contact Person

The contact point at Lehman Brothers with whom the Consultant shall coordina shall be Christian Meissner, a Managing Director of Lehman Brothers, or l designee. All activities of the Consultant, insofar as they relate to Lehman Broth( or a Proposed Transaction, must be coordinated with Christian Meissner or su designee.

## 5.    Exclusivity

During the Exclusivity Period, the Consultant agrees it shall not directly or indirect assist or advise any third party in connection with the operation of any transacti referred to in this Agreement or otherwise engage in any activity which may detrimental to Lehman Brothers involvement in such transactions.

The "Exclusivity Period" shall mean the period commencing the date of th Agreement and ending 6 months following the termination of this Agreement or, longer, the end of the Payment Period.

The Consultant acknowledges that Lehman Brothers will incur expense in reliance the foregoing representations and agreements.

## 6.    Independent Contractor

In its capacity as an independent contractor, the Consultant acknowledges that it is r an agent or employee of Lehman Brothers. The Consultant further acknowledges th it has no power or authority to bind or commit Lehman Brothers to any contract agreement or to make any representations on behalf of Lehman Brothers, and here agrees that, unless it shall receive specific written authorisation from Lehm Brothers to do so, it shall neither (a) hold itself out as having power or authority enter into any contract or agreement on Lehman Brothers' behalf or to otherwise bi or commit Lehman Brothers to any contract or agreement, nor (b) take any actio directly or indirectly, which would cause Lehman Brothers to become a party to a contract or agreement or otherwise obligate Lehman Brothers in any mann whatsoever.

## 7.    Compliance with Laws and Policies

In entering into this Agreement and performing the services hereunder, the Consult: will comply with all applicable laws, rules and regulations of all applical



# LEHMAN BROTHERS

will abide by such policies of Lehman Brothers and its affiliates as Lehman Brothers may reasonably request in connection with the provision of services hereunder.

The Consultant confirms that the entering into of this Agreement and the provision of services hereunder does not conflict with any duties or obligations owed by the Consultant to any other person or persons. The Consultant also agrees that it will provide services hereunder, including the referral of business, only in circumstances that do not give conflict with duties or obligations owed to any other person or persons.

The Consultant confirms that it has and agrees that it will maintain any and all licences and approvals necessary to enable it to provide the services required hereunder.

## 8.    Confidential Information

The Consultant and Lehman Brothers agree to keep confidential all non-public information relating to the transactions referred to herein ("Confidential Information"). In particular each party agrees not to disclose to any third party (other than, in the case of Lehman Brothers, its affiliates and each of its and their officers, directors and employees), for a period of two years from the date hereof, any Confidential Information, without the other parties prior written consent. Notwithstanding the above, neither party shall be prohibited from disclosing confidential information which (i) is or becomes generally available to the public other than as a result of disclosure by that party in breach of this agreement, (ii) was within such party's possession prior to its disclosure, (iii) becomes available to such party after the date hereof from any third party which is not known to be bound by a confidentiality agreement with respect to such information or (iv) is required to disclose by law, judicial order, the Panel on Takeovers and Mergers or any self-regulating or similar organisation.

## 9.    Liability

The Consultant shall be liable for and shall indemnify and hold harmless Lehman Brothers and its affiliates for any and all liabilities (including costs and expenses) incurred by any such entity as the result of the provision by the Consultant of services hereunder, PROVIDED THAT, such liabilities is or shall have been caused by the Consultants negligence, bad faith or willful misconduct.

In no event shall the Consultant or Lehman Brothers be liable, one to the other, for indirect, special, unforeseeable or consequential damages in connection with or otherwise arising out of this Agreement.

## 10.    No Assignment

This Agreement shall be binding upon and shall ensure to the benefit of any successor, heir, legal representative or assign of Lehman Brothers. The performance obligations of the Consultant under this Agreement shall not be assignable or assigned by the Consultant without the prior written approval of Lehman Brothers.

