LAW OFFICES OF LISA M. SOLOMON
One Grand Central Place
305 Madison Avenue, Ste. 4700
New York, NY 10165
Tel: 212- 471-0067; Fax: 212-980-6965
Lisa M. Solomon, Esq.

Hearing Date: January 15, 2015
Hearing Time: 10:00 a.m.
Response Deadline: Jan. 8, 2015 at 4:00 p.m.

*Counsel for Compensation Claimants Madelyn Antoncic,
Michele Bareggi, Riccardo Banchetti, Timothy A. Burke,
Nachiketa Das, Philippe Dufournier, Brian Gross, Peter Hornick,
Andrea Jao, Michael Lawsky, Alexandre Catalao Maia, Nikki Marshall,
Richard Noble, Anke Parr, Vincent Primiano, Giancarlo Saronne,
Jonathan Sebiri, Charles Spero, Harsh Shah and Gordon Sweely*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                          Chapter 11
                                          :     Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS, INC.,
*et al.*,
                                          :     (Jointly Administered)
                    Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF MOTION OF COMPENSATION CLAIMANTS FOR AN ORDER DIRECTING THE IMMEDIATE RESTORATION OE PLAN RESERVES

PLEASE TAKE NOTICE that upon the annexed motion (the "Motion") of the

undersigned Compensation Claimants and exhibits thereto, the undersigned counsel shall move

this Court before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004-1408, Courtroom 621, on the 15th day of January 2015 at 10:00

o'clock in the forenoon of that day or as soon thereafter as counsel can be heard (the "Hearing"),

pursuant to Section 8.4 of the Debtors' Third Amended Joint Plan of Reorganization (the "Plan")

and paragraph "42" of the order confirming the Plan (the "Confirmation Order"), for an order: (a)

enforcing the Plan and Confirmation Order and directing that the Plan Administrator (as defined therein) immediately restore reserves previously established under the Plan and Confirmation Order on behalf of Compensation Claimants in the amount of their filed Claims, and (b) granting Compensation Claimants such other and further relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that answering papers and objection, if any, to the relief sought in the Motion shall be made in writing, shall state with particularity the grounds therefore, and shall be filed with the Clerk of this Court, with a copy to Chambers, and served upon and received by the undersigned counsel for Compensation Claimants, Law Offices of Lisa M. Solomon, One Grand Central Place, 305 Madison Avenue, Suite 4700, New York, New York 10165, Attn: Lisa M. Solomon, Esq., no later than January 8, 2015.

Dated: New York, New York
      December 31, 2014

LAW OFFICES OF LISA M. SOLOMON

By:    /s/ Lisa M. Solomon
      Lisa M. Solomon
One Grand Central Place
305 Madison Avenue, Suite 4700
New York, New York 10165
(212) 471-0067

*Counsel for Compensation Claimants Madelyn Antoncic, Michele Bareggi, Riccardo Banchetti, Timothy A. Burke, Nachiketa Das, Philippe Dufournier, Brian Gross, Peter Hornick, Andrea Jao, Michael Lawsky, Alexandre Catalao Maia, Nikki Marshall, Richard Noble, Anke Parr, Vincent Primiano, Giancarlo Saronne, Jonathan Sebiri, Charles Spero, Harsh Shah, Gordon Sweely*

2

LAW OFFICES OF LISA M. SOLOMON
305 Madison Avenue, Suite 4700
New York, NY 10165
Tel: 212- 471-0067; Fax: 212-980-6965
Lisa M. Solomon, Esq.

