Hearing Date and Time:  January 15, 2015 at 10:00 a.m. (prevailing Eastern Time)

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 596-9000
Facsimile:    (212) 596-9090
Mark I. Bane

800 Boylston Street
Boston, Massachusetts  02199
Telephone:    (617) 951-7000
Facsimile:    (617) 951-7050
Harvey J. Wolkoff

*Attorneys for Bania Brothers, L.L.C., Baupost Group Securities, L.L.C., and Wooderson Partners, L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF BANIA BROTHERS,
L.L.C., BAUPOST GROUP SECURITIES, L.L.C.,
AND WOODERSON PARTNERS, L.L.C. TO THE MOTION
OF THE PLAN ADMINISTRATOR IN AID OF EXECUTION OF
THE PLAN TO ESTABLISH A BAR DATE FOR DEMANDS FOR
POSTPETITION INTEREST AGAINST LEHMAN BROTHERS OTC
<u>DERIVATIVES INC. AND LEHMAN BROTHERS COMMERCIAL CORPORATION</u>**

Bania Brothers, L.L.C., Baupost Group Securities, L.L.C., and Wooderson Partners, L.L.C. (collectively, the "**Respondents**"), by and through their undersigned counsel, hereby submit this limited objection (this "**Limited Objection**") to the *Motion of the Plan Administrator in Aid of Execution of the Plan to Establish a Bar Date for Demands for Postpetition Interest Against Lehman Brothers OTC Derivatives Inc. and Lehman Brothers Commercial Corporation*

47757652_18

[Docket No. 47487] (the "Motion").[1]  In support of this Limited Objection, the Respondents respectfully state as follows:

## PRELIMINARY STATEMENT

1.   The Respondents agree that a bar date should be set for the identification of demands for postpetition interest (each, a "**Demand**") against Lehman Brothers OTC Derivatives Inc. ("**LOTC**") and Lehman Brothers Commercial Corporation ("**LBCC**").  However, the Respondents submit that all Demands should be evaluated in a manner consistent with the requirements of the applicable contracts, and all claimants making Demands should be required to submit the same information by the Postpetition Interest Bar Date, regardless of whether the claimants are independent from or affiliated with any Debtor.  Further, all third-party claimants should have the opportunity to review the information submitted in support of Demands by Debtors and Debtor-Controlled Affiliates against LOTC and LBCC ("**Controlled Affiliate Demands**"), as well as the standards by which the Plan Administrator evaluates such Controlled Affiliate Demands.  Accordingly, the Respondents submit this Limited Objection to raise two important concerns, both of which counsel to the Respondents raised with the Plan Administrator to no avail.[2]

2.   First, with respect to Allowed Claims arising under an ISDA Master Agreement (an "**Allowed ISDA Claim**"), the type of information that is proposed as a required accompaniment to a Demand is entirely unclear.  The vague instructions in the Proposed Order

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] On December 31, 2014, Respondents' counsel reached out to the Plan Administrator's counsel by telephone to resolve the two concerns raised in this Limited Objection.  The Plan Administrator's counsel declined to address these concerns.  In particular, the Plan Administrator's counsel maintained that Debtor-related entities need not disclose their Demands and refused to provide adequate clarification on what supporting documentation would be required for a Demand submitted in connection with an Allowed Claim arising under an ISDA Master Agreement.  No satisfactory resolution was reached.

2

47757652_18

to submit the "source of any rate" used to calculate a Demand and supporting "documentation" can be read to require a holder of an Allowed ISDA Claim (an "**ISDA Claimant**") to provide the Plan Administrator with information that is extra-contractual, *i.e.*, not contractually required. This instructional language raises the distinct possibility that, at least in the case of Demands premised on Allowed ISDA Claims, the Motion is inappropriately seeking to shift the contractually-established burdens among the parties.

