**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999
Thomas J. Moloney
Sean A. O'Neal
Humayun Khalid

*Attorneys for SPCP Group, L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Lehman Brothers Holdings Inc., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF SPCP GROUP, L.L.C. TO MOTION OF THE PLAN ADMINISTRATOR IN AID OF EXECUTION OF THE PLAN TO ESTABLISH A BAR DATE FOR DEMANDS FOR POSTPETITION INTEREST AGAINST LEHMAN BROTHERS OTC DERIVATIVES INC. AND <u>LEHMAN BROTHERS COMMERCIAL CORPORATION</u>**

SPCP Group, L.L.C. (as agent for Silver Point Capital Fund, L.P. and Silver Point Capital Offshore Fund, Ltd., "<u>Silver Point</u>"), by and through its undersigned counsel, hereby submit this limited objection and reservation of rights (the "<u>Limited Objection</u>") to the Motion of the Plan Administrator in Aid of Execution of the Plan to Establish a Bar Date for Demands for Postpetition Interest Against Lehman Brothers OTC Derivatives Inc. and Lehman Brothers

Commercial Corporation (D.I. 47487) (the "Bar Date Motion").  In support of this Limited Objection, Silver Point respectfully states as follows:[1]

1.    Silver Point recognizes the need to establish a bar date as the first step for resolving post-petition interest claims against LOTC and other solvent Debtor estates.  Indeed, the Debtors' decision to file this Bar Date Motion is, in part, a response to Silver Point's efforts, including its filing of a Motion Under Bankruptcy Code Section 1142(b) to Compel LOTC to Pay Post-Petition Interest as Required by Its Confirmed Plan of Reorganization (D.I. 47474) (the "Silver Point PPI Payment Motion").  Silver Point objects, however, to the Bar Date Motion to the extent the Debtors are seeking to condition allowance of post-petition interest claims on meeting a burden of evidence or documentation that is inconsistent with claimants' express contractual rights to certify "without proof or evidence" the applicable cost of funding under their swap agreements.  The Debtors should not be permitted to use a bar date process to gain tactical litigation advantages that modify the parties' rights under their swap agreements.

2.    In addition, Silver Point objects to the implication that the Debtors have satisfied their obligation to promptly pay post-petition interest under the LOTC Plan simply by filing the Bar Date Motion.  Importantly, this Bar Date Motion is merely a first step and falls far short of establishing a procedure or timeline for resolving all issues required to permit the full and final payment of post-petition interest to LOTC creditors.  The Debtors should be required to interpose any objections to asserted post-petition interest claims expeditiously after the Postpetition Interest Bar Date and by a specified deadline.  In addition, Debtors and Debtor-Controlled Entities that wish to assert post-petition interest claims against LOTC should be subject to the same procedures and deadlines as third-party creditors.  Given LOTC's

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bar Date Motion and the Silver Point PPI Payment Motion.

2

unreasonable delay in making post-petition interest distributions (or even attempting to set up a process for resolving such claims), Silver Point respectfully requests that the Court require the Plan Administrator and LOTC to develop and propose to the Court (in consultation with Silver Point and other interested parties) a reasonable procedure and firm timetable for reconciling post-petition interest claims ahead of the next distribution date.

## BACKGROUND

3. In April of 2014, Silver Point spoke with a representative of LOTC regarding post-petition interest distributions. During that phone conversation, LOTC stated that it was working on a plan for making post-petition interest distributions, but that a plan had not yet been developed.

4. On October 7, 2014, Silver Point submitted its interest certification (the "Interest Certification") for post-petition interest owed by LOTC pursuant to its Swap Agreement.

5. After extensive discussions with the Debtors, on December 19, 2014, Silver Point filed the Silver Point PPI Payment Motion, requesting that the Court compel LOTC to pay Silver Point the post-petition interest owed under the Swap Agreement pursuant the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (D.I. 23023) (the "Plan") at the next distribution date and, ahead of the next distribution date, to provide an accounting and reasonable timetable for resolving all issues required to permit the full and final payment of such interest.

