**HEARING DATE AND TIME: March 11, 2015 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE: February 9, 2015 at 4:00 p.m. (Eastern Time)**

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.,<br><br>　　　　　Debtors. | Chapter 11<br>Case No. 08-13555 (SCC) |
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>　　　　　Debtor. | Case No. 08-01420 (SCC) SIPA |

**NOTICE OF HEARING ON LEHMAN BROTHERS HOLDINGS INC.'S OBJECTION TO PORTIONS OF PROOFS OF CLAIM NO. 66462 AGAINST LEHMAN BROTHERS HOLDINGS INC. AND NO. 4939 AGAINST LEHMAN BROTHERS INC. OF JPMORGAN CHASE BANK, N.A. REGARDING SECURITIES LENDING**

**PLEASE TAKE NOTICE** that a hearing on the annexed objection, dated January 7, 2015, 2014 (the "Objection") filed by Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 case, as debtors and debtors in possession (collectively, the "Debtors"), to portions of Proofs of Claim No. 66462 against Lehman Brothers Holdings Inc. and No. 4939 against Lehman Brothers Inc. shall be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Custom House, Courtroom 621, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 11, 2015 at 10:00 a.m. (Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the responding party, the basis for the response and the specific grounds thereof, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the Chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Lori Fife, Esq.); (iii) conflicts counsel for the Debtors, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison

1

Avenue, 22nd Floor, New York, New York 10010 (Attn: Andrew J. Rossman, Esq. and Tyler G. Whitmer, Esq.); (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Elisabeth Gasparini, Esq. and Andrea Schwartz, Esq.); and (v) attorneys for the Official Committee of Unsecured Creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq. and Evan Fleck, Esq.) so as to be filed and received by no later than **February 9, 2015 at 4:00 p.m.** (the "Response Deadline").

      **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection or any claim set forth thereon, the Debtors may, on or after the Response Deadline, submit to the Bankruptcy Court an order, which order may be entered with no further notice or opportunity to be heard offered to any party.

[*Remainder of Page Intentionally Left Blank*]

2

**PLEASE TAKE FURTHER NOTICE** that responding parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 7, 2015
New York, New York

         **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

         By: /s/ Andrew J. Rossman
         Susheel Kirpalani
         Andrew J. Rossman
         Tyler G. Whitmer
         51 Madison Avenue, 22nd Floor
         New York, New York 10010-1601
         (212) 849-7000
         *Counsel for Lehman Brothers Holdings Inc.*

**HEARING DATE AND TIME: March 11, 2015 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE: February 9, 2015 at 4:00 p.m. (Eastern Time)**

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.,<br><br>          Debtors. | Chapter 11<br>Case No. 08-13555 (SCC) |
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>          Debtor. | Case No. 08-01420 (SCC) SIPA |

**LEHMAN BROTHERS HOLDINGS INC.'S OBJECTION TO PORTIONS OF PROOFS OF CLAIM NO. 66462 AGAINST LEHMAN BROTHERS HOLDINGS INC. AND NO. 4939 AGAINST LEHMAN BROTHERS INC. OF JPMORGAN CHASE BANK, N.A. <u>REGARDING SECURITIES LENDING</u>**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and, collectively with its affiliates, "Lehman") and its affiliated debtors, in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent as follows:

### Preliminary Statement

1. This objection seeks an order reducing claims by JPMorgan Chase Bank, N.A. ("JPMorgan") against LBHI and Lehman Brothers Inc. ("LBI") that are inflated as a result of (i) JPMorgan's failure to appropriately dispose of LBI collateral it held related to LBI's securities lending business and (ii) unexplained securities lending-related fees JPMorgan charged to LBI totaling over $24 million. JPMorgan disposed of LBI cash collateral through self-interested purchases of securities, resulting in proceeds substantially below what should have been received. As a result, JPMorgan pocketed cash that should have been available to reduce JPMorgan's claims against LBI and LBHI (as LBI's guarantor). Accordingly, LBHI respectfully requests that the Court reduce JPMorgan's claims.

