# EXHIBIT A

## Input template for "Active" JPMCB Sec Lending Business trading Agreements only

**1. Type of Agreement (i.e. Master Securities Loan Agreement, Master Repurchase Agreement, Tri-Party Repo, Tri-Party Sec Loan agreement, etc..):**

Master Securities Lending Agreement

**2. Name of JPM Entity on Agreement (i.e. Chemical, MHT, Chase or JPMCB):**

The Chase Manhattan Bank, N.A.

**3. Full Legal Name of Counterparty (i.e. Broker/Dealer):**

Lehman Brothers Inc. formerly Shearson/American Express Inc.

**4. UCN (and if available the SPN) of Counterparty:**

006986772 *000* / *177814*

**5. Effective Date of the agreement:**

09-Mar-83

**6. Signed Date of the agreement:**

**7. Custodian for Tri-Party Repo or Sec Loan Agreement and which master agreement it ties to:**

**8. Securities covered by trading agreement (i.e. International Securities, government, equities, etc...):**

**9. Additional Annexes/Addenda/Amendments that are applicable to agreement:**

Hong Kong Amendment (eff. 17-May-1995); Vanguard Tri-party (eff. 22-Apr-)1996; South Africa Addendum (eff. 24-Feb-1998); International Addendum (eff. 30-Nov-1988); Brinson Addendum (03-Jan-2003)

*177814 / 1123 / 030983 / Dox 566733 / ucn 006986772000*

## MASTER SECURITIES LENDING AGREEMENT

This MASTER SECURITIES LENDING AGREEMENT dated March 9, 1983 by and between SHEARSON/AMERICAN EXPRESS INC (the "Borrower") and THE CHASE MANHATTAN BANK (NATIONAL ASSOCIATION), as trustee or managing agent for those certain trusts and accounts (including accounts subject to ERISA, as hereinafter defined) from time to time listed in Appendix A hereto (The Chase Manhattan Bank (National Association), acting in its capacity as trustee or managing agent for each such trust or account, and not in its individual capacity, is hereinafter referred to as the "Trustee"),

### W I T N E S S E T H   T H A T:

WHEREAS, the Borrower desires to borrow, from time to time, certain securities from the Accounts, as hereinafter defined, on the terms and conditions hereinafter set forth; and

WHEREAS, the Trustee is willing, subject to mutual agreement as to each loan in the manner hereinafter set forth, to lend such securities to the Borrower from time to time on behalf of the Accounts on the terms and conditions hereinafter set forth;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto hereby agree as follows:

1.   Definitions.   As used in this Agreement the following words and terms shall have the meanings set forth below, unless the context clearly indicates otherwise:

"Account" shall mean each trust or account from time to time listed in Appendix A hereto, as the same may be amended from time to time in accordance with paragraph 12 hereof.

"Approved Securities" shall mean obligations of or guaranteed by the United States government which are acceptable to the Trustee in its sole discretion.

"business day" shall mean any day on which national banks and the NYSE are open for business in New York City.

"Collateral" shall mean, collectively, (a) all Pledged Cash from time to time held by the Trustee

CONFIDENTIAL

2

hereunder, any property in which such Pledged Cash may from time to time be invested or reinvested by the Trustee and held by it (but not the income or distributions thereon or gains therefrom), any amounts or other proceeds arising in connection with the sale, exchange, collection or other disposition of any of the foregoing and any rebates, interest or other amounts at any time due to the Borrower from the Trustee with respect to such Pledged Cash, (b) all Approved Securities from time to time delivered by the Borrower and held by the Trustee hereunder, the interest or other income therefrom and the proceeds thereof, and (c) all Letters of Credit from time to time held by the Trustee hereunder and the proceeds thereof, in each case regardless whether the same has been allocated at any time or from time to time to any particular Loan.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended.

"Letter of Credit" shall mean an irrevocable performance letter of credit issued by a bank acceptable to the Trustee for the account of the Borrower or any other person acceptable to the Trustee, which letter of credit (a) expires not earlier than six months following the date it is delivered to the Trustee hereunder, (b) names as beneficiary The Chase Manhattan Bank (National Association), as trustee or managing agent, (c) is payable to the beneficiary upon presentation of a draft in the amount of any drawing and a statement of the beneficiary that the amount being drawn thereunder represents money owed to the beneficiary in connection with a loan or loans of securities, (d) permits any number of partial drawings (which pro tanto reduce the amount available under the Letter of Credit), and (e) otherwise contains such terms and provisions as are required by or acceptable to the Trustee.

"Loaned Securities" shall mean all securities loaned to the Borrower hereunder or an equal principal amount of the same issue or series and any securities issued in exchange therefor.

"Loan" shall mean each securities loan made pursuant to paragraph 2 hereof.

"Market Value" shall mean, with respect to any security, as of any date of determination thereof, (a) the closing price of such security on the NYSE on the trading day next preceding such date of determination, or (b) if such security is not listed on the NYSE, the closing price of such security on any national securities exchange selected by the Trustee on which such security is listed on the trading day next preceding such date of determination, or (c) if such security is not listed on any national securities exchange, the price of such security as quoted by

3

a recognized pricing service selected by the Trustee (including the Associated Press as evidenced by quotations published in the New York Times and any pricing service provided by The Chase Manhattan Bank (National Association) or any affiliate thereof) at or as nearly as practicable at the close of business on the last trading day during which such security was traded next preceding such date of determination, or (d) with respect to a marketable United States government obligation, the price of such security as quoted by a recognized pricing service selected by the Trustee (including the Associated Press as evidenced by quotations published in the New York Times and any pricing service provided by The Chase Manhattan Bank (National Association) or any affiliate thereof) or if the Trustee so chooses the dealer bid price quoted by a recognized dealer in such security (which may be The Chase Manhattan Bank (National Association) or any affiliate thereof) at or as nearly as practicable at the close of business on the last business day preceding such date of determination; provided, however, that the market value of any security held as Collateral as to which the issuer of such security is in default or as to which any third party has asserted an interest shall be zero for purposes hereof.  In addition, the term "Market Value", shall mean, as of any date of determination thereof, (a) with respect to any Pledged Cash or Collateral in which such Pledged Cash is invested, the amount of such Pledged Cash originally paid to the Trustee, as reduced by any payments of such Pledged Cash to or for the account of the Borrower, and (b) with respect to any Letter of Credit, the undrawn balance thereof which the Trustee may at such time, and for a period of at least ten business days after such date of determination, draw there-under; provided, however, that the market value of any Letter of Credit as to which the issuing bank has defaulted in honoring any draft drawn thereunder or has indicated its intention not to honor any such draft or as to which any judicial or similar restraint on payments thereunder exists shall be zero for all purposes hereof.

