WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## REPLY IN SUPPORT OF THE PLAN ADMINISTRATOR'S
## FOUR HUNDRED EIGHTY-THIRD OMNIBUS OBJECTION TO CLAIMS

# TABLE OF CONTENTS

Page

REPLY ..................................................................................................................................1

I.   Claims Can Be Disallowed at a Sufficiency Hearing Without Discovery .........................1

II.  All Claims Must Be Disallowed:  Section 29 of the PB Agreement Exculpates the
     Chapter 11 Estates From All Liability Asserted in the Claims ...........................................6

III. Even if Section 29 Did Not Exist, the Contract Claims Must Be Disallowed and
     Expunged ..........................................................................................................................10

     A.   The Chapter 11 Estates Are Not Jointly and Severally Liable for LBI's
          Obligations ...............................................................................................................10

     B.   The Chapter 11 Estates Did Not Breach Section 3 of the PB Agreement .............12

     C.   The Chapter 11 Estates Are Not Liable for LBI's Alleged Failure to Hold
          Stonehill's Securities in Accordance with Article 8 of the UCC ...........................14

     D.   Stonehill Released the Contract Claims Under Section 30 of the PB
          Agreement .................................................................................................................17

IV.  Even if Section 29 Did Not Exist, the Negligent Misrepresentation Claims Must
     Be Disallowed and Expunged ...........................................................................................19

     A.   Stonehill Failed to and Cannot State a Claim for Negligent
          Misrepresentation .....................................................................................................19

     B.   Stonehill Released the Negligent Misrepresentation Claims Under Section
          30 of the PB Agreement ...........................................................................................20

     C.   New York Law Bars the The Negligent Misrepresentation Claims ......................22

V.   Even if Section 29 Did Not Exist, the Fraud Claims Should Be Disallowed and
     Expunged. ..........................................................................................................................23

     A.   Stonehill Failed to and Cannot Plead a Claim for Fraud .......................................23

          i.    Stonehill failed to plead reasonable reliance .............................................24

          ii.   Stonehill failed to specifically allege the fraud perpetrated by each
                Chapter 11 Estate .......................................................................................27

VI.  The Negligent Misrepresentation and Fraud Claims Are Barred Because They Are
     Duplicative of the Contract Claims ..................................................................................28

     A.   Stonehill Failed to Demonstrate a Legal Duty Separate and Apart From
          the Duty to Perform Under the PB Agreement .......................................................28

     B.   The Alleged Misrepresentations Are Not Collateral or Extraneous to the
          PB Agreement ...........................................................................................................28

WEIL\95201471\15\58399.0011

C.    The Negligent Misrepresentation and Fraud Claims Should Be Disallowed As Duplicative of the Contract Claims Even If the Court Determines that Stonehill Has No Liability for the Contract Claims................................................30

CONCLUSION...........................................................................................................................31

WEIL:\95201471\15\58399.0011

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abundance Partners LP v. Quamtel, Inc.*,
   840 F. Supp. 2d 758 (S.D.N.Y. 2012)..............................................................................10, 12

*Acito v. Imcera Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995)..................................................................................................3

*Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*,
   580 F. Supp. 2d 285 (S.D.N.Y. 2008)..............................................................................21

*Andino v. Fischer*,
   698 F. Supp. 2d 362 (S.D.N.Y. 2010)..............................................................................2

*Atmosphere Sciences, LLC v. Schneider Advanced Techs., Inc.*,
   No. 12-3223, 2012 WL 4240759 (S.D.N.Y. Sept. 19, 2012) ................................................29

*Atmosphere Sciences, LLC v. Schneider Advanced Technologies, Inc.*,
   No. 12-3223, 2013 WL 1719174 (S.D.N.Y. Apr. 13, 2013) ................................................29

*Baker v. Andover Assocs. Mgmt. Corp.*,
   30 Misc. 3d 1218(A), (N.Y. Sup. Ct. 2009)..............................................................................22

*Bayerische Hypo-Und Vereinsbank AG v. Banca Nazionale Del Lavoro, S.p.A. (In re Enron Corp.)*,
   292 B.R. 752 (Bankr. S.D.N.Y. 2003) ................................................................................21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................16

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 12-2497-BK, 2014 WL 6863608 (2d Cir. Dec. 8, 2014) ...........................................17, 21

*Bi-Lo, LLC v. United Food & Commerc. Workers Unions & Emp'rs Pension Fund (In re BI-LO, LLC)*,
   No. 11-00177, 2011 U.S. Dist. LEXIS 112960 (D.S.C. Sept. 30, 2011)..............................3, 4

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
   866 F. Supp. 2d 257 (S.D.N.Y. 2012)..............................................................................20

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
   949 F. Supp. 2d 486 (S.D.N.Y. 2013)..............................................................................3

iv

*Bridgestone/Firestone, Inc. v. Recovery Credit Serves. Inc.*,
    98 F.3d 13 (2d Cir. 1996)........................................................................................28

*Chase Invs., Ltd. v. Kent*,
    681 N.Y.S.2d 319 (N.Y. App. Div. 1998) ............................................................26

*Chase v. United Hospital*,
    60 A.D. 2d 558 (N.Y. App. Div. 1977) ................................................................30

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)....................................................................................16

*In re Crude Oil Commodity Litig.*,
    2007 WL 1946552 (S.D.N.Y. June 28, 2007) ......................................................27

*In re DJK Residential LLC*,
    416 B.R. 100 (Bankr. S.D.N.Y. 2009) ...................................................................3

*Doehla v. Wathne Ltd.*,
    No. 98-6087, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999)....................................24

*Druyan v. Jagger*,
    508 F. Supp. 2d 228 (S.D.N.Y. 2007)...................................................................25

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995)....................................................................................23

*Gens v. Resolution Trust Corp*,
    112 F.3d 569 (1st Cir. 1997)...............................................................................3, 4

*Gilbert v. Smedley*,
    612 S.W.2d 270 (Tex. Civ. App. 1981) .................................................................7

*Gotham Boxing Inc. v. Finkel*,
    856 N.Y.S.2d 498 (N.Y. Sup. Ct. 2008) ........................................................30, 31

*Guterman v. RGA Accessories, Inc.*,
    196 A.D. 2d 785 (N.Y. App. Div. 1993) ..............................................................30

*Halperin v. eBanker USA.com Inc.*,
    295 F.3d 352 (2d Cir. 2002)..................................................................................25

*Herrington v. Verrilli*,
    151 F. Supp. 2d 449 (S.D.N.Y. 2001)...................................................................13

*Hunt v. Alliance N. Am. Gov. Income Trust Inc.*,
    159 F.3d 723 (2d Cir. 1998)............................................................................24, 25

v

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  277 F.3d 8 (2d Cir. 2000) ................................................................................................ 19

*Illinois Health Care Ass'n v. Illinois Dep't of Public Health*,
  879 F.2d 286 (7th Cir.1989) ........................................................................................... 16

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
  157 F.3d 933 (2d Cir. 1983) ............................................................................................ 20

*Int'l Oil Field Supply Servs. Corp. v. Fadeyi*,
  825 N.Y.S.2d 730 (N.Y. App. Div. 2006) ...................................................................... 25

*Kel Kim Corp. v. Cent. Mkts., Inc.*,
  70 N.Y.2d 900 (1987) ........................................................................................................ 8

*Krantz v. Chateau Stores of Can., Ltd.*,
  256 A.D.2d 186 (N.Y. App. Div. 1998) .......................................................................... 30

*Kranze v. Cinecolor Corp.*,
  96 F. Supp. 728 (S.D.N.Y. 1951) .................................................................................... 11

*In re Lehman Bros. Holdings Inc.*,
  515 B.R. 171 (Bankr. S.D.N.Y. 2014) (Chapman, J.) .................................................. 2, 6

*In re Lehman Bros. Holdings Inc.*,
  No. 08-13555, 2014 WL 2766164 (Bankr. S.D.N.Y. June 18, 2014) (Chapman, J.) ...... 2, 6, 15

*Lemus v. Manhattan Car Wash, Inc.*,
  No. 06 CIV. 15486 (MHD), 2010 WL 1372705 (S.D.N.Y. Mar. 26, 2010) ................... 11

*In re LightSquared, Inc.*,
  504 B.R. 321 (Bankr. S.D.N.Y. 2013) ....................................................................... 23, 27

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007) ............................................................................... 19, 20

*Maung Ng We v. Merrill Lynch & Co.*,
  No. 99-9687, 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000) ..................................... 14, 15

*Merrill Lynch & Co v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) ............................................................................................ 29

*In re MF Global*,
  515 B.R. 434 (Bankr. S.D.N.Y. 2014) ................................................................ 7, 9, 10, 19

*Miner v. New York State Dept. of Correction Servs.*,
  479 N.Y.S.2d 703 (N.Y. Sup. Ct. 1984) ......................................................................... 16

vi

*O'Connor v. Readers Digest Ass'n, Inc.*,
   No. 92 Civ. 7414 (CLB), 1993 WL 291372 (S.D.N.Y. Mar. 10, 1993) ...........................25, 26

*OP Solutions, Inc. v. Crowell & Moring, LLP*,
   900 N.Y.S.2d 48 (App. Div. 2010) .......................................................................................28

*Osborn v. Cline*,
   263 N.Y. 434 (N.Y. Ct. App. 1934)......................................................................................13

*Papa-June's Music Inc. v. McLean*,
   921 F.Supp. 1154 (S.D.N.Y. 1996) .....................................................................................30

*In re Peters' Estate*,
   336 N.Y.S.2d 712 (N.Y. Sur. Ct. 1972).................................................................................16

