**JONES DAY**
Jayant W. Tambe
Laura Washington Sawyer
222 E. 41st Street
New York, New York 10017

*Attorneys for Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
In re:                                                  )
                                                        )    Chapter 11
Lehman Brothers Holdings Inc.,                          )
                                                        )    Case No. 08-13555 (SCC)
         Defendant.                                     )
                                                        )    (Jointly Administered)
                                                        )
                                                        )
------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF LEHMAN'S MOTION TO ADMIT
CERTAIN OF DEBTORS' EXHIBITS INTO AND TO EXCLUDE CERTAIN OF
<u>WASHINGTON TSA'S EXHIBITS FROM THE RECORD</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. LEHMAN'S OBJECTIONS TO WASHINGTON TSA'S PROPOSED
EXHIBITS .............................................................................................................................. 2

    A. Washington TSA's Proposed Exhibits E, F, G, H and I ......................................... 2

    B. Washington TSA's Proposed Exhibits J and P ....................................................... 5

    C. Washington TSA's Proposed Exhibit V .................................................................. 6

    D. Washington TSA's Proposed Exhibits Y and Z ...................................................... 7

    E. Washington TSA's Proposed Exhibits BB and CC ................................................. 8

III. WASHINGTON TSA'S OBJECTIONS TO LEHMAN'S PROPOSED
EXHIBITS .............................................................................................................................. 9

    A. Lehman's Proposed Exhibits 88 and 90 .................................................................. 9

    B. Lehman's Proposed Exhibits 138 and 139 ............................................................ 10

IV. CONCLUSION ................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ake v. GMC*,
    942 F. Supp. 869 (W.D.N.Y. 1996) ................................................................................. 7

*Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*,
    100 A.D.3d 100 (1st Dep't 2012) ..................................................................................... 3

*Bank of N.Y. Mellon Trust Co. v. Solstice ABS CBO II Ltd.*,
    910 F. Supp. 2d 629 (S.D.N.Y. 2012) ............................................................................. 4

*BCCI Holdings (Luxembourg), S.A. v. Khalil*,
    184 F.R.D. 3 (D.D.C. 1999) (rev'd on other grounds) .............................................. 8, 10

*ESPN Inc. v. Office of the Comm'r of Baseball*,
    76 F. Supp. 2d 383 (S.D.N.Y. 1999) ............................................................................... 2

*In re Am. Home Mortg. Holdings, Inc.*,
    411 B.R. 181 (Bankr. D. Del. 2009) ............................................................................... 7

*In re Quigley Co.*,
    437 BR 102 (Bankr. S.D.N.Y. 2010) .............................................................................. 7

*Kirschten v. Research Insts. of Am., Inc.*,
    No. 94 Civ. 7947, 1997 U.S. Dist. LEXIS 24037 (S.D.N.Y. July 24, 1997) ................... 4

*Merrill Lynch Capital Servs. v. UISA Fin.*,
    No. 09 Civ. 2324, 2012 U.S. Dist. LEXIS 51109 (S.D.N.Y. Apr. 10, 2012) .................. 4

*Mizuna, Ltd. v. Crossland Fed. Sav. Bank*,
    90 F.3d 650 (2d Cir. 1996) .............................................................................................. 4

*Seiden Assocs. v. ANC Holdings, Inc.*,
    959 F.2d 425 (2d Cir. 1992) ............................................................................................ 2

*W.W.W. Assocs. v. Giancontieri*,
    77 N.Y.2d 157 (1990) ................................................................................................. 4, 5

**STATUTES**

11 U.S.C. 562(a)(1) ............................................................................................................. 7

**OTHER AUTHORITIES**

Fed. R. Evid. 401 ................................................................................................................. 5

Fed. R. Evid. 402 .............................................................................................................. 5, 7

Fed. R. Evid. 801 ............................................................................................................ 7, 10

Fed. R. Evid. 802 ................................................................................................................. 7

Fed. R. Evid. 901 .............................................................................................................. 5, 8

Fed. R. Evid. 1003 ............................................................................................................... 8

Fed. R. Bankr. P. 9017 ......................................................................................................... 5

Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF" and collectively with LBHI, "Lehman"), by and through their undersigned counsel, object to the entry of Washington Tobacco Settlement Authority's ("Washington TSA") proposed Exhibits E, F, G, H, I, J, P, V, Y, Z, BB and CC into evidence. Lehman also seeks the admission of proposed Debtors' Exhibits 88, 90, 138 and 139.

