WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.
and Lehman Brothers Financial Products Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*<br>Debtors. | Chapter 11<br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS FINANCIAL PRODUCTS INC.,<br>Plaintiff,<br>-against-<br>THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee, LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LTD., LIBERTY SQUARE CDO II, LTD., and LIBERTY SQUARE CDO II, CORP., as Issuers,<br>Defendants. | Adversary Proceeding No. 10-03544 (SCC) |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, as Indenture Trustee,<br>Counterclaimant,<br>- against - | |

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., LIBERTY SQUARE CDO I, CORP., LIBERTY SQUARE CDO I, LIMITED, LIBERTY SQUARE CDO II, LIMITED, LIBERTY SQUARE CDO II, CORP.,

    Counterclaim and Crossclaim Defendants,

    - and-

CEDE & CO., as nominee of THE DEPOSITORY TRUST COMPANY, as the holder of certain notes,

    Additional Crossclaim Defendant.

## STIPULATION, AGREEMENT AND ORDER AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., LIBERTY SQUARE CDO I, LIMITED, AND LIBERTY SQUARE CDO I, CORP.

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

    This Stipulation, Agreement and [Proposed] Order (the "Stipulation, Agreement and Order") is entered into by Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator"), under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), on behalf of LBHI and Lehman Brothers Financial Products Inc. ("LBFP" and, together with LBHI, "Lehman"), Liberty Square CDO I, Limited (the "LS I Issuer"), and Liberty Square CDO I, Corp. (the "LS I Co-Issuer" and, together with the LS I Issuer, "LS I Entities"). Lehman and the LS I Entities are collectively referred to in this Stipulation, Agreement and Order as the "Parties" and each as a "Party."

### RECITALS

    A.    On September 15, 2008, and October 5, 2008, LBHI and LBFP, respectively, commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Bankruptcy Court").

2

B.  On December 6, 2011, the Bankruptcy Court entered an order confirming the Plan. The Plan became effective on March 6, 2012.

C.  On March 13, 2013, the Plan Administrator filed the *Motion Pursuant to Section 105(a) of the Bankruptcy Code for Approval of the Termination Agreement by and among Lehman Brothers Holdings Inc., Lehman Brothers Financial Products Inc., Liberty Square CDO I, Limited, Liberty Square CDO I, Corp., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp.* [ECF No. 35908; Adv. Proc. ECF No. 29] (the "Original Settlement Motion"),[1] seeking Court approval of the termination agreement by and among the LS I Entities, Liberty Square CDO II, Limited ("LS II Issuer"), Liberty Square CDO II, Corp. ("LS II Co-Issuer," and together with LS II Issuer, the "LS II Entities"), LBHI, and LBFP (the "Original Termination Agreement"). A redacted copy of the Original Termination Agreement is attached hereto as Exhibit A. The Original Termination Agreement provides for the resolution of disputes between LBFP and each of the LS I Entities and the LS II Entities.

D.  By order dated April 4, 2013, this Court contingently approved the Original Termination Agreement [ECF No. 36409; Adv. Proc. ECF No. 41] (the "Original Settlement Order"). Specifically, as sought in the Original Settlement Motion, this Court's approval of the Original Termination Agreement in the Original Settlement Order was contingent upon the Plan Administrator filing a certification (the "Certification") that no interested party, other than a party to the Original Termination Agreement, had appeared and asserted a claim to the Disputed Funds or a right to the Disputed Funds under the Issuer Transaction Documents for either of the LS I Entities or the LS II Entities, nor had any interested party stated any objection to the Termination Agreement, before April 19, 2013 (the "Interpleader Deadline"). In the event

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Original Settlement Motion.

3

that the Plan Administrator failed to timely file the Certification, the Original Settlement Order provided that the Court's approval of the Original Termination Agreement would be deemed ineffective.

