KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Eric R. Wilson
Jason R. Adams
Jennifer D. Raviele

Attorneys for DekaBank Deutsche Girozentrale, DEKA
International S.A., and International Fund Management S.A.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Case No. 08–13555 (SCC)<br><br>Jointly Administered<br><br>**Response Deadline: Feb. 5, 2015 at 4:00 p.m.**[1]<br>**Hearing: Feb. 19, 2015 at 10:00 a.m.**[2] |

### RESPONSE TO LBHI'S FOUR HUNDRED FIFTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

DekaBank Deutsche Girozentrale, DEKA International S.A., and International Fund Management S.A. (collectively, "DekaBank") by and through their undersigned counsel, Kelley Drye & Warren LLP, hereby file this response (the "Response") to Lehman Brothers Holdings Inc.'s ("LBHI") *Four Hundred Fifty-Fifth Omnibus Objection To Claims (No Liability Claims)*[3] (the "Objection"). In support of this Response, DekaBank respectfully states as follows:

---

[1] Extended by agreement of counsel to LBHI with respect to DekaBank (as defined below).

[2] Adjourned pursuant to, among others, *Notice of Adjournment of Hearing on the Four Hundred Fifty-Fifth Omnibus Objection to Claims (No Liability Claims) Solely as to Certain Claims*. Docket Entry No. 47782.

[3] Docket Entry No. 42105.

**PRELIMINARY STATEMENT**

1. LBHI's objection that DekaBank has failed to "set forth any legal and/or factual justification for asserting a claim" against LBHI is without merit and must be denied.[4] As set forth in DekaBank's timely filed claims against LBHI, DekaBank has primary claims against Lehman Brothers (Luxembourg) S.A. ("Lehman Luxembourg") on the basis of failed securities lending agreements between the parties. DekaBank properly asserted these claims in Lehman Luxembourg's foreign proceedings (the "Luxembourg Proceedings"), which claims (the "Luxembourg Claims") have yet to be finally approved by the court (the "Luxembourg Court") in the Luxembourg Proceedings. Attached hereto as Exhibit A is a detailed summary of the status of the Luxembourg Proceedings prepared by DekaBank's Luxembourg counsel. DekaBank's claims against LBHI are, in turn, based upon LBHI's guaranty of Lehman Luxembourg's obligations to DekaBank. LBHI does not dispute any of these facts.

2. Notwithstanding the foregoing, LBHI seeks to disallow the LBHI Claims (as defined below) based upon LBHI's assertion that DekaBank is a net debtor to Lehman Luxembourg as a result of Lehman Luxembourg's right to setoff certain collateral posted by Lehman Luxembourg. However, the Luxembourg Claims, including, *inter alia*, the matter related to setoff, have not yet been finally approved in the Luxembourg Proceedings by the Luxembourg Court. As LBHI is aware, DekaBank and the liquidators in the Luxembourg Proceedings (the "Liquidators") have been engaged in settlement discussions to resolve the Luxembourg Claims. Any settlement must be approved by the Luxembourg Court before it is effective and binding on the parties. LBHI cannot, as it proposes, simply presume a favorable resolution of the Luxembourg Claims that would entitle LBHI to the relief requested. The

---

[4] Objection at ¶ 10.

2

Luxembourg Claims are subject to foreign law and the resolution thereof is solely within the jurisdiction of the Luxembourg Court. If the Objection is granted, DekaBank's claims would be expunged, and DekaBank would be left without recourse if the Luxembourg Claims are not resolved in the Luxembourg Proceedings in the way predicted by LBHI.

3. DekaBank recognizes that if the Luxembourg Court ultimately approves the settlement, then LBHI's request to expunge the claims may be appropriate. LBHI's request to disallow the claims at this time, however, is premature. DekaBank's request for LBHI to further adjourn the Objection to allow the process to play out in the Luxembourg Proceedings has been denied. As such, to avoid unnecessary litigation and related expense over issues that should ultimately become moot through the Luxembourg Proceedings, DekaBank requests that the Court adjourn the Objection for one-hundred and twenty days. If, however, the Court believes that the nature, validity, and amount of the Luxembourg Claims should be adjudicated in these proceedings, DekaBank requests that the Court set a briefing schedule for the parties to address the myriad of issues necessary to resolve DekaBank's direct claims against LBHI based upon LBHI's guaranty of Lehman Luxembourg's obligations to DekaBank.

