WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David J. Lender
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings
Inc. and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**OBJECTION TO DR. THOMAS MARSONER'S**
**MOTION TO DEEM PROOFS OF CLAIM TIMELY FILED**

## **TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................ 1

Background ......................................................................................................................... 3

Objection ............................................................................................................................ 6

      I.     The Chapter 11 Estates Provided More Than Sufficient Notice of
The Bar Date ........................................................................................................ 6

      II.    Marsoner Was Not A "Known Creditor" Entitled To Actual Notice .................... 8

      III.   Marsoner Has Failed To Establish A Basis For Relief Under
Bankruptcy Rule 9024 ....................................................................................... 11

      IV.   Marsoner Has Not Demonstrated Exceptional Circumstances
Warranting Relief ............................................................................................... 12

Reservation of Rights ....................................................................................................... 17

Conclusion ........................................................................................................................ 18

WEIL:\95204151\11\58399.0011

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agway, Inc.*,
    313 B.R. 31 (Bankr. N.D.N.Y. 2004) ..................................................................7

*In re Best Prod. Co., Inc.*,
    140 B.R. 353 (Bankr. S.D.N.Y. 1992) ............................................................ 6-7

*In re Enron Corp.*,
    419 F.3d 115 (2d Cir. 2005) ...........................................................................13

*In re Hooker Invs., Inc.*,
    937 F.2d 833 (2d Cir. 1991) ...........................................................................13

*In re Lehman Bros. Holdings Inc.*,
    433 B.R. 113 (Bankr. S.D.N.Y. 2010) *aff'd sub nom. CVI GVF (Lux) Master S.a.r.l. v.*
    *Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011) ................................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................. 6, 10

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) .........................................................................12-13

*In re U.S. Energy Sys., Inc.*,
    No. 12 CIV. 7107, 2013 WL 5204010 (S.D.N.Y. Sept. 16, 2013) ........................12

*In re U.S.H. Corp. of N.Y.*,
    223 B.R. 654 (Bankr. S.D.N.Y. 1998) ..................................................... 7, 8, 10

*U.S. v. Int'l Bhd. of Teamsters*,
    247 F.3d 370 (2d. Cir. 2001) .........................................................................13

*In re XO Commc'ns, Inc.*,
    301 B.R. 782 (Bankr. S.D.N.Y. 2003) *aff'd*, No. 04 CIV. 01489LAK, 2004 WL 2414815
    (S.D.N.Y. June 14, 2004) .............................................................7-8, 10-11, 13

**Statutes**

11 U.S.C. § 105(a) .............................................................................................11

11 U.S.C. § 502(b)(9)..........................................................................................16

**Other Authorities**

Fed. R. Bankr. P. 60 ..........................................................................................................*passim*

Fed. R. Bankr. P. 1015(b) ..........................................................................................................3

Fed. R. Bankr. P. 2002(g) ......................................................................................................4, 6

Fed. R. Bankr. P. 3003(c)(3) .....................................................................................................16

Fed. R. Bankr. P. 9024 ..........................................................................................................1, 11

WEIL:\95204151\11\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),[1] for the entities in the above referenced chapter 11 cases (collectively, the "Chapter 11 Estates"), including Lehman Commercial Paper Inc. ("LCPI"), submits this objection (the "Objection") to the motion (the "Motion"), dated December 30, 2014, of Thomas Marsoner ("Marsoner") for an order permitting Marsoner to file late proofs of claim, and respectfully represents as follows:

## Preliminary Statement

1.    In June of 2014, Marsoner executed a settlement agreement with his former employer, Lehman Brothers Europe, Ltd. ("LBEL") – a separately administered Lehman affiliate – and thereby settled a disputed claim that he had filed in LBEL's English administration on account of certain investment banking advisory services allegedly provided to LBEL.  Marsoner states in his declaration that after executing this settlement agreement, his English tax attorney informed him that "it applied to LBEL and the U.K. only."  Declaration of Thomas Marsoner ("Marsoner Decl.") ¶ 18.  As Marsoner himself admits, "[o]nly at that point did I commence analyzing my position under U.S. law."  Marsoner Decl. ¶ 18.  As a result, Marsoner now requests that this Court grant him the extraordinary relief requested in the Motion – relief from the bar date order pursuant to Bankruptcy Rule 9024 – so that he may file claims against LCPI and LBHI nearly five years after the deadline for filing proofs of claim in these chapter 11 cases.  The Motion is nothing more than Marsoner's last-ditch effort to duplicate his

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

allowed claim against LBEL. It falls short on the law and on the facts, is five years too late, and should be denied with prejudice.

2.      Marsoner argues that he is entitled to this extraordinary relief because he was a "known creditor" of LCPI and LBHI and thus entitled to actual notice of the bar date. But Marsoner was not a known creditor of either debtor. Neither debtor had any dealings or privity with Marsoner.[2] Indeed, Marsoner himself admits that it did not occur to him to file a claim against LCPI or LBHI until June of 2014 because he only ever worked for LBEL. Inasmuch as Marsoner was not a known creditor, LCPI was not required to provide Marsoner with actual notice of the bar date – publication notice (which LCPI did provide) was sufficient.

3.      To the extent Marsoner could claim to have been a known creditor of any debtor in these chapter 11 cases, that debtor would be Lehman Brothers Commercial Corporation ("LBCC"). LBCC listed Marsoner in its schedules as a counterparty to an executory contract because an electronic record of this contract appears in LBCC's books and records. However, LBCC has never located a copy of this contract. LBCC's only record of ever transacting with Marsoner is a single trade confirmation dating back to May of 2008. LBCC served notice of the bar date on Marsoner at the two addresses that it found in its records relating to this contract, and thus met its burden of providing notice to Marsoner at Marsoner's last known address. Notably, Marsoner is not seeking to file a claim against LBCC. In fact, since the commencement of LBCC's chapter 11 case, Marsoner has never contacted LBCC in connection with this contract.

---

[2] The fact that LBHI's UK branch wired Marsoner his compensation is irrelevant. As explained below, prior to the commencement of these chapter 11 cases, LBHI's UK branch functioned as the "banker" for most European entities. Accordingly, as was typical for most employees of Lehman's European affiliates, Marsoner's compensation for his work for LBEL was wired from the bank accounts of LBHI's UK branch on behalf of LBEL. The affiliates would subsequently reconcile their accounts through intercompany paydowns.

WEIL:\95204151\11\58399.0011

4.      In addition to being wrong on the facts and the law, the relief sought by Marsoner is grossly inequitable.  Marsoner was clearly aware of these chapter 11 cases and had the means and know-how to file timely proofs of claim.  Indeed, he filed a timely claim against Lehman Brothers Inc. ("LBI") in its SIPA liquidation, pending before this Court, four months before the bar date in these chapter 11 cases.[3]  He has given no explanation for why it took him so many years to think about filing a claim in these cases, or why he should be given special treatment.  If every creditor who had a Marsoner-like epiphany were granted the relief sought by Marsoner years after the bar date, the bar date order would be rendered meaningless.  The relief sought therefore threatens to cast a cloud over one of the most critical administrative orders entered in these cases.  It is wholly inappropriate under the facts and is not supported by the law. For these reasons, the Motion should be denied.

### Background

5.      On September 15, 2008 and periodically thereafter (the "Commencement Date"), the Chapter 11 Estates commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6.      LBCC included an executory contract with Marsoner on Schedule G of its amended schedules of assets and liabilities (the "Schedules"), which contract was described in the Schedules as a "Derivative Master Account Number 032002MARS."  [ECF No. 3938].  A copy of the relevant pages from the Schedules is attached hereto as Exhibit A.  The Schedules set

---

[3] LBI is the subject of a separate liquidation proceeding administered by the Bankruptcy Court for the Southern District of New York under the Securities Investor Protection Act of 1970, as amended ("SIPA"): Securities Investor Protection Corporation v. Lehman Brothers Inc. (Case No. 08-01420) (SCC) (SIPA).

forth the following address (the "Scheduled Address") for Marsoner with respect to such executory contract:

> MARSONER, THOMAS S
> One Broadgate 5th Floor
> London
> EC2M 7HA
> UNITED KINGDOM

Marsoner never filed or communicated any request pursuant to Bankruptcy Rule 2002(g)(1) designating a mailing address other than the Scheduled Address, despite having been listed on the Debtors' Schedules since June 15, 2009.

