Jill E. Alward, Esq.
Timothy W. Salter, Esq.
**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Stearns Lending, LLC f/k/a Stearns Lending, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 08-13555-scc** |
|---|---|

### MOTION OF STEARNS LENDING, LLC PURSUANT TO RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE SEEKING AN ORDER VACATING THE "ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLER, STEARNS LENDING, LLC f/k/a STEARNS LENDING, INC."

1.  Stearns Lending, LLC ("Stearns Lending") by and through its undersigned counsel, Blank Rome LLP, hereby submits this motion (the "Motion") pursuant to *Rule 60(b)(6)* of the *Federal Rules of Civil Procedure* seeking an order vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Seller, Stearns Lending, LLC f/k/a Stearns Lending, Inc. (the "ADR Order").

2.  As more fully set forth herein, Stearns Lending respectfully submits that the ADR Order should be vacated as: (1) Lehman Brothers Holdings, Inc. ("LBHI") does not possess a right to be indemnified by Stearns Lending; and (2) all claims assigned to LBHI are barred by the statute of limitations.

1

141580.00641/7492697v.1

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this matter pursuant to *28 U.S.C. §§ 157(a)* and *1334*. Venue is proper pursuant to *28 U.S.C. §§ 1408* and *1409*.

4. This Motion is filed pursuant to *Rule 60* of the *Federal Rules of Civil Procedure* as made applicable to bankruptcy cases by *Rule 9024* of the *Federal Rules of Bankruptcy Procedure*.

**BACKGROUND**

5. This matter concerns LBHI's attempt to enforce an indemnification obligation made by Stearns Lending in connection with its sale of residential mortgage loans to Lehman Brothers Bank, FSB ("Lehman Bank").

6. On September 14, 2004, Stearns Lending, then known as First Pacific Financial, entered into a Loan Purchase Agreement (the "Loan Purchase Agreement") with Lehman Bank. A copy of the Loan Purchase Agreement is annexed hereto as *Exhibit A*.

7. The Loan Purchase Agreement incorporated by reference a Seller's Guide (the "Seller's Guide"), which governed the rights and obligations of the parties. A copy of the Seller's Guide is annexed hereto as *Exhibit B*.

8. Both the Loan Purchase Agreement and the Seller's Guide were to be governed and interpreted in accordance with New York law. *See Exhibit A* at §8.

9. LBHI was not a party to the Loan Purchase Agreement. *See Exhibit A*.

10. The Seller's Guide contains a section entitled "Representation, Warranties, and Indemnifications," which contains sub-subsections setting forth certain representations and warranties being made by Stearns Lending, obligating Stearns Lending to repurchase mortgage

2

loans from Lehman Bank in certain circumstances, and defining Stearns Lending's obligation to indemnify (the "Indemnification Provision").  *See Exhibit B* at §§710-711.

11. LBHI purports to be the assignee of a contractual right to indemnification (the "Indemnification Rights") against Stearns Lending arising from the Indemnification Provision contained in the Seller's Guide.

12. Lehman Bank acquired a number of mortgage loans from Stearns Lending pursuant to the Loan Purchase Agreement.

13. Lehman Bank thereafter sold those mortgage loans to LBHI "without recourse," in exchange for full compensation. *See SecurityNational Mortg. Co. v. Aurora Bank FSB*, 2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

14. These mortgage loans were subsequently "transferred, directly or indirectly, to upstream investors ranging from government sponsored entities (e.g., Fannie Mae), large financial institutions, and/or securitization trusts that issued residential mortgage backed securities" by LBHI.  *See Docket #42153* at ¶16.

15. LBHI alleges that certain mortgage loans originated by Stearns Lending, and sold to Lehman Bank, were eventually sold by LBHI to Fannie Mae.

16. On September 15, 2008, LBHI and twenty-two of its affiliates filed petitions seeking relief under *Chapter 11* of the *United States Bankruptcy Code* (the "Bankruptcy").  *See* http://dm.epiq11.com/LBH/Project# (last visited February 9, 2015).

17. Lehman Bank, was not, and is not, a party to the Bankruptcy.  *See id.*; *SecurityNational Mortg. Co.*, 2014 U.S. Dist. LEXIS 177481 at *4; *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011) (stating that LBHI is a parent company of Lehman Bank).

3

18. On September 22, 2009, Fannie Mae filed a proof of claim in the Bankruptcy in the approximate amount of not less than $19,058,000,000.00 (the "Claim"). *See Claim No. 29557*.

