# LEHMAN BROTHERS BANK FSB

## FORM OF
## LOAN PURCHASE AGREEMENT

### (BULK PURCHASE/SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of Sept 14, 2004 [Seller No. 1886 ], by and between Lehman Brothers Bank, FSB ("Lehman Bank") and First Pacific Financial, Inc. , having an office at 4 Hutton Centre Dr. #500, Santa Ana, CA 92707 (the "Seller").

### WITNESSETH:

WHEREAS, the Seller desires to sell to Lehman Bank, and Lehman Bank desires to purchase, from the Seller from time to time, certain adjustable and/or fixed rate residential mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis on the date (each, a "Purchase Date") set forth in a Purchase Price and Terms Letter to be entered into between Lehman Bank and the Seller with respect to each sale of Mortgage Loans hereunder (each, a "PP&TL");

WHEREAS, each sale of Mortgage Loans to Lehman Bank shall be made upon the terms, conditions, representations and warranties set forth in this Agreement, the related PP&TL and that certain Aurora Loan Services, Inc. Seller Guide, as amended from time to time (the "Seller Guide"), except as otherwise set forth herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a valid lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, Lehman Bank and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller Guide, as modified by this Agreement; and

WHEREAS, this Agreement shall be deemed to be a "Loan Purchase Agreement" referred to in Section 100 of the Seller Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lehman Bank and the Seller agree as follows:

SECTION 1. Agreement to Purchase. The Seller agrees to sell, and Lehman Bank agrees to purchase, from time to time, those Mortgage Loans described in a PP&TL and the related Purchase Advice, together with the servicing rights related thereto, pursuant to the terms and conditions of the Seller Guide and this Agreement.

SECTION 2. Incorporation of Seller Guide; Conflicts; Seller Agreement. Except as otherwise set forth herein (including any Annex or Addenda hereto), or in any related PP&TL, the terms and provisions of the Seller Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of

[Rev. 07/2004]

Created on 7/27/2004 4:14 PM KY

# LEHMAN BROTHERS BANK FSB

this Agreement. In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller Guide and any of the express provisions of this Agreement, the express provisions of this Agreement shall control and be binding upon Lehman Bank and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller Guide and (ii) agrees to be bound by the terms and conditions set forth therein and herein. Except as provided in the "Addendum To Loan Purchase Agreement," signed and dated July 22, 2004. The terms of such addendum are hereby incorporated into this agreement by this reference. This Agreement includes and incorporates each of the following:

Annex 1    Additional Representations, Warranties, Covenants and Agreements of the Seller

SECTION 3. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. Successors and Assigns; Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and Lehman Bank and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of Lehman Bank.

SECTION 5. Defined Terms. Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller Guide.

SECTION 6. Costs. All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. Notices. All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller Guide if to Lehman Bank, and (ii) as follows if to the Seller:

First Pacific Financial, Inc.
4 Hutton Centre Dr. # 500
Santa Ana, CA 98707
Attn: Robert Telles

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

**SECTION 8. Governing Law. This Agreement and the Seller Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.**

# LEHMAN BROTHERS BANK FSB

SECTION 9. Waivers. No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. Reproduction of Documents. This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. Further Agreements. The Seller and Lehman Bank each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller Guide.

SECTION 12. Confidentiality. The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without Lehman Bank's consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

SECTION 13. State of Incorporation. The Seller is duly organized validly existing and in good standing under the laws of the state of __California__.

IN WITNESS WHEREOF, the Seller and Lehman Bank have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS BANK, FSB
Purchaser)

By: _____
Name: _____
Title: _____

(Seller)

By: _____P. Telles_____
Name: ____Robert Telles_____
Title: ____CEO is EC_____

-3-

Annex 1

## ADDITIONAL REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS OF THE SELLER

A.  ADDITIONAL REPRESENTATIONS AND WARRANTIES

In addition to the representations and warranties contained in Section 703 of the Seller Guide, or elsewhere in the Seller Guide or this Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants to Lehman Bank as of the related Purchase Date, and covenants to Lehman Bank that:

1. Information Complete. All data, information and other written or electronic material provided to the Purchaser or its designees with respect to the Mortgage Loan (including, without limitation, any data and information submitted for loan pricing purposes) was true, correct and complete and did not omit to state a fact necessary to make such data or information not misleading.

2. Conformance with Underwriting Guidelines. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines set forth in the Seller's Guide in effect at the time the Mortgage Loan was originated. Seller has, with respect to the Mortgage Loans, complied with all requirements applicable to sellers that have received Delegated Underwriting Authority.

3. Seller's Origination. The Seller's decision to originate any mortgage loan or to deny any mortgage loan application is an independent decision and is in no way made as a result of Purchaser's decision to purchase, or not to purchase, or the price Purchaser may offer to pay for, any such mortgage loan, if originated.

4. Delivery of Mortgage Documents. The Mortgage Note and all other Mortgage Loan documents required to be delivered by the Seller under the Seller Guide have been delivered to Lehman Bank or its designee.

