Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 701 | REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER | 1 |
| 702 | CONCERNING SELLER AND GUARANTOR | 1 |
| 703 | CONCERNING INDIVIDUAL MORTGAGE LOANS | 5 |
| 704 | EVENTS OF DEFAULT | 17 |
| 705 | RIGHT TO DEMAND REASONABLE ASSURANCES | 18 |
| 706 | ADDITIONAL REMEDIES; SETOFF | 18 |
| 707 | WAIVER OF DEFAULTS | 19 |
| 708 | TERMINATION WITHOUT CAUSE | 19 |
| 709 | EFFECT OF TERMINATION | 19 |
| 710 | REPURCHASE OBLIGATION | 19 |
| 711 | INDEMNIFICATION AND THIRD PARTY CLAIMS | 20 |
| 712 | SURVIVAL OF REMEDIES | 21 |
| 713 | MISCELLANEOUS | 21 |
| 713.1 | GOVERNING LAW | 21 |
| 713.2 | SEVERABILITY OF PROVISIONS | 21 |
| 713.3 | ASSIGNMENT | 22 |
| 713.4 | GOVERNING CONTRACT | 22 |
| 713.5 | ENTIRE AGREEMENT; NO WAIVER | 22 |
| 713.6 | NO PARTNERSHIP | 22 |
| 713.7 | CONFIDENTIALITY | 22 |
| 713.8 | NON-EXCLUSIVE RELATIONSHIP | 23 |
| 714 | SOLICITATION FOR REFINANCING | 23 |
| 715 | EARLY PAYMENT DEFAULT | 23 |
| 716 | EARLY PAYOFF | 24 |
| 717 | DELEGATED UNDERWRITING | 24 |
| 718 | AUTOMATED UNDERWRITING | 25 |

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

**700    CONTINUING ELIGIBILITY REQUIREMENTS**

To continue as an approved Seller or Seller/Servicer, each Seller must remain in compliance with all provisions of this Seller's Guide, the Purchase Agreement, and as applicable, the Servicing Agreement, the Custodial Agreement and any other agreement by and between Purchaser and Seller. Additionally, each Seller/Servicer must maintain an acceptable claims experience with all mortgage insurers.

**701    REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER**

Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide. Seller makes the representations, warranties, and covenants set forth in this Section as of the date of the Loan Purchase Agreement and remakes them as of each Purchase Date, unless the representation or warranty provides otherwise. Making such representations, warranties and covenants does not release Seller from its obligations under any representations, warranties or covenants contained in other sections of this Seller's Guide, including the exhibits hereto, or in the Loan Purchase Agreement. It is expressly understood and agreed that Purchaser's rights in connection with Seller's representations, warranties and covenants survive the Purchase Date of any particular Mortgage Loan and any termination of the Loan Purchase Agreement, and are not affected by any investigation or review made by, or on behalf of, Purchaser, except to the extent expressly waived in writing by Purchaser.

In addition to Purchaser's right to assign its rights and duties under the Loan Purchase Agreement and the Seller's Guide, Seller agrees that Purchaser separately may assign to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide and Loan Purchase Agreement, along with any or all of the remedies available against Seller for Seller's breach of any representation, warranty or covenant, including, without limitation, the repurchase and indemnification remedies. Any such party shall be an intended third party beneficiary of these representations, warranties, covenants and remedies.

**702    CONCERNING SELLER AND GUARANTOR**

In addition to the representations, warranties and covenants set forth elsewhere in this Seller's Guide, Seller represents and warrants as of the respective dates of the Loan Purchase Agreement and as of each Purchase Date, and covenants that:

1.  **Due Organization; Good Standing; Licensing.** Seller and to Seller's knowledge, Seller's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain licenses, registrations and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by Seller, and, in any event, Seller is and will remain

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

in compliance with the laws of any such state, and is and will remain in good standing with federal authorities to the extent necessary to ensure the enforceability of the related Mortgage Loan. Seller has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigations, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed within two (2) years prior to the date of the Loan Purchase Agreement by any federal or state agency or instrumentality with respect to either the lending-related financial operations of Seller, or the ability of Seller to perform in accordance with the terms hereof. Except as may have been disclosed to and approved by Purchaser in writing, Seller is not operating under any type of agreement or order (including, without limitation, a supervisory agreement, memorandum of understanding, cease and desist order, capital directive, supervisory directive and consent decree) with or by the Office of Thrift Supervision, Federal Deposit Insurance Corporation Federal Reserve Board, Office of the Comptroller of the Currency, or any state banking department or other government banking agency, and Seller is in compliance with any and all capital, leverage or other financial standards imposed by any applicable regulatory authority. Each of the representations and warranties made by Seller is true, accurate and complete, and is deemed to be remade in its entirety as of the date of the Loan Purchase Agreement executed by Seller and as of each Purchase Date.

2. **Authority.** Seller has and will maintain the full corporate, limited liability company or partnership (as the case may be) power and authority to execute and deliver the Loan Purchase Agreement and to perform in accordance with each of the terms thereof and the terms of this Seller's Guide; the execution, delivery and performance of the Loan Purchase Agreement and the performance of the terms of this Seller's Guide (including, without limitation, all instruments of transfer to be delivered under the terms of the Loan Purchase Agreement) by Seller, and the consummation of the transactions contemplated thereby and hereby, have been duly and validly authorized; the Loan Purchase Agreement and the Seller's Guide evidence the legal valid, binding and enforceable obligations of Seller; except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles, and all requisite corporate, limited liability company or partnership (as the case may be) action has been taken by Seller to make the Loan Purchase Agreement and the terms of this Seller's Guide valid and binding upon Seller, and enforceable in accordance with their respective terms.

3. **Ordinary Course of Business.**    The consummation of the transactions contemplated by the Loan Purchase Agreement and the terms of this Seller's Guide are in the ordinary course of business of Seller, and the transfer, assignment and conveyance of the Mortgage Loans by Seller pursuant to the Loan Purchase Agreement and the terms of this Seller's Guide are not subject to the bulk transfer laws or any similar statutory provision in effect in any applicable jurisdiction.

4. **No Conflicts.** Neither the execution and delivery of the Loan Purchase Agreement, the acquisition and/or making of the Mortgage Loans by Seller, the sale of the Mortgage Loans to Purchaser or the transactions contemplated thereby or pursuant to this Seller's Guide, nor the fulfillment of or compliance with the terms and conditions of the Loan Purchase Agreement, will conflict with or result in a breach of

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

any of the terms, conditions or provisions of Seller's articles of incorporation, charter, by-laws, partnership agreement, operating agreement or other organizational document (as the case may be), or of any legal restriction or regulatory directive or any agreement or instrument to which Seller is now a party or by which it is bound, or constitute a default or result in any acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Seller or any of its property is subject, or impair the ability of Purchaser to realize on any of the Mortgage Loans, or impair the value of any of the Mortgage Loans.

5. **Ability to Perform.**  Seller has the ability to perform each and every obligation of, and/or satisfy each and every requirement imposed on Seller pursuant to the Loan Purchase Agreement and this Seller's Guide, and no offset, counterclaim or defense exists to the full performance by Seller of the requirements of the Loan Purchase Agreement and this Seller's Guide.

