Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555-scc

4   Adv. Case No. 08-01420-scc

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   LEHMAN BROTHERS HOLDINGS, INC.,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13   LEHMAN BROTHERS, INC.

14

15   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16                U.S. Bankruptcy Court

17                One Bowling Green

18                New York, New York

19

20                January 15, 2015

21                10:07 AM

22

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

Page 2

1   Hearing re:  Doc #24762 Omnibus Application of (I)

2   Individual Members of Official Committee of Unsecured

3   Creditors and (II) Indenture Trustees Pursuant to Section

4   1129(a)(4), or, Alternatively, Sections 503(b)(3)(D) and

5   503(b)(4) of Bankruptcy Code for Payment of Fees and

6   Reimbursement of Expense

7

8   Hearing re:  Doc #47545 Motion for Stay Pending Appeal filed

9   by Andrew R. Goldenberg (related document(s) 46853)

10

11   Doc #47595 Motion to Compel Enforcement of Plan and

12   Confirmation Order to Restore Plan Reserves of Compensation

13   Claimants Named in the Motion filed by Lisa M. Solomon on

14   behalf of Madelyn Antoncic

15

16   Hearing re:  Doc #41664 Four Hundred Forty-Ninth Omnibus

17   Objection to Claims as to Claim Number 17889

18

19   Hearing re:  Doc #46641 Motion to Consolidate for Trial and

20   to Consolidate Contested Matter with Adversary Proceeding

21   and for Related Relief filed by Bruce E. Clark on behalf of

22   Giants Stadium, LLC

23

24   Hearing re:  Adversary proceeding:  08-01420-scc Lehman

25   Brothers, Inc. Doc #10352 Motion to Vacate the Order

1    Granting the Trustee's Sixty-Eighth Omnibus Objection to

2    General Creditor Claims filed by Edward N. Gewirtz on behalf

3    of Maria Eugenia Mendez

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Nicole Yawn

Page 4

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES, L.L.P.

3        Attorneys for LBHI

4        1300 Eye Street, NW

5        Washington DC 20005

6

7    BY:   RALPH I. MILLER, ESQ.

8        DORON P. KENTER, ESQ.

9        SUNNY SINGH, ESQ.

10        RICHARD W. SLACK, ESQ.

11

12    STAMELL & SCHAGER, LLP

13        Attorney for Moving Claimants in Agenda Item II

14        One Liberty Plaza

15        35th Floor

16        New York, NY 10006

17

18    BY:   RICHARD SCHAGER, ESQ.

19

20    SULLIVAN & CROMWELL, LLP

21        125 Broad Street

22        New York, NY 10004

23

24    BY:   MATTHEW A. SCHWARTZ, ESQ.

25

Page 5

1    HUGHES HUBBARD

2         Attorneys for SIPA Trustee

3         One Battery Park Plaza

4         New York, NY 10004

5

6    BY:  JEFFREY S. MARGOLIN, ESQ.

7         ERIN E. DIERS, ESQ.

8

9    SULLIVAN & WORCESTER

10        Attorney for U.S. Bank National Association as Trustee

11        One Post Office Square

12        Boston, MA 02109

13

14   BY:  JEANNE P. DARCEY, ESQ.

15

16   BRONSTEIN, GEWIRTZ & GROSSMAN, LLC

17        Attorney for Maria Mendez

18        60 East 42nd Street

19        Suite 4600

20        New York, NY 10165

21

22   BY:  YITZHAK GREENBERG, ESQ.

23

24

25

Page 6

1   UNITED STATES DEPARTMENT OF JUSTICE

2   OFFICE OF THE UNITED STATES TRUSTEE

3        201 Verick Street

4        Suite 1006

5        New York, NY 10014

6

7   BY:  ANDREA B. SCHWARTZ, ESQ.

8        SUSAN D. GOLDEN, ESQ.

9

10  MORGAN, LEWIS & BACKIUS, LLP

11       Attorney for UBS Financial Services, Inc.

12       399 Park Avenue

13       New York, NY 10022

14

15  BY:  JOSHUA DORCHAK, ESQ.

16

17  ALSO APPEARING:

18  SHERRY NILLMAN

19

20

21

22

23

24

25

Page 7

```
 1                    P R O C E E D I N G S

 2             THE COURT:  All right.  Let's go to the agenda.

 3             Good morning, Ms. Golden.

 4             MS. GOLDEN:  No, I'm just standing because you're

 5   going to go and call the next case.

 6             THE COURT:  Do I need Ms. Schwartz to come back

 7   in?

 8             UNIDENTIFIED SPEAKER:  No, I'll do the record.

 9             THE COURT:  Okay.  All right.  So the first item

10   on the agenda is the individual members of the official

11   committee.

12             MS. GOLDEN:  Thank you, Your Honor.

13             THE COURT:  Good morning.

14             Thanks.

15             MS. DARCEY:  Good morning, Your Honor.

16             THE COURT:  Good morning.

17             MS. DARCEY:  Jeanne Darcey, of Sullivan &

18   Worcester, here today on the scheduling order related to the

19   remand proceedings --

20             THE COURT:  Okay.  All right.

21             MS. DARCEY:  -- on the omnibus application of the

22   UCC members.

23             THE COURT:  Okay.  Thank you.  Are you speaking on

24   behalf of this entire group?

25             UNIDENTIFIED SPEAKER:  She is, Your Honor.
```

Page 8

```
 1              THE COURT:  Okay.  Great.

 2              Ms. Schwartz?

 3              MS. SCHWARTZ:  Good morning, Your Honor.

 4              MS. DARCEY:  I don't know why I'm the chosen one.

 5              THE COURT:  You're the lucky one.

 6              MS. SCHWARTZ:  Good morning, Your Honor.  Andrea

 7      Schwartz and Susan Golden, for the U.S. Trustee.

 8              THE COURT:  Okay.  Why don't you take a seat and

 9      let's talk?  I had read the submissions, and the two letters

10      are really not speaking to me in terms of what the dispute

11      really is.  And I went back and I reviewed the transcript

12      about what we talked about last time, and I still think that

13      there's not a meeting of the minds with respect to how this

14      is going to proceed.

15              So why don't I say out loud the way I think this

16      should go, and you each can tell me how that comports with

17      or doesn't comport with your view of it?  So way back when,

18      there was an application for payment of these fees under a

19      plan or, in the alternative, as a substantial contribution

20      claim, right?

21              UNIDENTIFIED SPEAKER:  Uh-huh.

22              THE COURT:  And it got approved under the plan

23      without there being a showing that there was a substantial

24      contribution, right?

25              MS. DARCEY:  Yes.
```

Page 9

1                THE COURT:  Okay.

2                MS. DARCEY:  Yes.

3                THE COURT:  And then, it went up on appeal, and

4    Judge Sullivan said, as a matter of law, can't do it under

5    the plan, has to be a substantial contribution claim.

6    Disagreed with the U.S. Trustee's position that

7    categorically, an individual committee member cannot put

8    forward a substantial contribution claim, right?  So that's

9    the history.

10               So now, we revert to the original application,

11   which asked for the fees as under a substantial contribution

12   standard, right?

13               MS. DARCEY:  Yes, it did, in the alternative.

14               THE COURT:  In the alternative, but there's a

15   document that exists that, in essence, constitutes a

16   substantial contribution application, right?

17               MS. DARCEY:  That is correct.

18               THE COURT:  Okay.  So, if the history otherwise

19   didn't exist, what would happen next is the U.S. Trustee

20   would object, right?  Okay.  So has the U.S. Trustee

21   objected in a document?

22               MS. SCHWARTZ:  Yes, Your Honor, we did object in a

23   document.  However, that document was prior to the

24   subsequent decision and additional law that came down from

25   Judge Sullivan.

Page 10

1          THE COURT:  No, but I understand, but have you

2    objected -- let's put aside the --

3          MS. SCHWARTZ:  The answer is yes, Your Honor.

4          THE COURT:  So you've objected in the sense of,

5    number one, you can't do it under a plan, but that's water

6    under the bridge, and, number two, you didn't make a

7    substantial contribution?

8          MS. SCHWARTZ:  Correct, and Judge Peck did not

9    have a hearing on the alternative --

10         THE COURT:  Right.

11         MS. SCHWARTZ:  -- form for a claim.

12         THE COURT:  Okay.  So issue is joined on the issue

13   of whether or not, as a matter of fact, the individual

14   members made a substantial contribution.

15         MS. SCHWARTZ:  That's correct.

16         THE COURT:  They say they've put forth a motion

17   saying we did, and you've objected and said they haven't.

18         MS. SCHWARTZ:  That's right.

19         THE COURT:  Right?  So the next thing we do is we

20   have a trial.

21         MS. SCHWARTZ:  Well, actually, Your Honor, this

22   may be where we can kind of explain to the Court where the

23   disagreement lies.  And, when we were last -- may I come to

24   the podium, Your Honor?

25         THE COURT:  Sure.

Page 11

1           MS. SCHWARTZ:  Okay.  Thank you.  Your Honor, when

2    we were last before the Court, we said to the Court that we

3    didn't -- it was our position that we had objected to the

4    substantial contribution claims, but they had not been --

5    that alternate form of relief was not -- it was never

6    litigated.  It was never argued.

7           THE COURT:  Right.

8           MS. SCHWARTZ:  It was really -- that whole

9    application was about the 1129(a)(4).  Just give me a sec,

10   if you will, Your Honor, because you're totally correct.

11          THE COURT:  I was not even preparing to interrupt

12   you.

13          MS. SCHWARTZ:  Oh, okay.

14          THE COURT:  For once.

15          MS. SCHWARTZ:  I'm very defensive.  Okay, but I'll

16   try to talk quickly.

17          So what we said to you, Your Honor, was okay, now

18   we have a decision from Judge Sullivan, and we said this is

19   the way we viewed it.  And Your Honor may not view it this

20   way.

21          We said okay, we're going to give you guys as much

22   time as you want to supplement your application for a

23   substantial contribution claim.  You can address what

24   Judge Sullivan said, whatever you want to put your facts in,

25   and then, we will file our supplement to our objection.

Page 12

1                    THE COURT:  Did you say this to me or to them?

2                    MS. SCHWARTZ:  We said it to you, and we said it

3        to them.

4                    THE COURT:  Okay.

5                    MS. SCHWARTZ:  And we said it to them, obviously,

6        a number of times, but I think they're of the view, as

7        Your Honor was saying it, is that we already made our claim.

8        Go take discovery, and then, we'll have a trial.

9                    And what we would like to do is, one, supplement

10       our objection.  And we thought that they would supplement

11       their application so that, when we do discovery, we do it

12       one time.

13                   We're not doing discovery and then, they're going

14       to do a supplemental pretrial memo that's not just a memo of

15       the facts and the witnesses, et cetera, but it's going to be

16       law and any other facts they want to add to address what

17       Judge Sullivan said, et cetera.  They haven't done that on

18       the record before the Court.

19                   So normally -- I know you're furrowing your brow,

20       but normally, Your Honor, you know what the other side's

21       position is before you take discovery.  So here, in the

22       sequencing, our view was supplement your papers to the

23       extent that you want to.  I mean, we thought they would.

24                   They're like, "We're not supplementing out papers.

25       We don't want to supplement our papers," et cetera.  And

Page 13

1    this has gone on for a long period of time.

2            In their view, they've explained it to me.  It's

3    like a complaint.  You file a complaint.  You don't have to

4    put every fact that you're going to prove in the complaint.

5            THE COURT:  The complaint, right.

6            MS. SCHWARTZ:  You take discovery, and then, you

7    file briefs.  We thought it was a substantial ruling by the

8    District Court that those issues should be addressed first

9    and then, take discovery.

10           THE COURT:  But what aspect of Judge Sullivan's

11   ruling would cause a departure from the usual rule practice,

12   as you just described it of, you have a complaint, respond

13   to the complaint, you take discovery, you go to trial?  In a

14   normal case, there would be a 503(b) application, and then,

15   the next thing that would happen is the debtor would say we

16   object or we not object.  And then, there would be discovery

17   and a hearing.

18           What is it about -- you seem to be focusing on

19   something Judge Sullivan said.  And my reading of

20   Judge Sullivan's opinion was simply to say, "Uh-uh, you

21   can't do this under a plan.  That doesn't work."  Okay?  So

22   Judge Peck's ruling on that was reversed.

23           Secondly, U.S. Trustee, I hear you.  You say

24   categorically not now, not never.  I disagree with you.  And

25   it remains to be seen whether or not the individual

Page 14

1   committee members can make a showing under 503(b), and

2   that's all he said.

3              MS. SCHWARTZ:  Well, I think we read it a little

4   differently than that, Your Honor.

5              THE COURT:  Well, tell me.

6              MS. SCHWARTZ:  We agree that he said that

7   1129(a)(4) flat out no good.

8              THE COURT:  Right.

9              MS. SCHWARTZ:  You can't do it.  We also agree

10  that he said that there's no per se rule, right?

11             THE COURT:  Right.

12             MS. SCHWARTZ:  That a member that agrees to serve

13  on a committee couldn't make a claim under substantial

14  contribution.

15             THE COURT:  Right.

16             MS. SCHWARTZ:  I think that was what I took away

17  from his ruling.  So --

18             THE COURT:  And I totally agree with you.

19             MS. SCHWARTZ:  Okay.  Well, it's a little

20  different than the way you said it, because the way we read

21  his decision, he can't -- the creditors committee has to

22  make a showing of substantial contribution under the regular

23  factors that --

24             THE COURT:  Right.

25             MS. SCHWARTZ:  -- all courts find and recently,

Page 15

```
 1    Judge Lane set forth in AMR, including the various factors

 2    --

 3              THE COURT:  Right.

 4              MS. SCHWARTZ:  -- not duplication of efforts, all

 5    of that stuff that will be before Your Honor and that --

 6              THE COURT:  Right.

 7              MS. SCHWARTZ:  -- we will take discovery on,

 8    right?

 9              THE COURT:  Right.

10              MS. SCHWARTZ:  But they're not going to be able to

11    say well, we did this stuff in our role as a committee

12    member, but we could still seek a substantial contribution

13    claim.  The way we read his decision is that they have to

14    have done something separate from just being a member of the

15    creditors committee.

16              THE COURT:  But that's a matter of the application

17    of the standard, right?

18              MS. SCHWARTZ:  Okay.  But what I'm saying,

19    Your Honor, is --

20              THE COURT:  Which still doesn't -- yeah.

21              MS. SCHWARTZ:  Let me just finish this point, and

22    maybe this will be helpful.

23              THE COURT:  Uh-huh.

24              MS. SCHWARTZ:  The point is they haven't set forth

25    their -- they haven't addressed what they -- all they say is
```

Page 16

1    we have a substantial contribution claim, right?  They don't

2    say well, we have -- our substantial contribution claim is

3    for these things that we did outside of our role as being

4    members on the creditors committee.  That's not what the

5    application says.

6            At the time that it was filed -- let me just say

7    it to you this way.  The circumstances were very different

8    in the case.

