AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    For value received, the adequacy and sufficiency of which are hereby acknowledged, **The Värde Fund IX-A, L.P.** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **J.P. Morgan Securities plc** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the applicable percentage specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to Proof of Claim Number 55728 (the "Proof of Claim") filed by or on behalf of Seller's predecessor in interest against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (SCC) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto. For the avoidance of doubt, Purchaser does not assume and shall not be responsible for any obligations or liabilities of the Seller related to or in connection with the Transferred Claims or the Proceedings.

2.    Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relate to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer of Claim; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors of the same class and type as the Purchased Claim; (g) Seller has delivered to Purchaser true and correct copies of the (X) Notices of Proposed Allowed Claim Amount dated August 24, 2011, which relate to the Proofs of Claim (the "Notices"), and there have been no revisions, amendments or modifications thereto, and no action was undertaken by Seller with respect to the Notices and (Y) distribution notices from the Debtor provided in connection with the Debtor distributions, and there have been no revisions, amendments or modifications thereto; (h) (X) with respect to each Purchased Claim, Seller has received (I) the initial distribution on or about April 17, 2012, in the amount set forth in Schedule 2 (the "Initial LBHI Distribution"), (II) the second distribution on or about October 1, 2012, in the amount set forth in Schedule 2 (the "Second LBHI Distribution"), (III) the third distribution on or about April 4, 2013, in the amount set forth in Schedule 2 (the "Third LBHI Distribution"); (IV) the fourth distribution on or about October 3, 2013, in the amount set forth in Schedule 2 (the "Fourth LBHI Distribution"); (V) the fifth distribution on or about April 3, 2014, in the amount set forth in Schedule 2 (the "Fifth LBHI Distribution"); (VI) the sixth distribution on or about October 3, 2014, in the amount set forth in Schedule 2 (the "Sixth LBHI Distribution" and, together with the Initial LBHI Distribution, the Second LBHI Distribution, the Third LBHI Distribution, the Fourth LBHI Distribution and the Fifth LBHI Distribution, the "LBHI Distributions") and (Y) (I) the initial distribution on or about May 8, 2013, in the amount set forth in Schedule 2 (the "Initial LBT Distribution"); (II) the second distribution on or about October 24, 2013, in the amount set forth in Schedule 2 (the

"Second LBT Distribution"); (III) the third distribution on or about April 28, 2014, in the amount set forth in Schedule 2 (the "Third LBT Distribution") and (IV) the fourth distribution on or about October 28, 2014, in the amount set forth in Schedule 2 by Lehman Brothers Treasury Co. B.V. with respect to the Purchased Securities (the "Fourth LBT Distribution" and, together with the Initial LBT Distribution, the Second LBT Distribution and the Third LBT Distribution, the "LBT Distributions"); (i) other than the LBHI Distributions, Seller has not received any payment or distribution, whether directly or indirectly, on account of the Purchased Claims; and (j) other than the LBT Distributions, Seller has not received any payment or distribution, whether directly or indirectly, on account of the Purchased Security.

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.      Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser after the January 6, 2015 trade date. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer of Claim supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of each Purchased Security.

6.      Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer of Claim, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.      Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed as set forth below.

**THE VÄRDE FUND IX-A, L.P.**
BY VÄRDE FUND IX G.P., LLC, ITS GENERAL PARTNER
BY VÄRDE PARTNERS, L.P., ITS MANAGING MEMBER
BY VÄRDE PARTNERS, INC., ITS GENERAL PARTNER

By: _____
Name: __Scott T. Hartman__
Title: __Managing Director__
Date: __2-19- 2015__

Address:
c/o Värde Partners, Inc.
8500 Normandale Lake Blvd.
Suite 1500
Minneapolis, MN  55437
ATTN: Edwina P.J. Steffer

**J.P. MORGAN SECURITIES PLC**

By:  J.P. Morgan Securities LLC, as agent for
     J.P. Morgan Securities plc

By: _____
Name: __Christopher Cestaro__
Title: __Authorized Signatory__
Date: __2/19/15__

Address:
J.P. Morgan Securities LLC, as agent for
J.P. Morgan Securities plc
Mail Code: NY1-M138
383 Madison Avenue – Floor 37
New York, New York 10179
ATTN: Jeffrey L. Panzo

Schedule 1

Purchased Claim:

The allowed amount of $2,612,254.45 under the Proof of Claim as it relates to CUSIP/ISIN XS0307348234, including all accrued interest, fees and other recoveries related thereto.

Lehman Programs Security to which Transfer Relates:

| Description of Security | ISIN/CUSIP | Issuer | Guarantor | Principal/Notional Amount | Coupon | Maturity | Allowed Amount of Claim Transferred Hereunder |
|---|---|---|---|---|---|---|---|
| **LEHMAN BROTHERS TREASURY CO. B.V.** Issue of EUR 115,000,000 Zero Coupon Notes due August 2013 Under the U.S.$100,000,000 Euro Medium-Term Note Program | XS0307348234 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | EUR 2,318,000.00 | Zero Coupon | 17 August 2013 | $2,612,254.45 |

Schedule 2

LBHI Distribution Amounts and LBT Distribution Amounts

| Distributions | LBHI Distributions | LBT Distributions |
|---|---|---|
| Initial LBHI Distribution | $94,282.24 | |
| Second LBHI Distribution | $63,623.52 | |
| Third LBHI Distribution | $80,361.17 | |
| Fourth LBHI Distribution | $95,277.20 | |
| Fifth LBHI Distribution | $103,493.23 | |
| Sixth LBHI Distribution | $77,671.59 | |
| Initial LBT Distribution | | €267,797.68 |
| Second LBT Distribution | | €104,912.34 |
| Third LBT Distribution | | €112,762.15 |
| Fourth LBT Distribution | | €93,225.71 |

KL2 2882498.2
119-1784/AGR/4556453.2