Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

4    In re:

5

6    LEHMAN BROTHERS HOLDINGS INC.,

7    et al.,                          Case No. 08-13555(SCC)

8             Debtors.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10   In re:

11

12   LEHMAN BROTHERS INC.,            Case No. 08-01420(SCC)

13                                    (SIPA)

14            Debtor.

15   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

16                    U.S. Bankruptcy Court

17                    One Bowling Green

18                    New York, New York

19

20                    January 22, 2015

21                    10:05 AM

22

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

 1    Adversary proceeding: 08-01420-scc Lehman Brothers, Inc.

 2    Doc. # 10810 Motion Pursuant to Federal Rule of Bankruptcy

 3    Procedure 9019(a) for Entry of an Order Approving Settlement

 4    Among the Trustee, Pacific Investment Management Company,

 5    LLC, and Participating Counterparties

 6

 7    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

 8    Doc. #7666 One Hundred Sixty-Second Omnibus Objection to

 9    General Creditor Claims (No Liability Claims)

10

11    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

12    Doc. #8246 Two Hundred Seventh Omnibus Objection to General

13    Creditor Claims (No Liability Claims)

14

15    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

16    Doc. #5863 Thirty-Seventh Omnibus Objection to General

17    Creditor Claims (No Liability Claims)

18

19    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

20    Doc. #5889 Forty-First Omnibus Objection to General Creditor

21    Claims (No Liability Claims)

22

23    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

24    Doc. #5904 Forty-Fifth Omnibus Objection to General Creditor

25    Claims (No Liability Claims)

Page 3

1    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

2    Doc. #6132 Sixty-Third Omnibus Objection to General Creditor

3    Claims (No Liability Claims)

4

5    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

6    Doc. #6145 Sixty-Fourth Omnibus Objection to General

7    Creditor Claims (No Liability Claims)

8

9    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

10   Doc. #6556 Eighty-Seventh Omnibus Objection to General

11   Creditor Claims (No Liability Claims)

12

13   Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

14   Doc. #6728 One Hundred First Omnibus Objection to General

15   Creditor Claims (Employee Equity Claims)

16

17   Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

18   Doc. #7158 One Hundred Thirty-First Omnibus Objection to

19   General Creditor Claims (Employee Equity Claims)

20

21   Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

22   Doc. #7159 One Hundred Thirty-Second Omnibus Objection to

23   General Creditor Claims (Employee Claims)

24

25

Page 4

1    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

2    Doc. #7526 One Hundred Fifty-Fourth Omnibus Objection to

3    General Creditor Claims (Employee Claims)

4

5    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

6    Doc. #7832 One Hundred Seventy-First Omnibus Objection to

7    General Creditor Claims (Employee Claims)

8

9    Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

10   Doc. #8639 Two Hundred Twenty-Seventh Omnibus Objection to

11   General Creditor Claims (Employee Claims)

12

13   Adversary proceeding: 08-01420-scc Lehman Brothers Inc.

14   Doc. #9161 Two Hundred Forty-Second Omnibus Objection to

15   General Creditor Claims (Employee Claims)

16

17   08-13555-scc Lehman Brothers Holdings, Inc.

18   Doc. #24762 Omnibus Application of (I) Individual Members of

19   Official Committee of Unsecured Creditors and (II) Indenture

20   Trustees Pursuant to Section 1129(a)(4), Or, Alternatively,

21   Sections 503(b)(3)(D) and 503(b)(4) of Bankruptcy Code for

22   Payment of Fees and Reimbursement of Expense

23

24

25   Transcribed by:  Sherri L. Breach

1    A P P E A R A N C E S :

2    STAMELL & SCHAGER, LLP

3         Attorney for Acerra Group Claimants

4         555 Fifth Avenue, 14th Floor

5         New York, New York 10017

6

7    BY:  RICHARD J. SCHAGER, JR., ESQ.

8         ANDREW R. GOLDENBERG, ESQ.

9

10   HUGHES HUBBARD & REED LLP

11        Attorneys for SIPA Trustee

12        One Battery Park Plaza

13        New York, New York 10004-1482

14

15   BY:  ROBERT B. FUNKHOUSER, ESQ.

16        KAREN M. CHAU, ESQ.

17        STEWART MITCHELL, ESQ.

18

19   Securities Investor Protection Corporation

20        Attorneys for SiPC

21        805 15th Street, N.W., Suite 800

22        Washington, D.C. 20005

23

24   BY:  KENNETH J. CAPUTO, ESQ.

25

Page 6

1   BECKER, GLYNN, MUFFLY, CHASSIN & HOSINKSI, LLP

2        Attorneys for creditors

3        299 Park Avenue

4        New York, New York 10171

5

6   BY:  CHESTER B. SALOMON, ESQ.

7

8   CLIFFORD CHANCE US, LLP

9        Attorneys for PIMCO

10       31 West 52nd Street

11       New York, New York 10019

12

13  BY:  SARAH NYE CAMPBELL, ESQ.

14

15  ARENT FOX, LLP

16       Attorneys for Vanguard

17       1675 Broadway

18       New York, New York 10019

19

20  BY:  GEORGE P. ANGELICH, ESQ.

21

22

23

24

25

Page 7

```
 1   COVINGTON & BURLING, LLP

 2        Attorneys for unspecified

 3        The New York Times Building

 4        620 Eighth Avenue

 5        New York, New York 10018

 6

 7   BY:  DIANNE COFFINO, ESQ.

 8

 9   LOEB & LOEB, LLP

10        Attorneys for Wilmington Trust

11        345 Park Avenue

12        New York, New York 10154

13

14   BY:  WALTER H. CURCHACK, ESQ.

15

16   KLEINBERG KAPLAN

17        Attorneys for Elliott Management Corp.

18        551 Fifth Avenue

19        New York, New York 10176

20

21   BY:  MATTHEW J. GOLD, ESQ.

22

23

24

25
```

Page 8

```
1    SULLIVAN & WORCESTER, LLP

2         Attorneys for US Bank National Association as Trustee

3         One Post Office Square

4         Boston, Massachusetts 02109

5

6    BY:  JEANNE P. DARCEY, ESQ.

7

8    STROOCK & STROOCK & LAVAN, LLP

9         Attorneys for Mizuho Bank, LTC

10        180 Maiden Lane

11        New York, New York 10038

12

13   BY:  SHERRY MILLMAN, ESQ.

14

15   TOGUT, SEGAL & SEGAL, LLP

16        Attorneys for Lehman Trust

17        One Penn Plaza

18        New York, New York 10119

19

20   BY:  FRANK A. OSWALD, ESQ.

21

22

23

24

25
```

1    U.S. Department of Justice

2         Attorneys for U.S. Trustee

3         201 Varick Street, Suite 1006

4         New York, New York 10014

5

6    BY:  SUSAN D. GOLDEN, ESQ.

7         ANDREA B. SCHWARTZ, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 10

```
 1                    P R O C E E D I N G S
 2              THE COURT:  You can have a seat.
 3              All right.  How is everyone today?
 4              MR. FUNKHOUSER:  Fine, Your Honor.
 5              THE COURT:  Ready when you are.
 6              MR. FUNKHOUSER:  I'm Rob Funkhouser from Hughes,
 7    Hubbard & Reed for the SIPA trustee for Lehman Brothers,
 8    Inc.
 9              THE COURT:  Okay.
10              MR. FUNKHOUSER:  I'm very pleased to report that
11    the first item on the agenda is an uncontested matter.
12              THE COURT:  Yes.
13              MR. FUNKHOUSER:  -- the trustee's 9019 motion to
14    approve the settlement with the PIMCO claimants.
15              THE COURT:  Okay.
16              MR. FUNKHOUSER:  This resolves the last major
17    disputed item with respect to SIPA customer claims on terms
18    favourable to the LBI estate and to the creditors.  It is
19    the product of months of extensive discussions and
20    reconciliation work, including extensive exchanges with the
21    PIMCO representatives and -- at Clifford Chance.
22              The declarant for the motion, Aleni Theadosio (ph)
23    is here in the courtroom.  She played a key role in the
24    reconciliation process over the many months and would be
25    happy to answer any questions on the declaration.
```

Page 11

1           SIPC's representative, Ken Pudo (ph) is also here

2    and can attest to SIPC's support for an approval of this

3    settlement.

4           As set forth in the motion the settlement, if

5    accepted, will resolve 81 claims asserting customer status

6    for collateral and meets all of the criteria for the Iridium

7    factors for settlement as set forth in length in the motion.

8           In addition to court approval, the settlement is

9    contingent on acceptance and participation of the PIMCO

10   claimants so that if contrary to everyone's expectations

11   there's some clients that don't decline, we'll have the

12   opportunity to start over.  The expectation is that everyone

13   will --

14          THE COURT:  Okay.

15          MR. FUNKHOUSER:  -- be accepting the settlement

16   and we're very pleased with it and move for its approval.

17          THE COURT:  Okay.  The -- with respect to the

18   transferred claims, there's a procedure by which the trustee

19   can proceed as long as it agrees with the purchaser of the

20   transferred claims on substantially similar terms, correct?

21          MR. FUNKHOUSER:  That's correct.  That's correct.

22          THE COURT:  I guess I'm just pausing on the

23   substantially similar.  It seems to me that I'm just -- I'm

24   recognizing that I'm approving some leeway without there

25   being a real kind of delineation of what that is.

Page 12

1              MR. FUNKHOUSER:  Well, the full -- the numbers

2      that we identify in the motion and that are set forth in the

3      declaration about the overall impact on all of the -- on the

4      reserves and the release of the reserves that will result

5      from treatment of these in accordance with the proposed

6      settlement includes the transferred claims.

7              THE COURT:  Right.

8              MR. FUNKHOUSER:  So that the overall effect of the

9      settlement applies to all 81 claims --

10             THE COURT:  Okay.

11             MR. FUNKHOUSER:  -- and the transferred claims are

12     included in that 81 --

13             THE COURT:  Okay.  All right.

14             MR. FUNKHOUSER:  The $21 million payment by the --

15             THE COURT:  I see what you're saying.

16             MR. FUNKHOUSER:  -- by the estate includes those

17     claims.  If for some reason they don't participate it will

18     be less than $20 million.

19             THE COURT:  Okay.  I got you.

20             The other thing was the mutual release.  That was

21     a negotiated part of the settlement?

22             MR. FUNKHOUSER:  That's correct, Your Honor.

23             THE COURT:  Because usually there's not a release

24     going the other way.

25             MR. FUNKHOUSER:  With respect to the general

Page 13

1    creditor claims we have had mutual releases on -- on a

2    number of the settlements in situations where there are

3    transactions in which the LBI estate could conceivably have

4    a claim against --

5              THE COURT:  Okay.

6              MR. FUNKHOUSER:  -- the claimant in addition to

7    the --

8              THE COURT:  Okay.

9              MR. FUNKHOUSER:  -- the ones that the claimant has

10   against the estate.

11             THE COURT:  Okay.  All right.  Well, other than

12   that I don't have any questions.

13             Does anyone else wish to be heard on the 9019

14   motion with respect to the PIMCO settlement?

15             Okay.  It clearly falls above the lowest range of

16   reasonableness, satisfies all of the Iridium factors and is

17   in the best interest of the estate and will be approved.

18             MR. FUNKHOUSER:  Thank you, Your Honor.

19             With your permission we'll move out of the way for

20   the contested motions.

21             THE COURT:  Sure.

22             MR. FUNKHOUSER:  Thank you, Your Honor.

23        (Pause)

24             THE COURT:  Good morning.

25             MR. MITCHELL:  Good morning, Your Honor.  Stewart

Page 14

1    Mitchell from Hughes, Hubbard & Reed on behalf of the LBI

2    trustee.  I'll be addressing the second and third items on

3    the agenda --

4              THE COURT:  Okay.

5              MR. MITCHELL:  -- discussing the two-hundred-and-

6    seventh omnibus objection filed by the trustee.  And just as

7    a note, as was also referenced in our papers, there's one

8    claim on the two-hundred-and-seventh that is duplicative of

9    the claim on --

10             THE COURT:  Okay.

11             MR. MITCHELL:  -- the one-sixty-second.  We're

12   treating them all --

13             THE COURT:  All right.  So not surprisingly the

14   way I've prepared for this is to attempt to kind of put

15   things into buckets and I'm going to rely on you to help

16   guide me through everything so that nothing is missed or

17   overlooked.

18             MR. MITCHELL:  Okay.  Understood.

19             THE COURT:  All right.

20             MR. MITCHELL:  All right.  Thank you.  And you --

21   I'm happy to answer any questions as they arise.

22             THE COURT:  Okay.

23             MR. MITCHELL:  I just -- in the first instance, so

24   these claims, Your Honor, are claims based -- are securities

25   fraud claims -- that's the way they're framed --

Page 15

1                    THE COURT:  Right.

2                    MR. MITCHELL:  -- and they're based on the

3     ownership of securities known as cash settled call warrants.

4     These were issued by LBHI --

5                    THE COURT:  Right.

6                    MR. MITCHELL:  -- high risk, privately issued,

7     highly restricted, et cetera.   Claimants filed claims,

8     separate claims in the Chapter 11 proceeding based on the

9     same securities.   Those claims were allowed at the fair

10    market value of the warrants as of --

11                   THE COURT:  Right.

12                   MR. MITCHELL:  -- commencement.  Okay.

13                   As we understand, these claims have gone through

14    several different iterations, some starting as customer

15    claims.  But as we understand from the claimants' pleadings

16    now, the only claims that they are pressing against LBI at

17    this time are the securities fraud claims.  Again, I'm happy

18    to discuss the procedural history if you have questions or

19    any other bases.

20                   So because they're the securities fraud claims,

21    that's the basis that I'll be addressing today.

22                   Because the claimants are asserting securities

23    fraud claims in a federal bankruptcy proceeding, they are

24    required to make those claims or assert those claims with

25    the particularly required by the Federal Rules of Civil

Page 16

1    Procedure, specifically 9(b).  The claimants have failed to

2    do so.  The claimants have not asserted specific statements

3    that are allegedly fraudulent, let alone who made the

4    statement, where the statements were made, how, why they're

5    fraudulent, and taking all of the facts alleged together how

6    those facts raise a strong inference of intent on the part

7    of LBI to defraud the claimants with respect to these

8    warrants.

9           What the claimants have done is offer several

10   conclusions in their papers.  For instance, in their

11   objection to the trustee's determination of their customer

12   claims, the claimants are going to say that LBI fraudulently

13   induced them to invest in the warrants.  In their position

14   to the two-hundred-and-seventh omnibus objection they

15   conclude that LBI represented to its customers that LBHI was

16   capable of fulfilling its obligations to pay on the warrants

17   should the investment criteria demand.

18          But they've alleged, again, no specific

19   particularized statements to support those conclusions.  One

20   statement that they've pointed to in particular is a risk

21   factor in the private placement memoranda.  The -- there

22   were several risk factors listed in the PPMs that the

23   realization of which could result in the warrants being

24   valued at zero.  And the risk factor that the claimants

25   point to is the risk factor with respect to LBHI credit

Page 17

1    worthiness.

2          That statement is factually correct.  It was

3    obviously a relevant risk factor, but there's no allegation,

4    there's no specific statement indicating that their brokers

5    or anyone at LBI said they should ignore that risk factor or

6    that anyone was of the opinion that LBHI would not be

7    solvent when these warrants were sold in mid-2007 or early

8    to mid-2008; that LBHI would not be able to make good.

9          The claimants have also incorporated thousands of

10   pages of documents filed in other proceedings referencing

11   statements made by LBHI with respect to the health of LBHI.

12   But, again, with respect to these statements none of them

13   are linked by any particularized pleading in connection with

14   their warrants.

15         The particularized pleading rules are there to --

16   in place to put the trustee on notice as to what the claims

17   are.  Without those particularities, the claim -- the

18   trustee cannot determine the validity of the claim.  As

19   such, the claims are insufficient.

20         At this point because of the number of times the

21   claimants have had the opportunity to plead their claims, we

22   don't see the particularized statements.  We anticipate,

23   after the number of pleadings that are out there, we would

24   have seen satisfy -- you know, statements satisfying the

25   pleading requirements because we don't see them.  The

Page 18

1    trustee believes it is appropriate at this time to ask that

2    these claims be disallowed and expunged as we requested --

3             THE COURT:  Well, let me --

4             MR. MITCHELL:  -- in the two-hundred-and-seventh?

5             MR. FUNKHOUSER:  -- let me ask you a question that

6    was my first question when I began to read all the papers,

7    but it wasn't addressed until Footnote 7 of the reply which

8    is filed at Docket 10890, and that's the 510(b) point.

9             MR. MITCHELL:  Uh-huh.  Yes, Your Honor.

10            THE COURT:  So the trustee says, and the claimants

11   disagree, but the trustee says, you know, Rule 9(b)

12   particularity pertains.  They would have to allege it.

13            So -- and subject to counsel's rights to be heard,

14   I agree with that.  Okay.  But --

15            MR. MITCHELL:  Okay.

16            THE COURT:  -- let's posit that we have a Rule

17   9(b) compliant, very particularized complaint and, in fact,

18   it's all true.  It's still a 510(b) claim.

19            MR. MITCHELL:  Understood.

20            THE COURT:  I mean, I'm asking you, is it not?

21            MR. MITCHELL:  Right.  We -- Your Honor, yes, we

22   do.  Again, to go back to the -- when the claims were --

23   when the initial objection was filed, we didn't see any

24   substance in there and so substantively the objection -- the

25   decision was let's go forward and say these are

Page 19

1    insufficient.  And you're right.  To the extent there are,

2    we do -- we are reserving rights to object on 510(b) and

3    that would be the next steps.

4              THE COURT:  Right.  I mean, sometimes it's done in

5    the opposite order --

6              MR. MITCHELL:  Understood.

7              THE COURT:  -- right?  You say -- you assume that

8    they're meritorious and you say it wouldn't matter because

9    they're just going to be subordinated under 510(b) so let's

10   not go through that whole exercise.

11             So I've only been at this for a year, but

12   sometimes the trustee or the estate takes it in one order,

13   510(b) first, sometimes they take it in another order.  I

14   mean, it's kind of like a brain teaser which way you should

15   do it first.  But I just want -- it seemed to me that based

16   on that footnote that you were thinking along those lines.

17   But as you just said, because in the trustee's view the

18   claims are so lacking in merit, that you're seeking simply

19   to expunge them.

20             MR. MITCHELL:  Yes, Your Honor.  That's correct.

21             THE COURT:  Okay.  All right.

22             Thank you.

23             MR. MITCHELL:  You're welcome.

24        (Pause)

25             THE COURT:  Good morning.

Page 20

1           MR. SALOMON:  Good morning, Judge.  I'm Chester

2    Salomon.  I'm with Becker Glynn.

3           THE COURT:  Okay.

4           MR. SALOMON:  And I represent the creditors, the

5    claimants in this case.  If you would like I can start with

6    your 510(b) question, Judge.

7           THE COURT:  Okay.

8           MR. SALOMON:  It's something that we've looked at.

9    510 -- we understand that a security will be -- of an

10   affiliate may be subordinated.

11          THE COURT:  Right.

12          MR. SALOMON:  But there's -- it's something

13   interesting here.  The trustee never argued that before this

14   reply.  They filed objections in February of 2014 --

15          THE COURT:  Okay.

16          MR. SALOMON:  -- and this issue was never raised,

17   and I'll tell you why I think it was never raised.  If you

18   look at 510(b) it refers to a security.  A security, in

19   turn, is defined in Section 101.49 of the code.  Section

20   101.49(b) says, "Security does not include option, warrant

21   or right to subscribe to or purchase or sell a commodity

22   futures contract."

23          We believe that the claims do -- are not

24   securities for bankruptcy purposes.  However, they are

25   securities certainly in the securities purposes, and that is

Page 21

1  why the fraud claim was filed in the manner that it was

2  filed.

3          THE COURT:  So let's look at 101 again.

4      (Pause)

5          THE COURT:  You're pointing me to which section?

6          MR. SALOMON:  101.49(b)(4).  I'm sorry.  Did I say

7  49?  Yes.  I did say -- it is 49.

8          THE COURT:  Right.  Okay.  You want to -- you want

9  to read all of that?

10          MR. SALOMON:  No, Judge.  I don't think you have

11  to.  I think it just says that for purposes of the

12  definition of --

13          THE COURT:  No.  No.  No.

14          MR. SALOMON:  -- security.  Of course --

15          THE COURT:  Right.

16          MR. SALOMON:  -- security includes a lot of

17  things.  It includes stock and bonds and debentures.

18          THE COURT:  Right.  Right.

19          MR. SALOMON:  That's (a).  Then you get to (b) --

20          THE COURT:  (b).

21          MR. SALOMON:  -- where it says things that are not

22  included.

23          THE COURT:  Yes.

24          MR. SALOMON:  And it says "option, warrant, or

25  right to subscribe or purchase or sell a commodity futures

Page 22

```
 1   contract."

 2              THE COURT:  Right.

 3              MR. SALOMON:  Because this is a warrant --

 4              THE COURT:  No.  No.  No.  No.  No.  No.  No.

 5   Read all the words.

 6              MR. SALOMON:  Yes.

 7              THE COURT:  Option, warrant or right to subscribe

 8   to or purchase or sell a commodities future contract.

 9              MR. SALOMON:  Yes.

10              THE COURT:  Is this a warrant to sell a

11   commodities future contract?

12              MR. SALOMON:  It is a warrant, Your Honor --

13              THE COURT:  Okay.  But you're not --

14              MR. SALOMON:  -- not --

15              THE COURT:  But, Mr. Salomon, you're not reading

16   the words.  You're stopping after warrant.  It says, option,

17   warrant or right to subscribe to or purchase or sell a

18   commodities future contract.

19              MR. SALOMON:  Well, Your Honor, I contend that the

20   word "warrant" or "option" is not limited to commodities

21   contract.

22              THE COURT:  Okay.  Then --

23              MR. SALOMON:  That's something that --

24              THE COURT:  Okay.  But then --

25              MR. SALOMON:  -- may need to be briefed.
```

Page 23

1          THE COURT:  But then we get to the second point,

2     and none of this has been briefed, that to the extent that

3     these are called warrants, okay, they're not warrants in the

4     ordinary sense of warrants.  These are debt instruments.

5     These are debt securities.  They represent a right to

6     receive a stream of payments.  They're not all warrant in

7     the Corporate Law 101 sense.

8          MR. SALOMON:  Well, I understand that, Judge.

9     That -- they are characterized as warrants and I agree that

10    there were obligations of -- obligations of LBHI that were

11    sold to my clients.  And those obligations were not

12    registered as securities.  They -- many, many, like hundreds

13    of LBHI obligations and bonds were registered as securities.

14    These were not.

15         THE COURT:  Okay.  Well, I think that in -- as a

16    matter of procedural fairness, I mean, these issues have not

17    been fully briefed and the trustee has moved as was

18    clarified on the merits if you will of the pleading of these

19    claims.

20         Your position is that it's a proof of claim and

21    that more particularity is not required.

22         MR. SALOMON:  It is a -- that is generally the

23    case, Your Honor, that it's rare that you see a short and

24    plain statement of a proof of claim in the form of a claim

25    as suggested by the trustee; that is to say that it has to

Page 24

1    comply with all of the details.

2            And by the way I think we have asserted that claim

3    by adopting the exhibits that are attached.

4            THE COURT:  You can't -- that's not the way

5    pleading works.  Pleading doesn't work by incorporating by

6    reference hundreds or thousands of pages of stuff that half

7    of which is -- would never be admissible in any sense.  The

8    examiner's report is not evidence.  If you -- if you want to

9    assert a claim and join issue on a claim, you actually have

10   to write specific allegations.

11           MR. SALOMON:  I understand that, Your Honor.  Can

12   I just respond to your comment?  I understand that full

13   well.

14           THE COURT:  Sure.

15           MR. SALOMON:  But I -- but you of course are aware

16   -- I think Your Honor is aware of the procedural history

17   here.  Initially, my clients filed customer claims.  They

18   filed --

19           THE COURT:  Yes.

20           MR. SALOMON:  -- them timely --

21           THE COURT:  Right.

22           MR. SALOMON: -- in 2000 -- early 2009.

23           THE COURT:  And judge -- and they became and they

24   were not allowed as customer claims and they were re-

25   characterized if you will as creditor claims subject to

Page 25

1    further proceedings as to their validity.

2              MR. SALOMON:  That is correct, Your Honor.

3              THE COURT:  Okay.

4              MR. SALOMON:  And -- but that was after, that was

5    after we filed a supplemental statement and other papers

6    before Judge Peck and after Judge Peck had a hearing on

7    October 28th, 2010 --

8              THE COURT:  Right.

9              MR. SALOMON:  -- and it was -- and after -- and

10   even at that time in 2010 we did not file the securities --

11   the equity debt securities litigation materials because we

12   were not then aware of that.  We were not members of that

13   class of -- the large class of creditors who were asserting

14   $31 billion of claims.

15             THE COURT:  Okay.

16             MR. SALOMON:  Our claims were only for several

17   million dollars.  And they were out of a special issue of

18   LBHI for a total of about five or six -- I'm sorry, about

19   $50 million or so that had been raised through the device of

20   the warrants.  And we -- and those -- but those -- the claim

21   and the examiner's report were part of the claim that was

22   before Judge Peck.

23             If the trustee --

24             THE COURT:  But Judge Peck was simply sorting --

25   at that point sorting into customer claim or not.  It was

Page 26

1    binary.  And Judge Peck's -- that determination was simply,

2    this is not a customer claim.  Move out of the customer

3    claim bucket.  Move over, possibly, into the creditor claim

4    bucket subject to -- and we can find the exact language --

5    subject to the determination of the allowability or the

6    validity of the claim.

7              So it says "converted to."  The customer claims

8    order says that the claims are "converted to general

9    creditor claims of the LBI estate subject to further

10   determination by the trustee as to validity and amount."

11             MR. SALOMON:  I understand.

12             THE COURT:  Okay.  So --

13             MR. SALOMON:  But they weren't allowed --

14             THE COURT:  Right.

15             MR. SALOMON:  -- and that I understand.  But they

16   were recognized as claims, general creditor claims.

17             THE COURT:  No.  No.  No.  No.  No.  No.  They

18   were converted to general creditor claims subject to further

19   determination by the trustee as to validity and amount.

20   That's not a blessing of any kind on the validity of the

21   claims.  It says the opposite.

22             MR. SALOMON:  Judge, even though I don't think

23   it's really necessary because the trustee well knows what

24   happened here -- he referred to it in his preliminary

25   investigation report filed in August of 2010 about the

Page 27

1    examiner's report that had been previously filed some seven

2    months earlier -- we could re-plead and would re-plead --

3                THE COURT:  But let me go back to this point.  Are

4    you suggesting to me that you -- as you stand here today

5    these claims are valid general creditor claims by virtue of

6    that order?

7                MR. SALOMON:  No.  I'm not saying that.

8                THE COURT:  Okay.  Then I don't understand the

9    point of this entire --

10               MR. SALOMON:  There was just --

11               THE COURT:  -- piece of our conversation.

12               MR. SALOMON:  Validity has to be determined by the

13   Court.  Allowance has to be --

14               THE COURT:  Okay.

15               MR. SALOMON:  -- determined.  That --

16               THE COURT:  Right.

17               MR. SALOMON:  -- was very clear.

18               THE COURT:  Okay.

19               MR. SALOMON:  It was just recognition that what

20   had been a general -- a customer claim is now --

21               THE COURT:  Which had been --

22               MR. SALOMON:  -- a general unsecured claim.

23               THE COURT:  No.  What had been alleged to be a

24   customer claim --

25               MR. SALOMON:  Yes.

Page 28

1           THE COURT: -- was determined to not be a customer

2    claim and is now alleged to be a creditor claim.

3           MR. SALOMON: All right.  I accept that, Your

4    Honor.

5           THE COURT: Okay.  Excellent.

6           MR. SALOMON: And what -- what I --

7           THE COURT: So -- but what does that have to do

8    with the price of tea in China as they say?

9           MR. SALOMON: Well, we've talked about two things

10   in today's hearing.  The first is the lack of specificity --

11          THE COURT: Right.

12          MR. SALOMON: -- for the -- specificity --

13          THE COURT: Right.

14          MR. SALOMON: -- excuse me -- for these claims

15   which the trustee says he can't judge the merit of these

16   claims.  So --

17          THE COURT: Right.

18          MR. SALOMON: -- there -- and because -- and does

19   not apply to Federal Rule of Civil Procedure 9(b), I

20   believe.  And it does not satisfy that requirement.  We say

21   that we do by the documents that were submitted, but we also

22   say to Your Honor that if -- that we would -- we would be

23   prepared to amend the claim, amendments are freely granted

24   in this court.  We would be prepared to amend the claim to

25   assert specifically as to these entities --

Page 29

1           THE COURT:  And these claimants.

2           MR. SALOMON:  -- these claimants because they were

3     -- you know, these were small customers of LBI who got calls

4     from brokers.  We have something that you can make some

5     money with and you can't invest innocuous in millennium

6     because you're too small for those investments, but you can

7     invest in Lehman Brothers Holdings and make the same kind of

8     money.  You've got to hold your investment till 2011 and

9     2012 they were told back in 2007 and 2008.  And that is what

10    they went in for.

11          They were not told, and we've said it many times,

12    Your Honor, and I don't want to repeat myself, but we've --

13    they were not told that -- anything about what was happening

14    at Lehman.  And the management of Lehman, LBI and LBHI were

15    virtually identical.

16          THE COURT:  Well, on that, that's another point of

17    significant contention.  That statement that LBI and LBHI

18    were virtually identical, that's a -- that's painting with

19    an extremely broad brush and ignoring the fact that these

20    are separate estates.  There's been no veil piercing.  That

21    ship has sailed.

22          So to the extent that you have something very

23    specific in that regard that you believe you can allege, you

24    can allege it.

25          MR. SALOMON:  Okay.

1          THE COURT:  But as a general matter, there's not

2      going to be a finding that LBI and LBHI all the same.

