- 1 -

## DECLARATION

The undersigned hereby DECLARES as follows:

1)      I am a practicing lawyer admitted in Japan and working as a partner at Nishimura
& Asahi, the largest law firm in Japan, located in Tokyo.   Prior to joining Nishimura
& Asahi in 2005, I had been a judge for 10 years, 3 years of which (i.e., from 2000
through 2003) I had worked on amendments to Japanese bankruptcy-related laws,
including the revision of the Civil Rehabilitation Act (Act No.225 of 1999) and the law
related to international insolvency, at the Civil Bureau of the General Secretariat
Office, Supreme Court of Japan.

      In addition, during my tenure as a judge, I was sent to the United States for
studies, earning an LL.M. degree at Harvard Law School.   As such, I am familiar
with and competent in both English and Japanese, and capable of translating between
the two languages.   I confirm that the attached English translations, Exhibits A2, B2,
C2 and D2 are accurate translations of the corresponding original Japanese documents,
which are attached as Exhibits A1, B1, C1 and D1.

2)      In relation to the Japanese civil rehabilitation proceedings (the "Japan
Proceedings") filed by Lehman Brothers Japan, Inc. ("LBJ") on September 16, 2008, I,
together with some other lawyers at my firm, have been representing KN ASSET
MANAGEMENT CO. ("KN"), a creditor of LBJ, since the beginning of the
proceedings.   I have also been involved in Chapter 11 proceedings (the "U.S.
Proceedings") filed by LEHMAN BROTHERS HOLDINGS INC. ("LBHI") on
September 15, 2008, as the Japan counsel for KN.

3)      I am submitting this Declaration at the request of Diamond McCarthy LLP, U.S.
counsel for KN in relation to the U.S. Proceedings.   I have been asked to confirm
some facts regarding KN's claim against LBJ that KN filed and settled in the Japan
Proceedings, which claims, I understand, underlie KN's guarantee claim against LBHI
now disputed in the U.S. Proceedings.

4)      In the Japan Proceedings, KN filed a proof of claim ("the Claim") seeking
damages arising from the early termination of certain derivative transactions between

- 2 -

KN and LBJ, for the reason of the U.S. Proceeding filing by LBHI, the guarantor of
LBJ's obligations.    These transactions were executed under the terms and conditions
of the Master Agreement of the International Swaps and Derivatives Association, Inc.
executed by LBJ and KN dated November 7, 2007 (together with its schedule and
related annex, the "ISDA Agreement"), and were denominated in various currencies,
such as Japanese Yen, U.S. dollars or Australian dollars.    Since LBJ contested the
value of KN's Claim, KN filed a petition for the claim examination process (*satei-tetsuzuki*, the "Claim Examination Process") to the Tokyo District Court on December
26, 2008.    Before the court rendered a decision, the dispute was finally resolved by a
settlement between LBJ and KN on July 8, 2014, and both parties executed a
Confirmation Letter (Exhibits A1 and A2, "the Confirmation Letter").

In part 1(g) of the schedule to the ISDA Agreement, KN and LBJ agreed that
"Termination Currency means United States Dollars," which means the Claim should
be calculated and paid in U.S. dollars ("USD").    This fact was reconfirmed between
LBJ and KN in the Claim Examination Process.    In the Petition for the Claim
Examination Process dated December 26, 2008, KN specifically referred to certain
terms in the ISDA Agreement that, upon the termination due to a party's default, the
non-defaulting party may calculate its losses and costs by the method of "Loss" and
that the "Loss" means the Termination Currency Equivalent of an amount that the non-defaulting party reasonably determines in good faith to be its total losses and costs in
connection with the ISDA Agreement or any terminated transactions thereunder.    In
the Answer to the Petition dated March 12, 2009, LBJ also admitted this in KN's
statement. (See Exhibits B1, B2, C1 and C2)

Notwithstanding the foregoing, KN filed a proof of Claim under Japanese Yen
("JPY") in the Japan Proceedings.    Furthermore, throughout the subsequent Claim
Examination Process, KN and LBJ disputed the value of the Claim in JPY and finally
agreed on the amount of the Claim in JPY in the Confirmation Letter.    This was
because of the following two reasons:

Firstly, in the civil rehabilitation proceedings, the creditors are expected to file a
proof of its claim in JPY even if the claim is originally denominated in a foreign
currency.    Under Section (1)(iii)(d) of Article 87 of the Civil Rehabilitation Act, the
creditors' voting rights shall be granted in JPY even if their claims are originally
denominated in a foreign currency.    Moreover, a proof of claim form submitted by the
court to creditors is always printed with "JPY", which encourages creditors to fill in

- 3 -

the amount of their claims in JPY (See Exhibit D1 and D2).

Secondly, in Japanese civil rehabilitation proceedings, all claims are paid in Japanese Yen unless the rehabilitation plan specifically provides otherwise, and thus a proof of claim in JPY or agreement on the amount of the claim in JPY would be procedurally convenient for both creditors and debtors.

For the reasons described above, it is very common that creditors file their proof of claims in JPY or settle their claims in JPY even if those claims are originally denominated in a foreign currency.

Moreover, the derivative transactions that gave rise to KN's Claim were denominated in various currencies, such as JPY, USD or Australian dollars, while according to the ISDA Agreement, all the losses from each of the transactions in various currencies are required to be calculated collectively.   Therefore, if KN had filed a proof of its claim strictly in accordance with the terms of the ISDA Agreement, with respect to its losses for non-USD based transactions including JPY based transaction, KN would have had to state the alleged amount of its losses first in the transaction currency, then the converted amount in the termination currency (USD), and then the converted amount in JPY.   This would clearly have been too burdensome for KN and also unnecessary given that the Claim will be paid in JPY in any event.

Given that the Confirmation Letter provided the amount of the Claim only in JPY for the aforementioned reasons, I believe it was the parties' implied intentions that, although KN and LBJ had recognized that KN's Claim should ideally be denominated in USD and then converted into JPY in the Confirmation Letter, KN and LBJ agreed, for the purpose of procedural convenience, to skip describing the USD amount and the currency exchange rate so that only the JPY amount was written down in the Confirmation Letter.   In other words, the Confirmation Letter had not changed the nature of the Claim that it is a USD-based claim.   I also believe that the currency exchange rate that should have been stated in the Confirmation Letter was the rate applicable on the date when the Claim arose, that is, September 15, 2008; the date that LBHI filed the U.S. Proceedings.

5)    In the meantime, claims in Japanese civil rehabilitation proceedings are usually paid only in JPY irrespective of whether they are denominated in JPY or other foreign currencies.   This is the case for the LBJ's Japan Proceedings, where KN received JPY1,724,292,324 from LBJ  as distribution for the Claim as of the date of this

- 4 -

Declaration.    In light of the fact that the USD amount for the Claim should have been
contained in the Confirmation Letter as well as the fact that the distributions were to be
made in JPY, I believe that the parties' implied intentions at the time of execution of
the Confirmation Letter were for any distributions by LBJ for the Claim in JPY to be
applied to the Claim with currency conversion to USD at the same currency exchange
rate applied when the entire amount of the Claim was converted from USD to JPY, that
is, the rate applicable on September 15, 2008.

6)        I understand that, in the U.S. Proceedings, LBHI has objected to KN's guarantee
claim being satisfied in full.    However, a guarantee is provided in order for a creditor
to recoup the deficiency that cannot be recovered from a primary obligor.    In this
case, LBJ clearly acknowledges that there is an unpaid amount outstanding with
respect to the Claim, which underlies KN's guarantee claim.    In light of the nature of
a guarantee as mentioned above, it seems to me that LBHI's allegation is quite
unreasonable and unfair.

I certify under penalty of perjury under the laws of the State of New York that the foregoing
is correct.

Dated February 18, 2014, in Tokyo, Japan

Michihiro Mori

[List of Exhibits]
    Exhibit A1:    Confirmation Letter (original Japanese document)
    Exhibit A2:    English translation of Exhibit A1
    Exhibit B1:    An excerpt from Petition for Claim Examination dated December 26,
                   2008, filed by KN (original Japanese document)
    Exhibit B2:    English translation of Exhibit B1
    Exhibit C1:    An excerpt from Answer dated March 12, 2009, filed by LBJ (original

Japanese document)

| | |
|---|---|
| Exhibit C2: | English translation of Exhibit C1 |
| Exhibit D1: | Proof of Claim (original Japanese document) |
| Exhibit D2: | English translation of Exhibit D1 |

確認書

　株式会社ケイ・エヌアセットマネージメント（「KN」）とリーマン・ブラザーズ証券株式会社（「LBJ」）は、LBJ の民事再生事件（東京地方裁判所平成２０年（再）第２０５号。「本件民事再生事件」）において KN が届け出た債権（受付番号３２０－１乃至１１。総称して「本件再生債権等」、個別には「本件各再生債権」）及びこれに係る再生債権査定申立て（「本件査定申立て」）に関し、平成２６年 ７ 月 ８ 日付けで、以下のとおり合意する。

1.　KN と LBJ は、本件再生債権等の金額が以下のとおりであることを確認する。

| 受付番号 | 金額 |
|---|---|
| 320-1 | 182,752,530 円 |
| 320-2 | 40,055 円及び 182,752,530 円に対する平成 20 年 9 月 19 日から支払済みまで年 2% の割合による金額 |
| 320-3 | 2,034,990,900 円 |
| 320-4 | 1,240,066 円 |
| 320-5 | 446,025 円及び 2,036,230,966 円に対する平成 20 年 9 月 19 日から支払済みまで年 2% の割合による金額 |
| 320-6 | 5,000,000 円 |
| 320-7 | 0 円 |
| 320-8 | 0 円 |
| 320-9 | 0 円 |
| 320-10 | 0 円 |
| 320-11 | 0 円 |

2.　LBJ は本確認書締結後１週間以内に、本件再生債権等のうち受付番号３２０－１、２、３、５及び６の本件各再生債権について、前項所定の金額を認める旨の認否変更を行う。

3.　KN は、第２項に従った認否変更を LBJ が行った場合には、かかる認否変更の通知の受領後１週間以内に、本件査定申立てのすべてを取り下げ、その旨を LBJ に通知する。

4.　LBJ は、KN が前項に従った本件査定申立ての取下げを行った場合には、本件民事再生事件の再生計画に従い、第１項記載の各金額の本件各再生債権に対し所定の弁済を行う。

5. KN と LBJ は、本確認書に定めるほか、両者の間にいかなる債権債務もないことを確認する。

　以上を証するため、本確認書 2 通を作成し、各自記名押印の上、各当事者が各 1 通を保有する。

東京都港区六本木六丁目 10 番 1 号
株式会社ケイ・エヌアセットマネージメント
代表者代表取締役　中　島　　　潤

東京都千代田区丸の内 2 丁目 2-1
岸本ビルディング 9 階
リーマン・ブラザーズ証券株式会社
代表清算人　上　田　裕　康

Exhibit A2

[Translation]

Confirmation Letter

KN ASSET MANAGEMENT CO. ("KN") and Lehman Brothers Japan Inc. ("LBJ") hereby agree as
follows, as of July 8, 2014, with regard to the claims (receipt numbers 320-1 through 320-11;
collectively, the "Rehabilitation Claims" and each, the "Rehabilitation Claim") that have been filed by
KN in LBJ's civil rehabilitation case (Tokyo District Court Case No. 2008 (*sai*) 205; the "Case") and
the petition for assessment of rehabilitation claims pertaining thereto (the "Petition for Assessment").

1.     KN and LBJ shall confirm that the amounts of the Rehabilitation Claims are as set forth
below:

| Receipt Number | Amount |
|---|---|
| 320-1 | 182,752,530 yen |
| 320-2 | 40,055 yen and the amount accrued to 182,752,530 yen at the rate of 2% per annum for the period from September 19, 2008 until the payment of the said amount. |
| 320-3 | 2,034,990,900 yen |
| 320-4 | 1,240,066 yen |
| 320-5 | 446,025 yen and the amount accrued to 2,036,230,966 yen at the rate of 2% per annum for the period from September 19, 2008 until the payment of the said amount. |
| 320-6 | 5,000,000 yen |
| 320-7 | 0 yen |
| 320-8 | 0 yen |
| 320-9 | 0 yen |
| 320-10 | 0 yen |
| 320-11 | 0 yen |

2.     Within one (1) week after the execution of this confirmation letter, LBJ shall change its denial
to admission with regard to the amount specified in the preceding paragraph for the
Rehabilitation Claims with the receipt numbers 320-1, 320-2, 320-3, 320-5, and 320-6.

3.     Upon LBJ's change of its denial to admission in accordance with Paragraph 2, KN shall
withdraw the Petition for Assessment entirely and notify LBJ of that effect, within one (1)
week after the receipt of the notice of such change.

4.     Upon KN's withdrawal of the Petition for Assessment in accordance with the preceding
paragraph, LBJ shall repay each of the Rehabilitation Claims set forth in Paragraph 1, in
accordance with the rehabilitation plan of the Case.

5.     KN and LBJ shall confirm that there are no claims or obligations between them other than
those specified in this confirmation letter.

- 2 -

IN WITNESS WHEREOF, the parties have executed this confirmation letter in duplicate by affixing
their respective names and seal impressions, and each shall retain one (1) copy.

