HEARING DATE AND TIME: April 8, 2015 at 10:00 a.m. (Eastern Time)
OBJECTION DEADLINE: March 30, 2015 at 4:00 p.m. (Eastern Time)

Turner P. Smith
L.P. Harrison 3rd
Peter J. Behmke
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 PARK AVENUE
NEW YORK, NEW YORK 10178
*Attorneys for Lehman Brothers Holdings Inc. and*
*Certain of Its Affiliates*

Andrew J. Rossman
Diane C. Hutnyan
Lindsay M. Weber
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE
NEW YORK, NEW YORK 10010
*Attorneys for Official Committee of Unsecured Creditors of*
*Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | |
| | : | |
| Debtors. | : | |

**MOTION TO ALLOW DISCLOSURE OF THE DERIVATIVE QUESTIONNAIRES PURSUANT TO SECTION 107(a) OF THE BANKRUPTCY CODE**

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, and on behalf of its affiliates (collectively, "Lehman"), together with the Official Committee of Unsecured Creditors (the "Creditors Committee," and together with Lehman "Movants"), respectfully submit this motion (the "Motion") for entry of an order to allow for disclosure of the derivative questionnaires (together with all documentation electronically uploaded to the Lehman claim website in support thereof, the "Derivative Questionnaires") pursuant to section 107(a) of the Bankruptcy Code, notwithstanding the Court's Order Pursuant

to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (as amended from time to time, the "Bar Date Order") and respectfully state as follows:

## JURISDICTION & VENUE

1.  The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

2.  On September 15, 2008, and periodically thereafter, Lehman and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. At the time of its filing, Lehman was party to thousands of prepetition derivative contracts, including credit default swaps, interest rate swaps, total return swaps, currency swaps, forward contracts, future contracts, and commodities contracts. Lehman's bankruptcy filing constituted an event of default under the International Swaps and Derivatives Association ("ISDA") Master Agreements and related or similar agreements governing Lehman's derivative trading relationships, and counterparty termination of Lehman's derivative trades gave rise to a substantial number of claims against the Lehman estates.

3.  Recognizing that creditors would need to submit "massive amounts of data on printed pages" to substantiate their derivative claims, Lehman asked the Court to require such creditors to complete online questionnaires and upload valuation data, including trade-by-trade valuations, contemporaneous quotes, screenshots, or other market data to a website, in lieu of

2

submitting such information in paper format.[1] Certain creditors filed objections in response to Lehman's request, arguing that the proposed order failed to address whether the uploaded information could be redacted and/or would be disclosed to other parties without court order.[2] To address these objections, despite the fact, as Lehman observed, that "typically all information filed in connection with a proof of claim is publicly available for review," Lehman agreed to amend its proposed order to provide that:

> [T]he information submitted on the website http://www.lehman-claims.com in respect of Derivatives Contracts and Guarantees will not be accessible on the website other than by the party that submitted such information, the Debtors, the Creditors' Committee and their respective advisors and counsel.

Bar Date Order at 9. The Court approved the Bar Date Order on July 9, 2009. No specific findings were made with respect to the confidential nature of the information submitted in connection with the Derivative Questionnaires.

4. Subsequently, Movants filed claim objections and adversary proceedings (collectively, the "<u>Litigation Claims</u>") against various counterparties (the "<u>Litigation Claimants</u>"), challenging, among other things, the close-out values those counterparties assigned to terminated derivative trades. Certain of the Litigation Claimants have served (or will serve) document requests and subpoenas seeking production of the Derivative Questionnaires.

5. Various Litigation Claimants have taken the position that the Derivatives Questionnaires are relevant to the Litigation Claims. Without accepting the relevance or

---

[1] Motion of the Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form, ¶¶ 21-22 (May 26, 2009) [Docket No. 3654].

[2] Debtors' Omnibus Reply to Objections to Motion of the Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form, Ex. A, ¶ 6 (June 23, 2009) [Docket No. 4113].

admissibility of the Derivative Questionnaires for the uses the Litigation Claimants plan to make of them, Movants have agreed to produce them and have reserved the right to use information in the Derivatives Questionnaires to respond to Claimants' arguments or on their own behalf. However, pursuant to the Bar Date Order, Movants have only been able to produce Derivative Questionnaires by providing notice of production to each of the affected counterparties. But this process—even for just a handful of the more than 6,000 counterparties who submitted Derivative Questionnaires—has been time consuming and expensive, often taking weeks or months to obtain consent for production from each counterparty, and even then such consent is often attached to unnecessary conditions or limitations. Movants do not believe that the Derivative Questionnaires merit sealed treatment, or that the patchwork of conditions and limitations that have developed through this ad hoc process serve any legitimate purpose. After all, such information is presumptively public under the law, and in any case, it is now more than six years old.

6.     Allowing disclosure of the Derivative Questionnaires is not only consistent with the Bankruptcy Code and longstanding public policy, but it will streamline discovery and assist with the orderly resolution of the Litigation Claims. Movants have facilitated notice of this Motion to each of the affected derivative counterparties through Lehman's claims agent, Epiq Systems, Inc. A list of those derivative counterparties is attached as **Exhibit A**.

