Jill E. Alward, Esq.
Timothy W. Salter, Esq.
**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Group 2000 Real Estate Services, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | **Case No. 08-13555-scc** |
| **Debtors.** | |

**MOTION OF GROUP 2000 REAL ESTATE SERVICES, INC. PURSUANT TO RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE SEEKING AN ORDER VACATING THE "ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS," AS IT APPLIES TO GROUP 2000 REAL ESTATE SERVICES, INC.**

1.      Group 2000 Real Estate Services, Inc. ("Group 2000") by and through its undersigned counsel, Blank Rome LLP, hereby submits this motion (the "Motion") pursuant to *Rule 60(b)(6)* of the *Federal Rules of Civil Procedure* seeking an order vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers" (the "ADR Order"), as it applies to Group 2000.

2.      As more fully set forth herein, Group 2000 respectfully submits that the ADR Order should be vacated as: (1) Lehman Brothers Holdings, Inc. ("LBHI") does not possess a right to be indemnified by Group 2000; and (2) all claims assigned to LBHI are barred by the statute of limitations.

1

145271.00601/100026979v.1

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to *28 U.S.C. §§ 157(a)* and *1334*. Venue is proper pursuant to *28 U.S.C. §§ 1408* and *1409*.

4. This Motion is filed pursuant to *Rule 60* of the *Federal Rules of Civil Procedure* as made applicable to bankruptcy cases by *Rule 9024* of the *Federal Rules of Bankruptcy Procedure*.

## BACKGROUND

5. This matter concerns LBHI's attempt to usurp an indemnification obligation made by Group 2000 to Lehman Brothers Bank, FSB ("Lehman Bank").

6. On June 5, 2003, Group 2000 entered into a Loan Purchase Agreement (the "Loan Purchase Agreement") with Lehman Bank pursuant to which Group 2000 agreed to sell, and Lehman Bank agreed to purchase, certain residential mortgages. A copy of the Loan Purchase Agreement is annexed hereto as *Exhibit A*.

7. Incorporated by reference into the Loan Purchase Agreement was a Seller's Guide (the "Seller's Guide") governing the parties' rights and obligations. A copy of the Seller's Guide is annexed hereto as *Exhibit B*.

8. Both the Loan Purchase Agreement and the Seller's Guide were to be governed and interpreted in accordance with New York law. *See Exhibit A* at §8.

9. LBHI was not a party to the Loan Purchase Agreement. *See Exhibit A*.

10. The Seller's Guide contains a section entitled "Representation, Warranties, and Indemnifications," which contained, amongst other provisions, a sub-subsection defining Group 2000's indemnification obligations (the "Indemnification Provision"). *See Exhibit B* at §§710-711.

145271.00601/100026979v.1

11. Lehman Bank acquired at least three residential mortgage loans from Group 2000 pursuant to the Loan Purchase Agreement.

12. Lehman Bank thereafter sold those mortgage loans to LBHI "without recourse," in exchange for full compensation. *See SecurityNational Mortg. Co. v. Aurora Bank FSB*, 2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

13. These mortgage loans were subsequently "transferred, directly or indirectly, to upstream investors ranging from government sponsored entities (e.g., Fannie Mae), large financial institutions, and/or securitization trusts that issued residential mortgage backed securities" by LBHI. *See Docket #42153* at ¶16.

14. LBHI alleges that at least three mortgage loans sold by Group 2000 to Lehman Bank were eventually sold by LBHI to Fannie Mae or Freddie Mac.

15. On September 15, 2008, LBHI and twenty-two of its affiliates filed petitions seeking relief under *Chapter 11* of the *United States Bankruptcy Code* (the "Bankruptcy"). *See* http://dm.epiq11.com/LBH/Project# (last visited February 9, 2015).

16. Lehman Bank, was not, and is not, a party to the Bankruptcy. *See id.*; *SecurityNational Mortg. Co.*, 2014 U.S. Dist. LEXIS 177481 at *4; *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011) (stating that LBHI is a parent company of Lehman Bank).

