UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |

**RESPONSE OF JPMORGAN AND CREDIT SUISSE TO MOTION TO ALLOW
DISCLOSURE OF THE DERIVATIVE QUESTIONNAIRES PURSUANT TO
<u>SECTION 107(a) OF THE BANKRUPTCY CODE (DKT. 48939)</u>**

JPMorgan Chase Bank, N.A., J.P. Morgan Markets Limited (f/k/a Bear Stearns International Limited), J.P. Morgan Securities Ltd., J.P. Morgan Ventures Energy Corporation, JPMorgan Chase and Co., JPMorgan Bank Dublin (f/k/a Bear Stearns Bank plc), Bear Stearns Credit Products Inc. and Bear Stearns Forex Inc. (collectively, "JPMorgan"), and Credit Suisse (n/k/a Credit Suisse AG) ("CS"), Credit Suisse International ("CS International"), Credit Suisse Energy LLC ("CS Energy"), and Credit Suisse Securities (Europe) Ltd. ("CS Europe") (collectively, "Credit Suisse") in response to the *Motion to Allow Disclosure of the Derivative Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code* (the "Motion") filed by Lehman Brothers Holdings Inc. and certain of its affiliates ("LBHI," and, together with its subsidiaries, "Lehman") and the Official Committee of Unsecured Creditors (the "Committee") on March 19, 2015, respectfully states as follows:

**BACKGROUND**

1.      Lehman did not take a single advance step to reduce the impact of its bankruptcy on the value of its massive derivatives portfolio. As a result, when the markets and the federal government concluded Lehman could not survive and the firm was forced into bankruptcy, Lehman's derivatives counterparties were forced to close out their outstanding transactions with

Lehman in the worst derivatives market in history.  JPMorgan and Credit Suisse, as some of Lehman's largest derivatives counterparties, had to close out tens of thousands of trades in the illiquid, chaotic and volatile markets that Lehman's collapse exacerbated.

2.  JPMorgan filed claims relating to its closeout of these derivatives trades totaling approximately $2.3 billion.  *See* Claims Nos. 66451, 66453, 66454, 66455, 66462, 66470, 66472, 66473, 66474, and 66476.

3.  Lehman objected to JPMorgan's claims and filed an adversary proceeding on September 14, 2012, amended on November 16, 2012, seeking, among other things, to reduce JPMorgan's derivative-related claims against Lehman.  *See* Case No. 12-01874 at Dkt. No. 1; Case No. 12-01874 at Dkt. No. 6 (the "JPM Complaint").

4.  Throughout the JPM Complaint, Lehman alleges that the "behavior of Lehman's other big bank counterparties" evidences that JPMorgan should have closed out differently.  *See* JPM Complaint at 59-61, 65-68.  These "big bank counterparties" are identified only by letters in the JPM Complaint "[f]or confidentiality purposes." *Id.* at 59 n.19.

5.  JPMorgan has made discovery requests of Lehman seeking the Derivative Questionnaires ("DQs") submitted to Lehman by all of its counterparties.  While the parties initially agreed upon a limited subset of approximately thirty counterparties because of Lehman's objections as to the burden resulting from its confidentiality obligations, Lehman would not agree that it would not later attempt to rely upon data from additional select counterparties, such as in expert discovery.

6.  In addition to the DQs initially submitted by the counterparties, certain counterparties also made subsequent submissions or engaged in communications with Lehman to clarify or supplement the DQs.  JPMorgan has also requested, and Lehman has agreed to produce for limited counterparties, this information (the "DQ communications").

7. Credit Suisse filed claims relating to its closeout of over 34,000 derivatives trades with Lehman totaling approximately $1.19 billion. *See* Claims Nos. 22843, 22813, 22854, 22852, 22828, 22815, 22853, 22841, 22856, 22848, 22849, 22847, 22842, 22812, 22821 and 22820.

8. Credit Suisse also uploaded files in response to the DQs cataloguing amounts it was owed in closing out its terminated derivatives positions and providing information on those positions and their valuations.

9. On November 6, 2013, Lehman objected to Credit Suisse's claims and filed its Adversary Complaint and Objection to Claims against Credit Suisse. *See* Case No. 13-01676 at Dkt. No. 1 ("CS Complaint"). In the CS Complaint, Lehman alleges that Credit Suisse's close out of its derivatives trades with Lehman was not completed in a commercially reasonable manner and seeks to reduce Credit Suisse's claims. *See* CS Complaint at 26. Credit Suisse strongly disputes Lehman's allegations.

