1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


            Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.


            Debtor.

- - - - - - - - - - - - - - - - - - - -x

            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            June 24, 2009

            10:15 AM

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

08-13555-mg Doc 49040-2 Filed 03/30/15 Entered 03/30/15 15:51:00 Exhibit B
Pg 2 of 10
08-13555-scc Doc 4183 Filed 06/26/09 Entered 06/26/09 11:27:51 Main Document
Pg 90 of 139

90

1    precisely what we're dealing with today.

2            MR. WAISMAN:  Your Honor, on the blackline that I've

3    handed up to the Court, as well as the blackline that was

4    handed out to the parties before the commencement of the

5    hearing, the first change appears on page 2.  And there we have

6    a -- we pushed back the bar date for one week to accommodate

7    the fact that this hearing is now one week later.  And we do,

8    in fact, want to make sure we provide parties-in-interest with

9    at least sixty days' notice of the bar date, ultimately.

10           The next change would appear on page 4 of the

11   blackline.  And this is the carve-out as to entities that do

12   not have to file proofs of claim.  Paragraph G there was

13   modified just to add (i) and (ii) to make clear who this

14   applies to.

15           Paragraph (h) was a modification made at the request

16   of Wilmington Trust as indentured trustee, and to make clear

17   that the reason we have a master list of securities is that we

18   have been in discussions with several indentured trustees who

19   have represented to us that they intend to file proofs of claim

20   on behalf of an entire issuance and, therefore, there's no

21   reason for individual holders to file what would essentially

22   be, at that point, duplicative claims.

23           And to the extent we've been in those conversations

24   and we have proper representations that those proofs of claim

25   will indeed be filed, we've implemented a process that will

08-13555-mg Doc 49040-2 Filed 03/30/15 Entered 03/30/15 15:51:00 Exhibit B
08-13555-scc Doc 4185 Filed 06/26/09 Entered 06/26/09 11:27:51 Main Document
Pg 3 of 10
Pg 91 of 39

91

1  avoid, hopefully avoid, probably hundreds of thousands, if not

2  millions, of proofs of claim.

3  I turn to page 5. The modifications on page 5,

4  again, relate back to the master list of securities and go to a

5  number of the comments made in objections that people would

6  like a more formalized process by which they have to submit

7  inquiries as to whether their security is or can be listed on

8  the master list of securities and that the debtors have a

9  deadline by which they have to reply to folks so that they

10 indeed know whether or not they have to file a proof of claim.

11 And we set out here a clear process with deadlines and

12 ultimately a date by which the master list of securities, as

13 posted, is final, and no changes will be made. So people do

14 know when they have to, if they have to, file proofs of claim

15 or they're exempt.

16 In addition, and this is one of the new changes, the

17 first Ordered paragraph subsequent to the larger one on page 5,

18 at the request of the creditors' committee we've inserted an

19 ordered paragraph here that the master list of securities, in

20 its initial form, will be published by no later than tomorrow

21 at noon. In fact, we've represented that we'll endeavor to

22 file it today, but certainly by no later than noon tomorrow so

23 that people can start reviewing it and start submitting their

24 questions. In response to a number of objections, we've made

25 clear that any security listed on the master list of securities

08-13555-mg   Doc 49040-2   Filed 03/30/15   Entered 03/30/15 15:51:00   Exhibit B
08-13555-scc   Doc 4165   Filed 06/26/09   Entered 06/26/09 11:27:51   Main Document
Pg 42 of 139

92

1  is not a derivative contract and therefore does not have to
2  comply with the derivative procedures; and the final ordered
3  paragraph that a holder of a security that is guarantied by a
4  debtor must file a claim against that debtor, again, just
5  clarifying and consistent with the Bankruptcy Code.
6      On page 6, we've made clear that proofs of claim must
7  denominate claims in U.S. dollars. And then in the next
8  addition, at the bottom of that page, in response to many, many
9  of the objections that we include a more precise definition of
10 derivative contract, we have revised the definition, included
11 it here. And this is a definition we've come to in our
12 conversations with many of the objectors.
13     I will note that it's almost impossible to get
14 unanimity of views on this issue, but this definition is one
15 that the debtors believe clearly reflects what are derivative
16 contracts and seems to meet the concerns of many of the
17 parties.
18     There was one additional modification made last night
19 at the request of the creditors' committee, and that's in
20 romanette -- not romanette -- V in the parentheticals towards
21 the end of that paragraph. And that's to insert a repurchase
22 agreement, that a repurchase agreement would be included in the
23 definition of a derivative contract.
24     Page 7, quite important here. The changes on page 7
25 relate to the counterparties to derivative contracts and the

