HEARING DATE AND TIME: April 8, 2015 at 10:00 a.m. (Eastern Time)

Michael G. Burke
Andrew P. Propps
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Attorneys for Brevan Howard Asset
Management, LLP and its managed funds

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
:
In re:                                                            :
                                                                  :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*        : Chapter 11
                                                                  : Case No. 08-13555 (SCC)
                              Debtors.                            :
                                                                  :
------------------------------------------------------------------X

**OBJECTION OF BREVAN HOWARD ASSET MANAGEMENT, LLP, AND
CERTAIN FUNDS UNDER ITS MANAGEMENT TO THE MOTION OF
LEHMAN BROTHERS HOLDINGS INC., AS PLAN ADMINISTRATOR
UNDER THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN
OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS'
MOTION TO ALLOW DISCLOSURE OF THE DERIVATIVE QUESTIONNAIRES
PURSUANT TO SECTION 107(a) OF THE BANKRUPTCY CODE**

Brevan Howard Asset Management, LLP, and certain funds under its management (the "Objecting Creditors"),[1] creditors of Lehman Brothers Holdings Inc. ("LBHI") and its affiliates (collectively with LBHI, "Lehman"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the Motion of LBHI, as Plan Administrator, and the Official Committee of Unsecured Creditors (the "Committee," and with LBHI, the "Movants") to Allow

---

[1] The relevant managed funds are Brevan Howard Asia Master Fund Limited, Brevan Howard Emerging Markets Strategies Master Fund Limited, Brevan Howard Equity Strategies Master Fund Limited, Brevan Howard Master Fund Limited, Brevan Howard Multi-Strategy Master Fund Limited, and Brevan Howard Strategic Opportunities Fund Limited.

Disclosure of the Derivative Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code (the "Motion"). In support hereof, the Objecting Creditors respectfully submit as follows:

## PRELIMINARY STATEMENT

1. As part of the process of filing proofs of claim, creditors holding claims against Lehman on account of derivatives contracts, including the Objecting Creditors, provided trade secrets and confidential research, development, or commercial information (the "107(b)(1) Information") to Lehman, as required by an order of this Court. Among other things, the 107(b)(1) Information relates to proprietary valuation techniques and methodology. The Objecting Creditors provided this 107(b)(1) Information under the express understanding that the information would remain confidential. Now, Movants are attempting a bait-and-switch, asking this Court to allow Lehman to disclose these creditors' 107(b)(1) Information to unspecified third parties that *Lehman* is suing (the "Third Parties") – without restrictions as to further use by either Lehman or the Third Parties.

2. Lehman should not be permitted to make these disclosures, particularly without restrictions. Disclosure of the 107(b)(1) Information, which is protected by section 107(b)(1) of the Bankruptcy Code, to the Third Parties (potentially including financial services industry competitors of the Objecting Creditors) and then to the world would be harmful to the Objecting Creditors. Its disclosure would reduce or eliminate the competitive advantage held by these Objecting Creditors relating to essential trading practices in their industry because it would illuminate the trading strategies used by the Objecting Creditors today. The Objecting Creditors relied on the assurance of confidentiality in the Bar Date Order in providing their 107(b)(1) Information to Lehman. The only basis for the Motion is that Lehman wants to make its affirmative litigation process easier to manage. While understandable, expedience is not a

2

sufficient ground to reverse course on information protected by statute and prior court order. As a result, the Motion should be denied.

## FACTUAL BACKGROUND

3. On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4. Prior to the Lehman bankruptcy, the Objecting Creditors entered into derivative contracts with Lehman (the "Derivative Contracts"), typically with LBHI as a guarantor of an affiliate's performance. LBHI's and its affiliates' bankruptcy filings constituted events of default under the Derivative Contracts. As a result of these events of default, the Objecting Creditors terminated the Derivative Contracts, resulting in claims by the Objecting Creditors.

5. On May 26, 2009, LBHI filed a Motion for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form [Docket No. 3654] (the "Bar Date Motion"). In the Bar Date Motion, LBHI requested that this Court require all derivatives creditors to complete online questionnaires and upload documents evidencing the derivative transaction and the amounts claimed by the creditors, including individual trade level detail, trade valuation methodology, copies of all master agreements and schedules, netting agreements, credit support agreements, any guarantees and other agreements, and valuation data, including trade-by-trade valuations, contemporaneous quotes, screenshots, or other market data (each such questionnaire and associated documents and information, the "Derivative Questionnaire").

6. Certain creditors filed objections to the Bar Date Motion on the grounds that Lehman's proposed order failed to appropriately protect any potentially confidential or protected

3

proprietary information through redaction or otherwise.  As a result of these objections, Lehman amended its proposed order to provide that the information submitted to support claims arising from the Derivative Contracts would not be accessible other than by the submitting creditor, Lehman, the Creditors' Committee, and their respective advisors and counsel.

7.      On July 2, 2009, the Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order"), setting the deadline for most proofs of claim as September 22, 2009, and requiring creditors to submit a Derivative Questionnaire by October 22, 2009 for each proof of claim based on a Derivative Contract.  The Bar Date Order reflected the confidentiality amendments described above.

8.      Following entry of the Bar Date Order, the Objecting Creditors filed proofs of claim relating to their claims arising from the terminations of the Derivative Contracts (the "Proofs of Claim") and submitted Derivative Questionnaires, attaching the required 107(b)(1) Information.

