Evans Prieston, Esq. 3062098
Tracy L. Henderson, Esq. 252888
*(Pro Hac Vice Pending)*
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for Oaktree Funding Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **LEHMAN BROTHERS HOLDINGS., et al.,** | ) | **Case No. 08-13555-scc** |
|  | ) |  |
| Debtors. | ) |  |
| _____ | ) |  |

**OAKTREE FUNDING CORPORATION'S MOTION TO VACATE THE**
**"ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR**
**INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE**
**LOAN SELLER, OAKTREE FUNDING CORPORATION" PURSUANT TO**
**RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     JURISDICTION AND VENUE...........................................................................1

III.    BACKGROUND .....................................................................................................1

IV.     ARGUMENT............................................................................................................7

      A)    Legal Standard Governing a Rule 60(b)(6)
             Motion to Vacate an Order ..............................................................................7

      B)    LBHI Lacks Indemnification Rights........................................................ 7

             i)      There is No Evidence that Lehman Bank
                  Validly Assigned Indemnification Rights to LBHI............................................. 10

             ii)     Notwithstanding the Lack of Proof of a Valid
                  Assignment, Lehman Bank Had No Claim for
                  Indemnity to Assign ...........................................................................11

             iii)    LBHI Could Not Have Received an Assignment
                  of Indemnification Rights or Claims from Fannie
                  Mae as those Claims are not Assignable Without
                  Corresponding Assignments of the Notes  ..........................................................14

      C)    All Claims Assigned to LBHI by Lehman Bank and
             Fannie Mae Are Barred by the Statute of Limitations……………………………16

V.      CONCLUSION ......................................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Pages**

*ABB Indus. Sys., Inc. v. Prime Tech*., Inc., 120 F.3d 351, 360 (2d Cir. 1997)     16

*ACE Sec. Corp. v. DB Structured Prods., Inc., 112* A.D.3d 522, 523
    (N.Y. App. Div. 1st Dep't 2013                                              16

*Aurora Commer. Corp. v. Std. Pac. Mortg*., 2014 U.S. Dist. LEXIS 36150,
    14-15 (D. Colo. Mar. 19, 2014)                                              17

*Badiak v. White Plain Kensington*, LLC,
    31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011)                              11, 18

*Boehner v. Heise* et al.
    2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009)                         7

*Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., No.* 13 CIV
    6482 PAC, 2014 WL 3819356                                             15,17,18

*Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993)        15

*Great American Ins. Co. v. United States*, 575 F.2d 1031, 1034 (2d Cir. 1978)     18, 19

*Hahn Automotive Warehouse, Inc. v. Gateway  Zurich Insurance Co.*,
    2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187               15

*Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*                              3,16
    793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011)

*Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co*.
    55 A.D.3d 671, 673-674 (N.Y. App. Div. 2d Dep't 2008)                12

*Home Equity Loan Trust, Series 2007 – HE3 v. DB Structured Prods., Inc.,*
    No. 13 CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar 20, 2014)        15

*International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc*.
    36 N.Y.2d 121, 126 (N.Y. 1975)                                       11,12,13

*Hooper Associates, Ltd. v. AGS Computers, Inc*., 74 N.Y. 2d. 487, 492         7
    (N.Y. 1989).

*John J. Kassner & Co. v. City of N.Y.*, 46 N.Y. 2d 544, 551 (1979)              17

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*                    3, 16
    793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011)

*Long Island Radiology v. Allstate Ins. Co*., 36 A.D.3d 763, 765
    (N.Y. App. Div. 2d Dep't 2007                                                              18

*Nomura Asset Acceptance Corp. Alternative Loan Trust*, *Series*                     17
    *2005-S4 v Nomura Credit & Capital, Inc.,* 39 Misc. 3d
    1226(A) (N.Y. Sup. Ct. 2013)                                                             17

*Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854,
    856 (N.Y. Sup. Ct. 1977                                                                  18

*Security National Mortg. Co. v. Aurora Bank FSB*                                    2,3,7,10,12
    2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

*Solomon v. City of New York*
    11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App. Div. 1985), aff'd,
    70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987)                          7

*State v. City of Binghamton*, 1979, 72 A.D.2d 870, 421 N.Y.S.2d
    950 (3d Dep't)                                                                           15

*Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp*.,
    2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003)                                  16, 17

*Tonking v. Port Authority of N.Y. and N.J.*
    3 N.Y.3d 486, 821 N.E.2d 133, N.Y.S.2d 708 (N.Y. 2004);
    *Solomon v. City of New York*, 11    A.D.2d 383, 489 N.Y.S.2d
    592 (N.Y. App. Div. 1985), aff'd, 70 N.Y.2d 675, 512 N.E.2d
    546, 518 N.Y.S.2d 963 (N.Y. 1987)                                                        7

