# Exhibit A



# LEHMAN BROTHERS BANK, FSB

## LOAN PURCHASE AGREEMENT

## (SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of 6/25, 2003 [Seller No. 8464], by and between Lehman Brothers Bank FSB, having an office at 921 North Orange Street, Wilmington, Delaware 19801 ("LBB") and OAKTREE FUNDING CORPORATION having an office at 312 N. MOUNTAIN AVENUE, UPLAND CA 91786 (the "Seller").

W I T N E S S E T H:

WHEREAS, the Seller desires to sell, from time to time, to LBB, and LBB desires to purchase, from time to time, from the Seller, certain conventional, adjustable and/or fixed-rate residential mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis, on various dates (each a "Purchasing Date") as provided in the Aurora Loan Services Inc. Seller's Guide, as amended from time to time (the "Seller's Guide");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a valid lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, LBB and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller's Guide; and

WHEREAS, this Agreement is the "Loan Purchase Agreement" referred to in Section 100 of the Seller's Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LBB and the Seller agree as follows:

SECTION 1. Agreement to Purchase. The Seller agrees to sell, and LBB agrees to purchase, from time to time, Mortgage Loans as further described in the related Purchase Advice and the related servicing rights thereto, pursuant to the terms and conditions of the Seller's Guide.

SECTION 2. Incorporation of Seller's Guide; Conflicts; Seller Agreement. The terms and provisions of the Seller's Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of this Agreement. In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller's Guide and any of the provisions of this Agreement, the provisions of this Agreement shall control and be binding upon LBB and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller's Guide and (ii) agrees to be bound by the terms and conditions set forth therein.

SECTION 3. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. Successors and Assigns; Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and LBB and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of LBB.

# LEHMAN BROTHERS BANK, FSB

SECTION 5. Defined Terms. Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller's Guide.

SECTION 6. Costs. All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller's Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. Notices. All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller's Guide if to LBB, and (ii) as follows if to the Seller:

Attn.: RAY SCOTT
OAKTREE FUNDING CORPORATION
312 N. MOUNTAIN AVENUE
UPLAND, CA 91786

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 8. Governing Law. **This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.**

SECTION 9. Waivers. No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. Reproduction of Documents. This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. Further Agreements. The Seller and LBB each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller's Guide.

SECTION 12. Confidentiality. The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller's Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without LBB's consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

# LEHMAN BROTHERS BANK, FSB

SECTION 13. State of Incorporation. The Seller is duly organized validly existing and in good standing under the laws of the state of CALIFORNIA.

SECTION 14. Restrictions on Publicity. Without the prior written consent of ALS, Seller shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, or otherwise identify ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, in Seller's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Seller or in any proposals to prospective borrowers, brokers, clients or appraisers.

IN WITNESS WHEREOF, the Seller and LBB have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS BANK, FSB
(Purchaser)

By: ____________________
Name: RICK W. SKOGG
Title: VICE PRESIDENT

(Seller)

By: ____________________
Name: RAY SCOTT
Title: PRESIDENT




# LOAN PURCHASE AGREEMENT

## (SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of 6/25/, 2003, [Seller No. 8166], by and between Aurora Loan Services Inc., having an office at 2530 S. Parker Road, Suite 601, Aurora, Colorado 80014 ("ALS") and OAKTREE FUNDING CORPORATION having an office at 312 N. MOUNTAIN AVENUE UPLAND CA 91786 (the "Seller").

W I T N E S S E T H:

WHEREAS, the Seller desires to sell, from time to time, to ALS, and ALS desires to purchase, from time to time, from the Seller, certain conventional, adjustable and/or fixed-rate residential mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis, on various dates (each a "Purchasing Date") as provided in the Aurora Loan Services Inc. Seller's Guide, as amended from time to time (the "Seller's Guide");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a valid lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, ALS and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller's Guide; and

WHEREAS, this Agreement is the "Loan Purchase Agreement" referred to in Section 100 of the Seller's Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ALS and the Seller agree as follows:

SECTION 1. Agreement to Purchase The Seller agrees to sell, and ALS agrees to purchase, from time to time, Mortgage Loans as further described in the related Purchase Advice and the related servicing rights thereto, pursuant to the terms and conditions of the Seller's Guide.

SECTION 2. Incorporation of Seller's Guide; Conflicts; Seller Agreement. The terms and provisions of the Seller's Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of this Agreement. In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller's Guide and any of the provisions of this Agreement, the provisions of this Agreement shall control and be binding upon ALS and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller's Guide and (ii) agrees to be bound by the terms and conditions set forth therein.

