# Exhibit B

# UNDERWRITING GUIDELINES

## TABLE OF CONTENTS

**500   GENERAL POLICY**............................................................................................................................1

   500.1   **INTRODUCTION**...............................................................................................................1
   500.2   **MANAGEMENT PHILOSOPHY**.......................................................................................1

**501   ELIGIBILITY**...................................................................................................................................1

   501.1   **BORROWERS**...................................................................................................................1
       *501.1-1*    *U.S. Citizenship/Permanent Resident Aliens*............................................................1
       *501.1-2*    *Non-Permanent Resident Aliens*..............................................................................2
       *501.1-3*    *Trust Estates*.............................................................................................................3
       *501.1-4*    *Ineligible Borrowers*..................................................................................................3
       *501.1-5*    *Co-Borrowers/Co-Mortgagors/Co-Signers/Guarantors*...........................................3
       *501.1-6*    *Interested Parties*......................................................................................................4
   501.2   **OCCUPANCY**....................................................................................................................4
       *501.2-1*    *Primary Occupancy*...................................................................................................4
       *501.2-2*    *Second Home Occupancy*.........................................................................................4
       *501.2-3*    *Investment Property*..................................................................................................5
   501.3   **MULTIPLE LOANS/EXPOSURE**........................................................................................5
   501.4   **MULTIPLE PROPERTIES**..................................................................................................5
   501.5   **LANDLORD EXPERIENCE**................................................................................................6
   501.6   **TRANSACTIONS**...............................................................................................................7
       *501.6-1*    *Purchase Transactions*.............................................................................................7
       *501.6-2*    *Refinance Transactions*............................................................................................7
          501.6-2-1    ***Rate/Term Refinance***...........................................................................8
          501.6-2-2    ***Expanded Rate/Term Refinance***..........................................................8
          501.6-2-3    ***Debt Consolidation***.............................................................................9
          501.6-2-4    ***Cash-Out Refinance***...........................................................................9
          501.6-2-5    ***Texas Refinance***.................................................................................9
       *501.6-3*    *Permanent Financing for Newly Constructed Homes*...............................................9
          501.6-3-1    ***Purchase***............................................................................................9
          501.6-3-2    ***Rate Term***........................................................................................10
          501.6-3-3    ***Expanded Rate Term***........................................................................10
          501.6-3-4    ***Cash Out or Debt Consolidation***.....................................................10
       *501.6-4*    *Wraparound Mortgage/All Inclusive Trust Deed/Land Contracts*...........................10
       *501.6-5*    *Lease-Option*...........................................................................................................11
       *501.6-6*    *Non-Arms Length Transactions (AKA Common Interest Transactions)*...................11
       *501.6-7*    *Continuity of Obligation*..........................................................................................11
       *501.6-8*    *Inherited Property*....................................................................................................13
       *501.6-9*    *Model Home Lease-Back*.........................................................................................13
   501.7   **ESCROW WAIVERS**.......................................................................................................14
   501.8   **PREPAYMENT PENALTY**................................................................................................14
   501.9   **INELIGIBLE TRANSACTIONS**........................................................................................14

**502   DOCUMENTATION**........................................................................................................................15

**503   ASSET ANALYSIS**........................................................................................................................15

   503.1   **ASSET DOCUMENTATION**..............................................................................................16
   503.2   **AGE OF ASSET DOCUMENTATION**................................................................................16
   503.3   **ACCEPTABLE FUNDS**....................................................................................................16
   503.4   **UNACCEPTABLE FUNDS**...............................................................................................17
   503.5   **BRIDGE LOAN**................................................................................................................17
   503.6   **CASH RESERVES**...........................................................................................................17
   503.7   **DOWN PAYMENT**............................................................................................................17

CONFIDENTIAL                                                                      LEH-OAK_0000012

Section 5
# UNDERWRITING GUIDELINES

| | | |
|---|---|---|
| 503.8 | **GIFT FUNDS** | 17 |
| 503.9 | **JOINT ACCOUNTS** | 18 |
| 503.10 | **SECONDARY FINANCING** | 18 |
| 503.11 | **SALES AND FINANCING CONCESSIONS** | 18 |
| 503.11-1 | *Financing Concessions* | 18 |
| 503.11-2 | *Sales Concessions or Property Inducements* | 19 |
| 503.12 | **TRADE EQUITY IRS 1031 EXCHANGE** | 19 |
| 503.13 | **UNSECURED LOANS** | 19 |
| **504** | **CREDIT ANALYSIS** | **20** |
| 504.1 | **EQUAL CREDIT OPPORTUNITY ACT** | 20 |
| 504.2 | **CREDIT ANALYSIS** | 20 |
| 504.2-1 | *Credit Report* | 20 |
| 504.2-2 | *Age of Credit Report/Credit Verifications* | 20 |
| 504.2-3 | *Credit Scoring* | 20 |
| 504.2-4 | *Evaluation of Credit* | 21 |
| 504.2-5 | *Number of Accounts* | 21 |
| 504.2-6 | *Outstanding Debt* | 22 |
| 504.2-7 | *Delinquency and Derogatory Credit* | 22 |
| 504.2-8 | *Written Explanations* | 23 |
| 504.2-9 | *Inquiries* | 23 |
| 504.2-10 | *Limited/No Credit History/Alternative Credit* | 23 |
| 504.2-11 | *Mortgage/Rental Payment History* | 23 |
| 504.2-12 | *Payment Histories* | 24 |
| 504.2-13 | *Lawsuit/Pending Litigation* | 24 |
| 504.2-14 | *Re-established Credit—not applicable on Expanded Options* | 24 |
| **505** | **EMPLOYMENT AND INCOME** | **25** |
| 505.1 | **EMPLOYMENT HISTORY** | 25 |
| 505.1-1 | *Frequent Job Changes* | 25 |
| 505.1-2 | *Gaps in Employment* | 25 |
| 505.2 | **SOURCE OF INCOME** | 26 |
| 505.2-1 | *Annuity Income* | 26 |
| 505.2-2 | *Automobile Allowance* | 26 |
| 505.2-3 | *Bonus and Incentive Income* | 26 |
| 505.2-4 | *Capital Gains* | 26 |
| 505.2-5 | *Child Support, Alimony or Maintenance Income* | 26 |
| 505.2-6 | *Commission Income* | 27 |
| 505.2-7 | *Disability Income/Worker's Compensation* | 27 |
| 505.2-8 | *Dividend/Interest Income* | 27 |
| 505.2-9 | *Employed by a Relative* | 28 |
| 505.2-10 | *Foreign Income* | 28 |
| 505.2-11 | *Foster Care Income* | 28 |
| 505.2-12 | *Installment Sales and Land Contracts* | 28 |
| 505.2-13 | *Military Income* | 28 |
| 505.2-14 | *Mortgage Differential Income* | 28 |
| 505.2-15 | *Note Income* | 28 |
| 505.2-16 | *Non-Taxable Income* | 29 |
| 505.2-17 | *Part-Time/Second Job and Overtime Employment* | 29 |
| 505.2-18 | *Relocating Life Partners/Trailing Co-Borrowers* | 29 |
| 505.2-19 | *Rental Income* | 29 |
| 505.2-20 | *Salaried Income/Wage Earner Income* | 30 |
| 505.2-21 | *Seasonal Income* | 30 |
| 505.2-22 | *Self-Employment Income* | 30 |
| 505.2-23 | *Social Security and Retirement Income* | 30 |

CONFIDENTIAL                                                                                          LEH-OAK_0000013

Section 5
# UNDERWRITING GUIDELINES

| | | |
|---|---|---|
| 505.2-24 | Stock Options | 31 |
| 505.2-25 | Tips and Gratuities | 31 |
| 505.2-26 | Trust Income | 31 |
| 505.2-27 | Unemployment Compensation | 31 |
| 505.2-28 | VA Survivors' Benefits/Dependant Care | 31 |
| 505.2-29 | Welfare Benefits | 31 |
| 505.3 | EMPLOYMENT/INCOME DOCUMENTATION | 32 |
| 505.3-1 | Written Verification of Employment | 32 |
| 505.3-2 | Pay Stubs and W2s | 32 |
| 505.3-3 | Tax Returns | 32 |
| 505.3-4 | Verbal Verification of Employment (VVOE) | 32 |
| 505.3-5 | Age of Income Documentation | 32 |
| 505.4 | IRS 4506 | 32 |
| 505.5 | THIRD-PARTY VERIFICATIONS | 33 |
| **506** | **RATIOS AND QUALIFYING** | **33** |
| 506.1 | RATIOS | 33 |
| 506.2 | HOUSING PAYMENT TO INCOME RATIO | 33 |
| 506.3 | DEBT TO INCOME RATIO | 33 |
| 506.4 | CONTINGENT LIABILITY | 34 |
| 506.5 | DISPOSABLE INCOME (AKA RESIDUAL INCOME) | 34 |
| 506.6 | COMPENSATING FACTORS | 35 |
| **507** | **PRIVATE MORTGAGE INSURANCE** | **35** |
| 507.1 | PRIVATE MORTGAGE INSURANCE COVERAGE | 35 |
| 507.2 | ACCEPTABLE MORTGAGE INSURANCE COMPANIES | 35 |
| 507.3 | "NO MI" PRICING | 35 |
| **508** | **PROPERTY** | **36** |
| 508.1 | APPRAISER QUALIFICATIONS | 36 |
| 508.2 | APPRAISAL REPORT FORMS | 38 |
| 508.3 | AGE OF APPRAISAL | 39 |
| 508.3-1 | Appraisal Update Reporting Requirements | 40 |
| 508.4 | APPRAISAL REVIEWS | 40 |
| 508.5 | DISASTER AREAS | 40 |
| 508.6 | PROPERTY OVERVIEW | 41 |
| 508.6-1 | Homes Listed for Sale | 41 |
| 508.6-2 | Ineligible Properties | 41 |
| 508.6-3 | Land Value | 42 |
| 508.6-4 | Complex Properties | 42 |
| 508.6-5 | Limited Marketability/Unique Properties | 42 |
| 508.6-6 | Property Values | 43 |
| 508.6-7 | Rural Properties | 43 |
| 508.6-8 | Redlining Prohibition | 44 |
| 508.6-9 | Title History Review Policy | 44 |
| 508.6-10 | Acceptable Sources for Title Transfer Verification | 44 |
| 508.6-11 | Required Information | 44 |
| 508.6-12 | Scenarios and Required Actions | 44 |
| 508.7 | PROPERTY CONSIDERATIONS | 45 |
| 508.7-1 | Condominium | 45 |
| 508.7-1-1 | **Condominium Project Reviews** | 46 |
| 508.7-1-1-1 | FNMA 1028 | 46 |
| 508.7-1-1-2 | FHA Approved Projects | 46 |
| 508.7-1-1-3 | Lender Delegated Limited Review | 46 |
| 508.7-1-1-4 | FNMA Type A/FHLMC Class III | 46 |

CONFIDENTIAL                                                         LEH-OAK_0000014

| | | |
|---|---|---:|
| 508.7-1-1-6 | Site Condominiums | 47 |
| 508.7-1-1-7 | Non-Warrantable Condominiums | 47 |
| 508.7-1-1-8 | Non-Warrantable Projects with Less than Ten Units | 47 |
| 508.7-2 | Condotels | 48 |
| 508.7-3 | Cooperative | 48 |
| 508.7-4 | Dampness | 49 |
| 508.7-5 | Deferred Maintenance | 49 |
| 508.7-6 | Earthquake Area/Seismic Study Zone | 49 |
| 508.7-7 | Electrical Systems | 49 |
| 508.7-8 | Environmental Hazards | 49 |
| 508.7-9 | Escrows for Work Completion | 49 |
| 508.7-10 | Factory-Built Housing | 50 |
| 508.7-11 | Flood Zone | 50 |
| 508.7-12 | Foundation Settlement | 50 |
| 508.7-13 | Heating Systems | 51 |
| 508.7-14 | Non-Permitted Addition/Granny or In-Law Units | 51 |
| 508.7-15 | Insulation | 51 |
| 508.7-16 | Leasehold Property | 51 |
| 508.7-17 | Mixed-Use Properties | 52 |
| 508.7-18 | Multiple Dwellings on One Lot | 53 |
| 508.7-19 | Pest Infestation | 53 |
| 508.7-20 | Plumbing | 53 |
| 508.7-21 | Private Roads | 53 |
| 508.7-22 | PUD (Planned Unit Development) | 53 |
| 508.7-23 | Repair Requirements | 53 |
| 508.7-24 | Sewage Disposal System | 54 |
| 508.7-25 | Townhouse/Row House/Single Family Attached Housing | 54 |
| 508.7-26 | Unconventional Floor Plans | 54 |
| 508.7-27 | Water Supply | 54 |
| 508.7-28 | Zoning and Land-Use Regulations | 54 |
| 508.8 | **VALUE AND MARKETABILITY CONSIDERATIONS** | 55 |
| 508.8-1 | Neighborhood Analysis | 55 |
| 508.8-2 | Compatibility of Subject Property and Neighborhood | 55 |
| 508.9 | **APPROACHES TO VALUE** | 55 |
| 508.9-1 | Cost Approach to Value | 55 |
| 508.9-2 | Sales Comparison Approach to Value | 56 |
| 508.9-3 | Income Approach to Value | 56 |
| 508.10 | **MARKET RESTRICTIONS** | 56 |

CONFIDENTIAL                                                          LEH-OAK_0000015

# UNDERWRITING GUIDELINES

## 500    GENERAL POLICY

### 500.1    INTRODUCTION

These underwriting guidelines apply to all conventional loan programs. Each program has a separate Program Profile that describes additional details about the program eligibility. Determining a loan's acceptance requires review of both the Underwriting Guidelines and the Program Profile.

