Evans Prieston, Esq. 3062098
Tracy L. Henderson, Esq. 252888
*(Pro Hac Vice Pending)*
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for First Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **LEHMAN BROTHERS HOLDINGS., et al.,** | ) | **Case No. 08-13555-scc** |
| | ) | |
| Debtors. | ) | |

———————————————————————

**MOTION OF FIRST MORTGAGE CORPORATION PURSUANT TO RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE SEEKING AN ORDER VACATING THE "ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLER, FIRST MORTGAGE CORPORATION" AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     JURISDICTION AND VENUE...................................................................................1

III.    BACKGROUND .............................................................................................................1

IV.     ARGUMENT....................................................................................................................6

        A)    Legal Standard Governing a Rule 60(b)(6)
              Motion to Vacate an Order ..............................................................................6

        B)    LBHI Lacks Indemnification Rights....................................................... 6

              i)     There is No Evidence that Lehman Bank
                     Validly Assigned Indemnification Rights to LBHI................................. 9

              ii)    Notwithstanding the Lack of Proof of a Valid
                     Assignment, Lehman Bank Had No Claim for
                     Indemnity to Assign .....................................................................10

              iii)   LBHI Could Not Have Received an Assignment
                      of Indemnification Rights or Claims from Fannie
                     Mae as those Claims are not Assignable Without
                     Corresponding Assignments of the Notes  ..........................................13

        C)    All Claims Assigned to LBHI by Lehman Bank and
              Fannie Mae Are Barred by the Statute of Limitations……………………………..15

IV.     CONCLUSION................................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*ABB Indus. Sys., Inc. v. Prime Tech*., Inc., 120 F.3d 351, 360 (2d Cir. 1997)    16

*ACE Sec. Corp. v. DB Structured Prods., Inc., 112* A.D.3d 522, 523
    (N.Y. App. Div. 1st Dep't 2013    16

*Aurora Commer. Corp. v. Std. Pac. Mortg*., 2014 U.S. Dist. LEXIS 36150,
    14-15 (D. Colo. Mar. 19, 2014)    17

*Badiak v. White Plain Kensington*, LLC,
    31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011)    10

*Boehner v. Heise* et al.
    2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009)    6

*Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., No.* 13 CIV
    6482 PAC, 2014 WL 3819356    15,16,17

*Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993)    15

*Great American Ins. Co. v. United States*, 575 F.2d 1031, 1034 (2d Cir. 1978)    18

*Hahn Automotive Warehouse, Inc. v. Gateway Zurich Insurance Co.*,
    2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187    15,16

*Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*    3,17
    793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011)

*Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co*.
    55 A.D.3d 671, 673-674 (N.Y. App. Div. 2d Dep't 2008)    12

*Home Equity Loan Trust, Series 2007 – HE3 v. DB Structured Prods., Inc.,*
    No. 13 CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar 20, 2014)    16

*International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc*.
    36 N.Y.2d 121, 126 (N.Y. 1975)    11,13

*Hooper Associates, Ltd. v. AGS Computers, Inc*., 74 N.Y. 2d. 487, 492    7
    (N.Y. 1989).

*John J. Kassner & Co. v. City of N.Y.*, 46 N.Y. 2d 544, 551 (1979)    17

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*    3,17
    793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011)

*Long Island Radiology v. Allstate Ins. Co*., 36 A.D.3d 763, 765
    (N.Y. App. Div. 2d Dep't 2007    18

*Nomura Asset Acceptance Corp. Alternative Loan Trust*, *Series*    17
    *2005-S4 v Nomura Credit & Capital, Inc.,* 39 Misc. 3d
    1226(A) (N.Y. Sup. Ct. 2013)    17

*Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854,
    856 (N.Y. Sup. Ct. 1977    18

*Security National Mortg. Co. v. Aurora Bank FSB*    2,3,7,11,13
    2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

*Solomon v. City of New York*
    11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App. Div. 1985), aff'd,
    70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987)    8

*State v. City of Binghamton*, 1979, 72 A.D.2d 870, 421 N.Y.S.2d
    950 (3d Dep't)    15,16

*Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp*.,
    2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003)    16,17

*Tonking v. Port Authority of N.Y. and N.J.*
    3 N.Y.3d 486, 821 N.E.2d 133, N.Y.S.2d 708 (N.Y. 2004);
    *Solomon v. City of New York*, 11    A.D.2d 383, 489 N.Y.S.2d
    592 (N.Y. App. Div. 1985), aff'd, 70 N.Y.2d 675, 512 N.E.2d
    546, 518 N.Y.S.2d 963 (N.Y. 1987)    7

