Hearing Date and Time:  April 8, 2015 at 10:00 a.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>                         Debtors. | Chapter 11<br>Case No. 08-13555 (SCC) |

**OBJECTION/JOINDER OF SANKATY ADVISORS, I IN
CONNECTION WITH DEBTORS' MOTION TO PERMIT
DISCLOSURE OF THE DERIVATIVES QUESTIONAIRES**

Sankaty Beacon Investment Partners, L.P.; Sankaty Credit Opportunities Grantor Trust; Sankaty Credit Opportunities II, L.P.; Sankaty Credit Opportunities III, L.P.; and Sankaty Special Situations I Grantor Trust (the "Sankaty Funds" or "Sankaty") respectfully joins in the objection (the "Objection") [Dk. 49132]) of certain creditors (the "Creditors") to the motion (the "Motion") [Dk. 48939] of LBHI as Plan Administrator and on behalf of its affiliates, together with the Creditors Committee ("Movants"), pursuant to section 107(a) of the Bankruptcy Code, to allow disclosure of the derivative questionnaires, notwithstanding the Court's Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Dk. 4271] (the "Bar Date Order").  Sankaty also writes separately to object to the Motion.

In support of its joinder and objection, Sankaty respectfully states as follows:

**PRELIMINARY STATEMENT AND BRIEF FACTUAL BACKGROUND**

1.     The Motion should be denied for two overall reasons—in addition to those set forth in the Objection (which we incorporate in full).  First, the Motion's rests on flawed legal

theory: that the Derivative Questionnaires[1] ("DQ") are presumptively public. That is wrong. The DQs, as Movants admit, are discovery materials. Discovery materials are presumptively ***not*** public. Movants fail even to cite dispositive Supreme Court case law decided thirty years ago on that all but requires the Motion should be denied for that reason alone. Second, Movants' policy argument that the DQs should be made available to all creditors to make discovery more efficient would have the perverse effect of massively increasing costs and satellite litigation.

2. Sankaty is a creditor of the Debtors. Each of the five Sankaty Funds entered into certain derivative contracts with Lehman Brothers Special Financing Inc. ("Lehman") prior to the commencement of these chapter 11 cases. On or about September 21, 2009, the Sankaty Funds timely filed proofs of claim seeking payment with respect to certain derivatives.

3. On or about October 21, 2009, the Sankaty Funds each submitted a DQ, as required by the Bar Date Order, to the secure website http://www. lehman-claims.com.[2]

4. There is no dispute on this Motion that proofs of claim constitute a legal requirement that a creditor set forth specific information and are to be "filed" pursuant to Bankruptcy Rule 3001, whereas the information contained in the DQ constitutes mere discovery.[3]

---

[1] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Disclosure Motion (as defined below).

[2] Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Dk. 4271]

[3] *Compare* Motion ¶ 14 *and* JPM Response ¶ 5, 10 *with* Objection Barclays Capital Inc., Barclays Bank PLC and affiliates to the Motion [D.I. 3654] Of The Debtors Pursuant To Section 502(B)(9) Of The Bankruptcy Code And Bankruptcy Rule 3003(C)(3), For Establishment Of The Deadline For Filing Proofs Of Claim, Approval Of The Form And Manner Of Notice Thereof And Approval Of The Proof Of Claim Form [Dk. 3820] ("Barclays' Bar Date Order Response" ¶¶ 2, 4):

> "Bankruptcy Rule 3001 … accords prima facie validity to a proof of claim filed in accordance with the Bankruptcy Rules. The Bankruptcy Rules, as well as case law interpreting these Rules, do not impose at the initial stage of filing a proof of claim the obligation to provide the mountain of information the Debtors would require with respect to Derivative Contracts and Guarantees of Derivative Contracts. …

5. Sankaty, like the Creditors, understood and relied on the protections of the Bar Date Order, that in submitting the DQs they would remain confidential as between the Debtors, the Creditors' Committee, their advisors and Sankaty. (Bar Date Order at 2, 9; Objection ¶¶ 3-5) The Movants and Debtors, too, understood that the Derivatives Questionnaires would remain confidential. (Objection at ¶¶ 6-8)

6. In or about July 2014, Sankaty settled its claims with the Debtors.

## ARGUMENT

7. The Motion is without factual, legal or functional merit.

8. First, the core premise of the Motion is that that, like proofs of claim, the DQs and the information they contain are "presumptively public under the law." (Motion ¶ 5, see id. ¶¶ 8, 10). The assumption is wrong, and Movants cite no case that stands for the proposition that any information supporting proofs of claim is either presumed to be public, or indeed, ordinarily filed with the Court. None of the cases cited in paragraphs 10-12 of the Motion involves a DQ or its equivalent.

