Evans Prieston, Esq. 3062098
Tracy L. Henderson, Esq. 252888
*(Pro Hac Vice Pending)*
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for Apex Home Loans, Inc.*

**UNITED S BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————
                                              )
In re:                                        )         **Chapter 11**
                                              )
**LEHMAN BROTHERS HOLDINGS., et al.,**         )         **Case No. 08-13555-scc**
                                              )
                          Debtors.            )
———————————————————————         )


**MOTION OF APEX HOME LOANS INCORPORATED PURSUANT TO RULE 60(b)(6)
OF THE FEDERAL RULES OF CIVIL PROCEDURE SEEKING AN ORDER
VACATING THE "ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER
FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN
SELLER, APEX HOME LOANS, INC."
<u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   JURISDICTION AND VENUE.........................................................................................1

III.  BACKGROUND ...........................................................................................................1

IV.   ARGUMENT..................................................................................................................6

    A)    Legal Standard Governing a Rule 60(b)(6)
        Motion to Vacate an Order .........................................................................................6

    B)    LBHI Lacks Indemnification Rights...................................................................... 7

        i)    There is No Evidence that Lehman Bank
            Validly Assigned Indemnification Rights to LBHI............................................. 10

        ii)   Notwithstanding the Lack of Proof of a Valid
            Assignment, Lehman Bank Had No Claim for
            Indemnity to Assign .........................................................................................11

        iii)   LBHI Could Not Have Received an Assignment
             of Indemnification Rights or Claims from Fannie
            Mae as those Claims are not Assignable Without
            Corresponding Assignments of the Notes  ..........................................................14

    C)    All Claims Assigned to LBHI by Lehman Bank and
        Fannie Mae Are Barred by the Statute of Limitations…………………….…..…16

V.    CONCLUSION ...........................................................................................................20

i

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Pages**

*ABB Indus. Sys., Inc. v. Prime Tech*., Inc., 120 F.3d 351 (2d Cir. 1997)          17

*ACE Sec. Corp. v. DB Structured Prods., Inc., 112* A.D.3d 522
   (N.Y. App. Div. 1st Dep't 2013                                                       18

*Aurora Commer. Corp. v. Std. Pac. Mortg*., 2014 U.S. Dist. LEXIS 36150,
   14 (D. Colo. Mar. 19, 2014)                                                          18

*Badiak v. White Plain Kensington*, LLC,
   31 Misc. 3d 765 (N.Y. Sup. Ct. 2011)                                             11, 13

*Boehner v. Heise* et al.
   2009 U.S. Dist. LEXIS 41471 (S.D.N.Y. 2009)                                          7

*City of Binghamton*, 1979, 72 A.D.2d, 870 N.Y.S.2d 950 (3d Dep't)                 16

*Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1v. DB Structured
   Products*, Inc., 958 F. Supp. 2d 488 (S.D.N.Y. 2013)                           17, 18, 19

*Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., No.* 13 CIV
   6482 PAC, 2014 WL 3819356                                                            17

*Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399 (N.Y. 1993)                16

*Great American Ins. Co. v. United s*, 575 F.2d 1031 (2d Cir. 1978)                19

*Hahn Automotive Warehouse, Inc. v. Gateway  Zurich Insurance Co.*,
   2012, 18 N.Y.3d 765, N.Y.S.2d 742, N.E.2d 1187                                    16, 17

*Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co.*
   55 A.D.3d 671 (N.Y. App. Div. 2d Dep't 2008)                                        13

*Home Equity Loan Trust, Series 2007 – HE3 v. DB Structured Prods., Inc.*,
   No. 13 CV-1869, WL 1116758 (S.D.N.Y. Mar 20, 2014)                                 17

*In re Moskowitz, 14 B.R. 677* (Bankr. S.D.N.Y. 1981)                               10

*International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc*.
   36 N.Y.2d 121 (N.Y. 1975)                                                          12, 14

*Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y. 2d. 487
    (N.Y. 1989).                                                      8

*John J. Kassner & Co. v. City of N.Y.*, 46 N.Y. 2d 544 (1979)    18

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*
    793 F. Supp. 2d 1189 (W.D. Wash. 2011)    4, 18

*Lehman XS Trust,* Series 2006-4N ex rel. U.*S. Bank Nat. Ass'n v. Greenpoint*
    *Mortgage Funding, Inc.*, 991 F. Supp. 2d 472 (S.D.N.Y. 2014    17

*Long Island Radiology v. All Ins. Co*., 36 A.D.3d 763
    (N.Y. App. Div. 2d Dep't 2007    18

*Nomura Asset Acceptance Corp. Alternative Loan Trust*, Series
    *2005-S4 v Nomura Credit & Capital, Inc.,* 39 Misc. 3d
    1226(A) (N.Y. Sup. Ct. 2013)    17

*Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854
    (N.Y. Sup. Ct. 1977    19

*Security National Mortg. Co. v. Aurora Bank FSB*    3, 8, 11-12, 14
    2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

