# EXHIBIT  A

# LEHMAN BROTHERS BANK, FSB

## BROKER AGREEMENT

THIS BROKER AGREEMENT (this "Agreement") is made as of the date set forth on the signature line below between LEHMAN BROTHERS BANK, FSB , a federal savings bank ("Lender") and the person or entity executing this Agreement as Broker ("Broker").

Broker desires from time to time to submit certain residential mortgage loans to Lender for Lender's evaluation and possible funding. This Agreement, including all attachments hereto, is intended to set forth the terms and conditions of the non-exclusive relationship between Lender and Broker and the terms and conditions that will govern any submission of loans by Broker to Lender and any subsequent funding by Lender.

Therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Broker agree as follows:

1. General Provisions. Broker agrees from time to time to submit and convey loan application packages to Lender, and provide certain additional services and facilities to Lender, subject to and upon the terms and conditions contained in this Agreement and in all other materials, including without limitation, interest rate sheets, product profiles, underwriting guidelines, procedural guidelines, loan commitments, closing instructions or other communications, announcements or guidelines provided by Lender to Broker from time to time (collectively, the "Lender's Guidelines"). Notwithstanding the generality of the foregoing, with respect to all FHA-insured or VA-guaranteed mortgage loans (collectively, "FHA/VA Loans"), Lender's Guidelines shall be deemed to include any and all program handbooks, announcements and other guidelines, including, but not limited to, mortgagee letters, announced or distributed in writing by the FHA and VA. Lender, in its sole discretion, may decide to underwrite, close and fund certain residential mortgage loans (a "loan" or collectively, the "loans") submitted by Broker, including, without limitation, conventional, FHA and VA residential mortgage loans.

2. Submission and Processing of Loan Application Packages; Broker Services. Broker will compile information from prospective mortgage loan borrowers and submit to Lender a completed, original loan application package together with such related materials as may be designated by Lender (the "Material"). Following submission of any loan application to Lender, Broker will perform the following services: (a) initiate/order verification of employment and verification of deposits, plus any additional documents required to establish income, employment and cash available for closing, if applicable; (b) initiate/order credit reports and requests for mortgage and other loan verifications; (c) initiate/order appraisals of the property proposed as security for the loan (the "Property"); (d) analyze the applicant's income and debt and pre-qualify the applicant to determine the maximum mortgage amount an applicant can afford pursuant to Lender's Guidelines; (e) educate the applicant in the home buying and financing process and advise the applicant about the different types of credit products available, and demonstrate the differences in closing costs and monthly payments on a product-by-product basis; (f) collect financial information (tax returns, bank statements, etc.) and other related documents that are required as part of the application process; (g) assist the applicant in understanding and rectifying credit problems (with disclosure to Lender as required); (h) maintain regular contact with the applicant between application and closing to apprise them of the status of the application and the requirement to satisfy any outstanding conditions to closing, and to gather additional credit, financial and other information as needed; and (i) initiate/order inspections or engineering reports, if applicable. In addition, Broker will perform some or all of the following services, as requested by Lender: (a) initiate/order engineering reports of the Property, if necessary; (b) provide disclosures (truth-in-lending, good faith estimates, etc.) to the applicant as required by applicable law or by Lender, (c) determine whether the Property is located in a flood zone or order a flood zone determination; and (d) participate in the loan closing. Lender reserves the right, exercisable in Lender's sole discretion, to require Broker to perform all of the foregoing services or to require other services to be provided in order to insure compliance with the provisions of the Real Estate Settlement Procedures Act, as amended ("RESPA") regarding broker compensation. Broker shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations.

Loan application approval decisions shall be made by Lender in accordance with Lender's approval criteria then in effect. Lender's underwriting determination will be conclusive. Broker shall not (i) represent to any prospective borrower that Lender has approved or will approve any loan application or (ii) issue a lock-in agreement, in either case, until Broker receives written notice of the commitment from Lender which shall include the interest rate, points and other terms of the commitment. Any notice of a commitment to a prospective borrower shall include a description of all conditions that need to be satisfied prior to closing ("Closing Conditions"). Broker shall ensure that each loan application package is completed within a reasonable time prior to expiration of the applicable lock-in period or expiration of any conditional commitment.

3. Broker Compensation. Subject to the full satisfaction of the conditions specified herein, Lender shall compensate Broker on a loan-by-loan basis according to Lender's Guidelines for each loan Lender closes and funds pursuant to this Agreement. When the proceeds of the loan have been disbursed to, or for the benefit of, the borrowers

CONFIDENTIAL




under a loan, that loan shall be deemed to be "funded" by Lender. Compensation will be paid in the manner and at the time specified by Lender. Broker shall properly and fully disclose all such compensation to the borrower in accordance with applicable law. Broker and Lender agree that the compensation paid by Lender to Broker pursuant to this Agreement is to compensate Broker for the purchase of all of Broker's right, title and interest in and to each loan funded by Lender, for services performed by Broker in connection with such funded loans, and in recognition of the value to Lender of the use of Broker's staff and facilities in connection with the origination of the loan. The parties agree that, notwithstanding any provisions in this Agreement to the contrary, the compensation paid to Broker shall not be greater than the "reasonable value" of the goods, facilities and other services provided by Broker. For FHA/VA Loans, such compensation shall not be in an amount that would cause any loan to violate any of the FHA/VA guidelines.

4.      Obligation to Deliver Loans. Lender shall have the right to review, from time to time, upon reasonable prior notice to Broker, Broker's files, and other documents pertaining to registered loans, which have failed to close. Such review will be conducted in a manner, which does not unreasonably interfere with Broker's normal operations. If requested by Lender, Broker shall provide a written evaluation of the reasons for any approved borrower failing to close a loan package, and shall furnish Lender such information and documentation including, without limitation, a copy of the Equal Credit Opportunity Act ("ECOA") adverse action notice provided to the applicant.

5.      Representations and Warranties of Broker. Broker makes and will be deemed to have made to Lender, as of the date hereof and continuing through the date of submission of each loan application package to Lender and the closing and funding of each loan, all of the following representations and warranties (and any additional representations and warranties set forth in Lender's Guidelines, from time to time):

(a)      If applicable, Broker (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, authorized to transact business and in good standing under the laws of each jurisdiction in which it serves as a broker and in each jurisdiction in which mortgaged properties are located, (ii) has full power and authority, as applicable, to broker loans and to execute, deliver and perform its obligations under this Agreement, and (iii) has duly authorized the execution, delivery and performance of this Agreement by all requisite action and constitutes the legal, valid and binding obligation of Broker, enforceable against Broker in accordance with its terms.

(b)      Broker is the holder of a valid mortgage brokerage or other applicable license issued by each state in which broker conducts business that requires Broker to be licensed, and all other licenses, permits and regulatory approvals as may be required by law in relation to the performance of Broker's responsibilities under this Agreement. Broker shall maintain all such licenses in good standing throughout the term of this Agreement. Broker will retain on file with Lender current copies of all such licenses. If Broker submits any loans that are intended to be FHA-insured or VA-guaranteed, Broker is either (i) approved to originate and submit loans to VA for VA approval, (ii) approved to underwrite mortgage loans with "Automatic" approval, or (iii) approved as a VA authorized agent with underwriting performed by Lender. With respect to any FHA loan submitted to Lender, Broker is either (i) approved by FHA to participate in its "Direct Endorsement" mortgage insurance program or (ii) a FHA sponsored lender with underwriting performed by Lender.

(c)      Neither Broker, nor any of its current or former (during the time of their employment by Broker) officers, directors, principal shareholders, members, loan officers or originators have ever been excluded or barred from conducting business with or by Fannie Mae, Freddie Mac, FHA, VA or any other government or regulatory agency, or indicted, convicted or under investigation for any criminal or civil offenses or any fraudulent activity related to mortgage lending, real estate finance, fair housing, lending or consumer credit laws or any securities laws.

(d)      To Broker's knowledge, after review of the entire loan application package (including, without limitation, the loan application, earnest money or purchase contract, property appraisal, verification of income, deposits and credit sources, and closing affidavits or certifications and other representations by borrowers), no fraudulent information or documentation is present in the loan application package or in the origination process used to generate the loan application package. Broker has used its best efforts to ensure that nothing contained in any loan application package, whether obtained, derived or requested by the borrower, Broker or otherwise, is untrue, erroneous or misleading.

(e)      Broker has no knowledge nor any reason to know of any of the following: (i) fire, windstorm or other casualty damage to the Property; (ii) that the Property has been or will be condemned; (iii) detrimental conditions which could reasonably be expected to adversely affect the market value of the Property including, but not limited to, expansive soils, underground mines or storage tanks, soil subsidence, landfills, superfund sites, special study zones, or other similar conditions; (iv) outstanding mechanics' or materialmen's liens which are or may be a lien prior to, or of equal priority with, the lien of the security instrument except those that are affirmatively insured against by the title insurance policy; (v) outstanding oil, gas or other mineral interests now owned or controlled by the proposed borrower which might jeopardize the security interest in the Property or in any manner diminish the value of the Property; (vi) any circumstance or condition which might indicate that the appraisal is

Rev. 8/2002                                        -2-

CONFIDENTIAL

LEH-APEX_0000830



incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein; or (vii) circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.

(f)    Except as otherwise disclosed to Lender in writing before the funding of any loan, Broker: (i) has not received, and has no agreement to receive, any direct or indirect payment from any third party with respect to the loan application package (or the related real estate transaction), including without limitation, payments from escrow agents, appraisers, or real estate brokers, or agents of borrowers, and (ii) has no direct or indirect ownership interest in any Property. Broker will not collect any fees in advance of closing from prospective borrowers unless permissible under applicable laws and regulations and fully disclosed to Lender. Broker has not advanced funds or induced, selected or knowingly received advanced funds by a party other than the borrower for the payment of any amount required to obtain the loan.

(g)    Broker has complied with all terms, conditions and requirements of Lender's Guidelines and this Agreement, and with all applicable federal, state and local laws relating to the loan application process, including but not limited to ECOA, the Truth in Lending Act, the Fair Credit Reporting Act, RESPA and the Federal Fair Housing Act. Broker has provided all disclosures to the borrower required by Lender or by applicable laws and regulations to be made by Broker (including, but not limited to, disclosures which relate to the amount and source of compensation paid to Broker by a borrower, Lender or third parties) within the time frames required by such laws and regulations.

(h)    To Broker's knowledge, the Property complies with all local and county ordinances (including all applicable environmental regulations) and that all permits and certificates for occupancy and use have been obtained.

Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

6.    Rights to Obtain Certain Information. During the term of this Agreement, Broker will furnish Lender with (i) copies of all renewals of its licenses within thirty (30) days after they are issued to Broker by the applicable regulatory authorities; and (ii) copies of Broker's audited financial statements promptly after they become available (in the event Broker does not obtain an audited financial statement, Broker will furnish Lender with its internally prepared financial statements which are certified by Broker's chief financial officer). If requested by Lender, Broker shall also provide any other information reasonably related to substantiating Broker's continuing eligibility to participate in Lender's loan programs as in effect from time to time. If Broker is a participant in the FHA or VA sponsorship programs, Broker shall immediately notify Lender if Broker loses its eligibility under either the FHA or VA sponsorship program.

7.    Change of Ownership, Financial Condition or Senior Management. Broker will promptly advise Lender of any material adverse change in its business or financial condition, or any change in its ownership or senior management. Broker shall also immediately inform Lender in writing of any change in status of any required license and of any pending, threatened or final judicial, administrative or regulatory action or order which may impact the status of a required license or its eligibility under this program.

8.    Indemnification. In addition to Lender's rights and remedies under applicable law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines; (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines; or (iii) any claim by a borrower resulting from Lender's failure or refusal to fund a loan package which failure or refusal is related to information obtained from Broker or Broker's conduct. Without limiting the generality of the foregoing, (a) Broker's indemnity shall extend to all repurchase demands either made by Lender as a result of a breach of this Agreement or made by any third party to which Lender has sold any loan even if Lender has not incurred any loss with respect to such loan; and (b) Lender may market the loan for resale with full disclosure to prospective purchasers of the applicable defect, error or omission in the loan, without recourse against Lender for any loss or damage incurred by the purchaser in connection with the defect, error or omission. Broker shall reimburse Lender for the difference between: (x) the "Repurchase Price," and (y) the sales price, if any, received by Lender upon the sale of such loan to a purchaser. As used herein, "Repurchase Price" means an amount equal to the sum of (i) the unpaid principal balance of the loan, plus accrued interest thereon at the rate specified in the mortgage note; (ii) the amount of any premium, fee or other sum paid by Lender in connection with the origination of the loan; (iii) any and all advances made by Lender for the account of the borrower together with interest thereon at the rate specified in the mortgage

CONFIDENTIAL                                                                    LEH-APEX_0000831



note; and (iv) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Lender in the exercise of its rights and remedies in connection with the loan, the mortgaged property, and/or the borrower, together with interest thereon at the rate specified in the mortgage note.

For FHA/VA Loans, in the event it is discovered by Lender through its own investigation or a HUD audit that fees have been charged in excess of those allowed by either the FHA or VA, Broker shall refund such excess fees directly to a borrower or reduce the fees charged at closing. Broker shall indemnify Lender for any damages related to any excess charges.

With respect to any Claim other than a loan repurchase demand, Lender Indemnitees agree to give Broker notice of any Claim which may give rise to indemnification hereunder; provided, however, that Lender Indemnitees' failure to give such notice will not reduce Broker's indemnity obligations unless such failure impairs Broker's ability to mitigate its losses, and then only to the extent of such impairment. In a timely manner, but in any event within thirty (30) calendar days after receipt of such notice, Broker shall cure, settle or otherwise discharge such Claim at its sole expense. If Broker fails to compromise, settle or otherwise discharge such Claim within the required time period, then Lender Indemnitees shall have the right to compromise, settle or discharge the Claim without Broker's consent and to obtain indemnification from Broker. With respect to any Claim consisting of a loan repurchase demand, Broker's indemnity obligation shall arise automatically upon Lender Indemnitee's receipt of a loan repurchase demand from an investor which Lender Indemnitees determine in their sole and absolute discretion to be enforceable. Notwithstanding anything to the contrary contained in this Agreement, the Lender's Guidelines or elsewhere, Broker expressly acknowledges and agrees that Lender's review of, or failure to review, any loan application package or any portion of a loan application package shall not limit or otherwise affect Lender's right to demand indemnification or repurchase of a loan or any other relief provided by this Agreement.

9.  **Adverse Action Notices.**  Lender will not deliver to any loan applicant an "adverse action" notice required by Federal Reserve Board Regulation B, 12 C.F.R. §202.9 when Lender decides it will not approve a particular loan. Rather, Lender shall deliver a completed adverse action notice to Broker specifying the reasons Lender has declined to fund the loan. Broker shall forward this adverse action notice to the applicant no later than thirty (30) days following the date Lender received a "completed application" (as defined at 12 C.F.R. §202.2) for the prospective loan unless, within said 30-day period, another lender has approved the loan from Broker and Broker notifies the loan applicant that the application has been approved.

10.  **Independent Contractor.**  While engaging in any activities pursuant to this Agreement, Broker shall serve as an independent contractor and not as an agent for Lender. Broker shall not represent or imply in any manner that any of its officers or employees are officers or employees of Lender, and shall not represent or imply that its offices are offices or branches of Lender. Broker shall have no authority to execute any documents of any type on behalf of Lender nor shall Broker have the authority to make any commitments on behalf of Lender or in any manner to bind, contract, or incur liability for Lender.

11.  **Non-Exclusive Agreement.**  Nothing in this Agreement shall be construed to create an exclusive relationship in any market or geographic area between Lender and Broker. Broker acknowledges that Lender provides the same or similar services to other brokers.

