UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                                        :        Chapter 11
In re:                                                  :
                                                        :        Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                :
                                                        :
                        Debtors.                        :
———————————————————————— x

## OPPOSITION OF LEHMAN BROTHERS HOLDINGS INC. TO MOTIONS SEEKING AN ORDER VACATING THE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS AGAINST MORTGAGE LOAN SELLERS

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
William A. Maher
Paul R. DeFilippo
Thomas P. Ogden
John E. Lazar

JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Lehman Brothers Holdings Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL BACKGROUND............................................................................................2

      A.     Sellers Initially Sold the Defective Loans to LBB.................................2

      B.     The Relationship Between LBB and LBHI .............................................3

      C.     Sellers' Obligations Under the LPAs.......................................................3

      D.     The LPAs Expressly Permitted LBB to Assign Its Rights ......................4

      E.     Subsequent Holder and Third-Party Beneficiary Provisions of the LPAs...............5

      F.     LBB Transferred the Defective Loans to LBHI, Which Then Sold Them to Fannie Mae or Freddie Mac .................................................................5

PROCEDURAL HISTORY................................................................................................6

ARGUMENT .....................................................................................................................7

I.     The Motions to Vacate Are Procedurally Improper .............................................7

II.    LBHI Is Entitled to Assert Indemnification Claims Against Sellers ...................8

      A.     LBB Assigned Its Rights Under the LPAs to LBHI ...........................9

            1.     Written Assignment Agreements..............................................9

            2.     *SecurityNational v. Aurora* Is Inapposite ...............................10

      B.     LBB Assigned Its LPA Rights Upon Sale of the Defective Loans to LBHI .................................................................13

      C.     The LPAs Automatically Transferred Rights to LBHI as a Subsequent Holder ....................................................................................14

      D.     The LPAs Automatically Transferred Indemnification Rights to LBHI as a Third-Party Beneficiary ...............................................15

      E.     The LPAs Automatically Transferred Rights to LBHI as a "Purchaser"................16

F.    LBHI May Assert Any Claims That Were Transferred to Fannie Mae or Freddie Mac ...............................................................................................................16

III.    LBHI's Indemnification Claims Are Timely ....................................................................18

CONCLUSION.....................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Pages**

*243-249 Holding co., LLC v. Infante*,
    771 N.Y.S.2d 651 (1st Dep't 2004) ...................................................................15

*Badiak v. White Plain Kensington, LLC*,
    918 N.Y.S.2d 329 (Sup. Ct. King's Cty. 2011) ........................................... 12

*Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*,
    249 F.3d 519 (6th Cir. 2001) ................................................................7

*Boston Post Road L.P. v. Federal Dep. Ins. Corp.*,
    21 F.3d 477 (2d Cir. 1994)...................................................................... 9

*Canale v. Manco Power Sports, LLC*,
    No. 06-cv-6131, 2010 WL 2771871 (S.D.N.Y. July 13, 2010).......................1, 6

*Condren, Walker & Co. v. Portnoy*,
    48 A.D.3d 331, 856 N.Y.S.2d 42 (1st Dep't 2008) ...........................................13

*D'Angelo v. State Farm Fire & Cas. Co.*,
    32 Fed. App'x 604 (2d Cir. 2002)............................................................7

*Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*,
    536 F. Supp. 2d 345 (S.D.N.Y. 2008), *aff'd*, 334 F. App'x 353 (2d Cir. 2009)...............13

*Gray v. Grain Dealers Mut. Ins. Co.*,
    871 F.2d 1128 (D.C. Cir. 1989) ...............................................................11

*Ifert v. Miller*,
    138 B.R. 159 (E.D. Pa.), *aff'd*, 981 F.2d 1247 (3d Cir. 1992) ....................... 12

*In re Britton*,
    288 B.R. 170 (Bankr. N.D.N.Y. 2002) ..................................................... 10

*In re Evergreen Mut. Funds Fee Litig.*,
    240 F.R.D. 115 (S.D.N.Y. 2008) ..............................................................7

*In re Moskowitz*,
    14 B.R. 677 (Bankr. S.D.N.Y. 1981)......................................................... 9

*In re Penn Traffic Co.*,
    No. 05 Civ. 3755 (NRB), 2005 WL 2276879 (S.D.N.Y. Sept. 16, 2005) ...................... 9

*Lehman Bros. Bank, FSB v. State Bank Com'r*,
    937 A.2d 95 (Del. 2007) .......................................................................3

iii

*Lehman Bros. Holdings v. 1st New England Mortgage Corp.*,
    No. 09-11082-GAO, 2012 WL 3984413 (D. Mass. Sept. 12, 2012) ............................................. 16

*Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*,
    No. H-09-0672, 2011WL 649139 (S.D. Texas Feb. 10, 2011)......................................9, 11

*Lehman Bros. Holdings, Inc. v. Key Fin. Corp.*,
    8:09-CV-623-T-17EAJ, 2011 WL 1296731 (M.D. Fla. Mar. 31, 2011) ..........................10

*Lehman Bros. Holdings, Inc. v. Mortgageclose.com*,
    No. 10-cv-633, Doc. No. 82 (C.D. Cal. November 2, 2010) (unpublished order attached
    as Exhibit A) ...............................................................................................9, 11

*Lehman Bros. Holdings, Inc. v. Nat'l Bank of Arkansas*,
    875 F. Supp. 2d 911 (E.D. Ark. 2012) ...................................................... 10-11

