# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LEHMAN BROTHERS HOLDINGS, INC., | ) | 10-CV-00633-SVW (AGR) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT [54], [50]** |
| v. | ) | |
| MORTGAGECLOSE.COM, INC. | ) | |
| Defendant. | ) | |

**I. BACKGROUND**

On January 28, 2010, Lehman Brothers Holdings, Inc. ("LBHI") filed a complaint against Mortgageclose.com, Inc. ("MortgageClose), alleging breach of contract. MortgageClose is a mortgage lender that funds mortgage loans originated by third parties and then sells those loans to investors such as Lehman Brothers Bank ("LBB"). (SUF ¶ 1). LBB is the parent company of LBHI.

On June 2, 2004, LBB entered into a written Loan Purchase Agreement ("the Agreement") with MortgageClose. (SUF ¶ 2). The Agreement specifically incorporated the terms and provisions of Aurora

Seller's Guide ("the Seller's Guide").[1] (SUF ¶3). A choice of law provision states the Agreement is governed under New York law. (SUF ¶4). Under the Agreement, various loans were sold to LBB, including the three particular loans at issue in the Complaint. (SUF ¶5). Section 715 of the Seller's Guide, which is incorporated into the Agreement, contains an Early Payment Default clause. (SUF ¶10). Section 715 and 710 state that "Early Payment Default loans are subject to repurchase by the Seller at the Repurchase Price" at the Purchaser's option. (Baker Decl. Ex. B at 20, 23). For Mortgage Loans delivered pursuant to Seller's Delegated Underwriting Authority, a loan "has an early payment default if either the first or second monthly payment due Purchaser is not made within thirty (30) days of each such monthly payment's respective due date." (Baker Decl. Ex. B. at 24). Section 710 also requires that "any repurchase must occur no later than thirty (30) days of the date on which Purchaser notifies Seller of such breach *or* the date on which Seller *knows* of such breach." (Baker Decl. Ex. B at 20) (emphasis added).

LBHI, in its Complaint, alleges that three particular loans – the Burney, Kumar, and Powell loans ("the Loans") – were in Early Purchase Default as per the Agreement. (Compl. ¶¶15-17). It is undisputed that all three of these loans were in "early payment default" – that is, the first or second monthly payment due on the loan was not made within 30 days of its respective due date. LBHI allegedly sent notification letters to MortgageClose, demanding a repurchase of these loans, as

---

[1] Aurora is LBHI's loan servicer and agent. To be completely accurate, it was Aurora that allegedly contacted MortgageClose. However, to avoid confusion, Aurora's actions with respect to the loans at issue will be referred to as "Plaintiff's" or "LBHI's" actions.

2

required by Section 710.  (Baker Decl. Ex. E).  LBHI alleges it was harmed because MortgageClose materially breached the agreement by failing to repurchase these loans.  (Compl. ¶ 25).  LBHI further argues that it has standing to sue on behalf of LBB, the original party to the agreement, because it was assigned rights under the Agreement on September 2, 2008.  (Baker Decl. Ex. C).

MortgageClose raised 20 affirmative defenses in its answer.  Of these, MortgageClose has focused on four major arguments on Summary Judgment.  First, MortgageClose contends that LBHI's demand letters did not include a proof of receipt; therefore, LBHI has failed to provide evidence that MortgageClose breached by failing to respond because there is no proof the demands were received.  Second, MortgageClose contends that had it received the demand letters, they were not "firm" because they provided MortgageClose an opportunity to "cure" the Early Payment Default.  MortgageClose contends that in fact, for at least two of the loans, there was a "cure" and MortgageClose would not be in breach unless LBHI sent a second demand letter after the cure failed.  Third, MortgageClose argues that LBHI does not have standing to sue for breach of contract with regards to these particular Loans despite LBB's assignment.  MortgageClose contends the assignment between LBB and LBHI was only in regards to "prospective rights" and did not apply to these defaults, which had occurred prior to the assignment.  Finally, MortgageClose argues that LBHI cannot prove any harm even if the contract was breached because LBHI sold the Loans to third parties for a profit.

## II. LEGAL STANDARD

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. See id. at 323-34; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party" over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248; see also Aprin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must identify specific evidence from which a reasonable jury could return a verdict in its favor).

