08-13555-mg    Doc 49327    Filed 04/29/15    Entered 04/29/15 14:02:44    Main Document
                                     Pg 1 of 10

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Christopher J. Cox

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :   **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                :   **08-13555 (SCC)**
                                                            :
                          Debtors.                          :   **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

# DECLARATION OF LAWRENCE BRANDMAN IN SUPPORT OF MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL OF SETTLEMENT AGREEMENT RELATING TO RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-20AT CREDIT DEFAULT SWAP AGREEMENT AND TRUST AGREEMENT

Pursuant to 28 U.S.C. § 1746, I, Lawrence Brandman, declare:

1.  I am over the age of 18 years and make these statements of my own personal knowledge based on my personal experience, my review of business records of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), Lehman Brothers Special Financing Inc. ("LBSF"), and/or certain of their affiliates (collectively, the "Chapter 11

Estates"), and/or my consultation with other employees of and advisors to the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Settlement Agreement Relating to Restructured Asset Certificates with Enhanced Returns, Series 2006-20AT Credit Default Swap Agreement and Trust Agreement*, dated April 3, 2015 [ECF No. 49172] (the "Motion").[1]

3. I am Managing Director, Derivatives Legal, Head of Bankruptcy Strategic Advisory with LBHI. One of my primary areas of responsibility is managing the Chapter 11 Estates' mediations relating to derivatives transactions. I also supervise the management of a portfolio of the Chapter 11 Estates' derivatives transactions, including with counterparties that are special purpose entities. In those roles I have independently reviewed, have become familiar with, and have personal knowledge regarding many derivatives transactions that the Chapter 11 Estates entered into before their bankruptcies, including the transaction that is the subject of the Motion. I have been the primary representative for the Chapter 11 Estates in connection with the matters set forth in the Motion, including for the ADR process and the negotiations that resulted in the entry into the settlement agreement among LBHI, LBSF, U.S. Bank National Association ("U.S. Bank" or the "Trustee"), solely in its capacity as trustee under the Series Trust Agreement dated as of December 8, 2006 (the "Trust Agreement"),[2] and the Restructured Asset Certificates with Enhanced Returns, Series 2006-20AT Trust (the "Trust Issuer"), dated as of March 11, 2015 (the "Settlement Agreement").

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

[2] A copy of the Trust Agreement (without exhibits) is annexed to the Motion as Exhibit A.

2

4. I am thus fully familiar with the facts underlying the Motion, which I approved prior to its filing. I adopt the representations contained in the Motion, as if set forth in full and at length in this Declaration.

**The Credit Default Swap Agreement and the Trust Agreement**

5. It is my understanding that LBSF and the Trust Issuer entered into the Transactions pursuant to a 1992 form ISDA Master Agreement, dated as of December 8, 2006 (the "ISDA Master Agreement"), as amended and supplemented by those certain Schedules to ISDA Master Agreement (collectively, the "Schedule"), and those certain Confirmations, each dated December 8, 2006 (collectively, the "Confirmation").[3] LBHI guaranteed LBSF's obligations under the ISDA Master Agreement, the Schedule, and the Confirmation (the "Guarantee" and, together with the ISDA Master Agreement, the Schedule, and the Confirmation, the "Credit Default Swap Agreement").

6. It is also my understanding that under the Credit Default Swap Agreement, LBSF agreed to make periodic payments to the Trust Issuer in exchange for the Trust Issuer's promise to make payments to LBSF in respect of losses incurred in respect of certain specified reference obligations. In effect, LBSF, as the "Swap Counterparty," purchased protection from the Trust Issuer, which sold protection on the creditworthiness of the obligations referenced in the Credit Default Swap Agreement.

7. It is my further understanding that on December 8, 2006, Lehman Brothers Inc. as depositor and the Trustee on behalf of the Trust Issuer, entered into the Trust Agreement. The Trust Agreement is supplemented by and incorporates by reference the Standard Terms for Trust Agreements entered into on December 8, 2006, which establishes the

---

[3] A copy of the ISDA Master Agreement, the Schedule and the Confirmation is attached to the Motion as Exhibit B.

