Hearing Date and Time: Adjourned *Sine Die*
Objection Deadline: April 30, 2015 at 4:00 p.m.

**BAKER & McKENZIE LLP**
**452 Fifth Avenue**
**New York, New York 10018**
**Telephone: (212) 626-4100**
**Ira A. Reid (IR-0113)**

**Attorneys for E-Capital Profits Limited**
**and Lincore Limited**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | **Case No. 08-13555 (SCC)** |
|  | ) | **(Jointly Administered)** |
| **LEHMAN BROTHERS HOLDINGS** | ) |  |
| **INC.,** *et al.*, | ) |  |
|  | ) | **Chapter 11** |
| Debtors. | ) |  |
|  | ) |  |

**JOINT RESPONSE OF E-CAPITAL PROFITS LIMITED AND LINCORE LIMITED**
**TO DEBTORS' FOUR HUNDRED NINETY-FOURTH**
**OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

E-Capital Profits Limited ("E-Capital") and its affiliate, Lincore Limited ("Lincore" and,

collectively with E-Capital, the "Claimants"), by their undersigned counsel, hereby object to the

Debtors' Four Hundred Ninety-Fourth Omnibus Objection to Claims (the "Claim Objection")

and state as follows:

**Preliminary Statement**

1.     Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively,

the "Debtors") seek to reduce the amount of E-Capital's two filed proofs of claim, Claim

numbers 17556 and 17558 (the "E-Capital Claims"), from the filed amount of $49,962,736.88

per claim, to a modified amount of $3,373,732.24 per claim, on the grounds that the E-Capital

Claims, as filed, allegedly are overvalued.  Similarly, the Debtors seek to reduce the amount of

Lincore's two filed proofs of claim, claim numbers 17559 and 17560 (the "Lincore Claims" and,

collectively with the E-Capital Claims, the "Claims"), from the filed amounts of $18,824,851.23,

to a modified amount of $2,471,375.94 per claim, on the grounds that the Lincore Claims, as

filed, allegedly are overvalued.

2.    The Claim Objection does not provide any basis for the Debtors' proposed

reductions to the filed amounts of the Claims other than the conclusory statement that the

modified amounts of the Claims represent "the fair, accurate, and reasonable values determined

by the Plan Administrator after a review of the Claimants' supporting documentation and the

Chapter 11 Estates' books and records."  The Claim Objection does not provide any analysis

demonstrating why the Debtors' values allegedly are fair, accurate or reasonable.[1]

3.    This is not the first time that the Debtors have objected to these Claims and

sought allowance of modified amounts.  In 2010, the Debtors objected to these same Claims in

connection with their Thirty-Fifth and Sixty-Seventh Omnibus Objections (the "Prior

Objections").  In the Prior Objections, the Debtors sought to reduce the E-Capital Claims to

$10,424,596.24 per claim, and the Lincore Claims to $3,014,998.00 per claim, significantly

higher claim values than their current proposed values of  $3,373,732.24 and $2,471,375.94 per

claim.  Also in the Prior Objections, the Debtors justified the reductions using language similar

to the language they used in the instant objection, stating that "a fair, accurate, and reasonable

---

[1]    The Debtors have provided Lincore and E-Capital, on two occasions, with Claims value analyses denoted as confidential communications under Federal Rule of Evidence 408 and also presumably under earlier Settlement Negotiations Agreements executed by the parties (the "Confidential Analyses").  The Claimants believe that the content of these analyses therefore cannot be discussed in this Response.  While the content is discoverable, and the Settlement Negotiations Agreements do not bar the use of discoverable material, the Claimants understand that they are currently barred from conducting discovery pursuant to a Temporary Litigation Injunction in place under the Court's April 19, 2010 Procedures Order (defined in paragraph 6 below).  The Claimants therefore contend that it is impossible for them to address the merits of the valuation issue at the heart of this Claim Objection until the Temporary Litigation Injunction is lifted and the parties are permitted to engage in discovery.

valuation of the Valued Derivative Claim is less than that reflected on the proof of claim submitted by claimant." E-Capital and Lincore opposed these earlier claim objections, which were adjourned without date for settlement discussions that ultimately were unsuccessful. The Debtors withdrew these Prior Objections, with respect to the Claimants, when they filed the current Four Hundred Ninety-Fourth Omnibus Objection. Settlement discussions recently re-commenced in connection with the current Claim Objection and it is the Claimants' understanding that the Debtors' intend to commence mandatory mediation procedures in connection with the Claims.

4.      The claim values that the Debtors once believed were "fair, reasonable and accurate" in  2010, after they had analyzed the Claims, are dramatically higher than the claim values that they now contend are "fair, reasonable and accurate" in their current Claim Objection. Neither Lincore nor E-Capital has modified its claims or provided any new claim documentation between 2010 ansd 2015 which could have potentially caused a change in valuation by the Debtors. Instead, the Debtors changed their valuations based on a flawed and disputed change in methodology.

