Jill E. Alward, Esq.
Timothy W. Salter, Esq.
**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
*Attorneys for Stearns Lending, LLC f/k/a Stearns Lending, Inc. and Group 2000 Real Estate Services, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**LEHMAN BROTHERS HOLDINGS INC., *et al*.,**<br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 08-13555-scc** |

# Reply Brief in Further Support of Motions of Stearns Lending, LLC and Group 2000 Real Estate Services, Inc. Seeking Orders Vacating the Alternative Dispute Resolution Procedures Order For Indemnification Claims Of The Debtors Against Mortgage Loan Sellers

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................2

ARGUMENT ....................2

A) Sellers' Rule 60(b) Motions are Proper ....................2

B) Lehman Bank's Sale of Mortgage Loans "Without Recourse" Extinguished Sellers Indemnification Obligations as a Matter of Fact and as a Matter of Law ....................3

C) SecurityNational Provides Persuasive Authority and Cornerstone Is Irrelevant ....................5

D) The Allegation that Lehman Bank Assigned Indemnification Rights Upon its Sale of the Mortgage Loans is Without Factual Support ....................7

E) LBHI is not a "Purchaser" Entitled to Indemnification ....................8

F) LBHI is not a "Subsequent Holder" Entitled to Indemnification ....................8

G) LBHI May Not Enforce the Loan Purchase Agreement as a Third Party Beneficiary ....................9

H) LBHI Does Not Seek to Enforce Claims Assigned by Fannie Mae and Freddie Mac ....................9

I) Any and All Breach of Warranty Claims are Barred by the Statute of Limitations ....................10

CONCLUSION ....................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Badiak v. White Plain Kensington, LLC*,
31 Misc. 3d 765 (N.Y. Sup. Ct. 2011) ....................5

*Caribbean S.S. Co. v. Sonmez Denizcilik Ve Ticaret A.S.*,
598 F.2d 1264 (2d Cir. 1979)....................5

*International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*,
36 N.Y.2d 121 (N.Y. 1975) ....................3

*Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*,
No. H-09-0672, 2011 U.S. Dist. LEXIS 13306 (S.D. Texas Feb. 10, 2011)....................5, 6, 7

*SecurityNational v. Aurora*,
2014 U.S. Dist. LEXIS 177481 (D. Utah Dec. 24, 2014)....................5, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 60(b) ....................2

Stearns Lending, LLC ("Stearns Lending") and Group 2000 Real Estate Services, Inc. ("Group 2000" and referred to collectively with Stearns Lending as "Sellers"[1]) hereby submit this reply ("Reply") in further support of Seller's respective motions (the "Motions") seeking orders vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers (the "ADR Order") applicable to each entity.

As originally set forth in the Motions, and as further asserted herein, Sellers should be relieved of their obligations to participate in mediation as Lehman Brothers Holdings, Inc. ("LBHI") does not hold any claims to be mediated. There is no dispute that the mortgage loans originated by Sellers and sold to Lehman Brothers Bank, FSB ("Lehman Bank") were then sold by Lehman Bank to LBHI for *full compensation*, and *without recourse*. The non-recourse sale of these loans by Lehman Bank extinguished Sellers' indemnification obligations to Lehman Bank as a matter of fact, and well-settled principles governing assignments prevents LBHI from asserting rights and claims greater than those possessed by Lehman Bank as a matter of law.

In addition, while LBHI avers that it is the assignee of Fannie Mae and Freddie Mac's claims against Sellers it does not elaborate upon said claims nor does it purport to be enforcing those claims in the ordered mediation. Finally, LBHI does not rebut the assertion that the statute of limitations governing any possible breach of warranty claim has expired.

For these reasons, Sellers Motions should be granted in their entireties.

[1] Stearns Lending and Group 2000 are submitting a joint Reply Brief merely for the sake of judicial economy. Stearns Lending and Group 2000 are not affiliated entities.

