# EXHIBIT I

1    resolve the eleven objections to this motion.  We received

2    -- we've entered into stipulations with two of the

3    objectors, PHH and Plaza Mortgage, adjourning their hearing

4    on their objections to a later date.

5            And so I won't be addressing their objections

6    directly.

7            THE COURT:  All right.

8            MR. DEFILIPPO:  Their rights are reserved till the

9    next hearing.

10           THE COURT:  Have there been similar discussions

11   with the other nine in terms of adjournments?

12           MR. DEFILIPPO:  Yes, Your Honor, there have, but

13   we've been unable to reach agreement with the other

14   objectors on adjourning their objections to a later date.

15           So with your permission, we would like to proceed

16   with the motion.

17           THE COURT:  Okay.

18           MR. DEFILIPPO:  As Your Honor knows, Lehman

19   Brothers, like other large financial institutions had a

20   substantial mortgage business.  It acquired individual

21   mortgage loans and resold those mortgages.  It used a

22   purchase agreement, which contained indemnification

23   provisions for losses suffered, as a result of breaches of

24   representations and warranties by the sellers.

25           Lehman monetized the mortgages it acquired

1    primarily in one of two ways, it either sold them to a GSE

2    like Fannie Mae or Freddie Mac, or it sold the mortgages to

3    RMBS Trust Solution Securities to finance the purchase price

4    that was used to pay Lehman for the mortgages.

5            As the mortgages defaulted, losses were suffered

6    by both the GSEs and the trust.  This gave rise to claims

7    against Lehman.

8            Fannie and Freddie claims for about 20 billion,

9    the trustees of the approximately 405 private label RMBS

10   trusts have filed claims in excess of 30 billion.  The

11   resolution of the GSE's claims occurred in January and

12   February of this year.

13           As a result, Lehman's indemnification claims

14   against the sellers have accrued and are now able to be

15   liquidated for the benefit of Lehman's creditors under the

16   plan.

17           The proposed ADR procedure is the first step which

18   Lehman proposes to use in liquidating those indemnity

19   claims.  That's parenthetically why we believe there are no

20   statute of limitations defenses to these claims as

21   indemnification accrues when payment is made on the

22   indemnified claim.

23           We recognize the sellers may feel differently, but

24   that issue is not before Your Honor today.  In fact, nothing

25   about the merits of the indemnification claims is before the

1    Court today.

2         One important thing about the Fannie and Freddie

3    settlements, Your Honor, is that in order to achieve those

4    settlements, the GSEs did a deep dive into their loan files

5    and identified thousands of individual loans with breaches

6    and losses, which Lehman was able to review and talk to

7    Fannie and Freddie about if they disagreed.  But Lehman was,

8    in fact, able to satisfy itself that breaches did occur,

9    which gave rise to losses and so was comfortable agreeing to

10   allow Fannie a claim of $2.15 billion and to pay Freddie

11   $767 million for an assignment of all of its claims against

12   the estate.

13        The debtors are now in a position to pursue the

14   sellers of the mortgages to Fannie and Freddie through LBHI

15   for their losses.

16        The next step in the process of claims resolution

17   arising from the mortgage business will be tackling the

18   approximately 30 billion in claims and the trustees.  Those

19   claims involve 15 to 20,000 allegedly defective loans sold

20   to LBHI and resold to the trust.

21        In earlier proceedings in this case, Judge Peck

22   expressed the view that in order to prove their claims, the

23   trustees likely had to show losses on a loan-by-loan basis.

24   So if the trustees' claims are ever to get resolved, we

25   expect that it will be a monumental undertaking and very

1     time-consuming to engage in that detailed loan-by-loan

2     analysis.

3           So we may be back before the Court at a proper

4     time asking Your Honor to either expand this ADR if you're

5     inclined to grant it, or to establish a new procedure to

6     resolve the amount of the trustees' losses and to add the

7     indemnification claims against the sellers that arise from

8     the payment on those losses to the ADR procedure that we're

9     asking you to establish today.

