Evans Prieston, Esq. 3062098
Tracy L. Henderson, Esq. 252888
*(Pro Hac Vice)*
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for American Bank FSB, First Mortgage Corporation, Gateway Bank FSB, Apex Home Loans Inc., Oaktree Funding Corporation, Republic State Mortgage Company, and Directors Mortgage Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **LEHMAN BROTHERS HOLDINGS., et al.,** | ) | **Case No. 08-13555-scc** |
| | ) | |
| Debtors. | ) | |

**AMERICAN BANK FSB, FIRST MORTGAGE CORPORATION, GATEWAY BANK, FSB, APEX HOME LOANS INC., OAKTREE FUNDING CORPORATION, REPUBLIC STATE MORTGAGE COMPANY AND DIRECTORS MORTGAGE'S REPLY TO LEHMAN BROTHERS HOLDINGS INC.'S OPPOSITION TO MOTION TO VACATE THE "ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLER, AMERICAN BANK" PURSUANT TO RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY ......................................................................1

II. ARGUMENT ...................................................................................................2

    A.    The Motions to Vacate are Not Procedurally Improper and Should be
Granted. ......................................................................................................2

    B.    LBHI Not Entitled to Assert Indemnification Claims Against Sellers..................4

        1.    LBHI claims that LBB assigned "all its rights under LPAs to LBHI
by written agreement" which are "unquestionably valid". ..........................4

        2.    LBHI claims that it "intended to assign all rights" under LPA "in
connection with LBHI's purchase of Defective Loans" upon sale..............7

        3.    SecurityNational Mortgage Co. v. Aurora Bank, FSB Is On-Point and
Should be Followed in this Case. ...............................................................8

        4.    No "Automatic" Transfer of Rights to LBHI as "Subsequent Holder",
"Third Party Beneficiary", or "Purchaser." ..............................................11

        5.    LBHI Did Not Receive an Assignment of Indemnification Rights
from the Agencies Because No Claims were Transferred and Any
Claims as Note Holder were Extinguished. ...............................................13

    C.    All Claims Assigned to LBHI by LBB and Fannie Mae Are Barred by the
Statute of Limitations. ................................................................................15

III. CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*1st New England Mortgage Corp* ................................................................................12

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*
  120 F.3d 351, 360 (2d Cir. 1997) ...........................................................................16

*ACE Sec. Corp. v. DB Structured Prods., Inc.*
  *112* A.D.3d 522, 523 (N.Y. App. Div. 1st Dep't 2013) .........................................15

*Adelphia Recovery Trust v. Bank of Am., N.A.*
  390 B.R. 80, 89 (S.D.N.Y. 2008) aff'd, 379 F. App'x 10 (2d Cir. 2010)..................16

*Amoco Oil Co. v. Liberty Auto and Elec. Co.*
  262 Conn. 142, 810 A. 2d 259 (2002) ....................................................................18

*Amusement Indus., Inc. v. Stern*
  786 F. Supp. 2d 789, 795 (S.D.N.Y. 2011) ............................................................19

*Animal Sci. Products, Inc. v. China Minmetals Corp*
  No. 2:05-CV-04376 KM, 2014 WL 3695329 (D.N.J. July 24, 2014).......................6

Bank of N.Y. v. River Terrace Assocs., LLC
  23 A.D.3d 308, 310, 804 N.Y.S.2d 728 (N.Y.App.Div.2005) ...........................12, 13

*Binghamton Masonic Temple Inc. v. City of Binghamton*
  213 A.D.2d 742, 623 N.Y.S.2d 357, 360–61 (1995)..............................................12

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*
  778 F. Supp. 2d 375, 420 (S.D.N.Y. 2011) ............................................................14

*Boehner v. Heise* et al
  2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009)............................................3, 4

*Canale v. Manco Power Sports, LLC,*
  No. 06 CIV. 6131, 2010 WL 2771871, (S.D.N.Y. July 13, 2010) .........................2, 3

*Caplan v. Unimax Holdings Corp.*
  188 A.D.2d 325, 325, 591 N.Y.S.2d 28 (N.Y.App.Div.1992) ................................14

*Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A. S*
  598 F.2d 1264, 1266 (2d Cir.1979) .........................................................................6

*Citibank, N.A. v. Tele/Res., Inc.*, 724 F.2d 266, 269 (2d Cir. 1983)............................6

*Commercial Discount Co. v. Cowen*
  (1941) 18 Cal.2d 610, 614, 116 P.2d 599,................................................................7

*Creative Ventures, LLC v. Jim Ward & Associates*
  195 Cal. App. 4th 1430, 1447, 126 Cal. Rptr. 3d 564, 577 (2011). ...........................7

*Delle Donne & Associates, LLP v. Millar Elevator Service Co.*
  840 A.2d 1244 (Del. 2004) ...................................................................................17

*Deutsche Alt-A Sec. Mortgage Loan Trust,*
*Series 2006-OA1 v. DB Structured Products, Inc.*
  958 F. Supp. 2d 488, 500 (S.D.N.Y. 2013) ...............................................................16

*Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*
  *No.* 13 CIV. 6482 PAC, 2014 WL 3819356, at *4 (S.D.N.Y. Aug. 4, 2014) ...........15

*Ely-Cruikshank Co. v. Bank of Montreal*
  81 N.Y.2d 399, 402 (1993) .......................................................................................15

*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*
  618 F.3d 204, 214 (2d Cir.2010) ...............................................................................13

*Hahn Automotive Warehouse, Inc. v. American Zurich Insurance Co.*
  2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 ...............................15, 16

*Haynes v. Kleinewefers and Lembo Corp.*
  921 F.2d 453, 456 (2d Cir.1990) .................................................................................9

*HE3 v. DB Structured Prods., Inc.*
  No. 13 CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar 20, 2014) ....................15

*In re Moskowitz*
  14 B.R. 677, 681 (Bankr. S.D.N.Y.1981) .....................................................................9

*Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*
  36 N.Y.2d 121, 126, 365 N.Y.S.2d 808, 325 N.E.2d 137, 139 (1975)........................6

*John J. Kassner* & Co. v. City of N.Y.
  46 N.Y. 2d 544, 551 (1979) .......................................................................................16

*Kirby*
  82 F.Supp.2d at 197 ..................................................................................................13

*Lehman Bros. Holdings v. 1st New England Mortgage Corp.*
  No. 09-11082-GAO, 2012 WL 3984413, at *3 (D. Mass. Sept. 12, 2012)...........12, 16

*Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co*
  No. CIV.A. H-09-0672, 2011 WL 649139, at *3 (S.D. Tex. Feb. 10, 2011). ...........10

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*
  793 F. Supp. 2d 1189 (W.D. Wash. 2011) .................................................................15

*Lehman Bros. Holdings, Inc. v. Nat'l Bank of Arkansas*
  875 F. Supp. 2d 911, 917 (E.D. Ark. 2012)...............................................................5, 6

*Lehman Bros. Holdings, Inc. v. PMC Bancorp*
  No. LA CV10-07207 JAK, 2013 WL 1095458, at *1 (C.D. Cal. Mar. 8, 2013) .......5

Lehman Brothers Holdings, Inc. v, Security National Mortgage Company
  11-CV-519-TS .............................................................................................................10

*Lehman Brothers Holdings, Inc. v. Mortgageclose.com*
  No. 10-cv-633, Doc. No. 82, at 10-11 (C.D. Cal. November 2, 2010).......................5

*Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v.*
  *Greenpoint Mortgage Funding, Inc.*
  991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014) ...............................................................16

*Manley v. AmBase Corp.*
   337 F.3d 237, 250 (2d Cir. 2003) ...........................................................13

*Mas v. Two Bridges Assocs. by Nat'l Kinney Corp.*
   75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990)............18

*McDermott v. City of New York*
   50 N.Y.2d 211 (1980) .........................................................................17, 18

*Molina v. Barany*
   56 N.Y.S.2d 124, 132 (1945)......................................................................6

*Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola*
   134 N.Y. 461, 468, 31 N.E. 987 (1892)....................................................18

*Raquet v. Braun*
   90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997)..............18

*S. Rd. Associates, LLC v. Int'l Bus. Machines Corp.*
   4 N.Y.3d 272, 278, 826 N.E.2d 806, 809 (2005)......................................13

*SecurityNational Mortgage Co. v. Aurora Bank FSB*
   No. 2:11-CV-00434 DN, 2014 WL 7366063, at *15 (D. Utah Dec. 24, 2014) .................8, 11

*Septembertide Pub., B.V. v. Stein & Day, Inc.*
   884 F.2d 675, 682 (2d Cir.1989) ................................................................6

*State v. City of Binghamton*
   1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't) ...........................15, 16

*Structured Mortgage Trust 1997-2 v. Daiwa Fin. Corp.*
   No. 02 CIV. 3232 (SHS), 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003) .........................16

*Toste v. Durham & Bates Agencies, Inc.*
   116 Wash. App. 516, 522, 67 P.3d 506, 509 (2003) ...................................9

*Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*
   No. 12-CV-6168, 2014 WL 1259630 ........................................................15

**Statutes**

*Am Jur. 2d* § 25 (1964) ..............................................................................18

*Am. Jur. 2d* Indemnity § 20 (1964)..............................................................17

FRBP Rule §7001 .........................................................................................4

FRCP 60(b) ...................................................................................................2

FRCP 60(c)(1) ..............................................................................................3

**Treatises**

6 Williston, Contracts § 2004, at 5641 [rev. ed. 1938]...............................15

McKinney's Cons. Laws of N.Y., Book 7B, CPLR C203:1, at 143 .............15

McKinney's Cons. Laws of N.Y., Book 7B, CPLR. C206 .......................15, 16

Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, American Bank FSB, First Mortgage Corporation, Gateway Bank, FSB, Apex Home Loans, Inc., Oaktree Funding Corporation, Republic State Mortgage Company, and Directors Mortgage Inc., (collectively referred to herein as "Sellers") by and through its undersigned counsel, American Mortgage Law Group, hereby submits this Reply Brief (the "Reply") to the Opposition (the "Opposition") of Lehman Brothers Holdings Inc. ("LBHI") to Motions seeking an Order vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims Against Mortgage Loan Sellers. (See ECF No. 45277.)

## I. INTRODUCTION AND SUMMARY

Simply, LBHI holds neither Indemnification Rights nor Breach of Warranty Claims against Sellers as a matter of law. In contrast to LBHI's contentions, there is no evidence that Lehman Bank ("LBB") ever validly assigned its Indemnification Rights to LBHI as the various assignment agreements either do not list a particular seller or do not specify the property to be assigned as required by law. Further, LBHI's contention that their "acts" constituted an intent at the time of the sale of the loans to LBB is easily contradicted. Notwithstanding whether or not the assignments are valid, LBB did not possess any Indemnification Rights to assign to LBHI as LBB was fully compensated, without recourse, upon selling the alleged defective loans at issue ("Subject Loans") to LBHI. Fannie Mae and Freddie Mac (the "Agencies") could not have assigned their Indemnification Rights and Claims to LBHI, as the Indemnification Provision did not provide for Indemnification Rights to be assignable by a subsequent holder of the Notes without a corresponding assignment of said Notes. Having liquidated the Notes prior to assigning generic claims to LBHI, the Agencies extinguished all indemnity claims. Regardless, the Agencies, in fact, did not assign the Notes to LBHI. Finally, any Claims assigned by LBB or Fannie Mae to LBHI are barred by the expiration of the statute of limitations as LBHI's claims

sound in contract and not equity. For all these reasons stated herein, the motion should be granted pursuant to Fed. R. Civ. P. 60 (b)(6).

## II. ARGUMENT

### A.    The Motions to Vacate are Not Procedurally Improper and Should be Granted.

LBHI first argues that Rule 60(b) motions are generally disfavored and require a demonstration of either "extraordinary circumstances" or "extreme and undue hardship". Cases are likewise cited by LBHI for the proposition that only "extreme situations" based on "highly convincing material" warrant the application of principles of equity. Fed. R. Civ. P. 60(b). However, the case cited for this proposition, *Canale v. Manco Power Sports, LLC*, No. 06 CIV. 6131, 2010 WL 2771871, (S.D.N.Y. July 13, 2010) is inapposite, and this is a situation where the application of equitable principles is highly warranted.

