Arthur J. Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-4003
Phone:  (212) 556-2100
Facsimile:  (212) 556-2222
asteinberg@kslaw.com
sdavidson@kslaw.com

*Attorneys for Lehman Commercial Paper Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **Case No. 08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

--------------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE BANKRUPTCY CODE
FOR APPROVAL OF SETTLEMENT AGREEMENT AMONG LEHMAN
COMMERCIAL PAPER INC., FIDELITY NATIONAL TITLE INSURANCE
COMPANY AND FIRST AMERICAN TITLE INSURANCE COMPANY**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated May 6,

2015 (the "Motion"), of Lehman Commercial Paper Inc. ("LCPI"), pursuant to Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11

of the United States Code for approval of a settlement agreement among LCPI, Fidelity National

Title Insurance Company ("Fidelity") and First American Title Insurance Company ("First

American"), as more fully described in the Motion, will be held before the Honorable Shelley C.

Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the

Southern District of New York, Courtroom 623, One Bowling Green New York, New York

10004 (the "Bankruptcy Court") on **June 9, 2015 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at *http://www.nysb.uscourts.gov*) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (with two hard-copies delivered directly to Chambers), and shall be served upon:    (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (b) King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036 Attn: Arthur Steinberg, Esq. and Scott Davidson, Esq., attorneys for LCPI; (c) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014 Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea Schwartz, Esq.; (d) Miller Starr Regalia, 1331 North California Boulevard, 5th Floor, Walnut Creek, CA 94596, Attn: Tara Castro Narayanan, Esq., attorneys for Fidelity; (e) Day Pitney LLP, One Audubon Street, New Haven, CT 06511, Attn: Joshua W. Cohen, Esq., attorneys for Fidelity; (f) Boutin Jones Inc., 555 Capitol Mall, Suite 1500, Sacramento, CA 95814, Attn: Michael T. Fogarty, Esq., attorneys for First American; and (g) Smiley Wang-Ekvall LLP, 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626, Attn: Robert S. Marticello, Esq. attorneys

for the SunCal Trustee (as defined in the Motion); so as to be actually received no later than

**June 2, 2015 at 5:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that, if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that any party objecting to the relief requested in the Motion is required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 6,  2015
     New York, New York

       */s/ Arthur J. Steinberg*
       Arthur J. Steinberg
       Scott Davidson
       KING & SPALDING LLP
       1185 Avenue of the Americas
       New York, New York 10036-4003
       Phone:  (212) 556-2100
       Facsimile:  (212) 556-2222
       asteinberg@kslaw.com
       sdavidson@kslaw.com

       *Attorneys for Lehman Commercial Paper Inc.*

**Hearing Date: June 9, 2015 at 10:00 a.m. (ET)**
**Objection Deadline: June 2, 2015 at 5:00 p.m. (ET)**

Arthur J. Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-4003
Phone:  (212) 556-2100
Facsimile:  (212) 556-2222
asteinberg@kslaw.com
sdavidson@kslaw.com

*Attorneys for Lehman Commercial Paper Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **Case No. 08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

--------------------------------------------------------------------x

**MOTION PURSUANT TO RULE 9019 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**AND SECTION 105(a) OF THE BANKRUPTCY CODE**
**FOR APPROVAL OF SETTLEMENT AGREEMENT AMONG LEHMAN**
**COMMERCIAL PAPER INC., FIDELITY NATIONAL TITLE INSURANCE**
<u>**COMPANY AND FIRST AMERICAN TITLE INSURANCE COMPANY**</u>

## TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................................ 1

Relief Requested ..................................................................................................................... 4

Relevant Background .............................................................................................................. 4

Jurisdiction ............................................................................................................................. 8

Summary of Terms of the Settlement Agreement ................................................................... 8

Basis for Relief Requested ...................................................................................................... 11

Notice ..................................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page**

### Cases

*Case v. Los Angeles Lumber Prods. Co.*,
    308 U.S. 106 (1939) ............................................................................................................ 11

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
    699 F.2d 599 (2d Cir. 1983) .............................................................................................. 11

*In re Best Products*,
    165 B.R. 35 (Bankr. S.D.N.Y. 1994) ............................................................................... 11

*In re Hibbard Brown & Co., Inc.*,
    217 B.R. 41 (Bankr. S.D.N.Y. 1998) ............................................................................... 11

*In re Spielfogel*,
    211 B.R. 133 (Bankr. E.D.N.Y. 1997) ............................................................................. 11

*Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*,
    2006 U.S. Dist. LEXIS 85691 (S.D.N.Y. Nov. 16, 2006) ................................................ 12

*Nellis v. Shugrue*,
    165 B.R. 115 (S.D.N.Y. 1994) ................................................................................... 11, 12

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ......................................................................................................... 11

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
    134 B.R. 499 (Bankr. S.D.N.Y. 1991) ............................................................................. 11

### Other Authorities

United States Code
    Title 11, Chapter 11 ...................................................................................................... 4, 5
    Title 11, Section 105(a) .................................................................................................. 1, 4
    Title 28, Section 1334 ........................................................................................................ 8
    Title 28, Section 1408 ........................................................................................................ 8
    Title 28, Section 1409 ........................................................................................................ 8
    Title 28, Section 157 .......................................................................................................... 8
    Title 28, Section 157(b)(2) ................................................................................................. 8

## Rules

Federal Rule of Bankruptcy Procedure

Rule 2002 ........................................................................................................................... 13
Rule 1015(b) ........................................................................................................................ 5
Rule 9019 ............................................................................................................................. 1
Rule 9019(a) .................................................................................................................... 4, 11

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Commercial Paper Inc. ("LCPI," together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors", and collectively with their non-debtor affiliates, "Lehman"), files this motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") (the "Motion") and respectfully represents:

### Preliminary Statement

1.      By this Motion, LCPI seeks the Court's approval of an agreement (the "Settlement Agreement") that would resolve an outstanding title insurance coverage and indemnification dispute between (a) on the one hand, LCPI, in its individual capacity and as administrative agent for the first-position secured lenders (the "First Lien Lenders") to the SunCal Debtors (defined below),[1] and (b) on the other hand, Fidelity National Title Insurance Company ("Fidelity") and First American Title Insurance Company ("First American," together with Fidelity, the "Insurers," and collectively with LCPI, the First Lien Lenders, and Fidelity, the "Parties").  As described below, Fidelity had issued certain title insurance policies (as amended, the "First Loan Policies") to LCPI for the benefit of the First Lien Lenders with respect to various parcels of real property (the "Properties") previously owned by the SunCal Subsidiary Debtors (defined below).  Certain holders of mechanic's liens and other claims asserted interests in the Properties and claimed priority over the First Lien Lenders, causing LCPI to tender these claims for defense and indemnity under the First Loan Policies.  A dispute has arisen over, among other things, the extent of coverage and indemnity obligations under the First Loan

---

[1]  LCPI also is one of the First Lien Lenders.

1

Policies and the Insurers' handling of claims tendered for coverage under those policies (the "Coverage Dispute").

2.      The Settlement Agreement and the settlement it memorializes, which are contingent on approval by this Court and by the United States Bankruptcy Court for the Central District of California (Judge Erithe A. Smith) (the "California Bankruptcy Court"), will (a) resolve the Coverage Dispute and various enumerated claims that were or could have been asserted in LCPI's chapter 11 case, and (b) permit several key issues in the chapter 11 bankruptcy cases of LBREP/L-SunCal Master I LLC (the "SunCal Parent Debtor") and certain of its subsidiaries (collectively, the "SunCal Subsidiary Debtors," and together with the SunCal Parent Debtor, the "SunCal Debtors"), see Lead Case No. 8:08-bk-15588-ES (Bankr. C.D. Cal.), to be resolved, thereby facilitating further distributions to the First Lien Lenders in those cases. The net benefit of the Settlement to the First Lien Lenders is approximately $7 million; LCPI holds approximately 30.23% of the First Lien Lender claims.

3.      In brief, these results are to be obtained by a payment to the Insurers of $800,000 from the approximately $72 million in gross proceeds realized from the sale of the Properties previously owned by the SunCal Subsidiary Debtors.  After this payment, the balance of those gross sales proceeds, subject to previously approved disbursements and sharing terms with the SunCal Trustee,[2] will be paid over to LCPI for the benefit of the First Lien Lenders.

