# **EXHIBIT 1**

EXECUTION COPY

## SETTLEMENT AGREEMENT AND RELEASE

The parties to this Settlement Agreement and Release (the "Agreement") are (1) Lehman Commercial Paper Inc. ("LCPI") individually and as Administrative Agent for the First Lien Lenders as defined in the Interim Funding Agreement described below, (2) Fidelity National Title Insurance Company ("Fidelity"), and (3) First American Title Insurance Company ("First American"). LPCI, Fidelity, and First American are collectively referred to as the "Parties" and individually referred to as a "Party."

## RECITALS

WHEREAS, Fidelity issued the following policies of title insurance to LCPI with respect to certain properties owned or formerly owned by various SunCal entities commonly known as McAllister Ranch, McSweeny Farms, and Summerwind Ranch (the "Properties"):

- ➢ ALTA Loan Policy (10-17-70 and 10-17-84) No. 27-44-94-120334 (also referred to in the body of the Policy as No. 27-44-92-120334), dated January 19, 2006, naming as insured LCPI and its successors and/or assigns as their interests may appear, with policy limits of $235 million;

- ➢ ALTA Loan Policy (10-17-70 and 10-17-84) No. 27-44-92-120335, dated January 19, 2006, naming as insured LCPI and its successors and/or assigns as their interests may appear, with policy limits of $85 million;

- ➢ Three ALTA Loan Policies, Nos. CAFNT0925-0925-0199-0259902517 (McAllister Ranch), CAFNT0925-0925-0199-0259902518 (McSweeny Farms), and CAFNT0925-0925-0199-0259902519 (Summerwind Ranch), each dated February 9, 2007, naming as insured LCPI, as administrative agent, and its successors and/or assigns as their interests may appear, with policy limits of $25 million each; and

- ➢ ALTA 1992 Loan Policy No. 27-042-92 3657331.

The policies specified above, and no others, are referred to herein collectively as the "Title Policies."

WHEREAS, First American agreed to co-insure certain of the Title Policies.

WHEREAS, LCPI (1) tendered numerous claims under the Title Policies, including but not limited to mechanic's lien claims, the claim of Oak Valley Partners, and other claims allegedly secured by the Properties (the "Claims") and (2) challenged the claims handling process with respect to the Claims.

WHEREAS, on September 10, 2008, an involuntary petition for relief under the Bankruptcy Code was filed against LBREP/L-SunCal Master I, LLC, as Case No. 08-15588-ES; and, on September 11, 2008, involuntary petitions for relief under the Bankruptcy Code were filed against LBREP/L-SunCal McAllister Ranch LLC, as Case No. 08-15637-ES, LBREP/L-SunCal McSweeny Farms LLC, as Case No. 08-15639-ES and LBREP/L-SunCal Summerwind Ranch LLC, as Case No. 08-15640-ES (collectively, the referenced cases are referred to herein as the "SunCal Bankruptcy"), all in the United States Bankruptcy Court for the Central District of California (the "SunCal Bankruptcy Court").

WHEREAS, on September 15, 2008, Lehman Brothers Holdings Inc. and various affiliates including LCPI filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Lehman Bankruptcy Court"), which cases are jointly administered under Case No. 08-13555 (SCC) (the jointly administered cases collectively are referred to herein as the "Lehman Bankruptcy").

WHEREAS, on September 21, 2010, Fidelity filed in the Lehman Bankruptcy its *Motion to Compel Compliance With Requirements of Title Insurance Policies Insuring Deeds of Trust Held by the Bankruptcy Estate of Debtor Lehman Commercial Paper Inc. Pursuant to Sections 105, 362, 365 and 1107 of the Bankruptcy Code* [Docket ID 11513][1] (the "Motion to Compel").

