Hearing Date and Time: June 9, 2015 at 10:00 a.m. (Eastern Time)
Response Deadline: May 7, 2015 (originally April 23, 2015) at 4:00 p.m. (Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-7993
Facsimile: (212) 354-8113
Scott Greissman
Andrew Hammond
Elizabeth Feld

*Attorneys for Hana Bank, as trustee, and My Asset Investment Management Co. Ltd., as
Investment Manager for MY Dual Star Derivative Derivatives Fund D-1*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
    :
In re    :    **Chapter 11 Case No.**
    :
**LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* **:**    **08-13555 (SCC)**
    :
    **Debtors.**    :    **(Jointly Administered)**
-------------------------------------------------------------------x

**RESPONSE OF HANA BANK, AS TRUSTEE, AND MY ASSET INVESTMENT
MANAGEMENT CO. LTD., AS INVESTMENT MANAGER FOR MY DUAL STAR
DERIVATIVE DERIVATIVES FUND D-1 TO PLAN ADMINISTRATOR'S
FOUR HUNDRED NINETY-SIXTH OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY CLAIMS) [ECF No. 48956]**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

        Hana Bank, as trustee, and My Asset Investment Management Co. Ltd., as

Investment Manager for MY Dual Star Derivative Derivatives Fund D-1 (the "Claimant"), by

and through its undersigned counsel, hereby submits this response (the "Response") to the Plan

Administrator's Four Hundred Ninety-Sixth Omnibus Objection to Claims (No Liability Claims)

(the "Objection")[1] [ECF No. 48956] and in support thereof states as follows:

---

[1] The Claimant adopts Plan Administrator's definitions to the capitalized terms used herein that are not otherwise
defined.

## Background

1.      The Claimant and Lehman Brothers Commercial Corporation of Asia Limited ("LBCCA") are each party to an International Swaps and Derivatives Association, Inc. 1992 (Multi-Currency – Cross Border) Master Agreement (as amended, restated, modified and/or supplemented from time to time and together with all schedules and exhibits thereto, and the Confirmation (as defined below) entered into in connection therewith, the "Master Agreement") and a certain transaction governed by the Master Agreement (the "Transaction"), the economic terms of which are set forth in a related written confirmation dated as of July 26, 2007 (as amended, restated, modified and/or supplemented from time to time and together with all schedules and exhibits thereto, the "Confirmation," and together with the Master Agreement, the "Agreement").

2.      Prior to the parties' entry into the Confirmation, an affiliate of LBCCA delivered to the Claimant the Secretary's Certificate certifying that LBCCA "is an indirect wholly-owned and fully guaranteed subsidiary of the Corporation," i.e., LBHI (emphasis added).

3.      On September 15, 2008, LBHI filed a voluntary petition under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 1010-1532, the "Bankruptcy Code"), commencing its case under such chapter.

4.      In response to a September 18, 2008 application for and subsequent appointment of judicial liquidators for LBCCA in Hong Kong, the Claimant terminated the Transaction by a letter dated November 25, 2008 and designated December 2, 2008 as the "Early Termination Date" (as defined the Master Agreement) pursuant to Section 6(a) of the Master Agreement.

5.      On September 22, 2009, the Claimant filed a timely proof of claim against LBHI (assigned number 27288) (the "Proof of Claim") asserting a claim of $3,033,345.60 against LBHI (the "Claim").

6.      On October 22, 2009, the Claimant uploaded documents evidencing the claim, including the Secretary's Certificate evidencing the guaranty by LBHI of the primary obligation, together with other detailed data, onto the website of the Debtors' claims agent as required by order of this Court, dated July 2, 2009 [Docket No. 4271] in respect of claims based on amounts owed pursuant to any derivative contract or guarantee thereof.

7.      By the Objection, the Plan Administrator seeks to disallow the Claim in its entirety. The Objection summarily states that "[n]one of the Claimants provided any evidence that they knew of the Corporate Resolution or the Secretary's Certificate before entering into any of the relevant transactions or that they relied on the Corporate Resolution or the Secretary's Certificate in deciding to transact with LBCCA." Objection ¶¶ 7 & 16 ("The No Liability Claims fail to assert any basis to support their knowledge and reliance.").

## Argument

8.      A properly filed proof of claim establishes *prima facie* evidence of the validity and amount of the claim,[2] Fed. R. Bankr. P. 3001(f), and is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). Section 502(b) provides, in pertinent part, that if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim and shall allow the claim in such amount except to the extent that one of the exceptions enumerated in section 502(b) applies. 11 U.S.C. § 502(b).

9.      The objecting party has the burden of presenting sufficient evidence to overcome the *prima facie* validity of a properly filed claim. *In re Adelphia Commc'ns Corp.*, Case No. 02-

---

[2] The Plan Administrator does not contend that the Proofs of Claim were improperly filed.

41729 (REG), 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); *see also In re Greene*,

71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987) (stating that the *prima facie* validity of a properly filed

claim "compels the objecting party to go forward and produce sufficient evidence to rebut the

claimant's *prima facie* case."). In this context, courts have described sufficient evidence as

"evidence equal in force to the prima facie case . . . which, if believed, would refute at least one

of the allegations that is essential to the claim's legal sufficiency." *In re Oneida Ltd.*, 400 B.R.

384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny Int'l, Inc.* 954 F.2d 167, 173-74 (3d

Cir. 1992)); *In re Spiegel, Inc.*, Case Nos. 03-11540 (BRL), 06-cv-13447 (CM), 2007 WL

2456626, at *15 n.6 (S.D.N.Y. Aug. 22, 2007) (evidence must refute at least one allegation

essential to the claim's legal sufficiency); *In re DJK Residential LLC*, 416 B.R. 100, 104 (Bankr.

S.D.N.Y. 2009) (evidence must be equal in force to the *prima facie* case). "Mere objections,"

without more, do not constitute sufficient evidence and are insufficient to refute the *prima facie*

validity of a properly filed claim. *In re Make Meat Corp*, Case No. 98-cv-4990 (HB), 1999 WL

178788, at *3-4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must

affirmatively *produce* evidence to counter the creditor's claim.").

　　　　10.　　　In this case, the Plan Administrator failed to provide *any* evidence to rebut the

*prima facie* validity of the Claim. The Debtors do not dispute the validity of Claimant's

underlying claim against LBCCA; the Objection is limited solely to the enforceability of the

guarantee. In that regard, to the extent required, the Secretary's Certificate submitted by the

Claimant is *prima facie* evidence of its knowledge of and reliance on the guarantee and

guaranteed status of the LBCCA, for such certificates are drafted to be delivered for the very

purpose of inducing such reliance. The fact that the Secretary's Certificate was in the possession

of the Claimant indicates, in the absence of evidence to the contrary, that the Claimant knew and

relied on LBHI's guarantee when it entered into the Agreement.  The Objection provides no

evidence to the contrary.  The Plan Administrator having failed in its "initial burden of

presenting sufficient evidence to overcome the presumed validity and amount" of the proof of

claim, the Objection should be overruled, *In re Planet Hollywood Int'l*, 274 B.R. 391, 394

(Bankr. D. Del. 2001), and the Claim allowed in full as filed.

11.     In addition, however, Claimant issued fund marketing material, dated June 22,

2007, i.e., before the date of the Transaction, which refers several times to LBHI as guarantor of

LBCCA transactions, demonstrating Claimant's knowledge of and reliance on the guarantee.

See Exhibit A.[3]  The Claimant would not have exposed itself to liability in connection with

marketing LBHI as guarantor if it did not have knowledge of and was not relying on such

guarantee.  In sum, the Debtor has not contested the amounts owed to the Claimant by LBCCA,

the marketing material plainly establishes Claimant's knowledge and reliance on the LBHI

guarantee, and the Debtor has failed to adduce any evidence to the contrary.

12.     The Objection, which is substantive rather than procedural in nature, purports to

reserve a right to make additional objections to the Claim.  The Plan Administrator should be

provided with only one bite at the apple rather than being allowed to attack the Claim piecemeal,

which would require the Claimant to go through the expensive process of responding to further

objections.

13.     The Claimant reserves its right to file a supplemental and/or amended response to

the Objection should it deem it necessary to do so.  The execution and filing of this Response is

not and shall not be deemed:  (a) a waiver or release of the Claimant's rights against any entity or

person liable for all or any part of the Claim; (b) a consent by the Claimant to the jurisdiction of

---

[3] The relevant provisions (highlighted in yellow in the original) of the marketing material attached as Exhibit A
hereto have been translated from the original Korean.

this Court with respect to any proceeding commenced in these cases against or otherwise involving the Claimant; (c) a waiver of the right to withdraw the reference with respect to the subject matter of the Claim, any objection or other proceedings commenced with respect thereto or any other proceedings commenced in this case against or otherwise involving the Claimant; (d) a waiver or release by the Claimant of any right to trial by jury, or a consent by the Claimant to a trial by jury, in this Court or any other court; (e) a waiver of any right to the subordination or recharacterization, in favor of the Claimant, of indebtedness or liens held by any creditors of the Debtors or any of their affiliates; (f) an election of remedies which waives or otherwise affects any other remedy or (g) a waiver of the Claimant's rights to amend or supplement its proofs of claim or this Response.

## Conclusion

WHEREFORE, the Claimant respectfully requests that the Court deny the Objection as it pertains to the Claim with prejudice to the Objection and any future objections, enter an order allowing the Claim in full, and such further relief as the Court deems appropriate and just.

Dated:  May 7, 2015
          New York, New York

WHITE & CASE LLP

By: /s/ Scott Greissman
Scott Greissman
Andrew Hammond
Elizabeth Feld
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
sgreissman@whitecase.com
ahammond@whitecase.com
efeld@whitecase.com

Attorneys for Hana Bank, as trustee, and My Asset Investment Management Co. Ltd., as Investment Manager for MY Dual Star Derivative Derivatives Fund D-1

EXHIBIT A



translations@geotext.com
www.geotext.com

STATE OF CALIFORNIA     )
           )
           )
COUNTY OF SAN FRANCISCO  )    ss

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Korean into English of the attached excerpts of MY Dual Star D-1.


Olivia Applin, Project Manager
Geotext Translations, Inc.

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate
> is attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California, County of San Francisco

Subscribed and sworn to (or affirmed) before me

on this 4th day of May , 20 15 ,

by Olivia Applin ,

proved to me on the basis of satisfactory evidence

to be the person(s) who appeared before me.

Signature: Kurt adam Shulenberg

KURT ADAM SHULENBERGER
Commission No. 2039095
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm Expires AUGUST 27, 2017
NCC1
NCC1

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

[...]

| | |
|---|---|
| **3. Major investment risks** | **- As a performance-based dividend product**, unprotected by the Depositor Protection Act, there are **risks of investment loss due to bankruptcy or lowered value of the basic assets (Samsung Electronics or Kookmin Bank)** on the part of the **ELS issuing company (**Lehman Brothers Commercial Asia Limited: based on Lehman Brothers Holdings (parent company) 100% guarantor of Lehman Brothers Commercial Asia Limited  Moody's credit rating: A1, Standard & Poor's: A+, Fitch: A+) |

[...]

