# EXHIBIT A

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

4   In re:

5

6   LEHMAN BROTHERS HOLDINGS INC.,

7                              Case No. 08-13555(SCC)

8          Debtor.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10   In re:

11

12   LEHMAN BROTHERS INC.          Adv. Case No. 08-01420(SCC)

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

14

15                    U.S. Bankruptcy Court

16                    One Bowling Green

17                    New York, New York

18

19                    May 5, 2015

20                    10:05 AM

21

22

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

Page 2

1   Hearing re:  Doc# 49172 Motion to Approve Compromise: Motion

2   pursuant to Rule 9019 of the Federal Rules of Bankruptcy

3   Procedure and Section 105(a) of the Bankruptcy Code for

4   Approval of Settlement Agreement Relating to restructured

5   Asset Certificates with Enhanced Returns, Series 2006-20AT

6   Credit Defaults Swap Agreement and Trust Agreement

7

8   Hearing re:  Adv. 08-01420 - Doc# 7697 Trustee's One Hundred

9   Sixty-Third Omnibus Objection to General Creditor Claim (No

10  Liability Claims)

11

12  Hearing re:  Doc# 49107 Motion to Vacate the "Alternative

13  Dispute Resolution Procedures Order for Indemnification

14  Claims of the Debtors against Mortgage Loan Seller, First

15  Mortgage Corporation, and Memorandum of Law in Support

16

17  Hearing re:  Doc# 49112 Motion to Vacate the "Alternative

18  Dispute Resolution Procedures Order for Indemnification

19  Claims of the Debtors against Mortgage Loan Seller, Republic

20  State Mortgage Company, and Memorandum of Law in Support

21

22  Hearing re:  Doc# 49106 Motion to Vacate the "Alternative

23  Dispute Resolution Procedures Order for Indemnification

24  Claims of the Debtors against Mortgage Loan Seller,

25  Directors Mortgage, Inc., and Memorandum of Law in Support

Page 3

1    Hearing re:  Doc# 48242 Motion to Vacate the "Alternative

2    Dispute Resolution Procedures Order for Indemnification

3    Claims of the Debtors against Mortgage Loan Seller, Stearns

4    Lending, LLC f/k/a Stearns Lending, Inc."

5

6    Hearing re:  Doc# 49167 Motion to Vacate the "Alternative

7    Dispute Resolution procedures Order for Indemnification

8    Claims of the Debtors against Mortgage Loan Seller, Apex

9    Home Loans, Inc."

10

11   Hearing re:  Doc# 49027 Motion to Vacate the "Alternative

12   Dispute Resolution procedures Order for Indemnification

13   Claims of the Debtors against Mortgage Loan Seller," as it

14   applies to Group 2000 Real Estate Services, Inc.

15

16   Hearing re:  Doc# 49060 Motion to Vacate the "Alternative

17   Dispute Resolution procedures Order for Indemnification

18   Claims of the Debtors against Mortgage Loan Seller, Oaktree

19   Funding Corporation: Pursuant to Rule 60(b)(6) of the

20   Federal Rules of Civil Procedure and Memorandum of Law in

21   Support Thereof

22

23   Hearing re:  Doc# 49064 Motion to Vacate the "Alternative

24   Dispute Resolution procedures Order for Indemnification

25   Claims of the Debtors against Mortgage Loan Seller, Gateway

1   Bank, FSB" Pursuant to Rule 60(b)(6) of the Federal Rules of

2   Civil Procedure and Memorandum of Law in Support Thereof

3

4   Hearing re:  Doc# 49067 Motion to Vacate the "Alternative

5   Dispute Resolution procedures Order for Indemnification

6   Claims of the Debtors against Mortgage Loan Seller, American

7   Bank" Pursuant to Rule 60(b)(6) of the Federal Rules of

8   Civil Procedure and Memorandum of Law in Support Thereof

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

Page 5

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorneys for Lehman Brothers Holdings Inc.

4         767 Fifth Avenue

5         New York, NY 10153-0119

6

7    BY:  GARRETT A. FAIL, ESQ.

8         CANDACE M. ARTHUR, ESQ.

9

10   HUGHES HUBBARD & REED LLP

11        Attorneys for the SIPA Trustee, Mr. Giddens

12        One Battery Park Plaza

13        New York, NY 10004-1482

14

15   BY:  STUART N. MITCHELL, ESQ.

16        JEFFREY S. MARGOLIN, ESQ.

17

18   CHAPMAN AND CUTLER LLP

19        Attorney for U.S. Bank National Association

20        111 West Monroe Street

21        Chicago, IL 60603-4080

22

23   BY:  MARK D. RASMUSSEN, ESQ.

24

25

Page 6

1    WOLLMUTH MAHER & DEUTSCH LLP

2         Attorneys for Lehman Brothers Holdings Inc.

3         500 Fifth Avenue

4         New York, NY 10110

5

6    BY:  WILLIAM A. MAHER, ESQ.

7         THOMAS P. OGDEN, ESQ.

8

9    AMERICAN MORTGAGE LAW GROUP, P.C.

10        Attorney for Apex, American Bank, Directors, Republic,

11        First Mortgage, Oaktree

12        75 Rowland Way

13        Suite 350

14        Novato, CA 94945

15

16   BY:  TRACY HENDERSON, ESQ.

17

18   BLANK ROME LLP

19        Attorney for Stearns Lending and Group 2000 Real

20        Estate Services, Inc.

21        The Chrysler Building

22        405 Lexington Avenue

23        New York, NY 10174-0208

24

25   BY:  TIMOTHY W. SALTER, ESQ.

```
 1   JONES & KELLER

 2        1999 Broadway

 3        Suite 3150

 4        Denver, CO 80202

 5

 6   BY:  MICHAEL A. ROLLINS, ESQ.

 7

 8   ALSO PRESENT:

 9   MATTHEW CANTOR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 8

```
 1                     P R O C E E D I N G S

 2              THE CLERK:  All rise.

 3              THE COURT:  Please have a seat.  How is everyone

 4     today?  I see you brought the big guns today, Mr. Fail.

 5              MR. FAIL:  I did.

 6              THE COURT:  Well, good morning.  This is the first

 7     time that a Lehman hearing has been held since we lost

 8     Harvey Miller, and I wanted to take a quick moment to

 9     express our condolences to everyone at the Weil firm, and

10     indeed to hundreds of folks, if not thousands, around our

11     practice here in New York and elsewhere who had the gift of

12     working with Harvey and getting to know Harvey, and even

13     being on the opposite side as Harvey, because simply being

14     in his presence was a memorable experience.

15              This case of course was his largest, one that he

16     was extremely proud of, and was I think a little nervous

17     when it got handed over to me, and I assured him that I

18     would try my best to take good care of it and not mess it

19     up.  The jury is still out on that one.

20              But we think about him every day as we think about

21     Judge Lifland.  I think the two of them, and I know that my

22     colleagues share this view, they're truly irreplaceable.

