Kevin C. McCooey
11 Plymouth Road
Rye, New York  10580
914.305.2058

RECEIVED

MAY 2 0 2015

U.S. BANKRUPTCY COURT, SDNY

Honorable Shelley C. Chapman
United States Bankruptcy Court
Alexander Hamilton Custom House
Courtroom 621
One Bowling Green
New York, New York  10004

Proof of Claim for Creditor Kevin C. McCooey
Debtor:  Lehman Brothers Holdings
Case Number:  08-13555

Honorable Chapman

I am writing this letter in objection to Docket Number 46853 which reclassified my salary as common stock interests.  As I have claimed since my original filing (attached), my compensation from Lehman Brothers consisted of Restricted Stock units to which I had absolutely no ability to liquidate.  Had I had the ability to sell those units, I would understand the court's decision as it would have been a clear choice to hold the equity.  Yet, the company did not allow this to happen and thus, my compensation was held on the company's balance sheet.  You can see the amount of $332,388 which was held by the company with me unable to access or sell a single share.  According to the RSU plan (attached), this money was never invested in actual shares of Lehman Brothers and no shares for contributions years 2003-2008 were ever delivered to me.

Further, as you can see on my 2008 Compensation Statement, there is an Equity Accrual of $46,463.13.  This was withheld from my paycheck to fund my yearly contribution to the restricted stock plan on December 1st of each year.  Obviously, with the circumstances and timing of the bankruptcy, this amount reflected was compensation waiting to be deferred and thus never paid to me.

I have attached the RSU plan to support my claim. From the top of Page 4 (Prospectus), "*except as otherwise provided in a Participant's Share Agreement, no participant (or other person having rights pursuant to an Award) shall have any rights of a shareholder of the company with respect to share of Common Stock subject to an award until the delivery of such shares of Common stock.*" From the top of page 11 (section 8) (Plan Document) – "*unfunded status of plan; no rights as a shareholder. The plan is intended to constitute an unfunded plan for long-term incentive compensation. With respect to any payment not yet made to a participant by the company, nothing here in contained shall give any participant any rights that are greater than those of a general creditor of the company.*"



RECEIVED

MAY 20 2015

U.S. BANKRUPTCY COURT, SDNY

From the middle of page 10 (section 7b) (Plan Document) – "*with respect to any restricted stock granted under the plan, the obligations of the company or any subsidiary are limited solely to the delivery of shares on the date when such shares are to be delivered under the Award Agreement.*"

As the preceding illustrates, any compensation contributed to the RSU Plan was used for general corporate purposes until those shares were actually delivered. Delivery dates would be five years after the contribution date. As such, compensation contributed to the plan for undelivered shares were used by the company to fund business operations and should receive unsecured creditor status.

I am not – nor have I ever – looked at these proceedings as a way to capitalize on a terrible event that has scarred many (including me) emotionally and professionally. Rather, I am under the firm belief that that the money I earned, I am entitled to. I am confident that the Court will see my position regarding my compensation in 2008 and the compensation withheld from my between the years of 2003 and 2008 which was never even entered into that plan.

I am looking forward to your response and happy to discuss at any point.

Respectfully,

Kevin C. McCooey
11 Plymouth Road
Rye, New York  10580
914.320.2424

*United States Bankruptcy Court/Southern District of New York*

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |

**PROOF OF CLAIM**

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)       0000010370

Name of Debtor Against Which Claim is Held
Lehman Brothers Holding Inc   08-13555 (JMP)

UNIQUE IDENTIFIC.

Name of Debtor

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000122764******
KEVIN C. MCCOOEY
315 EAST 68TH STREET
APT 8T
NEW YORK, NY 10021

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Telephone number: _____   Email Address: _____

Name and address where payment should be sent (if different from above)

212·526·7354   Kevin.MCCOOEY@BARCLAYSWEALTH.com

Telephone number:   Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ _____

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Services/Compensation Performed as Employee
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 8302
   3a. **Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other

Describe: _____

Value of Property: $ _____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____   Basis for perfection: _____

**Amount of Secured Claim:** $ _____   **Amount Unsecured:** $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☑ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ 378,851.13

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: _____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 0 4 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 8/31/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   *[signature]* Kevin C. McCooey |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Personal Award Summary                                                      Page 1 of 1

# LEHMAN BROTHERS | LehmanLive

**Data as of August 31, 2008**



## AWARD UNITS[1] OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value[2] | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested[3] | Units Outstanding | Market Value at $0.145* |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2008 | July 2008 IR RSU | $20.9600 | $14,421 | 11/30/2011 | 688.04 | 8.70 | 0.00 | 0.00 | 696.74 | $101 |
| 12/07/2007 | 2007 IR Firmwide Principal | $47.6000 | $74,378 | 11/30/2012 | 1,562.57 | 32.18 | 0.00 | 0.00 | 1,594.75 | $231 |
| 12/07/2007 | 2007 IR Firmwide Discount | $47.6000 | $24,793 | 11/30/2012 | 520.86 | 10.75 | 0.00 | 0.00 | 531.61 | $77 |
| 12/08/2006 | 2006 IR Firmwide Principal | $57.7700 | $54,790 | 11/30/2011 | 948.41 | 28.07 | 0.00 | 0.00 | 976.48 | $142 |
| 12/08/2006 | 2006 IR Firmwide Discount | $57.7700 | $18,263 | 11/30/2011 | 316.14 | 9.35 | 0.00 | 0.00 | 325.49 | $47 |
| 11/30/2005 | 2005 IR Firmwide Principal | $47.2500 | $24,718 | 11/30/2010 | 523.14 | 19.21 | 0.00 | 542.35 | 542.35 | $79 |
| 11/30/2005 | 2005 IR Firmwide Discount | $47.2500 | $8,239 | 11/30/2010 | 174.38 | 6.35 | 0.00 | 0.00 | 180.73 | $26 |
| 12/09/2004 | 2004 IR Firmwide Principal | $32.1750 | $83,104 | 11/30/2009 | 2,582.88 | 116.03 | 0.00 | 2,698.91 | 2,698.91 | $391 |
| 12/09/2004 | 2004 IR Firmwide Discount | $32.1750 | $27,701 | 11/30/2009 | 860.96 | 38.60 | 0.00 | 0.00 | 899.56 | $130 |
| 12/10/2003 | 2003 IR Firmwide Principal | $26.7700 | $1,486 | 11/30/2008 | 55.52 | 2.93 | 0.00 | 58.45 | 58.45 | $8 |
| 12/10/2003 | 2003 IR Firmwide Discount | $26.7700 | $495 | 11/30/2008 | 18.50 | 0.75 | 0.00 | 0.00 | 19.25 | $3 |
| **Total** | | | **$332,388** | | **8,251.40** | **272.92** | **0.00** | **3,299.71** | **8,524.32** | **$1,235** |
| **Total Equity** | | | | | | | | | | **$1,235** |

* Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock options is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise price. Please note that the current market price is based on a delayed 20 minutes feed from Reuters. (12:27 PM EDT on September 1 2009)

[1] Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.
[2] Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
[3] Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

*2008 Equity Accrual (next page) should be added to above number. Total Equity Comp from 2003-2008 which I was unable to sell but Rightfully Earned from compensation was*

*$378,851.13*

*Thank you.*

*\* Proof of compensation years 2003-08 on subsequent pages*

GetSum                                                                                                   Page 1 of 1

# Compensation Statement



Find: GSID ▼ [____] | Get | | Get in Excel |

Fiscal year: 2008  ☐ Show as of before EOM



Sales Org: [____] KEVIN MCCOOEY ▼

Name: 10200342 - KEVIN MCCOOEY
From: 12/1/2007 To: 12/31/2008
Future payout trades

| Year Total | | 12/2008 | 11/2008 | 10/2008 | 9/2008 | 8/2008 | 7/2008 | 6/2008 |
|---|---|---|---|---|---|---|---|---|
| 2,146,230.74 | Gross Production | 85,493.49 | 100,406.82 | 105,802.63 | 85,574.66 | 128,839.81 | 256,067.11 | 106,333.08 | 294 |
| 522,976.79 | Net Production | 26,591.20 | 32,801.54 | 39,716.19 | 23,223.81 | 31,900.81 | 46,480.90 | 30,673.88 | 64 |
| 2,318.39 | Retro Net Production | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,587.73 | 0.00 | |
| 24.37 | Average Rate (%) | 31.10 | 32.67 | 37.54 | 27.14 | 24.76 | 18.77 | 28.85 | |
| | Prior Months -Deficit/Overage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.01 | 0.00 | |
| -27,854.24 | Adj to Net Production | 1,090.97 | -14,585.74 | -6,414.58 | -1,996.05 | 0.00 | -383.34 | 0.00 | |
| | Monthly Payout Balance | 27,682.16 | 18,215.80 | 33,301.61 | 6,346.45 | 31,900.81 | 47,685.28 | 30,673.87 | 64 |
| 0.00 | Draw Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 482,559.62 | Total Sales Compensation | 27,682.16 | 18,215.80 | 33,301.61 | 6,346.45 | 31,900.81 | 47,685.28 | 30,673.87 | 64 |
| 436,096.49 | Cash Commissions | 27,682.16 | 18,215.80 | 33,301.61 | 6,346.45 | 29,546.96 | 41,701.00 | 28,602.22 | 54 |
| 46,463.13 | Equity Accrual Calculated | 0.00 | 0.00 | 0.00 | 0.00 | 2,353.85 | 5,984.28 | 2,071.66 | 9 |
| 497,440.94 | Recorded Total Sales Compensation | 27,682.16 | 18,215.80 | 33,301.61 | 6,346.45 | 46,782.12 | 47,685.28 | 30,673.88 | 64 |
| | -Deficit/Overage | 0.00 | 0.00 | 0.00 | 0.00 | -14,881.31 | 0.00 | -0.01 | |

GetSum

# Compensation Statement





Name: 10200342 - KEVIN MCCOOEY
From: 12/1/2006 To: 11/30/2007
Future payout trades

| Year Total | | 11/2007 | 10/2007 | 9/2007 | 8/2007 | 7/2007 | 6/2007 | 5/2007 |
|---|---|---|---|---|---|---|---|---|
| 3,337,554.36 | Gross Production | 212,652.40 | 203,595.55 | 97,800.24 | 382,515.13 | 346,802.59 | 225,494.01 | 176,604.15 |
| 751,745.30 | Net Production | 51,164.93 | 54,446.87 | 21,128.89 | 82,851.75 | 77,448.13 | 64,310.52 | 40,655.24 |
| 6,162.57 | Retro Net Production | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 22.52 | Average Rate (%) | 24.06 | 26.74 | 21.60 | 21.66 | 22.33 | 28.52 | 23.02 |
| | Prior Months -Deficit/Overage | 0.00 | 0.00 | -0.01 | 0.00 | 0.00 | 0.00 | -0.01 |
| -66,727.45 | Adj to Net Production | -10,000.00 | -160.60 | -12,500.00 | -12,530.11 | -166.08 | -2,093.85 | 0.00 |
| | Monthly Payout Balance | 41,164.93 | 54,286.26 | 8,628.89 | 70,321.64 | 77,282.05 | 62,216.67 | 40,655.23 |
| 0.00 | Draw Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 691,180.41 | Total Sales Compensation | 41,164.93 | 54,286.26 | 8,628.89 | 70,321.64 | 77,282.05 | 62,216.67 | 40,655.23 |
| 592,008.93 | Cash Commissions | 36,680.33 | 46,783.75 | 13,042.10 | 58,681.26 | 63,640.54 | 52,906.46 | 37,543.94 |
| 99,171.48 | Equity Accrual Calculated | 4,484.60 | 7,502.51 | -4,413.21 | 11,640.39 | 13,641.51 | 9,310.21 | 3,111.29 |
| 691,180.43 | Recorded Total Sales Compensation | 41,164.93 | 54,286.26 | 8,628.89 | 70,321.65 | 77,282.05 | 62,216.67 | 40,655.23 |
| | -Deficit/Overage | 0.00 | 0.00 | 0.00 | -0.01 | 0.00 | 0.00 | 0.00 |

