# Exhibit 3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br>   LEHMAN BROTHERS HOLDINGS INC., et al.,<br>       *Debtors.* | **CHAPTER 11**<br><br>**CASE NO. 08-13555 (SCC)** |
| MOORE MACRO FUND, LP, MOORE MACRO MARKETS FUND (MASTER), LP, SJL MOORE, LTD., JR MOORE, LP, LM MOORE LP, MF MOORE LP (formerly MOORE GLOBAL FIXED INCOME FUND (MASTER) LP), MOORE GLOBAL INVESTMENTS, LTD., MOORE EMERGING MARKETS FUND (MASTER) LP, MOORE CAPITAL ADVISORS, L.L.C., and TRADE PROCESS CORPORATION,<br><br>       *Plaintiffs,*<br><br>       *-against-*<br><br>LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS SPECIAL FINANCING INC., and LEHMAN BROTHERS COMMERCIAL CORPORATION,<br><br>       *Defendants.* | **ADVERSARY PROCEEDING NO: 14-02021-scc** |

**PLAINTIFFS MOORE MACRO FUND, LP, MOORE MACRO MARKETS FUND (MASTER), LP, SJL MOORE, LTD., JR MOORE, LP, LM MOORE LP, MF MOORE LP (formerly MOORE GLOBAL FIXED INCOME FUND (MASTER) LP), MOORE GLOBAL INVESTMENTS, LTD., MOORE EMERGING MARKETS FUND (MASTER) LP, MOORE CAPITAL ADVISORS, L.L.C., and TRADE PROCESS CORPORATION**

**SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiffs Moore Macro Fund, LP, Moore Macro Markets Fund (Master), LP, SJL Moore, Ltd., JR Moore, LP, LM Moore LP, MF Moore LP (formerly Moore Global Fixed Income Fund (Master) LP), Moore Global Investments, Ltd., Moore Emerging Markets Fund (Master) LP, Moore Capital Advisors, L.L.C., and Trade Process Corporation, through their attorneys, request that Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., and Lehman Brothers Commercial Corporation

produce the following documents and things pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7034, by December 26, 2014, at the offices of Schlam, Stone & Dolan, LLP, 26 Broadway, New York, NY 10004.

**DEFINITIONS**

1. "All" means all or any.

2. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. "Any" means all or any.

4. "Concerning" or "concerns" means, in whole or in part, relating to, referring to, describing, evidencing, constituting, containing, discussing, dealing with, reflecting or pertaining to in any way whatsoever.

5. "Document" or "Documents" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, without limitation, Electronically Stored Information ("ESI", as defined below); all drafts; communications; correspondence; memoranda; records; reports; statements; books; reports and/or summaries of personal conversations or interviews; diaries; calendars; telephone logs; graphs; charts; diagrams; tables; photographs; recordings; tapes, microfilms; minutes, records, reports and/or summaries of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing. A draft or non-identical copy of any Document, whether due to the addition of marginalia or other change, is a separate Document within the meaning of this

2

term. Where the electronic and hard copy versions of any Document are separate Documents per this definition, both the electronic and hard copy versions should be produced.

6. "ESI" means electronically stored information including, without limitation, the following:

a. information that is generated, received, processed, and recorded by computers and other electronic devices including, without limitation, voicemail;

b. internal or external web sites;

c. output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger$^{TM}$ (or similar programs) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d. activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., Palm Pilot, Blackberry, or similar device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein.

7. "MMF" refers to plaintiff Moore Macro Fund, LP.

8. "MCM" refers to non-party Moore Capital Management, LP.

9. "MMM" refers to plaintiff Moore Macro Markets Fund (Master), LP.

10. "SLJ" refers to plaintiff SJL Moore, Ltd.

11. "JR" refers to plaintiff JR Moore, LP.

3

12. "LM" refers to plaintiff LM Moore LP.

13. "MF" refers to plaintiff MF Moore LP (formerly Moore Global Fixed Income Fund (Master) LP).

14. "MGI" refers to plaintiff Moore Global Investments, Ltd.

