# Exhibit 7

## JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-3427
tschaffer@JonesDay.com

March 30, 2015

VIA E-MAIL AND OVERNIGHT MAIL

Erik S. Groothuis
Schlam Stone & Dolan
26 Broadway
New York, NY 10004

Re:  *Moore Macro Fund, et al. v. Lehman Bros. Holdings, Inc. et al.*, 14-ap-02021 (SCC)

Dear Erik:

    We write in an attempt to resolve the various discovery disputes that have arisen between the parties.

    First, we remind you of your outstanding obligations. Despite Lehman's repeated requests, Moore has failed to provide information concerning its behavior in the days immediately following termination of the trades. Specifically, Moore has failed to fulfill its undertakings to provide Lehman with information concerning end-of-day marks for the Terminated Transactions at issue in this dispute, information concerning Moore's actual losses or gains as a result of the Terminated Transactions, and, as discussed in chambers with Judge Chapman, information regarding replacement or rehedging trades. We trust that you will provide this information in the very near future.

    Furthermore, Moore stated that it would articulate in writing the scope of its intended waiver of the attorney client privilege with regard to the assignment and transfer of claims. We anticipate that you will provide us with this document shortly.

    Turning to the issues that Moore raised in its February 10 letter, we hope to reach resolution on some of them quickly. As an initial matter, Lehman will not be disputing the six foreign exchange trades you inquired about in your letter. Although Lehman does not agree that the valuation process for these trades complied with the Market Quotation process as defined in the ISDA Master Agreement, removing these trades from dispute resolves all foreign exchange trade valuation differences. However, with respect to the remaining two trades, Moore Macro Fund specifically designated them as having been valued under the Loss methodology in its valuation statement and they remain part of the population of disputed transactions (the "Disputed Transactions").

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

**JONES DAY**

Erik S. Groothuis
March 30, 2015
Page 2

  Enclosed herewith is an updated spreadsheet for the Disputed Transactions, which has been supplemented to include the price sources Lehman utilized in determining its valuations.

  Next, Lehman has considered your proposal regarding valuations received from other counterparties, and is willing to agree to the following. With regard to both the CDS trades and the commodities trades you identified, Lehman is willing to provide valuations submitted to Lehman by counterparties on comparable trades where the Early Termination Date was September 15 or 16, 2008. Lehman is not, however, readily able to determine the date, time of day or methodology employed by the counterparties in determining these values, and Lehman is not willing to provide the confirmations or the counterparties' support for their valuations. The information to be provided will necessarily be anonymized, although Lehman is willing to group the valuations by the kind of entity that submitted them. We anticipate that we can deliver this information to you within the next two weeks.

  Lehman maintains that the valuation work it performed post-bankruptcy in anticipation of litigation is protected work product. Nonetheless, Lehman has agreed to consider providing you with valuation information developed post-bankruptcy for valuations on specific trades it discussed with Moore. Lehman has reviewed the historical correspondence between the parties and determined that Lehman had disclosed its valuations on two transactions that remain within the population of Disputed Transactions: the credit default swap on Rosgos between LBSF and LM Moore and the credit default swap on Argentina between LBSF and Moore Macro Markets Fund (Master) for which Moore maintains it was unable to obtain any Market Quotations. Although Lehman has not to date been able to identify "back-up" information relating to the values that were communicated to Moore, Lehman will continue to search its records and anticipates that it will be in a position provide a definitive response within the next two weeks. Any such information that Lehman provides you, however, shall not be construed as a waiver of attorney client privilege, work product or any other privilege with respect to any other information you may seek. A third Disputed Transaction was discussed as well, but this appears to be a "DK" for which Lehman's valuation has remained constant.

  More generally with regard to the work product privilege, the valuation dispute will be addressed by experts at trial, and there is no need for supplemental Lehman valuation materials, either current or historical. Lehman's internal valuations do not shed light on whether Moore's valuations were conducted in accordance with the ISDA Master Agreements between the parties, which is, of course, the issue in dispute.

**JONES DAY**

Erik S. Groothuis
March 30, 2015
Page 3

      Finally, we recognize that the close of fact discovery is approaching quickly. Lehman would be amenable to extending the discovery deadline. Please contact me at your earliest convenience to discuss the deadline and any other questions you may have.

Very truly yours,

*Tracy V. Schaffer*

Tracy V. Schaffer

Encl.
CC:
Lauren Teigland-Hunt
Samuel Butt
Locke R. McMurray
Jayant W. Tambe