# Exhibit 9

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

DIRECT NUMBER: (212) 326-3427
TSCHAFFER@JONESDAY.COM

December 15, 2014

<u>VIA E-MAIL</u>

Erik S. Groothuis, Esq.
Samuel L. Butt
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004
egroothuis@schlamstone.com
sbutt@schlamstone.com

      Re:    *Moore Macro Fund, LP v. Lehman Bros. Holdings Inc.*, Adv. Proc. No. 14-02021 (Bankr. S.D.N.Y.)

Dear Erik:

      We write to follow up in connection with our phone call on December 3, 2014 concerning the outstanding discovery issues between our clients and other recent discovery-related correspondence.

**I.**    **<u>Depositions</u>**

      We agreed on our call to postpone the depositions of Anthony DeLuca, Anthony Megaro and Peter Browne noticed for December 19, 2014, December 22, 2014 and December 23, 2014, respectively.

**II.**    **<u>Document Disputes</u>**

      On our call, Moore expressed a willingness to produce documents concerning the end-of-day marks or valuations of the Terminated Transactions at issue in this dispute, documents concerning Moore's actual losses or gains in connection with the close-out of or otherwise relating to the Terminated Transactions, and documents concerning a limited number of replacement trades. Such documents are responsive in part to Lehman's Request Nos. 2, 3, 4, 11, 20 and 21. However, Lehman's understanding is that Moore is refusing to produce such documents if Lehman does not produce both (1) various documents concerning third parties (such as documents responsive to Moore's Request Nos. 11, 12, 14, 15 and 16); and (2) the documents concerning the valuation of the Terminated Transactions in dispute, which Lehman maintains are privileged and/or protected by attorney work product.

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Erik S. Groothuis, Esq.
December 15, 2014
Page 2

      First, as a general matter, Lehman does not believe that Moore's withholding of its own documents, and in particular those documents relevant to the court in evaluating Moore's actual gains or losses relating to the Master Agreements, unless Lehman produces documents concerning other parties and its work product concerning valuation of the transactions to be appropriate or productive in terms of resolving the parties' dispute in an efficient and cost-effective manner. Unlike other cases where such a proposed quid pro quo exchange of information may be appropriate, the fact is that the majority of the information relevant to this dispute is within Moore's possession.

      Moreover, Lehman maintains that all of Moore's activities on and after the Early Termination Date in the assets or indices underlying the Terminated Transactions are highly probative of Moore's actual gains or losses, and believes the court would agree.

      While Moore stated that it was willing to narrow its requests relating to third parties to third parties who terminated their transactions with Lehman on either September 15 or September 16, 2008, these requests remain overly broad and burdensome in light of the enormous number of counterparties involved. Further, as we have already stated, the information bears no relevance to this dispute between Lehman and the Moore parties. What is relevant is the process Moore engaged in under the Master Agreements. Finally, much of the information requested is confidential and Lehman is not at liberty to disclose it.

      On our call, Moore referred to valuation information on Lehman's "systems." Lehman is willing to provide close of business valuations as of September 12, 2008 and September 15, 2008, to the extent that they were not already produced. However, Lehman maintains that all post-bankruptcy work performed at the direction of counsel in anticipation if litigation concerning subjects such as valuations of the Terminated Transactions in dispute, any analysis of the Moore valuation statements, and any analysis of Moore's Proofs of Claim is protected work product. In order to facilitate productive discussions between the parties, Lehman has already provided its positions as to the valuations of the Terminated Transactions in dispute to Moore during the mediation process. Moreover, Lehman has provided the source of its positions to Moore during the mediation as well. At trial, evidence concerning what Lehman believes to be the proper valuations of the Terminated Transactions in dispute will be presented through an expert report and expert testimony. Lehman will provide this information to Moore at the appropriate time required under the Federal Rules of Civil Procedure and the scheduling order in this case.

      Please call me at your earliest convenience to discuss how the parties should proceed concerning requesting relief from the court.

JONES DAY

Erik S. Groothuis, Esq.
December 15, 2014
Page 3

### III. Documents Relating to Moore's Solicitation of Market Quotations

Lehman notes that Moore's document productions do not appear to contain all the communications between the Moore parties and Reference Market-makers concerning the solicitation of Market Quotations responsive to Lehman's Request No. 4. While these documents were not required to be produced with Moore's initial production in advance of the mediation, they should have been produced with Moore's supplemental production to the extent that they are available. Please provide these communications, or state that Moore has produced all documents concerning the Moore parties' solicitation of Market Quotations. We note for example that Moore's valuation statements did not include all of the date- and time-stamped e-mails and attachments pursuant to which Moore solicited Market Quotations from Reference Marketmakers.

### IV. Miscellaneous Issues

#### A. Lehman's Privilege Logs

In response to your e-mail dated November 26, 2014 regarding Lehman's privilege logs, Lehman will provide shortly a list of in-house attorneys and the custodian information relating to the 66 log entries that have been identified with blank to/from/cc fields.

Lehman claims privilege over documents shared with individuals at Alvarez & Marsal, Houlihan Lokey and FTI Consulting, for the following reasons: Lehman retained Alvarez & Marsal as restructuring advisors following Lehman's bankruptcy filing and Alvarez & Marsal provided top level management to the Lehman estate. Houlihan Lokey and FTI Consulting were engaged by the Official Committee of Unsecured Creditors and communications between them and Lehman are privileged pursuant to a common interest agreement dated November 3, 2008.

Similarly, Moore asked some questions on our telephone call regarding communications between Lehman and Barclays recorded on Lehman's privilege logs. After Lehman's bankruptcy filing, many Lehman employees transitioned to Barclays and/or received Barclays e-mail addresses. Furthermore, Barclays provided many services to Lehman after Lehman's bankruptcy filing pursuant to a Transition Services Agreement dated September 22, 2008. Accordingly, these privileged communications containing Lehman and Barclays email addresses have been properly withheld.

#### B. Electronic Tapes

Moore stated on the December 3 call that it believed that no electronic tapes or sound recordings exist. Please confirm that Moore in fact did not retain such electronic tapes or sound recordings.

JONES DAY

Erik S. Groothuis, Esq.
December 15, 2014
Page 4

### C. Authorization to Sign on Behalf of the Moore Entities

Moore contended on the December 3 call that Lehman's Requests did not cover documents concerning the authority of Mr. Anthony DeLuca to sign and/or enter into the Transfer Agreement on behalf of each of the signatory Moore entities. Lehman believes these documents are covered by Request No. 1, which requests, among other things, all documents and communications concerning "the contractual or other legal bases for the Transfer Agreement." Moore asked that Lehman serve an additional document request. Lehman will do so this week.

Very truly yours,

Tracy V. Schaffer

cc:    Lauren Teigland-Hunt, Esq. (via e-mail)