# THE PLAN ADMINISTRATOR'S FIVE HUNDREDTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY FOR STONEHILL FRAUD CLAIMS)

## PARTIES SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail
Ralph I. Miller

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (SCC)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## NOTICE OF HEARING ON THE PLAN ADMINISTRATOR'S FIVE HUNDREDTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY FOR STONEHILL FRAUD CLAIMS)

**PLEASE TAKE NOTICE** that on May 29, 2015 Lehman Brothers Holdings Inc.

("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of

Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above-referenced

chapter 11 cases, filed the five hundredth omnibus objection to claims (the "Objection"), and that

a hearing (the "Hearing") to consider the Objection will be held before the Honorable Shelley C.

Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy

Court for the Southern District of New York, One Bowling Green, New York, New York 10004,

on **July 22, 2015 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

    **PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a CD-ROM or 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or

any other Windows-based word processing format (with a hard copy delivered directly to

Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399 upon (i)

the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York

10004, Courtroom 623; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth

Avenue, New York, New York 10153 (Attn: Ralph I. Miller, Esq. and Garrett A. Fail, Esq.) and

(iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201

Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq.,

Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later

than **June 29, 2015 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

2

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Objection or any claim set forth thereon, the Plan Administrator may,

on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the

form of the proposed order annexed to the Objection, which order may be entered with no further

notice or opportunity to be heard offered to any party.

Dated: May 29, 2015
      New York, New York

              /s/ Garrett A. Fail
             Garrett A. Fail
             Ralph I. Miller
             WEIL, GOTSHAL & MANGES LLP
             767 Fifth Avenue
             New York, New York 10153
             Telephone: (212) 310-8000
             Facsimile: (212) 310-8007

             Attorneys for Lehman Brothers Holdings Inc.
             and Certain of Its Affiliates

WEIL:\95346136\10\58399.0011

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail
Ralph I. Miller

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

### THE PLAN ADMINISTRATOR'S FIVE HUNDREDTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY FOR STONEHILL FRAUD CLAIMS)

# TABLE OF CONTENTS

PAGE

RELIEF REQUESTED ........................................................................................................1

JURISDICTION ................................................................................................................2

BACKGROUND ...............................................................................................................2

    I.     Relevant Procedural History ...........................................................................2

    II.    The Second Amended Claims..........................................................................4

OBJECTION ....................................................................................................................5

    I.     Stonehill Failed to and Cannot State a Claim for Fraud Under New York
        Law. .................................................................................................................5

         A.     Stonehill Failed to Allege a Misrepresentation of Material Fact.....................6

              i.     Wickham's Comfort Statements Are Not Actionable..........................6

              ii.    The Financial Statements Cannot Support Stonehill's Fraud
                  Claims ...............................................................................................11

                     a.     Claims Based on the Financial Statements Are Barred
                          by and Violate the Court's Consent Order and
                          Dismissal Order. ...................................................................11

                     b.     Claims Based on the Financial Statements Fail to
                          Satisfy the Particularity Requirements of Rule 9(b)..............13

         B.     Stonehill Failed to Allege Reasonable Reliance ...........................................14

               i.     Stonehill failed to and cannot state a fraud claim based on
                  reliance on the Comfort Statements....................................................15

               ii.    Stonehill failed to and cannot state a fraud claim based on
                  reliance on the Financial Statements...................................................18

          C.     Stonehill Failed to Allege Proximate Causation ...........................................20

               i.     Stonehill failed to and cannot plead loss causation............................20

               ii.    Stonehill failed to and cannot plead transaction causation ................23

          D.     Stonehill Failed to Allege Recoverable Damages .........................................26

    II.    Stonehill's Assertions That Each of the Chapter 11 Estates Is Liable for Fraud
        Are Meritless...................................................................................................28

         A.     Stonehill Failed to Allege That Wickham Had the Apparent Authority
             to Bind the Chapter 11 Estates .....................................................................28

          B.     Stonehill Failed to Establish Any Basis to Hold the Chapter 11
             Estates Jointly and Severally Liable..............................................................32

RESERVATION OF RIGHTS ............................................................................................33

CONCLUSION ...............................................................................................................34

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012)........................................................................18

*Alpert v. Shea Could Climenko & Casey*,
    559 N.Y.S.2d 312 (1st Dep't 1990) ................................................26, 28

*Am. Food & Vending Corp. v. Int'l Bus. Machines Corp.*,
    667 N.Y.S.2d 545 (4th Dep't 1997)........................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................18

*Bank Hapoalim B.M. v. WestLB AG*,
    995 N.Y.S.2d 7 (1st Dep't 2014) ...........................................................27

*Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*,
    No. 03 Civ. 0377 (NRB), 2003 WL 21767739 (S.D.N.Y. July 30, 2003).................................8

*Belin v. Weissler*,
    No. 97 Civ. 8787 (RWS), 1998 WL 391114 (S.D.N.Y. July 14, 1998) ...........................15, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................18

*Bennett v. U.S. Trust. Co.*,
    770 F.2d 308 (2d Cir. 1985)........................................................20, 21, 22

*Berliner v. Crossland Fed. Sav. Bank*,
    886 F. Supp. 325 (S.D.N.Y. 1994) .........................................................31

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    949 F. Supp. 2d 486 (S.D.N.Y. 2013)......................................................5

*Buchwald v. Di Lado Beach Resort, Ltd. (In re McCann, Inc.)*,
    318 B.R. 276 (Bankr. S.D.N.Y. 2004) ...................................................18

*Chess Enters. v. Beldon Assocs.*,
    148 N.Y.S.2d 804 (2nd Dep't 1956).......................................................32

*Comas v. Merrill Lynch & Co.*,
    No. 92 CIV. 6560 (KC), 1993 WL 800778 (S.D.N.Y. July 2, 1993) .......................................19

ii

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)................................................................................29

*Decker v. Massey-Ferguson, Ltd.*,
    681 F.2d 111 (2d Cir. 1982)...........................................................................................13

*DH Cattle Holdings Co. v. Smith*,
    607 N.Y.S.2d 227 (1st Dep't 1994) ...........................................................................6, 8, 9

*Dinaco, Inc. v. Time Warner Inc.*,
    No. 98-6422, 2002 WL 31387265 (S.D.N.Y. Oct. 22, 2002), *aff'd* 346 F.3d 64 (2d
    Cir. 2003) .......................................................................................................................31

*Dover Ltd. v. A.B. Watley, Inc.*,
    423 F. Supp. 2d 303 (S.D.N.Y. 2006).............................................................................30

*Duke Energy Trading And Mktg., L.L.C. v. Enron Corp. (In re Enron Corp.)*,
    No. 02-3609, 2003 WL 1889040 (Bankr. S.D.N.Y. April 17, 2003) .....................................33

*Emergent Capital Inv. Mgmt. v. Stonepath Grp., Inc.*,
    343 F.3d 189 (2d Cir. 2003)......................................................................................20, 21

*ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*,
    858 N.Y.S.2d 94 (1st Dep't 2008) .................................................................................10

*Ford v. Unity Hosp.*,
    32 N.Y.2d 464 (N.Y. 1973) ...........................................................................................30

*Geary v. Hunton & Williams*,
    684 N.Y.S.2d 207 (1st Dep't 1999) ................................................................................26

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998)...............................................................................15

*Grimes v. Fremont Gen. Corp.*,
    933 F. Supp. 2d 584 (S.D.N.Y. 2013)...............................................................................9

*Gross v. Diversified Mortg. Investors*,
    431 F. Supp. 1080 (S.D.N.Y. 1977), *aff'd*, 636 F.2d 1203 (2d Cir. 1980) .......................13, 14

*Hallock v. State*,
    64 N.Y.2d 224 (1984) ...................................................................................................28

*Harbringer Capital Partners LLC v. Ergen (In re LightSquared, Inc.)*,
    504 B.R. 321 (Bankr. S.D.N.Y. 2013) ........................................................................ passim

*In re B. & R. Glove Corp.*,
    279 F. 372 (2d Cir. 1922)..............................................................................................19

iii

*In re Livent, Inc. Noteholders Sec. Litig'n*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................................18

*In re MF Global*,
    515 B.R. 434 (Bankr. S.D.N.Y. 2014) ..................................................................6

*Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*,
    822 F. Supp. 2d 369 (S.D.N.Y. 2011) ................................................................14

*Int'l Oil Field Supply Servs. Corp. v. Fadeyi*,
    825 N.Y.S.2d 730 (2d Dep't 2006) ............................................................6, 7, 17

*Isr. Discount Bank v. NCC Sportswear, Corp.*,
    859 N.Y.S.2d 895, slip op. (N.Y. Sup. Ct. N.Y. Cnty. Feb. 21, 2008) ..................10

*Johnson v. Nationwide Gen. Ins. Co.*,
    971 F. Supp. 725 (N.D.N.Y. 1997), *aff'd sub nom. Johnson v. Nationwide Ins. Co.*,
    162 F.3d 1148 (2d Cir. 1998) .......................................................................29, 31

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993) ...............................................................................32

*Kensington Publ'g Corp. v. Kable News Co., Inc.*,
    474 N.Y.S.2d 524 (2d Dep't 1984) ...............................................................26, 28

*Lama Holding Co. v. Smith Barney*,
    688 N.E.2d 1370 (N.Y. 1996) ...............................................................20, 26, 27

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997) ........................................................................17

*Longo v. Butler Equities II, L.P.*,
    718 N.Y.S.2d 30 (1st Dep't 2000) ...............................................................6, 8, 9

*M&T Bank Corp. v. LaSalle Bank Nat'l Ass'n*,
    852 F. Supp. 2d 324 (W.D.N.Y. 2012) ............................................................10

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (N.Y. 2011) .............................................................................9

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) ...................................................................13

*Matana v. Merkin*,
    989 F. Supp. 2d 313 (S.D.N.Y. 2013) ..........................................................23, 24

*Murray v. Miner*,
    876 F. Supp. 512 (S.D.N.Y. 1995) ..................................................................33

iv

*N. Valley Partners, LLC v. Jenkins,*
  885 N.Y.S.2d 712, slip op. (N.Y. Sup. Ct. N.Y. Cnty. Apr. 14, 2009) ....................................9

