LEHMAN BROTHERS

# Lehman Brothers Holdings Inc., et al.
# Plan Administration Update

June 9, 2015



# Disclaimer

The information and data included in this Report are derived from sources available to Lehman Brothers Holdings Inc., in its capacity as Plan Administrator (the "Plan Administrator") under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 22737]. The Plan Administrator has prepared this presentation based on the information available to it at this time; however, such information is incomplete and may be materially deficient in certain respects. This report was prepared by the Plan Administrator for purposes of presenting the Court with a status of the estates of Lehman Brothers Holdings Inc. and certain of its subsidiaries that commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Estates") as of the date of the presentation. In preparing this Report, the Plan Administrator made various estimates and assumptions based on information available to it. As such, this Report contains forward-looking statements that involve known and unknown risks, uncertainties and other factors which may cause the Chapter 11 Estates' actual results, performance or achievements to be materially different from any future results, performance or achievements expressed or implied by these forward-looking statements. All statements other than statements of historical fact are statements that could be deemed forward-looking statements, including all statements containing information regarding the intent, belief or current expectation of the Chapter 11 Estates. Accordingly, the financial information herein is subject to change and any such change may be material. The presentation is not meant to be relied upon by investors or others as a complete description of the state of the Chapter 11 Estates, their business, condition (financial or otherwise), results of operations, prospects, assets or liabilities. The information in this presentation will only be updated, including any corrections, in connection with future presentations to the Court on the state of the Chapter 11 Estates. The Plan Administrator reserves all rights to revise this report. All amounts are unaudited and subject to revision. This report is intended to be read in conjunction with the Plan Administrator's previous filings, including Monthly Operating Reports ("MORs") and other reports filed with the Securities and Exchange Commission and the Court. These reports can also be located at www.lehmandocket.com.

# I. Introduction

- **The wind-down of the Lehman estate, even after emergence from bankruptcy, remains a massive "mega-bankruptcy" case**

    - More than $15 billion of assets remaining across the estate, including cash and cash for disputed claims reserves, real estate, interests in private companies, recoveries from non-controlled-former affiliates, net of future operating expenses and excluding litigation[1]

    - Contested matters, seeking in the aggregate many billions of dollars of additional recoveries for the benefit of creditors through dozens of legal actions, will require significant allocation of time and resources from the Court

    - Approximately 2,400 claims remain disputed, unliquidated, contingent or otherwise unresolved seeking aggregate recoveries of more than $68 billion; claim resolution will require significant allocation of time and resources from the Court

    - Since the bankruptcy plan was confirmed in December 2011 there have been 26,813 docket entries (including 14,502 transfer dockets for 37,775 claims)

    - While Lehman has been extremely successful in alternative dispute resolution and compromise, the remaining matters by their nature are those that are least likely to be resolved without Court intervention

    - Future distributions are increasingly dependent on the resolution of contested matters; this increasingly requires 1) joining issue, 2) resolution by the Court of at least some discovery or other procedural disputes, and/or 3) opinions from the Court resolving legal issues

    - Accordingly, the wind-down is entering a phase during which increasingly more court resources will be required to advance the process and provide final resolution and distributions to creditors

---

*1. As with the estate's public disclosures, the Plan Administrator excludes litigation recoveries from this total.*

## II. Progress since last State of the Estate (Feb 2014)

◆ **Distributions: $29 billion in distributions since last State of the Estate (February 2014)**



1. Cumulative distributions on account of third-party claims sourced from D7 Distribution Notice; D1 – D7 distribution amounts sourced from individual published notices

4

## II. Progress since last State of the Estate (Feb 2014)

- **Claims Resolution: $74 billion in filed claim amount has been resolved since D5**



**Filed Amount of Unresolved Claims**[1]

*In USD millions*

| | D1 4/17/12 | D2 10/1/12 | D3 4/4/13 | D4 10/3/13 | D5 4/3/14 | D6 10/2/14 | D7 4/2/15 |
|---|---|---|---|---|---|---|---|
| | $192,730 | $183,767 | $161,642 | $141,954 | $80,097 | $76,186 | $68,315 |

D5 - D7 Resolutions: $73,639

D1 - D7 Resolutions: $124,415

*1. Based on data from claims register maintained by Epiq Systems, Inc.*

# II. Progress since last State of the Estate (Feb 2014)

- Although the Plan Administrator continues to settle claims successfully, resolution increasingly requires joining issues and some progress in litigation

