**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CONWAY HOSPITAL, INC.,**

               Appellant,               14 Cv. 7026 (JGK)

     - against -                 **MEMORANDUM OPINION**
                                                           **AND ORDER**

**LEHMAN BROTHERS HOLDINGS INC.,**

               Appellee.

---

**JOHN G. KOELTL, District Judge:**

     The appellant, Conway Hospital, Inc. ("Conway"), appeals from an order of the United States Bankruptcy Court for the Southern District of New York disallowing its proof of claim. In 2012, Conway filed a proof of claim that arose from a 1998 debt service reserve fund agreement (the "1998 Agreement") between Conway and Lehman Brothers Special Financing Inc. ("LBSF"). The bankruptcy court held that the appellant's claim against Lehman Brothers Holdings Inc. ("LBHI") was time-barred.

     The bankruptcy court's Bar Date Order provided that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order on or before the Bar Date [September 22, 2009] . . . shall be forever barred, estopped and enjoined from asserting such claim against the Debtors." (App. at 44-45.) The corresponding Bar Date Notice contains similar language. (App. at 58.) Conway filed its proof of claim in 2012. (App. at 69.)

1

Conway argues that its claim is not time-barred because it arose after LBHI petitioned for bankruptcy and that the Bar Date Notice was constitutionally insufficient. The bankruptcy court rejected both arguments and disallowed the claim. This Court agrees with the bankruptcy court, and therefore the disallowance order is **affirmed**.

**I.**

The following facts are undisputed unless otherwise noted.

**A.**

Under the terms of the 1998 Agreement between Conway and LBSF, a designated trustee agreed to purchase a series of securities at Conway's direction from Lehman Brothers Inc. or other qualified dealers. (App. at 78-79.) Beginning on September 15, 2008, twenty-three of LBSF's affiliates, including LBHI, (collectively, "Lehman") filed for voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. (App. at 130.) On October 3, 2008, LBSF filed its Chapter 11 petition (the "LBSF Commencement Date"). (App. at 130.)

LBSF's bankruptcy qualified as an "Event of Default" pursuant to Section 6.1(e) of the 1998 Agreement. (App. at 83.) As a result, Conway could terminate the contract and recover damages from LBSF. (App. at 130-31.) On November 18, 2008, Conway sent a notice to LBSF that terminated the contract and calculated the amount due under the 1998 Agreement. (App. at

2

102-03.)  LBSF logged the notice upon receipt.  (App. at 153-54.)

On July 2, 2009, the bankruptcy court entered a Bar Date Order setting September 22, 2009 as the date by which prepetition claims against LBHI and its affiliates (the "Debtors") were required to be filed with the bankruptcy court.  (App. at 37.)  The Debtors provided actual notice of the deadline to Conway on July 8, 2009.  (App. at 154.)  The Bar Date Notice provided that "September 22, 2009 . . . [was] the last date . . . for each person or entity . . . to file a proof of claim . . . based on prepetition claims against the Debtors." It provided that "the word 'claim' means . . . a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, [or] contingent . . . ."  (App. at 53.)  It also stated that "[a]ny person or entity that holds a claim arising from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection by the later of (i) the Bar Date, and (ii) the date which is forty-five (45) days following the effective date of such rejection or be forever barred from doing so."  (App. at 55.)

On December 6, 2011, the bankruptcy court approved and confirmed the Modified Third Amended Joint Chapter 11 Plan

3

("Plan") of the Debtors.  (App. at 31-34.)  The Plan became effective on March 6, 2012.  (App. at 131.)

**B.**

On April 18, 2012, Conway filed its proof of claim, which requests $1,290,795.04 in damages from LBSF.  (App. at 69.)

As Plan Administrator, LBHI objected and requested that the bankruptcy court expunge Conway's 2012 claim because it was filed after the Bar Date.  (See App. at 116.)  Conway argued that the Bar Date did not apply to its claim because the claim arose after the LBSF Commencement Date and that disallowing its 2012 claim would violate the Due Process Clause of the Constitution.  (See App. at 133-39.)

On July 16, 2014, the bankruptcy court held a hearing and orally sustained the objection with respect to Conway's claim. (App. at 26.)  The bankruptcy court formally entered the disallowance order on July 21, 2014.  (App. at 166.)

**II.**

This Court has appellate jurisdiction under 28 U.S.C. § 158(a).  The Court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo.  See Cellmark Paper, Inc. v. Ames Merch. Corp. (In re Ames Dep't Stores, Inc.), 470 B.R. 280, 283 (S.D.N.Y.), aff'd, 506 F. App'x 70 (2d Cir. 2012).  The Court can affirm on any ground supported

4

by the record.  See Miller v. Sapir (In re Miller), No. 08cv4305, 2009 WL 174902, at *1 (S.D.N.Y. Jan. 26, 2009).

