Hearing Date and Time: July 22, 2015 at 10:00 a.m.

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (646) 848-4260
William J.F. Roll III
Solomon J. Noh

*Attorneys for Ontario Teachers' Pension Plan Board*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
                                          :
                                          :
In re:                                    :        Chapter 11
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :        Case No. 08 – 13555 (SCC)
                                          :
                    Debtors.              :        (Jointly Administered)
                                          :
                                          :
-----------------------------------------------------------------x
```

**RESPONSE OF ONTARIO TEACHERS' PENSION PLAN**
**BOARD TO THE PLAN ADMINISTRATOR'S FOUR**
**HUNDRED NINETY-NINTH OMNIBUS OBJECTION TO**
**CLAIMS (NO LIABILITY CLAIMS)**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Ontario Teachers' Pension Plan Board ("**OTPPB**") hereby submits this response

(this "**Response**") to the Plan Administrator's Four Hundred Ninety-Ninth Omnibus Objection to

Claims (No Liability Claims) [Docket No. 49382] (the "**Claims Objection**"), and in support

thereof, respectfully represents as follows:

**Preliminary Statement**

1.    Lehman Brothers Holdings, Inc. ("**LBHI**"), as Plan Administrator under

the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and Its

Affiliated Debtors for the entities in the above-referenced chapter 11 cases (the "**Debtors**") seeks entry of an order disallowing and expunging, among other claims, Claim No. 67738, which was filed by OTPPB and amends the previously-filed Claim No. 65647 (collectively, the "**LBF Guarantee Claim**"), on the basis that it was filed untimely.

2.      The Claims Objection is LBHI's second objection to the LBF Guarantee Claim *on the same basis* and is nothing more than a nuisance tactic.  LBHI is hoping its renewed objection, filed more than four years after withdrawing its initial objection, will cause OTPPB to abandon its claim rather than continue to expend further resources defending the LBF Guarantee Claim.

3.      The LBF Guarantee Claim arose as a result of LBHI's guarantee of an ISDA Master Agreement entered into between OTPPB and Lehman Brothers Finance S.A. ("**LBF**"), a Swiss entity and affiliate of LBHI.  Given the multijurisdictional nature of the transaction with LBF and the involvement of multiple sets of counsel, the existence of the Guarantee (defined below) was unfortunately overlooked.  OTPPB did not ignore the Bar Date (defined below) or attempt to implement some sort of strategy by filing a late claim.  On the contrary, OTPPB engaged in a good faith effort to file all of its claims in a timely manner and immediately filed the LBF Guarantee Claim, a mere 59 days after the passage of the Bar Date, as soon as it became aware of its error.

4.      OTPPB acknowledges the important role a bar date plays in allowing a debtor to determine the universe of outstanding claims against it so that it can engage in claims reconciliation in an expedited and efficient manner.  However, in the extraordinary circumstances of these chapter 11 cases, OTPPB submits that permitting it to assert the LBF Guarantee Claim against LBHI at this juncture, when LBHI has been aware of its existence for

2

several years, including well before the claims reconciliation process began, will not impede this

important goal.

## Background

5.    Prior to the commencement of these chapter 11 cases, OTPPB and LBF

entered into that certain ISDA Master Agreement dated November 1, 2000 (as amended,

supplemented or modified, and together with all schedules, annexes and exhibits thereto and all

confirmations exchanged pursuant to transactions entered into in connection therewith, the

"**Master Agreement**").

6.    On December 14, 2000, LBHI unconditionally and irrevocably guaranteed

to OTPPB the due and punctual payment of all amounts payable by LBF under the Master

Agreement when such amounts become due and payable (the "**Guarantee**").

7.    On September 15, 2008, LBHI commenced a voluntary case under chapter

11 of title 11 of the United States Code (the "**Bankruptcy Code**").

8.    LBHI's bankruptcy filing constituted an Event of Default, as that term is

defined in section 5(a) of the Master Agreement, and on September 16, 2008, OTPPB sent LBF a

notice of Early Termination in accordance with Section 6 of the Master Agreement.

9.    On or about September 30, 2008, the Swiss Federal Bank Commission

exercised regulatory authority over LBF, and ultimately appointed PricewaterhouseCoopers AG,

Zurich as liquidator of LBF in Switzerland (the "**Swiss Proceedings**").

10.    On July 2, 2009, the Court entered the Order Pursuant to Section 502(b)(9)

of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing

Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of

Claim Form [Docket No. 4271] (the "**Bar Date Order**") establishing September 22, 2009 (the

"**Bar Date**") as the deadline for filing proofs of claim against the Debtors.

11.    In addition to the LBF Guarantee Claim that is the subject of the Claims Objection, OTPPB has other claims against the Debtors.  OTPPB properly and timely filed Claim Nos. 27468 and 27469 against LBHI and another Debtor.  Additionally, OTPPB filed a proper and timely claim in the Swiss Proceedings against LBF as primary obligor under the Master Agreement.

12.    Prior to the expiration of the Bar Date, despite its good faith effort to timely file all claims against the Debtors, OTPPB and its counsel were mistaken about the existence of the Guarantee.  Given the principal obligation under the Master Agreement was owed by LBF, a Swiss entity, Swiss counsel was involved in filing a claim in the Swiss Proceedings.  Unfortunately, due to confusion between OTPPB and Shearman & Sterling LLP, the existence of the Guarantee was not discovered until after the Bar Date.  As soon as the existence of the Guarantee was discovered, OTPPB and its counsel promptly prepared the required documentation, and on November 20, 2009, filed the LBF Guarantee Claim.

13.    On September 13, 2010, the Debtors filed the Fortieth Omnibus Objection to Claims (Late-Filed Claims) [Docket No. 11305] (the "**Original Objection**"), seeking, among other things, to disallow the LBF Guarantee Claim as untimely.

14.    On October 18, 2010, OTPPB filed the Response of Ontario Teachers' Pension Plan Board to the Debtors' Fortieth Omnibus Objection to Claims (Late-Filed Claims) [Docket No. 12046] (the "**2010 Response**"), a copy of which is attached hereto as **Exhibit A**, explaining that the failure to file the LBF Guarantee Claim before the Bar Date was the result of excusable neglect.

