Hoguet Newman Regal & Kenney, LLP
10 East 40th Street, 35th Floor
New York, NY 10016
Phone: 212-689-8808
Joshua D. Rievman

*Attorneys for Claimant RGM Trading International Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE<br><br>LEHMAN BROTHERS HOLDINGS , INC., et al<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |

**OBJECTION OF RGM TRADING INTERNATINAL LIMITED TO PLAN ADMINISTRATOR'S MOTION PURSUANT TO SECTION 8.4, 9.3 AND 14.1 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHER HOLDINGS INC. AND ITS AFFILAITED DEBTORS TO ESTAMATE CLAIMS FOR <u>RESERVE AND DISTRIBUTION PURPOSES</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

RGM's Guarantee Claims .........................................................................................................1

RGM Has Not Received 100% of its Allowed Claims in the United Kingdom Insolvency Proceeding ..................................................................................................................3

The Plan Administrator Has Not Met the Requirements for Estimating RGM's Guarantee Claims at Zero under Bankruptcy Code Section 502 (c)(1) ............................................................3

Liquidation of RGM's Guarantee Claim, If Even Necessary, Would Not Require Discovery and Not Unduly Delay the Administration of the Cases ................................................5

Conclusion ...............................................................................................................................8

## TABLE OF AUTHORITIES

AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. L.L.C.,
890 F. Supp. 2d 373 (S.D.N.Y. 2012) ............................................................................... 6

Burke v. N. Fork Bank & Trust Co., 228 A.D.2d 461, 644 N.Y.S.2d 293 (2d Dep't 1996) ......... 7

Doehler Die Casting Co. v. Holmes, 52 N.Y.S.2d 321 (Sup. Ct. N.Y. Cnty. 1944) ..................... 7

Dunkin' Donuts of Am., Inc. v. Liberatore,
138 A.D.2d 559, 526 N.Y.S.2d 141 (2d Dep't 1988) ...................................................... 6

European Am. Bank & Trust Co. v. Boyd,
131 A.D.2d 629, 516 N.Y.S.2d 714 (2d Dep't 1987) ...................................................... 7

Exp.-Imp. Bank v. Agricola del Mar BCS, S.A. de C.V.,
536 F. Supp. 2d 345 (S.D.N.Y. 2008) ............................................................................... 7

In re LightSquared Inc., No. 12-12080 (SCC),
2014 Bankr. LEXIS 4577 (Bankr. S.D.N.Y. Oct. 30, 2014) ...................................... 4, 5

In re F.B.F. Indus., 165 B.R. 544 (Bankr. E.D. Pa. 1994) ............................................................ 4

In re King, 210 Bankr. LEXIS 3830 (Bankr. N.D.N.Y. Oct. 20 2010) ......................................... 4

Lakhaney v. Anzelone, 788 F. Supp. 160 (S.D.N.Y. 1992) .......................................................... 6

Liberty Nat'l Bank v. Gross, 201 A.D.2d 467, 607 N.Y.S.2d 419 (2d Dep't 1994) ..................... 6

Claimant RGM Trading International Limited ("RGM") files this objection to the Plan Administrator's motion to estimate claims for reserve and distribution purposes, as follows:

1. RGM objects to the Plan Administrator's motion to estimate RGM's guarantee claims against Lehman Brothers Holdings Inc. ("LBHI") claims at zero for reserve and distribution purposes.

2. The Plan Administrator's motion should be denied because it fails on several material grounds. First, RGM has not, as the Plan Administrator alleges, received 100% of its allowed claims from LBIE. Second, RGM's guarantee claim is neither contingent nor unliquidated. Third, there is no requirement that RGM have relied on any of the guarantees under which it claims, and in any event, no discovery would be required of RGM, which in January 2013 produced email correspondence showing express reliance on LBHI's guarantee at the time RGM entered the ISDA master agreement governing the certain swap transactions with LBIE underlying its claim.

RGM's Guarantee Claims

3. RGM, Creditor #1000097015, filed its proof of claim for $1,235,934.44 (plus expenses TBD) in this Chapter 11 proceeding on September 17, 2009. A copy of RGM's proof of claim is attached the Declaration of Richard B. Gorelick, Director of RGM, dated July 10, 2015 (Gorelick Dec.), as Exhibit A.

