Objection Deadline: July 10, 2015 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: July 22, 2015 at 10:00 a.m. (Prevailing Eastern Time)

David J. Molton
Howard S. Steel
Mason C. Simpson
Joseph A. Spina
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to Newport Global Opportunities Fund L.P.
and Newport Global Credit Fund (Master) L.P.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | Case No. 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------------- x

**OBJECTION OF NEWPORT GLOBAL
OPPORTUNITIES FUND L.P. AND NEWPORT GLOBAL
CREDIT FUND (MASTER) L.P. TO THE MOTION OF PLAN
ADMINISTRATOR PURSUANT TO SECTIONS 8.4, 9.3, AND 14.1
OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF
LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS
TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND ...................................................................................................................... 4

    A.    General Overview. ..................................................................................................... 4

    B.    The LBHI Guarantees. ............................................................................................... 5

    C.    The Newport Funds' Allowed Claims Against LBIE. .............................................. 6

    D.    The Newport Funds' Open Value Entitlements Enforceable Under The LBHI Guarantees. ................................................................................................................ 7

        i.    Statutory Interest and Currency Conversion Claims. ........................................ 8

    E.    Section 8.13(d) Of The Plan Recognizes LBHI's Obligations For Open Value Entitlements. .............................................................................................................. 9

    F.    The Motion. .............................................................................................................. 10

OBJECTION ........................................................................................................................... 11

I.    The Newport Guarantee Claims Should Be Allowed And Entitled To Distributions Of LBHI Estate Value, Not Estimated At Zero Dollars For Distribution Purposes. ......................................................................................................... 11

II.    The Motion Should Be Denied As It Relates To The Newport Guarantee Claims Because The Newport Funds Have Not Been Paid In Full. ............................................ 12

III.    The Plan Provides Appropriate Procedures To Allow The Newport Guarantee Claims While Safeguarding The Estates From Double Recovery. ................................. 14

CONCLUSION ....................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

In re Del Biaggio,
    496 B.R. 600 (Bankr. N.D. Cal. 2012) ...................................................................................12

In re Enron Corp.,
    No. 01-16034, 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) .......................................16

In re Genesis Health Ventures, Inc.,
    272 B.R. 558 (Bankr. D. Del. 2002), aff'd 112 Fed. App'x 140 (3d Cir. 2004) ....................16

In The Matter Of Lehman Brothers International Europe (In Administration)
    [2013] EWHC (Ch) 1664, 2013 WL 1795906..........................................................................7

Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),
    162 B.R. 935 (S.D.N.Y. 1994) ................................................................................................12

Kitrosser v. CIT Group/Factoring, Inc,
    177 B.R. 458 (S.D.N.Y. 1995) ................................................................................................12

In re Lehman Brothers Inc.,
    Case No. 08-01420 (Bankr. S.D.N.Y. Apr. 16, 2013) ..........................................................5, 6

In re LightSquared, Inc.,
    No. 12-12080-SCC, 2014 WL 5488413 (Bankr. S.D.N.Y. Oct. 30, 2014) ...........11, 13, 14, 15

In re Mirant Corp.,
    334 B.R. 800 (Bankr. N.D. Tex. 2005)...................................................................................13

In re Nat'l Energy & Gas Trans., Inc.,
    492 F.3d 297 (4th Cir. 2007), cert. denied, 522 U.S. 1231 (2008) .........................................11

In re Realty Assocs. Sec. Corp.,
    66 F. Supp. 416 (E.D.N.Y. 1946) ...........................................................................................11

In re Roman Catholic Archbishop of Portland in Or.,
    339 B.R. 215 (Bankr. D. Or. 2006).........................................................................................13

In re Spansion, Inc.,
    426 B.R. 114 (Bankr. D. Del. 2010) .......................................................................................13

In re Teigen,
    228 B.R. 720 (Bankr. D.S.D. 1998) ........................................................................................16

In re Wash. Bancorporation,
    No. 90-00597, 1996 WL 148533 (D.D.C. Mar. 19, 1996) .....................................................11

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Newport Global Opportunities Fund L.P. ("**NGOF**") and Newport Global Credit Fund (Master) L.P. ("**NGCF**", and together with NGOF, the "**Newport Funds**"), by and through their undersigned attorneys, hereby file this objection (the "**Objection**") to the *Motion of Plan Administrator Pursuant to Sections 8.4, 9.3, and 14.1 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors to Estimate Claims for Reserve and Distribution Purposes* (the "**Motion**"), dated June 10, 2015 [ECF No. 49954].[1] In support of the Objection, the Newport Funds respectfully state as follows:[2]

