Turner P. Smith
L.P. Harrison 3rd
Peter J. Behmke
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 PARK AVENUE
NEW YORK, NEW YORK 10178
*Attorneys for Lehman Brothers Holdings Inc. and*
*Certain of Its Affiliates*

Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Scott C. Shelley
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE
NEW YORK, NEW YORK 10010
*Attorneys for Official Committee of Unsecured Creditors of*
*Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

| | |
|---|---|
| **In re** | : **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : **08-13555 (SCC)** |
| | : |
| **Debtors.** | : **(Jointly Administered)** |

------------------------------------------------------------------------x

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING LEHMAN BROTHERS**
**SPECIAL FINANCING INC. TO INVEST DISPUTED CLAIMS RESERVES**
**FOR CLAIM NUMBER 67733 PURSUANT TO SECTION 8.4 OF THE**
**MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN**
**BROTHERS HOLDINGS INC.  AND ITS AFFILIATED DEBTORS**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................. 1

Jurisdiction ............................................................................................................. 4

Background ............................................................................................................. 4

    A.    General Background ................................................................................. 4

    B.    Disputed Claims Reserves ....................................................................... 4

    C.    The LBHI Subrogation Claim ................................................................. 5

Relief Requested .................................................................................................. 11

The Investment ..................................................................................................... 11

The Investment Should be Authorized ................................................................ 12

    A.    Approval of the Investment is in the Best Interests of Creditors ........ 13

    B.    Approval of the Investment Will Not Prejudice Stakeholders ............. 14

Conclusion ........................................................................................................... 14

Reservation of Rights .......................................................................................... 15

Notice ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

11 U.S.C. § 105(a) ............................................................................................................9

11 U.S.C. § 1142(b) ..........................................................................................................9

28 U.S.C. § 157..................................................................................................................3

28 U.S.C. § 1334................................................................................................................3

**Other Authorities**

Bankruptcy Rule 1015(b)...................................................................................................3

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the
Modified Third Amended Joint Chapter 11 Plan of LBHI and its Affiliated Debtors (the "Plan")[1],
together with the Official Committee of Unsecured Creditors (the "Creditors Committee," and
together with LBHI, the "Movants"), in support of the motion for entry of an order authorizing
Lehman Brothers Special Financing Inc. to invest Disputed Claims Reserves held in respect of
claim number 67733 filed by Citibank, N.A. (the "Citibank Reserves") pursuant to Section 8.4 of
the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated
Debtors, respectfully represent as follows:

Preliminary Statement

1.      LBHI seeks authorization for an inter-debtor arrangement whereby
Lehman Brothers Special Financing Inc. ("LBSF") will invest the Citibank Reserves, which are
currently trapped in its estate, in secured notes to be issued by LBHI on the terms and conditions
described herein.  LBSF's investment of Cash that is part of the LBSF Citibank Reserves in
secured notes to be issued by LBHI is referred to herein as the "Investment."  The Court
previously granted similar relief with respect to claims reserves established by LBSF and
Lehman Brothers Commercial Corporation ("LBCC") in favor of JPMorgan Chase Bank, N.A.,
which facilitated enhanced distributions to creditors in connection with the sixth Plan
Distribution. *See* Docket No. 46276.  Similar relief is warranted here.

2.      The Investment will accelerate Plan Distributions to creditors of LBHI,
including creditors of LBSF that hold corresponding Guarantee Claims against LBHI, as LBHI
will be able to distribute at least an incremental $295 million in the upcoming eighth Plan

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Distribution, which is anticipated to be scheduled within the next few months, and additional amounts that would otherwise be reserved in future Distributions.  As explained below, the excess reserves relate to a Disputed Claim filed by Citibank, N.A. ("Citibank") against LBSF, which is already protected by $2.069 billion in LBHI cash held by Citibank in separate Citibank accounts (the "Deposited Funds").  Through the Investment, the Movants will free the excess portion of the Citibank Reserves for immediate Distribution for the benefit of creditors without prejudice to any stakeholder.

3.      Section 8.4 of the Plan requires each of the chapter 11 entities, including LBSF, to retain reserves for Disputed Claims equal to the pro rata Distributions that would be paid on such claims in the event they are allowed in full.  This relatively straightforward provision leads to the anomalous result of what are effectively duplicative reserves when applied to the Citibank Claims (defined below).  Specifically, Citibank asserts unsecured claims against LBSF in the principal amount of $1,599,125,263[2] (the "Citibank LBSF Claim") and against non-LBSF entities in the principal amount of $216,545,341[3] (the "Non-LBSF Claims", and, together with the Citibank LBSF Claim, the "Citibank Claims").

