Hearing Date and Time: July 22, 2015 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: July 10, 2015 at 4:00 p.m. (Prevailing Eastern Time)

WHITE & CASE LLP
Andrew Hammond, Esq.
Richard A. Graham, Esq.
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Counsel for SRM Global Master Fund Limited Partnership*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | |
|---|---|
| In re : | Chapter 11 Case No. |
| : | 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* : | (Jointly Administered) |
| Debtors. : | |
| : | |

---------------------------------------------------------x

### SRM GLOBAL MASTER FUND LIMITED PARTNERSHIP'S LIMITED OBJECTION TO PLAN ADMINISTRATOR'S MOTION TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES

SRM Global Master Fund Limited Partnership ("SRM"), through its undersigned counsel, hereby objects to the *Motion of Plan Administrator Pursuant to Sections 8.4, 9.3, and 14.1 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors to Estimate Claims for Reserve and Distribution Purposes* [Docket No. 49954] (the "Motion") filed by Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator.[1] In support of its objection, SRM has contemporaneously filed the Declaration of Richard A. Graham (the "Graham Decl.") and respectfully represents as follows:

### PRELIMINARY STATEMENT

1. Through this Motion, the Plan Administrator seeks to estimate at zero dollars for

---
[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

reserve and distribution purposes approximately 1,150 claims in which creditors seek to recover against LBHI based on guarantees that LBHI issued to creditors of Lehman Brothers International (Europe) ("LBIE"). The Plan Administrator's blunderbuss motion is founded entirely on the faulty premise that estimation is appropriate for all of the 1,150 guarantee claims because "there will be sufficient value in LBIE's estate to make distributions that will be more than sufficient to discharge LBHI's alleged guaranty liability." Motion ¶ 2. Remarkably, although the Plan Administrator bears the burden of persuasion on this Motion, the Plan Administrator has adduced no evidence and concedes that it has done no diligence to determine whether the premise on which the estimation motion is founded applies to SRM. It does not. As shown below, SRM asserted valid claims against LBIE, █████████████████████████
████████████████████████████████████████████████████████████████████████████████.
Under well-settled precedent, SRM is entitled to assert the full amount of its claim against LBHI until it is paid in full.

    2.    Moreover, the Plan Administrator has failed to satisfy the statutory basis required to estimate SRM's claims. SRM's claims are not contingent and most of SRM's claims are liquidated. Furthermore, there is no indication that requiring the Plan Administrator to follow routine procedures for objecting to SRM's claims would unduly delay the administration of LBHI's estate, particularly given that the seven year anniversary of the Petition Date is quickly approaching and the Plan Administrator has at least until March 2017 to object to claims. Indeed, there is no reason to believe that SRM's claims could not be liquidated prior to the current claims objection deadline. For these and the reasons set forth more fully below, the Plan Administrator's motion should be denied with respect to SRM.

## BACKGROUND

### I. SRM Enters Into a Prime Brokerage Agreement and Other Agreements with LBIE

3. SRM is a hedge fund limited partnership that was formed in 2006. As part of its business, SRM entered into prime brokerage relationships with several well-known brokerages. In or around March 2008, SRM began discussing entering into a broker arrangement with LBIE. Although LBIE's franchise was relatively new and less established than that of several other brokerages in London, SRM was impressed by LBIE's stated intentions of growing its prime brokerage business and treating SRM as a critically important client.

4. Ultimately, SRM agreed to enter into a prime brokerage arrangement with LBIE. To memorialize their relationship, LBIE and SRM executed a series of agreements including a Prime Brokerage Agreement dated May 9, 2008 (the "PBA"), a Master Institutional Futures Customer Agreement dated on or about May 9, 2008 (the "MIFCA"), and a Cross Margining and Netting Agreement dated May 9, 2008 (the "CMNA"). SRM POC (as defined below), Attachment ¶ 6.

