**Hearing Date: July 22, 2015 at 10:00 a.m. (Prevailing Eastern Time)**

J. Eric Ivester
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for CRC Credit Fund*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (SCC) |
| Debtors. | |

**OBJECTION OF CRC CREDIT FUND LTD. TO MOTION OF PLAN ADMINISTRATOR PURSUANT TO SECTIONS 8.4, 9.3, AND 14.1 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES**

CRC Credit Fund Ltd. (f/k/a CRC Global Structured Credit Fund, Ltd.), for itself and those of its affiliates who hold claims against Lehman Brothers International (Europe) ("**LBIE**") that are guaranteed by Lehman Brothers Holdings Inc. ("**LBHI**") (collectively, "**CRC Credit Fund**"), hereby submits this objection (this "**Objection**") to the Plan Administrator's Motion Pursuant to Sections 8.4, 9.3, and 14.1 of the Modified Third Amended Joint Chapter 11 Plan (the "**Plan**") of LBHI and its Affiliated Debtors to Estimate Claims for Reserve and

Distribution Purposes [ECF No. 49954] (the "**Motion**")[1]. In support for this Objection, CRC Credit Fund respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  As further discussed below, CRC Credit Fund holds claims against LBIE that are guaranteed by LBHI. It is undisputed that, to the extent CRC Credit Fund's primary claims against LBIE go unsatisfied through LBIE's administration in the United Kingdom, CRC Credit Fund has a right to receive a distribution on account of such shortfall from LBHI as guarantor. As required by the Plan, LBHI currently maintains a reserve of cash and assets that will be available to creditors such as CRC Credit Fund in the event that CRC Credit Fund's primary claim against LBIE goes unsatisfied. The Plan Administrator now seeks to arrogate the protections under the Plan specifically afforded to CRC Credit Fund and the other holders of guarantee claims.

2.  CRC Credit Fund acknowledges that the Plan provides for a process whereby the Plan Administrator may request that the court estimate claims under certain circumstances. However, such an estimation is not appropriate here for several reasons. *First*, CRC Credit Fund's primary claims against LBIE have not been paid and may not be paid in full. Despite the Plan Administrator's contention that there are ample funds remaining in LBIE's estate, there is substantial uncertainty regarding the ultimate extent to which CRC Credit Fund's primary claim will be paid. A claim estimation of zero dollars has the obvious effect of cutting off CRC Credit Fund's rights to recover any shortfall on its primary claim against LBIE. *Second*, the guarantee claims may not be estimated at zero dollars because the statutory prerequisites for such estimation under Section 502(c) of the Bankruptcy Code have not been satisfied. *Third*, the Plan

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

sets forth specific procedures with respect to the administration of guarantee claims. The Plan Administrator's attempt to use the Plan's estimation process to value CRC Credit Fund's guarantee claim at zero dollars, and to promptly thereafter distribute the amounts previously held in reserve, is a clear end run around specifically applicable Plan provisions that are intended to protect both creditors holding guarantee claims and LBHI. *Fourth*, the relief requested by the Motion is incompatible with applicable law regarding the scope and enforceability of guarantor liability.

3.      In sum, the relief requested in the Motion overlooks important unresolved claims determination issues, ignores applicable law and Plan provisions, and bears the very real risk of violating both CRC Credit Fund's rights under the Plan and the absolute priority rule.

## BACKGROUND

4.      On September 15, 2008 (the "**Petition Date**") and at various times thereafter, LBHI and certain of its subsidiaries filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. On September 15, 2008, LBIE, a subsidiary of LBHI, was placed into administration in the United Kingdom.

5.      On December 6, 2011, the Court entered an order confirming the Plan [ECF No. 23023].

6.      Prior to the Petition Date, CRC Credit Fund entered into a number of financial agreements with LBIE, including: (i) an ISDA Master Agreement, dated on or about January 29, 2003 (as amended from time to time, the "**Master Agreement**"), (ii) a Strategic Client Services Agreement, dated on or about November 1, 2002 (the "**Strategic Agreement**"), (iii) a Master Custody Agreement, dated on or about November 1, 2002 (the "**Custody Agreement**"), and (iv) a Master Institutional Futures Customer Agreement, dated June 3, 2003 (the "**Futures**

3

**Agreement**" and, together with the Master Agreement, the Strategic Agreement, and the Custody Agreement, the "**LBIE Agreements**").

