TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
7 Skyline Drive
Hawthorne, NY 10532
914-347-2600
*Attorneys for Allied World Assurance Company (U.S.) Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------------- x | | |
| In re: LEHMAN BROTHERS HOLDINGS, INC. et al. | : | Chapter 11 |
| | : | |
| | : | Case No. 08-13555 |
| Debtors. | : | |
| | : | |
| ----------------------------------------------------------------- x | | |
| ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., | : | |
| | : | Ad. Pro. No. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LB ROSE RANCH, LLC; VAUGHAN COUNTS; THISHA MCBRIDE; CHARLIE LAWSON; SARAHLIZ LAWSON; STEPHANIE MOSHER; STEVE MEW; KORI NEW; CRAIG WILLIS; PAMELA WILLIS; THE KOREICH 1981 TRUST; JAMES VIDAKOVICH REVOCABLE TRUST; GARY GRAY; MICHAEL CRYAN; BRIAN ALONGE; ANDRE PONTIN; JULIE PONTIN; PATRICK M. NESBITT; DAVID ICE; LISA ICE; RICHARD MOORE; DANIEL HOCK; TONI HOCK; J. CHRISTINE AMINI; NEIL ROSS; THE SOHRAB AMINI TRUST; JOSEPH S. DAVIS; KIRSTIN F. DAVIS; TINA ROCHOWIAK; CHADWICK MICKSCH; SARAH MICKSCHL; AMERICAN HOME ASSURANCE COMPANY; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA | : : : : : : : : : : : : : : : : : : : : | |
| | : | **ADVERSARY PROCEEDING** |
| | : | **COMPLAINT FOR** |
| Defendants. | : | **DECLARATORY RELIEF** |
| ----------------------------------------------------------------- x | | |

     Plaintiff Allied World Assurance Company (U.S.) Inc. ("AWAC"), by and through its

undersigned counsel, hereby alleges as follows:

## NATURE OF ACTION

1.     AWAC is a putative insurer of Lehman Brothers Holdings Inc. ("LBHI") and

LBHI's subsidiary, LB Rose Ranch LLC ("Rose Ranch"), Debtors in the above-captioned

bankruptcy case, under certain umbrella liability insurance policies issued to LBHI.  AWAC

seeks a judicial declaration of the rights and other legal relations of AWAC, Rose Ranch, Rose

Ranch's other putative insurers and the underlying plaintiffs regarding whether and to what

extent AWAC's policies provide coverage in connection with a construction defect lawsuit now

pending in the District Court of the State of Colorado, Garfield County, under the heading *Jamin*

*Cook et al. v. Ironbridge Homes, LLC et al.*, Case No. C-2010-CV-142 (the "Colorado

Litigation").

## PARTIES

2.     Plaintiff Allied World Assurance Company is a corporation organized and

existing under the laws of the State of Delaware with its principal place of business in New

York, New York.

3.     Defendant Lehman Brothers Holdings Inc. ("LBHI") is a corporation organized

and existing under the laws of the State of Delaware with its principal place of business in New

York, New York.

4.     Defendant LB Rose Ranch LLC is a corporation organized and existing under the

laws of the State of Delaware with its principal place of business in New York, New York.

5.     Defendants Vaughan Counts, Thisha McBride, Charlie Lawson, Sarahliz Lawson,

Stephanie Mosher, Steve Mew, Kori New, Craig Willis, Pamela Willis, The Koreich 1981 Trust,

James Vidakovich Revocable Trust, Gary Gray, Michael Cryan, Brian Alonge, Andre Pontin,

Julie Pontin, Patrick M. Nesbitt, David Ice, Lisa Ice, Richard Moore, Daniel Hock, Toni Hock, J.

