| | |
|---|---|
| DISTRICT COURT, GARFIELD COUNTY, COLORADO<br>Garfield County Courthouse<br>109 8th Street, Suite 104<br>Glenwood Springs, CO 81601 | DATE FILED: August 29, 2014 2:50 PM<br>FILING ID: CFCDDB916A656<br>CASE NUMBER: 2010CV142 |
| **Plaintiffs:**<br>JAMIN COOK, TIFFANY COOK, VAUGHAN COUNTS, THISHA McBRIDE, CHARLIE LAWSON, SARAHLIZ LAWSON, STEPHANIE MOSHER, STEVE NEW, KORI NEW, CRAIG WILLIS, PAMELA WILLIS, THE KORNEICH 1981 TRUST, JAMES VIDAKOVICH REVOCABLE TRUST, GARY GRAY, MICHAEL CRYAN, BRIAN ALONGE, ANDRE PONTIN, JULIE PONTIN, PATRICK M. NESBITT, DAVID ICE, LISA ICE, RICHARD MOORE, DANIEL HOCK, TONI HOCK, J. CHRISTINE AMINI, NEIL ROSS, THE SOHRAB AMINI TRUST, JOSEPH S. DAVIS, KRISTIN F. DAVIS, TINA ROCHOWIAK, JAMIE PROUGH, MICHAEL ROCHOWIAK, MARTIN ROCHOWIAK, CHADWICK MICKSCHL, and SARAH MICKSCHL | ▲ COURT USE ONLY ▲ |
| **Defendants:**<br>IRONBRIDGE HOMES, LLC, IRONBRIDGE MOUNTAIN COTTAGES, LLC, DIRK GOSDA, individually, SUNRISE CONSTRUCTION, HANSEN CONSTRUCTION, INC., STEVEN A. HANSEN, individually, RICHARD C. HEPWORTH, P.E., individually, STEVE PAWLAK, individually, HEPWORTH-PAWLAK GEOTECHNICAL, INC., STEPHEN PEIGHTAL, individually, S K PEIGHTAL ENGINEERS, LTD, MIKE WOELKE, and LB ROSE RANCH HOMES, LLC | Case Number: 2010CV142<br><br>Div.: C |
| **Attorneys for Plaintiffs:**<br>Scott F. Sullan, #9985<br>Mari K. Perczak, #16288<br>David B. Shaw, #40453<br>BURG \| SIMPSON \| ELDREDGE \| HERSH \| JARDINE PC<br>40 Inverness Drive East<br>Englewood, CO 80112<br>Telephone: 303-792-5595<br>Fax: 303-708-0527<br>Email: mperczak@burgsimpson.com | |
| **SIXTH AMENDED COMPLAINT AND JURY DEMAND** | |

Plaintiffs, Vaughn Counts, Thisha McBride, Charlie Lawson, Sarahliz Lawson, Stephanie Mosher, Steve New, Kori New, Craig Willis, Pamela Willis, The Kornreich 1981 Trust, James Vidakovich Revocable Trust, Gary Gray, Michael Cryan, Brian Alonge, Andre Pontin, Julie Pontin, Patrick M. Nesbitt, David Ice, Lisa Ice, Richard Moore, Daniel Hock, Toni Hock, The Sohrab Amini Trust, J. Christine Amini, Neil Ross, Joseph S. Davis, Kristin F. Davis, Tina Rochowiak, Jamie Prough, Michael Rochowiak, Martin Rochowiak, Chadwick Mickschl and Sarah Mickschl (collectively "Plaintiffs"), through their attorneys, BURG | SIMPSON | ELDREDGE | HERSH | JARDINE PC, submit the following *Sixth Amended Complaint and Jury Demand* against the above named Defendants:

## **GENERAL ALLEGATIONS – CONSTRUCTION DEFECTS**

1. All Plaintiffs except the Pontins (whose home was foreclosed) are the owners of single family residences located at the following addresses:

   a. Vaughan Counts, 000084 White Peaks Lane, Glenwood Springs, Colorado 81601;

   b. Thisha McBride, 000091 Silver Mountain Drive, Glenwood Springs, CO 81601;

   c. Charlie and Sarahliz Lawson, 000126 White Peaks Lane, Glenwood Springs CO 81601;

   d. Stephanie Mosher, 000047 White Peaks Lane, Glenwood Springs, CO 81601;

   e. Steve and Kori New, 000099 White Peaks Lane, Glenwood Springs, CO 81601;

   f. Craig and Pamela Willis, 000092 White Peaks Lane, Glenwood Springs, CO 81601;

   g. The Kornreich 1981 Trust, 000119 White Peaks Lane, Glenwood Springs, CO 81601 **AND** 000026 River Bend, Glenwood Springs, CO 81601;

   h. James Vidakovich Revocable Trust, 000064 White Peaks Lane, Glenwood Springs, CO 81601;

   i. Gary Gray, Michael Cryan and Brian Alonge, 000153 River Bend Way **AND** 000195 River Bend Way, Glenwood, CO 81601;

   j. Patrick M. Nesbitt, 000129 Riverbend Way, Glenwood Springs, CO    81601;

   k. David Ice and Lisa Ice, 000020 Silver Mountain Drive, Glenwood Springs, CO 81601;

   l. Richard Moore, 000015 White Peaks Lane, Glenwood Springs, CO  81601;

    m. Daniel Hock and Toni Hock, 000091 River Bend Way, Glenwood Springs, CO 81601;

    n. The Sohrab Amini Trust, J. Christine Amini and Neil Ross, 000124 River Bend Way, Glenwood Springs, CO 81601;

    o. Joseph S. Davis and Kristin F. Davis, 000136 Silver Mountain Drive, Glenwood Springs, CO 81601;

    p. Tina Rochowiak, Jamie Prough, Michael Rochowiak, and Martin Rochowiak, 0048 Bent Grass, Glenwood Springs, CO 81601; and

    q. Chadwick and Sarah Mickschl, 000691 River Bend Way, Glenwood Springs, CO 81601.

