Hearing Date and Time: July 22, 2015 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |
------------------------------------------------------------------ x

**REPLY TO THE RESPONSE OF ONTARIO TEACHERS PENSION
PLAN BOARD TO THE PLAN ADMINISTRATOR'S FOUR HUNDRED
NINETY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

WEIL:\95393474\7\58399.0011

## TABLE OF CONTENTS

                                                       **Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

THE SECOND CIRCUIT HAS TAKEN
   A HARD LINE IN APPLYING PIONEER TO LATE CLAIMS ............................................3

   A.     OTPPB's Delay in Filing the Late Claim Was Entirely Within Its Control .......................5

   B.     Overruling the Objection Would Cause
           Substantial Prejudice to the Plan Administrator ...............................................................8

   C.     Length of Delay and Good Faith........................................................................................9

PRIOR OBJECTION ....................................................................................................................10

RESERVATION OF RIGHTS .....................................................................................................10

CONCLUSION.............................................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Alexander's Inc.*,
  176 B.R. 715 (Bankr. S.D.N.Y. 1995) ...............................................................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
  148 B.R. 1002 .....................................................................................................................8

*Enron*, 419 F.3d at 123 ............................................................................................................5, 8, 10

*In re Enron Corp.*,
  No. 01-16034 (AJG), 2003 WL 21756785 (Bankr. S.D.N.Y. 2003) ................................4, 5

*In re Enron Creditors Recovery Corp.*,
  370 B.R. 90 (Bankr. S.D.N.Y. 2007) (Gonzalez, J.) ......................................................4, 5, 8

*In re Garden Ridge Corp.*,
  348 B.R. 642 (Bankr. D. Del. 2006) ...............................................................................5, 8

*In re Hooker Invest., Inc.*,
  937 F.2d 833 (2d Cir. 1991) ...............................................................................................5

*In re Keene Corp.*,
  188 B.R. 903 (Bankr. S.D.N.Y. 1995) ...............................................................................8

*In re Lehman Bros. Holdings, Inc.*,
  433 B.R. 113 (Bankr. S.D.N.Y. 2010), *aff'd.* 445 B.R. 137 (S.D.N.Y. 2011) ...............*passim*

*Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*,
  507 U.S. 380 (1993) ......................................................................................................*passim*

*Silivanch v. Celebrity Cruises, Inc.*,
  333 F.3d 355 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105
  (2004) ................................................................................................................................4

*In re XO Communications,*
  301 B.R. 782 (Bankr. S.D.N.Y. 2003) ...............................................................................8

**Other Authorities**

Bankruptcy Rule 9006(b)(1) ..............................................................................................3

Fed. R. Bankr. P. 9006(b)(1) .............................................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

                                                             **Page(s)**

http://www.lehman-docket.com ................................................................................................2

*Second Supplemental Order Granting Debtors' Forty-Second Omnibus Objection To Claims
(Late-Filed Lehman Program Securities Claims)*,
   entered on July 24, 2012 [ECF No. 29606] ........................................................................10

*Second Supplemental Order Granting Debtors' Forty-Third Omnibus Objection To Claims
(Late-Filed Lehman Program Securities Claims)*,
   entered on July 24, 2012 [ECF No. 29607] ........................................................................10

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator") as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [ECF No. 22737] (the "Plan"), files this reply to the opposition of Ontario Teachers' Pension Plan Board ("OTPPB") [ECF No. 50192] (the "Response") to the *Plan Administrator's Four Hundred Ninety-Ninth Omnibus Objection to Claims (No Liability Claims)* [ECF No. 49382] (the "Objection"), and respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

1. Proof of Claim No. 67738 (the "Late Claim") should be expunged because OTPPB cannot show that its failure to timely file the Late Claim was the result of excusable neglect. The Late Claim is based on a guarantee issued by LBHI (the "LBF Guarantee") in respect of a transaction between OTPPB and Lehman Brothers Finance S.A. ("LBF"), an LBHI affiliate that is subject to a separate insolvency proceeding in Switzerland. OTPPB possessed a copy of the LBF Guarantee prior to the Bar Date, and managed to file a timely claim against LBF in LBF's insolvency proceeding. Moreover, OTPPB was able to file two unrelated proofs of claim in these chapter 11 cases by the Bar Date. OTPPB failed, however, to file a timely claim against LBHI based on the LBF Guarantee. OTPPB has offered no explanation for this, other than "mistake" and "confusion" about the "existence" of the LBF Guarantee (despite clear evidence that it possessed the LBF Guarantee prior to the Bar Date). OTPPB's excuses are inadequate. Any mistake on the part of the OTPPB was entirely within its control and does not constitute excusable neglect. For these reasons, the Late Claim should be expunged.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Objection.

