# **EXHIBIT E**

## PROMISSORY NOTE

$7,650,000.00

January 4, 2007

FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT OF $26,775.00 HAS BEEN AFFIXED TO THE MORTGAGE PURSUANT TO SECTION 201.08, FLORIDA STATUTE.

SBS MIAMI BROADCAST CENTER, INC., a Delaware corporation
2601 S. Bayshore Drive
PH II
Coconut Grove, Florida 33133
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
225 Water Street
Jacksonville, Florida 32202
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of Seven Million, Six Hundred Fifty Thousand and No/100 Dollars ($7,650,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**LOAN AGREEMENT.** This Note is subject to the provisions of that certain Loan Agreement between Bank and Borrower of even date herewith, as the same may be amended or modified from time to time (the "Loan Agreement").

**USE OF PROCEEDS.** Borrower shall use the proceeds of the loan evidenced by this Note to finance the acquisition of the property located at 7007 NW 77th Avenue in Miami, Florida (the "Property").

**SECURITY.** Borrower has granted Bank a security interest in the collateral described in the Loan Documents, including, but not limited to, real and personal property collateral described in that certain Mortgage, Assignment of Rents and Security Agreement of even date herewith, as the same may be amended or modified from time to time (the "Mortgage").

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note during each Interest Period from the date hereof at a rate per annum equal to 1-month LIBOR plus 1.25% ("Interest Rate"). Interest for each Interest Period shall accrue each day during such Interest Period, commencing on and including the first day to but excluding the last day. "Interest Period" means each period commencing on the first day of the calendar month and ending on the first day of the next succeeding calendar month; provided (i) the first Interest Period shall commence on the date hereof and (ii) any Interest Period that would otherwise extend past the maturity date of this Note shall end on the maturity date of this Note. "LIBOR" means, with respect to each Interest Period, the rate for U.S. dollar deposits with a maturity equal to the number of months specified above, as reported on Telerate page 3750 as of 11:00 a.m., London time, on the second London business day before such Interest Period begins, or, in the case of the first Interest Period, the second London business day before the first day of the calendar month during which such Interest Period begins (or if not so reported, then as determined by the Bank from another recognized source or interbank quotation).

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any

swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the lesser of (i) the Interest Rate plus 3% or (ii) the highest rate permitted by law ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEE(S) COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective interest rate exceeding the nominal rate.

**PREPAYMENT ALLOWED.** Subject to any payment obligations or termination fees or payments as may be set forth in any swap agreement (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank (or any of its affiliates), Borrower may prepay the Loan in whole or in part at any time without penalty or premium. Any prepayment in whole or in part shall include accrued interest and all other sums then due under any of the Loan Documents (as defined below). No partial prepayment shall affect the obligation of Borrower to make any payment of principal or interest due under this Note.

**REPAYMENT TERMS/MATURITY.** This Note shall be due and payable as set forth hereinbelow. Commencing on February 5, 2007, this Note shall be payable in consecutive monthly payments of principal in the amounts set forth in Schedule "A" attached hereto, plus accrued interest, on the dates set forth in Schedule "A", until fully paid. In any event, all principal and accrued interest shall be due and payable on January 4, 2017 (the "Maturity Date").

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, the Loan Agreement, the Mortgage, that certain Unconditional Guaranty dated of even date herewith made by SPANISH BROADCASTING SYSTEM, INC., a Delaware corporation d/b/a SPANISH BROADCASTING SYSTEM OF DELAWARE, INC. ("Guarantor") in favor of Bank, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments

due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**GRACE/CURE PERIOD. Grace Period.** The failure of timely payment of the Obligations shall not be a Default until five (5) business days after such payment is due. **Cure Period.** Except as provided below and as to any default under the Senior Credit Facility, any Default, other than non-payment, may be cured within fifteen (15) days after written notice thereof is mailed to Borrower by Bank, or if Borrower, in Bank's reasonable discretion, is diligently pursuing a cure, within sixty (60) days after written notice thereof is mailed to Borrower by Bank. Borrower's right to cure shall be applicable only to curable defaults and shall not apply, without limitation, to Defaults based upon False Warranty or Cessation; Bankruptcy. Also, any Default based on a failure to provide any insurance required under the Loan Documents may only be cured by Borrower within ten (10) days after written notice is mailed to Borrower by Bank. Bank shall not exercise its remedies to collect the Obligations except as Bank reasonably deems necessary to protect its interest in collateral securing the Obligations during a cure period

