# EXHIBIT K



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    Adv. Case No. 08-01420-scc

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7    LEHMAN BROTHERS, INC.,

8             Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   SECURITIES INVESTOR PROTECTION CORPORATION, et al.,

11                 Plaintiffs

12           v.

13   LEHMAN BROTHERS, INC.,

14                 Defendant.

15   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16

17                 U.S. Bankruptcy Court

18                 One Bowling Green

19                 New York, New York

20

21                 April 27, 2015

22                 2:03 PM

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

Page 2

1    Hearing re:  Spanish Broadcasting Discovery Conference

2

3    Hearing re:  Doc#29323 Three Hundred Twenty-eighth Omnibus

4    Objection to Claims (No Liability Claim) Solely as to

5    Certain Claim

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Nicole Yawn

Page 3

```
 1    A P P E A R A N C E S :

 2    WEIL, GOTSHAL & MANGES, LLP

 3         Attorneys for the Plan Administrator, Lehman Brothers

 4         1300 Eye Street, NW

 5         Suite 900

 6         Washington DC 20005-3314

 7

 8    BY:  RALPH I. MILLER, ESQ.

 9         DENISE ALVAREZ, ESQ.

10         ALEXANDER NO. WOOLVERTON, ESQ.

11         JACQUELINE MARCUS, ESQ.

12

13    KAYE SCHOLER, LLP

14         Attorney for Spanish Broadcasting

15         250 West 55th Street

16         New York, NY 10019-9710

17

18    BY:  MADLYN GLEICH PRIMOFF, ESQ.

19

20    ALSO APPEARING:

21    JOSEPH OTCHIN

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2              UNIDENTIFIED SPEAKER:  Good to see you, Jess.

 3              THE COURT:  First of all, again, I'm so sorry for

 4     the law firm's loss --

 5              UNIDENTIFIED SPEAKER:  Thank you.

 6              UNIDENTIFIED SPEAKER:  Thank you.

 7              THE COURT:  -- today.  And thank you for coming

 8     down nonetheless.

 9              So I've read everything that you had to say.  And

10     I really want to try to take it above the level of the

11     bickering that is obvious in terms of who's responsible for

12     the delay, because I don't know where we'd go with that.  So

13     I want to try to just have a productive, definitive

14     resolution of the issues with a firm deadline to complete.

15              I don't really know what else to do with the past.

16     We could reiterate it.  It does seem as -- the one thing --

17     so, having said that, now I'll lead into it.

18              I don't understand.  There were agreed search

19     terms.  And then, -- right?  There were agreed search terms,

20     right?

21              UNIDENTIFIED SPEAKER:  Yes, Your Honor.

22              THE COURT:  Yeah.  And then, -- no?

23              MS. PRIMOFF:  My colleague, Mr. Joe Otchin is

24     going to handle the hearing.

25              THE COURT:  Okay.
```

Page 5

1        MS. PRIMOFF:  But I will address it.

2        THE COURT:  At one point, there were agreed terms

3    for the (indiscernible).

4        MS. PRIMOFF:  But the agreement was always subject

5    to a condition that, if the search turned out to be

6    problematic --

7        THE COURT:  Okay.  But then, we get -- okay.  So

8    that's point one.

9        Point two is we get into the length of time.  To

10   me, if you agree on -- tentatively agree on -- search terms

11   on day one, on days seven to ten, you should come back and

12   say those search terms were (indiscernible).  It then

13   appeared that there was a very long period of time that it

14   took to get back and say those search terms were wrong (ph).

15   So that's problematic.

16        UNIDENTIFIED SPEAKER:  Yes.

17        MR. MILLER:  Your Honor, if we could sort of set

18   the table, as you say, a little bit.  Because I think the

19   plan administrator -- well, first of all, I appreciate your

20   time today.

21        For the record, I'm Ralph Miller, from --

22        THE COURT:  Okay.  And I do -- unfortunately, I'm

23   going to have a hard stop in a half an hour.

24        MR. MILLER:  Okay.

25        THE COURT:  Because I have to go up and do

Page 6

1    Judge River's (ph) class at Columbia.

2              MR. MILLER:  Okay.  We can be very quick,

3    Your Honor.  And, to actually move things faster, we pulled

4    together a few extras of what we think are key points about

5    this matter.

6              THE COURT:  Do these folks have it?

7              MR. MILLER:  They're getting copies of them right

8    this minute.

9              THE COURT:  Okay.

10             MR. MILLER:  But these are all things from the

11   record.  Tab 1 of this, Your Honor, is a supplemental brief

12   that outlines what the claims components are because there

13   are different issues here --

14             THE COURT:  Correct.

15             MR. MILLER:  -- on these different components.

16             THE COURT:  Sure.

17             MR. MILLER:  There is a -- the largest component

18   is this $39.6 million --

19             THE COURT:  Right.

20             MR. MILLER:  -- for diminution in investment

21   capital.  And then, there's about 10 million in damages.

22             THE COURT:  In the classic swap settlement amount

23   of damages, right?

24             MR. MILLER:  Yeah.  Well, actually, this is a

25   little more complicated.  They owed money to LBSF, another

1    Lehman debtor.

2            THE COURT:  Right.

3            MR. MILLER:  And they said they would have paid $6

4    million if they'd gotten this $10 million draw, which is

5    what this case is all about in 2008.  And instead, for the

6    next 18 months, they let that ride, and it got to be worth a

7    lot more money.

8            The important point, though, Judge, is they're

9    saying that 6 million of the 10 million is going to be used

10   on the swap and 4 million that was left over was what

11   produced this almost $40 million in loss.  So they have a

12   ten to one multiplier effect that they are seeking here on

13   this not having $4 million for a particular period of time.

14           And to pay it back.  It's not a gift.

15           So, if you look at the next tab, this was --

16           UNIDENTIFIED SPEAKER:  Excuse me.

17           MR. MILLER:  We're looking at these exhibits,

18   which we're now seeing for the first time sitting here.

19   These have nothing to do with the discovery of this

20   (indiscernible).  We --

21           THE COURT:  Okay.  Here's the thing.  Okay?  From

22   the papers, it seemed to me that the fact that SBS is

23   claiming the 39 million in damages creates an expanded scope

24   of discovery.  It's a consequential damage claim.

25           MR. MILLER:  We don't concede that.  We --

1          THE COURT:  Well, it's not a swap termination.

2          MR. MILLER:  Of course not.  No, no, we're not

3     here on --

4          THE COURT:  So I'm not seeking to attach

5     significance -- if the sticking point is characterizing it

6     as consequential damages because you don't want to concede

7     the legal argument about that, then I'll call it something

8     else.

9          MR. MILLER:  Okay.

10          THE COURT:  Okay?

11          MR. MILLER:  Yes.

12          THE COURT:  If that makes it easier.

13          MR. MILLER:  Yes.

14          THE COURT:  I'm not seeking to do that.  The other

15     damages --

16          MR. MILLER:  Yes, okay.

17          THE COURT:  You're seeking other damages.  So you

18     need to produce documents that relate to the other damages.

19          MR. MILLER:  Yes.

20          THE COURT:  Okay.  Right?

21          MR. MILLER:  Yes, Your Honor.  And again, moving

22     very quickly through this, Judge Peck recognized this in the

23     excerpt we had here.

24          And I'm just going to go to the bottom of the

25     highlight here, where he said that if this ever gets to an

Page 9

1   evidentiary hearing, Spanish Broadcasting will have an

2   extraordinarily difficult time proving causation.  And that

3   is the issue about which we are having trouble in discovery

4   is the discovery on the proof of causation.

5           Tab 3, which we can skip quickly, is the 2 prior

6   extensions, which were -- 3 prior -- 2 prior extensions,

7   which were agreed to, Your Honor.  And then, clearly, Tab 4

8   was the declaration of Mr. Garcia, the CFO.  And he explains

9   that this is a diminution by comparison claim.

10          He says that they're going to compare their

11  performance with the performance of their competitors.  And

12  everything that's left over is going to be because they

13  didn't have this $4 million in 2008.

14          Well, gee whiz, there's a lot of good news and a

15  lot of bad news in the financial condition of this company.

16  And that's what we're trying to understand.

17          They made decisions not to buy things.  They made

18  decisions where to spend money.

19          THE COURT:  Sure.

20          MR. MILLER:  They had a lot of money on their

21  books.  For all those reasons, for them to now say well, gee

22  whiz, this is a lot of documents we're having to produce --

23  the point is they've asked for this, Your Honor.  And

24  they're going to get 68 percent already.  This is their

25  third -- Tab 5.

