UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | Case No. 08-13555 (SCC) |
| Debtors. | Jointly Administered |

-------------------------------------------------------------------x

**DECLARATION OF SHERYL GITTLITZ IN SUPPORT OF SPANISH BROADCASTING SYSTEM, INC.'S OPPOSITION TO MOTION BY LEHMAN BROTHERS HOLDINGS INC. FOR SUMMARY JUDGMENT PURSUANT TO RULE 7056 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE REGARDING CLAIM 67707 FILED BY SPANISH BROADCASTING SYSTEM, INC.**

I, Sheryl Gittlitz, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a member of the law firm of Kaye Scholer LLP ("Kaye Scholer"). I submit this declaration in support of the opposition of Spanish Broadcasting System, Inc. ("Spanish Broadcasting") to the summary judgment motion (the "Motion"), dated June 18, 2015 [Dkt No. 50033], filed by Lehman Brothers Holdings Inc. (together with its affiliates, "Lehman") with respect to Spanish Broadcasting's proof of claim number 67707 (the "Proof of Claim").

2. I have more than 20 years of experience practicing as a finance lawyer. As a partner at Kaye Scholer, I represent companies and financial institutions in the structuring, negotiation and documentation of a broad range of commercial lending transactions, handling matters involving asset-based loans, working capital facilities and acquisition financing. I regularly represent corporate clients in the negotiation of their financing, refinancing and payoff arrangements with investment banks, commercial banks and other financial institutions.

3. During February 2012, Spanish Broadcasting consummated a $275 million private placement of notes through a capital markets transaction. The proceeds of the private

62771976_2

placement were used to repay Spanish Broadcasting's "Obligations" to Lehman and the other lenders under the Credit Agreement (as defined below). In connection with the private placement and the concomitant termination of Spanish Broadcasting's Obligations under the Credit Agreement, Lehman and Spanish Broadcasting entered into a payoff letter (the "Payoff Letter"), dated February 7, 2012, between Lehman and Spanish Broadcasting. A copy of the Payoff Letter is attached as Exhibit A hereto.

4.   I was one of the lead finance partners at Kaye Scholer representing Spanish Broadcasting in the negotiation and consummation of its private placement, the termination of the Credit Agreement and the negotiation and execution of the Payoff Letter. This declaration is based on my personal knowledge as counsel to Spanish Broadcasting.

**Lehman and Spanish Broadcasting Carefully Negotiated the Terms of the Payoff Letter, Including the Precise Provisions of the Credit Agreement That Would Survive Its Termination**

5.   Spanish Broadcasting and Lehman were parties to that certain First Lien Credit Agreement (the "Credit Agreement"), dated as of June 10, 2005, among, *inter alia*, Spanish Broadcasting, as borrower, and Lehman Commercial Paper Inc., as Administrative Agent and Lender. A copy of the Credit Agreement is attached as Exhibit B to the Declaration of Joseph A. Garcia (the "Garcia Declaration") filed contemporaneously herewith. The Credit Agreement included a first lien term loan facility of $325,000,000 and a revolving credit facility of $25 million. In October 2008, Lehman breached the Credit Agreement by failing to fund its $10 million portion of a $25 million draw request that Spanish Broadcasting made under the revolving credit facility. On November 3, 2011, Spanish Broadcasting filed the Proof of Claim to recover the damages that it suffered as a result of Lehman's failure to fund. On February 7, 2012, Lehman and Spanish Broadcasting entered into the Payoff Letter that, among other things, terminated the Credit Agreement.

6. The Payoff Letter as well as the Credit Agreement, which were both drafted by Lehman's counsel, were explicit as to which provisions of the Credit Agreement survived termination. More particularly, when Lehman wanted to provide that a provision of the Credit Agreement would remain effective following the termination of the Credit Agreement, it did so with specificity in the Payoff Letter and/or the Credit Agreement. See Ex. A (Payoff Letter), ¶ 1(a) (providing for survival of contingent obligations pursuant to Section 10.5 of the Credit Agreement), ¶ 4 (providing for survival of Spanish Broadcasting's Proof of Claim); Garcia Declaration, Ex. B (Credit Agreement), § 2.19(c) (survival of provision regarding certificate of additional amounts payable), § 2.20(e) (survival of provision regarding taxes), § 2.21 (survival of indemnity provision), § 9.7 (survival of indemnification provision), § 10.5 (survival of provision regarding payment of expenses). Through their respective attorneys at Kaye Scholer and Weil (as defined below), Spanish Broadcasting and Lehman carefully and extensively negotiated those provisions of the Credit Agreement that would remain effective following the parties' entry into the Payoff Letter that terminated the Credit Agreement.

