**Hearing Date and Time: August 4, 2015 at 10:00 am (Prevailing Eastern Time)**
**Response Deadline:  July 28, 2015 at 4:00 pm (Prevailing Eastern Time)**

Gary Gwilliam (Bar No. 33430)
Randall E. Strauss (Bar No. 168363)
**GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER**
1999 Harrison Street, Suite 1600
Oakland, California 94612-3528
Telephone:  (510) 832-5411
Fax:  (510) 832-1918
Email:  GGwilliam@giccb.com, rstrauss@giccb.com

Mark S. Bostick (Bar No. 111241)
Elizabeth Berke-Dreyfuss (Bar No. 114651)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone:  (510) 834-6600
Fax:  (510) 834-1928
Email:  mbostick@wendel.com
        edreyfuss@wendel.com

Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour,
Cheryl McNeil, Linda Howard-James, Isabel Guajardo and
Denise Colombo

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (SCC) |
| | (Jointly Administered) |
| Debtors. | |

**CLAIMANTS' SYLVIA VEGA-SUTFIN, MICHELLE SEYMOUR,**
**CHERYL MCNEIL, LINDA HOWARD-JAMES, ISABEL GUAJARDO**
**AND DENISE COLOMBO OPPOSITION TO PLAN ADMINISTRATOR'S**
**SUPPLEMENTAL OBJECTION TO THE FOUR HUNDRED THIRTY-FIRST**
**OMNIBUS OBJECTION TO CLAIMS (REDUCE AND ALLOW CLAIMS)**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................................1

II. STANDARD OF REVIEW ............................................................................................4

III. OBJECTION TO AND MOTION TO STRIKE EXHIBITS A AND B
APPENDED TO THE SUPPLEMENTAL OBJECTION....................................................4

IV. ARGUMENT..................................................................................................................5

    A. Claimants Have Stated a Claim for Defamation........................................................5

    B. Claimants Can Assert Damages for Loss of Income and Employment
    Benefits After October 22, 2007 ...............................................................................7

    C. Disallowing Or Subordinating Claimants' Punitive Damages Claims
    Under Section 105 Would An Abuse Of Discretion, A Misuse Of The
    Court's Equitable Powers And Premature. ...............................................................11

        1. Punitive Damages Are Allowable As General Unsecured Claims In
        Chapter 11 Cases.............................................................................................13

        2. Punitive Damages Are Allowable As General Unsecured Claims
        Under The Debtors' Plan. ...............................................................................13

        3. Section 105 Should Be Applied With Extreme Circumspection. ...............13

        4. The *Johns-Manville* Court Invoked Section 105 To Prevent
        Depletion And Code Dysfunction, Not To Protect Creditors From
        Mere Dilution...................................................................................................14

        5. There Is No Evidence Of Dilution Or Of The Prospect Of Unequal
        Or Unfair Treatment. ......................................................................................14

        6. It Would Be Inherently Unfair To Hold That One Type Of Claim
        Is Less Deserving Than Another......................................................................15

        7. The Purposes Of Punitive Damages Are Furthered By Allowance...........15

        8. The Court Should Not Employ Equitable Power To Adjudicate
        Claims Over Which It Has No Jurisdiction. ...................................................16

        9. In Doing Equity, The Court Should Balance Equities...............................17

        10. It Is Premature To Rule On Whether Punitive Damages Should Be
        Subordinated Because They Have Not Yet Been Awarded......................17

    D. Claimants' Punitive Damages Claims Are Not Facially Excessive.......................17

V. CONCLUSION...............................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.G. Fin Serv. Ctr., Inc.,*
395 F.3d 410 (7th Cir. 2005) ........................................................................... 12

*Broam v. Bogan*
(9th Cir. 2003) 320 F3d 1023 ................................................................................ 7

*Burnette v. Carothers*
(2d Cir. 1999) 192 F.3d 52.................................................................................... 4

*City of Newport v. Fact Concepts, Inc*
453 U.S. 247 (1981)............................................................................................ 16

*Cloud v. Casey*
(1999) 76 Cal.App.4[th] 895 .................................................................................. 8

*Coito v. Superior Court*
(2012) 54 Cal.4[th] 480 ...................................................................................... 10

*D'Alessio v. N.Y. Stock Exch., Inc.,*
258 F.3d 93 ........................................................................................................... 4

*DeJesus v. Sears, Roebuck & Co.,*
(2d Cir. 1996) 87 F.3d 65..................................................................................... 4

*EEOC v. Monarch Machine Tool Co.*
(6th Cir. 1980) 737 F.2d 1444 ............................................................................ 9

*Herring v. Fry's Food & Drug Store,*
1992 U.S. Dist. LEXIS 2994, at *13-14 (N.D. Cal. 1992) ................................ 9

*In re Johns-Manville Corp.,*
801 F. 2d 60 (2d Cir. 1986).................................................................................. 17

*In re Johns-Manville Corp.,*
68 BR 618 (Bankr. S.D.N.Y. 1986).............................................................. 12, 14

*In re Lehman Bros. Holding,*
2014 WL 2766164 (Bankr. S.D. N.Y. 2014) ...................................................... 5

