**Hearing Date and Time: August 4, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Modified Objection Deadline: July 28, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Luc A. Despins, Esq.
Andrew V. Tenzer, Esq.
John J. Ramirez, Esq.
*Attorneys for CarVal Investors UK Limited*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

| | |
|---|---|
| | : **Chapter 11** |
| **In re:** | : |
| | : **Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : |
| | : **(Jointly Administered)** |
| **Debtors.** | : |
| | : Re: Docket No. 49954 |
| | : |

------------------------------------------------------------------ x

**PRELIMINARY OBJECTION OF CARVAL INVESTORS UK LIMITED TO**
**MOTION OF PLAN ADMINISTRATOR PURSUANT TO SECTIONS 8.4, 9.3, AND**
**14.1 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**
**TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

CarVal Investors UK Limited and its affiliates[1] (collectively, "CarVal") file this

preliminary objection (the "Objection")[2] to the motion [Docket No. 49954] (the "Estimation

---

[1]   C.V.I.G.V.F. Lux Master S.A.R.L.. UK; C.V.I.G.V.F. (Lux) Master S.A.R.L.; CVF Lux Master S.A.R.L.;
CVF Lux Master SARL; CVI AA Lux Master SARL; CVI CVF II Lux Master S.A.R.L.; CVI GVF (Lux)
Master S.A.R.L.; CVI GVF Luxembourg Fourteen S.A.R.L.; CVI GVF Luxembourg Ninety Nine SARL;
CVI GVF Luxembourg Twelve S.A.R.L.; and CVIC Lux Master S.A.R.L.

Motion")[3] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its

Affiliated Debtors (the "Plan"), seeking approval, pursuant to sections 8.4, 9.3, and 14.1 of the

Plan, to estimate certain guarantee claims (the "Relevant Guarantee Claims") in the maximum

amount of zero dollars for reserve and distribution purposes.  In support of its Objection, CarVal

respectfully states as follows:

## PRELIMINARY STATEMENT

1.    CarVal and similarly situated creditors currently hold Relevant Guarantee Claims

arising from LBHI's guarantees of primary obligations of Lehman Brothers International

(Europe) ("LBIE").  CarVal objects to the Estimation Motion with respect to the Relevant

Guarantee Claims held by it, and in which it holds an interest,[4] for the reasons outlined herein,

including that:

    i.    The Relevant Guarantee Claims are prima facie valid claims which relate to

        underlying Primary Claims that have been recognized and admitted as valid

        claims by LBIE in its English administration proceedings;

    ii.    In the nearly seven years since the commencement of its bankruptcy case, LBHI

        has failed to settle, object to, or take substantive steps to resolve the Relevant

        Guarantee Claims and LBHI offers no explanation for this delay;

---

[2]    CarVal has sought discovery from LBHI with respect to the Estimation Motion.  CarVal requests that no final hearing on the merits of the Estimation Motion be held until discovery is complete, as it intends to file a supplemental and final objection to reflect facts discovered from LBHI.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Estimation Motion.

[4]    Attached hereto as Exhibit A is a list of all such claims and their corresponding claim numbers.

iii.    LBHI's assertion that the amounts that constitute the Primary Claims have been

paid in full under the law governing the allowance of such Primary Claims, which

is English law, is incorrect and, in fact, there is material uncertainty as to whether,

and in what amounts, any further distributions or payments LBIE will make in

respect of the Primary Claims.  Accordingly, there is a real possibility that

creditors will be entitled to distributions in respect of the Relevant Guarantee

Claims;

iv.    The claims of creditors of LBIE are subject to extensive litigation before the

English Courts (as hereinafter defined) in which LBHI and entities in which it has

substantial economic interests are active participants (the "<u>Waterfall</u>

<u>Proceedings</u>").  Only following the conclusion of those proceedings will it be

determined whether the Primary Claims have been (or will be) "paid in full" as

LBHI contends;

v.    The impact of the Waterfall Proceedings (described further as the "<u>Waterfall I</u>

<u>Proceeding</u>" and "<u>Waterfall II Proceeding</u>", below) could either decrease or

increase the amounts LBIE owes on the Primary Claims.  In particular, one issue

being heard in the English Courts may increase such amounts by approximately

$2 billion;

vi.    The joint administrators of LBIE (the "<u>Joint Administrators</u>") admit that future

distributions by LBIE are uncertain, and they will not make them, until the

Waterfall Proceedings are resolved.  It is unlikely that the Joint Administrators

would put further distributions on hold if they thought the assets under

administration were sufficient to pay in full all legally cognizable claims regardless of the outcome of the Waterfall Proceedings;

vii.     Secondary trading prices for LBIE claims are not probative of and do not resolve the uncertainty surrounding the amount creditors of LBIE ultimately will receive, and the Court should not rely on such prices in considering this Estimation Motion;