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE +44 (0)20 102 1000
AUTHORISED AND REGULATED BY THE FINANCIAL SERVICES AUTHORITY
REGISTERED IN ENGLAND No. 3950078 AT THE ABOVE ADDRESS

95

# LEHMAN BROTHERS

11.  **Notices**

Any notice which is required to be given under this Agreement shall (witho prejudice to any other effective mode of making the same) be duly served if sent pre-paid first class letter addressed to the party to whom it shall be sent to registered office or sent by facsimile.

Any such notice shall if sent by first class post be deemed to be served two worki days after posting exclusive of the day of posting. If such notice is sent by facsimile shall be deemed served at the time of transmission (or if transmitted outside norm business hours (i.e. 09:00⁻ 18:00 hrs) at the first commencement of busine thereafter).

In proving service by post it shall only be necessary to prove that the notice w contained in an envelope which was duly addressed and posted in accordance w this paragraph 11 and in proving service by facsimile it shall only be necessary produce the sender's copy and transmission slip bearing the addressee's facsim number.

12.  **Governing law**

This Agreement is the entire agreement between the parties with respect to the subjcs matter hereof and may not be amended except in writing signed by both parties. T interpretation and enforcement of this Agreement will be governed by the laws England. The parties submit to the jurisdiction of the English courts, provided tl prior to the commencement of any legal proceedings, the parties will make reasonable efforts to resolve any dispute with respect to this Agreement by referri the matter for mediation by a mediator agreed by the parties or, failing su

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE 44 (0)20 102 1000
AUTHORISED AND REGULATED BY THE FINANCIAL SERVICES AUTHORII
REGISTERED IN ENGLAND No. 3950078 AT THE ABOVE ADDRESS



# LEHMAN BROTHERS

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between Lehman Brothers and the Consultant.

Yours faithfully,

**LEHMAN BROTHERS EUROPE LIMITED**

By: _____
         Name: Christian Meissner
         Title: Managing Director

We hereby acknowledge receipt of the above letter and sign below signifying our full acceptance to the terms and conditions thereof.

**THOMAS MARSONER**

BY: _____

         Title: Senior Advisor

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE 44 (0)20 102 1000
AUTHORISED AND REGULATED BY THE FINANCIAL SERVICES AUTHORITY
REGISTERED IN ENGLAND No.3950075 AT THE ABOVE ADDRESS

97

# LEHMAN BROTHERS

October 5th 2007

Dr. Thomas Marsoner
Andreas Hofer Strasse 43
6020 Innsbruck
Austria

Dear Thomas,

This letter agreement (the "Agreement") confirms, with effect from 1st February 2007 (the "Effective Date"), the understanding and agreement between Lehman Brothers Europe Limited ("Lehman Brothers") and Thomas Marsoner (the "Consultant") pursuant to which the Consultant will provide advice and assistance to Lehman Brothers and other members of the Lehman Brothers' group (the "Lehman Group") in connection with the identification and execution of certain transactions in the German, Austrian and Swiss markets.

By executing this Agreement the Consultant acknowledges that he will not be entitled to any payments or other rights under the Executive Advisory Services Agreement between the Consultant and Lehman Brothers dated 13 February 2004 or the Consultancy Agreement between the Consultant and Lehman Brothers effective 1st February 2006 (together the "Prior Agreements").

### 1.  Services to be rendered by the Consultant

Subject to the terms and conditions hereof, including, without limitation, paragraph 5 hereof, Lehman Brothers hereby engages the Consultant to, and the Consultant hereby agrees to, assist Lehman Brothers and the Lehman Group, in such a manner as Lehman Brothers may reasonably direct, for the purposes of identifying and assisting in the execution of certain transactions, outside the UK, particularly in the German, Austrian and Swiss markets.  In connection therewith the Consultant will, in particular:

(a)   liaise with and inform the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

(b)   maintain regular contacts with the relevant investment banking teams in the European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

(c)   assist in developing strategies and tactics to approach corporations and governments in Europe; and

(d)   engage in such other activities as may from time to time be agreed between the Consultant and Lehman Brothers or any company in the Lehman Group to which Lehman Brothers may have agreed that the Consultant should provide services, and which Lehman Brothers has notified to the Consultant.