*Counsel for Compensation Claimants Madelyn Antoncic,*
*Michele Bareggi, Riccardo Banchetti, Timothy A. Burke,*
*Nachiketa Das, Philippe Dufournier, Brian Gross, Peter Hornick,*
*Andrea Jao, Michael Lawsky, Alexandre Catalao Maia, Nikki Marshall,*
*Richard Noble, Anke Parr, Vincent Primiano, Giancarlo Saronne,*
*Jonathan Sebiri, Charles Spero, Harsh Shah and Gordon Sweely*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                              Chapter 11

                              :                    Case No. 08-13555 (SCC)

LEHMAN BROTHERS HOLDINGS, INC.,
et al.,

                              :                    (Jointly Administered)

                Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION OF COMPENSATION CLAIMANTS FOR AN ORDER DIRECTING THE IMMEDIATE RESTORATION OE PLAN RESERVES

Compensation Claimants appearing on the signature page below, by their undersigned

counsel, hereby move (the "Motion") this Court, pursuant to Section 8.4 of the Debtors' Third

Amended Joint Plan of Reorganization (the "Plan") and paragraph "42" of the order confirming

the Plan (the "Confirmation Order"), for an order enforcing the Plan and Confirmation Order and

directing that the Plan  Administrator immediately restore reserves previously established under

the Plan and Confirmation Order on behalf of Compensation Claimants in the amount of their

filed Claims.  In support thereof, Claimants respectfully represent as follows:

## SUMMARY OF ARGUMENT

1.      Lehman Brothers Holdings, Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator, has unilaterally removed reserves previously established pursuant to the Plan and Confirmation Order for the benefit of Claimants herein and other similarly situated claimants notwithstanding the Plan requirement that LBHI maintain reserves for Disputed Claims such as those held by Claimants herein.  To support its action, LBHI relies upon paragraph "43" of the Confirmation Order, providing the Debtors are not required to "establish reserves for Claims that have been *disallowed or expunged by order of the Court.*"  (emphasis added).  LBHI through counsel remarkably states that it "is no longer maintaining reserves for the RSU Claims" insofar as the RSU Claims have been "effectively disallowed as such and recharacterized as equity interests."  As acknowledged by LBHI's counsel, there has been *no* Court order disallowing or expunging the RSU claims.  LBHI did not even give notice to Compensation Claimants of its decision to remove the reserves or seek Court authority  to do so. LBHI's actions are in violation of the Plan and Confirmation Order. Given the foregoing, Compensation Claimants request that this Court enforce the Plan and Confirmation Order and direct the Plan Administrator to make immediate restoration of Claimants'  reserves.

## BACKGROUND

2.      Commencing on September 15, 2008 (the "Petition Date"), LBHI and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under title 11 of the United States Code (the "Code").

## A.  The RSU Related Claims

3.      Prior to the bar date for filing claims herein, Claimants and other similarly situated former employees of the Debtors filed general unsecured and employee wage priority proofs of claim (collectively, the "Claims") for unpaid bonus and commission compensation for

2

years 2003 through 2008 payment of which had been promised Claimants by Lehman either in cash or LBHI common stock, as to which LBHI had granted Claimants RSUs and CSAs, as a means of Lehman's performance compensation obligation to its employees.

4.    Between December 7, 2010 and August 24, 2012, LBHI and its affiliated Debtors in this chapter 11 case, as debtors and debtors in possession, and LBHI as Plan Administrator, filed fourteen Omnibus Objections (collectively, the "Omnibus Objections") to the Claims. The Objections sought solely to (i) subordinate the Claims under §510(b) of the Code to the claims of general creditors to the level of LBHI equity and (ii) reclassify the Claims as equity on the basis that the RSUs were equity securities within the meaning of §101(16) of the Code. The Objections did not seek to disallow or contest the amount of the Claims. The Objections reserved the right to do so with respect to all or part of any Claim.

**B.    Confirmation of the Plan/Disputed Claims Reserve**

5.    A hearing to consider confirmation of the Plan was held on December 2, 2011, at which the Court confirmed the Plan. The Confirmation Order was entered by the Court on December 6, 2011. A hearing on the Omnibus Objections first came on to be heard by the Court on December 21, 2011 after confirmation of the Plan and more than one year after the first of the Omnibus Objections was filed.