3.   While ISDA Claimants can be called upon to provide the basic information giving rise to their Demands (such as the face amount of their Demands, their certifications of the applicable rate, and their applicable ISDA Master Agreements), ISDA Claimants have no contractual obligation to provide the calculations or analysis underlying the certified cost of funds rate (the "**Cost of Funds Rate**") which is used to determine the "Default Rate" under their ISDA Master Agreements, absent a showing of bad faith by the Plan Administrator. The "Default Rate" is defined in an ISDA Master Agreement as "a rate per annum equal to the cost (*without proof or evidence of any actual cost*) to the relevant payee (*as certified by it*) if it were to fund or of funding the relevant amount plus 1% per annum" (emphasis added). Consistent with its contractual obligations, each ISDA Claimant should be required to file with its Demand only (i) its certification as to its Cost of Funds Rate (or at its option, as to the Cost of Funds Rate of the original counterparty to the ISDA Master Agreement)[3] and the resulting "Default Rate" under the applicable ISDA Master Agreement (such certification, a "**Certification**"), together with the compound interest formula used to calculate the amount of postpetition interest, and

---

[3]   The Motion is not an appropriate forum to address the issue as to who is the "relevant payee" under an ISDA Master Agreement. Because this issue has not been resolved, the Respondents submit that each ISDA Claimant should be entitled to choose whether to submit its certification as to its Cost of Funds Rate or the Cost of Funds Rate of the original counterparty to the ISDA Master Agreement. The Respondents further submit that, once this Court has determined who is the "relevant payee" under an the ISDA Master Agreement, the Court can then determine the issue of what, if any, supplemental certification or other documentation must be filed in support of a Demand.

3

47757652_18

(ii) the relevant agreements, such as the applicable ISDA Master Agreement and settlement agreement (if any). Indeed, the Plan Administrator is hardly in a position to contend otherwise, given that, as discussed in paragraph 9 below, the Plan Administrator itself has asserted on a number of prior occasions that its own Certification of the Cost of Funds Rate for a Debtor is dispositive, without more.

4. Moreover, the Plan Administrator should be prohibited from objecting to or otherwise seeking authority to bar or disallow Demands pursuant to the Postpetition Interest Bar Date solely on the basis of insufficient information, unless this Court has first held that the specified additional information being sought by the Plan Administrator is warranted and the claimant thereafter fails or refuses to provide such information. To the extent that the Plan Administrator asserts that information submitted with a Demand is insufficient, the party who submitted such Demand should be allowed the opportunity either to remedy the deficiency or seek an appropriate order of this Court clarifying whether or not such party is obligated to provide such information. In addition, the Plan Administrator should be prohibited from objecting to or otherwise seeking authority to bar or disallow Demands pursuant to the Postpetition Interest Bar Date solely on the basis that the Cost of Funds Rate has not been properly certified by the "relevant payee," until this Court has first resolved the issue of who is the "relevant payee" under an ISDA Master Agreement in the appropriate forum and the claimant thereafter fails or refuses to provide supplemental documentation (if any) required by this Court.[4]

5. Second, as the simultaneous representative of LOTC and LBCC as well as of affiliate claimants, the Plan Administrator has conflicting interests that risk severely prejudicing

---

[4] For the avoidance of doubt, the Respondents submit that the Plan Administrator should be required to seek the authority of this Court to disallow, bar, or otherwise deny any Demand.

Respondents and other third-party claimants. On one hand, the Plan Administrator is motivated to minimize non-affiliate Demands to increase the assets available to pay Controlled Affiliate Demands or to distribute as surplus to Lehman Brothers Holdings Inc. ("**LBHI**") as equity-holder. On the other hand, the Plan Administrator is motivated to maximize Controlled Affiliate Demands, at the expense of recoveries to third-party claimants. Despite these conflicts of interest, the Plan Administrator seeks to resolve Controlled Affiliate Demands under a secretive process with no transparency. Absent such transparency, the Plan Administrator would have full license to allow generous Controlled Affiliate Demands while objecting to similar Demands by third parties. Accordingly, to allow third-parties to review the standards being applied by the Plan Administrator to all Controlled Affiliate Demands, the Debtors and Debtor-Controlled Entities should also be required to submit the same information as third-party claimants by the Postpetition Interest Bar Date, and all Controlled Affiliate Demands, and any materials submitted in connection therewith, should be made available to all third-party claimants.