6. On December 22, 2014, the Plan Administrator filed the Bar Date Motion, seeking to require all claimants to complete a questionnaire and upload any supporting documentation by the Postpetition Interest Bar Date. Bar Date Motion ¶ 10. Claimants who

3

failed to comply with these procedures would be barred from asserting a right for post-petition interest against LOTC or LBCC.  Bar Date Motion ¶ 9.

**LIMITED OBJECTION**

7.      Silver Point objects to the Bar Date Motion to the extent it purports to provide the Plan Administrator with any additional right to disallow Silver Point's claim due to any purported insufficiency in the documentation regarding the calculation of post-petition interest. The Swap Agreement expressly provides that documentation regarding proof of the cost of funding is unnecessary.  See Silver Point PPI Payment Motion ¶ 26 (stating that the default rate of interest under the ISDA Master is "equal to the cost (without proof or evidence of any actual cost) to the relevant payee" plus 1% per annum).  The Interest Certification that Silver Point has previously submitted to the Debtors is sufficient on its own, and, pursuant to the Swap Agreement, no other evidence of the interest owed is needed.  ISDA Master § 14 (providing that default interest will be calculated at a rate equal to the cost "without proof or evidence of any actual cost" to the relevant payee, "as certified by it", plus 1% per annum); see also Fin. One Pub. Co. v. Lehman Bros. Special Fin. Inc., No. 00 Civ. 6739(CBM), 2003 WL 21638214, at *2 (S.D.N.Y. July 11, 2003) (noting the latitude granted to the relevant payee under an ISDA Master Agreement to certify its cost of funding without proof or evidence of any actual cost and holding that plaintiff need show no other proof of cost).

8.      Additionally, Silver Point seeks clarification that the Bar Date Motion does not limit the accrual of post-petition interest beyond the date of submission of the post-petition interest claim.  The Swap Agreement expressly states that interest is to accrue and compound daily until paid in full.  ISDA Master § 6(d) (stating that interest will be calculated "from (and including) the relevant Early Termination Date to (but excluding) the date such amount is paid").

4

Any order granting the Bar Date Motion should make it clear that the creditors' contractual and legal rights with respect to documentation, certification, and calculation of interest are fully preserved and not adversely affected by entry of the order.

9. LOTC should also be required to provide a reasonable timetable to LOTC creditors for resolving all issues required to permit the full and final distributions of post-petition interest. It has been nearly one-and-a-half years since all allowed LOTC general unsecured claims have been paid in full, and yet no post-petition interest payments have been made to LOTC creditors. The Bar Date Motion commits third-party claimants to an expedited timeframe for submitting post-petition interest claims, but exempts the Debtors and Debtor-Controlled Entities from such requirements and imposes no obligation on the Debtors to publicly disclose the aggregate amount of claims filed or to review or respond to any claims within a specified period of time. The Debtors and Debtor-Controlled Entities should be required to file any post-petition interest claims by the bar date and make copies of such claims available to any party in interest (subject to an appropriate confidentiality agreement). In addition, the Debtors should publicly disclose the aggregate amount of all post-petition interest claims filed against each Debtor, so that parties in interest can evaluate all post-petition interest claims against LOTC. The Bar Date Motion also fails to disclose any procedure or timetable for resolving (whether by settlement or adjudication) any objections to post-petition interest claims. Silver Point therefore requests that the Plan Administrator and LOTC be required to propose to the Court a clear procedure and timeline for the allowance of all post-petition interest claims such that LOTC creditors can begin to receive post-petition interest distributions by the next distribution date.

## RESERVATION OF RIGHTS

10. Silver Point expressly reserves all of its rights, including to amend or supplement this Limited Objection, to introduce evidence supporting this Limited Objection, to be heard at a hearing with respect to this Limited Objection, and to file additional and/or supplemental objections.

Dated: January 7, 2015
   New York, New York

                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

                    By:    /s/ Sean A. O'Neal
                           Thomas J. Moloney
                           Sean A. O'Neal
                           Humayun Khalid
                           One Liberty Plaza
                           New York, New York 10006
                           Telephone: (212) 225-2000
                           Fax: (212) 225-3999

                           *Attorneys for SPCP Group, L.L.C.*