### Relief Requested

2. LBHI files this Objection to Portions of Proofs of Claim No. 66462 Against Lehman Brothers Holdings Inc. and No. 4939 Against Lehman Brothers Inc. (the "Deficiency Claims") of JPMorgan Chase Bank, N.A. Regarding Securities Lending (the "Objection"), pursuant to section 502(b) of the Bankruptcy Code, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objections Procedure (the "Procedures Order") [Docket No. 6664].

2

3.     Debtors have examined the portions of the Deficiency Claims related to LBI's securities lending business and have determined that they should be reduced for the reasons described below. Debtors therefore request entry of an order reducing the Deficiency Claims as set forth below.

4.     Furthermore, certain securities lending-related portions of the Deficiency Claims were filed with insufficient documentation to permit LBHI to evaluate the asserted basis and merits of the items. These portions of the Deficiency Claims do not constitute valid *prima facie* claims, and LBHI requests that, in the absence of JPMorgan providing sufficient supporting documentation and information, they be reduced and/or disallowed. LBHI reserves the right to object to each portion substantively following analysis of any supporting documentation received.

## Jurisdiction

5.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

## Procedural Background

6.     Beginning on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries filed chapter 11 cases in this Court, The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On September 19, 2008, the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New York, entered the Order Commencing

3

Liquidation pursuant to the provisions of the Securities Investor Protection Corporation Act ("SIPA") with respect to LBHI's subsidiary, LBI.

8. On July 2, 2009, this Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271]. A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com.

9. Claimants received notice of the Bar Date Order by mail. (*See* Notice of Deadlines for Filing Proofs of Claim (the "Bar Date Notice")). The Bar Date Notice also was posted on the docket, and the Bar Date Order was published in The New York Times (International Edition), The Wall Street Journal (International Edition), and The Financial Times. A list of the Debtors in these chapter 11 cases and their respective case numbers was included as part of the Bar Date Notice as well as on the instructions to the proof of claim form. (Bar Date Notice at Schedule A.) In accordance with the Bar Date Order's requirement that claims be filed against the proper Debtor, the Bar Date notice stated, in bold-face type and in capital letters, that "YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS." (*Id.* at 3).

10. On January 14, 2010, this Court entered the Procedures Order, which authorizes the Debtors to file omnibus objections to no more than 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order. One such "Additional Permitted Ground" in the Procedures Order is that "the Claims do not include sufficient documentation to ascertain the validity of the Claim." (Procedures Order at 2.)

4

11. On December 6, 2011, the Court entered an order confirming the Debtors chapter 11 plan. The plan became effective on March 6, 2012.

**Fact Background**

12. Pursuant to a Master Securities Lending Agreement, dated March 9, 1983 (the "MSLA"),[1] JPMorgan acted as trustee or managing agent to certain trusts and accounts that lent securities (the "Loaned Securities") to LBI secured by cash, certain approved securities, and/or letters of credit (the "Securities Lending Cash Collateral").[2] The MSLA required that each loan of securities be at least 100% collateralized.[3]

13. On September 18, 2008, LBI failed to return Loaned Securities in its possession. JPMorgan gave notice to LBI that an Event of Default had occurred under the MSLA, and that JPMorgan "reserve[d] and intend[ed] to avail itself of all rights and remedies with respect to all obligations of [LBI] outstanding under the [MSLA], including without limitation, the rights and remedies provided for in Section 10 of the [MSLA] and all other rights of a secured party under law."[4]

14. JPMorgan then elected a remedy under the MSLA whereby it used the Securities Lending Cash Collateral—comprised primarily of cash collateral—to "purchase securities equivalent to the Loaned Securities" that LBI failed to return.[5] JPMorgan accomplished this goal

---

[1] The MSLA was entered into by and between Shearson/American Express Inc., predecessor to LBI and The Chase Manhattan Bank, predecessor to JPMorgan. A copy of the MSLA is attached hereto as Exhibit A.