"NYSE" shall mean the New York Stock Exchange, Inc.

"Pledged Cash" shall mean the aggregate amount of cash, in United States dollars, paid to the Trustee from time to time as Collateral with respect to any Loan, as reduced to reflect any amounts thereof paid to or for the account of the Borrower.

"Required Value" shall mean at any date, with respect to any Loan, that percentage of the Market Value of the relevant Loaned Securities determined on such date as shall have been agreed to with respect to such Loan by the parties hereto from time to time, any such agreement to be evidenced by a written confirmation from the Trustee to the Borrower.  In no event shall the Required Value for any Loan

JPM-2004 0032046

4

be less than 100% of the Market Value of the Loaned Securities.

"SEC" shall mean the Securities and Exchange Commission.

2. <u>Loans of Securities</u>.

(a) <u>The Loans</u>.    From time to time, upon the request of the Borrower, the Trustee may, in its sole discretion, lend securities to the Borrower from one or more of the Accounts.  Each such Loan shall be made on the terms and subject to the conditions hereinafter set forth, except as may be otherwise expressly agreed in writing by the parties hereto at the time such Loan is made.  Each Loan will consist of securities of a single class or series issued by a single issuer which are loaned to the Borrower in a single transaction and shall be made from, and for the account of, a single Account.  The Borrower hereby unconditionally agrees that it will punctually return all Loaned Securities to the Trustee at the times when the Loan of such Loaned Securities is terminated hereunder or when such Loaned Securities are otherwise required to be returned to the Trustee in accordance with the terms hereof, and that it will punctually pay, or cause to be paid, when due, all other amounts at any time payable by it hereunder or in connection herewith.

(b) <u>Obligations to be Separate</u>.    Each and every obligation, liability or undertaking of the Trustee or an Account with respect to any Loan (i) shall be solely an obligation, liability or undertaking of, and binding upon, the Account by which such Loan is made and the Trustee acting for such Account in its capacity as such and (ii) shall be payable solely from the available assets of such Account.  No such obligation, liability or undertaking shall be binding upon or affect any other Account, the Trustee acting in any other capacity or The Chase Manhattan Bank (National Association) in its individual capacity.

3. <u>Method of Making the Loans</u>.

(a) <u>Delivery of Loaned Securities</u>.  Each Loan hereunder shall be made by the Trustee delivering to the Borrower the Loaned Securities that are the subject of such Loan against receipt by the Trustee of the Collateral required to secure such Loan.  The Borrower agrees that the completion of a delivery of Loaned Securities to it as provided in this paragraph 3 shall constitute its acceptance and receipt thereof and that each such acceptance and receipt shall be deemed to constitute, and shall constitute, a representation by the Borrower that as of the date of such acceptance and receipt (i) all representations and warranties by the Borrower herein are true and correct, as

5

if made on and as of such date, (ii) no default hereunder has occurred and is continuing, and (iii) except as otherwise theretofore disclosed to the Trustee in writing, there has been no material adverse change in the financial condition or business of the Borrower since the date of the most recent financial statements of the Borrower provided to the Trustee in accordance with subparagraph 7(c) or 8(a) hereof.

(b) <u>Delivery of Collateral</u>. The Borrower hereby agrees that, as a condition precedent to the making of any Loan, it shall deliver to the Trustee Collateral consisting of (i) cash, (ii) Approved Securities, and/or (iii) Letters of Credit having an aggregate Market Value on the date of such Loan at least equal to the Required Value with respect to such Loan on such date. Collateral at any time delivered to the Trustee under this paragraph or paragraph 6 hereof shall be of such type or types listed above as are then acceptable to the Trustee in its sole discretion.

(c) <u>Book Entry Delivery</u>. Unless otherwise agreed by the Trustee and the Borrower, the delivery of cash, Loaned Securities and Approved Securities shall be effected for purposes hereof through book entry transfer pursuant to the rules and procedures of the Depository Trust Company (or any other clearing agency registered by the SEC) or the Federal Reserve/Treasury Book Entry System, as the case may be. All such deliveries shall be deemed to have been effected for purposes hereof when final, irreversible, credit has been made to the account of the party entitled to the receipt of such credit under the rules of such clearing agency or book entry system.

(d) <u>Delivery of Letters of Credit</u>. The delivery of a Letter of Credit shall be effected for the purposes of this Agreement by physical delivery of the original executed Letter of Credit by the issuing, confirming or advising bank to the Trustee; provided, however, that no such delivery shall be effective until one business day after the receipt of a Letter of Credit by the Trustee, during which period the Trustee may reject such Letter of Credit, by oral notice to the Borrower, if such Letter of Credit is not in the form approved by the Trustee.

4. <u>The Collateral</u>.

(a) <u>Pledge</u>. As security for the prompt payment and performance of any and all obligations of the Borrower at any time or from time to time existing hereunder, or in connection with any Loan, the Borrower hereby pledges to the Trustee, and grants to the Trustee a security interest in, all Collateral (other than Letters of Credit) whether now owned or hereafter acquired, and whenever delivered to the Trustee (except insofar as greater rights are provided in

CONFIDENTIAL

6

subparagraph 4(b) hereof) and agrees that such pledge and grant of a security interest shall be effective immediately as to any Collateral upon delivery thereof to the Trustee. The Borrower hereby agrees that the Trustee shall have all right, title and interest in and to the Letters of Credit delivered as Collateral hereunder. The Trustee shall not be obligated to release Collateral, or take any other action with respect thereto, except as expressly provided herein.

(b)  Pledged Cash.  The Trustee shall have the unrestricted right to use and invest Collateral consisting of Pledged Cash, and any Collateral in which Pledged Cash is invested and reinvested, as it may elect, for the sole account of the Accounts.  So long as appropriate records allocating such Pledged Cash or other Collateral to Loans are maintained, the Trustee may commingle such Pledged Cash or other Collateral with any other Collateral or other funds or assets, including funds or assets held by The Chase Manhattan Bank (National Association) acting in any capacity as collateral under other lending agreements, and may hold the same in its own name or the name of its nominee.  The Trustee shall be entitled to collect and retain, for the account of the affected Account or Accounts, any income on such Collateral and any net gains realized upon the sale, maturity, payment, retirement or other disposition of such investments or reinvestments.  The Accounts shall bear the risk of all losses in value of the principal amount of any Collateral in which Pledged Cash is invested or reinvested. The sole obligation of the Trustee with respect to Pledged Cash is to repay such Pledged Cash to the Borrower as required by paragraphs 6, 9 and 10 hereof.