*Phillips, P.R. Core, Inc. v. Tradax Petroleum, Ltd.*,
   782 F.2d 314 (2d Cir. 1985)..................................................................................................8

*Pivar v. Graduate School of Figurative Art of the N.Y. Acad. of Art*,
   290 A.D.2d 212 (N.Y. App. Div. 2002) ...............................................................................13

*In re Residential Capital, LLC*,
   No. 12-12020, 2014 WL 5358762 (Bankr. S.D.N.Y. Oct. 20, 2014) .......................................3

*Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co*,
   2001 WL 36405059 (N.Y. Sup. May 17, 2001), *aff'd Retty Fin., Inc. v. Morgan Stanley Dean
   Witter & Co.*, 740 N.Y.S.2d 198 (App. Div. 2002) ........................................................18, 21

*Richbell Info. Servs. v. Jupiter Partners, L.P.*,
   309 A.D.2d 288 (App. Div. 2003) ...................................................................................30, 31

*Saltz v. First Frontie, LP*,
   782 F. Supp. 2d 61 (S.D.N.Y. 2010)....................................................................................22

*In re Shulman Transp. Enters.*,
   744 F.2d 293 (2d Cir. 1984).................................................................................................27

*In re South African Apartheid Litig.*,
   633 F. Supp. 2d 17 (S.D.N.Y. 2009)....................................................................................15

*In re Spiegel, Inc.*,
   337 B.R. 821 (Bankr. S.D.N.Y. 2006)...................................................................................2

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2000).................................................................................................18

*In re Today's Destiny, Inc.*,
   No. 05-90080, 2008 WL 5479109 (Bankr. S.D. Tex. Nov. 26, 2008) ......................................5

WEIL:\95201471\15\58399.0011

*Tradewell Foods v. New York Credit Men's Adjustment Bureau,*
    179 F.2d 567 (2d Cir. 1950)..................................................................................11, 12

*In re Veeco Instruments, Inc. Sec. Litig.,*
    235 F.R.D. 220 (S.D.N.Y. 2006) ..........................................................................25

*Vena v. Vena,*
    899 N.E.2d 522 (Ill. App. Ct. 2008) ....................................................................10

*Webb v. Hardage Corp.,*
    471 So. 2d 889 (La. Ct. App. 1985)........................................................................7

*Weiss v. TD Waterhouse,*
    847 N.Y.S.2d 94 (App. Div. 2007) .......................................................................18

**Statutes**

11 U.S.C. § 105..................................................................................................................2

11 U.S.C. § 502(b)(1) .......................................................................................................5

**Other Authorities**

FED. R. BANKR. P. §§ 7009, 7012, 9014 ...................................................................... 1-5

FED. R. CIV. P. §§ 9(b), 12(b)(6) ........................................................................... *passim*

MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2002)..................................17

RESTATEMENT (SECOND) OF CONTRACTS § 288 (1981)................................................11

RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. f(2) ...................................................15

RESTATEMENT (THIRD) OF AGENCY § 3.04 (2006)......................................................16

*Third Supp. Order Granting Debtors' One Hundred Seventeenth Omnibus Obj. to Claims, In re Lehman Bros. Holdings Inc.*, No. 08-13555, Nov. 25, 2012 [ECF No. 41278] ....................15

*Third Supp. Order Granting Debtors' One Hundred Seventy-Third Omnibus Obj. to Claims, In re Lehman Bros. Holdings Inc.*, No. 08-13555, Nov. 25, 2012 [ECF No 41280]..................15

WEIL:\95201471\15\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors for the entities in the above-referenced chapter 11 cases, files this reply to the

response [ECF No. 47388] (the "Response") of Stonehill Institutional Partners, L.P. and

Stonehill Offshore Partners Limited (together, "Stonehill") to the Plan Administrator's Four

Hundred Eighty-Third Omnibus Objection to Claims (No Liability Claims) [ECF No. 46785]

(the "Objection")[1] and  respectfully represents as follows:

## REPLY

        1.      Accepting as true all of Stonehill's allegations, Stonehill failed to state

valid claims against the Chapter 11 Estates.  Accordingly, the Claims, asserting breach of

contract (the "Contract Claims"), negligent misrepresentation (the "Negligent Misrepresentation

Claims"), and fraud (the "Fraud Claims"), must be disallowed and expunged.

## I.   Claims Can Be Disallowed at a Sufficiency Hearing Without Discovery

        2.      The Court has recognized, in a decision disallowing claims in these cases,

that:

> [an] Objection trigger[s] a Sufficiency Hearing, as defined in the Court's April 19,
> 2010 Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule
> 9014, and General Order M-390 Authorizing the Debtors to Implement Claims
> Hearing Procedures and Alternative Dispute Resolution Procedures for Claims
> Against Debtors [ECF No. 8474].  Pursuant to that order, **all hearings to address
> the legal sufficiency of a particular Contested Claim and whether the
> Contested Claim states a claim against the asserted Debtor under
> Bankruptcy Rule 7012 shall be Sufficiency Hearings,** unless the Plan
> Administrator serves the holder of a contested claim with a Notice of ADR
> Procedure or Notice of Merits Hearing.  **The standard of review for a**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Objection.

**Sufficiency Hearing is equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim.**

*In re Lehman Bros. Holdings Inc.*, 515 B.R. 171, 174 (Bankr. S.D.N.Y. 2014) (Chapman, J.) (mem. decision sustaining Plan Administrator's objection to claims under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)")) (emphasis added) (internal citations and quotation marks omitted); *accord In re Lehman Bros. Holdings Inc.*, No. 08-13555, 2014 WL 2766164, at *1–2 (Bankr. S.D.N.Y. June 18, 2014) (Chapman, J.); *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors* [ECF No. 8474] (the "Claims Procedures Order"); *see also In re Spiegel, Inc.*, 337 B.R. 821, 824–25 (Bankr. S.D.N.Y. 2006) (applying Rule 12(b)(6) to a claims objection pursuant to Bankruptcy Rule 9014(c)).

3.    Here, the Objection triggered a Sufficiency Hearing, and there is no doubt that the Court can and must disallow and expunge the Claims to the extent Stonehill failed to meet the Rule 12(b)(6) standard, *i.e.*, to state a claim upon which relief may be granted.  Under the Rule 12(b)(6) standard, the Court must accept the factual allegations in the Claims as true and draw all reasonable inferences in Stonehill's favor.  However, factual allegations "must be supported by more than mere conclusory statements. . . . [They] must be sufficient to raise a right to relief above the speculative level and provide more than a formulaic recitation of the elements of a cause of action." *Lehman Bros.*, 515 B.R. at 175 (internal citations and quotation marks omitted).  Further, the Court should *not* accept as true "conclusions of law or unwarranted deductions of fact." *Andino v. Fischer*, 698 F. Supp. 2d 362, 375 (S.D.N.Y. 2010).

4.    Stonehill must also meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") with respect to its Negligent Misrepresentation

Claims and Fraud Claims.  *See* FED. R. BANK. P. 9014 (making Bankruptcy Rule 7009, and thus

Rule 9(b), applicable to contested matters); *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,

949 F. Supp. 2d 486, 508 (S.D.N.Y. 2013) ("In assessing claims for negligent misrepresentation,

courts in this district have applied the heightened pleading standards of Rule 9(b).").  As

Stonehill acknowledges, this Court has applied the heightened standards of the Federal Rules of

Civil Procedures (the "Federal Rules") when disallowing proofs of claim.  *See In re Residential*

*Capital, LLC*, No. 12-12020, 2014 WL 5358762, at *6 (Bankr. S.D.N.Y. Oct. 20, 2014) (noting

that the Rule 9(b) standard applies to fraud claims in bankruptcy); *In re DJK Residential LLC*,

416 B.R. 100, 106–107 (Bankr. S.D.N.Y. 2009) (disallowing claims for failure to meet the Rule

9(b) standard).

       5.     Rule 9(b) requires a claimant to state with particularity the circumstances

constituting fraud.  FED. R. CIV. P. 9(b); *see also* FED. R. BANKR. P. 7009.  In order to meet the

particularity requirement of Rule 9(b), a claimant must allege scienter and also "(i) specify the

statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and

when the statements were made, and (4) explain why the statements were fraudulent."  *Acito v.*

*Imcera Group, Inc.,* 47 F.3d 47, 51 (2d Cir. 1995).

       6.     To avoid the consequences of failing to comply with the heightened

pleading standards of Rule 9(b), Stonehill first argues that the standards *do not* apply; it then

argues that the standards *should not* apply.  Stonehill's arguments fail for any of the following

four independent reasons.

       7.     First, Stonehill cites no case upon which it can rely.  The *dicta* cited by

Stonehill arose in contexts other than the context here: an objection to disallow a claim for

failure to state a claim.  Indeed, neither *In re BI-LO, LLC* nor *Gens v. Resolution Trust Corp.*

3

implicate or discuss Rule 9(b) or Rule 12(b)(6), and neither the procedural posture nor facts of

those cases are analogous. *See Bi-Lo, LLC v. United Food & Commerc. Workers Unions &*

*Emp'rs Pension Fund (In re BI-LO, LLC)*, No. 11-00177, 2011 U.S. Dist. LEXIS 112960

(D.S.C. Sept. 30, 2011); *Gens v. Resolution Trust Corp*, 112 F.3d 569 (1st Cir. 1997).[2]

8.      Second, Stonehill attempts to distinguish between the standard to apply

to its *filing* of proofs of claim, which would be sufficient to be deemed allowed *if no party in

interest objected*, and the standard to apply to the Court's resolution of the current contested

objection. (Resp. ¶¶ 23-29.)  But such a distinction is irrelevant because the Plan Administrator

did object, the current proceeding is a contested matter, and Stonehill concedes that Federal Rule

standards apply in contested matters pursuant to Bankruptcy Rules 7009 and 9014.  (Resp. ¶ 27.)