## I.     INTRODUCTION

1.     Washington TSA filed Proofs of Claim Nos. 37355 and 37356 (collectively, "Washington TSA's Claim") in connection with the terminated Reserve Fund Agreement ("RFA") between Washington TSA and LBSF.[1]  In connection with Washington TSA's Claim, the Court conducted an evidentiary hearing on November 4-6, 2014 (the "Hearing").

2.     At the close of the Hearing, the Court directed the parties to confer on the admission of exhibits and to raise any disputes with the Court. Tr. 1054:17-22. The parties have exchanged proposed exhibits and agreed on many exhibits that can be admitted into evidence without objection. This memorandum addresses the remaining proposed exhibits to which there are objections to admission.

3.     Washington TSA seeks to admit a number of exhibits for which no foundation has been laid. In addition, Lehman has specific objections to Washington TSA's proposed exhibits that fall into three categories. Lehman objects to the admission of proposed Exhibits E, F, G, H and I as irrelevant parol evidence. Lehman objects to the admission of proposed Exhibits J, P and V as irrelevant. Lehman also objects to the admission of proposed Exhibits Y, Z, BB, and CC as inadmissible hearsay and as irrelevant. Washington TSA's proposed Exhibits should not be admitted.

---

[1] For more detail of the underlying dispute and the parties' respective positions, *see* Debtors' Post-Trial Memorandum, Proposed Findings of Fact and Conclusions of Law Regarding Claims Nos. 37355 and 37356.

4. Washington TSA has also raised objections to the admission of several of Lehman's proposed Exhibits, but these objections are without merit. First, Washington TSA complains that the exhibits lack foundation, but foundations were clearly laid for each exhibit during depositions and during the Hearing. Washington TSA also objects to the admission of expert reports as hearsay despite the fact that Lehman's experts explicitly adopted their respective reports as testimony during the Hearing. Lehman believes that these exhibits should be admitted over Washington TSA's objections.

## II. LEHMAN'S OBJECTIONS TO WASHINGTON TSA'S PROPOSED EXHIBITS

### A. Washington TSA's Proposed Exhibits E, F, G, H and I

5. Washington TSA seeks to have a series of proposed exhibits admitted into evidence that concern the negotiation and drafting of the RFA (E, F, G, H and I).[2] These exhibits should not be admitted as they constitute inadmissible parol evidence and are irrelevant.

6. In New York, the parol evidence rule bars admission of extrinsic evidence in the absence of a showing of ambiguity. *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) ( "If the language unambiguously conveys the parties' intent, extrinsic evidence may not properly be received. . . .").

7. "[A]mbiguity is . . . a question of law to be determined by the court." *ESPN Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 402 (S.D.N.Y. 1999). Contract language is ambiguous where

---

[2] Proposed Exhibit E is an is an e-mail chain dated October 29, 2002, between Courtney Jenkins Seth Konheim and Chris Armada (all of Lehman), and the negotiation team from Washington TSA, attaching a draft of the RFA. Proposed Exhibit F is an email chain dated October 30, 2002, between George Majors of PFM (negotiating on behalf of Washington TSA), Jenkins (of Lehman), and Richard Van Dusen of Hawkins, Delafield and Wood (negotiating on behalf of Washington TSA) discussing revisions to the Request for Bids for the RFA and revisions to the indenture attaching a draft Request for Bids. Proposed Exhibit G is an email chain dated Oct. 31, 2002, between Majors and Jenkins negotiating revisions to the RFA. Proposed Exhibit H is an e-mail chain, dated Oct. 31, 2002, between Jenkins and Washington TSA's negotiation team discussing revisions to the draft RFA. Proposed Exhibit I is an e-mail, dated Oct. 31, 2002, from Jenkins to Washington TSA's negotiation team attaching a revised version of the RFA and a form of bankruptcy opinion .