        E.        Only one objection to the Original Settlement Agreement (or notice of a claim or an asserted right to the Disputed Funds) was filed prior to the Interpleader Deadline. Specifically, on or before the Interpleader Deadline, certain claimed holders of Notes issued by the LS I Entities filed the *Objection to Motion Pursuant to Section 105(a) of the Bankruptcy Code for Approval of the Termination Agreement by and Among Lehman Brothers Holdings Inc., Lehman Brothers Financial Products., Liberty Square CDO I, Limited, Liberty Square CDO I, Corp., Liberty Square CDO II, Limited, and Liberty Square CDO II, Corp.* [Adv. Proc. ECF No. 42] (the "LS I Noteholder Objection"). No other Noteholders (or any other person or entity) filed any objection to the Original Termination Agreement or the settlements embodied therein or asserted any claim to or right to the Disputed Funds other than a party to the Original Settlement Agreement.

        F.        Inasmuch as no holder of Notes issued by the LS II Entities (any such holder, a "LS II Noteholder") objected to the Original Termination Agreement, or the settlements embodied therein, or asserted a claim or right to the applicable portion of the Disputed Funds, Lehman and the LS II Entities proceeded to effectuate their settlement. Specifically, Lehman and the LS II Entities entered into an amended agreement, which resolved the dispute between Lehman and the LS II Entities and determined the allocation of the approximately $3.9 million of the Disputed Funds relating to the LS II Entities (the "Amended LS II Termination Agreement").[2]

---

[2] The descriptions of documents set forth herein are being provided as summaries only. In the case of an inconsistency between the summary herein and the described documents, the terms of the documents shall control.

4

G. The Amended LS II Termination Agreement replaced and superseded the Original Termination Agreement only as it related to the settlement between Lehman and the LS II Entities. As a result, the dispute between Lehman and the LS I Entities remained subject to the Original Settlement Agreement (which is, in turn, still subject to approval by the Bankruptcy Court) and the Interpleader Action remains pending and unresolved as to the dispute between Lehman and the LS I Entities.

H. On June 3, 2013, Lehman and the LS II Entities filed a Stipulation, Agreement and Order seeking Court approval of the Amended LS II Termination Agreement [ECF No. 37715; Adv. Proc. ECF No. 44]. Such Stipulation, Agreement and Order was So-Ordered by the Court on June 12, 2013 [ECF No. 37906; Adv. Proc. ECF No. 49], fully resolving the dispute between Lehman and the LS II Entities, terminating the Interpleader Action as it related to said dispute, and directing the disposition of the relevant portion of the Disputed Funds.

I. The LS I Noteholder Objection now has been withdrawn pursuant to a notice filed on December 29, 2014 [Adv. Proc. ECF No. 84]. In light of the fact that the only objection to the Original Settlement Agreement has been withdrawn, and no other interested party, other than a party hereto, has asserted any claim, or right, to the Disputed Funds relating to the LS I Entities, the Parties wish to proceed to effectuate their settlement reflected in the Original Settlement Agreement.

J. Given that (i) holders of Notes issued by the LS I Entities (any such holder, a "LS I Noteholder") already were provided with notice and an opportunity to state a claim or right to the LS I Disputed Funds and/or voice an objection to the settlement between Lehman and the LS I Entities embodied in the Original Termination Agreement, and (ii) the only

5

LS I Noteholders or any other person or entity that stated such a claim or right (other than a Party hereto) or objected to such agreement before (or any time after) the Interpleader Deadline have since withdrawn their objection, the Parties have agreed that providing further notice of the Original Termination Agreement would be duplicative, wasteful and unnecessary.

K.      Pursuant to section 6.1(b)(iv) of the Plan, the Plan Administrator is authorized to compromise all "Litigation Claims" in the Plan Administrator's discretion without Court approval. The Original Termination Agreement, however, includes, as a condition precedent to its effectiveness, this Court's approval. The Parties, therefore, file this Stipulation, Agreement and Order for the purpose of satisfying that provision.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

1.      This Stipulation, Agreement and Order shall have no force or effect unless and until the date it is approved by the Bankruptcy Court (the "Effective Date").

2.      Upon the Effective Date, the Original Termination Agreement as it applies to the dispute among the Parties is approved.