## BACKGROUND

4. On or about September 21, 2009, DekaBank timely filed, among other claims, the following claims against LBHI (the "LBHI Claims"):

| Claim No. | Claimant | Debtor | Amount |
|---|---|---|---|
| 19986 | International Fund Management S.A. | Lehman Brothers Holdings Inc. | no less than $43,249,153.35 |
| 19987 | International Fund Management S.A. | Lehman Brothers Holdings Inc. | no less than $40,169,117.79 |
| 19988 | DEKA International S.A. | Lehman Brothers Holdings Inc. | no less than $24,653,496.49 |
| 27709 | DekaBank Deutsche Girozentrale | Lehman Brothers Holdings Inc. | no less than $72,981,090.60 |

3

5. As set forth in the LBHI Claims, DekaBank, and Lehman Luxembourg were parties to a Global Master Securities Lending Agreement dated as of March 29, 2006 (as amended, the "ISLA"). The ISLA is governed by English law.

6. DekaBank properly asserted the Luxembourg Claims against Lehman Luxembourg in the Luxembourg Proceedings arising from terminated securities lending agreements under the ISLA. The LBHI Claims are premised on LBHI's guarantee (the "Guarantee") of Lehman Luxembourg's obligations to DekaBank under the same securities lending agreements that are the subject of the Luxembourg Claims. As set forth in the attachments to the LBHI Claims, if the Luxembourg Court approves the setoff with respect to certain collateral delivered to DekaBank, then DekaBank believes that (i) DekaBank Deutsche Girozentrale and Dekalux-Midcap, IFM-Invest: Vermögensmanagement Aktien, Dekalux-Europa, Deka-Nachhaltigkeit Aktien and IFM-Invest: Aktien Europa, as represented by their management companies, will ultimately be net debtors to Lehman Luxembourg, and (ii) Deka-Eurostocks, Deka Private Banking Portfolio Aktien Euroland, and Deka-Europavalue, as represented by their management companies, will ultimately be net creditors of Lehman Luxembourg. As of the date of this Response, however, the Luxembourg Claims, and/or the related settlement, have not yet been resolved by the Luxembourg Court.

7. DekaBank and the Liquidators have been negotiating since the beginning of 2014. At a settlement meeting on June 17, 2014, the parties agreed in principle on the terms of a potential settlement subject to definitive documentation and approval in the Luxembourg Proceedings. Upon information and belief, LBHI is fully aware of the negotiations with the Liquidators. A representative of LBHI has been present during some, if not all, of these negotiations.

8. During July 2014, the Liquidators provided DekaBank with their first draft of the proposed settlement agreement. After numerous revisions and discussions, the parties agreed on the terms and conditions of the settlement agreement, which DekaBank believes to be in final form and is currently waiting for confirmation of that from the Liquidators. Once DekaBank receives this confirmation, the parties will execute the agreement and then submit it to the Luxembourg Court for approval. Thereafter, the creditors of Lehman Luxembourg will have an opportunity to object to the accreditation of DekaBank as a creditor of Lehman Luxembourg as set out in the settlement agreement before the settlement agreement becomes final.

9. On January 17, 2014, LBHI filed the Objection seeking to disallow and expunge the LBHI Claims. The Objection is a "no liability" objection, asserting only that the LBHI Claims: (i) "provide no basis for liability on the part of the Chapter 11 Estates"; and (ii) "do not set forth any legal and/or factual justification for asserting a claim against the applicable Chapter 11 Estates."[5]

10. LBHI's assertion that the LBHI Claims fail to set forth a legal or factual basis for asserting the claims is directly refuted by LBHI's explanation for the proposed disallowance. LBHI admits that the LBHI Claims are based on LBHI's guarantee of the obligations of Lehman Luxembourg.[6] Notably, LBHI does not dispute: (i) the amount, validity, or enforceability of the Luxembourg Claims; (ii) the validity or enforceability of the Guarantee; or (iii) DekaBank's right to assert the LBHI Claims premised on the Guarantee.