        7.      The only other record that LBCC has of any transactions with Marsoner is a trade confirmation dated March 3, 2008 (the "Trade Confirm"), attached as Exhibit A to the declaration of Thomas Behnke, filed concurrently with the Objection ("Behnke Decl.") [ECF No. 48198]. That trade confirmation does not list an address for Marsoner. Instead, it lists 25 Bank Street, which (as Marsoner notes in his declaration) was LBEL's address. *See* Marsoner Decl. ¶ 16.

        8.      By order dated July 2, 2009 (the "Bar Date Order"), the Court established September 22, 2009 at 5:00 p.m. as the deadline for filing proofs of claim against the Chapter 11 Estates (the "Bar Date")[4]. [ECF No. 4271 at 2]. The Bar Date Order stated that service of the Bar Date Notice "shall be deemed good, adequate, and sufficient notice if it is served by deposit in the United States mail, first class postage prepaid, on or before July 8 2009 upon . . . all known holders of claims listed on the Schedules at the addresses stated therein." *Id.* at 10. The Bar Date Order further stated that any holder of a claim against the Debtors that fails to file a proof of claim in accordance with the Bar Date Order would "forever be barred, estopped, and

---

[4] A separate bar date of November 2, 2009 was established for claims based upon Lehman Program Securities (as defined in the Bar Date Order).

enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto) . . . ." *Id.* at 9-10.

9.      In addition to providing the Bar Date Notice by mail to all parties known to the Debtors as having potential claims against the Debtors' estates, the Bar Date Notice was published in <u>The New York Times</u> (International Edition), <u>The Wall Street Journal</u> (International Edition), and <u>The Financial Times</u>.

10.     On July 8, 2009, the Chapter 11 Estates mailed notice of the Bar Date (the "<u>Bar Date Notice</u>") to, *inter alia*, Marsoner by first class mail at the Scheduled Address. *See* Corrected Aff. of Service of Herb Baer (the "<u>Baer Affidavit</u>") [ECF No. 9395].  As stated in the Motion, the Chapter 11 Estates also mailed the Bar Date Notice to Marsoner at four additional addresses that they located in their records. *Id.*[5]  The Chapter 11 Estates mailed the Bar Date Notice to these addresses solely because they appeared in LBCC's books and records. *See* Behnke Decl. ¶ 6.  None of the Bar Date Notices that the Chapter 11 Estates mailed for Marsoner were returned to the Chapter 11 Estates as undeliverable. *See* Declaration of Herb Baer ("<u>Baer Decl.</u>") ¶ 8.

11.     On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

---

[5] The Original Affidavit of Service incorrectly listed the address of certain parties that were served, and provided that all bar date notices that were sent to parties located in Malta and Mexico were sent to addresses in Morocco and Montenegro, respectively.  As described in further detail in the declaration of Herb Baer filed concurrently with the Objection [ECF No. 48197], this systemic typographical error occurred in the creation of the Original Service Affidavit, but did not occur in the actual mailing of the Bar Date Order and the Bar Date Notice.  In fact, bar date notices were sent to the correct addresses for creditors located in Malta and Mexico.  To correct any errors on the Original Affidavit of Service, on June 3, 2010, Mr. Baer filed a corrected affidavit of service ("<u>Corrected Affidavit of Service</u>") [ECF No. 9395], attached hereto as <u>Exhibit B</u> (due to the voluminous size of the Corrected Affidavit of Service, the exhibit annexed thereto has been modified to only incorporate the relevant pages).  The Corrected Affidavit of Service fully superseded the Original Affidavit of Service and noted that the Bar Date Order was sent to Marsoner's correct addresses in Malta and Mexico.

5

## Objection

### I.    The Chapter 11 Estates Provided More Than Sufficient Notice of The Bar Date

12.    Marsoner argues that the Chapter 11 Estates did not provide him with adequate service of the Bar Date Notice, but he is mistaken.  The Court expressly approved the manner of notice employed by the Chapter 11 Estates to provide Marsoner with actual notice of the Bar Date.  The Bar Date Order states that service of the Bar Date Notice in the manner described therein "shall be deemed good, adequate, and sufficient notice."  Bar Date Order at 10.  Additionally, Bankruptcy Rule 2002(g)(2) provides that when notice is served on a creditor by mail and that creditor has not filed a request designating a mailing address, then notice shall be mailed "to the address shown on the list of creditors or schedule of liabilities, whichever is filed later."  FED. R. BANKR. P. 2002(g)(2).  In accordance with the Bar Date Order and the Bankruptcy Rules, the Chapter 11 Estates served the Bar Date Notice on Marsoner at the Scheduled Address, as well as all four additional addresses that they could locate in their records for Marsoner.  Marsoner has never contacted the Chapter 11 Estates to inform them that the Scheduled Address was incorrect.  *See* Baer Decl. ¶ 9.  Service of the Bar Date Notice was therefore proper.

13.    Furthermore, the notice provided by the Chapter 11 Estates was sufficient under applicable law.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Due process does not require impracticable and extended searches for a creditor's identity or address.  "The proper inquiry in evaluating notice is whether the party giving notice acted reasonably in selecting means likely to inform persons affected, not whether

6

each person actually received notice." *In re Best Prod. Co., Inc.*, 140 B.R. 353, 357-58 (Bankr. S.D.N.Y. 1992). A debtor "must review its own books and records to ascertain the identity of creditors, [but] a debtor is not required to search elsewhere . . . ." *Id.* at 358 (citing *In re Waterman S.S. Corp.*, 59 B.R. 724, 727 (Bankr. S.D.N.Y. 1986)); *see also In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 659 (Bankr. S.D.N.Y. 1998) ("The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required. Only those claimants who are identifiable through a diligent search are 'reasonably ascertainable' and hence 'known' creditors") (citation omitted).

14.     The only records that any of the Chapter 11 Estates have of transacting with Marsoner are (i) an electronic record, reflected on Schedule G of LBCC, indicating that LBCC at some time was a party to a derivatives contract with Marsoner, and (ii) the Trade Confirm. After diligently searching its records, LBCC has been unable to locate a copy of any contract that it may have entered into with Marsoner. *See* Behnke Decl. ¶ 5. As noted above, the only address on the Trade Confirm is LBEL's address, 25 Bank Street. Since the Commencement Date, Marsoner has never contacted LBCC with respect to an executory contract, the Trade Confirm or any other contract or transaction. *See* Behnke Decl. ¶ 6. Thus, LBCC and the other Chapter 11 Estates would have had no way of knowing that Marsoner's address had changed, or that the addresses in the Chapter 11 Estates' books and records were no longer accurate. By mailing the Bar Date Notice to all of Marsoner's addresses in their books and records, the Chapter 11 Estates provided reasonably calculated notice under the circumstances. *See, e.g.*, *In re Agway, Inc.*, 313 B.R. 31, 39 (Bankr. N.D.N.Y. 2004) ("Sending a notice by U.S. mail to the recipient's last known address is reasonably calculated to inform the recipient of the contents of the notice and thereby satisfies due process."); *In re XO Commc'ns,*

*Inc.*, 301 B.R. 782, 787 (Bankr. S.D.N.Y. 2003) *aff'd*, No. 04 CIV. 01489LAK, 2004 WL

2414815 (S.D.N.Y. June 14, 2004) (finding publication notice sufficient when debtor mailed

notice to the creditor's previous, but not current, address, and noting that the creditor did not

inform the debtor of its change of address.).

15.    Even if Marsoner included his current address in his agreements with

LBEL, the Chapter 11 Estates had no access to these agreements.  Although LBEL is an affiliate

of the Chapter 11 Estates, it has been completely outside of the Chapter 11 Estates' control since

September 23, 2008, when the directors of LBEL resolved to place the company into an English

administration proceeding.  *See* Behnke Decl. ¶ 7.  The Chapter 11 Estates maintain separate

books and records from LBEL, have no access to the books and records of LBEL, and, therefore,

do not have copies of Marsoner's service agreements with LBEL or any of his communications

with LBEL.  *Id.*  Under applicable case law, the Chapter 11 Estates were only required to search

their own books and records; they were not required to seek access to the books and records of

non-controlled affiliates subject to proceedings in foreign courts.  *See In re U.S.H. Corp. of N.Y.*,

223 B.R. at 659 ("Reasonable diligence does not require 'impracticable and extended searches . .

. in the name of due process.' . . . The requisite search instead focuses on the debtor's own books

and records.  Efforts beyond a careful examination of these documents are generally not

required.  Only those claimants who are identifiable through a diligent search are 'reasonably

ascertainable' and hence 'known' creditors.") (citations omitted).