19. A portion of the Claim was attributable to breach of warranty and indemnification causes of action (the "Fannie Mae Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Fannie Mae. *See id*. at ¶1.2.

20. On January 22, 2014, LBHI, Fannie Mae, and non-debtors Aurora Commercial Corporation and Aurora Loan Services LLC, entered into a settlement agreement (the "Settlement Agreement") settling the Claim. A copy of the Settlement Agreement is annexed hereto as *Exhibit C*.

21. Lehman Bank was not a party to the Settlement Agreement.

22. As part of the Settlement Agreement, Fannie Mae agreed to turn over documents to LBHI evidencing the Fannie Mae Warranty Claims, and to "sell, assign, or otherwise transfer" any claims that Fannie Mae held against the originating lenders. *See Exhibit C* at ¶3.1; ¶5.

23. On January 23, 2014, LBHI filed a motion by order to show cause seeking the Court's approval of the Settlement Agreement. *See Docket #42153*.

24. In its motion, LBHI alleged that settling the Fannie Mae Warranty Claims would enable LBHI to pursue corresponding indemnification claims it alleged to hold against the originating lenders. *See id.* at ¶18.

25. On January 31, 2014, the Court entered an order approving the Settlement Agreement. *See Docket #42420*.

26. On May 29, 2014, LBHI brought a motion (the "ADR Motion") seeking to implement Alternative Dispute Resolution Procedures and obligate certain originating lenders, including Stearns Lending, to participate in mediation in connection with its alleged indemnification claims. *See Docket #44450*.

27. On June 17, 2014, Stearns Lending filed an objection (the "Objection") to the ADR Motion. *See Docket #44747*.

28. On June 19, 2014, a hearing (the "Hearing") was held on the ADR Motion.

29. At the Hearing the Court communicated its inclination to grant the ADR Motion, while also agreeing to provide an "escape hatch" from mediation by entertaining applications setting forth specific reasons why a lender should be released from having to participate.

30. LBHI and Stearns Lending agreed to adjourn the Objection for thirty days, and subsequently submitted a proposed order containing negotiated Alternative Dispute Resolution procedures to the Court for approval.

31. On July 21, 2014, the Court entered the ADR Order. A copy of the ADR Order is annexed hereto as *Exhibit D*.

32. On September 4, 2014, a letter was mailed by LBHI to Stearns Lending purporting to be a "Demand for Payment" (the "Demand Letter"). A copy of the Demand Letter is annexed hereto as *Exhibit E*.

33. In the Demand Letter LBHI identified itself as an assignee of Lehman Bank's "contractual rights," however no proof of any assignment was enclosed therewith. *See Exhibit E*.

34. On January 23, 2015, LBHI served an "Indemnification ADR Notice" on Stearns Lending as required by the ADR Order, triggering Stearns Lending's obligation to respond within 28 days. A copy of the Indemnification ADR Notice is annexed hereto as *Exhibit F*.

5

35. LBHI also provided Stearns Lending with access to certain documents alleged to evidence its claims, however, noticeably omitted were documents evidencing an assignment of the Indemnification Rights from Lehman Bank to LBHI.

36. Stearns Lending now brings this Motion by Order to Show Cause seeking to vacate the ADR Order as (1) LBHI does not possess a right to be indemnified by Stearns Lending, and (2) all claims assigned to LBHI by Lehman Bank and Fannie Mae are barred by the statute of limitations.

## ARGUMENT

**A) Legal Standard Governing a Rule 60(b)(6) Motion to Vacate an Order**

37. *Rule 60(b)* of the *Federal Rules of Civil Procedure* provides grounds for a party to move the court for relief from a judgment or order.

38. A motion for relief from a judgment or order under *Rule 60 of the Federal Rules of Civil Procedure*, made applicable to bankruptcy cases by *Rule 9024 of the Federal Rules of Bankruptcy Procedure*, may be granted on various grounds, including "for . . . any . . . reason that justifies relief." *See Fed. Rules Civ. P. Rule 60(b)(6)*. "Relief provided under *Rule 60(b)* is equitable in nature and is right to be guided by equitable principles." *See Boehner v. Heise et al.*, 2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009). There must be a showing that undue hardship will not result to other parties, and the movant must demonstrate that he possesses a meritorious defense. *Id* at *12.