5. Selection Process. The Mortgage Loans were not intentionally selected in a manner so as to affect adversely the interests of Lehman Bank.

6. Loan Characteristics. With respect to the Mortgage Loans to be sold to Lehman Bank on the Purchase Date, the Mortgage Loan characteristics set forth in the PP&TL are true and complete in the aggregate.

7. Predatory Lending Regulations; High Cost Loans. Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state and federal laws including, but not limited to, all applicable predatory and abusive lending laws. None of the Mortgage Loans are classified as "high cost", "threshold," or "predatory" loans as defined by applicable predatory and abusive lending laws (including, without limitation, under the Home Ownership and Equity Protection Act of 1994 or under any other applicable state, federal or local law).

8. Single Premium Credit Life Insurance. None of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies.

09/08/04 -KY

4

9.  No Commissions to Third Parties. The Seller has not dealt with any broker or agent or anyone else who might be entitled to a fee or commission in connection with this transaction.

B.  ADDITIONAL AGREEMENTS

1.  At the option of the Purchaser, the Seller shall repurchase any Mortgage Loan if the first ~~or second~~ monthly payments due the Purchaser ~~are~~ is not made within (30) days of each such monthly payments respective due date. Such repurchase will be made at the Repurchase Price in accordance with Section 710 of the Seller Guide.

2.  If the Seller fails to provide the Purchaser with a complete electronic data file with respect to each Mortgage Loan containing all loan level data required by the Purchaser, the Purchaser shall have the right (but not obligation) to complete such electronic data file on the Seller's behalf. In such case, any data file completed by the Purchaser on the Seller's behalf shall for all purposes of the Agreement be deemed to have been provided to the Purchaser by the Seller and the Seller shall be liable to the Purchaser for the truth, accuracy and completeness of all such data, even if the Purchaser was negligent in completing such electronic data file.

3.  Seller acknowledges that Lehman Bank may not have conducted any pre-Purchase Date review of the Mortgage Loan files to determine whether or not they are eligible for purchase by Lehman Bank under the Seller Guide. Lehman Bank expressly reserves the right (but not the obligation) to perform a purchase review of the Mortgage Loans and the Mortgage Loan files after the Purchase Date and to exercise any rights or remedies that may be available to Lehman Bank thereunder.

4.  The "Good File Delivery Credit" referred to in Section 600 of the Seller Guide shall not apply to the transactions contemplated by this Agreement.

## ADDENDUM TO LOAN PURCHASE AGREEMENT

THIS ADDENDUM ("Addendum") is made this _02_ day of _July_, 2004, by and between Lehman Brothers Bank, FSB ("Lehman Brothers") and First Pacific Financial, Inc., ("Seller").

WHEREAS, Lehman Brothers and Seller have executed that certain Loan Purchase Agreement (the "Agreement") dated the _15_ day of _April_, 2004; and

WHEREAS, Lehman Brothers and Seller wish to amend certain terms, provisions and conditions of the Agreement and the Seller's Guide (the "Seller's Guide"), as incorporated into the Agreement;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lehman Brothers and Seller agree as follows:

1. Capitalized terms used and not defined herein shall have their respective meanings under the Agreement.

2. With respect to the following provisions of the Seller's Guide, as incorporated into the Agreement, the following amendments shall be made:

    a) The first sentence of the final paragraph of Section 710 of the Seller's Guide, as incorporated into the Agreement, shall be deleted in its entirety.

    b) Section 714 of the Seller's Guide, as incorporated into the Agreement, shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

    "For a period of twelve (12) months from and after the closing date of any Mortgage Loan and the sale of such Mortgage Loan by Seller to Lehman Brothers, Seller agrees that it shall not directly target any mortgagor for the refinancing of such Mortgage Loan. This prohibition shall not restrict Seller from advertising to the general public Seller's loan products or from taking any action which is not designed to target a specific group or class of mortgagors, including without limitation, mortgagors represented by Mortgage Loans sold to Lehman Brothers by Seller."

    c) Section 716 of the Seller's Guide, as incorporated into the Agreement, shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

    "If a Mortgage Loan is paid in full within three (3) months of the Purchase Date, Seller will reimburse Lehman Brothers that portion of the Purchase Price in excess of par multiplied by the Unpaid Principal Balance as of the date of payment in full, net of Prepayment charges collected."

3. Other than as specifically set forth herein, the terms, provisions and conditions of the Agreement shall remain in full force and effect. All references herein to changes or amendments to the Seller's Guide are solely for the purposes of amending the Agreement,

Addendum to Loan Purchase Agreement
First Pacific Financial, Inc.
Page 2 of 22

    and no such changes or amendments shall affect any term or provision of the Seller's Guide with respect to any person other than the Seller under the Agreement.

4.    This Addendum may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

    IN WITNESS WHEREOF, the Seller and Lehman Brothers have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

LEHMAN BROTHERS BANK, FSB
(Purchaser)

By: _____

Name: _____

Title: _____


FIRST PACIFIC FINANCIAL, INC.
(Seller)

By: _____

Name: Robert Telles

Title: CFO