6. **No Litigation Pending.**  There is no action, suit, proceeding, inquiry, review, audit or investigation pending or, to Seller's knowledge, threatened by or against Seller that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of Seller, or in any material liability on the part of Seller, or which would draw into question the validity or enforceability of any of the Loan Purchase Agreement, this Seller's Guide, or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of Seller contemplated in the Loan Purchase Agreement or this Seller's Guide, or which would be likely to impair materially the ability of Seller to perform under the terms of the Loan Purchase Agreement or this Seller's Guide.

7. **No Consent Required.**  No consent, approval, authority or order of any court or governmental agency or body is required for the execution and performance by Seller of, or compliance by Seller with, the Loan Purchase Agreement or this Seller's Guide, the sale of any of the Mortgage Loans, or the consummation of any of the transactions contemplated by the Loan Purchase Agreement, or, if required, such unconditional approval has been obtained prior to the related Purchase Date.

8. **No Untrue Information.**  Neither the Seller Application Package, the Loan Purchase Agreement, nor any statement, report or other document furnished or to be furnished by Seller or Seller's correspondent pursuant to the Loan Purchase Agreement or this Seller's Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Seller meets the Eligibility Standards and shall take all steps necessary to continue to meet such Eligibility Standards.

9. **Securities Law.**  Purchaser has made no representation whatsoever to Seller concerning the applicability or inapplicability of the Security Act of 1933, as amended (the "1933 Act") or of any state securities laws (each, a "State Act") to the transactions that are the subject of this Seller's Guide.  Seller hereby represents and warrants:

   a. The offer, issuance, sale and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

under the registration provisions of the 1933 Act, and the registration of the Mortgage Loans under the 1933 Act is not required in connection with any such offer, issuance, sale or delivery of the Mortgage Loans; and

b. The offer, issuance, sale and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions under applicable state acts, and neither the registration or qualification of the Mortgage Loans under such state acts nor the authorization, approval, or consent of any governmental authority or agency is required or necessary in connection with any such offer, issuance, sale or delivery of the Mortgage Loans.

10. **No Accrued Liabilities.** Except as may be otherwise disclosed by Seller and acknowledged by Purchaser in writing prior to the date of the Loan Purchase Agreement, there are no accrued liabilities of Seller with respect to any of the Mortgage Loans, or circumstances under which any such accrued liabilities will arise against Purchaser, as successor to Seller's interests in and to the Mortgage Loans, with respect to any action or failure to act by Seller occurring on or prior to the Purchase Date.

11. **Origination, Servicing.** The origination and servicing of the Mortgage Loans by Seller have been legal, proper, prudent and customary and have conformed to customary standards of the residential mortgage origination and servicing business.

12. **Compliance with Laws.** Seller has complied with, and has not violated any law, ordinance, requirement, regulation, rule or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Seller or the ability of Seller to consummate the transactions contemplated by the Loan Purchase Agreement and this Seller's Guide.

13. **Compliance with Loan Purchase Agreement and Seller's Guide.** Seller will comply with all provisions of this Seller's Guide and the Loan Purchase Agreement, and will promptly notify Purchaser of any occurrence, act or omission regarding Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor of which Seller has knowledge, which occurrence, act or omission may materially affect Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor.

14. **Standards and Procedures.** The origination practices utilized by Seller with respect to the Mortgage Loans have been legal, proper, prudent and customary for mortgage loans of a type and credit quality similar to the Mortgage Loans and Seller maintains (i) a staff that is experienced and trained in the proper origination of mortgage loans of a type and credit quality similar to the Mortgage Loans, and (ii) operating procedures, including refined risk assessment strategies beyond simple credit risk analysis, that are prudent and customary in the origination of mortgage loans of a type and credit quality similar to the Mortgage Loans.

15. **No Brokers or Finders.** Seller has not in connection with any Mortgage Loan incurred any obligation, made any commitment or taken any action that might result in a claim against Purchaser or an obligation by Purchaser to pay a sales brokerage commission, finder's fee or similar fee in respect to the transactions between

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Purchaser and Seller as described in this Seller's Guide or the Loan Purchase Agreement.

16. **No Insolvency, etc.** Seller has not transferred any Mortgage Loan to Purchaser with any intent to hinder, delay or defraud any of Seller's creditors. Seller is not insolvent and the sale of the Mortgage Loans will not cause Seller to become insolvent. The consideration received by Seller upon the sale of the Mortgage Loans under this Seller's Guide and the Loan Purchase Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

## 703   CONCERNING INDIVIDUAL MORTGAGE LOANS

In addition to the representations, warranties and covenants set forth elsewhere in this Seller's Guide or the Loan Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants as of the related Purchase Date, and covenants that:

1. **Mortgage Loans as Described.** No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

2. **Payments Current.** All payments required to be made through the related Purchase Date for the Mortgage Loan under the terms of the Note have been made and credited. No payment required under the Mortgage Loan is delinquent and no payment under the Mortgage Loan has been delinquent at any time since the origination of the Mortgage Loan. For the purpose of this paragraph, a payment under a Mortgage Loan will be deemed delinquent if that payment due was not paid by the Mortgagor prior to the date that the next payment was due under the Mortgage Loan. The Mortgage Loan has not at any time been modified, renewed or extended for the purpose of concealing the delinquency of the Mortgagor.

3. **No Outstanding Charges.** There has been no default under the terms of the Mortgage, and any and all taxes, including, without limitation, any and all transfer taxes due and payable to any state or municipality relating to the transfer of the ownership and occupancy interest in the Mortgaged Property, and all governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments and/or ground rents that previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item that remains unpaid and that has been assessed but is not yet due and payable.

4. **No Advances.** Except as has been clearly and conspicuously disclosed in writing to and approved by Purchaser prior to the Purchase Date: (i) Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for interest accruing from the date of the Note or date of disbursement of the Mortgage Loan proceeds, whichever is greater, to the day that precedes by one (1) month the due date of the first installment of principal and interest; and (ii) the Mortgagor has, in compliance with the Underwriting

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Guidelines, made any down payment required in connection with the Mortgage Loan, and has received no concession from Seller, any correspondent, the seller of the Mortgaged Property, or any other third party.

5. **Original Terms Unmodified.** The original terms of the Note and the Mortgage have not been impaired, waived, altered, or modified in any respect, except by a written instrument that Purchaser has approved and has been recorded, if necessary, to protect the interest of Purchaser and which has been delivered to Purchaser with the Mortgage Loan documents; the substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

6. **No Defense.** The Mortgage Loan is not subject to any unexpired right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury. The operation of any of the terms of the Note or the Mortgage, or the exercise of any right thereunder will not render either the Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, cancellation, set-off, counterclaim, or defense, including without limitation, the defense of usury, and no such right of rescission, cancellation, set-off, counterclaim or defense has been asserted with respect thereto. No Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated.