9            THE COURT:  No, I completely understand that, but

10   I am still having a hard time getting past the notion that,

11   putting aside the history, a party in interest in a case, a

12   creditor, to use the words of the statute, could say I made

13   a substantial contribution to this case.  It could be a two-

14   page application.

15           MS. SCHWARTZ:  And, Your Honor, on a two-page

16   application, I don't think they'd meet their burden of proof

17   without --

18           THE COURT:  But it's --

19           MS. SCHWARTZ:  -- the evidence to have the Court

20   make the showing.

21           THE COURT:  Exactly.  You're exactly right, and

22   there is where we're not seeing eye-to-eye.

23           MS. SCHWARTZ:  But I think we are.

24           THE COURT:  It's evidence.  It's evidence.

25           MS. SCHWARTZ:  But I think we are seeing eye-to-

Page 17

1    eye, because our thought was -- and we could be wrong about

2    them.  We're not them, right?  But their argument on

3    substantial contribution, Your Honor, was -- and they could

4    take issue with how I say it.  It certainly wasn't the

5    dominant argument in their application to be paid.

6          It was certainly, Your Honor, the treatment that

7    it was given in their application and the interaction with

8    us and all the lawyers at the time and the plan, et cetera,

9    that was -- in our view, they didn't even think that they

10   would even get to that.  You know?

11         And that's why, in large measure, I think -- and

12   Judge Peck agreed with them.  That's why it was never

13   discussed or opened up at the time.  We're on the same page

14   there, right?

15         THE COURT:  Right, but --

16         MS. SCHWARTZ:  Where we think it would change is

17   that they would want to amplify or set forth in more full

18   measure, because now you have a ruling from the judge.

19         THE COURT:  But they don't want to.

20         MS. SCHWARTZ:  I know.  I know.  I'm with you on

21   that, Judge.  They don't want to.  We thought they did.

22   They don't want to.  We do.  We want to supplement our

23   objection.  We don't want to wait until pretrial memos to do

24   that, and they would not agree to that.

25         And so, --

Page 18

1            THE COURT:  Wait, wait, wait.  Time out.  If you

2    want to file a supplemental objection tomorrow, go ahead.

3            MS. SCHWARTZ:  Okay.  Okay, great.

4            THE COURT:  But I'm not going to require -- if the

5    movants believe that their extant application is a

6    sufficient starting point, --

7            MS. SCHWARTZ:  We agree.

8            THE COURT:  -- then, I'm not going to say to them

9    go back, you know, put a new caption on it, and add, you

10   know, more magic words, --

11           MS. SCHWARTZ:  That's fine.

12           THE COURT:  -- including not duplicative or

13   anything else.  I'm going to assume -- and we'll make it

14   explicit that they understand that they have the burden to

15   establish the entitlement to a substantial contribution

16   claim, as if the prior history did not occur.  That's the

17   world we're in now.

18           MS. SCHWARTZ:  Right.

19           THE COURT:  We're in the world of getting to a

20   trial on the merits of their entitlement to a substantial

21   contribution claim.

22           MS. SCHWARTZ:  That's fine.

23           THE COURT:  With the gloss that they happened to

24   also have been individual members of the committee.  Now,

25   that might speak to what you're going to -- what, in your

Page 19

1    mind, is the difficult task that they're facing to

2    demonstrate that what they did on a given day was a

3    substantial contribution as opposed to just showing up for

4    work as a committee member.

5            MS. SCHWARTZ:  Or their fiduciary -- all the

6    things they have to do as a committee member.

7            THE COURT:  Well, right.

8            MS. SCHWARTZ:  I mean, they have a lot of

9    responsibilities.

10           THE COURT:  Sure do.

11           MS. SCHWARTZ:  So that being said, --

12           THE COURT:  Right.

13           MS. SCHWARTZ:  So I think Your Honor understands

14   that, and I do, too.  We thought they would.  They don't.

15   It's fine.  We have no issue.  They don't want to do it.

16   That's up to them.  I totally agree with you.

17           THE COURT:  Okay.

18           MS. SCHWARTZ:  We'll file -- we provided in our

19   draft that we would file our supplement to our opposition

20   before the close of discovery.  So that would be within the

21   90-day period.  And that was one issue.

22           The second --

23           THE COURT:  Okay.  So let me ask you to pause for

24   a second and ask if there is any issue with that.

25           MS. SCHWARTZ:  Can I just say one thing before you

Page 20

1     move to that, Your Honor?

2               THE COURT:  Yeah.

3               MS. SCHWARTZ:  The concern that we had and we

4     still have is we don't want to do discovery twice.

5               THE COURT:  I agree with that.

6               MS. SCHWARTZ:  And I would think that the Court

7     would agree with it.  I would think that anyone that would

8     be looking toward the efficient, economical management of a

9     discovery process would want to do that.

10              So we were very concerned in the language that

11    they included in the order that would then, at the end of

12    discovery, permit them to file legal memorandums with

13    additional factual information and then -- and put a proviso

14    in well, that, if something else is in there, then you can

15    take discovery on that.  We don't want to do that.

16              THE COURT:  Okay.

17              MS. SCHWARTZ:  We do not want to do that.

18              THE COURT:  But again, we are -- I'm trying to fit

19    this into -- now, I don't think it's a square peg into a

20    round hole.  Okay?  I'm just trying to have this play out

21    the way it would in a normal case.

22              And, in a normal case, you would take discovery,

23    and then, subject to what we agree on, --

24              MS. SCHWARTZ:  Right.

25              THE COURT:  -- we would have direct testimony in

Page 21

1    the form of declarations.

2              MS. SCHWARTZ:  Or whatever Your Honor --

3              THE COURT:  Or whatever we decide.

4              MS. SCHWARTZ:  I think Your Honor said you wanted

5    live testimony.

6              THE COURT:  Right, I said I might want some live

7    testimony.  We can talk about that, but that there would be,

8    just like there is before confirmation, there's a

9    confirmation brief, and there's argument, and there, in the

10   declaration, would be, you know, I'm John Smith.  I was a

11   committee member, and here's what I did, and it's different

12   from what I did as a committee member, et cetera.  So --

13             MS. SCHWARTZ:  I don't have a problem with that,

14   Your Honor.

15             THE COURT:  So --

16             MS. SCHWARTZ:  The way they were forming the

17   language was that there was the possibility that they would

18   be adding new factual information at the time of this

19   pretrial memorandum.

20             THE COURT:  Well, but it is new factual

21   information, Ms. Schwartz, in the sense that that's

22   evidence.  That's --

23             MS. SCHWARTZ:  But we would --

24             THE COURT:  That's their proof.

25             MS. SCHWARTZ:  Well, first of all, Your Honor,

Page 22

1    when they make their claim and they submitted declarations,

2    they should have put in there evidence in terms of what

3    their claims were for.  They did submit -- and initially,

4    there were eight applicants, right?

5              THE COURT:  Right.

6              MS. SCHWARTZ:  They put in a brief that says

7    here's the law.

8              THE COURT:  Right.

9              MS. SCHWARTZ:  And they put in declarations of

10   eight affiants saying here are the facts that support our

11   substantial contribution claim, right?  They put that in.

12             THE COURT:  Okay.

13             MS. SCHWARTZ:  So, in other words, let's say we

14   objected and that was the issue that was being tried.  There

15   may have been discovery at that time, et cetera.  Fine, we

16   have those declarations, et cetera.  We know who to serve

17   deposition notices on, et cetera.

18             Yes, facts may be discovered as part of discovery,

19   but not somebody new that we didn't know about because, at

20   the time way back when when they filed their substantial

21   contribution claim, they only put in these eight

22   declarations and they really now see well, we think we need

23   this one and that one and that one.  So clearly, we would

24   need to know that.

25             THE COURT:  Well, okay, but you've just shifted

Page 23

1    the ground on me.  It's not -- we're not going to have a

2    game of gotcha.  Okay?

3              MS. SCHWARTZ:  That's exactly what we're trying to

4    prevent.

5              THE COURT:  But I don't think that they -- I mean,

6    I'll  let them speak for themselves, but I don't think that

7    that's what this is about.  I think, to me, this was about

8    reversing the order of a normal case as you have the run-up

9    to trial.

10             And nothing requires them at this point, pre-

11   discovery, to submit their evidence.  And the evidence, to

12   the extent that I say that it's going to be in the form of a

13   declaration, --

14             MS. SCHWARTZ:  Well, they already did submit

15   evidence.

16             THE COURT:  Well, but you're telling me --

17             MS. SCHWARTZ:  Well, let me say this.

18             THE COURT:  -- that --

19             MS. SCHWARTZ:  They already did submit

20   declarations.  They haven't been admitted into evidence in a

21   trial.

22             THE COURT:  Well, but what you're telling me is

23   that you're cutting off my right to say that, after -- that

24   was their opening salvo, right?  So now, we're on the track

25   to a trial, and what you're telling me is that I can't allow

Page 24

1    them to submit a declaration for the purpose of it being in

2    lieu of direct testimony.  That was not what was

3    contemplated by that initial submission.

4              Just like when you have a motion and you submit --

5              MS. SCHWARTZ:  I'm not saying -- you know, let me

6    clarify that, because that's not what I'm saying,

7    Your Honor.

8              We don't want to learn about new people that we --

9              THE COURT:  No, but we can deal with the new

10   people thing.  We can deal with the new people thing.

11             MS. SCHWARTZ:  Okay.

12             THE COURT:  I'm not at all down for new people and

13   then, we have to go out and do new discovery or that you get

14   caught --

15             MS. SCHWARTZ:  That's really -- to tell you the

16   truth, Your Honor, that's really --

17             THE COURT:  Which I hope you would, and I assume

18   that you do.

19             MS. SCHWARTZ:  What?

20             THE COURT:  Tell me the truth.

21             MS. SCHWARTZ:  Oh.  You know, that's a bad phrase.

22   I'm going to really try to strike that one.

23             THE COURT:  It is kind of a bad phrase, right?

24             MS. SCHWARTZ:  I agree.

25             THE COURT:  Or to be perfectly honest would be

Page 25

1    another one.

2            MS. SCHWARTZ:  Right.  Or let me be honest with

3    you.

4            THE COURT:  Right, right.

5            MS. SCHWARTZ:  I apologize, Your Honor.  I am

6    always truthful with you.

7            THE COURT:  I know you are.

8            MS. SCHWARTZ:  That was our concern.

9            THE COURT:  Let's take a pause --

10           MS. SCHWARTZ:  But I --

11           THE COURT:  -- and address that concern.

12           MS. SCHWARTZ:  Okay.

13           THE COURT:  Because I'm with you 100 percent.

14           MS. SCHWARTZ:  I just want to say, though, it is a

15   little different than the normal case, because we had a huge

16   appeal on it.  We had a decision by a District Court judge.

17           There were things that -- it's not exactly the

18   same.  And now that Your Honor says -- you know, we thought

19   we were being really -- well, we thought --

20           THE COURT:  And I --

21           MS. SCHWARTZ:  We thought we saw it in a

22   sequencing that was different than Your Honor.

23           THE COURT:  For what it's worth, I disagree with

24   you.  I think it's exactly the same.  I think it's I have

25   movants who are seeking a 503(b) substantial contribution

Page 26

1    claim.  The only difference is that they were committee

2    members, but that Judge Sullivan's ruling -- it's back with

3    me.

4              MS. SCHWARTZ:  Right.

5              THE COURT:  That means that you can't argue the

6    categorical point, because he's -- what I call the

7    categorical point, right?  I mean, I suppose you will argue

8    it, or it's preserved for a subsequent appeal.

9              MS. SCHWARTZ:  Yeah, and we will also put it in

10   our supplemental opposition.

11             THE COURT:  Sure.  Right.  But I'm bound by his

12   ruling on that.

13             MS. SCHWARTZ:  That's right.

14             THE COURT:  Right.  So I do think that, you know,

15   as unnormal as it feels, my approach to it is they have a

16   burden of proof.

17             MS. SCHWARTZ:  Yeah.

18             THE COURT:  And they have to carry the burden of

19   proof.

20             MS. SCHWARTZ:  My biggest concern, Your Honor, was

21   that we didn't get put in a position where we spent all this

22   time on discovery and then, we got new information and had

23   to do it again, et cetera.

24             THE COURT:  Okay.  Well, let's talk about the new

25   people thing.  Okay?

Page 27

1        MS. SCHWARTZ:  Okay.  Well, I don't know.  I don't

2    know.  Let them tell you.

3        THE COURT:  Okay.  I am going to -- as soon as you

4    sit down, I'm going to let them tell me.

5        MS. DARCEY:  Thank you, Your Honor.  I don't know

6    if I'll have more clarity or more confusion.

7        We agree with Your Honor that we did envision that

8    the initial application was like a complaint, and there was

9    an objection, and we would now go to discovery, and there

10   would be a trial.  And that trial would, prior to that,

11   include witness declarations and pretrial memoranda that

12   could argue any of the facts that we established through our

13   declarants, our witnesses, or others.

14       There's a provision in our scheduling order in

15   paragraph 3(a) that states that the parties will exchange a

16   list identifying potential witnesses within 30 days of the

17   entry of this scheduling order.  We have no intention of,

18   after the fact, identifying new people.

19       The only potential --

20       THE COURT:  So you're going to -- so let's --

21   again, trying to make this be a normal case.  I mean, you

22   would put forth all these witnesses, and some will do better

23   than others.

24       MS. DARCEY:  Correct.

25       THE COURT:  Right?  And you're going to make it --

Page 28

```
 1              MS. DARCEY:  Correct.

 2              THE COURT:  You'll make it -- I'm hypothetically,

 3    and you're going to make a decision on whom you're going to

 4    rely.

 5              MS. DARCEY:  That's correct, and, once we identify

 6    our witnesses with in 30 days, I would expect that the U.S.

 7    Trustee would subpoena them as -- you know, for depositions

 8    and take their depositions.  Now, the only issue we would

 9    ever have is if there was a need, at some point in the

10    future, for a rebuttal witness, which we would want to

11    preserve that right to put on a rebuttal witness to

12    something that comes up.

13              However, we would, at that point, allow the U.S.

14    Trustee the ability to depose that witness.  And I think

15    that that's something that happens during trial.

16              THE COURT:  I'm just -- I find it hard to envision

17    what a rebuttal witness would look like here, but --

18              MS. DARCEY:  I do as well, but I do think that --

19              THE COURT:  You have that --

20              MS. DARCEY:  -- in a trial, we would have that

21    right.

22              THE COURT:  Right, right.

23              Ms. Schwartz, I mean, that solves your problem,

24    doesn't it?

25              MS. SCHWARTZ:  First, I think that Your Honor --
```

Page 29

1    that we'll file our supplemental opposition before the close

2    of discovery, which was in our order.  I also am at a loss

3    for what kind of rebuttal witness the other side would be

4    putting forth.  If Your Honor limits any additional

5    identification of people to rebuttal witness and extends the

6    time --

7              THE COURET:  Of course.

8              MS. SCHWARTZ:  -- within which the U.S. Trustee

9    can adequately --

10             THE COURT:  Sure.

11             MS. SCHWARTZ:  -- depose them, serve documents on

12   them, et cetera, then fine.