3          MR. SALOMON:  We don't need that, Judge.

4          THE COURT:  Okay.

5          MR. SALOMON:  It's the notion of attribution and

6      imputation.  This is what we rely on in our papers, a

7      statement made by an executive and actions by an executive

8      of -- that is a representative of two related companies can

9      be attributed to both those companies.  And that's what

10     we're saying.  In the securities litigation the -- they were

11     only focused on LBHI.  They didn't talk about LBI in that

12     proceeding.  I suspect the reason it was because there was a

13     stay against LB -- as to any action against LBI.  So --

14         THE COURT:  So if your clients are speaking to LBI

15     employees, right --

16         MR. SALOMON:  Yes.

17         THE COURT:  -- and you're saying that those LBI

18     employees should be treated as LBHI employees?

19         MR. SALOMON:  No, Judge.  No.  I'm saying -- I'm

20     looking -- talking principally about LBI senior management.

21         THE COURT:  Right.

22         MR. SALOMON:  That's full Gregory, O'Mara, Callon

23     --

24         THE COURT:  Those guys spoke to your clients?

25         MR. SALOMON:  They did not speak to their clients.

1    They were senior managers of LBI.  They were also senior

2    managers of LBHI.  They knew -- depending on which hat they

3    were wearing and it doesn't matter which -- well, depending

4    on which hat they were -- I shouldn't say depending on what

5    hat they were wearing.  They knew for both companies.  They

6    had the knowledge of what was happening with Repo 105, what

7    was -- that their assets were understated, their liabilities

8    were understated, and that the statements, the SEC -- I'm

9    sorry, the -- yes, the SEC reports and statements were not

10   correct.  They knew that and they omitted that.

11          And you can't say, as the trustee has in his

12   papers, he does what seems to me like a Jekyll and Hyde

13   thing that the bad things that the senior managers did were

14   only while they were Mr. Hyde at LBHI, but not while they

15   were Dr. Jekyll at LBI.  And, therefore, they contend that

16   there should be no attribution of the actions and statements

17   by the senior managers.

18          I don't think the brokers knew, Judge, what was

19   going on in the executive suite; that is to say the

20   registered representatives of LBH -- LBI who dealt with my

21   clients.  I don't think they actually knew.  Their bosses

22   knew.  And it was the failure to impart that information

23   that was known to the senior management of LBI that is at

24   the crux of this.  They had a culpable knowledge.  They were

25   trying to raise money for their affiliate, LBHI.  They were

Page 32

1    going to get some commissions if they pedaled this stuff --

2    the warrants on the clients.

3            But, no, I don't think -- you know, I do think

4    that executives of LBI were knowledgeable about the fraud

5    and the financial shenanigans at LBHI that were so well

6    reported in the examiner's report and found, found by Judge

7    Kaplan in his July 27, 2011 opinion.

8            And, again, I want to come back, Judge.  The

9    reason why you don't have a pleading in front of you right

10   now is all of this was long after the deadline for filing

11   claims, long after the trustee objected to the --

12           THE COURT:  Okay.  But we can --

13           MR. SALOMON: -- the customer claims.

14           THE COURT:  -- fix that because if I were to -- if

15   I were to deny the -- or overrule the objection and say,

16   great, let's go to trial, we don't have anything to go -- I

17   don't have anything to go to trial on.

18           MR. SALOMON:  So, then, Your Honor, may I suggest

19   --

20           THE COURT:  But before you --

21           MR. SALOMON: -- that --

22           THE COURT:  -- move onto that, though, I would

23   like you to -- like to hear your view on the no double

24   payment argument.

25           MR. SALOMON:  Oh, Judge, it's the single

Page 33

```
 1    satisfaction rule.

 2               THE COURT:  Right.

 3               MR. SALOMON:  It's been around a long time.

 4               THE COURT:  Right.

 5               MR. SALOMON:  We can't get -- we're not going to

 6    get double payment.

 7               THE COURT:  Fine.  Okay.

 8               MR. SALOMON:  We might get 20 to 35 cents on the

 9    dollar for the LBI claims all in --

10               THE COURT:  The LBHI, not --

11               MR. SALOMON:  I'm sorry.  LBHI claims all in.  And

12    as best I can tell from the trustee's reports and estimates

13    that I've heard, maybe at top 35 cents, 30, 35 cents on the

14    dollar for LBI.

15               So if it's 20 to 35 for LBI (sic) and 35 for LBI,

16    that's not a double recovery.  That's not even a whole

17    recovery.  It's just a claim against another entity that

18    we're trying to assert.

19               THE COURT:  All right.  Let me hear from LBI.  All

20    right.  Thank you.

21               MR. SALOMON:  Thank you, Judge.

22               MR. MITCHELL:  Thank you, Your Honor.

23               If you would like, I'm happy to address the

24    question on 510(b) briefly, the trustee's position or --

25               THE COURT:  Well, it's a -- you know, I put you
```

Page 34

1    all on the spot just because I focused on that footnote and

2    I have so many 510(b) issues floating around that I'm always

3    thinking of it.

4              So I don't think it would be fruitful, since it

5    hasn't really been appropriately briefed and raised.  But --

6              MR. MITCHELL:  Understood.

7              THE COURT:  -- what Mr. Salomon is saying, you

8    know, okay, the usual rules should pertain.  Give me a

9    chance to re-plead.  So that's -- that's where we are --

10             MR. MITCHELL:  Yeah.

11             THE COURT:  -- at this point.

12             MR. MITCHELL:  Yes, Your Honor.  And just to take

13   that -- take that line of argument up, hearing the same

14   thing again from Mr. Salomon and hearing the arguments

15   brought forward, if they're -- if the argument is that the

16   brokers didn't know and the brokers didn't make any

17   particularized statements, then, again, as Your Honor has

18   noted, what -- what are we discussing, what can the trustee

19   look to to determine the validity of the claim, where do we

20   even go from here.  If the contention is still that these --

21   the statements at issue are ones that are -- have been

22   attributed to LBHI, they should be attributed to LBI, then I

23   think we're back in the same place of saying any re-

24   pleading, if that's the framework, would be futile because

25   then we continue to face the same issues that raised -- the

Page 35

1    trustee raised in his reply.

2            As you noted, there's clear distinction between

3    these parties.  Imputation is a factor in a veil piercing

4    argument.  That legal framework has not been asserted, plus

5    there are issues with standing, can the claimants bring that

6    as you note.

7            So, again, we would just -- it seems like if there

8    was a re-pleading at this point it would just be back to the

9    same issue, and the trustee believes that it would be

10   futile.  Given the nature of the pleadings thus far, the

11   claimants have had ample opportunity to re-plead.  The

12   trustee has looked at their papers and given weight to the

13   things that they've said.  We just don't see that there's

14   anything there that satisfies the heightened pleading

15   requirements in this case.

16           THE COURT:  Okay.  Thank you.

17           MR. MITCHELL:  Thank you.

18           THE COURT:  Anything else, Mr. Salomon?

19           MR. SALOMON:  Your Honor, most of -- most of the

20   statements that we made were in response to 510(b) and the

21   issues.  There are other things that came up in the

22   trustee's reply.  May I have an opportunity to speak to

23   them?  And I'll try to stay away from securities fraud

24   because I think you know where I'm coming from in terms --

25           THE COURT:  But for the securities fraud claim are

Page 36

1    you going to allege that a particular broker made a

2    particular statement to one of the claimants?

3              MR. SALOMON:  Failed to, Judge, failed, the broker

4    never informed.

5              THE COURT:  Are you going to make a particular --

6              MR. SALOMON:  As I mentioned the broker --

7              THE COURT:  Are you going to make a particular

8    allegation that that particular broker knew, as you said,

9    what was going on at LBHI?

10             MR. SALOMON:  I will not do that as to a

11   particular broker, Your Honor.  I am talking about --

12             THE COURT:  Then how do you --

13             MR. SALOMON:  -- LBI senior management.

14             THE COURT:  But your clients were not speaking to

15   Mr. Fauld (ph).  Your clients were speaking to their broker.

16             MR. SALOMON:  And, therefore, they -- the broker

17   must be omniscient.  That broker worked as a cog in a huge

18   institution, Lehman Brothers, Inc., a large investment bank,

19   and, no.  I'm not saying that these brokers should have even

20   known that.  Their senior managers should have known that,

21   Judge.

22             THE COURT:  Okay.

23             MR. SALOMON:  And the senior management should

24   have instruct -- should have not ever issued those -- the

25   warrants in the first place.  But having done so, they

Page 37

1    should have accurately reported what they had done and what

2    the correct financial picture was; that repos were -- repo

3    105s --

4              THE COURT:  So if -- so if I subscribe to your

5    construct, every single person who bought an LBHI "security"

6    at the suggestion or under the auspices of an LBI broker

7    should have your phone number because they've got this huge

8    securities fraud claim.

9              MR. SALOMON:  Judge, I'm out of time on that.

10   They --

11             THE COURT:  No.  I'm asking you.

12             MR. SALOMON:  I'll answer --

13             THE COURT:  I'm asking you --

14             MR. SALOMON:  -- your question.

15             THE COURT:  -- the question because when you look

16   out over this enormous landscape, right, it is not

17   insignificant that when you look at a class of tens or

18   hundreds of folks, right, frequently the trustee or the

19   debtor will object to an enormous number of claims, right?

20   And nobody will respond except for one person.  Well, that

21   -- that's an indication of the likelihood of success on the

22   merits; that the -- that -- because that one guy, it's a

23   long shot that he's smarter than the other 99 guys.

24             So my question to you is if your construct in fact

25   works, then everybody, everybody who had LBI as their broker

1    and who bought LBHI securities during a certain time frame

2    when, as you put it, the shenanigans were going on they've

3    got, in your view, a valid creditor claim against LBI for

4    securities fraud.

5              MR. SALOMON:  Judge, there were $31 billion of

6    claims that, in fact, have been asserted against LBHI in the

7    District Court class action.  That class action,

8    unfortunately for me, I won't get a phone call.  Nobody's

9    going to ask for my phone number for that.  Why, because all

10   of those claims were settled --

11             THE COURT:  But that's against LBHI --

12             MR. SALOMON:  -- in the class --

13             THE COURT:  It's against LBHI.

14             MR. SALOMON:  Your Honor, I -- I'm not sure of

15   that at all.  They waived their claims and I don't know if

16   they waived their claims against LBI.  Perhaps you should

17   ask the trustee whether or not the settlement of the class

18   action -- I think the trustee appeared at the settlement

19   hearing for LBHI and may be familiar with that settlement

20   agreement.  My assumption is that LBI -- as part of that

21   settlement they waived claims against LBHI.  Now these are

22   all securities --

23             THE COURT:  You mean against LBI.

24             MR. SALOMON:  Waived claims against LBHI and all

25   of LBHI's affiliates.  But that's a question to ask the

Page 39

1   trustee.  I'll stand aside if you were to ask that question

2   of him.

3            THE COURT:  No.  I -- look, as far as I'm

4   concerned I have no question that Rule 9 which requires a

5   claims of fraud be plead with particularity applies to

6   proofs of claim that are at this mature stage, i.e. on the

7   precipice of either a motion to dismiss or proceeding to

8   trial.  They need to be pled with particularity and not by

9   reference to voluminous other documents.

10           So I agree with you that leave to re-plead is free

11  legal granted and I'll send you back to the drawing board

12  one last time to craft an appropriate securities fraud

13  complaint.

14           MR. SALOMON:  Very well.

15           Thank you, Judge.

16           THE COURT:  Time frame.  Can you set a time frame?

17           MR. SALOMON:  Yes.

18           THE COURT:  Okay.  When do you think you can have

19  it done?

20      (Pause)

21           MR. SALOMON:  Sixty days, Judge.

22           THE COURT:  Okay.  All right.  So if someone would

23  -- if you folks would work together to prepare an order

24  disposing of the trustee's objection and granting the leave

25  to re-plead no later than 60 days from the -- from today's

Page 40

1   date.

2            MR. MITCHELL:  Yes, Your Honor.  We'll prepare

3   that.

4            THE COURT:  All right.

5            MR. SALOMON:  Thank you, Your Honor.

6            THE COURT:  Okay.  Thank you.

7            MR. SALOMON:  Thank you, Your Honor.  We'll turn

8   the podium over now to Karen Chau for the next matter.

9            THE COURT:  Yes.

10       (Pause)

11            MS. CHAU:  Your Honor, Karen --

12            THE COURT:  Good morning.

13            MS. CHAU:  -- Chau.  Good morning.  Karen Chau,

14   Hughes, Hubbard & Reed for the trustee.

15            The next item -- items on the agenda are 43 claims

16   filed by former employees of LBI or other entities that were

17   subject to 13 different omnibus objections --

18            THE COURT:  Right.

19            MS. CHAU:  -- but they all have claims that we've

20   termed the equity award or accrued equity claims.

21            THE COURT:  Right.

22            MS. CHAU:  So as long as it makes sense to you

23   we'll deal with them all together.

24            THE COURT:  Okay.  This is some very strong

25   feelings of déjà vu --

1        MS. CHAU:  Yes, Your Honor.

2        THE COURT:  -- for me.  And perhaps it would make

3    sense for me to talk to Mr. Schager first because he covers

4    a large number of these claims.

5        MS. CHAU:  Yes, Your Honor.

6        THE COURT:  And I'm going to rely on you to help

7    me sort everything and to make sure I've covered everything

8    before we conclude today.

9        MS. CHAU:  Sure.

10        THE COURT:  Okay.

11        How are you, Mr. Schager?

12        MR. SCHAGER:  I'm well, Your Honor, and yourself?

13    Thank you.

14        THE COURT:  I'm good.

15        So --

16        MR. SCHAGER:  Just for the record if I may, Your

17    Honor, I'll note I'm here with Andrew Goldenberg also --

18        THE COURT:  Okay.

19        MR. SCHAGER:  -- but just the two of us today.  I

20    don't know if there are any pro se's appearing.  This firm

21    represents 35 of the claim -- of the 43 claimants at issue

22    on these 13 motions and I don't -- I've had no contact with

23    the other --

24        THE COURT:  Okay.

25        MR. SCHAGER:  -- six or seven, so I don't know if

Page 42

1    they're here or not.

2              THE COURT:  All right.

3              So the first and obvious question is you -- you

4    are, of course, familiar with the decision that was issued

5    in the LBHI case with respect to the so-called RSU claims.

6              MR. SCHAGER:  Yes, Your Honor.

7              THE COURT:  And we're not going to re-tread that

8    ground.  So I guess I just don't understand given that, why

9    we're talking about that on these claims.

10             MR. SCHAGER:  Your Honor, I would answer that by

11   pointing you to three factors.  I think --

12             THE COURT:  I mean, other than that --

13             MR. SCHAGER:  Yeah.

14             THE COURT:  -- you think that I was wrong, which I

15   -- which I understand you -- you're up on appeal and --

16             MR. SCHAGER:  Yeah.

17             THE COURT:  -- that's fine.  But there's no

18   substantive distinction between these claims that you're

19   asserting here and the LBHI claims other than, of course,

20   that you're asserting these claims against LBI and the RSUs

21   are -- were, my view, equity interests in LBHI.  So you're

22   one step further removed.

23             MR. SCHAGER:  That's right, Your Honor.  The

24   claims here are employer/employee claims.  It is the

25   employees claiming against the direct employer, LBI, for

Page 43

1   their compensation.

2           THE COURT:  That --

3           MR. SCHAGER:  Obviously, Your Honor, we understand

4   your decision on the RSUs and if the RSUs have value, that's

5   going to have a lot of impact on the RSU claims that are

6   asserted here.  There are two other claims that I think we

7   haven't addressed.  But it would have a major impact on the

8   RSU claims here.

9           Even as of last night, Your Honor, as far as our

10  research reveals there is still not a District Court or an

11  Appeals Court that has really addressed whether RSUs are

12  securities in the context of the Bankruptcy Code.

13          THE COURT:  Okay.  But --

14          MR. SCHAGER:  You've got your decision and Judge

15  Glenn's, and you've got a Fifth Circuit decision that I read

16  as frankly being contrary.

17          THE COURT:  Okay.

18          MR. SCHAGER:  And I think we need appellate

19  authority on that.

20          THE COURT:  That's fine.  I --

21          MR. SCHAGER:  On the RSU claims, Your Honor --

22          THE COURT:  -- have no problem with that.  But I

23  don't understand -- I don't understand other than for me to

24  say out loud that the ruling in LBHI with respect to the

25  RSUs applies to these claims and then you have that for

Page 44

1    purposes of appeal, are you -- is there an argument here

2    that somehow this is different -- these are different and,

3    therefore, all of that reasoning doesn't apply?

4              I'm just trying to understand.  To me it's the

5    same exact arguments.  These are claims to be paid in RSUs

6    of LBHI.  That was the currency.  It was stock in LBHI.

7              MR. SCHAGER:  Once again, Your Honor, I agree that

8    if the decision stands it has some impact here.  I think

9    there are some permutations to that, and that would be a

10   point that we raised in our initial oppositions to the

11   omnibus objections and we raised again in a briefing -- I

12   have a briefing late last night, Your Honor, that is in the

13   system.  I could hand up a copy if you wish to see it.

14             THE COURT:  I don't know what --

15             MR. SCHAGER:  But --

16             THE COURT:  I don't know what you're talking

17   about.  I'm sorry.  I lost you.  I -- let --

18             MR. SCHAGER:  The question is did LBI enforceably

19   cause LBHI to undertake the obligation to compensate LBI's

20   employees.

21             Now there is a practical side of that and there's

22   a legal side to it.  On a practical side, these weren't just

23   handing out RSUs.  They were inter-company transfers that

24   took place here.  LBI basically paid LBHI to issue the RSUs.

25   There was an inter-company credit.  LBHI brought a proof of

Page 45

1    claim against LBI in this proceeding saying, hey, wait a

2    minute.  You owe us some money for these RSUs.  That claim

3    was denied.  LBI didn't have to pay for some portion of

4    those RSUs.

5            And if LBI did not pay LBHI to assume the

6    obligation to the employees, then why is LBI off the hook to

7    the employees here.  It hasn't paid for those RSUs yet.  and

8    that's an issue that's just not --

9            THE COURT:  Well, whoa.  Whoa.  Whoa.

10           MR. SCHAGER:  -- in the evidence yet.

11           THE COURT:  Whoa.  Whoa.  Whoa.  We're really

12   wandering far off the reservation.

13           MR. SCHAGER:  I don't' think so, Your Honor.  But,

14   please, go ahead.

15           THE COURT:  These are claims for -- these are

16   claims of people that have RSUs, right?  The RSUs, if life

17   had been better, if there had been a bailout and Lehman had

18   survived and Lehman's stock had soared, the RSUs would be

19   valuable and no one would be complaining.

20           We're here because that didn't happen.  So now the

21   holders of those RSUs, now worthless, are saying, we want

22   cash instead.  Those RSUs were issued under a variety of

23   programs which gave discretion as to how the bonus should be

24   paid.  Discretion.  We looked at all those letters in the

25   trial.  It said, in our sole discretion we can pay all of

Page 46

1    this in restricted stock units and that happened.

2           What your clients spent the better part of three

3    days trying to convince me was that because those RSUs now

4    are not worthless.  They can't vest because of the

5    bankruptcy, et cetera, we want cash instead.  I said, no.

6           So now what you're saying is, wait a minute.

7    Because there was some arrangement, you say, between LBI and

8    LBHI, somehow that has a bearing on whether or not that RSU

9    piece of paper that your clients are holding should be

10   retroactively turned into a claim for cash.  That's got

11   nothing to do with it.

12          MR. SCHAGER:  Well, Your Honor, I'm going to --

13          THE COURT:  But where --

14          MR. SCHAGER:  -- approach that same set of facts

15   --

16          THE COURT:  -- where is it --

17          MR. SCHAGER:  -- from a slightly different --

18          THE COURT:  -- where is any of this in the papers?

19          MR. SCHAGER:  We've addressed it in the response

20   to the omnibus reply that we provided last night, Your

21   Honor.

22          THE COURT:  Oh, but --

23          MR. SCHAGER:  And --

24          THE COURT:  -- there was no provision for a

25   surreply.  And I'm sorry to break it to you, but I wasn't

Page 47

```
1    reading documents at 9:00 last night.  So I haven't read

2    that and if you want to file a surreply you have to ask

3    permission.  So I don't know what you're talking about.  So

4    why don't you tell me?

5            MR. SCHAGER:  I am doing my best, Your Honor, and

6    I will say on the surreply we were not able to find anything

7    in the rules on it.  Maybe we missed it and I apologize for

8    that.  We got a very late reply -- omnibus reply last week

9    and we did our best to put in a response as quickly as we

10   could.  But there were some new issues raised in the omnibus

11   reply and we did our best to address them.

12           But let me go back to your important point here on

13   the rights of the holders of RSUs.  Judge Sweet (ph)

14   addressed this issue in a case last summer.  Unfortunately,

15   he addressed it after our briefing on the -- for the

16   November 3rd decision was complete.  But Judge Sweet had a

17   class action in front of him involving a directors and

18   officers policy by a class of shareholders and there was a

19   subclass of RSU holders coming in saying, Your Honor, we are

20   shareholders.  We have shareholders' rights.  And the class

21   opposed it.  Judge Sweet, an artist from the bench, clearly

22   arranged for the settlement under which the RSU holders who

23   held vested rights, vested RSUs participated as

24   shareholders.  Unvested RSUs --

25           THE COURT:  So --
```

Page 48

1           MR. SCHAGER:  -- did not.

2           THE COURT:  So what?

3           MR. SCHAGER:  Well, what happens to the unvested

4   holders of RSUs?  What do they have?  They're left with a

5   promise of compensation that was never fulfilled.

6           THE COURT:  No.  They got RSUs that were not able

7   to vest.  That's what they got.  There -- I --

8           MR. SCHAGER:  But the --

9           THE COURT:  Number one, you --

10          MR. SCHAGER:  -- the RSU -- no.  We're talking

11  about the equity holders.  If they hold securities can they

12  participate in the settlement as securities, and the impact

13  of that decision is no, they do not.  They don't have

14  securities which is consistent with the Fifth Circuit

15  decision saying all you've got is this contract claim to get

16  compensated some day.

17          Now those -- those are the issues that are going

18  up on appeal, Your Honor.  I agree that if you're affirmed

19  on appeal there's no question that that's going to have an

20  impact here.  My own --

21          THE COURT:  Okay.  So let --

22          MR. SCHAGER:  -- preference would be --

23          THE COURT:  -- let's --

24          MR. SCHAGER:  -- just to hold this --

25          THE COURT:  -- let's start with that.  Okay.

Page 49

1    We've now -- I've now gotten the answer that I was looking

2    for.

3              If you -- if I'm reversed on appeal, I'm reversed

4    on appeal.  Then we would have to revisit this.  But right

5    now there's absolutely no distinction and -- other than the

6    fact that these claims are more attenuated because they're

7    against LBI with respect to RSUs in LBHI.

8              LBI said we're going to pay you with these RSUs in

9    LBHI.  LBI did that.  Moreover, even if -- and this is a

10   footnote in the decision -- even if there was a failure to

11   issue the RSUs under med diversified, that's still a

12   subordinated claim.

13             So --

14             MR. SCHAGER:  If I had a couple of minutes, Your

15   Honor, I would be glad to address that accrued entity claim.

16             THE COURT:  Go ahead.  I'll give you all the time

17   you like.

18             MR. SCHAGER:  Yeah.  And, yes.  Footnote 18 gets a

19   lot of attention.  It gets it in this proceeding, too.

20             Where that started, that whole issue of the

21   accrued equity, was in a hearing that Judge Peck had in

22   December 2011, and we've quoted passages of that transcript

23   to you both in prior briefs and in this one that we

24   submitted last night and you -- and that is, wait a minute,

25   LBI, we've got to do -- LBHI.  We've got to do a better job

Page 50

1    of organizing this because I'm hearing about some claims out

2    here where money was withheld from these people's pay check

3    and I think you've got to address that.

4            And LBHI did address that and paraded this in

5    several hearings in front of Judge Peck, again, which we've

6    quoted saying, Your Honor, we took care of those claims.  We

7    allowed them.  And, you know, the process was a little

8    unusual because once again there were one of these games

9    that were played and we caught them at the games and they

10   had -- they had to clean up --

11           THE COURT:  I get --

12           MR. SCHAGER:  -- the offer.

13           THE COURT:  Once again, I've --

14           MR. SCHAGER:  That's -- that's all --

15           THE COURT:  Once again I have no idea what you're

16   talking about.  I'm sorry.  I just --

17           MR. SCHAGER:  The short of it is the accrued

18   equity claims were recognized and allowed and they were

19   allowed because Judge Peck more or less said, you know, guys

20   -- as an artist from the bench would do -- you know, guys,

21   you ought to take care of these.  And LBHI did.  And those

22   claims were allowed.

23           What we had left at the hearing was nine or ten

24   people who had dropped out of the process.  They had no

25   representation.  They had had no appearance, and there was a

Page 51

1    little housekeeping effort --

2            THE COURT:  Well, how are you --

3            MR. SCHAGER:  -- to clean up their claims.

4            THE COURT:  I'm sorry, Mr. Schager, I may not be

5    an artist from the bench, but I try to pride myself on being

6    extremely patient.  And I do not understand what you're

7    talking about.

8            MR. SCHAGER:  The equity accrual claims, Your

9    Honor, were --

10           THE COURT:  What's an --

11           MR. SCHAGER:  -- allowed.  It's --

12           THE COURT:  -- equity --

13           MR. SCHAGER:  -- that --

14           THE COURT:  What's an equity accrual claim?

15           MR. SCHAGER:  That's the accrued equity claim that

16   you address in, I believe, it's Footnote 18 that you -- to

17   which you just referred.  And those claims were allowed in

18   the LBHI --

19           THE COURT:  Allowed --

20           MR. SCHAGER:  -- proceeding.

21           THE COURT:  Allowed and given what?

22           MR. SCHAGER:  They were allowed as general

23   unsecured claims with the statutory priority for the 10,950.

24   And it's -- I'm not talking about something that's hidden

25   away somewhere or private.  This is --

Page 52

1          THE COURT:  And what does that --

2          MR. SCHAGER:  -- all reported in the transcripts.

3          THE COURT:  What does that have to do with what

4    we're talking about today?  I'm sorry.  I just -- I'm not

5    following you so I can't --

6          Counsel, do you have -- can anyone help me out

7    here?

8          MR. SCHAGER:  Can I try to respond to that

9    question and then you can invite --

10          THE COURT:  I've asked you three --

11          MR. SCHAGER:  -- Ms. Chau's comments --

12          THE COURT:  -- times to explain it to me and I

13   still do not know what you're talking about and what it has

14   to do with where I started 45 minutes ago, which is that I

15   rendered a decision in LBHI with respect to the entitlement

16   of the RSU claimants.  I know that you disagree with it and

17   I know that it's up on appeal.

18          That being said, the arguments in the papers --

19   and I haven't seen the surreply because it wasn't authorized

20   and it was filed at 9:00 last night -- make the same

21   arguments.  They make the same arguments about the RSUs.  So

22   I've rejected that in the November 3rd opinion, and I have

23   not been told any reason why it's not applicable and

24   dispositive here.

25          MR. SCHAGER:  The so-called accrued equity claims,

Page 53

1     the claims Your Honor addressed in Footnote 18, those were

2     identified as claims where employees had earned their

3     compensation.  They had earned their commissions.  All the

4     documents support that they earned commissions and some

5     portions of those commissions were withheld by the employer,

6     LBI -- by the employer, LBI --

7               THE COURT:  Withheld.  Okay.

8               MR. SCHAGER:  -- right?

9               THE COURT:  That was an issue that we tried in the

10    RSU trial that we had some months ago because one of the

11    arguments was that there was compensation "withheld" and

12    then paid -- that there was cash money withheld in order to

13    and in exchange for that or in lieu of that there was

14    deferred compensation paid in the form of RSUs.

15              That wasn't -- that wasn't a finding that was ever

16    made.  That was an argument.  That was testimony by

17    witnesses along the lines of you took my money and you held

18    it for me and you promised to buy something that turned out

19    to be worthless now.  That was not an argument that

20    prevailed.

21              MR. SCHAGER:  That's not the argument I'm making

22    now, Your Honor.  The argument I'm making now is that there

23    was never anything purchased with that money.  And those

24    were the claims that LBHI did not bring into the trial

25    except with respect to eight or nine or ten people who

Page 54

1    didn't appear, who weren't represented by counsel and they

2    basically defaulted.  It is the --

3            THE COURT:  Are there --

4            MR. SCHAGER:  -- accrued equity claim and that's

5    what we're dealing with in these claims, money that was

6    withheld for which RSUs were never issued.  And that's a

7    claim by an employee against an employer.  That's got to be

8    treated separately than the --

9            THE COURT:  But so --

10           MR. SCHAGER:  -- RSUs generally.

11           THE COURT:  So then if the claim is that the RSUs

12   weren't issued, then -- well, then we'll issue them the

13   RSUs.

14           MR. SCHAGER:  We will issue them the RSUs, Your

15   Honor?

16           THE COURT:  Yes, sir.

17           MR. SCHAGER:  I don't -- I'm not sure -- I don't

18   want to be facetious about that, but I think you would have

19   --

20           THE COURT:  We --

21           MR. SCHAGER:  -- a hard time getting LBHI to issue

22   RSUs at this point.

23           THE COURT:  Oh, no.  We can -- we can do it under

24   the plan.  We did this in the other trial, Mr. Schager.

25   There -- the RSUs are subordinated and entitled to a share

Page 55

1    of the reorganized equity.

2              MR. SCHAGER:  And what we --

3              THE COURT:  So --

4              MR. SCHAGER:  -- did in the trial was convert the

5    RSUs that had been issued --

6              THE COURT:  Right.

7              MR. SCHAGER:  -- into shares and treat them like

8    shares.

9              THE COURT:  Okay.

10             MR. SCHAGER:  We did not get into the accrued

11   equity claim --

12             THE COURT:  And so now we're --

13             MR. SCHAGER:  -- except to the extent --

14             THE COURT:  -- so now we're --

15             MR. SCHAGER:  -- of your --

16             THE COURT:  -- so now we're at the --

17             MR. SCHAGER:  -- Footnote 18.

18             THE COURT:  -- crux of it.  You're saying that --

19             MR. SCHAGER:  And when --

20             THE COURT:  -- there was a failure to issue the

21   RSUs and, therefore, there's a money damage claim associated

22   with the failure to issue the RSUs.