Jun Nakajima, Representative Director
KN ASSET MANAGEMENT CO.
6-10-1, Roppongi, Minato-ku, Tokyo


Hiroyasu Ueda, Representative Liquidator
Lehman Brothers Japan Inc.
Kishimoto Building 9th floor
2-2-1, Marunouchi, Chiyoda-ku, Tokyo



Exhibit B1

平成 20 年 (再) 第 205 号

再生債務者　リーマン・ブラザーズ証券株式会社

# 再生債権査定申立書



平成 20 年 12 月 26 日

東京地方裁判所民事第 20 部　御中

申立人代理人弁護士　　森　　倫　洋

同　　　　　　　　　井　下　祐　忠

同　　　　　　　　　髙　山　大　地

同　　　　　　　　　木　村　寛　則

申立人復代理人弁護士　後　藤　泰　樹

〒106-6120　東京都港区六本木六丁目 10 番 1 号

申　立　人　　株式会社ケイ・エヌアセットマネージメント

代表者代表取締役　　　　　　　中　島　　　　　潤

〒107-6029　東京都港区赤坂一丁目 12 番 32 号　アーク森ビル

西村あさひ法律事務所(送達場所)

電話　03(5562)8500　　　FAX　03(5561)9711

申立人代理人弁護士　　　　　　森　　　　倫　　洋

同　　　　　　　　　井　下　　祐　　忠

同　　　　　　　　　髙　山　　大　　地

同　　　　　　　　　木　村　　寛　　則

申立人復代理人弁護士　　　　　後　藤　　泰　　樹

〒106-6131　東京都港区六本木六丁目 10 番 1 号

相手方(再生債務者)　リーマン・ブラザーズ証券株式会社

代表者代表清算人　　　　　　　桂　木　　明　　夫

# 目　　次

申立ての趣旨 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 5

申立ての理由 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 6

第1　　当事者 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 6

第2　　再生債権の発生原因 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 6

　　　1　　本件基本契約の締結と終了 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 6

　　　　(1)　本件基本契約(ISDA マスター契約及び同スケジュール)の締結及
　　　　　　びこれに基づく個別取引の開始 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 6

　　　　(2)　本件取引の終了 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 7

　　　2　　約定損害金請求権及び遅延損害金請求権(受付番号 320－1・2)につい
　　　　　て ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 7

　　　　(1)　約定損害金(受付番号 320－1)について ・・・・・・・・・・・・・・・・・・・ 7

　　　　(2)　遅延損害金(受付番号 320－2)について ・・・・・・・・・・・・・・・・・・ 11

　　　3　　担保金返還請求権、約定利息請求権及び遅延損害金請求権(受付番号
　　　　　320－3・4・5) ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 11

　　　　(1)　担保金返還請求権 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 11

　　　　(2)　約定利息金請求権 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 12

　　　　(3)　遅延損害金請求権 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 13

　　　4　　約定の費用補償請求権(受付番号 320－6) ・・・・・・・・・・・・・・・・・・・ 13

第3　　再生債権の金額 ・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・・ 14

　　　1　　約定損害金請求権(第2の2(1)関係)について(総論) ・・・・・・・・・・・・・ 14

　　　　(1)　約定損害金請求権(第2の2(1)関係)の額の算定について(総論)・14

(2) 約定損害金請求権（第 2 の 2(1)関係）の額の計算について（各論）· 18

2　約定の費用補償請求権（第 2 の 4 関係）· · · · · · · · · · · · · · · · · · · · · · · · · · · 25

第 4　予備的届出に係る各債権（受付番号 320－7 から 11 まで）· · · · · · · · · · · · · 26

1　債券の引渡請求権、利金の引渡請求権（受付番号 320-7・8）· · · · · · · · 26

2　債券の引渡請求権、利金の引渡請求権（受付番号 320-9・10）· · · · · · · 27

3　損害賠償請求権（受付番号 320-11）· · · · · · · · · · · · · · · · · · · · · · · · · · · · 28

第 5　申立人の債権届出及び再生債務者の否認· · · · · · · · · · · · · · · · · · · · · · · · · · · · 29

第 6　結語 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · 31

## 申立ての趣旨

1　申立人の届け出た

(1)　約定損害金請求権(受付番号 320-1)の額を 2,292,576,957 円と、

(2)　遅延損害金請求権(受付番号 320-2)の額を 1,507,448 円及び 2,292,576,957 円に対する平成 20 年 9 月 19 日から支払済みまで年 6 パーセントの割合による金員と、

(3)　担保金返還請求権(受付番号 320-3)の額を 2,034,990,900 円と、

(4)　遅延損害金請求権(受付番号 320-5)の額を 1,338,892 円及び 2,036,230,966 に対する平成 20 年 9 月 19 日から支払済みまで年 6 パーセントの割合による金員と、

(5)　約定の費用補償請求権(受付番号 320-6)の額を 300,000,000 円と

それぞれ査定する

2　(下記各債権が再生債権と認定される場合においては)申立人の予備的届出として届け出た

(1)　債券の引渡請求権(受付番号 320-7)の額を 416,440,000 円と、

(2)　利金の引渡請求権(受付番号 320-8)の額を 10,759,033 円と、

(3)　債券の引渡請求権(受付番号 320-9)の額を 364,385,000 円と、

(4)　利金の引渡請求権(受付番号 320-10)の額を 5,485,208 円と、

(5)　損害賠償請求権(受付番号 320-11)の内容を保護預り中の債券の引渡請求権(受付番号 320-7 及び 320-9)の不履行に基づく損害賠償請求権(額未定)と

それぞれ査定する

3　申立ての費用は相手方の負担とする

との決定を求める。

申立ての理由

**第1　当事者**

1　申立人株式会社ケイ・エヌアセットマネージメント（以下「申立人」とい
う。）は、不動産の売買、賃貸管理及びその仲介等を目的とする株式会社であ
る（甲1：現在事項全部証明書）。

2　相手方（再生債務者）リーマン・ブラザーズ証券株式会社（以下「再生債務
者」という。）は、有価証券の売買等を目的とする株式会社であるが、平成 20
年 9 月 16 日、御庁に再生手続開始の申立てを行い（御庁平成 20 年（再）第 205
号再生手続開始申立事件）、同月 19 日、再生手続開始決定を受けた。その後、
同年 11 月 29 日、再生債務者は解散決議を行い、現在、清算会社として存続し
ている。

**第2　再生債権の発生原因**

**1　本件基本契約の締結と終了**

**(1)　本件基本契約（ISDA マスター契約及び同スケジュール）の締結及びこれに
基づく個別取引の開始**

申立人は、平成 19 年 11 月 7 日、再生債務者と ISDA マスター契約及び
スケジュール（以下「本件基本契約」と総称する。）を締結し、これに基
づき、別紙 1 記載の各デリバティブ取引（以下「本件個別取引」といい、
本件個別取引を総称して「本件取引」という。）を開始した（甲 2 の 1 の
1：ISDA マスター契約、甲 2 の 2 の 1：ISDA マスター契約参考和訳、甲 2
の 1 の 2：同契約スケジュール、甲 2 の 2 の 2：同契約スケジュール参考
和訳）。

なお、上記契約に基づく再生債務者の債務については、申立外リーマ
ン・ブラザーズ・ホールディングス・インクが申立人に対してこれを保
証する旨の契約を締結した（甲 2 の 1 の 3：「GUARANTEE OF LEHMAN

BROTHERS HOLDINGS INC.」と題する書面、甲 2 の 2 の 3：ISDA マスター
契約スケジュール別紙 A 参考和訳）。

(2) **本件取引の終了**

本件取引は、保証人である申立外リーマン・ブラザーズ・ホールディング
ス・インクが、平成 20 年 9 月 15 日（以下「期限前終了日」という。）に米国
連邦破産法第 11 章（以下「チャプター 11」という。）による倒産手続の申立
てを行ったことにより、本件基本契約の約定に基づき、同日をもって本来の
約定期限前に終了した（ISDA マスター契約 5 条(a)(vii)(4)、6 条(a)、スケ
ジュール第 1 部(e)）。

2　**約定損害金請求権及び遅延損害金請求権（受付番号 320−1・2）について**

(1) **約定損害金（受付番号 320−1）について**

ア　**損害金に関する約定（受付番号 320−1）について**

(7) 本件基本契約（ISDA マスター契約 6 条）においては、期限前終了の場
合の損害金に関して次の規定が定められている。

(e)　期限前終了に基づく支払

期限前終了日が到来した場合、双方の当事者がスケジュール中で選
択した支払基準に関する「マーケット・クォーテーション」または
「損害」、および支払方法に関する「第一の方法」または「第二の方
法」に基づいて、以下の規定が適用される。〔中略〕期限前終了日に
支払われ、本条項に基づいて決定される金額はもしあれば相殺（Set-
off)の対象となる。

(i)　期限の利益喪失事由　期限前終了日が期限の利益喪失事由の結
果到来した場合、

〔中略〕

(4) 第二の方法かつ損害

第二の方法かつ損害が適用される場合、本契約に関する非
期限の利益喪失当事者の損害を支払金額とする。その値が正
数であるときは期限の利益喪失当事者が非期限の利益喪失当
事者に対してこれを支払い、この値が負数のときは非期限の
利益喪失当事者が期限の利益喪失当事者に対して、この値を
絶対値に引き直して支払う。

(ⅱ)  終了事由   期限前終了日が終了事由の結果到来した場合、

(1) 一方のみが事由発生当事者である場合

一方のみが事由発生当事者である場合、支払金額は、〔中
略〕損害が適用される場合には 6 条(e)項(i)号(4)に従い決
定される。但し、いずれの場合においても、期限の利益喪失
当事者および非期限の利益喪失当事者に関する事項は各々、
事由発生当事者および事由発生当事者でない当事者に関する
事項に該当するものとみなされる。また損害が適用され、一
部の取引のみが終了した場合、損害はすべての終了された取
引に関して計算される。

(イ) 申立人と再生債務者は、本件基本契約(スケジュール第 1 部(e)(f))
において、その清算に伴う支払基準として「Loss and Second
Method」(第二の方法かつ損害)によることを合意し、また、次の事項
を合意した。

第 6 条(a)の「自動的期限前終了」の規定は、当事者 A 及び当事
者 B の双方に適用する。自動的期限前終了の結果、第 6 条(a)に基

づき期限前終了日が発生したとみなされた場合、期限の利益喪失当
事者は、要求があったとき、期限前終了日と、非期限の利益喪失当
事者が第 6 条(a)に基づき期限前終了日が指定されたことを最初に
知った日（但し、期限の利益喪失当事者の債権者一般が当該期限の
利益喪失事由の発生の通知を受け取った日より遅くない日とす
る。）の間の、金利、為替相場又は市場価格の変動の結果、非期限
の利益喪失当事者が各取引に関してこうむった、すべての費用、損
失、損害又は責任を、非期限の利益喪失当事者に対して完全に補償
するものとする。この目的のため、非期限の利益喪失当事者は、か
かる費用、損失、損害又は責任を終了通貨に換算することができ
る。

(ケ) 本件基本契約(ISDA マスター契約 14 条)においては、「損害
(Loss)」については次のとおり定められている。

「損害」（Loss)とは、本契約または一件もしくは(場合により)数
件の終了された取引について、およびいずれかの当事者について、
当該当事者が善意で合理的に決定する、本契約または当該一件もし
くは(場合により)数件の終了された取引に関連する自らの全損失お
よび費用(または利益。但しこの場合は負数で表わされる)の終了通
貨相当額を意味する。これには取引の喪失による損失および資金調
達コスト、または当該当事者の選択により、但し、前者と重複する
ことなく、当該当事者がヘッジ取引またはその他の関連する取引の
ポジションを終了、清算、取得または再構築した結果として被った
損失または費用(またはこれらのいずれかによる利益)を勘定にいれ
るものとする。また損害には、関連期限前終了日以前に（適用され

る前提条件が満たされたと仮定して）履行されるべきであったにもかかわらず履行されなかった支払または引渡に関する損失および費用（または利益）をも含まれる（但し、重複を避けるため 6 条(e)項(i)号(1)もしくは(3)、または 6 条(e)項(ii)号(A)が適用される場合を除く）。しかし、11 条に規定する当事者の弁護士費用または諸経費は含まれない。当事者は、期限前終了日の時点での自らの損害を決定するか、またはかかる決定が合理的に実行不能である場合には、期限前終了日以降合理的に実行可能となった最初の日の時点での損害を決定する。当事者は、適当な市場において一社または一社以上の主要なディーラーのレート、価格のクォーテーションを参考に損害を決定することができる（但しその義務はない）。

**イ　損害の発生と計算書の送付**

　　本件取引は、前記 1(2)のとおり、ISDA マスター契約 6 条(a)による期限前終了に伴い、清算されることとなり、その結果、申立人は、「取引の喪失による損失」、「関連期限前終了日以前に（適用される前提条件が満たされたと仮定して）履行されるべきであったにもかかわらず履行されなかった支払または引渡に関する損失および費用」等の前記(1)ア(ウ)に定義される「損害」を被った（その額の算定については、後記第 3 で詳述する。）。

　　そのため、申立人は、本件基本契約（ISDA マスター契約 6 条(d)(i)、12 条(a)(iv)）に従って、本件個別取引に係る上記「損害」を合理的方法で計算し、平成 20 年 10 月 7 日、その計算書を内容証明郵便により送付し、同計算書は同月 8 日、再生債務者に到達した（甲 3 の 1：計算書（内容証明郵便物）、甲 3 の 2：郵便物等配達証明書）。

　　同計算書にも記載のとおり、本件個別取引に係る（上記定義による）「損

害」の額は、それぞれ別紙 2 の各取引に対応する「損害額」欄記載の額で
あり、差引計算（ISDA マスター契約 6 条(f)、スケジュール第 5 部(b)）の
結果、その合計額は、2,292,576,957 円となった。

## (2) 遅延損害金（受付番号 320－2）について

本件基本契約において、遅延損害金の起算日は、期限前終了日（当日を含
む。）とされている（ISDA マスター契約 6 条(d)(ⅱ)。なお、約定利率の適用
レートは商事法定利率より低いため、遅延損害金の利率は商事法定利率によ
ることとなる（民法 419 条 1 項本文・商法 514 条）。）ことから、申立人は、
期限前終了日である平成 20 年 9 月 15 日から支払済みまで、約定損害金
2,292,576,957 円に対する年 6％の割合による遅延損害金請求権を有する。

当該遅延損害金の金額は、平成 20 年 9 月 15 日から開始決定日前日である
同月 18 日までに係る部分につき 1,507,448 円であり、開始決定日である平
成 20 年 9 月 19 日以降の分は上記 2,292,576,957 円に対する支払済みまで年
6％の割合による額（現段階で額未定）である。

## 3　担保金返還請求権、約定利息請求権及び遅延損害金請求権（受付番号 320－3・4・5）

## (1) 担保金返還請求権

ア　申立人と再生債務者は、平成 19 年 11 月 7 日、ISDA マスター契約締結
の際、同契約の一部をなすクレジット・サポート・アネックス（甲 2 の 1
の 4 及び同 2 の 4(参考和訳)。以下「CSA」という。）を締結し、申立人
は、CSA に定める担保金として 7,034,990,900 円を再生債務者に対し交付
した。

その後、申立人は、再生債務者から上記担保金の一部の返還を受けたた
め、担保金の額は 2,034,990,900 円となっている。

イ　再生債務者は、CSA において、本件基本契約につき期限前終了となった場合、申立人に対し、担保金及び下記(2)記載の利息金を引き渡すことを約した(CSA8 条(b)(ⅲ)参照)。

ウ　本件基本契約は、前記 1(2)のとおり平成 20 年 9 月 15 日に期限前終了となった。

エ　したがって、申立人は、再生債務者に対して上記担保金 2,034,990,900 円の返還請求権を有する。


**(2) 約定利息金請求権**

ア　担保金に係る約定利息金請求権については、後記第 5 の 4 の認否変更の結果、再生債務者が届出額の全額を認めるに至ったものであるが、下記(3)の遅延損害金請求権の前提として、ここで言及するものである。

イ　CSA6 条(e)(B)によれば、再生債務者は申立人に対し、担保金に係る利息金を支払わなければならないとされている。その利率は、東京オーバーナイト加重平均無担コール・レートによるとされており(CSA12 条、13 条(h)(ⅰ)(1))、平成 20 年 9 月 1 日から期限前終了日までの各日においていずれも年 0.5%であった。