## RELIEF REQUESTED

7.     Movants respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit B**, allowing disclosure of the Derivative Questionnaires.

4

**BASIS FOR RELIEF**

8. Both the Supreme Court and the Second Circuit have made clear that all documents filed in federal court are presumptively open to public inspection. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (holding "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents"); *Video Software Dealers Ass'n v. Orion Pictures Corp., (In re Orion Pictures Corp.)*, 21 F.3d 24, 25 (2d Cir. 1994) (noting that open access to court documents is "rooted in the public's First Amendment right to know about the administration of justice"). This longstanding presumption has been codified in section 107(a) of the Bankruptcy Code. 11 U.S.C. § 107(a) (any papers filed with the bankruptcy court are "public records and open to examination by an entity at reasonable times without charge").

9. Although section 107(a) provides for public disclosure of documents filed in the bankruptcy court, limited exceptions apply. Specifically, section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) protect an entity; with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

10. As public access to judicial records is presumed, the party opposing access bears the heavy burden of showing with particularity the need for confidentiality. *In re Anthracite Capital, Inc.*, 492 B.R. 162, 179 (Bankr. S.D.N.Y. 2013). And these exceptions are "construed narrowly" to protect the public interest in access. *Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 960 (9th Cir. 1999).

11. Confidential commercial information "has been defined as information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *Orion Pictures Corp.*, 21 F.3d at 27 (citations omitted). The exception is meant to prevent business competitors from using confidential business-related information to the detriment of the movant. *In re Anthracite Capital, Inc.*, 492 B.R. at 179 (citation omitted). Thus, the Court must find that the information "is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors." *In re Barney's, Inc.*, 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996).

12. Information is not "'commercial' within the meaning of § 107(b) merely because it relate[s] to business affairs." *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr. S.D.N.Y. 2007). Indeed, business information that is outdated "reveals directly little, if anything at all, about [a company's] current operations." *United States v. Int'l Bus. Machines Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975).

13. The Derivative Questionnaires contain trade information and snapshots of market data compiled by counterparties for purposes of submitting claims against the Lehman estates. It is highly unlikely, and entirely speculative, that release of this information would place Lehman's derivative counterparties at a commercial disadvantage with respect to their competitors. Most of the data submitted in connection with the Derivative Questionnaires was originally obtained from publicly available market sources, and is plainly not confidential. Moreover, that data is now more than six years old. Any concerns Lehman's counterparties may have about the confidentiality of that information would be unwarranted because the information is now out of date.

14. While Movants understand the importance of protecting confidential commercial information, it is also important to make sure that such protection does not interfere with the integrity and transparency of the bankruptcy process. *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007). Movants therefore request that the Court enter an order allowing the unrestricted production of the Derivative Questionnaires to avoid uncertainty and future disputes regarding use of those materials by the Lehman estates and the Litigation Claimants. To be clear, the Derivative Questionnaires would not become publicly accessible on the Lehman claims website. Instead, Movants are seeking authorization to freely exchange the Derivative Questionnaires as discovery materials in connection with any Lehman-related adversary proceeding or claim objection. If, however, information contained in the Derivative Questionnaires is later filed with the Court, such information need not be redacted and/or filed under seal. Any party that believes it has a compelling need to protect from disclosure information contained in its Derivative Questionnaire can timely file an objection to this Motion in accordance with the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures (June 17, 2009) [Docket No. 9635] (the "Case Management Order")[3] stating the basis for that belief. Otherwise, the restrictions of the Bar Date Order should be lifted.

---

[3] Specifically, the Case Management Order requires that objections be filed electronically with the Court on the docket of *In re Lehman Brothers Holdings Inc.*, Chapter 11 Case No. 08-13555 (SCC) in accordance with General Order M-242 (available at www.nysb.uscourts.gov/orders/orders2.html) by registered users of the Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word or any other Windows-based word processing format on or before the objection deadline, which is the date that is seven (7) calendar days before the applicable hearing at 4:00 p.m. (Prevailing Eastern Time). All parties filing an objection are required to (i) include their telephone and facsimile numbers in the signature block on the last page of the objection and (ii) attend the hearing. Failure to appear at the hearing may result in the relief being granted or denied upon default.

7

# NOTICE

15.     Notice of this Motion has been provided in accordance with the Case Management Order, and notice has been given to: (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) counsel for the Creditors Committee; (v) all other parties who have either requested notice or with a particularized interest in the matters set forth herein; and (vi) all Lehman creditors party to a derivatives contract. Movants submit that no other notice is necessary.

16.     No previous request for the relief sought herein has been made by Lehman to this or any other Court.

**WHEREFORE,** Movants respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  March 19, 2015
        New York, New York

Respectfully submitted,

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

By: */s/Peter J. Behmke*
Turner P. Smith
L.P. Harrison 3rd
Peter J. Behmke
*Attorneys for Lehman Brothers Holdings Inc. and Certain of Its Affiliates*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/Andrew J. Rossman*
Andrew J. Rossman
Diane C. Hutnyan
Lindsay M. Weber
*Attorneys for the Official Committee of Unsecured Creditors*