17. On September 22, 2009, Fannie Mae filed a proof of claim in the Bankruptcy in the approximate amount of not less than $19,058,000,000.00 (the "Fannie Mae Claim"), a portion of which was attributable to breach of warranty and indemnification causes of action (the "Fannie Mae Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Fannie Mae. *See Claim No. 2955* at ¶1.2.

3

18. That same day, Freddie Mac filed a proof of claim in the amount of $16,100,024.63 (the "Freddie Mac Claim"), a portion of which was attributable to breach of warranty and indemnification causes of action (the "Freddie Mac Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Freddie Mac. *See Claim No. 33576* at ¶8.

19. By agreement dated May 9, 2013, and purporting to be retroactively effective as of February 13, 2012, Lehman Bank (now known as Aurora Bank, FSB) assigned the Loan Purchase Agreement to LBHI. *See Exhibit C*.

20. On January 22, 2014, LBHI, Fannie Mae, Lehman Bank (now known as Aurora Commercial Corporation), and Aurora Loan Services LLC, entered into a settlement agreement (the "Fannie Mae Settlement Agreement") settling the Fannie Mae Claim. A copy of the Fannie Mae Settlement Agreement is annexed hereto as *Exhibit D*.

21. On February 12, 2014, those same parties entered into a settlement agreement (the "Freddie Mac Settlement Agreement") settling the Freddie Mac Claim. A copy of the Freddie Mac Settlement Agreement is annexed hereto as *Exhibit E*.

22. As part of the aforementioned settlement agreements, Fannie May and Freddie Mac agreed to turn over documents to LBHI evidencing their respective claims and to assign any claims which those entities held against the originating lenders. *See Exhibit C* at ¶3.1; ¶5; *Exhibit D* at ¶2.2(b); 4.1.

23. On May 29, 2014, LBHI brought a motion (the "ADR Motion") seeking to implement Alternative Dispute Resolution Procedures and obligate certain originating lenders, including Group 2000, to participate in mediation in connection with its alleged indemnification claims. *See Docket #44450*.

4

24.     On July 18, 2014, the Court entered the ADR Order. A copy of the ADR Order is annexed hereto as *Exhibit F*.

25.     On March 3, 2015, LBHI served an "Indemnification ADR Notice" on Group 2000 as required by the ADR Order, triggering Group 2000's obligation to respond within 20 days. A copy of the Indemnification ADR Notice is annexed hereto as *Exhibit G*.

26.     Counsel to LBHI and Group 2000 thereafter agreed to extend Group 2000's time to respond until March 30, 2015.

27.     Group 2000 now brings this Motion seeking to vacate the ADR Order as (1) LBHI does not possess a right to be indemnified by Group 2000; and (2) all claims assigned to LBHI are barred by the statute of limitations.

## ARGUMENT

### A) Legal Standard Governing a Rule 60(b)(6) Motion to Vacate an Order

28.     *Rule 60(b)* of the *Federal Rules of Civil Procedure* allows a party to move for relief from a judgment or order.

29.     A motion under *Rule 60 of the Federal Rules of Civil Procedure*, made applicable to bankruptcy cases by *Rule 9024 of the Federal Rules of Bankruptcy Procedure*, may be granted on various grounds, including "for . . . any . . . reason that justifies relief." *See Fed. Rules Civ. P. Rule 60(b)(6)*. "Relief provided under *Rule 60(b)* is equitable in nature and is right to be guided by equitable principles." *See Boehner v. Heise et al.*, 2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009). There must be a showing that undue hardship will not result to other parties, and the movant must demonstrate that he possesses a meritorious defense. *Id* at *12.

30.     Group 2000 submits that it has a meritorious defense as LBHI does not possess any enforceable claims as a matter of law. For that reason, granting the Motion would not create

5

undue hardship for LBHI. In contrast, denying the Motion and preserving Group 2000's obligation to participate in mediation would create undue hardship for Group 2000.