10. The matter is currently in discovery and both Plaintiffs and Credit Suisse have served requests for the production of documents ("Document Requests"). Among Credit Suisse's Document Requests is a request for the DQs submitted to Lehman by all of its counterparties. Lehman has objected to Credit Suisse's request for the DQs on the grounds that the DQs "may not be disclosed by order of the Court." Plaintiffs' Responses and Objections to Defendants' First Set of Document Requests at 19.

**RESPONSE TO MOTION**

11. One of the critical issues in the claims objections and adversary proceedings relating to the Lehman derivatives closeouts is determining whether the counterparties' closeouts were commercially reasonable. Lehman's failure and the derivatives closeouts that followed were unprecedented. Data showing how various counterparties closed out during this same unprecedented set of circumstances could be relevant to this analysis, and, as an example,

Lehman has made clear throughout its JPM Complaint that it plans to rely on the "behavior of Lehman's other big bank counterparties" as evidence that JPMorgan should have closed out differently.  *See* JPM Complaint at 59-61, 65-68.

12. There is a significant asymmetry of information between the counterparties and Lehman on this critical issue.  In connection with the JPM Complaint, Lehman has only agreed to produce a small subset of counterparties' DQs and an even smaller subset of DQ communications.  But Lehman has also reserved the right to rely upon other DQs and DQ communications at its selection, such as in expert discovery.  This stockpile of DQ data available only to Lehman allows Lehman to selectively cherry-pick unrepresentative examples in order to criticize JPMorgan's closeout.

13. Therefore, JPMorgan and Credit Suisse support lifting the bar date order on the DQs, but seek to modify or clarify the proposed order, which suffers from a number of one-sided protections and benefits to Lehman.

14. *First,* the proposed order does not make the DQs available to parties in relevant adversary proceedings.  The proposed order merely allows Lehman to produce the DQs as it so chooses.  The DQs need to be made available to the parties in relevant adversary proceedings and not produced at Lehman's self-selection.

15. *Second,* the last decretal paragraph of the proposed order appears to mandate that this Court retains jurisdiction over any disputes related to the proposed order.  That paragraph is vague and overly broad.  The order cannot dictate jurisdiction where certain relevant adversary proceedings or contested matters are subject to the jurisdiction of other courts.

16. *Third,* JPMorgan and Credit Suisse seek clarification of the definition of "Derivative Questionnaires" as used in the proposed order to ensure that the definition includes subsequent communications about submissions and clarifications by the counterparties related to

the Derivative Questionnaires, which are relevant and supplement the completeness and accuracy of the Derivative Questionnaires.

17. *Fourth,* to the extent there is any ambiguity as to the scope of the proposed order, JPMorgan and Credit Suisse expressly reserve their rights to discovery that extends beyond the coverage of the proposed order. The entry of any version of the proposed order should not be construed to limit JPMorgan's, Credit Suisse's, or any other litigation claimant's, ability to seek or obtain discovery in any Lehman-related adversary proceeding or claims objection.

## CONCLUSION

18. For the foregoing reasons, JPMorgan and Credit Suisse support the lifting of the bar date order subject to the modifications and reservations of rights set forth in Paragraphs 14-17. For the Court's convenience, a modified proposed order is attached as Exhibit A.

Dated: March 30, 2015
New York, New York

                                 */s/ Harold S. Novikoff*
                                 Harold S. Novikoff
                                 Ian Boczko
                                 Molly K. Grovak
                                 Courtney L. Heavey

                                 WACHTELL, LIPTON, ROSEN & KATZ
                                 51 West 52nd Street
                                 New York, New York 10019
                                 (212) 403-1000
                                 *Attorneys for JPMorgan Chase Bank, N.A., J.P. Morgan Markets Limited (f/k/a Bear Stearns International Limited), J.P. Morgan Securities Ltd., J.P. Morgan Ventures Energy Corporation, JPMorgan Chase and Co., JPMorgan Bank Dublin (f/k/a Bear Stearns Bank plc), Bear Stearns Credit Products Inc. and Bear Stearns Forex Inc.*

CRAVATH, SWAINE & MOORE LLP,

by *Michael A. Paskin /TMB*
        Richard W. Clary
        Richard Levin
        Daniel Slifkin
        Michael A. Paskin
        Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Credit Suisse (n/k/a Credit Suisse AG), Credit Suisse International, Credit Suisse Energy LLC, Credit Suisse Securities (Europe) Ltd.*