93

1 procedures they must follow in filing their claims. And an
2 important, and hopefully very helpful, modification here and
3 one made at the request of many of the parties, which is, we
4 understand the procedures and that this information needs to be
5 submitted, but sixty days it not enough and we need additional
6 time. The compromise there is the debtors will have a bar date
7 that will be subject to this Court's approval, a date, a fixed
8 date, hopefully September 1st, by which all parties must file
9 proofs of claim unless otherwise exempted, and that would
10 include counterparties on derivative contracts.
11 However, here, the debtors have given derivative
12 counterparties an additional thirty days to upload their
13 information onto the specialized Web site for derivative
14 contracts and, therefore, folks will not have to -- while
15 they'll have to submit their proof of claim by September 1st,
16 will not have to complete the questionnaire and upload it
17 until -- or will have to submit it and upload it before October
18 1st. So a total of, really, ninety days' worth of notice to
19 comply with the procedures for derivative counterparties.
20 Page 8, modifications there, clarifying language that
21 if you have a claim against a debtor based on a guaranty of a
22 derivative contract that was not issued by a debtor, you do in
23 fact have to complete both the guaranty questionnaire and the
24 derivative questionnaire, but of course you have the
25 additional -- you're afforded the additional thirty days to

08-13555-mg Doc 49040-2 Filed 03/30/15 Entered 03/30/15 15:51:00 Exhibit B
08-13555-scc Doc 4183 Filed 06/26/09 Entered 06/26/09 11:27:31 Main Document
Pg 94 of 1039
Pg 6 of 10

94

1  complete the derivative questionnaire.

2  On page 9, in order to accommodate the numerous
3  international protocols and the general cooperative nature
4  among the various administrators, the debtors do require that
5  such administrators file proofs of claim by September 1st, but
6  they will not need to complete the derivative questionnaire.
7  And those administrators will continue to work through the
8  protocol process in providing information to the debtors and
9  quantifying those claims.

10  The next paragraph, inserted paragraph, on page 9,
11  the claims process we're all familiar with involves a claims
12  agent that has a publicly attestable Web site where one's
13  proofs of claim are submitted; they're available on the Web
14  site to any member of the public.  The general proof of claim
15  Web site here maintained by Epiq Systems will not be any
16  different.  Proofs of claim that are filed need to be, as part
17  of the Court's records, publicly available.  But due to many of
18  the concerns received from counterparties as to the derivative
19  questionnaire specifically, the derivative questionnaire will
20  be a separate Web site.  And as parties upload information, it
21  will not be viewable or accessible other than by the party
22  making the submission and by the debtors and the creditors'
23  committee.  So no party will be able to go onto the derivative
24  questionnaire Web site and view the submissions information of
25  another party.

111

1   you have cobbled together, I'm confident with the utmost of
2   good faith, and having called upon a tremendous amount of
3   skillful and knowledgeable people, in fact represent the right
4   approach under the circumstances.
5       The fact that there are so many objections that have
6   been generated by this process can lead to a number of possible
7   conclusions on my part, and I'm not going to assume the
8   motivation of the parties who have objected.  I assume that
9   parties object in good faith because they're concerned that the
10  procedures that are being proposed are either inappropriate,
11  contrary to law, require a level of effort that's not required
12  under applicable rules, changes the burden.
13      And so it seems to me that the evidentiary issue that
14  we're talking about is not quite as narrowly drawn as you've
15  just articulated.  I actually think that in order for me to
16  give you the order that you want, and I recognize that a
17  tremendous amount of work has gone into adjusting the form of
18  relief to accommodate objections, you also need to demonstrate
19  that extraordinary provisions are appropriate in the case of
20  derivatives and guaranty claims.  I'm confident you're right.
21  The problem is, as with most people in the room, I was trained
22  as a lawyer.  I didn't spend any of my adult life on Wall
23  Street.  I know what a derivative is, I think.
24      MR. WAISMAN:  You're ahead of me.
25      THE COURT:  But in terms of the actual work