**OBJECTION**

9.      Both Lehman and this Court recognized that the 107(b)(1) Information needed for the claims allowance process was of a protected and confidential nature.  In the Bar Date Order, the Court protected that information by assuring derivatives creditors that the 107(b)(1) Information would only be disclosed to those necessarily involved in the claims allowance process.  Lehman should not be allowed to subvert those protections now simply to expedite its litigations with the Third Parties.  Even if Lehman were permitted (and it should not be) to share the 107(b)(1) Information with the Third Parties absent consent from the relevant creditor, this

Court should establish protections for the 107(b)(1) Information to prevent disclosure of any trade secrets or confidential research, development, or commercial information (as well as the contact information included in the 107(b)(1) Information, the disclosure of which could lead to harassment of employees of the creditors) to the Third Parties or the public.

10. The Bankruptcy Code protects trade secrets and confidential research, development, or commercial information. Specifically, it provides that disclosure of filings shall be restricted to "protect an entity with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1); see also Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 27 (2d Cir. 1994) ("In the bankruptcy area . . . congress has established a special rule for trade secrets and confidential research, development, or commercial information" (citing S. Rep. No. 989)); Fed. R. Bankr. P. 9018 (allowing court "[o]n motion, or on its own initiative [to] make any order which justice requires . . . to protect . . . any entity in respect of a trade secret or other confidential research, development, or commercial information"). Commercial information includes information that "would cause 'an unfair advantage to competitors by providing them information as to the commercial operations'" of the party to whom the information belongs. Orion Pictures, 21 F.3d at 27 (quoting Ad Hoc Protective Comm. for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.), 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)). Without question, information that reveals the methods by which an asset manager calculates the value of a complex financial instrument and, through inference, that asset manager's investment strategy, is research, development, or commercial information.

11. The Bar Date Order implements section 107(b)(1) by protecting derivatives creditors' trade secrets and confidential research, development, or commercial information

5

relating to the terminations of the Derivative Contracts and the valuation of those transactions. Furthermore, the official form of proof of claim specifically permits redaction of supporting documentation. See Official Form B-10 ¶ 7 ("Attached are redacted copies of any documents that support the claim[.]" (emphasis in original)). Indeed, the proof of claim form approved by this court in the Bar Date Order provided for redaction of documents supporting claims that would be filed with the proof of claim form. See Bar Date Order, Ex. B ¶ 8 ("Attach redacted copies of any documents that support the claim[.]").

12. Movants argue that the passage of six years since the Proofs of Claim were filed and Derivative Questionnaires were submitted has nullified the confidentiality of the 107(b)(1) Information contained therein. However, no time limit for confidentiality of the Derivative Questionnaire was contained within the Bar Date Order, nor does the passage of time render investment and valuation strategies non-confidential. For this reason, the Objecting Creditors had no reason to expect the confidentiality of the Derivative Questionnaire information to lapse. As a result, the six years that have passed since the submission of the Derivative Questionnaires does not allow their disclosure.

13. Lehman complains that having to request consent from each derivative counterparty before producing the 107(b)(1) Information is onerous. However, this required consent is inherent in disclosure of trade secrets and confidential research, development, or commercial information and in the protections in the Bar Date Order for the 107(b)(1) Information. To allow the Debtors to void the Bar Date Order's confidentiality provisions, solely because those provisions render production in certain unrelated litigations with unnamed Third Parties more difficult for the Debtors, would eviscerate the purpose and protections of those provisions. As a result, the clumsiness of seeking consent before disclosing each

Derivative Questionnaire cannot alone be sufficient for allowing its disclosure. See Orion Pictures, 21 F.3d at 27 ("In limited circumstances, courts must deny access to judicial documents – generally where open inspection may be used as a vehicle for improper purposes." (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978))). "Open inspection" by the Third Parties and the public – potentially by competitors of the Objecting Creditors – may be used to divine the Objecting Creditors' current investment and valuation strategies.

14. Finally, Movants argue that the Derivative Questionnaires do not merit confidential treatment; however, they provide no support for this sweeping statement. Because the information required by the Derivative Questionnaire would provide insight into derivatives creditors' investment and valuation strategies, it constitutes trade secrets or confidential research, development, or commercial information. Where information fits either of these categories, a "court is required to protect a requesting interested party and has no discretion to deny the application." Orion Pictures, 21 F.3d at 27 (emphasis in original). Here, Lehman modified its proposed order based on objections to the proposed non-confidential treatment of the Derivative Questionnaires, and the Objecting Creditors only provided the 107(b)(1) Information after the Bar Date Order included confidentiality protections. As a result, allowing disclosure of the 107(b)(1) Information based solely on Lehman's after-the-fact recharacterization, and undermining the Objecting Creditors' reasonable reliance on the Bar Date Order's provisions, would be entirely unfair to the Objecting Creditors and could provide an unfair advantage to their competitors by providing those competitors access to the Objecting Creditors' investment and valuation strategies.

**CONCLUSION**

15.    Wherefore, for the reasons set forth herein, the Objecting Creditors request that this Court (i) deny the relief requested in the Debtors' Motion and (ii) grant such other and further relief as this Court deems just and proper; or, in the alternative require Lehman to implement protections for information contained within the Derivative Questionnaires to maintain the Bankruptcy Code's required protections for the 107(b)(1) Information.

Dated: March 30, 2015
New York, New York

            SIDLEY AUSTIN LLP

            By: */s/ Michael G. Burke*

            Michael G. Burke (mgburke@sidley.com)
            Andrew P. Propps (apropps@sidley.com)
            SIDLEY AUSTIN LLP
            787 Seventh Avenue
            New York, New York 10019
            Telephone: (212) 839-5300
            Facsimile: (212) 839-5599

            *Attorneys for Brevan Howard Asset Management, LLP, Brevan Howard Asia Master Fund Limited, Brevan Howard Emerging Markets Strategies Master Fund Limited, Brevan Howard Equity Strategies Master Fund Limited, Brevan Howard Master Fund Limited, Brevan Howard Multi-Strategy Master Fund Limited, and Brevan Howard Strategic Opportunities Fund Limited*