*U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.,*
    991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014)                                                 17

*Wells Fargo Bank, N.A. v. JP Morgan Chase Bank, N.A*., No. 12-CV
    6168, 2014 WL 1259630                                                                    16

**STATUTES**

28 U.S.C. §157(a)                                                                        1

28 U.S.C. §1334                                                                          1

28 U.S.C. §1408                                                                          1

28 U.S.C. §1409                                                          1

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 60                                                                  1

Rule 60(b)                                                               6

Rule 60(b)(6)                                                            6

Rule 9024                                                                1

**OTHER AUTHORITIES**

6 Williston, Contracts 2004                                             15

N.Y. C.P.L.R. § 206                                                     15

**EXHIBITS**

Loan Purchase Agreement ("LPA")                                          A
Lehman Bank LPA
Aurora Loan Services, Inc LPA

Dual Agreement Authorization                                             A
Seller's Guide                                                           B
Fannie Mae Settlement Agreement                                         C1
Freddie Mac Settlement Agreement                                        C2
ADR Indemnification Procedures Order                                     D
ADR Indemnification Procedures Notification Letter                       E
Assignment Agreement                                                     F
Loss Statements                                                          G
Purchase Advice                                                          H

## I.  INTRODUCTION

1.      Oaktree Funding Corporation ("Oaktree") by    and    through    its undersigned counsel, American Mortgage Law Group, hereby submits this motion (the "Motion") pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure seeking an order vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors (the "ADR Order") against Mortgage Loan Seller, Oaktree.

2.      As more fully set forth herein, Oaktree respectfully submits that the ADR Order should be vacated as: (1) Lehman Brothers Holdings, Inc. ("LBHI") does not possess a valid right to be indemnified by Oaktree; and (2) all claims assigned to LBHI are barred by the statute of limitations.

## II.  JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This Motion is filed pursuant to Rule 60 of the Federal Rules of Civil Procedure as made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure.

## III.  BACKGROUND

5.      This matter concerns LBHI's attempt to enforce an indemnification obligation made by Oaktree in connection with its sale of residential mortgage loans to Lehman Brothers Bank, FSB ("Lehman Bank").

6.      Oaktree entered into Loan Purchase Agreements with both Lehman Bank and Aurora Loan Services, Inc. ("ALS").  On June 25, 2003, Oaktree entered into a Loan Purchase Agreement (the "Lehman Bank Loan Purchase Agreement") with Lehman

Brothers Bank, FSB ("Lehman Bank"). A copy of the Loan Purchase Agreement is annexed hereto as *Exhibit A*. On June 25, 2003, Oaktree entered into a Loan Purchase Agreement (the "ALS Loan Purchase Agreement") with Aurora Loan Services, Inc. A copy of the Loan Purchase Agreement is annexed hereto as *Exhibit A*.

Oaktree agreed to and signed a Dual Agreement Authorization whereby Lehman Bank as an affiliate of Aurora Loan Services, Inc., also purchased loans from Oaktree. ("Authorization Agreement") A copy of the Dual Agreement Authorization is also annexed hereto as *Exhibit A*.

7.      Both Loan purchase Agreements incorporate by reference a Seller's Guide (the "Seller's Guide"), which governed the rights and obligations of the parties.

Oaktree has been provided by LBHI several versions of sections of 5 and 7 purportedly to be from the pertinent Seller's Guide. For section 5 Oaktree has been provided four versions of section 5 dated 03/03/06, 07/28/06, 02/02/07, 03/16/07 and two versions of section 7 dated 12/09/05 and 12/15/06. Copies of portions of the Seller's Guide provided to Oaktree are annexed hereto as *Exhibit B*. It is known that the differing versions of section 7 dated 12/09/05 and 12/15/06 contain identical language pertaining to the sections for Indemnification and Third Part Claims, Survival of Remedies, and Miscellaneous topics denoted on pages 20 through 23.

8.      The Loan Purchase Agreement and the Seller's Guide were to be governed and interpreted in accordance with New York law.  *See Exhibit A* at §8.

9.      LBHI was not a party to the June 25, 2003 LPA. See *Exhibit A*.

10.     The Seller's Guide contains a section entitled "Representation, Warranties, and Indemnifications," which contains sub-subsections setting forth certain

2

representations and warranties being made by Oaktree, obligating Oaktree to repurchase mortgage loans from Lehman Bank in certain circumstances, and defining Oaktree's obligation to indemnify (the "Indemnification Provision").  *See Exhibit B* at §§710-711.