SECTION 3. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. Successors and Assigns, Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and ALS and their



respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of ALS.

SECTION 5. Defined Terms. Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller's Guide.

SECTION 6. Costs All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller's Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. Notices. All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller's Guide if to ALS, and (ii) as follows if to the Seller:

Attn.: RAY SCOTT
OAKTREE FUNDING CORPORATION
312 N. MOUNTAIN AVENUE
UPLAND, CA 91786

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

**SECTION 8. Governing Law. This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.**

SECTION 9. Waivers. No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. Reproduction of Documents. This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. Further Agreements. The Seller and ALS each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller's Guide.

SECTION 12. Confidentiality. The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller's Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without ALS' consent except to the



extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

SECTION 13. State of Incorporation. The Seller is duly organized validly existing and in good standing under the laws of the state of CALIFORNIA.

SECTION 14. Restrictions on Publicity. Without the prior written consent of ALS, Seller shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, or otherwise identify ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, in Seller's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Seller or in any proposals to prospective borrowers, brokers, clients or appraisers.

IN WITNESS WHEREOF, the Seller and ALS have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

AURORA LOAN SERVICES INC.
(Purchaser)

By: ______________________
Name: RICK W. SKOGG
Title: PRESIDENT

(Seller)

By: ______________________
Name: RAY SCOTT
Title: PRESIDENT



# DUAL AGREEMENT AUTHORIZATION

Dear Prospective Correspondent:

In addition to the material being provided to you by Aurora Loan Services, in connection with your application to become a Correspondent, you will also find enclosed a separate Agreement which names Lehman Brothers Bank, FSB, as the Lender. Aurora Loan Services Inc., is an affiliate of Lehman Brothers Bank, which is also in the business of making mortgage loans. In some instances, Lehman Brothers Bank, FSB, may be in a position to purchase a loan which Aurora Loan Services would not be able to purchase. This would be a "seamless" transaction from you and your client's perspective.

In order to accomplish this goal, Aurora Loan Services is requiring that you execute and return, along with all of the other material you are submitting to Aurora Loan Services, the Correspondent Agreement between your firm and Lehman Brothers Bank, FSB.

In order for Lehman Brothers Bank, FSB to do business with you, Lehman Brothers Bank will need to do a separate approval of your correspondent application. Rather than have you complete two separate applications containing the same information you are already supplying Aurora Loan Services, Aurora Loan Services will provide Lehman Brothers Bank with all application, compliance, quality control reports, agency review information, insurance and other information that Aurora Loan Services receives from you in connection with your application to become a correspondent of Aurora Loan Services (the "Correspondent Application File"). Accordingly, by countersigning a copy of this letter, you (i) authorize and direct Aurora Loan Services to provide your Correspondent Application File to Lehman Brothers Bank, FSB, and (ii) represent, warrant, covenant and agree with Aurora Loan Services and Lehman Brothers Bank, FSB, as follows:

1. The information contained in the Correspondent Loan Application File was and is true, correct and complete in all material respects both as of the date such information was provided to Aurora Loan Services and as of the date hereof;

2. You will provide Lehman Brothers Bank, FSB, with such further information, financial data and certificates as Lehman Brothers Bank may require from time to time, in order to process your application to become a correspondent. In particular, within thirty (30) days from today, you will provide Lehman Brothers Bank, FSB, with evidence of board or other corporate or partnership authority to become a correspondent.

3. Your application to become a correspondent of Lehman Brothers Bank, FSB, and your execution and delivery of this letter and the Lehman Brothers Bank Correspondent Agreement have been duly authorized by your company, and all corporate, partnership or other action necessary for such action have been taken.



Upon your approval as a Correspondent by Lehman Brothers Bank, FSB, you will be provided with an approval letter together with a correspondent identification number for your use in the Lehman Brothers Bank Correspondent Program.

We look forward to your prompt response. Please call Bruce Brunner, Vice President, National Client Relations, Aurora Loan Services Inc. at 281-858-1778 if you would like any further information.

Very truly yours,

AURORA LOAN SERVICES, INC.

LEHMAN BROTHERS BANK, FSB

Agreed, accepted and approved on the 24 day of April, 2003.

OAKTREE FUNDING CORPORATION
Correspondent Name

By: ________
Name: RAY SCOTT
Title: PRESIDENT

Dual Agreement Authorization
Revised 10/12/00