Unless stated otherwise in the applicable Program Profile or elsewhere within this section, all guidelines stated here apply across all product lines.

### 500.2    MANAGEMENT PHILOSOPHY

Our underwriting philosophy is to weigh all the risk factors inherent in the loan file. Consideration is given to the individual transaction, applicant profile, level of documentation provided and the property used to collateralize the debt. Loan requests should be commensurate with the applicant's financial patterns/habits. Because each loan is unique and underwriting is an art, not a science, underwriters are expected and encouraged to use professional judgment in making a lending decision.

The risk involved with a loan decision must be kept in perspective. One means of maintaining this perspective is by clearly defining eligible borrowers, properties and transaction types while placing restrictions on transactions that pose a higher risk. Certain characteristics of the transaction are indicators of risk such as occupancy, loan amount, purpose, product type, property type, loan amount size in relation to borrower's previous credit depth and LTV. Risk will be mitigated, in part, by requiring a higher equity or additional documentation. Files will be reviewed to ensure all requests make sense based on all factors present in the loan request package. Underwriters are discouraged from approving loan requests that may impose undue hardship on the applicant or jeopardize the applicant's ownership position in the property.

Our commitment to fairness and equal opportunity is clear and unequivocal. All loan applications considered for denial will be subject to a second review prior to a final decision. In keeping with that commitment, all customers will be treated in a fair and consistent manner. All customers should receive the same level of service. Discrimination based on race, color, sex, sexual orientation, disability, national or ethnic origin, marital or familial status, religion or age is against company policy and unlawful.

## 501    ELIGIBILITY

### 501.1    BORROWERS

#### U.S. Citizenship/Permanent Resident Aliens

##### 501.1-1

U.S. citizens and permanent resident aliens with an Alien Registration Card ("Green Card") are eligible for financing.

If the borrower is a permanent resident alien, the file must contain evidence of lawful permanent residency. Acceptable evidence consists of a *completed Certification of Residency, Form 408,* completed by the processor or underwriter certifying the borrower's Alien Registration information has been reviewed and meets one of the following criteria:
1. Alien Registration Card with 10-year expiration date printed on the front of the card

CONFIDENTIAL

LEH-OAK_0000016

# UNDERWRITING GUIDELINES

but no expiration date on the back;

2.  Alien Registration Receipt Card (I-551) with expiration date and copy of unexpired Bureau of Citizenship and Immigration Services (BCIS) Form 1-751;
3.  Unexpired foreign passport with unexpired stamp reading, "processed for I-551";
4.  Temporary Evidence of Lawful Admission for Permanent Residence.  Valid until (MM-DD-YY). Employment authorized;
5.  Any other BCIS-issued evidence.

Alternative documentation includes a copy of the borrower's Alien Registration, which if obtained must be retained in the file.

Verification of the borrower's identity is for the sole purpose of establishing their ability to lawfully reside in the U.S.  It will not be used to determine credit worthiness of the borrower.

Note:  Aurora reserves the right to require copies of the borrower's government-issued photo identification (i.e., driver's license, military ID, VISA, etc.) on any borrower, regardless of citizenship.  A copy of the photo ID will not be a condition for extending credit, but will be required as proof of identity should there be a cause for it during the underwriting or closing process.  If a copy of the borrower's identification is obtained, it will be retained in the file.  In addition, this information will not be used for HMDA data collection.  Clients must continue to provide the HMDA information on the Registration Form.

## 501.1-2    Non-Permanent Resident Aliens

Unless otherwise stipulated in the Program Profile, a non-permanent resident alien is eligible for financing under the same terms and conditions offered to U.S. citizens and permanent resident aliens.  The borrower must be employed in the U.S. In addition, income and residency in the U.S. must be likely to continue for at least three years. Refer to Program Profile for exceptions.  Borrowers with diplomatic immunity are not eligible.

All files must contain evidence the borrower is lawfully permitted to reside in the United States.  Acceptable evidence consists of a *completed Certification of Residency, Form 408,* completed by the processor or underwriter certifying the borrower's alien registration information has been reviewed and indicates borrower is a lawful temporary resident alien. Alternative documentation includes a copy of the borrower's Alien Registration, which if obtained must be retained in the file.  Borrowers with one of the following Visa status are generally considered lawful non-permanent resident aliens: H-1; H-2A; H-3; L-1; E-1; and G series. If the borrower's Visa expires within three years, the borrower may still be eligible for financing if a letter is provided from either the borrower's employer or attorney indicating that they will be working with the BCIS in extending the Visa expiration.

Verification of the borrower's identity is for the sole purpose of establishing their ability to lawfully reside in the U.S.  It will not be used to determine credit worthiness of the borrower.

Note:  Aurora reserves the right to require copies of the borrower's government-issued photo identification (i.e., driver's license, military ID, VISA, etc.) on any borrower, regardless of citizenship.  A copy of the photo ID will not be a condition for extending credit, but will be required as proof of identity should there be a cause for it during the underwriting or closing process.  If a copy of the borrower's identification is obtained, it will be retained in the file.  In addition, this information will not be used for HMDA data

CONFIDENTIAL                                                                                    LEH-OAK_0000017

# UNDERWRITING GUIDELINES

collection.  Clients must continue to provide the HMDA information on the Registration
Form.

501.1-3    **Trust Estates**
Unless otherwise stipulated in the Program Profile, title may be taken in the name of a
trustee for the following trust types:
1.  An Inter Vivos Trust, which is a revocable trust created while the donors are still alive
    to hold property for the benefit of themselves during their lifetime.  An Inter Vivos
    Trust is also called a Living Trust.
2.  A Land Trust, which is a revocable trust, is a living trust used to title ownership of real
    estate. Title to the property is held in the name of an institutional trustee.    Land
    Trusts were first used in Illinois, hence the nickname, "Illinois Land Trust."  Not
    eligible in Louisiana or Tennessee.
3.  A Blind Trust, which as used here, is a trust where the borrower/settlor assigns
    trustee responsibilities to another party, in order for the borrower's identity to remain
    confidential. In all other respects, it is the same as an Inter Vivos Trust. Other types
    of Blind Trusts – all of which are NOT acceptable – include trusts in which the
    beneficiaries or settlor do not have knowledge of the trust's specific assets, and in
    which a fiduciary third party has complete management discretion.

Due to the complex nature of trusts, Aurora has developed two sets of checklists which
outline full eligibility criteria.  To determine if the trust itself is eligible, underwriters must
complete Form 407, Inter Vivos Revocable Trust, Blind Trust and Land Trust–Review of
Trust.  To address closing document requirements, the appropriate checklist must be
reviewed and completed:
1.  Inter Vivos Revocable Trust – Closing Document Review, Form 407-LivT
2.  Land Trust – Closing Document Review, Form 407-LandT
3.  Blind Trust – Closing Document Review, Form 407-BT

501.1-4    **Ineligible Borrowers**
Due to the inability to compel payment or seek judgment, the following are not eligible for
financing:
1.  Borrowers with diplomatic immunity or otherwise excluded from U.S. jurisdiction.
2.  Limited partnerships, general partnerships, corporations.
3.  Foreign nationals
4.  Guardianships
5.  Conservatorships
6.  Borrowers with limited or no capacity to enter into a contract

501.1-5    **Co-Borrowers/Co-Mortgagors/Co-Signers/Guarantors**
Generally, co-borrowers/co-mortgagors are applicants who will occupy the property (if
primary residence or second home), be obligated for the debt and take title to the
property.   A non-occupying co-borrower will be permitted as outlined in the applicable
Program Profile.

Non-occupying co-borrower may not be an interested party to the transactions (i.e.,
seller, builder, realtor, etc.).  The non-occupying co-borrower:
1.  Must sign the note;
2.  May, but is not required, to take title to the property.

Most programs require the occupant borrower make a minimum contribution towards the
transaction from their own resources.  Provided the file contains evidence the borrower

CONFIDENTIAL                                                        LEH-OAK_0000018

# UNDERWRITING GUIDELINES

has saved the necessary amount (see Program Profile for requirements), the down payment and closing costs may be paid from a gift or from the non-occupying co-borrower's resources.

On No Ratio loans, the occupying borrower's income source must be sufficient to reasonably support the DTI requirements of the program.

When an occupant borrower cannot meet the income or asset requirements as outlined in the applicable Program Profile, the loan will be treated as a non-owner occupied transaction.

**501.1-6**    **Interested Parties**
All parties involved on each transaction will be screened for inclusion on:
1. Freddie Mac's Exclusionary List.
2. Office of Foreign Asset Control (OFAC).
3. Purchaser's Non-Approved Parties List.

If a match is determined, the transaction may be ineligible for financing.

**501.2**    **OCCUPANCY**

**501.2-1**    **Primary Occupancy**
Primary occupancy is a one- to four-family dwelling (including condominiums and PUDs) that is occupied as the borrower's primary residence for a major portion of the year.  A typical primary residence will meet the following criteria:
1. Located within a reasonable distance to the borrower's place of employment.
2. Subject is declared as the borrower's primary residence for purposes of tax reporting, voter registration, etc.
3. Borrower(s) declare(s) his/her/their intention to occupy the subject.
4. Physical characteristics of dwelling should be sufficient to accommodate the owner's immediate family.
5. Limitations regarding the number of properties a borrower may own will be outlined in the applicable Program Profile.
6. Transactions where occupancy is questionable will be treated as non-owner occupied.

**501.2-2**    **Second Home Occupancy**
Second home occupancy is a single-family dwelling that the borrower occupies in addition to his or her primary residence.  A typical second home will meet the following criteria:
1. Located in a resort area or where the applicant regularly conducts business affairs.
2. Should be a remote distance from the borrower's primary residence.
3. The property must be suitable for year-round occupancy.
4. Property must be available for borrower's exclusive use and enjoyment.  May not be subject to any timesharing arrangements, rental pools or other agreements which require the borrower to rent the property or otherwise give control of the property to a management firm.
5. Any rental income received will not be considered in the underwriting analysis.
6. Non-Arms Length transactions are not eligible.
7. Limitations regarding the number of properties a borrower may own will be outlined in the applicable Program Profile.
8. Typically, a borrower may have only one second home.
9. Transactions where occupancy is questionable will be treated as non-owner

CONFIDENTIAL                                                    LEH-OAK_0000019

# UNDERWRITING GUIDELINES

occupied transactions.

501.2-3 **Investment Property**

Investment property is a dwelling occupied or intended to be occupied by someone other than the borrower. This definition is used whether or not income is derived from the property. Limitations regarding the number of properties a borrower may own will be outlined in the applicable Program Profile. Non-Arms Length transactions are not eligible.

Financing for investment properties is available for those borrowers who have experience as a landlord. See *Landlord Experience* topic herein for more details.

501.3 **MULTIPLE LOANS/EXPOSURE**

Unless otherwise limited in the Program Profile (see Aurora Super Advantage), Aurora will limit its financing exposure to one borrower or group of borrowers as outlined below. This includes the total of all loans to all borrowers, including existing and pending transactions. Existing transactions include loans serviced by other lenders on behalf of Aurora.

1. Maximum exposure to one borrower is $6,000,000 of which:
   a. No more than four loans total aggregate to $1,000,000 or one loan may be non-owner occupied transactions.
   b. Loans must be Alt-A or Classic once the total aggregate exposure exceeds $4,000,000.
2. In the event of a *concurrent* Piggyback transaction, the Piggyback and First Lien loan will count as one loan. Maximum dollar thresholds still apply.
3. Stand-alone transactions will be treated as an individual loan even when placed behind an existing Aurora loan.

Exceptions may be considered on a case-by-case basis through the LPER process.

| Primary Residence and Second Home | Non-Owner Occupied |
|---|---|
| $6,000,000* aggregate of all financed transactions provided by Aurora | • Four N/O/O loans not to exceed an aggregate amount of $1,000,000 provided total exposure does not exceed $6,000,000*. (Total exposure includes borrower's primary residence and second home financed transactions.); or<br>• One N/O/O if loan is >$1,000,000 provided total exposure does not exceed $6,000,000*. (Total exposure includes borrower's primary residence and second home financed transactions). |

*Note: Loans must be Alt-A or Classic once aggregate exposure exceeds $4,000,000.

501.4 **MULTIPLE PROPERTIES**

In addition to our exposure limitation, the maximum number of financed 1-4 unit properties (regardless of lending source) a borrower or group of borrowers may own may be limited. The subject property, all borrowers' primary residence and any pending financed transactions are included in this total. Exceptions may be considered on a case-by-case basis through the LPER process. Unless otherwise stipulated in the Program

CONFIDENTIAL

LEH-OAK_0000020

Section 5
# UNDERWRITING GUIDELINES

Profile, the following limitations apply:

| Primary Residence | Second Home | Non-Owner Occupied |
|---|---|---|
| No limit | Ten | Ten |

501.5    **LANDLORD EXPERIENCE**

Underwriting will take into consideration the number of properties owned and the length of time the properties have been owned. Investors who demonstrate a rapid acquisition (acquired within the most recent 24-month period) of investment properties will be reviewed cautiously. Underwriting reserves the right to request documentation to evidence the borrower had the funds required to purchase any property acquired within the last 24 months and/or sufficient verified assets to provide adequate reserves for the investment portfolio.