*U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.,*
    991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014)    16,17

*Wells Fargo Bank, N.A. v. JP Morgan Chase Bank, N.A*., No. 12-CV
    6168, 2014 WL 1259630    16

## STATUTES

28 U.S.C. §157(a)    1

28 U.S.C. §1334    1

28 U.S.C. §1408    1

28 U.S.C. §1409

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 60                                                                                   1

Rule 60(b)                                                                              6

Rule 60(b)(6)                                                                          6

Rule 9024                                                                              1

**OTHER AUTHORITIES**

6 Williston, Contracts 2004                                                  15

N.Y. C.P.L.R. § 206                                                            15

**EXHIBITS**

Loan Purchase Agreement ("LPA")                                    A
Seller's Guide                                                                      B
Fannie Mae Settlement Agreement                                     C1
Freddie Mac Settlement Agreement                                    C2
ADR Indemnification Procedures Order                              D
Demand Letter                                                                   E
ADR Indemnification Procedures Notification Letter          F
Assignment Agreement                                                      G
Loss Statements                                                                 H
Purchase Advice                                                                I

## I.  INTRODUCTION

1.      First Mortgage Corporation ("First Mortgage") by and through its undersigned counsel, American Mortgage Law Group, hereby submits this motion (the "Motion") pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure seeking an order vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors (the "ADR Order") against Mortgage Loan Seller, First Mortgage.

2.      As more fully set forth herein, First Mortgage respectfully submits that the ADR Order should be vacated as: (1) Lehman Brothers Holdings, Inc. ("LBHI") does not possess a valid right to be indemnified by First Mortgage; and (2) all claims assigned to LBHI are barred by the statute of limitations.

## II.  JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This Motion is filed pursuant to Rule 60 of the Federal Rules of Civil Procedure as made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure.

## III.  BACKGROUND

5.      This matter concerns LBHI's attempt to enforce an indemnification remedy against First Mortgage in connection with its sale of residential mortgage loans to Lehman Brothers Bank, FSB ("Lehman Bank").

6.      First Mortgage entered into a Loan Purchase Agreement with Lehman Bank on January 27, 2005.  A copy of this Loan Purchase Agreement ("LPA") is annexed hereto as *Exhibit A*.

7.      The LPA incorporates by reference a Seller's Guide (the "Seller's Guide"), which governed the rights and obligations of the parties. A copy of the portion of the Seller's Guide provided to First Mortgage is annexed hereto as *Exhibit B*.

8.      The Loan Purchase Agreement and the Seller's Guide were to be governed and interpreted in accordance with New York law.  *See Exhibit A* at §8.

9.      LBHI was not a party to the January 27, 2005 LPA. See *Exhibit A*.

10.      The Seller's Guide contains a section entitled "Representation, Warranties, and Indemnifications," which contains sub-subsections setting forth certain representations and warranties being made by First Mortgage, obligating First Mortgage to repurchase mortgage loans from Lehman Bank in certain circumstances, and defining First Mortgage's obligation to indemnify (the "Indemnification Provision").  *See Exhibit B* at §§710-711.

11.      LBHI purports to be the assignee of a contractual right to the remedies for repurchase and indemnification (the "Indemnification Rights") against First Mortgage arising from the Indemnification Provision contained in the Seller's Guide. See *Exhibit B at §710 and 711and E.*

12.      Lehman Bank purportedly acquired two mortgage loans from First Mortgage pursuant to one of the Loan Purchase Agreements. See *Exhibit E and F.*

13.       Lehman Bank thereafter sold those mortgage loans to LBHI "without recourse," in exchange for full compensation and ALS was the servicer.  See *Security National Mortg. Co. v. Aurora Bank FSB*, 2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

14.       These mortgage loans were subsequently "transferred, directly or indirectly, to upstream investors ranging from government sponsored entities (e.g.,

Fannie Mae), large financial institutions, and/or securitization trusts that issued residential mortgage backed securities" by LBHI. See *Docket #42153* at ¶16.

15.    LBHI alleges that certain mortgage loans originated by First Mortgage, and sold to Lehman Bank, were eventually sold by LBHI to Fannie Mae.

16.    On September 15, 2008, LBHI and twenty-two of its affiliates filed petitions seeking relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy"). See http://dm.epiq11.com/LBH/Project# (last visited March 18, 2015).

17.    Lehman Bank, was not, and is not, a party to the Bankruptcy. See id.; *Security National Mortg. Co.,* 2014 U.S. Dist. LEXIS 177481 at *4; *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co*., 793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011) (stating that LBHI is a parent company of Lehman Bank).