9. In fact, Movants admit that they seek the relief purportedly to make the discovery process more efficient: "To be clear, the Derivative Questionnaires would not become publicly accessible on the Lehman claims website. Instead, ***Movants are seeking authorization to freely exchange the Derivative Questionnaires as discovery materials*** in connection with any

---

"The proposed Derivative and Guarantee Questionnaires the Debtors seek to impose one-sided discovery in the form of interrogatories and document requests on claimants, again in violation of the Bankruptcy Rules. Such one-sided discovery concerning derivative contracts through the mechanism of a bar date order is, of course, unprecedented, even in the largest of chapter 11 cases, and is in any event improper under the Bankruptcy Rules. Discovery relating to such claims, if any, may only be had after the Debtors file an objection to the claim, thereby initiating a contested matter pursuant to Bankruptcy Rule 9014, or by objecting to the claim as part of an adversary proceeding. In either case, discovery would be conducted pursuant to the protections of the Federal Rules and such discovery would operate in both directions (that is, creditors could also request additional information from the debtor)."

3

Lehman-related adversary proceeding or claim objection." (Motion ¶ 14; emphasis added)) The DQs are not, like proofs of claim, filed with anything; the secure website on which they now sit is akin to a discovery vendor's platform.

10. Under those circumstances, there is no presumptive right on which Movant may rely. Section 107 of the Bankruptcy Code protects "paper filed in a case under" the Bankruptcy Code. 11 U.S.C § 107(a). But the Derivatives Questionnaires do not constitute "paper[s] filed in a case," just as discovery is not "filed" in any case. In fact, the Supreme Court long ago held that there is *no* constitutional right of access to discovery materials. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 2207 (1984) (public and press have no presumptive right to deposition transcripts not filed in court).

11. Because the DQs and related information are not presumptively available to the public (or to any other creditors, who are not parties, (Barclays' Bar Date Order Response ¶¶ 2, 4), the Court need not address the central legal question Movants raise—whether the "limited exceptions" to Section 107(a), including that the DQs no longer contain "confidential commercial information." 11 U.S.C. § 107(b)(1). The answer to that question is, simply stated, irrelevant because there is no right from which anyone could seek an exception.[4]

12. Even if the DQ's did constitute "papers filed" or "judicial records," this Court should nevertheless deny the Motion—for at least four reasons. *First*, the Creditors and Sankaty easily meet the statutory exceptions and overcome the common law presumption. *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986) (The Court must "weigh the interests advanced by the parties in the light of the public interest and the duty of the courts."); *Hagestad v. Tragresser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (Factors relevant to this

---

[4] For the same reason, the DQs are not "judicial records" and so are not subject to the common law right of access; the Court therefore need to consider whether the Creditors (including Sankaty) have rebutted the common law presumption of access.

4

balancing test "include the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." ).

13. *Second*, Moreover, it is fundamentally unfair to change the rules of the game six years into the process. In that time, hundreds, if not more, Creditors such as Sankaty chose to settle and compromise their claims by relying on the representation

14. *Third,* because the DQs constitute discovery material, Sankaty and the Creditors are entitled, under the Federal Rules of Civil Procedure to individualized reviews of the question the Movants causally shrug off (Motion ¶¶ 5, 13): whether the material is no longer commercially sensitive confidential information merely because it is six years old. *See* 11 U.S.C. § 107(b)(1). It is not possible on a motion covering more than 200 adversarial proceedings—and possibly thousands more creditors—to obtain the kind of individualized review can any party possibly judge that question?