*Solomon v. City of New York*
    11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App. Div. 1985), aff'd,
    70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987)    8

*Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp*.,
    2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003)    17, 18

*Tonking v. Port Authority of N.Y. and N.J.*, 3 N.Y.3d 486, N.E.2d 133,
    N.Y.S.2d 708 (N.Y. 2004)    7

*U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.,*
    991 F. Supp. 2d 472 (S.D.N.Y. 2014)    18

*Wells Fargo Bank, N.A. v. JP Morgan Chase Bank, N.A*., No. 12-CV
    6168WL 1259630    16

**STATUTES**

28 U.S.C. §157                                              1

28 U.S.C. §1334                                             1

28 U.S.C. §1408                                             1

28 U.S.C. §1409                                             1

**FEDERAL RULES OF CIVIL PROCEDURE**

FRCP Rule 60                                            1, 6, 7

FRCP Rule 9024                                             1

**OTHER AUTHORITIES**

6 Williston, Contracts 2004                               16

N.Y. C.P.L.R. § 206                                       17

**EXHIBITS**

Broker Agreement ("BA")                                    A
Seller's Guide                                             B
Fannie Mae Settlement Agreement                            C1
Freddie Mac Settlement Agreement                           C2
ADR Indemnification Procedures Order                       D
Demand Letter                                              E
ADR Indemnification Procedures Notification Letter         F
Assignment Agreement                                       G
Purchase Advice                                            H

## I.  INTRODUCTION

1.  Apex Home Loans, Inc. ("Apex") by and through its undersigned counsel, American Mortgage Law Group, hereby submits this motion (the "Motion") pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure seeking an order vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Seller, Apex. (the "ADR Order").

2. As more fully set forth herein, Apex respectfully submits that the ADR Order should be vacated as: (1) Lehman Brothers Holdings, Inc. ("LBHI") does not possess a valid right to be indemnified by Apex; and (2) all claims assigned to LBHI are barred by the statute of limitations.

## II.  JURISDICTION AND VENUE

3.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This Motion is filed pursuant to Rule 60 of the Federal Rules of Civil Procedure as made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure.

## III.  BACKGROUND

5.    This matter concerns LBHI's attempt to enforce an indemnification remedy against Apex in connection with its sale of residential mortgage loans to Lehman Brothers Bank, FSB ("Lehman Bank").

6.    Apex entered into Broker Agreements ("BA") with both Aurora Loan Services ("ALS") and Lehman Brother's Bank ("Lehman Bank"). On May 1, 2000, Apex entered into Brokers Agreement with ALS. A copy of the May 1, 2000 Broker Agreement is annexed hereto as *Exhibit A*.

1

On September 9, 2002, Apex entered into Brokers Agreement with Lehman Bank. A copy of the September 9, 2002 Broker Agreement is annexed hereto as *Exhibit A*.

On May 5, 2003, Apex entered into Brokers Agreement with ALS. A copy of the May 5, 2003 Broker Agreement is annexed hereto as *Exhibit A[1]*.

On October 25, 2004, Apex entered into Brokers Agreement with Lehman Bank. A copy of the October 25, 2004 Broker Agreement is annexed hereto as *Exhibit A*.

On October 26, 2005, Apex entered into Brokers Agreement with Lehman Bank. A copy of the October 26, 2005 Broker Agreement is annexed hereto as *Exhibit A*.

7.    The Broker Agreements do not specifically incorporate by reference the Seller's Guide (the "Seller's Guide"), however they generally incorporate "guidelines" provided by Lender from time to time. The Seller's Guide was provided by LBHI purportedly to satisfy the "guidelines". LBHI purports that it governs the rights and obligations of the parties. However, the Seller's Guide provided references "Loan Purchase Agreements" and not "Broker's Agreements." A copy of the portion of the Seller's Guide provided to Apex is annexed hereto as *Exhibit B*.

8.    Both the Broker Agreements and the Seller's Guide were to be governed and interpreted in accordance with New York law.  *See Exhibit A* at §8.

9.    LBHI was not a party to the Broker Agreement. See *Exhibit A*.

10.    Each of the Broker Agreements contains a provision entitled "Indemnification" which defines Apex's obligation to indemnify either ALS or Lehman Bank. *See Exhibit A* at §8, 9, or 11 respectively.

The Seller's Guide contains a section entitled "Representation, Warranties, and Indemnifications," which contains sub-subsections setting forth certain representations

---

[1] Each Broker Agreement contains a knowledge qualifier clause. Apex reserves the right to make this argument in its Reply in the event LBHI argues validity of the 2010 Assignment Agreement.

2

and warranties being made by Apex , obligating Apex  to repurchase mortgage loans from Lehman Bank in certain circumstances, and defining Apex 's obligation to indemnify (the "Indemnification Provision").  *See Exhibit B* at §§710-711.