12.  **Termination.**  This Agreement will continue until terminated by either party. Either party may terminate this Agreement for any reason upon fifteen (15) days prior written notice. In addition, either party may terminate this Agreement without prior notice for cause, including, without limitation, breach of any representation, warranty, promise, or agreement made or deemed to be made in this Agreement or Lender's Guidelines, or default in performance of any duty, obligation or responsibility hereunder or under Lender's Guidelines. Upon termination of this Agreement by either party for any reason, Lender shall have the option, in its sole discretion, with respect to any loan that was registered prior to termination, (a) to lock, underwrite, close or fund any such loan application and Broker shall comply with all of its obligations under this Agreement with respect to such loans, or (b) to reject such loans and return such loan application packages to Broker without any further obligation of Lender. Any loans not registered at the time of termination shall be deemed to be rejected and Lender shall have no further obligation with respect to such loans. All representations, warranties, rights to audits, indemnity obligations, and other remedies will survive the termination of this Agreement.

13.  **Further Assurances.**  Each party agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request, in order to effectuate the purposes and to carry out the terms of this Agreement. Without limitation of the foregoing, Broker agrees to do all things and to execute or otherwise obtain for Lender all additional documentation necessary to (i) properly complete Lender's approval of any loan, (ii) cure any breach or potential breach of Broker's warranties as to a closed loan, (iii) sell the loan to a secondary market investor or otherwise comply with FNMA, FHLMC, GNMA, FHA, VA or other secondary market requirements, or (iv) insure or guaranty the loans with the FHA, VA or private mortgage insurer, as applicable.

14.  **Attorney's Fees.**  If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach default, or misrepresentation in connection with any of the provisions of this Agreement, the

CONFIDENTIAL

LEH-APEX_0000832

successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

15.    Non-Assignability.  This Agreement may not be assigned by Broker without the prior written consent of Lender. Any attempted assignment without Lender's required consent shall be void. No loan packages may be submitted to Lender for which applications were solicited, or processing performed, by any entity or any employee of any entity that is not a party to this Agreement without the prior written consent of Lender. Lender, in its sole discretion, may assign this Agreement from time to time.

16.    No Waiver; Remedies Cumulative.  Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. All rights and remedies of Lender under this Agreement are distinct from, and are cumulative with, any other rights or remedies under this Agreement or Lender's Guidelines or afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

17.    Notices.  All notices or other communications required or permitted hereunder shall be in writing and shall be delivered personally, or sent by certified, registered or express mail, postage prepaid, or by a national overnight carrier or by facsimile (with a confirming copy by mail or national overnight carrier) and shall be deemed given when so delivered personally or by facsimile, or if mailed, five days after the date of mailing, or if by overnight carrier, on the following business day, as follows: (i) if to Lender, addressed to Lender at: Lehman Brothers Bank, FSB, Attention: Executive Vice President, Wholesale Production, 2530 South Parker Road, Suite 601, Aurora, Colorado 80014, (ii) if to Broker, addressed to Broker at the address specified below its signature hereto or (iii) to such other address as any party hereto shall notify the other party hereto from time to time.

18.    Rights of Setoff.  Lender may setoff against any amounts owed by Lender or its affiliates to Broker under this Agreement, Lender's Guidelines or otherwise, any amounts owed by Broker to Lender or its affiliates under this Agreement or Lender's Guidelines. Setoff may be exercised by Lender at any time and from time to time without prior notice to or demand upon Broker, all of which are hereby waived by Broker; provided, however, that Lender shall notify Broker within a reasonable time after effecting any such setoff. Failure to provide notice shall not invalidate the setoff.

19.    Governing Law; Jurisdiction.  **THIS AGREEMENT AND THE LENDER'S GUIDELINES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW. BROKER IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE COURTS OF NEW YORK COUNTY AND THE FEDERAL COURTS OF THE SOUTHERN DISTRICT OF NEW YORK AS TO ANY DISPUTE CONCERNING THIS AGREEMENT.**

20.    Business Practice Report Acknowledgment.  Broker acknowledges that it is in the best interest of both Broker and Lender for the Lender to perform due diligence concerning Broker's background and experience by periodically obtaining reports issued from various information service providers. Broker further acknowledges that Broker benefits from the efficiencies in the due diligence process that are possible when the Lender and other similarly situated entities in the mortgage industry exchange information about their experiences in doing business with individuals and companies such as Broker. Therefore, Broker hereby consents and gives Lender permission to submit of Broker's name and the names of Broker's employees for screening through various information providers and any and all mortgage industry background databases, including, without limitation, databases operated by Mortgage Asset Research Institute, Inc., such as the Mortgage Industry Data Exchange ("MIDEX"). Broker understands that Lender performs quality control reviews of the loans that Broker submits to Lender for registration, review, underwriting, and/or purchase.

Broker understands and hereby consents to the release of information about any loan application that is believed to contain misrepresentations and/or irregularities. Broker agrees and gives its consent that it and its employees may be named as the originating entity or loan officers on such loans. Broker hereby releases and agrees to hold harmless Lender, Mortgage Asset Research Institute, Inc., all MIDEX subscribers, and any trade associations that endorse the MIDEX system from any and all liability for damages, losses, costs, and expenses that may arise from the reporting or use of any information submitted by Lender or any other MIDEX subscriber to Mortgage Asset Research Institute, Inc., recorded in the MIDEX system, and used in any way by Lender or any other MIDEX subscriber.

21.    Non-Solicitation. Broker (including any parent companies, subsidiaries, and/or affiliates) shall not solicit by means of direct mail, e-mail, Internet, or telephonic or personal solicitation, or by any other means, the prepayment in whole or in part of a mortgage loan funded by Lender. Advertising directed to the general public, including without limitation mass mailings based upon commercially acquired mailing lists, and newspaper, radio and television advertisements, shall not be deemed a solicitation prohibited by this Agreement.

-5-

CONFIDENTIAL                                    LEH-APEX_0000833



22.    Restrictions on Publicity    Without the prior written consent of Lender, Broker shall not use the corporate names, logos, brand names, trademarks trade names or service marks of Lender, Lehman Brothers, Aurora Loan Services Inc., or any of their respective affiliates, or otherwise identify Lender, Lehman Brothers, Aurora Loan Services Inc., or any of their respective affiliates, in Broker's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Broker or in any proposals to prospective borrowers, brokers, clients or appraisers.

23.    Confidentiality.    Broker hereby agrees that the terms and conditions of this Agreement, Lender's Guidelines and any advice or agreement to fund any loan hereunder shall be kept confidential and their contents shall not be divulged to any party without Lender's consent except to the extent that it is necessary for Broker to disclose any such information in accordance with applicable law or in working with legal counsel, auditors, taxing authorities or other governmental agencies.

24.    Miscellaneous.    This Agreement and Lender's Guidelines set forth the entire agreement between Lender and Broker and supersedes all prior written, and all prior and contemporaneous oral, agreements, understandings, and arrangements between the parties.  The Lender's Guidelines may be modified by Lender at any time with respect to any loans submitted to Lender for review at any time after Broker is notified of such modification or in the case of a modification from HUD or the VA, Broker shall be deemed to be on notice upon the announcement of such change by the applicable agency.  No terms or conditions of this Agreement may be waived or modified unless executed in writing by both parties. This Agreement is not effective until accepted by Lender as evidenced by Lender's signature, and when accepted by Lender this Agreement becomes effective on the date set forth below.  This Agreement shall be binding upon Broker, its successors and permitted assigns, and shall inure to the benefit of Lender, its successors and assigns.  Either party shall be excused from failing to act or delay in acting if such failure or delay is caused by legal constraint (including, without limitation, changes in any applicable federal, state or local law or regulation), termination, interruption, curtailment or amendment of any federal or state mortgage insurance, mortgage guaranty or mortgage loan program, interruption of transmission or communication facilities, equipment failure, war, emergency conditions or other similar circumstances.

25.    Counterparts    This Agreement may be executed simultaneously in any number of counterparts.  Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties agree that this Agreement will become effective on the date in which the Lender executes the Agreement as set forth below in Lender's signature block.

Apex HomeLoans, Inc.
_____
Printed Company Name

Eric D Gates
_____
Principal's Signature

Eric D Gates, President
_____
Printed Name with Title

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
_____
Principal's Social Security Number

9|9|02
_____
Date

LEHMAN BROTHERS BANK, FSB

By: _____

Name:    Bruce Brunner
Title:    Senior Vice President
Date:

CONFIDENTIAL                    LEH-APEX_0000834

10-25-'05 23:26  FROM-APEX HOME LOANS       3013653892        T-710  P005/018 F-455

# AURORA LOAN SERVICES

*A Lehman Brothers Company*

## BROKER AGREEMENT

THIS AGREEMENT (this "Agreement") is made as of $Oct$ $26$, 2005 between:

LEHMAN BROTHERS BANK, FSB, a federal savings bank ("Lender")

and

__Apex Home Loans, Inc.__, a __MD Corporation__ ("Broker").

Broker desires from time to time to submit certain single family residential mortgage loans that meet Lender's eligibility criteria (the "loans"; individually, a "loan") to Lender for Lender's underwriting and possible funding. This Agreement, including all attachments hereto, is intended to set forth the terms and conditions of the non-exclusive relationship between Lender and Broker and the terms and conditions that will govern any submission of loans by Broker to Lender and any subsequent funding by Lender.

Therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Broker agree as follows.

1.    General Provisions.    Broker agrees from time to time to submit loan application packages to Lender, and provide certain additional services and facilities to Lender, subject to and upon the terms and conditions contained in this Agreement. This Agreement incorporates by this reference all other written materials, including without limitation, rate sheets, product profiles, underwriting guidelines, procedural guidelines, policies, loan commitments, closing instructions or other communications, announcements or guidelines provided by Lender to Broker from time to time (collectively, the "Lender's Guidelines").

2.    Broker Services.    For each loan, Broker will submit to Lender a completed, original loan application package together with such loan related materials as may be required by Lender (the "Material"). Following submission of any loan application to Lender, Broker will perform the following services: (a) initiate/order verification of employment and verification of deposits, plus any additional documents required to establish income, employment and cash available for closing, if applicable; (b) initiate/order requests for mortgage and other loan verifications; (c) initiate/order appraisals of the property proposed as security for the loan (the "Property"); (d) analyze the applicant's income and debt and pre-qualify the applicant to determine the maximum mortgage amount an applicant can afford pursuant to Lender's Guidelines; (e) educate the applicant in the home buying and financing process and advise the applicant about the different types of credit products available, and demonstrate the differences in closing costs and monthly payments on a product-by-product basis; (f) collect financial information (tax returns, bank statements, etc.) and other related documents that are required as part of the application process; (g) assist the applicant in understanding and rectifying credit problems (with disclosure to Lender as required); (h) maintain regular contact with the applicant between application and closing to apprise them of the status of the application and the requirement to satisfy any outstanding conditions to closing, and to gather additional credit, financial and other information as needed; and (i) initiate/order inspections or engineering reports, if applicable. In addition, Broker will perform some or all of the following services, as requested by Lender: (a) initiate/order engineering reports of the Property, if necessary; (b) provide disclosures (truth-in-lending, good faith estimates, etc.) to the applicant as required by applicable federal, state and local laws, rules and regulations (collectively, "Applicable Law") or by Lender, (c) determine whether the Property is located in a flood zone or order a flood zone determination; and (d) participate in the loan closing. Broker shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations.

3.    Underwriting.    Loan underwriting approval decisions shall be made by Lender, in Lender's sole discretion, in accordance with Lender's approval criteria then in effect. Lender's underwriting determination will be conclusive. Lender will have absolutely no liability to Broker for any failure by Lender to underwrite any loan in accordance with Lender's Guidelines, unless such failure is due to gross negligence or willful misconduct by Lender. Broker shall not (i) represent to any prospective borrower that Lender has approved or will approve any loan application or (ii) issue a lock-in agreement, in either case, until Broker receives written notice of the commitment from Lender which shall include the interest rate, points and other terms of the commitment. Any

09/13/2005                                                                                      Rev. 08/2004

10-25-'05 23:27  FROM-APEX HOME LOAN  8013653892  T-710  P006/018 F-455

# AURORA LOAN SERVICES

## A Lehman Brothers Company

notice of a commitment to a prospective borrower shall include a description of all conditions that need to be satisfied prior to closing ("Closing Conditions").

4.    Closing, Funding and Conveyance of Loans.  Broker will assist Lender in the closing and funding of approved loans including, but not limited to, arranging for a closing of the loan after (i) all Closing Conditions have been satisfied and (ii) all closing documents have been either prepared or approved by Lender. Lender shall have no obligation to fund any loan until all Closing Conditions have been satisfied. All loans shall be closed in Lender's name.

5.    Broker Compensation; Disclosure.  Broker shall properly and fully, in accordance with Applicable Law, disclose to the borrower all compensation that will be charged or earned by the Broker in connection with the loan, including any applicable yield spread premium. Such compensation shall be set forth on the Good Faith Estimate provided to the borrower and to the Lender and shall not be changed unless Broker shall properly redisclose such changes at least seven days prior to the closing by providing proper disclosures to the borrower and Lender in accordance with Applicable Law. Broker shall not charge the borrower any amount that exceeds Lender's Guidelines relating to loan pricing.

6.    Independent Contractor.  While engaging in any activities pursuant to this Agreement, Broker is acting solely as an independent contractor. Broker is not an agent or employee of Lender and nothing contained in this Agreement shall be deemed to make Broker an agent or employee of Lender. Broker shall not represent or imply in any manner that any of its officers or employees are officers or employees of Lender, and shall not represent or imply that its offices are offices or branches of Lender. Broker shall have no authority to execute any documents of any type on behalf of Lender nor shall Broker have the authority to make any commitments on behalf of Lender or in any manner to bind, contract, or incur liability for Lender. Broker shall not make any written or oral representations to any loan applicant that conflict with Broker's authority as set forth in this Agreement.

7.    Broker Responsible for Agents and Branches.  All references in this Agreement to "Broker" shall include Broker, and any of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name. Broker is fully liable under this Agreement for all acts and omissions of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name. Lender may conclusively rely on any such submission of an application as conclusive evidence of such agent's, representative's, franchisee's, branch's or division's authority to act for Broker hereunder, unless and until Lender has received written notice from Broker advising Lender that any particular agent, representative, franchisee, branch or division is no longer authorized to submit loans on its behalf hereunder.

8.    Representations and Warranties of Broker.  Broker makes and will be deemed to have made to Lender, as of the date hereof and as of the date of closing and funding of each loan, all of the following representations and warranties (and any additional representations and warranties set forth in Lender's Guidelines, from time to time):

(a)    Broker (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, and is authorized to transact business and in good standing under the laws of each jurisdiction in which it serves as a broker and in each jurisdiction in which mortgaged properties are located, (ii) has full power and authority, as applicable, to broker loans and to execute, deliver and perform its obligations under this Agreement, and (iii) has duly authorized the execution, delivery and performance of this Agreement by all requisite action.

(b)    This Agreement constitutes the legal, valid and binding obligation of Broker, enforceable against Broker in accordance with its terms.

(c)    Broker is the holder of a valid mortgage brokerage or other applicable license issued by each state in which broker conducts business where licensure of mortgage brokers is available under State law (even if a particular form of license is not technically required to be obtained by Broker because of the type of loan products offered by Broker or number of loans made by Broker), and Broker is the holder of all other licenses, permits and regulatory approvals as may be available to Broker by law in relation to the performance of Broker's responsibilities under this Agreement (even if a particular form of license is not technically required to be obtained by Broker). Broker shall maintain all such licenses in good standing throughout the term of this Agreement. Broker will retain on file with Lender current

-2-

CONFIDENTIAL

LEH-APEX_0000855

# AURORA LOAN SERVICES

*A Lehman Brothers Company*

copies of all such licenses and will immediately notify Lender if any licenses or registrations held by Broker are suspended, revoked, terminated or otherwise expire.

(d)    Except as disclosed to Lender in writing, there is no suit, action, arbitration, proceeding or investigation (including without limitation, any proceeding alleging fraud on the part of Broker or any of its employees) pending, or to Broker's knowledge, threatened, against Broker or any of its current or former employees.

(e)    All of the statements, information and documentation submitted by Broker to Lender in connection with Broker's application to become an approved broker hereunder, including any statements, information and documentation submitted by Broker in connection with periodic renewals or recertifications of Broker's approval, are and will be true, correct and complete in all material respects.

(f)    Broker has received written authorization from the borrower to submit the loan application package to the Lender and to obtain and verify the borrower's credit information and other information contained in the loan application package.