*Lehman Bros. Holdings, Inc. v. PMC Bancorp*,
    No. LA CV10-07207 JAK, 2013 WL 1095458 (C.D. Cal. Mar. 8, 2013) ...................9, 13

*Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co.*,
    Adv. Proc. No. 14-02392-SCC, Feb. 17, 2015 Hearing Tr. (Doc. No. __) ...................2, 17

*Leon v. Martinez*,
    84 N.Y.2d 83, 614 N.Y.S.2d 972 (1994) ...........................................................13

*Miller v. Wells Fargo Bank Int'l Corp.*,
    540 F.2d 548 (2d Cir. 1976).............................................................................13

*Nat'l Comm. Bank & Trust Co. v. Malik*,
    339 N.Y.S.2d 605 (N.Y. Sup. Ct. 1972) .........................................................11

*Rinieri v. News Syndicate Co.*,
    385 F.2d 818 (2d Cir. 1967).............................................................................6

*SecurityNational Mortgage Co. v. Aurora Bank FSB*,
    No. 2:11-CV-00434 DN, 2014 WL 7366063 (D. Utah Dec. 24, 2014)...........................10

*Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*,
    No. 07-CV-2514 JS AKT, 2013 WL 752259 (E.D.N.Y. Feb. 26, 2013)....................... 12

*United Brotherhood of Carpenters & Joiners of Am. (AFL-CIO) v. Tile Helpers Union Local 88*,
    740 F. Supp. 167 (E.D.N.Y. 1990) ................................................................ 12

*Univ. Mews Associates v. Jeanmarie*,
    122 Misc. 2d 434, 471 N.Y.S.2d 457 (Sup. Ct. 1983) .................................................. 10

**<u>Other Authorities</u>**

Federal Rule of Procedure 60(b) .............................................................................................. 1, 6-8

Plan Administrator Lehman Brothers Holdings Inc. ("LBHI") hereby submits this Opposition to the Motions of American Bank, Apex Home Loans Incorporated ("Apex"), Directors Mortgage Inc. ("Directors Mortgage"), First Mortgage Corporation ("First Mortgage"), Gateway Bank, Group 2000 Real Estate Services, Inc. ("Group 2000"), Oaktree Funding Corporation ("Oaktree"), and Republic State Mortgage Company ("Republic State") Seeking an Order Vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims Against Mortgage Loan Sellers (ECF No. 45277), and the Motion of Stearns Lending, LLC ("Stearns") Seeking an Order Vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims Against Mortgage Loan Seller  (ECF No. 48242) (collectively, the "Motions").

## PRELIMINARY STATEMENT

Apex, American Bank, Directors Mortgage, First Mortgage, Gateway Bank, Group 2000, Oaktree, Republic State, and Stearns (collectively, "Sellers") brought these Motions under Federal Rule of Procedure 60(b) to vacate the Court's alternative dispute resolution Orders (the "ADR Orders") for indemnification claims by LBHI against over 3,000 sellers and brokers of mortgage loans that LBHI acquired from its affiliate Lehman Brothers Bank, FSB ("LBB"). Rule 60(b) motions are generally disfavored and require a demonstration of either "extraordinary circumstances" or "extreme and undue hardship."  *Canale v. Manco Power Sports, LLC*, No. 06-cv-6131, 2010 WL 2771871, at *4 (S.D.N.Y. July 13, 2010).  The Motions fail this demanding standard.[1]

---

[1] The Motions present largely identical arguments, which are addressed in a consolidated fashion.  Unless otherwise noted, the cited "Motion" refers to that filed by Republic State.

The Motions are all essentially the same and rest primarily on the argument that LBB never assigned or otherwise transferred to LBHI its indemnification rights under agreements with Sellers. That argument is without merit. *First*, LBHI has produced to each Seller a written agreement memorializing the assignment from LBB to LBHI all of LBB's rights under the agreement between LBB and the Seller. *Second*, apart from these written assignments, at the time of each sale of a loan from LBB to LBHI, those entities plainly intended by that transaction to vest LBHI with LBB's indemnification and other rights under the loan purchase agreements between each Seller and LBB. *Third*, by the terms of the loan purchase agreements themselves, LBB's rights were automatically transferred to LBHI once it purchased and became a subsequent holder of the loans initially purchased by LBB.

As for the Motions' assertion that LBHI's indemnification claims against Sellers are untimely, this Court already rejected an identical argument in a related adversary proceeding against an originator of loans sold by LBB to LBHI. *See Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co.*, Adv. Proc. No. 14-02392-SCC, Feb. 17, 2015 Hearing Tr. at 73-74.

In short, Sellers have put forward nothing that could possibly justify vacating the ADR Orders. The Motions are procedurally improper and entirely unsupported attempts to upend the alternative dispute resolution procedures ordered by the Court, and thereby undo the efficiencies and cost savings of those procedures. The Motions should all be summarily denied.