## III. DISCUSSION

Plaintiff LBHI has the burden of establishing the elements of a breach of contract claim in its Motion for Summary Judgment. "Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994). Here, it is undisputed that a contract existed and that LBB, through its agents and assignees, purchased loans from MortgageClose. However, MortgageClose contends that LBHI has not met its burden of showing breach and damages, or that it even has standing to sue. Thus, MortgageClose has filed its own Motion for Summary Judgment.

### A. Factual Dispute Regarding Receipt of Notification Letters

The Court finds that there is a genuine dispute of material fact regarding when MortgageClose had knowledge of LBHI's demand.

Plaintiff LBHI has proffered the following evidence showing that MortgageClose was sent and received the demand letters: (1) a copy of the letters themselves, dated and signed, (2) the fact that MortgageClose's President, Mr. Lam, acknowledged he knew about repurchase issues related to the Loans, and (3) the fact that MortgageClose, in its Answer, admitted that the letters were sent and that it had knowledge of the demanded repurchase.[2]

---

[2] MortgageClose's answer states, "defendant admits that a notice was sent and that an LBB entity demanded payment." (Doc. No. 13 ¶ 18).

The Court also notes that LBHI has now submitted the declaration of Zachary Trumpp, explaining the process of sending demand letters. (Doc. No. 77). However, this declaration was submitted in preparation for trial and was not submitted with LBHI's Motion for Summary Judgment. MortgageClose has had no opportunity to respond.

5

In a hearing held on November 1, 2010, MortgageClose took the position that it did not receive the letters. MortgageClose argues that Mr. Lam's testimony shows that he did not remember receiving the letters and that according to his records, no such demand was received. Dec. Of Chau Lam in Opp'n to MSJ ¶¶ 3, 6. This testimony, combined with the fact that it is Plaintiff's burden to prove it sent the letters and they were received, is sufficient to avoid Summary Judgment.

MortgageClose also argues, in its own Motion, that even if it did receive these letters or an e-mail regarding one of the Loans, the letters were not "unconditional." However, this alternative position is flawed in several regards. First, Section 710 of the Agreement is clear in stating that a repurchase "**shall**" occur within 30 days after the "earlier of the date on which Purchaser notifies Seller . . . **or** the date on which Seller **knows of such breach**." (Baker Decl. Exhibit B at 20) (emphasis added). Thus, the Agreement itself requires a repurchase from the date MortgageClose knew of the breach. Second, MortgageClose does not identify any portion in the Agreement requiring that these notification letters be "unconditional" or "firm," and even if it did, the letters sent by LBHI were sufficiently "firm" to constitute a demand for Repurchase. In relevant part, all three of the letters state:

> [W]e ask that you fulfill your obligations pursuant to the Agreement and Seller's Guide and repurchase the loan within 30 days of the date of this letter. In certain circumstances, as a special courtesy to our correspondents, Lehman may permit you to pursue alternatives to repurchase, including a cure of defect within a reasonable time period,

---

Accordingly, the Court does not consider this evidence in denying Summary Judgment.

> indemnification of Lehman, or repricing of the loan. Lehman's offer to MortgageClose.com, Inc. of an alternative to purchase may not be construed to prejudice or waiver of any rights Lehman has to request repurchase of the Loan at a later time.
>
> . . . If you are unable to cure the defect . . . within 30 days, Lehman will require that you fulfill your obligations pursuant to the Agreement and the Seller's Guide and repurchase the loan.
>
> Please contact me . . . within 5 days of the date of this letter for the mechanics of repurchase, including our calculation of the repurchase price or to discuss the availability of any of the alternatives discussed above.

Baker Decl. Ex. E.

As noted above, the letter begins by asking MortgageClose to fulfill its obligations to repurchase the early payment default loan. Although the letter does note that there may be alternatives to repurchasing available, it does so only on the condition that MortgageClose contact Lehman and discuss the alternatives within five days. If MortgageClose fails to contact Lehman within five days, MortgageClose must repurchase the loan.[3]

Thus, the Court finds that if MortgageClose did in fact receive these letters for each of the Loans, these letters constituted a proper notification under Section 710 of the Agreement. However, if MortgageClose did not receive the letters or did not have knowledge of the defaults as required by the Agreement, MortgageClose could not have

---

[3] The Court notes that MortgageClose cannot consistently argue that it did not receive the letters, but at the same time, that it attempted to discuss the alternatives raised by the letter within five days. If the letters were not in fact received, MortgageClose would have no knowledge of the fact that alternatives to repurchase were available.