3

provisions that may be incorporated from time to time with respect to any trust established by the Trust Issuer and the Trustee. LBSF is a named third-party beneficiary of the Trust Agreement, under which the Trust Issuer issued certain Series 2006-20AT Variable Certificates, due 2046 (the "Certificates"). The Trust Issuer used the money it received from holders of the Certificates (the "Certificateholders") to acquire assets, the proceeds of which would be used, first, to satisfy its payment obligations to LBSF under the Credit Default Swap Agreement and, thereafter, to serve as collateral for the Trust Issuer's obligations to the Certificateholders. The assets purchased by the Trust Issuer consisted of Class A-3 asset-backed notes issued by Accredited Mortgage Loan Trust 2006-2 in an initial principal amount of $40.5 million (the "Collateral"). The Collateral constituted the Trust Issuer's principal assets.

8. It is also my understanding that in January 2007, the Trust Issuer and LBSF entered into a total return swap (the "Total Return Swap") that was novated to an insurance company counterparty (the "TRS Counterparty"). Under the terms of the Total Return Swap between the Trust Issuer and the TRS Counterparty, the Trust Issuer was entitled to put the Collateral to the TRS Counterparty for par value in certain circumstances, including when it needed funds with which to make payments to LBSF. The Trust Issuer elected to exercise this right in January 2011, and, accordingly, approximately $40.5 million in cash assets (the "Collateral Proceeds") were placed in the Trust Issuer's Principal Collection Account.

9. I understand that under the terms of the Trust Agreement, the Trustee applies payment proceeds received generally in accordance with a "waterfall" provision. *See* Trust Agreement § 5. Section 5(o)(ii)(1) of the Trust Agreement provides that a termination payment owed to LBSF as Swap Counterparty will be paid in advance of any distributions to Certificateholders unless, inter alia, LBSF is the defaulting party under a Swap Agreement. *See also id*. § 5(n)(ii)(4). Under Section 5(o)(ii)(4) of the Trust Agreement, if, *inter alia*, LBSF is the

4

defaulting party under a Swap Agreement, the termination payment owed to LBSF is paid after the Certificateholders. *See also id*. § 5(n)(ii)(7). As a result, the provisions of Section 5(n) and Section 5(o) of the Trust Agreement (the "Waterfall Provisions") purport to provide that LBSF will receive termination payments before any distributions are made to Certificateholders unless, *inter alia*, LBSF is the defaulting party under a Swap Agreement.

### The Dispute

10. On September 22, 2008, the Trustee sent LBSF a Notice of Early Termination of Transactions for the Trust Issuer stating that an Event of Default had occurred under the Credit Default Swap Agreement because LBHI had filed for bankruptcy. The notice designated September 23, 2008 as the early termination date. On November 25, 2008, the Trustee received a letter from LBSF's counsel advising, *inter alia*, that (a) any action taken to exercise remedies with respect to the Certificates would violate the automatic stay and, therefore, any actions to make distributions to Certificateholders would violate the stay, and (b) any provision subordinating any termination payment due LBSF would be unenforceable.

11. On April 19, 2010, LBSF commenced Derivatives ADR No. 158 by serving an ADR Notice upon the Trustee and the Trust Issuer pursuant to the ADR Procedures Order. On June 4, 2010, the Trustee served an ADR Response to the ADR Notice. LBSF issued a reply on June 21, 2010. While not provided for under the ADR Procedures Order, on August 6, 2010, the Trustee served a sur-reply to the ADR Notice.

12. On September 14, 2010, LBSF filed a complaint against, among others, the Trustee and the Trust Issuer. *See* Adversary Proceeding No. 10-03542 (SCC) (the "Adversary Proceeding"). The Adversary Proceeding challenges, among other things, (a) the proper interpretation of the Credit Default Swap Agreement and the Trust Agreement, and (b) the enforceability of certain provisions in the Credit Default Swap Agreement and the Trust

5

Agreement purporting to modify LBSF's right to receive payment upon early termination of the Transactions solely as a result of LBSF's or LBHI's bankruptcy filings. The Adversary Proceeding also involves other similar disputes involving other issuers and trustees.