5.      The Claimants intend to challenge these values, after an opportunity to take discovery, and to establish a proper valuation of the Claims, including through expert testimony, rather than through the presentation of conclusory and inconsistent statements in the various claim objections, the presentation of valuation analyses under the cloak of confidentiality and the protection of Rule 408 of the Federal Rules of Evidence and a Court order prohibiting discovery.

6.      The Claims all were timely filed, including all responses and documentation required by the Derivative and Guarantee Questionnaires, all of which was fully compliant and in accordance with the Court's Bar Date Order (defined below) and the Federal Rules of

Bankruptcy Procedure.  They are *prima facie* valid, and the Debtors have failed to satisfy their burden of presenting evidence to overcome the *prima facie* validity of the Claims, as required under Federal Rule of Bankruptcy Procedure 3001(f) and applicable case law discussed below.

7.      Thus, the Claim Objection should be denied or, in the alternative, scheduled for a Merits Hearing and/or ADR Procedures as defined and set for in the Court's April 19, 2010 Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390, Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors [ECF Docket No. 8474] (the "Procedures Order").  In addition, the Temporary Litigation Injunction, as defined and established in the Procedures Order, should be modified to permit the parties to conduct discovery relating to valuation issues and evidence to be presented  at trial.

## Relevant Background

### The E-Capital Claims

8.      The E-Capital Claims arise out of an ISDA Master Agreement dated June 12, 2007, by and between E-Capital and Lehman Brothers Special Financing Inc. ("LBSFI"), as counterparties, as supplemented, amended and modified by the related Schedule, Credit Support Annex, Confirmation, and other documents (collectively, the "E-Capital ISDA").  The transaction under the E-Capital ISDA involved the sale of two credit default swaps by E-Capital to LBSFI.  LBHI guaranteed the obligations of LBSFI pursuant to a guarantee executed as credit support provider for LBSFI under the E-Capital ISDA (the "LBHI Guarantee").

9.      As credit support for the E-Capital ISDA, E-Capital provided LBSFI $50 million notional amount Lehman Brothers Treasury Co. BV credit linked notes (ISIN Nos.

4

XS0256738757, XS0367282059, XS0367279774, XS0367279931 and XSO367280277 (the "E-Capital Notes").

10.     Under paragraph 6 (Early Termination) of the E-Capital ISDA,  E-Capital had the right to notify LBSFI of an "Early Termination Date", including upon the occurrence of an Insolvency Event (as defined in the E-Capital ISDA) of either LBSFI or LBHI as the credit support provider under the Credit Support Annex.  E-Capital, however, did not exercise its right of early termination.  Moreover, neither E-Capital nor LBSFI ever terminated the E-Capital ISDA for any other reason set forth in paragraphs 5 (Events of Default and Termination Events) or 6 of the E-Capital ISDA.  Instead, the credit default swaps, governed by the terms of the the E-Capital ISDA, continued in effect until the E-Capital ISDA was rejected by order of the Court.

11.     On September 18, 2009, E-Capital filed the E-Capital Claims against LBSFI, as counterparty, and LBHI, as guarantor, each in the amount of $49,962,736.88, in accordance with this Court's July 2, 2009 order establishing a claims bar date (the "Bar Date Order").  The $49,962,736.88 E-Capital Claims are comprised of the following components: (a) an unpaid amount in favor of LBSFI equal to $481,563.90; (b) the E-Capital Note value in the notional amount of $50 million; (c) coupon amounts on the E-Capital Notes equal to $372,561.78; and (d) out-of-pocket expenses (including legal fees and expenses) in the amount of $71,739.00.

12.     On October 12, 2009, E-Capital electronically uploaded its derivative and guarantee questionnaire responses, as well as documentation in support of the E-Capital Claims (including the E-Capital ISDA and LBHI Guarantee) required under the Bar Date Order.

13.     By order dated September 23, 2010, the Court authorized rejection of the E-Capital ISDA under section 365(a) of the Bankruptcy Code.

**The Lincore Claims**

14.    The Lincore Claims arise out of an ISDA Master Agreement dated June 9, 2005, by and between Lincore and LBSFI, as counterparties, as supplemented, amended and modified by the related Schedule, Credit Support Annex, Confirmation, and other documents (collectively, the "Lincore ISDA").  The sole transaction under the Lincore ISDA involved the sale of a credit default swap by Lincore to LBSFI.  LBHI guaranteed the obligations of LBSFI pursuant to the LBHI Guarantee.

15.    As credit support for the Lincore ISDA, Lincore transferred to LBSFI $18 million notional amount Lehman Brothers Treasury Co. BV credit linked notes (ISIN Nos. XS0342945002 and XSO357288058, which were merged by Lehman under ISIN Nos. XS0342945002) (the "Lincore Note") and cash in the principal amount of $392,960 (the "Cash Collateral").