## PRELIMINARY STATEMENT

Upon information and belief, LBHI solicited an assignment of the Loan Purchase Agreements for the purpose[2] of attempting to usurp the indemnification rights contained therein. However, even though Lehman Bank possessed indemnification rights under the Loan Purchase Agreement as a matter of law, it did not possess a right to seek indemnity from Sellers as a matter of fact. An assignment of rights does not create claims that would not have existed in the hands of the assignor, and an assignee merely stands in the shoes of the assignor. Thus, as Lehman Bank had no right to seek indemnity from Sellers as a matter of fact when it assigned the Loan Purchase Agreements it had/has no indemnity rights to assign to LBHI as a matter of law. For this reason, LBHI does not possess any indemnification claims against Sellers.

## ARGUMENT

### A) Sellers' Rule 60(b) Motions are Proper

LBHI's argument that Sellers' Rule 60(b) Motions are procedurally improper is not only contradicted by the language of the ADR Order, but is antithetical to the record created by LBHI's counsel ("Counsel") at the Court's June 19, 2014 hearing (the "Hearing"). The ADR Order unambiguously provides that the "parties' participation in the Indemnification ADR Procedures set forth herein . . . shall not cause . . . any individual . . . Seller to waive or release any claims defenses, or remedies . . . ." *See Exhibit D* at ¶15. Furthermore, Counsel assured the Court at the Hearing that "nothing about the merits of the indemnification claims" was before the Court that day. *See Exhibit I* at 36:24-37:1.

[2] This sole purpose is evidenced by LBHI's concession that the Loan Purchase Agreements were not executor y contracts at the time of assignment as Sellers were the only parties with remaining obligations. *See Opposition* at fn. 10.

The availability of judicial relief from the ADR Order was also explicitly acknowledged at the Hearing. Indeed, it was Counsel who noted that "the standing order [of the Southern District of New York Bankruptcy Court] allows the Court to let someone out of mediation if [the Court] concludes that the matter is not appropriate for mediation," and clarified that "individualized objections to mediation are still available, are not being foreclosed by this process . . . if someone doesn't [think] they belong in mediation, they're free to come before Your Honor." *Exhibit I* at 40:9-40:15. The Court similarly acknowledged the availability of judicial relief, characterizing it as an "escape hatch" from mediation. *Id*. at 40:17-40:19 ("there are a number of things that I don't understand about the objections . . . given that there's a mechanism, an escape ballot if you will, I didn't understand why that doesn't suffice."); 49:11-49:13 (suggesting that objecting counsel "using . . . what I'll call the escape hatch mechanism . . . simply right a letter that cites [authority concerning the expiration of the statute of limitations], and ask me to let you out on that basis."). Thus, Sellers' Motions are not only procedurally proper but were anticipated by Counsel and this Court.

**B) Lehman Bank's Sale of Mortgage Loans "Without Recourse" Extinguished Sellers Indemnification Obligations as a Matter of Fact and as a Matter of Law**

LBHI concedes Sellers' assertion that LBHI acquired mortgage loans from Lehman Bank "without recourse," in exchange for full compensation. *See Opposition* at pages 3, 14. LBHI also accepts the well-settled principal that "an assignee never stands in any better position than his assignor." *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (N.Y. 1975). Nevertheless, LBHI alleges that it may recover for "the same losses that [Lehman Bank] would have suffered had Lehman Bank retained the loans." *See Opposition* at page 12. This allegation is not only speculative, but it contradicts the law governing assignments.

Lehman Bank acquired the subject loans from Sellers between November 8, 2004, and July 25, 2007, and LBHI settled its liability to Fannie Mae and Freddie Mac on January 22, 2014, and February 12, 2014, respectively. These events were interceded by the greatest economic collapse since the Great Depression. Thus, for LBHI to presume that the economic meltdown was inevitable and that Lehman Bank "would have suffered" the damage incurred by LBHI is the epitome of speculation. Furthermore, it is important to distinguish the fact that LBHI did not suffer damages as result of retaining the loans, but rather incurred damages as a result of selling the loans to Fannie Mae and Freddie Mac and breaching certain warranties and representations it made to those entities. As LBHI concedes that Lehman Bank sold its loans "without recourse," it is impossible for Lehman Bank to claim ***any*** damages.