10          The purpose of giving Your Honor that background

11    is to give you a sense of the magnitude of the challenge

12    facing Lehman, as it attempts to manage the claims arising

13    out of its mortgage business, and the causes of action that

14    accrue in its favor when those claims are finally paid by

15    the estate.

16          It's not often that we encounter a set of claims

17    with thousands of potentially responsible parties on the

18    other side like the ones that arise out of this business.

19    And problems of that magnitude are not suitable for

20    resolution by standard litigation procedures by filing suit,

21    engaging discovery, and going to trial.  It's time

22    consuming, it's expensive.  It burdens the courts.

23          There are other instances where the --

24          THE COURT:  So it's not amenable to a defendant

25    class action?

1              MR. DEFILIPPO:  No, Your Honor.  No, I wish it

2     were, but in other instances when the universe of potential

3     defendants was very large such in the derivatives area --

4              THE COURT:  Right.

5              MR. DEFILIPPO:  -- the Court has entered an order

6     establishing an ADR procedure, which included the

7     possibility of mandatory but non-binding arbitration.  And

8     Lehman's prior experience in using those procedures has been

9     very successful, as more than a 2 and a quarter billion has

10    been recovered through ADR procedures.

11             So hoping to duplicate that success, we are

12    seeking a pre-litigation mandatory ADR program to deal with

13    the indemnification claims against the sellers of the

14    thousands of loans which it has reacquired from the GSEs and

15    which may be augmented by loans which it may reacquire from

16    the RMBS trustees.

17             The proposed program will have a notice response

18    date, a negotiation period, and if there is no settlement,

19    then the option for a mediation phase, similar to the other

20    ADR programs.

21             And contrary to some of the objectors'

22    contentions, those programs have been established even when

23    there has been no pending adversary proceeding.  Besides our

24    own derivatives procedure in this case, Judge Glenn ordered

25    mandatory mediation in the Residential Capital case on plan

1    issues, Your Honor ordered it in Light Square without a

2    pending adversary proceeding.

3         And we want to assure both the Court and the

4    objectors that the debtors are not interested in wasting

5    time and money mediating claims that have been released.

6    But there are many claims that have not been released, and

7    the debtors have the obligation under the plan to liquidate

8    those claims for the benefit of their creditors.

9         I would note that the standing order allows the

10    Court to let someone out of mediation if Your Honor

11    concludes that the matter is not appropriate for mediation.

12    So individualized objections to mediation are still

13    available, are not being foreclosed by this process.  And if

14    someone doesn't thing they belong in mediation, they're free

15    to come before Your Honor.

16         THE COURT:  That's the part that I -- I mean,

17    there are a number of things that I don't understand about

18    the objections and that was one of them.  That given that

19    there's a mechanism, an escape ballot if you will, I didn't

20    understand why that doesn't suffice.  Secondly, the

21    indication of Stern versus Marshall and not Arkinson

22    continues to amaze.  It's got nothing whatsoever to do with

23    this.  Zero.

24         MR. DEFILIPPO:  Thank you, Your Honor, I can skip

25    much of this presentation.

1          THE COURT:  Please.

2          MR. DEFILIPPO:  And one of the corollaries --

3          THE COURT:  I mean, you folks can attempt to

4   convince me that it does if you like, but my view is that it

5   didn't -- when it was just Stern versus Marshall and it

6   super doesn't now that the Supreme Court has weighed in

7   again in Arkinson, so.

8          MR. DEFILIPPO:  I think it just confuses the

9   Court's power to enter an order in the Chapter 11 case with

10  the Court's power to enter a final judgment in a non-core

11  adversary proceeding.  This is --

12         THE COURT:  It's got nothing --

13         MR. DEFILIPPO:  -- part of the administrative of

14  the case.