*Canale* is a personal injury case where Plaintiffs argued for relief under Rule 60(b)(1) as well as Rule 60(b)(6).   In particular, plaintiffs claimed that the actions of their attorney constituted "excusable neglect" pursuant to Rule 60(b)(1).   *Id.* at *2.   In regards to the Rule 60(b)(1) standard, the Court found that all four of the *Pioneer* factors weighed in favor of Manco, as plaintiffs had "utterly thwarted" Manco's efforts to proceed with discovery for at least six month and had failed to justify their delays.   *Id.* at *1.   The Court also found that Rule 60(b)(6) applies only when no other subsection is available.   The grounds for relief may not be mistake, inadvertence, surprise or excusable neglect.   *Id.* at *4.   The *Canale* plaintiffs "failed to explain how any of their unsubstantiated justifications for failing to prosecute this case constitute either extreme circumstances or undue hardship."   *Id.* at *4.   As the *Canale* plaintiffs had also argued excusable neglect, Rule 60(b)(6) did not apply.   However, Sellers are not arguing excusable neglect or for relief under any of the grounds covered by Rule 60(b)(1)-(5), thus leaving Rule 60(b)(6) open to them.

In contrast, in the present case, the circumstances are extraordinary as LBHI is attempting to force Sellers into an Alternate Dispute Resolution ("ADR") proceeding based on unsubstantiated claims. ADR normally promotes efficiency. In this case it would be extraordinarily inefficient as the underlying claims are completely untenable. ADR would only result in non-negotiation over unsubstantiated claims.

To obtain Rule 60(b)(6) relief, there must be a showing that undue hardship will not result to other parties, and the moving party must demonstrate that he possesses a meritorious defense. *Boehner v. Heise* et al. 2009 U.S. Dist. LEXIS 41471, *10 (S.D.N.Y. 2009). Undue hardship will not result to LBHI, as Sellers have not caused any unnecessary delays as the motions were timely brought and in direct response to LBHI's demand that they mediate in New York. Sellers have also demonstrated a meritorious defense as stated herein. In contrast, in *Canale*, the plaintiffs provided no substantive arguments regarding the merits of defendant's claims or any other meritorious defense. *Canale,* No. 06 CIV. 6131, 2010 WL 2771871.

LBHI next contends that all of the 3,000 sellers and brokers had "the opportunity to object" to the proposed Alternative Dispute Resolution Procedures Order for Indemnification Claims Against Mortgage Loan Sellers ("ADR Order") last June, rendering this 60(b)(6) challenge "too late." (Opposition at 7-8) This contention is contradicted by the statute, which states any 60(b) challenges should be made within a reasonable time and in certain cases not to exceed a year from the date of entry. F.R.C.P. 60(c)(1). As Seller's challenges are made less than a year from July 18, 2014, and upon receipt of the ADR Procedures Notice, this statutory requirement has been met rendering this contention by LBHI untenable.

LBHI further argues that "having failed to object to the entry of the ADR Orders, Sellers cannot now claim that purported issues exist relating to LBB's assignment of rights under the

Loan Purchase Agreements ("LPAs")[1] create extraordinary circumstances that would justify vacating the Orders." (Opposition at 7)   However, even if extraordinary circumstances were required, which we deny, being subject to a Court Order to enter mediation proceedings on invalid claims for which one has not had constitutionally or statutorily required due process surely qualifies.[2]

In addition, relief provided under Rule 60(b) is equitable in nature.  *Boehner v. Heise et al* 2009 U.S. Dist. LEXIS 41471, \*10 (S.D.N.Y) 2009.  It would be inequitable to force Sellers to participate in a mediation concerning stale and unsubstantiated claims in violation of due process.

**B.      LBHI Not Entitled to Assert Indemnification Claims Against Sellers.**

LBHI makes several untenable arguments in support of its blanket claim that it was entitled to assert indemnification claims against Sellers. (Opposition at 8).  Sellers address each in turn.

**1.      LBHI claims that LBB assigned "all its rights under LPAs to LBHI by written agreement" which are "unquestionably valid".**

LBHI states that LBB assigned its rights under the LPAs to LBHI in a series of written agreements memorializing such assignments dating from September 2, 2008 through May 13, 2014, some of which are restatements of 2012 agreements ("Assignment Agreements"). (Opposition at 9.)  While LBHI now claims (discussed below) that it plainly relied on LBB's intended assignment of rights, it has provided no proof of this alleged reliance.

---

[1] Each of the seven sellers have different Loan Purchase Agreements and Apex has a Broker Agreement.  Further, some Sellers have multiple Loan Purchase Agreements and dual authorization agreements with both LBB and Aurora Bank, FSB.  These various loan purchase agreements are collectively referred to herein as "LPAs".  The specific loan purchase agreement entered into between American Bank and LBB on September 13, 2007, incorporating the Seller's Guide, and other identical agreements entered into between LBB and other Sellers are referred to herein as "LPA."

[2] LBHI is taking an end run around Due Process by failing to file an adversary proceeding as required pursuant to Fed. R. Bankr. P. §7001.

LBHI argues that "at least five courts have ruled that assignment agreements between LBB and LBHI that are substantially similar to the Assignment Agreements validly transferred to LBHI LBB's rights under loan purchase agreements identical to the LPAs." (Opposition at 10) However, in none of those cases did the loan originators raise the issues of lack of the notice, the non-recourse basis of the loan sales, business practices showing a lack of intent to assign rights, or the long time delay in executing purported Assignment Agreements. Thus, those cases are factually distinguishable and have no bearing on the arguments raised by Sellers. Furthermore, the fact that the lenders in those cases may have chosen to sleep upon their rights does not mean that Sellers must do the same.

For example, in *Lehman Bros. Holdings, Inc. v. PMC Bancorp*, No. LA CV10-07207 JAK, 2013 WL 1095458, at *1 (C.D. Cal. Mar. 8, 2013), the defendants never raised the Notice provision argument or the argument that in the absence of a valid assignment, under Sections 701 and 713.3, of the LPA, only holders of the note have third party beneficiary status (under Section 711).

Moreover, *Lehman Brothers Holdings, Inc. v. Mortgageclose.com,* No. 10-cv-633, Doc. No. 82, at 10-11 (C.D. Cal. November 2, 2010) is irrelevant as it concerns Mortgage Close's argument that "LBHI has no rights to sue on behalf of LBB because the Assignment Agreement between LBB and LBHI was not effective on any defaulted loans before the assignment itself took place". (*Id.* at 10) Sellers are not arguing that an assignment would not be effective on loans sold before the assignment took place. Rather, Sellers are arguing that the purported assignment itself is invalid and that LBB had no claim of indemnity to assign.