4.      In resolving all of the underlying mechanic's liens and other claims asserting an interest in the Properties senior to the interests of the First Lien Lenders, the Insurers have paid settlements and incurred expenses substantially in excess of the $800,000 they will receive under

---

[2]   As used in this Motion, the "SunCal Trustee" refers both to the chapter 11 trustee that was appointed in the SunCal Debtors' chapter 11 cases, and the liquidating trustee that was appointed pursuant to the SunCal Debtors' confirmed reorganization plan as the context requires.  The same person, Alfred H. Siegel, served as the chapter 11 trustee and also is serving as the liquidating trustee for the SunCal Debtors.

the proposed settlement.[3]  Consequently, the $800,000 settlement payment to the Insurers, which represents slightly more than 10% of the approximately $7,800,000 which is being held collectively by LCPI as the Carve Out (as defined below) and by the SunCal Trustee in the Reserves (as defined below), is a fair and reasonable resolution of the Coverage Dispute and is well within the range of possible litigation results were the Coverage Dispute litigated. Litigation of the Coverage Dispute would delay the distributions of the Carve Out and the Reserves for months (or years) and could cost hundreds of thousands of dollars.  Entering into and performing under the Settlement Agreement, therefore, represents a sound exercise of business judgment by LCPI.   This Court, therefore, should grant this Motion and approve the Settlement Agreement.  A copy of the Settlement Agreement is attached hereto as Exhibit 1.

5.      Furthermore, as noted above, the Settlement Agreement is conditioned on approval by the California Bankruptcy Court.  LCPI and the SunCal Trustee are contemporaneously filing a motion in that Court seeking approval of the Settlement Agreement and authority to make final distributions of (a) the reserve amounts still being held by the SunCal Trustee to cover potential mechanic's lien and other claims that asserted priority over the position of the First Lien Lenders and (b) funds received by LCPI, from distributions previously made by the SunCal Trustee from the Reserves and currently being held by LCPI to secure a potential payment obligation to the Insurers if the Coverage Dispute had been resolved entirely against LCPI's interests and the interests of the First Lien Lenders.  The SunCal Trustee and LCPI hold these referenced funds pursuant to, and will disburse these funds consistent with the terms of, the confirmed plan of reorganization in the SunCal Debtors' chapter 11 cases and the

---

[3]   The Insurers have paid about $5.4 million to holders of mechanic's liens and other claims and have represented that they have incurred more than $2.0 million in costs and fees doing so, such that their demand for Reimbursements (defined below) would equal or exceed $7.8 million should they prevail in the Coverage Dispute.

Interim Funding Agreement described below.  The Interim Funding Agreement was previously approved both by this Court and by the California Bankruptcy Court.

## Relief Requested

6.       By this Motion, LCPI seeks approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a) and section 105(a) of the Bankruptcy Code, and requests that such approval be immediately effective and enforceable so that funds can be disbursed to LCPI as soon as possible.

## Relevant Background

7.       On January 19, 2006, LCPI, as agent for the First Lien Lenders, Lehman Brothers Inc., as arranger under the agreement, and the SunCal Parent Debtor entered into a secured first-lien loan arrangement with an original principal amount of $235,000,000.  To secure repayment of this loan, among other things, the SunCal Subsidiary Debtors executed deeds of trust (the "First Deeds of Trust") against their formerly owned real property (collectively, the "Properties") in favor of LCPI.  Fidelity contemporaneously issued the First Loan Policies covering the First Deeds of Trust.[4]

8.       On September 10 and 11, 2008, Gramercy Warehouse Funding I LLC filed involuntary petitions for relief under chapter 11 of the Bankruptcy Code against the SunCal Debtors in the California Bankruptcy Court.  On October 30, 2008, orders for relief were entered in the SunCal Debtors' chapter 11 cases (the "SunCal Chapter 11 Cases").[5]  On that same day, the California Bankruptcy Court entered an order appointing the SunCal Trustee the chapter 11 trustee in each of the SunCal Chapter 11 Cases.

---

[4]   First American provided co-insurance under the First Loan Policies.

[5]   For a more thorough description of the events leading up to the SunCal Chapter 11 Cases, please refer to the Interim Funding Agreement Motion (defined below).

9.     Commencing on September 15, 2008, and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.   On October 5, 2008, LCPI commenced its voluntary chapter 11 case under the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

10.     Pursuant to the confirmed *Second Amended Chapter 11 Plan (Dated April 21, 2011)* for the SunCal Debtors (the "SunCal Plan"), the SunCal Trustee, LCPI, and Fidelity were authorized to commence actions to resolve disputes concerning the validity, priority, or extent of mechanic's lien claims ("Mechanic's Lien Claims") which asserted a priority senior to LCPI's First Deeds of Trust.  Pursuant to the SunCal Plan, the SunCal Trustee established appropriate reserves (the "Reserves")[6] to assure that proceeds from the sale of the Properties would be available to pay Mechanic's Lien Claims in the event that any such claim was determined to be (i) senior to the First Deeds of Trust, and (ii) not covered by any First Loan Policies, from which payment would otherwise be made.  Fidelity reserved rights to dispute coverage and any indemnity obligations under the First Loan Policies under a number of different legal theories.