WHEREAS, on February 9, 2011, LCPI filed in the Lehman Bankruptcy the *Objection to Fidelity National Title Insurance Company's Motion to Compel Compliance With Requirements of Title Insurance Policies Insuring Deeds of Trust Held by the Bankruptcy Estate of Debtor Lehman Commercial Paper Inc. Pursuant to Sections 105, 362, 365 and 1107 of the Bankruptcy Code* [Docket ID 14398] (the "Objection to Motion to Compel").

---

[1] Unless otherwise indicated, docket references are to the official case docket in the Lehman Bankruptcy.

WHEREAS, on February 14, 2011, the Official Committee of Unsecured Creditors appointed in the Lehman Bankruptcy filed the *Joinder of Official Committee of Unsecured Creditors to LCPI's Objection to Fidelity National Title Insurance Company's Motion to Compel Compliance With Requirements of Title Insurance Policies Insuring Deeds of Trust Held by the Bankruptcy Estate of Debtor Lehman Commercial Paper Inc. Pursuant to Sections 105, 362, 365 and 1107 of the Bankruptcy Code* [Docket ID 14462] (the "Joinder").

WHEREAS, in March, 2011, the Parties and Alfred H. Siegel, in his capacity as the duly appointed Chapter 11 Trustee in the SunCal Bankruptcy (the "SunCal Trustee") entered into an Interim Funding Agreement ("IFA") which was submitted to and approved by the SunCal Bankruptcy Court and the Lehman Bankruptcy Court.

WHEREAS, the Properties were sold by the SunCal Trustee as the representative of the estate in the SunCal Bankruptcy.

WHEREAS, on April 22, 2011, the SunCal Bankruptcy Court entered its Order Confirming the Chapter 11 Trustee's Second Amended Chapter 11 Plan ("SunCal Plan"), which Plan provided for the disposition of the proceeds of sale of the Properties.

WHEREAS, on November 11, 2011, the SunCal Bankruptcy Court entered its *Order Granting Liquidating Trustee's Motion to Establish Distribution Reserves For Mechanic Lien Claims and Authorize Interim Distributions Pursuant to the Second Amended Chapter 11 Plan (Dated April 21, 2011).*

WHEREAS, pursuant to the Order granting the Liquidating Trustee's Motion to Establish Distribution Reserves, , the SunCal Trustee segregated certain funds from the proceeds of the sale of the Properties and held those funds as "Project Reserves" for the benefit of alleged lien holders pending resolution of the Claims in accordance with the terms of the SunCal Plan.

WHEREAS, pursuant to the Order confirming the SunCal Plan, the terms of the SunCal Plan, and the Order granting the Liquidating Trustee's Motion to Establish Distribution Reserves, the SunCal Trustee became the liquidating trustee for the SunCal Bankruptcy estates and, among other things, he continued to hold the Project Reserves subject to the terms of the SunCal Plan.

WHEREAS, various Claims have been resolved by settlement or otherwise with the consent and cooperation of LCPI, Fidelity and First American (collectively, the "Settlements"). In accordance with the IFA, Fidelity and First American funded the Settlements.

WHEREAS, following approval of the Settlements, the Suncal Trustee has made various disbursements from the Project Reserves to LCPI with the approval of the SunCal Bankruptcy Court. In accordance with the IFA, LCPI has deposited certain funds it received from the Project Reserves into a "Carve Out Account," as that term is defined in the IFA, pending resolution of disputes between LCPI and Fidelity over coverage of the Claims.

WHEREAS, all Claims either have been disallowed by final order of the SunCal Bankruptcy Court or resolved by the Settlements. WHEREAS, on April 13, 2012, LCPI filed the action <u>Lehman Commercial Paper Inc. v. Fidelity National Title Insurance Company</u>, United States District Court, Central District of California, Southern Division, Case No. SACV 12-0570 JST (ANx) (the "Action"). The Action concerned both coverage of the Claims under the Title Policies and the alleged claims handling process of Fidelity with respect to those Claims.