[...]

▶ **Risks of the trade partner**: The issuer of the OTC derivative product is Lehman Brothers Commercial Asia Limited. Based on Lehman Brothers Holdings (parent company) guaranteeing Lehman Brothers Commercial Asia Limited 100%, the credit rating by Moody's is A1; Standard & Poor's is A+; Fitch is A+, hence lower investment risks because the strong capability to repay debts except a possibility to be affected somewhat by a rapid change of the environment in the future. For more information, please refer to the company website of Lehman Brothers Commercial Asia Limited (http://www.lehman.com) and electronic public bulletin of the  Financial Supervisory Service (dart.fss.or.kr). As to

the OTC derivative products in this investment trust, because it is a direct trade with the company who issued the OTC derivative product, the return of the principal of the OTC derivative product may be either delayed or not happen depending on the company's business conditions, financial conditions, or poor credit standing.

[...]

[...]

|  | The issuer of the OTC derivative product is Lehman Brothers Commercial Asia Limited. Based on Lehman Brothers Holdings (parent company) guaranteeing Lehman Brothers Commercial Asia Limited 100%, the credit rating by Moody's is A1; Standard & Poor's is A+; Fitch is A+, with lower investment risk triggered by ability to repay debt with the exception of fallout from a rapid change to future environment future. For more information, please visit the company website of Lehman Brothers Commercial Asia Limited (http://www.lehman.com) or the electronic public bulletin of the Financial Supervisory Service (dart.fss.or.kr). As the OTC derivative products in this investment trust is a direct trade with the OTC derivatives product issuing company, the return on the principal of the OTC derivative product may either delayed or rescinded pending company business condition, financial condition or poor credit standing. |
|---|---|

[...]

투자설명서

# MY Dual Star 파생상품투자신탁 D-1호

이 투자설명서는 <u>MY Dual Star 파생상품투자신탁 D-1호</u>에 대한 자세한 내용을 담고 있습니다. 따라서 <u>MY Dual Star 파생상품투자신탁 D-1호</u> 수익증권을 매입하기 전에 반드시 이 투자설명서를 읽어보시기 바랍니다.

1.투자신탁명    MY Dual Star 파생상품투자신탁 D-1호

2.자산운용회사명    마이애셋자산운용㈜

3.판매회사명

| 판 매 회 사 명 | 주    소 | 상담가능 전화번호 |
|---|---|---|
| 대한투자증권 | 서울시 영등포구 여의도동 27-3번지 | 1588-3111 |
| 기    타 | | |

※ 판매회사는 수익증권의 판매업무만을 영위할 뿐, 투자신탁의 운용
과는 무관하며, 투자자의 이익을 보장하거나 보전하지 않습니다.

4.작성기준일    2007년 06월  일

5.투자설명서의 비치 및 공시 장소

판매회사 영업점 및 마이애셋자산운용㈜ 홈페이지
http://www.mai.co.kr

<div style="border:1px solid red;color:red">

금융감독위원회는 투자신탁 수익증권의 발행을 승인하거나 투자설명서의 내용의 정확성 및
적정성을 보증하지 않습니다. 또한, 투자신탁 수익증권은 실적배당상품으로 투자 원금의 손실이
발생할 수도 있으므로 투자에 신중을 기하여 주시기 바랍니다.

</div>



목    차

## 【투자설명서 요약】

Ⅰ. **투자신탁의 개요**
 1. 명칭
 2. 신탁계약기간
 3. 종류
 4. 자산운용회사

Ⅱ. **투자정보**
 1. 투자목적
 2. 주요 투자전략
 3. 주요 투자위험
 4. 투자위험에 적합한 투자자 유형
 5. 투자실적

Ⅲ. **매입·환매 관련정보**
 1. 수수료 및 보수
 2. 과세
 3. 매입·환매 절차 등


## 【투자설명서 본문】

## 제1부. 투자신탁의 기본정보

Ⅰ. **투자신탁의 개요**
 1. 명칭
 2. 신탁계약기간
 3. 종류
 4. 자산운용회사
 5. 최초설정일 등 연혁
 6. 수탁고 추이
 7. 해지사유

Ⅱ. **투자정보**
 1. 투자목적
 2. 주요 투자전략
 3. 주요 투자위험
 4. 투자위험에 적합한 투자자 유형
 5. 투자실적

Ⅲ. **수수료·보수, 과세**
 1. 수익자에게 직접 부과되는 수수료
 2. 투자신탁에 부과되는 보수 및 비용
 3. 투자소득에 대한 과세

Ⅳ. **수익증권의 매입·환매, 분배**
 1. 매입
 2. 환매
 3. 이익 등의 분배

# 제2부. 투자신탁의 상세정보

**Ⅰ. 투자전략 및 투자위험 등**
   1. 투자전략
   2. 투자위험
   3. 투자대상
   4. 투자제한

**Ⅱ. 자산의 평가, 기준가격의 산정 및 공시**
   1. 자산의 평가
   2. 기준가격의 산정 및 공시

**Ⅲ. 투자증권, 장내파생상품 거래 시 중개회사의 선정기준**
   1. 중개회사 선정기준

# 제3부. 자산운용회사 및 투자신탁의 관계인에 관한 사항

**Ⅰ. 자산운용회사**
   1. 회사의 개요
   2. 주요업무
   3. 최근 2개 사업연도의 요약 재무내용
   4. 운용자산 규모
   5. 운용전문인력에 관한 사항

**Ⅱ. 판매회사**
   1. 회사의 개요
   2. 주요 업무

**Ⅲ. 수탁회사**
   1. 회사의 개요
   2. 주요 업무

**Ⅳ. 일반사무관리회사**

**Ⅴ. 채권평가회사**
   1. 회사의 개요
   2. 주요 업무

# 제4부. 수익자 권리 및 공시에 관한 사항

**Ⅰ. 수익자의 권리**
   1. 수익자 총회 및 의결권
   2. 잔여재산분배
   3. 장부·서류의 열람 및 등·초본 교부청구권
   4. 손해배상책임
   5. 재판관할
   6. 기타 수익자의 권리보호에 관한 사항

**Ⅱ. 공시**
   1. 정기보고서 및 보고서
   2. 수시공시

*MY Dual Star 파생상품투자신탁 D-1 호*

 이 설명서는 금융소비자의 권익보호 및 금융증진을 위해 상품의 핵심내용을 알기 쉽게 작성한 것입니다. 상품내용을 충분히 이해하신 다음에 계약여부를 결정하시기 바랍니다.

| I | 투자신탁의 개요 (☞본문 6쪽) |

1. 투자신탁의 명칭 : MY Dual Star 파생상품투자신탁 D-1호

2. 신탁계약기간 및 회계기간
(1) 신탁계약기간: 투자신탁의 최초설정일부터 3년 1개월
   (단, 장외파생상품이 상환되는 경우 장외파생상품의 상환금 지급일까지)
(2) 신탁회계기간: 투자신탁의 최초설정일로부터 매1년간
3. 종류: 파생상품투자신탁, 단위형, 개방형,

4. 자산운용회사 : 마이애셋자산운용(주)

| II | 투자정보 (☞본문 6~9쪽) |

| 구 분 | 주 요 내 용 |
|---|---|
| 1. 투자 목적 | – 신탁재산의 90% 이상을 **삼성전자 및 국민은행 주가에 연계되어 되어 수익이 결정되는 장외파생상품(ELS)에 투자**하여 ELS의 상환조건에 부합될 경우, 조기에 상환되어 수익을 추구하는 상품 (매 6 개월 마다 조기상환기회 제공)다만, 이 투자신탁의 투자목적이 반드시 달성된다는 보장은 없음 |
| 2. 주요투자전략 | – 중간평가시점의 두 종목 모두 기준주가의 6 개월 90%이상, 12 개월 90% 이상, 18 개월 85% 이상, 24 개월 85% 이상, 30 개월 80% 이상일 경우 연 12%의 수익과 함께 조기 상환합니다.<br>– **조기상환 되지 않는 경우에는** 장중가격이 기준주가 대비 40% 초과 하락한 적이 없으면, 원금과 함께 18% 수익이 지급됩니다. 또한, 운용기간 중 한종목이라도 기준주가 대비 40% 초과 하락한 적이 있다 할지라도, 만기평가 시 두 종목 모두 만기평가가격이 최초기준가격의 80% 이상일 경우 원금과 함께 36%의 수익이 지급됩니다. 하지만, 장중가격이 최초기준가격 대비 40% 초과 하락한 적이 있으며, 만기평가 시 두 종목 중 한 종목이라도 기준주가의 80% 미만인 경우 원금손실이 발생할 수 있습니다.<br>–이 투자신탁의 수익구조는 제반 비용 등의 변동에 따라 수익율에 영향이 있을 수 있으며, 세금을 공제하기 전의 금액을 기준으로 산정한 것입니다. |
| **3. 주요 투자위험** | **–「예금자보호법」의 보호를 받지 않는 실적배당상품으로 ELS 의 발행회사 (Lehman Brothers Commercial Asia Limited : 신용등급은 Lehman Brothers Commercial Asia Limited 를 100% 보증하는 Lehman Brothers Holdings(모회사) 기준으로 Moody's : A1, Standard & Poor's : A+, Fitch : A+ )의 부도 또는 기초자산(삼성전자 또는 국민은행)의 하락 등에 따른 투자 손실이 발생할 수 있음** |
| 4. 투자위험에 적합한 투자자 유형 | – 이 투자신탁의 투자위험은 5등급 중 1등급으로 높음. 따라서, ELS 거래에 따른 특성과 위험 및 기초자산의 투자위험을 충분히 **이해하고 원금손실 위험을 감수하면서 고수익을 추구하는 투자자에게 적합** |
| 5. 기준가격 | – 수익증권의 매입 또는 환매 시 적용되는 가격으로 투자신탁의 순자산 가치를 발행 수익증권 총수로 나누어 매일 산출<br>– 판매회사 영업점 또는 자산운용회사 인터넷홈페이지(www.mai.co.kr)에서 확인 가능 |

6. 운용전문인력

| 성명 | 나이 | 직위 | 운용현황 | | 주요 운용경력 및 이력 |
|---|---|---|---|---|---|
| | | | 운용중인 다른 간접투자기구 수 | 다른 운용자산규모 | |
| 이복상 | 42 세 | 운용역 | 11 | 1,627 | – 연세대학교 법학과<br>– 마이애셋자산운용㈜ 자산운용본부장 |