23              There is -- there was and there is no one like

24     Harvey, at many, many levels, and he will be deeply missed.

25              And I know that the firm and those close to him
```

Page 9

1    are planning a memorial service, so I won't go on at too

2    much length, but I did want to share with you that some

3    months ago when it was beginning to be known that he was not

4    well, although the reasons were not known, he reached out to

5    me in response to an expression of concern that I had

6    conveyed to him, and he wrote me a note, which I had the

7    sense would be the last time that I ever would have the

8    privilege of hearing from him, and the words with which he

9    closed I think are important, and they are, "Enjoy and

10   remember to laugh."

11          So for a man who approached everything that he did

12   with the most utmost seriousness and purpose and drive the

13   fact that he told me to remember to laugh was something I'll

14   always treasure.

15          So thank you for listening.

16          MR. FAIL:  Good morning, Your Honor, Garrett Fail

17   of Weil, Gotshal & Manges.

18          On behalf of Harvey's wife, Ruth, his friends and

19   colleagues of Weil, and many others, thank you for your

20   recognition of Harvey this morning.

21          It is most appropriate to remember Harvey in this

22   court in the Lehman cases and with remarks from Your Honor

23   in particular.  Your respect for Harvey was mutual.

24          As you noted earlier this year he wrote to you

25   about your tenor on the court and he said:

1        "Words actually fail me inadequately describing

2   the excellent quality of legal scholarship and judicial

3   temperament peppered with seeds of pragmatism.

4        You have, like your predecessors, elevated the

5   status and prestige of the bankruptcy bench of the Southern

6   District of New York.

7        I will miss the opportunity watch you in action,

8   but hope to continue to read of your exploits."

9        I know that he did and that he enjoyed doing so.

10       We all owe a debt of gratitude to Harvey and to

11  the legacy that he created and left for us to live up to.

12  He'll be sorely missed.

13       Your Honor, before turning to the agenda Matt

14  Cantor, chief general counsel of Lehman Brothers Holdings

15  Inc., asked if he might say a few words.

16            THE COURT:  Certainly.

17            MR. FAIL:  Thank you.

18            MR. CANTOR:  Thank you, Your Honor, and appreciate

19  the words for Harvey, and Garrett thank you for saying that.

20  We were going to do a stay of the estate stay today but

21  we're going put that off 'til next month.

22            THE COURT:  Okay.

23            MR. CANTOR:  But, you know, Harvey was a good

24  friend, good mentor, spent a lot of hours --

25            THE COURT:  And you folks have made me cry.  And I

1   purposefully left out the part of that email that you read,

2   Mr. Fail.

3          MR. CANTOR:  Right.

4          THE COURT:  So you did not have my permission to

5   read that, but be that as it may.

6          MR. FAIL:  Strike it from the record.

7          MR. CANTOR:  But yes, you know, he was an

8   incredible person, and what wasn't known to most was how

9   important it was for him that every member to laugh.

10          Thank you, Judge.

11          THE COURT:  I think that it's hard to explain to

12   those who don't live and work around here what this is

13   about.  And we all know it and we all feel it and we're

14   extremely lucky to work in that kind of environment, because

15   I think it's extremely, extremely rare.

16          MR. ARTHUR:  Good morning, Your Honor.

17          THE COURT:  Good morning.

18          MR. ARTHUR:  For the record, Candace Arthur, Weil,

19   Gotshal & Manges.

20          Before turning to the agenda I would like to thank

21   the Court for the moving words.  I echo the sentiments of my

22   colleague, Garrett Fail, and those of Mr. Cantor.

23          I always viewed Harvey as larger than life, and

24   it's been a difficult adjustment to living in a world that

25   doesn't have Harvey Miller.

1          During his last month he shared with me that life

2     was full of twists and turns, and although he hit a bad one

3     and was trying to cope he had very found memories that

4     helped make it better, and I think there is some solace for

5     many of us that we hope to create that.  I can't think in

6     the absence of a funeral service of a better place to honor

7     his legacy than this court.  So, I do thank you for that.

8          Turning to the matter that's before the Court

9     today, we filed the agenda letter yesterday.

10          THE COURT:  Yes.

11          MR. ARTHUR:  And I am appearing on behalf of

12     Lehman Brothers Holdings Inc. in its capacity as the plan

13     administrator.

14          As Your Honor will have noted we (indiscernible)

15     move forward with one uncontested matter.

16          On April 3rd the plan administrator filed a motion

17     pursuant to Bankruptcy Rule 9019 and Section 105(a) of the

18     Bankruptcy Code seeking approval of a settlement agreement

19     relating to the restructured asset certificates with

20     enhanced returns, we refer to it as racers series 2006-20AT

21     trust transactions.

22          We provided the Court with a copy of the

23     confidential settlement agreement on April 22nd and filed

24     the declaration of Laurence Branman (ph) on April 29th.

25          U.S. Bank in its capacity as trustee under the

1   trust agreement filed a declaration yesterday in connection

2   with the settlement agreement, and counsel for U.S. Bank is

3   present in court today.

4           THE COURT:  Okay.

5           MR. ARTHUR:  As Your Honor will have also noted

6   the settlement agreement is a resolution of another one of

7   the FTB flip clause disputes.

8           The parties were engaged in the ADR process, and

9   at the outset sought to address the distribution of

10  approximately $40.5 million in collateral proceeds that the

11  trustee held.

12          The plan administrator was able to successfully

13  resolve the matter with many of the certificate holders, and

14  the settlement agreement before the Court today fully

15  resolves the matter and that it addresses the remaining

16  $5.25 million that the trustee holds.

17          As the Court will also note as with our prior

18  settlement agreements the resolution will end with the plan

19  administrator dismissing the trust issuer and the trustee in

20  connection with this transaction from the adversary

21  proceeding.

22          There were no objections to the motion and the

23  plan administrator submits that the settlement agreement is

24  in the best interest of LBSF and its estate and creditors.

25          Accordingly, you know, subject to any questions

Page 14

1    that the Court may have, the plan administrator respectfully

2    requests entry of an order approving the settlement

3    agreement.

4            THE COURT:  All right.  Does anyone else wish to

5    be heard with respect to the trustee's motion for approval

6    of the settlement agreement relating to the so-called racers

7    filed at ECF number 49172?  Sir.

8            MR. RASMUSSEN:  Good morning, Your Honor.

9            THE COURT:  Good morning.

10           MR. RASMUSSEN:  My name is Mark Rasmussen, with

11   Chapman and Cutler on behalf of U.S. Bank National

12   Association.

13           THE COURT:  Yes.

14           MR. RASMUSSEN:  We of course support the motion, I

15   just wanted to make a statement for the record that it's the

16   position of the trustee that it's in the best interests of

17   the trust and the remaining certificate holder and we would

18   respectfully request that you approve the motion.

19           THE COURT:  All right.  Very good.

20           The papers are in order, the settlement clearly

21   passes the best interest test that is in the best interest

22   of the estate and will be approved.

23           MR. ARTHUR:  Thank you, Your Honor.

24           THE COURT:  Thank you.

25           MR. ARTHUR:  That concludes the matters for Lehman

1    Brothers Holdings Inc.

2            THE COURT:  Okay.  If the folks from LBHI, if you

3    could hang around till the end of the hearing for a few

4    minutes.

5        (Pause)

6            THE COURT:  Good morning.  How are you?

7            MR. MITCHELL:  Good morning, Your Honor.

8            THE COURT:  So most of the agenda seems to have

9    evaporated, right?

10           MR. MITCHELL:  Yes, Your Honor.  Yes.

11           THE COURT:  Except for one matter.

12           MR. MITCHELL:  Except for one matter.

13           THE COURT:  Okay.

14           MR. MITCHELL:  For the record, Your Honor, Stuart

15   Mitchell from Hughes Hubbard & Reed on behalf of the LBI

16   trustee.

17           Yes, Your Honor, you're correct, this is -- we're

18   here today on the trustee's one hundred and sixty-third

19   omnibus objection.

20           THE COURT:  Right.

21           MR. MITCHELL:  This matter was initially set with

22   respect to this claim for the April 21st hearing.

23           THE COURT:  Right.

24           MR. MITCHELL:  This is the last remaining claim

25   subject to this omnibus objection, there were originally 89,

Page 16

1    88 have already been --

2              THE COURT:  Right.

3              MR. MITCHELL:  -- disallowed and expunged.  This

4    is claim 7002334 filed by Ms. Gon Ho (ph) Kwang.

5              THE COURT:  Right.

6              MR. MITCHELL:  For the record if it's helpful her

7    last name is spelled K-W-A-N-G.

8              THE COURT:  Right.  It's at ECF number 11778,

9    correct?  The claim is filed, I believe.

10             MR. MITCHELL:  Yes.  And the --

11             THE COURT:  I'm sorry, the response.

12             MR. MITCHELL:  The response, yes, that's correct.

13             THE COURT:  Yes.

14             MR. MITCHELL:  As noted in the trustee's papers

15   the security at issue here is a publicly issued security

16   known as mini bonds --

17             THE COURT:  Right.

18             MR. MITCHELL:  -- issued in Singapore by Mini Bond

19   Limited.  The documentation makes clear -- the documentation

20   reviewed by the trustee reviewed by the trustee perhaps will

21   make clear these are securities that were not issued or

22   guaranteed by LBI.

23             A member of the trustee's (indiscernible) team is

24   here should the Court have any questions with respect to

25   those documents that support the trustee's determination.

1            Ms. Kwang did file a response.  She didn't file

2    it, I take that back, she submitted it via email directly to

3    the trustee's counsel.

4            THE COURT:  Right.

5            MR. MITCHELL:  It is annexed to the trustee's

6    reply.

7            In her -- she did not challenge the trustee's

8    objection per se, she did make a reference to fraud;

9    however, it is entire by unclear from her papers if she's

10   asserting a claim of fraud.

11           The trustee's counsel reached out to Ms. Kwang on

12   a number of occasions seeking first clarification with

13   respect to her claim, if she was asserting a claim of fraud,

14   and second, if she is in accordance with FRCP-9, Federal

15   Rules of Civil Procedure 9, which governs claims asserted

16   based on fraud, indicating that there needs to be more

17   information.  There's a higher pleading standard

18   specifically.  The specific statements, who made the

19   statements, where and when the statements were made, and why

20   the statements were fraudulent.

21           To date Ms. Kwang has not offered clarification

22   for her claim nor has she --

23           THE COURT:  Was it made known to Ms. Kwang that

24   she could appear telephonically?

25           MR. MITCHELL:  It was made known to Ms. Kwang she

Page 18

1    could, and we have again as a note, reached out to her on

2    several occasions.

3              THE COURT:  Right.

4              MR. MITCHELL:  We did adjourn because she did

5    indicate that the April 21st hearing would not work for her.

6    We have not heard back from her since that date.  We've

7    reached out on several occasions though as noted.

8              As Ms. Kwang has not established a basis for

9    recovery and has not amended her claim or response and has

10   had ample time to do so for the reasons set forth in

11   trustee's papers we respectfully request the disallowance

12   and expungement of this claim, claim 7002334 in its entirety

13   and overruling the response.

14             THE COURT:  Well beyond the bare statement that

15   finding against her would go against justice and allow

16   frauds to be perpetuated, and given the very clear nature of

17   the documentation surrounding the issuance of these mini

18   bonds and the fact that these claims had been disallowed

19   across the board with respect to all similarly situated

20   claimants, and further in light of Ms. Kwang's failure to

21   submit anything in more of a detailed nature and failure to

22   appear today telephonically the trustee's objection is

23   sustained and the claim will be expunged.

24             MR. MITCHELL:  Thank you, Your Honor.

25             THE COURT:  All right?

1           MR. MITCHELL:  We have orders and we'll send them

2     to your chambers today.

3           That concludes --

4           THE COURT:  All right.  I think that's all we have

5     for today.

6           MR. MITCHELL:  Yes, Your Honor.  Nothing else on

7     LBI --

8           THE COURT:  All right.

9           MR. MITCHELL:  -- portion of the agenda.

10          THE COURT:  Thank you very much.

11      (Recessed at 10:18 a.m.; reconvened at 2:05 p.m.)

12          THE COURT:  How is everyone today?  Good.  All

13    right.  Who would like to start?

14          MR. SALTER:  I believe that's me, Your Honor.

15          THE COURT:  Okay.  As you're coming up I just want

16    to put on your radar screen my concern that this not be the

17    second or third, I'm beginning to lose count, of a series of

18    piecemeal seriatim motions that are broad with respect to

19    the core issues that are presented here, because we've been

20    here together before.  This is more or less the same thing.

21    In fact some of it is exactly the same thing repeated again.

22          This one has the label of Rule 60(b), which is, to

23    be blunt, a pretext, and I have no intention of (a),

24    violating anyone's due process rights, because you're

25    certainly not bound unless you're here, nor do I have an

Page 20

1    intention to do this three, four, five, or ten more times.

2    I'm just not going to.  There is the doctrine of law of the

3    case that's separate and apart from any due process issues.

4              So that's something we need to talk about, because

5    it's a waste of resources on many, many levels.

6              MS. HENDERSON:  Your Honor, Tracy Henderson.

7              THE COURT:  Yes.

8              MS. HENDERSON:  I think I can alleviate most of

9    the Court's concerns.

10             Mr. Salter is going to be arguing on behalf of all

11   the clients that have presented this motion.  He's going to

12   be arguing as Your Honor wishes to the core issues.

13             Would you like me to state each one for the record

14   or --

15             THE COURT:  Well that's good as far as it goes,

16   which is to say that I don't know what's to preclude the

17   next group from coming in and making the same arguments or

18   different arguments to the same goal, which is to avoid in

19   the first instance participation in the ADR, and then beyond

20   that, you know, get into the merits.

21             So is it your current -- can you represent that

22   there are not -- you do not have additional clients waiting

23   in the wings for whom you are going to be making similar

24   motions?

25             MS. HENDERSON:  At this time, Your Honor, we do

Page 21

1    not, but I can't represent -- I think everybody is waiting

2    to see what Your Honor's decision is before anything

3    happens.  But I can say that there are no other clients

4    joining, we have joined everyone.

5              THE COURT:  Okay.  Waiting to see in the sense of

6    the new argument with respect to the -- I'll call it the LBB

7    no recourse argument.

8              MR. SALTER:  Timothy Salter, Blank Rome for

9    Stearns Lending and Group 2000.

10             We don't have any other clients in the pipeline

11   for this.  We had one and then what happened was they read

12   the first motion and then they hired us to bring the same

13   motion.  There was no intention to bring a --

14             THE COURT:  Okay.

15             MR. SALTER:  -- piecemeal, we had two clients, we

16   would have brought them at the same time, we just didn't

17   have the second --

18             THE COURT:  Okay.  All right.  So why don't we

19   wade into it and we can circle back for that discussion at

20   the very end.

21             MR. SALTER:  Okay.  Timothy Salter, Blank Rome for

22   Group 2000 Real Estate and Stearns Lending.

23             Initially, Your Honor, as far as the Rule 60(b)(6)

24   motion goes Stearns Lending I believe we referred this

25   matter about four or five days prior to the initial motion

Page 22

1    to bring everyone into ADR -- the ADR motion.  They had the

2    order, Stearns Lending put in an objection, Group 2000

3    didn't respond, they didn't even know about it until they

4    got served with the demand letter and the indemnification

5    notice.

6          At that time we had no documents, we had no facts,

7    we had a theory of a case which said we have these

8    indemnification claims, we're not going to tell you how we

9    got them, we're not going to show our math, we're not going

10   to show you documents but we have them, we all agree that we

11   have them, and because we settled with Fannie Mae and

12   Freddie Mac that now gives rise to the damages and we can go

13   after everybody for these indemnification claims.  So very

14   well, we agree to go into the ADR order.

15          So what happens is they now serve us the demand

16   letter saying we're the holder of rights from Lehman Bank.

17   Okay, that's interesting.  Now you get the demand letter

18   basically saying the same thing.

19          Now Stearns Lending in their indemnification

20   notice said an assignee of rights.  Group 2000, which was

21   served after Stearns Lending made their motion, it's a

22   different form where they're saying, no, we have these loan

23   purchase agreements, we're the holder of the lien purchase

24   agreements, we're the holder of rights that we got at the

25   time of the loan, we're the holder of loan purchase

Page 23

1    agreements which we got in 2012, 2013, 2014, and under these

2    rights and under this agreement we are in the shoes of

3    Lehman Bank and we can go after you guys for

4    indemnification.

5           So none of that was in front of any of the lenders

6    at the time of the ADR.

7           THE COURT:  What difference does that make?

8           MR. SALTER:  The difference is it goes to the

9    essence of the claim.  If --

10          THE COURT:  Right, but here's -- I mean 60(b) --

11   you are -- what you have said, you've used the pretext of

12   the 60(b) motion to argue at bottom that you have no

13   liability.  If that had legs there would never be

14   meaningfully ADR.  Everybody who participates in ADR wants

15   to say in one way or the other I don't owe Lehman anything.

16          So to say, gee, you're right, you can get out of

17   ADR, every single claimant -- every single counterparty

18   would simply say, well, we'll do the ADR, but you know, we

19   don't think we have a liability.  Well that doesn't make any

20   sense.

21          So what you're saying is no different from -- the

22   statute of limitations is an affirmative defense just like

23   in the case of a suit for the purchase and sale of widgets,

24   it's just like saying I already paid for the widgets or you

25   never shipped me the widgets.  It's just an affirmative

Page 24

1    defense.  So too is an argument that there wasn't a proper

2    assignment.  It's no different.

3            MR. SALTER:  We're --

4            THE COURT:  So the -- this pretext of saying I'm

5    entitled to this extraordinary 60(b) relief because I don't

6    think I am liable I'm just having -- I'm having a very hard

7    time, you know, getting over that, and it really frankly

8    doesn't much matter, you seem to be focusing me very

9    particularly on what was or was not said in the demand

10   letters.

11           MR. SALTER:  Because there is a distinction

12   between an affirmative defense of statute of limitations and

13   failure to state a cause of action.  If you're -- it's

14   basically a standing issue.

15           So to go into factual mediation with a party which

16   does not have -- if we went to court and some courts are

17   saying, yes, you do not have a cause of action, some courts

18   are saying, you do have a cause of action, well we'll let

19   this go to trial.

20           THE COURT:  But --

21           MR. SALTER:  What we're saying is --

22           THE COURT:  -- so you're seeking to characterize

23   the fact that LBHI does -- you're seeking -- what you're

24   attempting to convince me is that LBHI doesn't have

25   standing, right?  So it's the wrong -- it's as if it's a

Page 25

1    stranger to this proceeding.

2           MR. SALTER:  It's a -- it's not the -- it is --

3    like the issue of the fact that they did receive an

4    assignment for our purposes we're not arguing that.

5           THE COURT:  Okay.

6           MR. SALTER:  As a matter of law they have received

7    an assignment.

8           THE COURT:  Right.  So the issue is --

9           MR. SALTER:  As a matter of fact --

10          THE COURT:  -- what -- the issue is the -- what's

11   the -- what was the assignment?

12          MR. SALTER:  As a matter of fact what was assigned

13   to them?  Are there enforceable claims that were assigned to

14   them?

15          THE COURT:  Exactly.  And that's a lawsuit that I

16   sent to ADR.

17          MR. SALTER:  I would --

18          THE COURT:  It's a lawsuit and I've sent it to

19   ADR, and you folks just don't want to go.

20          MR. SALTER:  I would think with given the -- I

21   guess if you want to say difference in the opinions between

22   the Cornerstone case and the Security National case.  Now, I

23   disagree with Cornerstone for a lot of reasons, I don't

24   think it's applicable, but if we argue that's a split of

25   authority I would say that that issue, as evidenced by that

Page 26

1    split authority, is not proper for mediation where we're

2    going to go in front of a Simpson Thatcher partner and he's

3    going to say, you know what, I totally agree Group 2000, you

4    do not -- these people do not have a right to

5    (indiscernible) against you.  Then we're going to take the

6    Stearns Lending, we're going to go to a Jones Day partner

7    and he's going to say, you know what, I totally agree with

8    Cornerstone, and you know, they can seek indemnification

9    from you, and the question is how much do you owe them?  And

10   I think that's an important difference of who's going decide

11   if this is -- if there was an assignment of rights, if

12   they're in the shoes of Lehman Bank what that means, and

13   these clients are saying we want a judge to say that and not

14   a partner in a law office, and oh, by the way we have to --

15            THE COURT:  So you say that you win because of

16   Security National?

17            MR. SALTER:  No, Security National was -- because

18   we didn't -- obviously haven't had discovery, so Security

19   National did have a full trial and they stood, which was not

20   disputed by Lehman Holdings, that these loans are without

21   recourse.  So without recourse Lehman Bank we all agree with

22   that, they have no recourse against Lehman Bank.

23            THE COURT:  Right.

24            MR. SALTER:  Security National then says with

25   those facts if we applied New York law of assignment, which

Page 27

1    is also not disputed, that means that Lehman Holdings as an

2    assignee cannot have better rights than the assignor Lehman

3    Bank.

4              THE COURT:   Okay.   But let me explain to you, and

5    I'm going to put to one side the 60(b) motion, because

6    frankly I could have denied this motion without even having

7    you come in today because you haven't made a showing on

8    60(b).   But since you're here and since we have to advance

9    the ball, and since part of this exercise apparently is

10   designed to inform other parties about what they might

11   expect let's talk about the LBB issue, all right?

12             What you're telling me is that because LBB sold

13   the loans to LBHI without recourse, right, LBHI is done,

14   they're out of luck, right?

15             MR. SALTER:   If it's a chain, once the chain is

16   broken everyone on the other side of that link is free to

17   go.

18             THE COURT:   Okay, beautiful.

19             So when we were here last time and we were

20   discussing the statute of limitations we got into this

21   interesting world in which there was never a moment in time

22   at which LBHI could actually have asserted its claims.

23   Okay?   I can't recall if you were here for that and you'll

24   have to forgive me.

25             But what you're telling me this time is --

1   collectively, is that LBB, for reasons that had nothing to

2   do with anyone else except for the way it ran itself, LBB on

3   a non-recourse basis sells the paper to LBHI, right?  And

4   LBB says to LBHI, here you go, don't ever look at me for

5   anything ever again, I am done.  Okay?

6           So what you are saying is this is fantastic,

7   because from that moment on even if we, the originators, had

8   created and sold unbelievably defective paper, the fact that

9   LBB decided to sell that paper on a non-recourse basis to

10  LBHI (indiscernible) gets us off the hook.  That's what

11  you're saying, right?

12          MR. SALTER:  The law of assignment demands that.

13  I mean the intention of the parties between Lehman --

14          THE COURT:  Now let me give you a hypothetical.

15          MR. SALTER:  -- Bank and Lehman --

16          THE COURT:  Okay?  I'm giving you a very hard

17  time, but --

18          MR. SALTER:  That's fine.

19          THE COURT:  -- hopefully you're enjoying it.

20  Okay?  I -- she told you I was going to, right?  She said I

21  was going to give you a hard time.

22          MR. SALTER:  I have a whole book of answers for

23  you, Judge.

24          THE COURT:  Okay.  Let me give you a hypothetical

25  to try to make my point, okay?

Page 29

1           I buy a fantastic new car, it comes with a

2    wonderful warranty, okay?  But I decide I don't like the

3    color.  I sell it to you, no recourse, don't come

4    complaining to me when the transmission fails.  But I sell

5    it to you with the full manufacturer's warranty.  At the

6    moment I sell it to you I don't have a claim, the car is

7    running great, or I just haven't noticed that the little

8    transmission light is going on.

9           Does the fact that I sold it to you with the

10   warranty paper and all that stuff but no recourse to me,

11   don't come complaining to me, go talk to the dealer, pick

12   your dealer, that doesn't mean that I haven't assigned to

13   you my rights, it simply means that I had no claim, I didn't

14   assign you the claim.  I'm selling you the car pursuant to

15   all of this paper that includes warranties issued by the

16   manufacturer and that's what you're getting.  And the next

17   day when the transmission fails you can't call me and say,

18   pay me, I say no recourse.

19          LBHI the next day if it had discovered that the

20   paper was defective there's no recourse, but it assigned its

21   rights as part of that transaction, and that's what --

22   exactly what, I know you've said that the case was a day

23   late and a dollar short, but that's exactly what was

24   clarified in the recent case that was submitted in Security

25   National.

1          MR. SALTER:  A breach of warranty, to the extent

2     that you assign a warranty, because we're not arguing that