GetSum

Page 1 of 1

# Compensation Statement





Find: GSID ▼ [____] | Get | Get in Excel

Fiscal year: 2006  ☐ Show as of before EOM

Sales Org: [____] KEVIN MCCOOEY ▼

Name: 10200342 - KEVIN MCCOOEY
From: 12/1/2005 To: 11/30/2006
Future payout trades

| Year Total | | 11/2006 | 10/2006 | 9/2006 | 8/2006 | 7/2006 | 6/2006 | 5/2006 |
|---|---|---|---|---|---|---|---|---|
| 3,081,941.30 | Gross Production | 545,834.89 | 475,922.03 | 386,469.95 | 117,992.87 | 361,239.61 | 175,718.59 | 302,525.78 |
| 645,228.10 | Net Production | 110,877.48 | 98,764.65 | 78,170.86 | 18,830.45 | 73,966.56 | 48,909.21 | 60,345.08 |
| 11,543.66 | Retro Net Production | 0.00 | 0.00 | 0.00 | 0.00 | 11,518.07 | 0.00 | 0.00 |
| 20.94 | Average Rate (%) | 20.31 | 20.75 | 20.23 | 15.96 | 23.66 | 27.83 | 19.95 |
| | Prior Months -Deficit/Overage | -0.01 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 |
| -31,505.90 | Adj to Net Production | 0.00 | 0.00 | 0.00 | 678.12 | -1,069.31 | -5,360.00 | -58.52 |
| | Monthly Payout Balance | 110,877.47 | 98,764.65 | 78,170.87 | 19,508.57 | 84,415.31 | 43,549.21 | 60,286.57 |
| 0.00 | Draw Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 625,265.88 | Total Sales Compensation | 110,877.47 | 98,764.65 | 78,170.87 | 19,508.57 | 84,415.31 | 43,549.21 | 60,286.57 |
| 552,212.69 | Cash Commissions | 93,035.31 | 83,397.20 | 68,695.23 | 18,832.29 | 74,003.01 | 39,266.83 | 53,493.58 |
| 73,053.18 | Equity Accrual Calculated | 17,842.16 | 15,367.46 | 9,475.63 | 676.28 | 10,412.30 | 4,282.38 | 6,792.99 |
| 625,265.87 | Recorded Total Sales Compensation | 110,877.47 | 98,764.66 | 78,170.86 | 19,508.57 | 84,415.31 | 43,549.21 | 60,286.57 |
| | -Deficit/Overage | 0.00 | -0.01 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 |

Pay Inquiry                                                                                     Page 1 of 2

## View Paycheck

**Kevin McCooey**
Hide

| | |
|---|---|
| **Company:** | **Net Pay:**    $18,990.39 |
| Lehman Brothers Inc. | **Pay Begin Date:** 12/01/2005 |
| **Address:** | **Pay End Date:** 12/31/2005 |
| 745 Seventh Avenue | **Check Date:** 12/09/2005 |
| New York, NY 100196801 | |

Review the details of your paycheck. To view other checks, select    <u>View a Different Paycheck</u>

### General

| | | | |
|---|---|---|---|
| **Name:** | Kevin C. McCooey | **Business Unit:** | IMD |
| **Employee ID:** | 10200342 | **Pay Group:** | Monthly Commissioned |
| **Address:** | 240 East 82nd Street | **Department:** | 00306 - Private Investment: HN |
| | Apt 11H | **Location:** | 399 Park Avenue - 6th Floor |
| | New York, NY 10028 | | |
| | | **Pay Rate:** | Annual |

### Tax Data

| | | | |
|---|---|---|---|
| **Fed Marital Status:** | Single | **NY Marital Status:** | Single |
| **Fed Allowances:** | 0 | **NY Allowances:** | 0 |
| **Fed Addl Percent:** | 0.000 | **NY Addl Percent:** | 0.000 |
| **Fed Addl Amount:** | $0.00 | **NY Addl Amount:** | $0.00 |

Hide

### Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 37,086.51 | 33,590.11 | 14,530.42 | 3,565.70 | 18,990.39 |

### Earnings

| Description | Hours | Rate | Amount | YTD Amount |
|---|---|---|---|---|
| SalesComm 12/01/05-12/31/05 | | | 33,773.53 | 366,760.02 |
| 05Stk-Reg 12/01/05-12/31/05 | | | 3,312.98 | 32,957.66 |
| 00FicaVest | | | | 756.00 |
| 00W2Update | | | | 3,402.00 |
| Reg Salary | | | | 0.00 |
| EE Ref Fee | | | | 2,500.00 |
| **Total:** | | | 37,086.51 | 402,217.68 |

### Taxes

| Description | Amount | YTD Amount |
|---|---|---|
| Fed Withholdng | 10,074.75 | 105,158.62 |
| Fed MED/EE | 487.06 | 5,348.02 |
| Fed OASDI/EE | | 5,580.00 |
| NY Vol Dis/EE | 1.35 | 30.00 |
| NY Withholdng | 2,522.54 | 26,852.12 |
| NY NEWYORK Withholdng | 1,444.72 | 15,429.45 |
| **Total:** | 14,530.42 | 158,398.21 |

### Before-Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| TMAMTran/P | 100.00 | 100.00 |
| PreTaxMed | 61.00 | 793.00 |

### After Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| 00RSU ShWh | | -1,386.00 |

### Taxable Benefits

| Description | Amount | YTD Amount |
|---|---|---|
| GVUL TAXBL* | 5.11 | 51.10 |

Pay Inquiry                                                                Page 2 of 2

| PreTaxDent | 8.00 | 104.00 |
|---|---|---|
| TDSP401(k) | | 14,000.00 |
| FSAHlt WW | 19.53 | 250.00 |
| | | |
| Total: | 188.53 | 15,247.00 |

| 05StkAccOf | 3,312.98 | 32,957.66 |
|---|---|---|
| GVUL SupLf | 64.19 | 256.76 |
| | | |
| | | |
| Total: | 3,377.17 | 31,828.42 |

| BsLf-MetLf* | | 9.00 |
|---|---|---|
| | | |
| | | |
| * Taxable | | |
| Total: | 5.11 | 60.10 |

| Net Pay Distribution | | | | |
|---|---|---|---|---|
| Payment Type | Paycheck Number | Account Type | | Amount |
| Direct Deposit | 3063885 | Checking | | 18,990.39 |

## View Paycheck

Kevin McCooey
Hide

| | |
|---|---|
| | Net Pay: $30,943.78 |

**Company:**
Lehman Brothers Inc.

**Pay Begin Date:** 12/01/2004
**Pay End Date:** 12/31/2004
**Check Date:** 12/10/2004

**Address:**
745 Seventh Avenue
New York, NY 100196801

Review the details of your paycheck. To view other checks, select    View a Different Paycheck

### General

| | | | |
|---|---|---|---|
| **Name:** | Kevin C. McCooey | **Business Unit:** | PCS |
| **Employee ID:** | 10200342 | **Pay Group:** | Monthly Commissioned |
| **Address:** | 240 East 82nd Street | **Department:** | 00306 - PCS NY Branch |
| | Apt 11H | **Location:** | 399 Park Avenue - 6th Floor |
| | New York, NY 10028 | | |
| | | **Pay Rate:** | Annual |

### Tax Data

| | | | |
|---|---|---|---|
| **Fed Marital Status:** | Single | **NY Marital Status:** | Single |
| **Fed Allowances:** | 0 | **NY Allowances:** | 0 |
| **Fed Addl Percent:** | 0.000 | **NY Addl Percent:** | 0.000 |
| **Fed Addl Amount:** | $0.00 | **NY Addl Amount:** | $0.00 |

Hide

### Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | 66,684.66 | 57,245.00 | 26,298.22 | 9,442.66 | 30,943.78 |

### Earnings

| Description | Hours | Rate | Amount | YTD Amount |
|---|---|---|---|---|
| SalesComm 12/01/04-12/31/04 | | | 57,471.83 | 690,416.81 |
| 04Stk-Reg 12/01/04-12/31/04 | | | 9,212.83 | 110,805.59 |
| Reg Salary 12/01/04-12/31/04 | 173.33 | | 0.00 | 0.00 |
| 99W2Update | | | | 83.78 |
| EE Ref Fee | | | | 2,500.00 |
| **Total:** | **173.33** | | **66,684.66** | **803,722.40** |

### Taxes

| Description | Amount | YTD Amount |
|---|---|---|
| Fed Withholdng | 18,389.37 | 217,640.26 |
| Fed MED/EE | 830.06 | 10,017.97 |
| Fed OASDI/EE | | 5,449.80 |
| NY Vol Dis/EE | 1.68 | 19.72 |
| NY Withholdng | 4,477.18 | 53,238.50 |
| NY NEWYORK Withholdng | 2,599.93 | 30,974.91 |
| **Total:** | **26,298.22** | **317,341.16** |

### Before-Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| TMAMTran/P | 105.00 | 105.00 |

### After Tax Deductions

| Description | Amount | YTD Amount |
|---|---|---|
| 04StkAccOf | 9,212.83 | 110,805.59 |

### Taxable Benefits

| Description | Amount | YTD Amount |
|---|---|---|
| BsLf- | 3.00 | 30.42 |

Pay Inquiry

Page 2 of 2



| TMA/Trnsit | 50.00 | 1,050.00 |
| PreTaxMed | 46.00 | 552.00 |
| PreTaxDent | 8.00 | 96.00 |
| TDSP401(k) | | 13,000.00 |
| FSA Hcare | 20.83 | 250.00 |
| **Total:** | **229.83** | **15,053.00** |

| 99RSU ShWh | | -83.78 |
| **Total:** | 9,212.83 | 110,721.81 |

AETNA*

| * Taxable | | |
| **Total:** | **3.00** | **30.42** |

**Net Pay Distribution**

| Payment Type | Paycheck Number | Account Type | | Amount |
|---|---|---|---|---|
| Direct Deposit | 2731682 | Checking | | 30,943.78 |

Pay Inquiry                                                                                        Page 1 of 2

# View Paycheck

**Kevin McCooey**
Hide

|  |  |
|--|--|
| | **Net Pay:** $23,803.46 |

**Company:**
Lehman Brothers Inc.

**Pay Begin Date:** 12/01/2003
**Address:**                                          **Pay End Date:** 12/31/2003
745 Seventh Avenue                           **Check Date:** 12/10/2003
New York, NY 100196801

Review the details of your paycheck.  To view other checks, select      View a Different Paycheck

## General

| | | | |
|--|--|--|--|
| **Name:** | Kevin C. McCooey | **Business Unit:** | PCS |
| **Employee ID:** | 10200342 | **Pay Group:** | Monthly Commissioned |
| **Address:** | 240 East 82nd Street | **Department:** | 00306 - PCS NY Branch |
| | Apt 11H | **Location:** | 399 Park Avenue - 6th Floor |
| | New York, NY 10028 | | |
| | | **Pay Rate:** | Annual |

## Tax Data

| | | | |
|--|--|--|--|
| **Fed Marital Status:** | Single | **NY Marital Status:** | Single |
| **Fed Allowances:** | 0 | **NY Allowances:** | 0 |
| **Fed Addl Percent:** | 0.000 | **NY Addl Percent:** | 0.000 |
| **Fed Addl Amount:** | $0.00 | **NY Addl Amount:** | $0.00 |