15. "MEM" refers to plaintiff Moore Emerging Markets Funder (Master) LP.

16. "MCA" refers to Moore Capital Advisors, L.L.C.

17. "TradePro" refers to plaintiff Trade Process Corporation.

18. "Moore Entities" refers to MMF, MCM, MMM, SLJ, JR, LM, MF, MGI, MEM, MCA and TradePro.

19. "MMF/LBSF Valuation" refers to statement of valuation sent to LBSF by MMF on June 2, 2009.

20. "MMF/LBCC Valuation" refers to statement of valuation sent to LBSF by MMF on June 17, 2009.

21. "TradePro/LBCC Valuation" refers to statement of valuation sent to LBCC by TradePro on July 22, 2009.

22. "SJL/LBSF Valuation" refers to statement of valuation sent to LBSF by SJL on July 22, 2009.

23. "JR/LBSF Valuation" refers to statement of valuation sent to LBSF by JR on July 22, 2009.

24. "MF/LBSF Valuation" refers to statement of valuation sent to LBSF by MF on July 22, 2009.

25. "LM/LBSF Valuation" refers to statement of valuation sent to LBSF by LM on August 7, 2009.

26. "MMM/LBSF Valuation" refers to statement of valuation sent to LBSF by MMM on August 25, 2009.

27.  "Moore Valuations" refers to MMF/LBSF Valuation, MMF/LBCC Valuation, TradePro/LBCC Valuation, SJL/LBSF Valuation, JR/LBSF Valuation, MF/LBSF Valuation, LM/LBSF Valuation and MMM/LBSF Valuation.

28.  "LBHI" refers to defendant Lehman Brothers Holdings Inc.

29.  "LBSF" refers to defendant Lehman Brothers Special Financing Inc.

30.  "LBCC" refers to defendant Lehman Brothers Commercial Corporation.

31.  "Lehman" refers to LBHI, LBSF and LBCC collectively.

32.  "Record" means any Document intended to record an event, transaction, or communication, including, without limitation, journals, books of account, vouchers, expense account reports, receipts, time sheets, transaction files, phone logs, daily, monthly or yearly statements, invoices, sales slips, sales orders, confirmation of purchases or sales orders, purchase orders, canceled checks, ledger entries, deposit slips, savings books, certificates of deposits, computer records or printouts, minute books, minutes of meetings of the board of directors or shareholders, resolutions, stock certificates and the like.

33.  "Tangible thing" means any object, property, or thing of a physical or tangible nature and shall include, but not be limited to, photographs, drawings, other renderings, computer simulations, videotapes, and tangible or real evidence or exhibits.

34.  The use of the singular form of any word includes the plural and vice versa.

**INSTRUCTIONS**

1.  Unless the context of a particular request indicates otherwise, the relevant time period to which each request refers is from September 15, 2008, to the present.

5

2.  The past tense form shall be construed to include the present tense, and vice versa, whenever such a dual construction will serve to bring within the scope of a request any response that would otherwise not be within its scope.

3.  Each category of Documents in these requests extends to any and all Documents in your possession, custody, or control. A Document shall be deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such Document in whole or in part; or (b) have a right by contract, statute, or otherwise to use, inspect, examine, or copy such Document; or (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such Document; or (d) as a practical matter, have been able to use, inspect, examine, or copy such Document. Such Documents shall include, but are not limited to, Documents that are in the custody of any of your attorneys, representatives, or other agents.

4.  All requests for the production of Documents shall be construed to include any additional Documents responsive to these requests that are discovered or produced after the date of production.

5.  All Documents should be produced in the order in which they appear in the files of the producing party, organized by source, and should contain a clear indication of where each Document ends and the next begins. Documents maintained in a file folder or binder should be preceded by the file folder or binder label, if one exists, and should contain a clear indication of where the file folder or binder begins and ends. All attachments to a Document should be produced with the Document.