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP,*
  No. 03-Civ-0613 (GBD), 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ...................................30

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.),*
  383 B.R. 231 (Bankr. S.D.N.Y. 2008) .....................................................................................19

*Precedo Capital Grp. Inc. v. Twitter Inc.,*
  33 F. Supp. 3d 245 ................................................................................................................29, 30

*Rather v. CBS Corp.,*
  886 N.Y.S.2d 121 (1st Dep't 2009) .....................................................................................26, 28

*Rich v. Touche Ross & Co.,*
  68 F.R.D. 243 (S.D.N.Y. 1975) ................................................................................................14

*Rizkallah v. Forward Air, Inc.,*
  No. 02 Civ. 2448 (PGG), 2009 WL 3029309 (S.D.N.Y. Sept. 22, 2009) ...............................10

*Securities Investor Protection Corporation v. Lehman Brothers Inc.*
  (Case No. 08-01420) ..................................................................................................................2

*Spagnola v. Chubb Corp.,*
  264 F.R.D. 76 (S.D.N.Y. 2010) ................................................................................................30

*Starr Found'n v. Am. Int'l Grp.,*
  901 N.Y.S. 2d 246 (1st Dep't 2010) .........................................................................................27

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.,*
  665 N.Y.S.2d 415 (1st Dep't 1997) ..........................................................................................15

*Tradex Global Master Fund SPC LTD v. Titan Capital Grp. III, LP,*
  944 N.Y.S.2d 527 (1st Dep't 2012) ..........................................................................................27

*UPS Store, Inc. v. Hagan,*
  — F. Supp. 3d ——, 2015 WL 1456654 (S.D.N.Y. 2015) ......................................................10

*UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney,*
  733 N.Y.S.2d 385 (1st Dep't 2001) ..........................................................................................15

*Van Kleeck v. Hammond,*
  811 N.Y.S.2d 452 (3d Dep't 2006) ....................................................................................6, 8, 10

*Voisin v. Providence Washington Ins. Co.,*
  65 N.Y.S. 333 (1st Dep't 1900) ................................................................................................32

v

*Waksman v. Cohen*,
    No. 00 Civ. 9005 (WK), 2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002)................................16

*Zucker v. Waldmann*,
    993 N.Y.S.2d 647, slip op. (N.Y. Sup. Ct. Kings Cnty. June 12, 2014), *reh'g granted*..........10

## STATUTES

11 U.S.C. § 502(b) .................................................................................................................1, 2

28 U.S.C. §§ 157......................................................................................................................2

28 U.S.C. § 1334......................................................................................................................2

Securities Investor Protection Act of 1970 .............................................................................2

## OTHER AUTHORITIES

Fed. R. Bankr. P. 3007(d) .......................................................................................................1

Fed. R. Civ. P. 9(b) .......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)......................................................................................................21, 22

Fed. R. Civ. P. 41(b) .............................................................................................................12

RESTATEMENT (SECOND) OF AGENCY § 27 (1958) ......................................................................29

WEIL:\95346136\10\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE :

Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "<u>Plan</u>") for the entities in the above-referenced chapter 11 cases (the "<u>Chapter 11 Estates</u>") respectfully represents as follows:

### **RELIEF REQUESTED**

1.      Stonehill[1] has again failed to plead key elements that would be essential to establish legal sufficiency for any of its recently restated "Wickham conversation type claims." Dismissal of all claims with prejudice is now required. Critical gaps in the allegations of material fact and of reasonable reliance, the chain of proximate causation, and the pleading of measurable losses still remain. These gaps cannot be bridged even if Stonehill's speculative assertions are accepted. The newly added attributions of fraud to unidentified financial statements should be dismissed because they violate this Court's orders on the scope of allowable amendments and, moreover, because they do not meet Rule 9(b) pleading requirements. And the expansive effort to assert over $160 million in damages (totaling approximately $3.3 billion in claims) against twenty Chapter 11 Estates on the basis of two telephone calls is facially without legal merit. In short, Stonehill has failed to state any claim upon which relief can be granted, and, therefore, Stonehill's claims must be disallowed and expunged in their entirety.

---

[1] The term "Stonehill" will be used here as it was in the Plan Administrator's Four Hundred Eighty-Third Omnibus Objection to Claims to mean Stonehill Offshore Partners Limited and Stonehill Institutional Partners, L.P. with regard to the 40 claims listed on Exhibit A.

1

## JURISDICTION

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

3.      Commencing on September 15, 2008, and periodically thereafter, the Chapter 11 Estates commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

4.      On September 19, 2008 (the "SIPA Commencement Date"), the District Court for the Southern District of New York entered an order adjudicating that customers of LBI, a subsidiary of LBHI that is not a debtor in the Chapter 11 Cases, are in need of protection under the Securities Investor Protection Act of 1970, as amended ("SIPA"), and appointing James W. Giddens as trustee to oversee LBI's liquidation.  LBI remains the subject of a liquidation proceeding (the "SIPA Proceeding") administered by the Court under SIPA: *Securities Investor Protection Corporation v. Lehman Brothers Inc.* (Case No. 08-01420) (SCC) (SIPA).

5.      On December 6, 2011, the Court entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed in the Chapter 11 Cases.

## I.      Relevant Procedural History

6.      In September 2009, Stonehill filed 40 proofs of claim against twenty of the twenty-three Chapter 11 Estates asserting, among other things, claims for breach of contract and fraud related to Stonehill's prime brokerage agreements with LBI (the "Original Claims").

7.      On February 20, 2014, the Plan Administrator filed a motion to establish a single reserve for the Original Claims [ECF No. 42959].  After a hearing, the Court entered a

Consent Order Establishing a Single Reserve for Claims [ECF No. 43571] (the "Consent Order").  The Consent Order gave Stonehill until April 15, 2014 to "(a) amend, liquidate, or supplement" the Original Claims or "(b) file late claims."  It also established April 15, 2014 as a bar date for Stonehill to assert all "facts, matters, or circumstances" that were "known to, or in the possession, or control of [Stonehill] prior to [March 18, 2014]."  (Consent Order 3, 4.)

8.    In accordance with the Consent Order, on April 15, 2014, Stonehill filed a motion to "re-file" proofs of claim or amend the Original Claims [ECF No. 43988].  On August 5, 2014, the Court so-ordered a stipulation (the "Stipulation") [ECF No. 45573] expunging the Original Claims and permitting amended proofs of claim (the "First Amended Claims") to supersede them.  The First Amended Claims were filed on August 5, 2014.

9.    On October 31, 2014, the Plan Administrator filed its Four Hundred Eighty-Third Omnibus Objection to Claims (No Liability Claims) [ECF No. 46785] (the "Original Objection") seeking to disallow the First Amended Claims in their entirety.  On December 15, 2014, Stonehill filed its response to the Original Objection [ECF No. 47388] (the "Response").

10.    The Court sustained the Original Objection at a hearing held on February 11, 2015 (the "Hearing") and by Order [ECF No. 48791] dated March 10, 2015 (the "Dismissal Order").  In the Dismissal Order, the Court dismissed with prejudice all claims that the Chapter 11 Estates could be liable to Stonehill under the terms of the relevant prime brokerage contracts.  The Court further dismissed all claims based on "willful and material misrepresentations made by and/or on behalf of the Lehman Entities."  (1st Am. Claims ¶ 12.)  Nearly all of Stonehill's tort-based claims were dismissed with prejudice.  Only a narrow subset of tort-based claims—which the Court described as "Wickham conversation type claims"

because they were based on a single, early-September telephone conversation between a Stonehill representative and Mr. John Wickham, an alleged representative of each of the Chapter 11 Estates—were dismissed without prejudice.  The Dismissal Order permitted Stonehill to re-plead, for the second time, the "Wickham conversation type claims" for the purpose of correcting deficiencies identified in the Original Objection.  (Dismissal Order 2.)  The Court required that any such re-pleading satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules").  (*Id.*)

## II.    The Second Amended Claims

11.    On April 10, 2015, Stonehill filed the 40 proofs of claim listed on Exhibit A attached hereto (the "Second Amended Claims").

12.    Like the Original Claims and the First Amended Claims, the Second Amended Claims seek to impose liability on the Chapter 11 Estates for "fraudulent and/or willful misrepresentations of material facts made by and/or on behalf of [the Chapter 11 Estates] regarding their financial condition and related matters" (collectively, the "Purported Misrepresentations").  (2d Am. Claims ¶ 16.)

13.    As permitted by the Dismissal Order, Stonehill attempts to allege fraud claims based on alleged statements made by Mr. John Wickham on or about September 8, 2008, a week before the commencement of LBHI's chapter 11 case and eleven days before the commencement of LBI's SIPA Proceeding (the "Comfort Statements").  But Stonehill goes further and violates the terms of the Dismissal Order and the Consent Order and attempts to assert, for the first time, that the Chapter 11 Estates are liable for misrepresentations made in unidentified financial statements (the "Financial Statements").

14.    The Second Amended Claims seek damages of (i) at least $152,985,727 "representing the diminution of value in securities held by LBI under the PB Agreement from the

4

date when LBI's SIPA Proceeding was commenced through the date that such securities were returned to the claimant" (the "Diminution Claims") (2d Am. Claims ¶ 14) and (ii) an aggregate of $11,055,074.48 for certain "foreign currency hedges entered into under the PB Agreement which were in the money in favor of [Stonehill] prior to the commencement of the bankruptcy case" (the "FX Claim") (*id.* ¶¶ 8 fn. 3, 14).

## **OBJECTION**

### I.    **Stonehill Failed to and Cannot State a Claim for Fraud Under New York Law.**

15.    Stonehill has failed yet again to state a claim for fraud both as a matter of law and with the particularity required by Rule 9(b).[2]

16.    "To assert a claim for fraud under New York law, a plaintiff must allege: (a) a material false representation or an omission of a material fact; (b) that the defendant made with the intention to defraud the plaintiff; (c) upon which the plaintiff reasonably relied; and (d) that caused injury to the plaintiff." *Harbringer Capital Partners LLC v. Ergen (In re LightSquared, Inc.)*, 504 B.R. 321, 344 (Bankr. S.D.N.Y. 2013).