- **Significant settlements of disputes since February 2014**: Absent the backdrop of ongoing and active litigations, many settled matters would likely remain. Key settlements during the past year:

  - **Canary Wharf:** 3 claims asserting damages in the aggregate amount of approximately $780 million for unpaid rent and obligations under its lease with a non-controlled Lehman affiliate they claimed LBHI had indemnified. The estate filed an objection and after significant litigation, settlement was reached for the claims in the aggregate amount of $350 million

  - **Giants Stadium**: Approximately $1.2 billion in claims asserted against LBHI and LBSF in connection with terminated derivatives swaps transferred to the chapter 11 estates

  - **Washington State Tobacco Settlement Authority:** 2 claims asserted against LBHI and LBSF seeking approximately $94 million, reduced after LBSF filed an objection to the claims, an evidentiary hearing in November 2014, and post trial mediation

  - **Financial Security Assurance ("FSA"):** $88.6 million claim based on walkaway and make-whole provisions were reduced to $40 million claim and affiliate guarantee claims were released after objection and discovery

  - **FHLB Pittsburgh:** Claim based on alleged breaches of the securities law in connection with FHLB Pittsburgh's purchase of RMBS in an unliquidated amount against SASCO and LBHI. It had purchased over $900 million of RMBS bonds that had declined in value. The Plan Administrator objected to the claims. After a mediation, settlement was reached

# II. Progress since last State of the Estate (Feb 2014)

- **Successful ADR Program**

  - Highly successful Court-approved mandatory alternative dispute resolution and 2004 discovery procedures for derivatives matters

  - Since the inception of the protocol, 410 settlements achieved involving 527 counterparties resulting in recoveries of approximately $2.9 billion

  - Since the last State of the Estate, achieved 91 settlements from 109 counterparties that have resulted in a recovery of approximately $740 million

  - As of June 5, 2015, 94% of the Tier One ADRs that have been through the mediation process had been resolved without judicial intervention

  - Within the past year, the Plan Administrator (with the Court's approval) established 2 new ADR protocols

    - Resolution of Private Label Trustees' RMBS claims

    - Resolution of the Plan Administrator's downstream claims against mortgage originators

  - Despite the historical success of the program, remaining ADR counterparties are less likely to settle

# III. Remaining Matters

- **Claims**
  - Although more than 66,000 disputed claims have been resolved, approximately 2,400 claims seeking to recover more than $68 billion
  - Approximately 550 claims are subject to pending objections

- **Major Obstacles to Timely Resolution Include**
  - Opportunistic Counterparties: Remaining counterparties employing obstructionist tactics and pressing unwarranted claims in an attempt to lever Plan Administrator's goal of reducing disputed claims reserves in order to enhance and accelerate distributions
  - Valuations could require fact specific individual trials
  - Contingent Claims: Claims for which the estate's ultimate exposure will be substantially reduced or eliminated by the occurrence or non-occurrence of future events

- **Remaining Disputed Matters are in 5 Broad Categories**
  - Derivatives/Valuation Disputes
  - Disputes with Big Banks
  - RMBS/Mortgage Related
  - Contingent/Long Tail
  - Other

# III.a. Remaining Matters: Derivatives Disputes

- There are 22 pending Adversary Proceedings/Objections involving the estates' derivatives counterparties

- There are disputes with at least 15 derivatives counterparties that likely will be brought before the Court and require time and resources to resolve

- Each derivatives dispute involves millions of dollars and is factually unique, involving anywhere between one terminated derivatives transaction to tens of thousands of those transactions

- In many cases, the estates are facing counterparties who have employed a variety of methods to inflate their claims relative to other comparable creditors and thereby profit from the bankruptcy

    - Counterparties submit loss calculations that generate claims in an amount far in excess of their actual loss

    - Counterparties calculate close-outs applying a time of day or a date that maximizes their loss regardless of the date they chose to terminate or how they actually managed their portfolios

    - Counterparties make claims based on hypothetical loss calculations even though trades were replaced, in an effort to withhold proceeds

    - Counterparties that net-out offsetting trades and related risks in the ordinary course of business, fail to net risks in calculating their claims

- Another area of derivatives litigation relates to Special Purpose Vehicles – many of the remaining disputes are subject to ADR protocol established by the Court

    - SPV litigation has and will present complex issues to be decided by the Court, including class certification and jurisdiction over foreign defendants