### III.

Bar dates serve an integral role in bankruptcy law because "[t]hey are not designed merely as a 'procedural gauntlet' but rather serve 'as an integral part of the reorganization process' and the efficient administration of bankruptcy cases." In re Lehman Bros. Holdings Inc., 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting First Fid. Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937 F.2d 833, 840 (2d Cir. 1991)).  The bankruptcy court correctly held that Conway's claim arose before the LBSF Commencement Date and was consequently time-barred because it was filed after the Bar Date.

### A.

The Bankruptcy Code determines when Conway's claim arose. See, e.g., Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 581 (S.D.N.Y. 2011) ("[I]t is well-settled that the Bankruptcy Code governs *when* a claim arises."). Section 101(5) of title 11 of the United States Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  In interpreting this provision, the Second Circuit Court of Appeals has held that "the term 'claim' is sufficiently

5

broad to encompass any possible right to payment." Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 302 (2d Cir. 1997).

Conway's 2012 claim is a "contingent" claim. Contingent claims are "obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." Ogle v. Fid. & Deposit Co. of Md., 586 F.3d 143, 146 (2d Cir. 2009) (internal quotation marks omitted) (quoting Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125, 128-29 (2d Cir. 1999)); see also Kling Realty Co. v. Texaco, Inc. (In re Texaco Inc.), No. 10cv8151, 2011 WL 4526538, at *4 (S.D.N.Y. Sept. 28, 2011). The "Event of Default" provision in the 1998 Agreement allowed Conway to terminate the Agreement and receive damages based on its termination. (App. at 83.) Conway's claim therefore was contingent at the time the Lehman bankruptcy proceedings commenced, and it became liquidated when Conway terminated the contract and sought damages from LBSF.

Having concluded Conway held a contingent claim against LBSF when LBSF filed for bankruptcy, the next issue is when this claim arose. A prepetition claim requires that "the claimant . . . possess a right to payment" and "that right must have arisen prior to the filing of the bankruptcy petition." In re Manville, 209 F.3d at 128; see also LTV Steel Co. v. Shalala (In

6

re Chateaugay Corp.), 53 F.3d 478, 497 (2d Cir. 1995). A claim is "deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—a right to payment—under the relevant non-bankruptcy law." Ogle, 586 F.3d at 146 (internal quotation marks omitted).

"Contract claims" such as Conway's "arise upon execution of an agreement." In re Texaco, 2011 WL 4526538, at *4; see also Pearl-Phil GMT, 266 B.R. at 582 ("[T]he clear weight of case law in this Circuit . . . recognizes that contract-based bankruptcy claims arise at the time the contract is executed."). The relationship between Conway and LBSF therefore "was created upon the signing of the" 1998 Agreement. In re Manville, 209 F.3d at 129. The fact that the Lehman bankruptcy—the relevant contingency—"materialized post-petition does not transmogrify the claim into a post-petition claim, but merely means that the contingent claim moved closer to becoming liquidated upon the happening of the contingency." Id.; see also Pearl-Phil GMT, 266 B.R. at 581 ("[U]nder the Code, a right to payment need not be currently enforceable in order to constitute a claim.").

Conway relies on NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984), and Century Indemnification Co. v. National Gypsum Co. Settlement Trust (In re National Gypsum Co.), 208 F.3d 498 (5th Cir. 2000), but neither case supports its contention that its

7

claim was a postpetition claim. <u>Bildisco</u> concerned the postpetition rejection of an executory collective bargaining agreement, and no party argues that the 1998 Agreement was rejected. And <u>Century Indemnification</u> dealt was an assumed contract, and no party argues that the 1998 Agreement was assumed. <u>See</u> 208 F.3d at 506-07, 509.

Conway argues that treating all contract claims as prepetition claims would render the "rejected executory contract" provision of the Bar Date Notice superfluous. This argument is without merit. The Bar Date Notice creates a separate deadline for rejected executory contracts because without it, claimants whose executory contracts were rejected just prior to the Bar Date would have little to no time to file a proof of claim.

Because the 1998 Agreement was executed prior to the LBSF Commencement Date, Conway's claim likewise arose prior to the LBSF Commencement Date. Accordingly, the Bar Date governs Conway's prepetition claim and precludes Conway's untimely proof of claim.

**B.**

Section 502(g)(2) of the Bankruptcy Code provides a separate basis for affirmance. Section 502(g)(2) provides that "[a] claim for damages calculated in accordance with section 562 shall be allowed . . . or disallowed . . . as if such claim had

8

arisen before the date of the filing of the petition." Section 562(a) of the Bankruptcy Code in turn provides that damages from the rejection or termination of a "swap agreement, securities contract (as defined in section 741), forward contract, commodity contract (as defined in section 761), repurchase agreement, or master netting agreement . . . shall be measured from the earlier of (1) the date of such rejection; or (2) the date or dates of such liquidation, termination, or acceleration." 11 U.S.C. § 562(a); see also Taunton Mun. Lighting Plant v. Enron Corp. (In re Enron Corp.), 354 B.R. 652, 657 (S.D.N.Y. 2006).