15.    On February 25, 2011, the Debtors filed the Notice of Withdrawal of

Debtors' Fortieth Omnibus Objection to Claims (Late Filed Claims) as to Certain Claims

[Docket No. 14672] withdrawing the Original Objection with respect to the LBF Guarantee

Claim.

16.    On May 1, 2015, more than four years after withdrawing the Original

Objection, Lehman filed the Claims Objection.

### Argument

## I.    The Claims Objection Should be Denied Because the Delay in Filing Was the Result of Excusable Neglect

17.    Bankruptcy Rule 9006(b)(1) permits the Court to treat a late-filed claim as

timely where the delay in filing is the result of excusable neglect.  The Supreme Court has held

that neglect encompasses inadvertence, mistake, or carelessness in addition to intervening

circumstances beyond the party's control.  *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd.

P'ship.*, 507 U.S. 380, 392, 395 (1993).  Whether such neglect is excusable is determined by

"taking account of all relevant circumstances surrounding the party's omission."  *Id.* at 395.

18.    The *Pioneer* court enumerated the following four factors for consideration

in determining whether a delay constitutes excusable neglect:  (a) the danger of prejudice to the

debtor; (b) the length of the delay and its potential impact on judicial proceedings; (c) the reason

for the delay, including whether it was within the reasonable control of the claimant; and (d)

whether the claimant acted in good faith.  *Id.*

19.    All of the *Pioneer* factors need not weigh in favor of the party seeking

relief.  For example, relief can be granted where the court finds against the claimant as to the

reason for the delay.  *See In re Enron Corp.*, No. 01-16034, 2003 WL 21756785, at *4, *6 (July

30, 2003 Bankr. S.D.N.Y.).  In *Enron*, although the court found the claimant's reason for delay

in filing its proof of claim was unsatisfactory, the court nevertheless deemed the claim timely

5

filed because doing so did not prejudice the debtor, the length of the delay was minimal, and the creditor acted in good faith.  *Id*. at *6.  The facts in the instant case, when analyzed in light of the *Pioneer* factors, compel the same result.

### A.    There is No Danger of Prejudice to the Debtors

20.    The first *Pioneer* factor considered is whether deeming a claim to be timely filed will prejudice a debtor.  OTPPB respectfully submits that treating the LBF Guarantee Claim as timely filed will in no way prejudice the Debtors.  Factors to be considered in determining whether deeming a claim timely filed would prejudice a debtor include:

> …the size of the late claim in relation to the estate…whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim…and…the disruptive effect that the late filed would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated.

*Enron*, 2003 WL 21756785, at *5 (quoting *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995)).  There is no danger of prejudice to a debtor where the claim "is not substantial in relation to the rest of the claims filed against the [d]ebtor's estate.  *In re XO Communications*, 301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003).  The Debtors' chapter 11 cases are some of the largest and most complex bankruptcies in history.  During the course of the Debtors' chapter 11 proceedings, approximately 69,000 claims totaling $1.3 trillion were filed against the Debtors.[1] The approximate $12.6 million asserted value of the LBF Guarantee Claim is nominal when compared to the unprecedented volume of claims asserted against the Debtors.

21.    Due to its relative size, determining that the LBF Guarantee Claim was timely filed will have virtually no impact on distributions to other creditors.  To the extent that

---

[1]    *See* ¶ 1 of the Motion of Lehman Brothers Holdings Inc. for Extension of the Period to File Objections to and Requests to Estimate Claims filed on May 22, 2015 [Docket No. 49709] (hereinafter, the "**Claim Objection Extension Motion**").

6

the ultimate allowance of the LBF Guarantee Claim does dilute the assets available for

distribution to other creditors, "a simple dollar-for-dollar depletion of assets otherwise available

for timely filed claims" does not constitute prejudice. *Midland Cogeneration Venture Ltd. v.

Enron Corp. (In re Enron)*, 419 F. 3d 115, 130 (2d Cir. 2005) (citing *In re R.H. Macy & Co.,

Inc.*, 166 B.R. 799, 802 (S.D.N.Y)).

22.    Furthermore, due to the size and complexity of these chapter 11 cases, the

claims reconciliation process has taken several years and remains on-going.  In fact, LBHI

recently filed the Claim Objection Extension Motion, which was granted by the Court on June

30, 2015 [Docket No. 50165] and extends LBHI's deadline to object to claims for a second time,

to March 2017.

23.    As evidenced by the Original Objection, the Debtors had notice of the

LBF Guarantee Claim throughout their plan negotiations and prior to the commencement of

their claims reconciliation process.  Furthermore, deeming the claim as timely filed would not

prejudice LBHI's rights to object to the LBF Guarantee Claim on other grounds.   Accordingly,

OTPPB submits that the first *Pioneer* factor weighs in favor of deeming the LBF Guarantee

Claim timely filed.

**B.    The Length of the Delay is *De Minimis***

24.    The next *Pioneer* factor to be considered is the length of the delay in filing

the proof of claim.  The LBF Guarantee Claim was filed a mere 59 days after the Bar Date,

providing the Debtors with ample time to incorporate it into the reconciliation process, as

evidenced by the Original Objection and the current Claims Objection.  As noted above, an

exerise of the Court's discretion not to reject the LBF Guarantee Claim as untimely would cause

no prejudice to the Debtors' estates and does not in any way disrupt judicial administration of

these cases.

7

25.    Furthermore, a 59-day delay is *de minimis*, particularly in light of the extended time frame on which a case of this magnitude has operated.  *See Collezione Europa USA, Inc. v. Dugan (In re Rhodes)*, No. 04-78434, 2007 WL 7143074, at *5 (Bankr. N.D. Ga. Dec. 18, 2007) (allowing a claim filed eight months after the bar date); *In re Sage-Dey*, 170 B.R. 46, 52-53 (Bankr. N.D.N.Y. 1994) (allowing a claim that was filed 6 months after the bar date); *In re Beltrami Enters.*, 178 B.R. 389 (Bankr. M.D. Pa. 1994) (allowing a claim filed two years after the bar date).  Given that it took LBHI nearly five years to evaluate the 2010 Response,[2] it can hardly be said that 59 days is a significant delay in the context of these cases.