4. In its proof of claim, RGM attached in support of its claims three separate LBHI guarantees: a) the January 4, 2008 guarantee made to "any counterparty" of LBIE and sent to at least one ratings agency, Standard & Poor's Ratings Service (the "January 4, 2008 Guarantee"; Ex. A to Proof of Claim); b) the June 9, 2005 guarantee of the "payment of all liabilities, obligations and commitments" of LBIE and passed by the executive committee of LBHI's Board

of Directors (the "June 9, 2005 Guarantee"; Exhibit G to Proof of Claim); and c) the January 14, 2008 guarantee that LBHI issued directly to RGM in connection with an ISDA Master Agreement (the "ISDA Master Agreement") between RGM and LBIE (the "January 14, 2008 Guarantee"; Exhibit H to Proof of Claim).

5. The January 4, 2008 Guarantee covers LBIE's obligations under both the ISDA Master Agreement and under a futures customer account (the "Customer Account"), as well as "all expenses including reasonable attorneys' fees of enforcing or obtaining or endeavoring to enforce or obtain payment [of the guaranteed obligations]").

6. The January 14, 2008 Guarantee covers LBIE's obligations under the ISDA Master Agreement only.

7. The June 9, 2005 Guarantee covers LBIE's obligations under both the ISDA Master Agreement and the Customer Account.

8. It should be noted that the underlying ISDA Master Agreement claim is considered an "unsecured claim" in the LBIE UK Insolvency Proceeding, and the Customer Account is considered a "client money claim" in the LBIE UK Insolvency Proceeding.

9. In January 2013, in response to a Rule 2004 subpoena from Debtor, RGM produced email correspondence showing that in late 2007 and early 2008, RGM requested LBIE to provide a signed copy of the January 14, 2008 Guarantee which had been an integral part of the ISDA Master Agreement governing certain swap transactions, which guarantee RGM finally received after several requests. A copy of the relevant portion of this email string is attached to the Gorelick Declaration as Exhibit B.

2

>RGM Has Not Received 100% of its Allowed Claims
>in the United Kingdom Insolvency Proceeding

10. Although the Plan Administrator asserts that "LBIE's unsecured creditors have received 100% of the allowed amounts of their claims," to date, RGM has received from the Administrator of LBIE's UK Insolvency Proceeding in the United Kingdom distributions totaling only $930,088.83, representing 87.26% of RGM's admitted *unsecured* claim. RGM is still owed $135,818.84 of its admitted unsecured claim. RGM cannot predict how much more it will receive.

11. The Plan Administrator's assertion appears to be based on a misreading of a report relating to payments made to "Senior" unsecured creditors (Twelfth progress report at p. 5-6), perhaps assuming payments made to *senior* unsecured creditors apply to ordinary unsecured creditors as well.

12. RGM confirms that it has, however, received the full amount of its agreed *client money* claim in the LBIE insolvency proceeding for an agreed amount of JPY14,809,654.00. This amount did not include any costs of recovery.

13. Additionally, RGM has incurred and continues to incur "expenses including reasonable attorneys' fees of enforcing or obtaining or endeavoring to enforce or obtain payment [of the guaranteed obligations]," as guaranteed under the January 4, 2008 Guarantee. (Ex. A to Proof of Claim (Ex. A to Gorelick Dec.).

>The Plan Administrator Has Not Met the Requirements for Estimating RGM's Guarantee
>Claims at Zero under Bankruptcy Code Section 502 (c)(1)

14. The Plan Administrator has not met the requirements for estimating RGM's guarantee claims at zero under Bankruptcy Code Section 502 (c)(1). As this Court has recently held, "[i]n order to seek estimation . . . a party must demonstrate that the gating requirements for

3

estimation are met — namely, that the claim to be estimated is contingent or unliquidated and that the delay associated with the fixing or liquidation of such claim would be 'undue.' In re LightSquared Inc., No. 12-12080 (SCC), Jointly Administered, 2014 Bankr. LEXIS 4577, at *10 (Bankr. S.D.N.Y. Oct. 30, 2014) (citing In re Dow Corning Corp., 211 B.R. 545, 562-63 (Bankr. E.D. Mich. 1997)).