## PRELIMINARY STATEMENT

1.  The Newport Funds were prime brokerage customers of Lehman Brothers.[3] Prior to the Lehman insolvency proceedings, the Newport Funds maintained securities worth hundreds of millions of dollars with Lehman Brothers in their prime brokerage accounts and transacted under their Prime Brokerage Agreements (defined below) with Lehman Brothers upon knowledge of and reliance on the enforceability of the LBHI Guarantees (defined below). At all relevant times, the Newport Funds relied on the explicit terms of the LBHI Guarantees for what they said - *that LBHI unconditionally guarantees the payment of all of the liabilities, obligations and commitments of Lehman Brothers International (Europe)* ("**LBIE**").

2.  It is uncontested that Lehman Brothers' breached the Prime Brokerage Agreements by failing to, *inter alia*, timely return the Newport Funds' securities upon demand

---

[1] The Newport Funds also hereby join in the *Limited Objection Of Ellsworth Partners, L.L.C. And Certain Affiliates To The Plan Administrator's Motion To Estimate Claims For Reserve And Distribution Purposes*.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] The Newport Funds use "Lehman Brothers" as referred to in their Prime Brokerage Agreements and where Lehman Brothers was held out to Newport as a joint enterprise incapable of being separated into specific Lehman Brothers entities by the Newport Funds.

1

prior to the Lehman insolvency proceedings. The Newport Funds hold allowed claims (the "**Allowed Claims**") against LBIE for breaches of the Prime Brokerage Agreements and, to date, have not been paid in full, as set forth below. Accordingly, the Newport Funds should be permitted to seek allowance of their guarantee claims against LBHI (the "**Newport Guarantee Claims**") for all unpaid amounts due and owing them and enforceable under the LBHI Guarantees.[4] The Newport Funds also have direct claims against LBHI for breaches of their Prime Brokerage Agreements.[5]

3. The Motion seeks an order estimating the Newport Guarantee Claims "in the amount of zero dollars for purposes of establishing: (i) the amount of reserves to be retained for [the Newport Guarantee Claims] under the Plan; and (ii) *the maximum amount of Distributions . . . that [the Newport Guarantee Claims are] entitled to receive . . . under the Plan . . .*" Motion ¶ 3; Proposed Order at 2 (emphasis added). Granting the Motion would effectively expunge the Newport Guarantee Claims and eliminate any potential recovery the Newport Funds may have against LBHI based on the enforceable LBHI Guarantees.

4. Such relief is entirely improper under New York law (which governs under the Prime Brokerage Agreements), the Plan, and concepts of fairness and efficient case management. As of the date of this Objection and as set forth below, the Newport Funds have not recovered the full value of their claim entitlements, which are enforceable against LBHI under the LBHI Guarantees. At a minimum, the Newport Funds may seek recovery against LBHI under the LBHI Guarantees for no less than tens of millions of dollars owed by LBIE in statutory interest

---

[4] The Newport Guarantee Claims are designated on the claims register as Claim Nos. 26372 (NGOF) and 29235 (NGCF).

[5] The Newport Funds' direct claims against LBHI are also designated on the claims register as Claim Nos. 26372 (NGOF) and 29235 (NGCF) and are not subject to the Objection. Upon information and belief, the Plan Administrator has not yet objected to the Newport Funds' direct claims against LBHI.

2

and currency conversion losses related to the Allowed Claims (collectively, the "**Open Value Entitlements**").[6]

5.    Because these Open Value Entitlements remain unpaid, the single satisfaction rule is not yet triggered for the Newport Guarantee Claims and the Newport Funds' rights to seek enforcement of the LBHI Guarantees for satisfaction of these debts should not be curtailed. Indeed, under Section 8.13(d) of the Plan, which governs whether a creditor has been paid in full under the Plan, the Newport Funds have a significant value shortfall enforceable under the LBHI Guarantees.