4.      The Plan Administrator is contesting, among other things, the validity of the Citibank LBSF Claim, Citibank's entitlement to retain the Deposited Funds or otherwise setoff the Citibank Claims against those funds.  As a result, the Citibank LBSF Claim is disputed, and, pursuant to the Plan, LBSF is maintaining the Citibank Reserves in cash of approximately $543 million for this Claim.  This reserve is in addition to the $2.069 billion in

---

[2]   This figure takes into account an LBSF deposit of $679,010 held by Citibank.

[3]   This figure takes into account deposits by LBCC and Lehman Brothers Commodity Services, Inc. ("LBCS") totaling approximately $23.7 million, approximately $31.5 million owed to LBCC by Citibank under a CLS clearing agreement and estimated payments received by Citibank from non-controlled Lehman affiliates of approximately $146 million.

Deposited Funds.  To the extent the Citibank LBSF Claim is allowed, the aggregate funds, i.e., the Deposited Funds ($2.069 billion) and the funds in the Citibank Reserve ($543 million) will be far greater than the allowed claims – *even if the Citibank Claims are allowed in the maximum asserted amount (with interest)*.  Significantly, to the extent LBHI satisfies the Citibank Claims in full with distributions from the Deposited Funds, LBHI would be subrogated to Citibank's claims against LBSF.  LBHI can use the resulting subrogation claim (the "LBHI Subrogation Claim") as currency to pay any liability LBHI owes to LBSF in respect of the Investment.

5.    The Investment by LBSF thus will be secured by (a) any cash returned to LBHI from the Deposited Funds, and (b) to the extent the Citibank Claims are allowed and paid via reduction of the amount owed by Citibank from the Deposited Funds, by any Distributions to LBHI by LBSF on account of the LBHI Subrogation Claim.  While the amount of Deposited Funds that will be returned to LBHI decreases as the size of the Citibank LBSF Claim increases (because the Deposited Funds will be used to pay the Allowed Citibank Claims), conversely, the amount of the LBHI Subrogation Claim will increase.  Thus, a decrease in the amount of Deposited Funds available to LBHI will be offset in part by an increase in the LBHI Subrogation Claim.  Accordingly, LBHI will have sufficient means to repay the Investment to LBSF when and if necessary, utilizing a combination of released Deposited Funds and the LBHI Subrogation Claim; the precise mixture of these two components will vary depending on the timing of allowance of the Citibank Claims and the amount in which the claims are allowed.  In any event, the Investment will be fully secured.  In addition, as a return on the Investment, LBSF will earn an enhanced rate of interest compared to the current return on their investments in Cash and Cash-equivalents, which interest will inure directly to the benefit of all of LBSF's creditors,

including Citibank.  Thus, the Investment is in the best interests of both LBHI's and LBSF's creditors.

6.    Prior to filing the Motion, Movants conferred with Citibank to explain the relief requested in the Motion and the relevant economic considerations.  The Movants and Citibank are continuing to engage in discussions in an effort to reach a consensual resolution of any issues Citibank may have with respect to the requested relief.  In any event, granting the requested relief will afford creditors of both LBHI and LBSF an opportunity to increase estate assets and expedite distributions from LBHI, without harming any stakeholder.

Jurisdiction

7.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 14.1 of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Background

A.    General Background

8.    LBHI and LBSF commenced voluntary cases under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York on September 15, 2008 and October 3, 2008, respectively.

9.    On December 6, 2011, the Court entered an order confirming the Plan (ECF No. 23023).  The Plan became effective on March 6, 2012.

B.    Disputed Claims Reserves

10.    With respect to Disputed Claims against the Debtors, Section 8.4 of the Plan provides that, as to each Distribution made to holders of Allowed Claims, the Plan Administrator is required to retain as a reserve for Disputed Claims an aggregate amount of Available Cash equal to the Pro Rata Share of the Distributions that would have been made to

each holder of a Disputed Claim as if such Disputed Claim were an Allowed Claim.  *See* Plan § 8.4.   In accordance with the Asset Reserve Order, dated as of February 22, 2012 (ECF No. 25641), as of the seventh Distribution Date, LBSF has reserved approximately $543 million in cash for the Citibank LBSF Claim.   Pursuant to an amended stipulation among LBHI, Citibank and others, dated July 28, 2014 [Docket No. 85 in Case No. 12-01044], the Deposited Funds constitute Distribution Reserves for the Citibank Claims, and LBHI was required to maintain additional distribution reserves, as described herein.