5. SRM (by and through its general partner) and LBIE also entered into that ISDA Master Agreement dated May 12, 2008 (the "ISDA Master," and, together with the appurtenant Schedule, Credit Support Annex and related documentation, as applicable, the "ISDA Documentation"). SRM POC, Attachment ¶¶ 3-4. LBHI guaranteed LBIE's obligations under the ISDA Documentation pursuant to that Guarantee of Lehman Brothers Holdings Inc. (London Branch) dated May 12, 2008 (the "ISDA Guarantee"). Graham Decl., Exhibit A (ISDA Guarantee). Pursuant to the ISDA Guarantee, LBHI:

> unconditionally guarantee[d] to [SRM] the due and punctual payment of all amounts due and payable by [LBIE] in connection with each Transaction [entered into pursuant to the ISDA Master] when and as [LBIE's] obligations thereunder shall become due and payable in accordance with the terms of the [a]greement

(whether at maturity, by acceleration, or otherwise).

ISDA Guarantee ¶ (a).

6. Additionally, LBHI executed that Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc. dated June 9, 2005 (the "Board Guarantee," and together with the ISDA Guarantee, the "Guarantees"). Graham Decl., Exhibit B (Board Guarantee). The Board Guarantee provided that LBHI "fully guarantee[d] the payment of all liabilities, obligations, and commitments of [certain specified subsidiaries, including LBIE]...." Board Guarantee at 2.

## II.    LBIE and LBHI Become Subject to Insolvency Proceedings

7. On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). LBIE was placed into English administration proceedings pursuant to the English Insolvency Act 1986 on the Petition Date.

8. Following the occurrence of an event of default under the ISDA Master, on September 18, 2008, SRM delivered a notice to LBIE designating September 18, 2008 as the Early Termination Date (as defined in the ISDA Documentation) on which all outstanding transactions under the ISDA Documentation would be terminated. SRM POC, Attachment ¶ 8.

9. On September 19, 2008, SRM delivered a statement to LBIE pursuant to section 6(d)(i) of the ISDA Master containing SRM's calculation of the amount due to it on account of the termination of all transactions under the ISDA Documentation (the "Termination Claim"). Id. ¶ 9. By a statement dated September 26, 2008, SRM amended its calculation to increase the total amount of the Termination Claim to $49,389,923. Id. ¶¶ 9-10.

10. On September 26, 2008, SRM delivered a statement (a) notifying LBIE that SRM

had setoff a portion of the amount owed to it under the ISDA Documentation against amounts SRM owed to LBIE with respect to certain obligations governed by the PBA and (b) requesting the return of (i) certain of SRM's assets that LBIE was required to segregate (the "Segregated Assets"), which assets included 5,094,060 shares of Virgin Media, Inc. common stock and 3,000,000 shares of Charter Communications, Inc. common stock and (ii) margin provided by SRM pursuant to the MIFCA in the amount of $8,893,650 including applicable interest (the "Margin Cash"). Id. ¶¶ 11-12. LBIE failed to return the Segregated Assets or the Margin Cash in response to that or any other contemporaneous request from SRM. Id. ¶ 16.

### III. SRM Files Its Proof of Claim

11.    On July 2, 2009, the Court entered an order setting September 22, 2009 as the bar date (the "Bar Date"). See *Order Pursuant to Section 502(2)(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* [Docket No. 4271] (the "Bar Date Order").

12.    On the Bar Date, SRM filed its proof of claim setting forth its claims against LBHI [Claim No. 29606] (the "SRM POC"). The SRM POC asserted claims in the aggregate amount of approximately $305,039,923, consisting of: $49,389,923 plus additional interest, fees, costs and expenses on account of the Termination Claim; approximately $106.6 million on account of the then-current value of the Segregated Assets and the Margin Cash;[2] approximately $48.3 million on account of damages suffered resulting from the failure to return Segregated Assets; approximately $100 million on account of lost investment opportunities suffered due to the diversion of SRM's management resources; and $750,000 in legal fees and expenses then

---

[2] LBIE failed to return the Segregated Assets to SRM, and the value of the Segregated Assets increased over time. As discussed in more detail below in paragraph 17, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ the Segregated Assets were valued at $264,268,340.60.

incurred. SRM POC, Attachment ¶ 18. SRM reserved its right to amend or supplement the SRM POC at any time and for any reason, including but not limited to, for purposes of fixing, increasing or amending the amounts referred to within it and for adding or amending documents and other information and further describing the claims. Id. ¶ 20.