7. Pursuant to the LBIE Agreements, CRC Credit Fund had deposited cash and securities with LBIE, entered into interest rate swaps and forward contracts with LBIE, and LBIE provided brokerage and custodial services to CRC Credit Fund in respect thereto.

8. By letter dated September 19, 2008, CRC Credit Fund sent a default notice to LBIE under the Master Agreement (the "**Default Notice**"). In addition, by letters dated September 30, 2008 (the "**Demand Letters**"), CRC Credit Fund demanded the return of all cash and property (including any margin) held by LBIE under the Strategic Agreement, the Custody Agreement and the Futures Agreement. Each of the Demand Letters and the Default Notice were attached as Exhibit A to CRC Credit Fund's Amended Proof of Claim, filed on December 20, 2010 (the "**Amended Proof of Claim**") [ECF No. 67271]. CRC Credit Fund sets forth in the Amended Proof of Claim its basis for primary claims against LBIE in an amount of $150,595,521.53 plus 469,543.54 British Pounds Sterling ("**Pounds**") and reserved its rights with respect to any additional amounts that may be owed under or in connection with the LBIE Agreements.

9. Pursuant to (i) a Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005 (the "**UWC**") and (ii) that certain Guarantee of Lehman Brothers Holdings Inc., dated January 4, 2008, addressed to Standard & Poor's Rating Services (the "**Guaranty Letter**"), LBHI guaranteed the payment of all of LBIE's liabilities, obligations and commitments (the "**Guaranty**"). The Guaranty also extends to "expenses including reasonable attorneys' fees of enforcing or obtaining or endeavoring to enforce or obtain payment thereof." Similarly, as further evidence of LBHI's guaranty of LBIE's obligations, LBHI guaranteed the payment of all of LBIE's obligations to CRC Credit Fund under the Master

4

Agreement pursuant to that certain Guarantee of Lehman Brothers Holdings Inc., dated January 30, 2003 (the "**Guarantee Agreement**"). CRC Credit Fund attached copies of the UWC, the Guaranty Letter and the Guarantee Agreement to its Amended Proof of Claim. Claims based on the foregoing guarantee obligations are referred to herein as the "**Guarantees Claims**".

**OBJECTION**

I.  **CRC Credit Fund's Primary Claims Against LBIE Have Not Been Paid And May Not Be Paid In Full By LBIE**

10.     The primary basis for the Plan Administrator's request to estimate LBHI guarantee-claims at zero dollars is that the LBIE-based creditors purportedly received 100% of the allowed amounts of their primary claims and are expected to receive additional amounts from LBIE in the future. Motion ¶ 6. However, the Plan Administrator largely ignores two complex and unresolved issues directly impacting the ultimate extent of CRC Credit Fund's claim against LBIE, and therefore any potential guarantee claim against LBHI.

11.     *First*, there are highly complicated disputes before the English High Court (the "**High Court**") and English Supreme Court (the "**Supreme Court**") regarding the treatment of post-administration interest, the priority of such claims and currency conversion losses. More specifically, the High Court is in the process of determining whether distributions by LBIE in respect of allowed unsecured claims should first be applied to the payment of accrued statutory interest, and thereafter to principal reduction. The Supreme Court must consider whether creditors of LBIE will be allowed statutory interest and currency conversion loss claims, the latter being equal to the loss that a creditor may suffer as a result of changing currency exchange rates during the time lag between the date LBIE converts an unsecured creditor's claim to Pounds and the date on which LBIE actually pays distributions to that creditor. The Plan Administrator has emphasized the "complexities and scope" of these proceedings and cautioned

5

that it is premature to determine the extent to which such claims will "share in the eventual Surplus remain[ing] to be distributed." <u>See</u> Thirteenth Progress Report at 1, 7. Indeed, to describe the English litigation as complex is an understatement: the litigation currently pending in the High Court comprises "39 different matters concerning entitlement to and calculation of Post-Administration Interest and non-provable claims (in particular, Currency Conversion Claims, if any) against the Surplus" and the appeal pending in the Supreme Court encompasses six additional "substantive matters." <u>Id</u>. at 28.