Christine Amini, Neil Ross, the Sohrab Amini Trust, Joseph S. Davis, Kirstin F. Davis, Tina Rochowiak, Chadwick Mickschl and Sarah Mickschl (collectively, the "Colorado Plaintiffs"), are the plaintiffs in the Colorado Litigation. With the exception of Andre Pontin and Julie Pontin, the Colorado Plaintiffs are the owners of single family residences located in the Ironbridge PUD subdivision in Glenwood Springs, Colorado. Andre Pontin and Julie Pontin are the former owners of a single family residence in the Ironbridge PUD that was foreclosed upon. Each of the Colorado Plaintiffs is seeking or has obtained judgments against Rose Ranch. According to the Stipulation, Agreement and Order Granting Limited Relief from the Automatic Stay entered by this Court on December 12, 2014 [Doc. 47375], the Colorado Plaintiffs' may only seek insurance assets to satisfy their judgments.

6.       Nominal Defendant American Home Assurance Company ("American Home") is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

7.       Nominal Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in New York, New York.

## JURISDICTION

8.       Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of title 11 of the United States Code in the Bankruptcy Court of the Southern District of New York. Rose Ranch commenced its Chapter 11 Case on February 9, 2009.

9.       The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 7001(1) and 7001(9).

10.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this action is related to Rose Ranch's bankruptcy case.

11.    This is a non-core proceeding related to a bankruptcy case pursuant to 28 U.S.C. § 157(b)(1) in which AWAC asks this Court to order declaratory relief pursuant to § 3001 of the New York Civil Practice Law and Rules, the federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202; and pursuant to this Court's equitable authority pursuant to 11 U.S.C. § 105(a) and otherwise.

12.    Pursuant to Fed. R. Bankr. P. 7008(a), AWAC consents to entry of final orders and judgments by the bankruptcy court in this adversary proceeding only.

13.    AWAC waives its right to a jury trial with respect to this adversary proceeding only.

## BACKGROUND

14.    On May 14, 2010, certain Colorado Plaintiffs commenced suit against defendants other than Rose Ranch in the Colorado Litigation alleging claims arising out of alleged defects in the residences that plaintiffs purchased from defendants Ironbridge Homes, LLC or Ironbridge Mountain Cottages, LLC (collectively, "Ironbridge Homes").  The crux of the complaint was that the Colorado Plaintiffs' properties had sustained damages as a result of alleged settlement due to the properties having been designed and/or constructed improperly on hydro-collapsible soils.

15.    On March 18, 2011, the Colorado Plaintiffs filed in this Court their motion for relief from the automatic stay extant in this Chapter 11 case in order to name LBHI and Rose Ranch as defendants in the Colorado Litigation for the announced purpose of allowing the Colorado Plaintiffs to recover damages related to their claims from LBHI and LBBR's insurance policies as defined in that motion.  By ordered stipulation entered in this Court on November 18,

2011, relief from the automatic stay was granted to permit the Colorado Plaintiffs to assert claims relating to the design, construction or maintenance of the golf course.  [See Doc. #22336.]

16.     On April 5, 2012, the Colorado Plaintiffs filed their *Third Amended Complaint and Jury Demand* in the Colorado Litigation naming LBHI and Rose Ranch as defendants.  The Colorado Plaintiffs claimed the settlement of their properties had been exacerbated by irrigation from the neighboring Ironbridge Golf Course (the "Golf Course") owned by Rose Ranch.

17.     On August 29, 2014, the Colorado Plaintiffs sought permission of the court in the Colorado Litigation to file a *Sixth Amended Complaint and Jury Demand* (the "*Sixth Amended Complaint*") against Rose Ranch in order to add additional claims and causes of action against Rose Ranch.

18.     By ordered stipulation entered in this Court on December 14, 2014, relief from the automatic stay was extended to the Colorado Plaintiffs so that they could pursue these additional claims and causes of action against Rose Ranch.  [See Doc. #47375.]    On December 15, 2014, the court in the Colorado Litigation granted the Colorado Plaintiffs' motion to file the *Sixth Amended Complaint*.