(collectively hereinafter referred to as the "Homes").

    2. Ironbridge Homes, LLC and/or Ironbridge Mountain Cottages, LLC (collectively, "Ironbridge"), at all times material to this *Complaint*, were the developer and general contractor of the Homes and the Homes' "builder-vendor," engaged in the business of the development, construction, marketing, and sale of new homes in Colorado.

    3. Dirk Gosda ("Gosda"), at all times material to this *Complaint*, was a manager, officer, director, agent, and/or employee of Ironbridge who actively participated in, cooperated with, directed, sanctioned, and/or otherwise implemented directly the negligent and otherwise wrongful manner in which the Homes were developed, marketed and sold. At all times material to this *Complaint*, the acts and omissions of Gosda were the acts and omissions of Ironbridge; Gosda is also individually liable for the acts and omissions described herein. Additionally, Dirk Gosda was a Declarant-appointed board member of the Ironbridge HOA who served on the design review committee of the HOA board.

    4. Hansen Construction, Inc. and Sunrise Construction (collectively "HCI") at all times material to this *Complaint* were involved in the construction, design and repair of the Homes as co-general contractors with Ironbridge.

    5. Steven A. Hansen ("Hansen") at all times material to this *Complaint*, was a manager, officer, director, agent, and/or employee of HCI and Ironbridge who actively participated in, cooperated with, directed, sanctioned, and/or otherwise implemented directly the construction and design of the Homes. At all times material to this *Complaint*, the acts and omissions of Hansen were the acts and omissions of HCI and Ironbridge; Hansen is also individually liable for the acts and omissions described herein.

    6. Mike Woelke ("Woelke") at all times material to this *Complaint* was a manager, officer, director, agent, and/or employee of Ironbridge, HCI, and Sunrise Construction who actively participated in, cooperated with, directed, sanctioned, and/or otherwise implemented

directly the negligent and otherwise wrongful manner in which the Homes were developed, marketed, and sold. At all times material to this *Complaint*, the acts and omissions of Woelke were the acts and omissions of HCI, Ironbridge, and Sunrise Construction; Woelke is also individually liable for the acts and omissions described herein.

7.  Hepworth-Pawlak Geotechnical, Inc. ("HP") is a Colorado corporation with its principal place of business located at 10302 South Progress Way, Parker, CO 80134. HP had a duty to provide soils engineering services to Ironbridge in accordance with the reasonable standard of care for such services.

8.  Steve Pawlak ("Pawlak") at all times material to this *Complaint*, was a manager, officer, director and/or employee of HP who actively participated in, cooperated with, directed, sanctioned, and/or otherwise implemented directly the acts and omissions of HP; Pawlak is also individually liable for the acts and omissions described herein.

9.  S K Peightal Engineers, Ltd. ("SKPE"), at all times material to this *Complaint*, was the structural or other design engineer of the Homes. SKPE had a duty to provide structural or other design engineering services to Ironbridge in accordance with the reasonable standard of care for such services.

10. Stephen Peightal ("Peightal") at all times material to this *Complaint* was the structural or other design engineer of the Homes and was at all times material to this *Complaint*, a manager, officer, director and/or employee of SKPE who actively participated in, cooperated with, directed, sanctioned, and/or otherwise implemented directly the acts and omissions of SKPE and is also individually liable for the acts and omissions described herein.

11. LB Rose Ranch, LLC ("Rose Ranch") at all times material to this *Complaint* was the owner and operator of the golf course adjacent to the Homes (the "Golf Course"). In addition, Rose Ranch constructed the site infrastructure for Phase I, which phase included the homes of all Plaintiffs except Mickschl and Rochowiak. This site infrastructure included utilities, road infrastructure, water lines, storm sewers, drainage improvements, utility stubs, landscape installation and irrigation, and bike path installation. Rose Ranch was also the Declarant for the HOA of which the Homes are included. Upon information and belief, Rose Ranch appointed its employees, including, but not limited to, Tom Schmidt, Marguerite Brogan, Eric Foerster, and Mike Staheli, as HOA board members through the period of Declarant control. Through its appointed employee/board members, Rose Ranch controlled the HOA during the period of Declarant control.

12. Upon information and belief, Rose Ranch, Ironbridge, HCI, Hansen, and Gosda, made the decision to retain and continue employing HP, Pawlak, SKPE, and Peightal to perform geotechnical and structural engineering of the Homes and surrounding infrastructure.

13. At the time Ironbridge, Gosda, HCI, Hansen, HP, Rose Ranch, Pawlak, SKPE, Peightal and Woelke (the "Construction Defendants") designed, constructed, built and/or sold

the Homes and infrastructure, they knew or should have known that the filing where the Homes are located is in an area containing soils presenting special or peculiar dangers in the construction of such Homes and inherent in the nature of the construction of such Homes, different in kind from the ordinary risks that commonly confront persons constructing such homes in Colorado. Each of the Construction Defendants knew or should have known of these inherent risks and/or inherent dangers, including the risk that the intrusion of water into such soils and/or other improper construction techniques would imperil the integrity of the Homes; and each knew or should have known that if any home is to be constructed on such soils, such home should be designed and constructed in such a manner as to be able to withstand the risks inherent in such a site. Despite these facts, certain portions of the structural elements of the Homes were not adequately constructed and/or designed resulting from the construction and/or design. Because of this, the Construction Defendants are vicariously liable for the negligent acts and omissions of any subcontractors employed, HP, and/or SKPE.