## BACKGROUND

2. On November 1, 2000, OTPPB and LBF entered into that certain ISDA Master Agreement (the "Master Agreement"). *See* Claim No. 67738 ¶ 4. LBHI issued the LBF Guarantee in respect of LBF's obligations under the Master Agreement. *Id.*

3. On July 2, 2009, the Court entered the Bar Date Order, which established (a) September 22, 2009 at 5:00 p.m. as the deadline (the "Bar Date") for filing proofs of claim ("Proofs of Claim") against any of the Chapter 11 Estates in these Chapter 11 Cases; (b) October 22, 2009 at 5:00 p.m. as the deadline (the "Questionnaire Deadline") for filing Derivative Questionnaires and Guarantee Questionnaires in these Chapter 11 Cases; and (c) November 2, 2009 at 5:00 p.m. as the deadline (the "Program Securities Bar Date") for filing proofs of claim ("Program Securities Proofs of Claim") against any of the Chapter 11 Estates arising from securities on the Lehman Programs Securities list. (Bar Date Order at 2, 7-8, and 12.) The Bar Date Order expressly provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order . . . including filling out the Derivative Questionnaire or the Guarantee Questionnaire . . . shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto) . . . ." (*Id.* at 9-10.) A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com and served by mail on all parties known to the Chapter 11 Estates as having potential claims against the Chapter 11 Estates, including OTPPB. *See Corrected Affidavit of Service of Herb Baer* [ECF No. 9395].

4. In compliance with the Bar Date Order, OTPPB timely filed two proofs of claim in these Chapter 11 Cases with respect to other transactions. *See* Torkin Decl. ¶ 12–13; Claim Nos. 27468, 27469. Further, OTPPB inadvertently filed a copy of the LBF Guarantee in support of claim number 27469 against Lehman Brothers Special Financing Inc. ("LBSF"). *See*

2

Torkin Decl. ¶ 16. Thus, despite OTPPB being in possession of the LBF Guarantee and being aware of its existence, OTPPB failed to timely file the Late Claim.

5. On November 20, 2009, 59 days after the Bar Date, OTPPB filed proof of claim 65647 (the "Superseded Claim") against LBHI. On September 13, 2010, the Debtors filed the Fortieth Omnibus Objection to Claims (Late-Filed Claims) [ECF No. 11305] (the "Fortieth Omnibus Objection") which sought to disallow the Superseded Claim. OTPPB opposed the Fortieth Omnibus Objection [ECF No. 12046]. On February 25, 2011, the Debtors withdrew the Fortieth Omnibus Objection without prejudice as to the Superseded Claim. [ECF No. 14672]. On November 18, 2011, OTPPB filed the Late Claim, which amended and superseded the Superseded Claim.

## THE SECOND CIRCUIT HAS TAKEN A HARD LINE IN APPLYING PIONEER TO LATE CLAIMS

6. Bankruptcy Rule 9006(b)(1) provides that "on motion made after the expiration of the specified period [the court may] permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The Supreme Court, in interpreting the term "excusable neglect," has held that the term "neglect" in its ordinary sense means "to give little attention or respect to a matter, or . . . to leave undone or unattended to esp[ecially] through carelessness . . . and encompasses both simple, faultless omissions to act and more commonly, omissions caused by carelessness." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 388 (1993). The determination of whether a claimant's neglect of a deadline is excusable, according to *Pioneer*, is an equitable determination in which a court should consider all relevant circumstances surrounding the claimant's omission, such as: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial

3

proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

7. In applying the *Pioneer* factors to late filed claims, courts in the Second Circuit have "taken a hard line," *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105 (2004), and emphasize the third *Pioneer* factor—"the reason for the delay, including whether it was within the reasonable control of the movant"—in determining whether a party's neglect in timely filing a proof of claim is excusable. *Enron*, 419 F.3d 115, 122 (2d Cir. 2005). The reason for this approach is that the other factors delineated in *Pioneer—*prejudice, length of delay and impact on judicial proceedings, and the claimant's good faith—will typically weigh in favor of the claimant, and the court will therefore focus on the reason for the delay in filing. *Id.* at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d at 368). Parties are, therefore, forbidden from circumventing bar-date requirements unless they can "explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (Gonzalez, J.). In focusing on this factor, the Second Circuit has "cautioned that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule." *Id.* at 101 (internal quotation marks omitted).