**DEFAULT.** Subject to the grace and cure periods set forth above, if any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under that certain First Lien Credit Agreement, among Guarantor, as borrower, MERRILL LYNCH, PIERCE FENNER & SMITH, INCORPORATED, as syndication agent, Bank, as documentation agent, LEHMAN COMMERCIAL PAPER INC., as administrative agent and other lenders, as lenders, dated as of June 10, 2005 (as same may be amended, modified, extended or replaced from time to time, the "Senior Credit Facility") that is not waived and continues beyond any applicable grace and cure periods, and under any other loans, contracts or agreements of Borrower or Guarantor with Bank or its affiliates that continues beyond any applicable grace and cure periods. **Cessation; Bankruptcy.** The dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower or Guarantor which is not dismissed or dissolved within forty-five (45) days. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business; (ii) the sale of substantially all of the business or assets of Borrower, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions; (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower enter into any merger or consolidation.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate in all material respects.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank, to an "Eligible Assignee" upon thirty (30) days prior notice to Borrower. For purposes hereof, "Eligible Assignee" shall mean a AA rated commercial bank, finance company, insurance company or other financial institution that is engaged in making, purchasing, holding or otherwise investing in commercial loans and similar extensions of credit in the ordinary course of its business. Upon the occurrence of a Default, or if required by federal regulations, Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Applicable Law; Conflict Between Documents.** This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and interpreted under the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of

this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, with a copy to Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131, Attn: Joel Goldman, Esq., and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Bank's failure to send such courtesy copy to Borrower's counsel shall not in any way be deemed a failure to properly deliver notice to Borrower. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts. **Final Agreement.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**[EXECUTION APPEARS ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

SBS MIAMI BROADCAST CENTER, INC., a Delaware corporation

By: _____ (SEAL)
Joseph A. Garcia, Executive Vice President

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged this day by Joseph A. Garcia, as Executive Vice President of SBS MIAMI BROADCAST CENTER, INC., a Delaware corporation on behalf of the corporation, who is personally known to me or who has produced Drivers License as identification.

Witness my hand and official seal, this 3 day of ~~December, 2006~~ January 2007

_____, Notary Public

Dilean N. Hidalgo
(Printed Name of Notary)

Notary Seal

Notary Public State of Florida
Dilean N Hidalgo
My Commission DD457021
Expires 08/01/2009

Commission Expires: 8/1/2009
Commission Number: DD457021

## SCHEDULE A TO PROMISSORY NOTE

1694913

The Note will be paid in the principal amounts plus accrued interest on the dates as shown below:

| Payment Due Date | Principal Payment Due | Remaining Principal Outstanding (following scheduled principal payment) |
| --- | --- | --- |
| Jan 04, 2007 | 0.00 | 7,650,000.00 |
| Feb 05, 2007 | 25,500.00 | 7,624,500.00 |
| Mar 05, 2007 | 25,500.00 | 7,599,000.00 |
| Apr 04, 2007 | 25,500.00 | 7,573,500.00 |
| May 04, 2007 | 25,500.00 | 7,548,000.00 |
| Jun 04, 2007 | 25,500.00 | 7,522,500.00 |
| Jul 05, 2007 | 25,500.00 | 7,497,000.00 |
| Aug 06, 2007 | 25,500.00 | 7,471,500.00 |
| Sep 04, 2007 | 25,500.00 | 7,446,000.00 |
| Oct 04, 2007 | 25,500.00 | 7,420,500.00 |
| Nov 05, 2007 | 25,500.00 | 7,395,000.00 |
| Dec 04, 2007 | 25,500.00 | 7,369,500.00 |
| Jan 04, 2008 | 25,500.00 | 7,344,000.00 |
| Feb 04, 2008 | 25,500.00 | 7,318,500.00 |
| Mar 04, 2008 | 25,500.00 | 7,293,000.00 |
| Apr 04, 2008 | 25,500.00 | 7,267,500.00 |
| May 05, 2008 | 25,500.00 | 7,242,000.00 |
| Jun 04, 2008 | 25,500.00 | 7,216,500.00 |
| Jul 07, 2008 | 25,500.00 | 7,191,000.00 |
| Aug 04, 2008 | 25,500.00 | 7,165,500.00 |
| Sep 04, 2008 | 25,500.00 | 7,140,000.00 |
| Oct 06, 2008 | 25,500.00 | 7,114,500.00 |
| Nov 04, 2008 | 25,500.00 | 7,089,000.00 |
| Dec 04, 2008 | 25,500.00 | 7,063,500.00 |
| Jan 05, 2009 | 25,500.00 | 7,038,000.00 |
| Feb 04, 2009 | 25,500.00 | 7,012,500.00 |
| Mar 04, 2009 | 25,500.00 | 6,987,000.00 |
| Apr 06, 2009 | 25,500.00 | 6,961,500.00 |
| May 04, 2009 | 25,500.00 | 6,936,000.00 |
| Jun 04, 2009 | 25,500.00 | 6,910,500.00 |