Page 10

1          This particular debtor, Lehman Commercial Paper,

2     is going to distribute over 68 and a fraction percent of

3     claims that are allowed.  When you multiply that by the 39.6

4     million, it's a little over $27 million.  So we're talking

5     about a $27 million cash claim.

6          And what essentially Spanish Broadcasting has said

7     -- go to the next Tab 6 -- is that they got a search term,

8     which is the key search term, by the way, that produced

9     several hundred thousand preliminary hits.  Now, this is

10    before people have looked at them to eliminate the pizza

11    menus and the other junk.

12         And a lot of it is signature lines.

13         THE COURT:  So that's what I want to go to.  I

14    mean, you say that 80 percent is irrelevant.  How do you

15    know that?

16         MR. OTCHIN:  Your Honor, we sampled random

17    documents that were retrieved by the search term, and, based

18    on the sampling of the document that we sampled, 80 percent

19    were irrelevant and 20 percent we determined were

20    responsive.

21         THE COURT:  Okay.  So when did you do that?

22         MR. OTCHIN:  We sampled it -- well, after we had

23    reached agreement on the search term, working with Spanish

24    Broadcasting's outside vendor, you know, it was, you know,

25    within several weeks of that agreement.

1          THE COURT:  Well, if you agreed on the search

2     terms on March 5th -- now it's almost the beginning of May.

3     So I'm just -- I'm not accounting for the time.

4          MR. OTCHIN:  Well, beyond, you know, taking the

5     search terms and, you know, getting to the end point with

6     those documents to review, there was technical issues with

7     respect to what Spanish Broadcasting could process in-house

8     versus, you know, what the vendor had to come in and

9     retrieve -- extract documents and then, you know, run the

10    terms.  And, you know, there was a certain technical

11    process.

12          THE COURT:  But this is where you're going to have

13    to help me.  I mean, if you agree that the search is

14    producing junk, then you have to come back and tell

15    Mr. Miller how you're going to refine the search that will

16    still produce -- to be clear, I agree with the plan

17    administrator about the documents to which they're entitled.

18          You're making a hugely sweeping claim.  You're

19    essentially opening -- you're making a claim that implicates

20    the performance of the bank during a particular period of

21    time.  So you've got to produce documents that show that.

22          It can't be producing what you --

23          MR. OTCHIN:  No, no, we don't disagree with that

24    at all, Your Honor.

25          THE COURT:  Yeah.  So how do you get that?

Page 12

1              MR. OTCHIN:  So, starting at March 5th, which is

2      when we had agreement on the search terms, --

3              THE COURT:  Right.

4              MS. PRIMOFF:  -- they originally thought that in-

5      house they would be able to do this.  We look at the search

6      terms.  They turned out to be incredibly complicated and

7      beyond the capabilities of Spanish Broadcasting's internal

8      people.

9              So then, they retained a vendor to run the

10     searches.  Until the vendor downloaded the stuff from

11     people's email servers as well as the shared drive, that

12     took a bit of time.  They ran the searches.

13             It turned out to be problematic over a course of a

14     whole bunch of terms.  But there's this one term in

15     particular.

16             THE COURT:  What's the term?

17             MS. PRIMOFF:  It's in --

18             UNIDENTIFIED SPEAKER:  It's in this tab,

19     Your Honor.  It's highlighted here.

20             MR. MILLER:  Do you have the letter that we sent

21     to you today?

22             THE COURT:  Yeah.

23             MR. MILLER:  If you have the letter that we sent

24     to you today, --

25             THE COURT:  Right.

Page 13

1          MR. MILLER:  It's in Footnote 1 for page 2.

2          THE COURT:  Okay.  All right.  So --

3          MR. MILLER:  So that term alone has returned in

4     excess of 300,000 documents.

5          THE COURT:  Right.  But here's the part I don't

6     understand.  Just because it returns a large number of

7     documents doesn't mean that it's a bad search term.

8          MS. PRIMOFF:  We agree.  So we sampled the

9     documents.  But 80 percent of the documents are completely

10    non-responsive and irrelevant.  So we worked with the vendor

11    to modify -- to see whether we could develop a modified term

12    that would reduce the number of irrelevant and non-

13    responsive documents.

14          And that modified term is set forth in Footnote 2.

15    And this is what we --

16          THE COURT:  Footnote 2 to what?

17          MS. PRIMOFF:  To the letter that was sent to

18    Your Honor this morning.

19          THE COURT:  Okay.  Modified terms step two?

20          MS. PRIMOFF:  Consistent with two-step search.

21    And even that search retrieves nearly 40 percent non-

22    responsive documents.  But we can't seem to do any better

23    than that.  So we accept that that's what it needs to be.

24          But the difference between 40 percent non-

25    responsive and 80 percent non-responsive is enormous.  We

Page 14

1    think that the term that's set out in Footnote 2 is an

2    appropriate term.

3                MR. MILLER:  The problem with the modified search

4    term, Your Honor, is all the not terms in it.  Not terms

5    remove very valuable things.  If you take out not present

6    (ph) of operations, correct (ph) of operations or

7    consolidated operations or operations manager, you've

8    essentially excluded certain custodians.

9                And the same is true not value or evaluate, not

10   viable, be viable condition or liquid (ph).  I mean, you

11   know, one of those -- if you have nots on all of those

12   terms, you're punching holes in the search that only humans

13   can deal with.

14               I mean, a computer can only do so much.  And,

15   frankly, a 20 percent yield in a $27 million case on a key

16   search term is not junk.  We're not talking five percent or

17   seven percent.  We're talking one out of five.

18               And they're the plaintiff.  And this is their

19   central damage claim.  So we just don't think that this is

20   unreasonable.

21               THE COURT:  I just don't -- you're going to have

22   the burden to prove your damages.

23               MS. PRIMOFF:  Yes.

24               THE COURT:  So do you have a universe of documents

25   -- let's try to back into this.  Do you have a universe of

Page 15

1    documents that you think demonstrates your damages?

2            MS. PRIMOFF:  Yes.

3            THE COURT:  Have you produced those?

4            MS. PRIMOFF:  Yes.

5            THE COURT:  Do you have those, Mr. Miller?

6            MR. MILLER:  We have a production, and the point

7    of whether they show the damages -- what we understand, as I

8    say, that they're doing is a diagnosis by elimination.  They

9    are saying, essentially, you know, we didn't do as well as

10   our peers did.  Therefore, it must have been the $4 million.

11           What we don't have is the -- we don't believe that

12   the documents of all the problems they have.  That's what we

13   have to get.  And that's what we think these search terms

14   are going to be able to help us find.

15           We need to understand what their difficulties

16   were.  We also need to understand how much other cash they

17   had.

18           One important point --

19           THE COURT:  So an alternative theory of causation

20   for the damages that they (indiscernible)?

21           MR. MILLER:  Yes.  And also, Your Honor, they

22   withdrew any damages based on seeking alternate financing.

23   That's the normal direct damages for a failure to fund is so

24   you had funding at five percent.  And you had to go out and

25   get funding at seven percent.  So you got two percent

Page 16

1    increase in damages.  That's fine.

2              They've withdrawn that.  They didn't seek

3    alternate claims (ph).  We think that's because they didn't

4    actually need the financing, because they have a lot of

5    assets.

6              They were not capital starved.  They had other

7    problems.  So it is an alternate theory.

8              Yes, they didn't perform as well as it appears.

9              THE COURT:  Well, but --

10             MS. PRIMOFF:  Well, we did seek alternate

11   financing.  It wasn't available in the marketplace.  And I

12   think, respectfully, that Mr. Miller misstates the law.

13             The law is not that we produce 1 out of 5 -- or,

14   in this case, 20 percent when 80 percent are non-responsive.

15   That's a classic case for caution.  We have demonstrated

16   through sampling that 80 percent of the documents are non-

17   responsive.  You have to weigh the burden.

18             THE COURT:  But you -- but the terms -- I mean, my

19   immediate reaction was to -- if you're going to carve out

20   financial officer (ph), you're going to carve out those

21   terms.  You're --

22             MS. PRIMOFF:  But anytime that somebody has a

23   signature block, Your Honor, that says V.P. of operations,

24   that comes up on the original search.  Okay?

25             THE COURT:  But I don't -- again, this is not -- I

1    am not an expert in VSI discovery.  But it seems to me that

2    there has to be a way of dealing with that problem, isn't

3    there?

4              MR. MILLER:  There is, and Mr. Woolverton is here

5    with us, supervised our review.  When stuff pops up on the

6    screen and contract attorneys look at it and they're very

7    fast at being able to zap documents, because it's obviously

8    trash.

9              But, if it's a long document and it's discussing

10   their financial operations, it needs to go over into a stack

11   and be considered responsive.  That's what we're talking

12   about here.