7. Neither the Credit Agreement nor the Payoff Letter provides for the survival of Section 10.12(e) of the Credit Agreement (the "<u>Alleged Waiver</u>"), which stated that Spanish Broadcasting "waives, to the maximum extent not prohibited by law, any right it may have to claim or recover . . . any special, exemplary, punitive or consequential damages." Garcia Declaration, Ex. B, (Credit Agreement), § 10.12(e).

8. I represented Spanish Broadcasting in its extensive negotiations with Lehman between January 30, 2012 and February 7, 2012 concerning the terms of the Payoff Letter. During that time, the parties, through their respective attorneys, carefully negotiated the two survival provisions contained in the Payoff Letter, *i.e.*, Sections 1(a) and 4 thereof. The

evolution of the parties' agreement over the precise terms of the Payoff Letter that would remain effective following the termination of the Credit Agreement is summarized below.

9.  On January 30, 2012, Kaye Scholer, as counsel for Spanish Broadcasting, emailed Weil, Gotshal & Manges LLP ("Weil"), as counsel for Lehman, to inquire as to when Weil would circulate a draft of the Payoff Letter. See Ex. B hereto, email dated January 30, 2012.

10. On January 31, 2012, Weil sent Kaye Scholer an email attaching a draft of the Payoff Letter (the "January 31 Lehman Draft"). Section 1(a) of the January 31 Lehman Draft provided that as of the effective date of the Payoff Letter,

> all outstanding Loans and all other amounts owing by the Borrower [*i.e.*, Spanish Broadcasting] under the Credit Agreement . . . shall be paid in full and the Credit Agreement and **all obligations** of the Borrower and the other Loan Parties thereunder and under the other Loan Documents shall be terminated (other than contingent obligations which survive by the terms of the Credit Agreement or such other Loan Documents, including without limitation, Section 10.5 of the Credit Agreement).

See Ex. C, email from Weil dated January 31, 2012; Ex. D, January 31 Lehman Draft, ¶ 1(a) (emphasis added). This language provides that all of Spanish Broadcasting's "obligations" under the Credit Agreement would not survive the termination of the Credit Agreement, except where the Credit Agreement provides for survival.[1] Significantly, Section 1(a) of the January 31 Lehman Draft did not use the capitalized term "Obligation," which was a defined term under Section 1.1 of the Credit Agreement. Instead, Section 1(a) of the January 31 Lehman Draft used the lower-case term "obligation" in its ordinary meaning, *i.e.* "the action of obligating oneself to a course of action (as by a promise or vow)." See Merriam-Webster's Collegiate Dictionary (11th ed. 2004). The Alleged Waiver was clearly an "obligation" of Spanish Broadcasting, since it obligated Spanish Broadcasting to waive its right to claim or recover consequential damages.

---

[1] For example, Section 10.5 of the Credit Agreement provided that "[t]he agreements in this Section shall survive the repayment of the Loans and Letters of Credit and all other amounts payable hereunder." See Garcia Declaration, Ex. B (Credit Agreement), § 10.5.

62771976_2                                                4

Therefore, Lehman, who drafted the Payoff Letter, provided from the outset that the Alleged Waiver would <u>not</u> survive the termination of the Credit Agreement.

11. In addition, Section 4 of the January 31 Lehman Draft provided that Spanish Broadcasting would release "all claims" that it had against Lehman arising out of or in connection with the Credit Agreement. See Ex. D, January 31 Lehman Draft, ¶ 4. Section 4 of the January 31 Lehman Draft did not carve out Spanish Broadcasting's Proof of Claim from the release. Thus, the January 31 Lehman Draft provided that Spanish Broadcasting would release its claims against Lehman contained in the Proof of Claim filed on November 3, 2011.

12. The January 31 Lehman Draft was not acceptable to Spanish Broadcasting because (a) the language in Section 1(a) was not sufficiently explicit as to which provisions of the Credit Agreement would survive termination; and (b) Spanish Broadcasting was not willing to release its claims against Lehman that were the subject of its Proof of Claim.