*In re Motors Liquidation Company,*
No. 09-50026 (REG), 2012 Bankr. Lexis 6258 ................................................ 12

*In re Roman Catholic Archbishop,*
339 B.R. 215 (Bankr. D. Ore. 2006) .................................................................. 12

*In re Spiegel, Inc.,*
337 B.R. 821 (Bankr. S.D. N.Y. 2006)............................................................... 5

*Jacobson v. Schwarzeneggger*
  (C.D. Cal. 2004) 357 F.Supp2d. 1198 ........................................................ 5, 6

*Law v. Siegel*,
  134 S. Ct. 1188, 188 L. Ed. 2d 146 (U.S. 2014) ........................................ 14

*Lormand v. US Unwired, Inc.*
  (5th Cir. 2009) 565 F. 3d 228 ...................................................................... 7

*McGlone v. Bell*
  (6th Cir. 2012) 681 F3d 718 ........................................................................ 7

*Miano v. AC&R Advertising, Inc.*
  (S.D.N.Y. 1995) 875 F.Supp. 204 .............................................................. 10

*Priest v. Rotary*
  (N.D. Cal 1986) 634 F.Supp. 571 ................................................................ 9

*Rodgriguez v. McDonnell Douglas Corp.*
  (1978) 87 Cal.App. 626 .............................................................................. 10

*Slack v. Havens*
  (9th Cir. 1975) 522 F.2d 1091 ...................................................................... 9

*Smith v. Maldonado*
  (1999) 72 Cal.App.4th 637 .......................................................................... 5

*United States v. Noland*,
  517 U.S. 335 (1996) .................................................................................... 13

*United States v. Reorganized CF&I Fabricators of Utah, Inc.*,
  518 U.S. 213 (1996) .................................................................................... 13

*Virginia G. v. ABC Unified School District*
  (1993) 15 Cal.App.4th 1848 ........................................................................ 7

*Williams v. Pharmacia, Inc.*
  (7th Cir. 1998) 137 F.3d 944 ...................................................................... 11

*Wysinger v. Automobile Club of Southern California*
  (2007) 157 Cal.App.4th 413 .................................................................... 8, 10

## STATUTES AND RULES

11 U.S.C., Bankruptcy Code
  § 105 .............................................................................. 13, 14, passim
  § 726 (a)(4) ............................................................................ 13

28 U.S.C., Bankruptcy Code
§ 157 ..................................................................................................................... 16
§ 157(b)(2)(B) and (5) ......................................................................................... 16
§ 1411 (a) ........................................................................................................... 16
§ 1141(d)(3) ........................................................................................................ 15

California Civil Code
§ 44 ....................................................................................................................... 6
§ 46 ....................................................................................................................... 6

California Civil Instruction
2433 ....................................................................................................................... 8

Federal Rules of Civil Procedure
Rule 12(b)(6) ............................................................................................... 4, 5, 7, 11

Federal Rules of Bankruptcy Procedure
Rules 7001 (7) and (8) ........................................................................................ 11

## I.    PRELIMINARY STATEMENT

1.    Claimants are former employees of BNC Mortgage Inc. ("BNC"), a debtor herein, whose Claims are based on causes of action stated in a complaint (the "Complaint") filed on November 8, 2005, in the Superior Court of the State of California, County of Sacramento ("Sacramento Superior Court"), Case No. 05AS05161 (the "Action") that was pending at the time the debtors filed their bankruptcy petitions.

2.    The facts underlying the Complaint occurred in California and the causes of action stated therein are governed by California law and include claims for employment discrimination, harassment, failure to prevent discrimination, retaliation, intentional infliction of emotional distress, defamation, wrongful termination, breach of contract and breach of implied covenant of good faith and fair dealing, as more particularly set forth in the Complaint ("Claims").  The Claims include personal injury claims.  Claimants demanded a jury trial.  A copy of the Complaint was attached to each filed Claim.

3.    The allegations set forth in the Complaint detail egregious conduct on the part of BNC that precipitated its eventual failure.  When the Claimants complained to their supervisors about fraudulent and illegal lending practices beginning in 2005, each of them was told by BNC to ignore the fraudulent and illegal lending practices.  When they refused, they were each subjected to intimidation, retaliation and harassment that eventually led to their constructive termination.  If BNC had heeded the warnings from these employees, it might have averted BNC's bankruptcy.  All Claimants have claims for economic damages and non-economic damages, including severe emotional distress.

4.    At the time that BNC filed its petition for relief, the Action had been pending for over four years. After the Complaint was filed in November 2005, on March 6, 2006, BNC filed a Petition to Compel Arbitration.  The Sacramento Superior Court denied BNC's petition, which BNC appealed.  The Sacramento Superior Court stayed all discovery while BNC appealed the order denying arbitration. On September 26, 2007, the California Court of Appeal affirmed the Sacramento Superior Court's denial of BNC's Petition to Compel Arbitration, and on

November 27, 2007, California Court of Appeal issued a Remititur. The Sacramento Superior Court lifted the stay on discovery. Between November 2007 and January 9, 2009, the parties engaged in extensive discovery, exchanged multiple sets of interrogatories and requests for production of documents, producing over 10,000 documents. During that period of time the depositions dates for the Claimants were set and the deposition for the Claimant Sylvia Vega-Sutfin was completed. When BNC commenced its bankruptcy case on January 9, 2009, and the Sacramento Superior Court stayed the entire Action, notwithstanding the fact there are non-debtor defendants, and the Action has been stayed since. The Claimants have been waiting nearly ten (10) long years for the resolution of their Claims.