viii.    In light of the time that has elapsed since the commencement of these chapter 11 cases and the confirmation of the Plan, it is reasonable to await the ultimate outcome of the Waterfall Proceedings, and the ultimate resolution of the LBIE estate, so that the parties will have certainty as to the actual distributions made by LBIE;

ix.     The Katz Declaration (which LBHI proffers as evidence of future LBIE distributions) is a statement from an employee of LBHI who cannot know the ultimate allowed amounts of, or the distributions that will be made on, the Primary Claims, as these are complex matters that the English Courts are resolving;

x.     The Estimation Motion would not materially accelerate distributions by LBHI primarily because a large portion of the reserves that LBHI seeks to release are held as assets (not cash) for which LBHI has not proposed either a method or timeline for liquidation; and,

xi.     The arguments advanced by LBHI to justify the application of section 502(c) of the Bankruptcy Code do not form a valid basis for estimating the Relevant Guarantee Claims at zero.

4

2.      LBHI provides no grounds and cites no precedent to support a finding of undue

delay under section 502(c) of the Bankruptcy Code under such circumstances.  During the three

and a half years since Plan confirmation and the nearly seven years since the commencement of

these chapter 11 cases, LBHI has disallowed or resolved an untold number of claims

(approximately $124.42 billion in amount) and distributed billions of dollars to its creditors

(approximately $72.37 billion).[5]  There has not been any delay in LBHI's ability to administer its

estate.  Over that same period, though, LBHI has made no effort either to settle or object to

Relevant Guarantee Claims which arise from Primary Claims[6] against LBIE.  The Court should

not allow LBHI to benefit from its own inaction to manufacture an urgent need to make

distributions in order to estimate the Relevant Guarantee Claims at all, let alone at zero dollars,

to the substantial prejudice of CarVal and similarly situated creditors.

3.      That the Relevant Guarantee Claims remain unresolved is the direct result of

LBHI's own chosen strategy.  The Relevant Guarantee Claims are not complicated, but LBHI

has let them remain extant while electing to litigate the priority of Primary Claims against LBIE

in the English Courts.   The Estimation Motion's glaring, and deliberate, lack of discussion of

LBHI's involvement in the Waterfall Proceedings before the English Courts demonstrates that

estimation is unwarranted.

4.      Faced with defeats in the English Courts as to the amount of the underlying

Primary Claims against LBIE, it appears as if LBHI filed the Estimation Motion as a tactical

maneuver.  LBHI and LBIE already have received adverse rulings in the Waterfall I Proceeding

---

[5]      *See Lehman Brothers Holdings Inc., et al. Plan Administration Update,* at 4-5 [Docket No. 49950].

[6]      Under the Plan, Primary Claim is defined as a "[c]laim against a Primary Obligor," which, in CarVal's
case, is LBIE.  *See* Plan § 1.125.

from a trial court and an appellate court.  LBHI cannot use the estimation process as a backdoor

strategy to effectively disallow Relevant Guarantee Claims without analyzing their merits.  After

participating, directly or through its direct subsidiary, Lehman Brothers Holding Intermediate 2

Ltd. ("LBHI2"), or entities in which it has a substantial economic interest, in three years of

litigation over the Waterfall Proceedings, LBHI, in order to protect its interests, suddenly claims

that LBIE creditors will be paid in full.  The combination of the filing of the Estimation Motion

so soon after the appellate loss in the Waterfall I Proceeding, and the Estimation Motion's failure

to mention the Waterfall Proceedings, renders LBHI's motives suspect.

     5.     LBHI is a direct party (as a respondent) to the Waterfall I Proceeding (in which

LBHI is currently seeking permission to appeal to the Supreme Court of England) and has a

substantial economic interest in a joint venture entity that is a direct party (as a respondent) to the

Waterfall II Proceeding (in which a decision on certain other matters is expected).  Accordingly,

LBHI is fully aware of both of the Waterfall Proceedings and that there is material uncertainty as

to whether further amounts will be payable by LBIE with respect to Primary Claims, and if so,

what those amounts will be.  The Joint Administrators recognize this uncertainty and have

declined to make any further distributions to LBIE's creditors until the Waterfall Proceedings are

resolved.  LBHI, on the other hand, would have this Court ignore such uncertainty.

     6.     For example, LBHI cites the *Joint Administrator's Thirteenth Progress Report for

the Period from 15 September 2014 to 14 March 2015* (the "LBIE Report", a copy of which is

attached hereto as Exhibit B) for the proposition that LBIE will pay Primary Claims in full and

that the Relevant Guarantee Claims should be estimated at zero.  However, this Court need not

look past the first page of the LBIE Report to realize LBHI's misplaced reliance.  The LBIE

Report states that: "[w]e reserve all rights concerning the relevance and calculation of all claims

against the LBIE estate that might eventually share in the Surplus. **No conclusion should be drawn or inferred from this report as to the way in which such claims will eventually be assessed. Such matters are the subject of the Waterfall I and II Applications. . .**" LBIE Report, at 1 (emphasis added).  The LBIE Report further states that "**[p]ending the outcome of Waterfall I and II proceedings . . . it is not feasible to provide comprehensive illustrative outcome scenarios**." LBIE Report, at 29 (emphasis added).  Despite the Joint Administrators' cautionary disclaimers, LBHI cites the LBIE Report (which is hearsay) as irrefutable evidence that LBIE will pay CarVal's Primary Claim in full.  LBHI also cites the self-serving statement of an employee of LBHI that lacks any probative value regarding the final amount of CarVal's Primary Claim. *See* Katz Decl. [Docket No. 49955].