# LEHMAN BROTHERS

2.    **Term**

This Agreement shall be effective as of the date hereof and shall terminate on the earlier of (i) unless renewed, 31st August 2008 (ii) either party, with or without cause, giving the other party 30 calendar days prior written notice of termination; (iii) either party, with cause, giving the other party written notice of termination; or (iv) the occurrence of one or more of the following events (A) the death of the Consultant; or (B) the Consultant being adjudged bankrupt, compounded with his creditors or subject to any similar bankruptcy or personal insolvency proceedings in the territory in which the Consultant is personally resident; or (C) the Consultant accepting an offer of full-time employment from any person or legal entity that may be deemed by Lehman Brothers at its sole discretion to be incompatible with the Agreement.

Notwithstanding any termination of this Agreement, paragraphs 5 to 12 shall remain in full force and effect.

3.    **Compensation Payable to the Consultant**

In consideration of the services to be performed hereunder, the Consultant shall be paid as follows (inclusive of value added or equivalent tax that may be payable thereon):

(i)    A fee of €16,667 for the month of February 2007 and then a quarterly fee of €50,000, payable in arrears in equal installments every 3 months, with each payment being due on the last business day of May 2007, August 2007, November 2007, February 2008, May 2008 and August 2008 respectively. The February 2007 fee and the quarterly fees shall be deductible from any success fees payable as defined below.

(ii)    In relation to any Agreed Transaction provided that (A) such Agreed Transaction completes during the payment period and (B) the Consultant provides services to Lehman Brothers in relation to such Agreed Transaction, Lehman Brothers shall pay the Consultant a fee of up to 20% of the Net Investment Banking Revenues which are both earned and received by Lehman Brothers after the date of this Agreement in connection with such Agreed Transaction. Without prejudice to the requirement that Lehman Brothers and the Consultant agree thereon, it is understood that, except in the case of an Uncapped Transaction, in any event the amount of such fee shall not exceed €2,500,000 for each Agreed Transaction. For the avoidance of doubt the €2,500,000 cap shall be the maximum amount payable in respect of each such Agreed Transaction whether Lehman Brothers earns fees in respect of advisory services, related financing services or both in connection with such Agreed Transaction.

(iii)    Lehman Brothers may award to the Consultant a discretionary performance fee (the "Discretionary Performance Fee"), to be determined, calculated and paid by Lehman Brothers, in its sole and absolute discretion. The Consultant is aware and agrees that under this Agreement he is not entitled to, and

# LEHMAN BROTHERS

therefore cannot claim the payment of, any Discretionary Performance Fee, unless otherwise agreed in writing with Lehman Brothers.

(iv)     In addition, upon presentation of an invoice Lehman Brothers will reimburse the Consultant for its reasonable travel and out-of-pocket expenses incurred in connection with providing services hereunder provided that (i) such expenses are authorized by Lehman Brothers and are in accordance with Lehman Brothers' travel and expense policy in force from time to time and (ii) Lehman Brothers shall not be obligated to reimburse any expenses which are not invoiced prior to the date that is 7 days of the closing of the particular transaction to which such expenses relate.

For the avoidance of doubt, the foregoing sets forth the total fees that may be payable to the Consultant in relation to the transactions referred to above. The Consultant shall not be entitled to any other fees or payments pursuant to the Prior Agreements or otherwise.

For purposes of this Agreement:

"Net Investment Banking Revenues" shall mean (i) for the purposes of a financing, currently 50% of the share that Lehman Brothers Investment Banking Division receives from the sum of the Lehman Brothers management fees, sales credits and net underwriting fees, and the amount of any market gains made by Lehman Brothers for its own account, less the value of any market losses incurred by Lehman Brothers for its own account and less the amount of any unreimbursed out of pocket and other expenses, if any and (ii) for the purposes of advisory transactions the share that Lehman Brothers Investment Banking Division receives of any retainer and success fees, less the amount of any losses incurred by a related financing and less the amount of any unreimbursed out of pocket or other expenses. For the avoidance of doubt, Net Investment Banking Revenues shall include any fees received by Lehman Brother Investment Banking Division from the client in question in connection with derivative and related transactions (including pension and foreign exchange).