6.    The Plan provides, as is typical in chapter 11 cases in this district and elsewhere, under Section 8.4, that the Plan Administrator "shall," until a "Disputed Claim" has been determined by "Final Order," retain reserves based upon the "Pro Rata Share of the Distributions that would have been made to each holder of a Disputed Claim if such Disputed Claim were an Allowed Claim" that is equal to (subject to certain conditions not applicable here) "the filed

3

amount of such Disputed Claim." "Disputed" with respect to a Claim is defined under the Plan as a Claim to which "a timely objection . . . has been interposed which objection . . . has not been withdrawn or determined by a Final Order."

7.    Paragraph "42" of the Confirmation Order incorporates the provisions of section 8.4 of the Plan. Paragraph "43" of the Confirmation Order, however, further provides that absent an order of the Court the Debtors are not required to "establish reserves for Claims that have been *disallowed or expunged by order of the Court*." (emphasis added)

8.    Following the filing of the Omnibus Objections, each RSU Claim was a Disputed Claim for purposes of Section 8.4 of the Plan and paragraph "42" of the Confirmation Order. Consistent with the foregoing, at a status conference held before the Court on November 22, 2013, Lehman's counsel Ralph Miller, Esq. confirmed to the Court and Claimants that in the event the Omnibus Objections were sustained and the claims reclassified, reserves would be lifted only for RSU claims that were *not* appealed. He stated:

> and if the Court should find that some or all of the remaining claims should be reclassified as equity, there would then be time for the 14 day appellate time to run.
> And *assuming that some or all of those were not appealed*, there would then be a group of these claims that would come back as equity and they would free up funds that are now being held back in reserve that can't be used in the fifth distribution.

Excerpt of Conf. Tr., Nov. 22, 2013, at 21:2-21:14 (emphasis added), Ex."A" annexed hereto.

## C. **This Court's Decision**

9.    Following a three day-evidentiary hearing, this Court rendered its Memorandum Decision Sustaining Omnibus Objections to Claims  dated November 3, 2014 (the "Decision"). By the Decision, this Court held that the "RSUs are securities" that the "RSU Claimants

4

purchased" and the "damages that the RSU Claimants seek arise from such purchase." As such, the Court held that the "RSU Claims must be subordinated under section 510(b) of the Bankruptcy Code." The Court also held that the RSUs fall within the definition of "equity security" under section 101(16) of the Code.

10.     An Order Sustaining Omnibus Objections and Reclassifying Claims for Restricted Stock Units and Contingent Stock Awards  was entered by this Court on November 7, 2014 (the "Order") reclassifying the RSU Claims as equity interests in the amount of their filed proofs of claim.  Following entry of the Decision and Order, on November 21, 2014, appeals were taken by Claimants herein with Claims whose claims aggregate approximately $140 million, which appeals are now pending.

## D. **Plan Administrator's Removal of Reserves**

11.     The Plan Administrator without prior notice to the Compensation Claimants or application to the Court, has now removed reserves that had been established for Claimants herein and other RSU Claimants.  On December 12, 2014, in response to an inquiry made by counsel for Compensation Claimants, counsel for the Plan Administrator first advised Compensation Claimants that "LBHI has elected to treat the RSU Claims as equity for reserve purposes, pursuant to paragraph 43 of the Confirmation Order." (e-mail from Doron Kenter, Ex. "B" annexed hereto). On the same day, counsel for Compensation Claimants requested that LBHI provide clarification of its position as to its "election," and also stated to LBHI's counsel that the "RSU claims were neither disallowed nor expunged." (e-mail from Lisa Solomon, Ex. "C" annexed hereto).  Thereafter, on December 15, 2014, LBHI through counsel responded to Compensation Claimants' e-mail stating that "LBHI is no longer maintaining reserves for the

5

RSU Claims."  (e-mail from Doron Kenter, Ex. "C" annexed hereto).