6. Accordingly, the Respondents object to the Motion to the extent that the Plan Administrator asks this Court to expand claimants' contractual obligations and improperly shift agreed burdens as between claimants and obligors. In addition, this Court should prohibit the Plan Administrator from objecting to or otherwise seeking authority to deny Demands solely on the basis (i) of insufficient information, without affording claimants the opportunity either to provide such information or resolve before this Court any dispute over the adequacy of submitted information or (ii) that the Cost of Funds Rate has not been properly certified by the "relevant payee," until this issue has been resolved by this Court in the appropriate forum. Finally, the Respondents object to the Motion to the extent that the Plan Administrator seeks approval of a bar date process that fails to ensure that Debtors and Debtor-Controlled Entities submit the same

5

47757652_18

information as third-party claimants with respect to all Controlled Affiliate Demands by the Postpetition Interest Bar Date and make such information available to all third-party claimants.

## BACKGROUND

7. In its Motion, the Plan Administrator requests that the Court enter the Proposed Order establishing a Postpetition Interest Bar Date for all entities other than Debtors and Debtor-Controlled Entities. In addition, the Plan Administrator requests that each claimant be required to:

    a. list the amount of postpetition interest being sought, denominated in lawful currency of the United States;

    b. provide the calculation of such amount and the source for any rates used in the calculation (the "**Calculation Requirement**");

    c. upload any supporting documentation (the "**Documentation Requirement**"); and

    d. provide relevant contact information.

Motion ¶ 10.

8. The Respondents hold Allowed Claims arising from the termination of swap transactions under certain ISDA Master Agreements with LOTC. Due to LBHI's and/or LOTC's bankruptcy, LOTC is the "Defaulting Party" under each ISDA Master Agreement and owes postpetition interest payable to each Respondent at the applicable "Default Rate." The "Default Rate" is defined in each ISDA Master Agreement as "a rate per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1% per annum."[5]

---

[5] On or about August 15, 2014, each Respondent submitted the requisite Certification(s) to LOTC by hand delivery to its offices. In each Certification, each Respondent certified, in its capacity as the "relevant payee" under the applicable ISDA Master Agreement, as to its Cost of Funds within the meaning of the "Default Rate" and the resulting "Default Rate. On August 15, 2014, the Respondents initiated an adversary proceeding against LOTC and the Plan Administrator, captioned *Bania Brothers, L.L.C., Baupost Group Securities, L.L.C., and Wooderson Partners, L.L.C. v. Lehman Brothers OTC Derivatives Inc. and Lehman Brothers Holdings Inc., solely in its*

47757652_18

9.  When standing in the shoes of the relevant payee (*i.e.*, the position of the Respondents) in related adversary proceedings to recover swap termination payments under ISDA Master Agreements, the Plan Administrator has represented to this Court under similar circumstances that the "certification" provided by the "relevant payee" is dispositive and binding as to the rate of default interest. Specifically, the Plan Administrator, on behalf of Lehman Brothers Special Financing Inc. ("LBSF"), has asserted that LBSF's Certification as to its Cost of Funds Rate, certified at greater than or equal to LIBOR plus 12.5% (compounded daily), was sufficient to establish its demand for default interest, without further information. See (Compl. ¶¶ 49-50, Lehman Bros. Holdings Inc. v. Granite Fin. Ltd., Adv. No. 14-02236 (Bankr. S.D.N.Y. Sept. 15, 2014) (alleging that, because LBSF certified that its cost of funds was greater than or equal to LIBOR plus 12.5% (compounded daily), the ISDA Master Agreement "precludes any challenge to the Default Rate");[6] Amended Compl. ¶ 116-17, Lehman Bros. Holdings Inc. v. LCOR Alexandria L.L.C., Adv. No. 13-01689 (Bankr. S.D.N.Y. Dec. 5, 2014) (alleging that the ISDA Master Agreement "precludes any challenge to the Default Rate because LBSF has certified its cost of funds").[7]

10. Debtors and Debtor-Controlled Entities hold significant Allowed Claims against LOTC and LBCC. The exhibits to the Disclosure Statement for the Plan provide the following limited information on Allowed Claims held by affiliates:

---

*capacity as Plan Administrator,* Adv. No. 14-02095 (SCC). In the adversary proceeding, the Respondents are seeking a declaratory judgment that the Respondents are the "relevant payee" under the terms of their ISDA Master Agreements with LOTC and therefore entitled to certify the Cost of Funds Rate used in determining the "Default Rate." Pursuant to this Objection, the Respondents are not seeking any relief that would pre-judge this issue.