[2] *See id.* at §§ 2(a), 3(b).

[3] *Id.* at §3(b).

[4] *See* Notice of Event of Default, September 18, 2008, attached hereto as Exhibit B.

[5] *See* Ex. A, MSLA at § 10(c)(i).

5

by disposing of $3,310,511,250.49 in LBI cash collateral, purportedly to purchase securities or make cash payments to replace the Loaned Securities.

## Objection

### I. JPMORGAN IMPROPERLY DISPOSED OF LBI COLLATERAL

#### A. JPMorgan Overpaid Its Own Affiliate for Replacement Securities Using the Securities Lending Cash Collateral

15. As noted above, following LBI's failure to return the Loaned Securities it borrowed, JPMorgan, as agent/trustee, used LBI's Securities Lending Cash Collateral (*i.e.*, cash posted by LBI) to purchase securities to replace the Loaned Securities, and applied the remaining Securities Lending Cash Collateral to the Deficiency Claims. However, because of JPMorgan's flawed disposition of the Securities Lending Cash Collateral, including purchasing replacement securities from itself and/or its affiliates at significantly above-market prices, there was far less cash collateral available to satisfy the Deficiency Claims than there should have been. Thus, a portion of the purported deficiency is due to JPMorgan's unreasonable disposition of the Securities Lending Cash Collateral.

16. For example, one of the Loaned Securities that JPMorgan replaced through subsequent purchases with LBI cash was a United States Treasury Note (CUSIP 912828EE6) (the "UST Security"). The UST Security itself made up over 22% of the portfolio of securities purchased by JPMorgan to replace the Loaned Securities under the MSLA. On September 18, 2008, JPMorgan conducted several purchases of the UST Security, paying a price of approximately $110.53 per unit.[6] According to Bloomberg, the UST Security traded that day

---

[6] *See* JPM_LEH_CLAIMS00000002, excerpts of which are attached hereto as Exhibit C.

6

between $108 and $109.10, meaning the price JPMorgan paid using LBI's Securities Lending Cash Collateral was significantly higher than the high price for the day.[7]

17.     This price differential alone is egregious given the market for United States Treasury securities and the ease with which JPMorgan could have acquired the security. However, two additional facts compound the egregiousness of JPMorgan's purchase. First, all of JPMorgan's purchases of the UST Security were from its affiliate JPMorgan Securities Inc. ("JPMSI").[8]  Moreover, JPMorgan's own documents show that less than an hour before its purchases of the UST Security from its own affiliate using LBI's cash collateral, JPMorgan also purchased the UST Security from a third party (in an unrelated transaction) for a price per unit of approximately $108.61,[9] within the spread of prices for the UST Security on that day. Similarly, only fifteen minutes after purchasing the UST Security from its affiliate using LBI's cash collateral, JPMorgan purchased that same security for a price per unit of $108.81.[10]  There is no plausible explanation for JPMorgan paying its own affiliate an inflated price for securities that it purchased for significantly lower prices multiple times within minutes of the affiliate purchases.[11]

---

[7]  *See* Bloomberg pricing information, attached hereto as Exhibit D.

[8]  *See* JPM_LEH_Claims00003122, attached hereto as Exhibit E.  In a letter accompanying Ex. E, JPMorgan's counsel represented that Exhibit E reflected purchases by JPMorgan from JPMSI.  A copy of the letter is attached hereto as Exhibit F.

[9]  *See* Ex. C.

[10]  *See id.*

[11]  LBHI's Objection to Portions of Proofs of Claim No. 66462 Against Lehman Brothers Holdings Inc. and No. 4939 against Lehman Brothers Inc. of JPMorgan Chase Bank N.A. Regarding Triparty Repo-Related Losses [Dkt. # 19604], addresses the liquidation of triparty repo collateral—known as "Project Tassimo"—where JPMorgan credited LBI with below market prices in closing out that portfolio.  There, just days later, JPMorgan sold to itself an LBI position in the same UST Security at a price of $106.16, about 4% less than it had just charged LBI for the same security.