(c)  Approved Securities.    The Trustee may commingle any Approved Securities held by it with other Collateral or other assets, including assets held by The Chase Manhattan Bank (National Association) acting in any capacity as collateral under other lending agreements, and may hold the same in its own name or the name of its nominee.  Unless a default hereunder shall have occurred and be continuing, the Borrower shall be entitled to receive all interest payments or other distributions on Approved Securities held as Collateral that are received by the Trustee (if any).  The parties hereto shall deliver such suitable assignments, orders and other instruments as may be required in order to effectuate the provisions of the preceding sentence.  If any interest or other distribution on any Approved Securities is paid to the Borrower or to the Trustee in respect of a time when the recipient thereof is not entitled to receive such distribution, such recipient shall forthwith pay or deliver such distribution, or the equivalent thereof, to the party entitled to receive the same.  The Borrower shall bear the risk of all losses in value of the principal amount of Approved Securities held as Collateral.  The sole obligation of the Trustee with respect

JPM-2004 0032049

7

to Approved Securities held as Collateral, except as
provided in this paragraph, is to deliver such Approved
Securities to the Borrower as required by paragraphs 6, 9
and 10 hereof.

5.   Rights of Borrower and Trustee with Respect to
Loaned Securities.

(a)  Borrower's Rights.   Until a Loan is terminated
in accordance with the provisions hereof, the Borrower shall
have all the incidents of ownership of the relevant Loaned
Securities, including, without limitation, the right to
transfer such Loaned Securities or any part thereof to
others, free and clear of any right, title or interest of
the Trustee, and to vote or otherwise consent as holder
thereof, subject, however, to all rights of the Trustee and
all obligations of the Borrower hereunder, including the
provisions of subparagraphs 5(b) and (c) hereof.

(b)  Trustee's Rights.   The Trustee shall be
entitled to receive all interest, dividends and other
distributions of any kind whatsoever on or with respect to
the Loaned Securities made during the period of the relevant
Loan or for which the record date occurs during the period
of the relevant Loan.   Upon the payment or distribution of
any of the foregoing to any person other than the Trustee,
the Borrower shall, within one business day after the
payment or distribution thereof, pay and deliver the same or
identical property (with any such endorsements or assign-
ments as shall be customary and appropriate to effect the
delivery) to the Trustee, for the account of the relevant
Account, irrespective of whether the Borrower received the
same; provided, however, that any distribution of securities
made in exchange for Loaned Securities shall be considered
as substituted for such Loaned Securities and need not be
delivered to the Trustee until the relevant Loan is
terminated hereunder.

(c)  Borrower's Obligations.   The Borrower agrees
that at all times it will hold all Loaned Securities in its
possession, will keep the same specifically and physically
set aside as specifically identifiable property of the
Trustee and will not commingle Loaned Securities with any
property of the Borrower or of any other person; provided,
however, that the Borrower may hold securities subject to
this Agreement in a qualified central securities depository,
or, with respect to securities issued by the United States
or any agency or instrumentality thereof, with a federal
reserve bank or in the custody of a federal reserve member
bank, and that the Borrower may relinquish possession of any
Loaned Securities or retain possession of any Loaned
Securities for the account of another person as expressly
permitted by subparagraph 5(a) above.

CONFIDENTIAL

8

6.  <u>Allocation and Adjustment of Collateral</u>.

(a)  <u>Allocation of Collateral</u>.      Except as
provided in the following sentence, upon receipt of
Collateral for a Loan, such Collateral shall be allocated to
such Loan; provided that, if Collateral is received on the
same day for more than one Loan, the Trustee shall allocate
such Collateral to each Loan then being made so that each
such Loan is secured by not less than the required value of
Collateral as specified herein.  Any Collateral received by
the Trustee with respect to a Loan in excess of the Required
Value for such Loan may be held by the Trustee as collateral
security for all Loans made to the Borrower at any time
without being allocated to any one Loan or, in the sole
discretion of the Trustee, may be allocated at any time to
any Loan or Loans then outstanding hereunder.  All
allocations of Collateral shall be marked in the Trustee's
books, which shall be conclusive evidence of such
allocations.

(b)  <u>Marking to Market</u>.  If at any time the
aggregate Market Value of the Collateral allocated to any
Loan exceeds the Required Value for such Loan, then the
Trustee shall, upon oral demand by the Borrower, redeliver
to the Borrower Collateral having an aggregate Market Value
equal to such excess within one business day after such
demand.  If at any time the aggregate Market Value of the
Collateral allocated to any Loan is less than the Required
Value for such Loan, then the Borrower shall, upon oral
demand by the Trustee, deliver to the Trustee additional
Collateral having a Market Value at least equal to such
deficiency.  The Borrower unconditionally agrees to deliver
such additional Collateral to the Trustee in the manner
specified herein before the close of business on the date of
such demand.

(c)  <u>Reallocation of Collateral</u>.  The Trustee
shall have the right, at its sole election, at any time and
from time to time, to allocate and/or reallocate any
Collateral held by it hereunder to or among any outstanding
Loan or Loans.

(d)  <u>Returns of Collateral</u>.  If, at the time, less
than all of the Collateral held by the Trustee which has
been allocated to any Loan or which is unallocated is
required to be returned by the Trustee to the Borrower, the
selection of the portion of such Collateral to be returned
shall be solely at the election of the Trustee.  If at any
time the Trustee is required, or desires, to return a
portion of any Approved Security to the Borrower pursuant to
this Agreement, the Borrower shall, at the oral request of
the Trustee, take all such action as is necessary to cause
such Approved Security to be reissued in such denominations
as are required to permit such a partial return and in such

CONFIDENTIAL

9

case the Trustee shall not be obligated to return Collateral hereunder unless and until such action has been taken and may thereafter make required returns of Collateral hereunder by returning Approved Securities in such amounts as are, as nearly as practicable, equal to but not greater than the required return.  The return to the Borrower of Approved Securities the Market Value of which on the day on which the requirement to return the same was established was then sufficient to comply with such requirement of return shall be in full compliance with this Agreement and a full discharge of the Trustee's obligation to make such return, notwithstanding the fact that at the date of such return the Market Value of any such Approved Securities may have declined.  Whenever a Letter of Credit is to be returned in part, such return shall be effected by the Trustee's consent to a reduction equivalent to such part in the amount available for drawings under such Letter of Credit.