Stonehill must now meet the pleading standards of the Federal Rules, including Rule 9(b), at the

Sufficiency Hearing.

9.      Third, Stonehill has no basis for its suggestion that a more "substantive

objection" is required for the Court to disallow the Claims.  (*See* Resp. ¶¶ 27, 29.)  Bankruptcy

courts in the Southern District of New York do not differentiate between substantive objections

and procedural objections. *Cf.* BANKR. D. DEL. R. 3007-1(D) (drawing a distinction between

---

[2] The court in *BI-LO* considered only whether a claim for pension fund withdrawal liability had been asserted before or after a bar date.  2011 U.S. Dist. LEXIS 112960 at *24–25.  The court found it had been asserted before, where the proof of claim "assert[ed] a claim for any withdrawal liability under ERISA," where the debtors "filed several disclosure statements recognizing the existence of the Pension Fund Claim, the amount of liability asserted against the bankruptcy estates, and the nature of that liability as one for withdrawal liability under ERISA," where the debtors raised the issue of the bar date more than a year after it filed a separate objection to the merits of the claim (which objection was pending and was in another district), and where the debtors raised the issue of the bar date only belatedly in a reply in further support of the initial claim objection. *Id.* at *7–8.  The issue considered by the court in *Gens* was whether a creditor was entitled to amend a claim shortly after the bar date.  112 F.3d at 571 .  The court found that the amendment was proper under the circumstances of that case, where the amendment "*in no sense affected the validity of the claim itself.*" *Id.* at 575 (emphasis added).  The amendments merely permitted a party who was "duly authorized to file the original [proof of claim]" to disclose its "agency status" for another party, to correct the classification of the claim from secured to unsecured, and to correct the date of the relevant note, where the debtor "had every reason to know that the original characterization of the POC, as 'secured,' was mistaken," and "the mistaken date assigned to the underlying debt instrument was a minor defect, given that the Gens Note itself was attached to the POC." *Id.* at 575 and 575 n. 9.

4

substantive and procedural objections).  Thus, in this district, *any* objection to a proof of claim

commences a contested matter governed by Bankruptcy Rules 7009 and 9014.  Moreover, even

if the Court were to distinguish between substantive and procedural objections, it would find that

the Objection undoubtedly qualifies as a substantive objection.  The Objection raises numerous

substantive bases for disallowance of the Claims pursuant to section 502(b)(1) of the Bankruptcy

Code, including that:

> a.  Stonehill released the Chapter 11 Estates from all liability asserted in the Claims;
>
> b.  the Chapter 11 Estates are not jointly and severally liable for LBI's contractual obligations;
>
> c.  Stonehill failed to state a breach of contract claim;
>
> d.  Stonehill failed to state a tort claim; and
>
> e.  Stonehill's tort claims are barred because they are duplicative of Stonehill's breach of contract claims.

Thus, the Objection is thus clearly distinguishable from the objection considered by the

Bankruptcy Court for the Southern District of Texas in its unpublished decision in *In re Today's

Destiny, Inc.*, No. 05-90080, 2008 WL 5479109 (Bankr. S.D. Tex. Nov. 26, 2008), the case cited

by Stonehill. (Resp. ¶ 27.)  The objection in *Today's Destiny* was an omnibus objection filed *by

a group of creditors* to over 300 proofs of claim of the debtor's numerous customers.  *Id*. at *1. It

raised procedural bases for disallowance, including that the claims were late-filed, duplicative,

and asserted with the incorrect priority, and limited substantive bases which were not tailored to

particular claims.  In that circumstance, the court found that the objectors had not rebutted

certain of the claims' *prima facie* validity sufficient to trigger compliance with Bankruptcy Rule

7009.  *Id*. at *9.

> 10.    Fourth, Stonehill suggests that the Federal Rules should not apply until

after Stonehill has been granted an opportunity to take discovery.  As noted above, Stonehill's

WEIL:\95201471\15\58399.0011

argument is inconsistent with the express terms of the Claims Procedures Order, the Bankruptcy Rules, the Federal Rules, and this Court's application of the requisite pleading standards to disallow claims against the Chapter 11 Estates prior to granting discovery. *See Lehman Bros.*, 515 B.R. at 174 (mem. decision); *Lehman Bros.* 2014 WL 2766164, at *1–2 (mem. decision). Application of a motion to dismiss standard prior to granting discovery facilitates the administration of these Chapter 11 Cases and efficient use of judicial resources. It is also consistent with the general practice of federal courts, which routinely dismiss causes of action for failure to state a claim prior to discovery because, among other things, courts must accept as true all factual allegations contained in a complaint when applying the Rule 12(b)(6) standard.

11.     For all the foregoing reasons, the Federal Rules apply to this matter, and the Claims must be disallowed and expunged because Stonehill failed to state a claim upon which relief can be granted, accepting as true all allegations contained in the Claims and the Response.

## II.     All Claims Must Be Disallowed:  Section 29 of the PB Agreement Exculpates the Chapter 11 Estates From All Liability Asserted in the Claims

12.     Section 29 of the PB Agreement ("Extraordinary Events") exculpates the Chapter 11 Estates from "any loss caused, directly or indirectly, by government restrictions . . . suspension of trading . . . or other conditions beyond Lehman Brothers' control." (PB Agreement § 29.)

13.     Stonehill conceded that its Claims seek "damages . . . representing the diminution in value of the securities held by LBI under the PB Agreement *from the date in which LBI's SIPA Proceeding was commenced* through the date that such securities were returned to [Stonehill]." (Claims ¶ 9 (emphasis added).)  The alleged losses fall squarely within the exculpatory language of section 29, as "loss[es] . . . caused, directly or indirectly, by government

WEIL:\95201471\15\58399.0011

restrictions . . . [or] suspension of trading."  Any loss was caused by SIPA, and the "government

restrictions" requiring the "suspension of trading" and the delayed return of Stonehill's

securities.  *See In re MF Global*, 515 B.R. 434, 441 (Bankr. S.D.N.Y. 2014).  Thus, regardless of

Stonehill's theory of recovery (contract or tort), Stonehill is barred from recovery under the

Claims by the express terms of section 29 of the PB Agreement.

        14.    Citing two cases, Stonehill argues that "a bankruptcy filing is not a 'force

majeure.'"  (Resp. ¶ 62.)  This generic argument must be disregarded, though, because the

Objection cites the commencement of LBI's SIPA Proceeding, and not a chapter 11 filing as the

"force majeure."  (Obj. ¶ 22.)  Further, as Stonehill recognizes, the Court must look at the

language of the specific force majeure clause.  Yet Stonehill ignores *MF Global*, in which this

Court, analyzing a virtually identical provision in the very same type of agreement (a brokerage

agreement), found that the force majeure events were the "government restriction[s]" and

"suspension of trading" caused by the commencement of a SIPA proceeding by the Securities

Investment Protection Corporation.  515 B.R. at 441.  In contrast, the court in *Champlin

Petroleum Co. v. Mingo Oil Producers*, cited by Stonehill, analyzed a much narrower provision

in a different type of agreement; the force majeure clause in that case explicitly excluded events

resulting from financial distress.  628 F. Supp. 557, 560-61 (D. Wyo. 1986).  Stonehill's reliance

on *Webb v. Hardage Corp.*, 471 So. 2d 889 (La. Ct. App. 1985) is also misplaced.  Indeed, in

*Webb*, the court cited to a case in which a bankruptcy filing *was* a force majeure event.  *Id.* at

893 (citing *Gilbert v. Smedley*, 612 S.W.2d 270 (Tex. Civ. App. 1981) (holding that the debtors'

bankruptcy constituted a force majeure event where the appointed receiver "took no action" and

was "uncooperative," preventing the debtors from performing obligations)). The Louisiana state

court in *Webb* simply found that voluntary bankruptcy petitions in that case did not operate as a

force majeure that prevented the parties from operating under particular leases. *Id.* at 894.  In

contrast, in these cases SIPA operated to prevent LBI and the Chapter 11 Estates from

immediately returning Stonehill's securities as Stonehill alleges was required in accordance with

the PB Agreement after the SIPA Commencement Date.[3]

15.    Assuming the SIPA Proceeding is a force majeure, Stonehill next argues,

to circumvent its exculpation of "Lehman Brothers" in section 29, that the Claims (contract and

tort) are "based on" or "were directly and proximately caused by" the Chapter 11 Estates'

prepetition actions.  (Resp. ¶¶ 62, 63.)  Neither would preclude the alleged losses from *also*

being based on or "indirectly caused by government restrictions . . . suspension of trading . . . or

other conditions beyond Lehman Brothers' control."  Further, Stonehill's argument

mischaracterizes section 29's exculpation.  Section 29 does not exculpate the Chapter 11 Estates

from particular *causes of action*.  Rather, section 29 prohibits the collection of particular *types of

damage*: "*any loss* caused . . . by government restrictions [or] suspension of trading."  There can

be no doubt that Stonehill's alleged *losses*, representing the diminution in value of its securities

"*from the date in which LBI's SIPA Proceeding was commenced* through the date that such

securities were returned to [Stonehill]," were caused, "directly or indirectly," by "government

restrictions" and "suspension of trading."[4]  Accordingly, *all of the losses sought by the Claims*

---

[3] Stonehill relies on *Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902-03 (1987) for the proposition that catchall clauses in force majeure provisions (*e.g.*, clauses involving events "beyond the control" of a party) should "not be given expansive meaning" and *Phillips, P.R. Core, Inc. v. Tradax Petroleum, Ltd.*, 782 F.2d 314, 319 (2d Cir. 1985) for the proposition that the Plan Administrator bears the burden of demonstrating the application of a force majeure provision.  (Resp. ¶ 62, n.20.)  As explained above, the Plan Administrator does not rely on a catchall clause, but rather on specifically enumerated force majeure events – "government restrictions" and a "suspension of trading" – and the Plan Administrator has met its burden of demonstrating that these events operate to exculpate the Chapter 11 Estates from liability for the Claims.