> [i]t is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Seiden Assocs.*, 959 F.2d at 428 (internal citations omitted). *See also Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 100 A.D.3d 100, 106 (1st Dep't 2012) ("A contract is unambiguous if on its face it is reasonably susceptible of only one meaning.").

        8.      Washington TSA has not identified any ambiguity in the RFA that would warrant the introduction and consideration of parol evidence. The provisions addressing the determination of the Termination Amount are undeniably unambiguous. In the event of a "Lehman Event of Default," which occurred here, the RFA provided that:

> if Lehman fails to determine the Termination Amount within three Business Days of written notice from the Issuer or the Trustee of the occurrence of a Lehman Event of Default then the Issuer shall make such determination as if it were Lehman and the amount as so determined by the Issuer shall for purposes of this Section 7.6 be deemed the Termination Amount.

Joint Ex. 1, RFA at § 7.6(c). Additionally, the definition of the Termination Amount provided that:

> if the Burdened Party is unable to obtain three such quotations, the Termination Amount shall be the amount, as reasonably determined in good faith by the Burdened Party, to be the Burdened Party's total losses and costs (expressed as a positive number if the Burdened Party is Lehman and a negative number if the Burdened Party is the Issuer), or gains (expressed as a negative number if the Burdened Party is Lehman and a positive number if the Burdened Party is the Issuer) in connection with a termination of this Agreement, including any loss of bargain, cost of funding or, at the election of the Burdened Party but without duplication, any loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position . . . .

- 3 -

Joint Ex. 1, RFA at § 1, Definition of Termination Amount.[3]

9. Recognizing that the language of the RFA is not ambiguous, Washington TSA argues that there is some sort of drafting error or mistake in the RFA. *C.f.* Washington State Tobacco Settlement Authority's Pre-Hearing Brief at 6-7; Tr. 48:11-22. But no evidence was presented at the Hearing to suggest there was any such mistake. To the contrary, the evidence presented confirms that when the parties realized a mistake in the RFA – for example, the incorrect maturity date of 2042 – it was promptly corrected with an amended agreement. Tr. 134:8-135:20; Joint Ex. 2, Amendment Agreement.

10. However, even if Washington TSA were correct that there were some sort of mistake in the RFA, that still would not warrant the admission of extrinsic evidence. *Kirschten v. Research Insts. of Am., Inc.*, No. 94 Civ. 7947, 1997 U.S. Dist. LEXIS 24037, at *24 (S.D.N.Y. July 24, 1997) ("An omission or mistake in a contract does not constitute an ambiguity."). *See also Bank of N.Y. Mellon Trust Co. v. Solstice ABS CBO II Ltd.*, 910 F. Supp. 2d 629, 643 (S.D.N.Y. 2012) ("Clear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations.").

11. Additionally, the RFA contains an integration clause, Joint Ex. 1, RFA, § 9.8,[4] which militates against the admission of extrinsic evidence. *See Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 659 (2d Cir. 1996) (merger clause manifests parties' intention that written terms expressed the full and final agreement), *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990) (same).

---

[3]  Courts have found that similar language in ISDA Master Agreements is not ambiguous. *Merrill Lynch Capital Servs. v. UISA Fin.*, No. 09 Civ. 2324, 2012 U.S. Dist. LEXIS 51109, at *69 (S.D.N.Y. Apr. 10, 2012) (noting that people "with knowledge of the customs, practices, usages and terminology as generally understood in the particular trade or business" see no ambiguity in this contractual language).

[4]  Section 9.8 states "[t]his Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communications and prior writings with respect thereto." Joint Ex. 1, RFA 9.8.