3.      Upon the Effective Date, the Trustee is directed to distribute the LS I Disputed Funds in payment and satisfaction of (i) any Unpaid Interpleader Expenses in accordance with the terms of the Order Granting Interpleader Relief, entered on March 19, 2013 [Adv. Proc. ECF No. 32], and (ii) that portion of the Settlement Amount to be paid by and on behalf of LS I Entities pursuant to the eleventh whereas clause and Section 1 of the Original Termination Agreement; thereafter, the balance remaining in the Interpleader Reserve Fund shall be paid by the Trustee in accordance with the priority of payment set forth in the LS I Indenture.

4. Upon the Effective Date, the Interpleader Action shall be deemed resolved in all respects and upon its compliance with paragraph 3 hereof the Trustee shall be released and discharged from any and all obligations, liabilities or claims with respect to the Disputed Funds.

5. Subject to compliance with the terms of this Stipulation, Agreement and Order, as of the Effective Date, the Parties are authorized and directed to complete and deliver all instruments and documents and take all other actions as may be necessary or appropriate to execute, implement, consummate and effectuate the Original Termination Agreement as it relates to the Parties.

6. This Stipulation, Agreement and Order may only be amended or otherwise modified by a signed writing executed by or on behalf of each of the Parties.

7. Each person who executes this Stipulation, Agreement and Order on behalf of a Party represents and warrants that he or she has been duly authorized and empowered to execute and deliver this Stipulation, Agreement and Order on behalf of such Party.

8. This Stipulation, Agreement and Order may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement and Order to present any copy, copies, electronic copies, or facsimiles signed by the Parties.

9. Each Party to this Stipulation, Agreement and Order represents that it fully understands the terms hereof. This Stipulation, Agreement and Order shall not be strictly construed against any Party on the ground that the rules for the construction of contracts require the resolution of any ambiguity against the Party that drafted the document.

10. This Stipulation, Agreement and Order shall be binding upon and inure solely to the benefit of the Parties hereto and their respective successors and assigns. Nothing

contained herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Stipulation, Agreement and Order.

[The remainder of this page is intentionally left blank]

11. This Stipulation, Agreement and Order shall be governed by, and construed in accordance with, the laws of the State of New York, except to the extent that the Bankruptcy Code applies, without regard to principles of conflicts of law that would require the application of laws of another jurisdiction. The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from this Stipulation, Agreement and Order.

Dated: January 15, 2015
      New York, New York

/s/ Jack Yoskowitz
Jack Yoskowitz
Benay L. Josselson

SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Attorneys for Liberty Square CDO I, Limited and Liberty Square CDO I, Corp.*

Dated: January 15, 2015
      New York, New York

/s/ Richard L. Levine
Richard L. Levine
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc. and Lehman Brothers Financial Products Inc.*

SO ORDERED, this
28th day of January, 2015

/S/ Shelley C. Chapman
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

**Redacted Original Termination Agreement**

# TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of November 16, 2012 by and among Liberty Square CDO I, Ltd. ("LS I"), Liberty Square CDO I, Corp. ("LS I Corp."), Liberty Square CDO II, Ltd. ("LS II"), Liberty Square CDO II, Corp. ("LS II Corp.") (LS I, LS I Corp., LS II, and LS II Corp. collectively, "LS"), Lehman Brothers Financial Products Inc. ("Lehman"), acting through its Plan Administrator, Lehman Brothers Holdings Inc. (solely in its capacity as such, the "Plan Administrator"), and Lehman Brothers Holdings Inc. (solely in its capacity as credit support provider of Lehman, "Holdings"), also acting through the Plan Administrator (each of the foregoing a "Party" and collectively the "Parties"). For the avoidance of doubt, whenever Lehman or Holdings is required hereunder to take any actions or assume any obligations, the Plan Administrator shall cause Lehman or Holdings, as the case may be, to take such actions or assume such obligations.