---

[5] Objection at ¶¶ 8, 10.

[6] *See* Objection at Exhibit A, pp. 2–5.

5

## RESPONSE

11. The Objection raises no substantive issues with respect to the validity of the LBHI Claims or the enforceability of the Guarantee against LBHI. As a result, it is appropriate for the Court to deny the Objection.

12. DekaBank and the Liquidators, with the involvement of an LBHI representative, have agreed on the terms and conditions of a settlement agreement to resolve the Luxembourg Claims. As of the date of this Response, DekaBank is awaiting confirmation from the Liquidators that the settlement agreement is in final form. Once confirmation is received, the settlement agreement will be executed and then submitted to the Luxembourg Court for approval, a required step under Luxembourg law. Thereafter, Lehman Luxembourg creditors will have an opportunity to object to the accreditation of DekaBank as a creditor of Lehman Luxembourg as set out in the settlement agreement before the settlement agreement becomes final. Once the settlement becomes final, DekaBank intends to work with LBHI to resolve the LBHI Claims. Until that time, the LBHI Claims remain valid and should not be disallowed based upon LBHI's conjecture that the settlement related to the Luxembourg Claims will become final in the Luxembourg Proceedings.

13. Judicial economy and comity dictate that this Court defer to the Luxembourg Proceedings to resolve the matter between DekaBank and Lehman Luxembourg, which is not a debtor in these chapter 11 proceedings. LBHI's request for the Court to rule on issues of Luxembourg and English law between DekaBank and Lehman Luxembourg contravenes the spirit and intent of the Cross-Border Insolvency Protocol For The Lehman Brothers Group Of Companies.[7] That protocol provides for the cooperation of the Debtors with

---

[7] *See* Docket Entry No. 4020.

foreign representatives in matters relating to the review of and objection to claims.[8] If the Court does not adjourn or deny the Objection, DekaBank requests that the Court set an appropriate briefing schedule to provide the parties with an opportunity to fully brief the various legal issues.

## I.     The Objection Fails To Overcome The *Prima Facie* Validity Of The LBHI Claims

14.    LBHI objects to the LBHI Claims based upon the clearly erroneous theory that DekaBank failed to set forth a legal or factual justification for the claims.  The Objection is devoid of any allegations, facts, or evidence that the LBHI Claims are invalid, were improperly filed, or that the supporting documentation provided by DekaBank is lacking in any respect.  More specifically, the Objection fails to raise any dispute regarding the Luxembourg Claims or DekaBank's guarantee rights against LBHI.  In the absence of any such allegations, facts, or evidence, the Court should deny the Objection outright.

15.    Pursuant to section 502(a) of the Bankruptcy Code, a proof of claim is deemed allowed unless a party in interest objects.[9]  Bankruptcy Rule 3001(f) explicitly states, "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and the amount of the claim."  A claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's *prima facie* case.[10]  As the LBHI Claims provide a detailed description of the bases for the claims, the Guarantee, and the specific amounts owed to DekaBank by LBHI, they establish the *prima facie* validity of the LBHI Claims.

---

[8]     *See id.*

[9]     11 U.S.C. § 502(a).

[10]    *See In re Fidelity Holding Company, Ltd.*, 837 F.2d. 696, 698 (5th Cir. 1988); *In re Inter-Island Vessel Company, Inc.*, 98 B.R. 606, 608 (Bankr. D. Mass. 1988).