## II.    Marsoner Was Not A "Known Creditor" Entitled To Actual Notice

16.    Marsoner nevertheless argues that publication notice of the Bar Date was

insufficient for him personally because he was purportedly a "known creditor" of LBHI and

LCPI and thus entitled to actually receive a copy of the Bar Date Notice.  He does not claim to

have been unaware of the Bar Date.  Nevertheless, he endeavors to justify his failure to file

timely proofs of claim in these Chapter 11 Cases with a apparent *non sequitur* – that he did not

know he had claims against LBHI or LCPI because he did not receive actual notice of the Bar

Date.  (Motion ¶ 24.)  But there is another, more credible reason why Marsoner did not think of

filing claims against LBHI or LCPI until approximately five years after the Bar Date.  It is the

same reason that Marsoner can hardly claim to have been a known creditor of these Chapter 11

Estates:  Marsoner never had any direct dealings, much less contractual privity, with either LBHI

or LCPI.

17.    The only fact Marsoner relies upon in arguing he was a known creditor of

LBHI is that LBHI's UK branch used to wire payment to him on behalf of LBEL.  But this fact

alone does not mean that Marsoner was a creditor of LBHI.  Prior to the Commencement Date,

as explained in the Declaration of Raymond O'Grady ("O'Grady Decl.") filed concurrently with

this Objection [ECF No. 48199], LBHI's UK branch functioned as the "banker" or "paymaster"

for most of the European entities in the Lehman group.  *See* O'Grady Decl. ¶ 7.  At various times

during the year, the intercompany balances that accrued on account of these payments would be

reconciled and paid down.  Thus, while LBEL's compensation of Marsoner may have been wired

to him from an LBHI UK bank account, LBHI UK wired these funds on behalf of LBEL merely

for operational purposes – not because there was any contractual or other kind of relationship

between Marsoner and LBHI.

18.    Marsoner's alleged connection to LCPI is even more fanciful.  He had no

contacts whatsoever with LCPI.  Any agreement he may have had with LBEL with respect to

Formula One or any other investment never implicated LCPI.  And certainly by the time that

LCPI sought this Court's approval for the sale of LCPI's interest in Delta Topco Limited, LCPI

and LBEL were under completely separate administration, and any communications that Marsoner may have had with LBEL never impacted LCPI's business strategy.

19.    The claims that Marsoner wishes to assert against LBHI and LCPI are, at best, conjectural.  Indeed, Marsoner himself admits that until he had concluded the claims process with LBEL, he believed that his sole claim was against LBEL.  In other words, at all times prior to the Bar Date, and even years after the Bar Date, Marsoner did not believe that he was a creditor of any of the Chapter 11 Estates.

20.    By definition, therefore, to the extent he ever held a claim against them, Marsoner was an *unknown* creditor with respect to LBHI and LCPI.  *See Mullane*, 339 U.S. at (finding publication notice sufficient as to "beneficiaries whose interests are either conjectural or future or, although they [or their whereabouts] could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee."); *In re XO Commc'ns, Inc.*, 301 B.R. at 793 ("An 'unknown' creditor is a claimant whose identity or claim is not 'reasonably ascertainable' or is merely 'conceivable, conjectural or speculative.'") (citing *In re Thomas McKinnon Sec., Inc.*, 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991)).  As such, neither LBHI nor LCPI was obligated to seek out Marsoner with respect to his dealings with LBEL, much less notify him that he might have claims against LBHI or LCPI.  *See In re U.S.H. Corp. of N.Y.*, 223 B.R. at 659 ("A debtor does not have a 'duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.'") (citation omitted).  Publication notice alone was sufficient.  *See In re XO Commc'ns, Inc.*, 301 B.R. at 792-93 ("What type of notice [of a claims bar date] is reasonable or adequate . . . depends on whether the creditor is 'known' or 'unknown' to the debtor. . . . If the creditor is 'unknown' to the debtor . . . constructive notice is

generally sufficient. . . . Constructive notice can be satisfied through publication notice . . . .") (citations omitted).

21.     Although publication notice would have been sufficient, the Chapter 11 Estates did more – they included all of the addresses in their records for Marsoner among the more than 256,000 addresses that were served with notice of the bar date in these cases. Marsoner is wrong in stating that the Chapter 11 Estates' effort to serve him with the Bar Date Notice "demonstrates that [they] 'actually knew' of Dr. Marsoner and believed he was a 'known creditor' entitled to service of the" Bar Date Notice." (Motion ¶ 4.)  Service of the Bar Date Notice does not indicate that the Chapter 11 Estates "believed" anything, and the Bar Date Notice makes this explicitly clear, stating in bold, all caps lettering:

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE THAT YOU HAVE A CLAIM. MANY PARTIES ARE REQUIRED TO BE SERVED WITH THIS NOTICE AND IT IS REQUIRED TO REACH A BROAD AUDIENCE OF POTENTIAL CLAIMANTS.**

(Bar Date Notice, p. 3).  The Chapter 11 Estates attempted to serve the Bar Date Notice on as many parties as possible that could be found in their books and records.  In doing so, they provided notice to Marsoner that was reasonably calculated and certainly satisfied the notice requirements imposed upon them under applicable law.

### III.  Marsoner Has Failed To Establish A Basis For Relief Under Bankruptcy Rule 9024

22.     Although the relief sought in the Motion is predicated on Bankruptcy Rule 9024 and section 105(a) of the Bankruptcy Code, Marsoner provides no argument, discussion, or basis for grounding his requested relief in those statutory predicates or any of the caselaw applicable to them.  For this reason, Marsoner has failed to establish any basis for relief.

23.     Bankruptcy Rule 9024 makes Federal Rule of Civil Procedure 60(b) applicable to cases under the Bankruptcy Code, but courts consider different factors when

WEIL:\95204151\11\58399.0011

evaluating whether to grant relief depending on the applicable subsection of Rule 60(b). Marsoner has not specified whether he seeks relief from the Bar Date Order on the grounds of excusable neglect, newly discovered evidence, fraud, or any of the other subjection of Rule 60(b).  Nevertheless, to the extent Marsoner seeks relief under Rule 60(b)(4), on the grounds that the Bar Date Notice is "void" for lack of proper notice, the Motion fails for the reasons articulated above.

24.    The Motion is also untimely.  Rule 60(c) provides:

(c) TIMING AND EFFECT OF THE MOTION.

(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

To the extent he seeks relief under Rule 60(b)(1), (2), or (3), the relief sought in the Motion is clearly barred by the one-year statute of limitations applicable to those subsections of Rule 60(b). *See In re U.S. Energy Sys., Inc.*, No. 12 CIV. 7107, 2013 WL 5204010 (S.D.N.Y. Sept. 16, 2013) (upholding a denial of a motion seeking relief from a bar date order under Rule 60(b) on the grounds that the motion was not timely under the applicable one-year statute of limitations).  To the extent the Motion is made under Rule 60(b)(4), (5), or (6), the Motion must have been made "within a reasonable time"; not, in other words, five years after the order was entered, almost three years after distributions have commenced under the confirmed Plan, and most importantly, after more than 1,400 claims have been expunged by this Court on the grounds that they were filed after the Bar Date.

## IV.  Marsoner Has Not Demonstrated Exceptional Circumstances Warranting Relief

25.    Irrespective of which subsection of Rule 60(b) applies, it is well settled in the Second Circuit that "final judgments should not be lightly reopened" and "[s]ince 60(b)

allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citation and internal quotation marks omitted). For this reason, "a motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *U.S. v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d. Cir. 2001).

26.     The relief sought by Marsoner is even more extraordinary because the Second Circuit has recognized the "essential function" and particular importance of finality for bar date orders. *See In re Enron Corp.*, 419 F.3d 115, 127-28 (2d Cir. 2005); *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991) ("[A] bar order does not function merely as a procedural gauntlet . . . but as an integral part of the reorganization process. If individual creditors were permitted to postpone indefinitely the effect of a bar order . . . the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.") (citation and internal quotation marks omitted); *In re XO Commc'ns, Inc.*, 301 B.R. at 797-98 (expunging the proof of claim and explaining "that the Bar Date Order was meant to function as a statute of limitations and effectively exclude such late claims in order to provide the Debtor and its creditors with finality to the claims process and permit the Debtor to make swift distributions under the Plan. To find otherwise . . . would vitiate the very purpose of the Bar Date Order and would clearly impact the Debtor's reorganization process.").