39. Stearns Lending submits that it has a meritorious defense as LBHI does not possess any enforceable claims against it as a matter of law. For that reason, granting the Motion would not create undue hardship for LBHI as it does not possess any claims to be mediated,

6

while denying the Motion and preserving Stearns Lending's obligation to participate in mediation would create undue hardship for Stearns Lending.

### B) The Indemnification Provision

40. The Indemnification Provision, from which the Indemnification Rights purportedly arise, provides as follows:

> [Stearns Lending] shall indemnify [Lehman Bank] and [Lehman Bank's] designee (including, without limitations, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages . . . that [Lehman Bank] may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to the Seller's Guide or the Loan Purchase Agreement . . . . It is understood and agreed that any subsequent holder of any Note acquired hereunder by [Lehman Bank] shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. *Exhibit B at §711.*

41. "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (N.Y. 1989).

42. Applying this well settled principal, a strict reading of the Indemnification Provision makes clear that Stearns Lending is agreeing to indemnify (1) Lehman Bank; (2) Lehman Bank's designee; and (3) a subsequent holder of any Note, from any damages that Lehman Bank may sustain. *See Exhibit B at §711.*

43. As LBHI was not a party to the Loan Purchase Agreement, and does not allege to be the current holder of any Note, one could conclude that LBHI is attempting to claim indemnification rights as the designee of Lehman Bank.

7

44. As LBHI is not a party to the Loan Purchase Agreement the Court must be particularly strict when construing the Indemnity Provision. *See Security National Mortgage Co., supra* at *35 ("When an unnamed party asserts coverage by an indemnification provision, the New York courts are particularly strict."); *see also Tonking v. Port Authority of N.Y. and N.J.*, 3 N.Y.3d 486, 821 N.E.2d 133, N.Y.S.2d 708 (N.Y. 2004); *Solomon v. City of New York*, 11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App. Div. 1985), *aff'd*, 70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987).

45. In addition to the above Indemnification Provision, the Seller's Guide also contained a provision governing a potential assignment of the Indemnification Rights by Lehman Bank.

46. Section 713.3 of the Seller's Guide reads as follows:

> [Lehman Bank] shall have the right to assign its right and duties under the Loan Purchase Agreement and this Seller's Guide to any party without the consent of [Stearns Lending]. [Lehman Bank] shall notify [Stearns Lending] in writing of any such assignment. . . . [Lehman Bank] may also assign separately to any other party any or all representations, warranties or covenants . . . along with any or all . . . remedies available . . . for breach of any representations, warranty or covenant hereunder, including, without limitations, the repurchase and indemnification remedies. Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies. *Id*. at §713.3.

47. Thus, while Lehman Bank's contractual rights were freely assignable, Lehman Bank was required to provide Stearns Lending with written notice of any such assignment. *See id*.

48. As set fully set forth hereafter, LBHI does not possess a right to be indemnified by Stearns Lending as (1) there is no evidence that Lehman Bank assigned the Indemnification Rights to LBHI; (2) notwithstanding the lack of proof of an assignment, Lehman Bank did not

posses any claim for indemnification against Stearns Lending as a matter of law and therefore could not have assigned Indemnification Rights greater than its own; and (3) LBHI could not have received an assignment of indemnification rights or claims from Fannie Mae as Fannie Mae's rights to indemnification were not assignable without corresponding assignments of the Notes.

### i) There is No Evidence that Lehman Bank Assigned Indemnification Rights to LBHI

49. In this dispute LBHI claims to be an assignee of Lehman Bank's Indemnification Rights. *See Exhibit A*.

50. Pursuant to the Seller's Guide, however, Lehman Bank was required to provide written notice to Stearns Lending of any such assignment. *See Exhibit C at §713.3*.

51. Despite two opportunities to produce evidence of an assignment, as well as a copy of a written notice of any such assignment (i.e. either enclosed with the Demand Letter or amongst the documents provided in support of its ADR Indemnification Notice), LBHI has failed to provide such proof. *See Exhibit E*.

52. The Indemnification Provision is unambiguous that Stearns Lending is only obligated to indemnify Lehman Bank, Lehman Bank's designee, and subsequent holders of the Notes. *See Exhibit C at §711*.

53. Therefore, without proof of an assignment LBHI has failed to establish that it is a designee of Lehman Bank entitled to assert the Indemnification Rights.