7. **Hazard and Flood Insurance.** Pursuant to the terms of the Mortgage, all buildings and improvements upon the Mortgaged Property are insured by an insurer acceptable to Purchaser against loss by fire, hazards of extended coverage and such other hazards as are customarily insured against in the area where each Mortgaged Property is located in an amount which is at least equal to the lesser of: (a) the outstanding principal balance of the applicable Mortgage Loan or if identified as a second lien mortgage, the total of the outstanding principal balance of the Mortgage Loan and any first lien loan affecting the Mortgaged Property; (b) the full replacement value of the Mortgaged Property, or (c) in the case of flood insurance, the maximum amount of insurance which is available under the Flood Disaster Protection Act of 1973. If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards and in which flood insurance has been made available, a flood insurance policy meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with an insurance carrier acceptable to Purchaser. All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid. The Mortgage obligates the Mortgagor thereunder to maintain the individual insurance policies at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. The amount of insurance is sufficient to prevent the application of any co-insurance contribution on any loss. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of Purchaser upon the consummation of the transactions contemplated by the Loan Purchase Agreement. Seller has not

## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

engaged in, and has no knowledge of the Mortgagor having engaged in, any act or omission that would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller. Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. Guaranteed initial flood zone determination documentation is included in each Mortgage Loan file delivered to Purchaser for Purchase.

8.  **Origination, Underwriting and Servicing Compliance.** Seller, and, to the extent the Mortgage Loan was originated by, closed in the name of, or serviced by a correspondent, such correspondent, has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan; and (ii) any and all other applicable federal, state, county, municipal, or other local laws, including, without limitation, those laws relating to truth-in-lending, real estate settlement procedures, consumer credit protection, usury limitations, fair housing, equal credit opportunity, collection practices, money laundering and real estate appraisals.

9.  **No Satisfaction of Mortgage.** The Mortgage has not been satisfied, canceled, subordinated, or rescinded in whole or in part, and the Mortgaged Property has not been released, in whole or in part, from the lien of the Mortgage, and no instrument has been executed that would affect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor.

10. **Location and Type of Mortgaged Property.** The Mortgaged Property is a fee simple or acceptable leasehold property located in the state identified in the Mortgage Loan File and unless otherwise provided for in the Loan Purchase Agreement, consists of a single parcel of real property with a single family residence erected thereon or a two-to-four family dwelling or an individual unit in a planned unit development or Condominium Project, provided, however, that any condominium or planned unit development shall conform with applicable requirements outlined in this Seller's Guide; no Mortgaged Property is a mobile home or a boat. No portion of the Mortgaged Property is used for commercial purposes in such a manner that the Mortgaged Property would be considered commercial rather than residential property by knowledgeable and sophisticated investors active in the residential secondary mortgage market.

11. **Valid Lien.** The Mortgage is a valid, existing, and enforceable lien on the Mortgaged Property, and on all buildings on the Mortgaged Property, and on all installations and

## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

mechanical, electrical, plumbing, heating, and air conditioning systems located in or affixed to such buildings, and on all additions, alterations, and replacements made at any time with respect to the foregoing in the lien position identified by Seller and in accordance with the appropriate Program Profile. The lien of the Mortgage is subject only to:

a. The lien of current real property taxes and assessments not yet due and payable;
b. Covenants, conditions, restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the Title Report delivered to the originator of the Mortgage Loan, none of which (i) were not referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan; or (ii) adversely affects the appraised value of the Mortgaged Property set forth in such appraisal;
c. Other matters to which like properties are commonly subject, which other matters do not materially interfere with the benefits of the security intended to be provided by the Mortgage, or the use, enjoyment, value, or marketability of the related Mortgaged Property; and
d. If the Mortgage is identified to Purchaser by the Seller as a second lien mortgage, the lien of the first mortgage.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable lien and security interest on the property described therein in the lien position identified by Seller and in accordance with the appropriate Program Profile and Seller has full right to sell and assign the same to the Purchaser. The Mortgaged Property was not, as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secured debt or other security interest creating a lien subordinate to the lien of the Mortgage other than any such subordinate lien disclosed in the Underwriting Package and considered in the underwriting review of the Mortgage Loan.

12. **Validity of Mortgage Documents.** The Note and the Mortgage are genuine, and each is a legal, valid, and binding obligation of the maker thereof, enforceable in accordance with its terms except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles. All parties to the Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Note and the Mortgage and any other related agreement, and the Note and the Mortgage have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

13. **Full Disbursement of Proceeds.** The Mortgage Loan has been closed and, <u>except for home equity lines of credit,</u> the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for the future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds thereof have been complied with, unless otherwise provided for in the Seller's Guide. All costs, fees and expenses incurred in making or Closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Note or Mortgage.

14. **Ownership of Mortgage Loans.** Immediately prior to the transfer of the Mortgage Loan to Purchaser, Seller is the sole owner of record and is the holder of the Mortgage Loan. Except for the security interest of a warehouse lender, which security interest has been disclosed in writing to Purchaser, the Mortgage Loan is not assigned or pledged, and Seller has good and marketable title thereto, and has full right to transfer and sell the Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim, security interest, right, option, assignment or servicing agreement, whatsoever (except pursuant to the Loan Purchase Agreement and this Seller's Guide), and Seller has full right and authority (subject to no interest or participation of, or agreement with, any other party) to sell and assign each Mortgage Loan pursuant to the Loan Purchase Agreement and this Seller's Guide.

15. **Doing Business.** All parties that have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee, or otherwise, are (or during the period in which they held and disposed of such interest, were) (i) in compliance with any and all applicable requirements concerning licensing and qualifications to do business under the laws of the state wherein the Mortgaged Property is located, and (ii) organized under the laws of such state, or (iii) qualified to do business in such state, or (iv) federal savings and loan associations or national banks having principal offices in such state, or (v) not doing business in such state.

16. **LTV/CLTV/HCLTV; PMI Policy.** The LTV/CLTV/HCLTV of each Mortgage Loan does not exceed the maximum LTV/CLTV/HCLTV permitted by the Underwriting Guidelines. All provisions of each PMI Policy have been and are being complied with, and such policy is written with a private mortgage insurance company acceptable to Purchaser, is the binding obligation of such insurer, is in full force and effect, and all premiums due thereunder have been paid. Seller, and if applicable, Seller's correspondent, has not engaged in any act or omission, and Seller has no knowledge of an act or omission by or on behalf of the Mortgagor of any other person, which act or omission would impair the coverage or validity of any such policy. The Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain such PMI Policy and to pay all premiums and charges in connection therewith. The Mortgage interest rate for the Mortgage Loan is net of any such insurance premiums.