13             THE COURT:  Sure.  And I just want to go back --

14             MS. SCHWARTZ:  Yeah.

15             THE COURT:  -- to the supplement.  I'm not going

16   to require you to file anything before you have the benefit

17   of discovery.  I don't want to have you have to do more work

18   that is necessary, either.

19             MS. SCHWARTZ:  Okay.

20             THE COURT:  So, if you elect to do that, if you

21   think that it will -- that that's in your interests --

22             MS. SCHWARTZ:  Assist the Court.

23             THE COURT:  -- to do that, by all means, go ahead,

24   and I'm sure they'll read it.  But I want to be clear.  I

25   don't want to be seen to be imposing extra work on you and

1    not extra work on them.  That's your call.

2              MS. SCHWARTZ:  Yeah.

3              MS. DARCEY:  And, Your Honor, --

4              MS. SCHWARTZ:  No, we appreciate that, Your Honor.

5              MS. DARCEY:  We didn't contemplate a supplemental

6    objection.  We did contemplate pretrial memoranda.

7              THE COURT:  Right.

8              MS. DARCEY:  And had in our scheduling order, for

9    the avoidance of doubt, any issues could be raised --

10             THE COURT:  Right.  So, in other words, we --

11             MS. DARCEY:  -- in that pretrial memorandum.

12             THE COURT:  -- go through the discovery, and then,

13   you put in your whatever declarations we decide, and we

14   would have another conference, and you would suggest we'll

15   give you -- I'm making this up.  We'll give you three

16   declarations, and then, we'll have live, you know, four

17   witnesses.

18             MS. DARCEY:  Uh-huh, yes.

19             THE COURT:  And Ms. Schwartz would have an

20   opportunity to weigh in on that.  And then, at that point,

21   and we would have an agreement on the submission of pretrial

22   memorandum.

23             MS. DARCEY:  Pretrial, uh-huh.

24             THE COURT:  Which you would say here's why we win,

25   because the evidence shows X, Y, or Z.  And the U.S. Trustee

Page 31

```
 1    would say here's -- you know, you don't win, just like in a

 2    normal trial.

 3              MS. DARCEY:  That's right.

 4              MS. SCHWARTZ:  Well, I think the only thing that's

 5    different from a normal --

 6              THE COURT:  I apologize.  I have the windows open.

 7    So we have the garbage in the background.

 8              MS. SCHWARTZ:  I live in New York City.  I think

 9    the only thing that's different, Your Honor -- and

10    Your Honor may disagree with me, et cetera.  First of all,

11    this is a contested motion.  It's not a trial.  So we don't

12    have a complaint.  We don't have all the -- we don't have

13    all of that.

14              And, in a motion, usually, every party sets forth

15    their legal argument.  Based on Judge Sullivan's decision,

16    there's going to be new argument put in the pretrial memo by

17    the other side.  It's just the way it is.

18              They filed their application now.  They're going

19    to address their position on Judge Sullivan's ruling.

20              THE COURT:  But you see, this is why I just am not

21    -- I feel like I'm not doing well today understanding you,

22    and I have -- and you know --

23              MS. SCHWARTZ:  Well, then I'm not doing well if I

24    -- I'm sure it's me, Your Honor.

25              THE COURT:  -- I have tremendous respect for you.
```

Page 32

```
1              MS. SCHWARTZ:  No, Your Honor.

2              THE COURT:  So that's alarming me.

3              MS. SCHWARTZ:  I'm not --

4              THE COURT:  As far as I'm concerned, what

5   Judge Sullivan said is of no -- does not affect the

6   proceedings going forward, other than the fact that the

7   proceedings are going forward because he ruled that they

8   have to make their substantial contribution showing.  So

9   what their application says is we're entitled to a

10  substantial contribution claim.

11             MS. SCHWARTZ:  Well, --

12             THE COURT:  And --

13             MS. SCHWARTZ:  -- may I take one last shot at --

14             THE COURT:  Sure.

15             MS. SCHWARTZ:  -- being better at articulating for

16  the Court?  And that would be that -- thanks, Jeanne.  It is

17  loud.

18             THE COURT:  It is very loud, yeah.

19             MS. SCHWARTZ:  I wouldn't have thought about it

20  until you -- and now, I'm like oh, it's so loud.

21             And I want to do better for you, Your Honor.

22  There are going to be different positions on the meaning of

23  what Judge Sullivan said.  We're going to have a -- there

24  are different positions.  You might be like well, how could

25  that be.
```

Page 33

```
 1                   THE COURT:  Okay.

 2                   MS. SCHWARTZ:  But I am telling you there are

 3       going to be different positions.  The parties have different

 4       positions on what he said and what evidence the Court would

 5       find would fall within what could be a substantial

 6       contribution claim for a committee member.  Right?

 7                   Because that's a factor here, right?  There's no

 8       question about it, that they're a committee member, that the

 9       statute speaks to what committee -- you know, the whole

10       thing.

11                   THE COURT:  Can you -- and I apologize to everyone

12       who's waiting for the rest of the calendar, but you're going

13       to have to keep waiting.

14                   Do you have Judge Sullivan's opinion with you?

15                   MS. SCHWARTZ:  I do.

16                   THE COURT:  Could you read to me what you're

17       talking about?

18                   MS. SCHWARTZ:  Yeah, sure, I certainly can.  Oh,

19       wait.  This is -- let me make sure.  Yep.  One second,

20       Your Honor.

21                   THE COURT:  Because I, you know, 110 percent want

22       to carry out --

23                   MS. SCHWARTZ:  Here we go, Your Honor.

24                   THE COURT:  -- the mandate on remand.

25                   MS. SCHWARTZ:  Yeah.  It's letter B of his
```

Page 34

1    opinion.  He puts a title, subtitle, and he says, "Section

2    6.7 calls for payment of the individual member's

3    professional fees, expenses as administrative expenses

4    solely on the basis of official committee membership."  And

5    he said that they can't get that.

6              THE COURT:  Say that again.  Right, right.

7              MS. SCHWARTZ:  He says -- right?  Okay.

8              THE COURT:  Okay.

9              MS. SCHWARTZ:  So there's going to be an issue as

10   to whether or not the evidence shows that they made a

11   substantial contribution that is not based on their

12   membership as a committee member.

13             THE COURT:  Right.

14             MS. SCHWARTZ:  They're going to take the position

15   -- well, I'm not going to speak for them -- that that's not

16   what it says, that they can get a substantial contribution

17   claim as a committee member, because they worked really

18   hard.  And so, that's the difference, Your Honor.  And so,

19   why I'm saying this -- and I hope I get it this time.

20             We don't know what their position is on that

21   issue.  They didn't write anything.  So we're going to take

22   discovery on their existing claim for substantial

23   contribution.

24             We're going to try to think about, in our mind,

25   well, what might they argue, what might new arguments they

1    advance now.  And we're concerned that, when they advance

2    new arguments at the late stage of a pretrial memo, that

3    there may be other -- you know, what they say might want us

4    to take discovery.  That's the concern, Your Honor.

5              So usually, you have a motion and everybody sets

6    forth their argument and you read the cases, right?  And you

7    say oh, well, you have to have this, da, da, da.  Well,

8    let's take some discovery on that position, that position,

9    da, da, da, da.  Well, they don't have the benefit of that.

10             So now, we're taking discovery without them making

11   those additional arguments, which they can tell you,

12   Your Honor, whether or not they're going to make additional

13   arguments or not.  But I believe it's very fair to say they

14   will.

15             THE COURT:  I don't know what you -- I just don't

16   know what you mean by additional arguments.

17             MS. SCHWARTZ:  Well, I don't have it cited in the

18   case.  You want to find it in the case?

19             There's one particular piece of language in the

20   case.

21             You want to just find it for me?

22             I'll tell you, Your Honor.  And this will help.  I

23   think this will help you.

24             THE COURT:  So what you're telling me is that

25   their case is going to be, "I went to a hundred committee

Page 36

1    meetings.  I sat on a hundred committee calls, and I should

2    get a substantial contribution claim for the fees and

3    expenses associated with sitting on those committee calls"?

4           MS. SCHWARTZ:  Because Lehman was a unique case.

5           THE COURT:  Okay.  As opposed --

6           MS. SCHWARTZ:  And they're going to say that the

7    law allows them to do that.  Our view is different.

8           THE COURT:  Okay.

9           MS. SCHWARTZ:  But I don't know what -- I think

10   that, but I don't have anything in front of me, Your Honor,

11   that says that's their argument.  I don't know their

12   arguments.  And usually, when you take discovery, you know

13   what the other side's argument is.

14           And the difference here is that there's been an

15   intervening decision, and I see how Your Honor is thinking,

16   "Well, it's just a decision saying that you can't get in

17   under 1129(a)(4).  So let's just go to a normal 503(b)

18   process and move on."

19           THE COURT:  Uh-huh.

20           MS. SCHWARTZ:  I do see that.  The reason I'm

21   saying there is a difference here is because there's going

22   to be a dispute about what the judge -- what services would

23   constitute a substantial contribution claim for a committee

24   member.  And we're going to have a legal dispute about that

25   in the papers.  Yet, we don't know their position.

1              So we're going to take our discovery based on a

2      long time ago what they put in, and now, there's two fewer

3      members of that group.  There were eight.  Two of them have

4      withdrawn their claims.  So now, there's six, right?

5              And we're not going to have the benefit of

6      thinking in advance what discovery we want based on what

7      their argument, because they haven't made that argument.

8      And usually, the argument is not made at the pretrial stage,

9      because you make your arguments.  You take discovery, and

10     then, you say why the discovery fits your argument.

11             Well, we don't have their argument on that part

12     yet.

13             THE COURT:  Okay.  Let me --

14             MS. SCHWARTZ:  And that's a concern.

15             THE COURT:  All right.

16             So are the committee members who are pursuing

17     their claims seeking an allowed claim for every single

18     minute they spent on the case?

19             MS. SCHWARTZ:  Sorry, Your Honor.  Could you say

20     that question again?  I'm sorry.

21             THE COURT:  I said -- I listened to you, and I

22     think I understand --

23             MS. SCHWARTZ:  Okay.

24             THE COURT:  -- now what you're saying.

25             So are these applications going to be seeking, as

Page 38

1     a substantial contribution, reimbursement of fees and

2     expenses, et cetera, for every single moment that the

3     applicant spent serving as a committee member, or is it some

4     subset?

5          In other words, is there a recognition or an

6     admission or concession or whatever you want to call it, or

7     differentiation between stuff I did solely because I was a

8     fiduciary on the committee, or is it, as Ms. Schwartz

9     describes, that, even though I was on the committee, I

10    should still get this as a substantial contribution claim,

11    or were there particular days that I really substantially

12    contributed to the case above and beyond what an ordinary

13    fiduciary would do?

14         I'm just trying to state it in the extreme way.

15         MS. DARCEY:  Okay.

16         THE COURT:  Because I'm trying to understand it.

17         MS. DARCEY:  Well, responding in the extreme way,

18    the application and all of the time records, which were

19    filed three years ago, requested reimbursement of fees and

20    expenses in full for all of the fees and expenses incurred

21    by the individual members as committee members and for other

22    duties that they may have undertaken.

23         THE COURT:  And you're --

24         MS. DARCEY:  So everything has been included in

25    that original application.  Now, in our view, I mean, there

Page 39

1    -- and I think what Ms. Schwartz may have been trying to say

2    is that Judge Sullivan did say in his opinion to the extent

3    official committee members perform extraordinary work to

4    benefit the estate above and beyond normal committee duties,

5    they may, as will be explained below, seek to be reimbursed

6    under 503(b).

7              THE COURT:  Okay.

8              MS. DARCEY:  And I think that's part of the

9    argument.

10             THE COURT:  All right.  So the action is -- right.

11   So that's where the action is.  So, in the face of that

12   then, how is it that time spent simply sitting on a weekly

13   conference call could be above and beyond what a normal

14   committee member does?

15             I mean, maybe after 45 minutes, we've finally

16   gotten to the nub of what this is all about, and I

17   apologize.  But it seems to me that there is a point there

18   that, if we're going to -- as we go down that point, if

19   that's going to be your position, we need to be clear that

20   that's going to be your position.  But it does seem to not

21   fully take into account Judge Sullivan's observation about

22   it needs to be above and beyond the scope of what an

23   ordinary committee member just does, bread and butter.

24             MS. DARCEY:  Right, and I think that, with respect

25   to who our witnesses are going to be and the evidence that

Page 40

1    we will put in, we will be demonstrating that this is over

2    and above a normal committee, because I don't believe that

3    even the U.S. Trustee or others appreciate what the work of

4    the committee was doing.  This was not a single visioned, as

5    you know, debtor enterprise with, you know, a monthly call

6    or a monthly meeting, et cetera.

7              THE COURT:  But on a given -- okay.  I mean, I

8    know all about big cases, right?

9              MS. DARCEY:  Right.

10             THE COURT:  So, you know, there are calls.  There

11   are lots of calls, and sometimes there are meetings, and

12   sometimes there are not, right?  But you're sitting at your

13   desk.  You may be doing two things at once.

14             You're listening with half an ear.  You're

15   listening with two ears.  If you are confirming that, in

16   fact, you're going to demonstrate that every single call you

17   were substantially contributing by being on every single

18   call in which no decisions were being taken, you know,

19   nobody's brains were smoking, all you were listening to was

20   an update about the case, --

21             MS. DARCEY:  Well, I don't suggest that that's

22   what we're confirming at all.

23             THE COURT:  But you're --

24             MS. DARCEY:  And I think that what we would want

25   to do is to put together evidence that would demonstrate

Page 41

1    what these committee members were doing.

2              THE COURT:  No, but you're --

3              MS. DARCEY:  And the type of work that was being

4    done.

5              THE COURT:  But, if at the end of the day -- is

6    your application -- does it remain the same?  Are you going

7    -- your application is not going to seek to ferret out

8    garden variety stuff.  You're going to take the position

9    that even performing the garden variety stuff was a

10   substantial contribution here.

11             Because Ms. Schwartz doesn't want to be in the

12   position of later then it's a different application because

13   you're only seeking two-thirds, right, and you're not

14   seeking just, you know, the weekly conference calls or

15   something that, you know, using a computer program, you

16   could kind of scan out.  And I think I said last time -- and

17   I did review the transcript of last time, because I wanted

18   to try to be minimally inconsistent with what I said last

19   time -- was that, you know, I've got news for you.

20             I'm not going through, you know, 100,000 pages of

21   time sheets.  That's just not happening.  So now, I'm

22   troubled by what I feel is a disconnect.

23             So, if you are confirming to me yes, we are going

24   to prove that, with respect to, you know, every dollar of

25   the original application, that that was a substantial

Page 42

1    contribution, then okay, that's your position, and we'll

2    just go forward with that.  But later, you know, after

3    Ms. Schwartz puts your witnesses through depositions, it's

4    not going to work for you later to say, you know, well,

5    we're going to carve out.  That would be unfair for the

6    application for the application to change later.