23             MR. SCHAGER:  My complaint is not, Your Honor,

24   that the RSUs were not issued.  The issue is what was

25   withheld from compensation that you earned and where did it

Page 56

1    go.  And it didn't go --

2              THE COURT:  But if we --

3              MR. SCHAGER:  -- anywhere.  It was held.  It's an

4    employee who wasn't paid his compensation.  He wasn't paid -

5    -

6              THE COURT:  No.  Mr. --

7              MR. SCHAGER:  -- his salary.

8              THE COURT:  -- Schager -- Mr. Schager, we did this

9    in the other trial.  There was an allegation that

10   compensation was withheld.  And there was -- that was not

11   sustained.  That allegation --

12             MR. SCHAGER:  Because RSUs were issued for the

13   compensation that was at issue there.

14             THE COURT:  No.  No.  No.  No.  No.  No.  No.

15   You're switching gears.  There are two issues.  Number one,

16   you say compensation was withheld and I say there was that

17   identical allegation in the LBHI RSU trial and it was not

18   sustained.

19             Number two, you say RSUs were not issued.  I say,

20   okay, if the RSUs were not issued that does not convert the

21   breach of the contract to issue the RSUs a security into a

22   claim for cash money damages.  Your clients want cash.  They

23   don't want RSUs.  They had the RSUs in the other case.  It

24   entitles them to a percentage share of the reorganized

25   equity.  They don't want that.  It's not worth anything.

Page 57

1      They want cash money and you have not told me anything here

2      today that entitles these claimants to have a claim for cash

3      money against LBI.

4           MR. SCHAGER:  I'll try to illustrate it another

5      way, Your Honor, and that's this.  We have two claimants

6      here, Claimants Benson and Petricelli (ph) who submitted

7      their claims as many people did in both proceedings.  I

8      didn't file their claims for them, but they filed and then I

9      inherited the claims as filed.

10          One of their claims was for commissions earned in

11     2008 that were not paid.  Okay.  And they made that claim in

12     both proceedings.  One of the things we're talking about now

13     that I'm talking about with trustee's counsel is addressing

14     those claims differently because they were allowed.  Those

15     claims for money withheld in 2008 were allowed in the LBI

16     proceeding, not in the trial, but in the discussions

17     beforehand.

18          So, obviously, they're not going to get them.

19     They're not going to get a double dip.  Right.  No one's

20     looking for a double dip.  But there were other people who

21     didn't make those claims in the LBI -- LBHI proceeding and

22     they're in the same position.  This was money that was

23     withheld.  You -- you tell me I'm switching gears, but I'm

24     not switching gears.  I'm addressing a claim that was not

25     addressed in the LBI proceeding because there weren't any

Page 58

1    people pursuing claims for accrued equity.  There was a

2    housekeeping detail that LBHI's counsel slipped in there for

3    a very small number of people, nine or ten people, who were

4    no shows, defaulters --

5                 THE COURT:  Okay.  Could we --

6                 MR. SCHAGER:  -- and that's -- that's what you

7    addressed in --

8                 THE COURT:  Could --

9                 MR. SCHAGER:  -- Footnote 18.

10                But the other claims --

11                THE COURT:  Hold on.  Hold on.  Let's talk about

12   Benson and Petricelli's claim.

13                MR. SCHAGER:  Please, Your Honor.  Yes.

14                THE COURT:  Okay.  What are they claims for?

15                MR. SCHAGER:  Benson and Petricelli in this case,

16   Your Honor --

17                THE COURT:  Yes.

18                MR. SCHAGER:  -- have claims for severance pay

19   which I believe -- and Ms. Chau can correct me -- but I

20   think the severance pay claim is going to be allowed.

21                THE COURT:  Yes.  Okay.

22                MR. SCHAGER:  They have a claim for some bounced

23   checks and --

24                THE COURT:  Yes.

25                MR. SCHAGER:  -- I think those claims --

Page 59

1              THE COURT:  It's going to be allowed.

2              MR. SCHAGER:  -- are going to be allowed.

3              THE COURT:  Okay.

4              MR. SCHAGER:  Right.

5              THE COURT:  What else?

6              MR. SCHAGER:  They have a claim for a -- some --

7    what's referred to as a cobra payment and I think that's

8    going to be allowed.

9              THE COURT:  Okay.

10             MR. SCHAGER:  They have a claim for RSUs and

11   obviously that's a big issue.

12             THE COURT:  Okay.  So --

13             MR. SCHAGER:  And they have a claim for their 2008

14   withheld compensation --

15             THE COURT:  Okay.

16             MR. SCHAGER:  -- which I think is going to go away

17   because it was an allowed claim previously.

18             THE COURT:  Okay.  Then we're just talking about

19   RSUs.

20             MR. SCHAGER:  In their cases, yes.  There are

21   other people who didn't get -- that didn't have claims in

22   the LBI proceeding.  What they have is a claim for money

23   withheld from their compensation in 2008, very small,

24   relatively small part of this dispute, but it's real and

25   some of the numbers are pretty big.  But those are claims

Page 60

1    for un -- withheld compensation in 2008 that were never --

2    and I'm probably -- practically quoting Judge Peck here --

3    that were never converted to RSUs.  And that is a different

4    type of claim.

5              THE COURT:  Can you show me --

6              MR. SCHAGER:  But counsel from the Second Circuit

7    --

8              THE COURT:  -- a piece of paper?  I have no idea

9    -- if there was a failure to issue RSUs, that's a breach.

10   It's still subordinated under 510(b).  It -- you never

11   established that people got a paystub from which cash money

12   was withheld.  That was never established.  I don't see any

13   allegation on that.

14             MR. SCHAGER:  It was discussed carefully in the

15   stipulation of facts.  It was not an issue -- in the other

16   proceeding.  It was not an issue in the hearing because all

17   the claims were allowed prior to the hearing.  But it was

18   certainly documented in the stipulation of facts.  It was

19   paragraphs 18 and 19 of the stipulation of facts --

20             THE COURT:  In the stipulation of facts --

21             MR. SCHAGER:  -- and pages --

22             THE COURT:  -- in the LBHI trial?

23             MR. SCHAGER:  The treatment of the withheld

24   compensation in 2008.  That's correct, Your Honor, because

25   the documents that were referred to and relied on in the

Page 61

1    stipulation of facts were LBI documents and they were --

2            THE COURT:  I'm terribly sorry, but I'm going to

3    say it again.  I just don't know what you're talking about.

4    I'm sorry.

5            MR. SCHAGER:  Your Honor, I could probably spend

6    the whole morning and not be articulate enough to be clearer

7    than I'm trying to be.  I will say --

8            THE COURT:  And I greatly apologize.  I just --

9            MR. SCHAGER:  Yeah.  No.

10           THE COURT:  I'm trying really hard to figure out

11   what you're talking about to determine if there's any merit

12   to it.

13           MR. SCHAGER:  I --

14           THE COURT:  You know, I keep coming back to where

15   I started.

16           MR. SCHAGER:  I did agree to this hearing.  I did

17   not anticipate that an omnibus reply would be handed to me a

18   week before the hearing.  I did my best to get our firm to

19   put together a responsive pleading and I think --

20           THE COURT:  Mr. Schager --

21           MR. SCHAGER:  -- we have addressed these --

22           THE COURT:  Mr. Schager, just answer --

23           MR. SCHAGER:  -- points in the pleading.

24           THE COURT:  -- just answer my direct question.

25   All right.

Page 62

1          MR. SCHAGER:  Yes, Your Honor.

2          THE COURT:  The opinion that I issued on November

3    3rd with respect to the RSUs in LBHI, is it or is it not

4    dispositive of the claims that you're asserting here subject

5    to your rights on appeal?

6          MR. SCHAGER:  Subject to our rights on appeal the

7    claim -- the decision would be dispositive on the RSU

8    portion of the claim.

9          THE COURT:  Okay.

10         MR. SCHAGER:  The directive of the Second Circuit

11   is you don't taint someone with being a shareholder and put

12   all of his claims into a shareholder bucket.  You've got to

13   look at the individual claims.  That's in the Med

14   Diversified case.

15         The claims --

16         THE COURT:  Whoa.  Whoa.  Whoa.  Wait --

17         MR. SCHAGER:  -- for accrued equity --

18         THE COURT:  Stop.  Stop.

19         MR. SCHAGER:  -- are different claims and they

20   were not addressed in the three-day hearing that we had last

21   spring except for --

22         THE COURT:  How many --

23         MR. SCHAGER:  -- this little cleanup.

24         THE COURT:  -- claims for accrued equity are in

25   the claims that are before me today?

Page 63

1           MR. SCHAGER:  Offhand I guess, Your Honor, I think

2    it's about a half a dozen or eight.

3           THE COURT:  And you believe that those --

4           MR. SCHAGER:  That point is only made in one of

5    the omnibus -- or maybe two of the omnibus objections raise

6    and address accrued equity claims.  The other omnibus

7    objections do not.

8           THE COURT:  And when you say accrued equity claims

9    you mean claims that were --

10          MR. SCHAGER:  In the document -- if I may, Your

11   Honor?  In the documents it is clear and there are documents

12   in this proceeding in support of the omnibus reply that

13   illustrate it.  In 2008 there was money withheld that was

14   called equity accrual calculated and that's been referred to

15   in shorthand as the claim for accrued equity.  It was equity

16   accrual calculated.  It was money that was withheld in the

17   2008 --

18          THE COURT:  Okay.  But it wasn't --

19          MR. SCHAGER:  -- in the -- if I may --

20          THE COURT:  But it wasn't --

21          MR. SCHAGER:  -- finish, Your Honor.

22          THE COURT:  -- it wasn't money --

23          MR. SCHAGER:  -- in the 2008 fiscal year.  And

24   those were -- that money had been identified carefully by

25   Judge Peck as far back as 2011 as being in a different

Page 64

1    category than the RSUs.  I apologize, Your Honor.

2            THE COURT:  Do you have any response to this

3    because I -- I am obviously quite lost.

4            MS. CHAU:  Yes, Your Honor.  I think that he was

5    at some point -- Mr. Schager was at some point referring to

6    the fact that LBHI may have settled some claims in its

7    proceeding for reduced amounts.  Of course, the fact that

8    LBHI chose to settle certain claims is not dispositive of

9    the validity of those claims -- of similar claims.

10           THE COURT:  But do you know what -- do you know

11   what these accrued equity claims are that --

12           MS. CHAU:  Yes.

13           THE COURT:  -- would fall -- that would survive

14   Footnote 18 so to speak?  I mean, these are claims based on

15   the claimant's right to receive RSUs.  They didn't -- they

16   either received the RSUs.  They're now worthless.  They want

17   money instead.  I said, no, you can't do that, or they had a

18   right to receive RSUs that were never issued and that was --

19   that's simply a breach of a contract to issue a security

20   which is also a subordinated claim.  That's it.

21           And I -- Mr. Schager, I think is trying to

22   convince me that there's something more, but I'm not seeing

23   it.  And maybe you can help me.

24           MS. CHAU:  Yes, Your Honor.  I mean, our position

25   is that these claims are exactly identical to the claims

Page 65

1     that were at issue in the LBHI proceeding.  I believe that

2     LBHI did choose to settle some claims at some point in the

3     past, but these claims were discussed during the hearing.

4     You are correct that what he's referring to and what we also

5     refer to as the accrued equity claims are these claims where

6     in 2008 they say that they earned the right to receive

7     equity awards that were never issued, and then that issue

8     was directly addressed in front of Your Honor and in Your

9     Honor's ruling.

10            THE COURT:  I mean, it would lead to the rather

11    absurd result that somebody who worked for Lehman for 20

12    years and had a huge amount of RSUs would get, under my

13    ruling, nothing, but someone who worked for Lehman for a

14    year and had an accrued but unclaimed right to receive RSUs

15    would receive cash.

16            MS. CHAU:  Yes, Your Honor.

17            THE COURT:  So that simple example highlights the

18    lack of merit of the position and the sense, if you will, of

19    characterizing a breach of an obligation to issue the equity

20    at the same level as equity that was already issued.

21            So from my perspective, Mr. Schager, and there are

22    these other aspects of these claims that you, I think,

23    correctly identified as being pulled out and allowed.  So

24    we're not talking about those.

25            But with respect to all of the claims that are

Page 66

1    asserted relating to RSUs and the failure to issue RSUs, my

2    ruling today is that my opinion dated November 3rd, 2014 and

3    the subsequent order dated November 7th, 2014, which is now

4    up on appeal, is applicable here and I'm going to follow it

5    so that we should enter an order to that effect and you will

6    have your appeal rights and you can take it up and

7    consolidate it.

8              I do think that one could make the observation

9    that because this is LBI -- they're LBHI securities so I

10   think it's on all fours.  To the extent that one wants to

11   take into account the difference between LBI and LBHI, you

12   could throw the Claren Road (ph) holding into the mix

13   because LBI and LBHI are affiliates.

14             So you might -- someone might additionally observe

15   that you also need Claren Road because of the affiliate

16   connection.  I'm not sure that you do.  Either way you get

17   to the same bottom line which is that the objection is

18   sustained.

19             MS. CHAU:  Thank you, Your Honor.

20             THE COURT:  You can have a turn to tell me that

21   you don't know what I'm talking about, Mr. Schager, if you

22   like.  I know you disagree with me.

23             MR. SCHAGER:  I think I'll try to say two things,

24   Your Honor.  One is this; that there are other aspects of

25   these objections that I think ought to be resolved by

Page 67

1    counsel.  Ms. Chau and I have talked about them in advance.

2    There are some details about certain claims that shouldn't

3    be in front of the Court because there's an understanding

4    that they will be allowed and you shouldn't --

5            THE COURT:  Okay.

6            MR. SCHAGER:  -- have to dig through the papers to

7    do that and I don't think there should be an order --

8            THE COURT:  I think that -- I think that in the

9    reply there was an attempt to go through the other aspects

10   of the claims and there were indications that I think all of

11   them appear to have been resolved, those other aspects.

12           MS. CHAU:  All but one, Your Honor.

13           THE COURT:  Okay.

14           MR. SCHAGER:  There are a couple of ambiguities

15   there --

16           THE COURT:  All right.  Well, why don't you --

17           MR. SCHAGER:  -- and severance allowed in one and

18   not in the other case, and a description of a certain claim

19   that I couldn't quite understand.  And, you know, if I live

20   this and don't understand it I don't think you should be

21   required to parse through it.

22           The second thing, Your Honor, I mean, I -- I

23   understand what you're saying about the RSUs and I

24   understand your views of your decision of November 3.  And

25   I'm not going to dwell on it, but --

Page 68

1              THE COURT:  Let me be perfect --

2              MR. SCHAGER:  -- I want to ask what --

3              THE COURT:  Let me be perfect -- let me say this

4    out loud, okay.  I was -- that wasn't a happy day for me to

5    tell those employees that their $350 million in claims

6    couldn't be allowed, not my first choice, but I have to

7    follow the law.  I felt quite sad for a number of those

8    claimants, indeed all of them, who worked hard for this

9    enterprise and who were, in every sense, victims of Lehman's

10   failure.

11             But I have to follow the law and the law to me was

12   clear.  To the extent that the District Court and the

13   Circuit say that I was wrong, I will accept that and I will

14   be happy for those employees.  But that -- but that's where

15   we are now.

16             MR. SCHAGER:  I --

17             THE COURT:  I just don't want you to -- I think

18   that sometimes folks can feel, as I think some of your

19   clients did, that Lehman always wins or that the Court is

20   always on Lehman's side, not true, not true.  I follow the

21   law based on the arguments that are presented before me.

22   And I know given your experience that you can -- that you

23   can appreciate that.

24             But I take no pleasure in denying employee claims.

25             MR. SCHAGER:  Thank you, Your Honor, for that

Page 69

1    comment.  I -- the second comment I want to make is this.

2    You're going to be calling for an order and an order is

3    going to be submitted.  The one thing I would ask is this;

4    that the -- this equity accrual argument was addressed in a

5    very cursory way.  What you're summarizing as your views of

6    it is not really what happened in -- as would apply in this

7    case because you didn't have those claims in front of you in

8    the LBHI case.

9            An order will be submitted by the trustee, by the

10   trustee's counsel, and I'm going to be offering some

11   contrary comments on it because I don't think we're going to

12   be able to settle the form of an order, and in that context

13   and the context of my comments I respectfully request Your

14   Honor to understand the circumstances of this briefing.  I

15   know that surreplies are not permitted, but we know the

16   situation here is that the omnibus reply was quite a bit

17   different than the initial objections and we never had an

18   opportunity to comment on it.

19           THE COURT:  Okay.  I --

20           MR. SCHAGER:  I hope Your Honor will --

21           THE COURT:  Now I'm --

22           MR. SCHAGER:  -- give me the good grace of

23   considering the response that we submitted last night in the

24   context of signing the order.

25           THE COURT:  Okay.  I'm not going to open myself up

Page 70

1    to criticism that you filed pleadings that I didn't

2    consider.  That -- I'm not going to have that be a basis for

3    being overturned on appeal.

4            So, number one, there -- there was a surreply

5    that's not contemplated by the rules.

6            Number two, it was filed without any notice to us

7    at minutes before nine last night.

8            Number three, none of this is new because it's all

9    the same thing that we did in the LBHI case.  So I don't --

10   again, I don't know what you mean.

11           To the extent that some of these claims assert

12   claims for RSUs that you say were accrued, but were not

13   issued, my ruling applies with equal force that that simply

14   is a claim for the breach or the failure to issue

15   securities, a claim which is also subject to subordination

16   under 510(b).

17           MR. SCHAGER:  Okay.

18           THE COURT:  If you want me to go and read your

19   brief before I enter the order, and if upon reading your

20   brief I reconsider what I just said, we will reconvene the

21   hearing.  But you're saying that you're going to undertake a

22   debate in the context of the order.  I don't know what that

23   means.  I'm -- I've ruled.  So I don't know what you mean.

24           If you feel that I didn't address it enough in the

25   LBHI proceeding, that doesn't matter.  If I did, I'm

Page 71

1    applying it.  If I didn't, I'm articulating it here on these

2    papers now.  So I don't know what -- I don't know what to

3    make of your saying that you're going to have a debate on

4    the order.

5            MR. SCHAGER:  I was assuming, Your Honor, that the

6    trustee's counsel would be submitting a form of order for

7    you to sign and --

8            THE COURT:  Sure.

9            MR. SCHAGER:  -- and that would be on notice and I

10   --

11           THE COURT:  Right.

12           MR. SCHAGER:  -- I would respond to it.

13           THE COURT:  Well, I don't want you to respond to

14   me.  I mean, the order should reflect the dispositions here

15   today and I want to go through all the non-RSUs objections

16   to make sure that -- I want to fully dispose of all of these

17   objections.  So you highlighted a number and the trustee

18   highlighted a number of other claims that were either going

19   to be allowed or not allowed.  And I want to make sure we

20   have everything covered.  Okay.

21           You highlighted a number of claims that were going

22   to be allowed, so the order should reflect that, aspects of

23   claims, right?

24           MR. SCHAGER:  Okay.

25           THE COURT:  Okay.

1         MR. SCHAGER:  And we have a -- will we have an

2    opportunity, Your Honor, to discuss those claims as we did

3    before the hearing today?  I think it would be useful to the

4    Court to clean up as many of these things as possible.

5         THE COURT:  Okay.  You identified a group that are

6    allowed.  What else?  What remains not in the RSU bucket and

7    not in the bucket of claims that you've asserted that the

8    trustee has agreed to allow, what's left?

9         MR. SCHAGER:  I think there are some -- I think

10   there are one or two non-RSU, non-equity accrual claims --

11        THE COURT:  Okay.  Let's talk about them.   Which

12   ones are they?

13        MR. SCHAGER:  One that comes to mind, Your Honor,

14   is the claim of John Marzoni (ph).  It's addressed --

15        THE COURT:  Okay.

16        MR. SCHAGER:  -- obliquely in the papers and I

17   think there's a -- again, I think there's a way that we

18   could work this out with the trustee's counsel.

19        Mr. Marzoni's claim was that he was retained by

20   LBI and given a commitment of $400,000 to come to Lehman and

21   develop a new business.  That commitment was $400,000 over

22   two years payable in monthly instalments, but the nature of

23   the agreement was not an employment contract.  It was come

24   to us, get this business started.  It won't be revenue

25   producing at the beginning, but it will be over time and

Page 73

1    we're committing to pay you $400,000 for coming --

2              THE COURT:  But what the --

3              MR. SCHAGER:  -- in and starting --

4              THE COURT:  What the trustee --

5              MR. SCHAGER:  -- that business.

6              THE COURT:  What the trustee says about Mr.

7    Marzoni's claim is at page 18 of the omnibus reply,

8    referring to Claim 5501.  Mr. Marzoni asserts a claim for

9    monthly draw purportedly owed pursuant to an employment

10   contract between Mr. Marzoni and LBI for periods after the

11   filing date.

12             Trustee objected to this portion of Claim 5501 on

13   the basis that the employment contract in question entitled

14   Mr. Marzoni to such payments only for periods of active

15   employment with the firm and Mr. Marzoni was not actively

16   employed by LBI during the post-filing period dates in

17   question.

18             So that's the bid and the ask on that.

19             MR. SCHAGER:  Well, a little more than that, not

20   much.  But the one is that what you've got is the employment

21   agreement itself submitted -- if that's what it's called --

22   or the agreement to pay $400,000 and Mr. Marzoni's affidavit

23   of it, which is, of course, something admissible as

24   evidence.

25             What we have here is counsel's characterization of

Page 74

1    what LBI feels this is all about.  But as an evidentiary

2    matter there's no evidence of how LBI treated this

3    employment agreement.  There's just this --

4              THE COURT:  Okay.

5              MR. SCHAGER:  -- summary of --

6              THE COURT:  Okay.  But --

7              MR. SCHAGER:  -- of papers.

8              THE COURT:  -- did Mr. Marzoni work for LBI during

9    the post-filing period?

10             MR. SCHAGER:  I don't believe so, Your Honor.

11             THE COURT:  Okay.

12             MR. SCHAGER:  I'm not sure of that.  I don't

13   believe so.

14             THE COURT:  So Mr. Marzoni is making a claim for

15   money, but he never worked -- did any work?

16             MR. SCHAGER:  No.  That's not true.  He was

17   promised a payment over time --

18             THE COURT:  No.  No.

19             MR. SCHAGER:  -- for bringing in business and

20   starting a business at Lehman, and he came.  He worked at

21   that business.  He started that business and got it going

22   and it was profitable.  So he -- he basically sold Lehman

23   his ability to build a business and they bought it and they

24   were paying him over time.

25             MS. CHAU:  Your Honor, the contract which is

Page 75

1    attached to Mr. Marzoni's claim says that he is entitled to

2    payment of, I believe, $33,333 every month while he was

3    actively employed by LBI.  He was not actively employed by

4    LBI after the filing date and he has not asserted that he

5    was.

6              So, I mean --

7              THE COURT:  Mr. Schager, where -- show me in his

8    affidavit where he says he was actively employed by LBI.

9    It's at Docket 8802.  I was a --

10             MR. SCHAGER:  I'm afraid I do not have --

11             THE COURT:  Okay.

12             MR. SCHAGER:  -- Mr. Marzoni's affidavit --

13             THE COURT:  I have it.

14             MR. SCHAGER:  -- with me, Your Honor.

15        (Pause)

16             MR. SCHAGER:  The point I was hoping to make, Your

17   Honor, was that these were things that we should be able to

18   work out in advance of submitting an order to Your Honor --

19             THE COURT:  Well, we're just going to --

20             MR. SCHAGER:  -- and how they're treating it.

21             THE COURT:  I mean, we don't have a meeting of the

22   minds on this particular claim.

23        (Pause)

24             THE COURT:  He says that the claim is based on

25   LBI's inducing me to leave my prior employment and to come

Page 76

1    to work for LBI developing a business.  During my initial

2    start-up phase of developing this business LBI guaranteed me

3    a payment of $400,000.

4            I would suggest that you carve this claimant's

5    claim out of the order and make a determination as to

6    whether you agree or not.  If there's no agreement we'll

7    have a -- proceed to a trial on the claim.  I mean, you're

8    --

9            MR. SCHAGER:  We'll try to avoid that, Your Honor.

10           MS. CHAU:  Your Honor, just to go a little bit

11   more into depth about the trustee's argument on the claim, I

12   mean, Mr. Marzoni asserts that he was entitled to $400,000

13   under the terms of his agreement with Lehman.  The contract

14   conditions the continued payment to Mr. Marzoni on his

15   continued employment with LBI and it does so explicitly.

16           THE COURT:  Can you send -- does someone have a

17   copy of the contract?

18           MS. CHAU:  It is attached to his claim which

19   unfortunately I only have one copy of, but I could --

20           THE COURT:  I have his response.  It's not

21   attached to the response.

22           MS. CHAU:  No.  It is attached to his claim.

23       (Pause)

24           MS. CHAU:  Yes. I believe it's also attached as

25   Exhibit 9 to my declaration filed with the reply.

Page 77

1                THE COURT:  Okay.  Filed with the reply.  Okay.

2    Give me a moment, then.  Exhibit 9.

3         (Pause)

4                THE COURT:  Do you have a page?

5                MS. CHAU:  Yes.  It's --

6                THE COURT:  It's -- at the top on the docket it

7    numbers the pages.  130 maybe, one --

8                MS. CHAU:  I have a version of it here that I

9    could approach and show Your Honor.

10               THE COURT:  Okay.  I'm sorry.  I just can't seem

11   to -- I'm up to 8.  Wait.  I'm getting there.  I'm getting

12   there.  Here it is, Exhibit 9.

13        (Pause)

14               MS. CHAU:  So he's attached this contract.  And in

15   paragraph 1 it says during the first 24 months of your

16   active employment with the firm you'll receive a monthly

17   draw payment of $33,333.

18               THE COURT:  Okay.

19               MS. CHAU:  If you turn to, I believe there's a fax

20   transmission page in the middle, but then the rest of his

21   contract was after that.

22               THE COURT:  Right.

23               MS. CHAU:  It states that his employment is at

24   will.  There's no assertion that he was employed by the

25   trustee or LBI after the filing date.  So the contract is

Page 78

1    clear that while he's not employed by LBI he's not entitled

2    to further payments.

3            THE COURT:  So is the point that he -- so this

4    contract -- you're not disputing this contract, whether

5    payments were made pursuant to the contract beginning in

6    January of 2007?

7            MS. CHAU:  Yes, Your Honor.

8            THE COURT:  But you're -- the trustee is saying

9    that he did not continue to work for LBI post-filing?

10           MS. CHAU:  Yes, Your Honor.  And he's seeking the

11   payments -- I think he says it explicitly in his declaration

12   that he's seeking the payments that would have been due if

13   he had continued to be employed by LBI post-filing.

14           THE COURT:  Okay.  Mr. Schager.  And he doesn't --

15   if he wasn't working at LBI he doesn't get paid.

16           MR. SCHAGER:  Your Honor, I've offered into

17   evidence Mr. Marzoni's understanding of this agreement.  And

18   the agreement was part of his -- it's identified there as

19   Document 1.  That's because he submitted it with his proof

20   of claim and I believe we also submitted it with the

21   opposition to the omnibus objection.

22           All I can offer you is Mr. Marzoni's testimony at

23   this point which I've done.  I think there ought to be some

24   testimony back characterizing --

25           THE COURT:  No.  No.  No.  There's --

Page 79

1            MR. SCHAGER:  -- agreements --

2            THE COURT:  -- only one issue.  There's only one

3    issue, whether or not he worked at LBI post-filing -- post

4    the filing.  It's a yes or no.  He either worked there or he

5    didn't.  If he worked there he gets paid.  If he didn't, he

6    doesn't.  It's no more complicated than that.  It's not a

7    question of the interpretation of the contract.  The

8    contract talks about his active employment by the firm.

9            MR. SCHAGER:  Mr. Marzoni has not alleged, Your

10   Honor, that he was employed as of the petition date.

11           THE COURT:  Then his claim needs to be disallowed.

12   There is a District Court opinion that was just issued two

13   days ago, in fact, affirming a decision of mine on a similar

14   case, somebody seeking to be paid a bonus, but not having

15   worked.  So I'm going to deny the claim unless he wants to

16   come in and testify that, in fact, he worked for LBI after

17   the filing date.  But you've said that that's not the case

18   so that, therefore, the claim has to be disallowed.  Okay.

19           MR. SCHAGER:  Thank you, Your Honor.

20           THE COURT:  All right.

21           MS. CHAU:  Thank you, Your Honor.

22           THE COURT:  Is there any other loose ends, other

23   claims?

24           MS. CHAU:  I believe that all of the rest of the

25   claims Mr. Schager and the trustee have an agreement on or

Page 80

1    in the case of there may be one pro se claimant they did not

2    respond to that portion of the claim.  It was, I believe, a

3    claim for a 401(k) that was not held at LBI.  So they didn't

4    respond to those portions of the claims so --

5            THE COURT:  So then the trustee's objection with

6    respect to that will be sustained.

7            MS. CHAU:  Thank you, Your Honor.

8            THE COURT:  Okay.  If as you're going through this

9    and you -- because I want the order to fully dispose of

10   everything that was covered.  If there's something that we

11   missed, then we'll have to -- we'll have to resume.

12           MS. CHAU:  Yes, Your Honor.  I think that we can

13   work with Mr. Schager for the rest of them.

14           THE COURT:  Okay.  All right.  Mr. Schager, thank

15   you for your patience with me today.

16           MR. SCHAGER:  Thank you, Your Honor --

17           THE COURT:  All right.

18           MR. SCHAGER:  -- for your patience with me.

19           THE COURT:  Thank you.

20           MS. CHAU:  Thank you.

21       (Recess taken at 11:37 a.m.; resume at 2:08 p.m.)

22           THE COURT:  Good afternoon.

23           Okay.  Thank you all for coming back today.

24           The -- now our purpose of coming back today was to

25   continue to discuss discovery issues that we were not able

Page 81

1    to resolve last time.  And in the interim I've had an

2    opportunity to go back and pour over the papers.  And for

3    better or worse I have more questions than I did when we

4    were last together.  So to the extent that this feels a

5    little bit like a do-over, I apologize, but I think it's

6    very important to have clarity about what it is we're about

7    to embark on.