　上記約定利息は、平成 20 年 8 月 31 日までに発生した部分については支払われたが、同年 9 月 1 日以後に発生した部分については未だ支払われていない。

ウ　したがって、申立人は、①平成 20 年 9 月 1 日から同年 9 月 12 日までは担保金 7,034,990,900 円に対し、②同月 13 日から期限前終了日である 9 月 15 日までは担保金 2,034,990,900 円に対するそれぞれ利率年 0.5%による約定利息金として合計 1,240,066 円の請求権を有する。

### (3) 遅延損害金請求権

ア　CSA11 条(a)は、担保権者(再生債務者)は、担保権設定者(申立人)に対
して、保有担保物又は利息金額の引渡しが必要とされた日(当日を含む。)
から引き渡された日までの期間について遅延損害金を支払う義務を負う旨
定めている。

イ　前記(1)のとおり、CSA では、本件基本契約につき期限前終了となった
場合には、再生債務者は申立人に対して、担保金及びその利息金額を直ち
に引き渡すものとされており、期限前終了日である平成 20 年 9 月 15 日が
上記アの「引渡しが必要とされた日」に当たる(なお、約定利率のディ
フォルト・レートは商事法定利率より低いため、遅延損害金の利率は商事
法定利率によることとなる(民法 419 条 1 項本文・商法 514 条))。

ウ　したがって、申立人は、前記(1)の担保金及び前記(2)の約定利息の合計
金額である 2,036,230,966 円に対し、平成 20 年 9 月 15 日から支払済みま
で年 6%の割合による遅延損害金請求権を有する。

その額は、平成 20 年 9 月 15 日から開始決定日の前日である同月 18 日
までに係る部分が 1,338,892 円であり、開始決定日である平成 20 年 9 月
19 日以降の分は上記 2,036,230,966 円に対する支払済みまで年 6%の割合
による額(現段階で額未定)である。

## 4　約定の費用補償請求権(受付番号 320－6)

(1) 申立人及び再生債務者は、本件基本契約(ISDA マスター契約 11 条)におい
て、「期限の利益喪失当事者」(本件においては再生債務者。同契約 6 条(a)
参照)が、他方当事者(本件においては申立人)に対し、他方当事者がみずか
らの権利を行使し、また保全するに際して生じた諸経費(弁護士費用と印紙
税を含む)、または取引の早期終了により当該他方当事者が被った諸経費(弁
護士費用と印紙税を含む)(なお、回収費用も含むが、これに限られない)を

補償する旨の合意をした。

(2) 申立人が、本件取引の終了に伴い、権利行使・保全等のために要する弁護
士費用その他の諸経費は、後記第3の2のとおり、少なくとも3億円を下ら
ない。

(3) したがって、申立人は、3億円の約定の費用補償請求権を有する。


**第3　再生債権の金額**

**1　約定損害金請求権（第2の2(1)関係）について（総論）**

**(1) 約定損害金請求権（第2の2(1)関係）の額の算定について（総論）**

　本件基本契約においては、次のとおり、当事者間の合意で清算方式が定め
られている。すなわち、申立人と再生債務者とは、ISDA マスター契約とい
う統一契約書により締結された本件基本契約において、期限前終了の場合の
清算について「損害(Loss)」方式によることを定め、請求当事者の合理的計
算により清算金額を算定すべきことを合意し、また、それに際しては現実の
再構築の有無にかかわらず、清算支払金額に再構築をしたと「仮定した」場
合の費用を算入することを合意している。そして、かかる合意は、損害賠償
の算定方法を定めるものとして、賠償額の予定（民法 420 条1項）としての性
質を有するものであり、裁判所がこれを増減することも許されないものであ
る。


**ア　本件基本契約では「損害(Loss)」方式が選択されていること**

　前記第 2 の 2(1)アで述べたとおり、本件各取引の清算に伴う支払基準
は「第二の方法かつ損害(Loss and the Second Method)」が選択されて
いる（ISDA マスター契約 6 条(e)(i)(4)、スケジュール第 1 部(f)）。そし
て、「損害(Loss)」によることが選択されている場合、当事者が、期限
前終了日時点での自らの損害を善意で合理的に決定することとされてい

るのである(ISDA マスター契約 14 条)。

**イ　「損害(Loss)」方式では「時価」は合理的に算定すれば足り、他社の**
**評価等を要しないことに意義があること**

　そして、「損害(Loss)」方式と選択的な支払基準とされている「マー
ケット・クォーテーション(Market Quotation)」方式は、「期限前解約さ
れた取引の再構築コストを決定当事者が自分自身で計算せず、その市場の
主要なディーラーから…クォーテーションを呈示してもらい、その最大値
と最低値を除いた単純平均を算出する方法」とされている(甲 4:「新デ
リバティブ・ドキュメンテーション」(抜粋)。ISDA マスター契約 14 条参
照)のに対して、「損害(Loss)」方式では、「再構築コストを決定当事者
自身が誠意を持って算定する方法」で(甲 4)、適当な市場において 1 社ま
たは複数社の主要なディーラーのレート、価格のクォーテーションを<u>参考</u>
<u>に損害を決定することができるが、その義務はない</u>とされていることに特
徴がある(ISDA マスター契約第 14 条)。

　かかる「損害(Loss)」方式は、デリバティブ取引の取引量が飛躍的に増
加したため、大型倒産の発生により大量の取引を一括解約・一括清算する
ような場合に、期限前解約する取引の一件ごとに複数のクォーテーション
を取得する必要が有るマーケット・クォーテーションでは、事務的に対応
不可であるという問題点が指摘され始めたために採用されるようになった
ものであるとされるのであり(甲 4)、まさに本件のようにクォーテーショ
ンの取得が困難な事態にこそ意味を持つものとして選択された方式である
といえる。

　したがって、損害額については申立人が合理的に計算をすれば足りるの
であって、計算が合理的かどうかの検証のみがなされるべきものであり、
「時価」額に関して上記「損害(Loss)」方式を採るとした合意の意味をな

からしめるような立証が求められるべきものではない。

**ウ　清算額の算定の上で、再構築がされたか否かにかかわらず、代替取引
を行うと「仮定した」場合における金額が算入されること**

　　また、ISDA マスター契約に基づく本件基本取引においては、代替取引
を行う場合に必要なコスト(再構築費用、再構築コスト)については、実際
に再構築を行ったか否かに関係なく、清算金額に算入される。

　　このことは、本件基本契約の文言上、マーケット・クォーテーション方
式において、「期限の利益喪失当事者」の支払額が、「クォーテーション
を行なうレファレンス・マーケット・メーカーとの間で取引(「代替取
引」)を行なう合意を行なったと仮定した場合に当該当事者に対し支払わ
れるであろう金額…、または当該当事者が支払うであろう金額…である」
とされ、代替取引が実際に行われたか否かにかかわらず、支払額に含まれ
るとされていることに照らして明らかである(ISDA マスター契約 14 条。
なお、マーケット・クォーテーション方式か損害(Loss)方式かは算定方法
の相違であって、支払額の範囲につき上記部分を含むかどうかを異にする
ものでないことは明らかである(ISDA マスター契約 6 条(e)参照)。)。

　　実質的にみても、再構築費用は取引の喪失により申立人が失う経済的利
益であって当然に「損害(Loss)」と認められるべきものである。すなわ
ち、本件個別取引においては、取引開始時点での時価と、その際に申立人
が再生債務者に支払う金額とを比較すると、既に相当の差額が生じてお
り、この差額が再生債務者のいわば手数料(申立人からすれば取引開始の
コスト)となっている。申立人が期限まで取引が継続されることを前提
に、かかる手数料相当額の財貨を再生債務者に移転しているにもかかわら
ず、再生債務者の事情により取引が満期前に終了され、当該財貨移転が
(取引継続がされず)無駄になった場合に、これが申立人の取引の喪失によ

り被る「損害(Loss)」となることは明らかである。このことは、取引開始
直後に取引が終了した場合であっても、一定期間経過後に終了した場合で
あっても、異なるところがない(たとえば、ステップアップ・コーラブ
ル・スワップ取引(別紙1・2記載10)は、平成20年4月23日を取引日、
同年5月9日を効力発生日とするものであるが、再生債務者の算定による
同年9月5日時点の時価は、-1,502,035円であるのに対し、再生債務者
のビッドプライスは、-6,502,035円であって、5,000,000円もの差額が生
じているが、これがこの時点で取引を構築する場合における上記手数料相
当額のコストに相当する部分である。)。

　したがって、かかる差額部分は、(再構築費用として)「損害(Loss)」に
含まれるべきものであって、再生債務者の原因で取引を終了させられるに
もかかわらず、(かかる差額部分につき再生債務者が利得を得る一方で)申
立人の「損害(Loss)」と認めないことは著しく実質的公平、正義に反す
る。なお、かかる差額を再生債務者との関係で要した「構築費用」とみる
か、新たに別の当事者と取引を開始する場合に要する「再構築費用」とし
てみるかは、単に観点の相違にすぎないものであるが、マーケット・
クォーテーション方式において、上記のとおり、「期限の利益喪失当事
者」の支払額が、「クォーテーションを行なうレファレンス・マーケッ
ト・メーカーとの間で取引(「代替取引」)を行なう合意を行なったと仮定
した場合に当該当事者に対し支払われるであろう金額…、または当該当事
者が支払うであろう金額…である」とされることからすれば、再生債務者
と取引を行う場合にかかる差額(「構築費用」)のみならず、別の者との間
で取引を行う場合にかかる代替費用(「再構築費用」)も計算上のものとし
て「損害(Loss)」に算入できるはずのものである。

　常識的にも、再生債権届出時までに(再構築を行えば損害と認めるにも
かかわらず)再構築を行わなければこれを「損害(Loss)」と認めないの

は、後に実際に再構築をした場合を想定すれば如何に不当な議論、主張
であるかは明らかである（この点、再構築の有無を確認する 2008 年 12 月
2 日付け「再生債権の届出内容に関するご照会」と題する書面（甲 6）は明
らかに誤った理解を前提にしているものであることを窺わせる。）。

　　よって、当事者間の合理的意思解釈として、代替取引を行う場合に必要
なコスト（再構築費用、再構築コスト）については、実際に再構築を行っ
たか否かに関係なく、「損害（Loss）」として清算金額に算入されること
は明らかである。


**エ　小括**

　　以上のとおり、申立人と再生債務者とは、本件基本契約において、期
限前終了の場合の清算について「損害（Loss）」方式によることを定め、
請求当事者の合理的計算により清算金額を算定すべきことを合意し、ま
た、現実の再構築の有無にかかわらず、清算支払金額に再構築をしたと
「仮定した」場合の費用を算入することを合意している。

　　以下では、その前提において「損害（Loss）」の合理的計算を示すこと
とする。


**(2)　約定損害金請求権（第 2 の 2(1)関係）の額の計算について（各論）**


**ア　MBIA Insurance Corporation を参照した CDS 取引（別紙 2 記載 1）**

　　MBIA Insurance Corporation を参照したクレジット・デフォルト・ス
ワップ取引（以下、クレジット・デフォルト・スワップ取引を「CDS 取
引」と記す。）の「損害（Loss）」に関しては、次の方法により算出した。

(ア)　時価分-16,287,534 円は、-500,000,000 円(額面)×12.01%(スプレッド差
額)×0.27 年(残存期間)により計算したものである。

(ｲ) 再構築費用 6,938,130 円は、再生債務者が平成 20 年 9 月 5 日に呈示
した ミッドプライス-20,564,870 円とビッドプライス-28,903,000 円の
差額である。

(ｳ) 未収利息 4,155,555 円は、前回の利息支払日である平成 20 年 6 月 20
日から同年 9 月 15 日までに発生した利息である。


**イ   Ambac Assurance Corporation を参照した CDS 取引(別紙 2 記載 2)**

Ambac Assurance Corporation を参照した CDS 取引の「損害(Loss)」に
関しては、次の方法により算定した。

(ｱ) 時価分-11,147,671 円は、-500,000,000 円(額面)×8.22%(スプレッド差額)
×0.27 年(残存期間)により計算したものである。

(ｲ) 再構築費用 15,919,458 円は、再生債務者が平成 20 年 9 月 5 日に呈示
した ミッドプライス-11,583,542 円とビッドプライス-27,503,000 円の
差額により計算したものである。

(ｳ) 未収利息 5,377,777 円は、平成 20 年 6 月 20 日から同年 9 月 15 日ま
でに発生した利息である。


**ウ   ロング・ショート・CDO・スワップ取引(別紙 2 記載 3)**

ロング・ショート・CDO・スワップ取引の「損害(Loss)」に関しては、
次の方法により算定した。

(ｱ) 時価分 607,092,956 円は、10,000,000,000 円(額面)×0.77 年(保有期間)
×0.7%(取引日から 1 年経過した際の価値の変化率)＋額面×1.89%(参照組織のうち 2
つにつきクレジット事由が発生し、回収率が 60%であった場合の価値の変化率)×49.755(実
際にクレジット事由の発生した 2 つの参照組織に係る回収率 91.51%及び 94%の平均値から、
ショートトランシェの固定回収率 43%を減じた値)÷17(上記価値の変化率の前提となる回収率
60%から、ショートトランシェの固定回収率 43%を減じた値)により計算したものであ

る（甲 7：「ロング・ショート CDO における感応度分析」と題する書
面）。

(ｲ) 再構築費用 1,225,000,000 円は、第三者から呈示を受けた価額により
計算したものである（甲 8：報告書）。

(ｳ) 未収利息 17,117,808 円は、平成 20 年 6 月 20 日から同年 9 月 15 日ま
でに発生した利息である。

### エ　シンセティック・CDO 取引（別紙 2 記載 4）

シンセティック・CDO 取引の「損害(Loss)」に関しては、次の方法によ
り算定した。

(ｱ) 時価分 135,215,181 円は、同一のポートフォリオの債券について第三
者から呈示された時価額を基礎として計算したものである（甲 8：報告
書）。

(ｲ) 再構築費用 22,393,350 円は、再生債務者が平成 20 年 9 月 5 日に呈示
したミッドプライス 86,698,097 円とビッドプライス 64,304,747 円の差
額により計算したものである。

### オ　日経平均株価指数連動エクイティスワップ取引（別紙 2 記載 5）

日経平均株価指数連動エクイティスワップ取引の「損害(Loss)」に関し
ては、次の方法により算定した。

(ｱ) 時価分-21,025,528 円は、再生債務者が平成 20 年 9 月 5 日に呈示し
たミッドプライスと同額として算定した。これは、同日と同月 12 日の
日経平均株価がほぼ同水準であったことから、期限前終了日時点での時
価として 9 月 5 日時点と同じものと想定したものである。