### B) The Indemnification Provision

31. The Indemnification Provision contained in the Seller's Guide provides as follows:

> [Group 2000] shall indemnify [Lehman Bank] and [Lehman Bank's] designee (including, without limitations, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages . . . that [Lehman Bank] may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to the Seller's Guide or the Loan Purchase Agreement . . . . It is understood and agreed that any subsequent holder of any Note acquired hereunder by [Lehman Bank] shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. *Exhibit B at §711.*

32. "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (N.Y. 1989). Furthermore, "[w]hen an unnamed party asserts coverage by an indemnification provision, the New York courts are particularly strict." *See Security National Mortgage Co., supra* at *35; *see also Tonking v. Port Authority of N.Y. and N.J.*, 3 N.Y.3d 486, 821 N.E.2d 133, N.Y.S.2d 708 (N.Y. 2004); *Solomon v. City of New York*, 11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App. Div. 1985), *aff'd*, 70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987).

33. Applying this well settled principal, and as fully set forth hereafter, it is respectfully submitted that LBHI does not possess a right to be indemnified by Group 2000 as (1) Lehman Bank did not possess a right to be indemnified by Group 2000 as a matter of fact, and could not have assigned rights greater than its own as a matter of law; and (2) LBHI could

not have received an assignment of indemnification rights or claims from Fannie Mae or Freddie Mac without receiving an assignments of the respective Notes.

### C) LBHI Does Not Possess any Indemnity Rights Against Group 2000

#### i) Lehman Bank Had No Indemnity Rights to Assign

34. Group 2000 submits that Lehman Bank never incurred any "claims, losses, [or] damages" as a result of the Loan Purchase Agreement and therefore no Indemnification Rights could be assigned to LBHI as a matter of law.

35. In New York it is well settled that "[t]he assignment of rights does not alter the nature of the rights assigned; the assignee merely stands in the shoes of the assignor." *Badiak v. White Plain Kensington, LLC*, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011) (citing *Quantum Corporate Funding, Ltd. v. Westway Industries, Inc.,* 4 N.Y.3d 211 (N.Y. 2005)).

36. As previously noted, LBHI was not a party to the Loan Purchase Agreement but is instead a purported assignee of the Loan Purchase Agreement by agreement dated May 9, 2013, and purportedly effective as of February 13, 2012. *See Exhibit C*.

37. Therefore, it must be determined whether Lehman Bank possessed a right to be indemnified by Group 2000 at the time of this purported assignment. *SecurityNational Mortg. Co., 2014 U.S. Dist. LEXIS 177481* at *43.

38. Upon information and belief, Lehman Bank sold loans to LBHI "without recourse" in exchange for full compensation. *See SecurityNational Mortg. Co.*, 2014 U.S. Dist. LEXIS 177481 at *10-*11 ("When each of the Loans [were] sold by Lehman Bank to LBHI, Lehman Bank was fully compensated, *i.e.*, at the time of the sale Lehman Bank was paid in full the amount that it had expended in each of the Loans"); *Docket #47-7* ("The sale of the

145271.00601/100026979v.1

Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

39. Upon information and belief, these transactions were "established to protect the capital of Lehman Bank, and thereby enhance its loan purchasing capacity so as to be able to buy more loans for sale to, and for the benefit of, LBHI." *SecurityNational Mortg. Co., 2014 U.S. Dist. LEXIS 177481* at *13.

40. Under this system Lehman Bank could not suffer any loss from a loan that it sold to LBHI. *Id.* at *12.

41. "It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor." *See International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (N.Y. 1975).

42. Pursuant to the manner by which Lehman Bank and LBHI structured their transactions, at the time the Loan Purchase Agreement was assigned to LBHI, Lehman Bank had not incurred any "claims, losses, [or] damages" as a result of its purchase of loans from Group 2000. *See Docket #47-7* ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

43. "Since 'an insurer's obligation to indemnify extends only to those damages the insured is legally obligated to pay, it naturally follows that a release discharging an insured from all liability relieves the insurer from the duty of indemnification because it effectively eliminates any factual or legal grounds on which the duty to indemnify may be based.'" *Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co.*, 55 A.D.3d 671, 673-674 (N.Y. App. Div. 2d Dep't

8

2008) (citing *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 40 A.D.3d 978, 980 (N.Y. App Div. 2d Dep't 2007) and quoting *McDonough v.. Dryden Mut. Ins. Co.*, 276 A.D.2d 817, 818 (N.Y. App. Div. 2d Dep't 2000)).