1  associated with the six-step derivatives unwind processes
2  described in the affidavit, and whether or not six steps as
3  opposed to four steps as opposed to ten steps may be the right
4  approach, I don't have good answers.  Additionally, what I
5  don't know, because there's no evidence on it, and maybe
6  there's no need for evidence on it, is the burden, if any,
7  which is being imposed on counterparties in having to comply
8  with this questionnaire.
9        And since I've already indicated that I understand
10 the philosophy that underlies that saving paragraph that you
11 stuck into the order, I think the saving paragraph about
12 substantial compliance is an invitation to gaming the system,
13 and I don't like it.  Any procedures that we adopt will be
14 strictly enforced.  There'll be no slippery slopes so that the
15 procedures that I want to adopt are the procedures that
16 everybody will comply with.  But in order to develop those
17 procedures, I need to be assured that they're right and
18 appropriate and that they balance, under the circumstances of
19 this case, the relative burden.
20       I'm fully comfortable that under 105 and other
21 applicable provisions, given the unique circumstances of this
22 case, I have the authority to adopt specific procedures
23 relative to derivatives and guaranty claims and to deviate from
24 the standard proof-of-claim form.  That's not the issue.  The
25 issue is making sure that we do it right and that the right

08-13555-mg Doc 49040-2 Filed 03/30/15 Entered 03/30/15 15:51:00 Exhibit B
08-13555-scc Doc 4185 Filed 06/26/09 Entered 06/26/09 11:27:51 Main Document
Pg 113 of 139
Pg 9 of 10

113

1   input has been put into the mix.  I recognize that there has
2   been dialogue with the creditors' committee, that, no doubt,
3   you've had dialogue with various aggressive objectors, and that
4   the ultimate order may in fact be, under the circumstances, if
5   not perfect, close to workable.
6            I have questions whether we can get where we want to
7   get today because the record that I want to have established is
8   more than just the declaration on the six-step process.  I want
9   a record in which the debtor proves up the extraordinary nature
10  of the derivatives claims, the million transactions, the ten
11  thousand counterparties, the extraordinary burden on the estate
12  if procedures specially crafted to deal with the problem are
13  not adopted.
14           The nature of the derivative transactions that we're
15  talking about here, what's involved conventionally in
16  determining breakage associated with such transactions?  What
17  are the varying approaches to value?  What are the varying
18  approaches to claims articulation?  What proof is ordinarily
19  required in connection with presenting such claims?  What
20  happens in a nonbankruptcy setting when parties in the market
21  are involved in swap termination or derivative termination or
22  whatever may be the terminated contract?  I suspect that it may
23  be possible to analogize, from the free market approach, how
24  parties actually value these things when a party is out of the
25  money and exposed to a claim.  But I also expect that there may

08-13555-mg Doc 49040-2 Filed 03/30/15 Entered 03/30/15 15:51:00 Exhibit B
08-13555-scc Doc 4185 Filed 06/26/09 Entered 06/26/09 11:27:51 Main Document
Pg 10 of 10 Pg 115 of 139

114

1  be differences when parties are alive and functioning and have
2  multiple transactions. So you can give a little on one in the
3  hope of getting one on another.
4      Here we're talking about dead Lehman Brothers. This
5  is your one-time shot to maximize your recovery. And it raises
6  questions in my mind as to how counterparties are going to
7  approach this process. I want to know what Lehman's people
8  think about that process and how it can be most efficiently
9  managed, because we're not just talking about a questionnaire;
10 we're talking about the biggest administrative headache in this
11 case. And for that reason, I want to make sure that when I
12 approve the procedures I don't, nine months from now, have a
13 hearing like I had today on the sale hearing in which somebody
14 says we didn't think of something we should have thought of.
15     So I'm not suggesting for a moment that a tremendous
16 amount of topflight work hasn't gone into where we are right
17 now. I want a record that allows me to comfortably approve
18 those procedures. And I don't think we're going to get it
19 today if all we're doing is cross-examining the witness whose
20 declaration I have. Now, it could happen, and if everybody
21 consents to it we can do it at 2 o'clock, but that means that
22 the parties who have sought an adjournment of today's hearing
23 will all waive their objections. And I'm prepared to have an
24 evidentiary hearing at 2. I'll be here all afternoon. But I'm
25 also prepared to do it another day when everybody who's