11.    LBHI purports to be the assignee of a contractual right to the remedies for repurchase and indemnification (the "Indemnification Rights") against Oaktree arising from the Indemnification Provision contained in the Seller's Guide. See *Exhibit B at §710 and 711and E*.

12.    Lehman Bank acquired approximately four mortgage loans from Oaktree pursuant to one of the Loan Purchase Agreements.  See *Exhibit E.*

13.    Lehman Bank thereafter sold those mortgage loans to LBHI "without recourse," in exchange for full compensation and ALS was the servicer.  See *Security National Mortg. Co. v. Aurora Bank FSB*, 2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

14.    These mortgage loans were subsequently "transferred, directly or indirectly, to upstream investors ranging from government sponsored entities (e.g., Fannie  Mae),  large financial institutions, and/or securitization trusts that issued residential mortgage backed securities" by LBHI.  See *Docket #42153* at ¶16.

15.    LBHI alleges that certain mortgage loans originated by Oaktree, and sold to Lehman Bank, were eventually sold by LBHI to Fannie Mae.

16.    On September 15, 2008, LBHI and twenty-two of its affiliates filed petitions seeking relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy").  See http://dm.epiq11.com/LBH/Project# (last visited March 18, 2015).

17.     Lehman Bank, was not, and is not, a party to the Bankruptcy.    See id.; *Security National Mortg. Co.,* 2014 U.S. Dist. LEXIS 177481 at *4; *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011) (stating that LBHI is a parent company of Lehman Bank).

18.     On September 22, 2009, Fannie Mae filed a proof of claim in the Bankruptcy in the approximate amount of not less than $19,058,000,000.00 (the "Claim").    See *Claim No. 29557*. A portion of the Claim was attributable to breach of warranty and indemnification causes of action (the "Fannie Mae Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Fannie Mae. *See id.* at ¶1.2.

19.     That same day, Freddie Mac filed a proof of claim in the amount of $16,100,024.63 (the "Freddie Mac Claim"), a portion of which was attributable to breach of warranty and indemnification causes of action (the "Freddie Mac Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Freddie Mac. *See Claim No. 33576 at ¶8.*

20.     On January 22, 2014, LBHI, Fannie Mae, and non-debtors Aurora Commercial Corporation and Aurora Loan Services LLC, entered into a settlement agreement  (the "Fannie Mae Settlement Agreement") settling the Claim.  A copy of the Settlement Agreement is annexed hereto as *Exhibit C1*. Lehman Bank was not a party to the Settlement Agreement. See *Exhibit C1.*

21.     On February 12, 2014, those same parties entered into a settlement agreement (the "Freddie Mac Settlement Agreement") settling the Freddie Mac Claim. See *Exhibit C2.*

22.    As part of the Settlement Agreement, both agencies agreed to turn over documents to LBHI evidencing their claims, and to "sell, assign, or otherwise transfer" any claims that Fannie Mae held against the originating lenders. See *Exhibit C1* at ¶3.1; page 5; See *Exhibit C2 at ¶2.2(b); 4.1.*

23.    On January 23, 2014, LBHI filed a motion by order to show cause seeking the Court's approval of the Settlement Agreement. *See Docket #42153*.

24.    In its motion, LBHI alleged that settling the Breach of Warranty Claims would enable LBHI to pursue corresponding indemnification claims it alleged to hold against the originating lenders. See *Id.* at ¶18.

25.    On January 31, 2014, the Court entered an order approving the Settlement Agreement. *See Docket #42420.*

26.    On May 29, 2014, LBHI brought a motion (the "ADR Motion") seeking to implement Alternative Dispute Resolution Procedures and obligate certain originating lenders, including Oaktree, to participate in mediation in connection with its alleged indemnification claims. *See Docket #44450.*

27.    On June 19, 2014, a hearing (the "Hearing") was held on the ADR Motion.

28.    At the Hearing the Court communicated its inclination to grant the ADR Motion, while also agreeing to provide an "escape hatch" from mediation by entertaining applications setting forth specific reasons why a lender should be released from having to participate. Oaktree was not an original objector.