In addition, the file must contain evidence the borrower has sufficient experience to handle the entire investment portfolio. Loans made to borrowers owning multiple non-owner occupied properties must meet the following additional guidelines:

1. File contains documentation evidencing borrower's experience owning multiple investment properties (two years of experience required); **or**
2. Borrower has acquired or is in the process of acquiring a maximum of (including subject property, if applicable):
   a. ≤Two financed investment properties within the last six months; **and/or**
   b. ≤Four financed investment properties within the last two years.

All financed 1- to 4- unit investment properties (count properties, not units), regardless of the source of financing will be considered in the above eligibility determination.

***Aurora Expanded Options Program***: When a borrower is requesting financing for non-owner occupied properties or owns multiple non-owner occupied properties, the following criteria apply:

1. At least 50% of the properties must have been owned for two years as of the date of closing, including subject property and any concurrent transactions.
2. All financed 1- to 4- unit properties, including borrower's primary residence and regardless of the source of financing, will be considered in the above eligibility determination.

Examples of transactions considered acceptable and not acceptable are as follows:

| Ownership status | Property financing allowed/not allowed |
|---|---|
| Currently renting | Not allowed |
| Owns a primary home <2 years | Not allowed |
| Owns a primary home >2 years | May finance one property |
| Owns two homes, one <2 years | Not allowed |
| Owns two homes, both owned >2 years | May finance two properties |
| Has owned a primary residence >2 years, but sold one and bought another primary residence within the past 2 years; currently owns only the primary residence. | Continuity of primary residence ownership is allowed; borrower is eligible to finance one additional property. |
| Has owned a primary residence >2 | Not allowed, landlord experience time-frame |

CONFIDENTIAL                                                                    LEH-OAK_0000021

# UNDERWRITING GUIDELINES

| | |
|---|---|
| years, but bought another primary residence within the past 2 years, keeping the previous home as a rental. | starts when the borrower switched residences. |
| Owns six homes >2 years | May finance properties up to maximum allowed by Program Profile, subject to maximum other financed/owned property limitations. |

## 501.6    TRANSACTIONS

### 501.6-1    Purchase Transactions

A purchase transaction is one that allows one person to acquire the property from another person or entity.   A copy of the fully executed purchase contract and all attachments or addenda will be required for all purchase transactions.   Escrow instructions fully executed by all parties are acceptable as a substitute for the purchase contract.

A preliminary title report or search should be provided with all loan submissions.   See *Title History Review Policy* regarding required documentation and/or acceptable sources to satisfactorily verify property ownership and value increases for at least 24 months.

### 501.6-2    Refinance Transactions

A refinance transaction is one to replace an existing loan(s) with a new loan to current owners or to place financing on a property currently owned by the applicant where no financing exists.  Refinance transactions will be classified as one of the following:
1.   A Rate/Term.
2.   Expanded Rate/Term.
3.   Debt Consolidation.
4.   Cash Out.

In general, a refinance must put the borrower in a better position.  This can be evidenced by one or more of the following:
1.   Lower payment.
2.   Lower interest rate.
3.   Convert from ARM to fixed rate.
4.   Pay off a balloon payment.
5.   Convert from negative amortization loan to a fully-amortizing loan.
6.   Consolidate debt.
7.   Pay off tax lien.

Note:   Depending upon the property's location, additional evidence of benefit to the borrower may be required due to state or local regulations.   Please refer to the *Geographic Matrix, Form 504* or *HELOC Geographic Matrix, Form 504-HELOC* for additional details.

In addition, the new transaction will be classified according to the terms of the previous transaction if the loan being paid off is less than 12 months old.  For example, if the borrower is paying off a lien that generated cash to the borrower within the previous 12 months, the new transaction will be considered a Cash Out transaction, subject to appropriate pricing and guidelines.

Also, the cash proceeds from the previous transaction are considered in eligibility determinations for the new transaction.  For example, if the borrower received $300,000

CONFIDENTIAL                                                                                                    LEH-OAK_0000022

proceeds from a transaction within the previous 12 months, the new loan would be ineligible for a program offering a maximum $200,000 cash out limitation.

To properly identify the type of refinance transaction for the loan being paid off, a copy of the closing statement from the previous transaction may be required when the loan being paid off is less than 12 months old.

A preliminary title report or search should be provided with all loan submissions. See *Title History Review Policy* regarding required documentation and/or acceptable sources to satisfactorily verify property ownership and value increases for at least 24 months.

Typically, properties listed for sale within the six months prior to underwriting are not eligible for financing. File must contain a copy of the canceled listing. Exceptions considered on a case-by-case basis.

**501.6-2-1**    ***Rate/Term Refinance***
The mortgage amount is limited to the sum of the present first mortgage payoff, any subordinate financing which was used to acquire the property and closing costs (including prepaids). Cash to borrower is limited to the greater of 2% of the loan amount or $2000. Refer to Form 504 for Texas-specific guidelines.

**501.6-2-2**    ***Expanded Rate/Term Refinance***
Include transactions where the proceeds of the new loan will be used to pay off non-purchase money liens such as pay off of ex-spouse, subordinate liens used for home improvements or any other non-purchase purpose. See applicable Program Profile to determine which LTVs/CLTVs/HCLTVs apply.

**501.6-2-2a  Recoup Out of Pocket Expenses For Construction Costs**
If property is newly-completed and borrower chooses to document construction costs, the borrower may re-coup out-of-pocket expenses with the proceeds from an Expanded Rate/Term refinance. LTV/CLTV/HCLTV will be calculated based on the lesser of current appraised value or documented acquisition cost. Cash back to the borrower may not exceed the amount of documented costs paid out-of-pocket by the borrower. Refer to the Texas Home Equity Refinance Program Profile for Texas-specific guidelines.

**501.6-2-2b  Recoup Out of Pocket Expenses For Home Improvements Loans**
The borrower may also re-coup out-of-pocket expenses for newly renovated (within last six months) properties if the cost of improvements can be documented. Renovations must be substantial and completed prior to closing. LTV/CLTV/HCLTV will be based on the lesser of current appraised value or the original purchase price plus the cost of documented home improvements. The appraisal must reflect the value of the improvement, not the cost of improvements. Any cash back may not exceed the amount of documented renovation costs paid for by the borrower. Refer to the Texas Home Equity Refinance Program Profile for Texas-specific guidelines.

**501.6-2-2c  Financing for Properties Recently Purchased For Cash**
When providing financing for a property which was purchased using cash, the transaction may be treated as an Expanded Rate/Term refinance if all of the following are met:
1.  Application for the loan is made within 30 days from the date of purchase closing.
2.  The HUD-1 or closing statement from the purchase must evidence cash purchase of property.
3.  File must contain evidence borrower had the funds used to purchase the property.
4.  Value will be the lesser of the current appraised value or the original purchase price.

CONFIDENTIAL                                                                                  LEH-OAK_0000023

5. Refer to the Texas Home Equity Refinance Program Profile for Texas-specific guidelines.

**501.6-2-2d  Payoff of Existing Subordinate Financing/Seasoning**
Paying off a subordinate lien that meets one of the following criteria is not considered Cash Out and may be considered as an Expanded Rate/Term.
1. Documented equity interest of ex-spouse or ex-mortgagor, pursuant to a divorce decree or other legally binding written agreement.
2. Proceeds of the subordinate lien were used for property improvements to the subject property within the most recent 12 months (provide evidence of work performed and charges).
3. Draws on equity line of credit in the past 12 months that, in total, does not exceed the greater of 2% of the maximum credit limit or $2000.
4. Any closed-end subordinate liens that are at least 12 months old.
5. Refer to the Texas Home Equity Refinance Program Profile for Texas-specific guidelines.

501.6-2-3    *Debt Consolidation*
The mortgage amount includes paying off subordinate liens not meeting the definitions in Expanded Rate/Term above, loans not secured by the subject property, and closing costs (including prepaids). Loan proceeds used for the payoff of debt are limited to the maximum cash out limits per each Program Profile (i.e., if maximum cash out is $200,000, only $200,000 of the loan amount may be used for the payoff of debt).  Cash out limits also include any incidental cash to borrower at closing which may not exceed the greater of 2% of the loan amount or $2,000.

Cash-out refinance loans for properties located in Texas which are secured by the borrower's primary residence may be considered.  Refer to the Texas Home Equity Refinance Program Profile for details.

501.6-2-4    *Cash-Out Refinance*
The mortgage amount may include the present first mortgage payoff, subordinate liens, closing costs and additional cash to the borrower.  Amount of cash back varies by product type.  Refer to Program Profile for limitations.

Cash-out refinance loans for properties located in Texas which are secured by the borrower's primary residence may be considered.  Refer to the Texas Home Equity Refinance Program Profile for details.

501.6-2-5    *Texas Refinance*
Due to the strict Homestead Laws in the State of Texas, refinance transactions for all occupancies will be subject to the restrictions outlined in *Geographic Restrictions Matrix, Form 504* and policies outlined in the Texas Home Equity Program Profile.

501.6-3    **Permanent Financing for Newly Constructed Homes**
The underwriter must determine if the loan is a purchase, Rate/Term, Expanded Rate/Term, Debt Consolidation or Cash Out refinance.  Depending on how it is classified will determine how the LTV is calculated.  Acquisition costs only need to be documented in certain scenarios.  The following information breaks down the different possibilities.

501.6-3-1    *Purchase*
A contract for the building of the dwelling exists between the borrower and builder.

CONFIDENTIAL                    LEH-OAK_0000024

# UNDERWRITING GUIDELINES

Typically the borrower will not be on title to the land.  In these cases, the LTV/CLTV/HCLTV is based on the lesser of current appraised value or documented acquisition cost/purchase price.

The acquisition cost must be verified by a valid contract to build and/or accumulated paid receipts and/or canceled checks and lien waivers.  If the land was purchased separately, a copy of the closing statement or contract for deed (land contract) is required to document the acquisition of the land.

501.6-3-2    ***Rate Term***
Borrower is on title to the land.  New loan includes the payoff of a first mortgage.  Subordinate lien may be paid off if proceeds were used to help build the property and pay closing costs.  Unless subject is Expanded Options loan, current appraised value may be used to calculate the LTV/CLTV/HCLTV.  For Expanded Options loans, refer to the Expanded Options Program Profile.

501.6-3-3    ***Expanded Rate Term***
Borrower is on title to the land.  New loan includes the payoff of a first mortgage, seasoned subordinate liens or unseasoned liens which were used to help build the property or recoup out-of-pocket expenses and closing costs.  Acquisition cost must be documented.  The LTV/CLTV/HCLTV is based on the lesser of current appraised value or acquisition cost.

501.6-3-4    ***Cash Out or Debt Consolidation***
Borrower must be on title to the land.  Acquisition cost only needs to be documented if the property has been owned (date borrower took title) less than 12 months and LTV/CLTV/HCLTV (as determined by initial appraisal) is greater than 75%.  Acquisition cost must always be documented on Expanded Options loans and LTV/CLTV/HCLTV will be based on the lesser of current appraised value or documented acquisition cost/purchase price.

Purchaser will limit its exposure to properties which are complete prior to closing.  A 442 with color photographs completed by the original appraiser will be required if the property is appraised subject to completion per plans and spec or subject to completion of repairs.  Underwriting reserves the right to require a certificate of occupancy from the local building department when conformance with local zoning is in question.

501.6-4    ***Wraparound Mortgage/All Inclusive Trust Deed/Land Contracts***
When the transaction involves the payoff of a wraparound mortgage/land contract, the transaction will be considered a refinance and will be acceptable if all of the following are met:
1. A copy of the recorded All Inclusive Trust Deed or land contract must be provided.
2. Preliminary title report shows borrower on title, the wraparound mortgage or land contract and the original seller's loan which had been "wrapped" by the new loan.
3. If contract was executed less than 12 months ago, transaction will be limited to a Rate/Term transaction.
4. If contract was executed 12 or more months ago, Expanded Rate/Term, Debt Consolidation and Cash Out transactions are eligible.
5. HUD-1/Settlement Statement at closing indicates all liens on title have been paid off.
6. Typically, loans may not be processed using one of the Reduced Documentation programs.  Exceptions for Reduced Documentation processing options will be considered on a case-by-case basis.

CONFIDENTIAL                                                                                    LEH-OAK_0000025

# UNDERWRITING GUIDELINES

7. Payment history to "wrap" lender or owner of land contract (typically the original seller of the property) must be documented with 12 months of canceled checks. Less than 12-month history permitted when mortgage has been in place for less than 12 months.

**501.6-5    Lease-Option**

When a borrower is purchasing a home under a lease-option agreement, they may receive a rent credit from the seller for part of their down payment and closing costs if:

1. Amount of monthly rent paid by borrower exceeds the market rent at the time the contract was signed. Credit may be the amount of borrower-paid rent which exceeds the market rent. Appraiser to confirm the market rent as of the date the contract was signed.
2. File must contain clear evidence all rent was paid—should provide all canceled checks.
3. Term of lease must be at least 12 months.
4. Rent credit may be used to satisfy the minimum contribution requirement.
5. Rent credit must appear on the HUD-1.
6. Loans will be classified and treated as a purchase transaction.

**501.6-6    Non-Arms Length Transactions (AKA Common Interest Transactions)**

A non-arms length (NAL) transaction exists whenever the applicant has a personal or business relationship with the seller, builder, developer, real estate agent, appraiser, lender providing the financing, title company, or any other interested party. These relationships may influence the transaction and are generally not eligible for financing.

However, on a case-by-case basis, exceptions will be considered only under the following conditions:

1. Relationships are disclosed with initial submission.
2. Additional risk factors are not present. Examples of additional risk factors include: distress sale, high amount of seller contributions, selling assets for down payment.