18.    On September 22, 2009, Fannie Mae filed a proof of claim in the Bankruptcy in the approximate amount of not less than $19,058,000,000.00 (the "Claim"). See *Claim No. 29557*. A portion of the Claim was attributable to breach of warranty and indemnification causes of action (the "Fannie Mae Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Fannie Mae. *See id.* at ¶1.2.

19.    Freddie Mac filed a proof of claim in the amount of $16,100,024.63 on September 22, 2009 as well (the "Freddie Mac Claim"), a portion of which was attributable to breach of warranty and indemnification causes of action (the "Freddie Mac Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Freddie Mac. See *Claim No. 33576 ¶8.*

20.    On January 22, 2014, LBHI, Fannie Mae, and non-debtors Aurora Commercial Corporation and Aurora Loan Services LLC, entered into a settlement

agreement (the "Fannie Mae Settlement Agreement") settling the Claim. A copy of the Settlement Agreement is annexed hereto as *Exhibit C1*. Lehman Bank was not a party to the Settlement Agreement. See *Exhibit C1.*

21.    On February 12, 2014, those same parties entered into a settlement agreement (the "Freddie Mac Settlement Agreement") settling the Freddie Mac Claim. A copy of the Freddie Mac Settlement Agreement is annexed hereto as *Exhibit C2.*

22.    As part of the Settlement Agreement, Fannie Mae agreed to turn over documents to LBHI evidencing the Fannie Mae Warranty Claims, and to "sell, assign, or otherwise transfer" any claims that Fannie Mae held against the originating lenders. See *Exhibit C* at ¶3.1; page 5; *Exhibit C2* at ¶2.2(b); 4.1.

23.    On January 23, 2014, LBHI filed a motion by order to show cause seeking the Court's approval of the Settlement Agreement. *See Docket #42153*.

24.    In its motion, LBHI alleged that settling the Fannie Mae Warranty Claims would enable LBHI to pursue corresponding indemnification claims it alleged to hold against the originating lenders. See *Id.* at ¶18.

25.    On January 31, 2014, the Court entered an order approving the Settlement Agreement. *See Docket #42420.*

26.    On May 29, 2014, LBHI brought a motion (the "ADR Motion") seeking to implement Alternative Dispute Resolution Procedures and obligate certain originating lenders, including First Mortgage, to participate in mediation in connection with its alleged indemnification claims. *See Docket #44450.*

27.    On June 19, 2014, a hearing (the "Hearing") was held on the ADR Motion.

4

28.     At the Hearing the Court communicated its inclination to grant the ADR Motion, while also agreeing to provide an "escape hatch" from mediation by entertaining applications setting forth specific reasons why a lender should be released from having to participate.

29.     On July 18, 2014, the Court entered the ADR Order.  A copy of the ADR Order is annexed hereto as *Exhibit D.*

30.     August 14, 2014, a letter was mailed by LBHI to First Mortgage purporting to be a "Demand for Payment" (the "Demand Letter").  A copy of the Demand Letter is annexed hereto as *Exhibit E.*

31.     In the Demand Letter LBHI identified itself as an assignee of Lehman Bank's "contractual rights," however no proof of any assignment was enclosed therewith. See *Exhibit E.*

32.     March 4, 2015, LBHI served an "Indemnification ADR Notice" on First Mortgage as required by the ADR Order, triggering First Mortgage' obligation to respond within 20 days.  A copy of the Indemnification ADR Notice is annexed hereto as *Exhibit F.*

33.     LBHI also provided First Mortgage with access to certain documents alleged to evidence its claims, however, the document purportedly evidencing a valid assignment of the Indemnification Rights from Lehman Bank to LBHI does not identify the January 27, 2005 Loan Purchase Agreement between First Mortgage and Lehman Bank with particularity. Instead, it merely lists First Mortgage in a list of hundreds of named lenders whose LPA's may or may not have been incorporated. A copy of the Assignment Agreement is annexed hereto as *Exhibit G.*

34.    First Mortgage now brings this Motion seeking to vacate the ADR Order as (1) LBHI does not possess a right to be indemnified by First Mortgage, and (2) all claims assigned to LBHI by Lehman Bank and Fannie Mae are barred by the statute of limitations.

## IV.  ARGUMENT

**A)    Legal Standard Governing a Rule 60(b)(6) Motion to Vacate an Order**

35.    Rule 60(b) of the Federal Rules of Civil Procedure provides grounds for a party to move the court for relief from a judgment or order.