15. Finally, Entering Movants' proposed order[5] would cause predictable and lamentable consequences. What creditor in any future bankruptcy will ever willingly provide information to e-databases ordered "secure" and "confidential", such as the one Movants now ask the Court to permit it and its opponents in adversary proceedings seek to use as a generally accessible discovery database for all such proceedings?

16. Movants complain that it is "time consuming and expensive" to "provid[e] notice of production" to "each of the affected" Creditors whose DQ(s) other counterparties seek as part of the discovery in that process. (Mot. ¶ 5) But adversarial proceedings are subject to the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 7026. Granting the Motion would

---

[5] Especially the proposed orders of Credit Suisse and J.P. Morgan Chase (Dkt. Nos. 49028, 49028-1) both of whom are now parties to adversarial proceedings.

constitute an end run around the limitations imposed by the Federal Rules.[6] Instead of permitting third parties such as the Creditors and Sankaty, for example, to object to subpoenas *duces tecum* by obtaining an individualized assessment of relevance and burden considerations, *see* Fed. R. Bankr. P. 9016, any creditor who has agreed to provide information to a general database in order to maximize the value of claims by reducing costs to facilitate settlement will have inadvertently given their private information to any potential creditor—here, thousands in theory—who years later found it cost efficient not to settle their claims.

17. Thus, the Motion's hidden rationale is to punish early settling creditors by making their information widely available. That, in turn, will have the perverse effect of encouraging creditors to delay settlements in future proceedings in order to avail themselves of the lower costs of obtaining information later that they otherwise could not get via the usual adversarial litigation rules and/or to resist participating in economies of scale (such as the DQ database) early in a bankruptcy in order to prevent others from obtaining their information at low cost. Either way, the Motion is not a way to avoid "time consuming and expensive" work.

18. Finally, Movants nowhere address the obvious question of whether Creditors such as Sankaty—who have relied on the Bar Date Order in making their own decisions about the marginal costs of settling versus litigating—will wish to re-open settlements with the Debtor—causing, in theory, thousands of "time consuming and expensive" satellite litigations that need never occur.

19. Accordingly, the Motion should be denied.[7]

---

[6] Other creditors—whether they have settled or not—are not "co-parties" in the sense of a multiparty lawsuit. They have individual interests and must pursue the their own discovery materials on their own merits. See, e.g., *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 713, 724-26 (Bankr. S.D.N.Y. 2013) *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 13 CIV. 4332 ALC, 2014 WL 1302660 (S.D.N.Y. Mar. 31, 2014) (denying discovery request by creditor involved in adversary proceedings to as irrelevant when seeking unfettered access to a database of co-creditor information maintained by a third party).

[7] As set forth below, the Motion should be denied as to Sankaty for the independent reason that its Settlement Negotiations Agreement with the Debtors, discussed below, would on its face bar disclosure of the DQs.

## CONCLUSION

For the foregoing reasons, the Debtors' Disclosure Motion should be denied.

Dated: April 1, 2015[8]　　　　　　　　　　　Respectfully submitted,

/s/ Jonathan H. Sherman

Jonathan D. Schiller (Bar No. JD8311)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

-and-

Jonathan H. Sherman (Bar No. 2488765)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
(202) 237-2727

Attorneys for Sankaty Beacon Investment Partners, L.P.; Sankaty Credit Opportunities Grantor Trust; Sankaty Credit Opportunities II, L.P.; Sankaty Credit Opportunities III, L.P.; and Sankaty Special Situations I Grantor Trust

---

[8] Extended by agreement of counsel to the Debtors with respect to Sankaty (both as defined below).

7

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing _____ has been made through the Court's Electronic Filing System (ECF) on this 1st day of April 2015.

/s/ Jonathan H. Sherman

Jonathan D. Schiller (Bar No. JD8311)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

-and-

Jonathan H. Sherman (Bar No. 2488765)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
(202) 237-2727

Attorneys for Sankaty Beacon Investment Partners, L.P.; Sankaty Credit Opportunities Grantor Trust; Sankaty Credit Opportunities II, L.P.; Sankaty Credit Opportunities III, L.P.; and Sankaty Special Situations I Grantor Trust