11.    LBHI purports to be the assignee of a contractual right to the remedies of repurchase and indemnification (the "Indemnification Rights") against Apex  arising from the Indemnification Provision contained in the Broker Agreements or Seller's Guide. See *Exhibits A at* §8, 9, or 11*,  B at §710 and 711and E.*

12.    Lehman Bank acquired a mortgage loan from Apex  pursuant to one of the Broker Agreements. See *Exhibit E.*

13.    Lehman Bank thereafter sold the mortgage loan to LBHI "without recourse," in exchange for full compensation.  See *Security National Mortg. Co. v. Aurora Bank FSB*, 2014 U.S. Dist. LEXIS 177481, *10-*11 (D. Utah Dec. 24, 2014).

14.    The mortgage loan was subsequently "transferred, directly or indirectly, to upstream investors ranging from government sponsored entities (e.g., Fannie Mae), large financial institutions, and/or securitization trusts that issued residential mortgage backed securities" by LBHI.  See *Docket #42153* at ¶16.

15.    LBHI alleges that the mortgage loan originated by Apex, and sold to Lehman Bank, was eventually sold by LBHI to Fannie Mae.

16.    On September 15, 2008, LBHI and twenty-two of its affiliates filed petitions seeking relief under Chapter 11 of the United s Bankruptcy Code (the "Bankruptcy").  See http://dm.epiq11.com/LBH/Project# (last visited March 18, 2015).

17.    Lehman Bank, was not, and is not, a party to the Bankruptcy.   See id.; *Security National Mortg. Co.,* 2014 U.S. Dist. LEXIS 177481 at *4; *Lehman Bros.*

*Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1191 (W.D. Wash. 2011) (stating that LBHI is a parent company of Lehman Bank).

18.     On September 22, 2009, Fannie Mae filed a proof of claim in the Bankruptcy in the approximate amount of not less than $19,058,000,000.00 (the "Claim").    See *Claim No. 29557*. A portion of the Claim was attributable to breach of warranty and indemnification causes of action (the "Fannie Mae Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Fannie Mae. *See id.* at ¶1.2.

19.     Freddie Mac filed a proof of claim in the amount of $16,100,024.63 on September 22, 2009 as well (the "Freddie Mac Claim"), a portion of which was attributable to breach of warranty and indemnification causes of action (the "Freddie Mac Warranty Claims") arising from the aforementioned sale of residential mortgages by LBHI to Freddie Mac. See *Claim No. 33576 at ¶8.*

20.     On January 22, 2014, LBHI, Fannie Mae, and non-debtors Aurora Commercial Corporation and Aurora Loan Services LLC, entered into a settlement agreement  (the "Fannie Mae Settlement Agreement") settling the Claim.  A copy of the Settlement Agreement is annexed hereto as *Exhibit C.* Lehman Bank was not a party to the Settlement Agreement. See *Exhibit C1.*

21.     On February 12, 2014, those same parties entered into a settlement agreement (the "Freddie Mac Settlement Agreement") settling the Freddie Mac Claim. A copy of the Freddie Mac Settlement Agreement is annexed hereto as *Exhibit C2.*

22.     As part of the Settlement Agreement, Fannie Mae agreed to turn over documents to LBHI evidencing the Fannie Mae Warranty Claims, and to "sell, assign, or

otherwise transfer" any claims that Fannie Mae held against the originating lenders. See *Exhibit C* at ¶3.1; page 5; *Exhibit C2* at ¶2.2(b); 4.1.

23.    On January 23, 2014, LBHI filed a motion by order to show cause seeking the Court's approval of the Settlement Agreement. *See Docket #42153*. In its motion, LBHI alleged that settling the Fannie Mae Warranty Claims would enable LBHI to pursue corresponding indemnification claims it alleged to hold against the originating lenders. See *id.* at ¶18.

24.    On January 31, 2014, the Court entered an order approving the Settlement Agreement.  *See Docket #42420.*

25.    On May 29, 2014, LBHI brought a motion (the "ADR Motion") seeking to implement Alternative Dispute Resolution Procedures and obligate certain originating lenders, including Apex, to participate in mediation in connection with its alleged indemnification claims.  *See Docket #44450.* On June 19, 2014, a hearing (the "Hearing") was held on the ADR Motion.

26.    At the Hearing the Court communicated its inclination to grant the ADR Motion, while also agreeing to provide an "escape hatch" from mediation by entertaining applications setting forth specific reasons why a lender should be released from having to participate.