(g)    Broker has made diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower, and to Broker's knowledge, none of the statements, information, or documentation included in the loan application, underwriting and closing packages contain any false or misleading statements or omit material facts necessary to make such statements accurate and not misleading. After review of the entire loan application package and closing documents (including, without limitation, the loan application, earnest money or purchase contract, property appraisal, verification of income, deposits and credit sources, and closing affidavits or certifications and other representations by borrowers), Broker has no knowledge of nor any reason to know of any fraudulent information or documentation present in the loan application package, closing documents or in the origination process used to generate the loan application package or closing documents.

(h)    Broker has no knowledge nor any reason to know of any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein, or any circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.

(i)    Except as otherwise disclosed to Lender in writing before the funding of any loan, neither Broker, nor any of its principals, employees or agents: (i) has received, or has any agreement to receive, any direct or indirect payment from any third party with respect to the loan application package (or the related real estate transaction), including without limitation, payments from escrow agents, appraisers, or real estate brokers, or agents of borrowers, (ii) has any direct or indirect ownership interest in any Property, or (iii) is a mortgagor in the loan transaction. Broker will not collect any fees in advance of closing from prospective borrowers unless permissible under Applicable Law and fully disclosed to Lender. Broker has not advanced funds or induced, solicited or knowingly received advanced funds by a party other than the borrower for the payment of any amount required to obtain the loan.

(j)    The appraisal obtained in connection with the loan was performed by an appraiser who holds all required licenses or approvals and has no interest in the real property to be appraised and who will receive no compensation which is affected by the approval or declination of the loan application.

(k)    Broker has complied with all terms, conditions and requirements of Lender's Guidelines and this Agreement, and with Applicable Law relating to the loan application process. Broker has provided all disclosures to the borrower required by Lender or by Applicable Law to be made by Broker (including, but not limited to, disclosures which relate to the amount and source of compensation paid to Broker by a borrower, Lender or third parties) within the time frames required by Applicable Law.

(l)    To Broker's knowledge, no loan will be classified as a (i) "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (ii) "high cost," "threshold," "covered", "abusive" or "predatory" loan under any other Applicable Law. No abusive or deceptive lending practices, including but not limited to, the extension of credit without regard for a borrower's ability to repay the loan and the extension of credit to a borrower which has no apparent benefit to the borrower, were

-3-

CONFIDENTIAL

LEH-APEX_0000856

# AURORA LOAN SERVICES

*A Lehman Brothers Company*

employed in connection with the origination of a loan. Broker has not mislead the borrower about the costs or benefits of the loan, or any features of the loan, such as prepayment charges, type of interest rate and manner of adjustment thereto, and closing costs and fees.

Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

9.   Indemnification. In addition to Lender's rights and remedies under Applicable Law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines; (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines; (iii) any claim by a borrower resulting from Lender's failure or refusal to fund a loan package which failure or refusal is related to information obtained from Broker or Broker's conduct; or (iv) any excess fees or charges charged or received by Broker in connection with the origination of a loan.

If Lender repurchases a loan from a third party to whom Lender has sold such loan as a result of any breach or alleged breach of this Agreement by Broker, Lender may (without waiving any right or remedy against Broker) market the loan or the related mortgaged property for resale in any commercially reasonable manner as it may deem appropriate with full disclosure to prospective purchasers of the applicable defect, error or omission in the loan, without recourse against Lender for any loss or damage incurred by the purchaser in connection with the defect, error or omission. In the event of such sale, Lender's Claim against Broker shall include, without limitation, (i) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Lender in the exercise of its rights and remedies in connection with the loan, the mortgaged property, and/or the borrower, together with interest thereon at the rate specified in the mortgage note, (ii) the amount of any premium, fee or other sum paid by Lender in connection with the origination of the loan and (iii) the difference between: (x) the repurchase price (including principal, interest, servicing advances and all other related costs and expenses) paid by Lender with respect to the repurchase of the loan and (y) the net sales price, if any, received by Lender upon the sale of such loan or the related mortgaged property.

Notwithstanding anything to the contrary contained in this Agreement, Lender's Guidelines or elsewhere, Broker expressly acknowledges and agrees that Lender's review of, or failure to review, any loan application package or closing document package or any portion thereof shall not limit or otherwise affect Lender's right to demand indemnification or any other relief provided by this Agreement.

Notwithstanding anything to the contrary, in no event shall a "full credit bid" made by Lender or any other party at a foreclosure sale of any property securing a loan limit the rights of Lender or the obligations of Broker under this Agreement.

10.   Rights to Obtain Certain Information. During the term of this Agreement, Broker will furnish Lender with (i) copies of all renewals of its licenses within thirty (30) days after they are issued to Broker by the applicable regulatory authorities; and (ii) copies of Broker's audited financial statements promptly after they become available (in the event Broker does not obtain an audited financial statement, Broker will furnish Lender with its internally prepared financial statements which are certified by Broker's chief financial officer, principal or owner, as applicable). If requested by Lender, Broker shall also provide any other information reasonably related to substantiating Broker's continuing eligibility to participate in Lender's loan programs as in effect from time to time.

11.   Adverse Action Notices. If Lender rejects a loan or makes a counteroffer, Lender may deliver to Broker a completed "adverse action notice" in the form required by the Equal Credit Opportunity Act specifying the reasons Lender has declined to fund the loan. If Lender delivers such notice to Broker, Broker shall deliver

-4-

CONFIDENTIAL

LEH-APEX_0000857

# AURORA LOAN SERVICES

*A Lehman Brothers Company*

this adverse action notice to the applicant within the time period required by Applicable Law. Notwithstanding the foregoing, Lender shall have the right to deliver adverse action notices directly to the applicant.

12.     Right to Contact Applicants.  Broker acknowledges that Lender shall have the right to contact any loan applicant or borrower in person or by mail, e-mail, or telephone, in connection with any application package submitted by Broker to Lender, and Lender shall have no liability to Broker for any such communication.

13.     Web Site Access.  To the extent that Broker is provided access to or use of any web site maintained by or on behalf of Lender, including the web site currently located at www.alservices.com, Broker shall comply with the terms of use and any other applicable policies and procedures maintained by or on behalf of Lender. Without limiting the foregoing, Broker shall comply with all policies and procedures relating to the protection of passwords and other security measures in connection with Broker's use of any such web site.

14.     Non-Exclusive Agreement.  Nothing in this Agreement shall be construed to create an exclusive relationship in any market or geographic area between Lender and Broker. Broker acknowledges that Lender provides the same or similar services to other brokers.

15.     Updates to Agreement.  Upon not less than ten (10) days prior written notice to Broker, Lender may modify and amend this Agreement. Any such modification or amendment shall only be effective with respect to loans submitted by Broker after the effective date of such modification or amendment. Such modification or amendment shall be deemed incorporated into this Agreement without further signature or acknowledgment by Broker.

16.     Termination.  This Agreement may be terminated by either party at any time upon delivery of written notice of termination to the other party. Upon termination of this Agreement by either party for any reason, Lender shall have the option, in its sole discretion, with respect to any loan that was registered prior to termination, (a) to lock, underwrite, close or fund any such loan application and Broker shall comply with all of its obligations under this Agreement with respect to such loans, or (b) to reject such loans and return such loan application packages to Broker without any further obligation of Lender. Any loans that do not have an interest rate lock-in agreement in place at the time of termination shall be deemed to be rejected and Lender shall have no further obligation with respect to such loans. All representations, warranties, rights to audits, indemnity obligations, and other remedies will survive the termination of this Agreement.

17.     Further Assurances.  Each party agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request, in order to effectuate the purposes and to carry out the terms of this Agreement. Without limitation of the foregoing, Broker agrees to do all things and to execute or otherwise obtain for Lender all additional documentation necessary to (i) properly complete Lender's approval of any loan, (ii) cure any breach or potential breach of Broker's warranties as to a closed loan, (iii) sell the loan to a secondary market investor or otherwise comply with FNMA, FHLMC, GNMA, FHA, VA or other secondary market requirements, or (iv) insure or guaranty the loans with the FHA, VA or private mortgage insurer, as applicable.

18.     Attorney's Fees.  If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

19.     Non-Assignability.  This Agreement may not be assigned by Broker without the prior written consent of Lender. Any attempted assignment without Lender's required consent shall be void. No loan packages may be submitted to Lender for which applications were solicited, or processing performed, by any entity or any employee of any entity that is not a party to this Agreement without the prior written consent of Lender. Lender, in its sole discretion, may assign this Agreement from time to time.

20.     No Waiver; Remedies Cumulative.  Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. All rights and remedies of Lender under this Agreement are distinct from, and are cumulative with, any other rights

-5-

CONFIDENTIAL

LEH-APEX_0000858

# AURORA LOAN SERVICES

## A Lehman Brothers Company

or remedies under this Agreement or Lender's Guidelines or afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

21.    Notices; Electronic Communications.    All notices or other communications required or permitted hereunder shall be in writing and shall be delivered personally, or sent by certified, registered or express mail, postage prepaid, or by a national overnight carrier or by facsimile (with a confirming copy by mail or national overnight carrier) and shall be deemed given when so delivered personally or by facsimile, or if mailed, five days after the date of mailing, or if by overnight carrier, on the following business day, to the parties at the address specified below their signatures hereto or to such other address as any party hereto shall notify the other party hereto from time to time in writing.

Notwithstanding the foregoing, any notices or communications relating to loan pricing, loan underwriting, the status of any loan, any changes to Lender's Guidelines or to this Agreement, may be provided by Lender to Broker by any means permitted by law, including, without limitation, telephone, facsimile, electronic mail, or by posting to Lender's designated web site. To the extent any such consent is required by Applicable Law, Broker hereby consents to the receipt of such notice or communications by such means. The provisions of this paragraph constitute the express consent of Broker to the receipt of any and all facsimile communications from Lender or its affiliates (including any such communications constituting advertisements under Applicable Law) at the fax number set forth below, or at any other fax number supplied by Broker.

22.    Rights of Setoff.    Lender may setoff against any amounts owed by Lender or its affiliates to Broker under this Agreement, Lender's Guidelines or otherwise, any amounts owed by Broker to Lender or its affiliates under this Agreement or Lender's Guidelines. Setoff may be exercised by Lender at any time and from time to time without prior notice to or demand upon Broker, all of which are hereby waived by Broker; provided, however, that Lender shall notify Broker within a reasonable time after effecting any such setoff. Failure to provide notice shall not invalidate the setoff.

23.    Governing Law; Jurisdiction.    **THIS AGREEMENT AND LENDER'S GUIDELINES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW.    BROKER IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE COURTS OF NEW YORK COUNTY AND THE FEDERAL COURTS OF THE SOUTHERN DISTRICT OF NEW YORK AS TO ANY DISPUTE CONCERNING THIS AGREEMENT.**

24.    Waiver of Trial by Jury.    EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

25.    Privacy Laws.    Other than in accordance with this Agreement, Broker will not disclose non-public personal information regarding any mortgagors or prospective mortgagors, and shall comply in all respects with the Gramm-Leach-Bliley Act and any state privacy laws. Broker hereby indemnifies and holds Lender harmless against any damages arising from the violation of any state or federal laws regarding privacy.

26.    Cooperation with Authorities.    Broker hereby consents to the disclosure of information regarding Broker, files submitted to Lender by Broker for approval or funding, prospective or existing mortgagors or mortgaged properties, appraisers and other third parties engaged by Broker or through Broker's efforts, or any other information regarding the business of Broker, to state or federal agencies in response to administrative or court subpoenas or upon written request of such agencies. Broker hereby indemnifies and holds Lender harmless from complying with such requests for information.

27.    Business Practice Report Acknowledgment.    Broker acknowledges that it is in the best interest of both Broker and Lender for Lender to perform due diligence concerning Broker's background and experience by periodically obtaining reports issued from various information service providers. Broker further acknowledges that Broker benefits from the efficiencies in the due diligence process that are possible when Lender and other similarly situated entities in the mortgage industry exchange information about their experiences in doing

-6-

CONFIDENTIAL

LEH-APEX_0000859

# AURORA LOAN SERVICES

## *A Lehman Brothers Company*

business with Individuals and companies such as Broker. Therefore, Broker hereby consents and gives Lender permission to submit of Broker's name and the names of Broker's employees for screening through various information providers and any and all mortgage industry background databases, including, without limitation, databases operated by Mortgage Asset Research Institute, Inc., such as the Mortgage Industry Data Exchange ("MIDEX"). Broker understands that Lender performs quality control reviews of the loans that Broker submits to Lender for registration, review, underwriting, and/or purchase.

Broker understands and hereby consents to the release of information about any loan application that is believed to contain misrepresentations and/or irregularities. Broker agrees and gives its consent that it and its employees may be named as the originating entity or loan officers on such loans. Broker hereby releases and agrees to hold harmless Lender, Mortgage Asset Research Institute, Inc., all MIDEX subscribers, and any trade associations that endorse the MIDEX system from any and all liability for damages, losses, costs, and expenses that may arise from the reporting or use of any information submitted by Lender or any other MIDEX subscriber to Mortgage Asset Research Institute, Inc., recorded in the MIDEX system, and used in any way by Lender or any other MIDEX subscriber.

28.   Non-Solicitation. Broker (including any parent companies, subsidiaries, and/or affiliates) shall not solicit by means of direct mail, e-mail, internet, or telephonic or personal solicitation, or by any other means, the prepayment in whole or in part of a mortgage loan funded by Lender for a period of one year from the date that such loan was funded by Lender hereunder. Advertising directed to the general public, including without limitation mass mailings based upon commercially acquired mailing lists, and newspaper, radio and television advertisements, shall not be deemed a solicitation prohibited by this Agreement. If Broker solicits any loan in contravention of this Section, Lender shall have all rights and remedies available under this Agreement, at law or in equity, including without limitation the right to injunctive relief and specific performance.

29.   Restrictions on Publicity. Without the prior written consent of Lender, Broker shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of Lender, Lehman Brothers or any of their respective affiliates, or otherwise identify Lender, Lehman Brothers or any of their respective affiliates, in Broker's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Broker or in any proposals to prospective borrowers, brokers, clients or appraisers.

30.   Miscellaneous. This Agreement, Lender's Guidelines, and any Addenda or other written agreement entered into pursuant to this Agreement, set forth the entire agreement between Lender and Broker and supersedes all prior written, and all prior and contemporaneous oral, agreements, understandings, and arrangements between the parties. As used herein, references to this "Agreement" includes this Agreement, any Addenda hereto, and any amendments or modifications hereto or thereto. Lender's Guidelines may be modified by Lender at any time with respect to any loans submitted to Lender for review at any time after Broker is notified of such modification. Except as otherwise set forth herein, no terms or conditions of this Agreement may be waived or modified unless executed in writing by both parties. This Agreement shall be binding upon Broker, its successors and permitted assigns, and shall inure to the benefit of Lender, its successors and assigns. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

-7-

CONFIDENTIAL

# AURORA LOAN SERVICES

*A Lehman Brothers Company*

**IN WITNESS WHEREOF**, the parties agree that this Agreement will only become effective on the date on which Lender executes the Agreement as set forth below. This Agreement shall not be effective until so executed by Lender.

BROKER:

Apex Home Loans, Inc.

By: _Eric D Gates_

Name: Eric D Gates
Title: President
SS# 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
EIN#: 52-2075704
Date: 10 26 05

LENDER:

LEHMAN BROTHERS BANK, FSB

By: _William Olive_

Name: William Olive
Title: V P
Date: 11/25/06

ADDRESS FOR NOTICES TO BROKER:

Apex Home Loans, Inc.
10411 Motor City Drive, Suite 350
Bethesda, MD 20817
301-365-3100 Fax 301-365-3090
Fax:

ADDRESS FOR NOTICES TO LENDER:

Lehman Brothers Bank, FSB
10350 Park Meadows Drive
Littleton, CO 80124
Attention: 2005 Broker Recertification
Fax:     720-945-4913

-8-

CONFIDENTIAL

LEH-APEX_0000861

# AURORA LOAN SERVICES

*A Lehman Brothers Company*

## BROKER AGREEMENT

THIS AGREEMENT (this "Agreement") is made as of **Oct. 25**, 200**4** between:

LEHMAN BROTHERS BANK, FSB, a federal savings bank ("Lender")

and

**Apex Home Loans, Inc**_____, a **Maryland Corporation** ("Broker").

Broker desires from time to time to submit certain single family residential mortgage loans that meet Lender's eligibility criteria (the "loans"; individually, a "loan") to Lender for Lender's underwriting and possible funding. This Agreement, including all attachments hereto, is intended to set forth the terms and conditions of the non-exclusive relationship between Lender and Broker and the terms and conditions that will govern any submission of loans by Broker to Lender and any subsequent funding by Lender.

Therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Broker agree as follows

1.     **General Provisions.** Broker agrees from time to time to submit loan application packages to Lender, and provide certain additional services and facilities to Lender, subject to and upon the terms and conditions contained in this Agreement. This Agreement incorporates by this reference all other written materials, including without limitation, rate sheets, product profiles, underwriting guidelines, procedural guidelines, policies, loan commitments, closing instructions or other communications, announcements or guidelines provided by Lender to Broker from time to time (collectively, the "Lender's Guidelines").

2.     **Broker Services.** For each loan, Broker will submit to Lender a completed, original loan application package together with such related materials as may be required by Lender (the "Material"). Following submission of any loan application to Lender, Broker will perform the following services: (a) initiate/order verification of employment and verification of deposits, plus any additional documents required to establish income, employment and cash available for closing, if applicable; (b) initiate/order requests for mortgage and other loan verifications; (c) initiate/order appraisals of the property proposed as security for the loan (the "Property"); (d) analyze the applicant's income and debt and pre-qualify the applicant to determine the maximum mortgage amount an applicant can afford pursuant to Lender's Guidelines; (e) educate the applicant in the home buying and financing process and advise the applicant about the different types of credit products available, and demonstrate the differences in closing costs and monthly payments on a product-by-product basis; (f) collect financial information (tax returns, bank statements, etc.) and other related documents that are required as part of the application process; (g) assist the applicant in understanding and rectifying credit problems (with disclosure to Lender as required); (h) maintain regular contact with the applicant between application and closing to apprise them of the status of the application and the requirement to satisfy any outstanding conditions to closing, and to gather additional credit, financial and other information as needed; and (i) initiate/order inspections or engineering reports, if applicable. In addition, Broker will perform some or all of the following services, as requested by Lender: (a) initiate/order engineering reports of the Property, if necessary; (b) provide disclosures (truth-in-lending, good faith estimates, etc.) to the applicant as required by applicable federal, state and local laws, rules and regulations (collectively, "Applicable Law") or by Lender, (c) determine whether the Property is located in a flood zone or order a flood zone determination; and (d) participate in the loan closing. Broker shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations.

3.     **Underwriting.** Loan underwriting approval decisions shall be made by Lender, in Lender's sole discretion, in accordance with Lender's approval criteria then in effect. Lender's underwriting determination will be conclusive. Lender will have absolutely no liability to Broker for any failure by Lender to underwrite any loan in accordance with Lender's Guidelines, unless such failure is due to gross negligence or willful misconduct by Lender. Broker shall not (i) represent to any prospective borrower that Lender has approved or will approve any loan application, or (ii) issue a lock-in agreement in either case until Broker receives a written notice of the commitment from Lender which shall include the interest rate, points and other terms of the commitment. Any

10387/43
09/14/2004 1534905.03

Rev. 08/2004

CONFIDENTIAL

LEH-APEX_0000841

notice of a commitment to a prospective borrower shall include a description of all conditions that need to be satisfied prior to closing ("Closing Conditions")

4.  **Closing, Funding and Conveyance of Loans.**  Broker will assist Lender in the closing and funding of approved loans including, but not limited to, arranging for a closing of the loan after (i) all Closing Conditions have been satisfied and (ii) all closing documents have been either prepared or approved by Lender. Lender shall have no obligation to fund any loan until all Closing Conditions have been satisfied. All loans shall be closed in Lender's name.

5.  **Broker Compensation; Disclosure.**  Broker shall properly and fully, in accordance with Applicable Law, disclose to the borrower all compensation that will be charged or earned by the Broker in connection with the loan, including any applicable yield spread premium. Such compensation shall be set forth on the Good Faith Estimate provided to the borrower and to the Lender and shall not be changed unless Broker shall properly redisclose such changes at least seven days prior to the closing by providing proper disclosures to the borrower and Lender in accordance with Applicable Law. Broker shall not charge the borrower any amount that exceeds Lender's Guidelines relating to loan pricing.

6.  **Independent Contractor.**  While engaging in any activities pursuant to this Agreement, Broker is acting solely as an independent contractor. Broker is not an agent or employee of Lender and nothing contained in this Agreement shall be deemed to make Broker an agent or employee of Lender. Broker shall not represent or imply in any manner that any of its officers or employees are officers or employees of Lender, and shall not represent or imply that its offices are offices or branches of Lender. Broker shall have no authority to execute any documents of any type on behalf of Lender nor shall Broker have the authority to make any commitments on behalf of Lender or in any manner to bind, contract, or incur liability for Lender. Broker shall not make any written or oral representations to any loan applicant that conflict with Broker's authority as set forth in this Agreement.

7.  **Broker Responsible for Agents and Branches.**  All references in this Agreement to "Broker" shall include Broker, and any of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name. Broker is fully liable under this Agreement for all acts and omissions of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name. Lender may conclusively rely on any such submission of an application as conclusive evidence of such agent's, representative's, franchisee's, branch's or division's authority to act for Broker hereunder, unless and until Lender has received written notice from Broker advising Lender that any particular agent, representative, franchisee, branch or division is no longer authorized to submit loans on its behalf hereunder.

8.  **Representations and Warranties of Broker.**  Broker makes and will be deemed to have made to Lender, as of the date hereof and as of the date of closing and funding of each loan, all of the following representations and warranties (and any additional representations and warranties set forth in Lender's Guidelines, from time to time):

(a)  Broker (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, and is authorized to transact business and in good standing under the laws of each jurisdiction in which it serves as a broker and in each jurisdiction in which mortgaged properties are located, (ii) has full power and authority, as applicable, to broker loans and to execute, deliver and perform its obligations under this Agreement, and (iii) has duly authorized the execution, delivery and performance of this Agreement by all requisite action.

(b)  This Agreement constitutes the legal, valid and binding obligation of Broker, enforceable against Broker in accordance with its terms.

(c)  Broker is the holder of a valid mortgage brokerage or other applicable license issued by each state in which broker conducts business where licensure of mortgage brokers is available under State law (even if a particular form of license is not technically required to be obtained by Broker because of the type of loan products offered by Broker or number of loans made by Broker), and Broker is the holder of all other licenses, permits and regulatory approvals as may be available to Broker by law in relation to the performance of Broker's responsibilities under this Agreement (even if a particular form of license is not technically required to be obtained by Broker). Broker shall maintain all such licenses in good standing throughout the term of this Agreement. Broker will retain on file with Lender current copies of all such licenses and will immediately notify Lender if any licenses or registrations held by Broker are suspended, revoked, terminated or otherwise expire.

-2-

CONFIDENTIAL

LEH-APEX_0000842

(d)    Except as disclosed to Lender in writing, there is no suit, action, arbitration, proceeding or investigation (including without limitation, any proceeding alleging fraud on the part of Broker or any of its employees) pending, or to Broker's knowledge, threatened, against Broker or any of its current or former employees.

(e)    All of the statements, information and documentation submitted by Broker to Lender in connection with Broker's application to become an approved broker hereunder, including any statements, information and documentation submitted by Broker in connection with periodic renewals or recertifications of Broker's approval, are and will be true, correct and complete in all material respects.

(f)    Broker has received written authorization from the borrower to submit the loan application package to the Lender and to obtain and verify the borrower's credit information and other information contained in the loan application package.

(g)    Broker has made diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower, and to Broker's knowledge, none of the statements, information, or documentation included in the loan application, underwriting and closing packages contain any false or misleading statements or omit material facts necessary to make such statements accurate and not misleading. After review of the entire loan application package and closing documents (including, without limitation, the loan application, earnest money or purchase contract, property appraisal, verification of income, deposits and credit sources, and closing affidavits or certifications and other representations by borrowers), Broker has no knowledge of nor any reason to know of any fraudulent information or documentation present in the loan application package, closing documents or in the origination process used to generate the loan application package or closing documents.

(h)    Broker has no knowledge nor any reason to know of any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein, or any circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.

(i)    Except as otherwise disclosed to Lender in writing before the funding of any loan, neither Broker, nor any of its principals, employees or agents: (i) has received, or has any agreement to receive, any direct or indirect payment from any third party with respect to the loan application package (or the related real estate transaction), including without limitation, payments from escrow agents, appraisers, or real estate brokers, or agents of borrowers, (ii) has any direct or indirect ownership interest in any Property, or (iii) is a mortgagor in the loan transaction. Broker will not collect any fees in advance of closing from prospective borrowers unless permissible under Applicable Law and fully disclosed to Lender. Broker has not advanced funds or induced, selected or knowingly received advanced funds by a party other than the borrower for the payment of any amount required to obtain the loan.

(j)    The appraisal obtained in connection with the loan was performed by an appraiser who holds all required licenses or approvals and has no interest in the real property to be appraised and who will receive no compensation which is affected by the approval or declination of the loan application.

(k)    Broker has complied with all terms, conditions and requirements of Lender's Guidelines and this Agreement, and with Applicable Law relating to the loan application process. Broker has provided all disclosures to the borrower required by Lender or by Applicable Law to be made by Broker (including, but not limited to, disclosures which relate to the amount and source of compensation paid to Broker by a borrower, Lender or third parties) within the time frames required by Applicable Law.

(l)    To Broker's knowledge, no loan will be classified as a (i) "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (ii) "high cost," "threshold," "covered", "abusive" or "predatory" loan under any other Applicable Law. No abusive or deceptive lending practices, including but not limited to, the extension of credit without regard for a borrower's ability to repay the loan and the extension of credit to a borrower which has no apparent benefit to the borrower, were employed in connection with the origination of a loan. Broker has not mislead the borrower about the costs or benefits of the loan, or any features of the loan, such as prepayment charges, type of interest rate and manner of adjustment thereto, and closing costs and fees.

-3-

CONFIDENTIAL

LEH-APEX_0000843

Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

9.    Indemnification. In addition to Lender's rights and remedies under Applicable Law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines; (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines; (iii) any claim by a borrower resulting from Lender's failure or refusal to fund a loan package which failure or refusal is related to information obtained from Broker or Broker's conduct; or (iv) any excess fees or charges charged or received by Broker in connection with the origination of a loan.

If Lender repurchases a loan from a third party to whom Lender has sold such loan as a result of any breach or alleged breach of this Agreement by Broker, Lender may (without waiving any right or remedy against Broker) market the loan or the related mortgaged property for resale in any commercially reasonable manner as it may deem appropriate with full disclosure to prospective purchasers of the applicable defect, error or omission in the loan, without recourse against Lender for any loss or damage incurred by the purchaser in connection with the defect, error or omission. In the event of such sale, Lender's Claim against Broker shall include, without limitation, (i) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Lender in the exercise of its rights and remedies in connection with the loan, the mortgaged property, and/or the borrower, together with interest thereon at the rate specified in the mortgage note, (ii) the amount of any premium, fee or other sum paid by Lender in connection with the origination of the loan and (iii) the difference between: (x) the repurchase price (including principal, interest, servicing advances and all other related costs and expenses) paid by Lender with respect to the repurchase of the loan and (y) the net sales price, if any, received by Lender upon the sale of such loan or the related mortgaged property.

Notwithstanding anything to the contrary contained in this Agreement, Lender's Guidelines or elsewhere, Broker expressly acknowledges and agrees that Lender's review of, or failure to review, any loan application package or closing document package or any portion thereof shall not limit or otherwise affect Lender's right to demand indemnification or any other relief provided by this Agreement.

Notwithstanding anything to the contrary, in no event shall a "full credit bid" made by Lender or any other party at a foreclosure sale of any property securing a loan limit the rights of Lender or the obligations of Broker under this Agreement.

10.    Rights to Obtain Certain Information. During the term of this Agreement, Broker will furnish Lender with (i) copies of all renewals of its licenses within thirty (30) days after they are issued to Broker by the applicable regulatory authorities; and (ii) copies of Broker's audited financial statements promptly after they become available (in the event Broker does not obtain an audited financial statement, Broker will furnish Lender with its internally prepared financial statements which are certified by Broker's chief financial officer, principal or owner, as applicable). If requested by Lender, Broker shall also provide any other information reasonably related to substantiating Broker's continuing eligibility to participate in Lender's loan programs as in effect from time to time.

11.    Adverse Action Notices. If Lender rejects a loan or makes a counteroffer, Lender may deliver to Broker a completed "adverse action notice" in the form required by the Equal Credit Opportunity Act specifying the reasons Lender has declined to fund the loan. If Lender delivers such notice to Broker, Broker shall deliver this adverse action notice to the applicant within the time period required by Applicable Law. Notwithstanding the foregoing, Lender shall have the right to deliver adverse action notices directly to the applicant.

12.    Right to Contact Applicants. Broker acknowledges that Lender shall have the right to contact any loan applicant or borrower in person or by mail, e-mail, or telephone, in connection with any application package submitted by Broker to Lender, and Lender shall have no liability to Broker for any such communication.

-4-

CONFIDENTIAL

LEH-APEX_0000844

13. <u>Web Site Access</u> To the extent that Broker is provided access to or use of any web site maintained by or on behalf of Lender, including the web site currently located at www.alservices.com, Broker shall comply with the terms of use and any other applicable policies and procedures maintained by or on behalf of Lender. Without limiting the foregoing, Broker shall comply with all policies and procedures relating to the protection of passwords and other security measures in connection with Broker's use of any such web site.

14. <u>Non-Exclusive Agreement</u>. Nothing in this Agreement shall be construed to create an exclusive relationship in any market or geographic area between Lender and Broker. Broker acknowledges that Lender provides the same or similar services to other brokers.

15. <u>Updates to Agreement</u>. Upon not less than ten (10) days prior written notice to Broker, Lender may modify and amend this Agreement. Any such modification or amendment shall only be effective with respect to loans submitted by Broker after the effective date of such modification or amendment. Such modification or amendment shall be deemed incorporated into this Agreement without further signature or acknowledgment by Broker.

16. <u>Termination</u>. This Agreement may be terminated by either party at any time upon delivery of written notice of termination to the other party. Upon termination of this Agreement by either party for any reason, Lender shall have the option, in its sole discretion, with respect to any loan that was registered prior to termination, (a) to lock, underwrite, close or fund any such loan application and Broker shall comply with all of its obligations under this Agreement with respect to such loans, or (b) to reject such loans and return such loan application packages to Broker without any further obligation of Lender. Any loans that do not have an interest rate lock-in agreement in place at the time of termination shall be deemed to be rejected and Lender shall have no further obligation with respect to such loans. All representations, warranties, rights to audits, indemnity obligations, and other remedies will survive the termination of this Agreement.

17. <u>Further Assurances</u>. Each party agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request, in order to effectuate the purposes and to carry out the terms of this Agreement. Without limitation of the foregoing, Broker agrees to do all things and to execute or otherwise obtain for Lender all additional documentation necessary to (i) properly complete Lender's approval of any loan, (ii) cure any breach or potential breach of Broker's warranties as to a closed loan, (iii) sell the loan to a secondary market investor or otherwise comply with FNMA, FHLMC, GNMA, FHA, VA or other secondary market requirements, or (iv) insure or guaranty the loans with the FHA, VA or private mortgage insurer, as applicable.

18. <u>Attorney's Fees</u>. If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

19. <u>Non-Assignability</u>. This Agreement may not be assigned by Broker without the prior written consent of Lender. Any attempted assignment without Lender's required consent shall be void. No loan packages may be submitted to Lender for which applications were solicited, or processing performed, by any entity or any employee of any entity that is not a party to this Agreement without the prior written consent of Lender. Lender, in its sole discretion, may assign this Agreement from time to time.