## **FACTUAL BACKGROUND**

### A.    **Sellers Initially Sold the Defective Loans to LBB**

Sellers entered into substantially identical loan purchase agreements with LBB or its affiliate Aurora Loan Services, Inc., each of which expressly incorporated the terms of a separate "Seller's Guide" (together, the "LPAs") (*see* Motion, Exs. A & B). Under the LPAs, Sellers sold

residential mortgage loans to LBB, including the 60 loans that are the subject of LBHI

indemnification claims at issue (the "Defective Loans").[2]

### B.    The Relationship Between LBB and LBHI

Among its many activities, LBHI engaged in the purchase, sale, and securitization of

mortgage loans.  In 1999, LBHI acquired LBB, a federally chartered savings bank, in order to

provide LBHI with a cost effective method of financing the purchases of mortgage loans.  *See*

*generally Lehman Bros. Bank, FSB v. State Bank Com'r*, 937 A.2d 95, 98 (Del. 2007).  LBB

usually held loans it purchased from originators like Sellers for a short period of time, after

which it generally sold the loans to LBHI at cost.  *Id.*  The loan purchase agreements between

LBB and loan originators facilitated the sale of loans by LBB to LBHI by, among other things,

expressly allowing LBB to assign its rights under the agreements, and otherwise automatically

transferring those rights to subsequent purchasers of the loans.

### C.    Sellers' Obligations Under the LPAs

Under the LPAs, Sellers made certain representations and warranties about the

characteristics and quality of the loans they sold, and acknowledged that the "Purchaser" (as

defined in the LPAs) purchased the loans in reliance upon those representations and warranties.

Seller's Guide §§ 701, 703.[3]

---

[2] Apex was not a loan seller but rather a loan broker that submitted an applications for a Defective Loan
to LBB pursuant to an October 26, 2005 Broker Agreement (the "Broker Agreement") (Apex Motion, Ex.
A).  The Apex Motion tracks the motions of other Sellers, and in this opposition, the Broker Agreement is
subsumed in the term "LPA", except as otherwise noted.

[3] Under Section 8 of the Broker Agreement, Apex made various representation and warranties as to loan
applications submitted to LBB, including all the Seller's Guide representations and warranties.
"Purchaser" is not a term under the Broker Agreement.

In Section 710 of the Seller's Guide, Sellers agreed to repurchase any misrepresented

loan at a specified repurchase price within 30 days of notification.  In Section 711 of the Seller's

Guide, Sellers also agreed to indemnify the "Purchaser" from any claims or losses sustained as a

result of its purchase of a misrepresented loan:

### 711.    Indemnification and Third Party Claims

> In addition to any repurchase and cure obligations of Seller, . . . Seller
> shall indemnify Purchaser and Purchaser's designee (including, without
> limitation, any subsequent holder of any Note) from and hold them
> harmless against all claims, losses, damages, penalties, fines, claims,
> forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and
> any other costs, fees and expenses that the Purchaser may sustain in any
> way related to or resulting from any act or failure to act or any breach of
> any warranty, obligation, representation or covenant contained in or made
> pursuant to this Seller's Guide or the Loan Purchase Agreement by any
> agent, employee, representative or officer of Seller or Seller's
> correspondent.

The LPAs define the "Purchaser" as LBB and "its successors and/or assigns" for any particular

mortgage loan.  Seller's Guide § 8 (Definitions).[4]

### D.    The LPAs Expressly Permitted LBB to Assign Its Rights

The LPAs expressly permitted an assignment of all of LBB's rights under the

agreements. Section 701 of the Seller's Guide provides:

> In addition to Purchaser's right to assign its rights and duties under the
> Loan Purchase Agreement and the Seller's Guide, Seller agrees that
> Purchaser separately may assign to any other party any or all
> representations, warranties or covenants made by Seller to Purchaser in
> the Seller's Guide and Loan Purchase Agreement, along with any or all of
> the remedies available against Seller for Seller's breach of any
> representation, warranty or covenant, including, without limitation, the
> repurchase and indemnification remedies.

---

[4] Section 9 of the Broker Agreement sets forth a substantially identical indemnification remedy for breach
of loan application representations and warranties, except that indemnification under the Broker
Agreement extends to LBB's affiliates as well as assigns.  The Broker Agreement does not include an
express loan-repurchase obligation.

4

Section 713.3 of the Seller's Guide further states:

> Purchaser shall have the right to assign its rights and duties under the Loan Purchase Agreement and this Seller's Guide to any party without the consent of Seller. . . . Purchaser also may assign separately to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide or Loan Purchase Agreement, along with any or all of Purchaser's remedies available against the Seller for Seller's breach of any representation, warranty or covenant hereunder, including, without limitation, the repurchase and indemnification remedies.

*See also* Loan Purchase Agreement § 4 (LPA "shall bind and inure to the benefit of and be enforceable by the Seller and LBB and their respective successor and assigns").[5]

### E.    Subsequent Holder and Third-Party Beneficiary Provisions of the LPAs

As set forth above, Section 711 of the Seller's Guide states that "Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, *any subsequent holder of any Note*)" (emphasis added).  Section 711 also provides that "*any subsequent holder* of any Note acquired hereunder by Purchaser *shall be a third party beneficiary* of the Loan Purchase Agreement and this Seller's Guide" (emphasis added).[6]

### F.    LBB Transferred the Defective Loans to LBHI, Which Then Sold Them to Fannie Mae or Freddie Mac

LBB sold the Defective Loans to LBHI at various points in 2004 through 2007.  LBHI then sold the loans either to the Federal National Mortgage Association ("<u>Fannie Mae</u>") or the Federal Home Loan Mortgage Corporation ("<u>Freddie Mac</u>").  Fannie Mae and Freddie Mac subsequently discovered defects in the Defective Loans, and demanded that LBHI compensate

---

[5] Section 19 of the Broker Agreement similarly provides that LBB may assign the agreement "in its sole discretion."