7

breached the Agreement.[4]

The Court finds that both sides have failed in showing there is no genuine dispute of material fact regarding whether Defendant breached the Agreement. Thus, both Motions for Summary Judgment are DENIED. In order to streamline the issues remaining at trial, the Court will address the remaining issues raised by the parties.

**B. MortgageClose Argues the Letters, Even if Received, Allow "Curing" the Default as an Alternative to Repurchase, and Such Cures Took Place**

MortgageClose selectively takes language from the letters, arguing it was provided with the option to unilaterally choose to "cure" the defaults by the debtors. MortgageClose presents evidence that for all of the Loans, the debtors eventually did make payments within 30 days of the letter's alleged mailing. Though all the debtors defaulted once again after briefly returning to make payments, MortgageClose argues that LBHI was required to resend its demand letters a second time because there had temporarily been a "cure."

However, MortgageClose's position is flawed for several reasons. First, MortgageClose can point to no portion of the original Agreement that states that the Seller will have an opportunity to "cure" an Early

---

[4] The Court notes that a letter properly addressed, stamped, and mailed is presumed to have been received. In re Weiss, 111 F.3d 1159 (4th Cir. 1997). Here, it is debateable whether the letter was properly addressed – the suite number appears to be missing. Moreover, there is no indication that the letter was stamped and mailed properly based on the current evidence.

In addition, evidence of nonreceipt is generally sufficient to overcome this presumption, requiring the trier of fact to determine whether the letter was actually received. In re Dodd, 82 BR 924, 928 (N.D. Ill. 1987). Here, MortgageClose's evidence of non-receipt appears to be hinged on Mr. Lam's testimony that there is no record of receipt of the letters.

8

Payment Default before it is required to repurchase the loan. Second, MortgageClose has advanced no contractual theory suggesting that the letters or acceptance of late payments waived the repurchase terms in the original Agreement. Third, even if these letters provided a method of "curing" the loans, the letters specifically state that:

> Lehman's offer to MortgageClose.com, Inc. of an alternative to repurchase may not be construed to prejudice or waiver of any rights Lehman has to request repurchase of the Loan at a later time.

Baker Decl. Ex. E.

Furthermore, as discussed above, the letters require MortgageClose to contact Lehman within five days of the date of the letter to discuss any alternatives to repurchasing the Loans. MortgageClose has proffered no evidence to show it did so -- and nor could it while maintaining that it did not receive these demand letters.

Finally, the Court notes that any payments accepted by LBB and its assigns after the early payment default would not constitute a waiver of LBHI's rights with respect to MortgageClose. "[W]aiver-which is the voluntary and intentional abandonment of a contract right-should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection." Team Marketing USA Corp. v. Power Pact, LLC, 839 N.Y.S.2d 242, 245 (N.Y. App. Div. 2007). LBB and its assigns abandoned no "contractual protection" in its agreement with MortgageClose when it accepted payments from third parties, though default had already occurred. LBB's acceptance of late payments from debtors had no bearing -- save for mitigating Lehman's damages -- on its repurchase agreement with MortgageClose. These third party debtors were likely unaware of any repurchase agreements between LBB and

9

1  MortgageClose, and MortgageClose has not attempted to show that the
2  debtors made payments for MortgageClose's benefit.  Moreover, LBB,
3  through its subsidiaries and agents, continued to seek repurchase or
4  indemnification by sending demand letters, showing a lack of "clear
5  manifestation of intent" to relinquish its contractual protection under
6  the Repurchase Clause.
7  　　　Thus, regardless of whether any "cures" actually took place, the
8  right to require a repurchase of the Loans was never waived in this
9  case under the express terms of the letter and the reasons discussed
10 above.
11 　　　**C.　LBHI Has Standing to Sue Under its Assignment Agreement with LBB**
12
13 　　　MortgageClose argues that LBHI has no rights to sue on behalf of
14 LBB because the Assignment Agreement between LBB and LBHI was not
15 effective on any defaulted loans before the assignment itself took
16 place, on September 2, 2008.  However, MortgageClose can point to no
17 such restriction in the Assignment, except for generally arguing that
18 the language in the assignment is in the present and future tenses, not
19 in the past tense.
20 　　　The Assignment Agreement states:
21 　　　　　The Assignor [LBB] hereby assigns, transfers and conveys to
         the Assignee [LBHI] **all** of its rights in and to the
22        Agreements, including rights in . . . **all** of the Assignor's
         remedies available against the Sellers for Sellers' breach of
23        any representation . . . including, without limitation, the
         repurchase and indemnification remedies.
24
25 　　　Baker Decl. Ex. C. (emphasis added).
26 　　　There is no basis in fact or law for the Court to limit an
27 unambiguous assignment of **all** rights and **all** remedies only to defaults
28