13. In the Adversary Proceeding, LBSF seeks a declaratory judgment that provisions purporting to modify LBSF's economic rights to a termination payment premised on the bankruptcy filing of either LBHI or LBSF constitute unenforceable *ipso facto* clauses that inappropriately modify a debtor's interest in property, in violation of sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code. LBSF also seeks a declaratory judgment that effectuation of the Waterfall Provisions violates the automatic stay under section 362(a)(3) of the Bankruptcy Code because it involves an improper exercise of control over property of LBSF's estate. In the alternative, LBSF seeks a declaratory judgment that, if the Waterfall Provisions ultimately are found to be enforceable in whole or in part, they constitute either (i) a preferential transfer of an interest of LBSF in property that may be avoided under section 547 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBSF's estate under section 551 of the Bankruptcy Code; (ii) a constructive fraudulent transfer of an interest of LBSF in property that may be avoided under section 548(a)(1)(B) of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBSF's estate under section 551 of the Bankruptcy Code; or (iii) an unauthorized postpetition transfer of property of LBSF's estate that may be avoided under section 549 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBSF's estate under section 551 of the Bankruptcy Code. The positions advanced by LBSF in the Adversary Proceeding are not those of the Trustee.

14. On October 20, 2010, the Court entered the *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code*

6

and Bankruptcy Rule 7004(a)(1)* [ECF No. 12199], thereby staying, among other things, certain adversary proceedings, including the Litigation, to allow parties to the Litigation and other similar actions time to explore the possibility of resolving their disputes without the need for litigation (the "Stay"). I have also been informed that the Stay has been subsequently extended by numerous orders of the Court, most recently pursuant to the *Order Extending Stay of Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated January 31, 2014 [ECF No. 42417], which extended the Stay until the later of (i) May 20, 2014 or (ii) thirty (30) days after the date on which the Court enters a scheduling order governing the adversary proceedings defined as the "Distributed Actions" and identified on Exhibit A of the order. On July 14, 2014, the Court entered a scheduling order governing the Distributed Actions, including the Litigation. *See* Adv. Proc. No. 10-03547 (SCC) [ECF No. 794] (the "Scheduling Order"). The Scheduling Order sets forth a schedule for litigation of various issues in the Adversary Proceeding. The Trust Issuer and the Trustee have not answered or otherwise moved for any relief in the Adversary Proceeding.

15. On or about April 1, 2011, the ADR Notice was subsequently amended and LBSF submitted a SPV Derivatives ADR Election pursuant to which LBSF recommenced the ADR process under the SPV ADR Procedures Order. The Trustee served an amended ADR Response on June 13, 2011, and LBSF served its ADR Reply on July 5, 2011. On November 3, 2011, LBSF, the Trustee and the Certificateholders engaged in mediation pursuant to the SPV ADR Procedures Order, ultimately resulting in entry into the Settlement Agreement.

16. I understand that throughout the course of its settlement negotiations with LBSF and its participation in the Adversary Proceeding, the Trustee has made attempts to contact the Certificateholders for direction regarding the dispute among LBSF, the Trust Issuer,

7

and the Trustee pertaining to application of Collateral Proceeds. As a result of these efforts, LBSF and many of the Certificateholders have consensually resolved the dispute surrounding the enforceability of the Waterfall Provisions and the application of the Collateral Proceeds. These resolutions have resulted in distribution of over $30 million of the Collateral Proceeds. However, certain of the Certificateholders have not responded to the Trustee's communications. The Trustee has advised LBSF that it is prepared to enter into the Settlement Agreement regarding the approximately $5.185 million of remaining Collateral Proceeds (the "Remaining Collateral Proceeds"), provided the Court approves of the terms of the Settlement Agreement pursuant to the terms of Bankruptcy Rule 9019. Entry of an order by this Court, in the form annexed to the Motion, is a condition precedent to the effectiveness of the Settlement Agreement.