16.    Under paragraph 6 (Early Termination) of the Lincore ISDA, Lincore had the right to notify LBSFI of an "Early Termination Date", including upon the occurrence of an Insolvency Event (as defined in the Lincore ISDA) of either LBSFI or LBHI as the credit support provider under the Credit Support Annex.  Lincore, however, did not exercise its right of early termination.  Moreover, neither Lincore nor LBSFI ever terminated the Lincore ISDA for any other reason set forth in paragraphs  5 (Events of Default and Termination Events) or 6 of the Lincore ISDA.  The transaction underlying the Lincore ISDA matured on November 30, 2008.

17.    On September 18, 2009, Lincore filed the Lincore Claims against LBSFI, as counterparty, and LBHI, as guarantor, each in the amount of $18,824,851.23, in accordance with the Bar Date Order.  The $18,824,851.23 Lincore Claims are comprised of the following components: (a) an "unpaid amount" in favor of Lincore equal to $78,125.00; (b) the Note value

in the notional amount of $18 million; (c) coupon amounts on the Note equal to $328,248.75; (d) Cash Collateral in the amount of $394,564.98; and (e) out-of-pocket expenses (including legal fees and expenses) in the amount of $23,913.00.

18.     On October 14, 2009, Lincore electronically uploaded its derivative and guarantee questionnaire responses, as well as documentation in support of the Lincore Claims (including copies of the Lincore ISDA, the LBHI Guarantee and other supporting documentation), as required under the Bar Date Order.

19.     The Lincore ISDA has never been the subject of a rejection motion under section 365(a) of the Bankruptcy Code, but is deemed rejected, as of the Effective Date of the Plan (defined below), pursuant to section 11.1 of the Debtors' Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan") confirmed by the Court on December 6, 2011.

## Argument

### The Debtors have failed to Satisfy their Burden of Overcoming
### the Prima Facie Validity of the Claims

20.     The Claims were timely filed, including all responses and documentation required by the Derivative and Guarantee Questionnaires, all of which was done in compliance and in accordance with the Court's Bar Date Order and the Federal Rules of Bankruptcy Procedure. The Claim Objection, however, does not provide basis for the proposed modification to the Claim amounts other than the conclusory statement that it is "the fair, accurate, and reasonable values determined by the Plan Administrator after a review of the Claimants' supporting documentation and the Chapter 11 Estates' books and records." This general allegation is not supported by any factual or or legal analysis, and is inconsistent with the Debtors' prior valuations.  Moreover, any documentation produced to the Claimants in alleged support of the

Debtors' claim valuation was done under the protection of Federal Rule of Evidence 408, the cloak of confidentiality afforded by two Settlement Negotiations Agreements and shielded from discovery by the Temporary Litigation Injunction.

21.    Federal Rule of Bankruptcy Procedure 3001(f) and applicable case law provide that a properly filed proof of claim is *prima facie* valid.  *See* Fed. R. Bankr. P. 3001(f) (proof of claim executed and filed in accordance with the rules constitutes *prima facie* evidence of the validity and amount of the claim); e.g., *In re DJK Residential LLC*, 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009) ("filing of a proof of claim constitutes 'prima facie evidence of the validity and amount of a claim'") (citations omitted); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("proof of claim is prima facie evidence of the validity and amount of the claim, and the objector bears the initial burden of persuasion" which then shifts back to the claimant "if the objector produces 'evidence equal in force to the prima facie case'").

22.    Thus, the Debtors' unsupported assertion that the Claims are overvalued does not satisfy their burden of presenting evidence sufficient to overcome the *prima facie* validity and amount of the Claims, as required under Federal Rule of Bankruptcy Procedure 3001(f) and applicable case law.  Accordingly, the Claim Objection should be denied on that basis.  If the Claim Objection is not denied on the basis of its failure to overcome the *prima facie* validity  of the Claims, the Claimants are nevertheless entitled to take discovery to understand the basis for the Debtors' valuations, including the Debtors' preparation of different valuations based on the same claim documentation.  Moreover, the Claimants reserve the right to demonstrate, at trial, that Debtors' valuations are flawed, inaccurate and unreasonable and that the value of the Claims exceed the amounts alleged by the Debtors.

23.    The Claimants further reserve the right to amend this Response based on additional information gleaned after formal discovery.

## Conclusion

For all the reasons set forth above, the Claim Objection should be denied and the Temporary Litigation Injuction modified to permit the parties to conduct discovery.

Dated: New York, New York
       April 30, 2015

**BAKER & McKENZIE LLP**

By:    /s/ Ira A. Reid_____

       Ira A. Reid (IR-0113)
       452 Fifth Avenue
       New York, New York 10018
       Telephone:  (212) 626-4100

       Attorneys for E-Capital Profits Limited
       and Lincore Limited