Furthermore, LBHI's assertion is contradicted by the laws of assignment preventing a party from assigning rights or claims greater than those possessed at the time of the assignment. LBHI alleges that Sellers "appear to miss that [Lehman Bank] did not assign any particular claim to LBHI," but rather "assigned all of its rights under the [Loan Purchase Agreement], including Sellers' loan representation and warranties, and the indemnification remedy[3] of the [Loan Purchase Agreements]." *Opposition* at page 10. However, what is dispositive is not whether Lehman Bank assigned the Loan Purchase Agreement to LBHI as a matter of law, but rather what rights and claims existed thereunder as a matter of fact. If, as a matter of fact, Lehman Bank did not possess indemnification rights and claims against Sellers when it assigned Sellers' Loan Purchase Agreements on May 9, 2013, and May 14, 2014, respectively, then LBHI could

[3] Upon information and belief, LBHI has consistently argued before this Court that its indemnification rights constituted an independent cause of action, not a contractual ***remedy*** for breach of representations and warranties. This distinction between a "cause of action for indemnity" and indemnity as a "contractual remedy" is not mere semantics, as an indemnification remedy arising out of a breach of representation and warranties claim would be time barred.

not have received indemnification rights and claims against Sellers as a matter of law. *See Badiak v. White Plain Kensington, LLC*, 31 Misc. 3d 765, 768 (N.Y. Sup. Ct. 2011) ("The assignment of rights does not alter the nature of the rights assigned; the assignee merely stands in the shoes of the assignor.").

There is no factual dispute that Lehman Bank did not incur damages as a party to the Loan Purchase Agreement with Sellers. Thus, even though Lehman Bank possessed indemnification rights under the Loan Purchase Agreement as a matter of law, it did not possess a right to seek indemnity from Sellers as a matter of fact. An assignment of rights does not create claims that would not have existed in the hands of the assignor. *See Caribbean S.S. Co. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264, 1266 (2d Cir. 1979) ("an assignee of a claim takes it with whatever limitations it had in the hands of the assignor."). Therefore, the fact that Lehman Bank, as assignor, could not have asserted indemnification claims against Sellers as a matter of fact prevents LBHI, as assignee, from asserting indemnification claims against Seller as a matter of law.

For these reasons, it is clear that LBHI does not possess valid indemnification claims against Sellers and therefore the ADR Order must be vacated.

**C) *SecurityNational* Provides Persuasive Authority and *Cornerstone* Is Irrelevant**

LBHI seeks to distinguish this dispute from *SecurityNational v. Aurora*, 2014 U.S. Dist. LEXIS 177481 (D. Utah Dec. 24, 2014). However, this attempt is disingenuous at best as LBHI concedes that it acquired mortgage loans from Lehman Bank "without recourse" and does not dispute the *SecurityNational* Court's analysis of New York's law of assignment. Nevertheless, LBHI offers *Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*, No. H-09-0672, 2011 U.S. Dist. LEXIS 13306 (S.D. Texas Feb. 10, 2011), in support of its contention that LBHI "now



141580.00641/100148942v.1

stands in [Lehman Bank's] shoes and may assert [Lehman Bank's] rights under the Agreements."[4] *Opposition at 11* (*quoting Cornerstone*, 2011 U.S. Dist. LEXIS 13306 at *49). What LBHI's quotation does not disclose is that "Agreements" does not refer to the Loan Purchase Agreement. In fact, the factual circumstances surrounding the "Agreements" enforced in *Cornerstone* are so materially distinguishable as to render this purported authority irrelevant.

In *Cornerstone* two defective loans were sold by a lender to Lehman Bank. *See Cornerstone*, 2011 U.S. Dist. LEXIS 13306 at *8. One loan was sold to LBHI and then to a securitized trust. *Id*. at *8-9. The second loan continued to be held by Lehman Bank. *Id*. at *9. Both loans went into early default and, after LBHI repurchased the loan sold to the trust, Lehman Bank demanded that the lender repurchase both loans. *Id*. at *9-10. Rather than repurchase the loans, the lender entered an indemnification agreement with Lehman Bank concerning each loan (collectively the "Additional Indemnification Agreements"). *Cornerstone*, 2011 U.S. Dist. LEXIS 13306 at *10-11. In the Additional Indemnification Agreements the lender acknowledged Lehman Bank's right to repurchase both loans and agreed to indemnify Lehman Bank for its losses. *Id*. at *10-11.