15         THE COURT:  Right.

16         MR. DEFILIPPO:  So this is a contested matter

17  under Rule 9014, and to the extent objectors have argued

18  that Your Honor can't reach them on this motion, Your Honor

19  has nationwide jurisdiction over anyone with minimum

20  contacts with the U.S. in a contested matter.  I don't need

21  to spend a lot of time on that.

22         We are asking you to do what's been done before in

23  this case, which is we've cited to Your Honor cases that say

24  it's the law of the case.  We believe we've established that

25  the scope of the Court's post confirmation jurisdiction is

1    broad enough to allow this order to be entered.

2           The DPH case, the Second Circuit expressly adopted

3    the close nexus test for post-confirmation jurisdiction and

4    found that it existed because resolution of the dispute in

5    that case would impact the implementation, execution, and

6    administration of the confirmed plan.

7           In Allegiance Telecom, Judge Drain exercised

8    jurisdiction over the post-confirmation effort by the plan

9    administrator to recover assets.  There's been a reservation

10   of jurisdiction, a very broad reservation in the plan.

11   8.1.4(b) of the plan in paragraph 79 of the confirmation

12   order reserved the debtors' right to prosecute

13   indemnification claims.

14          Section 6 of the plan -- Article 6 of the plan

15   says in 6.1(b)(3) and (b)(4) that the plan administrator is

16   to liquidate all assets including prosecuting liquidation

17   claims.  8.3, the plan says the plan administrator is to

18   make distributions of available cash semi-annually including

19   cash augmented by post-confirmation recoveries.

20          And Article 14 contains the broad reservation of

21   jurisdiction or for all matters arising under, arising out

22   of, or related to the Chapter 11 cases.

23          This is a liquidating plan and in Eastern Airlines

24   Judge Lifland opined that the scope of post-confirmation

25   jurisdiction and liquidating cases is broader than in a

1     reorganized debtors' case, where the debtor operates,

2     expecting that the Court would be involved in post-

3     confirmation efforts to liquidate the assets.  None of the

4     objectors have even mentioned the Eastern case in their

5     objections.  And this motion is the first step in the plan

6     administrator's efforts to liquidate these recently accrued

7     causes of action.

8             The Chris case is helpful from the district court.

9     District Judge Lynch found that the close nexus test was

10    satisfied because the liquidating trust was given power to

11    prosecute the claims that were transferred to it under the

12    plan.  It's virtually indistinguishable from this case.

13            So, Your Honor, Park Avenue Radiologists, the case

14    that one of the objector cites is distinguishable, because

15    the post confirmation debtor was not proposing the share the

16    proceeds of the action with the creditors.  The sources of

17    the Court's power to grant this motion include the standing

18    order, which allows the Court to direct mediation of

19    adversary proceedings, contested matters or other disputes.

20            And in order to give all of the words of that

21    order their proper meaning, Your Honor, you must find that

22    other disputes includes matters that are not the subject of

23    either adversary proceedings or contested matters, like

24    these recently approved claims.

25            In addition, the order is entered in this case and

1    other similar proceedings can be relied on by Your Honor,

2    and Section 105 which everyone seems to belittle, but the

3    Court in the Efedra (ph) case actually used to implement a

4    similar type of procedure.

5         Some of the sellers contend forcing them to

6    mediate violates due process, but they confuse arbitration

7    with mediation.  And if you look at the Woods case from the

8    Fifth Circuit, which we cited in our response, that and many

9    other cases like it hold that the power to mediate, that the

10   power to direct mediation does not infringe on due process

11   rights, while the power to arbitrate, the power to direct

12   arbitration may, but there's a meaningful distinction

13   between non-binding mediation and arbitration.

14        We agree, you can't force someone to arbitrate,

15   but you can force them to mediate.  Nothing that can happen

16   in the mediation to any of the sellers, that they did not

17   consent to happen, other than having to mediate can take

18   place.  And as you noted, they can get out.

19        They'll get all the information they need to allow

20   them to respond to our claims when we file the first notice.