In *Lehman Bros. Holdings, Inc. v. Nat'l Bank of Arkansas*, 875 F. Supp. 2d 911, 917 (E.D. Ark. 2012), the loan originator had argued that there is a genuine issue of material fact as to whether the Assignment Agreement assigned rights under the loan purchase agreement or

Seller's Guide or whether the Assignment Agreement merely memorializes a prior agreement. Therefore, in the *National Bank of Arkansas* case, the dispute was over the **content** of the assignment, not whether the assignment was invalid due to failure to conform to the terms of the loan purchase agreement. The other cases cited also fail to address the arguments raised by Sellers. Thus, the cases cited for LBHI's argument that substantially similar Assignment Agreements have been upheld in the past are irrelevant, as the court in those cases did not rule on the arguments presented here by Sellers.

In addition, such Assignment Agreements do not eviscerate the rights of Sellers under the LPA, as Sellers were not party to the purported Assignment Agreements. "[A]ssignment requires an assignable right," Restatement (Second) of Contracts § 324 (1981), and "an assignee of a claim takes it with whatever limitations it had in the hands of the assignor," *Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A. S.*, 598 F.2d 1264, 1266 (2d Cir.1979). *See also Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 682 (2d Cir.1989) (an assignor cannot assign that which it no longer owns or controls) (citing *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126, 365 N.Y.S.2d 808, 325 N.E.2d 137, 139 (1975). *Animal Sci. Products, Inc. v. China Minmetals Corp.*, No. 2:05-CV-04376 KM, 2014 WL 3695329 (D.N.J. July 24, 2014). An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee, which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged. *Molina v. Barany*, 56 N.Y.S.2d 124, 132 (1945) (construing former N.Y.Pers.Prop.Law § 33–c, the predecessor of Gen.Oblig.Law § 15–301(1)); 6A C.J.S. Assignments §§ 4 and 5, at 593–94 as cited in *Citibank, N.A. v. Tele/Res., Inc.*, 724 F.2d 266, 269 (2d Cir. 1983)

Specifically, the LPA required written Notice to Sellers for an assignment under Section 701 and 713.3 of the LPA and the only non-assignees upon whom third party beneficiary status

may be conferred are holders of a Note. Essentially, LBHI's attempts to memorialize its alleged assignments under the LPA do not modify the express terms of the LPA. LBB and LBHI failed to conduct their transactions in accordance with the terms of the LPA, and thus cannot claim any rights under it.

**2.    LBHI claims that it "intended to assign all rights" under LPA "in connection with LBHI's purchase of Defective Loans" upon sale.**

LBHI alleges that "the acts of LBB and LBHI demonstrate that both parties intended an assignment of LPA rights at the time the Defective Loans were sold to LBHI, and that intent and those actions establish an assignment under New York Law." (Opposition at 14). However, this approach conflates the loans themselves with the rights and duties contained within the LPA, and the reverse is true. An assignment, on the other hand, usually refers to the transfer of a cause of action or rights in or concerning property—as opposed to the particular item of property itself. (*Commercial Discount Co. v. Cowen* (1941) 18 Cal.2d 610, 614, 116 P.2d 599 as cited in *Creative Ventures, LLC v. Jim Ward & Associates*, 195 Cal. App. 4th 1430, 1447, 126 Cal. Rptr. 3d 564, 577 (2011)

The fact that LBB structured its loan sales to its parent company to be non-recourse transactions showed that it did <u>not</u> intend to make any assignment. LBHI states the purpose of the relationship between LBB and LBHI was for LBB to provide a low-cost method of funding LBHI's purchase of loans. (Opposition at 3). However, there is a difference between selling a loan and assigning the indemnity rights pertaining to that loan. In discussing the commercial arrangement between these two entities, LBHI makes no mention of any actual assignment of rights. *Id.* At the time of the loan sales, there was no regular business practice of assigning the rights under the LPAs. Additionally, the very fact that LBB and LBHI waited several years after the sale of the Loans before executing the purported Assignment Agreements, show their lack of intent to make an assignment at the time the Loans were sold to them. Thus, in contrast to

LBHI's contentions, it is these business practices that indicate that LBB and LBHI did not consider potential liability from upstream investors such as the Agencies to be the main purpose of the LPAs, and accurately speaks to their intent at the time.

### 3. SecurityNational Mortgage Co. v. Aurora Bank, FSB Is On-Point and Should be Followed in this Case.

LBHI argues that *SecurityNational Mortgage Co.* is inapposite because LBB did not assign any particular claim but assigned all rights under the LPAs instead, rendering LBHI able to assert its own independent claims. (Opposition at 11). This claim ignores the language of the Assignment Agreements and the law the Court is required to apply when construing indemnity provisions in Agreements. In particular, according to the *SecurityNational Mortgage Co.* Court:

> The Assignment executed on March 28, 2011 between Aurora Bank FSB (formerly Lehman Bank) and Aurora Loan Services as assignors, and LBHI as assignee is **not an assignment of the Indemnification Agreement** but states that it was an **assignment of "rights"** and "including, without limitation, all repurchases and/or indemnification remedies and/or claims for damages" **under the Indemnification Agreement**.

*SecurityNational Mortgage Co. v. Aurora Bank FSB*, No. 2:11-CV-00434 DN, 2014 WL 7366063, at *15 (D. Utah Dec. 24, 2014). Similarly here, Section 1 of the 2010 Assignment Agreement[3] also only assigns the **Assignor's "rights it may have under the Agreements…in and to** any or all representations, warranties or covenants **made by the Broker to the Assignor…** along with any or all of the **remedies Assignor may have for breach of any representation.**" Likewise, Section 1 of the purportedly applicable 2014 Second Amended and Restated Assignment and Assumption Agreement[4] assigns all "rights, title, obligations under the LPAs…**not previously assigned**." Thus, as to these three Sellers, what was assigned was not the LPA itself, but merely whatever rights and remedies Assignor, i.e. LBB itself had against

---

[3] June 25, 2010 Assignment Agreement purportedly applies to Apex but is between Aurora Bank and Lehman Brothers Holdings, Inc and does not attach any list including Apex nor reference 10/26/05 Broker Agreement applicable to Apex.

[4] May 13, 2014 Second Amended and Restated Assignment and Assumption Agreement purportedly applies to Director's Mortgage and Republic State.

Sellers.  As to the remaining Sellers, the 2008 assignment agreement transfers rights in and to the Agreements, but does not specify which of the LPAs, which are numerous, varied, and have different terms.  Notwithstanding, as to all Sellers, as previously discussed, because LBB was compensated in full and sold the Loans without recourse to LBHI, LBB has no rights or remedies against Sellers.