11.     Because it was anticipated that it would take time to resolve the Mechanic's Lien Claims and the Coverage Dispute, LCPI negotiated an interim agreement (the "Interim Funding Agreement") with the SunCal Trustee and the Insurers pending resolution of the Coverage Dispute.  The Interim Funding Agreement, among other things, has provided funding to resolve Mechanic's Lien Claims and provided for the distribution of any portion of the Reserves that

---

[6]   The Reserves were established on a claim-by-claim basis in amounts approved by the California Bankruptcy Court plus an unallocated cushion amount of $500,000.

would not be necessary to reimburse the Insurers for funding the resolution of the Mechanic's Lien Claim should the Insurers prevail in the Coverage Dispute.[7]

12.     Generally speaking, the Interim Funding Agreement provides that: (i) the Insurers will pay the amount determined to be due on a Mechanic's Lien Claim upon its settlement or otherwise (each, a "Resolved Mechanic's Lien Claim"), subject to a full reservation of rights with respect to the Coverage Dispute; and (ii) the portion of the Reserves established for each Resolved Mechanic's Lien Claim will be disbursed (each such disbursement, a "Reserve Distribution") and allocated as follows: (a) an amount equal to the First Lien Lenders' potential reimbursement obligation to the Insurers relating to each Resolved Mechanic's Lien Claim would be set aside (a "Carve Out") from the Reserve Distribution made to LCPI on account of that Resolved Mechanic's Lien Claim and held as security for any future reimbursement obligation as ultimately determined by resolution of the Coverage Dispute,[8] (b) 3.5% of the remaining balance of the Reserve Distribution would be retained by the SunCal Trustee free and clear of claims as provided for by the Plan until the SunCal Trustee's Participation has been fully funded,[9] and (c) the remaining balance of the Reserve Distribution would be paid to the First Lien Lenders.  In addition, 3.5% of any portion of the Carve Out paid over to the First Lien

---

[7]  One settlement with claimant Superior Pipelines in the amount of $1.8 million was concluded before the Interim Funding Agreement was finalized.  The Insurers funded one million seven hundred and forty thousand dollars of that settlement, and the SunCal Trustee has held that amount in the Reserves since that time.  It was not disbursed to LCPI under the Interim Funding Agreement, and then held as part of the Carve Out discussed below.  If, however, the Insurers were to prevail in the Coverage Dispute, this amount would be available to satisfy any valid claim by the Insurers for reimbursement of the settlement payment they made.

[8]  This reimbursement obligation (defined in the Interim Funding Agreement as "Reimbursements") could include both amounts paid by the Insurers to the holder of the Resolved Mechanic's Lien Claim and the costs incurred by the Insurers in obtaining the resolution, by settlement or otherwise, of the Mechanic's Lien Claims.

[9]  LCPI's authority to share proceeds from the sale of the Properties was negotiated as part of a settlement with the SunCal Debtors' estates regarding various claims they asserted against LCPI.  That settlement was approved by this Court on September 29, 2010.  See Order Approving that Certain Compromise By and Among Lehman Commercial Paper, Inc., Alfred H. Siegel, as Chapter 11 Trustee for the SunCal Debtors, and the Official Committee of Unsecured Creditors in the SunCal Bankruptcy Cases [Dkt. No. 11683] and the underlying motion seeking entry of that order [Dkt. No. 11153].

Lenders as part of any resolution of the Coverage Dispute would then be distributed to the SunCal Trustee free and clear of claims as provided for by the Plan until the SunCal Trustee's Participation has been fully funded. The balance of the Carve Out would be retained by the First Lien Lenders. On September 2, 2011, LCPI filed its motion to approve the Interim Funding Agreement (the "Interim Funding Agreement Motion") in this Court [Dkt. No. 19704], and by order dated September 15, 2011, this Court approved the Interim Funding Agreement Motion. Dkt. No. 20020. The California Bankruptcy Court also approved the Interim Funding Agreement. Case No. 8:08-bk-15588-ES (Bankr. C.D. Cal.), Dkt. No. 863.

13.     Since approval of the Interim Funding Agreement by this Court and the California Bankruptcy Court, distributions of the Reserves have been made and set aside pursuant to the Interim Funding Agreement as Mechanic's Lien Claims have become Resolved Mechanic's Lien Claims.