WHEREAS, in 2013, the Parties stipulated to dismiss the Action without prejudice, and each Party reserved its rights to re-file the Action. Based on that stipulation, the Action was dismissed.

WHEREAS, on November 12, 2014, the Parties agreed to the terms on which they would settle their disputes related to the Properties, the Title Policies, the Claims, the alleged claims handling processes of Fidelity and First American with respect to those Claims, the Action, the Motion to Compel, the Objection to Motion to Compel and the Joinder.

WHEREAS, the Parties participated in mediation at which they reached a settlement as set forth in a written Memorandum of Settlement (the "Memorandum"). The Memorandum requires the parties to enter into a formal written agreement of settlement and release setting forth the settlement terms.

WHEREAS, this Agreement constitutes the formal written agreement of settlement and release described in the Memorandum.

WHEREAS, by this Agreement the Parties desire to resolve, in their entirety, all the disputes that exist between LCPI and Fidelity and all disputes that exist between LCPI and First American relating in any way to the Properties, the Title Policies, the Claims, the alleged claims handling process of Fidelity and First American with respect to those Claims, the Action, and to any claims, counter-claims, and cross-claims that LCPI, Fidelity and/or First American did assert or could have asserted in connection with the Action, the Motion to Compel, the Objection to Motion to Compel and/or the Joinder.

## AGREEMENT

Based on the foregoing and in exchange for the mutual promises below, and other good and valuable consideration, receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.     Coverage Resolution.  This Agreement constitutes a "Coverage Resolution," as defined in paragraph 2 of the IFA, between LCPI, Fidelity, and First American regarding their dispute over coverage of the Claims.

2.     Effective Date.  The "Effective Date" for this Agreement shall be the date on which the latest of the following occurs: (i)  an Order by the Lehman Bankruptcy Court approving this Agreement and the terms of the settlement among the Parties contained herein (the "Lehman Bankruptcy Court Order") becomes a "Final Order" (as that term is defined in the IFA); (ii)  an Order by the SunCal Bankruptcy Court approving this Agreement and the terms of the settlement among the Parties contained herein (the "SunCal Bankruptcy Court Order") becomes a "Final Order" (as that term is defined in the IFA).

3.     Carve Out.

(a)     Waiver Of Interest.  Upon payment of the Settlement Amount as defined in Section 4 below, the Insurers waive: (i) any and all claims to or interest in the Carve Out and/or the Carve Out Account, as those terms are defined in the IFA; (ii) any administrative priority claims against LCPI and any other Lehman Debtor, as that term is defined in the IFA, under Paragraph 8 of the IFA or otherwise arising out of or relating to the Properties, the Title Policies, the Claims, the alleged claims handling process of Fidelity and First American with respect to those Claims, the Action, and any claims,

counter-claims, and cross-claims that LCPI, Fidelity and/or First American did assert or could have asserted in connection with the Action, the Motion to Compel, the Objection to Motion to Compel and/or the Joinder; and (iii) any and all claims for or related to Reimbursements, as that term is defined in the IFA.

(b)  Distribution Of Carve Out.  Upon satisfaction of the Conditions to Agreement as described in paragraph 5, *infra*, the funds in the CarveOut Account shall immediately be distributed as follows:  (1) that portion due the SunCal Trustee for the Trustee's Participation (as defined in the SunCal Plan) shall be distributed to the SunCal Trustee, and (2) all remaining amounts shall be distributed to LCPI on behalf of the First Lien Lenders.  Without limiting any of the forgoing, the Parties further agree that, upon satisfaction of the Conditions to Agreement, LCPI shall no longer be obligated to set aside any funds for the Carve Out and may close the Carve- Out Account.