※ 이 투자신탁의 운용은 팀제로 운용하며, 상기인은 이 펀드를 총괄하는 **책임운용전문인력**입니다

7. 투자실적 추이(연평균 수익률) : 해당사항 없음

| III | 매입 • 환매 관련 정보 (☞본문 10~12쪽) |
|---|---|

### 1. 수수료 및 보수

| 구 분 | | 1) 투자신탁의 최초설정일부터 6개월까지 | 2) 1)에서 정한 기간 이후부터 신탁계약의 종료일까지 |
|---|---|---|---|
| 수익자에게 직접 부과되는 수수료 | 선취판매수수료[1] | 없음 | |
| | 환매수수료[1] | – ① 최초 설정일로부터 6개월 까지 : 환매금액의 8%<br>– ② ①항 이후부터 신탁계약 종료일까지 : 환매금액의 3% | |
| 투자신탁에 부과되는 보수 및 비용(순자산총액 기준) | 자산운용관리보수 | 순자산총액의 0.41% | 순자산총액의 0.001% |
| | 판매회사보수 | 순자산총액의 1.67% | 순자산총액의 0.001% |
| | 수탁회사보수 | 순자산총액의 0.03% | 순자산총액의 0.030% |
| | 일반사무관리회사보수 | 순자산총액의 0.01% | 순자산총액의 0.010% |
| | 기 타 비 용 | 실비 | 실비 |
| | 총 보수/비용비율[2] | 순자산총액의 2.12% | 순자산총액의 0.042% |

주 1) 환매수수료는 환매 시 환매시점에서 일회적으로 부과
　2) 총 보수·비용비율은 투자자가 실질적으로 부담하는 전체적인 보수·비용수준을 나타냄

### 2. 과세
– 수익자는 투자신탁이 투자한 투자대상에서 발생한 이자, 배당 및 양도차익에 대하여 소득세 등(2007년 현재, **개인15.4%, 법인14.0%**)을 부담합니다.

### 3. 매입.환매절차
이 투자신탁의 수익증권은 판매회사의 영업시간(오전 9시~오후 4시 30분) 중에 **매입 또는 환매할 수 있습니다.**

| 구 분 | 오후 5시 이전 | 오후 5시 이후 |
|---|---|---|
| 매 입 | – 자금을 납입한 영업일(D)의 **다음 영업일(D+1)**에 공고되는 기준가격을 적용<br><br>D —— D+1<br>자금납입　수익증권매입<br>(5시 이전)　(D+1 기준가적용) | – 자금을 납입한 영업일(D)로부터 **제3영업일(D+2)**에 공고되는 기준가격을 적용<br><br>D —— D+1 —— D+2<br>자금납입　　　수익증권매입<br>(5시 이후)　　　(D+2 기준가적용) |
| 환 매 | – 환매청구일(D)로부터 **제4영업일(D+3)**에 공고되는 기준가격을 적용<br>– **제5영업일(D+4)에 환매대금을 지급**<br><br>D —— D+3 D+4<br>환매 요청　기준가격　환매대금<br>(5시 이전)　적용일　지급일 | – 환매청구일(D)로부터 **제5영업일(D+4)**에 공고되는 기준가격을 적용<br>– **제6영업일(D+5)에 환매대금을 지급**<br><br>D —— D+4 D+5<br>환매 요청　기준가격　환매대금<br>(5시 이후)　적용일　지급일 |

※ 의문사항 또는 불편사항(민원)이 있는 경우 **판매회사의 상담센터(1588-2100)** 또는 **인터넷 홈페이지**
(www.mai.co.kr)를 통해 문의하거나 **금융감독원(국번 없이 1332)**에 도움을 요청하실 수 있습니다.

---

'요약(핵심설명서)'은 투자설명서의 주요내용을 담고 있습니다. 따라서 이 투자신탁의 투자목적, 투자위험 등에 대한 상세한 정보를 파악하기 위해서는 **투자설명서 본문을 읽어보셔야 합니다.**
(판매회사)＿＿＿＿＿＿＿(점포명)＿＿＿＿＿(판매직원 직위 및 성명)＿＿＿＿＿＿＿(은)는
(고객 성명)＿＿＿＿＿＿＿에게 **투자설명서를 교부**하고 그 **주요 내용을 설명**하였습니다.
2007.　.　.
판매직원 ＿＿＿＿＿＿＿＿＿서명 또는 (인)

1q

## 제1부 투자신탁이 기본정보

### Ⅰ. 투자신탁의 개요

**1. 명 칭**        MY Dual Star 파생상품투자신탁 D-1호

**2. 신탁계약기간**    최초설정일로부터 최대 3년 1개월(2010년 06월 30일까지 만기 상환되는 경우, 만기 상
환금 지급일까지), 단, 조기상환시기(2007년 12월 31일, 2008년 06월 30일, 2008년 12
월 30일, 2009년 06월 30일)에 조기상환조건이 충족되어 중도 상환되는 경우 상환금 지
급일까지로 함.

**3. 종 류**        파생상품투자신탁, 단위형, 공모형

**4. 자산운용회사**    마이애셋자산운용㈜

**5. 최초설정일 등 연혁**  2007년 06월 MY Dual Star 파생상품투자신탁 D-1호 설정(예정)

**6. 수탁고 추이**    해당사항 없음

**7. 해지 사유**    자산운용회사는 공익 또는 수익자의 이익보호를 위하여 필요하거나, 기타 불가피한 사유
가 있는 경우에는 금융감독원장의 승인을 얻어 이 투자신탁을 해지할 수 있습니다. 그러
나, 수익자 전원이 동의하거나 1개월간 계속하여 투자신탁의 원본액이 100억원에 미달
하거나, 투자신탁재산 전부에 대한 환매의 청구를 받아 투자신탁을 해지하고자 하는 경
우에는 금융감독원장의 승인을 얻지 아니하고 이 투자신탁을 해지할 수 있습니다.

### Ⅱ. 투자 정보

**1. 투자 목적**    이 투자신탁은 투자신탁재산을 주로 삼성전자 보통주 및 국민은행 보통주에 연계된 장외
파생상품에 투자하여 삼성전자 보통주 및 국민은행 보통주 가격 변동에 따라 수익이 확
정되는 투자신탁으로 조기상환조건에 부합될 경우에는 조기에 수익을 확정하는 상품입니다
.
그러나, 이 투자신탁의 투자목적이 반드시 달성된다는 보장은 없으며, 중도환매 시 편입
자산의 가치하락 등으로 인하여 투자원금에 손실이 발생할 수 있습니다.

**2. 주요 투자 전략**  이 투자신탁은 투자신탁재산의 90%를 초과하여 매 6개월 단위로 3년 만기 전 5번의 조
기상환 조건이 내재된 삼성전자 보통주와 국민은행 보통주 가격변동에 연계된 장외파생
상품에 투자할 계획입니다. 다만, 장외파생상품에 투자하기 전에는 신탁재산을 단기대출
(콜론 등) 등의 방법으로 운용할 계획입니다.

**3. 주요 투자 위험**  ▶ **투자원본에 대한 손실** : 이 투자신탁은 실적배당상품으로 투자 원리금이 보장 또는
보호되지 않으며, 은행예금과 달리 예금보험공사 등의 보호를 받지 않습니다. 따라
서, 투자원본의 전부 또는 일부에 대한 손실의 위험이 존재하며 투자금액의 손실 내
지 감소의 위험은 전적으로 투자자가 부담하게 되고, 자산운용회사나 판매회사 등 어
떤 당사자도 투자손실에 대하여 책임을 지지 아니합니다.

▶ **거래상대방 위험** : 장외파생상품 발행자는 Lehman Brothers Commercial Asia Limit
ed이며, 신용등급은 Lehman Brothers Commercial Asia Limited를 100% 보증하는
Lehman Brothers Holdings(모회사) 기준으로 Moody's : A1, Standard & Poor's : A
+, Fitch : A+ 로서 전반적인 채무상환 능력이 높아 투자위험도는 낮은 수준이지만,
장래 급격한 환경변화에 따라 다소 영향을 받을 가능성이 있습니다. 좀더 자세한 사
항은 Lehman Brothers Commercial Asia Limited 홈페이지(http://www.lehman.com
) 및 금융감독원 전자공시(dart.fss.or.kr)를 통해 조회하실 수 있습니다. 이 투자신탁

의 경우, 장외파생상품은 장외파생상품을 발행한 회사와의 직접적인 거래이므로 그 회사의 영업환경, 재무상황 및 신용상태의 악화에 따라 장외파생상품의 원리금 상환이 지연 또는 이행되지 않을 수 있습니다.

▶ **유동성 위험** : 장외파생상품은 다른 유가증권 또는 장내파생상품과 달리 장외파생상품을 발행한 회사와 직접거래를 하여야 하므로 유동성이 낮습니다. 따라서, 수익자의 환매에 대응하여 환매금을 마련하는 등의 사유로 장외파생상품을 만기 이전에 중도매각하고자 할 때에는 중도매각이 원활하지 못할 수도 있으며, 중도매각에 따른 가격손실의 가능성도 있습니다.

▶ **예금자보호법의 적용을 받는 은행 등에서 판매하는 경우에도 당해 투자신탁 수익증권은 예금과 달리 예금보험공사 등의 보호를 받지 못합니다.**

※ **투자위험에 대한 상세한 설명은 '제2부. 투자신탁의 상세정보'의 'I.투자전략 및 투자위험' 중 '2.투자위험 (17~18page)에 기재되어 있으니 참고하시기 바랍니다.**

**4. 투자위험에 적합한 투자자 유형**
이 투자신탁은 신탁재산의 대부분을 삼성전자 보통주 및 국민은행 보통주에 연계된 장외파생상품에 투자하여 사전에 약정된 구조에 따라 **일정조건에 도달하면 고수익을 기대 할 수 있는 반면,** 삼성전자 보통주 및 국민은행 보통주의 주가가 일정조건에 충족되지 못하는 경우, **투자원금의 손실 위험이 있으므로 5등급 중 1등급에 해당하는 높은 수준의 투자위험을 지니고 있습니다.**
따라서, 삼성전자 보통주 및 국민은행 보통주에 연계된 장외파생상품에 투자하여 수익을 얻고자 하되, 일정조건 이하로 주가가 하락할 경우 원금 손실의 위험을 감수할 수 있는 투자자에게 적합합니다.