3     they wouldn't be the proper party to -- basically the

4     warranty -- breach of warranties, breach of claims, that's a

5     statute of limitations issue.

6          The indemnification issue, because there's an

7     indemnification provision, indemnification provisions are

8     strictly construed and they agreed to indemnify particularly

9     Lehman Bank that's the right which is individual to Lehman

10    Bank and that's what couldn't be assigned.  I'm sorry, it

11    could be assigned but the measure of damages is those

12    suffered by Lehman Bank.  You can assign --

13          THE COURT:  So this does appear to be your theory,

14    but when you combine this theory with the statute of

15    limitations theory I get to the point, which I got to before

16    when we were dealing with statute of limitations, that with

17    respect to statute of limitations the rights claim was

18    femoral.  If it existed it might have existed for a few

19    indiscernible moments in time.

20          What you're telling me now is that the

21    indemnification right was illusory, was completely illusory,

22    that there was basically no situation in which the reps and

23    warranties, which were given by the originators, could ever

24    be asserted, that -- and you're going to tell me bad

25    business decision, bad business decision, that was a

1    business decision that LBB and LBHI made.  They made that

2    decision for reasons that had nothing to do with anything

3    but the way they kept their books internally.

4              MR. SALTER:  They -- will have unintended

5    consequences?  I mean the originators made the promise maybe

6    they knew how it was sold, maybe they didn't, now if it's

7    not a related entity is the examination different?  If they

8    were selling instead of Lehman Bank to Lehman Brothers

9    Holdings, if Lehman Bank was signed without recourse to Bear

10   Stearns.

11             THE COURT:  They assigned to LBHI all of their

12   rights.  Their rights included the right to insert an

13   indemnification claim against the originators of the loan.

14             So under your theory of the world had they done

15   that within the six years of the origination and there were

16   no statute of limitations would you seriously be maintaining

17   that because LBB sold the loan to LBHI on a no recourse

18   basis that that sale did not include indemnification rights?

19             MR. SALTER:  Yes, because it's --

20             THE COURT:  You would.

21             MR. SALTER:  -- still the same law -- basic law of

22   assignment that these --

23             THE COURT:  So then how about the notion that the

24   originators engaged in a massive fraud, because the words in

25   the seller's guide surely led everybody to believe that

1     third-party assignments were contemplated.  The entire

2     structure of this industry was premised on the subsequent

3     assignment pooling and selling of those mortgages.  That's

4     the way these folks made money.

5               So for you to be telling me that in fact if you

6     didn't do the paper in exactly the right way all of those

7     rights would be cut off is pretty astonishing.

8               MR. SALTER:  I have -- the difference is the

9     rights -- because we don't contest there are certain

10    indemnification rights which follow as the holder of the

11    notes.  So we sold the loan, we're going to warranty that

12    loan, it's going to go up the line.

13              The same is not true for the loan purchase

14    agreement in which they try and claim their rights out to.

15    The loan purchase agreement is a contract between two

16    parties and exists separately and apart that any rights to

17    go after them which followed the loan.

18              So if Lehman Brothers Holdings --

19              THE COURT:  But the case that you're relying on

20    distinguishes the indemnification agreement from the other

21    pieces of paper that constitute the loan purchase agreement,

22    and that's why in the case on which you rely it went the way

23    that it did because there was no claim to assign under the

24    indemnification agreement, but the rights were assignable

25    and they were assigned.

1          MR. SALTER:  But the rights that were assignable

2    were Lehman Bank's own rights, and Lehman Bank's own rights

3    at the time of the assignment did not -- they possessed a

4    right under the contract, they did not possess a right as a

5    matter of fact.  Once they sold those loans without recourse

6    nothing could ever happen that would give them a right to

7    sue our clients for damages under those loans.

8          So what happens is --

9          THE COURT:  But this gets back to the other -- the

10   fallacies that we went through when we did the statute of

11   limitations defense, is that at the moment after LBB sells

12   the loans and assigns its rights it doesn't -- it's not the

13   holder, it doesn't have a right to assert.  So of course it

14   doesn't have any.

15         MR. SALTER:  It's still a holder -- it's still --

16   even though it sold the loans it still had the loan purchase

17   agreement.  The loan and the loan purchase agreement travel

18   two different paths.  The loan purchase agreement was

19   assigned in the case of Stearns Lending a week before the

20   ADR order was heard.

21         So the rights to indemnification that followed the

22   loan up the line is different than the contractual right to

23   indemnification that was contained in the loan purchase

24   agreement.

25         The loan purchase agreement is between two parties

Page 34

1    and it's particular to Lehman Bank.

2              THE COURT:  What's your basis for saying that?

3              MR. SALTER:  Because that's what the loan purchase

4    agreement says.  The loan purchase agreement -- LBHI was not

5    a party to the loan purchase agreement and the basic law of

6    assignment says any right that you would have is the right

7    that your assignee gets.

8              So this loan purchase agreement when they took it

9    out in 2014 or 2013 in the vault of Lehman Bank was

10   worthless, they could not sue hey, these loans all went bad,

11   hey we have these agreements, let's go after the originators

12   for it.  Well we can't, we didn't suffer any damage, we had

13   no claims.  Okay, let's bring it across the hall to Lehman

14   Brothers Holdings.  Now they're worth $20 million.  That

15   bringing a worthless document across the hall and giving it

16   $20 billion worth of value violates the basis law of

17   assignment, that this person now has a claim for $20 billion

18   where this person did not, and that's what we're trying to

19   say, and that's different than the right step followed the

20   note.

21             Those -- so if you're saying you originated a bad

22   note and now you walked away well that's not true because

23   there are breaches of claims and warranties that followed

24   the subsequent holders of the note up the line.

25             They're not subsequent holders of the note, they

Page 35

1    were at one time, they're not now.  They sold it, they made

2    their own promises, they actually had their own promises to

3    Fannie Mae and Freddie Mac where X number of loans were

4    going to be reunderwritten.  There's another case which I

5    didn't cite, but there was another case where there was a

6    finding of fact that they weren't reunderwriting them.

7           So if our originators made bad loans Lehman

8    Brothers Holdings we sold bad loans, and they promised

9    Fannie Mae that they were looking at those loans and

10   reunderwriting them.  And there was a case --

11          THE COURT:  The bottom line as far as you folks

12   are concerned though is that you are not answerable to

13   anybody for having originated bad loans.

14          MR. SALTER:  I would --

15          THE COURT:  That's the bottom line.

16          MR. SALTER:  -- disagree with that premise.  It's

17   under this theory why they dragged us into ADR, they're --

18   we don't answer under this theory.  And I'm not going to sit

19   here and think of all the different ways they could.

20   Certainly in their opposition they came up with five or six

21   different ways they could do it.

22          Now had I brought my -- instead of filing a Rule

23   60(b) motion, had I brought that and that was my paper I

24   submit to the mediator, hey guess what, we're not going to

25   talk about the hearsay issues, we're not going talk about

Page 36

1    all the loan by loan issue, we're going to rely on the fact

2    Mr. Mediator that under this claim they said we have a loan

3    purchase agreement, this loan purchase agreement gave us

4    rights.

5              THE COURT:  Right.

6              MR. SALTER:  Under this theory they have no claim.

7    If they had answered, oh, well guess what, we have six

8    different theories and now we show up to mediation that's --

9    there's a basic unfairness to the fact that they have six

10   different theories in which they can claim after the facts.

11   They came to us with one theory --

12             THE COURT:  Well why is there an unfairness?

13   There have been thousands of parties who have engaged in ADR

14   in which they say there's 16 reasons why we're not liable

15   and the -- and Lehman comes up with 15 reasons of their own

16   why they are.  That's what ADR is.

17             You are seeking to clothe your particular argument

18   with some secret sauce or special magic that sets you apart,

19   and it just doesn't.  It just doesn't.

20             I cannot solve the fact that -- the statute of

21   limitations argument I've already ruled on.  I'm going to

22   publish a decision on it within about a week.  I told you it

23   was coming, it has been in the works, I have a lot of other

24   things to do.  You entered an order, we tolled the appeals

25   period.  Whether or not you can take that up and get a

1    higher court to give its views on that I really don't know,

2    I'm not going to express a view on that, but you bring me an

3    issue, I give you a decision, what happens after that I

4    can't help it.

5            So what you're telling me is this is really

6    unfair, Judge, because we know you're wrong and you're going

7    to make us all go through all of this stuff and it's not

8    fair.  That's what litigation is.

9            MR. SALTER:  We weren't a party to any prior

10   motions or any prior statute of limitation issues, I have no

11   knowledge of whatever was litigated between other parties

12   before we showed up.

13           The basic premise of the unfairness is if they

14   serve with an adversary complaint, if the indemnification

15   notice was an adversary complaint and we said, hey, you know

16   what, under the laws of assignment they failed to state a

17   cause of action we would put that motion and the judge would

18   decide it, and then if we did factual ADR afterwards, you

19   know, which is very cost and labor intensive, then you

20   engage it.

21           Right here they're saying, okay, let's go loan by

22   loan, facts by facts and then --

23           THE COURT:  You made the statute of limitations

24   argument.

25           MR. SALTER:  To the extent that the breach of

Page 38

1   warranty claims were assigned by Fannie Mae and Freddie Mac.

2   We did not make the argument that the indemnification -- I

3   didn't in my motions -- that the indemnification was really

4   a remedy for breach of warranty and representation.

5          THE COURT:  You did.  You said, "Originating

6   lenders failure to timely repurchase a loan does not

7   constitute a separate breach of the loan purchase

8   agreement."

9          MR. SALTER:  Under -- yeah, but they're inserting

10  -- they're not asserting breach of warranty claims against

11  us, they're asserting indemnification claims against us as a

12  separate and distinct cause of action.

13         So we brought that up simply to illustrate the

14  fact that they also don't have various other theories of

15  liability to the extent that they would say well we were

16  assigned breaches of warranty by Fannie Mae and Freddie Mac.

17  Because at that time actually they hadn't made any demands

18  to be purchased, all the demands to be purchased were made

19  after we already were subject to the ADR.

20         THE COURT:  Okay.  Thank you.

21         MR. SALTER:  Thank you.

22         THE COURT:  Well?

23         MS. HENDERSON:  Your Honor, just for clarification

24  of the record.  I -- we're submitting on the pleadings for

25  any statute of limitations, and there are separate --

1           THE COURT:  Yes.  No --

2           MS. HENDERSON:  -- arguments.  So just for Your

3     Honor's edification.

4           THE COURT:  I'm sorry, then maybe I'm

5     understaffed, because I'm looking at the Blank Rome pleading

6     and at the bottom section it says that the claims are barred

7     by the statute of limitations.

8           MS. HENDERSON:  Right.  And just for the Court's

9     edification we intended those to be two separate arguments,

10    and I think as a collective submitting to the Court on the

11    pleadings on that particular argument and the first argument

12    relating to non-recourse --

13          THE COURT:  Yeah, I understand --

14          MS. HENDERSON:  Okay.

15          THE COURT:  -- the non-course, but I just didn't

16    understand the statement that was just made that we're not

17    arguing statute of limitations.

18          MR. SALTER:  It was an alternative argument that

19    all claims assigned by Fannie Mae and Freddie Mac would be

20    barred by the statute of limitations.  But it wasn't the

21    main reason we weren't (indiscernible) indemnification

22    because they were not alleging to be enforcing rights as an

23    assignee of Fannie Mae and Freddie Mac, they were alleging

24    to be asserting rights as assignee of Lehman Bank.

25          So we just were trying to head off the possibility

Page 40

1    they're saying, okay, well even if we didn't get these

2    rights from the loan purchase agreement we have this general

3    undefined assignment from Fannie Mae and Freddie Mac, and

4    oh, guess what, that includes these rights.

5              THE COURT:  Okay.  I think I understand, but

6    that's all -- you're -- you don't -- you're talking

7    Section 710, and last time we were talking about the

8    difference between 710 and 711.

9              MR. MAHER:  Yes, Your Honor.

10             THE COURT:  Right?

11             MR. MAHER:  Yes, Your Honor.

12             THE COURT:  I just -- I have to make sure that I'm

13   in the same reality as everybody else.  Whether you agree

14   with me or not, right?

15             MR. MAHER:  Yes, Your Honor.

16             THE COURT:  Okay.

17             MR. MAHER:  Your Honor, Bill --

18             THE COURT:  Can you help me out on the last point?

19             MR. MAHER:  Absolutely.  Bill Maher on behalf of

20   Lehman Brothers Holdings Inc., Your Honor.

21             It is evident from what you have said that you

22   have it exactly right.  You have it exactly right on every

23   issue on which you've spoken today.  They have it completely

24   wrong.

25             They are telling you that they're not raising a

Page 41

1    statute of limitations issue.  If you read their papers they

2    are raising a statute of limitations issue.  In fact they go

3    on for several pages on statute of limitations.  The --

4             THE COURT:  But I think I understand the

5    distinction that they're making under 710.  In other words

6    in the last round it was, all right, we get it that you're

7    asserting claims as a result of having paid Fannie and

8    Freddie, right?  But you paid Fannie and Freddie or that we

9    got the plan against Fannie and Freddie in 2014 outside the

10   six years, no separate contractual indemnification claim,

11   it's just a remedy like every other remedy under 710, to

12   which I said, wrong --

13            MR. MAHER:  Right.

14            THE COURT:  -- read the Colorado case --

15            MR. MAHER:  Right.

16            THE COURT:  -- the two Colorado cases decided by

17   Judge Bremer --

18            MR. MAHER:  Correct.

19            THE COURT:  -- there's a difference between 710

20   and 711.

21            I think what I'm being told here is that we're

22   just under 710 even if LBB had assigned something it would

23   be a remedial right under 710 and that's barred.

24            So, I think that's what I was --

25            MR. MAHER:  That's not what the American Law Group

Page 42

1    -- Mortgage Law group's papers says.  That may be what Blank

2    Rome's papers say.

3              THE COURT:  That's what Blank Rome's papers say.

4              MR. MAHER:  Yeah.

5              THE COURT:  Right.

6              MR. MAHER:  But again, Your Honor --

7              THE COURT:  Okay.

8              MR. MAHER:  -- it is clear to me that you get

9    these issues so well that I'm unsure what I should say to

10   help you.

11             THE COURT:  Well why don't you help me with the

12   last argument about the -- I'll call it the subsequent

13   assignment argument, the oh, dear, we didn't do this right

14   the first time, now let's hand the piece of paper over and

15   make them worth something when we didn't actually assign it

16   from the get go.

17             MR. MAHER:  Well let's -- it would be helpful

18   actually if we go through what actually happened here.

19             THE COURT:  Sure.

20             MR. MAHER:  Because they have misstated.  I think

21   counsel inadvertently misstated what happened.

22             I have a collection of all of the assignment

23   agreements here that we can walk through to see what was

24   assigned, when to whom.

25             THE COURT:  We're doing this -- again, just to be

Page 43

1     clear, this is a 60(b) motion.

2              MR. MAHER:  Right.

3              THE COURT:  Right?  This is not a summary judgment

4     motion, it's not a motion to dismiss, it's just a 60(b).

5              MR. MAHER:  Right.  And, Your Honor, I'm only do

6     this frankly for purposes of being helpful to the Court,

7     because it's absolutely clear from what you said and what

8     the law is that they have no hope of winning a 60(b) motion.

9              We were here last summer when Your Honor presided

10    over a hearing on the ADR process in which everyone who's

11    here got notice of that ADR process, got notice of the

12    hearing, and in fact Stearns Lending, one of the parties

13    showed up and objected.  They didn't object on statute of

14    limitations grounds, they didn't object on lack of

15    assignment grounds, and now six to nine months later they're

16    back here after Your Honor has already entered an order and

17    saying, 60(b), I want to vacate the ADR order and make it a

18    nullity even though I knew the things back then that I could

19    have raised back then, that I chose not to raise back then,

20    and I choose to raise them now nine months later.

21             60(b) is very, very clear.  Numbers 1 through 5

22    have to be raised early on, certainly within a year.  Number

23    6 the catch all.  It says, "Any other reason that justifies

24    relief."  Every one of the cases addresses 60(b) says it has

25    to be extraordinary, it has to be out of the ordinary, it

Page 44

1    has -- it can't fit within one of the other categories of

2    60(b).

3           So the only thing that they could possibly qualify

4    under, Your Honor, is 60(b)(1).  60(b)(1) is for mistake,

5    inadvertent surprise, or excusable neglect.  They don't meet

6    those standards under the case law so they don't try to say

7    that they're moving under 60(b)(1).  If you look at their

8    motions they're moving under 60(b)(6).

9           60(b)(6) is supposed to be we don't know -- that

10   you don't fit under any other categories, but it's so

11   outrageous and extraordinary that the Court will hear it.

12          It is not for a run of the mill I didn't raise

13   something last summer and I want to raise it now.

14          So if we're talking about 60(b) it's not even

15   close.

16          THE COURT:  The thing that baffles me, this is

17   kind of a general comment, is that now for the second time I

18   get papers and people point out all these courts all over

19   the country who are dealing with Lehman paper.

20          MR. MAHER:  Yes.

21          THE COURT:  And what that says to me -- I mean

22   some of them -- some courts agree with each other and some

23   courts disagree --

24          MR. MAHER:  Right.

25          THE COURT:  -- because we're only people and we

1   have people who litigate before us.  Sometimes the paper is

2   different, things are not identical.  If they were you could

3   give it to a robot, right?

4           MR. MAHER:  Yes.

5           THE COURT:  But we don't have that.  So that

6   suggests to me at least that reasonable minds can differ,

7   they make different outcomes based on different paper, and

8   it also suggests to me that this is not the type of

9   situation where this is just, you know, wow, missed it by a

10  country mile, this was a thousand percent wrong, would be a

11  manifest injustice --

12          MR. MAHER:  Correct.

13          THE COURT:  -- to have this go forward.

14          MR. MAHER:  Exactly.

15          THE COURT:  That's the way I view a 60(b).

16          MR. MAHER:  Correct.

17          THE COURT:  That's on the one hand.

18          On the other hand might a higher court disagree

19  with my decision on the statute of limitations?  Sure.

20  Absolutely.  I think I'm right, obviously I wouldn't have

21  ruled the way that I did if I didn't think I'm right.  But

22  could it happen?  It absolutely could.  Does it worry me

23  that folks could go through a lot of litigation and then

24  there's a reversal?  Sure.  I've only been reversed once in

25  five years.

1           MR. MAHER:  That's because you're very thorough

2      and very careful, Judge.

3           THE COURT:  Well, but the point is that -- and I'm

4      saying this more for these folks' benefit -- it's not likely

5      that I stick to my guns, insist that parties continue to

6      litigate, because if I'm incorrect and reversed -- which are

7      not necessarily the same thing -- then you've undergone a

8      tremendous expense when had it gone other way from the get

9      go you wouldn't have had to have.

10          So this is not simply a case, and then I'll let

11     you go through that exercise, because I think it'd be very

12     useful for everybody.  So, I'm a little meandering me, but

13     indulge me.

14          I think folks sometimes think Lehman always wins

15     in this room.  That is categorically not true.  Just ask the

16     lawyers for Lehman.  Lehman doesn't always win.  But I'm

17     very aware of the burden of insisting that parties continue

18     to engage in the process, because it's not without expense.

19          MR. MAHER:  But if we think about what's at stake

20     here, Your Honor, putting aside the 6(b) standard --

21          THE COURT:  Right.

22          MR. MAHER:  -- what these parties have done, and I

23     want to point this out to give you a sense of what Lehman is

24     up against with these counterparties.

25          They have -- because they seek extraordinary

Page 47

1    relief when they're not entitled to it to avoid showing up

2    in New York for an ADR to try to resolve the issues in a

3    mediation in a room with the mediator.

4            So for that they've filed voluminous papers that

5    you've had to read, we've all had to read and respond to,

6    which was more costly, Your Honor, much more costly than

7    participating in the mediation process, showing up in New

8    York as they've shown up in New York here with their client

9    and trying to resolve is issue.  That is what we face.

10           These people had originated crummy loans with

11   broad representations that the loans were good, with broad

12   categories that said you could assign those loans to

13   successors, assigns, anybody you want, and we would stand

14   behind them.  And they are kicking, scratching, clawing,

15   doing anything at any cost to avoid standing behind their

16   representations and warranties.

17           Now he told you just a minute ago with respect to

18   the warranty issue that well, we have the LPA and the rights

19   under the LPA and then we have the note, and we stand behind

20   the note.  They don't, Your Honor, it's illusory just like

21   you said before with their statute of limitations argument.

22           Here's their argument on the note.  And remember,

23   in Section 711 it says we're indemnified -- "Purchaser,

24   purchaser's designees, including any subsequent holder of

25   the note."  Then it says later on, "Any subsequent holder of

Page 48

1    the note shall be a third-party beneficiary to this

2    agreement entitled to the rights."

3          So under 711 we have third-party beneficiary

4    rights as a subsequent holder of the note apart from the LPA

5    rights, which is what he's saying.

6          THE COURT:  But now they're saying that ah ha, you

7    don't hold the note anymore.

8          MR. MAHER:  Yes.  So he's saying that under 711

9    when I'm a subsequent holder of the note when I sell it to

10   you and then you put it back to me and I need those

11   indemnification rights they're gone.  They're gone.  You

12   never had them.  In other words they're illusory completely

13   under their theory of the case.

14         That's why the agreement says, "Any subsequent

15   holder of the note."  Could be more than one.  You don't say

16   you have to be a subsequent holder of the note who holds the

17   note currently.  Because the point was everybody knew that

18   these loans were going to travel.  They're going travel from

19   the originator to Lehman Bank to LBHI to maybe somebody

20   else, and everybody along the way was entitled to rely and

21   depend upon the representations and the warranties and the

22   indemnifications that remain when somebody originally

23   sourced the note and the loan, and that's the way the

24   agreement reads.

25         So if you read the seller's guide it's elegant.

Page 49

1    It talks about the breadth of the assignment rights.  It

2    talks about successors and assigns more than one place.  The

3    LPA itself has a reference to successors and assigns.

4              If you read 711 on the indemnification language,

5    it's just as broad of language as you can imagine for

6    indemnification.

7              So what was -- and the representations and

8    warranties relate to key issues.

9              THE COURT:  So what about the failure to give

10   notice?  There's --

11             MR. MAHER:  The failure to give notice, Your

12   Honor, if you look under 701 there is no obligation to give

13   notice.  If you look under 713.3 there is an obligation to

14   give notice if you're assigning certain other rights.  Not

15   all the rights, there's a sentence after that that said if

16   you're only assigning rights under the agreement you don't

17   have to give notice.  However, so our position is we were

18   not required to give notice under the terms of the

19   documents.

20             However, if you believe that we were entitled --

21   that we were required to give notice we cite in our brief,

22   Your Honor, in a footnote, that that doesn't affect the

23   validity of the assignment, it only gives them a potential

24   claim for breach that you didn't tell me that you assigned

25   and I did something in the interim that caused me harm.

Page 50

1    They won't be able to show that, Your Honor, because they

2    did nothing.

3              So whether or not they gave notice it's

4    irrelevant.  So --

5              THE COURT:  So there's no language that says that

6    an assignment without giving notice is void ab initio.

7              MR. MAHER:  Exactly.  And it has to say that under

8    New York law --

9              THE COURT:  Yes, I'm familiar with that law.

10             MR. MAHER:  -- in order for it to be an invalid

11   assignment.  Contracts are freely assignable under New York

12   law unless they say that you cannot assign them.  Here to