Hide

### Paycheck Summary

| | Gross Earnings | Fed Taxable Gross | Total Taxes | Total Deductions | Net Pay |
|--|--|--|--|--|--|
| **Current** | 44,264.84 | 44,398.79 | 20,594.19 | -132.81 | 23,803.46 |

### Earnings

| Description | Hours | Rate | Amount | YTD Amount |
|--|--|--|--|--|
| SalesComm 12/01/03-12/31/03 | | | 44,561.48 | 141,365.82 |
| Reg Salary 12/01/03-12/31/03 | 173.33 | | | 0.00 |
| 03Stk-Reg 12/01/03-12/31/03 | | | -296.64 | 1,981.65 |
| **Total:** | **173.33** | | **44,264.84** | **.143,347.47** |

### Taxes

| Description | Amount | YTD Amount |
|--|--|--|
| Fed Withholdng | 13,893.84 | 32,610.22 |
| Fed MED/EE | 643.78 | 2,020.79 |
| Fed OASDI/EE | | 5,394.00 |
| NY Vol Dis/EE | 1.68 | 19.72 |
| NY Withholdng | 3,763.47 | 9,046.59 |
| NY NEWYORK Withholdng | 2,291.42 | 5,426.52 |
| **Total:** | **20,594.19** | **54,517.84** |

### Before-Tax Deductions

| Description | Amount | YTD Amount |
|--|--|--|
| ComuteAsst | | 300.00 |

### After Tax Deductions

| Description | Amount | YTD Amount |
|--|--|--|
| 03StkAccOf | -296.64 | 1,981.65 |

### Taxable Benefits

| Description | Amount | YTD Amount |
|--|--|--|
| BsLf- | 1.14 | 15.12 |

Pay Inquiry



| | | | | |
|---|---|---|---|---|
| TMA/Trnsit | 100.00 | 950.00 | AETNA* | |
| PreTaxMed | 35.00 | 420.00 | | |
| PreTaxDent | 8.00 | 96.00 | | |
| TDSP401(k) | | 12,000.00 | | |
| FSA Hcare | 20.83 | 250.00 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Total: | 163.83 | 14,016.00 | Total: | -296.64 | 1,981.65 | * Taxable |
| | | | | | | Total:   1.14   15.12 |

**Net Pay Distribution**

| Payment Type | Paycheck Number | Account Type | | Amount |
|---|---|---|---|---|
| Direct Deposit | 2460095 | Checking | ▮▮▮▮▮▮▮ | 23,803.46 |



FIRST CLASS

RETURN RECEIPT
REQUESTED

Lehman Brothers Holdings Chris Processing Center
C/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, New York 10150-5076

RECEIVED





Kevin C. McCeely
BARCLAYS
WEALTH



CERTIFIED MAIL

7008 3230 0000 2851 8777

*As amended November 8, 2007*

## LEHMAN BROTHERS HOLDINGS INC.

### 2005 STOCK INCENTIVE PLAN

1) **Purpose of the Plan**

The purpose of the Plan is to aid the Company and its Affiliates in recruiting and retaining employees, directors and consultants and to motivate such employees, directors and consultants to exert their best efforts on behalf of the Company and its Affiliates by providing incentives through the granting of Awards. The Company expects that it will benefit from the added interest which such employees, directors and consultants will have in the welfare of the Company as a result of their proprietary interest in the Company's success.

2) **Definitions**

The following capitalized terms used in the Plan have the respective meanings set forth in this Section:

(a) *"Act"* means The Securities Exchange Act of 1934, as amended, or any successor thereto.

(b) *"Affiliate"* means any entity that is consolidated with the Company for financial reporting purposes or any other entity designated by the Board in which the Company or an Affiliate has a direct or indirect interest of at least twenty-five percent (25%).

(c) *"Award"* means an Option, Stock Appreciation Right or Other Stock-Based Award granted pursuant to the Plan.

(d) *"Award Agreement"* means the written document or documents by which each Award is evidenced.

(e) *"Board"* means the Board of Directors of the Company.

(f) *"Change in Control"* means, with respect to any Award granted on or prior to November 8, 2007, the occurrence of any of the following events:

    (i) The occurrence of an event described in paragraph (ii), (iii), (iv), (v) or (vi) below involving any entity (or an affiliate thereof) which had previously commenced (within the meaning of Rule 14d-2 under the Act), without the approval of the Board, a tender offer for shares having more than 20% of the combined voting power of the Company's outstanding shares of capital stock having ordinary voting power in the election of directors of the Company (the "Voting Securities");

    (ii) An acquisition (other than directly from the Company) of any Voting Securities by any "Person" (as the term "person" is used for purposes of Section 13(d) or 14(d) of the Act) immediately after which such Person has "Beneficial Ownership" (within the meaning of Rule 13d-3 promulgated under the Act) of 20% or more of the combined voting power of the Company's then outstanding Voting Securities; provided, however, in determining whether a Change in Control has occurred, Voting Securities which are acquired in a "Non-Control Acquisition" (as hereinafter defined) shall not constitute an acquisition which would cause a Change in Control. A "Non-Control Acquisition" shall mean an acquisition by (A) an employee benefit plan (or a trust forming a part thereof or a trustee thereof acting solely in its capacity as trustee) maintained by (I) the Company or (II) any corporation or other Person of which a majority of its voting power or its voting equity securities or equity interest is owned, directly or indirectly, by the Company (for purposes of this definition, a "Subsidiary Entity"), (B) the Company or any of its Subsidiary Entities, or (C) any Person who files in connection with such acquisition a Schedule 13D which expressly disclaims any intention to seek control of the Company and does not expressly reserve the right to seek such control; provided,

however, that any amendment to such statement of intent which either indicates an intention or reserves the right to seek control shall be deemed an "acquisition" of the securities of the Company reported in such filing as beneficially owned by such Person for purposes of this paragraph (ii);

(iii) The individuals who, as of the Effective Date, are members of the Board (the "Incumbent Board"), ceasing for any reason to constitute at least a majority of the members of the Board; provided, however, that if the election, or nomination for election by the Company's common stockholders, of any new director was approved by a vote of at least two-thirds of the Incumbent Board, such new director shall, for purposes of this Plan, be considered as a member of the Incumbent Board; provided further, however, that no individual shall be considered a member of the Incumbent Board if such individual initially assumed office as a result of either an actual or threatened election contest or other actual or threatened solicitation of proxies or consents by oro n behalf of a Person other than the Board (in each case, a "Proxy Contest") including by reason of any agreement intended to avoid or settle any Proxy Contest;

(iv) A merger, consolidation, recapitalization or reorganization involving the Company, unless such merger, consolidation or reorganization is a "Non-Control Transaction"; i.e., meets each of the requirements described in subparagraphs (A), (B) and (C) below:

(A) the stockholders of the Company, immediately before such merger, consolidation, recapitalization or reorganization, own, directly or indirectly, immediately following such merger, consolidation, recapitalization or reorganization, at least 50% of the combined voting power of the outstanding voting securities of the Company, the corporation resulting from such merger or consolidation, recapitalization or reorganization, or any parent thereof (the "Surviving Corporation") in substantially the same proportion as their ownership of the Voting Securities immediately before such merger, consolidation, recapitalization or reorganization;

(B) the individuals who were members of the Incumbent Board immediately prior to the execution of the agreement providing for such merger, consolidation, recapitalization or reorganization constitute at least 50% of the members of the board of directors of the Surviving Corporation immediately following the consummation of such merger, consolidation, recapitalization or reorganization; and

(C) no Person other than the Company, any Subsidiary Entity, any employee benefit plan (or any trust forming a part thereof or a trustee thereof acting solely in its capacity as trustee) maintained by the Company, the Surviving Corporation, or any Subsidiary Entity, or any Person who, immediately prior to such merger, consolidation, recapitalization or reorganization had Beneficial Ownership of 20% or more of the then outstanding Voting Securities has Beneficial Ownership of 20% or more of the combined voting power of the Surviving Corporation's then outstanding voting securities immediately following the consummation of such merger, consolidation, recapitalization or reorganization;

(v) A complete liquidation or dissolution of the Company;

(vi) Sale or other disposition of all or substantially all of the assets of the Company to any Person (other than a transfer to a Subsidiary Entity); or

(vii) An event that would constitute a "Change in Control" within the meaning of Section 2(g).

Notwithstanding the foregoing, a Change in Control shall not be deemed to occur solely because any Person (the "Subject Person") acquired Beneficial Ownership of more than the permitted percentage set forth in paragraph (ii) or subparagraph (iv)(A) or (C) above, as applicable, of the outstanding Voting Securities as a result of the acquisition of Voting Securities by the Company which, by reducing the number of Voting Securities outstanding, increases the proportional number of shares Beneficially Owned by the Subject Persons, provided that if a Change in Control would occur (but for the operation of this sentence) as a result of the acquisition of Voting

2

Securities by the Company, and thereafter such Beneficial Owner acquires any additional Voting Securities which increases the percentage of the then outstanding Voting Securities Beneficially Owned by the Subject Person, then a Change in Control shall occur.

A "Hostile Change in Control" shall mean the occurrence of an event as contemplated in paragraph (i) above. A "Friendly Change in Control" shall mean any Change in Control that is not a Hostile Change in Control.

(g) ***"Change in Control"*** means, with respect to any Award granted after November 8, 2007, the occurrence of any of the following events:

(i) An acquisition (other than directly from the Company, but including an y acquisition in connection with any merger, consolidation, recapitalization or reorganization involving the Company) of the Company's outstanding shares of capital stock having ordinary voting power in the election of directors ("Voting Securities") by any "Person" (as the term "person" is used for purposes of Section 13(d) or 14(d) of the Exchange Act) immediately after which such Person has "Beneficial Ownership"(wi thin the meaning of Rule 13d-3 promulgated under the Exchange Act) of 70% or more of the combined voting power of the Company's then outstanding Voting Securities; provided, however, in determining whether a Change in Control has occurred, Voting Securities that are acquired in a "Non-Control Acquisition" (as hereinafter defined) shall not constitute an acquisition that would cause a Change in Control. A "Non-Control Acquisition" shall mean an acquisition by (A) an employee benefit plan (or a trust forming a part thereof or a trustee thereof acting solely in its capacity as trustee) maintained by (I) the Company or (II) any corporation or other Person of which a majority of its voting power or its voting equity securities or equity interest is owned, directly or indirectly, by the Company (for purposes of this definition, a "Subsidiary Entity"), (B) the Company or any of its Subsidiary Entities, or (C) any Person who files in connection with such acquisition a Schedule 13D that expressly disclaims any intention to seek control of the Company and does not expressly reserve the right to seek such control; provided, however, that any amendment to such statement of intent that either indicates an intention or res erves the right to seek control shall be deemed an "acquisition" of the securities of the Company reported in such filing as beneficially owned by such Person for purposes of this paragraph (i);

(ii) Any merger, consolidation, recapitalization or reorganization involving the Company, <u>unless</u> such merger, consolidation, recapitalization or reorganization is a "Non-Control Transaction"; i.e., meets each of the requirements described in subparagraphs (A), (B) and (C) below:

(A) the stockholders of the Company, immediately before such merger, consolidation, recapitalization or reorganization, own, directly or indirectly, immediately following such merger, consolidation, recapitalization or reorganization, at least 30% of the combined voting power of the outstanding voting securities of the Company, the corporation resulting from such merger, consolidation, recapitalization or reorganization, or any parent thereof (the "Surviving Corporation") in substantially the same proportion as their ownership of the Voting Securities immediately before such merger, consolidation, recapitalization or reorganization;

(B) the individuals who were members of the Board immediately prior to the execution of the agreement providing for such merger, consolidation, recapitalization or reorganization constitute at least 50% of the members of the board of directors of the Surviving Corporation immediately following the consummation of such merger, consolidation, recapitalization or reorganization; and

(C) no Person other than the Company, any Subsidiary Entity, any employee benefit plan (or any trust forming a part thereof or a trustee thereof acting solely in its capacity as trustee) maintained by the Company, the Surviving Corporation, or any Subsidiary Entity, or any Person who, immediately prior to such merger, consolidation, recapitalization or

3

reorganization had Beneficial Ownership of 70% or more of the then outstanding Voting Securities has Beneficial Ownership of 70% or more of the combined voting power of the Surviving Corporation's then outstanding voting securities immediately following the consummation of such merger, consolidation, recapitalization or reorganization;

(iii) Replacement within a consecutive twelve month period of a majority of the individuals who are members of the Board with individuals ("Replacement Board Members") who do not receive endorsement by a majority of the Board before the date of the appointment or election of such Replacement Board Member; or

(iv) Sale or other disposition (other than a transfer to a Subsidiary Entity) of all or substantially all of the assets of the Company to any Person, or any Person acquires such amount of assets in any consecutive twelve-month period ending on the most recent acquisition by such Person.