6.  With respect to ESI:

a.  All electronic mail, HTML and dynamic files (including, but not limited to spreadsheets and databases) responsive to these requests that are maintained in the usual

course of business in electronic format shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

      b.      All other Documents responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in properly unitized, single-page TIFF Group IV format complete with full text extracts and all associated metadata.

      c.      All Documents responsive to these requests shall be produced with the metadata normally contained within such Documents. If such metadata is not available, each Document shall be accompanied by a listing of all file properties concerning such Document, including, but not limited to, all information concerning the date(s) the Document was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the Document.

      d.      Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use the ESI. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with MGI's counsel. If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden or cost you claim is associated with the search or production of such ESI.

      7.      If you object to the production of any Document or tangible thing within the scope of the requests, you must fully set forth your objections in writing, provide a list of all such Documents and tangible things being withheld, and state the following for

each such Document or tangible thing: (i) the type of Document, e.g. letter or memorandum; (ii) the general subject matter of the Document; (iii) the date of the Document; (iv) the location and custodian of the Document; and (v) the author of the Document, the addressee of the Document, any other recipients shown in the Document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

8.     If any Document or data, including ESI, that you are requested to produce or identify herein was at one time in existence, but has been lost, discarded, or destroyed, identify in writing each Document and provide the following information: (a) the date or approximate date it was lost, discarded, or destroyed; (b) the circumstances and manner in which it was lost, discarded, or destroyed; (c) the reason or reasons for disposing of the Document (if discarded or destroyed), including whether such destruction, etc. was pursuant to a written records retention or destruction policy; (d) the identity of all persons authorizing the Document and/or having knowledge of the Document; (e) the identity of the persons who lost, discarded, or destroyed the Document; (f) the identity of any persons having knowledge of the contents thereof; and (g) a detailed summary of the nature and contents of the Document, including the author(s) of the Document(s), the name of the person(s) to whom the Document(s) was (were) delivered or addressed, including indicated or blind copy recipients, the date of the Document (s), and a description of the subject matter thereof, including any attachment or appendices, and the number of pages.

9.     If you object in whole or in part to any request based on a claim of privilege, provide a list of the Documents being withheld and for each such Document: (a) state the nature of the privilege which is being claimed and, if the privilege is governed by state law, which state's privilege rule is being invoked and (b) provide a description of

8

the Document, including (i) the type of Document, e.g. letter or memorandum; (ii) the general subject matter of the Document; (iii) the date of the Document; (iv) the location and custodian of the Document; and (v) the author of the Document, the addressee of the Document, any other recipients shown in the Document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

10. If any of these Documents cannot be produced in full, you are requested to produce them to the fullest extent possible, specifying clearly the reasons for your inability to produce the remainder and stating any information, knowledge, or belief you have concerning the unproduced portion.

11. The specificity of any request herein shall not be construed to limit the generality or reach of any other request herein.

**REQUESTS**

1. Documents sufficient to show the dates of any Valuation Statements (as that term is defined in Defendants' Answer, Counterclaims and Claim Objections) delivered to Lehman by any counterparty to any ISDA Master Agreement with Lehman, excluding the Moore Valuations.

2. Documents sufficient to show the dates and amounts of payments by any counterparty (excluding the Moore Entities) to Lehman pursuant to any ISDA Master Agreement with Lehman, as reflected in the Valuation Statements referred to in Request No. 1.

Dated: New York, New York
November 26, 2014

**SCHLAM STONE & DOLAN LLP**

By:\_\_\_\_\_/s/_____
   Bennette D. Kramer
   Jeffrey M. Eilender
   Erik S. Groothuis
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677

-and-

**TEIGLAND-HUNT LLP**

By:\_\_\_\_\_/s/_____
   Lauren Teigland-Hunt
127 West 24th Street
New York, New York 10011
Telephone: (212) 269-1600
Facsimile: (212) 269-1580

*Attorneys for Plaintiffs Moore Macro Fund, LP, Moore Macro Markets Fund (Master), LP, SJL Moore, Ltd., JR Moore, LP, LM Moore LP, MF Moore LP (formerly Moore Global Fixed Income Fund (Master) LP), Moore Global Investments, Ltd., Moore Emerging Markets Fund (Master) LP, Moore Capital Advisors, L.L.C., and Trade Process Corporation*