17.    In addition, a plaintiff alleging fraud must also satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules, which requires parties to state with particularity the circumstances constituting the fraud. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 509 (S.D.N.Y. 2013).

18.    For the reasons set forth below, Stonehill failed to meet these basic requirements for claims of fraud and the Second Amended Claims should be disallowed and expunged with prejudice and in their entirety.[3]

---

[2] Stonehill had opportunities to attempt to adequately allege a fraud claim in the year prior to the Bar Date, in the Original Claims, in the 29 months between the Bar Date and the Plan Effective Date, and in the First Amended Claims.

### A.    Stonehill Failed to Allege a Misrepresentation of Material Fact.

19.    Simply put, Stonehill failed to allege any misrepresentation of material fact on which it could have reasonably relied.  Without this prima facie element, Stonehill cannot recover on either the Diminution Claims or the FX Claims as a matter of law.  Accordingly, the Second Amended Claims should be disallowed and expunged in their entirety.

### i.    Wickham's Comfort Statements Are Not Actionable.

20.    The Comfort Statements cannot form the basis for Stonehill's fraud claims as a matter of law.  A party asserting a fraud claim must "articulate [a] specific misrepresentation of a material present fact."  *Int'l Oil Field Supply Servs. Corp. v. Fadeyi*, 825 N.Y.S.2d 730, 734 (2d Dep't 2006).  "Vague expressions of hope and future expectation provide an insufficient basis upon which to predicate a claim of fraud."  *Id.*  "[M]ere opinion and puffery" does not constitute a representation because it is not an "actionable statement of fact."  *DH Cattle Holdings Co. v. Smith*, 607 N.Y.S.2d 227, 231 (1st Dep't 1994); *Longo v. Butler Equities II, L.P.*, 718 N.Y.S.2d 30, 31 (1st Dep't 2000).  Even a "promise regarding future acts" cannot form the basis for a fraud claim.  *Van Kleeck v. Hammond*, 811 N.Y.S.2d 452, 454, 455 (3d Dep't 2006).

21.    Stonehill repeats its allegations—copied from the First Amended Claims—that the following few opinions and vague expressions of future expectations are the material misrepresentations on which it purportedly relied:

- "Stonehill . . . should not worry about maintaining and continuing their commercial relationship with the Lehman Entities."  (2d Am. Claims ¶ 25.)

---

[3] In the absence of valid fraud claims, the Chapter 11 Estates are clearly exculpated from all liability for the losses attributable to the Diminution Claims and FX Claims pursuant to Section 29 of the Prime Brokerage Agreement (the "PB Agreement"), assuming *arguendo*, as Stonehill alleges, that they are parties to the PB Agreement.  PB Agreement § 29 (exculpating the Chapter 11 Estates from "any loss caused, directly or indirectly, by government restrictions . . . suspension of trading . . . or other conditions beyond Lehman Brothers' control."); *see In re MF Global*, 515 B.R. 434, 441, 442 (Bankr. S.D.N.Y. 2014).

WEIL:\95346136\10\58399.0011

- "Lehman had adequate liquidity because unlike Bear Stearns, which nearly collapsed because of liquidity problems induced by sudden customer and counterparty flight, Lehman had prudently financed its customers with matched funding . . . ." (*Id.* ¶ 26.)

- "Lehman . . . had sufficient committed financing from stable sources it believed to be reliable to meet all of its obligations for a year even if no new financing was available . . . ." (*Id.* ¶ 26.)

- "Lehman . . . had a cushion of $12 billion of surplus cash." (*Id.* ¶ 26.)

- "Lehman's unrealized appreciation in various assets (one of which was Neuberger Berman, half of which Mr. Wickham stated on the phone call might soon be sold at a substantial profit to realize value and substantially add to tangible equity) was more than sufficient to cover possible unrealized losses in its portfolio and provide incremental equity that would be required for a planned spinout of most of Lehman's commercial real estate portfolio . . . ." (*Id.* ¶ 30.)

- "Lehman Brothers, including its prime brokerage operations, would continue operating in the normal course . . . ." (*Id.* ¶ 30.)

- "Claimant should be comfortable continuing its customer and counterparty relationship with Lehman Brothers." (*Id.* ¶ 30.)

Stonehill's only new allegation is that Wickham also expressed an opinion that "the market was mistaken about various risks." (*Id.* ¶ 30.)

22.    The plain language is clear: not a single one of these alleged statements is a "specific misrepresentation of a material present fact" sufficient to allege a claim for fraud. *Fadeyi*, 825 N.Y.S.2d at 734. Stonehill's use of the following vague and broad terms and clauses precludes any from constituting a "material present fact" (*id.*):

- "should not worry"
- "maintaining and continuing"
- "commercial relationship"
- "adequate"
- "prudently"
- "sufficient"
- "stable"
- "believed"
- "reliable"
- "cushion"
- "surplus"
- "unrealized appreciation"
- "various assets"
- "might soon be sold"

- "substantial profit"
- "realize value"
- "substantially add"
- "tangible equity"
- "more than sufficient"
- "possible unrealized losses"
- "incremental equity"
- "planned spinout"
- "most of"
- "the market was mistaken"
- "various risks"
- "steps that were being taken"
- "address those misplaced concerns"
- "should be comfortable"

There is not one iota of fact in the Comfort Statements on which the risk or investment committee of a sophisticated institution could base an investment decision. Stonehill identifies only a single numerical figure—"$12 billion"—and even it is qualified by the vague terms "cushion" and "surplus" and the total lack of information on, for example, "Lehman's" intended need for or use of the cash or how long the cash is expected to remain "surplus." (2d Am. Claims ¶ 26.) The Comfort Statements are meaningless without specific facts to explain them. They are, at best, nonactionable vague expressions of future intention, mere opinion and puffery, or promises regarding future acts. *See id.*; *DH Cattle*, 607 N.Y.S.2d at 231; *Longo*, 718 N.Y.S.2d at 31; *Van Kleeck*, 811 N.Y.S.2d at 454, 455. The Comfort Statements fall far short of satisfying the particularity requirements of Rule 9(b).

23. Indeed, courts have frequently held that statements that mirror Wickham's Comfort Statements cannot form the basis for a fraud claim. The examples below demonstrate beyond dispute that reliance on the Comfort Statements cannot form the basis for a fraud claim:

- *Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*, No. 03 Civ. 0377 (NRB), 2003 WL 21767739, at 6 (S.D.N.Y. July 30, 2003) ("Nor are we convinced that Pieper's alleged "reassurance" of Bavaria . . . that **'FD was financially sound'** and that **'Bavaria had nothing to worry about'** states an actionable claim for fraud or negligent misrepresentation. Without pointing to any particular statement made by Pieper at this

meeting, Bavaria's allegation is too indefinite and/or immaterial to withstand Rule 9(b) scrutiny.").

- *Am. Food & Vending Corp. v. Int'l Bus. Machines Corp.*, 667 N.Y.S.2d 545, 546 (4th Dep't 1997) ("The complaint fails to state a cause of action for fraud because the alleged fraudulent representation by IBM's representative relied upon, viz., that **a national vending contract was 'most unlikely'** and **'there was nothing to worry about'**, was not a statement of fact, but an expression of opinion, which will not support an action for fraud." (citation omitted)).

- *DH Cattle Holdings*, 607 N.Y.S.2d at 231 ("The only misrepresentation alleged is the statement by defendant's former agents that **it was a 'safe investment'**. However, such statements are generally considered, not actionable statements of fact, but mere opinion and puffery." (citations omitted)).

- *FMC Corp.*, 641 N.Y.S.2d at 26 ("The bank officer's phrasing that **it 'felt' that the line of credit would be adequate to cover PCO's debt to plaintiff** constituted, at most, nonactionable opinion, a prediction as to future performance and not a statement of existing fact. Equally deficient are the allegations of fraud . . . arising out of the statements made by the same bank officer . . . that **PCO's account was 'satisfactory'**, that **defendant was 'comfortable' with it**, and that **defendant bank 'regarded its credit relationship with PCO as long term.'**" (citation omitted)).

- *N. Valley Partners, LLC v. Jenkins*, 885 N.Y.S.2d 712, slip op. at 7 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 14, 2009) ("Leder allegedly stated that **'the company and its management were strong'**. This statement cannot form the basis of any claim of fraud, because "[o]pinions of value or future expectations" are "little more than mere puffery" and "do not constitute actionable fraud." (citations omitted)).

- *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (N.Y. 2011) ("Wildenstein's letter regarding the painting's value constituted nonactionable opinion that provided no basis for a fraud claim. The letter merely disclosed Wildenstein's familiarity with the painting, **a belief that the painting was worth $15 million to $17 million**, and an acknowledgement that the letter was addressed in response to Reymondin, with no mention of Mandarin." (citation omitted)).

- *Longo*, 718 N.Y.S.2d at 31 ("Plaintiff's allegations of fraud are deficient first because the alleged misrepresentations that **the target company was seriously undervalued** and **could be profitably broken up**, and that partnership **investors would be 'in and out' in not more than one year**, can only be understood as nonactionable expressions of opinion, mere puffing." (citations omitted)).

- *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 606 (S.D.N.Y. 2013) ("Plaintiffs also allege that, at the closing, Defendants promised that **Plaintiffs would be able to refinance the mortgages**. But this statement also misses the mark, because representations regarding future expectations are not actionable in fraud." (quotation marks omitted)).

9

- *ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*, 858 N.Y.S.2d 94, 95, 96 (1st Dep't 2008) ("Any remark Carstens may have made to the effect that **Southeast Cruise was a great project** is a "nonactionable expression[ ] of opinion, mere puffing." (citation omitted)).

- *Isr. Discount Bank v. NCC Sportswear, Corp.*, 859 N.Y.S.2d 895, slip op. at 3 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 21, 2008) ("Capacchione's alleged statement that **the company was doing well financially** amounts to no more than an opinion, and is not actionable as fraud.").