# III.a. Remaining Portfolio - Derivatives Proceedings

| | Debtor | Adversary (SPV Actions) | Case # | Stage |
|---|---|---|---|---|
| 1 | LBSF[1] | U.S. Bank National Association (Non Distributed SPV) | 10-03542 | Stayed, Mediation |
| 2 | LBSF | The Bank of New York Mellon Corp.(Non Distributed SPV) | 10-03545 | Stayed, Mediation |
| 3 | LBSF | Bank of American National Association (Distributed SPV) | 10-03547 | Phase 1 Class Certification |
| | **Debtor** | **Adversary (Other Derivatives Proceedings)** | **Case #** | **Stage** |
| 4 | LBHI[2] | Intel Corp. | 13-01340 | Summary Judgment |
| 5 | LBHI | Unipol Banca S.p.A. | 14-01021 | Stayed, Mediation |
| 6 | LBHI | Mirabella | 14-02096 | Discovery |
| 7 | LBDP[3] | US Bank Trust National Association | 14-02234 | Stayed, Mediation |
| 8 | LBHI | Granite Finance Limited | 14-02236 | Stayed, Mediation |
| 9 | LBHI | Buck Institute for Age Research | 14-02238 | Discovery |
| 10 | LBHI | Raymond James Financial, Inc. | 14-02243 | Pre-Discovery Motions |
| 11 | LBHI | Franklin W. Olin College of Engineering Inc. | 14-02391 | Discovery |
| 12 | LBHI | Utah Housing Corp. | 14-02409 | Pre-Discovery Motions |
| 13 | LBHI | Saint Louis University | 14-02443 | Scheduling |
| 14 | LBHI | Windstream Iowa Communications | 15-01001 | Pre-Discovery Motions |
| 15 | LBHI | Westpac Banking Corp. | 15-01058 | Complaint Filed |
| 16 | LBHI | QVT | | Discovery |
| 17 | LBHI | Federal Home Loan Bank of Cincinnati | 13-01330 | Discovery |
| 18 | LBHI | Federal Home Loan Bank of New York | 15-01110 | Complaint filed |
| 19 | LBHI | LCOR Alexandria, L.L.C. | 13-01689 | Discovery |
| 20 | LBHI | Michigan State Housing Development Authority | 09-01728 | Discovery |
| 21 | LBHI | Merrill Lynch Capital Services, Inc. | 14-02030 | Scheduling |
| | **Debtor** | **Adversary (Where Estate is Defendant)** | **Case #** | **Stage** |
| 22 | LBHI | Moore Macro Fund | 14-02021 | Pre-Discovery Motions |

1. *LBSF: Lehman Brothers Special Financing Inc*
2. *LBHI: Lehman Brothers Holdings Inc*
3. *LBDP: Lehman Brothers Derivative Products Inc*

10

# III.b. Remaining Matters: Big Banks Litigation

- Massive derivatives related and securities valuation disputes

- 3 cases filed with more than 125,000 trades in total – prospect of 3 simultaneous massive trials could result in major demand on Court resources

- While in 2011 the estates were able to resolve their derivatives disputes with 10 of their 13 largest banks – Citibank, JPM and Credit Suisse, each of which were offered the same settlement refused to settle

    – Unlike the other big banks, Citi and JPM were in receipt of billions of dollars of Lehman's pre-petition cash against which they assert security interests

- These cases have and will require an enormous amount of resources to resolve

- These are extremely complicated litigations that touch every aspect of the complex web of dealings between Lehman and its biggest banks – they also include complex bankruptcy issues such as setoff and post-petition interest

# III.b. Remaining Matters: Big Banks Litigation

- **Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A**. (Adv. Case No. 10-03266)

  - In multiple claims objections pending in the Court, the Plan Administrator contests the amount of JPM's claims, the validity of its collateral security, and the methods by which it liquidated collateral security, among other things – the Plan Administrator also has asserted affirmative claims against JPM which are now pending in the District Court

  - The Plan Administrator seeks a multi-billion dollar claim reduction/recovery in each of its two largest and most complex objections

  - In particular, the Plan Administrator has objected to JPM's $2.3 billion derivatives claim relating to the termination of a 75,000 trade portfolio. The objection will require a massive discovery effort, which is now underway

  - In addition, the Plan Administrator has objected to JPM's deficiency claim, which alleges that the tens of billions of dollars JPM held in LBI collateral was insufficient to satisfy its credit extension for clearing and required the provisional application of over $6 billion in LBHI cash collateral. The estate is challenging the adequacy of the credit given to LBI for approximately 4,000 securities JPM held as collateral. This will also involve a massive discovery effort and lengthy hearing if it cannot be settled