Conway does not dispute that the termination of the 1998 Agreement—whether classified as a swap agreement, securities contract, or forward contract—is measured according to § 562(a). (See Appellant's Br. at 6.) Therefore, Conway's claim must be treated as if it "had arisen before the date of the filing of the petition" because it is a "claim for damages calculated in accordance with section 562." § 502(g)(2).

Undeterred, Conway insists that § 502(g)(2) claims are different from other prepetition claims, because § 502(g)(2) provides that such claims merely are treated "as if" they arose prepetition. This argument also lacks merit.

Treating § 502(g)(2) claims as prepetition claims comports with the recognition that "contract-based bankruptcy claims . . .

9

. arise at the time the contract is executed," and thus, "a post-petition breach of a pre-petition contract gives rise solely to a pre-petition claim." In re Bradlees Stores, Inc., No. 02cv0896, 2003 WL 76990, at *3 (S.D.N.Y. Jan. 9, 2003). "The fact that [a claim] remain[s] contingent until the occurrence of a triggering or disqualifying event . . . is not controlling. Once the contingency occurs, even if it occurs post-petition, the contingent claim simply becomes a liquidated one; it, however, is not thereby elevated to the status of a post-petition claim." In re Chateaugay Corp., 102 B.R. 335, 352 (Bankr. S.D.N.Y. 1989) (internal quotation marks omitted).

Finally, Conway insists that 11 U.S.C. § 101(10) differentiates between prepetition claims and § 502(g)(2) claims. This argument is unpersuasive. Subsection 101(10) provides that "[t]he term 'creditor' means (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section . . . 502(g) . . . ." As explained above, § 502(g)(2) claims are allowed "as if such claim had arisen before the date of the filing of the petition." Therefore, those claims are treated as prepetition claims. The fact that §502(g)(2) claims are included as "creditor" claims does not suggest that they are postpetition claims.

Under § 502(g)(2), Conway's claim arose prepetition. The Bar Date and Bar Date Notice required Conway to file a prepetition claim by September 22, 2009. Conway failed to so do, and its claim is therefore time-barred.

### c.

Conway finally argues that the Bar Date Notice provided insufficient notice of the need to file a prepetition claim by the Bar Date.

Creditors are entitled to receive adequate notice of bar dates. ReGen Capital I, Inc. v. Halperin (In re Wireless Data, Inc.), 547 F.3d 484, 492 (2d Cir. 2008). A bar date "should be prominently announced and accompanied by an explanation of its significance." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 398 (1993). The Lehman Bar Date Notice meets these requirements.

The bankruptcy court correctly addressed Conway's due process allegations, concluding that there was "no doubt that the bar date order entered in this case obligated anyone who had a prepetition claim to file a claim." (App. at 22.) The Notice unequivocally provided that September 22, 2009 was the last date for any party to "file a proof of claim . . . based on prepetition claims against the Debtors." (App. at 53.) It was not LBSF's responsibility to advise Conway on the nature of Conway's claims; rather, it was up to Conway, "having been

11

notified of the Bar Date, to determine if it had any claims against the Debtors." In re Delphi Corp., No. 05br44481, 2009 Bankr. LEXIS 571, at *6-7 (Bankr. S.D.N.Y. Jan. 20, 2009).[1]

There also was no ambiguity that all prepetition claims, defined very broadly, would be barred if not raised by the Bar Date. See In re Wireless Data, 547 F.3d at 493. The Bar Date Notice afforded Conway ample notice that it was required to file its claim by the Bar Date or be prohibited from doing so. The failure to file a timely claim was solely Conway's responsibility and was not caused by any lack of adequate notice. Thus, Conway's due process rights were not violated.

---

[1] The Notice encouraged parties with potential claims to consult the claims' administrator or to consult with their attorneys if they had any questions with respect to the Notice. (See App. at 53.) There are no allegations that Conway was confused by the contents of the Notice or that Conway did not receive the Notice.

12

## Conclusion

The Court has considered all of the remaining arguments of the parties. To the extent not specifically addressed above, they are either moot or without merit. For the foregoing reasons, the order disallowing Conway's claim is **affirmed**. **The Clerk is directed to close all pending motions.**

**SO ORDERED.**

**Dated:    New York, New York
           May 8, 2015**                    _____/s/_____
                                                  **John G. Koeltl
                                            United States District Judge**