### C.    The Reason for the Delay is Justifiable

26.    Courts in the Second Circuit focus primarily on the third prong of the *Pioneer* test and specifically whether the delay was "within the reasonable control of the [creditor]."  *Enron*, 419 F.3d at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355 (2d Cir. 2003)).  The Supreme Court, however, has noted that "the enlargement of prescribed time periods under the 'excusable neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer*, 507 U.S. at 391.

27.    In circumstances where the Court has found excusable neglect in these chapter 11 cases, claimants have "consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims."  *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 127 (2010).

28.    OTPPB has at all times made every effort to act in accordance with the Court's Bar Date Order.  *See* Declaration of Michael H. Torkin in Support of Response of

---

[2]    *See* Claims Objection ¶ 11, n.3, stating that the Debtors withdrew the Original Objection in order to "evaluate the response of OTPPB."

NYDOCS03/1013907.6

Ontario Teachers' Pension Plan Board Response to the Debtors' Fortieth Omnibus Objection to Claims (the "**Torkin Declaration**"), dated October 18, 2010, ¶¶ 12-16, attached to the 2010 Response.  It was only as a result of confusion regarding the applicability of the Bar Date to claims arising out of the Master Agreement and competing multijurisdictional insolvency proceedings that OTPPB failed to timely file the LBF Guarantee Claim.

29.     As the *Pioneer* court noted, a finding of excusable neglect is not limited only to those situations where a delay in filing was caused by circumstances beyond the control of a claimant, but also encompasses inadvertent delays.  *Pioneer*, 507 U.S. at 391.  The fact that a claimant may have been careless is not enough to support denial of its claim.  *In re Garden Ridge Corp.*, 348 B.R. 642, 647 (Bankr. D. Del. 2006) (stating that "[a]lthough [the claimant] was careless in its obligation to file its claim by the deadline, that fact standing alone does not support the denial of its claim").

30.     Here, in an effort to unwind complex derivative transactions and simultaneously comply with bar dates in the United States and Switzerland, the existence of the Guarantee was simply overlooked.  Immediately upon discovery of the Guarantee, all actions necessary to put the Debtors on notice of the LBF Guarantee Claim were promptly taken.  (*See* Torkin Declaration ¶¶ 16-17.)  This simple error is exactly the type of situation the doctrine of excusable neglect is designed to remedy and should not be used to support a denial of the relief requested.

31.     The determination as to excusable neglect "is at bottom an equitable one." *Pioneer*, 507 U.S. at 395.  The principles of equity and fundamental fairness weigh in favor of deeming the LBF Guarantee Claim to have been timely filed.

**D.     OTPPB Acted in Good Faith**

32.     Finally, under the *Pioneer* framework, a court must consider whether the

NYDOCS03/1013907.6

claimant acted in good faith.  The circumstances surrounding the filing of the LBF Guarantee

Claim demonstrate that OTPPB has acted in good faith.  As evidenced by the timely-filed Claim

Nos. 27468 and 27469 and the timely claim filed in the Swiss Proceedings, OTPPB and its

counsel endeavored to protect OTPPB's rights and file all claims in compliance with the Bar

Date Order.  (*See* Torkin Declaration ¶ 13.)  Upon discovery of the Guarantee, OTPPB and its

counsel immediately gathered the appropriate information and prepared and filed the proof of

claim in an attempt to notify the Debtors as quickly as possible.  (*See* Torkin Declaration ¶ 16.)

This is not a case where a creditor refused to file a timely proof of claim for strategic settlement

reasons.  OTPPB at all times attempted to comply with the Bar Date Order and acted in good

faith.

## II.    LBHI Should Not be Permitted to Use the Assertion and Withdrawal of Claims Objections as a Litigation Tactic

33.    In 2010, the Debtors objected to the LBF Guarantee Claim on the basis

that it was untimely.  After OTPPB expended considerable resources preparing and filing the

2010 Response, LBHI withdrew the Original Objection in order to "evaluate" the 2010

Response.  Now, nearly *five years* later, LBHI has once again objected to the LBF Guarantee

Claim on the same basis.

34.    The Claims Objection is nothing more than an attempt to persuade OTPPB

to abandon the LBF Guarantee Claim in order to avoid expending additional resources

repeatedly responding to claims objections.   It is clear that LBHI is using its discretion to pursue

claims objections as a nuisance tactic in the hope that continued time and expense will reduce

OTPPB's appetite to pursue its claim further.

35.    OTPPB respectfully requests that the Court reject this effort and deny the

Claims Objection with respect to the LBF Guarantee Claim.

NYDOCS03/1013907.6

**<u>Conclusion</u>**

WHEREFORE, OTPPB respectfully requests that the Court deny the Claims Objection

with respect to the LBF Guarantee Claim, deem the LBF Guarantee Claim to be timely filed, and

grant such other and further relief as the Court deems just and equitable.


Dated:  New York, New York
        July 2, 2015

                          SHEARMAN & STERLING LLP


                  By:     <u>*/s/ William J.F. Roll III*</u>
                          William J.F. Roll III
                          Solomon J. Noh
                          599 Lexington Avenue
                          New York, New York 10022
                          Telephone:  (212) 848-4000
                          Facsimile:  (646) 848-4260

                          *Attorneys for Ontario Teachers' Pension*
                          *Plan Board*

NYDOCS03/1013907.6

**Exhibit A**

**Hearing Date and Time: October 27, 2010 at 10:00 a.m.**

Michael H. Torkin (MT-5511)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 646-8283

*Attorneys for Ontario Teachers' Pension Plan Board*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                        :
                                        :
                                        :
In re:                                  :       Chapter 11
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :       Case No. 08 – 13555 (JMP)
                                        :
               Debtors.                 :       (Jointly Administered)
                                        :
                                        :
-----------------------------------------------------------------x
```