15. The Plan Administrator has not met these requirements with respect to estimating RGM's claims at zero. First, like the claim at issue in LightSquared, RGM's guarantee claim is not contingent. While the Bankruptcy Code does not define what claims are "contingent" for purposes of Section 502(c), courts have established that a contingent claim is one where debtor's "duty to pay does not come into existence until triggered by the occurrence of a future event." In re LightSquared Inc., 2014 Bankr. LEXIS 4577, at *11.

16. RGM's guarantee claims are not contingent because LBIE originally defaulted as principal on the underlying debt, leading RGM to file its claim in the LBIE UK Insolvency Proceeding on the original debt and in this proceeding on LBHI's guarantees. As this Court has held, "Upon default of the principal on the underlying debt, liability on a guaranty becomes fixed and is no longer contingent because all predicates to enforcement have occurred." In re LightSquared Inc., 2014 Bankr. LEXIS 4577, at *11; In re F.B.F. Indus., 165 B.R. 544, 548-49 (Bankr. E.D. Pa. 1994). Under New York law, which governs the guarantees, the beneficiary and not the obligor has the right to decide what remedies to exercise. In re LightSquared Inc., 2014 Bankr. LEXIS 4577, at *14; In re King, 210 Bankr. LEXIS 3830, at *9-10 (Bankr. N.D.N.Y. Oct. 20, 2010). Because a portion of LBIE's debt to RGM remains unpaid, there can be no doubt that the claim is not contingent.

4

17. Nor can the Plan Administrator demonstrate that RGM's claim is unliquidated. The Plan Administrator's claim that RGM will eventually be paid in full in the LBIE insolvency proceeding does not render RGM's claim unliquidated. See In re LightSquared Inc., 2014 Bankr. LEXIS 4577, at *17. Indeed, the Plan Administrator seems to agree that RGM's claim is liquidated, as it has not designated RGM's claim as containing unliquidated amounts in Exhibit A to the Plan Administrator's motion.

> Liquidation of RGM's Guarantee Claim, If Even Necessary, Would Not Require Discovery and Not Unduly Delay the Administration of the Cases

18. The Plan Administrator argues incorrectly that RGM's guarantee claim should be estimated at zero because litigating the validity of the claim would require discovery and would be protracted and delay the administration of LBHI's case. (See Plan Administrator's motion at ¶ 33).

19. First, more than two and a half years ago counsel for Debtor took discovery of RGM through a Rule 2004 Subpoena dated December 17, 2012. (Exhibit C to Gorelick Dec.). RGM complied with the subpoena and produced responsive documents, together with a response and objection dated January 16, 2013 (Exhibit D to Gorelick Dec). Neither Debtor nor the Plan Administrator took any steps to pursue discovery any further. The Plan Administrator should not now be allowed to argue that RGM's claim should be estimated at zero because it took discovery long ago and, apparently satisfied, took no further steps to examine RGM's claim.

20. Second, the Plan Administrator's argument that RGM's claim should be estimated at zero is based on the incorrect premise that there is a question as to the validity of LBHI's guarantees to RGM. RGM has attached three manifestly enforceable and valid guarantees to its claim (as noted above in paragraphs 5-7, the guarantees vary somewhat in scope). The Plan

5

Administrator's suggestion that guarantees need to be "executed or individualized" or supported by reliance has no support in New York law. (Plan Administrator's motion at ¶ 33).

21. Under New York law courts determine the validity of guarantees by applying ordinary contract principles. Lakhaney v. Anzelone, 788 F. Supp. 160, 163 (S.D.N.Y. 1992). While RGM did rely on LBHI's guarantees when it decided to enter into the ISDA Master Agreement with LBIE (See, e.g., RGM-Lehman emails regarding ISDA agreement and accompanying guarantee, Ex. B to Gorelick Dec. and January 14, 2008 Guarantee (Exhibit H to Proof of Claim, attached as Exhibit A to Gorelick Dec.)), reliance on the guarantee is not a requirement for enforceability.