6.    The Plan Administrator asserts that the relief requested in the Motion must be granted now because the estates should not incur any administrative costs valuing the Newport Guarantee Claims or monitoring any potential excess distributions to the Newport Funds on account of allowed Newport Guarantee Claims. Conveniently, the Plan Administrator does not identify the Open Value Entitlements and turns its cheek to the Debtors' carefully calibrated Plan mechanics under Section 8.14(a) that protects against double recovery. Contrary to the Plan Administrator's assertions, permitting the Newport Funds to seek allowance of the Newport Guarantee Claims does not pose a prohibitive administrative burden and certainly not an administrative burden commensurate with extinguishing the benefits the Newport Funds bargained for and relied upon in the LBHI Guarantees.

7.    The Motion should be denied as an overreaching effort to render worthless legitimate guarantee claims with appropriate value entitlements. Indeed, this Court has

---

[6] The Newport Funds also assert unliquidated claims directly against LBHI and under the LBHI Guarantees for, *inter alia*, damages relating to their inability to participate in corporate events connected to their securities while under Lehman Brothers' control in breach of Sections 10 and 11 of the Prime Brokerage Agreements and damages relating to the loss of investment opportunities due to Lehman Brothers' failure to promptly return the Newport Funds' securities in breach of, *inter alia*, Section 2 of the Prime Brokerage Agreement.

characterized the Newport Guarantee Claims as "having legs" and capable of withstanding a sufficiency challenge.[7] They similarly should survive this Motion.

8. Simply put, the relief requested in the Motion is inappropriate because the Newport Funds have not been paid in full and any expectation of future payments should not vitiate the existence of an enforceable guarantee. At a minimum, the Motion is premature and should be denied. The Newport Funds should not lose the protections of the benefits they bargained for and relied upon in the form of the LBHI Guarantees and be forced to bear all of the risk that LBIE may fail to ultimately satisfy the Open Value Entitlements.

9. Rather than valuing the Newport Guarantee Claims at zero dollars for distribution and reserve purposes, the Newport Funds should have the opportunity to seek allowance of the Newport Guarantee Claims in liquidated amounts and receive distributions as Class 5 creditors under the Plan, subject to the single satisfaction rule and LBHI's rights of subrogation under Section 8.14(a) of the Plan. The Motion should be denied as to the Newport Guarantee Claims.

## BACKGROUND

**A.    General Overview.**

10. A detailed description of the relationship between Lehman Brothers and the Newport Funds is set forth in the: (i) *Response of Newport Global Opportunities Fund L.P. and Newport Global Credit Fund (Master) L.P. to the Four Hundred Eighty-Eighth Omnibus Objection to Claims* [ECF No. 47621]; and (ii) *Declaration of Roger May, Senior Managing Director, CFO, and COO of Newport Global Advisors* [ECF No. 47621-1] (the "**May**

---

[7]   See Hr'g Tr. 115:3-19, 150:1-8, Feb. 11, 2015 [ECF No. 48807].

4

**Declaration**"). The response and the May Declaration are attached hereto as **Exhibit A** and incorporated by reference herein as if fully set forth in this Objection.[8]

B.      **The LBHI Guarantees.**

11.     Prior to the commencement of these Chapter 11 proceedings, each of the Newport Funds entered into a Customer Account Prime Brokerage Agreement (each, a "**Prime Brokerage Agreement**") and related agreements with Lehman Brothers. See May Decl. ¶¶ 24-30.

12.     There was never any question that the Newport Funds, as prime brokerage customers, would have the full benefit of an LBHI guarantee. See May. Decl. ¶¶ 24-25. Indeed, the Newport Funds relied on the LBHI Guarantees when entering into and transacting under the Prime Brokerage Agreements. Id. at 45.

13.     On June 9, 2005, the Executive Committee of the Board of Directors of LBHI executed the Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc. (the "**2005 LBHI Guarantee**"). A copy of the 2005 LBHI Guarantee is attached to the Newport Guarantee Claims.

14.     The 2005 LBHI Guarantee provides that "[Lehman Brothers Holdings Inc.] hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the [LBHI's Code of Authorities]." 2005 LBHI Guarantee at 2. LBIE is listed as a Guaranteed Subsidiary on Schedule A to the 2005 LBHI Guarantee.

---

[8] Prior to the filing of the Motion, the Newport Guarantee Claims were subject to pending mediation. See *Notice of ADR Procedures and Scheduling of Claims Objection Hearing with Respect to Debtors' Objection to Proof of Claim Nos. 29235, 26372, 26386, 29409, 26331, and 29249*, In re Lehman Brothers Inc., Case No. 08-01420 (Bankr. S.D.N.Y. Apr. 16, 2013*)* [ECF No. 48774]. However, before the mediation could progress, the Plan Administrator filed the Motion. Upon information and belief, the Plan Administrator is no longer inclined to participate in the mediation unless and until the Motion is appropriately denied.