11.     Pursuant to section 8.4 of the Plan, the Plan Administrator currently invests Disputed Claim reserves in Cash and a variety of Cash-equivalents.   On average, the yield on the Plan Administrator's investments of disputed claims reserves from the first Distribution Date through the seventh Distribution Date is approximately 0.25%.   To the extent a Disputed Claim is Allowed, the holder of such Allowed Claim is entitled to receive a catch-up Distribution equal to the amount that would have been distributed on account of such Claim from the Effective Date through and including the date of such Distribution had such Claim been Allowed as of the Effective Date, together with the interest earned on and attributable to the amount reserved with respect to such Claim.   Any excess amounts reserved with respect to such Claim, including any interest earned thereon, become Available Cash for distribution to holders of Allowed Claims against the applicable Debtor.

C.     The LBHI Subrogation Claim

12.     In its proof of claim, Citibank asserted that the Citibank LBSF Claim is a secured claim.   Citibank has also asserted an identical claim against LBHI (proof of claim number 67736) as purported guarantor of LBSF's obligations.

13.     LBHI and LBSF have filed various objections to the Citibank LBSF Claim, including challenges to the validity and amount of those claims, and challenges to the

assertion that the Citibank LBSF Claim was secured by a right of setoff against the Deposited

Funds (Adv. Pro. No. 12-01044) (the "Claim Objections").[4]  Specifically, on January 29, 2014.

Movants filed their Second Amended Complaint and Claims Objection. (Dkt. No. 43).  The

Second Amended Complaint seeks, *inter alia*, to disallow Citibank's claim for postpetition

interest under section 506(b).  On June 13, 2014, Movants filed a motion for partial summary

judgment on Count 16 of the Second Amended Complaint, seeking to disallow and expunge

Citibank's claims for interest and fees under 11 U.S.C. §§ 502, 506(b) and 553.  (Dkt. No. 77).

The Court conducted a hearing on the summary judgment motion on September 11, 2014, and

the matter remains under submission.

14.     Citibank has contested the Claim Objections.  Until the resolution of the

Claim Objections, the Citibank LBSF Claim remains disputed.  As such, in accordance with the

reserve requirements set forth in the Plan, LBSF has reserved to date an aggregate of

approximately $543 million for the potential payment of its alleged obligations to Citibank or to

LBHI as subrogee.  The reserves maintained by LBSF on account of the Citibank LBSF Claim

are excessive because the majority of those reserves ultimately will either (i) be paid to LBHI as

subrogee of Citibank, or, (ii) to the extent Citibank's retention and application of the Deposited

Funds is successfully challenged by the Plan Administrator (such that all or some portion of the

Citibank LBSF Claim is determined to be an unsecured claim), be returned to LBHI.  The

amounts returned by Citibank to LBHI can be utilized to make Distributions or to reestablish any

required reserves.

15.     Notwithstanding the resolution of all relevant claims and disputes, LBHI

will always have a minimum of $295 million in cash or cash equivalents for the Citibank Claims,

---

[4]   References in this paragraph to a Dkt. No. refer to the docket in Adv. Proc No. 12-01044 (the "Postpetition Interest Litigation").

based on: (i) Payments from Citibank resulting from any judgment or settlement favorable to

LBHI with respect to Citibank's retention and application of the Deposited Funds; (ii)

Distributions from LBSF of the amounts held in reserve for these claims to LBHI as subrogee of

Citibank; or (iii) a combination of these two sources.[5]

16. The mathematics underlying these transfers can be understood by

referencing Exhibit A to the Declaration of William Montuoro submitted herewith (the

"Montuoro Declaration"). Exhibit A, which is entitled "*Calculation of LBHI Secured Note

Related To LBSF Citibank Reserve*," sets forth the various potential outcomes resulting from

the timing and allowance of the Citibank Claims and specifically Lehman's objection to the

Citibank LBSF Claim. As set forth in the chart, regardless of the outcome of the pending claim

objections and the parties' dispute concerning the permissible uses of the $2.069 billion in