### IV. Confirmation of the Plan

13.  On December 6, 2011, the Court confirmed the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), and the Plan became effective on March 6, 2012. Among other things, the Plan provided that an "Allowed Guarantee Claim that receives Distributions . . . that combined with . . . other consideration provided on the corresponding Primary Claim . . . equal to the Allowed amount of such Guarantee Claim . . . shall . . . be deemed satisfied in full." Plan § 8.13(a).

### V.  ███████████████████████████

14.  Most creditors of LBIE were permitted to resolve their claims through that certain Claims Resolution Agreement between LBIE and certain of its counterparties that became effective on December 29, 2009 (as amended from time to time, the "CRA"). The CRA is a contractual arrangement established by LBIE to (i) provide standard methods for the termination and valuation of financial contracts to which LBIE was a party and (ii) expedite the process of trust asset distribution, in order to bring finality to LBIE and claimants in respect of these positions.[3] ███████████████████████████████████████████████████████████████ LBIE wrongfully refused to permit SRM to participate in the CRA. Consequently, SRM was required to expend substantial time and resources ███████████████████████████████████████████████████████

---

[3] Letter from S.A. Pearson, Joint Administrator, Lehman Brothers International (Europe) (in administration), to "Eligible Offerees" (Nov. 24, 2009), *available at* http://www.pwc.co.uk/assets/pdf/lbie-cra-circular.pdf.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

15. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SRM's claims against LBIE had grown to be in excess of $400 million. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

16. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

17. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ On or about June 7, 2013, Virgin Media was acquired by Liberty Global plc. In connection with the Liberty Global acquisition, each share of Virgin Media was exchanged for $17.50 in cash, 0.2582 Class A shares of Liberty Global ("<u>LBYTA Shares</u>") and

---

[4] The Motion notes that some distributions made by LBIE may have been satisfied in British Pounds and that "[a]s a result of the different conversion rates, it is possible that a Guarantee Claim may be entitled to additional consideration before it is deemed satisfied in full under the Plan . . . " Motion ¶ 18. That concern does not apply to SRM ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

0.1928 Class C shares of Liberty Global ("LBTYK Shares"). Accordingly, the 5,094,060 Virgin Media shares belonging to SRM were converted on or about June 7, 2013 into $89,146,050, 1,315,286.292 shares of LBYTA and 982,134.768 shares of LBTYK. Thus, if LBIE had returned the Segregated Assets to SRM ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, in addition to the $89,146,050 in cash (exclusive of interest), SRM would have been able to sell its LBYTA shares for $77.88 per share (for a total of $102,434,496.42) and its LBYTK Shares for $74.01 per share (for a total of $72,687,794.17) for a grand total of $264,268,340.60▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[5]

18. In addition, SRM had other outstanding claims in excess of $198,439,923 (consisting of $49,389,923 plus additional interest, fees, costs, and expenses on account of the Termination Claim, at least $48.3 million in damages suffered as result of LBIE's failure to return the Segregated Assets, at least $100 million in lost investment opportunities, and at least $750,000 legal fees and expenses), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[6]

19. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[5] SRM also held 3,000,000 shares in Charter Communications common stock which LBIE failed to return.
[6] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



## ARGUMENT

20.     The Plan provides that estimation of a contingent, unliquidated or Disputed Claim is permitted "to the extent permitted by the Bankruptcy Code and Bankruptcy Rules." Plan § 9.3.[7] Section 502(c)(1) of the Bankruptcy Code provides that "[t]here shall be estimated for purposes of allowance under this section . . . any contingent or unliquidated claim, the filing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). Because SRM's claims against LBHI are no longer contingent, the majority of SRM's claims against LBHI are liquidated, and liquidating SRM's few remaining unliquidated claims against LBHI would not unduly delay the post-confirmation administration of the bankruptcy case, the Motion must be denied with respect to SRM's claims. SRM's claims should instead be addressed and resolved through the ordinary claims reconciliation process, as "bankruptcy law's general rule is to liquidate, not to estimate." In re Dow Corning Corp., 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997).