12. To the extent the High Court determines that distributions must first be applied to post-administration interest or currency conversion loss claims, CRC Credit Fund's principal claim against LBIE will not have been paid in full and the LBHI guarantee would apply to such deficiency. The English courts' decisions on the existence of interest and currency conversion claims will significantly impact the eventual size and scope of creditors' claims, as the Plan Administrator itself acknowledges. <u>See</u> Motion ¶ 15.

13. The Motion is therefore improper because the relief requested therein would have the effect of preempting the Supreme Court's and the High Court's forthcoming decisions on the post-administration interest and currency conversion loss issues.

14. *Second*, even if LBIE is assumed to have distributed 100% of the allowed amounts to its unsecured creditors, LBHI would still not be released from its obligations under the LBHI guarantees due to the different exchange rates used in the LBIE administration and under the Plan. This is due to the fact that under applicable United Kingdom law, claims against LBIE are distributed in Pounds at the exchange rate prevailing on September 15, 2008. Due to the Pound's declining exchange rate against the U.S. Dollar since September 15, 2008, creditors of LBIE will receive distributions that are worth less than the value of their allowed claims under

6

the Plan. The LBHI guarantee is in fact the only recourse for creditors to recover the ensuing shortfall.

15. The Motion and supporting declaration also note that the prospect of future distributions is apparent because the LBIE unsecured claims are trading above par. Motion ¶ 15. The fact that the market surmises that some future distributions will be made by LBIE provides cold comfort that LBIE will actually satisfy CRC Credit Fund's ultimate claim. The Plan Administrator provides no evidence whatsoever that the trading prices are high enough above par to indicate an expectation that all LBIE claims will be paid in full. For example, as noted above LBIE will never distribute more than a claim is worth as of September 15, 2008, regardless of surplus reserves or future payments on account of post-administration interest or currency conversion losses.

16. In any event, potential future payments in no way impact a creditor's ability to effectively assert a guarantee claim. See In re LightSquared, Inc., No 12-12080-SCC, 2014 WL 5488412, at *4-5 (Bankr. S.D.N.Y. Oct. 30, 2014) (denying a motion to estimate guarantee claims at zero dollars for purposes of allowance "where [there] remain[ed] a risk that the [creditor] would not be repaid in full"). The single-satisfaction rule limits a guarantee creditor's ultimate recovery but does not preclude allowance of the creditor's claim in the full amount of the primary obligation. See Gas Transmission Nw. Corp. v. Liberty Electric Power, LLC (In re Nat'l Energy & Gas Transmission, Inc.), 492 F.3d 297, 300-01 (4th Cir. 2007) (applying New York law); In re Wash. Bancorporation, No. 90-00597, 1996 WL 148533, at *18 (D.D.C. Mar. 19, 1996) ("[A] bankruptcy claim is not reduced or impaired by subsequent payments received from third party obligors until such claim has been satisfied in full."). The relief requested in the Motion would turn this distinction on its head by functionally reducing the allowed amount of CRC Credit Fund's claim on account of distributions by non-debtor parties. Furthermore, as

7

discussed in Section III hereto the Plan contains specifically applicable provisions that prevent a creditor from keeping distributions in excess of its primary claim.

## II. The Guarantee Claims May Not Be Estimated At Zero Dollars Under Section 502(c) of the Bankruptcy Code

17. The Plan Administrator in its Motion relies on the estimation procedure set forth under Section 9.3 of the Plan. This estimation procedure allows the Plan Administrator to request that the Court estimate any contingent, unliquidated, or Disputed Claim, but in each case only "to the extent permitted by the Bankruptcy Code and Bankruptcy Rules." Plan, § 9.3. Section 502(c) of the Bankruptcy Code provides that "there shall be estimated for purposes of allowance under this section [ ] any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1).