19.     In the *Sixth Amended Complaint and Jury Demand* (the "*Sixth Amended Complaint*"),[1] the Colorado Plaintiffs allege that in 2004, Rose Ranch and co-defendant Hansen Construction, Inc. ("Hansen") entered into Purchase and Sale Agreement (the "Agreement") pursuant to which Rose Ranch agreed to sell lots in the Ironbridge Subdivision to Hansen. Plaintiffs allege that the Agreement created a joint venture in which Rose Ranch and Hansen would have a joint interest in the lots upon which the Colorado Plaintiffs' properties were eventually built, would share in the profits and losses from the sales of the properties, and would

---

[1] A copy of the *Sixth Amended Complaint* is attached hereto as Exhibit 1.

engage in joint decisions regarding the design, budgeting and the marketing of the project.  The

specific claims asserted against Rose Ranch in the Colorado Plaintiffs' *Sixth Amended Complaint*

that have not been dismissed are as follows:

- Negligence resulting in property damage for failing to ensure that all design, development, construction and repair work was performed in accordance with industry standards;

- Negligence per se based on alleged violation of the uniform building code, § 6-6.5-101 (duty of sellers to disclose soils reports), and C.R.S. § 12-61-801 et seq. (duties of real estate brokers to disclose relevant information).

- Misrepresentation/nondisclosure resulting in property damage for failing to disclose information related to the dangers of hydro-compactive soils;

- Negligence for lateral seepage (i.e., water from the golf course); and

- Breach of fiduciary duty owed by Rose Ranch appointed board members for failing to maintain and repair the infrastructure, which allowed water to reach and negatively impact the foundations of the homes; for making decisions to implement design review guidelines that required the use of irrigation; and for the failure to fully and reasonably communicate with homeowners regarding the deficiencies and inadequacies of the Ironbridge projects' water management systems.

20.     Commencing in January 2015, the Colorado Plaintiffs as claimants and certain

respondents involved in the construction and sale of Plaintiffs' properties participated in an

arbitration hearing involving the same factual allegations and claims asserted in the *Sixth*

*Amended Complaint*.  The respondents in the arbitration, Ironbridge Homes and Hansen, were

named defendants in the Colorado Litigation.  However, the claims against the arbitration

respondents were stayed in favor of the arbitration.  Rose Ranch was not a party to the

arbitration.

21.     On or about June 3, 2015, the arbitrator issued his *Order on Final Awards*.  The

Final Awards totaled $9,088,537.19.  The Colorado Plaintiffs seek to hold Rose Ranch liable for

at least this amount of damages under various theories of liability, which amounts potentially implicate one or more of the insurance policies issued by AWAC.

### THE POLICIES

22.    Upon information and belief, American Home issued the following primary general liability insurance policies to LBHI and under which Rose Ranch is an insured.  Upon further information and belief, Rose Ranch is an insured under these American Homes primary general liability policies:

| Policy No. | Policy Period | Limits |
|---|---|---|
| 4571645 | 8/1/04 – 8/1/05 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4571645 | 8/1/05 – 8/1/06 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4571645 | 8/1/06 – 8/1/07 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4571645 | 8/1/07 – 8/1/08 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 5473514 | 9/30/04 – 9/30/05 | $1,000,000 per occurrence<br>$10,000,000 general aggregate<br>$1,000,000 products-completed operations aggregate |
| 5749696 | 9/30/05 – 9/30/06 | $1,000,000 per occurrence<br>$10,000,000 general aggregate<br>$1,000,000 products-completed operations aggregate |
| 5759349 | 9/30/06 – 9/30/07 | $1,000,000 per occurrence<br>$10,000,000 general aggregate<br>$1,000,000 products-completed operations aggregate |
| 1595543 | 9/30/07 – 9/30/08 | $1,000,000 per occurrence<br>$10,000,000 general aggregate<br>$1,000,000 products-completed operations aggregate |

23.    Upon information and belief, National Union issued the following primary general liability insurance policies to LBHI.  Upon further information and belief, Rose Ranch is an insured under these National Union primary general liability policies:

| Policy No. | Policy Period | Limits |
|---|---|---|
| 4571645 | 8/1/08 – 8/1/09 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4573023 | 8/1/09 – 8/1/10 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4573023 | 8/1/10 – 8/1/11 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |

24. Upon information and belief, National Union also issued the following umbrella liability insurance policies to LBHI. Upon further information and belief, Rose Ranch is an insured under these National Union umbrella policies:

| Policy No. | Policy Period | Limits |
|---|---|---|
| 2130740 | 8/1/02 – 8/1/03 | $25,000,000 x/o American Home primary |
| 2860449 | 8/1/03 – 8/1/04 | $25,000,000 x/o American Home primary |
| 2860759 | 8/1/04 – 8/1/05 | $25,000,000 x/o American Home primary |
| 4484870 | 8/1/05 – 8/1/06 | $25,000,000 x/o American Home primary |
| 4485579 | 8/1/06 – 8/1/07 | $25,000,000 x/o American Home primary |
| 9835121 | 8/1/07 – 8/1/08 | $25,000,000 x/o American Home primary |
| 6081831 | 8/1/08 – 8/1/09 | $25,000,000 x/o National Union primary |
| 9835264 | 9/30/07 – 11/30/08 | $25,000,000 x/o American Home primary |
| 2227085 | 11/30/08 – 9/30/09 | $25,000,000 x/o National Union primary |

25. AWAC issued an Umbrella Liability Insurance Policy to LBHI under policy no. C012682/001 for the policy period August 1, 2009 to August 1, 2010 (the "2009-2010 AWAC Umbrella Policy"). Said policy has limits of $25,000,000 for each occurrence and in the aggregate, excess of the National Union primary policy for the same policy period. Rose Ranch is an insured under the 2009-2010 AWAC Umbrella Policy. A true and correct copy of the 2009-2010 AWAC Umbrella Policy is attached hereto as Exhibit 2.A.

26. The 2009-2010 AWAC Umbrella Policy was renewed under policy no. 0305-8109 for the policy period August 1, 2010 to August 1, 2011 (the "2010-2011 AWAC Umbrella Policy"). Said policy also has limits of $25,000,000 in excess of the National Union primary

8

policy for the same policy period.   Rose Ranch is an insured under the 2010-2011 AWAC

Umbrella Policy.  A true and correct copy of the 2010-2011 AWAC Umbrella Policy is attached

hereto as Exhibit 2.B.

27.    Unless expressly stated, the 2009-2010 AWAC Umbrella Policy and the 2010-

2011 AWAC Umbrella Policy have the same policy terms and will be collectively referred to as

the "AWAC Umbrella Policies."

28.    The insuring agreements for the AWAC Umbrella Policies, as modified by those

policies' Designated Premises Limitation Endorsement, state, in relevant part:

I.    **INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY**

A.    We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** in an **Insured Contract**.

The amount we will pay for damages is limited as described in Section III., "Limits of Insurance."

B.    This policy applies, only if:

1.    the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; …

                    *           *           *

C.    This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI. "Definitions," no executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part.  If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

**Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2.a.,

2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D.    **Bodily Injury** or **Property Damage** will be deemed to have occurred at the earliest time when an **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI. "Definitions," no executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1.    reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

2.    receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

3.    becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

\*        \*        \*

This insurance will apply to **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** arising out of:

1.    the ownership, maintenance or use of the designated premises listed below or any property located on the premises listed below; or

2.    operations on the premises listed below or operations elsewhere that are necessary or incidental to the ownership, maintenance or use of the premises listed below.

Description and Location of Premises:

As provided under endorsement CG 21 44 to the Primary National Union Fire Insurance Company of Pittsburgh, Pa. General Liability policy #GL 4573023 effective August 1, 2009-2010 and subject to all subsequent quarterly adjustments to be remitted to Allied World Insurance Company.[2]

\*        \*        \*

29.    The AWAC Umbrella Policies contain the following relevant definitions:

---

[2] The quoted language in this paragraph comes from the 2009-10 Policy. The 2010-11 Policy similarly states: "Description and Location of Premises: As provided under endorsement CG 21 44 to the Primary National Union Fire Insurance Company of Pittsburgh, Pa. General Liability policy # GL 457-30-23, effective August 1, 2010-2011 and subject to all subsequently quarterly adjustments to be remitted to Allied World Insurance Company."

C.      **Bodily injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

\*       \*       \*

F.      **Insured** means:

\*   \*   \*

Notwithstanding any of the above:

a.      no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed … joint venture … that is not designated as a **Named Insured** in Item 1. of the Declarations[.]