14. Additionally and separately, at the time the Construction Defendants developed, designed, constructed and/or sold the Homes and infrastructure, each Construction Defendant knew or should have known that the Homes were developed, designed and/or constructed with errors, defects and deficiencies.

15. The Plaintiffs have discovered deficiencies in, actual property damage to, and/or the loss of use of some or all of the Homes, including damage to the foundation, damage to the upper level living areas, and damage to the porches, patios, garages, and driveways. These deficiencies have caused progressive, continuing and worsening damage to the Homes. Such damage has caused, and continues to cause, actual property damage which continues through the present, even though said damage may not have been obvious upon inspection.

16. Specifically, various elements of the Homes suffer from defects or deficiencies including, but not limited to, improper design and construction of foundations, floors, walls, grading, drainage, drainage systems, soil preparation, investigation, engineering, installation of the exterior stucco façade, which have caused, and will continue to cause, resultant and consequential property and other damages.

17. The Plaintiffs have not been able to fully utilize and enjoy the Homes to their fullest extent and have lost the use of parts of the Homes because of the property damage caused by the Homes' deficiencies and because of some or all of the Construction Defendants' failure to effect permanent repairs of this damage. Additionally, the Pontins were unable to refinance their home and it was foreclosed upon at a much lower price than the purchase price.

18. Upon information and belief, these and other errors, deficiencies and defects, for which the Construction Defendants are legally liable, have caused and continue to cause the Plaintiffs actual property damage and/or other losses, and consequential damage to, and the loss of use of, various elements of the Homes, over time from the date those areas were first put to their intended use. These errors, deficiencies and defects also caused the Pontins to lose their home to foreclosure, forcing them to accept a much lower sales price for their home than what

they paid for it. The occurrence of this property damage and/or loss of use was unmanifested and unknown to the Plaintiffs until it progressed to the point it was reasonably detectable to the Plaintiffs.

19. When some or all of the Construction Defendants' and/or their agents' attention was called to the damages and injuries caused by the deficiencies, Plaintiffs were assured that the damages and injuries were not caused by any substantial defect or defects in the Homes, and that all such damages and deficiencies had been or would be completely and permanently repaired by or at the direction of some or all of the Construction Defendants. In doing so, the Construction Defendants concealed the true facts from the Plaintiffs, including making, or causing or permitting to be made, representations to them that the problems with the Homes were, in substance, "nothing to worry about" and that such problems had been or would be completely and permanently repaired.

20. The Construction Defendants' real property improvement repair assessment and analysis was a cause of various defects described elsewhere in this Complaint.

21. The Construction Defendants did perform some repair work to components essential and integral to the function of the Homes; however, the Construction Defendants' defective real property improvement repair construction resulted in and/or failed to properly and permanently remedy the defects described elsewhere in this Complaint.

22. When some or all of the Construction Defendants' and/or their agents' attention was called to problems with the Homes, the Construction Defendants concealed the true facts from the Plaintiffs, including making, or causing or permitting to be made, representations to them that the problems with the Homes were, in substance, "nothing to worry about" and that such problems had been or would be completely and permanently repaired.

23. As a result of the Construction Defendants' acts and/or omissions, Plaintiffs have sustained damages including, for example and without limitation, property damage, diminished value, past and future repair and mitigation expenses, loss of the use of all or portions of the Homes, attorney fees and litigation costs, among other damages, injuries and losses, including damages, injuries or losses paid or incurred by others, which recovery has been assigned or transferred to the Plaintiffs by contract, statute or operation of law.

24. At the time the Construction Defendants developed, improved, designed, constructed, repaired, marketed, and/or sold the Homes and infrastructure, the Construction Defendants, as professional developers, builders and/or contractors developing, designing, constructing and repairing homes and related community improvements in Colorado, knew or should have known that their failure to follow the reasonable standard of care for developers, builders and/or contractors in Colorado could result in significant damage to the Homes, would not result in the Homes being constructed in a good and workmanlike manner, would result in the Homes likely not complying with all applicable codes, and that the Homes would not be fit and sound for their reasonably anticipated use. The Construction Defendants knew or should have known that the reasonable standard of care of developers, builders and/or contractors in

Colorado included the design, development and construction of the Homes and infrastructure in such a way as to avoid the construction defects and deficiencies present at the Homes.

25. At the time the Construction Defendants developed, improved, designed, constructed, repaired, marketed, sold and/or conveyed interests in the Homes and infrastructure, the Construction Defendants knew or should have known that the failure of developers, builders and contractors to comply with a reasonable standard of care in the development and/or construction of improvements to real property constituted adverse material facts and information that ought to have been disclosed to Plaintiffs. It was foreseeable to the Construction Defendants that purchasers of the Homes would be members of a class of people that would be expected to rely upon statements, representations, concealments, and non-disclosures by the Construction Defendants and their agents.

26. Upon information and belief, the Construction Defendants participated in and authorized marketing, advertising, and sales statements that misrepresented the quality, condition, nature, suitability and fitness of the Homes. Specifically, these Construction Defendants represented or caused to be represented that the Homes were constructed to meet the reasonable standard of care for developers and builders in Colorado, were constructed in a good and workmanlike manner, complied with all applicable codes (and would continue to comply with such codes if reasonably maintained), were fit and sound for human use and habitation, were suited for their reasonably anticipated uses and were constructed in accordance with the recognized standards of the industry.