8. OTPPB argues that relief from the Bar Date can be granted despite the creditor's carelessness. *See* Resp. ¶¶ 19, 29. In support, OTPPB points to two cases in which the bankruptcy court found that, while the reason for delay factor weighed against the claimant, the claimant had nevertheless established excusable neglect. *See In re Enron Corp.*, No. 01-16034

4

(AJG), 2003 WL 21756785 (Bankr. S.D.N.Y. 2003); *In re Garden Ridge Corp.*, 348 B.R. 642 (Bankr. D. Del. 2006). In both *Enron* and *Garden Ridge*, the bankruptcy courts stated that "[a]ll [*Pioneer*] factors must be considered and balanced; no one factor trumps the others." *Garden Ridge*, 348 B.R. at 645; *see also Enron*, 2003 WL 21756785, at *4. However, each of these bankruptcy court decisions predates, and is directly contradictory to, the Second Circuit's later holding that the third *Pioneer* factor is the most important in determining whether a movant has demonstrated the existence of excusable neglect. *See Enron*, 419 F.3d at 123 ("The four *Pioneer* factors do not carry equal weight; ***the excuse given for the late filing must have the greatest import***. While prejudice, length of delay, and good faith might have more relevance in a close case, the reason-for-delay factor will always be critical to the inquiry.") (emphasis added) (internal quotation marks omitted) ("Enron II"). Given the Second Circuit's later ruling in *Enron II*, OTPPB's reliance on *Enron* and *Garden Ridge* is misplaced and should be disregarded by this Court.

A.  **OTPPB's Delay in Filing the Late Claim Was Entirely Within Its Control**

9.  This Court has recognized that "bar dates are critically important to the administration of a successful chapter 11 case." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010), *aff'd.* 445 B.R. 137 (S.D.N.Y. 2011). In enabling the Plan Administrator to evaluate the universe of claims filed in these Chapter 11 Cases, the Bar Date Order has served "as an integral part of the reorganization process," and has advanced "the efficient administration" of these Chapter 11 Cases. *Lehman Bros.*, 433 B.R. at 119 (Bankr. S.D.N.Y. 2010) (citing *In re Hooker Invest., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991)).

10. In applying the *Pioneer* factors, this Court has followed the Second Circuit's "hard line" approach and found excusable neglect on only two occasions, where

5

"creditors consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims." *Lehman Bros.*, 433 B.R. at 127. This confusion arose due to the uniquely bespoke provisions of the Bar Date Order relating to the Program Securities Bar Date. "In both instances where the Court found excusable neglect the claimants consciously endeavored to comply with the Bar Date Order but were justifiably confused as to the application of the General Bar Date or the Program Securities Bar Date due to the circumstances surrounding the Lehman Program Securities list." *Id.* at n. 31.

11.     For example, in a bench ruling on December 16, 2009, this Court found that Banesco Holdings CA ("<u>Banesco</u>") met the excusable neglect standard when it mistakenly believed that its claim was subject to the November 2, 2009 Program Securities Bar Date rather than the September 22, 2009 Bar Date. Banesco was found to have been justifiably confused about which bar date applied to its securities. The Court found that Banesco's confusion was excusable because the securities held by Banesco were structured securities like the securities subject to the Program Securities Bar Date, and "the Banesco note did not have a CUSIP or ISIN number that would assist in identifying whether it was one of the many thousands of securities subject to the [Securities Program Bar Date]." Dec. 16, 2009 Hr'g Tr. at 136:20-25. The Court, therefore, found that Banesco "acted properly based on its own erroneous beliefs." *Id.* at 137:5-6.

12.     In an effort to position itself like Banesco, OTPPB argues that it failed to timely file the Late Claim because it was confused "regarding the applicability of the Bar Date to" the Late Claim, *see* Resp. ¶ 28. But OTPPB does not specify what ambiguity in Bar Date Order would reasonably lead to such confusion. On the contrary, OTPPB's own admissions

6

demonstrate it fully understood the importance and applicability of the Bar Date Order. *See* Torkin Decl. ¶¶ 12–13. Unlike Banesco, OTPPB does not appear to have been confused by the provisions of the Bar Date Order relating to derivatives contracts, because OTPPB managed to correctly and timely file two other proofs of claims relating to derivatives, together with the requisite Derivative Questionnaires and Guarantee Questionnaires.