1694913

| Payment Due Date | Principal Payment Due | Remaining Principal Outstanding (following scheduled principal payment) |
|---|---|---|
| Jul 06, 2009 | 25,500.00 | 6,885,000.00 |
| Aug 04, 2009 | 25,500.00 | 6,859,500.00 |
| Sep 04, 2009 | 25,500.00 | 6,834,000.00 |
| Oct 05, 2009 | 25,500.00 | 6,808,500.00 |
| Nov 04, 2009 | 25,500.00 | 6,783,000.00 |
| Dec 04, 2009 | 25,500.00 | 6,757,500.00 |
| Jan 04, 2010 | 25,500.00 | 6,732,000.00 |
| Feb 04, 2010 | 25,500.00 | 6,706,500.00 |
| Mar 04, 2010 | 25,500.00 | 6,681,000.00 |
| Apr 05, 2010 | 25,500.00 | 6,655,500.00 |
| May 04, 2010 | 25,500.00 | 6,630,000.00 |
| Jun 04, 2010 | 25,500.00 | 6,604,500.00 |
| Jul 06, 2010 | 25,500.00 | 6,579,000.00 |
| Aug 04, 2010 | 25,500.00 | 6,553,500.00 |
| Sep 07, 2010 | 25,500.00 | 6,528,000.00 |
| Oct 04, 2010 | 25,500.00 | 6,502,500.00 |
| Nov 04, 2010 | 25,500.00 | 6,477,000.00 |
| Dec 06, 2010 | 25,500.00 | 6,451,500.00 |
| Jan 04, 2011 | 25,500.00 | 6,426,000.00 |
| Feb 04, 2011 | 25,500.00 | 6,400,500.00 |
| Mar 04, 2011 | 25,500.00 | 6,375,000.00 |
| Apr 04, 2011 | 25,500.00 | 6,349,500.00 |
| May 04, 2011 | 25,500.00 | 6,324,000.00 |
| Jun 06, 2011 | 25,500.00 | 6,298,500.00 |
| Jul 05, 2011 | 25,500.00 | 6,273,000.00 |
| Aug 04, 2011 | 25,500.00 | 6,247,500.00 |
| Sep 06, 2011 | 25,500.00 | 6,222,000.00 |
| Oct 04, 2011 | 25,500.00 | 6,196,500.00 |
| Nov 04, 2011 | 25,500.00 | 6,171,000.00 |
| Dec 05, 2011 | 25,500.00 | 6,145,500.00 |