13             And the fact that I get, again, some higher yield

14   because of signature blocks, I can deal with that.

15             THE COURT:  Understood.  I do not understand how

16   it could be appropriate to carve these terms out.  And you

17   are gutting the production.

18             MS. PRIMOFF:  Well, it's the guidance here,

19   Your Honor.  And, in that balance thing, we're not obligated

20   to, you know, review a document set that's retrieving 80

21   percent non-responsive documents.

22             The idea is to have electronic search terms that

23   lead to responsive documents.  So it's a balancing and

24   questioning is warranted in circumstances like this if they

25   insist on that level.

Page 18

1          (Pause)

2                MR. MILLER:  Your Honor, one other issue that we

3     want to stress --

4                THE COURT:  I mean, what's going on, though, is

5     that -- I mean, in the letter that came in today, you say

6     Spanish Broadcasting has produced 600,000 pages of

7     documents, 3 times more than the 200,000 that Lehman has

8     filed (ph).  That's completely irrelevant.

9                The relative number of the documents that you've

10    produced is completely irrelevant.  But I think that that's

11    part of what's going on is that you feel that the burden is

12    greater on you.  But --

13               MS. PRIMOFF:  No, no, we accept that the burden --

14    the documents are what they are.

15               THE COURT:  You're making an enormous claim with a

16    very -- with a theory that is, by its nature, somewhat

17    broad.  I have no idea of the merits.

18               And the fix for the over-broad seems to me to be

19    it's not a scalpel.  I mean, it's a really big knife.  And I

20    hear you on the balancing, but I don't understand -- then

21    they will then search only the documents --

22               MR. MILLER:  Only what's in step one.  And all not

23    terms recorded (ph).

24               THE COURT:  Right.  So that's narrowing it

25    further.

Page 19

1          MR. MILLER:  Your Honor, you mentioned a scalpel.

2     There is a potential scalpel here.

3          THE COURT:  Well, I'm looking for the scalpel

4     because that's why --

5          MR. MILLER:  Okay.  Well, it's not --

6          THE COURT:  -- (indiscernible).

7          MR. MILLER:  -- something that we've all

8     discussed.  But the scalpel is this consequential damage

9     waiver.  The only documents that are really relevant to

10    that, we think, are documents between these law firms over a

11    so-called payoff letter.  And that would have been the

12    drafts.

13         And we agree in principle to a protocol for

14    exchanging those.  And, if those do not reveal ambiguity in

15    this payoff letter, which they say did away with the

16    consequential damages waiver, then the plan administrator

17    believes it could come to the Court with a letter seeking a

18    summary judgment.

19         If the Court granted summary judgment on that, --

20         THE COURT:  Then we're done.

21         MR. MILLER:  -- then we don't have to look at the

22    650,000 documents.  We don't have to look at any of this

23    stuff, because we think at that point, we're done.  So

24    that's the scalpel, if the Court wants to consider a

25    scalpel.

1          MS. PRIMOFF:  They've made this argument to

2     Judge Peck already in connection with their motion to

3     dismiss.  And they didn't prevail on this argument.  So

4     we're entitled to discovery.

5          MR. MILLER:  No.

6          MS. PRIMOFF:  Let's talk about the discovery.

7     And, if Your Honor believes that we should --

8          THE COURT:  Was there a motion to dismiss?

9          MS. PRIMOFF:  Yes.  And with Judge Peck?

10          THE COURT:  No, no, no.

11          MS. PRIMOFF:  No, no, no.  Judge Peck -- we have

12     judge --

13          THE COURT:  The sufficiency hearing.

14          MS. PRIMOFF:  The sufficiency hearing, which the

15     footnotes in your document said was to be determined under

16     the standard of a motion to dismiss.

17          MR. MILLER:  And, if you look on the second tab,

18     page 1.3 at the bottom, what Judge Peck said was, "I am not

19     going to rule today on the waiver consequential damages,

20     even though I might be able to.  Given the benefit of the

21     doubt fully to Spanish Broadcasting under 12(b)(6) standard,

22     they will get their day in court, or we will deal with this

23     on dispositive motions after discovery."

24          Now, I suggest that we are now at the point after

25     discovery.  If you just get the discovery on this issue,

Page 21

1    that a dispositive motion comes around (ph).  And so, I

2    don't think Judge Peck ruled that it was not a summary

3    judgment.  He ruled he was not going to do it on 12(b)(6),

4    just to be precise.

5             THE COURT:  Thank you.  Sounds good to me.

6             MS. PRIMOFF:  I don't agree with that at all.  He

7    denied their motion.  He said that we were entitled to

8    discovery.  He talked about expert discovery.  And to do

9    this piecemeal, --

10            THE COURT:  No, but expert discovery is about the

11   amount of damages.

12            MS. PRIMOFF:  Yes.

13            MR. MILLER:  Right.

14            THE COURT:  Right.

15            MS. PRIMOFF:  And he ruled that we were entitled

16   to prove our amount of damages.

17            THE COURT:  He didn't.  He said I am not going to

18   rule on the waiver of consequential damages.

19            MS. PRIMOFF:  He was reserving it.

20            THE COURT:  He gave -- he denied the 12(b)(6) and

21   said they will get their day in court, or we'll deal with

22   this on dispositive motions after discovery.  So what

23   Mr. Miller is saying is there has been discovery around the

24   threshold issue.  There's a factual issue.  Was there a

25   waiver, right?

1          And now, he wants -- he's saying we'll put in a

2     summary judgment motion saying there are no issues of

3     material disputed fact around that issue.  That's what this

4     says, that you, on the 12(b)(6), you'd have the benefit of

5     the doubt on what you pleaded.  Right?

6          You survived the motion to dismiss.  You stated

7     the claim.  Discovery.  Next thing that happens is trial or

8     summary judgment.

9          He's saying summary judgment in favor of the plan

10    administrator on the issue that there was a waiver, right?

11          MR. MILLER:  That's right.  And that will take

12    out, essentially, everything that amounts to anything in

13    this case, we believe.  It will take out -- now, I

14    understand they say it's direct damages.  But whether it's

15    direct damages or consequential damages is not a part of

16    discovery.

17          THE COURT:  It doesn't matter if it's -- right.

18          MR. MILLER:  And so, you know -- and, by the way,

19    the fee issue is really a tiny flea on the dog.  There's a

20    fee at issue of 300.

21          They asked for 273,000.  We think it's really

22    13,000.  Whatever it is, we think the fees we can take care

23    of.  They get it.  They would get a refund of any unearned

24    fees that they would try to (indiscernible).

25          There's nothing left if consequential damages is

Page 23

1    resolved, including no need to have discovery on this whole

2    damage area.  No need to have experts, which everybody is

3    retaining and is very expensive.

4          THE COURT:  Judge peck's comments are in the same

5    paragraph.  His beginning thought was on the waiver of

6    consequential damages.  So it wasn't discovery -- it wasn't

7    going to be all dispositive motions after globally

8    discovery.

9          It seems to me the context seems to suggest that

10    it would be dispositive motions on that threshold issue.  So

11    we already did that.

12          MS. PRIMOFF:  But, Your Honor, you know, I'm

13    assuming that the transcript in front of Judge Peck was at

14    least 144 pages, of which we have here 4 selected pages.

15          THE COURT:  If you want to send me the whole

16    transcript and I'll review the whole transcript and --

17          MS. PRIMOFF:  I do have it here.

18          THE COURT:  -- if it changes my mind, --

19          MS. PRIMOFF:  Okay.

20          THE COURT:  -- I'm happy to do that.  But, I mean,

21    this is this chicken and egg problem that we all have in

22    these situations.  And this seems to me one in which I want

23    to at least explore the ability to do -- dispose of it on

24    the summary judgment.

25          And I'm not -- you know, I think that these folks

Page 24

1    -- you're not here as often.  I'm not a big fan of summary

2    judgment motions, because I think most of the time they're

3    not meritorious.

4          But this one seems to me to be a good candidate

5    for it, because then I don't have to go, among other

6    reasons, among other reasons, we don't have to go through

7    all that.

8          He may not convince me.  In which case we're going

9    to be back to fighting over search terms.

10         But it's inconsistent with the general theme of

11   you're dragging your feet, let's go.  Would there not be a

12   suggestion let's do a dispositive motion.  So that's why I'm

13   giving it weight, because I think that it wouldn't be

14   suggested if it was something that was designed to just, you

15   know, delay.

16         They're against delay.  They say you're in favor

17   of delay.

18         MS. PRIMOFF:  You're not in favor of delay.  We're

19   entitled to $50 million (indiscernible).