13. Accordingly, on January 31, 2012, Kaye Scholer sent Weil an email, attaching Spanish Broadcasting's comments (the "<u>January 31 SB Comments</u>") to the January 31 Lehman Draft that Weil had circulated earlier that day. With respect to Section 1(a), Spanish Broadcasting changed the phrase "other than contingent obligations which survive by the terms of the Credit Agreement" to "other than contingent obligations which **expressly** survive by the terms of the Credit Agreement." See Ex. E, email from Kaye Scholer to Weil dated January 31, 2012; Ex. F, January 31 SB Comments, ¶ 1(a) (emphasis added). The intent of this comment was to make clear that all of the obligations under the Credit Agreement (including Spanish Broadcasting's obligation to waive its right to claim or recover consequential damages under Section 10.12(e) of the Credit Agreement) would terminate, except where the Credit Agreement expressly provided for survival. Since the Credit Agreement did not expressly provide for the survival of the Alleged Waiver, Spanish Broadcasting intended this comment to make clear that

the Alleged Waiver would <u>not</u> be effective or enforceable following the termination of the Credit Agreement. With respect to the release contained in Section 4 of the January 31 Lehman Draft, Spanish Broadcasting deleted the release in its entirety. See Ex F, January 31 SB Comments, ¶ 4.

14. On February 2, 2012, Weil sent Kaye Scholer an email, attaching a revised draft of the Payoff Letter (the "<u>February 2 Lehman Draft</u>"). This time, Lehman incorporated Spanish Broadcasting's language in Section 1(a), as set forth in the January 31 SB Comments. Thus, the agreed upon language in Section 1(a) provided that Spanish Broadcasting's obligations under the Credit Agreement shall be terminated, "other than contingent obligations which **expressly** survive by the terms of the Credit Agreement." See Ex. G, February 2, 2012 email from Weil; Ex. H, February 2 Lehman Draft, ¶ 1(a) (emphasis added). With respect to Section 4, Lehman restored the release of claims that Spanish Broadcasting had deleted in its January 31 SB Comments. See February 2 Lehman Draft, ¶ 4.

15. On February 3, 2012, Weil sent Kaye Scholer an email, attaching a further revised draft of the Payoff Letter (the "<u>February 3 Lehman Draft</u>"). The release in Section 4 of the February 3 Lehman Draft included a carve-out for the Proof of Claim. More particularly, the final sentence of Section 4 of the February 3 Lehman Draft provided that: "The foregoing release shall not apply to Proof of Claim (Claim Number 67707) filed against Lehman on September 18, 2009 (as such claim may be amended in accordance with applicable law)." See Ex. I, February 3, 2012 email from Weil; Ex. J, February 3 Lehman Draft, ¶ 4.

16. On February 3, 2012, Kaye Scholer sent Weil an email, stating that the language at the end of the release in Section 4 of the Payoff Letter should be revised to provide that:

> The foregoing release shall not apply to the Proof of Claim (Claim Number 67707) filed against Lehman on September 18, 2009, as amended on November 3, 2011 (as such claim may be further amended in accordance with applicable law or in accordance with the Attachment to Amended Proof of Claim of Spanish

Broadcasting System, Inc., as filed with the United States Bankruptcy Court/Southern District of New York on November 3, 2011).

See Ex. K, February 3, 2012 email from Kaye Scholer.

17. On February 3, 2012, Kaye Scholer sent Weil a further email, stating that the phrase "Except as set forth in the last sentence of this paragraph" should be added in two places in Section 4 of the Payoff Letter. See Ex. L, February 3, 2012 additional email from Kaye Scholer.

18. On February 6, 2012, Weil sent Kaye Scholer an email, stating that the language that Kaye Scholer proposed adding to Section 4 "does not work for us." See Ex. M, February 6, 2012 email from Weil. Weil invited Kaye Scholer to speak with Lehman's bankruptcy counsel "to discuss this further." See *id.*

19. On February 6, 2012, Kaye Scholer sent Weil an email, attaching revised comments to Section 4 of the Payoff Letter. More specifically, Kaye Scholer removed a reference to Spanish Broadcasting's proof of claim filed on September 18, 2009, and replaced it with a reference to the Proof of Claim filed on November 3, 2011. See Ex. N, February 6, 2012 email from Kaye Scholer.