5.      The Claims were timely and properly filed in the BNC bankruptcy case. While settlement negotiations were pending, on August 20, 2013, Lehman Brothers Holdings, Inc. ("LBHI" or the "Plan Administrator") under the Plan, filed its Four Hundred and Thirty-First Omnibus Objection to Claims Nos. 522, 5223, 5224, 5225, 5226 and 5227 ("Objection") [ECF No. 39569]. The Plan Administrator set a hearing date of September 26, 2013.

6.      On September 17, 2013, Claimants filed a Response and Opposition to the Objection ("Response") [ECF No. 40127]. In its Response, Claimants requested relief from the Plan injunction or an order transferring the mediation venue to Northern California because the Claimants could not afford the huge financial burden of traveling to New York to participate in the Mediation and because the Debtors had a list of selected mediators available in Northern California. *Id.*

7.      In response to Claimant's Response and Opposition, on September 19, 2013, the Plan Administrator adjourned the hearing on Claimants' Claims, and pursuant to the Notice of Adjournment [ECF No. 40176], would provide notice of the new date and time of the hearing. *Id.*

8.      Throughout the course of settlement negotiations, Claimants requested that the Plan Administrator agree to mediate the Claims in Northern California because the Claimants, could not afford the huge financial burden of traveling to New York City to participate in the

Mediation, and because the Debtors selected mediator list had mediators located in the San Francisco Bay Area at their disposal. Claimants believed that after eight years of pending litigation, mediation was the most efficient manner of bringing these Claims to a successful resolution, and the hardship to the Debtors in mediating in Northern California was slight as opposed to the hardship of forcing the Claimants to mediate in New York.

9.      On October 31, 2013, the Plan Administrator served the Notice ADR Procedures and Scheduling of Claims Objection Hearing with Respect to Objection to Proof of Claims Nos. 5222, 5223, 5224, 5225, 5226, and 5227 [ECF No. 40923] ("ADR Notice"). Debtor insisted that any Mediation be held in New York City, New York.

10.      Claimants were unable to reach an agreement with the Plan Administrator as to the site of the mediation, and were prepared to file a motion to move the site of the mediation to Northern California. At the last minute, as the Claimants were filing their motion to change the venue of the mediation, the Plan Administrator agreed to mediate the Objection to Claimants Claims in San Francisco, California. At significant cost to themselves, each of the Claimants, traveled to San Francisco and participated in two days of Mediation.

11.      The first Mediation took place in San Francisco before Lisabeth Hasse, Esq. of Creative Industry Law, on May 5 and May 6, 2014. Unfortunately, the Mediation was unproductive.

12.      A second Mediation took place before Lisabeth Hasse, Esq. in San Francisco on August 13, 2014. Once again, the Mediation was unproductive.

13.      Following the unsuccessful Mediations, and due to Claimants' desire to move the case forward towards resolution, Claimants' Motion for Relief From Stay was heard by this Court on October 7, 2014. Although the Motion was denied without prejudice, the Court indicated that it would retain jurisdiction of the case in order to facilitate an orderly and expeditious discovery process to ready the Claims for trial. The issue of where the Claims would be tried was not finally decided.

14.     Thereafter, Debtor requested a third Mediation.  A Mediation was scheduled before Judge Daniel Weinstein of JAMS, to be held in San Francisco on December 11, 2014. Mere days before the Mediation was to take place, Debtor unilaterally cancelled the Mediation.

15.     Eventually, the parties agreed to re-set the Mediation before Judge Weinstein. The third Mediation was held in San Francisco on April 2, 2015.  Once again, the Mediation was unsuccessful.

16.     Because of the lack of progress in three different Mediations, counsel for Claimants contacted Debtor's California counsel to renew the discovery process which had been stayed since 2009.  Claimants' counsel offered to make the Claimants available for deposition. The only response from Debtor was the filing of this Supplemental Objection.

## II.    STANDARD OF REVIEW

Debtor asserts that the standard of review here is equivalent to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  A motion to dismiss is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *DeJesus v. Sears, Roebuck & Co.*, (2d Cir. 1996) 87 F.3d 65, 68, *cert denied*, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 388 (1996).  The complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *D'Alessio v. N.Y. Stock Exch., Inc.,* 258 F.3d 93, 99, citing *Burnette v. Carothers* (2d Cir. 1999) 192 F.3d 52, 56, *cert denied*, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000).  Debtor has not and cannot meet this high burden in this Supplemental Objection.