7.      Based on this scant evidence, LBHI requests that this Court constructively expunge over $8 billion of claims without filing an objection or attempting to resolve them consensually.  LBHI erroneously puts forth the LBIE Report as conclusive and would force CarVal to assume all risk that LBHI's interpretation of the LBIE Report is wrong.  If LBHI intends on relying on the LBIE Report then CarVal must have an opportunity to cross examine the authors of such report and obtain other discovery regarding, among other things, its maximum Relevant Guarantee Claim against LBHI and whether the facts alleged by LBHI in the Estimation Motion really compel estimation.

8.      Even without the issues raised by the Waterfall Proceedings, there would not be grounds to estimate the Relevant Guarantee Claims.  LBHI's argument for estimation boils down to the fact it could take time and work to reconcile the Relevant Guarantee Claims.  The actions LBHI lists to reconcile the Relevant Guarantee Claims are no more complex than any other claims analysis it has undertaken in the past seven years.  The Relevant Guarantee Claims are

based on contractual rights and determining the extent of those rights is an exercise in contract interpretation similar to those that LBHI, and its debtor subsidiaries, have undertaken in respect of many Primary Claims.  Furthermore, LBHI's concerns regarding disgorgement are misplaced. CarVal and similarly situated creditors have not filed motions seeking allowance or compelling payment of their claims.  If LBHI's concern is disgorgement, then an easy and non-controversial solution would be to maintain the status quo and wait for the outcome of the Waterfall Proceedings, something LBHI had been doing for years prior to filing the Estimation Motion.

9.     The English Courts are not addressing any of the merits of the Relevant Guarantee Claims.  The English Courts are simply fixing the amount of the Primary Claims (and the basis for calculating distributions on the Primary Claims) which, in turn, will impact the amount of the related Relevant Guarantee Claims.  The enforceability, extent and validity of the Relevant Guarantee Claims are issues for this Court.  LBHI has not brought those issues before the Court and appears to have no intention of doing so.

10.     The Estimation Motion seeks unprecedented and unjustifiable relief.  After idling on the Relevant Guarantee Claims for over three and a half years while prosecuting litigation to vault its interests ahead of senior creditors (including CarVal) as a creditor of LBIE, LBHI now claims that LBIE's estate can pay senior creditors in full.  LBHI's contentions in this regard are misleading and do not take into account the issues that are currently the subject of the Waterfall Proceedings before the English Courts.  Only when those proceedings are complete can it be determined whether LBHI's contentions are correct.  Making that assessment now would be premature and based on disputed issues of law and fact.  LBHI's position defies logic, as does ignoring the effect its own conduct has had on the status of the Relevant Guarantee Claims. LBHI could have commenced a reconciliation process to determine the validity and extent of the

Relevant Guarantee Claims at any time, yet elected only to litigate in the English Courts.

Whatever the merits of that strategy, it is not a basis to estimate the Relevant Guarantee Claims.

This Court should allow the English Courts (the courts with the greatest familiarity with issues

related to allowance of the Primary Claim) to complete the Waterfall Proceedings, which are far

along, so that certainty may be achieved with respect to the ultimate amount of distributions that

will be made in respect of the Primary Claims before making any findings regarding the

Relevant Guarantee Claims.

11.     For all of these reasons, and for the reasons further detailed below, the Court

should deny the Estimation Motion, with prejudice.

## **BACKGROUND**

### **LBHI's Chapter 11 Cases**

12.     Commencing on September 15, 2008, and periodically thereafter, LBHI and

certain of its subsidiaries commenced voluntary cases under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code") in this Court.

13.     On December 6, 2011, the Court approved and entered an order confirming the

Plan.  The Plan became effective on March 6, 2012.

### **LBIE's English Law Administration**

14.     On September 15, 2008, LBIE entered English administration proceedings

pursuant to the UK Insolvency Act 1986.  LBIE's estate is currently being wound-up by the Joint

Administrators.

15.     In November 2012, LBIE made its first interim dividend to its creditors.

16.     The Joint Administrators have initiated court proceedings in the English Courts,

the Waterfall Proceedings, to provide them with direction as to whether (and in what amounts

and priorities) any additional obligations are due  to the senior creditors,  subordinated creditors

or shareholders (primarily LBHI2, a direct subsidiary of LBHI) of LBIE.  Until these

proceedings are resolved, the Joint Administrators have declined to make any further

distributions to the creditors of the LBIE estate.