If, following the payment to you of any fee, Lehman Brothers incurs any loss, cost or expense which would have reduced the amount of Net Investment Banking Revenues had such a loss, cost or expense occurred prior to the payment of such fee, then you agree to repay Lehman Brothers (within 14 days of the request for repayment) the portion of such fee that would have been paid to you had such loss, cost or expense occurred to prior to the payment of such fee; provided that this paragraph shall not apply in respect of any loss, cost or expense that is incurred 6 months following the payment to you of the relevant fee,

100

# LEHMAN BROTHERS

"Agreed Transaction" means:

(i)    advising BAWAG on the sale of its lottery stake (known as "Project Random")

(ii)    a Hybrid or Tier II issuance by BAWAG;

(iii)    advising IV Capital on the acquisition of a stake in S-Versicherung and asset management agreement

(iv)    advising IV Capital on a joint venture on "Zukunftsvorsorge" with BAWAG;

(v)    advising CVC on the acquisition of B&C Holding (known as Project Mountain);

(vi)    advising CVC on the acquisition of 3 Banken (known as Project Independence);

(vii)    advising EVN and/or Verbund in relation to a potential strategic transaction (known as Project Mozart II);

(viii)    advising Telekom Austria on a split with Mobilkom;

(ix)    acting as underwriter in any marketed public offering of Telekom Austria shares;

(x)    BAWAG earning asset creation program

(xi)    Advising on acquiring a 24% stake in the Austrian utility ESTAG and follow on IPO

(xii)    Advising BAWAG on the sale of its Eastern European (Slovak, Czech, Hungarian and Slovenian) Bank Stakes – Project Paradise

(xiii)    any other transaction which Lehman Brothers has specifically designated in writing to the Consultant as falling within the ambit of this Agreement.

An "Uncapped Transaction" shall mean the Agreed Transactions referred to in (iii), (iv), (vi), (vii) and (viii) of the definition of Agreed Transaction, provided that the Consultant has and continues until closing to provide substantial services in connection with such Agreed Transaction.

"Payment Period" shall mean the period commencing on the Effective Date of this Agreement and ending 12 months following the termination of this Agreement unless the termination of this Agreement was (A) by the Consultant for any reason; (B) by Lehman Brothers in accordance with paragraph 2(iii); or (C) by virtue of the operation of paragraph 2(iv); in which case the period shall end on the date of such termination.

# LEHMAN BROTHERS

4.    **Contact Person**

The contact point at Lehman Brothers with whom the Consultant shall coordinate shall be Christian Meissner, a Managing Director of Lehman Brothers, or his designee. All activities of the Consultant, insofar as they relate to Lehman Brothers or a Proposed Transaction, must be coordinated with Christian Meissner or such designee.

5.    **Exclusivity**

During the Exclusivity Period, the Consultant agrees it shall not directly or indirectly, assist or advise any third party in connection with the operation of any transaction referred to in this Agreement or otherwise engage in any activity which may be detrimental to Lehman Brothers involvement in such transactions.

The "Exclusivity Period" shall mean the period commencing the date of this Agreement and ending 6 months following the termination of this Agreement or, if longer, the end of the Payment Period.

The Consultant acknowledges that Lehman Brothers will incur expense in reliance of the foregoing representations and agreements.

6.    **Independent Contractor**

In its capacity as an independent contractor, the Consultant acknowledges that it is not an agent or employee of Lehman Brothers. The Consultant further acknowledges that it has no power or authority to bind or commit Lehman Brothers to any contract or agreement or to make any representations on behalf of Lehman Brothers, and hereby agrees that, unless it shall receive specific written authorisation from Lehman Brothers to do so, it shall neither (a) hold itself out as having power or authority to enter into any contract or agreement on Lehman Brothers' behalf or to otherwise bind or commit Lehman Brothers to any contract or agreement, nor (b) take any actions, directly or indirectly, which would cause Lehman Brothers to become a party to any contract or agreement or otherwise obligate Lehman Brothers in any manner whatsoever.