## LEGAL ARGUMENT

12.     The position that LBHI now puts forth, that the claims have been disallowed for purposes of paragraph "43" of the Confirmation Order and that Lehman is therefore not obligated to maintain reserves for the RSU claims notwithstanding the absence of a Final Order, flies in the face of its counsel's earlier acknowledgement of LBHI's reserve obligations pending an appeal.  It also is legally flawed.

13.     Section 510(b) "does not operate to reduce or eliminate [claims], but only to ensure that [claimants] receive compensation for their claim on the same basis as the claimants who are on the level to which their claim is subordinated." *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*, 439 B.R. 284, 298 (S.D.N.Y. 2010)(*quoting Kaiser Group Int'l, Inc. v. Pippin*, 326 B.R. 265, 268 (D. Del. 2005)). "A creditor whose claim has been subordinated does not cease to be a creditor under the Code." 5 *Collier on Bankruptcy* ¶ 510.02[2] (15th ed. 2008).  Indeed, §510(b) repeatedly identifies the subordinated interests as "claims," meaning they retain their legal character as claims, and remain otherwise effectual.[1]

14.     Thus, "section 510(b) provides no basis for the disallowance of claims. Disallowance and subordination are different. 'Disallowance of a claim is a legal determination that the claim under consideration is not allowable by law. On the other hand, subordination of a

---

[1] Section 510(b) of the Code provides:

> For the purpose of distribution under this title, a ***claim*** arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution  allowed under section 502 on account of such a ***claim***, shall be subordinated to all claims or interests that are senior to or equal the ***claim*** or interest represented by such security, except that if such security is common stock, such ***claim*** has the same priority as common stock. 11 U.S.C. § 510(b) (emphasis added).

claim presupposes that the claim is allowed." *Margaret B. McGimsey Trust v. USA Capital Diversified Trust Deed Fund, LLC*, 377 B.R. 608, 616 (B.A.P. 9th Cir. 2007)*(quoting Ford v. Feldman*, 177 B.R. 374, 383 (Bankr. M.D. Fla. 1994); *see also In re Enron Corp.*, 2003 Bankr. LEXIS 2261, *20, 24 (Bankr. S.D.N.Y. 2003)( court noting subordination is not a defense to debtor's liability on a proof of claim in case where creditor was alleged in fact to be an equity holder whose claims had already been contractually subordinated).

15.    Further, courts have rejected the position LBHI takes here that subordination means disallowance merely because subordinated creditors will receive no distributions.  Courts have recognized that even though subordination, "'if established, may be functionally equivalent to disallowance (i.e., no distribution on the claims),' it is a legally distinct proceeding which seeks to reprioritize the order of allowed claim based on the equities of the case, rather than to disallow the claim in the first instance." *Lehman Commer. Paper, Inc. v. Palmdale Hills Prop., LLC*, 423 B.R. 655, 665 (9th Cir. B.A.P. 2009), *aff'd, Palmdale Hills Prop. LLC v. Lehman Comm. Paper, LLC, Inc.*, 654 F3d 868 (5th Cir. 2011)*(quoted citation not included)*; *see also Christian Bros. High Sch. Endowment v. Bayou, supra* at 298 n. 12 (subordinated claimants do not lose their status of creditors although they often receive nothing under the plan).

16.    Based upon the foregoing, LBHI had no right to elect that the RSU Claimants be treated as equity holders in derogation of RSU Claimants' rights as claim holders against LBHI.[2]

---

[2]    That the RSUs have been determined by this Court, in the alternative, to be equity securities does not abrogate the RSU Claimants' rights as claim holders herein.   Courts have recognized that "[t]he definitions of 'creditor' and 'equity security holder' are [not] mutually exclusive"(brackets in original). *In re IDS Holding Co. LLC*, 292 B.R. 233, 237 (Bankr. D. Conn. 2003) (*quoting In re St. Charles Preservation Investors, Ltd.*, 112 B.R. 469, 474 (D.D.C. 1990)) (internal quotation marks omitted).  The fact that an individual holds an equity interest does not mean that that individual cannot also be a creditor. *In re IDS Holding Co., LL, supra* at 238 ("'There is no provision in the Bankruptcy Code that a limited partner with an equity security interest cannot also have an independent claim within the definition of 101(4) arising out of the same instrument.'") (*quoting In re St. Charles Pres. Investors, Ltd.*, 112