[6]  A copy of the complaint filed by the Plan Administrator in Lehman Bros. Holdings Inc. v. Granite Fin. Ltd. is attached as Exhibit A hereto.

[7]  A copy of the amended complaint filed by the Plan Administrator in Lehman Bros. Holdings Inc. v. LCOR Alexandria L.L.C. is attached as Exhibit B hereto.

7

47757652_18

| Affiliate Claimant | Estimated Allowed Claim Against LOTC | Estimated Allowed Claim Against LBCC |
|---|---:|---:|
| Lehman Brothers Holdings Inc. | $155 million | $0 |
| Lehman Brothers Special Financing Inc. | $8 million | $134 million |
| Lehman Brothers Commercial Paper Inc. | $0 | $434 million |
| Lehman Brothers Commodity Services Inc. | $0 | $3 million |
| Debtor-Controlled Entities | $0 | $76 million |
| Non-Controlled Affiliates | $414 million | $473 million |
| **Total** | $577 million | $1,120 million |

See *Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code,* Ex. 9 and Annex 8B-1 [Docket No. 19629]. In addition, the estimated Allowed Claim of LBHI in the amount of $155 million in the table above does not include additional, substantial Allowed Claims held by LBHI against LOTC and LBCC, including claims in the asserted amount of $386 million against LOTC and $150 million against LBCC that were assigned to LBHI by Lehman Brothers Finance AG ("**LBF**") pursuant to the Settlement Agreement, dated as of March 27, 2013, among LBF, the Debtors, and certain other affiliates.[8] See *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of Settlement Agreement with Lehman Brothers Finance AG (In Liquidation)*, Ex. A [Docket No. 36300].

## OBJECTION

**A.     The Proposed Order Should Not Expand the Contractual Obligations of ISDA Claimants Under ISDA Master Agreements or Shift Burdens Under Those Agreements.**

---

[8]     Prior to the assignment of the claims from LBF to LBHI, such claims were likely included in the category of claims for "Non-Controlled Affiliates" in the table above. The claims agent website lists the claims assigned by LBF to LBHI (Claim Nos. 67796 and 67797) as allowed in the amount of $316 million against LOTC and $130 million against LBCC. See http://dm.epiq11.com/LBH/Claim.

8

47757652_18

11. The Calculation Requirements and Documentation Requirements are vague and unclear with respect to Demands by ISDA Claimants. The Respondents object to the Calculation Requirements and Documentation Requirements to the extent that the Plan Administrator purports to expand the contractual obligations of ISDA Claimants to provide extra-contractual information in connection with Demands for postpetition interest under ISDA Master Agreements. Under the applicable ISDA Master Agreements, ISDA Claimants are only obligated to provide a Certification to establish the Cost of Funds Rate used in determining the "Default Rate," unless the Plan Administrator can make a showing of bad faith. This Certification, together with the compound interest formula used to calculate the amount of postpetition interest and the relevant agreements, are sufficient to establish an ISDA Claimant's entitlement to postpetition interest. The applicable contracts, case law, and the Plan Administrator's own prior assertions all make clear that ISDA Claimants are not obligated to provide calculations or supporting documentation underlying the method for arriving at the Cost of Funds Rate set forth in the Certification to satisfy their contractual burdens.

12. As discussed above, to establish the rate of postpetition interest to which it is entitled, the relevant payee under an ISDA Master Agreement is required only to provide a Certification, setting forth its Cost of Funds Rate and the resulting "Default Interest" rate. In Finance One Public Company Limited v. Lehman Brothers Special Financing, Inc., the United States District Court for the Southern District of New York held that the "Default Rate" definition "explicitly precludes an issue of fact contest with regard to the proper default rate with the phrases 'without proof or evidence of any actual cost' and 'as certified by it.'" No. 00 Civ. 6739 (CBM), 2003 WL 21638214, at *2 (S.D.N.Y. July 11, 2003), rev'd on other grounds, 414

F.3d 325 (2d Cir. 2005).[9] The district court further held that "[t]here is no escape clause from these provisions contained in the ISDA." Id. Likewise, when standing in the shoes of the relevant payee (*i.e.*, the position of the Respondents) in related adversary proceedings to recover swap termination payments under ISDA Master Agreements, the Plan Administrator has represented to this Court that the "certification" provided by the "relevant payee" is dispositive and binding as to the rate of default interest.