7

### B.    JPMorgan's Deficiency Claims Should Be Reduced Pursuant to N.Y. U.C.C. § 9-615(f)

18.    New York's Uniform Commercial Code ("<u>U.C.C.</u>") limits a secured creditor's ability to dispose of collateral through self-interested transactions and then claim a deficiency.[12] Section 9-615(f) of the U.C.C. provides a specific method for calculating a deficiency where the creditor disposes of the collateral to itself or a "person related to" itself. If "the amount of proceeds of [a self-interested] disposition is significantly below the range of proceeds that a complying disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor would have brought," then "the surplus or deficiency . . . is calculated based on the amount of proceeds that would have been realized in a disposition complying with this part to a transferee other than the secured party, a person related to the secured party, or a secondary obligor." NY U.C.C. § 9-615(f).

19.    In other words, where proceeds from a self-interested disposition are less than what would have been received through a commercially reasonable disposition to an unrelated third party, the deficiency is calculated based on the greater proceeds that would have been received in the hypothetical third-party sale. Importantly, this analysis focuses entirely on the proceeds received and bypasses the rest of the U.C.C. As one official comment to the U.C.C. puts it, the Section 9-615(f) calculation applies "even if the disposition is commercially reasonable"—including pursuant to Section 9-627(b). NY U.C.C. § 9-610 cmt. 10. The Section

---

[12] Under the U.C.C., LBHI, as guarantor of LBI's obligations to JPMorgan, has independent standing to object to JPMorgan's disposition of LBI collateral. Section 9-625 of the U.C.C., titled "Remedies for Secured Party's Failure to Comply with Article," grants rights to "debtors" and "obligors" to bring actions against secured creditors. *See id.* § 9-625(c)(1) ("[A] person that, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral may recover damages under subsection (b) for its loss . . . ."). As both "debtors" and "obligors" for purposes of this section, guarantors have the right to bring actions against secured creditors.

8

9-615(f) analysis focuses entirely on two points: (1) whether the disposition was self-interested and (2) whether the amount of the proceeds from the disposition is "significantly below" what it should have been.

20.     When JPMorgan disposed of the Securities Lending Cash Collateral by purchasing the UST Security and others at inflated prices, it received proceeds of that disposition substantially below what it would have received in a commercially reasonable disposition to a third party. As a result, JPMorgan's Deficiency Claims should be reduced by an amount to be determined by the Court.

        **C.**        **In The Alternative, JPMorgan's Deficiency Claims Should Be Reduced Because Its Disposition of the Securities Lending Cash Collateral Was Commercially Unreasonable**

21.     According to the U.C.C., "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." N.Y. U.C.C. Law § 9-610(a) (McKinney). The U.C.C. requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." *Id.* § 9-610(b). "If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part." *Id.* § 9-626(a)(2); *see also id.* § 9-626(a)(1) ("A secured party need not prove compliance with the provisions of this part relating to collection, enforcement, disposition, or acceptance unless the debtor or a secondary obligor places the secured party's compliance at issue."). As this Objection places at issue JPMorgan's compliance with section 9-610 of the U.C.C., JPMorgan has the burden of establishing that its disposition complied with the commercial reasonableness requirement contained in that section. *Ford Motor Credit Co., Inc. v.*

*Racwell Const., Inc.*, 24 A.D. 3d 500, 501 (2d Dep't 2005) (citing NY U.C.C. § 9-626(a)(2) and holding that creditor had not met its burden of proving propriety of a deficiency judgment).