7.  <u>Representations and Warranties of Borrower</u>. The Borrower hereby represents and warrants to the Trustee that:

(a)  <u>Due Authorization, etc.</u>  The making and performance by the Borrower of this Agreement and the transactions contemplated hereby have been duly authorized by the Borrower; the Borrower has the requisite power and authority to make and perform the same; and such making and performance will not violate any applicable provision of law or regulation or result in the breach of or constitute a default or result in the creation of any lien or encumbrance under any agreement or other instrument to which the Borrower is a party or by which the Borrower or its property may be bound or affected.  This Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable in accordance with its terms.  At any time that any Collateral is delivered to the Trustee hereunder the Borrower shall have the absolute right to transfer title to, and dispose of, such Collateral to the Trustee, and the Trustee shall at all times have a prior perfected security interest in all such Collateral, except that in the case of Letters of Credit the Trustee shall have all right, title and interest therein, in each case subject to no equal, prior or other liens, charges, encumbrances or other claims of any kind.

(b)  <u>Borrower's Status</u>.  The Borrower is either a bank or a broker-dealer registered under the Securities Exchange Act of 1934, as amended.  Neither the Borrower nor any affiliate (as defined in Department of Labor Prohibited Transaction Exemption 81-6) of the Borrower has discretionary authority or control with respect to investment of any plan assets held in any Account to which this Agreement is applicable or renders investment advice (within the meaning of 29 CFR 2510.3-21(c)) with respect to such assets, and the Borrower will promptly notify the

CONFIDENTIAL

10

Trustee of any change which would make the foregoing representation untrue.

(c)   The Borrower has heretofore delivered to the Trustee a copy of the annual consolidated financial statements of the Borrower and its consolidated subsidiaries for its fiscal year ended December 31, 1981 duly audited by independent certified public accountants, including a balance sheet as at the end of such fiscal year and the related statement of income and changes in financial position for such fiscal year, and a copy of the unaudited consolidated financial statements of the Borrower and its consolidated subsidiaries for the six-month period ended June 30, 1982, including a balance sheet as at the end of such period and the related statement of income and changes in financial position for such period, and each of said financial statements and the related notes thereto are complete and correct and fairly present the consolidated financial condition and results of operations of the Borrower and its consolidated subsidiaries as at said dates and for such periods, all in conformity with generally accepted accounting principles consistently applied.

8.   Covenants of Borrower.   The Borrower hereby covenants and agrees with the Trustee as follows:

(a)   Delivery of Financial Statements, etc.   The Borrower will furnish to the Trustee, (i) as soon as available and in any event within 90 days after the end of each of its fiscal years, a copy of the annual consolidated financial statements of the Borrower and its consolidated subsidiaries duly audited by independent certified public accountants, including a balance sheet as at the end of such fiscal year and the related statement of income and changes in financial position for such fiscal year, prepared in accordance with generally accepted accounting principles consistently applied, (ii) as soon as available and in any event within 45 days after the end of each of the first three quarters of each of its fiscal years, a copy of the consolidated financial statements of the Borrower and its consolidated subsidiaries for the period then ended, including a balance sheet as at the end of such period and the related statement of income and changes in financial position for such period, prepared in accordance with generally accepted accounting principles on a basis consistent with that used in the preparation of the financial statements referred to in clause (i) above and certified by an appropriate officer of the Borrower, (iii) promptly after the filing thereof, a copy of each report or other instrument filed by the Borrower with the SEC, (iv) promptly after the occurrence of any default under this Agreement, a written notice setting forth the nature of such default and the steps being taken by the Borrower to remedy such default, and (v) from time to time such further

11

information (whether or not of the kind mentioned above) regarding the business, affairs and financial condition of the Borrower as the Trustee may reasonably request.

(b)   Notice of Certain Actions.   The Borrower will give the Trustee immediate notice (i) if at any time there is entered against the Borrower any order, decree, determination or instruction issued on the authority of any rule, regulation or proceeding of any governmental commission, bureau or other administrative agency or self-regulatory organization, including the SEC and the NYSE, which could have a material adverse effect on the ability of the Borrower to perform its obligations under this Agreement or to carry on its business as conducted at the date of this Agreement or which would prohibit expansion or require reduction of the business of the Borrower as conducted at the date of this Agreement or which might adversely affect the borrowing of securities by the Borrower, (ii) if at any time any litigation, arbitration or similar proceeding against or affecting the Borrower is commenced which could have a material adverse effect on the ability of the Borrower to perform its obligations under this Agreement or to carry on its business as conducted at the date of this Agreement or which would prohibit expansion or require reduction of the business of the Borrower as conducted at the date of this Agreement or which might adversely affect the borrowing of securities by the Borrower, (iii) if at any time there is commenced any investigation or proceeding which may result in the expulsion of the Borrower from any stock exchange, including the NYSE, or from the National Association of Securities Dealers, Inc., or from any self-regulatory organization, or a suspension of the Borrower's power under Federal or state law to transact business as a broker or dealer in securities or if the Borrower is so expelled or suspended, (iv) if at any time any communication is received by the Borrower from the SEC or any stock exchange, including the NYSE, constituting a warning to the Borrower of the violation, or threatened violation, of any rule of the SEC or of such exchange a failure to comply with which could have a material adverse effect on the ability of the Borrower to perform its obligations under this Agreement or to carry on its business as conducted at the date of this Agreement or result in a prohibition on expansion or a requirement for reduction of the business of the Borrower as conducted at the date of this Agreement or adversely affect the borrowing of securities by the Borrower, (v) if at any time the Borrower shall receive information that the Borrower is under special surveillance by any stock exchange, including the NYSE, or by any other self-regulatory organization, (vi) if at any time the Borrower shall receive information that the SEC or any self-regulatory organization, including the NYSE, has notified the Securities Investor Protection Corporation ("SIPC") pursuant to Section 5(a)(1) of the Securities Investor

CONFIDENTIAL

12

Protection Act of 1970 ("SIPC Act") of facts which indicate that the Borrower is in or is approaching financial difficulty, or (vii) if at any time SIPC shall file an application for a protective decree with respect to the Borrower under Section 5(a)(3) of the SIPC Act. Any such notice shall set forth in reasonable detail a description of the event which has occurred and of the action, if any, which the Borrower proposes to take with respect thereto. The Borrower will forward to the Trustee a copy of any order, decree, determination, instruction or other written evidence received by it of or with respect to any matter referred to in the first sentence of this subparagraph (b) with respect to which notice is required to be given to the Trustee by such sentence. The Borrower will comply with any such order, decree, determination or instruction within the time required for such compliance and with any changes of rules or regulations of the SEC or the NYSE or any other self-regulatory organization by the effective date thereof or the time for compliance specified therein or, within the time required for compliance, shall cause the same to be revoked, reversed or modified to the satisfaction of the Trustee.

(c) <u>Further Acts</u>. The Borrower will, from time to time, do and perform any and all acts and execute any and all further instruments required or reasonably requested by the Trustee more fully to effect the purposes of this Agreement and the pledge of the Collateral hereunder, including, without limitation, the execution and filing of financing statements and continuation statements relating to the Collateral under the provisions of the New York State Uniform Commercial Code.