[4] Stonehill cannot credibly argue that its losses were caused exclusively by actions of the Chapter 11 Estates, and not "directly or indirectly" by "government restrictions" or "suspension of trading."  Stonehill has conceded that certain of Stonehill's securities actually increased in value after the SIPA Commencement Date, while others decreased in value.  *See* Claims at Exhibit C.  This demonstrates that "government restrictions" and "a suspension of trading" led

8

*are those that Stonehill is prohibited from collecting under 29.*  Section 29 does not permit the collection of such *losses* under any theory or cause of action.

16.    In an attempt to exempt its Fraud Claims alone (but not its Contract Claims or Negligent Misrepresentation Claims[5]) from the exculpation in section 29, Stonehill argues that section 29 cannot exculpate the Chapter 11 Estates from claims for gross negligence or willful misconduct under New York law.   But the Court's decision in *MF Global* demonstrates that this argument fails and that the Fraud Claims nonetheless may be disallowed. 515 B.R. at 440-42.  In *MF Global*, brokerage claimants like Stonehill alleged that a debtor's gross negligence and willful misconduct led to the commencement of a SIPA proceeding and was, therefore, the cause of their diminution claims.  The Court there rejected the claimants' attempt to insert an exception for gross negligence and willful misconduct into the force majeure clause that otherwise prohibited the collection of diminution claims.  Indeed, the Court held that the customers' losses were caused not by the alleged gross negligence and fraudulent misconduct, but by "the freezing of [the] customers' accounts; an automatic result from the commencement of the case and a cause beyond [MF Global's] control."  *MF Global*, 515 B.R. at 441.

17.    Stonehill's attempts to distinguish *MF Global* are unsuccessful.  The fact that the claimants in *MF Global* asserted their diminution claims against only a broker-dealer in a SIPA proceeding – and not, as Stonehill did, against bankrupt affiliates of the broker-dealer – is a distinction without a difference.  Stonehill's selection of multiple defendants does not change

---

to the *losses* Stonehill seeks: fluctuations in the value of its securities subsequent to the freezing of customer accounts at LBI.

[5] As set forth in paragraphs 38-39 below, the Negligent Misrepresentation Claims do not allege facts to support a finding of "reckless indifference" and, therefore, the Negligent Misrepresentation Claims are not claims for "gross negligence."

WEIL:\95201471\15\58399.0011

the result.  The holding in *MF Global* was based on the plain terms of the brokerage agreement,

not any particular differences between SIPA and chapter 11 rules.  Here, the terms of the PB

Agreement equally exculpate both the Chapter 11 Estates and LBI, the broker-dealer in the

separate SIPA Proceeding.  In both *MF Global* and here, the claimants' alleged losses were

caused by their inability to access their brokerage positions.  Finally, there is no import to the

fact that the claims in *MF Global* were governed by Illinois law and the Claims by New York

law, as both laws contain the same limitations on exculpations, *see, e.g.*, *Vena v. Vena*, 899

N.E.2d 522, 531 (Ill. App. Ct. 2008), and this limitation did not prevent the Court in *MF Global*

from disallowing diminution claims under the plain terms of the applicable brokerage

agreements.  *MF Global*, 515 B.R.  at 441.

### III.  Even if Section 29 Did Not Exist, the Contract Claims Must Be Disallowed and Expunged

#### A.  *The Chapter 11 Estates Are Not Jointly and Severally Liable for LBI's Obligations*

18.    The express terms of the PB Agreement make clear that the parties

intended that LBI, and not the Chapter 11 Estates, would be liable for prime brokerage

obligations: In section 21 of the PB Agreement, "LBI," and only "LBI," promised to perform the

obligations of prime broker.  (*See* Obj. ¶¶ 26-30.)  Further, the Court may take judicial notice

that LBI was a registered broker-dealer as evidenced by the commencement of the SIPA

Proceeding, whereas the Chapter 11 Estates were not registered broker-dealers, as evidenced by

the commencement of the Chapter 11 Cases.  Thus, the parties could not have intended for any

entity other than LBI to have assumed the obligations of prime broker.  Accordingly, under well-

settled New York law, only LBI, and not the Chapter 11 Estates, is liable for LBI's alleged

breach of its obligation to promptly return Stonehill's securities.  *See Abundance Partners LP v.

Quamtel, Inc.*, 840 F. Supp. 2d 758, 767 (S.D.N.Y. 2012) ("Where the plain language of a

10

contract signed by multiple parties indicates that only one party has assumed an obligation, only that party will be held liable for a failure to perform."); *Kranze v. Cinecolor Corp.*, 96 F. Supp. 728, 729 (S.D.N.Y. 1951) ("Where, as here, two or more parties to a contract promise separate performances, each party is bound only for the performance he promised.").

19.    Stonehill incorrectly argues that the Chapter 11 Estates are presumed to be jointly liable for the prime brokerage obligations undertaken by LBI alone.  (Resp. ¶¶ 48–49.) The presumption that contractual rights and responsibilities are joint in a multiparty contract applies only when two parties promise the *same performance*.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 288 (1981). ("The question whether two promisors promise the same or separate performances is distinct from the question whether two promisors of the *same performance* are bound by 'joint' or by 'several' duties or by both, but the two questions are sometimes confused.") (emphasis added); *see also Lemus v. Manhattan Car Wash, Inc.*, No. 06 CIV. 15486 (MHD), 2010 WL 1372705, at *7 (S.D.N.Y. Mar. 26, 2010) ("[W]hen multiple promisors agree to pay a stated sum to the same promisee, they will be jointly liable unless the promisors unambiguously expressed a contrary intention.").  Presuming, as Stonehill does, that LBI and the Chapter 11 Estates are jointly liable for their separate obligations ignores the parties' express intentions: that LBI, and LBI alone, promised to "act as prime broker for [Stonehill]."[6]  (PB Agreement § 21.)

20.    Without citing a single authority, Stonehill separately argues that the Chapter 11 Estate's should be liable for LBI's obligations under the PB Agreement simply because the Chapter 11 Estates enjoyed benefits under the PB Agreement.  (Resp. ¶ 52.)  This

---

[6] Even if there were a presumption that LBI and the Chapter 11 Estates were jointly and severally liable (which there is not), this presumption is rebutted by sufficient severing language in the PB Agreement.  In particular, section 21 of the PB Agreement uses the term "LBI" when discussing the prime brokerage obligations, whereas all other sections of the PB Agreement use the terms "Lehman Brothers" or "Lehman Brothers Entities."  *See Tradewell Foods v. New York Credit Men's Adjustment Bureau*, 179 F.2d 567, 569 (2d Cir. 1950).

argument also lacks merit and is inconsistent with the well-settled law in New York that each

party to a contract is liable only for its promised performance. Indeed, parties routinely limit

their liability under a multiparty contract despite reaping significant benefits therefrom. *See,

e.g.*, *Tradewell Foods*, 179 F.2d at 569 (debtor was not liable for payment obligations of its

officers, even though the debtor was a beneficiary of, and party to, the applicable agreement);

*Abundance Partners*, 840 F. Supp. 2d at 763, 768 (holding that parent company was not liable

for its wholly-owned subsidiary's breach of a loan agreement, despite parent company being a

party to the contract and ultimate beneficiary of the loan to the subsidiary). Moreover,

Stonehill's allegation that the PB Agreement was foisted upon Stonehill as a "form agreement"

presented on a "take it or leave it" proposition highlights the lack of liabilities undertaken by the

Chapter 11 Estates. (Resp. ¶ 61.) Indeed, the plain terms of the PB Agreement reveal that the

Chapter 11 Estates (and all of their affiliates, officers, directors, agents, and employees, among

others) were made parties to the PB Agreement in order to obtain benefits and protections from

various provisions, and not to undertake liabilities. (*Compare, e.g.*, PB Agreement § 21

(discussing the obligations of "LBI") *with* PB Agreement §§ 4-5, 23, 27-30 (granting various

rights and limitations of liabilities to "Lehman Brothers.")

   B.   *The Chapter 11 Estates Did Not Breach Section 3 of the PB Agreement*

          21.     Stonehill identifies section 3 of the PB Agreement as the only provision

that the Chapter 11 Estates (as opposed to LBI) allegedly breached. According to Stonehill,

paragraph 3 imposes upon each Chapter 11 Estate the obligation of a bailee to promptly return

Stonehill's securities. (Resp. ¶¶ 55-56.) This argument fails as a matter of law.

          22.     The PB Agreement does not establish an express bailor-bailee relationship

between Stonehill and the Chapter 11 Estates. Section 3 of the PB Agreement states, in relevant

part, that

> Assets held by or through any Lehman Brothers Entity are **held** as collateral **by** such **Lehman Brothers Entity as** agent and **bailee for itself and all other Lehman Brothers Entities** and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without [Stonehill's] further consent.