12. Ultimately, proposed Exhibits E, F, G, H and I are not relevant and should not be admitted. Federal Rule of Evidence 401[5] defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Further, "evidence which is not relevant is not admissible." Fed. R. Evid. 402. The proposed exhibits do not tend to make any fact that is of consequence to this dispute more or less likely. None of these documents reveal any information about an alleged drafting error. There is no discussion in any of these proposed exhibits of any suggested or contemplated changes to Section 7.6(c) that were or were not incorporated into the RFA. These irrelevant documents should not be admitted to permit Washington TSA to try to rewrite a fully integrated contract.

**B.    Washington TSA's Proposed Exhibits J and P**

13. Proposed exhibits J and P appear to be Lehman powerpoint presentations. However, Washington TSA has failed to lay any foundation for the admission of these documents and has also failed to demonstrate how these documents are relevant to the issues in dispute. Consequently, proposed exhibits J and P should not be admitted.

14. There was no testimony – either at the Hearing or during depositions – regarding proposed Exhibit J. No witness laid a foundation for proposed Exhibit J or testified to its authenticity. Consequently, Washington TSA has failed to authenticate proposed exhibit J as required by Federal Rule of Evidence 901 and it should not be admitted.

15. Additionally, since proposed exhibit J was not used either at the Hearing or during depositions, it does not tend to make any fact that is of consequence to the dispute more or less

---

[5] Federal Rule of Bankruptcy Procedure 9017 makes the Federal Rules of Evidence applicable to this dispute.

- 5 -

likely. Washington TSA has failed to demonstrate any relevance of proposed Exhibit J and it should not be admitted.

16. Likewise, proposed exhibit P should not be admitted because it was not authenticated as required by Federal Rule of Evidence 901. The only time proposed exhibit P was used during either the Hearing or in depositions, was during the re-cross examination of Lehman's expert, Dr. David Babbel. Dr. Babbel, not having seen this document before, was simply asked whether he disagreed with the statement, "there is no agency/LIBOR basis swap market." Tr. 929:17-930:23. Dr. Babbel did not authenticate the document.

17. Dr. Babbel's response also reveals that proposed exhibit P has no relevance. Dr. Babbel responded, "I don't have any reason to disagree with [the statement, "there is no agency/LIBOR basis swap market"]. That doesn't mean there isn't the ability to do swaps with agencies, because we do them all the time." Tr. 930:20-23. Given the limited role this proposed exhibit has played in the dispute, it is hard to see its relevance. Proposed exhibit P does not tend to make any fact that is of consequence to this dispute more or less likely and should not be admitted.

### C. Washington TSA's Proposed Exhibit V

18. Proposed Exhibit V is a spreadsheet prepared by Bob Cook, Finance Director for Washington TSA, that purports to show the amount of money TSA has "lost" since December 2008. Tr. 229:23-231:4.[6]

19. Given that Washington TSA has based its Claim upon the expert testimony of Curry, Hasterok and Shapiro, proposed exhibit V has no relevance. None of Washington TSA's

---

[6] There appears to be a transcription error regarding proposed exhibit V. In the transcript at 230:4, the stenographer wrote "Exhibit B," but context makes clear that Ms. Evanson and Mr. Cook are discussing proposed exhibit V.

- 6 -

experts have relied upon proposed exhibit V, and Washington TSA has not argued that proposed exhibit V has any relevance to the Claim asserted.

20. Moreover, the Court is constrained – as a matter of law – from considering "losses" after March 25, 2009. 11 U.S.C. 562(a)(1) ("damages shall be measured as of the earlier of: (1) the date of such rejection . . . ."); *see also In re Am. Home Mortg. Holdings, Inc.*, 411 B.R. 181, 191 (Bankr. D. Del. 2009) (noting the "moral hazard" that would arise if Section 562 were to be disregarded). Consequently, proposed exhibit V should not be admitted as it is irrelevant. *See* Fed. R. Evid. 402.