## RECITALS:

WHEREAS, (i) LS I and Lehman entered into one or more transactions (each a "Transaction" and, together, the "LS I Transactions") that were governed by a 1992 ISDA Agreement, dated as of March 2, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "LS I Agreement Documents"), and (ii) LS II and Lehman entered into one or more transactions (each a "Transaction" and, together, the "LS II Transactions") that were governed by a 1992 ISDA Agreement, dated as of April 26, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the " LS II Agreement Documents" and, together with the LS I Agreement Documents, the "Agreement Documents").

WHEREAS, (i) substantially all of LS I's assets were held in trust pursuant to the terms of the indenture dated March 14, 2001, by and among LS I and JPMorgan Chase Bank, N.A. (f/k/a The Chase Manhattan Bank) as trustee (the "LS I Indenture"), and (ii) substantially all of LS II's assets were held in trust pursuant to the terms of the indenture dated May 8, 2001, by and among LS II and such bank as trustee (the "LS II Indenture") (and, together with the LS I Indentures, the " LS Indentures").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman (collectively, the "Chapter 11 Entities"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of October 22, 2008.

WHEREAS, on September 14, 2010, Lehman filed an action against The Bank of New York Mellon Trust Company, National Association, as successor trustee (the "Trustee") under the LS Indentures, and LS to challenge certain contractual provisions in the LS Indentures as unenforceable *ipso facto* clauses or as avoidable, preferential, or fraudulent transfers in

1

violation of the Bankruptcy Code, Adversary Proc. No. 10-3544 (JMP) (the "Adversary Proceeding").

WHEREAS, on March 30, 2011, the court having jurisdiction over the Bankruptcy Cases (the "Bankruptcy Court") entered the Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties, as amended by the Bankruptcy Court on July 18, 2012 (the "SPV ADR Order").

WHEREAS, pursuant to the SPV ADR Order, Lehman served LS with an SPV Derivatives ADR Election Notice, to which LS responded, and Lehman replied (with the prior pleadings and the subsequent mediation, the "ADR Proceeding").

WHEREAS, the Trustee has placed $10,700,000 in escrow on behalf of LS I and $3,900,000 in escrow on behalf of LS II pending the resolution of the ADR Proceeding (such amounts collectively, the "Escrowed Funds").

WHEREAS, on December 6, 2011, the Bankruptcy Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. And Its Affiliated Debtors (the "Plan") and the Plan became effective on March 6, 2012.

WHEREAS, pursuant to Sections 13.1 and 6.1 of the Plan, Lehman Brothers Holdings Inc. was appointed as Plan Administrator for each of the Chapter 11 Entities, including Lehman, and is authorized on behalf of each of the Chapter 11 Entities, including Lehman, to prosecute, elect not to pursue, compromise, settle, abandon, dismiss or otherwise dispose of all causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever assertable by each of the Chapter 11 Entities, including Lehman.

WHEREAS, as of the date hereof, as a result of the ADR Proceeding, the Parties have agreed on a settlement including payments by the Trustee to Lehman on behalf of LS I in the amount of $[redacted] and on behalf of LS II in the amount of $[redacted], for an aggregate amount of $[redacted] (the "Settlement Amount") in respect of any and all claims arising under or related to the Agreement Documents and the LS I Transactions and the LS II Transactions.

WHEREAS, in accordance with Section 14.15 of the LS Indentures, the Settlement Amount shall be recoverable only from and to the extent of the collateral under the LS Indentures.

WHEREAS, as part of the settlement, the Parties wish to expunge and release any and all proofs of claim, whether liquidated, unliquidated or contingent in nature (the "Related Claims"), filed by LS and the Trustee with the Bankruptcy Court in respect of the Agreement Documents and the LS I Transactions and the LS II Transactions.

WHEREAS, as part of the settlement, Lehman has agreed to withdraw its objection to the scheduled distribution by Liberty Square I on October 15, 2012 and the Parties expect such distribution to go forward.

2

WHEREAS, in light of the settlement between LS, Lehman, and Holdings, the Trustee has determined to interplead the Escrowed Funds so the Bankruptcy Court can direct how such funds should be applied (the "Interpleader").