16. The burden of proof therefore shifts to LBHI to produce sufficient evidence to negate the *prima facie* validity of the LBHI Claims.[11] Before the burden of demonstrating the validity of the claim shifts back to DekaBank, LBHI must present contradictory evidence of at least equivalent value to the evidence supporting the LBHI Claims.[12] Because LBHI has introduced no evidence to the invalidate the LBHI Claims, DekaBank need offer no further proof of the merits of the LBHI Claims.

## II. The Objection Should Be Adjourned For One Hundred And Twenty Days

17. If the Court does not deny the Objection outright, DekaBank requests that the Court adjourn the hearing on the Objection for one hundred and twenty days to allow for the resolution of the Luxembourg Claims and/or the related settlement in the Luxembourg Proceedings. Litigating those claims here would duplicate the efforts of the parties in the Luxembourg Proceedings and usurp the Luxembourg Court's authority to decide the matters that impact Lehman Luxembourg. The Luxembourg Court is best situated to resolve the issue of whether the Luxembourg Claims will be recognized in its own proceedings.

18. As set forth above, DekaBank holds valid claims against LBHI based on LBHI's guarantee of Lehman Luxembourg's obligations. A one hundred and twenty-day adjournment will allow the parties to finalize and execute the settlement agreement, seek approval of the settlement by the Luxembourg Court, and for the settlement to become final in

---

[11] *In re Reilly*, 245 B.R. 768, 773 (2d Cir. BAP 2000); *In re Michigan-Wisconsin Transportation Co.*, 161 B.R. 628, 636 (Bankr. W.D. Mich. 1993) ("a party objecting to a claim must present affirmative evidence to overcome the presumptive validity of a properly filed proof of claim").

[12] *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *In re Nejedlo*, 2005 WL 941534 (Bankr. E.D. Wisc. Apr. 14, 2005); *In re Nat'l Steel Corp.*, 321 B.R. 901, 905 (Bankr. N.D. Ill. 2005) ("[i]n practice, the objector must produce evidence which, if believed, would "refute at least one of the allegations that is essential to the claim's legal sufficiency") (quoting *Allegheny Int'l, Inc.*, 954 F.2d at 173).

the Luxembourg Proceedings. Once resolved through the Luxembourg Proceedings, a hearing on the Objection should become moot.[13]

### III. If The Objection Is Not Denied Or Adjourned, The Court Should Establish A Briefing Schedule

19.     If the Court does not deny or adjourn the Objection, DekaBank requests that the Court establish a briefing schedule to address the merits of the Objection. For the Court to rule on the merits, the parties will need to brief numerous issues related to the LBHI Claims and the Luxembourg Claims, including, but not limited to: (i) setoff rights in a foreign proceeding under applicable foreign law; (ii) the proper amount of the claims, including the amount of attorneys' fees and other related fees and expenses that may be due to DekaBank under the securities lending agreements; and (iii) the impact of this Court's ruling on setoff in the Luxembourg Proceedings.

---

[13]     DekaBank reserves its right to seek a further adjournment of the hearing on the Objection based on the status of the Luxembourg Proceedings.

WHEREFORE, DekaBank respectfully requests that this Court (i) (a) deny the Objection, or (b) adjourn the hearing on the Objection for one hundred and twenty days; or (ii) in the alternative, establish a briefing schedule to determine the merits of the Objection; and (iii) grant such other and further relief as is just and proper.

Dated:  February 5, 2015
      New York, New York

      KELLEY DRYE & WARREN LLP

      By: */s/ Eric R. Wilson*
          Eric R. Wilson
          Jason R. Adams
          Jennifer D. Raviele
      101 Park Avenue
      New York, New York 10178
      Telephone:  (212) 808-7800
      Facsimile:  (212) 808-7897

      Attorneys for DekaBank Deutsche
      Girozentrale, DEKA International S.A., and
      International Fund Management S.A.

# **EXHIBIT A**



From:    Wildgen, Partners in Law, 69 boulevard de la Pétrusse, L-2320 Luxembourg

Date:    February 5, 2015

RE:      Memorandum on the status of the liquidation proceedings of the company Lehman Brothers (Luxembourg) S.A. in Luxembourg as far as DekaBank Deutsche Girozentrale is concerned.