27.     As this Court has stated, when denying motions for relief from the Bar Date Order, "[e]nforcement of the Bar Date Order is an essential part of the orderly administration of the claims that have been filed in compliance with that order . . . . The massive undertaking of processing so many claims depends on the integrity of the Bar Date Order and bringing closure to the class of timely filed claims. The prejudice to the Debtors is not traceable

13

to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency. In view of the need to bring finality to the enormous task of resolving those claims that have already been filed in these cases, the Court concludes that strict application of the Bar Date Order is needed to effectively manage the claims process and that permitting additional claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors."). *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010) *aff'd sub nom. CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011).

28.    If parties are permitted seek relief from the Bar Date Order at this stage in these chapter 11 cases, the the purpose and effect of the Bar Date will become illusory. The Bar Date Order has been of fundamental importance to the orderly administration of these Chapter 11 Cases – still the largest and most complex chapter 11 cases in history. It would also be grossly inequitable if this Court were to grant Marsoner the opportunity that so many other claimants did not have. More than 1,400 untimely proofs of claim have already been expunged by this Court, or voluntarily withdrawn by the claimants after being challenged by the Plan Administrator.

29.    Marsoner has failed to demonstrate that there is anything exceptional about himself or his circumstances that would warrant the relief sought in the Motion. He cannot credibly claim to have been unaware of these Chapter 11 Cases. He was on constructive notice of the Bar Date. And although he states in his declaration that he only began considering his position under U.S. law in June of 2014, in fact, Marsoner *had* analyzed his position under U.S. law well before the bar date in these chapter 11 cases: on May 1, 2009 – four months before the September 21, 2009 deadline for filing proofs of claim against the Chapter 11 Estates – Marsoner filed a timely claim against Lehman Brothers Inc. ("LBI") in its separately administered

14

liquidation (the "SIPA Case") pending before this court under the Securities Investor Protection Act of 1970 ("SIPA"). On August 30, 2013, the SIPA trustee filed an omnibus claim objection that included Marsoner's claim against LBI. Marsoner did not respond to the objection. On October 17, 2013, Marsoner's claim against LBI was expunged. *See Order Granting The Trustee's One Hundred Thirty-Fourth Omnibus Objection To General Creditor Claims (No Liability Claims)*, [ECF No. 7460 in the SIPA Case]. So, although Marsoner believed in May of 2009 that he had a claim against LBI, he filed no proofs of claim in these Chapter 11 Cases.

30.    Unlike many other creditors who have sought leave from this Court to file claims after the bar date, Marsoner does not claim to have missed the bar date due to his own confusion, unsophistication, or lack of means. Indeed, if there is anything exceptional about Marsoner, it is his means and sophistication – few individual claimants in these cases can match Marsoner in this respect. He himself describes in elaborate detail his extensive qualifications, his degrees in both law and business, and his many years of experience as a Managing Director, division leader, and later, independent advisor to Lehman in Europe. He was familiar with Lehman and very likely acquainted with Lehman's global nature, enough to give him the ability to think of filing claims in the United States (as he did, against LBI). He also had the means to seek legal advice prior to the Bar Date to determine if he could assert his claims against any entities other than LBEL. He did not do so until it was too late. His failure to do so is his own fault.

31.    Moreover, Marsoner is one of the members of LBEL's creditors' committee, as indicated in the progress reports published by the joint administrators of LBEL,

the first of which is attached here as <u>Exhibit C</u> (the "<u>Progress Report</u>")[6].  As is evident from page 2 of the Progress Report, the LBEL creditors' committee had been formed by the publication date of the Progress Report, April 21, 2009, five months before the Bar Date.  Marsoner is listed as a member of the creditors' committee, and the Progress Report states that "[t]he Administrators will liaise will the Creditors' Committee to discuss significant issues and outline key decisions."   In contrast to Marsoner, LBEL filed timely proofs of claim in these cases. Moreover, together with its other UK affiliates in administration (including Lehman Brothers International (Europe)), LBEL has also been one of the most active parties in these Chapter 11 Cases, having filed numerous substantive pleadings,[7] including an objection to the bar date order originally proposed by the Chapter 11 Estates.[8]  LBEL also entered into a global settlement and plan support agreement with the Chapter 11 Estates that is incorporated into the Plan pursuant to section 6.5(b)(vii) thereof.   It is implausible, therefore, for Marsoner – a member of LBEL's creditors' committee – to argue that he was unaware of the Bar Date and had not considered his rights in these Chapter 11 Cases until recently.

32.    Marsoner himself admits that he is only endeavoring to file a claim against LBHI and LCPI now that he "realized" he could craft an argument for asserting a claim against these Chapter 11 Estates.  He already filed a claim against LBEL, and LBEL in fact disputed the merits of Marsoner's claim.  It was only after years of negotiations with LBEL's administrators

---

[6]  All of the progress reports issued by the joint administrators or LBEL are available on PWC's website at: http://www.pwc.co.uk/business-recovery/administrations/lehman/lehman-brothers-europe-limited-in-administration.jhtml.

[7]  *See, e.g.*, [ECF No. 818]; [ECF No. 947]; [ECF No. 1313]; [ECF No. 4880]; [ECF No. 8043]; [ECF No. 15773]; [ECF No. 15848]; [ECF No. 19328]; [ECF No. 22750].

[8]  *See* Response of the Joint Administrators of The Lehman European Group Administration Companies to Motion of the Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form, filed on June 19, 2009 [ECF No. 4057].

that Marsoner accepted a settlement, in which he was granted only a fraction of the amount he originally asserted against LBEL.  Forced to settle for less from LBEL, Marsoner is only now seeking to recover more from Chapter 11 Estates that have never had any dealings with him.

33.    The Court should deny the Motion with prejudice.

## Reservation of Rights

34.    In addition to the fact that Marsoner's purported claims are untimely, the Plan Administrator has numerous substantive objections to the claims that Marsoner is seeking to assert against LBHI and LCPI.  Accordingly, the Plan Administrator reserves the right to object to the validity and amount of any claims that may be filed by Marsoner in the event that the Court overrules the Plan Administrator's Objection and/or grants the relief requested in the Motion.[9]  The Plan Administrator reserves the right to conduct discovery as to any such claims and any matters raised in the Motion and to supplement this filing as a result thereof.

---

[9]  The Plan Administrator notes that two days prior to the objection deadline, Marsoner filed a supplemental declaration containing several documents that appear to relate solely to the underlying merits of the claims he is seeking to assert [ECF No. 48171] (the "Supplemental Declaration"), and not to the relief sought in the Motion. Accordingly, the Plan Administrator's reservation of rights herein applies equally to the Supplemental Declaration.

WEIL:\95204151\11\58399.0011

## Conclusion

WHEREFORE for the reasons set forth above, the Plan Administrator respectfully requests that the Court enter an order denying the Motion in its entirety with prejudice and grant such other and further relief as the Court may deem just and appropriate.

Dated: February 12, 2015
      New York, New York

/s/ Jacqueline Marcus
David J. Lender
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc. and Certain of its Affiliates

WEIL:\95204151\11\58399.0011

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

-----------------------------------------------------------------x

**AMENDED SCHEDULES OF ASSETS AND LIABILITIES FOR**

**LEHMAN BROTHERS COMMERCIAL CORPORATION**

**CASE NO. 08-13901 (JMP)**

Lehman Brothers Commercial Corporation

Case No. 08-13901 (JMP)