54. On that basis, the ADR Order should be vacated and Stearns Lending should be relieved of its obligations to participate in mediation thereunder.

### ii) Notwithstanding the Lack of Proof of Assignment, Lehman Bank Had No Claim for Indemnity to Assign

141580.00641/7492697v.1

55. Regardless of whether an assignment of Lehman Bank's Indemnification Rights to LBHI can be proven, it is submitted that Lehman Bank had no claim for indemnity to assign as a matter of law.

56. As previously noted, LBHI purports merely to be an assignee of Lehman Bank's "contractual rights," and not the entire Loan Purchase Agreement[1]. *See Exhibit E.*

57. As a "stranger" to the Indemnification Agreement and a purchaser "without recourse" as to Lehman Bank, LBHI has no enforceable rights or remedies against Lehman Bank. Therefore, it must be determined whether Lehman Bank possessed and, in turn, could have assigned an enforceable right or remedy against Stearns Lending. *SecurityNational Mortg. Co.*, 2014 U.S. Dist. LEXIS 177481 at *43.

58. Upon information and belief, Lehman Bank sold the loans it purchased from Stearns Lending to LBHI "without recourse" in exchange for full compensation. *See SecurityNational Mortg. Co.*, 2014 U.S. Dist. LEXIS 177481 at *10-*11 ("When each of the Loans [were] sold by Lehman Bank to LBHI, Lehman Bank was fully compensated, *i.e.*, at the time of the sale Lehman Bank was paid in full the amount that it had expended in each of the Loans"); *Docket #47-7* ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

59. Upon information and belief, these transactions were "established to protect the capital of Lehman Bank, and thereby enhance its loan purchasing capacity so as to be able to buy

---

[1] Upon information and belief, LBHI does not purport to have taken assignment of the Loan Purchase Agreement. Notably, the Loan Purchase Agreement was not listed as an asset or as an executory contract in LBHI's amended Bankruptcy schedules. *See Docket #3936.*

more loans for sale to, and for the benefit of, LBHI." *SecurityNational Mortg. Co., 2014 U.S. Dist. LEXIS 177481* at *13.

60. Under this system Lehman Bank could not suffer any loss from a loan that it sold to LBHI. *Id*. at *12.

61. "It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor." *See International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (N.Y. 1975).

62. Indeed, it is well settled that "[t]he assignment of rights does not alter the nature of the rights assigned; the assignee merely stands in the shoes of the assignor." *Badiak v. White Plain Kensington, LLC*, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011)

63. Here, Stearns Lending agreed to indemnify Lehman Bank from damages incurred in connection with its purchase of mortgage loans. *See Exhibit B* at §711.

64. However, pursuant to the manner by which Lehman Bank and LBHI structured their transactions, Lehman Bank did not, and could not, incur any damages from its subsequent sale of these loans to LBHI. *See Docket #47-7* ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

65. "Since 'an insurer's obligation to indemnify extends only to those damages the insured is legally obligated to pay, it naturally follows that a release discharging an insured from all liability relieves the insurer from the duty of indemnification because it effectively eliminates any factual or legal grounds on which the duty to indemnify may be based.'" *Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co.*, 55 A.D.3d 671, 673-674 (N.Y. App. Div. 2d Dep't

2008) (citing *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 40 A.D.3d 978, 980 (N.Y. App Div. 2d Dep't 2007) and quoting *McDonough v.. Dryden Mut. Ins. Co.*, 276 A.D.2d 817, 818 (N.Y. App. Div. 2d Dep't 2000)).

66. Applying these principals to the matter at hand, it is clear that Lehman Bank's sale of the mortgage loans to LBHI "without recourse" for full compensation relieved Stearns Lending of its duty to indemnify Lehman Bank as a matter of law. *See SecurityNational Mortg. Co., 2014 U.S. Dist. LEXIS 177481* at *43 (finding that Lehman Bank had no rights, damages, or claims it could assert against the mortgage originator under an indemnification agreement at the time of its assignment of rights to LBHI, and therefore no indemnifications rights could be asserted against the originating lender by LBHI).

67. Lehman Bank could not assign Indemnification Rights greater than those it possessed as a matter of law. *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d at 126.

68. On that basis, Stearns Lending respectfully submits that the ADR Order should be vacated, relieving Stearns Lending from its obligation to participate in mediation thereunder.