17. **Title Insurance.** Unless otherwise indicated in this Seller's Guide, the Mortgage Loan is covered by either (i) an attorney's opinion of title and abstract of title, or (ii) an ALTA lender's title insurance policy or other generally acceptable form of policy of

## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

insurance acceptable to FNMA or FHLMC or (iii) Lien Search if Cooperative Loan, issued by a title insurer acceptable to FNMA or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the appropriate priority lien of the Mortgage in the original principal amount of the Mortgage Loan (or to the extent that a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage interest rate and monthly payment, subject only to the exceptions contained in clauses (a), (b), (c) and (d) of paragraph (11) of this *Section 703*. Where required by state law or regulations, the Mortgagor has been given the opportunity to choose the carrier of the required title insurance. Additionally, such Title Policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interests therein. Seller (or Seller's correspondent, as the case may be) is the sole insured of the Title Policy, and such Title Policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated herein and in the Loan Purchase Agreement. No claims have been made under such Title Policy, the accuracy of any attorney's opinion of title has not been disputed, and no prior holder of the Mortgage, including Seller, has done, by act or omission, anything that would impair the coverage of such Title Policy or the accuracy of such attorney's opinion of title including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person and no such unlawful item has been received, retained or realized by the Seller. The attorney's opinion of title, if applicable, is in a form and substance acceptable to mortgage lending institutions making mortgage loans in reliance upon an attorney's opinion of title in the state in which the Mortgaged Property is located.-

For any Mortgage Loan not requiring Title Insurance in accordance with this Seller's Guide, the Seller has obtained, examined and considered the matters disclosed in a title report for the Mortgaged Property meeting the requirements of the Seller's Guide (the "Title Report"). The Title Report was prepared and issued by a title insurer acceptable to FNMA, FHLMC or Purchaser and qualified to do business in the jurisdiction where the Mortgaged Property is located. The Seller does not have actual knowledge of any material inaccuracy in the Title Report or of any lien, claim or encumbrance affecting the Mortgaged Property that is not disclosed by the Title Report (other than the lien of the Mortgage). The Seller's examination of the Title Report indicates that the Mortgage is a valid and perfected lien on the Mortgaged Property, is in the position identified by Seller and in accordance with the appropriate Program Profile, and is in the original principal amount of the Mortgage Loan (or to the extent that a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), subject only to the exceptions contained in clauses (a), (b), (c) and (d) of paragraph (11) of this *Section 703*.

18. **No Defaults.** There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period,

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration.

19. **No Mechanic's Lien.**  There is no mechanic's or similar lien or claim that has been filed for work, labor or material (and no rights are outstanding that are under applicable law could give rise to such a lien or claim), affecting the related Mortgaged Property, which is or may be a lien prior to, or equal with, the lien of the related Mortgage.

20. **Location of Improvements; No Encroachments.**  All improvements which are considered in determining the appraised value of the Mortgaged Property at origination lie wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property (except such encroachments as have been affirmatively insured over by the title insurer).  No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulations.

21. **Origination; Payment Terms.**  The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan.  The related Note is payable on the first day of each month in self-amortizing equal monthly installments of principal and interest, with interest calculated and payable in arrears, providing for full amortization or a balloon payment by maturity, over an original term of not more than thirty (30) years with the exception of interest-only Mortgage Loans outlined in the applicable product descriptions for which each interest-only Mortgage Loan is subject to an initial period of interest-only payments.  There is no negative amortization.  Further, for each Adjustable-Rate Mortgage Loan, effective with the first payment due after each related Interest Rate Change Date, the monthly payment for each Adjustable-Rate Mortgage Loan will be adjusted to an amount that will amortize fully the unpaid principal balance of the Mortgage Loan over its remaining term and pay interest at the interest rate so adjusted, with the exception of interest-only Adjustable-Rate Mortgage Loans outlined in the applicable product descriptions for which each interest-only Mortgage Loan is subject to an initial period of interest-only payments.

22. **Customary Provisions.**  The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of Mortgage designated as a deed of trust, by trustee's sale; and (ii) otherwise, by non-judicial foreclosure, if applicable, and if not, by judicial foreclosure.  To the extent permissible under applicable law, any homestead or other exemption available to a Mortgagor, which exemption would interfere with the right to sell the Mortgaged Property at a trustee's sale or with the right to foreclose the Mortgage, has been waived by the Mortgagor or any other necessary party.  Upon default by Mortgagor on a Mortgage Loan and foreclosure

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

on, or trustee's sale of the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property.

23. **Documents.** The Mortgage Loan has been originated using the forms and loan documents expressly permitted or approved by Purchaser.

24. **Occupancy Certifications.** The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities. The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable.

25. **No Additional Collateral.** The Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage, the existence of which has previously been disclosed to, and approved by, Purchaser in writing.

26. **Deeds of Trust.** In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

27. **Acceptable Investment.** Seller represents that there is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor, or the Mortgagor's credit standing, that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

28. **Condominium Units.** As to each condominium unit located in a Condominium Project:

   a. The Condominium Project has been created and is existing in full compliance with the requirements of the condominium enabling statute of the jurisdiction in which the Condominium Project is located, and with other applicable laws;
   b. The condominium constituent documents contain customary and enforceable provision protecting the right of the mortgagee of each unit, as specified in the Seller's Guide;
   c. Not more than six months of regular common expense assessments for the Condominium Unit (and no other condominium assessments) will have priority over the lien of the Mortgage; all taxes, assessments and charges that may become liens prior to the Mortgage under local law relate only to the individual Condominium Unit and not to the Condominium Project as a whole; the

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Condominium Unit is not located in a jurisdiction that allows for more than six months of regular common expense assessments to have priority over the Mortgage;

d.  Any mortgagee who obtains title to a Condominium Unit pursuant to the remedies provided in the Mortgage or by foreclosure of the Mortgage will not be liable for any fees or charges related to the collection of unpaid assessments that accrued prior to the acquisition of title to the Condominium Unit by the mortgagee;

e.  The requisite percentage of the units in the Condominium Project specified in the Underwriting Guidelines have been sold and conveyed to bona fide purchasers who have Closed or who are legally obligated to Close; multiple purchases of Condominium Units by one owner were counted as one sale when counting the number of sales within a Condominium Project to determine if this sale requirement has been met; and

f.  Condominium dues or charges include an adequate reserve fund for maintenance, repairs or replacement of those common elements that must be replaced on a periodic basis, and are payable in regular installments rather than by special assessments.

29. **Transfer of Mortgage Loans.**  The Assignment of Mortgage from Seller to Purchaser (or Purchaser's designee) is in recordable form and is acceptable for recording or filing under the laws of the jurisdiction in which the Mortgaged Property is located.

30. **Due-on-Sale.**  Unless otherwise provided for in the Seller's Guide, the Mortgage Loan contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder.

31. **No Graduated Payments or Contingent Interest.**  Unless otherwise provided for in the Seller's Guide, the Mortgage Loan is not a graduated payment mortgage loan; and the Mortgage Loan does not have a shared appreciation or other feature providing for contingent interest or contingent principal.

32. **Mortgaged Property Undamaged; No Condemnation.**  The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado, or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended.  The Mortgaged Property is in good repair.  There are no condemnation proceedings by any federal, state or local authority pending or, to Seller's knowledge, threatened against the Mortgaged Property.