7              MS. DARCEY:  Okay.  Well, perhaps I could have a

8    minute on that --

9              THE COURT:  Sure.

10             MS. DARCEY:  -- issue with the other counsel at

11   the table --

12             THE COURT:  Right.

13             MS. DARCEY:  -- to --

14             THE COURT:  Sure, yeah.

15             MS. DARCEY:  -- be able to respond to that.

16             THE COURT:  I mean, --

17             MS. DARCEY:  And I don't know if we should deal

18   with the other issues that are presently in the scheduling

19   order or not.

20             THE COURT:  Well, you know, I wish I had taken

21   this off the main calendar, because there's obviously a lot

22   to talk about.  I very much want to move to the main

23   calendar.

24             MS. DARCEY:  Okay.

25             THE COURT:  So, if you -- I don't know what your

Page 43

1    time pressures are, Ms. Schwartz.

2            MS. SCHWARTZ:  Your Honor, I'm representing my

3    client.  I'm available all day.

4            THE COURT:  Okay.  Could we take --

5            MS. SCHWARTZ:  And certainly, for the Court.

6            THE COURT:  Could we take a pause, have you have a

7    discussion, and then, we can resume?

8            Ms. Schwartz, what do you think?

9            MS. SCHWARTZ:  Yeah, I think that would be fine,

10   Your Honor.  I just want to note that the issue that'll be

11   tried is not just going to be that language.  Of course,

12   it's our view they have to make the substantial

13   contribution.

14           THE COURT:  Well, I --

15           MS. SCHWARTZ:  Right.  But I think --

16           THE COURT:  No, I understand.

17           MS. SCHWARTZ:  -- it's very important -- and I

18   apologize, Your Honor, that I wasn't able to articulate it

19   better for you.

20           THE COURT:  No, I wasn't able to understand it.

21   So we got there.  It just took some doing, but I think it's

22   an important point to clarify.  And neither of you should

23   read into -- I mean, I'm not -- I'm just trying to set down

24   a procedure here.  I'm not --

25           MS. SCHWART:  Right, and we want a fair procedure.

Page 44

1    That's what we're asking for.

2              THE COURT:  Right.

3              So why don't we take a pause and have you talk?

4    And if it would be helpful to continue to talk to

5    Ms. Schwartz and Ms. Golden.  Let me go to the main

6    calendar.

7              MS. DARCEY:  Sure.

8              THE COURT:  And then, you'll come back in.

9              MS. DARCEY:  Okay.  Thank you.

10             THE COURT:  All right?

11             MS. SCHWARTZ:  Thank you, Your Honor.

12             THE COURT:  Okay.

13             All right.  So I think the next two matters are

14   taken together, right?  The motion for stay and the motion

15   to compel enforcement.

16             MR. KENTER:  Yes.  Good morning, Your Honor.

17             THE COURT:  Good morning.

18             MR. KENTER:  Doron Kenter, Weil, Gotshal, for

19   Lehman Brothers Holdings, Inc. as plan administrator.

20   We're here on the motion to stay pending appeal on the

21   motion to compel enforcement of the plan and confirmation

22   order on restricted stock units and contingent stock awards,

23   which we've been calling RSUs.

24             As Your Honor is aware, we're happy to report that

25   we have resolved the motions.  All moving parties and

Page 45

```
 1    joiners have agreed to a form of order that we submitted to
 2    chambers yesterday afternoon.
 3              THE COURT:  Okay.  Including Ms. Solomon?
 4              MR. KENTER:  Yes, including Ms. Solomon, --
 5              THE COURT:  Okay.
 6              MR. KENTER:  -- Mr. Schager, all of the joiners
 7    as well.
 8              THE COURT:  Okay.
 9              MR. KENTER:  That form of order essentially
10    requires LBHI to provide 30 days notice of any intent to
11    release the reserves on account of the RSU claims.  At which
12    point, they would be free to seek whatever relief they'd
13    like.
14              THE COURT:  Okay.  All right.
15              Mr. Schager, is there anything you wanted to put
16    on the record?
17              MR. SCHAGER:  Your Honor, I think only thing I
18    want to put on the record is to point out that the redline
19    shows this was a carefully negotiated order, that all of the
20    attorneys who represented the so-called compensation
21    claimants in the evidentiary hearing participated in that
22    negotiation.  There are one or two other appellants that
23    were not part of our group, but I understand Weil Gotshal
24    has been in contact with them.  And the reserves that we
25    believe were improperly removed have been restored.
```

Page 46

1          Other than that, I'm here at the Court's

2     convenience.  There were some other provisions in the

3     papers, and the 30-day notice provision is a little unusual.

4     But, if the Court has no questions, I'm fine.

5               THE COURT:  All right.

6               MR. KENTER:  Thank you, Your Honor.

7               THE COURT:  Thank you very much.  We'll enter the

8     order later today.

9               MR. KENTER:  Thank you.  I have one other item.

10              THE COURT:  Sure.

11              MR. KENTER:  And, before I turn to that, I do want

12    to thank Mr. Schager and the other compensation claimants

13    for reaching this resolution.

14         The only other issue is administrative or

15    procedural in regard to the schedule going forward for the

16    appeal.  Because there are so many claimants and groups of

17    appellants, there's a little bit of a disconnect as far as

18    the status of the designations and statements on appeal.

19    The motion of Kyle Kettler (ph) pursuant to Rules 59 and 60

20    stayed or told the deadline to file statements and

21    designations, according to some of the claimants, the

22    appellants.

23              So, in any event, there's a little bit of a --

24              THE COURT:  How would it have done that?

25              MR. KENTER:  Because it was a 6(d)(b) motion.

Page 47

```
 1                    THE COURT:  I see.  Okay.

 2                    MR. KENTER:  So, for example, Mr. Schager has

 3      filed his statement and designations.  Other appellants have

 4      not.  So what we wanted to do, just to make sure that

 5      everyone is on the same page, is just note on the record the

 6      schedule going forward for the Court's approval, for the

 7      avoidance of doubt.  And I conferred with all of the --

 8                    THE COURT:  Well, hold on.

 9                    MR. KENTER:  Sure.

10                    THE COURT:  So the Kyle Kettler claim has been

11      resolved?

12                    MR. KENTER:  Yes, yesterday.

13                    THE COURT:  Right.  And we're going to enter that

14      order.  So that will be over.  But what I -- I don't feel

15      that adequate notice of a pronouncement of a schedule is

16      appropriate just by your saying it now.

17                    MR. KENTER:  Well, --

18                    THE COURT:  Unless everybody --

19                    MR. KENTER:  Everyone is in agreement.  We have

20      confirming emails saying that my representation as follows

21      on the record will be the schedule going forward.

22                    THE COURT:  Okay.

23                    MR. KENTER:  So we just wanted to present that.

24                    THE COURT:  Literally, everybody?

25                    MR. KENTER:  Every appellant thus far.
```

Page 48

```
 1              THE COURT:  Okay.  All right.  Go ahead.

 2              MR. KENTER:  It's been a yeoman's effort, Judge.

 3              THE COURT:  I always -- that's my number one job

 4    is to be worried about anybody who happens to not be in the

 5    room.

 6              MR. KENTER:  And we do appreciate that.

 7              THE COURT:  Okay.

 8              MR. KENTER:  The schedule is as follows.  I'll

 9    just read it into the record.

10              "Appellants will have 14 days from resolution of

11    the Kettler motion to file their statements of issues and

12    designations of the record on appeal."  For the record, that

13    would be January 28th, 2015, because the Kettler order was

14    entered yesterday.

15              "LBHI also has no objection to a revised form of

16    statement and designation from Mr. Schager during that time,

17    should he seek to revise his designation.  LBHI will then

18    have 14 days from the close of that period, that 14-day

19    period, to file its counter-designations."

20              For the record, that would be February 11th, 2015.

21    So, unless the Court has any questions, we would simply ask

22    the Court to so order the record.

23              THE COURT:  All right.  I'll so order the record

24    in that regard.  Has the case been assigned at the District

25    Court?
```

1          MR. KENTER:  Not to my knowledge.

2          UNIDENTIFIED SPEAKER:  Not yet.

3          THE COURT:  All right.  Thank you very much.

4          MR. KENTER:  Thank you, Your Honor.

5          THE COURT:  All right.  Should we move on to the

6     Four hundred and forth-ninth omnibus objection to claims?

7          How are you, Mr. Miller?

8          MR. MILLER:  Good morning, Your Honor.

9          THE COURT:  I'm sorry to make you wait so long

10    today.

11         MR. MILLER:  I'm fine.  Happy New Year to you.

12         THE COURT:  Same to you.

13         MR. MILLER:  And I'm Ralph Miller, with Weil

14    Gotshal & Manges, here for Lehman Brothers Holdings, Inc.,

15    which I will call LBHI.

16         LBHI believes this claim is a straightforward

17    application of Section 510(b) of the Bankruptcy Code to a

18    traditional underwriter that purchased and resold LBHI

19    securities.  Now, Your Honor, there's a simple basis for

20    application of Section 510(b), based on the first cause,

21    which simply talks about arising from the purchase or sale

22    of securities of LBHI.  And then, there's a little more

23    complex application of a second clause, which has to do with

24    or reimbursement or contribution.

25         We believe both clauses apply, but what I'd like

Page 50

1    to do is to very briefly discuss the simple application

2    first and then, the somewhat more complex issue of the

3    contribution and reimbursement clause.  UBS Financial

4    Services has focused on this second part of the argument.

5            Just by way of background, omnibus objection 449

6    was filed in December of 2013 to reclassify 45 proofs of

7    claim from underwriters or broker/dealers.  It's a little

8    generic, because their facts were somewhat different.

9            They all sought reimbursement, contribution, or

10   indemnity from LBHI for various stock offerings and

11   securities offerings.  Forty-four of those claimants did not

12   respond and were reclassified.  One, UBS Financial Services

13   or UBSFS, did contest, and that's the one that we have.

14           And we now have more specific facts about it,

15   thanks to the declaration of Kenneth G. Crowley, who is a

16   deputy general counsel of UBSFS.  And what Mr. Crowley tells

17   us is that UBS purchased an offering of medium-term notes

18   from LBHI that were called U.S. structured notes, and then,

19   UBSFS resold those notes to its own clients.

20           And it says that that purchase from LBHI, the

21   resale to its own clients, and their purchase have given

22   rise to four categories of damages, and the categories of

23   damages are that the UBSFS purchaser sued it in class

24   actions.  And so, it's had $120 million worth of class

25   action settlements, approximately.

1              It had legal fees in those class actions.  That's

2       category number two.  It had FINRA arbitrations.  That's

3       category number three.  And the fourth category is legal

4       fees for the FINRA arbitrations.

5              We suggest, Your Honor, that we can stop right

6       there, because all of those categories of damages are claims

7       in this proceeding for, quote, "damages arising from the

8       purchase or sale of," close quote, LBHI securities.  They

9       just are.

10             Under the broad arising from standard that has

11      been applied, they would never have occurred if UBS had not

12      bought the securities, although it held the securities only

13      briefly.  It resold the securities, and its purchasers

14      bought those securities.  So we're really done at this

15      point.

16             We don't have to go in this particular instance --

17      we might have in some of the others in the four hundred and

18      449th objection, but we don't have to go to the situation of

19      what about the 4 claims for reimbursement or contribution

20      category.

21             What I anticipate Mr. Dorchak is going to say

22      because it's what he says in his papers is well, UBSFS is

23      not seeking this reimbursement contribution because of the

24      claims.  It's seeking them because it has a contract.  But

25      the courts have dealt with that very issue, and UBSFS

1    doesn't have a single case that says it matters whether it

2    had a contract or it had statutory contribution.

3              And it's been discussed in a couple -- Judge Diane

4    Weiss Sigmund in re: Walnut Equipment Leasing case that was

5    quoted on page 8 said it very clearly.  She said, quote,

6    referring to an underwriter, "Underwriter contends that

7    these cases are distinguishable because its claim arises

8    from the agreement and not from the purchase or sale of a

9    security.  These arguments are not persuasive."

10             The Court continues, Section 510(b) specifically

11   states that it applies to, quote, "A claim for damages

12   arising from the purchase or sale… of a security or for

13   reimbursement or contribution allowed under Section 502 on

14   account of such claim," close quote, with a cite.

15             This language is sufficiently broad to include any

16   claim for indemnification of defense costs incurred in

17   connection with a lawsuit seeking damages arising from a

18   purchase or sale of securities, regardless of whether the

19   indemnification is based on a statute, a contractual

20   agreement, or otherwise.

21             In the Jaycom (ph) case, which is cited in our

22   brief several times, but first, I believe, on page 6,

23   Judge Cornelius Blackshear dealt with the indemnification

24   issue specifically, and he said finally, taking the

25   underwriter's argument that their claim arises from their

Page 53

1    indemnity contract with the debtors.  This Court notes that

2    the indemnity provision is a provision of the underwriting

3    contract, as it was here, Your Honor.

4              Further, this Court agrees with the analysis

5    outlined in the De Laurentiis case, which we also cite.

6    Quote, "Reimbursement by definition includes

7    indemnification, and indemnification naturally includes

8    recovery of attorneys' fees," close quote.  The Court is not

9    persuaded by underwriter's characterization of their claim

10   as one for, quote, "indemnification," as opposed to, quote,

11   "reimbursement, (the term used in the statute)," end quote.

12             The Mid-American Waste Systems case dealt with a

13   fact pattern with contractual indemnification, and

14   Judge Peck, as I think the Court is aware, dealt with this

15   very set of facts in the LBI proceeding.  It was affirmed by

16   Judge Scheindlin (ph).

17             Now, in that case, the co-underwriters, which were

18   not the same as UBSFS, --

19             THE COURT:  You're talking about Claren Road?

20             MR. MILLER:  Pardon me?

21             THE COURT:  You're talking about Claren Road?

22             MR. MILLER:  Yes, Your Honor, the Claren Road

23   case, but I'm not talking about the Claren Road part of the

24   case.  I'm talking about there was a co-underwriter's part.

25             And UBSFS makes the point that they were not a co-

1    underwriter there, that they had statutory contribution.

2    Here, they said they have contractual contribution.  But the

3    co-underwriters there had contractual contribution.

4                THE COURT:  Right.  No, we're talking about the

5    same thing.  I'm not talking about the preclusion point.

6                MR. MILLER:  Right, Your Honor.

7                THE COURT:  I'm talking about the --

8                MR. MILLER:  And the reason that Judge Peck and

9    the District Court didn't deal with this point is that

10    Mr. Barefoot (ph), who was counsel for the co-underwriters,

11    stated during the oral argument, quote, "If we were in the

12    LBHI case, there is no question that our claims would be

13    subordinated and 510(b) makes very clear where they would be

14    subordinated," close quote.

15                The fight in that case was really about --

16                THE COURT:  Was the affiliate?

17                MR. MILLER:  Yes, it was the question --

18                THE COURT:  Yeah.

19                MR. MILLER:  -- of how you would find the level of

20    subordination, Your Honor.

21                THE COURT:  Right.

22                MR. MILLER:  But this issue, just to be clear, was

23    inherent in that case.