8             The first question that I have is the original

9    application which was filed at Docket 24762 is styled

10   omnibus application of individual members of official

11   committee (I) and, (II) Indenture trustees.

12            Each indenture trustee that's seeking relief in

13   this application was a member of the committee.  Is that

14   correct?

15            MS. COFFINO:  That's correct, Your Honor.

16            THE COURT:  Can anybody explain why the

17   application was styled the way that it was?  In other words,

18   the (II) mention of indenture trustees to me seems to be

19   unnecessary.

20            MS. COFFINO:  Do you want me to come to the

21   podium?

22            THE COURT:  Sure.

23            MS. COFFINO:  Your Honor, it was styled that way

24   specifically because the indenture trustees, there's two

25   parts to their claims.  One is for their work on the

1    committee as committee members and one is for non-committee

2    work that they did as indentured trustee.  And it is, if you

3    look at the declaration particular my client, Julie Becker

4    (ph), it's laid out in her declaration.

5                THE COURT:  Well, that's where -- that's where my

6    confusion came from because in Judge Sullivan's order this

7    issue is not addressed.

8                MS. COFFINO:  I think that's right.  It's not

9    addressed.  It's just whether committee members can get a

10   substantial contribution award for work done as committee

11   members.  I think that's what's addressed in his -- I don't

12   know that it was ever argued.  I think the issue that was

13   argued on appeal was that specific issue.

14               THE COURT:  So say it again.  The indentured

15   trustees who are -- who were committee members are seeking

16   two different buckets of expenses?

17               MS. COFFINO:  Yes.  I know Wilmington Trust is.  I

18   defer to --

19               THE COURT:  Well, there's a -- for Wilmington

20   Trust, for example, there's four different line items of

21   varying sizes.

22               So the non -- so there were professionals working

23   for Wilmington Trust, just by way of example, who were not

24   doing things connected to Wilmington Trust's role in the

25   committee?

Page 83

1          MS. COFFINO:  That's correct, in part.  In part

2     it's -- it also seeks compensation for work done for

3     Wilmington Trust in their capacity as a committee member.

4     It's both.  The claim is both or includes both.

5          THE COURT:  And the claim is that wearing each of

6     these hats a substantial contribution was made.

7          MS. COFFINO:  Yes.  Not for the same work, though,

8     I mean, for different work done.

9          THE COURT:  For different work done that was not

10    duplicative of work done by the committee.

11         MS. COFFINO:  Yes.  Yes.

12         THE COURT:  Okay.  When -- at the last hearing

13    which you were not able to attend --

14         MS. COFFINO:  Right.

15         THE COURT:  -- because you had a conflict, we

16    spent a lot of time going back and forth over what seemed to

17    me at the time to be merely procedural, how discovery and

18    how the presentation of the issues was going to play out.

19         But having been thinking about it a lot since then

20    and having gone back and looked at all of the documents, we

21    have to rethink what --

22         MS. COFFINO:  Well --

23         THE COURT:  -- what we concluded a couple of days

24    ago because I'm not prepared to go forward the way things

25    stand right now.

Page 84

1              MS. COFFINO:  We actually have rethought it.  We

2       gave a lot of thought to it after last week's hearing and I

3       would like to speak to that issue --

4              THE COURT:  Okay.

5              MS. COFFINO:  -- for a few minutes.

6              We realize, of course, that there's been a

7       stumbling block between -- for us and the U.S. Trustee over

8       the last four months over this filing of the supplemental

9       claim and new declarations and the like, and we have

10      resisted because we didn't feel we had to put in evidence at

11      the beginning of the case as opposed to the end of the case.

12             But in considering your comments last week and the

13      arguments by the U.S. Trustee as to clarity, you know, we do

14      have a basic and a fundamental disagreement on the legal

15      standard here and whether -- I know that the U.S. Trustee

16      strongly feels that -- and putting aside the indentured

17      trustee work -- that committee members can never receive a

18      substantial --

19             THE COURT:  Right.  But --

20             MS. COFFINO:  -- contribute -- they know that.

21             THE COURT:  But we're --

22             MS. COFFINO:  We differ.

23             THE COURT:  That's --

24             MS. COFFINO:  Right.

25             THE COURT:  That's for --

Page 85

```
 1              THE COURT:  Right.

 2              THE COURT:  That's for those above our pay grade

 3    --

 4              MS. COFFINO:  That's right.

 5              THE COURT:  -- to decide, so.

 6              MS. COFFINO:  And we intend to prove extraordinary

 7    case, extraordinary work, extraordinary results for a whole

 8    host of reasons.  But what we want to propose to facilitate

 9    this is that within say the next three weeks we file what

10    we've been calling a notice of theory of the case or it

11    could be a notice of statement of the case -- the name is

12    not important -- that outlines what our theories are, what

13    our arguments are, including --

14              THE COURT:  But --

15              MS. COFFINO:  -- what we're asking for.

16              THE COURT:  Okay.  But let's focus on the last

17    point, including what you're asking for --

18              MS. COFFINO:  Right.  Uh-huh.

19              THE COURT:  -- because when we were here together

20    last time I asked the specific question, are you standing by

21    your original application asking for every minute of every

22    hour and every penny of every dollar, and the answer was

23    yes.

24              MS. COFFINO:  I know that.  I read the transcript.

25    We wanted a little time to think about it.
```

Page 86

1            THE COURT:  Okay.  Well --

2            MS. COFFINO:  We've revisited that issue --

3            THE COURT:  Well, I'm going to --

4            MS. COFFINO:  -- and we may be -- in the end we

5      may be.

6            THE COURT:  Okay.  But let me --

7            MS. COFFINO:  But --

8            THE COURT:  -- let me try to inform your thought

9      process.

10           MS. COFFINO:  Sure.

11           THE COURT:  Because I was a little slow to focus

12     on this and it's a lesson in how to read judicial opinions

13     and perhaps on how to write them.  But the most important

14     words that Judge Sullivan wrote on the substantial

15     contribution argument is not, in fact, in that section of

16     his opinion.  It's in the previous section.  And that was

17     the language that appears after his very long discussion of

18     Adelphia and the policies and how my dear friend, Judge

19     Gerber, did not get it right.

20           Be that as it may, the punch line is "To the

21     extent official committee members perform extraordinary work

22     to benefit the estate above and beyond normal committee

23     duties, they may, as will be explained below, seek to be

24     reimbursed under 503(b)(3)(D) and 503(b)(4)," et cetera.

25           So Judge Sullivan is clearly drawing a distinction

Page 87

1    that I was trying to get at last time between, you wake up

2    in the morning and you have your daily committee call.

3    That's normal committee work.  You sit on the phone for a

4    half an hour while tons of lawyers give you an update on the

5    case.  That's normal committee work.

6            You get on the very first phone call meeting.

7    This is the first meeting of the creditors committee of

8    Lehman Brothers, normal committee work.  It cannot be that

9    every single hour of every single day is extraordinary work

10   that's not normal committee work.  It just cannot be.

11           And it -- if there's not going to be a further

12   refinement and breakdown of it, then I'm simply going to

13   deny the application without prejudice to re-file it because

14   as I said last time and I stand by now, I'm not going to be

15   the sorting hat here.  I'm not going to go through all these

16   time records and have you make these presentations about

17   extraordinary work and then have to go through and extract

18   some things that I think were truly special.

19           That's your burden.

20           MS. COFFINO:  We know that.

21           THE COURT:  Okay.

22           MS. COFFINO:  We know.

23           THE COURT:  So that's your burden.  So where

24   things stand now as far as I'm concerned, frankly, are a

25   non-starter.  They're a non-starter in terms of applying

Page 88

1    Judge Sullivan's rule of law which I have to because we're

2    on a remand.

3            The other thing is -- and, again, having gone back

4    through what was submitted to become more familiar with

5    this, right off the top -- and these are largely duplicative

6    of them.  These are not the spoke declarations.  They're

7    duped from one to the other.  Right off the top you -- I can

8    easily observe things that are -- they're not going to pass

9    muster.  Okay.

10            For example, near and dear my heart, the

11    involvement of Lehman in Innkeepers.  For better or worse I

12    was there.  There was a wildly unsuccessful first

13    transaction that was proposed that would have greatly

14    benefited Lehman.  It didn't work.  I think it's

15    inconsistent with a lot of the case law on substantial

16    contribution to seek to be compensated for stuff that didn't

17    succeed.

18            Also in that category one of the declarants talks

19    about participation in the Barclay sale.  Well, the notion

20    that there was a substantial contribution in connection with

21    the Barclay sale is interesting to say the least.  But then

22    the icing on the cake is to add the involvement in the

23    unsuccessful attempt to subsequently undo the Barclay sale

24    or augment the Barclay sale.

25            So you may disagree with me.  That's your --

Page 89

1    that's your right.  But I am -- don't want to go down a path

2    that, from my mind, is destined to slam you into a brick

3    wall and that's where I see this now.  And we haven't even

4    gotten to the issue of attorney/client privilege.

5              MS. COFFINO:  Right.

6              THE COURT:  Right, which is another brain -- makes

7    my brain smoke because it -- to the extent that you're going

8    to rely on -- you're going to assert attorney/client

9    privilege, I am having a hard time understanding how you're

10   going to discharge your burden and allow the U.S. Trustee

11   the opportunity to conduct discovery when most of the

12   documents are going to be privileged, either as between a

13   committee member on the one hand and committee counsel on

14   the other hand, or a committee member on the one hand and

15   committee members' individual counsel on the other hand.

16             So I just don't understand how you're going to

17   discharge your burden by saying, oh, look, here's what we

18   did and not reveal the documents that do that.  I mean, in a

19   normal fee application, right, you -- you know, you redact

20   them or you make them general enough that you can see what's

21   going on.

22             So I'm sorry to ramble on, but --

23             MS. COFFINO:  No.  That's --

24             THE COURT:  -- I just -- I've been worried about

25   this since you were here last time.

Page 90

1              MS. COFFINO:  I'll respond to it all.

2              First of all in the first issue I -- we understand

3      and we appreciate the guidance at this stage of the case --

4              THE COURT:  Okay.

5              MS. COFFINO:  -- really.  That's part of what we

6      were going to do is go back and look and see --

7              THE COURT:  Okay.

8              MS. COFFINO:  -- what we can do.  That was what

9      spurred our proposal.

10             THE COURT:  Okay.

11             MS. COFFINO:  Okay.

12             THE COURT:  So we were -- great minds were

13     thinking alike.

14             MS. COFFINO:  Yes.  Yes.  I read your transcript

15     --

16             THE COURT:  Okay.

17             MS. COFFINO:  -- carefully twice.

18             And on the second issue, you know, from our

19     perspective we didn't see this as a document intensive case.

20     We saw our case in chief relying mostly on witness testimony

21     and non-privileged documents because we -- you know, as I

22     sit here today I don't see how the substance of what the

23     advice was affects the award.

24             THE COURT:  That's true.  But I think -- and I'll

25     give Ms. Golden or Ms. Schwartz an opportunity to speak now

Page 91

1   that they've heard -- I don't know if you shared this with

2   them before you came.  I'm seeing head nods --

3            MS. COFFINO:  I -- not that argument I didn't.

4            THE COURT:  No.  No.  No.  No.  The -- that you

5   were going to --

6            MS. COFFINO:  The proposal?  No --

7            THE COURT:  -- make a new submission.

8            MS. COFFINO:  -- we didn't.  No.

9            THE COURT:  Okay.  So I think that they -- they

10  will need, I'm guessing, some time to reflect and then see

11  what you come back with and then everybody will need to

12  regroup and --

13           MS. COFFINO:  Right.

14           THE COURT:  -- and decide what's going to happen

15  next because --

16           MS. COFFINO:  Right.

17           THE COURT:  -- I take your point that if the

18  witnesses -- if it becomes more apparent that you're talking

19  about, you know, tasks A through Z, items A through Z in

20  particular time periods, maybe it becomes a less document

21  intensive case.

22           MS. COFFINO:  We clearly understand that you can't

23  use the privilege as a sword and a shield.

24           THE COURT:  Exactly.

25           MS. COFFINO:  We get that.

```
 1              THE COURT:  Right.

 2              MS. COFFINO:  And what -- but the only privilege

 3    that we can, as individual creditors, waive are our own

 4    privilege, the privilege between --

 5              THE COURT:  Right.

 6              MS. COFFINO:  -- of communications between, for

 7    example, Wilmington Trust and Covington & Burling.

 8              THE COURT:  Right.

 9              MS. SCHWARTZ:  We can't waive the committee --

10    Individually --

11              THE COURT:  Sure.  Sure.

12              MS. COFFINO:  -- they can't waive the committee's

13    --

14              THE COURT:  Right.

15              MS. COFFINO:  -- and, in fact, there are still

16    active litigations involving --

17              THE COURT:  Oh, understood.

18              MS. COFFINO:  -- some of those subjects.

19              THE COURT:  Understood.

20              MS. COFFINO:  So that's -- that is an issue.  And

21    our position on the scheduling order initially was the

22    burden of producing a privilege log, which is a -- it's a

23    procedural issue.  It's not your -- on the merits issue.

24    But was so extreme that we were concerned we would spend

25    more money litigating this claim than we were seeking.
```

 1                    THE COURT:  Well --

 2                    MS. COFFINO:  And because it's three-and-a-half

 3      years of tens of thousands of documents from --

 4                    THE COURT:  I understand.  Oh, I --

 5                    MS. COFFINO:  -- from professionals --

 6                    THE COURT:  -- I understand.

 7                    MS. COFFINO:  -- that we don't think we're going

 8      to need to put into evidence to make our case.

 9                    THE COURT:  Let me ask another question on a

10      different topic.

11                    MS. COFFINO:  Sure.

12                    THE COURT:  Has the money been paid to the --

13                    MS. COFFINO:  Yes, it was.

14                    THE COURT:  -- claimant group?

15                    MS. COFFINO:  It was paid after Judge Peck's

16      ruling and I think the order says that we don't have to give

17      it back until after a final order and there is no final non-

18      appealable order.

19                    THE COURT:  Okay.

20                    MS. COFFINO:  So --

21                    THE COURT:  Well --

22                    MS. COFFINO:  So what we propose to do on that --

23      and originally we said no, no log.  We didn't want a log.

24      We couldn't get there.  We do propose that what --

25      afterwards on ESI discovery and the privilege that we're

Page 94

1   waiting to see what the document requests are because we

2   don't -- a document by document privilege log, as I

3   mentioned, is going to be extraordinarily expensive and

4   there may be some middle ground that we can come to once we

5   see the documents that are being requested.

6          THE COURT:  Well, you know, your comment about the

7   sword and the shield is right.  I don't think it's -- it's

8   not fruitful, I don't think, to discuss this more now

9   because --

10         MS. COFFINO:  Okay.

11         THE COURT:  -- they have to -- the U.S. Trustee --

12  and I see Mr. Oswald in the gallery here.  Am I taking a

13  guess that you're here on behalf of the estate?

14         MR. OSWALD:  Yes, Your Honor.  For the trust.

15         THE COURT:  For the trust.  So the U.S. Trustee

16  and the trust have to see what you come up with.

17         MS. COFFINO:  Right.

18         THE COURT:  I mean, if you -- if you come back and

19  you say $24 million, that's one thing.  If you come back and

20  you say $4 million, that's another thing.  And one of the

21  themes that I went through or tried to go through repeatedly

22  last time was we've gotten the guidance from Judge Sullivan.

23  We're now back to a 503(b) substantial contribution

24  application.  Let's try to act as if we're in, you know, a

25  normal world.

Page 95

1              MS. COFFINO:  Right.

2              THE COURT:  Right.  So in a normal world where a

3    503(B) substantial contribution application would come in,

4    the economic party in interest, here the trust, would have

5    something to say about it.

6              Now it's a little peculiar here because this was

7    originally part of a plan that obviously the debtor agreed

8    with.  But now we have a situation in which there's $26

9    million at stake.  There's an -- there's an economic

10   interest that the trust has because to the extent that there

11   is -- to the extent that hypothetically I find for something

12   less than 26 million or you ask for something less than 26

13   million, that money comes back in.

14             So while I totally respect the U.S. Trustee's

15   position here, there is room for a fiduciary to be on the

16   other side of the conversation.  If -- if this were a normal

17   case you would make the five -- you would make the

18   substantial contribution application.  The debtor might

19   object.  The debtor might say, well, that's too much, but

20   I'll give you half and I'll settle for that.  And there

21   would be a 9019.

22             So everyone -- we have to have like a paradigm

23   shift here to think about this going forward.

24             MS. COFFINO:  The only thing I would say is that

25   we did make a claim and they didn't object.  We did make the

Page 96

1   claim.  They did not object to either part, the 1129(a)

2   forward to be put in the plan or the 503(b) part of it.

3   They had the opportunity to object two years ago.  The

4   debtors did not object.

5          THE COURT:  Right, because it was part of --

6   because the construct there was that it was a plan payment.

7          MS. COFFINO:  But the application itself had both.

8   The application --

9          THE COURT:  I'm not going to tell anybody what to

10  do.  I'm merely making the observation that we have a very,

11  very odd situation now because --

12          MS. COFFINO:  I don't disagree with you on that

13  one.

14          THE COURT:  It's just a -- it's a very odd

15  situation because there's -- there -- it does not seem to

16  me, and maybe Ms. Schwartz or Ms. Golden can correct my

17  impression.  But it doesn't seem as if we're in

18  configuration as we would be in a normal case where there

19  might be a negotiation around a resolution of this.  That's

20  all.

21          MS. COFFINO:  Okay.  Well, I guess I'll cede the

22  podium to see what comments they have.

23          THE COURT:  I don't -- for what it's worth and

24  whether the estate -- the trust gets involved or not, I

25  don't view as -- I don't view the trust's hands as being

Page 97

1    tied by what was proposed as part of the plan.  But I'm not

2    directing that anybody do anything.

3              Ms. Schwartz.

4              MS. SCHWARTZ:  Yes.  Good afternoon, Your Honor.

5    Andrea Schwartz and Susan Golden for the United States

6    Trustee.

7              Your Honor, we appreciate your comments today and

8    in a way, you know, you're right.  I mean, we were at the

9    paradigm shift, but we were in an awkward position when we

10   were last before the Court --

11             THE COURT:  Well, I was slow -- I was slow on the

12   uptake.

13             MS. SCHWARTZ:  Yeah.

14             THE COURT:  And --

15             MS. SCHWARTZ:  No.  And I was in an awkward

16   position trying to explain to you what the other side was

17   trying to claim.  So I apologize, Your Honor, if I wasn't --

18             THE COURT:  There's -- you did your job and I

19   eventually --

20             MS. SCHWARTZ:  Yeah.

21             THE COURT:  -- I eventually got focused on what I

22   needed to get focused on.

23             MS. SCHWARTZ:  Right.

24             THE COURT:  So we are where we are and --

25             MS. SCHWARTZ:  Right.

1          THE COURT:  -- and Ms. Coffino is -- I think that

2     they -- they read the transcript and I think we're at a

3     different place now --

4          MS. SCHWARTZ:  Yes.  I hope we are.

5          THE COURT:  -- from where we were.

6          MS. SCHWARTZ:  I hope we are, Your Honor.

7          THE COURT:  So --

8          MS. SCHWARTZ:  And as -- and as Ms. Coffino

9     acknowledged to you, we had no idea about their proposal and

10    what they were going to do, et cetera.  They hadn't reached

11    out to us.

12         But that said, I think something is important here

13    that we all -- we believe that the Court would be mindful of

14    is that the issue before the Court -- what first has to

15    happen is that the claimants have to establish a substantial

16    contribution claim under the law irrespective of whether or

17    not what Judge Sullivan said with respect to --

18         THE COURT:  No.  I'm with you, but it --

19         MS. SCHWARTZ:  -- it being extraordinary --

20         THE COURT:  -- but it's more than that.  As --

21         MS. SCHWARTZ:  Oh, I understand.

22         THE COURT:  -- you pointed out to me last time --

23         MS. SCHWARTZ:  Right.

24         THE COURT:  -- because where my head was last time

25    was exactly what you just said.

Page 99

1              MS. SCHWARTZ:  Right.

2              THE COURT:  But the nuance --

3              MS. SCHWARTZ:  Right.

4              THE COURT:  -- is that --

5              MS. SCHWARTZ:  I understand.  I know what it is.

6    I know --

7              THE COURT:  It's --

8              MS. SCHWARTZ:  -- the language inside and out,

9    Your Honor.

10             THE COURT:  It's the -- it's the above and beyond

11   normal committee duties.

12             MS. SCHWARTZ:  That's right.  And --

13             THE COURT:  So he has carved out from the possible

14   panoply of things --

15             MS. SCHWARTZ:  Right.

16             THE COURT:  -- that you can characterize as a

17   substantial contribution --

18             MS. SCHWARTZ:  Right.

19             THE COURT:  -- normal committee duties.

20             MS. SCHWARTZ:  That's right.

21             THE COURT:  So that's the $26 million question.

22             MS. SCHWARTZ:  Right.  And, Your Honor, as we had

23   -- we had said, you know, first of all, we don't -- I don't

24   accept what Ms. Coffino said about our position on what

25   Judge Sullivan said, et cetera.  When it comes time for us

Page 100

1    to put it before you, we will.  As I said to you the last

2    time I was before you, we read his decision to say that

3    there is no per se bar from -- of an individual committee

4    member making a claim for substantial contribution solely

5    because they served on the committee.

6              THE COURT:  Right.

7              MS. SCHWARTZ:  Okay.  So that's -- so we're not

8    saying they can never ever make a claim.  The question

9    really is going to be, Your Honor, whether or not they can

10   establish --

11             THE COURT:  Well, we --

12             MS. SCHWARTZ:  -- a substantial contribution.

13   And, wait, I just want to say this, please, Your Honor.

14             THE COURT:  Uh-huh.

15             MS. SCHWARTZ:  And that is that what the standards

16   require among very important of the standards being that

17   whether the service has benefited a creditor, the estate

18   itself or other interested parties, whether the service has

19   resulted in an actual significant and demonstrable benefit

20   to the estate, and importantly, Your Honor, whether the

21   services were duplicated by the efforts of others involved

22   in the case.  And, Your Honor, there can be no question that

23   there were many, many others involved in the case.

24             So, I mean, to say -- I think the trouble I have

25   is that, you know, yes, they have to meet their burden of

Page 101

1    proof, but we should not be prejudiced from what we can

2    discover.  And so they don't dictate.

3              They make their claim.  They can do whatever they

4    want.  They can put forth whatever they want.  We suggested.

5    We thought it was important.  I think the Court now has

6    signaled to them, I think it's important that you identify

7    what your basis for your substantial contribution claim is

8    in light of the fact that you're seeking every single penny

9    that your counsel incurred over the life of the entire case.

10   I think they got that message, Your Honor.  It sounds like

11   from their proposal they got that message from the Court.

12             But that said, I mean, Your Honor, where -- we

13   have the right and we have the ability to be able to

14   discover information to the extent that we object to what

15   they say that they did that was over and above, as Judge --

16             THE COURT:  Well --

17             MS. SCHWARTZ:  -- Judge Sullivan says the --

18             THE COURT:  Normal duties.

19             MS. SCHWARTZ:  -- normal committee duties.

20             THE COURT:  Right.  I mean, if -- he goes on in

21   the opinion -- it's at page 10 where he talks about in the

22   context of disagreeing with the U.S. Trustee's --

23             MS. SCHWARTZ:  Right.

24             THE COURT:  -- blanket no way, no how, never

25   rules.

Page 102

1            MS. SCHWARTZ:  Right.  We understand that.

2            THE COURT:  So he says the nevertheless.

3            MS. SCHWARTZ:  Right.

4            THE COURT:  Nevertheless there is no reason to

5    think that the Bankruptcy Code would punish an entity that

6    has made a substantial contribution solely because it was

7    also willing and able to serve --

8            MS. SCHWARTZ:  Right.

9            THE COURT:  -- on the official committee.  He then

10   goes on to give an example.  I find it hard to really

11   understand what his example means because it describes

12   something that only a committee member, frankly, or a debtor

13   would -- or a trustee would do --

14           MS. SCHWARTZ:  Right.

15           THE COURT:  -- because creditors generally can't

16   go and freelance and pursue things on behalf of the estate.

17   But I understand -- but I will apply the concept.  He's

18   saying there's no per se rule so we're going to apply that

19   also.

20           MS. SCHWARTZ:  Right.  So, anyway --

21           THE COURT:  But -- so --

22           MS. SCHWARTZ:  -- all of that being said I think

23   it completely -- I agree completely.

24           THE COURT:  But let's go to their -- let's go to

25   the -- and Ms. Coffino raises the spectre of it and I think

Page 103

```
 1    it's a valid point.  This is not just going to be like, do

 2    we have a couple of hours.  We'll get this done.  So it

 3    raises for me the question of the cost and the burden of

 4    going through this exercise because I think it's a very

 5    labor intensive exercise.

 6              MS. SCHWARTZ:  What exercise, Your Honor?  I'm

 7    sorry, them --

 8              THE COURT:  The exercise --

 9              MS. SCHWARTZ:  -- being able to establish that

10    they can --

11              THE COURT:  The exercise of preparing an

12    application that makes it out of the starting gate that

13    complies with Judge Sullivan's parameters.

14              MS. SCHWARTZ:  Okay.

15              THE COURT:  Have to -- you have to ferret out

16    normal committee duties.  To your point you have to look at

17    the different ways you can establish a substantial

18    contribution.  You have to ferret out duplicative.  My

19    gloss, you have to, I believe, ferret out things that were

20    unsuccessful.

21              MS. SCHWARTZ:  I have no disagreement on that,

22    Your Honor.

23              THE COURT:  And then you're going to have a, I

24    would imagine, pretty substantially, no pun intended,

25    narrowed down application.
```

Page 104

```
 1              So if -- the goal posts move in, right.  We're
 2    saying you can't ask for everything.  But Judge Sullivan
 3    says you can ask for some things.  And then we get to the
 4    point where I would like this to act like a normal case
 5    where the parties might actually work together to resolve
 6    it.
 7              MS. SCHWARTZ:  We have to wait and see what we get
 8    from the other side, Your Honor.  Look, we've been --
 9              THE COURT:  Unless --
10              MS. SCHWARTZ:  -- through --
11              THE COURT:  -- everyone is predetermined that --
12    which is your right -- that you're going to the mat in the
13    sense of I'm going to have to give you a disposition that's
14    then going to go and then the whole thing is going to go up
15    on appeal to the Second Circuit because I believe that --
16    without putting words in your mouth -- your office wants to
17    establish that Judge Sullivan was wrong on the no per se
18    rule.  Right?
19              MS. SCHWARTZ:  Well, I'm not going to get -- go to
20    that, Your Honor.  I'm not going to address it.
21              But what I would like to say to you is without
22    divulging any communications that have been made on the part
23    of the U.S. Trustee --
24              THE COURT:  Within the U.S. Trustee --
25              MS. SCHWARTZ:  -- under 408 I would never ever do
```

Page 105

```
1    that.  But the Court should know that we have made overtures

2    to understand what the basis of the other side's claim is.

3    We've been willing to see that.  The position all along has

4    been, we filed our application.  We don't -- we're not

5    required to put all the evidence in now, blah, blah, blah --

6              THE COURT:  Who are you doing an imitation of

7    here, Ms. Coffino or someone else?

8              MS. SCHWARTZ:  No.  That's like my other side

9    imitation.

10             THE COURT:  It's your generic other side.

11             MS. SCHWARTZ:  It's my generic other side.

12             THE COURT:  Okay.

13             MS. GOLDEN:  And she's not kidding.

14             MS. SCHWARTZ:  But the point being --

15             THE COURT:  What's that?

16             MS. GOLDEN:  She's not kidding.  That's her

17   generic imitation in any case of the other side.

18       (Laughter)

19             MS. SCHWARTZ:  But the point being there has been

20   a position and we have made overtures to be able to

21   understand how that can be and hasn't been --

22             THE COURT:  But there --

23             MS. SCHWARTZ:  -- it hadn't worked at that time.

24   So let us --

25             THE COURT:  Okay.
```

Page 106

1          MS. SCHWARTZ:  -- put it to you this way, Your

2    Honor, you have now given the parties --

3          THE COURT:  Guidance.

4          MS. SCHWARTZ:  -- a little more guidance with

5    respect to where the Court kind of sees some of the issues

6    without prejudging anything, et cetera.  We remain open to

7    hearing from the other side how --

8          THE COURT:  I mean, I --

9          MS. SCHWARTZ:  -- what they believe --

10          THE COURT:  -- I gave you an example of what I

11    could imagine --

12          MS. SCHWARTZ:  Right.

13          THE COURT:  -- would fit the category that Judge

14    Sullivan seemed to be getting at --

15          MS. SCHWARTZ:  Right.

16          THE COURT:  -- which is -- again, I'm making this

17    up.

18          MS. SCHWARTZ:  Yeah.

19          THE COURT:  Committee member, one of the clients,

20    witnesses, you know, long gridlock on the issues, comes up

21    with an idea, comes up with a construct that he then spends

22    a lot of time calling his fellow committee members and

23    gaining support and staying up nights and weekends --

24          MS. SCHWARTZ:  Right.

25          THE COURT:  -- and that kind of thing where --

Page 107

1           MS. SCHWARTZ:  Right.

2           THE COURT:  -- something, you know, really

3    extraordinary.

4           MS. SCHWARTZ:  Yeah.  And, Your Honor, let me just

5    say this.  I think there's another issue here and I'm at

6    least going to preview it for Your Honor.

7           To the extent -- is someone on the phone.  I'm

8    sorry.

9           MR. AHRENS:  I'm sorry.  This is Michael Ahrens.

10   I just coughed.  Yes, I am on the phone.

11          THE COURT:  I'm sorry.  There is Michael Ahrens

12   from Sheppard Mullin for Bank of New York Mellon is on the

13   phone live and there -- U.S. Bank and Vanguard are on listen

14   only.