(ｲ) 再構築費用 127,800,000 円は、第三者から呈示された価額により算定
した（甲 8：報告書）。

カ　コール条項付き米ドル・CMS・リンク・スワップ取引（別紙 2 記載 6）

　　コール条項付き米ドル・CMS・リンク・スワップ取引の「損害(Loss)」
に関しては、次の方法により算定した。

(ｱ)　時価分 13,752,553 円は、第三者より呈示された時価により算定した
（甲 8：報告書）。

(ｲ)　再構築費用 10,744,000 円は、第三者より呈示された価額により算定
した（甲 8：報告書）。

(ｳ)　未収利息 3,680,670 円は、平成 20 年 8 月 21 日から同年 9 月 15 日ま
でに発生した利息である。


キ　コール条項付きレバレッジ型為替予約取引（英ポンド）（別紙 2 記載 7）

　　コール条項付きレバレッジ型為替予約取引（英ポンド）の「損害(Loss)」
に関しては、次の方法により算定した。

(ｱ)　この取引に関しては、取引日である平成 20 年 2 月 19 日に、時価額の
試算が再生債務者から呈示されていた（甲 9：平成 20 年 2 月 19 日付け
「リスク説明確認書」と題する書面）。その試算は、時的には、取引日
（平成 20 年 2 月 19 日）時点と、取引日から 1 年から 9 年までの奇数年毎
に、また、為替レートとしては、1 英ポンド 160 円から 230 円まで 10
円毎に、それぞれの場合の時価を算出したものである。

　　これを用いて、期限前終了日時点で、期限前終了日の為替レートとし
て 1 英ポンド 193.66 円での価額を求めて、時価額を算出している。具
体的な計算方法は、次のとおりである。

　　　　｛－3.5 億円(1 英ポンド 190 円となったときの時価として再生債務者が呈示してい

　　た金額)＋0.5 億円(1 英ポンド 190 円となったときの時価として再生債務者が呈示し

　　ていた金額と、取引開始から 1 年後に 1 英ポンド 190 円であったときの時価として再生

債務者が呈示していた金額との差額）×0.56 年(保有期間)｝

＋｛（－1.8 億円(1 英ポンド 200 円となったときの時価として再生債務者が呈示していた金額）＋0.2 億円(1 英ポンド 200 円となったときの時価として再生債務者が呈示していた金額と、取引開始から 1 年後に 1 英ポンド 200 円であったときの時価として再生債務者が呈示していた金額との差額）×0.56 年(保有期間)）－（－3.5 億円＋0.5 億円×0.56 年(保有期間)）｝ ÷10×3.66(期限前終了日時点の 1 英ポンドのレートである 193.66 円と 190 円との差)

(イ) 再構築費用 139,353,202 円は、第三者から呈示された価額によるものである（甲 8：報告書）。

### ク　コール条項付きレバレッジ型為替予約取引(豪ドル)(別紙 2 記載 8)

コール条項付きレバレッジ型為替予約取引(豪ドル)の「損害(Loss)」に関しては、次の方法により算定した。

(ア) この取引に関しては、上記キの取引と同様、取引日の約 1 月前である平成 20 年 2 月 7 日に、時価額の試算が再生債務者から呈示されていた（甲 10：平成 20 年 2 月 7 日付け「リスク説明確認書」と題する書面）。その試算は、時的には、平成 20 年 2 月 7 日を取引日とした場合における取引日当日時点と、取引日から 1 年から 9 年までの各年毎に、また、為替レートとしては、1 豪ドル 50 円から 110 円まで 10 円毎に、それぞれの場合の時価を算出したものである。

これを用いて、期限前終了日時点で、期限前終了日の為替レートとして 1 豪ドル 88.9 円での価額を求めて、時価額を算出している。具体的な計算方法は、次のとおりである。

｛－2.0 億円(1 豪ドル 80 円となったときの時価として再生債務者が呈示していた金額）＋0.3 億円(1 豪ドル 80 円となったときの時価として再生債務者が呈示していた金額と、取引開始から 1 年後に 1 豪ドル 80 円であったときの時価として再生債務者が呈示

していた金額との差額）×0.52年(保有期間)}

＋｛−0.4億円(1豪ドル90円となったときの時価として再生債務者が呈示していた金額。なお、取引開始から1年後に1豪ドル90円であったときの時価として再生債務者が呈示していた金額も同額である。)−(−2.0億円＋0.3億円×0.52年(保有期間))}÷10×8.9(期限前終了日時点の1豪ドルのレートである88.9円と80円との差)

(ｲ) 再構築費用82,452,564円は、第三者から呈示された価額によるものである(甲8：報告書)。


### ケ　5th-to-default クレジット・スワップ取引(別紙2記載9)

5th-to-default クレジット・スワップ取引の「損害(Loss)」に関しては、次の方法により算定した。

(ｱ) 時価分−39,035,836円は、参照銘柄の CDS スプレッド(参照組織に対する信用度を数値化したもの。)の変化率(平成20年3月19日のものと同年9月12日のものとを対比したもの。)から算出したクーポン(想定元本に対するプレミアムの割合)の理論値を基に、変化幅、残存年数及び想定元本を掛け合わせて算出した。詳細は、別紙3記載のとおりである。

(ｲ) 再構築費用363,757,800円は、第三者から呈示された価額によるものである(甲8：報告書)。

(ｳ) 未収利息25,676,277円は、平成20年6月20日から同年9月15日までに発生した利息である。


### コ　ステップアップ・コーラブル・スワップ取引(別紙2記載10)

ステップアップ・コーラブル・スワップ取引の「損害(Loss)」に関しては、次の方法により算定した。

(ｱ) 時価分-1,502,035 円は、再生債務者が平成 20 年 9 月 5 日に呈示した
ミッドプライスから算定した。ただし、同日と同月 12 日の金利水準に
変動がなかったことから、期限前終了日時点での時価として 9 月 5 日時
点と同じものと想定したものである。

(ｲ) 再構築費用 5,000,000 円は、再生債務者が平成 20 年 9 月 5 日に呈示
した取引のミッドプライス-1,502,035 円とビッドプライス-6,502,035
円の差額により計算した価額である。

(ｳ) 未収利息 456,111 円は、平成 20 年 8 月 9 日から同年 9 月 15 日までに
発生した利息である。

### サ　The Royal Bank of Scotland Public Limited Company を参照した CDS 取引(別紙 2 記載 11)

The Royal Bank of Scotland Public Limited Company を参照した CDS
取引の「損害(Loss)」に関しては、次の方法により算定した。

(ｱ) 時価分-73,953,484 円は、-10,000,000 ユーロ (額面)×1.01%(スプレッド
差額)×4.77 年 (残存期間)×153.42 円/ユーロ (期限前終了日の直前の営業日である平
成 20 年 9 月 12 日の為替レート)により計算したものである。

(ｲ) 再構築費用 6,000,000 円は、再生債務者が平成 20 年 9 月 5 日に呈示
した取引のオファープライス-82,294,405 円とミッドプライス-
76,294,405 円の差額により計算した価額である。

(ｳ) 未収利息 4,060,329 円は、平成 20 年 5 月 22 日から同年 9 月 15 日ま
でに発生した利息である。

### シ　General Electric Capital Corporation を参照した CDS 取引(別紙 2 記載 12)

General Electric Capital Corporation を参照した CDS 取引の「損害

(Loss)」に関しては、次の方法により算定した。

(ア) 時価分-33,485,058 円は、-10,000,000 米ドル(額面)×0.65%(スプレッド
差額)×4.77 年(残存期間)×107.94 円/米ドル(期限前終了日の直前の営業日である平
成 20 年 9 月 12 日の為替レート)により計算したものである。

(イ) 再構築費用 4,500,000 円は、再生債務者が平成 20 年 9 月 5 日に呈示
した取引のオファープライス-37,278,784 円とミッドプライス-
32,778,784 円の差額により計算した価額である。

(ウ) 未収利息 2,952,192 円は、平成 20 年 5 月 22 日から同年 9 月 15 日ま
でに発生した利息である。

### ス　JPMORGAN CHASE&CO. を参照した CDS 取引(別紙 2 記載 13)

JPMORGAN CHASE&CO. を参照した CDS 取引の「損害(Loss)」に関しては、
次の方法により算定した。

(ア) 時価分-25,242,582 円は、-10,000,000 米ドル(額面)×0.49%(スプレッド
差額)×4.77 年(残存期間)×107.94 円/米ドル(期限前終了日の直前の営業日である平
成 20 年 9 月 12 日の為替レート)により計算したものである。

(イ) 再構築費用 4,500,000 円は、再生債務者が平成 20 年 9 月 5 日に呈示
した取引のオファープライス-26,479,660 円とミッドプライス-
21,979,660 円の差額により計算した価額である。

(ウ) 未収利息 2,069,928 円は、平成 20 年 5 月 22 日から同年 9 月 15 日ま
でに発生した利息である。

### 2　約定の費用補償請求権(第 2 の 4 関係)

本件取引が期限前終了したことより、申立人は、その有する権利行使・保全
のため、弁護士に本件への対応を委任せざる得なくなり、相当額の報酬の支払
いを余儀なくされている。

また、リーマン・ブラザーズ・ホールディングス・インクが本件取引につき
保証しているところ(甲2の1の3、甲2の2の3)、そのチャプター11の手続
における債権届出その他権利行使・保全のため、米国その他外国の法律事務所
に委任する必要が生じた場合には、その報酬の支払いも必要となる。

その他、申立人の役員・従業員による本件への対応に要する費用等、申立人
が支出を余儀なくされる経済的負担もあり、これらの総額を金銭に見積もる
と、少なくとも3億円(届出金額(確定額のみ)の約6.5%(予備的届出を含めた
届出総額(確定額のみ)の約5.5%))を下らない。

## 第4 予備的届出に係る各債権(受付番号320-7から11まで)

受付番号320-7から11までの各債権は、いずれも申立人が保有し、再生債
務者において保護預り中の債券に関するものであり、再生債権には該当しない
(取戻権又は共益債権に当たるものである)と解されるが、再生債務者である再
生債務者がその引渡し・支払の履行をせず、また、取扱いも明らかにしないこ
とから、届出期間との関係で念のためにやむなく予備的届出を行ったものであ
る。

したがって、申立人としては、これらは本来再生債権には当たらない(その
意味では再生債権としてはゼロということになる)というのがあくまで基本的
な理解であるが、仮にこれが万が一にも再生債権であると認定されるのであれ
ばという条件付きで、申立ての趣旨2記載の各査定を求めるものである。

## 1 債券の引渡請求権、利金の引渡請求権(受付番号320-7・8)

(1) 申立人は Newton Re Limited Series 2008-1 Class A Principal At-Risk
Variable Rate Notes を保有し、同債券は、再生債務者において保護預り中
である(甲11:残高証明書)。申立人は、再生債務者が定めた外国証券取引
口座約款15条4号本文に基づき同債券の引渡請求権を有する(甲12:外国

証券取引口座約款）。その評価額は、（債券金額に当たる）416,440,000 円（1
ドルを期限前終了日の翌日である平成 20 年 9 月 16 日現在の為替レート
104.41 円で計算した。）である。

　　また、同債券に関しては、平成 20 年 6 月 17 日から同年 9 月 15 日まで
に、利金 103,046 ドルが生じており、これを再生債務者が受領した場合に
は、申立人は、再生債務者に対し、外国証券取引口座約款 17 条 1 号前段に
基づき当該利金の引渡請求権を有する（甲 12：外国証券取引口座約款）。そ
の評価額は、10,759,033 円（1 ドルを期限前終了日の翌日である平成 20 年 9
月 16 日現在の為替レート 104.41 円で計算した。）である。

(2) 保護預り債券ないしそれに係る利金の引渡しは、本件再生手続の影響を受
けず速やかに手続外で行われるべきものであり、上記引渡請求権は本来再生
債権として扱われるべきものではないと思料される。

　　しかしながら、保護預り債券の扱いに関し再生債務者がその見解を明らか
にしていないため、申立人は、再生債務者代理人からの示唆（甲 13：「保護
預りの証券にかかる債権届出について」と題する書面参照）も踏まえ、予備
的に再生債権としての届出を行ったものである。

　　そのため、これらの債権に係る更なる主張立証は、保護預り資産の返還等
の状況の推移（保護預り資産の返還状況を示す一例として、甲 14：「Lehman
Brothers International (Europe) (“LBIE”) の保護預り証券について」と題す
る書面参照）を踏まえ、必要に応じて補充する予定である。


## 2　債券の引渡請求権、利金の引渡請求権（受付番号 320-9・10）

(1) 申 立 人 は 、 Beryl Finance Limited Series 2008-7 Tranche B
USD3,500,000 Synthetic Portfolio Notes due 2018 を保有し、同債券は再
生債務者において保護預り中である（甲 11：残高証明書）。申立人は、外国
証券取引口座約款 15 条 4 号本文に基づき同債券の引渡請求権を有する（甲

12：外国証券取引口座約款）ほか、再生債務者が同債券の担保資産である

Lehman Brothers US Dollar Liquidity Fund.の持分ないしその換価代金を

受領した場合には、上記債券の代価物として、申立人はその引渡請求権を有

する。その評価額は、364,385,000円（1ドルを期限前終了日の翌日である平

成20年9月16日現在の為替レート104.41円で計算した。）である。

　　また、上記債券に関しては、平成20年7月29日から同年9月15日まで

に利金52,686.66ドルが生じており、これを再生債務者が受領した場合に

は、申立人は、再生債務者に対し、外国証券取引口座約款17条1号前段に

基づきかかる利金の引渡請求権を有する（甲12：外国証券取引口座約款）。

その評価額は、5,485,208円（1ドルを期限前終了日の翌日である平成20年

9月16日現在の為替レート104.41円で計算した。）である。

(2) 上記債権についても、予備的届出に関する事情は、前記1と同様である。


## 3　損害賠償請求権（受付番号 320-11）

(1) 申立人が保有し、再生債務者が保護預り中の Beryl Finance Limited

Series 2008-7 Tranche B USD3,500,000 Synthetic Portfolio Notes due

2018 、ないしは、その代価物（担保資産）である Lehman Brothers US

Dollar Liquidity Fund の持分・換価代金は、本来、再生債務者が（再生手

続開始の前後を問わず）必要とされる手続を行って引き渡すべきものであ

る。しかし、再生債務者が再生手続開始後も申立人への引渡しに必要な手続

をせず、その Trustee である The Bank of New York Mellon より債券保有者

の特定等に係る弁護士費用及び振込手数料、印紙税他の費用等の負担を求め

ら れ て い る （ 甲 15 ： 「 Trustee Indemnification Letter − Sole

Noteholder」と題する書面）ところ、当該費用等（額は未定である。）の負担

は、再生債務者による申立人との間の保護預り契約上の債務不履行によって

生じた申立人の損害といえる。したがって、申立人は再生債務者に対し、当

該費用など上記不履行により負担することとなる一切の損害について債務不
履行に基づく損害賠償請求権を有する(なお、これまでのところ、Newton Re
Limited Series 2008-1 Class A Principal At-Risk Variable Rate Notes
については何ら引渡しの動きがないため、費用負担を求められていることも
ないが、同様の問題は同債券についても潜在的に存する。)。