44. Applying this principal to the matter at hand, it is clear that Lehman Bank's sale of the mortgage loans to LBHI "without recourse" and in exchange for full compensation relieved Group 2000 of its duty to indemnify Lehman Bank as this transaction unequivocally foreclosed any possibility that Lehman Bank could incur any "claims, losses, [or] damages" as a result of its purchase of these loans from Group 2000. *See SecurityNational Mortg. Co., 2014 U.S. Dist. LEXIS 177481* at *43 (finding that Lehman Bank had no rights, damages, or claims it could assert against the mortgage originator under an indemnification agreement at the time of its assignment of rights to LBHI, and therefore no indemnifications rights could be asserted against the originating lender by LBHI).

45. An assignment of a right to indemnity does not create new right for the assignee to be indemnified, but rather, the assignee only receives a right to be indemnified to extent that the assignor would have had right to indemnification. *Badiak v. White Plain Kensington, LLC*, *supra* 31 Misc. 3d at 768.

46. Put another way, Lehman Bank could not assign indemnification rights greater than those it possessed as a matter of law. *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d at 126.

47. By seeking indemnification from Group 2000, the assignee, LBHI, is attempting to enforce rights which the assignor, Lehman Bank, did not possess at the time of the Loan Purchase Agreement was assigned, as a matter of fact. Therefore, LBHI cannot assert these claims against Group 2000 as a matter of law. *See Nat'l City Bank v. Berwin*, 240 A.D. 550, 552

(N.Y. App. Div. 1st Dep't 1934) (finding that the assignor had not suffered a loss at the time of his assignment of claims and therefore plaintiff did not possess a cause of action for indemnity at the time the suit was filed).

48. On that basis, it is respectfully submitted that the ADR Order should be vacated, relieving Group 2000 from its obligation to participate in mediation thereunder.

### ii) LBHI Could Not Have Received an Assignment of Indemnification Rights from Fannie Mae or Freddie Mac as those Claims are not Assignable Without Corresponding Assignments of the Notes

49. While LBHI does not explicitly alleged to have been assigned indemnification rights by Fannie Mae or Freddie Mac, as fully set forth hereafter, these entities could not have assigned any right to be indemnified by Group 2000 to LBHI as any indemnification rights held by Fannie Mae and Freddie Mac were inextricably derived from these entities' possession of the respective Notes and could not be independently assigned.

50. Pursuant to the Indemnification Provision, Group 2000 agreed to indemnify the "subsequent holder of any Note." *See Exhibit B* at ¶711.

51. No clause contained in the Indemnification Provision, or anywhere else in the Seller's Guide, however, provided that this right could be independently assigned by a holder of a Note. *See generally Exhibit B*.

52. Furthermore, while Section 711 of Seller's Guide provides that "the indemnification obligations of [Group 2000] shall survive the termination of the Seller's Guide and the related Loan Purchase Agreement," nowhere in the Seller's Guide does it provide that said obligations could be independently assigned after the liquidation of the Notes. *See Exhibit B* at §711.

145271.00601/100026979v.1

53.     Significantly, neither Fannie Mae nor Freddie Mac purports to assign any Notes to LBHI as part of their respective settlement agreements, instead professing to be "sell[ing], assign[ing], or otherwise transfer[ring]" any claims which those entities held against the originating lenders. *See Exhibit C* at ¶3.1; ¶5; *Exhibit D* at ¶2.2(b); 4.1.

54.     Therefore, as Fannie Mae and Freddie Mac's indemnification rights arose exclusively from the possession of the respective Notes, the failure of these entities to assign said Notes to LBHI is fatal to any allegation by LBHI that it received an assignment of the inextricably attached indemnification rights.

55.     Accordingly, as LBHI cannot claim to have received an assignment of a right ot be indemnified by Group 2000 from Fannie Mae or Freddie Mac, Group 2000 submits that the ADR Order should be vacated.

### D) All Claims Assigned to LBHI Are Barred by the Statute of Limitations

56.     LBHI also purports to possess claims against Group 2000 for breach of warranty (the "Breach of Warranty Claims").

57.     Upon information and belief, LBHI alleges to have obtained Breach of Warranty Claims (1) through the alleged assignment of the Loan Purchase Agreement and (2) the Settlement Agreement with Fannie Mae.