29.    On July 18, 2014, the Court entered the ADR Order.  A copy of the ADR Indemnification Procedures Order is annexed hereto as *Exhibit D.*

30.     On January 23, 2015, a letter was mailed by LBHI to Oaktree which included an Indemnification ADR Notice dated January 23, 2015; Attachment A—Loan Information; Attachment B—the June 24, 2014 Order; and Attachment C—Evidence Preservation Notice. ("Notification Letter"). Said letter also included a Document Index identifying the Bates number range and an identification of four loans which were subject to LBHI claims. A copy of the Notification Letter and accompanying attachments is annexed hereto as *Exhibit E.*

31.     In the Indemnification ADR Notice attached to the Notification Letter LBHI identified itself as an assignee of Lehman Bank's "contractual rights," however no proof of any assignment was enclosed therewith. See *Exhibit E.*

32.     The Indemnification ADR Notice attached to the Notification Letter Oaktree as required by the ADR Order, triggering Oaktree' obligation to respond within 20 days. See *Exhibit E.*

33.     LBHI also provided Oaktree with access to certain documents alleged to evidence its claims, however, the document purportedly evidencing a valid assignment of the Indemnification Rights from Lehman Bank to LBHI does not list Oaktree. Oaktree Funding Corporation has not been identified on extensive list of 4295 individually named companies whose loan purchase agreement(s) may or may not have been subject to the purported assignment. A copy of the Assignment Agreement is annexed hereto as *Exhibit F.*

34.     Oaktree now brings this Motion by Order to Show Cause seeking to vacate the ADR Order as (1) LBHI does not possess a right to be indemnified by Oaktree, and

(2) all claims assigned to LBHI by Lehman Bank and Fannie Mae are barred by the statute of limitations.

## IV.  ARGUMENT

### A)    Legal Standard Governing a Rule 60(b)(6) Motion to Vacate an Order

35.    Rule 60(b) of the Federal Rules of Civil Procedure provides grounds for a party to move the court for relief from a judgment or order.

36.    A motion for relief from a judgment or order under Rule 60 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure, may be granted on various grounds, including "for . . . any . . . reason that justifies relief."  See Fed. Rules Civ. P. Rule 60(b)(6). "Relief provided under Rule 60(b) is equitable in nature and is right to be guided by equitable principles." See *Boehner v. Heise* et al., 2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009).  There must be a showing that undue hardship will not result to other parties, and the movant must demonstrate that he possesses a meritorious defense.  Id at *12.

37.    Oaktree submits that it has a meritorious defense as LBHI does not possess any enforceable claims against it as a matter of law.  For that reason, granting the Motion would not create undue hardship for LBHI as it does not possess any claims to be mediated, while denying the Motion and preserving Oaktree's obligation to participate  in mediation, would create undue hardship for Oaktree.

### B)    LBHI Lacks Indemnification Rights

38.    The Indemnification Provision, from which the Indemnification Rights purportedly arise, provides as follows:

[Oaktree] shall indemnify [Lehman Bank] and [Lehman Bank's] designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages . . . that [Lehman Bank] may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to the Seller's Guide or the Loan Purchase Agreement. . . It is understood and agreed that any subsequent holder of any Note acquired hereunder by [Lehman Bank] shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. Exhibit B at §711.

39.     "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Associates, Ltd. v. AGS Computers, Inc*., 74 N.Y.2d 487, 492 (N.Y. 1989).

40.     Applying this well settled principal, a strict reading of the Indemnification Provision makes clear that Oaktree is agreeing to indemnify (1) Lehman Bank; (2) Lehman Bank's designee; and (3) a subsequent holder of any Note, from any damages that Lehman Bank may sustain. See *Exhibit B* at §711.

41.     As LBHI was not a party to the Loan Purchase Agreement, and does not allege to be the current holder of any Note, one can only conclude that LBHI is attempting to claim indemnification rights as the designee of Lehman Bank.

42.     As LBHI is not a party to the Loan Purchase Agreement the Court must be particularly strict when construing the Indemnity Provision.   See *Security National Mortgage Co*., supra at *35 ("When an unnamed party asserts coverage by an indemnification provision, the New York courts are particularly strict."); see also *Tonking v. Port Authority of N.Y.* and N.J., 3 N.Y.3d 486, 821 N.E.2d 133, N.Y.S.2d 708 (N.Y. 2004); *Solomon v. City of New York*, 11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App. Div. 1985), aff'd, 70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987).

8

43.     In addition to the above Indemnification Provision, the portion of the Seller's Guide provided to Oaktree also contained a provision governing a potential assignment of the Indemnification Rights by Lehman Bank.

44.     Section 713.3 of the Seller's Guide reads as follows:

[Lehman Bank] shall have the right to assign its right and duties under the Loan Purchase Agreement and this Seller's Guide to any party without the consent of [Oaktree].    [Lehman Bank] **shall notify** [Oaktree] in writing of any such assignment. . . . [Lehman Bank] may also assign separately to any other party any or all representations, warranties or covenants . . . along with any or all . . . remedies available . . . for breach of any representations, warranty or covenant hereunder, including, without limitations, the repurchase and indemnification remedies.  Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies.  Id. at §713.3.