Non-arms length transactions include, but are not limited to affiliates of the applicant who are:

1. Family members related by blood or marriage to the seller.
2. Owners, employees or family members of origination lender.
3. Builder/developers—applies to second homes and non-owner occupied transactions.
4. Renters buying from landlord.
5. Trading properties with the seller.
6. Employed by family members.

**501.6-7    Continuity of Obligation**

The key to accepting changing title or borrowers on a refinance is to establish a continuity of obligation. If individuals hold title, continuity of obligation must be established on the part of at least one applicant. If current title is vested in a company name, continuity of obligation must be established for all applicants.

The following table is intended to be a guideline regarding acceptability of proposed borrowers; exceptions may be allowed depending on overall credit and borrower strength and LTV.

1. The borrower types listed under the column title **Proposed Borrowers on New Loan** identify the changing obligor status as a result of the proposed transaction.
2. Additional borrowers are permitted provided the proposed borrower status is

CONFIDENTIAL                                                                                    LEH-OAK_0000026

# UNDERWRITING GUIDELINES

acceptable.

3. The key question to determine on refinances is: Who is obligated on the current loan and who currently holds title?  A borrower's name on the title but not on the existing loan may indicate the recent addition of this person to the title.

4. The comment "one year seasoning" means that the applying borrower is to have been on title and solely making the payment obligations for a minimum of 12 months. Typically, a copy of the recorded deed and 12 months of canceled checks verifies this obligation.

5. "Acceptable" means any documentation type, without any seasoning requirements.

6. This outline is intended to be a guideline.  Exceptions may be allowed depending on overall credit and borrower strength, and LTV/CLTV/HCLTV.

| Borrowers on Current Loan | Proposed Borrowers on New Loan | Comments |
|---|---|---|
| Husband and wife/life partners | Husband or wife/one of the life partners | Acceptable |
| Unrelated/unmarried owners or business partners | One of the current owners | Full Doc or one year seasoning |
| Husband or wife | The other spouse | Full Doc or one year seasoning |
| Property owned free-and-clear by husband and wife or two unmarried owners | One of the current owners | Acceptable but borrower needs to show sufficient depth of credit experience |
| Company or LLC owned by one person | Owner* | Acceptable |
| Company, Partnership or LLC | One of the owners* | Full doc or one year seasoning |
| Company, Partnership or LLC | All corporate owners* | Acceptable |
| Borrowers unrelated to applicants | New applicants – wrap, AITD, land contracts, or inherited properties | Follow Wrap, AITD, Land Contract, or Inherited property sections in Underwriting Guidelines, if applicable.  Otherwise, Full doc or one year seasoning. |
| Sellers personally or professionally related to buyers | (These are non-arms length transactions /common | Full Doc if the transaction appears to be hiding behind |

CONFIDENTIAL    LEH-OAK_0000027

# UNDERWRITING GUIDELINES

|  | interest transactions) | unacceptable intent.<br><br>Exempt considerations:<br>1. Transactions involving a large builder selling to an employee.<br>2. Realtor buying or selling their own property (excluding "guaranteed sale" transactions).<br>3. Legitimate transfer within family (parents or grandparents to children/grandchildren) |
|---|---|---|

\* Title must be taken in the borrower's name, not the company name.

**501.6-8    Inherited Property**

If property was inherited (date of death) less than 12 months prior to application, only Rate/Term refinances will be permitted subject to the following:
Proceeds will be used to buy-out the documented equity interest of others.  Equity owners must be paid through escrow.
1.  The property has cleared probate and property is vested in the borrower's name.
2.  Current appraised value will be used for LTV/CLTV/HCLTV determination.

**501.6-9    Model Home Lease-Back**

A Model Home Lease-Back is a model home in a new development purchased by a borrower and then leased-back to the builder for continued use as a model home.  Non-owner occupied financing is available for model home lease-backs under the following conditions:
1.  Refer to Program Profile for eligibility.
2.  Borrower may not be affiliated with the builder (relative, employee, etc.).
3.  Subject must be a single-family, newly constructed home.  PUDs and warrantable condos are eligible.
4.  "No MI" pricing is not available.  Contact local MI company for eligibility.
5.  Lease or purchase contract to contain the following:
    a.  Term of lease not to exceed 24 months.
    b.  A provision which requires the builder to convert any part of the structure which has been modified so as to serve as the model home or sales office to its original intended floor plan in good or better condition at the end of the leased period.
    c.  An itemization of any feature/upgrades, other than personal property items, which are not included in the purchase price which will be removed at the end of the lease period.
6.  Appraisal to:
    a.  Describe the converted areas and determine the cost-to-convert back/cost-to-cure.
    b.  Determine appraised value based on the "to-be-converted" floor plan, excluding any items identified in the purchase contract or lease which will be removed at the end of the lease period.
    c.  Confirm the subject's use as a model home.

CONFIDENTIAL    LEH-OAK_0000028

     d.  Estimate current market rent and provide a *completed Single-Family Comparable Rent Schedule, FNMA Form 1007*.

7.  LTV/CLTV/HCLTV will be based on the lesser of:

     a.  The acquisition cost minus the cost-to-cure as determined by the appraiser; or

     b.  The appraised value of the subject based on the "to-be-converted" value minus the cost-to-cure as determined by the appraiser.

8.  Borrower will be qualified on the lesser of the current market rent as determined by the appraiser or actual monthly rent as per the lease.

9.  Interested-party contributions may not exceed 3%.  Total of the contribution percentage plus the LTV (or CLTV/HCLTV, if applicable) may not exceed 100%.

10.  Underwriter must review the appraisal and sales contract to ensure:

     a.  The use of the subject as a model home is consistent with, and not in violation of, any and all applicable state or local laws, regulations or ordinances, especially those related to zoning or land use.

     b.  The use of the property will not result in any adverse impact on the borrower with respect to ad valorem or other property taxes.

## 501.7    ESCROW WAIVERS

Refer to applicable Program Profile for product-specific guidelines.

## 501.8    PREPAYMENT PENALTY

Prepayment penalty options are available on most products in accordance with state regulations.  Refer to applicable Program Profile and *Form 603A* for prepayment penalty instructions, loan document requirements, and state eligibility information.

The prepayment penalty will be collected on all loans as outlined in the appropriate prepayment penalty addendum (varies by state).  In the event the prepayment penalty addendum specifies the penalty will not be collected if the prepayment is concurrent with a bona fide sale of the property to an unrelated third party, borrowers must provide fully executed copies of all of the following when requesting a payoff statement:

1.  Sales contract;
2.  Fully completed *Affidavit of Arms Length Transaction, Form 406*.  (Note: The Payoff Department will fax this form to the requestor if not provided at the time payoff request is made.)

If all necessary documentation is not provided, the payoff figure will include the prepayment penalty amount (Note: payoff statements identify the breakdown of the unpaid principal balance and the prepayment penalty amount from the total amount due).  To ensure payoff statements are issued properly, borrowers should request the payoff at least five to seven business days prior to the date needed.  In the event all information was not available (i.e., concurrent closings) when the original payoff was requested, the remaining information may be faxed to the Payoff Department.  Every effort will be made to process updated payoff statements on the same day the information is received.

## 501.9    INELIGIBLE TRANSACTIONS

The following features are ineligible for financing:

1.  Property/Land Flip Transactions.
2.  Straw Borrowers/Straw Buyer.
3.  Builder/Seller Bailout plans.
4.  Multiple property payment skimming—typically involves investors who purchase investment properties with seller carry-back financing, collect rents but do not make the mortgage payments.

CONFIDENTIAL                                                                LEH-OAK_0000029

    5.  Additional restrictions may be outlined in the applicable Program Profile.

## 502    DOCUMENTATION

Our goal is to simplify both underwriting policy and processing documentation. The documentation that will be required may be a departure from traditional expectations. However, prudent underwriting policy will not be abandoned. Reduced Documentation (Lite Doc, Stated, No Ratio, No Doc, Bank Statements, etc.) programs do not eliminate the necessity to closely review and evaluate all information available in the file to determine the reasonableness of the borrower's ability to repay the mortgage debt.

Reasonableness will be based on the borrower's employment history, income source and past credit experience which must be commensurate with the loan request. For example, information on the credit report should corroborate information on the application. Borrower's income source must be from a source likely to generate sufficient income to repay the debt. Material inconsistencies must be investigated. Loan requests for an applicant with atypical characteristics should require full income and asset documentation. For example, presence of any of the following characteristics should indicate full documentation is required:

1.  Transactions resulting in significant payment shock (payment more than doubles); or
2.  Loan request is significantly larger relative to previous mortgage history; or
3.  Unusually high income for profession; or
4.  Excessive balances in checking, money market accounts with no stock ownership.
5.  Inconsistent borrower information between loan applications for current transaction and previous transactions.

Requests for additional information or documentation will be driven by common sense, sound credit judgment and loan characteristics. Underwriter must review all information provided. If information is inconsistent, i.e., occupancy, employment, income, etc., the underwriter may decline or require full income and asset documentation. In addition, information disclosed in the file must also be taken into consideration. For example, payroll deposits shown on bank statement, disclosed in a file will be used for calculating appropriate gross income.

All files must include the completed initial application. When the initial application is incomplete or missing from the Submission Package, the loan may not be processed using Reduced Documentation. All income sources must be itemized on the signed 1003 when applicable.

Documentation requirements vary depending on the product selected. Refer to the Program Profile for specific documentation requirements.

## 503    ASSET ANALYSIS

When the documentation type or program requires asset verification (refer to applicable Program Profile), the underwriting package must evidence sufficient funds for down payment, closing costs and reserves when applicable. The fiscal position of the applicant, including accumulation of verifiable assets, is a strong indication of creditworthiness. An established pattern of savings demonstrates skill in financial management. Evidence that the savings are liquid also strengthens the loan transaction as these funds are readily available to repay debt obligations, pay unexpected expenses and provide protection against short term interruption of income.

CONFIDENTIAL                                                                                 LEH-OAK_0000030

Section 5

# UNDERWRITING GUIDELINES

503.1    **ASSET DOCUMENTATION**

Assets may be verified using:
1.  Direct written verification, completed by the depository; or
2.  Two consecutive account statements.    Account statements must provide the following information:
    a.  Identify the borrower as the account holder; and
    b.  Identify the account number; and
    c.  Display the time period covered; and
    d.  Include current balance; and
    e.  Include the date.

Statements which have been faxed to the lender or downloaded from the internet may be provided if they clearly identify the source of the information and contain all required data outlined above.

503.2    **AGE OF ASSET DOCUMENTATION**

Unless otherwise stipulated in the Program Profile, asset documentation may be no older than the following at the time of closing:

| Product | Expanded Options | All Others |
|---|---|---|
| Existing Construction | 60 days | 120 days |
| New Construction | 60 days | 180 days |

503.3    **ACCEPTABLE FUNDS**

The following items are acceptable for down payment and closing funds, including prepaids:
1.  Cash from an applicant's checking or savings account.
2.  Gift or grant which does not have to be repaid may be permitted as outlined in the applicable Program Profile.
3.  Proceeds from the sale of the applicant's personal asset(s).  Value of assets must be verified; provide evidence of sale (i.e., bill of sale, copy of check, etc.).
4.  Proceeds from a loan which is secured by a applicant's personal asset.   For example, loans secured by other real estate is acceptable.  Terms of the loan must be verified.  Repayment of the loan must be included in the total expense ratio.
5.  Proceeds from a loan secured by a financial asset (401K, stock, life insurance, etc.) may be used. The net vested amount (total balance minus loans, and any tax or withdrawal penalties) may be used for reserves except for retirement funds.  Full value of retirement assets (not net vested amount) may be used for reserves. (Exceptions to permit net vested amount for retirement funds considered only for loans less than $1,000,000.)
6.  Proceeds from liquidated stock, retirement accounts, certificates of deposit, pension or other savings plan. Note:  "Penny" stocks are not considered liquid.
7.  Proceeds from sale of other real estate.  If part of the down payment is expected to be paid from the sale of the applicant's current home, an executed closing statement verifying sufficient net proceeds must be received with the closing package.
8.  Net proceeds from the trade of the applicant's real property or an IRS 1031 exchange.
9.  Funds from a business account (if the applicant is the sole owner of the company and the company's CPA provides a statement indicating withdrawal of the funds will not negatively impact the business) may be used for down payment and reserves.  In addition, when the loan amount is ≥$1,000,000 funds from the business account may be used for down payment but not reserves.

CONFIDENTIAL                                                LEH-OAK_0000031

# UNDERWRITING GUIDELINES

10. Any payment received as a result of being a party to the sales transaction (i.e., real estate sales commission) after borrower has met the minimum down payment requirement.
11. Upfront fees (credit report, appraisal, lock-in fees, etc.) may be charged to the applicant's credit card. Total charges may not exceed $1000. If debt is not paid off prior to or at closing, payment for the debt must be included in the applicant's ratios.
12. Acceptable assets are required to be in US banks. If exceptions are granted to allow overseas funds, those funds must be transferred to a US bank with proof of wire transfer and deposit both being required prior to funding.

503.4    **UNACCEPTABLE FUNDS**

1. Gift funds which must be repaid in full or in part.
2. Cash-on-hand.
3. Labor performed by the applicant or goods or materials provided by the applicant (sweat equity).
4. Gifts from Seller-funded programs (i.e., Nehemiah, Ameridream, etc.).

503.5    **BRIDGE LOAN**

A bridge loan is typically a short-term secured loan (one year or less), often interest-only, that is based on the equity in the applicant's current home. It is paid off when the current home is sold and closed. A copy of the listing agreement is required. Payments on existing mortgage loans must be included when qualifying the applicant. Unless loan is an Expanded Options loan, bridge payments may be excluded from long-term obligations. If Expanded Options loan, bridge loan payments must be included in long-term obligations and the terms of the bridge loan must allow for automatic renewal until the home is sold.