36.    A motion for relief from a judgment or order under Rule 60 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure, may be granted on various grounds, including "for . . . any . . . reason that justifies relief."  See Fed. Rules Civ. P. Rule 60(b)(6). "Relief provided under Rule 60(b) is equitable in nature and is right to be guided by equitable principles." See *Boehner v. Heise* et al., 2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009).  There must be a showing that undue hardship will not result to other parties, and the movant must demonstrate that he possesses a meritorious defense.  Id at *12.

37.    First Mortgage submits that it has a meritorious defense as LBHI does not possess any enforceable claims against it as a matter of law.  For that reason, granting the Motion would not create undue hardship for LBHI as it does not possess any claims to be mediated, while denying the Motion and preserving First Mortgage's obligation to participate  in mediation, would create undue hardship for First Mortgage.

**B)    LBHI Lacks Indemnification Rights**

6

38.    The Indemnification Provision, from which the Indemnification Rights purportedly arise, provides as follows:

> [First Mortgage] shall indemnify [Lehman Bank] and [Lehman Bank's] designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages . . . that [Lehman Bank] may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to the Seller's Guide or the Loan Purchase Agreement. . . It is understood and agreed that any subsequent holder of any Note acquired hereunder by [Lehman Bank] shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. Exhibit B at §711.

39.    "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Associates, Ltd. v. AGS Computers, Inc*., 74 N.Y.2d 487, 492 (N.Y. 1989).

40.    Applying this well settled principal, a strict reading of the Indemnification Provision makes clear that First Mortgage is agreeing to indemnify (1) Lehman Bank; (2) Lehman Bank's designee; and (3) a subsequent holder of any Note, from any damages that Lehman Bank may sustain. See *Exhibit B* at §711.

41.    As LBHI was not a party to the Loan Purchase Agreement, and does not allege to be the current holder of any Note, one could conclude that LBHI is attempting to claim indemnification rights as the designee of Lehman Bank.

42.    As LBHI is not a party to the Loan Purchase Agreement the Court must be particularly strict when construing the Indemnity Provision.  See *Security National Mortgage Co*., supra at *35 ("When an unnamed party asserts coverage by an indemnification provision, the New York courts are particularly strict."); see also *Tonking v. Port Authority of N.Y.* and N.J., 3 N.Y.3d 486, 821 N.E.2d 133, N.Y.S.2d 708

(N.Y. 2004); *Solomon v. City of New York*, 11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App.

Div. 1985), aff'd, 70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987).

43.    In addition to the above Indemnification Provision, the portion of the

Seller's  Guide  provided to First Mortgage also contained a provision governing a

potential assignment of the Indemnification Rights by Lehman Bank.

44.    Section 713.3 of the Seller's Guide reads as follows:

> [Lehman Bank] shall have the right to assign its right and duties under the Loan
> Purchase Agreement and this Seller's Guide to any party without the consent of
> [First Mortgage].  [Lehman Bank] **shall notify** [First Mortgage] in writing of any
> such assignment. . . . [Lehman Bank] may also assign separately to any other
> party any or all representations, warranties or covenants . . . along with any or all .
> . . remedies available . . . for breach of any representations, warranty or covenant
> hereunder, including, without limitations, the repurchase and indemnification
> remedies.  Any such party shall be an intended third party beneficiary of those
> representations, warranties, covenants and remedies.  Id. at §713.3.

45.    Thus, while Lehman Bank's contractual rights were freely assignable,

Lehman Bank was required to provide First Mortgage with written notice of any such

assignment. *See Id.*

46.    As set fully set forth hereafter, LBHI does not possess a right to be

indemnified by First Mortgage as (1) there is no evidence that Lehman Bank validly

assigned the Indemnification Rights pursuant to any particular Loan Purchase Agreement

between First Mortgage and Lehman Brother's Bank FSB to LBHI; (2) notwithstanding

the lack of proof of a valid assignment of the Loan Purchase Agreement or other valid

assignment, Lehman Bank did not possess any claim for indemnification against First

Mortgage as a matter of law and therefore could not have assigned Indemnification

Rights greater than its own; and (3) LBHI could not have received an assignment of

indemnification rights or claims from Fannie Mae as Fannie Mae's rights to

indemnification were not assignable without corresponding assignments of the Notes.

8

     **i)**    **There is No Evidence that Lehman Bank Validly Assigned Indemnification Rights to LBHI**

47.    In this dispute LBHI claims to be an assignee of Lehman Bank's Indemnification Rights. See *Exhibit E.*

48.    Pursuant to the Seller's Guide, however, (portions of which were provided to First Mortgage by LBHI), Lehman Bank was required to provide written notice to First Mortgage of any such assignment. See *Exhibit B* at §713.3.