27.    On July 18, 2014, the Court entered the ADR Order.  A copy of the ADR Order is annexed hereto as *Exhibit D.*

28.    July 24, 2014, a letter was mailed by LBHI to Apex  purporting to be a "Demand for Payment" (the "Demand Letter").  A copy of the Demand Letter is annexed hereto as *Exhibit E.*

29.    In the Demand Letter LBHI identified itself as an assignee of Lehman Bank's "contractual rights," however no proof of any assignment was enclosed therewith. See *Exhibit E.*

30.    March 27, 2015, LBHI served an "Indemnification ADR Notice" on Apex as required by the ADR Order, triggering Apex's obligation to respond within 20 days. A copy of the Indemnification ADR Notice is annexed hereto as *Exhibit F.*

31.    LBHI also provided Apex with access to certain documents alleged to evidence its claims, however, the document purportedly evidencing a valid assignment of the Indemnification Rights from Lehman Bank to LBHI does not identify any of the Broker Agreements between Apex and Lehman Bank or ALS. Instead it merely refers generally to "certain Broker Agreements"  of which Apex's agreements may or may not have been incorporated.  Further, the Assignment Agreement does not list Apex as a Broker nor even attach an Exhibit purporting to include Apex in this Assignment. A copy of the Assignment Agreement provided by LBHI is annexed hereto as *Exhibit G.*

32.    Apex  now brings this Motion seeking to vacate the ADR Order as (1) LBHI does not possess a right to be indemnified by Apex , and (2) all claims assigned to LBHI by Lehman Bank and Fannie Mae or Freddie Mac are barred by the statute of limitations.

## IV.  ARGUMENT

### A)    Legal Standard Governing a Rule 60(b)(6) Motion to Vacate an Order

33.    Rule 60(b) of the Federal Rules of Civil Procedure provides grounds for a party to move the court for relief from a judgment or order.

34.    A motion for relief from a judgment or order under Rule 60 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 9024 of the

Federal Rules of Bankruptcy Procedure, may be granted on various grounds, including "for . . . any . . . reason that justifies relief." See Fed. Rules Civ. P. Rule 60(b)(6). "Relief provided under Rule 60(b) is equitable in nature and is right to be guided by equitable principles." See *Boehner v. Heise* et al., 2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009). There must be a showing that undue hardship will not result to other parties, and the moving party must demonstrate that he possesses a meritorious defense. Id at *12.

35.     Apex submits that it has a meritorious defense as LBHI does not possess any enforceable claims against it as a matter of law. For that reason, granting the Motion would not create undue hardship for LBHI as it does not possess any claims to be mediated, while denying the Motion and preserving Apex 's obligation to participate in mediation would create undue hardship for Apex .

**B)     LBHI Lacks Indemnification Rights**

36.     The Indemnification Provision, from which the Indemnification Rights purportedly arise, provides as follows in the Sellers Guide:

> [Apex] shall indemnify [Lehman Bank] and [Lehman Bank's] designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages . . . that [Lehman Bank] may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to the Seller's Guide or the Broker Agreement. . . It is understood and agreed that any subsequent holder of any Note acquired hereunder by [Lehman Bank] shall be a third party beneficiary of the Broker Agreement and this Seller's Guide. Exhibit B at §711.

37.     The Indemnification Provision, from which the Indemnification Rights purportedly arise, provides as follows in the Broker Agreements"

> [Apex] shall indemnify and hold [Lehman Bank or ALS], its successors and assigns…9collectevely, the "Lenders Indemnitees") harmless from and against, and shall reimburse Lenders indemnities with respect to, any

7

and all claims, demands…(any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to, or arising out of….(i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines…"

38.     "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed."  *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y. 2d. 487, 492 (N.Y. 1989).

39.     Applying this well settled principal, a strict reading of the Indemnification Provision in the October 26, 2005 Broker Agreement, makes it clear that Apex is agreeing to only indemnify either ALS or Lehman Bank's successors or assigns.

40.     Further, a strict reading of the Indemnification Provision in the Seller's Guide, assuming it is even applicable by way of qualifying as a "Lender's Guideline", makes clear that Apex is agreeing to indemnify (1) Lehman Bank; (2) Lehman Bank's designee; and (3) a subsequent holder of any Note, from any damages that Lehman Bank may sustain.  See *Exhibit B* at §711.

41.     As LBHI was not a party to any of the Broker Agreements, and does not allege to be the current holder of any Note, one could conclude that LBHI is attempting to claim indemnification rights as the designee or assignee of Lehman Bank.

42.     As LBHI is not a party to the Broker Agreement, the Court must be particularly strict when construing the Indemnity Provision.   See *Security National Mortgage Co.*, Supra at *35 ("When an unnamed party asserts coverage by an indemnification provision, the New York courts are particularly strict."); see also *Tonking v. Port Authority of N.Y.* and N.J., 3 N.Y.3d 486, 821 N.E.2d 133, N.Y.S.2d 708 (N.Y. 2004); *Solomon v. City of New York*, 11 A.D.2d 383, 489 N.Y.S.2d 592 (N.Y. App. Div. 1985), aff'd, 70 N.Y.2d 675, 512 N.E.2d 546, 518 N.Y.S.2d 963 (N.Y. 1987).

43.    In addition to the above Indemnification Provision, the portion of the Seller's Guide provided to Apex also contained a provision governing a potential assignment of the  Indemnification Rights by Lehman Bank.

44.    Section 713.3 of the Seller's Guide reads as follows:

[Lehman Bank] shall have the right to assign its right and duties under the Broker Agreement and this Seller's Guide to any party without the consent of [Apex ]. [Lehman Bank] **shall notify** [Apex ] in writing of any such assignment. . . . [Lehman Bank] may also assign separately to any other party any or all representations, warranties or covenants . . . along with any or all . . . remedies available . . . for breach of any representations, warranty or covenant hereunder, including, without limitations, the repurchase and indemnification remedies.  Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies.  Id. at §713.3.