20. <u>No Waiver; Remedies Cumulative</u>. Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. All rights and remedies of Lender under this Agreement are distinct from, and are cumulative with, any other rights or remedies under this Agreement or Lender's Guidelines or afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

21. <u>Notices; Electronic Communications</u>. All notices or other communications required or permitted hereunder shall be in writing and shall be delivered personally, or sent by certified, registered or express mail, postage prepaid, or by a national overnight carrier or by facsimile (with a confirming copy by mail or national overnight carrier) and shall be deemed given when so delivered personally or by facsimile, or if mailed, five days after the date of mailing, or if by overnight carrier, on the following business day, to the parties at the address specified below their signatures hereto or to such other address as any party hereto shall notify the other party hereto from time to time in writing.

-5-

CONFIDENTIAL

LEH-APEX_0000845

Notwithstanding the foregoing, any notices or communications relating to loan pricing, loan underwriting, the status of any loan, any changes to Lender's Guidelines or to this Agreement, may be provided by Lender to Broker by any means permitted by law, including, without limitation, telephone, facsimile, electronic mail, or by posting to Lender's designated web site. To the extent any such consent is required by Applicable Law, Broker hereby consents to the receipt of such notice or communications by such means. The provisions of this paragraph constitute the express consent of Broker to the receipt of any and all facsimile communications from Lender or its affiliates (including any such communications constituting advertisements under Applicable Law) at the fax number set forth below, or at any other fax number supplied by Broker.

22.    Rights of Setoff. Lender may setoff against any amounts owed by Lender or its affiliates to Broker under this Agreement, Lender's Guidelines or otherwise, any amounts owed by Broker to Lender or its affiliates under this Agreement or Lender's Guidelines. Setoff may be exercised by Lender at any time and from time to time without prior notice to or demand upon Broker, all of which are hereby waived by Broker; provided, however, that Lender shall notify Broker within a reasonable time after effecting any such setoff. Failure to provide notice shall not invalidate the setoff.

23.    Governing Law; Jurisdiction. **THIS AGREEMENT AND LENDER'S GUIDELINES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW. BROKER IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE COURTS OF NEW YORK COUNTY AND THE FEDERAL COURTS OF THE SOUTHERN DISTRICT OF NEW YORK AS TO ANY DISPUTE CONCERNING THIS AGREEMENT.**

24.    Waiver of Trial by Jury. **EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.**

25.    Privacy Laws. Other than in accordance with this Agreement, Broker will not disclose non-public personal information regarding any mortgagors or prospective mortgagors, and shall comply in all respects with the Gramm-Leach-Bliley Act and any state privacy laws. Broker hereby indemnifies and holds Lender harmless against any damages arising from the violation of any state or federal laws regarding privacy.

26.    Cooperation with Authorities. Broker hereby consents to the disclosure of information regarding Broker, files submitted to Lender by Broker for approval or funding, prospective or existing mortgagors or mortgaged properties, appraisers and other third parties engaged by Broker or through Broker's efforts, or any other information regarding the business of Broker, to state or federal agencies in response to administrative or court subpoenas or upon written request of such agencies. Broker hereby indemnifies and holds Lender harmless from complying with such requests for information.

27.    Business Practice Report Acknowledgment. Broker acknowledges that it is in the best interest of both Broker and Lender for Lender to perform due diligence concerning Broker's background and experience by periodically obtaining reports issued from various information service providers. Broker further acknowledges that Broker benefits from the efficiencies in the due diligence process that are possible when Lender and other similarly situated entities in the mortgage industry exchange information about their experiences in doing business with individuals and companies such as Broker. Therefore, Broker hereby consents and gives Lender permission to submit of Broker's name and the names of Broker's employees for screening through various information providers and any and all mortgage industry background databases, including, without limitation, databases operated by Mortgage Asset Research Institute, Inc., such as the Mortgage Industry Data Exchange ("MIDEX"). Broker understands that Lender performs quality control reviews of the loans that Broker submits to Lender for registration, review, underwriting, and/or purchase.

Broker understands and hereby consents to the release of information about any loan application that is believed to contain misrepresentations and/or irregularities. Broker agrees and gives its consent that it and its employees may be named as the originating entity or loan officers on such loans. Broker hereby releases and agrees to hold harmless Lender, Mortgage Asset Research Institute, Inc., all MIDEX subscribers, and any trade associations that endorse the MIDEX system from any and all liability for damages, losses, costs, and expenses that may arise from the reporting or use of any information submitted by Lender or any other MIDEX subscriber

-6-

CONFIDENTIAL

to Mortgage Asset Research Institute, Inc., recorded in the MIDEX system, and used in any way by Lender or any other MIDEX subscriber.

28.    Non-Solicitation. Broker (including any parent companies, subsidiaries, and/or affiliates) shall not solicit by means of direct mail, e-mail, Internet, or telephonic or personal solicitation, or by any other means, the prepayment in whole or in part of a mortgage loan funded by Lender for a period of one year from the date that such loan was funded by Lender hereunder.  Advertising directed to the general public, including without limitation mass mailings based upon commercially acquired mailing lists, and newspaper, radio and television advertisements, shall not be deemed a solicitation prohibited by this Agreement.  If Broker solicits any loan in contravention of this Section, Lender shall have all rights and remedies available under this Agreement, at law or in equity, including without limitation the right to injunctive relief and specific performance.

29.    Restrictions on Publicity.  Without the prior written consent of Lender, Broker shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of Lender, Lehman Brothers or any of their respective affiliates, or otherwise identify Lender, Lehman Brothers or any of their respective affiliates, in Broker's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Broker or in any proposals to prospective borrowers, brokers, clients or appraisers.

30.    Miscellaneous. This Agreement, Lender's Guidelines, and any Addenda or other written agreement entered into pursuant to this Agreement, set forth the entire agreement between Lender and Broker and supersedes all prior written, and all prior and contemporaneous oral, agreements, understandings, and arrangements between the parties.  As used herein, references to this "Agreement" includes this Agreement, any Addenda hereto, and any amendments or modifications hereto or thereto.  Lender's Guidelines may be modified by Lender at any time with respect to any loans submitted to Lender for review at any time after Broker is notified of such modification.  Except as otherwise set forth herein, no terms or conditions of this Agreement may be waived or modified unless executed in writing by both parties.  This Agreement shall be binding upon Broker, its successors and permitted assigns, and shall inure to the benefit of Lender, its successors and assigns.  This Agreement may be executed simultaneously in any number of counterparts.  Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties agree that this Agreement will only become effective on the date on which Lender executes the Agreement as set forth below.  This Agreement shall not be effective until so executed by Lender.

BROKER:

Apex Home Loans, Inc.

By: _Eric D. Gates_
Name: Eric D Gates
Title: President
SS# 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
EIN#: 52-2675704
Date: 10/25/04

ADDRESS FOR NOTICES TO BROKER:

10411 Motor City Dr.
#350
Bethesda, MD 20817

Fax: 301-365-3090

LENDER:

LEHMAN BROTHERS BANK, FSB

By: _Jennifer L. Norris_
Name: Jennifer L Norris
Title: VP
Date: 1/3/05

ADDRESS FOR NOTICES TO LENDER:

Lehman Brothers Bank, FSB
10350 Park Meadows Drive
Littleton, CO 80124
Attention: 2004 Broker Recertification
Fax:

-7-

CONFIDENTIAL

LEH-APEX_0000847

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

## AUTHORIZED SIGNER'S CERTIFICATE

I the undersigned, duly elected Secretary of _Apex Home Loans, Inc._ a
(Printed Company Name)

_Maryland Corporation_ Company,
(State of Organization/Company)

**HEREBY CERTIFY** as follows:

The following resolutions were duly and properly adopted by the Board of Directors of the Company in accordance with the laws of the state of its company and the Company's articles of incorporation and bylaws. These resolutions have not been rescinded or amended.

**RESOLVED,** that the Company shall enter into the Loan Broker Agreement (the "Agreement") (a copy attached hereto) between the Company and Aurora Loan Services Inc. which shall be substantially in the form presented at this meeting and shall be executed by the Company on the same date as witnessed below.

**RESOLVED,** that the Board of Directors authorizes and directs the President and Vice President of the company to execute and enter into the Agreement on behalf of the Company.

**RESOLVED,** that

| Signature | Name of Officer | Title |
|---|---|---|
| _Eric D Gates_ | _Eric D Gates_ | _President_ |
| _[signature]_ | _Craig C Strent_ | _VP_ |
| | | |
| Signature | Name of Officer | Title |

be, and each of them hereby is, authorized and empowered to take all such steps and do all such acts and things as may be necessary and proper to carry out the purposes of the Agreement, and the performance and observance by this Company, at all times while the Agreement shall be in effect, of all covenants, conditions, warranties and obligations arising under the Agreement, including, but not limited to, the making and execution of any necessary or desirable instruments, certificates, affidavits or other documents in connection with the Agreement, and from time to time to take any and all action to make, execute, verify record, file and deliver any necessary instruments and to do any and all other acts and things which they or any of them shall deem necessary or advisable in connection with the Agreement.

**IN WITNESS WHEREOF**, I have hereunto set my hand and seal of this company on the _25th_ day of _October_ 20_04_.

_[signature]_
Signature

_Craig C Strent_
Name

SEAL

# AURORA LOAN SERVICES
## *A Lehman Brothers Company*

### FAIR LENDING STATEMENT

Aurora Loan Services is committed to providing access to credit and consistency in pricing for all loan applicants regardless of color, race, national origin, religion, gender, sexual orientation, familial status, receipt of public assistance, age, or disability or for any other discriminatory reason.

In connection with Aurora Loan Services offering of credit, our broker and correspondent lending partners are expected to treat all customers fairly and without discrimination in accordance with all applicable laws. Information provided to applicants, encouragement or discouragement of applications, evaluation procedures, credit decisions and pricing of loans to applicants must not be discriminatory and must conform with pricing practices of the mortgage origination community in which the broker or correspondent conducts its business.

By signing this certificate, you acknowledge that your entity joins Lehman in its commitment to compliance with the Equal Credit Opportunity Act, the Fair Housing Act and all other laws, rules and regulations that prohibit discrimination in lending practices.

Apex Home Loans, Inc.
Printed Company Name

Eric D Gates
Principal's Signature

Eric D Gates, President
Printed Name with Title

10/25/04
Date

CONFIDENTIAL
LEH-APEX_0000853

Received at: 3:16PM, 5/5/2003

05-05-'03 16:27  FROM-Apex e Loans      3014744444                    T-385  P08/14  U-153



AURORA LOAN
SERVICES INC

## BROKER AGREEMENT

THIS BROKER AGREEMENT (this "Agreement") is made as of the date set forth on the signature line below between AURORA LOAN SERVICES INC., a Delaware corporation ("Lender") and the person or entity executing this Agreement as Broker ("Broker").

Broker desires from time to time to submit certain residential mortgage loans to Lender for Lender's evaluation and possible funding. This Agreement, including all attachments hereto, is intended to set forth the terms and conditions of the non-exclusive relationship between Lender and Broker and the terms and conditions that will govern any submission of loans by Broker to Lender and any subsequent funding by Lender.

Therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Broker agree as follows:

    1.    General Provisions.  Broker agrees from time to time to submit and convey loan application packages to Lender, and provide certain additional services and facilities to Lender, subject to and upon the terms and conditions contained in this Agreement and in all other materials, including without limitation, interest rate sheets, product profiles, underwriting guidelines, procedural guidelines, loan commitments, closing instructions or other communications, announcements or guidelines provided by Lender to Broker from time to time (collectively, the "Lender's Guidelines"). Notwithstanding the generality of the foregoing, with respect to all FHA-insured or VA-guaranteed mortgage loans (collectively, "FHA/VA Loans"), Lender's Guidelines shall be deemed to include any and all program handbooks, announcements and other guidelines, including, but not limited to, mortgagee letters, announced or distributed in writing by the FHA and VA. Lender, in its sole discretion, may decide to underwrite, close and fund certain residential mortgage loans (a "loan" or collectively, the "loans") submitted by Broker, including, without limitation, conventional, FHA and VA residential mortgage loans.

    2.    Submission and Processing of Loan Application Packages; Broker Services.  Broker will compile information from prospective mortgage loan borrowers and submit to Lender a completed, original loan application package together with such related materials as may be designated by Lender (the "Material"). Following submission of any loan application to Lender, Broker will perform the following services: (a) initiate/order verification of employment and verification of deposits, plus any additional documents required to establish income, employment and cash available for closing, if applicable; (b) initiate/order credit reports and requests for mortgage and other loan verifications; (c) initiate/order appraisals of the property proposed as security for the loan (the "Property"); (d) analyze the applicant's income and debt and pre-qualify the applicant to determine the maximum mortgage amount an applicant can afford pursuant to Lender's Guidelines; (e) educate the applicant in the home buying and financing process and advise the applicant about the different types of credit products available, and demonstrate the differences in closing costs and monthly payments on a product-by-product basis; (f) collect financial information (tax returns, bank statements, etc.) and other related documents that are required as part of the application process; (g) assist the applicant in understanding and rectifying credit problems (with disclosure to Lender as required); (h) maintain regular contact with the applicant between application and closing to apprise them of the status of the application and the requirement to satisfy any outstanding conditions to closing, and to gather additional credit, financial and other information as needed; and (i) initiate/order inspections or engineering reports, if applicable.  In addition, Broker will perform some or all of the following services, as requested by Lender: (a) initiate/order engineering reports of the Property, if necessary; (b) provide disclosures (truth-in-lending, good faith estimates, etc.) to the applicant as required by applicable law or by Lender, (c) determine whether the Property is located in a flood zone or order a flood zone determination; and (d) participate in the loan closing.  Lender reserves the right, exercisable in Lender's sole discretion, to require Broker to perform all of the foregoing services or to require other services to be provided in order to insure compliance with the provisions of the Real Estate Settlement Procedures Act, as amended ("RESPA") regarding broker compensation. Broker shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations.

    Loan application approval decisions shall be made by Lender in accordance with Lender's approval criteria then in effect.  Lender's underwriting determination will be conclusive.  Broker shall not (i) represent to any prospective borrower that Lender has approved or will approve any loan application or (ii) issue a lock-in agreement, in either case, until Broker receives written notice of the commitment from Lender which shall include the interest rate, points and other terms of the commitment.  Any notice of a commitment to a prospective borrower shall include a description of all conditions that need to be satisfied prior to closing ("Closing Conditions").  Broker shall ensure that each loan application package is completed within a reasonable time prior to expiration of the applicable lock-in period or expiration of any conditional commitment.

    3.    Broker Compensation.  Subject to the full satisfaction of the conditions specified herein, Lender shall compensate Broker on a loan-by-loan basis according to Lender's Guidelines for each loan Lender closes and funds

G:\Forms\Broker Documents\Application Packages - Both\Broker FHA-VA Agreement -ALS.doc
Rev. 8/2002

Rev. 05/31/02

CONFIDENTIAL

LEH-APEX_0000835

Received at: 3:16PM, 5/5/2003

05-05-'03 16:27  FROM-Apex ● e Loans        3014744444        ● T-385  P09/14  U-153

pursuant to this Agreement. When the proceeds of the loan have been disbursed to, or for the benefit of, the borrowers under a loan, that loan shall be deemed to be "funded" by Lender. Compensation will be paid in the manner and at the time specified by Lender. Broker shall property and fully disclose all such compensation to the borrower in accordance with applicable law. Broker and Lender agree that the compensation paid by Lender to Broker pursuant to this Agreement is to compensate Broker for the purchase of all of Broker's right, title and interest in and to each loan funded by Lender, for services performed by Broker in connection with such funded loans, and in recognition of the value to Lender of the use of Broker's staff and facilities in connection with the origination of the loan. The parties agree that, notwithstanding any provisions in this Agreement to the contrary, the compensation paid to Broker shall not be greater than the "reasonable value" of the goods, facilities and other services provided by Broker. For FHA/VA Loans, such compensation shall not be in an amount that would cause any loan to violate any of the FHA/VA guidelines.