[6] The Broker Agreement does not include provisions relating to subsequent holders or third-party beneficiaries of the agreement.

them for their resulting losses. LBHI ultimately settled the claims of Fannie Mae and Freddie Mac, giving rise to the indemnification claims that LBHI has asserted against Sellers.

## PROCEDURAL HISTORY

In January and February 2014, respectively, this Court approved large settlements between (i) LBHI and Fannie Mae (ECF No. 42153), and (ii) LBHI and Freddie Mac (ECF No. 42754). Those settlements resolved proofs of claims filed by Fannie Mae and Freddie Mac against the Debtors arising from LBHI's sale of defective mortgage loans to Fannie Mae and Freddie Mac. Pursuant to the settlements, Fannie Mae and Freddie Mac were obligated to provide LBHI with certain documents and information that would, in turn, allow LBHI to pursue claims for indemnification from loan originators and brokers.

On May 29, 2014, LBHI as Plan Administrator filed a Motion For Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers, which sought to establish a comprehensive mediation procedure for Indemnification Claims (the "ADR Procedures") (*see* ECF No. 44450). Following a hearing regarding the ADR Procedures on June 24, 2014, the Court entered the ADR Order embodying those procedures (ECF No. 45277).[7]

LBHI has identified more than 3,000 sellers and brokers, and more than 11,000 loans that could qualify for indemnification claims. Following entry of the ADR Order, LBHI sought to resolve its indemnification claims against Sellers through business-to-business discussions.

---

[7] On June 17, 2014, Stearns joined in the objections of other sellers concerning various aspects of the ADR Procedures (*see* ECF No. 44747). However, at a June 24, 2014 hearing regarding the ADR Procedures, Stearns agreed to an adjournment to negotiate changes to any ADR order to which it would be subject. *See* Hearing Tr. at 69:13-18 (ECF No. 46928). Following negotiations, Stearns agreed to a specially revised ADR Order, which this Court entered on July 21, 2014 (ECF No. 45314). That ADR Order is largely identical to the general ADR Procedures except as to the timing of certain response deadlines and the allocation of mediation fees.

Those efforts proved to be unproductive, and LBHI subsequently sent notices initiating the ADR

Procedures to each of the Sellers.  A number of the Sellers responded to those notices, but after

Stearns filed its February 17, 2015 motion to vacate the ADR Order, all Sellers followed suit.

## ARGUMENT

### I.    The Motions to Vacate Are Procedurally Improper

"Motions for relief under Rule 60(b) are disfavored, and are reserved for exceptional

cases."  *Canale*, 2010 WL 2771871, at *2.  Relief under the rule is of "extremely meagre scope,"

*Rinieri v. News Syndicate Co.*, 385 F.2d 818, 822 (2d Cir. 1967), and is appropriate only "in

unusual and *extreme* situations where principles of equity mandate relief."  *Blue Diamond Coal*

*Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (emphasis

original).  In addition, a Rule 60(b) movant must set forth "highly convincing material." *In re*

*Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 119 (S.D.N.Y. 2008) ("blanket assertions of

extraordinary circumstances and undue hardship are insufficient to support consideration under

[Rule 60(b)]"); *see also D'Angelo v. State Farm Fire & Cas. Co.*, 32 Fed. App'x 604, 605 (2d

Cir. 2002) ("Material offered in support of a motion to vacate under Rule 60(b) must be highly

convincing material.").  Sellers have not – and cannot – come close to meeting these high

standards.

After LBHI proposed the ADR Procedures, all Sellers had the opportunity to object to

their implementation.  Stearns, for example, joined in certain objections to the ADR Procedures

and then appeared before the Court at the June 24, 2014 hearing on the procedures.  Having

failed to object to entry of the ADR Orders (or, in the case of Stearns, expressly consenting to its

entry), Sellers cannot now claim that purported issues relating to LBB's assignment of rights

under the LPAs create the extraordinary circumstances that would justify vacating the Orders.

At no time prior to these Motions did any of the Sellers raise any such issues before this Court, and it is too late for them to do so now.

Indeed, Sellers have generally been aware for years that LBB regularly sold loans to LBHI, which then either securitized or sold the loans to other investors. Counsel for Apex, American Bank, Directors Mortgage, First Mortgage, Gateway Bank, Oaktree, and Republic State has represented and continues to represent numerous sellers in prior actions brought by LBHI pursuant to LPA rights assigned to it by LBB. Further, at least one of the Sellers (Stearns) was presumptively aware of the timeliness issues raised in the Motions, as they were extensively discussed at the June 2014 hearing. *See* Hearing Tr. at 48-49 (ECF No. 46928). In brief, Sellers cannot demonstrate anything like the extraordinary circumstances, or extreme and undue hardship necessary to vacate the ADR Orders under Rule 60(b).[8]

## II.     LBHI Is Entitled to Assert Indemnification Claims Against Sellers

Even if the Motions were not procedurally improper, for at least five separate reasons, LBHI is plainly entitled to assert indemnification claims against Sellers: (i) LBB assigned all its rights under the LPAs to LBHI by written agreement; (ii) LBB intended to assign all its rights under the LPAs in connection with LBHI's purchase of the Defective Loans; (iii) the LPAs automatically transferred all rights under the agreement to LBHI as a subsequent holder of the Defective Loans; (iv) the LPAs automatically transferred all rights under the agreement to LBHI as a as a third party beneficiary of the LPAs; and (v) the LPAs automatically transferred all rights under the agreement to LBHI as a "Purchaser."[9]

---

[8] In addition, Stearns expressly consented to its tailored ADR Order while aware of the arguments it now asserts. *See* ECF No. 48242. Stearns's Motion fails the standards of Rule 60(b) for this reason alone.