10

occurring in the future.  Though LBB had a right to require repurchase of the Loans at issue at the time it made this assignment, it also had a right to assign those rights to LBHI.  MortgageClose would have courts require that all assignors specifically and expressly state that the assignment of rights applies to rights already existing as well as those arising in the future, despite a clear agreement to assign "all" rights.  This requirement is redundant and unnecessary, as evidenced by the fact that MortgageClose has demonstrated no risk of being sued by both LBB and LBHI for the same Loans.  In fact, LBB and LBHI agree that the terms of the Agreement show that only LBHI may seek repurchase of the Loans.

**D.    LBHI Has Met its Burden to Show Harm**

MortgageClose next argues that there is a factual dispute about whether LBHI was even harmed at all.  MortgageClose argues that based on LBHI's own data, LBHI later sold the loans to third parties "for a profit."  MortgageClose offers no other independent evidence besides its argument based on an interpretation of LBHI's data.  LBHI responds that it was forced to liquidate the early payment defaulted loans in an effort to mitigate its damages and that MortgageClose has misunderstood the data.

LBHI has detailed the damages it has suffered through the Declaration of John Baker at ¶¶ 21-31.  The Baker Declaration, and attached Exhibits, show that LBHI suffered damages totaling $407,267.68, plus 9% prejudgment interest, which yields a sum of $539,549.08.  Baker arrives at this calculation by applying the formula provided under Section 800 of the Seller's Guide, which itself is

11

incorporated into the Agreement.[5]  Baker Decl. ¶ 30-31.  As the Loans in this case were actually liquidated, Baker determined the "Repurchase Price" under Section 800 of the Agreement, then subtracted the value received through liquidation and other payments, and then added LBHI's costs to obtain his figures.  Baker Decl. ¶ 30.  This sum accurately reflects the expectation damages owed to LBHI if MortgageClose had performed its obligations and repurchased the loans.

MortgageClose's primary argument is that LBHI's own data shows it received a profit by reselling the loans or at least, that it was "Paid in Full" for the loans.  However, this argument is based on a misunderstanding of the data.  The Declaration of Daniel Glanz points out that the "price column" that is the focus of MortgageClose's scrutiny actually reflects the price relative to the unpaid principal balance of the loan at the time of the sale.  Glanz Decl. ¶ 15.  A price of ".00000001" reflected that the loan was "written off" and no value was received even though the loan was designated as "paid in full."  Glanz Decl. ¶ 17.  A price of "101" reflects that LBB received 101 percent of the unpaid principal balance at the time, not a multiple of the price paid by LBB to MortgageClose.  The amount of loss for the

---

[5] Note that the data upon which these calculations is based is authenticated by the Declaration of Daniel Glanz under Fed. R. Evid. 902(11).  Glanz Decl. ¶ 5-12.  The Court also notes MortgageClose has made objections to the Declaration of Daniel Glanz.  (Doc. No. 71).  MortgageClose argues that Glanz was not produced at deposition or identified as a potential witness.  However, as LBHI points out, Glanz's testimony was necessary to clarify MortgageClose's own misinterpretation of the damages data, which surfaced in its motion papers.  Moreover, MortgageClose's lack of foundation objections to Glanz's testimony do not reach the heart of the matter – the calculation of damages.  Glanz clearly has shown he has personal knowledge to testify on the value of the loans and the interpretation of the loan data because he is the "Custodian of Records" for Lehman's loans.

12

1 | loans is the difference between the Repurchase Price, and the price LBB
2 | received upon sale of the loans and any payments received by LBB.

**IV. CONCLUSION**

In sum, there is a genuine issue of material fact as to whether Defendant MortgageClose had knowledge of the repurchase demands for the loans at issue.

Accordingly, the Court hereby DENIES both Motions for Summary Judgment.

IT IS SO ORDERED.

DATED: November 2, 2010

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

13