## The Settlement Agreement[4]

17. The Settlement Agreement compromises certain of the legal disputes between the parties. Pursuant to the Settlement Agreement, upon its effective date, the Trustee shall distribute and apply all Remaining Collateral Proceeds and any interest earned thereon, as well as certain other amounts as set forth in the Settlement Agreement, in accordance with the order, priority and procedures set forth in the Settlement Agreement. Specifically, the Trustee is authorized under the Settlement Agreement to: (a) pay the outstanding fees and expenses of the Trustee; (b) provided the Certificateholder Settlement Amount Condition is met, pay an amount equal to the Certificateholder Settlement Amount in satisfaction of the claims of Certificateholders that do not object to the Settlement Agreement or the Motion; (c) place into an

---

[4] In keeping with the confidentiality provisions of the Parties' settlement, and due to LBHI's and LBSF's desire to keep the economic terms of the settlement confidential, the Settlement Agreement was not included as an exhibit to the Motion. The descriptions of documents set forth herein are being provided as summaries only. In the case of an inconsistency between the summary herein and the documents, the terms of the documents shall control.

interest-bearing account an amount to be held in respect of a reserve, which the Trustee may use for the fees and expenses set forth in the Settlement Agreement; (d) pay any remaining amount to LBSF; and (e) subject to certain conditions, pay to LBSF any remaining portion of the Reserve Amount.

18. The Settlement Agreement also provides that, upon its effective date, LBSF, LBHI, and the Plan Administrator will release any Certificateholder and U.S. Bank, individually and as Trustee, from any claims that have been or could be asserted in the Adversary Proceeding relating to the Certificates, the Trust Agreements or the Credit Default Swap Agreement. LBSF and the Plan Administrator have agreed that they will limit any damages sought in the Adversary Proceeding resulting from any and all claims made against the Trust Issuer and U.S. Bank, individually and/or as Trustee, arising under, related to, or in connection with, the Trust Agreement, the Transactions (including related documents and any termination payment), or the Certificates, to the pro rata portion of the Remaining Collateral Proceeds held by the Trustee (net of any accrued, due and owing Trustee's fees and expenses or allocable Reserve Amount) and attributable to the Certificates held or beneficially held by any Objecting Certificateholders.

19. It is my understanding that the Settlement Agreement also provides that, in the event that there is no Objecting Certificateholder, and subject to other terms of the Settlement Agreement, any proof of claim filed by Trust Issuer, a Certificateholder, or the Trustee on behalf of the Trust Issuer that is related to the Transactions and subject to the Settlement Agreement shall be withdrawn.

**The Settlement Is in LBSF's Best Interests and Should Be Approved**

20. The use of the Court's equitable authority to approve the Settlement Agreement is justified and appropriate. The Settlement Agreement protects the interests of

9

Certificateholders by providing that the Settlement Agreement shall not become effective if there is an Objecting Certificateholder. In addition, the Settlement Agreement provides for the reservation of the Reserve Amount, which the Trustee may use for fees and expenses as enumerated in the Settlement Agreement. Moreover, any interested parties that may object to the terms of the Settlement Agreement will have the opportunity to lodge an objection with and be heard by this Court.

21. The Settlement Agreement will benefit LBHI, LBSF and their creditors. First, the Settlement Agreement will result in a substantial payment to LBSF's estate that the Plan Administrator has determined, in the exercise of its business judgment, will adequately compensate LBSF's estate for the early termination value of the Transactions in light of the risks and costs of further litigation. Second, entry into the Settlement Agreement will avoid future disputes and litigation concerning the Certificates. For the reasons set forth above, I and my colleagues involved in the management of the Chapter 11 Estates, as well as counsel to the Chapter 11 Estates, have concluded, in our considered business judgment, that the compromises set forth in the Settlement Agreement are "fair and equitable," are well within the "range of reasonableness," and are in the best interests of LBSF's estate and its creditors. We believe the Settlement Agreement was entered into in good faith and negotiated at arm's length. Therefore, the Motion, which seeks approval of the Settlement Agreement, should be granted.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 29th day of April 2015.

/s/ Lawrence Brandman
Lawrence Brandman