Here, unlike in *Cornerstone*, the Loan Purchase Agreement is the only agreement governing the parties' relationship, and was entered into prior to the loans defaulting. In addition, while Lehman Bank still owned one of the two defective loans at the time of default in *Cornerstone*, the loans for which LBHI seeks indemnity for in this case were sold by Lehman Bank prior to default "without recourse." In addition, the Loan Purchase Agreements, which are the only relevant agreements at issue in this case, were assigned by Lehman Bank to LBHI many

[4] LBHI also offers the April 21, 2015 decision of the United States Court for the District of Utah in *Lehman Brothers Holdings, Inc. v. Security National Mortgage Company*, 11-CV-519-TS, which adopted the reasoning of the *Cornerstone* Court. However, as this authority was submitted to the Court on April 29, 2015, less than a day before Sellers were required to submit their Reply, Sellers object to this authority being considered by the Court.

years after the loans defaulted.[5] Furthermore, while the *Cornerstone* court speculated that "[h]ad [Lehman Bank] retained the loans and not assigned its right under the Agreements, [Lehman Bank] could have demanded repurchase or indemnification," *id*. at *49, such is not the case in this action. Lehman Bank cannot demand repurchase or indemnification as these loans were sold to LBHI "without recourse" before defaulting. Thus, *Cornerstone* is materially distinguishable from this dispute and bares no relevance to this Court's determination.

**D) The Allegation that Lehman Bank Assigned Indemnification Rights Upon its Sale of the Mortgage Loans is Without Factual Support**

LBHI contends that Lehman Bank assigned its contractual indemnification rights to LBHI contemporaneously with its sale of mortgage loans. *See Opposition* at pages 9, 13. The written assignments of the Loan Purchase Agreements dated May 9, 2013, and May 13, 2014, respectively, belie this assertion. Notwithstanding this fact, LBHI alleges that "both parties intended an assignment of the [Loan Purchase Agreement] rights" at the time the loans were sold to LBHI. This allegation constitutes an *ex post facto* attempt to re-characterize these purchase and sale transactions, and is ultimately unavailing.

LBHI concedes that Lehman Bank was acquired to provide a "cost effective method of financing the purchases of mortgage loans." *Opposition* at page 3. LBHI alleges that it would not have made "commercial sense" for LBHI to obtain these loans "without recourse" to either Lehman Bank or the originating lenders as this "would leave LBHI with no remedy at all for losses . . . ." *Opposition* at page 14. Yet, there is no dispute that the transactions between Lehman Bank and LBHI were structured and "established to protect the capital of Lehman Bank, and thereby enhance its loan purchasing capacity so as to be able to buy more loans for sale to,

[5] In the case of Stearns Lending the Loan Purchase Agreement was assigned May 14, 2014, well after LBHI had already settled its liability to Fannie Mae and Freddie Mac.

and for the benefit of, LBHI," *SecurityNational Mortg. Co.,* 2014 U.S. Dist. LEXIS 177481 at *13 (emphasis added).

The fact that this purposeful structuring may have resulted in unintended consequences, i.e. leaving LBHI without recourse for liabilities incurred years after the last mortgage loan was bought and sold, does not allow LBHI to now claim the existence of ulterior motives behind these transactions in order to obtain a right to indemnification after the fact. LBHI's allegation that it acquired "rights and claims" contemporaneously with the mortgage loans lacks factual support, and therefore this argument fails.