21   And I'm baffled by the argument that we have to sue them

22   before you can direct them to mediate.  Nobody has cited a

23   case in support of that proposition, and they disregard the

24   three words, "or other disputes" in the standing order,

25   which I just mentioned.

1            So if Your Honor is --

2            THE COURT:  Why don't I hear from some of the

3     objectors.

4            MR. DEFILIPPO:  All right.

5            THE COURT:  I think that your reply did a good job

6     of categorizing the different objections, so let me hear

7     from each of them if you wouldn't mind.

8            MR. DEFILIPPO:  Thank you, Your Honor.

9            THE COURT:  Good morning.

10           MR. STEIN:  Good morning, Your Honor, Philip Stein

11    on behalf of seven of the objectors, Universal American

12    Mortgage Company LLC, Standard Pacific Mortgage, Inc., Shay

13    Mortgage, Inc., CTX Mortgage Company LLC, Prime Lending,

14    Allied Mortgage Group, Inc., and Direct Mortgage Corp.

15           THE COURT:  Okay.

16           MR. STEIN:  Your Honor, I will dispense with any

17    Stern versus Marshall argument, but what I would like to

18    tell you is that what you first heard -- one of the initial

19    comments by the debtors' counsel, and indeed something that

20    was stated at length in their moving papers, is that

21    essentially that they -- the debtors face a monumental task,

22    a Herculean task with perhaps 1,100 lenders and as many

23    3,000 loans or more at issue.

24           I think what the -- what Your Honor needs to

25    recognize if you don't already is that they've faced exactly

1     the same task, except red larger for the last five years and

2     have handled it quite differently.

3              At least 1,110 lenders or thereabouts, and far

4     more than 3,000 loans have been put forward by the debtors

5     in courts all across the country, federal and state courts.

6              THE COURT:  But I'm not -- this is not going to be

7     a, you know, Moroccan bizarre where you're going to try to

8     convince me that you've got a better idea.  They're the

9     fiduciary, they proposed a procedure that's worked

10    structurally so to speak with respect to other large groups

11    of claims in these cases.

12             So I want to hear about why what they've proposed

13    I can't order, because it has worked and it's worked well,

14    and now they've come back again promptly upon the accrual of

15    these indemnification claims subsequent to the settlement

16    with Fannie and Freddie.

17             So what is it about -- other than the fact that

18    you don't want to do it, you would rather put them to the

19    expense of filing the lawsuits than having to respond to the

20    mediation notice and engage in what frankly is the more

21    minimal activity involved with participating in the

22    mediation program.  And then if that doesn't work, if they

23    elect to proceed, they will sue you.

24             But we're talking about very narrowly

25    circumscribed, cost-efficient, nonburdensome procedures that

1    are tailored for this situation.  And other than the fact

2    that you just would rather them have to sue you, well,

3    what's your objection?

4              MR. STEIN:  Your Honor, they're not more minimal

5    for the parties to which they're directed.  Many of those

6    parties are already facing claims, pending claims, current

7    claims by Lehman Brothers Holdings, Inc. in other courts

8    across the country.  We now are faced with the specter of

9    dealing with them on multiple fronts.  This one being a

10   particularly inconvenient one for my clients.

11             THE COURT:  But so they would have to sue you

12   again.  In other words, I don't -- I can't get past the

13   Lehman has a dispute with you, they make you aware of a

14   dispute.  Either they make you aware of the dispute because

15   they file a complaint against you that requires you to

16   answer or to move to dismiss it and/or engage in discovery,

17   or they put you in this mediation program, they send you a

18   notice, and you respond to the notice.  Either by saying, my

19   claim was settled, we think we shouldn't have to do this,

20   we're going to write a letter to the Judge, et cetera.

21             Action/reaction.  I just -- I'm sorry, and I don't

22   mean to be difficult, I just don't understand the difference

23   in those two worlds, other than the fact that you would

24   rather they have to spend more money and launch more

25   litigations because that's more burdensome on them, so

1   burden on them is a disincentive for them to come after you.