Likewise, LBHI's claim that, "LBHI obtained the right to assert its own independent claims for indemnification…" (Opposition at 11) ignores the fact that in this case not one of the many different LPAs were described with any particularity or even listed in an appendix to the Assignment Agreement, nor did a separate indemnification agreement exist.  This violates the legal requisite that the property of an assignment agreement be sufficiently identifiable.[5]  More importantly, express indemnity rights do not exist in the abstract but must be defined by a contract.  *See Toste v. Durham & Bates Agencies, Inc.*, 116 Wash. App. 516, 522, 67 P.3d 506, 509 (2003).  LBB and LBHI could easily have included the LPA in the Assignment Agreement; however, they chose not to and instead chose to rely on whatever rights and remedies LBB may have against Sellers.

Further, as an indemnification provision is to be strictly construed[6] under New York law so as to not provide rights beyond the express language of the agreement, the Court cannot ignore, as LBHI demands it do so, that there is a separate agreement, the LPA, which grants an independent cause of action.  Instead, the fact is it is only a provision in the Sellers Guide, as incorporated into the LPA which purportedly grants a remedy.  Therefore, the argument that an independent claim is therefore automatically established is simply legally untenable upon reading Section 711 of the Sellers Guide at issue.  Notably, LBHI not only contradicts this

---

[5] *In re Moskowitz*, 14 B.R. 677, 681 (Bankr. S.D.N.Y.1981)
[6] Under New York law, indemnification clauses "must be strictly construed so as not to read into [them] any obligations the parties never intended to assume." *Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456 (2d Cir.1990).

9

contention but concedes as such, stating that "LBB assigned all of its rights under the LPA".

(Opposition at 10)

    *Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*, the case that LBHI relies

upon for its assertion that the LPA itself was assigned and not merely LBB's specific rights

under the LPA (Opposition at 11), is inapposite, fully distinguishable and therefore irrelevant.[7]

In *Cornerstone,* LBB and the loan originator had executed a separate indemnification agreement.

The *Cornerstone Mortgage* Court noted that after two commercial loans went into early payment

default, Cornerstone declined to purchase either loan:

> Instead, Cornerstone and LBB entered into negotiations. On April 2, 2007, the
> parties reached an indemnification agreement for each loan (the "Harris Indemnification
> Agreements"). … In the Harris Indemnification Agreements, Cornerstone acknowledged
> that each loan was in early payment default and that LBB had the right to require
> Cornerstone to repurchase each loan. (*Id.*). LBB agreed to refrain from exercising its
> repurchase rights in exchange for Cornerstone's promises to repurchase each loan if it
> became more delinquent and to indemnify LBB for losses.
> *Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*, No. CIV.A. H-09-0672, 2011
> WL 649139, at *3 (S.D. Tex. Feb. 10, 2011).

    In contrast, in the present case, Sellers never signed any additional indemnification

agreement acknowledging the rights of the party claiming indemnification, LBHI.  All LBHI has

to rely on are non-recourse sales and then a purported Assignment Agreement executed years

later that fails to conform with the terms of the LPA and does not even mention the numerous

LPAs in particular or at all.  Therefore, unlike in *Cornerstone*, LBHI does not have

indemnification rights.  Rather, LBHI only has whatever rights and remedies that LBB itself

would have been able to assert.  Of course, LBB would not have been able to assert

---

[7] LBHI also offers the April 21, 2015 decision of the United States Court for the District of Utah in Lehman
Brothers Holdings, Inc. v, Security National Mortgage Company, 11-CV-519-TS, which adopted the reasoning of
the Cornerstone Court.  However, as this authority was submitted to the Court on April 29, 2015, less than a day
before Sellers were required to submit their Reply, Sellers object to this authority being considered by the Court and
submit it is likewise irrelevant as it bases its reasoning on *Cornerstone.*

indemnification rights as it sold the loans without recourse, was not assigned the notes as they were liquidated, and never executed a valid assignment agreement with LBHI for all Sellers.

LBHI concludes this particular argument by stating that, "[t]he bottom line is that under Section 701 and 713.3 of the Seller's Guide, each Seller assumed an obligation to indemnify LBB or any assignee of the LPA against liability to third parties..." (Opposition at 12) While it is true that each Seller agreed to indemnify any **valid assignee of LBB's rights under the LPA**, the fact remains that LBB never assigned the LPAs to LBHI, rather all that was assigned were the indemnification rights that LBB had for its own losses. In addition, the LPA was not an agreement of indemnity against **liability** to third parties, rather it was an agreement of indemnity against **loss and damage** to LBB.

Nowhere in any of the indemnity provisions of the LPA is the term "liability" mentioned. Therefore what was being indemnified against were LBB's own possible losses. The fact that LBB was free to assign its rights to indemnity for its losses to third parties does not magically change the terms of the LPA to cover **liability to third parties**. In order for a third party assignee of LBB's indemnity rights to have a valid indemnity claim against Sellers, the loss would still need to originate with LBB. To extend the indemnification provision to include LBHI's potential liabilities that may result from the Loans would be to grossly expand LBB's indemnity rights in violation of the rule that indemnity agreements must be strictly construed. *SecurityNational Mortgage Co. v. Aurora Bank FSB*, No. 2:11-CV-00434 DN, 2014 WL 7366063, at *12 (D. Utah Dec. 24, 2014).

### 4. No "Automatic" Transfer of Rights to LBHI as "Subsequent Holder", "Third Party Beneficiary", or "Purchaser."

LBHI seems to argue that instead of making their claim in the capacity of assignee or Purchaser's Designee, that the LPAs somehow "automatically transfer the rights" to them in any of three capacities. (Opposition at 3, 14-16). This is inconsistent with the rule in New York that

11

parties can be beneficiaries of or stand in privity to a contract in one, but not all, capacities. *Bank of N.Y. v. River Terrace Assocs., LLC*, 23 A.D.3d 308, 310, 804 N.Y.S.2d 728 (N.Y.App.Div.2005) (bank could not sue under an indemnity agreement for losses it incurred when acting on its own behalf, when the agreement indemnified bank only for acts undertaken in its capacity as agent for other banks).    To state a claim for breach of contract or for indemnification, a claimant must show either that it is a party to the relevant agreement or that the contracting parties intended the claimant to be a third-party beneficiary with enforcement rights. See *Binghamton Masonic Temple Inc. v. City of Binghamton*, 213 A.D.2d 742, 623 N.Y.S.2d 357, 360–61 (1995). Therefore, pursuant to this law and to the applicable language of the Seller's Guide no "automatic transfer" of rights could take place; rather indemnification rights could only be transferred to non-parties by the affirmative act of being **designated** by the Purchaser, LBB, pursuant to § 711 of the LPA.    Furthermore, the term "Designee" means, "Someone who has been designated to perform some duty or carry out some specific role." DESIGNEE, *Black's Law Dictionary* (10th ed. 2014).    Clearly, by the very terms of the Sellers Guide, what was contemplated was that a written assignment agreement or status as a noteholder was required in order to have LBB's indemnification rights.