14.     At this time, all Mechanic's Lien Claims have become Resolved Mechanic's Lien Claims, and all but approximately $2,388,640 of the Reserves have been disbursed in accordance with the Interim Funding Agreement. The $2,388,640 remaining in the Reserves consists of the unallocated cushion of $500,000 (see footnote 6), approximately $1.8 million related to the settlement of a particular claim not covered by the Interim Funding Agreement (see footnote 7) and accumulated interest.

15.     Since 2011, LCPI and the Insurers have tried various times to resolve the Coverage Dispute. LCPI and the Insurers voluntarily dismissed without prejudice certain litigation initiated by LCPI in the United States District Court for the Central District of California related to the Coverage Dispute (the "Coverage Action") in August of 2013 after Fidelity agreed to fund the settlement of, and to waive claims for reimbursement with respect to,

the largest Mechanic's Lien Claim (asserted by Oak Valley Partners). LCPI and the Insurers hoped that once the remaining Mechanic's Lien Claims were resolved or close to being resolved, a consensual resolution of the Coverage Dispute could be more readily achieved.

16. And, indeed, as the unresolved Mechanic's Lien Claims dwindled to basically one outstanding claim, LCPI and the Insurers engaged in mediation before Robert S, Mann of ADR Services, Inc., of Los Angeles, California (see http://www.adrservices.org/neutrals/robert-mann.php), and were able to resolve the Coverage Dispute on the terms set forth in the Settlement Agreement and described below.

## Jurisdiction

17. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

18. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary of Terms of the Settlement Agreement[10]

19. Pursuant to the Interim Funding Agreement, the Reserves and the Carve Out were set aside pending the resolution of (i) the Mechanic's Lien Claims and (ii) the Coverage Dispute. As of February 25, 2015, all of the Mechanic's Lien Claims had been resolved, approximately $2,388,640 remained undisbursed in the Reserves and the balance of the Carve Out was approximately $5,500,000.

20. Pursuant to the Settlement Agreement, with respect to the remaining Reserves, (i) the Trustee's Participation shall be distributed to the SunCal Trustee; (ii) $400,000 shall be distributed to Fidelity, and $400,000 shall be distributed to First American (collectively, the "Settlement Amount"), which amounts are acknowledged by LCPI and the Insurers to be

[10] In the event of any inconsistency between the Settlement Agreement and this Motion, the terms of the Settlement Agreement shall control.

"Reimbursements," as defined by the Interim Funding Agreement; and (iii) all remaining amounts shall be distributed to LCPI on behalf of the First Lien Lenders.

21.    With respect to the Carve Out, the funds will be distributed in accordance with the terms of the Interim Funding Agreement and the SunCal Plan as follows:  (i) the Trustee's Participation shall be distributed to the SunCal Trustee; and (ii) all remaining amounts shall be distributed to LCPI on behalf of the First Lien Lenders.

22.    In exchange for payment of the Settlement Amount and other consideration received under the Settlement Agreement, the Insurers each agree to, among other things, expressly waive any and all claims to or continuing interests in the Reserves and the Carve Out.

23.    The Parties have also each agreed to fully waive, release and discharge each other Party from, among other things, (i) any claims related to or arising from the Properties or the First Loan Policies, (ii) any claims for Reimbursements and (iii) any claims that the Parties did assert or could have asserted in or in connection with (a) the Coverage Action or (b) various motions or other pleadings filed in these chapter 11 cases and expressly listed in the Settlement Agreement.

24.    The Settlement Agreement is conditioned upon the approval of the Settlement Agreement by both this Court and the California Bankruptcy Court.  The "Effective Date" for the Settlement Agreement shall be the date on which the latest of the following occurs (i)  an order by this Court approving the Settlement Agreement and the terms of the settlement among the Parties contained therein becomes a "Final Order" (as that term is defined in the Interim Funding Agreement); and (ii)  an order by the California Bankruptcy Court approving the Settlement Agreement and the terms of the settlement among the Parties contained therein becomes a "Final

Order" (as that term is defined in the Interim Funding Agreement). All distributions required by the Settlement Agreement must be made within fourteen days of the Effective Date.