4.  Project Reserves Distribution.  Upon satisfaction of the Conditions to Agreement as described in paragraph 5, *infra*, and within fourteen (14) business days following the Effective Date, the remaining Project Reserves shall be distributed as follows:  (1) that portion due the SunCal Trustee for the Trustee's Participation shall be distributed to the SunCal Trustee, (2) $400,000 shall be distributed to Fidelity and $400,000 shall be distributed to First American (collectively the "Settlement Amount"), which amounts are acknowledged by the Parties to be "Reimbursements" as defined in the IFA, and (3) all remaining amounts shall be distributed to LCPI on behalf of the First Lien Lenders.  Upon payment of the Settlement Amount, Fidelity and First American expressly waive any and all claims to or continuing interests in the Project Reserves.

5.  Conditions to Agreement:  This Agreement is conditioned upon the approval of this Agreement by both the SunCal Bankruptcy Court and the Lehman Bankruptcy Court in the SunCal Bankruptcy and the Lehman Bankruptcy, respectively (the "Bankruptcy Court Approvals"), which approvals include the authorization of the payments from the CarveOut Account and Project Reserves as provided herein. LCPI shall promptly seek the Bankruptcy Court Approvals, and Fidelity and First American shall provide full cooperation to obtain said approvals.

6.   Cooperation:  The Parties will cooperate to effectuate the terms of this Agreement.  The Parties shall promptly prepare and execute documents as are reasonably necessary to effectuate the terms of this Agreement.

7.   Mutual Releases between LCPI and Fidelity:

The following mutual releases shall be effective upon approval of this Agreement in both the SunCal Bankruptcy and the Lehman Bankruptcy and upon payment of the Settlement Amount to Fidelity and to First American as set forth in paragraph 4 of this Agreement:

Excepting the obligations contained in this Agreement, LCPI and Fidelity, and each of them, hereby fully waive, relinquish, release and discharge each other party, and each of its former, present and future joint ventures, partnerships, parent and subsidiary and affiliate corporations, partners, principals, attorneys, agents, employees, insurers, stockholders, directors, predecessors, successors, assigns, heirs, executors, administrators and representatives, of and from, without limitation, any and all known and unknown claims, demands, controversies, damages, actions, causes of action, debts, liabilities, rights, contracts, costs (including attorneys' fees, costs and litigation expenses), indemnities, obligations and losses, which may presently exist or may hereafter arise or become known, in any way related to or arising from the Properties, the Title Policies, the Claims, the alleged claims handling process of Fidelity and First American with respect to those Claims, the Action, any claims, counter-claims, and cross-claims that LCPI, Fidelity and/or First American did assert or could have asserted in connection with the Action, the Motion to Compel, the Objection to Motion to Compel and/or the Joinder.

8.   Mutual Waivers by LCPI and Fidelity under Section 1542 of the California Civil Code:

The following mutual waivers shall be effective upon approval of this Agreement in both the SunCal Bankruptcy and the Lehman Bankruptcy and upon payment of the Settlement Amount to Fidelity and to First American as set forth in paragraph 4 of this Agreement:

LCPI and Fidelity have entered into this Agreement as a negotiated settlement of disputed claims.  With respect to LCPI's and Fidelity's respective releases set forth above, LCPI

and Fidelity expressly represent and warrant that they have read and understand fully the provisions of section 1542 of the Civil Code of California, which states as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Having been apprised of the statutory language of said section 1542, LCPI and Fidelity nevertheless elect to assume all risks for claims heretofore and hereafter arising, whether known or unknown, which are released herein, and expressly waive and relinquish all rights and benefits which they may have under section 1542 of the Civil Code of California.