**[투자위험 등급구분]**
1등급 : 매우 높음
2등급 : 높음
3등급 : 중간
4등급 : 낮음
5등급 : 매우 낮음



**5. 투자실적**

　가. **연도별 수익률**　　최초 설정으로 해당사항 없음

　나. **연평균 수익률**　　최초 설정으로 해당사항 없음

## III. 수수료 · 보수, 과세

1. 수익자에게 직접
   부과되는 수수료

| 구분 | 지급비율 (연간,%) | 지급시기 |
|------|------------------|----------|
| 선취 판매수수료 | 없음 | |
| 후취 판매수수료 | 없음 | |
| 환매수수료 | ①투자신탁의 최초설정일로부터 6개월까지 : 환매금액의 8%  ②제1호에서 정한 기간 이후부터 투자신탁계약 종료일까지 : 환매금액의 3% | 환매 시 |

2. 투자신탁에 부과되는
   보수 및 비용

(1) 투자신탁의 최초설정일로부터 6개월까지

| 구분 | | 지급비율 (연간,%) | 지급시기 |
|------|--|------------------|----------|
| 투자신탁에 부과되는 보수 및 비용 | 자산운용회사 보수 | 0.41% | − 투자신탁 해지 시  − 보수계산기간 종료 시(매3개월) |
| | 판매회사 보수 | 1.67% | |
| | 수탁회사 보수 | 0.03% | |
| | 사무수탁회사 보수 | 0.01% | |
| | 기타비용 | − | 사유 발생 시 |
| | 총보수 / 비용 | 2.12% | |

(2) (1)규정에 의한 보수계산기간 이후

| 구분 | | 지급비율 (연간,%) | 지급시기 |
|------|--|------------------|----------|
| 투자신탁에 부과되는 보수 및 비용 | 자산운용회사 보수 | 0.001% | − 투자신탁 해지 시  − 보수계산기간 종료 시(매3개월) |
| | 판매회사 보수 | 0.001% | |
| | 수탁회사 보수 | 0.03% | |
| | 사무수탁회사 보수 | 0.01% | |
| | 기타비용 | − | 사유 발생 시 |
| | 총보수 / 비용 | 0.042% | |

※ 기타비용은 투자신탁재산을 운용하거나 투자신탁을 운영하는데 소요되는 비용으로서
   해당업무에 소요되는 금액의 한도에 제한을 두지 아니합니다.
   (1) 투자증권 등의 매매수수료
   (2) 투자신탁재산에 관한 소송비용

(3)  투자신탁재산의  회계감사비용

(4)  투자증권의  예탁  및  결제비용

(5)  수익자명부  관리  비용

(6)  수익자총회  관련  비용

(7)  투자증권  등의  가격정보  비용

(8)  투자신탁의  운용에  필요한  지적재산권  비용

(9)  기타  이에  준하는  비용으로  투자신탁의  운용  등에  소요되는  비용


**3. 투자소득에  대한**
   **과세**

▶ **투자신탁에  대한  과세**

투자신탁재산에서  납부한  이자소득의  원천징수세액을  다시  환급  받게  되는  등의  사유
로  인하여  <u>투자신탁에서는  투자소득에  대해  세금을  납부하지  않습니다.</u>

▶ **수익자에  대한  과세**

수익자는  투자신탁이  투자한  투자대상에서  발생한  이자,  배당  및  양도차익에  대하여
소득세  등(개인  15.4%,  법인  14.0%)을  부담합니다.  다만,  상장주식,  벤처기업  주식
또는  출자지분,  상장  주식을  대상으로  하는  선물  거래에서  발생되는  매매·평가차익은
과세대상에서  제외됩니다.

## Ⅳ. 수익증권의 매입·환매, 분배

**1. 매  입**

수익증권은 판매회사를 통하여 매입하실 수 있습니다.

수익증권의 판매가격은 투자자가 수익증권의 취득을 위하여 자금을 납입한 영업일의 **다음 영업일 공고 기준가격으로** 합니다.

투자자가 **17시[오후 5시] 이후에 자금을 납입한 경우** 수익증권의 매입가격은 자금을 납입한 영업일로부터 **제3영업일에 공고되는 기준가격으로** 합니다.

다만, 투자신탁을 최초로 설정하는 때에는 최초로 설정하는 날의 기준가격으로 합니다.

(1) **17시[오후 5시] 이전** 자금을 납입한 경우
   **: 자금을 납입한 영업일의 다음 영업일**에 공고되는 기준가격 적용



(2) **17시[오후 5시] 이후** 자금을 납입한 경우
   **: 자금을 납입한 영업일로부터 제3영업일**에 공고되는 기준가격 적용



**2. 환매**

수익자는 언제든지 수익증권 환매를 청구할 수 있습니다.

수익자는 수익증권의 환매를 수익증권을 판매할 판매회사에 청구하여야 합니다. 다만, 판매회사가 해산·허가취소, 업무정지 등의 사유(이하 "해산 등")로 인하여 환매청구에 응할 수 없는 경우에는 자산운용회사에 직접 청구할 수 있으며, 자산운용회사가 해산 등으로 인하여 환매에 응할 수 없는 경우에는 수탁회사에 직접 청구할 수 있습니다.

(1) **17시[오후 5시] 이전** 환매청구 시
   **: 환매청구일로부터 제4영업일에 공고되는 기준가격을 적용하여 제5영업일에 관련 세금 등을 공제한 후 수익자에게 지급**



**(2) 17시[오후 5시] 이후** 환매청구 시

: 환매를 청구한 날로부터 제5영업일의 기준가격을 적용하여 제6영업에 관련세금 등을 공제한 후 수익자에게 지급

※ 간접투자증권 매입·환매청구(정정포함)는 당일 (17시[오후 5시]) 이전까지 가능합니다.

※ 투자자의 매입·환매청구 시간은 전산시스템에 의하여 거래전표에 표시된 시간(판매회사의 Main 컴퓨터에 인지되어 처리된 시간)을 의미합니다. 다만, 자동이체 연결계좌의 경우 17시(오후 5시)이전에 매입·환매청구가 이뤄진 것으로 간주됩니다.

▶ **환매수수료**

(1) 투자신탁의 최초설정일로부터 6 개월까지 : 환매금액의 8%

(2) 제(1)호에서 정한 기간 이후부터 투자신탁계약 종료일까지 : 환매금액의 3%

▶ **환매 연기**

법과 신탁약관에서 정한 사유로 인하여 환매일에 환매금액을 지급할 수 없게 될 경우, 자산운용회사는 수익증권의 환매를 연기할 수 있습니다. 자세한 내용은 신탁약관을 참고하시기 바랍니다.

▶ **부분환매**

(1)자산운용회사는 투자신탁재산의 일부가 신탁약관 제26조의 규정에 의한 환매연기 사유에 해당하거나, 수익자총회(환매연기총회)에서 부분환매를 결의하는 경우 환매연기 자산에 해당하지 아니하는 자산(이하 "정상자산"이라 합니다)에 대하여는 수익자가 보유하는 수익증권의 지분에 따라 환매에 응할 수 있습니다.

(2)제1항의 규정에 따라 부분환매가 결정된 경우에는 자산운용회사가 부분환매를 결정한 날(환매연기총회에서 부분환매를 결의한 경우에는 그날)의 전일을 기준으로 환매연기 사유에 해당하는 자산을 정상자산으로부터 분리하여야 합니다.

(3)자산운용회사는 제2항의 규정에 따라 환매연기사유에 해당하는 자산을 정상자산으로부터 분리한 경우에는 환매연기사유에 해당하는 자산만으로 별도의 투자신탁을 설정합니다. 이 경우, 수익자는 이 투자신탁 수익권의 보유좌수에 따라 별도의 투자신탁의 수익권을 취득한 것으로 봅니다.

(4)자산운용회사는 제3항의 규정에 따라 정상자산으로 구성된 투자신탁에 대하여는 신탁약관 제19조의 규정에 따라 기준가격을 산정하여 수익증권을 발행 및 판매할 수

있습니다.

(5)자산운용회사가 부분환매를 결정한 경우에는 관련내용을 지체 없이 수익자, 수탁회사
   및 판매회사에게 통지하여야 하며, 판매회사는 통지 받은 내용을 본•지점에 게시
   하여야 합니다.

**▶ 환매 제한**

다음의 경우 수익자는 수익증권의 환매를 청구할 수 없습니다.

(1)수익자 또는 질권자로서 권리를 행사할 자를 정하기 위하여 일정한 날을 정하여
   수익자명부에 기재된 수익자 또는 질권자를 그 권리를 행사할 수익자 또는 질권자로
   보도록 한 경우로서 이 일정한 날의 전 제3영업일(17시(오후 5시)이후 환매청구한
   경우에는 전 제4영업일)과 그 권리를 행사할 날까지의 사이에 환매청구를 한 경우
(2)법령 또는 법령에 의한 명령에 의하여 환매가 제한되는 경우

**3. 이익 등의 분배**   자산운용회사는 이 투자신탁재산의 운용에 따라 발생한 이익금을 투자신탁회계기간 종료
시 수익자에게 지급하지 아니하고 신탁재산에 유보하며, 신탁계약 기간 종료에 따른 이
익금 및 상환금(이하 "상환금 등"이라 합니다)은 전액 현금으로 지급합니다.

## 제2부  투자신탁의 상세정보

## I. 투자전략 및 투자위험 등

**1. 투자전략**

이 투자신탁은 최초설정일로부터 일정시일이 경과한 이후 투자신탁재산의 대부분을 **삼성전자** 보통주와 **국민은행** 보통주에 연계된 만기 3년의 장외파생상품에 투자합니다. 그 장외파생상품이 만기 이전에 중도상환 되는 경우, 이 투자신탁도 중도에 상환됩니다. 장외파생상품 이외의 신탁재산은 단기대출 등의 자산으로 운용할 계획입니다.

**장외파생상품 투자금액은 이 투자신탁 최초 설정금액의 98%내외 수준입니다.**
나머지 2%수준은 단기대출 등으로 운용하여 투자신탁보수 등의 지급을 위한 재원으로 활용할 예정입니다.

**<장외파생상품의 발행 내용>**
- 발행사 : Lehman Brothers Commercial Asia Limited
- 발행사 신용등급 : A1
- 만기 : 3년(6개월마다 조기상환조건 내재)
- 조기상환 평가일 및 지급일

| | 조기상환 평가일 | 고객 지급일 |
|---|---|---|
| 1회차 | 2007. 12. 24. | 2007. 12. 31. |
| 2회차 | 2008. 06. 24. | 2008. 06. 30. |
| 3회차 | 2008. 12. 23. | 2008. 12. 30. |
| 4회차 | 2009. 06. 24. | 2009. 06. 30. |
| 5회차 | 2009. 12. 23. | 2009. 12. 30. |

※ 단, 조기상환 평가일이 거래소 영업일이 아닌 경우 이후 최초로 도래하는 거래소 영업일을 평가일로 합니다. 또한, 이 경우, 재 지정된 조기상환 평가일 경과 후 4영업일에 장외파생상품 대금지급일을 순연하여 결정합니다. 단, 장외파생상품 대금지급일이 영업일이 아닌 경우, 이후 최초로 도래하는 거래소 영업일에 지급합니다.

※ 단, 장외파생상품 대금지급일이 변경되는 경우, 고객지급일도 순연하여 결정합니다.