13   the contrary the language says you can assign them.  It

14   didn't have to say that you could assign the rights under

15   the seller's guide or the LPA, they would be assignable as a

16   matter of law unless they said you can't assign them.

17             So the fact that it does say that you can assign

18   these rights in a broad fashion, we cited a case, Your

19   Honor, it says, clearly the parties intended such a result.

20   It wasn't just that this New York law permits it, the

21   parties intended it because the document says it itself.

22             And so for them to now claim well because Lehman

23   Bank internally with Lehman Bank Holdings decided that they

24   were going to do it without recourse that means we walk

25   free.  In other words a different way of saying the rights

Page 51

1    are illusory.

2              Coincidentally happy day because you assigned your

3    rights without recourse just as in your car example, Your

4    Honor, that means that my indemnification obligations are

5    void.  That's not right.  It would have had to have been a

6    release to the original originator, somebody saying if

7    Lehman Bank turned the originator and said you don't owe me

8    anymore that would be somebody was released who's the

9    originator, not somebody in between, because Lehman Bank

10   Holdings came in and stepped into the shoes.  We agree with

11   that of Lehman Bank -- Lehman Brothers Bank.  But that

12   doesn't mean I have to sue for their losses.  I become the

13   purchaser.

14             THE COURT:  You don't have to sue for LBB's

15   losses.

16             MR. MAHER:  Correct.  I sue for LBHI's losses, and

17   that's what the cases clearly say.  That's what Judge

18   Stewart said just recently a couple of -- a week ago in the

19   LBHI versus Security National case.  He relied, Your Honor,

20   on the Utah -- on the Arkansas case --

21             THE COURT:  Right.

22             MR. MAHER:  -- which very clearly holds in the

23   exact same argument that they're making before you right

24   now, Your Honor.  That case clearly holds that the without

25   recourse language it doesn't matter.  That wasn't just Judge

1    Stewart the other day saying that, that's been said in a

2    number of cases.  Specifically it's referenced in LBHI

3    versus National Bank of Arkansas.  It says:

4         "NBA asserts that at the time LBB signed the

5    assignment agreement with LBHI on January 1, 2011 LBB had no

6    rights to assign because LBB had assigned all its loans to

7    LBHI without recourse years earlier."

8         The court rejects that and says that the

9    assignment agreement assigned to LBHI the contracted rights

10   to the loans at issue.  This argument has been run before.

11   Every court that has considered that argument, Your Honor,

12   has rejected it.

13        There is not a single case that they cite to you,

14   not one, involving this loan purchase agreement -- any of

15   these loan purchase agreements or any seller's guide in

16   which a single court has said that that did not validly

17   assign the rights to LBHI.  There's not a single court

18   that's done that.

19        They have one decision from Judge Nuffer in Utah,

20   which his colleague on the bench just distinguished the

21   decision last week, saying that was a separate

22   indemnification agreement, we're not talking about the loan

23   purchase agreement in the seller's guide, and he said, in

24   fact that indemnification agreement said you still have

25   rights under the loan purchase agreement seller's guide and

Page 53

1    he said, so, I'm going to analyze those rights.  He analyzed

2    those rights, including the argument that it was without

3    recourse, and he rejected it, and said definitively that

4    these rights were properly assigned under the assignment

5    agreement.

6            So, Your Honor, they have nothing.  Even their law

7    saying indemnification agreements are to be strictly

8    construed, yes, the courts say that when it is unclear

9    whether there is supposed to be indemnification or not.  Not

10   in an agreement where there's a specific indemnification

11   provision that says that purchasers and successors and

12   assigns and subsequent holders of the note are indemnified.

13   You don't strictly construe that.  That is construed in

14   accordance with what the parties intended in their express

15   terms.

16           And when you couple that with the broad assignment

17   language that is included in a number of places it's clear

18   as every court has held that these agreements are and were

19   properly assigned under a written assignment agreement.

20           Now we have four other arguments, Your Honor, why

21   even without the written assignment agreement these rights

22   are assigned, and I'm happy to go through those.

23           THE COURT:  I think it -- I don't think that it's

24   necessary.

25           MR. MAHER:  But there's one last thing, and I

Page 54

1    don't know if you want me to go through this or not, Your

2    Honor, but what he said -- what Counsel said about these

3    rights being assigned one week before we filed the ADR

4    notice is not correct.  All right?  They're -- and I can go

5    through all of these with you.  I have a binder here in

6    which -- and Counsel has access to all of these documents.

7    They initially filed papers, Your Honor, in which they say,

8    I never got a copy of any assignment agreement, Lehman has

9    never given me a copy of the assignment agreement.  What did

10   we do?  We pointed them out in the document production that

11   we gave them.  We said, here it is up on the web -- because

12   we don't put it up on the web for everybody, Your Honor,

13   only with respect to the parties -- these are -- this is

14   personal identification for the borrowers -- so we only put

15   it up for the party at issue.  We put it up on the web and

16   we said, you can go to this web, click on this, and that

17   will give you the assignment agreement.

18             So in their replies what do they say?  They're not

19   saying I never got any assignment agreement, now they all

20   admit that they have assignment agreements.

21             I have them collected here and I'm happy to go

22   through them, Your Honor, but here's -- here is and I'll

23   summarize, and I'll be happy to go through each issue

24   because I've done it, but I'll summarize for you broadly

25   where it comes out, right?

Page 55

1           There's a September 2, 2008 assignment agreement.

2    There have been four cases -- four or five cases if you saw

3    it was the same assignment agreement.

4           THE COURT:  Right.

5           MR. MAHER:  And what they do is --

6           THE COURT:  But on that one they say that there

7    wasn't enough specificity.

8           MR. MAHER:  Right.

9           THE COURT:  I think the argument on that one is

10   that there wasn't enough specificity.

11          MR. MAHER:  One of the arguments, right?  However,

12   if you read the assignment agreement -- and I'm happy to go

13   through these, Your Honor -- it says, "We hereby assign and

14   the assignee hereby accepts."  that the present language

15   which is what is required in an assignment agreement.  It is

16   valid on its face and every court that has looked at it has

17   so held.

18          It attaches -- it says "to the corresponding

19   sellers referred here on Exhibit A."  Right.  And there's a

20   voluminous Exhibit A --

21          THE COURT:  Right.  So they say on that, yes, yes,

22   you say sellers, but you don't say particular ones.

23          MR. MAHER:  Right.

24          THE COURT:  So that doesn't work.

25          MR. MAHER:  That's what they say, but that's not

1    what the law is.  The law as they cited, it's in the case

2    they cited, Your Honor.  It's in the Moskowitz (ph) case,

3    the Bankruptcy Court in Moskowitz, it's on page -- and I

4    have it here, Your Honor, if you'll give me a moment.

5              THE COURT:  I mean there's a little bit of irony

6    here of course.

7              MR. MAHER:  Here's the reality, Your Honor.

8              THE COURT:  That I'm sure you're aware of.  No?

9              So in many, many of the Chapter 13 cases over

10   which I've presided the banks wanted to make the argument

11   that the assignments were good enough when they sought to

12   enforce their foreclosure rights against their borrowers.

13             MR. MAHER:  Right.

14             THE COURT:  The neighborhood rule --

15             MR. MAHER:  Right.

16             THE COURT:  -- in baseball.

17             MR. MAHER:  Right.

18             THE COURT:  They --

19             MR. MAHER:  Second base.

20             THE COURT:  Yes.  Sought to apply the neighborhood

21   rule with respect to assignment.

22             MR. MAHER:  Right.

23             THE COURT:  So now the opposite argument is being

24   made that, you know, these assignments were not particular

25   enough, there weren't enough i's dotted and there weren't

Page 57

1    enough t's crossed.  So there's a little bit of irony.  I

2    guess if you do enough cases you find these connections.

3    But be that as it may.

4              MR. MAHER:  Your Honor, we cite --

5              THE COURT:  So you're saying that that doesn't

6    hold water either.

7              MR. MAHER:  Not at all.  We -- in fact there is

8    specificities.  If you look at the Moskowitz case which we

9    cite on page 9, footnote -- page 9 in a footnote it says:

10             "There's no particular phraseology required to

11   affect an assignment.  All that is required is that property

12   must be sufficiently identifiable and there must be an

13   intent to assign a present right in the subject matter of

14   the assignment divesting the assigner of all control over

15   that which is assigned."

16             And in that case, Your Honor, what the designation

17   was, was all insurance proceeds to which I might be

18   entitled.

19             THE COURT:  Right.

20             MR. MAHER:  And in that case the person -- the

21   insurance company came and said, they didn't say me, and the

22   court said it doesn't matter.  Same thing with these

23   assignments, Your Honor.

24             If you -- again, going over this just broad

25   brushed the 2008 assignment has an Exhibit A, and Exhibit A

Page 58

1   specifically lists on page 6 American Bank.  It specifically

2   lists on page 10 First Mortgage Corporation, Gateway Bank.

3   It specifically mentions on page 16 Republic State Mortgage

4   Company.  That is sufficient as to those entities.  All

5   right?

6           Then we move on, there is 2002 assignment, and

7   essentially it says the same thing except it says, for

8   everybody else who I have not already assigned previously to

9   this assignment agreement I assign those rights to you,

10  including, but not limited to, the people who are listed in

11  the exhibit to this one.  Right?

12          And so if you look at the list here, Your Honor, I

13  mean literally there's thousands of them.  There's thousands

14  of them.  And it says to the extent we get any -- so this is

15  -- everybody else was assigned in 2012.  And it says to the

16  extent we've omitted anybody we'll later on amend and

17  restate this one just to include it so nobody is any issue,

18  but everything was assigned whether they were listed or not,

19  correspondent lenders, and that is sufficient under the law,

20  Your Honor.

21          Now there were subsequent amended and restated

22  agreements that added to this list.  It just -- same

23  agreement, it just said instead of ending at 3,853 it went

24  up to thousands more.  And so in 2013 the amended

25  restatement adds group 2000 Real Estate Services, Inc. at

Page 59

1    number 3859.  And then in 2014, which is what Mr. Salter is

2    complaining about, it added similar people.  Because there

3    are thousands of these people, Your Honor, you can't keep

4    track of every one.

5           THE COURT:  But you're saying that those later

6    dated assignments were -- the assignments had already been

7    made at an earlier date.

8           MR. MAHER:  Yes, exactly.  It had been made in the

9    2012 assignment.  All -- it says, and we can go through the

10   language if you like, I'm just doing this so you understand,

11   Your Honor -- that all their complaint said we're not

12   included and we weren't included, it's just not correct.  It

13   doesn't matter for purposes of their motion because clearly

14   their motion doesn't satisfy Rule 60(b), I'm doing this so

15   that the Court understands it.  We've done this as carefully

16   as we can.  Lehman did this as carefully as they could and

17   they purported to try to list everybody so that you wouldn't

18   hear complaints from people like this saying I'm not somehow

19   listed on this document.  All right?

20          So they added in 2014 as 3996 Director's Mortgage,

21   4169, Oaktree Funding, and 4239, Stearns Lending.  That's

22   everybody who's here before you.  Obviously some of them

23   were in 2008, some of them were added in the 2012, which are

24   subsequently amended and restated to specifically identify

25   them, but their not required to be specifically --

1             THE COURT:  So you're saying it was an amendment

2      to specifically identify them as belt and suspenders for an

3      assignment that was affected from the first instance because

4      it spoke in general terms about all of -- particular

5      sellers.

6             MR. MAHER:  Yes, Your Honor, exactly.

7             So all of these assignments that we're talking

8      about here today were either assigned in 2000 --

9      September 2, 2008 or February 13, 2012.

10            And again, in one of these decisions, Your Honor,

11     that we've cited to you in terms of the LBHI decisions there

12     is reference -- one of this things they said is the

13     Bankruptcy Court didn't know about any of this, there's a

14     specific order from Judge Peck allowing the bankruptcy

15     estate to do this, and it's cited in one of the cases, Your

16     Honor.

17            So all of this is completely in accordance with

18     what is required under the law, what the agreements

19     contemplated in terms of successors and assigns and

20     thereafter, whether it was done in 2008 and 2012, and

21     thereafter specifically adding people to be identified, but

22     in 2012 what was -- Your Honor, what was assigned -- have

23     agreed to assign any rights and remedies assignor may have

24     under the agreements with respect to the mortgage loans to

25     the extent such rights and remedies are assignable and the

Page 61

1    assignor now wish to document that agreement, then they

2    hereby assign everything that hasn't been assigned

3    previously with respect to these entities.

4           Whether or not -- including, but not limited to,

5    the people who are listed on the exhibit.  However, to the

6    extent we identify additional people and want to add them

7    we'll amend and restate.

8           So his statement, Your Honor, that these people

9    who are added for the first time a week before the ADR

10   notice is factually wrong.  The assignment happened in 2012,

11   the documentation of it.

12          Now we have again four other arguments without the

13   documentation that we have properly assigned these rights

14   either elegantly under the seller's guide, under the terms

15   of the seller's guide by itself, or as a matter of conduct

16   in how Lehman Bank and LBHI conducted themselves.  Because

17   of course it would make no sense for LBHI to take these

18   loans after having these extensive representations and

19   warranties happening two months later to buy this loan and

20   say, well, we don't care about these representations and

21   warranties.

22          Now that may get into certain fact issues that are

23   not before you today, Your Honor, but I want you to know

24   that we have five different arguments and ways, but you just

25   have to look at the assignment agreements and say as five,

1    six other courts have held these are clearly good under New

2    York law.  They don't have a single case that says they're

3    not.

4              THE COURT:  Okay.  All right.  Thank you.

5              MS. HENDERSON:  Just for the record, Your Honor,

6    I'd like to clear up something that Mr. Maher indicated that

7    I was the client here in court today.  I am co-counsel with

8    Blank Rome for Stearns Lending and Group 2000 and not a

9    client.

10             THE COURT:  Okay.

11             MS. HENDERSON:  So, I wanted to make sure that was

12   put on the record.

13             MR. MAHER:  I never stated she was a client.  I

14   don't even think I referred to you.

15             THE COURT:  I think that was a misunderstanding.

16             MR. SALTER:  I (indiscernible).

17             THE COURT:  Yes, of course.  You can have as many

18   as you like.

19             MR. SALTER:  Okay.  As to the -- and this is -- I

20   guess I'm missing it.  Under the Rule 60(b) standard he's

21   saying, you know, we had these changes to bring it up.  It

22   was counsel's -- co-counsel's own words that a lot of the --

23   we recognize the sellers may feel differently but that issue

24   is not before Your Honor.  In fact nothing about the merits

25   of the indemnification claim is before the Court today.

Page 63

1          So he's now saying we could have brought this up

2     there but we didn't.  No, particularly we didn't --

3          THE COURT:  But let me have you look at it -- let

4     me try to have you look at it a different way.  When an ADR

5     is ordered -- procedure is ordered, as it has been in so

6     many aspects of this case and it's worked really, really

7     well, every -- virtually every claimant says I don't want to

8     do it, I don't belong here.  I have a suit of cases in which

9     people say, there's no personal jurisdiction over me, let me

10    out of here.  There are any number of defenses that people

11    have which they characterize in the nature of threshold

12    issues because they don't want to participate.  Okay?  The

13    last round it was the statute of limitations.  Now this has

14    been put into this new bucket of improper assignment.

15         And let's be perfectly honest here.  The single --

16    the biggest argument that you make is the non-recourse

17    argument.  That's the biggest argument that you make is that

18    look, LBB could not have suffered any damages because it

19    sold the loans on a non-recourse basis.  That's kind of the

20    big headline.  Big headline.  LBB sells, no recourse.  It

21    could never have a claim, therefore there's nothing to

22    indemnify it for.

23         It just doesn't work.  That's not what a non-

24    recourse transaction necessarily means.  It just -- all that

25    that meant was that LBB was saying here it is, pushing it

Page 64

1    across the table, and you can't come back against me.  It's

2    got nothing to do with the assertion of rights that LBB had

3    and transferred.

4            Now if you want to get -- your argument is that

5    there is no valid assignment, then you're saying that, okay,

6    I disagree with you but I'm going to move on, then you're

7    saying that there was no valid assignment, right?

8            MR. SALTER:  That's not our argument, but -- and

9    then as far as the --

10           THE COURT:  What's not your argument?

11           MR. SALTER:  That wasn't -- my -- our argument was

12   not that there was an invalid assignment, our argument was

13   that the assignment was -- did not assign anything

14   basically.  When he --

15           THE COURT:  Because it was non-recourse.

16           MR. SALTER:  Because of the fact that we said to

17   you earlier and I didn't hear Counsel answer it, is what

18   about the fact that it's sitting on this side of the hallway

19   and it's worthless and now in 2012 your -- who owes Security

20   National?  Oh, bring Security National across the hall, hey,

21   it's worth something.

22           THE COURT:  That's exactly not what Counsel said.

23   That's not what Counsel said.

24           MR. SALTER:  He didn't address the argument that

25   it --

1           THE COURT:  Sure he did.  He --

2           MR. SALTER:  He said it was assigned in 2012,

3    which was after the loan was sold years later and -- you

4    know, so the assignment of rights and claims under the loan

5    purchase agreement occurred in 2012, years after the loan

6    was sold, in some cases years after the loan had defaulted.

7    At the time that assignment took place Lehman bank -- those

8    claims were worthless, that loan purchase agreement and the

9    rights and remedies in the hands of Lehman bank were

10   worthless.  So in 2012 --

11          THE COURT:  But your argument --

12          MR. SALTER:  -- they executed the assignments to

13   give them worth in the hands of Lehman Brothers Holdings.

14          THE COURT:  When did Lehman Bank sell the paper to

15   LBHI?

16          MR. SALTER:  Between 2000 -- as to my clients

17   between 2004 and 2007.

18          THE COURT:  But your position is that the moment

19   after LBB sold the paper on a non-recourse basis your

20   clients were off the hook.

21          MR. SALTER:  That's a mischaracterization of our

22   position because of the holder of the note which the

23   appellate division said after notes are paid and

24   distinguished noteholder status cannot be retained.  You

25   can't retain the noteholder.  At one point they were a

Page 66

1    noteholder.

2              THE COURT:  See but this is the beauty of this

3    all, because during the statute of limitations argument when

4    I pointed out the fact that only the party that holds the

5    note or holds the claim can enforce it, right, that was

6    dismissed as not being compelled.  Now you're telling me the

7    exact same thing as a reason why you should win.

8              MR. SALTER:  I wasn't here for the statute of

9    limitations argument, Your Honor.  It's just -- it changes

10   the damages.  It changes the damages because it's

11   presupposing -- like Lehman Brothers Holdings' damages are

12   not a as a result of holding it.

13             THE COURT:  I can sell the note and with it the

14   rights to enforce and separately retain other

15   indemnification rights and damage claims.

16             MR. SALTER:  But Lehman Bank did -- so let's say

17   Lehman Bank did that.  Lehman Bank sold the notes --

18             THE COURT:  No, but it didn't, so let's --

19             MR. SALTER:  Well how do we know that?  We haven't

20   had -- I mean Counsel is saying he had, but we haven't had

21   discovery on any issue of these things that happened all

22   these times.

23             THE COURT:  Right.  So first you're going to go to

24   ADR --

25             MR. SALTER:  Right.

1              THE COURT:  -- and then after ADR if it doesn't

2      work you can take discovery and this is why there'll be a

3      trial.

4              MR. SALTER:  I just wanted to get the distinction

5      between -- because they're not walking away from it because

6      the indemnification claims travel with the note.  The holder

7      of the note changes as it passes down the line.  It wasn't

8      that Lehman Brothers Holdings was left with this note in

9      their hands it went bad and now they had damages.  Lehman

10     Brothers Holdings' damages are a as a result of them

11     assigning it and making their own separate promises.

12             Our originator did not encourage -- or I guess

13     there were warranties -- but they did not structure Lehman

14     Brothers Holdings --

15             THE COURT:  You guess there were warranties?  You

16     guess?

17             MR. SALTER:  I wouldn't say they called them up

18     and said sell our loans, but I mean I could see how they

19     could say that they relied on it.

20             THE COURT:  When these loans were originated there

21     were representations and warranties made.

22             MR. SALTER:  Made to Lehman Brothers Bank.

23             THE COURT:  Correct.

24             MR. SALTER:  And --

25             THE COURT:  But now --

1              MR. SALTER:  -- two subsequent holders of the

2      note.

3              THE COURT:  And to subsequent holders of the note.

4              MR. SALTER:  They were a subsequent holder of the

5      note, it then was sold to somebody else.  They are no longer

6      a subsequent holder of the note.

7              THE COURT:  They were a subsequent holder then,

8      they're just not -- they may not be a holder of the note.

9      They did not lose their subsequent holding status.

10              MR. SALTER:  So is the argument that they had --

11      you know, because this is -- the contract was drafted by

12      Lehman Bank.  So when they're saying these are illusory

13      rights the originator did not draft this.  So if Lehman Bank

14      drafted a contract which contained illusory rights I don't

15      think that is the fault of the party who didn't draft it

16      certainly.  But --

17              THE COURT:  But you're --

18              MR. SALTER:  -- if they're saying -- basically

19      it's liability and perpetuity is what they're arguing.

20      They're saying that this contract --

21              THE COURT:  We did this argument --

22              MR. SALTER:  I wasn't --

23              THE COURT:  -- I know, but you can't -- that

24      doesn't work.  We did this argument at the statute of

25      limitations, and there are portions of cases that address

Page 69

1    that argument.

2             There's no argument being made here that Lehman

3    slept on its rights.  Okay?  There -- the argument at the

4    statute of limitations it made clear that there was a

5    ephemeral window of time in which Lehman may have been able

6    to assert its rights.  In fact it didn't exist.  It didn't

7    exist.

8             MR. SALTER:  Lehman's rights didn't exist.

9             THE COURT:  Yes.

10            MR. SALTER:  Lehman Bank.

11            THE COURT:  Under -- if you put together the

12   position that you're taking today and the position that was

13   taken at the statute of limitations argument, the rights

14   that LBHI had to assert any claim relating to the breaches

15   of reps and warranties that occurred at origination never

16   actually existed.  Never.

17            MR. SALTER:  And I don't understand if -- why that

18   would be a problem for -- it's bad for Lehman Brothers

19   Holdings, I'm not sure why that's -- like I'm sure -- if

20   that's the result I'm not sure why it's an illogical result.

21            THE COURT:  But this is a good point.  I think it

22   would be kind of bad --

23            MR. SALTER:  But --

24            THE COURT:  -- for originators of thousands and

25   thousands of mortgages which were part and parcel of the

1    entire collapse of the market to now be taking the position

2    that they participated in a program in which it turns out

3    that all of the rights and reps and warranties they gave

4    were meaningless.  I real don't think that that's a really

5    good position to be taking.

6              MR. SALTER:  It's --

7              THE COURT:  And the fact that Lehman Brothers Bank

8    and LBHI, for reasons that had nothing whatsoever to do with

9    the origination of the loans, decided to sell the loans on a

10   non-recourse basis somehow relieved the originators of their

11   responsibilities?  That's not a really compelling argument.

12             MR. SALTER:  I think it breaks the chain, I think

13   that we're never saying we're escaping liability to other

14   possible parties who might have -- the facts of how it

15   happened are how they happened.  So it turned out that

16   Fannie Mae and Freddie Mac were holding the loans at the

17   time they defaulted.

18             THE COURT:  Go back to the moment in time at which

19   LBB sold on a non-recourse basis.  Is it or is it not your

20   argument that a moment after that non-recourse sale there

21   were no live reps and warranties on which LBHI could have

22   brought a claim?

23             MR. SALTER:  No.

24             THE COURT:  The next day.

25             MR. SALTER:  No, it's not, because they would have

Page 71