Notwithstanding the foregoing, a Change in Control shall not be deemed to occur solely because any Person (the "Subject Person") acquired Beneficial Ownership of more than the permitted percentage set forth in paragraph (i) of the outstanding Voting Securities as a result of the acquisition of Voting Securities by the Company that, by reducing the number of Voting Securities outstanding, increases the proportional number of shares Beneficially Owned by the Subject Person, provided that if a Change in Control would occur (but for the operation of this sentence) as a result of the acquisition of Voting Securities by the Company, and thereafter such Subject Person acquires any additional Voting Securities which increases the percentage of the then outstanding Voting Securities Beneficially Owned by the Subject Person, then a Change in Control shall occur. In addition, notwithstanding the foregoing a Change in Control shall not be deemed to occur unless such transaction or occurrence constitutes a change in ownership or effective control within the meaning of Section 409A(a)(2)(A)(v) of the Code.

(h) *"Code"* means the Internal Revenue Code of 1986, as amended, or any successor thereto.

(i) *"Committee"* means the Compensation and Benefits Committee of the Board.

(j) *"Company"* means Lehman Brothers Holdings Inc.

(k) *"Dividend Equivalent Right"* means a dividend equivalent right granted under the Plan, which represents an unfunded and unsecured promise to pay to the Participant amounts equal to all or any portion of the regular cash dividends that would be paid on Shares covered by an Award if such shares were delivered pursuant to an Award.

(l) *"Effective Date"* means May 1, 2005.

(m) *"Employment"* means (i) a Participant's employment if the Participant is an employee of the Company or any of its Affiliates, (ii) a Participant's services as a consultant, if the Participant is consultant to the Company or any of its Affiliates and (iii) a Participant's services as a Non-Employee Director, if the Participant is a non-employee member of the Board; provided however that unless otherwise determined by the Committee, a change in a Participant's status from employee to non-employee (other than a director of the Company or an Affiliate) shall constitute a termination of employment hereunder. For purposes of the Plan, unless the Committee determines otherwise: (a) a transfer of a Participant's employment, without an intervening period of separation, between the Company and any Affiliate shall not be deemed a termination of employment, and (b) a Participant who is granted in writing a leave of absence shall be deemed to have remained in the employ of the Company during such leave of absence.

(n) *"Fair Market Value"* means, on a given date, (i) if there should be a public market for the Shares on such date, the closing price of the Shares on the New York Stock Exchange, or, if the Shares are not listed or admitted on any national securities exchange, the arithmetic mean of the per Share closing bid price and per Share closing asked price on such date as quoted on the National Association of Securities Dealers Automated Quotation System (or such market in which such

prices are regularly quoted) (the "NASDAQ"), or, if no sale of Shares shall have been reported on the New York Stock Exchange or quoted on the NASDAQ on such date, then the immediately preceding date on which sales of the Shares have been so reported or quoted shall be used, and (ii) if there should not be a public market for the Shares on such date, the Fair Market Value shall be the value established by the Committee in good faith and, in the case of an ISO, in accordance with Section 422 of the Code.

(o) *"ISO"* means an Option that is also an incentive stock option granted pursuant to Section 5(d).

(p) *"Non-Employee Director"* means a director of the Company who is not an employee of the Company or a Subsidiary.

(q) *"Option"* means (i) a non-qualified stock option or (ii) an ISO, as applicable, granted pursuant to Section 5.

(r) *"Option Price"* means the purchase price per Share of an Option, as determined pursuant to Section 5(a).

(s) *"Other Stock-Based Award"* means an award granted pursuant to Section 7.

(t) *"Participant"* means an employee, prospective employee, director or consultant of the Company or an Affiliate who is selected by the Committee to participate in the Plan.

(u) *"Performance-Based Award"* means an Other Stock-Based Award granted pursuant to Section 7(c).

(v) *"Plan"* means the Lehman Brothers Holdings Inc. 2005 Stock Incentive Plan, as amended from time to time.

(w) *"Shares"* means shares of common stock of the Company.

(x) *"Stock Appreciation Right"* means a stock appreciation right granted pursuant to Section 6.

(y) *"Subsidiary"* means a subsidiary corporation, as defined in Section 424(f) of the Code (or any successor section thereto), of the Company.

3) **Shares Subject to the Plan**

(a) The total number of Shares that may be issued under the Plan is ninety-five (95) million, plus the number of Shares calculated as set forth in subsection (c) below, subject to adjustment as provided in Section 9. Shares of Common Stock issued under the Plan may be authorized but unissued shares or authorized and issued shares held in the Company's treasury, or any combination thereof. No participant may be granted Options, Stock Appreciation Rights or Other Stock-Based Awards covering in excess of four million Shares in any fiscal year of the Company, and the maximum number of Shares that may be subject to Awards that are ISOs is twenty (20) million, subject to adjustment as provided in Section 9.

(b) In calculating the number of Shares remaining available for grants of Awards at any given time during the term of the Plan, the following rules shall apply:

(i) the number of Shares remaining for issuance shall be reduced by the number of outstanding Awards that consist of, or that are payable in Shares;

(ii) the number of Shares remaining for issuance shall be increased by the number of Shares withheld or tendered (by actual delivery or attestation) to pay the exercise price of an Option

5

and by the number of shares withheld from any grant of Awards to satisfy tax withholding obligations;

    (iii) the number of Shares remaining for issuance shall be increased by the number of Shares that have been granted, or reserved for distribution in satisfaction of Awards, that are later forfeited, or that expire or terminate or, for any other reason, are not payable or distributable under the Plan; and

    (iv) the number of Shares remaining for issuance shall be increased by the number of Shares that have been granted in respect of Awards that are settled in cash under the Plan.

  (c) The following numbers of Shares shall be added to the ninety-five (95)million Shares expressly identified in subsection (a) above: the number of Shares that, on the date that is immediately prior to the applicable date of expiration of each of the Lehman Brothers Holdings Inc. Employee Incentive Plan and the Lehman Brothers Holdings Inc. 1996 Management Ownership Plan (each, a "Prior Plan"), are available for issuance and not otherwise subject to outstanding Awards granted under the Prior Plans, increased by the number of Shares that, as of each such applicable expiration date, were subject to Awards granted and outstanding under the Prior Plans (the "Prior Awards") but which are subsequently not payable or distributable under the PriorAwards under any of the circumstances described in paragraph (ii), (iii) or (iv) of subsection (b) above.

4) **Administration**

  (a) The Plan shall be administered by the Committee, the members of which shall be "independent" in accordance with all applicable stock exchange or market listing requirements. The Committee may delegate its duties and powers in whole or in part to any subcommittee thereof consisting solely of at least two individuals who are intended to qualify as "non-employee directors" within the meaning of Rule 16b-3 under the Act (or any successor rule thereto) and, to the extent required by Section 162(m) of the Code (or any successor section thereto), "outside directors" within the meaning thereof. In addition, to the extent consistent with Rule 16b-3 under the Act, the Committee may delegate the authority to grantAwards under the Plan to officers or employees of the Company.

  (b) The Committee is authorized to construe, interpret, implement and administer the Plan and any Award, to establish, amend and rescind any rules and regulations relating to the Plan and each Award, and to make any other determinations that it deems necessary or desirable for the administration of the Plan or with respect to any Award. The Committee may correct any defect or supply any omission or reconcile any inconsistency in the Plan or in any Award in the manner and to the extent the Committee deems necessary or desirable. Any decision of the Committee in the construction, interpretation, implementation and administration of the Plan or any Award, as described herein, shall lie within its sole and absolute discretion and shall be final, conclusive and binding on all parties concerned (including, butnot limited to, Participants and their beneficiaries or successors). The Committee shall have the full and exclusive power and authority to make, and establish the terms and conditions of, any Award to any person eligible to be a Participant, consistent with the provisions of the Plan and to amend or waive any such terms and conditions at any time (including, without limitation, accelerating or waiving any conditions on vesting), provided, however, the Committee shall not have such power and authority to accelerate or otherwise provide for the times at which Shares with respect to any Award are delivered if any Award is subject to Section 409A of the Code in a manner that would result in the imposition upon any Participant of an additional tax under Section 409A of the Code, and provided further, in the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, a Participant is deemed to be a "specified employee" (within the meaning of Section 409A(a)(2)(B)(i) of the Code), payments and/or deliveries of Shares in respect of any Award subject to Section 409A of the Code shall not be made prior to the date which is six (6) months after the date of such Participant's separation from service from the Company and all Subsidiaries, determined in accordance with Section 409A of the Code and the regulations promulgated

thereunder. None of Committee's determinations under the Plan and under any Award Agreement need be uniform and any such determinations may be made by it selectively among persons who receive, or are eligible to receive, Awards under the Plan (whether or not such persons are similarly situated). Without limiting the foregoing, the Committee shall be entitled, among other things, to make non-uniform and selective determinations under Award Agreements, and to enter into non-uniform and selective Award Agreements, as to (i) the persons to receive Awards, (ii) the terms and provisions of Awards, (iii) whether a Participant's Employment has been terminated for purposes of the Plan and (iv) any adjustments to be made to Awards pursuant to Section 9 or otherwise.

(c) The Committee shall require payment of any amount it may determine to be necessary to withhold for federal, state, local or other taxes or to otherwise satisfy any tax obligations due as a result of the exercise, grant, vesting of, or payment pursuant to, an Award. Unless the Committee specifies otherwise, the Participant may elect to pay a portion or all of such withholding or other taxes by (i) delivery, in cash or by check, (ii) delivery in Shares or (iii) having Shares withheld by the Company with a market value equal to the minimum statutory withholding rate from any Shares that would have otherwise been received by the Participant.

(d) Deliveries of Shares may be rounded to avoid fractional shares. In addition, the Company may pay cash in lieu of fractional shares.

5) **Terms and Conditions of Options**

Options granted under the Plan shall be, as determined by the Committee, non-qualified or ISOs for federal income tax purposes, as evidenced by the related Award agreements, and shall be subject to the foregoing and the following terms and conditions and to such other terms and conditions, not inconsistent therewith, as the Committee shall determine:

(a) *Option Price.* The Option Price per Share shall be determined by the Committee, but shall not be less than 100% of the Fair Market Value of the Shares on the date an Option is granted.