- *Zucker v. Waldmann*, 993 N.Y.S.2d 647, slip op. at 9, 10 (N.Y. Sup. Ct. Kings Cnty. June 12, 2014) (dismissing fraud claim for, *inter alia*, lack of actionable misrepresentations where allegedly "defendants represented to [plaintiff] that **if he would provide them with $500,000 in investment funding, he would receive a percentage of profits from the rental or sale of all or portions of the property and that defendants would develop and improve the property and provide him with a full accounting**"), *reh'g granted and modified*, 2015 WL 390192 (N.Y. Sup. Ct. Kings Cnty. Jan. 23, 2015).

- *UPS Store, Inc. v. Hagan*, — F. Supp. 3d ——, 2015 WL 1456654, at 6 (S.D.N.Y. 2015) ("For example, the Hagans rely on a UPS executive's statement . . . that he 'believe[d]' UPS and the Hagans **had reached 'common ground to improve the value of our network collectively**.'   The Hagans claim this was 'disingenuous' because UPS proceeded to terminate the Hagans' franchise agreements.   The executive's vague statement is insufficient." (citations omitted)).

- *M&T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, 852 F. Supp. 2d 324, 339, 340 (W.D.N.Y. 2012) ("The content of the alleged misrepresentation also supports this conclusion. The provision on which M&T rests its claim states that, following an Event of Default, 'payments of interest on the Secured Notes shall continue to be made in accordance with the Priority of Payments' and so 'Subordinate Classes of Secured Notes . . . ***may*** continue to be paid prior to the payment in full of the principal amount of Senior Classes of Notes.'   The very indefiniteness of this statement confirms that it is an expression of opinion, rather than fact, or, at best, an expression of expectations as to the general impact a possible future event might have on multiple classes of notes."   (citation omitted)).

- *Rizkallah v. Forward Air, Inc.*, No. 02 Civ. 2448 (PGG), 2009 WL 3029309, at 9, 10 (S.D.N.Y. Sept. 22, 2009) ("Robin's statement that **he would 'be the adjuster who works with you in restoring your property to pre-accident condition or compensating you for damage that is irrepairable [sic]'** is too indefinite to justify reasonable reliance.").

- *Van Kleeck v. Hammond*, 811 N.Y.S.2d 452, 454, 455 (3d Dep't 2006) ("Even assuming that defendants advised plaintiff that **there would be 'no problem' with the proposal** to abolish the full-time chief position and appoint him to the part-time chief position after he retired, he unjustifiably relied on this vague assurance which was a promise regarding future acts.").

ii.     **The Financial Statements Cannot Support Stonehill's Fraud Claims.**

24.     Allusions to Financial Statements are not within the scope of permitted amendments and, moreover, do not satisfy the prima facie element of Stonehill's fraud claims.

a.     ***Claims Based on the Financial Statements Are Barred by and Violate the Court's Consent Order and Dismissal Order.***

25.     For the first time, Stonehill now attempts to allege that it purportedly relied on financial statements and accounting practices prepared or used by the Chapter 11 Estates.   These allegations were not included in the Original Claims or the First Amended Claims.[4]   Moreover, the allegations were not asserted in Stonehill's Response to the Original Objection, which objected to the First Amended Claims in their entirety and asserted that the First Amended Claims relied on just two categories of Purported Misrepresentations: the September 10, 2008 earnings call and an "early September" phone call with Wickham.   (*See* Original Obj. ¶ 49).   Stonehill cannot now assert new claims based on the Financial Statements.

26.     The Consent Order granted Stonehill leave to file amended or late filed claims to supersede the Original Claims by April 15, 2014.   (Consent Order 3.)   The Consent Order also expressly prohibited what Stonehill now attempts: the assertion of new allegations against the Chapter 11 Estates after April 15, 2014.   Specifically, it provides that Stonehill is barred from asserting "facts, matters, or circumstances" that were "known to, or in the possession or control of [Stonehill] prior to [March 18, 2014]."   (Consent Order 3).   If Stonehill did, in fact, rely on the Financial Statements, then it clearly knew of them before filing the First Amended Claims.   If it did not know of the Financial Statements before filing the First Amended

---

[4] The only "public" misrepresentation Stonehill referenced with any specificity in the First Amended Claims or the Response was a September 10, 2008 earnings call.  (1st Am. Claims ¶ 12.)  The Court dismissed all claims in the First Amended Claims relating to that earnings call with prejudice.  (Dismissal Order 2.)

Claims, then it could not have relied on such statements in September 2008. Either way, the Consent Order clearly bars the assertion of reliance on the Financial Statements in the Second Amended Claims.

27.     In addition, claims based on the Financial Statements are barred by the Dismissal Order. The Dismissal Order dismissed all claims asserted in the First Amended Claims with prejudice (including those based on public statements), except for private "Wickham conversation type claims." (Dismissal Order 2.) Stonehill was granted leave to re-plead only private "Wickham conversation type claims," provided that the "scope of the re-pleading is consistent with the deficiencies identified by the [Plan Administrator]" in the Original Objection. *Id.* Claims based on the Financial Statements plainly are not "Wickham conversation type claims." Nowhere does Stonehill allege—much less with the particularity required by Rule 9(b) and the Dismissal Order—that Wickham made material misrepresentations regarding the Financial Statements to Stonehill's representative. (*See* 2d Am. Claims ¶¶ 21–40 (containing no allegation that the Financial Statements were the subject of any of the Wickham Comfort Statements).) Stonehill's opportunity to assert claims based on the Financial Statements has long since passed. The Court should not now consider any of Stonehill's allegations regarding the Financial Statements.

28.     Rule 41(b) of the Federal Rules authorizes the Court to dismiss an action "if the plaintiff fails to comply with . . . a court order." Fed. R. Civ. P. 41(b). Any fraud claim based on the Financial Statements should be disallowed an expunged on the ground that such claims violate the Court's Consent Order and Dismissal Order.

12

b.    ***Claims Based on the Financial Statements Fail to Satisfy the Particularity Requirements of Rule 9(b).***

29.    For fraud allegations based on financial reports to meet the standards of Rule 9(b), "there must be a specific identification of what statements were made in what reports and in what respects they were false, misleading, or inaccurate or what omissions were made and why the statements made are believed to be misleading." *Gross v. Diversified Mortg. Investors*, 431 F. Supp. 1080, 1087 (S.D.N.Y. 1977), *aff'd*, 636 F.2d 1203 (2d Cir. 1980) (unpublished table decision). In addition, the plaintiff "must state the time, place and content of each financial statement and report which she claims misled her, the manner in which they were alleged to be fraudulent, and what was obtained as a consequence of the fraud." *Id.* at 1088 (dismissing plaintiff's fraud claim for failure to plead with particularity the allegedly misleading publications and reports on which she relied and the particular misstatements or omissions in such documents); *accord Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) ("For claims of fraudulent misrepresentation, the Second Circuit has held that Rule 9(b) requires allegations that (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)) (internal quotation marks omitted); *LightSquared*, 504 B.R. at 536.

30.    Here, even if Stonehill's assertions of reliance on the Financial Statements were not barred by the Consent Order and Dismissal Order, Stonehill failed to plead a fraud claim based on the Financial Statements that satisfies Rule 9(b). Put simply, the Second Amended Claims failed to identify even a single statement or filing prepared by the Chapter 11 Estates on which Stonehill relied in making its investment decisions. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 113 (2d Cir. 1982) (dismissing fraud claim because the plaintiff's

13

statements that the defendant's financial reports "presented a 'false, misleading, and inflated picture of assets, earnings, and business' . . . obviously do not comply with Rule 9(b).") (citation omitted); *Gross*, 431 F. Supp. at 1087 (dismissing fraud claim because plaintiff's general allegation that the defendant issued "false and misleading annual and quarterly reports, financial statements and other materials, and filed false and misleading reports . . ." is "just [the] kind of generalized statement . . . that must be stricken under Rule 9(b)").  Indeed, allegations of general reliance on financial statements for indefinite periods of time, without any supporting facts indicating how Stonehill relied on the Financial Statements, are too conclusory to meet the pleading requirements of Rule 9(b).  *See Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*, 822 F. Supp. 2d 369, 386, 387 (S.D.N.Y. 2011) (dismissing common law fraud claims under New York law on grounds that plaintiffs' allegations regarding its reliance on defendant's financial statements was "too conclusory to state a claim to relief"); *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 246 (S.D.N.Y. 1975) (dismissing fraud claim where plaintiff failed to "identify the financial statements and reports which they claim misled them" on the ground that "denominating unspecified financial statements and reports as 'false,' 'misleading,' or 'inaccurate' is not sufficient" to satisfy the pleading requirements of Rule 9(b)).

### B. Stonehill Failed to Allege Reasonable Reliance.

31.     Even if Stonehill had alleged a misrepresentation of material fact, which it has not, Stonehill's failure to allege reasonable reliance is another fatal pleading defect.  Without alleging and proving this prima facie element, Stonehill could not recover on either the Diminution Claims or the FX Claims as a matter of law.  Accordingly, omission of this critical element from the pleading independently requires that the Second Amended Claims should be disallowed and expunged in their entirety.

WEIL:\95346136\10\58399.0011

i.    **Stonehill failed to and cannot state a fraud claim based on reliance on the Comfort Statements.**

32.    "As a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties."  *UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney*, 733 N.Y.S.2d 385, 386 (1st Dep't 2001) (citations omitted).  The Second Circuit "imposes a duty on sophisticated investors to obtain documentation of information material to their investment decisions":

> [W]here, as here, a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation . . . , he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.

*Belin v. Weissler*, No. 97 Civ. 8787 (RWS), 1998 WL 391114, at 6 (S.D.N.Y. July 14, 1998) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531 (2d Cir. 1997) (dismissing fraud claim based on plaintiff's failure to fulfill his "obligation . . . to secure and review a copy of the insurance policy upon which his investment decision was allegedly premised"); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 290 (S.D.N.Y. 1998).  New York State courts also prohibit sophisticated plaintiffs from relying on oral representations without reviewing relevant documentation.  *See Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 665 N.Y.S.2d 415, 417, 418 (1st Dep't 1997) ("Plaintiffs were relatively sophisticated investors who should have understood the risks of investing in a real estate venture without conducting a 'due diligence' investigation or consulting their lawyers and accountants.  In fact, Lorraine Borden did not even read the *prospectus,* the implication being that she entered

15

into this venture based on Politis' alleged oral promises alone. As such reliance is not reasonable, the existence of a dispute as to whether Politis made such promises does not create a triable issue on the fraud claim."). A plaintiff has "access" to a defendant's documentation where "he could have asked to see [it]." *Belin*, 1998 WL 391114 at 7.