  - The Plan Administrator has also objected to several miscellaneous claims, including JPM's close out of a secured lending where it applied over $2 billion of cash collateral. While the estate is attempting to resolve these objections consensually, it is likely that some will require the Bankruptcy Court's time and resources

  - Based on current schedules, dispositive motions in the derivatives case will be filed around June 2016 and dispositive motions in the deficiency case will be filed around September 2016

# III.b. Remaining Matters: Big Banks Litigation

- **Lehman Brothers Holdings Inc., et. al. v. Citibank, et. al.** (Adv. Case No. 12-01044)

    - Citi demanded and received more than $2 billion from Lehman months prior to bankruptcy and filed claims against the estates relating to Citi's closeout of derivatives trades totaling more than $2.2 billion – Citi also seeks to set-off its claims against approximately $2 billion it owes the estates

    - The Plan Administrator contests the amount of Citi's claims, the validity of its right to set-off and its entitlement to post petition interest

    - The litigation is well under way; depositions are ongoing

    - Lehman seeks in the aggregate more than $2 billion from Citi

    - Based upon the Scheduling Order approved by the Bankruptcy Court, the filing of dispositive motions will occur by summer of 2016

- **Lehman Brothers Holdings Inc. v. Credit Suisse, et al.** (Adv. Case No. 13-01676)

    - Credit Suisse filed claims totaling approximately $1.2 billion relating to its over nearly 30,000 derivatives trades with Lehman

    - The Plan Administrator contends that Credit Suisse failed to properly determine the close out amounts as of the early termination date and filed inflated claims. The Plan Administrator seeks to significantly reduce its claim as well as to recover $150 million from Credit Suisse

    - Dispositive motions in this action will also be due in approximately January 2017

# III.c. Remaining Matters: RMBS

- **Private Label Trust RMBS Claims**

  - Various trustees initially asserted claims in the aggregate amount of more than $37 billion against LBHI and SASCO based the trusts' alleged rights to "put-back" to Lehman mortgages with material and adverse breaches

  - The claims are held by 405 trusts

  - Pursuant to an agreed order, the Plan Administrator maintains a reserve against a $5 billion disputed claim

  - In December 2014, the Court approved a protocol to resolve claims

  - Under the Protocol, the Trustees have indicated that they will review approximately 200,000 mortgage loan files and deliver files containing material and adverse breaches

  - The first 50,000 files will be delivered by the Trustees by June 30, 2015

  - Protocol involves a 5 phase process, 4 of which are out-of-court and each of which requires considerable time and expense. Step 5 requires Court review and approval of claim amounts proposed by a Claims Facilitator

  - The RMBS trustees' review of the entire population of loan files is to be completed by March 31, 2016. The Court will review the amount of any RMBS claim that is subject to the objections of either the Plan Administrator or the Trustee. Any such RMBS claim is subject to allowance by the Court

  - In view of the magnitude of the dollars at risk, the legal and factual issues in dispute and the failure of a prior mediation, this matter likely will require a significant amount of judicial resources to resolve

  - The Plan Administrator anticipates that following claims review by the parties and initial efforts to resolve disputes through an ADR process, a number of specific legal and/or factual disputes will need to be submitted to the Court for determination before the parties can make further progress towards settlement

# III.c. Remaining Matters: RMBS

- **Downstream Claims Against Mortgage Originators**

  - In connection with settlement of Federal National Mortgage Association and Federal Home Loan Mortgage Corporation "put-back" claims, the Plan Administrator is seeking to recover losses incurred by Lehman from originators that sold the deficient loan files to Lehman

  - In June 2014, the Court established an ADR protocol to enable the resolution of claims without the need for judicial intervention

    - At that time, there were approximately 3,000 counterparties estimated in the protocol

  - Many of the originator counterparties have shown a willingness to allocate substantial resources merely to avoid mediation – this is not a positive indication for successful alternative dispute resolution and judicial economy

  - Examples of difficult downstream litigation are:

    - <u>Lehman Brothers Holding Inc. v. Hometrust Mortgage Company</u> (Adversary Proceeding No. 14-02392)

    - <u>Lehman Brothers Holding Inc. v. LHM Financial Corporation</u> (Adversary Proceeding No. 14-02393)