**RESPONSE OF ONTARIO TEACHERS' PENSION PLAN**
**BOARD TO THE DEBTORS' FORTIETH OMNIBUS**
**OBJECTION TO CLAIMS (LATE-FILED CLAIMS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Ontario Teachers' Pension Plan Board ("**OTPPB**") hereby submits this response

to the Debtors' Fortieth Omnibus Objection to Claims (Late-Filed Claims) [Docket No. 11305]

(the "**Claims Objection**"), and in support thereof, respectfully represents as follows:

**Preliminary Statement**

1.      By the Claims Objection, Lehman Brothers Holdings, Inc. ("**LBHI**") and

its affiliated debtors in the above-captioned cases (together, the "**Debtors**") seek entry of an

order disallowing and expunging certain specified claims, including Claim No. 65647

(the "**LBF Guarantee Claim**") on the basis that it was filed untimely.[1]  As described below, the circumstances surrounding the delay in filing the LBF Guarantee Claim satisfy the excusable neglect standard, and therefore, OTPPB respectively requests that this Court deem the LBF Guarantee Claim to have been timely filed.

2.       The LBF Guarantee Claim arose as a result of LBHI's guarantee of an ISDA Master Agreement entered into between OTPPB and Lehman Brothers Finance S.A., a Swiss entity ("**LBF**") and affiliate of LBHI.  Given the multijurisdictional nature of the transaction with LBF, the existence of the Guarantee (defined below) was unfortunately overlooked.  There was no nefarious or ulterior motive behind the tardy filing.  On the contrary, OTPPB respectfully submits that it at all times acted in good faith in an effort to timely file the LBF Guarantee Claim.

3.       Understandably, the importance of the establishment of a bar date is to provide a debtor with certainty as to the universe of claims against it, so that the debtor can begin its claims reconciliation process effectively and emerge from chapter 11 in an expedited and efficient manner.  In these circumstances, OTPPB respectively submits that permitting it to assert the LBF Guarantee Claim against LBHI will not impede this important goal.