22. Like all contracts, guarantees must be supported by consideration. Such consideration is not required to be "independent of that furnished in support of the contract in which the guaranty is housed." AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. L.L.C., 890 F. Supp. 2d 373, 382 (S.D.N.Y. 2012). Where a guarantee is clearly part of the same transaction for which there is sufficient consideration, the guarantee requires no additional consideration. Liberty Nat'l Bank v. Gross, 201 A.D.2d 467, 468, 607 N.Y.S.2d 419, 421 (2d Dep't 1994). See also Dunkin' Donuts of Am., Inc. v. Liberatore, 138 A.D.2d 559, 561, 526 N.Y.S.2d 141, 143 (2d Dep't 1988).

23. There can be no question that the January 14, 2008 Guarantee expressly contemplates the underlying transactions between RGM and LBIE. The January 14, 2008 Guarantee explicitly states that it was made "in consideration of the financial accommodation accorded to [LBIE] by [RGM]," identifies the ISDA Master Agreement of which it is an integral part and expressly states that it is a document contemplated by that ISDA Master agreement. (January 14, 2008 Guarantee (Exhibit H to Proof of Claim, attached as Exhibit A to Gorelick

6

Dec.)). As such, it certainly conforms to the requirement that "[c]onsideration for the guaranty must be expressly or impliedly stated in the instrument." Exp.-Imp. Bank v. Agricola del Mar BCS, S.A. de C.V., 536 F. Supp. 2d 345, 350 (S.D.N.Y. 2008), aff'd, 334 F. App'x 353 (2d Cir. 2009).

24. In the January 14, 2008 Guarantee, LBHI waived its right to insist that RGM exhaust its remedies against LBIE before exercising its rights against LBHI, and agreed that the guarantee would be in force for "each Transaction" undertaken under the ISDA Master Agreement and contemplated that the parties would engage in multiple transactions and that the guarantee would extend to each new transaction without any further action by LBHI. (January 14, 2008 Guarantee (Exhibit H to Proof of Claim, attached as Exhibit A to Gorelick Dec.)). RGM's commencement of derivatives trading with LBIE after receiving the guarantees is sufficient to demonstrate its acceptance of the guarantees; European Am. Bank & Trust Co. v. Boyd, 131 A.D.2d 629, 630, 516 N.Y.S.2d 714, 716 (2d Dep't 1987) ("The guarantee may be enforced as long as it is signed by the guarantor"); Doehler Die Casting Co. v. Holmes, 52 N.Y.S.2d 321, 322 (Sup. Ct. N.Y. Cnty. 1944) ("Where credit is advanced on the strength of a guaranty, no notice of acceptance is necessary. . . . This is especially true when the guaranty is absolute and not conditional." (internal citations omitted)). The execution of the guarantee and the ISDA Master Agreement need not be simultaneous to be part of the same transaction. See Burke v. N. Fork Bank & Trust Co., 228 A.D.2d 461, 461, 644 N.Y.S.2d 293, 293 (2d Dep't 1996) ("Nor would the fact that the guaranty was executed a few days after the loan documents were executed impair its enforceability").

25. Like any counterparty of LBIE, RGM can also be said to have relied on the two general guarantees. The January 4, 2008 Guarantee is roughly contemporaneous with RGM's

7

transactions with LBIE and because it was addressed to a leading ratings agency, it certainly positively impacted LBIE's credit rating and thus any counterparty's willingness to deal with LBIE. (See January 4, 2008 Guarantee, Ex. A to Gorelick Dec.). The same is true of the June 9, 2005 Guarantee, which put LBHI's full weight behind LBIE years earlier and presumably was still in force at the time RGM entered into the swap transactions with LBIE.

Conclusion

For the foregoing reasons, Claimant RGM respectfully requests that the Court deny the Plan Administrator's motion to estimate RGM's guarantee claims at zero.

_____
Joshua D. Rievman
Hoguet Newman Regal & Kenney, LLP
10 East 40th Street, 35th Floor
New York, NY 10016
Phone: 212-689-8808

*Attorneys for Claimant RGM Trading International Limited*