5

15. On January 4, 2008, LBHI executed the Guarantee of Lehman Brothers Holdings Inc. (the "**2008 LBHI Guarantee**" and, together with the 2005 LBHI Guarantee, the "**LBHI Guarantees**"). A copy of the 2008 LBHI Guarantee is attached to the Newport Guarantee Claims.

16. The 2008 LBHI Guarantee states: "We, Lehman Brothers Holdings Inc., do hereby absolutely and unconditionally guarantee the payment by Lehman Brothers International (Europe) ("Affiliate") of all of Affiliate's liabilities, obligations and commitments (the "Guaranteed Obligations") to any counterparty of Affiliate and such counterparty's successors, endorsees and assigns . . . ." 2008 LBHI Guarantee at 1.

17. The Newport Funds knew of and understood the LBHI Guarantees to be part of the benefit of their bargain under the Prime Brokerage Agreements. Furthermore, the Newport Funds understood that the LBHI Guarantees were to serve as a general guarantee by LBHI of LBIE's obligations and liabilities under the Prime Brokerage Agreements and related agreements. See May Decl. ¶¶ 12, 44.

C. **The Newport Funds' Allowed Claims Against LBIE.**

18. On September 15, 2008 (the "**U.K. Commencement Date**"), LBIE entered English administration proceedings pursuant to the U.K. Insolvency Act of 1986.

19. On April 16, 2013, this Court entered an order approving a settlement between Lehman Brothers, Inc. ("**LBI**") and LBIE, which settled LBIE's omnibus customer claim against LBI on behalf of purported LBIE customers, including the Newport Funds. See *Order Approving Settlement Agreement Among The Trustee, Lehman Brothers International (Europe) (In Administration) And The LBIE Administrators*, In re Lehman Brothers Inc., Case No. 08-01420 (Bankr. S.D.N.Y. Apr. 16, 2013) [ECF No. 6021].

6

20. On May 1, 2013, the Chancery Division (Companies Court) of the High Court of Justice (the "**Chancery Division**") entered an order approving the LBI-LBIE settlement. See In The Matter Of Lehman Brothers International Europe (In Administration) [2013] EWHC (Ch) 1664, 2013 WL 1795906.

21. An omnibus trust was ultimately formed and included customer securities and dividends to be distributed by LBIE to holders of allowed trust asset claims.

22. The Newport Funds have allowed trust asset and general unsecured claims against LBIE.

### D. The Newport Funds' Open Value Entitlements Enforceable Under The LBHI Guarantees.

23. On February 18, 2013, the Joint Administrators of LBIE applied to the Chancery Division for a determination on various issues concerning creditor and shareholder rights[9] and entitlements to LBIE estate value. The application involved, *inter alia*, the following issues: (i) whether statutory interest is owed to certain LBIE creditors pursuant to Rule 2.88(7) of the U.K. Insolvency Rules under the Insolvency Act 1986; and (ii) whether certain foreign currency creditors may recover from LBIE for Currency Conversion Claims.[10] See *Application*, In the Matter of Lehman Brothers International (Europe) (In Administration), [2014] EWHC 704 (Ch). Also at issue was whether "surplus" LBIE estate value should be applied first to payment of statutory interest and for Currency Conversion Claims and then to LBIE shareholders (including their claims in relation to the $2.225 billion subordinated debt) or vice versa. See id.

---

[9] This includes shareholder claims of LB Holdings Intermediate 2 Limited (in administration) ("LBHI2"), the immediate holding company of LBIE, in relation to its $2.225 billion debt under subordinated loan agreements with LBIE and in respect of which it lodged a claim in the administration of LBIE for £1,254,165,598.48.

[10] A "**Currency Conversion Claim**" is defined as a claim for any currency losses based on the decline in the value of British Pounds Sterling as against the currency of the claim between the U.K. Commencement Date and the date(s) of payment(s) of distribution on such claims. See Joint Admins. of LB Holdings Intermediate 2 Ltd. (In Administration) v. Lomas [2015] EWCA Civ. 485 ¶ 250(ii).