Deposited Funds, LBHI will at all times have $295 million in cash and cash equivalents to

collateralize and ultimately satisfy the LBSF Note. Specifically,

- The first column on Exhibit A (entitled "*LBHI Deposit Held by Citibank NA*"), reflects the amount of Deposited Funds (fixed at $2.069 billion). Citibank's ability to look to the Deposited Funds to satisfy the Citibank Claims depends on the outcome of the pending litigation concerning the nature of that deposit and Citibank's setoff rights (if any). The analysis assumes Citibank prevails in showing that the $2.069 billion deposit is subject to setoff for any and all of the Citibank Claims and that LBHI is required to apply the Deposited Funds to satisfy those claims. To the extent LBHI prevails, then the Deposited Funds will remain in LBHI's estate and provide additional cash collateral to secure the LBSF Note.

- The second column (entitled "*Non-LBSF Claims Approved at Current Claim Amounts*") shows the aggregate amount of claims that Citibank has asserted against entities *other than* LBSF, that is, LBCCA, LBI, LBHI (non-guarantee claims), ALI, LB UK, LBSN and LBIE. The total asserted or allowed amount of the "Non-LBSF" claims asserted by Citibank is $217 million. The analysis assumes Citibank will be

[5] Following investment of the $295 million in the Note, LBSF will continue to hold approximately $248 million in reserve for payment of other allowed claims.

-7-

entitled to set off these claims in their full amount ($217 million) against the Deposited Funds.[6]

▪ The third column (entitled "**Approved LBSF Claim Amount**") lists various possible allowed amounts for the Citibank LBSF Claim, ranging from $0 to the maximum asserted amount ($1.599 billion). As the chart reflects, irrespective of whether the Citibank LBSF Claim is allowed in its full amount, the Deposited Funds ($2.069 billion) will always be sufficient to satisfy the principal amount of this claim in full— along with the Non-LBSF Claims ($217 million) and interest and fees.

▪ The fourth column (entitled "**Post-Petition Interest & Fees Recovered By Citibank**") shows the total postpetition interest and fees claimed with respect to all the Citibank Claims (depending on the various approved claim amount scenarios). While Lehman disputes Citibank's entitlement to postpetition interest and fees, the amounts nonetheless are factored into the analysis. Specifically, the analysis assumes: (a) interest will be payable at the highest rate available under the respective derivatives and loan agreements;[7] (b) interest will be payable through July 31, 2020; and (c) Citibank's fees through July 2020 will total $250 million.

    ▪ The analysis assumes that, consistent with the Plan and the Bankruptcy Code, when Citibank applies the Deposited Funds to the Citibank Claims, it will apply them first to the principal amount of the Citibank Claims and thereafter to the interest and fee components.[8]

    ▪ The analysis also recognizes that in accordance with the Bankruptcy Code and applicable law, Citibank can only receive distributions for postpetition interest and fees to the extent it is oversecured, that is, to the extent the $2.069 billion in Deposited Funds exceed the allowed amount of the Citibank Claims (*i.e.*, the sum of column two (Non-LBSF Claims Approved at Current Claim Amounts) and column three (Approved LBSF Claim Amount)).[9]

---

[6]   The $217 million figure is based on filed proofs of claims, discussions with Citibank and reductions based on distributions to date.

[7]   The interest rate applicable to claims under derivatives contracts is based on the contractual provisions and information provided to Lehman concerning Citibank's cost of funding.

[8]   Section 8.12 of the Plan provides that: "[d]istributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim … and, only after the principal portion is satisfied in full, to any portion of such Allowed Claim comprising interest …." Plan, § 8.12. *See also* 11 U.S.C. §§ 726(a)(1)-(5), (6) (prioritizing distributions of estate property initially to allowed claims; but listing as "fifth" priority, after distributions to tardily filed claims, but before distributions to debtor, distributions on account of postpetition interest). *C.f., In re Nat'l Energy Gas & Transmission, Inc.*, 492 F.3d 297, 298, 302-03 (4th Cir. 2007) (deciding "whether a creditor may allocate a payment made by a non-debtor guarantor first to interest then to principal, thus preserving the unpaid principal for collection in bankruptcy" and concluding "the allocation of a payment in this manner would permit the creditor to collect an amount otherwise disallowed as post-petition interest.").