---

[7] That the Relevant Guarantee Claims are Disputed is not itself a basis for finding any of the claims are susceptible to estimation. "[T]he vast majority of courts . . . have held that the existence of a dispute over either the underlying liability or the amount of a debt[] does not automatically render the debt either contingent or unliquidated." In re Jordan, 166 B.R. 201, 202 (Bankr. D.Me. 1994); see, e.g., In re Audre, Inc., 202 B.R. 490, 493 (Bankr. S.D. Cal. 1996) ("The remaining question regarding the liquidated status of the claim is whether the debtor, by scheduling the claim as disputed, or by filing a claim objection, can make an otherwise liquidated claim unliquidated for purposes of § 502(c). The courts which have considered the question have concluded that a readily calculable claim remains liquidated regardless of whether it is disputed."). Indeed, if the existence of a dispute would render a claim subject to estimation, then there would be no need for complex claims allowance proceedings in any bankruptcy case as a debtor could simply object to a claim's allowance and then seek to have the claim estimated.

I. **The Plan Administrator Has Not Carried His Burden With Respect to SRM**

21. As the movant in this case, the Plan Administrator bears the burden of proving that SRM's claims should be estimated at zero. See In re Frascella Enters., Inc., 360 B.R. 435, 458 n.49 (Bankr. E.D. Pa. 2007) ("[T]he burden[] [for estimation] should be the same as in deciding objections to proofs of claim. . . .") (citing In re FRG Ltd. P'ship, 121 B.R. 451, 456-57 (Bankr. E.D. Pa. 1990)); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) (noting that a party objecting to a proof of claim has the burden of producing sufficient evidence to rebut a claimant's *prima facie* case).

22. The Plan Administrator has not carried its burden, as it has offered *no* evidence to support its claim that SRM's claims should be estimated at zero. The entire premise of the Plan Administrator's motion to estimate is that "[t]here will be sufficient value in LBIE's estate to make distributions that will be more than sufficient to discharge LBHI's alleged guaranty liability for the LBIE claims." Motion ¶ 2. However, the Plan Administrator has made no attempt to show that SRM has been or will be paid in full by LBIE. The Plan Administrator acknowledges that it has not undertaken any effort "to determine the amount and currency of consideration received by any party on account of an allowed primary claim and whether such amount[] equal[s] or exceed[s] the filed amount of the Relevant Guarantee Claim." Id. ¶ 26. In other words, the Plan Administrator has not done the work necessary to ascertain whether its blunderbuss approach has merit with respect to any particular holder of a Relevant Guarantee Claim. Rather, the Motion is based on pure speculation and conjecture that each of the Relevant Guarantee Claims is identical.[8] The Plan Administrator asserts – without basis – that it should be

---

[8] The Plan Administrator also implies that there would be a kind of collective "undue delay" given the number of Relevant Guarantee Claims it faces if it was required to liquidate each claim individually. Motion ¶ 30. However, a court should not consider the size of a debtor's creditor base when evaluating whether a single claim should be estimated; claims should be considered on an individualized basis. See generally In re Continental Airlines Corp., 64 B.R. 874, 880-81 (Bankr. S.D. Tex.

excused from undertaking such diligence because that would require the "diversion and expenditure of limited resources." Id. ¶ 30. Regardless of the effort required, the burden to come forward with evidence rests squarely on the Plan Administrator. Because the Plan Administrator has failed to produce any evidence to support the estimation of SRM's claims, the Motion should be denied (at least in respect of SRM's claims). See generally Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982) (stating that a bankruptcy judge should estimate the value of a claim "where there is sufficient evidence on which to base a reasonable estimate of the claim"); Mueller v. Nelson (In re Mueller), Case No. BK90-40846, 1994 Bankr. LEXIS 1038, at *55 (Bankr. D. Neb. 1994) ("Absent substantive evidence of actual damages, I am not permitted to estimate the extent of damage.").