18. As an initial matter, because Section 9.3 of the Plan only provides authority within the limits of Section 502(c) of the Bankruptcy Code,[2] the estimation of claims is only permitted for claims that are contingent or unliquidated. See, e.g., In re Continental Airlines, 981 F.2d 1450, 1461 (5th Cir. 1993) ("in cases where a claim is neither contingent nor unliquidated, estimation is simply inappropriate"); In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 425 (Bankr. S.D.N.Y. 2003) (declining to estimate a claim "because it's a claim for a liquidated amount"). The Guarantee Claims are neither. Specifically, the Guarantee Claims are not contingent because LBHI's obligations to CRC Credit Fund arose upon LBIE's default under the LBIE Agreements. In other words, all predicates to enforcement were satisfied when LBIE

---

[2] The Motion also states that the Court's authority to grant the requested relief is bequeathed by Section 105(a) of the Bankruptcy Code. However, it is well established that Section 105(a) cannot on its own provide the basis for the Court to expand remedies that are otherwise specifically delineated in the Bankruptcy Code. See In re Headlee Mgmt. Corp., 519 B.R. 452, 459 (Bankr. S.D.N.Y. 2014) ("Nor can the court use § 105(a) to fashion a remedy where the Bankruptcy Code provides one."). Section 502(c) of the Bankruptcy Code specifically sets forth the circumstances under which a claim should be estimated. It is therefore inappropriate that the Plan be interpreted to broaden estimated claims to include Disputed Claims that are not contingent or unliquidated.

8

defaulted on its obligations and no further event must occur in order for CRC Credit Fund to invoke its claims against LBHI.[3] Furthermore, the possibility that LBIE will satisfy the primary claims does not render the Guarantee Claims contingent. See LightSquared, 2014 WL 5488413 at *4.

19. The Guarantee Claims reflected on the Amended Proof of Claim are also liquidated because the Guarantee Claims are readily determinable. For example, the amounts set forth therein are readily calculable as a result of transactions entered into in connection with the LBIE Agreements.

20. Even if the Guarantee Claims are contingent or unliquidated, the Plan Administrator fails to show that the absence of an estimation "would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1); see also In re LightSquared, Inc., No 12-12080-SCC, 2014 WL 5488412, at *5 ("[E]stimation would still be improper because Harbinger has failed to demonstrate that the liquidation of the Guaranty Claim would unduly delay administration of the Guarantor's chapter 11 cases, as it is required to show pursuant to section 502(c)."). For example, the Plan Administrator contends that the zero dollar estimation is required because reconciliation of the guarantee claims would be "difficult" and require protracted discovery and litigation. Motion ¶ 4. However, difficulty in resolving claims, even if the claims resolution process is time consuming, is not an excuse under the Bankruptcy Code or any applicable law to determine a claim to be worthless. See, e.g., LightSquared, 2014 WL 5488413 at *5 ("Delay, undue or otherwise, is not a justification for ignoring applicable law or

---

[3] See, e.g., Guaranty Letter, p.1 (stating that LBHI does "absolutely and unconditionally guarantee the payment by [LBIE] of all of [LBIE]'s liabilities, obligations and commitments [to CRC Credit Fund] . . . as the same shall respectively become due, together with accrued interest and charges, if any, . . . and for all expenses including reasonable attorneys' fees of enforcing or obtaining or endeavoring to enforce or obtain payment thereof") (emphasis added).

9

undermining the settled expectations of parties who transact every day in reliance on the belief, for example, that credit documents such as guarantees mean what they say."). Furthermore, the Amended Proof of Claim was filed four and a half years ago. CRC Credit Fund should not be prejudiced by the fact that neither the Debtor nor the Plan Administrator took sufficient action to satisfy itself with discovery pertaining to the Guarantee Claims in the past half of a decade. The lack of an undue delay is further evidenced by the fact that LBHI itself recently sought and received authority to further delay objecting to claims for an additional 18 months until March 6, 2017. See Order Extending the Period to File Objections to and Requests to Estimate Claims [ECF No. 50165].