\*       \*       \*

H.      **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

\*       \*       \*

J.      **Named Insured** means:

1.      the person or organization first named as the **Named Insured** in Item 3. of the Declarations (the "First Named Insured");

2.      any other person or organization named as a **Named Insured** in Item 3. of the Declarations;

3.      all entities that are wholly or partially owned by any **Named Insured**;

4.      any entity (including any entity over which the Named Insured does not exercise active managerial control but in which it has a financial or operational interest) described in a. through f. below, as now or hereafter formed or acquired:

    a.      subsidiaries,
    b.      affiliates,
    c.      associated or allied companies,
    d.      limited liability companies,
    e.      corporations, and
    f.      partnership or joint ventures;

5.      any subsidiary of an entity described in paragraphs 4. above.

Solely as respects paragraphs 4. and 5. of this endorsement:

a.      Coverage is provided only for the real estate operations of either the entity formed or the entity covered pursuant to a written obligation.  As used in this definition, "real estate operations" means the ownership, management or maintenance of the premises, and operations on the premises or elsewhere which are necessary or incidental to the ownership, management or maintenance of the premises; and

b.      No person or organization is an **Insured** by virtue of the provisions of this endorsement who is not an **Insured** under applicable **Scheduled Underlying Insurance**.

\*   \*   \*

K. **Occurrence** means:

1. as respects **Bodily Injury**, **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

\*       \*       \*

Q. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed or occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic date is not tangible property.

As used in this definition, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

R. **Retained Limit** means the greater of the following amounts:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the Insured; or

2. the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

30.    The 2009-2010 AWAC Umbrella Policy contains the following professional liability exclusion:

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Professional Liability**

This policy does not provide coverage for any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

It is understood this exclusion applies even if the claims against any **Insured** alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**.

31.    The 2010-2011 AWAC Umbrella Policy contains the following professional liability exclusion:

**PROFESSIONAL LIABILITY EXCLUSION (WITH LIMITED EXCEPTION FOR RESULTANT BODILY INJURY AND PROPERTY DAMAGE AND INCIDENTAL MEDICAL MALPRACTICE)**

It is agreed that this policy is amended as follows:

SECTION **IV. EXCLUSIONS** is amended to include the following additional exclusion:

**Professional Liability**

This policy does not provide coverage for any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible. It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**.

However,

a)   if coverage for resultant **Bodily Injury** or **Property Damage** arising out of professional services performed by or on behalf of the **Insured** is provided by **Scheduled Underlying Insurance**:

1.   this exclusion shall not apply to such resultant **Bodily Injury** or **Property Damage**; and

2.   coverage under this policy for such resultant **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions, and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium, and all other terms, definitions, conditions and exclusions of this policy. Coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

32.    The primary general liability policy underlying the 2010-2011 AWAC Umbrella

Policy has two professional liability exclusions, which state:

**Exclusion - Engineers, Architects or Surveyors Professional Liability**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or

surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.      Supervisory, inspection, architectural or engineering activities.

*        *        *

### EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section 1 - Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.**      This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

      **a.**      Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

      **b.**      Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

**2.**      Subject to Paragraph 3. below, professional services include:

      **a.**      Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

      **b.**      Supervisory or inspection activities performed as part of any related architectural or engineering activities.

33.      The AWAC Umbrella Policies also have a Construction Operations Exclusion (With Non-Structural Improvement Exception) (hereinafter, the "Construction Operations Exclusion") that states:

A.      It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Construction Operations (With Non-Structural Improvement Exception)**

This policy does not provide coverage for any liability arising out of **Construction Operations**. This exclusion applies whether or not the **Construction Operations** have been completed or are ongoing.

However, this exclusion does not apply to **Bodily Injury** or **Property Damage** arising out of **Non-Structural Improvements** performed by or on behalf of the **Insured**.

B.  It is agreed that the following definitions are added under Section VI., "Definitions":

**Construction Operations** means any activity by or on behalf of any **Insured**, in any capacity, regarding, related to, or in support of the erection, remodeling, or structural repairing of a building on land.