27. Upon information and belief, the Construction Defendants misrepresented the quality, condition, nature, suitability and fitness of the Homes by representing, or causing to be represented, that the Homes were of a particular standard, grade, or quality, when these Construction Defendants knew or should have known that they were not, and/or by failing to disclose the same. Specifically, without limitation, these Construction Defendants represented that:

    a. The Homes were built within the recognized standards of the industry, when, in fact, the Homes were not constructed in compliance with those standards;

    b. The Homes were designed and constructed to meet the reasonable standard of care for developers and builders in Colorado;

    c. The Homes were constructed in a good and workmanlike manner;

    d. The Homes were constructed in compliance with all applicable codes (and would continue to comply with such codes if reasonably maintained);

    e. The Homes were fit and sound for human use and habitation and were suited for their reasonably anticipated use and purpose when, in fact, the Homes, as designed and constructed, do not meet any of these standards; and,

      f.      The Homes were built in compliance with the plans and specifications, when in fact they were not.

28.      Each of the nondisclosed facts, including, without limitation, those set forth above, was an adverse material fact or information that was pertinent to prospective purchasers, including Plaintiffs, when deciding whether or not to purchase the Homes and should have been disclosed prior to sale.

29.      While Ironbridge, HCI, and Sunrise were serving in the multiple capacities of developer, vendor, and builder, Steven Hansen and Dirk Gosda were each actively participating in, cooperating with, directing, sanctioning, and/or otherwise implementing directly some of the negligent and/or otherwise wrongful conduct of the entity Construction Defendants as the entity Construction Defendants' principals, officers, directors, owners, employees and/or agents.

30.      In advertising, marketing and selling the Homes, the Construction Defendants knew or should have known of adverse material facts before the sale of the Homes, including the facts that the Homes were not constructed in a good and workmanlike manner, did not comply with all applicable codes, were not fit and sound for human habitation, and were not suited for their reasonably anticipated uses; but the Construction Defendants failed to disclose these facts to the Plaintiffs.

31.      In advertising, marketing and selling the Homes, the Construction Defendants participated in and authorized advertising statements which negligently misrepresented that the Homes were of a particular standard, grade or quality when the Construction Defendants knew or should have known that they were not.

32.      Contrary to the representations authorized to be made by the Construction Defendants, the Homes were not built in a good and workmanlike manner, were not suited for their reasonably anticipated uses, are in violation of applicable codes, and/or were built in such a condition that they threaten to become uninhabitable.

33.      Upon information and belief, the Plaintiffs reasonably relied on the Construction Defendants' failure to disclose adverse material facts relating to the Homes, or, alternatively, relied upon the substance of the advertising representations and warranties made or authorized to be made by the Construction Defendants in purchasing the Homes.

34.      As a result of the Construction Defendants' acts and/or omissions, individually or through their employees, agents, subcontractors, and/or contractors, and the Construction Defendants' general supervision thereof, the Plaintiffs have sustained and/or will sustain damages including, by way of illustration, actual property damage, consequential loss of use of the value of the Homes, and other direct economic costs, repair costs, and aggravation, inconvenience, annoyance, discomfort, and/or emotional distress.

35. Upon information and belief, subcontractors, pursuant to express or implied agreement were delegated a part of the construction of the Construction Defendants' homes, including the Plaintiffs' Homes, by the Construction Defendants; the Construction Defendants supervised and approved each of the subcontractors' work, which work was intended to be done pursuant to plans and specifications approved by, and the directions of, the Construction Defendants, all such work subject to the inspection and approval of the Construction Defendants. As such, the Construction Defendants and each of their subcontractors including design professionals such as soils and structural engineers consciously and deliberately pursued a concerted and common plan, design, and course of conduct and action, expressly or impliedly, the execution of which common plan or design was done tortiously or otherwise wrongfully, as described elsewhere in this *Complaint*, resulting in the damages alleged herein. The Construction Defendants are jointly and severally liable with each of their subcontractors and with each other for each of their tortious or otherwise wrongful acts. The Construction Defendants and their subcontractors' tortious or otherwise wrongful conduct, described elsewhere in this *Complaint*, arise from circumstances of willful and wanton conduct and was accompanied by a reckless disregard of the rights and feelings of persons like the Plaintiffs.

36. The Plaintiffs have complied with C.R.S. §§ 13-20-801, *et seq.*, by sending a notice to the Construction Defendants and/or their related entities, and this process is complete. By doing so, the Plaintiffs do not intend to waive objections to the applicability of this statute, which the Plaintiffs believe does not apply to their claims, nor the constitutionality of such statute, which the Plaintiffs believe is unconstitutional.

### THE CONSTRUCTION DEFENDANTS' VICARIOUS, IMPUTED AND/OR JOINT LIABILITY

37. In 2004, HCI entered into a "Purchase and Sale Agreement" with Rose Ranch pursuant to which, among other things, (a) Rose Ranch and HCI would have a joint interest in the lots upon which the Homes would eventually be built, (b) Rose Ranch and HCI would share profits and losses from the sales of the Homes, and (c) they would engage in (and eventually performed) joint decision making with respect to design, budgeting, and marketing. HCI then assigned its interest in this joint venture to Ironbridge, which was allowed under the "Purchase and Sale Agreement" to an "entity controlled by Hansen Construction, Inc., Sunrise Company, and/or its principals." Pursuant to Ironbridge's operating agreements, Ironbridge's split share of the profits from the sale of the Homes were then distributed to Gosda and Hansen personally, both of whom were at all times employees of HCI. Based on these facts, HCI, Ironbridge, and Rose Ranch were part of a joint venture and, as such, are jointly and severally liable for any negligent acts and omissions committed in furtherance of that joint venture.