13. OTPPB's neglect is the result of its own "mistake[ ] about the existence of the [LBF] Guarantee." *See* Resp. ¶ 12. This mistake was made despite the fact that OTPPB (presumably by accident) attached a copy of the LBF Guarantee to proof of claim number 27469, which was timely filed by OTPPB against LBSF. OTPPB, therefore, clearly possessed a copy of the LBF Guarantee prior to the Bar Date. OTPPB was aware of the Bar Date and capable of filing two other timely claims in these cases, and timely filed a claim against LBF in its insolvency proceeding. OTPPB's failure to file a timely claim based on the LBF Guarantee is, therefore, nothing more than a careless mistake – one that could have easily been averted, and the circumstances of which were plainly in OTPPB's control. This Court has expunged late-filed claims in similar circumstances. *See*, *e.g.*, *Lehman Bros.*, 433 B.R. at 125-6 (expunging late-filed guarantee claims of claimants asserting they were "unaware of their guarantee claims…until after the [Bar Date].") As a result, OTPPB has "fail[ed] to follow the clear dictates of a court rule" and cannot meet the burden of proof for excusable neglect. Rather, OTPPB's failure to timely file the Late Claim is purely the result of "a lack of care or thoughtful attention to the preparation and filing of [its] proof[] of claim." *Lehman Bros.*, 433 B.R. at 127. The third *Pioneer* factor clearly weighs in favor of sustaining the Objection.

7

B.  **Overruling the Objection Would Cause Substantial Prejudice to the Plan Administrator**

14. OTPPB argues that overruling the Objection will not prejudice the Chapter 11 Estates because the approximate $12.6 million asserted value of the Late Claim is nominal in the context of these cases. Resp. ¶ 20.[2] OTPPB's argument ignores this Court's prior rulings and application of this *Pioneer* factor to the unique circumstances of these cases. As the Court previously acknowledged, "allowing any claims to be filed now is highly undesirable from the Debtors' perspective and potentially quite disruptive." *Lehman Bros.*, 433 B.R. at 121. In light of the sheer number of claims filed in these cases, this Court stated:

> The prejudice to the Debtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency. In view of the need to bring finality to the enormous task of resolving those claims that have already been filed in these cases, the Court concludes that strict application of the Bar Date Order is needed to effectively manage the claims process and that permitting additional claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors.

*Id.; see also In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); *In re Drexel Burnham Lambert Grp., Inc.*, 148 B.R. 1002, 1007; *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995). Thus, the asserted amount of the Late Claim is secondary to the broader consequences to the claims process in these cases.

15. The risk of prejudice in these cases must also be analyzed in light of this Court's prior treatment of other similarly situated claims. The Late Claim was filed 59 days after the Bar Date, and was filed late due to mere oversight by OTPPB. In these cases, at least 1,208 other claims were filed 60 or fewer days after the Bar Date. Such claims asserted liquidated

---

[2] OTPPB cites *In re XO Communications,* 301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003) in support of its proposition that there is no danger of prejudice where the claim is "not substantial in relation to the rest of the claims filed against the [d]ebtor's estate." *See* Resp. ¶ 20. It should be noted, however, that this decision, like *Enron* and *Garden Ridge*, also predates the Second Circuit's decision in *Enron II* in which the Second Circuit held that "The four *Pioneer* factors do not carry equal weight."

8

amounts of approximately $404 million and have been expunged on the basis that they were not timely filed.[3] Absent truly excusable circumstances, granting exceptions to parties such as OTPPB, whose failure to timely file the Late Claim is solely attributable to its own inattention, prejudices those claimants whose late claims have already been expunged by this Court for failure to timely file their proofs of claim.

16.    Additionally, such an exception prejudices the thousands of claimants who complied with the Bar Date Order, particularly those claimants whose claims remain disputed and who have relied upon an orderly and predictable claims resolution process as they await the resolution of their claims. For these claimants, the "admission ticket" for having their claims considered by the Plan Administrator has been their strict compliance with the requirements of the Bar Date Order. Permitting additional claimants to enter the fray now would dilute the amount available for those creditors and the limited time and resources of the Plan Administrator – a patently unfair result for claimants who have come to rely upon an orderly claims resolution process in these chapter 11 cases. Accordingly, the Plan Administrator submits that the first *Pioneer* factor – the risk of prejudice to the non-moving party (in this case, the Chapter 11 Estates and all their other creditors) – weighs heavily in favor of sustaining the Objection.