1694913

| Payment Due Date | Principal Payment Due | Remaining Principal Outstanding (following scheduled principal payment) |
|---|---|---|
| Jan 04, 2012 | 25,500.00 | 6,120,000.00 |
| Feb 06, 2012 | 25,500.00 | 6,094,500.00 |
| Mar 05, 2012 | 25,500.00 | 6,069,000.00 |
| Apr 04, 2012 | 25,500.00 | 6,043,500.00 |
| May 04, 2012 | 25,500.00 | 6,018,000.00 |
| Jun 04, 2012 | 25,500.00 | 5,992,500.00 |
| Jul 05, 2012 | 25,500.00 | 5,967,000.00 |
| Aug 06, 2012 | 25,500.00 | 5,941,500.00 |
| Sep 04, 2012 | 25,500.00 | 5,916,000.00 |
| Oct 04, 2012 | 25,500.00 | 5,890,500.00 |
| Nov 05, 2012 | 25,500.00 | 5,865,000.00 |
| Dec 04, 2012 | 25,500.00 | 5,839,500.00 |
| Jan 04, 2013 | 25,500.00 | 5,814,000.00 |
| Feb 04, 2013 | 25,500.00 | 5,788,500.00 |
| Mar 04, 2013 | 25,500.00 | 5,763,000.00 |
| Apr 04, 2013 | 25,500.00 | 5,737,500.00 |
| May 06, 2013 | 25,500.00 | 5,712,000.00 |
| Jun 04, 2013 | 25,500.00 | 5,686,500.00 |
| Jul 05, 2013 | 25,500.00 | 5,661,000.00 |
| Aug 05, 2013 | 25,500.00 | 5,635,500.00 |
| Sep 04, 2013 | 25,500.00 | 5,610,000.00 |
| Oct 04, 2013 | 25,500.00 | 5,584,500.00 |
| Nov 04, 2013 | 25,500.00 | 5,559,000.00 |
| Dec 04, 2013 | 25,500.00 | 5,533,500.00 |
| Jan 06, 2014 | 25,500.00 | 5,508,000.00 |
| Feb 04, 2014 | 25,500.00 | 5,482,500.00 |
| Mar 04, 2014 | 25,500.00 | 5,457,000.00 |
| Apr 04, 2014 | 25,500.00 | 5,431,500.00 |
| May 05, 2014 | 25,500.00 | 5,406,000.00 |
| Jun 04, 2014 | 25,500.00 | 5,380,500.00 |

1694913

| Payment Due Date | Principal Payment Due | Remaining Principal Outstanding (following scheduled principal payment) |
|---|---|---|
| Jul 07, 2014 | 25,500.00 | 5,355,000.00 |
| Aug 04, 2014 | 25,500.00 | 5,329,500.00 |
| Sep 04, 2014 | 25,500.00 | 5,304,000.00 |
| Oct 06, 2014 | 25,500.00 | 5,278,500.00 |
| Nov 04, 2014 | 25,500.00 | 5,253,000.00 |
| Dec 04, 2014 | 25,500.00 | 5,227,500.00 |
| Jan 05, 2015 | 25,500.00 | 5,202,000.00 |
| Feb 04, 2015 | 25,500.00 | 5,176,500.00 |
| Mar 04, 2015 | 25,500.00 | 5,151,000.00 |
| Apr 06, 2015 | 25,500.00 | 5,125,500.00 |
| May 04, 2015 | 25,500.00 | 5,100,000.00 |
| Jun 04, 2015 | 25,500.00 | 5,074,500.00 |
| Jul 06, 2015 | 25,500.00 | 5,049,000.00 |
| Aug 04, 2015 | 25,500.00 | 5,023,500.00 |
| Sep 04, 2015 | 25,500.00 | 4,998,000.00 |
| Oct 05, 2015 | 25,500.00 | 4,972,500.00 |
| Nov 04, 2015 | 25,500.00 | 4,947,000.00 |
| Dec 04, 2015 | 25,500.00 | 4,921,500.00 |
| Jan 04, 2016 | 25,500.00 | 4,896,000.00 |
| Feb 04, 2016 | 25,500.00 | 4,870,500.00 |
| Mar 04, 2016 | 25,500.00 | 4,845,000.00 |
| Apr 04, 2016 | 25,500.00 | 4,819,500.00 |
| May 04, 2016 | 25,500.00 | 4,794,000.00 |
| Jun 06, 2016 | 25,500.00 | 4,768,500.00 |
| Jul 05, 2016 | 25,500.00 | 4,743,000.00 |
| Aug 04, 2016 | 25,500.00 | 4,717,500.00 |
| Sep 06, 2016 | 25,500.00 | 4,692,000.00 |
| Oct 04, 2016 | 25,500.00 | 4,666,500.00 |
| Nov 04, 2016 | 25,500.00 | 4,641,000.00 |
| Dec 05, 2016 | 25,500.00 | 4,615,500.00 |

1694913

| Payment Due Date | Principal Payment Due | Remaining Principal Outstanding (following scheduled principal payment) |
|---|---|---|
| Jan 04, 2017 | 4,615,500.00 | 0.00 |