20         THE COURT:  Sure, you are.

21         MS. PRIMOFF:  Sure, we're entitled to delay.  No,

22   we don't want delay.

23         THE COURT:  (Indiscernible.)

24         MS. PRIMOFF:  We want money.

25         THE COURT:  Right.  But I'm happy to review the

Page 25

1    whole transcript.

2            MS. PRIMOFF:  I mean, the other thing is that

3    typically, there's one summary judgment motion.  So, if

4    they're going to make their one, this should be the one.

5            THE COURT:  Well, there is one -- I mean, there's

6    not always just one.  There's one on the threshold issue of

7    whether or not your legal entitlement was waived.

8            Thank you.

9            MR. MILLER:  There's two copies for you and -- and

10   this is actually -- well, this is the excerpt on this part

11   of the hearing.  There was other things that day, I think.

12            I think, obviously, you're not going to get it

13   now.  But, just for convenience, let me give a copy to him.

14            THE COURT:  Okay.  So, I mean, it's not a written

15   (ph) page (ph).

16            MR. MILLER:  I don't know what --

17            THE COURT:  It's numbered, but that's because

18   there are probably other matters on the calendar.

19            MR. MILLER:  Okay.

20            THE COURT:  Okay?

21            MR. MILLER:  All right.  I know you have to go,

22   Your Honor, but --

23            THE COURT:  I think we ought to do that.  I mean,

24   if there's something in here in the rest of the transcript

25   that you think undercuts what it seems to me Judge Peck

Page 26

1    clearly said -- but just independently, whatever -- even if

2    he didn't say that, it seems to me that, if there's a

3    dispositive motion that says here's what happened between

4    the parties.  We've all had discovery on that.  They waive

5    their claim.

6              MS. PRIMOFF:  This is dated February 2013.  I

7    would like to go back and have the opportunity to review it,

8    Your Honor.

9              THE COURT:  Sure, that's fine.

10             MS. PRIMOFF:  And, if that's how Your Honor wants

11   to proceed, then naturally, we'll proceed as you want.

12             MR. MILLER:  I think that makes sense, Your Honor.

13             THE COURT:  I think that's a better way.  Mind

14   you, I have no idea how it's going to turn out.  I mean,

15   I've expressed my general skepticism about summary judgment

16   motions.  But sometimes they work.  Sometimes they don't.

17             But, in general, without making a decision, I

18   mean, I think that when there's a damage here like this,

19   it's going to be very hard to deal with the discovery issue,

20   because it's so raw (ph).  And one answer might be to, you

21   know, have a group of contract attorneys, whoever it is that

22   you're hiring, you know, wallow (ph) through it.

23             I know it's a lot of documents, but cutting it off

24   this way would seem to me to be not using a scalpel and

25   would create a risk that things were missed.  And I'm not

Page 27

```
 1    doubting the good faith proffer with respect to sampling,

 2    but I'm a sampling skeptic.

 3              You have to demonstrate to me that your sampling

 4    technique -- you know what I'm talking about, don't you,

 5    Mr. Miller?

 6              MR. MILLER:  Yes, I -- we get a lot of sampling

 7    cases.

 8              THE COURT:  Right.  You have to demonstrate to me

 9    that you are validly sampling.

10              I understand statistical sampling is a valid means

11    of taking a smaller segment and predicting.  But, before you

12    say, "Oh, we sampled and look, this is what happened," you

13    have to demonstrate to me that your sampling was valid,

14    right?

15              So I don't get there by simply being told based on

16    our sample, this is no good.  I'm not suggesting that it was

17    anything but in good faith.

18              Do you understand?

19              MS. PRIMOFF:  Yeah, we're not complaining about

20    reviewing a lot of documents.

21              THE COURT:  Yeah.

22              MS. PRIMOFF:  We're complaining about reviewing a

23    lot of --

24              THE COURT:  Valid.  Guess what?  You're

25    complaining about reviewing a lot of --
```

1          MS. PRIMOFF:  Irrelevant documents.  But, if we

2    need to give you better sampling, we'll give you better

3    evidence of sampling.

4          THE COURT:  Okay.  Well, maybe we won't have to

5    get there at all.

6          Now, you don't think that you've got -- there is

7    no cross-motion for summary judgment?

8          MR. MILLER:  Your Honor?

9          THE COURT:  You couldn't --

10         MR. MILLER:  You know, first of all, we rejected

11   the contract.

12         THE COURT:  Right.

13         MR. MILLER:  So we're not saying that we have a

14   defense to whatever damages there are.

15         THE COURT:  Sure, right.

16         MR. MILLER:  We admit liability, if you will.

17         THE COURT:  Yes.

18         MR. MILLER:  We just believe that the only damages

19   are about $15,000 if all she -- all they get is direct

20   damages.

21         THE COURT:  I'm just confirming that we're going

22   to not leave.  And then, I was going to get correspondence

23   saying we'll cross move for summary judgment.  There is no

24   cross-motion for summary judgment.  There is their motion

25   saying, as a matter of law, you're not entitled -- an

Page 29

1    undisputed fact you're not entitled to your greater damage

2    claim, right?

3              MR. MILLER:  That's right, Your Honor.

4              THE COURT:  You're not going to file a motion back

5    that says, as a matter of law, we're entitled to X amount of

6    damages.  If the plan administrator doesn't knock you out

7    entirely, we'll come back to this.

8              MS. PRIMOFF:  Understood.

9              THE COURT:  Yeah, that's right.  That's right.

10             MS. MARCUS:  One more thing I think we need to

11   deal with, Your Honor.

12             THE COURT:  Yes.  Well, the 29th?  No, not even.

13             MS. MARCUS:  The parties have agreed with respect

14   to the discovery items on the waiver.  But I don't think

15   we've actually exchanged those documents yet.  So we should

16   talk about how much time --

17             MR. MILLER:  We need --

18             MS. MARCUS:  (Indiscernible.)

19             MR. MILLER:  We have a deadline for that exchange.

20             MS. MARCUS:  Okay.  And everything else is stayed

21   pending this.

22             UNIDENTIFIED SPEAKER:  Everything else --

23             MS. MARCUS:  Pending this.

24             MR. MILLER:  Okay.

25             What do you think?  Two weeks?  Three weeks?

 1              I mean, what we've agreed, Your Honor, --

 2    actually, we have an exchange of emails.  But what we

 3    proposed was email exchanges externally between these firms

 4    and their attachments so that we can see what drafts were

 5    sent in the payoff letter.  And this is about the payoff

 6    letter, which is --

 7              THE COURT:  Right.

 8              MR. MILLER:  -- the document that they set aside

 9    --

10              THE COURT:  Right.  So there aren't attorney sign

11    (ph) issues?

12              MR. MILLER:  Well, because these have been

13    external emails, Your Honor.  They're all -- we sent them

14    what they sent us.  These are (indiscernible) and produce

15    our sets in the attachments.

16              THE COURT:  Okay.

17              MR. MILLER:  And then, we'll have all the drafts

18    of the payoff letter.  We'll have all the emails back and

19    forth on the payoff letter.

20              THE COURT:  External, not internal?

21              MR. MILLER:  And we -- external, not internal.

22              THE COURT:  Not internal?  Oh, great.

23              MR. MILLER:  And we think that's -- we think we

24    can look at that and determine whether there is a summary

25    judgment or not.

Page 31

1          THE COURT:  Okay.  So that's --

2          MR. MILLER:  And we've looked at our --

3          THE COURT:  -- one step better.

4          MR. MILLER:  Yes.

5          THE COURT:  I mean, you're saying you're not --

6    you think there is, but you're not sure.

7          MR. MILLER:  Yes, Your Honor, until we complete

8    this exchange -- and they said they wanted to -- although

9    they agreed in principle, they felt that that should wait

10   until the general extension and be governed by general

11   (indiscernible) discovery.

12          THE COURT:  I gotcha.

13          MS. PRIMOFF:  But we've agreed.

14          THE COURT:  I gotcha.  Okay.  No, but there's a

15   fine point to what you're saying, which I like, which is

16   that you think that you'll have a summary judgment motion.

17          MR. MILLER:  Yes, Your Honor.

18          THE COURT:  And, in good faith, you're going to

19   review the documents.

20          MR. MILLER:  Yes.

21          THE COURT:  And, after you do that, if there's a

22   --

23          MR. MILLER:  And we'll let the Court know very

24   promptly if we decide there's not.

25          THE COURT:  All right.  And then, we'll have to

Page 32

1    either -- we'll have to agree on this, or we'll have to

2    reconvene.

3            MR. MILLER:  Yes.  But the question, I guess, is

4    can we get agreement on how long we're going to take to

5    exchange those emails.