20. On February 6, 2012, Weil sent Kaye Scholer an email, attaching a further revised draft of the Payoff Letter (the "February 6 Lehman Draft") that incorporated Spanish Broadcasting's comments to Section 4. More particularly, Section 4 of the February 6 Lehman Draft provided that:

> **Except as set forth in the last sentence of this paragraph**, the Borrower, on behalf of itself and the other Loan Parties, hereby unconditionally and irrevocably waives all claims, suits, debts, liens, losses, causes of action, demands, rights, damages or costs, or expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, which any of them may have or claim to have against Lehman (whether in its capacity as an agent, lender, hedging counterparty or otherwise) or its agents, employees, officers, affiliates, directors, representatives, attorneys, successors and assigns (collectively, the "Released Parties") to the extent arising out of or in connection with the Loan Documents

including, without limitation, any failure by the Lehman or its affiliates to fund any Loan required to be funded by it under the Credit Agreement (collectively, the "Claims"). **Except as set forth in the last sentence of this paragraph**, each of the Borrower and the other Loan Parties further agree forever to refrain from commencing, instituting or prosecuting any lawsuit, action or other proceeding against any Released Parties with respect to any and all of the foregoing described waived, released, acquitted and discharged Claims and from exercising any right of recoupment or setoff that it may have under a master netting agreement or otherwise against any Released Party with respect to Obligations under the Loan Documents. Each of the Released Parties shall be a third party beneficiary of this letter agreement. **The foregoing release shall not apply to Proof of Claim (Claim Number 67707) filed against Lehman on November 3, 2011 (as such claim may be amended in accordance with applicable law).**

See Ex. O, February 6 email from Weil; Ex. P, February 6 Lehman Draft, ¶ 4 (emphasis added). This agreed upon language was ultimately incorporated in the version of the Payoff Letter that the parties executed on February 7, 2012. This demonstrates that the intent of the parties was that Spanish Broadcasting did not waive its claims against Lehman arising out of Lehman's failure to fund the Draw, which claims were the subject of the Proof of Claim.

21. On February 7, 2012, Spanish Broadcasting and Lehman executed the Payoff Letter that contained the parties' agreed upon survival provisions in Sections 1(a) and 4. See Ex. Q, February 7, 2012 email from Kaye Scholer; Ex. A, fully executed Payoff Letter.

**Based on the Terms of the Payoff Letter, the Alleged Consequential Damages Waiver Contained in the Credit Agreement Is Not Enforceable**

22. The negotiations surrounding the Payoff Letter took place under highly unusual circumstances. Indeed, I am not aware of another situation in my 20 plus years of practice where a borrower and a lender negotiated the termination of a credit agreement after the lender had defaulted and the borrower had asserted claims against the lender for failing to fund its obligations under the credit agreement. In the context of these unusual circumstances, Lehman and Spanish Broadcasting carefully and extensively negotiated expressly which provisions of the Credit Agreement would survive termination thereof pursuant to the provisions of the Payoff Letter. At no point during my negotiations with Lehman's counsel did Lehman take the position

62771976_2                                    8

that the Alleged Waiver would survive the termination of the Credit Agreement. Indeed, Section 1(a) of the January 31 Lehman Draft and all subsequent versions of the Payoff Letter (including the execution version) provided that all of the Spanish Broadcasting's "obligations" under the Credit Agreement (including the Alleged Waiver) would terminate, except where the Credit Agreement provided for survival.

23. Nor did Lehman take the position during the negotiations that Spanish Broadcasting had waived its claims against Lehman that it asserted in the Proof of Claim. On the contrary, Lehman agreed to carve out the Proof of Claim from the release set forth in Section 4 of the Payoff Letter.

24. In its Motion, Lehman takes the position that the Alleged Waiver remains effective and enforceable, despite the fact that neither the Credit Agreement nor the Payoff Letter provides for the survival of the Alleged Waiver. However, contrary to Lehman's assertion, I do not believe (having participated in the negotiations) that the parties to the Payoff Letter intended for the Alleged Waiver to remain effective following the termination of the Credit Agreement. On the contrary, based on my extensive communications with Lehman's counsel, I believe that if Lehman had intended for the Alleged Waiver to survive, it would have expressly provided for the survival of the Alleged Waiver in the Payoff Letter. Lehman chose not to do so.

25. I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
July 23, 2015

_____
Sheryl Gittlitz