## III.    OBJECTION AND MOTION TO STRIKE EXHIBITS A AND B APPENDED TO THE SUPPLEMENTAL OBJECTION

Exhibits A and B attached to the Plan Administrator's Supplemental Objection are improper in the context of a motion to dismiss and must be stricken because they did not exist until years after the Complaint was filed.  The Complaint was filed in November 2005.  The WARN Act notice attached as Exhibit A was dated August 22, 2007; the form 10-K attached as Exhibit B was filed on or after January 29, 2008 [See, p. 142].  Therefore, they could not

possibly have been incorporated into the Complaint by reference or attached to it as an exhibit, or have been relied upon by Claimants in drafting the complaint" as required under Rule 12(b)(6). *In re Spiegel, Inc.*, 337 B.R. 821, 824 (Bankr. S.D. N.Y. 2006); they were not and could not have been "integral to plaintiff's claim." *In re Lehman Bros. Holding*, 2014 WL 2766164 (Bankr. S.D. N.Y. 2014).

## IV.    ARGUMENT

### A.    Claimants Have Stated a Claim for Defamation

Debtor seeks to have Claimants defamation claim disallowed because it argues that a cause of action under California law has not been properly plead.  Debtor relies on two arguments:  1) Claimants did not plead with enough specificity what defamatory statements were made; and 2) Claimants did not properly plead who made the allegedly defamatory statements. Both arguments fail under the law of defamation in California.

It is important to note that Debtor did not seek to raise these arguments prior to the granting of the stay.  In fact, Debtor BNC and Debtor Lehman Brothers Inc. each filed Answers in the Sacramento County Superior Court rather than challenge the sufficiency of the pleading. Debtor made a conscious decision not to attack the pleading in the California Superior Court because they obviously believed that a cause of action for defamation had been appropriately plead under the governing California pleading rules.  If that was their belief, they were correct.

As Debtor correctly points out in their briefing in this proceeding, to state a claim for defamation under California law, a plaintiff must allege "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado* (1999) 72 Cal.App.4th 637.

Debtor also acknowledges, as it must, that under California law, it is ***not*** necessary to plead the alleged defamatory statement verbatim.  It is sufficient to plead the ***substance*** of the statement. *Jacobson v. Schwarzeneggger* (C.D. Cal. 2004) 357 F.Supp2d. 1198, 1216. Furthermore, Debtor has cited no authority that to properly plead a cause of action for defamation, the plaintiff must set forth <u>who</u> heard the defamatory statement.

These requirements were met in the Complaint.  Debtor has misled the Court by not citing the entirety of Claimants' defamation allegation.  Instead, Debtor only quotes a portion of the allegations.  Debtor has left out the defamatory statement! This is what was actually plead:

> During the course and scope of their employment, BNC employees including but not limited to Sacramento branch supervising account manager, Linda Harris and branch managers defendant Nick Murphy and defendant Joe Pennington recklessly and intentionally ***published false information to others disparaging plaintiffs*** Colleen Colombo, Isabel Guajardo, Linda Howard-James, Cheryl McNeil, Sylvia Vega-Sutfin and on information and belief Michelle Seymour's ***work performance and abilities***.  (Complaint, ¶ 147.)  (emphasis added).

This allegation is all that is required to properly plead a cause of action for defamation under California law.  In California, defamation is effected either by libel or slander.  California Civil Code § 44.  Slander is a false and unprivileged publication, orally uttered, which tends directly to injure the plaintiff "in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits."  California Civil Code § 46.

Claimants have plead each of these elements.  The Complaint states that Linda Harris, Nick Murphy and Joe Pennington recklessly and intentionally published false information about Claimants' "work performance and abilities."  As set forth in the Complaint, each Claimant was an employee of Debtor working in the mortgage loan industry providing services to the public.  Statements that impugn Claimants' work performance and abilities are of the character of publications directly proscribed by Civil Code § 46.  Plaintiff has set forth the "substance of the statement."  See *Jacobson v. Schwarzeneggger*, *supra*.  Nothing more need be plead, and Debtor has not provided any authority to the contrary.

Finally, Debtor argues that because the Complaint states that the defamatory statements were made by BNC employees "including but not limited to" Harris, Murphy and Pennington, the defamation claim must be disallowed.  Debtor cites no authority that compels this result.

Under both State and Federal liberal pleading rules, complaints routinely include language that seeks to expand the basis for liability. Words such as "including but not limited to" are common and in some cases required in order to preserve claims that may not be wholly known to the plaintiff at the time the complaint is filed. It would be absurd to conclude that merely by inserting the words "including but not limited to" in an allegation, an otherwise well-plead cause of action would be subject to dismissal. This is not the law, and Debtor has not cited any authority to the contrary. This is a frivolous argument.

Furthermore, the entire basis for disallowing the defamation claim is a pleading issue. Courts routinely grant leave to amend when defendants complain of defective pleadings. Under California law, "[w]here a demurrer is sustained or a motion for judgment on the pleadings is granted as to the original complaint, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment." *Virginia G. v. ABC Unified School District* (1993) 15 Cal.App.4th 1848, 1852.