### Waterfall I Proceeding

17.     In February 2013, the Joint Administrators (among others) commenced the

Waterfall I Proceeding.  Shortly thereafter, LBHI was joined in the case as a respondent and

argued before the English High Court of Justice (the "High Court") with respect to the

subordination and Currency Conversion Claim issues described below.[7]  Waterfall I High Court

Decision, ¶ 6.

18.     The Waterfall I Proceeding sought various determinations by the High Court

regarding the priority of payment among various types of claims.  Generally, under the UK

Insolvency Act 1986 and the UK Insolvency Rules 1986, the priority for payment out of a

debtor-company's assets are: *first*, to fixed charge creditors  (i.e. creditors secured by a lien on

specific assets); *second*, to expenses of the insolvency proceedings; *third*, to preferential (i.e.

priority) creditors; *fourth*, to floating charge creditors (i.e. creditors which hold a floating lien);

*fifth*, to unsecured provable debts; *sixth*, to statutory interest; *seventh*, to non-provable liabilities;

and *eighth*, to shareholders.  Waterfall I High Court Decision, ¶ 15.  The Waterfall I Proceeding

focuses on the ranking of certain unsecured debts, statutory interest and certain non-provable

liabilities (and in relation to the latter, their recognition under English law).[8]

---

[7]     Attached hereto as Exhibit C is the ruling of the High Court with respect to Waterfall I (the "Waterfall I High Court Decision").

[8]     The amount of a Primary Claim can consist of, among other things, a portion that is a provable claim such as the amount owed under a contract, a portion that is statutory interest, and a portion that is a non-provable claim such as a Currency Conversion Claim.  The use of the term, "non-provable" does not mean that these

19.    A primary issue in the Waterfall I Proceeding was whether subordinated debt held

by LBHI2 should be paid before statutory interest and non-provable debt claims held by creditors

such as CarVal.  LBHI, as a creditor and shareholder of LBHI2, had an indirect interest in any

recovery of LBHI2 with respect to the subordinated debt.  Waterfall I High Court Decision, ¶ 6.

The High Court found that LBHI2's subordinated debt claims are not payable until statutory

interest with respect to provable claims and all non-provable claims, including Currency

Conversion Claims are paid in full.

20.    The Waterfall I Proceeding also considered whether, in the event that a creditor of

LBIE had a contractual right to be paid in a currency other than Pounds Sterling, such as United

States dollars, any deficiency between the U.S. dollar amount the creditor was entitled to receive

and the distribution in Pounds Sterling that the creditor actually received in the LBIE

administration, as converted into U.S. dollars at the exchange rate in effect when the distribution

was made, gives rise to a claim for such deficiency (referred to as a "Currency Conversion

Claim").  Ultimately, the High Court held that creditors can assert Currency Conversion Claims

against LBIE and that such claims would be considered non-provable claims entitled to payment

after statutory interest on account of provable claims.  Waterfall I High Court Decision, ¶ 111.

21.    In addition, the Waterfall I Proceeding considered the right of a creditor to assert

a claim for unpaid statutory interest that accrues during the pendency of LBIE's administration,

if such administration converts to a liquidation and such interest is not paid during the

administration.  The High Court held that a claim for statutory interest would not survive

---

portions of the claims are not allowable.  In fact, "non-provable" only refers to an English law concept
which provides that certain types of claims must be paid to claimants, but only after other types of claims
have been paid in full.

conversion of LBIE's administration to a liquidation.  Waterfall I High Court Decision, ¶ 126.

As a result, in the event that LBIE's administration was subsequently converted to a liquidation

under English law, no statutory interest would be payable for the period prior to such conversion.

22.    The Joint Administrators and LBHI (among others) appealed various aspects of

the Waterfall I High Court Decision to the Court of Appeal, Civil Division, (the "Court of

Appeal") and, on May 14, 2015, less than one month before LBHI filed this Estimation Motion,

the Court of Appeal issued its ruling.[9]  The Waterfall I Court of Appeal Decision denied the

appeal of the Waterfall I High Court Decision (ruling against the arguments made by LBHI and

LBHI2) with respect to the above-mentioned subordination issue and Currency Conversion

Claim issue.  Waterfall I Court of Appeal Decision, ¶¶ 63, 135, 166, 246, 260.  Moreover, the

Waterfall I Court of Appeal Decision reversed the Waterfall I High Court Decision (again ruling

against the arguments of LBHI and LBHI2) with respect to the accrual of statutory interest in the

event that LBIE's administration proceedings were converted into a liquidation (that is, the Court

of Appeal held that a claim for statutory interest would accrue from the commencement of

LBIE's administration and survive such conversion).  Waterfall I Court of Appeal Decision, ¶¶

111-112, 133, 246.