7.    **Compliance with Laws and Policies**

In entering into this Agreement and performing the services hereunder, the Consultant will comply with all applicable laws, rules and regulations of all applicable jurisdictions, will obtain and maintain all applicable licences and registrations and will abide by such policies of Lehman Brothers and its affiliates as Lehman Brothers may reasonably request in connection with the provision of services hereunder.

The Consultant confirms that the entering into of this Agreement and the provision of services hereunder does not conflict with any duties or obligations owed by the Consultant to any other person or persons. The Consultant also agrees that it will provide services hereunder, including the referral of business, only in circumstances

# LEHMAN BROTHERS

that do not give conflict with duties or obligations owed to any other person or persons.

The Consultant confirms that it has and agrees that it will maintain any and all licences and approvals necessary to enable it to provide the services required hereunder.

**8.    Confidential Information**

The Consultant and Lehman Brothers agree to keep confidential all non-public information relating to the transactions referred to herein ("Confidential Information"). In particular each party agrees not to disclose to any third party (other than, in the case of Lehman Brothers, its affiliates and each of its and their officers, directors and employees), for a period of two years from the date hereof, any Confidential Information, without the other parties prior written consent. Notwithstanding the above, neither party shall be prohibited from disclosing confidential information which (i) is or becomes generally available to the public other than as a result of disclosure by that party in breach of this agreement, (ii) was within such party's possession prior to its disclosure, (iii) becomes available to such party after the date hereof from any third party which is not known to be bound by a confidentiality agreement with respect to such information or (iv) is required to disclose by law, judicial order, the Panel on Takeovers and Mergers or any self-regulating or similar organisation.

**9.    Liability**

The Consultant shall be liable for and shall indemnify and hold harmless Lehman Brothers and its affiliates for any and all liabilities (including costs and expenses) incurred by any such entity as the result of the provision by the Consultant of services hereunder, PROVIDED THAT, such liabilities is or shall have been caused by the Consultants negligence, bad faith or willful misconduct.

In no event shall the Consultant or Lehman Brothers be liable, one to the other, for indirect, special, unforeseeable or consequential damages in connection with or otherwise arising out of this Agreement.

**10.    No Assignment**

This Agreement shall be binding upon and shall ensure to the benefit of any successor, heir, legal representative or assign of Lehman Brothers. The performance obligations of the Consultant under this Agreement shall not be assignable or assigned by the Consultant without the prior written approval of Lehman Brothers.

**11.    Notices**

Any notice which is required to be given under this Agreement shall (without prejudice to any other effective mode of making the same) be duly served if sent by pre-paid first class letter addressed to the party to whom it shall be sent to its registered office or sent by facsimile.

103

# LEHMAN BROTHERS

Any such notice shall if sent by first class post be deemed to be served two working days after posting exclusive of the day of posting. If such notice is sent by facsimile it shall be deemed served at the time of transmission (or if transmitted outside normal business hours (i.e. 09:00 – 18:00 hrs) at the first commencement of business thereafter).

In proving service by post it shall only be necessary to prove that the notice was contained in an envelope which was duly addressed and posted in accordance with this paragraph 11 and in proving service by facsimile it shall only be necessary to produce the sender's copy and transmission slip bearing the addressee's facsimile number.

12.   **Governing law**

This Agreement is the entire agreement between the parties with respect to the subject matter hereof and may not be amended except in writing signed by both parties. The interpretation and enforcement of this Agreement will be governed by the laws of England. The parties submit to the jurisdiction of the English courts, provided that prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the President of Centre for European Dispute Resolution.

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between Lehman Brothers and the Consultant.

Yours faithfully,

LEHMAN BROTHERS EUROPE LIMITED

BY: _____
    Christian Meissner
    Managing Director
    Co-Head European Investment Banking

We hereby acknowledge receipt of the above letter and sign below signifying our full acceptance to the terms and conditions thereof.

THOMAS MARSONER

BY: _____
    Consultant

104