The Claims have not been disallowed. The purpose of the Objections was to alter their priority only. It is disingenuous for LBHI to assert the "effective" disallowance of the Claims as a basis for the removal of the reserves when it was LBHI who crafted the terms of the Confirmation Order including paragraph "43," which is clear on its face. LBHI cannot rewrite the terms of the Confirmation Order and deprive RSU Claimants of the reserves to which they are legally entitled because LBHI has decided it would like to use the monies elsewhere, or worse yet, as a sword against RSU Claimants in their appeals. Whatever LBHI's motives in removing the reserves, it is wrong and must be corrected.

WHEREFORE, it is respectfully requested that the Motion be granted in its entirety and the Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
December 31, 2014

LAW OFFICES OF LISA M. SOLOMON

By: ___/s/ Lisa M. Solomon_____
Lisa M. Solomon
305 Madison Avenue, Suite 4700
New York, New York 10165
(212) 471-0067

*Counsel for Compensation Claimants Madelyn Antoncic, Michele Bareggi, Riccardo Banchetti, Timothy A. Burke, Nachiketa Das, Philippe Dufournier, Brian Gross, Peter Hornick, Andrea Jao, Michael Lawsky, Alexandre Catalao Maia, Nikki Marshall, Richard Noble, Anke Parr, Vincent Primiano, Giancarlo Saronne, Jonathan Sebiri, Charles Spero, Harsh Shah, Gordon Sweely*

---

B.R. 469, 474 (D.D.C. 1990)); *Margaret B. McGimsey Trust v. USA Capital Diversified Trust Deed Fund, LLC, supra* at 615 ("A proof of claim asserted by an equity holder for breach of contract and fraud relating to the purchase of a security is simply not duplicative of the equity holder's proof of interest."). If there were any election rights herein, they belong to the RSU Claimants and not LBHI as the Plan Administrator.

8

# EXHIBIT A

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555 (JMP)

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS, INC., et al.,

7            Debtors.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    CASE NO.: 08-01420 (JMP)(SIPA)

10   In the Matter of:

11   LEHMAN BROTHERS, INC.,

12           Debtor.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14                   United States Bankruptcy Court

15                   One Bowling Green

16                   New York, New York

17

18                   November 22, 2013

19                   10:06 a.m.

20

21

22

23   B E F O R E :

24   HON JAMES M. PECK

25   U.S. BANKRUPTCY JUDGE

```
 1   A P P E A R A N C E S :

 2   WEIL, GOTSHAL & MANGES, LLP

 3        Attorneys for Debtors

 4        1300 Eye Street NW, Suite 900

 5        Washington, DC 20005

 6

 7   BY:   RALPH I. MILLER, ESQ.

 8

 9   WEIL, GOTSHAL & MANGES, LLP

10        Attorneys for Debtors

11        767 Fifth Avenue

12        New York, New York 10153

13

14   BY:   JACQUELINE MARCUS, ESQ.

15        MAURICE HORWITZ, ESQ.

16        ERIKA DEL NIDO, ESQ.

17

18   HUGHES HUBBARD & REED, LLP

19        Attorneys for Debtors

20        One Battery Park Plaza

21        New York, New York 10004

22

23   BY:   MEAGHAN C. GRAGG, ESQ.

24

25
```