13. To the extent that the Plan Administrator seeks detail underlying the Cost of Funds Rate set forth in the Certification, the Plan Administrator is attempting to create an impermissible "escape clause" under the ISDA Master Agreement where none exists, and is similarly seeking to impose contractual obligations on ISDA Claimants where there are none. Accordingly, the Certification, together with the compound interest formula used to calculate the amount of postpetition interest due and copies of the relevant agreements, is sufficient to satisfy the Calculation Requirements and Documentation Requirements for Postpetition Interest Information, absent a showing of bad faith. The Plan Administrator should not be permitted to expand the contractual obligations of ISDA Claimants under the guise of a Postpetition Interest Bar Date. This is especially so since, as discussed, the Plan Administrator has itself taken the position, when it is the one seeking postpetition interest, that a Debtor's Certification of its Cost of Funds Rate is dispositive, without more.

14. Finally, the Plan Administrator should be prohibited from objecting to or otherwise seeking authority to bar or disallow Demands pursuant to the Postpetition Interest Bar Date solely on the basis of insufficient information, unless this Court has first held that the specified additional information being sought by the Plan Administrator is warranted and the

---

[9] The opinion of the United States District Court for the Southern District of New York in Finance One is attached as Exhibit C hereto.

47757652_18

claimant thereafter fails or refuses to provide such information. To the extent that the Plan Administrator asserts that a claimant has submitted insufficient Postpetition Interest Information, the Plan Administrator should be required, before seeking to bar or disallow the Demand on that basis, (i) to request specified additional information from the claimant, and (ii) if the claimant disputes its obligation to provide such additional information, to seek an order of this Court resolving the dispute. Given the unclear language in the Calculation Requirements and Documentation Requirements, claimants should be afforded the opportunity either to remedy any asserted deficiency or seek clarification from this Court as to their obligations under the applicable contracts to submit the requested information. In addition, the Plan Administrator should be prohibited from objecting to or otherwise seeking authority to bar or disallow Demands pursuant to the Postpetition Interest Bar Date solely on the basis that the Cost of Funds Rate has not been properly certified by the "relevant payee," until this Court has first resolved the issue of who is the "relevant payee" under an ISDA Master Agreement in the appropriate forum and the claimant thereafter fails or refuses to provide supplemental documentation (if any) required by this Court. To allow otherwise would grant an unfair advantage to the Plan Administrator based on its own ambiguous instructions and further, would permit Plan Administrator to pre-determine a key unresolved issue.

B. **Debtors and Debtor-Controlled Entities Should be Required to Submit the Same Information as Third-Party Claimants by the Postpetition Interest Bar Date and Such Information Should be Made Available to All Third-Party Claimants.**

15. Transparency is paramount, particularly in this situation where the Plan Administrator simultaneously represents both the claimants and the obligors. Accordingly, the Respondents request that this Court require the Debtors and Debtor-Controlled Entities to submit the same information as third-party claimants for all Controlled Affiliate Demands by the Postpetition Interest Bar Date. The Debtors and Debtor-Controlled Entities should also ensure

11

47757652_18

that such information is available to all third-party claimants[10] so that such claimants can review the standards by which the Plan Administrator is addressing the rights of the Debtors and Debtor-Controlled Entities, and assess whether Debtors and Debtor-Controlled Entities are being treated in the same manner as third parties.[11]

16. As discussed above, the Debtors and Debtor-Controlled Entities hold significant Allowed Claims against LOTC and LBCC: at least $163 million in Allowed Claims against LOTC and $647 million in Allowed Claims against LBCC, plus additional Allowed Claims assigned to LBHI by other affiliates, including claims assigned by LBF in the asserted amount of $386 million against LOTC and $150 million against LBCC. Other non-controlled affiliates also hold significant Allowed Claims against LOTC and LBCC. The Plan Administrator, as the representative of each Debtor, has conflicting interests and is motivated to minimize non-affiliate Demands against LOTC and LBCC while maximizing recoveries on Controlled Affiliate Demands. Despite this conflict of interest and the limited information disclosed by the Debtors to date, the Plan Administrator seeks to resolve Demands among affiliates under a secretive process without disclosure to third-party claimants or any opportunity for oversight by this Court. Without transparency, the Plan Administrator would be free to allow generous Controlled Affiliate Demands while simultaneously asserting a more restrictive position with respect to similar Demands by third parties. This inconsistency would improperly prejudice third-party claimants, who are entitled to know whether the standards applied to their Demands differ from those applied to Controlled Affiliate Demands.