22. Situations presenting the opportunity for self-dealing are more carefully analyzed by courts considering whether collateral dispositions are commercially reasonable. *See Central Budget Corp. v. Garrett*, 48 A.D.2d 825, 825-26 (2d Dep't 1975) (holding that creditor's sale to a successor of the original lender was a factor in denying recovery in a suit for a deficiency judgment under the predecessor statute to N.Y. U.C.C. § 9-610). This is especially the case where self-dealing creates a windfall for the secured creditor. For example, in *Primavera*, the fact that the secured party "bought several securities itself and then resold them to [a third-party] at a profit of just under $500,000--or just over 2%--later the same day [was] evidence that [the secured party] may have failed to maximize the return on the Funds' securities in the liquidation." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 546 (S.D.N.Y. 2001) (quoting *In re Zsa Zsa Ltd.*, 352 F. Supp. 665, 671 (S.D.N.Y. 1972)); *see also In re Solfanelli*, 230 B.R. 54, 67-68 (M.D. Pa. 1999) (finding a secured party acted in a commercially unreasonable manner where its agent sold a majority of securities to itself and then resold them at higher price two days later), *aff'd*, 203 F.3d 197 (3d Cir. 2000).

23. In this case, the evidence shows that JPMorgan disposed of the Securities Lending Cash Collateral (*i.e.* LBI's cash collateral) by purchasing securities at inflated prices from its own affiliate, while JPMorgan simultaneously disposed of LBI securities collateral positions in the very same securities at depressed prices. This self-dealing at the expense of LBI (and LBHI as guarantor) was commercially unreasonable. As a result, JPMorgan's Deficiency Claims should be reduced by an amount to be determined by the Court.

10

**II.    UNSUPPORTED SECURITIES LENDING-RELATED CLAIM AMOUNTS**

24.    JPMorgan's claims related to LBI's securities-lending business also include several line items for fees that are not supported by sufficient documentation. These items include a "liquidation fee" of fifty basis points on the total value of the portfolio that adds up to $15.8 million dollars. JPMorgan provides no explanation of how the amount of the fee was determined or how it was applied. The claims also include another line item for fees of over $8.5 million dollars with no supporting documentation whatsoever. The challenged line items are as follows:

| Item | Description | Documentation | Amount |
|---|---|---|---|
| 1 | Liquidation fee | Notation of 50bp amount but no explanation of how the amount was determined | $15,806,901.00 |
| 2 | Unexplained fee | No documentation | $8,565,357.00 |
| 3 | Post-petition fee | No documentation | $25,302.00 |

25.    This Court and others in the Second Circuit have held that "claims can be disallowed for failure to support the claim with sufficient evidence . . . because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of the claim." *In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010); *In re Porter*, 374 B.R. 471, 483 (Bankr. D. Conn. 2007).

26.    The Bar Date Order and the Bankruptcy Rules' official proof of claim form both require that each proof of claim include supporting documentation. (Bar Date Order at 6.) The Claims do not comply with this requirement because they fail to provide enough information to allow LBHI to assess the basis and merits of the claims.

27.    LBHI therefore respectfully requests that the Court enter an order requiring JPMorgan to submit documentary support sufficient to ascertain the validity of each line item set forth above or, in the absence of such support, reduce and/or disallow each line item.

11

**Notice**

28. No trustee has been appointed in these chapter 11 cases. LBHI has served notice of this Objection on (i) the U.S. Trustee; (ii) the attorney for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) JPMorgan Chase Bank, N.A.; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the *Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* entered on June 17, 2010 [Docket No. 9635]. LBHI submits that no other or further notice need be provided.

29. No previous request for the relief sought herein has been made by LBHI to this or any other court.

**WHEREFORE**, LBHI respectfully requests that the Court enter an Order (a) granting the relief requested herein and (b) granting LBHI such other relief as is just.

Dated:  January 7, 2015
New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: /s/ Andrew J. Rossman
Susheel Kirpalani
Andrew J. Rossman
Tyler G. Whitmer
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000
*Counsel for Lehman Brothers Holdings Inc.*