9.  <u>Termination of Loans without a Default</u>.

(a) <u>Termination by the Borrower</u>. The Borrower may at any time terminate any Loan by giving the Trustee oral notice of such termination and delivering the Loaned Securities with respect to such Loan to the Trustee on the date specified in such oral notice. The date so specified shall be not less than 1 business day nor more than 30 business days subsequent to the giving of such notice.

(b) <u>Termination by the Trustee</u>. Each Loan made hereunder shall be a demand loan. The Trustee may at any time terminate any Loan, in whole or in part, by giving the Borrower oral notice of such termination, whereupon such Loan, or the portion thereof being terminated, shall become due on the date specified in such notice unless it shall become due sooner pursuant to paragraph 10 hereof. The date so specified shall be not less than 1 business day subsequent to the giving of such notice in the case of a Loan of United States government obligations and not less than 5 business days subsequent to the giving of such notice

13

in all other cases.  The Borrower hereby unconditionally promises to redeliver the Loaned Securities that are the subject of any Loan so terminated to the Trustee on the date so specified with respect to such Loan.

(c)  Return of Collateral.    Upon the termination of any Loan in accordance with this paragraph 9 and the return of the Loaned Securities with respect to such Loan to the Trustee, the Trustee shall, unless otherwise directed by the Borrower, deliver the Collateral then allocated to such Loan to the Borrower; provided, however, that if any default hereunder shall have occurred and be continuing the Trustee shall not be obligated to return any such Collateral until such default shall have been cured, and that if a record date for any distribution with respect to the Loaned Securities occurred during the period of such Loan and such distribution has not been paid or delivered to the Trustee, the Trustee may retain a portion of the Collateral for such Loan sufficient to satisfy the Borrower's obligation with respect to such distribution until such obligation has been satisfied in accordance with subparagraph 5(b) hereof.   Such delivery shall occur on the date of the return of the relevant Loaned Securities.   The Trustee acknowledges that, if at the election of the Borrower, upon the termination in accordance with this paragraph 9 of any Loan which is secured by a Letter of Credit, or a portion thereof, and the return of the Loaned Securities with respect to such Loan, such Letter of Credit, or portion thereof, is not returned to the Borrower, the Trustee shall have no further right to draw under such Letter of Credit with respect to such Loan to the extent that the obligations of the Borrower with respect to such Loan have been fully discharged and the payments and deliveries of Loaned Securities made in respect of such obligations are not subsequently recovered from the Trustee in any bankruptcy, insolvency or similar proceeding.

10.  Defaults.

(a)  Events of Default.  Any one or more of the following events shall constitute an "Event of Default" hereunder:

(i)  A failure by the Borrower to deliver any Loaned Securities on the date specified for such delivery in accordance with subparagraph 9(a) or (b) hereof or any other default by the Borrower in the due performance or observance of any covenant or agreement contained herein; or

(ii)  Any representation or warranty made by the Borrower herein or in connection herewith or with any borrowing hereunder shall be breached or prove to have been untrue when made; or

14

(iii)   A violation by the Borrower, in connection with any Loaned Securities or the holding or disposition thereof by the Borrower, of any applicable law, regulation or rule of the United States, any state or any instrumentality of either thereof, the NYSE or any other national securities exchange to the requirements of which the Borrower may be subject, or the Board of Governors of the Federal Reserve System or the National Association of Securities Dealers, Inc.; or

(iv)   A violation by the Borrower of any rule limiting its aggregate indebtedness or requiring a minimum net capital imposed under the Securities Exchange Act of 1934, as amended, or the rules and regulations thereunder or imposed by any stock exchange, or the imposition, under any such rule, of a prohibition against expansion, or a requirement of any reduction, of the business of the Borrower; or

(v)   The occurrence of any event of which the Borrower is required to notify the Trustee pursuant to clause (i), (iii), (vi) or (vii) of subparagraph 8(b) hereof; or

(vi)   The Borrower or any bank which has issued a Letter of Credit held as Collateral shall (1) apply for or consent to the appointment of or the taking of possession by a trustee, receiver, custodian, liquidator, conservator or the like of itself or of all or any substantial part of its property, (2) admit in writing its inability, or be generally unable, to pay its debts as such debts become due or voluntarily suspend payment of its obligations, (3) make a general assignment for the benefit of its creditors, (4) commence a voluntary case under the Federal Bankruptcy Code (as now or hereafter in effect) or, in the case of any such bank, under the analogous law pertaining to it, (5) file a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding-up, or composition or adjustment of debts, (6) fail to controvert in a timely or appropriate manner, or acquiesce in writing to, any petition filed against it in an involuntary case under such Bankruptcy Code or analogous law, or (7) take any corporate action for the purpose of effecting any of the foregoing; or

(vii)   A proceeding or case shall be commenced, without the application or consent of the Borrower or any bank which has issued a Letter of Credit held as Collateral, as the case may be, before any court, agency or supervisory authority having jurisdiction in the premises, seeking (1) the liquidation, reorganization, dissolution, winding-up, marshalling of assets or

CONFIDENTIAL

15

composition or adjustment of debts of the Borrower or
such bank, (2) the appointment of a trustee, receiver,
custodian, liquidator, conservator or the like of the
Borrower or such bank or of all or any substantial part
of its assets or (3) similar relief in respect of the
Borrower or such bank under any law relating to
bankruptcy, insolvency, reorganization, winding-up or
composition and adjustment of debts, and such preceeding
or case shall continue undismissed, or an order,
judgment or decree approving or ordering any of the
foregoing shall be entered and continue unstayed and in
effect, for a period of 30 days; or any action shall be
taken by any agency or supervisory authority having
jurisdiction which results in the occurrence of any of
the events specified in clauses (1) through (3) above;
or any order for relief against the Borrower or any such
bank shall be entered in an involuntary proceeding or
case under such Bankruptcy Code or, in the case of any
such bank, under the analogous law pertaining to it.

(b) <u>Automatic Termination</u>.  Upon the occurrence
of any Event of Default all outstanding Loans shall
terminate and become immediately due, without any notice or
other action on the part of the Trustee, and the Borrower
shall immediately deliver all Loaned Securities to the
Trustee.