(PB Agreement § 3 (emphasis added).) Thus, section 3 of the PB Agreement does *not* provide that any Lehman Brothers Entity shall act as bailee for Stonehill. Instead, each Lehman Brothers Entity that held Stonehill's securities did so as bailee solely for "itself and all other Lehman Brothers Entities." Accordingly, the Chapter 11 Estates cannot be liable for breach of an express bailment agreement.

23. Further, the Chapter 11 Estates cannot be liable for a breach of any implied contract to act as bailees of Stonehill's securities. "It is essential to a finding of bailment that the bailor's property be taken into the possession of the bailee, so that the bailee is responsible for its care and custody." *Herrington v. Verrilli*, 151 F. Supp. 2d 449, 457 (S.D.N.Y. 2001) (citing *Osborn v. Cline*, 263 N.Y. 434, 437 (N.Y. Ct. App. 1934)); *see also Pivar v. Graduate School of Figurative Art of the N.Y. Acad. of Art*, 290 A.D.2d 212, 212-13 (N.Y. App. Div. 2002) ("It is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment . . . ."). Stonehill does not allege that any of the Chapter 11 Estates ever had possession or custody of Stonehill's securities. To the contrary, Stonehill concedes that its cash and securities were held at and returned by LBI. (Claims ¶ 9 ("[Stonehill seeks] damages . . . representing the diminution in value of the securities held by LBI under the PB Agreement from the date in which LBI's SIPA Proceeding was commenced through the date that such securities were returned to [Stonehill]."); *see also* Claims ¶¶ 6–7.) Therefore, Stonehill has not pled, and cannot plead, an essential element of a claim for breach of an implied bailment, namely, that the Chapter 11 Estates had possession of Stonehill's

13

securities.  Accordingly, Stonehill has failed to state its Contract Claims, and they should be disallowed.

      C.    *The Chapter 11 Estates Are Not Liable for LBI's Alleged Failure to Hold Stonehill's Securities in Accordance with Article 8 of the UCC*

      24.    Stonehill alleges that LBI failed to hold Stonehill's securities in accordance with Article 8 of the UCC and section 3 of the PB Agreement and that the Chapter 11 Estates are liable for this breach because "LBI acted as agent for the [Chapter 11 Estates] under the PB Agreement."  (Resp. ¶ 57.)  This breach of contract claim premised on an agency theory must be dismissed.

      25.    Under New York law, "it is critical to the establishment of an agency relationship that the agent acts subject to the principal's direction and control.  The importance of control by the principal is paramount. There is no agency relationship where the alleged principal has no right of control over the alleged agent."  *Maung Ng We v. Merrill Lynch & Co.*, No. 99-9687, 2000 WL 1159835, at *4 (S.D.N.Y. Aug. 15, 2000) (internal citations and quotations omitted).  An agency-based cause of action that depends upon "conclusory and unsupported allegation[s] of control" should be dismissed under Rule 12(b)(6).  *Id*. at *5.

      26.    Stonehill's only allegation concerning control is the conclusory statement that "*LBHI* had the ability to influence and control LBI, its wholly-owned subsidiary, as well as the other Lehman Entities including with respect to the Lehman Entities' obligation under the [PB Agreement]."  (Claims ¶ 5 (emphasis added).)  Conspicuously absent from this statement is any allegation that the 19 Chapter 11 Estates other than LBHI had control over LBI.  Thus, Stonehill has clearly failed to plead control with respect to these 19 Chapter 11 Estates.  Even with respect to LBHI, Stonehill has failed to sufficiently plead control.  Stonehill sets forth no factual allegations to support LBHI's alleged control over LBI other than the allegation that LBI

WEIL:\95201471\15\58399.0011

was a wholly-owned subsidiary of LBHI.  This allegation of control is insufficient to state an

agency-based claim.  *See Maung*, 2000 WL 1159835, at *5–6 (dismissing claim against

corporate parents where the allegations were, among other things, that the corporate parents

"direct[ed] and control[led]" the agent, who was "their subsidiary."); RESTATEMENT (THIRD)

OF AGENCY § 1.01 cmt. f(2) ("[A] parent corporation is not liable for acts of

its subsidiaries simply because it owns the subsidiary's stock."); *accord In re South African

Apartheid Litig.*, 633 F. Supp. 2d 17, 123 (S.D.N.Y. 2009) (dismissing claim against parent

company (*i.e.*, the alleged principal), even though plaintiffs had alleged that the parent company

played a significant role in directing the subsidiary's business activities).[7]

        27.      Even if Stonehill had sufficiently pled control (which it has not),

Stonehill's claim that LBI breached Article 8 of the UCC and section 3 of the PB Agreement

should be disallowed because Stonehill clearly will be unable to establish that LBI failed to hold

its securities in "a security account protected from [LBI's] other creditors."  (Claims ¶ 10.)  It is

undisputed that Stonehill's customer claims against LBI were satisfied in full.  This means that

Stonehill received the full value of its positions at LBI, measured as of the SIPA Commencement

Date.  The allegation that LBI failed to hold Stonehill's securities in an account protected by

LBI's creditors cannot be squared with the fact that Stonehill's customer claims, and all

customer claims filed against LBI, were satisfied in full.  Indeed, that Stonehill and all customers

of LBI had their customer claims satisfied in full means, by definition, that customer accounts

---

[7] That Stonehill has not and cannot plead a sufficient degree of control to hold LBHI liable for the actions of LBI is consistent with the following observation of the Court: "The LBI estate is being separately administered by Mr. Giddens as SIPA trustee.  The LBHI estate has been separately administered as a Chapter 11 case that resulted in a confirmed plan in December 2011.  The estates are distinct and will always remain so."  Hr'g Tr. 98: 10-16, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Nov. 22, 2013); *accord Third Supp. Order Granting Debtors' One Hundred Seventeenth Omnibus Obj. to Claims, In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Nov. 25, 2013) [ECF No. 41278]; *Third Supp. Order Granting Debtors' One Hundred Seventy-Third Omnibus Obj. to Claims, In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Nov. 25, 2013) [ECF No. 41280].

were protected from LBI's creditors.[8]  Accordingly, Stonehill has failed to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 49 (2d Cir. 1991) (affirming dismissal of claim without leave to replead because plaintiff was unable to allege any facts sufficient to support its claim.); *Illinois Health Care Ass'n v. Illinois Dep't of Public Health,* 879 F.2d 286, 288 (7th Cir.1989) ("Dismissal is proper if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to the relief requested.").

28.    Furthermore, to the extent that any Contract Claims rely on an agency theory, such claims must fail as a matter of law because the Chapter 11 Estates did not have legal capacity to act as Stonehill's prime broker.  An agency relationship cannot exist where the alleged principal does not have legal capacity to act as principal.  In other words, a principal cannot be liable for the actions of its alleged agent where only the agent, and not the principal, had capacity to act.  *See Miner v. New York State Dept. of Correction Servs.*, 479 N.Y.S.2d 703, 704 (N.Y. Sup. Ct. 1984) ("It is a well-settled tenet of the law of agency that a principal may only do through an agent *those things that he may lawfully do personally*.") (emphasis added); *In re Peters' Estate*, 336 N.Y.S.2d 712, 716 (N.Y. Sur. Ct. 1972) (refusing to find an agency relationship on the grounds that a principal "may not create an agent who would have greater power than he himself possesses."); RESTATEMENT (THIRD) OF AGENCY § 3.04 (2006) ("The law applicable to a person that is not an individual governs whether the person has capacity to be a principal in a relationship of agency.").  As noted above, the Court may take judicial notice that the Chapter 11 Estates were not registered broker-dealers.  (*Supra* ¶ 18.)  Thus, as between LBI

---

[8] Contrary to Stonehill's assertion in paragraph 57 of the Response, the Diminution Claims do not evidence LBI's failure to hold Stonehill's securities in a segregated account protected from LBI's creditors.  Rather, the Diminution Claims evidence changes in the market value of Stonehill's securities prior to the date such securities were returned to Stonehill.

and the Chapter 11 Estates, only LBI had capacity to perform prime brokerage functions for

Stonehill, including returning Stonehill's securities upon demand.  Because the Chapter 11

Estates lacked capacity to act as Stonehill's prime broker, they cannot be liable as principal for

LBI's breaches of prime brokerage obligations.  Accordingly, Stonehill's agency-based Contract

Claims must be dismissed for failure to state a claim upon which relief may be granted.

D.  _Stonehill Released the Contract Claims Under Section 30 of the PB Agreement_

29.    Even if Stonehill could, notwithstanding the foregoing, establish valid

Contract Claims against the Chapter 11 Estates (which it cannot), such claims would be barred

by section 30 of the PB Agreement.  Section 30 of the PB Agreement expressly releases the

Chapter 11 Estates from all liability "in connection with the execution, clearing, handling,

purchasing or selling of securities . . . or other action, except for gross negligence or willful

misconduct on Lehman Brothers' part."  (PB Agreement § 30.)

30.    Stonehill argues that section 30 of the PB Agreement is inapplicable to the

Contract Claims because such claims "do not relate to the execution or clearing of trades."

(Resp. ¶ 61.)  But this argument, based on selective excerpts, ignores the rest of the plain

language of section 30, which expressly applies additionally to the "handling, purchasing or

selling of securities . . . or other action . . . ."  It cannot be disputed that the Contract Claims,

which allegedly arise from LBI's failure to promptly return Stonehill's securities, qualify as

claims "in connection with . . . the handling . . . of securities . . . or other action."[9]  (PB

Agreement § 30 (emphasis added).)  Indeed, the phrase "in connection with" has been granted an

expansive meaning by the Second Circuit.  *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 12-

---

[9]  The word "handling" is defined to include: (i) "act[ing] on or perform[ing] a required function with regard to," and (ii) engag[ing] in the buying, selling, or distributing of."  MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2002).  Each of these definitions of "handling" encompasses returning or transferring Stonehill's cash and securities upon demand.