### D. Washington TSA's Proposed Exhibits Y and Z

21. Proposed exhibits Y and Z are the rebuttal reports drafted by Washington TSA's two sets of experts. These reports should not be admitted as they are hearsay and irrelevant, containing neither further refinement of positions adopted in the initial reports nor actual rebuttal of arguments raised by Lehman's experts.

22. Federal Rule of Evidence 801(c) defines hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing; and . . . [that] a party offers in evidence to prove the truth of the matter asserted in the statement." Federal Rule of Evidence 802 declares that "hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."

23. "As a rule, expert reports are hearsay." *In re Quigley Co.*, 437 BR 102, 151 (Bankr. S.D.N.Y. 2010). *See also Ake v. GMC*, 942 F. Supp. 869, 878 (W.D.N.Y. 1996) (noting that hearsay exceptions do not apply to expert reports). Similarly, an expert report cannot be admitted as the basis of an expert's opinion. *Id.* (A "report is not admissible as a basis for [the expert's] expert opinion. The report is his opinion. [The expert] may testify about some things in the report, but the report itself is inadmissible."). However, when an expert expressly adopts

- 7 -

his report as his testimony at trial, there is no hearsay problem. Fed. R. Evid. 801(d)(1) advisory committee's note (1972 proposed rule) (emphasis added) ( "if the witness admits on the stand that he made the statement and that it was true, he adopts the statement *and there is no hearsay problem*."). *See also BCCI Holdings (Luxembourg), S.A. v. Khalil*, 184 F.R.D. 3, 6 (D.D.C. 1999) (rev'd on other grounds).

24. Washington TSA's experts only adopted their initial reports as their testimony at the Hearing, not their rebuttal reports (proposed exhibits Y and Z). Washington TSA should not be permitted to submit them now as inadmissible hearsay, when they did not adopt them at the Hearing.

        E.      **Washington TSA's Proposed Exhibits BB and CC**

25. Washington TSA seeks to submit proposed exhibit BB, which appears to be a spreadsheet with two titles: "2042 Maturity" and "LIBOR - 1.50%," and proposed exhibit CC, which appears to be a portion of a spreadsheet displaying a column entitled "Discount Rate" and one entitled "Discount Factor."

26. Neither document has been authenticated, so they are not admissible pursuant to Federal Rule of Evidence 901.

27. Proposed exhibit CC appears to be incomplete. The scroll bar at the bottom of the screenshot indicates that there are further fields to the right of the columns captured in the screenshot that have not been produced. Since the native file was not produced, it is impossible to know if this screenshot adequately captures the data contained in the spreadsheet. It would be entirely inappropriate to admit this partial document into evidence. *See* Fed. R. Evid. 1003.

28. Proposed exhibit BB appears to be entirely irrelevant as it refers to an incorrect maturity date for the RFA of 2042 and a spread to LIBOR that does not form the basis of Washington TSA's Claim. Additionally, Washington TSA has since produced the screenshot

showing the cash flows for Shapiro's calculation, Exhibit AA,[7] so there is simply no reason to admit some irrelevant valuation analysis that does not form the basis of Washington TSA's Claim into evidence.

### III. WASHINGTON TSA'S OBJECTIONS TO LEHMAN'S PROPOSED EXHIBITS

#### A. Lehman's Proposed Exhibits 88 and 90

29. Washington TSA objects to Lehman's proposed exhibits 88 and 90 as irrelevant and lacking foundation. But these objections are without merit and should be overruled.

30. Proposed exhibit 88 is an e-mail, dated March 25, 2010, that attaches Swap Financial Group's Response to Washington TSA's Request For Proposals ("RFP"). Proposed exhibit 88 was authenticated during Kim Herman's 30(b)(6) deposition. Mr. Herman confirmed that he received it "from Swap Financial Group in response to the RFP that Washington TSA did." Herman Dep. 295:18-21.