NOW, THEREFORE, in consideration of the recitals set forth above and the promises made herein, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Payment and Release.  LS shall instruct the Trustee to pay, and the Trustee shall pay, the Settlement Amount, without deduction, set-off or counterclaim, to Lehman within five (5) business days of the date this Termination Agreement is effective pursuant to Section 4 of this Termination Agreement.  In consideration of each other Party's execution of this Termination Agreement, the settlement, and the payment of the Settlement Amount without deduction, set-off or counterclaim to Lehman, each Party, on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges, and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, principals, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, obligations, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have, or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.  For the avoidance of doubt, the foregoing release does not include the Parties' obligations under this Termination Agreement.

Section 2.    Representations.  Each Party represents and warrants to each other Party that (i) the execution, delivery, and performance by such Party of this Termination Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose new or additional facts material to the Agreement Documents or this Termination Agreement, and (vii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown.  Additionally, Lehman and Holdings represent and

warrant to LS that this Termination Agreement is being entered into in accordance with, and pursuant to, the authority granted to Lehman and the Plan Administrator by the Plan. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into this Termination Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement. These representations and warranties shall survive the execution of this Termination Agreement indefinitely without regard to statutes of limitations.

Section 3. <u>Execution in Counterparts</u>. This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 4. <u>Effectiveness</u>. This Termination Agreement shall become effective on the date following entry of an order by the Bankruptcy Court, including but not limited to in the form of a "so ordered" stipulation, approving this Termination Agreement (the "Approval Order") that becomes final because the time to appeal by any party with standing to appeal has run with no appeal being filed or, if appealed, is affirmed and such affirmance is not subject to further appeal or the time for the appeal has run with no further appeal being filed (a "Final Order"). For the avoidance of doubt, any Transactions that are not already terminated according to their terms will terminate automatically on the effective date of this Termination Agreement. Unless and until the parties have executed this Termination Agreement and the Bankruptcy Court has entered the Approval Order and it has become a Final Order, the Termination Agreement shall remain ineffective. In the event that the Bankruptcy Court does not enter an Approval Order or the Approval Order does not become a Final Order, this Termination Agreement shall be null and void and of no force and effect and it shall not have any res judicata or collateral estoppel effect against the Parties, and each of the Parties' respective interests, rights, remedies, and defenses shall be restored as if this Termination Agreement had never been executed.

Section 5. <u>Notice of Settlement</u>. Within seven (7) business days after its execution of this Termination Agreement, LS shall direct the Trustee to inform holders of notes issued by LS ("Noteholders") of this Termination Agreement and the Interpleader if filed (the "Noteholder Notification"). Such Noteholder Notification will (i) be sent to Noteholders at least thirty (30) calendar days prior to the Bankruptcy Court's scheduled hearing of any motion for the entry of an Approval Order, (ii) be made through a clearing service such as the Depository Trust Company or other means determined by the Trustee, (iii) contain a copy of the Termination Agreement that redacts the Settlement Amount, (iv) contain a copy of the Interpleader if filed, and (v) inform Noteholders that they are entitled to a non-redacted copy of the Termination Agreement upon written request to the Trustee and entry into an appropriate confidentiality agreement.

Section 6. <u>Further Assurances</u>. The Parties agree that they (i) shall cooperate in determining the best procedure for and use reasonable best efforts in seeking entry of the Approval Order, (ii) shall execute and deliver, or shall cause to be executed and delivered, such

4

documents and other papers and shall take, or shall cause to be taken, such further actions as may be reasonably required to carry out the provisions of this Termination Agreement and give effect to the transactions contemplated by the Termination Agreement; (iii) shall refrain from taking any actions that could reasonably be expected to impair, delay, or impede the entry of the Approval Order; and (iv) without limiting the foregoing, shall use their reasonable best efforts to cause all of the conditions to the obligations of themselves and the other Party hereunder to be satisfied. The Parties further agree that if the Trustee does not file the Interpleader, the Parties will use reasonable best efforts to obtain the Approval Order by other procedural means.