### I. Liquidation Proceedings of Lehman Brothers in Luxembourg

According to a judgement rendered by the competent Luxembourg court sitting in commercial matters (*Tribunal d'Arrondissement de et à Luxembourg*, the "**Court**") on October 3, 2008, insolvency proceedings have been opened over the company Lehman Brothers (Luxembourg) S.A. ( "**Lehman Brothers**") due to its illiquidity and over-indebtedness (*cessation de paiements*). Pricewaterhouse Coopers S.à r.l. had been appointed insolvency administrator at a first stage.

Given the fact that the insolvency proceedings did not regularise the financial situation of Lehman Brothers, the national regulator of the financial sector in Luxembourg, being the Commission de Surveillance du Secteur Financier (the "**CSSF**"), filed on March 16, 2009 an application with the Court requesting the subsequent opening of liquidation proceedings over Lehman Brothers and the dissolution of Lehman Brothers.

Based on such application, on April 1, 2009, the Court rendered an order instructing the liquidation and subsequent dissolution of Lehman Brothers and appointed Mr. Jacques DELVAUX and Mr. Laurent FISCH as its liquidators (the "**Liquidators**"). Furthermore, the Court determined the date on which cessation of payments took place, *i.e.* March 24, 2008, and the date by which claims shall be filed with the Court, *i.e.* August 1, 2009.

It should be noted that, according to Luxembourg Law, liquidation proceedings occur in three different phases, being the following:

Phase 1:    Judgment / court order opening liquidation proceedings over the company;
Phase 2:    Termination of the verification of claims deposited by the different creditors and filing of the liquidator's report with the court;
Phase 3:    Judgment / court decision pronouncing the liquidation and subsequent dissolution of the company.



For the time being and for the case at hand regarding DekaBank Deutsche Girozentrale ("**DekaBank**") and the Deka Funds, being (i) Dekalux-Europa TF, (ii) IFM-Invest: Aktien Global, (iii) IFM-Invest: Aktien Europa, (iv) Dekalux-Europavalue (formerly Swiss Vermögensmanagement Aktien Euroland), (v) Deka-Private Banking Portfolio Aktien Euroland, (vi) Dekalux-Midcap TF, (vii) Dekalux-Globalvalue and (viii) Dekalux-Eurostocks, each represented by its respective management company Deka International S.A. or International Fund Management S.A., (the "**Deka Funds**"), the liquidation of Lehman Brothers may still be considered as being in the first phase given the fact that the Liquidators have not filed their report on the claims deposited by DekaBank and the Deka Funds with the Court. Nevertheless, we have been informed that several reports have already been rendered so that the exact status of the proceedings may differ from day to day.

We have been told that the Liquidators have been accelerating the closing of the insolvency proceedings under the pressure of the main creditor of Lehman Brothers since December 2013. In this respect, the Liquidators have requested the Court to approve the distribution of a first liquidation dividend to creditors whose claims have already been positively reported on. According to the Court's judgments dated January 10, 2014 and January 17, 2014, creditors wishing to benefit directly from such a distribution were requested to file their claims with the Court by February 28, 2014. Cash reserves were constituted for those claims which either had not been verified by the Liquidators or not yet positively reported to the Court (as far as we understand from the Liquidators, including for the claims deposited by DekaBank).

A first liquidation dividend was distributed to the main creditor of Lehman Brothers in March 2014.

## II. Status of the liquidation proceedings regarding the claims deposited by DekaBank

The claims of DekaBank and of the Deka Funds against Lehman Brothers (the "**Claim Declarations**") were deposited at the Court within the insolvency proceedings on April 1, 2009 and within the liquidation proceedings on July 29, 2009. The Claim Declarations were based on the English law governed ISLA Global Master Securities Lending Agreement entered into by and between DekaBank, the Deka Funds, and Lehman Brothers on March 28, 2006 and as amended on February 19, 2008 (date of agreement) / 20 February 2008 (signing date) (the "**ISLA Agreement**") and subject to counterclaims of Lehman Brothers against DekaBank and the Deka Funds based on the same ISLA Agreement.