Executory Contracts and Unexpired Leases

G: Derivative Contract

| Contract Counterparty | Address 1 | Address 2 | Address 3 | City | State | Zip | Country | Contract Description |
|---|---|---|---|---|---|---|---|---|
| MACARTHUR, JOHN D & CATHERINE T FOUNDATION (INC) | c/o Bridgewater Associates, Inc. | One Glendinning Place | | Westport | CT | 06880 | UNITED STATES | Derivative Master Account Number 702010059 |
| Macquarie Bank Limited | Macquarie Bank Limited | No. 1 Martin Place | Sydney NSW 2000, 3019 | GPO Box 4294 | | 8232 3590 | Australia | Derivative Master Account Number 052797QMBL |
| MAJOR MOVES CONSTRUCTION FUND | Delaware Investments | 2005 Market St # 40 | | Philadelphia | PA | 19103-7094 | UNITED STATES | Derivative Master Account Number 100906DELA |
| MAJOR MOVES CONSTRUCTION FUND | Delaware Investments | 2005 Market St # 40 | | Philadelphia | PA | 19103-7094 | UNITED STATES | Derivative Master Account Number 101006DELA |
| MAN FX CLEAR LLC | Man FX Clear | 717 Fifth Avenue | 9th Floor | New York | NY | 10022-8101 | UNITED STATES | Derivative Master Account Number 121605MAN5 |
| MARSONER, THOMAS S | One Broadgate 5th Floor | | | London | | EC2M 7HA | UNITED KINGDOM | Derivative Master Account Number 032002MARS |
| MAX ORIENT HOLDINGS LIMITED | A-Max Holdings Limited | 32/F, Cable TV Tower, Suite 11-12 | 9 Hoi Shing Road | Tsuen Wan New Territories | | | Hong Kong | Derivative Master Account Number 071808MAX6 |
| MCCARTHY, DENIS B. | Annadle Rd | | | Killorglin | | | Ireland | Derivative Master Account Number 27095261 |
| MEDAMERICA HEALTH CORPORATION | Delaware Investments | 2005 Market St # 40 | | Philadelphia | PA | 19103-7094 | UNITED STATES | Derivative Master Account Number 031005MSPF |
| MEDAMERICA HEALTH CORPORATION | Delaware Investments | 2005 Market St # 40 | | Philadelphia | PA | 19103-7094 | UNITED STATES | Derivative Master Account Number 031005SBDF |
| MEDIOSIM S.p.A. | Mediosim SPA | Corso Vittorio Emmanuele II, 28 | | Milan | | 20122 | Italy | Derivative Master Account Number 120496MEDI |
| MEDTRONIC INC RETIREMENT PLAN | Delaware Investments | 2005 Market St # 40 | | Philadelphia | PA | 19103-7094 | UNITED STATES | Derivative Master Account Number 101304MEDT |
| Merck & Co., INC. | Merck | 1 Merck Drive, WS 3F-55 | | Whitehouse Station | NJ | 08889 | UNITED STATES | Derivative Master Account Number 093094MERK |
| MERITZ SECURITIES CO., LTD. | 34-10 Yeoido-dong | Youngdeungpo-Gu | | Seoul | | 150-884 | S. Korea | Derivative Master Account Number 040907MERI |
| Merrill Lynch Capital Services, Inc. | 4 World Financial Center, 12th Floor | | | New York | NY | 10080 | UNITED STATES | Derivative Master Account Number 71499MLCS |
| Merrill Lynch International Bank Limited | Merrill Lynch International Bank Limited | Ropemaker Place | 25 Ropemaker Street | London | | EC2 9LY | UNITED KINGDOM | Derivative Master Account Number 091197XML |
| MF Global UK Limited | Sugar Quay | Lower Thames Street | | London | | EC3R 6DU | United Kingdom | Derivative Master Account Number 061903MANF |
| MGIFM AC KNP | One Appold Street | | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 111102AKNP |
| MGIM A/C ABN A/C M0RWP C/O ABERDEEN ASSET MGMT PLC DEM 083106ABE8 | One Appold Street | | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 083106ABE8 |
| MGIM A/C BONY A/C M0EO3 | Deutsche Bank Asset Management Limited | One Appold Street | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 083106ABE5 |
| MGIM A/C BONY A/C M0EONC/O ABERDEEN ASSET MGMT PLC | Deutsche Bank Asset Management Limited | One Appold Street | | London | | EC2A 2UU | United Kingdom | Derivative Master Account Number 032106ABER |
| MGIM A/C BONY A/C M0VIR | Deutsche Bank Asset Management Limited | One Appold Street | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 110106ABER |
| MGIM A/C JPM A/C M3IFL | CO ABERDEEN ASSET MGMT PLC | | | ABERDEEN | | 111006ABE7 | United Kingdom | Derivative Master Account Number 111006ABE7 |
| MGIM A/C KASS A/C MESCH | CO ABERDEEN ASSET MGMT PLC | | | ABERDEEN | | 111006ABE7 | United Kingdom | Derivative Master Account Number 110706ABER |
| MGIM A/C MMC - DEUTSCHE ASSET MANAGEMENT LTD | Deutsche Bank Asset Management Limited | One Appold Street | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 030804MMC |
| MGIM A/C NT A/C M0GLL | Deutsche Asset Mgmt LTD | One Appold Street | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 030804M0GL |
| MGIM A/C NT A/C M0WHL | Deutsche Asset Mgmt LTD | One Appold Street | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 020205M0WH |
| MGIM A/C NT A/C THALES | Deutsche Asset Mgmt LTD | One Appold Street | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 012405THAL |
| MGIM A/C SS A/C M0HEP | UniCredit Bank Slovakia a.s. | | | Sancova  1/A | | 813 33 | 0 | Derivative Master Account Number 010306DEUT |
| MGIM A/C SS A/C M0RIBC/O ABERDEEN ASSET MGMT PLC | Aberdeen Asset Management PLC | 10 Queens Terrace | | Aberdeen | | AB10 1YG | United Kingdom | Derivative Master Account Number 083106ABER |
| MGIM A/C SS A/C M0SYS | Unisys Pension Fund | Corporate Headquarters | | Blue Bell | PA | 19424 | United States | Derivative Master Account Number 030804M0SY |
| MGIM A/C SS A/C M0TAT | Deutsche Asset Mgmt LTD | One Appold Street | | London | | EC2A 2UU | UNITED KINGDOM | Derivative Master Account Number 050604OTAT |
| MGIM A/C SS A/C M1FIAC/O ABERDEEN ASSET MGMT PLC | Aberdeen Asset Management PLC | 10 Queens Terrace | | Aberdeen | | AB10 1YG | United Kingdom | Derivative Master Account Number 111006ABE6 |
| MGIM A/C SS A/C UNI | UNITED BISCUITS PENSION PLAN | Hayes Park | | Hayes | | UB4 8EE | United Kingdom | Derivative Master Account Number 072803MUNI |
| MGIM AC NT/NCC | Norfolk Pension Fund | Lawrence House | 5 St. Andrews Hill | Norwich | | NR2 1AD | United Kingdom | Derivative Master Account Number 090402NTNC |
| MILLER, JAMES | 3705 54th Dr West #103 | | | Bradenton | FL | 34210 | United States | Derivative Master Account Number 110405JAME |
| MIRAE ASSET SECURITIES CO., LTD. | Mirae Asset Building | 45-1 Youido-dong | Youngdeungpo-Gu | Seoul | | 150010 | S. Korea | Derivative Master Account Number 061106MIRA |
| Mizrahi Tefahot Bank Ltd | 7 Jabotinsky St | | | Ramat Gan | | 52136 | Israel | Derivative Master Account Number 081695UMBI |

LBCC Schedules 47

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
                                                                    :
In re                                                               :        Chapter 11 Case No.
                                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,                              :        08-13555 (JMP)
                                                                    :
                                        Debtors.                    :        (Jointly Administered)
                                                                    :
-------------------------------------------------------------------------x        Ref. Docket Nos. 4271, 4349

<u>CORRECTED AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

HERB BAER, being duly sworn, deposes and says:

    1.      I am over the age of eighteen years and am not individually a party to the above-captioned proceedings.

    2.      I am a Director of Client Services of Epiq Bankruptcy Solutions, LLC ("Epiq"), located at 757 Third Avenue, 3rd Floor, New York, New York 10017.  Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

    3.      Lehman Brothers Holdings Inc. and its affiliated debtors (the "Debtors") retained Epiq as their Claims and Noticing Agent pursuant to an Order of the Court dated September 16, 2008.  Accordingly, Epiq maintains the official claims register reflecting all claims listed in the Debtor's Schedules of Liabilities, as amended, and all filed proofs of claim (the "Claims Database").  Additionally, Epiq maintains a database of names and addresses of all potential creditors of the Debtors listed in their Creditor Matrix (together with the Claims Database, the "Master Mailing List").

4.      On July 8, 2009, I caused to be served the "NOTICE OF DEADLINES FOR

FILING PROOFS OF CLAIM", dated July 8, 2009 and a Proof of Claim Form upon on all

names and addresses in the Master Mailing List as they existed at the time (the "Bar Date

Mailing").

5.      My "Affidavit of Service" dated July 10, 2009 details all parties that were served,

and the manner in which they were served [Docket # 4349](the "Prior Service Affidavit").  The

Prior Service Affidavit incorrectly listed the address of certain parties that were served.  To

correct any errors on the Prior Service Affidavit, I hereby submit this Corrected Affidavit of

Service which fully supersedes the Prior Service Affidavit and hereby certify that all parties were

served at the addresses included on the Master Mailing List as it existed as of July 8, 2009,

which addresses are set forth on Exhibits D, E, and F, as described below.