**iii) LBHI Could Not Have Received an Assignment of Indemnification Rights or Claims from Fannie Mae as those Claims are not Assignable Without Corresponding Assignments of the Notes**

69. While LBHI does not purport to have received its Indemnification Rights from Fannie Mae, as fully set forth hereafter, Fannie Mae could not have assigned said rights and claims (the "Indemnification Rights and Claims") to LBHI as Fannie Mae's Indemnification Rights and Claims arose exclusively from its status as holder of the Notes.

70. Pursuant to the Indemnification Provision, Fannie Mae possessed Indemnification Rights against Stearns Lending as the "subsequent holder of any Note." *See Exhibit B* at ¶711.

141580.00641/7492697v.1

71. However, no clause contained in the Indemnification Provision, or anywhere else in the Seller's Guide, provided that those Indemnification Rights could be assigned by a holder of the Notes without an accompanying assignment of those Notes. *See generally Exhibit B*.

72. Significantly, in the Settlement Agreement, Fannie Mae does not purport to assign any Notes to LBHI, but rather merely to "sell, assign, or otherwise transfer" any claims that Fannie Mae held against the originating lenders. *See Exhibit C* at ¶3.1; ¶5.

73. Furthermore, upon information and belief, Fannie Mae could not have assigned the Notes to LBHI as part of the Settlement Agreement as a substantial amount of the loans had already been liquidated. *See, e.g., Exhibit G* (Copies of Repurchase and Loss Statements[2] provided by LBHI in support of its claims evidencing the date upon which each of these loans were liquidated).

74. While Section 711 of Seller's Guide provides that "the indemnification obligations of [Stearns Lending] shall survive the termination of the Seller's Guide and the related Loan Purchase Agreement," nowhere in the Seller's Guide[3] does it provide that said obligations could be independently assigned after the liquidation of the Notes. *See id*. at §711.

75. While it is likely that Fannie Mae may have been able to pursue its Indemnification Rights and Claims against Stearns Lending after liquidating the Notes, the Seller's Guide does not support any assertion that Fannie Mae could thereafter assign its Indemnification Rights Claims to LBHI.

---

[2] Notably, while LBHI alleges that its indemnification claims arose from its Settlement Agreement with Fannie Mae, these "Repurchase and Loss Statements" provided were all prepared by the Federal Home Mortgage Loan Corporation ("Freddie Mac"), and not by Fannie Mae.

[3] While Section 710 of the Seller's Guide suggests that the contractual right of Indemnification may survive the liquidation of a mortgage loan in foreclosure, *see id*. at §710, there is no evidence that the Loan Purchase Agreement and Seller's Guide was ever assigned to Fannie Mae.

141580.00641/7492697v.1

76. Therefore, as Fannie Mae's Indemnification Rights and Claims arose exclusively from its status as a holder of the Note, its failure or inability to assign the Notes to LBHI is fatal to any allegation by LBHI that it received an assignment of the Indemnification Rights and Claims from Fannie Mae.

77. Accordingly, as LBHI cannot claim to have received an assignment of Indemnification Rights or Claims from Fannie Mae, Stearns Lending submits that the ADR Order should be vacated.

**C) All Claims Assigned to LBHI by Lehman Bank and Fannie Mae Are Barred by the Statute of Limitations**

78. LBHI also purports to possess claims against Stearns Lending for breach of warranty (the "Breach of Warranty Claims").

79. Upon information and belief, LBHI alleges to have obtained Breach of Warranty Claims (1) through the alleged assignment of Lehman Bank's "contractual rights," and (2) the Settlement Agreement with Fannie Mae.

80. Regardless of how LBHI obtained its Breach of Warranty Claims, however, said claims are barred by the statute of limitations as a matter of law.

81. In New York, a cause of action for breach of contract accrues at the time of the breach, even if no damages occur until later. *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993).

82. It is well settled that a breach of warranty claim arising out of a loan purchase agreement against a mortgage loan originator occurs at the time the loans are delivered to the purchaser. *See, e.g., ACE Sec. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 522, 523 (N.Y. App. Div. 1st Dep't 2013); *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189 (W.D. Wash. 2011); *Structured Mortgage Trust 1997-2 v. Daiwa Finance*

141580.00641/7492697v.1

*Corp.*, 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003); *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v Nomura Credit & Capital, Inc.*, 39 Misc. 3d 1226(A) (N.Y. Sup. Ct. 2013).