33. **Servicing Practices; Escrow Deposits.**  The origination and collection practices used with respect to the Mortgage Loan have been in accordance with Accepted Servicing Practices, and have been in all respects legal and proper.  Unless otherwise prohibited by applicable law or as otherwise set forth within this Seller's Guide, the mortgage documents permit the establishment and maintenance of an escrow account, an escrow account has been established in an amount sufficient to

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

pay for all taxes, governmental assessments, insurance premiums, leasehold payments, ground rents and other similar items as the same become due and payable, and all Escrow Payments have been collected in full compliance with state and federal law. With respect to escrow deposits and Escrow Payments, all such payments are in the possession of Seller and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or Escrow Payments or other charges or payments due Seller have been capitalized under the Mortgage or the Mortgage Note. All Mortgage Loans delivered for purchase shall contain the HUD required Initial Escrow Account Disclosure Statement. Any interest required to be paid pursuant to state and local law has been properly paid and credited. All interest rate adjustments have been made in compliance with state and federal law.

34. **No Other Hazards.** No hazardous or toxic materials or wastes, or products regulated by any law or ordinance, or asbestos or asbestos products or materials, or polychlorinated biphenyls or urea formaldehyde insulation material (collectively, "hazardous material"), is present on, in, at or under any Mortgaged Property such that: (a) the value of such Mortgaged Property is materially and adversely affected, or (b) under applicable federal, state or local law: (i) such hazardous material would be required to be eliminated before such property could be altered, renovated, demolished or transferred or, (ii) the presence of such hazardous material would subject the owner of such property, or the holder of a security interest therein, to liability for the cost of eliminating such hazardous material or the hazard created thereby. There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and to the best of the Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation containing a prerequisite to the use and enjoyment of said property.

35. **Supervision of Originator of Mortgage Loan.** The Mortgage Loan was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar institution which is supervised and examined by a Federal or State authority, or by a Mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

36. **Real Estate Valuations.** Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method meeting the requirements of the Seller's Guide. The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate. Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property

## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

or in any loan made on the security thereof. The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan.

37. **Bankruptcy or Insolvency.** To the best of Seller's knowledge (or Seller's correspondent's knowledge, if applicable) Mortgagor is not a debtor in any state or federal bankruptcy proceeding.

38. **Delivery of Mortgage Documents.** The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered for the Mortgage Loan by the Seller under this Seller's Guide have been or shall be delivered to Purchaser in accordance with the terms set forth in this Seller's Guide. The Seller is in possession of a complete, true and accurate Mortgage Loan file, except for such documents the originals of which have been delivered to Purchaser.

39. **Consolidation of Future Advances.** Any future advances made prior to the Purchase Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having the appropriate lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FNMA and FHLMC. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

40. **No Construction Loans.** No Mortgage Loan was made in connection with the construction or rehabilitation of a Mortgaged Property.

41. **No Denial of Insurance.** No action, inaction or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of or defense to coverage under any applicable pool insurance policy, special hazard insurance policy, PMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance, no commission, fee or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director or employee had a financial interest at the time of placement of such insurance.

42. **Mortgagor Acknowledgment.** The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans. The Seller shall maintain such statement in the Mortgage Loan File.

43. **Regarding the Mortgagor.** The Mortgagor is one or more natural persons and/or trustees for a **Land Trust (aka Illinois land trust), a trustee under an Inter Vivos Revocable Trust (living trust), or a trustee under a Blind Trust and such trust is in compliance with the guidelines for such trusts as outlined in the Seller's Guide including but not limited to the policies contained within the following forms:**

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

    a.  **Form 407 Inter Vivos Revocable Trust, Land Trust, Blind Trust – Trust Review**
    b.  **Form 407-LivT, Inter Vivos Revocable Trust – Closing Document Review**
    c.  **Form 407-LandT, Land Trust – Closing Document Review**
    d.  **Form 407-BT, Blind Trust – Closing Document Review**

44. **Soldiers' and Sailors' Relief Act.** The Mortgagor has not notified the Seller and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Soldiers' and Sailors' Civil Act of 1940.

45. **Prepayment Charges.** If the Mortgage Loan provides for any prepayment penalty or charge (a "Prepayment Charge") to be paid by the Mortgagor in connection with any prepayment, such Prepayment Charge is enforceable and is in compliance with all applicable laws, rules and regulations. If the Mortgage Loan provides for a Prepayment Charge, Seller warrants that only one Prepayment Charge has been contracted for between Seller and Mortgagor, the Prepayment Charge has been fully disclosed to Mortgagor and to Purchaser, and the Prepayment Charge complies with all requirements of the related Program Profile applicable to the Mortgage Loan. Any Prepayment Charge contracted for between Seller and Mortgagor that is not fully disclosed to Purchaser shall not be enforced by Seller, and Seller will be liable to Purchaser for any damages incurred by Purchaser as a result of Seller's failure to disclose the existence of any prepayment provision, rider or addendum and/or the unenforceability of any Prepayment Charge related to the Mortgage Loan.

46. **Cooperative Loan.** As to each Cooperative Loan:

    a.  Each Security Instrument is a valid, enforceable, and subsisting first security interest in the stock in the residential housing corporation and the Proprietary Lease that were pledged to secure the Cooperative Loan related thereto, and the related Cooperative Loan Property is free and clear of all encumbrances and liens having priority over the lien of the Security Instrument except for the lien of the residential housing corporation for amounts, if any, due under the Proprietary Lease. The cooperative housing corporation which is the owner of the Co-op Premises owns a good, marketable and insurable title to such premises free and clear of all liens or encumbrances not otherwise approved by Purchaser.
    b.  All cooperative maintenance fees affecting the Cooperative Loan Property which are due and owing have been paid.
    c.  Seller and the cooperative housing corporation have entered into a recognition agreement in a form satisfactory to Purchaser, which such agreement sets forth the specific rights of Seller and its successors (including Purchaser) and any successor servicer and the responsibilities of the cooperative housing corporation to Seller and its successors (including Purchaser) and any successor servicer.
    d.  The stock that is pledged as security for the Cooperative Loan is held by a Person as a tenant-stockholder (as that term is defined in Section 216 of the Internal Revenue Code) in a cooperative housing corporation (as that term is defined by Section 216 of the Internal Revenue Code).

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

    e.  No Borrower is in default under the related Proprietary Lease.  Seller has not received any notice to cure maintenance defaults.

    f.  Each Co-op Premises related to a Cooperative Loan Property is located in a cooperative project that is acceptable to Purchaser.  Each Cooperative Loan meets all of the eligibility requirements set forth in the Seller's Guide (including, without limitation, the Cooperative Loan Program Profile) for Cooperative Loans and Seller has or will promptly deliver to Purchaser each of the Cooperative Loan documents set forth in the Seller's Guide (including, without limitation, the Cooperative Loan Program Profile) for Cooperative Loans.

47. **Section 32 Mortgage Loans; Predatory Lending Laws.**  The Mortgage Loan is not a Section 32 Mortgage Loan nor is it a "high cost," "threshold," "covered" or "predatory" loan under any other applicable state, federal or local law; none of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies.

48. **High Cost Loan.**  Mortgaged Loan is not a High Cost Loan as defined by the appropriate Program Profile.