24                THE COURT:  I understand.

25                MR. MILLER:  Counsel conceded it, and Judge Peck,

1    Your Honor, made a statement, which we think is completely

2    accurate, which he said that, in the LBI case, that the

3    underwriters had made claims for reimbursement that tied

4    directly to their having participated in the public offering

5    of LBHI bonds.

6              So the final point, Your Honor, is, very brief,

7    there is a legislative history argument that is made by

8    Mr. Dorchak in papers.  First of all, we don't think you

9    have to go to legislative history, because the statute is

10   unambiguous and applies directly.  But that legislative

11   history point has been addressed in some of the cases we

12   cite.

13             There is a risk-shifting legislative history

14   basis, and the risk-shifting basis clearly applies,

15   particularly in these facts when USBFS bought all the

16   securities itself and sold them to its clients.  It was

17   clearly in a much better position to evaluate the risks than

18   general creditors would be when they do business with LBHI

19   or others in the estate.

20             So, for these reasons, Your Honor, we believe

21   there's really no doubt that 510(b) applies by its terms.

22   At least two clauses apply, and LBHI requests that the

23   objection be granted and these claims be subordinated under

24   Section 510(b).

25             THE COURT:  Thank you, Mr. Miller.

Page 56

1           MR. MILLER:  Thank you, Your Honor.

2           MR. DORCHAK:  Good morning, Your Honor.

3           THE COURT:  Good morning.

4           MR. DORCHAK:  Joshua Dorchak, Morgan, Lewis &

5    Backius, for UBS Financial Services, Inc.  And I can save us

6    -- we could save us all some time in the sense that I'm not

7    going to try and distinguish cases like Walnut Equipment

8    from Jaycom.  I hear what they say.

9           If we were the claimant in those cases, we'd have

10   lost.  But why I'm here anyway is that UBS and I believe

11   that the Med Diversified decision in the Second Circuit in

12   2006 requires a reexamination of those cases, of those cases

13   and this case, because this is, to me, a borderline

14   situation as opposed to a slam dunk, flat out 510(b)

15   situation.

16          THE COURT:  But the other 44 weren't smart enough

17   to figure out this argument?

18          MR. DORCHAK:  I don't know that there's that many.

19   De Laurentiis mainly and Walnut Equipment very bad for us,

20   absolutely.

21          THE COURT:  Okay.

22          MR. DORCHAK:  There's some --

23          THE COURT:  So I'm saying the other --

24          MR. DORCHAK:  The Jaycom and --

25          THE COURT:  The other claimants who did not --

Page 57

1           MR. DORCHAK:  Oh, I'm sorry.  I didn't hear what

2    you said.

3           THE COURT:  -- send somebody down to make a

4    similar argument.

5           MR. DORCHAK:  Right.  I --

6           THE COURT:  Undoubtedly many of them as

7    sophisticated as your client.  And I'm not trying to be

8    facetious here, but the facts are what they are.

9           MR. DORCHAK:  I can't, of course, read their minds

10   or understand what their strategy was.  And, if I did know

11   what it was, they wouldn't want me to tell you.

12          But we see Med Diversified as making an important

13   enough point, two important points, as to give us -- entitle

14   us to a day in court on this subject, which is near and dear

15   to my clients that practice, and it's hard -- rather than

16   simply conceding.

17          And the two things I refer to, which maybe are

18   obvious in Med Diversified are, number one, the statute can

19   be ambiguous in certain circumstances, depending on the

20   claimant and the claim and the background, and, number two,

21   if the statute is --

22          THE COURT:  Well, I mean, I'm definitely not going

23   to disagree with you in that regard.  You may be familiar

24   with the fact that I, myself, have written a decision on

25   510(b) that is not Lehman's favorite decision that I've

Page 58

1    written --

2            MR. DORCHAK:  I was going to mention that decision

3    and -- actually --

4            THE COURT:  But the fact that a statute might be

5    ambiguous in some regard, indeed in Claron (ph) Road on the

6    point that Mr. Miller described, Judge Peck resolved an

7    ambiguity in the statute because of the need -- because of

8    the affiliate issue and the ability to figure out the level

9    of subordination as Mr. Miller put it.

10           So we --

11           MR. DORCHAK:  Sure.

12           THE COURT:  -- can agree that there may be aspects

13   of the statute that are ambiguous.  But it's very hard to

14   get around the arising from and it's very hard to get around

15   the fact that it's not at all a stretch to call an

16   indemnification claim a claim that fits within the statute

17   and even pursuing the foray into legislative history, you

18   would have it -- if I were to apply the rule that you urge,

19   there would be a path to demonstrably, in every case, shift

20   the risk in a way that's completely inconsistent with

21   510(b).  It's just a neat trick.  You just buy the

22   securities and then you resell them and then, you know, you

23   get to put your risk in the general unsecured pool alongside

24   the general creditors of the issue or of the securities and

25   that's flatly inconsistent with what 510(b) is about.

Page 59

1              MR. DORCHAK:  Well, if I could give it a try, Your

2      Honor.

3              THE COURT:  You can.

4              MR. DORCHAK:  I'll try not to take too long.

5              This risk allocation mantra which is held against

6      underwriters and similar claimants is one that I -- maybe I

7      just don't understand it, but I don't -- I think it's too

8      broadly applied or too quickly invoked, one or the other and

9      the idea seems to be that -- well, I can just quote from

10     DeLarenti (ph) that an underwriter "would be in a better

11     position than general unsecured creditors to evaluate the

12     risks associated with the issuance of securities and take

13     appropriate steps to protect itself."

14             That's the idea.  You're an underwriter.  You

15     should have done your due diligence.  But these steps that

16     the underwriter is supposed to take to protect itself, I

17     don't know what they could be besides getting contractual

18     indemnification from the issuer.  Taking that extra step to

19     take the debate in the event that there's a problem down the

20     line away from the joint tortfeasor, your fault, my fault,

21     contribution, common law, free-for-all and turning it into a

22     contractual, clear, pre-defined indemnification.  It's not

23     even based on proving the fraud damages in the first place.

24             THE COURT:  Not -- my thinking about this issue

25     really doesn't turn on the set of facts or the issue that

Page 60

1    you just articulated and I just want that to be perfectly

2    clear.

3              You took my comment in that direction.  That's not

4    where I was going.  But you can keep going.

5              MR. DORCHAK:  Alright.  Well --

6              THE COURT:  Okay.

7              MR. DORCHAK:  Let me try another direction.  The

8    -- well, here's something I think -- another we can save

9    time on.  The -- if this allocation of risk is the only sort

10   of philosophical argument against UBS having some claim

11   worth something here against the estate.  Well, I think we

12   can all agree --

13             THE COURT:  No.  I think the big argument is that

14   the claim is a claim arising from the purchase or sale of

15   LBHI securities.  That's kind of the biggie.

16             MR. DORCHAK:  Well, I dispute that, too, Your

17   Honor but -- what started with this -- with Med Diversified.

18   I'm going backward.  I'll get to the horse and I'm putting

19   the cart before the horse but I'll get to the horse.  I

20   promise.

21             So the types of claimants that from Slain and

22   Kripkey (ph) through Med Diversified are supposed to be

23   unfortunate when it comes to Section 510(b), these are --

24   even including debt securities, which I'm not trying to

25   exclude, come from investors who have a recovery based on a

1   flow of funds coming out of the company which depends, to

2   some degree, on the profits of the company.  You articulated

3   these things in your MBS decision.  So I know you know about

4   them.

5          THE COURT:  Right.

6          MR. DORCHAK:  And, in the first instance, just to

7   say it, UBS didn't invest.  It's not an investor in these

8   securities.  UBS is a middle man --

9          THE COURT:  Tried to make off of the securities.

10         MR. DORCHAK:  Well, made a fee, sure, for

11  performing a service for LBHI, was to be its middle man in

12  passing these securities, which were earmarked from the

13  beginning for the clients of UBI.  There was no UBI buys

14  them and we'll wait and see someday maybe sell them.  It's

15  just out the door immediately.

16         So there's no -- UBS isn't taking that risk.  The

17  problem down the line risk, of course, they're aware of but

18  that's what the indemnification is supposed to cover.  So

19  the idea that UBS is trying to turn itself into or clothe

20  itself in the garb of a general unsecured creditor, like the

21  kind of creditor that has a contract claim against the

22  debtor, when it's not really that -- really it's -- it was a

23  stakeholder in the equity of the company or even the debt of

24  the company.  I think we fall on the right side of that.

25         But, now you're telling me what -- okay.  Stop

Page 62

1    with the cart and get back to the horse --

2              THE COURT:  Uh-huh.

3              MR. DORCHAK:  -- and tell me why the statute

4    doesn't just knock these claims down based on what it says.

5              So the easy argument that Mr. Miller presented, to

6    me, I find fairly easy to counter.  The -- these claims are

7    not arising from the purchase and sale of securities between

8    UBS and LBI.  That went without a hitch, at least at the

9    time; right?  We bought and we sold and that wasn't a

10   problem.  That's not why we're here.

11             We're here because the clients of UBS had a

12   problem with the transaction eventually and after you have

13   LBI -- LBHI went into bankruptcy, and so they actually had

14   two recourse options and they took them both.  They filed

15   the claims against LBHI based on their bonds and, indeed,

16   there they sit in class three --

17             THE COURT:  And --

18             MR. DORCHAK:  -- recovering so far over thirty-one

19   and half percent of the face amount of the claims and then

20   why not also sue UBS.  And so UBS has to --

21             THE COURT:  Right.  And if they also sought -- if

22   they sought damages in connection with those securities --

23             MR. DORCHAK:  Right.

24             THE COURT:  -- right, they would be subordinated.

25             MR. DORCHAK:  Absolutely.

Page 63

```
 1                THE COURT:  Right.

 2                MR. DORCHAK:  I --

 3                THE COURT:   So now they're -- so now they've sued

 4   you instead --

 5                MR. DORCHAK:  Right.

 6                THE COURT:  Right.  And you have to pay those

 7   claims --

 8                MR. DORCHAK:  Well, when we lose.

 9                THE COURT:  Right.

10                MR. DORCHAK:  Or when we settle.

11                THE COURT:  Okay.  So you have to pay those

12   claims.  And even though if those claims had been asserted

13   directly against LBHI, they would be subordinated, but now

14   that you're asserting that claim, it's not subordinated.  So

15   you're --

16                MR. DORCHAK:  Correct.

17                THE COURT:  -- you're jumping the line even though

18   the party that was damaged as a result of the purchase and

19   sale of the security.  So we have the disruption of the

20   priorities because we've gone through that extra step.

21                MR. DORCHAK:  No.  I don't agree with that, Your

22   Honor, and here's why.  The guy that can't sue LBHI for

23   fraud in the connection with this sale of these securities

24   is --

25                THE COURT:  Right.
```

Page 64

1          MR. DORCHAK:  -- the guy that invested in LBHI

2    securities.  In other words, the clients of UBS.  The guy

3    holding the bonds can't make the fraud claim because by

4    virtue of holding those bonds, he is the guy that invested

5    and you can't switch from an investor to a fraud claim but

6    -- we're not holding the bonds.  We're not accusing LBHI of

7    fraud.  We -- this is --

8          THE COURT:  Right.  But this is a great deal --

9          MR. DORCHAK:  We're not them.

10         THE COURT:  -- because them if you buy -- all you

11   have to do is buy the bonds from another guy and you've got

12   an insurance policy and you've got a work around 510(b) in

13   the event of the issuer's bankruptcy because then you've got

14   a dollar good claim against the underwriter.  And that's not

15   -- that's just with the greatest respect, that's just not

16   the way it works.  That would be a loophole, you know, that

17   you could drive any number of trucks through.

18         MR. DORCHAK:  Our client doesn't look at it as a

19   loophole problem.  It looks at it as a problem in that their

20   client has a claim.  In fact, two claims.  One against the

21   estate and one against them.  They have no claim at all,

22   even though they're not the ones that made the investment,

23   they were just the middleman to the guy that made the

24   investment.

25         So again that's philosophical as opposed to the

Page 65

1   actual text but obviously the two go hand in hand because

2   it's not from UBS's own transaction with LBHI that this

3   claim arises.  That -- now, my problem is that, of course,

4   that the client of UBS sued UBS and now UBS says, that's

5   your problem, too, LBHI.  Now that sounds like a

6   contribution claim and that's the part of the statute that

7   I'm worried about but -- I think we're right but that's -- I

8   realize I've got an issue there.  That's the -- that brings

9   up not the potentially ambiguous phrase in -- sorry, arising

10  from, but the potentially ambiguous phrase, on account of.

11          And so the question I -- to me, the main question

12  is, it's more important what you think the main question is,

13  but to me the main question is whether the -- these

14  contractual indemnifications sort of no fault as between us,

15  indemnification claims are on account of; right?  The claims

16  that have been made against UBS.  And my -- what I'm trying

17  to say is that the -- are they related to?  Is there a but

18  for relationship?  Yes.  There is a but for relationship but

19  you can -- you know, you can do that whole ad absurdum

20  argument --

21          THE COURT:  Right.

22          MR. DORCHAK:  -- with -- the but for argument,

23  more to the point, didn't work in the KIT Digital case where

24  Judge Gerber looked at a potentially ambiguous situation

25  and, again, in light of Med Diversified.  Now that's the

Page 66

1    only case after Med Diversified that people are mentioning

2    in this dispute.

3            The others are pre-Med Diversified so I

4    distinguish them on their timing, not on their --

5            THE COURT:  Uh-huh.

6            MR. DORCHAK:  -- content.  And the idea in KIT was

7    just because the source of your damages claim is a provision

8    in a contract that also has some stuff about selling

9    securities, so it's a securities purchase and sale contract;

10   everything in that contract isn't necessarily arising from;

11   arising from the purchase and sale.

12           Now it's easy for them to distinguish KIT

13   (indiscernible - 01:10:46) but lease, right, and that sounds

14   very different.  But this is scale and I'm saying on the

15   scale we are far enough removed away that although there's a

16   but for relationship between the purchase and sale of LBHI

17   securities by our clients, from us, and our contractual

18   indemnification claim.  Yes, there's a but for relationship

19   but we have that claim independent of the merits and the

20   number and the details of the claims the clients against us.

21   It's -- the minute they -- it doesn't even matter if they

22   prove their claims.  Alleged damages against us are

23   indemnified.  So I'm just trying to say that just because

24   there's a relationship doesn't mean that the one thing arise

25   from or is on account of the other.  And if my

Page 67

1    interpretation is reasonable and if Mr. Miller's

2    interpretation is reasonable, then you've got two differing

3    reasonable interpretations of the statute, which the Second

4    Circuit in Med Diversified tells us creates an ambiguity,

5    which causes us to go look at the cart that's behind the

6    horse.