15          MS. SCHWARTZ:  Okay.  Thank you, Your Honor.

16          Your Honor, I think there's also an issue that --

17   and, again, it goes back to the same thing we said all

18   along.  Tell us what your claim is now in light of that

19   decision.  It wasn't coming out of the air.  You know, we

20   thought it would be helpful to the process.  We're not

21   looking -- I'm -- I'm not looking and neither is my

22   colleague or our office looking to be spending the next two

23   years of our lives doing discovery on their claim.

24          So the thought was that, you know, put it out

25   there.  Let us know what the parameters of your claim are,

Page 108

```
 1    et cetera.  But let me say this, Your Honor.  To the extent
 2    the other side -- the individual claimants say, well, the
 3    committee counsel delegated to us, delegated to the
 4    attorneys, then we get a question, well, why would committee
 5    counsel do that.  We don't think that's going to be the
 6    case.  I think, Your Honor, what you're going to see is, I
 7    think you're going to see a whole heck of a lot of
 8    duplication.
 9          But let us wait and see what we discover.  I'm not
10    going to foreshadow, et cetera.  But I'm -- the only reason
11    I say that is you've got over $200 million of paid fees to
12    the multitudes of counsel to the committee and advisors, et
13    cetera.  So that factor as to the fact that -- to make a
14    substantial contribution claim you've got to show that you
15    did something that doesn't duplicate what somebody else did.
16    And then there's a question, well, why were you doing it
17    versus these, you know, the many, many, many fine counsel
18    that were representing the committee.
19          So, again, I think Your Honor is right in terms of
20    where the paradigm shift has been and I think what I would
21    suggest to the Court and to the individual creditors is that
22    they take the time that they need.  We've said it all along.
23    Take as much time as you need to set out what your claim is
24    and what the dollar amounts are and why your claim meets the
25    standards of well established law under -- to make a
```

Page 109

1   substantial contribution claim.  And then we get to the

2   second part to see whether or not that could possibly be

3   considered something that is not in the course of their

4   duties as committee members.

5                 And that --

6                 THE COURT:  Well --

7                 MS. SCHWARTZ:  We thought that that would save

8   time --

9                 THE COURT:  -- I don't --

10                MS. SCHWARTZ:  -- really, frankly.

11                THE COURT:  -- disagree with anything -- with

12  anything that you said, but I -- I do have a continuing

13  concern about -- I guess the committee members will come

14  back with a revised or a supplemental filing.

15                MS. SCHWARTZ:  Right.

16                THE COURT:  But like any litigant, sometimes

17  filings -- and I don't mean this in any negative way -- are

18  opening bids, negotiating positions, et cetera, et cetera.

19  And --

20                MS. SCHWARTZ:  I understand.  May I say something?

21                Your Honor, as I said, we're always open to them

22  --

23                THE COURT:  Well, but I'm just -- and I don't mean

24  this critically the other way.  I'm just not sure given the

25  view held by your office --

Page 110

1           MS. SCHWARTZ:  Well, I don't know what you're

2    referring to specifically on the view --

3           THE COURT:  Let me finish my sentence and you

4    might.

5           Given the view held by your office as expressed in

6    the original motion that this would as per se rule would

7    never be appropriate.  I'm just not sure that even if, to

8    pick a random number, the members of the committee were to

9    come back in the aggregate with -- I'm making -- completely

10   making this -- a $4 million number which if the -- if there

11   were an economic party on the other side might say, it's a

12   reasonable settlement.  We're going to settle this whole

13   mess for $4 million, I'm just not so sure -- and I don't

14   mean this critically --

15          MS. SCHWARTZ:  Right.

16          THE COURT:  -- that your office would be inclined

17   to settle because of the principals of law that are

18   involved.

19          MS. SCHWARTZ:  Well, can I respond, please?

20          THE COURT:  Sure.

21          MS. SCHWARTZ:  Sorry, Your Honor.  I didn't mean

22   to interrupt before.

23          Well, first thing is I think the dollar amount is

24   not going to be the driver.  In other words, it's what the

25   actual services were that were performed.  And you're right.

Page 111

1    We do not, absolutely do not and meaningfully do not have an

2    economic stake in it.  We're not an economic party.  Our

3    interest is that the law is upheld as we would like to -- as

4    we interpret it and as we present it to the Court for the

5    Court's determination.

6            So that's really what -- where the issues lie.

7    It's not going to be a matter of -- I think you're right.  I

8    mean, the observation that you're putting in every single

9    dollar that you incurred in the course of a case, there's --

10   it's very reasonable to conclude that there's a portion of

11   that time that's in the normal course of -- if not all of

12   it.  We don't know.  But, certainly, it's not all a

13   substantial contribution, right, and they've acknowledged

14   they put every single penny in that they -- that they're

15   seeking.

16           That said, Your Honor, to the extent that they

17   have a basis for showing that they made a substantial

18   contribution claim under the standard law and in -- other

19   than in their normal duties as committee members, you know,

20   we're willing to discuss that with them.  We've always been

21   and we've said it all along.

22           Now it might be in fairness to Ms. Coffino, there

23   was a point in time where Milbank was advancing this

24   argument on behalf of the individual creditors.  And we had

25   --

Page 112

1           THE COURT:  Right.

2           MS. SCHWARTZ:  -- we had discussions with them --

3           THE COURT:  Right.

4           MS. SCHWARTZ:  -- with respect to that.  And I

5   just want to say one other thing, and I don't know and I can

6   get back to the Court on it.  But I'm pretty sure that the

7   debtor reserved its rights on this particular issue with

8   respect to the substantial contribution claims to the extent

9   that the plan -- that that provision -- that the provision

10  of the -- the plan provision was overruled because we had

11  carved that out at the time of confirmation because we

12  didn't want to hold up confirmation.

13          THE COURT:  Right.

14          MS. SCHWARTZ:  And my recollection is that they

15  did, too, but I'm not exactly 100 percent sure.  But I know

16  Your Honor has already said, look, the trust is here.  The

17  trust can weigh in, et cetera.

18          THE COURT:  Well, I just -- you know, I -- again,

19  I --

20          MS. SCHWARTZ:  You might be -- Your Honor, look,

21  we have to see --

22          THE COURT:  I don't feel --

23          MS. SCHWARTZ:  -- what they say.

24          THE COURT:  You know, Mr. Flores is probably --

25  Mr. Flores.  Mr. Oswald -- I just --

Page 113

1              MS. SCHWARTZ:  Well, sometimes it's Mr. Flores.

2              THE COURT:  I just took a couple of years off your

3     age, Mr. Oswald.

4              MR. OSWALD:  I appreciate that.

5              THE COURT:  You know, he's probably going to go

6     back to his office and call someone and say, what the heck

7     did you send me into down there.  Okay.

8              But I think it's my view -- there's money here and

9     there are unsecured creditors.  So to the extent that there

10    is ultimately a determination, and I think I pretty much

11    said it out loud today that it's not going to be the full

12    $26 million.

13             So there's money that's going to come back into

14    the estate and I think that because, to the extent that

15    there would be discussions, it would be appropriate for

16    there to be a representative, a fiduciary of those

17    individuals who stand to get back some money.

18             Now this is Lehman, right, so $26 million or a

19    fraction thereof --

20             MS. SCHWARTZ:  Unfortunately, Your Honor, it's

21    every case today --

22             THE COURT:  Well, it's --

23             MS. SCHWARTZ:  -- you know, 26 million.

24             THE COURT:  -- it's --

25             MS. SCHWARTZ:  There's a lot of cases like that,

Page 114

1    let's put it that way.

2            THE COURT:  -- it's not a lot of money, but I --

3    I'm very jealous of every penny when it comes to giving

4    money back to the unsecured creditors.  So --

5            MS. SCHWARTZ:  Well, I think it's -- and it also

6    should be noted, Your Honor, at least the Court should

7    consider the U.S. Trustee has not and could have at several

8    times asked the Court to have them post a bond for security

9    of the money.

10            THE COURT:  They're good for it.

11            MS. SCHWARTZ:  You know, they've already been paid

12    the money --

13            THE COURT:  If nothing else they're good for the

14    money.

15            MS. SCHWARTZ:  Well --

16            THE COURT:  I think we know where they all live.

17            All right.  So, Ms. Coffino --

18            MS. SCHWARTZ:  I think it's just a matter of

19    timing now of when they're going to file their papers.  And

20    as Your Honor had said at the last hearing, we can file

21    opposition papers, supplemental opposition papers at any

22    time.  You weren't requiring us to, but we could do that.

23            THE COURT:  Well, we're -- I think we're going to

24    have to -- now we're going to take it one step at a time --

25            MS. SCHWARTZ:  Okay.

Page 115

1          THE COURT:  -- and see what comes back.

2          MS. SCHWARTZ:  Right.  I mean, we'll still be able

3    to -- you mean like the timing of that.

4          THE COURT:  I do want to -- and I'm saying this

5    largely directed to you, Ms. Coffino, and your colleagues, I

6    want to preserve all of your points for appeal.  Okay.

7    Today was convenient.  It was a status conference and sounds

8    a little bit like a ruling instead of a clarification.  You

9    seem to have come in today knowing what I was going to say.

10          So I want to just make sure that I don't do

11   anything that has the effect of not preserving your rights

12   --

13          MS. COFFINO:  We appreciate that.

14          THE COURT:  -- for appeal.  Okay.

15          MS. SCHWARTZ:  Is that all, Your Honor?

16          THE COURT:  Yeah.  Yeah.

17          MS. COFFINO:  I'll take the easiest thing first --

18          THE COURT:  Okay.

19          MS. COFFINO:  -- the factual.  My colleagues have

20   reminded me that the debtors actually filed a declaration in

21   support of our application after the plan.  So it's not that

22   they didn't do anything.  They actually filed --

23          THE COURT:  Okay.

24          MS. COFFINO:  -- a declaration.  But that's

25   neither here nor there.  I just wanted to correct the

Page 116

1   record.

2          The other thing I just wanted to say, and I

3   realize we are where we are and we have to move forward from

4   here, is that I don't want you think we've just been

5   recalcitrant and difficult.  Until last week's hearing when

6   you raised the issue of whether there's too much in our

7   application we never understood that to be the U.S.

8   Trustee's problem.  What we understood it to be was we might

9   be asking for something more other than what we did in the

10  committee or the indentured trustees have -- it's just the

11  indentured trustees did outside the committee, too.  And we

12  kept -- we were confused because it's there.  We're telling

13  you what it is because our view --

14          THE COURT:  Right.

15          MS. COFFINO:  -- is we can get it --

16          THE COURT:  Well -- yeah.

17          MS. COFFINO:  -- as a committee member.

18          THE COURT:  Yeah.

19          MS. COFFINO:  And so we've been disagreeing and

20  arguing over a point that's very different than the one that

21  you raised last week.  And we heard you loud and clear,

22  which is why we conferred for a week and came up with this

23  just yesterday or the day before yesterday; that this is

24  what we should propose to the Court.

25          So that's where we are.

Page 117

1          THE COURT:  Well, it's going to -- I mean, to my

2     mind it's going to take some work.

3          MS. COFFINO:  Yeah. I agree.  It's going to take a

4     lot of work.  I agree.

5          THE COURT:  So what kind of time frame do you all

6     have in mind?

7          MS. COFFINO:  Can we confer and then --

8          THE COURT:  Sure.

9          MS. COFFINO:  -- talk to the U.S. Trustee about it

10    and get back to you?

11         MS. SCHWARTZ:  It's fine.  Your Honor, that's

12    totally fine with us.

13         THE COURT:  Is that fine with you?

14         MS. SCHWARTZ:  Sure.

15         THE COURT:  I mean, I don't want to -- I don't

16    want it to drag out forever, but I do think --

17         MS. COFFINO:  No.  We understand.

18         THE COURT:  -- that it's a fair amount of work to

19    do -- to implement the different aspects of it that we've

20    talked about today.  And, again, to reserve your rights on

21    appeal, you know, the other than normal committee duties,

22    that's in this opinion.  That's like a non-starter as far as

23    I'm concerned.  But some of the other things we talked about

24    in terms of the factors, you know, that goes to your making

25    your case.

Page 118

```
 1              I -- I mean, preliminarily I think duplicative

 2    things are a problem.  Preliminarily in most cases I think

 3    things that were done that were unsuccessful are -- you

 4    know, are a problem in the sense of not something that one

 5    ordinarily thinks of as having been a substantial

 6    contribution.

 7              There was a big decision out of Delaware yesterday

 8    denying a "normal substantial contribution claim."  It's a

 9    tough standard.

10              MS. COFFINO:  It is a tough standard.  And I get

11    completely the issue of unsuccessful efforts.  That's pretty

12    clear.  You can actually draw a bright line there.

13    Duplication is a little hazier and I think we want the

14    opportunity to show you why even though people were working

15    on the same thing it's not duplication.

16              THE COURT:  Okay.

17              MS. COFFINO:  Okay.  And that's -- I think that's

18    a trial issue.  But --

19              THE COURT:  I hear you.

20              MS. COFFINO:  Okay.

21              THE COURT:  Okay.  So then you will confer among

22    yourselves, make a proposal as to time, confer with the U.S.

23    Trustee.  You can do a stip.  You can do -- send me a

24    letter, whatever you want to do.

25              MS. COFFINO:  Okay.
```

Page 119

```
 1                THE COURT:  But don't let it just drag on too

 2      long.

 3                MS. COFFINO:  Okay.

 4                MS. SCHWARTZ:  Your Honor, so -- just so I'm

 5      clear.  I want to make sure I'm clear.  So what we're

 6      talking about is a briefing schedule at this point.

 7                THE COURT:  Well, we're talking about them filing

 8      a new application.

 9                MS. SCHWARTZ:  Okay.  That's fine.

10                THE COURT:  That's the first thing.

11                MS. SCHWARTZ:  Yeah.

12                THE COURT:  And --

13                MS. SCHWARTZ:  As I've said, we've said it all

14      along.  They can have as much time as they want from our

15      perspective as long as we have the same amount of time to

16      reply.  That's all.

17                THE COURT:  Yeah.  Well, I don't --

18                MS. SCHWARTZ:  Yeah.

19                THE COURT:  I'm not into the as much time as they

20      want.  I mean, I want you to do it --

21                MS. SCHWARTZ:  No.  That's okay.  I'm just saying

22      there's no objection --

23                THE COURT:  -- with all deliberate speed.

24                And, Mr. Oswald, since you did come down here

25      today I want you to think about what the trust's
```

Page 120

1    involvement/position is going to be going forward in light

2    of my observations.

3              MR. OSWALD:  We'll do that, Your Honor.

4              THE COURT:  Anyone else?

5              MS. COFFINO:  No.  I'm just going to say thank

6    you.

7              THE COURT:  Okay.  Thank you.

8              MS. SCHWARTZ:  Thank you, Your Honor.

9              THE COURT:  Good to see everyone.

10             MR. AHRENS:  Thank you, Your Honor.

11         (Whereupon these proceedings were concluded at 2:52 PM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                            I N D E X