(2) なお、上記損害賠償請求権は、上記債券又は代価物の引渡しにつき、本来
再生手続の影響を受けず再生債務者において速やかに手続を行うべきである
ところ、再生債務者が必要な手続を行わないため、債権者が上記 Trustee か
らその費用等の負担を求められているものであり、当該負担に係る申立人の
再生債務者に対して有する損害賠償請求権は、再生債務者の再生手続開始後
の行為により生じた債権であって共益債権(民事再生法 119 条 5 号)となるも
のと解されるが、保護預り債券及びこれに関連する債権の扱いに関し再生債
務者がその見解を明らかにしていないため、念のため予備的に再生債権とし
ての届出を行ったものである。


## 第5　申立人の債権届出及び再生債務者の否認

1　申立人は、再生債権届出期間内の平成 20 年 10 月 20 日、申立ての趣旨記載
の各債権につき再生債権として届け出た。

それに先立って、申立人は、前記第 2 の 2(1)イのとおり、同月 7 日に再生
債務者に計算書を送付し、その後、同月 10 日には本件再生手続申立代理人ら
と面談して、所要の資料を交付し、申立人の計算方法等について説明を行って
いたものである。

2　ところが、再生債務者は、その後何らの資料の提出も要求しないまま、債権
認否の期限が約 1 週間後に迫った 11 月 11 日に至って再度既に(計算書の記載
及び上記面談の際に行った説明で)示した計算の詳細と全く同様の説明を求め
(甲 5:平成 20 年 11 月 11 日付け「再生債権の届出内容に関するご照会」と題

する書面）、平成 20 年 11 月 18 日に御庁に提出した認否書において、申立人の
届出債権に対し、「確認中」を理由として「認めない」欄に上記各届出債権の
全額を記載した。

3　再生債務者は、その後、12 月 2 日にも追加の資料を求めるなどしている（甲
6：平成 20 年 12 月 2 日付け「再生債権の届出内容に関するご照会」と題する
書面）が、これは前記第 3 の 1(1)に述べた ISDA マスター契約の内容を全く看
過するものであり、単に（無根拠に）否認するプロセスとして形式的に資料交付
を求めたにすぎないものと見られるものである。

4　その後、再生債務者は、上記債権認否を変更し、その変更通知は同年 12 月
19 日に申立人に到達したが、変更後の認否書においては、担保金返還請求権
（受付番号 320-3）のうち 1,177,592,900 円につき「認める」、857,398,000 円
につき「認めない」とされ、担保金に対する約定利息請求権については届出額
の全額につき「認める」とされているほかは、認否自体の変更はされていな
い。なお、認めない理由については、予備的届出に係るものを除き、「債権不
存在」へと変更されているが、その内容・詳細は何ら明らかにされていない。

5　上記のような時間的な経過や、契約内容を全く見ない認否を行っていること
等からも、再生債務者において契約内容を精査し、計算を検証した上での真っ
当な認否がなされていないことは明らかであり、今後も誠実な対応がされない
ことが懸念される（事業譲渡により本件基本契約・本件個別取引の担当者を含
む再生債務者の従業員の大半が再生債務者を離れたことが確認作業の遅延・懈
怠の一因となっていることが考えられるが、そうであれば、申立人が事業譲渡
の意見聴取の際に指摘した（従業員が移籍されることで債権確認等の作業がき
ちんとされないということはないか等の点を指摘した）とおりの懸念が現実化
しているものであって、債権認否に関してもきちんと対処すると答えた再生債
務者代理人の応答は（意図的かどうかはともかくも）虚偽であったこととなる。
申立人としては、債権認否・保護預り債券の扱い・事業譲渡の意見聴取の際の

対応その他債権者に対する説明や情報開示の対応の点等からみても、債権者を
蔑ろにした対応が（現実にされているし、それがそもそも）当初から想定されて
いたのではないかと思わざるを得ない面があることを指摘しておきたい。）。

## 第6　結語

よって、申立人は、民事再生法105条1項に基づき、申立ての趣旨記載の債権
内容の査定を求めるため、本申立てに及んだ次第である。


### 添　付　書　類

1　委任状写し                          1通

2　復委任状                            1通

3　資格証明書                          1通

4　証拠説明書                          1通

5　甲号証写し                        各1通

(別紙1)

| | 取引の種類 | グローバルID | RMS ID | 取引日 | 効力発生日 |
|---|---|---|---|---|---|
| 1 | MBIA Insurance Corporation を参照したCDS取引 | 3477190 | 3477190 | 2007/11/12 | 2007/11/13 |
| 2 | Ambac Assurance Corporation を参照したCDS取引 | 3477188 | 3477188 | 2007/11/12 | 2007/11/13 |
| 3 | ロング・ショート・CDO・スワップ取引 | 3513352 | 3513352 | 2007/12/4 | 2007/12/5 |
| 4 | シンセティック・CDO取引 | 3930934 | 836064LJ | 2008/7/9 | 2008/7/10 |
| 5 | 日経平均株価指数連動エクイティスワップ取引 | 3614388 | T08023383 | 2008/1/28 | 2008/2/4 |
| 6 | コール条項付き米ドル・CMS・リンク・スワップ取引 | 3651018 | 1813939Z | 2008/2/5 | 2008/2/21 |
| 7 | コール条項付きレバレッジ型為替予約取引(英ポンド) | 3658004 | 1816279Z | 2008/2/19 | 2008/2/19 |
| 8 | コール条項付きレバレッジ型為替予約取引(豪ドル) | 3701654 | 1846241Z | 2008/3/7 | 2008/3/7 |
| 9 | 5th-to-defaultクレジット・スワップ取引 | 3729100 | 3729100 | 2008/3/19 | 2008/3/20 |
| 10 | ステップアップ・コーラブル・スワップ取引 | 3787798 | 1901609Z | 2008/4/23 | 2008/5/9 |
| 11 | The Royal Bank of Scotland Public Limited Company を参照したCDS取引 | 3937011 | 3937011 | 2008/5/21 | 2008/5/22 |
| 12 | General Electric Capital Corporation を参照したCDS取引 | 3937012 | 3937012 | 2008/5/21 | 2008/5/22 |
| 13 | JPMORGAN CHASE&CO. を参照したCDS取引 | 3937013 | 3937013 | 2008/5/21 | 2008/5/22 |

(別紙2)

| | 取引の種類 | 時価分 | 再構築費用 | 未収利息 | 小計 |
|---|---|---|---|---|---|
| 1 | MBIA Insurance Corporation を参照した CDS取引 | −16,287,534 | 6,938,130 | 4,155,555 | −5,193,849 |
| 2 | Ambac Assurance Corporation を参照した CDS取引 | −11,147,671 | 15,919,458 | 5,377,777 | 10,149,564 |
| 3 | ロング・ショート・CDO・スワップ取引 | 607,092,956 | 1,225,000,000 | 17,117,808 | 1,849,210,764 |
| 4 | シンセティック・CDO取引 | 135,215,181 | 22,393,350 | | 157,608,531 |
| 5 | 日経平均株価指数連動エクイティスワップ取引 | −21,025,528 | 127,800,000 | | 106,774,472 |
| 6 | コール条項付き米ドル・CMS・リンク・スワップ取引 | 13,752,553 | 10,744,000 | 3,680,670 | 28,177,223 |
| 7 | コール条項付きレバレッジ型為替予約取引(英ポンド) | −265,817,923 | 139,353,202 | | −126,464,721 |
| 8 | コール条項付きレバレッジ型為替予約取引(豪ドル) | −55,891,233 | 82,452,564 | | 26,561,331 |
| 9 | 5th-to-defaultクレジット・スワップ取引 | −39,035,836 | 363,757,800 | 25,676,277 | 350,398,241 |
| 10 | ステップアップ・コーラブル・スワップ取引 | −1,502,035 | 5,000,000 | 456,111 | 3,954,076 |
| 11 | The Royal Bank of Scotland Public Limited Company を参照したCDS取引 | −73,953,484 | 6,000,000 | 4,060,329 | −63,893,155 |
| 12 | General Electric Capital Corporation を参照したCDS取引 | −33,485,058 | 4,500,000 | 2,952,192 | −26,032,866 |
| 13 | JPMORGAN CHASE&CO. を参照したCDS取引 | −25,242,582 | 4,500,000 | 2,069,928 | −18,672,654 |
| | | | | 合計 | 2,292,576,957 |

(別紙3)

# 5th-to-Defaultの時価について

個別銘柄のCDSスプレッド推移

| 参照銘柄 | 参照債務 | CDSスプレッド | |
|---|---|---|---|
| | | 3月19日 | 9月12日 |
| 1 The Goldman Sachs Group, Inc. | 優先 | 155.700 | 197.900 |
| 2 Morgan Stanley | 優先 | 207.200 | 261.900 |
| 3 Merrill Lynch & Co., Inc. | 優先 | 247.400 | 455.000 |
| 4 JPMorgan Chase & Co. | 劣後 | 158.180 | 183.930 |
| 5 Deutsche Bank Aktiengesellschaft | 劣後 | 210.000 | 185.300 |
| 6 Credit Suisse Group | 劣後 | 243.800 | 185.500 |
| 7 UBS AG | 劣後 | 274.200 | 225.000 |
| 8 Barclays Bank Plc | 劣後 | 230.000 | 220.000 |
| 9 Bank of America Corporation | 劣後 | 149.530 | 203.040 |
| 10 Citigroup Inc. | 劣後 | 220.860 | 233.200 |
| 11 American Express Company | 優先 | 210.000 | 236.700 |
| 合計 | | 2306.870 | 2587.470 |

出所：ブルームバーグ、Markit

2008/9/26

① CDSスプレッドの変化率とリターボンの理論価値を算出

$$\frac{1.020\%}{2306.870} = \frac{1.100\%}{2587.470}$$

② リターボンの変化幅と残存年数および想定元本額を掛け合せ時価を算出

$$1.020\% - 1.100\% = -0.080\%$$

$$\frac{(2013/3/20 - 2008/9/12)}{365} = 4.521 \text{ 残存年数}$$

満期日　時価算出基準日

$$-0.080\% \times 4.521 \times \$100,000,000.00 = -\$361,643.84$$

$$-\$361,643.84 \times 107.94\text{円ドル} = ¥-39,035,836$$

| 9/12時価 | -$361,643.84 | ¥-39,035,836 |
|---|---|---|

Exhibit B2

[Translation (Excerpt)]

Case No.: Heisei 20 (*Sai*) No. 205
Creditor: K.N. Asset Management
Rehabilitation Debtor: Lehman Brothers Japan, Inc.

### Petition for Claim Examination

December 26, 2008

**To: The Tokyo District Court, 20th Civil Division, *Gogi* Section**

Petitioner: K.N. Asset Management

Respondent: Lehman Brothers Japan, Inc.

### Reason for Petition

Section 2    Causation of Rehabilitation Claims

Section 2.2    Agreed Right to Seek Damages and Damages for Late Payment (Claim Nos. 320-1 and 320-2)

(1)    Agreed Right to Seek Damages (Claim No. 320-1)

    (a)    The contract regarding damages (Claim No. 320-1)

        (ii)    The Petitioner and the Rehabilitation Debtor have agreed in Part 1, items (e) and (f) of the Schedule to the ISDA Master Agreement that the "Loss and Second Method" will apply as the standard of the payment on termination, and also agreed the following:

            The "Automatic Early Termination" provision of Section 6(a) will apply to Party A and Party B.  If any Early Termination Date is deemed to have occurred under Section 6 (a) as a result of Automatic Early Termination, the Defaulting Party shall fully indemnify the Non-Defaulting Party on demand against all expense, loss, damage or liability that the Non-Defaulting Party may incur in respect of each Transaction as a consequence of the movements in interest rates, currency exchange rates or market quotations between the Early Termination Date and the date upon which the Non-Defaulting Party first becomes aware that the Early Termination Date has been designated under Section 6 (a), the latter date being no later than the date upon which creditors generally of the Defaulting Party receives notice of the occurrence of the relevant Event of Default.  The Non-Defaulting Party may for this purpose convert any expense, loss, damage or liability to the Termination Currency.

(iii)    "Loss" is defined in Article 14 of the ISDA Master Agreement as
follows:

**"Loss"** means, with respect to this Agreement or one or more
Terminated Transactions, as the case may be, and a party, <u>the
Termination Currency Equivalent</u> of an amount that party
reasonably determines in good faith to be its total losses and
costs (or gain, in which case expressed as a negative number) in
connection with this Agreement or that Terminated Transaction
or group of Terminated Transactions, as the case may be.