58.     Regardless of how LBHI obtained its Breach of Warranty Claims, however, said claims are barred by the statute of limitations as a matter of law.

59.     In New York, a cause of action for breach of contract accrues at the time of the breach, even if no damages occur until later. *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993).

60. It is well settled that a breach of warranty claim arising out of a loan purchase agreement against a mortgage loan originator occurs at the time the loans are delivered to the purchaser. *See, e.g., ACE Sec. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 522, 523 (N.Y. App. Div. 1st Dep't 2013); *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189 (W.D. Wash. 2011); *Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp.*, 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003); *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v Nomura Credit & Capital, Inc.*, 39 Misc. 3d 1226(A) (N.Y. Sup. Ct. 2013). The accrual date of the statute of limitations cannot be extended by delaying a demand for payment. *See Aurora Commer. Corp. v. Std. Pac. Mortg.*, 2014 U.S. Dist. LEXIS 36150, 14-15 (D. Colo. Mar. 19, 2014).

61. Moreover, an originating lender's failure to timely repurchase a loan or to provide indemnification does not constitute a separate breach of the loan purchase agreement for statute of limitations purposes. *See Lehman Bros. Holdings v. Universal Am. Mortg. Co., LLC*, 2014 U.S. Dist. LEXIS 120255 (D. Colo. Aug. 28, 2014) (citing *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014)) ("'[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused. This issue has been repeatedly addressed and resolved [by New York courts.]")

62. Here, "Attachment A" to the "Indemnification ADR" Notice served on Group 2000 conclusively establish that the three loans giving rise its Breach of Warranty Claims were sold by Group 2000 to Lehman Bank between January 12, 2006 and July 31, 2006. *See Exhibit H*.

63. Therefore, as the Breach of Warranty Claims accrued upon the delivery of these loans to Lehman Bank, the six-year statute of limitations expired as to the entirety of these loans on July 31, 2012.[1]

64. The fact that LBHI received an assignment of claims from Fannie Mae and Freddie Mac does not change this result as an assignee's rights can be no greater than those of the original assignor, *see Long Island Radiology v. Allstate Ins. Co.*, 36 A.D.3d 763, 765 (N.Y. App. Div. 2d Dep't 2007), and therefore for statute of limitations purposes Fannie Mae's cause of action against Stearns Lending would have accrued when it would have accrued for Lehman Bank, no later than July 31, 2006. *See Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854, 856 (N.Y. Sup. Ct. 1977) (dismissing a claim as untimely as a statute of limitations defense binds an assignee).

65. On that basis, Group 2000 respectfully submits that the Breach of Warranty Claims are barred by the statute of limitations as a matter of law, and therefore the ADR Order should be vacated.

## CONCLUSION

66. LBHI does not hold any enforceable rights against Group 2000 as a matter of law. Lehman Bank did not possess any indemnification rights to assign to LBHI as Lehman Bank was fully compensated, without recourse, upon selling the subject loans to LBHI. Neither Fannie Mae nor Freddie Mac could have assigned indemnification rights to LBHI as the Indemnification Provision did not provide for indemnification rights to be independently assignable by subsequent holders of the Notes without a corresponding assignment of said Notes.

---

[1] As LBHI did not receive an the purported assignment of the Loan Purchase Agreement until May 9, 2013, almost ten months *after* the statute of limitations expired, LBHI is not entitled to a tolling of the statute of limitations under *11 U.S.C. §108(a)*.

Furthermore, any Breach of Warranty Claims assigned to LBHI are barred by the expiration of the statute of limitations.

67. According, LBHI has does not have any claims against Group 2000 and participating in mediation concerning those claims is unwarranted.

68. Therefore, Group 2000 respectfully submits that this Court should vacate the ADR Order.

WHEREFORE, Group 2000 requests an order granting its motion in its entirety, along with any other and further relief as the Court deems just and proper.

Dated: March 30, 2015
New York, NY

/s/ Timothy W. Salter
Jill E. Alward, Esq.
Timothy W. Salter, Esq.
BLANK ROME LLP
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Attorneys for Group 2000 Real Estate Services, Inc.*

145271.00601/100026979v.1