45.     Thus, while Lehman Bank's contractual rights were freely assignable, Lehman Bank was required to provide Oaktree with written notice of any such assignment. *See Id.*

46.     As set fully set forth hereafter, LBHI does not possess a right to be indemnified by Oaktree as (1) there is no evidence that Lehman Bank validly assigned the Indemnification Rights pursuant to any particular Loan Purchase Agreement between Oaktree and Lehman Brother's Bank FSB to LBHI; (2) notwithstanding the lack of proof of a valid assignment of the Loan Purchase Agreement or other valid assignment, Lehman Bank did not possess any claim for indemnification against Oaktree as a matter of law and therefore could not have assigned Indemnification Rights greater than its own; (3) LBHI could not have received an assignment of indemnification rights or claims from either agency as their rights to indemnification were not assignable without corresponding assignments of the Notes; and (4) Oaktree Funding Corporation has not

been identified on extensive list of 4295 individually named companies whose loan

purchase agreement(s) may or may not have been subject to the purported assignment.

> **i)      There is No Evidence that Lehman Bank Validly Assigned Indemnification Rights to LBHI**

47.      In this dispute LBHI claims to be an assignee of Lehman Bank's

Indemnification Rights.  See *Exhibit F.*

48.      Pursuant to the Seller's Guide, however, (portions of which were provided

to Oaktree by LBHI), Lehman Bank was required to provide written notice to Oaktree of

any such assignment.  See *Exhibit B* at §713.3.

49.      Despite opportunities to produce evidence of a valid specific assignment

of any particular Loan Purchase Agreement and the corresponding Seller's pertaining to

Oaktree, as well as a copy of a *written notice* of any such assignment (i.e. either enclosed

with the Demand Letter or amongst the documents provided in support of its ADR

Indemnification Notice), LBHI has failed to provide such proof.  See *Exhibits E and F.*

50.      The purported assignment does not specify which Loan Purchase

Agreement between Lehman Bank and Oaktree is applicable but merely generally

references "Loan Purchase Agreements" in the WHEREAS section and attaches a list of

hundreds of lenders it purports the assignment of "contractual rights" pertains to leaving

the assignment not only too vague to apply to Oaktree. Moreover, the <u>assignment names</u>

<u>the entities of OakTreeLending.Com LLC and Oakwood Financial Corp. within its</u>

<u>Schedule A of the purported assignment but fails to name Oaktree Funding Corporation</u>.

See *Exhibit F.*

51.    The Indemnification Provision in the Sellers Guide is unambiguous in that Oaktree is only obligated to indemnify Lehman Bank, Lehman Bank's designee, and subsequent holders of the Notes. See *Exhibit B* at §711.

52.    Therefore, without proof of a valid assignment of a particular Loan Purchase Agreement and its terms and a corresponding Seller's Guide pertaining specifically to Oaktree and the purported assignment's failure to name any loan purchase agreement related to Oaktree Funding Corporation, LBHI has failed to establish that it is a designee of Lehman Bank entitled to assert the Indemnification Rights.

53.    On that basis, the ADR Order should be vacated and Oaktree should be relieved of its obligations to participate in mediation thereunder.

**ii)    Notwithstanding the Lack of Proof of a Valid Assignment, Lehman Bank Had No Claim for Indemnity to Assign**

54.    Regardless of whether the assignment of Lehman Bank's Indemnification Rights to LBHI can be proven to be valid, it is submitted that Lehman Bank had no claim for indemnity to assign as a matter of law.

55.    As previously noted, LBHI purports merely to be an assignee of Lehman Bank's "contractual rights" against four thousand two hundred ninety five (4,295) lenders, and the Loan Purchase Agreements between Lehman, ALS and Oaktree.[1]  See *Exhibit F*.

55.    As a "stranger" to all of the  Loan Purchase Agreements and incorporated Sellers Guides  and  a  purchaser  "without recourse" as to Lehman Bank, LBHI has no enforceable rights or remedies against Lehman Bank.   Therefore, it must be

---

[1] Upon information and belief, LBHI does not purport to have taken assignment of the June 23, 2003 Loan Purchase Agreements. Notably, the June 23, 2003 Loan Purchase Agreements are not listed as an asset or as an executory contract in LBHI's amended Bankruptcy schedules. *See Docket #3936.*

determined whether Lehman Bank possessed and, in turn, could have assigned an enforceable right or remedy against Oaktree. *Security National Mortg.* Co., 2014 U.S. Dist. LEXIS 177481 at *43.