503.6    **CASH RESERVES**

Exclusive of down payment and closing costs, the applicant must have adequate cash reserves available that are appropriate to the transaction. High LTVs, second homes, investment properties and applicants with multiple investments in real estate will be closely analyzed for remaining cash reserves. In some instances, substantial liquid assets are considered to offset other risk factors. Refer to Program Profiles for specific cash reserve requirements and exceptions.

503.7    **DOWN PAYMENT**

On purchase transactions, applicants must make a minimum down payment with funds from their own resources. The amount of the minimum required down payment depends upon the occupancy of the property, documentation type and loan program. Refer to applicable Program Profile for specific down payment requirements.

All earnest money deposits in excess of 2% of the purchase price generally must be fully documented. Acceptable documentation includes:
1. Copy of canceled check;
2. Copy of check not canceled with bank statement to evidence check cleared;
3. Evidence from the Real Estate Broker (not the agent) that the funds were deposited into the broker's trust account (i.e., copy of broker's trust account statement); or
4. Escrow agent/attorney's letter acknowledging receipt of funds.

503.8    **GIFT FUNDS**

Gift funds are acceptable as outlined in the applicable Program Profile.

CONFIDENTIAL                                                                      LEH-OAK_0000032

# UNDERWRITING GUIDELINES

Gift letter must include:
1. Donor's relationship to borrower.
2. Donor's address.
3. Dollar amount of gift.
4. Certification it is an outright gift with no repayment required.

File must contain evidence of receipt of gift funds prior to closing (i.e., evidence of transfer from donor's account to borrower's account; copy of cashier's check at closing).

Unless otherwise stipulated in the Program Profile, gifts of equity may be given provided all of the following are met:
1. Signed gift letter is provided.
2. Gift of equity is listed on the HUD-1.
3. Borrower contribution requirements are the same as those required for cash gifts.

Many programs require a minimum contribution be made from the borrower's own resources prior to gift funds being considered as an acceptable source of funds. In these cases, the file must contain evidence the borrower has sufficient funds in a personal account to make the necessary contribution. The borrower is not required to use these funds to complete the transaction, but the funds must be verified as available to the borrower and owned by the borrower.

## 503.9    JOINT ACCOUNTS

Funds held jointly with a non-borrowing spouse will be considered the borrower's funds. Funds held jointly with any other non-borrowing person may be considered if joint account holder is also a title holder on the property.

## 503.10    SECONDARY FINANCING

Secondary financing is permitted as outlined in the applicable Program Profiles. A copy of the note is required in all cases.

## 503.11    SALES AND FINANCING CONCESSIONS

For purposes of determining the impact of costs paid by the seller or an interested third party, distinctions will be made between financing concessions and sales concessions or personal property inducements.

### 503.11-1    Financing Concessions

Financing concessions are considered to be funds originating from an interested party to pay closing costs on a purchase or refinance transaction which are used to:
1. Permanently reduce the interest rate on the mortgage;
2. Fund a buydown plan to temporarily subsidize the applicant's monthly payment on the mortgage;
3. Make contributions in any form related to the mortgage financing charges which traditionally would be paid by the applicant, including but not limited to the payment of discount points, loan fees, commitment fees and/or origination fees;
4. Pay the cost of other items traditionally paid by the applicant such as application fees, homeowner association fees, appraisal fees, transfer taxes, tax stamps, attorney fees, surveys, closing costs and title insurance.

Financing concessions in excess of allowed limitations or which exceed the borrower's

CONFIDENTIAL                                                                                                    LEH-OAK_0000033

# UNDERWRITING GUIDELINES

actual closing costs will be deducted from the purchase price prior to determining the loan-to-value (LTV). Refer to the applicable Program Profile for contribution limitations.

### 503.11-2    Sales Concessions or Property Inducements

Financing concessions not listed above or in an amount in excess of the allowed limitations are considered to be sales concessions. The cost of any sales concessions must be deducted from the purchase price prior to determining an adjusted loan-to-value.

In cases where the appraisal does not clearly and adequately reflect the presence and effect of any financing and/or sales concessions, the underwriter must make a downward adjustment to the appraised value of the Mortgaged Property to reflect the cost of the contribution. The revised LTV/CLTV/HCLTV is based on the lesser of the appraised value or reduced sales price.

### 503.12    TRADE EQUITY IRS 1031 EXCHANGE

Documentation requirements depend upon the type of property exchange being utilized. When the property trade is between the borrower and seller, the following documentation must be provided:
1. Current appraisal on the borrower's property which is being traded.
2. Closing statement for borrower's property to evidence net proceeds available.

An IRS 1031 Exchange allows a borrower to place proceeds from the sale of a property into an escrow account until they are ready to purchase another like-kind property with the proceeds. The following documentation must be provided:
1. Copy of closing statement.
2. Copy of exchange agreement.
3. Statement from Accommodator verifying available funds.

### 503.13    UNSECURED LOANS

Funds from an unsecured loan via a family member, municipality, non-profit organization, or borrower's employer may be used for additional down payment (after borrower has made the minimum required down payment if applicable). Funds from unsecured loans may also cover closing costs, including prepaids and discounts. All of the following must be met:
1. Not eligible for Reduced Documentation processing.
2. Unsecured loan is disclosed on the 1003 and payments are included in the total debt ratio calculation.
3. Lender of unsecured loan is not an interested party to the transaction and did not borrow the money from an interested party.
4. Terms must be documented with an award letter or legal agreement.
5. If employer is the lender, repayment terms may not require the borrower to pay-in-full in the event the borrower no longer works for the employer. (Exceptions considered case-by-case when the employer is a large, well-know institution.)
6. Evidence of transfer of funds is required.
7. Repayment terms on non-credit card loans:
   a. Fixed-Rate.
   b. Note rate not to exceed 2% above the first lien rate.
   c. No balloon payment within the first five years.
8. Unless otherwise stipulated in the Program Profile or in Section 503.3, cash advances from credit cards are not acceptable.

CONFIDENTIAL                                                                                LEH-OAK_0000034

# UNDERWRITING GUIDELINES

## 504    CREDIT ANALYSIS

### 504.1    EQUAL CREDIT OPPORTUNITY ACT

The Federal Equal Credit Opportunity Act prohibits lenders from discriminating against credit applicants on the basis of race, color, religion, national or ethnic origin, sex, marital or familial status, age (provided the applicant has the capacity to enter into a binding contract), disability, because all or part of the applicant's income is derived from a public assistance program or because the applicant has, in good faith, exercised any rights under the Consumer Credit Protection Act.  State laws may also prohibit discrimination on certain additional basis such as sexual orientation.  It is contrary to our values and policy to consider any prohibited basis in underwriting any loans.

### 504.2    CREDIT ANALYSIS

The underwriting process requires an analysis of the loan file to determine acceptability. Determination of an applicant's creditworthiness as demonstrated by willingness to repay past and current debt obligations in a timely manner is a critical aspect of this analysis. Credit analysis varies depending upon the program selected.    Unless otherwise addressed in the Program Profile, credit will be analyzed in accordance with the following.

### 504.2-1    Credit Report

A credit report is required for each applicant executing the Note.  The credit report should provide merged credit information from at least three national credit repositories.  The credit report should include verification of all credit references provided on the loan application and must certify the results of public record searches for each city where the applicant has resided in the last two years.  Accounts that are not verified on the credit report must be verified with either a written direct verification or acceptable FNMA/FHLMC alternative documentation. Either a three-bureau merged report (Refer to Program Profile for possible exceptions) or a Residential Mortgage Credit Report (RMCR) prepared by a credit agency approved by FNMA for Desktop Underwriter or FHLMC for Loan Prospector submissions should be provided.

### 504.2-2    Age of Credit Report/Credit Verifications

Unless otherwise stipulated in the Program Profile, the credit report at closing may be no older than:

| Product | Expanded Options | All Others |
|---|---|---|
| Existing Construction | 60 days | 120 days |
| New Construction | 60 days | 180 days |

### 504.2-3    Credit Scoring

Credit scores analyze the applicant's credit use patterns, including any derogatory credit, to predict the probability of default.  The credit score assists in evaluating the borrower's consumer credit.

Unless otherwise stipulated in the applicable Program Profile, valid/usable credit scores are required on all files.  A valid/usable credit score is one that is:
1.   Generated based on a minimum of three acceptable trades at least two or more years old from traditional credit providers; and
2.   Reflects the borrower's credit history and credit patterns.

CONFIDENTIAL

LEH-OAK_0000035

# UNDERWRITING GUIDELINES

An acceptable tradeline is one from a traditional credit source.  Alternative credit trades or such items as collections, charge-offs, "authorized user" accounts, deferred loans with no payment history, or transferred accounts are all considered unacceptable tradelines for determining a valid credit score.

To ensure the validity of the credit score, each tradeline should reflect all repositories that are reporting it.  This will identify which tradelines were considered when generating each credit score.  Underwriters will closely review the scores, the credit score codes and the borrower's credit history to ensure validity. Credit score codes must be consistent with tradeline information. For example, if credit score code identifies delinquent accounts, credit report must also contain delinquent tradelines.  Scores that do not appear to represent an accurate picture of the borrower's credit risk will not be considered usable.

Unless otherwise stated in the applicable Program Profile, files without valid/usable credit scores will be considered on a case-by-case basis.  Loans may not be eligible for maximum financing or for Reduced Documentation programs.

A minimum of two scores are required for each applicant.  If all scores are valid/usable, the lesser of two or middle of three will be the *representative* score of each applicant. The representative score used for underwriting purposes will depend upon the program selected.  Some programs will use the *lowest representative* score for qualifying the file for loans with multiple borrowers.  Other programs will use the representative score for the Primary Income Borrower (borrower who earns >50% of the total qualifying income). Refer to the applicable Program Profile for specific product information.

In the event the credit score is not reflective of the borrower's credit history or large variances (greater than 30 points) exist between the scores, underwriting will determine the most appropriate score for underwriting purposes.

Scores obtained from Experian (FICO), Trans Union (Empirica) and Equifax (Beacon) will be acceptable.  A credit score from any other source will not be acceptable.

### 504.2-4    Evaluation of Credit
The review of an applicant's credit history reveals a great deal in determining the likelihood of debt repayment.  Although credit reports may contain seven or more years of credit history, the most recent credit use patterns are the most predictive of repayment ability.  Generally, an acceptable credit history will include at least two or three years of credit use.  A shorter credit history may indicate increased risk, but all credit factors must be considered.  The underwriter should also consider the number of recently opened accounts.  If there are a significant number of new accounts, the reasons should be investigated.

There are several different credit usage factors considered in evaluating credit: credit history, number of accounts, outstanding debt, delinquency, derogatory credit and inquiries.  It is generally not one credit usage factor, but the combination of factors that establish whether or not the overall pattern of credit use is acceptable.

### 504.2-5    Number of Accounts
In general, the greater the number of credit accounts, the higher the credit risk. However, it is important to analyze the number of accounts within specific types of credit (i.e., retail, installment, revolving and mortgage).  The higher risk group includes applicants with a large number of bank revolving accounts, and/or accounts with

CONFIDENTIAL                                                                    LEH-OAK_0000036

# UNDERWRITING GUIDELINES

outstanding balances.  On the other hand, if there are no bank revolving accounts, this could indicate an inability for the applicant to obtain credit.

### 504.2-6    Outstanding Debt

Two very important indicators of repayment ability are the number of accounts with sizable outstanding balances and high credit line utilization.  The underwriter should consider the number of tradelines with balances reported in the last year.  If all trade lines have balances, there is a greater credit risk than if there is little or no outstanding balance on trade lines.  The underwriter should further analyze the relationship between total balances and total credit limits on revolving lines.  If the outstanding balance is near, at, or above the credit limit on revolving lines, a greater risk is present.

### 504.2-7    Delinquency and Derogatory Credit

The underwriter should consider the type of accounts on which the delinquency occurred, the reason for delinquency, the severity of the delinquency, the frequency of delinquent accounts, and how recently the delinquency occurred.  More weight is placed on installment loan delinquency than on revolving debt delinquency, with the most weight placed on mortgage payment history.

The most serious types of delinquency include foreclosures, bankruptcy, judgments, collection accounts and tax liens.  Applicants must provide explanations and supporting documentation to show these events were an isolated occurrence and are unlikely to happen again.

1. A sufficient time frame as identified in the Program Profile must have elapsed after a foreclosure/deed-in-lieu/NOD, etc. and/or bankruptcy was filed, discharged or completed.  Time frames vary depending upon the program selected.  When the bankruptcy has been discharged less than seven years, a copy of all bankruptcy paperwork (discharge, petition and schedule of debts) must be provided.  Unless otherwise stipulated in Program Profile (refer to Expanded Options Program Profile), Consumer Credit Counseling Service debts (CCCs) are considered the same as Chapter 13 bankruptcies.

2. Accounts which are currently delinquent will be closely scrutinized.  All past due accounts must be brought current prior to closing.  Refer to Expanded Options Program Profile for Expanded Options-specific policy.

3. Typically, collections, charge-offs, tax liens, *delinquent child support* and judgments may remain open provided they do not affect our lien position.  A copy of the subordination agreement must be included in the file.  Additionally, title must insure our lien position without exception.  Any items secured against the subject will be included in the CLTV/HCLTV calculation.  In the event a payment plan has been established, payment will be included in the bottom ratio.  If no repayment plan has been established, an amount sufficient to repay the balance due in five years will be included in the bottom ratio.  Typically, no repayment figure will be calculated for collections or charge-offs unless a repayment plan has already been established or the items have been secured against the subject.  Refer to applicable Program Profile for possible variances on this policy.