49.    Despite two opportunities to produce evidence of a valid specific assignment of any particular Loan Purchase Agreement and the corresponding Seller's pertaining to First Mortgage, as well as a copy of a *written notice* of any such assignment (i.e. either enclosed with the Demand Letter or amongst the documents provided in support of its ADR Indemnification Notice), LBHI has failed to provide such proof. See *Exhibit E.*

50.    The purported assignment does not specify which Loan Purchase Agreement between Lehman Bank and First Mortgage is applicable but merely generally references "Loan Purchase Agreements" in the WHEREAS section. The agreement attaches a list of *hundreds* of lenders it purports the assignment of "contractual rights" pertains to without identifying the January 27, 2005 LPA leaving the assignment too vague to apply to First Mortgage. Further, the purported assignment claims to memorialize an undated vague "prior agreement." See *Exhibit G.*

51.    For an assignment to be valid, the property must be sufficiently identifiable and there must be an intent to assign a present right in the subject matter of the assignment divesting the assignor of all control over that which is assigned. *In re Moskowitz, 14 B.R. 677, 681* (Bankr. S.D.N.Y. 1981) It must be determined if the assignment complies with the law and whether Lehman Bank possessed a right to be

9

indemnified at the time of the purported assignment as Lehman Bank sold the loans to

LBHI without recourse in exchange for full compensation. *Security National Mortg.Co.*,

*supra,* at *10-11, *43.

52.    In New York it is well settled that "[t]he assignment of rights does not

alter the nature of the rights assigned; the assignee merely stands in the shoes of the

assignor." *Badiak v. White Plain Kensington*, LLC, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct.

2011) (citing *Quantum Corporate Funding, Ltd. v. Westway Industries, Inc*., 4 N.Y.3d

211 (N.Y. 2005)). Therefore, without proof of a valid assignment of a particular Loan

Purchase Agreement and its terms and a corresponding Seller's Guide pertaining

specifically to First Mortgage, LBHI has failed to establish that it is a designee of

Lehman Bank entitled to assert the Indemnification Rights.

53.    On that basis, the ADR Order should be vacated and First Mortgage

should be relieved of its obligations to participate in mediation thereunder.

**ii)    Notwithstanding the Lack of Proof of a Valid Assignment, Lehman
Bank Had No Claim for Indemnity to Assign**

54.    Regardless of whether the assignment of Lehman Bank's Indemnification

Rights to LBHI can be proven to be valid, it is submitted that Lehman Bank had no claim
for indemnity to assign as a matter of law.

55.    As previously noted, LBHI purports merely to be an assignee of Lehman

Bank's "contractual rights" against thousands of lenders, and one of the many Loan

Purchase Agreements between Lehman and First Mortgage.[1] See *Exhibit E and G*.

55.    As    a    "stranger"    to    all of the    Loan Purchase Agreement    and

incorporated Sellers Guide    and    a    purchaser    "without recourse"    as to Lehman Bank,

LBHI has no enforceable rights or remedies against Lehman Bank.    Therefore, it must be

---

[1] Upon information and belief, LBHI does not purport to have taken assignment of the January 27, 2015
Loan Purchase Agreement. Notably, the January 27, 2015 Loan Purchase Agreements was not listed as an
asset or as an executory contract in LBHI's amended Bankruptcy schedules. *See Docket #3936.*

determined whether Lehman Bank possessed and, in turn, could have assigned an enforceable right or remedy against First Mortgage. *Security National Mortg.* Co., 2014 U.S. Dist. LEXIS 177481 at *43.

56.    Upon information and belief, Lehman Bank sold the loans it purchased from First Mortgage to LBHI "without recourse" in exchange for full compensation.   See *Security National Mortg. Co.*, 2014 U.S. Dist. LEXIS 177481 at *10-*11 ("When each of the Loans [were] sold by Lehman Bank to LBHI, Lehman Bank was fully compensated, i.e., at the time of the sale Lehman Bank was paid in full the amount that it had expended in each of the Loans"); Docket #47-7 ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

57.    Upon information and belief, these transactions were "established to protect the capital of Lehman Bank, and thereby enhance its loan purchasing capacity so as to be able to buy more loans for sale to, and for the benefit of, LBHI." *Security National Mortg. Co.,* 2014 U.S. Dist. LEXIS 177481 at *13.