45.    Pursuant to the Broker Agreement, Lender, in its sole discretion, may assign the BA from time to time. *See October 26, 2005 Exhibit A §20.*

46.    Thus, while Lehman Bank's contractual rights were freely assignable, Lehman Bank was required to provide Apex with written notice of any such assignment if the Seller's Guide is applicable. *See Id.*

47.    As set fully set forth hereafter, LBHI does not possess a right to be indemnified by Apex  as (1) there is no evidence that Lehman Bank validly assigned the Indemnification Rights pursuant to any of the Broker Agreements between Apex and/or ALS and Lehman Brother's Bank FSB to LBHI; (2) notwithstanding the lack of proof of a valid assignment of any of the Broker Agreements or other valid assignment, Lehman Bank did not possess any claim for indemnification against Apex  as a matter of law and therefore could not have assigned Indemnification Rights greater than its own; and (3) LBHI could not have received an assignment of indemnification rights or claims from Fannie Mae or Freddie Mac as their rights to indemnification were not assignable without

corresponding assignments of the Notes according to the Seller's Guide and not assignable at all pursuant to the Broker Agreements.

### i) There is No Evidence that Lehman Bank or ALS Validly Assigned Indemnification Rights to LBHI

48.    In this dispute LBHI claims to be an assignee of Lehman Bank's Indemnification Rights.  See *Exhibit E.*

49.    Pursuant to the Seller's Guide, however, (portions of which were provided to Apex  by LBHI), Lehman Bank was required to provide written notice to Apex  of any such assignment.  See *Exhibit B* at §713.3.

50.    Despite two opportunities to produce evidence of an assignment of a present transfer of rights which identifies even one of the Broker Agreement pertaining to Apex, as well as a copy of a *written notice* of any such assignment (i.e. either enclosed with the Demand Letter or amongst the documents provided in support of its ADR Indemnification Notice), LBHI has failed to provide such proof.  See *Exhibit E.*

51.    The purported assignment does not identify any of the Broker Agreements between Lehman Bank or ALS and Apex but merely generally references "Broker Agreements" in the WHEREAS section. The agreement does <u>not</u> attach a list of lenders it purports the assignment of "contractual rights" listed in the original demand letter pertains to leaving the assignment completely void of any reference to Apex. See *Exhibit G, WHEREAS* sections.

52.    For an assignment to be valid, the property must be sufficiently identifiable and there must be an intent to assign a present right in the subject matter of the assignment divesting the assignor of all control over that which is assigned. *In re Moskowitz, 14 B.R. 677, 681* (Bankr. S.D.N.Y. 1981) It must be determined if the assignment complies with the law and whether Lehman Bank possessed a right to be

indemnified at the time of the purported assignment as Lehman Bank sold the loans to

LBHI without recourse in exchange for full compensation. *Security National Mortg.Co.*,

*supra,* at *10-11, *43.

53.    In New York it is well settled that "[t]he assignment of rights does not

alter the nature of the rights assigned; the assignee merely stands in the shoes of the

assignor." *Badiak v. White Plain Kensington*, LLC, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct.

2011) (citing *Quantum Corporate Funding, Ltd. v. Westway Industries, Inc.*, 4 N.Y.3d

211 (N.Y. 2005)).Therefore, without proof of a valid assignment of the June 9, 2005

Broker Agreement and Seller's Guide pertaining specifically to Apex , LBHI has failed to

establish that it is a designee of Lehman Bank entitled to assert the Indemnification

Rights.

54.    On that basis, the ADR Order should be vacated and Apex  should be

relieved of its obligations to participate in mediation thereunder.

ii)    **Notwithstanding the Lack of Proof of a Valid Assignment, Lehman
Bank Had No Claim for Indemnity to Assign**

55.    Regardless of whether the assignment of Lehman Bank's Indemnification

Rights to LBHI can be proven to be valid, it is submitted that Lehman Bank had no claim

for indemnity to assign as a matter of law.

56.    As previously noted, LBHI purports merely to be an assignee of Lehman

Bank's "contractual rights" against thousands of lenders, and not the actual October 26,

2005 Broker or other Agreement between Lehman and Apex .[2]  See *Exhibit E and G.*

57.    As  a  "stranger"  to  the  Broker Agreements and incorporated Sellers

Guide and a  purchaser  "without recourse"  as to Lehman Bank, LBHI has no enforceable

---

[2] Notably, the October 26, 2005 or other aforementioned Broker Agreements were not listed as an asset or
as an executory contract in LBHI's amended Bankruptcy schedules. *See Docket #3936.* Further, the
Assignment Agreement purportedly applicable to Apex is dated June 25, 2010.

rights or remedies against Lehman Bank. Therefore, it must be determined whether Lehman Bank possessed and, in turn, could have assigned an enforceable right or remedy against Apex . *Security National Mortg*. Co., 2014 U.S. Dist. LEXIS 177481 at *43.