    4.    Obligation to Deliver Loans. Lender shall have the right to review, from time to time, upon reasonable prior notice to Broker, Broker's files, and other documents pertaining to registered loans, which have failed to close. Such review will be conducted in a manner, which does not unreasonably interfere with Broker's normal operations. If requested by Lender, Broker shall provide a written evaluation of the reasons for any approved borrower failing to close a loan package, and shall furnish Lender such information and documentation including, without limitation, a copy of the Equal Credit Opportunity Act ("ECOA") adverse action notice provided to the applicant.

    5.    Representations and Warranties of Broker. Broker makes and will be deemed to have made to Lender, as of the date hereof and continuing through the date of submission of each loan application package to Lender and the closing and funding of each loan, all of the following representations and warranties (and any additional representations and warranties set forth in Lender's Guidelines, from time to time):

        (a)    If applicable, Broker (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, authorized to transact business and in good standing under the laws of each jurisdiction in which it serves as a broker and in each jurisdiction in which mortgaged properties are located, (ii) has full power and authority, as applicable, to broker loans and to execute, deliver and perform its obligations under this Agreement, and (iii) has duly authorized the execution, delivery and performance of this Agreement by all requisite action and constitutes the legal, valid and binding obligation of Broker, enforceable against Broker in accordance with its terms.

        (b)    Broker is the holder of a valid mortgage brokerage or other applicable license issued by each state in which broker conducts business that requires Broker to be licensed, and all other licenses, permits and regulatory approvals as may be required by law in relation to the performance of Broker's responsibilities under this Agreement. Broker shall maintain all such licenses in good standing throughout the term of this Agreement. Broker will retain on file with Lender current copies of all such licenses. If Broker submits any loans that are intended to be FHA-insured or VA-guaranteed, Broker is either (i) approved to originate and submit loans to VA for VA approval, (ii) approved to underwrite mortgage loans with "Automatic" approval, or (iii) approved as a VA authorized agent with underwriting performed by Lender. With respect to any FHA loan submitted to Lender, Broker is either (i) approved by FHA to participate in its "Direct Endorsement" mortgage insurance program or (ii) a FHA sponsored lender with underwriting performed by Lender.

        (c)    Neither Broker, nor any of its current or former (during the time of their employment by Broker) officers, directors, principal shareholders, members, loan officers or originators have ever been excluded or barred from conducting business with or by Fannie Mae, Freddie Mac, FHA, VA or any other government or regulatory agency, or indicted, convicted or under investigation for any criminal or civil offenses or any fraudulent activity related to mortgage lending, real estate finance, fair housing, lending or consumer credit laws or any securities laws.

        (d)    To Broker's knowledge, after review of the entire loan application package (including, without limitation, the loan application, earnest money or purchase contract, property appraisal, verification of income, deposits and credit sources, and closing affidavits or certifications and other representations by borrowers), no fraudulent information or documentation is present in the loan application package or in the origination process used to generate the loan application package. Broker has used its best efforts to ensure that nothing contained in any loan application package, whether obtained, derived or requested by the borrower, Broker or otherwise, is untrue, erroneous or misleading.

        (e)    Broker has no knowledge nor any reason to know of any of the following: (i) fire, windstorm or other casualty damage to the Property; (ii) that the Property has been or will be condemned; (iii) detrimental conditions which could reasonably be expected to adversely affect the market value of the Property including, but not limited to, expansive soils, underground mines or storage tanks, soil subsidence, landfills, superfund sites, special study zones, or other similar conditions; (iv) outstanding mechanics' or materialmen's liens which are or may be a lien prior to, or of equal priority with, the lien of the security instrument except those that are affirmatively insured against by the title insurance policy; (v) outstanding oil, gas or other mineral interests now owned or controlled by the proposed borrower which might jeopardize the security interest in the Property or in any manner

Rev. 8/2002                    -2-

CONFIDENTIAL

LEH-APEX_0000836

diminish the value of the Property; (vi) any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein; or (vii) circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.

(f)    Except as otherwise disclosed to Lender in writing before the funding of any loan, Broker: (i) has not received, and has no agreement to receive, any direct or indirect payment from any third party with respect to the loan application package (or the related real estate transaction), including without limitation, payments from escrow agents, appraisers, or real estate brokers, or agents of borrowers, and (ii) has no direct or indirect ownership interest in any Property.  Broker will not collect any fees in advance of closing from prospective borrowers unless permissible under applicable laws and regulations and fully disclosed to Lender. Broker has not advanced funds or induced, selected or knowingly received advanced funds by a party other than the borrower for the payment of any amount required to obtain the loan.

(g)    Broker has complied with all terms, conditions and requirements of Lender's Guidelines and this Agreement, and with all applicable federal, state and local laws relating to the loan application process, including but not limited to ECOA, the Truth in Lending Act, the Fair Credit Reporting Act, RESPA and the Federal Fair Housing Act. Broker has provided all disclosures to the borrower required by Lender or by applicable laws and regulations to be made by Broker (including, but not limited to, disclosures which relate to the amount and source of compensation paid to Broker by a borrower, Lender or third parties) within the time frames required by such laws and regulations.

(h)    To Broker's knowledge, the Property complies with all local and county ordinances (including all applicable environmental regulations) and that all permits and certificates for occupancy and use have been obtained.

Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

6.    Rights to Obtain Certain Information. During the term of this Agreement, Broker will furnish Lender with (i) copies of all renewals of its licenses within thirty (30) days after they are issued to Broker by the applicable regulatory authorities; and (ii) copies of Broker's audited financial statements promptly after they become available (in the event Broker does not obtain an audited financial statement, Broker will furnish Lender with its internally prepared financial statements which are certified by Broker's chief financial officer). If requested by Lender, Broker shall also provide any other information reasonably related to substantiating Broker's continuing eligibility to participate in Lender's loan programs as in effect from time to time. If Broker is a participant in the FHA or VA sponsorship programs, Broker shall immediately notify Lender if Broker loses its eligibility under either the FHA or VA sponsorship program.

7.    Change of Ownership, Financial Condition or Senior Management. Broker will promptly advise Lender of any material adverse change in its business or financial condition, or any change in its ownership or senior management. Broker shall also immediately inform Lender in writing of any change in status of any required license and of any pending, threatened or final judicial, administrative or regulatory action or order which may impact the status of a required license or its eligibility under this program.

8.    Indemnification. In addition to Lender's rights and remedies under applicable law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines; (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines; or (iii) any claim by a borrower resulting from Lender's failure or refusal to fund a loan package which failure or refusal is related to information obtained from Broker or Broker's conduct. Without limiting the generality of the foregoing, (a) Broker's indemnity shall extend to all repurchase demands either made by Lender as a result of a breach of this Agreement or made by any third party to which Lender has sold any loan even if Lender has not incurred any loss with respect to such loan; and (b) Lender may market the loan for resale with full disclosure to prospective purchasers of the applicable defect, error or omission in the loan, without recourse against Lender for any loss or damage incurred by the purchaser in connection with the defect, error or omission. Broker shall reimburse Lender for the difference between: (x) the "Repurchase Price," and (y) the sales price, if any, received by Lender upon the sale of such loan to a purchaser. As used herein, "Repurchase Price" means an amount equal to the sum of (i) the unpaid principal balance of the loan, plus accrued interest thereon at the rate specified in the mortgage note; (ii) the amount of any premium, fee or other sum paid by Lender in connection with the origination of the loan; (iii) any and all advances made by Lender for the account of the borrower together with interest thereon at the rate specified in the mortgage

Rev. 8/2002                                    -3-

CONFIDENTIAL                                              LEH-APEX_0000837

Received at: 3:37PM, 5/5/2003



note; and (iv) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Lender in the exercise of its rights and remedies in connection with the loan, the mortgaged property, and/or the borrower, together with interest thereon at the rate specified in the mortgage note.

For FHA/VA Loans. In the event it is discovered by Lender through its own investigation or a HUD audit that fees have been charged in excess of those allowed by either the FHA or VA, Broker shall refund such excess fees directly to a borrower or reduce the fees charged at closing. Broker shall indemnify Lender for any damages related to any excess charges.

With respect to any Claim other than a loan repurchase demand, Lender Indemnitees agree to give Broker notice of any Claim which may give rise to indemnification hereunder; provided, however, that Lender Indemnitees' failure to give such notice will not reduce Broker's indemnity obligations unless such failure impairs Broker's ability to mitigate its losses, and then only to the extent of such impairment. In a timely manner, but in any event within thirty (30) calendar days after receipt of such notice, Broker shall cure, settle or otherwise discharge such Claim at its sole expense. If Broker fails to compromise, settle or otherwise discharge such Claim within the required time period, then Lender Indemnitees shall have the right to compromise, settle or discharge the Claim without Broker's consent and to obtain indemnification from Broker. With respect to any Claim consisting of a loan repurchase demand, Broker's indemnity obligation shall arise automatically upon Lender Indemnitees' receipt of a loan repurchase demand from an investor which Lender Indemnitees determine in their sole and absolute discretion to be enforceable. Notwithstanding anything to the contrary contained in this Agreement, the Lender's Guidelines or elsewhere, Broker expressly acknowledges and agrees that Lender's review of, or failure to review, any loan application package or any portion of a loan application package shall not limit or otherwise affect Lender's right to demand indemnification or repurchase of a loan or any other relief provided by this Agreement.

9.    Adverse Action Notices. Lender will not deliver to any loan applicant an "adverse action" notice required by Federal Reserve Board Regulation B, 12 C.F.R. §202.9 when Lender decides it will not approve a particular loan. Rather, Lender shall deliver a completed adverse action notice to Broker specifying the reasons Lender has declined to fund the loan. Broker shall forward this adverse action notice to the applicant no later than thirty (30) days following the date Lender received a "completed application" (as defined at 12 C.F.R. §202.2) for the prospective loan unless, within said 30-day period, another lender has approved the loan from Broker and Broker notifies the loan applicant that the application has been approved.

10.    Independent Contractor. While engaging in any activities pursuant to this Agreement, Broker shall serve as an independent contractor and not as an agent for Lender. Broker shall not represent or imply in any manner that any of its officers or employees are officers or employees of Lender, and shall not represent or imply that its offices are offices or branches of Lender. Broker shall have no authority to execute any documents of any type on behalf of Lender nor shall Broker have the authority to make any commitments on behalf of Lender or in any manner to bind, contract, or incur liability for Lender.

11.    Non-Exclusive Agreement. Nothing in this Agreement shall be construed to create an exclusive relationship in any market or geographic area between Lender and Broker. Broker acknowledges that Lender provides the same or similar services to other brokers.

12.    Termination. This Agreement will continue until terminated by either party. Either party may terminate this Agreement for any reason upon fifteen (15) days prior written notice. In addition, either party may terminate this Agreement without prior notice for cause, including, without limitation, breach of any representation, warranty, promise, or agreement made or deemed to be made in this Agreement or Lender's Guidelines, or default in performance of any duty, obligation or responsibility hereunder or under Lender's Guidelines. Upon termination of this Agreement by either party for any reason, Lender shall have the option, in its sole discretion, with respect to any loan that was registered prior to termination, (a) to lock, underwrite, close or fund any such loan application and Broker shall comply with all of its obligations under this Agreement with respect to such loans, or (b) to reject such loans and return such loan application packages to Broker without any further obligation of Lender. Any loans not registered at the time of termination shall be deemed to be rejected and Lender shall have no further obligation with respect to such loans. All representations, warranties, rights to audits, indemnity obligations, and other remedies will survive the termination of this Agreement.

13.    Further Assurances. Each party agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request, in order to effectuate the purposes and to carry out the terms of this Agreement. Without limitation of the foregoing, Broker agrees to do all things and to execute or otherwise obtain for Lender all additional documentation necessary to (i) properly complete Lender's approval of any loan, (ii) cure any breach or potential breach of Broker's warranties as to a closed loan, (iii) sell the loan to a secondary market investor or otherwise comply with FNMA, FHLMC, GNMA, FHA, VA or other secondary market requirements, or (iv) insure or guaranty the loans with the FHA, VA or private mortgage insurer, as applicable.

14.    Attorney's Fees. If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the

Rev. 8/2002

-4-

CONFIDENTIAL                                                                                      LEH-APEX_0000838

Received at: 3:16PM, 5/5/2003

05-05-'03 16:29 FROM-Apex  e Loans    3014744444    T-385  P12/14  U-153

successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

15.    Non-Assignability.  This Agreement may not be assigned by Broker without the prior written consent of Lender. Any attempted assignment without Lender's required consent shall be void.  No loan packages may be submitted to Lender for which applications were solicited, or processing performed, by any entity or any employee of any entity that is not a party to this Agreement without the prior written consent of Lender. Lender, in its sole discretion, may assign this Agreement from time to time.

16.    No Waiver; Remedies Cumulative.  Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  All rights and remedies of Lender under this Agreement are distinct from, and are cumulative with, any other rights or remedies under this Agreement or Lender's Guidelines or afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

17.    Notices.  All notices or other communications required or permitted hereunder shall be in writing and shall be delivered personally, or sent by certified, registered or express mail, postage prepaid, or by a national overnight carrier or by facsimile (with a confirming copy by mail or national overnight carrier) and shall be deemed given when so delivered personally or by facsimile, or if mailed, five days after the date of mailing, or if by overnight carrier, on the following business day, as follows: (i) if to Lender, addressed to Lender at: Aurora Loan Services Inc., Attention: Executive Vice President, Wholesale Production, 2530 South Parker Road, Suite 601, Aurora, Colorado 80014. (ii) if to Broker, addressed to Broker at the address specified below its signature hereto or (iii) to such other address as any party hereto shall notify the other party hereto from time to time.

18.    Rights of Setoff.  Lender may setoff against any amounts owed by Lender or its affiliates to Broker under this Agreement, Lender's Guidelines or otherwise, any amounts owed by Broker to Lender or its affiliates under this Agreement or Lender's Guidelines. Setoff may be exercised by Lender at any time and from time to time without prior notice to or demand upon Broker, all of which are hereby waived by Broker; provided, however, that Lender shall notify Broker within a reasonable time after effecting any such setoff. Failure to provide notice shall not invalidate the setoff.

19.    Governing Law; Jurisdiction.  THIS AGREEMENT AND THE LENDER'S GUIDELINES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW.  BROKER IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE COURTS OF NEW YORK COUNTY AND THE FEDERAL COURTS OF THE SOUTHERN DISTRICT OF NEW YORK AS TO ANY DISPUTE CONCERNING THIS AGREEMENT.

20.    Business Practice Report Acknowledgment.  Broker acknowledges that it is in the best interest of both Broker and Lender for the Lender to perform due diligence concerning Broker's background and experience by periodically obtaining reports issued from various information service providers. Broker further acknowledges that Broker benefits from the efficiencies in the due diligence process that are possible when the Lender and other similarly situated entities in the mortgage industry exchange information about their experiences in doing business with individuals and companies such as Broker.  Therefore, Broker hereby consents and gives Lender permission to submit of Broker's name and the names of Broker's employees for screening through various information providers and any and all mortgage industry background databases, including, without limitation, databases operated by Mortgage Asset Research Institute, Inc., such as the Mortgage Industry Data Exchange ("MIDEX").  Broker understands that Lender performs quality control reviews of the loans that Broker submits to Lender for registration, review, underwriting, and/or purchase.

Broker understands and hereby consents to the release of information about any loan application that is believed to contain misrepresentations and/or irregularities.  Broker agrees and gives its consent that it and its employees may be named as the originating entity or loan officers on such loans. Broker hereby releases and agrees to hold harmless Lender, Mortgage Asset Research Institute, Inc., all MIDEX subscribers, and any trade associations that endorse the MIDEX system from any and all liability for damages, losses, costs, and expenses that may arise from the reporting or use of any information submitted by Lender or any other MIDEX subscriber to Mortgage Asset Research Institute, Inc., recorded in the MIDEX system, and used in any way by Lender or any other MIDEX subscriber.

21.    Non-Solicitation.  Broker (including any parent companies, subsidiaries, and/or affiliates) shall not solicit by means of direct mail, e-mail, Internet, or telephonic or personal solicitation, or by any other means, the prepayment in whole or in part of a mortgage loan funded by Lender. Advertising directed to the general public, including without limitation mass mailings based upon commercially acquired mailing lists, and newspaper, radio and television advertisements, shall not be deemed a solicitation prohibited by this Agreement.