[9] Items (iii), (iv), and (v) do not apply to indemnification claims under the Broker Agreement, as that agreement does not incorporate the relevant LPA provisions. However, the Broker Agreement did automatically transfer its indemnification remedy to LBHI in that indemnification under that agreement

### A.    LBB Assigned Its Rights Under the LPAs to LBHI

#### 1.    Written Assignment Agreements

LBB and LBHI executed a series of written agreements memorializing the assignment of all LBB's rights under the LPAs to LBHI, dated September 2, 2008 (First Mortgage, Gateway Bank, and Republic State LPAs), June 25, 2010 (Apex Broker Agreement), May 9, 2013 (Group 2000 LPA) and May 13, 2014 (Directors Mortgage, Oaktree, and Stearns LPAs) (collectively the "Assignment Agreements").  The May 9, 2013 and May 13, 2014 assignment agreements amend and restate a February 13, 2012 assignment agreement and provide that their assignment of LPA rights is effective for all purposes as of February 13, 2012.[10]

---

extends to LBB affiliates as well assigns.  As the corporate grandparent of LBB, LBHI is, of course, an LBB affiliate.

[10] Stearns claims that it is not in possession of an assignment agreement pertaining to its Defective Loans. Stearns Motion at 9.  However, LBHI produced a copy of the May 13, 2014 Assignment Agreement to Stearns (LEH_Stearns_0002457-2557).  Oaktree argues that the same assignment agreement fails to name Oaktree.  Oaktree Motion at 10.  This is incorrect.  "Oaktree Funding Corporation" is listed as seller number 4169 at page A-91 of the agreement (LEH-OAK_0000594).

The Motions suggest in footnotes that LBHI "does not purport to have taken assignment of the [LPAs]," supposedly because the LPAs were not listed on the Debtors' list of executory contracts.  Motion at 11 n.1.  The LPAs, however, are not executory contracts in that Sellers are the only parties with remaining obligations.  *See, e.g., In re Penn Traffic Co.*, No. 05 Civ. 3755 (NRB), 2005 WL 2276879, at *2 (S.D.N.Y. Sept. 16, 2005) (executory contract is "one that is not so fully performed [such] that a breach by either side would constitute a material breach of the contract")  And even if the LPAs should have been included in the Debtors' list of executory contracts, the omission would not indicate that LBHI had rejected assignment, nor that the LPAs were not in full force and effect.  *See, e.g., Boston Post Road L.P. v. Federal Dep. Ins. Corp.*, 21 F.3d 477, 482 (2d Cir. 1994) (unexpired lease that was neither assumed nor rejected rides through bankruptcy unaltered and remains enforceable).

The Motions also claim that the Assignment Agreements are invalid because they specify particular Sellers, not specific LPAs.  Motion at 9-10.  This argument is without merit.  As explained in the very case on which the Motions rely:  "There is no particular phraseology required to effect an assignment.  All that is required is that the property must be sufficiently identifiable and there must be an intent to assign a present right in the subject matter of the assignment, divesting the assignor of all control over that which is assigned."  *In re Moskowitz*, 14 B.R. 677, 681 (Bankr. S.D.N.Y. 1981).

The assignment of LBB's rights under the LPAs to LBHI is unquestionably valid and effective. Indeed, at least five courts have ruled that assignment agreements between LBB and LBHI that are substantially similar to the Assignment Agreements validly transferred to LBHI LBB's rights under loan purchase agreements identical to the LPAs. *See Lehman Bros. Holdings, Inc. v. PMC Bancorp*, No. LA CV10-07207 JAK, 2013 WL 1095458 (C.D. Cal. Mar. 8, 2013); *Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*, No. H–09–0672, 2011 WL 649139 (S.D. Tex. Feb. 10, 2011); *Lehman Bros. Holdings, Inc. v. Mortgageclose.com*, No. 10-cv-633, Doc. No. 82, at 10-11 (C.D. Cal. November 2, 2010) (unpublished order attached as Exhibit A); *Lehman Bros. Holdings, Inc. v. Key Fin. Corp.*, 8:09-CV-623-T-17EAJ, 2011 WL 1296731 (M.D. Fla. Mar. 31, 2011); *Lehman Bros. Holdings, Inc. v. Nat'l Bank of Arkansas*, 875 F. Supp. 2d 911, 917-18 (E.D. Ark. 2012).[11]

## 2.    *SecurityNational v. Aurora* **Is Inapposite**

Sellers argue that regardless of any assignment, LBB had "no claim for indemnity to assign as a matter of law." Motion at 10. In this, Sellers appear to miss that LBB did not assign any particular claim to LBHI. Instead, LBB assigned all of its rights under the LPAs, including Sellers' loan representations and warranties, and the indemnification remedy of the LPAs. As