**E) LBHI is not a "Purchaser" Entitled to Indemnification**

LBHI alleges that it is a "Purchaser" entitled to indemnification by Sellers. Under the Seller's Guide, "Purchaser Refers to the entity set forth on the related Purchase Advice as the Purchaser, its successors and/or assigns, for a particular Mortgage Loan." *Exhibit J* at page 9. Sellers deny that the LBHI qualifies as a "Purchaser" under this definition and LBHI admits that its purported indemnification claims "are exclusively based on and limited to the [Loan Purchase Agreement] rights assigned by [Lehman Bank]." *Opposition* at fn. 12. LBHI could not have derived the ability to enforce the Loan Purchase Agreement as a "Purchaser" as this term refers only to assignees of particular mortgage loans, and not to assignees of the Loan Purchase Agreement. *See Exhibit J* at page 9. For this reason, LBHI cannot claim that it is entitled to enforce the Loan Purchase Agreement as a "Purchaser."

**F) LBHI is not a "Subsequent Holder" Entitled to Indemnification**

LBHI purports to possess indemnification rights as a "Subsequent Holder of any Note." LBHI does not contest the fact that it previously sold all of the Notes and that the Notes were thereafter liquidated by Fannie Mae and Freddie Mac, yet fails to cite any provision of the

Bankruptcy Code, the Uniform Commercial Code, or common law authority to support its suggestion that it is somehow still a "Holder" of these Notes.

In addition, this argument improperly conflates the root cause of the damages that may be incurred by a "Holder" of a particular Note with the root cause of the liability incurred by LBHI. LBHI did not incur damages as a "Holder" of the Notes, but rather incurred damages as a result of its subsequent sale of the Notes to Fannie Mae and Freddie Mac and its breach of contractual representations and warranties made to those entities.

For these reasons, LBHI may not seek indemnification as a "Subsequent Holder."

**G) LBHI May Not Enforce the Loan Purchase Agreement as a Third Party Beneficiary**

LBHI alleges that it is a Third Party Beneficiary of the Loan Purchase Agreement. However, the plain language of the Seller's Guide makes it clear that the only way to become a third party beneficiary is to be a "Subsequent Holder of any Note." *See Exhibit B* at § 711. Therefore, as it is already established that LBHI no longer qualifies as a "Subsequent Holder of any Note," it cannot seek to enforce the Loan Purchase Agreement as a Third Party Beneficiary.

**H) LBHI Does Not Seek to Enforce Claims Assigned by Fannie Mae and Freddie Mac**

LBHI alleges that it is the holder of claims against Sellers previously held by Fannie Mae or Freddie Mac. *See Opposition* at page 17. LBHI does not elaborate upon this allegation however, and fails to identify which of these entities' claims it is seeking to enforce against Sellers. Furthermore, this allegation is belied by LBHI's admission that its claims against Sellers "are exclusively based on and limited to the [Loan Purchase Agreement] rights assigned by [Lehman Bank]." *Opposition* at fn 12.

Thus, as LBHI does not purport to be enforcing rights received from Fannie Mae and Freddie Mac, this argument is red herring and unavailing.

**I) Any and All Breach of Warranty Claims are Barred by the Statute of Limitations**

LBHI does not contest that any breach of warranty claims that may exist under the Loan Purchase Agreement, whether held by Lehman Bank, LBHI, Fannie Mae, or Freddie Mac, are untimely under the six year statute of limitations governing breach of contract. Therefore, these untimely causes of action cannot be relied upon by LBHI in defense of the ADR Order.

## CONCLUSION

As fully set forth above, Sellers should be relieved of their obligations to participate in mediation as LBHI does not hold any claims to be mediated. There is no dispute that the mortgage loans originated by Sellers and sold to Lehman Bank were then sold by Lehman Bank to LBHI for full compensation, and without recourse, thereby extinguishing Sellers' indemnification obligations as a matter of fact. No matter which theory LBHI purports to rely upon, the basic tenants of assignment law prevents LBHI from asserting rights and claims greater than those possessed by Lehman Bank as a matter of law. Without claims, mediation is unwarranted, and therefore the ADR Order should be vacated.

WHEREFORE, Sellers reiterate their request for an order granting the Motions in their entirety, along with any other and further relief as the Court deems just and proper.

Dated: April 30, 2015
New York, NY

*/s/ Timothy W. Salter*
Jill E. Alward, Esq.
Timothy W. Salter, Esq.
BLANK ROME LLP
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Attorneys for Stearns Lending, LLC and Group 2000 Real Estate Services, Inc.*