2   But that's not the way it works.

3         MR. STEIN:  Your Honor, we, the targets of the

4   motion would rather spend less money ourselves, we're not

5   focused on how many money Lehman is spending, we're focused

6   on how much money we're spending.

7         THE COURT:  And I understand that.  And I just

8   outlined for you why in the scenario in which the ADR is

9   implemented, I'm not seeing the defendants, the punitive

10  defendants having to spend a lot of money.  I just -- I

11  don't see it.

12        MR. STEIN:  Okay.  Well, let's talk about the

13  process itself, and what it is they're advocating.  While

14  it's correct, as was suggested to you earlier that we're not

15  here to discuss the substantive merits of the claim, I think

16  one thing Your Honor does need to factor in in evaluating

17  what's being requested here is kind of the track record of

18  where we stand today.

19        These claims are almost certainly time barred,

20  notwithstanding the fact that they're being presented to you

21  as new indemnification claims that only accrued once they

22  reached the settlement with Fannie or Freddie Mac.

23        When a particular variation of the statute of

24  limitations argument has been made in cases brought by

25  Lehman and adjudicated by federal and state courts thus far,

1    every single time that that argument has been made and ruled

2    upon, the claims have been dismissed as time barred.

3            To have to come forward in this case --

4            THE COURT:  You have a case under New York law

5    that says that indemnification claims don't arise when --

6    don't accrue once the underlying claims are paid.

7            MR. STEIN:  Your Honor, I'm aware of at least

8    eight that have been decided that way in recent months, yes.

9    We're happy to supplement the briefing on that point if Your

10   Honor deems it necessary.  But that's --

11           THE COURT:  So that if that's your position, then

12   using the, what I'll call the escape hatch mechanism, you

13   would simply write a letter that cites that authority, and

14   ask me to let you out on that basis.

15           MR. STEIN:  Well -- and if Your Honor is going to

16   be receptive to those types of entreaties, that may make

17   things very different, although we are reluctant, just as a

18   threshold matter to be pulled in a little bit deeper, and to

19   have --

20           THE COURT:  So once again, you would rather they

21   sue you and then you have to file a motion to dismiss on the

22   basis that it's time barred, as opposed to taking me up on

23   my suggestion that you simply send me a letter that says

24   that.  In other ADR procedures that we have going certain

25   claimants have made the argument, or other litigation

1    procedures rather, that folks don't want to be a part of it

2    because they're not subject to the personal jurisdiction of

3    the court because they're foreign.

4         Similarly, they were given an opportunity in an

5    efficient cost effective way to bring that to the Court's

6    attention.  So, Mr. DeFilippo, unless you're going to tell

7    me I'm making this up, then problem solved, right.

8         MR. DEFILIPPO:  Your Honor, I clearly see which

9    way the Court is leaning and I understand that.

10        THE COURT:  But you --

11        MR. DEFILIPPO:  Let me mention a couple of points.

12        THE COURT:  But we're not -- but this is not here

13   -- we're not here -- I mean, we are here because we enjoy

14   doing this, but you haven't explained to me why that doesn't

15   work.

16        MR. DEFILIPPO:  Let me try a couple of other

17   points.  The first, Your Honor, is that it's the supposition

18   of at least my clients, perhaps the clients and other

19   objectors -- of other objectors' counsel I should say, that

20   if not brought into this proceeding, if not brought into

21   this mandatory ADR mechanism, those suits that you're

22   positing will be filed won't be filed, at least as to

23   certain defendants.