Furthermore, the case, *1st New England Mortgage Corp.* cited for LBHI's assertion that assignment automatically made LBHI a "Purchaser" with "indisputable right to indemnification by Sellers" is inapposite.    In *1st New England Mortgage Corp.* LBHI had itself repurchased the loans as opposed to settling with the Agencies, and the court held that LBHI had standing to enforce 1st New England's promise to repurchase because it was a **current holder** of the loans. *Lehman Bros. Holdings v. 1st New England Mortgage Corp.*, No. 09-11082-GAO, 2012 WL 3984413, at *3 (D. Mass. Sept. 12, 2012).    In contrast, in the present case neither LBHI nor any other party can claim to be a current holder of any of the Loans.

12

Notably, Section 711 of the LPA states that, "Seller shall indemnify Purchaser and Purchaser's Designee (including without limitation any holder of the Note)." In particular, under the Sellers Guide, there are only three ways to obtain indemnity rights under the LPA:

(i) One is for LBB to assign rights and duties under the LPA for representations and warranties and remedies under Section 701 and provide notice to sellers under Section 713.3[8]. Such an assignment makes the assignee a third party beneficiary.

(ii) The second is to be a subsequent holder of the Note, under Section 711. A holder of a Note is a third party beneficiary.

(iii) The third is to for LBB to assign rights under Section 713.3 and to provide Notice thereof to Sellers. Such an assignment also makes the assignee a third party beneficiary.

Thus, notably, by the plain language of the Sellers Guide incorporated into the LPA[9], the only way to become a third party beneficiary **without an assignment of rights** is to be a subsequent holder of a Note under Section 711[10]. Sections 701 and 713.3 both require an assignment of rights in order to become a third party beneficiary. In addition, this view ignores the contractual nature of the indemnification provision, which is not a naked right but also came with an attendant duty to inform Sellers of any assignment thereof.

> **5.    LBHI Did Not Receive an Assignment of Indemnification Rights from the Agencies Because No Claims were Transferred and Any Claims as Note Holder were Extinguished.**

LBHI finally argues against Sellers' contention that they could not have obtained indemnification rights from the Agencies by claiming that it is contradictory for Sellers to claim

---

[8] It is elementary contract law that provisions of an agreement cannot be understood in isolation, rather the contract must be considered as a "whole". *S. Rd. Associates, LLC v. Int'l Bus. Machines Corp.*, 4 N.Y.3d 272, 278, 826 N.E.2d 806, 809 (2005). Section 701 does not contain a notice requirement. However, given that Section 713.3 of the Seller's Guide requires written notification of any assignment, the written notification provision also applies to Sections 701. To do otherwise would make the notice provision meaningless, which would fly in the face of the rule that a contract must be interpreted to give meaning to all provisions. A court should "adopt an interpretation which gives meaning to every provision in the contract." *See, e.g., GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.,* 618 F.3d 204, 214 (2d Cir.2010). New York law disfavors interpretations that render contract provisions meaningless or superfluous. *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003). Thus, the interplay of Sections 701 and 713.3 means that any assignee of the indemnification rights would also need to have been designated as such via the notice requirement of Section 713.3.

[9] With the exception of Apex whose Broker Agreement does not incorporate the Seller's Guide.

[10] When contracting parties specify a right to sue in one capacity, no right to sue in another capacity should be implied. See, e.g., *Manley*, 337 F.3d at 245; *Kirby*, 82 F.Supp.2d at 197; *Bank of New York*, 23 A.D.3d at 310, 804 N.Y.S.2d 728.

13

that the Agencies have indemnity rights as subsequent holders, while denying that LBB could have assigned indemnification rights to LBHI. (Opposition at 15, n. 13.)  Simply, as previously discussed, the only way to become a third party beneficiary without **an assignment of rights** is to be a subsequent holder of a Note under Section 711.  LBB and LBHI chose to structure their loan sales as simple non-recourse sales, not as assignments of rights coupled with the sale of loans.  Therefore LBHI never had any indemnification rights against Sellers and could not have assigned such to the Agencies.

On the flip side, Sellers argue that the Agencies could achieve third party beneficiary status if it were a holder of the Notes.  LBHI acknowledges that per Section 711, subsequent holders of the notes have third party beneficiary status.  (Opposition at 5).  Simply, LBHI's contention is untenable because once a Loan is resold, the original Purchaser does not retain "noteholder" status[11] and is thus no longer a third party beneficiary.  Thus, LBHI's status and standing to sue for breaches in either capacity was legally extinguished upon payment in full of the note as evinced by the Loss Statements attached to the Sellers motions. (Generally Exhibit "G")  Thus, as all the Notes in this matter have been liquidated, no-one can claim to be a holder of the Notes and therefore no-one has third party beneficiary status by virtue of being a holder of the note.[12] .  Thus the only route to obtaining indemnification rights at this point is a valid assignment of LBB's rights under the LPA.  As discussed herein no such assignment of the Notes ever took place, thus leaving the Agencies with no indemnification rights against Sellers to assign or transfer to LBHI.

---

[11] After Notes are paid and extinguished, noteholder status cannot be retained. Noteholder status can again arise upon the acquisition of the new Notes. See *Caplan v. Unimax Holdings Corp.*, 188 A.D.2d 325, 325, 591 N.Y.S.2d 28 (N.Y.App.Div.1992) as cited in *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 420 (S.D.N.Y. 2011).

[12] Status as noteholders and standing to sue for breaches while the notes are held is legally **extinguished** each time payment in full is received on their notes. See 70 C.J.S. Payment § 32 (payment "extinguishes the debt for which it is presented") as cited in *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 420 (S.D.N.Y. 2011)

In contrast, under LBHI's reasoning, every time the Note changed hands, that one-time Note-holder would be permanent invested with indemnity rights, regardless of whether they still possessed the Loans that are the subject of the indemnity agreement. This makes no sense and would also open Sellers up to potential indemnity claims from multiple subsequent note-holders.