25.     At such time as the proposed settlement has been approved by both this Court and the California Bankruptcy Court, Fidelity and LCPI have agreed that the following pleadings filed in the above-captioned case shall be deemed withdrawn: *Fidelity National Title Insurance Company's Motion to Compel Compliance with Requirements of Title Insurance Policies Insuring Deeds of Trust Held by the Bankruptcy Estate of Debtor Lehman Commercial Paper Inc. Pursuant to Sections 105, 362, 365 and 1107 of the Bankruptcy Code* [Dkt. No. 11513]; *Objection to Fidelity National Title Insurance Company's Motion to Compel Compliance with Requirement of Title Insurance Policies Insuring Deeds of Trust Held By the Bankruptcy Estate of Debtor Lehman Commercial Paper Inc. Pursuant to Sections 105, 362, 365 and 1107 of the Bankruptcy Code* [Dkt. No. 14398]; and *Joinder of the Official Committee of Unsecured Creditors to LCPI's Objection to Fidelity National Title Insurance Company's Motion to Compel Compliance With Requirements of Title Insurance Policies Insuring Deeds of Trust Held By the Bankruptcy Estate of Debtor Lehman Commercial Paper Inc. Pursuant to Sections 105, 362, 365 and 1107 of the Bankruptcy Code* [Dkt. No. 14462].

## Basis for Relief Requested

26.    Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts "to approve settlements if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Id.*; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

27.    Compromises are "a normal part of the process of reorganization." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  Compromises may be effected separately during the reorganization proceedings or in the body of the plan itself.  *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. at 758.  The decision to approve a particular compromise lies within the sound discretion of the Court.  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The Court's discretion may be exercised "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and in the best interest of the [debtor's] estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).  The court must apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.  And, in deciding whether a particular compromise falls within the

"range of reasonableness," courts consider (i) the probability of success in the litigation; (ii) the difficulties associated with collection; (iii) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and (iv) the paramount interests of the creditors. *Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *22 (S.D.N.Y. Nov. 16, 2006); *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

28.    Here, the Settlement Agreement will benefit LCPI in its role as administrative agent (and as a First Lien Lender) by allowing the distribution of certain amounts to LCPI on behalf of the First Lien Lenders.  In addition, the Settlement Agreement will resolve the Coverage Dispute, facilitate disbursements in the SunCal Chapter 11 Cases and eliminate the assertion of potential claims in these cases.  The disbursement of the Carve Out and Reserves is one of the primary tasks remaining to be completed in the SunCal Chapter 11 Cases.

29.    Finally, the terms of the Settlement Agreement are well within the range of potential litigated results involving the Coverage Dispute.  Although LCPI vigorously contends that the Insurers have no legal or factual basis to deny coverage under the First Loan Policies, if a court were to conclude otherwise, an amount equal to the entire approximately $7,800,000 which is being held collectively by LCPI as the Carve Out and by the Trustee in the Reserves (subject only to the Trustee's Participation) would be paid over to the Insurers.[11]  Conversely, if LCPI were to prevail in litigation over the Coverage Dispute, it would receive, for the benefit of the First Lien Lenders, the entirety of this $7,800,000 (subject to the Trustee's Participation) but not without incurring substantial additional fees and expenses in the litigation of this complex

---

[11] The Insurers have represented that, taking into account the total costs and expenses that they have incurred, their demand for Reimbursements would equal or exceed $7,800,000.

dispute.  Under these circumstances, paying the Insurers $800,000, or just over 10% of the amounts they could receive if they prevailed in the Coverage Dispute, reflects an appropriate settlement payment to avoid the risks and uncertainties of litigation of the Coverage Dispute.

30.    For the reasons stated above, and in LCPI's informed business judgment, the compromises set forth in the Settlement Agreement are a "fair and equitable" resolution of the issues described herein, and are well within the "range of reasonableness."

## Notice

31.    No trustee has been appointed in these chapter 11 cases.  LCPI has served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [Dkt. No. 9635] on:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Attorney for the Southern District of New York; (e) counsel to the Insurers; (f) counsel to the SunCal Trustee; and (g) all persons and entities that have formally requested notice by filing a written request for notice pursuant to Federal Rule of Bankruptcy Procedure 2002 and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.  In light of the nature of the relief requested, LCPI respectfully submits that no further notice is necessary.

WHEREFORE, LCPI respectfully requests that the Court (i) enter an order, substantially in the form annexed as Exhibit 2, approving the Settlement Agreement, and (ii) grant such other and further relief as is just and proper.

Dated:  New York, New York
May 6, 2015

 _/s/ Arthur J. Steinberg_____
Arthur J. Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-4003
Phone:  (212) 556-2100
Facsimile:  (212) 556-2222
asteinberg@kslaw.com
sdavidson@kslaw.com

*Attorneys for Lehman Commercial Paper Inc.*