9. <u>Mutual Releases between LCPI and First American</u>:

The following mutual releases shall be effective upon approval of this Agreement in both the SunCal Bankruptcy and the Lehman Bankruptcy and upon payment of the Settlement Amount to Fidelity and to First American as set forth in paragraph 4 of this Agreement:

> Excepting the obligations contained in this Agreement, LCPI and First American, and each of them, hereby fully waive, relinquish, release and discharge each other party, and each of its former, present and future joint ventures, partnerships, parent and subsidiary and affiliate corporations, partners, principals, attorneys, agents, employees, insurers, stockholders, directors, predecessors, successors, assigns, heirs, executors, administrators and representatives, of and from, without limitation, any and all known and unknown claims, demands, controversies, damages, actions, causes of action, debts, liabilities, rights, contracts, costs (including attorneys' fees, costs and litigation expenses), indemnities, obligations and losses, which may presently exist or may hereafter arise or become known, in any way related to or arising from the Properties, the Title Policies, the Claims, the alleged claims handling process of Fidelity and First American with respect to those Claims, the Action, any claims, counter-claims, and cross-claims that LCPI, Fidelity and/or First American did assert or could have asserted in connection with the Action, the Motion to Compel, the Objection to Motion to Compel and/or the Joinder

EXECUTION COPY

10. <u>Mutual Waivers by LCPI and First American under Section 1542 of the California Civil Code</u>:

The following mutual waivers shall be effective upon approval of this Agreement in both the SunCal Bankruptcy and the Lehman Bankruptcy and upon payment of the Settlement Amount to Fidelity and to First American as set forth in paragraph 4 of this Agreement:

LCPI and First American have entered into this Agreement as a negotiated settlement of disputed claims. With respect to LCPI's and First American's respective releases set forth above, LCPI and First American expressly represent and warrant that they have read and understand fully the provisions of section 1542 of the Civil Code of California, which states as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Having been apprised of the statutory language of said section 1542, LCPI and First American nevertheless elect to assume all risks for claims heretofore and hereafter arising, whether known or unknown, which are released herein, and expressly waive and relinquish all rights and benefits which they may have under section 1542 of the Civil Code of California.

11. <u>Clarification of Scope of Releases</u>. Notwithstanding anything to the contrary herein, Fidelity and First American do not intend to release and are not releasing any unsecured claims they may hold against the SunCal Bankruptcy Estate, whether such claims accrued to them originally or were acquired by assignment. Likewise, Fidelity and First American do not intend to release and are not releasing any claims which do not arise under or are not otherwise related to the Properties, the Title Policies, the Claims, the alleged claims handling process of Fidelity and First American with respect to those Claims, the Action, and any claims, counter-claims, and cross-claims that LCPI, Fidelity and/or First American did assert or could have asserted in connection with the Action, the Motion to Compel, the Objection to Motion to Compel and/or the Joinder.

12.  **Disputes between Fidelity and First American**.  Fidelity and First American have resolved their disputes with respect to the subject matter of this Agreement in a separate Settlement and Mutual Release of Claims.

13.  **No Admission of Liability**.  This Agreement, as entered into by the Parties, is solely for the purpose of compromising and settling the matters in dispute.  It does not constitute, nor shall it be construed as, an admission by any of the Parties of the truth or validity of any of the claims asserted.

14.  **Representations**.  The Parties hereto further represent, warrant and agree with each other as follows:

   A.   The Parties agree to execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such further instruments and documents as may be necessary in order to consummate this Agreement.

   B.   Each Party represents, warrants and agrees that there has been no assignment, sale or transfer of any claim, right or interest that the Party is releasing pursuant to this Agreement.  Each Party represents and warrants that it has obtained complete authority from any necessary third parties to enter into this Agreement.

   C.   The Parties acknowledge and represent that they are not entering into this Agreement on the basis of any promise or representation not expressed in this Agreement.

   D.   This Agreement has been read by each person executing this Agreement and each person executing this Agreement in a representative capacity is empowered to do so.

   E.   The Parties agree that any dispute regarding this Agreement, including the actions and documents contemplated hereby, shall be resolved by Robert Mann, mediator, ADR Services, Inc., 1900 Avenue of the Stars, Suite 250, Los Angeles, California, 90067.  If within sixty (60) days from the date such dispute arises Mr. Mann is either unavailable or unable for any reason to resolve the dispute, the provision of this subparagraph E shall be of no further force or effect.