- 만기상환 평가일 : 2010년 06월 24일 종가
- 만기상환 고객 지급일 : 2010년 12월 30일

□ **조기상환 수익 구조**

▶ **기준주가**
**삼성전자** 보통주 및 **국민은행** 보통주 각각의 최초기준가격 결정일의 종가

▶ **만기 전 조기상환의 기준주가**
1차, 2차, 3차, 4차, 5차 조기상환 평가일의 **삼성전자** 보통주 및 **국민은행** 보통주 종가 중 기준주가대비 상승률이 낮거나, 하락률이 큰 주식(이하 "WP(Worst Performer)"라 함)의 조기상환평가일의 종가

▶ **만기 전 조기상환의 조건**
각 평가일 시점에서 WP 비교주가가 기준주가 대비 6개월 90% 이상, 12개월 90% 이상, 18개월 85% 이상, 24개월 85% 이상, 30개월 80% 이상인 경우

▶ **만기 전 조기상환 시 수익률** : 연12.0% 내외 수익률 지급 후 종료



▶ 조기상환 지수 결정일

| | |
|---|---|
| 1회 차 | 2007년 12월 24일 |
| 2회 차 | 2008년 06월 24일 |
| 3회 차 | 2008년 12월 23일 |
| 4회 차 | 2009년 06월 24일 |
| 5회 차 | 2009년 12월 23일 |

▶ 조기상환조건

①  6 개월 : WP 비교주가가 기준주가 대비 90% 이상인 경우

② 12 개월 : WP 비교주가가 기준주가 대비 90% 이상인 경우

③ 18 개월 : WP 비교주가가 기준주가 대비 85% 이상인 경우

④ 24 개월 : WP 비교주가가 기준주가 대비 85% 이상인 경우

⑤ 30 개월 : WP 비교주가가 기준주가 대비 80% 이상인 경우

□ 만기상환 수익 구조

▶ 기준 주가

**삼성전자** 보통주 및 **국민은행** 보통주 각각의 최초기준가격 결정일의 종가

▶ 만기 주가

만기상환 평가일의 **삼성전자** 보통주 및 **국민은행** 보통주 종가 중 기준주가대비 상승률이 낮거나 하락률이 큰 주식(이하 "WP(Worst Performer)"라 함)의 만기상환 평가일의 종가

▶ 만기상환 시 수익률

① 만기 시 WP 비교주가가 기준주가 대비 80% 이상인 경우 → **원금x(1+36%)내외**

② 만기 시 WP 비교주가가 기준주가 대비 80% 미만이고, 두 종목 중 한 종목이라도 투자신탁 설정일 이후 한번이라도 기준주가대비 40% 초과(장 중 가격 포함) 하락한 적이 없는 경우

→ **원금x(1+18%)내외**

③ 만기 시 WP 비교주가가 기준주가 대비 80% 미만이고, 두 종목 중 한 종목이라도 투자신탁 설정일 이후 한번이라도 기준주가대비 40% 초과(장 중 가격 포함) 하락한 적이 있는 경우

→ **원금x(WP만기비교주가/WP기준주가)**    * 원금 손실



□ 기간별 시나리오



□ 기초자산의 최근 3년    <삼성전자>
　주가 그래프



<국민은행>



기준주가의 변경

(1)운용사, 인수자 및 발행자는 아래 각 항의 사유가 발생할 경우 본 증권의 권리내용이 조정될 수 있음을 인지하고 동의하기로 하며, 본 증권의 지급조건, 지급절차 및 기타 권리내용의 변동이 생긴 경우에 발행자는 즉시 운용사, 인수자 및 증권예탁결제원에 통보하기로 한다.

(2)한국증권선물거래소 또는 그 승계기관의 기초자산 가격의 발표 또는 통신상의 오류로 인하여 본 증권의 지급금액이 잘못 산정, 지급된 경우 추후 정정발표 또는 확인된 정확한 기초자산의 가격을 기준으로 산출한 금액과의 차액을 정산한다.

(3)기초자산의 발행인의 증자 및 기타 변동 사유가 발생한 경우 : 본 증권 기초자산의 증자 및 기타 변동사유 등이 발생한 경우 아래 각 호에 의하여 기준가격을 조정한다. 단, 각 호에 의하여 산출된 조정 후 기준가격은 원 미만 절사하여 적용하며, 기준가격 조정 산식에서 적용하는 기발행주식수는 조정 후 기준주가 적용일 직전 월말 현재의 주식

수로 하기로 한다.

① 기초자산에 대해 시가를 하회하는 발행가격으로 유상증자를 하는 경우에는 다음과 같이 본 증권의 기준가격을 조정한다.

조정 후 기준가격 = 조정 전 기준가격 * (기 발행주식수 + 신 발행주식수 * 1주당 발행가액 / 시가) / (기 발행주식수 + 신 발행주식수)

② 기초자산에 대해 무상증자 및 주식배당으로 신주가 발행되는 경우에는 다음과 같이 본 증권의 기준가격을 조정한다.

조정 후 기준가격 = 조정 전 기준가격/(1 + 기 발행주식 1주당 신 발행주식수)

③ 자산에 대해 자본금감소, 액면분할 및 병합이 발생되는 경우에는 조정 전 기준가격에 해당비율을 감안하여 기준가격을 조정한다.

④ 기초자산에 대해 i) 전환사채 및 신주인수권부사채의 전환, 및 ii) Stock Option행사 등으로 인해 신주가 발행되는 경우에는 본 증권의 기준가격을 조정하지 아니한다

(4) 본 증권의 만기 평가일(혹은 중간 평가일)에 한국증권선물거래소 혹은 그의 승계기관이 당해 기초자산에 대하여 종가를 공표하지 않거나 기초자산의 매매에 심각한 장애가 발생한 것(거래정지, 기세상한가 및 기세하한가 등)으로 발행자가 판단하는 경우에 발행자는 만기 평가일(혹은 중간 평가일) 및 만기일(혹은 중도 상환일) 등의 권리내용을 재지정할 수 있다.

(5) 본 계약에서 정하지 않은 사항으로 인해 본 증권의 권리내용 변경이 불가피 한 경우 기준가격 조정은 계약당사자간의 협의에 의한다.

## 2. 투자 위험

| 구 분 | 투자위험의 주요 내용 |
|---|---|
| 투자원본에 대한 손실 위험 | 이 투자신탁은 실적배당상품으로 투자 원리금 전액이 보장 또는 보호되지 않으며, 은행예금과 달리 예금보험공사 등의 보호를 받지 않습니다. 따라서, 투자원본의 전부 또는 일부에 대한 손실의 위험이 존재하며 투자금액의 손실 내지 감소의 위험은 전적으로 투자자가 부담하게 되고, 자산운용회사나 판매회사 등 어떤 당사자도 투자손실에 대하여 책임을 지지 아니합니다. 또한, 펀드의 수익구조는 세금을 공제하기 전의 금액을 기준으로 산정한 것입니다. |
| 거래상대방 위험 | 장외파생상품 발행자는 Lehman Brothers Commercial Asia Limited이며, 신용등급은 Lehman Brothers Commercial Asia Limited를 100% 보증하는 Lehman Brothers Holdings(모회사) 기준으로 Moody's : A1, Standard & Poor's : A+, Fitch : A+ 로서 채무상환능력이 높아 투자위험도는 낮은 수준이지만, 장래 급격한 환경변화에 따라 다소 영향을 받을 가능성이 있습니다. 좀더 자세한 사항은 Lehman Brothers Commercial Asia Limited 홈페이지 (http://www.lehman.com) 및 금융감독원 전자공시(dart.fss.or.kr)를 통해 조회하실 수 있습니다. 이 투자신탁의 경우, 장외파생상품은 장외파생상품을 발행한 회사와의 직접적인 거래이므로 그 회사의 영업환경, 재무상황 및 신용상태의 악화에 따라 장외파생상품의 원리금 상환이 지연 또는 이행되지 않을 수 있습니다. |

| | |
|---|---|
| <span style="color:red">유동성위험</span> | 증권시장규모 등을 감안할 때, 투자신탁재산에서 거래량이 풍부하지 못한 종목에 투자하는 경우 투자대상 종목의 유동성부족에 따른 환금성에 제약이 발생할 수 있으며, 이는 투자신탁재산의 가치하락을 초래할 수 있습니다. 일반적으로 장외파생상품은 다른 유가증권 또는 장내파생상품과 달리 장외파생상품을 발행한 회사와 직접거래를 하여야 하므로 유동성이 낮습니다. 따라서, 수익자의 환매에 대응하여 환매금을 마련하는 등의 사유로 장외파생상품을 만기이전에 중도 매각하고자 할 때에는 중도매각이 원활하지 못할 수도 있으며, 중도매각에 따른 가격손실의 가능성도 있습니다. |
| <span style="color:red">손익구조 변동위험</span> | <span style="color:red">이 투자신탁에서 목표로 하는 손익구조와 실제 투자신탁의 수익률과는 오차가 발생할 수 있습니다.</span> 오차가 발생하는 이유는 일부 수익자의 중도환매 청구 시 중도환매 청구금액에 해당하는 주가연계장외파생상품과 실제 중도 매각하는 주가연계 장외파생상품과의 수량이 정확히 일치하지 않는 경우, 금융시장장애 등으로 상환의무가 조정되는 경우, 그리고, 조기상환사유발생으로 주가연계 장외파생상품이 상환되는 경우 등입니다. 위와 같은 이유로 오차가 발생할 수는 있으나, 자산운용회사는 사전에 제시한 손익구조와 투자신탁 수익률의 차이를 최소화하도록 최선을 다하여 운용할 것입니다. |
| 중도환매 위험 | 이 투자신탁은 최초설정일로부터 만기까지 투자하는 경우 제시된 수익구조를 목표로 운용합니다. 따라서, 수익자가 중도 환매하는 경우에는 당초 예상한 수익구조와 다를 수 있으며, 투자원본의 손실을 초래할 수 있습니다. 환매수수료가 부과되는 기간 중에 환매하는 경우에는 환매수수료의 부과 또는 장외파생상품을 중도 환매하는 경우에는 거래비용이 발생하기 때문에 투자손실이 발생하거나 손실의 폭이 더욱 확대될 수 있습니다. |
| 시장위험 및 개별위험 | 신탁재산을 채권 및 파생상품 등에 투자함으로써 유가증권의 가격변동, 이자율 등 기타 거시경제지표의 변화에 따른 위험에 노출됩니다. 또한, 상품의 상환금액 및 지급시기 조정의 가능성이 있습니다. 그리고 투자신탁재산의 가치는 투자대상종목 발행회사의 영업환경, 재무상황 및 신용상태의 악화에 따라 급격히 변동될 수 있습니다. |
| 순자산가치 변동위험 | 이 투자신탁은 환매청구일로부터 제5영업일(17시 경과 후에 환매청구 시 제6영업일)에 환매대금을 지급하므로 환매청구 시와 환매지급일까지의 기간동안의 투자신탁재산의 가치변동에 따른 위험에 노출됩니다. |

<span style="color:red">※ 예금자 보호법의 적용을 받는 은행 등에서 판매하는 경우에도 당해 투자신탁 수익증권은 예금과 달리 예금보험공사 등의 보호를 받지 못합니다.</span>

| | |
|---|---|
| <span style="color:red">장내·외 파생상품에 운용하는 경우 위험에 관한 지표의 개요 및 위험</span> | 자산운용회사는 간접투자재산을 장내파생상품 또는 장외파생상품에 운용하는 경우 대통령령이 정하는 위험에 관한 지표를 자산운용회사의 인터넷 홈페이지(<span style="color:blue">http://www.mai.co.kr</span>)를 이용하여 투자자에게 공시하여야 합니다. |

## 3. 투자 대상

삼성전자 보통주 및 국민은행 보통주에 연계된 장외파생상품에 투자

| 투자대상 | | 투자한도 | 주요 내용 |
|---|---|---|---|
| ① | 장외파생상품 | 90%이상 | 삼성전자 보통주 및 국민은행 보통주의 가격변동에 연계하여 사전에 정한 조건에 의해 수익을 지급하는 장외파생상품 |
| ② | 어음 | 10%이하 | 금융기관이 발행·매출 또는 중개한 어음·채무증서 또는 기업어음으로서 신용등급이 A2-이상인 것 |
| 단기대출 및 금융기관 예치 | | | 수익증권의 환매를 원활하게 하고 투자대기자금의 활용을 위해 운용 |