```
 1    at that time have been the holder of the note and they could

 2    have enforced the warranties as the holder of the note at

 3    that time.

 4              THE COURT:  Okay.

 5              MR. SALTER:  It was only after they sold it.

 6              And just the final thing, the standing ADR order

 7    is subject to as you called the escape hatch, so as far as

 8    the extraordinary circumstances the ADR -- you know, the

 9    standing order says well we can go in front of the court and

10    we can try to get out of it.  So that's the reason we're

11    here is because --

12              THE COURT:  No that's not -- you're bringing --

13    you're not here under the escape hatch, you're here --

14    you're bringing a 60(b) motion for me to reconsider the ADR

15    order.  I'm not reconsidering the ADR order.

16              The escape hatch was designed for unique

17    circumstances such as you got the wrong guy.  You're trying

18    to make an argument that you got the wrong guy, but it's not

19    -- it's --

20              MR. SALTER:  We're saying they're the wrong guy.

21    We're --

22              THE COURT:  I understand.

23              MR. SALTER:  Okay.

24              THE COURT:  But --

25              MR. SALTER:  Okay.
```

Page 72

1              THE COURT:  -- I think we're -- we've concluded.

2      Okay?  The 60(b) motion the denied.

3              MR. MAHER:  One last point if I might.

4              THE COURT:  Yes.

5              MR. MAHER:  I understand you're denying the motion

6      and you're directing them to ADR, I appreciate that.

7              It is absolutely --

8              THE COURT:  Look, I'll say this to you, if you go

9      -- if you come into ADR and you get a -- you know, a

10     unanimous chorus of people saying that I am really losing

11     it, you ought to reconsider.

12             I mean I am -- I believe that I've come to the

13     right conclusion, but this is a -- this should be a living,

14     breathing process, and everybody should be working towards,

15     you know, the right result.

16             MR. MAHER:  Fair enough, Your Honor.

17             The -- and I am loathe to impose upon you, Your

18     Honor; however, as you've seen from the statute of

19     limitations issue that you have definitively ruled on,

20     certainly at the hearing and you're going to have a

21     definitive ruling with respect to that --

22             THE COURT:  Right.

23             MR. MAHER:  -- they still don't accept it.

24             MS. HENDERSON:  Your Honor, I'm going object.  I

25     thought oral argument was over.

1          THE COURT:  Well but now we're coming back to --

2     it is over -- but now we're coming back to the what are we

3     going to do going forward.

4          MR. MAHER:  Right.

5          THE COURT:  Because I have the specter of what's

6     going to happen next.

7          MR. MAHER:  Right.

8          THE COURT:  And I need to have some -- and the

9     burden is on you folks.  I need some -- I need to have some

10    order here.  I need to have some assurance that I'm not

11    going have to do this, you know, anymore times.

12         MR. MAHER:  Well let me try to address that, Your

13    Honor.

14         THE COURT:  All right.

15         MR. MAHER:  And again, I'm loathe to put more of a

16    burden on you because I know you're very burdened with all

17    the things that are going on in this court, Your Honor;

18    however, it is crystal clear that you understand all of

19    these assignment issues perfectly.

20         If you could draft a brief order we could use that

21    in a ADR process to convince the counterparties that they

22    are completely wrong and that they don't have to listen to,

23    you know, the people in Utah, the people in Arkansas,

24    they're listening to the bankruptcy judge who's overseeing

25    the ADR process.

Page 74

1           THE COURT:  Well --

2           MR. MAHER:  So that would be extremely helpful to

3    Lehman.

4           THE COURT:  -- why can't --

5           MR. SALTER:  (Indiscernible) to make a formal

6    motion on objections there'd be issues with (indiscernible)

7    case, res judicata, collateral estoppel issues.  I mean

8    basically you're saying take these to -- take these issues

9    to -- we're going mediation, take these issues to mediation.

10           He's saying well let's get a finding of fact and

11    we'll take all these issues up in the mediation.

12           THE COURT:  No, no, no, hold on.  Hold on.

13           MR. SALTER:  Is that --

14           THE COURT:  Hold on.  This is a 60(b) motion.

15           MR. MAHER:  Right.

16           THE COURT:  That's all it is.  So for the -- what

17    I can do is enter an order that says for the reasons stated

18    on the record the 60(b) motion is denied, and you can use

19    that transcript as a way of demonstrating, as you might to

20    other counterparties who wish to make similar arguments,

21    that you don't believe they're going to gain traction.

22           The problem that I have is that I can't -- due

23    process is due process, the parties aren't performing, I

24    can't bind them, this isn't a decision on the merits of a

25    motion to dismiss, but if you're going to go out and tell

1   people come back and try it again I'm going to be a really

2   unhappy person.

3           So you're objecting now and I want to know to what

4   end, what are you going to do?

5           MS. HENDERSON:  Your Honor, I believe the

6   objection was that we didn't want it to be a fact-based

7   order from you indicating that a motion to dismiss if there

8   were an adversary proceeding brought after the ADR is over

9   that could then be used as law of the case res judicata,

10  we're not here to argue that.  We're arguing a 60(b) motion

11  which has already been denied.

12          THE DEFENDANT:  But I want to know --

13          MR. MAHER:  What --

14          THE COURT:  -- but as I said at the beginning I

15  want to know what's going to happen next?

16          MS. HENDERSON:  We've already represented that the

17  only clients that we were here on behalf of are the only

18  clients that we have and this is the only motion that we had

19  intended to file.

20          MR. MAHER:  Well, Your Honor, what I had been

21  suggesting --

22          THE COURT:  Thank you.

23          MS. HENDERSON:  You're welcome.

24          MR. MAHER:  What I have been suggesting is that

25  you enter on order saying the 60(b) motion is denied because

Page 76

1    it doesn't qualify for the extraordinary relief that a 60(b)

2    requires.

3            THE COURT:  Right.

4            MR. MAHER:  However in the alternative as I look

5    at the merits in terms of the assignment issue --

6            THE COURT:  Oh, I'm not going do that.

7            MR. MAHER:  Okay.  All right.

8            THE COURT:  I'm not going to do that.  I mean it's

9    a 60(b) motion, we've gone very far towards --

10           MR. MAHER:  Then we'll take the transcript.

11           THE COURT:  -- the merits.  I think that if these

12   claims ultimately came on for trial they would have a right

13   to put in their proof on the various theories.  You say I've

14   got reasons why the assignments were valid --

15           MR. MAHER:  Right.

16           THE COURT:  -- right?  And for the purposes at

17   least of what we're doing here today I don't find that

18   anything that anyone said compels me to revisit under 60(b),

19   the ADR order.

20           What ultimately might happen I don't know.  I mean

21   you've heard my preliminary views, but I don't know.  So --

22           MR. MAHER:  Very well, Your Honor.

23           THE COURT:  But what -- there are hundreds more of

24   these parties out there, so I'd like to know how are we

25   going to control this?  What's going happen?

1           MR. MAHER:  You know, obviously we cannot control

2     counterparties who choose to file motions or do whatever it

3     is that they do.

4           THE COURT:  So let's talk about -- let's put to

5     one side the non-recourse, the assignment issue, okay?

6     Let's talk about the statute of limitations.

7           I'm going to publish a decision that denies the

8     motion to dismiss.  What I'd like to do is have it be one

9     decision but covers both of the parties.

10          MR. MAHER:  Yeah.

11          THE COURT:  Separate sections on the facts.  Any

12    problem with that?

13          MS. HENDERSON:  No, Your Honor, I would just alert

14    Your Honor that Home Trust's complaint was for declaratory

15    relief, so it's a little different than CNN's complaint for

16    contractual indemnification.  So, I would just point that

17    out to Your Honor.

18          THE COURT:  Right.  But --

19          MR. MAHER:  It doesn't matter for purposes of the

20    motion to dismiss, Your Honor.

21          THE COURT:  Right.  For purposes of just deciding

22    the legal issue of a statute of limitations.

23          MS. HENDERSON:  If you're asking then we don't

24    object, they were both argued concurrently.

25          THE COURT:  They were, right.  I'm just trying to

Page 78

```
 1    be efficient.  And then I'm just trying to figure out what's

 2    going happen next.