(b) *Exercisability.* Options granted under the Plan shall be exercisable at such time and upon such terms and conditions as may be determined by the Committee, but in no event shall an Option be exercisable more than ten years after the date it is granted.

(c) *Exercise of Options.* Except as otherwise provided in the Plan or in an Award Agreement, an Option may be exercised for all, or from time to time any part, of the Shares for which it is then exercisable. For purposes of this Section 5, the exercise date of an Option shall be the date a notice of exercise is received by the Company, together with provision for payment of the full purchase price in accordance with this subsection (c). The Option Price for the Shares as to which an Option is exercised shall be paid to the Company, at the election of the Committee, pursuant to one or more of the following methods: (i) in cash; (ii) in Shares having a market value equal to the aggregate Option Price for the Shares being purchased and satisfying such other requirements as may be imposed by the Committee; provided, that such Shares have been held by the Participant for no less than six months (or such other period as established from time to time by the Committee in order to avoid adverse accounting treatment applying generally accepted accounting principles); (iii) partly in cash and partly in such Shares; (iv) if there is a public market for the Shares at such time, through the delivery of irrevocable instructions to a broker to sell Shares obtained upon the exercise of the Option and to deliver promptly to the Company an amount out of the proceeds of such Sale equal to the aggregate Option Price for the Shares being purchased or (v) by such other means as the Committee deems appropriate. No Participant shall have any rights to dividends or other rights of a stockholder with respect to Shares subject to an Option, and shall not otherwise be entitled to delivery of any Shares (or cash or other property in lieu thereof) underlying any such Option, until the Participant has given written notice of exercise of the Option, paid in full for such Shares and, if applicable, has satisfied any other conditions imposed by the Committee pursuant to the Plan, and such Shares have been issued hereunder.

7

(d) *ISOs.* The Committee may grant Options under the Plan that are intended to be ISOs. Such ISOs shall comply with the requirements of Section 422 of the Code (or any successor section thereto). No ISO may be granted to any Participant who, at the time of such grant, owns more than ten percent of the total combined voting power of all classes of stock of the Company or of any Subsidiary, unless (i) the Option Price for such ISO is at least 110% of the Fair Market Value of a Share on the date the ISO is granted and (ii) the date on which such ISO terminates is a date not later than the day preceding the fifth anniversary of the date on which the ISO is granted. Any Participant who disposes of Shares acquired upon the exercise of an ISO either (i) within two years after the date of grant of such ISO or (ii) within one year after the transfer of such Shares to the Participant, shall notify the Company immediately of such disposition and of the amount realized upon such disposition. All Options granted under the Plan are intended to be nonqualified stock options, unless the applicable Award Agreement expressly states that the Option is intended to be an ISO. If an Option is intended to be an ISO, and if for any reason such Option (or portion thereof) shall not qualify as an ISO, then, to the extent of such nonqualification, such Option (or portion thereof) shall be regarded as a nonqualified stock option granted under the Plan, provided that such Option (orp ortion thereof) otherwise complies with the Plan's requirements relating to nonqualified stock options. In no event shall any member of the Committee, the Company or any of its Affiliates (or their respective employees, officers or directors) have any liability to any Participant (or any other Person) due to the failure of an Option to qualify for any reason as an ISO.

(e) *Attestation.* Wherever in this Plan or any agreement evidencing an Award a Participant is permitted to pay the exercise price of an Option or withholding taxes relating to the exercise of an Option or delivery of Shares pursuant to an Award by delivering Shares, the Participant may, subject to procedures satisfactory to the Committee, satisfy such delivery requirement by presenting proof of beneficial ownership of such Shares, in which case the Company shall treat the Option as exercised without further payment and shall withhold such number of Shares from the Shares acquired by the exercise of the Option or pursuant to the other Award.

(f) *Section 409A Restrictions on Option Awards.* Options shall only be granted to employees, independent contractors or Non-Employee Directors providing direct services to any corporation or other entity in a chain of corporations or other entities in which each corporation or other entity, starting with the Company, has a controlling interest in another corporation or other entity in the chain, ending with the corporation or other entity for which the service provider provides direct services on the date of grant of the Option.F or this purpose, the term controlling interest has the same meaning as provided in Treas. Reg. Section 1.414(c)-2(b)(2)(i) of the Code, provided that the language "at least 50 percent" is used instead of "at least 80 percent" each place it appears in Treas. Reg. Section 1.414(c)-2(b)(2)(i). In addition, where the use of such stock with respect to the grant of an option to such service provider is based upon legitimate business criteria, the term controlling interest has the same meaning as provided in Treas. Reg. Section 1.414(c)-2(b)(2)(i),p rovided that the language "at least 20 percent" is used instead of "at least 80 percent" each place it appears in Treas. Reg. Section 1.414(c)-2(b)(2)(i). For purposes of determining ownership of an interest in an organization, the rules of Treas. Reg. Section 1.414(c)-3 and 1.414(c)-4 of the Code apply.

6) **Terms and Conditions of Stock Appreciation Rights**

(a) *Grants.* The Committee may grant (i) a Stock Appreciation Right independent of an Option or (ii) a Stock Appreciation Right in connection with an Option, or a portion thereof. A Stock Appreciation Right granted pursuant to clause (ii) of the preceding sentence (A) may be granted at the time the related Option is granted or at any time prior to the exercise or cancellation of the related Option, (B) shall cover the same number of Shares covered by an Option (or such lesser number of Shares as the Committee may determine) and (C) shall be subject to the same terms and conditions as such Option except for such additional limitations as are contemplated by this Section 6 (or such additional limitations as may be included in an Award agreement).

8

(b) *Terms.* The exercise price per Share of a Stock Appreciation Right shall be an amountd etermined by the Committee but in no event shall such amount be less than the Fair Market Value of a Share on the date the Stock Appreciation Right is granted; provided, however, that notwithstanding the foregoing in the case of a Stock Appreciation Right granted in conjunction with an Option, or a portion thereof, the exercise price may not be less than the Option Price of the related Option. Each Stock Appreciation Right granted independent of an Option shall entitle a Participant upon exercise to an amount, in cash and/or Shares, equal to (i) the excess of (A) the market value on the exercise date of one Share over (B) the exercise price per Share, times (ii) the number of Shares covered by the Stock Appreciation Right. Each Stock Appreciation Right granted in conjunction with an Option, or a portion thereof, shall entitle a Participant to surrender to the Company the unexercised Option, or any portion thereof, and to receive from the Company in exchange therefor an amount equal to (i) the excess of (A) the market value on the exercise date of one Share over (B) the Option Price per Share, times (ii) the number of Shares covered by the Option, or portion thereof, which is surrendered. Payment shall be made in Shares or in cash, or partly in Shares and partly in cash (any such Shares valued at such market value), as shall be determined by the Committee. Stock Appreciation Rights may be exercised from time to time upon actual receipt by the Company of written notice of exercise stating the number of Shares with respect to which the Stock Appreciation Right is being exercised. The date a notice of exercise is received by the Company shall be the exercise date. No fractional Shares will be issued in payment for Stock Appreciation Rights, but instead cash will be paid for a fraction or, if the Committee should so determine, the number of Shares will be rounded downward to the next whole Share.

(c) *Limitations.* The Committee may impose, in its discretion, such conditions upon the exercisability or transferability of Stock Appreciation Rights as it may deem fit.

(d) *Section 409A Restrictions on Stock Appreciation Right Awards.* Stock Appreciation Rights shall only be granted to employees, independent contractors or Non-Employee Directors providing direct services to any corporation in a chain of corporations or other entities in which each corporation or other entity, startingwi th the Company, has a controlling interest in another corporation or other entity in the chain, ending with the corporation or other entity for which the service provider provides direct services on the date of grant of the Stock Appreciation Right. For this purpose, the term controlling interest has the same meaning as provided in Treas. Reg. Section 1.414(c)-2(b)(2)(i) of the Code, provided that the language "at least 50 percent" is used instead of "at least 80 percent" each place it appears in Treas. Reg. Section 1.414(c)-2(b)(2)(i). In addition, where the use of such stock with respect to the grant of a Stock Appreciation Right to such service provider is based upon legitimate business criteria, the term controlling interest has the same meaning as provided in Treas. Reg. Section 1.414(c)-2(b)(2)(i), provided that the language "at least 20 percent" is used instead of "at least 80 percent" each place it appears in Treas. Reg. Section 1.414(c)-2(b)(2)(i). For purposes of determining ownership of an interest in an organization, the rules of Treas. Reg. Section 1.414(c)-3 and 1.414(c)-4 of the Code apply.

7) **Other Stock-Based Awards**

(a) The Committee, in its sole discretion, may grant or sell Awards of Shares and Awards that are valued in whole or in part by reference to, or otherwise based on the Fair Market Value of, Shares (all such Awards being referred to herein as "Other Stock-Based Awards"). Other Stock-Based Awards shall be in such form, and be subject to such terms and conditions, as the Committee shall determine, including without limitation, the following forms: (i) the right to purchase Shares, (ii) Shares subject to restrictions on transfer until the completion of a specified period of service, the occurrence of an event or the attainment of performance objectives, each as specified by the Committee, and (iii) Shares issuable upon the completion of a specified period of service, the occurrence of an event or the attainment of performance objectives, each as specified by the Committee. Other Stock-Based Awards may be granted alone or in addition to any other Awards made under the Plan. All references in the preceding sentence to "specified period of service," in the case of Other Stock-Based Awards which (i) are not in lieu of cash compensation to employees generally, (ii) are not paid to recruit a new employee in an amount of less than 5% of the total

9

awards available for grant under the Plan or (iii) are not subject to the attainment of performance objectives, shall provide that vesting, restrictions on transfer or some other comparable restriction which incents continued performance of the Participant, will be for a period of not less than three years (although vesting or lapsing may occur in tranches over the three years), unless there is a Change in Control or the Participant retires, becomes disabled or dies. Subject to the provisions of the Plan, the Committee shall have sole and absolute discretion to determine to whom and when such Other Stock-Based Awards will be made, the number of shares of Common Stock to be awarded under (oro therwise related to) such Other Stock-Based Awards and all other terms and conditions of such Awards. The Committee shall determine whether Other Stock-Based Awards shall be settled in cash, Common Stock or a combination of cash and Common Stock.

(b)  With respect to any restricted stock units granted under the Plan, the obligations of the Company or any Subsidiary are limited solely to the delivery of Shares (or, at the discretion of the Committee, cash in lieu thereof to the extent necessary to comply with applicable law, regulation or other local practice, as determined by the Committee) on the date when such Shares are due to be delivered under each Award Agreement. The Company or any Subsidiary may deliver cash to Participants for dividends paid to a holder of shares of Common Stock, for fractional shares or for any amounts payable in cash upon the occurrence of a Change in Control.