33.    Sophisticated plaintiffs may not rely solely on a party's oral representations even where they do not have access to underlying documentation. As the District Court for the Southern District of New York has explained:

> The [First Department of the] Appellate Division has even affirmed the dismissal of a complaint which had sought the rescission of agreements procured through fraud where the plaintiffs made some effort to review a corporation's records but ultimately failed to obtain the documents. *See Rodas v. Manitaras*, [552 N.Y.S. 2d 618, 620 (1st Dep't 1990)]. In *Rodas*, the plaintiffs sought the rescission of sale and purchase agreements on the ground that they had been fraudulently induced to enter into those agreements. *Id.* at 619. The plaintiffs had been aware that the income of the business in question in *Rodas* was a material fact about which they had received no documentation. *Id.* at 620. Although the plaintiffs had asked to examine the business' records and had that effort rebuffed, the Appellate Division nonetheless held that the "[p]laintiffs could easily have protected themselves by *insisting* on an examination of the books as a condition of closing." *Id.* (emphasis added). The court therefore held that the plaintiffs could not be heard to complain that they had been defrauded as they had chosen to proceed with a transaction without, among other things, securing the available documentation. *Id.*

*Waksman v. Cohen*, No. 00 Civ. 9005 (WK), 2002 WL 31466417, at 7 (S.D.N.Y. Nov. 4, 2002).

34.    Here, Stonehill alleges summarily that "based upon [the Comfort Statements it] decided not to transfer its securities held at LBI to a different broker-dealer and novate its in-the-money foreign exchange contracts." (2d Am. Claims ¶ 38.) Stonehill's summary allegation of reliance fails to satisfy the particularity requirements of Rule 9(b) and plainly fails to constitute justifiable reliance under New York law. Stonehill's single allegation contains no factual detail whatsoever. For a sophisticated entity that asserts it was "*on the verge of deciding [to] change its prime broker*" (*id.* ¶ 21 (emphasis added)), Stonehill does not allege

WEIL:\95346136\10\58399.0011

what other information it was considering in its decision or how the Comfort Statements caused it to weigh such information differently.  Nor does Stonehill allege that it pressed Wickham for details or requested to review any underlying documentation that could have supported the Comfort Statements.  Under these circumstances, the Second Amended Claims fail to satisfy Rule 9(b).

35.    For the same reasons, Stonehill cannot allege that any reliance it placed on Wickham's Comfort Statements was justifiable.  By failing to ask Wickham for a "specific [representation] of a material present fact" or for any documentation in support of the Comfort Statements, Stonehill as a matter of law "willingly assumed the business risk that the facts may not [have been] as represented."  *Fadeyi*, 825 N.Y.S.2d at 734; *Lazard Freres*, 108 F.3d at 1543.

36.    Additionally, whatever reliance on Wickham's Comfort Statements regarding the "financial condition of the Lehman Entities" (2d Am. Claims ¶ 25) that might have been reasonable on September 8, 2008, could not, as a matter of law, have been reasonable after LBHI made global headlines by filing the largest chapter 11 proceeding in history on September 15, 2008, or during the week of September 8, 2008, when the value of LBHI's common stock decreased by over 75%.[5]  (*See* Hopkins Decl. Ex. A at 1.)

---

[5] The Declaration of Christopher J. Hopkins in Support of the Plan Administrator's Five Hundredth Omnibus Objection to Claims (No Liability for Stonehill Fraud Claims) is filed concurrently herewith.  The Court may take judicial notice of the changing prices of LBHI's common stock during the period of Stonehill's purported reliance on the Financial Statements.  *See Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 37 n.1 (2d Cir. 2012) ("We are entitled to take judicial notice of well publicized stock prices without converting the motion to dismiss into one for summary judgment."); *Comas v. Merrill Lynch & Co.*, No. 92 CIV. 6560 (KC), 1993 WL 800778, at 4 n.2 (S.D.N.Y. July 2, 1993) ("Although this is a motion to dismiss, we are permitted to take judicial notice of the fact that the prices of [the] Shares were listed daily in the Wall Street Journal."); *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 260 n.6 (Bankr. S.D.N.Y. 2008) ("A court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.") (citations and internal quotation marks omitted).

      ii.    **Stonehill failed to and cannot state a fraud claim based on reliance on the Financial Statements.**

37.    Stonehill's own allegations plainly contradict its assertion that it placed any reliance on the Financial Statements. Stonehill alleges that it "reasonably relied on the Lehman Entities' financial statements in maintaining its securities with LBI and not demanding the return of its securities, or terminating its open transactions with LBI . . . ." (2d Am. Claims ¶ 20.) Yet in the very next sentence, Stonehill asserts that prior to its September 8, 2008 call with Wickham, it "was on the verge of deciding that Stonehill should change its prime broker and terminate various open transactions with LBI as a result of growing concern about the Lehman Entities." (*Id.* ¶ 21.) Stonehill could not have been both "*on the verge of deciding [to] change its prime broker*" and simultaneously "reasonably rel[ying] on the Lehman Entities' financial statements in maintaining its securities with LBI." (*Id.* ¶¶ 20, 21 (emphasis added).) As a factual matter, Stonehill's allegations contradict each other, warranting disallowance of the Second Amended Claims. *See In re Livent, Inc. Noteholders Sec. Litig'n*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (Plaintiffs may not make a "factual assertion in one paragraph of the complaint declaring that they were not aware of some material information, and in another part of the same claim concede that they relied detrimentally upon that same factual representation as the basis for recovery."); *Buchwald v. Di Lado Beach Resort, Ltd. (In re McCann, Inc.)*, 318 B.R. 276, 290 (Bankr. S.D.N.Y. 2004) (dismissing claim because "the plaintiff's inconsistent allegations appear in the *same* claim, and are self-defeating"). As a legal matter, these allegations are not only insufficient under Rule 9(b) but demonstrate the unreasonableness—and, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the implausibility—of Stonehill's purported reliance on the Financial Statements.

38.    Further, any reliance by Stonehill on the Financial Statements would have been unjustifiable as a matter of law during the week of September 8, 2008,[6] in the face of Stonehill's own "concerns" and the decline in value of LBHI's common stock by over 75% in the four days between September 8, 2008 (the date of the alleged phone call with Wickham) and September 12, 2008.  (*See supra* ¶ 36.)  As the Second Circuit held during an earlier financial crisis:

> Without deciding whether a statement showing the financial condition of the debtor in March, 1920, and delivered in June, can be regarded in ordinary times as in full force and effect in December, 1920, we do not think it was entitled to be so regarded under the conditions which then prevailed in the United States.  The court can take judicial notice of the financial depression which then prevailed throughout this country.  Indeed, we all know that at that time there was world-wide financial depression, which was the subject of national and international conference.  As to the right of the court to take judicial notice of the financial depression which existed.  In view of the general financial depression which prevailed, the claimant was not reasonably entitled to rely in December on a financial statement made nine, or even six, months previously, and not mentioned by either party at the time of the transactions involved.

*In re B. & R. Glove Corp.*, 279 F. 372, 380 (2d Cir. 1922) (citations omitted).  Stonehill's purported reliance on Financial Statements is squarely addressed by *B. & R. Glove*.  The Financial Statements reflected the Chapter 11 Estates' prepetition finances (i) prior to the most severe global financial crisis since the Great Depression, (ii) months before Stonehill found itself "on the verge of deciding that Stonehill should change its prime broker and terminate various open transactions with LBI as a result of growing concern about the Lehman Entities," and (iii) months before LBHI's stock price declined by over 75% in the four days between September 8, 2008 (the date of the alleged phone call with Wickham) and September 12, 2008.

---

[6] Lehman Brothers Holdings Inc.'s most recent financial statements as of the September 8, 2008 phone call were filed on July 10, 2008 for the period ending May 31, 2008.   *See* Lehman Brothers Holdings Inc., Quarterly Report (Form 10-Q) (July 10, 2008).

WEIL:\95346136\10\58399.0011

(2d Am. Claims ¶ 21; *see* Hopkins Decl. Ex. A at 1.)  Under those circumstances, any reliance by Stonehill on the Financial Statements was unjustifiable as a matter of law.  *See id.*

### C.  Stonehill Failed to Allege Proximate Causation.

39.  A third, independent element of a fraud claim is that the allegedly fraudulent misrepresentation caused the injury to the plaintiff.  *LightSquared*, 504 B.R. at 344. "To establish causation, plaintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation)." *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (1st Dep't 2002).

40.  Failure to allege adequate causation is grounds for dismissal on a motion to dismiss.  *Bennett v. U.S. Trust. Co.*, 770 F.2d 308, 315 (2d Cir. 1985) (dismissing common law fraud claim under New York law on a motion to dismiss because plaintiff failed to plead adequate causation); *accord Laub*, 745 N.Y.S.2d at 536 (dismissing fraud claim on summary judgment where plaintiff failed to allege that defendant's misrepresentations directly and proximately caused the alleged losses).  Here, Stonehill failed to please both transaction causation and loss causation.  Accordingly, it cannot recover on either the Diminution Claims or the FX Claims as a matter of law, and the Second Amended Claims should be disallowed and expunged in their entirety.