  - These matters likely will require further significant Court time and attention

  - Upon resolution of the Private Label RMBS Claims, the estates will obtain rights to pursue even more loan files than those in the current downstream process

# III.d. Remaining Matters: Contingent/Long Tail Claims

- Huge portfolio of remaining claims relates to guarantee claims that relate to claims allowed against affiliates that are not under the supervision of the Plan Administrator, i.e., Non-Controlled Affiliates

- $11.6 billion in claims filed representing 1,600 claims

- **Solvent Non-Controlled Affiliates**

  - The largest remaining group of claims against the estate is contingent claims lodged against LBHI for its guarantee of certain of the LBIE estate's obligations

  - LBIE already has paid the full principal amount of these guaranteed claims and has the wherewithal to pay post-bankruptcy interest on these claims

  - The public market for LBIE claims values those claims well in excess of par – i.e., an LBIE creditor holding an allowed claim could sell that claim for more than the creditor is owed – this would suggest that the estate's ultimate guarantee obligation is $0

  - Based on the foregoing, the Plan Administrator will be initiating a process to estimate claims at $0 exposure and authorize release of reserves

  - Absent estimation, the Plan Administrator, with significant Court time and resources, will need to

    - Investigate the validity and enforceability of each alleged guarantee (complicated by the high volume of trading of these claims)

    - Determine the allowable amount of each individual claim

    - Determine the value of payments received and anticipated receipts on account of underlying primary obligation

    - Obtain satisfactory assurances that overpayments made will be recovered by the estate

# III.d. Remaining Matters: Contingent/Long Tail Claims

- **Insolvent Non-Controlled Affiliates**

    – LBHI guarantees of insolvent Non-Controlled Affiliate obligations also remain unresolved – e.g. LBF

    – Resolution of these claims will be required notwithstanding liquidation and allowance in a foreign jurisdiction

    – This too will require significant Court time and attention

- **Lehman Brothers Holdings Inc., et al. v. U.S. Bank NA, Syncora Guarantee Inc. and Greenpoint Mortgage Funding, Inc.** (Adv. Pro. No. 15-01112)

    – One of the largest remaining disputed claims delaying the Plan Administrator from distributing reserved cash is Syncora's claim for losses experienced in connection with one Private Label RMBS Trust

    – This matter is currently pending before the Bankruptcy Court

    – As with other "difficult to resolve" claims, this matter likely will require significant Court time and resources

    – Although the underlying dispute relates to losses relating to one Private Label RMBS Trust, The Plan Administrator views this matter as a contingent claim against which a reserve is unnecessarily maintained

# III.e. Other Major Unresolved Litigation Matters

- **Pending Claims Disputes**

  - Spanish Broadcasting has a pending amended claim against LCPI for approximately $55.4 million in damages based on LCPI's alleged failure to fund its $10 million share of a $25 million draw request under a revolving credit facility

    - Currently discovery is stayed pending consideration of summary judgment motion. Absent a dispositive ruling or a settlement, resolution will require a trial on the merits

  - Stonehill has asserted claims against LBHI in excess of $160 million due to LBI's alleged failure to return certain of Stonehill's cash and securities. The Court dismissed Stonehill's claims and provided Stonehill with an opportunity to replead certain claims. Stonehill filed its revised claims (Claim Nos. 68212-68251) on April 10, 2015. The Plan Administrator again filed an objection to these claims (ECF No. 49764) on May 29, 2015. A hearing is scheduled for July 22, 2015

- **Post-Petition Interest against Lehman Brothers OTC Derivatives Inc. and Lehman Brothers Commercial Corporation**

  - Court approved bar date of April 24, 2015 for claims that demand post-petition interest

  - Although the Plan Administrator will continue to try to settle these claims, many claims might ultimately need to be resolved by the Court

# IV. Conclusion

- The Plan Administrator has made significant progress in asset recovery and claims resolution and has delivered outsized returns to its creditors

- However, the remaining portfolio of disputed claims is, for the most part, held by the most contentious of the estates' immense creditor constituency. While settlement discussions constantly occur, many of these matters are those least likely to be resolved without some amount of time spent in the Court

- The Plan Administrator built a robust and experienced litigation platform and is prepared to strike the necessary balance among the value of fair compromise, the cost of litigation, the benefit derived from accelerating the monetization of estate property and distribution of cash proceeds, and the necessity of ensuring that all creditors are treated fairly

- We expect that remaining dispute resolution will require a very significant amount of Court time, resources and attention