4.       First, the LBF Guarantee Claim was filed as promptly as practicable once OTPPB became aware of its existence – a mere 59 days after the bar date, thereby providing LBHI with ample time and opportunity to incorporate the LBF Guarantee Claim into its claims reconciliation process.  Moreover, OTPPB proactively reached out to the Debtors in January 2010 in an attempt to resolve all of its claims against the Debtors, including the LBF Guarantee Claim, and those settlement discussions have been ongoing.

---

[1]       The Claims Objection lists Lehman Brothers Special Financing Inc. ("**LBSF**") as the debtor under the LBF Guarantee Claim.  OTPPB does not oppose the Claims Objection for this reason, but notes for clarification that the OTPPB Claim was filed against LBHI.

5.      Second, as this Court is well aware, these proceedings are some of the largest and most complex bankruptcies in history.  OTBBP understands that over $830 billion of claims have been filed against the Debtors.  Accordingly, the approximate $12.6 million asserted value of the LBF Guarantee Claim is nominal in comparison to the unprecedented number and amount of claims asserted against the Debtors.  Due to its relative size, permitting OTPPB to assert its Guarantee against LBHI will have virtually no impact on any eventual distributions to LBHI's other creditors.  Moreover, OTPPB is no way attempting to derogate from LBHI's right to object to the amount or other merits of the LBF Guarantee Claim; rather, it is simply requesting that this Court permit it to assert the claim against LBHI.

6.      Clearly this is not a situation in which a creditor failed to file a timely proof of claim for strategic purposes.  OTPPB at all times consciously endeavored to comply with the Bar Date Order (defined below) and acted in good faith.  This Court's indulgence in concluding that the circumstances at hand satisfy the excusable neglect standard is rooted in its equitable powers.  OTPPB respectfully submits that these circumstances warrant such a finding, and the principals of equity and fundamental fairness weigh in favor of deeming the LBF Guarantee Claim to have been timely filed.

## Background

7.      As discussed, prior to the Debtors' bankruptcy proceedings, OTPPB and LBF entered into that certain ISDA Master Agreement dated November 1, 2000 (as amended, supplemented or modified, and together with all schedules, annexes and exhibits thereto and all confirmations exchanged pursuant to transactions entered into in connection therewith, the "**Master Agreement**").

8.      On December 14, 2000, LBHI unconditionally and irrevocably guaranteed

to OTPPB the due and punctual payment of all amounts payable by LBF under the Master

Agreement when such amounts become due and payable (the "**Guarantee**").

9.    Beginning on September 15, 2008 and periodically thereafter, the Debtors,

including LBHI, commenced before this Court voluntary cases under chapter 11 of title 11 of the

United States Code (the "**Bankruptcy Code**").  The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure.

10.    LBHI's bankruptcy filing constituted an Event of Default, as that term is

defined in section 5(a) of the Master Agreement, and on September 16, 2008, OTPPB sent LBF a

notice of Early Termination in accordance with section 6 of the Master Agreement.

11.    On or about September 30, 2008, the Swiss Federal Bank Commission

exercised regulatory authority over LBF, and ultimately appointed PricewaterhouseCoopers AG,

Zurich ("**PWC**") as liquidator of LBF in Switzerland (the "**Swiss Proceedings**").

12.    On October 3, 2008, LBF filed a voluntary petition under chapter 11 of the

Bankruptcy Code before this Court.

13.    On February 10, 2009, PWC, in its role as the bankruptcy liquidator and

putative foreign representative of LBF, filed a chapter 15 proceeding and simultaneously sought

the dismissal of LBF's chapter 11 case.  On March 12, 2009, this Court entered orders

dismissing LBF's chapter 11 proceedings and recognizing the Swiss Proceedings as foreign main

proceedings.

14.    On July 2, 2009, this Court entered the Order Pursuant to Section

502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for

Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the

4

Proof of Claim Form [Docket No. 4271] (the "**Bar Date Order**") establishing September 22, 2009 (the "**Bar Date**") as the deadline for filing proofs of claim against the Debtors.

15.     In addition to the LBF Guarantee Claim that is the subject of the Claims Objection, OTPPB has other claims against the Debtors.  OTPPB properly and timely filed Claim Nos. 27468 and 27469 (the "**LBSF Derivatives Claim**s") against LBHI and LBSF, respectively.  Additionally, OTPPB filed a proper and timely claim (together with the LBF Guarantee Claim, the "**LBF Derivatives Claims**") in the Swiss Proceedings against LBF as primary obligor under the Master Agreement.

16.     Prior to the expiration of the Bar Date, despite its good faith effort to timely file all claims against the Debtors, OTPPB and its counsel were mistaken about the existence of the Guarantee.  Given the principal obligation under the Master Agreement was owed by LBF, a Swiss entity, Swiss counsel was involved in filing a claim in the Swiss Proceedings.  Unfortunately, due to confusion among OTPPB and Shearman & Sterling LLP, the existence of the Guarantee was not discovered until after the Bar Date.  As soon as the existence of the Guarantee was discovered, OTPPB and its counsel promptly prepared the required documentation, and on November 20, 2009, filed the LBF Guarantee Claim.