7

### *i.* *Statutory Interest and Currency Conversion Claims.*

24. The Chancery Division found that creditors holding allowed claims against LBIE are entitled to statutory interest payable at an 8% rate. See In the Matter of Lehman Brothers International (Europe) (In Administration) [2014] EWHC 704 (Ch) ¶ 19 (the "**Chancery Decision**"). As such, the Newport Funds may be entitled to receive statutory interest on their Allowed Claims. The Chancery Division also found that LBIE's creditors were entitled to recover the Currency Conversion Claims as non-provable claims after LBIE has paid in full all proved claims and statutory interest on those claims. It also found that the $2.225 billion subordinated debt ranks below statutory interest in the order of priority of distribution on LBIE's assets.

25. On May 14, 2015, the Court of Appeal (Civil Division) (the "**Court of Appeal**") affirmed the Chancery Decision as it relates to LBIE creditors' entitlement to recover both statutory interest and for Currency Conversion Claims and LBIE creditors' priority over LBIE shareholders (including in respect of the $2.225 billion subordinated debt) in distributions of "surplus" estate value. See Joint Admins. of LB Holdings Intermediate 2 Ltd. (In Administration) v. Lomas [2015] EWCA Civ. 485 ¶¶ 64, 137.

26. On June 10, 2015, the Joint Administrators of LBHI2 and Lehman Brothers Limited (in administration) ("**LBL**"), an immediate shareholder of LBIE, and LBHI appealed, whilst the Joint Administrators of LBIE cross-appealed, certain of the Court of Appeal's decisions to the Supreme Court of the United Kingdom (the "**Supreme Court Appeal**"). See *Notice of Appeal to the Supreme Court of the United Kingdom*, Joint Admins. of LB Holdings Intermediate 2 Ltd. (In Administration) v. Lomas [2015] EWCA Civ. 485.

27. The issues on appeal or cross-appeal in the Supreme Court Appeal do not include whether LBIE creditors are entitled to statutory interest for the period when LBIE is in

8

administration and recovery for Currency Conversion Claims, but rather include, among others: (i) whether the Court of Appeal correctly found that LBIE creditors have priority over LBIE shareholders (including in respect of the $2.225 billion subordinated debt) in distributions of "surplus" estate value; and (ii) whether if the administration of LBIE is immediately followed by liquidation, the statutory interest payable in respect of the period of administration which was not paid at the commencement of liquidation will still be payable from the surplus. See id.

28.    The consequences of the further appeal before the Supreme Court include, among others: (i) further delay or a failure to distribute to LBIE's creditors of the statutory interest which the Joint Administrators of LBIE estimate to be between $8.97 billion (USD) (£5.0 billion) and $9.87 billion (USD) (£5.5 billion); (ii) further delay or failure to distribute to LBIE's creditors on the Currency Conversion Claims which the Joint Administrators of LBIE estimate in the region of $2.51 billion (USD) (£1.4 billion) to $2.69 billion (USD) (£1.5 billion); and (iii) if the Joint of Administrators of LBIE otherwise decide to apply the surplus to pay statutory interest they are obliged to hold back an amount of up to $2.24 billion (USD) (£1.25 billion) plus statutory interest on such amount exceeding $1.43 billion (USD) (£800 million) for an uncertain period.

E.    **Section 8.13(d) Of The Plan Recognizes LBHI's Obligations For Open Value Entitlements.**

29.    On December 6, 2011 (the "**Confirmation Date**"), the Court entered its *Order Confirming Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors* [ECF No. 23023].

9

30. The Plan became effective on March 6, 2012. <u>See</u> *Notice of Effective Date and Distribution Date in Connection with the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 26039].

31. The Plan provides that, "[f]or purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the US Dollar shall be converted to the US Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date." Plan § 8.13(d).

32. On the Confirmation Date, the then-existing exchange rate from British Pounds Sterling to U.S. Dollars was approximately 1.5643 (the "**Plan Exchange Rate**").

33. Under Section 8.13(d) of the Plan, claims are satisfied in full only when the claimant receives the full U.S. Dollar value of its allowed claims after applying the Plan Exchange Rate to non-U.S. Dollar distributions.