[9]   *See, e.g., In re SW Boston Hotel Venture LLC*, 748 F.3d 393, 400 (1st Cir. 2014) ("Under § 506(b), an oversecured creditor is entitled to post-petition interest, as well as reasonable fees, costs, or charges provided for in the parties' contracts or by state law, up to the extent of its oversecurity.").

- Finally, the analysis recognizes that Citibank's recovery on account of the Citibank Claims is limited to the amount of its Allowed Guaranty Claim, which will not exceed the amount of the Deposited Funds, *i.e.*, $2.069 billion.[10]

- The fifth column illustrates the "***Cash Returned by Citi to LBHI.***"  This amount is calculated by subtracting from the first column (LBHI Deposit Held by Citibank, *i.e.*, the Deposited Funds) the amounts in columns two through four, which presumably will be applied against that cash (*i.e.*, Non-LBSF Claims Approved at Current Claim Amounts; Approved LBSF Claim Amount; and Post-Petition Interest and Fees Recovered By Citibank).

- The sixth column (entitled "***Payout to LBHI on its LBHI Subrogation Claims***") is calculated assuming the current recovery rate on LBSF claims (33.92%),[11] which is applied to the Approved LBSF Claim Amount (the third column).  Under both the Plan and section 509 of the Bankruptcy Code,[12] once LBHI uses the Deposited Funds to satisfy the Citibank Claims in full, LBHI will subrogate to Citibank's claims against LBSF with respect to Citibank LBSF Claim.  Thus, LBHI will be entitled to receive distributions on account of the primary claim (<u>i.e.</u>, the Approved LBSF Claim Amount in column three).

  - The Approved LBSF Claim Amount (the third column) consists only of the principal amount of the claim, and only the principal amount of the claim is applied to the recovery rate (33.92%) in calculating the payout.  The payout calculation does not include any fees incurred by Citibank to date that are allocable to the Citibank LBSF Claim, which would also be subject to subrogation.  The Movants have asked Citi for an estimate of the portion of Citibank's fees to date that are allocable to the Citibank LBSF Claim.  If Movants receive clarification of that amount, they may seek to increase the size of the Investment because if the claim for such fees is allowed, then the Approved LBSF Claim Amount will increase by that same amount and included as part of the payout to LBHI for the LBHI Subrogated Claim.

- The seventh column (entitled "***Cash Available to LBHI to Repay LBSF on the Secured Note***") reflects the cash available to LBHI to satisfy the LBSF Note from

---

[10]  *See* Plan § 8.14 (providing, in relevant part, that "in no event shall … (ii) an Allowed Guarantee Claim receive Distributions … that combined with Distributions or other consideration provided on account of the corresponding Primary Claim … are in excess of the Allowed amount of the Guarantee Claim").

[11]  *See* Docket Entry No. 49001.

[12]  Section 8.13(a) of the Plan provides, in part, that "[t]o the extent that an Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future Distributions or consideration on account of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the Plan to the extent of LBHI's Distribution on account of such Guarantee Claim less any amounts received by LBHI by way of disgorgement thereof."

two sources.  It is the sum of (1) the Cash Returned by Citibank to LBHI (column five) and (2) the Payout to LBHI on LBSF Subrogated Claims (column six).

As the chart reflects, the amount of cash and cash equivalents available to LBHI to repay the LBSF Note issued in connection with the Investment will vary depending on the allowed amount of the Citibank LBSF Claim, but in no event will it ever be less than $295 million, even under the most generous assumptions in favor of Citibank.  This is because as the amount of the Citibank LBSF Claim and the postpetition interest and fees owed to Citibank increase (eating into the amount of the Deposited Funds and diminishing the funds available to return to LBHI), the amount of the LBHI Subrogation Claim also increases.  Thus, a decrease in the amount of Deposited Funds that are to be returned to LBHI would be offset to a degree by an increase in the LBHI Subrogation Claim.

17.    For example, if the Citibank LBSF Claim were allowed in its asserted amount of $1.599 billion, the amount of postpetition interest and fees Citibank would be entitled to would be capped at $254 million even if Citibank prevailed on the legal issue of its right to setoff against the Deposited Funds.  No portion of the Deposited Funds would be returned by Citibank to LBHI, but LBHI would receive a payment from LBSF on account of the LBHI Subrogation Claim in the amount of $542 million.  This $542 million would be available to repay the Note.