23. 

---

1986) ("[C]laims against a bankrupt estate may not be treated *en masse* but instead each must be treated on its own merits.") (internal quotations and citations omitted).

24. In light of the circumstances under which they arose ████████████ ███████████████████████████████████████████████ SRM's claims against LBHI are unique among all of the Relevant Guarantee Claims. ████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████

25. Similarly, the Plan Administrator's concerns about having to recoup payment made to creditors who may receive future payments from LBIE are inapplicable to SRM. <u>See</u> Motion ¶ 28. ████████████████████████████████████████

## II. The Plan Administrator Fails to Satisfy the Elements of Section 502(c) of the Bankruptcy Code

### A. SRM's Claims Are Not Contingent

26. The term "contingent" is not defined in the Bankruptcy Code. However, the Second Circuit has concluded that a claim is "contingent" where "the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event," and "the occurrence or happening of [such] extrinsic event . . . will trigger . . . liability." <u>See</u> <u>Mazzeo v. United States (In re Mazzeo)</u>, 131 F.3d 295, 303 (2d Cir. 1997) (internal quotations and citations omitted); <u>see also</u> <u>United States v. LTV Corp. (In re Chateaugay Corp.)</u>, 944 F.2d 977, 1004 (2d Cir. 1991) (noting that "contingent" claims are usually considered obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created). "A guaranty is a classic example of a contingent obligation," <u>In re S. Cinemas, Inc.</u>, 256 B.R. 520, 533 (Bankr. M.D. Fla. 2000), but the obligation is not contingent after "all predicates to enforcement have occurred." <u>In re LightSquared Inc.</u>, No. 12-12080 (SCC), 2014 WL 5488413, at *3 (Bankr.

S.D.N.Y. Oct. 30, 2014). If a default by the primary obligor has occurred, then the predicate to enforcement has occurred and a guarantee claim becomes absolute and not contingent. See id.; In re F.B.F. Indus., Inc., 165 B.R. 544, 548-49 (Bankr. E.D. Pa. 1994).

27. LBIE repeatedly breached its contractual obligations to SRM by, among other things, failing to return Segregated Assets and Margin Cash, failing to recognize SRM's setoff and failing to pay the Termination Claim. Because LBIE defaulted on its obligations to SRM, the predicates to enforcement of the Guarantees against LBHI have occurred and SRM's claims against LBHI are no longer contingent. See, e.g., In re Rhead, 179 B.R. 169, 172 (Bankr. D. Ariz. 1995) ("Upon default of the principal on the underlying debt, liability on the guarantee becomes fixed. Here, the underlying debt was in default well before the bankruptcies. As a result, liability on the guarantee is no longer contingent because all predicates to enforcement have occurred."); see also In re LightSquared Inc., 2014 WL 5488413, at *3-4.

### B. Only Some of SRM's Claims Are Unliquidated

28. Although the Bankruptcy Code does not define the term "unliquidated claim," courts have held a claim is unliquidated when the amount of the claim is not "determinable by reference to an agreement or by a simple computation." See In re Mazzeo, 131 F.3d at 304 (internal quotations and citation omitted); see also In re LightSquared Inc., 2014 WL 5488413, at *5 (same). Here, most of SRM's claims are liquidated and thus not susceptible to estimation.