### III. The Plan Contains Separately Applicable Provisions

21. Rather than subjecting guarantee claims to estimation, and as the Motion itself highlights, the Plan provides specific procedures and safeguards with respect to the administration of guarantee claims. For example, section 8.13(e) of the Plan allows the Plan Administrator to request that holders of guarantee claims certify in writing and provide evidence in order to, among other things, confirm that such creditor is capable of disgorging any excess distributions. In other words, the Plan contemplates precisely the scenario currently facing LBHI and prescribes a method for handling applicable guarantee claims. The safeguards ensure that no creditor ultimately receives distributions greater than its primary claim while not punishing a creditor whose guarantee claim has not yet been determined.

### IV. The Relief Requested Is Incompatible With Applicable Guarantee Law

22. If the relief requested by the Motion is granted, the Plan Administrator will cause LBHI to release funds and assets currently held in reserve for Disputed Claims against LBHI. More specifically, LBHI would no longer be required to reserve *any* funds on account of guarantee claims such as those held by CRC Credit Fund. Therefore, if it is later determined that

LBIE is unable to satisfy CRC Credit Fund's claims against it in full, CRC Credit Fund will receive nothing on account of its shortfall guarantee claims against LBHI. The relief requested in the Motion has the inevitable effect of expunging the Guarantee Claims altogether.

23.    This outcome is incompatible with applicable law. For example, under New York law, a guarantor is liable for all unpaid amounts until a creditor is paid in full. See In re LightSquared, Inc., No 12-12080-SCC, 2014 WL 5488412, at *6-7 ("[E]ach [claimant] continues to hold a claim against every [guarantor] . . . for any amount that is unpaid when due, and each of the . . . claims continues to exist until the [obligation] is paid, in full."). This principle does not change where a creditor has received distributions from other sources—the creditor is still permitted an allowed claim against the guarantor for the full asserted amount. See In re Nat'l Energy & Gas Trans., Inc., 492 F.3d 297, 301 (4th Cir. 2007) (allowing full value of creditor's claim against guarantor despite creditor having already received substantial payments on the claim), cert. denied, 522 U.S. 1231 (2008). Further, as the Guaranty is one of payment rather than collection, CRC Credit Fund is under no obligation to exhaust its remedies against LBIE in order for the Guarantee Claims to become effective. See, e.g., Guaranty Agreement, ¶ (f) (stating that LBHI expressly waives any requirement that CRC Credit Fund exhaust any right to take any action against LBIE prior to proceeding to exercise any rights against LBHI). It is therefore inappropriate to foreclose CRC Credit Fund from pursuing its Guarantee Claim by granting the relief requested in the Motion.[4]

---

[4] The Motion also states that many guarantee claims against LBHI are invalid because the claimants did not submit executed or individualized guarantees or evidence of knowledge or reliance on general guarantees. The UWC, the Guaranty Letter and the Guarantee Agreement that CRC Credit Fund attached to its Amended Proof of Claim are executed by LBHI and are clearly enforceable. Moreover, the Guarantee Agreement expressly contemplates the underlying transactions between CRC Credit Fund and LBIE and that the parties intended for LBHI to guarantee each underlying transaction. Similarly, the general guarantees were relied upon by CRC Credit Fund notwithstanding that certain of the LBIE Agreements were entered into prior to the date the general

*(cont'd)*

24.     For these reasons, CRC Credit Fund respectfully requests that the Motion be denied.

[Remainder of Page Intentionally Left Blank]

---

*(cont'd from previous page)*
guarantees were granted. CRC Credit Fund's decision to do business with LBHI was certainly informed by the general guarantees, one of which was addressed to a leading ratings agency.

Dated: New York, New York
July 17, 2015

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        */s/ J. Eric Ivester*
        J. Eric Ivester, Esq.
        Skadden, Arps, Slate, Meagher & Flom LLP
        Four Times Square
        New York, New York 10036-6522
        Telephone: (212) 735-3000
        Fax: (212) 735-2000

        *Attorneys for CRC Credit Fund*