**Non-Structural Improvements** means **Construction Operations** that do not relate to the erection, repair, improvement, or replacement of:

1.   building frame;

2.   building foundations;

3.   load-bearing walls;

4.   columns, girders, trusses, beams and spandrels that are necessary to the stability of the building structure; or

5.   any other element or component of the building necessary to the stability of the building structure.

**Non-Structural Improvements** include the installation, repair, improvement, and replacement of fixtures.

34.   The AWAC Umbrella Policies also contain the following exclusions:

G.   **Damage to Your Work**

This policy does not provide coverage for **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*          \*          \*

K.   **Expected or Intended Injury**

This policy does not provide coverage for **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

## FIRST CAUSE OF ACTION – DECLARATORY RELIEF: GOVERNING LAW

35.   AWAC repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

36.     Because the AWAC Umbrella Policies were negotiated, issued and delivered in the State of New York to LBHI, under applicable choice of law rules, AWAC contends New York law governs any dispute concerning or relating to the AWAC Umbrella Policies as they apply to Rose Ranch, including whether or not coverage is provided for any claims in the Colorado Litigation and/or the meaning, interpretation or operation of any policy term, definition or provision.

37.     Upon information and belief, one or more of the defendants (in particular, the Colorado Plaintiffs) contend that Colorado law, rather than New York law, governs any dispute concerning or relating to the AWAC Umbrella Policies as they apply to Rose Ranch, including whether or not coverage is provided for any claims in the Colorado Litigation and/or the meaning, interpretation or operation of any policy term, definition or provision.

38.     There are substantive difference between New York and Colorado law as applied to the claims in the Colorado Litigation.  For example, there is an actual conflict in the substantive law of Colorado and New York as it relates to whether the Colorado Plaintiffs have alleged or proven an "occurrence," defined in the AWAC Umbrella Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under New York law, the allegations set forth in the Colorado Litigation pertaining to the alleged liability of Rose Ranch as a developer for damages to the Colorado Plaintiffs' properties caused by the faulty design or construction of those properties by Rose Ranch do not constitute an "occurrence" as defined by the AWAC Umbrella Policies.  Conversely, Colorado statute purports to require courts to "presume that the work of a construction professional that results in property damage, including damage to the work itself or other work, is an accident unless the

property damage is intended and expected by the insured."  C.R.S. § 13-20-808(3) (<u>emphasis</u> added).

39.     Upon information and belief, American Home's primary policies and National Union's primary and umbrella policies define "occurrence" similarly to, if not identical to, the AWAC Umbrella Policies.  Upon further information and belief, New York law also applies to the interpretation of those policies.

40.     There is an actual and justiciable controversy between AWAC, on one hand, and one or more of the defendants, on the other, as to whether New York or Colorado law should apply and whether the claims in the Colorado Litigation meet the requirements for coverage under the "occurrence" definition of the AWAC Umbrella Policies and otherwise.

41.     By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

<u>SECOND CAUSE OF ACTION – DECLARATORY RELIEF: INTERPRETATION OF KEY PROVISIONS AND EXCLUSIONS</u>

42.     AWAC repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

43.     With respect to the claims in the Colorado Litigation, AWAC seeks a declaration of the following:

     a.     That any liability of Rose Ranch as a developer for "property damage" to the Colorado Plaintiffs' properties caused by the faulty design or construction of the Ironbridge PUD infrastructure does not constitute an "occurrence" as defined by the AWAC Umbrella Policies;

     b.     That any liability of Rose Ranch as a developer for "property damage" to the Colorado Plaintiffs' properties caused by the faulty design or construction of the

properties themselves does not constitute an "occurrence" as defined by the AWAC Umbrella Policies;

c.      That any damages awarded by the jury to the Colorado Plaintiffs does not constitute "bodily injury" as defined by the AWAC Umbrella Policies;

d.      That any "bodily injury" or "property damage," or continuation of such "bodily injury" or "property damage," that was known to have occurred by a qualifying insured prior to the inception of the 2009-2010 AWAC Umbrella Policy is not covered;