38. Upon information and belief, the various contractors, subcontractors and independent contractors, including design professionals, involved in the design, development and construction of the Homes, and responsible for creating the defectively designed and constructed elements described elsewhere in this Complaint were delegated a part of these design, development and construction activities by the Construction Defendants. On information and

belief, the Construction Defendants supervised and approved each of these contractors' work, which work was intended to be done pursuant to the directions of and plans and specifications approved by the Construction Defendants. Upon information and belief, the Construction Defendants supervised and approved the subcontractors' work, which work was intended to be done pursuant to the directions of and plans and specifications approved by the Construction Defendants.

39. Upon information and belief, the Construction Defendants and their subcontractors and independent contractors consciously and deliberately pursued a concerted and common plan, design, and course of conduct and action, expressly or impliedly, the execution of which common plan or design was done tortiously or otherwise wrongfully, as described elsewhere in this *Complaint*, resulting in the damages alleged herein. All of the Construction Defendants are jointly and severally liable with each other and with each of their subcontractors and independent contractors for one another's tortious or otherwise wrongful acts.

40. The Construction Defendants also are vicariously liable and/or liable as a matter of law for one another's acts and/or omissions and those of their subcontractors and independent contractors.

41. The Construction Defendants wrongfully made misrepresentations, caused the making of such misrepresentations, and/or ratified such misrepresentations to the Plaintiffs in their capacity as actual or potential consumers, and/or wrongfully failed to disclose, caused the failure to disclose, and/or ratified the nondisclosure of material facts, as described elsewhere in this *Complaint*.

42. At all times material to this *Complaint*, each Construction Defendant acted through his, her, or its officers, directors, employees, agents and other authorized representatives and, as such, each is vicariously liable for the conduct of such officers, directors, employees, agents and other authorized representatives.

## LB ROSE RANCH, LLC GENERAL ALLEGATIONS – LATERAL SEEPAGE AND LEAKAGE

43. Rose Ranch at all times material to this *Complaint* was the owner and operator of the golf course adjacent to the Homes (the "Golf Course"). Rose Ranch's construction, operation, maintenance and repair of the Golf Course included a duty of care to ensure that excessive seepage and leakage of water from the Golf Course would not impact the Homes.

44. The Golf Course, owned and operated by Rose Ranch at times material to this Complaint, has severely and negatively impacted the existing ground water conditions around the Homes.

45. Upon information and belief, Rose Ranch's excessively high rate of lawn irrigation of the Golf Course – and with the possibility of leaking or failed retention or other ponds and water features, lawn irrigation pipes and storm sewer lines on the Golf Course – has

resulted in saturation and lateral movement of groundwater which has negatively impacted the Homes.

## JURISDICTION AND VENUE

46. This Court has personal jurisdiction over the Defendants because: (a) they are residents of the State of Colorado; (b) they did business in the State of Colorado at times material to this action; (c) they purposefully availed themselves of the rights and privileges of the State of Colorado at times material to this action; and/or (d) they committed the tortious or other wrongful acts and omissions described in this Complaint, with resulting, injury, damages, loss or other consequences in the State of Colorado. To the extent any Defendant is not a resident of the State of Colorado, this Court has "long-arm" jurisdiction pursuant to C.R.S. § 13-21-124.

47. This Court has subject matter jurisdiction over this matter and the controversies described herein.

48. Venue is proper in Garfield County because: (a) the real property which is the subject of this action is located in Garfield County; (b) as to any out-of-state Defendant, this is the County designated in this Complaint; (c) some of the agreements that are the subject of this action were entered into and performed and/or breached in Garfield County; and/or (d) some of the tortious or other wrongful conduct described elsewhere in this Complaint occurred in and/or had consequences and caused injury, damages or losses in, Garfield County.

49. Plaintiffs have complied or are complying with C.R.S. §§ 13-20-801, *et seq*. By doing so, the Plaintiffs do not waive objections to the applicability or constitutionality of this statute or portions thereof.

50. The Plaintiffs have complied with C.R.C.P. 16.1 by filing a District Court Civil (CV) Cover Sheet for Initial Pleading of Complaint, Counterclaim, Cross-Claim or Third Party Complaint. A Notice to Elect Exclusion from C.R.C.P. 16.1 Simplified Procedure will be filed in the appropriate time frame. Plaintiffs further state that this case is not subject to the simplified procedures for court actions under Rule 16.1 because claims against any party exceed $100,000.

## FIRST CLAIM FOR RELIEF
(**Negligence Resulting in Property Damage – Ironbridge, Gosda, HCI, Hansen, HP, , SKPE, Rose Ranch and Woelke**)

51. The Plaintiffs incorporate the foregoing paragraphs herein.

52. These Defendants each owed the Plaintiffs a duty to cause the Homes to be designed, developed and constructed in a good and workmanlike manner, and to exercise reasonable care in their retention of design professionals, contractors and employees, and in their supervision, inspection, design, construction, installation of materials, and quality control relating to the Homes.

53. These Defendants' duty of care included the duty to ensure that all design, development, construction and repair work was performed in accordance with industry standards, applicable building codes, and/or applicable plans and specifications, or a greater duty of care if reasonably required under the circumstances. Their duty of care also included the duty to ensure that all design, investigation into soils, structural and soils engineering development, construction and repair was performed in a good and workmanlike manner, suited for its reasonably anticipated uses, met appropriate standards of care, and that all repairs were done in a good and workmanlike manner.