C.    **Length of Delay and Good Faith**

17.    The Plan Administrator does not dispute that the length of delay and whether OTPPB acted in good faith favor OTPPB, just as these factors favored the movants in the Court's prior late-claim decisions in these cases. Nevertheless, the reason for OTPPB's delay is indefensible, and cannot form the basis for the Court to overrule the Objection. Thus, "[t]hese

---

[3] The number of claims filed 60 or fewer days late is actually greater, but certain of these late-filed claims have been expunged for reasons other than their violation of the Bar Date Order; such claims are not included in this count.

two factors are both helpful to [OTPPB] but are insufficient to overcome [OTPPB's] inability to show excusable neglect." *Lehman Bros.*, 433 B.R. 121.[4] Furthermore, this Court has previously expunged claims that were filed with less delay than the Late Claim. *See*, *e.g.*, *id.* at 124 (expunging claim received 29 days late); *id.* at 125 (expunging claim received 42 days late); *Second Supplemental Order Granting Debtors' Forty-Second Omnibus Objection To Claims (Late-Filed Lehman Program Securities Claims)*, entered on July 24, 2012 [ECF No. 29606] (expunging claims received four days late); *Second Supplemental Order Granting Debtors' Forty-Third Omnibus Objection To Claims (Late-Filed Lehman Program Securities Claims)*, entered on July 24, 2012 [ECF No. 29607] (same).

## PRIOR OBJECTION

18.  OTPPB argues that the Plan Administrator's Objection is simply an attempt to "persuade OTPPB to abandon the [Late Claim] in order to avoid expending additional resources repeatedly responding to claims objections," Resp. ¶ 34, and that even if certain of the *Pioneer* factors do not favor OTPPB, the equities nevertheless favor overruling the Objection. *Id.* ¶¶ 19, 29. The Plan Administrator has never engaged in such nuisance tactics. The Plan Administrator filed the Objection because OTPPB's neglected to file its claim against LBHI by the Bar Date and has failed to provide a justifiable excuse for its neglect.

## RESERVATION OF RIGHTS

19.  In the event that the Court denies the Objection with respect to the Late Claim and/or grants the relief requested in the Response, the Plan Administrator reserves the right to object to the validity and amount of the Late Claim. The Plan Administrator reserves the

---

[4] Again, in support of its argument that the length of the delay should excuse its untimely filing, OTPPB cites cases that either pre-date the Second Circuit's decision in *Enron II*, or that are not bound by Second Circuit precedent. *See* Resp. ¶ 25. In light of *Enron II*, the rulings in these cases are not applicable here.

10

right to conduct discovery as to the Late Claim and any matters raised in the Response or the pleadings submitted in support thereof, and to supplement this filing as a result.

## CONCLUSION

20. OTPPB's explanation for its failure to timely file the Late Claim is inadequate. OTPPB timely filed two other claims in these Chapter 11 Cases. It admittedly knew of the existence of the facts giving rise to the Late Claim at least a year prior to the Bar Date, and it provided its counsel with the documents to support the Late Claim. Still, OTPPB failed to timely file the Late Claim.

21. If parties are permitted to claim excusable neglect due to failure to observe the deadlines set forth in the Bar Date Order, despite having knowledge of all of the necessary facts and documents to file a proof of claim in these cases, the purpose and effect of the Bar Date Order will be diminished. The Supreme Court recognized that courts are, "permitted, *where appropriate*, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388, 391 (emphasis added). This is not an appropriate case to make an exception to the clear requirements of the Bar Date Order. OTPPB timely filed two proofs of claim in these chapter 11 cases and, despite being aware of the existence of the LBF Guarantee, OTPPB failed to timely file the Late Claim, purportedly because OTPPB or its authorized representatives forgot to do so. But as a sophisticated entity represented by sophisticated and capable counsel, OTPPB's failure to comply with the Bar Date Order with respect to the Late Claim is inexcusable. Accordingly, the Response should be overruled and the Objection sustained.

22. WHEREFORE for the reasons set forth above and in the Objection, the Plan Administrator respectfully requests that the Court enter an order disallowing and expunging

the Late Claim in its entirety and granting such other and further relief as the Court may deem just and appropriate.

Dated:   July 20, 2015
         New York, New York

     /s/ Jaqueline Marcus
Jaqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*