6            THE COURT:  Right, right.  Do you not --

7            MR. OTCHIN:  I think two weeks we should be able

8    to do it.

9            THE COURT:  Two weeks?

10            MR. MILLER:  I'm saying (indiscernible).

11            THE COURT:  Right.

12            MR. MILLER:  But we can get ours in two weeks,

13    right?  I think we've actually pulled ours, right?

14            Okay?  So that's good.  In two weeks.

15            THE COURT:  Okay.

16            MR. MILLER:  And we can very promptly, within,

17    say, two weeks, advise the Court on when we're going to be

18    seeking.  And we'll send a letter, as we are supposed to, --

19            THE COURT:  Right.

20            MR. MILLER:  -- requesting summary judgment.

21            THE COURT:  So this will -- but this can suffice

22    as a 756(1) conference.  You could just make a formal

23    letter.

24            MR. MILLER:  Okay.

25            THE COURT:  Just letting us know what the schedule

1    is (indiscernible).

2              MR. MILLER:  Okay.

3              THE COURT:  (Indiscernible) a schedule

4    (indiscernible) a hearing (indiscernible).

5              MR. MILLER:  Great.

6              THE COURT:  All right.  So that's a good thing.

7    Okay.

8              MS. PRIMOFF:  Okay.

9              THE COURT:  Okay.

10             MR. MILLER:  Thank you, Your Honor.

11             THE COURT:  Thank you very much.  I'm going to --

12             MR. OTCHIN:  Thank you, Your Honor.

13             THE COURT:  Can I keep all this?

14             MR. MILLER:  Of course.

15             I appreciate you making time for us, Your Honor.

16             THE COURT:  Sure, sure.

17        (Proceedings were concluded at 2:34 PM)

18

19

20

21

22

23

24

25

Page 34

1                    C E R T I F I C A T I O N

2

3   I, Nicole Yawn certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

    _____

8

    Nicole Yawn

9

10

11

    Date:  April 29, 2015

12

13

14

15

16

17

18

19

20

21

    Veritext

22

    330 Old Country Road

23

    Suite 300

24

    Mineola, NY 11501

25

[& - cases]                                                                                    Page 1

**&**

**&** 3:2

**0**

**08-01420** 1:4
**08-13555** 1:3

**1**

**1** 6:11 13:1 16:13
   32:22
**1.3** 20:18
**10** 6:21 7:4,9
**10019-9710** 3:16
**11501** 34:24
**12** 20:21 21:3,20
   22:4
**13,000** 22:22
**1300** 3:4
**144** 23:14
**15,000** 28:19
**18** 7:6

**2**

**2** 9:5,6 13:1,14,16
   14:1
**20** 10:19 14:15
   16:14
**200,000** 18:7
**20005-3314** 3:6
**2008** 7:5 9:13
**2013** 26:6
**2015** 1:21 34:11
**250** 3:15
**27** 1:21 10:4,5 14:15
**273,000** 22:21
**29** 34:11
**29323** 2:3
**29th** 29:12
**2:03** 1:22
**2:34** 33:17

**3**

**3** 9:5,6 18:7
**300** 22:20 34:23
**300,000** 13:4
**330** 34:22
**39** 7:23
**39.6** 6:18 10:3

**4**

**4** 7:10,13 9:7,13
   15:10 23:14
**40** 7:11 13:21,24

**5**

**5** 9:25 16:13
**50** 24:19
**55th** 3:15
**5th** 11:2 12:1

**6**

**6** 7:3,9 10:7 20:21
   21:3,20 22:4
**600,000** 18:6
**650,000** 19:22
**68** 9:24 10:2

**7**

**756** 32:22

**8**

**80** 10:14,18 13:9,25
   16:14,16 17:20

**9**

**900** 3:5

**a**

**ability** 23:23
**able** 12:5 15:14
   17:7 20:20 32:7
**accept** 13:23 18:13
**accounting** 11:3
**accurate** 34:4
**address** 5:1
**administrator** 3:3
   5:19 11:17 19:16
   22:10 29:6
**admit** 28:16
**adv** 1:4
**advise** 32:17
**agree** 5:10,10 11:13
   11:16 13:8 19:13
   21:6 32:1
**agreed** 4:18,19 5:2
   9:7 11:1 29:13 30:1
   31:9,13
**agreement** 5:4
   10:23,25 12:2 32:4

**al** 1:10
**alexander** 3:10
**allowed** 10:3
**alternate** 15:22
   16:3,7,10
**alternative** 15:19
**alvarez** 3:9
**ambiguity** 19:14
**amount** 6:22 21:11
   21:16 29:5
**amounts** 22:12
**answer** 26:20
**anytime** 16:22
**appeared** 5:13
**appearing** 3:20
**appears** 16:8
**appreciate** 5:19
   33:15
**appropriate** 14:2
   17:16
**april** 1:21 34:11
**area** 23:2
**argument** 8:7 20:1
   20:3
**aside** 30:8
**asked** 9:23 22:21
**assets** 16:5
**assuming** 23:13
**attach** 8:4
**attachments** 30:4
   30:15
**attorney** 3:14 30:10
**attorneys** 3:3 17:6
   26:21
**available** 16:11

**b**

**b** 1:23 20:21 21:3
   21:20 22:4
**back** 5:11,14 7:14
   11:14 14:25 24:9
   26:7 29:4,7 30:18
**bad** 9:15 13:7
**balance** 17:19
**balancing** 17:23
   18:20
**bank** 11:20

**bankruptcy** 1:1,17
   1:25
**based** 10:17 15:22
   27:15
**beginning** 11:2 23:5
**believe** 15:11 22:13
   28:18
**believes** 19:17 20:7
**benefit** 20:20 22:4
**better** 13:22 26:13
   28:2,2 31:3
**beyond** 11:4 12:7
**bickering** 4:11
**big** 18:19 24:1
**bit** 5:18 12:12
**block** 16:23
**blocks** 17:14
**books** 9:21
**bottom** 8:24 20:18
**bowling** 1:18
**brief** 6:11
**broad** 18:17,18
**broadcasting** 2:1
   3:14 9:1 10:6 11:7
   18:6 20:21
**broadcasting's**
   10:24 12:7
**brothers** 1:7,13 3:3
**bunch** 12:14
**burden** 14:22 16:17
   18:11,13
**buy** 9:17

**c**

**c** 1:24 3:1 4:1 34:1,1
**calendar** 25:18
**call** 8:7
**called** 19:11
**candidate** 24:4
**capabilities** 12:7
**capital** 6:21 16:6
**care** 22:22
**carve** 16:19,20
   17:16
**case** 1:3,4 7:5 14:15
   16:14,15 22:13 24:8
**cases** 27:7

[cash - documents]                                                                Page 2

**cash**  10:5 15:16
**causation**  9:2,4
  15:19
**caution**  16:15
**central**  14:19
**certain**  2:5 11:10
  14:8
**certify**  34:3
**cfo**  9:8
**changes**  23:18
**chapman**  1:24
**characterizing**  8:5
**chicken**  23:21
**circumstances**
  17:24
**claim**  2:4,5 7:24 9:9
  10:5 11:18,19 14:19
  18:15 22:7 26:5
  29:2
**claiming**  7:23
**claims**  2:4 6:12 10:3
  16:3
**class**  6:1
**classic**  6:22 16:15
**clear**  11:16
**clearly**  9:7 26:1
**colleague**  4:23
**columbia**  6:1
**come**  5:11 11:8,14
  19:17 29:7
**comes**  16:24 21:1
**coming**  4:7
**comments**  23:4
**commercial**  10:1
**company**  9:15
**compare**  9:10
**comparison**  9:9
**competitors**  9:11
**complaining**  27:19
  27:22,25
**complete**  4:14 31:7
**completely**  13:9
  18:8,10
**complicated**  6:25
  12:6
**component**  6:17

**components**  6:12
  6:15
**computer**  14:14
**concede**  7:25 8:6
**concluded**  33:17
**condition**  5:5 9:15
  14:10
**conference**  2:1
  32:22
**confirming**  28:21
**connection**  20:2
**consequential**  7:24
  8:6 19:8,16 20:19
  21:18 22:15,25 23:6
**consider**  19:24
**considered**  17:11
**consistent**  13:20
**consolidated**  14:7
**context**  23:9
**contract**  17:6 26:21
  28:11
**convenience**  25:13
**convince**  24:8
**copies**  6:7 25:9
**copy**  25:13
**corporation**  1:10
**correct**  6:14 14:6
**correspondence**
  28:22
**country**  34:22
**course**  8:2 12:13
  33:14
**court**  1:1,17 4:3,7
  4:22,25 5:2,7,22,25
  6:6,9,14,16,19,22
  7:2,21 8:1,4,10,12
  8:14,17,20 9:19
  10:13,21 11:1,12,25
  12:3,16,22,25 13:2
  13:5,16,19 14:21,24
  15:3,5,19 16:9,18
  16:25 17:15 18:4,15
  18:24 19:3,6,17,19
  19:20,24 20:8,10,13
  20:22 21:5,10,14,17
  21:20,21 22:17 23:4
  23:15,18,20 24:20