Similar standards apply under federal law. Traditionally, courts have viewed with "disfavor" motions to dismiss under Rule 12(b)(6) because of the lesser role pleadings play in federal practice and the liberal policy re amendment. [See *Lormand v. US Unwired, Inc.* (5th Cir. 2009) 565 F. 3d 228, 232—Rule 12(b)(6) motions "viewed with disfavor and rarely granted"; *Broam v. Bogan* (9th Cir. 2003) 320 F3d 1023, 1028—Rule 12(b)(6) dismissal with prejudice proper only in "extraordinary" cases; *McGlone v. Bell* (6th Cir. 2012) 681 F3d 718, 728]

If the Court concludes that Claimants have not set forth a claim for defamation in the Complaint, relief from stay and leave to amend should be granted. Any amendment to the Complaint would have to be filed in the Sacramento County Superior Court, which would provide an independent basis for having this case tried in California.

### B.    Claimants Can Assert Damages for Loss of Income and Employment Benefits After October 22, 2007

Debtor seeks a ruling from this Court disallowing Claimants' claims for lost wages to the extent they seek lost wages for the period after October 22, 2007, when BNC closed its doors

according to documents appended to the Objection that should of, as agreed above, be stricken

for exceeding the scope of the Complaint, but to the extent this issue is deemed ripe for review

by this Court, such an order is not supported by California law.  First, the issue of economic

damages is an issue for the jury to determine under California law after assessing all of the

evidence.  See *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4[th] 413,

427; CACI 2433.  In addition, Debtor's argument ignores the fact that under California law,

Claimants are entitled to be compensated for their inability to work as a result of their treatment

at the hands of Debtor - BNC's closure notwithstanding.  Each of the Claimants allege they were

constructively terminated because of intolerable working conditions.  Under the facts and

circumstances of this case, none of them would or could return to work at BNC.  They also

allege that their experiences at BNC harmed their ability to either work *anywhere*, or at their full,

pre-injury *earning capacity*.  The fact that BNC subsequently closed down is therefore irrelevant

to a calculation of their lost earnings under this theory.

      In actions such as this one brought under the California Fair Employment and Housing

Act ("FEHA"), the trier of fact "must determine the amount and extent of back pay and front pay

necessary to make [plaintiff] whole.  *Cloud v. Casey* (1999) 76 Cal.App.4[th] 895, 910.

      It is the role of the jury to determine the appropriate amount of damages in this case.  As

Debtor is surely aware, the jury in this case will be given California Civil Instruction ("CACI")

2433, which states:

> If you find that [*name of defendant*] [discharged/constructively
> discharged] [*name of plaintiff*] in violation of public policy, then you must
> decide the amount of damages that [*name of plaintiff*] has proven [he/she]
> is entitled to recover, if any. To make that decision, you must:
>
> 1. Decide the amount that [*name of plaintiff*] would have earned up to
> today, including any benefits and pay increases; [and]
>
> 2. Add the present cash value of any future wages and benefits that
> [he/she] would have earned for the length of time the employment with
> [*name of defendant*] was reasonably certain to continue; [and]
>
> 3. [Add damages for [*describe any other damages that were allegedly
> caused by defendant's conduct, e.g., "emotional distress"*] if you find that
> [*name of defendant*]'s conduct was a substantial factor in causing that
> harm.]

In determining the period that [*name of plaintiff*]'s employment was reasonably certain to have continued, you should consider such things as:

(a) [*Name of plaintiff*]'s age, work performance, and intent regarding continuing employment with [*name of defendant*];

(b) [*Name of defendant*]'s prospects for continuing the operations involving [*name of plaintiff*]; and

(c) Any other factor that bears on how long [*name of plaintiff*] would have continued to work.

Thus, Debtor's closure is merely one factor that the jury may consider, but it is not the only factor, and it is not dispositive. Based upon the totality of the evidence, including any expert testimony from an economist, the award of damages is a factual issue for the jury.

The cases relied on by Debtor do not negate the impact of California law, as set forth above, on the amount of damages available to Claimants. In *Slack v. Havens* (9th Cir. 1975) 522 F.2d 1091, 1095, the issue involved damages available in an action brought under the Civil Rights Act of 1964. The Court did not address or consider what damages may or may not have been available under a suit brought under California law. Similarly, *Herring v. Fry's Food & Drug Store*, 1992 U.S. Dist. LEXIS 2994, at *13-14 (N.D. Cal. 1992) and *Priest v. Rotary* (N.D. Cal 1986) 634 F.Supp. 571, 580, 585 also only considered damages available in actions brought under the Civil Rights Act of 1964.

Debtor further relies on two cases from the Sixth Circuit and the Southern District of New York for its authority that Claimants economic damages end as of October 2007. Neither case is applies because they don't discuss California law. In *EEOC v. Monarch Machine Tool Co.* (6th Cir. 1980) 737 F.2d 1444, a failure to hire case, the trial court was reversed when it cut off the right to back pay as of the date the employer ceased discriminating against women as a class. It is only in dicta that the court cites to an employment law treatise from 1974 that notes in passing that back pay ends when an employer sells the business. Under no circumstances can this passing reference be found to be a statement of the law of California. The only other case cited as authority for Debtor's position, *Miano v. AC&R Advertising, Inc.* (S.D.N.Y. 1995) 875

F.Supp. 204, merely cites to the same dicta in *Monarch*. Thus, Debtor has cited no persuasive authority for cutting off Claimants' right to full economic damages.