23.    The Joint Administrators and LBHI have submitted separate applications for

permission to appeal the Waterfall I Court of Appeal Decision to the Supreme Court (together

with the High Court and the Court of Appeal, the "English Courts").  Those applications are

currently pending.

---

[9]    Attached hereto as Exhibit D is the Court of Appeal's decision with respect to Waterfall I (the "Waterfall I
Court of Appeal Decision").

**Waterfall II Proceeding**

24.    On June 12, 2014, while the appeal of the Waterfall I High Court Decision in the

Waterfall I Proceeding was pending before the Court of Appeal, the Joint Administrators

commenced the Waterfall II Proceeding.  The Waterfall II Proceeding seeks determinations on a

myriad of issues including, among other things:

a) whether the amount of interest to be paid to creditors is to be calculated by notionally applying dividends (distributions) to interest, first, or principal, first (the "Bower v Marris Issue");

b) whether a foreign judgment rate of interest can be applied to a claim against LBIE (if applicable) – which in the case of New York law governed claims would result in these claims accruing interest while outstanding at the rate of 9% per annum,

c) when calculating statutory interest, whether a "rate" of interest that would be applicable apart from the administration means only the numerical percentage figure or whether the effect of any applicable modes of calculation (including compounding) are to be taken into account;

d) whether a creditor who has a Currency Conversion Claim should give a credit against that claim for any payments of interest received on account of the principal;

e) whether a creditor who has a Currency Conversion Claim may also have a claim for interest on account of such claim; and,

f) whether certain post-administration settlements, resolutions and stipulations entered into by creditors release LBIE from any claims for statutory interest or foreign currency conversion.

25.    The Joint Administrators do not intend to make any further distributions to

creditors of the LBIE estate until the outcome of the Waterfall Proceedings.  Moreover, with

respect to the Bower v. Marris Issue, one Joint Administrator has indicated that "[d]epending

upon the amount of Statutory Interest that is ultimately payable in the Administration. . . it is

possible that the calculation of Statutory Interest on the basis that dividends are treated as having

been applied first to the payment of interest **would mean that LBIE has insufficient assets to**

**allow for the payment of principal debts in full following the payment of Statutory**

Interest."[10]  Lomas Witness Statement, ¶ 16 (emphasis added).  Oral argument was held with

respect to the Bower v. Marris Issue on February 18-26, 2015 and a decision with respect to that

issue and various other issues is expected shortly.  CarVal believes that the Bower v. Marris

Issue alone may increase amounts related to Primary Claims against LBIE by approximately £1.3

billion (equivalent to approximately $2 billion).  *See* Lomas Witness Statement, ¶ 15.  Further

oral argument was held on May 18-21, 2015 with respect to certain issues regarding whether a

creditor's settlement of its claims against LBIE waived or released any claim with respect to

statutory interest or Currency Conversion Claims.

26.       To the extent there is any doubt about the relevance of the Waterfall Proceedings

to the allowance of the Relevant Guarantee Claims, one need look no further than the language

of the guarantees issued by LBHI for the LBIE Primary Claims.  Such instruments guarantee the

due and punctual payment in full of <u>all</u> obligations of LBIE to the beneficiaries of such

guarantees.  Therefore, the starting point is the allowance of Primary Claims which, in this case,

is being determined by the English Courts.

### **OBJECTION**

#### A.  **LBHI Cannot Satisfy Standard for Estimation of Claim Under Bankruptcy Code Section 502(c)**

27.       While the Plan may permit estimation of claims, the standards set forth in section

502(c) of the Bankruptcy Code must be satisfied in order for LBHI to estimate the Relevant

Guarantee Claims.  *See* Plan § 9.3.  Pursuant to section 502(c)(1) of the Bankruptcy Code, "there

shall be estimated for purpose of allowance . . . any contingent or unliquidated claim, the fixing

---

[10]       Attached hereto as <u>Exhibit E</u> is the *Eleventh Witness Statement of Anthony Victor Lomas*, dated October 31, 2014 (the "<u>Lomas Witness Statement</u>").

or liquidation of which, as the case may be, would **unduly delay the administration of the case**." 11 U.S.C. § 502(c)(1) (emphasis added).  LBHI attempts to conjure up a basis for arguing undue delay but does not point to any authority supporting the proposition that waiting for the English Courts' determination of the amount actually owed by LBIE on Primary Claims would unduly delay the administration of a Plan confirmed 44 months ago.  Moreover, any delay is attributable largely to LBHI's conduct and its failure to substantively address any of the Relevant Guarantee Claims in these chapter 11 cases.