Page 11

1   LAW OFFICES OF LISA M. SOLOMON

2         Attorney for Unspecified

3         305 Madison Avenue

4         Suite 4700

5         New York, New York 10165

6

7   BY:   LISA M. SOLOMON, ESQ.

8

9   SILVERMAN ACAMPORA

10         Attorneys for CDC

11         100 Jericho Quandrangle, Suite 300

12         Jericho, New York 11753

13

14   BY:   JAY S. HELLMAN, ESQ.

15

16   ORRICK, HERRINGTON & SUTCLIFFE, LLP

17         Attorneys for Depfa Bank
                  th
18         1152 15   Street, N.W.

19         Washington, D.C. 20005-1706

20

21   BY: JONATHAN GUY, ESQ.

22

23

24

25

Page 12

1    ALSO APPEARING:

2    RICHARD SCHAGER

3    ARTHUR KENNY

4    ANDREA HO

5    LARS JACOBSON

6    EUGENE KAPLAN

7    LISA BOGERT

8    DANIEL CARRAGHER

9    DARIAN COHEN

10    BARRY O'BRIEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 20

1    distinctions.  But, briefly, those were pre-selected cases.

2    They were matters where there was not a full evidentiary

3    record and the hearing was not open to all parties to

4    participate.  In that case, the Court allowed subsequent

5    submissions.  I understand there actually weren't any, but

6    from parties who wanted to add something to the record.

7         We don't believe that that procedure fits the

8    facts and circumstances here because we do have a full

9    evidentiary record, as the Court asked us to develop it, and

10   everyone has had an opportunity to participate.  We believe

11   that we can effectively do the hearing.

12        The claimants had indicated they would like two

13   days.  We hope it can be done more quickly than that, but

14   certainly if two days are allowed, there ought to be ample

15   time with the Court's management and guidance to get

16   whatever input you want from all the participants.

[Mr. Miller, 17        If there is one two-day hearing, we believe it is
for LBHI,
Plan Admin-  18   most efficient for plan administration if that could
istrator.]
19   possibly be scheduled by no later than early February.  I

20   mean, the Court has two dates in late January and two dates

21   in early February which are fine with LBHI and we believe

22   the briefing can be completed before those dates.

23        The represented claimants favor February 25 and

24   26.  Although this may not seem like much time delay, it

25   does have an impact on the fifth distribution which comes

Page 21

1    out near the end of March and has to be calculated in the

2    middle of March, essentially.  And if there is a hearing in

3    early February and the Court takes several weeks to resolve

4    it, and if the Court should find that some or all of the

5    remaining claims should be reclassified as equity, there

6    would then be time for the 14 day appellate time to run.

7            And assuming that some or all of those were not

8    appealed, there would then be a group of these claims that

9    would come back as equity and they would free up funds that

10   are now being held back in reserve that can't be used in the

11   fifth distribution.  There's about a little over $25 million

12   of cash.  The reserves are much larger because there are

13   multiple of that that's being held back for the possibility

14   these are not reclassified.

15           We don't believe that that's practical and so,

16   essentially, that $25 million is locked up for at least

17   another six months till the following distribution, if this

18   is delayed much beyond early February.

19           So that's why we think that a hearing date is

20   important in early February, if possible.

21           The third issue is really a question of who opens

22   and who closes.  We don't think there is much doubt about

23   the fact that LBHI has the prima facie obligation to frame

24   its objection and should at least open.  We recognize that

25   all parties should put on their evidence.  We think that

EXHIBIT B

**From:** Kenter, Doron [mailto:Doron.Kenter@weil.com]
**Sent:** Friday, December 12, 2014 10:21 AM
**To:** Richard Schager
**Cc:** ENKaplan@kaplanlandau.com; lisa.solomon@att.net; HMagaliff@r3mlaw.com; RMichaelson@r3mlaw.com; michaels@jstriallaw.com; michellep@jstriallaw.com; jamesboyajian@gmail.com; goldenberg@ssnyc.com; Alvarez, Denise; Miller, Ralph; Brady, Teresa; Lemons, Robert
**Subject:** RE: Lehman -- Record & Issues on Appeal

Richard:

Perhaps we are talking past each other.  We are only hoping to address timing of designations and counter-designations, and only with respect to the appellants represented by counsel on this email.  Please confirm by response to this email that you agree that LBHI's time to counter-designate in response to your designations will not begin until all of the appellants represented by counsel on this email file their respective statements and designations (as they have all agreed), and that you will not object to LBHI's designations as untimely based on that understanding. If you cannot confirm accordingly, LBHI may, out of an abundance of caution, be forced instead to file its own counter-designation within 14 days after your designation becomes effective (pursuant to Bankruptcy Rule 8009), together with a cover letter explaining the reason for burdening the court's docket.