---

[10] To the extent that the Plan Administrator or other claimants have confidentiality concerns, the applicable parties could enter into appropriate confidentiality arrangements to ensure that such information is provided only to the claimants asserting Demands for postpetition interest and may be used only for purposes of the litigation over such Demands.

[11] The Motion applies equally to non-Debtor Affiliates and Non-Controlled Affiliates as it does to third-party claimants. Therefore, to the extent that third-party claimants must provide any information regarding postpetition interest Demands, non-Debtor Affiliates and Non-Controlled Affiliates should also be required to do so.

47757652_18

17. The Plan Administrator can provide no reason to require inconsistent information from Debtors and Debtor-Controlled Entities and from third-party claimants, or to conceal information regarding Controlled Affiliates Demands: the Plan has become effective, the Debtors have exited chapter 11, and the Plan Administrator has completed all intercompany reconciliations required to make distributions on account of Allowed Claims against LOTC and LBCC. The only remaining task is to evaluate all Demands for postpetition interest against LOTC and LBCC and distribute the available cash thereon. The Plan Administrator can hardly assert that it is any more burdensome for the Debtors and Debtor-Controlled Entities to submit the same information as that required for other claimants by the Postpetition Interest Bar Date, or that it would be unduly burdensome to make the information that the Plan Administrator submits on account of Controlled Affiliate Demands available to all third-party claimants.

## CONCLUSION

18. WHEREFORE, the Respondents respectfully request that the Court order that (i) in the case of an Allowed ISDA Claim, the Calculation and Documentation Requirements will be satisfied by providing a Certification of the ISDA Claimant as to such claimant's Cost of Funds Rate (or at its option, as to Cost of Funds Rate of the original counterparty to the applicable ISDA Master Agreement) and the resulting "Default Rate" under the applicable ISDA Master Agreement, together with the compound interest formula used to calculate the amount of postpetition interest and copies of the relevant agreements; (ii) the Plan Administrator is prohibited from objecting to or otherwise seeking authority to bar or disallow Demands pursuant to the Postpetition Interest Bar Date solely on the basis of insufficient information, without first (a) requesting specified additional information from the claimant, and (b) if the claimant disputes its obligation to provide such additional information, obtaining an order of this Court resolving

47757652_18

the dispute; (iii) the Plan Administrator is prohibited from objecting to or otherwise seeking authority to bar or disallow Demands pursuant to the Postpetition Interest Bar Date solely on the basis that the Cost of Funds Rate has not been properly certified by the "relevant payee," until this Court has first resolved the issue of who is the "relevant payee" under an ISDA Master Agreement in the appropriate forum; (iv) the Debtors and Debtor-Controlled Entities be required to submit the same information as third-party claimants with respect to all Controlled Affiliate Demands by the Postpetition Interest Bar Date and provide such information in a manner accessible to all third-party claimants; and (v) grant such other and further relief as the Court may deem proper.

Dated: January 7, 2015　　　　　　　　*/s/ Mark I. Bane*
　　　　　New York, New York　　　　　ROPES & GRAY LLP
　　　　　　　　　　　　　　　　　　　1211 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　New York, New York  10036
　　　　　　　　　　　　　　　　　　　Telephone:　(212) 596-9000
　　　　　　　　　　　　　　　　　　　Facsimile:　(212) 596-9090
　　　　　　　　　　　　　　　　　　　Mark I. Bane

　　　　　　　　　　　　　　　　　　　800 Boylston Street
　　　　　　　　　　　　　　　　　　　Boston, Massachusetts  02199
　　　　　　　　　　　　　　　　　　　Telephone:　(617) 951-7000
　　　　　　　　　　　　　　　　　　　Facsimile:　(617) 951-7050
　　　　　　　　　　　　　　　　　　　Harvey J. Wolkoff

　　　　　　　　　　　　　　　　　　　*Attorneys for Bania Brothers, L.L.C., Baupost Group Securities, L.L.C., and Wooderson Partners, L.L.C.*