(c) <u>Remedies</u>. If an Event of Default shall have
occurred and be continuing the Trustee may take whatever
action at law or in equity may appear necessary or desirable
to collect any and all amounts due and thereafter to become
due hereunder and to enforce the performance or observance
by the Borrower of any and all obligations, covenants and
agreements of the Borrower under or in connection with this
Agreement. Without in any way limiting the foregoing, if
the Borrower shall fail to immediately deliver any Loaned
Securities to the Trustee in accordance with subparagraph
10(b) hereof, the Trustee may in its sole discretion either
(i) purchase securities equivalent to the Loaned Securities
which have not been delivered, or any part thereof, in any
principal market for such securities and apply such
purchased securities towards the Borrower's obligation to
deliver such Loaned Securities, or (ii) by oral notice to
the Borrower (confirmed in writing), and without purchasing
equivalent securities, hold the Borrower liable for an
amount equal to the Market Value of the Loaned Securities
which have not been delivered, or any part thereof as
specified in such notice, determined as of the date of such
oral notice, whereupon the Borrower's obligation to deliver
such Loaned Securities to the Trustee hereunder (to the
extent equivalent securities have been purchased or the
Trustee has given an oral notice with respect thereto
pursuant to clause (ii) above) shall terminate for all
purposes and the Borrower shall thereafter be obligated to

JPM-2004 0032058

16

the Trustee hereunder for, and hereby agrees to pay to the
Trustee, the full amount of the purchase price of such
securities or the Market Value thereof, as the case may be.

(d)   Application of Collateral.   The Trustee
shall have all of the rights, powers and remedies with
respect to the Collateral of a secured party, or, in the
case of Letters of Credit, a beneficiary, under the New York
State Uniform Commercial Code as in effect from time to
time.  Without in any way limiting the foregoing, upon the
occurrence of any Event of Default the Trustee may draw upon
any Letters of Credit then held as Collateral and liquidate
any or all other Collateral then held by it.  The proceeds
of the foregoing, together with any Pledged Cash then held,
may be applied by the Trustee to the payment of any and all
amounts due and to become due to it hereunder, including
without limitation amounts due to the Trustee in accordance
with subparagraph 10(c) hereof.  In addition to and without
limiting the foregoing, the Trustee may sell or cause to be
sold all or any of the Collateral in the Borough of
Manhattan, New York City, or elsewhere, in one or more
sales, at such price as the Trustee may deem best, and for
cash or on credit or for future delivery, without assumption
of any credit risk, at public or private sale, without
demand of performance or notice of intention to sell or of
time or place of sale (except such notice as is required by
applicable statute and cannot be waived), and the Trustee or
anyone else may be the purchaser of any or all of the
Collateral so sold and thereafter hold the same absolutely,
free from any claim or right of whatsoever kind, including
any equity of redemption, of the Borrower, any such demand,
notice or right and equity being hereby expressly waived and
released.  It is expressly understood and agreed by the
parties hereto that any allocation of Collateral to any Loan
or liabilities due to any Account pursuant to the terms
hereof shall in no way affect the ability of the Trustee to
apply such Collateral to the satisfaction of any obligation
of the Borrower hereunder upon any default hereunder
regardless of the Loan or Account to which such obligation
relates, and that all Collateral at any time given hereunder
shall constitute collateral security for all of the
Borrower's obligations to the Trustee hereunder without
distinction of any kind and upon any default hereunder may
be applied to any such obligation or obligations as the
Trustee in its sole discretion may elect.

(e)   Payment of Expenses.   If any Event of
Default shall occur the Borrower shall pay to the Trustee,
on demand, all out-of-pocket expenses, including reasonable
attorneys' fees, paid or incurred by the Trustee in
realizing upon any Collateral or enforcing any covenants or
obligations hereunder and all fees, commissions, taxes and
other out-of-pocket expenses, including reasonable
attorneys' fees, paid or incurred in connection with the

CONFIDENTIAL

17

purchase of any equivalent securities in accordance with
subparagraph 10(c) hereof.  Amounts payable under this
subparagraph 10(e) and subparagraph 10(c) hereof shall be
paid to the Trustee by the Borrower on demand, together with
interest thereon from the date such amounts were paid by the
Trustee to the date of the repayment of such amounts to the
Trustee, whether out of the proceeds of Collateral or
otherwise, at a rate per annum equal to 1/2 of 1% above the
prime commercial lending rate per annum as announced from
time to time by The Chase Manhattan Bank (National
Association) at its principal office in New York, as in
effect from time to time during such period, but in no event
at a rate in excess of the highest rate permissible under
any applicable usury law.

          (f)  Remedies Cumulative.     No remedy herein
conferred upon the Trustee shall be exclusive of any other
remedy but each and every such remedy shall be cumulative
and shall be in addition to every remedy given under this
Agreement or now or hereafter existing at law or in equity
or by statute.

          (g)  Return of Collateral After a Default.  If the
Loans hereunder have been terminated pursuant to
subparagraph 10(b) hereof, the Trustee shall not be
obligated to return any Collateral to the Borrower until (i)
all Loaned Securities have been returned to the Trustee or
securities equivalent to such Loaned Securities have been
acquired by the Trustee, (ii) all amounts due and to become
due hereunder have been paid to the Trustee in full, and
(iii) the Borrower has delivered to the Trustee any and all
property of any kind which it is then or may thereafter be
required to deliver to the Trustee hereunder.  If each of
the conditions in the preceding sentence is satisfied the
Trustee shall deliver all Collateral then held by it which
has not been applied to the satisfaction of the Borrower's
obligations hereunder to the Borrower.

          11.  Transfer Taxes, Necessary Costs and
Compensation.  The Borrower shall pay all transfer taxes and
necessary costs with respect to the transfer of Loaned
Securities by the Trustee to the Borrower and from the
Borrower to the Trustee upon the termination of each Loan.
In addition, the Borrower shall reimburse the Trustee for
any loss, including interest and/or penalties, incurred by
the Trustee by reason of the Borrower's failure to pay all
such taxes and costs.  Except as otherwise expressly
provided in paragraph 10 hereof, the Borrower shall pay the
Trustee interest on any and all amounts not paid when due
hereunder from the date due until paid at the current daily
average offered rate for federal funds.

          12.  Addition and Removal of Accounts.  The Account
which makes any particular Loan shall be determined in the

18

sole discretion of the Trustee at the time such Loan is made and recorded in the Trustee's books (which shall be conclusive). The Borrower agrees to accept any loan of securities requested by it from any Account or Accounts listed in Appendix A hereto, and the Trustee shall not be required to notify the Borrower at any time as to which of such Accounts has made or may make any Loan hereunder; provided, however, that the Trustee shall record with respect to each Loan the identity of the lending Account and shall inform the Borrower thereof upon the Borrower's written request for such information. The Trustee may at any time amend Appendix A hereto to add further trusts and accounts to the list of Accounts set forth therein and to remove Accounts from such list by delivering a copy of the amendment to Appendix A to the Borrower. Any such amendment shall become effective three business days after the receipt thereof by the Borrower unless the Trustee has theretofore received a written notice from the Borrower objecting to such amendment.