2497-BK, 2014 WL 6863608, at *8 (2d Cir. Dec. 8, 2014) (finding that "in connection with" can

mean "related to" or "associated with").  Stonehill's Contract Claims are also "in connection

with" the "selling of securities" insofar as Stonehill's purported diminution losses were allegedly

caused by Stonehill's inability to sell its securities (assuming Stonehill would have done so) after

the SIPA Commencement Date.  Thus, Stonehill's argument fails under the plain and

unambiguous terms of section 30 of the PB Agreement.  *See Retty Fin., Inc. v. Morgan Stanley*

*Dean Witter & Co*, 2001 WL 36405059 (N.Y. Sup. May 17, 2001) (holding that a clause

virtually identical to section 30 exculpated a broker from breach claims in connection with the

withdrawal of account funds), *aff'd Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*, 740

N.Y.S.2d 198 (App. Div. 2002).

   31.  Stonehill also argues that the exception in section 30 for "gross

negligence" and "willful misconduct" permits the assertion of Contract Claims because

"Stonehill's breach of contract Claims were directly and proximately caused by the Lehman

Entities' fraudulent misrepresentations."  (Resp. ¶ 60.)  This argument also fails, for the

following two independent reasons.

   32.  First, Contract Claims, for breach of contract, require a proof of only three

*prima facie* elements: (i) the existence of a contract, (ii) a breach of the contract, and (iii)

damages resulting from the breach.  *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir.

2000); *Weiss v. TD Waterhouse*, 847 N.Y.S.2d 94, 95 (App. Div. 2007).  The *cause* of a breach

is not a required element of a claim for breach of contract.  Thus, neither "gross negligence" nor

"willful misconduct," which may cause a breach, is an element of a claim for breach.  These

elements are required for tort claims, not contract claims.  Accordingly, section 30 is effective to

preclude any recovery on the Contract Claims.

WEIL:\95201471\15\58399.0011

33.     Second, Stonehill alleges as breaches of contract: "<u>First</u>, . . . that LBI breached its duties under the PB Agreement when it failed to promptly return Stonehill's securities on demand" (Resp. ¶ 54); "<u>Second</u>, . . . the Debtors' breach of their bailee duties" (*id.* ¶¶ 55-56); and "<u>Third</u>, . . . LBI's direct violation of Article 8 of the UCC" (*id.* ¶ 57).  None of these breaches results from an alleged fraudulent misrepresentation.  (*See id*. ¶¶ 20-22 ("Stonehill's Proof of Claim state a *prima facie* claim for breach of contract") (making no reference to or allegation of fraudulent misrepresentation).)  Each results from LBI's failure to properly "handle" Stonehill's securities or take "other action[s]."  (PB Agreement § 30). Liability for each is precisely the type of liability that section 30 of the PB Agreements was intended to cover.  Any other reading of section 30 would render its express terms meaningless. *See MF Global*, 515 B.R. at 441-42.

## IV.  <u>Even if Section 29 Did Not Exist, the Negligent Misrepresentation Claims Must Be Disallowed and Expunged</u>

### A.  <u>*Stonehill Failed to and Cannot State a Claim for Negligent Misrepresentation*</u>

34.     To state a claim for negligent misrepresentation under New York law, the claimant must allege, among other things, that "the defendant had a duty, as a result of a special relationship, to give correct information." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 215 (S.D.N.Y. 2007) (citing *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 277 F.3d 8, 20 (2d Cir. 2000)).  Stonehill attempts to satisfy the "special relationship" requirement on the sole grounds that "the Lehman Entities acted as bailees for Stonehill's cash and securities."  (Resp. ¶¶ 42, 44 (citing Claims ¶ 10).)

35.     Stonehill has not and cannot plead facts to support the existence of a bailment relationship between the Chapter 11 Estates and Stonehill.  As discussed above: the PB Agreement does not establish an express bailor-bailee relationship between Stonehill and the

WEIL:\95201471\15\58399.0011

Chapter 11 Estates (*see* supra ¶¶ 22-23); and Stonehill has not pled, and cannot plead, an

essential element of a claim for breach of an implied bailment because the Chapter 11 Estates did

not have possession of Stonehill's securities (*id.*).   Accordingly, as a matter of law, there was no

"special relationship" between Stonehill and the Chapter 11 Estates based on a bailor-bailee

relationship.   Indeed, Stonehill cannot even plead a special relationship with LBI, as it is well-

settled that "there is no general fiduciary duty inherent in an ordinary broker/customer

relationship."  *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 866 F. Supp. 2d 257, 270

(S.D.N.Y. 2012) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d

933, 940 (2d Cir. 1983)).   For this reason alone, the Negligent Misrepresentation Claims must be

disallowed and expunged.[10]

### B. Stonehill Released the Negligent Misrepresentation Claims Under Section 30 of the PB Agreement

36.     As set forth in the Objection and above, section 30 of the PB Agreement

broadly limits the Chapter 11 Estates' liability "in connection with . . . the execution, clearing,

handling, purchasing or selling of securities . . . or other action . . . ." (PB Agreement § 30.)  This

section also exculpates the Chapter 11 Estates from all liability for the Negligent

Misrepresentation Claims because Stonehill alleges that the purpose of the misrepresentations

was "to induce Stonehill (and the public) to refrain from altering their prime brokerage

relationships with Lehman Brothers."   In other words, accepting Stonehill's allegations as true,

then clearly the purported misrepresentations were "in connection with" (*i.e.*, related to or

---

[10] Reasonable reliance is a separate necessary element of a claim for negligent misrepresentation. *Manhattan Motorcars*, 244 F.R.D. at 215.  Stonehill's failure to plead reasonable reliance, which is discussed below in the section addressing the Fraud Claims, provides an additional and independent basis for disallowing the Negligent Misrepresentation Claims.  (*See infra* ¶¶ 44-49.)

associated with)[11]  the prime brokerage relationship (*i.e.*, "the execution, clearing, handling,

purchasing or selling of securities" for Stonehill).  Further, the purported damages sought by

Stonehill for its Negligent Misrepresentation Claims allegedly resulted from its inability to "sell"

its securities (assuming it would have done so) after the SIPA Commencement Date.  Thus, the

Chapter 11 Estates' liability for the Negligent Misrepresentation Claims is "in connection with"

the "selling" of securities for this additional reason.  Because the Negligent Misrepresentation

Claims fall within the plain and unambiguous terms of section 30, they must be disallowed and

expunged.  *See Retty Fin., Inc.*, 2001 WL 36405059.

37.    Section 30's limited exception for "gross negligence or willful

misconduct," does not save Stonehill's Negligent Misrepresentation Claims from disallowance.

Section 30 does not have an exception for ordinary negligence, and Stonehill's Negligent

Misrepresentation Claims constitute claims for ordinary negligence (as opposed to Stonehill's

Fraud Claims which constitute claims for "willful misconduct").  (Resp. ¶ 36, n. 10).

38.    "[G]ross negligence, when invoked to pierce an agreed-upon limitation of

liability in a commercial contract, must smack of intentional wrongdoing . . . it is conduct that

evinces a reckless indifference to the rights of others."  (Obj. ¶ 37 (citing *Alitalia Linee Aeree

Italiane, S.p.A. v. Airline Tariff Pub. Co.*, 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008).)  "In order

to establish a *prima facie* case in gross negligence, it must be proven by a fair preponderance of

evidence that the party not only acted carelessly in making a mistake, but that it was so

extremely careless that it was equivalent to recklessness."  *Id.* (citing *Bayerische Hypo-Und

Vereinsbank AG v. Banca Nazionale Del Lavoro, S.p.A. (In re Enron Corp.)*, 292 B.R. 752, 767

(Bankr. S.D.N.Y. 2003).

---

[11] (*See supra* ¶ 30 (citing *Madoff*, 2014 WL 6863608, at *8 for the proposition that "in connection with" can mean "related to" or "associated with").)

WEIL:\95201471\15\58399.0011

39.    In support of the Negligent Misrepresentation Claims, Stonehill alleges only that "Lehman Brothers' officers . . . *should have known* that there were substantial risks that Lehman Brothers' liquidity and capital may not continue to support its operations."  (Resp. ¶¶ 36 n. 10, 39 (citing Claims ¶ 17) (emphasis in original).)  (Any suggestion of intentional wrongdoing is subsumed in Stonehill's Fraud Claim, discussed below.)  The failure to apprise oneself of information amounts to ordinary negligence and not "gross negligence"; it does not "smack of intentional wrongdoing" and is not "reckless indifference" as a matter of law.  *See Saltz v. First Frontie, LP*, 782 F. Supp. 2d 61, 75-76 (S.D.N.Y. 2010) (dismissing gross negligence claim because defendants' failure to discover or act on certain "red flags," without more, was insufficient as a matter of law to establish a claim for gross negligence); *Baker v. Andover Assocs. Mgmt. Corp.*, 30 Misc. 3d 1218(A), at *26 (N.Y. Sup. Ct. 2009) (dismissing gross negligence claim because plaintiff failed to allege sufficient "factual allegations of conduct evincing a reckless disregard for the rights of others or smacking of intentional wrongdoing" despite alleging that defendants failed to (i) discover red flags that other investment advisors foresaw, (ii) undertake their fiduciary duties to supervise and manage, and (iii) perform or cause to be performed appropriate due diligence).  Accordingly, Stonehill's Negligent Misrepresentation Claims are precluded by section 30 of the PB Agreement and must be disallowed and expunged.