31. Given that proposed exhibit 88 is Swap Financial's proposal to Washington TSA to provide quantitative services related to the RFA, it reveals much about Swap Financial's and Shapiro's expertise in this area including, but not limited to, who was responsible for the valuation work to be done. For example, page 5 of the attachment included in proposed exhibit 88 (SFG_001891) states that "James [Vergara] was primarily responsible for the analysis that was done for the valuation and filing of TSA's claim." This, among other things, reinforces Mr. Shapiro's testimony at the Hearing that he did not even know how to use the software that Swap Financial Group uses to value derivative instruments. Tr. 628:12-629:22. Proposed exhibit 88 is clearly relevant and should therefore be admitted into evidence.

---

[7] TSA Ex. AA was produced after the Hearing on December 19, 2014. Lehman and Washington TSA are currently negotiating a stipulation to admit this document, and will provide the Court with the stipulation once it is executed.

32. Proposed exhibit 90 is a powerpoint presentation submitted by PFM Asset Management LLC ("PFM") to Washington TSA in response to Washington TSA's RFP.

33. Christopher Harris, of PFM, authenticated proposed exhibit 90 and laid a foundation during his deposition. Mr. Harris testified that he was involved in preparing proposed exhibit 90 and identified the others at PFM that were involved. Harris Dep. 58:9-24.

34. Proposed exhibit 90 is clearly relevant because it reinforces that PFM uses a standard mid-market (and termination) valuation for reserve fund agreements of LIBOR + 10 bps. *See* Harris Dep. 43:10-14. As Harris testified, LIBOR + 10 bps represents a "mid-market value" of a reserve fund agreement and is where PFM generally sees reserve fund agreements terminate. *Id.* Proposed exhibit 90 is clearly relevant and should therefore be admitted into evidence.

### B. Lehman's Proposed Exhibits 138 and 139

35. Washington TSA objects to Proposed exhibits 138 and 139 as hearsay.

36. Proposed exhibits 138 and 139 are the expert reports offered by Lehman's experts, Dr. David Babbel and Samuel Gruer.

37. As noted above, hearsay problems are eliminated when a testifying witness adopts a prior statement as his testimony in open court. As the Advisory Committee stated in relation to Fed. R. Evid. 801(d)(1), "if the witness admits on the stand that he made the statement and that it was true, he adopts the statement *and there is no hearsay problem*. Fed. R. Evid. 801(d)(1) advisory committee's note (1972 proposed rule) (emphasis added). *See also BCCI Holdings (Luxembourg), S.A. v. Khalil*, 184 F.R.D. 3, 6 (D.D.C. 1999) (rev'd on other grounds).

38. Both Dr. Babbel and Mr. Gruer adopted their reports as their testimony. When asked, "Do you adopt as your testimony in this case the opinions that you expressed in your expert report?" Dr. Babbel responded, "I do." Tr. 846:5-8. When asked, "With that one change,

do you adopt this expert report as your direct testimony in this case?" Mr. Gruer responded, "I do." Tr. 947:13-16. Thus, any hearsay problems are eliminated and proposed exhibits 138 and 139 should be admitted into evidence.[8]

## IV. CONCLUSION

39. Lehman respectfully requests that the Court (a) not admit into evidence Washington TSA's proposed exhibits E, F, G, H, I, J, P, V, Y, Z, BB and CC; and (b) admit into evidence Lehman's Proposed exhibits 88, 90, 138 and 139.

Dated: New York, New York
January 14, 2015

/s/ Laura Washington Sawyer
JONES DAY
Jayant W. Tambe
Laura Washington Sawyer
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3685
Facsimile: (212) 755-7306

*Attorneys for the Debtors*

---

[8] Consistent with this legal principle, Lehman has not objected to the admission of Washington TSA's experts' reports that they did adopt as their testimony at the Hearing. *See* Washington TSA's Exhibit W, the Expert Disclosure of Peter Shapiro, and Washington TSA's Exhibit X, the Curry/Hasterok Expert Witness Valuation Report.

- 11 -