Section 7.    <u>Related Claims</u>. The Parties acknowledge and agree that Lehman, Holdings, and any of the Chapter 11 Entities may object through a filing with the Bankruptcy Court to any proofs of claim filed against any of them in relation to the Agreement Documents or the Transactions. Pending the filing of such objections, any such proofs of claim and related Derivatives Questionnaires and/or Guarantee Questionnaires shall be deemed amended to reflect that any amounts sought from any of the Chapter 11 Entities is $0.0. LS agrees not to challenge or object to such objections if filed.

Section 8.    <u>Dismissal of Adversary Proceeding</u>. Lehman agrees that, within 30 days after the Effective Date, it will dismiss the Adversary Proceeding with prejudice if the Adversary Proceeding is still pending.

Section 9.    <u>Governing Law</u>. This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Termination Agreement or to enforce the terms hereof and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 10.    <u>Special Provision for Unknown Claims</u>. All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 1. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 11.    <u>Confidentiality</u>. The Parties shall not disclose the Settlement Amount ("Confidential Information") to any person other than to their directors, officers, employees, counsel, Wellington Asset Management (solely in its role as Investment Manager of LS), and other advisors (hereinafter, "Related Party" or collectively, the "Related Parties") (it being understood that the Parties shall ensure that such Related Parties will be informed in advance of the confidential nature of the Confidential Information and that the Confidential Information is subject to the SPV ADR Order, and will be directed to maintain the confidentiality of such

5

Confidential Information), except as may be required by law, including but not limited to as may be required by United States federal securities and bankruptcy laws, provided that the Confidential Information may be disclosed pursuant to the terms of the SPV ADR Order to Noteholders who agree in writing to maintain the confidentiality of the Confidential Information and to abide by the confidentiality provisions of the SPV ADR Order.  Notwithstanding the foregoing, the Settlement Amount shall be disclosed to the Bankruptcy Court, the Office of the United States Trustee for Region 2, the Official Committee of Unsecured Creditors, and any other party directed by the Bankruptcy Court.  The Parties acknowledge and agree that any motion or stipulation publicly filed with the Bankruptcy Court for purposes of obtaining entry of the Approval Order shall include a copy of this Termination Agreement from which the Settlement Amount shall be redacted and that the Parties shall endeavor to keep the Settlement Amount out of the public record.

If any Party or any Related Party becomes legally obligated (whether by court or regulatory order or otherwise) to disclose the Confidential Information, that Party or such Related Party, as the case may be, will promptly provide the other Parties, if permitted by law, with notice of such proposed disclosure so that such other Parties may seek a protective order or other appropriate remedy.  If such a protective order or other protective remedy is not obtained, the Party or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and the Party or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

Section 12. <u>Successors and Assigns</u>.  The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 13. <u>Amendment</u>.  This Termination Agreement may only be amended, modified, superseded, or canceled and any of the terms, covenants, representations, warranties, or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 14. <u>Entire Agreement</u>.  This Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 15. <u>Capacity</u>.  Each of the Parties acknowledges and agrees that Lehman Brothers Holdings Inc. is executing this Termination Agreement on behalf of Lehman in its capacity as Plan Administrator of Lehman and shall not be subject to any liability or responsible to take any action on its own behalf by virtue of signing this Termination Agreement in such capacity.

Section 16. <u>Construction</u>.  This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

LIBERTY SQUARE CDO I, LIMITED

By: _____
Name:     **Martin Couch**
Title:    Director

LIBERTY SQUARE CDO I, CORP.

By: _____
Name:     Donald J. Puglisi
Title:    President

LIBERTY SQUARE CDO II, LIMITED

By: _____
Name:     **Martin Couch**
Title:    Director

LIBERTY SQUARE CDO II, CORP.

By: _____
Name:     Donald J. Puglisi
Title:    President

7

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By: _____
Name: Robert Hershan
Title: Senior Vice President


LEHMAN BROTHERS HOLDINGS INC.

By: Lehman Brothers Holdings Inc., as Plan Administrator

By: _____
Name: Robert Hershan
Title: Senior Vice President

8