Given the fact that DekaBank and the Deka Funds were not able to determine in 2009 whether the claims filed by them and the existing counterclaims of Lehman Brothers may be set-off according to English Law and the provisions of the ISLA Agreement, they decided to declare gross amounts in

2



order to ensure that the rights of DekaBank and the Deka Funds are preserved. We want to stress that if DekaBank and the Deka Funds would only have declared net amounts within the Claim Declarations in 2009, Lehman Brothers would have been able to request a set-off on such net amounts due to the formal absence of declaration of gross amounts before set-off. For this reason, the Deka Funds who would become a net debtor of Lehman Brothers once a set-off occurred, declared claims. Therefore, it was intended that DekaBank and the Deka Funds would either (i) reduce the amounts of the Claim Declarations or (ii) as the case may be, withdraw several of the Claim Declarations if and when the set-off is approved by Lehman Brothers and its Liquidators.

Following the initial filing of such Claim Declarations, DekaBank and the Deka Funds entered into discussions with the Liquidators through their representatives in the United Kingdom, Travers Smith LLP, in order to settle the existing mutual claims by an out-of-court agreement between the parties.

Furthermore, direct discussions began with the Liquidators in Luxembourg (at a first stage) without the interposition of Travers Smith during October 2013. During these discussions, it became apparent around March 2014 that neither party would proceed with further negotiations unless the parties agreed to recognize the set-off, at least in principle until the Luxembourg Court approved the settlement on a final basis. In exchange for the Liquidators' acknowledgement of the set-off, the Liquidators required that DekaBank and the Deka Funds withdraw certain claims and amend and restate other claims, which DekaBank and the Deka Funds did during March 2014.

Following several exchanges and discussions between DekaBank, Lehman Brothers, and Lehman Brothers' main creditor in April and May 2014, the parties agreed in principle on all outstanding items during a settlement meeting held in Luxembourg on June 17, 2014.

The parties agreed that the final settlement shall be agreed in writing within an out-of-court settlement agreement (the "**Settlement Agreement**") and shall indicate the final amounts owed by the Parties to each other. The terms and provisions of the Settlement Agreement have been discussed between the parties since June 2014. Negotiations on the mechanism triggering the payment of the amounts due by DekaBank and the Deka Funds to Lehman Brothers significantly delayed the settlement process as the Liquidators insisted that DekaBank and the Deka Funds unconditionally settle any outstanding amount without being officially and indisputably accredited as creditor of Lehman Brothers regarding the amounts due by Lehman Brothers.

In order to preserve their mutual rights existing under the ISLA Agreement and the agreements related thereto and in view of the settlement negotiations, on September 8, 2014, the parties entered into a standstill agreement pursuant to which the parties agreed not to sue each other within the standstill period as defined therein.

3



At the end of January 2015, the parties finally agreed on the terms and conditions of the Settlement Agreement, which we consider being in a final execution form. We are currently awaiting the final confirmation from the Liquidators in this respect in order to start the execution process. We expect that an exchange of signature pages will occur mid-February at the latest.

### III. Procedure to be followed in order to effect a settlement agreement between the parties

Once the Settlement Agreement has been executed, it will be submitted to the remaining creditors of Lehman Brothers for their information and consultation. Although creditors of Lehman Brothers may express their confirmation or concerns about the Settlement Agreement, it is not mandatory to seek for an explicit approval from such creditors at this stage. The Liquidators will be in charge of notifying the creditors of Lehman Brothers of the intended settlement and the terms and conditions of the Settlement Agreement. Lehman Brothers Holding Inc., in its position as main creditor of Lehman Brothers, confirmed per email that they will support the Settlement Agreement in the form as commercially agreed during the settlement meeting held in Luxembourg on June 17, 2014 and will not object to it. It is currently, however, not entirely clear if Lehman Brothers Holding Inc. will issue a written confirmation in that respect, which DekaBank and the Deka Funds have requested.