6.      The Bar Date Mailing was completed as follows:

On July 8, 2009, I caused to be served the:

a)   "NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM", dated July 8,

     2009, a copy of which is attached as Exhibit A (the "Bar Date Notice"),

b)   "PROOF OF CLAIM" form, a copy of which is attached hereto as Exhibit B, (the

     "General Proof of Claim Form"), and

c)   "PROOF OF CLAIM" form with a legend stating "Notice of Scheduled Claim", a

     copy of which is attached hereto as Exhibit C, (the "Schedule Proof of Claim

     Form")

by causing true and correct copies of the:

a)   Bar Date Notice and a blank General Proof of Claim Form to be enclosed securely

     in separate postage pre-paid envelopes and delivered by first class mail to those

     parties listed on the attached Exhibit D,

b) Bar Date Notice and a General Proof of Claim Form, personalized to include the name and address of the creditor, to be enclosed securely in separate postage pre-paid envelopes and delivered by first class mail to those parties listed on the attached <u>Exhibit E</u>, and

c) Bar Date Notice and a Schedule Proof of Claim Form, personalized to include the name and address of the creditor and debtor, amount, nature, classification and description of the scheduled claim, to be enclosed securely in separate postage pre-paid envelopes and delivered by first class mail to those parties listed on the attached <u>Exhibit F</u>.

7. All envelopes utilized in the service of the foregoing contained the following legend: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

Herb Baer

Sworn to before me this
2nd day of June, 2010

Notary Public

SIDNEY J. GARABATO
NOTARY PUBLIC, STATE OF NEW YORK
No. 01GA6218946
Qualified in New York County
Commission Expires March 15, 2014

AFFIDAVIT OF HERB BAER – Page 3

| Claim Name | Address Information |
|---|---|
| MARKUS, WEDEL | HANSAALLEE 128 A HE FRANKFURT AM MAIN 60320 GERMANY |
| MARKWEST WESTERN OKLAHOMA GAS COMPANY | RR 1 BUTLER OK 73625 |
| MARKWEST WESTERN OKLAHOMA GAS COMPANY | RR 1 BUTLER OK 73625 |
| MARLA R., SPITZER | 319 EAST 83RD ST. APARTMENT 3D NEW YORK NY 10028 |
| MARLA, BARR | 400 EAST 55TH STREET APT 9F NEW YORK NY 10022 |
| MARLA, HASTERN | 55 EASTERN PARKWAY APT 2C BROOKLYN NY 11238 |
| MARLENE CASTRO | 2203 EMERALD HILLS DRIVE SAN JOSE CA 95131-2609 |
| MARLEY SHAW, EDWARD W | 8 EVANGELIST ROAD LONDON NW5 1UB GREAT BRITAIN |
| MARLIN INTERNATIONAL YK | 10-1, ROPPONGI 6-CHOME MINATO-KU TOKYO JAPAN |
| MARLISA, VINCIGUERRA | 92 LAIGHT STREET APT 5B NEW YORK NY 10013 |
| MARLON, MANANSALA | 4-4-11-704 SETAGAYA 13 TODOROKI 158-0082 JAPAN |
| MARLOVITS, JASON D. | 257 PAXTON WAY GLASTONBURY CT 06033 |
| MARNA L., RINGEL | 1509 BROOKSIDE DRIVE FAIRFIELD CT 06824 |
| MARNE A., ALTBAUM | 1511 DOGWOOD DR. CHERRY HILL NJ 08003 |
| MARNEY, LESLEY N | POPLAR GRANGE 48 CLERKE DRIVE KEMSLEY SITTINGBOURNE, KENT ME10 2RY GREAT BRITAIN |
| MARNI, SMITH | 285 AVENUE C #12H NEW YORK NY 10009 |
| MARONE, GUILHERME C. | 150 ST MARKS AVE #2 BROOKLYN NY 11238 |
| MARONI, ALBERTO | VIA FRANCESCO SOAVE 10 MILANO 20135 ITALIA |
| MARQUARD, ALAN H. | 122 HUMBER ROAD BLACKHEATH LONDON SE3 7LX GREAT BRITAIN |
| MARQUE D., ROSSER | 8063 AUTUMN FOREST DRIVE JONESBORO GA 30236 |
| MARQUEZ, ALBERTO | 22 AMHURST GARDENS ISLEWORTH, MIDDX TW7 6AJ GREAT BRITAIN |
| MARQUIS, JERANDI | FDR 6299 NEW YORK NY 10150 |
| MARR, MARCUS I | 26 MOUNT CRESCENT WARLEY BRENTWOOD, ESSEX CM14 5DB GREAT BRITAIN |
| MARRA, LAM | 1037 ANNADALE ROAD STATEN ISLAND NY 10312 |
| MARRGWEN C., TOWNSEND | 2571 E. 71ST STREET CHICAGO IL 60649 |
| MARRIOTT INTERNATIONAL, INC | MARRIOTT INTERNATIONAL, INC. 10400 FERNWOOD ROAD BETHESDA MD 20817 |
| MARRON, JANICE J. | 240 MT. VERNON PL., APT. 12-O NEWARK NJ 07106 |
| MARS PENSION TRUSTEES LIMITED | PIMCO 840 NEWPORT CENTER DRIVE SUITE 100 NEWPORT BEACH CA 92660 |
| MARSAN, DEAN K. | 253-11 BRATTLE AVENUE LITTLE NECK NY 11362 |
| MARSEILLE REPUBLIQUE SAS | MARSEILLE REPUBLIQUE S.A.S. C/O ATEMI 47, RUE DE MONCEAU PARIS 75008 FRANCE |
| MARSH & MCLENNAN COMPANIES INC MASTER RETIREMENT S | 2 LIBERTY SQUARE BOSTON MA 02109 |
| MARSH & MCLENNAN HIGH YIELD FUND | ONE POST OFFICE SQUARE BOSTON MA 02109 |
| MARSH & MCLENNAN LONG DURATION PORFOLIO | PUTNAM INVESTMENTS 2 LIBERTY SQUARE BOSTON MA 02109 |
| MARSH, AMY S. | 3770 WICKHAM AVENUE MATTITUCK NY 11952 |
| MARSHA AUGUST | 4496 HEADEN WAY SANTA CLARA CA 95054 |
| MARSHA JOHNSON, EVANS | 2025 E STREET, NW WASHINGTON DC 20006 |
| MARSHA R., GRIER | 110 KENNETH DRIVE BARTONSVILLE PA 18321 |
| MARSHA, HERBER | 1460 LITTLE RAVEN STREET APT. 3-116 DENVER CO 80202 |
| MARSHA, POWELL | 6 BELLA CASA LANE CENTRAL ISLIP NY 11722 |
| MARSHALL ERIC, LAI | THE MERTON TOWER 1, FLAT 61F KENNEDY TOWN HONG KONG HONG KONG |
| MARSHALL, BRIAN P. | 133 ELMWOOD DRIVE DIX HILLS NY 11746 |
| MARSHALL, PATRICK-ANTHONY J | 20 BALLINGDON ROAD LONDON SW11 6AJ GREAT BRITAIN |
| MARSHALL, STUART | 1 GLENDALE CLOSE ELTHAM LONDON SE9 1RG GREAT BRITAIN |
| MARSIGLI, PAOLO | 51 THE MARLBOROUGH 61 WALTON STREET LONDON SW3 2JX GREAT BRITAIN |
| MARSILIO, PAUL A. | 71 BROADWAY APT. 20-L NEW YORK NY 10006 |
| MARSILIO, PAUL A. | 71 BROADWAY APT. 20-L NEW YORK NY 10006 |
| MARSONER, THOMAS S | ONE BROADGATE 5TH FLOOR LONDON EC2M 7HA UNITED KINGDOM |