83. Furthermore, the accrual date of the statute of limitations cannot be extended by delaying a demand for payment. *See Aurora Commer. Corp. v. Std. Pac. Mortg.*, 2014 U.S. Dist. LEXIS 36150, 14-15 (D. Colo. Mar. 19, 2014).

84. Moreover, an originating lender's failure to timely repurchase a loan or to provide indemnification does not constitute a separate breach of the loan purchase agreement for statute of limitations purposes. *See Lehman Bros. Holdings v. Universal Am. Mortg. Co., LLC*, 2014 U.S. Dist. LEXIS 120255 (D. Colo. Aug. 28, 2014) (citing *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014)) ("[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused. This issue has been repeatedly addressed and resolved [by New York courts.]")

85. Here, the Purchase Advise statements supplied by LBHI in connection with its claim conclusively establish that all loans giving rise its Breach of Warranty Claims were sold by Stearns Lending to Lehman Bank between November 8, 2004, and July 25, 2007. *See Exhibit H* (copies of the Purchase Advise statements).

86. Therefore, as the Breach of Warranty Claims accrued upon the delivery of these loans to Lehman Bank, the six-year statute of limitations expired as to the entirety of these loans on July 25, 2013.[4]

---

[4] LBHI may allege in its Opposition to be entitled to a tolling of the Statute of Limitations pursuant to *11 U.S.C. §108(a)*. As LBHI has not provided any proof of the date of the alleged assignment of the "contractual rights" from Lehman Bank, Stearns Lending explicitly reserves its right to address such an argument in its Reply papers.

87. The fact that LBHI received an assignment of claims from Fannie Mae does not change this result as an assignee's rights can be no greater than those of the original assignor, *see Long Island Radiology v. Allstate Ins. Co.*, 36 A.D.3d 763, 765 (N.Y. App. Div. 2d Dep't 2007), and therefore for statute of limitations purposes Fannie Mae's cause of action against Stearns Lending would have accrued when it would have accrued for Lehman Bank, no later than July 25, 2007. *See Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854, 856 (N.Y. Sup. Ct. 1977) (dismissing a claim as untimely as a statute of limitations defense binds an assignee).

88. The fact that LBHI furnished consideration in exchange for Fannie Mae's Breach of Warranty Claims also does not change this result as, without a contractual right to be indemnified by Stearns Lending, LBHI is merely entitled to subrogation of the same rights and defenses possessed by Fannie Mae. *See Great American Ins. Co. v. United States*, 575 F.2d 1031, 1034 (2d Cir. 1978) ("Subrogation is based upon the principle of indemnity but is an exclusively derivative remedy which depends upon the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured.").

89. Therefore, as the Breach of Warranty Claims held by Fannie Mae are subject to a statute of limitations defense, those claims are still subject to those limitations after the claims were in the hands of LBHI. *See id*.

90. On that basis, Stearns Lending respectfully submits that the entirety of LBHI's Breach of Warranty Claims are barred by the statute of limitations as a matter of law, and therefore the ADR Order should be vacated.

## CONCLUSION

91. LBHI holds neither Indemnification Rights nor Breach of Warranty Claims against Stearns Lending as a matter of law. There is no evidence that Lehman Bank ever

141580.00641/7492697v.1

assigned its Indemnification Rights to LBHI. Notwithstanding that fact, Lehman Bank did not possess any Indemnification Rights to assign to LBHI as Lehman Bank was fully compensated, without recourse, upon selling the subject loans to LBHI. Fannie Mae could not have assigned its Indemnification Rights and Claims to LBHI as the Indemnification Provision did not provide for Indemnification Rights to be assignable by a subsequent holder of the Notes without a corresponding assignment of said Notes. Furthermore, any Breach of Warranty Claims assigned by Lehman Bank or Fannie Mae to LBHI are barred by the expiration of the statute of limitations.

92. According, LBHI has does not have any claims against Stearns Lending and participating in mediation concerning those claims is unwarranted.

93. Therefore, Stearns Lending respectfully submits that this Court should vacate the ADR Order.

WHEREFORE, Stearns Lending requests an order granting its motion in its entirety, along with any other and further relief as the Court deems just and proper.

Dated: February 13, 2015
      New York, NY

*/s/ Timothy W. Salter*
Jill E. Alward, Esq.
Timothy W. Salter, Esq.
BLANK ROME LLP
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Attorneys for Stearns Lending, LLC f/k/a Stearns Lending, Inc.*