## 704   EVENTS OF DEFAULT

Each of the following shall constitute an Event of Default on the part of Seller under this Seller's Guide and under the Loan Purchase Agreement:

1.  Any breach of any of the representations, warranties or covenants set forth in this Seller's Guide or the Loan Purchase Agreement, including, without limitation, the Eligibility Standards and the provisions of Section 7 hereof; or the failure of Seller to perform any of its obligations under this Seller's Guide or the Loan Purchase Agreement; or

2.  The occurrence of an act of insolvency or bankruptcy concerning Seller, including, without limitation: (i) a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against Seller; or (ii) Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings of or relating to Seller, or of or relating to all or substantially all of its property or (iii) Seller shall admit in writing its inability to pay its debts generally as they become due, or Seller files a petition to take advantage of any applicable insolvency or reorganization statue, makes an assignment for the benefit of its creditors, or voluntarily suspends payment of its obligations; or

3.  Seller fails to meet any capital, leverage or other financial standard imposed by any laws or applicable regulatory authority, or in Purchaser's sole discretion, any material adverse change occurs in the financial condition of the Seller, or Seller fails to meet any net worth or ownership requirements as may be set forth in this Seller's Guide; or

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

4. Any Guarantor of Seller's obligations defaults under the terms of the Guaranty Agreement (including, without limitation, any default by Guarantor in maintaining any minimum Tangible Net Worth required under, and as defined in, such Guaranty Agreement), or becomes insolvent or bankruptcy, or a material adverse change occurs in the financial condition of such Guarantor; or Guarantor fails to meet any capital, leverage or other financial standard imposed by any applicable regulatory authority; or

5. Seller defaults under the terms of any other agreement to which Seller and Purchaser are parties.

## 705    RIGHT TO DEMAND REASONABLE ASSURANCES

If, at any time during the term of the Loan Purchase Agreement, Purchaser has reason to believe that Seller is not conducting its business in accordance with: (i) all applicable statutes, regulations, rules and notices of federal, state or local government agencies or instrumentalities; or (ii) all applicable requirements of Purchaser, as set forth in this Seller's Guide or the Loan Purchase Agreement, then, in either case, Purchaser shall have the right to demand, pursuant to written notice from Purchaser to Seller, reasonable assurances from Seller that such a belief is in fact unfounded, and any failure of Seller to provide such reasonable assurances within a time frame specified in such written notices shall itself constitute an Event of Default hereunder; provided, however, that, notwithstanding anything set forth in this Seller's Guide or the Loan Purchase Agreement to the contrary, and so long as no other Event of Default hereunder has occurred and is continuing, Purchaser shall only be entitled to exercise such remedies hereunder (with respect to an Event of Default under this Section) as may be necessary or appropriate for Purchaser to insulate itself from any potential harm or loss relating to or caused by the facts or circumstances giving rise to such Event of Default. Nothing in this Section 7 shall be deemed or construed to limit, waive or impair any of Purchaser's rights or remedies with respect to any Event of Default under any other Section of this Seller's Guide.

## 706    ADDITIONAL REMEDIES; SETOFF

Upon the occurrence of any Event of Default, without affecting any repurchase obligation of Seller, and in addition to whatever rights Purchaser may have under the Seller's Guide, Loan Purchase Agreement or at law to damages or in equity, including, without limitation, injunctive relief and specific performance, Purchaser, by notice in writing to Seller, may immediately suspend all Registrations and Commitments and refuse to fund any or all Mortgage Loans, pending the cure, to Purchaser's satisfaction if such Event of Default is, in Purchaser's judgment, susceptible to cure within thirty (30) calendar days after the date of such notice of an Event of Default; if any such Event of Default is not cured to Purchaser's satisfaction within such thirty (30) day period, Purchaser may, by written notice to Seller, immediately terminate any and all duties and obligations of Purchaser under the Loan Purchase Agreement and this Seller's Guide. Notwithstanding the foregoing, upon the occurrence of an Event of Default of the type set forth in *Section 704(2)* or *704(3),* any and all duties and obligations of Purchaser under the Loan Purchase Agreement and this Seller's Guide shall immediately and automatically terminate without notice to Seller or any opportunity to cure such defaults.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Upon the failure by Seller to perform any of its obligations under this Seller's Guide or the Loan Purchase Agreement, including without limitation the failure to pay any and all monies due Purchaser, in addition to all rights Purchaser may have under this Seller's Guide, the Loan Purchase Agreement or at law or in equity, Purchaser shall have the right to deduct any amount due to Purchaser from any amount due to Seller, whether under Section 601 or otherwise.

## 707    WAIVER OF DEFAULTS

Purchaser may waive any default by Seller in the performance of Seller's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by Purchaser in exercising or failure to exercise any right arising from such default affect or impair Purchaser's rights as to such default or any subsequent default.

## 708    TERMINATION WITHOUT CAUSE

In addition to the provisions set forth elsewhere herein or in the Loan Purchase Agreement for termination of this Seller's Guide and the Loan Purchase Agreement, this Seller's Guide and the Loan Purchase Agreement may be terminated without cause at any time by either party upon prior written notice of termination to the other party. The effective date of termination must be specified in such notice and must be at least thirty (30) days after the date such written notice is sent.

## 709    EFFECT OF TERMINATION

Any termination of the Loan Purchase Agreement shall not affect Seller's obligations with respect to Mortgage Loans previously sold or delivered to Purchaser prior to the effective date of such termination. Provided that termination is without cause, as provided in the immediately preceding section and provided that no Event of Default on the part of Seller has occurred, termination of the Loan Purchase Agreement by Purchaser shall not apply to any Mortgage Loans that have been Registered with Purchaser by Seller before the effective date of such termination notice. If Purchaser terminates the Loan Purchase Agreement due to an Event of Default, Purchaser may refuse to Register or Fund any of all Mortgage Loans after the effective date of termination.

## 710    REPURCHASE OBLIGATION

In the event of a breach of any of the representations, warranties or covenants contained in *Section 700* through *710* herein, which breach materially and adversely affects the value of the Mortgage Loans or the interest of Purchaser, or materially and adversely affects the interest of Purchaser in the related Mortgage Loan, and unless Purchaser determines that such breach has been cured, or if a loan becomes an Early Payment Default in accordance with *Section 715* herein, Seller shall, at Purchaser's option, repurchase the related Mortgage Loan (in the case of a breach of the representations, warranties or covenants contained in *Section 703* hereof or an Early Payment Default), or all Mortgage Loans (in the case of a breach of any of the representations, warranties or covenants contained in *Section 702* hereof), at the Repurchase Price. Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

breach. Seller must notify Purchaser immediately upon Seller's knowledge of any breach of any representation, warranty or covenant.

Seller agrees to pay any and all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with any such repurchase, including, without limitation, Purchaser's reasonable attorney's fees.

Any such repurchase shall be accomplished by wire transfer from Seller to Purchaser of immediately available funds. Upon receipt by Purchaser of the Repurchase Price, Purchaser shall release to Seller the related Mortgage Loan Files and shall execute and deliver to Seller such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in Seller, or its designee, title to such repurchased Mortgage Loans. Seller shall assume the cost of recordation of assignments and other costs of transfer of any repurchased Mortgage Loans.