7              So that's --

8              THE COURT:  Okay.

9              MR. DORCHAK:  -- where we are.  I -- it's not so

10   much an attempt to -- I don't know, create a loophole, as

11   you put it, so that every underwriter under the sun can, you

12   know, breath, you know, sleep easy at night that their --

13             THE COURT:  But --

14             MR. DORCHAK:  -- 510(b) is not going to --

15             THE COURT:  But that's exactly what you're asking

16   me to do.  You're basically asking me to create or recognize

17   an underwriter exception.  That -- an exception that would

18   say that I'm buying these securities.  I'm going to resell

19   them and if I get sued because the securities go south, I

20   get to assert a general unsecured claim against the issue of

21   the securities.  And --

22             MR. DORCHAK:  Could I narrow it?  Not across the

23   board.  Not a common law -- this is not joint tortfeasor,

24   common law contribution.  This is where -- that's what makes

25   this different.

Page 68

1           THE COURT:  Where --

2           MR. DORCHAK:  Everybody that comes up here tells

3    you their different; right?

4           THE COURT:  Right.

5           MR. DORCHAK:  We're different because we have a

6    contractual indemnification claim, it's a sort of I call

7    before a no fault indemnification claim and that's the thing

8    that UBS did because it was trying to assess its risk and

9    wanted to do what the Court suggested; take appropriate

10   steps to protect itself.  That's what we did and that's what

11   makes us different.

12          The claims that we had -- in the LBI context, we

13   didn't have a contract and we didn't assert the argument

14   that I'm making to you because we couldn't have.  We didn't

15   have a contract to base an indemnification on.  And I'm

16   saying that's special.  That's why what I'm not asking for

17   the loophole that you could drive a truck through.

18          THE COURT:  Okay.  But you're --

19          MR. DORCHAK:  you know --

20          THE COURT:  -- what you're telling me then is, and

21   I think we'll move on, is that you can contract around the

22   problem.  You can contract around being caught in the net of

23   510(b) subordination and --

24          MR. DORCHAK:  So it sounds so bad when you put it

25   that way.

1           THE COURT:  It does.

2           MR. DORCHAK:  I put it this way; you can have --

3     you can protect yourself when you're dealing with an issuer

4     long before they file for bankruptcy and hopefully they

5     never do.  And you can protect yourself in that context like

6     the judges seem to be suggesting you do by entering into a

7     special extra level of protection that's contractual and

8     doesn't look into the issue of who lied to who.  That --

9     you're taking yourself out of the common pool.

10          THE COURT:  Yeah.  It's kind of a bummer for the

11    general unsecured creditors though.  That's a technical,

12    legal term.

13          MR. DORCHAK:  There's always -- the general

14    unsecured creditors can complain about anybody's claim.  So

15    if we have a legitimate claim, it shouldn't be knocked down

16    simply because, aw, shucks, it's a little bit less for

17    everybody else.  That's always true, Your Honor.

18          THE COURT:  Thank you very much.

19          MR. DORCHAK:  Thank you.

20          THE COURT:  Mr. Miller, is there anything more you

21    wanted to say?  Did you want to take a moment to talk about

22    KIT Digital?

23          MR. MILLER:  Your Honor, I certainly can.  I mean,

24    I think, the facts in KIT Digital and Med Diversified are

25    very different from the facts here.  And Med Diversified

1    which, of course, is the Second Circuit, had to do with the

2    exchange of stock in another company under a termination

3    agreement, which is completely -- actually the failure to

4    make an exchange of stock and, despite that, the Second

5    Circuit applied 510(b).

6            Now I just don't think this is a close question.

7    And, Your Honor, I think you've already put your finger on

8    the key point which is I don't think there is any case in

9    which the Court has ever said these underwriters are unusual

10   because they didn't have contractual indemnity.  We think

11   that underwriters virtually always have contractual

12   indemnity.  So every underwriter -- but the point that I

13   guess I would want to go back to is this is not a broker or

14   dealer who resold something and really had a minor role.

15   That's really what the or contribution or reimbursement --

16           THE COURT:  Right.

17           MR. MILLER:  -- clause is for is for the, sort of

18   tangential players.  That clause I don't think was necessary

19   for somebody who bought the stock, or in this case a bond

20   from LBHI --

21           THE COURT:  For the purpose of reselling --

22           MR. MILLER:  -- resold it to their customers and

23   then got sued by their customers over the purchase of that

24   LBHI stock by their own clients.  This is the core of equity

25   and to say they're not an equity investor, Your Honor, they

1    took much more risk than a traditional equity investor.

2    They actually, in effect, vouched for -- they were liable

3    potentially under Section 11, for the accuracy of the

4    marketing of these securities.

5              So the idea that they are outside of this equity

6    concept just makes no sense.  They are hugely in a better

7    position to manage that risk than general unsecured

8    creditors are and for all those reasons, Your Honor, we

9    believe it's (indiscernible - 01:16:47) property.

10             THE COURT:  Okay.

11             MR. MILLER:  Thank you.

12             THE COURT:  Alright.  Well, I appreciate the

13   arguments and I -- they did give me pause and cause me to

14   think about the issues but I do believe that under either

15   standard, if you will, under 510(b) these are classic claims

16   that are required to be subordinated.  So the objection is

17   sustained.

18             MR. MILLER:  Thank you, Your Honor.  We'll submit

19   an order later today.

20             THE COURT:  Yes, please.  Thank you.

21             MR. MILLER:  On this.

22             THE COURT:  Thank you very much.

23             MR. DORCHAK:  Thank you.

24             THE COURT:  Alright.  Should we resume with the

25   committee matter?

Page 72

```
 1            Do we have absolute clarity now and peace?

 2            MS. DARCEY:  Well, we appreciate -- go ahead.  I'm

 3   sorry.

 4            THE COURT:  Maybe we have a little progress if not

 5   all of the foregoing.

 6            MS. DARCEY:  The progress has been slow over the

 7   last number of months and in the past few minutes as well.

 8            I would suggest to the Court that we try to speak

 9   with the U.S. Trustee on some of those issues.  But, at this

10   point, we have filed our application and that application is

11   inclusive --

12            THE COURT:  Okay.

13            MS. DARCEY:  -- and we will be put to our test --

14            THE COURT:  Okay.

15            MR. DARCEY:  -- as to the evidence, which would be

16   both quantitative and qualitative.  We don't believe that

17   there's an element of surprise to the U.S. Trustee.  There's

18   -- we will be making our arguments at that time and I think

19   that that's --

20            THE COURT:  Okay.  So, on that basis, then what

21   issues remain for resolution in the order?

22            MS. SCHWARTZ:  Well, just on clarification, with

23   respect to that then, Your Honor, as Your Honor said, that

24   that's the application.

25            THE COURT:  That's the application.
```

1          MS. SCHWARTZ:  Yeah.  That's the application.

2          MS. DARCEY:  That's the application and we will

3    ultimately be filing witness declarations and a memorandum

4    in advance of the trial.  I think that, you know, our

5    application and our time records which I said before, Your

6    Honor, have been on file for three years.  We are not now

7    going to change what our time records are or were.

8          THE COURT:  Okay.  Well, I guess that was what --

9          MS. DARCEY:  And I think --

10          THE COURT:  -- that's what we got clarified --

11          MS. DARCEY:  Okay.

12          THE COURT:  -- was that post the ruling of Judge

13    Sullivan, you are standing by your original application

14    seeking as a substantial contribution claim everything.

15          MS. DARCEY:  The fees and expenses.  Yes.

16          THE COURT:  Okay.

17          MS. DARCEY:  And --

18          THE COURT:  I got it.

19          MS. DARCEY:  Now, there are -- there are other

20    remaining issues.  We did already talk about the

21    supplemental objection of the U.S. Trustee so, as I see it,

22    there are really now two other important issues with respect

23    to the scheduling order; both of which we haven't --

24          THE COURT:  Well, can I just add a -- and this is

25    a little bit thinking out loud --

Page 74

1          MS. DARCEY:  Uh-huh.

2          THE COURT:  -- because now that we -- I have this

3    clarity about what you're doing, it causes me to think about

4    things in a slightly different way.

5          I do think we need to think about -- I keep going

6    back to the twenty thousand pages of time records and where

7    the burden ought to fall with respect to bucketing.  So your

8    application makes no distinction, I'm asking, between going

9    to committee and listening -- and participating on committee

10   phone calls, as a category versus other types of activities.

11         I'm just trying to tease out a little bit, you

12   know, what this is going to look like and who's going to do

13   that.

14         MS. DARCEY:  Okay.  We have our application, which

15   does, as I recall, and I apologize for not having it here

16   with me, but we have -- we do have categories --

17         THE COURT:  Right.

18         MS. DARCEY:  -- of service.  And some of the -- or

19   one of the categories may have been general or a general

20   administration category.  There is clearly service by the

21   committee members with respect to many of the operating

22   Lehman entities --

23         THE COURT:  I mean, I -- let me take -- let me

24   just take an example.  So I'm, you know, there were weekly

25   or daily, maybe in the beginning --

Page 75

1           MS. DARCEY:  Yes.

2           THE COURT:  -- update calls; right?  That

3     everybody dialed into.  I'm making this up; right?

4           MS. DARCEY:  Uh-huh.

5           THE COURT:  As opposed to, at a certain point,

6     people, you know, thought that they actually were living at

7     Weil, Goshala, you know, they were just there.  Didn't know

8     what day it was, day and night negotiations.  I'm making it

9     up.  I don't know.

10          So I'm just trying to understand in going through

11    this are you ever going to or maybe you haven't thought

12    about it, going to be saying, we spent this much time living

13    at Weil, Goshal, negotiating, you know, international

14    protocols and plans provisions versus we spent this much

15    time just listening to, you know, updates on stuff.

16          MS. DARCEY:  I do think that in the supplemental

17    declarations that were filed there was some more of that

18    that went in because what we did was there were very

19    distinct businesses of Lehman that people-- for instance,

20    the derivatives or real estate and dealing with those types

21    of transactions and the number, hundreds of hours in dealing

22    with --

23          THE COURT:  Okay.

24          MS. DARCEY:  -- real estate transactions or

25    dealing with the derivatives or the ADR SVP claims, et

1    cetera.  And some of that is ferreted out --

2              THE COURT:  Okay.

3              MS. DARCEY:  -- in the application but I can say I

4    don't recall exactly what all of those categories are.

5              MS. SCHWARTZ:  It's not ferretted out in time

6    records, Your Honor.  What it is is it's in categories, like

7    every committee in every large case has subcommittees.

8    Sure.  So they've identified the subcommittees.

9              THE COURT:  Okay.

10             MS. SCHWARTZ:  And what they haven't done, which

11   is going to be part of the discovery process, is our

12   discovering whether or not -- first of all, the burden, we

13   know who -- the law if very clear.  It's their burden.  But

14   with respect to whether they can establish the factors that

15   the Courts look at for substantial contribution claims, I

16   mean, we need to also be mindful that this committee had two

17   sets of lawyers and two sets of financial advisors that also

18   were doing this work and there were hundreds of millions of

19   dollars paid to those professionals that represented the

20   committee.

21             So, to answer Your Honor's question, to just get,

22   you know, someone's run of timesheets, from the beginning of

23   time to the end, and a narrative that says, well, we were on

24   this committee, we were on this committee, this committee --

25   that's what we have so far.  So, Your Honor, when Your

Page 77

1    Honor's saying, well, I kind of just want to tease this out

2    a little bit,  I think Your Honor is kind of now, you know,

3    somewhat where we've been.  Well, what is it?  You know, how

4    do we figure it out?

5            THE COURT:  But the answer to that -- the answer

6    to that is they're not --

7            MS. SCHWARTZ:  (Inaudible - 01:25:04).

8            THE COURT:  They have a burden and they're going

9    to carry their burden so I don't have any -- so we're going

10   to do that.

11           MS. DARCEY:  That's right.  And --

12           THE COURT:  I think that's the answer to it.  I'm

13   glad we have clarity.

14           MS. DARCEY:  We're not arguing.  We're not here at

15   trial today.  We have our proof and --

16           THE COURT:  Okay.

17           MS. DARCEY:  =- we will be putting that forward

18   with respect to the work of the committee and --

19           THE COURT:  I mean, Ms. Schwartz, you might

20   decide, after taking one or two or three depositions, that

21   you got this; that because they're so far off the mark and

22   you might save yourself some time.  Who knows?  Right?  But

23   I think that now this has been very helpful to me and I

24   appreciate everyone's patience that we know what this is

25   going to look like.  You're going to get the list of names

1    and except for the narrow exception of a rebuttal witness,

2    which I think we're all having a hard time thinking about

3    what it's going to be, that's what we're going to do with

4    that.

5           The next category that I have that I wanted to

6    comment on in your letters was experts.

7           MS. DARCEY:  Yes.

8           THE COURT:  Okay.  I cannot imagine anything on

9    which I want to hear from an expert.  Okay?  This is my -- I

10   have to make this decision.  There's -- as far as I'm

11   concerned, there's no expert that I need to, want to, or

12   should hear from.  Okay?

13          MS. SCHWARTZ:  Okay.  Understood.

14          THE COURT:  So I think expert discovery comes out.

15   Okay?

16          MS. SCHWARTZ:  Jeanne, do you want to run down the

17   list of the other disputed issues?

18          THE COURT:  Do -- I'm detecting some facial

19   expressions over here.  You can take a moment on that point.

20       (Pause.)

21          MS. DARCEY:  Your Honor, we had included that

22   provision because we did have a couple of people we weren't

23   sure whether or not there would be fact witnesses or expert

24   witnesses and those were from our financial advisors who

25   were retained by the committee.  I believe we'll be putting

Page 79

1   them on as fact witnesses but I --

2            THE COURT:  But they won't be -- they may be

3   experts because they acted as experts in the case or because

4   they have expertise.  But they're not -- I'm not going to

5   take their testimony, for example, on why this was really,

6   really harder than any other case and therefore why it

7   should be a substantial contribution claim.

8            MS. DARCEY:  But I think that they -- there's

9   always a fine line between expert and fact in this case

10  because they will have seen the work of the committee

11  members.

12           THE COURT:  And they can tell me that --

13           MS. DARCEY:  And they --

14           THE COURT:  -- as a matter of fact.

15           MS. DARCEY:  -- but they will be testifying as to

16  the facts and it -- and we would then hope that you would

17  find that, you know --

18           THE COURT:  I'm not going to -- I am not going to

19  be qualifying anybody as an expert on big Chapter 11 cases.

20           MS. DARCEY:  Uh-huh.

21           MS. SCHWARTZ:  Or what the standard should be --

22           THE COURT:  Or what --

23           MS. SCHWARTZ:  -- or any of those things.

24           THE COURT:  That's me.

25           MS. DARCEY:  Right.

Page 80

1                    THE COURT:  So --

2                    MS. DARCEY:  That's Your Honor's determination.

3                    THE COURT:  Right.  So --

4                    MS. DARCEY:  I mean --

5                    THE COURT:  -- in no way limiting the testimony,

6       it's not going to come in as expert testimony.

7                    MS. DARCEY:  Okay.  And I think that that

8       ultimately was our conclusion.