2

3                            RULINGS

4                                                        PAGE

5    Doc. # 10810 Motion Pursuant to Federal Rule of

6    Bankruptcy Procedure 9019(a) for Entry of an

7    Order Approving Settlement Among the Trustee,

8    Pacific Investment Management Company, LLC,

9    and Participating Counterparties                     13

10

11   Adversary proceeding: 08-01420-scc Lehman Brothers

12   Inc. Doc. #7666 One Hundred Sixty-Second Omnibus

13   Objection to General Creditor Claims

14   (No Liability Claims)                                39

15

16   Adversary proceeding: 08-01420-scc Lehman Brothers

17   Inc. Doc. #8246 Two Hundred Seventh Omnibus

18   Objection to General Creditor Claims

19   (No Liability Claims)                                39

20

21

22

23

24

25
```

Page 122

1                              CERTIFICATE

2

3      I, Sherri Breach, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5

6      Sherri L          Digitally signed by Sherri L
                         Breach
7      Breach            DN: cn=Sherri L Breach, o, ou,
                         email=digital1@veritext.com,
                         c=US
8      _____   Date: 2015.01.23 15:19:23 -05'00'

9      Sherri L. Breach

10     AAERT Certified Electronic Reporter & Transcriber CERT*D-397

11

12

13     Veritext

14     330 Old Country Road

15     Suite 300

16     Mineola, New York 11501

17

18     Date:  January 23, 2015

19

20

21

22

23

24

25

[& - accurate]                                                                                     Page 1

**&**

**&**   5:2,10 6:1 7:1,9
    8:1,8,8,15 10:7 14:1
    40:14 92:7 122:10

**0**

**02109**   8:4
**08-01420**   1:12 2:1,7
    2:11,15,19,23 3:1,5
    3:9,13,17,21 4:1,5,9
    4:13 121:11,16
**08-13555**   1:7 4:17

**1**

**1**   77:15 78:19
**10**   101:21
**10,950**   51:23
**100**   112:15
**10004-1482**   5:13
**10014**   9:4
**10017**   5:5
**10018**   7:5
**10019**   6:11,18
**10038**   8:11
**1006**   9:3
**101**   21:3 23:7
**101.49**   20:19,20
    21:6
**10119**   8:18
**10154**   7:12
**10171**   6:4
**10176**   7:19
**105**   31:6
**105s**   37:3
**10810**   2:2 121:5
**10890**   18:8
**10:05**   1:21
**11**   15:8
**1129**   4:20 96:1
**11501**   122:16
**11:37**   80:21
**13**   40:17 41:22
    121:9
**130**   77:7
**14th**   5:4
**15th**   5:21
**1675**   6:17

**18**   49:18 51:16 53:1
    55:17 58:9 60:19
    64:14 73:7
**180**   8:10
**19**   60:19

**2**

**20**   12:18 33:8,15
    65:11
**200**   108:11
**2000**   24:22
**20005**   5:22
**2007**   17:7 29:9 78:6
**2008**   17:8 29:9
    57:11,15 59:13,23
    60:1,24 63:13,17,23
    65:6
**2009**   24:22
**201**   9:3
**2010**   25:7,10 26:25
**2011**   29:8 32:7
    49:22 63:25
**2012**   29:9
**2014**   20:14 66:2,3
**2015**   1:20 122:18
**21**   12:14
**22**   1:20
**23**   122:18
**24**   77:15 94:19
**24762**   4:18 81:9
**26**   95:8,12,12 99:21
    113:12,18,23
**27**   32:7
**28th**   25:7
**299**   6:3
**2:08**   80:21
**2:52**   120:11

**3**

**3**   4:21 67:24 86:24
**30**   33:13
**300**   122:15
**31**   6:10 25:14 38:5
**33,333**   75:2 77:17
**330**   122:14
**345**   7:11
**35**   33:8,13,13,15,15
    41:21

**350**   68:5
**39**   121:14,19
**397**   122:10
**3rd**   47:16 52:22
    62:3 66:2

**4**

**4**   4:20,21 21:6 86:24
    94:20 110:10,13
**400,000**   72:20,21
    73:1,22 76:3,12
**401**   80:3
**408**   104:25
**43**   40:15 41:21
**45**   52:14
**49**   21:7,7

**5**

**50**   25:19
**503**   4:21,21 86:24
    86:24 94:23 95:3
    96:2
**510**   18:8,18 19:2,9
    19:13 20:6,9,18
    33:24 34:2 35:20
    60:10 70:16
**52nd**   6:10
**5501**   73:8,12
**551**   7:18
**555**   5:4
**5863**   2:16
**5889**   2:20
**5904**   2:24

**6**

**60**   39:25
**6132**   3:2
**6145**   3:6
**620**   7:4
**6556**   3:10
**6728**   3:14

**7**

**7**   18:7
**7158**   3:18
**7159**   3:22
**7526**   4:2
**7666**   2:8 121:12

**7832**   4:6
**7th**   66:3

**8**

**8**   77:11
**800**   5:21
**805**   5:21
**81**   11:5 12:9,12
**8246**   2:12 121:17
**8639**   4:10
**8802**   75:9

**9**

**9**   16:1 18:11,17
    28:19 39:4 76:25
    77:2,12
**9019**   2:3 10:13
    13:13 95:21 121:2
**9161**   4:14
**99**   37:23
**9:00**   47:1 52:20

**a**

**a.m.**   80:21
**aaert**   122:10
**ability**   74:23 101:13
**able**   17:8 47:6 48:6
    69:12 75:17 80:25
    83:13 101:13 102:7
    103:9 105:20 115:2
**absolutely**   49:5
    111:1
**absurd**   65:11
**accept**   28:3 68:13
    99:24
**acceptance**   11:9
**accepted**   11:5
**accepting**   11:15
**account**   66:11
**accrual**   51:8,14
    63:14,16 69:4 72:10
**accrued**   40:20
    49:15,21 50:17
    51:15 52:25 54:4
    55:10 58:1 62:17,24
    63:6,8,15 64:11
    65:5,14 70:12
**accurate**   122:4

**accurately** 37:1
**acerra** 5:3
**acknowledged** 98:9
  111:13
**act** 94:24 104:4
**action** 30:13 38:7,7
  38:18 47:17
**actions** 30:7 31:16
**active** 73:14 77:16
  79:8 92:16
**actively** 73:15 75:3
  75:3,8
**actual** 100:19
  110:25
**add** 88:22
**addition** 11:8 13:6
**additionally** 66:14
**address** 33:23 47:11
  49:15 50:3,4 51:16
  63:6 70:24 104:20
**addressed** 18:7 43:7
  43:11 46:19 47:14
  47:15 53:1 57:25
  58:7 61:21 62:20
  65:8 69:4 72:14
  82:7,9,11
**addressing** 14:2
  15:21 57:13,24
**adelphia** 86:18
**admissible** 24:7
  73:23
**adopting** 24:3
**advance** 67:1 75:18
**advancing** 111:23
**adversary** 2:1,7,11
  2:15,19,23 3:1,5,9
  3:13,17,21 4:1,5,9
  4:13 121:11,16
**advice** 90:23
**advisors** 108:12
**affidavit** 73:22 75:8
  75:12
**affiliate** 20:10 31:25
  66:15
**affiliates** 38:25
  66:13

**affirmed** 48:18
**affirming** 79:13
**afraid** 75:10
**afternoon** 80:22
  97:4
**age** 113:3
**agenda** 10:11 14:3
  40:15
**aggregate** 110:9
**ago** 52:14 53:10
  79:13 83:24 96:3
**agree** 18:14 23:9
  39:10 44:7 48:18
  61:16 76:6 102:23
  117:3,4
**agreed** 72:8 95:7
**agreement** 38:20
  72:23 73:21,22 74:3
  76:6,13 78:17,18
  79:25
**agreements** 79:1
**agrees** 11:19
**ahead** 45:14 49:16
**ahrens** 107:9,9,11
  120:10
**air** 107:19
**al** 1:7
**aleni** 10:22
**alike** 90:13
**allegation** 17:3 36:8
  56:9,11,17 60:13
**allegations** 24:10
**allege** 18:12 29:23
  29:24 36:1
**alleged** 16:5,18
  27:23 28:2 79:9
**allegedly** 16:3
**allow** 72:8 89:10
**allowability** 26:5
**allowance** 27:13
**allowed** 15:9 24:24
  26:13 50:7,18,19,22
  51:11,17,19,21,22
  57:14,15 58:20 59:1
  59:2,8,17 60:17
  65:23 67:4,17 68:6
  71:19,19,22 72:6

**alternatively** 4:20
**ambiguities** 67:14
**amend** 28:23,24
**amendments** 28:23
**amount** 26:10,19
  65:12 110:23
  117:18 119:15
**amounts** 64:7
  108:24
**ample** 35:11
**andrea** 9:7 97:5
**andrew** 5:8 41:17
**angelich** 6:20
**answer** 10:25 14:21
  37:12 42:10 49:1
  61:22,24 85:22
**anticipate** 17:22
  61:17
**anybody** 81:16 96:9
  97:2
**anyway** 102:20
**apologize** 47:7 61:8
  64:1 81:5 97:17
**apparent** 91:18
**appeal** 42:15 44:1
  48:18,19 49:3,4
  52:17 62:5,6 66:4,6
  70:3 82:13 104:15
  115:6,14 117:21
**appealable** 93:18
**appeals** 43:11
**appear** 54:1 67:11
**appearance** 50:25
**appeared** 38:18
**appearing** 41:20
**appears** 86:17
**appellate** 43:18
**applicable** 52:23
  66:4
**application** 4:18
  81:9,10,13,17 85:21
  87:13 89:19 94:24
  95:3,18 96:7,8
  103:12,25 105:4
  115:21 116:7 119:8
**applies** 12:9 39:5
  43:25 70:13

**apply** 28:19 44:3
  69:6 102:17,18
**applying** 71:1 87:25
**appreciate** 68:23
  90:3 97:7 113:4
  115:13
**approach** 46:14
  77:9
**appropriate** 18:1
  39:12 110:7 113:15
**appropriately** 34:5
**approval** 11:2,8,16
**approve** 10:14
**approved** 13:17
**approving** 2:3
  11:24 121:7
**argued** 20:13 82:12
  82:13
**arguing** 116:20
**argument** 32:24
  34:13,15 35:4 44:1
  53:16,19,21,22 69:4
  76:11 86:15 91:3
  111:24
**arguments** 34:14
  44:5 52:18,21,21
  53:11 68:21 84:13
  85:13
**arranged** 47:22
**arrangement** 46:7
**articulate** 61:6
**articulating** 71:1
**artist** 47:21 50:20
  51:5
**aside** 39:1 84:16
**asked** 52:10 85:20
  114:8
**asking** 18:20 37:11
  37:13 85:15,17,21
  116:9
**aspects** 65:22 66:24
  67:9,11 71:22
  117:19
**assert** 15:24 24:9
  28:25 33:18 70:11
  89:8

**asserted** 16:2 24:2
  35:4 38:6 43:6 66:1
  72:7 75:4
**asserting** 11:5
  15:22 25:13 42:19
  42:20 62:4
**assertion** 77:24
**asserts** 73:8 76:12
**assets** 31:7
**associated** 55:21
**association** 8:2
**assume** 19:7 45:5
**assuming** 71:5
**assumption** 38:20
**attached** 24:3 75:1
  76:18,21,22,24
  77:14
**attempt** 14:14 67:9
  88:23
**attend** 83:13
**attention** 49:19
**attenuated** 49:6
**attest** 11:2
**attorney** 5:3 89:4,8
**attorneys** 5:11,20
  6:2,9,16 7:2,10,17
  8:2,9,16 9:2 108:4
**attributed** 30:9
  34:22,22
**attribution** 30:5
  31:16
**augment** 88:24
**august** 26:25
**auspices** 37:6
**authority** 43:19
**authorized** 52:19
**avenue** 5:4 6:3 7:4
  7:11,18
**avoid** 76:9
**award** 40:20 82:10
  90:23
**awards** 65:7
**aware** 24:15,16
  25:12
**awkward** 97:9,15

**b**

**b** 1:23 4:21,21 5:15
  6:6 9:7 16:1 18:8
  18:11,17,18 19:2,9
  19:13 20:6,18,20
  21:6,19,20 28:19
  33:24 34:2 35:20
  60:10 70:16 86:24
  86:24 94:23 95:3
  96:2
**back** 18:22 27:3
  29:9 32:8 34:23
  35:8 39:11 47:12
  61:14 63:25 78:24
  80:23,24 81:2 83:16
  83:20 88:3 90:6
  91:11 93:17 94:18
  94:19,23 95:13
  107:17 109:14
  110:9 112:6 113:6
  113:13,17 114:4
  115:1 117:10
**bad** 31:13
**bailout** 45:17
**bank** 8:2,9 36:18
  107:12,13
**bankruptcy** 1:1,16
  1:25 2:2 4:21 15:23
  20:24 43:12 46:5
  102:5 121:6
**bar** 100:3
**barclay** 88:19,21,23
  88:24
**based** 14:24 15:2,8
  19:15 64:14 68:21
  75:24
**bases** 15:19
**basic** 84:14
**basically** 44:24 54:2
  74:22
**basis** 15:21 70:2
  73:13 101:7 105:2
  111:17
**battery** 5:12
**bearing** 46:8
**becker** 6:1 20:2
  82:3

**began** 18:6
**beginning** 72:25
  78:5 84:11
**behalf** 14:1 94:13
  102:16 111:24
**believe** 20:23 28:20
  29:23 51:16 58:19
  63:3 65:1 74:10,13
  75:2 76:24 77:19
  78:20 79:24 80:2
  98:13 103:19
  104:15 106:9
**believes** 18:1 35:9
**bench** 47:21 50:20
  51:5
**benefit** 86:22
  100:19
**benefited** 88:14
  100:17
**benson** 57:6 58:12
  58:15
**best** 13:17 33:12
  47:5,9,11 61:18
**better** 45:17 46:2
  49:25 81:3 88:11
**beyond** 86:22 99:10
**bid** 73:18
**bids** 109:18
**big** 59:11,25 118:7
**billion** 25:14 38:5
**binary** 26:1
**bit** 69:16 76:10 81:5
  115:8
**blah** 105:5,5,5
**blanket** 101:24
**blessing** 26:20
**block** 84:7
**board** 39:11
**bond** 114:8
**bonds** 21:17 23:13
**bonus** 45:23 79:14
**bosses** 31:21
**boston** 8:4
**bottom** 66:17
**bought** 37:5 38:1
  74:23

**bounced** 58:22
**bowling** 1:17
**brain** 19:14 89:6,7
**breach** 4:25 56:21
  60:9 64:19 65:19
  70:14 122:3,9
**break** 46:25
**breakdown** 87:12
**brick** 89:2
**brief** 70:19,20
**briefed** 22:25 23:2
  23:17 34:5
**briefing** 44:11,12
  47:15 69:14 119:6
**briefly** 33:24
**briefs** 49:23
**bright** 118:12
**bring** 35:5 53:24
**bringing** 74:19
**broad** 29:19
**broadway** 6:17
**broker** 36:1,3,6,8
  36:11,15,16,17 37:6
  37:25
**brokers** 17:4 29:4
  31:18 34:16,16
  36:19
**brothers** 1:6,12 2:1
  2:7,11,15,19,23 3:1
  3:5,9,13,17,21 4:1,5
  4:9,13,17 10:7 29:7
  36:18 87:8 121:11
  121:16
**brought** 34:15
  44:25
**brush** 29:19
**bucket** 26:3,4 62:12
  72:6,7
**buckets** 14:15 82:16
**build** 74:23
**building** 7:3
**burden** 87:19,23
  89:10,17 92:22
  100:25 103:3
**burling** 7:1 92:7
**business** 72:21,24
  73:5 74:19,20,21,21

[business - cleanup]                                                                 Page 4

74:23 76:1,2
**buy**   53:18

**c**

**c**   1:24 5:1 10:1
**cake**   88:22
**calculated**   63:14,16
**call**   15:3 38:8 87:2,6
   113:6
**called**   23:3 42:5
   52:25 63:14 73:21
**calling**   69:2 85:10
   106:22
**callon**   30:22
**calls**   29:3
**campbell**   6:13
**capable**   16:16
**capacity**   83:3
**caputo**   5:24
**care**   50:6,21
**carefully**   60:14
   63:24 90:17
**carve**   76:4
**carved**   99:13
   112:11
**case**   1:7,12 20:5
   23:23 35:15 42:5
   47:14 56:23 58:15
   62:14 67:18 69:7,8
   70:9 79:14,17 80:1
   84:11,11 85:7,10,11
   87:5 88:15 90:3,19
   90:20 91:21 93:8
   95:17 96:18 100:22
   100:23 101:9 104:4
   105:17 108:6 111:9
   113:21 117:25
**cases**   59:20 113:25
   118:2
**cash**   15:3 45:22
   46:5,10 53:12 56:22
   56:22 57:1,2 60:11
   65:15
**category**   64:1 88:18
   106:13
**caught**   50:9
**cause**   44:19

**cede**   96:21
**cents**   33:8,13,13
**cert**   122:10
**certain**   38:1 64:8
   67:2,18
**certainly**   20:25
   60:18 111:12
**certificate**   122:1
**certified**   122:10
**certify**   122:3
**cetera**   15:7 46:5
   86:24 98:10 99:25
   106:6 108:1,10,13
   109:18,18 112:17
**chance**   6:8 10:21
   34:9
**chapman**   1:24
**chapter**   15:8
**characterization**
   73:25
**characterize**   99:16
**characterized**   23:9
   24:25
**characterizing**
   65:19 78:24
**chassin**   6:1
**chau**   5:16 40:8,11
   40:13,13,13,19,22
   41:1,5,9 58:19 64:4
   64:12,24 65:16
   66:19 67:1,12 74:25
   76:10,18,22,24 77:5
   77:8,14,19,23 78:7
   78:10 79:21,24 80:7
   80:12,20
**chau's**   52:11
**check**   50:2
**checks**   58:23
**chester**   6:6 20:1
**chief**   90:20
**china**   28:8
**choice**   68:6
**choose**   65:2
**chose**   64:8
**circuit**   43:15 48:14
   60:6 62:10 68:13
   104:15

**circumstances**
   69:14
**civil**   15:25 28:19
**claim**   13:4 14:8,9
   17:17,18 18:18 21:1
   23:20,24,24 24:2,9
   24:9 25:20,21,25
   26:2,3,3,6 27:20,22
   27:24 28:2,2,23,24
   33:17 34:19 35:25
   37:8 38:3 39:6
   41:21 45:1,2 46:10
   48:15 49:12,15
   51:14,15 54:4,7,11
   55:11,21 56:22 57:2
   57:11,24 58:12,20
   58:22 59:6,10,13,17
   59:22 60:4 62:7,8
   63:15 64:20 67:18
   70:14,15 72:14,19
   73:7,8,8,12 74:14
   75:1,22,24 76:5,7
   76:11,18,22 78:20
   79:11,15,18 80:2,3
   83:4,5 84:9 92:25
   95:25 96:1 97:17
   98:16 100:4,8 101:3
   101:7 105:2 107:18
   107:23,25 108:14
   108:23,24 109:1
   111:18 118:8
**claimant**   13:6,9
   80:1 93:14
**claimant's**   64:15
   76:4
**claimants**   5:3 10:14
   11:10 15:7,15,22
   16:1,2,7,9,12,24
   17:9,21 18:10 20:5
   29:1,2 35:5,11 36:2
   41:21 52:16 57:2,5
   57:6 68:8 98:15
   108:2
**claiming**   42:25
**claims**   2:9,9,13,13
   2:17,17,21,21,25,25
   3:3,3,7,7,11,11,15

3:15,19,19,23,23
4:3,3,7,7,11,11,15
4:15 10:17 11:5,18
11:20 12:6,9,11,17
13:1 14:24,24,25
15:7,8,9,13,15,16
15:17,20,23,24,24
16:12 17:16,19,21
18:2,22 19:18 20:23
23:19 24:17,24,25
25:14,16 26:7,8,9
26:16,16,18,21 27:5
27:5 28:14,16 32:11
32:13 33:9,11 37:19
38:6,10,15,16,21,24
39:5 40:15,19,20
41:4 42:5,9,18,19
42:20,24,24 43:5,6
43:8,21,25 44:5
45:15,16 49:6 50:1
50:6,18,22 51:3,8
51:17,23 52:25 53:1
53:2,24 54:5 57:7,8
57:9,10,14,15,21
58:1,10,14,18,25
59:21,25 60:17 62:4
62:12,13,15,19,24
62:25 63:6,8,9 64:6
64:8,9,9,11,14,25
64:25 65:2,3,5,5,22
65:25 67:2,10 68:5
68:24 69:7 70:11,12
71:18,21,23 72:2,7
72:10 79:23,25 80:4
81:25 112:8 121:13
121:14,18,19
**claren**   66:12,15
**clarification**   115:8
**clarified**   23:18
**clarity**   81:6 84:13
**class**   25:13,13 37:17
   38:7,7,12,17 47:17
   47:18,20
**clean**   50:10 51:3
   72:4
**cleanup**   62:23

clear 27:17 35:2 63:11 68:12 78:1 116:21 118:12 119:5,5
clearer 61:6
clearly 13:15 47:21 86:25 91:22
client 82:3 89:4,8
clients 11:11 23:11 24:17 30:14,24,25 31:21 32:2 36:14,15 46:2,9 56:22 68:19 106:19
clifford 6:8 10:21
cobra 59:7
code 4:21 20:19 43:12 102:5
coffino 7:7 81:15,20 81:23 82:8,17 83:1 83:7,11,14,22 84:1 84:5,20,22,24 85:4 85:6,15,18,24 86:2 86:4,7,10 87:20,22 89:5,23 90:1,5,8,11 90:14,17 91:3,6,8 91:13,16,22,25 92:2 92:6,12,15,18,20 93:2,5,7,11,13,15 93:20,22 94:10,17 95:1,24 96:7,12,21 98:1,8 99:24 102:25 105:7 111:22 114:17 115:5,13,17 115:19,24 116:15 116:17,19 117:3,7,9 117:17 118:10,17 118:20,25 119:3 120:5
cog 36:17
collateral 11:6
colleague 107:22
colleagues 115:5,19
come 32:8 72:20,23 75:25 79:16 81:20 91:11 94:4,16,18,19 95:3 109:13 110:9 113:13 115:9

119:24
comes 72:13 95:13 99:25 106:20,21 114:3 115:1
coming 35:24 47:19 61:14 73:1 80:23,24 107:19
commencement 15:12
comment 24:12 69:1,1,18 94:6
comments 52:11 69:11,13 84:12 96:22 97:7
commissions 32:1 53:3,4,5 57:10
commitment 72:20 72:21
committee 4:19 81:11,13 82:1,1,1,9 82:10,15,25 83:3,10 84:17 86:21,22 87:2 87:3,5,7,8,10 89:13 89:13,14,15 92:9 99:11,19 100:3,5 101:19 102:9,12 103:16 106:19,22 108:3,4,12,18 109:4 109:13 110:8 111:19 116:10,11 116:17 117:21
committee's 92:12
committing 73:1
commodities 22:8 22:11,18,20
commodity 20:21 21:25
communications 92:6 104:22
companies 30:8,9 31:5
company 2:4 44:23 44:25 121:8
compensate 44:19
compensated 48:16 88:16

compensation 43:1 48:5 53:3,11,14 55:25 56:4,10,13,16 59:14,23 60:1,24 83:2
complaining 45:19
complaint 18:17 39:13 55:23
complete 47:16
completely 102:23 102:23 110:9 118:11
compliant 18:17
complicated 79:6
complies 103:13
comply 24:1
conceivably 13:3
concept 102:17
concern 109:13
concerned 39:4 87:24 92:24 117:23
conclude 16:15 41:8 111:10
concluded 83:23 120:11
conclusions 16:10 16:19
conditions 76:14
conduct 89:11
confer 117:7 118:21 118:22
conference 115:7
conferred 116:22
configuration 96:18
confirmation 112:11,12
conflict 83:15
confused 116:12
confusion 82:6
connected 82:24
connection 17:13 66:16 88:20
consider 70:2 114:7
considered 109:3
considering 69:23 84:12

consistent 48:14
consolidate 66:7
construct 37:5,24 96:6 106:21
contact 41:22
contemplated 70:5
contend 22:19 31:15
contention 29:17 34:20
contested 13:20
context 43:12 69:12 69:13,24 70:22 101:22
contingent 11:9
continue 34:25 78:9 80:25
continued 76:14,15 78:13
continuing 109:12
contract 20:22 22:1 22:8,11,18,21 48:15 56:21 64:19 72:23 73:10,13 74:25 76:13,17 77:14,21 77:25 78:4,4,5 79:7 79:8
contrary 11:10 43:16 69:11
contribute 84:20
contribution 82:10 83:6 86:15 88:16,20 94:23 95:3,18 98:16 99:17 100:4,12 101:7 102:6 103:18 108:14 109:1 111:13,18 112:8 118:6,8
convenient 115:7
conversation 27:11 95:16
convert 55:4 56:20
converted 26:7,8,18 60:3
convince 46:3 64:22
copy 44:13 76:17,19

**corp**  7:17
**corporate**  23:7
**corporation**  5:19
**correct**  11:20,21,21
  12:22 17:2 19:20
  25:2 31:10 37:2
  58:19 60:24 65:4
  81:14,15 83:1 96:16
  115:25
**correctly**  65:23
**cost**  103:3
**coughed**  107:10
**counsel**  52:6 54:1
  57:13 58:2 60:6
  67:1 69:10 71:6
  72:18 89:13,15
  101:9 108:3,5,12,17
**counsel's**  18:13
  73:25
**counterparties**  2:5
  121:9
**country**  122:14
**couple**  49:14 67:14
  83:23 103:2 113:2
**course**  21:14 24:15
  42:4,19 64:7 73:23
  84:6 109:3 111:9,11
**court**  1:1,16 10:2,5
  10:9,12,15 11:8,14
  11:17,22 12:7,10,13
  12:15,19,23 13:5,8
  13:11,21,24 14:4,10
  14:13,19,22 15:1,5
  15:11 18:3,10,16,20
  19:4,7,21,25 20:3,7
  20:11,15 21:3,5,8
  21:13,15,18,20,23
  22:2,4,7,10,13,15
  22:22,24 23:1,15
  24:4,14,19,21,23
  25:3,8,15,24 26:12
  26:14,17 27:3,8,11
  27:13,14,16,18,21
  27:23 28:1,5,7,11
  28:13,17,24 29:1,16
  30:1,4,14,17,21,24
  32:12,14,20,22 33:2

33:4,7,10,19,25
34:7,11 35:16,18,25
36:5,7,12,14,22
37:4,11,13,15 38:7
38:11,13,23 39:3,16
39:18,22 40:4,6,9
40:12,18,21,24 41:2
41:6,10,14,18,24
42:2,7,12,14,17
43:2,10,11,13,17,20
43:22 44:14,16 45:9
45:11,15 46:13,16
46:18,22,24 47:25
48:2,6,9,21,23,25
49:16 50:11,13,15
51:2,4,10,12,14,19
51:21 52:1,3,10,12
53:7,9 54:3,9,11,16
54:20,23 55:3,6,9
55:12,14,16,18,20
56:2,6,8,14 58:5,8
58:11,14,17,21,24
59:1,3,5,9,12,15,18
60:5,8,20,22 61:2,8
61:10,14,20,22,24
62:2,9,16,18,22,24
63:3,8,18,20,22
64:2,10,13 65:10,17
66:20 67:3,5,8,13
67:16 68:1,3,12,17
68:19 69:19,21,25
70:18 71:8,11,13,25
72:4,5,11,15 73:2,4
73:6 74:4,6,8,11,14
74:18 75:7,11,13,19
75:21,24 76:16,20
77:1,4,6,10,18,22
78:3,8,14,25 79:2
79:11,12,20,22 80:5
80:8,14,17,19,22
81:16,22 82:5,14,19
83:5,9,12,15,23
84:4,19,21,23,25
85:1,2,5,14,19
86:1,3,6,8,11 87:21
87:23 89:6,24 90:4
90:7,10,12,16,24

91:4,7,9,14,17,24
92:1,5,8,11,14,17
92:19 93:1,4,6,9,12
93:14,19,21 94:6,11
94:15,18 95:2 96:5
96:9,14,23 97:10,11
97:14,18,21,24 98:1
98:5,7,13,14,18,20
98:22,24 99:2,4,7
99:10,13,16,19,21
100:6,11,14 101:5
101:11,16,18,20,24
102:2,4,9,15,21,24
103:8,11,15,23
104:9,11,24 105:1,6
105:10,12,15,22,25
106:3,5,8,10,13,16
106:19,25 107:2,11
108:21 109:6,9,11
109:16,23 110:3,16
110:20 111:4 112:1
112:3,6,13,18,22,24
113:2,5,22,24 114:2
114:6,8,10,13,16,23
115:1,4,14,16,18,23
116:14,16,18,24
117:1,5,8,13,15,18
118:16,19,21 119:1
119:7,10,12,17,19
119:23 120:4,7,9
**court's**  111:5
**courtroom**  10:23
**covered**  41:7 71:20
  80:10
**covers**  41:3
**covington**  7:1 92:7
**craft**  39:12
**credit**  16:25 44:25
**creditor**  2:9,13,17
  2:20,24 3:2,7,11,15
  3:19,23 4:3,7,11,15
  13:1 24:25 26:3,9
  26:16,18 27:5 28:2
  38:3 100:17 121:13
  121:18
**creditors**  4:19 6:2
  10:18 20:4 25:13

87:7 92:3 102:15
108:21 111:24
113:9 114:4
**criteria**  11:6 16:17
**critically**  109:24
  110:14
**criticism**  70:1
**crux**  31:24 55:18
**culpable**  31:24
**curchack**  7:14
**currency**  44:6
**cursory**  69:5
**customer**  10:17
  11:5 15:14 16:11
  24:17,24 25:25 26:2
  26:2,7 27:20,24
  28:1 32:13
**customers**  16:15
  29:3

|   d   |
| --- |

**d**  4:21 9:6 10:1
  86:24 121:1 122:10
**d.c.**  5:22
**daily**  87:2
**damage**  55:21
**damages**  56:22
**darcey**  8:6
**date**  40:1 73:11
  75:4 77:25 79:10,17
  122:18
**dated**  66:2,3
**dates**  73:16
**day**  48:16 62:20
  68:4 87:9 116:23
**days**  39:21,25 46:3
  79:13 83:23
**deadline**  32:10
**deal**  40:23
**dealing**  54:5
**dealt**  31:20
**dear**  86:18 88:10
**debate**  70:22 71:3
**debentures**  21:17
**debt**  23:4,5 25:11
**debtor**  1:14 37:19
  95:7,18,19 102:12
  112:7

debtors 1:8 96:4
115:20
december 49:22
decide 85:5 91:14
decision 18:25 42:4
43:4,14,15 44:8
47:16 48:13,15
49:10 52:15 62:7
67:24 79:13 100:2
107:19 118:7
declarant 10:22
declarants 88:18
declaration 10:25
12:3 76:25 78:11
82:3,4 115:20,24
declarations 84:9
88:6
decline 11:11
defaulted 54:2
defaulters 58:4
defer 82:18
deferred 53:14
defined 20:19
definition 21:12
defraud 16:7
delaware 118:7
delegated 108:3,3
deliberate 119:23
delineation 11:25
demand 16:17
demonstrable
100:19
denied 45:3
deny 32:15 79:15
87:13
denying 68:24
118:8
department 9:1
depending 31:2,3,4
depth 76:11
describes 102:11
description 67:18
destined 89:2
detail 58:2
details 24:1 67:2
determination
16:11 26:1,5,10,19

76:5 111:5 113:10
determine 17:18
34:19 61:11
determined 27:12
27:15 28:1
develop 72:21
developing 76:1,2
device 25:19
dianne 7:7
dictate 101:2
differ 84:22
difference 66:11
different 15:14
40:17 44:2,2 46:17
60:3 62:19 63:25
69:17 82:16,20 83:8
83:9 93:10 98:3
103:17 116:20
117:19
differently 57:14
difficult 116:5
dig 67:6
dip 57:19,20
direct 42:25 61:24
directed 115:5
directing 97:2
directive 62:10
directly 65:8
directors 47:17
disagree 18:11
52:16 66:22 88:25
96:12 109:11
disagreeing 101:22
116:19
disagreement 84:14
103:21
disallowed 18:2
79:11,18
discharge 89:10,17
discover 101:2,14
108:9
discovery 80:25
83:17 89:11 93:25
107:23
discretion 45:23,24
45:25

discuss 15:18 72:2
80:25 94:8 111:20
discussed 60:14
65:3
discussing 14:5
34:18
discussion 86:17
discussions 10:19
57:16 112:2 113:15
dismiss 39:7
dispose 71:16 80:9
disposing 39:24
disposition 104:13
dispositions 71:14
dispositive 52:22
62:4,7 64:8
dispute 59:24
disputed 10:17
disputing 78:4
distinction 35:2
42:18 49:5 86:25
district 1:2 38:7
43:10 68:12 79:12
diversified 49:11
62:14
divulging 104:22
doc 2:2,8,12,16,20
2:24 3:2,6,10,14,18
3:22 4:2,6,10,14,18
121:5,12,17
docket 18:8 75:9
77:6 81:9
document 63:10
78:19 90:19 91:20
94:1,2,2
documented 60:18
documents 17:10
28:21 39:9 47:1
53:4 60:25 61:1
63:11,11 83:20
89:12,18 90:21 93:3
94:5
doing 47:5 82:24
105:6 107:23
108:16
dollar 33:9,14
85:22 108:24

110:23 111:9
dollars 25:17
don't 26:22 30:3
31:21 45:13 101:2
double 32:23 33:6
33:16 57:19,20
dozen 63:2
dr 31:15
drag 117:16 119:1
draw 73:9 77:17
118:12
drawing 39:11
86:25
driver 110:24
dropped 50:24
due 78:12
duped 88:7
duplicate 108:15
duplicated 100:21
duplication 108:8
118:13,15
duplicative 14:8
83:10 88:5 103:18
118:1
duties 86:23 99:11
99:19 101:18,19
103:16 109:4
111:19 117:21
dwell 67:25
déjà 40:25

e

e 1:23,23 5:1,1 10:1