Exhibit C1

平成２０年（再）第２０５号　　　　　　　　　**直送済**

申立人　　　株式会社ケイ・エヌアセットマネージメント

相手方（再生債務者）リーマン・ブラザーズ証券株式会社

# 答　弁　書

平成２１年３月１２日

東京地方裁判所民事第２０部　御中

〒１０３－００２２

東京都中央区日本橋室町１－１２－１５

テラサキ第二ビル２階

尾崎法律事務所（送達場所）

電　話　０３－６２１４－３２２２

　ＦＡＸ　０３－６２１４－３２２７

　　　相手方（再生債務者）

　　訴訟代理人弁護士（担当）　飯　塚　孝　徳 

〒１０３－００２７

東京都中央区日本橋３－３－４

永沢ビル５階

永沢総合法律事務所

電　話　０３－３２７３－１８００

　ＦＡＸ　０３－３２７３－１８１８

　　　相手方（再生債務者）

　　訴訟代理人弁護士　　髙　尾　和　一　郎 

1

〒５３０－０００３

大阪市北区堂島１－１－５

梅田新道ビルディング８階

大江橋法律事務所　大阪事務所

　　電　話　０６－６３４１－０４６１

　　ＦＡＸ　０６－６３４７－０６８８

　　　相手方（再生債務者）

　　　　　訴訟代理人弁護士　福　森　亮　二 

〒１００－０００５

東京都千代田区丸の内２－２－１

岸本ビルディング２階

大江橋法律事務所　東京事務所

　　電　話　０３－５２２４－５５６６

　　ＦＡＸ　０３－５２２４－５５６５

　　　相手方（再生債務者）

　　　　　訴訟代理人弁護士　田　中　信　隆 

　　　　　　　同　　柳　　由　香　里

### 申立の趣旨に対する答弁

　　申立の趣旨第１項及び第３項に対して以下のとおり答弁する。なお、申立の
趣旨第２項については、別途提出する答弁書により答弁する。

１　申立人の届け出た各再生債権のうち、受付番号３２０番枝番号３番について
　１，１７７，５９２，９００円、その余の再生債権（受付番号　３２０－１、
　２、３、５及び６）の額を、いずれも０円と査定する

2　申立費用は申立人の負担とする

との決定を求める。

**申立の理由に対する認否**

第1　「第1　当事者」に対する認否

認める。

第2　「第2　再生債権の発生原因」に対する認否

1　「1　本件基本契約の締結と終了」について

認める。

2　「2　約定損害金請求権及び遅延損害金請求権（受付番号３２０－１・２）

について

（1）アについて

認める。

（2）イについて

本件取引がISDAマスター契約6条（a）による期限前終了に伴い清算される

ことになったこと、申立人において「損害」が発生したこと、申立人が相手

方に対し、平成２０年１０月７日、計算書を内容証明郵便にて送付し、同計

算書が同月８日に再生債務者に到達したことは認め、その余は否認乃至争う。

申立人が再生債権査定申立書8頁で指摘するように、本件基本契約では、

清算に伴う支払基準として「Loss and Second Method」（第二の方法かつ損

害）によることが合意されている。「Loss and Second Method」（第二の方

法かつ損害）では、本契約に関する非期限の利益喪失当事者の損害が支払金

額とされ、その値が正数であるときは期限の利益喪失当事者が被期限の利益

3

喪失当事者に対してこれを支払い、この値が負数のときは非期限の利益喪失当事者が期限の利益喪失当事者に対して、この値を絶対値に引き直して支払うものとされている（同申立書９頁）。

　再生債務者が把握している申立人の損害額は－８５７，３９８，０００円であるので、非期限の利益喪失当事者である申立人が、利益喪失当事者である再生債務者に対して、８５７，３９８，０００円を支払う債務を負うことになる。


（３）「（２）　遅延損害金（受付番号３２０－２）について」について

　本件基本契約において、遅延損害金の起算日は、期限前終了日（当日を含む）とされていることは認め、その余は否認乃至争う。

　本件基本契約において、「損害」とともに支払われる「利息」（ISDAマスター契約６条(d)項(ⅱ)号）は「適用レート」で計算される。そして、ISDAマスター契約１４条で、「適用レート」は、６条(d)(ⅱ)に基づいて決定される債務で、支払期日以降に、いずれかの当事者により、６条(e)項に基づいて支払われるものに関しては、ディフォルト・レートを意味するとされている（(b)）。同契約１４条で、「ディフォルト・レート」とは、「当該受取人が当該金額を資金調達したとする場合に要する、または実際に資金調達に要した（その証明に基づく）費用（実際にかかった費用に関する立証は要しない）に等しい年利率に１％を加えたものをいう。」と定義されている。

　申立人は、「約定利率のレートは商事法定利率より低いため、遅延損害金の利率は商事法定利率によることとなる」と主張するが、ディフォルト・レートは、その名称からも明らかなとおり、遅延利息についての当事者間の合意である。遅滞後に適用すべき利率が予め当事者間の合意で定められている場合には、損害賠償額の予定が為されたものとみるべきであり、そもそも民法４１９条の問題ではない（「注釈民法（１０）」有斐閣・昭和６２年）。

　　したがって、民法４１９条１項本文を根拠に、ディフォルト・レートが商
事法定利率より低いため商事法定利率によることになるとの申立人の主張は
失当である。


３　「３　担保金返還請求権、約定利息請求権及び遅延損害金請求権（受付番号
　　３２０－３・４・５）」について

（１）「（１）　担保金返還請求権」について

　　アは認める。

　　イは認める。ただし、申立人は、担保金について、２００８年１０月１７日
付通知書をもって、損害（ロス）と担保金返還請求権とを対当額で相殺する
旨通知しているので、再生債務者が申立人に対して返還債務を負うのは前記
相殺後の残額についてである。

　　ウは認める。

　　エは争う。申立人が再生債務者に対して返還請求権を有する担保金は、前述
した申立人の再生債務者に対する債務８５７，３９８，０００円を相殺した
後の１，１７７，５９２，９００円である。


（２）「（２）　約定利息金請求権」について

　　認める。


（３）「（３）　遅延損害金請求権」について

　　アは認める。

　　イについて、期限前終了日である平成２０年９月１５日が「引渡しが必要
とされた日」に当たることは認め、その余は否認ないし争う。前述の通り、
遅延損害金の利率は、ディフォルト・レート、すなわち資金調達利率＋１％
である。なお、約定利率のディフォルト・レートが商事法定利率より低いた

め、遅延損害金の利率は商事法定利率によるとの申立ての主張が失当である

ことは前述のとおりである。

　ウについて、否認乃至争う。


4　「約定の費用補償請求権（受付番号３２０−６）」について

　不知乃至争う。


第３　「再生債権の金額」に対する認否

1　「1　約定損害金請求権（第2の2(1)関係）について（総論）」について

(1) 「（1）約定損害金請求権（第2の2(1)関係）の額の算定について（総

　論）」について

　　「損害（Ｌｏｓｓ）」方式において、「現実の再構築の有無にかかわらず、

　清算支払金額に再構築をしたと『仮定した』場合の費用を算入することを合

　意している」ことは否認し、かかる合意が賠償額の予定（民法４２０条１

　項）であるとの主張は争う。

　　再生債務者は申立人に対し、ISDAマスター契約のいかなる規定をもって、

　再生債務者と申立人間で、「現実の再構築の有無にかかわらず清算支払金額

　に再構築をしたと『仮定した』場合の費用を算入することを合意している」

　と主張するのか明らかにするよう釈明を求める。


　「ア　本件基本契約では『損害（Ｌｏｓｓ）』方式が選択されていること」につ

　　いて

　　認める。


　「イ　『損害（Ｌｏｓｓ）』方式では『時価』は合理的に算定すれば足り、

　　他社の評価等を要しないことに意義があること」について

「損害額については申立人が合理的に計算をすれば足りるのであって、計算
が合理的かどうかの検証のみがなされるべきものであり、『時価』額に関し
て『損害（Loss）』方式を採るとした合意の意味をなからしめるような立証
が求められるべきものではない。」との主張については争う。その余は概ね
認める。

ISDAマスター契約における「損害」（Loss）は、当事者が決定するものと
されており（14条の定義規定の「損害」（Loss）の項参照）、早期解約時に
支払われるべき金額としての「損害」は、「非期限の利益喪失当事者」（申
立人）の「損害」と規定されていることからすると（6条(e)項の(i)(4)号）、
一義的には「非期限の利益喪失当事者」（申立人）が決定することになる。

しかしながら、だからといって、一方当事者が恣意的に決定した金額であ
っても、ここでの「損害」として認められるものではなく、早期解約時に
「損害」を支払うべきとされている趣旨、及び「損害」として通常想定され
ているもの等に照らし、適正な金額のみが「損害」として認められるべきこ
とは言うまでもない。ISDAマスター契約の「損害」の定義においても、「当
事者が善意で合理的に決定する」（"party reasonably determines in good
faith"）とされており、「損害」が客観的に決定され、合理的な金額であるこ
とは当然の前提とされている。


「ウ　清算額の算定の上で、再構築がされたか否かにかかわらず、代替取引
　　を行うと『仮定した』場合における金額が算入されること」について
　　否認乃至争う。
　　期限前終了で取引を再構築していない場合、後述のとおり、再構築費用は
「損害」には含まれない。


「エ　小活」

争う。

（２）「（２）約定損害金請求権（第２の２(1)関係）の額の計算について（各
　　論）」について

「ア　MBIA Insurance Corporationを参照したCDS取引（別紙２記載１）」に
　ついて

（ア）　認める。

（イ）　申立人は同取引について再構築をしていないことを明らかにしてお
　　り、再構築費用は否認する。

（ウ）　認める。


「イ　Ambac Assurance Corporationを参照したCDS取引（別紙２記載2）」に
　ついて

（ア）否認する。再生債務者は申立人に対し、「８，２２％（スプレッド差
　　額）」を、どのように算出したか明らかにするよう求める。

（イ）再構築費用について否認する。

（ウ）認める。


「ウ　ロング・ショート・CDO・スワップ取引（別紙２記載３）」

（ア）否認する。再生債務者は申立人に対し、時価分の計算根拠を明らかに
　　するよう求める。

（イ）再構築費用について否認する。

（ウ）認める。


「エ　シンセティック・CDO取引（別紙２記載４）」

（ア）否認する。再生債務者は申立人に対し、時価分の計算根拠を明らかに
　　するよう求める。

（イ）再構築費用について否認する。

「オ　日経平均株価指数連動エクイティスワップ取引（別紙2記載5）」

（ア）認める。

（イ）再構築費用について否認する。

「カ　コール条項付き米ドル・CMS・リンク・スワップ取引（別紙2記載
　　6）」

（ア）否認する。再生債務者は申立人に対し、時価分の計算根拠を明らかに
　　するよう求める。

（イ）再構築費用について否認する。

（ウ）否認する。再生債務者は申立人に対し、未収利息の計算根拠を明らか
　　にするよう求める。

「キ　コール条項付きレバレッジ型為替予約取引（英ポンド）（別紙2記載
　　7）」

（ア）否認する。申立人は「リスク説明確認書」（甲9）から、本取引の時
　　価を算出しようとしているが、実際のデリバティブ取引の時価は、ボラ
　　ティリティ（変動率）により大きく左右される。

　　　「リスク説明確認書」（甲9）二枚目には、「金利、為替ボラティリ
　　ティ等の要因が現実には変動すること等により、将来における実際の時価
　　評価指数が上記に示されたものと大きく異なることとなる場合もございま
　　す」と記載されている。このように金利や為替ボラティリティ等の要因が

取引の時価評価に大きな影響を及ぼすが、申立人の計算には金利や為替ボラティリティが反映されておらず、合理的な計算とは言えない。

　　また、申立人は、1英ポンド193．66円での価額を求めているが、このレートが、どの時点における為替レートか不明である。相手方は申立人に対し、上記為替レートがどの時点でのレートか明確にすることを求める。

（イ）再構築費用について否認する。

「ク　コール条項付きレバレッジ型為替予約取引（豪ドル）（別紙2記載8）」

（ア）否認する。キと同様に、申立人の計算には金利や為替ボラティリティ等の要因が反映されておらず合理的とは言えない。

　　また、申立人は、1豪ドル88．9円での価額を求めているが、このレートが、どの時点における為替レートか不明である。相手方は申立人に対し、上記為替レートがどの時点でのレートか明確にすることを求める。

（イ）再構築費用について否認する。

「ケ　5th-to-defaultクレジット・スワップ取引（別紙2記載9）」

（ア）否認する。再生債務者は申立人に対し、時価分の計算根拠を明らかにするよう求める。

　　なお、申立人は、CDSスプレッドの変化率として、「平成20年3月19日のものと同年9月12日のものとを対比したもの」として、9月12日時点での時価評価を導こうとしている。しかしながら、後述のとおり、9月12日を「損害」の算定基準日とするのは妥当ではない。

（イ）再構築費用について否認する。

（ウ）認める。


「コ　ステップアップ・コーラブル・スワップ取引（別紙２記載１０）」

（ア）認める。

（イ）再構築費用について否認する。

（ウ）認める。


「サ　The Royal Bank of Scotland Public Limited Companyを参照した
　　CDS取引（別紙２記載１１）」

（ア）認める。

（イ）再構築費用について否認する。

（ウ）認める。


「シ　General Electric Capital Corporationを参照したCDS取引（別紙２
　　記載１２）」

（ア）否認する。再生債務者は申立人に対し、「０．６５％（スプレッド差
　　　額）」を、どのように算出したか明らかにするよう求める。

（イ）再構築費用について否認する。

（ウ）認める。


「ス　JPMORGAN CHASE&CO.を参照したCDS取引（別紙２記載１３）」

（ア）否認する。再生債務者は申立人に対し、「０．４９％（スプレッド差
　　　額）」を、どのように算出したか明らかにするよう求める。

（イ）再構築費用について否認する。

（ウ）認める。

2　「2　約定の費用補償請求権（第2の4関係）

　不知乃至争う。


第4　「第4　予備的届出に係る各債権（受付番号320－7から11まで）

　　別の答弁書により認否する。


再生債務者の主張

1　再構築費用について

　当事者が、解約の対象となった取引と同種・同内容の取引の再構築を第三者と行う場合、再構築の取引の価格は、当該取引の時価額（理論値）を基準として定まる。再構築の対象となる取引は、解約された取引と同種・同内容のものであることが前提なので、かかる再構築される取引の時価額は、解約された取引の時価額である。この時価額自体は、再構築の有無に拘らず、いわば解約に伴う逸失利益として「損害」に含まれる。しかしながら、再構築の取引の価格は、通常、取引の時価額と同じではなく、そこに再構築の取引を引き受ける相手方のマージンや引き受け手数料、当事者の信用力に応じたコストを加味して決定される。こうした、時価額以外の再構築コストについては、あくまで実際に当事者が再構築を行った場合にのみ「損害」に含まれるものである。

　すなわち、早期解約時に「損害」の支払を必要とするISDAマスター契約の条項も、損害の補償規定の一種である以上、当事者に生じた損害であって初めて補償の対象になるのであって、そもそも、当事者に生じていない（当事者が被っていない）ものが、損害として認識され、補償の対象になるはずはない。ISDAマスター契約における「損害」の定義条項においても、「損害」に含まれうるのは、「当該当事者がヘッジ取引またはその他の関連する取引のポジションを終了、清算、取得または再構築した結果として被った損失ま

たは費用」（"including any loss of bargain, cost of funding or, at the
election of such party but without duplication, loss or cost incurred
as   a   result   of   its   terminating,   liquidating,   obtaining   or
reestablishing any hedge or related trading position"）だと規定されて
おり、そこでいう損失や費用は、実際に生じたものであることが当然の前提
とされている。

　したがって、「非期限の利益喪失当事者」が、解約の対象となった取引と
同種・同内容の取引を再構築する場合のコストは、あくまで実際にそうした
再構築を行った場合に「損害」となり得るのであって、およそ再構築してい
ない場合には、それに要したコストを「損害」として請求することはできな
い。

　これに対し、申立人は、こうした再構築のコストも、実際に再構築をした
か否かに関係なく「損害」として請求可能であると主張し、その根拠として、
そもそも申立人が再生債務者と解約された取引を行った際にも、同じような
取引コストを負担していることを挙げる。しかしながら、かかる主張は、再
構築コストを「損害」として請求するというよりも、実質的には、過去に支
払った取引コストを、当該取引が途中で終了したことに伴い、取り戻そうと
いう請求に等しい。ISDAマスター契約に基づく各取引の早期解約は、あくま
でその時点での取引の終了であって、各取引が遡及的に存在しなかったこと
になるわけではない以上、そうした過去のコストの取り戻し的な請求は認め
られるものではない。実際問題、対象となったデリバティブ取引は、早期解
約までの間は有効に存在しており、申立人は、それまでの間、かかる取引の
存在を享受してきており、なおかつ早期解約時において、残存期間分の取引
の時価額がやり取りされることで、残存期間に対応した経済的な利益の清算
もなされているのであるから、解約された取引についての取引コストの取戻
を認めるべき理由も存在しない。