56.    Upon information and belief LBHI has asserted that Lehman Bank sold the loans it purchased from Oaktree to LBHI "without recourse" in exchange for full compensation.   See *Security National Mortg. Co*., 2014 U.S. Dist. LEXIS 177481 at *10-*11 ("When each of the Loans [were] sold by Lehman Bank to LBHI, Lehman Bank was fully compensated, i.e., at the time of the sale Lehman Bank was paid in full the amount that it had expended in each of the Loans"); Docket #47-7 ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI  were  non-recourse,  such that  LBHI  did  not  have  remedies  against  LBB  for  any deficiencies of the Residential Mortgage Loans.").

57.    Upon information and belief, these transactions were "established to protect the capital of Lehman Bank, and thereby enhance its loan purchasing capacity so as to be able to buy more loans for sale to, and for the benefit of, LBHI." *Security National Mortg. Co.,* 2014 U.S. Dist. LEXIS 177481 at *13.

58.    Under this system Lehman Bank could not suffer any loss from a loan that it sold to LBHI. *Id.* at *12.

59.    "It is elementary ancient law that an assignee never stands in any better position than his assignor.  He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor."  See *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc*., 36 N.Y.2d 121, 126 (N.Y. 1975).

60.    Indeed, it is well settled that "[t]he assignment of rights does not alter the nature of the rights assigned; the assignee merely stands in the shoes of the assignor." *Badiak v. White Plain Kensington*, LLC, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011)

61.    Here, Oaktree agreed to certain obligations including repurchase, cure and indemnification as remedies for Lehman Bank for damages incurred in connection with its purchase of mortgage loans. See Exhibit B at §710 and 711.

62.    However, pursuant to the manner by which Lehman Bank and LBHI structured their transactions, Lehman Bank did not, and could not, incur any damages from its subsequent sale of these loans to LBHI.  See Docket #47-7 ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

63.    As any obligation to indemnify, whether a remedy or pursuant to an indemnification agreement, extends only to those damages an entity is legally obligated to pay. Thus, it naturally follows that a release discharging all liability relieves the duty of indemnification because it effectively eliminates any factual or legal grounds on which the duty or obligation to indemnify may be based.  *Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co.*, 55 A.D.3d 671, 673-674 (N.Y. App. Div. 2d Dep't 2008) (citing *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 40 A.D.3d 978, 980 (N.Y. App Div. 2d Dep't 2007) and quoting *McDonough v.. Dryden Mut. Ins. Co*., 276 A.D.2d 817, 818 (N.Y. App. Div. 2d Dep't 2000)).

64.    Applying these principals to the matter at hand, it is clear that Lehman Bank's sale of the mortgage loans to LBHI "without recourse" for full compensation

relieved Oaktree of its duty to repurchase or indemnify Lehman Bank as a matter of law. See *Security National Mortg. Co*., 2014 U.S. Dist. LEXIS 177481 at *43 (finding that Lehman Bank had no rights, damages, or claims it could assert against the mortgage originator under an indemnification provision in a Loan Purchase Agreement at the time of its assignment of rights to LBHI, and therefore no indemnifications rights could be asserted against the originating lender by LBHI).

65.    Lehman Bank could not assign Indemnification Rights greater than those  it possessed as a matter of law. *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc*., 36 N.Y.2d at 126; *Badiak v. White Plain Kensington, supra*, at p. 768.

66.    On that basis, Oaktree respectfully submits that the ADR Order should be vacated, relieving Oaktree from its obligation to participate in mediation thereunder.

### iii)    LBHI Could Not Have Received an Assignment of Indemnification Rights or Claims from Fannie Mae as those Claims are not Assignable Without Corresponding Assignments of the Notes

67.    While LBHI does not purport to have received its Indemnification Rights from either agency, as fully set forth hereafter, Fannie Mae nor Freddie Mac could have assigned said rights and claims (the "Indemnification Rights and Claims") to LBHI as their respective Indemnification Rights and Claims arose exclusively from status as holders of the Notes.

68.    Pursuant to the Indemnification Provision (in Section 711 of the partial Seller's Guide provided to Oaktree), the agencies possessed Indemnification Rights against Oaktree as the "subsequent holder of any Note." See *Exhibit B* at ¶711.

69.    Upon information and belief, however, no clause contained in the Indemnification Provision, or anywhere else in the Seller's Guide, provided that those

Indemnification Rights could be assigned by a holder of the Notes without an accompanying assignment of those Notes.  See generally *Exhibit B*.

70.     Significantly, in the Settlement Agreements, the agencies do not purport to assign any Notes to LBHI, but rather merely to "sell, assign, or otherwise transfer" any "claims" related to the any losses incurred they allegedly held against the originating lenders. See *Exhibit C1* at ¶3.1; p. 5; See *Exhibit C2* at ¶2.2 and 2.3.