4. Delinquent credit which belongs to an ex-spouse may be excluded from the credit evaluation when the following apply:
   a. File contains a copy of the divorce decree or separation agreement (Refer to Program Profile for possible variance on this issue) which shows the derogatory accounts belong solely to the ex-spouse; and
   b. Lates occurred after the date of the divorce or separation.

CONFIDENTIAL                                                                                    LEH-OAK_0000037

# UNDERWRITING GUIDELINES

5.  Delinquent credit that belongs to co-signer (if delinquencies within the last 12 months) is considered in determining the borrower's credit acceptance.  Exceptions considered on isolated delinquencies when there are no other delinquencies on other accounts and the file contains evidence the applicant borrower is truly a co-signer by use of billing statements, canceled checks.  However, the debt will be used in the ratio calculation.

504.2-8    **Written Explanations**
A satisfactory written explanation signed by the applicant explaining the reason(s) for adverse credit is required if the determination is made that the adverse credit has a significant negative impact on the creditworthiness of the applicant.  Typically not required on Expanded Options.

The explanation must satisfactorily identify the reason(s) for the adverse credit and the timing of the event(s) must be consistent with other application information. Documentation supporting the applicant's explanation(s) is required.

An applicant with an unfavorable credit history may be deemed acceptable if the occurrences of adverse credit use do not appear to be typical for the borrower and are due to circumstances beyond the applicant's control.  Additionally, the instances should not be indicative of the applicant's negligence or unwillingness to repay.

504.2-9    **Inquiries**
Recent inquiries indicate that the consumer has actively been seeking credit.  If there are a number of inquiries, they should be researched. It is especially important to consider the number and type of inquiries in the last 90 days.  An applicant with minimal credit experience and a number of recent inquiries should be more closely scrutinized than an applicant with the same number of inquiries and a very long and stable credit history.

504.2-10    **Limited/No Credit History/Alternative Credit**
Applicants with limited or no credit experience may not be eligible for maximum financing or Reduced Documentation processing.  Underwriting will consider the following criteria when determining whether there is a pattern of limited or no credit history: (i) number of accounts, (ii) type of accounts, (iii) length of time the accounts have been open.

When limited traditional credit exists, alternative credit sources should be used to determine the creditworthiness of applicants with non-traditional credit histories (not permitted on Expanded Options).  Satisfactory verifications should be reported on a non-traditional credit report prepared by a credit agency approved by Fannie Mae for Desktop Underwriter and Freddie Mac for Loan Prospector and may come from providers of services for which the applicant has had a regular financial obligation.  These sources can include, but are not limited to, rental payments, utilities paid, references from a bank officer, references from retailers, tax payments, car insurance payment, or life insurance payments.  A non-traditional credit report should consist of four references (three may be provided if utilities are verified as included in rental payments).

504.2-11    **Mortgage/Rental Payment History**
Unless otherwise stipulated in the applicable Program Profile, files should contain verification of the borrower's 12-month payment history for all mortgages appearing on the credit report and initial application.  Less than 12-month history may be permitted when mortgage has been in place for less than 12 months.  In addition, Underwriting reserves the right to require an updated mortgage/rental history to ensure the loan is

CONFIDENTIAL                                                        LEH-OAK_0000038

# UNDERWRITING GUIDELINES

current prior to closing.  Refer to the *Housing History Matrix, Form 520* for housing history requirements and eligibility scenarios for the Mortgage Maker program.

Mortgage history may be verified in one of the following manners:
1. Direct written reference from the mortgagee; or
2. Verified on the credit report; or
3. Mortgage computer-generated or typed payment history from the mortgagee which identifies the following:
    a. Payment history covering at least 12 months (or for the entire time the mortgage has been in place if less than 12 months).
    b. The borrower, issuer and mortgage.
    c. The outstanding balance.
4. 12-months canceled checks (front and back) required if the mortgagee is a private party.

Rental history may be verified in one of the following manners:
1. Direct written verification of 12-month rental history from landlord may be provided if management company is listed in the local telephone directory.  File must contain a copy of the listing.  If the listing is not available, 12-months canceled checks must be provided.
2. 12-months canceled checks (front and back) may be provided.

When canceled checks are provided as documentation:
1. Copies of both the front and back of each check are required.
2. Print must be legible.
3. The date of bank endorsement for deposit must show on the back.
4. Check must identify the servicer, landlord or management company.

Note: Mortgage histories through the date of payoffs will be considered in program eligibility. In no event may the loan payoff include late fees or past month's mortgage payments.

Note: Timeshare obligations are considered installment, not mortgages for credit review purposes.

504.2-12     **Payment Histories**
Underwriting reserves the right to require pay histories to confirm prompt payments. Typically pay histories may be requested when the credit report indicates delinquencies have been removed or when the majority of credit is from a non-institutional lender.

504.2-13     **Lawsuit/Pending Litigation**
If application, title, or credit documents reveal that the applicant is presently involved in a lawsuit or pending litigation, a statement from the applicant's attorney may be required. The statement must explain the circumstances of the lawsuit or litigation and discuss the applicant's liability and insurance coverage.  A copy of the complaint and answer may also be needed.  The title company closing the loan must be informed of the lawsuit or litigation and provide affirmative coverage of our first lien position.  This exception can only be given on primary occupancy, purchase or Rate/Term refinance.

504.2-14     **Re-established Credit—not applicable on Expanded Options**
Loan amounts <$1,000,000: credit has been re-established for the most recent two-year period meeting the following minimum requirements:

CONFIDENTIAL                                                                 LEH-OAK_0000039

1. Number and type of credit must meet the requirements outlined in Credit History topic previously mentioned.
2. If tradelines were included in a bankruptcy, at least one trade must be part of the re-established credit references.
3. Three of four references must be at least 24-months old.
4. One reference must be housing-related.
5. No new public records, judgments, collections, etc., have been opened since the financial problems occurred.
6. Consumer debt:
   a. No payments ≥60 days past due.
   b. Maximum 2x30 days past due.
7. No housing payments past due. Housing must be verified for the last 24 months.
8. All other accounts must be current.

Loan amount ≥$1,000,000: credit has been re-established for the most **recent four-year** period meeting the following minimum requirements:
1. Number and type of credit must meet the requirements outlined in Credit History topic previously mentioned.
2. If tradelines were included in a bankruptcy, at least one tradeline must be part of the re-established credit references.
3. Three of four references must be at least 24-months old.
4. One reference must be housing-related.
5. No new public records, judgments, collections, etc., have been opened since the financial problems occurred.
6. Consumer debt:
   a. No payments ≥60 days past due.
   b. Maximum 2x30 days past due.
7. No housing payments past due. Housing must be verified for the last 24 months.
8. All other accounts must be current.

## 505    EMPLOYMENT AND INCOME

### 505.1    EMPLOYMENT HISTORY

Generally, the greater the job tenure and stability, the greater the borrower's ability to repay obligations in a timely fashion. Employment must be stable with at least a two-year history in the same job or jobs in the same or related field. Self-employed applicants must have been in business for at least two years. Other circumstances may also be acceptable as outlined in this section. **Refer to applicable Program Profile for possible exceptions.**

### 505.1-1    Frequent Job Changes

An applicant who changes jobs frequently to advance within the same line of work should receive favorable treatment if this can be verified. Frequent job changes without advancement or in different fields of work should be carefully reviewed to ensure consistent or increasing income levels and likelihood of continued stable employment.

### 505.1-2    Gaps in Employment

Applicant should explain, in writing, any job gaps that exceed one month. This explanation will be reviewed for reasonableness.

CONFIDENTIAL                                        LEH-OAK_0000040

# UNDERWRITING GUIDELINES

505.2 **SOURCE OF INCOME**

Applicants will be qualified based on calculated Stable Monthly Income. Stable Monthly Income consists of those amounts and sources which are reasonably expected to continue. Income may be obtained from a variety of sources such as salary, bonus, commission, self-employment, etc. Typically, if the income can be verified as received for a reasonable time period (i.e., two or more years) and is likely to continue for at least three more years (refer to applicable Program Profile for details/variations), the income may be used as qualifying income.

Each source of income must be reviewed with regard to the applicant's ability to service his/her total debt obligation. Varying types and levels of income documentation may be necessary for different types of income and programs. Refer to applicable Program Profile for possible exceptions.

505.2-1 **Annuity Income**

Annuity income may be used as qualifying income if properly documented and expected to continue for at least three years. Acceptable documentation includes a copy of the award letter.

505.2-2 **Automobile Allowance**

Automobile allowances will be considered acceptable income provided receipt of income has been documented for the previous two years and income is likely to continue. Qualifying income is the verified allowance minus all non reimbursed business expenses as reported by the borrower in their personal tax returns on IRS schedule 2106. If result is positive, allowance may be added to qualifying income. If result is negative, qualifying income must be reduced accordingly. Car payments are always included in the ratios.

505.2-3 **Bonus and Incentive Income**

To establish bonus earnings for loan qualification purposes, written verification from the employer must define the dollar amount paid during the past 12 months, the basis upon which the bonus is computed and the employer's projection for future continuance of the bonus. When this type of income is used for down payment and is the only source of funds for the down payment, it may not be used as qualifying income. In addition, when the bonus is received infrequently throughout the year, the borrower must have sufficient income reserves in savings to supplement income until the next bonus is received. To calculate required income reserves:
1. Determine the monthly salary needed to qualify.
2. Subtract the base salary and appropriate tax withholding.
3. Multiply the remaining needed income times the number of months until the next bonus is received.

505.2-4 **Capital Gains**

Capital gains earned from the sale of assets (including mutual funds but generally excluding sale of real estate) will be considered Stable Monthly Income if the Borrower has a two-year history of earning capital gains and sufficient assets to continue generating similar earnings. Federal tax returns for the past two years should be provided. Income will be averaged over the past 24 months provided income continuity is expected.

505.2-5 **Child Support, Alimony or Maintenance Income**

Child support, alimony or maintenance payments may be used as income only if this

CONFIDENTIAL                                        LEH-OAK_0000041

information is volunteered by the applicant and if the file contains evidence that the funds are received on a continual basis is provided.  Copies of the divorce decree/separation agreement along with copies of court records, bank statements or canceled checks showing payments for a minimum of six months required.  In order to be used as income, these payments must reasonably be expected to continue for a three-year period.

### 505.2-6    Commission Income
Commission income will be considered as Stable Monthly Income if it has been received for two years and is likely to continue.

Federal tax returns for the previous two years, including W-2s, 1099s and all supporting schedules, must be provided in order to document income.  If more than 90 days have passed since year-end, year-to-date statements verifying commissions paid should be provided.

### 505.2-7    Disability Income/Worker's Compensation
Disability benefits may be used as qualifying income if a two-year history of receipt has been documented.  Benefits should be verified with a photocopy of the award letter supported by two-years W2s and current evidence or receipt (current pay stub or evidence of direct deposit into savings account).  The award letter must indicate the benefit amount, length of time the benefits will be received and the conditions for receipt of benefits.

Short-term disability benefits may be considered if:
1. File contains documentation addressing the anticipated return to work date; and
2. Employer confirms borrower's position is still available to the borrower.
3. If the borrower's full wages are required for qualifying, the file must also contain sufficient verification of assets remaining after closing to supplement the disability income until the borrower returns to work.  The assets required here are in addition to any requirements for cash reserves required by the program.  For example:

| | |
|---|---|
| Borrower's wages per month | $2000 |
| Disability Income | $1500 |
| Required supplemental income | $ 500 |
| Number of months until return to work | 3 |
| Total additional cash reserves required: | $500 x 3 = $1500. |

### 505.2-8    Dividend/Interest Income
Investment income may be used as Stable Monthly income if file contains the following evidence:
1. The income has been received for at least 24 months; and
2. Year-to-date income is in line with previous earnings; and
3. The investment is from a publicly-traded company(s); and
4. Borrower has a diversified portfolio; and
5. Verification of stock asset values no older than 30 days at underwriting; and
6. Sufficient assets remain after closing to continue to generate an acceptable level of earnings.

When historical and current earnings are reasonable, the earnings will be averaged over the time period verified.  Underwriting reserves the right to use an earnings rate no greater than 8% during volatile marketing times or when verified earnings do not appear to be supported by current market conditions.

CONFIDENTIAL                                    LEH-OAK_0000042

# UNDERWRITING GUIDELINES

Income may be documented with signed federal tax returns or 1099s for the previous two years.  Other documentation such as year-to-date statements from a financial institution may be considered on a case-by-case basis.

The cash/stocks/bonds producing this dividend/interest income may not be used as a source for down payment and should not have been previously pledged as security.

**505.2-9**    **Employed by a Relative**
Transactions that involve borrowers who are employed by a relative are considered non-arms length (NAL) transactions.  Unless an exception is granted through the LPER process to allow Reduced Documentation processing, income for borrowers that are employed by a relative must be verified using federal tax returns for the past two years and a current pay stub.  In the event the borrower owns more than 25% of the company, full self-employed documentation must be provided.

**505.2-10**    **Foreign Income**
Income from a foreign country may be considered for qualifying if it can be verified as stable and likely to continue.  The income should be converted to U.S. currency.

**505.2-11**    **Foster Care Income**
Income derived from foster care payments may be considered if it is regular, recurring and likely to continue.  Generally, a two-year history of past receipt is required. Income used to qualify must be averaged over a two-year period.