58.    Under this system Lehman Bank could not suffer any loss from a loan that it sold to LBHI. *Id.* at *12.

59.    "It is elementary ancient law that an assignee never stands in any better position than his assignor.  He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor."  See *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc*., 36 N.Y.2d 121, 126 (N.Y. 1975).

60.    Indeed, it is well settled that "[t]he assignment of rights does not alter the nature of the rights assigned; the assignee merely stands in the shoes of the assignor." *Badiak v. White Plain Kensington*, LLC, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011)

61.    Here, First Mortgage agreed to certain obligations including repurchase, cure and indemnification as remedies for Lehman Bank for damages incurred in connection with its purchase of mortgage loans. See Exhibit B at §710 and 711.

62.    However, pursuant to the manner by which Lehman Bank and LBHI structured their transactions, Lehman Bank did not, and could not, incur any damages from its subsequent sale of these loans to LBHI.  See Docket #47-7 ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

63.    As any obligation to indemnify, whether a remedy or pursuant to an indemnification agreement, extends only to those damages an entity is legally obligated to pay. Thus, it naturally follows that a release discharging all liability relieves the duty of indemnification because it effectively eliminates any factual or legal grounds on which the duty or obligation to indemnify may be based.  *Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co.*, 55 A.D.3d 671, 673-674 (N.Y. App. Div. 2d Dep't 2008) (citing *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 40 A.D.3d 978, 980 (N.Y. App Div. 2d Dep't 2007) and quoting *McDonough v.. Dryden Mut. Ins. Co*., 276 A.D.2d 817, 818 (N.Y. App. Div. 2d Dep't 2000)).

64.    Applying these principals to the matter at hand, it is clear that Lehman Bank's sale of the mortgage loans to LBHI "without recourse" for full compensation relieved First Mortgage of its duty to repurchase or indemnify Lehman Bank as a matter

of law.  See *Security National Mortg. Co*., 2014 U.S. Dist. LEXIS 177481 at *43 (finding

that Lehman Bank had no rights, damages, or claims it could assert against the mortgage

originator under an indemnification provision in a Loan Purchase Agreement at the time

of its assignment of rights to LBHI, and therefore no indemnifications rights could be

asserted against the originating lender by LBHI).

65.     Lehman Bank could not assign Indemnification Rights greater than

those  it possessed as a matter of law. *International Ribbon Mills, Ltd. v. Arjan Ribbons,*

*Inc.*, 36 N.Y.2d at 126.

66.     On that basis, First Mortgage respectfully submits that the ADR Order

should be vacated, relieving First Mortgage from its obligation to participate in mediation

thereunder.

**iii)    LBHI Could Not Have Received an Assignment of Indemnification**
**Rights or Claims from Fannie Mae as those Claims are not Assignable**
**Without Corresponding Assignments of the Notes**

67.     While LBHI does not purport to have received its Indemnification Rights

from Fannie Mae or Freddie Mac, as fully set forth hereafter, neither agency could have

assigned said rights and claims (the "Indemnification Rights and Claims") to LBHI as

their Indemnification Rights and Claims arose exclusively from its status as holder of the

Notes.

68.     Pursuant to the Indemnification Provision (in Section 711 of the partial

Seller's Guide provided to First Mortgage), both agencies possessed Indemnification

Rights against First Mortgage as the "subsequent holder of any Note." See *Exhibit B* at

¶711.

69.     Upon information and belief, however, no clause contained in the

Indemnification Provision, or anywhere else in the Seller's Guide, provided that those

13

Indemnification Rights could be assigned by a holder of the Notes without an accompanying assignment of those Notes. See generally *Exhibit B*.

70.    Significantly, in the Settlement Agreements, the agencies do not purport to assign any Notes to LBHI, but rather merely to "sell, assign, or otherwise transfer" any "claims" related to the any losses incurred that either held against the originating lenders. See *Exhibit C1* at ¶3.1; p. 5; *C2*

71.    Furthermore, upon information and belief based on assertions by LBHI, neither agency could not have assigned the Notes to LBHI as part of the Settlement Agreement as a substantial amount of the loans had already been liquidated. *See eg.,* A copy of the Loss Statements in one of the loans is annexed hereto as *Exhibit H*.

72.    While Section 711 of Seller's Guide provides that "the indemnification obligations of [First Mortgage] shall survive the termination of the Seller's Guide and the related Loan Purchase Agreement," nowhere in the Seller's Guide[2] does it provide that said obligations could be independently assigned after the liquidation of the Notes. See *Id*. at §711.