58.     Upon information and belief, Lehman Bank sold the loans it purchased from Apex  to LBHI "without recourse" in exchange for full compensation.   See *Security National Mortg. Co*., 2014 U.S. Dist. LEXIS 177481 at *10-*11 ("When each of the Loans [were] sold by Lehman Bank to LBHI, Lehman Bank was fully compensated, i.e., at the time of the sale Lehman Bank was paid in full the amount that it had expended in each of the Loans"); Docket #47-7 ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI  were  non-recourse, such that LBHI did not have remedies against  LBB  for  any deficiencies of the Residential Mortgage Loans.").

59.     Upon  information  and  belief,  these  transactions  were  "established  to protect the capital of Lehman Bank, and thereby enhance its loan purchasing capacity so as to be able to buy more loans for sale to, and for the benefit of, LBHI."   *Security National Mortg. Co.,* 2014 U.S. Dist. LEXIS 177481 at *13.

60.     Under this system Lehman Bank could not suffer any loss from a loan that it sold to LBHI.  *Id.* at *12.

61.     "It is elementary ancient law that an assignee never stands in any better position than his assignor.  He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor."  See *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc*., 36 N.Y.2d 121, 126 (N.Y. 1975).

62.    Indeed, it is well settled that "[t]he assignment of rights does not alter the nature of the rights assigned; the assignee merely stands in the shoes of the assignor." *Badiak v. White Plain Kensington*, LLC, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011)

63.    Here, Apex  agreed to certain obligations including indemnification as remedies for Lehman Bank or ALS for damages incurred in connection with its purchase of mortgage loans. See Exhibit B at §710 and 711.

64.    However, pursuant to the manner by which Lehman Bank/ALS and LBHI structured their transactions, Lehman Bank did not, and could not, incur any damages from its subsequent sale of these loans to LBHI.  See Docket #47-7 ("The sale of the Residential Mortgage Loans from [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans.").

65.    As any obligation to indemnify, whether a remedy or pursuant to an indemnification agreement, extends only to those damages an entity is legally obligated to pay. Thus, it naturally follows that a release discharging all liability relieves the duty of indemnification because it effectively eliminates any factual or legal grounds on which the duty or obligation to indemnify may be based.  *Home Depot U.S.A., Inc. v. National Fire & Mar. Ins. Co.*, 55 A.D.3d 671, 673-674 (N.Y. App. Div. 2d Dep't 2008) (citing *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 40 A.D.3d 978, 980 (N.Y. App Div. 2d Dep't 2007) and quoting *McDonough v.. Dryden Mut. Ins. Co.*, 276 A.D.2d 817, 818 (N.Y. App. Div. 2d Dep't 2000)).

66.    Applying these principals to the matter at hand, it is clear that Lehman Bank's sale of the mortgage loans to LBHI "without recourse" for full compensation relieved Apex of its duty to repurchase or indemnify Lehman Bank as a matter of law.

13

See *Security National Mortg. Co.*, 2014 U.S. Dist. LEXIS 177481 at *43 (finding that Lehman Bank had no rights, damages, or claims it could assert against the mortgage originator under an indemnification provision in a Broker Agreement at the time of its assignment of rights to LBHI, and therefore no indemnifications rights could be asserted against the originating lender by LBHI).

67.     Lehman Bank nor ALS could assign Indemnification Rights greater than those it possessed as a matter of law. *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d at 126.

68.     On that basis, Apex respectfully submits that the ADR Order should be vacated, relieving Apex from its obligation to participate in mediation thereunder.

    **iii)**    **LBHI Could Not Have Received an Assignment of Indemnification Rights or Claims from Fannie Mae as those Claims are not Assignable Without Corresponding Assignments of the Notes**

69.     While LBHI does not purport to have received its Indemnification Rights from Fannie Mae or Freddie Mac, as fully set forth hereafter, neither agency could have assigned said rights and claims (the "Indemnification Rights and Claims") to LBHI as their Indemnification Rights and Claims arose exclusively from status as holders of the Notes according to the Sellers Guide which may not be applicable in Apex's case.

70.     Pursuant to the Indemnification Provision (in Section 711 of the partial Seller's Guide provided to Apex), neither agency possessed Indemnification Rights against Apex as the "subsequent holder of any Note." See *Exhibit B* at ¶711. And, again, as neither Fannie Mae nor Freddie Mac were successors or assigns to Lehman Bank, they could not obtain rights pursuant to the Broker Agreements. See October 26, 2005 *Exhibit A* at ¶19.

71.     Upon information and belief, however, no clause contained in the Indemnification Provision, or anywhere else in the Seller's Guide, provided that those Indemnification Rights could be assigned by a holder of the Notes without an accompanying assignment of those Notes.  See generally *Exhibit B*.