Rev. 8/2002                              -5-

CONFIDENTIAL                                                          LEH-APEX_0000839

Received at: 3:19PM, 5/5/2003

05-05-'03 16:32 FROM-Apex e Loans  3014744444     T-386 P13/14 U-153

22.   Restrictions on Publicity   Without the prior written consent of Lender, Broker shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of Lender, Lehman Brothers, Lehman Brothers Bank, FSB, or any of their respective affiliates, or otherwise identify Lender, Lehman Brothers, Lehman Brothers Bank, FSB, or any of their respective affiliates. In Broker's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Broker or in any proposals to prospective borrowers, brokers, clients or appraisers.

23.   Confidentiality.   Broker hereby agrees that the terms and conditions of this Agreement, Lender's Guidelines and any advice or agreement to fund any loan hereunder shall be kept confidential and their contents shall not be divulged to any party without Lender's consent except to the extent that it is necessary for Broker to disclose any such information in accordance with applicable law or in working with legal counsel, auditors, taxing authorities or other governmental agencies.

24.   Miscellaneous.   This Agreement and Lender's Guidelines set forth the entire agreement between Lender and Broker and supersedes all prior written, and all prior and contemporaneous oral, agreements, understandings, and arrangements between the parties. The Lender's Guidelines may be modified by Lender at any time with respect to any loans submitted to Lender for review at any time after Broker is notified of such modification or in the case of a modification from HUD or the VA, Broker shall be deemed to be on notice upon the announcement of such change by the applicable agency. No terms or conditions of this Agreement may be waived or modified unless executed in writing by both parties. This Agreement is not effective until accepted by Lender as evidenced by Lender's signature, and when accepted by Lender this Agreement becomes effective on the date set forth below. This Agreement shall be binding upon Broker, its successors and permitted assigns, and shall inure to the benefit of Lender, its successors and assigns. Either party shall be excused from failing to act or delay in acting if such failure or delay is caused by legal constraint (including, without limitation, changes in any applicable federal, state or local law or regulation), termination, interruption, curtailment or amendment of any federal or state mortgage insurance, mortgage guaranty or mortgage loan program, interruption of transmission or communication facilities, equipment failure, war, emergency conditions or other similar circumstances.

25.   Counterparts.   This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties agree that this Agreement will become effective on the date in which the Lender executes the Agreement as set forth below in Lender's signature block.

Apex Home Loans, Inc.
Printed Company Name

Eric D Gates
Principal's Signature

Eric D Gates, President
Printed Name with Title

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
Principal's Social Security Number

5/5/03
Date

AURORA LOAN SERVICES INC

By:

Name: Bruce Brunner
Title: Senior Vice President
Date: 5-9-03

Rev. 8/2002      -8-

CONFIDENTIAL      LEH-APEX_0000840


AURORA LOAN
SERVICES INC

# BROKER AGREEMENT

THIS LOAN BROKER AGREEMENT (this "Agreement") is made as of the date set forth on the signature line below between AURORA LOAN SERVICES INC. ("Lender") and the person or entity executing this Agreement as Broker ("Broker").

## BACKGROUND

Broker desires from time to time to submit certain residential mortgage loans to Lender for Lender's evaluation and possible funding. This Agreement, including all attachments hereto, is intended to set forth the terms and conditions of the non-exclusive relationship between Lender and Broker and the terms and conditions that will govern any submission of loans by Broker to Lender and any subsequent funding by Lender.

Therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Broker agree as follows:

      1.    <u>General Provisions</u>.  Broker agrees from time to time to submit and convey loan application packages to Lender, and provide certain additional services and facilities to Lender, subject to and upon the terms and conditions contained in this Agreement and in all other materials, including without limitation, interest rate sheets, product profiles, underwriting standards, marketing materials or other guides, loan commitments, closing instructions, other communications, announcements or guidelines provided by Lender to Broker from time to time (collectively, the "Lender's Guidelines").  Notwithstanding the generality of the foregoing, with respect to all FHA-insured or VA-guaranteed mortgage loans (collectively, "FHA/VA Loans"), Lender's Guidelines shall be deemed to include any and all program handbooks, announcements and other guidelines, including, but not limited to, mortgagee letters, announced or distributed in writing by the FHA and VA.  Lender, in its sole discretion, may decide to underwrite, close and fund certain residential mortgage loans (a "loan" or collectively, the "loans") submitted by Broker, including, without limitation, conventional, FHA and VA residential mortgage loans.

      2.    <u>Independent Contractor</u>.  While engaging in any activities pursuant to this Agreement, Broker shall serve as an independent contractor and not as an agent for Lender. Broker shall not represent or imply in any manner that any of its officers or employees are officers or employees of Lender, and shall not represent or imply that its offices are offices or branches of Lender.  Broker shall have no authority to execute any documents of any type on behalf of Lender nor shall Broker have the authority to make any commitments on behalf of Lender or in any manner to bind, contract, or incur liability for Lender.

      3.    <u>Non-Exclusive Agreement</u>   Nothing in this Agreement shall be construed to create an exclusive relationship in any market or geographic area between Lender and Broker. Broker acknowledges that (i) Lender provides the same or similar services to other brokers and (ii) Lender provides other conduits in the mortgage banking industry for the purchase of loans, which are also competitive with the services provided herein.

Broker Agreement - ALS.doc
02/17/00

CONFIDENTIAL

LEH-APEX_0000817

4.    <u>Termination</u>.   This Agreement will continue until terminated by either party. Either party may terminate this Agreement for any reason upon fifteen (15) days prior written notice.  In addition, either party may terminate this Agreement without prior notice for cause, including, without limitation, breach of any representation, warranty, promise, or agreement made or deemed to be made in this Agreement or Lender's Guidelines, or default in performance of any duty, obligation or responsibility hereunder or under Lender's Guidelines. Upon termination of this Agreement by either party for any reason, Lender shall have the option, in its sole discretion, with respect to any loan that was registered prior to termination, (a) to lock, underwrite, close or fund any such loan application and Broker shall comply with all of its obligations under this Agreement with respect to such loans, or (b) to reject such loans and return such loan application packages to Broker without any further obligation of Lender.  Any loans not registered at the time of termination shall be deemed to be rejected and Lender shall have no further obligation with respect to such loans.  All representations, warranties, rights to audits, indemnity obligations, and other remedies will survive the termination of this Agreement.

5.    <u>Further Assurances</u>.  Each party agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request, in order to effectuate the purposes and to carry out the terms of this Agreement.  Without limitation of the foregoing, Broker agrees to do all things and to execute or otherwise obtain for Lender all additional documentation necessary to (i) properly complete Lender's approval of any loan, (ii) cure any breach or potential breach of Broker's warranties as to a closed loan, (iii) sell the loan to a secondary market investor or otherwise comply with FNMA, FHLMC, GNMA, FHA, VA or other secondary market requirements, or (iv) insure or guaranty the loans with the FHA, VA or private mortgage insurer, as applicable.

6.    <u>Attorney's Fees</u>.  If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

7.    <u>Non-Assignability</u>.  This Agreement may not be assigned by Broker without the prior written consent of Lender.  Any attempted assignment without Lender's required consent shall be void.  No loan packages may be submitted to Lender for which applications were solicited, or processing performed, by any entity or any employee of any entity which is not a party to this Agreement without the prior written consent of Lender.

8.    <u>No Waiver; Remedies Cumulative</u>.   Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  All rights and remedies of Lender under this Agreement are distinct from, and are cumulative with, any other rights or remedies under this Agreement or Lender's Guidelines or afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

CONFIDENTIAL

LEH-APEX_0000818

9.   Notices   All notices or other communications required or permitted hereunder shall be in writing and shall be delivered personally, or sent by certified, registered or express mail, postage prepaid, or a national overnight carrier or by facsimile (with a confirming copy by mail or national overnight carrier) and shall be deemed given when so delivered personally or by facsimile, or if mailed, five days after the date of mailing, or if by overnight carrier, on the following business day, as follows: (i) if to Lender, addressed to Lender at: [Aurora Loan Services Inc., Attention: Bruce Brunner, 2530 South Parker Road, Suite 601, Aurora, Colorado 80014], (ii) if to Broker, addressed to Broker at the address specified below its signature hereto or (iii) to such other address as any party hereto shall notify the other party hereto from time to time.

10.   Governing Law; Jurisdiction.   **THIS AGREEMENT AND THE LENDER'S GUIDELINES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW. BROKER IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE COURTS OF NEW YORK COUNTY AND THE FEDERAL COURTS OF THE SOUTHERN DISTRICT OF NEW YORK AS TO ANY DISPUTE CONCERNING THIS AGREEMENT.**

11.   Reproduction of Documents.   This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed and (b) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

12.   Confidentiality.   Broker hereby agrees that the terms and conditions of this Agreement, Lender's Guidelines and any advice or agreement to fund any loan hereunder shall be kept confidential and their contents shall not be divulged to any party without Lender's consent except to the extent that it is necessary for Broker to disclose any such information in accordance with applicable law or in working with legal counsel, auditors, taxing authorities or other governmental agencies.

13.   Miscellaneous.   This Agreement and Lender's Guidelines set forth the entire agreement between Lender and Broker and supersedes all prior written, and all prior and contemporaneous oral, agreements, understandings, and arrangements between the parties. The Terms and Conditions annexed to this Agreement and any Lender's Guidelines may be modified by Lender at any time with respect to any loans submitted to Lender for review at any time after Broker is notified of such modification or in the case of a modification from HUD or the VA, Broker shall be deemed to be on notice upon the announcement of such change by the applicable agency. No terms or conditions of this Agreement may be waived or modified unless executed in writing by both parties. This Agreement is not effective until accepted by Lender as

-3-

 LEH-APEX_0000819

evidenced by Lender's signature, and when accepted by Lender this Agreement becomes effective on the date set forth below.  This Agreement shall be binding upon Broker, its successors and permitted assigns, and shall inure to the benefit of Lender, its successors and assigns.  Either party shall be excused from failing to act or delay in acting if such failure or delay is caused by legal constraint (including, without limitation, changes in any applicable federal, state or local law or regulation), termination, interruption, curtailment or amendment of any federal or state mortgage insurance, mortgage guaranty or mortgage loan program, interruption of transmission or communication facilities, equipment failure, war, emergency conditions or other similar circumstances.

14.    Counterparts.  This Agreement may be executed simultaneously in any number of counterparts.  Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

15.    Other Terms.  **THIS AGREEMENT IS SUBJECT TO THE TERMS AND CONDITIONS ON THE FOLLOWING PAGES.**

**IN WITNESS WHEREOF**, the parties agree that this Agreement will become effective on the date in which the Lender executes the Agreement as set forth below in Lender's signature block.

---

BROKER

Apex Home Loans, Inc
a Maryland corporation

By: Eric D Gates
Name: Eric D Gates
Title: President
Date: 5/1/00

Address for Notices:
9111 Edmonston Rd #304
Greenbelt, MD 20770
Attn: Eric Gates

---

LENDER

AURORA LOAN SERVICES INC.
a Delaware corporation

By: [signature]
Name: Bruce Brunner
Title: VP
Date: 1-10-01

---

-4-

CONFIDENTIAL



# TERMS AND CONDITIONS

1.    <u>Submission and Processing of Loan Application Packages</u>    Broker will compile information from prospective mortgage loan borrowers and submit to Lender a completed, original loan application package together with such related materials as may be designated by Lender (the "Material"). For VA loans, Broker shall not submit a loan to Lender if such loan has been previously submitted and declined by the VA. The Material shall be in form and content as specified by Lender. In the event any form is incomplete or Lender requires additional information to evaluate the loan application, Broker will use its best efforts to assist in obtaining such additional material.

Following submission of any loan application to Lender, Broker will perform the following services in order to comply with the Real Estate Settlement Procedures Act, as amended ("RESPA"): (a) initiate/order verification of employment and verification of deposits, plus any additional documents required to establish income, employment and cash available for closing, if applicable; (b) initiate/order credit reports and requests for mortgage and other loan verifications; (c) initiate/order appraisals of the property proposed as security for the loan (the "Property"); (d) initiate/order inspections or engineering reports, if applicable; and (e) provide disclosures (truth-in-lending, good faith estimates, etc.) to the applicants as required by applicable law or by Lender. In addition, Broker will perform at least one of the following services as requested by Lender: (a) analyze the applicant's income and debt and pre-qualify the applicant to determine the maximum mortgage amount an applicant can afford pursuant to Lender's Guidelines; (b) educate the applicant in the home financing process and advise the applicant about the different types of credit products available, and demonstrate the differences between the closing costs and monthly payments on a product-by-product basis; (c) collect financial information (tax returns, bank statements, etc.) and other related documents that are required as part of the application process; (d) assist the applicant in understanding and rectifying credit problems (with disclosure to Lender as required); (e) maintain regular contact with the applicant between application and closing to apprise them of the status of the application and the requirement to satisfy any outstanding conditions to closing, and to gather additional credit, financial and other information as needed; and (f) participate in the loan closing. Lender reserves the right, exercisable in Lender's sole discretion, to require Broker to perform all of the foregoing services or to require other services to be provided in order to insure compliance with the provisions of RESPA regarding broker compensation. Broker shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations.

Loan application approval decisions shall be made by Lender in accordance with Lender's approval criteria then in effect. For FHA and VA loans, Lender's underwriting determination will be conclusive regardless of either (i) Broker's "Direct Endorsement" or "Automatic" approval status or (ii) any other FHA/VA direct underwriting approval programs. Broker shall not (i) represent to any prospective borrower that Lender has approved or will approve any loan application or (ii) issue a lock-in agreement until Broker receives written notice from Lender which shall include the interest rate, points and other terms of the commitment. Such representation to a prospective borrower shall include a description of all conditions that need to be satisfied prior to closing ("Closing Conditions")  Each loan application package submitted to Lender shall contain the original, executed loan application,

LEH-APEX_0000821

TERMS AND CONDITIONS

earnest money or purchase contract, if applicable, property appraisal, and verification of income, deposits and credit sources, and originals or copies certified to Lender's satisfaction and other documents required by Lender's Guidelines, by applicable law or by Lender to be contained therein.  All information may be subject to Lender's independent verification.  If Lender declines the loan application, the application package will be returned to Broker; otherwise, Lender will retain the packages and all documents therein.  Broker shall ensure that each loan application package is completed within a reasonable time prior to expiration of the applicable lock-in period or expiration of any conditional commitment.

    2.    <u>Closing and Funding of Loan Transactions</u>.  Lender shall have a reasonable time to review a completed loan application package.  Once Lender has completed its review of a loan application package, Lender will notify Broker whether Lender will approve the proposed loan, subject to any Closing Conditions.  Lender will close and fund a loan only if all of the following requirements are satisfied: (i) the loan shall have been approved by Lender; (ii) all applicable provisions of this Agreement, Lender's Guidelines and all Closing Conditions have been satisfied; and (iii) all of the representations and warranties of Broker shall be true and correct, and no event shall have occurred which, with notice or the passage of time, or both, would constitute a default under this Agreement.

If requested by Lender, Broker will assist Lender in the closing and funding of approved loans including, but not limited to, arranging for a closing of the loan at a time mutually agreed upon by Broker and Lender after all Closing Conditions have been satisfied.  Each locked-in loan or conditionally  committed loan must be closed and funded within the time limits specified in Lender's Guidelines or any applicable conditional commitment.  All closings shall occur at the offices of a settlement agent approved by Lender and all loans shall close in Lender's name unless otherwise agreed to by Lender in writing.  Prior to the closing of a loan, and if available in the jurisdiction where the Property is located, the title insurance company issuing the mortgagee's title insurance policy required under the terms of Lender's Guidelines shall have delivered to Lender an "Insured Closing Protection Letter" (or similar instrument) with respect to the settlement for the loan.  As used herein, an "Insured Closing Protection Letter" shall mean, in all states except Texas, the ALTA (or similar) form of insured protection letter; in Texas the term shall mean the form of insured closing service letter prescribed by the Texas State Board of Insurance.