---

[11] Sellers point out that the LPAs provide that Sellers should be notified of any assignment of the agreement. Motion at 8. However, Sellers ignore that the LPAs impose no such requirement on assignment of Sellers' representations and warranties, and the indemnification remedy. *See* Seller's Guide §§ 701, 713.3. In any event, an assignment is valid despite a failure to give notice unless an express agreement provides to the contrary. *See Univ. Mews Associates v. Jeanmarie*, 122 Misc. 2d 434, 440, 471 N.Y.S.2d 457, 461 (Sup. Ct. 1983) (assignment restrictions do not void assignment absent "express provisions that any assignment shall be void or invalid if not made in a certain specified way"); *see also In re Britton*, 288 B.R. 170, 173 (Bankr. N.D.N.Y. 2002) ("Under New York law, only *express* limitations on assignability are enforceable" (emphasis original)).

assignee not of a specific claim but of the entire LPAs, LBHI obtained the right to assert its own,

independent claims for indemnification for losses arising out of Sellers' violations of the LPAs.

Sellers' argument relies on *SecurityNational Mortgage Co. v. Aurora Bank FSB*, No.

2:11-CV-00434 DN, 2014 WL 7366063 (D. Utah Dec. 24, 2014).  *See* Motion at 10-11.  But

*SecurityNational* has no application to LBHI's claims against Sellers since that ruling involved a

claim against LBB – not LBHI – for breach of an indemnification agreement that was entirely

unlike and separate from the LPA with the originator in that case.

Sellers nonetheless assert that *SecurityNational* shows that because LBB itself suffered

no losses arising out of Sellers' breaches of the LPAs, LBB had no LPA rights to assign to

LBHI.  *See* Motion at 10-11.  This makes no sense.  As one court explained in rejecting a similar

attempt to escape an obligation to indemnify LBHI:

> LBB did not retain the loans or its rights under the Agreements; it sold the
> loans and assigned its rights to LBH.  LBH now stands in LBB's shoes
> and may assert LBB's rights under the Agreements. . . . LBB cannot now
> assert its rights under the Agreements or claim contract damages against
> [the mortgage loan seller] because it sold the loans and assigned its rights
> under the Agreements to LBH before incurring damages.  But LBH may
> assert its assigned rights under the Loan Purchase Agreement and Seller's
> Guide, including the right to seek recovery of damages incurred after the
> assignment.

*Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*, No. H-09-0672, 2011WL 649139, at

*16 (S.D. Texas Feb. 10, 2011) ("[A]n assignee may sue for damages from contract breaches

occurring before the assignment").  As another court similarly ruled:

> [Defendant loan seller] would have courts require that all assignors
> specifically and expressly state that the assignment of rights applies to
> rights already existing as well as those arising in the future, despite a clear
> agreement to assign "all" rights.  This requirement is redundant and
> unnecessary, as evidenced by the fact that [defendant] has demonstrated
> no risk of being sued by both LBB and LBHI for the same Loans.

11

*Lehman Bros. Holdings, Inc. v. Mortgageclose.com*, No. 10-cv-633, Doc. No. 82, at 10-11 (C.D. Cal. November 2, 2010); *see Lehman Bros. Holdings, Inc. v. Nat'l Bank of Ark.*, 875 F. Supp. 2d 911, 917–18 (E.D. Ark. 2012) (rejecting loan seller's argument that January 2011 assignment agreement was ineffective where LBB had previously sold seller's loans to LBHI); *see also Nat'l Comm. Bank & Trust Co. v. Malik*, 339 N.Y.S.2d 605, 608 (N.Y. Sup. Ct. 1972) (assignee "entitled to recover the same amount of damages as his assignor would have been entitled to recover, without regard to the fact the assignee has paid consideration for the assignment"); *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1132-33 (D.C. Cir. 1989) (dismissing "absurd conclusion" that assignee's "release" of assignor's liability rendered assignment "worthless" because assignor then had no losses to assign).

Contrary to Sellers' argument, by asserting indemnification rights under the LPA, LBHI does not seek to expand on those rights or otherwise avoid "standing in the shoes" of its assignor LBB. As *Cornerstone* explains, *because* LBHI "now stands in LBB's shoes," it may recover for the same losses that LBB would have suffered "[h]ad LBB retained the loans and not assigned its rights under the Agreements." 2011 WL 649139 at *16. And, as *Mortgageclose.com* ruled, this is especially true where, as here, the loan seller "has demonstrated no risk of being sued by both LBB and LBHI for the same Loans." *Mortgageclose.com*, No. 10-cv-633, Doc. No. 82, at 11. The bottom line is that under Sections 701 and 713.3 of the Seller's Guide, each Seller assumed an obligation to indemnify LBB or any assignee of the LPA against liability to third-parties arising out of the Seller's breach of representations and warranties as to loans sold under the LPA. The indemnification claims that LBHI has asserted pursuant to the ADR Order in no way expand upon Sellers' obligations under the LPA.[12]

---

[12] The Motions cite *Badiak v. White Plain Kensington, LLC*, 918 N.Y.S.2d 329 (Sup. Ct. King's Cty. 2011) for the proposition that an assignment of rights cannot alter the nature of the rights assigned. *See*