24        In other words, this is their shot, trying to make

25   us come here, trying to build momentum for some sort of

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - - x

 4   In Re:                          CHAPTER 11

 5   LEHMAN BROTHERS HOLDINGS, INC.,  CASE NO. 08-13555(SCC)

 6   ET AL,                          (Jointly Administered)

 7                  Debtors.

 8   - - - - - - - - - - - - - - - - x

 9   In Re:

10   LEHMAN BROTHERS, INC.,          CASE NO.

11                  Debtor.          08-08-1420(SCC)(SIPA)

12   - - - - - - - - - - - - - - - - x

13                      U.S. Bankruptcy Court

14                      One Bowling Green

15                      New York, New York

16

17                      June 19, 2014

18                      10:06 AM

19

20   B E F O R E :

21   HON. SHELLY C. CHAPMAN

22   U.S. BANKRUPTCY JUDGE

23

24

25   ECRO - MARIA R. and FRANCES FERGUSON
```

1    HEARING Re Trustee's Motion for an Order pursuant to

2    Sections 105(a), 502(a), 502(c) and 726 of the Bankruptcy

3    Code and Bankruptcy Rule 3009 (I) Establishing a final

4    reserve for secured, administrative and priority claims,

5    (II) Allowing certain secured, administrative and priority

6    claims, (III) Authorizing the trustee to satisfy allowed

7    secured, administrative and priority claims, and related

8    relief (LBI ECF No. 8885)

9

10   HEARING Re Fifteenth Application of Hughes Hubbard & Reed

11   LLP for allowance of interim compensation for services

12   rendered and reimbursement of actual and necessary expenses

13   incurred from December 1, 2013 through March 31, 2014 (LBI

14   ECF No. 9004)

15

16   HEARING Re Joint notice of presentment of Seventh amended

17   order pursuant to Section 78eee(b)(5) of SIPA, Sections 105,

18   330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a)

19   and Local Bankruptcy Rule 2016-1 establishing procedures

20   governing interim monthly compensation of trustee and Hughes

21   Hubbard & Reed LLP (LBI ECF No. 9003)

22

23

24

25

1    HEARING Re Trustee's Two Hundred Tenth Omnibus Objection to

2    general creditor claims (no liability claims) (LBI ECF No.

3    8284)

4

5    HEARING Re Motion for alternative dispute resolution

6    procedures order for indemnification claims of the debtors

7    against mortgage loan sellers (ECF No. 44450)

8

9    HEARING Re Two Hundred Fifth-Fourth Omnibus Objection to

10   Claims (ECF No. 25059)

11

12   HEARING Re Stonehill's Motion to re-file proofs of claim to

13   fix previously unliquidated claim amounts or alternatively

14   for leave to file amended claims (ECF No. 43988)

15

16   HEARING Re Plan administrator's objection to proof of claim

17   No. 33514 filed by Frank Tolin, Jr. (ECF No. 37839)

18

19   HEARING Re Lehman Brothers Special Financing, Inc. v Federal

20   Home Loan Bank of Cincinnati (Adversary proceeding No. 13-

21   01330), Pre-Trial conference

22

23

24

25   TRANSCRIPTIONISTS:   SHEILA ORMS AND SHERRI BREACH

Page 4

1    A P P E A R A N C E S:

2

3    DECHERT LLP

4        Attorneys for (Unknown)

5        1095 Avenue of the Americas

6        New York, NY   10036

7

8    BY:  ALLAN S. BRILLIANT, ESQ.

9        SHMUEL VASER, ESQ.

10

11   LAW OFFICES OF

12       Attorneys for Heidi Steiger, Steiger Associates

13       51 East 42nd Street

14       11th Floor

15       New York, NY   10017

16

17   BY:  DONALD E. WATNICK, ESQ.

18

19   JONES & KELLER

20       Attorneys for LBHI

21       1999 Broadway

22       Suite 3150

23       Denver, CO   80202

24

25   BY:  MICHAEL A. ROLLIN, ESQ.

1    WEIL, GOTSHAL & MANGES, LLP

2         Attorneys for LBHI

3         767 Fifth Avenue

4         New York, NY   10153

5

6    BY:  GARRETT A. FAIL, ESQ.

7

8    WEIL, GOTSHAL & MANGES, LLP

9         Attorneys for LBHI

10        1300 Eye Street, N.W.

11        Suite 800

12        Washington, D.C.   20005

13

14   BY:  RALPH I. MILLER, ESQ.

15

16   PROSKAUER ROSE LLP

17        Attorneys for Federal Home Loan Bank of Cincinnati

18        Eleven Times Square

19        New York, NY   10036

20

21   BY:  MARTIN J. BIENENSTOCK, ESQ.

22        STEVE RATNER, ESQ.

23        PHIL ABELSON, ESQ.

24

25

Page 6