### C.    All Claims Assigned to LBHI by LBB and Fannie Mae Are Barred by the Statute of Limitations.

LBHI also purports to possess claims against Sellers for breach of warranty based upon the Assignment Agreement and the Settlement Agreement. However, the Purchase Advise statements supplied by LBHI in connection with its claims against Sellers conclusively establish that all loans giving rise its Breach of Warranty Claims were sold by Sellers to LBB between April 18, 2005 and November 21, 2007. See *Exhibit I* (copies of the Purchase Advise statements) to the Motions. It is well settled that a breach of warranty claim arising out of a loan purchase agreement against a mortgage loan originator occurs at the time the loans are delivered to the purchaser because the representations and warranties were breached at that time as they were false when first made. *See*, e.g., *ACE Sec. Corp. v. DB Structured Prods., Inc., 112* A.D.3d 522, 523 (N.Y. App. Div. 1st Dep't 2013); *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.,* 793 F. Supp. 2d 1189 (W.D. Wash. 2011). Therefore, as the Breach of Warranty Claims accrued upon the delivery of these loans to LBB, by November 21, 2013, the six-year statute of limitations had expired as to all Sellers' loans.[13]

---

[13] The statute of limitations is considered a statute of repose in New York. *Ely-Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399, 402 (1993). "[T]he Statute runs from the time of the breach though no damage occurs until later." (6 Williston, Contracts § 2004, at 5641 [rev. ed. 1938], (quoted in McLaughlin, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C203:1, at 143)). New York law defines breach as when the party "*possesses* the legal right to demand payment" or when it *first* could have made the demand. *See e.g.. State v. City of Binghamton,* 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive Warehouse, Inc. v. American Zurich Insurance Co.,* 2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney). *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc., No.* 13 CIV. 6482 PAC, 2014 WL 3819356, at *4 (S.D.N.Y. Aug. 4, 2014) (citing *Ace Sec. Corp. Home Equity Loan Trust, Series 2007 – HE3 v. DB Structured Prods., Inc.,* No. 13 CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar 20, 2014)); *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.,* No. 12-CV-6168, 2014 WL 1259630, at *3. Per New York law, the cause of action does <u>not</u> accrue when party actually makes a demand, chooses to seek a remedy, discovered the alleged breach, or

According to LBHI, this court has previously rejected the argument that LBHI's indemnification claims are untimely because they accrued when LBB purchased the loans. *Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co.*, Adv. Proc. No. 14-02392-SCC, Feb. 17, 2015 Hearing Tr. at 73-74. LBHI further contends that this court previously held that LBHI's indemnification claims under loan purchase agreements with Sellers did not accrue until LBHI's indemnification liability to a third party became fixed. *Id.* However, regardless of the Court's ruling at the February 17, 2015 Hearing, the fact that there was a prior ruling in a case does not prevent a party from objecting to the previously denied claims on separate and unrelated grounds. *See* <u>*Adelphia Recovery Trust v. Bank of Am., N.A.*</u>, 390 B.R. 80, 89 (S.D.N.Y. 2008) <u>aff'd,</u> 379 F. App'x 10 (2d Cir. 2010).

LBHI is relying on *Lehman Bros. Holdings Inc. v. Universal Am. Mortgage Co., LLC*, No. 13-CV-00090-PAB-MJW, 2014 WL 5069409 (D. Colo. Oct. 9, 2014). *Universal Am. Mortgage Co., LLC* stated that, because the loans in question had been sold to a third party and LBHI allegedly suffered liability in 2014 when it settled with the Agencies, the claim for "contractual indemnification" accrued at the point LBHI settled, and not at the breach. *Id. at 2.*

---

when a party is injured. Further, when the breach involves a sum of money owed pursuant to a contract, the accrual is also when the "legal right to make a demand is originally possessed". *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.*, 991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014); *Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Products, Inc.*, 958 F. Supp. 2d 488, 500 (S.D.N.Y. 2013); *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997); *Structured Mortgage Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02 CIV. 3232 (SHS), 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003); *See e.g.. State v. City of Binghamton*, 1979, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dep't); *Hahn Automotive Warehouse, Inc. v. American Zurich Insurance Co.*, 2012, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 as cited in N.Y. C.P.L.R. § 206 (McKinney). Where a plaintiff alleges a representation or warranty ("R&W") is false, have found that the statute of limitations period runs when the R&Ws are breached because they were false when *made*. New York case law has also held that indemnity, as a contractual *remedy* for an alleged breach of contract, does not alter the limitations period. This is because New York does not recognize "pre-suit remedial provisions" as constituting separate promises which can serve as the basis for independent causes of action, such that the statute can be extended into perpetuity. *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.*, 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014); *Structured Mortgage Trust 1997-2 v Daiwa Fin. Corp., No. 02 42 Civ 3232*, 2003 WL 548868, at 2-3 (S.D.N.Y. 2003). New York case law has found there are no practical differences between remedies when they all seek monetary damages. *Deutsche Alt-A Sec. Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Products, Inc.*, 958 F. Supp. 2d 488, 501 (S.D.N.Y. 2013). Further, any interpretation by a court that a provision extends the statute of limitations as provided by statute or postpones the time from which a period of limitation is computed, is against public policy. *John J. Kassner* & Co. v. City of N.Y., 46 N.Y. 2d 544, 551 (1979).

*Universal Am. Mortgage Co., LLC* was premised on a New York case, *McDermott v. City of New York,* 50 N.Y.2d 211 (1980).   However, *McDermott* bases its reasoning on equitable indemnification principles – not express contractual indemnification principles.   Equitable indemnification and equitable implied indemnity are mutually exclusive, as outlined by American Jurisprudence 2d:

> In addition to express contractual indemnity, there also exists two other classes of noncontractual indemnity, those being:
>
> (1) **implied** contractual indemnity, also known as implied in fact indemnity, that arises from the contractual or legal relationship implied between the parties; and
> (2) equitable **implied** indemnity, also known as implied in law indemnity or common-law indemnity, that is created by a relationship implied in law.
>
> Where there is no express contractual duty to indemnify another, indemnity nevertheless may be recovered if the evidence establishes an implied contract or if one party is exposed to liability by the action of another party who, in law or in equity, should make good the loss of the other.   Implied indemnity claims are distinct, separate causes of action from any underlying contractual relationship between the parties.
>
> **Caution: The law will not imply a right of indemnity where the parties have entered into a written contract with express indemnification provisions.** *Am. Jur. 2d* Indemnity § 20 (1964).