15.  **Attorneys' Fees**.  Each Party shall bear its own fees and costs in connection with this Agreement.  In the event any action, suit or other proceeding (including a proceeding before

Robert Mann) is instituted to remedy, prevent or obtain relief from a breach of this Agreement, arising out of a breach of this Agreement, involving claims within the scope of the releases contained in this Agreement, or pertaining to a declaration of rights under this Agreement, the prevailing Party shall recover all of such Party's reasonable attorney's fee and costs, including expert witness fees, incurred in each and every such action, suit or other proceeding, including any and all appeals, or petitions therefrom.

16. <u>Governing Law</u>.  This Agreement shall be construed in accordance with and governed by the laws of the State of California.

17. <u>Integration</u>.  This Agreement constitutes a single, integrated written contract expressing the entire agreement concerning the subject matter of this Agreement between LCPI and Fidelity and between LCPI and First American, and there are no other agreements, written or oral, express or implied, between LCPI and Fidelity or between LCPI and First American with respect to the subject matter of this Agreement.

18. <u>Binding Effect</u>.  This Agreement shall be binding on and inure to the benefit of the Parties and the persons releasing or being released from claims in paragraphs 7 and 9 hereof.

19. <u>Execution in Counterparts</u>.  This Agreement may be executed in two or more counterparts each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and Agreement.

20. <u>Good Faith</u>.  The Parties agree that this Settlement was entered into in good faith pursuant to California Code of Civil Procedure, section 877.6 and that this Agreement is binding and enforceable pursuant to California Code of Civil Procedure, section 664.6.

21. <u>Binding on Successors</u>.  All of the terms and provisions of this Agreement shall be binding upon or shall inure to the benefit of the Parties hereto, their assigns or successors.

22. <u>Headings</u>.  The headings contained in this Agreement have been inserted for convenience only and in no way define or limit the scope or interpretation of this Agreement.

23. <u>Waiver.</u>  Either Party hereto may specifically waive any breach of this Agreement by the other Party, but no such waiver shall constitute a continuing waiver of similar or other breaches.  A waiving Party may at any time, upon notice given in writing to the breaching Party,

direct future compliance with the waived term or terms of this Agreement, in which event the breaching Party shall comply as directed from such time forward.  All remedies, rights, undertakings, obligations and agreements contained in this Agreement shall be cumulative and not mutually exclusive.

24. <u>Negotiated Agreement</u>.  The drafting and negotiating of this Agreement has been participated in by each of the Parties hereto and, for all purposes, this Agreement shall be deemed to have been drafted jointly by the Parties.

25. <u>Independent Counsel</u>.  The Parties acknowledge and agree that they have been represented by independent counsel of their own choice and that they have had the opportunity to consult with their independent counsel prior to executing this Agreement.

26. <u>Invalid Provisions</u>.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and in such instance, this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

27. In the event that the SunCal Bankruptcy Court and/or the Lehman Bankruptcy Court does not approve this Agreement, the Parties agree that this Agreement shall be null and void.

EXECUTION COPY

THE UNDERSIGNED HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE AND AGREED TO ITS TERMS. THE UNDERSIGNED UNDERSTAND AND ACKNOWLEDGE THAT THIS SETTLEMENT AGREEMENT AND RELEASE CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS SET FORTH HEREIN.

IN WITNESS WHEREOF, the Parties hereto and their respective attorneys have approved and executed this Agreement on the dates set forth opposite their respective signatures.

DATED: April 29, 2015        LEHMAN COMMERCIAL PAPER INC.