다음의 경우에는 위의 ①내지②의 투자비율을 적용하지 아니함. 다만, 라 및 마의 경우에는 투자비율 적용 예외 기간을 15일 이내로 함

　가. 투자신탁 최초설정일로부터 1개월간

　나. 투자신탁 회계기간 종료일 이전 1개월간

　다. 투자신탁 계약기간 종료일 이전 1개월간

　라. 3영업일 동안 누적하여 추가설정 또는 해지청구가 각각 투자신탁 자산총액의 10%를 초과하는 경우

　마. 투자신탁재산인 투자증권 등의 가격변동으로 ①내지②의 규정을 위반하게 되는 경우

## 4. 투자 제한

자산운용회사는 이 투자신탁재산을 운용할 때 다음에 해당하는 행위를 하여서는 아니 됩니다. 다만, 법령 및 규정에서 예외적으로 인정한 경우에는 그러하지 아니합니다.

| 구분 | 내용 | 적용예외 |
|---|---|---|
| 파생상품 투자 | - 동일회사가 발행한 투자증권을 기초자산으로 하는 파생상품 거래에 따르는 위험의 평가액이 투자신탁 자산총액의 10%를 초과하는 행위<br>- 파생상품 거래에 따른 위험평가액이 최초설정일 이후 1개월이 경과한 날로부터 이 투자신탁 자산총액의 10%를 초과하지 않는 행위 | 최초설정일로부터 1월간 |
| 단기대출 | 자산총액의 10%를 초과하여 자산운용회사의 이해관계인(법 시행령 제77조 적용)에게 단기대출로 운용하는 행위 | |
| 동일종목 | -자산총액의 10%를 초과하여 동일종목의 투자증권(동일회사가 발행한 투자증권 중 주식을 제외한 투자증권은 동일종목으로 간주)에 투자하는 행위 | |
| 후순위채 | 투자신탁재산을 그 발행인이 파산하는 때에 다른 채무를 우선 변제하고 잔여재산이 있는 경우에는 한하여 그 채무를 상환한다는 조건이 있는 후순위채권에 투자하는 행위 | |

## II. 자산의 평가, 기준가격의 산정 및 공시

**1. 자산의 평가**    간접투자재산에 속하는 자산은 그 종류별로 다음과 같이 평가합니다.

| 구분 | 내용 |
|---|---|
| ①장외파생상품 | 2 이상의 장외파생상품(채권)평가기관이 제공하는 가격의 평균 |
| ②기업어음 또는 금융기관이 발행한 채무증서 | 2 이상의 채권평가회사가 제공하는 가격을 기초로 한 가격 |

※ 기준가격 계산 시 투자신탁재산의 평가는 관련법령 및 규정에서 정하는 바에 의하되, 평가기준일에 거래실적이 없어 공정한 가치의 산정이 곤란한 자산, 시장매각이 제한되거나 매각이 곤란한 자산은 법령에 의한 가격을 기초로 하여 간접투자재산평가위원회가 정하는 가격으로 평가할 수 있습니다.

○ 장외파생상품 평가방법서의 주요 내용

　가. 기초자산이 두 개 이상인 중도상환형 ELS는 Monte Carlo simulation을 이용하여 평가.

　나. 예를 들어 기초자산이 대우증권 보통주와 한화 보통주인 경우 대우증권과 한화 주가의 개별변동성과 주가움직임의 상관관계를 이용하여 미래 시점의 주가를 예측

　다. 미래 시점의 주가를 예측할 때 Cholesky Decomposition을 이용하여 두 자산의 상관관계를 고려한 random number(난수)를 발생시키고 이러한 난수를 이용하여 log-normal 분포를 따르는 미래의 주가를 예측

　라. 중도상환결정 시점을 기준으로 예측된 주가를 이용하여 미래 시점의 상환금액을 결정하고 결정된 금액을 옵션의 발행인인 증권사의 신용등급에 해당하는 이자율을 적용. 이러한 방법은 옵션의 counterparty default risk를 반영하기 위함임

**2. 기준가격의 산정 및 공시**

| 구 분 | 내 용 |
|---|---|
| 기준가격 산정 방법 | 당일에 공고되는 기준가격은 그 직전일의 대차대조표상에 계상된 투자신탁의 자산총액에서 부채총액을 차감한 금액(순자산총액)을 직전일의 수익증권 총 좌수로 나누어 산출하며, 1좌 단위로 원 미만 셋째 자리에서 4사5입하여 원 미만 둘째 자리까지 계산합니다. |
| 기준가격 산정주기 | 매일 산정합니다. |
| 기준가격 공시시기 | 판매회사의 영업개시 시간 전 |
| 기준가격 공시방법 및 장소 | - 1,000좌 단위로 원 미만 셋째 자리에서 4사5입하여 원 미만 둘째 자리로 계산하여 공시<br>- 판매회사 영업점, 운용회사(http://www.mai.co.kr)・ 판매회사(http://www.daetoo.com) ・ 자산운용협회 (http://www.amak.or.kr)의 인터넷 홈페이지 |

## Ⅲ. 투자증권, 장내파생상품 거래 시 중개회사의 선정기준

1.중개회사 선정기준    중개회사 선정기준의 기본원칙은 간접투자재산의 이익 기여도 및 매매체결 능력 등 월 단위로 평가하여 배정비율을 결정하고 그 비율에 맞추어 중개회사를 선정 합니다. 간접투자재산에 속하는 투자증권 별로 구분하여 다음과 같이 선정합니다.

| 구 분 | 내    용 |
|---|---|
| 주식 | 매월 리서치부문, 운용지원부문, 정보제공부문, 운용기여도부문을 기준으로 리서치팀, 인덱스운용팀, 전략운용팀, 주식운용팀, 운용지원팀에서 개별평가 후 상위 중개회사를 기준으로 주식운용본부 내 협의를 통해 선정합니다. |
| 채권 등 | 매월 리서치부문, 운용지원부문, 정보제공부문, 운용 및 회사기여도부문을 기준으로 리서치팀, 채권운용팀, 운용지원팀에서 개별 평가한 후 상위 중개회사를 기준으로 채권운용본부 내 협의를 통해 선정합니다. |
| 주식관련 장내파생상품 | 매월 리서치부문, 운용지원부문, 정보제공부문, 운용기여도부문을 기준으로 리서치팀, 인덱스운용팀, 전략운용팀, 주식운용팀, 운용지원팀에서 개별평가 후 상위 중개회사를 기준으로 주식운용본부 내 협의를 통해 선정합니다. |
| 채권관련 장내파생상품 | 매월 리서치부문, 운용지원부문, 정보제공부문, 운용 및 회사기여도부문을 기준으로 리서치팀, 채권운용팀, 운용지원팀에서 개별 평가한 후 상위중개회사를 기준으로 채권운용본부 내 협의를 통해 선정합니다. |

● 투자증권, 장내파생상품 중 일부 자산은 상기 기준이 적용되지 않을 수 있습니다.

● 상기 선정 기준은 변경될 수 있습니다.

## 제2부  자산운용회사 및 투자신탁의 관계인에 관한 사항

### Ⅰ. 자산운용회사

**1. 회사의 개요**

| 회 사 명 | 마이애셋자산운용㈜ |
|---|---|
| 주 소 | 서울시 영등포구 여의도동 34-9 한국증권금융 10층 |
| 연 락 처 | 02) 3774-6114 |
| 주 요 주 주 | 김은숙 외 |
| 자 본 금 | 154.4억 원 |
| 회 사 연 혁 | - 1987년 11월 4일 설립<br>- 1999년 12월 자산운용업 등록 |

**2. 주요 업무**

➢ 업무에 관한 사항
- 투자신탁의 설정, 해지
- 투자신탁재산의 운용,운용지시 업무
- 투자회사재산의 운용
- 그 밖에 대통령령이 정하는 업무

➢ 의무 및 책임
- 자산운용회사가 법령, 약관 또는 투자설명서에 위배되는 행위를 하거나 그 업무를 소홀히 하여 수익자에게 손해를 발생시킨 때에는 그 손해를 배상할 책임이 있습니다.
- 자산운용회사가 손해배상책임을 부담하는 경우 관련되는 이사 또는 감사(감사위원회의 위원을 포함합니다)에게도 귀책사유가 있는 때에는 이들과 연대하여 그 손해를 배상할 책임이 있습니다.
- 자산운용회사, 수탁회사, 판매회사 등이 법에 의하여 수익자에 대한 손해배상책임을 부담하는 경우 귀책사유가 있는 때에는 연대하여 손해배상책임을 집니다.

**3. 최근 2개 사업연도의 요약 재무내용**

(단위:백만 원)

[요약대차대조표]

[요약손익계산서]

| 구 분 | 제21기<br>(06.4.01~<br>07.3.31) | 제20기<br>(05.4.01~<br>06.3.31) | 구 분 | 제21기<br>(06.4.01~<br>07.3.31) | 제20기<br>(05.4.01~<br>06.3.31) |
|---|---|---|---|---|---|
| 유동자산 | 3,473 | 6,011 | 영업수익 | 2,522 | 2,546 |
| 고정자산 | 4,422 | 2,502 | 영업비용 | 2,875 | 3,278 |
| 자산총계 | 7,895 | 8,514 | 영업이익 | -353 | -732 |
| 유동부채 | 96 | 491 | 영업외수익 | 169 | 812 |
| 고정부채 | 62 | 45 | 영업외비용 | 65 | 101 |
| 부채총계 | 157 | 536 | 경상이익 | -249 | -22 |
| 자본금 | 15,441 | 15,441 | 특별손익 | | |
| 이익잉여금 등 | -7,704 | -7,463 | 세전당기순이익 | -249 | -22 |
| 자본총계 | 7,737 | 7,977 | 당기순이익 | -249 | -977 |

4. 운용자산규모
  (2007. 6. 8)
  (단위 : 억 좌)

| 주식형 | 혼합형 | 채권형 | MMF | 파생<br>상품 | 부동산 | 특별<br>자산 | 합 계 |
|---|---|---|---|---|---|---|---|
| 629 | 7,888 | 844 | – | 1,000 | 620 | 1,786 | 12,767 |

5. 운용전문인력에
  관한 사항

| 성 명 | 주민번호 | 주요경력 |
|---|---|---|
| 이복상 | 641118-<br>1＊＊＊＊＊＊ | – 연세대 법학과<br>– 현, 마이애셋자산운용 운용본부장 |

주1) 투자신탁재산의 운용은 팀제에 의하여 운용하고, 자산운용회사의 사정에 따라 펀드매니저가 교체
   될 수 있습니다.

주2) 상기 인력에 관한 보다 자세한 사항은 자산운용회사 또는 자산운용협회에서 추가로 정보를 얻을 수
   있습니다.