 3              Are you going to -- we had a whole back and forth

 4    over appellate rights, which have been preserved.  You were

 5    of the view that this was a stalling tactic by LBHI, I think

 6    I convinced you that it was not.  This will come out

 7    shortly.

 8              What -- is there going to be an attempt to appeal

 9    it?  What's going happen?  Are folks going to go to ADR?

10              MR. MAHER:  Your Honor, in terms of what's

11    happened here thus far --

12              THE COURT:  Yeah.

13              MR. MAHER:  -- we tentative dates scheduled with

14    some of the parties here --

15              THE COURT:  Okay.

16              MR. MAHER:  -- that are here before you for ADR

17    within the next month in the event that Your Honor denied

18    the motion as you have.

19              THE COURT:  Okay.

20              MR. MAHER:  So for those counterparties we're

21    going to be going to mediation in the next let's say month

22    or two on agreed dates after the date -- they were scheduled

23    after the date of this hearing so that, you know, with the

24    understanding --

25              THE COURT:  Okay.
```

1              MR. MAHER:  -- if you denied it we'd be going to

2     ADR on those issues.

3              I don't know -- separately I don't know what

4     they're intending to do on your statute of limitations

5     ruling.  I'm not clear what their rights are at this

6     point --

7              THE COURT:  I --

8              MR. MAHER:  -- and that's for them to determine.

9              THE COURT:  Right.  Okay.

10             MS. HENDERSON:  Just to be perfectly clear, those

11    matters are not before the Court at this moment, Judge, that

12    there's been no decision made.  We're waiting to see what

13    your ruling says.  We're here on Apex and American Bank and

14    Director's, not Home Trust and CNN at this time, Your Honor.

15             MR. MAHER:  We're confident your ruling would be

16    upheld if it were appealed, Your Honor.

17             THE COURT:  Okay.  Okay.  I'm not trying -- I'd

18    like to as much as possible control my docket and not have

19    to have multiple rounds of the same thing.  But it is what

20    it is, and if you would share -- if you would draft an order

21    along the lines that we've talked about and share it with

22    all the parties and then you can get a transcript of this

23    hearing and you can annex it as an exhibit that works for

24    me.

25             MR. MAHER:  Yes, Your Honor.

1            THE COURT:  All right?  All right.

2            MR. SALTER:  Thank you, Judge.

3            MS. HENDERSON:  Thank you, Your Honor.

4            THE COURT:  Thank you.

5        (Whereupon these proceedings were concluded at 3:19 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              I N D E X

2

3                              RULINGS

4                                                              PAGE

5    Doc# 49172 Motion to Approve Compromise: Motion

6    Pursuant to Rule 9019 of the Federal Rules of

7    Bankruptcy Procedure and Section 105(a) of the

8    Bankruptcy Code for Approval of Settlement Agreement

9    Relating to restructured Asset Certificates with

10   Enhanced Returns, Series 2006-20AT Credit Defaults

11   Swap Agreement and Trust Agreement                       14

12

13   Adv. 08-01420 - Doc# 7697 Trustee's One Hundred

14   Sixty-Third Omnibus Objection to General Creditor

15   Claim (No Liability Claims)                              18

16

17   Rule 60(b) Motion                                        72

18

19

20

21

22

23

24

25

Page 82

1              C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn South   Digitally signed by Dawn South
                  DN: cn=Dawn South, o, ou,
                  email=digital1@veritext.com, c=US
6    _____   Date: 2015.05.06 14:31:53 -04'00'

7    Dawn South

8    AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12   Date:  May 6, 2015

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

**&**

**&** 5:2,10 6:1 7:1
9:17 11:19 15:15

**0**

**08-01420** 1:12 2:8
81:13
**08-13555** 1:7

**1**

**1** 43:21 44:4,4,7
52:5
**10** 58:2
**10004-1482** 5:13
**10110** 6:4
**10153-0119** 5:5
**10174-0208** 6:23
**105** 2:3 12:17 81:7
**10:05** 1:20
**10:18** 19:11
**111** 5:20
**11501** 82:25
**11778** 16:8
**13** 56:9 60:9
**14** 81:11
**15** 36:15
**16** 36:14 58:3
**18** 81:15
**1999** 7:2

**2**

**2** 55:1 60:9
**20** 34:14,16,17
**2000** 3:14 6:19 21:9
21:22 22:2,20 26:3
58:25 60:8 62:8
65:16
**2002** 58:6
**2004** 65:17
**2006-20at** 2:5 12:20
81:10
**2007** 65:17
**2008** 55:1 57:25
59:23 60:9,20
**2011** 52:5
**2012** 23:1 58:15
59:9,23 60:9,20,22
61:10 64:19 65:2,5

65:10
**2013** 23:1 34:9
58:24
**2014** 23:1 34:9 41:9
59:1,20
**2015** 1:19 82:12
**21st** 15:22 18:5
**22nd** 12:23
**29th** 12:24
**2:05** 19:11

**3**

**3,853** 58:23
**300** 82:24
**3150** 7:3
**330** 82:23
**350** 6:13
**3859** 59:1
**3996** 59:20
**3:19** 80:5
**3rd** 12:16

**4**

**40.5** 13:10
**405** 6:22
**408** 82:8
**4169** 59:21
**4239** 59:21
**48242** 3:1
**49027** 3:11
**49060** 3:16
**49064** 3:23
**49067** 4:4
**49106** 2:22
**49107** 2:12
**49112** 2:17
**49167** 3:6
**49172** 2:1 14:7 81:5

**5**

**5** 1:19 43:21
**5.25** 13:16
**500** 6:3

**6**

**6** 3:19 4:1,7 21:23
43:23 44:8,9 46:20
58:1 82:12

**60** 3:19 4:1,7 19:22
21:23 23:10,12 24:5
27:5,8 35:23 43:1,4
43:8,17,21,24 44:2
44:4,4,7,8,9,14
45:15 59:14 62:20
71:14 72:2 74:14,18
75:10,25 76:1,9,18
81:17
**60603-4080** 5:21

**7**

**7002334** 16:4 18:12
**701** 49:12
**710** 40:7,8 41:5,11
41:19,22,23
**711** 40:8 41:20
47:23 48:3,8 49:4
**713.3** 49:13
**72** 81:17
**75** 6:12
**767** 5:4
**7697** 2:8 81:13

**8**

**80202** 7:4
**88** 16:1
**89** 15:25

**9**

**9** 17:14,15 57:9,9
**9019** 2:2 12:17 81:6
**94945** 6:14

**a**

**a.m.** 19:11
**aaert** 82:8
**ab** 50:6
**able** 13:12 50:1
69:5
**absence** 12:6
**absolutely** 40:19
43:7 45:20,22 72:7
**accept** 72:23
**accepts** 55:14
**access** 54:6
**accurate** 82:4
**action** 10:7 24:13
24:17,18 37:17

38:12
**add** 61:6
**added** 58:22 59:2
59:20,23 61:9
**adding** 60:21
**additional** 20:22
61:6
**address** 13:9 64:24
68:25 73:12
**addresses** 13:15
43:24
**adds** 58:25
**adjourn** 18:4
**adjustment** 11:24
**administrator**
12:13,16 13:12,19
13:23 14:1
**admit** 54:20
**adr** 13:8 20:19 22:1
22:1,14 23:6,14,14
23:17,18 25:16,19
33:20 35:17 36:13
36:16 37:18 38:19
43:10,11,17 47:2
54:3 61:9 63:4
66:24 67:1 71:6,8
71:14,15 72:6,9
73:21,25 75:8 76:19
78:9,16 79:2
**adv** 1:12 2:8 81:13
**advance** 27:8
**adversary** 13:20
37:14,15 75:8
**affect** 49:22 57:11
**affirmative** 23:22
23:25 24:12
**agenda** 10:13 11:20
12:9 15:8 19:9
**ago** 9:3 47:17 51:18
**agree** 22:10,14 26:3
26:7,21 40:13 44:22
51:10
**agreed** 30:8 60:23
78:22
**agreement** 2:4,6,6
12:18,23 13:1,2,6
13:14,23 14:3,6

23:2 32:14,15,20,21
32:24 33:17,17,18
33:24,25 34:4,4,5,8
36:3,3 38:8 40:2
48:2,14,24 49:16
52:5,9,14,22,23,24
52:25 53:5,10,19,21
54:8,9,17,19 55:1,3
55:12,15 58:9,23
61:1 65:5,8 81:8,11
81:11
**agreements** 13:18
22:23,24 23:1 34:11
42:23 52:15 53:7,18
54:20 58:22 60:18
60:24 61:25
**ah** 48:6
**alert** 77:13
**alleging** 39:22,23
**alleviate** 20:8
**allow** 18:15
**allowing** 60:14
**alternative** 2:12,17
2:22 3:1,6,11,16,23
4:4 39:18 76:4
**amend** 58:16 61:7
**amended** 18:9
58:21,24 59:24
**amendment** 60:1
**american** 4:6 6:9,10
41:25 58:1 79:13
**ample** 18:10
**analyze** 53:1
**analyzed** 53:1
**annex** 79:23
**annexed** 17:5
**answer** 35:18 64:17
**answerable** 35:12
**answered** 36:7
**answers** 28:22
**anybody** 35:13
47:13 58:16
**anymore** 48:7 51:8
73:11
**anyone's** 19:24
**apart** 20:3 32:16
36:18 48:4

**apex** 3:8 6:10 79:13
**apparently** 27:9
**appeal** 78:8
**appealed** 79:16
**appeals** 36:24
**appear** 17:24 18:22
30:13
**appearing** 12:11
**appellate** 65:23
78:4
**applicable** 25:24
**applied** 26:25
**applies** 3:14
**apply** 56:20
**appreciate** 10:18
72:6
**approached** 9:11
**appropriate** 9:21
**approval** 2:4 12:18
14:5 81:8
**approve** 2:1 14:18
81:5
**approved** 14:22
**approving** 14:2
**approximately**
13:10
**april** 12:16,23,24
15:22 18:5
**argue** 23:12 25:24
75:10
**argued** 77:24
**arguing** 20:10,12
25:4 30:2 39:17
68:19 75:10
**argument** 21:6,7
24:1 36:17,21 37:24
38:2 39:11,11,18
42:12,13 47:21,22
51:23 52:10,11 53:2
55:9 56:10,23 63:16
63:17,17 64:4,8,10
64:11,12,24 65:11
66:3,9 68:10,21,24
69:1,2,3,13 70:11
70:20 71:18 72:25
**arguments** 20:17,18
39:2,9 53:20 55:11

61:12,24 74:20
**arkansas** 51:20
52:3 73:23
**arthur** 5:8 11:16,18
11:18 12:11 13:5
14:23,25
**aside** 46:20
**asked** 10:15
**asking** 77:23
**aspects** 63:6
**assert** 33:13 69:6,14
**asserted** 17:15
27:22 30:24
**asserting** 17:10,13
38:10,11 39:24 41:7
**assertion** 64:2
**asserts** 52:4
**asset** 2:5 12:19 81:9
**assign** 29:14 30:2
30:12 32:23 42:15
47:12 50:12,13,14
50:16,17 52:6,17
55:13 57:13 58:9
60:23 61:2 64:13
**assignable** 32:24
33:1 50:11,15 60:25
**assigned** 25:12,13
29:12,20 30:10,11
31:11 32:25 33:19
38:1,16 39:19 41:22
42:24 49:24 51:2
52:6,9 53:4,19,22
54:3 57:15 58:8,15
58:18 60:8,22 61:2
61:13 65:2
**assignee** 22:20 27:2
34:7 39:23,24 55:14
**assigner** 57:14
**assigning** 49:14,16
67:11
**assignment** 24:2
25:4,7,11 26:11,25
28:12 31:22 32:3
33:3 34:6,17 37:16
40:3 42:13,22 43:15
49:1,23 50:6,11
52:5,9 53:4,16,19

53:21 54:8,9,17,19
54:20 55:1,3,12,15
56:21 57:11,14,25
58:6,9 59:9 60:3
61:10,25 63:14 64:5
64:7,12,13 65:4,7
73:19 76:5 77:5
**assignments** 32:1
56:11,24 57:23 59:6
59:6 60:7 65:12
76:14
**assignor** 27:2 60:23
61:1
**assigns** 33:12 47:13
49:2,3 53:12 60:19
**association** 5:19
14:12
**assurance** 73:10
**assured** 8:17
**astonishing** 32:7
**attaches** 55:18
**attempt** 78:8
**attempting** 24:24
**attorney** 5:19 6:10
6:19
**attorneys** 5:3,11 6:2
**authority** 25:25
26:1
**avenue** 5:4 6:3,22
**avoid** 20:18 47:1,15
**aware** 46:17 56:8

|     b     |
| --------- |

**b** 1:23 3:19 4:1,7
19:22 21:23 23:10
23:12 24:5 27:5,8
35:23 43:1,4,8,17
43:21,24 44:2,4,4,7
44:8,9,14 45:15
46:20 59:14 62:20
71:14 72:2 74:14,18
75:10,25 76:1,9,18
81:17
**back** 17:2 18:6
21:19 33:9 43:16,18
43:19,19 48:10 64:1
70:18 73:1,2 75:1
78:3

**bad**   12:2 30:24,25
  34:10,21 35:7,8,13
  67:9 69:18,22
**baffles**   44:16
**ball**   27:9
**bank**   4:1,7 5:19
  6:10 12:25 13:2
  14:11 22:16 23:3
  26:12,21,22 27:3
  28:15 30:9,10,12
  31:8,9 34:1,9 39:24
  48:19 50:23,23 51:7
  51:9,11,11 52:3
  58:1,2 61:16 65:7,9
  65:14 66:16,17,17
  67:22 68:12,13
  69:10 70:7 79:13
**bank's**   33:2,2
**bankruptcy**   1:1,15
  1:25 2:2,3 10:5
  12:17,18 56:3 60:13
  60:14 73:24 81:7,8
**banks**   56:10
**bare**   18:14
**barred**   39:6,20
  41:23
**base**   56:19
**baseball**   56:16
**based**   17:16 45:7
  75:6
**basic**   31:21 34:5
  36:9 37:13
**basically**   22:18
  24:14 30:3,22 64:14
  68:18 74:8
**basis**   18:8 28:3,9
  31:18 34:2,16 63:19
  65:19 70:10,19
**battery**   5:12
**bear**   31:9
**beautiful**   27:18
**beauty**   66:2
**beginning**   9:3 19:17
  75:14
**behalf**   9:18 12:11
  14:11 15:15 20:10
  40:19 75:17

**believe**   16:9 19:14
  21:24 31:25 49:20
  72:12 74:21 75:5
**belong**   63:8
**belt**   60:2
**bench**   10:5 52:20
**beneficiary**   48:1,3
**benefit**   46:4
**best**   8:18 13:24
  14:16,21,21
**better**   12:4,6 27:2
**beyond**   18:14 20:19
**big**   8:4 63:20,20
**biggest**   63:16,17
**bill**   40:17,19
**billion**   34:16,17
**bind**   74:24
**binder**   54:5
**bit**   56:5 57:1
**blank**   6:18 21:8,21
  39:5 42:1,3 62:8
**blunt**   19:23
**board**   18:19
**bond**   16:18
**bonds**   16:16 18:18
**book**   28:22
**books**   31:3
**borrowers**   54:14
  56:12
**bottom**   23:12 35:11
  35:15 39:6
**bound**   19:25
**bowling**   1:16
**branman**   12:24
**breach**   30:1,4,4
  37:25 38:4,7,10
  49:24
**breaches**   34:23
  38:16 69:14
**breadth**   49:1
**breaks**   70:12
**breathing**   72:14
**bremer**   41:17
**brief**   49:21 73:20
**bring**   21:12,13 22:1
  34:13 37:2 62:21
  64:20

**bringing**   34:15
  71:12,14
**broad**   19:18 47:11
  47:11 49:5 50:18
  53:16 57:24
**broadly**   54:24
**broadway**   7:2
**broken**   27:16
**brothers**   1:6,12 5:3
  6:2 10:14 12:12
  15:1 31:8 32:18
  34:14 35:8 40:20
  51:11 65:13 66:11
  67:8,10,14,22 69:18
  70:7
**brought**   8:4 21:16
  35:22,23 38:13 63:1
  70:22 75:8
**brushed**   57:25
**bucket**   63:14
**building**   6:21
**burden**   46:17 73:9
  73:16
**burdened**   73:16
**business**   30:25,25
  31:1
**buy**   29:1 61:19

**c**

**c**   1:24 5:1 8:1 82:1,1
**ca**   6:14
**call**   21:6 29:17
  42:12
**called**   14:6 67:17
  71:7
**candace**   5:8 11:18
**cantor**   7:9 10:14,18
  10:23 11:3,7,22
**capacity**   12:12,25
**car**   29:1,6,14 51:3
**care**   8:18 61:20
**careful**   46:2
**carefully**   59:15,16
**case**   1:7,12 8:15
  20:3 22:7 23:23
  25:22,22 29:22,24
  32:19,22 33:19 35:4
  35:5,10 41:14 44:6

46:10 48:13 50:18
  51:19,20,24 52:13
  56:1,2 57:8,16,20
  62:2 63:6 74:7 75:9
**cases**   9:22 41:16
  43:24 51:17 52:2
  55:2,2 56:9 57:2
  60:15 63:8 65:6
  68:25
**catch**   43:23
**categorically**   46:15
**categories**   44:1,10
  47:12
**cause**   24:13,17,18
  37:17 38:12
**caused**   49:25
**certain**   32:9 49:14
  61:22
**certainly**   10:16
  19:25 35:20 43:22
  68:16 72:20
**certificate**   13:13
  14:17
**certificates**   2:5
  12:19 81:9
**certified**   82:8
**certify**   82:3
**cet**   82:8
**chain**   27:15,15
  70:12
**challenge**   17:7
**chambers**   19:2
**changes**   62:21 66:9
  66:10 67:7
**chapman**   1:24 5:18
  14:11
**chapter**   56:9
**characterize**   24:22
  63:11
**chicago**   5:21
**chief**   10:14
**choose**   43:20 77:2
**chorus**   72:10
**chose**   43:19
**chrysler**   6:21
**circle**   21:19

**circumstances** 71:8
71:17
**cite** 35:5 49:21
52:13 57:4,9
**cited** 50:18 56:1,2
60:11,15
**civil** 3:20 4:2,8
17:15
**claim** 2:9 15:22,24
16:4,9 17:10,13,13
17:22 18:9,12,12,23
23:9 29:6,13,14
30:17 31:13 32:14
32:23 34:17 36:2,6
36:10 41:10 49:24
50:22 62:25 63:21
66:5 69:14 70:22
81:15
**claimant** 23:17 63:7
**claimants** 18:20
**claims** 2:10,14,19
2:24 3:3,8,13,18,25
4:6 17:15 18:18
22:8,13 25:13 27:22
30:4 34:13,23 38:1
38:10,11 39:6,19
41:7 65:4,8 66:15
67:6 76:12 81:15
**clarification** 17:12
17:21 38:23
**clarified** 29:24
**clause** 13:7
**clawing** 47:14
**clear** 16:19,21
18:16 42:8 43:1,7
43:21 53:17 62:6
69:4 73:18 79:5,10
**clearly** 14:20 50:19
51:17,22,24 59:13
62:1
**clerk** 8:2
**click** 54:16
**client** 47:8 62:7,9
62:13
**clients** 20:11,22
21:3,10,15 26:13
33:7 65:16,20 75:17

**close** 8:25 44:15
**closed** 9:9
**clothe** 36:17
**cnn** 79:14
**cnn's** 77:15
**code** 2:3 12:18 81:8
**coincidentally** 51:2
**collapse** 70:1
**collateral** 13:10
74:7
**colleague** 11:22
52:20
**colleagues** 8:22
9:19
**collected** 54:21
**collection** 42:22
**collective** 39:10
**collectively** 28:1
**color** 29:3
**colorado** 41:14,16
**combine** 30:14
**come** 27:7 29:3,11
64:1 72:9,12 75:1
78:6
**comes** 29:1 36:15
54:25
**coming** 19:15 20:17
36:23 73:1,2
**comment** 44:17
**company** 2:20
57:21 58:4
**compelled** 66:6
**compelling** 70:11
**compels** 76:18
**complaining** 29:4
29:11 59:2
**complaint** 37:14,15
59:11 77:14,15
**complaints** 59:18
**completely** 30:21
40:23 48:12 60:17
73:22
**compromise** 2:1
81:5
**concern** 9:5 19:16

**concerned** 35:12
**concerns** 20:9
**concluded** 72:1
80:5
**concludes** 14:25
19:3
**conclusion** 72:13
**concurrently** 77:24
**condolences** 8:9
**conduct** 61:15
**conducted** 61:16
**confident** 79:15
**confidential** 12:23
**connection** 13:1,20
**connections** 57:2
**consequences** 31:5
**considered** 52:11
**constitute** 32:21
38:7
**construe** 53:13
**construed** 30:8 53:8
53:13
**contained** 33:23
68:14
**contemplated** 32:1
60:19
**contest** 32:9
**continue** 10:8 46:5
46:17
**contract** 32:15 33:4
68:11,14,20
**contracted** 52:9
**contracts** 50:11
**contractual** 33:22
41:10 77:16
**contrary** 50:13
**control** 57:14 76:25
77:1 79:18
**conveyed** 9:6
**convince** 24:24
73:21
**convinced** 78:6
**cope** 12:3
**copy** 12:22 54:8,9
**core** 19:19 20:12
**cornerstone** 25:22
25:23 26:8

**corporation** 2:15
3:19 58:2
**correct** 15:17 16:9
16:12 41:18 45:12
45:16 51:16 54:4
59:12 67:23
**correspondent**
58:19
**corresponding**
55:18
**cost** 37:19 47:15
**costly** 47:6,6
**counsel** 10:14 13:2
17:3,11 42:21 54:2
54:6 62:7 64:17,22
64:23 66:20
**counsel's** 62:22,22
**count** 19:17
**counterparties**
46:24 73:21 74:20
77:2 78:20
**counterparty** 23:17
**country** 44:19
45:10 82:23
**couple** 51:18 53:16
**course** 8:15 14:14
33:13 39:15 56:6
61:17 62:17
**court** 1:1,15 8:3,6
9:22,25 10:16,22,25
11:4,11,17,21 12:7
12:8,10,22 13:3,4
13:14,17 14:1,4,9
14:13,19,24 15:2,6
15:8,11,13,20,23
16:2,5,8,11,13,17
16:24 17:4,23 18:3
18:14,25 19:4,8,10
19:12,15 20:7,15
21:5,14,18 23:7,10
24:4,16,20,22 25:5
25:8,10,15,18 26:15
26:23 27:4,18 28:14
28:16,19,24 30:13
31:11,20,23 32:17
33:9 34:2 35:11,15
36:5,12 37:1,23

38:5,20,22 39:1,4
39:10,13,15 40:5,10
40:12,16,18 41:4,14
41:16,19 42:3,5,7
42:11,19,25 43:3,6
44:11,16,21,25 45:5
45:13,15,17,18 46:3
46:21 48:6 49:9
50:5,9 51:14,21
52:8,11,16,17 53:18
53:23 55:4,6,9,16
55:21,24 56:3,5,8
56:14,16,18,20,23
57:5,19,22 59:5,15
60:1,13 62:4,7,10
62:15,17,25 63:3
64:10,15,22 65:1,11
65:14,18 66:2,13,18
66:23 67:1,15,20,23
67:25 68:3,7,17,21
68:23 69:9,11,21,24
70:7,18,24 71:4,9
71:12,22,24 72:1,4
72:8,22 73:1,5,8,14
73:17 74:1,4,12,14
74:16 75:14,22 76:3
76:6,8,11,16,23
77:4,11,18,21,25
78:12,15,19,25 79:7
79:9,11,17 80:1,4
**court's** 20:9 39:8
**courts** 24:16,17
  44:18,22,23 53:8
  62:1
**covers** 77:9
**create** 12:5
**created** 10:11 28:8
**credit** 2:6 81:10
**creditor** 2:9 81:14
**creditors** 13:24
**crossed** 57:1
**crummy** 47:10
**cry** 10:25
**crystal** 73:18
**current** 20:21
**currently** 48:17

**cut** 32:7
**cutler** 5:18 14:11

### d

**d** 5:23 8:1 81:1 82:8
**damage** 34:12
  66:15
**damages** 22:12
  30:11 33:7 63:18
  66:10,10,11 67:9,10
**date** 17:21 18:6
  59:7 78:22,23 82:12
**dated** 59:6
**dates** 78:13,22
**dawn** 4:25 82:3,7
**day** 8:20 26:6 29:17
  29:19,22 51:2 52:1
  70:24
**days** 21:25
**dealer** 29:11,12
**dealing** 30:16 44:19
**dear** 42:13
**debt** 10:10
**debtor** 1:8
**debtors** 2:14,19,24
  3:3,8,13,18,25 4:6
**decide** 26:10 29:2
  37:18
**decided** 28:9 41:16
  50:23 70:9
**deciding** 77:21
**decision** 21:2 30:25
  30:25 31:1,2 36:22
  37:3 45:19 52:19,21
  74:24 77:7,9 79:12
**decisions** 60:10,11
**declaration** 12:24
  13:1
**declaratory** 77:14
**deeply** 8:24
**defaulted** 65:6
  70:17