(c)  The Committee may establish performance objectives that must be attained in order for the Company to make payments pursuant to Other Stock-Based Awards. The performance objectives for Awards will be based upon one or more of the following criteria: (i) before-tax income and/or net income; (ii) earnings per share; (iii) book value per share; (iv) stock price; (v) return on equity; (vi) expense management; (vii) return on investment; (viii) improvements in capitalization; (ix) profitability of an identifiable business unit or product; (x) profit margins; (xi) budget comparisons; (xii) total return to Stockholders; (xiii) net revenue; and (xiv) economic value added. The foregoing criteria may relate to the Company, one or more of its Subsidiaries or one or more of its divisions or units, or any combination of the foregoing, and may be applied on an absolute basis and/or as relative to one or more peer group companies or indices, or any combination thereof, as the Committee shall determine. In addition, to the degree consistent with Section 162(m) of the Code (or any successor section thereto), the performance goals may be calculated without regard to extraordinary items. The Committee shall determine whether, with respect to a performance period, the applicable performance goals have been met with respect to a given Participant and, if they have, shall so certify and ascertain the amount of the applicable Performance-Based Award. No Performance-Based Awards will be paid for such performance period until such certification is made by the Committee. The amount of the Performance-Based Award actually paid to a given Participant may be less than the amount determined by the applicable performance goal formula, at the discretion of the Committee. The amount of the Performance-Based Award determined by the Committee for a performance period shall be paid to the Participant at such time as determined by the Committee in its sole discretion after the end of such performance period; provided, however, that a Participant may, if and to the extent permitted by the Committee and consistent with the provisions of Sections 162(m) and 409A of the Code, elect to defer payment of a Performance-Based Award. The maximum amount of Other Stock-Based Awards that may be granted during a fiscal year of the Company to any Participant shall be (x) with respect to Other Stock-Based Awards that are denominated or payable in Shares, four million Shares, and (y) with respect to Other Stock-Based Awards that are not denominated or payable in Shares, $50 million.

(d)  The Committee may grant Participants Dividend Equivalent Rights with respect to any Common Stock subject to any Award. The Committee shall specify at the time of grant of any Dividend Equivalent Right whether dividends shall be paid at the time dividends in respect of Common Stock are paid to other shareholders or accumulated and paid out at the time payment is called for under the Awards to which the Dividend Equivalent Right relates.  Other Stock-Based Awards may, at the discretion of the Committee, provide the Participant with dividends or dividend equivalents and voting rights prior to either vesting or earnout.

8) **Unfunded Status of Plan; No Rights as a Shareholder.**

The Plan is intended to constitute an "unfunded" plan for long-term incentive compensation. With respect to any payments not yet made to a Participant, including any Participant-optionee, by the Company, nothing herein contained shall give any Participant any rights that are greater than those of a general creditor of the Company. In its sole discretion, the Committee may authorize the creation of trusts or other arrangements to meet the obligations created under the Plan to deliver Shares or payments in lieu thereof or with respect to Options, Stock Appreciation Rights and Other Stock-Based Awards under the Plan; provided, however, that the existence of such trusts or other arrangements is consistent with the unfunded status of the Plan. Except as otherwise provided in a Participant's Award Agreement, no Participant (or other person having rights pursuant to an Award) shall have any of the rights of a shareholder of the Company with respect to Shares subject to an Award until the delivery of such Shares. Except as otherwise provided in Section 9, no adjustments shall be made for dividends or distributions on (whether ordinary or extraordinary, and whether in cash, Shares, other securities or other property), or other events relating to, Shares subject to an Award for which the record date is prior to the date such Shares are delivered.

9) **Adjustments Upon Certain Events**

Notwithstanding any other provisions in the Plan to the contrary, the following provisions shall apply to all Awards granted under the Plan:

(a) *Generally.* In the event of any change in the outstanding Shares after the Effective Date by reason of any Share dividend or split, reorganization, recapitalization, merger, consolidation, spin-off, combination or transaction or exchange of Shares or other corporate exchange, or any distribution to shareholders of Shares other than regular cash dividends, or any transaction similar to the foregoing, the Committee in its sole discretion and without liability to any person may make such substitution or adjustment, if any, as it deems to be equitable, as to (i) the number or kind of Shares or other securities issued or reserved for issuance pursuant to the Plan or pursuant to outstanding Awards, (ii) the maximum number of Shares for which Awards may be granted during a fiscal year of the Company to any Participant, (iii) the Option Price or exercise price of any Stock Appreciation Right and/or (iv) any other affected terms of such Awards.

(b) *Change in Control.* If a Change in Control occurs after the Effective Date, at any time before such Change in Control the Committee may, but shall not be obligated to, (i) accelerate, vest or cause the restrictions to lapse with respect to, all or any portion of an Award, (ii) cancel Awards for fair value (as determined in the sole discretion ofth e Committee) which, in the case of Options and Stock Appreciation Rights, may equal the excess, if any, of value of the consideration to be paid in the Change in Control transaction to holders of the same number of Shares subject to such Options or Stock Appreciation Rights (or, if no consideration is paid in any such transaction, the Fair Market Value of the Shares subject to such Options or Stock Appreciation Rights) over the aggregate exercise price of such Options or Stock Appreciation Rights, (iii) provide for the issuance of substitute Awards that will substantially preserve the otherwise applicable terms of any affected Awards previously granted hereunder as determined by the Committee in its sole discretion or (iv) provide that for a period of at least 30 days prior to the Change in Control, such Options shall be exercisable as to all shares subject thereto and that upon the occurrence of the Change in Control, such Options shall terminate and be of no further force and effect, provided in any such case the Committee shall not have such power and authority to accelerate the times at which Shares with respect to any Award are delivered if any Award is subject to Section 409A of the Code in a manner that would result in the imposition upon any Participant of an additional tax under Section 409A of the Code.

10) **No Right to Employment or Awards**

The granting of an Award under the Plan shall impose no obligation on the Company or any Affiliate to continue the Employment of a Participant and shall not lessen or affect the Company's or

11

Subsidiary's right to terminate the Employment of such Participant. No Participant or other Person shall have any claim to be granted any Award, and there is no obligation for uniformity of treatment of Participants, or holders or beneficiaries of Awards. The terms and conditions of Awards and the Committee's determinations and interpretations with respect thereto need not be the same with respect to each Participant (whether or not such Participants are similarly situated).

11) **Successors and Assigns**

The Plan and any Award Agreement shall be binding on all successors and assigns of the Company and a Participant, including without limitation, the estate of such Participant and the executor, administrator or trustee of such estate, or any receiver or trustee in bankruptcy or representative of the Participant's creditors.

12) **Transferability of Awards**

Unless otherwise determined by the Committee or as otherwise set forth in any Award Agreement, an Award shall not be sold, transferred, assigned, pledged, hypothecated or otherwise disposed of by the Participant otherwise than by will or by the laws of descent and distribution. An Award exercisable after the death of a Participant may be exercised by the legatees, personal representatives or distributees of the Participant.   Any sale, transfer, assignment, pledge, hypothecation or other disposition in violation of the provisions of this Section 12 shall be void.

13) **Amendments or Termination**

The Board may amend or terminate the Plan, but no amendment or termination shall be made, (a) without the approval of the shareholders of the Company, if such action would (i) (except as is provided in Section 9), increase the total number of Shares reserved for the purposes of the Plan or increase the maximum number of Shares that may be issued hereunder, or the maximum number of Shares for which Awards may be granted to any Participant, (ii) change the class of persons eligible to be Participants; or (iii) extend the date after which Awards cannot be granted under the Plan; or (b) without the consent of a Participant, if such action would diminish any of the rights of the Participant under any Award theretofore granted to such Participant under the Plan; provided, however, that the Committee may amend the Plan and/or any outstanding Awards in such manner as it deems necessary to permit the Plan and/or any outstanding Awards to satisfy applicable requirements of the Code or other applicable laws.

14) **Treatment of Awards**

Absent express provisions to the contrary, an Award under this Plan shall not be deemed compensation for purposes of computing benefits or contributions under any retirement plan of the Company or its Affiliates and shall not affect any benefits under any other benefit plan of any kind now or subsequently in effect under which the availability or amount of benefits is related to level of compensation. This Plan is not a "Pension Plan" or "Welfare Plan" under the Employee Retirement Income Security Act of 1974, as amended.

15) **Choice of Law**

The Plan shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts of laws.

16) **Effectiveness of the Plan**

The Plan shall be effective as of the Effective Date and shall terminate immediately prior to the tenth anniversary of the Effective Date, subject to earlier termination by the Board pursuant to Section 13.

12

PROSPECTUS

# Lehman Brothers Holdings Inc.
## 2005 Stock Incentive Plan
## 95,000,000 Shares of Common Stock

---

This Prospectus pertains to shares of Common Stock, par value $.10 per share ("Common Stock"), of Lehman Brothers Holdings Inc. ("Holdings" or, including its subsidiaries, the "Company") to be delivered in connection with awards of restricted stock units and options, and also pertains to awards of Common Stock and other awards that are related to the Common Stock, pursuant to the Holdings 2005 Stock Incentive Plan, as amended (the "Plan"), to selected officers, employees, consultants and directors of the Company.

---

THIS DOCUMENT CONSTITUTES PART OF A PROSPECTUS COVERING SECURITIES THAT HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933.

---

November 15, 2007

## DOCUMENTS INCORPORATED BY REFERENCE

The following documents previously filed by Holdings with the Securities and Exchange Commission (the "SEC") pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act"), are hereby incorporated by reference in this Prospectus:

(1) Holdings' Annual Report on Form 10-K for the fiscal year ended November 30, 2006, filed with the SEC on February 13, 2007;

(2) Holdings' Quarterly Report on Form 10-Q for the quarterly period ended February 28, 2007 filed with the SEC on April 9, 2007; for the quarterly period ended May 31, 2007 filed with the SEC on July 10, 2007 and for the quarterly period ended August 31, 2007, filed with the SEC on October 10, 2007;

(3) Holdings' Current Reports on Form 8-K, filed with the SEC since November 30, 2006;

(4) The description of Holdings' Common Stock, as contained in Holdings' Form 8-A Registration Statement, filed with the SEC on April 29, 1994; and

(5) Holdings' 2005 Stock Incentive Plan, as amended, filed as Exhibit 10.2 to Holdings' Current Report on Form 8-K, filed with the SEC on November 15, 2007.

Requests should be directed to the Corporate Secretary's Office, Lehman Brothers Holdings Inc., 1301 Avenue of the Americas, New York, New York 10019 (telephone (212) 526-0858).

## THE PLAN

### General Information

The following description summarizes the main features of the Plan. It is intended to give you a working knowledge of how the Plan operates and your entitlements and obligations thereunder. You should read this Prospectus carefully and in full. The description of the Plan contained in this Prospectus is not meant to interpret, extend, or change the Plan itself in any way.

The Plan is a long-term incentive plan which provides for the granting of stock options ("Options"), stock appreciation rights ("SARs"), and other awards of Common Stock and awards that are valued in whole or in part by reference to, or otherwise based on the fair market value of Common Stock, including but not limited to restricted stock ("Restricted Stock") and restricted stock units ("RSUs") (collectively, the "Awards"). Awards under the Plan may be made to any employee, prospective employee, director or consultant of Holdings and its affiliates (collectively, "Participants"). The purpose of the Plan is to strengthen Holdings by providing an incentive to such Participants to encourage them to devote their abilities to increase stockholder value and to sustain excellence.

The Board of Directors of Holdings (the "Board of Directors") adopted the original Plan in February 2005, effective as of May 1, 2005. No further Awards shall be granted under the Plan on or after May 1, 2015. The Board of Directors may at any time terminate, amend, modify or suspend the Plan (subject to applicable stockholder approval requirements); provided, however, that no such amendment, modification, suspension or termination shall materially impair or have a material adverse effect upon any Awards theretofore granted under the Plan, ex cept with the consent of the Participant.

The Plan is not subject to the rules and regulations of the Employee Retirement Income Security Act of 1974, as amended.

Additional information about the Plan and its administration may be obtained by writing to the Compensation Department, 1301 Avenue of the Americas, 6th Floor, New York, New York 10019 or by calling (212) 526-8062.

2

## Administration

Features of the Plan are summarized below, but the summary is qualified in its entirety by reference to the full text of the Plan itself. The Plan has been designed to permit it to be administered to grant "performance-based" Awards to executive officers which are intended to qualify for tax deductibility under Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Code").