### i.  Stonehill failed to and cannot plead loss causation.

41.  "Loss causation is the fundamental core of the common-law concept of proximate cause." *Laub*, 745 N.Y.S.2d at 536; *see also Lama Holding Co. v. Smith Barney*, 688 N.E.2d 1370, 1373, 1374 (N.Y. 1996).  Where a common law fraud claim seeks recovery of damages resulting from the diminution in value of securities, the proximate cause element requires that the plaintiff adequately allege a causal connection between the alleged

WEIL:\95346136\10\58399.0011

misrepresentation and the decline in value of the securities. *See Bennett*, 770 F.2d at 314; *see also Emergent Capital Inv. Mgmt. v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) ("the proximate cause element of common law fraud requires that plaintiff adequately allege a causal connection between defendants' [misrepresentations] and the subsequent decline in the value of [the plaintiff's] securities"). Thus, if the securities decreased in value as a result of normal market fluctuations or conditions of the issuer, a plaintiff cannot plead loss causation based on a third-party defendant's unrelated misrepresentations.

42.     The Second Circuit has held that a plaintiff seeking to recover losses attributable to the diminution in value of its securities on account of a common law fraud claim must allege that the representations on which it purported to rely either (i) induced the plaintiff to purchase or hold particular securities or (ii) related to the investment quality of the securities. *See Bennett*, 770 F.2d at 314; *see also Emergent Capital*, 343 F.3d at 197.

43.     The Second Circuit's decision in *Bennett v. U.S. Trust Co.* is directly on point and is controlling precedent in this dispute. In *Bennett*, the plaintiff alleged that the defendant made fraudulent misrepresentations to the plaintiff to induce the plaintiff to enter into a series of margin loan transactions to allow the plaintiff to purchase certain public utility securities which the plaintiff subsequently pledged to the defendant as collateral for the loans. *Bennett*, 770 F.2d at 310. The defendant allegedly misrepresented to the plaintiff that the Federal Reserve's margin lending rules would not apply to the plaintiff's accounts. *Id.* After entering into the transactions, however, the plaintiff discovered that the Federal Reserve's margin lending rules did in fact apply to the accounts. *Id.* The accounts eventually became undermargined as the value of the plaintiff's securities decreased in value, and the defendant liquidated the stock in

WEIL:\95346136\10\58399.0011

the plaintiff's accounts.  *Id.*  As a result, the plaintiff lost approximately $1 million in connection with the securities pledged as collateral to the defendant.  *Id.*

44.    The plaintiff commenced an action against the defendant seeking, among other things, damages "based on the decline in market value of the stock purchased with the loan proceeds" under various causes of action, including common law fraud under New York law.  *Id.* The defendant moved to dismiss the complaint pursuant to Federal Rule 12(b)(6) on the ground that "there was an inadequate causal relationship between [defendant's] acts and the [plaintiff's] loss."  *Id.* at 310–11.

45.    The Second Circuit affirmed the District Court's dismissal of the plaintiff's claim for common law fraud on the ground that the plaintiff "failed to allege the requisite causation" by failing to allege any misrepresentation by the defendant related to the plaintiff's securities.  *Id.* at 313.  The court rejected the plaintiff's argument that but for the defendant's misrepresentations it would not have obtained the loans and purchased the stock. The court stated that such allegations "fail to establish the necessary loss causation; there is simply no direct or proximate relationship between the loss and the misrepresentation."  *Id.* at 314.  The court concluded that the "loss at issue was caused by the [plaintiff's] own unwise investment decisions, not by the [defendant's] misrepresentation" regarding the Federal Reserve's margin lending rules.  *Id.*  Accordingly, the court dismissed the plaintiff's common law fraud claim under New York law because the plaintiff's "but-for allegations [were] insufficient to state a cause of action."  *Id.* at 316.

46.    Like the plaintiff in *Bennett*, Stonehill failed to plead the requisite loss causation to support its Diminution Claims.  The Second Amended Claims contain no allegation that the Purported Misrepresentations proximately caused the diminution in value of Stonehill's

22

securities underlying the Diminution Claims—securities that were not issued by any of the Chapter 11 Estates.   Indeed, Stonehill concedes that certain of its securities held by LBI increased in value before they were returned by LBI.[7]   Stonehill's "but-for allegations" that in the absence of the alleged fraud it would have transferred its securities to another broker-dealer fails to allege adequate causation to state a claim for fraud under New York law.   The present allegations could merely establish, at best, that but for the Purported Misrepresentations, Stonehill's securities would have lost value while in the custody of another broker-dealer.

<b>ii.      <u>Stonehill failed to and cannot plead transaction causation.</u></b>

47.     Stonehill also failed to allege transaction causation.   To state a fraud claim under New York law, the allegations must "provide[] the requisite causal connection between the defendant's misrepresentations and the plaintiff's injury."   *Matana v. Merkin*, 989 F. Supp. 2d 313, 324 (S.D.N.Y. 2013) (citation omitted); *see supra* ¶ 42.

48.     Stonehill's exclusive focus on the wrong transaction is a red herring. Stonehill alleges that, but for the Purported Misrepresentations, it would have transferred its prime brokerage accounts to another broker-dealer prior to the SIPA Commencement Date.   But, as noted above, at best, this could establish only that Stonehill's illiquid securities would have lost value while in the custody of another hypothetical broker-dealer.[8]   Stonehill does not allege,

---

[7] (*See* 1st Am. Claims at Ex. C.)

[8] The illiquid nature of Stonehill's securities is evidenced by Stonehill's inability to provide market values as of the SIPA Commencement Date.   Despite defining the Diminution Claims as the diminution in value of its securities from the SIPA Commencement Date (September 19, 2008) through the date its securities were returned by LBI, Stonehill uses earlier market values (e.g., August 31, 2008) to calculate the Diminution Claims (overstating the claims if the market value of the securities dropped along with the larger market throughout September 2008).   (*See* 1st Am. Claims Ex. C.)

WEIL:\95346136\10\58399.0011

as is required for a fraud claim, that it relied on the Purported Misrepresentations in failing to liquidate its illiquid securities.[9]  *Id.*

49.      Here, there is no allegation whatsoever, and certainly no "concrete" and "non-speculative" basis on which the Court can conclude that Stonehill would—or even could—have liquidated its illiquid portfolio at higher values between the SIPA Commencement Date and the dates on which its securities were returned.[10]  Stonehill does not allege that it had "in place a specific investment philosophy and standards" that, absent the alleged fraud, "would have triggered a decision within [Stonehill]" to liquidate its securities.  *Matana*, 989 F. Supp. 2d at 325.  It does not allege that "that there were meetings or discussions within [Stonehill] as to whether to retain [its securities] position, and that the challenged representations factored into [it]s decision to continue to hold" those securities."  *Id.*  Stonehill does not assert any point in time when it contends it would have sold any of its securities if all the holdings in its LBI account had been transferred to another broker on September 8, 2008, which is the day of the Wickham call.  Stonehill does not allege any price at which these hypothetical sales would have occurred if the securities had been in a prime brokerage account with another broker.  Taking all of the facts as true, Stonehill has merely asserted that the value of some of its securities was higher on September 19, 2008 than on some unspecified later date(s) when the securities were returned.  The Court may take judicial notice that a loss of market value is consistent with the performance of many securities during this time period.  Despite multiple opportunities to

---

[9] In fact, Stonehill acknowledged that "Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment."  PB Agreements § 21(i).

[10] Stonehill's assertion of the Diminution Claims necessarily assumes that Stonehill could and would have liquidated its illiquid securities on or after the SIPA Commencement Date, thereby avoiding the diminution in value before the securities were returned to it.

amend, there is no allegation that any of these securities were at higher prices at any point in that interim and no assertion that Stonehill would have recognized any elusive "high point" and sold securities on a particular date before they fell back to the value on the date they were returned by the SIPA Trustee.  Under the facts asserted in the Second Amended Claims, Stonehill has merely alleged that the Diminution Claims were caused by Stonehill's "own unwise investment decisions" and ordinary market forces, not the Purported Misrepresentations.

50.     The FX Claims suffer from similar flaws in the alleged chain of causation. Stonehill's conclusory allegation that it relied on the Purported Misrepresentations in deciding not to attempt to novate its foreign exchange ("FX") forward contracts is simply too speculative to support a fraud claim.  Stonehill has not alleged that it would have, in fact, determined to novate, liquidate or terminate its forward contracts absent its supposed reliance on the Purported Misrepresentations, or any non-speculative particulars with respect thereto.  Moreover, Stonehill fails to allege that it could have novated its long-term, in-the-money forward contracts between September 8, 2008 and the SIPA Commencement Date (and at what price it would have been able to do so).  (Novating would require a third party to take on LBI's credit risk whilst Stonehill itself wanted to "reduce its commercial exposure to Lehman Brothers." (*See* 2d Am. Claims ¶ 16).)  Stonehill also fails to allege that it could have terminated or liquidated the forward contracts—and further, that if it had, it would have been entitled to anything other than a receivable from LBI payable on the maturity date of the forward contracts.  A long term unsecured obligation from LBI would have resulted in a general unsecured claim against LBI, meaning that Stonehill would have been in the same position whether or not it relied upon the Purported Misrepresentations.  Further, as noted above and described below, speculative damages for lost profits of an alternative bargain are not recoverable under a fraud claim.

D.    **Stonehill Failed to Allege Recoverable Damages.**

51.    Even if Stonehill had properly alleged a misrepresentation of material fact, reasonable reliance, and proximate cause, which it has not, Stonehill failed to allege recoverable damages. Without this prima facie element, Stonehill cannot recover on either the Diminution Claims or the FX Claims as a matter of law. Accordingly, the Second Amended Claims should be disallowed and expunged in their entirety.

52.    As an initial matter, Stonehill failed to allege that it suffered any damages from its Diminution Claims. It alleges that certain securities had different values on different dates, but it doesn't allege that Stonehill actually sold any of the securities such that it realized an actual loss (as opposed to holding the securities while markets and values increased, mitigating or eliminating actual loss entirely).