17.     Since January 2010, OTPPB and the Debtors have been actively attempting to resolve the LBSF Derivatives Claims, as well as the LBF Derivatives Claims, including the LBF Guarantee Claim.

18.     On September 13, 2010, the Debtors filed the Claims Objection, seeking, among other things, to disallow the LBF Guarantee Claim as untimely.

NYDOCS03/914971.5

<u>Argument</u>

**The Claim Objection Should be Denied Because the Delay in Filing Was the Result of Excusable Neglect**

19.    Bankruptcy Rule 9006(b)(1) permits this Court to treat a late-filed claim as timely where the delay in filing is the result of excusable neglect.  The Supreme Court has held that neglect encompasses inadvertence, mistake, or carelessness in addition to intervening circumstances beyond the party's control.  *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 392, 395 (1993).  Whether such neglect is excusable is determined by "taking account of all relevant circumstances surrounding the party's omission."  *Id*. at 395.

20.    The *Pioneer* court enumerated the following four factors for consideration in determining whether a delay constitutes excusable neglect:  (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the claimant; and (4) whether the claimant acted in good faith.  *Id*.

21.    All of the *Pioneer* factors need not weigh in favor of the party seeking relief.  For example, relief can be granted where the court finds against the claimant as to the reason for the delay   *See In re Enron Corp*., No. 01-16034, 2003 WL 21756785, at *4, *6 (July 30, 2003 Bankr. S.D.N.Y.)  In *Enron*, although the court found the claimant's reason for delay in filing its proof of claim was unsatisfactory, the court nevertheless deemed the claim timely filed because doing so did not prejudice the debtor, the length of the delay was minimal, and the creditor acted in good faith.  *Id*. at *6.  The facts in the instant case, when analyzed in light of the *Pioneer* factors, demand the same result.

I.    **There is No Danger of Prejudice to the Debtors**

22.    The first *Pioneer* factor considered is whether the deeming the LBF

Guarantee Claim to be timely filed will prejudice the Debtors.  OTPPB respectfully submits that

doing so will in no way prejudice the Debtors or imperil their prospects for a successful

reorganization.  There is no danger of prejudice to a debtor where the claim "is not substantial in

relation to the rest of the claims filed against the [d]ebtor's estate.  *In re XO Communications*,

301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003).  These proceedings are some of the largest and most

complex bankruptcies in history.  OTPPB understands that over $830 billion worth of claims

have been filed against the Debtors.  The approximate $12.6 million asserted value of the LBF

Guarantee Claim is nominal when compared to the unprecedented volume of claims asserted

against the Debtors.

    23.  Due to its relative size, determining that the LBF Guarantee Claim was

timely filed will have virtually no impact on any eventual distributions to other creditors.  To the

extent that the ultimate allowance of the LBF Guarantee Claim does dilute the assets available

for distribution to other creditors, "a simple dollar-for-dollar depletion of assets otherwise

available for timely filed claims" does not constitute prejudice.  *In re Enron*, 419 F. 3d 115, 130

(2d Cir. 2005) (citing *In re R.H. Macy & Co., Inc.*, 166 B.R. 799, 802 (S.D.N.Y)).

    24.  Furthermore, due to the size and complexity of the Debtors' cases, in

which more than 65,000 claims were filed, claims reconciliation will continue in the months and

years to come.  As evidenced by the dozens of omnibus claims objections the Debtors have filed

in the last month alone, the claims reconciliation process continues to be on-going.  The

settlement discussions which began in January 2010 and the Claims Objection itself, the first

related to late-filed claims, indicates that the Debtors had notice of the LBF Guarantee Claim and

are only now, nearly a year after its filing (and nine months after the commencement of

settlement discussions), seeking to expunge the claim on the basis that it was filed untimely.

NYDOCS03/914971.5

These circumstances demonstrate that deeming the LBF Guarantee Claim to have been timely filed will have no impact on the administration of these cases. Additionally, the Debtors also will retain all rights to object to the amount and other merits of the LBF Guarantee Claim.

25.    The Debtors will suffer no actual harm if the LBF Guarantee Claim is not expunged. Any hypothetical harm that may be alleged by the Debtors cannot rise to the level of prejudice. *In re O'Brien Envtl. Energy*, 188 F.3d 116, 127 (3d Cir. 1999) (stating that "a finding of prejudice should be a conclusion based on facts in evidence"). The instant facts indicate that no harm will come to the Debtors by deeming the LBF Guarantee Claim to have been timely filed.

## II.    The Length of the Delay is *De Minimis*

26.    The next *Pioneer* factor to be considered is the length of the delay in filing the proof of claim. The LBF Guarantee Claim was filed a mere 59 days after the Bar Date, providing the Debtors with ample time to incorporate it into the reconciliation process, as evidenced by the Claims Objection itself. As discussed above, the Court's discretion not to expunge the LBF Guarantee Claim causes no prejudice to estate and does not in any way disrupt judicial administration of these cases.