34. As such, distributions on an earlier exchange rate can create shortfalls in value. For example, a shortfall in value occurred when distributions were made on NGOF's allowed unsecured claim in British Pounds Sterling, converted at the U.K. Commencement Date exchange rate rather than converted at the Plan Exchange Rate. Accordingly, the Newport Funds have an Open Value Entitlement in an amount over thirteen million dollars for currency conversion loss as recognized under Section 8.13(d) of the Plan.

**F.    The Motion.**

35. On June 10, 2015, the Plan Administrator filed the Motion. The Plan Administrator asserts the following bases for the relief requested in the Motion:

- Estimation in the amount of zero dollars will accurately reflect LBHI's ultimate liability for the guarantee claims, given that: (i) LBIE's reports project additional distributions of up to 45% – 61% above par for its unsecured creditors; and (ii)

10

- unsecured creditors of LBIE can potentially sell their claims for future LBIE distributions in the open market for at least 37% above par.  <u>See</u> Motion ¶¶ 1, 27.

- The Plan limits recoveries to a single satisfaction on account of related primary and guarantee claims; thus, recovery from LBHI would be improper because creditors are expected to recover above par from LBIE.  <u>See</u> Motion ¶¶ 2, 27.

- Without estimation, if LBHI was required to make distributions on LBIE-based guarantee claims, it would be forced to seek recovery of such distributions each time it made additional payments in violation of the single-satisfaction rule for a particular creditor.  <u>See</u> Motion ¶¶ 5, 30.

## OBJECTION

### I. The Newport Guarantee Claims Should Be Allowed And Entitled To Distributions Of LBHI Estate Value, Not Estimated At Zero Dollars For Distribution Purposes.

36. Under the LBHI Guarantees, LBHI "fully guarantee[d] the payment of *all liabilities, obligations and commitments*" of LBIE.  <u>See</u> 2005 LBHI Guarantee at 2 (emphasis added); <u>see also</u> 2008 LBHI Guarantee at 1 ("[LBHI] absolutely and unconditionally guarantee[s] the payment by [LBIE] of all of [its] liabilities, obligations and commitments . . .").

37. Under New York law (which governs the Prime Brokerage Agreements), a guarantor is liable for all unpaid amounts until a creditor is paid in full.  <u>See</u> <u>In re LightSquared, Inc.</u>, No. 12-12080-SCC, 2014 WL 5488413, at *6-7 (Bankr. S.D.N.Y. Oct. 30, 2014) ("[E]ach [claimant] continues to hold a claim against every [debtor co-obligor] . . . for any amount that is unpaid when due, and each of the . . . claims continues to exist until the [obligation] is paid, in full.").[11]

38. This principle does not change where a creditor has received distributions from other sources; the creditor is still permitted an allowed claim against the guarantor for the full

---

[11] <u>See, e.g.</u>, <u>In re Realty Assocs. Sec. Corp.</u>, 66 F. Supp. 416, 424 (E.D.N.Y. 1946) ("[I]t has been conclusively settled that an obligee of a bond or the holder of a claim upon which several parties are liable may prove its entire claim against the estate of any who becomes bankrupt . . . without regard to partial payments made by other obligors until from all sources it has been paid in full.") (citations omitted); <u>In re Wash. Bancorporation</u>, No. 90-00597, 1996 WL 148533, at *18 (D.D.C. Mar. 19, 1996) ("[A] bankruptcy claim is not reduced or impaired by subsequent payments received from third party obligors until such claim has been satisfied in full.") (citations omitted).

11

asserted amount.  See In re Nat'l Energy & Gas Trans., Inc., 492 F.3d 297, 301 (4th Cir. 2007) (allowing full value of creditor's claim against guarantor despite creditor having already received $140 million in payments on the claim), cert. denied, 522 U.S. 1231 (2008); In re Del Biaggio, 496 B.R. 600 (Bankr. N.D. Cal. 2012) (holding that a proof of claim need not be reduced by amounts already recovered from a third party unless the creditor would otherwise reap a double recovery).

39.     Here, if the Proposed Order is entered the Newport Guarantee Claims would be effectively expunged.  Such relief is inappropriate because the Newport Funds have Open Value Entitlements enforceable under the LBHI Guarantees.  Therefore, the Newport Funds should have an opportunity to seek allowance of the Newport Guarantee Claims and the Motion should be denied as to the Newport Guarantee Claims.