18.    As a further example, if the Citibank LBSF Claim were allowed as a secured claim in the amount $870 million, and if Citibank prevails in the Postpetition Interest Litigation, the postpetition interest and fees would be $983 million.  Under this scenario, none of the Deposited Funds would be returned to LBHI (since the entire balance would be paid to Citibank), but LBHI would be entitled to a distribution of $295 million on account of the LBHI Subrogation Claim.  *See* Montuoro Declaration, ¶¶ 11-12.

19.    As shown on Exhibit A, under all of the possible scenarios – bookended only by math – $295 million is the lowest amount of cash and cash equivalents that would be available to LBHI for repayment of the Note.  This figure represents the absolute floor and is susceptible to significant increase depending on litigation outcomes.

Relief Requested

20.    Section 8.4 of the Plan authorizes the Plan Administrator to use Available Cash retained for Disputed Claims with Court approval.  Accordingly, by this Motion, Movants seek authorization for LBSF to invest with LBHI initially a portion of the amount that would be required to be reserved on account of the Citibank LBSF Claim, $295 million (the "Investment Amount") (as such reserve may be modified as a result of future Distributions or otherwise), on the terms and conditions described in this Motion.

The Investment

21.    The general terms of the Investment are described below for convenience. The Investment will be documented in a loan agreement that will be filed with the Court prior to the hearing on the Motion.  The salient terms of the Investment are:

a.    The Investment.  LBSF shall be authorized, but not directed, to invest with LBHI, on the terms and conditions described herein, up to the Investment Amount, respectively, pursuant to a note issued by LBHI to LBSF (the "Note").    Additional advances may be made from time to time in connection with future Distributions under the Note.

b.    Interest.  The Note shall bear interest at the rate earned by LBSF on the investments of its disputed claims reserves for other Disputed Claims, until there is a binding determination with respect to the Citibank LBSF Claim, which interest shall be determined and payable upon such binding determination (the "Investment Rate"), **plus** 0.50% per annum.

c.    Authorized Distributions.  LBHI shall be authorized but not directed to distribute as Distributions under the Plan the proceeds of the borrowings under the Note.  Notwithstanding the foregoing, LBHI shall be required to hold back from all Distributions an amount equal to the interest accruing on the Note at the Investment Rate plus 0.50% per annum over the thirty-

-11-

six (36) month period commencing on the date of the initial advance under the Note.

d.    <u>Security</u>.  LBHI's obligations under the Note shall be secured by (x) a right of setoff against any Distribution to which LBHI may be entitled on account of the LBHI Subrogation Claim and (y) LBHI's interest in the Deposited Funds.

e.    <u>Mandatory Repayment Date</u>.  All obligations outstanding under the Note must be repaid and/or cancelled no later than ten days after the following two events shall have occurred: (i) the release to LBHI of cash in the Deposited Funds following a binding determination on the Claim Objections, and (ii) the application of Deposited Funds to payment of the allowed amount of the Citibank Claims (establishing the amount of the LBHI Subrogation Claim).

f.    <u>Voluntary Prepayment</u>.  LBHI may voluntarily prepay any outstanding amounts under the Note at any time without penalty.

g.    <u>Deemed Repayment</u>.  If and to the extent following a binding determination with respect to the Citibank Claims all or part of the LBHI Subrogation Claim remains a subrogated claim, LBHI may satisfy its obligations in respect of the LBSF Note (including any interest payable by LBHI on such amount pursuant to the LBSF Note, including the 0.50% premium) by setoff of the amount of the Distribution then due from LBSF to LBHI with respect to the LBHI Subrogation Claim, excluding amounts attributable to Plan Adjustment, in lieu of LBSF's Distribution of such amount to LBHI.  Thereafter, LBSF shall be authorized to distribute to LBHI an amount equal to the Plan Adjustment that would have been distributed on account of the Allowed LBHI Subrogation Claim in accordance with section 6.5(a) of the Plan.

h.    <u>Application of Deposited Funds</u>.  In the event the Citibank LBSF Claim is disallowed in whole or in part, Citibank may, prior to returning the Deposited Funds to LBHI, (A) deduct from the Deposited Funds the lesser of (i) the amount that would be distributable at such time to Citibank by LBSF on account of its allowed claim in accordance with section 8.4 of the Plan, and (ii) the amount necessary to repay the principal amount of the Note plus interest accrued at the Investment Rate, and (B) apply such portion of the Deposited Funds to payment of the Allowed Citibank LBSF Claim.