29. As an initial matter, SRM claimed that LBIE breached the PBA by failing to return the Segregated Assets, which included securities traded on the NASDAQ and London Stock Exchange. SRM's damages resulting from LBIE's failure to return the Segregated Assets are liquidated because the value of such assets can be readily measured by reference to share price quotations and multiplying them by the number of shares owned by SRM that were to be

segregated. As noted above, the Segregated Assets consisted of, among other things, 5,094,060 shares of Virgin Media common stock, which were valued in the aggregate at $264,268,340.60 ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

30. The Termination Claim is also liquidated because it can be determined "by reference to an agreement." See In re Mazzeo, 131 F.3d at 304. The ISDA Documentation, which has been utilized to memorialize thousands of transactions, provides that the "Loss and the Second Method," a well-established methodology, should be used to calculate the Termination Claim. Graham Decl., Exhibit E (Schedule to ISDA Master at Part I(f)). A party that suffered a loss must provide its counterparty a statement showing, in reasonable detail, its calculations (including all relevant quotations). Graham Decl., Exhibit F (ISDA Master § 6(d)(i)). SRM provided a calculation statement to LBIE on September 26, 2008. SRM POC, Attachment ¶ 9.

31. The amount of fees and expenses so far incurred by SRM are also liquidated as they can be determined by reference to historic invoices and other billing statements.

32. The amounts of SRM's other claims – e.g., the damages sustained as a result of LBIE's failure to return the Segregated Assets and the value of SRM's claim arising from the inability of SRM to carry on its business – cannot be determined by reference to an agreement or only by simple calculations and could therefore be considered unliquidated. However, even if such claims were unliquidated, that is no reason to require their estimation here. The Plan Administrator must still show that the liquidation of such claims would unduly delay the administration of these cases, which have already been pending for almost seven years and will undoubtedly proceed for several more.

### C. There Would Be No Undue Delay of Administration if SRM's Claims Are Not Estimated

33. Whether the "undue delay" prong of section 502(c) of the Bankruptcy Code is

satisfied "rests on the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question." See Interco Inc. v. ILGWU Nat'l Retirement Fund (In re Interco Inc.), 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992).

34.    The Plan Administrator argues that estimating the Relevant Guarantee Claims will avoid undue delay because the Relevant Guarantee Claims have been or will be paid in full by LBIE.[9] See, e.g., Motion ¶ 30 ("[R]esolution of the Relevant Guarantee Claims through the five steps above would *unduly* delay the administration of LBHI's case because any reconciliation and litigation processes begun for the Relevant Guarantee Claims would be mooted by distributions from LBIE . . . .") (emphasis in original). ██████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████

35.    Even if the Plan Administrator could show that liquidating SRM's claims would cause some sort of delay – which it cannot – the Court should exercise its discretion and decline to estimate SRM's claims in light of the unique circumstances of these chapter 11 cases. See In re LightSquared Inc., 2014 WL 5488413, at *3 (noting that estimation is discretionary even if statutory gating requirements are met) (citing In re Apex Oil Co., 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989)). As this Court stated in In re LightSquared Inc., "delay, undue or otherwise, is not a justification for ignoring applicable law or undermining the settled expectations of parties who transact every day in reliance on the belief, for example, that credit documents such as

---

[9] The Plan Administrator also argues that estimation would allow it to avoid the costs and expense of burdensome discovery. Motion ¶¶ 26, 31, 33. However, "undue delay" is a test of duration, not of costs and expense in terms of money. Furthermore, SRM provided LBHI with most of the materials relevant to SRM's claims in connection with the filing of the SRM POC almost six years ago. Moreover, the Plan Administrator is no stranger to discovery. Moreover, the Plan Administrator is no stranger to discovery, as it sought and obtained authorization from this Court to seek Rule 2004 discovery from creditors like SRM. See *Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities* [Docket No. 5910].

guarantees mean what they say." 2014 WL 5488413, at *5.