e.      That any "bodily injury" or "property damage," or continuation of such "bodily injury" or "property damage," that was known to have occurred by a qualifying insured prior to the inception of the 2010-2011 AWAC Umbrella Policy is not covered;

f.      That the Colorado Plaintiffs' claim for Misrepresentation/Nondisclosure Resulting in Property Damage (fifth claim for relief) does not constitute an "occurrence" under the AWAC Umbrella Policies;

g.      That to the extent the liability of Rose Ranch relates to its participation in a joint venture, Rose Ranch is not an insured under the AWAC Umbrella Policies because such liability does not arise out of "real estate operations" as that term is defined in the AWAC Umbrella Policies;

h.      That any liability of Rose Ranch for "property damage" resulting from the negligent design or construction of the infrastructure or the properties themselves is not covered because it does not arise out of the ownership, maintenance or use of such designated premises or operations elsewhere that are necessary or incidental to the ownership, maintenance or use of such designated premises;

i.      That any "bodily injury" or "property damage" for which Rose Ranch is liable arising out of acts, errors, omissions, malpractice or mistake of a professional nature, including but not limited to any imputed liability of Hepworth-Pawlak Geotechnical, Inc., is excluded by the professional liability exclusions in the AWAC Umbrella Policies;

j.      That any "bodily injury" or "property damage" for which Rose Ranch is liable arising out of "construction operations," as that term is defined in the AWAC Umbrella Policies, is excluded by the Construction Operations Exclusion;

k.      That any "bodily injury" or "property damage" for which Rose Ranch is liable arising out of its own work (not performed by subcontractors) is excluded by the Damage To Your Work exclusion;

l.      That any "bodily injury" or "property damage" expected or intended by Rose Ranch is excluded by the Expected Or Intended Injury exclusion;

m.      That AWAC has no liability under the AWAC Umbrella Policies to indemnify Rose Ranch unless and until the underlying National Union primary general liability policies have exhausted their applicable per occurrence and/or aggregate limit through the payment of covered claims; and

n.      That when the appropriate trigger and allocation law is applied, the Colorado Plaintiffs' damages are insufficient to trigger coverage under the AWAC Umbrella Policies.

44.    Upon information and belief, there is an actual justiciable controversy between the AWAC and the Defendants (in particular, the Colorado Plaintiffs) as to whether and to what extent the forgoing coverage defenses apply.

45.     By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

## THIRD CAUSE OF ACTION – DECLARATORY JUDGMENT: ANTI-LIMITS STACKING ENDORSEMENT

46.     AWAC repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

47.     Upon information and belief, American Home and/or National Union (collectively, "AIG") have reserved the right to assert that their maximum liability, if any, to Rose Ranch under their primary and umbrella policies is governed by an "Anti-Limits Stacking Endorsement", which, according to AIG, "generally provides that, to the extent a particular policy and any Other Insurance issued by an AIG member company applies to the same claim, suit, or "occurrence", the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of all applicable policies."

48.     No "Anti-Limits Stacking Endorsement" is included within the National Union policies underlying the AWAC Umbrella Policies.  Accordingly, no such limitation or cap on the National Union's maximum available limits under the policies underlying the AWAC Umbrella Policies exists.

49.     To the extent National Union or any other defendant contends otherwise, a justiciable controversy actually exists between AWAC and National Union as to whether National Union's maximum liability under its policies underlying the AWAC Umbrella Policies.

50.     By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

## PRAYER

WHEREFORE, AWAC prays for judgment as follows:

1.      That the Court make and enter a binding judicial declaration in accordance with AWAC's

contentions set forth in the claims for relief;

2.      Such other and further relief that the Court deems just and proper.

Dated: July 17, 2015
       Hawthorne, New York

                                        Respectfully submitted,

                                        TRAUB    LIEBERMAN    STRAUS   &
                                        SHREWSBERRY LLP


                                        By: /s/ Brian Margolies
                                        Brian Margolies
                                        7 Skyline Drive
                                        Hawthorne, NY 10532
                                        bmargolies@traublieberman.com
                                        (T) (914) 586-7020
                                        (F) (914) 347-8898
                                        *Attorneys for Allied World Assurance
                                        Company (U.S.) Inc.*