54. These Defendants breached these duties of care.

55. The negligence of these Defendants in relation to the design, development, construction and repair of the Homes and infrastructure has damaged the Homes and/or caused their forced sale at a greatly diminished value, causing the Plaintiffs resultant and consequential property and other damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Negligence *Per Se* – Ironbridge, Gosda, HCI, Hansen, HP, SKPE, Rose Ranch, and Woelke)

56. The Plaintiffs incorporate the foregoing paragraphs herein.

57. These Defendants each owed the Plaintiffs a duty to cause the Homes to be developed, designed, constructed, repaired, marketed and/or sold in accordance with applicable statutes, ordinances and building codes, including but not limited to the following:

    a. The Uniform Building Code, as amended and adopted by ordinance by the County of Garfield and/or other applicable agency;

    b. Colorado's Consumer Protection Act, C.R.S. §§ 6-1-105, *et seq.*;

    c. C.R.S. § 6-6.5-101; and

    d. C.R.S. §§ 12-61-801, *et seq.*

58. These Defendants violated these statues, ordinances and building codes by failing to develop, design, investigate, engineer, construct, market, sell and/or repair the Homes in accordance with these statues, ordinances and/or building codes. Additionally, these Defendants failed to provide Plaintiffs with a summary report of the soils at the site and the soils engineering analysis, as well as failing to provide the Plaintiffs with a publication detailing the problems associated with hazardous soils, the building methods to address these problems during construction, and suggestions for care and maintenance to address such problems.

59. These Defendants' violation of these statutes, ordinances and/or building codes damaged the Plaintiffs in an amount to be proven at trial.

60.     One of the purposes of these statutes, ordinances and building codes was to protect against the type of damages sustained by the Plaintiffs.

61.     The Plaintiffs are members of the group of persons these statutes, ordinances and building codes were intended to protect.

62.     These Defendants' violation of these statutes, ordinances and/or building codes constitutes negligence *per se*.

## THIRD CLAIM FOR RELIEF
### (Negligent Repair Resulting in Property Damage – Ironbridge, Gosda, HCI, Hansen, HP, SKPE, and Woelke)

63.     The Plaintiffs incorporate the foregoing paragraphs herein.

64.     These Defendants each owed a duty to the Plaintiffs to cause the Homes to be repaired in a non-negligent manner.

65.     These Defendants breached their duty by failing to cause the Homes to be repaired in a non-negligent manner such that foreseeable damage would be prevented.

66.     These Defendants' negligence has proximately caused damage to the Homes and/or caused their forced sale at a greatly diminished value, causing the Plaintiffs resultant and consequential property and other damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Breach of Implied Warranty Resulting in Property Damage – Ironbridge)

67.     The Plaintiffs incorporate the foregoing paragraphs herein.

68.     As the Homes' vendor, the above described Defendants impliedly warranted all Plaintiffs who were original purchasers that the Homes were built in a good and workmanlike manner, were fit for their reasonably intended use, and would comply with generally acceptable codes, standards and all applicable plans and specifications. These warranties were intended to benefit the Plaintiffs both as a matter of fact and a matter of law.

69.     These Defendants breached these implied warranties.

70.     To the extent these Defendants should ever argue that the Plaintiffs ever waived, or that these Defendants effectively disclaimed, the right to sue on the above-described warranties, such waiver or disclaimer is void under C.R.S. § 13-20-806(7), and/or as violative of public policy and/or was not made sufficiently conspicuous and clear so as to comply with C.R.S. § 6-1-105, and/or was not sufficiently particular, and/or such alleged disclaimer or waiver is unconscionable and/or constitutes a breach of these Defendants' duty of good faith.

71.     These Defendants' breach of their implied warranties has caused damages to the Plaintiffs, including resultant and consequential damages, in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Misrepresentation/Nondisclosure Resulting In Property Damage – Ironbridge, Gosda, HCI, Hansen, HP, SKPE, Rose Ranch and Woelke)

72.     The Plaintiffs incorporate the foregoing paragraphs herein.

73.     These Defendants caused or permitted misrepresentations to be made to the Plaintiffs as more fully set forth elsewhere in this Complaint.

74.     These Defendants knowingly, intentionally, recklessly and/or negligently failed to disclose, caused the failure to disclose, or ratified the non-disclosure of material information from the Plaintiffs, including, without limitation, certain material facts as more fully set forth elsewhere in this Complaint, when these Defendants had a duty to disclose these facts.

75.     In causing or permitting such information to be communicated to the Plaintiffs, these Defendants did so knowing the information was material and that the representations were false or made with reckless disregard as to whether the representations were true or false; furthermore, to the extent the misrepresentations concerned these Defendants' present intent, they intentionally, recklessly and/or negligently misrepresented that present intent.

76.     Each of these Defendants, or the persons whose acts and omissions they ratified, had a duty to cause the disclosure to the Plaintiffs of the true adverse material facts or information in an understandable manner.

77.     Each of these Defendants failed to cause the disclosure of these adverse material facts or information to the Plaintiffs with the intent that the Plaintiffs rely on such information.

78.     This reliance was a cause of physical harm to the Plaintiffs' property and economic losses.

## SIXTH CLAIM FOR RELIEF
### (Colorado Consumer Protection Act Violations Resulting in Property Damage – Ironbridge, Gosda, HCI, Hansen, HP, Rose Ranch, SKPE, and Woelke)

79.     The Plaintiffs incorporate the foregoing paragraphs herein.

80.     These Defendants made, caused to be made, or ratified the misrepresentations and nondisclosures of material facts described elsewhere in this Complaint and otherwise made misleading statements that induced the Plaintiffs to act or refrain from acting, making these representations or nondisclosures knowing them to be untrue or recklessly and willfully making them without regard to the consequences or intending to deceive, such misrepresentations and nondisclosures having the capacity or tendency to deceive.