  24:23,25 25:5,14,17
  25:20,23 26:9,13
  27:8,21,24 28:4,9
  28:12,15,17,21 29:4
  29:9,12 30:7,10,16
  30:20,22 31:1,3,5
  31:12,14,18,21,23
  31:25 32:6,9,11,15
  32:17,19,21,25 33:3
  33:6,9,11,13,16
**create**  26:25
**creates**  7:23
**cross**  28:7,23,24
**custodians**  14:8
**cutting**  26:23

## d

**d**  4:1
**damage**  7:24 14:19
  19:8 23:2 26:18
  29:1
**damages**  6:21,23
  7:23 8:6,15,17,18
  14:22 15:1,7,20,22
  15:23 16:1 19:16
  20:19 21:11,16,18
  22:14,15,15,25 23:6
  28:14,18,20 29:6
**date**  34:11
**dated**  26:6
**day**  5:11 20:22
  21:21 25:11
**days**  5:11
**dc**  3:6
**deadline**  4:14 29:19
**deal**  14:13 17:14
  20:22 21:21 26:19
  29:11
**dealing**  17:2
**debtor**  1:8 7:1 10:1
**decide**  31:24
**decision**  26:17
**decisions**  9:17,18
**declaration**  9:8
**defendant**  1:14
**defense**  28:14
**definitive**  4:13

**delay**  4:12 24:15,16
  24:17,18,21,22
**demonstrate**  27:3,8
  27:13
**demonstrated**
  16:15
**demonstrates**  15:1
**denied**  21:7,20
**denise**  3:9
**designed**  24:14
**determine**  30:24
**determined**  10:19
  20:15
**develop**  13:11
**diagnosis**  15:8
**difference**  13:24
**different**  6:13,15
**difficult**  9:2
**difficulties**  15:15
**diminution**  6:20 9:9
**direct**  15:23 22:14
  22:15 28:19
**disagree**  11:23
**discovery**  2:1 7:19
  7:24 9:3,4 17:1
  20:4,6,23,25,25
  21:8,8,10,22,23
  22:7,16 23:1,6,8
  26:4,19 29:14 31:11
**discussed**  19:8
**discussing**  17:9
**dismiss**  20:3,8,16
  22:6
**dispose**  23:23
**dispositive**  20:23
  21:1,22 23:7,10
  24:12 26:3
**disputed**  22:3
**distribute**  10:2
**district**  1:2
**doc**  2:3
**document**  10:18
  17:9,20 20:15 30:8
**documents**  8:18
  9:22 10:17 11:6,9
  11:17,21 13:4,7,9,9
  13:13,22 14:24 15:1

15:12 16:16 17:7,21
17:23 18:7,9,14,21
19:9,10,22 26:23
27:20 28:1 29:15
31:19
**doesn't**  13:7
**dog**  22:19
**doing**  15:8
**doubt**  20:21 22:5
**doubting**  27:1
**downloaded**  12:10
**drafts**  19:12 30:4
30:17
**dragging**  24:11
**draw**  7:4
**drive**  12:11

**e**

**e**  1:23,23 3:1,1 4:1,1
34:1
**easier**  8:12
**effect**  7:12
**egg**  23:21
**eighth**  2:3
**either**  32:1
**electronic**  17:22
**eliminate**  10:10
**elimination**  15:8
**email**  12:11 30:3
**emails**  30:2,13,18
32:5
**enormous**  13:25
18:15
**entirely**  29:7
**entitled**  11:17 20:4
21:7,15 24:19,21
28:25 29:1,5
**entitlement**  25:7
**esq**  3:8,9,10,11,18
**essentially**  10:6
11:19 14:8 15:9
22:12
**et**  1:10
**evaluate**  14:9
**everybody**  23:2
**evidence**  28:3
**evidentiary**  9:1

**excerpt**  8:23 25:10
**excess**  13:4
**exchange**  29:19
30:2 31:8 32:5
**exchanged**  29:15
**exchanges**  30:3
**exchanging**  19:14
**excluded**  14:8
**excuse**  7:16
**exhibits**  7:17
**expanded**  7:23
**expensive**  23:3
**expert**  17:1 21:8,10
**experts**  23:2
**explains**  9:8
**explore**  23:23
**expressed**  26:15
**extension**  31:10
**extensions**  9:6,6
**external**  30:13,20
30:21
**externally**  30:3
**extract**  11:9
**extraordinarily**  9:2
**extras**  6:4
**eye**  3:4

**f**

**f**  1:23 34:1
**fact**  7:22 17:13 22:3
29:1
**factual**  21:24
**failure**  15:23
**faith**  27:1,17 31:18
**fan**  24:1
**fast**  17:7
**faster**  6:3
**favor**  22:9 24:16,18
**february**  26:6
**fee**  22:19,20
**feel**  18:11
**fees**  22:22,24
**feet**  24:11
**felt**  31:9
**fighting**  24:9
**file**  29:4
**filed**  18:8

**financial**  9:15 16:20
17:10
**financing**  15:22
16:4,11
**find**  15:14
**fine**  16:1 26:9 31:15
**firm**  4:14
**firm's**  4:4
**firms**  19:10 30:3
**first**  4:3 5:19 7:18
28:10
**five**  14:16,17 15:24
**fix**  18:18
**flea**  22:19
**folks**  6:6 23:25
**footnote**  13:1,14,16
14:1
**footnotes**  20:15
**foregoing**  34:3
**formal**  32:22
**forth**  13:14 30:19
**fraction**  10:2
**frankly**  14:15
**front**  23:13
**fully**  20:21
**fund**  15:23
**funding**  15:24,25
**further**  18:25

**g**

**g**  4:1
**garcia**  9:8
**gee**  9:14,21
**general**  24:10 26:15
26:17 31:10,10
**getting**  6:7 11:5
**gift**  7:14
**give**  25:13 28:2,2
**given**  20:20
**giving**  24:13
**gleich**  3:18
**globally**  23:7
**go**  4:12 5:25 8:24
10:7,13 15:24 17:10
24:5,6,11 25:21
26:7
**going**  4:24 5:23 7:9
8:24 9:10,12,24

10:2 11:12,15 14:21
15:14 16:19,20 18:4
18:11 20:19 21:3,17
23:7 24:8 25:4,12
26:14,19 28:21,22
29:4 31:18 32:4,17
33:11
**good**  4:2 9:14 21:5
24:4 27:1,16,17
31:18 32:14 33:6
**gotcha**  31:12,14
**gotshal**  3:2
**gotten**  7:4
**governed**  31:10
**granted**  19:19
**great**  30:22 33:5
**greater**  18:12 29:1
**green**  1:18
**group**  26:21
**guess**  27:24 32:3
**guidance**  17:18
**gutting**  17:17

**h**

**half**  5:23
**handle**  4:24
**happened**  26:3
27:12
**happens**  22:7
**happy**  23:20 24:25
**hard**  5:23 26:19
**hear**  18:20
**hearing**  2:1,3 4:24
9:1 20:13,14 25:11
33:4
**help**  11:13 15:14
**higher**  17:13
**highlight**  8:25
**highlighted**  12:19
**hiring**  26:22
**hits**  10:9
**holes**  14:12
**hon**  1:24
**honor**  4:21 5:17 6:3
6:11 8:21 9:7,23
10:16 11:24 12:19
13:18 14:4 15:21
16:23 17:19 18:2

19:1 20:7 23:12
25:22 26:8,10,12
28:8 29:3,11 30:1
30:13 31:7,17 33:10
33:12,15
**hour**  5:23
**house**  11:7 12:5
**hugely**  11:18
**humans**  14:12
**hundred**  2:3 10:9

### i

**idea**  17:22 18:17
26:14
**immediate**  16:19
**implicates**  11:19
**important**  7:8
15:18
**including**  23:1
**inconsistent**  24:10
**increase**  16:1
**incredibly**  12:6
**independently**  26:1
**indiscernible**  5:3,12
7:20 15:20 19:6
22:24 24:19,23
29:18 30:14 31:11
32:10 33:1,3,4,4
**insist**  17:25
**internal**  12:7 30:20
30:21,22
**investment**  6:20
**investor**  1:10
**irrelevant**  10:14,19
13:10,12 18:8,10
28:1
**issue**  9:3 18:2 20:25
21:24,24 22:3,10,19
22:20 23:10 25:6
26:19
**issues**  4:14 6:13
11:6 22:2 30:11
**items**  29:14