Furthermore, Claimants have an independent theory of recovery that does not in any way rely on the ongoing operations of Debtor. California law explicitly recognizes damages for ***lost earning capacity***. A plaintiff can recover damages both for lost earnings and for impairment of the ability or capacity to earn that are the proximate result of injury caused by tortuous conduct. That is, impairment of the capacity or the power to work can be viewed as an injury or loss separate from an actual loss of earnings. See *Rodgriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App. 626, 656, disapproved on other grounds in *Coito v. Superior Court* (2012) 54 Cal.4th 480, 499.

Such damages are particularly relevant in employment cases, where juries are given vast discretion in determining the amount of damages caused by discriminatory conduct. *Wysinger*, *supra*, at 627. Thus, in *Wysinger*, the plaintiff was a victim of discrimination that left him depressed, "worn out" and unable to return to work. The jury was entitled to award him damages because his injuries caused by the defendant prevented him from working anywhere: "'[T]he jury is entrusted with vast discretion in determining the amount of damages….'" *Id*. (citations omitted).

A lost earning capacity theory of recovery is not impacted by BNC ceasing its operations on October 22, 2007, because it seeks damages for an injury caused by Debtor prior to that date that is not dependent on continued employment at BNC. By way of analogy, if a negligent driver injures a pedestrian such that the pedestrian is no longer able to work, the measure of damages is not dependent on the continued economic viability of the driver. The injury is the injury.

Here, each Claimant has suffered a lost earning capacity due to BNC's wrongful conduct, which has impacted their ability to work in varying degrees, as set forth in the allegations of the Complaint describing each Claimant's emotional distress and damage to reputation . See, e.g., Complaint, ¶¶ 107, 152. Thus, Claimants' wage loss claim cannot cut off as of the date of

BNC's closing at this stage of the proceedings. As Debtor points out in its moving papers, the standard of review to be applied here is equivalent to a motion to dismiss under Rule 12(b)(6), which requires the court to assume that all the allegations of the complaint are true and draw all reasonable inferences in favor of the nonmoving party. Debtor has not even attempted to argue that Claimants cannot recover economic damages for loss of earning capacity after October 22, 2007, in that their papers don't address the issue.

Federal Courts also recognize recoverable damages for lost earning capacity in employment cases. In addition to front pay, Title VII (the federal analog to FEHA) authorizes an award for lost earning capacity, which is compensation for injuries that "have narrowed the range of economic opportunities available to him [or her]." Plaintiffs may show that the wrongful termination has caused "a diminution in his [or her] ability to earn a living." *Williams v. Pharmacia, Inc.* (7th Cir. 1998) 137 F.3d 944, 952.

In the event this Court concludes that Claimants have not plead facts adequate to assert a lost earning capacity theory of recovery, this is once again a pleading issue, and under the authority cited above with respect to the defamation claim, leave to amend should be routinely and liberally granted.

> **C.     Disallowing or subordinating Claimants' punitive damages claims under Section 105 would an abuse of discretion, a misuse of the Court's equitable powers and premature.**

The Plan Administrator seeks to disallow or subordinate Claimants' punitive damages based on their contentions that they are per se excessive under Rule 12(b)(6) and because they should be subordinated or disallowed as a matter of course under 11 U.S.C. § 105 ("Section 105").

To the extent equitable relief to subordinate claims is sought under Section 105, the sufficiency hearing process is procedurally improper. Bankruptcy Rules 7001 (7) and (8) require that equitable relief or claim subordination be obtained by an adversary proceeding. Moreover, the Plan Administrator again introduces facts outside the scope of the pleading. It argues that

punitive damages should be disallowed under Section 105 because they will not serve the

purposes for which they were intended, since there is no 'debtor' to punish or deter under its

liquidating plan and because allowance of punitive damages would result in an unfair dilution of

other creditors' claims.  There is nothing the Complaint to support these contentions, and in fact

quite the opposite is true.

The Plan Administrator's argument that  punitive damages are per se excessive and

should always be subordinated under Section 105 as a matter of course relies on purported

holdings in the *Johns-Manville* and *Motors Liquidation* cases.[1]  The Plan Administrator's

reliance on those cases is  misplaced.  In *Johns- Manville*, Judge Lifland applied Section 105

only with the strictest circumspection in order to prevent a depletion of assets that would defeat

the purpose of the plan to provide equal dividends to creditors of the same class, not because it

would result in mere dilution of claims to all creditors.[2]  Judge Garber in the *Motors Liquidation*

case did not even apply Section 105!   He found, based on untested facts, that the claimant's

claims were  completely devoid of merit.  His comments on Section 105 were pure dicta.

For these and the following reasons, Plan Administrator's motion to disallow or

subordinate Claimants' punitive damages claims under Section 105 must be denied.