28.    LBHI has not offered any case law supporting estimation in this post-confirmation context.  Generally, courts estimate claims that would otherwise unduly delay the confirmation of a proposed plan due to feasibility or voting issues.  *See, e.g. In re Lionel L.L.C.*, Case BI, 04-17327, 2007 Bankr. LEXIS 2652, at *12-13 (Bankr. S.D.N.Y. Aug. 3, 2007) (claim was estimated to resolve plan feasibility issue); *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (claim was estimated for voting purposes); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 419 (Bankr. S.D.N.Y. 2003) (claim was estimated to resolve plan feasibility issue).  Courts will not estimate a claim when the movant has not demonstrated that liquidation of such claim would unduly delay the administration of the case.  *In re Lightsquared Inc.*, Case No. 12-12080 (SCC), 2014 Bankr. LEXIS 4577, at *19-20 (Bankr. S.D.N.Y. Oct. 30, 2014) (declining to estimate claim when movant's self-imposed confirmation timetable created urgency and movant failed to meet 502(c) standard); *In re Dow Corning Corp.*, 211 B.R. 545, 567 (Bankr. E.D. Mich. 1997) (holding that liquidation of claim would not unduly delay administration of case because plan confirmation could proceed without estimation).

29.    The only two cases LBHI cites which analyze undue delay with respect to the post-confirmation administration of a case are inapplicable to the Estimation Motion.  In *In re*

*Enron Corp.*, Case No. 01-16034 (AJG), 2006 Bankr. LEXIS 4294 (Bankr. S.D.N.Y. Jan. 17, 2006), estimation occurred one year after confirmation and after the claim in question had been disallowed (and such disallowance was being appealed). Here, LBHI has not even filed an objection to the Relevant Guarantee Claims, let alone succeeded in having them disallowed. In *In re Wallace's Bookstores, Inc.*, 317 B.R. 720 (Bankr. E.D. Ky. 2004), the court applied a less rigorous standard for estimation than the standards that apply to LBHI. The *Wallace's Bookstores* court noted that the terms of the liquidating plan in that case (unlike LBHI's Plan) did not require estimation motions to meet the standards contained in section 502(c) of the Bankruptcy Code and did not make "undue delay" a prerequisite for estimation. *Id.* at 724.

30.      "Undue delay" cannot be evaluated in a vacuum. Rather, a court faced with a request to estimate based on undue delay must weigh a number of factors, including the impact of delay on other creditors and whether other creditors are not getting distributions because of the failure to immediately estimate the claim at issue. *See In re Dow Corning Corp.*, 211 B.R. at 564-65 (assessing effects of estimation on parties in interest). The assessment of this factor, in turn, requires an evaluation of the size of the bankruptcy case, the length of time that such case has been pending, and amounts or percentages of distributions already made to creditors. LBHI's chapter 11 case is one of the largest cases, if not the largest case, in the history of the United States and has been pending for seven years. The $4.3 billion in cash and assets that LBHI seeks to release pursuant to the Estimation Motion is dwarfed by the $72.37 billion in distributions already made to creditors of LBHI and its debtor affiliates. Moreover, LBHI has advanced no concrete evidence of the prejudice other creditors would suffer if this Court decided to await the decision of the English Courts in the Waterfall Proceedings, which is one of the reasons CarVal sought discovery from LBHI.

16

31.     The amount of the Primary Claims is currently being litigated in the English

Courts and, with respect to the Waterfall I Proceeding, has already been decided by the Court of

Appeal.  Decisions regarding the Waterfall II Proceeding will be rendered soon as oral argument

on those issues has already occurred.  Here, a finding of undue delay would be improper given

how much litigation has occurred in the English Courts.  *See In re Mountain View Coach Line

Inc.*, 99 B.R. 555, 560-61 (Bankr. S.D.N.Y. 1989) (declining to estimate claim when there was

administrative proceeding already pending liquidating claim and any delay was due to debtor's

conduct).

32.     Additionally, the Plan contemplates deference to a foreign proceeding when

determining the amount of an "Allowed Claim" in such foreign proceeding.  The Plan states that

"[f]or purposes of a Foreign Proceeding, an Allowed Claim includes a Claim that has been

accepted or allowed in a Foreign Proceeding by settlement with a Foreign Administrator or Final

Order of a court of competent jurisdiction."  Plan § 1.4.  LBHI cannot fairly argue that awaiting

the outcome of the pending Waterfall Proceedings -- a strategy that LBHI was pursuing until the

filing of the Estimation Motion -- constitutes undue delay because its own Plan contemplates that

very process.