As to your question regarding reserves, LBHI has elected to treat the RSU Claims as equity for reserve purposes, pursuant to paragraph 43 of the Confirmation Order, which provides that "none of the Debtors shall be required to establish reserves for Claims that have been disallowed or expunged by order of the Court in the absence of an order of the Court expressly directing the Debtor to establish a reserve."

Regards,

Doron

EXHIBIT C

## Lisa Solomon

**From:** Kenter, Doron [Doron.Kenter@weil.com]

**Sent:** Monday, December 15, 2014 9:21 AM

**To:** Lisa Solomon; 'Richard Schager'; Lemons, Robert; Miller, Ralph; Brady, Teresa; Alvarez, Denise

**Cc:** ENKaplan@kaplanlandau.com; HMagaliff@r3mlaw.com; RMichaelson@r3mlaw.com; michaels@jstriallaw.com; michellep@jstriallaw.com; jamesboyajian@gmail.com; goldenberg@ssnyc.com

**Subject:** RE: Lehman -- Record & Issues on Appeal

Lisa:

To clarify my last email, pursuant to the Confirmation Order, LBHI is no longer maintaining reserves for the RSU Claims. Insofar as the RSU Claims were filed as general unsecured claims (and/or priority clams), they have been effectively disallowed as such, and recharacterized as equity interests. Paragraph 43 of the Confirmation Order specifically refers to claims as to which an order has been entered – and does not require a reserve to be maintained while that order is subject to appeal. Note that, to the extent that there is any disagreement between the Plan and the Confirmation Order, the Confirmation Order controls.

Of course, we also believe that Judge Chapman's ruling was legally sound and abundantly clear and will be affirmed in its entirety. Although it is your right to pursue an appeal of that ruling, LBHI will not delay distributions to holders of bona fide claims where the Confirmation Order does not require it to do so.

Regards,
Doron

**From:** Lisa Solomon [mailto:lisa.solomon@att.net]
**Sent:** Friday, December 12, 2014 4:47 PM
**To:** 'Richard Schager'; Kenter, Doron; Lemons, Robert; Miller, Ralph; Brady, Teresa; Alvarez, Denise
**Cc:** ENKaplan@kaplanlandau.com; HMagaliff@r3mlaw.com; RMichaelson@r3mlaw.com; michaels@jstriallaw.com; michellep@jstriallaw.com; jamesboyajian@gmail.com; goldenberg@ssnyc.com
**Subject:** RE: Lehman -- Record & Issues on Appeal

Doron,
You state in your e-mail below that the Debtors have "elected to treat the RSU claims as equity for reserve purposes." Can you please clarify what you mean? Are you saying there will be no reserves for the RSU claims pending the appeals?

Also, I took a look at paragraph 43 from the confirmation order that you cited to earlier. I question that it applies here, since it only applies to claims that have been "disallowed and expunged." The RSU claims were neither disallowed nor expunged. They were reclassified as equity interests under Judge Chapman's order, with the amounts preserved as set forth in the exhibits. The RSU Claims remain "Disputed Claims," pursuant to paragraph 42 of the confirmation order and Section 8.4 of the Plan until the entry of a Final Order, as defined in the Plan. Judge Chapman's order is not a Final Order due to the pending appeals.

I also think it reasonable here to maintain the reserves as to these claims. Please advise. Thank you.

Best,
Lisa

Lisa M. Solomon
Law Offices of Lisa M. Solomon
One Grand Central Place

12/30/2014