    13.  _Indemnification_.  The Borrower agrees to indemnify and hold harmless the Trustee from any and all damages, losses, liabilities, costs and expenses (including reasonable attorneys' fees) which the Trustee may incur or suffer arising in any way out of the use by the Borrower of Loaned Securities or any failure of the Borrower to deliver Loaned Securities in accordance herewith or otherwise comply with the terms of this Agreement, except those caused by the gross negligence or willful misconduct of the Trustee.

    14.  _Notices, Deliveries, etc._   All oral notices specified herein shall be given in person or by telephone, if to the Trustee, to Mr. J. Robert Striano at the address for the Trustee specified below or at telephone no. (212) 552-5126 and, if to the Borrower, to Mr. Alan Best at the address for the Borrower specified below or at telephone no. (212) 577-5712, or to such other person and at such other address or telephone number as either party may designate by written notice to the other hereunder.  All other notices and communications hereunder shall be in writing and all such other notices and communications and all deliveries and payments hereunder shall be delivered by hand or mailed by certified or registered mail, if to the Trustee, to The Chase Manhattan Bank (National Association), One Chase Manhattan Plaza, Floor 4B, New York, New York 10081, Attention:  Securities Lending Division, Mr. J. Robert Striano, and, if to the Borrower to Shearson/American Express Inc, 14 Wall Street, 10th Floor, New York, New York 10005, Attention:  Mr. Alan Best, or at such other address as either party may designate by written notice to the other hereunder.  Such other notices and communications hereunder may also be given by telegram confirmed by certified or registered mail.

CONFIDENTIAL

JPM-2004 0032061

19

15. <u>Miscellaneous</u>. Neither this Agreement, any obligation to return a security borrowed hereunder or any other obligation of the Borrower hereunder shall be assignable by either party without the prior written consent of the other party. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. This Agreement shall be governed by and construed in accordance with the law of the State of New York, except to the extent such law is pre-empted by ERISA or other applicable Federal law. This Agreement shall not be modified or amended except by an instrument in writing signed by each of the parties hereto.

16. <u>Fees</u>. The compensation of the Trustee (and the payment of rebates to the Borrower in the case of Loans collateralized by Pledged Cash) and the manner of payment thereof shall be as agreed upon from time to time by the parties hereto. Each agreement by the parties hereto with respect to the foregoing matters shall be evidenced by a written confirmation from the Trustee to the Borrower and shall be deemed to be, and shall be, a part of this Agreement for all purposes hereof as fully as if such agreement were set forth herein in full, and each and every amount due under any such agreement shall be deemed to constitute, and shall constitute, an amount due under this Agreement for all purposes hereof.

17. <u>SIPC Act</u>. The Trustee acknowledges that the provisions of the Securities Investors Protection Act of 1970 may not protect the Trustee or the Accounts with respect to the securities loan transactions hereunder between the Trustee and the Borrower and that, therefore, the Collateral delivered by the Borrower to the Trustee may in effect constitute the only source of satisfaction of the Borrower's obligations in the event the Borrower fails to return the securities. The Trustee agrees to notify the Accounts of this provision. This provision does not constitute a limitation on any obligations of the Borrower hereunder or a waiver by the Trustee of any of its rights hereunder.

18. <u>Effective Date</u>. This Agreement shall be and become effective as of the date first above written.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their

CONFIDENTIAL

20

respective duly authorized officers as of the date first
above written.

THE CHASE MANHATTAN BANK
(NATIONAL ASSOCIATION),
as trustee and managing
agent

By _____

Title: _V P_

By _____

Title: _____

## ADDENDUM TO MASTER
## SECURITIES LENDING AGREEMENT

WHEREAS, Shearson/American Express, Inc., predecessor of SHEARSON LEHMAN HUTTON, INC., (the "Borrower") and THE CHASE MANHATTAN BANK (NATIONAL ASSOCIATION), as trustee or managing agent for certain trusts or accounts (the "Trustee"), have entered into a Master Securities Lending Agreement dated March 9, 1983 (the "Agreement");

WHEREAS, the Master Securities Lending Agreement continues to be in full force and effect between the Trustee and the Borrower;

WHEREAS, the Borrower desires to borrow, from time to time, certain International Securities, as hereinafter defined, from the Accounts on the terms and conditions hereinafter set forth; and

WHEREAS, the Trustee is willing, subject to mutual agreement as to each Loan in the manner hereinafter set forth, to lend such International Securities to the Borrower from time to time on behalf of the Accounts on the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereby agree as follows:

1.     Unless otherwise provided herein, all terms and conditions of the Agreement are expressly incorporated herein by reference.  Capitalized terms used herein without definition shall have the meanings ascribed to them in the Agreement.

2.     Section 1 of the Agreement is amended as follows:

a.     The definition of "Collateral" is amended by adding the words "or International Securities" after the words "Approved Securities" in clause (b) thereof.

b.     A new term, "Dollar Equivalent", is added.  "'Dollar Equivalent' shall mean, as of any date of determination thereof, in respect of any International Securities or Collateral denominated or issued in an International Currency or otherwise, the equivalent thereof in United States dollars calculated by the Trustee on the basis of the most current spot rate of exchange quoted by

CONFIDENTIAL

JPM-2004 0032064

2

The Chase Manhattan Bank (National Association), or other source selected by the Trustee in its sole discretion, for selling the relevant International Currency for United States dollars in a recognized foreign exchange market selected by the Trustee in its sole discretion."

c.   A new term, "International Currency", is added.   "'International Currency' shall mean a currency other than United States dollars which is freely transferable and freely convertible into United States dollars."

d.   A new term, "International Securities", is added.   "'International Securities' shall mean, with respect to a Loan, securities denominated or issued in an International Currency which are acceptable to the Trustee in its sole discretion."

e.   The definition of "Letter of Credit" is amended in clause (e) by adding the words "and is payable in such currency or currencies" after the word "provisions" and by adding the words "in its sole discretion" after the word "Trustee".

f.   The definition of "Market Value" is amended as follows:  The reference to "national" in clause (b) is replaced with the words "foreign or domestic"; the reference to "national" in clause (c) is replaced with the word "such"; the parenthetical in clause (c) is amended by deleting the words "the Associated Press as evidenced by quotations published in the New York Times and" and also by adding the words "to or" following the word "provided"; the parenthetical in clause (d) is amended by adding the words "to or" following the word "provided"; the proviso clause in the first sentence is amended by adding, between the words "security" and "held" the words "determined in clauses (a)-(d) hereinabove shall include accrued interest and the market value of any security"; and a new last sentence is added, namely, "In all cases involving International Securities or Collateral denominated or issued in an International Currency, Market Value shall be adjusted by the Trustee to a Dollar Equivalent."