C.    *New York Law Bars the Negligent Misrepresentation Claims*

40.    *Icebox-Scoops v. Finanz St. Honore, B.V.*, a case cited for the first time by Stonehill in the Response (Resp. ¶¶ 72-74), offers another basis to disallow and expunge the Negligent Misrepresentation Claims:  such claims are barred as a matter of law under New York's "Economic Loss" doctrine.  676 F. Supp. 2d 100, 113–14 (E.D.N.Y. 2009).  That doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement

22

flows only from a contract." *Id.* (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66

F.3d 604, 618 (3d Cir. 1995)). As the court in *Icebox-Scoops* explained:

> Under New York's economic loss rule, a plaintiff asserting a claim of negligent
> misrepresentation who has not suffered any personal or property damage is
> limited to an action in contract. That plaintiff bases its negligent
> misrepresentation claim on duties independent of any contract . . . is inapposite.

*Id.* at 113 (internal citations omitted).

41.      In *Icebox-Scoops*, the plaintiff alleged that the defendants had negligently

misrepresented their willingness to comply with an agreement both prior to and subsequent to the

agreement's execution. *Id.* at 114. Notably, the plaintiff's negligent misrepresentation claim

was "[e]ssentially . . . a restatement of [its] fraud claim." *Id.* The court dismissed the negligent

misrepresentation claim even though the plaintiff had "properly pled all of the elements required

to state a cause of action for negligent misrepresentation" on the ground that "it pled purely

economic damages as a result of its reliance, thereby inviting application of New York's

economic loss rule." *Id.*

42.      Like the claims in *Icebox-Scoops*, Stonehill's Negligent Misrepresentation

Claims are essentially restatements of Stonehill's Fraud Claims and they seek purely economic

damages allegedly arising under the PB Agreement. Accordingly, such claims are barred by

New York's economic loss rule and should be disallowed and expunged as a matter of law.

**V.    Even if Section 29 Did Not Exist, the Fraud Claims Must Be Disallowed and Expunged.**

    *A.    Stonehill Failed to and Cannot Plead a Claim for Fraud*

43.      "To assert a claim for fraud under New York law, a plaintiff must allege:

(a) a material false representation or an omission of a material fact; (b) that the defendant made

with the intention to defraud; (c) upon which the plaintiff reasonably relied; and (d) that caused

injury to the plaintiff." *In re LightSquared, Inc.*, 504 B.R. 321, 344 (Bankr. S.D.N.Y. 2013).

### i.  Stonehill failed to plead reasonable reliance

#### a.  *The Court can decide, on a motion to dismiss, that Stonehill could not have reasonable relied on alleged misrepresentations*

44.  Stonehill is incorrect when it argues that "at the very least, the record must be further developed before the Court can rule on Stonehill's reliance on the misrepresentations made by Lehman Brothers." (Resp. ¶ 37.)  The Second Circuit has "unquestionably countenance[d] dismissal [of a fraud claim] on reasonable reliance grounds on a motion to dismiss." *Doehla v. Wathne Ltd.*, No. 98-6087, 1999 WL 566311, at *11 (S.D.N.Y. Aug. 3, 1999) (citing *Hunt v. Alliance N. Am. Gov. Income Trust Inc.*, 159 F.3d 723, 730 (2d Cir. 1998)).

45.  Where arguments concerning a plaintiff's lack of reasonable reliance are based solely on the nature and content of alleged misrepresentations that are plainly set forth in a complaint, the court may judge reliance by looking solely at the representations and not additional facts. *See Hunt*, 159 F.3d at 730–31.  Here, the alleged misrepresentations are set forth by Stonehill in its Claims and Response, and the Plan Administrator's arguments concerning reasonable reliance are based solely on the content of those representations. Accordingly, and for the reasons set forth below, the Court may dismiss the Fraud Claims at this stage of the proceedings.

#### b.  *Stonehill cannot have reasonably relied on statements made during the September 10, 2008 earnings call as a matter of law*

46.  Stonehill failed to respond to the Plan Administrator's argument that the alleged misrepresentations made on the September 10, 2008 earnings call cannot support a cause of action for fraud because of the disclaimer and cautionary language stated at the outset of the call.  (Obj. ¶ 55.)  Accordingly, Stonehill failed to present any factual or legal basis to support its

WEIL:\95201471\15\58399.0011

reasonable reliance on the alleged misrepresentations.[12]  Thus, the Fraud Claims must be

disallowed and expunged to the extent they rely on the September 10, 2008 earnings call.  *See*

*Hunt*, 159 F.3d at 730 (affirming dismissal by district court of securities fraud claims on the

ground that investors could not have reasonably relied on statements contained in a prospectus as

a matter of law.).

> c.    *Stonehill cannot have reasonably relied on the statements made by John Wickham as a matter of law*

47.    In light of the foregoing, the entirety of Stonehill's Fraud Claim is now

premised on a single phone call with John Wickham on an unidentified date in "early September

2008."  (Claims ¶ 13; Resp. ¶ 31.)  As set forth in the Objection, Stonehill cannot have

reasonably relied on alleged statements made by John Wickham as a matter of law because they

amount, at most, to statements of "future intention, promises or expectations which are

speculative, or mere expression of opinion or hope at the time when made" that will not support

a fraud claim under New York law.  *O'Connor v. Readers Digest Ass'n, Inc.*, No. 92 Civ. 7414

(CLB), 1993 WL 291372, at *3 (S.D.N.Y. Mar. 10, 1993); *accord Int'l Oil Field Supply Servs.*

*Corp. v. Fadeyi*, 825 N.Y.S.2d 730, 734 (N.Y. App. Div. 2006) ("Vague expressions of . . .

future expectation provide an insufficient basis upon which to predicate a claim of fraud.").

48.    Stonehill cannot avoid its many admissions on this point, including:

---

[12] Under the bespeaks caution and similar doctrines, when an alleged misrepresentation is accompanied by meaningful cautionary statements, such statements are immaterial as a matter of law because they could not mislead a reasonable investor.  *See In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 235 (S.D.N.Y. 2006) (citing *Halperin v. eBanker USA.com Inc.*, 295 F.3d 352, 357 (2d Cir. 2002)); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 240 (S.D.N.Y. 2007) (applying an analog to the "bespeaks caution" doctrine in a case not involving securities fraud).  In *Veeco Instruments*, for example, defendants in a securities fraud suit filed a motion to dismiss for, among other things, the failure to plead fraud with particularity.  235 F.R.D. at 225–26.  Specifically, the defendants argued that statements made during a conference call could not support a cause of action for fraud because they were accompanied by sufficient cautionary language so as to be protected by the bespeaks caution doctrine.  The court agreed and held that the defendant's warning that certain statements and projections made during the call would be "forward-looking" and "subject to a number of risks and uncertainties that could cause actual results to differ" was sufficient to warrant application of the bespeaks caution doctrine.  *Id*. at 227, 235–36.

a. that any statements were made in response to Stonehill's "questions and concerns . . . regarding [*inter alia*] the Lehman Entities' . . . *viability*" (Claims ¶14 (emphasis added));

b. that the intent of Wickham's statements in "*early* September" was to "convey[] a message that Lehman Brothers' prime brokerage operation *would continue operating . . .*, and that Claimant should be comfortable *continuing its customer and counterparty relationship* with Lehman Brothers" (Claims ¶15 (emphasis added));

c. that Wickham "sought to reassure Claimant . . . regarding . . . the stability of its prime brokerage operation" and ability in the future to "*meet all of its obligations for a year* even if no new financing was available" (*id.* ¶14);

d. that Wickham's statements in "*early* September" "induced Claimant . . . to refrain [for the days or weeks subsequent (i.e. in the future)] from terminating Claimant's prime brokerage . . . relationships with the Lehman Entities" (*id.* ¶12 (emphasis added)); and

e. that Stonehill could have "demand[ed] the return of its assets held by LBI" or "tak[en] actions promptly" at times after the alleged to avoid damages, but instead waited until the "effective curtailment of LBI's normal operations" on a future date to "reduce its commercial exposure to Lehman Brothers" (*id.* ¶16).

49.    Statements made in this clear context constitute, at most, future intentions, promises, or expectations which cannot support a claim for fraud under New York law. *See O'Connor*, 1993 WL 291372, at *3; *Chase Invs., Ltd. v. Kent*, 681 N.Y.S.2d 319, 320 (N.Y. App. Div. 1998) (stating that "a representation of opinion or prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud."). Indeed, the alleged statements regarding "adequate liquidity" were qualified statements of "belief" (*id.* ¶ 14) ("had sufficient liquidity from sources *it believed* to be reliable") (emphasis added)); alleged statements regarding asset values were based on "assets . . . which . . . *might soon be sold*" and "a *planned* spinout" (*id.* ¶ 15) (emphasis added); and statements regarding liabilities were based on "*possible* unrealized losses" (*id.* ¶¶ 35, 36 (emphasis added)). Stonehill's attempts now to isolate and describe particular phrases as a "present fact or insincerely held opinions that incorporate present fact" fail. (Resp. ¶ 76).

ii.   **Stonehill failed to specifically allege the fraud perpetrated by each Chapter 11 Estate**

50.     "In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement" of Rule 9(b). *LightSquared*, 504 B.R. at 356 (citing *In re Crude Oil Commodity Litig.*, 2007 WL 1946552, at *6 (S.D.N.Y. June 28, 2007)).

51.     As set forth above, Stonehill may not rely on any alleged misrepresentation made on the September 10, 2008 earnings call, and the entirety of Stonehill's Fraud Claim is now premised on a single phone call with Wickham on an unidentified date in "early September."  Stonehill attempts to assert liability against each of 20 Chapter 11 Estates by alleging that the statements were made by Wickham "with apparent authority" and "as agent" for each of the Chapter 11 Estates.  (Claims ¶¶ 16-17.)

52.     "An essential characteristic of an agency relationship is that the agent acts subject to the principal's control."  *LightSquared*, 504 B.R. at 347 (citing *In re Shulman Transp. Enters.*, 744 F.2d 293, 295 (2d Cir. 1984)).  Accordingly, Stonehill was required to plead facts with sufficient particularity demonstrating that each Chapter 11 Estate had sufficient control to establish an agency relationship.  *Id.* at 347, 356.  But the Claims and the Response fail to allege sufficient facts to impute liability for these alleged misrepresentations to each of the 20 Chapter 11 Estates.  Indeed, Stonehill presents no specific fact to support its claim that each of the 20 Chapter 11 Estates is liable for statements by Wickham under an agency theory.  Accordingly, Stonehill has failed to state a claim for fraud under Rule 9(b).  *See LightSquared, Inc.*, 504 B.R. at 356 (dismissing fraud claims on a motion to dismiss because the claimant's imputation or

27

agency theory was insufficient as a matter of law to provide a basis on which certain defendants

could be held responsible for the allegedly fraudulent acts of their purported agent).

## VI. The Negligent Misrepresentation and Fraud Claims Are Barred Because They Are Duplicative of the Contract Claims

53.    As stated in the Objection, courts in New York routinely dismiss fraud and

negligent misrepresentation claims that relate to a breach of contract claim unless the plaintiff

(i) demonstrates a legal duty separate and apart from the duty to perform under the contract;

(ii) demonstrates a fraudulent misrepresentation of present fact collateral or extraneous to the

contract; or (iii) seeks special damages that are caused by the misrepresentation and are

unrecoverable as contract damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Serves. Inc.*,

98 F.3d 13, 20 (2d Cir. 1996); *OP Solutions, Inc. v. Crowell & Moring, LLP*, 900 N.Y.S.2d 48

(App. Div. 2010).  Stonehill does not assert that it incurred any special damages unrecoverable as

contract damages.

### A.    *Stonehill Failed to Demonstrate a Legal Duty Separate and Apart From the Duty to Perform Under the PB Agreement*

54.    Stonehill alleges no special relationship other than bailment.  (Resp. ¶¶ 78-

80.)  As discussed above: the PB Agreement does not establish an express bailor-bailee

relationship between Stonehill and the Chapter 11 Estates (*see supra* ¶¶ 22-23); and Stonehill has

not pled, and cannot plead, an essential element of a claim for breach of an implied bailment

because the Chapter 11 Estates did not have possession of Stonehill's securities (*id.*).

Accordingly, no special relationship between Stonehill and the Chapter 11 Estates precludes a

finding that the Tort Claims are duplicative of the Contract Claims.

### B.    *The Alleged Misrepresentations Are Not Collateral or Extraneous to the PB Agreement*

55.    None of the alleged misrepresentations upon which the Tort Claims are

based constitute misrepresentations of *present fact* that are extraneous or collateral to the PB

WEIL:\95201471\15\58399.0011

Agreement.  (*See* Obj. ¶¶ 64–65; *supra* ¶¶ 43-48.)  Rather, as explained above, the alleged

misrepresentations by Wickham constitute statements of future intention, promises, or

expectations concerning LBI's ability to perform under the PB Agreement, which were

speculative when made.  (*See supra* ¶¶ 43-49.)  Thus, Stonehill's reliance on *Merrill Lynch & Co*

*v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007), for the proposition that a fraud

claim is not duplicative of a contract claim when the fraud claim involves "misstatements and

omissions of present facts" is therefore irrelevant.  (Resp. ¶ 75.)

56.    Stonehill's comparison of the present facts to *Icebox-Swoops v. Finanz St.*

*Honore, B.V.*, 676 F.Supp.2d 100 (E.D.N.Y. 2009) is inapposite.  In *Icebox-Scoops*, the court

found an alleged misrepresentation was extraneous to a contract.  The alleged misrepresentation

in that case was a promise to perform certain acts that the defendants were not obligated to

perform under the contract.  676 F.Supp. at 113.  Specifically, the defendants assured plaintiffs

that they would aggressively sue any entity that challenged a trademark, even though no

contractual provision obligated them to do so.  *Id.* at 106-07, 113.  In contrast, Wickham's

alleged misrepresentation concerning LBI's financial condition was an assurance that LBI would

in the future perform the prime brokerage obligations *already* undertaken in the PB Agreement.

Accordingly, Wickham's alleged misrepresentations, unlike the alleged misrepresentations in

*Icebox-Scoops*, are not collateral or extraneous to the PB Agreement.

57.    Stonehill cites *Atmosphere Sciences, LLC v. Schneider Advanced Techs.,*

*Inc.*, No. 12-3223, 2012 WL 4240759, *33 (S.D.N.Y. Sept. 19, 2012) as an example of a case in

which a fraudulent statement was found to be collateral, implying that all allegedly fraudulent

statements made after a contract is entered into must be collateral.  This decision has been

vacated and is not binding or precedential.  *Atmosphere Sciences, LLC v. Schneider Advanced*

*Technologies, Inc.*, No. 12-3223, 2013 WL 1719174, at *1 (S.D.N.Y. Apr. 13, 2013) ("it is

hereby ordered . . . that the September 19 Order is to be vacated, including all of its findings of

fact and conclusions of law.").  Moreover, courts applying New York law have dismissed fraud

claims as duplicative of contract claims for fraudulent acts that occurred *after* the execution of

the contract between the parties.  *See, e.g.*, *Krantz v. Chateau Stores of Can., Ltd.*, 256 A.D.2d

186, 187 (N.Y. App. Div. 1998) (dismissing plaintiff's fraud claim on a motion to dismiss as

duplicative of plaintiff's contract claim where the fraud claim was based on defendant's

allegedly fraudulent acts *subsequent* to the parties' execution of the contract).

C.   *The Negligent Misrepresentation and Fraud Claims Should Be Disallowed As
     Duplicative of the Contract Claims Even If the Court Determines that Stonehill Has No
     Liability for the Contract Claims*

58.     The Negligent Misrepresentation and Fraud Claims should be disallowed

as duplicative of the Contract Claims even if the Court determines, as it should, that the Chapter

11 Estates are not liable for the Contract Claims.  Courts applying New York law routinely

dismiss fraud claims as duplicative of contract claims even when the claimant cannot obtain

recovery on account of the contract claims.  *See, e.g.*, *Papa-June's Music Inc. v. McLean*, 921

F.Supp. 1154, 1162 (S.D.N.Y. 1996); *Guterman v. RGA Accessories, Inc.*, 196 A.D. 2d 785, 786

(N.Y. App. Div. 1993); *Chase v. United Hospital*, 60 A.D. 2d 558, 559 (N.Y. App. Div. 1977).

59.     Stonehill's argument to the contrary lacks merit. In a footnote, Stonehill

relies on two cases for the proposition that a fraud claim should not be dismissed as duplicative

of a contract claim when there is no "viable" contract claim.  (Resp. ¶ 69 n. 21 (citing *Gotham

Boxing Inc. v. Finkel*, 856 N.Y.S.2d 498, at *11 (N.Y. Sup. Ct. 2008) and *Richbell Info. Servs. v.

Jupiter Partners, L.P.*, 309 A.D.2d 288, 305 (App. Div. 2003).)  The court in *Gotham* only made

clear that a plaintiff does not have a "viable" contract claim when there is no valid and

enforceable contract, such as when the plaintiff or defendant is not a party to the contract.  *See*

30

*Gotham Boxing*, 856 N.Y.S.2d 498, at *11.  That is not the case here, where Stonehill is adamant that a valid contract exists between Stonehill and the Chapter 11 Estates, and the Chapter 11 Estates have, for the purpose of the Objection and subject to a reservation of rights contained therein, assumed the existence of a valid contract.  Further, Stonehill's reliance on *Richbell* is misplaced.  The court in *Richbell* dismissed fraud claims as against certain defendants that were parties to a contract.  309 A.D. 2d at 305.  The court then dismissed claims for accessory to fraud as to other defendants, including defendants that were not parties to the contract, on the basis that there could be no claims for accessory to fraud without a "main" fraud claim.  *Id*.  It was in this context that the court stated that while generally "a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable," the doctrine *did not apply* to the dismissal of the claims for accessory to fraud.   There was an independent basis to dismiss such claims: the dismissal of the "main" fraud claims.  *Id.*

[*The remainder of this page is intentionally blank.*]

## CONCLUSION

For the reasons set forth above and in the Objection, the Court should disallow and expunge the Claims in their entirety and grant such other and further relief as the Court may deem just and proper.

Dated: January 9, 2015
      New York, New York

                                              /s/ Garrett A. Fail
                                              Ralph I. Miller
                                              Garrett A. Fail

                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York 10153
                                              Telephone: (212) 310-8000
                                              Facsimile: (212) 310-8007

                                              Attorneys for Lehman Brothers Holdings Inc.
                                              and Certain of Its Affiliates

WEIL:\95201471\15\58399.0011