After having notified the creditors about the intended settlement with DekaBank and the Deka Funds and the elapse of a short consultation period (normally between three and five days upon notification), the Settlement Agreement will be filed with the Court for final approval at its discretion. In this respect, any document evidencing the arrangements and agreements between the parties shall be filed with the Court pronouncing a ruling as to whether the Settlement Agreement is approved or rejected. According to the information provided to us, the Court already granted its informal approval of the Settlement Agreement (at least as far as we are aware to the main terms and conditions of such agreement), so that a rejection by the Court of the executed Settlement Agreement is not expected from our side.

Upon approval by the Court, a notification stating that the Settlement Agreement has been approved and indicating the amounts accepted by the Liquidators under the Claim Declarations shall be published on the Court's public notice board for a period of ten days. The next possibility to proceed to such a publication will be at the beginning of March 2015. We draw your attention to the fact that such a publication onto the Court's notice board may only be made by the Liquidators four times a year at specific dates (in order to avoid that the creditors would have to consult such notice board on a daily basis). In order to speed up the liquidation proceedings of Lehman Brothers, the Liquidators requested the Court to allow that the publication of creditors accepted by the Liquidators be carried out on a



monthly basis. For the time being, we have not been notified about any ruling of the Court in this respect.

Upon elapse of the ten-day notice period and in the absence of any opposition made by one of the creditors of Lehman Brothers, the Settlement Agreement would take effect and bind the parties thereto. According to the terms and provisions of the Settlement Agreement, such agreement will terminate and henceforth cease to produce effect between the parties thereto if (i) the Court does not approve the Settlement Agreement in full before 31 December 2015, (ii) an objection by any third party against the accreditation of DekaBank or the Deka Funds is upheld by the Court, or (iii) the accreditation of DekaBank or the Deka Funds as creditors of Lehman Brothers as agreed in the Settlement Agreement does not occur before 31 December 2015. In the event that the Settlement Agreement is terminated for any reason whatsoever, the parties may either enter into new discussions, request that the Court render a final ruling on the Claim Declarations and their respective counterclaims, or DekaBank and the Deka Funds may refile their claims in full for the amounts due.

Although the extraordinary general meeting of creditors and the Court usually follow and adopt the recommendations made by the Liquidators according to our experience, we may not confirm that an out-of-court agreement will be approved in any case by the Court.

However, we expect that we may still be able to receive a final and binding settlement between DekaBank and Lehman Brothers until mid of March 2015.

Finally, we draw your attention to the fact that the rules and the procedure applying to liquidation proceedings are issued out of case-law and henceforth may slightly differ from case to case.

Yours sincerely,

Mevlüde-Aysun Tokbag
Partner

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Eric R. Wilson
Jason R. Adams
Jennifer D. Raviele

Attorneys for DekaBank Deutsche Girozentrale, DEKA International S.A., and International Fund Management S.A.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Case No. 08–13555 (SCC)<br><br>Jointly Administered |

## CERTIFICATE OF SERVICE

I, Jennifer D. Raviele, hereby certify that, on February 5, 2015, I served a true and complete copy of the foregoing document upon on the following parties by first-class mail postage pre-paid:

| | |
|---|---|
| The Honorable Shelley C. Chapman<br>United States Bankruptcy Court<br>One Bowling Green, Courtroom 621<br>New York, NY 10004 | Attn: Robert J. Lemons, Esq.<br>Attn: Maurice Horowitz, Esq.<br>Weil, Gotshal & Mages LLP<br>767 Fifth Avenue<br>New York, NY 10153 |
| Attn: William K. Harrington, Esq.<br>Attn: Susan Golden, Esq.<br>Attn: Andrea B. Schwartz, Esq.<br>Office of the United States Trustee<br>U.S. Federal Office Building<br>201 Varick St, Ste 1006<br>New York, NY 10014 | |

By: */s/ Jennifer D. Raviele*
Jennifer D. Raviele