| Claim Name | Address Information |
|---|---|
| THOMAS LENHART | 5040 EISENHOWER AVE. APT. 401 ALEXANDRIA VA 22304 |
| THOMAS LIANG | 7 SAINT JAMES PLACE APARTMENT 12H NEW YORK NY 10038 |
| THOMAS LIANG | 11031 73RD RD APT 4N FORREST HILLS NY 113756320 |
| THOMAS LINDSEY BROWN & CO, SOLICITORS | 821 SOUTHCHURCH ROAD SOUTHEND ON SEA SS1 2PP UK |
| THOMAS LINDSEY BROWN & CO, SOLICITORS | 821 SOUTHCHURCH ROAD SOUTHEND ON SEA, ESSEX SS1 2PP UNITED KINGDOM |
| THOMAS LYTE SILVER | 9 HURLINGHAM BUSINESS PARK SULIVAN ROAD LONDON SW6 3DU UNITED KINGDOM |
| THOMAS M FOLEY ATTORNEY AT LAW LLC | YACHT HARBOR PROFESSIONAL CENTER 1620 ALA MOANA BLVD. SUITE 510 HONOLULU HI 96815 |
| THOMAS M FOLEY ATTORNEY AT LAW LLC | 1620 ALA MOANA BLVD STE 510 HONOLULU HI 96815-1437 |
| THOMAS M. BLOUIN | 27 GRAMATAN CT BRONXVILLE NY 10708-3015 |
| THOMAS M. COVERICK | 9106 TIMBERWOOD LANE TINLEY PARK IL 60477 |
| THOMAS M. COVERICK | 9106 TIMBERWOOD LANE TINLEY PARK IL 60477-2173 |
| THOMAS M. HARMON | 60 WEST 23RD STREET APARTMENT 815 NEW YORK NY 10010 |
| THOMAS M. HOWARD | 1 DUFFYS LANE DARIEN CT 06820 |
| THOMAS M. HOWARD | 1 DUFFYS LN DARIEN CT 06820-5611 |
| THOMAS M. MARCHETTI | 700 FIRST STREET UNIT 17PR HOBOKEN NJ 07030 |
| THOMAS M. MORO | 21807 N 37TH ST PHOENIX AZ 850504953 |
| THOMAS M. MORO | 621 S. AVENUE 61 LOS ANGELES CA 90042 |
| THOMAS M. O'CONNELL | 1071 GREEN ARBOR DR. FENTON MO 63026 |
| THOMAS M. PEARSON | 2-7-30 MOTO-AZABU MINATO-KU 13 106-0046 JAPAN |
| THOMAS M. PEARSON | CB HOUSE MOTO AZABU 2-7-30 MOTO-AZABU MINATO-KU 13 106-0046 JAPAN |
| THOMAS M. PEARSON | OMOTESANDO COURT, #109E 5-5-5 JINGUMAE SHIBUYA-KU 13 150-0001 JAPAN |
| THOMAS M. PEARSON | OMOTESANDO COURT, #105W 5-5-5 JINGUMAE SHIBUYA-KU 13 150-0001 JAPAN |
| THOMAS M. SCHAEFER | 560 TWIN SPRINGS ROAD ATLANTA GA 30327 |
| THOMAS MAN | 29 WOLDHAM PLACE BROMLEY,KENT BR2 9LF UNITED KINGDOM |
| THOMAS MANNING | 1046 MAIN STREET LYNNFIELD MA 01940 |
| THOMAS MANSFIELD LLP | UNIT 2 GROUND FLOOR CHRISTOPHER WREN YARD 119 HIGH STREET , SURREY CR0 1QG UNITED KINGDOM |
| THOMAS MARSONER | CASA ANDREAS, 16 TRIG SANT' ANDRRIJA LIJA BLZ10 MALTA |
| THOMAS MARSONER | CASA ANDREAS 16 TRIQ SANT' ANDRIJA LIJA BLZ10 MALTA |
| THOMAS MARSONER | CASA PELICANOS COSTA CAREYES MEXICO |
| THOMAS MARSONER | CASA CARPIONE PARCO SAN GIACOMO GARGNANO 25084 ITALY |
| THOMAS MEDIA INC C&E | ONE STATE STREET PLAZA 27TH FL NEW YORK NY 10004-1549 |
| THOMAS MEDIA INC C&E | PO BOX 4634 CHICAGO IL 60680 |
| THOMAS MEDIA INC C&E | PO BOX 71911 CHICAGO IL 60694-1911 |
| THOMAS MENNESSON | MINAMI-AZABU 2-9-11 NIKKO PALACE MINAMI-AZABU DAI2 303 MINATO-KU 13 106-0047 JAPAN |
| THOMAS MICHAEL DORNER | 25 BANK ST LONDON E14 5LE UNITED KINGDOM |
| THOMAS MICHAEL DORNER | FLAT 2 31 MUNSTER ROAD LONDON SW6 4ER UNITED KINGDOM |
| THOMAS MICHAEL HARDY | 475 N WOODS DRIVE LEHI UT 84043 |
| THOMAS MICHAEL HARDY | 475 WOODS DR LEHI UT 84043-2934 |
| THOMAS MICHAEL MEDLAND | 9B STUART CLOSE BRENTWOOD,ESSEX CM15 9LX UNITED KINGDOM |
| THOMAS MICHAEL SMALL | 38 MERIDIAN PLACE DOCKLANDS LONDON E14 9FE UK |
| THOMAS MICHAEL SMALL | 38 MERIDIAN PLACE DOCKLANDS LONDON E14 9FE UNITED KINGDOM |
| THOMAS MINKOWICZ | 1002 FOSTER AVENUE, #2F BROOKLYN NY 11230 |
| THOMAS MORREALE | 3 HORSESHOE ROAD WARREN NJ |
| THOMAS MORRIS | 175 EAST 96TH STREET APT. 23 O NEW YORK NY 10128 |
| THOMAS MORRIS | 4306 SHADOWBROOKE COURT FORT COLLINS CO 80526 |
| THOMAS MURRAY NETWORK MANAGEMENT LIMITED | 179 PICCADILLY LONDON W1J 9FA UNITED KINGDOM |

**EXHIBIT C**

# Lehman Brothers Europe Limited – In Administration

## Joint Administrators' progress report for the period 23 September 2008 to 22 March 2009

21 April 2009

# Contents

| **Section** | | | **Page** |
|---|---|---|---|
| **1** | Purpose of the Joint Administrators' progress report | | **2** |
| **2** | Background information | | **3** |
| **3** | Joint Administrators' actions to date | | **4** |
| **4** | Statutory and other information | | **5** |
| **5** | Financial information | | **6 – 7** |
| **6** | Receipts and payments | | **8** |

PricewaterhouseCoopers LLP

# Section 1: Purpose of the Joint Administrators' progress report

## Introduction

This is the first progress report by the Joint Administrators (the "Administrators") of Lehman Brothers Europe Limited ("LBEL" or the "Company").

Creditors were sent the Administrators' proposals (the "Proposals") on 14 November 2008 which were approved at a meeting of creditors held on 1 December 2008.

This report provides details of the work we have undertaken and the progress we have made during the first six months of our appointment.

## Objectives of the Administration

The Administrators are pursuing the objective of achieving a better result for LBEL's creditors as a whole than would be likely if LBEL were wound up (without first being in Administration).

The specific aims of the Administration are to:

- Protect and control the Company's assets;

- Realise these assets; and

- Agree creditor claims and, if applicable, make a distribution to creditors.

## Creditors' Committee

A Creditors' Committee has been formed and consists of the following members:

- Jupiter Finance SpA

- Lehman Brothers Holdings Inc. ("LBHI")

- Lehman Brothers Holdings plc ("LBH")

- Lehman Brothers International (Europe) ("LBIE")

- Thomas Marsoner

The Administrators will liaise with the Creditors' Committee to discuss significant issues and outline key decisions.

## Outcome for creditors

At this time the Administrators are unable to provide a reliable estimate of the likely dividend to ordinary unsecured creditors as there are significant uncertainties regarding future net realisations. The timing and level of any dividend therefore remains uncertain.

## What steps should be taken now?

The Administrators will continue to manage the Administration in accordance with the proposals approved by creditors and in consultation with the Creditors' Committee.

Until there is more certainty regarding dividend prospects, claims agreement work will be restricted to gathering information. If you have not already submitted your claim to the Administrators please do so by completing and returning the attached statement of claim form.

## Future reports

The Administrators will next report to creditors in approximately six months.

Signed:

D Y Schwarzmann
Joint Administrator
Lehman Brothers Europe Limited

# Section 2: Background information

## Background information

LBEL was authorised by the Financial Services Authority and acted as the authorised investment bank for European subsidiaries of LBHI, the US registered parent.

Its activities included the provision of investment banking services such as advising on Mergers and Acquisitions ("M&A") transactions. It also arranged and advised on securities and derivatives in both primary and secondary markets and dealt as an agent in this respect.

LBEL utilised employees seconded from Lehman Brothers Limited ("LBL") and principally operated from the Company's premises at 25 Bank Street, London E14 5LE.

LBEL was required to hold several hundred million dollars of regulatory capital. It would typically lend this elsewhere in the Lehman Group on a collateralised basis.

## Events immediately preceding the Administrators' appointment

On 15 September 2008, LBHI announced that it was preparing to file for Chapter 11 insolvency protection in the US, precipitating the appointment of Administrators to protect the business and assets of a number of other Lehman Group companies, including LBEL. On 22 September 2008 the directors of LBEL resolved to place the Company into Administration and the Administrators were appointed on 23 September 2008.

# Section 3: Joint Administrators' actions to date

## Overview

As reported in the Proposals approved by creditors on 1 December 2008, the Administrators completed the sale of certain parts of the LBEL business to Nomura Holdings Inc.

The principal outstanding assets as at 1 December 2008 were:

- An intercompany loan of US$575m due from LBIE;

- Debts due from advisory services clients; and

- Intercompany debtors.

## Progress since 1 December 2008

**Intercompany loan to LBIE**

LBEL provided a loan of US$575m to LBIE. As a regulated entity, LBEL required LBIE to provide securities as collateral for the loan. LBIE placed securities to the value of c.US$800m at the date of the transaction with a third party custodian (the "Custodian").

In conjunction with LBIE the Administrators have obtained detailed information from the Custodian regarding these securities. LBIE is now in the process of reconciling its records to the positions that have not been liquidated by the Custodian and this should hopefully determine the appropriate methods for realising these assets for the benefit of LBEL's creditors.

**Debts due from advisory services clients**

A total of c.US$2m was due to LBEL as at the date of appointment in respect of M&A advisory services provided to third parties. As at 22 March 2009 the Administrators have recovered c.US$1.5m.

Further amounts are potentially due in connection with M&A remuneration, including up to US$35m in respect of deals transacted by LBEL and significant further amounts where LBEL was not the transacting party.

There are complex issues to consider here and the Administrators are working closely with current and ex-Lehman employees and legal advisers, to maximise future recoveries.

## Intercompany debtors

The Administrators have submitted three intercompany claims against Lehman Brothers Asia, Lehman Brothers Japan and Lehman Brothers Bankhaus totalling US$4m. Other claims will be submitted at the appropriate time.

Actual recoveries are dependant on both the dividend prospects from those debtors subject to a formal insolvency procedure and on the ability of other debtors, within the Lehman Brothers Group of Companies (the "Lehman Group"), to pay.

## Outstanding matters

The Administrators will continue to:

- Liaise with LBIE to realise the securities held by the Custodian;

- Collect the remaining debts due from advisory services clients; and

- Submit claims / invoices against other members of the Lehman Group for balances outstanding and pursue payment where relevant.

# Section 4: Statutory and other information

| | |
|---|---|
| **Court details for the Administration:** | High Court of Justice, Chancery Division, Companies Court - case 8243 of 2008. |
| **Full name:** | Lehman Brothers Europe Limited |
| **Trading name:** | Lehman Brothers Europe Limited |
| **Registered number:** | 03950078 |
| **Registered address:** | 25 Bank Street, London E14 5LE, England. |
| **Company directors:** | D Gibb, JM Isaacs,  IM Jameson, WT John, R Magnoni, JP Phizacherley, AJ Rush, PR Sherratt and A Wright. |
| **Company secretary:** | Ms P Dave, Ms M Smith and Ms ESE Upton. |
| **Shareholdings held by the directors and secretary:** | None of the directors own shares in the Company. |
| **Date of the Administration appointment:** | 23 September 2008. |
| **Administrators' names and addresses:** | MJA Jervis, AV Lomas, SA Pearson and DY Schwarzmann of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT, England. |
| **Appointer's name and address:** | Peter Sherratt, Director, 25 Bank Street, London E14 5LE, England. |
| **Objective being pursued by the Administrators:** | Achieving a better result for LBEL's creditors as a whole than would be likely if LBEL were wound up (without first being in Administration). |
| **Division of the Administrators' responsibilities:** | In relation to paragraph 100(2) Sch.B1 IA86, during the period for which the Administration is in force, any act required or authorised under any enactment to be done by either or all of the Joint Administrators, may be done by any one or more of the persons for the time being holding that office. |
| **Proposed end of the Administration:** | The Administrators are not yet in a position to determine the most likely exit route from the Administration and wish to retain the options available to them. |
| **Estimated dividend for unsecured creditors:** | It is too early to estimate the likely dividend for unsecured creditors. |
| **Estimated values of the prescribed part and LBEL's net property:** | There is no prescribed part in this matter. |
| **Whether and why the Administrators intend to apply to court under Section 176A(5) IA86:** | Not applicable. |
| **The European Regulation on Insolvency Proceedings (Council Regulation(EC) No. 1346/2000 of 29 May 2000):** | The European Regulation on Insolvency Proceedings does apply to this Administration and these are the main proceedings. |

# Section 5: Financial information

## Statement of Affairs

The Directors have provided their Statement of Affairs (the "Statement"). This Statement is not attached to the progress report as disclosure of the information therein may impact adversely upon future realisations.

## Administrators' remuneration

By way of context, the manner in which Administrators' remuneration is determined and approved is set out in the Insolvency Rules 1986 2.106 to 2.109 (the "Rules").

At a meeting by correspondence held on 20 February 2009, creditors resolved to form a Creditors' Committee (the "Committee"), whose duties will include approving the basis and quantum of the Administrators' remuneration.

There are two bases of determining the remuneration under the Rules, either:

- A percentage of the value of the property with which the Administrator has to deal; or

- By reference to the time properly given by the insolvency practitioner and his staff in attending to matters arising in the Administration.

The Rules also provide that in arriving at its decision on remuneration the Committee is required to consider the following matters:

- The complexity (or otherwise) of the case;

- Any responsibility of an exceptional kind or degree which falls on the Administrators;

- The effectiveness with which the Administrators appear to be carrying out, or have carried out, their duties; and

- The value and nature of the property which the Administrators have to deal with.

## Statement of Insolvency Practice No.9 ("SIP 9")

In addition to the Rules, SIP 9, issued by the Joint Insolvency Committee provides guidance to insolvency practitioners and creditors' committees in relation to the remuneration of, *inter alia*, Administrators.

The purpose of SIP 9 is to:

- Ensure that Administrators are familiar with the statutory provisions relating to office holders' remuneration;

- Set out best practice with regard to the observance of the statutory provisions;

- Set out best practice with regard to the provision of information to those responsible for the approval of remuneration to enable them to exercise their rights under the insolvency legislation; and

- Set out best practice with regard to the disclosure and drawing of disbursements.

When seeking agreement for remuneration, the Administrators are required to provide sufficient supporting information to enable those responsible for approving their remuneration ("the approving body") to form a judgement as to whether the proposed remuneration is reasonable, having regard to all the circumstances of the case. The nature and extent of the supporting information which should be provided will depend upon:

- The nature of the approval being sought;

- The stage during the Administration of the case at which it is being sought; and

- The size and complexity of the case.

## Remuneration review and approval process

In accordance with SIP 9 the Committee will be provided with details of the charge-out rates for all grades of staff who will be or have been involved on the case.

As the Administrators' remuneration request will be based on time costs the Committee will be provided with an account of the time spent and the charge-out value, together with additional information setting out the approach to the project, the milestones and progress against such milestones.

The time analysis provided to the Committee will give details of the work performed and grade of staff, by activity and function for monthly periods.

### Resolution of the Creditors' Committee

The Administrators' remuneration request will be made to the Committee when they meet in due course.

### Receipts and payments account

An account of the receipts and payments in the Administration for the six months to 22 March 2009 is set out in section 6 to this report.

The account shows recoveries of c.US$1.5m in respect of debts arising from advisory services.

# Section 6: Receipts and payments

|  | GBP | US$ | EUR | As at 22 Mar 2009 Total (US$ Equivalent) |
|---|---|---|---|---|
|  | 000 | 000 | 000 | 000 |
| **Receipts** |  |  |  |  |
| Book debts | - | 250.0 | 900.6 | 1,471.8 |
| Currency transfer | 10.5 | - | - | 15.2 |
| **Total receipts for period** | **10.5** | **250.0** | **900.6** | **1,487.0** |
|  |  |  |  |  |
| **Payments** |  |  |  |  |
| Employee costs | - | 15.9 | 64.6 | 103.6 |
| Legal fees | 9.9 | - | - | 14.3 |
| Currency transfer | - | - | 12.0 | 16.3 |
| **Total payments for period** | **9.9** | **15.9** | **76.6** | **134.2** |
|  |  |  |  |  |
| **Net position** | **0.6** | **234.1** | **824.0** | **1,352.8** |
|  |  |  |  |  |
| **Held as** |  |  |  |  |
| Bank of England | 0.6 | 234.1 | 824.0 | 1,352.8 |
| **Total cash** | **0.6** | **234.1** | **824.0** | **1,352.8** |

**Note:**
US$ equivalent is for information purposes only.
Rates used for conversion are Financial Times
rates on 22 Mar 2009:
1 GBP = 1.4433 US$,
1 € = 1.3566 US$