Notwithstanding any other provision of the Seller's Guide or Loan Purchase Agreement to the contrary, with respect to each Mortgage Loan that is the subject of any breach of one or more representations, warranties or covenants specified in *Section 702* or *703* hereof, if Purchaser (or Purchaser's agent or affiliate, or any subsequent owner of the Mortgage Loan or such owner's agent or affiliate) has acquired title to the related Mortgaged Property through foreclosure, deed-in-lieu of foreclosure, abandonment or reclamation from bankruptcy of the defaulted Mortgage Loan, then, within thirty (30) days after Purchaser's demand therefor, Seller shall, at Purchaser's option: (i) purchase the Mortgaged Property from Purchaser at a purchase price equal to the Repurchase Price; or (ii) if Purchaser has sold or otherwise disposed of the Mortgaged Property, indemnify Purchaser as specified in *Section 711* hereof. If Purchaser determines, for any reason, not to acquire title to the Mortgaged Property relating to the defaulted Mortgage Loan, Seller will nonetheless remain responsible to indemnify Purchaser, pursuant to *Section 711* hereof, with respect to any breach of *Section 702* or *703* hereof.

All of Purchaser's remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of (i) the dates of Purchaser's discovery and notice to Seller of the breach and Purchaser's demand for any remedy and (ii) any limitation or qualification of a representation or warranty as being made "to Seller's knowledge" or "to the best of Seller's knowledge" or any similar qualification relating to the knowledge of Seller. Notwithstanding any other provision of the Seller's Guide or Loan Purchase Agreement to the contrary, Seller shall remain liable for all remedies hereunder, even if Purchaser discovers a breach after the Mortgage Loan is liquidated in foreclosure.

## 711    INDEMNIFICATION AND THIRD PARTY CLAIMS

In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses

Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation set forth above. It is understood and agreed that any subsequent holder of any Note acquired hereunder by Purchaser shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. The indemnification obligations of Seller hereunder shall survive the termination of this Seller's Guide and the related Loan Purchase Agreement.

The Seller immediately shall notify the Purchaser if a claim is made by a third party with respect to this Seller's Guide, the Loan Purchase Agreement or the Mortgage Loans, assume (with the prior written consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim. The Purchaser promptly shall reimburse the Seller for all amounts advanced by it pursuant to the preceding sentence except when the claim is in any way related to the Seller's indemnification with respect to a breach by the Seller of any representation or warranty, or the failure of the Seller with respect to any of the Seller's obligations under this Seller's Guide or the Loan Purchase Agreement.

## 712    SURVIVAL OF REMEDIES

It is understood and agreed that Purchaser's remedies for breach of the representations, warranties or covenants set forth herein and/or in the Loan Purchase Agreement shall survive the sale and delivery of the related Mortgage Loan to Purchaser and Funding of the related Purchase Price by Purchaser, and will continue in full force and effect, notwithstanding any termination of this Seller's Guide and the related Loan Purchase Agreement, or any restrictive or qualified endorsement on any Note or Assignment of Mortgage or loan approval or other examination of or failure to examine any related Mortgage Loan File by Purchaser.

## 713    MISCELLANEOUS

### 713.1    GOVERNING LAW

The Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws.

### 713.2    SEVERABILITY OF PROVISIONS

If any one or more of the covenants, agreements, provisions or terms of the Loan Purchase Agreement or this Seller's Guide shall be held invalid for any reason whatsoever, then any such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions and terms of the Loan Purchase Agreement or this Seller's Guide and shall in no way affect the validity or

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

enforceability of the other provisions of the Loan Purchase Agreement of this Seller's Guide.

### 713.3    ASSIGNMENT

Purchaser shall have the right to assign its rights and duties under the Loan Purchase Agreement and this Seller's Guide to any party without the consent of Seller. Purchaser shall notify Seller in writing of any such assignment. Seller shall have no right to assign its rights or duties under the Loan Purchase Agreement or this Seller's Guide without Purchaser's prior written consent. Purchaser also may assign separately to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide or Loan Purchase Agreement, along with any or all of Purchaser's remedies available against the Seller for Seller's breach of any representation, warranty or covenant hereunder, including, without limitation, the repurchase and indemnification remedies. Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies.

### 713.4    GOVERNING CONTRACT

In the case of any inconsistency between this Seller's Guide and the Loan Purchase Agreement, the terms of the Loan Purchase Agreement shall control. In the event of any conflict between the substantive provisions of the Underwriting Guidelines and the other substantive provisions of this Seller's Guide, such other provisions of the Seller's Guide shall control.

### 713.5    ENTIRE AGREEMENT; NO WAIVER

This Seller's Guide, the Loan Purchase Agreement, and/or the exhibits hereto and thereto contain the final and entire agreement between Purchaser and Seller with respect to the purchase and sale of the Mortgage Loans, and are intended to be an integration of all prior negotiations and understandings. No waiver of any of the provisions of this Seller's Guide or Loan Purchase Agreement shall be valid unless the same is in writing and is signed by the party against which such waiver is sought to be enforced. Delay by Purchaser in exercising any right or remedy under this Seller's Guide, under the Loan Purchase Agreement, or otherwise provided by law shall not operate as a waiver or preclude the later exercise of that right or remedy.

### 713.6    NO PARTNERSHIP

Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto. At no time shall Seller represent that it is acting as an agent for or on behalf of Purchaser. At all times Seller shall act as an independent contractor.

### 713.7    CONFIDENTIALITY

As a result of its relationship with Purchaser and access to the Loan Purchase Agreement, Seller will learn or have access to various trade secrets, confidential and proprietary methods, techniques, processes, applications, approaches and other information in various forms, which such information is used or useful in the conduct of Purchaser's business, including its origination, purchase, sale and servicing of mortgage products, collectively referred to as "Confidential Information". Seller acknowledges that such Confidential Information is the exclusive property of Purchaser. Seller shall not, at

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

any time, regardless of if, when and how its relationship with Purchaser may terminate, directly or indirectly use, disclose, publish, reveal, copy, disseminate or otherwise make available such Confidential Information, other than as expressly set forth herein or in the Loan Purchase Agreement.

713.8    **NON-EXCLUSIVE RELATIONSHIP**

Notwithstanding anything set forth herein or elsewhere to the contrary, Seller acknowledges, understand and agrees that its relationship with Purchaser is on a non-exclusive basis and that Purchaser may, in its discretion, at any time or from time to time, and without any liability or obligation to Seller: (i) contract with, designate, authorize, constitute or appoint one or more entities other than Seller to originate, solicit, process, underwrite, close, fund, bill, sell and/or invest in loans of any type for funding by or sale to, or as agent for and on behalf of, Purchaser, all of which activity may occur in all or any portion of the geographic territory in which Seller originates loans; and/or (ii) either directly or indirectly compete with Seller, either for Purchaser's own account or as agent for and on behalf of another, in the solicitation, processing, underwriting, closing, funding, billing, selling of and/or investing in loans in such geographic territory.

## 714    SOLICITATION FOR REFINANCING

During the remaining term of any Mortgage Loan purchased by Purchaser, neither Seller, nor any affiliate of Seller shall take any action personally, by telephone, mail or otherwise, to solicit the prepayment of Mortgage Loans, in whole or in part, without the prior written consent and approval of Purchaser. It is understood and agreed that promotions undertaken by the Seller or any Affiliate of Seller which are directed to the general public at large, including mass mailings based on commercially acquired mailing lists, newspaper, radio and television advertisements, shall not constitute solicitation under this Section.

## 715    EARLY PAYMENT DEFAULT

Early Payment Default loans are subject to repurchase by the Seller at the Repurchase Price in accordance with *Section 710* herein.

For Mortgage Loans prior-approved by Purchaser (i.e as to which Purchaser underwrote the loan prior to Purchase), a mortgage loan has an early payment default if the first monthly payment due Purchaser is not made within thirty (30) days of its due date.

For Mortgage Loans delivered pursuant to Seller's Delegated Underwriting Authority, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

Delegated Underwriting Authority applies to all loans *eligible* for a delegated underwriting decision by Seller, whether or not Purchaser elects to underwrite the loan prior to Purchase.

For Mortgage Loans delivered pursuant to Bulk Transactions, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

### 716    EARLY PAYOFF

If a Mortgage Loan is paid in full within three (3) months of the Purchase Date, Seller will reimburse Purchaser that portion of the Purchase Price in excess of par multiplied by the Unpaid Principal Balance as of the Date of the payment in full and net of potential prepayment charges on loans that contain a valid prepayment penalty provision in effect during the Early Payoff Period.

### 717    DELEGATED UNDERWRITING

Unless otherwise indicated within this Seller's Guide, Sellers must have written authorization from Purchaser to utilize Delegated Underwriting Authority. Upon authorization to utilize delegated authority, Seller represents and warrants as of the Purchase Date of each Mortgage Loan delivered pursuant to Seller's Delegated Underwriting Authority, in addition to the other representations and warranties contained within this Section 7, the following:

1.  All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

2.  Seller shall not represent to any entity, person or party that it is acting as an agent for, or on behalf of, Purchaser. Nothing in this Seller's Guide shall be construed to create any agency, partnership or joint venture between Seller and Purchaser for any purpose.

3.  Seller agrees to perform all underwriting functions with the same care and diligence as an experienced, prudent underwriter performing such duties in the industry with respect to similar mortgage loan products and, in any event, with no less care and diligence than if it were underwriting Mortgage Loans for its own account.

4.  Seller agrees that it shall maintain an experienced, qualified and approved underwriting staff and shall cause such staff to perform all underwriting functions to be performed by Seller in compliance with the requirements of the Seller's Guide and all modifications thereto. Seller shall cause the actual underwriting decisions and evaluations made during the underwriting process to be done only by employees of Seller who are qualified to make, and have substantial experience making, such decisions. All Mortgage Loans delivered to Purchaser pursuant to Purchaser's Delegated Underwriting Authority have been underwritten by Seller directly and not by any third party underwriter, unless such third party underwriter has been specifically approved in writing by Purchaser.

5.  It is Seller's responsibility to insure that (i) Seller and its underwriters at all times maintain and use complete, up-to-date versions of the Seller's Guide, including all updates, bulletins, announcements, memorandums, and product descriptions and (ii) all of its employees performing underwriting duties and functions remain informed and knowledgeable regarding such guidelines and all requirements of the Seller's Guide.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

6.  Seller shall be responsible for approving only marketable Mortgage Loans and shall document its underwriting of each and every loan in a manner that justifies and supports such approval and marketability on the secondary mortgage market.

7.  Seller must include in each submission all underwriting worksheets and written comments from the underwriter in regard to the final loan decision in addition to any forms or documentation required by the Seller's Guide.

8.  Seller further agrees to maintain sufficient quality control guidelines to insure that all of the above requirements are carried forth. Seller agrees to provide Purchaser full access to its quality control procedures and to keep Purchaser apprised as to such procedures and policies.

9.  Purchaser shall have the right to perform pre-purchase and post-purchase reviews of all Mortgage Loans and to request any additional documentation to ensure compliance with Purchaser's guidelines. Purchaser reserves the right to refuse purchase or to require repurchase of Mortgage Loans that do not meet Purchaser's guidelines, determined at Purchaser's sole discretion.

10. Seller's delegated authority may be terminated upon written notice. Termination shall be effective as to all Mortgage Loans submitted to Purchaser on or after such notice of termination.

11. Seller represents and warrants that any Mortgage Loan submitted under this Delegated Underwriting Authority was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company, or similar institution which is supervised and examined by a Federal or State authority, or by a Mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

Seller acknowledges that failure of Purchaser to review or discover any deficiency or error in the Mortgage Loan at time of Purchase by Purchaser will neither release Seller from its obligations to provide any required documentation or correct any errors, nor will it prevent or inhibit Purchaser's exercise of any of its remedies.

## 718   AUTOMATED UNDERWRITING
All Loans submitted by Seller for Purchase by Purchaser that have been underwritten through Purchaser approved automated underwriting system shall meet the requirements specified within the Seller's Guide. Further, Seller represents and warrants that:

1.  Seller is registered with the provider of the automated underwriting system and is a valid licensee of the automated underwriting system;

2.  The Mortgage Loan received a recommendation/disposition from the automated underwriting system that is acceptable to Purchaser;

3.  Any verification messages or approval conditions specified in the findings of the automated underwriting system were satisfactorily resolved before the Mortgage Loan is closed;

## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

4. The terms of the closed loan and the underwriting information in the Mortgage File both match the data on which the automated underwriting system's recommendations and findings were based.

Seller shall be deemed to make the following representation and warranty to Purchaser as of the related Funding Date. All data pertaining to the Mortgage Loan submitted to the applicable automated underwriting system was true, complete and accurate as of the date when entered and as of the closing date of the Mortgage Loan; verification of all such data is included in the Mortgage Loan File delivered to Purchaser and such verification complies with the requirements of the Seller's Guide; Seller has taken all appropriate action to satisfactorily resolve and comply with any verification messages/approval conditions produced by the automated underwriting system prior to closing the Mortgage Loan and documentation of such resolution is provided in the delivered loan file. This representation and warranty is made in addition to, and not in lieu of, any or all of the other representations and warranties contained elsewhere in the Seller's Guide or Loan Purchase Agreement.

Seller acknowledges that (i) in the event of a discrepancy between the data validated by Purchaser's review of the file and the data entered in the automated underwriting system by Seller, the findings of the automated underwriting system shall be considered null and void and Purchaser shall have no obligation to purchase/fund the loan, and (ii) failure of Purchaser to review or discover any deficiency or error in the Mortgage Loans(s) at the time of purchase by Purchaser will neither release Seller from its obligations to provide any required documentation or correct any errors, nor will it prevent or inhibit Purchaser's exercise of any of its remedies hereunder, including Mortgage Loan Repurchase in accordance with *Section 710* herein.