9                    THE COURT:  Okay.

10                   MS. DARCEY:  We had -- we had put in provisions

11      with respect to expert witnesses because, at the time, we

12      were --

13                   THE COURT:  Okay.

14                   MS. DARCEY:  -- you know --

15                   THE COURT:  I mean, once we get down to it, if you

16      want to preserve that point for appeal, you can, you know,

17      qualify somebody --

18                   MS. DARCEY:  Uh-huh.

19                   THE COURT:  -- as a expert witness and seek to

20      offer them as an expert witness and I will rule at that

21      time.

22                   MS. DARCEY:  Okay.

23                   THE COURT:  Okay?  Alright.  Then I think there

24      was an additional issue over privilege?

25                   MS. DARCEY:  There was an issue over privilege,

Page 81

1    Your Honor, and also with electronically stored information,

2    the e-discovery and these two pretty much fall into the same

3    category.  We wanted to see what the discovery requests were

4    and then make a determination as to how we ultimately

5    comply.

6            Now with respect to privilege, as you know from

7    this case, our client serving on the committee for three and

8    a half to four years did receive tens of thousands of

9    documents.  Now they came principally from a handful of

10   sources, from their own counsel, or from Milbank or Klin

11   Emanuel (ph) or from the debtors or the debtor's counsel.

12   And we have to determine, at that point, what privileges may

13   exist or remain.  And, in fact at this point, I don't even

14   know what privileges may remain from materials received

15   directly from the debtors or not.

16           But tens of thousands of documents that would have

17   to be contained in a privilege log and that's just -- that

18   is extraordinary and extremely expensive.

19           So what we had put in our scheduling order was

20   after the discovery request and once we know what it is and

21   where we are going, then we could meet and confer with the

22   U.S. Trustee to determine what is an appropriate mechanic to

23   respond to that privilege issue.

24           THE COURT:  Well, this is a big issue, and we

25   really don't have today --

Page 82

1           MR. DARCEY:  Uh-huh.

2           THE COURT:  -- to run it to ground.

3           So we need -- if you want to go ahead and enter an

4    order and have a workaround for this for the moment, then

5    I'm happy to try to do that.  But I think we need to have a

6    session where we discuss this, because I also see that it

7    has implications for the presentation on the merits --

8           MR. DARCEY:  Uh-huh.

9           THE COURT:  -- of the case.  So similar to the

10   first hour we spent talking about this, it might be useful

11   for us to have a further conversation to tease out what the

12   real issues.  Because to me, there's a real issue here, as

13   opposed to simply a discovery issue.

14           MR. DARCEY:  Right.  And we make the same argument

15   with the U.S. Trustee with respect to the ESI, E discovery,

16   is that in any event, once we are served with discovery, and

17   we know the rules contemplate electronic -- production of

18   electronically stored information, but we will have to have

19   a meet and confer with the U.S. Trustee.

20           We are not avoiding that by putting something in

21   the scheduling order.  We will have to determine what are

22   appropriate search terms, what --

23           THE COURT:  Well, I'm going to make a different

24   suggestion to you.  Why don't we try to find some time where

25   we can continue this conversation --

Page 83

1           MR. DARCEY:  Uh-huh.

2           THE COURT:  -- in a more traditional discovery

3    conference setting.

4           MR. DARCEY:  Yes, that would be fine.

5           THE COURT:  I think it would be productive.  So

6    why don't you talk to each other and come up with some times

7    that would be mutually convenient for you.  I'm sure you

8    both have a lot of other things on your plate, and speak to

9    Mr. Lutkas, she knows my schedule, and then we can come back

10   and there's no need that I need to have a courtroom full of

11   people just waiting.

12          MS. SCHWARTZ:  But for the record, for the record,

13   Your Honor, just for the record, we don't think there's any

14   reason that there should be no privilege log produced, which

15   has been their position, not just let's wait and see.  It's

16   been, we're not going to -- there's not going to be anything

17   that's not going to be privileged, so it's ridiculous for us

18   to have to do a privileged log.

19          And the federal rules and the bankruptcy rules and

20   every single piece of litigation provides for procedures

21   pursuant to which each side gets to know what one side is

22   claiming as privileged, and for document discovery.

23          And secondly, it is beyond Cavil (ph) that they

24   have disputed having any aside protocol.  In today's day and

25   age with respect to -- how discovery is conducted for

Page 84

1    electronic discovery.  And what we did, we spent a good deal

2    of time to put that together, and I'm just really at a loss,

3    Your Honor.  I don't think it's appropriate, I think it's

4    completely inappropriate, and I think that in a discovery

5    with any discovery, particularly in a case of this size, you

6    must have a protocol.

7             MR. DARCEY:  And we agree.  We agree that there

8    will be and there must be a protocol.

9             THE COURT:  And I have the responsibility and the

10   authority to regulate the conduct of this litigation.  And

11   this litigation conduct needs a little regulation, so that's

12   what we're going to do at a conference to be scheduled.

13            MR. DARCEY:  Okay.

14            THE COURT:  All right?  So I would suggest that

15   you hold the order in abeyance, let's try to come up with a

16   date.  This week is pretty much done.  Next week if we can,

17   if schedules permit, and we'll go from there.

18            MR. DARCEY:  Okay.  Thank you, Your Honor.

19            THE COURT:  All right?  Thank you very much.

20            MS. SCHWARTZ:  Thank you very much, Your Honor.

21            THE COURT:  Okay.  Let's keep going.  I think the

22   next matter is Giant Stadium.

23            Thank you for your patience today.

24            MR. SLACK:  No problem.

25            THE COURT:  It's like the good old days, I guess,

Page 85

1   right?

2          MR. SLACK:  Yeah, we had many a time when these

3   went into the early afternoon and then took our quote lunch

4   breaks and came back, so.

5          The next matter on is Giant Stadium's motion to

6   consolidate and for related relief.  So it's their motion,

7   so I'm going to turn it over.

8          THE COURT:  Okay.  Good morning.

9          MR. SCHWARTZ:  Still good morning, Your Honor.

10         THE COURT:  Still good morning.

11         MR. SCHWARTZ:  Matthew Schwartz from Sullivan &

12  Cromwell for Giant Stadium.

13         As Your Honor may recall --

14         THE COURT:  Can I, and this is not a function of

15  the fact that I've been at this for two hours already, but

16  just let me -- let me just -- let's just go right to it

17  here.

18         MR. SCHWARTZ:  Sure.

19         THE COURT:  I just don't understand why my time is

20  being spent on this issue today.  I just -- I flat out don't

21  understand it.  We were in discovery at a later point, we'll

22  consolidate, we won't consolidate, it affects absolutely

23  nothing that's happening now.  I feel very strongly that I'm

24  being gamed by being somebody or another here, and I don't

25  see any -- I just don't understand why it is that I'm being

Page 86

1    asked or forced to make a decision on consolidation at this

2    point, nor do I see why I'm being asked or forced to make a

3    pronouncement about counterclaims.

4         I do not want to do anything that disrupts the

5    burden of proof, the order in which these issues ought to be

6    considered, compliance with the claims objection protocol,

7    and abridgement of anybody's rights to pursue matters in an

8    adversary.  I don't want to do any of that, and therefore, I

9    don't want to do anything, other than to just keep going.

10        And I just was really at a loss to understand why

11   you were doing what -- what's your purpose in seeking the

12   relief that you're seeking.

13        MR. SCHWARTZ:  Sure, Your Honor.  First of all, we

14   found it considering that these claims and the adversary

15   proceeding completely overlap.  They even cross-reference in

16   their objection to their claim, their adversary proceeding,

17   and they haven't identified a single hypothetical reason why

18   these two proceedings, as Your Honor said at the July 16th

19   conference, wouldn't be tried together, why they are

20   opposing this.

21        And it became clear to us why they were doing so.

22   When they wrote into this Court and said that our

23   counterclaims to the adversary proceedings are null and void

24   under the temporary litigation injunction, which we disagree

25   with, and we set forth the reason in our papers.  And that

Page 87

1    they want to be able to keep our claims process as a claims

2    process under the ADR proceedings.

3           So what they are arguing for, in effect, is the

4    right to proceed with their adversary complaint at the end

5    of discovery, not allow our counterclaims to go forward, and

6    use the ADR process to push Giant Stadium's claims some time

7    out into the future.

8           In other words, they would get to go first and

9    they would use their ADR process to push out a trial or a

10   hearing on our claims out into the future.  And that's the

11   only possible reason they're doing this, because again,

12   they've had our production for over four years.  They've had

13   productions from third parties, they've deposed our

14   principal witness, they've interviewed other witnesses, and

15   they cannot identify a single reason why we shouldn't follow

16   the normal course that courts always take, which is to

17   consolidate overlapping claims and adversary proceedings

18   together.

19          And it's our concern that when we get to the end

20   of discovery and I'll talk a little bit about discovery in a

21   second, that that's what we're going to face.

22          THE COURT:  But then I'll take you up on that

23   absolutely then.  At the end of discovery, there will be,

24   you know, a fork in the road, right.  So -- and if they take

25   it, you know so to speak, then we would have the ability to

Page 88

1   have the discussion at that point, and we don't have to do

2   it now.

3            Discovery is going to keep going no matter what on

4   everything, right?

5            MR. SCHWARTZ:  Well, let me -- yes, but discovery

6   could go slightly differently, for example, if we knew that

7   we were going to be doing this trial altogether come the

8   fall, or if we knew that we were going to be doing just the

9   adversary proceeding and not the counterclaims in the fall

10  and our claims some time beyond that, so.

11           THE COURT:  Then let's fix that.  I mean, let's

12  fix that.

13           MR. SCHWARTZ:  So that's what we're asking for,

14  Your Honor.

15           THE COURT:  No, but I'm not going to fix it by

16  making a decision on consolidation now.  I'm going to fix it

17  by saying that to the extent that anybody is resisting or

18  pursuing discovery on the assumption one way or the other,

19  let's get it -- we're just going to get it all done on

20  everything.

21           MR. SCHWARTZ:  Sure, and I understand that, Your

22  Honor, but for example, we're working with experts to talk

23  about the valuation of the swaps, which will be at issue --

24           THE COURT:  Sure.

25           MR. SCHWARTZ:  -- regardless of whether the claims

1    are consolidated or -- with the adversary complaint or not.

2              THE COURT:  Right.

3              MR. SCHWARTZ:  However, the valuation issue in our

4    expert's report will be different and it'll be presented

5    differently if we are only talking about the adversary

6    claims, which is Lehman's valuation, or if we're talking

7    about a trial on both our claims and the adversary

8    proceedings, in which case, our expert report will put forth

9    information both on our valuation and on Lehman's purported

10   valuation.

11             THE COURT:  Then let's just change the definition

12   of the end of discovery and have that something that can be

13   decided once it's determined whether or not there's going to

14   be one trial or two.

15             I mean, there -- all of these issues are going to

16   have to be resolved.

17             MR. SCHWARTZ:  Sure, Your Honor.  And the normal

18   course, though, and Lehman has actually asked for this

19   themselves, in the Numora (ph) case and Judge Peck did this

20   in the Citibank case, and we cited a whole bunch of cases,

21   the normal course under Rule 42(a) is to consolidate the

22   cases for all purposes, as soon as you've identified a

23   common issue of law or fact.

24             And that's simply what Giant Stadium is asking

25   for.  We're asking for the normal purpose, so that we don't

Page 90

1    get through seven months of litigation, and then have to

2    fight off the idea that we need to wait for years while they

3    put us through the ADR process while they get to go first.

4            We're simply asking for what the default rule is,

5    and they haven't identified a single reason why we shouldn't

6    follow that default rule, a single possible fact that could

7    arise during discovery as to why you wouldn't try these

8    cases together as Your Honor suggested you wanted to back at

9    the July hearing.

10           THE COURT:  All right.  Let me talk to Mr. Slack.

11           So this is about going through ADR.

12           MR. SLACK:  I'm at a loss to understand what Mr.

13    Schwartz was talking about, and frankly his ruminations

14    about what Lehman may do.  We've never said any of that.  I

15    mean, that's all ruminations about what's going on whatever

16    in his head.

17           So the fact is that we're in the middle of

18    discovery and the parties have identified about 40 or more

19    witnesses, we may not get to all of those, but that's what

20    the parties have identified --

21           THE COURT:  Right.

22           MR. SLACK:  -- to take depositions.  None of those

23    have taken place.

24           There was one deposition in 2004 discovery early

25    on and even that witness we've gotten additional documents

Page 91

1    from that witness and additional information, so we're going

2    to end up having to take that witness over again as well.

3           So discovery is right in the middle.  We're still

4    getting documents.  We are still getting documents from the

5    NFL, from Goldman Sachs, from all the people who Giant

6    Stadium has been coordinating with, so we do not have all

7    the documents yet.  And those are going to be critical to

8    our taking the depositions.  And as soon as we get all

9    those, the parties are going to launch into it.

10          There's been a lot of talk about the Numora case,

11   and the position that Lehman took in the Numora case.

12   What's more important about the Numora case is what the

13   judge did, not what Lehman's position is.  And what Judge

14   Peck did in a very similar situation was, he said, I'm going

15   to consolidate those matters for pretrial, but I'm going to

16   defer the issue of whether to consolidate for trial until

17   after discovery.

18          And so the order that was actually issued in the

19   Numora case, and I'm reading from paragraph 7 of the order,

20   says, "The determination of whether evidentiary hearings and

21   trials held with respect to the Numora International

22   proceeding, the Numora Securities' proceeding, and the

23   Numora Global Financial Products proceeding should also be

24   consolidated as hereby expressly deferred to such time as

25   the Court may direct.

Page 92

1        "Each of the parties --" and I won't read the, you

2   know, proceedings again, "-- reserves its respective rights

3   concerning the consolidation of the proceedings for trial

4   and hearings and the Court retains its authority to order

5   separate evidentiary hearings --"

6        THE COURT:  So let me go down the path that I was

7   being led down before, because the suggestion was that --

8   because I -- where I started was, I feel like I'm being

9   gamed here, okay, and I don't mean that you're doing that in

10  a mean spirited way.  It's more a comment on the fact that I

11  don't feel comfortable that I understand everything that's

12  going on tactically and strategically, and I don't want to

13  make any unintentional --

14        MR. SLACK:  Right.

15        THE COURT:  -- mistakes.

16        So the point was made that what this is really

17  about was we're going to get to trial, and they're not going

18  to be able to pursue their counterclaims, and they're going

19  to have to go off and be shunted into an ADR process.

20        So I guess we need a clarification over whether or

21  not Lehman is going to be pursuing ADR on these -- I'll call

22  it these facts.

23        MR. SLACK:  So I can tell you that --

24        THE COURT:  Because you folks don't really look

25  like you're good candidates for discussions of any kind.

Page 93

```
 1              MR. SLACK:  Yeah.  So what I can tell you is,

 2    there's been absolutely no discussion along the lines that

 3    Mr. Schwartz has indicated.  We expect, frankly, that there

 4    will need to be at least some type of coordination at trial,

 5    and we expect and would want for efficiency purposes, some

 6    type of coordination at trial.

 7              Whether the cases should be consolidated for all

 8    purposes actually is a very different question than whether

 9    at trial and we expect at trial that the Judge may very well

10    -- you, may decide that what you should do is --

11              THE COURT:  Thank you for the vote for the

12    confidence.

13              MR. SLACK:  Yes, yes.  You should -- you know,

14    that you will decide to hear the matters at the same time

15    but not consolidate them.

16              THE COURT:  I mean, there's -- to go to that

17    point, there's at the same time versus Monday through Friday

18    on some set of issues on one week, and then the next week --

19              MR. SLACK:  Right.

20              THE COURT:  -- immediately rolling into the next

21    issues.  But we're not doing this twice.

22              MR. SLACK:  Yeah, I don't think anybody wants to

23    do -- we certainly don't want to do that.

24              THE COURT:  We're not -- once is bad enough, okay,

25    so we're not going to do it twice, right?
```

1            MR. SLACK:  Right.

2            THE COURT:  But I just don't want to have any

3    notion that, you know, we're going down this path, and then,

4    you know, Lehman's going to say to borrow their words, you

5    know, they have to fight with one hand tied behind their

6    back because all that stuff has to go into ADR.  That's not

7    what's in my mind that we're doing.

8            MR. SLACK:  And that's not in our mind either.

9            THE COURT:  Okay.

10           MR. SLACK:  We have had over the years, a number

11   of discussions with Giant Stadium including ADR which we did

12   outside of the typical ADR process consensually.  I would

13   tell Your Honor that if we do ADR here, we are happy to do

14   it only on a consensual basis, where there's not going to be

15   an issue here.

16           As I said, we've worked --

17           THE COURT:  Well --

18           MR. SLACK:  -- we've worked on it.

19           THE COURT:  -- maybe call up Judge Peck and see if

20   he wants to have you pay him for the services he used to

21   give you for free.

22           MR. SLACK:  It would be very interesting to have

23   Judge Peck as our mediator.

24           So again, we've never suggested any of this.  This

25   is not something that we've ever suggested.

Page 95

1          THE COURT:  So --

2          MR. SLACK:  The only thing we've said is that

3   there's actually going to be more trouble if we consolidate

4   for all purposes without knowing what that is at this point

5   before discovery goes forward.

6          THE COURT:  Can you address the point that was

7   made about the nature and scope of the expert witness

8   reports, depending upon what the consolidation looks like?

9          MR. SLACK:  So I don't understand that, but you

10  know, I guess I'm not in the meetings with his experts.

11  What I can tell you is that, we're going to have an expert

12  report on valuation.  And part of that, whether it's in the

13  claims process or the adversary proceeding, you know, our

14  valuation expert is going to say that, for example, that the

15  use of a short-term interest rate, that never changes over

16  38 years to be the benchmark for what Lehman is going to

17  have to pay on the swaps, that's unreasonable.  And it's

18  unreasonable whether you're dealing with the adversary

19  proceeding, or whether you're dealing with the claims

20  process.

21          And at the end of the day, the valuation of the

22  swap is going to be the valuation of the swap.  So I'm at a

23  loss to understand how it is going to affect certainly my

24  witness.  Maybe I'm not, you know, as smart as these guys,

25  but my witness is going to have to talk about the valuation

1    of the swap, and so I don't see how it's going to change.

2    And maybe Mr. Schwartz can explain to me how it's going to

3    change, but I don't see how it's going to change.

4            THE COURT:  But can't we kick -- I mean, what I'm

5    trying to do is keep the playing field level and not

6    prejudice anybody's rights going forward.  So as long as we,

7    you know, kick the can down the road a bit, based on you're

8    telling me that there aren't any ADR tricks up your sleeve,

9    right --

10           MR. SLACK:  Right.

11           THE COURT:  -- and based on the fact that y'all

12   have a lot of discovery work left to do, we can agree to --

13   I'll carry the motion, if you will, and at various points

14   down the road, as you proceed with all deliberate speed

15   through discovery, and as you begin to approach the end of

16   discovery.  And this issue, for example, over the expert

17   report becomes more acute or resolves itself, then you'll

18   come back in.  But I don't want to do today something that

19   feels premature.  And it feels premature, as long as I have

20   the assurance that I'm not somehow stepping into a trap that

21   I'm unaware of, or unintentionally prejudicing anybody's

22   rights.

23           So to me doing nothing at this juncture, beyond

24   what we've already done which is agreed that we're going to

25   have coordinated and consolidated pretrial seems to be the

Page 97

1   right thing to do.

2          MR. SLACK:  I agree.

3          THE COURT:  Let me see if I've persuaded Mr.

4   Schwartz.

5          MR. SCHWARTZ:  Your Honor, with Your Honor's

6   statement that we're going to be doing this once and not

7   twice with Mr. Slack's statement that any ADR process is

8   going to be voluntary, I think we're satisfied that the

9   concerns that we had for why they didn't want to follow the

10  normal rules of 42(a), and why they said that our

11  counterclaims are void, is resolved.

12          I just want to talk quickly about the expert

13  report --

14          THE COURT:  Sure.

15          MR. SCHWARTZ:  -- because I think that might

16  affect the timing of when the Court -- I don't know if the

17  Court is going to deny the motion with leave to renew it, or

18  simply keep it on the calendar and we can bring it back up

19  before the Court at an appropriate time.

20          THE COURT:  I can just leave it on the calendar,

21  just adjourn it without a date.

22          MR. SCHWARTZ:  Okay.  So, for example, Your Honor,

23  if we just proceed with the adversary proceeding, which Your

24  Honor has now said we're not going to do, so this is a

25  little bit moot, but I want to explain the thinking behind

Page 98

1    it.

2              It would only be the offensive claim on Lehman's

3    part, and it would only be whether or not Giant Stadium is

4    liable to Lehman.  And it would only then be if Giant

5    Stadium is liable to Lehman is Lehman's valuation of Giant

6    Stadium's liability reasonable.

7              That would be what our expert would be talking

8    about.  If we are doing them at the same time as Your Honor

9    has said we would, then it's not only a question about

10   whether or not Giant Stadium is liable to Lehman, but the

11   question about whether or not Lehman is liable to Giant

12   Stadium.

13             And if Lehman is liable to Giant Stadium, was

14   Giant Stadium's valuation that it's put into this Court

15   reasonable.  And so the expert will be talking about two

16   things rather than simply one thing.

17             So we'd like to at least talk about the issue of

18   consolidating, you know, significantly in advance of when

19   the expert reports are due, so that we can have enough time.

20   And I can talk with Mr. Slack about when that would be.

21             THE COURT:  Sure.

22             MR. SCHWARTZ:  You know, we have a schedule and we

23   can probably work out a timing on that, Your Honor.

24             But, you know, as it is, we do plan on putting in

25   motion papers on the issue of valuation because we think

Page 99

1   that the debtors are collaterally estopped from the Barclays

2   litigation, or about arguing that the Giant Stadium

3   valuation is unreasonable.

4          If you look at the Barclays litigation, one of the

5   assets that Barclays purchased from LBI were the Giants'

6   bonds, and that was a specific asset that was at issue in

7   the Barclays litigation.  And if you look at the valuation

8   of those bonds that Barclays bought from LBI and Judge

9   Peck's approval of the reasonableness of that valuation, you

10  actually come to the conclusion that Giants Stadium's claims

11  in this litigation are conservative and less than they

12  should be, based off of what Judge Peck said was a

13  commercially reasonable value for the price of those bonds

14  at the time.

15         But, you know, we'll get into that, we'll get into

16  why the debtor's arguments as to, you know, not using the

17  same rate going forward are wrong as an economic matter and

18  wrong as a financial reality matter.  We'll get into all

19  that, you know, before Your Honor, either on summary

20  judgment papers or on trial.

21         THE COURT:  Okay.  I get -- you still have to

22  comply with 756-1 though with respect to summary judgment.

23         MR. SCHWARTZ:  Of course, Your Honor.

24         THE COURT:  Okay.  So where it's left is that the

25  motion is going to be adjourned without date, you're going

Page 100

1    to meet and confer on some sort of timing with respect to

2    heads-up on the expert aspect once you get closer to that

3    milestone.  All right?  This has been very helpful for me,

4    so.

5              MR. SCHWARTZ:  Thank you, Your Honor, and short

6    too.

7              THE COURT:  Thank you.

8              MR. SLACK:  Relatively so.

9              THE COURT:  Relatively so.  Okay.  Let's keep

10   going, please.  The next matter I believe the last matter is

11   Maria Mendez.

12             MR. MARGOLIN:  Good morning, Your Honor.

13             THE COURT:  Good morning.

14             MR. MARGOLIN:  Jeffrey Margolin, Hughes Hubbard &

15   Reed.

16             THE COURT:  Sorry to keep you so long today.

17             MR. MARGOLIN:  Thank you for taking us.  We've cut

18   -- we've pared down the LBI portion of the calendar

19   representing Mr. Giddens.  Ms. Mendez's motion, it is their

20   motion.  Ms. Diers from Hughes Hubbard will be handling it

21   for the trustee.

22             THE COURT:  Okay.

23             MR. GREENBERG:  Good morning, Your Honor.

24             THE COURT:  Good morning.

25             MR. GREENBERG:  Yitzhak Greenberg, Bronstein,

Page 101

1    Gewirtz & Grossman on behalf of Ms. Mendez.

2              THE COURT:  Give me your name again.

3              MR. GREENBERG:  Yitzhak Greenberg.

4              THE COURT:  Okay.  Mr. Greenberg, were you -- you

5    were the counsel that Ms. Mendez hired?

6              MR. GREENBERG:  In February.

7              THE COURT:  In February.  So what have you been

8    doing since then?

9              MR. GREENBERG:  We filed a motion with -- we

10   didn't file, we mailed Weil a motion because we -- she had

11   thought that her claim was LBIH (sic) claim, based on

12   conversations with Epiq and other people.

13             THE COURT:  Ms. Mendez learned when she was

14   talking to Epiq that her LBI claim had been expunged, right?

15             MR. GREENBERG:  Right, correct, Your Honor.

16             THE COURT:  When did that occur?

17             MR. GREENBERG:  It occurred in July.

18             THE COURT:  It occurred in July of?

19             MR. GREENBERG:  2013.

20             THE COURT:  2013.

21             UNIDENTIFIED:  August 2013.

22             MR. GREENBERG:  August 2013.

23             THE COURT:  August 2013.  Okay.

24             So it's now January of 2015 and a motion was filed

25   in December of 2014.

Page 102

1            MR. GREENBERG:  The motion was filed in November.

2            THE COURT:  November, okay.

3            MR. GREENBERG:  After we learned from Weil that

4    the claim wasn't against LBIH, we discussed filing -- we

5    discussed filing the motion for LBI --

6            THE COURT:  So are -- I'm -- just -- it's so

7    confusing.  Are you arguing that Ms. Mendez didn't think it

8    was a big deal that the LBI claim had been expunged because

9    she had been led to believe that her claim, in fact, was

10   against LBHI?

11           MR. GREENBERG:  Yes, Your Honor.  Because based on

12   our conversations with Epiq, she thought that a claim

13   against LBI was only for securities and it wasn't an

14   employee claim.  And I know that in some -- I know sometimes

15   in where there's a -- in the SIPC cases, it's unclear

16   whether -- who the actual employer was, even when there's --

17   even when -- even in the MF Global case, they don't even

18   know when the SIPA -- when the check was cut and the

19   agreement was entered into by the non-SIPA entity, they said

20   it was a SIPA claim, so just at times it's unclear who the

21   employer was.  And Ms. Mendez was very -- felt also from her

22   conversations with Weil that because they had scheduled her,

23   that her claim really belonged against LBIH, and initially

24   when she filed, I don't know if she realized that there was

25   a distinction.

Page 103

1          THE COURT:  So but -- okay.  So that's one set of

2   questions and I'm just exploring around here, I'm not really

3   taking testimony obviously.  But then you became involved in

4   February the declaration at Docket 10352, declaration,

5   there's a typo, but it means 2014, it says 2104 after an

6   extension extensive search for an attorney, I retained an

7   attorney to file a late proof of claim in the LBH case.

8          And then other things happened.  I guess my point

9   is that nothing -- nine months went by before something

10  happened.  That your -- the immediate response wasn't, you

11  know, oh, dear, I better file a motion right away, I've got

12  to file a letter with the Court right away, I better do

13  something right away.  Nine months went by when -- and

14  nothing happened.

15         MR. GREENBERG:  I mean, there was that we went to

16  Weil and -- meaning that we did try, because we thought it

17  was with Weil.  I think in May we had sent them a draft

18  motion.  So we put together the motion and it was a slight

19  delay -- there was a slightly different, but, yes, Your

20  Honor, the time did go by.

21         And also in September, we did send them -- we did

22  send Lehman -- LBI a draft motion in September.  And then we

23  just --

24         THE COURT:  I'd like to take a break, and talk to

25  the parties in chambers for a few minutes.  All right?

Page 104

1          Ms. Mendez, if you would remain --

2      (Recessed at 12:06 p.m.; reconvened at 12:10 p.m.)

3          THE COURT:  Okay.  We're going to go back on the

4   record.  Unfortunately, due to the length of the arguments

5   this morning that was unanticipated by us, I have to go to a

6   judge's meeting, so I can't continue this hearing now.  So

7   we're going to carry this to another hearing date.  I would

8   ask the parties to contact Ms. Lutkas in my chambers to

9   determine when it should be put back on the calendar.

10         So I apologize very much for the long delay, we

11  try to manage the calendar so that I have enough time, but

12  I'm simply out of time today.  All right.  Thank you very

13  much.  There's nothing else on the calendar, correct?

14         UNIDENTIFIED:  That's correct, Your Honor.

15         THE COURT:  Okay.  Thank you very much.  Have a

16  good day.

17  (Proceedings concluded at 12:10 PM)

18                     * * * * *

19

20

21

22

23

24

25

Page 105

1                         CERTIFICATE

2    We, Nicole Yawn, Pamela Skaw, and Sheila G. Orms, certify

3    that the foregoing is a true and accurate transcript from

4    the official electronic sound recording.

5    *Nicole Yawn*  Digitally signed by Nicole Yawn
                    DN: cn=Nicole Yawn, o=Veritext, ou,
                    email=digital@veritext.com, c=US
6    _____  Date: 2015.01.16 15:50:54 -05'00'

7    NICOLE YAWN

8    *Pamela A. Skaw*  Digitally signed by Pamela A. Skaw
                       DN: cn=Pamela A. Skaw, o=Veritext,
                       ou, email=digital@veritext.com, c=US
9    _____  Date: 2015.01.16 15:51:34 -05'00'

10   PAMELA SKAW

11   *Shelia G. Orms*  Digitally signed by Shelia G. Orms
                       DN: cn=Shelia G. Orms, o=Veritext,
                       ou, email=digital@veritext.com, c=US
12   _____  Date: 2015.01.16 15:52:15 -05'00'

13   SHEILA ORMS, APPROVED TRANSCRIBER

14

15   DATED:  January 9, 2015

16

17

18

19

20

21

22   Veritext

23   300 Old Country Road

24   St. 330

25   Mineola, NY 11501