10:1 121:1
earlier 27:2
early 17:7 24:22
earned 53:2,3,4
55:25 57:10 65:6
easiest 115:17
easily 88:8
economic 95:4,9
110:11 111:2,2
effect 12:8 66:5
115:11
effort 51:1
efforts 100:21
118:11

**eight** 53:25 63:2
**eighth** 7:4
**eighty** 3:10
**either** 39:7 64:16
66:16 71:18 79:4
89:12 96:1
**electronic** 122:10
**elliott** 7:17
**embark** 81:7
**employed** 73:16
75:3,3,8 77:24 78:1
78:13 79:10
**employee** 3:15,19
3:23 4:3,7,11,15
42:24 54:7 56:4
68:24
**employees** 30:15,18
30:18 40:16 42:25
44:20 45:6,7 53:2
68:5,14
**employer** 42:24,25
53:5,6 54:7
**employment** 72:23
73:9,13,15,20 74:3
75:25 76:15 77:16
77:23 79:8
**ends** 79:22
**enforceably** 44:18
**enormous** 37:16,19
**enter** 66:5 70:19
**enterprise** 68:9
**entire** 27:9 101:9
**entities** 28:25 40:16
**entitled** 54:25 73:13
75:1 76:12 78:1
**entitlement** 52:15
**entitles** 56:24 57:2
**entity** 33:17 49:15
102:5
**entry** 2:3 121:6
**equal** 70:13
**equity** 3:15,19
25:11 40:20,20
42:21 48:11 49:21
50:18 51:8,12,14,15
52:25 54:4 55:1,11
56:25 58:1 62:17,24

63:6,8,14,15,15
64:11 65:5,7,19,20
69:4 72:10
**esi** 93:25
**esq** 5:7,8,15,16,17
5:24 6:6,13,20 7:7
7:14,21 8:6,13,20
9:6,7
**establish** 98:15
100:10 103:9,17
104:17
**established** 60:11
60:12 108:25
**estate** 10:18 12:16
13:3,10,17 19:12
26:9 86:22 94:13
96:24 100:17,20
102:16 113:14
**estates** 29:20
**estimates** 33:12
**et** 1:7 15:7 46:5
86:24 98:10 99:25
106:6 108:1,10,12
109:18,18 112:17
**eventually** 97:19,21
**everybody** 37:25,25
91:11
**everyone's** 11:10
**evidence** 24:8 45:10
73:24 74:2 78:17
84:10 93:8 105:5
**evidentiary** 74:1
**exact** 26:4 44:5
**exactly** 64:25 91:24
98:25 112:15
**examiner's** 24:8
25:21 27:1 32:6
**example** 65:17
82:20,23 88:10 92:7
102:10,11 106:10
**excellent** 28:5
**exchange** 53:13
**exchanges** 10:20
**excuse** 28:14
**executive** 30:7,7
31:19

**executives** 32:4
**exercise** 19:10
103:4,5,6,8,11
**exhibit** 76:25 77:2
77:12
**exhibits** 24:3
**expectation** 11:12
**expectations** 11:10
**expense** 4:22
**expenses** 82:16
**expensive** 94:3
**experience** 68:22
**explain** 52:12 81:16
97:16
**explained** 86:23
**explicitly** 76:15
78:11
**expressed** 110:5
**expunge** 19:19
**expunged** 18:2
**extensive** 10:19,20
**extent** 19:1 23:2
29:22 55:13 66:10
68:12 70:11 81:4
86:21 89:7 95:10,11
101:14 107:7 108:1
111:16 112:8 113:9
113:14
**extract** 87:17
**extraordinarily**
94:3
**extraordinary** 85:6
85:7,7 86:21 87:9
87:17 98:19 107:3
**extreme** 92:24
**extremely** 29:19
51:6

**f**

**f** 1:23
**face** 34:25
**facetious** 54:18
**facilitate** 85:8
**fact** 18:17 29:19
37:24 38:6 49:6
64:6,7 79:13,16
86:15 92:15 101:8
108:13

**factor** 16:21,24,25
17:3,5 35:3 108:13
**factors** 11:7 13:16
16:22 42:11 117:24
**facts** 16:5,6 46:14
60:15,18,19,20 61:1
**factual** 115:19
**factually** 17:2
**failed** 16:1 36:3,3
**failure** 31:22 49:10
55:20,22 60:9 66:1
68:10 70:14
**fair** 15:9 117:18
**fairness** 23:16
111:22
**fall** 64:13
**falls** 13:15
**familiar** 38:19 42:4
88:4
**far** 35:10 39:3 43:9
45:12 63:25 87:24
117:22
**fauld** 36:15
**favourable** 10:18
**fax** 77:19
**february** 20:14
**federal** 2:2 15:23,25
28:19 121:5
**fee** 89:19
**feel** 68:18 70:24
84:10 112:22
**feelings** 40:25
**feels** 74:1 81:4
84:16
**fees** 4:22 108:11
**fellow** 106:22
**felt** 68:7
**ferret** 103:15,18,19
**fiduciary** 95:15
113:16
**fifth** 2:24 5:4 7:18
43:15 48:14
**fifty** 4:2
**figure** 61:10
**file** 25:10 47:2 57:8
85:9 87:13 114:19
114:20

**filed** 14:6 15:7 17:10 18:8,23 20:14 21:1,2 24:17,18 25:5 26:25 27:1 40:16 52:20 57:8,9 70:1,6 76:25 77:1 81:9 105:4 115:20 115:22
**filing** 32:10 73:11 73:16 74:9 75:4 77:25 78:9,13 79:3 79:4,17 84:8 109:14 119:7
**filings** 109:17
**final** 93:17,17
**financial** 32:5 37:2
**find** 26:4 47:6 95:11 102:10
**finding** 30:2 53:15
**fine** 10:4 33:7 42:17 43:20 108:17 117:11,12,13 119:9
**finish** 63:21 110:3
**firm** 41:20 61:18 73:15 77:16 79:8
**first** 2:20 3:14,18 4:6 10:11 14:23 18:6 19:13,15 28:10 36:25 41:3 42:3 68:6 77:15 81:8 87:6,7 88:12 90:2,2 98:14 99:23 110:23 115:17 119:10
**fiscal** 63:23
**fit** 106:13
**five** 25:18 95:17
**fix** 32:14
**floating** 34:2
**floor** 5:4
**flores** 112:24,25 113:1
**focus** 85:16 86:11
**focused** 30:11 34:1 97:21,22
**folks** 37:18 39:23 68:18

**follow** 66:4 68:7,11 68:20
**following** 52:5
**footnote** 18:7 19:16 34:1 49:10,18 51:16 53:1 55:17 58:9 64:14
**force** 70:13
**foregoing** 122:3
**foreshadow** 108:10
**forever** 117:16
**form** 23:24 53:14 69:12 71:6
**former** 40:16
**forth** 11:4,7 12:2 83:16 101:4
**forty** 2:20,24 4:14
**forward** 18:25 34:15 83:24 95:23 96:2 116:3 120:1
**found** 32:6,6
**four** 82:20 84:8
**fours** 66:10
**fourth** 3:6 4:2
**fox** 6:15
**fraction** 113:19
**frame** 38:1 39:16,16 117:5
**framed** 14:25
**framework** 34:24 35:4
**frank** 8:20
**frankly** 43:16 87:24 102:12 109:10
**fraud** 14:25 15:17 15:20,23 21:1 32:4 35:23,25 37:8 38:4 39:5,12
**fraudulent** 16:3,5
**fraudulently** 16:12
**free** 39:10
**freelance** 102:16
**freely** 28:23
**frequently** 37:18
**friend** 86:18
**front** 32:9 47:17 50:5 65:8 67:3 69:7

**fruitful** 34:4 94:8
**fulfilled** 48:5
**fulfilling** 16:16
**full** 12:1 24:12 30:22 113:11
**fully** 23:17 71:16 80:9
**fundamental** 84:14
**funkhouser** 5:15 10:4,6,6,10,13,16 11:15,21 12:1,8,11 12:14,16,22,25 13:6 13:9,18,22 18:5
**further** 25:1 26:9 26:18 42:22 78:2 87:11
**futile** 34:24 35:10
**future** 22:8,11,18
**futures** 20:22 21:25

**g**

**g** 10:1
**gaining** 106:23
**gallery** 94:12
**games** 50:8,9
**gate** 103:12
**gears** 56:15 57:23 57:24
**general** 2:9,12,16 2:20,24 3:2,6,10,14 3:19,23 4:3,7,11,15 12:25 26:8,16,18 27:5,20,22 30:1 51:22 89:20 121:13 121:18
**generally** 23:22 54:10 102:15
**generic** 105:10,11 105:17
**george** 6:20
**gerber** 86:19
**getting** 54:21 77:11 77:11 106:14
**give** 34:8 49:16 69:22 77:2 87:4 90:25 93:16 95:20 102:10 104:13

**given** 35:10,12 42:8 51:21 68:22 72:20 106:2 109:24 110:5
**giving** 114:3
**glad** 49:15
**glenn's** 43:15
**gloss** 103:19
**glynn** 6:1 20:2
**go** 18:22,25 19:10 27:3 32:16,16,17 34:20 45:14 47:12 49:16 56:1,1 59:16 67:9 70:18 71:15 76:10 81:2 83:24 87:15,17 89:1 90:6 94:21 102:16,24,24 104:14,14,19 113:5
**goal** 104:1
**goes** 101:20 102:10 107:17 117:24
**going** 12:24 14:15 16:12 19:9 30:2 31:19 32:1 33:5 36:1,5,7,9 38:2,9 41:6 42:7 43:5 46:12 48:17,19 49:8 57:18,19 58:20 59:1 59:2,8,16 61:2 66:4 67:25 69:2,3,10,11 69:25 70:2,21 71:3 71:18,21 74:21 75:19 79:15 80:8 83:16,18 86:3 87:11 87:12,14,15 88:8 89:7,8,10,12,16,21 90:6 91:5,14 93:7 94:3 95:23 96:9 98:10 100:9 102:18 103:1,4,23 104:12 104:13,14,14,19,20 107:6 108:5,6,7,10 110:12,24 111:7 113:5,11,13 114:19 114:23,24 115:9 117:1,2,3 120:1,1,5
**gold** 7:21

**golden** 9:6 90:25 96:16 97:5 105:13 105:16
**goldenberg** 5:8 41:17
**good** 13:24,25 17:8 19:25 20:1 40:12,13 41:14 69:22 80:22 97:4 114:10,13 120:9
**gotten** 49:1 89:4 94:22
**grace** 69:22
**grade** 85:2
**granted** 28:23 39:11
**granting** 39:24
**great** 32:16 90:12
**greatly** 61:8 88:13
**green** 1:17
**gregory** 30:22
**gridlock** 106:20
**ground** 42:8 94:4
**group** 5:3 72:5 93:14
**guaranteed** 76:2
**guess** 11:22 42:8 63:1 94:13 96:21 109:13
**guessing** 91:10
**guidance** 90:3 94:22 106:3,4
**guide** 14:16
**guy** 37:22
**guys** 30:24 37:23 50:19,20

**h**

**h** 7:14
**half** 24:6 63:2 87:4 93:2 95:20
**hand** 44:13 89:13 89:14,14,15
**handed** 61:17
**handing** 44:23
**hands** 96:25
**happen** 45:20 91:14 98:15

**happened** 26:24 46:1 69:6
**happening** 29:13 31:6
**happens** 48:3
**happy** 10:25 14:21 15:17 33:23 68:4,14
**hard** 54:21 61:10 68:8 89:9 102:10
**hat** 31:2,4,5 87:15
**hats** 83:6
**hazier** 118:13
**head** 91:2 98:24
**health** 17:11
**hear** 32:23 33:19 118:19
**heard** 13:13 18:13 33:13 91:1 116:21
**hearing** 26:8 10 34:13,14 38:19 49:21 50:1,23 60:16 60:17 61:16,18 62:20 65:3 70:21 72:3 83:12 84:2 106:7 114:20 116:5
**hearings** 50:5
**heart** 88:10
**heck** 108:7 113:6
**heightened** 35:14
**held** 47:23 53:17 56:3 80:3 109:25 110:5
**help** 14:15 41:6 52:6 64:23
**helpful** 107:20
**hey** 45:1
**hidden** 51:24
**high** 15:6
**highlighted** 71:17 71:18,21
**highlights** 65:17
**highly** 15:7
**history** 15:18 24:16
**hold** 29:8 48:11,24 58:11,11 112:12
**holders** 45:21 47:13 47:19,22 48:4,11

**holding** 46:9 66:12
**holdings** 1:6 4:17 29:7
**hon** 1:24
**honor** 10:4 12:22 13:18,22,25 14:24 18:9,21 19:20 22:12 22:19 23:23 24:11 24:16 25:2 28:4,22 29:12 32:18 33:22 34:12,17 35:19 36:11 38:14 40:2,5 40:7,11 41:1,5,12 41:17 42:6,10,23 43:3,9,21 44:7,12 45:13 46:12,21 47:5 47:19 48:18 49:15 50:6 51:9 53:1,22 54:15 55:23 57:5 58:13,16 60:24 61:5 62:1 63:1,11,21 64:1,4,24 65:8,16 66:19,24 67:12,22 68:25 69:14,20 71:5 72:2,13 74:10,25 75:14,17,18 76:9,10 77:9 78:7,10,16 79:10,19,21 80:7,12 80:16 81:15,23 94:14 97:4,7,17 98:6 99:9,22 100:9 100:13,20,22 101:10,12 103:6,22 104:8,20 106:2 107:4,6,15,16 108:1 108:6,19 109:21 110:21 111:16 112:16,20 113:20 114:6,20 115:15 117:11 119:4 120:3 120:8,10
**honor's** 65:9
**hook** 45:6
**hope** 69:20 98:4,6
**hoping** 75:16
**hosinksi** 6:1

**host** 85:8
**hour** 85:22 87:4,9
**hours** 103:2
**housekeeping** 51:1 58:2
**hubbard** 5:10 10:7 14:1 40:14
**huge** 36:17 37:7 65:12
**hughes** 5:10 10:6 14:1 40:14
**huh** 18:9 85:18 100:14
**hundred** 2:8,12 3:14,18,22 4:2,6,10 4:14 14:5,8 16:1 18:4 121:12,17
**hundreds** 23:12 24:6 37:18
**hyde** 31:12,14
**hypothetically** 95:11

**i**

**i.e.** 39:6
**icing** 88:22
**idea** 50:15 60:8 98:9 106:21
**identical** 29:15,18 56:17 64:25
**identified** 53:2 63:24 65:23 72:5 78:18
**identify** 12:2 101:6
**ignore** 17:5
**ignoring** 29:19
**ii** 4:19 81:11,18
**illustrate** 57:4 63:13
**imagine** 103:24 106:11
**imitation** 105:6,9 105:17
**impact** 12:3 43:5,7 44:8 48:12,20
**impart** 31:22
**implement** 117:19

**important** 47:12
81:6 85:12 86:13
98:12 100:16 101:5
101:6
**importantly** 100:20
**impression** 96:17
**imputation** 30:6
35:3
**inclined** 110:16
**include** 20:20
**included** 12:12
21:22
**includes** 12:6,16
21:16,17 83:4
**including** 10:20
85:13,17
**inconsistent** 88:15
**incorporated** 17:9
**incorporating** 24:5
**incurred** 101:9
111:9
**indenture** 4:19
81:11,12,18,24
**indentured** 82:2,14
84:16 116:10,11
**indicating** 17:4
**indication** 37:21
**indications** 67:10
**individual** 4:18
62:13 81:10 89:15
92:3 100:3 108:2,21
111:24
**individually** 92:10
**individuals** 113:17
**induced** 16:13
**inducing** 75:25
**inference** 16:6
**inform** 86:8
**information** 31:22
101:14
**informed** 36:4
**inherited** 57:9
**initial** 18:23 44:10
69:17 76:1
**initially** 24:17 92:21
**innkeepers** 88:11

**innocuous** 29:5
**inside** 99:8
**insignificant** 37:17
**instalments** 72:22
**instance** 14:23
16:10
**institution** 36:18
**instruct** 36:24
**instruments** 23:4
**insufficient** 17:19
19:1
**intend** 85:6
**intended** 103:24
**intensive** 90:19
91:21 103:5
**intent** 16:6
**inter** 44:23,25
**interest** 13:17 95:4
95:10 111:3
**interested** 100:18
**interesting** 20:13
88:21
**interests** 42:21
**interim** 81:1
**interpret** 111:4
**interpretation** 79:7
**interrupt** 110:22
**invest** 16:13 29:5,7
**investigation** 26:25
**investment** 2:4
16:17 29:8 36:18
121:8
**investments** 29:6
**investor** 5:19
**invite** 52:9
**involved** 96:24
100:21,23 110:18
**involvement** 88:11
88:22 120:1
**involving** 47:17
92:16
**iridium** 11:6 13:16
**irrespective** 98:16
**issue** 20:16 24:9
25:17 34:21 35:9
41:21 44:24 45:8
47:14 49:11,20 53:9

54:12,14,21 55:20
55:22,24 56:13,21
59:11 60:9,15,16
64:19 65:1,7,19
66:1 70:14 79:2,3
82:7,12,13 84:3
86:2 89:4 90:2,18
92:20,23,23 98:14
107:5,16 112:7
116:6 118:11,18
**issued** 15:4,6 36:24
42:4 45:22 54:6,12
55:5,24 56:12,19,20
62:2 64:18 65:7,20
70:13 79:12
**issues** 23:16 34:2,25
35:5,21 47:10 48:17
56:15 80:25 83:18
106:5,20 111:6
**item** 10:11,17 40:15
**items** 14:2 40:15
82:20 91:19
**iterations** 15:14
**i'm** 20:1 98:18

**j**

**j** 5:7,24 7:21
**january** 1:20 78:6
122:18
**jealous** 114:3
**jeanne** 8:6
**jekyll** 31:12,15
**job** 49:25 97:18
**john** 72:14
**join** 24:9
**jr** 5:7
**judge** 1:25 20:1,6
21:10 23:8 24:23
25:6,6,22,24 26:1
26:22 28:15 30:3,19
31:18 32:6,8,25
33:21 36:3,21 37:9
38:5 39:15,21 43:14
47:13,16,21 49:21
50:5,19 60:2 63:25
82:6 86:14,18,25
88:1 93:15 94:22
98:17 99:25 101:15

101:17 103:13
104:2,17 106:13
**judicial** 86:12
**julie** 82:3
**july** 32:7
**justice** 9:1

**k**

**k** 80:3
**kaplan** 7:16 32:7
**karen** 5:16 40:8,11
40:13
**keep** 61:14
**ken** 11:1
**kenneth** 5:24
**kept** 116:12
**key** 10:23
**kidding** 105:13,16
**kind** 11:25 14:14
19:14 26:20 29:7
106:5,25 117:5
**kleinberg** 7:16
**knew** 31:2,5,10,18
31:21,22 36:8
**know** 17:24 18:11
29:3 32:3 33:25
34:8,16 35:24 38:15
41:20,25 44:14,16
47:3 50:7,19,20
52:13,16,17 61:3,14
64:10,10 66:21,22
67:19 68:22 69:15
69:15 70:10,22,23
71:2,2 82:12,17
84:13,15,20 85:24
87:20,22 89:19
90:18,21 91:1,19
94:6,24 97:8 99:5,6
99:23 100:25 105:1
106:20 107:2,19,24
107:25 108:17
110:1 111:12,19
112:5,15,18,24
113:5,23 114:11,16
117:21,24 118:4
**knowing** 115:9
**knowledge** 31:6,24

knowledgeable
  32:4
known  15:3 31:23
  36:20,20
knows  26:23

**l**

l  4:25 122:9
labor  103:5
lack  28:10 65:18
lacking  19:18
laid  82:4
landscape  37:16
lane  8:10
language  26:4
  86:17 99:8
large  25:13 36:18
  41:4
largely  88:5 115:5
late  44:12 47:8
laughter  105:18
lavan  8:8
law  23:7 68:7,11,11
  68:21 88:1,15 98:16
  108:25 110:17
  111:3,18
lawyers  87:4
lb  30:13
lbh  31:20
lbhi  15:4 16:15,25
  17:6,8,11,11 23:10
  23:13 25:18 29:14
  29:17 30:2,11,18
  31:2,14,25 32:5
  33:10,11 34:22 36:9
  37:5 38:1,6,11,13
  38:19,21,24 42:5,19
  42:21 43:24 44:6,6
  44:19,24,25 45:5
  46:8 49:7,9,25 50:4
  50:21 51:18 52:15
  53:24 54:21 56:17
  57:21 60:22 62:3
  64:6,8 65:1,2 66:9
  66:11,13 69:8 70:9
  70:25
lbhi's  38:25 58:2

lbi  10:18 13:3 14:1
  15:16 16:7,12,15
  17:5 26:9 29:3,14
  29:17 30:2,11,13,14
  30:17,20 31:1,15,20
  31:23 32:4 33:9,14
  33:15,15,19 34:22
  36:13 37:6,25 38:3
  38:16,20,23 40:16
  42:20,25 44:18,24
  45:1,3,5,6 46:7 49:7
  49:8,9,25 53:6,6
  57:3,15,21,25 59:22
  61:1 66:9,11,13
  72:20 73:10,16 74:1
  74:2,8 75:3,4,8 76:1
  76:2,15 77:25 78:1
  78:9,13,15 79:3,16
  80:3
lbi's  44:19 75:25
lead  65:10
leave  39:10,24
  75:25
leeway  11:24
left  48:4 50:23 72:8
legal  35:4 39:11
  44:22 84:14
lehman  1:6,12 2:1,7
  2:11,15,19,23 3:1,5
  3:9,13,17,21 4:1,5,9
  4:13,17 8:16 10:7
  29:7,14,14 36:18
  45:17 65:11,13
  68:19 72:20 74:20
  74:22 76:13 87:8
  88:11,14 113:18
  121:11,16
lehman's  45:18
  68:9,20
length  11:7
lesson  86:12
letter  118:24
letters  45:24
level  65:20
liabilities  31:7
liability  2:9,13,17
  2:21,25 3:3,7,11

121:14,19
lie  111:6
lieu  53:13
life  45:16 101:9
light  101:8 107:18
  120:1
likelihood  37:21
limited  22:20
line  34:13 66:17
  82:20 86:20 118:12
lines  19:16 53:17
linked  17:13
listed  16:22
listen  107:13
litigant  109:16
litigating  92:25
litigation  25:11
  30:10
litigations  92:16
little  50:7 51:1
  62:23 73:19 76:10
  81:5 85:25 86:11
  95:6 106:4 115:8
  118:13
live  67:19 107:13
  114:16
lives  107:23
llc  2:5 121:8
llp  5:2,10 6:1,8,15
  7:1,9 8:1,8,15
loeb  7:9,9
log  92:22 93:23,23
  94:2
long  11:19 32:10,11
  33:3 37:23 40:22
  86:17 106:20 119:2
  119:15
look  20:18 21:3
  34:19 37:15,17 39:3
  62:13 82:3 89:17
  90:6 103:16 104:8
  112:16,20
looked  20:8 35:12
  45:24 83:20
looking  30:20 49:1
  57:20 107:21,21,22

loose  79:22
lost  44:17 64:3
lot  21:16 43:5 49:19
  83:16,19 84:2 88:15
  106:22 108:7
  113:25 114:2 117:4
loud  43:24 68:4
  113:11 116:21
lowest  13:15
ltc  8:9

**m**

m  5:16
maiden  8:10
major  10:16 43:7
making  53:21,22
  74:14 96:10 100:4
  106:16 110:9,10
  117:24
management  2:4
  7:17 29:14 30:20
  31:23 36:13,23
  121:8
managers  31:1,2,13
  31:17 36:20
manner  21:1
market  15:10
marzoni  72:14 73:8
  73:10,14,15 74:8,14
  76:12,14 79:9
marzoni's  72:19
  73:7,22 75:1,12
  78:17,22
massachusetts  8:4
mat  104:12
materials  25:11
matter  10:11 19:8
  23:16 30:1 31:3
  40:8 70:25 74:2
  111:7 114:18
matthew  7:21
mature  39:6
mean  18:20 19:4,14
  23:16 38:23 42:12
  63:9 64:14,24 65:10
  67:22 70:10,23
  71:14 75:6,21 76:7
  76:12 83:8 89:18

94:18 97:8 100:24
101:12,20 106:8
109:17,23 110:14
110:21 111:8 115:2
115:3 117:1,15
118:1 119:20
**meaningfully** 111:1
**means** 70:23 102:11
**med** 49:11 62:13
**meet** 100:25
**meeting** 75:21 87:6
87:7
**meets** 11:6 108:24
**mellon** 107:12
**member** 81:13 83:3
89:13,14 100:4
102:12 106:19
116:17
**members** 4:18
25:12 81:10 82:1,9
82:11,15 84:17
86:21 89:15 106:22
109:4,13 110:8
111:19
**memoranda** 16:21
**mention** 81:18
**mentioned** 36:6
94:3
**merely** 83:17 96:10
**merit** 19:18 28:15
61:11 65:18
**meritorious** 19:8
**merits** 23:18 37:22
92:23
**mess** 110:13
**message** 101:10,11
**michael** 107:9,11
**mid** 17:7,8
**middle** 77:20 94:4
**milbank** 111:23
**millennium** 29:5
**million** 12:14,18
25:17,19 68:5 94:19
94:20 95:9,12,13
99:21 108:11
110:10,13 113:12
113:18,23

**millman** 8:13
**mind** 72:13 89:2
117:2,6
**mindful** 98:13
**mine** 79:13
**mineola** 122:16
**minute** 45:2 46:6
49:24 85:21
**minutes** 49:14
52:14 70:7 84:5
**missed** 14:16 47:7
80:11
**mitchell** 5:17 13:25
14:1,5,11,18,20,23
15:2,6,12 18:4,9,15
18:19,21 19:6,20,23
33:22 34:6,10,12
35:17 40:2
**mix** 66:12
**mizuho** 8:9
**moment** 77:2
**money** 29:5,8 31:25
45:2 50:2 53:12,17
53:23 54:5 55:21
56:22 57:1,3,15,22
59:22 60:11 63:13
63:16,22,24 64:17
74:15 92:25 93:12
95:13 113:8,13,17
114:2,4,9,12,14
**month** 75:2
**monthly** 72:22 73:9
77:16
**months** 10:19,24
27:2 53:10 77:15
84:8
**morning** 13:24,25
19:25 20:1 40:12,13
61:6 87:2
**motion** 2:2 10:13,22
11:4,7 12:2 13:14
39:7 110:6 121:5
**motions** 13:20
41:22
**mouth** 104:16

**move** 11:16 13:19
26:2,3 32:22 104:1
116:3
**moved** 23:17
**muffly** 6:1
**mullin** 107:12
**multitudes** 108:12
**muster** 88:9
**mutual** 12:20 13:1

**n**

**n** 5:1 10:1 121:1
**n.w.** 5:21
**name** 85:11
**narrowed** 103:25
**national** 8:2
**nature** 35:10 72:22
**near** 88:10
**necessary** 26:23
**need** 22:25 30:3
39:8 43:18 66:15
91:10,11 93:8
108:22,23
**needed** 97:22
**needs** 79:11
**negative** 109:17
**negotiated** 12:21
**negotiating** 109:18
**negotiation** 96:19
**neither** 107:21
115:25
**never** 20:13,16,17
24:7 36:4 48:5
53:23 54:6 60:1,3
60:10,12 64:18 65:7
69:17 74:15 84:17
100:8 101:24
104:25 110:7 116:7
**nevertheless** 102:2
102:4
**new** 1:2,18,18 5:5,5
5:13,13 6:4,4,11,11
6:18,18 7:3,5,5,12
7:12,19,19 8:11,11
8:18,18 9:4,4 47:10
70:8 72:21 84:9
91:7 107:12 119:8
122:16

**night** 43:9 44:12
46:20 47:1 49:24
52:20 69:23 70:7
**nights** 106:23
**nine** 50:23 53:25
58:3 70:7
**nobody's** 38:8
**nods** 91:2
**non** 71:15 72:10,10
82:1,22 87:25,25
90:21 93:17 117:22
**normal** 86:22 87:3
87:5,8,10 89:19
94:25 95:2,16 96:18
99:11,19 101:18,19
103:16 104:4
111:11,19 117:21
118:8
**note** 14:7 35:6
41:17
**noted** 34:18 35:2
114:6
**notice** 17:16 70:6
71:9 85:10,11
**notion** 30:5 88:19
**november** 47:16
52:22 62:2 66:2,3
67:24
**nuance** 99:2
**number** 13:2 17:20
17:23 37:7,19 38:9
41:4 48:9 56:15,19
58:3 68:7 70:4,6,8
71:17,18,21 110:8
110:10
**numbers** 12:1 59:25
77:7
**nye** 6:13

**o**

**o** 1:23 10:1
**o'mara** 30:22
**object** 19:2 37:19
95:19,25 96:1,3,4
101:14
**objected** 32:11
73:12

**objection**  2:8,12,16
2:20,24 3:2,6,10,14
3:18,22 4:2,6,10,14
14:6 16:11,14 18:23
18:24 32:15 39:24
66:17 78:21 80:5
119:22 121:13,18
**objections**  20:14
40:17 44:11 63:5,7
66:25 69:17 71:15
71:17
**obligation**  44:19
45:6 65:19
**obligations**  16:16
23:10,10,11,13
**obliquely**  72:16
**observation**  66:8
96:10 111:8
**observations**  120:2
**observe**  66:14 88:8
**obvious**  42:3
**obviously**  17:3 43:3
57:18 59:11 64:3
95:7
**october**  25:7
**odd**  96:11,14
**offer**  16:9 50:12
78:22
**offered**  78:16
**offering**  69:10
**offhand**  63:1
**office**  8:3 104:16
107:22 109:25
110:5,16 113:6
**officers**  47:18
**official**  4:19 81:10
86:21 102:9
**oh**  32:25 46:22
54:23 89:17 92:17
93:4 98:21
**okay**  10:9,15 11:14
11:17 12:10,13,19
13:5,8,11,15 14:4
14:10,18,22 15:12
18:14,15 19:21 20:3
20:7,15 21:8 22:13
22:22,24 23:3,15

25:3,15 26:12 27:8
27:14,18 28:5 29:25
30:4 32:12 33:7
34:8 35:16 36:22
39:18,22 40:6,24
41:10,18,24 43:13
43:17 48:21,25 53:7
55:9 56:20 57:11
58:5,14,21 59:3,9
59:12,15,18 62:9
63:18 67:5,13 68:4
69:19,25 70:17
71:20,24,25 72:5,11
72:15 74:4,6,11
75:11 77:1,1,10,18
78:14 79:18 80:8,14
80:23 83:12 84:4
85:16 86:1,6 87:21
88:9 90:4,7,10,11
90:16 91:9 93:19
94:10 96:21 100:7
103:14 105:12,25
107:15 113:7
114:25 115:6,14,18
115:23 118:16,17
118:20,21,25 119:3
119:9,21 120:7
**old**  122:14
**omitted**  31:10
**omnibus**  2:8,12,16
2:20,24 3:2,6,10,14
3:18,22 4:2,6,10,14
4:18 14:6 16:14
40:17 44:11 46:20
47:8,10 61:17 63:5
63:5,6,12 69:16
73:7 78:21 81:10
121:12,17
**omniscient**  36:17
**once**  44:7 50:8,13
50:15 94:4
**one's**  57:19
**ones**  13:9 34:21
72:12
**open**  69:25 106:6
109:21

**opening**  109:18
**opinion**  17:6 32:7
52:22 62:2 66:2
79:12 86:16 101:21
117:22
**opinions**  86:12
**opportunity**  11:12
17:21 35:11,22
69:18 72:2 81:2
89:11 90:25 96:3
118:14
**opposed**  47:21
84:11
**opposite**  19:5 26:21
**opposition**  78:21
114:21,21
**oppositions**  44:10
**option**  20:20 21:24
22:7,16,20
**order**  2:3 19:5,12
19:13 26:8 27:6
39:23 53:12 66:3,5
67:7 69:2,2,9,12,24
70:19,22 71:4,6,14
71:22 75:18 76:5
80:9 82:6 92:21
93:16,17,18 121:7
**ordinarily**  118:5
**ordinary**  23:4
**organizing**  50:1
**original**  81:8 85:21
110:6
**originally**  93:23
95:7
**oswald**  8:20 94:12
94:14 112:25 113:3
113:4 119:24 120:3
**ought**  50:21 66:25
78:23
**outlines**  85:12
**outside**  116:11
**overall**  12:3,8
**overlooked**  14:17
**overrule**  32:15
**overruled**  112:10
**overtures**  105:1,20

**overturned**  70:3
**owe**  45:2
**owed**  73:9
**ownership**  15:3

**p**

**p**  5:1,1 6:20 8:6
10:1
**p.m.**  80:21
**pacific**  2:4 121:8
**page**  73:7 77:4,20
101:21 121:4
**pages**  17:10 24:6
60:21 77:7
**paid**  44:5,24 45:7
45:24 53:12,14 56:4
56:4 57:11 78:15
79:5,14 93:12,15
108:11 114:11
**painting**  29:18
**panoply**  99:14
**paper**  46:9 60:8
**papers**  14:7 16:10
18:6 25:5 30:6
31:12 35:12 46:18
52:18 67:6 71:2
72:16 74:7 81:2
114:19,21,21
**paraded**  50:4
**paradigm**  95:22
97:9 108:20
**paragraph**  77:15
**paragraphs**  60:19
**parameters**  103:13
107:25
**park**  5:12 6:3 7:11
**parse**  67:21
**part**  12:21 16:6
25:21 38:20 46:2
59:24 78:18 83:1,1
90:5 95:7 96:1,2,5
97:1 104:22 109:2
**participate**  12:17
48:12
**participated**  47:23
**participating**  2:5
121:9

participation 11:9
88:19
particular 16:20
36:1,2,5,7,8,11
75:22 82:3 91:20
112:7
particularities
17:17
particularity 18:12
23:21 39:5,8
particularized
16:19 17:13,15,22
18:17 34:17
particularly 15:25
parties 35:3 100:18
104:5 106:2
parts 81:25
party 95:4 110:11
111:2
pass 88:8
passages 49:22
path 89:1
patience 80:15,18
patient 51:6
pause 13:23 19:24
21:4 39:20 40:10
75:15,23 76:23 77:3
77:13
pausing 11:22
pay 16:16 45:3,5,25
49:8 50:2 58:18,20
73:1,22 85:2
payable 72:22
paying 74:24
payment 4:22 12:14
32:24 33:6 59:7
74:17 75:2 76:3,14
77:17 96:6
payments 23:6
73:14 78:2,5,11,12
paystub 60:11
peck 25:6,6,22,24
49:21 50:5,19 60:2
63:25
peck's 26:1 93:15
peculiar 95:6

pedaled 32:1
penn 8:17
penny 85:22 101:8
111:14 114:3
people 45:16 50:24
53:25 57:7,20 58:1
58:3,3 59:21 60:11
118:14
people's 50:2
percent 112:15
percentage 56:24
perfect 68:1,3
perform 86:21
performed 110:25
period 73:16 74:9
periods 73:10,14
91:20
permission 13:19
47:3
permitted 69:15
permutations 44:9
person 37:5,20
perspective 65:21
90:19 119:15
pertain 34:8
pertains 18:12
petition 79:10
petricelli 57:6 58:15
petricelli's 58:12
ph 10:22 11:1 36:15
47:13 57:6 66:12
72:14 82:4
phase 76:2
phone 37:7 38:8,9
87:3,6 107:7,10,13
pick 110:8
picture 37:2
piece 27:11 46:9
60:8
piercing 29:20 35:3
pimco 6:9 10:14,21
11:9 13:14
place 17:16 34:23
36:25 44:24 98:3
placement 16:21
plain 23:24

plan 54:24 95:7
96:2,6 97:1 112:9
112:10 115:21
play 83:18
played 10:23 50:9
plaza 5:12 8:17
plead 17:21 27:2,2
34:9 35:11 39:5,10
39:25
pleading 17:13,15
17:25 23:18 24:5,5
32:9 34:24 35:8,14
61:19,23
pleadings 15:15
17:23 35:10 70:1
please 45:14 58:13
100:13 110:19
pleased 10:10 11:16
pleasure 68:24
pled 39:8
plus 35:4
pm 120:11
podium 40:8 81:21
96:22
point 16:25 17:20
18:8 23:1 25:25
27:3,9 29:16 34:11
35:8 44:10 47:12
54:22 63:4 64:5,5
65:2 75:16 78:3,23
85:17 91:17 103:1
103:16 104:4
105:14,19 111:23
116:20 119:6
pointed 16:20 98:22
pointing 21:5 42:11
points 61:23 115:6
policies 86:18
policy 47:18
portion 45:3 62:8
73:12 80:2 111:10
portions 53:5 80:4
posit 18:16
position 16:13
23:20 33:24 57:22
64:24 65:18 92:21
95:15 97:9,16 99:24

105:3,20 120:1
positions 109:18
possible 72:4 99:13
possibly 26:3 109:2
post 8:3 73:16 74:9
78:9,13 79:3,3
114:8
posts 104:1
pour 81:2
ppms 16:22
practical 44:21,22
practically 60:2
precipice 39:7
predetermined
104:11
preference 48:22
prejudging 106:6
prejudice 87:13
prejudiced 101:1
preliminarily 118:1
118:2
preliminary 26:24
prepare 39:23 40:2
prepared 14:11
28:23,24 83:24
preparing 103:11
present 111:4
presentation 83:18
presentations 87:16
presented 68:21
preserve 115:6
preserving 115:11
pressing 15:16
pretty 59:25 103:24
112:6 113:10
118:11
prevailed 53:20
preview 107:6
previous 86:16
previously 27:1
59:17
price 28:8
pride 51:5
principally 30:20
principals 110:17
prior 49:23 60:17
75:25

**priority** 51:23
**private** 16:21 51:25
**privately** 15:6
**privilege** 89:4,9
  91:23 92:2,4,4,22
  93:25 94:2
**privileged** 89:12
  90:21
**pro** 41:20 80:1
**probably** 60:2 61:5
  112:24 113:5
**problem** 43:22
  116:8 118:2,4
**procedural** 15:18
  23:16 24:16 83:17
  92:23
**procedure** 2:3
  11:18 16:1 28:19
  121:6
**proceed** 11:19 76:7
**proceeding** 2:1,7,11
  2:15,19,23 3:1,5,9
  3:13,17,21 4:1,5,9
  4:13 15:8,23 30:12
  39:7 45:1 49:19
  51:20 57:16,21,25
  59:22 60:16 63:12
  64:7 65:1 70:25
  121:11,16
**proceedings** 17:10
  25:1 57:7,12 120:11
  122:4
**process** 10:24 50:7
  50:24 86:9 107:20
**producing** 72:25
  92:22
**product** 10:19
**professionals** 82:22
  93:5
**profitable** 74:22
**programs** 45:23
**promise** 48:5
**promised** 53:18
  74:17
**proof** 23:20,24
  44:25 78:19 101:1

**proofs** 39:6
**proposal** 90:9 91:6
  98:9 101:11 118:22
**propose** 85:8 93:22
  93:24 116:24
**proposed** 12:5
  88:13 97:1
**protection** 5:19
**prove** 85:6
**provided** 46:20
**provision** 46:24
  112:9,9,10
**pudo** 11:1
**pulled** 65:23
**pun** 103:24
**punch** 86:20
**punish** 102:5
**purchase** 20:21
  21:25 22:8,17
**purchased** 53:23
**purchaser** 11:19
**purportedly** 73:9
**purpose** 80:24
**purposes** 20:24,25
  21:11 44:1
**pursuant** 2:2 4:20
  73:9 78:5 121:5
**pursue** 102:16
**pursuing** 58:1
**put** 14:14 17:16
  33:25 38:2 47:9
  61:19 62:11 84:10
  93:8 96:2 100:1
  101:4 105:5 106:1
  107:24 111:14
  114:1
**putting** 84:16
  104:16 111:8

**q**

**question** 18:5,6
  20:6 33:24 37:14,15
  37:24 38:25 39:1,4
  42:3 44:18 48:19
  52:9 61:24 73:13,17
  79:7 81:8 85:20
  93:9 99:21 100:8,22
  103:3 108:4,16

**questions** 10:25
  13:12 14:21 15:18
  81:3
**quickly** 47:9
**quite** 64:3 67:19
  68:7 69:16
**quoted** 49:22 50:6
**quoting** 60:2

**r**

**r** 1:23 5:1,8 10:1
**raise** 16:6 31:25
  63:5
**raised** 20:16,17
  25:19 34:5,25 35:1
  44:10,11 47:10
  116:6,21
**raises** 102:25 103:3
**ramble** 89:22
**random** 110:8
**range** 13:15
**rare** 23:23
**reached** 98:10
**read** 18:6 21:9 22:5
  43:15 47:1 70:18
  85:24 86:12 90:14
  98:2 100:2
**reading** 22:15 47:1
  70:19
**ready** 10:5
**real** 11:25 59:24
**realization** 16:23
**realize** 84:6 116:3
**really** 26:23 34:5
  43:11 45:11 61:10
  69:6 90:5 100:9
  102:10 107:2
  109:10 111:6
**reason** 12:17 30:12
  32:9 52:23 102:4
  108:10
**reasonable** 110:12
  111:10
**reasonableness**
  13:16
**reasoning** 44:3
**reasons** 85:8

**recalcitrant** 116:5
**receive** 23:6 64:15
  64:18 65:6,14,15
  77:16 84:17
**received** 64:16
**recess** 80:21
**recognition** 27:19
**recognized** 26:16
  50:18
**recognizing** 11:24
**recollection** 112:14
**reconciliation**
  10:20,24
**reconsider** 70:20
**reconvene** 70:20
**record** 41:16 116:1
  122:4
**records** 87:16
**recovery** 33:16,17
**redact** 89:19
**reduced** 64:7
**reed** 5:10 10:7 14:1
  40:14
**refer** 65:5
**reference** 24:6 39:9
**referenced** 14:7
**referencing** 17:10
**referred** 26:24
  51:17 59:7 60:25
  63:14
**referring** 64:5 65:4
  73:8 110:2
**refers** 20:18
**refinement** 87:12
**reflect** 71:14,22
  91:10
**regard** 29:23
**registered** 23:12,13
  31:20
**regroup** 91:12
**reimbursed** 86:24
**reimbursement**
  4:22
**rejected** 52:22
**related** 30:8
**relating** 66:1

**relatively** 59:24
**release** 12:4,20,23
**releases** 13:1
**relevant** 17:3
**relied** 60:25
**relief** 81:12
**rely** 14:15 30:6 41:6
  89:8
**relying** 90:20
**remain** 106:6
**remains** 72:6
**remand** 88:2
**reminded** 115:20
**removed** 42:22
**rendered** 52:15
**reorganized** 55:1
  56:24
**repeat** 29:12
**repeatedly** 94:21
**reply** 18:7 20:14
  35:1,22 46:20 47:8
  47:8,11 61:17 63:12
  67:9 69:16 73:7
  76:25 77:1 119:16
**repo** 31:6 37:2
**report** 10:10 24:8
  25:21 26:25 27:1
  32:6
**reported** 32:6 37:1
  52:2
**reporter** 122:10
**reports** 31:9 33:12
**repos** 37:2
**represent** 20:4 23:5
**representation**
  50:25
**representative** 11:1
  30:8 113:16
**representatives**
  10:21 31:20
**represented** 16:15
  54:1
**representing**
  108:18
**represents** 41:21
**request** 69:13

**requested** 18:2 94:5
**requests** 94:1
**require** 100:16
**required** 15:24,25
  23:21 67:21 105:5
**requirement** 28:20
**requirements** 17:25
  35:15
**requires** 39:4
**requiring** 114:22
**research** 43:10
**reservation** 45:12
**reserve** 117:20
**reserved** 112:7
**reserves** 12:4,4
**reserving** 19:2
**resisted** 84:10
**resolution** 96:19
**resolve** 11:5 81:1
  104:5
**resolved** 66:25
  67:11
**resolves** 10:16
**respect** 10:17 11:17
  12:25 13:14 16:7,25
  17:11,12 42:5 43:24
  49:7 52:15 53:25
  62:3 65:25 80:6
  95:14 98:17 106:5
  112:4,8
**respectfully** 69:13
**respond** 24:12
  37:20 52:8 71:12,13
  80:2,4 90:1 110:19
**response** 35:20
  46:19 47:9 64:2
  69:23 76:20,21
**responsive** 61:19
**rest** 77:20 79:24
  80:13
**restricted** 15:7 46:1
**result** 12:4 16:23
  65:11
**resulted** 100:19
**results** 85:7
**resume** 80:11,21

**retained** 72:19
**rethink** 83:21
**rethought** 84:1
**retroactively** 46:10
**reveal** 89:18
**reveals** 43:10
**revenue** 72:24
**reversed** 49:3,3
**revised** 109:14
**revisit** 49:4
**revisited** 86:2
**richard** 5:7
**right** 10:3 12:7,13
  13:11 14:13,19,20
  15:1,5,11 18:21
  19:1,4,7,21 20:11
  20:21 21:8,15,18,18
  21:25 22:2,7,17
  23:5 24:21 25:8
  26:14 27:16 28:3,11
  28:13,17 30:15,21
  32:9 33:2,4,19,20
  37:16,18,19 39:22
  40:4,18,21 42:2,23
  45:16 49:4 53:8
  55:6 57:19 59:4
  61:25 64:15,18 65:6
  65:14 67:16 71:11
  71:23 77:22 79:20
  80:14,17 82:8 83:14
  83:25 84:19,24 85:1
  85:4,18 86:19 88:5
  88:7 89:1,5,6,19
  91:13,16 92:1,5,8
  92:14 94:7,17 95:1
  95:2 96:5 97:8,23
  97:25 98:23 99:1,3
  99:12,15,18,20,22
  100:6 101:13,20,23
  102:1,3,8,14,20
  104:1,12,18 106:12
  106:15,24 107:1
  108:19 109:15
  110:15,25 111:7,13
  112:1,3,13 113:18
  114:17 115:2
  116:14

**rights** 18:13 19:2
  47:13,20,23 62:5,6
  66:6 112:7 115:11
  117:20
**risk** 15:6 16:20,22
  16:24,25 17:3,5
**road** 66:12,15
  122:14
**rob** 10:6
**robert** 5:15
**role** 10:23 82:24
**room** 95:15
**rsu** 42:5 43:5,8,21
  46:8 47:19,22 48:10
  52:16 53:10 56:17
  62:7 72:6,10
**rsus** 42:20 43:4,4,11
  43:25 44:5,23,24
  45:2,4,7,16,16,18
  45:21,22 46:3 47:13
  47:23,24 48:4,6
  49:7,8,11 52:21
  53:14 54:6,10,11,13
  54:14,22,25 55:5,21
  55:22,24 56:12,19
  56:20,21,23,23
  59:10,19 60:3,9
  62:3 64:1,15,16,18
  65:12,14 66:1,1
  67:23 70:12 71:15
**rule** 2:2 18:11,16
  28:19 33:1 39:4
  88:1 102:18 104:18
  110:6 121:5
**ruled** 70:23
**rules** 15:25 17:15
  34:8 47:7 70:5
  101:25
**ruling** 43:24 65:9
  65:13 66:2 70:13
  93:16 115:8
**rulings** 121:3

**s**

**s** 5:1 10:1
**sad** 68:7
**sailed** 29:21

salary 56:7
sale 88:19,21,23,24
salomon 6:6 20:1,2
  20:4,8,12,16 21:6
  21:10,14,16,19,21
  21:24 22:3,6,9,12
  22:14,15,19,23,25
  24:22 25:2,4,9,16
  26:11,13,15,22 27:7
  27:10,12,15,17,19
  27:22,25 28:3,6,9
  28:12,14,18 29:2,25
  30:3,5,16,19,22,25
  32:13,18,21,25 33:3
  33:5,8,11,21 34:7
  34:14 35:18,19 36:3
  36:6,10,13,16,23
  37:9,12,14 38:5,12
  38:14,24 39:14,17
  39:21 40:5,7
sarah 6:13
satisfaction 33:1
satisfies 13:16
  35:14
satisfy 17:24 28:20
satisfying 17:24
save 109:7
saw 90:20
saying 12:15 27:7
  30:10,17,19 34:7,23
  36:19 45:1,21 46:6
  47:19 48:15 50:6
  55:18 67:23 70:21
  71:3 78:8 89:17
  100:8 102:18 104:2
  115:4 119:21
says 18:10,11 20:20
  21:11,21,24 22:16
  26:7,8,21 28:15
  73:6 75:1,8,24
  77:15 78:11 93:16
  101:17 102:2 104:3
scc 1:7,12 2:1,7,11
  2:15,19,23 3:1,5,9
  3:13,17,21 4:1,5,9
  4:13,17 121:11,16

schager 5:2,7 41:3
  41:11,12,16,19,25
  42:6,10,13,16,23
  43:3,14,18,21 44:7
  44:15,18 45:10,13
  46:12,14,17,19,23
  47:5 48:1,3,8,10,22
  48:24 49:14,18
  50:12,14,17 51:3,4
  51:8,11,13,15,20,22
  52:2,8,11,25 53:8
  53:21 54:4,10,14,17
  54:21,24 55:2,4,7
  55:10,13,15,17,19
  55:23 56:3,7,8,8,12
  57:4 58:6,9,13,15
  58:18,22,25 59:2,4
  59:6,10,13,16,20
  60:6,14,21,23 61:5
  61:9,13,16,20,21,22
  61:23 62:1,6,10,17
  62:19,23 63:1,4,10
  63:19,21,23 64:5,21
  65:21 66:21,23 67:6
  67:14,17 68:2,16,25
  69:20,22 70:17 71:5
  71:9,12,24 72:1,9
  72:13,16 73:3,5,19
  74:5,7,10,12,16,19
  75:7,10,12,14,16,20
  76:9 78:14,16 79:1
  79:9,19,25 80:13,14
  80:16,18
schedule 119:6
scheduling 92:21
schwartz 9:7 90:25
  92:9 96:16 97:3,4,5
  97:13,15,20,23,25
  98:4,6,8,19,21,23
  99:1,3,5,8,12,15,18
  99:20,22 100:7,12
  100:15 101:17,19
  101:23 102:1,3,8,14
  102:20,22 103:6,9
  103:14,21 104:7,10
  104:19,25 105:8,11
  105:14,19,23 106:1

106:4,9,12,15,18,24
107:1,4,15 109:7,10
109:15,20 110:1,15
110:19,21 112:2,4
112:14,20,23 113:1
113:20,23,25 114:5
114:11,15,18,25
115:2,15 117:11,14
119:4,9,11,13,18,21
120:8
se 80:1 100:3
  102:18 104:17
  110:6
se's 41:20
seat 10:2
sec 31:8,9
second 2:8 3:22
  4:14 14:2,11 23:1
  60:6 62:10 67:22
  69:1 90:18 104:15
  109:2 121:12
section 4:20 20:19
  20:19 21:5 86:15,16
sections 4:21
securities 5:19
  14:24 15:3,9,17,20
  15:22 20:24,25,25
  23:5,12,13 25:10,11
  30:10 35:23,25 37:8
  38:1,4,22 39:12
  43:12 48:11,12,14
  66:9 70:15
security 20:9,18,18
  20:20 21:14,16 37:5
  56:21 64:19 114:8
see 12:15 17:22,25
  18:23 23:23 35:13
  44:13 60:12 89:3,20
  90:6,19,22 91:10
  94:1,5,12,16 96:22
  104:7 105:3 108:6,7
  108:9 109:2 112:21
  115:1 120:9
seeing 64:22 91:2
seek 86:23 88:16
seeking 19:18 78:10
  78:12 79:14 81:12

82:15 92:25 101:8
  111:15
seeks 83:2
seen 17:24 52:19
sees 106:5
segal 8:15,15
sell 20:21 21:25
  22:8,10,17
send 39:11 76:16
  113:7 118:23
senior 30:20 31:1,1
  31:13,17,23 36:13
  36:20,23
sense 23:4,7 24:7
  40:22 41:3 65:18
  68:9 104:13 118:4
sentence 110:3
separate 15:8 29:20
separately 54:8
serve 102:7
served 100:5
service 100:17,18
services 100:21
  110:25
set 11:4,7 12:2
  39:16 46:14 108:23
settle 64:8 65:2
  69:12 95:20 110:12
  110:17
settled 15:3 38:10
  64:6
settlement 2:3
  10:14 11:3,4,7,8,15
  12:6,9,21 13:14
  38:17,18,19,21
  47:22 48:12 110:12
  121:7
settlements 13:2
seven 27:1 41:25
seventh 2:12,16
  3:10 4:10 14:6,8
  16:14 18:4 121:17
seventy 4:6
severance 58:18,20
  67:17
share 54:25 56:24

**shared** 91:1
**shareholder** 62:11
  62:12
**shareholders** 47:18
  47:20,20,24
**shares** 55:7,8
**shelley** 1:24
**shenanigans** 32:5
  38:2
**sheppard** 107:12
**sherri** 4:25 122:3,9
**sherry** 8:13
**shield** 91:23 94:7
**shift** 95:23 97:9
  108:20
**ship** 29:21
**short** 23:23 50:17
**shorthand** 63:15
**shot** 37:23
**shouldn't** 31:4
**show** 60:5 75:7 77:9
  108:14 118:14
**showing** 111:17
**shows** 58:4
**sic** 33:15
**side** 44:21,22,22
  68:20 95:16 97:16
  104:8 105:8,10,11
  105:17 106:7 108:2
  110:11
**side's** 105:2
**sign** 71:7
**signaled** 101:6
**significant** 29:17
  100:19
**signing** 69:24
**similar** 11:20,23
  64:9 79:13
**simple** 65:17
**simply** 19:18 25:24
  26:1 64:19 70:13
  87:12
**single** 32:25 37:5
  87:9,9 101:8 111:8
  111:14
**sipa** 1:13 5:11 10:7
  10:17

**sipc** 5:20
**sipc's** 11:1,2
**sir** 54:16
**sit** 87:3 90:22
**situation** 69:16 95:8
  96:11,15
**situations** 13:2
**six** 25:18 41:25
**sixty** 2:8 3:2,6 14:11
  39:21 121:12
**sizes** 82:21
**slam** 89:2
**slightly** 46:17
**slipped** 58:2
**slow** 86:11 97:11,11
**small** 29:3,6 58:3
  59:23,24
**smarter** 37:23
**smoke** 89:7
**soared** 45:18
**sold** 17:7 23:11
  74:22
**sole** 45:25
**solely** 100:4 102:6
**solvent** 17:7
**somebody** 65:11
  79:14 108:15
**sorry** 21:6 25:18
  31:9 33:11 44:17
  46:25 50:16 51:4
  52:4 61:2,4 77:10
  89:22 103:7 107:8,9
  107:11 110:21
**sort** 41:7
**sorting** 25:24,25
  87:15
**sounds** 101:10
  115:7
**southern** 1:2
**speak** 30:25 35:22
  64:14 84:3 90:25
**speaking** 30:14
  36:14,15
**special** 25:17 87:18
**specific** 16:2,18
  17:4 24:10 29:23
  82:13 85:20

**specifically** 16:1
  28:25 81:24 110:2
**specificity** 28:10,12
**spectre** 102:25
**speed** 119:23
**spend** 61:5 92:24
**spending** 107:22
**spends** 106:21
**spent** 46:2 83:16
**spoke** 30:24 88:6
**spot** 34:1
**spring** 62:21
**spurred** 90:9
**square** 8:3
**stage** 39:6 90:3
**stake** 95:9 111:2
**stamell** 5:2
**stand** 27:4 39:1
  83:25 87:14,24
  113:17
**standard** 84:15
  111:18 118:9,10
**standards** 100:15
  100:16 108:25
**standing** 35:5 85:20
**stands** 44:8
**start** 11:12 20:5
  48:25 76:2
**started** 49:20 52:14
  61:15 72:24 74:21
**starter** 87:25,25
  117:22
**starting** 15:14 73:3
  74:20 103:12
**statement** 16:4,20
  17:2,4 23:24 25:5
  29:17 30:7 36:2
  85:11
**statements** 16:2,4
  16:19 17:11,12,22
  17:24 31:8,9,16
  34:17,21 35:20
**states** 1:1 77:23
  97:5
**status** 11:5 115:7
**statutory** 51:23

**stay** 30:13 35:23
**staying** 106:23
**step** 42:22 114:24
**steps** 19:3
**stewart** 5:17 13:25
**stip** 118:23
**stipulation** 60:15,18
  60:19,20 61:1
**stock** 21:17 44:6
  45:18 46:1
**stop** 62:18,18
**stopping** 22:16
**stream** 23:6
**street** 5:21 6:10 9:3
**strong** 16:6 40:24
**strongly** 84:16
**stroock** 8:8,8
**stuff** 24:6 32:1
  88:16
**stumbling** 84:7
**styled** 81:9,17,23
**subclass** 47:19
**subject** 18:13 24:25
  26:4,5,9,18 40:17
  62:4,6 70:15
**subjects** 92:18
**submission** 91:7
**submitted** 28:21
  49:24 57:6 69:3,9
  69:23 73:21 78:19
  78:20 88:4
**submitting** 71:6
  75:18
**subordinated** 19:9
  20:10 49:12 54:25
  60:10 64:20
**subordination**
  70:15
**subscribe** 20:21
  21:25 22:7,17 37:4
**subsequent** 66:3
**subsequently** 88:23
**substance** 18:24
  90:22
**substantial** 82:10
  83:6 84:18 86:14
  88:15,20 94:23 95:3

[substantial - times]                                                          Page 20

95:18 98:15 99:17
100:4,12 101:7
102:6 103:17
108:14 109:1
111:13,17 112:8
118:5,8
**substantially**  11:20
11:23 103:24
**substantive**  42:18
**substantively**  18:24
**succeed**  88:17
**success**  37:21
**suggest**  32:18 76:4
108:21
**suggested**  23:25
101:4
**suggesting**  27:4
**suggestion**  37:6
**suite**  5:21 9:3 31:19
122:15
**sullivan**  8:1 86:14
86:25 94:22 98:17
99:25 101:17 104:2
104:17 106:14
**sullivan's**  82:6 88:1
103:13
**summarizing**  69:5
**summary**  74:5
**summer**  47:14
**supplemental**  25:5
84:8 109:14 114:21
**support**  11:2 16:19
53:4 63:12 106:23
115:21
**sure**  13:21 24:14
38:14 41:7,9 54:17
66:16 71:8,16,19
74:12 81:22 86:10
92:11,11 93:11
109:24 110:7,13,20
112:6,15 115:10
117:8,14 119:5
**surprisingly**  14:13
**surreplies**  69:15
**surreply**  46:25 47:2
47:6 52:19 70:4

**survive**  64:13
**survived**  45:18
**susan**  9:6 97:5
**suspect**  30:12
**sustained**  56:11,18
66:18 80:6
**sweet**  47:13,16,21
**switching**  56:15
57:23,24
**sword**  91:23 94:7
**system**  44:13

**t**

**taint**  62:11
**take**  19:13 34:12,13
50:21 66:6,11 68:24
91:17 108:22,23
114:24 115:17
117:2,3
**taken**  80:21
**takes**  19:12
**talk**  30:11 41:3
58:11 72:11 117:9
**talked**  28:9 67:1
117:20,23
**talking**  30:20 36:11
42:9 44:16 47:3
48:10 50:16 51:7,24
52:4,13 57:12,13
59:18 61:3,11 65:24
66:21 91:18 119:6,7
**talks**  79:8 88:18
101:21
**tasks**  91:19
**tea**  28:8
**teaser**  19:14
**tell**  20:17 33:12
47:4 57:23 66:20
68:5 96:9 107:18
**telling**  116:12
**ten**  50:23 53:25
58:3
**tens**  37:17 93:3
**termed**  40:20
**terms**  10:17 11:20
35:24 76:13 87:25
108:19 117:24

**terribly**  61:2
**testify**  79:16
**testimony**  53:16
78:22,24 90:20
**thank**  13:18,22
14:20 19:22 33:20
33:21,22 35:16,17
39:15 40:5,6,7
41:13 66:19 68:25
79:19,21 80:7,14,16
80:19,20,23 107:15
120:5,7,8,10
**theadosio**  10:22
**themes**  94:21
**theories**  85:12
**theory**  85:10
**thereof**  113:19
**thing**  12:20 31:13
34:14 67:22 69:3
70:9 88:3 94:19,20
95:24 104:14
106:25 107:17
110:23 112:5
115:17 116:2
118:15 119:10
**things**  14:15 21:17
21:21 28:9 31:13
35:13,21 57:12
66:23 72:4 75:17
82:24 83:24 87:18
87:24 88:8 99:14
102:16 103:19
104:3 117:23 118:2
118:3
**think**  20:17 21:10
21:11 23:15 24:2,16
26:22 31:18,21 32:3
32:3 34:4,23 35:24
38:18 39:18 42:11
42:14 43:6,18 44:8
45:13 50:3 54:18
58:20,25 59:7,16
61:19 63:1 64:4,21
65:22 66:8,10,23,25
67:7,8,8,10,20
68:17,18 69:11 72:3
72:9,9,17,17 78:11

78:23 80:12 81:5
82:8,11,12 85:25
87:18 88:14 90:24
91:9 93:7,16 94:7,8
95:23 98:1,2,12
100:24 101:5,6,10
102:5,22,25 103:4
107:5,16 108:5,6,7
108:19,20 110:23
111:7 113:8,10,14
114:5,16,18,23
116:4 117:16 118:1
118:2,13,17 119:25
**thinking**  19:16 34:3
83:19 90:13
**thinks**  118:5
**third**  3:2 14:2
**thirty**  2:16 3:18,22
**thought**  84:2 86:8
101:5 107:20,24
109:7
**thousands**  17:9
24:6 93:3
**three**  42:11 46:2
52:10 62:20 70:8
85:9 93:2
**throw**  66:12
**tied**  97:1
**till**  29:8
**time**  15:17 18:1
25:10 33:3 37:9
38:1 39:12,16,16
49:16 54:21 72:25
74:17,24 81:1 83:16
83:17 85:20,25 87:1
87:14,16 89:9,25
91:10,20 94:22
98:22,24 99:25
100:2 105:23
106:22 108:22,23
109:8 111:11,23
112:11 114:22,24
117:5 118:22
119:14,15,19
**timely**  24:20
**times**  7:3 17:20
29:11 52:12 114:8

**timing**  114:19 115:3
**today**  10:3 15:21
  27:4 41:8,19 52:4
  57:2 62:25 66:2
  71:15 72:3 80:15,23
  80:24 90:22 97:7
  113:11,21 115:7,9
  117:20 119:25
**today's**  28:10 39:25
**togut**  8:15
**told**  29:9,11,13
  52:23 57:1
**tons**  87:4
**top**  33:13 77:6 88:5
  88:7
**topic**  93:10
**total**  25:18
**totally**  95:14 117:12
**tough**  118:9,10
**transaction**  88:13
**transactions**  13:3
**transcribed**  4:25
**transcriber**  122:10
**transcript**  49:22
  85:24 90:14 98:2
  122:3
**transcripts**  52:2
**transferred**  11:18
  11:20 12:6,11
**transfers**  44:23
**transmission**  77:20
**tread**  42:7
**treat**  55:7
**treated**  30:18 54:8
  74:2
**treating**  14:12
  75:20
**treatment**  12:5
  60:23
**trial**  32:16,17 39:8
  45:25 53:10,24
  54:24 55:4 56:9,17
  57:16 60:22 76:7
  118:18
**tried**  53:9 94:21
**trouble**  100:24

**true**  18:18 68:20,20
  74:16 90:24 122:4
**truly**  87:18
**trust**  7:10 8:16
  82:17,20,23 83:3
  92:7 94:14,15,16
  95:4,10 96:24
  112:16,17
**trust's**  82:24 96:25
  119:25
**trustee**  2:4 5:11 8:2
  9:2 10:7 11:18 14:2
  14:6 17:16,18 18:1
  18:10,11 19:12
  20:13 23:17,25
  25:23 26:10,19,23
  28:15 31:11 32:11
  34:18 35:1,9,12
  37:18 38:17,18 39:1
  40:14 69:9 71:17
  72:8 73:4,6,12
  77:25 78:8 79:25
  81:12 82:2 84:7,13
  84:15,17 89:10
  94:11,15 97:6
  102:13 104:23,24
  114:7 117:9 118:23
  121:7
**trustee's**  10:13
  16:11 19:17 33:12
  33:24 35:22 39:24
  57:13 69:10 71:6
  72:18 76:11 80:5
  95:14 101:22 116:8
**trustees**  4:20 81:11
  81:18,24 82:15
  116:10,11
**try**  35:23 51:5 52:8
  57:4 66:23 76:9
  86:8 94:24
**trying**  31:25 33:18
  44:4 46:3 61:7,10
  64:21 87:1 97:16,17
**turn**  20:19 40:7
  66:20 77:19
**turned**  46:10 53:18

**twenty**  4:10
**twice**  90:17
**two**  2:12 4:10,14
  14:5,8 16:14 18:4
  28:9 30:8 41:19
  43:6 56:15,19 57:5
  63:5 66:23 70:6
  72:10,22 79:12
  81:24 82:16 96:3
  107:22 121:17
**type**  60:4

**u**

**u.s.**  1:16,25 9:1,2
  84:7,13,15 89:10
  94:11,15 95:14
  101:22 104:23,24
  107:13 114:7 116:7
  117:9 118:22
**uh**  18:9 85:18
  100:14
**ultimately**  113:10
**un**  60:1
**unclaimed**  65:14
**uncontested**  10:11
**understand**  15:13
  15:15 20:9 23:8
  24:11,12 26:11,15
  27:8 42:8,15 43:3
  43:23,23 44:4 51:6
  67:19,20,23,24
  69:14 89:16 90:2
  91:22 93:4,6 98:21
  99:5 102:1,11,17
  105:2,21 109:20
  117:17
**understanding**  67:3
  78:17 89:9
**understated**  31:7,8
**understood**  14:18
  18:19 19:6 34:6
  92:17,19 116:7,8
**undertake**  44:19
  70:21
**undo**  88:23
**unfortunately**  38:8
  47:14 76:19 113:20

**united**  1:1 97:5
**units**  46:1
**unnecessary**  81:19
**unsecured**  4:19
  27:22 51:23 113:9
  114:4
**unspecified**  7:2
**unsuccessful**  88:12
  88:23 103:20 118:3
  118:11
**unusual**  50:8
**unvested**  47:24 48:3
**update**  87:4
**upheld**  111:3
**uptake**  97:12
**use**  91:23
**useful**  72:3
**usual**  34:8
**usually**  12:23

**v**

**valid**  27:5 38:3
  103:1
**validity**  17:18 25:1
  26:6,10,19,20 27:12
  34:19 64:9
**valuable**  45:19
**value**  15:10 43:4
**valued**  16:24
**vanguard**  6:16
  107:13
**varick**  9:3
**variety**  45:22
**varying**  82:21
**veil**  29:20 35:3
**veritext**  122:13
**version**  77:8
**versus**  108:17
**vest**  46:4 48:7
**vested**  47:23,23
**victims**  68:9
**view**  19:17 32:23
  38:3 42:21 96:25,25
  109:25 110:2,5
  113:8 116:13
**views**  67:24 69:5
**virtually**  29:15,18

**virtue**  27:5
**voluminous**  39:9
**vu**  40:25

**w**

**wait**  45:1 46:6
  49:24 62:16 77:11
  100:13 104:7 108:9
**waiting**  94:1
**waive**  92:3,9,12
**waived**  38:15,16,21
  38:24
**wake**  87:1
**wall**  89:3
**walter**  7:14
**wandering**  45:12
**want**  19:15 21:8,8
  24:8 29:12 32:8
  45:21 46:5 47:2
  54:18 56:22,23,25
  57:1 64:16 68:2,17
  69:1 70:18 71:13,15
  71:16,19 80:9 81:20
  85:8 89:1 93:23
  100:13 101:4,4
  112:5,12 115:4,6,10
  116:4 117:15,16
  118:13,24 119:5,14
  119:20,20,25
**wanted**  85:25
  115:25 116:2
**wants**  66:10 79:15
  104:16
**warrant**  20:20
  21:24 22:3,7,10,12
  22:16,17,20 23:6
**warrants**  15:3,10
  16:8,13,16,23 17:7
  17:14 23:3,3,4,9
  25:20 32:2 36:25
**washington**  5:22
**way**  12:24 13:19
  14:14,25 19:14 24:2
  24:4 57:5 66:16
  69:5 72:17 81:17,23
  82:23 83:24 97:8
  101:24 106:1
  109:17,24 114:1

**ways**  103:17
**we've**  20:8 28:9
  29:11,12 40:19
  46:19 49:1,22,25,25
  50:5 85:10 86:2
  94:22 104:8 105:3
  108:22 111:20,21
  116:4,19 117:19
  119:13
**wearing**  31:3,5 83:5
**week**  47:8 61:18
  84:12 116:21,22
**week's**  84:2 116:5
**weekends**  106:23
**weeks**  85:9
**weigh**  112:17
**weight**  35:12
**welcome**  19:23
**went**  29:10 94:21
**west**  6:10
**whoa**  45:9,9,9,11,11
  45:11 62:16,16,16
**wildly**  88:12
**willing**  102:7 105:3
  111:20
**wilmington**  7:10
  82:17,19,23,24 83:3
  92:7
**wins**  68:19
**wish**  13:13 44:13
**withheld**  50:2 53:5
  53:7,11,12 54:6
  55:25 56:10,16
  57:15,23 59:14,23
  60:1,12,23 63:13,16
**witness**  90:20
**witnesses**  53:17
  91:18 106:20
**worcester**  8:1
**word**  22:20
**words**  22:5,16
  81:17 86:14 104:16
  110:24
**work**  10:20 24:5
  39:23 72:18 74:8,15
  75:18 76:1 78:9
  80:13 81:25 82:2,10

83:2,7,8,9,10 84:17
  85:7 86:21 87:3,5,8
  87:9,10,17 88:14
  104:5 117:2,4,18
**worked**  36:17 65:11
  65:13 68:8 74:15,20
  79:3,4,5,15,16
  105:23
**working**  78:15
  82:22 118:14
**works**  24:5 37:25
**world**  94:25 95:2
**worried**  89:24
**worse**  81:3 88:11
**worth**  56:25 96:23
**worthiness**  17:1
**worthless**  45:21
  46:4 53:19 64:16
**write**  24:10 86:13
**wrong**  42:14 68:13
  104:17
**wrote**  86:14

**x**

**x**  1:3,9,15 121:1

**y**

**yeah**  34:10 42:13,16
  49:18 61:9 97:13,20
  106:18 107:4
  115:16,16 116:16
  116:18 117:3
  119:11,17,18
**year**  19:11 63:23
  65:14
**years**  65:12 72:22
  93:3 96:3 107:23
  113:2
**yesterday**  116:23
  116:23 118:7
**york**  1:2,18,18 5:5,5
  5:13,13 6:4,4,11,11
  6:18,18 7:3,5,5,12
  7:12,19,19 8:11,11
  8:18,18 9:4,4
  107:12 122:16

**z**

**z**  91:19,19
**zero**  16:24