　　以上により、取引を再構築していないにもかかわらず再構築費用が「損害」に含まれるとの申立人の主張は失当である。

## 2 　「損害」算定の基準日について

　　期限前終了の場合の清算方法として「損害（Loss）」方式が選択された場合、当該当事者は善意で合理的に「損害」を算出することができるが、そのための計算方法は、あくまで合理的であることが大前提である。本件取引は、申立人が主張するように、申立外リーマン・ブラザーズ・ホールディングス・インクが、平成２０年９月１５日に米国でチャプター１１による倒産手続の申立て行ったことにより期限前に終了した。この場合、申立人が主張するように、「損害」を算定するための基準日を平成２０年９月１２日とするのは妥当ではない。

　　本件取引において期限前終了した平成２０年９月１５日は、日本では祝日であったため、この日をもって基準日として、算定に使用するレートを決定することが困難である。したがって、この場合、直後の営業日である９月１６日を基準日として評価額を算定することが適切である。ISDAマスター契約の「損害」の定義条項でも、期限前終了日時点での「損害」を算出することが合理的に見て実務的でないのであれば（"if that is not reasonably practicable"）、その直後の合理的に見て実務的であるもっとも早い日時点で決定するものと規定されており（"as of the earliest date thereafter as is reasonably practicable". 14条の「損害」の定義条項の最後から２文目）、期限前終了の前ではなく後の日を基準とすることが前提とされている。

　　これに対し、申立人は、民事再生手続の申立ての直前の営業日である９月１２日を基準とし、その日のレートを用いて計算しているようである。しかしながら、かかる「損害」の支払義務が生じるのは、ISDAマスター契約に基づく各取引の早期終了が生じた時点であり、かかる早期終了が生じる前は当

然ながらかかる支払義務は具体的には生じないのであるから、早期終了が生じる前の時点を「損害」算定の基準時とするのは妥当ではない。ISDAマスター契約の「損害」の定義条項でも、期限前終了日時点での損害を決定するものと規定されており（"A party will determine its Loss as of the relevant Early Termination Date"。14条の「損害」の定義条項の最後から２文目）、早期終了が生じる前の時点を「損害」算定の基準時と考えていない。

3　取引の時価の計算根拠について

　　申立人の取引の時価についての主張には、計算根拠及び計算方法が不明なものがあり、再生債務者は、申立人の時価の計算方法が合理的か否かについて反論することができない。

　　よって、再生債務者は、申立人に対して釈明を求めた時価の計算根拠及び計算方法が明らかになった段階で、時価評価について具体的に反論する。

4　弁護士費用について

　　申立人は、約定の費用償還請求権（受付番号３２０−６）として、３億円の弁護士費用その他の諸経費の請求権を有すると主張する。そもそも、弁護士費用等として３億円を請求することは著しく公序良俗に反するものと考えるが、それに加え、以下の理由により申立人は弁護士費用等の請求はできないものと考える。

　　ISDAマスター契約11条に期限の利益喪失当事者が弁護士費用を補償する旨の文言の記載がされている場合であっても、弁護士費用を請求できるのは、期限前終了と弁護士費用とが相当因果関係のある場合に限られる。

一般的にも債務不履行（とりわけ金銭債務の）と弁護士費用とは相当因果関係のある損害とは考えられていないところ[1]、本件についても、数多くの債権者が、弁護士費用を要求することなく債権届出を行っていることからして、申立人において弁護士を選任しなければ債権届出その他権利行使・保全が著しく困難であるといった事情は窺えない。

したがって、債権届出その他権利行使・保全のための弁護士費用は、期限前終了と相当因果関係があるとは考えられない。

以上により、申立人は相手方に対し、弁護士費用等の請求として、3億円の請求をすることができない。

以　上

---

[1] 最高裁昭和 48・10・11 金融・商事判例 394 号 2 頁参照。

Exhibit C2

[Translation (Excerpt)]

Case No.: Heisei 20 (*Sai*) No. 205
Creditor: K.N. Asset Management
Rehabilitation Debtor: Lehman Brothers Japan, Inc.

## Answer to Petition for Claim Examination

March 12, 2009

**To: The Tokyo District Court, 20th Civil Division, *Gogi* Section**

Attorney at law for the Respondent (Rehabilitation Debtor):
Takanori Iizuka (in charge of this case)

## Answer to Reason for Petition

Section 2        Answer to Section 2 "Causation of Rehabilitation Claims"

Section 2.2      Regarding Section 2.2 "Agreed Right to Seek Damages and Damages
for Late Payment (Claim Nos. 320-1 and 320-2)"

We admit the matters described in item (1)(a).

*[Translation Note: By the underlined sentence, LBJ admitted the
matters described in item (1)(a) of Section 2.2 of the Petition,
which means LBJ agreed that, with respect to the rehabilitation
claims numbered 320-1 and 320-2, K.N. Asset Management may
convert any expense, loss, damage or liability to the Termination
Currency, and "Loss" means the Termination Currency
Equivalent of an amount that party reasonably determines in
good faith to be its total losses and costs.]*

Exhibit D1

## ＜裁判所用＞

事件番号　平成２０年（再）第２０５号
再生債務者　リーマン・ブラザーズ証券株式会社

# 再 生 債 権 届 出 書

平成２０年１０月２０日（届出書作成日）

東京地方裁判所民事第２０部　合議係　御中

債権者の表示
〒１０６－６１２０
（本店所在地）東京都港区六本木六丁目１０番１号
　　六本木ヒルズ森タワー２０階
（氏名または名称）株式会社ケイ・エヌアセットマネージメント

（代表者名）代表取締役　中島　　潤

　＊　代理人名義で届ける場合のみ、下の欄に記入してください。（委任状添付）
（住　　所）東京都港区赤坂一丁目１２番３２号アーク森ビル西村あさひ法律事務所
（代理人名）弁護士　森　　倫　洋　㊞　TEL 03-5562-8500 ／ FAX 03-5561-9711

| 届　出　債　権　額 | | 合計４，６３１，６５４，２６３円 及び額未定 | | |
|---|---|---|---|---|
| 進行番号 | 債権の種類 （例）売掛金 貸付金 手形金 | 債権の金額 元金の残高をご記入下さい。 複数口は別紙明細目録にご記入下さい。 債権の内容及び金額（記入例参照） | 約定利息金・遅延損害金 該当する口に印をつけてください。決定の前日までは確定金額、決定後は額未定分です。 | |
| 1 | 約定損害金 | ２，２９２，５７６，９５７円 別紙記載のとおり | □　月　日から　月　日まで （利率　　％）　　　　　　円 □　開始決定後の金員 | |
| 2 | （上記1に対する）遅延損害金 | １，５０７，４４８円及び額未定 別紙記載のとおり | □　月　日から　月　日まで （利率　　％）　　　　　　円 □　開始決定後の金員 | |
| 3 | 担保金 | ２，０３４，９９０，９００円 別紙記載のとおり | □　月　日から　月　日まで （利率　　％）　　　　　　円 □　開始決定後の金員 | |
| 4 | 担保金に対する約定利息 | １，２４０，０６６円 別紙記載のとおり | □　月　日から　月　日まで （利率　　％）　　　　　　円 □　開始決定後の金員 | |

裁判所記入欄

東京地方裁判所
民事第２０部

平成　年　月　日
受付

-1-

| | | | |
|---|---|---|---|
| 5 | （上記３及び４に対する）遅延損害金 | １，３３８，８９２円及び額未定 <br> ー－－－－－－ <br> 別紙記載のとおり | ☐　月　日から　月　日まで <br> （利率　％）　　　　　　円 <br> ☐　開始決定後の金員 |
| 6 | 約定の費用補償請求権 | ３００，０００，０００円 <br> ー－－－－－－ <br> 別紙記載のとおり | ☐　月　日から　月　日まで <br> （利率　％）　　　　　　円 <br> ☐　開始決定後の金員 |

**（別紙）**

**1　進行番号１**

　　債権者と再生債務者が締結した２００７年１１月７日付ＩＳＤＡマスター契約（その
　　スケジュールを含み、以下「ＩＳＤＡマスター契約」という。なお、特に断らない限
　　り、本別紙において、用語はＩＳＤＡマスター契約の例による。）及び同契約に基づ
　　いて締結した個別のコンファメーションによる各個別取引（以下「本件取引」と総称
　　する。）が、リーマン・ブラザーズ・ホールディングズ・インクが米国連邦破産法第
　　１１章の手続の申立てを行ったことにより、平成２０年９月１５日（以下「期限前終
　　了日」という。）に終了したことによる、ＩＳＤＡマスター契約６条ｅ項ｉ号（４）
　　の規定に基づく損害（ロス）額の支払請求権（債権額は、ＩＳＤＡマスター契約６条ｆ項
　　の規定に基づき下記記載の差引計算によって算定。）

記

（１）２００７年１１月１２日付コンファメーションによるＭＢＩＡ　Ｉｎｓｕｒａｎ
　　　ｃｅ　Ｃｏｒｐｏｒａｔｉｏｎを参照したクレジット・デフォルト・スワップ取
　　　引に関して
　　　　　時価分　　　　　　　　－１６，２８７，５３４円
　　　　　（額面×スプレッド差額×残存期間により計算）
　　　　　再構築費用　　　　　　　　６，９３８，１３０円
　　　　　未収利息　　　　　　　　　４，１５５，５５５円
　　　　　（平成２０年６月２０日から同年９月１５日までに発生した利息）
　　　　　合計　　　　　　　　　　－５，１９３，８４９円

（２）２００７年１１月１２日付コンファメーションによるＡｍｂａｃ　Ａｓｓｕｒａ
　　　ｎｃｅ　Ｃｏｒｐｏｒａｔｉｏｎを参照したクレジット・デフォルト・スワップ
　　　取引に関して
　　　　　時価分　　　　　　　　－１１，１４７，６７１円
　　　　　（額面×スプレッド差額×残存期間により計算）
　　　　　再構築費用　　　　　　　１５，９１９，４５８円
　　　　　未収利息　　　　　　　　　５，３７７，７７７円
　　　　　（平成２０年６月２０日から同年９月１５日までに発生した利息）
　　　　　合計　　　　　　　　　　１０，１４９，５６４円

（３）２００７年１２月４日付コンファメーションによるロング・ショート・ＣＤＯ・
　　　スワップ取引に関して

　　　時価分　　　　　６０７，０９２，９５６円

　　　（額面×保有期間×０．７％＋額面×１．８９％×４９．７５５÷１７によ

　　　り計算）

　　　再構築費用　　１，２２５，０００，０００円

　　　未収利息　　　　　１７，１１７，８０８円

　　　（平成２０年６月２０日から同年９月１５日までに発生した利息）

　　　合計　　　　１，８４９，２１０，７６４円

（４）２００８年７月９日付コンファメーションによるシンセティック・ＣＤＯ取引に
　　　関して

　　　時価分　　　　　１３５，２１５，１８１円

　　　（第三者より提示された時価額）

　　　再構築費用　　　　２２，３９３，３５０円

　　　合計　　　　　　１５７，６０８，５３１円

（５）２００８年１月２８日付コンファメーションによる日経平均株価指数連動エクイ
　　　ティスワップ取引に関して

　　　時価分　　　　　－２１，０２５，５２８円

　　　（再生債務者が平成２０年９月５日に提示した各取引のミッドプライスから
　　　算定。ただし、同日と同月１２日の株価がほぼ同水準であったことから、期
　　　限前終了日時点での時価として９月５日時点と同じものと想定）

　　　再構築費用　　　１２７，８００，０００円

　　　合計　　　　　　１０６，７７４，４７２円

（６）２００８年２月５日付コンファメーションによるコール条項付き米ドル・ＣＭ
　　　Ｓ・リンク・スワップ取引に関して

　　　時価分　　　　　　１３，７５２，５５３円

　　　（第三者より提示された時価により算定）

　　　再構築費用　　　　１０，７４４，０００円

　　　未収利息　　　　　　３，６８０，６７０円

　　　（平成２０年８月２１日から同年９月１５日までに発生した利息）

　　　合計　　　　　　　２８，１７７，２２３円

（７）２００８年２月１９日付コンファメーションによるコール条項付きレバレッジ型
　　　為替予約取引（英ポンド）に関して

　　　時価分　　　　　－２６５，８１７，９２３円

　　　（－３．５億円（１英ポンド１９０円となったときの時価として再生債務者が

提示していた金額）＋０．５億円（１英ポンド１９０円となったときの時価と
して再生債務者が提示していた金額と、取引開始から１年後に１英ポンド１
９０円であったときの時価として再生債務者が提示していた金額との差額）
×保有期間＋｛－１．８億円（１英ポンド２００円となったときの時価とし
て再生債務者が提示していた金額）＋０．２億円（１英ポンド２００円となっ
たときの時価として再生債務者が提示していた金額と、取引開始から１年後
に１英ポンド２００円であったときの時価として再生債務者が提示していた
金額との差額）×保有期間－（－３．５億円＋０．５×保有期間）｝÷１０×
３．６６（期限前終了日時点の１英ポンドのレートである１９３．６６円と
１９０円との差）により計算）

再構築費用　　　　　　　１３９，３５３，２０２円
合計　　　　　　　　　　－１２６，４６４，７２１円

（８）２００８年３月７日付コンファメーションによるコール条項付きレバレッジ型為
　　替予約取引（豪ドル）に関して

時価分　　　　　　　　－５５，８９１，２３３円

（－２．０億円（１豪ドル８０円となったときの時価として再生債務者が提示
していた金額）＋０．３億円（１豪ドル８０円となったときの時価として再生
債務者が提示していた金額と、取引開始から１年後に１豪ドル８０円であっ
たときの時価として再生債務者が提示していた金額との差額）×保有期間＋
｛－０．４億円（１豪ドル９０円となったときの時価として再生債務者が提
示していた金額）－（－２．０億円＋０．３億円（１豪ドル９０円となった
ときの時価として再生債務者が提示していた金額と、取引開始から１年後に１
豪ドル９０円であったときの時価として再生債務者が提示していた金額との
差額）×保有期間）｝÷１０×８．９（期限前終了日時点の１豪ドルのレート
である８８．９円と８０円との差）により計算）

再構築費用　　　　　　　８２，４５２，５６４円
合計　　　　　　　　　　２６，５６１，３３１円

（９）２００８年３月１９日付コンファメーションによるフィフス・トゥ・デフォル
　　ト・クレジット・スワップ取引に関して

時価分　　　　　　　　－３９，０３５，８３６円

（スプレッドの変化率から算出したクーポンの理論値を基に、変化幅、残存
年数及び想定元本を掛け合わせて算出。）

再構築費用　　　　　　　３６３，７５７，８００円
未収利息　　　　　　　　２５，６７６，２７７円

（平成２０年６月２０日から同年９月１５日までに発生した利息）

合計　　　　　　３５０，３９８，２４１円

（１０）　２００８年４月２３日付コンファメーションによるステップアップ・コーラ
ブル・スワップ取引に関して
時価分　　　　　－１，５０２，０３５円
（再生債務者が平成２０年９月５日に提示した各取引のミッドプライスから
算定。ただし、同日と同月１２日の金利水準に変動がなかったことから、期
限前終了日時点での時価として９月５日時点と同じものと想定）
再構築費用　　　　５，０００，０００円
未収利息　　　　　　４５６，１１１円
（平成２０年８月９日から同年９月１５日までに発生した利息）
合計　　　　　　３，９５４，０７６円

（１１）　２００８年５月２１日付コンファメーションによるＴｈｅ　Ｒｏｙａｌ　Ｂ
ａｎｋ　ｏｆ　Ｓｃｏｔｌａｎｄ　Ｐｕｂｌｉｃ　Ｌｉｍｉｔｅｄ　Ｃｏｍｐａ
ｎｙを参照したクレジット・デフォルト・スワップ取引に関して
時価分　　　　－７３，９５３，４８４円
（額面×スプレッド差額×残存期間×為替レートにより計算）
再構築費用　　　　６，０００，０００円
未収利息　　　　４，０６０，３２９円
（平成２０年５月２２日から同年９月１５日までに発生した利息）
合計　　　　　－６３，８９３，１５５円

（１２）　２００８年５月２１日付コンファメーションによるＧｅｎｅｒａｌ　Ｅｌｅ
ｃｔｒｉｃ　Ｃａｐｉｔａｌ　Ｃｏｒｐｏｒａｔｉｏｎを参照したクレジット・
デフォルト・スワップ取引に関して
時価分　　　　－３３，４８５，０５８円
（額面×スプレッド差額×残存期間×為替レートにより計算）
再構築費用　　　　４，５００，０００円
未収利息　　　　２，９５２，１９２円
（平成２０年５月２２日から９月１５日までに発生した利息）
合計　　　　　－２６，０３２，８６６円

（１３）　２００８年５月２１日付コンファメーションによるＪＰＭＯＲＧＡＮ　ＣＨ
ＡＳＥ＆ＣＯ．を参照したクレジット・デフォルト・スワップ取引に関して
時価分　　　　－２５，２４２，５８２円
（額面×スプレッド差額×残存期間×為替レートにより計算）

再構築費用　　　　　４，５００，０００円
未収利息　　　　　　２，０６９，９２８円
（平成２０年５月２２日から同年９月１５日までに発生した利息）
合計　　　　　　　－１８，６７２，６５４円

なお、上記（１）、（２）、（４）及び（１０）記載の取引における各再構築費用は、再生債務者が平成２０年９月５日に提示した各取引のビッドとミッドの差額により計算した価額であり、上記（１１）、（１２）及び（１３）記載の取引における各再構築費用は、再生債務者が同日に提示した各取引のオファーとミッドの差額により計算した価額であり、その他の各再構築費用は、債権者が第三者に見積りを求めた際に、当該第三者から提示された価額である。また、上記のうち、残存期間とは、期限前終了日から本件取引当初における当該各取引の期間満了日までの実年数につき、１年未満については日割計算により算出した年数であり、保有期間とは、本件取引開始日から期限前終了日までの実年数につき、日割計算により算出した年数である。

**2　進行番号２**

進行番号１の債権に係る遅延損害金請求権
（１）平成２０年９月１５日から同月１８日まで
　　利率年６％　　　　　　１，５０７，４４８円
（２）開始決定後の遅延損害金
　　利率年６％　　　　　　額未定

**3　進行番号３**

ＩＳＤＡマスター契約の一部であるクレジット・サポート・アネックスに基づき本件取引のために債権者が再生債務者に差し入れた担保金の返還請求権

**4　進行番号４**

ＩＳＤＡマスター契約の一部であるクレジット・サポート・アネックスに基づき本件取引のために債権者が再生債務者に差し入れていた担保金について、①平成２０年９月１日から同月１２日までは７，０３４，９９０，９００円、②同月１３日から同月１５日までは２，０３４，９９０，９００円に対する、それぞれ利率年０．５％の割合による利息請求権

**5　進行番号５**

進行番号３及び４の各債権（合計額）に係る遅延損害金請求権
（１）平成２０年９月１５日から平成２０年９月１８日までの遅延損害金
　　利率年６％　　　　　　１，３３８，８９２円

（2）開始決定後の遅延損害金

　　　利率年６％　　　　　　　額未定

**6　進行番号６**

　　ＩＳＤＡマスター契約１１条に基づく弁護士費用その他の費用補償請求権

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　以　上

Exhibit D2

[Translation (Excerpt)]

Case No.: Heisei 20 (*Sai*) No. 205
Rehabilitation Debtor: Lehman Brothers Japan, Inc.

## FILING OF REHABILITATION CLAIMS

October 20, 2008
(The date that this filing form is prepared.)

**To: The Tokyo District Court, 20th Civil Division, *Gogi* Section**

| Indication of Creditors |
| --- |

Postal Code: *106-6120*

(Location of Head Office) *Roppongi Hills Mori Tower 20th Floor, 10-1, Roppongi 6-chome, Minato-ku, Tokyo*

(Name or Corporate Name) *K.N. Asset Management*

(Name of Representative) *Jun Nakajima, Representative Director*

(Address) *Nishimura & Asahi, Ark Mori Building, 12-32, Akasaka 1-chome, Minato-ku, Tokyo*

(Name of Proxy) *Michihiro Mori, attorney-at-law (Seal)*
        *TEL 03-5562-8500/ FAX 03-5561-9711*

| | **Total Amount of Claim** | **JPY  4,631,654,263  *plus  non-fixed amount*** | |
| --- | --- | --- | --- |
| List No. | Type of Claim (e.g., trade account receivable/ loan receivable/ notes and bills receivable) | **Amount of Claim** (Fill in the outstanding principal amount.  If you have more than one claim, please complete and attach a detailed list of claims.) | **Interest/Damages for Late Payment** (Please check the corresponding box.  Amounts having accrued up until the date immediately prior to the commencement order are fixed amounts; amounts to accrue after the order are non-fixed amounts.) |
| | | **Content and Basis for Claim** (See sample.) | |
| 1 | *Damages* | JPY *2,292,576,957* | ☐   from [MM/DD/YY] |

| | | | |
|---|---|---|---|
| | | *Per Attachment* | to [MM/DD/YY]<br>Interest rate [   ]% p.a.<br>JPY [                                        ]<br><br>☐  Amount to accrue after<br>commencement order |
| 2 | *Damages for late payment (against the amount in 1 above)* | JPY 1,507,448 plus non-fixed amount<br><br>*Per Attachment* | ☐  from [MM/DD/YY]<br>to [MM/DD/YY]<br>Interest rate [   ]% p.a.<br>JPY [                                        ]<br><br>☐  Amount to accrue after<br>commencement order |
| 3 | *Cash Collateral* | JPY 2,034,990,900 | ☐  from [MM/DD/YY]<br>to [MM/DD/YY]<br>Interest rate [   ]% p.a.<br>JPY [                                        ]<br><br>☐  Amount to accrue after<br>commencement order |
| 4 | *Agreed Interest on Cash Collateral* | JPY 1,240,066 | ☐  from [MM/DD/YY]<br>to [MM/DD/YY]<br>Interest rate [   ]% p.a.<br>JPY [                                        ]<br><br>☐  Amount to accrue after<br>commencement order |
| 5 | *Damages for late payment (against the amounts in 3 and 4 above)* | JPY 1,338,892 plus non-fixed amount | ☐  from [MM/DD/YY]<br>to [MM/DD/YY]<br>Interest rate [   ]% p.a.<br>JPY [                                        ]<br><br>☐  Amount to accrue after<br>commencement order |
| 6 | *Compensation Claim for Agreed Expenses* | JPY 300,000,000 | ☐  from [MM/DD/YY]<br>to [MM/DD/YY]<br>Interest rate [   ]% p.a.<br>JPY [                                        ]<br><br>☐  Amount to accrue after<br>commencement order |

**(Attachment)**

**1.    List No. 1**

*The claim for payment of damages (Loss) pursuant to Article 6, paragraph e., item i(4) of the ISDA Master Agreement dated November 7, 2007 between the Creditor and the Rehabilitation Debtor (including schedules, the "ISDA Master Agreement"; unless otherwise stipulated, the terms used in the Attachment shall be those as defined in the ISDA Master Agreement) arising out of the termination of the ISDA Master Agreement and each individual transaction thereunder (collectively, the "Transactions") on September 15, 2008 (the "Early Termination Date"), which was based on the petition for proceedings under Chapter 11 of the US Bankruptcy Act filed by Lehman Brothers Holdings Inc.    The amounts of claims described below are calculated on a net basis pursuant to Article 6, paragraph f. of the ISDA Master Agreement.*

(1)    *Regarding the credit default swap with reference to MBIA Insurance Corporation pursuant to the Confirmation dated November 12, 2007:*

> Current price JPY -16,287,534
> (Translation Omitted)
> Restructuring cost    JPY 6,938,130
> Accrued interest    JPY 4,155,555
> (Translation Omitted)
> Total            JPY -5,193,849

(2)    *Regarding the credit default swap with reference to Ambac Assurance Corporation pursuant to the Confirmation dated November 12, 2007:*

> Current price        JPY -11,147,671
> (Translation Omitted)
> Restructuring cost    JPY 15,919,458
> Accrued interest    JPY 5,377,777
> (Translation Omitted)
> Total            JPY 10,149,564

(3)    *Regarding the long-short CDO swap pursuant to the Confirmation dated December 4, 2007:*

> Current price        JPY 607,092,956
> (Translation Omitted)
> Restructuring cost    JPY 1,225,000,000
> Accrued interest    JPY 17,117,808
> (Translation Omitted)
> Total            JPY 1,849,210,764

(4)    *Regarding the synthetic CDO transaction pursuant to the Confirmation dated July 9, 2008:*

> Current price        JPY 135,215,181
> (Translation Omitted)
> Restructuring cost    JPY 22,393,350
> Total            JPY 157,608,531

(5)    *Regarding the Nikkei index-linked equity swap pursuant to the Confirmation
dated January 28, 2008:*

        *Current price      JPY -21,025,528*
        *(Translation Omitted)*
        *Restructuring cost  JPY 127,800,000*
        *Total             JPY 106,774,472*

(6)    *Regarding the USD CMS-linked swap with call provisions pursuant to the
Confirmation dated February 5, 2008:*

        *Current price      JPY 13,752,553*
        *(Translation Omitted)*
        *Restructuring cost  JPY 10,744,000*
        *Accrued interest    JPY 3,680,670*
        *(Translation Omitted)*
        *Total             JPY 28,177,223*

(7)    *Regarding the GBP leveraged foreign exchange forwards with call provisions
pursuant to the Confirmation dated February 19, 2008:*

        *Current price      JPY -265,817,923*
        *(Translation Omitted)*
        *Restructuring cost  JPY 139,353,202*
        *Total             JPY -126,464,721*

(8)    *Regarding the AUD leveraged foreign exchange forwards with call provisions
pursuant to the Confirmation dated March 7, 2008:*

        *Current price      JPY -55,891,233*
        *(Translation Omitted)*
        *Restructuring cost  JPY 82,452,564*
        *Total             JPY 26,561,331*

(9)    *Regarding the fifth-to-default credit swap pursuant to the Confirmation dated
March 19, 2008:*

        *Current price      JPY -39,035,836*
        *(Translation Omitted)*
        *Restructuring cost  JPY 363,757,800*
        *Accrued interest    JPY 25,676,277*
        *(Translation Omitted)*
        *Total             JPY 350,398,241*

(10)   *Regarding the step-up callable swap pursuant to the Confirmation dated April
23, 2008:*

        *Current price      JPY -1,502,035*
        *(Translation Omitted)*
        *Restructuring cost  JPY 500,000,000*
        *Accrued interest    JPY 456,111*
        *(Translation Omitted)*
        *Total             JPY 3,954,076*

(11)   Regarding the credit default swap with reference to The Royal Bank of
       Scotland Public Limited Company pursuant to the Confirmation dated May 21,
       2008:

              Current price        JPY -73,953,484
              (Translation Omitted)
              Restructuring cost   JPY 6,000,000
              Accrued interest     JPY 4,060,329
              (Translation Omitted)
              Total                JPY -63,893,155

(12)   Regarding the credit default swap with reference to General Electric Capital
       Corporation pursuant to the Confirmation dated May 21, 2008:

              Current price        JPY -33,485,058
              (Translation Omitted)
              Restructuring cost   JPY 4,500,000
              Accrued interest     JPY 2,952,192
              (Translation Omitted)
              Total                JPY -26,032,866

(13)   Regarding the credit default swap with reference to JP MORGAN CHASE & CO.
       pursuant to the Confirmation dated May 21, 2008:

              Current price        JPY -25,242,582
              (Translation Omitted)
              Restructuring cost   JPY 4,500,000
              Accrued interest     JPY 2,069,928
              (Translation Omitted)
              Total                JPY -18,672,654

(Translation Omitted)


**2.     List No. 2**

Damages for late payment against the amounts in List No.1 above

(1)    From September 15, 2008, to September 18, 2008

              Interest Rate: 6%          JPY 1,507,448

(2)    Damages after the commencement of rehabilitation proceedings

              Interest Rate: 6%          non-fixed amount

**3.     List No. 3**

The cash collateral deposited by the Creditor to the Rehabilitation Debtor for the
Transactions under the Credit Support Annex as a part of the ISDA Master
Agreement.

**4.    List No. 4**

*The interest on the cash collateral deposited by the Creditor to the Rehabilitation Debtor for the Transactions under the Credit Support Annex as a part of the ISDA Master Agreement, the amount of which is (i) JPY 7,034,990,900 for the period from September 1, 2008, to September 12, 2008, and (ii) JPY 2,034,990,900 for the period from September 13, 2008 to September 15, 2008, at the interest rate of 0.5 % per annum.*

**5.    List No. 5**

*Damages for late payment against the amounts in List No.3 and List No.4 (in total) above*

*(1)    From September 15, 2008, to September 18, 2008*

   *Interest Rate: 6%        JPY 1,338,892*

*(2)    Damages after the commencement of rehabilitation proceedings*

   *Interest Rate: 6%        non-fixed amount*

**6.    List No. 6**

*Compensation Claim for legal fees or other expenses under Article 11 of the ISDA Master Agreement.*

                                                        *End*