71.     Furthermore, upon information and belief based on assertions by LBHI, neither agency could have assigned the Notes to LBHI as part of the Settlement Agreements as a substantial amount of the loans had already been liquidated.  *See eg., A* copy of the Loss Statements in one of the loans is annexed hereto as *Exhibit G.*

72.     While Section 711 of Seller's Guide provides that "the indemnification obligations of [Oaktree] shall survive the termination of the Seller's Guide and the related Loan Purchase Agreement," nowhere in the Seller's Guide[2] does it provide that said obligations could be independently assigned after the liquidation of the Notes. See *Id*. at §711.

73.     While it is likely that the agencies may have been able to pursue its Indemnification Rights and Claims against Oaktree after liquidating the Notes, the Seller's Guide does not support any assertion that they could or did thereafter assign its Indemnification Rights Claims to LBHI. In this instance, they both settled any deficiencies or losses with LBHI without any corresponding assignment of the notes.

74.     Therefore, as the agencies Indemnification Rights and Claims arose exclusively from its status as a holder of the Note, its failure or inability to assign the

---

[2] There is no evidence that the Loan Purchase Agreement and Seller's Guide was ever validly assigned to *Fannie Mae or Freddie Mac.*

Notes to LBHI is fatal to any allegation by LBHI that it received an assignment of the Indemnification Rights and Claims from either.

75.    Accordingly, as LBHI cannot claim to have received a valid assignment of Indemnification Rights from the Loan Purchase Agreement or Claims from the agencies, Oaktree submits that the ADR Order should be vacated.

**D)    All Claims Assigned to LBHI by Lehman Bank and Fannie Mae Are Barred by the Statute of Limitations**

76.    LBHI also purports to possess claims against Oaktree for breach of warranty (the "Breach of Warranty Claims").

77.    Upon information and belief, LBHI alleges to have obtained Breach of Warranty Claims (1) through the alleged assignment of Lehman Bank's "contractual rights," and (2) the Settlement Agreement with Fannie Mae.

78.    Regardless of how LBHI obtained its Breach of Warranty Claims, however, all claims are barred by the statute of limitations as a matter of law.

79.    In New York, a cause of action for breach of contract accrues at the time of the breach, even if no damages occur until later.    *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993) "[T]he Statute runs from the time of the breach though no damage occurs until later." (6 Williston, Contracts § 2004, at 5641 [rev. ed. 1938], (quoted in McLaughlin, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C203:1, at 143)).

80.    New York law defines breach as when the party "possesses the legal right to demand payment" or when it first could have made the demand. See e.g., *State v. City of Binghamton*, 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive Warehouse, Inc. v. Oaktree Zurich Insurance Co.*, 2012, 18 N.Y.3d 765, 944 N.Y.S.2d

742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney); *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., No.* 13 CIV. 6482 PAC, 2014 WL 3819356, at *4 (S.D.N.Y. Aug. 4, 2014) (citing *Ace Sec. Corp. Home Equity Loan Trust, Series 2007 – HE3 v. DB Structured Prods., Inc.,* No. 13 CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar 20, 2014)); *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.,* No. 12-CV-6168, 2014 WL 1259630, at *3.

81.    Per New York law, the cause of action does not accrue when party actually makes a demand, chooses to seek a remedy, discovered the alleged breach, or when a party is injured.  *Lehman XS Trust,* Series 2006-4N ex rel. U.S. Bank Nat. Ass'n *v. Greenpoint Mortgage Funding, Inc.,* 991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014); *Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Products*, Inc., 958 F. Supp. 2d 488, 500 (S.D.N.Y. 2013); *ABB Indus. Sys., Inc. v. Prime Tech*., Inc., 120 F.3d 351, 360 (2d Cir. 1997); *Structured Mortgage Trust 1997-2 v. Daiwa Fin. Corp., No.* 02 CIV. 3232 (SHS), 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003).

82.    Further, when the breach involves a sum of money owed pursuant to a contract, the accrual is also when the "legal right to make a demand is originally possessed". *See e.g., State v. City of Binghamton,* 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive Warehouse, Inc. v. American Zurich Insurance Co.,* 2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney).

83.    It is well settled that a breach of warranty claim arising out of a loan purchase agreement against a mortgage loan originator occurs at the time the loans are delivered to the purchaser because that is when the representations and warranties were

breached as they were false when first made. See, e.g., *ACE Sec. Corp. v. DB Structured Prods., Inc., 112* A.D.3d 522, 523 (N.Y. App. Div. 1st Dep't 2013); *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.,* 793 F. Supp. 2d 1189 (W.D. Wash. 2011); *Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp.,* 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003); *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v Nomura Credit & Capital, Inc.,* 39 Misc. 3d 1226(A) (N.Y. Sup. Ct. 2013).

83.    Furthermore, the accrual date of the statute of limitations cannot be extended by delaying a demand for payment. See *Aurora Commer. Corp. v. Std. Pac. Mortg.,* 2014 U.S. Dist. LEXIS 36150, 14-15 (D. Colo. Mar. 19, 2014). And, a Court cannot interpret a provision such that it waives or extends the time from when a period of limitation is computed as it is against public policy. *John J. Kassner & Co. v. City of N.Y.,* 46 N.Y. 2d 544, 551 (1979).

84.    Moreover, an originating lender's failure to timely repurchase a loan or to provide indemnification does not constitute a separate breach of the loan purchase agreement for statute of limitations purposes because New York law does not recognize pre-suit remedial provisions as constituting separate causes of action. *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.,* 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014)) ("'[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused. This issue has been repeatedly addressed and resolved [by New York courts.]")

85.    New York case law has found there are no practical differences between remedies when they all seek monetary damages. *Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Products, Inc*., 958 F. Supp. 2d 488, 501 (S.D.N.Y. 2013).

86.    Here, three of the four Purchase Advise statements supplied by LBHI in connection with its claim conclusively establish that all loans giving rise its Breach of Warranty Claims were sold by Oaktree to Lehman Bank between June 16, 2006 and April 4, 2007.  See *Exhibit H* (copies of the Purchase Advise statements).

87.    Therefore, as the Breach of Warranty Claims accrued upon the delivery of these loans to Lehman Bank, the six-year statute of limitations expired as to the entirety of these loans on April 4, 2013.

88.    The fact that LBHI received an assignment of claims from the agencies does not change this result as an assignee's rights can be no greater than those of the original assignor, see *Long Island Radiology v. Allstate Ins. Co*., 36 A.D.3d 763, 765 (N.Y. App. Div. 2d Dep't 2007), and therefore for statute of limitations purposes any cause of action against Oaktree would have accrued when it would have accrued for Lehman Bank, no later than the date of sale of any of the enumerated loans. See *Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854, 856 (N.Y. Sup. Ct. 1977) (dismissing a claim as untimely as a statute of limitations defense binds an assignee).

89.    The fact that LBHI furnished consideration in exchange for Breach of Warranty Claims also does not change this result as, without a contractual right to be indemnified by Oaktree, LBHI is merely entitled to subrogation of the same rights and

defenses possessed by the agencies. See *Great American Ins. Co. v. United States*, 575 F.2d 1031, 1034 (2d Cir. 1978) ("Subrogation is based upon the principle of indemnity but is an exclusively derivative remedy.").

90.     Therefore, as the Breach of Warranty Claims held by either agency are subject to a statute of limitations defense, those claims, known to both Fannie Mae and Freddie Mac in 2009 when they filed the claims herein, are still subject to those limitations after the claims were in the hands of LBHI. *See Id.*

91.     On that basis, Oaktree respectfully submits that the entirety of LBHI's Claims are barred by the statute of limitations as a matter of law, and therefore the ADR Order should be vacated.

## V.  CONCLUSION

92.     LBHI holds neither Indemnification Rights nor Breach of Warranty Claims against Oaktree as a matter of law.   There is no evidence that Lehman Bank ever validly assigned its Indemnification Rights to LBHI, especially since Oaktree Funding Corporation does not appear on the list of 4295 entities whose agreements were purportedly assigned from Lehman Brothers Bank to LBHI.  Notwithstanding that fact, Lehman Bank did not possess any Indemnification Rights to assign to LBHI as Lehman Bank was fully compensated, without recourse, upon selling the subject loans to LBHI. Fannie Mae could not have assigned its Indemnification Rights and Claims to LBHI as the Indemnification Provision did not provide for Indemnification Rights to be assignable by a subsequent holder of the Notes without a corresponding assignment of said Notes and they did not assign the Notes to LBHI. Furthermore, any Breach of Warranty Claims

assigned by Lehman Bank or Fannie Mae to LBHI are barred by the expiration of the statute of limitations.

93.     Accordingly, LBHI has does not have any claims against Oaktree and participating in mediation concerning those claims is unwarranted.

94.     Therefore, Oaktree respectfully submits that this Court should vacate the ADR Order.

**WHEREFORE,** Oaktree requests an order granting its motion in its entirety, along with any other and further relief as the Court deems just and proper.

Dated: March 30, 2015

/s/ Evans Prieston
Evans Prieston, Esq
Tracy L. Henderson, Esq
(*Admitted Pro Hac Vice*)
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for Oaktree Mortgage Company*