**505.2-12**    **Installment Sales and Land Contracts**
Verified income from installment sales, land contracts, contracts for deed, mortgages, etc., may be used provided the minimum remaining term of such income is three years. Remaining terms of less than three years may be considered on a case-by-case basis. Copies of federal income tax returns showing the income should be used to document a history of regular receipt of the income.

**505.2-13**    **Military Income**
Borrowers employed in military services typically receive compensation in addition to base pay which may be used as qualifying income.  Rations, base housing pay, flight pay may be acceptable provided the income is typical for the position held, it is likely to continue and fully documented.  Non-taxable income will be "grossed-up" 25% on most programs.  See Non-Taxable Income topic for more details.  Generally only base pay is taxable.
Borrowers called to active duty before loan closing must be qualified on military income.

**505.2-14**    **Mortgage Differential Income**
Mortgage differential income may be used as qualifying income if the amount and duration of the subsidy has been verified in writing by the borrower's employer.  Income must be likely to continue for three years.  Income will be added to gross income and will not be used to offset the mortgage payment, even if the payment is sent directly to the mortgage company from the borrower's employer.

**505.2-15**    **Note Income**
Note income may be used as qualifying income if received for at least 12 months and expected to continue for at least three more years.  Acceptable evidence includes a copy of the note and the previous year's federal tax returns to evidence receipt of income or

CONFIDENTIAL                                                                        LEH-OAK_0000043

# UNDERWRITING GUIDELINES

copies of bank statements to evidence deposit of note income received.

**505.2-16    Non-Taxable Income**

Non-taxable income will be "grossed-up" 25%. Underwriting reserves the right to require evidence income is non-taxable. Non-taxable income includes but is not limited to:
1. Child support.
2. Disability income.
3. Social security income— only the portion of social security income that is non-taxable will be grossed-up. Depending upon the total of all income sources, all or a portion of the social security income may be taxable. Underwriters must review all income sources to determine what portion of social security income may be taxable.
4. Worker's compensation.
5. Aid to dependent children (ADC)/foster care.
6. Welfare benefits.
7. Federal Employees Compensation Act Benefits.
8. VA benefits (VA education benefits may not be used as qualifying income).
9. Military allotment (food and housing).
10. Municipal bond interest.

**505.2-17    Part-Time/Second Job and Overtime Employment**

Part-time and overtime income will be considered as stable income if it has been received for the previous 12 months and has a strong probability for continued receipt at current or increasing levels.

**505.2-18    Relocating Life Partners/Trailing Co-Borrowers**

For primary residence purchase transactions, income from a Relocating Life Partner (RLP) will be permitted as qualifying income when the following conditions are met:
1. Not eligible for Aurora Super Advantage financing.
2. Applicants must have sufficient verified cash reserves to cover six months of PITI after closing and after paying any moving expenses not covered by the employer.
3. Acceptable employment history covering a two-year period for RLP is documented. Generally, RLP may not be self-employed. Exceptions considered on a case-by-case basis depending upon the nature of the RLP's business.
4. A letter of intent to seek employment in a similar field is provided.
5. Unmarried borrowers must have a history of joint financial relationship with each other (i.e., joint bank accounts; joint obligations, etc.).
6. For all products:
   a. LTV 80% or less: 100% of the RLP's income may be used to help qualify the borrower.
   b. LTV > 80%:
      i. 75% of the RLP's income may be used for qualifying.
      ii. There must be strong demand for RLP's profession in new area.

**505.2-19    Rental Income**

The most recent year's tax returns, Schedule Es or copies of executed current leases are required for verifying rental income. If leases are provided, 25% of the rental income will be deducted for maintenance, repairs and vacancies. If tax returns are provided, the actual information from the tax returns will generally be used.

Verification of rental income on Reduced Documentation loans will be required when the stated rental income does not appear reasonable. Cash flow will be stated rental income reduced 25% for maintenance, repairs and vacancy minus PITI.

CONFIDENTIAL                                                                      LEH-OAK_0000044

Net Income Calculations for all loans:

1.  One-to-four-unit residential investment property (subject or other real estate owned) and commercial property: Calculate the net cash flow by deducting the monthly vacancy factor/maintenance expenses and mortgage payment(s) for the property from the lower of the actual or market rents. Positive cash flow will be added to the total monthly income. Negative cash flow must be included in total monthly obligations.

2.  Two- to four-unit owner-occupied property (subject property): Calculate the monthly operating income by deducting the monthly vacancy factor/maintenance expenses from the rental income derived from the non-owner-occupied units only. This figure should be added to the applicant's monthly income. The monthly housing expense to income ratio should be calculated by using the total PITI for the subject property.

Note: Please refer to the Mortgage Maker Program Profile for additional negative cash flow guidelines specific to Mortgage Maker.

### 505.2-20    Salaried Income/Wage Earner Income
Salaried income is verified using current pay stub covering a 30-day period, W2s covering the most recent two-year period or direct written verification from employer.

### 505.2-21    Seasonal Income
Some borrowers may regularly work part-time jobs during certain times of the year (i.e., every Christmas or summer). Income from seasonal employment may be considered as Stable Monthly Income if the applicant has worked the same job "in season" for the past two years and expects to be rehired for the next season. Verifications should include W-2 forms for the previous two years and a verification of employment. If borrower is employed by a party involved in the transaction (i.e., employed by seller or real estate agent), personal federal tax returns covering the most recent two-year period will be required.

### 505.2-22    Self-Employment Income
An applicant is considered self-employed when his/her income is derived from a business in which he/she maintains a majority owner interest or can otherwise exercise control over the business' activities. Generally a 25% or more ownership interest in the business is considered a majority.

In cases where the applicant is self-employed, the applicant must submit his/her complete signed federal tax returns (business and personal) for the most recent two years plus year-to-date Profit and Loss Statement and Balance Sheet dated within 90 days of underwriting. Business tax returns may be omitted from the Submission Package if all of the following are met:

1.  File contains evidence the business has been in existence for at least five years; and
2.  Personal tax returns (1040s) for the most recent two years indicate income is increasing; and
3.  All funds for closing costs and reserves are derived from the borrower's personal resources (not from the business).

### 505.2-23    Social Security and Retirement Income
These types of income can be verified with an award letter, tax returns or bank statements evidencing regular monthly deposits. Social security survivor benefits must continue for at least three years in order to be used as income. Receipt of social security

CONFIDENTIAL                                                                          LEH-OAK_0000045

# UNDERWRITING GUIDELINES

and pension income is required on all Reduced Documentation loans when the borrower is under retirement age.

505.2-24    **Stock Options**

Stock options may be considered as qualifying income provided a clear history of receipt, the net value of the stock options and probability of continued receipt can be documented via copies of bank statements, stock option statements and letters from employers. Qualifying income will be the lowest of the following calculations:

1. "Exercised" value may be used if the borrower has received stock options for at least three years. To determine exercised value, divide the total net amount exercised (options converted to stock, then sold) by the number of years borrower has received the options.

2. "Cashable" value: This is the net value of options that are fully vested and eligible for sale. The cash value must be reduced by the amount of the funds necessary to complete the transaction and income reserves needed until the next future options become cashable.

3. "Future" value is the net value of options received but not yet eligible for sale by borrower. Qualifying income will be the net value divided by the number of months over which the options are granted. A minimum of 36-months of future options is required to include as qualifying income.

505.2-25    **Tips and Gratuities**

Tips and gratuity income may be acceptable if receipt of such income is typical for borrower's occupation (i.e., waitperson, taxi driver, etc.). Income should be received for at least 12 months and expected to continue. Income will be averaged over the time period verified. When tips and gratuities have been fully verified, the verified amount may be "grossed-up" 10%.

505.2-26    **Trust Income**

Trust income may be used if the trust is non-revocable and the income will continue for at least three years. A photocopy of the Trust agreement or the Trustee's statement confirming the amount, frequency and duration of the payments should be obtained to verify the income and continuance of the income.

505.2-27    **Unemployment Compensation**

Income derived from unemployment compensation is generally not to be considered stable due to the limited duration of its receipt. An exception to this would be an applicant employed in a field where weather affects the ability to work and where unemployment compensation is often received (i.e., construction). The income may be used to qualify on an exception basis when a two-year employment history in the same field of work is verified along with a two-year history of receipt of unemployment compensation. Verified income will be averaged over the time period verified.

505.2-28    **VA Survivors' Benefits/Dependant Care**

Income is acceptable if received for at least 12 months and expected to continue for at least three years. A copy of the award letter outlining the duration and amount of payments should be provided.

505.2-29    **Welfare Benefits**

Welfare benefits may be considered as Stable Monthly Income if the file contains direct written verification for the welfare agency addressing the amount, duration and frequency

CONFIDENTIAL

LEH-OAK_0000046

## UNDERWRITING GUIDELINES

of benefits.  Benefits must be likely to continue for three years.

### 505.3    EMPLOYMENT/INCOME DOCUMENTATION

### 505.3-1    Written Verification of Employment

Income and employment for non self-employed borrowers may be obtained via direct written verification from the borrower's employer.  The verification should be signed by a member of the company's human resource department or one of the business owners/officers.  At a minimum, the verification must include:
1. Borrower's name.
2. Position.
3. Dates of employment.
4. Base salary.

### 505.3-2    Pay Stubs and W2s

When the pay stubs and W2s are provided for income and employment verification, the documentation must meet the following criteria:
1. Be type written or computer generated.
2. Contain:
   a. Borrower's full name.
   b. Borrower's social security number.
   c. Employer's name.
   d. Year-to-date earnings.

### 505.3-3    Tax Returns

Tax returns, when required, must be signed by the borrower and contain all schedules and attachments.  Whenever tax returns are used to support income, an IRS 4506 must be signed at closing.

### 505.3-4    Verbal Verification of Employment (VVOE)

Verbal VOEs are required for all loans except No Doc loans unless otherwise stated in the applicable Program Profile.  VOEs should meet the following criteria:
1. Must be completed within five days of closing/disbursement.
2. Must confirm that the borrower is employed at time of verification.
3. Must confirm position and length of employment.

### 505.3-5    Age of Income Documentation

Unless otherwise stipulated in the Program Profile, the income documentation at closing may not be older than the following:

| Product | Expanded Options* | All Others |
|---|---|---|
| Existing Construction | 30 days | 120 days |
| New Construction | 30 days | 180 days |

*Direct written verification of employment may be no older than 60 days at closing; pay stubs may be no older than 30 days at close.

### 505.4    IRS 4506

An IRS 4506 document must be signed by the borrower whenever tax returns were used to determine qualifying income.  Refer to Program Profile for details.

Typically the 4506 must be signed at closing.  However, underwriting reserves the right to

CONFIDENTIAL                                                                    LEH-OAK_0000047

require the IRS 4506 on any file.  A signed and dated 4506 form is valid for up to 60 days.

### 505.5    THIRD-PARTY VERIFICATIONS

In lieu of standard income and employment documentation, Purchaser will accept income and employment verification reports via approved third-party verification services. *Third Party Verification Services, Form 413,* identifies a list of firms approved to provide this information.

# 506    RATIOS AND QUALIFYING

### 506.1    RATIOS

Sound underwriting judgment should be exercised when considering any ratio calculations.  Ratios are general benchmarks, not definitive guidelines.  The overall merits of the file will be considered when applying ratio guidelines.  As such, underwriters may approve loans with ratios exceeding guidelines and decline loans that are within these parameters.  Refer to applicable Program Profiles for ratio guidelines.

### 506.2    HOUSING PAYMENT TO INCOME RATIO

The monthly housing expense is the sum of the following charges as they apply to each loan divided by the applicant's Stable Monthly Income:
1.  Monthly principal and interest (or interest-only payment if applicable) payment on the applicant's primary home.
2.  1/12th of the annual hazard insurance premium.
3.  1/12th of the annual real estate taxes.
4.  1/12th of the annual flood insurance premium, when applicable.
5.  Monthly leasehold payments, when applicable.
6.  Monthly homeowner association dues, condominium maintenance fees, monthly assessments, when applicable.
7.  1/12th of the annual private mortgage insurance premium, when applicable.
8.  Monthly payment for other financing, when applicable.
9.  For existing equity lines of credit, the payment made on the outstanding balance should be used for qualification.  For new Aurora HELOC loans or Expanded Options loans, the payment will be based on the maximum possible balance.

### 506.3    DEBT TO INCOME RATIO

Debt to income ratio (DTI) is calculated by the sum of the following divided by the applicant's Stable Monthly Income:
1.  Monthly housing expense as calculated above.
2.  Monthly payments on all existing installment debts with more than ten payments remaining. Debt that is paid off at closing may be excluded from the DTI provided the payoff of debt is a condition of underwriting approval (with file evidencing the payoff). If the payment is large and the debt has been paid down to <10 months:
    a.  The payment may be excluded from the DTI if the borrower has sufficient verified assets in excess of required reserves to pay the debt in full; or
    b.  Include in DTI with maximum DTI not to exceed 5% above the maximum permitted (i.e., on Classic fixed-rate, published DTI is 45%; if large payment installment debt with <10 months remaining is included, DTI may be as high as 50%).
3.  For revolving loans, the minimum required payment as stated on the credit report or current statement should be used. If the minimum required payment is unavailable,

CONFIDENTIAL                                                                LEH-OAK_0000048

# UNDERWRITING GUIDELINES

payments will be calculated at 4% of the outstanding balance. Revolving loans cannot be paid down or paid off to assist with qualifying except:
  a. Expanded Options: Loans paid down to less than 10 months or paid off will be excluded from long term debts.
  b. Mortgage Maker: Loans paid off may be excluded from long-term debt (loans paid down will be included).
4. Monthly alimony, child support or separate maintenance fees with ten or more payments remaining. File must contain evidence of the duration of support payments if less than ten payments remain.
5. Any negative cash flow from rental property owned, on a monthly basis.
6. Any monthly housing expense (except bridge loans for properties currently listed) for a home that has not been sold, rented, or assumed including taxes, insurance and maintenance costs. For Expanded Options loans, bridge loan financing must be included in the ratio calculation.
7. Business debts for which the applicant is personally liable. This includes business-paid personal debt, unless proof of payment by business is established. These debts may be excluded if a minimum of six months of consecutive canceled checks from the business are provided, the account has a satisfactory payment history, and review of the business financials indicates the expense has been included in the Company's cash flow. Alternative verification may include tax returns and/or a letter from the accountant indicating that this debt is paid by the business.
8. Repayment for loans against a financial asset (retirement/savings plan, insurance policy) may be excluded from the total debt ratio provided the borrower can repay the debt by liquidating the asset.
9. Lease obligations, regardless of time remaining on the lease.
10. Deferred loans will be included as a long-term obligation.

506.4    **CONTINGENT LIABILITY**

Debts which have been co-signed by the borrower may be excluded from the borrower's ratio calculations under the following scenarios:
1. Property buyout of former co-owner (i.e., divorce)—file must include evidence of transfer of ownership.
2. Mortgage assumption by third party without a release of liability—provide copy of formal assumption agreement and evidence of transfer of ownership. Do not include payment history and assumption does not need to release the borrower from liability.
3. Court-ordered debts—a copy of the court-order assigning the debt to another party is required.
4. Co-signed accounts evidence (i.e., canceled checks)—
  a. Account has been paid timely for last six months and,
  b. Account is being paid by someone other than the borrower for at least six months.

506.5    **DISPOSABLE INCOME (AKA RESIDUAL INCOME)**

Disposable income is the amount of income remaining after the borrower has paid all expenses including taxes, housing payments and all long-term liabilities. Some products require borrowers meet a disposable income level. When the Program Profile indicates disposable income is a consideration of the approval process, disposable income is calculated as follows:

Gross Income – taxes (if taxable income) – payroll deductions for repayment of 401(k) debt – housing expense – long-term obligations = amount of disposable income.

CONFIDENTIAL                                                                    LEH-OAK_0000049

If the actual tax amount is not available (i.e., self-employed borrower, etc.), income should be reduced 30%. Non-taxable income should not be "grossed-up" before calculating the residual income.

Borrowers that fail the disposable income test may be ineligible for financing. Exceptions considered case-by-case.

506.6    **COMPENSATING FACTORS**

Judgment must always be used in determining whether to make exceptions for deficiencies such as higher debt ratios on an individual transaction. The following factors will be considered at the underwriter's sole discretion:

1. Evidence of a large down payment towards purchase of the property or evidence of a large equity position on a refinance.
2. Demonstrated ability by the applicant to accumulate savings.
3. Evidence of substantial liquid net worth or reserves before and after closing.
4. Demonstrated ability by the applicant to devote a greater portion of his/her income to basic needs like housing expenses. An applicant who has carried a similar mortgage payment, regardless of his/her debt ratios should be considered a better risk than an individual who is experiencing a substantial increase in his/her monthly housing expense.
5. Evidence of the applicant's ability to maintain an excellent credit history and demonstrate proper debt management.
6. Evidence of substantial residual monthly income.

# 507  PRIVATE MORTGAGE INSURANCE

Unless otherwise stipulated in the Program Profile, private mortgage insurance or "No MI" pricing must be obtained when the LTV exceeds 80%.

507.1    **PRIVATE MORTGAGE INSURANCE COVERAGE**

Standard fixed-rate private mortgage insurance is required on all Fixed-Rate and ARM loans which have an initial fixed-rate period for the first five or more years. Non-fixed payment mortgage insurance is required on ARMs with initial change dates less than five years and any loan subject to a temporary buydown. Monthly mortgage insurance payment plans are acceptable. Financed mortgage insurance may be permitted if specified in the Program Profile.

Refer to the applicable Program Profile for mortgage insurance coverage amounts.

507.2    **ACCEPTABLE MORTGAGE INSURANCE COMPANIES**

Acceptable private mortgage insurance companies are identified in the Program Profile. Not all mortgage insurance companies will accept/provide insurance under the guidelines set forth in this Seller's Guide or those outlined in the applicable Program Profile. Clients are encouraged to contact their preferred mortgage insurance provider for eligibility requirements.

507.3    **"NO MI" PRICING**

"No MI" pricing may be permitted in place of obtaining mortgage insurance on certain programs. Refer to applicable Program Profile for "No MI" eligibility.

Underwriting reserves the right to require mortgage insurance coverage on any loan.

CONFIDENTIAL                                                                                                LEH-OAK_0000050

# UNDERWRITING GUIDELINES

## 508 PROPERTY

### 508.1 APPRAISER QUALIFICATIONS

Real estate appraisers are to be state-certified or state-licensed according to the Code of Federal Regulations, Title 12, Chapter 34-12 -12 CFR 34.  Appraisals for properties where the transaction value (transaction value is defined as the higher of: sale price or appraised value) is equal to or greater than $1,000,000 must be completed by a state-certified real estate appraiser.  Additionally, appraisals for properties that are considered to be "complex" must be completed by state-certified real estate appraisers.

It is the Client's responsibility to ensure that appraisers used by them meet these requirements in addition to any additional requirements they may have for appraiser approval.  Simply having an appraisal license or certification credential does not validate or imply an individual appraiser's competence.  Clients are strongly urged to choose appraisers based on their professional credentials and experience relative to the type of property being appraised and difficulty of the appraisal assignment.

### 508.1-1 Appraiser Trainees

Appraisals performed by "Appraiser Trainees" (or the equivalent, some states call Trainees "Registered Appraisers") are only acceptable if the "Trainee" holds a "Trainee" credential from the state licensing authority.  Any appraisal completed by an "Appraiser Trainee" must include:

1. An interior and exterior inspection of the subject property by a State-Certified Appraiser (unless an exterior only appraisal inspection is the minimum required by Aurora's guidelines as outlined in the Program Profile); and
2. An exterior inspection of the comparable sales, by a State-Certified Appraiser who signs the appraisal as the "Supervisory Appraiser".

Appraisals performed by Trainees without the additional inspection requirements must be referred to the Aurora Appraisal Department for a desk review.

Appraisals of complex properties and properties where the transaction value (transaction value is defined as the higher of: sale price or appraised value) is equal to or in excess of $1,000,000 must be completed and signed by a State-Certified Appraiser.  Trainees may provide significant professional assistance and be identified in the appraisal certification but Trainees may not sign the appraisal.  The following matrix illustrates the various signature combinations that are acceptable.

| Signature Combinations | | Transaction value <$1M and Non-Complex Property | Transaction value ≥$1M or Complex Property |
|---|---|---|---|
| Appraiser (left hand signature) | Supervisory Appraiser (right hand signature) | | |
| Trainee | None | Unacceptable. A new appraisal must be required. | Unacceptable. A new appraisal must be required. |
| Licensed | None | Acceptable | Unacceptable. Certified appraiser must sign as Supervisor. When a |

CONFIDENTIAL                                                              LEH-OAK_0000051

# UNDERWRITING GUIDELINES

| Signature Combinations | | Transaction value <$1M and Non-Complex Property | Transaction value ≥$1M or Complex Property |
|---|---|---|---|
| | | | licensed individual is the appraiser signing on the left hand side of the report/certification, a Certified Appraiser must inspect the interior and exterior of the subject property and exterior of the comparable sales. The Certified Appraiser must also sign the appraisal as the Supervisory Appraiser. If these inspection requirements are not met, the appraisal must be referred to the Aurora Appraisal Department for a desk review. |
| Certified Residential or General | None | Acceptable | Acceptable |
| Trainee | Licensed Appraiser | Unacceptable. Certified appraiser must sign as Supervisor. When a Trainee is the appraiser signing on the left hand side of the report/certification, a Certified Appraiser must inspect the interior and exterior of the subject property and exterior of the comparable sales. The Certified Appraiser must also sign the appraisal as the Supervisory Appraiser. If these inspection requirements are not met, the appraisal must be referred to the Aurora Appraisal Department for a desk review. | Unacceptable. A new appraisal must be required. |
| Licensed | Licensed | Acceptable | Unacceptable. A new |

CONFIDENTIAL

LEH-OAK_0000052

# UNDERWRITING GUIDELINES

| Signature Combinations | | Transaction value <$1M and Non-Complex Property | Transaction value ≥$1M or Complex Property |
|---|---|---|---|
| | | | appraisal must be required. |
| Certified Residential or General | Licensed | Acceptable | Acceptable |
| Trainee | Certified Appraiser | Acceptable with interior inspection by Certified Appraiser. If these inspection requirements are not met, the appraisal must be referred to the Aurora Appraisal Department for a desk review. | Unacceptable. Trainee appraisers are not allowed to sign the appraisal report/certification. If these requirements are not met, the appraisal must be referred to the Aurora Appraisal Department for a desk review. |
| Licensed | Certified Appraiser | Acceptable | Acceptable with interior inspection by Certified Appraiser |
| Certified Residential or General | Certified Appraiser | Acceptable | Acceptable |

508.2    **APPRAISAL REPORT FORMS**

For uniformity and efficiency, all appraisers are required to use appraisal report forms that are acceptable to FNMA/FHLMC. Unless otherwise permitted in the applicable Program Profile, the following appraisal report forms should be used:

1. *Uniform Residential Appraisal Form, FNMA Form 1004;* or
2. *Small Residential Income Property Appraisal Report, FNMA Form 1025;* or
3. *Individual Condominium Unit Appraisal Report, FNMA Form 1073;* or
4. *Individual Cooperative Appraisal Report, FNMA Form 2090.*
5. *Appraisal Update and/or Completion Report, FNMA Form 1004D*
6. *Two- to Four-Unit Residential Appraisal Field Review Report, FNMA Form 2000A*

The following items must be contained in the appraisal report:

1. *A signed Certification and Statement of Limiting Conditions, FNMA Form 1004B.*
2. A street map showing the location of the subject property and all sales comparables used.
3. An exterior building sketch of the dwelling and any other improvements of significant value indicating dimensions. A floor plan sketch is not required unless the floor plan suffers from functional obsolescence resulting in decreased value or limited marketability. For units in condominium or cooperative projects, interior perimeter unit dimensions are required instead of exterior building dimensions.
4. Color photographs (digital permitted) of the front, street and rear views of the subject property. Black and white photos may be acceptable if the photos are original and provide a clear and legible picture of the subject property.
5. Color photographs of the front view of each property used as a comparable sale, listing or rental. Black and white photos may be acceptable if the photos are original and provide a clear and legible picture of the subject property.

CONFIDENTIAL                                                      LEH-OAK_0000053

# UNDERWRITING GUIDELINES

6.  Interior photos of the subject are required when any of the following apply:
    a.  Loan amount exceeds $650,000.
    b.  To support statements regarding recently completed repairs or improvements when necessary.
    c.  To identify conditions of deferred maintenance.
    d.  To identify items of significant added value (i.e., high-quality outbuildings; swimming pools; unusually high-quality finishes, surrounding views, etc.).
7.  *Single-Family Comparable Rent Schedule, FNMA 1007* for non-owner occupied single-family dwellings except when any of the following are present (provided the loan is not Expanded Options loan):
    a.  Borrower qualifies with the entire PITI included in the ratios.
    b.  Tax returns for the previous two years have been provided and borrower qualifies based on the net cash flow as indicated on the 1040s.
    c.  CLTV/HCLTV is 60% or less.
8.  *Operating Income Statement, FNMA 216* for one- to four-unit properties is required except when any of the following are present (provided the loan is not Expanded Options loan):
    a.  Borrower qualifies with the entire PITI included in the ratios.
    b.  Tax returns for the previous two years have been provided and borrower qualifies based on the net cash flow as indicated on the 1040s.
    c.  CLTV/HCLTV is 60% or less.
9.  Any other data—as an attachment or addendum to the appraisal report form— necessary to provide an adequately supported and credible estimate of market value.
10. Appraisal report must contain an analysis of all agreements of sale, options or listings for the subject property current as of the effective date of the appraisal, and an analysis of all sales of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.
11. Appraisal report must contain an analysis of all sales of the comparables that occurred within the past one (1) year prior to the effective date of the appraisal.

Purchaser will accept appraisal reports which have been transmitted electronically using facsimile machine, internet, wireless transmissions, or other types of electronic transmissions provided the following are met:
1.  The appraisal report identifies the appraiser and is signed by the appraiser. Digitized signatures or images are acceptable as long as the signature or image is controlled by a personalized identification number and the appraiser has sole personalized control of affixing the signature.
2.  Client represents and warrants, upon Delivery of the loan, that the appraisal report was created (developed and reported) by the appraiser(s) whose name(s) appears on the appraisal report and that the appraisal is physically complete, unaltered and was submitted by the identified appraiser(s).

508.3    **AGE OF APPRAISAL**

An appraisal update must be obtained if the original appraisal report has an effective date that is over 120 days old (180 days if newly constructed) and must be completed within 120 days of closing. An appraisal update will be accepted for a period of up to one year after the effective date of the appraisal. Once the effective date of an appraisal exceeds one year, a new appraisal is required.

Note: All updates should be completed by the original appraiser based on an exterior inspection of the subject and a current search on listing activity for the subject. If the condition of the subject property presented in the original appraisal warrants, an interior inspection may be required as part of the appraisal update.

CONFIDENTIAL                                                                            LEH-OAK_0000054