73.    While it is likely that Fannie Mae or Freddie Mac may have been able to pursue its Indemnification Rights and Claims against First Mortgage after liquidating the Notes, the Seller's Guide does not support any assertion that either could or did thereafter assign its Indemnification Rights Claims to LBHI. In this instance, neither agency settled any deficiencies or losses with LBHI without any corresponding assignment of the notes.

74.    Therefore, as Fannie Mae or Freddie Mac's Indemnification Rights and Claims arose exclusively from status as a holders of the Notes, its failure or inability to

---

[2] There is no evidence that the January 27, 2005 Loan Purchase Agreement and Seller's Guide was ever assigned to *Fannie Mae or Freddie Mac*.

assign the Notes to LBHI is fatal to any allegation by LBHI that it received an assignment of the Indemnification Rights and Claims from the agencies.

75.     Accordingly, as LBHI cannot claim to have received a valid assignment of Indemnification Rights from the Loan Purchase Agreement or Claims from either agency, First Mortgage submits that the ADR Order should be vacated.

### C)     All Claims Assigned to LBHI by Lehman Bank and Fannie Mae Are Barred by the Statute of Limitations

76.     LBHI also purports to possess claims against First Mortgage for breach of warranty (the "Breach of Warranty Claims").

77.     Upon information and belief, LBHI alleges to have obtained Breach of Warranty Claims (1) through the alleged assignment of Lehman Bank's "contractual rights," and (2) the Settlement Agreement with Fannie Mae.

78.     Regardless of how LBHI obtained its Breach of Warranty Claims, however, all claims are barred by the statute of limitations as a matter of law.

79.     In New York, a cause of action for breach of contract accrues at the time of the breach, even if no damages occur until later. *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993) "[T]he Statute runs from the time of the breach though no damage occurs until later." (6 Williston, Contracts § 2004, at 5641 [rev. ed. 1938], (quoted in McLaughlin, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C203:1, at 143)).

80.     New York law defines breach as when the party "possesses the legal right to demand payment" or when it first could have made the demand. See e.g., *State v. City of Binghamton*, 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive Warehouse, Inc. v. First Mortgage Zurich Insurance Co.*, 2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney); *Deutsche*

*Bank Nat. Trust Co. v. Quicken Loans Inc., No.* 13 CIV. 6482 PAC, 2014 WL 3819356, at *4 (S.D.N.Y. Aug. 4, 2014) (citing *Ace Sec. Corp. Home Equity Loan Trust, Series 2007 – HE3 v. DB Structured Prods., Inc.,* No. 13 CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar 20, 2014)); *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.,* No. 12-CV-6168, 2014 WL 1259630, at *3.

81.    Per New York law, the cause of action does not accrue when party actually makes a demand, chooses to seek a remedy, discovered the alleged breach, or when a party is injured.  *Lehman XS Trust,* Series 2006-4N ex rel. U.S. Bank Nat. Ass'n *v. Greenpoint Mortgage Funding, Inc.,* 991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014); *Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Products*, Inc., 958 F. Supp. 2d 488, 500 (S.D.N.Y. 2013); *ABB Indus. Sys., Inc. v. Prime Tech*., Inc., 120 F.3d 351, 360 (2d Cir. 1997); *Structured Mortgage Trust 1997-2 v. Daiwa Fin. Corp., No.* 02 CIV. 3232 (SHS), 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003).

82.    Further, when the breach involves a sum of money owed pursuant to a contract, the accrual is also when the "legal right to make a demand is originally possessed". *See e.g., State v. City of Binghamton,* 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive Warehouse, Inc. v. First Mortgage Zurich Insurance Co.,* 2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney).

83.    It is well settled that a breach of warranty claim arising out of a loan purchase agreement against a mortgage loan originator occurs at the time the loans are delivered to the purchaser because that is when the representations and warranties were breached as they were false when first made.  See, e.g., *ACE Sec. Corp. v. DB Structured Prods., Inc., 112* A.D.3d 522, 523 (N.Y. App. Div. 1st Dep't 2013); *Lehman Bros.*

16

*Holdings, Inc. v. Evergreen Moneysource Mortg. Co.,* 793 F. Supp. 2d 1189 (W.D. Wash. 2011); *Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp.*, 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003); *Nomura Asset Acceptance Corp. Alternative Loan Trust*, *Series 2005-S4 v Nomura Credit & Capital, Inc.,* 39 Misc. 3d 1226(A) (N.Y. Sup. Ct. 2013).

83.    Furthermore, the accrual date of the statute of limitations cannot be extended by delaying a demand for payment. See *Aurora Commer. Corp. v. Std. Pac. Mortg.*, 2014 U.S. Dist. LEXIS 36150, 14-15 (D. Colo. Mar. 19, 2014). And, a Court cannot interpret a provision such that it waives or extends the time from when a period of limitation is computed as it is against public policy. *John J. Kassner & Co. v. City of N.Y.*, 46 N.Y. 2d 544, 551 (1979).

84.    Moreover, an originating lender's failure to timely repurchase a loan or to provide indemnification does not constitute a separate breach of the loan purchase agreement for statute of limitations purposes because New York law does not recognize pre-suit remedial provisions as constituting separate causes of action. *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014)) ("'[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused. This issue has been repeatedly addressed and resolved [by New York courts.]")

85.    New York case law has found there are no practical differences between remedies when they all seek monetary damages. *Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Products, Inc*., 958 F. Supp. 2d 488, 501 (S.D.N.Y. 2013).

17

86.     Here, the Purchase Advise statements supplied by LBHI in connection with its claim conclusively establish that all loans giving rise its Breach of Warranty Claims were sold by First Mortgage to Lehman Bank between 2/1/2007 and April 26, 2007.  See *Exhibit I* (copies of the Purchase Advise statements).

87.     Therefore, as the Breach of Warranty Claims accrued upon the delivery of these loans to Lehman Bank, the six-year statute of limitations expired as to the entirety of these loans on April 26, 2007.[3]

88.     The fact that LBHI received an assignment of claims from either agency does not change this result as an assignee's rights can be no greater than those of the original assignor, see *Long Island Radiology v. Allstate Ins. Co.*, 36 A.D.3d 763, 765 (N.Y. App. Div. 2d Dep't 2007), and therefore for statute of limitations purposes Fannie Mae's cause of action against First Mortgage would have accrued when it would have accrued for Lehman Bank, no later than X.  See *Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854, 856 (N.Y. Sup. Ct. 1977) (dismissing a claim as untimely as a statute of limitations defense binds an assignee).

89.     The fact that LBHI furnished consideration in exchange for Fannie Mae's Breach of Warranty Claims also does not change this result as, without a contractual right to be indemnified by First Mortgage, LBHI is merely entitled to subrogation of the same rights and defenses possessed by Fannie Mae and Freddie Mac. See *Great American Ins. Co. v. United States*, 575 F.2d 1031, 1034 (2d Cir. 1978) ("Subrogation is based upon the principle of indemnity but is an exclusively derivative remedy.").

90.     Therefore, as the Breach of Warranty Claims held by either agency are subject to a statute of limitations defense, those claims, known to both Fannie Mae and

---

[3] LBHI may allege in its Opposition to be entitled to a tolling of the Statute of Limitations pursuant to 11 U.S.C. §108(a).  First Mortgage explicitly reserves its right to address such an argument in its Reply papers.

Freddie Mac in 2009 when they filed a claim herein, are still subject to those limitations after the claims were in the hands of LBHI. *See Id.*

91.    On that basis, First Mortgage respectfully submits that the entirety of LBHI's Claims are barred by the statute of limitations as a matter of law, and therefore the ADR Order should be vacated.

## V. CONCLUSION

92.    LBHI holds neither Indemnification Rights nor Breach of Warranty Claims against First Mortgage as a matter of law.   There is no evidence that Lehman Bank ever validly assigned its Indemnification Rights to LBHI.  Notwithstanding that fact, Lehman Bank did not possess any Indemnification Rights to assign to LBHI as Lehman Bank was fully compensated, without recourse, upon selling the subject loans to LBHI.  Fannie Mae could not have assigned its Indemnification Rights and Claims to LBHI as the Indemnification Provision did not provide for Indemnification Rights to be assignable by a subsequent holder of the Notes without a corresponding assignment of said Notes and they did not assign the Notes to LBHI. Furthermore, any Breach of Warranty Claims assigned by Lehman Bank or Fannie Mae to LBHI are barred by the expiration of the statute of limitations.

93.    Accordingly, LBHI has does not have any claims against First Mortgage and participating in mediation concerning those claims is unwarranted.

94.    Therefore, First Mortgage respectfully submits that this Court should vacate the ADR Order.

**WHEREFORE,** First Mortgage requests an order granting its motion in its entirety, along with any other and further relief as the Court deems just and proper.

Dated: March 31, 2015

/s/ Evans Prieston

Evans Prieston, Esq
Tracy L. Henderson, Esq
(*Admitted Pro Hac Vice*)
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for First Mortgage Company*