72.     Significantly, in the Settlement Agreements, Fannie Mae nor Freddie Mac purports to assign any Notes to LBHI, but rather merely to "sell, assign, or otherwise transfer" any claims that Fannie Mae held against the originating lenders. See *Exhibit C* at ¶3.1; p. 5.

73.     Furthermore, upon information and belief based on assertions by LBHI, neither agency could not have assigned the Notes to LBHI as part of the Settlement Agreement as a substantial amount of the loans had already been liquidated.

74.     While Section 711 of Seller's Guide provides that "the indemnification obligations of [Apex ] shall survive the termination of the Seller's Guide and the related *Loan Purchase* Agreement," nowhere in the Seller's Guide[3] does it provide that said obligations could be independently assigned after the liquidation of the Notes. Further, it references Loan Purchase Agreements and not Broker's Agreements. See *Id*. at §711.

75.     While it is likely that Fannie Mae or Freddie Mac may have been able to pursue its Indemnification Rights and Claims against Apex after liquidating the Notes, the Seller's Guide does not support any assertion that either agency could or did thereafter assign its Indemnification Rights Claims to LBHI. In this instance, both agencies settled any deficiencies or losses with LBHI without any corresponding assignment of the notes.

---

[3] There is no evidence that the Broker Agreement and Seller's Guide was ever assigned to *Fannie Mae*.

15

76.    Therefore, as Fannie Mae and Freddie Mac's Indemnification Rights and Claims arose exclusively from its status as a holder of the Note, its failure or inability to assign the Notes to LBHI is fatal to any allegation by LBHI that it received an assignment of the Indemnification Rights and Claims from either.

77.    Accordingly, as LBHI cannot claim to have received a valid assignment of Indemnification Rights from any of the Broker Agreement or Claims from either agency, Apex submits that the ADR Order should be vacated.

**C)    All Claims Assigned to LBHI by Lehman Bank and Fannie Mae and Freddie Mac Are Barred by the Statute of Limitations**

78.    LBHI also purports to possess claims against Apex for breach of warranty (the "Breach of Warranty Claims").

79.    Upon information and belief, LBHI alleges to have obtained Breach of Warranty Claims (1) through the alleged assignment of Lehman Bank's "contractual rights," and (2) the Settlement Agreement with Fannie Mae and Freddie Mac.

80.    Regardless of how LBHI obtained its Breach of Warranty Claims, however, said claims are barred by the statute of limitations as a matter of law.

81.    In New York, a cause of action for breach of contract accrues at the time of the breach, even if no damages occur until later.    *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993) "[T]he Statute runs from the time of the breach though no damage occurs until later." (6 Williston, Contracts § 2004, at 5641 [rev. ed. 1938], (quoted in McLaughlin, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C203:1, at 143)).

82.    New York law defines breach as when the party "possesses the legal right to demand payment" or when it first could have made the demand. See e.g.,  *v. City of Binghamton*, 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive*

16

*Warehouse, Inc. v. Apex Zurich Insurance Co.*, 2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney); *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., No.* 13 CIV. 6482 PAC, 2014 WL 3819356, at *4 (S.D.N.Y. Aug. 4, 2014) (citing *Ace Sec. Corp. Home Equity Loan Trust, Series 2007 – HE3 v. DB Structured Prods., Inc.,* No. 13 CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar 20, 2014)); *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.,* No. 12-CV-6168, 2014 WL 1259630, at *3.

83.    Per New York law, the cause of action does not accrue when party actually makes a demand, chooses to seek a remedy, discovered the alleged breach, or when a party is injured. *Lehman XS Trust,* Series 2006-4N ex rel. U.*S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.*, 991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014); *Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Products*, Inc., 958 F. Supp. 2d 488, 500 (S.D.N.Y. 2013); *ABB Indus. Sys., Inc. v. Prime Tech.,* Inc., 120 F.3d 351, 360 (2d Cir. 1997); *Structured Mortgage Trust 1997-2 v. Daiwa Fin. Corp., No.* 02 CIV. 3232 (SHS), 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003).

84.    Further, when the breach involves a sum of money owed pursuant to a contract, the accrual is also when the "legal right to make a demand is originally possessed". *See e.g.,  v. City of Binghamton,* 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive Warehouse, Inc. v. Apex Zurich Insurance Co.,* 2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney).

85.    It is well settled that a breach of warranty claim arising out of a Broker agreement against a mortgage loan originator occurs at the time the loans are delivered to the purchaser because the representations and warranties were breached as they were

17

false when first made.  See, e.g., *ACE Sec. Corp. v. DB Structured Prods., Inc., 112* A.D.3d 522, 523 (N.Y. App. Div. 1st Dep't 2013); *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.,* 793 F. Supp. 2d 1189 (W.D. Wash. 2011); *Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp*., 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003); *Nomura Asset Acceptance Corp. Alternative Loan Trust*, *Series 2005-S4 v Nomura Credit & Capital, Inc.,* 39 Misc. 3d 1226(A) (N.Y. Sup. Ct. 2013).

86.    Furthermore, the accrual date of the statute of limitations cannot be extended by delaying a demand for payment.  See *Aurora Commer. Corp. v. Std. Pac. Mortg*., 2014 U.S. Dist. LEXIS 36150, 14-15 (D. Colo. Mar. 19, 2014). And, a Court cannot interpret a provision such that it waives or extends the time from when a period of limitation is computed as it is against public policy.  *John J. Kassner & Co. v. City of N.Y*., 46 N.Y. 2d 544, 551 (1979).

87.    Moreover, an originating lender's failure to timely repurchase a loan or to provide indemnification does not constitute a separate breach of the Broker agreement for statute of limitations purposes because New York law does not recognize pre-suit remedial provisions as constituting separate causes of action. *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc*., 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014)) ("'Under New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused.  This issue has been repeatedly addressed and resolved [by New York courts.]")

88.    New York case law has found there are no practical differences between remedies when they all seek monetary damages. *Deutsche Alt-A Sec. Mortgage Loan*

18

*Trust, Series 2006-OA1 v. DB Structured Products, Inc*., 958 F. Supp. 2d 488, 501 (S.D.N.Y. 2013).

89.     Here, the Purchase Advise Statement supplied by LBHI in connection with its claim conclusively establish that all loans giving rise its Breach of Warranty Claims were sold by Apex  to Lehman Bank on February 10, 2006.  See *Exhibit H* (copy of the Purchase Advise Statement titled Laundry Sheet).

90.     Therefore, as the Breach of Warranty Claims accrued upon the delivery of these loans to Lehman Bank, the six-year statute of limitations expired as to the entirety of these loans on February 10, 2012.[4]

91.     The fact that LBHI received an assignment of claims from Fannie Mae does not change this result as an assignee's rights can be no greater than those of the original assignor, see *Long Island Radiology v. All Ins. Co*., 36 A.D.3d 763, 765 (N.Y. App. Div. 2d Dep't 2007), and therefore for statute of limitations purposes Fannie Mae's cause of action against Apex  would have accrued when it would have accrued for Lehman Bank, no later than November 28, 2006.  See *Robischon v. Genesee Valley Medical Care, Inc.*, 92 Misc. 2d 854, 856 (N.Y. Sup. Ct. 1977) (dismissing a claim as untimely as a statute of limitations defense binds an assignee).

92.     The fact that LBHI furnished consideration in exchange for the agencies' Breach of Warranty Claims also does not change this result as, without a contractual right to be indemnified by Apex , LBHI is merely entitled to subrogation of the same rights and defenses possessed by Fannie Mae and Freddie Mac.  See *Great American Ins. Co. v. United s*, 575 F.2d 1031, 1034 (2d Cir. 1978) ("Subrogation is based upon the principle of indemnity but is an exclusively derivative remedy.").

---

[4] LBHI may allege in its Opposition to be entitled to a tolling of the Statute of Limitations pursuant to 11 U.S.C. §108(a).  Apex  explicitly reserves its right to address such an argument in its Reply papers.

93.     Therefore, as the Breach of Warranty Claims held by Fannie Mae and Freddie Mac are subject to a statute of limitations defense, those claims are still subject to those limitations after the claims were in the hands of LBHI.  See *Id.*

94.     On that basis, Apex  respectfully submits that the entirety of LBHI's Breach of Warranty Claims are barred by the statute of limitations as a matter of law, and therefore the ADR Order should be vacated.

## V.  CONCLUSION

95.     LBHI holds neither Indemnification Rights nor Breach of Warranty Claims against Apex as a matter of law. There is no evidence that Lehman Bank or ALS ever validly assigned its Indemnification Rights in either the Broker Agreements or the Seller's Guide to LBHI.  Notwithstanding that fact, Lehman Bank nor ALS did not possess any Indemnification Rights to assign to LBHI as Lehman Bank was fully compensated, without recourse, upon selling the subject loans to LBHI.  Fannie Mae nor Freddie Mac could have assigned its Indemnification Rights and Claims to LBHI as the Indemnification Provision did not provide for Indemnification Rights to be assignable by a subsequent holder of the Notes without a corresponding assignment of said Notes and they, in fact, did not assign the Notes to LBHI if the Seller's Guide, which references only Loan Purchase Agreements and not Broker Agreements even is applicable. Furthermore, any Breach of Warranty Claims assigned by  Lehman  Bank  or  Fannie Mae to LBHI are barred by the expiration of the statute of limitations.

96.     Accordingly, LBHI has does not have any claims against Apex  and participating in mediation concerning those claims is unwarranted.

94.     Therefore, Apex  respectfully submits that this Court should vacate the ADR Order.

**WHEREFORE,** Apex  requests an order granting its motion in its entirety, along

with any other and further relief as the Court deems just and proper.


Dated: April 3, 2015

/s/ Evans Prieston
Evans Prieston, Esq
Tracy L. Henderson, Esq
(*Pro Hac Vice Pending*)
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035
*Attorneys for Apex*
*Mortgage Company*