All loan documents and other documents related to the closing of a loan shall be prepared by and will identify Lender as lender or payee on the note and secured party in the security instrument.  Lender will wire transfer or otherwise provide the loan funds to the settlement agent at a time and in a manner (including closing instruments) acceptable to Lender.  After the closing of the transaction, Broker will assist Lender in obtaining all original instruments, recorded documents, title policy and other documents that relate to or evidence that the Loan was executed and/or issued at the closing in accordance with Lender's Guidelines.

If Broker is authorized to submit FHA loans to Lender, Broker shall maintain a quality control plan (the "Plan") that meets the requirements of the HUD Mortgage Approval Handbook.  The Plan must be a proscribed function of the Broker's operations and assure that Broker maintains compliance with FHA requirements and its own policies and procedures.  The Plan must enable Broker to initiate immediate corrective action if discrepancies are found.

CONFIDENTIAL

LEH-APEX_0000822

TERMS AND CONDITIONS

3.    Broker Compensation.  Subject to the full satisfaction of the conditions specified herein, Lender shall compensate Broker on a loan-by-loan basis according to Lender's Guidelines for each loan Lender closes and funds pursuant to this Agreement.  When the proceeds of the loan have been disbursed to, or for the benefit of, the borrowers under a loan, that loan shall be deemed to be "funded" by Lender.  Compensation will be paid in the manner and at the time specified by Lender.  Broker shall properly and fully disclose all such compensation to the borrower in accordance with applicable law.  No compensation shall be owed by Lender to Broker on account of any loan package which is not closed and funded.  Broker and Lender agree that the compensation paid by Lender to Broker pursuant to this Agreement is to compensate Broker for the purchase of all of Broker's right, title and interest in and to each loan funded by Lender, for services performed by Broker in connection with such funded loans, and in recognition of the value to Lender of the use of Broker's staff and facilities in connection with the origination of the loan.  The parties agree that, notwithstanding any provisions in this Agreement to the contrary, the compensation paid to Broker shall not be greater than the "reasonable value" of the goods, facilities and other services provided by Broker.  For FHA/VA Loans, such compensation shall not be in an amount that would cause any loan to violate any of the FHA/VA guidelines.

For FHA/VA Loans, Broker shall not charge any fees above the maximum fees (including but not limited to origination, processing, inspection and attorney's fees) allowed by the FHA or its regional VA office, as applicable.  Broker agrees to comply with HUD mortgagee letters 94-43 and 94-16 as well as all other HUD mortgagee letters, that have been issued or will be issued in the future, as they relate to fees, overages and tiered pricing.

4.    Lender's Guidelines.  Broker shall comply with all requirements, policies and procedures contained in Lender's Guidelines and any other information provided by Lender to Broker.

5.    Property Appraisals  Broker shall order an appraisal of the Property from an appraiser listed on Lender's Guidelines as an approved appraiser duly licensed or certified under the laws of the jurisdiction where the property is located.  Lender shall have the right to object at any time, in Lender's sole discretion, to the use of any specific appraiser, and thereafter such appraiser shall not be used for any appraisal in connection with a loan covered by this Agreement.  Each appraisal shall be prepared in compliance with applicable laws, rules and regulations and in a manner acceptable to Lender.

6.    Flood Insurance.  If Lender has determined that the Property is located in a special flood hazard area, and that flood insurance is available under the National Flood Insurance Act of 1968, as amended (the "Flood Act"), then the property must be covered by a flood insurance policy in the required amount with an insurer acceptable to Lender.  Broker shall provide prospective borrowers with the Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance as prescribed by the Flood Act, not later than the deadline imposed by such act.

7.    Obligation to Deliver Loans.  Broker agrees to pay reasonable fees or charges for withdrawal of a loan which is registered with Lender as Lender may from time to time establish by notice to Broker.  Lender shall have the right to review, from time to time, upon reasonable prior notice to Broker, Broker's files, and other documents pertaining to registered loans which have failed to close.  Such review will be conducted in a manner which does not unreasonably interfere with Broker's normal operations.  If requested by Lender, Broker shall

-3-

CONFIDENTIAL

LEH-APEX_0000823

TERMS AND CONDITIONS

provide a written evaluation of the reasons for any approved borrower failing to close a loan package, and shall furnish Lender such information and documentation including, without limitation, a copy of the Equal Credit Opportunity Act ("ECOA") adverse action notice provided to the applicant.

8.    <u>Representations and Warranties of Broker</u>.  Broker makes and will be deemed to have made to Lender, as of the date hereof and continuing through the date of submission of each loan application package to Lender and the closing and funding of each loan, all of the following representations and warranties (and any additional representations and warranties set forth in Lender's Guidelines, from time to time):

(a)    If applicable, Broker (i) is a corporation, limited liability company or partnership duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, (ii) is authorized to transact business as a foreign corporation, limited liability company or partnership and is in good standing under the laws of each jurisdiction in which it serves as a broker and in each jurisdiction in which mortgaged properties are located, (iii) has full power and authority, as applicable, to broker loans and to execute, deliver and perform its obligations under this Agreement, and (iv) has duly authorized the execution, delivery and performance of this Agreement by all requisite action and constitutes the legal, valid and binding obligation of Broker, enforceable against Broker in accordance with its terms.

(b)    Broker is the holder of a valid mortgage brokerage or other applicable license issued by each state in which Broker conducts business that requires Broker to be licensed, and all other licenses, permits and regulatory approvals as may be required by law in relation to the performance of Broker's responsibilities under this Agreement. Broker shall maintain all such licenses in good standing throughout the term of this Agreement. Broker will retain on file with Lender current copies of all such licenses.  If Broker submits any loans that are intended to be FHA-insured or VA-guaranteed, Broker is either (i) approved to originate and submit loans to VA for VA approval, (ii) approved to underwrite mortgage loans with "Automatic" approval, or (iii) approved as a VA authorized agent with underwriting performed by Lender.  With respect to any FHA loan submitted to Lender, Broker is either (i) approved by FHA to participate in its "Direct Endorsement" mortgage insurance program or (ii) an FHA sponsored lender with underwriting performed by Lender.

(c)    Neither Broker, nor any of its current or former (during the time of their employment by Broker) officers, directors, principal shareholders, members, loan officers or originators have ever been excluded from conducting business with FNMA, FHLMC, FHA or the VA, or indicted, convicted or under investigation for any criminal or civil offenses or any fraudulent activity related to mortgage lending, real estate finance, fair housing, lending or consumer credit laws or any securities laws.

(d)    To Broker's knowledge, after review of the entire loan application package (including, without limitation, the loan application, earnest money or purchase contract, property appraisal, verification of income, deposits and credit sources, and closing affidavits or certifications and other representations by borrowers), no fraudulent information or documentation is present in the loan application package or in the origination process used to generate the loan application package.  Broker has used its best efforts to assure that nothing contained in any loan application package, whether

-4-

CONFIDENTIAL

TERMS AND CONDITIONS

obtained, derived or requested by the borrower, Broker or otherwise, is untrue, erroneous or misleading.

(e)    Broker has no knowledge nor any reason to know of any of the following: (i) fire, windstorm or other casualty damage to the Property; (ii) that the Property has been or will be condemned; (iii) detrimental conditions which could reasonably be expected to adversely affect the market value of the Property including, but not limited to, expansive soils, underground mines or storage tanks, soil subsidence, landfills, superfund sites, special study zones, or other similar conditions; (iv) outstanding mechanics' or materialmen's liens which are or may be a lien prior to, or of equal priority with, the lien of the security instrument except those that are affirmatively insured against by the title insurance policy; (v) outstanding oil, gas or other mineral interests now owned or controlled by the proposed borrower which might jeopardize the security interest in the Property or in any manner diminish the value of the Property; (vi) any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein; or (vii) circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.

(f)    Except as otherwise disclosed to Lender in writing before the funding of any loan, Broker:  (i) has not received, and has no agreement to receive, any direct or indirect payment from any third party with respect to the loan application package (or the related real estate transaction), including without limitation, payments from escrow agents, appraisers, or real estate brokers, or agents of borrowers, and (ii) has no direct or indirect ownership interest in any Property.  Broker will not collect any fees in advance of closing from prospective borrowers unless permissible under applicable laws and regulations and fully disclosed to Lender.  Broker has not advanced funds or induced, selected or knowingly received advanced funds by a party other than the borrower for the payment of any amount required to obtain the loan.

(g)    Broker has complied with all terms, conditions and requirements of Lender's Guidelines and this Agreement, and with all applicable federal, state and local laws relating to the loan application process, including but not limited to ECOA, the Truth in Lending Act, the Fair Credit Reporting Act, RESPA and the Federal Fair Housing Act. Broker has provided all disclosures to the borrower required by Lender or by applicable laws and regulations to be made by Broker (including, but not limited to, disclosures which relate to the amount and source of compensation paid to Broker by a borrower, Lender or third parties) within the time frames required by such laws and regulations.

(h)    To Broker's knowledge, the Property complies with all local and county ordinances (including all applicable environmental regulations) and that all permits and certificates for occupancy and use have been obtained.

(i)    Immediately prior to each delivery of a loan application package as contemplated by this Agreement, Broker has good and marketable title to the loan application package, free and clear of all liens, encumbrances, charges and/or rights of others, and Broker will warrant and defend title thereto.

-5-

CONFIDENTIAL

LEH-APEX_0000825

TERMS AND CONDITIONS

Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

9.    Rights to Obtain Certain Information.  During the term of this Agreement, Broker will furnish Lender with (i) copies of all renewals of its licenses within thirty (30) days after they are issued to Broker by the applicable regulatory authorities; and (ii) copies of Broker's audited financial statements promptly after they become available (in the event Broker does not obtain an audited financial statement, Broker will furnish Lender with its internally prepared financial statements which are certified by Broker's chief financial officer to be prepared in accordance with generally accepted accounting principles consistently applied with any exceptions expressly noted).  If requested by Lender, Broker shall also provide any other information reasonably related to substantiating Broker's continuing eligibility to participate in Lender's loan programs as in effect from time to time.  If Broker is a participant in the FHA or VA sponsorship programs, Broker acknowledges that each year it must apply with the both the FHA and VA and pay the annual fees, as applicable, in order to renew its applications under both the FHA and VA sponsorship programs.  Broker shall immediately notify Lender if Broker loses its eligibility under either the FHA or VA sponsorship program.

10.    Change of Ownership, Financial Condition or Senior Management.  Broker will promptly advise Lender of any material adverse change in its business or financial condition, or any change in its ownership or senior management.  Broker shall also immediately inform Lender in writing of any change in status of any required license and of any pending, threatened or final judicial, administrative or regulatory action or order which may impact the status of a required license or its eligibility under this program.

11.    Indemnification.  In addition to Lender's rights and remedies under applicable law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines; (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines; or (iii) any claim by a borrower resulting from Lender's failure or refusal to fund a loan package which failure or refusal is related to information obtained from Broker or Broker's conduct.  Without limiting the generality of the foregoing, (a) Broker's indemnity shall extend to all repurchase demands either made by Lender as a result of a breach of this Agreement or made by any third party to which Lender has sold any loan even if Lender has not incurred any loss with respect to such loan; and (b) Lender may market the loan for resale with full disclosure to prospective purchasers of the applicable defect, error or omission in the loan, without recourse against Lender for any loss or damage incurred by the purchaser in connection with the defect, error or omission.  Broker shall reimburse Lender for the difference between: (x) the "Repurchase Price," and (y) the sales price, if any, received by Lender upon the sale of such loan to a purchaser.

CONFIDENTIAL

LEH-APEX_0000826

TERMS AND CONDITIONS

For FHA/VA Loans, in the event it is discovered by Lender through its own investigation or a HUD audit that fees have been charged in excess of those allowed by either the FHA or VA, Broker shall refund such excess fees directly to a borrower or reduce the fees charged at closing. Broker shall indemnify Lender for any damages related to any excess charges.

As used herein, "Repurchase Price" means an amount equal to the sum of (i) the unpaid principal balance of the loan, plus accrued interest thereon at the rate specified in the mortgage note; (ii) the amount of any premium, fee or other sum paid by Lender in connection with the origination of the loan; (iii) any and all advances made by Lender for the account of the borrower together with interest thereon at the rate specified in the mortgage note; and (iv) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Lender in the exercise of its rights and remedies in connection with the loan, the mortgaged property, and/or the borrower, together with interest thereon at the rate specified in the mortgage note.

With respect to any Claim other than a loan repurchase demand, Lender Indemnitees agree to give Broker notice of any Claim which may give rise to indemnification hereunder; provided, however, that Lender Indemnitees' failure to give such notice will not reduce Broker's indemnity obligations unless such failure impairs Broker's ability to mitigate its losses, and then only to the extent of such impairment. In a timely manner, but in any event within thirty (30) calendar days after receipt of such notice, Broker shall cure, settle or otherwise discharge such Claim at its sole expense. If Broker fails to compromise, settle or otherwise discharge such Claim within the required time period, then Lender Indemnitees shall have the right to compromise, settle or discharge the Claim without Broker's consent and to obtain indemnification from Broker. With respect to any Claim consisting of a loan repurchase demand, Broker's indemnity obligation shall arise automatically upon Lender Indemnitee's receipt of a loan repurchase demand from an investor which Lender Indemnitees determine in their sole and absolute discretion to be enforceable. Notwithstanding anything to the contrary contained in this Agreement, the Lender's Guidelines or elsewhere, Broker expressly acknowledges and agrees that Lender's review of, or failure to review, any loan application package or any portion of a loan application package shall not limit or otherwise affect Lender's right to demand indemnification or repurchase of a loan or any other relief provided by this Agreement.

12.    First Payment Default. If the borrower under any loan funded by Lender hereunder fails to make the first payment ~~within thirty (30) days after such payment was due to~~ *(il)* ~~Lender~~, Broker will reimburse Lender for the amount of any premium, fee or other sum in excess of the principal balance of the loan paid by Lender to Broker in connection with the origination or purchase of the loan.

13.    Early Payoff. If a mortgage loan is paid in full within *six (6)* ~~twelve (12)~~ months of the funding date for such loan (the "Early Payment"), Broker will reimburse Lender for the amount of any premium, fee or other sum in excess of the principal balance of the loan paid by Lender to Broker in connection with the origination or purchase of the loan. If the Lender determines that Broker or any principal, affiliate, or employee of Broker was responsible for the Early Payment, in addition to the premium, fees and other sums required to be paid pursuant to this Section 13, Broker will pay Lender an additional administrative fee in the amount of $2,500.

CONFIDENTIAL

LEH-APEX_0000827

TERMS AND CONDITIONS

14.    Rights of Setoff    Lender may setoff against any amounts owed by Lender to Broker under this Agreement or Lender's Guidelines any amounts owed by Broker to Lender under this Agreement or Lender's Guidelines.  Setoff may be exercised by Lender at any time and from time to time without prior notice to or demand upon Broker, all of which are hereby waived by Broker; provided, however, that Lender shall notify Broker within a reasonable time after effecting any such setoff.  Failure to provide notice shall not invalidate the setoff.

15.    Adverse Action Notices.  Lender will not deliver to any loan applicant an "adverse action" notice required by Federal Reserve Board Regulation B, 12 C.F.R. §202.9 when Lender decides it will not approve a particular loan.  Rather, Lender shall deliver a completed adverse action notice to Broker specifying the reasons Lender has declined to fund the loan.  Broker shall forward this adverse action notice to the applicant no later than thirty (30) days following the date Lender received a "completed application" (as defined at 12 C.F.R. §202.2) for the prospective loan unless, within said 30-day period, another lender has approved the loan from Broker and Broker notifies the loan applicant that the application has been approved.

16.    Non-Solicitation.  For a period of two (2) years from the closing date of any loan, Broker (including any parent companies, subsidiaries, and/or affiliates) shall not solicit by means of e-mail, Internet, direct mail or telephonic or personal solicitation, or by any other means, the borrowers under any loan funded by Lender hereunder for the purposes of prepayment or refinancing or modification of such loan or for the sale of any insurance policies, securities or other financial products to such borrower.  For purposes of this section, advertising directed to the general public, including without limitation mass mailings based upon commercially acquired mailing lists shall not be deemed a solicitation prohibited by this Agreement.

**END OF TERMS AND CONDITIONS**

-8-

CONFIDENTIAL

LEH-APEX_0000828