### B.    LBB Assigned Its LPA Rights Upon Sale of the Defective Loans to LBHI

Under New York law, "[n]o particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." *Leon v. Martinez*, 84 N.Y.2d 83, 88, 614 N.Y.S.2d 972, 974 (1994).  "[A]ny act or words are sufficient which show an intention of transferring" rights to the assignee.  *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir. 1976); *Condren, Walker & Co. v. Portnoy*, 48 A.D.3d 331, 332, 856 N.Y.S.2d 42, 43 (1st Dep't 2008) (sale of notes also assigned obligation to pay brokerage commission where existence of assignment "confirmed by the uncontroverted actions and testimony of signatories of the original fee agreement").  Courts are especially inclined to recognize an assignment of contract rights where, as here, the assigned agreement expressly contemplates its assignment.  *See Lehman Bros. Holdings v. PMC Bancorp,* LA CV10-07207 JAK, 2013 WL 1095458, at *5 (C.D. Cal. Mar. 8, 2013) ("Moreover, this type of assignment was expressly contemplated in the Purchase Agreement"); *see also Exp.-Imp. Bank of U.S. v.*

---

Motion at 12. That case involved an assignment of a subcontractor's indemnification claim to a general contractor.  The court correctly ruled that the assignment did not require the indemnitor to cover liabilities of the general contractor that were broader than those of the subcontractor.  Here, by contrast, LBHI's indemnification claims are exclusively based on and limited to the LPA rights assigned by LBB.

Indeed, because LBB's assignment of indemnification rights did not expand the scope of the indemnity, Sellers have no standing to challenge the Assignment Agreements.  "[T]he right to contest the validity of an assignment may be asserted only by one who can raise the particular ground of contest in his own right." *United Brotherhood of Carpenters & Joiners of Am. (AFL-CIO) v. Tile Helpers Union Local 88*, 740 F. Supp. 167, 170 (E.D.N.Y. 1990); *see Ifert v. Miller*, 138 B.R. 159, 166 (E.D. Pa.), *aff'd*, 981 F.2d 1247 n.13 (3d Cir. 1992) (non-party to assignment cannot challenge its validity where rights and duties as to underlying contract "remain the same: The only change is to whom those duties are owed . . ."); *see also Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, No. 07-CV-2514 JS AKT, 2013 WL 752259, at *7 (E.D.N.Y. Feb. 26, 2013) (assignee entitled to indemnification where indemnitor agreed to indemnify as to certain losses without regard to whom indemnity was initially owed).

*Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008), *aff'd*, 334 F. App'x 353 (2d

Cir. 2009) (recognizing assignment where "the agreement explicitly contemplates the assignation

of the debt").

The acts of LBB and LBHI demonstrate that both parties intended an assignment of LPA

rights at the time the Defective Loans were sold to LBHI, and that intent and those actions

establish an assignment under New York law.  LBHI acquired LBB to gain access to Federal

Home Loan Bank funding, a stable and efficient funding source.  LBB in turn purchased loans

for resale to LBHI.  In acquiring loans such as the Defective Loans from LBB without recourse,

LBHI plainly relied on LBB's intended assignment of rights under the LPAs with the original

sellers in order to pursue the sellers for any breaches of the loan representations and warranties.

Any transaction in which LBHI acquired loans from LBB without recourse to neither LBB nor

the original seller would have made no commercial sense, as it would leave LBHI with no

remedy at all for losses caused by breach of loan representations and warranties, and gratuitously

freed the seller from any liability for shoddy origination practices.

### C.    The LPAs Automatically Transferred Rights to LBHI as a Subsequent Holder

As even Sellers acknowledge, LBHI automatically obtained indemnification rights under

the LPAs because it is a "subsequent holder of any Note."  *See* Motion at 7 (citing Seller's Guide

§ 711), 13 (describing Fannie/Freddie indemnification claims arising from "status as holders of

the Notes").  Sellers nonetheless assert that LBHI permanently lost those indemnification rights

when it sold the Defective Loans to Fannie Mae and Freddie Mac.  *Id.* at 8-9, 13-15.  This

argument is simply illogical.

First, Section 711 of the Seller's Guide refers to "any subsequent holder" and does not in

any way suggest that at any one time there can be only one such holder.  That Fannie Mae and

Freddie Mac could have asserted indemnification claims against Sellers thus does not suggest that LBHI had no such claims as to its liabilities under the Fannie Mae and Freddie Mac settlements.[13]  Second, Section 711 provides LBHI with indemnification rights for liability to third parties, including in particular persons who bought loans from LBHI.  LBHI could only incur such liability after it had sold a loan to a third party.  But under Sellers' argument, LBHI permanently lost indemnification rights as a subsequent holder the moment it sold a loan to a new holder.  Any such reading of Section 711 would render its indemnification rights meaningless and illusory.[14]

> ### D.    The LPAs Automatically Transferred Indemnification Rights to LBHI as a Third-Party Beneficiary

Sections 711 of the Seller's Guide also provides that any subsequent holder of a loan is a third-party beneficiary of the LPAs:

> It is understood and agreed that any subsequent holder of any Note acquired hereunder by Purchaser shall be a third-party beneficiary of the Loan Purchase Agreement and this Seller's Guide.

Moreover, the section is entitled and entirely focused on "Indemnification and Third-Party Claims," leaving no doubt that subsequent holders were intended third-party beneficiaries of the indemnification obligation of the LPAs.  "A party is entitled to sue as a third-party beneficiary of a contract if the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  *243-249 Holding co., LLC v. Infante*, 771 N.Y.S.2d 651,

---

[13] Sellers concede that Fannie Mae and Freddie Mac as subsequent holders likely had LPA indemnification claims against Sellers.  *See* Motion at 14-15.  They make no effort to reconcile the conflict between this concession and their assertion that LBB could not have assigned indemnification rights to LBHI.

[14] As described below in Section II (F), even if LPA indemnification rights were at one time entirely transferred to Fannie Mae and Freddie Mac as subsequent holders, any such rights were expressly transferred back to LBHI under the terms of the Fannie/Freddie settlements.

652 (1st Dep't 2004). "[T]he best evidence of the intent to bestow a benefit upon a third party is the language of the contract itself." *Id.*

### E.    The LPAs Automatically Transferred Rights to LBHI as a "Purchaser"

Under Section 711 of the Seller's Guide, Sellers indemnified the "Purchaser" from all losses:

> Seller shall indemnify Purchaser and Purchaser's designee (including without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement . . . .

With respect to each "particular Mortgage Loan," the Seller's Guide defines the "Purchaser" as LBB and, among others, its "successors and/or assigns." *See* Seller's Guide § 800 (definition of "Purchaser"); *see also* LPA § 4 (agreement is "enforceable by the Seller and LBB and their respective successors and assigns"). Upon assignment of the loans from LBB to LBHI, LBHI thus automatically became a "Purchaser" with an indisputable right to indemnification by Sellers for losses arising out of breaches of the LPAs.[15]

### F.    LBHI May Assert Any Claims That Were Transferred to Fannie Mae or Freddie Mac

In Section 5 of LBHI's settlement agreement with Fannie Mae, Fannie Mae assigned to LBHI any claims arising out of the Defective Loans:

> 5.    **Assignment of Rights/No Waiver of Defenses.**  Fannie Mae hereby sells, assigns, and otherwise transfers to LBHI any claims related to the Rep and Warranty Default Loans listed on Exhibit B that Fannie Mae holds against any

---

[15] At least one court has so applied Section 4 of the Loan Purchase Agreement. *See Lehman Bros. Holdings v. 1st New England Mortgage Corp.*, No. 09-11082-GAO, 2012 WL 3984413 (D. Mass. Sept. 12, 2012) ("[T]he Agreement's provisions, including the repurchase provisions, are enforceable not only by the original parties to the Agreement but also by successors and assigns. (Loan Purchase Agreement § 4.)").

originating lenders, secondary mortgage market sellers, borrowers, appraisers, brokers, title companies, escrow agents, insurers, and/or other third parties in connection with the Rep and Warranty Default Loans . . . .

(*See* ECF No. 42153).

In Section 2.2(b) of LBHI's settlement agreement with Freddie Mac, Freddie Mac

similarly assigned to LBHI any claims arising out of the Defective Loans:

2.2       Simultaneously upon payment and receipt of the Settlement Amount . . . Freddie Mac shall be deemed to have absolutely, unconditionally, and irrevocably sold, transferred, conveyed, and assigned to LBHI . . .

(b)       all rights, including any and all claims or causes of action, and any proceeds derived herefrom, that Freddie Mac may have against any person or entity other than LBHI arising out of or relating to the Loan Claim and/or the Indemnity and Servicing Claims, including, without limitation, any and all rights, claims and causes of action related to the Rep and Warranty Default Loans . . . listed on Exhibits A and B attached hereto that Freddie Mac holds against any originating lenders, secondary mortgage market sellers, borrowers, appraisers, brokers, title companies, escrow agents, insurers, and/or other third parties in connection with the Rep and Warranty Default Loans . . .

(*See* ECF No. 42754).

Thus, apart from its own indemnification claims against Sellers, LBHI also holds any

claims that may have been held by Fannie Mae or Freddie Mac as transferees of rights under the

LPAs.[16]

---

[16] The Motions assert that Fannie Mae and Freddie Mac could not assign their indemnification rights to LBHI without also assigning back the relevant mortgage notes, because those indemnification rights arose out of the agencies' status as holders of notes.  Motion at 13-15.  Sellers offer no authority whatsoever for this abstruse argument, and there is nothing in the LPA to suggest that a subsequent holder loses its indemnification rights just because it has liquidated or otherwise lost possession of a note.  Indeed, as described above in Section II (C), the right of a subsequent holder to indemnification against third-party claims would be meaningless if that right disappeared whenever that holder was no longer a current holder.

17

### III.    LBHI's Indemnification Claims Are Timely

Sellers argue that LBHI's indemnification claims are untimely because they accrued when LBB purchased the Defective Loans. *See* Motion at 15-16.  On February 17, 2015, this Court rejected that very argument and held that LBHI indemnification claims under loan purchase agreements with Sellers did not accrue until LBHI's indemnification liability to a third party became fixed. *See Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co.*, Adv. Proc. No. 14-02392-SCC, Feb. 17, 2015 Hearing Tr. at 73-74.

### CONCLUSION

For the foregoing reasons, the Motions should be denied in all respects.

Dated:  New York, New York
      April 14, 2015

WOLLMUTH MAHER & DEUTSCH LLP

By:  _____ s/ William A. Maher _____

William A. Maher
Paul R. DeFilippo
Thomas P. Ogden
John E. Lazar

500 Fifth Avenue
New York, New York 10110
(212) 382-3300

-and-

JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
(303) 573-1600
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Counsel for Lehman Brothers Holdings Inc.*