```
 1   JONES DAY
 2        Attorneys for Debtors
 3        222 East 41st Street
 4        New York, NY 10017
 5
 6   BY: JAYANT W. TAMBE, ESQ.
 7
 8   SECURITIES INVESTOR PROTECTION CORPORATION
 9        805 15th Str., N.W.
10        Suite 800
11        Washington, D.C. 20005
12
13   BY: KENNETH J. CAPUTO, ESQ.
14
15   HUGHES HUBBARD
16        Attorneys for SIPA Trustee
17        One Battery Park Plaza
18        New York, NY 10004
19
20   BY: JEFFREY S. MARGOLIN, ESQ.
21        CHRISTOPHER GARTMAN, ESQ.
22        JASON C. BENTON, ESQ.
23        JAMES B. KOBAK, JR., ESQ.
24
25
```

```
 1   MILBANK, TWEED, HADLEY & MCCLOY, LLP

 2         Attorneys for (Unknown)

 3         One Chase Manhattan Plaza

 4         New York, NY  10005

 5

 6   BY:  GERARD UZZI, ESQ.

 7

 8   WEINER BRODSKY KIDER, P.C.

 9         Attorneys for (Unknown)

10

11   BY:  TESSA K. SOMERS, ESQ.

12

13   WOLLMUTH MAHER & DEUTSCH LLP

14         Attorneys for LBHI

15         500 Fifth Avenue

16         New York, NY  10110

17

18   BY:  PAUL R. DEFILIPPO, ESQ.

19

20   WOLLMUTH MAHER & DEUTSCH LLP

21         Special Counsel for LBHI

22         One Gateway Center

23         Newark, NY  07102

24

25   BY:  JAMES N. LAWLOR, ESQ.
```

Page 8

1   SHER TREMONTE, LLP

2        Attorneys for (Unknown)

3        80 Broad Street

4        Suite 1301

5        New York, NY  10004

6

7   BY:  JUSTIN M. SHER, ESQ.

8

9   SIMPSON THACHER & BARTLETT, LP

10       Attorneys for (Unknown)

11       425 Lexington Avenue

12       New York, NY  10017

13

14  BY:  ISAAC RETHY, ESQ.

15       DAVID J. WOLL, ESQ.

16

17  SPIZZ COHEN & SERCHUK, P.C.

18       Attorneys for Security National Mortgage Co.

19       425 Park Avenue

20       New York, NY  10022

21

22  BY:  ARTHUR GOLDSTEIN, ESQ.

23

24

25

1    GIBBONS, P.C.

2         Attorneys for (Unknown)

3         One Pennsylvania Plaza

4         37th Floor

5         New York, NY  10119

6

7    BY:  DANIEL F. MARKHAM, ESQ.

8

9    ALSO PRESENT:

10

11   FRANK TOLIN, PRO SE

12

13   TELEPHONIC APPEARANCES:

14   GABRIEL GLAZER, PACHULSKI STANG ZIEHL & JONES

15   RAJ V. IYER, CANYON PARTNERS

16   HANNA MORIKAMI, NOMURA SECURITIES

17   AUSTIN SAYPOL, SILVERPOINT CAPITAL LP

18   HAROLD KIM, BLACKSTONE

19   JASON B. SANJANA, REORG RESEARCH

20   MATTHEW UNDERWOOD, HBK CAPITAL

21

22

23

24

25