The case cited for the foregoing rule of law is *Delle Donne & Associates, LLP v. Millar Elevator Service Co.,* 840 A.2d 1244 (Del. 2004), the relevant part of which states the following:

> The only conceivable basis on which Millar could assert a right to indemnity was by an express written agreement, **because implied indemnity was legally unavailable to Millar as a party to a written contract with Delle Donne**.

In the same way, in the present case, equitable implied indemnity is unavailable to LBHI as a party to an express written agreement, the LPA, with Sellers.   Reasoning from cases premised on implied equitable indemnity does not apply to the present case founded on express contractual indemnity.   Therefore, the *Universal Am Mortgage Co. Court*'s holding on accrual in express contractual indemnity cases is inapposite and should be disregarded.

The *Universal Am Mortgage Co. Court* further stated, "Although *LaPoint* involved a case where the indemnitee was litigating the underlying breach, **the principle that liability should be**

17

**fixed** before a cause of action for indemnification accrues applies with equal force where, as here, the indemnitee opts to avoid litigation via settlement or repurchase." *Lehman Bros. Holdings Inc. v. Universal Am. Mortgage Co., LLC*, No. 13-CV-00090-PAB-MJW, 2014 WL 5069409, at \*2 (D. Colo. Oct. 9, 2014)  However, "[w]hile courts recognize a distinction between indemnity agreements that call for an indemnity against liability and those against loss, **the distinction is irrelevant when the amount of the liability is known**." *Am Jur. 2d* § 25 (1964), citing *Amoco Oil Co. v. Liberty Auto and Elec. Co.* 262 Conn. 142, 810 A. 2d 259 (2002).  In the present case, LBHI has known the amount of its liability to Fannie Mae and Freddie Mac since 2009, when they made their claims in this Court and did not need to wait for the 2014 settlement with them to determine this amount.  Therefore, *Universal Am. Mortgage Co.*, LLC's reasoning is erroneous and LBHI's claim for indemnity accrued at the time of the underlying breach, i.e. the sale of defective loans to LBHI, and not at the time of settlement.

Under New York law, "Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Mas v. Two Bridges Assocs. by Nat'l Kinney Corp.,* 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990) (citing *McDermott v. City of New York,* 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)) (additional citations omitted); *accord Hernandez v. GPSDC (N.Y.) Inc.,* 2008 WL 220636, at \*7 (S.D.N.Y. Jan. 28, 2008). It is grounded in the "principle that 'every one is responsible for the consequences of his own negligence, **and if another person has been compelled ... to pay the damages** which ought to have been paid by the wrongdoer, they may be recovered from him.' " *Raquet v. Braun,* 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (quoting *Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola,* 134 N.Y. 461, 468, 31 N.E. 987 (1892)) (additional

citation omitted) (omission in original).  *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 789, 795 (S.D.N.Y. 2011).

Unlike the tort cases upon which equitable indemnity may be premised, where liability is unknown and unfixed until a trial or settlement decides the amount, contract cases are based upon orderly commercial transactions, supported by readily available business records, and do not need a trial or settlement to fix liability for statute of limitations purposes.  This is because the transactions in jeopardy of incurring losses through breach of contract already have a precise dollar value.  In the present case, the loans at issue were sold for an exact dollar amount fixed by contract.  Therefore, LBHI's and the *Universal Am Mortgage Co.* Court's reliance on the accrual rules of tort cases where the amount of liability was not fixed until trial or settlement forced payment is completely misplaced.

On that basis, Sellers respectfully submits that the entirety of LBHI's Indemnification and Breach of Warranty Claims are barred by the statute of limitations as a matter of law, and therefore the ADR Order is not applicable.

## III. CONCLUSION

For the foregoing reasons, the Motion should be affirmed in all respects.  Therefore, Sellers respectfully submit that this Court should vacate the ADR Order as to them.

//

//

19

**WHEREFORE,** Sellers requests an order granting its motion in its entirety, along with any other and further relief as the Court deems just and proper.

Dated: April 30, 2015

/s/ Evans Prieston
Evans Prieston, Esq
Tracy L. Henderson, Esq
(*Pro Hac Vice*)
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for:*
*American Bank FSB,*
*First Mortgage Corporation,*
*Gateway Bank, FSB,*
*Apex Home Loans Inc.,*
*Oaktree Funding Corporation, Republic*
*State Mortgage Company,*
*Directors Mortgage Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In Re:** | **Bankruptcy Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDING, INC.,** | **Chapter 11** |
| **Debtors,** | **AFFIDAVIT OF SERVICE BY FIRST CLASS MAIL** |

STATE OF NEW YORK)
COUNTY OF NEW YORK)

      EVANS PRIESTON, being duly sworn deposes and says:

      That I am over 18 years of age, not a party to this action, and reside in New York, New York.

      That on April 30, 2015, I served a true copy of a **AMERICAN BANK FSB, FIRST MORTGAGE CORPORATION, GATEWAY BANK, FSB, APEX HOME LOANS INC., OAKTREE FUNDING CORPORATION, REPUBLIC STATE MORTGAGE COMPANY AND DIRECTORS MORTGAGE'S Reply to Lehman Brothers Holdings, Inc.'s Opposition to Motion to Vacate the "Alternative Dispute Resolution Procedures for Indemnification Claims of the Debtors Against Mortgage Loan Seller, AMERICAN BANK" Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure and Memorandum of Law in Support Thereof,** upon the following person(s) by depositing a true copy in a properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of California.

Mailed to:    The Chambers of the Honorable
              Shelley C. Chapman
              One Bowling Green
              Courtroom 623
              New York, New York 1004

              Weil Gotshal & Manges LLP
              767 Fifth Avenue
              New York, New York 10153
              Attn:  Richard P. Krasnow, Esq.
                     Lori R. Fife, Esq.
                     Shi Y. Waisman, Esq.
                     Jacqueline Marcus, Esq.

United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attn:   Andy Velez-Rivera, Esq.
        Paul Schwartzbert, Esq.
        Brian Masumoto, Esq.
        Linda Riffkin, Esq.
        Tracy Hope Davis, Esq.

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn:   Dennis F. Dunne, Esq.
        Dennis O'Donnell, Esq.
        Even R. Fleck, Esq.

Wollmuth Maher & Deautsche LLP
500 Fifth Avenue
New York, New York 10110
Attn:   James Lawlor, Esq.
        Adam Bialek, Esq.


_____/s/ Evans Prieston_____
EVANS PRIESTON