By: _____
Name: JONAS STIKLORIUS
Its: President


DATED: April ___, 2015       FIDELITY NATIONAL TITLE INSURANCE
                             COMPANY

By: _____
Name: _____
Its: _____


DATED: April ___, 2015       FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____
Name: _____
Its: _____

EXECUTION COPY

**THE UNDERSIGNED HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE AND AGREED TO ITS TERMS. THE UNDERSIGNED UNDERSTAND AND ACKNOWLEDGE THAT THIS SETTLEMENT AGREEMENT AND RELEASE CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS SET FORTH HEREIN.**

**IN WITNESS WHEREOF**, the Parties hereto and their respective attorneys have approved and executed this Agreement on the dates set forth opposite their respective signatures.

DATED: April ___, 2015                LEHMAN COMMERCIAL PAPER INC.

                                      By: _____
                                      Name: _____
                                          Its: _____


DATED: April 21, 2015                 FIDELITY NATIONAL TITLE INSURANCE
                                      COMPANY

                                      By: /s/ Michael E. Busch
                                      Name: Michael E. Busch
                                          Its: Senior Vice President


DATED: April ___, 2015                FIRST AMERICAN TITLE INSURANCE COMPANY

                                      By: _____
                                      Name: _____
                                          Its: _____

EXECUTION COPY

THE UNDERSIGNED HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE AND AGREED TO ITS TERMS. THE UNDERSIGNED UNDERSTAND AND ACKNOWLEDGE THAT THIS SETTLEMENT AGREEMENT AND RELEASE CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS SET FORTH HEREIN.

**IN WITNESS WHEREOF**, the Parties hereto and their respective attorneys have approved and executed this Agreement on the dates set forth opposite their respective signatures.

DATED: April ___, 2015          LEHMAN COMMERCIAL PAPER INC.

By: _____
Name: _____
    Its: _____

DATED: April ___, 2015          FIDELITY NATIONAL TITLE INSURANCE
                                COMPANY

By: _____
Name: _____
    Its: _____

DATED: April 21, 2015           FIRST AMERICAN TITLE INSURANCE COMPANY

By: _/s/ illegible signature_____
Name: _Debra V. Cook_____
    Its: _VP Senior Claims Counsel_

EXECUTION COPY

## APPROVED AS TO FORM:

DATED: April ___, 2015              **HENNELLY & GROSSFELD LLP**

                                    By: _____
                                    MICHAEL G. KING, Attorneys for
                                    Fidelity National Title Insurance Company


DATED: April ___, 2015              **DLA PIPER LLP (US)**

                                    By: _____
                                    RACHEL E. LOWE, Attorneys for
                                    First American Title Insurance Company


DATED: April ___, 2015              **ALLEN MATKINS LECK GAMBLE
                                    MALLORY & NATSIS LLP**

                                    By: _____
                                    BRIAN R. BAUER, Attorneys for
                                    Lehman Commercial Paper Inc.

EXECUTION COPY

**APPROVED AS TO FORM:**

DATED: April ___, 2015                                **HENNELLY & GROSSFELD LLP**


By: _____
MICHAEL G. KING, Attorneys for
Fidelity National Title Insurance Company


DATED: April 30, 2015                                **DLA PIPER LLP (US)**


By: _____
RACHEL E. LOWE, Attorneys for
First American Title Insurance Company


DATED: April ___, 2015                                **ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP**


By: _____
BRIAN R. BAUER, Attorneys for
Lehman Commercial Paper Inc.

EXECUTION COPY

**APPROVED AS TO FORM:**

DATED: April ___, 2015                     **HENNELLY & GROSSFELD LLP**


By: _____
    MICHAEL G. KING, Attorneys for
    Fidelity National Title Insurance Company


DATED: April ___, 2015                     **DLA PIPER LLP (US)**


By: _____
    RACHEL E. LOWE, Attorneys for
    First American Title Insurance Company


DATED: April 30, 2015                      **ALLEN MATKINS LECK GAMBLE**
                                                                           **MALLORY & NATSIS LLP**


By: _____/s/ Brian R. Bauer_____
    BRIAN R. BAUER, Attorneys for
    Lehman Commercial Paper Inc.

{00208595 }1058570.01/OC                       -14-