5-1.운용전문인력의
  담당펀드에 관한

  **사항** (2007. 5. 31)

  (단위 : 개, 억 좌)

| 직명 | 성 명 | 펀드 수 | | 펀드규모 | |
|---|---|---|---|---|---|
| | | 단독운용 | 공동운용 | 단독운용 | 공동운용 |
| 운용본부장 | 이복상 | 5 | 6 | 1,160 | 467 |

## Ⅱ. 판매회사

**1. 회사의 개요**

| 판 매 회 사 명 | 주    소 | 상담가능 전화번호 |
|---|---|---|
| 대한투자증권 | 서울시 영등포구 여의도동 27-3 | 1588-3111 |
| 기 타 | | |

**2. 주요 업무**

➢  업무에 관한 사항
  – 수익증권 판매업무 (수익증권의 모집 및 매출업무)
  – 수익증권 환매업무
  – 수익증권 교부업무
  – 이익분배금 및 상환금 지급업무
  – 각종 장부·서류 등의 비치, 수익자 앞 제공 및 공고 업무
  – 기타 법령 및 신탁약관에서 규정한 사항

➢  의무 및 책임
  – 신탁약관의 규정에 의하여 투자신탁을 해지할 때 판매회사는 투자신탁의 해지사
    유, 해지일자, 상환금 등의 지급방법, 기타 주요 사항을 수익자에게 개별 통지하
    거나 신탁약관에 정하는 바에 따라 공고합니다.
  – 수탁회사가 이익분배금 또는 상환금 등을 판매회사에게 인도한 후에는 판매회사
    가 수익자에 대하여 그 지급에 대한 책임을 부담합니다.
  – 판매회사는 수탁회사로부터 인도 받은 이익분배금 또는 상환금 등을 지체 없이
    수익자에게 지급하여야 합니다. 다만, 투자신탁계약기간종료일 현재 투자신탁재산
    인 유가증권 등의 매각지연 등의 사유로 인하여 상환금 등의 지급이 곤란한 경우
    에는 신탁약관 제22조의 규정을 준용하여 그 사유가 해소된 이후에 지급할 수 있
    습니다.
  – 자산운용회사, 수탁회사, 판매회사 등이 법에 의하여 수익자에 대한 손해배상책임
    을 부담하는 경우 귀책사유가 있는 때에는 연대하여 손해배상책임을 집니다.

➢  판매행위준칙 등
  – 판매회사는 다음 각 호의 행위를 금지하는 내용을 포함하는 판매행위준칙(이하 이
    조에서 "판매행위준칙"이라 함)을 제정하여 금융감독원장에게 보고하여야 합니다
    . 판매행위준칙을 변경하는 경우에도 또한 같습니다.
    1. 투자원금의 보장 등 수익을 보장하는 권유행위
    2. 투자자로부터 판매에 따른 대가를 수수하는 행위(판매와 직접 관련된 수수료는
       제외)
    3. 판매업무와 관련하여 취득한 정보를 자신 또는 제3자의 이익을 위하여 이용하는
       행위
    4. 허위표시 또는 중요한 사항에 대하여 오해를 유발할 수 있는 표시행위
    5. 그 밖에 투자자의 이익을 해할 우려가 있는 행위로서 법시행령이 정하는 행위
  – 판매회사의 판매업무를 담당하는 임·직원은 판매행위준칙을 준수하여야 합니다.
  – 판매회사는 자기가 판매하는 간접투자증권의 간접투자재산에 관한 정보를 고유재산,
    또는, 자기가 판매하는 다른 간접투자증권의 판매를 위하여 이용하여서는 아니 됩니

다.
– 자산운용회사는 법 제55조의 규정에 의하여 판매회사를 통하여 간접투자증권을 판매함으로써 취득하게 된 간접투자에 관한 정보를 법 제4조제3항의 규정에 의한 간접투자증권의 판매에 이용하여서는 아니 됩니다.
– 판매회사의 판매업무를 담당하는 임·직원은 법시행령이 정하는 바에 따라 판매업무에 관한 교육을 이수하여야 합니다.
– 자산운용협회는 법 제57조제1항의 규정에 의한 판매행위준칙과 관련하여 판매회사가 공통으로 사용할 수 있는 표준판매행위준칙을 제정할 수 있습니다.

## Ⅲ. 수탁회사

**1. 회사의 개요**

| 회사명 | 하나은행 |
|---|---|
| 주소 및 연락처 | 서울시 중구 을지로1가 101-1 |
| 회사연혁 | 홈페이지 참조(www.hanabank.com) |

**2. 주요업무**

➢ 업무에 관한 사항
  – 투자신탁재산의 보관 및 관리
  – 자산운용회사의 투자신탁재산 운용지시에 따른 자산의 취득 및 처분의 이행
  – 자산운용회사의 투자신탁재산 운용지시에 따른 수익증권의 환매대금 및 이익금의 지급
  – 자산운용회사의 투자신탁재산 운용지시 등에 대한 감시
  – 그 밖에 대통령령이 정하는 업무

➢ 의무 및 책임
  – 수탁회사는 투자설명서가 법령 또는 신탁약관에 부합하는지의 여부, 투자신탁재산의 평가의 공정성 또는 기준가격산출의 적정성 등을 확인하여야 합니다.
  – 수탁회사는 투자신탁재산의 운용에 관한 자산운용회사의 지시가 법령, 신탁약관 또는 투자설명서에 위반되는 경우에는 자산운용회사에 대하여 그 지시의 철회·변경 또는 시정을 요구하여야 합니다.
  – 수탁회사는 투자신탁의 회계기간 종료 후 2월 이내에 법 제123조에서 규정한 수탁회사보고서를 수익자에게 제공하여야 합니다. 수탁회사보고서를 제공하는 경우 판매회사를 통하여 서면으로 우송하여야 합니다. 다만, 관련 법령등에서 달리 정한 경우는 그 방법을 따를 수 있습니다.
  – 자산운용회사, 수탁회사, 판매회사 등이 법에 의하여 수익자에 대한 손해배상책임을 부담하는 경우 귀책사유가 있는 때에는 연대하여 손해배상책임을 집니다.

## Ⅳ. 일반사무관리회사

**1. 회사의 개요**

| 회사명 | 에이브레인 |
|---|---|
| 주소 및 연락처 | 서울시 영등포구 여의도동 23-2 |
| 회사연혁 | 홈페이지 참조(www.abrain.co.kr) |

**2. 주요 업무**        ➢ 신탁재산의 기준가격 계산

## Ⅴ. 채권평가회사

**1. 회사의 개요**

| 회사명 | 주 소 | 연락처 | 연혁 |
|---|---|---|---|
| 한국채권평가 | 서울시 종로구 세종로 211<br>광화문빌딩 9층 | 02) 3215-1400 | 설립일 : 2000. 6. 20<br>자본금 : 30억원 |
| KIS채권평가 | 서울시 영등포구 여의도동 35-6<br>삼천리빌딩 2층 | 02) 399-3350 | 설립일 : 2000. 5. 29<br>자본금 : 50억원 |
| NICE채권평가 | 서울시 영등포구 여의도동 15<br>한섬여의도빌딩 6층 | 02) 398-3900 | 설립일 : 2000. 6 .16<br>자본금 : 47.5억원 |

**2. 주요 업무**

➢ 업무에 관한 사항

: 간접투자재산에 속하는 채권 등 투자증권 및 파생상품의 가격을 평가하고 이를 간
접투자기구에게 제공

## 제4부 수익자의 권리 및 공시에 관한 사항

### Ⅰ. 수익자의 권리

**1. 수익자총회 및 의결권**

<의결 사항>

수익자는 수익자총회에서 다음의 사항에 관하여 의결할 수 있습니다.

(1)투자신탁보수 또는 수수료 인상, 수탁회사 변경, 신탁기간 변경 등 신탁약관 변경에 관한 사항

(2)수익증권 환매의 연기에 관한 사항

(3)투자신탁의 해지에 관한 사항

(4)투자신탁의 합병에 관한 사항

<의결권>

의결권에 관한 사항은 다음과 같습니다.

(1)의결권은 수익증권 1좌마다 1개로 합니다.

(2)수익자는 대리인으로 하여금 그 의결권을 행사하게 할 수 있습니다. 이 경우에 그 대리인은 대리권을 증명하는 서면을 수익자총회에 제출하여야 합니다. 다만, 수익자총회의 결의에 관하여 특별한 이해관계가 있는 자는 의결권을 행사할 수 없습니다.

<의결 방법>

수익자총회는 다음에 정하는 바에 따라 의안을 결의하게 됩니다.

(1)발행된 수익증권 총좌수의 과반수를 보유하는 수익자의 출석으로 성립되고, 출석한 수익자의 의결권의 3분의 2 이상과 발행된 수익증권 총좌수의 3분의 1이상의 찬성으로 의결합니다.

(2)수익자는 수익자총회에 출석하지 아니하고 서면에 의하여 의결권을 행사할 수 있으며, 서면으로 의결권을 행사하실 수익자는 자산운용사가 우편 또는 전자메일에 의하여 교부한 서면에 의결권행사의 내용을 기재하여 수익자총회의 회일 전일까지 자산운용회사에 제출하여야 합니다. (서면에 의하여 행사한 의결권의 수도 수익자총회에 출석하여 행사한 의결권의 수에 산입합니다.)

<소집 주체 및 통지>

(1)수익자총회는 자산운용회사가 소집하며 자산운용회사의 본점소재지 또는 이에 인접한 지역에서 개최합니다. 다만, 수탁회사 또는 발행된 수익증권 총좌수의 5% 이상을 보유한 수익자가 수익자총회의 목적과 소집의 이유를 기재한 서면을 제출하여 수익자총회의 소집을 자산운용회사에 요청하는 경우 자산운용회사는 1월 이내에 수익자총회를 소집하여야 합니다.

(2)자산운용회사가 수익자총회를 소집할 경우에는 수익자총회일을 정하여 2주간 전에 각 수익자에 대하여 회의의 목적사항을 기재한 통지서를 서면 또는 컴퓨터통신으로 통지하여야 합니다.

<연기수익자총회>

자산운용회사는 수익자총회의 회의개시 예정시각에서 1시간이 경과할 때까지 출석한 수익증권총수가 발행된 수익증권총수의 과반수에 미달하는 경우 다음과 같이 수익자총회를 연기할

수 있습니다.

(1) 수익자총회가 연기된 경우 자산운용회사는 그 날부터 2주 이내에 연기된 수익자총회(이하 "연기수익자총회"라 합니다)를 소집하여야 합니다. 이 경우 연기수익자총회일 1주 전까지 연기수익자총회의 소집을 통지하여야 합니다.

(2) 연기수익자총회의 회의개시 예정시각에서 1시간이 경과할 때까지 출석한 수익자의 수익증권총수가 발행된 수익증권총수의 과반수에 미달하는 때에는 출석한 수익자의 수익증권 총수로써 수익자총회가 성립된 것으로 봅니다. 이 경우 수익자총회의 의결에 관하여 출석한 수익자의 의결권의 3분의 2 이상의 찬성으로 의결합니다.

**2. 잔여재산분배**    이 투자신탁의 수익자는 투자신탁계약기간의 종료 또는 투자신탁의 해지에 따라 발생하는 투자신탁원본의 상환금 및 이익분배금 (이하"상환금 등"이라 합니다)에 대하여 그 지급을 청구할 수 있습니다.

수탁회사는 투자신탁계약기간의 종료 및 투자신탁 해지에 따른 상환금 등을 자산운용회사의 지시에 따라 지체 없이 판매회사에게 인도합니다.

수탁회사가 상환금 등을 판매회사에게 인도한 후에는 판매회사가 수익자에 대하여 그 지급에 대한 책임을 부담합니다.

판매회사는 수탁회사로부터 인도 받은 상환금 등을 지체 없이 수익자에게 지급하여야 합니다. 다만, 투자신탁계약기간종료일 현재 투자신탁재산인 유가증권 등의 매각지연 등의 사유로 인하여 상환금 등의 지급이 곤란한 경우에는 신탁약관 제 22조의 규정을 준용하여 그 사유가 해소된 이후에 지급할 수 있습니다.

수익자가 상환금 등을 지급 받고자 할 때에는 판매회사에게 수익증권을 제출하여야 합니다.

**3. 장부·서류의 열람**
**및 등·초본 교부**
**청구권**
수익자는 자산운용회사 또는 판매회사에 대하여 영업시간 내에 당해 수익자에 관련된 투자신탁재산에 관한 장부 서류의 열람이나 등본 또는 초본의 교부를 청구할 수 있으며, 자산운용회사 또는 판매회사는 정당한 사유 없이 이를 거절하지 못합니다.

수익자가 열람이나 등본 또는 초본의 교부를 청구할 수 있는 장부·서류는 다음과 같습니다.

(1) 간접투자재산명세서
(2) 간접투자증권기준가격대장
(3) 재무제표 및 그 부속명세서
(4) 자산매매거래내역서

**4. 손해배상책임**    자산운용회사가 법령, 약관 또는 투자설명서에 위배되는 행위를 하거나 그 업무를 소홀히 하여 수익자에게 손해를 발생시킨 때에는 그 손해를 배상할 책임이 있습니다.

자산운용회사가 손해배상책임을 부담하는 경우 관련되는 이사 또는 감사(감사위원회의 위원을 포함한다)에게도 귀책사유가 있는 때에는 이들과 연대하여 그 손해를 배상할 책임이 있습니다.

자산운용회사·수탁회사·판매회사 등이 법에 의하여 간접투자자에 대한 손해배상책임을 부담하는 경우 귀책사유가 있는 때에는 연대하여 손해배상책임을 집니다.

**5. 재판관할**      자산운용회사, 수탁회사 또는 판매회사가 이 투자신탁계약에 관하여 소송을 제기한 때에는 소송을 제기하는 자의 본점소재지를 관할하는 법원에 제기하여야 합니다.

수익자가 소송을 제기하는 때에는 수익자의 선택에 따라 수익자의 주소지 또는 수익자가 거래하는 자산운용회사, 수탁회사 또는 판매회사의 영업점포 소재지를 관할하는 법원에 제기할 수 있습니다. 다만, 수익자가 외국환거래법 제3조제1항 제13호의 규정에 의한 비거주자인 경우에는 수익자가 거래하는 자산운용회사, 수탁회사 또는 판매회사의 영업점포 소재지를 관할하는 법원에 제기하여야 합니다.

&lt;자산운용회사 관할재판소 안내&gt;
서울중앙지방법원
- 　주소: 서울특별시 서초구 서초동 1701-1
대표전화: 02-530-1114

**6. 기타 수익자의 권리보호에 관한 사항**      이 상품의 신탁약관 등 상품에 대한 추가정보를 원하시는 고객은 이 상품의 자산운용회사 또는 판매회사에 언제든지 자료를 요구할 수 있습니다.

이 상품의 기준가 변동 등 운용실적에 관해서는 이 상품의 자산운용회사 또는 판매회사에 언제든지 요구할 수 있습니다.

이 상품의 투자설명서 및 기준가변동등은 자산운용협회에서 열람·복사하거나 자산운용협회의 인터넷 (http://www.amak.or.kr)에서 확인할 수 있습니다.

## II. 공시에 관한 사항

**1. 정기공시 및 보고서**      ➢　영업보고서

자산운용회사는 간접투자재산에 관한 영업보고서를 금융감독위원회가 정하는 기준에 따라 다음 각호의 서류로 구분하여 작성하고, 매 분기 종료 후 20 일까지 이를 금융감독위원회 및 자산운용협회에 제출하여야 합니다.

(1) 투자신탁의 설정현황 또는 투자회사의 자본변동상황

(2) 투자신탁재산의 운용현황과 수익증권의 기준가격표

(3) 법시행령 제 80 조제 2 항의 규정에 의한 의결권공시대상법인에 대한 의결권의 행사여부 및 그 내용(의결권을 행사하지 아니한 경우에는 그 사유를 포함합니다)이 기재된 서류

➢　감사보고서

회계감사인은 간접투자재산에 대한 회계감사를 종료한 때에는 다음 각호의 사항이 포함된 회계감사보고서를 작성하여 투자신탁의 자산운용회사에게 지체없이 제출하여야 하며, 회계감사보고서를 제출 받은 자산운용회사는 금융감독위원회 및 자산운용협회와 그 간접투자기구의 판매회사, 수탁회사 또는 자산보관회사에 이를 지체없이 제출하여야 합니다.

(1) 대차대조표

(2) 손익계산서

(3) 기준가격계산서

(4) 이해관계인과의 거래내

  ➢  자산운용보고서

자산운용회사는 자산운용보고서를 작성하여 수탁회사의 확인을 받아 3 월에 1 회 이상 당해 간접투자기구의 간접투자자에게 제공하여야 합니다. 다만, 간접투자자가 수시로 변동되는 등 간접투자자의 이익을 해할 우려가 없는 경우로서 대통령령이 정하는 경우에는 그러하지 아니합니다.

자산운용회사가 법 제 121 조제 1 항의 규정에 따라 간접투자자에게 자산운용 보고서를 제공하는 경우에는 판매회사를 통하여 우송하여야 합니다. 다만, 간접투자자가 전자우편을 통하여 자산운용보고서를 수령한다는 의사 표시를 한 경우에는 전자우편에 의하여 제공할 수 있습니다.

  ➢  수탁회사보고서

수탁회사는 투자신탁의 회계기간 종료 후 2 월 이내에 법 제 123 조에서 규정한 수탁회사보고서를 수익자에게 제공하여야 합니다.

수탁회사보고서를 제공하는 경우 판매회사를 통하여 서면으로 우송하여야 합니다. 다만, 관련 법령 등에서 달리 정한 경우는 그 방법을 따를 수 있습니다.

  ➢  기타 장부 서류

자산운용회사, 수탁회사, 판매회사는 그 업무에 관한 장부 및 서류를 작성하여 본점 및 지점에 비치하거나 인터넷 홈페이지 (자산운용회사:http://www.mai.co.kr, 수탁회사: http://www.hanabank.com,판매회사: http://www.daetoo.com)를 이용하여 공시하여야 합니다.

2. 수시 공시    ➢  **약관 변경사항에 대한 공시**

신탁약관의 내용 중 다음 각 호에 해당하는 사항의 변경은 수익자총회의 의결에 의하여야 합니다. 이 경우 자산운용회사는 수익자총회의 소집통지를 증권예탁결제원에 위탁하여야 합니다.

(1) 자산운용회사, 수탁회사 등이 받는 신탁보수 또는 그 밖의 수수료의 인상

(2) 수탁회사의 변경

(3) 투자신탁계약기간의 변경

(4) 투자신탁종류의 변경

(5) 자산운용회사의 영업양도

(6) 환매금지투자신탁으로의 변경

자산운용회사는 상기의 의결사항 이외의 변경사항은 영업점포 내에 1 월 이상 게시하고 자산운용회사(http://www.mai.co.kr)·,판매회사(http://www.daetoo.com)                    및 자산운용협회(http://www.amak.or.kr)의 인터넷 홈페이지 또는 자산운용회사, 판매회사의 본,지점 및 영업소에 게시하거나 전자우편을 이용하여 수익자에게 통보하여야 하며, 일간신문에 공고를 하는 때에는 서울경제신문에 공고하되, 2 이상의 일간신문에 공고하는 때에는 헤럴드경제에도 공고합니다. 다만, 수익자의 이익에 영향을 미치지 아니하는 단순한 사항의 변경은 게시, 개별통지, 신문공고 또는 컴퓨터 통신을 통한 공고를 하지 아니할 수 있습니다.


➢ **수시공시**

자산운용회사는 다음 각 호의 (1)내지 (8)항에 해당하는 사항을 그 사유발생 후 지체없이 자산운용회사(http://www.mai.co.kr),판매회사(http://www.daetoo.com)    및 자산운용협회 (http://www.amak.or.kr)의 인터넷 홈페이지 또는 자산운용회사·판매회사의 본·지점 및 영업소에 게시하거나 전자우편을 이용하여 수익자에게 통보하여야 합니다.

(1) 운용전문인력의 변경

(2) 환매연기 또는 환매재개의 결정 및 그 사유

(3) 법령이 정하는 부실자산이 발생한 경우 그 내역 및 상각율

(4) 수익자총회의 의결내용

(5) 이 신탁약관 또는 투자설명서의 변경. 다만, 법령의 개정 또는 금융감독원장의 명령에 따라 신탁약관을 변경하거나, 단순한 자구수정 등 경미한 사항을 변경하는 경우는 제외

(6) 자산운용회사의 합병, 분할 또는 영업의 양도·양수

(7) 자산운용회사 또는 일반사무관리회사가 기준가격을 잘못 계산하여 이를 수정하는 경우 그 내용

(8) 그 밖에 자산운용회사의 재무건전성 또는 투자신탁재산의 운용에 관한 중요사항으로 법령이 정하는 사항

## 투자설명서 교부 및 주요내용 설명 확인서

□ 판 매 일         : _____

□ 판매회사 및 점포명 : _____

□ 판매직원         : 직위 _____ 성명 _____ 서명 또는 (인)

□ 투자자 확인 사항

※이 투자신탁에 편입된 장외파생상품의 기초자산인 삼성전자 보통주 또는 국민은행 보통주 중 한 종목이라도 만기 평가일의 주가가 0 원으로 하락하는 경우 투자원금의 100%까지 손실이 발생할 수 있습니다.

※장외파생상품은 장외파생상품을 발행한 회사와의 직접적인 거래이므로 그 회사의 영업환경, 재무상황 및 신용상태의 악화에 따라 장외파생상품의 원리금 상환이 지연 또는 이행되지 않을 수 있습니다.

◦ 투자자께서는 투자설명서를 제공받고 그 주요내용에 대한 설명을 들으신 후 아래의 내용을 밑줄 친 곳에 똑같이 자필로 기재하고 서명 또는 기명날인 하시기 바랍니다.

   ＊ 투자설명서를 **제공받고** 그 주요내용을 **설명 들었음**.

   **(투자설명서를)**_____**(그 주요내용을)**_____.

                                  년     월     일

                      성명 _____ 서명 또는 (인)