**defaults** 2:6 81:10
**defective** 28:8 29:20
**defendant** 75:12
**defense** 23:22 24:1
  24:12 33:11

**defenses** 63:10
**definitive** 72:21
**definitively** 53:3
  72:19
**demand** 22:4,15,17
  24:9
**demands** 28:12
  38:17,18
**demonstrating**
  74:19
**denied** 27:6 72:2
  74:18 75:11,25
  78:17 79:1
**denies** 77:7
**denver** 7:4
**denying** 72:5
**depend** 48:21
**describing** 10:1
**designation** 57:16
**designed** 27:10
  71:16
**designees** 47:24
**detailed** 18:21
**determination**
  16:25
**determine** 79:8
**deutsch** 6:1
**differ** 45:6
**difference** 23:7,8
  25:21 26:10 32:8
  40:8 41:19
**different** 20:18
  22:22 23:21 24:2
  31:7 33:18,22 34:19
  35:19,21 36:8,10
  45:2,7,7 50:25
  61:24 63:4 77:15
**differently** 62:23
**difficult** 11:24
**directing** 72:6
**directly** 17:2
**director's** 59:20
  79:14
**directors** 2:25 6:10
**disagree** 25:23
  35:16 44:23 45:18
  64:6

**disallowance** 18:11
**disallowed** 16:3
  18:18
**discovered** 29:19
**discovery** 26:18
  66:21 67:2
**discussing** 27:20
**discussion** 21:19
**dismiss** 43:4 74:25
  75:7 77:8,20
**dismissed** 66:6
**dismissing** 13:19
**dispute** 2:13,18,23
  3:2,7,12,17,24 4:5
**disputed** 26:20 27:1
**disputes** 13:7
**distinct** 38:12
**distinction** 24:11
  41:5 67:4
**distinguished** 52:20
  65:24
**distinguishes** 32:20
**distribution** 13:9
**district** 1:2 10:6
**divesting** 57:14
**division** 65:23
**doc** 2:1,8,12,17,22
  3:1,6,11,16,23 4:2
  81:5,13
**docket** 79:18
**doctrine** 20:2
**document** 34:15
  50:21 54:10 59:19
  61:1
**documentation**
  16:19,19 18:17
  61:11,13
**documents** 16:25
  22:6,10 49:19 54:6
**doing** 10:9 42:25
  47:15 59:10,14
  76:17
**dollar** 29:23
**dotted** 56:25
**draft** 68:13,15
  73:20 79:20

drafted  68:11,14
dragged  35:17
drive  9:12
due  19:24 20:3
  74:22,23

**e**

e  1:23,23 5:1,1 8:1,1
  81:1 82:1
earlier  9:24 52:7
  59:7 64:17
early  43:22
ecf  14:7 16:8
echo  11:21
edification  39:3,9
efficient  78:1
either  57:6 60:8
  61:14
electronic  82:8
elegant  48:25
elegantly  61:14
elevated  10:4
email  11:1 17:2
encourage  67:12
enforce  56:12 66:5
  66:14
enforceable  25:13
enforced  71:2
enforcing  39:22
engage  37:20 46:18
engaged  13:8 31:24
  36:13
enhanced  2:5 12:20
  81:10
enjoy  9:9
enjoyed  10:9
enjoying  28:19
enter  74:17 75:25
entered  36:24 43:16
entire  17:9 32:1
  70:1
entirety  18:12
entities  58:4 61:3
entitled  24:5 47:1
  48:2,20 49:20 57:18
entity  31:7
entry  14:2

environment  11:14
ephemeral  69:5
escape  71:7,13,16
escaping  70:13
esq  5:7,8,15,16,23
  6:6,7,16,25 7:6
essence  23:9
essentially  58:7
established  18:8
estate  3:14 6:20
  10:20 13:24 14:22
  21:22 58:25 60:15
estoppel  74:7
evaporated  15:9
event  78:17
everybody  21:1
  22:13 23:14 31:25
  40:13 46:12 48:17
  48:20 54:12 58:8,15
  59:17,22 72:14
evidenced  25:25
evident  40:21
exact  51:23 66:7
exactly  19:21 25:15
  29:22,23 32:6 40:22
  40:22 45:14 50:7
  59:8 60:6 64:22
examination  31:7
example  51:3
excellent  10:2
excusable  44:5
executed  65:12
exercise  27:9 46:11
exhibit  55:19,20
  57:25,25 58:11 61:5
  79:23
exist  69:6,7,8
existed  30:18,18
  69:16
exists  32:16
expect  27:11
expense  46:8,18
experience  8:14
explain  11:11 27:4
exploits  10:8
express  8:9 37:2
  53:14

expression  9:5
expunged  16:3
  18:23
expungement  18:12
extensive  61:18
extent  30:1 37:25
  38:15 58:14,16
  60:25 61:6
extraordinary  24:5
  43:25 44:11 46:25
  71:8 76:1
extremely  8:16
  11:14,15,15 74:2

**f**

f  1:23 3:4 82:1
face  47:9 55:16
fact  9:13 18:18
  19:21 24:23 25:3,9
  25:12 28:8 29:9
  32:5 33:5 35:6 36:1
  36:9,20 38:14 41:2
  43:12 50:17 52:24
  57:7 61:22 62:24
  64:16,18 66:4 69:6
  70:7 74:10 75:6
facts  22:6 26:25
  36:10 37:22,22
  70:14 77:11
factual  24:15 37:18
factually  61:10
fail  5:7 8:4,5 9:16
  9:16 10:1,17 11:2,6
  11:22
failed  37:16
fails  29:4,17
failure  18:20,21
  24:13 38:6 49:9,11
fair  37:8 72:16
fallacies  33:10
familiar  50:9
fannie  22:11 35:3,9
  38:1,16 39:19,23
  40:3 41:7,8,9 70:16
fantastic  28:6 29:1
far  20:15 21:23
  35:11 64:9 71:7
  76:9 78:14

fashion  50:18
fault  68:15
february  60:9
federal  2:2 3:20 4:1
  4:7 17:14 81:6
feel  11:13 62:23
femoral  30:18
fifth  5:4 6:3
figure  78:1
file  17:1,1 75:19
  77:2
filed  12:9,16,23
  13:1 14:7 16:4,9
  47:4 54:3,7
filing  35:22
final  71:6
find  57:2 76:17
finding  18:15 35:6
  74:10
fine  28:18
firm  8:9,25
first  2:14 6:11 8:6
  17:12 20:19 21:12
  39:11 42:14 58:2
  60:3 61:9 66:23
fit  44:1,10
five  20:1 21:25
  35:20 45:25 55:2
  61:24,25
flip  13:7
focusing  24:8
folks  8:10 10:25
  15:2 25:19 32:4
  35:11 45:23 46:4,14
  73:9 78:9
follow  32:10
followed  32:17
  33:21 34:19,23
footnote  49:22 57:9
  57:9
foreclosure  56:12
foregoing  82:3
forgive  27:24
form  22:22
formal  74:5
forth  18:10 78:3

**forward** 12:15 45:13 73:3
**found** 12:3
**four** 20:1 21:25 53:20 55:2,2 61:12
**frankly** 24:7 27:6 43:6
**fraud** 17:8,10,13,16 31:24
**frauds** 18:16
**fraudulent** 17:20
**frcp** 17:14
**freddie** 22:12 35:3 38:1,16 39:19,23 40:3 41:8,8,9 70:16
**free** 27:16 50:25
**freely** 50:11
**friend** 10:24
**friends** 9:18
**front** 23:5 26:2 71:9
**fsb** 4:1
**ftb** 13:7
**full** 12:2 26:19 29:5
**fully** 13:14
**funding** 3:19 59:21
**funeral** 12:6
**further** 18:20

**g**

**g** 8:1 16:7
**gain** 74:21
**garrett** 5:7 9:16 10:19 11:22
**gateway** 3:25 58:2
**gee** 23:16
**general** 2:9 10:14 40:2 44:17 60:4 81:14
**getting** 8:12 24:7 29:16
**giddens** 5:11
**gift** 8:11
**give** 28:14,21,24 33:6 37:1,3 45:3 46:23 49:9,11,12,14 49:17,18,21 54:17 56:4 65:13

**given** 18:16 25:20 30:23 54:9
**gives** 22:12 49:23
**giving** 28:16 34:15 50:6
**go** 9:1 18:15 22:12 22:14 23:3 24:15,19 25:19 26:2,6 27:17 28:4 29:11 32:12,17 34:11 37:7,21 41:2 42:16,18 45:13,23 46:9,11 53:22 54:1 54:4,16,21,23 55:12 59:9 66:23 70:18 71:9 72:8 74:25 78:9
**goal** 20:18
**goes** 20:15 21:24 23:8
**going** 10:20,21 20:2 20:10,11,23 22:8,9 22:9 26:2,3,5,6,7,10 27:5 28:20,21 29:8 30:24 32:11,12 35:4 35:18,24,25 36:1,21 37:2,6 48:18,18 50:24 53:1 57:24 64:6 66:23 72:20,24 73:3,3,6,11,17 74:9 74:21,25 75:1,4,15 76:6,8,25,25 77:7 78:2,3,8,9,9,21,21 79:1
**gon** 16:4
**good** 8:6,18 9:16 10:23,24 11:16,17 14:8,9,19 15:6,7 19:12 20:15 47:11 56:11 62:1 69:21 70:5
**gotshal** 5:2 9:17 11:19
**governs** 17:15
**gratitude** 10:10
**great** 29:7
**green** 1:16

**grounds** 43:14,15
**group** 3:14 6:9,19 20:17 21:9,22 22:2 22:20 26:3 41:25 58:25 62:8
**group's** 42:1
**guaranteed** 16:22
**guess** 25:21 35:24 36:7 40:4 57:2 62:20 67:12,15,16
**guide** 31:25 48:25 50:15 52:15,23,25 61:14,15
**guns** 8:4 46:5
**guy** 71:17,18,20
**guys** 23:3

**h**

**ha** 48:6
**hall** 34:13,15 64:20
**hallway** 64:18
**hand** 42:14 45:17 45:18
**handed** 8:17
**hands** 65:9,13 67:9
**hang** 15:3
**happen** 33:6 45:22 73:6 75:15 76:20,25 78:2,9
**happened** 21:11 42:18,21 61:10 66:21 70:15,15 78:11
**happening** 61:19
**happens** 21:3 22:15 33:8 37:3
**happy** 51:2 53:22 54:21,23 55:12
**hard** 11:11 24:6 28:16,21
**harm** 49:25
**harvey** 8:8,12,12,13 8:24 9:20,21,23 10:10,19,23 11:23 11:25
**harvey's** 9:18
**hatch** 71:7,13,16

**he'll** 10:12
**head** 39:25
**headline** 63:20,20
**hear** 44:11 59:18 64:17
**heard** 14:5 18:6 33:20 76:21
**hearing** 2:1,8,12,17 2:22 3:1,6,11,16,23 4:4 8:7 9:8 15:3,22 18:5 43:10,12 72:20 78:23 79:23
**hearsay** 35:25
**held** 8:7 13:11 53:18 55:17 62:1
**help** 37:4 40:18 42:10,11
**helped** 12:4
**helpful** 16:6 42:17 43:6 74:2
**henderson** 6:16 20:6,6,8,25 38:23 39:2,8,14 62:5,11 72:24 75:5,16,23 77:13,23 79:10 80:3
**hey** 34:10,11 35:24 37:15 64:20
**higher** 17:17 37:1 45:18
**hired** 21:12
**hit** 12:2
**ho** 16:4
**hold** 48:7 57:6 74:12,12,14
**holder** 14:17 22:16 22:23,24,25 32:10 33:13,15 47:24,25 48:4,9,15,16 65:22 67:6 68:4,6,7,8 71:1 71:2
**holders** 13:13 34:24 34:25 53:12 68:1,3
**holding** 66:12 68:9 70:16
**holdings** 1:6 5:3 6:2 10:14 12:12 15:1 26:20 27:1 31:9

| i | indicate 18:5 | 30:5,6 36:1 37:3 |
|---|---|---|

32:18 34:14 35:8
40:20 50:23 51:10
65:13 66:11 67:8,10
67:14 69:19
**holds** 13:16 48:16
51:22,24 66:4,5
**home** 3:9 77:14
79:14
**hon** 1:24
**honest** 63:15
**honor** 9:16,22
10:13,18 11:16 12:6
12:14 13:5 14:8,23
15:7,10,14,17 18:24
19:6,14 20:6,12,25
21:23 38:23 40:9,11
40:15,17,20 42:6
43:5,9,16 44:4
46:20 47:6,20 49:12
49:22 50:1,19 51:4
51:19,24 52:11 53:6
53:20 54:2,7,12,22
55:13 56:2,4,7 57:4
57:16,23 58:12,20
59:3,11 60:6,10,16
60:22 61:8,23 62:5
62:24 66:9 72:16,18
72:24 73:13,17 75:5
75:20 76:22 77:13
77:14,17,20 78:10
78:17 79:14,16,25
80:3
**honor's** 21:2 39:3
**hook** 28:10 65:20
**hope** 10:8 12:5 43:8
**hopefully** 28:19
**hours** 10:24
**hubbard** 5:10 15:15
**hughes** 5:10 15:15
**hundred** 2:8 15:18
81:13
**hundreds** 8:10
76:23
**hypothetical** 28:14
28:24

## i

**identical** 45:2
**identifiable** 57:12
**identification** 54:14
**identified** 60:21
**identify** 59:24 60:2
61:6
**il** 5:21
**illogical** 69:20
**illusory** 30:21,21
47:20 48:12 51:1
68:12,14
**illustrate** 38:13
**imagine** 49:5
**important** 9:9 11:9
26:10
**impose** 72:17
**improper** 63:14
**inadequately** 10:1
**inadvertent** 44:5
**inadvertently** 42:21
**include** 31:18 58:17
**included** 31:12
53:17 59:12,12
**includes** 29:15 40:4
**including** 47:24
53:2 58:10 61:4
**incorrect** 46:6
**incredible** 11:8
**indemnification**
2:13,18,23 3:2,7,12
3:17,24 4:5 22:4,8
22:13,19 23:4 26:8
30:6,7,7,21 31:13
31:18 32:10,20,24
33:21,23 37:14 38:2
38:3,11 39:21 41:10
48:11 49:4,6 51:4
52:22,24 53:7,9,10
62:25 66:15 67:6
77:16
**indemnifications**
48:22
**indemnified** 47:23
53:12
**indemnify** 30:8
63:22

**indicate** 18:5
**indicated** 62:6
**indicating** 17:16
75:7
**indiscernible** 12:14
16:23 26:5 28:10
30:19 39:21 62:16
74:5,6
**individual** 30:9
**indulge** 46:13
**industry** 32:2
**inform** 27:10
**information** 17:17
**initial** 21:25
**initially** 15:21 21:23
54:7
**initio** 50:6
**injustice** 45:11
**insert** 31:12
**inserting** 38:9
**insist** 46:5
**insisting** 46:17
**instance** 20:19 60:3
**insurance** 57:17,21
**intended** 39:9 50:19
50:21 53:14 75:19
**intending** 79:4
**intensive** 37:19
**intent** 57:13
**intention** 19:23
20:1 21:13 28:13
**interest** 13:24 14:21
14:21
**interesting** 22:17
27:21
**interests** 14:16
**interim** 49:25
**internally** 31:3
50:23
**invalid** 50:10 64:12
**involving** 52:14
**irony** 56:5 57:1
**irrelevant** 50:4
**irreplaceable** 8:22
**issuance** 18:17
**issue** 16:15 24:14
25:3,8,10,25 27:11

**indicate** 18:5
30:5,6 36:1 37:3
40:23 41:1,2 47:9
47:18 52:10 54:15
54:23 58:17 62:23
66:21 72:19 76:5
77:5,22
**issued** 16:15,18,21
29:15
**issuer** 13:19
**issues** 19:19 20:3,12
35:25 37:10 42:9
47:2 49:8 61:22
63:12 73:19 74:6,7
74:8,9,11 79:2
**it'd** 46:11

## j

**january** 52:5
**jeffrey** 5:16
**joined** 21:4
**joining** 21:4
**jones** 7:1 26:6
**judge** 1:25 8:21
11:10 26:13 28:23
37:6,17 41:17 46:2
51:17,25 52:19
60:14 73:24 79:11
80:2
**judgment** 43:3
**judicata** 74:7 75:9
**judicial** 10:2
**jurisdiction** 63:9
**jury** 8:19
**justice** 18:15
**justifies** 43:23

## k

**k** 3:4 16:7
**keep** 59:3
**keller** 7:1
**kept** 31:3
**key** 49:8
**kicking** 47:14
**kind** 11:14 44:17
63:19 69:22
**knew** 31:6 43:18
48:17

know  8:12,21,25
  10:9,23 11:7,13
  13:25 20:16,20 22:3
  23:18 24:7 26:3,7,8
  29:22 37:1,6,15,19
  44:9 45:9 54:1
  56:24 60:13 61:23
  62:21 65:4 66:19
  68:11,23 71:8 72:9
  72:15 73:11,16,23
  75:3,12,15 76:20,21
  76:24 77:1 78:23
  79:3,3
knowledge  37:11
known  9:3,4 11:8
  16:16 17:23,25
kwang  16:4 17:1,11
  17:21,23,25 18:8
kwang's  18:20

**l**

label  19:22
labor  37:19
lack  43:14
language  49:4,5
  50:5,13 51:25 53:17
  55:14 59:10
larger  11:23
largest  8:15
late  29:23
laugh  9:10,13 11:9
laurence  12:24
law  2:15,20,25 3:20
  4:2,8 6:9 20:2 25:6
  26:14,25 28:12
  31:21,21 34:5,16
  41:25 42:1 43:8
  44:6 50:8,9,12,16
  50:20 53:6 56:1,1
  58:19 60:18 62:2
  75:9
laws  37:16
lawsuit  25:15,18
lawyers  46:16
lbb  21:6 27:11,12
  28:1,2,4,9 31:1,17
  33:11 41:22 52:4,5
  52:6 63:18,20,25

64:2 65:19 70:19
lbb's  51:14
lbhi  15:2 24:23,24
  27:13,13,22 28:3,4
  28:10 29:19 31:1,11
  31:17 34:4 48:19
  51:19 52:2,5,7,9,17
  60:11 61:16,17
  65:15 69:14 70:8,21
  78:5
lbhi's  51:16
lbi  15:15 16:22 19:7
lbsf  13:24
led  31:25
left  10:11 11:1 67:8
legacy  10:11 12:7
legal  10:2 77:22
  82:22
legs  23:13
lehman  1:6,12 5:3
  6:2 8:7 9:22 10:14
  12:12 14:25 22:16
  23:3,15 26:12,20,21
  26:22 27:1,2 28:13
  28:15 30:9,9,12
  31:8,8,9 32:18 33:2
  33:2 34:1,9,13 35:7
  36:15 39:24 40:20
  44:19 46:14,16,16
  46:23 48:19 50:22
  50:23 51:7,9,11,11
  54:8 59:16 61:16
  65:7,9,13,14 66:11
  66:16,17,17 67:8,9
  67:13,22 68:12,13
  69:2,5,10,18 70:7
  74:3
lehman's  69:8
lenders  23:5 38:6
  58:19
lending  3:4,4 6:19
  21:9,22,24 22:2,19
  22:21 26:6 33:19
  43:12 59:21 62:8
length  9:2
letter  12:9 22:4,16
  22:17

letters  24:10
levels  8:24 20:5
lexington  6:22
liability  2:10 23:13
  23:19 38:15 68:19
  70:13 81:15
liable  24:6 36:14
lien  22:23
life  11:23 12:1
lifland  8:21
light  18:20 29:8
limitation  37:10
limitations  23:22
  24:12 27:20 30:5,15
  30:16,17 31:16
  33:11 36:21 37:23
  38:25 39:7,17,20
  41:1,2,3 43:14
  45:19 47:21 63:13
  66:3,9 68:25 69:4
  69:13 72:19 77:6,22
  79:4
limited  16:19 58:10
  61:4
line  32:12 33:22
  34:24 35:11,15 67:7
lines  79:21
link  27:16
list  58:12,22 59:17
listed  58:10,18
  59:19 61:5
listen  73:22
listening  9:15 73:24
lists  58:1,2
literally  58:13
litigate  45:1 46:6
litigated  37:11
litigation  37:8
  45:23
little  8:16 29:7
  46:12 56:5 57:1
  77:15
live  10:11 11:12
  70:21
living  11:24 72:13
llc  3:4

llp  5:2,10,18 6:1,18
loan  2:14,19,24 3:3
  3:8,13,18,25 4:6
  22:22,25,25 31:13
  31:17 32:11,12,13
  32:15,17,21 33:16
  33:17,17,18,22,23
  33:25 34:3,4,5,8
  36:1,1,2,3 37:21,22
  38:6,7 40:2 48:23
  52:14,15,22,25
  61:19 65:3,4,5,6,8
loans  3:9 26:20
  27:13 33:5,7,12,16
  34:10 35:3,7,8,9,13
  47:10,11,12 48:18
  52:6,10 60:24 61:18
  63:19 67:18,20 70:9
  70:9,16
loathe  72:17 73:15
longer  68:5
look  28:4 44:7
  49:12,13 57:8 58:12
  61:25 63:3,4,18
  72:8 76:4
looked  55:16
looking  35:9 39:5
lose  19:17 68:9
losing  72:10
losses  51:12,15,16
lost  8:7
lot  10:24 25:23
  36:23 45:23 62:22
lpa  47:18,19 48:4
  49:3 50:15
luck  27:14
lucky  11:14

**m**

m  5:8
mac  22:12 35:3 38:1
  38:16 39:19,23 40:3
  70:16
mae  22:11 35:3,9
  38:1,16 39:19,23
  40:3 70:16
magic  36:18

**maher** 6:1,6 40:9,11
40:15,17,19,19
41:13,15,18,25 42:4
42:6,8,17,20 43:2,5
44:20,24 45:4,12,14
45:16 46:1,19,22
48:8 49:11 50:7,10
51:16,22 53:25 55:5
55:8,11,23,25 56:7
56:13,15,17,19,22
57:4,7,20 59:8 60:6
62:6,13 72:3,5,16
72:23 73:4,7,12,15
74:2,15 75:13,20,24
76:4,7,10,15,22
77:1,10,19 78:10,13
78:16,20 79:1,8,15
79:25
**main** 39:21
**maintaining** 31:16
**making** 20:17,23
41:5 51:23 67:11
**man** 9:11
**manges** 5:2 9:17
11:19
**manifest** 45:11
**manufacturer**
29:16
**manufacturer's**
29:5
**margolin** 5:16
**mark** 5:23 14:10
**market** 70:1
**massive** 31:24
**math** 22:9
**matt** 10:13
**matter** 12:8,15
13:13,15 15:11,12
15:21 21:25 24:8
25:6,9,12 33:5
50:16 51:25 57:13
57:22 59:13 61:15
77:19
**matters** 14:25 79:11
**matthew** 7:9
**mean** 23:10 28:13
29:12 31:5 44:21

51:12 56:5 58:13
66:20 67:18 72:12
74:7 76:8,20
**meandering** 46:12
**meaningfully** 23:14
**meaningless** 70:4
**means** 26:12 27:1
29:13 50:24 51:4
63:24
**meant** 63:25
**measure** 30:11
**mediation** 24:15
26:1 36:8 47:3,7
74:9,9,11 78:21
**mediator** 35:24
36:2 47:3
**meet** 44:5
**member** 11:9 16:23
**memorable** 8:14
**memorandum** 2:15
2:20,25 3:20 4:2,8
**memorial** 9:1
**memories** 12:3
**mentions** 58:3
**mentor** 10:24
**merits** 20:20 62:24
74:24 76:5,11
**mess** 8:18
**michael** 7:6
**mile** 45:10
**mill** 44:12
**miller** 8:8 11:25
**million** 13:10,16
34:14
**minds** 45:6
**mineola** 82:25
**mini** 16:16,18 18:17
**minute** 47:17
**minutes** 15:4
**mischaracterization**
65:21
**missed** 8:24 10:12
45:9
**missing** 62:20
**misstated** 42:20,21
**mistake** 44:4

**misunderstanding**
62:15
**mitchell** 5:15 15:7
15:10,12,14,15,21
15:24 16:3,6,10,12
16:14,18 17:5,25
18:4,24 19:1,6,9
**moment** 8:8 27:21
28:7 29:6 33:11
56:4 65:18 70:18,20
79:11
**moments** 30:19
**money** 32:4
**monroe** 5:20
**month** 10:21 12:1
78:17,21
**months** 9:3 43:15
43:20 61:19
**morning** 8:6 9:16
9:20 11:16,17 14:8
14:9 15:6,7
**mortgage** 2:14,15
2:19,20,24,25 3:3,8
3:13,18,25 4:6 6:9
6:11 42:1 58:2,3
59:20 60:24
**mortgages** 32:3
69:25
**moskowitz** 56:2,3
57:8
**motion** 2:1,1,12,17
2:22 3:1,6,11,16,23
4:4 12:16 13:22
14:5,14,18 20:11
21:12,13,24,25 22:1
22:21 23:12 27:5,6
35:23 37:17 43:1,4
43:4,8 59:13,14
71:14 72:2,5 74:6
74:14,18,25 75:7,10
75:18,25 76:9 77:8
77:20 78:18 81:5,5
81:17
**motions** 19:18
20:24 37:10 38:3
44:8 77:2

**move** 12:15 58:6
64:6
**moving** 11:21 44:7
44:8
**multiple** 79:19
**mutual** 9:23

**n**

**n** 5:1,15 8:1 16:7
81:1 82:1
**name** 14:10 16:7
**national** 5:19 14:11
25:22 26:16,17,19
26:24 29:25 51:19
52:3 64:20,20
**nature** 18:16,21
63:11
**nba** 52:4
**necessarily** 46:7
63:24
**necessary** 53:24
**need** 20:4 48:10
73:8,9,9,10
**needs** 17:16
**neglect** 44:5
**neighborhood**
56:14,20
**nervous** 8:16
**never** 23:13,25
27:21 48:12 54:8,9
54:19 62:13 63:21
69:15,16 70:13
**new** 1:2,17,17 5:5
5:13 6:4,23 8:11
10:6 21:6 26:25
29:1 47:2,7,8 50:8
50:11,20 62:1 63:14
**nine** 43:15,20
**non** 28:3,9 39:12,15
63:16,19,23 64:15
65:19 70:10,19,20
77:5
**note** 9:6 13:17 18:1
34:20,22,24,25
47:19,20,22,25 48:1
48:4,7,9,15,16,17
48:23 53:12 65:22
66:5,13 67:6,7,8

[note - piecemeal]                                                      Page 11

68:2,3,5,6,8 71:1,2
**noted**   9:24 12:14
  13:5 16:14 18:7
**noteholder**   65:24
  65:25 66:1
**notes**   32:11 65:23
  66:17
**notice**   22:5,20
  37:15 43:11,11
  49:10,11,13,14,17
  49:18,21 50:3,6
  54:4 61:10
**noticed**   29:7
**notion**   31:23
**novato**   6:14
**nuffer**   52:19
**nullity**   43:18
**number**   14:7 16:8
  17:12 35:3 43:22
  52:2 53:17 59:1
  63:10
**numbers**   43:21
**ny**   5:5,13 6:4,23
  82:25

**o**

**o**   1:23 8:1 82:1
**oaktree**   3:18 6:11
  59:21
**object**   43:13,14
  72:24 77:24
**objected**   43:13
**objecting**   75:3
**objection**   2:9 15:19
  15:25 17:8 18:22
  22:2 75:6 81:14
**objections**   13:22
  74:6
**obligation**   49:12,13
**obligations**   51:4
**obviously**   26:18
  45:20 59:22 77:1
**occasions**   17:12
  18:2,7
**occurred**   65:5
  69:15
**offered**   17:21

**office**   26:14
**ogden**   6:7
**oh**   26:14 36:7 40:4
  42:13 64:20 76:6
**okay**   10:22 13:4
  15:2,13 19:15 21:5
  21:14,18,21 22:17
  25:5 27:4,18,23
  28:5,16,20,24,25
  29:2 34:13 37:21
  38:20 39:14 40:1,5
  40:16 42:7 62:4,10
  62:19 63:12 64:5
  69:3 71:4,23,25
  72:2 76:7 77:5
  78:15,19,25 79:9,17
  79:17
**old**   82:23
**omitted**   58:16
**omnibus**   2:9 15:19
  15:25 81:14
**once**   27:15 33:5
  45:24
**ones**   55:22
**opinions**   25:21
**opportunity**   10:7
**opposite**   8:13 56:23
**opposition**   35:20
**oral**   72:25
**order**   2:13,18,23
  3:2,7,12,17,24 4:5
  14:2,20 22:2,14
  33:20 36:24 43:16
  43:17 50:10 60:14
  71:6,9,15,15 73:10
  73:20 74:17 75:7,25
  76:19 79:20
**ordered**   63:5,5
**orders**   19:1
**ordinary**   43:25
**original**   51:6
**originally**   15:25
  48:22
**originated**   34:21
  35:13 47:10 67:20
**originating**   38:5

**origination**   31:15
  69:15 70:9
**originator**   48:19
  51:6,7,9 67:12
  68:13
**originators**   28:7
  30:23 31:5,13,24
  34:11 35:7 69:24
  70:10
**ought**   72:11
**outcomes**   45:7
**outrageous**   44:11
**outset**   13:9
**outside**   41:9
**overruling**   18:13
**overseeing**   73:24
**owe**   10:10 23:15
  26:9 51:7
**owes**   64:19

**p**

**p**   5:1,1 6:7 8:1
**p.c.**   6:9
**p.m.**   19:11
**page**   56:3 57:9,9
  58:1,2,3 81:4
**pages**   41:3
**paid**   23:24 41:7,8
  65:23
**paper**   28:3,8,9
  29:10,15,20 32:6,21
  35:23 42:14 44:19
  45:1,7 65:14,19
**papers**   14:20 16:14
  17:9 18:11 41:1
  42:1,2,3 44:18 47:4
  54:7
**parcel**   69:25
**park**   5:12
**part**   11:1 27:9
  29:21 69:25
**participate**   63:12
**participated**   70:2
**participates**   23:14
**participating**   47:7
**participation**   20:19
**particular**   9:23
  34:1 36:17 39:11

**55:22 56:24 57:10
  60:4
**particularly**   24:9
  30:8 63:2
**parties**   13:8 27:10
  28:13 32:16 33:25
  36:13 37:11 43:12
  46:5,17,22 50:19,21
  53:14 54:13 70:14
  74:23 76:24 77:9
  78:14 79:22
**partner**   26:2,6,14
**party**   24:15 30:3
  32:1 34:5 37:9 48:1
  48:3 54:15 66:4
  68:15
**passes**   14:21 67:7
**paths**   33:18
**pause**   15:5
**pay**   29:18
**peck**   60:14
**people**   26:4 44:18
  44:25 45:1 47:10
  58:10 59:2,3,18
  60:21 61:5,6,8 63:9
  63:10 72:10 73:23
  73:23 75:1
**peppered**   10:3
**percent**   45:10
**perfectly**   63:15
  73:19 79:10
**performing**   74:23
**period**   36:25
**permission**   11:4
**permits**   50:20
**perpetuated**   18:16
**perpetuity**   68:19
**person**   11:8 34:17
  34:18 57:20 75:2
**personal**   54:14 63:9
**ph**   12:24 16:4 56:2
**phraseology**   57:10
**pick**   29:11
**piece**   42:14
**piecemeal**   19:18
  21:15

pieces 32:21
pipeline 21:10
place 12:6 49:2 65:7
places 53:17
plan 12:12,16 13:12
  13:18,23 14:1 41:9
planning 9:1
plaza 5:12
pleading 17:17 39:5
pleadings 38:24
  39:11
please 8:3
pm 80:5
point 28:25 30:15
  40:18 44:18 46:3,23
  48:17 65:25 69:21
  72:3 77:16 79:6
pointed 54:10 66:4
pooling 32:3
portion 19:9
portions 68:25
position 14:16
  49:17 65:18,22
  69:12,12 70:1,5
possess 33:4
possessed 33:3
possibility 39:25
possible 70:14
  79:18
possibly 44:3
potential 49:23
practice 8:11
pragmatism 10:3
preclude 20:16
predecessors 10:4
preliminary 76:21
premise 35:16
  37:13
premised 32:2
presence 8:14
present 7:8 13:3
  55:14 57:13
presented 19:19
  20:11
preserved 78:4
presided 43:9 56:10

prestige 10:5
presupposing 66:11
pretext 19:23 23:11
  24:4
pretty 32:7
previously 58:8
  61:3
prior 13:17 21:25
  37:9,10
privilege 9:8
problem 69:18
  74:22 77:12
procedure 2:3 3:20
  4:2,8 17:15 63:5
  81:7
procedures 2:13,18
  2:23 3:2,7,12,17,24
  4:5
proceeding 13:21
  25:1 75:8
proceedings 80:5
  82:4
proceeds 13:10
  57:17
process 13:8 19:24
  20:3 43:10,11 46:18
  47:7 72:14 73:21,25
  74:23,23
production 54:10
program 70:2
promise 31:5
promised 35:8
promises 35:2,2
  67:11
proof 76:13
proper 24:1 26:1
  30:3
properly 53:4,19
  61:13
property 57:11
proud 8:16
provided 12:22
provision 30:7
  53:11
provisions 30:7
publicly 16:15

publish 36:22 77:7
purchase 22:23,23
  22:25 23:23 32:13
  32:15,21 33:16,17
  33:18,23,25 34:3,4
  34:5,8 36:3,3 38:7
  40:2 52:14,15,23,25
  65:5,8
purchased 38:18,18
purchaser 47:23
  51:13
purchaser's 47:24
purchasers 53:11
purported 59:17
purpose 9:12
purposefully 11:1
purposes 25:4 43:6
  59:13 76:16 77:19
  77:21
pursuant 2:2 3:19
  4:1,7 12:17 29:14
  81:6
pushing 63:25
put 10:21 19:16
  22:2 27:5 37:17
  48:10 54:12,14,15
  62:12 63:14 69:11
  73:15 76:13 77:4
putting 46:20

q

qualify 44:3 76:1
quality 10:2
question 26:9
questions 13:25
  16:24
quick 8:8

r

r 1:23 5:1 8:1 82:1
racers 12:20 14:6
radar 19:16
raise 43:19,20
  44:12,13
raised 43:19,22
raising 40:25 41:2
ran 28:2

rare 11:15
rasmussen 5:23
  14:8,10,10,14
reached 9:4 17:11
  18:1,7
read 10:8 11:1,5
  21:11 41:1,14 47:5
  47:5 48:25 49:4
  55:12
reads 48:24
real 3:14 6:19 21:22
  58:25 70:4
reality 40:13 56:7
really 24:7 37:1,5
  38:3 63:6,6 70:4,11
  72:10 75:1
reason 39:21 43:23
  66:7 71:10
reasonable 45:6
reasons 9:4 18:10
  25:23 28:1 31:2
  36:14,15 70:8 74:17
  76:14
recall 27:23
receive 25:3
received 25:6
recessed 19:11
recognition 9:20
recognize 62:23
reconsider 71:14
  72:11
reconsidering
  71:15
reconvened 19:11
record 11:6,18
  14:15 15:14 16:6
  20:13 38:24 62:5,12
  74:18 82:4
recourse 21:7 26:21
  26:21,22 27:13 28:3
  28:9 29:3,10,18,20
  31:9,17 33:5 39:12
  50:24 51:3,25 52:7
  53:3 63:16,19,20,24
  64:15 65:19 70:10
  70:19,20 77:5

**recovery** 18:9
**reed** 5:10 15:15
**refer** 12:20
**reference** 17:8 49:3
  60:12
**referenced** 52:2
**referred** 21:24
  55:19 62:14
**rejected** 52:12 53:3
**rejects** 52:8
**relate** 49:8
**related** 31:7
**relating** 2:4 12:19
  14:6 39:12 69:14
  81:9
**release** 51:6
**released** 51:8
**relied** 51:19 67:19
**relief** 24:5 43:24
  47:1 76:1 77:15
**relieved** 70:10
**rely** 32:22 36:1
  48:20
**relying** 32:19
**remain** 48:22
**remaining** 13:15
  14:17 15:24
**remarks** 9:22
**remedial** 41:23
**remedies** 60:23,25
  65:9
**remedy** 38:4 41:11
  41:11
**remember** 9:10,13
  9:21 47:22
**repeated** 19:21
**replies** 54:18
**reply** 17:6
**represent** 20:21
  21:1
**representation** 38:4
**representations**
  47:11,16 48:21 49:7
  61:18,20 67:21
**represented** 75:16
**reps** 30:22 69:15
  70:3,21

**republic** 2:19 6:10
  58:3
**repurchase** 38:6
**request** 14:18 18:11
**requests** 14:2
**required** 49:18,21
  55:15 57:10,11
  59:25 60:18
**requires** 76:2
**res** 74:7 75:9
**resolution** 2:13,18
  2:23 3:2,7,12,17,24
  4:5 13:6,18
**resolve** 13:13 47:2,9
**resolves** 13:15
**resources** 20:5
**respect** 9:23 14:5
  15:22 16:24 17:13
  18:19 19:18 21:6
  30:17 47:17 54:13
  56:21 60:24 61:3
  72:21
**respectfully** 14:1,18
  18:11
**respond** 22:3 47:5
**response** 9:5 16:11
  16:12 17:1 18:9,13
**responsibilities**
  70:11
**restate** 58:17 61:7
**restated** 58:21
  59:24
**restatement** 58:25
**restructured** 2:4
  12:19 81:9
**result** 41:7 50:19
  66:12 67:10 69:20
  69:20 72:15
**retain** 65:25 66:14
**retained** 65:24
**returns** 2:5 12:20
  81:10
**reunderwriting**
  35:6,10
**reunderwritten**
  35:4

**reversal** 45:24
**reversed** 45:24 46:6
**reviewed** 16:20,20
**revisit** 76:18
**right** 11:3 14:4,19
  15:9,20,23 16:2,5,8
  16:17 17:4 18:3,25
  19:4,8,13 21:18
  23:10,16 24:25 25:8
  26:4,23 27:11,13,14
  28:3,11,20 30:9,21
  31:12 32:6 33:4,4,6
  33:13,22 34:6,6,19
  36:5 37:21 39:8
  40:10,14,22,22 41:6
  41:8,13,15,23 42:5
  42:13 43:2,3,5
  44:24 45:3,20,21
  46:21 51:5,21,23
  54:4,25 55:4,8,11
  55:19,21,23 56:13
  56:15,17,22 57:13
  57:19 58:5,11 59:19
  62:4 64:7 66:5,23
  66:25 72:13,15,22
  73:4,7,14 74:15
  76:3,7,12,15,16
  77:18,21,25 79:9
  80:1,1
**rights** 19:24 22:16
  22:20,24 23:2 26:11
  27:2 29:13,21 30:17
  31:12,12,18 32:7,9
  32:10,14,16,24 33:1
  33:2,2,12,21 36:4
  39:22,24 40:2,4
  47:18 48:2,4,5,11
  49:1,14,15,16 50:14
  50:18,25 51:3 52:6
  52:9,17,25 53:1,2,4
  53:21 54:3 56:12
  58:9 60:23,25 61:13
  64:2 65:4,9 66:14
  66:15 68:13,14 69:3
  69:6,8,13 70:3 78:4
  79:5

**rise** 8:2 22:12
**road** 82:23
**robot** 45:3
**rollins** 7:6
**rome** 6:18 21:8,21
  39:5 62:8
**rome's** 42:2,3
**room** 46:15 47:3
**round** 41:6 63:13
**rounds** 79:19
**rowland** 6:12
**rule** 2:2 3:19 4:1,7
  12:17 19:22 21:23
  35:22 56:14,21
  59:14 62:20 81:6,17
**ruled** 36:21 45:21
  72:19
**rules** 2:2 3:20 4:1,7
  17:15 81:6
**ruling** 72:21 79:5
  79:13,15
**rulings** 81:3
**run** 44:12 52:10
**running** 29:7
**ruth** 9:18

**s**

**s** 5:1,16 8:1
**sale** 23:23 31:18
  70:20
**salter** 6:25 19:14
  20:10 21:8,8,15,21
  21:21 23:8 24:3,11
  24:21 25:2,6,9,12
  25:17,20 26:17,24
  27:15 28:12,15,18
  28:22 30:1 31:4,19
  31:21 32:8 33:1,15
  34:3 35:14,16 36:6
  37:9,25 38:9,21
  39:18 59:1 62:16,19
  64:8,11,16,24 65:2
  65:12,16,21 66:8,16
  66:19,25 67:4,17,22
  67:24 68:1,4,10,18
  68:22 69:8,10,17,23
  70:6,12,23,25 71:5
  71:20,23,25 74:5,13

80:2
**satisfy** 59:14
**sauce** 36:18
**saw** 55:2
**saying** 10:19 22:16
22:18,22 23:21,24
24:4,17,18,21 26:13
28:6,11 34:2,21
37:21 40:1 43:17
46:4 48:5,6,8 50:25
51:6 52:1,21 53:7
54:19 57:5 59:5,18
60:1 62:21 63:1,25
64:5,7 66:20 68:12
68:18,20 70:13
71:20 72:10 74:8,10
75:25
**says** 26:24 28:4
34:4,6 39:6 42:1
43:23,24 44:21
47:23,25 48:14 50:5
50:13,19,21 52:3,8
53:11 55:13,18 57:9
58:7,7,14,15 59:9
62:2 63:7 71:9
74:17 79:13
**scc** 1:7,12
**scheduled** 78:13,22
**scholarship** 10:2
**scratching** 47:14
**screen** 19:16
**se** 17:8
**seat** 8:3
**second** 17:14 19:17
21:17 44:17 56:19
**secret** 36:18
**section** 2:3 12:17
39:6 40:7 47:23
81:7
**sections** 77:11
**securities** 16:21
**security** 16:15,15
25:22 26:16,17,18
26:24 29:24 51:19
64:19,20
**see** 8:4 21:2,5 42:23
66:2 67:18 79:12

**seeds** 10:3
**seek** 26:8 46:25
**seeking** 12:18 17:12
24:22,23 36:17
**seen** 72:18
**sell** 28:9 29:3,4,6
48:9 65:14 66:13
67:18 70:9
**seller** 2:14,19,24 3:3
3:8,13,18,25 4:6
**seller's** 31:25 48:25
50:15 52:15,23,25
61:14,15
**sellers** 55:19,22
60:5 62:23
**selling** 29:14 31:8
32:3
**sells** 28:3 33:11
63:20
**send** 19:1
**sense** 9:7 21:5 23:20
46:23 61:17
**sent** 25:16,18
**sentence** 49:15
**sentiments** 11:21
**separate** 20:3 38:7
38:12,25 39:9 41:10
52:21 67:11 77:11
**separately** 32:16
66:14 79:3
**september** 55:1
60:9
**seriatim** 19:18
**series** 2:5 12:20
19:17 81:10
**seriously** 31:16
**seriousness** 9:12
**serve** 22:15 37:14
**served** 22:4,21
**service** 9:1 12:6
**services** 3:14 6:20
58:25
**set** 15:21 18:10
**sets** 36:18
**settled** 22:11
**settlement** 2:4
12:18,23 13:2,6,14

13:18,23 14:2,6,20
81:8
**share** 8:22 9:2
79:20,21
**shared** 12:1
**shelley** 1:24
**shipped** 23:25
**shoes** 23:2 26:12
51:10
**short** 29:23
**shortly** 78:7
**show** 22:9,10 36:8
50:1
**showed** 37:12 43:13
**showing** 27:7 47:1,7
**shown** 47:8
**side** 8:13 27:5,16
64:18 77:5
**signed** 31:9 52:4
**similar** 20:23 59:2
74:20
**similarly** 18:19
**simply** 8:13 23:18
29:13 38:13 46:10
**simpson** 26:2
**singapore** 16:18
**single** 23:17,17
52:13,16,17 62:2
63:15
**sipa** 5:11
**sir** 14:7
**sit** 35:18
**sitting** 64:18
**situated** 18:19
**situation** 30:22 45:9
**six** 31:15 35:20 36:7
36:9 41:10 43:15
62:1
**sixty** 2:9 15:18
81:14
**slept** 69:3
**solace** 12:4
**sold** 27:12 28:8 29:9
31:6,17 32:11 33:5
33:16 35:1,8 63:19
65:3,6,19 66:17
68:5 70:19 71:5

**solutions** 82:22
**solve** 36:20
**somebody** 48:19,22
51:6,8,9 68:5
**sorely** 10:12
**sorry** 16:11 30:10
39:4
**sought** 13:9 56:11
56:20
**sourced** 48:23
**south** 4:25 82:3,7
**southern** 1:2 10:5
**special** 36:18
**specific** 17:18 53:10
60:14
**specifically** 17:18
52:2 58:1,1,3 59:24
59:25 60:2,21
**specificities** 57:8
**specificity** 55:7,10
**specter** 73:5
**spelled** 16:7
**spent** 10:24
**split** 25:24 26:1
**spoke** 60:4
**spoken** 40:23
**stake** 46:19
**stalling** 78:5
**stand** 47:13,19
**standard** 17:17
46:20 62:20
**standards** 44:6
**standing** 24:14,25
47:15 71:6,9
**start** 19:13
**state** 2:20 20:13
24:13 37:16 58:3
**stated** 62:13 74:17
**statement** 14:15
18:14 39:16 61:8
**statements** 17:18,19
17:19,20
**states** 1:1
**status** 10:5 65:24
68:9
**statute** 23:22 24:12
27:20 30:5,14,16,17

31:16 33:10 36:20
37:10,23 38:25 39:7
39:17,20 41:1,2,3
43:13 45:19 47:21
63:13 66:3,8 68:24
69:4,13 72:18 77:6
77:22 79:4
**stay** 10:20,20
**stearns** 3:3,4 6:19
21:9,22,24 22:2,19
22:21 26:6 31:10
33:19 43:12 59:21
62:8
**step** 34:19
**stepped** 51:10
**stewart** 51:18 52:1
**stick** 46:5
**stood** 26:19
**stranger** 25:1
**street** 5:20
**strictly** 30:8 53:7,13
**strike** 11:6
**structure** 32:2
67:13
**stuart** 5:15 15:14
**stuff** 29:10 37:7
**subject** 13:25 15:25
38:19 57:13 71:7
**submit** 18:21 35:24
**submits** 13:23
**submitted** 17:2
29:24
**submitting** 38:24
39:10
**subsequent** 32:2
34:24,25 42:12
47:24,25 48:4,9,14
48:16 53:12 58:21
68:1,3,4,6,7,9
**subsequently** 59:24
**successfully** 13:12
**successors** 47:13
49:2,3 53:11 60:19
**sue** 33:7 34:10
51:12,14,16
**suffer** 34:12

**suffered** 30:12
63:18
**sufficient** 58:4,19
**sufficiently** 57:12
**suggesting** 75:21,24
**suggests** 45:6,8
**suit** 23:23 63:8
**suite** 6:13 7:3 82:24
**summarize** 54:23
54:24
**summary** 43:3
**summer** 43:9 44:13
**support** 2:15,20,25
3:21 4:2,8 14:14
16:25
**supposed** 44:9 53:9
**sure** 40:12 42:19
45:19,24 56:8 62:11
65:1 69:19,19,20
**surely** 31:25
**surprise** 44:5
**surrounding** 18:17
**suspenders** 60:2
**sustained** 18:23
**swap** 2:6 81:11

**t**

**t** 82:1,1
**t's** 57:1
**table** 64:1
**tactic** 78:5
**take** 8:8,18 17:2
26:5 36:25 61:17
67:2 74:8,8,9,11
76:10
**taken** 69:13
**talk** 20:4 27:11
29:11 35:25,25 77:4
77:6
**talked** 79:21
**talking** 40:6,7 44:14
52:22 60:7
**talks** 49:1,2
**team** 16:23
**telephonically**
17:24 18:22
**tell** 22:8 30:24
49:24 74:25

**telling** 27:12,25
30:20 32:5 37:5
40:25 66:6
**temperament** 10:3
**ten** 20:1
**tenor** 9:25
**tentative** 78:13
**terms** 49:18 53:15
60:4,11,19 61:14
76:5 78:10
**test** 14:21
**thank** 9:15,19 10:17
10:18,19 11:10,20
12:7 14:23,24 18:24
19:10 38:20,21 62:4
75:22 80:2,3,4
**thatcher** 26:2
**theories** 36:8,10
38:14 76:13
**theory** 22:7 30:13
30:14,15 31:14
35:17,18 36:6,11
48:13
**thereof** 3:21 4:2,8
**thing** 19:20,21
22:18 44:3,16 46:7
53:25 57:22 58:7
66:7 71:6 79:19
**things** 36:24 43:18
45:2 60:12 66:21
73:17
**think** 8:16,20,20,21
9:9 11:11,15 12:4,5
19:4 20:8 21:1
23:19 24:6 25:20,24
26:10 35:19 39:10
40:5 41:4,21,24
42:20 45:20,21
46:11,14,14,19
53:23,23 55:9 62:14
62:15 68:15 69:21
70:4,12,12 72:1
76:11 78:5
**third** 2:9 15:18
19:17 32:1 48:1,3
81:14

**thomas** 6:7
**thorough** 46:1
**thought** 72:25
**thousand** 45:10
**thousands** 8:10
36:13 58:13,13,24
59:3 69:24,25
**three** 20:1
**threshold** 63:11
**till** 15:3
**time** 8:7 9:7 18:10
20:25 21:16 22:6,25
23:6 24:7 27:19,21
27:25 28:17,21
30:19 33:3 35:1
38:17 40:7 42:14
44:17 52:4 61:9
65:7 69:5 70:17,18
71:1,3 79:14
**timely** 38:6
**times** 20:1 66:22
73:11
**timothy** 6:25 21:8
21:21
**today** 8:4,4 10:20
12:9 13:3,14 15:18
18:22 19:2,5,12
27:7 40:23 60:8
61:23 62:7,25 69:12
76:17
**told** 9:13 28:20
36:22 41:21 47:17
**tolled** 36:24
**totally** 26:3,7
**track** 59:4
**traction** 74:21
**tracy** 6:16 20:6
**transaction** 13:20
29:21 63:24
**transactions** 12:21
**transcribed** 4:25
**transcriber** 82:8
**transcript** 74:19
76:10 79:22 82:3
**transferred** 64:3
**transmission** 29:4,8
29:17

**travel**  33:17 48:18
  48:18 67:6
**treasure**  9:14
**tremendous**  46:8
**trial**  24:19 26:19
  67:3 76:12
**true**  32:13 34:22
  46:15 82:4
**truly**  8:22
**trust**  2:6 12:21 13:1
  13:19 14:17 79:14
  81:11
**trust's**  77:14
**trustee**  5:11 12:25
  13:11,16,19 14:16
  15:16 16:20,20
**trustee's**  2:8 14:5
  15:18 16:14,23,25
  17:3,5,7,11 18:11
  18:22 81:13
**try**  8:18 28:25
  32:14 44:6 47:2
  59:17 63:4 71:10
  73:12 75:1
**trying**  12:3 34:18
  39:25 47:9 71:17
  77:25 78:1 79:17
**turned**  51:7 70:15
**turning**  10:13 11:20
  12:8
**turns**  12:2 70:2
**twists**  12:2
**two**  8:21 21:15
  32:15 33:18,25 39:9
  41:16 61:19 68:1
  78:22
**type**  45:8

**u**

**u.s.**  1:15,25 5:19
  12:25 13:2 14:11
**ultimately**  76:12,20
**unanimous**  72:10
**unbelievably**  28:8
**unclear**  17:9 53:8
**uncontested**  12:15
**undefined**  40:3

**undergone**  46:7
**understaffed**  39:5
**understand**  39:13
  39:16 40:5 41:4
  59:10 69:17 71:22
  72:5 73:18
**understanding**
  78:24
**understands**  59:15
**unfair**  37:6
**unfairness**  36:9,12
  37:13
**unhappy**  75:2
**unintended**  31:4
**unique**  71:16
**united**  1:1
**unsure**  42:9
**upheld**  79:16
**use**  73:20 74:18
**useful**  46:12
**utah**  51:20 52:19
  73:23
**utmost**  9:12

**v**

**vacate**  2:12,17,22
  3:1,6,11,16,23 4:4
  43:17
**valid**  55:16 64:5,7
  76:14
**validity**  49:23
**validly**  52:16
**value**  34:16
**various**  38:14 76:13
**vault**  34:9
**veritext**  82:22
**versus**  51:19 52:3
**view**  8:22 37:2
  45:15 78:5
**viewed**  11:23
**views**  37:1 76:21
**violates**  34:16
**violating**  19:24
**virtually**  63:7
**void**  50:6 51:5
**voluminous**  47:4
  55:20

**w**

**w**  6:25 16:7
**wade**  21:19
**waiting**  20:22 21:1
  21:5 79:12
**walk**  42:23 50:24
**walked**  34:22
**walking**  67:5
**want**  9:2 19:15
  25:19,21 26:13
  43:17 44:13 46:23
  47:13 54:1 61:6,23
  63:7,12 64:4 75:3,6
  75:12,15
**wanted**  8:8 14:15
  56:10 62:11 67:4
**wants**  23:14
**warranties**  29:15
  30:4,23 34:23 47:16
  48:21 49:8 61:19,21
  67:13,15,21 69:15
  70:3,21 71:2
**warranty**  29:2,5,10
  30:1,2,4 32:11 38:1
  38:4,10,16 47:18
**waste**  20:5
**watch**  10:7
**water**  57:6
**way**  6:12 23:15
  26:14 28:2 31:3
  32:4,6,22 45:15,21
  46:8 48:20,23 50:25
  63:4 74:19
**ways**  35:19,21
  61:24
**we've**  18:6 19:19
  47:5 58:16 59:15
  60:11 72:1 75:16
  76:9 79:21
**web**  54:11,12,15,16
**week**  33:19 36:22
  51:18 52:21 54:3
  61:9
**weil**  5:2 8:9 9:17,19
  11:18
**welcome**  75:23

**went**  24:16 32:22
  33:10 34:10 58:23
  67:9
**west**  5:20
**whatsoever**  70:10
**widgets**  23:23,24,25
**wife**  9:18
**william**  6:6
**win**  26:15 46:16
  66:7
**window**  69:5
**wings**  20:23
**winning**  43:8
**wins**  46:14
**wish**  14:4 61:1
  74:20
**wishes**  20:12
**wollmuth**  6:1
**wonderful**  29:2
**words**  9:8 10:1,15
  10:19 11:21 31:24
  41:5 48:12 50:25
  62:22
**work**  11:12,14 18:5
  55:24 63:23 67:2
  68:24
**worked**  63:6
**working**  8:12 72:14
**works**  36:23 79:23
**world**  11:24 27:21
  31:14
**worry**  45:22
**worth**  34:14,16
  42:15 64:21 65:13
**worthless**  34:10,15
  64:19 65:8,10
**wow**  45:9
**written**  53:19,21
**wrong**  24:25 37:6
  40:24 41:12 45:10
  61:10 71:17,18,20
  73:22
**wrote**  9:6,24

**x**

**x**  1:3,9,13 35:3 81:1

| y |
|---|
| **yeah**   38:9 39:13 |
| 42:4 77:10 78:12 |
| **year**   9:24 43:22 |
| **years**   31:15 41:10 |
| 45:25 52:7 65:3,5,6 |
| **yesterday**   12:9 13:1 |
| **york**   1:2,17,17 5:5 |
| 5:13 6:4,23 8:11 |
| 10:6 26:25 47:2,8,8 |
| 50:8,11,20 62:2 |