The Plan will be administered by the Compensation and Benefits Committee (the "Committee") of the Board of Directors, which is currently comprised exclusively of independent, non-employee Directors. The Committee has discretion to select the individuals to whom Awards will be granted and to determine the type, size and terms of each Award and the authority to administer, construe, implement and interpret the Plan and any Award. The members of the Committee do not serve for fixed periods but may be appointed or removed at any time by the Board of Directors. The Committee has the ability to delegate the authority to grant Awards to officers or employees of the Company to the extent consistent with Rule 16b-3 under the Exchange Act .

The Committee shall have the full and exclusive power and authority to make, and establish the terms and conditions of, any Award to any person eligible to be a Participant, or waive any such terms and conditions at any time, provided, however, the Committee shall not have such power and authority to accelerate or otherwise provide for the times at which shares of Common Stock with respect to any Award are delivered if any Award is subject to Section 409A of the Code in a manner that would result in the imposition upon any Participant of an additional tax under Section 409A of the Code, and provided further, in the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, a Participant is deemed to be a "specified employee" (within the meaning of Section 409A of the Code), payments and/or deliveries of shares of Common Stock in respect of any Award subject to Section 409A of the Code shall not be made prior to the date which is six months after the date of such Participant's separation from service from the Company and all its subsidiaries, to the extent required under Section 409A of the Code and the regulations promulgated thereunder. Without limiting the foregoing, the Committee shall be entitled, among other things, to make non-uniform and selective determinations under Award agreements, and to enter into non-uniform and selective Award agreements, as to (i) the persons to receive Awards, (ii) the terms and provisions of Awards, (iii) whether a Participant's employment has been terminated for purposes of the Plan and (iv) any adjustments to be made to Awards.

## Stock Subject to the Plan

A total of 95 million shares of Common Stock are subject to Awards under the Plan, subject to adjustment in accordance with the terms of the Plan. In addition, shares of Common Stock authorized for issuance under the Holdings 1996 Management Ownership Plan and the Holdings Employee Incentive Plan, each of which terminated according to its terms in 2006, that remained unawarded upon the expiration of those plans are available for Awards under the Plan, as well as the shares that are otherwise reacquired or not payable or issuable by Holdings as described below. The shares of Common Stock issuable under the Plan may be authorized and unissued shares of Common Stock, authorized and issued shares of Common Stock held in Holdings' treasury, or any combination thereof. If any shares of Common Stock subject to repurchase or forfeiture rights under an award that has been granted under the Plan, the Holdings 1996 Management Ownership Plan or the Holdings Employee Incentive Plan are reacquired by Holdings, or if any shares of Common Stock are withheld or delivered pursuant to the terms of the Plan in payment of any applicable exercise price or tax withholding obligation, or if any award relating to shares of Common Stock under any of such plans is canceled, terminates or expires unexercised (except with respect to a stock option that terminates on the exercise of a stock appreciation right) or, for any other reason is not payable, the shares of Common Stock which were issued or would have been issuable pursuant thereto will again become available for the purpose of granting Awards. In any calendar year, no individualPa rticipant may receive Options, SARs or other stock-based Awards under the Plan attributable to more than four million shares of Common Stock, subject to adjustment in accordance with the terms of the Plan.

3

 Except as otherwise provided in a Participant's Award agreement, no Participant (or other person having rights pursuant to an Award) shall have any of the rights of a shareholder of the Company with respect to shares of Common Stock subject to an Award until the delivery of such shares of Common Stock.

### Awards

Set forth below are certain types of Awards which may be granted under the Plan.

*Stock Options.* An Option, which may be a non-qualified stock option ("NQSO") or an incentive stock option ("ISO") under Section 422 of the Code, is the right to purchase a specified number of shares of Common Stock at a price (the "Option Price") fixed by the Committee. The Option Price of an Option may be no less than the fair market value of the underlying Common Stock on the date of grant.

Unless otherwise provided in an optionee's Award agreement, options are not transferable during the Participant's lifetime. In no event shall an Option be exercisable more than ten years after the date it is granted. Options become exercisable at such times and in such installments as the Committee shall determine. The Committee may also accelerate the period for exercise of any or all Options held by a Participant. Payment of the Option Price must be made in full at the time of exercise of the Option by any of the following methods, at the election of the Committee: (i) in cash; (ii) by tendering to Holdings shares of Common Stock having a fair market value equal to the Option Price, which shares have been held by the Participant for at least six months and which meet such other requirements as may be imposed by the Committee; (iii) partly in cash and partly in Common Stock; (iv) by certain withholding methods that constitute a cashless exercise through the delivery of irrevocable instructions by the Participant to a broker to sell the Common Stock received upon exercise of the Option and to deliver promptly to Holdings an amount out of the proceeds equal to the aggregate Option Price; or (v) by other means that the Committee deems appropriate.

*Stock Appreciation Rights.* A SAR may be granted alone or in tandem with an Option. If granted in tandem with an Option, the SAR must cover the same (or a fewer) number of shares of Common Stock covered by the related Option and will be generally subject to the same terms and conditions as the related Option. Upon exercise, a SAR will entitle the Participant to receive from Holdings an amount equal to the excess of the fair market value of a share of Common Stock on the date of exercise of the SAR minus the per SAR exercise price (or Option Price, as applicable), multiplied by the number of shares of Common Stock with respect to which the SAR is exercised. Upon the exercise of a SAR granted in connection with an Option, the related Option will be canceled to the extent of the number of shares as to which the SAR is exercised, and upon the exercise of the Option granted in connection with a SAR or the surrender of such Option, the related SAR will be canceled to the extent of the numbero f shares as to which the Option is exercised or surrendered. The Committee will determine whether the SAR will be settled in cash, Common Stock or a combination of cash and Common Stock.

*Other Stock Based Awards.* Other Awards of Common Stock and Awards that are valued in whole or in part by reference to, or otherwise based on the fair market value of Common Stock (all such Awards being referred to herein as "Other Stock-based Awards"), may be granted under the Plan in the discretion of the Committee. Other Stock-based Awards will be in such form as the Committee will determine, including without limitation, (i) the right to purchase shares of Common Stock, (ii) shares of Common Stock subject to restrictions on transfer until the completion of a specified period of service, the occurrence of an event or the attainment of performance objectives, each as specified by the Committee, (iii) shares of Common Stock issuable upon the completion of a specified period of service, the occurrence of an event, or the attainment of performance objectives, each as specified by the Committee, and (iv) dividend equivalent rights with respect to Common Stock subject to any Award. Any Other Stock-based Awards that are granted subject to the completion of a specified period of service by the Participant that are (i) not in lieu of cash compensation to employees generally, (ii) not paid to recruit a new employee in an amount less than 5% of the total Awards available for grant under the Plan or (iii) not subject to the attainment of performance objectives, will provide that vesting, restrictions on transfer, or some other comparable restriction that encourages continued performance of the Participant, will in any such case be

4

for a period of not less than three years (although vesting or lapsing of restrictions may occur in installments over such period), unless there is a "Change in Control" of Holdings (as defined in the Plan) or the Participant retires, becomes disabled or dies. Other Stock-based Awards may be granted alone or in addition to any other Awards made under the Plan.

With respect to any RSUs granted under the Plan, the obligations of the Company are limited solely to the delivery of shares of Common Stock on the date when such shares of Common Stock are due to be delivered under each Award agreement, and in no event will the Company become obligated to pay cash in respect of such obligation (except that the Company may pay to the Participant amounts in cash in respect of a RSU equal to cash dividends paid to a holder of the same number of shares of Common Stock that are subject to the RSU, for fractional shares or for any amounts payable in cash upon the occurrence of a Change in Control).

The Committee may establish performance objectives that must be attained in order for Holdings to make payments pursuant to Other Stock-based Awards. Accordingly, unless the Committee determines at the time of grant not to qualify such an award as performance-based compensation under Section 162(m) of the Code, the performance objectives for such Other Stock-based Awards made under the Plan will be based upon one or more of the following criteria: (i) pre-tax income or net income; (ii) earnings per share; (iii) book value per share; (iv) stock price; (v) return on equity; (vi) expense management; (vii) return on investment; (viii) improvements in capitalization; (ix) profitability of an identifiable business unit or product; (x) profit margins; (xi) budget comparisons; (xii) total return to stockholders; (xiii) net revenue; and (xiv) economic value added. The Committee must certify as to the attainment of the applicable performance goals prior to payment of any Other Stock-based Award, and may reduce the amount of any Other Stock-based Award. Subject to the provisions of the Plan, the Committee will have sole and absolute discretion to determine to whom and when such OtherSt ock-based Awards will be made, the number of shares of Common Stock to be awarded under (or otherwise related to) such Other Stock-based Awards, and all other terms and conditions of such Awards. The Committee will determine whether Other Stock-based Awards will be settled in cash, Common Stock ora combination of cash and Common Stock. The maximum amount of Other Stock-based Awards that may be granted during any calendar year to any Participant in the Plan will be (i) with respect to Other Stock-based Awards that are denominated or payable in Common Stock, four million shares of Common Stock, and (ii) with respect to Other Stock-based Awards that are not denominated or payable in Common Stock, $50 million.

*Additional Information.* Under the Plan, if there is any change in the outstanding shares of Common Stock by reason of any stock dividend or split, reorganization, recapitalization, merger, consolidation, spin-off, combination or transaction or exchange of shares of Common Stock or other corporate exchange,o r any distribution to shareholders of shares of Common Stock other than regular cash dividends, or any transaction similar to the foregoing, the Committee in its sole discretion and without liability to any person may make such substitution or adjustment, if any, as it deems to be equitable, as to the number or kind of securities that may be issued under the Plan and in the terms of outstanding Awards. The Committee may waive any terms and conditions of an Award, including accelerating or waiving any vesting conditions on an Award. If a Change in Control, as defined below, occurs, the Committee may, but is not required to, (i) accelerate or waive vesting or exercise periods or the lapse of restrictions on all or any portion of any Award, (ii) cancel the Awards for fair value (as determined in the discretion of the Committee), (iii) provide for the issuance of substitute Awards that will substantially preserve the terms of the original Awards or (iv) provide for the full exercisability of Options or SARs for a period of at least 30 days prior to the occurrence of the Change in Control.

In general, with respect to any Award granted on or prior to November 8, 2007, a "Change in Control" is deemed to occur when: (i) 20% or more of the combined voting power of Holdings' voting securities is acquired in certain instances (whether through a tender offer, merger, or otherwise); (ii) individuals who, as of the effective date of the Plan, are members of the Board of Directors or whose election or nomination is approved by a vote of at least two-thirds of such initial directors (the "Incumbent Board") cease, subject to certain exceptions, to constitute at least a majority of the Board of Directors; (iii) a merger, consolidation, recapitalization or reorganization involving Holdings occurs, whereby the stockholders immediately prior to such transaction cease to hold at least 50% of the combined voting power

5

of the outstanding voting securities of the corporation resulting from such transaction, members of the Incumbent Board immediately prior to the execution of the agreement providing for such transaction cease to constitute at least a 50% of the board of directors of the resulting corporation, or a person or entity becomes the beneficial owner of 20% or more of the combined voting power of the resulting corporation; (iv) a liquidation of Holdings or a sale or other disposition of all or substantially all of the assets of Holdings; or (v) any event occurs that would constitute a "Change in Control" within the meaning of such term with respect to any Award granted after November 8, 2007.

However, with respect to any Award granted after November 8, 2007, a "Change in Control" is deemed to occur when: (i) 70% or more of the combined voting power of Holdings' voting securities is acquired in certain instances (whether through a tender offer, merger, or otherwise); (ii) a merger, consolidation, recapitalization or reorganization involving Holdings occurs, whereby the stockholders immediately prior to such transaction cease to hold at least 30% of the combined voting power of the outstanding voting securities of the corporation resulting from such transaction, the individuals who were members of the Board of Directors immediately prior to the execution of the agreement providing for such transaction cease to constitute at least 50% of the board of directors of the resulting corporation, or a person or entity becomes the beneficial owner of 70% or more of the combined voting power of the resulting corporation; (iii) within a consecutive twelve month period, a majority of the individuals who are members of the Board of Directors are replaced with individuals who do not receive endorsement by a majority of the Board of Directors before the date of the appointment or election of such individuals; or (iv) a sale or other disposition of all or substantially all of the assets of Holdings.

Holdings shall require payment of any amount it may determine to be necessary to withhold for federal, state, local or other taxes or to otherwise satisfy any tax obligations due as a result of the exercise, grant, vesting of, or payment pursuant to, an Award. Unless the Committee specifies otherwise, the Participant may elect to pay a portion or all of such withholding or other taxes by (i) delivery, in cash or by check, (ii) delivery in shares of Common Stock or (iii) having shares of Common Stock withheld by Holdings with a market value equal to the minimum statutory withholding rate from any shares of Common Stock that would have otherwise been received by the Participant.

Unless otherwise determined by the Committee or as otherwise set forth in any Award, an Award shall not be transferable or assignable by a Participant otherwise than by will or by the laws of descent and distribution. No person shall have any claim or right to the grant of an Award, and the grant of an Award shall not be construed as giving a Participant the right to be retained in the employment of the Company or any of its subsidiaries or to be eligible for any subsequent Awards. A Participant's rights under and interests in the Plan may be forfeited if such Participant ceases to be employed by the Company.

The Committee or the Board may amend or terminate the Plan or any portion hereof at any time, subject to the following restrictions: (a) that no amendment to the Plan shall be made without approval of the stockholders which shall (i) increase (except as provided in the third preceding paragraph) shares of Common Stock or the percentage of shares of Common Stock reserved for issuance pursuant to the Plan; (ii) change the class of employees eligible to be Participants in the Plan; or (iii) extend the date after which Awards cannot be granted under the Plan and (b) no amendment may be made without the consent of a participant if the amendment would diminish the rights of the participant under any Award previously granted to that participant. However, the Committee may amend the Plan as it deems necessary to permit the grant of Awards meeting the requirements of applicable laws.

**Possible Restrictions on Resale**

The Plan shall be administered to comply with the Securities Act of 1933, as amended (the "Securities Act"), and the Exchange Act. Reoffers or resales of Common Stock acquired by an individual under the Plan who may be deemed an "affiliate" of Holdings (that is, generally, a director or executive officer of Holdings or a person who directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, Holdings) must be made only (i) pursuant to a "reoffer prospectus" complying with the provisions of the Securities Act and the rules and regulations thereunder,

(ii) in compliance with Rule 144 under the Securities Act, or (iii) in a transaction otherwise exempt from the registration provisions of the Securities Act.

Common Stock acquired pursuant to the Plan by all other individuals is not restricted and may be resold through normal securities market channels.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF AWARDS

Certain of the federal income tax consequences to recipients of Awards and their employers should generally be as set forth in the following summary. For purposes of this discussion, the term "employer" shall be deemed to include the employer of an employee receiving an Award and the taxpayer for whom a non-employee Award recipient performs services. The following is a summary of United States federal income tax rules currently applicable to the Plan and the Awards that may affect the income tax consequences of Participants and employers who are United States taxpayers. This is only a summary and is not intended to be a complete description of all possible tax consequences under the current provisions of the Code. You should consult with your personal tax advisor concerning the federal, state, local or other tax implications of the Plan and of the Awards before making any decision with respect to your Awards.

*Options*

An employee to whom an ISO is granted will not recognize income at the time of grant or exercise of such Option. No federal income tax deduction will be allowable to the employee's employer upon the grant or exercise of such ISO. However, upon the exercise of an ISO, special alternative minimum tax rules apply for the employee. When the employee sells such shares more than one year after the date of transfer of such shares and more than two years after the date of grant of such ISO, the employee will normally recognize a long-term capital gain or loss, as the case may be, equal to the difference, if any, between the sale prices of such shares and the Option exercise price. If the employee does not hold such shares for this period, when the employee sells such shares, the employee will recognize ordinary compensation income and possibly capital gain or loss in such amounts as are prescribed by the Code and regulations thereunder.

A Participant to whom a NQSO is granted will not recognize income at the time of grant of such Option. When such Participant exercises such NQSO, the Participant will recognize ordinary compensation income equal to the excess of the fair market value, as of the date of Option exercise, of the share the Participant receives over the Option Price. Generally, the tax basis of such shares to such Participant will be equal to the Option Price paid plus the amount includable in the optionee's gross income, and the Participant's holding period for such shares will commence on the date after such exercise. However, where the Participant uses shares to exercise the Option, a number of shares equal to the shares used to exercise the Option will retain their original basis and holding period, the Participant's basis in the remaining shares will be their fair market value on the date of Option exercise, and the Participant's holding period for such shares will commence on the date after such exercise. When the employee sells any shares, the employee will recognize short-term or long-term capital gain or loss, as the case may be, depending on the holding period, equal to the difference, if any, between the sale prices of such shares and the tax basis of such shares.

*Restricted Stock*

Unless an election is made by the Participant under Section 83(b) of the Code, the grant of an Award of Restricted Stock will have no immediate tax consequences to the Participant. Generally, upon the lapse of restrictions (as determined by the applicable restricted stock agreement between the Participant and Holdings), a Participant will recognize ordinary income in an amount equal to the product of (i) the fair market value of a share of Common Stock on the date on which the restrictions lapse, less any amount paid with respect to the Award of Restricted Stock, multiplied by (ii) the number of shares of Restricted Stock with respect to which restrictions lapse on such date. The Participant's tax basis will be equal to the sum of the amount of ordinary income recognized upon the lapse of restrictions and any amount paid for such Restricted Stock. The participant's holding period will commence on the date on which the restrictions lapse.

7

A Participant may make an election under Section 83(b) of the Code within 30 days after the date of transfer of an Award of Restricted Stock to recognize ordinary income on the date of award based an the fair market value of Common Stock on such date. An employee making such an election will have a tax basis in the shares of Restricted Stock equal to the sum of the amount the employee recognizes as ordinary income and any amount paid for such Restricted Stock, and the employee's holding period for such Restricted Stock for tax purposes will commence an the date after such date.

With respect to shares of Restricted Stock upon which restrictions have lapsed, when the employee sells such shares, the employee will recognize capital gain or loss consistent with the treatment of the sale of shares received upon the exercise of NQSOs, as described above.

### Restricted Stock Units

A Participant to whom an RSU is granted will not recognize income at the time of grant of such RSU. Upon delivery of shares of Common Stock in respect of an RSU, a Participant will recognize ordinary income in an amount equal to the product of (i) the fair market value of a share of Common Stock an the date on which the Common Stock is delivered, multiplied by (ii) the number of shares of Common Stock delivered.

Any dividends or dividend equivalents payable in respect of Restricted Stock or RSUs shall be taxable as ordinary income to the Participant upon receipt thereof.

### Other Stock-based Awards

With respect to Other Stock-based Awards paid in cash or Common Stock, Participants will generally recognize income equal to the fair market value of the Award on the date on which the Award is delivered to the recipient.

### Code Section 409A

The American Jobs Creation Act of 2004 introduced a new section of the Code (Section 409A) covering certain nonqualified deferred compensation arrangements. Section 409A generally establishes new rules that must be followed with respect to covered deferred compensation arrangements in order to avoid the imposition of an additional 20% tax (plus interest) upon the service provider who is entitled to receive the deferred compensation. Certain Awards that may be granted under the Plan may constitute "deferred compensation" within the meaning of and subject to Section 409A. While the Committee intends to administer and operate the Plan and establish terms (or make required amendments) with respect to Awards subject to Section 409A in a manner that will avoid the imposition of additional taxation under Section 409A upon a Participant, there can be no assurance that additional taxation under Section 409A will be avoided in all cases. In the event the Company is required to delay delivery of shares or any other payment under an Award in order to avoid the imposition of an additional tax under Section 409A, the Company will deliver such shares (or make such payment) on the first day that would not result in the Participant incurring any tax liability under Section 409A. The Committee may amend the Plan and outstanding Awards to preserve the intended benefits ofAwa rds granted under the Plan and to avoid the imposition of an additional tax under Section 409A of the Code.

### General

Ordinary income recognized by virtue of the exercise of NQSOs, the lapse of restrictions on Restricted Stock or RSUs or payments made in cash or shares of Common Stock is subject to applicable tax withholding as required by law.

Holdings generally will be entitled to a federal tax deduction to the extent permitted by the Code at the time and in the amount that ordinary income is recognized by Participants.

The discussion set forth above does not purport to be a complete analysis of all potential tax consequences relevant to recipients of Options or other Awards or to their employers or to describe tax

8

consequences based on particular circumstances. It is based on federal income tax law and interpretational authorities as of the date of this Prospectus, which are subject to change at any time. Each holder of an Option oro ther Award under the Plan should consult the holder's own accountant, legal counsel or other financial advisor regarding the tax consequences of participation in the Plan.

## LEGAL OPINIONS

The validity of the Common Stock offered hereby has been passed upon for Holdings by Karen Corrigan, Vice President and Assistant Secretary of Holdings.

## INDEPENDENT ACCOUNTANTS

The consolidated financial statements and financial statement schedule of the Company as of November 30, 2006, and for each of the years in the three-year period ended November 30, 2006, and management's assessment of the effectiveness of internal control over financial reporting as of November 30, 2006 of the Company have been audited by Ernst & Young LLP, independent certified public accountants, as set forth in their reports thereon appearing in the Company's annual report on Form 10-K for the year ended November 30, 2006 and incorporated herein by reference. The consolidated financial statements of the Company referred to above are incorporated by reference in this prospectus in reliance upon such report given on the authority of Ernst & Young LLP as experts in accounting and auditing. To the extent that Ernst & Young LLP audits and reports on the Company's consolidated financial statements and management's assessment of internal control over financial reporting issued at future dates, and consents to the use of their reports thereon, such consolidated financial statements and management's assessment of internal control over financial reporting also will be incorporated by reference in this prospectus in reliance upon their reports given on said authority.

9

No dealer, salesperson or other person has been authorized to give any information or to make any representations not contained in this Prospectus and, if given or made, such information or representations must not be relied upon as having been authorized by Holdings or any agent or underwriter. This Prospectus does not constitute an offer of any securities other than those to which it relates or an offer to sell, or a solicitation of an offer to buy, to any person to whom it is unlawful to make such offer in any jurisdiction where such offer or solicitation would be unlawful. Neither the delivery of this Prospectus nor any sale made hereunder shall, under any circumstances, create any implication that the information contained herein is correct as of any time subsequent to the date hereof.

TABLE OF CONTENTS

**Page**

DOCUMENTS INCORPORATED BY
    REFERENCE ............................................2
THE PLAN ...............................................2
CERTAIN FEDERAL INCOME TAX
    CONSEQUENCES OF AWARDS .............7
LEGAL OPINIONS ..........................................9
INDEPENDENT ACCOUNTANTS ...................9

# Lehman Brothers Holdings Inc.
## 2005 Stock Incentive Plan

### 95,000,000 Shares of Common Stock

**PROSPECTUS**
November 15, 2007