53.    Moreover, "it is [ ] well settled that the victim of fraud may not recover the benefit of an alternative agreement overlooked in favor of the fraudulent one." *Alpert v. Shea Could Climenko & Casey*, 559 N.Y.S.2d 312, 315 (1st Dep't 1990) (dismissing fraud claim on summary judgment because that plaintiff's allegations that "but for the fraud they would have invested in some other [transaction]" failed to plead recoverable damages); *see also Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 127, 128 (1st Dep't 2009) (dismissing fraud claim because plaintiff's allegation that "but for [defendant's] fraud, he could have had more remunerative employment than that which he ultimately obtained" failed to plead recoverable damages); *Kensington Publ'g Corp. v. Kable News Co., Inc.*, 474 N.Y.S.2d 524, 526 (2d Dep't 1984) (dismissing fraud claim where only damages alleged resulted from the plaintiff being "induced by false representations to enter into a less favorable contract with defendant than it would have entered into but for such false representations"). Accordingly, damages resulting from the loss of an alternative contractual bargain cannot serve as a basis for a fraud claim because such losses

are too "undeterminable and speculative." *Lama Holding Co.*, 688 N.E.2d at 1374 (citation

omitted); *see Geary v. Hunton & Williams*, 684 N.Y.S.2d 207, 207 (1st Dep't 1999) (New York

law "bars recovery of profits that would have been realized in the absence of fraud, including the

loss of an alternative bargain overlooked in favor of the fraudulent one, as inherently speculative

and undeterminable.").

     54.    As New York courts have explained, particular scrutiny is applied when a

fraud is alleged to have prevented a security holder from making a hypothetical sale.  "In the

case of a holder claim seeking damages based on the value that would have been realized in a

hypothetical sale":

> *the degree of speculation in determining damages is essentially quadrupled*, in
> that the factfinder must determine (1) whether the claimant would have engaged
> in a transaction at all if there had been accurate disclosure of the relevant
> information, (2) the time frame within which the hypothetical transaction or series
> of transactions would have occurred, (3) the quantity of the security the claimant
> would have sold, and (4) the effect truthful disclosure would have had on the
> price of the security within the relevant time frame. These cumulative layers of
> uncertainty amount to a difference in the quality, not just the quantity, of
> speculation, and take the claim out of the realm of cognizable damages.

*Starr Found'n v. Am. Int'l Grp.*, 901 N.Y.S. 2d 246, 250  (1st Dep't 2010) (emphasis added).

     55.    Indeed, Stonehill ignores the clear limitations on the proper measure of

damages for any alleged fraud.  "In an action to recover damages for fraud . . . the true measure

of damages is indemnity for the actual pecuniary loss sustained as the direct result of the wrong,

or what is known as the 'out-of-pocket' rule." *Lama Holding Co.*, 688 N.E.2d at 1374 (citations

and internal quotation marks omitted).  "Under this rule, the loss is computed by ascertaining the

difference between the value of the bargain which a plaintiff was induced by fraud to make and

the amount or value of the consideration exacted as the price of the bargain." *Id.* (citations and

internal quotation marks omitted).  Under the out-of-pocket rule, damages are to be calculated to

compensate plaintiffs for what they lost because of the fraud, not to compensate them for what

WEIL:\95346136\10\58399.0011

they might have gained.  *Id.  See also Tradex Global Master Fund SPC LTD v. Titan Capital Grp. III, LP*, 944 N.Y.S.2d 527, 529 (1st Dep't 2012) ("Moreover, even under New York law, such a 'holder claim' would be precluded under the out-of-pocket rule by which the true measure of damages for fraud is indemnity for the actual pecuniary loss sustained as a direct result of the wrong."); *Bank Hapoalim B.M. v. WestLB AG*, 995 N.Y.S.2d 7, 11 (1st Dep't 2014) ("This case is essentially a "holder" fraud case—that is, the alleged fraud is that the structured investment vehicles held their assets instead of liquidating them.  As a result, plaintiffs suffered no out-of-pocket loss.").

56.    In this case, the only nonspeculative losses Stonehill could possibly be entitled to—but did not even claim—are the fees, if any, it paid in advance to LBI or the Chapter 11 Estates for prime brokerage services to be provided by LBI *after* the SIPA Commencement Date.  Stonehill is not entitled to the benefit of any alternative bargain it could have entered into if it had access to its securities or could have novated its FX forward contracts following the SIPA Commencement Date.  Such losses are simply too speculative and uncertain to constitute recoverable damages on account of a fraud claim under New York law.  *See Alpert*, 559 N.Y.S.2d at 315 ; *see also Rather*, 886 N.Y.S.2d at 127, 128; *Kensington Publ'g Corp. v. Kable News Co., Inc.*, 474 N.Y.S.2d 524, 526 (2d Dep't 1984).

## II.    **Stonehill's Assertions That Each of the Chapter 11 Estates Is Liable for Fraud Are Meritless.**

### A.    **Stonehill Failed to Allege That Wickham Had the Apparent Authority to Bind the Chapter 11 Estates.**

57.    Stonehill alleges that twenty Chapter 11 Estates are liable based on the Comfort Statements because Wickham had "apparent authority to act for LBHI and the other Lehman Entities" during a September 8, 2008 phone call.  (2d Am. Claims ¶ 24.)  But the allegations in the Second Amended Claims are insufficient as a matter of law to establish that

28

Wickham had apparent authority to act on behalf of each of the Chapter 11 Estates, and the Second Amended Claims should be disallowed in their entirety on this basis alone.

58.     To adequately plead apparent authority, a plaintiff must allege "words or conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority" to act on the principal's behalf. *Hallock v. State*, 64 N.Y.2d 224, 231 (1984) (emphasis added).  In addition, a plaintiff must allege that its "reliance on the misleading conduct of the agent [was] reasonable." *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014); *accord Johnson v. Nationwide Gen. Ins. Co.*, 971 F. Supp. 725, 734 (N.D.N.Y. 1997) ("To recover under a theory of apparent authority, the plaintiff must also show that she reasonably relied upon the words or actions of the principal."), *aff'd sub nom. Johnson v. Nationwide Ins. Co.*, 162 F.3d 1148 (2d Cir. 1998) (unpublished table decision); RESTATEMENT (SECOND) OF AGENCY § 27 (1958) (noting that conduct of the principal must be "reasonably interpreted [to cause] the third person to believe that the principal consents to have the act done on his behalf").

59.     Stonehill failed to allege *any* specific communication by a particular Chapter 11 Estate, let alone twenty communications by twenty particular Chapter 11 Estates that would give rise to the appearance that Wickham had apparent authority to bind those particular twenty Chapter 11 Estates.  Instead, Stonehill alleges merely that (i) unnamed "Lehman Entities' personnel" on unspecified occasions "identifies themselves generally and generically as Lehman Brothers employees" and (ii) the "Lehman Entities held themselves out as . . . an integrated enterprise acting under the Lehman Brothers name, and principally operated through business segments . . . rather than through legal entities . . . ."  (2d Am. Claims ¶¶ 8, 9.)

WEIL:\95346136\10\58399.0011

60.      Such generalized allegations regarding the method in which related corporate entities conduct operations are insufficient as a matter of law to establish apparent authority in the absence of allegations that the principal communicated with the plaintiff. *See, e.g.*, *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 487 (S.D.N.Y. 2001) (finding that allegations that the principal and agent "held themselves out" as a single global entity were insufficient because there were no allegations of communications to the plaintiff giving the appearance that the agent was acting on behalf of the principal ); *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03-Civ-0613 (GBD), 2004 WL 112948, at 5, 6 (S.D.N.Y. Jan. 22, 2004) (finding that allegations that agents "operated under the control of" and were "so identified therewith" the principal were insufficient to establish apparent authority absent specific communications from principal to plaintiff); *see also Precedo*, 33 F. Supp. 3d at 255–57 ("The Complaint is deficient because it does not contain a single allegation that [the alleged principal] communicated with plaintiffs."); *Adams*, 2009 WL 928143, at *4 (dismissing a complaint on a motion to dismiss where the Court found insufficient "words or conduct of [the principal] communicated to [plaintiff] that give rise to the appearance and belief that [agent] possess[ed] authority"); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 320 (S.D.N.Y. 2006) (inclusion of purported agent's name in account paperwork was insufficient "communication" by the principal to establish existence of apparent authority).

61.      That Wickham may have led Stonehill to believe that he was speaking on behalf of one or more Chapter 11 Estates is legally irrelevant, as is Stonehill's alleged "understanding that Mr. Wickham called . . . on behalf of, and had apparent authority to act for LBHI and for the other Lehman Entities." (2d Am. Claims ¶ 24.) "The core principle that underlies the theory of apparent authority is that a [plaintiff] must have relied on the

misrepresentation of the agent because of *some misleading conduct on the part of the principal – not the agent*." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, at 90 (S.D.N.Y. 2010) (citation and internal quotation marks omitted); *accord Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y. 1973) ("The apparent authority for which the principal may be held liable must be traceable to him; it cannot be established by the unauthorized acts, representations or conduct of the agent." (citation omitted)).

62.     Stonehill's apparent authority allegations are also insufficient because Stonehill failed to allege that its reliance on Wickham's apparent authority was reasonable. Instead, Stonehill alleges, without any particularity, that:

> Lehman Entities personnel that [Stonehill] interacted with usually, if not exclusively, identified themselves generally and generically as Lehman Brothers employees. As such, SCM believed and had a reasonable basis to believe that such Lehman Entities' personnel had apparent authority to and did in fact act for and represent LBHI, LBI and the other Lehman Entities.

(2d Am. Claims ¶ 9.)   This statement does not specifically mention Wickham or Stonehill's reasonable reliance on his apparent authority.   But even if it did, it would have been unreasonable for Stonehill to believe that Wickham had apparent authority to bind twenty Chapter 11 Estates merely because "Lehman Entities personnel" previously self-identified as working for "Lehman Brothers."   Indeed, Stonehill has not and cannot allege any set of facts under which it would have reasonable for a sophisticated party, such as Stonehill, to believe that a single alleged agent, speaking in regards to a prime brokerage account, had the authority to bind the *entire* Lehman enterprise—thousands of entities, many regulated, many special-purpose vehicles or entities, doing business across the globe.   *See Berliner v. Crossland Fed. Sav. Bank*, 886 F. Supp. 325, 330 (S.D.N.Y. 1994) (dismissing claim because sophisticated plaintiff could not reasonably rely on the alleged apparent authority because plaintiff knew of the existence of

31

an "Executive Committee" holding decision-making authority); *Dinaco, Inc. v. Time Warner Inc.*, No. 98-6422, 2002 WL 31387265, at 4 (S.D.N.Y. Oct. 22, 2002) (plaintiff who was "well-versed in the significance of [corporate formalities]" could not have reasonably relied on appearance of apparent authority because plaintiff was on notice that the alleged agent "was a separate incorporated entity"), *aff'd* 346 F.3d 64 (2d Cir. 2003); *see also Johnson*, 971 F. Supp. at 734 (noting that the reasonableness of reliance depends on the characteristics of the plaintiff).

### B.    Stonehill Failed to Establish Any Basis to Hold the Chapter 11 Estates Jointly and Severally Liable.

63.    "It is a general rule that one person is not responsible for the fraud of a third person, unless he in some way participates in the fraud, or unless he is responsible therefor on some principle of the law of agency." *Voisin v. Providence Washington Ins. Co.*, 65 N.Y.S. 333, 338 (1st Dep't 1900); *see Chess Enters. v. Beldon Assocs.*, 148 N.Y.S.2d 804, 804 (2nd Dep't 1956) (dismissing fraud claim against corporation's shareholder on the ground that a corporation is distinct from its shareholders and there was no allegation that the shareholder "participated in any manner the alleged fraud or that he acted as agent for that corporation in connection therewith").

64.    As explained above, Stonehill has failed to sufficiently allege that the Chapter 11 Estates are liable for the fraud "on some principle of the law of agency." (*See supra* ¶¶ 58–63.) In addition, Stonehill failed to allege any facts that any particular Chapter 11 Estate participated in the alleged fraud, which is required by Rule 9(b). *LightSquared*, 504 B.R. at 356 ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement." (citation omitted)). Moreover, based on case law and law of the case, Stonehill has not articulated and cannot assert veil piercing, alter-

WEIL:\95346136\10\58399.0011

ego, single enterprise, substantive consolidation, or other similar theory to impute liability on the Chapter 11 Estates. *See, e.g., Third Supp. Order Granting Debtors' One Hundred Seventeenth Omnibus Obj. to Claims*, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Nov. 25, 2013) [ECF No. 41278]; *Third Supp. Order Granting Debtors' One Hundred Seventy-Third Omnibus Obj. to Claims*, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Nov. 25, 2013) [ECF No. 41280]; *see also Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the trustee or the debtor-in-possession."); *Murray v. Miner*, 876 F. Supp. 512, 516, 517 (S.D.N.Y. 1995); *Duke Energy Trading & Mktg., L.L.C. v. Enron Corp.* (*In re Enron Corp.*), No. 02-3609, 2003 WL 1889040, at 3 (Bankr. S.D.N.Y. April 17, 2003).

65.    Accordingly, Stonehill has alleged no basis for imposing joint and several liability for the alleged fraud on each of the Chapter 11 Estates and the Second Amended Claims should be disallowed and expunged. *See LightSquared*, 504 B.R. at 356.

## RESERVATION OF RIGHTS

66.    The Plan Administrator does dispute and reserves all rights to dispute the following with respect to any portion of the Second Amended Claims as to which the Court does not grant the relief requested herein: (i) any allegation of fact or conclusion of law in the Second Amended Claims; and (ii) liability for and the amount and valuation of any such claim(s). The Plan Administrator also reserves all rights to conduct discovery and supplement this and other filings with respect to any claim as to which the Court does not grant the requested relief. Finally, the Plan Administrator reserves its rights to proceed against Stonehill for the fees and expenses incurred postpetition in connection with the Original Claims, the First Amended

WEIL:\95346136\10\58399.0011

Claims, and the Second Amended Claims, whether under the indemnification provisions of the PB Agreement or other applicable law.

## **CONCLUSION**

67.     Stonehill has, for the fourth time, failed to state a claim against the Chapter 11 Estates.  It has received the process that is due.  Nothing in any response to this Objection can cure the deficiencies articulated above.  Holders of Allowed Claims are entitled to distributions of the more than $160 million that have been delayed as a result of Stonehill's insufficient claims.

WHEREFORE, for the reasons set forth herein, the Plan Administrator respectfully requests that the Court disallow and expunge the Second Amended Claims in their entirety and grant such other and further relief as is just and appropriate.

Dated:    May 29, 2015
          New York, New York

                           /s/ Garrett A. Fail
                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone:   (212) 310-8000
                          Facsimile:    (212) 310-8007
                          Garrett A. Fail
                          Ralph I. Miller

                          *Attorneys for Lehman Brothers Holdings Inc.
                          and Certain of Its Affiliates*

34

**EXHIBIT A**

**OMNIBUS OBJECTION 500: EXHIBIT A - NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # |
|---|---|---|---|---|---|
| 1 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10558 (SCC) | Structured Asset Securities Corporation | 04/10/2015 | 68232 |
| 2 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13664 (SCC) | PAMI Statler Arms LLC | 04/10/2015 | 68233 |
| 3 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10108 (SCC) | Luxembourg Residential Properties Loan Finance S.a.r.l. | 04/10/2015 | 68234 |
| 4 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13904 (SCC) | Lehman Scottish Finance L.P. | 04/10/2015 | 68235 |
| 5 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13900 (SCC) | Lehman Commercial Paper Inc. | 04/10/2015 | 68236 |
| 6 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 04/10/2015 | 68237 |
| 7 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13893 (SCC) | Lehman Brothers OTC Derivatives Inc. | 04/10/2015 | 68238 |
| 8 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13902 (SCC) | Lehman Brothers Financial Products Inc. | 04/10/2015 | 68239 |
| 9 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13899 (SCC) | Lehman Brothers Derivative Products Inc. | 04/10/2015 | 68240 |
| 10 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13885 (SCC) | Lehman Brothers Commodity Services Inc. | 04/10/2015 | 68241 |
| 11 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13901 (SCC) | Lehman Brothers Commercial Corporation | 04/10/2015 | 68242 |
| 12 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 04/10/2015 | 68243 |
| 13 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10560 (SCC) | LB Rose Ranch LLC | 04/10/2015 | 68244 |
| 14 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13600 (SCC) | LB 745 LLC | 04/10/2015 | 68245 |
| 15 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-12516  (SCC) | LB 2080 Kalakaua Owners LLC | 04/10/2015 | 68246 |
| 16 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13908 (SCC) | East Dover Limited | 04/10/2015 | 68247 |
| 17 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13905 (SCC) | CES Aviation LLC | 04/10/2015 | 68248 |
| 18 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13906 (SCC) | CES Aviation V LLC | 04/10/2015 | 68249 |
| 19 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 08-13907 (SCC) | CES Aviation IX LLC | 04/10/2015 | 68250 |

**OMNIBUS OBJECTION 500: EXHIBIT A - NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # |
|---|---|---|---|---|---|
| 20 | STONEHILL INSTITUTIONAL PARTNERS, L.P. | 09-10137 (SCC) | BNC Mortgage LLC | 04/10/2015 | 68251 |
| 21 | STONEHILL OFFSHORE PARTNERS LIMITED | 09-10558 (SCC) | Structured Asset Securities Corporation | 04/10/2015 | 68212 |
| 22 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13664 (SCC) | PAMI Statler Arms LLC | 04/10/2015 | 68213 |
| 23 | STONEHILL OFFSHORE PARTNERS LIMITED | 09-10108 (SCC) | Luxembourg Residential Properties Loan Finance S.a.r.l. | 04/10/2015 | 68214 |
| 24 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13904 (SCC) | Lehman Scottish Finance L.P. | 04/10/2015 | 68215 |
| 25 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13900 (SCC) | Lehman Commercial Paper Inc. | 04/10/2015 | 68216 |
| 26 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13888 (SCC) | Lehman Brothers Special Financing Inc. | 04/10/2015 | 68217 |
| 27 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13893 (SCC) | Lehman Brothers OTC Derivatives Inc. | 04/10/2015 | 68218 |
| 28 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13902 (SCC) | Lehman Brothers Financial Products Inc. | 04/10/2015 | 68219 |
| 29 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13899 (SCC) | Lehman Brothers Derivative Products Inc. | 04/10/2015 | 68220 |
| 30 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13885 (SCC) | Lehman Brothers Commodity Services Inc. | 04/10/2015 | 68221 |
| 31 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13901 (SCC) | Lehman Brothers Commercial Corporation | 04/10/2015 | 68222 |
| 32 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 04/10/2015 | 68223 |
| 33 | STONEHILL OFFSHORE PARTNERS LIMITED | 09-10560 (SCC) | LB Rose Ranch LLC | 04/10/2015 | 68224 |
| 34 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13600 (SCC) | LB 745 LLC | 04/10/2015 | 68225 |
| 35 | STONEHILL OFFSHORE PARTNERS LIMITED | 09-12516  (SCC) | LB 2080 Kalakaua Owners LLC | 04/10/2015 | 68226 |
| 36 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13908 (SCC) | East Dover Limited | 04/10/2015 | 68227 |
| 37 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13905 (SCC) | CES Aviation LLC | 04/10/2015 | 68228 |
| 38 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13906 (SCC) | CES Aviation V LLC | 04/10/2015 | 68229 |

**OMNIBUS OBJECTION 500: EXHIBIT A - NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # |
|---|---|---|---|---|---|
| 39 | STONEHILL OFFSHORE PARTNERS LIMITED | 08-13907 (SCC) | CES Aviation IX LLC | 04/10/2015 | 68230 |
| 40 | STONEHILL OFFSHORE PARTNERS LIMITED | 09-10137 (SCC) | BNC Mortgage LLC | 04/10/2015 | 68231 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | |
|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**ORDER GRANTING THE PLAN ADMINISTRATOR'S FIVE HUNDREDTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY FOR STONEHILL'S FRAUD CLAIMS)**

Upon the five hundredth omnibus objection to claims, dated May 29, 2015 (the "Objection"),[11] of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, seeking to disallow and expunge the Second Amended Claims pursuant to section 502(b) of title 11 of the United States Code, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [ECF No. 6664], all as more fully described in the Objection; and due and proper notice of the Objection having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted; and it is further

---

[11] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on Exhibit 1 annexed hereto are disallowed and expunged in their entirety with prejudice.

Dated: _____, 2015
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\95346136\10\58399.0011