27.    Furthermore, a 59-day delay is *de minimis*, particularly in light of the extended time frame on which a case of this magnitude operates. *See Collezione Europa USA, Inc. v. Dugan (In re Rhodes)*, No. 04-78434, 2007 WL 7143074, at *5 (Bankr. N.D. Ga. Dec. 18, 2007) (allowing a claim filed eight months after the bar date); *In re Sage-Dey*, 170 B.R. 46, 52-53 (Bankr. N.D.N.Y. 1994) (allowing a claim that was filed 6 months after the bar date); *In re Beltrami Enters.*, 178 B.R. 389 (Bankr. M.D. Pa. 1994) (allowing a claim filed two years after the bar date).

8

### III.    The Reason for the Delay is Justifiable

28.    This Court has found the third prong of the *Pioneer* test to be a "central focus" in determining whether a claimant has established excusable neglect.  *See* Memorandum Decision Denying Motions for Leave to File Late Claims, dated May 20, 2010 [Docket No. 9150] (the "**Memorandum Decision**").  In those circumstances where this Court has found excusable neglect, claimants have "consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims."  (Memorandum Decision p. 19.)  OTPPB has at all times made every effort to act in accordance with this Court's Bar Date Order.  *See* Declaration of Michael H. Torkin in Support of Response of Ontario Teachers' Pension Plan Board Response to the Debtors' Fortieth Omnibus Objection to Claims (the "**Torkin Declaration**"), dated October 18, 2010, ¶¶ 12-16, attached hereto as Exhibit A.  It was only as a result of confusion regarding the applicability of the Bar Date to claims arising out of the Master Agreement that OTPPB failed to timely file the LBF Guarantee Claim.

29.    Furthermore, excusable neglect is not "limited strictly to omissions caused by circumstances beyond the control" of the claimant, but also encompasses inadvertent delays. *Pioneer*, 507 U.S. at 392.  The fact that a claimant may have been careless is not enough to support denial of its claim.  *In re Garden Ridge Corp.*, 348 B.R. 642, 647 (Bankr. D. Del. 2006) (stating that "[a]lthough [the claimant] was careless in its obligation to file its claim by the deadline, that fact standing alone does not support the denial of its claim").

30.    Here, in an effort to unwind complex derivative transactions and simultaneously comply with bar dates in the United States and Switzerland, the existence of the Guarantee was simply overlooked.  Immediately upon discovery of the Guarantee, all actions

necessary to put the Debtors on notice of the LBF Guarantee Claim were promptly taken.  (*See* Torkin Declaration ¶¶ 16-17.)  This simple error is exactly the type of situation the doctrine of excusable neglect is designed to remedy and should not be used to support a denial of the relief requested.

31.     "[T]he determination as to excusable neglect is at bottom an equitable one."  *Pioneer*, 507 U.S. at 395.  The principles of equity and fundamental fairness weigh in favor of deeming the LBF Guarantee Claim to have been timely filed.

**IV.     OTPPB Acted in Good Faith**

32.     Finally, under the *Pioneer* framework, a court must consider whether the claimant acted in good faith.  The circumstances surrounding the filing of the LBF Guarantee Claim demonstrate that OTPPB has acted in good faith.  As evidenced by the timely-filed Claim Nos. 27468 and 27469 and the timely claim filed in the Swiss Proceedings, OTPPB and its counsel endeavored to protect OTPPB's rights and file all claims in compliance with the Bar Date Order.  (*See* Torkin Declaration ¶ 13.)  Upon discovery of the Guarantee, OTPPB and its counsel immediately gathered the appropriate information and prepared and filed the proof of claim in an attempt to notify the Debtors as quickly as possible.  (*See* Torkin Declaration ¶ 16.) This is not a case where a creditor refused to file a timely proof of claim for strategic settlement reasons.  OTPPB at all times attempted to comply with the Bar Date Order and acted in good faith.

NYDOCS03/914971.5

**<u>Conclusion</u>**

WHEREFORE, OTPPB respectfully requests that the Court deny the Claim Objection

with respect to the LBF Guarantee Claim, deem the LBF Guarantee Claim to be timely filed, and

grant such other and further relief as this Court deems just and equitable.

Dated:  New York, New York
October 18, 2010

SHEARMAN & STERLING LLP

By: */s/ Michael H. Torkin*
   Michael H. Torkin
   599 Lexington Avenue
   New York, New York 10022
   Telephone:  (212) 848-4000
   Facsimile:  (212) 848-7179

   *Attorneys for Ontario Teachers' Pension
   Plan Board*

11

Michael H. Torkin (MT-5511)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 646-8283

*Attorneys for Ontario Teachers' Pension Plan Board*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
                                                             :
In re:                                                       :          **Chapter 11**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**  :          **Case No. 08 – 13555 (JMP)**
                                                             :
                            **Debtors.**                     :          **(Jointly Administered)**
                                                             :
                                                             :
-------------------------------------------------------------x

**DECLARATION OF MICHAEL H. TORKIN IN SUPPORT OF**
**RESPONSE OF ONTARIO TEACHERS' PENSION PLAN**
**BOARD TO THE DEBTORS' FORTIETH OMNIBUS**
**OBJECTION TO CLAIMS (LATE-FILED CLAIMS)**

MICHAEL H. TORKIN hereby declares as follows:

1.       I am a member of Shearman & Sterling LLP ("**S&S**").  I submit this declaration in

support of the Response of Ontario Teachers' Pension Plan Board (**"OTPPB"**) to the Debtors'

Fortieth Omnibus Objection to Claims (Late-Filed Claims).

2.       I make this declaration based on my personal knowledge, including with respect

to facts contained in business records as to which I am competent to testify.

3.       In September 2008, following Lehman Brothers Holding Inc. ("**LBHI**")

commencing a chapter 11 proceeding, Mr. Michael Padfield, the then Senior Legal Counsel,

Investments at  OTPPB engaged S&S to represent OTPPB in connection with its exposure to

Lehman Brothers Inc., Lehman Brothers Special Finance Inc. ("**LBSF**") and Lehman Brothers

Finance S.A. ("**LBF**").

4.         In connection with S&S's representation of OTPPB, on October 2, 2008, S&S

filed a summons and complaint (the "**LBSF Suit**") on OTPPB's behalf against LSBF.

5.         The LBSF Suit was based on LBSF's failure to pay amounts owed to OTPPB

under an ISDA Master Agreement dated November 1, 2000 between OTPPB and LBSF

(the "**LBSF ISDA**").  In connection with the LBSF ISDA, LBHI executed a Guarantee of LBHI

dated December 14, 2000 (the "**LBHI Guarantee**") in favor of OTPPB, pursuant to which LBHI

guaranteed LBSF's performance thereunder.

6.         On October 3, 2008, LBSF commenced a chapter 11 proceeding before this

Court, and the LBSF Suit was stayed.

7.         LBF also commenced a chapter 11 proceeding before this Court on October 3,

2008 (the "**LBF Chapter 11**").

8.         On October 10, 2008, Mr. Padfield requested that I participate in a teleconference

with Dr. Thomas Rohner, LL.M. of Pestalozzi Lachenal Patry Zurich AG, OTPPB's Swiss

counsel, to advise Dr. Rohner and OTPPB regarding the impact of the LBF Chapter 11 on

OTPPB's option to pursue legal action against LBF in Switzerland.  At that time, I was informed

of the existence of an ISDA Master Agreement dated November 1, 2000 between OTPPB and

LBF.

9.         On or about September 30, 2008, the Swiss Federal Bank Commission exercised

regulatory authority over LBF, and ultimately appointed PricewaterhouseCoopers AG, Zurich

("**PWC**") as liquidator of LBF in Switzerland (the "**Swiss Proceedings**").

10.     On December 22, 2008, Dr. Rohner filed a claim on OTPPB's behalf in the Swiss Proceedings.

11.     On February 10, 2009, PWC, in its role as the bankruptcy liquidator and putative foreign representative of LBF, filed a chapter 15 proceeding (the "**LBF Chapter 15**") and on March 12, 2009, LBF's Chapter 11 was dismissed and the Swiss Proceeding was recognized as a foreign main proceeding in the LBF Chapter 15.

12.     On or about August 20, 2009 through September 22, 2009, there were numerous discussions and emails among myself, Ms. Tanya Sheridan, a former S&S associate, and numerous OTPPB personnel, regarding information required to file proofs of claim on OTPPB's behalf.  During those discussions, neither S&S nor OTPPB personnel recalled that LBHI had guaranteed the LBF ISDA pursuant to a Guarantee of LBHI dated December 14, 2000 (the "**LBHI-LBF Guarantee**").

13.     Accordingly, OTPPB only timely filed proofs of claim in connection with the LBSF ISDA (Claim 27468) and LBHI-LBSF Guarantee (Claim 27469), and the applicable questionnaires in respect thereof.

14.     On or about October 27, 2009, it came to my attention that a LBHI-LBF Guarantee might exist.  I immediately contacted OTPPB to confirm its existence.

15.     I also requested that Ms. Sheridan review her files to determine whether S&S was in possession of the LBHI-LBF Guarantee.

16.     Upon review of her files, Ms. Sheridan informed me that following the bar date she was sent a copy of the LBHI-LBF Guarantee in connection with her completion of the guarantee questionnaire for the LBHI-LBSF Guarantee, and did not realize that the wrong

guarantee had been sent.  Accordingly, we immediately modified the questionnaire for the
LBHI-LBSF Guarantee and confirmed that the LBHI-LBF Guarantee existed.

17.     On November 20, 2009, S&S filed a proof of claim in respect of the LBHI-LBF
Guarantee as well as the applicable questionnaires.

18.     On January 26, 2010, at my direction, Mr. Solomon Noh, as associate with S&S,
sent an email to Ms. Jane Shahmanesh at Lehman Brothers to inquire the best avenue to pursue
settlement conversations regarding the LBSF Claims and the LBHI-LBF Guarantee Claim.
Settlement discussions have continued since that date.

19.     I submit this declaration pursuant to 28 U.S.C. § 1746 and declare under penalty
of perjury that the foregoing is true and correct.


Dated:  October 18, 2010


                                                            */s/ Michael H. Torkin*_____
                                                            Michael H. Torkin