**II.     The Motion Should Be Denied As It Relates To The Newport Guarantee Claims Because The Newport Funds Have Not Been Paid In Full.**

40.     The Plan Administrator asserts that estimation of the Newport Fund Guarantee Claims at zero dollars for reserve and distribution purposes is proper based on "LBIE[] reports [that] project additional distributions of up to 45%-61% above par," and because "the price at which unsecured claims against LBIE trade [is] as high as 37%-44% above their allowed amounts."  See Motion ¶¶ 1, 27.

41.     Contrary to the Plan Administrator's assertions, future recovery projections and speculation should not be applied to foreclose a creditor's ability to tap an enforceable guarantee to recover unpaid debts of a primary obligor.  This is particularly so where, as here, the Newport Funds can show Open Value Entitlements.[12]

---

[12] Under New York law, a guarantor is liable for interest and other obligations of the primary obligor. See Kitrosser v. CIT Group/Factoring, Inc, 177 B.R. 458, 471-72 (S.D.N.Y. 1995) ("[T]he guarantees are 'unconditional' and subject the [guarantors] to liability for all

42. When faced with similar requests to estimate otherwise enforceable guarantee claims at zero dollars for distribution purposes, courts have found such requests inappropriate and premature. For example, in LightSquared, this Court denied a motion to estimate guarantee claims at zero dollars for purposes of allowance "where [there] remain[ed] a risk that the [lender group would] not be repaid in full." See In re LightSquared, 2014 WL 5488413, at *4-5; see also In re Roman Catholic Archbishop of Portland in Or., 339 B.R. 215, 223 (Bankr. D. Or. 2006) (holding that estimation was inappropriate where liquidated claims may not be paid in full and plan required payment of claims in full).

43. Several courts have also cast doubt on whether reliance on claims trading values is sufficient to eviscerate creditors' value entitlements. For example, Judge Carey in Spansion questioned the probative value of a valuation based on the market price of pre-confirmation claims trading. Judge Carey found that in the absence of evidence of the "number of trades, over what period of time such trades occurred, how open the market is to participants, or other factors that may be relevant," valuations that rely upon claims trading pricing are unreliable. In re Spansion, Inc., 426 B.R. 114, 130 (Bankr. D. Del. 2010); see also In re Mirant Corp., 334 B.R. 800, 822 n. 71 (Bankr. N.D. Tex. 2005) (casting doubt on the utility of claims trading pricing as a proper indicator of estate value).

44. Accordingly, the Plan Administrator's reliance on claim trading values at best militates in favor of continuing the relief requested, not slamming the door shut on the Newport Funds' ability to recover from LBHI under the Newport Guarantee Claims. This is particularly

---

'indebtedness and obligations' of [the guaranteed party]. Because the debit balance and postpetition interest continued as debt of [the guaranteed party], the [guarantors] continue to be liable for this obligation."); see also Keene Corp. v. Acstar Ins. Co., (In re Keene Corp.), 162 B.R. 935, 947 (S.D.N.Y. 1994) ("bankruptcy proceedings do not affect the liabilities of co-debtors and guarantors," who remain liable for post-petition interest) (citations omitted).

13

so where, as here, the Newport Funds may show Open Value Entitlements enforceable under the LBHI Guarantees.

45.     In LightSquared, this Court noted that if the party seeking estimation is confident that the "value of the [estate] is more than sufficient to pay the [lender debt] in full, then it should not be troubled by the Court's refusal to expunge the Guaranty Claim; it could simply allow the Guaranty Claim . . . in its full face amount, confident that the [debtor] will never be called upon to pay it." See In re LightSquared, 2014 WL 5488413 at *4-5.

46.     Here, the Plan Administrator offers no legitimate justification for why it should not follow suite and allow the Newport Guarantee Claims subject to Section 8.14(a) of the Plan. This is particularly so given the Plan Administrator's stated confidence that LBIE will satisfy the Open Value Entitlements in full.

**III.    The Plan Provides Appropriate Procedures To Allow The Newport Guarantee Claims While Safeguarding The Estates From Double Recovery.**

47.     Despite overseeing estates worth more than $65 billion dollars, distributing $21.7 dollars of estate value to creditors to date, working on claims issues for over six years, and announcing recently that these cases are expected to run through at least 2017, the Plan Administrator somehow asserts that estimation of the Newport Guarantee Claims at zero dollars for distribution purposes is justified and appropriate now to "avoid undue delay in the administration of LBHI's case." See Motion ¶ 30; see, generally, Matthew Cantor, Chief Legal Officer, Lehman Bros. Holdings Inc., State of the Estate Presentation (June 9, 2015) [ECF No. 50056].

48.     Contrary to the Plan Administrator's assertions, providing the Newport Funds the opportunity to seek allowance of the Newport Guarantee Claims does not pose a prohibitive

14

administrative burden. Indeed, the Newport Guarantee Claims are currently subject to mediation proceedings. The Plan Administrator should not be permitted to rely on self-serving statements of administrative burden to extinguish the benefits the Newport Funds bargained for and relied upon in the LBHI Guarantees.[13]

49. The Plan Administrator glosses over the fact that the Debtors' very own Plan contemplates the allowance of guarantee claims and includes a mechanism to avoid any double recoveries. Specifically, Section 8.14(a) of the Plan provides:

> Except as otherwise agreed by the Debtors, to the extent that a Debtor now has or becomes legally entitled to be subrogated to the rights of any Creditor, including on account of any Distributions received by holders of Allowed Guarantee Claims that are satisfied in full in accordance with Section 8.13(a) of the Plan, (i) such Creditor shall be deemed to have consented to the subrogation of its right against any third-party, including, without limitation, a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such Distribution, or (ii) the Debtor shall have all rights, title and power as subrogee of the Creditor against any such third-party, including, without limitation, a Primary Obligor, to the fullest extent permitted by applicable law.

Plan § 8.14(a).

50. The Plan Administrator cannot protest that the mechanics in the Plan are now an administrative burden and should be cast aside. Such relief would be inappropriate under Bankruptcy Code Section 1127 and principles of fairness and sound case management.

51. Further, delay and administrative burden are not appropriate justifications for rendering worthless otherwise valuable guarantee claims and circumventing a creditor's

---

[13] Indeed, this Court has already characterized the Newport Guarantee Claims as capable of withstanding a sufficiency challenge. See Hr'g Tr. 115:3-19, 150:1-8, Feb. 11, 2015, ECF No. 48807.

bargained for and relied-upon expectations. See In re LightSquared, 2014 WL 5488413, at *5 ("Delay, undue or otherwise, is not a justification for ignoring applicable law or undermining the settled expectations of parties who transact every day in reliance on the belief, for example, that credit documents such as guarantees mean what they say.").[14]

52. In sum, estimation of the Newport Guarantee Claims at zero dollars for reserve and distribution purposes based on a self-serving suggestion of administrative burden or undue delay is particularly inappropriate given the Open Value Entitlements and that the Plan specifically includes safeguards for the estates against double recovery. The Motion should be denied as it relates to the Newport Funds' Claims.

## CONCLUSION

WHEREFORE, the Newport Funds respectfully request that the Court: (i) deny the Motion as to the Newport Guarantee Claims; (ii) allow the Newport Guarantee Claims in the amounts set forth herein; and (iii) grant such other and further relief as is just and proper.

Dated: July 10, 2015
       New York, New York

**BROWN RUDNICK LLP**

---

[14] The Plan Administrator relies on three cases for the proposition that estimation is appropriate where the guarantor had to maintain reserves for "too long" and "[o]ther creditors' payments would be delayed unnecessarily." See Motion ¶ 29 (quoting In re Teigen, 228 B.R. 720, 723 (Bankr. D.S.D. 1998)); see also In re Enron Corp., No. 01-16034, 2006 WL 544463, *23 (Bankr. S.D.N.Y. Jan. 17, 2006); In re Genesis Health Ventures, Inc., 272 B.R. 558 (Bankr. D. Del. 2002), aff'd 112 Fed. App'x 140 (3d Cir. 2004). Unlike the case in Teigen where fixing a liquidated amount would take "several years," the Newport Guarantee Claims may be liquidated and allowed in a prompt fashion. Enron and Genesis Health are inapposite because none of the claims at issue dealt with substantial open value entitlements necessitating appropriate reserves or liquidated amounts due and owing on enforceable guarantees. Further, here the Plan Administrator has made significant distributions of estate value to creditors and creditors have long been on notice of the LBHI Guarantees and their impact on Plan distributions.

       */s/ Howard S. Steel*
David J. Molton
Howard S. Steel
Mason C. Simpson
Joseph A. Spina
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800

*Counsel for Newport Global Opportunities Fund L.P. and Newport Global Credit Fund (Master) L.P.*