<u>The Investment Should be Authorized</u>

22.    The Investment is reasonable and appropriate in light of the unique circumstances of these chapter 11 cases and the Plan Administrator's primary objective of

expediting and maximizing distributions to holders of Allowed Claims. The Court has broad discretion under sections 105(a) and 1142(b) of the Bankruptcy Code to facilitate the administration and implementation of the Plan and to issue any appropriate order in furtherance thereof. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."); 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party … to perform any other act ... that is necessary to the consummation of the plan"). Pursuant to Section 14.1(e), the Court retained jurisdiction to "issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code." *Id*. § 14.1(e).

A.    Approval of the Investment is in the Best Interests of Creditors

23.    Pursuant to the Investment, LBSF may loan to LBHI the Investment Amount in exchange for a rate of return that is enhanced compared to the rate that otherwise would be earned on the investment of such amounts. The Investment will make immediately available for distribution to holders of Allowed Claims against LBHI, including holders of Allowed Claims against LBSF with corresponding Guarantee Claims against LBHI, amounts – approximately $295 million, plus any additional amounts to be reserved on account of the Citibank Claims in connection with future Distributions – that otherwise would become available only after the disputes with Citibank are resolved at some future date. This accelerated Distribution will provide substantial benefit to the creditors of LBHI and creditors of LBSF holding allowed Guarantee Claims against LBHI. This dual benefit is important, as a significant number of creditors with claims against LBSF also hold Guarantee Claims against LBHI.

24.    In addition, enhanced interest will be paid on the Investment at the rate of 0.50% in excess of the interest rate paid on LBSF's investment of its other disputed claims reserves until such time as the Citibank LBSF Claim is judicially resolved or settled. This

enhanced return will increase the cash available for Distribution to creditors of LBSF, including Citibank.

25.     The boards of directors of LBHI and LBSF (including its independent director) have also considered the circumstances and have approved the Investment.

B.     Approval of the Investment Will Not Prejudice Stakeholders

26.     The Investment provides the reasonable assurance required to protect all parties.  Repayment of the Note will be secured by (a) a right of setoff against any Plan Distributions from LBSF to LBHI as subrogee of the Citibank LBSF Claim, and (b) any payments from Citibank made to LBHI resulting from any judgment or settlement with Citibank that results in release of all or a portion of the Deposited Funds.  This will ensure that LBHI will have sufficient cash if and when needed to repay any amounts due under the Note that would not be offset by a Distribution from LBSF payable to LBHI on account of the LBHI Subrogation Claim.  Accordingly, under all scenarios following the final resolution of the Claims Objections, LBHI will receive from some combination of Citibank and LBSF an aggregate amount of Cash at least equal to the amount required to satisfy the Note.

Conclusion

27.     In sum, approval of the Investment will best serve the interests of creditors of LBHI and LBSF, and will not prejudice any party.  The Movants therefore respectfully request that the Court approve the Investment.

-14-

Reservation of Rights

28.     Nothing herein shall be deemed to determine or affect in any respect the validity, amount or priority of any of the Citibank Claims or the LBHI Subrogation Claim for any purpose, and all rights of the Plan Administrator with respect thereto are fully preserved.

Notice

29.     No trustee has been appointed in these chapter 11 cases.  The Movants have served notice of this Motion on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Citibank; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635).  The Movants submit that no other or further notice need be provided.

30.     No previous request for the relief sought herein has been made by Movants to this or any other Court.

*[signature page follows]*

**WHEREFORE,** Movants respectfully request that the Court grant the relief requested

herein and such other and further relief as is just.


Dated:  July 14, 2015
      New York, New York

                                    Respectfully submitted,

                                      CURTIS, MALLET-PREVOST, COLT &
                                      MOSLE LLP


By:  */s/ Peter J. Behmke*_____
        Turner P. Smith
        L.P. Harrison 3rd
        Peter J. Behmke
        *Attorneys for Lehman Brothers Holdings Inc.*
        *and Certain of Its Affiliates*


                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP

By:  */s/  Susheel Kirpalani*_____
        Susheel Kirpalani
        Andrew J. Rossman
        James C. Tecce
        Scott C. Shelley
        *Attorneys for the Official Committee of*
        *Unsecured Creditor*