36.     These cases have been pending for almost seven years and no end is in sight. We are also now approaching the sixth anniversary of the Bar Date and the fourth anniversary of confirmation. Further, the Plan Administrator's own actions show that there will be no undue delay from liquidating SRM's claims because the administration of these cases will continue for many more years. Less than two months ago the Plan Administrator requested an extension of the claims objection deadline to March 6, 2017. See *Motion of Lehman Brothers Holdings Inc. for Extension of the Period to File Objections to and Requests to Estimate Claims* [Docket No. 49709]. The Court granted the Plan Administrator's request, "without prejudice to the ability of the Plan Administrator to request further extensions," see *Order Extending the Period to File Objections to and Requests to Estimate* Claims [Docket No. 50165], and so it is possible that the claim reconciliation process could continue long past 2017. The Plan Administrator has failed to adduce any evidence indicating that SRM's claims cannot be liquidated before 2017. Accordingly, liquidating SRM's claims will not unduly delay the Plan Administrator's efforts to close these cases.

### III.    Even If the Plan Administrator Could Establish Grounds to Estimate SRM's Claims, Such Claims Should Be Estimated In Their Full Amount and Not at Zero

37.    The Bankruptcy Code does not specify how a bankruptcy court should estimate a contingent or unliquidated claim, but whatever process is adopted must be grounded in the applicable substantive law that governs the ultimate value of such claims. See, e.g., Addison v. Langston (In re Brints Cotton Mktg., Inc.), 737 F.2d 1338, 1341 (5th Cir. 1984) ("In estimating the value of an unliquidated claim, the bankruptcy court is bound by the legal rules which govern the ultimate value of the claim.") (internal quotations and citation omitted); In re Enron Corp., No. 01-16034 (AJG), 2006 WL 538552, at *3 (Bankr. S.D.N.Y. Jan. 6, 2006).

38. A properly filed proof of claim establishes *prima facie* evidence of the validity and amount of the claim, Fed. R. Bankr. P. 3001(f), and is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). As noted above, the objecting party bears the burden of presenting sufficient evidence to overcome the *prima facie* validity of a properly filed claim. In re Adelphia Commc'ns Corp., 2007 WL 601452, at *5. In this context, courts have described sufficient evidence as "evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)). Here, the Plan Administrator has not presented *any* evidence to rebut any allegation set forth in the SRM POC. As such, if SRM's claims are estimated, they must be estimated in full amount set forth in the SRM POC – at least $305,039,923.[10] See In re Make Meat Corp, Case No. 98-cv-4990 (HB), 1999 WL 178788, at *4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim.") (emphasis in original).

39. 

---

[10] The SRM POC identified numerous unliquidated claims which have grown since the Petition Date and the filing of the SRM POC. Moreover, the value of SRM's Segregated Assets which LBIE failed to return increased to approximately $264 million ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SRM reserves the right to amend its proof of claim to assert the full amount of damages sustained as a result of LBIE's breaches.



The only limitation on the guarantee creditor's right to assert the guarantee claim in full is that the guarantee creditor cannot receive a double recovery. See <u>Schall v. Camors (In re Carriere's Estate)</u>, 251 U.S. 239, 254 (1920). ▆▆▆▆▆▆▆▆▆▆▆▆▆ SRM is entitled to assert the full amount of its guarantee claims against LBHI until it is paid in full.

### RESERVATION OF RIGHTS

40. SRM reserves its rights to raise further objections to the Motion at any hearing on the Motion, or to supplement and amend this objection, seek discovery with respect to the same, and introduce evidence at any hearing relating to the Motion or its claims, without limiting any other rights that SRM may have.

41. Because SRM's claims have grown since the SRM POC was filed, SRM expressly reserves the right to amend or supplement the SRM POC for the purposes of (a) fixing, increasing, or amending the amounts referred therein and (b) adding or amending documents and other information and further describing SRM's claims.

## CONCLUSION

WHEREFORE, SRM respectfully requests that the Court enter an order denying the Motion with respect to SRM's claims and granting such other and further relief as the Court deems just and proper.

Dated: July 10, 2015
      New York, New York

Respectfully submitted,

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

By: /s/ Andrew Hammond
    Andrew Hammond
    Richard A. Graham

Counsel for SRM Global Master Fund Limited Partnership