81.  These Defendants made these misrepresentations and nondisclosures of material fact reasonably expecting that the Plaintiffs would act or refrain from acting in reliance upon the misrepresentations or nondisclosures.

82.  The Plaintiffs reasonably relied upon these misrepresentations and/or nondisclosures to their detriment.

83.  These representations and/or concealments constitute violations of the CCPA, which prohibits these Defendants, in the course of their business, from doing any of the following, among other things:

   a.  Knowingly making a false representation as to the characteristics, uses, or benefits, of goods, services, or property (C.R.S. § 6-1-105(1)(e));

   b.  Representing that goods, services, or property are of a particular standard, quality, or grade, if they knew or should have known that they are of another (C.R.S. § 6-1-105(1)(g));

   c.  Advertising goods, services, or property with intent not to sell them as advertised (C.R.S. § 6-1-105(1)(i));

   d.  Advertising or otherwise representing that goods or services are guaranteed without clearly and conspicuously disclosing the nature and extent of the guarantee, any material conditions or limitations in the guarantee which are imposed by the guarantor, the manner in which the guarantor will perform, and the identity of such guarantor (C.R.S. § 6-1-105(1)(r)); or,

   e.  Failing to disclose material information concerning goods, services, or property, which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into the transaction (C.R.S. § 6-1-105(1)(u)).

84.  These Defendants are liable to the Plaintiffs under the CCPA because:

   a.  They engaged in an unfair or deceptive trade practice(s) as defined by the CCPA, as described above;

   b.  The challenged practices occurred in the course of these Defendants' business, vocation, or occupation;

   c.  The challenged practices significantly impact the public as actual or potential consumers of these Defendants' property or services in that a number of consumers were directly affected by the challenged practices, the consumers were not of the same level of sophistication as were these Defendants and did not have comparable bargaining power, and such conduct by these Defendants has and will

    in the future impact yet other consumers to the extent that these Defendants have developed, sold and/or constructed real estate in Colorado and/or may continue to develop, sell and/or construct real estate in Colorado. Additionally, the misrepresentations and/or nondisclosures described elsewhere in this Complaint also concerned violations of the applicable building code; because such building code was adopted to protect the public's property from property damage and premature deterioration, such misrepresentations and/or nondisclosures involve a matter of public interest and impact the public as a matter of law;

  d. The making of these representations and nondisclosures by these Defendants was bad faith conduct because the conduct was fraudulent, willful, knowing, and/or intentional and falsely misled and caused injury to the Plaintiffs;

  e. The Plaintiffs suffered injury in fact to its legally protected interests due to the challenged practices; and,

  f. Significant damage to the Plaintiffs' property and economic interests resulted, in an amount to be proven at trial.

  85. The Plaintiffs hereby demands as additional damages three times the amount of its actual damages, plus costs and attorney fees, pursuant to C.R.S. § 6-1-113.

## SEVENTH CLAIM FOR RELIEF
**(Negligence of Design Professionals -- Richard C. Hepworth, P.E., Steve Pawlak, Hepworth-Pawlak Geotechnical, Inc., Stephen Peightal, and S K Peightal Engineers, LTD)**

  86. The Plaintiffs incorporate the foregoing paragraphs herein.

  87. These Defendants each owed the Plaintiffs a duty to cause the Homes and surrounding infrastructure to be designed and constructed in a good and workmanlike manner, and to exercise reasonable care in their design, inspection, testing, and investigation relating to the Homes.

  88. These Defendants' duty of care included the duty to ensure that all design, inspections, testing and investigation was performed in accordance with industry standards, applicable building codes, and/or applicable plans and specifications, or a greater duty of care if reasonably required under the circumstances. Their duty of care also included the duty to ensure that all design, investigation into soils, structural and soils engineering development was performed in a good and workmanlike manner, suited for its reasonably anticipated uses, met appropriate standards of care, and that all repairs were done in a good and workmanlike manner.

  89. These Defendants breached these duties of care.

  90. The negligence of these Defendants in relation to the design, inspections, testing and investigation of the Homes and surrounding infrastructure has damaged the Homes, causing

the Plaintiffs resultant and consequential property and other damages in an amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF
### (Negligence for Lateral Seepage – Rose Ranch)

91.     The Plaintiffs incorporate the foregoing paragraphs herein.

92.     Rose Ranch's construction, operation, maintenance and repair of the Golf Course included a duty of care to ensure that excessive seepage and leakage of water from the Golf Course would not impact the Homes.

93.     Rose Ranch breached this duty of care.

94.     Rose Ranch's negligent conduct has damaged the Homes and/or caused their forced sale at a greatly diminished value, causing the Plaintiffs resultant and consequential property and other damages in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – Rose Ranch and Dirk Gosda)

95.     The Plaintiffs incorporate the foregoing paragraphs herein.

96.     From development of the Project, and through construction and turnover, Rose Ranch appointed members of the Ironbridge HOA board.

97.     C.R.S. § 38-33.3-303(2)(a) provides that if appointed by the Declarant, members of an association board are required to exercise their duties with the care required of fiduciaries of the homeowners.

98.     As a Declarant-appointed Board member, Gosda owed fiduciary duties to the Homes' owners.

99.     Rose Ranch, as the Declarant, appointed its employees to serve as Declarant board members during the period of Declarant control.  Such employees included, but are not limited to, Tom Schmidt, Marguerite Brogan, Eric Foerster, and Mike Staheli.  Under the doctrine of respondeat superior, Rose Ranch is vicariously liable for its employees' breaches of their fiduciary duties.

100.    Gosda and Rose Ranch's employees breached their fiduciary duties by, among other things and despite knowing that the soils within the Project consisted of severe hydro-compactive soils, their failure to maintain and repair the infrastructure that may have allowed water to reach and negatively impact the foundations of the Homes; their decision to implement design review guidelines that required the use of irrigation near the Homes' foundations and

discouraged xeroscaping practices throughout the lot; and their failure to fully and reasonably communicate with the homeowners after construction regarding the deficiencies and inadequacies described above so as to allow the homeowners to act upon that information in a timely manner, including the decision to commence litigation.

101.    These breaches of fiduciary duties have damaged the Association in an amount to be proven at trial.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiffs request that judgment enter against all Defendants on its behalf and as applicable to the separate claims made against all Defendants, and that such judgment enter jointly and severally where the Defendants have acted jointly or in concert:

1.    For the Plaintiffs' actual damages, costs of suit, fees of experts, including engineering and construction experts, attorney fees, interest as permitted by law from the date of occurrence to the date of entry of judgment, as well as post-judgment interest until paid;

2.    For the difference in value between the market value of their homes absent the defects and the foreclosure price the Pontins were forced to accept.

3.    For the cost of repairing the Homes to a reasonably good condition, and to a better condition, if that is what was promised or represented by Defendants;

4.    For the cost of the replacement of any defective construction elements, as well as the repair of those portions of the Homes which were damaged by these defective construction elements;

5.    For the costs and expenses incurred for storage charges and cleaning costs incurred as a result of such repairs, if any;

6.    For the reasonable costs of rental or similar housing during the reasonable periods of repair, if any;

7.    For loss of the use of the Homes and all annoyance, discomfort, inconvenience, and aggravation arising from the injury to the Homes and any required investigation and repair efforts;

8.    For specific performance of the promises made by Defendants that remain unfulfilled, and for specific performance of the representations made by Defendants that were false; or, alternatively, for specific restitution and payment to the Plaintiffs in the amount necessary for the Plaintiffs to fund the cost of fulfilling such promises and/or effecting such representations;

9.    For forensic investigation and analysis costs, including engineering fees and inspection and testing costs;

      10.     For treble damages, costs and attorney fees pursuant to C.R.S. § 6-1-113, and for attorney fees and costs as provided for by any applicable statute, law or contract; and,

      11.     For moratory damages.

**THE PLAINTIFFS DEMAND TRIAL BY A JURY OF ALL ISSUES SO TRIABLE**

                   Respectfully submitted,

                   BURG | SIMPSON | ELDREDGE | HERSH | JARDINE PC.

                   s/ David B. Shaw
                   *Original signature on file with Plaintiffs' counsel*
                   Mari K. Perczak, Esq.
                   David B. Shaw, Esq.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 29th day of August, 2014, a true and correct copy of the foregoing *Sixth Amended Complaint and Jury Demand* was filed via Lexis/Nexis to the following:

Peter W. Thomas, Esq.
Jill Teehan Edinger, Esq.
Praxidice Law
Aspen Highlands, 0039 Boomerang Rd. #8130
Aspen, CO  81611
**Co-Counsel for Plaintiffs**

Timothy M. Schulte, Esq.
Andrew S. Ford, Esq.
Abby R. Dvorkin, Esq.
Cardi, Schulte & Ford, LLC
7400 E. Crestline Cir. #210
Greenwood Village, CO  80111
**Attorneys for Richard C. Hepworth, P.E., Steve Pawlak and Hepworth-Pawlak Geotechnical, Inc.**

John R. Riley, Esq.
Montgomery Little & Soran, P.C.
5445 DTC Pkwy, #800
Greenwood Village, CO  80111
**Attorneys for Stephen Peightal and SK Peightal Engineers, Ltd**

Patrick J. Casey, Esq.
Fox Rothschild, LLP
1225 Seventeenth St. #2200 Denver, CO 80202
**Attorneys for Defendants Ironbridge Home, LLC, Dirk Gosda, and Michael Woelke**

Daniel M. Fowler, Esq.
Fowler, Schimberg & Flanagan, P.C.
1640 Grant Street, Suite 300
Denver, CO 80203
**Co-Attorneys for Defendants Hansen Construction, Inc. and Steven A. Hansen**

Kimberly A. Viergever, Esq.
Rietz Law Firm
P.O. Box 5268
114 Village Place #301
Dillon, CO 80435
**Co-Attorneys for Defendants Hansen Construction, Inc. and Steven A. Hansen**

H. Keith Jarvis, Esq.
Jill Curry, Esq.
Markusson, Green & Jarvis, P.C.
950 17th St. #1050
Denver, CO 80202
**Co-Attorneys for Defendants Hansen Construction, Inc. and Steven A. Hansen:**

Lisa Bondy Dunn, Esq.
D. Sean Smith, Esq.
Wood, Smith, Hening & Berman LLP
1805 Shea Center Dr. #150
Highlands Ranch, CO 80129-2253
**Counsel for LB Rose Ranch, LLC**

Mike Woelke
4639 Burgundy Lane
Boulder, CO 80301

Jamin and Tiffany Cook
31838 Silk Vine Dr.
Winchester, CA, 92596

                                                                                 s/ Kimberly D. Benson
                                                                                  Kimberly D. Benson

V:\Homeowners\Ironbridge\Craig\Ironbridge Complaint-6th Amended.doc