### j

**jacqueline**  3:11
**jess**  4:2

**joe**  4:23
**joseph**  3:21
**judge**  1:25 6:1 7:8
8:22 20:2,9,11,12
20:18 21:2 23:4,13
25:25
**judgment**  19:18,19
21:3 22:2,8,9 23:24
24:2 25:3 26:15
28:7,23,24 30:25
31:16 32:20
**junk**  10:11 11:14
14:16

### k

**kaye**  3:13
**keep**  33:13
**key**  6:4 10:8 14:15
**knife**  18:19
**knock**  29:6
**know**  4:12,15 10:15
10:24,24 11:4,5,8,9
11:10 14:11 15:9
17:20 22:18 23:12
23:25 24:15 25:16
25:21 26:21,22,23
27:4 28:10 31:23
32:25

### l

**large**  13:6
**largest**  6:17
**law**  4:4 16:12,13
19:10 28:25 29:5
**lbsf**  6:25
**lead**  4:17 17:23
**leave**  28:22
**left**  7:10 9:12 22:25
**legal**  8:7 25:7
**lehman**  1:7,13 3:3
7:1 10:1 18:7
**length**  5:9
**letter**  12:20,23
13:17 18:5 19:11,15
19:17 30:5,6,18,19
32:18,23
**letting**  32:25

**level**  4:10 17:25
**liability**  2:4 28:16
**lines**  10:12
**liquid**  14:10
**little**  5:18 6:25 10:4
**llp**  3:2,13
**long**  5:13 17:9 32:4
**look**  7:15 12:5 17:6
19:21,22 20:17
27:12 30:24
**looked**  10:10 31:2
**looking**  7:17 19:3
**loss**  4:4 7:11
**lot**  7:7 9:14,15,20
9:22 10:12 16:4
26:23 27:6,20,23,25

### m

**madlyn**  3:18
**making**  11:18,19
18:15 26:17 33:15
**manager**  14:7
**manges**  3:2
**march**  11:2 12:1
**marcus**  3:11 29:10
29:13,18,20,23
**marketplace**  16:11
**material**  22:3
**matter**  1:6 6:5
22:17 28:25 29:5
**matters**  25:18
**mean**  10:14 11:13
13:7 14:10,14 16:18
18:4,5,19 23:20
25:2,5,14,23 26:14
26:18 30:1 31:5
**means**  27:10
**mentioned**  19:1
**menus**  10:11
**meritorious**  24:3
**merits**  18:17
**miller**  3:8 5:17,21
5:24 6:2,7,10,15,17
6:20,24 7:3,17,25
8:2,9,11,13,16,19
8:21 9:20 11:15
12:20,23 13:1,3
14:3 15:5,6,21

16:12 17:4 18:2,22
19:1,5,7,21 20:5,17
21:13,23 22:11,18
25:9,16,19,21 26:12
27:5,6 28:8,10,13
28:16,18 29:3,17,19
29:24 30:8,12,17,21
31:20,23 32:3,10,12
32:16,20,24 33:2,5
33:10,14
**million**  6:18,21 7:4
7:4,9,9,10,11,13,23
9:13 10:4,4,5 14:15
15:10 24:19
**mind**  23:18 26:13
**mineola**  34:24
**minute**  6:8
**missed**  26:25
**misstates**  16:12
**modified**  13:11,14
13:19 14:3
**modify**  13:11
**money**  6:25 7:7
9:18,20 24:24
**months**  7:6
**morning**  13:18
**motion**  20:2,8,16
21:1,7 22:2,6 24:12
25:3 26:3 28:7,24
28:24 29:4 31:16
**motions**  20:23
21:22 23:7,10 24:2
26:16
**move**  6:3 28:23
**moving**  8:21
**multiplier**  7:12
**multiply**  10:3

### n

**n**  3:1 4:1 34:1
**narrowing**  18:24
**naturally**  26:11
**nature**  18:16
**nearly**  13:21
**need**  8:18 15:15,16
16:4 23:1,2 28:2
29:10,17

**[needs - reserving]**                                                                 Page 5

**needs** 13:23 17:10
**new** 1:2,19,19 3:16
**news** 9:14,15
**nicole** 2:25 34:3,8
**non** 13:10,12,21,24
  13:25 16:14,16
  17:21
**normal** 15:23
**nots** 14:11
**number** 13:6,12
  18:9
**numbered** 25:17
**nw** 3:4
**ny** 3:16 34:24

**o**

**o** 1:23 4:1 34:1
**objection** 2:4
**obligated** 17:19
**obvious** 4:11
**obviously** 17:7
  25:12
**officer** 16:20
**oh** 27:12 30:22
**okay** 4:25 5:7,7,22
  5:24 6:2,9 7:21,21
  8:9,10,16,20 10:21
  13:2,19 16:24 19:5
  23:19 25:14,19,20
  28:4 29:20,24 30:16
  31:1,14 32:14,15,24
  33:2,7,8,9
**old** 34:22
**omnibus** 2:3
**opening** 11:19
**operations** 14:6,6,7
  14:7 16:23 17:10
**opportunity** 26:7
**original** 16:24
**originally** 12:4
**otchin** 3:21 4:23
  10:16,22 11:4,23
  12:1 32:7 33:12
**ought** 25:23
**outlines** 6:12
**outside** 10:24
**owed** 6:25

**p**

**p** 3:1,1 4:1
**page** 13:1 20:18
  25:15
**pages** 18:6 23:14,14
**paid** 7:3
**paper** 10:1
**papers** 7:22
**paragraph** 23:5
**part** 13:5 18:11
  22:15 25:10
**particular** 7:13
  10:1 11:20 12:15
**parties** 26:4 29:13
**pause** 18:1
**pay** 7:14
**payoff** 19:11,15
  30:5,5,18,19
**peck** 8:22 20:2,9,11
  20:18 21:2 23:13
  25:25
**peck's** 23:4
**peers** 15:10
**pending** 29:21,23
**people** 10:10 12:8
**people's** 12:11
**percent** 9:24 10:2
  10:14,18,19 13:9,21
  13:24,25 14:15,16
  14:17 15:24,25,25
  16:14,14,16 17:21
**perform** 16:8
**performance** 9:11
  9:11 11:20
**period** 5:13 7:13
  11:20
**ph** 5:14 6:1 14:6,6
  14:10 16:3,20 18:8
  18:23 21:1 25:15,15
  26:20,22 30:11
**piecemeal** 21:9
**pizza** 10:10
**plaintiff** 14:18
**plaintiffs** 1:11
**plan** 3:3 5:19 11:16
  19:16 22:9 29:6

**pleaded** 22:5
**pm** 1:22 33:17
**point** 5:2,8,9 7:8 8:5
  9:23 11:5 15:6,18
  19:23 20:24 31:15
**points** 6:4
**pops** 17:5
**potential** 19:2
**precise** 21:4
**predicting** 27:11
**preliminary** 10:9
**present** 14:5
**prevail** 20:3
**primoff** 3:18 4:23
  5:1,4 12:4,17 13:8
  13:17,20 14:23 15:2
  15:4 16:10,22 17:18
  18:13 20:1,6,9,11
  20:14 21:6,12,15,19
  23:12,17,19 24:18
  24:21,24 25:2 26:6
  26:10 27:19,22 28:1
  29:8 31:13 33:8
**principle** 19:13
  31:9
**prior** 9:5,6,6
**probably** 25:18
**problem** 14:3 17:2
  23:21
**problematic** 5:6,15
  12:13
**problems** 15:12
  16:7
**proceed** 26:11,11
**proceedings** 33:17
  34:4
**process** 11:7,11
**produce** 8:18 9:22
  11:16,21 16:13
  30:14
**produced** 7:11 10:8
  15:3 18:6,10
**producing** 11:14,22
**production** 15:6
  17:17
**productive** 4:13

**proffer** 27:1
**promptly** 31:24
  32:16
**proof** 9:4
**proposed** 30:3
**protection** 1:10
**protocol** 19:13
**prove** 14:22 21:16
**proving** 9:2
**pulled** 6:3 32:13
**punching** 14:12
**put** 22:1

**q**

**question** 32:3
**questioning** 17:24
**quick** 6:2
**quickly** 8:22 9:5

**r**

**r** 1:23 3:1 4:1 34:1
**ralph** 3:8 5:21
**ran** 12:12
**random** 10:16
**raw** 26:20
**reached** 10:23
**reaction** 16:19
**read** 4:9
**really** 4:10,15 18:19
  19:9 22:19,21
**reasons** 9:21 24:6,6
**recognized** 8:22
**reconvene** 32:2
**record** 5:21 6:11
  34:4
**recorded** 18:23
**reduce** 13:12
**refine** 11:15
**refund** 22:23
**reiterate** 4:16
**rejected** 28:10
**relate** 8:18
**relative** 18:9
**relevant** 19:9
**remove** 14:5
**requesting** 32:20
**reserving** 21:19

resolution  4:14
resolved  23:1
respect  11:7 27:1
  29:13
respectfully  16:12
responsible  4:11
responsive  10:20
  13:10,13,22,25,25
  16:14,17 17:11,21
  17:23
rest  25:24
retained  12:9
retaining  23:3
retrieve  11:9
retrieved  10:17
retrieves  13:21
retrieving  17:20
returned  13:3
returns  13:6
reveal  19:14
review  11:6 17:5,20
  23:16 24:25 26:7
  31:19
reviewing  27:20,22
  27:25
ride  7:6
right  4:19,20 6:7,19
  6:23 7:2 8:20 12:3
  12:25 13:2,5 18:24
  21:13,14,25 22:5,10
  22:11,17 24:25
  25:21 27:8,14 28:12
  28:15 29:2,3,9,9
  30:7,10 31:25 32:6
  32:6,11,13,13,19
  33:6
risk  26:25
river's  6:1
road  34:22
rule  20:19 21:18
ruled  21:2,3,15
run  11:9 12:9

**s**

s  3:1 4:1
sample  27:16
sampled  10:16,18
  10:22 13:8 27:12

sampling  10:18
  16:16 27:1,2,3,6,9
  27:10,13 28:2,3
saying  7:9 15:9
  21:23 22:1,2,9
  28:13,23,25 31:5,15
  32:10
says  9:10 16:23
  22:4 26:3 29:5
sbs  7:22
scalpel  18:19 19:1,2
  19:3,8,24,25 26:24
scc  1:3,4
schedule  32:25 33:3
scholer  3:13
scope  7:23
screen  17:6
search  4:18,19 5:5
  5:10,12,14 10:7,8
  10:17,23 11:1,5,13
  11:15 12:2,5 13:7
  13:20,21 14:3,12,16
  15:13 16:24 17:22
  18:21 24:9
searches  12:10,12
second  20:17
securities  1:10
see  4:2 13:11 30:4
seeing  7:18
seek  16:2,10
seeking  7:12 8:4,14
  8:17 15:22 19:17
  32:18
segment  27:11
selected  23:14
send  23:15 32:18
sense  26:12
sent  12:20,23 13:17
  30:5,13,14
servers  12:11
set  5:17 13:14 14:1
  17:20 30:8
sets  30:15
settlement  6:22
seven  5:11 14:17
  15:25

shared  12:11
shelley  1:24
show  11:21 15:7
sign  30:10
signature  10:12
  16:23 17:14
significance  8:5
simply  27:15
sitting  7:18
situations  23:22
skeptic  27:2
skepticism  26:15
skip  9:5
smaller  27:11
solely  2:4
somebody  16:22
somewhat  18:16
sorry  4:3
sort  5:17
sounds  21:5
southern  1:2
spanish  2:1 3:14 9:1
  10:6,23 11:7 12:7
  18:6 20:21
speaker  4:2,5,6,21
  5:16 7:16 12:18
  29:22
spend  9:18
stack  17:10
standard  20:16,21
starting  12:1
starved  16:6
stated  22:6
states  1:1
statistical  27:10
stayed  29:20
step  13:19,20 18:22
  31:3
sticking  8:5
stop  5:23
street  3:4,15
stress  18:3
stuff  12:10 17:5
  19:23
subject  5:4
suffice  32:21

sufficiency  20:13,14
suggest  20:24 23:9
suggested  24:14
suggesting  27:16
suggestion  24:12
suite  3:5 34:23
summary  19:18,19
  21:2 22:2,8,9 23:24
  24:1 25:3 26:15
  28:7,23,24 30:24
  31:16 32:20
supervised  17:5
supplemental  6:11
supposed  32:18
sure  6:16 9:19
  24:20,21 26:9 28:15
  31:6 33:16,16
survived  22:6
swap  6:22 7:10 8:1
sweeping  11:18

**t**

t  34:1,1
tab  6:11 7:15 9:5,7
  9:25 10:7 12:18
  20:17
table  5:18
take  4:10 14:5
  22:11,13,22 32:4
talk  20:6 29:16
talked  21:8
talking  10:4 14:16
  14:17 17:11 27:4
technical  11:6,10
technique  27:4
tell  11:14
ten  5:11 7:12
tentatively  5:10
term  10:7,8,17,23
  12:14,16 13:3,7,11
  13:14 14:1,2,4,16
termination  8:1
terms  4:11,19,19
  5:2,10,12,14 11:2,5
  11:10 12:2,6,14
  13:19 14:4,4,12
  15:13 16:18,21
  17:16,22 18:23 24:9

**thank**  4:5,6,7 21:5
  25:8 33:10,11,12
**theme**  24:10
**theory**  15:19 16:7
  18:16
**thing**  4:16 7:21
  17:19 22:7 25:2
  29:10 33:6
**things**  6:3,10 9:17
  14:5 25:11 26:25
**think**  5:18 6:4 14:1
  14:19 15:1,13 16:3
  16:12 18:10 19:10
  19:23 21:2 22:21,22
  23:25 24:2,13 25:11
  25:12,23,25 26:12
  26:13,18 28:6 29:10
  29:14,25 30:23,23
  31:6,16 32:7,13
**third**  9:25
**thought**  12:4 23:5
**thousand**  10:9
**three**  2:3 29:25
**threshold**  21:24
  23:10 25:6
**time**  5:9,13,20 7:13
  7:18 9:2 11:3,21
  12:12 24:2 29:16
  33:15
**times**  18:7
**tiny**  22:19
**today**  4:7 5:20
  12:21,24 18:5 20:19
**told**  27:15
**transcribed**  2:25
**transcript**  23:13,16
  23:16 25:1,24 34:3
**trash**  17:8
**trial**  22:7
**trouble**  9:3
**true**  14:9 34:4
**try**  4:10,13 14:25
  22:24
**trying**  9:16
**turn**  26:14
**turned**  5:5 12:6,13

**twenty**  2:3
**two**  5:9 13:19,20
  15:25 25:9 29:25
  32:7,9,12,14,17
**typically**  25:3

**u**

**u.s.**  1:17,25
**undercuts**  25:25
**understand**  4:18
  9:16 13:6 15:7,15
  15:16 17:15 18:20
  22:14 27:10,18
**understood**  17:15
  29:8
**undisputed**  29:1
**unearned**  22:23
**unfortunately**  5:22
**unidentified**  4:2,5,6
  4:21 5:16 7:16
  12:18 29:22
**united**  1:1
**universe**  14:24,25
**unreasonable**  14:20

**v**

**v**  1:12
**v.p.**  16:23
**valid**  27:10,13,24
**validly**  27:9
**valuable**  14:5
**value**  14:9
**vendor**  10:24 11:8
  12:9,10 13:10
**veritext**  34:21
**versus**  11:8
**viable**  14:10,10
**vsi**  17:1

**w**

**wait**  31:9
**waive**  26:4
**waived**  25:7
**waiver**  19:9,16
  20:19 21:18,25
  22:10 23:5 29:14
**wallow**  26:22
**want**  4:10,13 8:6
  10:13 18:3 23:15,22

  24:22,24 26:11
**wanted**  31:8
**wants**  19:24 22:1
  26:10
**warranted**  17:24
**washington**  3:6
**way**  10:8 17:2 22:18
  26:13,24
**we've**  19:7 26:4
  29:15 30:1 31:2,13
  32:13
**weeks**  10:25 29:25
  29:25 32:7,9,12,14
  32:17
**weigh**  16:17
**weight**  24:13
**weil**  3:2
**west**  3:15
**whiz**  9:14,22
**withdrawn**  16:2
**withdrew**  15:22
**woolverton**  3:10
  17:4
**work**  26:16
**worked**  13:10
**working**  10:23
**worth**  7:6
**written**  25:14
**wrong**  5:14

**x**

**x**  1:5,9,15 29:5

**y**

**yawn**  2:25 34:3,8
**yeah**  4:22 6:24
  11:25 12:22 27:19
  27:21 29:9
**yield**  14:15 17:13
**york**  1:2,19,19 3:16

**z**

**zap**  17:7