---

[1] *In re Johns-Manville Corp.*, 68 BR 618, 628 (Bankr. S.D.N.Y. 1986), *aff'd* 78 BR 407
(S.D.N.Y. 1987), *aff'd sub nom., Kane v. Johns-Manville Corp.,* 843 F.2d 36 (2d Cir. 1988); *In
re Motors Liquidation Company*, No. 09-50026 (REG), 2012 Bankr. Lexis 6258 (Bankr.
S.D.N.Y. August 6, 2012).

[2] See Section 4 below.

1. **Punitive damages are allowable as general unsecured claims in chapter 11 cases.**

It is well-settled that punitive damages claims are allowable as general unsecured claims under chapter 11.[3]  Unlike under chapter 7 which specifically subordinates punitive damages under Section 726 (a)(4), no such provision exists under chapter 11.  Punitive damages are accorded the same treatment as any other claim, subject to whatever provisions to the contrary may be provided in the plan.

2. **Punitive damages are allowable as general unsecured claims under the debtors' plan.**

No provision in the debtors' plan subordinates or disallows punitive damages claims. Unlike the *Johns-Manville* case where the issue was presented pre-confirmation, this court is asked to apply Section 105 to materially modify provisions in the plan.  On that grounds alone, the motion should be denied.  But at a minimum, the level of the court's circumspection before applying Section 105 to adjust parties' rights under the plan should be heightened.

3. **Section 105 should be applied with extreme circumspection.**

Section 105 enables a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  This power is strictly proscribed.  It does not give the bankruptcy court equitable power to create remedies that do not appear in the Bankruptcy Code:

---

[3] *A.G. Fin Serv. Ctr., Inc.*, 395 F.3d 410 (7th Cir. 2005); *In re Roman Catholic Archbishop*, 339 B.R. 215 (Bankr. D. Ore. 2006) ["Nothing in §502(b) provides for disallowance of punitive damages.  Therefore, punitive damages may not be categorically disallowed under §502."].  See also *United States v. Noland*, 517 U.S. 335 (1996) and *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213 (1996) holding that even though tax penalties would dilute recoveries to innocent third-party creditors they could not be categorically disfavored by bankruptcy courts based on general equitable principles.

We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised with the confines of" the Bankruptcy Code. [4]

**4.    The *Johns-Manville* court invoked Section 105 to prevent depletion and Code dysfunction, not to protect creditors from mere dilution.**

The court in *Johns-Manville* faced the extraordinary situation of having to protect the interests of future claimants, whose existence was certain but whose identity and number was unknown.  If the punitive damages claims of existing claimants were allowed, the fund for creditors risked depletion and future claimants might receive nothing, much less equal treatment.  The court invoked Section 105 out of necessity to render the Code and the *Johns-Manville* plan functional and equitable, by subordinating punitive damages to ensure fair and equal treatment to creditors of the same class:

> To allow recovery of punitive damages, of course, would be to risk the depletion of Trust assets to the benefit of known victims at the expense of future claimants.  Such a result is inequitable on its face. [5]

Obviously, depletion would undermine the important bankruptcy principal and function of providing fair and equal treatment among creditors of the same class.  That could not have been accomplished without the court's invoking Section 105.

That is a far cry from the facts in this case.  Not only is there no risk of depletion; there is no proof of dilution; much less evidence showing that such dilution would result in unequal dividends to creditors, or would otherwise be unfair.

**5.    There is no evidence of dilution or of the prospect of unequal or unfair treatment.**

There is no evidence before the court to show that punitive damages would result in dilution, but  were it appropriate to introduce external documents in this proceeding, the debtor's financial statements filed prior to 2014 would show that BNC creditors were shown to be likely to be paid in full, with Five Million dollars going to equity - but after 2014, due to previously

---

[4] *Law v. Siegel*, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (U.S. 2014)

[5] *In re Johns-Manville*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986)

unrecognized massive potential mortgage-fraud liabilities, it suspended and recalled dividend

distributions and projects that creditors may receive only pennies on the dollar.

Either way, the effect of allowing punitive damages would appear to be minimal,

affecting as little as 1 percent of dividend payments. Thus the argument that allowing punitive

damages would unfairly dilute claims does  not hold water.

**6.    It would be inherently unfair to hold that one type of claim is less deserving than another.**

If the Court were to subordinate punitive damages because it viewed them as inherently

unfair to other creditors who do not hold such claims yet would be  forced foot the bill for the

debtor's bad acts, then where does the Court draw the line as to what types of claims not

otherwise subordinated under the Bankruptcy Code should be subordinated by bankruptcy courts

out of considerations of fairness?  Are claims based on default rate interest inherently unfair?

Are claims including high attorneys' fees inherently unfair?  Are guarantee liabilities procured

under duress at the insistence of the debtor's parent inherently unfair?  On what basis are

punitive damages singled out?

**7.    The purposes of punitive damages are furthered by allowance.**

The debtor moves the court to use its equitable power to preempt or override a jury's

determination of what amount of punitive damages is or would be appropriate to punish and

deter the debtor and others similarly situated under all the circumstances because no amount of

punitive damages would or could have punitive or deterrent effect because the debtor is a debtor

in a liquidating plan. The debtor is wrong on four counts.

First, contrary to its protestation, the debtor still exists.  Under its Third Amended

Disclosure Statement, it met  the "best interests of creditors test" by promising to continue to

exist after confirmation of the plan:

> The recoveries that the debtor would receive from the
> expeditious liquidation of their assets (in chapter 7) is likely to be

substantially less than the recoveries if the debtor hold such assets and dispose of them over a longer period of time.[6]

Having met that test by promising to exist, it received a discharge under the plan – a remedy reserved exclusively for corporations that continue to operate.  Section 1141(d)(3) states:

> The confirmation of a plan does not discharge a debtor if … the debtor does not engage in business after consummation of the plan.

Therefore, pursuant to its plan and disclosure statement, the debtor continues to exist; and it exists in the form of a multi-billion dollar trust.

Second, the scope of the deterrent function in awarding punitive damages is not limited to the debtor.   It applies to others similarly situated – past, present and future:

> Punitive damages are intended to punish the tortfeasor…and to deter him **and others** from similar extreme conduct.[7]  [Emphasis added].

Third, whatever deterrent effect allowance would have, disallowance would have the inverse effect.  Knowing that a company can escape punitive damages and survive by filing chapter 11 will encourage the very rapacious and morally reprehensible conduct that the punitive damages were intended to deter.

Fourth, using equity to disallow a jury' expression of moral outrage would impugn the integrity of the bankruptcy court and induce a lack of confidence in the function of law.  Equity should not be used to promote injustice. The purposes of punitive damages would be undermined.

### 8.    The court should not employ equitable power to adjudicate claims over which it has no jurisdiction.

Claimants' claims include personal injury claims that are outside the bankruptcy court's jurisdiction under 28 U.S.C. §157(b)(2)(B) and (5) and are entitled to be determined by a jury under 28 U.S.C. §1411 (a).   It is well-settled in the 2nd Circuit that the bankruptcy court cannot

---

[6] Third Amended Disclosure Statement pp. 126, 146.

[7] *City of Newport v. Fact Concepts, Inc* 453 U.S. 247, 266-267 (1981).

create jurisdiction over those claims under Section 105.[8]   Nor should it use Section 105 to disallow those claims before they are determined.

**9.      In doing equity, the court should balance equities.**

While it is the jury's domain to measure the degree of reprehensibility of the conduct, its effect on the public interest; the degree of harm it caused, the amount of compensatory damages it caused and the deterrent effect of awarding punitive damages; before applies equity to unilaterally subordinate the claims, it should balance other equitable factors, such as:  (1) the extent to which the debtor's other creditors had knowledge of Claimants' claims or of facts that gave rise to them before they extended credit to the debtor; (2) the extent to which the debtor and its affiliates and creditors have "clean hands;" (3) the degree to which liability would be subordinated solely by reason of the wrongdoer's delay and the passage of time.

**10.     It is premature to rule on whether punitive damages should be subordinated because they have not yet been awarded.**

Finally, the Plan Administrator is putting the cart before the horse:  punitive damages may not even  be awarded.  The court is asked to apply its extraordinary equitable powers when they may not be necessary.  It is therefore not "necessary or appropriate" to do so.

**D.     Claimants' Punitive Damages Claims Are Not Facially Excessive.**

While Claimants object to the propriety of using Section 105 to subordinate or disallow their punitive damages claims for the reasons stated above, they do not contest the court's authority to test the sufficiency of their pleadings.

For the reasons stated in the sections above, Claimants have sufficiently pled claims for relief or could do so with leave to amend.  The case is still in the early stages of discovery and the amount of any compensatory damages and corresponding punitive damages is yet to be determined.

---

[8] *In re Johns-Manville  Corp*, 801 F. 2d 60, 63-64 (2d Cir. 1986) ["Section 105(a) does not broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. §157…"]

V.      **CONCLUSION**

For the foregoing reasons, the Plan Administrator's motion should be denied.

**Relief Requested**

Claimants respectfully request that the Court order the stay lifted, and allow the litigation

move forward in the Sacramento County Superior Court.  Claimants renew this request, denied

without prejudice by the Court on October 7, 2014, based on the fact that there have now been

three failed Mediations and absolutely no progress in completing the discovery necessary to

move this case towards trial.

In the alternative, Claimants request that the Court issue an order directing a discovery

plan so the parties can move efficiently towards preparing the case for trial, as the Court directed

nearly one-year ago.

DATED July 27, 2015                          GWILLIAM, IVARY, CHIOSSO,
                                             CAVALLI & BREWER


                                             By: _/s/  *Gary Gwilliam*_____
                                                  Gary Gwilliam
                                                  Attorneys for Claimants, Sylvia Vega-
                                                  Sutfin, Michelle Seymour, Cheryl McNeil,
                                                  Linda Howard-James, Isabel Guajardo and
                                                  Denise Colombo

DATED:  July 27, 2015                        WENDEL, ROSEN, BLACK & DEAN LLP


                                             By: _/s/ *Mark S. Bostick*_____
                                                  Mark S. Bostick
                                                  Attorneys for Claimants, Sylvia Vega-
                                                  Sutfin, Michelle Seymour, Cheryl McNeil,
                                                  Linda Howard-James, Isabel Guajardo and
                                                  Denise Colombo