33.     Without mentioning the Waterfall Proceedings or the potential impact that such

proceedings will have on whether CarVal will be paid in full, LBHI attempts to argue that

estimating the Relevant Guarantee Claims will avoid undue delay.  Specifically, LBHI asserts

that, absent estimation, it will have to determine the extent a Primary Claim has been satisfied,

whether the respective holder of a Relevant Guarantee Claim is able to and will comply with

disgorgement requests, and whether the Relevant Guarantee Claim is valid.  *See* Estimation

Mot., ¶ 30.  LBHI, therefore, is complaining about the claim resolution mechanism built into the

Plan that it proposed and that this Court confirmed.  LBHI easily could have commenced a

reconciliation process for the Relevant Guarantee Claims at any time after confirmation of the

Plan.  Instead, LBHI has focused on attacking the priority of the underlying Primary Claim in the

English Courts.  Now that all indications are that the outcome will be unfavorable to LBHI in the

English Courts, LBHI argues that reconciling CarVal's claims would pose an undue delay to the

administration of these chapter 11 cases.  "Delay, undue or otherwise, is not a justification for

ignoring applicable law or undermining the settled expectations of parties who transact every day

in reliance on the belief, for example, that credit documents such as guarantees mean what they

say."  *In re Lightsquared*, 2014 Bankr. LEXIS 4577 at *20.   The Relevant Guarantee Claims are

based on contractual rights and determining the extent of those rights is an exercise in contract

interpretation.  CarVal and similarly situated claimants have submitted themselves to the

jurisdiction of this Court with respect to the Relevant Guarantee Claims and are prepared to

litigate as necessary.  As for the disgorgement arguments, LBHI can merely wait to make

distributions on account of the Relevant Guarantee Claims until the final decisions in the

Waterfall Proceedings or make distributions and utilize the protections set forth in the Plan.[11]

*See* Plan § 8.13(e).

34.    Moreover, LBHI argues that the relief requested in the Estimation Motion will

free up $4.3 billion in cash and assets that comprise the full reserve for the Relevant Guarantee

Claims to distribute to other unsecured creditors.  However, seventy-five percent (75%) of that

$4.3 billion is held as assets, not cash.  LBHI has not put forth any evidence as to whether such

---

[11]    As further evidence that this Estimation Motion is premature, holders of the Relevant Guarantee Claims are
unable to comply with § 8.13(e)(i) because the amount of the Allowed Primary Claim is pending the
outcome of the Waterfall Proceedings.

18

assets are liquid or how much time it would take to liquidate them.[12]  If assets are illiquid, there

is absolutely no prejudice with maintaining the status quo, because LBHI can only distribute

cash, not assets, to creditors.  Accordingly, the concern over the alleged prejudice caused to

LBHI's other unsecured creditors is greatly exaggerated.

**B.  LBHI's Proposed Estimation Method Does Not Satisfy Bankruptcy Code Section 502(c) and There is No Valid Basis for Estimating Relevant Guarantee Claims at Zero Dollars**

35.     LBHI's proposed estimation methods also do not satisfy section 502(c) of the

Bankruptcy Code.  LBHI does not present any precedents for its proposed estimation methods

and the evidence it cites does not support a reserve of zero dollars for the Relevant Guarantee

Claims.

36.     While "when estimating claims, Bankruptcy Courts may use whatever method is

best suited to the contingencies of the case," that does not mean LBHI can request an estimation

method that completely disregards the Waterfall Proceedings.  *In re Adelphia,* 341 B.R. at 422

(assessing whether claimant will succeed on merits and assigning probabilities); *In re*

*Lightsquared*, 2014 Bankr. LEXIS 4577 at *19-20 (declining to estimate claim when movant

provided insufficient evidence that obligations subject to guarantee claim would be paid in full).

LBHI proposes an estimation method based on the LBIE Report and trading prices as sufficient

evidence that LBIE will pay in full the Primary Claims underlying the Relevant Guarantee

Claims.  LBHI further proposes that the above-mentioned evidence is sufficient to deny CarVal

and similarly situated creditors their day in court by effectively expunging their claims.

---

[12]      This is yet another issue that CarVal seeks to explore through the discovery process.

37.    The courts, in cases cited by LBHI, estimate claims by assessing the likelihood of success of that particular claim, <u>not</u> whether the claim will be paid by another party.  *See e.g. Bittner v. Borne Chemical Co.*, 691 F.2d 134, 136 (3d. Cir. 1982) (assessing likelihood of success on merits of a claim for estimation purposes); *In re Wallace's Bookstores*, 317 B.R. at 726 (assessing viability of conversion claim for estimation purposes); *In re Genesis Health Ventures, Inc.*, 272 B.R. 558 (Bankr. D. Del. 2002) (assessing merits of claim under False Claims Act on summary judgment basis for estimation purposes).[13]  The proper method for estimation with respect to the Relevant Guarantee Claims *may* be for the Court to assess the likelihood of success that the underlying guarantee is a valid guarantee of the Primary Claim against LBIE.  However, no such motion seeking that outcome is before the Court.  Instead, LBHI has attempted to circumvent addressing the validity and extent of the Relevant Guarantee Claims, which is appropriately accomplished via a claims objection, by seeking to expunge these claims through a flawed estimation process.

38.    The evidence cited by LBHI in the Estimation Motion does not demonstrate that LBIE will pay in full the Primary Claims underlying CarVal's Relevant Guarantee Claims. Section 6 of the LBIE Report explicitly states that "[p]ending the outcome of Waterfall I and II proceedings . . . it is not feasible to provide comprehensive illustrative outcome scenarios." LBIE Report at 29.  LBHI  admits that "as a result of the different conversion rates, it is possible that a Guarantee Claim may be entitled to additional consideration before it is deemed satisfied

---

[13]    LBHI incorrectly points to *In re Teigen*, 228 B.R. 720 (Bankr. D.S.D. 1998), as support for its proposed estimation method.  In *Teigen*, the court estimated two guarantee claims (notably, not at zero dollars) in which the underlying claim amounts against the primary obligor had been fixed and the chapter 11 plan of the primary obligor established a maximum payment amount of those claims.  *Id.* at 722-23.  Here, the amount of CarVal's Primary Claim has not been fixed and the LBIE Report specifically does not provide distribution outcome scenarios related to the Waterfall Proceedings.

in full under the Plan." Estimation Mot., ¶ 18.  In fact, the LBIE Report specifically states that:

**"[w]e reserve all rights concerning the relevance and calculation of all claims against the LBIE estate that might eventually share in the Surplus. No conclusion should be drawn or inferred from this report as to the way in which such claims will eventually be assessed. Such matters are the subject of the Waterfall I and II Applications. . ."** LBIE Report at 1 (emphasis added).  LBIE concedes the uncertainty of and cautions against reliance on its own report, yet LBHI offers that same report as the primary evidence justifying estimation.

Moreover, LBIE, through one of its joint administrators, has made it clear that pending the outcome of the Waterfall II Proceeding, LBIE may have insufficient assets to pay Primary Claims in full.  *See* Lomas Witness Statement, ¶ 16 ("it is possible that . . . LBIE has insufficient assets to allow for the payment of principal debts in full following the payment of Statutory Interest.").  The statements in the LBIE Report corroborate those of Lomas that it is uncertain whether LBIE will have sufficient assets to pay Primary Claims in full.

39.     The other proffered evidence, the Katz Declaration, is a statement from an employee of LBHI who cannot know the amounts of the Primary Claims after accounting for decisions in the Waterfall Proceedings.  Mr. Katz has no independent basis for determining that LBIE has sufficient assets to pay Primary Claims in full.  His declaration provides no analysis of the value of the Primary Claims against LBIE and LBIE's ability to make distributions to pay such claims in full.  Merely stating that the principal amount of a claim may be paid "in full" is not sufficient to establish that payment in full will occur and begs the question of what "paid in full" means under English law.

40.     LBHI also cites no authority that claims trading prices are an acceptable indicator of creditor recoveries in an estimation context.  The trading prices of LBIE claims are not

probative of what the final claim amount will be after the final outcomes of the Waterfall

Proceedings.  The English Courts have yet to determine the amount of CarVal's Primary Claim

and claims trading prices accounting for the outcome are pure speculation.

41.     Looking at LBHI's evidence as a whole, the Estimation Motion requests that the

Court rely on (i) a report, whose creator cannot be cross-examined by CarVal, which actually

creates uncertainty with respect to future distributions of LBIE, (ii) the self-serving speculative

statement of an employee of LBHI and (iii) unreliable claims trading prices.

42.     LBHI has not asserted that the Relevant Guarantee Claims are invalid on their

merits.  It is undisputable, for example, that the Currency Conversion Claim is an obligation of

LBHI under the Relevant Guarantee Claims and the Plan.  *See* Plan § 8.13(d).  The Court of

Appeal, in its Waterfall I Court of Appeal Decision, held that provable claims and statutory

interest related thereto shall be paid prior to any payments on account of non-provable claims,

including Currency Conversion Claims.  *See* Waterfall I Court of Appeal Decision, ¶¶ 166, 260.

The LBIE Report's silence on distribution scenarios as a result of the Waterfall Proceedings

makes it unclear whether all statutory interest with respect to provable claims will be paid in full.

It is even more unclear whether Currency Conversion Claims will be paid in full, let alone

receive any distribution from LBIE.  *See* Lomas Witness Statement, ¶ 15 ("[the Bower v. Morris]

issue will clearly have a significant impact on the amount of the Surplus (if any) that will remain

to pay Currency Conversion Claims. . .").  LBHI disingenuously glosses over this issue in the

Estimation Motion without explaining to the Court the rights that would be impacted if the

Relevant Guarantee Claims are estimated at zero.

## **CONCLUSION**

43.     LBHI has failed to show that it is entitled to the relief requested in the Estimation

Motion.  Accordingly, the Estimation Motion should be denied.


[*remainder of page intentionally left blank*]

WHEREFORE, CarVal respectfully requests that the Court enter an order denying the

Estimation Motion and granting such other relief as the Court may deem just and proper.

Dated: July 28, 2015

*/s/ Luc A. Despins*
Luc A. Despins, Esq.
Andrew V. Tenzer, Esq.
John J. Ramirez, Esq.
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Attorneys for CarVal Investors UK Limited*
*and Certain of Its Affiliates*