3.   Section 3(b) of the Agreement is amended by adding a new clause (iii), "International Securities" and designating existing clause (iii) as (iv).  Section 3(c) of the Agreement is amended by adding to the first sentence thereof the words "as evidenced in the relevant Loan Confirmation" after the word "Borrower" and by adding the words "(other than International Securities)" after the reference to both "Loaned Securities" and "Approved

CONFIDENTIAL

3

Securities" therein.  Section 3(c) is further amended by
adding a new last sentence, namely, "Delivery of
International Securities shall be effected in the manner
agreed to by the Trustee and the Borrower, as evidenced in
the relevant Loan confirmation."

    4.   Section 4(c) of the Agreement is amended by
adding the words "or International Securities" after each
reference to the words "Approved Securities" in the first,
second, fourth, fifth, and sixth sentences thereof.
Section 4(c) is further amended by adding the words ", as the
case may be," after the word "Borrower" in the sixth
sentence thereof.

    5.   Section 6(d) of the Agreement is amended by
substituting the following sentence for the existing second
sentence:

    "If at any time the Trustee is required, or
desires, to return a portion of any Approved Security or
International Security held by it as Collateral to the
Borrower pursuant to this Agreement, the Borrower shall, at
the oral request of the Trustee, take all such action as is
necessary to cause such Approved Security or International
Security to be reissued in such denominations as are
required to permit such a partial return and in such case
the Trustee shall not be obligated to return Collateral
hereunder unless and until such action has been taken and
may thereafter make required returns of Collateral hereunder
by returning Approved Securities or International
Securities, as the case may be, in such amounts as are, as
nearly as practicable, equal to but not greater than the
required return."

The third sentence of Section 6(d) is amended by inserting
the words "or International Securities, as the case may be,"
after the initial reference to "Approved Securities"
therein.

    6.   Section 9(b) of the Agreement is amended by
substituting the following sentence for the existing third
sentence:

    "The date so specified shall be not less than 1
business day subsequent to the giving of such notice in the
case of a Loan of United States government obligations and,
unless otherwise agreed by the parties hereto as evidenced
in the confirmation relating to such Loan, not less than 5
business days (or 4 business days in the case of a Loan of
International Securities denominated or issued in yen)
subsequent to the giving of such notice in all other cases."

4

7.    Section 10(a)(vi)(7) of the Agreement is amended by adding the words "or effect any process under the laws of any jurisdiction" after the words "take any corporate action".    Section 10(c) of the Agreement is amended by substituting the following clause for existing clause (i):

"purchase securities equivalent to the Loaned Securities which have not been delivered, or any part thereof, in any principal market for such securities and apply the Market Value of such purchased securities against the Market Value of the Loaned Securities on the date of such purchase."

Section 10(e) is amended as follows:  In the first sentence thereof, the words "and as of the date of any" are added immediately prior to the word "demand" and immediately subsequent to the word "demand" the comma is deleted and the following words are added:  "therefor, an amount in United States dollars equal to the Dollar Equivalent of".  The first two clauses of the second sentence (but no other clauses therein) are revised to read as follows:  "Amounts payable under this subparagraph 10(e) and subparagraph 10(c) hereof shall be paid in United States dollars to the Trustee by the Borrower on and as of the date of any demand therefor, together with interest thereon in United States dollars from the date such amounts were paid by the Trustee (including, where applicable, Dollar Equivalents thereof) to the date of the repayment of such amounts to the Trustee,".

8.    Section 11 of the Agreement is amended so that the second and third sentences read as follows:

"In addition, the Borrower shall reimburse the Trustee in United States dollars for the Dollar Equivalent of any loss, including interest and/or penalties, incurred by the Trustee by reason of the Borrower's failure to pay all such taxes and costs, as of the date of the incurrence of any such loss by the Trustee.  Except as otherwise expressly provided in paragraph 10 hereof, the Borrower shall pay the Trustee interest in United States dollars on any and all amounts (including, where applicable, Dollar Equivalents thereof) not paid when due hereunder from the date due until paid at the current daily average offered rate for federal funds."

9.    Section 13 of the Agreement is amended by adding the following sentences:

"Without limiting the foregoing, if, under any applicable law and whether pursuant to a judgment against

CONFIDENTIAL                    JPM-2004 0032067

5

the Borrower or the liquidation, bankruptcy or analogous process of the Borrower or for any other reason, any amount due to the Trustee hereunder or in respect of any Loan is paid in a currency other than United States dollars, then to the extent that the payment actually received by the Trustee (when converted into a Dollar Equivalent on the first day after the date of payment on which it is practicable for the Trustee to effect the conversion) falls short of the amount due hereunder or under the terms of the relevant Loan, the Borrower shall, as a separate and independent obligation, indemnify the Trustee and hold the Trustee harmless against the amount of such shortfall."

10.   Section 14 of the Agreement is amended as follows:

"14.  Notices, Deliveries, etc.  All oral notices specified herein shall be given in person or by telephone, if to the Trustee, to Mr. Kevin Burke at the address for the Trustee specified below or at telephone number (212) 223-6076 and, if to the Borrower, to Mr. Alan Best at the address for the Borrower specified below or at telephone number (212) 577-5712, or to such other person at such other address or telephone number as either party may designate by written notice to the other hereunder.  All other notices and communications hereunder shall be in writing and delivered by hand or mailed by certified or registered mail, if to the Trustee, to The Chase Manhattan Bank (National Association), 410 Park Avenue, 17th Floor, New York, New York 10022, Attention:  Securities Lending Division, Mr. Kevin Burke, and, if to the Borrower to Shearson Lehman Hutton, Inc., 14 Wall Street, 10th Floor, New York, New York 10005, Attention:  Mr. Alan Best, or at such other address as either party may designate by written notice to the other hereunder.  Such other notices and communications hereunder may also be given by telegram confirmed by certified or registered mail.  Deliveries of Loaned Securities and Collateral and payments due hereunder or in respect of any Loan may be made in any manner to any designee of the Borrower or the Trustee, as the case may be, upon agreement of the other party as evidenced in the relevant Loan confirmation."

11.   Section 15 of the Agreement is amended by inserting in the third sentence thereof the words "internal substantive" after the words "in accordance with the".

CONFIDENTIAL

JPM-2004 0032068

6

12.    This Addendum is dated November 30, 1988.

SHEARSON LEHMAN HUTTON, INC.

By _____
    Title:

THE CHASE MANHATTAN BANK
(NATIONAL ASSOCIATION),
as trustee or managing agent

By _____
    Title: